**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| Track Three Cases | |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION FOR MISTRIAL BASED ON CLOSING ARGUMENTS

November 17, 2021

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 1

ARGUMENT ..................................................................................................................... 3

    A.    PLAINTIFFS' COUNSEL'S STATEMENTS REGARDING THE IMPORTANCE OF THIS CASE
        DO NOT WARRANT A MISTRIAL. ................................................................................ 3

    B.    PLAINTIFFS' COUNSEL DID NOT SUGGEST THAT THIS LITIGATION WOULD NOT CARRY
        FINANCIAL CONSEQUENCES FOR DEFENDANTS. ........................................................ 6

    C.    PLAINTIFFS' COUNSEL DID NOT SUGGEST THAT DEFENDANTS ARE THE SUBJECT OF
        MULTIPLE ONGOING INVESTIGATIONS IN THE COUNTIES. .......................................... 7

    D.    PLAINTIFFS' COUNSEL'S STATEMENTS REGARDING DR. LEMBKE AND CRITICISMS OF
        DEFENDANTS' WITNESSES DO NOT WARRANT A MISTRIAL. ......................................... 8

    E.    PLAINTIFFS' COUNSEL'S STATEMENTS REGARDING DEFENDANTS' "INTENTIONAL"
        CONDUCT WERE LEGALLY CORRECT AND DEFENDANTS' PREEMPTION ARGUMENTS
        HAVE ALREADY BEEN PROPERLY REJECTED BY THIS COURT. ..................................... 11

    F.    DEFENDANTS' REMAINING ARGUMENTS ARE WITHOUT MERIT. ................................. 15

    CONCLUSION ............................................................................................................ 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Air Crash Disaster*,
    86 F.3d 498 (6th Cir. 1996) ................................................... 10

*Barnette v. Grizzly Processing, LLC*,
    No. CIV. 10-77-ART, 2012 WL 1067076 (E.D. Ky. Mar. 28, 2012) ............. 1, 3, 4

*Caudle v. D.C.*,
    707 F.3d 354 (D.C. Cir. 2013) ................................................ 6

*City of Cleveland v. Peter Kiewit Sons' Co.*,
    624 F.2d 749 (6th Cir. 1980) ................................................. 5

*Clemens v. Wheeling & Lake Erie R.R.*,
    99 F. App'x 621 (6th Cir. 2004) ............................................ 2, 3

*Cousins v. Bray*,
    No. 2:03-CV-1071, 2005 WL 8161508 (S.D. Ohio Feb. 28, 2005) ............ 2, 3, 4

*Donnelly v. DeChristoforo*,
    416 U.S. 637 (1974) ........................................................ 10

*Eagan v. CSX Transp., Inc.*,
    294 F. Supp. 2d 911 (E.D. Mich. 2003) ....................................... 7

*Eaton Aerospace, L.L.C. v. SL Montevideo Tech., Inc.*,
    129 F. App'x 146 (6th Cir. 2005) ............................................ 2

*Fuhr v. Sch. Dist. of City of Hazel Park*,
    364 F.3d 753 (6th Cir. 2004) ................................................. 7

*Hamm v. Jabe*,
    706 F.2d 765 (6th Cir. 1983) ................................................. 1

*Hodge v. Hurley*,
    426 F.3d 368 (6th Cir. 2005) ................................................. 9

*Holmes v. City of Massillon, Ohio*,
    78 F.3d 1041 (6th Cir. 1996) ................................................. 4

*Jimkoski v. State Farm Mut. Auto. Ins. Co.*,
    247 F. App'x 654 (6th Cir. 2007) ....................................... 1, 2, 3, 4

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*,
    474 F.3d 288 (6th Cir. 2007) ................................................. 2

*Kaltrider v. Young Men's Christian Ass'n of Cleveland, Ohio*,
  457 F.2d 768 (6th Cir. 1972) ................................................................4

*Krueger v. Otis Elevator Co.*,
  925 F.2d 1464, 1991 WL 21981 (6th Cir. 1991) (unpublished) ...........................1, 2

*Leonard v. Warden, Ohio State Penitentiary*,
  846 F.3d 832 (6th Cir. 2017) .............................................................8, 9

*Niles v. Owensboro Med. Health Sys., Inc.*,
  No. 4:09-CV-00061-JHM, 2011 WL 3205369 (W.D. Ky. July 27, 2011) ...............8

*Richardson v. Marsh*,
  481 U.S. 200 (1987)........................................................................4

*In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig.*,
  624 F. Supp. 1212 (S.D. Ohio 1985), *aff'd sub nom. In re Bendectin Litig.*, 857 F.2d
  290 (6th Cir. 1988)........................................................................8

*Slappy v. City of Detroit*,
  No. 19-10171, 2021 WL 2986284 (E.D. Mich. July 15, 2021) ................................8

*Sparks v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*,
  99 F.3d 1140, 1996 WL 487252 (6th Cir. 1996) (unpublished) ................................4

*Tamraz v. Lincoln Elec. Co.*,
  No. 1:04-CV-18948, 2007 WL 4287620 (N.D. Ohio Dec. 4, 2007) ........................1

*Twachtman v. Connelly*,
  106 F.2d 501 (6th Cir. 1939) ................................................................5

*United States v. Acosta*,
  924 F.3d 288 (6th Cir. 2019) ................................................................9

*United States v. Boyd*,
  640 F.3d 657 (6th Cir. 2011) ................................................................9

*United States v. Emuegbunam*,
  268 F.3d 377 (6th Cir. 2001) ...........................................................10, 11

*United States v. Herring*,
  641 F. App'x 451 (6th Cir. 2016) ................................................................6

*United States v. Kojayan*,
  8 F.3d 1315 (9th Cir. 1993) ................................................................9

*United States v. Lundergan*,
  No. 5:18-CR-00106-GFVT, 2019 WL 4248971 (E.D. Ky. Sept. 6, 2019)...........1, 4

iii

*United States v. Phibbs*,
   999 F.2d 1053 (6th Cir. 1993) ......................................................................................1, 2, 4, 7

*United States v. Solivan*,
   937 F.2d 1146 (6th Cir. 1991) ..................................................................................................5

## INTRODUCTION

Defendants argue a mistrial is warranted based on various statements made by Plaintiffs' counsel during closing arguments.  In addition to being substantively without merit, many of Defendants' objections are untimely and/or any purported prejudice has been cured by the Court's instructions.  Defendants certainly have not satisfied their heavy burden to demonstrate that the drastic remedy of a mistrial is warranted.  Defendants' motion should be denied.

## LEGAL STANDARD

A decision on a motion for mistrial rests within the Court's sound discretion.  *See United States v. Phibbs*, 999 F.2d 1053, 1066 (6th Cir. 1993); *Hamm v. Jabe*, 706 F.2d 765, 767 (6th Cir. 1983); *Krueger v. Otis Elevator Co.*, 925 F.2d 1464, 1991 WL 21981, at *3 (6th Cir. 1991) (unpublished).  "Declaration of a mistrial is one of the most 'drastic' alternatives available to a trial court, a remedy of 'last resort.'"  *Tamraz v. Lincoln Elec. Co.*, No. 1:04-CV-18948, 2007 WL 4287620, at *4 (N.D. Ohio Dec. 4, 2007) (citations omitted).[1]  "Prior to declaring a mistrial, 'the Court should always consider whether the giving of a curative instruction or some less drastic alternative is appropriate.'"  *Lundergan*, 2019 WL 4248971, at *1 (citation omitted).  If the prejudice to the defendant can be relieved by a curative instruction, "it is not an abuse of discretion to deny a motion for a mistrial."  *Id.*  The movant bears the burden of demonstrating a mistrial is necessary.  *See, e.g., Barnette v. Grizzly Processing, LLC*, No. CIV. 10-77-ART, 2012 WL 1067076, at *2 (E.D. Ky. Mar. 28, 2012).

Moreover, the Sixth Circuit has made it clear that a mistrial in a civil case based on improper conduct is "only appropriate when [that] conduct 'consistently permeated the entire trial from beginning to end.'"  *Id.* at *4 (quoting *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 F.

---

[1] *See also Hamm*, 706 F.2d at 767 (acknowledging general proposition "that trial courts should, whenever possible, pursue alternatives less drastic than declaration of a mistrial"); *United States v. Lundergan*, No. 5:18-CR-00106-GFVT, 2019 WL 4248971, at *1 (E.D. Ky. Sept. 6, 2019) ("The Court may declare a mistrial only where there is 'manifest necessity' for termination of the proceedings, or where 'the ends of public justice would otherwise be defeated.'  Courts must exercise extreme caution in declaring a mistrial, doing so only 'under urgent circumstances, and for very plain and obvious cases.'") (internal citations omitted).

App'x 654, 662 (6th Cir. 2007)).  Thus, a mistrial is rarely based on a single episode.  *Id.* at *4.[2]

"'The determination of the extent of permissible comment and argument by counsel rests primarily in the judicial discretion of the lower court.'"  *Eaton Aerospace, L.L.C. v. SL Montevideo Tech., Inc.*, 129 F. App'x 146, 151 (6th Cir. 2005) (citation omitted).  When determining whether improper statements or conduct justifies a mistrial, the Court must

> "examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), and the verdict itself."

*Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 302 (6th Cir. 2007) (citation omitted).[3]  "[O]nly where the comments alleged to be prejudicial evidence a studied purpose to inflame or prejudice the jury will [the Sixth Circuit] reverse the jury's ultimate verdict."  *Krueger*, 1991 WL 21981, at *3.  Thus, it is unsurprising that the Sixth Circuit has repeatedly found that inappropriate remarks by counsel made during opening or closing arguments were not sufficient to justify the drastic remedy of a mistrial.[4]

---

[2]  *See also Phibbs*, 999 F.2d at 1067 (trial court did not abuse its discretion denying defendants' motion for mistrial based on witness's allegedly improper remarks where, *inter alia*, "the remarks at issue 'constitute[d] but a small portion of the total testimony at trial'" and "were made well before the start of the jury's deliberations . . .") (citation omitted); *Cousins v. Bray*, No. 2:03-CV-1071, 2005 WL 8161508, at *3 (S.D. Ohio Feb. 28, 2005) ("A misstatement does not require a new trial if it 'constituted an isolated comment that occurred in the context of an entire trial and caused no prejudice.'") (citation omitted).

[3]  *See also Cousins*, 2005 WL 8161508, at *3 (same); *cf. Clemens v. Wheeling & Lake Erie R.R.*, 99 F. App'x 621, 626 (6th Cir. 2004) ("We must consider the frequency of the allegedly objectionable comments and 'the manner in which the parties and the court treated the comments' in deciding whether a new trial is appropriate.").

[4]  *See, e.g., Surles*, 474 F.3d at 302-03 (in personal injury action, district court did not abuse its discretion in denying a mistrial based on plaintiff's counsel's closing argument remark that damages award for plaintiff's future medical would determine what kind of life passenger would live for the next 20 years, or if she lived those 20 years; counsel's statement was relevant to issue of compensatory damages, and counsel's subsequent remarks about jury's options to award lowest estimated cost of future care or increase amount to provide passenger with better case counteracted any arguably prejudicial taint); *Jimkoski*, 247 F. App'x at 662 (two improper remarks made by defense counsel during opening statements were "insufficient for us to hold that the district court abused its discretion in not declaring a mistrial, particularly where the district court presented the jury with a specific curative instruction directing the jury to disregard [defendant's] improper statements and to ignore attorney remarks not

(footnote continues on next page)

## ARGUMENT

### A.  Plaintiffs' counsel's statements regarding the importance of this case do not warrant a mistrial.

In support of their request for a mistrial, Defendants first point to a few statements made by Plaintiffs' counsel (comprising approximately 5 minutes out of his 3-hour closing argument) regarding the importance of this case.  Motion at pp. 1-2 (citing Dkt. #4153 (11/15/21 Trial Tr.) at 7081-7084)).[5]  Defendants did not object at the time the statements were made, but instead asserted their objections one hour later.  Dkt. #4153 (11/15/21 Trial Tr.) at 7121:5-15.  The Court overruled Defendants' objection, noting that Plaintiffs' counsel's statements were "argument," but agreed to instruct the jury that it is only to decide this case and not consider future cases.  *Id*. at 7122:1 – 7124:4.  Specifically, the Court instructed the jury:

> Before – before Mr. Lanier proceeds, I want to remind you that your job as jurors is to decide the issues presented in this case only.  It is not to decide anything about any future case or any other case in the country.
>
> You will decide only whether each plaintiff, Lake County and Trumbull County, has proved its case against each of the three defendants.

Dkt. #4153 (11/15/21 Trial Tr.) at 7130:18-24.  As Defendants acknowledge, Plaintiffs' counsel immediately expressed to the jury his agreement with the Court's instructions.  Dkt. #4153 (11/15/21 Trial Tr.) at 7131:1-9 ("Thank you, Your Honor.  And that's exactly right.  You'll – in fact, the judge has tailored his questions to exactly what you'll find.  And you'll read those.  He read you his instructions, but ultimately he'll also give you --  I think it's four, Your Honor.  – but he's got a set of questions that he'll ask you, and that narrows down the focus on what this whole

---

supported by the evidence") (internal citation omitted); *cf. Clemens*, 99 F. App'x at 626 (trial court did not abuse its discretion in denying request for new trial where defense counsel's one reference to "sleazy accusations" in his closing argument was "unlikely to have influenced the jury's verdict").

[5]  In the Sixth Circuit, mistrials are properly denied where the purportedly improper conduct or statement was isolated and did not permeate the entire trial.  *See, e.g., Jimkoski*, 247 F. App'x at 662 (trial court did not abuse its discretion in denying mistrial motion where movant "failed to establish that any improper statements 'consistently permeated the entire trial from beginning to end'") (citation omitted); *Cousins*, 2005 WL 8161508, at *3 ("A misstatement does not require a new trial if it 'constituted an isolated comment that occurred in the context of an entire trial and caused no prejudice.'") (citation omitted); *Barnette*, 2012 WL 1067076, at *4.

case is about in front of you today.").  Plaintiffs' counsel also re-emphasized this point later in his argument:

> *And I want to be really clear when I said that this is a case that I believe has national ramifications, that's not your concern either.*  In answering the judge's questions, your concern is these two counties and the actions of these defendants as it has affected these two counties.  *What happens after that is not your concern.  All you've got to do is focus on that.  And that's what the judge is telling you here.*

*Id*. at 7171:3-10 (emphasis added).

Where, as here, a curative instruction is given, a mistrial is not warranted.[6]  It is well established that jurors are presumed to follow the instructions they are given.[7]  Defendants' claim that the instruction given did not address the actual problem or prejudice should be rejected.  Any

---

[6]  *See, e.g., Phibbs*, 999 F.2d at 1068 ("The trial judge cautioned the jury to disregard the testimony, and we believe that he cured any harm to defendants in doing so."); *Kaltrider v. Young Men's Christian Ass'n of Cleveland, Ohio*, 457 F.2d 768, 770 (6th Cir. 1972) ("We are unable to say that the single mention of insurance would be sufficient to require that a mistrial be declared.  The case was tried by a skilled trial judge who gave a cautionary instruction after the word 'insurance' had been presented in the presence of the jury.  After reviewing the entire record we find no error."); *Jimkoski*, 247 F. App'x at 662 (two improper remarks made by defense counsel during opening statements were "insufficient for us to hold that the district court abused its discretion in not declaring a mistrial, particularly where the district court presented the jury with a specific curative instruction directing the jury to disregard [defendant's] improper statements and to ignore attorney remarks not supported by the evidence") (internal citation omitted); *Cousins*, 2005 WL 8161508, at *3 ("[P]rejudice can be cured by instructions from the court."); *Lundergan*, 2019 WL 4248971, at *1; *cf. Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1046–47 (6th Cir. 1996) ("[E]ven if the irrelevant could have incited prejudice, we find that such prejudice would have been cured by the judge's limiting instructions to the jury. . . .  Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when 'such prejudice is cured by instructions of the court, the motion for a new trial should be denied.'") (citation omitted); *Sparks v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*, 99 F.3d 1140, 1996 WL 487252, at *5 (6th Cir. 1996) (unpublished) (affirming denial of new trial where the trial court "responded immediately to the improper questions posed by counsel and made clear to the jury that they were to be disregarded").

[7]  *See, e.g., Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"); *Sparks v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*, 99 F.3d 1140, 1996 WL 487252, at *5 (6th Cir. 1996) (unpublished) ("[W]e presume that a jury will understand and adhere to curative instructions."); *Barnette*, 2012 WL 1067076, at *3 ("The American jury system . . . is based on the assumption that jurors will follow the Court's instructions when discharging their duties.  The Court must not and will not 'assume that a jury ignored explicit instructions.'  Rather, the Court presumes that 'jurors follow their instructions.'  Without that presumption, there would be little reason to entrust fact-finding to a jury in the first place.") (internal citations omitted).

4

concern Defendants may have had that the jury would take into consideration the potential national ramifications of this case when determining Defendants' liability for public nuisance was alleviated when the jury was explicitly instructed not to do so.[8]

Finally, the cases cited by Defendants are factually distinguishable and do not support the granting of a mistrial in the present case. *See United States v. Solivan*, 937 F.2d 1146, 1150–51, 1153-55 (6th Cir. 1991) (in context of a criminal trial where a prosecutor's duty "encompasses concerns beyond mere advocacy" and "improper insinuations or suggestions [by a prosecutor] are apt to carry more weight against a defendant" because "the jury will normally place great confidence in the faithful execution of the obligations of a prosecuting attorney," new trial was warranted where prosecutor made improper statements during closing arguments that were designed, both in purpose and effect, to arouse passion and prejudice and to inflame the jury's emotions); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 758–60 (6th Cir. 1980) (new trial warranted, despite curative instructions given, where counsel's improper conduct "permeated the entire trial, from opening statement through closing argument, in 'a continuing pattern of misconduct[,]'" "[t]he remarks 'were persistently made over the recurring and almost constant objection of counsel for the appellant,' and were repeated even though Judge Green sustained the objections and admonished the jury[,]" "plaintiff's counsel even persisted after the trial court explicitly reprimanded him for his misconduct[,]" and "[t]he cumulative effect of counsel's remarks undoubtedly served to leave the intended, indelible impression upon the minds of the jurors") (internal citation omitted); *Twachtman v. Connelly*, 106 F.2d 501, 508–09 (6th Cir. 1939) (defense counsel's remarks during closing arguments regarding financial status of plaintiff were not "of such gravity as to require a reversal in view of the timely admonition of the lower court and its cautionary instructions that argument of counsel should not be considered as evidence and

---

[8]    Defendants also note that Plaintiffs' counsel's comments were cited by the media in certain press coverage of the trial.  Motion at p. 4 n.1.  But this fact is irrelevant to the determination of whether a mistrial is warranted, as the jury has been repeatedly instructed not to read any media coverage related to the trial.  *See, e.g.*, Dkt. #4153 (11/15/21 Trial Tr.) at 7180:7, 7325:18 – 7327:3, 7335:14-16.

that the case should be decided by the jury dispassionately, with complete impartiality and without sympathy or favor"); *United States v. Herring*, 641 F. App'x 451, 454-55 (6th Cir. 2016) (in criminal case, prosecutor's appeal to jurors' community conscience did not warrant a new trial because, despite the remarks being "prejudicial, misleading, and deliberately made, they were neither extensive nor repeated"); *Caudle v. D.C.*, 707 F.3d 354, 363 (D.C. Cir. 2013) ("This is not a case in which counsel made a *single* misstatement and ceased further misstatements after the district court sustained an objection. Instead, the appellees' counsel made *four* impermissible statements—each escalating from the last—three of which came after the district court had sustained the District's objections. . . . Nor do we agree that the district court's general jury instruction—to decide the case without prejudice, sympathy, fear, favor or public opinion— eliminated the unfair prejudice to the District caused by the appellees' counsel. This instruction is given in virtually every trial; it was not in any way directed at her argument. As the conduct of the appellees' counsel in this case was egregious, we conclude that the generic instruction did not sufficiently counter the prejudice.") (internal citations omitted).[9]

## B. Plaintiffs' counsel did not suggest that this litigation would not carry financial consequences for Defendants.

Defendants argue that "Plaintiffs' counsel misleadingly suggested to the jury that the litigation would not carry financial consequences for Defendants and that Plaintiffs did not have a financial motive in pressing the lawsuit." Motion at p. 5. That simply is not true. Defendants conveniently leave out the entirety of Plaintiffs' counsel's statement, which makes clear that the Court would be deciding the remedy if Defendants were found to be liable:

> Now, you're not being asked to determine whether there should be a remedy for this claim. This may be the only civil case you ever get called on where nobody's asking you for money. *That's all in the Court's hands, what's got to be done, what remedy there may be or may not be. That's not your question.*

---

[9] Notably, in *Caudle*, the court acknowledged that counsel's "send the message" argument, though inappropriate, would normally not "alone . . . be grounds for reversal," but noted that in that case such argument was made after the court had already sustained three objections to improper "golden rule" arguments made by that same counsel. *Id.* at 361.

Dkt. #4153 (11/15/21 Trial Tr.) at 7170:22 – 7171:2 (emphasis added).  This is entirely consistent with how the Court instructed the jury earlier that day:

> Please remember that you are being asked to determine only whether one or more of the defendants created a public nuisance.  You are not being asked to determine whether there should be a remedy for this claim, or what that remedy should be.  *If you find that one or more of the defendants created a public nuisance, the Court will determine the remedy.*

*Id*. at 7072:3-9 (emphasis added).  Thus, there is no reason to believe that the jury was misled by Plaintiffs' counsel's statement.  Moreover, Defendants failed to object to this statement at the time it was made (or even later that same day).[10]

### C.    Plaintiffs' counsel did not suggest that Defendants are the subject of multiple ongoing investigations in the Counties.

Defendants claim that Plaintiffs' counsel "suggested without evidence that Defendants are the subject of ongoing investigations in Lake and Trumbull Counties."  Motion at p. 6.  Not so. Rather, in addressing extensive (and inappropriate) arguments made by CVS's counsel that Plaintiffs had failed to offer any evidence of individual prescriptions or investigations of Defendants' pharmacies in the Counties,[11] Plaintiffs' counsel was simply explaining to the jury that instead of presenting evidence of individual prescriptions or investigations, Plaintiffs had opted to focus more on the "bigger picture."  Dkt. #4153 (11/15/21 Trial Tr.) at 7312:22 – 7314:5. Plaintiffs' counsel never stated that there were in fact ongoing investigations of Defendants'

---

[10]    *See, e.g., Fuhr v. Sch. Dist. of City of Hazel Park*, 364 F.3d 753, 760 (6th Cir. 2004) ("Hazel Park, furthermore, failed even to object to the statements when they were made.  We have applied a high standard of review [for motions for new trial] under such circumstances."); *Phibbs*, 999 F.2d at 1066–67 (finding it significant that "defendants did not make a contemporaneous objection to the remarks on grounds of prejudice, or on any other grounds" when determining whether trial court abused its discretion in denying defendants' mistrial motion); *Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 915 (E.D. Mich. 2003) ("'[F]ailure to object at trial to closing arguments does raise the degree of prejudice which must be demonstrated to get a new trial on appeal.'") (citation omitted).

[11]    Plaintiffs objected to Mr. Delinsky's attempts to sandbag Plaintiffs and the Court with these arguments, and the Court agreed that Mr. Delinsky had created a problem that needed to be fixed.  Dkt. #4153 (11/15/21 Trial Tr.) at 7255:7 – 7256:22, 7256:23-25 ("Mr. Delinsky, you created a problem.  How do you want to fix it, or do you want me to fix it?"), 7257:3-17, 7258:6 – 7262:21.  Ultimately the Court left it up to Plaintiffs' counsel to address the issue during his rebuttal argument.  *Id*. at 7263:2-22.

pharmacies in the Counties. And if Defendants believed that counsel's statements implied as much, it was incumbent upon them to object. *Supra* at fn.10. They did not.

Defendants also complain that Plaintiffs' counsel suggested "that law enforcement investigations might be forthcoming *because* of this case[,]" simply because he noted that "law enforcement does not 'investigate the pharmacies unless they get a tip[,]'"[12] and "then stated that 'I would think that there's a good chance – I don't know what the future holds. That's not our question. Our question is simply this case right now.'" Motion at p. 7 (quoting Dkt. #4153 (11/15/21 Trial Tr.) at 7314-7315). But counsel did not in fact state that "there's a good chance" Defendants' pharmacies in the Counties might be investigated in the future. He never said what there was "a good chance" of; instead he emphasized to the jury that it needed to focus only on the issues before it and not on any future implications. Dkt. #4153 (11/15/21 Trial Tr.) at 7315:2-4. Again, if Defendants believed an improper implication could be drawn from Plaintiffs' counsel's statement, it was incumbent upon them to object. *Supra* at fn.10. And again, they did not.

**D.    Plaintiffs' counsel's statements regarding Dr. Lembke and criticisms of Defendants' witnesses do not warrant a mistrial.**

Defendants are wrong to claim that a mistrial is appropriate based on Plaintiffs' counsel's observations about Dr. Lembke's credentials. "Generally, courts afford counsel great latitude in making opening and closing arguments to the jury. Anecdotes and personal experiences . . . are common place in both opening and closing arguments." *Niles v. Owensboro Med. Health Sys., Inc.*, No. 4:09-CV-00061-JHM, 2011 WL 3205369, at *5 (W.D. Ky. July 27, 2011); *Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *7 (E.D. Mich. July 15, 2021) (holding the same). "Final argument has traditionally been just that—argument—an opportunity for counsel to persuade, cajole or convince jurors," including through the use of anecdotes. *In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig.*, 624 F. Supp. 1212, 1226 (S.D. Ohio 1985), *aff'd sub nom. In re Bendectin Litig.*, 857 F.2d 290 (6th Cir. 1988). This is because lawyers "must be given

---

[12]   This statement is consistent with the testimony given by Trey Edwards. Dkt. #4109 (11/1/21 Trial Tr.) at 5290:11-17; Dkt. #4111 (11/2/21 Trial Tr.) at 5448:22 – 5449:10.

leeway to argue reasonable inferences from the evidence" during closing argument.  *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 852 (6th Cir. 2017).

The rule against improper vouching is a narrow exception to this general flexibility.  It is primarily based on a recognition that in criminal cases, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005).  However, not "every favorable comment on a government witness constitutes prosecutorial misconduct."  *United States v. Acosta*, 924 F.3d 288, 300 (6th Cir. 2019).  Rather "in each case, the effect of such comments must be considered in the context of the prosecutor's other statements, the defense arguments, and the evidence presented at trial."  *Id.*

This is not a criminal case.  The unique considerations about the prosecutor's role that make the anti-vouching rule such a serious concern in criminal cases are not present here.  Defendants do not cite any Sixth Circuit Court of Appeals decisions that have granted a mistrial based on improper vouching in a civil case.  This is unsurprising—"[p]rosecutors are subject to constraints and responsibilities that don't apply to other lawyers," particularly in closing arguments.  *United States v. Kojayan*, 8 F.3d 1315, 1323 (9th Cir. 1993).  But even under the heightened standard in criminal cases, "[i]t is not improper for a prosecutor to attempt to explain why, based on the facts, a witness's testimony is honest after the same has been attacked by the defense."  *United States v. Boyd*, 640 F.3d 657, 671 (6th Cir. 2011).

The very first thing the defense did in their cross of Dr. Lembke was attack her credentials.  *See, e.g.,* Dkt. #4000 (10/6/21 Trial Tr.) at 682:23-25.  In light of this attack, Plaintiffs' counsel explained in closing that Dr. Lembke's credentials are impressive.  There is an ample evidentiary record to support that argument.  The jury heard testimony that Dr. Lembke is a board-certified psychiatrist and neurologist, Stanford professor, sits on the editorial board for numerous peer-reviewed medical journals, and that she has received numerous awards for her academic work.  Beyond this, the jury heard testimony that she has extensive practical experience treating patients with addiction and substance use disorders.  Viewed in this context, Plaintiffs' counsel's remarks

are linked to and supported by the record evidence—not a demand that the jury believe the expert simply on a lawyer's say-so.[13]

It is worth noting that counsel for each Defendant made arguments that would raise serious anti-vouching concerns under the strict standard they now advocate. Counsel for Walgreens proclaimed that a witness was "not some rough pharmacist who cares more about filling scripts than she does about the community where she's raising her kids . . . And [the witness] is not unique. She's a typical Walgreens pharmacist." Dkt. #4153 (11/15/21 Trial Tr.) at 7195:10-17.  Counsel for CVS announced that a witness was "who CVS is" and that the witness "for nine years has been devoted to enhancing CVS's program, working so hard to try to fight a very difficult problem. . . .  Isn't that exactly who we want in her position? Isn't that who we want?"  *Id*. at 7236:4-15.  And counsel for Walmart declared a witness was an "excellent pharmacist."  *Id*. at 7294:2.  Defendants can hardly claim that Plaintiffs' counsel's remarks were improper vouching while simultaneously making similar arguments to support their own witnesses.

Even assuming, *arguendo*, that the remarks in question did cross the line, Defendants have not shown the drastic remedy of a mistrial is appropriate.  A party faces a "heavy burden of showing that it deserves a new trial based on a few words in a long closing argument."  *In re Air Crash Disaster*, 86 F.3d 498, 526 (6th Cir. 1996).  Errors in closing statements are common— closing arguments "are seldom carefully constructed *in toto* before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 646–47 (1974).  Because of this, the Sixth Circuit has recognized that the appropriate remedy for improper arguments by counsel is a limiting instruction that lawyers' arguments are not evidence.  An instruction by the Court that lawyer arguments are not evidence "generally cure[s] any improprieties in a closing argument."  *United States v.*

---

[13]  The same is true for the statement Defendants object to about their pharmacists being "nice people." Viewed in context, this statement is clearly a request for the jury to not hold the vigorousness of Plaintiffs' cross examination of the pharmacists against Plaintiffs and to focus on the evidence that these pharmacists were not provided with the tools needed to exercise corresponding responsibility as required by federal and state law.

*Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001).  *See also supra* at fns.6-7.  The Court delivered precisely this instruction in this case:

> Ladies and gentleman, before we have the final arguments of each of the defendants, I want to remind you that it is up to you, the jury, to decide the credibility of the witnesses you've observed at trial.  Counsel's views of their own witnesses, paid or unpaid, or of the other side's witnesses, are not evidence.

Dkt. #4153 (11/15/21 Trial Tr.) at 7182:20-25;[14] *see also id.* at 7063:23 – 7064:2 ("The lawyers' statements and arguments are not evidence. . . .  The lawyers' questions and objections are not evidence."), 7066:2-6 ("Another part of your job as jurors is to decide how credible, or believable, each witness was.  This is your job, not mine.  It is up to you to decide if a witness's testimony was believable and how much weight you think it deserves."), 7068:25 – 7069:1 ("Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.").  Defendants do not and cannot explain why this is insufficient to cure any prejudice resulting from this error.  The statements Defendants object to are a few short sentences in a multi-hour closing argument, following a six-week trial.  *Supra* at fn.5.  It is implausible these statements could so influence the jury as to justify a new trial on this record.

    **E.**    **Plaintiffs' counsel's statements regarding Defendants' "intentional" conduct were legally correct and Defendants' preemption arguments have already been properly rejected by this Court.**

Defendants next complain that Plaintiffs' counsel "improperly suggested that the jury can rest liability on the 'intentional' prong of Ohio public-nuisance law solely because Defendants' 'weren't accidently dispensing opiates'—and regardless of the lawfulness of that conduct under federal law."  Motion at p. 9.  They argue this is both an incorrect statement of law, as well as an "attempt to inject a completely novel legal theory at the last minute, after the evidence has closed,

---

[14]    Walmart's counsel originally proposed the following curative instruction: "It is up to you, the jury, to decide the credibility of the witnesses you have observed at trial.  Counsel views of their own witnesses, paid or unpaid, or of the other side's witnesses are not evidence <u>and are irrelevant.  You should not consider them in any way when rendering your verdict or making your own determination regarding a witness' credibility</u>."  Dkt. #4153 (11/15/21 Trial Tr.) at 7181:7-23 (additional language underlined).  The Court agreed to read the first part, noting the underlined language was "surplusage."  *Id* at 7181:24 – 7182:17.  Walmart's counsel did not object to this modification; he simply said: "Thank you, Your Honor."  *Id.* at 7182:6.

depriving Defendants of fair notice." *Id*. at pp. 9-10.  They further argue that such a claim is preempted under the obstacle preemption doctrine. *Id*. at p. 10.  In a related argument, Defendants assert that Plaintiffs' counsel suggested to the jury "that Defendants should be held liable merely for dispensing opioid medications[,]" which is contrary to Plaintiffs' prior representations and constitutes a "stop-selling" argument that is barred by the impossibility preemption doctrine. *Id*. at pp. 10-12.  Defendants' arguments are entirely without merit and should be rejected.

First, Defendants' argument that they cannot be held liable for intentional lawful conduct that creates a nuisance is simply incorrect, as explained by Plaintiffs in their response to Defendants' Rule 50 motions. Dkt. #4131 (Ps' Rule 50 Opp.) at pp. 57-58.  Nor is it a "last minute" "completely novel legal theory" that Plaintiffs are seeking to impose nuisance liability on Defendants based on their intentional conduct (in addition to their unlawful conduct). *See, e.g.,* Dkt. #3365 (CT3 Ps' MTD Opp.) at pp. 27-31 (discussing Plaintiffs' nuisance allegations based on Defendants' intentional conduct); Dkt. #3404 (Order Denying CT3 MTD) at pp. 27-28 ("Contrary to the Pharmacy Defendants' contention, Plaintiffs clearly allege Defendants engaged in *intentional* conduct to dispense opioids in a manner that caused an oversupply of highly addictive drugs in Plaintiffs' communities. . . .  Accepting these allegations as true and construing them in the light most favorable to Plaintiffs, the Court finds Plaintiffs have fairly and sufficiently stated plausible claims for absolute public nuisance based on the Pharmacy Defendants' alleged intentional conduct involving their dispensing activities.") (emphasis in original).  And Defendants' obstacle preemption arguments should be rejected for the same reasons set forth in this Court's prior rulings and the Track 1 plaintiffs' prior briefing. *See, e.g.,* Dkt. #2565 (CT1 Order on Preemption MSJ) at p. 22; Dkt. #2171 (CT1 Ps' Opp. to Preemption MSJ) at pp. 1-8; Dkt. #1025 (CT1 R&R on MTD) at pp. 52-54, *adopted by* Dkt. #1203 (CT1 Order & Opinion) at p. 2; Dkt. #654 (CT1 Ps' MTD Opp.) at pp. 120-122.

Moreover, Plaintiffs' counsel never suggested that Defendants can be held liable simply because they sold prescription opioids.  Rather, he made it clear that that the problem in this case is the *inappropriate manner* in which Defendants sold those prescription opioids.  Dkt. #4153

12

(11/15/21 Trial Tr.) at 7095:16-23 ("And if they *don't want to do the work right to sell these pills*, then let the pharmacies *that will do the work right* get the business. They don't have to sell C-II drugs. And their idea of, well, we want to make sure that patients are getting their medicines. Well, patients can get their medicines at pharmacies *that do it right*. They don't have to sell the drugs, they choose to sell the drugs.") (emphasis added).[15]

Defendants argue that these statements of Plaintiffs' counsel contradict "Plaintiffs' prior representations to Defendants and the Court[,]" pointing to the *Track 1-B* plaintiffs' response to the pharmacy defendants' MIL No. 5 regarding the *distribution*-based nuisance claims at issue in the *Track 1-B* case. Motion at p. 10. *See also* Dkt. #4153 (11/15/21 Trial Tr.) at 7128:6-13. Specifically, in that response, the Track 1-B plaintiffs stated: "As a preliminary matter, Plaintiffs do not intend to argue that the Pharmacy Defendants are liable based merely on the fact that they distributed opioids. It is their distribution of opioids **without implementing effective controls against diversion** that forms the basis of their liability in this case." Dkt. #3464 (CT1B Ps' Opp. to Ds' MILs) at p. 15 (emphasis in original).

In the present case, which deals with nuisance liability based on Defendants' *dispensing* conduct, Plaintiffs similarly are not arguing that Defendants are liable simply because they dispensed opioids. Rather, Plaintiffs have argued that Defendants are liable because they dispensed prescription opioids unlawfully *and/or* because they *intentionally* dispensed prescription opioid *in a manner in which they knew or were substantially certain would interfere with public health and safety*. This is entirely consistent with how the jury was instructed regarding intentional conduct. Dkt. #4153 (11/15/21 Trial Tr.) at 7072:21 – 7073:5 ("For you to find that a

---

[15]  Defendants eventually objected to these statements (not contemporaneously, but approximately 45 minutes later). Dkt. #4153 (11/15/21 Trial Tr.) at 7126:2-9. The Court disagreed with Defendants' interpretation of the statements and noted that defense counsel could raise their points to the jury during their own closing arguments. *Id*. at 7125:10 – 7126:4 ("I don't think he said that. I mean -- . . . . -- obviously you don't have to have a controlled substances license, but any pharmacy's got to have one. So I don't think he suggested that. . . . Well, it's technically true, but any pharmacy – you can put out – you can say in your argument any pharmacy that does that would be out of business. And you're right. So why don't you – you can get up and say that in your argument, Mr. Delinsky.").

person engaged in intentional conduct, it is enough that the person intended to act and knew, or was substantially certain, that the circumstances resulting from that act would interfere with public health or public safety.  It is not necessary for you to find that the person intended to cause a public nuisance.  If a person learns that circumstances resulting from their conduct interferes with public health or public safety, and the person continues that conduct, then the subsequent conduct is intentional.").[16]  Nor would it be "impossible" for Defendants to comply with both their dispensing duties under the federal Controlled Substances Act and their duties under Ohio state law.  Thus, Defendants' "impossibility preemption" arguments should be rejected for the same reasons set forth in this Court's prior evidentiary ruling and the Track 1-B plaintiffs' prior MIL briefing. Dkt. #3546 (CT1B Evidentiary Order) at pp. 25-26; Dkt. #3464 (CT1B Ps' Opp. to Ds' MILs) at pp. 15-17.

---

[16]  This is also entirely consistent with Plaintiffs' counsel's statements to the jury.  Dkt. #4153 (11/15/21 Trial Tr.) at 7169:9 – 7170:1 ("I've got to show either one or two.  I have got to show that either the defendant engaged in intentional conduct that caused a significant and ongoing interference with this public right, or that they engaged in unlawful conduct with the same result.  I think we've done both. The intentional element is certainly met.  They weren't accidentally dispensing opiates.  They knew what they were doing.  The pharmacists claimed to have been trained.  The companies claimed to be supplying adequate policies and procedures.  There was clearly knowledge of what was going on in place.  The conduct, poor, inadequate, or superb, was intentional conduct each step along the way. Nobody was ever accidentally doing anything at all here.  This isn't where someone accidentally dumped a bunch of lead into the water supply without realizing that the lead in the paint that they dumped in or something like that.  This was conduct that understood and known from the beginning."), 7171:12 – 7172:6 ("[O]n Page 19 where [the judge] talks a little bit more about intentional conduct.  And he says this is conduct done purposefully, not accidentally.  Well, that's clearly what we've got here.  This is conduct where it says, it's not necessary for you to find that the person intended to cause a public nuisance.  You know, this is – this is intent that they've got to have intent.  They can't be doing this accidentally.  And the intent has to be one that's intentional conduct, that they acted and knew or was substantially certain that circumstances might interfere or would interfere.  It says not might, would.  But I think all of their witnesses have said that.  They all know that diversion can interfere and can be a problem.  They all know they have corresponding responsibility.  They all know if they don't have the policies in place, that they're not where they need to be.  And that's always been intentional with all of them.  It's never been an accident."), 7320:16-24.  Moreover, even if Plaintiffs' counsel's statements regarding the law were inconsistent with the Court's instructions (which they were not), the Court specifically instructed the jury: "The lawyers will talk about the law during their arguments.  But it what they say is different from what I say, you must follow what I say.  What I say about the law controls."  *Id.* at 7061:18-21.

14

**F.    Defendants' remaining arguments are without merit.**

Finally, Defendants claim that "Plaintiffs' counsel made a number of other deeply prejudicial and inflammatory statements[.]"  Motion at p. 12.  Yet they only cite to one example: "a 'joking' encouragement to jurors who agreed with him that, 'if there's some that don't see it that way, please, those of you who do, I want you to not beat them up, but really go after them[.]'" *Id*. (quoting Dkt. #4153 (11/15/21 Trial Tr.) at 7321-7322).  Again, Defendants fail to provide the entirety of counsel's statement:

> I think your answer to this should be yes, and I hope that you see it the same way and those who – if there's some that don't see it that way, please, those of you who do, I want you to not beat them up, but really go after them.  *No, I'm joking*.
>
> *You've got to debate this, though.  You've got to come up with the right answer, and it takes all of you to do it.  And if you don't agree with me on this stuff, that's fine, you voice your opinion and y'all will figure it out*.  But this is extremely serious.  And if you answer no, then you've got to look at it for Trumbull County, it's the same question, *if you answer no to both, then the case is over*.

Dkt. #4153 (11/15/21 Trial Tr.) at 7321:24 – 7322:10 (emphasis added).  Defendants provide no explanation as to how these statements, considered in their entirety, are inflammatory or prejudicial at all, let alone sufficiently inflammatory or prejudicial to warrant a mistrial.  Moreover, yet again, Defendants failed to object to these statements at the time they were made (or even at the end of the day).  *Supra* at fn.10.

## CONCLUSION

For the foregoing reasons, Defendants' motion for mistrial should be denied.

Dated:  November 17, 2021

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

15

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR 00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX 77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com

*Trial Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113 (216)
861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

16

Hunter J. Shkolnik
NAPOLI SHKOLNIK
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088, Ext. 2007
hunter@napolilaw.com

*Counsel for Plaintiffs Lake County and
Trumbull County, Ohio*

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger

17