UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION </br></br>THIS DOCUMENT RELATES TO: </br></br>*Track Three Cases:* </br></br>*County of Lake, Ohio v.* </br>    *Purdue Pharma, L.P., et al.,* </br>Case No. 18-op-45032 </br></br>*County of Trumbull, Ohio v.* </br>    *Purdue Pharma, L.P., et al.,* </br>Case No. 18-op-45079 | MDL 2804 </br></br>Case No. 1:17-md-2804 </br></br>Judge Dan Aaron Polster </br></br>**OPINION AND ORDER REGARDING DEFENDANTS' MOTION FOR MISTRIAL** |

During closing arguments in the Track Three trial, counsel for Plaintiffs (Mr. Lanier) made several statements Defendants contend now warrant declaration of a mistrial. Defendants did not object to any of the statements at the time they were made.[1] Defendants did object to *some* of the statements during the morning intermission, well after they were made. Defendants then objected to the remainder of the allegedly-objectionable statements in the present motion.

After closing arguments were complete and the jury sequestered for deliberation, Defendants filed this Joint Motion for Mistrial Based on Closing Arguments. Doc. #: 4156. Plaintiffs responded in opposition the next day, doc. #: 4158. Defendants informed the Court they would not file a reply. For the following reasons, Defendants' motion is **DENIED**.

---

[1] Mr. Majoras, counsel for Defendant Walmart, did make one contemporaneous objection to one of Mr. Lanier's statements, but that objection is not included in Defendants' current motion. *See* Doc. #: 4153 (11/5/21 Trial Tr.) at 7306. That defense counsel made this contemporaneous objection highlights the fact that counsel for any of the Defendants could have objected during closing arguments to the statements made by Mr. Lanier they now contend were so egregious that a mistrial is required.

I.      **Legal Standards.**

Declaring a mistrial is a remedy of last resort: "trial courts should, whenever possible, pursue alternatives less drastic than declaration of a mistrial." *Hamm v. Jabe*, 706 F.2d 765, 768 (6th Cir. 1983) (citing *Harris v. Young*, 607 F.2d 1081, 1085 (4th Cir.1979)); *United States v. McKoy*, 591 F.2d 218, 222 (3rd Cir.1979)). "[W]hether misconduct in a trial of a cause of action is of such a nature that a fair or impartial verdict cannot be reached is in the first instance for the trial court's determination." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) (quoting *Travelers Fire Ins. Co. v. Ranney-Davis Mercantile Co.*, 173 F.2d 844, 851 (10th Cir. 1949)). "The decision to order a mistrial rests in the trial judge's discretion." *Hamm*, 706 F.2d at 767 (citing *Illinois v. Somerville*, 410 U.S. 458, 462 (1973)).

When comment or argument by counsel is inappropriate, a mistrial may be required "where there is a reasonable probability that the verdict of a jury has been influenced by such conduct." *City of Cleveland*, 624 F.2d at 756 (quoting *Twachtman v. Connelly*, 106 F.2d 501, 508–509 (6th Cir. 1939)). The Sixth Circuit has recognized that "[t]he trial court is, of necessity, clothed with a great deal of discretion in determining whether an objectionable question is so prejudicial as to require a retrial . . . . The trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *Id.* at 756 (quoting *Harris v. Zurich Insurance Co.*, 527 F.2d 528, 531 (8th Cir. 1975)).

"In determining whether 'there is a reasonable probability that the verdict of a jury has been influenced' by improper conduct, warranting that the verdict be set aside, a court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is

a close case), and the verdict itself." *Id*. The Sixth Circuit routinely concludes that isolated improper remarks are insufficient cause for a mistrial; rather, only impermissible statements that "consistently permeate[] the entire trial from beginning to end" warrant declaring a mistrial, especially where the trial court promptly provides curative instructions. *Jimkoski v. State Farm Mut. Auto. Ins. Co.*, 247 F. App'x 654, 662 (6th Cir. 2007) (quoting *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir.1997)); *cf. City of Cleveland*, 624 F.2d at 756 (finding that Defendant did not receive a fair trial because, in part, "objections to the misconduct were repeatedly made and sustained and the court continually admonished and finally reprimanded counsel but he paid no attention to the admonitions or reprimand and made prejudicial remarks in his closing argument to the jury").

Although there are examples where a "single misstep" by counsel have risen to a level requiring a mistrial, the Sixth Circuit has observed those instances are "rare." *See United States v. Solivan*, 937 F.2d 1146, 1150 (6th Cir. 1991) ("There are instances where a 'single misstep' on the part of the prosecutor may be so destructive of the right to a fair trial that reversal is mandated. We realize that such instances may be rare . . . .") (citing *Pierce v. United States*, 86 F.2d 949 (6th Cir. 1936)).[2] Ultimately, "[d]eclaration of a mistrial is one of the most 'drastic' alternatives available to a trial court, a remedy of 'last resort.'" *Tamraz v. Lincoln Elec. C*o., 2007 WL 4287620, at *4 (N.D. Ohio Dec. 4, 2007) (citations omitted).

**II.     Analysis.**

As described more fully below, some of the statements Mr. Lanier made during his closing arguments were improper. The sum of these comments, however, whether measured individually

---

[2] *Solivan* is a criminal case, where both the burden of proof and the standard of conduct for prosecutors is higher than those for attorneys representing an "ordinary party to a controversy." *Solivan*, 937 F.2d at 1150 (quoting *Berger v. United States*, 295 U.S. 78, 85 (1935)).

or taken all together, comprised only a small portion of his three-hour closing argument – which was, of course, only a small portion of the six-week trial. Moreover, in the Court's preliminary jury charge delivered at the beginning of trial, the Court instructed the jury that attorney statements and arguments are not evidence. The jury was instructed on this point again in the Court's final jury charge, mere moments before Mr. Lanier began his closing argument. And the Court issued curative instructions following two of Mr. Lanier's statements in closing arguments. This is far different than the pattern of misconduct and sustained objections that plagued the trial in *City of Cleveland,* from opening statements all the way through closing arguments.

While it is true that Mr. Lanier, as a highly-experienced trial attorney, should have known better than to make the improper comments in the first place, whatever prejudice may have been introduced by his comments was quickly and effectively dealt with by the Court and not repeated by Mr. Lanier. It cannot be said, as was the case in *City of Cleveland*, that "[t]he cumulative effect of counsel's remarks . . . served to leave [an] . . . indelible impression upon the minds of the jurors." *City of Cleveland*, 624 F.2d at 75859.

\* \* \*

Specifically, Defendants object most strongly to Mr. Lanier's statement during closing argument that this case will have national ramifications regarding what is permissible conduct by a pharmacy under the Controlled Substances act. Defendants objected to this statement during the morning intermission (about an hour after it was made) and the Court issued a curative instruction as soon as the jury returned.[3] The curative instruction was so clearly opposite to what Mr. Lanier

---

[3] Mr. Lanier initially stated: "But what you're about here is not only every bit as important as the *Holiday* case [which discussed a pharmacy's failures to comply with the Controlled Substances Act]. What you're about here is something that's even more important. Because you're going to make decisions, and those decisions will be reported. And the reporting of those decisions will set up the standards by which these chain pharmacies and independent pharmacies must act. You are actually sitting in the seat now as finders of fact to determine what the facts are that answer these questions to determine what is permissible in our society within the framework of the law and what is not. That's an awesome, awesome responsibility, but it's an awesome, awesome opportunity. \* \* \*

4

said, that it was tantamount to a rebuke. Mr. Lanier then acknowledged to the jury that his earlier statement was not appropriate and he repeated the Court's curative instruction.[4]

Defendants liken Mr. Lanier's comments to those made by the U.S. Attorney in closing arguments in *United States v. Solivan*, 937 F.2d 1146 (6th Cir. 1991). In *Solivan*, the Sixth Circuit concluded, "a single misstep [by the prosecutor in closing arguments in a criminal case was] so destructive to defendant's right to a fair trial that it constitutes reversible error." *Id.* at 1150.

As Plaintiffs point out, however, the largest and most important distinction between *Solivan* and the present case is that *Solivan* is a criminal case. The Sixth Circuit expressly highlighted the higher standard a prosecutor must meet as a representative of a sovereign government. *See id.* ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.") (quoting *Berger*, 295 U.S. at 85). The Sixth Circuit also carefully noted that, even in a criminal case, instances where a single misstep could mandate reversal of a verdict are "rare." *Id.*

---

[T]oday, I get to hand this to y'all, and I'm done. Y'all get to figure out what's okay and what's not. Y'all get to decide. Y'all get to form maybe the most seminal case in pharmaceutical history, in pharmacy history, dealing with the Controlled Substances Act. * * * And this has national ramifications. It's not the kind of thing where people will say years down the road, oh, that only pertained to those three pharmacies in Northeastern Ohio in Lake and Trumbull County. No, this will have ramifications all around the United States of America." Doc. #: 4153 (11/5/21 Trial Tr.) at 7082–84. After Defendants objected during a break, the Court delivered a curative instruction: "Before – before Mr. Lanier proceeds, I want to remind you that your job as jurors is to decide the issues presented in this case only. It is not to decide anything about any future case or any other case in the country. You will decide only whether each plaintiff, Lake County and Trumbull County, has proved its case against each of the three defendants." *Id*. at 7130.

[4] Mr. Lanier stated: "And I want to be really clear when I said that this is a case that I believe has national ramifications, that's not your concern either. In answering the judge's questions, your concern is these two counties and the actions of these defendants as it has affected these two counties. What happens after that is not your concern. All you've got to do is focus on that. And that's what the judge is telling you here." *Id*. at 7171.

The Court agrees with Defendants that the comments made by Mr. Lanier regarding possible ramifications of their verdict were inappropriate. However, the Court concludes Mr. Lanier's statement was not so inflammatory or prejudicial that it destroyed Defendants' right to a fair trial. Indeed, if counsel's argument was so problematic, it is puzzling why Defendants' counsel did not object immediately (as occurred in *Solivan*), rather than waiting almost an hour to voice their objection. The Court even expressed surprise during the morning break: "You should have objected there. I would have sustained it."[5] And critically, the Court immediately issued a curative instruction after Defendants requested it, which Mr. Lanier then echoed himself. *See City of Cleveland*, 624 F.2d at 756 (noting one of the factors a court should weigh when considering mistrial is "the manner in which the parties and the court treated [counsel's] comments"). In light of these circumstances, the statements made during closing argument do not warrant a mistrial. *See Sparks v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*, 99 F.3d 1140, 1996 WL 487252, at *5 (6th Cir. 1996) (unpublished) (affirming denial of motion for a new trial where the trial court promptly followed counsel's improper question with a curative instruction, noting: "[W]e presume that a jury will understand and adhere to curative instructions.").

Next, Defendants assert that several other statements or suggestions made by Mr. Lanier "underscore the impropriety of this 'send a message' closing argument and collectively warrant a mistrial." Motion at 5. These statements include implying that liability will not carry financial consequences, implying that there may exist multiple, ongoing investigations into Defendants'

---

[5] Doc. #: 4153 (11/5/21 Trial Tr.) at 7124. While the Court understands and appreciates counsel's courtesy and professionalism in not wanting to interrupt opposing counsel during closing arguments, if the Defendants believed any of the statements made by Mr. Lanier were so prejudicial that they warranted a mistrial, they should have objected immediately rather than waiting until the first intermission, or until the following day with the present motion.

pharmacies in the Plaintiff-Counties, and improperly vouching for Plaintiffs' expert witness.[6] The Court addresses these statements in turn.

Defendants assert Mr. Lanier's argument to the jury that "[t]his may be the only civil case you ever get called on where nobody's asking you for money" could "easily be interpreted as an assertion that Defendants face no risk of financial liability from an adverse jury verdict." Motion at 5-6. The Court is not persuaded that this statement provides any basis for a mistrial. First of all, Defendants' above-quoted excerpt omits Mr. Lanier's statement to the jury that gives fuller context to the notion that "nobody's asking *you* for money" (emphasis added):

> Please remember that you are being asked to determine only whether one or more of the defendants created a public nuisance. You are not being asked to determine whether there should be a remedy for this claim, or what that remedy should be. *If you find that one or more of the defendants created a public nuisance, the court will determine the remedy.*

Doc. #: 4153 (11/5/21 Trial Tr.) at 7072 (emphasis added). The last quoted sentence makes clear that a plaintiffs' verdict will carry consequences – but those consequences will be decided by the Court, not the jury. The Court highly doubts the jury would interpret Mr. Lanier's full remarks as "an assertion that Defendants face no risk of financial liability from an adverse jury verdict." Furthermore, to the extent any jurors might have formed an impression of that sort, Defendants' counsel could easily have countered it with clarifying argument of their own.

Next, Defendants take issue with Mr. Lanier's glancing suggestion that Defendants might be the subject of ongoing investigations in Lake and Trumbull Counties. Motion at 6-8.[7] The Court

---

[6] Defendants also use their Motion as an opportunity to reargue a substantive legal argument already decided against them, insisting they cannot be held liable for intentional conduct and reasserting an inapplicable preemption argument. The Court will not address those re-arguments here, except to note they do not support a mistrial.

[7] Mr. Lanier stated: "[Defense counsel] said, [there has been] no county investigation. Well, first of all, ongoing investigations I don't even know that I'd be allowed to get into. But what we did with our time that we had in this case is we drove home the bigger picture. And if we dealt with investigation by investigation, I can guarantee you what they'd have done is come in here and say, well, okay, that's five investigations, that's seven suicides, so that's

7

agrees Mr. Lanier's remarks about investigations, though oblique and fragmentary, were nevertheless at least slightly improper. Had Defendants objected at the time, the Court may well have sustained the objection and instructed the jury to disregard the comments. But Defendants did not object, and the offending material was certainly not of sufficient magnitude, in the context of a six-week trial, to justify a mistrial.

Finally, with respect to Defendants' concerns over Mr. Lanier's purported bolstering of expert witness Dr. Anna Lembke,[8] the Court notes once again that Defendants did not object in the moment; and when they did bring their objection to the Court's attention during a break, the Court agreed to deliver immediately a curative instruction proposed by defense counsel, Mr. Majoras: "Ladies and Gentlemen, before we have the final arguments of each of the defendants, I want to remind you that it is up to you, the jury, to decide the credibility of each of the witnesses you've observed at trial. Counsel's views of their own witness, paid or unpaid, or of the other side's witnesses, are not evidence." Doc. #: 4153 (11/5/21 Trial Tr.) at 7182. Having issued this instruction immediately after receiving Mr. Majoras' suggested language, the Court does not now view the bolstering issue even remotely as a basis for a mistrial.

Ultimately, none of Mr. Lanier's statements individually rise to the level of destroying Defendants' right to a fair trial. And even taken together, considering "the totality of the circumstances," the Court concludes Mr. Lanier's statements did not "permeate[] the entire trial from the beginning to the end" and did not produce prejudice so substantial as to preclude the jury

---

this, but where's the bigger picture? And so we opted to go with the bigger picture in the time zone." Doc. #: 4153 (11/5/21 Trial Tr.) at 7313.

[8] Mr. Lanier stated: "Dr. Lembke. She's one of the most impressive people I've ever had the honor of putting on the stand. I started trying cases -- I got out of law school in 1984. So I've been doing this for 37 years. I've been fortunate enough to try cases from California to New Jersey and all points in between. She's one of the best witnesses I've ever had a chance to put on. So impressive." Doc. #: 4153 (11/5/21 Trial Tr.) at 7090.

from deliberating without taint and reaching a fair and impartial verdict. *City of Cleveland*, 624 F.2d at 756, 755.

As is made clear by Defendants' motion, all of Plaintiffs' counsels' statements to which the Defendants now object occurred only during closing arguments. None of those statements, even collectively, can be considered "pervasive misconduct" that prevented Defendants from receiving a fair trial. *See City of Cleveland*, 624 F.2d at 75859. The Court concludes it is highly unlikely that any jury, but in particular this jury – which has proved to be remarkably attentive and engaged throughout the entire trial[10] – would be prejudicially influenced by Mr. Lanier's statements made in closing argument. To the extent that Mr. Lanier's statements went over the line, corrective instructions were issued promptly.

In sum, Defendants have not identified prejudice of the sort that entitles them to the "drastic" remedy of a mistrial. Accordingly, Defendants' Joint Motion for Mistrial Based on Closing Arguments Doc. #: 4156, is **DENIED**.

**IT IS SO ORDERED.**

    /s/ Dan Aaron Polster  November 23, 2021
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

---

[10] During trial, the Court allowed jurors to submit written questions that were then read by counsel to the witness. The Court and all counsel have repeatedly remarked that the jurors' questions were exceptionally incisive and show a high degree of engagement. Furthermore, the Court earlier dismissed a juror for failing to follow instructions; the Court is very confident the remaining jurors were even more scrupulous in following instructions, including the explanation of what is and is not evidence, and the curative instructions issued during closing argument. *See Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (recognizing "the almost invariable assumption of the law that jurors follow their instructions"); *Sparks v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW*, 1996 WL 487252, at *5 (6th Cir. Aug. 26, 1996) ("we presume that a jury will understand and adhere to curative instructions").