**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All actions* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### PEC'S OPPOSITION TO DEFENDANTS' MOTION FOR MODIFICATION OF THE PROTECTIVE ORDER [ECF NO. 4144]

The Plaintiffs Executive Committee (PEC) is not in principle opposed to reciprocity between the parties nor coordination between this MDL and outside litigation. The PEC is strongly opposed, however, to Defendants' attempt to seek a judicial decision on matters that have not been the subject of any discussion or negotiation between the parties since August 2020—when Defendants abandoned the normal meet-and-confer process. Further, Defendants appear to suggest that the PEC *alone* should bear the substantial costs, in time and money, of re-producing enormous amounts of data that could result if the Court granted Defendants' *Motion for Modification of the Protective Order to Permit Equal Access to MDL Discovery and Expert Reports and Testimony from Other Opioid Litigation* (Nov. 10, 2021), ECF No. 4144. Moreover, a blanket rule permitting use of all MDL data and expert discovery in non-MDL litigation is inappropriate because certain data is simply irrelevant to any proceeding outside the MDL and there is a high probability that doing so would bring this Court into conflict with non-MDL courts and non-MDL litigants, including state attorneys general. These results would not serve—indeed, would be incompatible with—the goals of fairness and efficiency that Defendants' motion purports to pursue, and which animate this centralized litigation. *See* 28 U.S.C. § 1407. Defendants' motion should be denied.

**BACKGROUND**

Defendants first raised the issues presented by their motion on June 12, 2020, almost 17 months before their motion was filed. In response to Defendants' initial proposal, Plaintiffs objected to Defendants' carving out their own transactional and dispensing data without reciprocally providing for any exemptions for Plaintiffs' highly sensitive productions. Plaintiffs especially objected to terms that appeared to permit use in other litigations of case files from Summit County and Cuyahoga County Children Services agencies, which the Court ordered those bellwether plaintiffs to produce into the MDL in limited numbers because of the extremely sensitive nature of the information contained in these files and the concern that even redactions may be inadequate to fully protect the subject children's identities.

Defendants made a revised proposal purporting to accommodate these and other objections. On August 9, 2020, Plaintiffs countered Defendants' revised proposal with their own proposed revisions. Among other revisions, Plaintiffs proposed that the onus be placed on the receiving party to show a need for disclosure outside the MDL if the producing party objected, rather than placing the onus on the producing party, as Defendants had proposed. The proposal also identified additional materials to be excluded because those materials seemingly had no relevance to litigation pending elsewhere, including claims data. Plaintiffs fully expected that negotiations would continue and believed that a satisfactory agreement was achievable.

Plaintiffs received *no response* from Defendants to their proposed revisions of August 9, 2020. Indeed, Defendants did not breathe another word on these issues from August 2020 until they filed their motion in November 2021—one year and three months later. *See* Decl. of David I. Ackerman (Nov. 24, 2021), *attached as* Ex. A.

Defendants' motion is no model of clarity—unsurprisingly, given the extreme lapse of time and resulting staleness of the issues raised by it. It is unclear if Defendants are seeking both access

to and use of the prior discovery, or use only. With respect to access, Plaintiffs are not willing to give Defendants, either in the MDL or in non-MDL litigation, access to Plaintiffs' document review platform that contains Plaintiffs' work product. This litigation, moreover, has generated as much data in three years as the Hubble Space Telescope generates in five:[1] approximately 50 terabytes of documents have been produced by hundreds of parties. It is unreasonable for Defendants to demand that Plaintiffs make this data accessible to non-MDL defendants—which would require substantial time, resources, and potentially jeopardize Plaintiffs' work product—or to re-produce the data to Defendants. Moving forward, Plaintiffs are not in general opposed to defendants from non-MDL cases accessing the MDL Repository when appropriate as productions are made, but the burden to re-produce the extraordinary amount of data that has been previously produced should not be placed on Plaintiffs; this is not a "fair extension" of this Court's prior rulings. Defs.' Br. 10, ECF No. 4144.

With respect to use, Plaintiffs request that the parties exhaust the meet and confer efforts as required by the Court's Local Rules to clarify precisely what is in dispute for the Court to resolve. *See* N.D. Ohio L.R. 37.1(a)(1). Although Plaintiffs do not indiscriminately reject coordination with non-MDL litigations, a blanket rule for all documents and expert discovery is not appropriate, as explained below.

## ARGUMENT

Defendants must show good cause to modify a protective order, an especially weighty burden where, as here, Defendants have consented to its entry. *Premier Dealer Servs., Inc. v. Allegiance Adm'rs, LLC*, No. 2:18-cv-735, 2021 WL 266327, at *2 (S.D. Ohio Jan. 27, 2021)

---

[1] According to NASA, Hubble generates 10 terabytes of new data annually. "About the Hubble Space Telescope," NASA (Dec. 18, 2018), https://www.nasa.gov/mission_pages/hubble/story/index.html.

("heightened burden"); *CMC Telecom, Inc. v. Mich. Bell Tel. Co.*, No. 1:07-cv-319, 2012 WL 13185449, at *2 (W.D. Mich. Apr. 18, 2012) (quoting *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501 (S.D. Iowa 1992)) ("[T]here is general unanimity … that where a party to a stipulated protective order seeks to modify that protective order, that party must demonstrate particular good cause to gain relief from the agreed protective order."). The Court's "broad discretion" with respect to protective orders, *Eagle v. Hurley Med. Ctr.*, 292 F.R.D. 466, 478 (E.D. Mich. 2013), does not include discretion to enter orders violating independent provisions of the Rules. *See United States v. Grubbs*, 773 F.3d 726, 731 (6th Cir. 2014) (error of law "necessarily" abuse of discretion).

Defendants have not shown "particular good cause" to enter their proposed order. The motion is premature and lacks necessary clarity. Moreover, its practical effect would or could be to require disproportionate and irrelevant discovery from Plaintiffs and the PEC, and potentially disclosure of protected attorney work product, contrary to the requirements of Federal Rule of Civil Procedure 26(b). So long as these defects persist, no good cause will support modification of the Court's Case Management Order No. 2 (May 15, 2018) (Polster, J.), ECF No. 441, *as amended by* Amendments to CMO No. 2 Re: Confidentiality and Protective Order (Sept. 29, 2019) (Cohen, S.M.), ECF No. 2688.

## I.     Defendants' Motion Is Premature.

This Court's Local Rules provide that a party to a discovery dispute may seek judicial relief "only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes." N.D. Ohio L.R. 37.1(a)(1). No such efforts have been made, nor certified to the Court as having been made, with respect to Defendants' motion here. As described above and in the attached Exhibit A, the parties were engaged in ongoing negotiation of these issues more than one year ago when Defendants seemingly abandoned those negotiations, for no stated or conceivable reason and

without notice to Plaintiffs, by simply failing to respond to Plaintiffs' good-faith counterproposal. The question of access to expert reports,[2] raised by Defendants as the second of two purposes for their motion, *see* Defs.' Br. 2, never arose in those negotiations at all, but appears here for the first time. Defendants did not even attempt to reopen the negotiations they groundlessly aborted before filing their present motion more than a year later. Defendants' motion blithely asserts that Plaintiffs' counterproposal "also reveal[s]" that the parties are "at an impasse," Defs.' Br. 8 n.3, but Defendants' opinion on the "unworkab[ility]" of that counterproposal, also expressed for the first time in their motion, is no substitute for actually carrying negotiations through to their conclusion.

For this reason alone, Defendants' motion must be denied. Plaintiffs stand ready to resume the good-faith negotiations Defendants abandoned.

## II.  Defendants' Motion Lacks Necessary Clarity.

A motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1)(B). Where the court cannot discern the relief sought by a motion, the motion should be denied. *See, e.g.*, *Warner v. Floyd*, No. 16-4143-SAC, 2016 WL 11200094, at *1 (D. Kan. Dec. 19, 2016); *Garcia v. Las Brisas Quick Hand Car Wash, Corp.*, No. 09-22599-CIV-UNGARO/SIMONTON, 2011 WL 13173813, at *4–5 (S.D. Fla. Aug. 5, 2011); *United States v. Harris*, No. 81–11–02–CR–8, 1989 WL 206427, at *1 (E.D.N.C. Aug. 28, 1989). Here, Defendants' meandering and desultory submission leaves critical questions unanswered: Whose obligation would it be to make productions available to non-MDL defendants? What information will be produced to them, on what grounds? From where will the productions be made, and at

---

[2] As to use of expert discovery conducted in the MDL in non-MDL litigation, accepting Defendants' proposed amendments as written would conflict with the Court's common-benefit order. *See* Order to Establish Qualified Settlement Fund (Aug. 12, 2021), ECF No. 3828.

whose expense? As discussed further below, the answers to these questions are critical to Plaintiffs' ability to respond effectively to Defendants' motion.

Given the substantial interval between when these issues were first raised and when Defendants filed their motion, it is unsurprising that time has blurred the precise contours of the parties' dispute.[3] Defendants' motion should be denied and Defendants ordered to resume good-faith negotiations with Plaintiffs to reanimate this long-dormant matter, so as to narrow and sharpen the issues for judicial decision should the parties truly reach an impasse.

### III. To the Extent Defendants' Motion Seeks Access to Prior Discovery at the Expense of the PEC, It Must Be Denied.

Defendants frame their motion as a simple request for "equal access" to previously produced documents which Plaintiffs already enjoy. Compliance with Defendants' proposed order, however, may (depending on what relief Defendants are actually seeking) be anything but simple.

Consider Defendants' example of "certain Plaintiff and third-party documents produced in Tracks 1, 1B, 2, and 3 of the MDL concerning various counties in Ohio," which Defendants believe to be relevant to the non-MDL litigation instituted by the Ohio attorney general. Defs.' Br. 1. There is simply no way for the PEC to identify and extract in bulk all or parts of the dozens of party and non-party productions to which Defendants may be referring. The PEC would have to instruct its vendor to manually identify and extract each individual file that was part of a particular production volume, which would take considerable time and resources. Plaintiffs are also not willing to give Defendants and non-MDL defendants alike access to the PEC's document review workspace, which contains Plaintiffs' work product. *See Cason-Merenda v. VHS of Mich., Inc.*, 118 F. Supp.

---

[3] Indeed, Defendants' motion simply ignores material developments in this litigation since August 2020. For example, Defendants' motion raises the question of access to DEA productions, Defs.' Br. 1, without acknowledgement of the order entered by the Court more than *four months ago* addressing this very issue. *See* Order Regarding Sharing of DEA Documents (July 8, 2021), ECF No. 3780.

3d 965, 969 (E.D. Mich. 2015) (finding counsel's "collection of documents that Plaintiffs' counsel saw fit to gather, maintain, and organize into a database during the course of discovery" "readily" qualifies as protected work product); *see also* Fed. R. Civ. P. 26(b)(3)(A)–(B). In short, the burden on the PEC of re-producing material originally uploaded to the MDL Repository would dwarf the burden on MDL Defendants or non-MDL defendants of seeking the same material from the originally producing parties. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

Defendants have had "ample opportunity" to assemble the material produced to the MDL Repository for future use by themselves and non-MDL defendants. Fed. R. Civ. P. 26(b)(2)(C)(ii). Defendants could have requested that the MDL protective order be modified to permit non-MDL defendants access to the MDL Repository at the time productions were made into it. For example, the Ohio attorney general litigation referenced above was instituted in 2017, *before* the centralization of these cases in the MDL in 2018. Defendants were well positioned to know whether productions from MDL case tracks would be relevant to non-MDL litigation at the time the MDL protective order was negotiated and agreed to in May 2018, and certainly well before November 2021. Defendants' vague reference to the progress of time, *see* Defs.' Br. 1 ("As time has progressed"), does not establish or even suggest any reason why this relevance has only become apparent now. Because the modification Defendants request could have been sought at virtually no additional expense at the time of production, or even negotiated in the first instance, no good cause exists to enter the modification now, when the modification will entail astronomical expenses.

**IV.     To The Extent Defendants' Motion Seeks Use of MDL Plaintiffs' Discovery Without a Showing of Relevance, It Must Be Denied.**

Distinct from the question, discussed above, of who may *access* MDL discovery is the question of who may *use* MDL discovery. Contrary to Defendants' assertion, claimants in non-

MDL litigations do not have a license to use MDL discovery, including expert reports, at the PEC's "unfettered" discretion. Defs.' Br. 5. Indeed, claimants in non-MDL litigations are bound to the MDL 2804 protective order as well as the common benefit order. *See* Order to Establish Qualified Settlement Fund (Aug. 12, 2021), ECF No. 3828; Case Management Order No. 2 (May 15, 2018) (Polster, J.), ECF No. 441, *as amended by* Amendments to CMO No. 2 Re: Confidentiality and Protective Order (Sept. 29, 2019) (Cohen, S.M.), ECF No. 2688.

Defendants' "equal access" argument does not account for the inequality of and asymmetry in the information produced by Defendants in MDL 2804 and information produced by Plaintiffs in MDL 2804. Specifically, Defendants' productions into the MDL are presumptively relevant to non-MDL cases—at least where they are also defendants. Plaintiffs' MDL productions, by contrast, are presumptively *irrelevant* to other cases outside the boundaries of their own jurisdictions and in litigations to which they are not a party. In the rare case that Plaintiffs' productions are relevant to non-MDL litigations, Plaintiffs are willing to meet and confer with Defendants to coordinate between the litigations. But a blanket rule that non-MDL parties can use MDL discovery in non-MDL litigation is not appropriate, particularly given that much of Plaintiffs' productions would not be relevant or proportional to the needs of the majority of non-MDL litigations. *Contra* Fed. R. Civ. P. 26(b)(1).

## V. To the Extent Defendants' Motion Seeks an Order from this Court Overriding the Orders of Non-MDL Courts, It Must Be Denied.

The parties have also not met and conferred on a "mechanism to allow disclosure in the MDL of expert materials from Outside Litigation," Defs.' Proposed Order 2, ECF No. 4144-1, which are presumably bound by protective orders in that outside litigation and beyond the scope of this Court's jurisdiction. This Court does not have authority over non-MDL plaintiffs, such as state attorneys general, and cannot order non-MDL plaintiffs to produce expert materials from

non-MDL litigation to this MDL. Nor can the Court nullify other courts' protective orders by permitting disclosure in this litigation where the other courts' orders would prohibit it. Defendants' request as to expert discovery must be denied. The PEC stands ready to begin negotiations on alternative approaches to address this issue.

## CONCLUSION

As has been clear since the beginning of this MDL, the PEC does not object in principle to coordination between this MDL and outside litigation, nor does it object to resuming the good-faith negotiations Defendants abandoned more than a year ago. For the reasons given above, however, the PEC strongly objects to Defendants' attempt to resurrect stale issues without satisfying their obligations to meet and confer and without clarity as to the relief sought, which could require the PEC, at its sole expense, retrospectively to re-produce the voluminous material currently kept in Plaintiffs' document review database; allow Defendants access to the PEC's document review database and the protected attorney work product contained there; and bring this Court into conflict with non-MDL courts and the parties litigating there. Defendants' motion should be denied.

Dated: November 24, 2021               Respectfully submitted

                                       Jayne Conroy
                                       SIMMONS HANLY CONROY
                                       112 Madison Avenue, 7th Floor
                                       New York, NY 10016
                                       (212) 784-6400
                                       (212) 213-5949 (fax)
                                       jconroy@simmonsfirm.com

                                       Joseph F. Rice
                                       MOTLEY RICE LLC
                                       28 Bridgeside Blvd.
                                       Mt. Pleasant, SC 29464
                                       (843) 216-9000
                                       (843) 216-9290 (Fax)
                                       jrice@motleyrice.com

>Paul T. Farrell, Jr., Esq.
>FARRELL & FULLER LLC
>1311 Ponce de Leone Ave., Suite 202
>San Juan, PR 00907
>(304)654-8281
>paul@farrellfuller.com
>
>*Plaintiffs' Co-Lead Counsel*
>
>*/s/Peter H. Weinberger*
>Peter H. Weinberger (0022076)
>SPANGENBERG SHIBLEY &LIBER
>1001 Lakeside Avenue East, Suite 1700
>Cleveland, OH 44114
>(216) 696-3232
>(216) 696-3924 (Fax)
>pweinberger@spanglaw.com
>
>*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of November 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

>*/s/Peter H. Weinberger*
>Peter H. Weinberger