**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: Case No. 1:18-op-45274-DAP | Case No. 17-md-2804 |
| TARRANT COUNTY, TX, | Judge Dan Aaron Polster |
| Plaintiff, | |
| vs. | |
| PURDUE PHARMA, et al., | |
| Defendants. | |

**THIRD-PARTY COMPLAINT**

Defendants and Third-Party Plaintiffs The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II and Kroger Texas LP, (collectively, "Kroger") and Albertson's LLC, Albertsons Companies, Inc., Randall's Food & Drug LP, Safeway Inc., United Supermarkets LLC, (collectively, "Albertsons") bring this Third-Party Complaint against Third-Party Defendants John and Jane Does 1-5000 (the "Prescriber Defendants").

1. The Prescriber Defendants are the licensed healthcare professionals who wrote and authorized the prescriptions for FDA-approved opioid medications that, according to Plaintiff Tarrant County, Texas ("Plaintiff"), should not have been filled by pharmacists employed by the Tarrant County Pharmacy Defendants, including Kroger and Albertsons.  Years after the fact, and without any knowledge about the patients under the Prescriber Defendants' care or the purpose of the prescriptions, Plaintiff now contends that these physicians and other practitioners wrote prescriptions for an "excessive volume" of prescription opioid medications in Tarrant County.

The heart of Plaintiff's claim against the Tarrant County Pharmacy Defendants is that they are liable because their pharmacists filled prescriptions that the Prescriber Defendants wrote. Plaintiff's own allegations make this Third-Party Complaint necessary.

2. To be clear, Kroger, Albertsons and the Tarrant County Pharmacy Defendants deny Plaintiff's contention that a vast number of Texas physicians and other practitioners wrote an "excessive volume" of opioid prescriptions in bad faith or without a legitimate medical purpose. But that is Plaintiff's claim. Indeed, Plaintiff's claim is that numerous physicians and other healthcare providers wrote improper prescriptions that pharmacists working for the Tarrant County Pharmacy Defendants should have refused to fill. And it is the basis for Plaintiff's attempt to impose liability on the Tarrant County Pharmacy Defendants.

3. Although Plaintiff says that prescriptions written by the Prescriber Defendants are to blame for the opioid crisis in Tarrant County, it asserts liability against only the Tarrant County Pharmacy Defendants and, somehow, not the Prescriber Defendants themselves. Plaintiff also ignores the "pill mills" for which Texas has become notorious and the unscrupulous pain clinics and internet pharmacies that fed the illicit market for prescription opioids. In a misguided hunt for deep pockets without regard to actual fault or legal liability, Plaintiff has elected not to sue any of these other parties.

4. The premise of Plaintiff's Complaint is nothing more than unsupported speculation that local pharmacists working for the Tarrant County Pharmacy Defendants, including Kroger and Albertsons filled prescriptions for opioid medications that they should not have filled. However, Plaintiff's lengthy Complaint against the Tarrant County Pharmacy Defendants ***fails to identify even one prescription*** that was supposedly filled improperly by any pharmacist working for any of the Tarrant County Pharmacy Defendants.

5.      Plaintiff also ignores that pharmacists do not write prescriptions and do not decide for doctors which medications are appropriate to treat their patients. A prescription for a controlled substance is an order for a medication that may be issued ***only*** by a physician or other authorized healthcare practitioner. While pharmacists are highly trained and licensed professionals, they did not attend medical school and are not trained as physicians. They do not examine or diagnose patients. They do not write prescriptions. And with only very limited exceptions permitted by law, pharmacists are bound to respect a prescribing doctor's professional medical judgment about which medications are appropriate to treat a particular patient under the doctor's care. Indeed, the American Medical Association has strongly objected to what it calls "[i]nappropriate inquiries from pharmacies to verify the medical rationale behind prescriptions, diagnoses and treatment plans" as "an interference with the practice of medicine and unwarranted." Policy D-35.981, AMA Response to Pharmacy Intrusion Into Medical Practice (2013).

6.      "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). And while pharmacists exercise a "corresponding responsibility," it is always the prescriber's own responsibility, which the prescriber cannot delegate to the pharmacist or anyone else, to ensure that prescriptions for controlled substances are proper in all respects: "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner . . . ." *Id.*

7.      The Tarrant County Pharmacy Defendants, including Kroger and Albertsons, deny Plaintiff's allegations and deny that they are liable in any respect. But if the Tarrant County Pharmacy Defendants can be held liable to Plaintiff for filling prescriptions written by the Prescriber Defendants—which Kroger and Albertson expressly deny—ultimate responsibility

must rest with those who wrote the prescriptions: the Prescriber Defendants themselves. The Prescriber Defendants are therefore fully liable to Plaintiff on Plaintiff's claims against Kroger and Albertsons, and therefore fully liable to Kroger and Albertsons in the event they are held liable on such claims.

8. Plaintiff has not identified any of prescriptions that it believes were unmedically necessary or which should not have been filled. Any prescriptions that Plaintiff may identify were undoubtedly written by numerous providers.

9. Therefore, at this time, Kroger and Albertsons cannot name the providers that Plaintiff actually claims wrote medically unnecessary prescriptions that should not have been filled. Kroger and Albertsons believe that a vanishingly small number of these providers—if any at all—actually wrote improper prescriptions. This Third-Party Complaint is intended to be strictly limited to those providers that *Plaintiff* alleges wrote improper prescriptions. Once Plaintiff provides a final list of the prescribers who it alleges wrote improper prescriptions, Kroger and Albertsons can amend this Third-Party Complaint to name only those prescribers. In the meantime, Kroger and Albertsons refuse to burden thousands of innocent prescribers and the Court by filing and serving any prescriber who could *possibly* fall into that category. Thus, Kroger and Albertsons lack the information necessary to accurately identify the relevant prescribers and file this Third-Party Complaint against unidentified Third-Party Defendants John and Jane Does 1-5000 in order to comply with CMO ¶ C.4. by filing this Third-Party Complaint within 14 days after filing their answers.

## Parties

10. Third-Party Plaintiff Kroger Co. is an Ohio corporation with its principal place of business in Ohio.  Plaintiff alleges that Third-Party Plaintiff Kroger Co. is liable to it in connection

4

with distributing and/or dispensing prescription opioid medications in Tarrant County.

11. Third-Party Plaintiff Kroger Limited Partnership I is an Ohio limited partnership with its principal place of business in Ohio. Plaintiff alleges that Third-Party Plaintiff Kroger Limited Partnership I is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

12. Third-Party Plaintiff Kroger Limited Partnership II is an Ohio limited partnership with its principal place of business in Ohio. Plaintiff alleges that Third-Party Plaintiff Kroger Limited Partnership II is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

13. Third-Party Plaintiff Kroger Texas LP is an Ohio limited partnership with its principal place of business in Ohio. Plaintiff alleges that Third-Party Plaintiff Kroger Texas LP is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

14. Third-Party Plaintiff Albertson's, LLC is a Delaware corporation with its principal place of business in Idaho. Plaintiff alleges that Albertson's, LLC is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

15. Third-Party Plaintiff Albertsons Companies, Inc. is a Delaware corporation with its principal place of business in Idaho. Plaintiff alleges that Albertsons Companies, Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

16. Third-Party Plaintiff Safeway, Inc. is a Delaware corporation with its principal place of business in California. Plaintiff alleges that Safeway, Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

17. Third-Party Plaintiff Randall's Food & Drug LP is a Delaware limited partnership with its principal place of business in Idaho. Plaintiff alleges that Randall's Food and Drug LP is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

18. Third-Party Plaintiff United Supermarkets, LLC is a Texas limited liability company with its principal place of business in Idaho. Plaintiff alleges that United Supermarkets, LLC is liable to it in connection with distributing and/or dispensing prescription opioid medications in Tarrant County.

19. Third-Party Defendants John and Jane Does 1-5000 are the licensed doctors and other healthcare practitioners who wrote and/or authorized the prescriptions for opioid medications that, Plaintiff alleges, should not have been filled by pharmacists employed by Kroger, Albertsons and the other Tarrant County Pharmacy Defendants and that give rise to Kroger's and Albertsons' alleged liability to Plaintiff. Because Plaintiff has not yet identified prescriptions that, it asserts, have raised "red flags," Kroger and Albertsons are not able to determine the true identities of the actual Prescriber Defendants at issue. When Plaintiff finally identifies the prescriptions that it alleges should not have been filled and the practitioners who wrote those prescriptions, Kroger and Albertsons will amend this Third-Party Complaint with the true names of the Prescriber Defendants.

## Factual Background

20. Kroger and Albertsons incorporate the allegations of paragraphs 1 through 19 above and reallege them as if set forth verbatim herein.

21. Plaintiff initially filed its lawsuit against certain of the Tarrant County Pharmacy Defendants in June 2018. It amended its complaint and filed the operative, supplemental and

amended Complaint in May 2021.

22. The Tarrant County Pharmacy Defendants answered Plaintiff's amended complaint on November 22, 2021. Each Tarrant County Pharmacy Defendant denied all liability to Plaintiff. (Doc. Nos 4163 and 4161.)

23. As explained above, Plaintiff's case theory is that the opioid crisis in Tarrant County can be traced to prescriptions filled by pharmacists working for the Tarrant County Pharmacy Defendants, including Kroger and Albertsons—but, for some reason, not pharmacists working at any of the many other independent and chain pharmacies that also dispensed opioid medications in Tarrant County, or anyone else involved in dispensing prescription opioid medications in Tarrant County. Plaintiff's core assertion is that these pharmacists allegedly filled prescriptions for opioid medications that they should not have filled, ultimately resulting in harm to Plaintiff and/or a public nuisance. Plaintiff has not identified even one such prescription, but still claims that Kroger and Albertsons and the other Tarrant County Pharmacy Defendants (but no other pharmacies or healthcare providers) are at fault and liable to Plaintiff.

24. Prescriptions filled by the Tarrant County Pharmacy Defendants, including Kroger and Albertsons, were written by physicians and other authorized healthcare practitioners who were duly licensed by the State of Texas[1] to practice medicine (or in an affiliated field) and registered by the Drug Enforcement Administration. Plaintiff does not allege that a pharmacist working for any of the Tarrant County Pharmacy Defendants, including Kroger and Albertsons, ever dispensed a prescription opioid medication without a facially valid prescription written by a licensed and registered doctor or other practitioner.

---

[1] In an unusual case, the prescriber may practice in another state, in which case he or she would need to be licensed by the local state medical board.

25. All prescriptions issued by practitioners and filled by Kroger, Albertsons and the other Tarrant County Pharmacy Defendants were reported to the Texas Prescription Monitoring Program (PMP). At all times, both the State of Texas and the DEA could suspend or revoke any practitioner's ability to prescribe controlled substances if they had any concern about his or her prescribing practices. What is more, Plaintiff itself had the ability to pursue criminal penalties against a practitioner engaged in misconduct that affected Tarrant County or its residents.

26. Every prescription for a controlled substance amounts to an affirmative representation by the prescriber to the pharmacist that the prescription is proper in all respects, that it was issued for a legitimate medical purpose, and that it was issued by the prescribing practitioner acting in the usual course of his or her professional practice. *See* 21 C.F.R. § 1306.04(a).

27. While pharmacists exercise a "corresponding responsibility" with respect to dispensing, they do not and cannot examine patients, take patients' medical histories, diagnose patients' medical conditions, or prescribe treatment. Without the prescriber's specialized medical training and knowledge, and familiarity with the patient and his or her medical history, a pharmacist will not be in a better position than the licensed and registered prescribing doctor or other practitioner to determine when a specific medication, including a prescription opioid medication, is appropriate therapy for a particular patient.

28. It is never permissible for a prescriber to write or otherwise authorize a prescription for a controlled substance except for a legitimate medical purpose and in the usual course of his or her professional practice. It is likewise never permissible for a prescriber to represent to a pharmacist, through the prescriber's signature or other authorization, that a prescription is proper, that it was issued for a legitimate medical purpose, and that it was issued in the usual course of his or her professional practice, when it was not.

8

29. Plaintiff alleges that Kroger, Albertsons and the other Tarrant County Pharmacy Defendants are liable in connection with the opioid crisis in Tarrant County because their pharmacists filled certain prescriptions that they allegedly should not have filled. Absent a criminal act of forgery—which Plaintiff does not allege—every one of the prescriptions at issue was written and/or authorized by one of the Prescriber Defendants.

30. Kroger and Albertsons deny Plaintiff's allegations and denies it is liable in any respect.  But if Kroger and Albertsons are found liable to Plaintiff because their pharmacists filled these prescriptions, it would be only because the pharmacists relied in good faith on facially valid prescriptions written and/or authorized by one of the Prescriber Defendants.

31. Defending against Plaintiff's lawsuit has already caused Kroger and Albertsons to suffer harm in the form of attorneys' fees and other defense costs, which they continue to incur every day.  In addition, if Kroger and Albertsons are found liable to Plaintiff, it would suffer additional harm in the form of damages or other remedies, all because their pharmacists reasonably relied in good faith on prescriptions written and/or authorized by the Prescriber Defendants and filled those prescriptions.

### **Count One: Negligent Misrepresentation**

32. Kroger and Albertsons incorporate the allegations of paragraphs 1 through 31 and reallege them as if set forth verbatim herein.

33. Each of the Prescriber Defendants, in the course of his or her business and profession, had a special relationship with Kroger and Albertsons and/or the pharmacists employed by it. By issuing prescriptions, the Prescriber Defendants provided information about which medications should be dispensed to particular patients. They provided this information as guidance for Kroger and Albertsons and/or their pharmacists.

34. With each prescription for a controlled substance, the Prescriber Defendants represented that the prescription was proper, was issued for a legitimate medical purpose, and was issued in the usual course of the Prescriber Defendant's professional practice. Among other things, pharmacists employed by Kroger and Albertsons must, in their practice of pharmacy, rely on prescriptions written by Prescriber Defendants in order to dispense medicine to patients.

35. If a pharmacist employed by Kroger and Albertsons ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of a prescriber's professional practice, or was otherwise improper, the pharmacist did so only because of his or her reasonable reliance on an affirmative representation by one of the Prescriber Defendants that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice.

36. In each such case, while the pharmacist employed by Kroger and Albertsons justifiably relied on at least one of the Prescriber Defendant's representations, the Prescriber Defendant failed to exercise reasonable care or competence in making those representations, resulting in the pharmacist allegedly filling a prescription that should not have been filled.

37. In such a case, as a direct and proximate result of the pharmacist's reasonable reliance on the Prescriber Defendant's affirmative representation that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice, Kroger and Albertsons have suffered damages in an amount to be proven at trial.

## Count Two: Common Law Negligence

38. Kroger and Albertsons incorporate the allegations of paragraphs 1 through 37 and reallege them as if set forth verbatim herein.

39. Each Prescriber Defendant had a duty to patients and dispensing pharmacies to exercise due care in their prescribing decisions and practices. Each Prescriber Defendant needed to ensure that every prescription for an opioid medication was proper in all respects, including being issued for a legitimate medical purpose and in the usual course of the Prescriber Defendant's professional practice.

40. If, as Plaintiff's Complaint necessarily implies, a Prescriber Defendant wrote a prescription for an opioid medication other than for a legitimate medical purpose, outside the usual course of the Prescriber Defendant's professional practice, or that was otherwise improper, the Prescriber Defendant breached his or her duties, failed to exercise reasonable care, and acted negligently.

41. If a pharmacist employed by Kroger and Albertsons ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of the prescriber's professional practice, or that was otherwise improper, the pharmacist did so only as a result of the negligence of one of the Prescriber Defendants.

42. In such a case, as a direct and proximate result of the Prescriber Defendant's negligence, Kroger and Albertsons have suffered damages due to its justifiable reliance on the Prescriber Defendants representations in an amount to be proven at trial.

## Count Three: Intentional Fraud

43. Kroger and Albertsons incorporate the allegations of paragraphs 1 through 42 and reallege them as if set forth verbatim herein.

44. Pharmacists within the scope of their employment with Kroger and Albertsons would never knowingly dispense a prescription opioid medication without a valid prescription.

45. If a pharmacist employed by Kroger and Albertsons ever filled a prescription that

11

was not for a legitimate medical purpose, was not written in the usual course of the prescriber's professional practice, or was otherwise improper, the pharmacist did so only because of his or her reasonable reliance on an affirmative representation by one of the Prescriber Defendants that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice.

46. These representations were material to the transactions at hand: without such a prescription and the affirmative representations by a Prescriber Defendant embedded therein, the pharmacist would not have filled the prescription.

47. Plaintiff's Complaint necessarily implies that one or more Prescriber Defendants affirmatively misrepresented that a prescription was proper, was issued for a legitimate medical purpose, and/or was issued in the usual course of the Prescriber Defendant's professional practice, and did so with knowledge of the representations' falsity, or with such utter disregard as to whether they were true or false that knowledge may be inferred.

48. In such a case, the representations were made with the intent that a pharmacist would rely upon the Prescriber Defendant's misrepresentations and subsequently fill the prescription.

49. In such a case, the pharmacist employed by Kroger and Albertsons reasonably relied on the Prescriber Defendant's representations and medical expertise.

50. In such a case, as a direct and proximate result of the pharmacist's reasonable reliance on the Prescriber Defendant's affirmative representation that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice, Kroger and Albertsons have suffered damages in an amount to be proven at trial.

**Count Four: Indemnification**

51. Kroger and Albertsons incorporate the allegations of paragraphs 1 through 50 and reallege them as if set forth verbatim herein.

52. Each Prescriber Defendant had a duty to patients and dispensing pharmacies to exercise due care in their prescribing decisions and practices. Each Prescriber Defendant needed to ensure that every prescription for an opioid medication was proper in all respects, including being issued for a legitimate medical purpose and in the usual course of the Prescriber Defendant's professional practice.

53. To the extent that a Prescriber Defendant ever wrote a prescription for an opioid medication other than for a legitimate medical purpose, outside the usual course of the Prescriber Defendant's professional practice, or that was otherwise improper, the Prescriber Defendant breached his or her duties and acted negligently or engaged in intentional misconduct.

54. If a pharmacist employed by Kroger and Albertsons ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of the prescriber's professional practice, or was otherwise improper, the pharmacist did so only as a result of the negligence or intentional misconduct of one of the Prescriber Defendants.

55. In such a case, the Prescriber Defendant's negligence or intentional misconduct was the primary cause—the active negligence—in the ultimate result of improper opioid prescriptions and/or the dispensing of opioid medications in response to prescriptions that allegedly should not have been filled. Even if there were negligence on Kroger's or Albertsons' part —which Kroger and Albertsons expressly deny—such negligence would have been at most passive and unknowing negligence in comparison to the Prescriber Defendant's active negligence.

56. If Kroger and Albertsons are found liable to Plaintiff, Kroger and Albertsons

would have incurred liability without fault and/or as a result of acts committed by the Prescriber Defendants and/or for wrongs committed by the Prescriber Defendants, giving rise to an obligation of indemnification by the Prescriber Defendants in an amount to be determined at trial.

### Count Five: Contribution

57.	Kroger and Albertsons incorporate the allegations of paragraphs 1 through 56 and reallege them as if set forth verbatim herein.

58.	Federal Rule of Civil Procedure 14 provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

59.	For the reasons set forth above, the Prescriber Defendants are or may be liable to Kroger and Albertsons with respect to Plaintiff's claims against Kroger and Albertsons.

60.	If Kroger and Albertsons are found to owe duties to Plaintiff and is found liable to Plaintiff, then so too would the Prescriber Defendants owe duties to Plaintiff, have breached those duties, and be liable to Plaintiff.

61.	If Kroger and Albertsons are found liable to Plaintiff, the Prescriber Defendants would be joint alleged tortfeasors in comparison to whom Kroger and Albertsons would be held responsible for more than their share of a common liability and/or liability that should have been allocated exclusively to one or more of the Prescriber Defendants, giving rise to a right of contribution against the Prescriber Defendants in an amount to be determined at trial.

### Prayer for Relief

Kroger and Albertsons respectfully requests that the Court enter judgment in its favor and against the Prescriber Defendants, and each of them jointly and severally, as follows:

A.	Compensatory damages in an amount to be determined at trial;

B.      Attorneys' fees, costs, and pre- and post-judgment interest; and

C.      Such other and further relief as may be appropriate under applicable law.

## Jury Demand

Kroger and Albertsons demand a jury trial on all issues so triable.

Dated:   November 29, 2021

/s Ronda L. Harvey  
Ronda L. Harvey (WVSB #6326)  
Fazal A. Shere (WVSB #5433)  
Ashley P. Hardesty Odell (WVSB #9380)  
**BOWLES RICE LLP**  
600 Quarrier Street  
Post Office Box 1386  
Charleston, West Virginia  25326-1386  
304-347-1701  
rharvey@bowlesrice.com  
fshere@bowlesrice.com  
ahardestyodell@bowlesrice.com  
aboone@bowlesrice.com  

Counsel for Defendants The Kroger Co.,  
Kroger Limited Partnership I,  
Kroger Limited Partnership II and Kroger Texas L.P.

Respectfully submitted,

s/ Gretchen N. Miller  
Gretchen N. Miller  
Francis A. Citera (SBN IL 6185263)  
citeraf@gtlaw.com  
Gretchen N. Miller (SBN IL 6273075)  
millerg@gtlaw.com  

GREENBERG TRAURIG, LLP  
77 West Wacker Drive, Suite 3100  
Chicago, Illinois 60601  
Telephone:    312.456.8400  
Facsimile:    312.456.8435  

Peter S. Wahby  
State Bar No. 24011171  
wahbyp@gtlaw.com  
Gregory Franklin  
State Bar No. 24096997  
frankling@gtlaw.com  

GREENBERG TRAURIG, LLP  
2200 Ross Avenue, Suite 5200  
Dallas, Texas 75210  
Telephone:  (214) 665-3600  
Facsimile: (214)  665-3601  

Counsel for Defendants Albertson's LLC, Albertsons Companies, Inc., Randall's Food & Drug LP, Safeway Inc., United Supermarkets LLC II

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Ronda L. Harvey*
Ronda L. Harvey

13274387.1