# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| This document relates to: Case No. 1:19-op-45346-DAP | Case No. 17-md-2804 |
| DURHAM COUNTY, | Judge Dan Aaron Polster |
| Plaintiff, | |
| vs. | |
| AMERISOURCEBERGEN DRUG CORPORATION, et al., | |
| Defendants. | |

## THIRD-PARTY COMPLAINT

Defendants and Third-Party Plaintiffs, The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II, Harris Teeter, LLC f/k/a Food World, Inc. f/k/a Harris Teeter, Inc. f/k/a Harris-Teeter Super Markets, Inc. f/k/a Racc, Inc.,[1] Rite Aid Hdqtrs. Corp., Rite Aid of Maryland, Inc., d/b/a Rite Aid Mid-Atlantic Customer Support Center, Rite Aid of North Carolina, Inc., Eckerd Corporation d/b/a Liverpool Distribution Center, Walmart, Inc., f/k/a Wal-Mart Stores, Inc., CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS TN Distribution, L.L.C., CVS Pharmacy, Inc., North Carolina CVS Pharmacy, L.L.C., Walgreen Co., Walgreens Boots Alliance, Inc., and Walgreen Eastern Co., Inc. (collectively, "Durham County Pharmacy Defendants"),

---

[1] The "Harris Teeter" Defendant is incorrectly named. The actual entity is Harris Teeter LLC f/k/a Harris Teeter, Inc., f/k/a RDK Investment Company and Harris Teeter Supermarkets, Inc.  Kroger refused to sign a waiver of service for Harris Teeter as named and instead signed a waiver of service for the correct Harris Teeter name. Plaintiff has not responded or tried to correct the error.

bring this Third-Party Complaint against Third-Party Defendants John and Jane Does 1-5000 (the "Prescriber Defendants").

1.      The Prescriber Defendants are the licensed healthcare professionals who wrote and authorized the prescriptions for FDA-approved opioid medications that, according to Plaintiff Durham County, North Carolina ("Plaintiff"), should not have been filled by pharmacists employed by the Durham County Pharmacy Defendants.  Years after the fact, and without any knowledge about the patients under the Prescriber Defendants' care or the purpose of the prescriptions, Plaintiff now contends that these physicians and other practitioners wrote prescriptions for an "excessive volume" of prescription opioid medications in Durham County. The heart of Plaintiff's claim against the Durham County Pharmacy Defendants is that they are liable because their pharmacists filled prescriptions that the Prescriber Defendants wrote. Plaintiff's own allegations make this Third-Party Complaint necessary.

2.      To be clear, the Durham County Pharmacy Defendants deny Plaintiff's contention that a vast number of North Carolina physicians and other practitioners wrote an "excessive volume" of opioid prescriptions in bad faith or without a legitimate medical purpose. But that is Plaintiff's claim. Indeed, Plaintiff's claim is that numerous physicians and other healthcare providers wrote improper prescriptions that pharmacists working for the Durham County Pharmacy Defendants should have refused to fill.  And it is the basis for Plaintiff's attempt to impose liability on the Durham County Pharmacy Defendants.

3.      Although Plaintiff says that prescriptions written by the Prescriber Defendants are to blame for the opioid crisis in Durham County, it asserts liability against only the Durham County Pharmacy Defendants and, somehow, not the Prescriber Defendants themselves. Plaintiff also ignores the "pill mills" for which North Carolina has become notorious and the unscrupulous pain clinics and internet pharmacies that fed the illicit market for prescription opioids. In a misguided

hunt for deep pockets without regard to actual fault or legal liability, Plaintiff has elected not to sue any of these other parties.

4.      The premise of Plaintiff's Complaint is nothing more than unsupported speculation that local pharmacists working for the Durham County Pharmacy Defendants filled prescriptions for opioid medications that they should not have filled. However, Plaintiff's lengthy Complaint against the Durham County Pharmacy Defendants **_fails to identify even one prescription_** that was supposedly filled improperly by any pharmacist working for any of the Durham County Pharmacy Defendants.

5.      Plaintiff also ignores that pharmacists do not write prescriptions and do not decide for doctors which medications are appropriate to treat their patients.  A prescription for a controlled substance is an order for a medication that may be issued **_only_** by a physician or other authorized healthcare practitioner.  While pharmacists are highly trained and licensed professionals, they did not attend medical school and are not trained as physicians.  They do not examine or diagnose patients.  They do not write prescriptions.  And with only very limited exceptions permitted by law, pharmacists are bound to respect a prescribing doctor's professional medical judgment about which medications are appropriate to treat a particular patient under the doctor's care. Indeed, the American Medical Association has strongly objected to what it calls "[i]nappropriate inquiries from pharmacies to verify the medical rationale behind prescriptions, diagnoses and treatment plans" as "an interference with the practice of medicine and unwarranted." Policy D-35.981, AMA Response to Pharmacy Intrusion Into Medical Practice (2013).

6.      "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). And while pharmacists exercise a "corresponding

responsibility," it is always the prescriber's own responsibility, which the prescriber cannot delegate to the pharmacist or anyone else, to ensure that prescriptions for controlled substances are proper in all respects: "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner . . . ." *Id.*

7.      The Durham County Pharmacy Defendants deny Plaintiff's allegations and deny that they are liable in any respect.  But if the Durham County Pharmacy Defendants can be held liable to Plaintiff for filling prescriptions written by the Prescriber Defendants—which the Durham County Pharmacy Defendants expressly deny—ultimate responsibility must rest with those who wrote the prescriptions: the Prescriber Defendants themselves. The Prescriber Defendants are therefore fully liable to Plaintiff on Plaintiff's claims against the Durham County Pharmacy Defendants, and therefore fully liable to Durham County Pharmacy Defendants in the event it is held liable on such claims.

8.      Plaintiff has not identified any prescriptions that it believes were unmedically necessary or which should not have been filled.

9.      Therefore, at this time, the Durham County Pharmacy Defendants cannot name the providers that Plaintiff actually claims wrote medically unnecessary prescriptions that should not have been filled. The Durham County Pharmacy Defendants believe that a vanishingly small number of these providers—if any at all—actually wrote improper prescriptions.  This Third-Party Complaint is intended to be strictly limited to those providers that *Plaintiff* alleges wrote improper prescriptions.  Once Plaintiff provides a final list of the prescribers who it alleges wrote improper prescriptions, the Durham County Pharmacy Defendants can amend this Third-Party Complaint to name only those prescribers.

10. In the meantime, the Durham County Pharmacy Defendants refuses to burden thousands of innocent prescribers and the Court by filing and serving any prescriber who could *possibly* fall into that category. Thus, the Durham County Pharmacy Defendants lack the information necessary to accurately identify the relevant prescribers and file this Third-Party Complaint against unidentified Third-Party Defendants John and Jane Does 1-5000 in order to comply with CMO ¶ C.4. by filing this Third-Party Complaint within 14 days after filing their answers.

11. Federal Rule of Civil Procedure 14 provides that a "defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it."

12. "[T]he general purpose of Rule 14 is 'to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence. [sic] and to do away with the serious handicap to a defendant of a time difference between judgment against him, and a judgment in his favor against the third-party defendant.'" *Selective Ins. Co. of the Southeast v. NCNB Nat. Bank of North Carolina*, 324 N.C. 560, 565 – 566, 380 S.E.2d 521, 525 (1989) (quoting, 3 Moore's Federal Practice § 14.04 at 26 (2d ed.1988) (commenting on Rule 14 of the Federal Rules of Civil Procedure which is substantially similar to the North Carolina rule)).

## Parties

13. Third-Party Plaintiff The Kroger Co. is an Ohio corporation with its principal place of business in Ohio. Plaintiff alleges that Third-Party Plaintiff Kroger Co. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

14.     Third-Party Plaintiff Kroger Limited Partnership I is an Ohio limited partnership with its principal place of business in Ohio.  Plaintiff alleges that Third-Party Plaintiff Kroger Limited Partnership I is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

15.     Third-Party Plaintiff Kroger Limited Partnership II is an Ohio limited partnership with its principal place of business in Ohio.  Plaintiff alleges that Third-Party Plaintiff Kroger Limited Partnership II is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

16.     Third-Party Plaintiff Harris Teeter, LLC f/k/a Food World, Inc. f/k/a Harris Teeter, Inc. f/k/a Harris-Teeter Super Markets, Inc. f/k/a Racc, Inc. is a North Carolina limited liability company with its principal place of business in North Carolina.  Plaintiff alleges that Third-Party Plaintiff Harris Teeter, LLC f/k/a Food World, Inc. f/k/a Harris Teeter, Inc. f/k/a Harris-Teeter Super Markets, Inc. f/k/a Racc, Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

17.     Third-Party Plaintiff Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center; is a Maryland corporation with its principal place of business in Pennsylvania.  Plaintiff alleges that Third-Party Plaintiff Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-Atlantic Customer Support Center is liable to it in connection with distributing prescription opioid medications in Durham County.

18.     Third-Party Plaintiff Rite Aid Hdqtrs. Corp. is a Delaware corporation with its principal place of business in Pennsylvania.  Plaintiff alleges that Third-Party Plaintiff Rite Aid Hdqtrs. Corp is liable to it in connection with the dispensing prescription opioid medications in Durham County.  Rite Aid of North Carolina, Inc. is a North Carolina corporation with its principal

place of business in Pennsylvania.  Plaintiff alleges that Rite Aid of North Carolina is liable to it in connection with dispensing prescription opioid medications in Durham County.

19.     Third-Party Plaintiff Eckerd Corporation d/b/a Liverpool Distribution Center is a Delaware corporation with its principal place of business in Pennsylvania. Plaintiff alleges that Third-Party Plaintiff Eckerd Corporation d/b/a Liverpool Distribution Center is liable to it in connection with distributing and dispensing prescription opioid medications in Durham County.

20.     Third-Party Plaintiff Walmart Inc., f/k/a Wal-Mart Stores, Inc. is a Delaware corporation with its principal place of business in Arkansas. Plaintiff alleges that Third-Party Plaintiff Walmart Inc. is liable to it in connection with dispensing prescription opioid medications in Durham County.

21.     Third-Party Plaintiff CVS Indiana, L.L.C. is an Indiana limited liability company with its principal place of business in Rhode Island.  Plaintiff alleges that Third-Party Plaintiff CVS Indiana, L.L.C. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

22.     Third-Party Plaintiff CVS Rx Services, Inc. is a New York corporation with its principal place of business in Rhode Island.  Plaintiff alleges that Third-Party Plaintiff CVS Rx Services, Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

23.     Third-Party Plaintiff CVS TN Distribution, L.L.C. is a Tennessee limited liability company with its principal place of business in Rhode Island.  Plaintiff alleges that Third-Party Plaintiff CVS TN Distribution, L.L.C. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

24.     Third-Party Plaintiff CVS Pharmacy, Inc. is a Rhode Island corporation with its principal place of business in Rhode Island.  Plaintiff alleges that Third-Party Plaintiff CVS Pharmacy, Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

25.     Third-Party Plaintiff North Carolina CVS Pharmacy, L.L.C. is a North Carolina limited liability company with its principal place of business in Rhode Island.  Plaintiff alleges that Third-Party Plaintiff North Carolina CVS Pharmacy, L.L.C. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

26.     Third-Party Plaintiff Walgreen Co. is an Illinois corporation with its principal place of business in Illinois.  Plaintiff alleges that Third-Party Plaintiff Walgreen Co. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

27.     Third-Party Plaintiff Walgreens Boots Alliance, Inc. is a Delaware corporation with its principal place of business in Illinois.  Plaintiff alleges that Third-Party Plaintiff Walgreen Boots Alliance, Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

28.     Third-Party Plaintiff Walgreen Eastern Co., Inc. is a New York corporation with its principal place of business in Illinois.  Plaintiff alleges that Third-Party Plaintiff Walgreen Eastern Co., Inc. is liable to it in connection with distributing and/or dispensing prescription opioid medications in Durham County.

29.     Third-Party Defendants John and Jane Does 1-5000 are the licensed doctors and other healthcare practitioners who wrote and/or authorized the prescriptions for opioid medications that, Plaintiff alleges, should not have been filled by pharmacists employed by the Durham County Pharmacy Defendants and that give rise to their alleged liability to Plaintiff.  Because Plaintiff has

not yet identified prescriptions that, it asserts, have raised "red flags," the Durham County Pharmacy Defendants are not able to determine the true identities of the actual Prescriber Defendants at issue. When Plaintiff finally identifies the prescriptions that it alleges should not have been filled and the practitioners who wrote those prescriptions, Durham County Pharmacy Defendants will amend this Third-Party Complaint with the true names of the Prescriber Defendants.

## **Factual Background**

30.    Durham County Pharmacy Defendants incorporate the allegations of paragraphs 1 through 29 above and reallege them as if set forth verbatim herein.

31.    Plaintiff initially filed its lawsuit against certain Defendants in May 10, 2019. It amended its complaint and filed the operative, supplemental and amended Complaint against the Pharmacy Defendants in July 19, 2021.

32.    The Durham County Pharmacy Defendants answered Plaintiff's amended complaint on December 3, 2021. Each Durham County Pharmacy Defendant denied all liability to Plaintiff. (MDL Dkt. 4184 (Kroger); MDL Dkt. 4185 / Durham County Dkt. 75 (Walgreens); MDL Dkt. 4183 / Durham County Dkt. 73 (Rite Aid), MDL Dkt. 4181 (CVS); MDL Dkt. 4182 (Walmart).

33.    As explained above, Plaintiff's case theory is that the opioid crisis in Durham County can be traced to prescriptions filled by pharmacists working for the Durham County Pharmacy Defendants, but, for some reason, not pharmacists working at any of the many other independent and chain pharmacies that also dispensed opioid medications in Durham County, or anyone else involved in dispensing prescription opioid medications in Durham County. Plaintiff's core assertion is that these pharmacists allegedly filled prescriptions for opioid medications that

they should not have filled, ultimately resulting in harm to Plaintiff and/or a public nuisance. Plaintiff has not identified even one such prescription, but still claims that the Durham County Pharmacy Defendants (but no other pharmacies or healthcare providers) are at fault and liable to Plaintiff.

34.     Prescriptions filled by the Durham County Pharmacy Defendants, were written by physicians and other authorized healthcare practitioners who were duly licensed by the State of North Carolina[2] to practice medicine (or in an affiliated field) and registered by the Drug Enforcement Administration.  Plaintiff does not allege that a pharmacist working for any of the Durham County Pharmacy Defendants, ever dispensed a prescription opioid medication without a facially valid prescription written by a licensed and registered doctor or another practitioner.

35.     All prescriptions issued by practitioners and filled by the Durham County Pharmacy Defendants were reported to the North Carolina Controlled Substances Reporting System (CSRS). At all times, both the State of North Carolina and the DEA could suspend or revoke any practitioner's ability to prescribe controlled substances if they had any concern about his or her prescribing practices. What is more, Plaintiff itself had the ability to pursue criminal penalties against a practitioner engaged in misconduct that affected Durham County or its residents.

36.     Every prescription for a controlled substance amounts to an affirmative representation by the prescriber to the pharmacist that the prescription is proper in all respects, that it was issued for a legitimate medical purpose, and that it was issued by the prescribing practitioner acting in the usual course of his or her professional practice. *See* 21 C.F.R. § 1306.04(a).

---

[2]     In an unusual case, the prescriber may practice in another state, in which case he or she would need to be licensed by the local state medical board.

37.     While pharmacists exercise a "corresponding responsibility" with respect to dispensing, they do not and cannot examine patients, take patients' medical histories, diagnose patients' medical conditions, or prescribe treatment.  Without the prescriber's specialized medical training and knowledge, and familiarity with the patient and his or her medical history, a pharmacist will not be in a better position than the licensed and registered prescribing doctor or other practitioner to determine when a specific medication, including a prescription opioid medication, is appropriate therapy for a particular patient.

38.     It is never permissible for a prescriber to write or otherwise authorize a prescription for a controlled substance except for a legitimate medical purpose and in the usual course of his or her professional practice.  It is likewise never permissible for a prescriber to represent to a pharmacist, through the prescriber's signature or other authorization, that a prescription is proper, that it was issued for a legitimate medical purpose, and that it was issued in the usual course of his or her professional practice, when it was not.

39.     Plaintiff alleges that the Durham County Pharmacy Defendants are liable in connection with the opioid crisis in Durham County because their pharmacists filled certain prescriptions that they allegedly should not have filled.  Absent a criminal act of forgery—which Plaintiff does not allege—every one of the prescriptions at issue was written and/or authorized by one of the Prescriber Defendants.

40.     The Durham County Pharmacy Defendants deny Plaintiff's allegations and deny they are liable in any respect.  But if the Durham County Pharmacy Defendants are found liable to Plaintiff because their pharmacists filled these prescriptions, it would be only because the pharmacists relied in good faith on facially valid prescriptions written and/or authorized by one of the Prescriber Defendants.

11

41.      Defending against Plaintiff's lawsuit has already caused the Durham County Pharmacy Defendants to suffer harm in the form of attorneys' fees and other defense costs, which they continue to incur every day.  In addition, if the Durham County Pharmacy Defendants are found liable to Plaintiff, they would suffer additional harm in the form of damages or other remedies, all because their pharmacists reasonably relied in good faith on prescriptions written and/or authorized by the Prescriber Defendants and filled those prescriptions.

**Count One: Negligent Misrepresentation**

42.      The Durham County Pharmacy Defendants incorporate the allegations of paragraphs 1 through 41 and reallege them as if set forth verbatim herein.

43.      Each of the Prescriber Defendants, in the course of his or her business and profession, had a special relationship with the Durham County Pharmacy Defendants and/or the pharmacists employed by them. By issuing prescriptions, the Prescriber Defendants provided information about which medications should be dispensed to particular patients. They provided this information as guidance for the Durham County Pharmacy Defendants and/or their pharmacists.

44.      With each prescription for a controlled substance, the Prescriber Defendants represented that the prescription was proper, was issued for a legitimate medical purpose, and was issued in the usual course of the Prescriber Defendant's professional practice.  Among other things, pharmacists employed by the Durham County Pharmacy Defendants must, in their practice of pharmacy, rely on prescriptions written by Prescriber Defendants in order to dispense medicine to patients.

45.      If a pharmacist employed by the Durham County Pharmacy Defendants ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of

a prescriber's professional practice, or was otherwise improper, the pharmacist did so only because of his or her reasonable reliance on an affirmative representation by one of the Prescriber Defendants that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice.

46.     In each such case, while the pharmacist employed by the Durham County Pharmacy Defendants justifiably relied on at least one of the Prescriber Defendant's representations, the Prescriber Defendant failed to exercise reasonable care or competence in making those representations, resulting in the pharmacist allegedly filling a prescription that should not have been filled.

47.     In each such case, the pharmacist could not have discovered the truth of any misleading representation upon inquiry or by exercise of reasonable diligence because: the Prescriber Defendant intended to deceive the pharmacist; the Prescriber Defendant did not know the true facts and was not in a position to report them to an inquiring pharmacist; the pharmacist could not evaluate the propriety of facially valid medical prescription given that pharmacists cannot examine patients, take patients' medical histories, or diagnose patients' medical conditions; and/or the role of evaluating the risks and benefits of a course of treatment for particular patients, including the type and quantity of medications to prescribe, is allocated to prescribers.

48.     In such a case, as a direct and proximate result of the pharmacist's reasonable reliance on the Prescriber Defendant's affirmative representation that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice, the Durham County Pharmacy Defendants has suffered damages in an amount to be proven at trial.

## Count Two: Common Law Negligence

49.     The Durham County Pharmacy Defendants incorporates the allegations of paragraphs 1 through 48 and reallege them as if set forth verbatim herein.

50.     Each Prescriber Defendant had a duty to patients and dispensing pharmacies to exercise due care in their prescribing decisions and practices.  Each Prescriber Defendant needed to ensure that every prescription for an opioid medication was proper in all respects, including being issued for a legitimate medical purpose and in the usual course of the Prescriber Defendant's professional practice.

51.     If, as Plaintiff's Complaint necessarily implies, a Prescriber Defendant wrote a prescription for an opioid medication other than for a legitimate medical purpose, outside the usual course of the Prescriber Defendant's professional practice, or that was otherwise improper, the Prescriber Defendant breached his or her duties, failed to exercise reasonable care, and acted negligently.

52.     If a pharmacist employed by the Durham County Pharmacy Defendants ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of the prescriber's professional practice, or that was otherwise improper, the pharmacist did so only as a result of the negligence of one of the Prescriber Defendants.

53.     In such a case, as a direct and proximate result of the Prescriber Defendant's negligence, the Durham County Pharmacy Defendants have suffered damages due to its justifiable reliance on the Prescriber Defendants representations in an amount to be proven at trial.

## Count Three: Intentional Fraud

54.     Durham County Pharmacy Defendants incorporate the allegations of paragraphs 1 through 53 and reallege them as if set forth verbatim herein.

55.    Pharmacists within the scope of their employment with the Durham County Pharmacy Defendants would never knowingly dispense a prescription opioid medication without a valid prescription.

56.    If a pharmacist employed by the Durham County Pharmacy Defendants ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of the prescriber's professional practice, or was otherwise improper, the pharmacist did so only because of his or her reasonable reliance on an affirmative representation by one of the Prescriber Defendants that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice.

57.    These representations were material to the transactions at hand: without such a prescription and the affirmative representations by a Prescriber Defendant embedded therein, the pharmacist would not have filled the prescription.

58.    Plaintiff's Complaint necessarily implies that one or more Prescriber Defendants affirmatively misrepresented that a prescription was proper, was issued for a legitimate medical purpose, and/or was issued in the usual course of the Prescriber Defendant's professional practice, and did so with knowledge of the representations' falsity, or with such utter disregard as to whether they were true or false that knowledge may be inferred.

59.    In such a case, the representations were made with the intent that a pharmacist would rely upon the Prescriber Defendant's misrepresentations and subsequently fill the prescription.

60.    In such a case, the pharmacist employed by the Durham County Pharmacy Defendants reasonably relied on the Prescriber Defendant's representations and medical expertise.

61.    In such a case, as a direct and proximate result of the pharmacist's reasonable

reliance on the Prescriber Defendant's affirmative representation that the prescription was proper to fill, including being for a legitimate medical purpose and written in the usual course of the Prescriber Defendant's professional practice, the Durham County Pharmacy Defendants has suffered damages in an amount to be proven at trial.

### Count Four: Indemnification

62.     Durham County Pharmacy Defendants incorporates the allegations of paragraphs 1 through 61 and reallege them as if set forth verbatim herein.

63.     Each Prescriber Defendant had a duty to patients and dispensing pharmacies to exercise due care in their prescribing decisions and practices. Each Prescriber Defendant needed to ensure that every prescription for an opioid medication was proper in all respects, including being issued for a legitimate medical purpose and in the usual course of the Prescriber Defendant's professional practice.

64.     To the extent that a Prescriber Defendant ever wrote a prescription for an opioid medication other than for a legitimate medical purpose, outside the usual course of the Prescriber Defendant's professional practice, or that was otherwise improper, the Prescriber Defendant breached his or her duties and acted negligently or engaged in intentional misconduct.

65.     If a pharmacist employed by the Durham County Pharmacy Defendants ever filled a prescription that was not for a legitimate medical purpose, was not written in the usual course of the prescriber's professional practice, or was otherwise improper, the pharmacist did so only as a result of the negligence or intentional misconduct of one of the Prescriber Defendants.

66.     In such a case, the Prescriber Defendant's negligence or intentional misconduct was the primary cause—the active negligence—in the ultimate result of improper opioid prescriptions and/or the dispensing of opioid medications in response to prescriptions that

allegedly should not have been filled. Even if there were negligence on the Durham County Pharmacy Defendants' part—which the Durham County Pharmacy Defendants expressly deny—such negligence would have been at most passive and unknowing negligence in comparison to the Prescriber Defendant's active negligence.

67.     If the Durham County Pharmacy Defendants are found liable to Plaintiff, the Durham County Pharmacy Defendants would have incurred liability without fault and/or as a result of acts committed by the Prescriber Defendants and/or for wrongs committed by the Prescriber Defendants, giving rise to an obligation of indemnification by the Prescriber Defendants in an amount to be determined at trial.

## **Count Five: Contribution**

68.     Durham County Pharmacy Defendants incorporates the allegations of paragraphs 1 through 67 and reallege them as if set forth verbatim herein.

69.     For the reasons set forth above, the Prescriber Defendants are or may be liable to the Durham County Pharmacy Defendants with respect to Plaintiff's claims against the Durham County Pharmacy Defendants.

70.     If the Durham County Pharmacy Defendants are found to owe duties to Plaintiff and is found liable to Plaintiff, then so too would the Prescriber Defendants owe duties to Plaintiff, have breached those duties, and be liable to Plaintiff.

71.     If the Durham County Pharmacy Defendants are found liable to Plaintiff, the Prescriber Defendants would be joint alleged tortfeasors in comparison to whom the Durham County Pharmacy Defendants would be held responsible for more than their share of a common liability and/or liability that should have been allocated exclusively to one or more of the Prescriber Defendants, giving rise to a right of contribution against the Prescriber Defendants in an amount

to be determined at trial.

## **Prayer for Relief**

The Durham County Pharmacy Defendants respectfully request that the Court enter judgment in their favor and against the Prescriber Defendants, and each of them jointly and severally, as follows:

A.    Compensatory damages in an amount to be determined at trial;

B.    Attorneys' fees, costs, and pre- and post-judgment interest; and

C.    Such other and further relief as may be appropriate under applicable law.

## **Jury Demand**

The Durham County Pharmacy Defendants demand a jury trial on all issues so triable.

Dated:   December 17, 2021

Respectfully submitted,

/s/ Ronda L. Harvey
Ronda L. Harvey (WVSB #6326)
Fazal A. Shere (WVSB #5433)
Ashley P. Hardesty Odell (WVSB #9380)
Aaron C. Boone (WVSB #9479)
**BOWLES RICE LLP**
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia  25326-1386
304-347-1701
rharvey@bowlesrice.com
fshere@bowlesrice.com
ahardestyodell@bowlesrice.com
aboone@bowlesrice.com

Counsel for Defendants The Kroger Co.,
Kroger Limited Partnership I,
Kroger Limited Partnership II and Plaintiff Harris
Teeter, LLC


/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
ZUCKERMAN SPAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
Tel: (202) 778-1800
Fax: (202) 822-4106
edelinsky@zuckerman.com
smiller@zuckerman.com

Counsel for CVS Indiana L.L.C., CVS Rx Services,
Inc., CVS TN Distribution, L.L.C., CVS Pharmacy,
Inc., and North Carolina CVS Pharmacy, L.L.C.


/s/ Kelly A. Moore
Kelly A. Moore
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue

/s/ Kelly A. Moore
Kelly A. Moore
kelly.moore@morganlewis.com
Morgan, Lewis & Bockius LLP
101 Park Avenue
New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

Elisa P. McEnroe
elisa.mcenroe@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
T: 215-963-5917
F: 215-963-5001

Counsel for Rite Aid of Maryland, Inc. d/b/a
Rite Aid Mid-Atlantic Customer Support
Center, Eckerd Corporation d/b/a
Liverpool Distribution Center., Rite Aid of
North Carolina, Inc., and Rite Aid Hdqtrs.
Corp.

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
kate.swift@bartlitbeck.com

Counsel for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co.,
Inc.

New York, NY 10178-0060
T: 212-309-6612
F: 212-309-6001

Elisa P. McEnroe
elisa.mcenroe@morganlewis.com
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
T: 215-963-5917
F: 215-963-5001

*Counsel for Rite Aid of Maryland, Inc. d/b/a*
*Rite Aid Mid-Atlantic Customer Support*
*Center, Eckerd Corp., Rite Aid of North*
*Carolina, Inc., and Rite Aid Hdqtrs. Corp.*


**/s/ Tara A. Fumerton**
Tara A. Fumerton
Tina M. Tabacchi
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

Counsel for Walmart Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of December, 2021, I electronically filed a copy of the foregoing with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/ Ronda L. Harvey*
Ronda L. Harvey

13324730.1