# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*County of Lake, Ohio v. Purdue Pharma L.P., et al.*,<br>   Case No. 18-op-45032 (N.D. Ohio)<br><br>*County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*,<br>   Case No. 18-op-45079 (N.D. Ohio)<br><br>"Track 3 Cases" | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

## DEFENDANTS' JOINT MOTION FOR CERTIFICATION OF ORDERS FOR INTERLOCUTORY APPEAL AND SUPPORTING MEMORANDUM

Defendants move for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). "[D]istrict courts should not hesitate to certify an interlocutory appeal" when "[t]he preconditions for § 1292(b) review"—controlling questions of law as to which there is substantial ground for differing opinions and whose resolution can materially advance the litigation's termination—are "satisfied." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009). Three issues in the Track 3 Cases clearly satisfy those preconditions.

*First*, the only claim Plaintiffs sent to the jury is that Defendants[1] are liable for a public nuisance under Ohio common law based on their role in dispensing lawful prescription opioid medications. But the Ohio Product Liability Act ("OPLA") plainly abrogates that claim. OPLA

---

[1] Walmart Inc.; Walgreens Boots Alliance, Inc.; Walgreen Co.; Walgreen Eastern Co., Inc.; CVS Pharmacy, Inc.; Ohio CVS Stores, L.L.C.; CVS TN Distribution, L.L.C.; CVS Rx Services, Inc.; CVS Indiana, L.L.C.

"abrogate[s] all common law product liability claims," which includes "any public nuisance claim or cause of action at common law in which it is alleged that the . . . supply, . . . distribution, . . . or sale of a product unreasonably interferes with a right common to the general public."  Ohio Rev. Code Ann. §§ 2307.71(A)(13), 2307.71(B).  The Court nevertheless rejected Defendants' OPLA abrogation argument in its August 6, 2020 order denying Defendants' motion to dismiss, Dkt. 3403 at 32–33, given its prior order denying the same argument in the Track 1 Cases, Dkt. 1203 at 23–28.

*Second*, even under the legal framework set out in the Court's ruling on Defendants' motion to dismiss, the jury's verdict was tainted at trial when a juror violated what this Court called "probably the most important instruction," Dkt. 4065 at 3754 (Oct. 22 trial tr., vol. 14), by conducting independent research on an issue relevant to liability and then sharing her research with other jurors.  Before reversing course, Plaintiffs' own counsel frankly acknowledged that "mistrial is appropriate" on these undisputed facts.  *Id.* at 3769, 3770.  Nonetheless, the Court denied Defendants' motion for a mistrial.  Dkt. 4078 at 3785–89 (Oct. 25 trial tr., vol. 15).

*Third*, Plaintiffs based their public nuisance claim on a theory that the federal Controlled Substances Act ("CSA") imposes a duty on the corporate parent of a pharmacy to maintain "systems" to identify prescriptions that bear "red flags" indicating a risk that the prescriptions may be diverted for misuse.  Dkt. 3404 at 21–22.  While the CSA may impose a prescription-specific duty on individual pharmacists, however, it imposes no such anti-diversion dispensing duty on a pharmacy's corporate parent.  The Court wrongly ruled otherwise in its August 6, 2020 order denying Defendants' motion to dismiss.  *Id.* at 13–25.

Each of these issues meets the standards for certification of interlocutory review under 28 U.S.C. § 1292(b).  They present controlling and significant questions of law, and their resolution

2

in an interlocutory posture will critically advance this extensive litigation, provide important guidance to bellwether and other similar cases, conserve the resources of the Court, and help bring the extensive litigation to a final resolution. Indeed, reversal on any of these three issues would obviate the need for the lengthy and resource-intensive remedies trial scheduled for next year. For these reasons, the Court should certify its August 6, 2020 order denying Defendants' motion to dismiss (Dkt. 3403) and its October 25, 2021 order denying Defendant's motion for a mistrial based on juror misconduct (Dkt. 4078 at 3785–89 (Oct. 25 trial tr., vol. 15)) for interlocutory appeal under § 1292(b).

## LEGAL STANDARD

A district court may certify an order for interlocutory appeal to the Court of Appeals under 28 U.S.C. § 1292(b) if three conditions exist: "[1] the order involves a controlling question of law [as] to which there is [2] substantial ground for difference of opinion and . . . [3] an immediate appeal may materially advance the termination of the litigation." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (emphasis omitted). "[D]istrict courts should not hesitate to certify an interlocutory appeal" when "[t]he preconditions for § 1292(b) review" are "satisfied." *Mohawk Indus.*, 558 U.S. at 110–11; *see also Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) ("It is equally important . . . to emphasize the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met.").

## ARGUMENT

The Court should certify its August 6, 2020 order denying Defendants' motion to dismiss (Dkt. 3403) and its October 25, 2021 order denying Defendant's motion for a mistrial based on juror misconduct (Dkt. 4078 at 3785–89 (Oct. 25 trial tr., vol. 15)). These orders meet the

3

requirements for § 1292(b) certification because they involve three controlling and significant questions of law, the resolution of which would materially advance the termination of this litigation:

- Whether OPLA abrogates Plaintiffs' public nuisance claim;

- Whether a juror's outside research on an issue relevant to liability, which the juror shared with other jurors, requires a mistrial absent a showing of clear harmlessness; and

- Whether the CSA imposes an anti-diversion dispensing duty on the corporate parent of a pharmacy beyond a prescription-specific duty on individual pharmacists.

The Court's erroneous rulings on each issue require prompt reversal of the jury's verdict before the need for the parties or the Court to expend further resources on a remedies trial.

### I. Whether OPLA Abrogates Plaintiffs' Public Nuisance Claim Warrants Interlocutory Review.

In their motion to dismiss, Defendants argued that Plaintiffs' only claim in the Track 3 Cases—public nuisance under Ohio common law—is abrogated by OPLA. Dkt. 3340-1 at 30 (incorporating argument from Track 1 briefing, *see* Dkt. 497-1 at 8; Dkt. 491-1 at 22–26). Defendants reiterated this argument in moving for judgment as a matter of law. Dkt. 4098 at 22; Defs.' Joint Mot. for J. as a Matter of Law Under Rule 50(b) at 25. OPLA "abrogate[s] all common law product liability claims or causes of action." Ohio Rev. Code Ann. § 2307.71(B). And OPLA expressly defines a "[p]roduct liability claim" to include "any public nuisance claim or cause of action at common law in which it is alleged that the . . . supply, . . . distribution, . . . or sale of a product unreasonably interferes with a right common to the general public." *Id.* § 2307.71(A)(13). Plaintiffs' claim that Defendants caused a public nuisance by dispensing opioid medications falls squarely within the scope of that definition and thus is barred by OPLA. *See State v. Gordon*, 109 N.E.3d 1201, 1203 (Ohio 2018) ("When a statute is plain and unambiguous, we apply the statute

4

as written."). This Court's contrary ruling in its order denying Defendants' motion to dismiss warrants interlocutory review for three reasons. *See* Dkt. 3403 at 32–33 (declining to reconsider its Track 1 ruling, *see* Dkt. 1203 at 23–28, but noting that "the relevant briefs shall be part of the judicial record in these Track Three cases").

*First*, whether OPLA abrogates Plaintiffs' public nuisance claim is "a controlling question of law." 28 U.S.C. § 1292(b). A statutory-interpretation question presents "a quintessential pure question of law." *United States v. Stephens*, 118 F.3d 479, 481 (6th Cir. 1997). This pure question of law is controlling, moreover, meaning it "could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). In fact, resolution of this question would certainly affect the case's outcome because a ruling by the Sixth Circuit that OPLA bars Plaintiffs' public nuisance claim would require judgment as a matter of law for Defendants.

*Second*, there is, at best, "substantial ground for difference of opinion" on whether OPLA abrogates Plaintiffs' public nuisance claim. 28 U.S.C. § 1292(b). Indeed, within this very MDL, two federal judges reached contradictory conclusions on this novel issue: Magistrate Judge Ruiz concluded that OPLA abrogates Plaintiffs' common-law public nuisance claim in his Report and Recommendation on Defendants' Track 1 motions to dismiss, before this Court disagreed. *Compare* Dkt. 1203 at 23–28, *with* Dkt. 1025 at 62–66; *see In re Trump*, 874 F.3d at 952 (explaining that there is "substantial ground for difference of opinion" on "novel legal issues" when "fair-minded jurists might reach contradictory conclusions"). Moreover, an Ohio state court that considered the same question ruled the other way than this Court did. *See City of Toledo v. Sherwin-Williams Co.*, No. CI200606040, 2007 WL 4965044, at *5 (Ohio C.P. Dec. 12, 2007) (dismissing the City of Toledo's nuisance action against several lead paint manufacturers). Even this Court's prior order passing on this issue acknowledged that there is

ground for a difference of opinion by concluding that the Court's construction of OPLA was not certain but was instead "at least plausible, if not likely." Dkt. 1203 at 27.

Moreover, the Court's construction of OPLA goes against "a clear national trend" refusing to recognize products-based public nuisance claims. *State ex rel. Hunter v. Johnson & Johnson*, 2021 WL 5191372, at *1, ___ P.3d ___ (Okla. Nov. 9, 2021); *see also Tioga Pub. Sch. Dist. No. 15 of Williams Cty. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993) (stating that if courts recognized products-based nuisance claims, "[n]uisance . . . would become a monster that would devour in one gulp the entire law of tort"); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (concluding that allowing products-based nuisance claims "would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products").

This trend has become only clearer since this Court's rulings. The Oklahoma Supreme Court recently held, under generally applicable legal principles, that recovery for harm allegedly caused by manufacturing, marketing, or selling opioid medications "sounds in product-related liability" and that "[p]ublic nuisance and product-related liability are two distinct causes of action, each with boundaries that are not intended to overlap." *Johnson & Johnson*, 2021 WL 5191372, at *5. The State's court of last resort accordingly reversed a $465 million bench trial verdict against Johnson & Johnson, finding the State's public nuisance theory of liability "fundamentally ill-suited to resolve" claims centering on Johnson & Johnson's manufacture and sale of opioids. *Id.* at *6.

The Oklahoma Supreme Court's decision aligns with other recent decisions rejecting public nuisance claims in the opioid litigation, including courts in California, Connecticut, Delaware, Illinois, North Dakota, and South Dakota. *See, e.g.*, *State v. Purdue Pharma L.P.*, No.

6

30-2014-00725287 (Cal. Super. Ct. Orange Cty. Nov. 1, 2021); *State ex rel. Ravnsborg v. Purdue Pharma, L.P.*, No. 32CIV18-000065 (S.D. Cir. Ct. 6th Jud. Dist. Mar 29, 2021); *State v. Johnson & Johnson*, No. 19 CH 10481 (Ill. Cir. Ct. Cook Cty. Jan. 8, 2021); *State ex rel. Stenehjem v. Purdue Pharma L.P.*, No. 08-2018-CV-01300, 2019 WL 2245743 (N.D. Dist. Ct. May 10, 2019) (judgment entered May 24, 2019); *State ex rel. Jennings v. Purdue Pharma L.P.*, No. N18C-01-223, 2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019); *City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019).

*Third*, immediate resolution of whether OPLA abrogates Plaintiffs' public nuisance claim would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If the Court's interpretation of OPLA's bar is wrong, then Plaintiffs' public nuisance claim must be dismissed, and any remedies phase would be a waste of resources. Moreover, resolving issues fundamental to Plaintiffs' nuisance cause of action will help the parties assess the legal risks underpinning Plaintiffs' nuisance claim and others in the MDL, one of the very purposes of the bellwether process.

Thus, the Track 3 Cases meet all three factors for certification of an interlocutory appeal on this issue. Although the Court previously denied Distributor Defendants' request for § 1292(b) certification of this issue at the motion-to-dismiss stage, it did so because, at the time, other claims remained in the case, so appellate resolution of the OPLA question would not have eliminated the need for discovery and a trial. *See* Dkt. 1283 at 2 (noting that "discovery to support the theories of liability [Plaintiffs] have alleged" would instead be "the best way to advance the process"). Now, by contrast, an appellate ruling in favor of the Defendants on OPLA would bring the entire Track 3 litigation to a close.

## II. Whether the Juror Misconduct in These Cases Requires a Mistrial Warrants Interlocutory Review.

The Court should also certify for interlocutory appeal its order denying a mistrial based on juror misconduct. Throughout the trial, Plaintiffs sought to convince the jury that Defendants seek to profit from opioid addicts. *See, e.g.*, Dkt. 3991 at 51, 92–93 (Oct. 4 trial tr., vol. 1). Plaintiffs' counsel pressed this insinuation during cross-examination by trying to elicit testimony that Walgreens sold Narcan (a life-saving medication that can reverse opioid overdoses) to patients merely out of profit-seeking greed. Dkt. 4057 at 3292 (Oct. 20 trial tr., vol. 12). That very same day, a juror went home, researched programs that made Narcan available for free, and then shared this information (in writing and orally) with "each juror." Dkt. 4065 at 3717–21 (Oct. 22 trial tr., vol. 14). Defendants moved for a mistrial. Dkt. 4068; *see also* Defs.' Joint Mot. for New Trial Under Rule 59 at 7–10. Even though Plaintiffs' counsel initially agreed with Defendants that a "mistrial is appropriate," *id.* at 3769, 3770, the Court denied a mistrial, *see* Dkt. 4078 at 3785–89 (Oct. 25 trial tr., vol. 15). That order warrants interlocutory review.

*First*, whether a juror's outside research on an issue relevant to liability, which she shared with other jurors, requires a mistrial absent a showing of clear harmlessness presents "a controlling question of law." 28 U.S.C. § 1292(b). The question is "controlling" because the whole reason for the mistrial is that retrying the case before a jury that was not prejudiced by the misconduct could lead to a different outcome. *See In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 (6th Cir. 1992) ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").

It is a "question of law" for purposes of an interlocutory appeal, moreover, because it concerns whether undisputed facts meet the Sixth Circuit's legal standard for a mistrial. *See Flint*

*ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001) ("Mixed questions of fact and law are treated as questions of law for purposes of an interlocutory appeal." (citing *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999), which concerned whether undisputed facts satisfied a legal standard)).

No one disputes the juror misconduct in this case: A juror violated what this Court called "probably the most important instruction," Dkt. 4065 at 3754 (Oct. 22 trial tr., vol. 14), by conducting independent research on an issue made relevant to liability by Plaintiffs' counsel during cross-examination and then sharing that information with all other jurors. Although the Court gave a curative instruction, Plaintiffs indisputably made no showing of clear harmlessness. In fact, Plaintiffs' counsel conceded the *absence* of clear harmlessness. Before apparently being overruled by his clients as a matter of litigation strategy, Plaintiffs' counsel frankly admitted to the Court: "I'll be candid, Your Honor, I think that [the juror misconduct] affects this jury, I think it affects everybody whether they recognize it or not, and I think that the mistrial is appropriate." *Id.* at 3769. He reiterated "[i]t's not anything I say lightly," but "I just want to tell the Court I think that the mistrial is appropriate. That's my candor to the tribunal which I owe under my ethical obligation." *Id.* at 3769–3770.

*Second*, there is "substantial ground for difference of opinion" over whether Sixth Circuit case law requires a mistrial based on these undisputed facts. 28 U.S.C. § 1292(b). Again, Plaintiffs' own counsel acknowledged—and then reiterated—that "*mistrial is appropriate*." The candor of Plaintiffs' counsel makes sense. After all, the Sixth Circuit "has not hesitated to declare mistrials" where misconduct by a juror "injected extraneous information into the trial" and the juror's act was "a response to the facts of the case at hand." *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 213–14 (6th Cir. 1982). The Sixth Circuit has explained that "[t]he jury's receipt of such

9

extraneous information 'requires that the verdict be set aside, unless entirely devoid of any proven influence or the probability of such influence upon the jury's deliberations or verdict.'" *Id.* at 215 (emphasis added) (quoting *Stiles v. Lawrie*, 211 F.2d 188, 190 (6th Cir. 1954)).  As a result, "a juror introducing extraneous information into deliberations 'can rarely be viewed as harmless'" under Sixth Circuit case law.  *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 758 (6th Cir. 2021) (quoting *Beverly Hills*, 695 F.2d at 215).

*Third*, immediate resolution of whether a mistrial was required will "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  Reversal by the Sixth Circuit would require setting aside the jury's verdict and clear the path for a new bellwether trial untainted by juror misconduct.  If the jury in the new trial found in Defendants' favor, of course, a remedies trial would have been unnecessary.  Even if Plaintiffs prevailed in the new trial, though, a new remedies trial would be required.  The Court would need to decide whether to abate whatever nuisance was found by *the jury in the second trial,* which would naturally be affected by, at minimum, proofs and jury instructions at the new trial.  As a result, certification of an interlocutory appeal on this issue is warranted.

### III. Whether the CSA Imposes an Anti-Diversion Dispensing Duty on the Corporate Parent of a Pharmacy Warrants Interlocutory Review.

One more issue warrants interlocutory review: whether the CSA imposes a duty on the corporate parent of a pharmacy to maintain "systems" to identify prescriptions that bear "red flags" indicating a risk that the prescriptions may be diverted for misuse.  Defendants have repeatedly explained that it does not.  Dkt. 3340-1 at 16–20; Dkt. 4098 at 28–30; Defs.' Joint Mot. for J. as a Matter of Law Under Rule 50(b) at 32–34.  The Court's erroneous ruling on this issue, *see* Dkt. 3404 at 13–25, further justifies certification for interlocutory appeal of its order denying Defendant's motion to dismiss.

*First*, the determination of pharmacies' dispensing duties under the CSA presents a "controlling question of law." 28 U.S.C. § 1292(b). Whether the CSA imposes "duties" at the corporate level to "maintain systems, policies, or procedures to identify prescriptions that bear indicia ('red flags') that the prescription is invalid, or that the prescribed drugs may be diverted for illegitimate use," Dkt. 3403 at 21–22, is a "pure question[] of law" that does not involve "any determination of any facts," *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 619 (6th Cir. 2019). Both the Court and Plaintiffs' counsel have characterized these Track 3 Cases as "systems" cases. Dkt. 3113 at 6–11 (Jan. 29, 2020 status conf. tr.). If there is no requirement for a system, Plaintiffs' dispensing claims are not viable. .

More specifically, an absolute nuisance requires proof of either culpable unlawful conduct or intentional, culpable conduct. *See, e.g.*, *Barnett v. Carr ex rel. Est. of Carr*, No. CA2000-11-219, 2001 WL 1078980, at *10–11 (Ohio Ct. App. Sept. 17, 2001). If Plaintiffs cannot establish unlawful conduct, then their absolute nuisance claim fails unless they could somehow prove that a Defendant "intended to bring about the conditions which are in fact found to be a nuisance." *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017); *see* Dkt. 3379 at 14. As explained in Defendants' post-trial briefing, Plaintiffs failed to do so, and judgment should be entered for Defendants on that issue as a matter of law. *See* Defs.' Joint Mot. for J. as a Matter of Law Under Rule 50(b) at 12–15. As a result, whether Plaintiffs can establish unlawful conduct under the CSA is a controlling question that "could materially affect the outcome of the case." *City of Memphis*, 293 F.3d at 351.

*Second*, this issue is one of first impression on which there is, at best, "substantial ground for difference of opinion." 28 U.S.C. § 1292(b). The Court itself has recognized that the question of corporate-level dispensing obligations under the CSA presents a novel question that may be

11

appropriate for certification.  *See* Dkt. 2966 at 38 (Dec. 4, 2019 case management conf. tr.)  The Court also has acknowledged that it is not clear "what a pharmacy-registrant must do with the prescription data it must collect."  Dkt. 3403 at 24.

*Third*, an immediate appeal will "materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  If the Court is wrong about Defendants' duties under the CSA, then the Track 3 Cases will end or, at bare minimum, will need to be re-tried under the correct standard.  Either way, the litigation will end more expeditiously if the parties do not first waste their time on an unnecessary remedies trial (or one that must be re-tried in light of a second verdict).

The Court previously denied § 1292(b) certification of this issue at the motion-to-dismiss stage on its view that (1) the issue did not affect "Plaintiffs' claims against the Pharmacy Defendants in their role as opioid *distributors*, as compared to opioid *dispensers*;" (2) "Plaintiffs' public nuisance claim may be grounded in either unlawful *or* intentional conduct;" and (3) "whether Defendants undertook 'effective controls and procedures' to prevent diversion is not a 'pure question of law'" and would benefit from "a full factual record."  Dkt. 3499 at 8–9.  Even assuming that the Court was correct about these grounds for denying certification, none applies in the current posture.  First, Plaintiffs abandoned their distribution claims against Defendants, and thus the dispensing duties dispose of the case.  Second, Plaintiffs focused their case at trial on Defendants' purportedly unlawful conduct and thus failed to prove that Defendants engaged in lawful dispensing that qualified as intentional, culpable conduct.  Third, as noted above, whether the CSA imposes anti-diversion dispensing duties on a pharmacy's corporate parent is a question of law; but to the extent Defendants' conduct might be relevant to that question, Plaintiffs' cases have now proceeded through completion of a liability phase trial.  The Court's prior reasons for

denying § 1292(b) certification are thus inapplicable, and interlocutory review of this issue is warranted.

## CONCLUSION

Because the OPLA, juror misconduct, and CSA issues meet the § 1292(b) criteria for interlocutory review, the Court should certify for interlocutory appeal its August 6, 2020 order denying Defendants' motion to dismiss (Dkt. 3403) and its October 25, 2021 order denying Defendant's motion for a mistrial based on juror misconduct (Dkt. 4078 at 3785–89 (Oct. 25 trial tr., vol. 15)).

Dated:  December 21, 2021

Respectfully submitted,

/s/  John M. Majoras
John M. Majoras
Benjamin C. Mizer
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zucerkman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*

14

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co., Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system on all counsel of record on December 21, 2021.

/s/ John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

*Counsel for Walmart Inc.*