# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION *This document relates to:* Track Three Cases | MDL 2804 Case No. 17-md-2804 Hon. Dan Aaron Polster |

# WALGREENS' RULE 50(B) MOTION
# FOR JUDGMENT AS A MATTER OF LAW

Under the law set forth in the Court's orders and jury instructions, in order to establish public nuisance liability each Plaintiff had to show that Walgreens—by means of intentional or unlawful conduct—was a substantial factor in creating a significant and ongoing interference with public health or safety in its county; namely, an oversupply of prescription opioids that were then diverted into the illicit market.  Ex. A, Final Jury Instructions at 17, 24-25.

To prevail, Plaintiffs had to prove each element of their public nuisance claim and link all of those elements together.  This means it was not enough for Plaintiffs to point to evidence of an ongoing public nuisance and then identify some intentional or unlawful conduct by Walgreens; they had to prove that the ongoing public nuisance was *caused* by the intentional or unlawful conduct.  *Id.* at 17.  Similarly, it was not enough for Plaintiffs to point to evidence that Walgreens contributed in some general sense to an ongoing public nuisance; they had to prove that Walgreens caused the nuisance *by means of* intentional or unlawful conduct.  *Id.*

Plaintiffs' evidentiary proof failed at every step, and each failure is an independent basis for the Court to grant judgment as a matter of law ("JMOL") in favor of Walgreens.[1]

## LEGAL STANDARD

"Under Rule 50, a court should render judgment as a matter of law when 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'"  *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (quoting FED. R. CIV. P. 50(a)).  "[T]he standard for granting summary judgment

---

[1] As explained in Defendants' Joint Brief, the Court should have dismissed Plaintiffs' claims for absolute public nuisance long ago; those claims are legally deficient in countless fundamental ways, which means there was no legally sufficient evidentiary basis for submitting them to the jury.  Walgreens incorporates the arguments from the Joint Brief by reference.  In advancing arguments based on the Court's legal rulings and jury instructions for purposes of this motion, Walgreens does not waive its objections to those prior rulings or jury instructions.  Those objections are stated in the Joint Brief and in Defendants' many prior filings.

1

mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same." *Id.* at 150 (quotation marks omitted).

"If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . the movant may file a renewed motion for judgment as a matter of law." FED. R. CIV. P. 50(b). "A Rule 50(b) motion is only a renewal of the preverdict motion, and it can be granted only on grounds advanced in the preverdict motion." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 780 (6th Cir. 2020). Defendants previously filed Rule 50(a) motions, and Walgreens renews those arguments here. Dkts. 4098 & 4102.

## ARGUMENT

### I. NO INTENTIONAL OR UNLAWFUL CONDUCT BY WALGREENS

To prevail on their public nuisance claim, each Plaintiff had to show that Walgreens caused an ongoing public nuisance of diverted prescription opioids in Lake County or Trumbull County by means of "***intentional conduct***" or "***unlawful conduct***." Ex. A at 17 (emphasis in original). Plaintiffs failed to adduce any legally sufficient evidence that Walgreens caused any nuisance, much less through intentional or unlawful conduct. In fact, there was no evidence that Walgreens did anything but dispense medication for the legitimate medical needs of patients in Lake County and Trumbull County as determined by their licensed medical providers. Without evidence to support a finding of intentional or unlawful conduct by Walgreens, Plaintiffs' claims fail and Walgreens is entitled to JMOL.

#### A. No Intentional Conduct by Walgreens.

To prove that Walgreens caused an ongoing public nuisance through intentional conduct, Plaintiffs had to prove that Walgreens acted "with the purpose to produce a specific result." *Id.* at 19. In this case, that "specific result" must be "an oversupply of legal prescription opioids, and . . . diversion of those opioids into the illicit market." *Id.* at 17. At a minimum, Plaintiffs

had to prove that Walgreens knew, or was substantially certain, that these circumstances would result and would "interfere with public health or public safety." *Id.* at 19; *see also Nottke v. Norfolk S. Ry. Co.,* 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017) (intentional conduct occurs when "the creator of [the nuisance] intended to bring about the conditions which are in fact found to be a nuisance") (quoting *Angerman v. Burick,* 2003 WL 1524505, *2 (Ohio App. 2003)).

Plaintiffs adduced no evidence whatsoever that Walgreens or any of its employees intended to create an oversupply of prescription opioids in Lake County or Trumbull County, much less intended that those prescription opioids be diverted into the illicit market, resulting in abuse, misuse, addiction, overdose, and death. None of Plaintiffs' various trial theories—that Walgreens failed to provide its pharmacists with adequate "tools" to detect diversion or that Walgreens pharmacists did not always document resolution of "red flags"—were evidence of any such intent.[2]

---

[2] The evidence that Walgreens has continually updated and improved its policies, procedures, and tools to prevent diversion cannot be reconciled with a finding of intentional conduct. *See, e.g.*, Dkt. 4057, Tr. at 3203:1-3209:20 (Walgreens provides computer systems, prescription and patient data, and others tools and resources to pharmacists); *id.* at 3096:4-17, 3127:9-3128:11 (Walgreens has had good faith dispensing policies and procedures dating back decades); Dkt. 4036-6 at 26 (Walgreens' good faith dispensing policy requires pharmacists check PDMP if available in their state); Dkt. 4036-8 at 2 (same); Dkt. 4036-6 at 28-29 (Walgreens' good faith dispensing policy requires pharmacists to document due diligence); Dkt. 4036-8 at 5 (same); Dkt. 4057, Tr. at 3118:18-3121:18 (Walgreens provides training to pharmacists for good faith dispensing); Dkt. 4064, Tr. at 3383:25-3384:4, Dkt. 4057, Tr. at 3180:17-3181:12 (Walgreens has developed tools for its pharmacists and field leadership to ensure appropriate dispensing and prevent diversion); Dkt. 4057, Tr. at 3184:21-3185:13 (Walgreens has conducted internal audits to ensure compliance with its policies and tools). Neither can Plaintiffs' theory be reconciled with the evidence that Walgreens and its pharmacists in Lake and Trumbull Counties have always been strong allies, not adversaries, to local regulators and law enforcement in the fight against drug diversion. *See, e.g.*, Dkt. 4106, Tr. at 4534:1-22 (former Ohio BOP agent would get calls about "red flags" or "questionable physicians or practices" from Walgreens and always received "total cooperation"); *id.* at 4545:17-4547:15 (Walgreens and the pharmacy chains were the "most compliant" on issues of "diversion or suspected diversion"); *id.* at 4549:6-4550:16 (Walgreens pharmacist and District Manager in Trumbull County described as "an excellent pharmacist" who was "always responsible" and "always compliant" and who "always called . . .

Another theory, put forward by Plaintiffs' expert Anna Lembke, is that Walgreens "collaborated" with Purdue Pharma to create opioid "Super Stores."  But the only evidence of any "collaboration" was a handful of Purdue documents from 1997, describing the ideas of a single pharmacist in Florida, with no evidence of any collaboration with Walgreens itself, no evidence that anyone at Walgreens ever knew or acted on those isolated ideas from a single pharmacist, and certainly no evidence of any intent to bring about the oversupply and diversion of prescription opioids outside of appropriate medical channels.  Dkt. 4005, Tr. at 813:1-817:10.

The Court should grant JMOL to Walgreens as to "intentional conduct."

**B.      No Unlawful Conduct by Walgreens.**

To prove that Walgreens caused an ongoing public nuisance through "unlawful conduct," Plaintiffs had to show that Walgreens violated a "statute, ordinance, or regulation" through its dispensing of prescription opioids to patients in Lake County or Trumbull County.  Ex. A at 22. Plaintiffs could not meet their burden with evidence about national policies or procedures without identifying any specific unlawful acts in the two counties.  Plaintiffs also could not meet their burden with evidence that Walgreens did not act perfectly, because—as this Court has recognized—the CSA and its Ohio analogue "do not require strict or perfect compliance," rather "[o]nly ***substantial compliance*** is required."  *Id.* (emphasis added).

---

if he had issues or concerns"); Dkt. 4109, Tr. at 5293:21-5295:2 (former LCNA agent describing pharmacists as the "main source of our tips" and testifying that he had "a good working relationship with the pharmacists at Walgreens in Lake County"); *id.* at 5303:1-12 (tip from Walgreens pharmacist leading to investigation) ; *id.* at 5304:12-5306:13 (two Walgreens pharmacists in Lake County described as a "good pharmacist[s]" who were "diligent," "called anytime [they] had an issue or suspected a problem," and were a source of leads); *id.* at 5313:3-5314:1 (current Ohio BOP agent on Walgreens pharmacists "provid[ing] leads to the Board of Pharmacy on suspicious activities"); Dkt. 4136, Tr. at 6883:1-6886:13 (recent example of Walgreens pharmacist working with law enforcement to stop suspected diversion).

4

To show unlawful dispensing, Plaintiffs had to prove that Walgreens or its pharmacists failed in their "corresponding responsibility to ensure the prescription is dispensed for a legitimate medical purpose." Ex. A at 23.[3] A violation of the "corresponding responsibility" requires a showing of knowledge, "deliberate ignorance," or "willful blindness" (*i.e.*, deliberately avoiding confirmation of what one believes to be true). Joint Br. at 4.

There was no evidence that Walgreens or its pharmacists in Lake County or Trumbull County ever filled an illegitimate prescription with anything approaching this heightened level of scienter. Unsurprisingly, Plaintiffs failed to adduce evidence of a single prescription unlawfully filled by a Walgreens pharmacist in either county. The most they showed is (1) that Walgreens pharmacists filled some prescriptions in 2009-10 for an individual in Trumbull County who later pleaded guilty to the crime of Deception to Obtain a Dangerous Drug and (2) that a Walgreens pharmacist in Trumbull County filled a single prescription for a known patient in 2018 despite a prior refusal to fill and possible signs of intoxication. There is no evidence that the specific prescriptions dispensed by Walgreens should not have been filled, much less that the pharmacists who filled them had knowledge of, or were "willfully blind" to, their illegitimacy. As to the former, the reasonable conclusion is that Walgreens pharmacists also were victims of the individual's criminal deception. Dkt. 4050, Tr. at 2773:16-2774:7, 2798:13-23. As to the latter, Plaintiffs' only evidence was a Target Drug Good Faith Dispensing (TDGFD) checklist; they did not even attempt to call the pharmacist in question, or explore the circumstances surrounding that patient, prescriber, or prescription. In fact, testimony at trial suggested that the pharmacist may

---

[3] The Court was wrong to hold that *pharmacies*—not just individual *pharmacists*—have a "corresponding responsibility" under the law. Joint Br. at 32-34. By advancing arguments based on the Court's legal rulings and jury instructions for purposes of this motion, Walgreens does not waive its objections to those prior rulings or jury instructions. *Supra* n.1.

have inadvertently checked the wrong box. *See, e.g.*, Dkt. 4136, Tr. at 6967:20-6971:20. In any event, the TDGFD checklist indicated that the patient was "known" to the pharmacist and that the pharmacist exercised her professional judgment to determine that it should be filled. Dkt. 4094-24. There is, again, no evidence to support a finding of an unlawful act.[4]

Without actual evidence of any improper dispensing, Plaintiffs introduced evidence that Walgreens' pharmacists did not always document their resolution of certain "red flags." There is no legal requirement to document due diligence, however, so that fact cannot support a finding of unlawful conduct. Joint Br. at 8, 10-12; *see also* Ex. A at 22 ("Conduct that is fully authorized by statute, ordinance, or regulation cannot create a public nuisance, because it is lawful conduct."). Even if it could though, Plaintiffs' evidence was based entirely on Carmen Catizone's made-for-litigation "red flags," supported by little more than the *ipse dixit* of an expert. Joint Br. at 8-10, 44; *see also Gen'l Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Plaintiffs also advanced a theory that Walgreens failed to provide its pharmacists with adequate "tools," particularly when it comes to sharing or analyzing dispensing data. This Court has already held that the CSA imposes no "specif[ic]" or "absolute" requirement in this regard. Dkt. 3499 at 7. In any event, it is undisputed that Walgreens has always provided systems, data, and tools to its pharmacists and the field leadership who oversee its stores, including in Lake County and Trumbull County. *See supra* n.2. At most, then, Plaintiffs' evidence showed that Walgreens could have or should have provided better tools. Once again, though, the CSA does

---

[4] Even if Plaintiffs were right (and they are not) that these isolated events reflected unlawful dispensing, no reasonable jury could have found that they were a "substantial factor" in creating a public nuisance. *See infra* 7-12. And even if they could, both events occurred in Trumbull County and could not possibly support a finding of liability as to Lake County.

not require perfection, Ex. A at 22, nor is Plaintiffs' "better tools" theory a basis for *absolute* public nuisance liability under Ohio law, Joint Br. at 1, 3, 11.

The Court should grant JMOL to Walgreens as to "unlawful conduct."

### C. Extraterritorial Evidence Does Not Overcome Lack of Evidence Here.

Because Plaintiffs had no evidence of any intentional or unlawful conduct by Walgreens in Lake County or Trumbull County, they once again tried to point to evidence of Walgreens' 2013 settlement with DEA in Florida and its 2011 settlement with DEA in California. But Plaintiffs adduced no evidence connecting any conduct by Walgreens in Florida or California to the oversupply and diversion of prescription opioids in Lake or Trumbull today. Moreover, the Court only admitted Walgreens' settlements for a specific and limited purpose. The jury was not permitted to "infer liability or draw any conclusions about a defendant's potential liability in this case based on upon the fact that it entered into these settlements." Ex. A at 20. So, even if the jury had concluded that Walgreens acted unlawfully in Florida or California many years ago, that could not establish liability here and now. Nor does anything about Walgreens' settlements support a finding that Walgreens intended to bring about the oversupply and diversion of prescription opioids in Lake County or Trumbull County (or anywhere else). Plaintiffs were required to put forward legally sufficient evidence of intentional or unlawful conduct by Walgreens in Lake County or Trumbull County, and they failed to do so.

## II. NO CAUSATION AS TO WALGREENS

Even if Plaintiffs had adduced sufficient evidence of intentional or unlawful conduct by Walgreens (they did not), they had to also adduce evidence linking that intentional or unlawful conduct to the alleged nuisance. Ex. A at 24 ("Under either of the two ways of proving public nuisance – that is, showing intentional conduct or unlawful conduct – a Plaintiff must prove by

7

the greater weight of the evidence that a Defendant's conduct *caused* an interference with a right to public health or safety.") (emphasis in original).  Plaintiffs did not do so.

Even if Plaintiffs had been able to point to some connection between the alleged public nuisance and Walgreens' purported misconduct, however, that still would not be enough. Plaintiffs had to show that Walgreens' intentional or unlawful conduct was a "substantial factor" in creating the ongoing public nuisance.  *Id.*  Put differently, in order to hold Walgreens liable for creating a public nuisance, Plaintiffs had to prove that any intentional or unlawful conduct by Walgreens had a "material, meaningful, or considerable effect" in bringing about "the circumstances that constitute the nuisance."  *Id.*  Again, they did not do so.

### A. No Connection Between Allegedly Intentional or Unlawful Conduct and the Alleged Public Nuisance in Lake County or Trumbull County.

Plaintiffs did not adduce any legally sufficient evidence connecting *any* purportedly intentional or unlawful conduct by Walgreens—whether in Ohio, Florida, California, or anywhere else—to the alleged public nuisance in the two counties today.  Even accepting at face value Plaintiffs' theories that Walgreens had inadequate "systems" or "policies," Plaintiffs adduced no evidence that those inadequacies resulted in a single improper dispensing decision involving prescription opioids in either Lake County or Trumbull County.  *See supra* 2-7   That complete failure of proof not only means Plaintiffs failed to show intentional or unlawful conduct, it also means they did not establish the essential element of causation.

For this reason alone, the Court should grant JMOL in favor of Walgreens.

### B. No Showing that any Alleged Conduct by Walgreens was a "Substantial Factor" in Creating the Alleged Public Nuisance in the Counties.

Even assuming a connection to the alleged public nuisance, there was no evidence that any intentional or unlawful conduct by Walgreens was a "substantial factor" in creating the nuisance.  Where "some other cause or causes combined with a Defendant's conduct in creating

8

the public nuisance," the Plaintiff must prove "the conduct the Defendant engaged in was a ***substantial factor*** in creating the public nuisance." Ex. A at 24 (emphasis in original). Plaintiffs did not make (and could not make) that showing for at least two independent reasons:

*First,* under Ohio law and the Restatement, an "important consideration" for the jury in determining whether conduct is a "substantial factor" is "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." RESTATEMENT (SECOND) OF TORTS § 433(a); *see also Schwartz v. Honeywell Int'l, Inc.*, 102 N.E.3d 477, 482 (Ohio 2018) (adopting section 433(a) of the Restatement). There is no dispute that the quantity of other factors in this case were innumerable. Plaintiffs' own expert, Katherine Keyes, testified that just some of these other factors include the DEA, FDA, state regulators, pharmaceutical manufacturers, wholesale distributors, high-volume prescribers, pill mills, drug traffickers and cartels, local street dealers, pill counterfeiters, doctor shoppers, individuals stealing medication from medicine cabinets, and more. Dkt. 4065, Tr. at 3685:1-3692:5.

There is no dispute that the contribution by these other actors is extensive. For example, nearly all of Plaintiffs' experts agreed that medicine cabinet diversion plays a significant role. Dkt. 4000, Tr. at 589:22-591:2 (Lembke); Dkt. 4064, Tr. at 3522:8-19 (Alexander); Dkt. 4090, Tr. at 4164:7-4165:6 (Keyes). One expert testified that, had the FDA "done its job" and pharmaceutical manufacturers "acted more responsibly," "we would not have an opioid crisis." Dkt. 4090, Tr. at 4153:15-19 (Keyes). She also agreed that "the opioid crisis would not have occurred if prescribing opioids had not become a standard practice for managing pain in patients." Dkt. 4065, Tr. at 3693:15-19 (Keyes).

In fact, even if one were to ignore all of these other significant causes identified by Plaintiffs' own experts and focus solely on pharmacies in Lake County or Trumbull County, no reasonable jury could conclude that any misconduct by Walgreens was a "substantial factor" in

9

creating a public nuisance. It was undisputed at trial that Walgreens accounted for just 13 of the more than 140 pharmacies, hospitals, and clinics in Lake County and Trumbull County that dispensed prescription opioid medications. Dkt. 4111, Tr. at 5494:13-23; *id.* at 5502:4-13. It was likewise undisputed that Walgreens' market share for *all* dispensing—a far larger number than any even allegedly *improper* dispensing—was only 14.5 percent in the two counties. *Id.* at 5506:17-5507:2. That number is dwarfed by the 71.9 percent market share for non-defendant pharmacies, including known "pill mills." *Id.* at 5505:1-21; 5500:15-5501:1.[5]

Two other "important considerations" for determining whether conduct is a substantial factor include (1) "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm, or has created a situation harmless unless acted upon by other forces for which the actor is not responsible" and (2) "lapse of time." RESTATEMENT (SECOND) OF TORTS § 433(b)-(c). Both considerations weigh heavily against a finding that any intentional or unlawful conduct by Walgreens was a "substantial factor" in creating the alleged nuisance. With no evidence that Walgreens filled any specific improper prescriptions in Lake County or Trumbull County, any purported contribution to an oversupply of prescription opioids necessarily involves the criminal act of others for whom Walgreens is not

---

[5] Those other pharmacies included Overholt's Pharmacy—one of the largest independent pharmacies in the area—which was the designated dispenser for Dr. Peter Franklin, who was known for "prescribing exorbitant amounts" of controlled substances that did not "even come close to legitimate medical purpose[,]" and thus "contributed greatly" to the opioid crisis in Lake and Trumbull Counties. Dkt. 4106, Tr. at 4570:25-4571:16; *id.* at 4585:9-4586:24; *id.* at 4580:1-13 (noting that "numerous prescriptions" written by Dr. Franklin "stated that the prescription should be filled only at Overholt's"). According to the former Ohio Board of Pharmacy Agent George Pavlich, those independent pharmacies were the "least compliant" with Ohio law and regulations, whereas Walgreens and other chain pharmacies were "the most compliant." *Id.* at 4546:18-23. While Pavlich could not recall a single Walgreens pharmacy that had ever had its license revoked in the 25 years he worked at the Board, "there were numerous independent ones" that did. *Id.* at 4547:4-11; Dkt. 4111, Tr. at 5349:21-5350:14; *see also supra* n.2.

responsible.  Likewise, nearly all of Walgreens' alleged misconduct occurred years ago, with no evidence linking that conduct to ongoing harms in the counties today.

*Second*, under Ohio law and the Restatement, conduct cannot be a "substantial factor" if "the harm would have been sustained" even without the conduct.  *Id.* § 432(1); *Springsteel v. Jones & Laughlin Steel Corp.*, 192 N.E.2d 81, 87 (Ohio Ct. App. 1963) (applying Section 432(1) of the Restatement); *Skinner v. N. Mkt. Dev. Auth., Inc.*, 1997 WL 381638, at *3 (Ohio Ct. App. July 10, 1997) (same).  The only exception to this requirement is where there are multiple forces "actively operating" and "each of itself is sufficient to bring about the harm."  RESTATEMENT (SECOND) OF TORTS § 432(2).  There was no legally sufficient evidence that would have permitted a reasonable jury to find that intentional or unlawful conduct *by Walgreens* was itself sufficient to cause the opioid crisis in Lake County or Trumbull County, or that there would be no opioid crisis in the counties in the absence of that conduct.

Plaintiffs cannot overcome the complete lack of evidence supporting causation.  Even if they could overcome the evidentiary shortcomings identified for every other element, the Court should grant complete JMOL to Walgreens for lack of causation alone.

### III. NO SHOWING THAT WALGREENS SPECIFICALLY CAUSED AN ONGOING PUBLIC NUISANCE INVOLVING PRESCRIPTION OPIOIDS

Plaintiffs failed to show that Walgreens specifically caused the public nuisance they have alleged: "a significant and ***ongoing*** interference with a public right to health or safety," which is defined as "an oversupply of ***legal prescription opioids***, and . . . diversion ***of those opioids*** into the illicit market."  Ex. A at 17 (emphasis added).  Plaintiffs did not adduce evidence of an *ongoing* public nuisance based on the oversupply and diversion of *prescription* opioids in either Lake County or Trumbull County.  Instead, the evidence shows a crisis of *illicit* opioids and other drugs.  Joint Br. at 41-42, 43.  While Plaintiffs tried to overcome this gap in their case with

11

the theory that prescription opioids are a "gateway" to illicit drugs, taking that evidence at face value only confirms that any opioid crisis in the counties today is *not* made up of the oversupply and diversion of prescription opioids dispensed by Walgreens.

For this reason alone, the Court should grant JMOL in favor of Walgreens.

### IV. THE EVIDENCE CONFIRMS THAT PLAINTIFFS' CLAIMS AGAINST WALGREENS ARE BARRED BY THE STATUTE OF LIMITATIONS

Finally, as explained in Defendants' Joint Brief, either a two- or four-year statute of limitations applies to Plaintiffs' public nuisance claims. Joint Br. at 40-43. Under either limitations period, Plaintiffs adduced no legally sufficient evidence of any intentional or unlawful conduct by Walgreens within the applicable limitations period and cannot recover for claims accruing outside of it. *See, e.g.*, *Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008).

For this reason alone, the Court should grant JMOL in favor of Walgreens.

### CONCLUSION

For all of the reasons above, and those set forth in Defendants' Joint Brief, the Court should grant judgment as a matter of law in favor of Walgreens.

Dated: December 21, 2021

Respectfully submitted,

/s/ *Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com

12

        kate.swift@bartlitbeck.com
        sharon.desh@bartlitbeck.com
        sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

13