# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| THIS DOCUMENT RELATES TO: | |
| | Judge Dan Aaron Polster |
| TRACK THREE | |

**CVS DEFENDANTS' RENEWED RULE 50(b) MOTION FOR JUDGMENT
AS A MATTER OF LAW OR, IN THE ALTERNATIVE,
<u>MOTION FOR NEW TRIAL UNDER RULE 59</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.    THIS COURT SHOULD ENTER JMOL UNDER RULE 50(b) IN CVS'S FAVOR. .......... 2

    A.    The Evidence Is Insufficient to Establish That CVS Engaged in
        Unlawful Dispensing Conduct in Lake and Trumbull Counties.................................. 3

        1.    There is no evidence that a CVS pharmacist in Lake and Trumbull
            Counties ever filled an illegitimate opioid prescription.......................................... 3

        2.    The evidence at trial showed that the CVS pharmacies in Lake and
            Trumbull Counties were operating lawfully ........................................................... 4

        3.    CVS "the business" did not act unlawfully............................................................ 6

    B.    The Evidence Is Insufficient to Establish that CVS Engaged in
        Intentional Conduct with Respect to the Dispensing of Prescription
        Opioid Medications in Lake and Trumbull Counties. ................................................ 11

    C.    The Evidence Is Insufficient to Establish that CVS Proximately
        Caused an Ongoing Public Nuisance in Lake and Trumbull Counties...................... 13

        1.    There is no evidence that any prescription opioid medication dispensed
            by CVS caused any harm in Lake and Trumbull Counties, let alone any
            harm that continues to exist today. ....................................................................... 13

        2.    Evidence of CVS's conduct was too immaterial and remote for a
            reasonable juror to have concluded that CVS was a substantial factor
            in causing an ongoing public nuisance that exists in the counties today............. 14

        3.    Prescribers broke the causal chain ...................................................................... 16

    D.    The Evidence Is Insufficient to Establish Liability Against CVS
        Based on  Alleged Promotion of Opioids. ................................................................ 17

    E.    The Evidence Is Insufficient to Support Plaintiffs' Public Nuisance
        Claims Against CVS for Other Reasons. .................................................................. 18

        1.    The evidence is insufficient to establish Article III or prudential standing
            to sue CVS ......................................................................................................... 19

        2.    The evidence is insufficient to establish a violation of a public right by
            CVS..................................................................................................................... 19

        3.    As a licensed and regulated entity, CVS cannot be liable for absolute
            public nuisance................................................................................................... 19

4. Plaintiffs' claims against CVS are barred by the statute of limitations ............... 20

5. The evidence is insufficient to establish an ongoing or continuing public nuisance, and therefore the claims are barred in whole or in part by limitations, and plaintiffs are not entitled to a remedy of abatement ................... 21

6. The Evidence is Insufficient to Overcome the Economic Loss Doctrine ............ 22

7. The Evidence is Insufficient to Establish that CVS Controls the Instrumentality of the Nuisance .......................................................................... 23

II. ALTERNATIVELY, THIS COURT SHOULD GRANT CVS A NEW TRIAL UNDER RULE 59 ................................................................................................. 23

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*Ashtabula River Corp.* v. *Conrail, Inc.*,
   549 F. Supp. 2d 981 (N.D. Ohio 2008) .................................................................................. 22

*Brown* v. *Cty. Comm'rs of Scioto Cty.*,
   622 N.E.2d 1153 (Ohio Ct. App. 1993) ............................................................................. 5, 19

*Chattree v. Chattree*,
   No. 8-CV-2039, 2010 WL 1945067 (N.D. Ohio May 11, 2010) ............................................ 2

*City of Bloomington* v. *Westinghouse Elec. Corp.*,
   891 F.2d 611 (7th Cir. 1989) ................................................................................................. 23

*City of Chicago* v. *Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004) ................................................................................................... 19

*City of Cleveland v. Ameriquest Mort. Sec. Inc.*,
   615 F.3d 496 (6th Cir. 2010) ........................................................................................... 13, 15

*Conte v. Gen. Housewares Corp.*,
   215 F.3d 628 (6th Cir. 2000) ................................................................................................. 23

*Corporex Dev. & Constr. Mgt., Inc.* v. *Shook*,
   835 N.E.2d 701 (Ohio 2005) ................................................................................................. 22

*Fed. Ins. Co.* v. *Fredericks*,
   29 N.E.3d 313 (Ohio Ct. App. 2015) ..................................................................................... 22

*Glob.-Tech Appliance, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) ................................................................................................................. 4

*Hammond* v. *T.J. Litle & Co.*,
   82 F.3d 1166 (1st Cir. 1996) ................................................................................................... 2

*Harris* v. *Purdue Pharma, L.P.*,
   218 F.R.D. 590 (S.D. Ohio 2003) .......................................................................................... 16

*Hemi Group, LLC* v. *City of New York*,
   559 U.S. 1 (2010) ................................................................................................................... 15

*Holmes* v. *Sec. Inv'r Prot. Corp.*,
   503 U.S. 258 (1992) ............................................................................................................... 15

*Kramer v. Angel's Path, L.L.C.*,
   882 N.E.2d 46 (Ohio Ct. App. 2007) ..................................................................................... 21

*Kusens* v. *Pascal Co.*,
   448 F.3d 349 (6th Cir. 2006) ........................................................................ 2

*Macquesten Gen. Contracting, Inc. v. HCE, Inc.*,
   128 F. App'x 782 (2d Cir. 2005) ............................................................... 24

*Mizzaro v. Home Depot, Inc.*,
   544 F.3d 1230 (11th Cir. 2008) ................................................................. 7

*Pendrey* v. *Barnes*,
   479 N.E.2d 283 (Ohio 1985) ................................................................... 16

*RWP, Inc.* v. *Fabrizi Trucking & Paving Co.*,
   2006 WL 2777159 (Ohio Ct. App. Sept. 28, 2006) ................................. 22

*Sanek* v. *Duracote Corp.*,
   539 N.E.2d 1114 (Ohio 1989) ................................................................... 2

*Seley v. G.D. Searle & Co.*,
   423 N.E.2d 831 (Ohio 1981) ................................................................... 16

*Sexton v. Mason*,
   883 N.E.2d 1013 (Ohio 2008) ................................................................. 20

*Smith for Schwartz v. Woolace Elec. Corp.*,
   822 F. App'x 409 (6th Cir. 2020) ............................................................. 23

*State ex rel. Andersons* v. *Masheter*,
   203 N.E.2d 325 (Ohio 1964) ................................................................... 19

*State ex rel. RTG, Inc.* v. *State*,
   753 N.E.2d 869 (Ohio Ct. App. 2001)
   *rev'd on other grounds*, 780 N.E.2d 998 (Ohio 2002) .......................... 20

*State ex rel. Schoener* v. *Board of Comm'rs for Hamilton Cty.*,
   619 N.E.2d 2 (Ohio Ct. App. 1992) ................................................... 19-20

*State* v. *Lead Indus. Ass'n, Inc.*,
   951 A.2d 428 (R.I. 2008) ......................................................................... 19

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) ................................................................................... 7

*Sutowski* v. *Eli Lilly & Co.*,
   696 N.E.2d 187 (Ohio 1998) ................................................................... 13

*Tioga Public Sch. Dist.* v. *U.S. Gypsum*,
   984 F.2d 915 (8th Cir. 1993) ................................................................... 23

*Toth v. Yoder Co.*,
  749 F.2d 1190 (6th Cir. 1984) ................................................................. 23

*Tracy* v. *Merrell Dow Pharm., Inc.*,
  569 N.E.2d 875 (Ohio 1991) ............................................................. 16, 17

*United States v. Sci. Applications Int'l Corp.*,
  626 F.3d 1257 (D.C. Cir. 2010) ................................................................ 7

*Woodmont, Inc. v. Daniels*,
  274 F.2d 132 (10th Cir. 1959) .................................................................. 7

## STATUTES

OHIO ADMIN. CODE § 4729 ........................................................................ 20

## OTHER AUTHORITIES

Restatement (Second) of Torts § 821B ...................................................... 19

Wright & Miller,
  *Federal Practice and Procedure: Civil 2d* § 2537 ................................... 2

Wright & Miller,
  *Federal Practice and Procedure: Civil 3d* § 2531 ................................. 23

## RULES

Fed. R. Civ. P.  50 ...................................................................................... 2

Fed. R. Civ. P. 50(a)(1)(A) ......................................................................... 2

Fed. R. Civ. P. 50(a)(1)(B) ......................................................................... 2

Fed. R. Civ. P.  50(b) ........................................................................ 1, 23, 24

Fed. R. Civ. P. 59 ............................................................................. 1, 23, 24

Fed. R. Civ. P. 59(a)(1)(A) ....................................................................... 23

## REGULATIONS

21 C.F.R. § 1301.71(a) ............................................................................... 11

21 C.F.R. § 1306.04 ................................................................................ 3, 6

21 C.F.R. § 1306.04(a)................................................................................................................. 16

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, CVS[1] renews its motion for judgment as a matter of law ("JMOL").  As set forth below, a reasonable jury could not have a legally sufficient evidentiary basis to find CVS liable for causing an ongoing public nuisance in Lake and Trumbull Counties.  Therefore, the Court should grant JMOL in CVS's favor.  Alternatively, the Court should grant a new trial under Federal Rule of Civil Procedure 59.

CVS is joining Defendants' Joint Renewed Motion for Judgment as a Matter of Law under Rule 50(b) (the "Joint Rule 50(b) Motion") and Defendants' Joint Motion for a New Trial under Rule 59 (the "Joint Rule 59 Motion"), both of which are also being filed today.  Dkt. 4202 & 4204.  CVS incorporates by reference all of the arguments made in those motions.  CVS is filing this motion only to raise additional arguments and to highlight why JMOL should be entered in its favor, or in the alternative, why it should be granted a new trial.  In some instances, CVS addresses how arguments made in the joint motions apply to CVS based on the CVS-specific evidence presented at trial.  By not addressing in this motion arguments that are raised in the joint motions, CVS does not waive those arguments.

Further, in advancing arguments based on the Court's legal rulings and jury instructions for purposes of this motion, CVS preserves, and does not waive, its objections to those prior rulings and jury instructions.  Those objections are stated in the Joint Rule 50(b) Motion, the Joint Rule 59 Motion, and in Defendants' many prior filings.

---

[1] CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., CVS Indiana, L.L.C.

## I.     THIS COURT SHOULD ENTER JMOL UNDER RULE 50(b) IN CVS'S FAVOR.[2]

CVS renews its motion for JMOL.  *See* Dkt. 4103.  The "standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion."  *Chattree v. Chattree*, No. 8-CV-2039, 2010 WL 1945067, at *2 (N.D. Ohio May 11, 2010) (quoting Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2537).  "In diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence," the Court of Appeals for the Sixth Circuit "applies the standard of review used by the courts of the state whose substantive law governs the action."  *Kusens* v. *Pascal Co.*, 448 F.3d 349, 360 (6th Cir. 2006).  "Under Ohio law, '[t]he test for granting a directed verdict or a judgment n.o.v. is whether the movant is entitled to judgment as a matter of law when the evidence is construed most strongly in favor of the nonmovant.'"  *Id.* (quoting *Sanek* v. *Duracote Corp.*, 539 N.E.2d 1114, 1117 (Ohio 1989)).

Under Rule 50, the Court may resolve an "issue" against a party who has been fully heard on the issue, Fed. R. Civ. P. 50(a)(1)(A), and may grant JMOL against the party on a "claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Fed. R. Civ. P. 50(a)(1)(B).  "A party may move for judgment as a matter of law on an issue by issue basis; it does not have to be all or nothing."  *Hammond* v. *T.J. Litle & Co.*, 82 F.3d 1166, 1172 (1st Cir. 1996).  For certain arguments set forth below, CVS requests that the Court resolve certain issues against Plaintiffs, resulting in JMOL in CVS's favor.  For other arguments, CVS requests that the Court grant JMOL on Plaintiffs' claims in their entirety.

---

[2] As explained in the Joint Rule 50(b) Motion, the Court should have dismissed Plaintiffs' claims for absolute public nuisance long ago.  Those claims are legally deficient in countless fundamental ways, which means there can be no legally sufficient evidentiary basis for submitting them to the jury.  As previously stated, CVS incorporates by reference all of the arguments in the Joint Rule 50(b) Motion and the Joint Rule 59 Motion.

**A.      The Evidence Is Insufficient to Establish That CVS Engaged in Unlawful Dispensing Conduct in Lake and Trumbull Counties.**

After the close of Plaintiffs' case-in-chief, Plaintiffs dismissed their claims related to Defendants' conduct as distributors of prescription opioids.  Tr. [Dkt. 4109] at 5060:2-6.  On the remaining dispensing claims, there is insufficient evidence to find that CVS acted unlawfully with respect to the dispensing of prescription opioid medications in Lake and Trumbull Counties.

1.      There is no evidence that a CVS pharmacist in Lake and Trumbull Counties ever filled an illegitimate opioid prescription.

 The unlawful conduct at issue here is the alleged violation of the "Federal and Ohio Controlled Substances Acts and their accompanying regulations."  Tr. [Dkt. 4153] at 7074:2-7076:6.  Plaintiffs introduced no evidence that any CVS pharmacist in Lake and Trumbull Counties filled an opioid prescription that was not written for a legitimate medical purpose in the usual course of professional treatment.  Indeed, Plaintiffs' own expert, Carmen Catizone, admitted that even if a prescription has one of his sixteen purported red flags, that "does not mean that it was written for an illegitimate medical purpose."  Tr. [Dkt. 4008] at 1208:19-1209:2; Tr. [Dkt. 4017] at 1429:10-14; *see also* Tr. [Dkt. 4032] at 2329:22-25 (McCann).  On its own, this is fatal to Plaintiffs' public nuisance claims.

But even if Plaintiffs had introduced evidence that a CVS pharmacist in Lake and Trumbull Counties filled an illegitimate opioid prescription, Plaintiffs introduced no evidence that a CVS pharmacist "knowingly" filled such a prescription.  That is the scienter that is required for a corresponding responsibility violation under 21 C.F.R. § 1306.04.  Even if the "knowingly" standard includes willful blindness as the Court instructed the jury over objections which CVS maintains here, Tr. [Dkt. 4153] at 7076:2-6, Plaintiffs introduced no evidence that a CVS pharmacist was willfully blind in filling an illegitimate opioid prescription—*i.e.*, that a CVS pharmacist "subjectively believed that there [was] a high probability" that an opioid prescription

3

was illegitimate and took "deliberate actions to avoid learning of that fact." *Glob.-Tech Appliance, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). The only CVS pharmacist witness to be called at trial—Ken Cook—testified that he exercised corresponding responsibility on every controlled substance prescription that he was presented with, that he reviewed every prescription for red flags, that he regularly reviewed the information in CVS's pharmacy computer system (RxConnect), that he regularly utilized the Ohio prescription drug monitoring system (the Ohio Automated Rx Reporting System, or "OARRS"), and that he refused to fill any prescription that had a red flag he could not resolve. Tr. [Dkt. 4132] at 6537-6544, 6544.

Therefore, a reasonable jury could not find that a CVS pharmacist in Lake and Trumbull Counties unlawfully dispensed a prescription opioid medication.

2.     The evidence at trial showed that the CVS pharmacies in Lake and Trumbull Counties were operating lawfully.

The evidence introduced at trial demonstrated that the CVS pharmacies in Lake and Trumbull Counties were normal pharmacies that were dispensing prescription opioids in a lawful manner to serve their patients' needs. The vast majority of the prescriptions filled at the CVS pharmacies in the counties were non-controlled drugs like diabetes and cholesterol medication. CVS-MDL-04339. CVS filled *eighteen times* more non-controlled prescriptions than opioid prescriptions. CVS-MDL-04342a. On average, less than 13% of the prescriptions filled by CVS in Lake and Trumbull Counties were controlled drugs—meaning even a lesser percentage were prescription opioid medications. CVS-MDL-04339; CVS-MDL-04340; CVS-MDL-04341. A pharmacy that has a controlled-versus-non-controlled ratio of 20% or less—like each CVS pharmacy in Lake and Trumbull Counties—is generally viewed as a "normal pharmacy" that meets the needs of the community it serves. Tr. [Dkt. 4124] at 6370:19-25.

The evidence introduced at trial also showed that while the filling of non-controlled prescriptions by CVS pharmacies in Lake and Trumbull Counties *increased by approximately 25%* between 2012 and 2018, the filling of opioid prescriptions by those pharmacies *decreased by almost half* over the same period.  CVS-MDL-04335a; CVS-MDL-4346a.  And when considering the subset of opioid prescriptions filled by CVS pharmacies in Lake and Trumbull Counties that were flagged by Plaintiffs' experts, 97% of those prescriptions were below Plaintiffs' Morphine Milligram Equivalent ("MME") Guidelines.  CVS-MDL-04311a; CVS-MDL-4313a.  69.2% were below 50 MME, the CDC's lowest MME benchmark.  CVS-MDL-04311a; CVS-MDL-4313b.  If all opioid prescriptions filled by those pharmacies were included—and not just the ones flagged by Plaintiffs' experts—those percentages would be even higher.

In addition, there is no evidence that the government agencies that regulate the CVS pharmacies in Lake and Trumbull Counties—the DEA and the Ohio Board of Pharmacy—ever expressed any concerns with their dispensing of prescription opioid medications.  As this Court has recognized, a record of full compliance provides registrants like CVS with "safe harbor" immunity from absolute nuisance liability.  *See* Order [Dkt. 3403] at 29-30 (relying upon *Brown* v. *Cty. Comm'rs of Scioto Cty.,* 622 N.E.2d 1153 (Ohio Ct. App. 1993)).  DEA, through ARCOS, possesses information about all prescription opioid medications shipped to the CVS pharmacies in Lake and Trumbull Counties.  Tr. [Dkt. 4124] at 6441:3-6442:8.  The Ohio Board of Pharmacy, through OARRS, possesses information about all prescription opioid medications dispensed at the CVS pharmacies in Lake and Trumbull Counties.  *Id.* at 6443:6-15.  There is no evidence, though, that DEA or the Ohio Board of Pharmacy ever revoked or suspended the licenses of any of those pharmacies.  Nor is there evidence that either of those regulators ever expressed any concerns about those pharmacies' dispensing of prescription opioid medications.

The Ohio Board of Pharmacy inspected CVS pharmacies in Lake and Trumbull Counties. It never found that the pharmacies were dispensing illegitimate prescriptions.  To the contrary, Agent Trey Edwards testified that he "didn't recall any major issues" with his inspection of CVS pharmacies.  Tr. [Dkt. 4111] at 5374:5-13.  Agent George Pavlich similarly testified that he did not recall "any issues with the systems that [CVS] used to dispense prescription medications[.]" Tr. [Dkt. 4106] at 4561:22-4562:4.  Agent Pavlich also testified that chain pharmacies like CVS "were the most compliant" whereas independent pharmacies were the "least compliant."  *Id.* at 4546:18-4547:3.  Based on this record, no reasonable jury could have an evidentiary basis to find that CVS pharmacies in Lake and Trumbull Counties were operating in an unlawful manner.

### 3.    CVS "the business" did not act unlawfully.

Plaintiffs conceded that they are not accusing CVS's pharmacists of misconduct; rather, they are pointing the "finger at the business."  Tr. [Dkt. 3991] at 58:12-25.  But even if the corresponding responsibility in 21 C.F.R. § 1306.04 extends to the company as the Court instructed the jury (it does not, as stated in Defendants' previous objections), there is no evidence that the company acted unlawfully.  There is not a scintilla of evidence that the company instructed, required, encouraged, or allowed its pharmacists to dispense prescription opioid medications in an unlawful manner.

 Moreover, Plaintiffs cannot establish an unlawful act through a theory of aggregate or collective knowledge (or willful blindness) across disparate CVS employees and/or data sets—*i.e.*, combining information available to different employees to satisfy the applicable scienter requirement.  As the Supreme Court has explained, "the malicious mental state of one agent cannot

generally be combined with the harmful action of another agent to hold the principal liable." *Staub v. Proctor Hosp.*, 562 U.S. 411, 418 (2011).[3]

Contrary to the unsupported notion that the company violated some responsibility by knowingly filling, or knowingly allowing to be filled, illegitimate prescriptions, the uncontradicted evidence is that CVS *exceeded* the applicable legal requirements by putting in place policies, procedures, programs, and systems designed to identify and prevent the filling of illegitimate opioid prescriptions and the diversion of prescription opioid medications. For example:

***Training.*** The evidence reflects that CVS provides substantial training to its pharmacists, including but not limited to training on corresponding responsibility, red flags, forged prescriptions, refusals to fill, and state prescription drug monitoring programs. Tr. [Dkt. 3995] at 388:6-11; Tr. [Dkt. 4090] at 4075:1-4076:9; Tr. [Dkt. 4115] at 5671:9-5673:10; P-15632; CVS-MDL-00980; CVS-MDL-01104; CVS-MDL-01263. This training is provided at least three times a year. Tr. [Dkt. 4115] at 5671:10-16. In addition, during the yearly performance reviews of pharmacists, supervisors provide additional training to pharmacists on corresponding responsibility. *Id.* at 5671:13-5672:20. CVS also provides occasional training to pharmacists on particular topics and access to job aids that provide guidance on specific topics. *Id.* at 5672:21-5673:25.

***Policies.*** The evidence reflects that CVS has policies about corresponding responsibility, red flags, and many other topics related to the dispensing of controlled substances. Tr. [Dkt. 3995] at 388:3-5; Tr. [Dkt. 4115] at 5667:11-5671:5; CVS-MDL-00266; CVS-MDL-00854; CVS-MDL-

---

[3] *See also United States v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1273–74, 1276 (D.C. Cir. 2010); *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008) (looking to mental states of individual corporate officials); *Woodmont, Inc. v. Daniels*, 274 F.2d 132, 137 (10th Cir. 1959) (rejecting "composite knowledge" where state of mind was "essential").

00906; P-08334.  These policies require, among other things, that a pharmacist not fill a prescription if she "believe[s] the prescription was not issued for a legitimate medical purpose." P-20699; Tr. [Dkt. 4115] at 5667:14-5669:9. They also require that a pharmacist stop filling prescriptions written by any prescriber who she believes is writing illegitimate prescriptions.  Tr. [Dkt. 4090] at 4072:12-4074:21.  The policies list various potential red flags, including, among other things, paying with cash, pattern prescribing, patients arriving in groups to fill narcotic prescriptions, and patients appearing intoxicated.  *See* P-20699; CVS-MDL-00266.

*RxConnect.* The evidence reflects that CVS provides its pharmacists with a computer system—called RxConnect—that provides pharmacists with the information "they need to exercise corresponding responsibility."  Tr. [Dkt. 3995] at 388:12-21; Tr. [Dkt. 4115] at 5675.  It has a patient profile system that provides, among other things, information about a patient's age, address, and insurance information.  Tr. [Dkt. 4132] at 6539:20-6540:8.  Since 2000, the patient profile has provided pharmacists with two years of prescription fill history across all CVS pharmacies for each patient, including information about each medication dispensed, the patient's age, the patient's address, the doctor that dispensed it, and how the patient paid for the medication. Tr. [Dkt. 4132] at 6543:13-24; Tr. [Dkt. 4115] at 5676:17-5677:6; 5678; 5679:4-12; 5728:6-13. With this information, a pharmacist can identify potential red flags, including but not limited to age, cash, distance traveled, early fills, overlapping prescriptions, potential doctor shopping, and dangerous combinations of medications.  Tr. [Dkt. 4115] at 5678:17-5679:3; Tr. [Dkt. 4132] at 6542:4-8.  RxConnect provides pharmacists with alerts regarding early fills, drug-drug interactions, high doses, and potential forged prescriptions, among others.  Tr. [Dkt. 4115] at 5704:16-5709:19; Tr. [Dkt. 4132] at 6545:18-6546:10. RxConnect also provides pharmacists with

access to Ohio's prescription drug monitoring program, OARRS, Tr. [Dkt. 4132] at 6542:11-18, and to the NarxCare system made available by the state, Tr. [Dkt. 4115] at 5709:20-5711:15.

***Prescriber Validation.***  The evidence reflects that, since 2011, CVS has operated a system within RxConnect that checks "to make sure that [a] prescriber is appropriately licensed and certified to be able to dispense [a] particular medication."  Tr. [Dkt. 4115] at 5682:19-5686.  The system blocks a pharmacist from filling a prescription written by a prescriber whose license or registration has been suspended or revoked.  *Id.*; Tr. [Dkt. 4132] at 6546:12-17.

***Prescriber Suspension.***  The evidence reflects that, since 2012, CVS operated a prescriber suspension program, in which CVS identifies prescribers with potentially concerning prescribing habits, investigates them, and potentially suspends them from having their controlled substance prescriptions filled at all CVS pharmacies.  Tr. [Dkt. 4078] at 3961:3-7; Tr. [Dkt. 4115] at 5687:17-5697:17.  CVS runs an algorithm on its dispensing data to identify prescribers for review and also reviews prescribers who are escalated by pharmacists or other groups within CVS.  *Id.*  If CVS makes the decision to suspend a prescriber, RxConnect blocks a pharmacist from filling controlled substance prescriptions written by that prescriber.  Tr. [Dkt. 4132] at 18-25.

This program is not required by any federal or state law.  Tr. [Dkt. 4124] at 6436:7-9.  In fact, just this past year, a federal district court in Kentucky entered an injunction requiring that CVS fill prescriptions written by an Ohio-licensed prescriber who CVS had suspended.  *See* CVS-MDL-04954.  The court found that CVS had "interfered" with the prescriber's relationships with his patients "by refusing to fill prescriptions written by" the prescriber.  *Id*. at p. 2.

***Store Monitoring.***  The evidence reflects that, since 2012, CVS has operated a store monitoring program.  CVS runs a computer algorithm on CVS dispensing data on a quarterly basis to analyze its pharmacies' dispensing of prescription opioid medications.  Tr. [Dkt. 4115] at

5718:19-5721:17. CVS personnel review the pharmacies that flag on the algorithm, conduct a visit to those pharmacies, provide additional training as needed, and work to resolve any potential concerns with those pharmacies' dispensing. Tr. [Dkt. 3995] at 423:18-424:4; Tr. [Dkt. 4078] at 3974:23-3975:1, 3981:11-17; Tr. [Dkt. 4115] at 5718:19-5721:17.

*Maximum Allowable Quantity.* The evidence reflects that since 2014, CVS has operated a program whereby it places ordering limits on the quantities of hydrocodone and oxycodone that each CVS pharmacy may order on a monthly basis. Tr. [Dkt. 4115] at 5723:13-5726:17. The ordering limits are pharmacy-specific and are computed using statistical analyses of CVS dispensing data. *Id.* If a pharmacy reaches its maximum allowable quantity, the pharmacy may not order any more of that particular drug for the remainder of the month. *Id.*

*Drug Take-Back.* The evidence reflects that CVS installs in many of its pharmacies secure kiosks where the public can dispose of unused prescription medications. Tr. [Dkt. 4115] at 5745:14-5748:13. CVS began placing these kiosks in its pharmacies around 2014 after DEA regulations began allowing pharmacies to do so. *Id.* at 5745:19-5748:13. Seven of the fifteen pharmacies in Lake and Trumbull Counties have drug take-back kiosks. *Id.* at 5747:14-18. CVS also has donated these kiosks to police departments, including two police departments in Lake and Trumbull Counties. *Id.* at 5746:6-5747:18. The drug disposal kiosks help the public dispose of medication that they no longer want or need, which can help prevent diversion. *Id.* at 5747:5-13.

None of these programs, systems, or tools is required by law. By implementing them, CVS went above and beyond any applicable legal requirements. Tr. [Dkt. 4124] at 6436:3-6437:8. CVS also has undertaken great effort to improve these programs, systems, and tools over time. Tr. [Dkt. 4115] at 5664:25-5665:21. Given the efforts CVS has undertaken to train its pharmacists, to develop policies, and to put in place programs, systems, and tools to identify and prevent diversion,

the evidence does not establish that CVS "as a business" acted unlawfully with respect to the dispensing of prescription opioid medications in Lake and Trumbull Counties.

Likewise, to the extent CVS had a legal obligation to maintain effective controls against diversion beyond the security controls set forth in the 21 C.F.R. § 1301.71(a), or some other legal obligation to use its prescription data,[4] this evidence of CVS's controls—combined with the absence of evidence supporting Plaintiffs theories—require JMOL in CVS's favor as well.[5]

### B.     The Evidence Is Insufficient to Establish that CVS Engaged in Intentional Conduct with Respect to the Dispensing of Prescription Opioid Medications in Lake and Trumbull Counties.

Plaintiffs argued that Defendants engaged in intentional conduct sufficient to establish a public nuisance because they "weren't accidently dispensing opiates."  Tr. [Dkt.  4153] at 7169. The Court instructed the jury that to find that CVS engaged in intentional conduct, it had to find that CVS "intended to act and knew, or was substantially certain, that the circumstances resulting from the act would interfere with the public health or the public safety."  Tr. [Dkt. 4153] at 7072:21-25.[6]  There is no evidence whatsoever that CVS knew, or was substantially certain, that its pharmacists' dispensing of FDA-approved prescription opioid medications, pursuant to prescriptions written by licensed medical practitioners, was interfering or would interfere with the public health of Lake and Trumbull Counties.  As discussed *supra*, the available prescription data

---

[4] No such obligations exist at law, and CVS objected—and now reasserts its objections— to Plaintiffs' arguments and to the Court's rulings and jury instructions on the subject.

[5] Plaintiffs have suggested that Defendants, including CVS, did not act "to the best of [their] ability," Tr. [Dkt. 4057] at 3120:1-3, or that they "could have" done more.  But even if that were accurate (it is not), it is insufficient to show that CVS acted intentionally or unlawfully— which is the standard Plaintiffs must meet here.

[6] CVS maintains its objections to the Court's jury instructions, including the instructions on intentional conduct.  Dkt. 4146-2 at 10-12.

for the CVS pharmacies in Lake and Trumbull Counties—including their controlled-versus-non-controlled ratio—did not suggest that they were dispensing prescription opioid medications in an unlawful manner, and no state or federal regulator or law enforcement agency ever found or ever put CVS on notice that its pharmacies in the counties were endangering the public health.  To the contrary, both the U.S. Drug Enforcement Administration and the State of Ohio Board of Pharmacy continually licensed and relicensed all of CVS's pharmacies in Lake and Trumbull Counties and in the State of Ohio.  And again, beyond the fact that its pharmacies were only filling prescriptions written by doctors, for patients, for FDA-approved medications, CVS put in place policies, procedures, programs, and systems designed to prevent the filling of illegitimate opioid prescriptions and designed to prevent the diversion of prescription opioid medications in those communities.

The only CVS pharmacist to appear at trial testified unequivocally that he would refuse to fill an opioid prescription if he had reason to suspect misuse or if there were red flags he could not resolve.  Tr. [Dkt. 4132] at 6544.  He also testified that he did not believe he had done anything to harm his community.  *Id.* at 6555.  Plaintiffs introduced no evidence to controvert this testimony.  No reasonable juror could have found that CVS engaged in intentional conduct sufficient to support a finding of liability for public nuisance.[7]

---

[7] As more fully explained in the Joint Rule 50(b) brief,  Plaintiffs' attempt to base liability on lawful dispensing conduct is preempted by federal law and is not cognizable by Ohio nuisance law.

C.    **The Evidence Is Insufficient to Establish that CVS Proximately Caused an Ongoing Public Nuisance in Lake and Trumbull Counties.**

Even if Plaintiffs could establish that CVS acted unlawfully or intentionally with respect to the dispensing of prescription opioids in Lake and Trumbull Counties, no reasonable juror could have found that CVS caused any ongoing public nuisance that exists in the counties today.

1.    There is no evidence that any prescription opioid medication dispensed by CVS caused any harm in Lake and Trumbull Counties, let alone any harm that continues to exist today.

Plaintiffs failed to introduce evidence that any particular opioid medications dispensed by CVS harmed any particular resident, let alone the entire community at-large, and that the harm continues today.  Plaintiffs have relied on an aggregate statistical theory of proof that focuses on identifying so-called "red flag" prescriptions that required due diligence before they could be filled.   But Plaintiffs have not shown—through expert testimony or otherwise—that the prescription opioid medications dispensed by CVS pharmacists in Lake and Trumbull Counties were illegitimate, were diverted, and then were a substantial factor in causing a present-day public nuisance in the counties.

As previously discussed, Plaintiffs' own expert, Carmen Catizone, admitted that even if a prescription has one of his sixteen purported red flags, that "does not mean that it was written for an illegitimate medical purpose" or that it was "diverted."  Tr. [Dkt. 4008] at 1208:19-1209:2; Tr. [Dkt. 4017] at 1429:10-14; *see also* Tr. [Dkt. 4032] at 2329:22-25 (McCann).  Even if his red flags were real (they are not), this admission—and the concomitant absence of any evidence that prescription opioid medications dispensed by CVS pharmacists in Lake and Trumbull Counties caused any harm in the counties—is fatal to Plaintiffs' claims.  *See City of Cleveland v. Ameriquest Mort. Sec. Inc.*, 615 F.3d 496, 502 (6th Cir. 2010) (proximate cause is an element of a claim for public nuisance); *Sutowski* v. *Eli Lilly & Co.*, 696 N.E.2d 187, 189-90 (Ohio 1998) (rejecting

13

market share liability as a causation substitute).  While questioning another witness, Plaintiffs even admitted that they've "got no way of knowing" "whether or not the prescription should have gone out."  Tr. [Dkt. 4057] at 3050:10-12.  And, at trial, Plaintiffs presented no evidence that a CVS pharmacist in Lake and Trumbull Counties filled an opioid prescription that was illegitimate, was diverted, and then caused harm.

> ### 2. Evidence of CVS's conduct was too immaterial and remote for a reasonable juror to have concluded that CVS was a substantial factor in causing an ongoing public nuisance that exists in the counties today.

Even if Plaintiffs had introduced evidence showing that CVS pharmacists in Lake and Trumbull Counties filled illegitimate opioid prescriptions that were diverted, any alleged harm from those prescriptions would be too immaterial for CVS to have been a substantial factor in causing an ongoing public nuisance in the counties.  To be a substantial factor, CVS had to be "the cause, or one of the material, meaningful, or considerable causes of the nuisance."  Tr. [Dkt. 4153] at 7077:10-13.[8]  Yet, as set forth in the Joint Rule 50(b) motion, there were *other* actors—indeed, many of them—that played much more active and substantial roles in causing the alleged nuisance, including without limitation the federal agency that approved the prescription opioid medications (FDA), the federal agency that determined the volume of the medications that could be produced each year (DEA), the companies that manufactured and, critically, marketed the medications, the doctors and other medical practitioners who wrote prescriptions for the medications, individuals who abused, misused, or failed to properly store the medications, and participants in the illegal market for the medications.  Tr. [Dkt. 4064] at 3499; 3502-3504, 3532-3533; Tr. [Dkt. 4065] at 3684-3688, 3691-3693; Tr. [Dkt. 4090] at 4153.  Even among pharmacies, whose pharmacists' role was limited to filling prescriptions written by licensed medical practitioners and trying to

---

[8] CVS maintains its objections to the Court's jury instructions

14

ferret out illegal prescriptions written or presented by wrongdoers, the evidence reflects that CVS dispensed only 11.9% of the prescription opioids, measured by MMEs, in Lake and Trumbull Counties.  CVS-MDL-04363a.  Given this record, the evidence does not establish that CVS was a substantial factor in causing an ongoing public nuisance in Lake and Trumbull Counties.  *See City of Cleveland,* 615 F.3d at 503-04.

This evidence, as well as other evidence presented by Plaintiffs, establishes that any conduct by CVS was too remote to establish that CVS was a substantial factor in causing a present-day public nuisance in the counties.  Plaintiffs must establish a "direct relation between the injury asserted and the injurious conduct alleged."  *Holmes* v. *Sec. Inv'r Prot. Corp.,* 503 U.S. 258, 268 (1992).  "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient."  *Hemi Group, LLC* v. *City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 271, 274); *see also City of Cleveland*, 615 F.3d at 502.

During trial, Plaintiffs focused on conduct that occurred many years ago, often in far-away jurisdictions, that they contend caused harm in Lake and Trumbull Counties that they allege continues today.  As Plaintiffs' counsel stated in opening, "The problems folks face today is not something that happened because of bad policies yesterday.  The bad policies go back into the 2000s; 1999 to 2010, '11, '12, '13, '14." Tr. [Dkt. 3991] at 77:16-18.  But Plaintiffs failed to link that earlier conduct to any harm that exists today.  The alleged nuisance is the "oversupply of legal prescription opioids" in Lake and Trumbull Counties, Dkt. 4176 at 2, 6, yet the evidence at trial showed that CVS's dispensing of prescription opioids in the counties declined by more than half between 2012 and 2018.  CVS-MDL-4363a.  The evidence also showed that any crisis that exists today in the counties is based not on the use of legal prescription opioids but, instead, on the use of illegal drugs like heroin and illicit fentanyl. Tr. [Dkt. 4118] at 5983:3-8.  In combination with

the substantial roles played by other actors, even if Plaintiffs could prove that opioid prescriptions filled many years ago by CVS pharmacies in Lake and Trumbull Counties were illegitimate (they cannot), those prescription are too remote to have contributed to any oversupply of prescription opioids that may exist in the counties today.

3.      Prescribers broke the causal chain.

Plaintiffs' evidence of causation depends on the intervening conduct of the doctors and other medical professionals who wrote the prescriptions CVS pharmacists filled. The intervening conduct of these medical professionals is so substantial that it breaks the causal chain as to CVS.

Plaintiffs allege that CVS filled illegitimate opioid prescription.  But if doctors were writing prescriptions that were not for a "legitimate medical purpose" or were not in "the usual course of professional treatment," those doctors were violating the CSA and its implementing regulations.  21 C.F.R. § 1306.04(a).  Although pharmacists bear a "corresponding responsibility" when filling a prescription, the responsibility for the proper prescribing and dispensing of controlled substances is "upon the prescribing practitioner." *Id.*  Ohio law is clear that the patient is expected to place primary reliance on the physician's judgment, *Seley* v. *G.D. Searle & Co.*, 423 N.E.2d 831, 840 (Ohio 1981), and that others in the supply chain "may reasonably assume that the physician will exercise . . . informed judgment in the patient's best interests."  *Tracy* v. *Merrell Dow Pharm., Inc.*, 569 N.E.2d 875, 878-79 (Ohio 1991); *see also Harris* v. *Purdue Pharma, L.P.*, 218 F.R.D. 590, 596 (S.D. Ohio 2003).

Unlawful conduct by a doctor provides "a sufficient intervening or superseding cause to break the chain of causation" even if that unlawful conduct could have been foreseen—and even if the defendant in some sense facilitated that unlawful conduct—so long as the defendant did not "induce[] negligent or reckless behavior" on the part of the unlawful actor.  *Pendrey* v. *Barnes*, 479 N.E.2d 283, 284 (Ohio 1985). That rule applies here, where the evidence does not show that

CVS in any way induced prescribers to write the allegedly unlawful prescriptions that are the focus of Plaintiffs' dispensing claims.

CVS was entitled to "reasonably assume" that a doctor would exercise "informed judgment" in her patient's best interests. *See Tracy*, 569 N.E.2d at 878-79. Indeed, DEA repeatedly told the public that the vast majority of prescribers were acting appropriately. *See* DEF-MDL-01096.00007 ("the agency recognizes that nearly every prescription issued by a physician in the United States is for a legitimate medical purpose in the usual course of professional practice."); Tr. [Dkt. 4124] at 6394:23-6395:3 ("I look at the vast majority of doctors: 99.99 percent are all trying to do right by their patients."). Thus, even if there were evidence that a doctor wrote an illegitimate prescription that was filled by a CVS pharmacist in Lake and Trumbull Counties—no such evidence exists—the doctor's unlawful conduct was an intervening cause that broke the causal chain or, at a minimum, rendered CVS's conduct insubstantial.

> **D.** **The Evidence Is Insufficient to Establish Liability Against CVS Based on Alleged Promotion of Opioids.**

Plaintiffs have argued, through an expert witness, that CVS "collaborated" with Purdue and others to promote opioids. Tr. [Dkt. 4000] at 582:9-13. The expert relied on two documents from ten or more years ago as the only "evidence" of any purported relationship between CVS and Purdue. The first document, entitled "How to Stop Diversion," provided guidance on how to identify illegitimate prescriptions, and Plaintiffs' expert admitted that it contains no "false information." *Id.* at 717:10-13. The other document, from 2011, does not even mention "opioids" and was never admitted into evidence. *Id.* at 711:5-9. There is no evidence that any purported "collaboration" was unlawful or was intended to create an ongoing public nuisance.

Indeed, Plaintiffs' expert Carmen Catizone admitted that while Purdue worked with his organization, the National Association of Boards of Pharmacy ("NABP"), on projects and

sponsored educational materials that his organization published, it did not take away from the utility of the work that was done or mean that his organization was engaging in misconduct or was colluding with Purdue. Tr. [Dkt. 4017] at 1459-1464. He called any such accusation an "insult." Tr. [Dkt. 4008] at 1299-1300. Likewise, Agent Edwards testified that when he worked at the Lake County Narcotics Agency, he invited a Purdue executive to present a continuing education class to the agency. Tr. [Dkt. 4111] at 5385-87; DEF-MDL-12782. Agent Edwards testified that the information presented by the Purdue executive was "appropriate" and that, by inviting the executive to present, neither he nor the Lake County Narcotics Agency was collaborating with Purdue in any improper way. Tr. [Dkt. 4111] at 5387-88.

There also is no evidence that any alleged collaboration between CVS and Purdue was a substantial factor in causing an ongoing public nuisance in Lake and Trumbull Counties. Plaintiffs have introduced no evidence connecting any alleged promotion to the dispensing of prescription opioid medications in Lake and Trumbull Counties or anywhere else. Accordingly, any purported collaboration with Purdue in the marketing or promotion of prescription opioid medications could not have supported a verdict against CVS.

### E. The Evidence Is Insufficient to Support Plaintiffs' Public Nuisance Claims Against CVS for Other Reasons.

As discussed *supra*, CVS is joining the Joint Rule 50(b) Motion and the Joint Rule 59 Motion that are being filed today. Those joint motions raise numerous legal arguments for granting JMOL or a new trial to CVS. CVS incorporates by reference all of those legal arguments, including without limitation that the CSA does not impose corporate-level duties related to the dispensing of prescription opioid medications and that intentional conduct for purposes of public nuisance liability cannot include lawful dispensing conduct. Some of the arguments that may

depend on CVS-specific evidence are addressed below.  By not addressing other legal arguments raised in the joint motions, CVS does not waive those arguments.

1.      *The evidence is insufficient to establish Article III or prudential standing to sue CVS*.  There is no evidence that CVS caused harm directly to Lake and Trumbull Counties.  Accordingly, for this and the other reasons discussed in the Joint Rule 50(b) Motion, the Court should enter JMOL for CVS on the ground that Plaintiffs lack standing to bring public nuisance claims against CVS.

2.      *The evidence is insufficient to establish a violation of a public right by CVS*.  Ohio requires that a public nuisance claim involve the violation of a public right.  *E.g.*, *Brown*, 622 N.E.2d at 1158.  A public right is one shared equally by all members of the public, like access to air, water, and rights of way.  *See State ex rel. Andersons* v. *Masheter*, 203 N.E.2d 325, 327 (Ohio 1964); Restatement (Second) of Torts § 821B cmts. b, g ("A public right is . . . collective in nature and not like the individual right that everyone has not to be assaulted[.]").  There is no common-law right to be free from the use of an otherwise legal product in a manner that might create risk.  *E.g.*, *City of Chicago* v. *Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); *State* v. *Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 454 (R.I. 2008).  Because the evidence of a supposed nuisance concerns the use of prescription medications by particular individuals and associated addiction and abuse by those individuals, and further because it relates only to the sale of lawful products that have been approved by the government, the evidence is insufficient to establish that CVS violated a public right, and the Court should enter JMOL for CVS on all claims.

3.      *As a licensed and regulated entity, CVS cannot be liable for absolute public nuisance*.  Under Ohio law, licensed entities engaged in legal and highly regulated activity are not subject to absolute nuisance liability.  *State ex rel. Schoener* v. *Board of Comm'rs for Hamilton*

19

*Cty.*, 619 N.E.2d 2, 6 (Ohio Ct. App. 1992); *State ex rel. RTG, Inc.* v. *State*, 753 N.E.2d 869, 881 (Ohio Ct. App. 2001), *rev'd on other grounds*, 780 N.E.2d 998, 1010 (Ohio 2002).  The evidence is undisputed that CVS registered with the DEA and is licensed by Ohio authorities, *see* Tr. [Dkt. 4050] at 2767:5-9, and that CVS is highly regulated.  *E.g.*, OHIO ADMIN. CODE § 4729 ("Pharmacists; Dangerous Drugs"); § 4729-9-05(A); 4729-5-30(A).  Accordingly, CVS is entitled to JMOL on all claims.

4.      *Plaintiffs' claims against CVS are barred by the statute of limitations.*  As explained in the Joint Rule 50(b) Motion, either a two or four-year statute of limitations applies to Plaintiffs' claims against CVS.  The evidence establishes that Plaintiffs were aware of, and incurred expense to address, opioid abuse and misuse before 2014.  Tr. [Dkt. 4093] at 4361:21- 4362:4; Tr. [Dkt. 4090] at 4239:24-4240:4.  No reasonable jury could conclude, based on the evidence presented, that Plaintiffs were unaware of their claim until 2014 or later.  *See, e.g.*, Tr. [Dkt. 4064] at 3460:19-3461:16 (testimony of Dr. Alexander describing sharp increase in opioid dispensing between 1992 and 2010, when rates plateaued and then began declining); *id.* at 3468:19-3469:1 (more than threefold increase in opioid overdose deaths in Lake County from 2001 to 2010); *id.* at 3469:16-21 (same for Trumbull County); Tr. [Dkt. 4050] at 2732:4-2738:5 (testimony of Trumbull County police officer regarding 2010 investigation of individual seeing multiple doctors and filling prescriptions at multiple pharmacies).  Even if Plaintiffs had introduced evidence of illegitimate opioid prescriptions knowingly filled by CVS pharmacists in Lake and Trumbull Counties that were diverted and then caused a present-day public nuisance in the counties, they cannot recover for claims accruing outside the applicable limitations period.  *See Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008) (Plaintiffs are "limited to damages only within the [applicable limitations

period].").  Accordingly, the Court should enter JMOL for CVS on all claims or, in the *alternative*, enter JMOL for CVS on all claims accruing outside the limitations period.

      5.      *The evidence is insufficient to establish an ongoing or continuing public nuisance, and therefore the claims are barred in whole or in part by limitations, and plaintiffs are not entitled to a remedy of abatement.*  As discussed in the Joint Rule 50(b) Motion, under Ohio law, nuisances are either permanent or continuing. Plaintiffs' evidence does not establish an ongoing nuisance; instead, they claim continuing damages from alleged misconduct that ended long ago.  Tr. [Dkt. 3991] at 77:16-18.  Plaintiffs' claims are based on indirect injuries from past conduct "in the absence of any further activity by the defendant," not on a continuing nuisance. *Kramer v. Angel's Path, L.L.C.*, 882 N.E.2d 46, 52 (Ohio Ct. App. 2007).  Plaintiffs' evidence is intended to show, however implausibly, that Plaintiffs continue to incur *damages* from CVS's dispensing of prescription opioids many years ago.  But the evidence is insufficient to show that.

      The insufficient evidence of a continuing public nuisance has two consequences. First, as discussed above, Plaintiffs' claims are barred in whole or in part by the statute of limitations (whether two or four years). Second, Plaintiffs are not entitled to abatement as a remedy. Plaintiffs' evidence suggests that the alleged nuisance at issue—an ostensible "oversupply" of legal prescription opioids by CVS—has been abated; *i.e.*, CVS's alleged misconduct has terminated, even if Plaintiffs' claimed damages from that misconduct continue.

      Accordingly, CVS is entitled to JMOL on all claims because the evidence is insufficient to establish any unlawful or intentional dispensing conduct within the limitations period or,

alternatively, JMOL on all claims for abatement because the evidence does not support continuing misconduct by CVS.[9]

6.    *The Evidence is Insufficient to Overcome the Economic Loss Doctrine.* "The economic-loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc.* v. *Shook*, 835 N.E.2d 701, 704 ¶ 6 (Ohio 2005); *Fed. Ins. Co.* v. *Fredericks*, 29 N.E.3d 313, 317 (Ohio Ct. App. 2015) ("in the absence of privity or a substitute for privity, the economic loss doctrine prevents recovery in tort of damages for purely economic loss where the defendant breached a duty that even partially arose by contract").  As discussed in the Joint Rule 50(b) Motion, the rule applies to public nuisance claims.  *Ashtabula River Corp.* v. *Conrail, Inc.*, 549 F. Supp. 2d 981, 986-87 (N.D. Ohio 2008) (citing *RWP, Inc.* v. *Fabrizi Trucking & Paving Co.*, 2006 WL 2777159 (Ohio Ct. App. Sept. 28, 2006)).

The evidence at trial does not establish that CVS caused any direct or personal injury to Plaintiffs.  Nor does the evidence establish any privity or special relationship between CVS and Plaintiffs. The alleged injuries here arose, if at all, because CVS filled prescriptions for opioid medications written by health care providers for use by patients. Plaintiffs contend that the medications were thereafter abused or misused, and the abusers in turn caused economic harm to Plaintiffs. In other words, the alleged injuries to Plaintiffs arose from CVS's contractual relationships with customer-patients, not from contractual relationships with Plaintiffs.  Plaintiffs have identified no other duty in tort that would apply here. Because the evidence shows that Plaintiffs' harm, if any, was purely economic, CVS is entitled to JMOL on all claims.

---

[9] Although the Court has explained that the jury will not decide whether the public nuisance, if any, is abatable, Tr. [Dkt. 4064] 3478:7-8, the Court may still grant JMOL on the abatement remedy based on issues and claims the jury does decide.

7.    *The Evidence is Insufficient to Establish that CVS Controls the Instrumentality of the Nuisance.* As discussed in the Joint Rule 50(b) Motion, a party cannot be liable for public nuisance if it does not control the instrumentality that caused the nuisance at the time of the nuisance.  *E.g.*, *Tioga Public Sch. Dist.* v. *U.S. Gypsum*, 984 F.2d 915, 920 (8th Cir. 1993); *City of Bloomington* v. *Westinghouse Elec. Corp.*, 891 F.2d 611, 614 (7th Cir. 1989).  The nuisance in this case is the "oversupply of legal prescription opioids" in Lake and Trumbull Counties.  Dkt. 4176 at 2, 6.  Even if there were evidence that CVS caused such an oversupply (it did not), CVS no longer possesses the prescription opioid medications that were dispensed and, therefore, does not control the instrumentality of the nuisance.  For this reason, CVS is entitled to JMOL on Plaintiffs' public nuisance claims.

## II.    ALTERNATIVELY, THIS COURT SHOULD GRANT CVS A NEW TRIAL UNDER RULE 59.

In the alternative, the Court should grant CVS a new trial.  Under Rule 50(b), a party may file "a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).  Rule 59 authorizes the Court to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A).  This includes "when the verdict is against the weight of the evidence[.]" *Smith for Schwartz v. Woolace Elec. Corp.*, 822 F. App'x 409, 412 (6th Cir. 2020).  The standard for granting a new trial is more lenient than the standard for granting a motion for JMOL.  Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 2531.  Unlike JMOL motions, on a motion for new trial the Court "may compare the opposing proofs and weigh the evidence." *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000) (quoting *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir. 1984)).  The Court may also grant a new trial "even if

there is substantial evidence supporting the jury's verdict[.]" *Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 784 (2d Cir. 2005).

If the Court declines to enter JMOL in favor of CVS, the Court should grant a new trial under Rule 59 because the jury's verdict that CVS is liable for causing an ongoing public nuisance in Lake and Trumbull Counties was against the weight of the evidence. The Court should find that the verdict was against the weight of the evidence for the same reasons the Court should find that there was insufficient evidence under Rule 50(b). As explained *supra*, the weight of the evidence demonstrates that CVS did not act unlawfully or intentionally with respect to the dispensing of prescription opioid medications in Lake and Trumbull Counties, including without limitation because Plaintiffs failed to introduce evidence of any prescription dispensed by CVS pharmacists in the counties that was illegitimate; that CVS was not a substantial factor in causing any ongoing public nuisance in the counties; that CVS did not promote prescription opioids; and that Plaintiffs' claims are barred by the statute of limitations. CVS's legal arguments raise evidentiary issues demonstrating that the verdict was against the weight of the evidence. A new trial also should be granted based on the legal arguments made in the Joint Rule 59 Motion, which CVS incorporates here by reference. Accordingly, a new trial should be ordered.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Joint Renewed Motion for Judgment as a Matter of Law under Rule 50(b) and Defendants' Joint Motion for a New Trial under Rule 59, the Court should grant judgement as a matter of law in favor of CVS, or in the alternative, grant a new trial.

Dated:  December 21, 2021        Respectfully submitted,

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zuckerman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*