# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION, | ) ) ) **MDL No. 2804** |
| THIS DOCUMENT RELATES TO: | ) ) **Case No. 1:17-MD-2804** |
| "Track Eight: Cobb County, Georgia" | ) ) **Case No. 1:18-OP-45817** ) ) **Judge Dan Aaron Polster** |

# DEFENDANT PUBLIX SUPER MARKETS, INC.'S MOTION FOR RECONSIDERATION AND/OR CERTIFICATION TO GEORGIA SUPREME COURT

In its August 27, 2021 Motion to Dismiss Plaintiff Cobb County's Complaint (Doc. #3906), Publix Super Markets, Inc. ("Publix") raised arguments that, at their core, dealt with the scope of nuisance law recognized under Georgia law. At the center of the debate is the Georgia Supreme Court's decision in *State ex rel. Boykin v. Ball Investment Co.*, 12 S.E.2d 574 (Ga. 1940), and whether the County's public nuisance claims are actionable pursuant to O.C.G.A. § 41-2-2. Publix maintains that the *Boykin* decision answers that debate in its favor, particularly in light of subsequent appellate case law applying the doctrine of State preemption (including *Sturm, Ruger & Co., Inc. v. City of Atlanta*, 560 S.E.2d 525 (Ga. Ct. App. 2002), discussed *infra*), and recent state court decisions limiting public nuisance claims in other jurisdictions—including a final decision entered just last week.

Publix respectfully requests the Court reconsider its October 25, 2021 decision (Doc. # 4071). In the alternative, given the parties' disagreement over the status of Georgia law and out of concern for the principles of federalism, Publix requests the Court certify a question to the Georgia Supreme Court to determine the scope of its public nuisance law.

17547315v1

## I.     The Court's Opinion & Order Denying Publix's Motion to Dismiss.

On July 14, 2021, Plaintiff Cobb County ("Plaintiff" or "the County") filed its Complaint (Doc. # 3787), purporting to bring a public nuisance claim against Publix (and other Pharmacy Defendants) pursuant to O.C.G.A. § 41-2-2. In response, Publix filed a motion to dismiss the Complaint. In its October 25, 2021 Opinion & Order denying Publix's motion ("Publix Order"), the Court held that (1) the County has sufficiently alleged a "public nuisance" actionable pursuant to O.C.G.A. § 41-2-2 and (2) that the Georgia Supreme Court's decision in *State ex rel. Boykin* v. *Ball Investment Co.*, 12 S.E.2d 574 (Ga. 1940), did not preclude the County's claims despite that the Georgia legislature has provided comprehensive regulatory scheme and remedies covering the alleged conduct.

## II.    The Court Should Reconsider its October 25, 2021 Order.

District courts "have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *Allied Erecting & Dismantling Co. v. U.S. Steel Corp.*, 76 F. Supp. 3d 69, 692 (N.D. Ohio 2015). Traditionally, reconsideration is warranted when there is "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (quoting *Louisville/Jefferson Cty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009)).

As the Georgia Supreme Court recognized in *Boykin*, the concept of "nuisance" has a "restricted meaning" in law. 12 S.E.2d at 578. Although the common law tort of nuisance is broadly defined, *see* O.C.G.A. §§ 41-1-1, 41-1-2, there are limits to its reach. The nationwide litigation arising out of the opioid epidemic has caused courts across the country to examine the

extent of their states' tort law—with two courts recently finding plaintiffs' novel claims reached beyond the conceivable bounds of traditional public nuisance law. *See State ex rel. Hunter v. Johnson & Johnson*, --- P.3d ---, 2021 Okla. LEXIS 60 (Okla. Nov. 9, 2021) (reversing trial court's judgment against manufacturers, finding Oklahoma law does not recognize plaintiff's public nuisance claim, and "reject[ing] the unprecedented expansion of public nuisance law") (slip op. attached as **Exhibit A**); *State ex rel. Williams v. Purdue Pharma L.P. et al.*, No. 30-2014-00725287-CU-BT-CXC (Super. Ct. Cal. Dec. 14, 2021) (finding plaintiffs failed to prove the necessary elements of their public nuisance claims against all defendants-manufacturers) (slip op. attached as **Exhibit B**).

These recent cases are just the newest in a line of other state-court decisions dismissing novel public nuisance claims in opioid cases. *See, e.g.*, *State ex rel. Stenehjem v. Purdue Pharma L.P.*, 2019 N.D. Trial Order LEXIS 3 (N.D. Dist. Ct., Burleigh Cty., May 10, 2019) (dismissing State's claims that manufacturer's actions constituted public nuisance because "[n]o North Dakota court has extended the public nuisance statutes to cases involving the sale of goods.") (slip op. attached as **Exhibit C**); *City of New Haven v. Purdue Pharma L.P.*, No. X07 HHD CV 17 6086134 S, 2019 WL 423990 (Ct. Super. Ct., Jan. 8, 2019) (dismissing, among other claims, plaintiffs' public nuisance claims against manufacturers for lack of standing).

Although Georgia courts have not specifically considered public nuisance claims in the context of opioids, they have done so in litigation relating to guns. Similar to the claims alleged here (although the claims here are even more attenuated), gun "plaintiffs generally allege that, by manufacturing and distributing handguns in a manner that knowingly places a disproportionate number of handguns in the possession of people who use them unlawfully, gun manufacturers and distributors are creating a public nuisance by endangering public health and safety[.] Such public

nuisance claims against gun manufacturers and distributors, however, have met with limited success in the courts."[1] "As one state's highest court concluded, 'The negative consequence of judicially imposing a duty upon commercial enterprises to guard against the criminal misuse of their products by others will be an unprecedented expansion of the law of public nuisance.'"[2]

Just as Georgia has refused to extend public nuisance to cover gun distribution, it is Publix's contention that Georgia law—especially given *Boykin* and the very specific regulatory scheme applicable to distribution and retail dispensing of opioids—would undoubtedly join Oklahoma, California, and other jurisdictions and recognize that an expansion of nuisance liability to cover Publix's activities here would be unprecedented and unwarranted under Georgia law.

### A. The Court in *Boykin* Never Held that the Defendants' Conduct Failed to Rise to the Level of a Public Nuisance.

In this case, at the motion to dismiss stage, the County's claim rises or falls depending on whether Georgia common law recognizes an actionable claim of nuisance where the legislature already has created a series of remedies for relevant regulatory and criminal violations. Publix maintains that *Boykin*, and other Georgia Supreme Court law, supports that Georgia does not recognize the claim asserted by the County. Publix does not make this motion for purposes of delay or to reargue points already raised in its briefing in support of its motion to dismiss. Instead, Publix addresses the Court's distinct holdings to "to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

The Georgia legislature already has enumerated the remedies available to Georgian government-plaintiffs seeking to remedy violations of the PPA. Like in *Boykin*, there is no reason

---

[1] *See* David J. Marmins, GEORGIA NUISANCE LAW 41 (2011). Marmins, new counsel for Publix in this litigation, authored and edited the leading treatise on Georgia nuisance law.

[2] *Id.* at 42 (quoting *City of Chicago v. Beretta USA Corp*, 213 Ill. 2d 351, 821 N.E.2d 1099, 1126 (2004)).

to doubt the Georgia legislature's decision of which remedies to provide a government-plaintiff to pursue on behalf of its citizens: "If the penalties there provided be not a sufficient check to the abuses described in the instant case, the appeal should be made to the lawmakers, and not to a court of equity, whose powers can never be invoked where the law has provided what it deems to be an adequate remedy." 12 S.E.2d at 581. The *Boykin* court noted other examples where Georgia law limited a government-plaintiff to the remedies available at law: *Bennett v. Bennett*, 132 S.E. 528, 530 (Ga. 1926) ("[T]he statute confers specific remedies and means for protecting the people of this State against illegal loans made by persons without a license"); *Bentley v. State Board of Medical Examiners*, 111 S.E. 379, 382 (Ga. 1922) ("[T]he statutes creating this board fully prescribed the means and methods of protecting the people of this State against illegal and unqualified practitioners of medicine and surgery . . . . The board can not resort to any other methods of protecting the people of this State."); *Dean v. State*, 106 S.E. 792, 794 (Ga. 1921) ("Unless the legislature sees fit to extend the jurisdiction of equity or to enlarge the category of public nuisances . . . , equity will not enjoin the plaintiff in error from practicing his profession simply because in so doing he is violating the penal laws of the State").

In analyzing *Boykin*, this Court concluded that the *Boykin* decision merely found that "although the *Boykin* defendants' conduct was illegal, it did not create a public nuisance under the general nuisance statute by 'damaging all that came within the sphere of operation.'" Publix Order at 10. In other words, the alleged conduct of violating lending laws was "not of such a character as to justify a court of equity entering a decree enjoining its maintenance." *Id.* (quoting *Boykin*, 12 S.E.2d at 581). This Court then noted that the *Boykin* decision's concluding paragraph and its rule that equity can never be invoked where the law has provided a remedy, purportedly was only included because the *Boykin* court had already concluded that "properly supported claims brought

under Georgia's public nuisance statute are cognizable." *Id.* n.9.

Respectfully, Publix submits that the *Boykin* court never held that the *Boykin* defendants' conduct failed to rise to the level of a public nuisance. There is no "rule" that can be derived from *Boykin* that would explain when something is sufficiently "evil" or "public facing" to constitute an actionable public nuisance, which would be necessary if the *Boykin*'s decision rested on whether the defendants' conduct there failed to rise to the level of a public nuisance. Indeed, earlier in the opinion, the *Boykin* court explained that it *assumed* the suit was "of a public character." *Boykin*, 12 S.E.2d at 578. There is nothing in *Boykin* that limits its concluding clause—that equity cannot be invoked where the law has provided what it deems to be an adequate remedy—specifically to the facts of *Boykin*. Rather, the only logical "rule" that can be derived from *Boykin* is that for a Georgian government-plaintiff to state a claim for nuisance for actions that violate a regulatory statute, there must be some sort of "suggestion" within the relevant regulatory scheme that a violation constitutes a nuisance. *See id.*

## B. *Boykin* Was Not Overturned by *Webb v. Alexander.*

This rule from *Boykin*—that the legislature controls when a government-plaintiff may bring a nuisance claim for violations of regulatory schemes—was not overturned by the Georgia Supreme Court's later decision in *Webb v. Alexander*. There, the court found that the allegations could not meet the public nature required to confer the solicitor general with power to pursue such a claim: "The petition in the present case is lacking in allegations which show how or in what manner the operation of a second filling station on the premises will damage those members of the public who come within the sphere of its operation." 43 S.E.2d 668, 672 (Ga. 1947). But this holding does not displace *Boykin's* holding that the government was limited to the remedies enumerated by Georgia's legislature when the State had remedies available at law. *Boykin*, 12

S.E.2d at 581. It simply means that the plaintiff in *Webb* did not state a claim for nuisance. A holding that a plaintiff's allegations do not rise to the level of harm to state a claim does not imply that a defense to allegations that *would be* sufficient is no longer valid. Further, the *Webb* case did not involve a comprehensive regulatory scheme like that in *Boykin*; instead, it dealt with an alleged zoning violation, which the solicitor general could not identify how it damaged those who came into contact with the violation. *Webb*, 43 S.E.2d 668, 672 ("The fact that all citizens are interested in having the laws enforced is not sufficient, without more, to warrant calling every infraction of a zoning law a public nuisance."); *cf. Boykin*, 12 S.E.2d at 574 (describing the alleged damages to the public arising from defendants' violations of small-loan laws, which the trial court found supported by evidence and with which the Georgia Supreme Court did not disagree).

In this case, the fact that the County does not find the penalties and remedies provided by the PPA to be adequate does not give a court authority to create remedies the legislature has not contemplated. *Id.* at 580 (quoting *State v. Maltby*, 188 N.W. 175 (Neb. 1922)) ("If the penalty for any crime seems to be inadequate, equity will not for that reason interfere, for the relief must come from the law-making power, and not by extending equity into a field foreign to its purposes."); *cf.* Publix Order at 13 (noting the PPA does not provide an abatement remedy).

*Boykin* held that the abuses described "in the instant case" were not actionable as a public nuisance and it more generally held that a court's equitable powers "can never be invoked where the law has provided what it deems to be an adequate remedy." *Id.* at 581. The same is true in this case: the County has sought to hold Publix liable for what amounts to alleged violations of the PPA and other rules and regulations for which the legislature has provided a variety of civil and criminal penalties. *See* Publix Order at 8-9 (describing how the PPA and its regulations "broadly govern" pharmacy practice and associated civil and criminal penalties). A public nuisance claim,

brought by the County, is not part of the package of remedies the legislature contemplated for these violations. *Cf. Boykin*, 12 S.E.2d at 581. ("Licenses are required; many regulations made respecting the business; penalties provided for their violation; the taking of usury and the violation of various provisions of the small-loan act are made misdemeanors. There is no suggestion anywhere in either the wage-buying or the small-loan act that a violation of its provisions shall constitute a nuisance, or that for repeated violations equity should issue an injunction.").

    **C.**    ***Boykin*'s Ruling Is Supported By Georgia Precedent on "Inferred Preemption."**

The Supreme Court's decision in *Boykin* represented an important moment in Georgia's nuisance jurisprudence, foreshadowing the express preemption and inferred preemption doctrines espoused by the Court of Appeals in *Sturm, Ruger & Co., Inc. v. City of Atlanta*, 560 S.E.2d 525, 530 (Ga. Ct. App. 2002). As context for the *Sturm* case, in the 1990s, the City of Atlanta—like many large municipalities at that time—was grappling with alarmingly high rates of gun violence. In an attempt to address the problem, which the Centers for Disease Control—based in Atlanta— has since recognized as a "serious public health problem," the City filed suit against a bevy of area gun manufacturers and distributors. It alleged, among other things, that the defendants were liable for creating a public nuisance by introducing unreasonably dangerous firearms into the City, which were ending up in the hands of a number unauthorized users (including children, criminals, and mentally unstable persons). *Sturm*, 560 S.E.2d at 528.

The Court of Appeals instructed the trial court to dismiss the City's lawsuit in its entirety. With respect to the City's public nuisance claim, the Court held that the City's claims were preempted because the Georgia General Assembly had created a regulatory scheme for the distribution and use of firearms, and that its lawsuit was an improper attempt to usurp that regulatory scheme. *Id.* at 530. "Through this lawsuit, the City seeks to punish conduct which the

State, through its regulatory and statutory scheme, expressly allows and licenses. Because the State has reserved to itself the right to prescribe the manner in which firearms may be regulated, the City may not attempt to usurp that power, whether by litigation or regulation, and the trial court erred in not dismissing the City's complaint and amended complaint against all defendants." *Id*.

Although the *Sturm* court found that Georgia law directly pre-empted the City's claims, the Court endorsed the "inferred preemption" concept at the heart of the *Boykin* decision: "In this case, preemption can be inferred from the comprehensive nature of the statutes regulating firearms in Georgia, among which are the Georgia Firearms and Weapons Act, codified at O.C.G.A § 16–11–125, and O.C.G.A § 16–11–126 through 16–11–134, the Brady Handgun Violence Protection Act, codified at O.C.G.A §§ 16–11–170 through 16–11–184, and also O.C.G.A §§ 43–16–1 through 43–16–12 which regulate the licensing of firearms dealers."

Here, as the County itself alleges in the Complaint, Georgia has an *extensive* regulatory scheme that governs pharmacies and controlled substances like opioids, including the Georgia Controlled Substances Act (O.C.G.A. § 16-13-1 *et seq.*) (which created the Georgia Prescription Drug Monitoring Program) and the Georgia Pharmacy Practice Act (O.C.G.A. § 26-4-1 *et seq.*) (which created the State Board of Pharmacy and the Georgia Drugs and Narcotics Agency, along with all of the regulations regarding the licensing of drug distributors, pharmacies and pharmacists). The State of Georgia, including through its agencies (e.g., the State Board of Pharmacy; *see* O.C.G.A. §§ 26-4-20 and 26-4-60) enforce these laws with both civil and criminal penalties.

Considering its obvious concern for the consequences of opioid addiction, surely the County would have passed ordinances addressing its opioid problem by now. It has not, however, likely because it realizes that the regulation of pharmacies, and the controlled substances that they

distribute, are not within its purview. That the County has attempted to skirt its jurisdictional limits by filing a lawsuit does not make it any less a usurpation of State power. *Sturm*, 560 S.E.2d at 530. As the Court of Appeals acknowledged with respect to the City of Atlanta in *Sturm*, the County "may not do indirectly that which it cannot do directly." *Id.*

Publix respectfully asks this Court to reconsider its October 25 decision, based on the Georgia Supreme Court's decision in *Boykin* and the *Sturm* decision by the Georgia Court of Appeals, and dismiss Plaintiff's claim of public nuisance (Count Four).

## III. In the Alternative, the Court Should Certify a Question to the Georgia Supreme Court to Determine the Scope of The County's Public Nuisance Claim.

As demonstrated by the positions in briefing Publix's motion to dismiss, the parties disagree over the scope of Georgia nuisance law. The County's claim and proposed remedy seek an unprecedented expansion on Georgia nuisance law. To help "avoid the hazards of attempting to forecast how [Georgia] courts might rule," to help build a cooperative judicial federalism, and to save the Court "time, energy, and resources," Publix requests the Court certify a question to the Georgia Supreme Court regarding whether the County has asserted an actionable claim of public nuisance. *Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1060-61 (6th Cir. 1994).

In determining whether to exercise discretion to certify a question to a state's Supreme Court, federal courts generally consider, *inter alia*, (1) whether the question invokes a vital interest of state sovereignty, such as the construction of a state constitutional provision or a state statute; (2) whether lower state court and federal court rulings allow the court to discern a reasonably clear and principled answer; (3) and whether certification of the issue would save "time, energy, and resources." *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-79 (1997) (Arizona Supreme Court should have had the opportunity to address the construction of an Arizona constitutional provision, and certification of the issue would save

"time, energy, and resources"); *FDIC v. Skow,* 741 F.3d 1342, 1346 (11th Cir. 2013) (certifying a question to the Georgia Supreme Court because there existed "[s]ubstantial doubt about a question of state law upon which a particular case turns"); *Geib,* 29 F.3d at 1059-61 (Michigan Supreme Court should have the opportunity to address the construction of a provision under the Michigan Franchise Investment Law, and there was no reasonably clear result when federal court decisions directly conflicted in their interpretation of the statute).

The Georgia Supreme Court invites federal courts to certify "questions or propositions of the laws of [Georgia] which are determinative of said cause and there are no clear controlling precedents in the appellate court decisions of this State[.]" Ga. Sup. Ct. R. 46; *see also* O.C.G.A. § 15-2-9 (permitting the Georgia Supreme Court to accept certified questions from federal courts); *World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*, 586 F.3d 950, 961 (11th Cir. 2009) ("The Georgia Supreme Court has been generous and gracious in answering our certified questions before, and we ask its favor in doing so again.").

The litigation arising out of the opioid epidemic has caused courts across the country to take pause and cautiously review precedent and policy to determine whether states can ascribe liability on manufacturers and pharmacies *via* traditional nuisance theories. This includes two decisions in opioid-litigations that have been released since this Court's October 25, 2021 ruling. *See State ex rel. Hunter v. Johnson & Johnson*, --- P.3d ---, 2021 Okla. LEXIS 60 (Okla. Nov. 9, 2021) (**Exhibit A**);[3] *State ex rel. Williams v. Purdue Pharma L.P. et al.*, No. 30-2014-00725287-CU-BT-CXC (Super. Ct. Cal. Dec. 14, 2021) (**Exhibit B**). In *Hunter*, the Oklahoma Supreme

---

[3] Earlier in this litigation, the Court relied on the *Hunter* trial court's decision denying manufacturer-defendants' motion to dismiss when assessing the availability of an actionable public nuisance claim under Oklahoma law. *See In re Nat'l Prescription Opiate Litig. v. Purdue Pharma. L.P.*, MDL No. 2804, 2019 U.S. Dist. LEXIS 101660, at *150 (N.D. Ohio Apr. 1, 2019) ("In finding the plaintiff's claim sufficient to survive dismissal, the *Oklahoma ex rel. Hunter* court joined others that recognized the viability of public nuisance claims asserted in opioid cases based on allegations analogous to Plaintiff's claims.").

Court, after careful review of Oklahoma's public nuisance statutes and its own precedents, held that the district court erred in finding the manufacturer-defendant had created a public nuisance. 2021 Okla. LEXIS 60 at *31. The Court emphasized that the district court's expansion of nuisance law encroached on "branches [of government] that are more capable than courts to balance the competing interests at play in societal problems." *Id.*; *see also id.* at *33 (Okla. Nov. 9, 2021) (Kuehn, J., concurring) ("If the public nuisance law can be broadly interpreted as is suggested by the Appellants, I believe the law will become the newest fictional shape-shifting monster."). In *Williams*, Judge Wilson of the California Superior Court for Orange County issued a decision finding the State and County Plaintiffs failed to prove the manufacturer-defendants had created a public nuisance under California law.[4]

These courts, along with others addressing similar claims, rejected the novel and unprecedented expansion of public nuisance law applied to opioid-litigation. *See also State ex rel. Stenehjem*, 2019 N.D. Trial Order LEXIS 3; *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 Del. Super. LEXIS 65, at *31-34 (Del. Super. Ct. Feb. 4, 2019) (holding that Delaware law did not extend public nuisance law to claims about products and dismissing the public nuisance claims against all defendants, including pharmacy-defendants); *City of New Haven*, 2019 WL 423990 (dismissing public nuisance claims for lack of standing under Connecticut law because "[t]o permit otherwise would risk letting everyone sue almost everyone else about pretty much everything that harms us").

Given the serious and far-reaching consequences of the answers to questions raised by the parties regarding the viability of the County's claims, the Georgia Supreme Court should be given

---

[4] Specifically, the court held that "the People have failed to prove the element of 'unreasonable' interference . . . . [And the People] failed to prove that any such alleged interference was more than 'negligible or theoretical.'" Exhibit B at 8, 17, 19.

the opportunity to examine its precedent in light of the County's allegations and determine whether its claims against Publix are properly the kind actionable under O.C.G.A. § 41-2-2 and the decisions of *Boykin* and *Sturm*. *See, e.g.*, *Simmons v. Sonyika*, 394 F.3d 1335, 1339 (11th Cir. 2004) ("Where there is doubt in the interpretation of state law however, a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law.") (inner quotation omitted).

The County has not cited a single case where a public nuisance claim like its own (or anything resembling it) has been allowed to proceed in Georgia. To the contrary, the decisions in *Boykin* and *Sturm* indicate that such a claim is foreclosed. Accordingly, the Georgia Supreme Court should be given the chance to review the County's proposed expansion to public nuisance law.

Certification of this issue to the Georgia Supreme Court will not only save the Court "time, energy, and resources," it would also serve the important purpose of building "a cooperative judicial federalism." *Arizonans*, 520 U.S. at 77 (quoting *Lehman Brothers v. Schein*, 416 U.S. 386, 391 (1974)); *id.* at 76 ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response."). Publix therefore respectfully requests this Court certify the following question to the Georgia Supreme Court for resolution:

> Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 *et seq.*, and for which the legislature has already enumerated civil and criminal remedies?

## CONCLUSION

The Court should reconsider its Opinion & Order denying Publix's Motion to Dismiss to

correct a clear error or prevent manifest injustice. In the alternative, the Court, should allow the Georgia Supreme Court to instruct on the scope of public nuisance law and certify the above question for its consideration.

Date:   December 22, 2021          Respectfully submitted,

ARNALL GOLDEN GREGORY LLP

/s/ David J. Marmins
David J. Marmins
Georgia Bar No. 470630
Morgan E. M. Harrison
Georgia Bar No. 470983

171 17th Street. N.W., Suite 2100
Atlanta, GA 30363
Telephone: (404) 873-8126
Facsimile: (404) 873-8127

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on December 22, 2021. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

/s/ David J. Marmins
David J. Marmins

- 14 -