# PSJ1 Exh 3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

# PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON PROOF OF CAUSATION (DKTS. #S 1869, 1897, 1941)

July 31, 2019

pharmacy customers and its compliance with the 2008 MOA, in certain respects, were inadequate." Ex. 115, CAH_MDL2804_02465982-6053 at 5984. Cardinal had also been issued numerous DEA suspension orders in 2007 and 2008 as a result of its lax anti-diversion practices, resulting in another 2008 settlement. *See* Ex. 126, CAH_MDL_PRIORPROD_DEA12_00013056-3103. Similarly, in a January 2017 settlement with the DEA, McKesson acknowledged that from 2009-2017 "it did not identify or report to DEA certain orders placed by certain pharmacies which should have been detected by McKesson as suspicious . . ." Ex. 116, MCKMDL00355349-5415 at 5352. This came less than a decade after DEA and DOJ, in 2008, punished McKesson for its flagrant noncompliance with the CSA. *See* Ex. 127, MCKMDL00337001-1071. Walgreens, as part of a settlement with DEA in June 2013, admitted that its "suspicious order reporting for distribution to certain pharmacies did not meet the standards identified by DEA in three letters from DEA's Deputy Assistant Administrator . . ." Ex. 117, WAGMDL00490963-0978 at 0964. Walgreens had been issued show-cause orders and warrants in 2012 and 2013 for egregious misconduct. *See* Ex. 129, WAGMDL00387653-7707 at 7654; Ex. 130, WAGMDL00493694-3696. CVS also acknowledged, in two separate settlements with DEA, that it failed to meet its compliance obligations under the CSA. *See* Ex 118, CVS-MDLT1-000060805-0811; Ex 119, CVS-MDLT1-000060796-0804. AmerisourceBergen, too, was subject to DEA enforcement actions for its filling and shipping of orders of controlled substances ABDC knew, or should have known, to be suspicious. *See* Ex. 128, ABDCMDL00269383-9387. And, Defendant HBC entered into a settlement agreement with the Ohio State Board of Pharmacy in 2011 based on allegations that it had "failed to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs." Ex. 120, Deposition of Anthony Mollica, 90:10-95:17; 101:6-25; 202:7-16.

Distributor and Pharmacy Defendants' public admissions are corroborated by an examination of their actual diversion practices and policies. It is undisputed, for example, that Cardinal did not

23

have a policy to stop shipment of suspicious orders at all until 2008, and from 2008-2011, it reported only a few dozen suspicious orders per year, nationwide. *See* Ex. 121, CAH_MDL2804_03262274-2520 at 2438. One former sales supervisor swore in a declaration that Cardinal sales representatives coached customers to circumvent thresholds and that the "top sales representatives routinely broke rules to increase sales, and sales management often turned a blind eye or even encouraged the behavior." Ex. 155, Declaration of Kirk Klaasesz. McKesson had a policy in place from 1997-2007, though its own employees have acknowledged that this system did not flag true suspicious orders. Ex. 122, MCKMDL00510747-0752 at 0747; Gary Hilliard Dep., (01/10/19), Dkt. # 1963-1 at 176:8-176:22. Even when McKesson implemented new "threshold" measures in 2008, they were either set far too high to ever be triggered, or were increased without adequate justification from customers. *See* Ex. 123, MCKMDL00507799; Ex. 124, MCKMDL00633455. AmerisourceBergen's pre-2007 policy entailed shipping all orders of controlled substances it identified as suspicious *before* a due diligence investigation had ever occurred. Eric Cherveny Dep. (11/09/18), Dkt. # 1959-22 at 281:14-282:8. And prior to 2011, Walmart neither developed, nor maintained a suspicious order monitoring system. *See* Jeff Abernathy Dep. (11/15/18), Dkt. # 1956-1 at 42:23-43:5. Prescription Supply, Inc. never once reported a suspicious order, nationwide, from at least 2013-2017. James Schoen Dep. (02/27/19), Dkt. # 1970-16 at 115:19-116:2. Similarly, Rite-Aid reported zero suspicious orders, nationwide, from 1995-2014. *See* Janet Hart Dep. (1/30/19), Dkt. # 1962-21 at 114:4-8. HBC did not have a written SOMS policy at all until 2014, the same year it stopped selling controlled substances. *See* Ex 125, HBC_MDL00133445-3463. Pharmacy Warehouse Supervisor for Defendant DDM testified that she has never seen written policies or procedures regarding suspicious order monitoring and has never reported a single suspicious order to the DEA nationwide. Jill Strang Dep. (01/03/19), Dkt. # 1971-5 at 109:15-22; 315:13-317:3

24

## IV. CONCLUSION

Plaintiffs have ample statistical and more individuated evidence for each Defendant, to establish, at the very least, a genuine issue of material fact on causation. As demonstrated herein, Defendants' fraudulent marketing and promotion of opioids, as well as their dereliction of duties relating to suspicious ordering and opioid diversion, were the direct cause of the enormous harms experienced by Cuyahoga and Summit Counties. To permit Defendants to escape blame because they each engaged in unlawful acts that, collectively, caused the extensive harm perpetrated upon the Plaintiffs is not permissible. *See, e.g., Paroline,* 572 U.S. at 457 (permitting aggregate causation proof where it would be "nonsensical to adopt a rule whereby individuals hurt by the acts of many would have no redress, while those hurt by the acts of one person alone would"). The law does not permit the Defendants to hide behind the fact that they are part of a group of multiple wrongdoers. In other words, Defendants cannot escape liability simply because there is more than one party (unfortunately) like them that caused the extensive damages experienced by the Plaintiffs and the citizens of Ohio. To find otherwise would result in a severe injustice not justified in law.

For the foregoing reasons, this Court should deny the Manufacturer, Distributor, and Pharmacy Defendants' Motions for Summary Judgment based on proof of causation.

Dated: July 31, 2019       Respectfully submitted,

/s/Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/ Joseph F. Rice
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

*On the Brief:*

Tara D. Sutton
ROBINS KAPLAN LLP

Louis Bograd
MOTLEY RICE LLC

Michael J. Quirk
MOTLEY RICE LLC

Anthony J. Majestro
POWELL & MAJESTRO, PLLC

Dustin Herman
SPANGENBERG SHIBLEY & LIBER LLP