# PSJ1 Exh 4

#### UNITED STATES DISTRICT COURT
#### NORTHERN DISTRICT OF OHIO
#### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track One Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

# CONSOLIDATED REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTIONS FOR PARTIAL SUMMARY ADJUDICATION WITH RESPECT TO THE CONTROLLED SUBSTANCES ACT (DKT. #1910-1 & #1924-1)

August 16, 2019

459:20. ABDC's own documents thus indicate that the agreement reached with the DEA specified that suspicious orders must be reported to the DEA *before* they are ever shipped. Notwithstanding a subsequent hearsay statement offered by Thomas Provoznik (Dist. Opp., p. 44), with no foundation, ABDC offers no direct, admissible evidence to contradict this fact.

Even if the DEA did pre-approve ABDC's SOMS without no-shipping component (it did not), that approval fails to create a triable issue of fact. As discussed above, an administrative agency's purported pre-approval of conduct cannot exempt an entity from clear violations of a law. *Supra* at § I.F. ABDC relies on a 1998 letter and a 2004 "certificate of appreciation" to argue that, despite violating the CSA, its conduct was legal. But ABDC offers no authority to support that claim because none exists.

> K. **The Remaining Distributors Similarly Create No Disputed Issues of Fact.**
>
> > 1. *HBC/Giant Eagle Provides No Evidence that It Complied with Its CSA Duties.*

Instead of providing documentary evidence demonstrating that, prior to August 2014, HBC (or Giant Eagle) implemented a system that identified suspicious orders (*i.e.*, orders of unusual size, orders deviating substantially from a normal pattern, *and* orders of unusual frequency) as required under the CSA, HBC/Giant Eagle relies almost exclusively on the vague and self-serving testimony of their own employees. Dist. Opp., pp. 96-101. This evidence is insufficient to create a fact issue precluding summary judgment.[86]

For example, Defendants claim that "[f]rom day one, Giant Eagle had its warehouse employees closely monitor orders and, because these employees were 'attuned to the normalcies' of orders coming from Giant Eagle pharmacies, if they saw aberrations, they would bring it to the attention of warehouse supervisors who would begin an investigation."[87] But HBC's purported use

---

[86] *See MJR Intern., Inc. v. Am. Arb. Ass'n*, 596 F. Supp. 2d 1090, 1099 (S.D. Ohio 2009) ("[S]elf-serving, conclusory assertions in deposition testimony, without record support, are insufficient to support or oppose a motion for summary judgment."); *Deebs v. Alstom Transp., Inc.*, 346 Fed. Appx. 654, 656 (2d Cir. 2009) (unpublished) (affirming grant of summary judgment against plaintiffs where "plaintiffs rel[ied] almost exclusively upon their own deposition testimony in order to support their claims").

[87] Dist. Opp., p. 100 (quoting Durr Tr., Dkt. #1961-20, at 90:8 -91:7, 92:12 – 93:8).

of its warehouse employees in SOM monitoring of its 200 customer-pharmacies is an absurd proposition. Defendants offer no instance where such monitoring did anything, including no instances of delayed/prevented shipping or further due diligence.[88]

The evidence clearly demonstrates HBC/Giant Eagle failed to comply with their identification duties under the CSA. Ps' Compliance MOL, pp. 132-39.[89] Indeed, the State of Ohio Board of Pharmacy found that Giant Eagle's system of detection and diversion was inadequate to detect extensive pharmacy staff diversion over a twenty (20) month period.[90] That system of diversion detection and deterrence differs in no way from the flawed system Giant Eagle/HBC employs across HBC's 200 pharmacy-customers. Defendants also argue that there is no evidence that Giant Eagle was a source of diversion. Not so. HBC admits to knowing that theft occurred within Giant Eagle pharmacies.[91] Moreover, in 2013, the federal government secured guilty pleas in

---

[88] As Plaintiffs note in their motion, HBC admits in its written discovery that it never trained these employees (or other employees) regarding diversion. Ps' Compliance MOL, p. 134. Also noted in the motion, HBC's warehouse supervisor could not recall warehouse employees receiving any specific training to identify suspicious orders. *Id.*

[89] In their Opposition, Defendants state that certain statements regarding HBC in Plaintiffs' Compliance MOL "rely on footnotes that reference documents or testimony that provide absolutely no support for the allegedly 'undisputed facts' asserted above it." Dist. Opp., p. 94 n.247. On closer review, Plaintiffs now realize that they had mistakenly cited page ranges from the rough-draft depositions instead of those depositions' final transcripts. The following are the corrected page ranges for those citations: (i) Ps' Compliance MOL, p. 136 n.437: "Tsipakis Tr., Dkt. #1971-12, at 114:10 – 116:17; Mollica Tr., Dkt. #1968-5, at 237:4-13; Millward Tr., Dkt. #1968-3, at 186:21 – 187:6; *but see* Millward Tr., Dkt. #1968-3, at 266:11 – 268:6"; (ii) Ps' Compliance MOL, p. 138 n.445: "Tsipakis Tr., Dkt. #1971-12, at 213:8-11, 255:24 – 256:23"; (iii) Ps' Compliance MOL, p. 138 n.446: "Tsipakis Tr., Dkt. #1971-12, at 141:3 – 142:11."

Additionally, the citation in Ps' Compliance MOL at p. 134 n.429 should have been cited on the following page (p. 135) in support of the first sentence "HBC's thresholds were also deficient." The correct citation for n.429, HBC admitting that the threshold report was for "total shipped quantities," is: Tsipakis Tr., Dkt. #1971-12, at 141:3 – 142:11, 215:6-21.

[90] *See* Plaintiffs' Memorandum in Opposition to Defendant HBC's Motion for Summary Judgment, Dkt. #2178, at pp. 4–5 (discussing *In the Matter of Giant Eagle #4098*, Docket Number D-110714-197, State of Ohio Board of Pharmacy Mins, Dec. 5–7, 2011, "Settlement Agreement with Board of Pharmacy").

[91] Mollica Tr., Dkt. #1968-5, at 209:6-22. One Pharmacy District Leader employed by Defendant found that several instances within a single month's narcotic audit should have been reported to DEA officials because of unexplained missing narcotics at Giant Eagle pharmacies. Bencivengo Tr., Dkt. #1959-1, at 120:21–121:8, 123:25–125:13, 135:23–136:9, 137:1–9, 139:7–23, 142:13–143:9. No records of such disclosure or additional investigation on those unexplained missing narcotics are in the production.

this District on indictments accusing defendants of submitting fake prescriptions to a Giant Eagle pharmacy and successfully obtaining opiates at issue.[92]

Accordingly, HBC and Giant Eagle have failed to raise a triable issue of fact refuting Plaintiffs' assertion that they failed to comply with their CSA duties to identify suspicious orders. HBC and Giant Eagle similarly do not dispute that they were unable to automatically stop orders from shipping to its customers which exceeded its threshold monitoring system. Moreover, HBC's 30(b)(6) representative admitted that HBC had no policy or procedure in place to halt shipment of a flagged order pending an investigation:

> Q: . . . . So my question is whether or not the orders are shipped, whether or not there's a policy or a rule, a procedure, that requires the orders to not be shipped until somebody from procurement looks at it and says, oh, that's a false positive, oh, there's a justification for that. Is there a policy, procedure or rule in place that does such?
>
> A: No.[93]

Accordingly, the undisputed evidence establishes that HBC/Giant Eagle failed to comply with their duty to block shipment of, and investigate, suspicious orders.[94]

---

[92] *See United States v. Eppinger et al*, 1:12-CR-134, 2012 WL 6930580, at ¶ 114, 116, 119 (N.D. Ohio Mar. 13, 2012) (indictment, including ¶ 114 Brittany Glass obtaining from Giant Eagle through fake prescription Oxycontin 80mg (90 count); ¶ 116 Louis Eppinger using another to obtain from Giant Eagle through fake prescription Oxycontin 80mg (90 count); and ¶ 119 Louis Eppinger using another to obtain from Giant Eagle through fake prescription Percocet (90 count, no mg listed)). Both of these defendants pled guilty to "conspiracy to possess with intent to distribute Oxycodone." *United States v. Eppinger, et al.,* Case No. 1:12-cr-00134-CAB-3 (N.D. Ohio) at Dkt. No. 141 (1/24/13 Judgment) (showing defendant Brittany Glass pled guilty); *United States v. Eppinger, et al.,* Case No. 1:12-cr-00134-CAB-1 (N.D. Ohio) at Dkt. No. 165 (4/24/13 Order Accepting Plea Agreement and Judgment) (showing defendant Louis Eppinger pled guilty). This Court may take judicial notice of the fact that the Eppinger court entered judgment against these defendants based on their guilty pleas. FED. R. EVID. 201(b); *Embassy Realty Investments, LLC v. City of Cleveland*, 877 F.Supp.2d 564, 571 (N.D. Ohio July 5, 2012).

[93] Tsipakis Tr., Dkt. #1971-12, at 174:15-23. *See also* Ps' Ex. 441 (3/29/16 internal e-mail in which Adam Zakin, Sr. Director, Pharmacy Administration at Giant Eagle, declined to purchase a third-party controlled substance ordering system, stating: "Were you not there? At the end of the day the only thing it did *that our current system would not do*, was stop the orders physically if there was a threshold.") (emphasis added).

[94] As discussed above, *supra* at § I.F, DEA's failure to take action against HCB/Giant Eagle is not evidence that HBC/Giant Eagle was in compliance and does not create a disputed issue of fact for trial.

Respectfully submitted,

/s/ Paul J. Hanly, Jr.
Paul J. Hanly, Jr.
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
phanly@simmonsfirm.com

/s/ Joseph F. Rice
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
GREENE KETCHUM, LLP
419 Eleventh Street
Huntington, WV 25701
(304) 525-9115
(800) 479-0053
(304) 529-3284 (Fax)
paul@greeneketchum.com

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Hunter J. Shkolnik
NAPOLI SHKOLNIK

84

360 Lexington Ave., 11th Floor
New York, NY 10017
(212) 397-1000
(646) 843-7603 (Fax)
hunter@napolilaw.com

*Counsel for Plaintiff Cuyahoga County, Ohio*

Linda Singer
MOTLEY RICE LLC
401 9th St. NW, Suite 1001
Washington, DC 20004
(202) 386-9626 x5626
(202) 386-9622 (Fax)
lsinger@motleyrice.com

*Counsel for Plaintiff Summit County, Ohio*

*On the brief:*

M. Michelle Carreras
THE LANIER LAW FIRM, P.C.
10940 W. Sam Houston Pkwy N., Suite 100
Houston TX 77064

Andrea Bierstein
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016

85