UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**This document relates to:**<br><br>*Track Three Cases* | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS'** ***DAUBERT*** **MOTION TO EXCLUDE THE OPINIONS OFFERED BY CALEB ALEXANDER**

Despite the Court's prior orders, Plaintiffs are attempting to introduce testimony by Caleb Alexander that would only be relevant (if at all) to the Court during a remedies phase (if there is one) but would be prejudicial if presented to the jury during the liability phase. Plaintiffs also are attempting to reserve the right to substitute attorney argument for the sort of reliable expert methods required by Rule 702(d) if the Court excludes certain testimony by one of their other expert witnesses, Carmen Catizone. The Court should enforce its prior orders and Rule 702(d) and exclude Alexander's testimony.

**I.    ARGUMENT**

   A.    <u>The Court Should Exclude *All* Remedies-Related Testimony From The Phase One Jury Trial</u>

As the Court previously explained, the Phase One trial is solely about liability. If the outcome of that trial warrants it, it will be up to the Court to hear evidence and make determinations as to remedies in a second, separate proceeding. Doc. 3579 ("Phasing Order") at *2-5. The only questions before the Phase One jury will be "(i) whether a public nuisance exists; and (ii) if so, was any defendant a substantial factor in causing it?" *Id.* at *3-4. "If the answers are yes, then it is ***for the Court*** to decide all matters connected to abatement." *Id*. at *4 (emphasis in original).

The Court created this structure because, as it reasoned in the context of a previous *Daubert* motion: "In Ohio, '[w]hen a nuisance is established, <u>the form and extent of the relief designed to abate the nuisance is within the discretion of the court</u>.'"  Doc. 2519 at *3 (emphasis added) (citing 72 Ohio Jur. 3d Nuisances §49) (cited in Phasing Order at *3).  The Court carefully distinguished "the forward-looking, equitable remedy of abatement" from "the rearward-looking remedy of damages," noting, "[t]he goal is not to compensate the harmed party for harms already caused by the nuisance.  This would be an award of damages.  Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward." *Id*.

The Court further held that "presentation of evidence during the two phases of trial will be limited accordingly."  Phasing Order at *3.  Alexander's reported opinions are almost entirely about abatement issues, however, so Defendants moved to exclude his abatement-related testimony from the Phase One trial.

In Opposition, Plaintiffs state that they "would not offer remedy-related testimony by Dr. Alexander in Phase One of the trial," and that they "would not elicit remedy-related testimony from Dr. Alexander in Phase One."  Opp. at *3.  While this is a welcome concession in theory, in practice Plaintiffs apparently intend to do exactly what they deny.  In Plaintiffs' own words:

> In Phase One, Plaintiffs may call Dr. Alexander to testify as to the existence <u>and impact</u> of an opioid epidemic nationally and in Lake and Trumbull Counties . . . . As an epidemiologist, Dr. Alexander's opinions on these topics are highly relevant and would be helpful <u>to the Court</u> in understanding <u>the scope of harms caused by the oversupply</u> of prescription opioids into the jurisdictions.

*Id*. at *2 (emphasis added).  Expert opinions on this general topic might be relevant <u>to the Court</u> in a remedies proceeding, assuming the jury in Phase One finds that any defendant substantially

2

caused a present public nuisance that could be rectified going forward.[1]  In contrast, the retroactive question of whether a defendant "caused" harms in Lake and Trumbull Counties via an "oversupply of prescription opioids" is a backwards-looking damages-type question.

Expert testimony regarding damages has no place in either phase, since the Court already has made clear this is about abatement, not damages.  Further, under Ohio law, questions about "the extent" of the relief necessary to abate a public nuisance are strictly for the Court.  *See* 72 Ohio Jur. 3d Nuisances §49.  So, unless and until the Phase One jury finds that a defendant substantially caused a public nuisance, even forward-looking evidence regarding the "impact" or "scope" of the harms associated with the alleged nuisance is irrelevant, and potentially prejudicial.

In drawing the line between trial phases, the Court carefully balanced the benefits of having a "properly instructed" jury collectively deliberate on liability against the risk of a jury making decisions as a result of "inflamed passions."  *See* Phasing Order at *5.  Plaintiffs are transparently planning to use Alexander's testimony about the past "scope" or "impact" of the opioids crisis and associated harms in Lake and Trumbull Counties to inflame the Phase One jury, even though abatement is a forward-looking remedy reserved strictly for the Court under Ohio law.  The Court should reject this attempted end-run around the Phasing Order and exclude all remedies-related testimony from the Phase One trial.

B.   Alexander's Appendix F Opinions Are Not Admissible Without An Admissible Connection To The CT3 Defendants

Rule 702(d) states in plain terms that expert testimony is only admissible if "the expert has reliably applied the principles and methods to the facts of the case."  Alexander admitted in

---

[1] Once again, Defendants reserve the right to move to exclude Alexander's opinions on this topic on other grounds prior to the phase two proceeding, assuming one is necessary.

his deposition that he did nothing to apply the general principles he discussed in Appendix F to the actions of any Defendant.  Instead, he left that task entirely to Catizone.  *See* Tr. at 122:15-18,156:1-10; *see also* id. at 156:15-157:12, 170:18-171:1, 174:14-176:9.  Accordingly, if the Court excludes Catizone's testimony on this subject, it must also exclude Alexander's Appendix F opinions.

Plaintiffs do not even discuss Rule 702(d) in their Opposition, and the nature of their response is extremely telling.  They argue that even if Catizone is excluded, "the connection of the indicators discussed by Dr. Alexander to Defendants is clear: They are 'the types of indicators . . . that can be used by pharmacies and other actors in the pharmaceutical supply chain,' such as Defendants."  *See* Opp. at *4 (quoting Tr. at 148:24-149:1) (emphasis added).  The phrase "such as Defendants" is critical here, as otherwise such evidence would fail the Rule 702(d) requirement that the testifying expert use a reliable method to apply the stated general principles to the facts of the case.

Plaintiffs had no choice but to end their quotation of Alexander's testimony before getting to this critical connective phrase, because Alexander himself provided no such opinion as to any Defendant.  To the contrary, he explicitly disclaimed analyzing that very question, and testified he did nothing to actually apply any of his general principles to the actions of any Defendant.  *See* Tr. at 122:15-18 ("But my development of that appendix did not require me to evaluate the specific actions of pharmacies to date.  And I would leave it to Mr. Catizone or other experts to do so."), 156:1-10 ("Q. Did you study, in relation to Appendix F, and what you've placed in your – the contents of Appendix F, did you study the specific actions of any of the defendant pharmacies and their pharmacists related to Appendix F?  A. Well, I reviewed Mr. Catizone's report, and I believe he does so.  But the development of my Appendix F did not

require me or wasn't predicated on having studied the specific actions of defendants in this case.").

The Advisory Committee Notes to the 2000 Rule 702 Amendments (made in response to the Supreme Court's decision in *Daubert*) provide the following relevant example:

> The amendment requires that the testimony must be the product of reliable principles <u>and methods that are reliably applied to the facts of the case</u>. While the terms "principles" and "methods" may convey a certain impression when applied to scientific knowledge, they remain relevant when applied to testimony based on technical or other specialized knowledge. For example, when a law enforcement agent testifies regarding the use of code words in a drug transaction, the principle used by the agent is that participants in such transactions regularly use code words to conceal the nature of their activities. <u>The method used by the agent is the application of extensive experience to analyze the meaning of the conversations</u>. So long as the principles <u>and methods</u> are reliable <u>and applied reliably to the facts of the case</u>, this type of testimony should be admitted.

F.R.E. 702 Advisory Committee's Note (emphasis added). Without Catizone, Alexander would be like an expert who testified generally about the use of code words in drug transactions, but then never analyzed any of the actual conversations at issue in the case using reliable methods, instead leaving it to the jury to try to figure out what, if any, relevance the expert's general testimony had to the facts of the case. As the Court stated with respect to a proposed preservation deposition for "generic" expert testimony, "I understand [an expert] can make generalizations, but it is only admissible if he ties it to the particular case that is on trial." Doc. 3606 (1/11/21 Hearing Transcript) at *30.

Rule 702(d) does not permit the admission of such free-floating expert testimony for good reason: it would allow parties to fill the connective gap between general principles and the facts of the case with attorney argument, rather than reliable expert methods subject to a *Daubert* inquiry. That is transparently what Plaintiffs hope to do in the Phase One trial, but Rule 702(d) does not allow such a tactic. Therefore, the Court should exclude Alexander's Appendix F

5

testimony if it excludes Catizone's relevant testimony, because without Catizone only Plaintiffs' counsel can connect Alexander's general principles with the facts of the case, not a reliable, admissible expert method.

## II. CONCLUSION

The Court carefully delineated the issues that will be tried before the Phase One jury and the limits it would place on the evidence presented to the jury. The Court should now enforce those limits by excluding all of Alexander's remedies-related opinions, including testimony as to the retroactive "impact" or "scope" of the alleged harms associated with the opioids crisis. The Court also should exclude Alexander's Appendix F opinions if it excludes Catizone's relevant opinions, because Alexander does not connect his general principles to the facts of the case via a reliable method as required by Rule 702(d).

Dated: August 27, 2021

Respectfully submitted,

/s/ Scott D. Livingston
Robert M. Barnes
Scott D. Livingston
Joshua A. Kobrin
MARCUS & SHAPIRA LLP
35th Floor, One Oxford Centre 301 Grant Street
Pittsburgh, PA 15219
Phone: (412) 471-3490
Email: rbarnes@marcus-shapira.com
Email: livingston@marcus-shapira.com
Email: kobrin@marcus-shapira.com

*Attorneys for Giant Eagle and HBC Service Company*

/s/ Tara A. Fumerton (consent)
Tara A. Fumerton
Tina M. Tabacchi
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585

E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

*/s/ Alexandra W. Miller* (consent)
Alexandra W. Miller
Eric R. Delinsky
ZUCKERMAN SPAEDER LLP
1800 M Street, NW
Suite 1000
Washington, DC 20036
Phone: (202) 778-1800
Fax: (202) 822-8106
E-mail: smiller@zuckerman.com
E-mail: edelinsky@zuckerman.com

*Attorneys for CVS Indiana, L.L.C., CVS Rx Services, Inc., CVS Pharmacy, Inc., CVS TN Distribution, L.L.C., and Ohio CVS Stores, L.L.C.*

*/s/ Kaspar J. Stoffelmayr* (consent)
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten A. Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, Illinois 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: brian.swanson@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com
E-mail: sharon.desh@bartlitbeck.com
E-mail: sten.jernudd@bartlitbeck.com

*/s/ Alex J. Harris* (consent)
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
Phone: (303) 592-3100
Fax: (303) 592-3140
E-mail: alex.harris@bartlitbeck.com

*Attorneys for Walgreens Boots Alliance, Inc.,
Walgreen Co. and Walgreen Eastern Co., Inc.*

8

## CERTIFICATE OF SERVICE

    I, the undersigned, hereby certify that the foregoing document was served via e-mail to all counsel of record on August 27, 2021.

                                                             */s/ Scott D. Livingston*