# EXHIBIT B

**SPANGENBERG SHIBLEY & LIBER**
TRIAL LAWYERS

COMMITMENT. INTEGRITY. RESULTS.

75th ANNIVERSARY

PETER H. WEINBERGER, OF COUNSEL
WILLIAM HAWAL
PETER J. BRODHEAD, OF COUNSEL
DENNIS R. LANSDOWNE
STUART E. SCOTT
NICHOLAS A. DICELLO
JEREMY A. TOR, LICENSED IN NY, OH
DUSTIN B. HERMAN
MICHAEL P. LEWIS, LICENSED IN CA, OH
KEVIN C. HULICK
EMILY DAVIS

CRAIG SPANGENBERG
(1914-1998)

NORMAN W. SHIBLEY
(1921-1992)

JOHN D. LIBER
(1938-2013)

October 1, 2021

**Sent via email at dan_polster@ohnd.uscourts.gov**
The Honorable Dan Aaron Polster
United States District Court, Northern District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 18B
Cleveland, OH 44113-1837

**RE:** *In re: National Prescription Opiate Litigation*, Case No. 1:17-md-02804, Response to Sept. 30, 2021 CVS Letter

Dear Judge Polster:

Plaintiffs write in response to Sasha Miller's 9/30/21 letter to the Court, on behalf of CVS, objecting again to the admissibility of its settlement agreements with the DEA and state boards of pharmacy at trial. CVS's arguments are without merit and should be rejected.

As a preliminary matter, of the seventeen CVS settlement agreements Plaintiffs submitted to the Court for consideration, CVS addresses only two with any level of specificity: the 2015 Florida settlement agreement (P-8954) and the 2016 Maryland settlement agreement (P-8955). CVS makes no effort to identify the precise reason any of the other fifteen settlement agreements should not be admitted. Instead, CVS makes three general arguments, none of which support the exclusion of any of the settlements.

First, CVS argues that "Plaintiffs have sometimes asserted that the *releases* provided by the government in each agreement set out the allegations" when "[t]hey do not." CVS does not point to any instance of Plaintiffs actually making such an assertion, but instead references one particular settlement (the 2015 Florida settlement agreement (P-8954)) in which its claims the conduct released was broader than the conduct the DEA alleged to be wrongful. But the broad nature of the releases it agreed to in no way negate the relevance of the settlement agreement. In that 2015 Florida settlement, CVS admitted "that certain CVS/pharmacy retail stores did dispense certain controlled substances in a manner not fully consistent with their compliance obligations under the CSA and its

Judge Polster
Page 2 of 3
October 1, 2021

implementing regulations." P-8954 at p. 3, ¶ K.[1] The fact that those specific CVS pharmacies in Florida violated the CSA when dispensing controlled substances is entirely relevant to this case, where there is evidence (i) that CVS implemented its dispensing policies nationwide,[2] and (ii) that opioids improperly dispensed in Florida migrated to other states, including Ohio (a phenomenon CVS was well aware of).[3] Dkt. #3058 (CT1A Evidentiary Order) at pp. 8-9, 12-15; Dkt. #3546 (CT1B Evidentiary Order) at p. 31.

Moreover, the 2015 Florida settlement contains another relevant admission by CVS:

> CVS acknowledges that *it* has a corresponding responsibility to dispense only those prescriptions that have been issued for a legitimate medical purpose by an individual practitioner acting in the usual course of professional practice and that knowingly filling a prescription not in the usual course of professional treatment or in legitimate and authorized research subjects CVS to penalties under the CSA.

P-8954 at p. 2, ¶ G (emphasis added). CVS, along with the other Pharmacy Defendants, have consistently argued that only its pharmacists owed corresponding responsibility duties. *See, e.g.,* Dkt. #3340-1 (CT3 Pharmacy Ds' MTD) at p. 2 ("[T]he responsibility to guard against invalid prescriptions rests with individual pharmacists, and *only* with individual pharmacists, when they exercise their professional judgment upon being presented with a prescription."); *see also id.* at pp. 16-20. The 2015 Florida settlement demonstrates that CVS was well aware of its corporate-level obligations under the CSA.

CVS's second argument is that "many of the settlement agreements were not executed until years after the alleged conduct[,]" pointing to the 2015 Florida settlement (which was based on conduct ending in 2011) and the 2016 Maryland settlement (which was based on conduct ending in 2012). P-8954; P-8955. Plaintiffs are unclear as to the point CVS is trying to make. It is entirely unsurprising that a settlement would be executed after the wrongful conduct occurred. The DEA needed to first discover the conduct, then investigate it, then initiate an administrative action. That takes time. CVS fails to explain how this makes the settlement any less relevant.

---

[1] The specifically identified conduct in the settlement was the "[c]onduct alleged in the February 2, 2012 Orders to Show Cause and Immediate Suspension Orders issued to CVS stores 219 and 5195 and in DEA's filings in In the Matter of Holiday CVS, L.L.C. d/b/a CVS/Pharmacy #00219 and Holiday CVS, L.L.C. d/b/a CVS/Pharmacy #05195, Docket Nos. 12-37 and 12-38." P-8954 at p. 4, ¶ 2(i). In particular, those CVS pharmacies (i) dispensed numerous opioid prescriptions issued by two physicians without valid DEA registrations, and (ii) dispensed controlled substances, including opioids, pursuant to prescriptions which raised red flags that could not be resolved and, thus, violated their corresponding responsibility under the CSA. *Holiday CVS, L.L.C. d/b/a CVS/Pharmacy Nos. 219 and 5195 Decision and Order,* 77 FR 62316-01, 2012 WL 4832770 (D.E.A. Oct. 12, 2012).

[2] *See, e.g.,* **Ex. A** (P-20699) (Pain Management Dispensing Guidelines; sent to all pharmacy teams and applicable to all pharmacy team members); **Ex. B** (P-20697) (Professional Practices POM listing "responsibilities and practices that CVS/pharmacy and State Boards of Pharmacy expect of all Pharmacists").

[3] *See, e.g.,* **Ex. C** (P-19738) at 017-023 (in March 2009, Ohio BOP send email to all Ohio pharmacists regarding "a significant volume of prescriptions from physicians in Florida" who were "prescribing for patients from Ohio and Kentucky"); *Holiday CVS,* 77 FR 62316-01, at *62326 n.14 (government's expert testified "that 'Interstate 95 has been renamed the Oxycodone Express because of the brisk travel of people from Kentucky, Tennessee, [and] Ohio to South Florida to obtain medications'").

Judge Polster
Page 3 of 3
October 1, 2021

Moreover, the conduct at issue in the two settlements referenced in CVS's letter took place within the time period relevant to Plaintiffs' claims.  *See* Dkt. #3967 (CT3 Evidentiary Order) at p. 19 ("There is simply no question that evidence of alleged misconduct by CVS before 2015 is relevant to the existence of a public nuisance in the Plaintiff Counties today."), p. 21.

Finally, CVS states that "[i]f plaintiffs are allowed to offer the settlements over [its] objection, [it] note[s] in advance that there may be trial objections, including without limitation relating to personal knowledge, undisclosed expert opinions, and attorney-client privilege."  Again, Plaintiffs are unsure of CVS's point.  Certainly the fact that a party "might" object to a particular piece of evidence at trial is not a sufficient basis for preventing it from ever being offered at all.  CVS does not explain which of the four witnesses identified by Plaintiffs would not have personal knowledge of the settlements, or would be offering privileged information or undisclosed expert opinions.  CVS's vague and speculative arguments should be rejected.

CVS has provided no legitimate basis for precluding evidence of any of the seventeen settlements identified by Plaintiffs.  For this reason, its request for their exclusion should be denied.  In particular, the fact that CVS corporate voluntarily entered into these agreements and represented to the DEA that it would take particular steps to insure compliance with its CSA-mandated obligations is an important part of the narrative of Plaintiffs' presentation and should be permitted in Plaintiffs' opening statement.

Respectfully,

*s/W. Mark Lanier*

W. Mark Lanier
*wml@lanierlawfirm.com*

*s/Peter H. Weinberger*

Peter H. Weinberger
*pweinberger@spanglaw.com*

WML/PHW/ss
Enclosure

cc:    ext-track3defendants@groups.jonesday.com