UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*County of Lake, Ohio v. Purdue Pharma L.P., et al.*,<br>  Case No. 18-op-45032 (N.D. Ohio)<br><br>*County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*,<br>  Case No. 18-op-45079 (N.D. Ohio)<br><br>"Track 3 Cases" | MDL No. 2804<br>Case No. 17-md-2804<br>Judge Dan Aaron Polster |

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR
CERTIFICATION OF ORDERS FOR INTERLOCUTORY APPEAL**

Section 1292(b) lists three criteria for an interlocutory appeal: "a controlling question of law," "substantial ground for difference of opinion," and the prospect that an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Defendants' certification motion (Dkt. 4205) meets all three criteria, and Plaintiffs' opposition does not refute that conclusion.

Defendants satisfy the § 1292(b) criteria for each of the three questions they wish to certify. Plaintiffs "acknowledge" that whether the Ohio Product Liability Act ("OPLA") abrogates their public nuisance claim is a controlling legal question as to that claim, over which judges have reached "opposite conclusion[s]." Dkt. 4240 ("Opp.") at 5–6 & n.3. Plaintiffs also do not dispute that the scope of pharmacies' corporate-level dispensing duties under the Controlled Substances Act ("CSA"), if any, presents a novel legal question. Finally, Plaintiffs do not dispute that whether the juror misconduct in this case requires a mistrial is a substantial question (unsurprisingly, given

1

that their *own counsel* initially agreed mistrial was appropriate), and they failed to address, let alone refute, Sixth Circuit precedent establishing that how to apply the mistrial standard to undisputed facts is a question of law properly subject to interlocutory appeal.  And reversal on any of these three questions would avoid a pointless remedies trial.

Rather than address these standards, Plaintiffs oppose Defendants' motion for certification by inventing their own standards found nowhere in the statute.  First, they assert that "[e]ven where the movant can demonstrate all three factors required for certification" under § 1292(b), certification should be "sparingly granted."  Opp. 3.  But when the criteria are met, district courts have a duty to certify an interlocutory appeal.

Second, Plaintiffs assert that Defendants' motion is "untimely" as to the OPLA and CSA rulings, Opp. 4, even though the statute does not fix a deadline.  And the changed posture of the case explains why the Court's earlier denials of certification no longer apply: The Court believed certification of its OPLA ruling was premature prior to discovery while other claims were being actively litigated, and the Court denied certification of its CSA ruling primarily because the CSA issue would not dispose of the distribution claims that Plaintiffs have since abandoned.

Third, Plaintiffs assert that an immediate appeal will not terminate the entire litigation because certain bifurcated claims "potentially remain to be tried."  Opp. 6.  But § 1292(b) requires only that the appeal "*may materially advance* the ultimate termination of the litigation," not end it.  28 U.S.C. § 1292(b) (emphasis added).  In any event, Plaintiffs secured a separate trial of their public nuisance claim by telling the Court that resolution of that claim *will* help resolve the entire litigation.  Dkt. 3310 at 2, 5–6.  They cannot now suggest that resolution of their public nuisance claim would not significantly advance the litigation.

The Court should grant Defendants' motion for certification.

## I. A District Court Has a Duty To Certify an Interlocutory Appeal When the Statutory Criteria Are Met.

Under § 1292(b), district courts have a "duty . . . to allow an immediate appeal to be taken when the statutory criteria are met." *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009) (explaining that "district courts should not hesitate to certify an interlocutory appeal" when "[t]he preconditions for § 1292(b) review" are "satisfied"). This duty follows from the plain language of § 1292(b), which provides that when a district court determines the three criteria are met, the court "*shall* so state." 28 U.S.C. § 1292(b) (emphasis added); *cf. Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1320 (2020) ("The first sign that the statute imposed an obligation is its mandatory language: 'shall.'").

Despite this clear direction from the statute and case law, Plaintiffs assert that "[e]ven where the movant can demonstrate all three factors required for certification," certification should nevertheless be "sparingly granted." Opp. 3. That is wrong. In each case cited by Plaintiffs denying certification under § 1292(b), *see id.*, the court found that the standards were *not* met.[1] Because Defendants have met the § 1292(b) criteria—as explained below—the Court should certify an interlocutory appeal.

---

[1] *See In re Allstate Ins. Co.*, No. 09-105, 2010 U.S. App. LEXIS 27325, at *2 (6th Cir. Feb. 1, 2010) ("We are not persuaded that an immediate appeal will materially advance the ultimate termination of the litigation."); *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) ("the issue presented in this case is not a controlling legal issue"); *Kraus v. Bd. of Cty. Rd. Comm'rs for Kent Cty.*, 364 F.2d 919, 922 (6th Cir. 1966) ("The granting of an interlocutory appeal in the present case would not 'materially advance the ultimate termination of the litigation.'"); *Montgomery Cty. Bd. of Cty. Comm'rs v. Cardinal Health, Inc.*, No. 18-OP-46326, 2021 WL 4198171, at *1 (N.D. Ohio Sept. 15, 2021) ("The first factor under § 1292(b) . . . is lacking."; *Adell v. Cellco P'ship*, No. 1:18CV623, 2019 WL 5285627, at *1 (N.D. Ohio Oct. 18, 2019) ("all the requirements for certification are not satisfied here").

**II. Defendants' Motion Is Timely and Appropriate.**

Plaintiffs are also wrong that Defendants' motion is "untimely" or "redundant" with earlier filings because the motion seeks certification of the Court's 2020 order ruling on the OPLA and CSA issues. Opp. 4. The motion is both timely and appropriate, given the changed posture of this litigation since the earlier filings, made before trial and before Plaintiffs dropped their distribution claims.

Section 1292(b) does not fix a deadline for moving for certification in the district court. *Richardson Elecs., Ltd. v. Panache Broad. of Penn., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000) ("section 1292(b) . . . has no fixed deadline for seeking the permission of the district court to take an appeal"); *accord Ahrenholz*, 219 F.3d at 676. It is no surprise, then, that Plaintiffs have not cited *any* authority for their argument. *See* Opp. 4.

Nor have Defendants slept on these issues. The Court denied earlier motions for § 1292(b) certification of the Court's OPLA and CSA rulings, and Defendants timely moved the Court to reassess certification of those rulings given the changed posture of this case.[2]

The Court previously denied certification of its OPLA ruling because multiple claims were being actively litigated at the motion-to-dismiss stage, and the Court believed that "discovery to support the theories of liability [Plaintiffs] have alleged" would instead be "the best way to advance the process." Dkt. 1283 at 2. But now the litigation has advanced well past discovery and is

---

[2] Defendants filed the prior motion for certification of the CSA ruling for interlocutory appeal. Dkt. 3439. Different defendants filed the prior motion for certification of the OPLA ruling. Dkt. 1280. If that request had been granted, however, all defendants in that case—which included Defendants here—could have appealed. *See* 28 U.S.C. § 1292(b) (following certification of an order for interlocutory appeal, "[t]he Court of Appeals . . . may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order"). There was thus no need for Defendants to file a duplicate certification motion at that time, so Plaintiffs are wrong to suggest that Defendants "should have" done so to preserve their right to seek certification of an interlocutory appeal of the OPLA ruling now. Opp. 4.

4

focused solely on Plaintiffs' public nuisance theory, for which—no one disputes—the OPLA issue is dispositive.

Likewise, the Court's reasons for denying certification of its CSA ruling no longer apply in the litigation's current posture. Most notably, the Court had previously relied on the fact that the CSA issue would not dispose of Plaintiffs' distribution claims, Dkt. 3499 at 8–9, which Plaintiffs have since abandoned.

In their supporting memorandum, Defendants explained these reasons for why the Court's denial of the earlier motions for certification no longer apply. Dkt. 4205 ("Mot.") at 7, 12–13. Plaintiffs are thus mistaken in asserting that Defendants offered "no explanation" for why certification of an interlocutory appeal is appropriate now, despite the Court's prior denials of certification. Opp. 2, 4.

In sum, there is no statutory deadline for seeking certification under § 1292(b), and Defendants have timely renewed the request for certification of an interlocutory appeal of the OPLA and CSA rulings given the changed posture of this case. And Plaintiffs do not dispute that Defendants' motion is timely with respect to the Court's juror misconduct ruling. Defendants' motion is thus timely and appropriate.

## III. The Statutory Criteria for Interlocutory Appeal Are Met.

Plaintiffs' arguments about whether § 1292(b)'s criteria are met are also meritless. The criteria are met with respect to each of the three questions Defendants seek to certify.

### A. The OPLA Abrogation Question Meets the § 1292(b) Criteria.

Plaintiffs concede that the OPLA issue is a "question of law" that is "controlling" as to their public nuisance claim. Opp. 5 n.3. Yet Plaintiffs assert that the issue is not controlling "with regard to the litigation as a whole in light of Plaintiffs' remaining, bifurcated claims." *Id.* That is

5

an erroneous distraction.  "[T]he resolution of an issue need not necessarily terminate an action . . . to be 'controlling.' . . . Rather, all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court."  *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992) (internal quotation marks omitted).

The OPLA question is substantial: Plaintiffs do not dispute that two federal judges in this case have disagreed on the issue; that one state court has ruled the other way; and that this Court deemed its own position on the issue "plausible, if not likely," rather than certain.  *See* Mot. 5–6 (quoting Dkt. 1203 at 27).  Finally, Plaintiffs also do not dispute that reversal on the OPLA issue would dispose of their public nuisance claim and make a long, resource-intensive remedies phase unnecessary (*see* Mot. 3, 7)—which makes plain that the appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).

Pointing to bifurcated claims that "potentially remain to be tried," Plaintiffs assert that an immediate appeal of the OPLA issue may not materially advance termination of the litigation, on their view that this prong requires the appeal to help resolve all claims (if not "the entire opioids MDL").  Opp. 6 & n.4.  That is wrong.

Plaintiffs misstate the standard for § 1292(b)'s advance-termination requirement and cite no authority for their misguided interpretation.  Section 1292(b) requires that an immediate appeal "*may materially advance* the ultimate termination of the litigation," 28 U.S.C. § 1292(b) (emphasis added), not that it *will* terminate the litigation.  *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("neither the statutory language nor the case law requires that if the interlocutory appeal should be decided in favor of the appellant the litigation will end then and there, with no further proceedings in the district court").  Courts routinely explain that this

6

requirement is met, among other ways, if the immediate appeal could "shorten the time required for trial."  16 Wright & Miller, Fed. Prac. & Proc. § 3930 (3d ed. Apr. 2021 update); *see also McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("This is not a difficult requirement to understand.  It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation.").

Even less credible is Plaintiffs' passing assertion—again made with no supporting authority—that the advance-termination requirement means the appeal must terminate "the entire opioids MDL."  Opp. 6 n.4.  This novel view of § 1292(b) within an MDL is inconsistent with § 1292(b)'s "materially advance" language, and Defendants can find no support for it.  On the contrary, courts have observed that "interlocutory appeals may often be *more appropriate* in multi-district litigation ('MDL') than in ordinary litigation."  *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-MD-02878, 2020 WL 759369, at *1 (D. Mass. Feb. 14, 2020) (emphasis added).

The proper advance-termination standard requires that the immediate appeal may "materially advance" *this* case, not the MDL as a whole, and it does not require ending the case.  That standard is met here.  Plaintiffs do not dispute that reversal on the OPLA issue would knock out their public nuisance claim and avoid a remedies trial.  *See Sterk*, 672 F.3d at 536 (holding that it was "enough" to meet the advance-termination requirement where the appeal was dispositive with respect to one of a class action's two claims, "especially since that claim appears to be the plaintiffs' main one, with the [other] claim perhaps just a life jacket").

Moreover, Plaintiffs' arguments for a separate trial of their public nuisance claim in the first place depended on their representations to this Court that resolution of their public nuisance claim may obviate the need for trying their bifurcated claims.  *See* Dkt. 3310 at 2, 5–6.  The Court

7

relied on their representations in permitting trial to proceed in a gerrymandered fashion over Defendants' objections. Dkt. 3315 at 2–3 (concluding that "bifurcation may result in all parties avoiding the cost of litigating the other claims in this case"). Plaintiffs cannot have it both ways: first insisting that only their public nuisance claim might need to be tried (to obtain a verdict through their favored trial structure) but then later insisting that resolution of the public nuisance claim would not materially advance the litigation because any number of other claims must still be tried (to avoid appellate review of that verdict).

In sum, the Court's OPLA abrogation ruling meets the § 1292(b) criteria, and Plaintiffs have offered nothing to support a contrary conclusion. It is a concededly controlling legal question as to the public nuisance claim. Judges have disagreed on the issue. And a Sixth Circuit reversal would indisputably eliminate the public nuisance claim and any need for a remedies phase. This Court ordered a Track 3 bellwether trial to decide "only public nuisance claims," Dkt. 3261 at 2, and that is exactly what an appeal on the OPLA issue would do.

**B. The CSA Dispensing Duties Question Meets the § 1292(b) Criteria.**

The Court's ruling on pharmacies' dispensing duties under the CSA also warrants certification under § 1292(b). Again, Plaintiffs' silence speaks volumes. They do not dispute this is a question of law. *See* Mot. 11. Nor do they dispute that it is a question of first impression and that "[t]he Court itself has recognized that the question of corporate-level dispensing obligations under the CSA presents a novel question that may be appropriate for certification" in an appropriate posture. *Id.* at 11–12.

Plaintiffs instead argue that the CSA issue is not a "controlling" question that may materially advance termination of the litigation. Opp. 7. They are mistaken. Plaintiffs do not dispute that reversal on this issue would prevent them from establishing an absolute nuisance based

8

on unlawful conduct. *See* Mot. 11. Plaintiffs are wrong that they could rely on intentional, culpable conduct instead of a CSA violation to show an absolute nuisance. They proved no such conduct. *See* Dkt. 4202 at 12–15. Moreover, Plaintiffs' only theory at trial of Defendants' intentional conduct related to Defendants' dispensing conduct, but any claim that Defendants should be liable for intentionally dispensing opioids in a manner that complied with the CSA would be preempted. *See id.* at 13–14. Thus, necessarily, the intentional prong of Plaintiffs' claim also rests on the notion that Defendants' dispensing conduct violated the CSA. And that claim undeniably depends on the Court's ruling regarding Defendants' duties under the CSA. In any event, the verdict form did not differentiate between the unlawful conduct and intentional, culpable conduct prongs. *See* Dkt. 4176. Reversal on the CSA question would thus require, at minimum, setting aside the jury's verdict because the jury could have impermissibly relied on the unlawful conduct prong. Finally, Plaintiffs' argument that the CSA issue will not resolve their bifurcated claims, Opp. 8, is irrelevant and misleading for the reasons already given. *See supra* 6–8.[3]

### C. The Juror Misconduct Question Meets the § 1292(b) Criteria.

The Court's denial of a mistrial despite the undisputed facts of juror misconduct also meets the § 1292(b) criteria. Plaintiffs do not dispute whether this is a substantial question, which is unsurprising given that their *own counsel* acknowledged—and then reiterated—that "mistrial is appropriate" before later changing course. Dkt. 4065 at 3769–70 (Oct. 22 trial tr., vol. 14); *see also* Mot. 9–10. Nor do they dispute that the juror misconduct issue is a "controlling" question,

---

[3] Plaintiffs' theory that the CSA imposes a duty on the corporate parent of a pharmacy to maintain systems to identify prescriptions that bear "red flags" indicating a risk that the prescriptions may be diverted for misuse will, as a practical matter, require significant changes to traditional pharmacy practice. *See* Dkt. 4202 at 9 (explaining that Plaintiffs' expert could not identify a single pharmacy anywhere in the world that actually follows the method he proposed). The practical impact of the Court's CSA ruling on the day-to-day operation of pharmacies underscores why interlocutory review is essential.

9

given that the whole reason for a mistrial is that retrying the case before a jury not prejudiced by the misconduct could lead to a different outcome. *See* Mot. 8.

Instead, Plaintiffs argue this is not "a pure question of law" and that it could not materially advance termination of the litigation. Opp. 8. But Plaintiffs fail to address, let alone refute, the Sixth Circuit authority cited in Defendants' memorandum establishing that "[m]ixed questions of fact and law are treated as questions of law for purposes of an interlocutory appeal." Mot. 8–9 (quoting *Flint ex rel. Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001)). Because the facts establishing juror misconduct are *undisputed*, the only part of the question left for the Court of Appeals to review is whether the Court applied the law correctly. And a reversal on that question would materially advance the termination of litigation. The juror misconduct in this case requires a new trial on liability. Immediate appellate review of the issue will allow the parties to proceed directly to that new trial, without first wasting time and resources on a remedies phase based on the prejudiced jury's liability verdict. *See* Mot. 10.

## CONCLUSION

The Court's OPLA, CSA, and juror misconduct rulings satisfy the § 1292(b) criteria, and the Court should certify for interlocutory appeal its order denying Defendants' motion to dismiss (Dkt. 3403) and its order denying a mistrial based on juror misconduct (Dkt. 4078 at 3785–89 (Oct. 25 trial tr., vol. 15)).

Dated: January 26, 2022

Respectfully submitted,

/s/ John M. Majoras
John M. Majoras
Benjamin C. Mizer
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zucerkman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*

11

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
Sharon Desh
Sten Jernudd
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com
sharon.desh@bartlitbeck.com
sten.jernudd@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co., Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system on all counsel of record on January 26, 2022.

/s/ John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

*Counsel for Walmart Inc.*
