# EXHIBIT B



Eric R. Delinsky
PARTNER
Zuckerman Spaeder LLP
edelinsky@zuckerman.com
202-778-1831

January 18, 2022

**VIA E-MAIL**

Special Master David R. Cohen
24400 Chagrin Blvd.
Suite 300
Cleveland, OH  44122
Email:  David@SpecialMaster.Law

      Re:    *In Re: National Prescription Opiate Litigation*, Case No. 1:17-md-02804, Track Three

Dear Special Master Cohen:

On behalf of CVS, Walgreens and Walmart, I write to request an order compelling the Track Three plaintiffs to supplement their prior productions and disclosures as required by Rule 26(e) and to provide the discovery specified in Pharmacy Defendants' Requests for Production and Interrogatories Relating to the Track Three Abatement Phase (the "Requests"). A copy of the Requests is attached at Exhibit A. As the Special Master knows through a teleconference with the parties and from being copied on the relevant email communications, the parties met and conferred, but reached an impasse.

**A. Guiding Legal Principles**

The following principles guide disposition of this motion:

First, the task before the Court is to craft a plan to abate the alleged nuisance as it exists in 2022. It may not draft a plan to address a nuisance as it may have existed a year ago, two years ago, or more. Updated abatement discovery therefore is indisputably relevant.

Second, plaintiffs are obligated by Rule 26(e) to supplement their document production when, as here (due to the passage of time), it is not current and therefore (given the remedy sought) is incomplete in material respects.

Third, although many of the requests at issue here were served prior to the fact discovery cut-off, some were not. But a party always may propound new requests for discovery, after the fact discovery cut-off, for good cause. *See* Fed. R. Civ. P. 16(b)(4). This standard is met when, as here, there is an entirely separate phase of the proceedings, when the requests concern entirely new events or could not feasibly have been answered earlier, and when the requests are propounded far in advance of the next proceeding.

Fourth, relevance for discovery purposes is not limited by the manner in which plaintiffs elect to present their case. So, for instance, if plaintiffs wish to rely on stale discovery (perhaps because it is more favorable to them), it does not mean defendants must. If plaintiffs wish to continue to rely on aggregate proof (even at the remedy phase), it does not mean defendants must. If plaintiffs choose to put forth a plan that does not differentiate between licit and illicit opioids in any respect, it does not mean that defendants may not present that distinction and may not, at the very least, collect and make a record of the proof that allows for differentiation. If plaintiffs maintain that the harm they seek to abate are indivisible, it does not mean that defendants cannot collect discovery to show that it is apportionable. There are many more examples. But the bottom line is that plaintiffs cannot use their own trial decisions, and their own positions, to curtail the defense and the discovery needed to present it.

**B. Requests to Bring Current Prior Productions**

The pharmacies set out certain requests for supplementation of prior productions at pp. 4-7 of the Requests. These requests are based on prior requests for production that were issued before the close of fact discovery. They merely ask plaintiffs to update their productions, given that plaintiffs' productions end in May 2020 and the abatement remedy must be based on the conditions in 2022.

Pursuant to these requests, the pharmacies request an order compelling the following updates:

     1.    Updated custodial files for the fact witnesses who plaintiffs intend to call at the abatement trial, including but not limited to April Caraway of the Trumbull County Mental Health & Recovery Board (Supplementation Request No. 2) and Kim Fraser of the Lake County ADAMHS Board (Supplementation Request No. 5);

     2.    Updated claims data from both the Trumbull County Mental Health & Recovery Board and the Lake County ADAMHS Board (Supplemental Request Nos. 3 and 6). This data shows the number of patients treated for opioid use disorder whose treatment was paid for by each Board and the amount each Board paid for that treatment on a patient-by-patient and an aggregate basis; and,

     3.    Particular documents, which plaintiffs produced for prior years, which are itemized in Supplemental Request Nos. 4 and 7. These documents, and their relevance, are identified and summarized in Exhibit B.

In addition, the pharmacies seek updated productions and interrogatory responses as required by the Rule 26(e) duty to supplement. This includes, by way of example:

     4.    Updated productions of relevant material from the other non-custodial and custodial files previously searched. This would capture documents like Plaintiffs' Trial Ex. 13052 from Captain Tony Villanueva's custodial files, which identify drugs other than prescription

opioids as the main drugs of concern and which contain statistics differentiating between licit and illicit opioid use;

     5.     Updated responses to Interrogatory No. 19 from Pharmacy Defendants' First Set of Interrogatories to Plaintiffs (served 18 months ago in June 2020). This interrogatory calls for identification of all persons with relevant knowledge and therefore requires plaintiffs to identify, among other individuals, the persons who they seek to treat through their proposed abatement plans;[1] and,

     6.     As requested in Supplemental Request Nos. 2 and 5, updated productions from the Trumbull County Mental Health & Recovery Board and the Lake County ADAMHS Board.

**C. Requests for Discovery on Recent Settlements**

The Requests also seek information regarding opioid-related settlements and bankruptcy resolutions that plaintiffs have entered, joined, or otherwise would benefit from. Judge Polster stated during the January 3, 2022 teleconference that these resolutions are relevant and that he will consider them in rendering his decision on abatement. If plaintiffs' theory of abatement is allowed, the settlements—and plaintiffs' plans for using the settlement funds—are relevant to, among other issues, set off and to what abatement needs, if any, remain.

Significantly, these resolutions were not reached until *after* the March 2021 close of fact discovery. Requests seeking discovery on these resolutions, therefore, could not have been propounded during the discovery period.[2]

Specifically, the Requests seek:

     1.     Production of the settlement agreements with Giant Eagle and Rite Aid, which (unlike the others) are not publicly available. *See* Additional Request for Production 1 (Ex. A at 7).

     2.     Interrogatory responses specifying (i) the amounts each plaintiff expects to receive from each settlement, (ii) the timing of the payments, and (iii) how the funds will be allocated and used. *See* Interrogatory Nos. 1-3 (Ex. A at 8). For settlements involving multiple counties and

---

[1] This information may be provided at this juncture in deidentified form, and the pharmacies are prepared to confer with plaintiffs on how to accomplish this.

[2] The distributor and Johnson & Johnson global agreements were announced in July 2021. Plaintiffs' settlement with Rite Aid was reached in August 2021. The Purdue bankruptcy plan was approved by the bankruptcy judge in September 2021 and still remains subject to appeal. Plaintiffs' settlement with Giant Eagle was announced in October 2021. The Mallinckrodt bankruptcy resolution remains pending.

claimants, not even the amount to be received by each Track Three plaintiff may be apparent from the face of the agreements.

      3.    Documents and communications related to the resolutions, including without limitation materials related to plaintiffs' allocations and expected use of any funds. *See* Additional Request for Production 1 (Ex. A at 7).

The pharmacies seek an order compelling production of all three categories of discovery.

**D. Additional Interrogatories**

Finally, the pharmacies propounded two additional interrogatories to which plaintiffs must respond.

First, Interrogatory No. 4 (Ex. A at 8) asks each plaintiff to identify the amount of the "oversupply" of prescription opioids in its county. This interrogatory adopts the language of the final verdict form. It is relevant to, among other things, trying to identify the portion of opioid dispensing that purportedly needs to be abated and trying to ascertain what restrictions, if any, to impose on dispensing via an abatement plan.

Second, Interrogatory No. 5 (Ex. A at 9) asks each plaintiff to identify the persons who they seek to treat under their respective abatement plans.[3] The interrogatory asks plaintiffs to supply additional information about each such person—including, for instance, (i) whether the person needs treatment for prescription opioids or for another substance, (ii) if the treatment is for another substance, whether the person ever used prescription opioids, and (iii) if the person currently or formerly used prescription opioids, where and how they obtained them.

If the Court determines, over defendants' objection, that abatement may encompass individual treatment, information about the patients who require treatment would be indisputably relevant to the scope, breadth and workings of any abatement plan. It further is relevant to the question of apportionment. By way of example and example only, no one disputes that the pharmacies should not be liable for treating persons who only have abused or been addicted to illicit drugs; the requested information would be relevant to eliminating such persons from any plan.

Significantly, given that the most important part of any plan to treat addiction would be the identity of the persons needing treatment, the identity of these persons—subject to reasonable de-identification procedures—should have been included in plaintiffs' abatement plan. Plaintiffs also should have identified these persons (again, subject to reasonable deidentification procedures) in

---

[3] Given privacy interests, the pharmacies do not seek, at this juncture, patient names and are prepared to confer with plaintiffs on how to provide the information in a deidentified form.

response to Interrogatory No. 19 from Pharmacy Defendants' First Set of Interrogatories to Plaintiffs, which was served 18 months ago.

Insofar as plaintiffs claim that they are not required to respond to these two interrogatories because they were propounded after the close of fact discovery, plaintiffs are wrong. The Court itself recognized that additional discovery is appropriate for the abatement phase, ordering plaintiffs on its own initiative to provide discovery on certain costs. *See* Order Regarding Abatement Proceeding (Jan. 4, 2022) (Doc. 4220). And for good reason—additional discovery, narrowly tailored to abatement, is plainly appropriate. We are in a new phase of the case, which necessarily is informed by the lengthy trial that preceded it. In this regard, the two interrogatories at issue here are narrowly tailored to abatement, were propounded nearly five months before the upcoming trial, and impose no undue prejudice on plaintiffs.

Furthermore, there is good reason why the two interrogatories were not propounded previously. As best as we can tell, the "oversupply" language on which the jury relied in the verdict form— which is the subject of Interrogatory No. 4—was first proposed by the Court, in draft form, *after* the close of fact discovery (via email from the Special Master dated April 27, 2021). It was not finalized until trial.

Likewise, with regard to Interrogatory No. 5 (persons requiring treatment), the information should have been—but was not—included in plaintiffs' abatement plan. It also was encompassed by the pharmacies' initial Interrogatory No. 19, served in 2020. And in any event, given the present-day nature of the abatement remedy, it is indisputably appropriate. People move, people finish treatment, people enter treatment, etc. Accordingly, the persons in need of treatment today and their unique circumstances could not have been ascertained earlier.

\* \* \* \* \*

For the foregoing reasons, the pharmacies respectfully request an order compelling plaintiffs to provide the discovery sought in the Requests and required by Rule 26.

                                                Respectfully Submitted,

                                                */s/ Eric R. Delinsky*

                                                Eric R. Delinsky