# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**CVS'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW UNDER RULE 50(B) OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL UNDER RULE 59**

CVS submits this reply in support of its Renewed Motion for Judgment as a Matter of Law or, in the alternative, Motion for a New Trial. Dkt. 4207. As set forth below, a reasonable jury could not have a legally sufficient evidentiary basis to find CVS liable for causing an ongoing public nuisance in Lake and Trumbull Counties. Therefore, the Court should grant judgement as a matter of law ("JMOL") in CVS's favor or, in the alternative, grant CVS a new trial because the verdict was against the weight of the evidence. CVS also joins Defendants' Joint Reply in Support of Their Renewed Motion for Judgment as a Matter of Law (Dkt. 4256) and Defendants' Joint Reply in Support of Their Motion for a New Trial (Dkt. 4258).

## I. THIS COURT SHOULD ENTER JMOL UNDER RULE 50(B) IN CVS'S FAVOR.

### A. CVS Did Not Engage in Intentional or Unlawful Conduct.

Contrary to Plaintiffs' contentions, there is no legally sufficient evidentiary basis from which a reasonable jury could have found that CVS acted intentionally or unlawfully with respect to its dispensing of prescription opioid medications in Lake and Trumbull Counties. Plaintiffs do not identify any evidence that a CVS pharmacist in Lake or Trumbull County ever filled a single illegitimate opioid prescription, let alone that a pharmacist did so knowingly or, under the Court's

standard (which CVS objects to), with willful blindness.  That alone requires judgment in CVS's favor.

In an attempt to make up for this shortcoming, Plaintiffs contend that the volume of prescription opioid medications dispensed by CVS in Lake and Trumbull Counties is enough to demonstrate that its dispensing was intentional or unlawful.  Dkt. 4241 at p. 55.  The volume of medications dispensed, however, does not establish that CVS acted intentionally or unlawfully— far from it.  Plaintiffs cite no law restricting the volume of prescription opioid medications a pharmacy may dispense and for good reason—no such law exists.  The evidence is undisputed that CVS dispensed only prescription opioid medications that were approved by the FDA as safe and effective, that were manufactured within the annual production quotas set by the DEA to meet legitimate medical need, and that were prescribed by doctors or other medical practitioners registered with DEA.  Dkt. 4202 at 13-14.  The evidence also is undisputed that the overwhelming majority of medications dispensed by CVS pharmacies in Lake and Trumbull Counties were not prescription opioids or even controlled substances.  Over 87% of them were non-controlled substances—medications that are not even regulated by DEA.  CVS-MDL-4339; *see also* CVS-MDL-4342a; CVS-MDL-4968; Tr. [Dkt. 4132] at 6586:2-5.

The evidence at trial further established that despite possessing detailed information about the volume of prescription opioid medications shipped to and dispensed by CVS pharmacies in Lake and Trumbull Counites—information that, according to Plaintiffs, demonstrates unlawful conduct—there was no evidence that the DEA nor the Ohio Board of Pharmacy ("Ohio BOP") ever revoked or suspended the license of any CVS pharmacy in Lake or Trumbull Counties.  Dkt. 4207 at p. 12; Tr. [Dkt. 4124] at 6442:6-8; 6443:6-15.  While Plaintiffs criticize the thoroughness of the Ohio BOP's inspections, Dkt. 4241 at p. 56-57, they do not dispute that the Ohio BOP

possessed this information, nor do they dispute that the Ohio BOP investigated and revoked the license of a non-CVS pharmacy in Trumbull County. Tr. [Dkt. 4096] at 4582:5-9.

Plaintiffs then provide a repetitive laundry list of CVS's so-called failures in an effort to show that CVS's dispensing of prescription opioid medications in Lake and Trumbull Counties was unlawful or intentional, but, as explained below, none provide a basis from which a reasonable jury could have found that CVS engaged in unlawful or intentional conduct:

- Plaintiffs argue that CVS failed to maintain effective controls against diversion "in its dispensing of prescription opioids" by pointing to a few instances in which recordkeeping errors caused CVS pharmacies in Lake and Trumbull Counties to report prescription opioids as lost or stolen to the DEA and the Ohio BOP. Dkt. 4241 at 58. But there was no evidence of any unlawful dispensing, Tr. [Dkt. 4132] at 6569:18-19, the DEA and the Ohio BOP reviewed the situation and did not take any action against CVS, Tr. [Dkt. 4132] at 6588:3-6589:6, and this Court has stated that this case is not about the theft of prescription opioids. Tr. [Dkt. 4090] at 4034:7 & 4335:13-15.

- Plaintiffs contend that CVS failed to implement policies, programs, and tools related to the dispensing of controlled substances in a timely manner. Dkt. 4241 at p. 59-60. But contrary to the impression that Plaintiffs give, there are no laws requiring CVS to have written policies on the dispensing of controlled substances, nor are there laws requiring CVS to have the programs and tools that it developed to monitor and assist its pharmacies' dispensing. Tr. [Dkt. 4124] at 6433, 6436-37. And, in any event, the evidence at trial established that CVS has long had policies addressing the dispensing of controlled substances. *See, e.g.*, P-15601 (2004 policy); P-23305 (2008 policy); P-20699 (2010 policy). Contrary to Plaintiffs' claim that CVS failed to provide its

3

pharmacists with the data they needed to exercise corresponding responsibility, Dkt. 4241 at p. 64, the evidence showed that, since the late 1990s or early 2000s, CVS has made available to its pharmacists, through its patient-profile system, two years of chain-wide prescription history for each patient presenting a prescription, from which a pharmacist could identify and resolve potential red flags. Tr. [Dkt. 4115] at 5679:4-16. The evidence also demonstrated that, since 2011, CVS has developed, on its own or with the assistance of third-party consultants, innovative programs to monitor its pharmacies' dispensing of controlled substances and cutting-edge tools to assist its pharmacists in exercising corresponding responsibility. Dkt. 4207 at p. 14-17.

- Plaintiffs assert that, "[d]espite these repeated warnings and sanctions, CVS made little to no effort to substantively change its dispensing policies and procedures until contractually obligated to do so under its settlements with the DEA," referencing the settlement agreement that resolved the *CVS Holiday* matter. Dkt. 4241 at 74. That is plain wrong—the settlement agreement, which was introduced into evidence over CVS's objection at P-08954, did not require CVS to make any changes to its dispensing policies and procedures.

- Plaintiffs contend that CVS metrics, including bonuses, interfered with its pharmacists' efforts to comply with the law. Dkt. 4241 at 61. These bonuses, however, were "small," and there is no evidence that they ever impacted a pharmacist's decision to dispense a prescription opioid medication. Tr. [Dkt. 4115] at 5744:9-20. Indeed, Plaintiffs' own expert, Carmen Catizone, agreed that he did not "know one way or another whether or not pharmacists were incentivized" to overlook red flags. Tr. [Dkt. 4008] at 200. In addition, Schedule II drugs were removed from these bonus metrics

in 2012, and all controlled substances were removed in 2013. Tr. [Dkt. 4115] at 5743. Plaintiffs cite a document, P-19827, for the proposition that there were "complaints from pharmacists that they don't have time to check all these prescriptions for good faith," Dkt. 4241 at 61, but that document was produced by another Defendant and has nothing to do with CVS.

- Plaintiffs argue that CVS failed to mandate that its pharmacists check OARRS every time they filled an opioid prescription. Dkt. 4241 at p. 67. But, as Plaintiffs' opposition makes clear, Ohio did not require pharmacists to check OARRS at all until 2011 and then only required an OARRS check "under certain specific circumstances." *Id.* The evidence is undisputed that CVS required its pharmacists to check OARRS in those circumstances and also in any other circumstances, when necessary to resolve red flags. *See* Tr. [Dkt. 4111] at 5408-5409; CVS-MDL-00854; P-15601; P-15632. In other words, CVS policy was fully consistent with Ohio law on OARRS checks. There also was no evidence presented at trial that a failure to check OARRS resulted in a CVS pharmacist dispensing an opioid prescription that was not legitimate or that caused harm.

- Plaintiffs claim that CVS filled over 140,000 opioid prescriptions with "red flags" and that, for the vast majority, there was no documentation indicating that the red flags had been resolved. Dkt. 4241 at 68. Plaintiffs rely on the sixteen red flags developed by their expert, Carmen Catizone, but he admitted that even if a prescription had one of his sixteen red flags, that "does not mean that it was written for an illegitimate medical purpose" or that it was "diverted." Tr. [Dkt. 4008] at 1208:19-1209:2; Tr. [Dkt. 4017]

5

at 1429:10-14; Tr. [Dkt. 4032] at 2329:22-25.  Moreover, there is no law requiring pharmacists to document the resolution of red flags. Tr. [Dkt. 4023] at 1774:1-3.

- Plaintiffs contend that CVS permitted its pharmacists to fill prescriptions for "problematic prescribers and pill mills[.]"  Dkt. 4241 at 72.  But there is no evidence that the prescriptions written by those prescribers that were filled by CVS pharmacies in Lake and Trumbull Counties were illegitimate or were diverted.  Evidence presented at trial showed that two of the doctors that Plaintiffs label as "problematic" continue to be licensed by the State of Ohio, Tr. [Dkt. 4115] at 5871:15-19 (Dr. Veres); WAG-MDL-02629 (Dr. Demangone), that CVS suspended one of those doctors, Tr. [Dkt. 4115] at 5808:24-5809:2, and that CVS pharmacists in Lake and Trumbull Counties stopped filling prescriptions written by another one of those doctors, causing him to place a sign in his office instructing his patients not to fill their prescriptions at CVS. Tr. [Dkt. 4132] at 6589:16-6590:18; CVS-MDL-04243 (Dr. Demangone).

- Plaintiffs claim that CVS lobbied against measures that would have helped prevent diversion.  Dkt. 4241 at 72.  There are no laws prohibiting such lobbying, nor is there any evidence that CVS itself engaged in any such lobbying.  To the contrary, the evidence reflects that CVS has advocated for measures that would help prevent the diversion of prescription opioids, including the development of a national prescription drug monitoring program.  Tr. [Dkt. 3995] at 401:7-402:1; Tr. [Dkt. 4115] at 5832:9-23.

- Plaintiffs point to CVS settlements in Florida and Maryland.  Dkt. 4241 at 74.  The Florida settlement involved conduct by two pharmacies in Florida before 2012 and the Maryland settlement involved conduct by a dozen pharmacies in Maryland between

8081869.4

2008 and 2012.  Tr. [Dkt. 4115] at 5871:23-5872:25, 5873:4-15; P-08954; P-08955.  CVS, though, has more than 10,000 pharmacies.  Tr. [Dkt. 3995] at 334:17-19.  And there is no evidence that prescriptions filled by those Florida and Maryland pharmacies years ago were diverted or caused harm in Lake and Trumbull Counties, much less harm that continues today.  Nor did Plaintiffs introduce any evidence that CVS pharmacies in Lake and Trumbull Counties, in Ohio, or even in the Midwest were ever investigated by, or ever entered into a settlement with, DEA.  Tr. [Dkt. 4115] at 5873:22-5874:18.

- Plaintiffs claim that CVS worked with opioid manufacturers to spread false messages about opioids and the treatment of pain.  Dkt. 4241 at 75.  There is no evidence to support this allegation. The only evidence of any purported relationship between CVS and Purdue is a few documents from 2001, one of which is titled "How to Stop Diversion" and, as even Plaintiffs' expert admitted, the document contains no "false information."  Tr. [Dkt. 4000] at 717:10-13.  The other document, from 2011, does not even mention "opioids."  *Id.* at 711:5-9.  And even Plaintiffs' own expert testified that when the National Association of Boards of Pharmacy allowed Purdue to sponsor one of its publications, it did not "detract" from the publication whatsoever. Tr. [Dkt. 4017] at 1462.  Similarly, Trey Edwards, a former Lake County Narcotics agent, testified that there was nothing improper about a Purdue executive teaching a continuing education course for the Lake County Narcotics Agency.  Tr. [Dkt. 4111] at 5386-5388; DEF-MDL-12782.

Plaintiffs have failed to show that a reasonable jury could have found that CVS's dispensing of prescription opioids in Lake and Trumbull Counties violated federal or state law, or

that CVS knew its dispensing in the counties would interfere with a public right.  Therefore, the Court should enter JMOL in CVS's favor.

> **B.   CVS Did Not Cause an Ongoing Public Nuisance in Lake and Trumbull Counties.**

In their opposition, Plaintiffs do not dispute that they failed to introduce evidence at trial that any particular opioid medication dispensed by CVS caused any harm in Lake or Trumbull County, much less any harm that injured the community at-large or any harm that continues to exist today.  Dkt. 4241 at p. 101-103.  This silence speaks volumes and is fatal to Plaintiffs' public nuisance claims.

Plaintiffs point to the quantity of prescriptions filled in the counties and Mr. Catizone's red flag analysis.  But, again, volume alone is insufficient to prove harm, and Mr. Catizone made no attempt to determine whether his red flags identify prescriptions that were likely illegitimate and/or diverted.  Dkt. 4202 at p. 52.  Indeed, he admitted that even if a prescription has one of his sixteen red flags, that "does not mean that it was written for an illegitimate medical purpose" or that it was "diverted"—in other words, it does not mean that the prescription caused any harm.  Tr. [Dkt. 4008] at 1208:19-1209:2; Tr. [Dkt. 4017] at 1429:10-14.  Plaintiffs thus have not established that CVS caused an ongoing public nuisance.

Even if Plaintiffs had shown that any prescriptions were diverted and then caused harm in Lake and Trumbull Counties (again, they did not), the alleged harm would be too remote to establish that CVS caused a public nuisance that continues to exist today.  CVS filled only sixteen percent of the opioid prescriptions in Lake and Trumbull Counties between 2008 and 2018.  CVS-MDL-04352a.  Given CVS's market share, Plaintiffs cannot establish that CVS was a substantial factor in causing an ongoing public nuisance.  WMT-MDL-01541A.  In addition, there were numerous independent actors in the causal chain, including manufacturers who marketed opioid

8081869.4

medications and prescribers who wrote the prescriptions. Dkt. 4202 at p. 27. Plaintiffs attempt to deflect this undeniable fact by suggesting that CVS participated in those other actors' misconduct—an allegation that lacks any evidentiary support.

The Court should hold that, even if CVS engaged in intentional or unlawful conduct (it did not), a reasonable jury could not have found that CVS was a substantial factor in causing a public nuisance that continues to exist in Lake and Trumbull Counties today.

### C. Plaintiffs' Public Nuisance Claim Fails for Many Other Reasons.

1. *The evidence is insufficient to establish Article III or prudential standing to sue CVS.* As stated in CVS's opening brief and this reply, there is no evidence that CVS caused any harm in Lake and Trumbull Counties. For this and the other reasons discussed in the Joint Rule 50(b) Motion and the Joint Reply, the Court should enter JMOL for CVS on the ground that Plaintiffs lack standing to bring public nuisance claims against CVS.

2. *The evidence is insufficient to establish a violation of a public right by CVS.* CVS incorporates Defendants' Joint Reply on these issues. Plaintiffs attempt to distinguish *State ex rel. Hunter v. Johnson & Johnson,* 499 P.3d 719 (Okla. 2021), where the Oklahoma Supreme Court held that opioid manufacturers could not be held liable on a public nuisance theory, because it applies Oklahoma instead of Ohio law misses the mark. Dkt. 4241 at p. 114. Ohio and Oklahoma nuisance law have similar common law origins and require an invasion of a public right, not a private right. *See* Dkt. 4149.

3. *As a licensed and regulated entity, CVS cannot be liable for absolute public nuisance.* Plaintiffs contend that the Court should reject this argument because the Court previously rejected it. Dkt. 4241 at p. 115. CVS recognizes the Court's decision, but nonetheless disagrees and preserves its objections for the reasons previously stated. Dkt. 3340-1 at p. 13-19; 4202 at p. 36-37; Dkt. 4207 at p. 26-27.

9

4. *Plaintiffs' claims against CVS are barred by the statute of limitations.* Plaintiffs argue that their public nuisance claims are not barred by the statute of limitations because the Court previously held that there is no limitations period. Dkt. 4241 at p. 126. CVS recognizes the Court's prior ruling, Dkt. 2568 at p. 6, but it disagrees with the ruling and preserves its objections for the reasons previously stated. Dkt. 1874; Dkt. 3340-1 at p. 36; Dkt. 4207 at p. 27-28.

5. *The evidence is insufficient to establish an ongoing or continuing public nuisance.* Plaintiffs maintain that "[c]ourts commonly find nuisances based on conditions that remain after the nuisance causing activity ceased." Dkt. 4241 at p. 127. But the conditions of any alleged nuisance caused by CVS do not remain. The evidence shows that the current issue in Lake and Trumbull Counties is with illicit drugs. Tr. [Dkt. 4118] at 5983; Dkt. 4202 at p. 30-31. Plaintiffs failed to adduce evidence of an ongoing public nuisance based on the diversion of prescription opioids and therefore the evidence is insufficient to establish an ongoing or continuing public nuisance.

6. *The Evidence is Insufficient to Overcome the Economic Loss Doctrine.* Plaintiffs argue that their public nuisance claims are not barred by the economic loss doctrine because the Court previously held that it does not bar Plaintiffs' claims. Dkt. 4241 at p. 124. CVS recognizes the Court's prior holding but preserves its objections for the reasons previously stated. Dkt. 491-1 at p. 56-57; Dkt. 4202 at p. 46-47; Dkt. 4207 at p. 29; Dkt. 3340-1 at p. 36.

7. *The Evidence is Insufficient to Establish that CVS Controls the Instrumentality of the Nuisance.* Plaintiffs contend that CVS has control over the prescription opioids at the time of the alleged nuisance and that the Court previously rejected Defendants' argument on this issue. Dkt. 4241 at p. 115. CVS recognizes the Court's prior ruling but disagrees with it. CVS preserves its objections to the ruling for the reasons previously stated. Dkt. 4202 at p. 37-38; Dkt. 4207 at

8081869.4

p. 30. The ruling is also contrary to the Oklahoma Supreme Court's decision that a manufacturer could not be held liable for public nuisance because it no longer controlled the opioid medications at issue. Dkt. 4149-1 at p. 20-24.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' Joint Replies, the Court should resolve the issues against the Plaintiffs and grant JMOL in favor of CVS on all claims. If the Court declines to enter JMOL in CVS's favor, it should nonetheless grant CVS a new trial because the jury's verdict was against the weight of the evidence.

Dated: January 31, 2022

Respectfully submitted,

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zuckerman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*