IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>Track Three Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

# WALGREENS' REPLY IN SUPPORT OF ITS RULE 50(B) MOTION FOR JUDGMENT AS A MATTER OF LAW

Plaintiffs barely even attempt to respond to the specific arguments Walgreens made in its motion, filing an omnibus opposition ("Opp.") that mechanically repeats the same conclusory statements as to each Defendant—most of which are entirely beside the point.

In their brief, tellingly, Plaintiffs almost completely ignore the Court's most recent, relevant, and considered statement of the law—the statement of law upon which the jury's verdict was rendered and must be evaluated: the final jury instructions. Dkt. 4206-1. Instead, Plaintiffs construct arguments to defend their own preferred ideas of the law, while saying next to nothing about the gaps Walgreens identified under the law articulated by the Court.[1]

So, for example, despite filing a 117-page brief, Plaintiffs do not dispute:

- That no Walgreens pharmacist ever knowingly filled even one illegitimate opioid prescription in Lake County or Trumbull County.

- That Walgreens never acted with the intent to create an oversupply and diversion of prescription opioids in Lake County or Trumbull County.

- That the opioid crisis in both Lake County and Trumbull County would still exist even in the absence of Walgreens' alleged misconduct.

Under the law as stated in the Court's instructions, these concessions are fatal to Plaintiffs' case and require judgment as a matter of law ("JMOL") in favor of Walgreens. Even where Plaintiffs do try to respond to Walgreens' arguments, their evidence is sparse at best, including on one of the most fundamental gaps in their case: Proof of an ongoing public nuisance in Lake County and Trumbull County made up of an oversupply of prescription—not illicit—opioids and diversion of those same prescription opioids into the illicit market.

For all of these reasons, the Court should grant JMOL in favor of Walgreens.

---

[1] To be clear, Walgreens continues to object to many of the Court's jury instructions. *See* Dkt. 4206 at 1 n.1. Even under those instructions, however, Plaintiffs cannot point to evidence to support a verdict in their favor.

**ARGUMENT**

I.  **NO EVIDENCE OF WRONGFUL CONDUCT BY WALGREENS**

As the Court instructed the jury, to prevail on their public nuisance claim, each Plaintiff had to show that Walgreens caused an ongoing public nuisance of diverted prescription opioids in their county by means of "***unlawful conduct***" or "***intentional conduct***." Dkt. 4206-1 at 17. Plaintiffs have failed to adduce legally sufficient evidence to support either theory.

  A.  **Plaintiffs Cannot Identify Evidence to Support a Finding of Unlawful Conduct by Walgreens in Lake County or Trumbull County.**

To prove unlawful conduct, Plaintiffs had to show that Walgreens violated a "statute, ordinance, or regulation" through its dispensing of prescription opioids in Lake County or Trumbull County. *Id.* at 22. Specifically, pursuant to the Court's instructions, Plaintiffs had to prove violation of the "corresponding responsibility," which requires a showing that Walgreens or its pharmacists "knowingly" filled an "illegitimate prescription"—that is, dispensed a prescription with either (1) actual knowledge of or (2) "deliberate ignorance" or "willful blindness" to its illegitimacy. *Id.* at 23.[2]

In their opposition, Plaintiffs all but concede that they have no evidence that any Walgreens pharmacist in Lake County or Trumbull County ever dispensed an opioid prescription with anything even approaching this heightened scienter. Opp. at 16 (asserting that they need *not* show that "pharmacists knew or were willfully blind" or that "the pharmacists' conduct would satisfy each element to establish a violation of the CSA"). Instead, Plaintiffs argue that the evidence supports a finding that Walgreens as a corporation had a general awareness—based on data in its possession, or the amalgamated knowledge of unidentified individual employees—

---

[2] Walgreens objects to the Court's ruling that *pharmacies*—not just individual *pharmacists*—have a "corresponding responsibility" under the law. Dkt. 4202 at 32-34. But Plaintiffs cannot prove their case regardless.

2

that at least some illegitimate prescriptions were being dispensed somewhere by Walgreens pharmacists and that Walgreens was "willfully blind" by avoiding confirmation of that fact. *Id.*

In their Joint Reply Brief, Defendants explain why Plaintiffs' theory is both bizarre and wrong. But even if Plaintiffs were right, they would still have to identify *actual* illegitimate prescriptions that Walgreens pharmacists *actually* dispensed in Lake County and Trumbull County. Their opposition brief does not identify even one. The closest Plaintiffs get is to point to a single Target Drug Good Faith Dispensing (TDGFD) checklist for a prescription filled in Trumbull County. *See* Opp. at 43 (citing P-23678 and stating that, "according to good faith dispensing checklist, WAG pharmacy in Trumbull County dispensed prescription to patient that appeared visibly intoxicated or under the influence of illicit drugs"). Walgreens addressed this specific prescription at length in its opening brief, explaining why it comes nowhere close to supporting a finding of an unlawful act by the pharmacist. Dkt. 4206 at 5-6. Plaintiffs do not even attempt to respond, nor do they point to any evidence that Walgreens had "corporate awareness" of this prescription or explain how a single prescription dispensed in Trumbull County in 2018—even if illegitimate—could possibly support a verdict in their favor.[3]

In the end, Plaintiffs' entire theory boils down to the undisputed (but plainly inadequate) assertion that Walgreens pharmacists did not always sufficiently document the resolution of certain made-for-litigation "red flags." Opp. at 29-30 ("Documenting the resolution of red-flagged prescriptions, in a clear and understandable manner, is a critical component of implementing effective controls against diversion, and is otherwise required by law."); *id.* at 35-

---

[3] Among the many defects in Plaintiffs' evidence, no reasonable jury could find that (1) a single prescription dispensed in 2018 was a "substantial factor" in creating a public nuisance, (2) wrongly dispensing one prescription (out of hundreds of thousands) constitutes a failure to meet the CSA's "substantial compliance" standard, or (3) a lone prescription in Trumbull County could possibly support a finding of liability as to Lake County.

36 ("Walgreens' pharmacies in the Counties filled thousands of opioid prescriptions presenting red flags without evidence of resolving those red flags."). Entirely missing from Plaintiffs' opposition, however, is a single citation to any statute, regulation, or case to support the critical proposition that documenting the resolution of red flags is, in fact, "required by law." Defendants briefed this point extensively in their opening briefs. Dkt. 4202 at 8, 10-12 (Joint Brief); Dkt. 4206 at 6 (Walgreens' Brief). Plaintiffs have no response.

Unable to dispute that there is no actual legal requirement to document the resolution of "red flags," Plaintiffs are left to argue that documentation is an "important" best practice and that Walgreens' pharmacists should have done it more often, more "accurately," more "explicitly," and more "complete[ly]." *See* Opp. at 29. In theory, failure to document the resolution of "red flags" to the satisfaction of Plaintiffs and their hired-gun experts could suffice—if the CSA and its Ohio analogue required "strict or perfect compliance," or if Plaintiffs were bringing a claim for *qualified* public nuisance based on negligence. Of course, neither of those things is true here. As the Court instructed the jury, the CSA and its Ohio analogue "***do not*** require strict or perfect compliance," rather "[o]nly substantial compliance is required." Dkt. 4206-1 at 22 (emphasis added). And Plaintiffs bring a claim for *absolute* public nuisance, which requires proof of unlawful—not merely negligent—conduct, as Plaintiffs themselves admit. *See* Opp. at 113; *see also* Dkt. 4202 at 1, 3, 11. Thus, Plaintiffs cannot prove unlawful conduct by Walgreens that could support the jury's verdict under the law as the Court articulated it.

### B. Plaintiffs Cannot Identify Evidence to Support a Finding of Intentional Conduct by Walgreens in Lake County or Trumbull County.

To prove intentional conduct by Walgreens, Plaintiffs had to show that Walgreens acted "with the purpose to produce a specific result." Dkt. 4206-1 at 19. That "specific result" must

be the conditions that constitute the alleged public nuisance: "an oversupply of legal prescription opioids, and . . . diversion of those opioids into the illicit market." *Id.* at 17.

Plaintiffs do not dispute that they have no evidence at all that Walgreens intended to create an oversupply of prescription opioids in Lake County or Trumbull County, much less that Walgreens intended that those prescription opioids be diverted into the illicit market, resulting in abuse, misuse, addiction, overdose, and death. While Plaintiffs complain that Walgreens did not do "enough," they do not deny that the evidence at trial showed that Walgreens continually updated and improved its policies, procedures, and tools to prevent diversion, *see* Dkt. 4206 at 3 n.2—actions that cannot be reconciled with a finding of intentional conduct.

Instead, Plaintiffs seem to think they can carry their burden simply by proving "that Walgreens' dispensing of opioids into Lake and Trumbull Counties was intentional." Opp. at 36. Plaintiffs do not even attempt to defend—and unsurprisingly cite no authority to support—such a theory, which is plainly contradicted by Ohio law and this Court's instructions. Dkt. 4202 at 12-13. Walgreens cannot be liable for a public nuisance because it intentionally dispensed FDA-approved opioid medications to patients with prescriptions from licensed prescribers.

In fact, in their opposition, Plaintiffs make clear that they really have no independent theory of "intentional conduct" at all, devoting only a single paragraph to this theory, Opp. at 13, while spending more than half a dozen pages on "unlawful conduct," *id.* at 13-19. Indeed, Plaintiffs' "evidence" of Walgreens' "intentional conduct" just regurgitates their allegations of "unlawful conduct." *See, e.g.*, *id.* at 36 ("Walgreens knew and understood ***its obligations under the CSA and Ohio law*** related to the dispensing of prescription opioids."); *id.* at 37 ("Walgreens knew that ***by failing to comply with its legal obligations*** regarding the dispensing of prescription opioids, abuse and diversion of those opioids was substantially certain to occur."); *id.* at 38

5

("Walgreens knew and understood its dispensing policies and procedures, and its implementation of same, *did not comply with its legal obligation*.") (all emphases added).

Thus, Plaintiffs' "intentional conduct" theory fails for lack of sufficient evidence of intent as defined by the Court, and for all the same reasons as their "unlawful conduct" theory.

## II.  A COMPLETE FAILURE TO PROVE CAUSATION AS TO WALGREENS

As Walgreens has explained, the Court's instructions required Plaintiffs to do far more than adduce sufficient evidence of unlawful or intentional conduct by Walgreens in Lake County or Trumbull County.  *See* Dkt. 4206 at 7-8.  They were required to link the specific conduct found to be unlawful or intentional to the alleged public nuisance and then show that that same intentional or unlawful conduct was a "substantial factor" in creating the nuisance.  In addition, the public nuisance at the end of that causal chain had to be a present-day public nuisance made up of an oversupply of legal prescriptions opioids being diverted into the illicit market.  Nothing in Plaintiffs' opposition brief even attempts to draw these critical connections.

### A. No Link Between Any Wrongful Conduct by Walgreens and the Alleged Public Nuisance in Lake County or Trumbull County.

As set forth above, Plaintiffs have not managed to identify any unlawful or intentional conduct by Walgreens in Lake County or Trumbull County.  *Supra* at 2-6.  Even if they had, however—even if imperfect "systems" or "policies" or a failure to document the resolution of "red flags" could be a predicate unlawful or intentional act—Plaintiffs' claim would fail nonetheless.  That is so because they still cannot point to any evidence that any opioid prescription filled by Walgreens—including any prescription Plaintiffs' expert flagged and claimed was not adequately documented—was in fact illegitimate, much less was actually diverted and caused harm in either county.  This should end of the inquiry.

6

### B. No Showing that Any Conduct by Walgreens was a "Substantial Factor" in Creating a Public Nuisance under Ohio Law and the Restatement.

To prove causation as to Walgreens, Plaintiffs also had to show that any unlawful or intentional conduct by Walgreens was a "***substantial factor***" in creating the public nuisance. Dkt. 4206-1 at 24 (emphasis in original). Plaintiffs do not dispute that, under both Ohio law and the Restatement, conduct cannot be a "substantial factor" in causing a harm "if the harm would have been sustained even [without the conduct]." RESTATEMENT (SECOND) OF TORTS § 432(1); *Springsteel v. Jones & Laughlin Steel Corp.*, 192 N.E.2d 81, 87 (Ohio Ct. App. 1963) (adopting Section 432); *Skinner v. N. Mkt. Dev. Auth., Inc.*, 1997 WL 381638, at *3 (Ohio Ct. App. July 10, 1997) (same).[4] The sole exception is where there are multiple forces and "each of itself is sufficient to bring about the harm." RESTATEMENT (SECOND) OF TORTS § 432(1)-(2). In its opening brief, Walgreens pointed out that there is no evidence from which a reasonable jury could find that Walgreens' "wrongful conduct" was itself sufficient to cause the alleged opioid-related harms in the counties, or that those harms would not still exist in the absence of that conduct. Dkt. 4206 at 11. Plaintiffs do not even try to argue otherwise.

Plaintiffs likewise do not dispute that an "important consideration" for determining whether conduct is a "substantial factor" under Ohio law is "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." RESTATEMENT (SECOND) OF TORTS § 433(a); *see also Schwartz v. Honeywell Int'l, Inc.*, 102 N.E.3d 477, 482 (Ohio 2018) (adopting Section 433). Plaintiffs concede that there are numerous other contributing factors in this case, "including criminals, problematic prescribers, and opioid

---

[4] Plaintiffs readily concede that the Restatement is an authoritative source for the requirements of "substantial factor" causation in this case, but conspicuously skip over the requirements of Section 432. *See, e.g.*, Opp. at 83 (relying on Sections 431 *and* 433B of the Restatement to define the "substantial factor" inquiry).

7

manufacturers." Opp. at 96; *see also* Dkt. 4206 at 9 (listing other contributing factors, including "the DEA, FDA, state regulators, pharmaceutical manufacturers, wholesale distributors, high-volume prescribers, pill mills, drug traffickers and cartels, local street dealers, pill counterfeiters, doctor shoppers, individual stealing medication from medicine cabinets, and more"). Plaintiffs try to sidestep the implications of this fact by halfheartedly suggesting that none of these other causes "breaks the chain of causation." Opp. at 96. That is incorrect, but it is also not an answer to Walgreens' actual argument. Plaintiffs provide no explanation for how Walgreens' conduct can be considered a "substantial factor" in light of the countless—and far more extensive—other factors that contributed to Plaintiffs' alleged harms. *See* Dkt. 4206 at 9-10.

   **C. No Showing That Walgreens Specifically Caused an Ongoing Public Nuisance of "Legal Prescription Opioids" as Opposed to Illicit Drugs.**

  Even if Plaintiffs somehow managed to overcome all of these other fatal defects in their causal theory, they cannot show that Walgreens caused an ongoing public nuisance as defined by the Court. Under the Court's instructions and verdict form, the only relevant "public nuisance" is an "oversupply of ***legal prescription opioids***, and . . . diversion of ***those [legal prescription] opioids*** into the illicit market . . . that is ***ongoing today***." Dkt. 4206-1 at 17 (emphasis added). This means that Plaintiffs cannot rely on evidence of an "opioid epidemic" in general, especially not one based on the use of illicit drugs like heroin and fentanyl. But that is the only evidence they have. Opp. at 3-13. Plaintiffs spend page after page reciting evidence they claim shows an "Ongoing Public Nuisance," but none of it supports a finding of an oversupply and diversion of ***prescription*** opioids in Lake County or Trumbull County today. *See id.* In fact, Plaintiffs' evidence expressly supports the contrary (and self-defeating) finding: that the opioid crisis in Lake County and Trumbull County once was the product of legal prescription opioids but today

8

is almost exclusively attributable to illicit drugs like heroin and fentanyl.  *See id.*; *see also* Dkt. 4202 at 41-43 (collecting other such evidence from Plaintiffs' own witnesses).

The few scraps of evidence Plaintiffs do muster about prescription opioids—none of which are connected in any way to Walgreens—only prove the point: Plaintiffs point to evidence that "[p]rescription opioids are associated with more fatal overdoses than any other prescription or illegal drug [in Ohio], including cocaine, heroin, and marijuana combined, " Opp. at 5 n.4, conveniently omitting the fact that the timeframe for that statistic was ***2000 to 2011***, Dkt. 4111 at 5406:10-15; *see also* P-20809 at 15.  Plaintiffs also highlight evidence that "in our country in 2018, there were 14,800 prescription painkiller deaths," Opp. at 5 n.4, apparently unaware that "2018" is a typo.  The exhibit being discussed was a 2014 PowerPoint, summarizing CDC data for ***2008***.  *See* P-20809 at 18.  And while Plaintiffs assert that "[a] majority of opioid deaths in the Counties are at least partially attributable to prescription opioids," Opp. at 9, that heavily caveated claim relies on the "gateway" theory—that ***current*** heroin and fentanyl overdoses (the vast majority of all overdoses today) can be traced back to ***prior*** abuse of prescription opioids.  Putting aside the evidentiary and legal shortcomings of that theory, it does not solve Plaintiffs' failure to prove an "ongoing public nuisance" as defined by the Court.  Even at face value, it only confirms that the opioid crisis in Lake County or Trumbull County today is ***not*** made up of the oversupply and diversion of prescription opioids dispensed by Walgreens.[5]

The complete failures of proof at every step of the causal chain are fatal to Plaintiffs' claim.  For this reason alone, the Court should grant JMOL in favor of Walgreens.

---

[5] To support a finding of causation as to Walgreens, Plaintiffs must do far more than show that there are overdose deaths involving prescription opioids in Lake County or Trumbull County.  They have to show that Walgreens caused a present-day ***oversupply*** of prescription opioids—and that the ***diversion*** of those oversupplied prescription opioids resulted in their alleged harms.  Plaintiffs have no such evidence.

### III. PLAINTIFFS CONCEDE THAT THEY HAVE NO EVIDENCE OF WRONGFUL CONDUCT BY WALGREENS WITHIN THE STATUTE OF LIMITATIONS

Plaintiffs' claims are time-barred. While Plaintiffs are correct that the Court has ruled that no limitations period applies to their public nuisance claim, they do not dispute that they have failed to adduce at trial any legally sufficient evidence of unlawful or intentional conduct by Walgreens within either the 2- or 4-year limitations period under Ohio Rev. Code §§ 2305.09 or 10. Under the a proper application of Ohio law, *see, e.g.*, *Sexton v. Mason*, 883 N.E.2d 1013, 1021 (Ohio 2008), this is reason enough to grant JMOL in favor of Walgreens.

### CONCLUSION

For all of the reasons above, and those set forth in Defendants' Joint Reply Brief, the Court should grant judgment as a matter of law in favor of Walgreens.

Dated: January 31, 2022

Respectfully submitted,

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co., Inc.*

*Counsel for Walgreens Boots Alliance, Inc.,
Walgreen Co., and Walgreen Eastern Co., Inc.*