**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT
100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  February 08, 2022

Mr. Noel Francisco
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

Mr. Jeffrey Bryan Wall
Sullivan & Cromwell
1700 New York Avenue, N.W.
Suite 700
Washington, DC 20006

Re:  Case No. 22-3107, *In re: Walmart, Inc., et al*
Originating Case Nos. 1:17-md-02804 : 1:18-op-45032 : 1:18-op-45079

Dear Counsel:

The petition for writ of mandamus has been docketed as case number **22-3107** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

Counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **February 22, 2022**.  The forms are available on the court's website.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

**No. 22-____**

# In the United States Court of Appeals for the Sixth Circuit

---

*In re National Prescription Opiate Litigation*

---

IN RE WALGREENS BOOTS ALLIANCE, INC., ET AL.,
*Petitioners.*

---

United States District Court for the
Northern District of Ohio, Eastern Division
(No. 1:17-md-2804) (The Hon. Dan Aaron Polster)

---

## PETITION FOR WRIT OF MANDAMUS

---

NOEL J. FRANCISCO
JOHN M. MAJORAS
BENJAMIN C. MIZER
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com
jmmajoras@jonesday.com
bmizer@jonesday.com

*Counsel for Walmart Inc.*

*(Additional counsel listed on
next page)*

JEFFREY B. WALL
MORGAN L. RATNER
ZOE A. JACOBY
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Washington, DC 20006
(202) 956-7500
wallj@sullcrom.com
ratnerm@sullcrom.com
jacobyz@sullcrom.com

*Counsel for Walgreens Boots
Alliance, Inc., Walgreen Co.,
and Walgreen Eastern Co.,
Inc.*

TINA M. TABACCHI
TARA A. FUMERTON
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 269-4335
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

KASPAR J. STOFFELMAYR
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

# TABLE OF CONTENTS

Page

Introduction.................................................................................................1

Statement of Facts ....................................................................................4

    A.    The Governing Ohio Statute .................................................4

    B.    OPLA Claims In The MDL .................................................6

    C.    Juror Misconduct At Trial .................................................8

    D.    Post-Trial Motions .........................................................10

Argument...................................................................................................11

I.    THIS COURT SHOULD ISSUE A WRIT OF MANDAMUS
DIRECTING THE DISTRICT COURT TO DISMISS THE
CASE OR CONDUCT A NEW TRIAL .................................................13

    A.    The Pharmacies Have A Clear And Indisputable Right To
Relief On The Merits ..........................................................13

        1.    The text of OPLA unambiguously forecloses the
Counties' public-nuisance claim .............................13

        2.    The egregious juror misconduct at trial requires a
mistrial ......................................................21

    B.    Mandamus Is The Only Adequate Remedy....................25

    C.    Mandamus Is Appropriate Under The Circumstances................30

II.    AT A MINIMUM, THIS COURT SHOULD ISSUE A WRIT
OF MANDAMUS DIRECTING THE DISTRICT COURT TO
CERTIFY ITS ORDERS FOR INTERLOCUTORY APPEAL........32

i

A.    This Court May Grant A Writ Of Mandamus To The Denial Of A Motion For Certification ...........................................................32

B.    The District Court's Refusal To Certify An Immediate Appeal Warrants Mandamus Relief ................................................34

Conclusion........................................................................................................37

Certificate of Compliance

Certificate of Service

Attachments A-E

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahrenholz* v. *Board of Trs. of Univ. of Ill.*,
219 F.3d 674 (7th Cir. 2000)...................................................................33

*Aluminum Co. of Am.* v. *Loveday*,
273 F.2d 499 (6th Cir. 1959)...................................................................22

*In re Bendectin Prods. Liab. Litig.*,
749 F.2d 300 (6th Cir. 1984)...................................................................27

*In re Beverly Hills Fire Litig.*,
695 F.2d 207 (6th Cir. 1982).............................................................*passim*

*State ex rel. Brinda* v. *Lorain Cnty. Bd. of Elections*,
874 N.E.2d 1205 (Ohio 2007)...................................................................2

*Camden Cnty. Bd. of Chosen Freeholders* v. *Beretta, U.S.A. Corp.*,
273 F.3d 536 (3d Cir. 2001) ............................................................17, 18

*Carrel* v. *Allied Products Corp.*,
677 N.E.2d 795 (Ohio 1997) ..............................................................5, 7

*Cheney* v. *U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)....................................................................12, 32, 33

*Chesher* v. *Allen*,
122 Fed. Appx. 184 (6th Cir. 2005)......................................................12

*In re Chevron U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997)...............................................................28

*City of Cincinnati* v. *Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (Ohio 2002)......................................................5, 18, 19

*In re City of Memphis*,
293 F.3d 345 (6th Cir. 2002)...................................................................35

*City of New Haven* v. *Purdue Pharma, L.P.*,
No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super.
Ct. Jan. 8, 2019)........................................................................................18

*City of Toledo* v. *Sherwin-Williams Co.*,
2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007) .................................6, 19

*Combs* v. *International Ins. Co.*,
354 F.3d 568 (6th Cir. 2004)......................................................................31

*Dart Cherokee Basin Operating Co.* v. *Owens*,
135 S. Ct. 547 (2014) ................................................................................33

*Dassault Systèmes, SA* v. *Childress*,
828 Fed. Appx. 229 (6th Cir. 2020)............................................................22

*State ex rel. DeWine* v. *Purdue Pharma LP*,
2018 WL 4080052 (Ohio Ct. Com. Pl. Aug. 22, 2018) ...................................19

*Fernandez-Roque* v. *Smith*,
671 F.2d 426 (11th Cir. 1982)....................................................................34

*Gabbard* v. *Madison Loc. Sch. Dist. Bd. of Educ.*,
2021 WL 2557315 (Ohio June 23, 2021) .....................................................16

*In re Gee*,
941 F.3d 153 (5th Cir. 2019)......................................................................31

*Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*,
579 U.S. 93 (2016)....................................................................................33

*State ex rel. Hunter* v. *Johnson & Johnson*,
499 P.3d 719 (Okla. 2021) ...................................................................18, 20

*In re Impact Absorbent Techs., Inc.*,
106 F.3d 400 (6th Cir. 1996)......................................................................13

*State ex rel. Jennings* v. *Purdue Pharma L.P.*,
No. N18C-01-223, 2019 WL 446382 (Del. Super. Ct. Feb. 4,
2019) .....................................................................................................18

iv

*John B.* v. *Goetz,*
531 F.3d 448 (6th Cir. 2008)................................................................*passim*

*LaPuma* v. *Collinwood Concrete,*
661 N.E.2d 714 (Ohio 1996) ..........................................................5, 7

*In re Lott,*
424 F.3d 446 (6th Cir. 2005).........................................................11, 33

*Lynch* v. *Gallia Cnty. Bd. of Comm'rs,*
680 N.E.2d 1222 (Ohio 1997)..............................................................20

*In re McClelland Engrs., Inc.,*
742 F.2d 837 (5th Cir. 1984)................................................................34

*Montgomery Cnty. Bd. of Cnty. Comm'rs* v. *Cardinal Health, Inc.,*
No. 1:18-op-46326 (N.D. Ohio) ..........................................................31

*Mount Lemmon Fire Dist.* v. *Guido,*
139 S. Ct. 22 (2018) ....................................................................15, 16

*In re National Prescription Opiate Litig.,*
2019 WL 7482137 (6th Cir. Oct. 10, 2019) ...........................1, 26, 27

*In re National Prescription Opiate Litig.,*
927 F.3d 919 (6th Cir. 2019)...............................................................30

*In re National Prescription Opiate Litig.,*
956 F.3d 838 (6th Cir. 2020)...............................................................25

*Nian* v. *Warden, N. Cent. Corr. Inst.,*
994 F.3d 746 (6th Cir. 2021)...............................................................22

*Olden* v. *LaFarge Corp.,*
383 F.3d 495 (6th Cir. 2004)...............................................................16

*People* v. *Johnson & Johnson,*
No. 19 CH 10481 (Ill. Cir. Ct. Jan. 8, 2021)......................................18

*People* v. *Purdue Pharma L.P.,*
No. 30-2014-00725287 (Cal. Super. Ct. Dec. 14, 2021)...................18

*In re Perrigo Co.*,
   128 F.3d 430 (6th Cir. 1997)....................................................................12

*State ex rel. Prade* v. *Ninth Dist. Ct. of Appeals*,
   87 N.E.3d 1239 (Ohio 2017)....................................................................16

*State ex rel. Ravnsborg* v. *Purdue Pharma, L.P.*,
   No. 32CIV18-000065 (S.D. Cir. Ct. Mar. 29, 2021) ...............................18

*In re Rhone-Poulenc Rorer, Inc.*,
   51 F.3d 1293 (7th Cir. 1995)...................................................................27

*Scott* v. *Bank One Tr. Co., N.A.*,
   577 N.E.2d 1077 (Ohio 1991)..................................................................31

*State ex rel. Stenehjem* v. *Purdue Pharma L.P.*,
   No. 08-2018-CV-01300, 2019 WL 2245743 (N.D. Dist. Ct. May
   24, 2019) ..................................................................................................18

*Stiles* v. *Lawrie*,
   211 F.2d 188 (6th Cir. 1954)...................................................................22

*Swint* v. *Chambers Cnty. Comm'n*,
   514 U.S. 35 (1995)...................................................................................33

*Tioga Pub. Sch. Dist.* v. *U.S. Gypsum Co.*,
   984 F.2d 915 (8th Cir. 1993)...................................................................18

*In re Trump*,
   781 Fed. Appx. 1 (D.C. Cir. 2019) ..........................................................34

*In re Trump*,
   928 F.3d 360 (4th Cir. 2019), *vacated*, 958 F.3d 274 (4th Cir.
   2020) (en banc), *vacated*, 141 S. Ct. 1262 (2021)..............................34

*United States* v. *Gonzales*,
   520 U.S. 1 (1997).....................................................................................14

*United States* v. *Wheaton*,
   517 F.3d 350 (6th Cir. 2008)...............................................................23, 24

*In re University of Mich.*,
   936 F.3d 460 (6th Cir. 2019) ................................................................31

**Statutes**

28 U.S.C. § 1292(b) .......................................................................... *passim*

28 U.S.C. § 1651 ...................................................................................11

Controlled Substances Act, 21 U.S.C. § 801 et seq. .........................10

2004 Ohio Laws File 144 ...............................................................5, 7, 19

2006 Ohio Laws File 198 ..........................................................6, 7, 19, 21

Ohio Rev. Code Ann. (current)

   § 2307.71(A)(12) ..........................................................................15
   § 2307.71(A)(13) .................................................................. *passim*
   § 2307.71(B) .............................................................1, 4, 5, 14
   § 2307.72(D)(1) ...........................................................................17

Ohio Rev. Code Ann. § 2307.71(M) (1988) ..........................................5

**Rules**

Fed. R. Civ. P.

   50(a) ...............................................................................11, 30
   50(b) ..........................................................................................10
   54(b) ..........................................................................................26
   59 ...............................................................................................10

## INTRODUCTION

This case is part of multidistrict litigation involving the abuse of prescription opioids, an issue of "enormous public interest and significance." *In re National Prescription Opiate Litig.*, 2019 WL 7482137, at *2 (6th Cir. Oct. 10, 2019). But these plaintiffs, Lake and Trumbull Counties, are not suing the pharmaceutical companies that manufactured and marketed opioids or the doctors who prescribed them. Rather, the Counties are suing *pharmacies*, claiming that they contributed to a public nuisance when their employees filled doctors' prescriptions. That claim never should have seen a courtroom because an Ohio statute abrogates all common-law public-nuisance claims based on the distribution or sale of products. To make matters worse, during trial the parties learned of juror misconduct so egregious that the Counties' own counsel conceded that a mistrial was necessary. For either reason or both, this Court should grant mandamus and forestall the upcoming bench trial on billions of dollars the Counties seek in purported "abatement."

At the threshold, Ohio has flatly foreclosed the Counties' claim. The Ohio Product Liability Act (OPLA) "abrogate[s] all common law product liability claims or causes of action." Ohio Rev. Code Ann. § 2307.71(B). And Ohio defines a "[p]roduct liability claim" to include "*any public nuisance claim*

1

*or cause of action at common law*" based on the "supply," "distribution," or "sale of a product." *Id.* § 2307.71(A)(13) (emphasis added). That definition plainly encompasses the Counties' claim. The district court, however, reasoned based on legislative history that OPLA was intended to abrogate only those public-nuisance claims that seek compensatory damages. "No resort to . . . an examination of the legislative history is warranted" when the statute is "unambiguous." *State ex rel. Brinda* v. *Lorain Cnty. Bd. of Elections*, 874 N.E.2d 1205, 1211 (Ohio 2007) (citation omitted).

Notwithstanding OPLA's plain text, this case proceeded to a jury trial on liability. During trial, the district court learned that a juror had conducted outside research into the testimony of one of the pharmacies' witnesses and printed fliers on the subject for every other juror. The court stated that it had never seen "anything like this" in 22 years. Tr. 3725:14-15. Even the Counties' lead counsel initially urged that a "mistrial is appropriate." Tr. 3770:2. Those reactions were warranted because a juror's provision of outside evidence to other jurors on a contested issue requires a mistrial, absent clear harmlessness. *See In re Beverly Hills Fire Litig.*, 695 F.2d 207, 215 (6th Cir. 1982). Here, the misconduct was far from harmless: the outside evidence showed that the pharmacies were charging money for a life-saving drug that

2

was available elsewhere for free—lawful behavior that nevertheless fed into the Counties' narrative that the pharmacies were improperly motivated by profit. Yet the court repeatedly pressed the Counties to rethink their position, and even suggested that it might not try the case again if they did not. Then, after dismissing the offending juror and questioning the rest, the court allowed the trial to proceed.

Not surprisingly, the tainted jury found the pharmacies liable for substantially contributing to an opioid public nuisance. The district court then declined to certify its rulings on OPLA and juror misconduct for interlocutory appeal under 28 U.S.C. § 1292(b). Absent this Court's immediate intervention, the case will now proceed to a costly and needless bench trial on the Counties' multibillion-dollar claim for relief, followed by potentially indefinite delay while the parties await the district court's award, let alone if the district court allows the Counties to pursue other outstanding claims in a second round of discovery and trial. All the while, the pharmacies will face unusual pressure to settle with the Counties—a result that the district court has openly advocated since the beginning of the MDL. This case cries out for immediate appellate oversight. The Court should issue a writ of mandamus requiring the

district court to enter judgment for the pharmacies, grant a mistrial, or at a minimum certify the relevant orders for interlocutory appeal.

## STATEMENT OF FACTS

### A.     The Governing Ohio Statute

The Ohio Product Liability Act is a comprehensive statutory regime "intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code Ann. § 2307.71(B). The Act defines a "product liability claim" to include two types of actions. First, a product-liability claim "means a claim or cause of action that is asserted in a civil action . . . and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property." *Id.* § 2307.71(A)(13). Second, a product-liability claim "also includes any public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public." *Id.* Taken together, OPLA abrogates all product-based claims that either seek a particular remedy (certain kinds of compensatory damages) or are based on a particular theory (the product contributed to a public nuisance).

4

When OPLA was first enacted in 1988, the statute did not expressly abrogate all product-liability claims, nor did it specifically discuss public-nuisance claims.  *See* Ohio Rev. Code Ann. § 2307.71(M) (1988).  And in the years following OPLA's enactment, the Ohio Supreme Court applied the statute narrowly.  In *LaPuma* v. *Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996), for example, the court held that OPLA abrogated only those product-liability claims that sought non-economic damages.  In *Carrel* v. *Allied Products Corp.*, 677 N.E.2d 795, 800 (Ohio 1997), the court held that OPLA did not abrogate "the common-law action of negligent design."  And in *City of Cincinnati* v. *Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1143-1145 (Ohio 2002), the court allowed certain product-based public-nuisance claims to proceed, over a dissent's warning that the majority had taken "the ill-advised first step toward transforming nuisance into 'a monster that would devour in one gulp the entire law of tort,'" *id*. at 1157 (citation omitted).

Following those decisions, in 2005 the Ohio General Assembly amended OPLA to clarify the statute's intended broad scope, specifying that OPLA is "intended to abrogate *all* common law product liability claims or causes of action."  Ohio Rev. Code Ann. § 2307.71(B) (emphasis added); *see* 2004 Ohio Laws File 144.  Nevertheless, plaintiffs continued to bring public-nuisance

5

claims under Ohio common law based on allegedly harmful products. *See, e.g.*, *City of Toledo* v. *Sherwin-Williams Co.*, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007).  The General Assembly responded yet again in 2007, and this time it left no room to maneuver:  it expressly defined product-liability claims to "include[] *any public nuisance claim*" under Ohio common law based on (among other things) the "supply," "distribution," or "sale of a product." 2006 Ohio Laws File 198 (codified at Ohio Rev. Code Ann. § 2307.71(A)(13)) (emphasis added).

### B.  OPLA Claims In The MDL

In this MDL, several Ohio plaintiffs have asserted common-law public-nuisance claims against companies that manufacture, distribute, and dispense opioids.  Whether OPLA abrogates those claims first arose in earlier motion practice in the MDL.  Summit County and the City of Akron brought a common-law public-nuisance claim and sought purported "abatement."  The defendants in that case moved to dismiss the nuisance claim under OPLA, and Magistrate Judge Ruiz agreed that "the plain language of the statute" abrogated the claim.  Doc. 1025 at 64.

The district court rejected the magistrate judge's recommendation. Doc. 1203 at 28.  The court focused on a comment in the legislative history that,

in amending OPLA in 2005, the General Assembly had "intended to supersede the holding of the Ohio Supreme Court in *Carrel*." *Id.* at 24 (quoting 2004 Ohio Laws File 144). The court inferred from the explicit reference to *Carrel* that the General Assembly had intended *not* to supersede *LaPuma*'s holding that the 1988 version of OPLA abrogated only claims for compensatory damages. *Id.* The district court likewise dismissed the relevance of the 2007 amendment—which specifically forecloses *any* common-law public-nuisance suit—because another snippet of legislative history suggested that the amendment was "not intended to be substantive" but rather "to clarify the General Assembly's original intent" in enacting OPLA. *Id.* at 24-25 (quoting 2006 Ohio Laws File 198).

In this case, Lake and Trumbull Counties brought a similar public-nuisance claim under Ohio common law against pharmacies that dispense prescription opioids. The Counties sought billions of dollars for past and present harms, styled as "abatement" in their complaints. Doc. 3326 ¶ 655(p); Doc. 3327 ¶ 655(p). The pharmacies moved to dismiss the Counties' claim as abrogated by OPLA. Doc. 3340-1 at 30. The district court denied the motion, relying on its prior ruling. Doc. 3403 at 32-33. The case proceeded to a jury trial on liability.

7

### C.     Juror Misconduct At Trial

From the start of the liability trial, the Counties sought to develop a theme that the pharmacies' supposed corporate greed led them to profit from opioid addicts. The Counties contended in their opening arguments that "it wasn't profitable to follow the law" and that the pharmacies "could make money by selling." Tr. 92:24-93:3. The Counties returned to that theme when, in response to a juror's question about whether Walgreens provides free naloxone—a life-saving medication that can reverse an opioid overdose—the Counties' counsel cross-examined a Walgreens employee to show that Walgreens charges customers for naloxone. Tr. 3292:3-3293:15.

After hearing that testimony, Juror #4 went home and conducted independent internet research into the availability of naloxone. She printed copies of a flier stating that naloxone was available elsewhere for free, made one available to each of the other jurors, and discussed the availability of free naloxone with them. Tr. 3717:22-3721:6. Upon learning of the misconduct, the court dismissed Juror #4. *Id.* Other jurors then confirmed that they had received the flier, that some had reviewed the flier, and that the flier or Juror #4 had informed some of them that naloxone is available elsewhere for free. Tr. 3727:12-3764:3.

8

Counsel for both sides immediately recognized the need for a mistrial. The Counties' counsel admitted that the information could favor the Counties because it fed into the Counties' theory that the pharmacies were motivated by greed. Tr. 3723:7-12. Defense counsel agreed that "[i]t's clearly prejudicial to the companies here that you could get it for free, isn't it terrible that these companies are charging for it." Tr. 3765:7-9; *see* Tr. 3766:24-3767:8. The Counties' counsel also acknowledged the incurable problem that the outside evidence "affects everybody whether they recognize it or not." Tr. 3769:12-15. He explained that, under the circumstances, a "mistrial is appropriate. That's my candor to the tribunal which I owe under my ethical obligation." Tr. 3770:1-3.

The district court also recognized that the juror misconduct was egregious. The court remarked that "I've been a judge 22-some years" and "I've never had a juror, to my knowledge, do anything like this." Tr. 3725:14-15. But the court warned that "[i]f we have to stop the trial," it would "be a long time" before "we'll do it again." Tr. 3771:1-4. The court directed the parties to reconsider their positions over the weekend, Tr. 3770:4-7, and concluded by "emphasiz[ing]" that "[i]f we have to stop this trial, I'm

9

not making any commitment as to when or if I will retry the case." Tr. 3779:11-13.

The pharmacies promptly moved for a mistrial. But following the district court's admonitions, the Counties reversed course. The court denied the pharmacies' motion on the ground that, because the juror misconduct had been revealed before the jury reached a verdict, the court could assess any influence on the remaining jurors through individualized questioning. Tr. 3785:5-3789:24. The court then brought in each juror for one to two minutes and asked whether the juror could remain impartial after Juror #4's misconduct. Tr. 3796:23-3808:25. After each juror denied bias, the trial proceeded.

### D.    Post-Trial Motions

On November 23, 2021, the jury returned a verdict finding the pharmacies liable for contributing to a public nuisance. On December 21, 2021, the pharmacies filed motions for judgment as a matter of law under Rule 50(b) and for a new trial under Rule 59. Among the many reversible errors those motions identified was the district court's atextual ruling that the implementing regulations of the Controlled Substances Act impose duties on corporations that own pharmacies to maintain systems for aggregating and

analyzing prescription data and "red flags."  The pharmacies also moved under Section 1292(b) to certify for interlocutory appeal the district court's orders denying their motion to dismiss and denying a mistrial.[1]

On January 31, 2022, the district court denied the motion for certification.  Doc. 4251.  The court concluded that the motion was redundant with a previous motion to certify the OPLA issue; was untimely; and did not satisfy the statutory criteria for certification because immediate appellate review would not "materially advance the ultimate termination of the litigation."  *Id.* at 2-5.

A remedies trial is currently scheduled for May 2022.

## ARGUMENT

"When there is extraordinary need for review of an order before final judgment and the District Court has refused to certify the issue pursuant to [28 U.S.C.] § 1292(b), this Court has authority to issue a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651."  *In re Lott*, 424 F.3d 446, 449 (6th Cir. 2005).  Mandamus is appropriate when (1) the "right to issuance of the

---

[1] The pharmacies also raised the OPLA-abrogation issue in their Rule 50(a) motion.  Doc. 4098 at 22-23.  Because the district court declined to rule on that motion, however, the pharmacies sought certification of the court's earlier denial of their motion to dismiss.  Doc. 4205 at 13.

writ is 'clear and indisputable'"; (2) "the party seeking the writ" has "no other adequate means to attain the relief he desires"; and (3) "the writ is appropriate under the circumstances." *Cheney* v. *U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-381 (2004) (citations omitted). In applying those criteria, this Court also has looked to whether the order under review "manifests a persistent disregard" of the law or "raises new and important problems, or issues of law of first impression." *John B.* v. *Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). And because mandamus is an equitable "safety valve" to the final-judgment rule, this Court has emphasized that "[s]ome flexibility is required" in its application. *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997) (citation omitted); *see Chesher* v. *Allen*, 122 Fed. Appx. 184, 187 (6th Cir. 2005) (per curiam) (observing that this Court "has a more flexible approach to mandamus than other circuits").

The criteria for mandamus are readily satisfied here. The district court clearly and indisputably erred when it allowed this case to go to trial, because OPLA unambiguously abrogates the Counties' sole claim. And the court clearly and indisputably erred in allowing that trial to go forward after egregious juror misconduct. At the very least, the court clearly and indisputably erred in failing to certify for interlocutory appeal its orders deciding those important questions. Mandamus is the only adequate remedy

12

that can ensure a timely resolution of these issues and spare the defendants from the unusual pressures, high costs, and potentially indefinite delay of future proceedings, including a remedies trial premised on a reversible verdict.

## I. THIS COURT SHOULD ISSUE A WRIT OF MANDAMUS DIRECTING THE DISTRICT COURT TO DISMISS THE CASE OR CONDUCT A NEW TRIAL

### A. The Pharmacies Have A Clear And Indisputable Right To Relief On The Merits

"Most importantly" to the mandamus inquiry, the district court's orders on OPLA and juror misconduct "are clearly erroneous as a matter of law." *John B.*, 531 F.3d at 458. Particularly when a district court's order "indicate[s] failure to comprehend or refusal to be guided by unambiguous provisions of a statute or settled common law doctrine," the "clearly erroneous nature of [that] order calls for" mandamus relief. *In re Impact Absorbent Techs., Inc.*, 106 F.3d 400 (6th Cir. 1996) (unpublished) (citation omitted).

#### 1. The text of OPLA unambiguously forecloses the Counties' public-nuisance claim

The district court clearly and indisputably erred when it concluded that OPLA abrogates only those common-law public-nuisance claims that seek compensatory damages. OPLA's text and history make clear that the statute

13

abrogates *all* common-law public-nuisance claims involving products, regardless of the remedy sought.

a.    OPLA is "intended to abrogate all common law product liability claims or causes of action."  Ohio Rev. Code Ann. § 2307.71(B).  To avoid any doubt, OPLA broadly defines two categories of "product liability claim[s]." First, "product liability claim" means a claim "that seeks to recover compensatory damages" caused by harmful products.  Ohio Rev. Code Ann. § 2307.71(A)(13).    Second, "product liability claim" "also includes *any* [common-law] public nuisance claim" that is based on, among other things, the "marketing," "distribution," "or sale of a product."  *Id.* (emphasis added). "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *United States* v. *Gonzales*, 520 U.S. 1, 5 (1997) (citation omitted).

On its face, OPLA's expansive language does not cover only public-nuisance claims seeking compensatory damages, as the district court held. The *first* definition of "product liability claim" is indeed tied to whether a claim, of any kind, seeks compensatory damages for the harm caused by a product. But the *second* definition is additive and directly on point:  the set of abrogated claims "also includes any public nuisance claim" based on the distribution or

14

sale of a product. Ohio Rev. Code Ann. § 2307.71(A)(13); *see Mount Lemmon Fire Dist.* v. *Guido*, 139 S. Ct. 22, 25 (2018) ("'[A]lso' is a term of enhancement; it means 'in addition; besides' and 'likewise; too.'") (citation omitted).

The Counties have not offered any plausible explanation for how their claim escapes OPLA's plain text. To the contrary, the Counties' claim tracks the precise language of the statute. The Counties alleged in their complaints that the pharmacies "created and maintained a public nuisance" because their "marketing," "distributing," and "selling" of prescription opioids "unreasonably interfere with the public health, welfare, and safety." Doc. 3326 ¶ 619; Doc. 3327 ¶ 619; *see* Ohio Rev. Code Ann. § 2307.71(A)(13). And it is undisputed that prescription opioids fall within the statutory definition of a "product." *See* Ohio Rev. Code Ann. § 2307.71(A)(12). That should have been the end of the district court's analysis.

b.     The district court's contrary analysis was wrong at every step. First, rather than starting with OPLA's plain language, the district court declared the text ambiguous and reasoned backward from excerpts of the legislative history. *See* Doc. 1203 at 23. That entire exercise was unnecessary because OPLA's abrogation of "any [common-law] public nuisance claim" is unambiguous. Ohio Rev. Code Ann. § 2307.71(A)(13). When "the meaning of

15

a statute is unambiguous and definite, it must be applied as written and no further interpretation is necessary." *State ex rel. Prade* v. *Ninth Dist. Ct. of Appeals*, 87 N.E.3d 1239, 1242 (Ohio 2017) (per curiam) (citation omitted); *see Olden* v. *LaFarge Corp.*, 383 F.3d 495, 502 (6th Cir. 2004) (warning against the "incentive to interpret what we believe to be unambiguous as ambiguous, in order to open the door to the legislative history").

Second, even when the district court finally discussed the statutory language, it erred.  The court focused on the fact that OPLA defines "product liability claim" to "also *include*[] any public nuisance claim" (emphasis added). Doc. 1203 at 26-27.  In the court's view, the use of "include" means that the second category of abrogated claims (public-nuisance claims) is only a subset of the first category of abrogated claims (those seeking compensatory damages).  *Id.*  But the General Assembly specifically amended OPLA in 2007 to provide that product liability claims would "*also* include[]" public-nuisance claims (emphasis added).  Even if the word "includes" on its own often introduces an illustrative example, the full phrase "also includes," which appears in a new statutory paragraph, is plainly additive.  *See Mount Lemmon*, 139 S. Ct. at 25.  The district court thus made the classic error of focusing on a single word rather than the text as a whole.  *See Gabbard* v.

16

*Madison Loc. Sch. Dist. Bd. of Educ.*, 2021 WL 2557315, at *6 (Ohio June 23, 2021) ("Our precedent requires courts to read a statute as a whole and to not dissociate words and phrases from that context.").

Third, the district court was reluctant to read OPLA according to its plain terms because it believed that the statute otherwise "does not provide for any form of equitable remedy." Doc. 1203 at 26. The court assumed that plaintiffs like the Counties *must* be able to bring common-law public-nuisance claims for equitable relief like abatement. But States are the masters of their own common law. The Ohio General Assembly reasonably chose to foreclose any relief—including equitable relief—for product-based public-nuisance claims. That is hardly a novel choice. Many jurisdictions adhere to the "boundary between the well-developed body of product liability law and public nuisance law." *Camden Cnty. Bd. of Chosen Freeholders* v. *Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001). Moreover, the district court was wrong about OPLA. In fact, the Act allows equitable relief, including "in the form of the abatement of a nuisance," for "contamination or pollution of the environment." Ohio Rev. Code Ann. § 2307.72(D)(1). The Ohio General Assembly reasonably chose to abrogate certain novel claims for equitable

17

relief (product-based public-nuisance claims), while allowing more traditional claims (environmental public-nuisance claims).

        c.       OPLA's statutory history confirms its plain text.  Before the 2005 and 2007 amendments, the Ohio Supreme Court had held that plaintiffs could bring product-based public-nuisance claims under Ohio common law.  *See City of Cincinnati* v. *Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002).  *Beretta*'s holding marked a significant expansion of public-nuisance law.  *See id.* at 1158 (Cook, J., dissenting).  Courts around the country had at the time, and have repeatedly since, rejected comparable product-based public-nuisance claims.[2]  When the Ohio General Assembly amended OPLA in 2005 to emphasize the breadth of the intended abrogation of common-law claims, it

_____

    [2] *See Tioga Pub. Sch. Dist.* v. *U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993) (warning that nuisance would become "a monster that would devour in one gulp the entire law of tort"); *Camden Cnty.*, 273 F.3d at 540 (reasoning that distributing "non-defective, lawful products . . . cannot be a nuisance without straining the law to absurdity").  In the specific context of opioid lawsuits like this one, see also, *e.g.*, *State ex rel. Hunter* v. *Johnson & Johnson*, 499 P.3d 719, 721 (Okla. 2021); *People* v. *Purdue Pharma L.P.*, No. 30-2014-00725287 (Cal. Super. Ct. Dec. 14, 2021); *State ex rel. Ravnsborg* v. *Purdue Pharma, L.P.*, No. 32CIV18-000065 (S.D. Cir. Ct. Mar. 29, 2021); *People* v. *Johnson & Johnson*, No. 19 CH 10481 (Ill. Cir. Ct. Jan. 8, 2021); *State ex rel. Stenehjem* v. *Purdue Pharma L.P.*, No. 08-2018-CV-01300, 2019 WL 2245743 (N.D. Dist. Ct. May 24, 2019); *State ex rel. Jennings* v. *Purdue Pharma L.P.*, No. N18C-01-223, 2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019); and *City of New Haven* v. *Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Ct. Jan. 8, 2019).

sought to bring Ohio in line with those other jurisdictions.  *See* 2004 Ohio Laws File 144.

Notwithstanding the 2005 amendment, the City of Toledo brought a high-profile lawsuit against lead-paint manufacturers for allegedly contributing to a public nuisance.  *See City of Toledo* v. *Sherwin-Williams Co.*, 2007 WL 4965044 (Ohio Ct. Com. Pl. Dec. 12, 2007).  While that lawsuit was pending, the Ohio General Assembly again amended OPLA to clarify that the term "'[p]roduct liability claim' also includes any [common-law] public nuisance claim" based on the manufacture or distribution of a product. 2006 Ohio Laws File 198.  The Ohio Court of Common Pleas promptly dismissed Toledo's public-nuisance claim against the paint manufacturers, recognizing that the 2005 and 2007 amendments overruled *Beretta* and abrogated all common-law public-nuisance claims involving products. *Sherwin-Williams Co.*, 2007 WL 4965044, at n.2.[3]

---

[3] A different Ohio trial judge later suggested that *Beretta* still permits certain product-based public-nuisance claims.  *See State ex rel. DeWine* v. *Purdue Pharma LP*, 2018 WL 4080052, at *4 (Ohio Ct. Com. Pl. Aug. 22, 2018). That decision discussed only the first category in the "product liability claim" definition; it failed to mention either the 2007 amendment or *Sherwin-Williams*.

The district court's conclusion that OPLA abrogates only public-nuisance claims for compensatory damages is impossible to square with the 2007 amendment. Before 2007, OPLA *already* barred any product-liability claim, including one sounding in nuisance, against manufacturers or suppliers for compensatory damages. The whole point of the 2007 amendment was to make clear that the prohibition "*also* includes *any* public nuisance claim" based on the distribution or sale of a product. Ohio Rev. Code Ann. § 2307.71(A)(13) (emphasis added). Yet on the district court's interpretation, the 2007 amendment accomplished nothing. *See Lynch* v. *Gallia Cnty. Bd. of Comm'rs*, 680 N.E.2d 1222, 1224 (Ohio 1997) ("When confronted with amendments to a statute, an interpreting court must presume that the amendments were made to change the effect and operation of the law."). Even more perversely, under the court's reasoning, product-based public-nuisance claims that are disallowed in many common-law States, *see, e.g.*, *State ex rel. Hunter* v. *Johnson & Johnson*, 499 P.3d 719, 721 (Okla. 2021), are still permitted in Ohio—which has expressly abrogated them by statute.

The district court relied on snippets of legislative history indicating that the 2005 and 2007 amendments were not intended to "change[] much" from the 1988 version of OPLA. Doc. 1203 at 25. Read in full, however, the

20

legislative history reinforces what the statutory text and history already make clear:  the General Assembly amended OPLA to overrule judicial decisions that had applied the statute too narrowly.  In particular, the General Assembly explained that the 2007 amendment was "not intended to be substantive but [was] intended to clarify the General Assembly's original intent in enacting the Ohio Product Liability Act . . . , as initially expressed in [the 2005 amendment], *to abrogate all common law product liability causes of action including common law public nuisance causes of action*."  2006 Ohio Laws File 198 (emphasis added).  In other words, the 2007 amendment confirmed the General Assembly's broad intent to correct judicial decisions that had wrongly narrowed the statute—a correction that a federal district court has now undone.

### 2.     The egregious juror misconduct at trial requires a mistrial

Although the trial in this case never should have happened, at least it should have been fair.  A jury's consideration of outside evidence on a contested issue requires a mistrial, absent clear harmlessness.  As this Court explained in *In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982), the "jury's receipt of such extraneous information 'requires that the verdict be set aside, unless *entirely devoid of any proven influence or the probability of*

21

*such influence* upon the jury's deliberations or verdict.'" *Id.* at 215 (emphasis added) (quoting *Stiles* v. *Lawrie*, 211 F.2d 188, 190 (6th Cir. 1954)).  It is generally "not for the court to say" whether relevant "evidence improperly received" by the jury "could have had no influence on the verdict." *Stiles*, 211 F.2d at 190.  Instead, a mistrial is appropriate when the outside evidence relates to a contested issue. *Id.*  Accordingly, this Court has cautioned that "a juror introducing extraneous information into deliberations 'can rarely be viewed as harmless.'" *Nian* v. *Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 758 (6th Cir. 2021) (quoting *Beverly Hills*, 695 F.2d at 215).

Following that rule, this Court "has not hesitated to declare mistrials" when a jury reviews relevant outside evidence that pertains to a core disputed issue in the case. *Beverly Hills*, 695 F.2d at 213; *see, e.g.*, *Dassault Systèmes, SA* v. *Childress*, 828 Fed. Appx. 229, 246-248 (6th Cir. 2020) (juror acquired information about the defendant's income and settlement posture); *Aluminum Co. of Am.* v. *Loveday*, 273 F.2d 499, 499-500 (6th Cir. 1959) (juror traveled to the plaintiff's property to view allegedly injured cattle); *Stiles*, 211 F.2d at 190 (juror consulted Highway Department manual on skid marks made by cars driving at different speeds).  By contrast, this Court has declined to require a new trial when extrinsic evidence is unrelated to the elements of

the offense or claim, or is indisputably cumulative. *See, e.g.*, *United States* v. *Wheaton*, 517 F.3d 350, 361-362 (6th Cir. 2008) (juror looked up distance between two towns and replayed CD that was already admitted into evidence).

The outside evidence in this case was relevant to a contested issue at trial: whether the pharmacies' dispensing practices were driven by improper motives. The flier that Juror #4 found and distributed to other jurors fed directly into the Counties' narrative that corporate greed drove the pharmacies to fill opioid prescriptions improperly. It showed that Walgreens charged customers for life-saving naloxone when other organizations made it available for free. Even the Counties' counsel acknowledged that, in his "candid[]" view, the outside evidence could favor the Counties "because Walgreens is charging for something that's commercially available for free." Tr. 3723:7-12.

Indeed, there is no need for guesswork about whether the jury considered the information relevant. A juror had asked whether Walgreens offered naloxone "for free" to customers, Tr. 3292:22, leading to the testimony that prompted Juror #4's outside research. For that reason, the Counties' counsel later acknowledged that the outside evidence bore on "*an issue in the case that has been questioned.*" Tr. 3723:14-15 (emphasis added). The district

court, however, speculated that any relevance was limited because the parties might not even "mention" the issue "in final argument." Tr. 3786:12. But whether evidence is central enough to be raised in closing arguments is not the test. In any event, the Counties *did* address the pharmacies' profit motive in closing arguments, telling the jury that the pharmacies are "making money off every pill they sell" and that they "don't have to sell the drugs, they choose to sell the drugs." Tr. 7095:22-7096:1. In assessing whether that narrative was true, jurors naturally would have considered evidence that the pharmacies were charging for life-saving drugs that others dispensed for free.

The district court also was clearly and indisputably wrong to conclude that a mistrial is necessary only when a juror's misconduct "[comes] to light after the verdict." Tr. 3785:22-23. The court did not point to any authority limiting *Beverly Hills* that way. Nor would such a rule make sense. The need for a mistrial often does not turn on the timing of the revelation of misconduct. Regardless when misconduct comes to light, a jury's exposure to relevant extraneous evidence that "was not subject to scrutiny or cross-examination by any party" can yield "highly misleading results." *Beverly Hills*, 695 F.2d at 214-215. Although jurors may be able to set aside extraneous evidence that is irrelevant to a case, *see Wheaton*, 517 F.3d at 361, briefly asking jurors

24

whether they are biased cannot uncover the potential effect of outside evidence on deliberations on a core contested issue, because jurors might not yet be aware of its influence or might be instinctively inclined to reaffirm their impartiality.  For the same reasons, merely directing the jury not to consider such evidence cannot necessarily cure unconscious bias that may have already formed.  As even the Counties' counsel asserted, outside evidence on contested issues "affects everybody *whether they recognize it or not*."  Tr. 3769:13-14 (emphasis added).  This case's bellwether status does not change that analysis. *Compare* Tr. 3788:3-9 ("I have no idea when we could retry this, and this is a case of national importance because it's a Bellwether."), *with In re National Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020) ("The rule of law applies in multidistrict litigation . . .  just as it does in any individual case.").

### B.  Mandamus Is The Only Adequate Remedy

Unless this Court intervenes now and grants mandamus, the district court's erroneous orders will harm the pharmacies "in a way not correctable on appeal." *John B.* v. *Goetz*, 531 F.3d 448, 457 (6th Cir. 2008).  The pharmacies may be forced to wait *years* before an appealable final judgment is entered. Until then, they will be subject to extraordinary, unusual pressure to settle a claim that Ohio has plainly abrogated.

25

It is unclear just how long the pharmacies will have to wait before the district court enters an appealable final judgment.  A bench trial on remedies is currently scheduled for May 2022, and the court has no deadline for entering an appealable remedies decision thereafter.  Even after a remedies decision, another complication would arise because the district court previously severed, over the pharmacies' objection, the Counties' common-law public-nuisance claims from various other claims.  Doc. 3315 at 3 n.2, 4.  In its order denying certification, the court confirmed the possibility of a second trial on the Counties' remaining claims, observing that the Counties "will be able to pursue" their remaining claims once the remedies phase ends.  Doc. 4251 at 5.  The court also stated that "there will be a final judgment" after the remedies trial, *id.*, but it did not explain how that would be true in light of the severed claims, unless it was committing to enter a partial final judgment under Rule 54(b).

Either way, until the district court enters final judgment, the pharmacies will face extraordinary pressure to settle with the Counties.  This case is remarkable in part because, as this Court has already recognized, the district court has publicly "pushed for settlement" throughout the MDL.  *In re National Prescription Opiate Litig.*, 2019 WL 7482137, at *3 (6th Cir. Oct.

26

10, 2019). At the outset of the MDL, for example, the district court explained that it was not interested "in figuring out the answer to interesting legal questions," and that "we don't need trials." Doc. 71 at 4, 9. The court expressed its goal to "do something meaningful to abate this crisis" by ensuring "that we get some amount of money to [Plaintiffs] for treatment." *Id.* at 4-5. Although this Court concluded that the district court's comments did not warrant a writ of mandamus requiring recusal, the Court observed that "we do not encourage [the district court] to continue these actions." *National Prescription Opiate Litig.*, 2019 WL 7482137, at *2.

Together, the district court's documented preference for settlement and the enormous financial stakes place the pharmacies under unusually "intense pressure to settle." *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298 (7th Cir. 1995). Courts have held that the harm inflicted by unusually strong settlement pressure may warrant mandamus review because "the ruling that will have forced them to settle" cannot be corrected on appeal. *See id.* at 1298, 1304 (granting mandamus and directing the district court to decertify a class because certification imposed crushing pressure to settle a legally dubious claim); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984) (granting mandamus and directing decertification of a settlement class

27

because petitioners would be prejudiced by having to wait to appeal a settlement order); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1022 (5th Cir. 1997) (E. Jones, J., specially concurring) (explaining that mandamus was appropriate to review the selection of bellwether cases because of settlement pressure).

This trial's "bellwether" status compounds the harms from indefinite delay and unusual settlement pressure. This trial was selected to be a bellwether for "1,400 other cases of similar Plaintiffs" that include the same public-nuisance claim against the pharmacies. Doc. 3315 at 3. Bellwether trials are designed to help the parties assess their legal strengths and potential liabilities. But here, the fatally flawed verdict lacks objective legal value: a tainted jury found liability on a statutorily foreclosed claim, and the parties now face a novel remedial exercise about a common-law claim that does not exist. The jury verdict and eventual remedies decision will exert settlement pressure divorced from the legal merits of the Counties' claim. By contrast, mandamus relief would resolve this plainly barred claim and would allow the district court to move forward with other claims and cases that could advance the resolution of the MDL in a legally justifiable way.

Moreover, even setting aside the unique pressures and high stakes of this litigation, the pharmacies must now prepare for and participate in an onerous and costly remedies trial premised on an infirm verdict.  The burdens of a pointless remedies trial will be particularly high in light of competing opioid-related suits, which require the pharmacies to mobilize resources elsewhere—including two major opioid trials scheduled concurrently with the remedies trial here and three others within six months.  Each of those trials will last at least two months and will require the resources of a full trial team, as well as the testimony of several expert witnesses scheduled to testify in the remedies trial here.  For all of those reasons, absent this Court's immediate intervention, the pharmacies will "suffer at least some damage . . . that cannot be corrected on appeal." *John B.*, 531 F.3d at 458.

Finally, contrary to the district court's suggestion, Doc. 4251 at 2-4, the pharmacies have pursued their arguments diligently and have sought certification, and now mandamus, in the only practicable way.  After the district court denied an earlier motion to certify the OPLA issue, Doc. 1283, it would have been futile for the pharmacies to seek certification of the same issue until the posture of the case changed significantly.  So the pharmacies reluctantly went to trial.  But trial before a tainted jury compounded rather

29

than mooted the district court's statutory-interpretation error.  At that point, the pharmacies might have sought certification or mandamus after a ruling on the pharmacies' Rule 50(a) motion or their post-trial motions.  But the district court deferred ruling on the Rule 50(a) motions, *see supra* p. 11 n.1, and has not yet ruled on the post-trial motions.  So within 30 days of the jury verdict, the pharmacies sought certification of the underlying orders addressing OPLA and juror misconduct.   Doc. 4205.   With the remedies trial fast approaching, mandamus of those underlying orders (or, as discussed below, of the decision denying certification) is the pharmacies' only viable chance at relief.

### C.    Mandamus Is Appropriate Under The Circumstances

This Court has already recognized the "paramount importance of the litigation's subject matter."   *In re National Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019).  Mandamus is especially appropriate in this case for two additional reasons.

First, the district court's orders raise "new and important problems" and "issues of law of first impression."  *John B.*, 531 F.3d at 457.  The court's interpretation of OPLA is a significant issue of first impression.  The Ohio Supreme Court has not addressed the scope of OPLA abrogation since the

2005 and 2007 amendments.  And this is not a one-off case.  Rather, the proper construction of the post-2007 statute will govern all Ohio claims in the MDL—including 93 filed suits and another bellwether suit awaiting trial, *Montgomery Cnty. Bd. of Cnty. Comm'rs* v. *Cardinal Health, Inc.*, No. 1:18-op-46326 (N.D. Ohio).  The district court's ruling on juror misconduct likewise presents a "new and important problem[]," *John B.*, 531 F.3d at 457, implicating "the integrity of the [jury] system itself," *Beverly Hills*, 695 F.2d at 213.

Second, the federalism implications of the district court's OPLA ruling heighten the need for mandamus.  *See In re University of Mich.*, 936 F.3d 460, 465-467 (6th Cir. 2019) (discussing federalism concerns that supported mandamus); *In re Gee*, 941 F.3d 153, 166 (5th Cir. 2019) ("[F]ederalism concerns justify review by mandamus.").  A "state's sovereignty is unquestionably implicated when federal courts construe state law." *Scott* v. *Bank One Tr. Co., N.A.*, 577 N.E.2d 1077, 1080 (Ohio 1991).  And when a federal court misinterprets a state statute, "the federal court both does an injustice to one or more parties, and frustrates the state's policy that would have allocated the rights and duties differently." *Id.*  For that reason, federal courts must be "extremely cautious about adopting 'substantive innovation' in state law." *Combs* v. *International Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004)

31

(citation omitted).  Here, the district court negated Ohio's considered decision to remove public-nuisance claims from the common law.  In so doing, the court massively expanded nuisance law beyond its traditional reach to cover the distribution and sale of lawful products—not just opioids—whose use can burden a community.  That important change in Ohio law warrants this Court's immediate correction.

## II.    AT A MINIMUM, THIS COURT SHOULD ISSUE A WRIT OF MANDAMUS DIRECTING THE DISTRICT COURT TO CERTIFY ITS ORDERS FOR INTERLOCUTORY APPEAL

At the very least, this Court should issue a writ of mandamus requiring the district court to certify its motion-to-dismiss and mistrial orders for interlocutory review under 28 U.S.C. § 1292(b).  The pharmacies have a "clear and indisputable" right to certification, and immediate review of the underlying orders is both appropriate and necessary.  *See Cheney*, 542 U.S. at 380-381.

### A.    This Court May Grant A Writ Of Mandamus To The Denial Of A Motion For Certification

When a district court clearly abuses its discretion in applying Section 1292(b), a writ of mandamus is available to remedy the error.  Section 1292(b) provides that a district judge "shall" certify his order for interlocutory appeal whenever it "involves a controlling question of law as to which there is

substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The district court's decision whether to certify is discretionary. *Swint* v. *Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995). But "discretion is not whim." *Halo Elecs., Inc.* v. *Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016) (citation omitted); *see, e.g.*, *Dart Cherokee Basin Operating Co.* v. *Owens*, 135 S. Ct. 547, 555 (2014) (reviewing discretionary denial of appellate review). Discretion can be abused, and a "clear abuse of discretion" can "justify the invocation" of the mandamus remedy. *Cheney*, 542 U.S. at 380 (citation omitted).

This Court has not yet had occasion to issue a writ of mandamus to correct the erroneous denial of certification under Section 1292(b)—rather than, as discussed in Part I, to correct the underlying orders that the district court erroneously refused to certify. *Cf. Lott*, 424 F.3d at 449. But a district court's denial of a motion to certify is a discretionary decision ripe for mandamus review. The mandatory directive "shall" in the statute underscores "the *duty* of the district court" to permit an interlocutory appeal "when the statutory criteria are met." *Ahrenholz* v. *Board of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (emphasis added); *see Mohawk Indus.*, 558 U.S. 100, 110-111 (2009). Moreover, a district court's decision to deny

33

certification carries great weight because it effectively strips appellate courts of their own discretion under Section 1292(b) to determine whether to accept jurisdiction over the case at an interlocutory stage. Mandamus relief is thus a critical "safety valve[]" to correct certification denials that constitute clear abuses of discretion. *Mohawk Indus.*, 558 U.S. at 111 (citation omitted).

Although clear abuses of discretion may be rare, other courts of appeals have recognized that they are not powerless when such abuses occur. *See, e.g.*, *Fernandez-Roque* v. *Smith*, 671 F.2d 426 (11th Cir. 1982) (granting mandamus and directing the district court to certify under Section 1292(b)); *In re Trump*, 928 F.3d 360, 371-372 (4th Cir. 2019) (same), *vacated*, 958 F.3d 274 (4th Cir. 2020) (en banc), *vacated*, 141 S. Ct. 1262 (2021); *cf. In re Trump*, 781 Fed. Appx. 1, 2 (D.C. Cir. 2019) (concluding that the criteria for certification were satisfied and remanding for the district court to reconsider); *In re McClelland Engrs., Inc.*, 742 F.2d 837, 837-838 (5th Cir. 1984) (concluding that the district court's refusal to certify constituted an abuse of discretion and "request[ing] that the district court certify"). This Court should do the same.

## B.    The District Court's Refusal To Certify An Immediate Appeal Warrants Mandamus Relief

This case "presents the truly 'rare' situation in which it is appropriate for this court to require certification." *Fernandez-Roque*, 671 F.2d at 431

(citation omitted).  The three statutory criteria for interlocutory appeal under Section 1292(b) are clearly and indisputably satisfied, but the district court nevertheless denied the pharmacies' motion.  That denial was an abuse of discretion, and mandamus relief is the only adequate means to correct the court's error.

First, the underlying orders clearly involve "controlling question[s] of law."  28 U.S.C. § 1292(b).  A legal question "is controlling if it could materially affect the outcome of the case."  *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002).  Whether OPLA abrogates the Counties' public-nuisance claim is a pure question of statutory interpretation that would resolve the pharmacies' liability in the bellwether trial.  Likewise, the juror-misconduct question turns on the legal rule adopted in *Beverly Hills* and that rule's application to undisputed facts, and a ruling for the pharmacies would allow the parties to present their case to a new, untainted jury.

Second, there is clearly "substantial ground for difference of opinion" over the district court's rulings on OPLA and juror misconduct.  28 U.S.C. § 1292(b).  The district court plainly erred in departing from OPLA's unambiguous text and in determining that Juror #4's misconduct was

35

irrelevant.  But at a bare minimum, reasonable jurists could disagree with the court's rulings (and Magistrate Judge Ruiz already has).

Third, it is clear and indisputable that immediate review of the orders "would materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  If this Court concludes that OPLA abrogates the Counties' public-nuisance claim, the bellwether trial would be over—which, contrary to the district court's reasoning, Doc. 4251 at 5, materially advances the termination of this case even if some other claims might be tried later. Immediate review of the juror-misconduct issue would also advance the litigation by permitting the parties to proceed directly to a new trial before a new jury without first wasting time and resources on a pointless remedies trial premised on a tainted verdict.

Finally, mandamus relief is necessary and appropriate.  If this Court declines to grant a writ of mandamus as to the district court's underlying orders, a writ of mandamus directing the district court to certify its orders for interlocutory appeal is the only available alternative to spare the pharmacies from the burdens and costs imposed by the upcoming remedies trial; the possibility of indefinite delay before an appealable final judgment or partial final judgment; and the unusual judicial pressure that the district court has

exerted and continues to exert on the pharmacies to settle while those delays stretch on.

## CONCLUSION

For the foregoing reasons, the Court should grant a writ of mandamus directing the district court to enter judgment for the pharmacies, order a mistrial, or at a minimum certify the relevant OPLA and juror-misconduct orders for interlocutory appeal.

Respectfully submitted,

/s/  Noel J. Francisco
NOEL J. FRANCISCO
JOHN M. MAJORAS
BENJAMIN C. MIZER
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
njfrancisco@jonesday.com
jmmajoras@jonesday.com
bmizer@jonesday.com

TINA M. TABACCHI
TARA A. FUMERTON
JONES DAY
77 West Wacker
Chicago, IL 60601
(312) 269-4335
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*

FEBRUARY 7, 2022

/s/ Jeffrey B. Wall
JEFFREY B. WALL
MORGAN L. RATNER
ZOE A. JACOBY
SULLIVAN & CROMWELL LLP
1700 New York Avenue, NW
Washington, DC 20006
(202) 956-7500
wallj@sullcrom.com
ratnerm@sullcrom.com
jacobyz@sullcrom.com

KASPAR STOFFELMAYR
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

38

## CERTIFICATE OF COMPLIANCE

This petition complies with Federal Rule of Appellate Procedure 21(d)(1) because it contains 7,794 words.

This petition also complies with Federal Rule of Appellate Procedure 32(a) because it was prepared in 14-point font using a proportionally spaced typeface.

/s/ Jeffrey B. Wall
JEFFREY B. WALL

FEBRUARY 7, 2022

## CERTIFICATE OF SERVICE

I certify that on February 7, 2022, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system.

I further certify that on February 7, 2022, a copy of the foregoing was served upon the district court via email, and upon plaintiffs' counsel via email at the agreed-upon listserv.  A copy of the foregoing will also be served upon the district court via U.S. First Class Mail.

/s/ Jeffrey B. Wall
JEFFREY B. WALL

FEBRUARY 7, 2022