**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>TRACK THREE | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**REPLY IN SUPPORT OF PHARMACY DEFENDANTS'
MOTION TO COMPEL PLAINTIFFS TO COMPLY WITH COURT ORDER**

This Court ordered Plaintiffs to provide two years of their *actual expenditures* relating to "each element of their abatement plan." Doc. 4220. Plaintiffs concede that they did not do so. Instead, they provided "estimates" of how their departments supposedly were "impacted by the opioid epidemic"—with no explanation of, or support for, those "estimates."

Plaintiffs say that the counties are "unable to distinguish between opioid and non-opioid related expenditures for each department or agency" as the Order requires. But plaintiffs provide no declarations or other support, besides attorney commentary, supporting this position. When plaintiffs pay to treat a resident's opioid use disorder, they know how much they paid. When they fund drug take-back and disposal programs, they know how much they contributed. Plaintiffs, after all, are government entities subject to good government and recordkeeping requirements when they spend taxpayer money. Yet plaintiffs do not identify any efforts they have made to try to collect this information from their records. They do not even say whether that they have involved their accountants. They should be compelled to comply.

Plaintiffs go on to say that counsel has "met with department heads and employees" in order to provide what they deem to be an alternative—"a best estimate of what percentage of the

departments' activities were impacted [in some undefined way] by the opioid epidemic." But plaintiffs do not identify a single county employee with whom their counsel met. Nor do they disclose how these employees derived the supposed estimates or what information, if any, they relied on in making such estimates. Further, even as they substitute these estimates for the actual costs required by the Order, plaintiffs do not provide estimates for each individual element of their abatement plan and instead aggregate estimates across elements. Plaintiffs not only fail to provide the actual numbers required by the Order, but they shroud in mystery the estimates that they provide as an alternative.

Compounding matters, when defendants deposed plaintiffs' abatement expert (Caleb Alexander) last week, plaintiffs' counsel would not permit him to answer questions about his involvement, if any, in preparing the estimates that plaintiffs submitted to the Court. Likewise, plaintiffs' expert economist (John Burke), who purports to compute the cost of plaintiffs' purported abatement plan, testified yesterday that he did not review the budgets of any county department and that he was not aware of, and had no involvement in preparing, the estimates that plaintiffs provided to Court. Because plaintiffs have not provided any information about the estimates they provided in lieu of compliance with the Court's order, plaintiffs' estimates cannot be tested, verified, or even understood. As far as Defendants can tell, plaintiffs' estimates may have been drawn from thin air.

It is not remotely sufficient for plaintiffs to regurgitate over dozens of pages their forward-looking abatement requests and their experts' projections of their future costs. The Order called for something different—*actual* expenditures looking back two years. Plaintiffs, by their own admission, have not provided these past expenditures, and their lengthy brief does not change this.

As a matter of fundamental fairness, if plaintiffs are unwilling or unable to disclose their actual past costs of the elements of their abatement plan, they cannot be permitted to present evidence at trial of what their future costs will be. It would derogate Defendants' trial rights to allow plaintiffs to wield projected future costs as a weapon without requiring them to provide their actual past costs for Defendants to use to challenge them. The Court must compel plaintiffs to comply with the Order or preclude them from offering evidence of projected future costs.

February 16, 2022

Respectfully submitted,

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zucerkman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*

/s/ *John M. Majoras*
John M. Majoras
JONES DAY
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Phone: (202) 879-3939
Fax: (202) 626-1700
Email: jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Attorneys for Walmart Inc.*

*/s/ Kaspar J. Stoffelmayr*
Kaspar J. Stoffelmayr
Brian C. Swanson
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
brian.swanson@bartlitbeck.com
kate.swift@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc.; Walgreen Co., and Walgreen Eastern Co., Inc.*

4