# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**STATE OF WEST VIRGINIA, et al.,**

    **Plaintiffs,**

v.                                              **CIVIL ACTION NO. 2:17-03555**

**MCKESSON CORPORATION,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's motion to remand. (ECF No. 4.) On October 31, 2017, the court held a hearing on that motion. For the reasons set forth below, the motion is **GRANTED**.[1]

### I. Background

Plaintiffs brought this case against defendant in the Circuit Court of Boone County, West Virginia, on January 8, 2016. In general terms, plaintiffs, on behalf of the State of West Virginia, allege that defendant McKesson Corporation, a national pharmaceutical drug distributor, did not take sufficient steps to monitor, report, and remedy purportedly suspicious shipments of

---

[1] On December 5, 2017, a Transfer Order was filed and the Judicial Panel on Multidistrict Litigation ("JPML") transferred this case to the United States District Court for the Northern District of Ohio for coordinated or consolidated pretrial proceedings. See ECF Nos. 16 and 17. On December 27, 2017, the JPML remanded the matter to this court so that it might decide the pending remand motion. The Clerk reopened the matter on January 19, 2018.

pharmaceuticals into West Virginia.  Plaintiffs assert eight counts against McKesson:  violation of the West Virginia Consumer Credit and Protection Act (Count I); unfair methods of competition and/or unfair or deceptive acts or practices (Count II); violations of the West Virginia Uniform Controlled Substances Act ("WVCSA") requiring injunctive relief (Count III); negligent violation of the WVCSA (Count IV); intentional violation of the WVCSA (Count V); public nuisance (Count VI); negligence (Count VII); and unjust enrichment (Count VIII).

On February 23, 2016, defendant removed the case to federal court alleging federal question jurisdiction existed over this matter.  The case was assigned to Judge John T. Copenhaver, Jr. and assigned Civil Action No. 2:16-01772.  With respect to the assertion that federal question jurisdiction existed, Judge Copenhaver summarized McKesson's argument as follows:

> Defendant responds that plaintiffs' complaint can be reduced in substance to a theory of the case in which defendant breached a single "duty to refuse to fill suspicious orders" of certain pharmaceutical drugs.  See, e.g., Def.'s Resp. to Pls.' Mot. to Remand 6 (hereinafter "Def.'s Resp.").  Defendant argues that the federal Controlled Substances Act ("federal CSA") alone can generate the duty that defendant is alleged to have breached. Def.'s Resp. 10 ("No court could issue the requested instructions without specifically concluding that McKesson violated federal law—i.e., the federal CSA.").  According to defendant, the duty to refuse to fill suspicious orders does not arise directly from the federal CSA; instead, it arises, if at all, in the federal CSA "as interpreted by [the Drug Enforcement Agency ("DEA")]" in two letters, written in 2006 and 2007, from the DEA to all registered distributors.  Id. 7, 15.

2

>     The 2006 DEA letter stated that "in addition to reporting suspicious orders, a distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders that might be diverted into other than legitimate . . . channels." Masters Pharmaceuticals, Inc., Decision and Order, 80 Fed. Reg. 55,418, 55,421. The 2007 letter warned distributors that "[r]eporting an order as suspicious will not absolve the registrant of responsibility if the registrant knew, or should have known, that the controlled substances were being diverted." Masters Pharmaceuticals, 80 Fed. Reg. at 55,421. Defendant argues that the two letters together generate a single duty to "refuse to fill suspicious orders" that forms the basis of all of plaintiffs' claims. See, e.g., Def.'s Resp. 6. Defendant also contends that removal is improper only if plaintiffs rely exclusively on state law claims, which defendant says they allegedly do not. Rather, defendant asserts that federal claims are present on the face of the complaint in Counts III, IV, and V in the references to "United States laws and regulations," and that all of plaintiffs' claims depend on a substantial federal question.

W. Va. ex rel. Morrisey v. McKesson Corp., Civil Action No. 16-1772, 2017 WL 357307, *4 (S.D.W. Va. Jan. 24, 2017).

On January 24, 2017, the court granted plaintiffs' motion to remand. Judge Copenhaver, after consideration of the test articulated by the Supreme Court in Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg., 545 U.S. 308 (2005)[2], concluded that plaintiffs' right to relief under state law did not require

---

[2] The Grable factors were recently summarized by the Supreme Court as follows: "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013).

3

resolution of a substantial question of federal law in dispute between the parties. See id. at *8. As Judge Copenhaver noted:

> [P]laintiffs have not alleged violations of any specific federal laws or regulations, and no federal statute or regulation has emerged as an "essential element" of the underlying claim. Rather, plaintiffs have alleged numerous and substantial issues of state law in both their complaint and their motion. See, e.g., Compl. ¶¶ 377, 392; Pls.' Mot. 2.
>
> Consequently, it does not appear to the court that the only possible source of a putative duty to avoid filling suspicious orders lies in letters relied upon only by defendant, or that plaintiffs' claims necessarily rely on this duty. For one thing, there are no good reasons to believe that the letters have any binding effect upon distributors. Plaintiffs contend that "the DEA letter[s] do [ ] not create a binding effect upon distributors such as the defendant, and [are] to be construed as [ ] mere warning letter[s]." Pls.' Reply 7 (quotation marks omitted). Defendant concedes that the letters were not binding, but in apparent contradiction, insists that the letters generate an "obligation" that must be "heed[ed]." Def.'s Surreply to Pls.' Reply in Supp. of Mot. to Remand 2. To the extent that the letters prove relevant, their guidance may of course be marshalled in support of particular allegations. The agency itself, however, has found that the letters were "not intended to have binding effect but were simply warning letters." Masters Pharmaceuticals, 80 Fed. Reg. at 55,475. Of course, plaintiffs, not defendant, are "master[s] of the claim." Caterpillar, 482 U.S. at 392.
>
> Defendant cannot stipulate a single duty to refuse to fill suspicious orders, about which defendant is itself ambivalent, generated merely by DEA letters in order to bootstrap into federal court a complaint that alleges numerous specific state-law causes of action. "[F]ederal jurisdiction is disfavored for cases . . . which involve substantial questions of state as well as federal law." Bender, 623 F.3d at 1130. Plaintiffs have alleged violations of numerous West Virginia statutes and regulations, and the use of the catch-all "United States laws and regulations" does not operate

4

to unlock the federal courts to the claims at issue
here. Even were there some indication from the
complaint—which there is not—that federal agency
letters provided some binding and relevant duty, "any
doubts concerning the propriety of removal should be
resolved against removal." Barbour, 640 F.3d at 617.
Defendant bears the burden of quieting such doubts and
has not done so here. Strawn, 530 F.3d at 296.
Defendant has therefore not made out a case under
Grable that all of plaintiffs' claims necessarily hinge
on the duty to refuse to fill suspicious orders, and as
a consequence, the exercise of removal jurisdiction is
improper.

Id.

This case now finds itself in federal court for a second time because, on July 7, 2017, McKesson once again removed the case to this court. In state court, McKesson moved for judgment on the pleadings asserting that McKesson has no duty under state law to refuse to ship suspicious orders. See ECF No. 1 at 1-2 and 4. In its opposition to McKesson's motion, plaintiffs asserted:

> McKesson fully comprehends its obligation to never
> distribute suspicious orders of addictive controlled
> substances. This is an inherent part of its duty to
> maintain effective controls and procedures to guard
> against diversion of controlled substances, a duty that
> would be rendered illusory if McKesson was not obliged
> to refrain from distributing suspicious orders of
> controlled substances. The Drug Enforcement
> Administration (DEA) for many years has instructed
> McKesson (and all other controlled substance
> distributors) that as part of its duty to maintain
> effective controls and procedures to guard against
> diversion (the identical duty imposed by West Virginia
> law), McKesson must not distribute suspicious orders of
> controlled substances. DEA letters, Ex. 5. Because
> West Virginia law identically requires effective
> controls and procedures to guard against diversion, it
> likewise bars McKesson from distributing suspicious

5

> orders. Thus, while this issue is not determinative of
> the State's claims, it is abundantly clear that by
> distributing suspicious orders of controlled substances
> into West Virginia, McKesson violates a legal duty owed
> to the State to refrain from doing so.

Notice of Removal at pp. 4-5 (ECF No. 1)(quoting Plaintiffs' Response to McKesson's Motion for Judgment on the Pleadings in Civil Action No. 16-C-1 at pp. 10-11 (June 30, 2017) (footnotes omitted) (attached as Exhibit A to Notice of Removal)). In support of their argument, plaintiffs attached the aforementioned DEA letters to their opposition brief. ECF No. 1 at 11.

According to McKesson, plaintiffs' position taken in state court is directly at odds with the position they took before Judge Copenhaver in order to obtain remand. Compare ECF No. 1 at 5 ("The Drug Enforcement Administration (DEA) for many years has instructed McKesson . . . that as part of its duty to maintain effective controls and procedures to guard against diversion (the identical duty imposed by West Virginia law), McKesson must not distribute suspicious orders of controlled substances. DEA letters, Ex. 5") with ECF No. 17 at p. 7 in Civil Action No. 2:16-cv-01772 ("[T]he defendant would have this Court rule that the DEA letter is now binding on distributors of controlled substances, simply in an attempt to create a binding duty where none exists. Because the federal Act does not purport [to impose] a legal duty upon the defendant to refuse to ship suspicious orders, it is impossible for [the federal CSA] to be

6

implicated simply because the State used the words "refuse" or "suspend" in its Amended Complaint. Thus, because the federal Act is not implicated, it also is not necessarily raised. . . ."); ECF No. 14 in Civil Action No. 2:16-cv-1772 at p. 18 ("The State can prove every element of every cause of action under state-based theories of law without relying on any federal standard or interpreting any federal law. Because the State can prove its right to relief without any court's ruling on a federal question, the State's claims do not "necessarily depend" on a "substantial" question of federal law."). Therefore, McKesson argues "[p]laintiffs' request to the state court to impose on McKesson a binding legal duty found in the DEA's interpretation of federal law in order to sustain their claims now establishes that at least some of Plaintiffs' claims depend on a substantial federal question" in turn creating federal jurisdiction. ECF No. 1 at 8.

##    II.  Legal Standard

It is well established that the party invoking jurisdiction bears the burden of proof that all prerequisites to jurisdiction are satisfied, Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)(citing Wilson v. Republic Iron & Steel Co., 257 U.S. 92 (1921)), and that any doubts about the propriety of removal are resolved in favor of state court jurisdiction and

7

remand, Mulcahey, 29 F.3d at 151 (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941)).

"`Federal courts are courts of limited jurisdiction,' possessing `only that power authorized by Constitution and statute.'" Gunn v. Minton, 568 U.S. 251, 256 (2013) (quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994)). As is relevant here, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[A] case can `arise[e] under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted. . . . But even where a claim finds its origins in state rather than federal law. . . we have identified a `special and small category' of cases in which arising under jurisdiction still lies." Gunn, 568 U.S. at 257-58 (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)).

> In outlining the contours of this slim category, we do not paint on a blank canvas. Unfortunately, the canvas looks like one that Jackson Pollock got to first.
>
> In an effort to bring some order to this unruly doctrine several Terms ago, we condensed our prior cases into the following inquiry: Does the "state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"? Grable, 545 U.S. at 314, 125 S. Ct. 2363. That is, federal jurisdiction over a

8

>    state law claim will lie if a federal issue is: (1)
>    necessarily raised, (2) actually disputed, (3)
>    substantial, and (4) capable of resolution in federal
>    court without disrupting the federal-state balance
>    approved by Congress. Where all four of these
>    requirements are met, we held, jurisdiction is proper
>    because there is a "serious federal interest in
>    claiming the advantages thought to be inherent in a
>    federal forum," which can be vindicated without
>    disrupting Congress's intended division of labor
>    between state and federal courts." Id. at 313-314, 125
>    S. Ct. 2363.

Id. at 258. In the case discussed above, Grable & Sons Metal Prods., Inc. v. Darue Eng'g and Mfg., 545 U.S. 308, 315 (2005), the court found federal question jurisdiction existed over a state quiet title action. The Court has cautioned that "it takes more than a federal element `to open the arising under' door." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 701 (2006).

According to McKesson, this case falls under that "slim category" of cases discussed by the Court in Grable.

### III. Analysis

A. *Motion to Remand*

The instant case is similar to the case of Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804 (1986). In Merrell Dow, plaintiffs sued a drug manufacturer in Ohio state court alleging that the drug Bendectin caused birth defects. Plaintiffs sought recovery based on common law theories of negligence, breach of warranty, strict liability, fraud, and gross negligence. See id. at 805. Plaintiffs also alleged that Merrell Dow, the drug

9

manufacturer, misbranded Bendectin in violation of the federal Food, Drug, and Cosmetic Act ("FDCA") and that a violation of the FDCA created a rebuttable presumption of negligence. See id. at 805-06.

Merrell Dow removed the cases to federal court, contending that the actions were "founded, in part, on an alleged claim arising under the laws of the United States." Id. at 806 (internal citation and quotation marks omitted). The district court denied plaintiffs' motion to remand. See id. The United States Court of Appeals for the Sixth Circuit reversed. See id. Acknowledging that the FDCA did not create or imply a private right of action for persons injured by violations of the Act, the court explained:

> Federal question jurisdiction would, thus, exist only if plaintiffs' right to relief depended necessarily on a substantial question of federal law. Plaintiffs' causes of action referred to the FDCA merely as one available criterion for determining whether Merrell Dow was negligent. Because the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' cause of action did not depend necessarily upon a question of federal law. Consequently, the causes of action did not arise under federal law and, therefore, were improperly removed to federal court.

Id. at 807 (quoting 766 F.2d at 1005, 1006 (1985)).

The Supreme Court affirmed. See id. In so doing, the Court framed the issue as "whether the incorporation of a federal standard in a state-law private action, when Congress has intended that there not be a federal private action for

10

violations of that federal standard makes the action one `arising under the Constitution, laws, or treaties of the United States.'" <u>Id.</u> at 805 (quoting 28 U.S.C. § 1331). The Court concluded "that a complaint alleging a violation of a federal statute as an element of a state cause of action, where Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim arising under the Constitution, laws, or treaties of the United States." <u>Id.</u> at 817.

Significantly, the <u>Grable</u> Court did not call the <u>Merrell Dow</u> holding into question. 545 U.S. at 305, 316. Acknowledging that the absence of a private cause of action in <u>Merrell Dow</u> was important to, but not dispositive of, the court's holding that federal jurisdiction did not exist, the Court specifically noted that "<u>Merrell Dow</u> disclaimed the adoption of any bright-line rule." <u>Id.</u> at 317. As such, the Court wrote

> Accordingly, <u>Merrell Dow</u> should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the "sensitive judgments about congressional intent" that § 1331 requires. The absence of any federal cause of action affected <u>Merrell Dow</u>'s result two ways. The Court saw the fact as worth some consideration in the assessment of substantiality. But its primary importance emerged when the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331. The Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of

11

> original filings and removal cases raising other state claims with imbedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.
>
> One only needed to consider the treatment of federal violations generally in garden variety state tort law. . . . A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts. . . . In this situation, no welcome mat meant keep out. <u>Merrell Dow</u>'s analysis thus fits within the framework of examining the importance of having a federal forum for the issue, and the consistency of such a forum with Congress's intended division of labor between state and federal courts.

<u>Id.</u> at 318-19.

With these principles in mind and having considered the <u>Grable</u> factors, the court concludes that this case should be remanded to state court once again. The earlier remand decision focused extensively on whether the alleged federal issue was necessarily raised and Judge Copenhaver rightly concluded that it was not.[3] However, even if, for purposes of this motion, the

---

[3] Our appeals court has counseled that "a claim `necessarily depends on a question of federal law only when <u>every</u> legal theory supporting the claim requires the resolution of a federal issue.'" <u>Pressl v. Appalachian Power Co.</u>, 842 F.3d 299, 304 (4th Cir. 2016) (quoting <u>Flying Pigs, LLC v. RRAJ Franchising, LLC</u>, 757 F.3d 177, 182 (4th Cir. 2014) (emphasis in original)).

While McKesson argues that this case rises and falls on whether the DEA letters imposed a duty upon McKesson to refuse to fill suspicious orders, the Complaint "alleges violations of

12

court assumes both that a federal issue is raised in this case and that it is actually disputed, that does not end the court's inquiry. Any alleged "duty" found in the DEA letters is not substantial because, as Judge Copenhaver observed, "plaintiff's complaint alleges violations of numerous duties implicated by state law" that do not depend on this disputed duty found in federal law.[4] W. Va. ex rel. Morrisey v. McKesson Corp., Civil

---

numerous duties implicated by state law." W. Va. ex rel. Morrisey v. McKesson Corp., Civil Action No. 16-1772, 2017 WL 357307, *8 (S.D.W. Va. Jan. 24, 2017) ("For example, the West Virginia State Board of Pharmacy's rules require that `[a]ll registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances.' W. Va. C.S.R. 15-2-4.2.1. The same rules require that a `registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the Board of suspicious orders when discovered by the registrant.' W. Va. C.S.R. 15-2-4.4. As noted above, plaintiffs allege violations of numerous duties implicated by these regulations, including duties to `investigate, report, and cease fulfilling suspicious orders,' Compl. ¶ 24, to implement a `precise system of detecting and monitoring the supply of prescription medicine,' Compl. ¶ 346, `to adequately design and operate a system to disclose suspicious orders of controlled substances,' Compl. ¶ 406, and `to inform the State of suspicious orders,' id."). Based on the foregoing, it is difficult for the court to conclude that every legal theory supporting plaintiffs' claims requires resolution of whether federal law – as interpreted in the DEA letters – created a duty to refuse to ship suspicious orders.

Furthermore, if McKesson is indeed correct in its assertion that plaintiffs' case rests entirely on the guidance found in the DEA letters, the case should be easily disposed of in state court given that plaintiffs have conceded more than once that those letters do not create a duty.

[4] See, e.g., W. Va. ex rel. Morrisey v. McKesson Corp., Civil Action No. 16-1772, 2017 WL 357307, *4 (S.D.W. Va. Jan. 24, 2017) at *7 ("The complaint cites on numerous occasions to West

13

Action No. 16-1772, 2017 WL 357307, *8 (S.D.W. Va. Jan. 24, 2017).

Furthermore, as the Supreme Court has explained

[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as Grable separately requires. The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole.

Gunn v. Minton, 568 U.S. 251, 260 (2013) (emphasis in original). The federal courts have little interest in deciding cases involving West Virginia's Uniform Controlled Substances Act and West Virginia's negligence and public nuisance law, even if violation of a federal statute or standard is an element of those claims.

Finally, the court concludes that recognizing federal question jurisdiction over this case would disrupt the balance struck by Congress between state and federal judicial responsibilities. First the federal Controlled Substances Act

---

Virginia regulations, which require, for example, that "[t]he registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances." W. Va. C.S.R. 15-2-4.4. In Count III, plaintiffs allege that defendant "failed to diligently identify and report suspicious orders it received," Compl. ¶ 366, and "failed to develop a system sufficient to adequately identify suspicious orders," id. ¶ 367. Counts IV and V allege violations of West Virginia statutory provisions, including violations of West Virginia Code § 60A-3-308, 60A-4-401 through 403, and 60A-8-1, et seq. 6, that cannot be reduced simply to a duty to avoid filling orders. See, e.g., id. ¶¶ 377, 392.).

14

(CSA) does not create a private of action,[5] a factor which, even under Grable, weighs heavily in favor of remanding this case to state court.  Even if the two DEA letters conferred a duty upon McKesson to refuse to ship suspicious orders, this alone is insufficient to bring traditional state law claims into federal court.  The federal courts have little interest in exercising jurisdiction over claims alleging violation of state statutory and common law – even where resolution of such claims might involve a "federal element".  To do so would shift a significant number of garden-variety state law claims into a federal forum, thereby upsetting the congressionally intended division between state and federal courts.

B.  *Fees and Costs*

Plaintiffs also seek reimbursement of the costs and fees incurred in filing the instant motion.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  "[W]hen an objectively reasonable basis [for removal] exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  The court finds that McKesson had a reasonable basis for removal in this case given the representations made by plaintiffs in state court which, at

---

[5] See Welch v. Atmore Community Hosp., No. 17-11244, 704 F. App'x 813, 816 (11th Cir. Aug. 18, 2017) (and authorities cited therein).

times, seem to run counter to what they argued their first time in federal court. Therefore, the court will not award costs and fees.

### III. Conclusion

For the aforementioned reasons, the court hereby **GRANTS** plaintiff's motion to remand and the case is **REMANDED** to the Circuit Court of Boone County. The motion for costs and fees is **DENIED**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record, the Clerk of the Circuit Court of Boone County, West Virginia, and the United States District Court for the Northern District of Ohio (MDL 2804).

It is **SO ORDERED** this 15th day of February, 2018.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge