# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  February 28, 2022

Ms. Kara Kapke
Barnes & Thornburg
11 S. Meridian Street
Indianapolis, IN 46204

Mr. David Marmins
Arnall Golden Gregory
171 17th Street, N.W.
Suite 2100
Atlanta, GA 30363

Re:  Case No. 22-3157, *In re: Publix Super Markets, Inc.*
Originating Case Nos. 1:17-md-02804 : 1:18-op-45817

Dear Counsel:

The petition for writ of mandamus has been docketed as case number **22-3157** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

The filing fee for the petition is $500, which is payable to the Clerk, Sixth Circuit Court of Appeals.  If you wish to seek a waiver of the filing fee, a motion for pauper status with a completed financial affidavit is due by **March 14, 2022**.  The financial affidavit is available at www.ca6.uscourts.gov.  Additionally, counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit by this date.  The forms are available on the court's website.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

**No. 22-____**

**In the United States Court of Appeals
for the Sixth Circuit**

———————————————

*In Re National Prescription Opiate Litigation*

———————————————

IN RE PUBLIX SUPER MARKETS, INC.,
*Petitioner.*

———————————————

United States District Court for the
Northern District of Ohio, Eastern Division
(No. 1:17-MD-2804 and No. 1:18-OP-45817)
(The Hon. Dan Aaron Polster)

———————————————

**PETITION FOR WRIT OF MANDAMUS**

———————————————

KARA M. KAPKE
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
(317) 231-6491
Kara.kapke@btlaw.com

*Counsel for Publix Super
Markets, Inc.*

DAVID J. MARMINS
MORGAN E. M. HARRISON
ARNALL GOLDEN GREGORY LLP
171 17th Street N.W., Suite 2100
Atlanta, GA 30363
(404) 873-8126
David.marmins@agg.com
Morgan.harrison@agg.com

*Counsel for Publix Super
Markets, Inc.*

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, Petitioner Publix Super Markets, Inc. ("Publix") states that it does not have a parent corporation and no publicly held corporation owns 10 percent or more of its stock.

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION .................................................................................1

II.   STATEMENT OF RELIEF SOUGHT ............................................3

III.  JURISDICTIONAL STATEMENT .................................................4

IV.   STATEMENT OF ISSUE PRESENTED .......................................4

V.    STATEMENT OF FACTS AND PROCEDURAL
      BACKGROUND NECESSARY TO UNDERSTAND THE
      PETITION ............................................................................................4

      A    Publix's Motion to Dismiss the County's Public
           Nuisance Claim. ........................................................................5

      B    Subsequent Decisions Shift the Momentum of Opioid
           Litigation and Narrow Public Nuisance Law.......................6

      C    Publix's Motion for Reconsideration or Certification of
           Question to Georgia Supreme Court......................................9

VI.   REASONS WHY THE WRIT SHOULD ISSUE ........................12

      A    The Ohio MDL Court's Decision Denying Certification
           to the Georgia Supreme Court was Plainly Incorrect as a
           Matter of Law and a Clear Abuse of Discretion. ...............13

           1.   Publix's Proposed Question Invokes the Vital
                Interest of Georgia's Sovereignty. ............................15

           2.   The Ohio MDL Court Created Georgia Law
                Which Will Have Immediate and Long-Lasting
                Impacts. ...........................................................................20

           3.   Certifying the Question to the Georgia Supreme
                Court is Necessary to Save Time, Energy and
                Resources. .......................................................................23

      B    Other Factors Support This Court Issuing a Writ of
           Mandamus. ...............................................................................25

           1.   Certification to the Georgia Supreme Court Is
                Impossible without Issuance of the Writ, and

i

           Denial of Certification Damages and Prejudices
           Publix in a Way Not Correctable on Appeal. ...........................26

    2.    The Ohio MDL Court Should Not Make
          Nationwide Common Law........................................................27

    3.    Settlement Pressures Are Intense..............................................30

VII.   Conclusion ......................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                               **Page(s)**

*Albrecht v. Treon*,
   No. 06CV274, 2007 WL 777864 (S.D. Ohio Mar. 12, 2007) ...............15, 18, 21

*Allstate Ins. Co. v. Menards, Inc.*,
   285 F.3d 630 (7th Cir. 2002) ....................................................16, 17, 19

*Am. Booksellers Found. For Free Expression v. Strickland*,
   560 F.3d 443 (6th Cir. 2009) ..............................................................22

*In re Amazon.com, Inc.*,
   942 F.3d 297 (6th Cir. 2019) ........................................................18, 19

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997)..................................................................11, 14, 20

*In re Bendectin Prods. Liab. Litig.*,
   749 F.2d 300 (6th Cir. 1984) ..............................................................31

*State ex rel. Boykin v. Ball Inv. Co.*,
   12 S.E.2d 574 (Ga. 1940) ..........................................................*passim*

*In re Certified Questions from U.S. Ct. of Appeals for Sixth Cir.*,
   696 N.W.2d 687 (Mich. 2005)..............................................................15

*In re Chimenti*,
   79 F.3d 534 (6th Cir. 1996) ................................................................26

*City of New Haven v. Purdue Pharma, L.P.*,
   No. X07HHDCV176086134S, 2019 WL 423990 (Conn. Super. Ct.
   Jan. 8, 2019)........................................................................................8

*Delaney v. Cade*,
   986 F.2d 387 (10th Cir. 1993) .............................................................18

*In re DePuy Orthopaedics, Inc.*,
   870 F.3d 345 (5th Cir. 2017) ..............................................................31

*Escareno v. Noltina Crucible & Refractory Corp.*,
   139 F.3d 1456 (11th Cir.) ...................................................................20

*FDIC v. Skow*,
    741 F.3d 1342 (11th Cir. 2013) ...........................................................................14

*Geib v. Amoco Oil Co.*,
    29 F.3d 1050 (6th Cir 1994) ......................................................................*passim*

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991)................................................................................................15

*Haley v. Univ. of Tennessee-Knoxville*,
    188 S.W.3d 518 (Tenn. 2006) ...................................................................*passim*

*In re Harris County, TX*,
    No. 21-3637, 2022 U.S. App. LEXIS 3394 (6th Cir. Feb. 7, 2022)...................27

*State ex rel. Hunter v. Johnson & Johnson*,
    499 P.3d 719 (Okla. 2021)..........................................................................*passim*

*State ex rel. Jennings v. Purdue Pharma L.P.*,
    2019 WL 446382 (Del. Super. Ct. Feb. 4, 2019) ................................................8

*John B. v. Goetz*,
    531 F.3d 448 (6th Cir. 2008) ......................................................................13, 25

*Journal Pub. Co. v. Mechem*,
    801 F.2d 1233 (10th Cir. 1986) .........................................................................27

*In re Life Inv. Ins. Co. of Am.*,
    589 F.3d 319 (6th Cir. 2009) ..............................................................................13

*In re Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
    606 F.3d, 855 (6th Cir. 2010) ..............................................................................27

*Metz v. Unizan Bank*,
    No 05cv1510, 2006 WL 8427066 (N.D. Ohio Feb. 28, 2006)..........................23

*In re Nat'l Prescription Opiate Litig.*,
    2022 WL 228150 (N.D. Ohio Jan. 26, 2022) ....................................................12

*In re Nat'l Prescription Opiate Litig.*,
    458 F. Supp. 3d 665 (N.D. Ohio 2020) ...........................................................2, 8

iv

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) ..........................................................12, 13, 22, 28

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-MD-2804, 2019 WL 3737023 (N.D. Ohio June 13, 2019)...........28, 29

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-MD-2804, 2021 WL 4952468 (N.D. Ohio Oct. 25, 2021) .......2, 4, 6, 8

*In re Nat'l Prescription Opiate Litig.*,
    No. 19-3935, 2019 WL 7482137 (6th Cir. Oct. 10, 2019)....................26, 30, 31

*Ohioans Against Corp. Bailouts, LLC v. LaRose*,
    417 F. Supp. 3d 962 (S.D. Ohio 2019) ...............................................................23

*In re Perrigo Co.*,
    128 F.3d 430 (6th Cir. 1997) .......................................................................12, 13

*Pino v. United States*,
    507 F.3d 1233 (10th Cir. 2007) .........................................................................15

*Planned Parenthood of Cincinnati Region v. Strickland*,
    531 F.3d 406 (6th Cir. 2008) ................................................................17, 18, 19

*In re Prof. Direct Ins. Co.*,
    578 F.3d 432 (6th Cir. 2009) .............................................................................13

*In re Puerto Rico Elec. Power Auth.*,
    687 F.2d 501 (1st Cir. 1982).............................................................................12

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293 (7th Cir. 1995) ............................................................................31

*Scott v. Bank One Tr. Co.*,
    577 N.E.2d 1077 (Ohio 1991) ......................................................15, 16, 19, 20

*State of Fla. ex rel. Shevin v. Exxon Corp.*,
    526 F.2d 266 (5th Cir. 1976) ......................................................................17, 20

*State v. Parker*,
    137 N.E.3d 1151 (Ohio 2019) .....................................................................16, 19

*State ex rel. Stenehjem v. Purdue Pharma, L.P.*,
    No. 08-2018-cv-01300, 2019 WL 2245743 (N.D. Dist. Ct. May 10,
    2019) ........................................................................................................7

*Sturm, Ruger & Co., Inc. v. City of Atlanta*,
    560 S.E.2d 525 (Ga. Ct. App. 2002)................................................9, 10

*State ex rel. Williams v. Purdue Pharma L.P. et al.*,
    No. 30-2014-00725287-CU-BT-CXC (Super. Ct. Cal. Nov. 1,
    2021) ........................................................................................................7

*World Harvest Church, Inc. v. Guideone Mut. Ins. Co.*,
    586 F.3d 950 (11th Cir. 2009) ...............................................................14

**Statutes**

28 U.S.C. §1651(a) .................................................................................4

O.C.G.A. § 26-3-4..................................................................................6

O.C.G.A. § 26-5-57................................................................................6

O.C.G.A. § 26-4-1 *et seq.* ...............................................................5, 6, 11

O.C.G.A. § 15-2-9................................................................................14

O.C.G.A. § 41-2-2..................................................................................4

63 O.S. Supp. 2020 § 2-309A *et seq.*.....................................................8

**Regulations**

Ga. Comp. R. & Regs. 480 ....................................................................5

**Rules**

6th Cir. R. 32(b) ...................................................................................33

Fed. R. App. P. 21(d)(1) .......................................................................33

Fed. R. App. P. 32(a)(5) ........................................................................33

Fed. R. App. P. 32(a)(6) ........................................................................33

Fed. R. App. P. 32(f) ............................................................................33

Fed. R. App. P. 21 ...............................................................................................4

Ga. Sup. Ct. R. 46 ...........................................................................................14

**Other Authorities**

*Erie Denied: How Federal Courts Decide Insurance Coverage Cases
   Differently and What To Do About It*, 21 Conn. Ins. L. J. 456
   (2015) ..........................................................................................................21

Hon. Dolores K. Sloviter, *A Federal Judge Looks at Diversity
   Jurisdiction*, 78 Va. L. Rev. 1671 (1992) ......................................16, 17

Michelle L. Richards, *Pills, Public Nuisance, and Parens Patriae:
   Questioning the Propriety of the Posture of the Opioid Litigation*,
   54 U. Rich. L. Rev. 405 (2020) ......................................................24

Restatement (Second) of Torts § 821B ................................................3, 8

## I.   INTRODUCTION

When plaintiffs in multi-district litigation advance new and novel applications of state laws seeking to expand the scope of liability beyond its extant boundaries, defendants are faced with a difficult decision: explain to a geographically distant MDL Court that the state's law does not recognize plaintiffs' proposed expansion of law and accept the MDL court's best *Erie* guess, or request certification—seemingly disfavored by MDL courts—to the far-away state court for a definitively correct answer. Here, Publix did both.

In response, instead of assessing the growing antagonism by state courts toward public nuisance claims in the context of the opioid crisis, the Ohio MDL Court continued on its well-worn path of "*Erie* guessing" the scope of state nuisance laws across the country, always finding they apply to the ever-expanding family of opiate defendants. It continued to do so even after the Oklahoma Supreme Court issued its decision rebuking the Ohio MDL Court's prior "*Erie* guess" that incorrectly expanded Oklahoma's public nuisance law.

As a result, a clear dichotomy of opioid litigation has emerged: one, in the federal MDL, where a single Ohio MDL Court is making *Erie* predictions about the scope of state nuisance laws across the country—always favoring expansion; and a second, in state courts across the country, where individual jurisdictions are reaffirming that nuisance law does not provide a remedy for the opioid crisis.

Specific to this case, Cobb County, Georgia seeks to impose nuisance liability on Publix, a retail grocer with an internal pharmacy, even though Georgia law suggests that comprehensive statutory schemes preempt nuisance claims against defendants in highly regulated industries like the pharmacy business. In its Order denying Publix's motion for reconsideration and/or for certification, the Ohio MDL Court baldly dismissed important new intervening state-court decisions rejecting nuisance claims like the one Cobb County brings to remedy the opioid crisis. For example, as to *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021)—decided two weeks *after* the order denying Publix's motion to dismiss— the Ohio MDL Court declared it irrelevant in one short sentence with no analysis beyond saying the Oklahoma statute is not *identical* to Georgia's. This overly simplistic "analysis" ignores the stark fact a state's highest court just reversed a $465 million verdict that followed two years of resource-exhausting discovery and a 33-day trial. *Hunter*, 499 P.3d at 722. It also ignores similarities in Georgia and Oklahoma law that the Ohio MDL Court itself observed in its prior decisions. *Compare In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d 665, 691-92 (N.D. Ohio 2020) (finding Oklahoma defines public nuisance "as an unreasonable interference with a right common to the general public," from the Restatement (Second) of Torts § 821B) *with In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2021 WL 4952468,

2

at *4 (N.D. Ohio Oct. 25, 2021) (relying on Georgia case law that similarly mirrors the Restatement (Second) of Torts § 821B definition).

The *Hunter* decision and those like it made it imperative for the Ohio MDL Court to defer to Georgia's highest court to provide the final word on whether its public nuisance statute likewise should not be expanded via a new and novel application to opioid prescription claims, especially before the parties and courts expend significant resources litigating this matter. The Ohio MDL Court, however, refused to certify the question to the Georgia Supreme Court, usurping that pivotal decision for itself, and, by denying Publix's motion to dismiss, unsettling what should be a settled area of law.

Publix submits that the Ohio MDL Court's refusal to certify the question was a clear abuse of discretion that warrants correction and a writ of mandamus.

## II.    STATEMENT OF RELIEF SOUGHT

Publix requests this Court issue a writ of mandamus that instructs the Ohio MDL Court to certify to the Georgia Supreme Court the following question:

> Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 et seq., and for which the legislature has already enumerated civil and criminal remedies?

3

## III. JURISDICTIONAL STATEMENT

This petition arises from an order issued by the Honorable Dan A. Polster in *In re National Prescription Opiate Litigation*, No. 1:17-MD-2804 (N.D. Ohio Jan. 26, 2022).[1] This Court has jurisdiction under the All Writs Act, 28 U.S.C. §1651(a), as set forth in Rule 21 of the Federal Rules of Appellate Procedure.

## IV. STATEMENT OF ISSUE PRESENTED

Whether the District Court clearly abused its discretion in refusing to certify the above question to the Georgia Supreme Court.

## V. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND NECESSARY TO UNDERSTAND THE PETITION

Plaintiff Cobb County, Georgia, initiated this litigation in the Federal District Court for the Northern District of Georgia, purporting to assert a public nuisance claim against various pharmacy defendants pursuant to Georgia's public nuisance statute, O.C.G.A. § 41-2-2. Case No. 1:18-OP-45817, Complaint, R. 1, Page ID # 270. The case was transferred to the Northern District of Ohio for inclusion in that Court's Nationwide Prescription Opiate Multi-District Litigation (Conditional Transfer Order, R. 714, Page ID # 1-2), where Cobb County joined Publix as a

---

[1] The Ohio MDL Court's January 26, 2022 order, R. 4245, is attached Exhibit 5. That Court's October 25, 2021 order denying Publix's motion to dismiss, R. 4071, is attached as Exhibit 1.

4

defendant to its public nuisance claim (Case No. 1:18-OP-45817, Amended Complaint, R. 6, Page ID # 327).

**A      Publix's Motion to Dismiss the County's Public Nuisance Claim.**

Publix filed a Motion to Dismiss the County's public nuisance claim based on binding Georgia Supreme Court precedent, *i.e.*, *State ex rel. Boykin v. Ball Inv. Co.*, 12 S.E.2d 574 (Ga. 1940). In *Boykin*, the Georgia Supreme Court held that a public nuisance claim cannot be maintained where the actions complained of are governed by an extensive state regulatory scheme that defines the remedies available and contains no indication that a public nuisance claim is among them. *Id.* at 581 (concluding that "[i]f the penalties [in the statutory scheme governing usurious loans] be not a sufficient check to the abuses described in the instant case, the appeal should be made to the lawmakers, and not to a court of equity, whose powers can never be invoked where the law has provided what it deems to be an adequate remedy."). Cobb County's public nuisance claim alleges actions that are subject to much more extensive regulation through various Georgia laws than those at issue in *Boykin*.[2] Yet *none* of the statutes and regulations regulating pharmacies authorize

---

[2] *See, e.g.*, The Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 *et seq.* (broadly governing all aspects of pharmacy operations, including the dispensing of prescription drugs, and provides civil and criminal penalties for violations of the PPA); Ga. Comp. R. & Regs. 480 (Rules of the Georgia State Board of Pharmacy, detailing rules for the storage, security, and distribution of prescription drugs, and are enforced through the Board of Pharmacy).

enforcement of their provisions via a public nuisance claim or define any violation of their provisions as a nuisance. The legislature's decision not to define any violation of the PPA as a public nuisance—in contrast to how the legislature explicitly outlined nuisance remedies in other acts, including ones specific to drugs[3]—further evidences why the remedies for violations of the PPA, what the County alleges here, are limited to those contained in the PPA. It is up to the government actors authorized by the PPA—and *only* those actors—to enforce its provisions. The Ohio MDL Court rejected this binding precedent and denied the motion to dismiss in its October 25, 2021 order. *In re Nat'l Prescription Opiate Litig.*, Case No. 17-MD-02804, 2021 WL 4952468 (N.D. Ohio Oct. 25, 2021) (Exhibit 1).

**B**     **Subsequent Decisions Shift the Momentum of Opioid Litigation and Narrow Public Nuisance Law.**

In the weeks following the Ohio MDL Court's decision denying Publix's Motion to Dismiss, the landscape of national opioid litigation drastically shifted and the jurisprudence surrounding public nuisance claims became clearer. On November 1, 2021, Judge Peter Wilson of the California Superior Court (Orange County), after a months-long trial, issued a tentative ruling concluding the State and County

---

[3] *See* Ga. Code Ann. §§ 26-3-4 (declaring certain adulterated drugs a nuisance), 26-5-18 (declaring violations of Drug Abuse Treatment and Education Act and its implementing regulations a nuisance per se), and 26-5-57 (declaring violations of the Narcotic Treatment Programs Enforcement Act a nuisance per se).

Plaintiffs failed to prove manufacturer-defendants had created a public nuisance under California law in relation to sales of prescription opioids. *See State ex rel. Williams v. Purdue Pharma L.P. et al.*, No. 30-2014-00725287-CU-BT-CXC (Super. Ct. Cal. Nov. 1, 2021). That decision became final on December 14, 2021.[4]

Concurrently, on November 9, 2021, the Oklahoma Supreme Court became the first state Supreme Court to consider the validity of a public nuisance claim in the context of opioid manufacturing and distribution. *See State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021). In *Hunter*, the Oklahoma Supreme Court, after careful review of Oklahoma's public nuisance statutes and its own precedents, held that the trial court erred in finding the manufacturer-defendant had created a public nuisance. *Id.* at 731. The Court emphasized that the trial court's expansion of nuisance law encroached on "branches [of government] that are more capable than courts to balance the competing interests at play in societal problems." *Id.*; *see also id.* at 730 ("Extending public nuisance law to the manufacturing, marketing, and selling of products—in this case, opioids—would allow consumers to convert almost every products liability action into a public nuisance claim.").[5]

---

[4] That court recently denied plaintiffs' request to reconsider its final decision. *State ex rel. Williams v. Purdue Pharma L.P. et al.*, No. 30-2014-00725287-CU-BT-CXC (Super. Ct. Cal. Feb. 3, 2022). Plaintiffs have appealed.

[5] The *Hunter* and *Williams* decisions continue a trend of state courts rejecting public nuisance claims related to the sale of prescription opioids. *See, e.g.*, *State ex rel. Stenehjem v. Purdue Pharma, L.P.*, No. 08-2018-cv-01300, 2019 WL 2245743, at

The Oklahoma Supreme Court's decision in *Hunter* undercuts the Ohio MDL Court's finding here that Georgia law recognizes a public nuisance claim for violations of Georgia's regulations and statutes governing pharmacies. Again, the Ohio MDL Court has already described Oklahoma and Georgia law as rooted in the Restatement (Second) of Torts and operating in functionally similar ways. *See In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d at 691-92 (Oklahoma law); *In re Nat'l Prescription Opiate Litig.*, 2021 WL 4952468, at *4 (Georgia law). Moreover, distinctions between the *Hunter* manufacturer-defendants and Publix (a retail pharmacy) are immaterial, as the *Hunter* court emphasized the foundational point that the Oklahoma Legislature, and not the courts, governs the distribution of prescription opioids. *Hunter*, 499 P.3d at 728 (stating that Oklahoma's Anti-Drug Diversion Act, 63 O.S. Supp. 2020 § 2-309A *et seq.*, "is just one example of legislation governing prescription opioids"). Additionally, the Georgia Supreme Court, like the Oklahoma Supreme Court, has never "extended the public nuisance

---

*13 (N.D. Dist. Ct. May 10, 2019) (deciding that North Dakota public nuisance law does not apply to the sale of pharmaceuticals); *State ex rel. Jennings v. Purdue Pharma L.P.*, 2019 WL 446382, at *12-13 (Del. Super. Ct. Feb. 4, 2019) (holding, in the context of prescription opioids, that Delaware law did not extend public nuisance law to claims to products and dismissing the public nuisance claims against all defendants, including pharmacy-defendants); *City of New Haven v. Purdue Pharma, L.P.*, No. X07HHDCV176086134S, 2019 WL 423990, at *2 (Conn. Super. Ct. Jan. 8, 2019) (dismissing public nuisance claims relating to the sale of prescription opioids for lack of standing under Connecticut law because "[t]o permit otherwise would risk letting everyone sue almost everyone else about pretty much everything that harms us").

statute to the manufacturing, marketing, and selling of products." *See Hunter*, 499 P.3d at 723. The Georgia Supreme Court, like its sister court in Oklahoma, inevitably would find that Georgia law does not recognize a public nuisance claim for the highly regulated distribution of prescription opioids in the state.

**C     Publix's Motion for Reconsideration or Certification of Question to Georgia Supreme Court.**

In response to these intervening national developments in public nuisance law, Publix filed a motion requesting the Ohio MDL reconsider its October 25, 2021 order or, in the alternative, certify a question to the Georgia Supreme Court seeking guidance on the validity of Cobb County's novel public nuisance claim.[6]

In its request for reconsideration, Publix again emphasized the Georgia Supreme Court's holding in *Boykin*, and its consistency with Georgia's doctrine of inferred preemption that limits local governments from pursuing legislation or litigation in a field in which the Georgia legislature has created a comprehensive statutory and regulatory scheme. *See, e.g.*, *Sturm, Ruger & Co., Inc. v. City of Atlanta*, 560 S.E.2d 525 (Ga. Ct. App. 2002) (finding the City of Atlanta's public nuisance claim against gun manufacturers and distributors preempted because the

---

[6] Publix's December 22, 2021 Motion for Reconsideration or Certification of Question to Georgia Supreme Court is attached as Exhibit 2. Although not cited herein, for the convenience of the Court, Cobb County's January 10, 2022 response in opposition thereto is attached as Exhibit 3, and Publix's January 13, 2022 reply brief is attached as Exhibit 4.

Georgia legislature's extensive regulatory scheme for the distribution and use of firearms). A local government's pursuit of a claim not contemplated by the Georgia legislature's carefully crafted regulatory schemes presents an improper attempt to usurp the power of the legislature and judicially expand that regulatory scheme. *Id.* at 530.

Like the Oklahoma Supreme Court stressed in *Hunter*, Georgia precedent shows an obvious concern for the balance of powers between its legislature, its local governments, and its judiciary. Because Georgia extensively regulates pharmacies and their operations, because that regulatory and statutory scheme does not provide for or contemplate its enforcement through public nuisance claims, because Georgia's appellate courts have found that such a regulatory and statutory backdrop preempts a cause of action alleging a public nuisance, and because no state appellate or supreme court—in Georgia or elsewhere—has affirmatively found a public nuisance claim to exist against a pharmacy in relation to prescription opioid litigation, Publix asked the Ohio MDL Court to reconsider its decision.

The County's nuisance theory is unprecedented under Georgia law and would vastly expand the scope of liability for pharmacies in an otherwise highly regulated field. The Ohio MDL Court's decision accepting that theory is effectively the federal judiciary delegating enforcement powers to Georgia local governments that the Georgia legislature never contemplated. Therefore, as an alternative to its Motion

10

for Reconsideration, Publix moved the Ohio MDL Court to certify to the Georgia Supreme Court the question of whether Georgia recognizes a public nuisance cause of action against a pharmacy arising out of pharmacy conduct in the state of Georgia which is alleged to violate the PPA. The specific question to be certified was the same as set forth in this Petition:

> Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 et seq., and for which the legislature has already enumerated civil and criminal remedies?

Publix requested this relief to help the Ohio MDL Court "avoid the hazards of attempting to forecast how [Georgia] courts might rule," and to save "time, energy, and resources," *Geib v. Amoco Oil Co*., 29 F.3d 1050, 1060-61 (6th Cir 1994), as well as to serve the important purpose of protecting and promoting "a cooperative judicial federalism," *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-79 (1997) (Arizona Supreme Court should have had the opportunity to address the construction of an Arizona law, and certification of the issue would save "time, energy, and resources"). These are all material concerns, especially after the Ohio MDL Court's prior forecast of Oklahoma law was proven incorrect by the Oklahoma Supreme Court in *Hunter*.

The Ohio MDL Court simultaneously denied Publix's Motions for Reconsideration and Certification on January 26, 2022. *In re Nat'l Prescription Opiate Litig.*, 2022 WL 228150, at *1 (N.D. Ohio Jan. 26, 2022) (Exhibit 5).

## VI.    REASONS WHY THE WRIT SHOULD ISSUE

The Sixth Circuit grants writs of mandamus in exceptional circumstances involving "a clear abuse of discretion." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 842 (6th Cir. 2020) (granting petition for writ of mandamus and quoting *Cheney v. U.S. Dist. Ct. for the Dist. Of Columbia*, 542 U.S. 367, 380 (2004)). A writ of mandamus is warranted when there is a "'question of unusual importance necessary to the economical and efficient administration of justice' or 'important issues of first impression.'" *In re Perrigo Co.*, 128 F.3d 430, 436 (6th Cir. 1997) (quoting *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1061 (6th Cir. 1982)). More specifically, writs of mandamus can be appropriate where a district court abuses its discretion in declining to certify a question to a state Supreme Court. *See In re Puerto Rico Elec. Power Auth.*, 687 F.2d 501, 504 (1st Cir. 1982) (recognizing ability to compel certification, but declining to do so).

In evaluating whether to issue a writ of mandamus, the Sixth Circuit considers five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district

12

court's order is plainly incorrect as a matter of law; (4) whether the district court's order manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems, or legal issues of first impression.

*In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 843; *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). It is not necessary that every factor weigh in favor of mandamus relief, and the factors will "'often be balanced against each other.'" *In re Perrigo*, 128 F.3d at 435 (quoting *In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996)); *In re Life Inv. Ins. Co. of Am.*, 589 F.3d 319, 323 (6th Cir. 2009) (recognizing that factors "four and five tend to point in opposite directions" and addressing only three of the five factors); *In re Prof. Direct Ins. Co.,* 578 F.3d 432, 437 (6th Cir. 2009) ("Not every factor need apply").

The Sixth Circuit "favors a 'flexible' rather than a 'rigid' approach" to writs of mandamus, emphasizing that "some flexibility is required if the extraordinary writ is to remain available in extraordinary situations." *In re Perrigo Co.*, 128 F.3d at 436 (cleaned up). Here, mandamus is warranted.

**A      The Ohio MDL Court's Decision Denying Certification to the Georgia Supreme Court was Plainly Incorrect as a Matter of Law and a Clear Abuse of Discretion.**

The Ohio MDL Court's denial of certification was an abuse of discretion and clearly erroneous. In deciding whether to certify a question to a state's Supreme Court, federal courts generally consider (1) whether the question invokes a vital

13

interest of state sovereignty, such as the construction of a state constitutional provision or a state statute; (2) whether lower state court and federal court rulings allow the court to discern a reasonably clear and principled answer; and (3) whether certification of the issue would save "time, energy, and resources." *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 75-79 (1997) (Arizona Supreme Court should have had the opportunity to address the construction of an Arizona constitutional provision, and certification of the issue would save "time, energy, and resources"); *Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1059-61 (6th Cir. 1994) (Michigan Supreme Court should have the opportunity to address the construction of a provision under the Michigan Franchise Investment law, and there was no reasonably clear result when federal court decisions directly conflicted in their interpretation of the statute); *FDIC v. Skow*, 741 F.3d 1342, 1346 (11th Cir. 2013) (certifying a question to the Georgia Supreme Court because there existed "[s]ubstantial doubt about a question of state law upon which a particular case turns"). For its part, the Georgia Supreme Court invites federal courts to certify questions. *See* Ga. Sup. Ct. R. 46; O.C.G.A. § 15-2-9; *see also World Harvest Church, Inc. v. Guideone Mut. Ins. Co*., 586 F.3d 950, 961 (11th Cir. 2009) (noting how the "Georgia Supreme Court has been generous and gracious in answering our certified questions before").

In this case, all factors should have led the Ohio MDL Court to certify a question to the Georgia Supreme Court.

### 1. Publix's Proposed Question Invokes the Vital Interest of Georgia's Sovereignty.

A state's sovereignty is "unquestionably implicated when federal courts construe state law." *Scott v. Bank One Tr. Co.*, 577 N.E.2d 1077, 1080-81 (Ohio 1991). Indeed, "[t]here is perhaps no more indispensable badge of sovereignty than the ability of a government to enforce its own laws." *In re Certified Questions from U.S. Ct. of Appeals for Sixth Cir.*, 696 N.W.2d 687, 692-93 (Mich. 2005) (Markman, J., dissenting); *see also Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("[T]he judicial policy of a state should be decided when possible by state, not federal courts."), *certified question answered*, 183 P.3d 1001 (Okla. 2008). "After all, the [State] Supreme Court is the ultimate authority on the meaning of [State] law," *Albrecht v. Treon*, No. 06CV274, 2007 WL 777864, at *6-7 (S.D. Ohio Mar. 12, 2007) (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 777 (2005) (Stevens, J., dissenting)), and "bears the ultimate responsibility for reconciling [the] state's competing policy interests," *Geib*, 29 F.3d at 1060.

Therefore, if in "the tension between federal and state power lies the promise of liberty," *Gregory v. Ashcroft*, 501 U.S. 452, 459 (1991), then the certification process is at the heart of that tension, because "the certification procedure protects states' sovereignty." *Haley v. Univ. of Tennessee-Knoxville*, 188 S.W.3d 518, 521

15

(Tenn. 2006). It does so by "ensuring that federal courts will properly apply state law," thereby "strengthening the federalist structure of joint sovereigns." *Scott*, 577 N.E.2d at 1080-81 (cleaned up). It follows that where a federal court undermines this structure by, for example, "appl[ying] different legal rules than the state court would have," then "the state's sovereignty is *diminished*," because the federal court has made state law. *Haley*, 188 S.W.3d at 521 (quoting *Scott*, 577 N.E.2d at 1080 (emphasis added)). And more seriously, when a federal court *errs* in its application of state law, the federal court has "usurp[ed]" a state's sovereignty. *See State v. Parker*, 137 N.E.3d 1151, 1162 (Ohio 2019) (O'Conner, C.J., dissenting).

An incorrect *Erie* prognostication has immediate and long-lasting effects on state law. "Unless and until corrected, these missteps by federal courts can have a grave impact on the principled and orderly growth of state law principles." *Allstate Ins. Co. v. Menards*, *Inc.*, 285 F.3d 630, 638 (7th Cir. 2002) (certifying a question to the Supreme Court of Illinois), *certified question answered*, 782 N.E.2d 258 (Ill. 2002). Indeed, the best and worst *Erie* guesses on how a state's highest court would rule "inevitably skew the decisions of persons and businesses that rely on them and inequitably affect the losing federal litigant who cannot appeal the decision to the state supreme court." Hon. Dolores K. Sloviter, *A Federal Judge Looks at Diversity Jurisdiction*, 78 Va. L. Rev. 1671, 1681 (1992). Those incorrect guesses are likely

to "mislead lower state courts that may be inclined to accept federal predictions as applicable precedent." *Id.*

The certification process therefore "protects the 'dignity, independence and integrity'" of a state "as a whole," *Haley*, 188 S.W.3d at 523, and helps reduce "the possibility of error in making an '*Erie* guess,'" *Allstate*, 385 F.3d at 638. The value of the certification process has thus been extolled by this Court:

> Submitting uncertain questions of state law to the state's highest court by way of certification acknowledges that court's status as the final arbiter on matters of state law and avoids the potential for "friction-generating error" which exists whenever a federal court construes a state law in the absence of any direction from the state courts.

*Planned Parenthood of Cincinnati Region v. Strickland*, 531 F.3d 406, 410 (6th Cir. 2008), *certified question answered sub nom. Cordray v. Planned Parenthood Cincinnati Region*, 911 N.E.2d 871 (Ohio 2009).

It is for these reasons that a key consideration in the certification analysis "is the degree to which considerations of comity are relevant in light of the particular issue and case to be decided." *See State of Fla. ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 275 (5th Cir. 1976). In fact, the United States Supreme Court has itself "lauded" the certification process for this very reason—because it "helps build a cooperative judicial federalism." *Id.* (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

17

Courts have thus recognized that "[p]rinciples of federalism and comity favor" certification when those questions implicate local matters or where "the weighing of policy considerations" may be required for a correct resolution. *See Albrecht*, 2007 WL 777864, at *6-7 (quoting *Town of Castle Rock*, 545 U.S. at 777 (Stevens, J., dissenting)). Certification may also "be particularly appropriate where the law at issue is from 'a distant State' outside of the circuit presented with the question." *In re Amazon.com, Inc*., 942 F.3d 297, 300-01 (6th Cir. 2019), *certified question answered*, 255 A.3d 191 (Pa. 2021) (citing *Lehman Bros*., 416 U.S. at 391)).

Also of importance, comity favors certification because "the potential for state-federal friction . . . is heightened" where a state has passed a statute "pursuant to [its] longstanding power to regulate the practice of medicine within its borders." *See Planned Parenthood*, 531 F.3d at 411-12; *accord Delaney v. Cade*, 986 F.2d 387, 391 (10th Cir. 1993) (certifying question to state court in the medical context), *certified question answered*, 873 P.2d 175 (Kan. 1994).

Here, considerations of comity weigh overwhelmingly in favor of certification to the Georgia Supreme Court. Determining whether Georgia law permits a public nuisance claim in light of Georgia's comprehensive regulatory regime governing pharmacies implicates matters local to Georgia and requires the weighing of local policy considerations. *See Albrecht*, 2007 WL 777864, at *6-7. Georgia also is

18

distant from this Circuit's geographic footprint. *See In re Amazon.com,* 942 F.3d at 300-01. And most importantly, the potential for "state-federal friction" is heightened given that this legal question implicates Georgia's "power to regulate the practice of medicine within its borders." *Planned Parenthood*, 531 F.3d at 411-12. Thus, "judicious resort to the technique of certification in situations such as this, where an important question of state law has arisen solely in federal court, 'prevent[s] federal invasion of the state law-making function and [avoids] needless federal-state friction." *Geib*, 29 F.3d at 1060-61.

Were a distant federal court to apply legal principles that Georgia courts would not, Georgia's sovereignty would be diminished, *see Haley*, 188 S.W.3d at 521, and the federal court would have *usurped* Georgia's sovereignty, *see Parker*, 137 N.E.3d at 1162 (O'Conner, C.J., dissenting). Such an error could also persist in the law until the Georgia Supreme Court has the opportunity to rule for itself— potentially years from now, if ever. *See Scott*, 577 N.E.2d at 1080-81; *Allstate Ins.*, 285 F.3d at 638. Unlike the Oklahoma Supreme Court, the Georgia Supreme Court does not have a direct line of appeal to correct error and weigh in on whether the Ohio MDL Court, a distant federal court, has impermissibly "reshap[ed] public nuisance law through the judicial branch." *See State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 732 (Okla. 2021).

Rather than running these serious risks, the Ohio MDL Court should have certified the question to the Georgia Supreme Court, which would have allowed the Georgia judiciary to weigh in on the proper application of Georgia law on such an important issue. *See Scott*, 577 N.E.2d at 1080-81. In failing to do so, the Ohio MDL Court disregarded the cause of a "cooperative judicial federalism," *Shevin*, 526 F.2d at 275, and injured Georgia's "dignity, independence and integrity," *see Haley*, 188 S.W.3d at 523. *See also Escareno v. Noltina Crucible & Refractory Corp*., 139 F.3d 1456, 1460 (11th Cir.), *certified question answered sub nom. Escareno v. Carl Nolte Sohne GmbH*, 507 S.E.2d 743 (Ga. 1998) ("Because this case involves an unsettled question of Georgia law, we would rather certify the question of the proper interpretation of § 15-9-31(2) to the Georgia Supreme Court than speculate as to how the Georgia courts would resolve the issue.").

### 2. The Ohio MDL Court Created Georgia Law Which Will Have Immediate and Long-Lasting Impacts.

Certification may not be necessary where lower state court and federal court rulings allow a district court to discern for itself a reasonably clear and principled answer to the question. *Arizonans for Official English*, 520 U.S. at 75-79. In this case, after dismissing the Georgia Supreme Court's *Boykin* ruling, the Ohio MDL Court seized on the absence of any specific Georgia precedent applying nuisance law to pharmacies to reach a decidedly incorrect interpretation of existing precedent. In essence, the Ohio MDL Court unsettled what should have been settled law and

created state law that vastly expands the scope of liability pharmacies face under Georgia law, effectively delegating enforcement powers to local governments that the Georgia legislature never contemplated. Instead of creating Georgia nuisance law, it was crucial for the Ohio MDL Court to certify the question to the Georgia Supreme Court so that the sovereign court could declare the correct interpretation of Georgia law and settle the validity of the County's novel claim. *See Albrecht*, 2007 WL 777864 at *2 ("Use of the certification procedure is most appropriate when the question of state law is new or state law is unsettled"). Because Georgia public nuisance law has never been used to regulate pharmacies and because the Ohio MDL Court dismissed the Georgia Supreme Court's essential holding in *Boykin*, the questions of law presented in this case are both new and unsettled under Georgia law. *See id.*

The Ohio MDL Court's failure to permit Georgia's highest court to address this new and important question of state law has far-reaching implications, both for Georgia's sovereign ability to interpret its own laws and regulate the practice of medicine within its borders, and for the continued litigation of a significant portion of the National Prescription Opiate MDL, both in Georgia and across the country. An incorrect *Erie* guess has the strong possibility of repetition throughout Georgia and would likely "be applied multiple times until the state's highest court issues a contrary ruling." John L. Watkins, *Erie Denied: How Federal Courts Decide*

*Insurance Coverage Cases Differently and What To Do About It*, 21 Conn. Ins. L. J. 456, 474 (2015). Mandamus here would have the Ohio MDL Court certify a vital question to the Georgia Supreme Court to declare the definitive scope of Georgia's public nuisance laws, potentially saving the parties tens of millions of dollars and other resources before scores of cases are litigated and tried before being reversed by a state supreme court, just as happened in Oklahoma only three months ago. *See Am. Booksellers Found. For Free Expression v. Strickland*, 560 F.3d 443, 446-47 (6th Cir. 2009) (certification helps "ensure[] that the District Court will properly apply state law"), *certified question answered sub nom. Am. Booksellers Found. For Free Expression v. Cordray*, 922 N.E.2d 192 (Ohio 2010).

Unless corrected, the Ohio MDL Court's usurpation of the question here threatens to greatly expand application of Georgia's public nuisance law in distant courts without any consideration from the State. It also threatens to open the floodgates to copycat claims from other jurisdictions emboldened by the Ohio MDL Court's lenient "*Erie* guessing" and unwillingness to defer to the states the interpretation of their own laws. *See* Sloviter, *supra* at 1681. The Ohio MDL Court's refusal to certify this novel question to the Georgia Supreme Court was plainly incorrect, an abuse of discretion, and warrants a writ of mandamus from this Court to correct error. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 843

(considering whether the district court's order "raises new and important problems" requiring mandamus to correct).

### 3.  Certifying the Question to the Georgia Supreme Court is Necessary to Save Time, Energy and Resources.

Certification of the question to the Georgia Supreme Court would undoubtedly "save time, energy, and resources and help build a cooperative judicial federalism." *Geib*, 29 F.3d at 1061 (cleaned up); *accord Metz v. Unizan Bank*, No 05cv1510, 2006 WL 8427066, at *4 (N.D. Ohio Feb. 28, 2006) (citing *Arizonans for Official English*, 520 U.S. 43). By certifying the question, the Ohio MDL Court would "put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of an authoritative response." *Ohioans Against Corp. Bailouts, LLC v. LaRose*, 417 F. Supp. 3d 962, 981 (S.D. Ohio 2019). Without certification, the Ohio MDL Court has forced Publix, and the numerous other pharmacy defendants to Cobb County's public nuisance claim, to continue incurring the enormous and asymmetric costs of defending themselves against an invalid claim in this long-running and expansive litigation. Pharmacies also remain vulnerable to the possibility of massive liability on an invalid claim that may prove to be impossible to correct on appeal, all in the face of an Ohio MDL Court which is undoubtedly making new (and Publix submits, incorrect) law. *See* Sloviter, *supra* at 1687 ("When federal judges make state law—and we do, by whatever euphemism one chooses to call it—judges who are not selected under the state's system and who

are not answerable to its constituency are undertaking an inherent state court function.").

Any MDL should serve the dual purposes of promoting efficiency and facilitating settlement, but the Ohio MDL Court's rulings on public nuisance law are squarely at odds with these goals. Following pre-trial matters in this bellwether, the parties in all the Georgia-MDL cases will still need guidance on the scope of their potential liability. Even if the Georgia Supreme Court *eventually* has the opportunity to issue definitive guidance on the scope Georgia public nuisance law, it will be many years and resources too late, likely with inconsistent rulings or misguided settlements to boot. As the court tasked with the bellwether Georgia opioid case, the Ohio MDL Court should help avoid such inefficient patchwork litigation by asking the Georgia Supreme Court to issue guidance now. Until then, the possibility of settlement seems unlikely: the Ohio MDL Court's *Erie* guesses on other state law (Oklahoma) have not borne confidence, especially as state trial courts continue to reject plaintiffs' novel theories of public nuisance. To promote fruitful settlement discussions in these matters, the scope of potential liability under Georgia law should be more accurately defined. *Cf.* Michelle L. Richards, *Pills, Public Nuisance, and Parens Patriae: Questioning the Propriety of the Posture of the Opioid Litigation*, 54 U. Rich. L. Rev. 405, 457 (2020).

All of the relevant considerations for certifying Publix's proposed question to the Georgia Supreme Court were satisfied, and concerns for federal-state comity and the conservation of time, energy, and resources compelled certification. More to the point, certification was particularly and uniquely necessary here given the Ohio MDL Court's erroneous interpretation of Georgia's public nuisance law to allow a Georgia law claim, regarding actions that allegedly occurred in Georgia, which Georgia law simply does not recognize. The Ohio MDL Court's refusal to certify the proposed question in this exceptional context rose to the level of an abuse of its discretion.

**B       Other Factors Support This Court Issuing a Writ of Mandamus.**

In addition to the Ohio MDL Court's clear error in refusing to certify a question to the Georgia Supreme Court, other factors support this Court issuing a writ of mandamus. Publix has "no adequate means, such as direct appeal, to attain the relief" (*i.e.*, certification to the Georgia Supreme Court) requested; Publix will be prejudiced in a way that is "not correctable on appeal"; the Ohio MDL Court's denial of certification "manifests a persistent disregard of the federal rules"; and the Ohio MDL Court's ruling "raises new and important problems, or issues of law of first impression." *See John B. v. Goetz,* 531 F.3d 448, 457 (6th Cir. 2008). These interrelated factors weigh in favor of granting the writ, given the extraordinary circumstances presented here in what this Court has already acknowledged is a case

of "enormous public interest and significance." *See In re Nat'l Prescription Opiate Litig.*, No. 19-3935, 2019 WL 7482137, at *2 (6th Cir. Oct. 10, 2019).

1. **Certification to the Georgia Supreme Court Is Impossible without Issuance of the Writ, and Denial of Certification Damages and Prejudices Publix in a Way Not Correctable on Appeal.**

The Ohio MDL Court's refusal to certify the decidedly state question of whether Georgia law permits a public nuisance against highly regulated pharmacies as a means of remedying the opioid crisis presents an immediate harm that direct appeal will not remedy. Unless this Court intervenes now and grants mandamus, the Ohio MDL Court's refusal will harm Publix "in a way not correctable on appeal." *See In re Chimenti*, 79 F.3d 534, 540 (6th Cir. 1996). Indeed, it is unclear *how* certification to the Georgia Supreme Court could *ever* occur on this important issue *without* issuance of the writ.

Moreover, Georgia, through the inability of its Supreme Court to decide matters of state importance, will lose its state sovereignty during the pendency of the Ohio MDL Court's handling of this bellwether case. It is highly unlikely that *another* opioids litigation involving a tertiary defendant like Publix will somehow manage to avoid the MDL, face a trial in Georgia state court, and eventually wind up in the hands of the Georgia Supreme Court, before the Cobb County case reaches resolution.

Certification is the only possibly remedy to allow the Georgia judiciary to weigh in on this important issue, as it should, given the obvious societal importance of this matter, the public policy objectives implicated, and the absence of controlling Georgia precedent as to Plaintiff's new and novel public nuisance claim (if one dismisses *Boykin* as precedent, as the Ohio MDL Court has). A finding of liability on a faulty public nuisance claim will be uncorrectable on appeal absent the Georgia Supreme Court being given an opportunity to provide the final word on the legitimacy of the claim. The only way to ensure that this occurs is to instruct the Ohio MDL Court to certify the question to that sovereign court now.

## 2. The Ohio MDL Court Should Not Make Nationwide Common Law.

Mandamus is supported where a district court demonstrates a "persistent disregard" for federal rules. *See In re Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 606 F.3d, 855, 866 (6th Cir. 2010). Likewise, "[m]andamus is particularly appropriate here because of the potential for the trial court to repeat" its error. *Journal Pub. Co. v. Mechem*, 801 F.2d 1233, 1237 (10th Cir. 1986) (writ granted).

Although this is the only instance in which the Ohio MDL Court has ventured to disregard Georgia law and usurp the interpretive prerogative of the Georgia Supreme Court, this Circuit has had to intervene several times already to address other instances of the Ohio MDL Court's disregard for, or incorrect application of, other rules. *See, e.g., In re Harris County, TX*, No. 21-3637, 2022 U.S. App. LEXIS

3394, at *7-8 (6th Cir. Feb. 7, 2022) (inviting the Ohio MDL Court to respond to mandamus petition asserting that the Ohio MDL Court has abused its discretion); *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 846 (granting petition for writ of mandamus and remanding with instructions to the Ohio MDL Court). "When it comes to motions that can spell the life or death of a case, . . . it is important for the district court to articulate and apply the traditional standards governing such motions." *Id.* at 845. Here, the proper exercise of discretion would have been to allow certification to the Georgia Supreme Court instead of unilaterally expanding Georgia public nuisance law in new and novel ways.

Even beyond the circumstances leading this Court to correct the Ohio MDL Court, the Ohio MDL Court is creating error through its rulings. Though state courts have had few opportunities to weigh in directly on opioid litigation, the Ohio MDL Court has been found to have incorrectly predicted state law in those few circumstances where state courts have issued decisions following an *Erie* guess from the Ohio MDL Court. Through its decision here, the Ohio MDL Court is compounding its errors.

For example, the Ohio MDL Court made the incorrect *Erie* guess and rejected manufacturer and pharmacy defendants' arguments that product-based nuisance claims "impermissibly expand liability under [Oklahoma] nuisance laws." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3737023, at *9 (N.D.

28

Ohio June 13, 2019). Instead, the Ohio MDL Court found the defendants' arguments to be an unreasonable restriction on Oklahoma's nuisance law as it would "cut off liability for all non-property-based public nuisance claims[.]" *Id.* But the Oklahoma Supreme Court has since issued a resounding rejection of that holding, finding "a clear national trend to limit public nuisance to land or property use." *Hunter*, 499 P.3d at 730. The Oklahoma Supreme Court held that the "novel theory" presented by the plaintiffs, "public nuisance liability for the marketing and selling of a legal product," would erase "the traditional limits on nuisance liability [and] leave[] Oklahoma's nuisance statute impermissibly vague." *Id.* at 731. Ultimately, the Oklahoma Supreme Court explained that "expansion of public nuisance law" was "stepping into the shoes of the Legislature by creating and funding government programs designed to address social and health issues," the classic type of policy-making exercise better left to the legislative and executive branches. *Id.* This type of deference to the legislative branch parrots what Georgia long ago recognized in *Boykin*—noting that if the appropriate remedies for regulatory violations were not "a sufficient check to the abuses described in the instant case, the appeal should be made to the lawmakers, and not a court of equity." 12 S.E.2d at 581.

The Ohio MDL Court has already made an incorrect *Erie* prediction in Oklahoma, and is likely to compound that error by applying the same logic from its earlier ruling on Oklahoma law (now repudiated) to other states' law, like it is now

doing with Georgia. This Court's intervention is necessary to protect the interests of federalism and federal-state comity and to ensure that the Georgia Supreme Court is not deprived of its ability to guide the Ohio MDL Court away from its interpretive error.

### 3.    Settlement Pressures Are Intense.

Publix is only one of several national pharmacy chains forced to defend themselves against the public nuisance claim Cobb County purports to assert under Georgia law. The unavoidable expenditure of time, energy, and resources required to maintain this defense, as well as the resulting disruption to their businesses, is both asymmetric and significant. The threat of irreversible prejudice is also acute, particularly in light of the Ohio MDL Court's stated preference for settlement.

As this Court has already recognized, the Ohio MDL Court has publicly "pushed for settlement." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137, at *3. At the outset of the MDL, for example, the Ohio MDL Court explained that it was not interested "in figuring out the answer to interesting legal questions," and that "we don't need trials." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804 (N.D. Ohio Jan. 12, 2018) (Transcript of Jan. 9, 2018 Status Conference, R. 71, Page ID ## 462, 467) (Exhibit 6). The court expressed its goal to "do something meaningful to abate this crisis" by ensuring "that we get some amount of money to [Plaintiffs] for treatment." *Id.* at ## 462-63. Although this Court concluded that the

Ohio MDL Court's comments did not warrant a writ of mandamus requiring recusal, the Court observed that "we do not encourage [the Ohio MDL Court] to continue these actions." *National Prescription Opiate Litig.*, 2019 WL 7482137, at \*2.

The Ohio MDL Court's push for settlement demonstrates why mandamus is appropriate, because direct appeal years from now is insufficient. Courts have held that the harm inflicted by unusually strong settlement pressure may warrant mandamus review because "the ruling that will have forced them to settle" cannot be corrected on appeal. *See In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1298, 1304 (7th Cir. 1995) (granting mandamus and directing the district court to decertify a class because certification imposed crushing pressure to settle a legally dubious claim); *In re Bendectin Prods. Liab. Litig.*, 749 F.2d 300, 304 (6th Cir. 1984) (granting mandamus and directing decertification of a settlement class because petitioners would be prejudiced by having to wait to appeal a settlement order); *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 358 (5th Cir. 2017) (Jones, J., concurring and dissenting in part) ("That a court's patent errors can compound into unjust settlements is well recognized and has led courts to find mandamus a necessary remedy even where a possibility of ultimate appellate relief exists. The undeniable pressure on defendants to settle is a reality in these alleged mass tort cases." (citation omitted)). Publix should not be subjected to these intense settlement

pressures while the Georgia judiciary is deprived of its state sovereignty, incapable of weighing in on such an important issue.

## VII.   CONCLUSION

For the foregoing reasons, Publix respectfully requests that the Court issue a writ of mandamus directing the Ohio MDL Court to certify the following question to the Georgia Supreme Court:

> Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 et seq., and for which the legislature has already enumerated civil and criminal remedies?

Respectfully submitted,

/s/ Kara M. Kapke
KARA M. KAPKE
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
(317) 231-6491
Kara.kapke@btlaw.com

*Counsel for Publix Super Markets, Inc.*

/s/ David J. Marmins
DAVID J. MARMINS
MORGAN E. M. HARRISON
ARNALL GOLDEN GREGORY LLP
171 17th Street N.W., Suite 2100
Atlanta, GA 30363
(404) 873-8126
David.marmins@agg.com
Morgan.harrison@agg.com

*Counsel for Publix Super Markets, Inc.*

FEBRUARY 25, 2022

## CERTIFICATE OF COMPLIANCE

1. This petition complies with Fed. R. App. P. 21(d)(1) because it contains 7,664 words, excluding the parts exempted by Fed. R. App. 32(f) and 6th Cir. R. 32(b).

2. This petition also complies with Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with 14-point Times New Roman font.

/s/ *David J. Marmins*
DAVID J. MARMINS

FEBRUARY 25, 2022

## CERTIFICATE OF SERVICE

I certify that on February 25, 2022, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system.

I further certify that on February 25, 2022, a copy of the foregoing was served upon the district court via email, and upon plaintiff's counsel via email at the agreed-upon listserv. A copy of the foregoing will also be served upon the district court via U.S. Certified Mail.

/s/ *David J. Marmins*
DAVID J. MARMINS

FEBRUARY 25, 2022