No. 21-3637

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

```
FILED
Mar 11, 2022
DEBORAH S. HUNT, Clerk
```

In re: HARRIS COUNTY, TX, et al.,           )
                                             )        O R D E R
          Petitioners.                       )

Before: GUY, CLAY, and DONALD, Circuit Judges.

This mandamus petition arises from multidistrict litigation concerning the over-prescription of opioid medications. Three counties in Texas—Harris, Rockwall, and Ellis—and two cities in New Mexico—Albuquerque and Santa Fe—petition for a writ of mandamus. They seek to compel the district court to adjudicate their motions to remand, each of which has been pending at least three years, and each of which challenges the district court's subject matter jurisdiction. On our invitation, the district court responded. We grant the petition.

Starting in 2017, cities, counties, and states began filing actions throughout the country against manufacturers and distributors of prescription opioid medications. The Judicial Panel on Multidistrict Litigation ("JPML") centralized the proceedings in the Northern District of Ohio ("the MDL"). Shortly after the cases were centralized, the district court met with counsel and organized the parties into categories or tracks overseen by steering committees. It also imposed a moratorium on filing substantive motions, including those to remand, so it could best use its limited resources and organize the litigation. Motions to remand filed prior to centralization remained pending. Despite this moratorium, the district court addressed some motions to remand challenging its jurisdiction. It remanded one case for lack of federal question jurisdiction (removed on the basis that the state law claims were inextricably intertwined with federal issues). It denied remand in other cases involving Indian tribes that were removed under

No. 21-3637
-2-

the federal officer removal statute.  After state court judges from two States had contacted the district court to request remand of the cases transferred from their jurisdictions to promote judicial efficiency, it remanded one of the cases because the parties did not object.  It remanded the other case because there were no federal causes of action and federal jurisdiction was otherwise very tenuous.  Apart from jurisdiction, it remanded several cases to facilitate processing overlapping claims against various categories of defendants and jurisdictions. Further, it noted that it might remand additional cases so other courts could work parallel to the MDL to try segments of the case and pursue settlements.

Petitioners' motions to remand—promptly filed following removal of their cases from state court and challenging the district court's jurisdiction on various grounds, some overlapping—remain pending.  Although the district court has revisited its moratorium, it kept it in place so that bellwether trials and/or settlement efforts could continue.  In the meantime, litigation of the MDL has continued apace, with the district court addressing other threshold legal issues and dispositive motions.  Against this backdrop, Petitioners moved the district court for suggestions of remand.  In non-document orders, the district court denied the motions without any explanation.  The JPML also denied Petitioners' motions to remand, while at the same time recognizing that they were entitled to a ruling on their motions.  Petitioners' motions, however, remain unadjudicated.

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes."  *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (internal quotation marks and citation omitted).  "The traditional use of the writ in aid of appellate jurisdiction . . . has been to confine [the court against which mandamus is sought] to a lawful exercise of its prescribed jurisdiction."  *Id.* (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)).  To preserve its use to only extraordinary causes, petitioners must satisfy three conditions.  First, they cannot have adequate alternative means to obtain the relief they seek.  *Id.*

at 380−81.  Second, petitioners must show a "clear and indisputable" right to the relief sought. *Id.* at 381 (citation omitted).  Finally, petitioners must show that issuing the writ is otherwise "appropriate under the circumstances."  *Id.*

Petitioners lack adequate alternative remedies, given that they have sought and been denied a suggestion of remand before the MDL and a remand before the JPML.  *See In re Wilson*, 451 F.3d 161, 168−69 (3d Cir. 2006); *In re Patenaude*, 210 F.3d 135, 141−42 (3d Cir. 2000).

Petitioners also have a clear and indisputable right to relief.  We may issue a writ "where a district court persistently and without reason refuses to adjudicate a case properly before it." *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661−62 (1978) (internal quotation marks and citation omitted).  "The rule of law applies in multidistrict litigation . . . just as it does in any individual case."  *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).  Consequently, "determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone."  *Id.*; *see also Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 177 (3d Cir. 2021).  Thus, while an MDL court has "broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL," it must find those efficiencies within the applicable statutes, "rather than in violation of them."  *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 845.  The district court's reasons supporting its delay—the economic impact of the litigation; the efficiencies created by imposing a stay while a global settlement was sought; concern that lifting the stay would jeopardize settlement efforts; and that Petitioners will benefit from any global settlement reached—are grounded in policy with no basis in statute or the Federal Rules of Civil Procedure.  Moreover, a party's rights in one case cannot be impinged upon "to create efficiencies in the MDL generally."  *Id.*

Finally, issuance of the writ is appropriate.  Remand is required "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c).  The seemingly mandatory nature of this provision weighs in favor of finding that the district court clearly abused its discretion in abating rulings on the pending remand motions.  Subject matter jurisdiction is of paramount importance, given that it "governs a court's adjudicatory capacity."  *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).  Thus, although it may be raised "at any time," *id.* at 434, it is generally regarded as a threshold matter.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).  Further, courts must adhere to jurisdictional rules "regardless of the costs [they] impose[]."  *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004); *see also Camsoft Data Sys., Inc. v. S. Elecs. Supply, Inc.*, 756 F.3d 327, 339 (5th Cir. 2014) ("[T]he so-called waste of judicial resources that occurs when we dismiss a case for lack of jurisdiction is the price that we pay for federalism." (internal quotation marks and citations omitted)).

We recognize that, in MDL cases, district courts "face[] unique challenges not present when administrating cases on a routine docket."  *Hamer*, 994 F.3d at 178.  Thus, MDL courts are "granted significant latitude to manage their dockets and to mitigate 'potential burdens on the defendants and court.'"  *Id.* (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 246 (3d Cir. 2013)).  District courts managing multidistrict litigation "reasonably may conclude that the court's time, especially early in the litigation, is better spent on activities other than deciding scores or hundreds of individual remand motions."  *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir. 2010) (per curiam) (Kaplan, J., concurring).  But we are no longer at the outset of this litigation, and Petitioners' motions have been pending an unduly long time.  Numerous courts, prior to transfer of cases into the MDL, addressed and granted pending motions to remand.  *See, e.g.*, *Mecklenburg Cnty. v. Purdue Pharma, L.P.*, No. 3:19-cv-00463, 2019 WL 3207795, at *2, *7 (E.D. Va. July 16, 2019) (collecting cases).  Although portions of

No. 21-3637
-5-

those jurisdictional questions were fact driven, the unanimity of these decisions lends significant support to the merits of Petitioners' jurisdictional arguments.  The district court's concern that it lacks adequate resources to address Petitioners' motions (and those of numerous other movants), is also not supported by the record.  The district court has frequently decided representative issues and applied that disposition to other parties in lieu of permitting all parties to file repetitive motions.  It has already taken this tack in addressing prior motions to remand, and we see no reason it cannot continue to employ this course to adjudicate the pending motions to remand. The district court shall submit a status report every thirty (30) days advising the court of the status of the pending motions and actions taken in complying with this order.

Accordingly, the petition for a writ of mandamus is **GRANTED**.  The district court shall promptly address Petitioners' motions.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk