UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:

   *County of Lake, Ohio v. Purdue Pharma L.P., et al.*,
      Case No. 18-op-45032 (N.D. Ohio)

   *County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*,
      Case No. 18-op-45079 (N.D. Ohio)

"Track 3 Cases"

MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster

## TRACK 3 DEFENDANTS' JOINT SUBMISSION CONCERNING PLAINTIFFS' ABATEMENT PLAN

**I.      ABATEMENT PLAN LEGAL FRAMEWORK**

As set forth in Defendants' legal brief regarding abatement (Dkt. 4299), any abatement remedy in this case must be tailored to *the nuisance that the jury found*. That nuisance is the "oversupply of legal prescription opioids, and diversion of those opioids into the illicit market outside of appropriate medical channels." *See* Dkt. 4176 (verdict form). Plaintiffs' abatement plan attempts to remediate a far broader set of societal ills, which they vaguely label as the "opioid crisis" in their communities, largely through treatment of individuals with opioid use disorder ("OUD") and care for their children. But these ills that Plaintiffs seek to remedy are the health and societal effects of the nuisance, not the nuisance itself, and therefore cannot as a matter of law be the subject of any abatement remedy. Likewise, the jury did not find that Defendants were a substantial factor in causing opioid abuse and associated societal ills in Plaintiffs' communities.

1

Therefore, the relief requested by Plaintiffs is not proper abatement—particularly not abatement of the nuisance the jury found. *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 729 (Okla. 2021) (rejecting similar abatement plan).

By submitting this response to Plaintiffs' abatement plan, Defendants expressly do not waive any of these positions and objections, nor do they concede that Plaintiffs' claimed costs are appropriate abatement costs or that they have properly proven causation. Defendants also expressly preserve and do not waive their objections to the viability of Plaintiffs' nuisance cause of action, the errors that occurred during the liability phase of trial, and the nature and scope of Plaintiffs' claimed nuisance. *See, e.g.*, Dkt. 4202, 4204. Defendants also preserve all objections to the nature and scope of the relief Plaintiffs have requested, shifting the burden of proof onto Defendants to show apportionment through the Ohio Supreme Court's *Pang v. Minch* decision or otherwise, and that the same jury who decided liability is not deciding relief and apportionment as well. *See* Dkt. 4299. Defendants also expressly reserve and do not waive their right to raise additional legal and factual issues before, during, and after trial.

## II. DEFENDANTS' EXPERT REPORTS RESPONSIVE TO PLAINTIFFS' ABATEMENT PLAN

Defendants incorporate the expert reports of Daniel Kessler, Robert Brunner, Joseph Doyle, Matthew Bialecki, and Amitabh Chandra, dated March 15, 2022, and the explanations and caveats therein. Defendants have already served copies of these reports on Plaintiffs and have delivered courtesy copies to the Court's chambers. Defendants' expert reports have been prepared in response to Plaintiffs' expert reports, which, in addition to outlining a remedy that is contrary to law, are rife with mistakes, unsupported assumptions and a failure to account for appropriate allocation and other funding sources already available, including Medicaid and private insurance.

### III. ADMINISTRATION OF ANY ABATEMENT AWARD

Any abatement plan ordered by the Court should be administered by a neutral third party agreed to by the parties and appointed by the Court (the "Administrator"). The Court should retain jurisdiction over the plan and exercise judicial oversight over its administration.

Any funds that Defendants are ordered to pay for abatement should be deposited into separate, dedicated bank accounts for each County. The accounts should not be owned, controlled, or otherwise directed by the Counties, their employees, or their agents. The Administrator should have signature authority over the accounts and the authority to direct the disbursement of funds out of the accounts. The Administrator should maintain contemporaneous books and records reflecting, among other things, receipts and disbursements and each Defendant's balance in the accounts.

The Administrator should establish written procedures for the submission and consideration of funding requests. Those procedures should be agreed to by the parties and approved by the Court. At a minimum, the procedures should require that the Counties make written requests for funds on an as-needed basis, specifying in each instance how the funds will be used, and that the Administrator review each request and determine whether it is for an expense that is within the scope of the abatement plan ordered by the Court and whether the amount is tailored to the requested need. To the extent that a request is made to fund treatment or other programs or services within the scope of the abatement plan, names of the persons receiving such treatment or services shall be run through each Defendant's dispensing data in a fashion sufficient to protect their privacy. If a Defendant did not dispense prescription opioids to that individual to a sufficient degree, the expense cannot be allocated to that Defendant. The Administrator also should establish procedures for auditing the use of the funds that are disbursed to the Counties, to ensure that the funds are used for their intended and approved purposes.

The Administrator should provide a written report to the Court and to the parties on a quarterly basis. The report should identify the disbursements for the prior quarter and specify each Defendant's balance. Any funds that remain at the conclusion of the abatement period should be returned to Defendants.

Dated: March 18, 2022               Respectfully submitted,

/s/ *John M. Majoras*
John M. Majoras
Benjamin C. Mizer
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com
E-mail: bmizer@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker
Chicago, IL 60601
Phone: (312) 269-4335
Fax: (312) 782-8585
E-mail: tmtabacchi@jonesday.com
E-mail: tfumerton@jonesday.com

*Counsel for Walmart Inc.*

/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Graeme W. Bush
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC  20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: gbush@zucerkman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*


/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Jeffrey A. Hall
Bartlit Beck LLP
54 West Hubbard Street
Chicago, IL 60654
Tel: (312) 494-4400
Fax: (312) 494-4440
kaspar.stoffelmayr@bartlitbeck.com
jeff.hall@bartlitbeck.com

Katherine L.I. Hacker
BARTLIT BECK LLP
1801 Wewatta Street, 12th Floor
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
kat.hacker@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*

5

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that the foregoing document was served via the Court's ECF system on all counsel of record on March 18, 2022.

/s/ John M. Majoras
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
Phone: (202) 879-3939
Fax: (202) 626-1700
E-mail: jmmajoras@jonesday.com

*Counsel for Walmart Inc.*
