# EXHIBIT 2

Page 1

1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF OHIO
2                      EASTERN DIVISION
3                       - - - - -
4
        IN RE:                      )   MDL No. 2804
5       NATIONAL PRESCRIPTION        )
        OPIATE LITIGATION            )
6                                    )
                                     )   Case No.
7       This Document Relates To:    )   1:17-md-2804
                                     )
8       The County of Lake, Ohio v.  )   Judge
        Purdue Pharma L.P., et al.   )   Dan Aaron
9       Case No. 18-op-45032         )   Polster
                                     )
10      The County of Trumbull, Ohio )
        v. Purdue Pharma L.P.,       )
11      et al.                       )
        Case No. 18-op-45079         )
12                                   )
        Track 3 Cases                )
13
                        - - - - -
14
15           Remote Videotaped Deposition of:
                 G. CALEB ALEXANDER, M.D.
16              Appearing Remotely from
                Baltimore County, Maryland
17
18
19                 February 11, 2022
                      1:16 p.m.
20
21
22
23
24      Reporter:  Kristin Wegryn, RMR, CRR
                Appearing Remotely from
25              Cuyahoga County, Ohio

Page 63

1          Q.    Fair.

2                That's what I was trying to understand.

3          So, for line 1, for example, in your proposal of

4          testing all universal -- or screening all

5          pregnant women for opioid use, do you know

6          whether your proposal changes current practices

7          at all?

8          A.    I didn't try to plug holes here.  I

9          wasn't trying to look carefully and patch each

10         hole that Lake County may have open, whether a

11         tiny pinhole or a huge pothole.

12               You know, my, my effort was to develop a

13         comprehensive set of programs and services that,

14         if implemented and implemented in a coordinated

15         fashion and well governed, over time could lead

16         to significant reductions and, frankly, decrease

17         by half rates of opioid use disorder and

18         associated morbidity and mortality in the county.

19         Q.    So the answer to my question is no, you

20         don't know how that proposal for that particular

21         line item is different from what currently

22         happens?

23               MR. WEINBERGER:  Objection.  Form.

24         A.    If you're asking whether I know whether

25         2,192 pregnant women last year in Lake County

Page 67

1          focusing on the number of individuals who have

2          opioid use disorder.  I appreciate your plan goes

3          beyond that, as well.

4                    But just focusing on the folks who you

5          estimate have opioid use disorder in Lake and

6          Trumbull counties, you don't make any distinction

7          regarding the source of those individuals' opioid

8          use disorder, correct?

9          A.    Well, I call for services and programs

10         to address different groups of individuals.  So,

11         you know, syringe service programs aren't for

12         people that aren't using intravenously and the

13         like.

14         Q.    Okay.  So folks who -- depending on how

15         they -- they're currently using their drug.  But

16         what I'm -- I meant it slightly differently, so

17         let me try to ask my question again.

18                    Your abatement plan would provide

19         treatment services to those individuals who never

20         took a prescription opioid but became addicted to

21         illicit opioids, correct?

22         A.    Yes.  And some -- I mean, there's no

23         other way to abate the opioid epidemic.  I've

24         never seen an abatement plan that said we're just

25         going to treat people that are using heroin and

Page 68

1      have prior prescription opioid use, but we're not
2      going to treat people that just have prescription
3      opioid use.
4              So, of course, there's some people that
5      are using illicit opioids that have never used
6      prescription opioids but wouldn't be using
7      illicit opioids but for the historic oversupply
8      of prescription opioids in Lake and Trumbull
9      counties.
10         Q.   So I just want to make sure I understand
11     your answer.
12             So your plan would provide treatment
13     services to individuals who had never taken a
14     prescription opioid dispensed by CVS, Walmart, or
15     Walgreens, correct?
16         A.   Yes.  My plan would treat -- would
17     provide services for anybody with opioid use
18     disorder because, to my knowledge, that's the
19     only way to abate the opioid epidemic.
20         Q.   Okay.  So talking about your plan.
21     Under your plan, who do you envision would
22     implement the plan?
23         A.   Well, which county are we talking about?
24         Q.   Well, so I guess let's start with Lake
25     County.

```
 1                         CERTIFICATE
 2
 3        The State of Ohio,    )
 4                              )         SS:
 5        County of Cuyahoga.   )
 6
 7               I, Kristin Wegryn, a Notary Public
          within and for the State of Ohio, duly
 8        commissioned and qualified, do hereby certify
          that the within-named witness, G. CALEB
 9        ALEXANDER, M.D., was by me first duly sworn to
          testify the truth, the whole truth, and nothing
10        but the truth in the cause aforesaid; that the
          testimony then given by the above-referenced
11        witness was by me reduced to stenotypy in the
          presence of said witness; afterwards transcribed,
12        and that the foregoing is a true and correct
          transcription of the testimony so given by the
13        above-referenced witness.
14               I do further certify that this
          deposition was taken remotely at the time and
15        place in the foregoing caption specified and was
          completed without adjournment.  I do further
16        certify that I am not a relative, counsel, or
          attorney for either party, or otherwise
17        interested in the event of this action.
18               IN WITNESS WHEREOF, I have hereunto set
          my hand and affixed my seal of office at
19        Cleveland, Ohio, on this 16th day of February
          2022.
20
21
22
23
24        Kristin Wegryn, RMR, CRR
          Notary Public State of Ohio
25        Commission expiration:  July 23, 2023
```