# EXHIBIT 3

# LAW OF REMEDIES

## DAMAGES—EQUITY—RESTITUTION

### Second Edition

Dan B. Dobbs

*Hornbook Series*



WEST GROUP

tion, even if that nuisance is caused by a conduct that otherwise contributes to the public weal.[48] Poisoning the water supply of a town could hardly be justified even by the most important of industries. Much serious environmental pollution will generate strong public interest reasons in support of an injunction.[49] In less obvious cases, public interest balancing may be controversial and is likely to involve at least some element of political or social decision-making outside the traditional judicial role.[50]

However, the political or social balancing may have been done before trial by the legislature itself. When the defendant's conduct violates a statute, it is possible that the legislature has already weighed the competing interests and has reflected its judgment in the statute. In such a case the court may be willing to discount its own assessment of public interests and issue the injunction authorized by statute.[51] Somewhat similarly, where the defendant's conduct violates a deed restriction, the balancing has been done by the parties or their predecessors in title and the balance struck in the covenant itself, so that if one neighbor violates the covenant it should be no defense to the injunction that his violation serves some public good.[52]

With the development of intense economic analysis in the law, some of it focused directly on the question of nuisance remedies,[53] the issues about balancing of utilities have become more complex. Some of the developing perspectives on balancing can best be appreciated, however, only when the remedial options are understood.

### § 5.7(3)  The Remedial Options in Nuisance Cases

#### Four Basic Remedial Choices

*Traditional choices.* Until 1973 it was thought that a chancellor faced with a claim of nuisance might have three basic remedial choices:

> (1) Deny any relief on the ground that there was no nuisance at all. This would be equivalent to saying that the defendant was entitled to conduct the activity in question.

> (2) Grant an injunction abating the nuisance. This might be a partial abatement, but to the extent granted it would be equivalent to saying that the plaintiff was entitled to be free from the activity in question and that the plaintiff's entitlement would be protected as a property right—that is, by an injunction.

---

48. Cf. Rose v. Chaikin, 187 N.J.Super. 210, 453 A.2d 1378, 36 A.L.R.4th 1148 (1982) (defendant's windmill served public interest in developing alternate sources of energy, but it also caused noise pollution in an otherwise quiet natural environment, balancing favored injunction).

51. See Little Joseph Realty, Inc. v. Town of Babylon, 41 N.Y.2d 738, 395 N.Y.S.2d 428, 363 N.E.2d 1163 (1977) (injunction to run against zoning violation harmful to private plaintiff without balancing of hardships, etc.). The effect of statutes is complex, however. See § 5.7(5) below.

52. See Wier v. Isenberg, 95 Ill.App.3d 839, 51 Ill.Dec. 376, 420 N.E.2d 790 (1981).

53. Calabresi & Melamed, Property Rules, Liability Rules, and Inalienability: One View of the Cathedral, 85 Harv.L.Rev. 1089 (1972); Ellickson, Alternatives to Zoning: Covenants, Nuisance Rules, and Fines as Land Use Controls, 40 U.Chi.L.Rev. 681 (1973); Polinsky, Resolving Nuisance Disputes: The Simple Economics of Injunctive and Damages Remedies, 32 Stan.L.Rev. 1075 (1980); Edward Rabin, Nuisance Law: Rethinking Fundamental Assumptions, 63 Va.L.Rev. 1299 (1977); Lewin, Compensated Injunctions and the Evolution of Nuisance Law, 71 Iowa L.Rev. 775 (1986). See § 5.7(4) below.

(3) Deny the injunction but grant damages to the plaintiff. This would be equivalent to saying that the defendant was entitled to continue his activity (hence no injunction), but only on payment of damages caused by it. Except for fine-tuning these remedies, it was thought that there were no other remedial choices.

*The Fourth option: a compensated injunction.* In 1972, a remarkable article and a remarkable case appeared at almost the same moment to suggest a fourth option. In the article, Calabresi and Melamed suggested that the nuisance victim might in some cases be entitled to an injunction abating the nuisance, but only if he paid the defendant for the costs of the abatement.[1] The plaintiff under the fourth option would be entitled to the injunction, but in contrast with the traditional "free" injunction, the plaintiff would obtain the injunction only if paid for it.[2]

*Spur Industries.* The case which appeared on the heels of the Calabresi and Melamed article furnished an example of the "compensated injunction." In *Spur Industries, Inc. v. Del Webb Development Co.,*[3] homes had been built in a widening gyre into the desert until they approached the defendant's feed lot, which processed enormous numbers of animals and created seriously unpleasant conditions for the homeowners. The Arizona Court held that the feed lot could be enjoined, thus forcing it to move to a new location, but that the plaintiffs who sought this remedy could have the injunction only if they paid the costs of the move.

*Acceptance of Spur Industries.* The case was an appealing one on its facts because the feed-lot had been constructed originally in a place far from any dense habitation and the homebuilder had built up to the nuisance. It was also appealing because it was feasible to consider moving the whole operation to a more suitable place. Commentators have liked the idea[4] and sometimes have sought to extend it to less obvious candidates for this form of relief.[5] So far, however, other courts have not had occasion to employ the compensated injunction, much less to extend it.[6] The compensated injunction has been used, however, in a completely different factual setting to enjoin competition by one in possession of trade secrets.[7]

### Form and Terms of the Remedy: Fine–Tuning Injunctions

*Nebulous injunctions.* In many simple nuisance cases it is clear enough that an injunction should go and the only problem will be its form. The leaking sewer might be enjoined in terms that tell the defendant specifically

---

§ 5.7(3)

1. Calabresi & Melamed, Property Rules, Liability Rules, and Inalienability: One View of the Cathedral, 85 Harv.L.Rev. 1089 (1972).

2. Discussed in detail in Lewin, Compensated Injunctions and the Evolution of Nuisance Law, 71 Iowa L.Rev. 775 (1986). See also § 5.7(4) below.

3. 108 Ariz. 178, 494 P.2d 700, 53 A.L.R.3d 861 (1972).

4. Ellickson, Alternatives to Zoning: Covenants, Nuisance Rules, and Fines as Land Use Controls, 40 U.Chi.L.Rev. 681 (1973); Edward Rabin, Nuisance Law: Rethinking Fundamental Assumptions, 63 Va.L.Rev. 1299 (1977); Lewin, Compensated Injunctions and the Evolution of Nuisance Law, 71 Iowa L.Rev. 775 (1986).

5. Rabin proposed to allow even a plaintiff who could not otherwise recover for a nuisance to have an injunction if he could pay for it. See Edward Rabin, Nuisance Law: Rethinking Fundamental Assumptions, 63 Va. L.Rev. 1299 (1977). This view was attacked in Lewin, Compensated Injunctions and the Evolution of Nuisance Law, 71 Iowa L.Rev. 775 (1986).

7. Emery Industries, Inc. v. Cottier, 202 U.S.P.Q. 829 (S.D.Ohio 1978); see § 10.5(3).

Case: 1:17-md-02804-DAP  Doc #: 4321-3  Filed: 03/23/22  5 of 6.  PageID #: 574365

what to do [8] and even in terms that provide for monitoring his compliance;[9] or it might be enjoined by an injunction that tells him merely to cease maintaining a nuisance.[10] The latter form—a "nebulous" injunction [11] or an injunction to "be good"—runs the risk of constitutional violation.[12] It may also violate Federal Rule 65 [13] and its state counterparts.[14] In any event such an injunction can be quite unfair to the defendant.[15] But in simple cases the terms of the injunctive order will seldom present a serious problem.

*Scope and limits of injunction.* In more complex or difficult cases, however, it may be necessary to invest considerable effort in the exploration of the remedial options. As already indicated, the chancellor may issue either an injunction, or damages, or possibly both. But these are not the only choices, because each remedy presents its own spectrum of measurement or scope. Damages might be based on diminished market value, on the cost of eliminating the nuisance effects, or on subjective, personal elements such as illness or diminished enjoyment of the property.[16] Injunctions also may range widely in their scope. The injunction might compel complete abatement of the offending condition,[17] but equally it might only compel some adjustment in operating conditions.

Often a balance of the hardships and equities leads to the conclusion that the defendant may continue the activity, but only for limited periods during the day or only on certain days of the week,[18] or only when specified

---

8. E.g., Valasek v. Baer, 401 N.W.2d 33 (Iowa 1987) (injunction to dispose of wastes 80 rods farther from plaintiffs' houses).

9. Miller v. Cudahy Co., 592 F.Supp. 976 (D.Kan.1984).

10. See McCastle v. Rollins Environmental Services of Louisiana, Inc., 415 So.2d 515 (La. App.1982) (defendant enjoined to stop emitting odors that made the plaintiff ill or uncomfortable).

11. The term derives from Durfee, Nebulous Injunctions, 19 Mich.L.Rev. 83 (1920).

12. It would seem that due process would be violated if the defendant could be punished for violating a decree that could not be understood. Cf. International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967) ("The most fundamental postulates of our legal order forbid the imposition of a penalty for disobeying a command that defies comprehension"); Schmidt v. Lessard, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) ("basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed").

13. See International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967) (Rule 65 requires specific terms and one is not in violation of an order that does not meet this requirement).

14. See Banker v. Bath Iron Works Corp., 507 A.2d 602 (Me.1986) (in a state substantially adopting Federal Rule 65), the requirement of specific and reasonably detailed terms is "codified" and mandatory.

15. Although nebulous injunctions have been and still are issued, state-court decisions have long condemned them, independent of the commands of procedural rules or constitutions. In Baldwin v. Miles, 58 Conn. 496, 20 A. 618 (1890) the court said: "Such an order should be clear and certain in its terms, so that the party upon whom it is served may readily know what he can or cannot do thereunder, seeing that the consequences of a breach may subject him to loss of property and imprisonment. As this court said * * * 'Injunctions ought to be made plain and distinct. No respondent is to be entrapped into a contempt by vague or general orders.'" On this ground the Baldwin court overturned a contempt sentence.

18. Daugherty v. Ashton Feed and Grain Co., 208 Neb. 159, 303 N.W.2d 64 (1981) (operating of drying fans on certain days and during certain hours enjoined); Mercer v. Brown, 190 So.2d 610 (Fla.App.1966) (no cooking of offal and garbage except between 11:00 p.m. and 2:00 a.m.); Sherrod v. Dutton, 635 S.W.2d 117 (Tenn.App.1982) (night time races enjoined); Hopkins v. Stepler, 315 Pa.Super. 372, 461 A.2d 1327 (1983) (time of day when dogs allowed out).


steps have been taken to ameliorate the harm that it does.[19] Intractable cases may call for continued experiment, perhaps under court supervision,[20] in an effort to find a way to minimize the harm. Or the injunction might be issued with a proviso for delay in enforcement to give the defendant time to comply as efficiently as possible, or perhaps to give a defendant incentive to find better means of compliance than are now possible.[21] Both injunction and damages are thus flexible remedies in this context, and because they can be used together in various combinations, the flexibility is even greater than might be achieved by one remedy alone.

*Incentive injunctions and incentive damages.* The preferred combination of remedies is likely to be that which reflects the court's balance of interests and utilities and which at the same time provide appropriate incentives to the parties. For example, in the case of the factory that serves social purposes but also unavoidably pollutes, the court might refuse an absolute abatement but order research or experiment into means of reducing the pollution; or it might injunctively proscribe the operation effective at some future time unless the defendant is able to show the court before the cut-off date that the nuisance has been materially reduced. In the case of widespread pollution, an order of this kind might be preferable to a decision that denies the injunction altogether.

As has been indicated elsewhere,[22] there is similar room for shaping the damages award to provide incentives. This can be done mainly by awarding temporary rather than permanent damages, because to do so subjects the defendant to the threat of continued future suits unless the nuisance is reduced. A combination remedy might be an award of temporary damages to the plaintiff covering a time-period of two years after the trial, coupled with an injunction to eliminate the nuisance at the end of the two-year period. Variations of this kind of injunction can be structured as the facts demand.[23]

### § 5.7(4) Economic and Other Perspectives

A balance of the benefits of the nuisance against its costs cannot be realistic unless total costs are estimated. This may be difficult because data is difficult to obtain and because some of the economic costs of a nuisance may be inflicted upon persons who are not parties to the suit and who may not be identified.

A different complication in estimating costs arises from the limited array of solutions which the court or the parties can imagine. The costs will seem very high if the court imagines that a cement factory which deposits loads of dust on its residential neighbors would be compelled to close down if

---

**19.** Flansburgh v. Coffey, 220 Neb. 381, 370 N.W.2d 127 (1985) (hog raising and odors, injunction permitted continued raising of hogs but prohibited particular confinement buildings and accumulation of manure); West v. National Mines Corp., 168 W.Va. 578, 285 S.E.2d 670, 25 A.L.R.4th 1179 (1981) (dust from trucks hauling coal, preliminary injunction to issue, terms of which might merely require watering the road or similar steps to keep dust down without stopping traffic).

**20.** Restatement (Second) of Torts § 941 Comment *e* (1979).

**21.** See Reserve Mining Co. v. EPA, 514 F.2d 492, 541, n. 1, 29 A.L.R.Fed. 73 (8th Cir.1975). The textual discussion of the postponed injunction suggests that postponement here might be three years, but evidently it might have been as much as seven or even ten years. See Plater, Statutory Violations and Equitable Discretion, 70 Calif.L.Rev. 524, 572 (1982).