March 29, 2022

**VIA ECF-FILING AND E-MAIL**

The Honorable Dan A. Polster
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 18B
Cleveland, Ohio 44113-1837

      Re:    CMO Applicable to Cases of "Non-Participating Subdivisions" Asserting Claims Against Settling Defendants (Doc. # 3795)

Dear Judge Polster:

The undersigned counsel write on behalf of all litigating counties and cities in Washington State who have filed claims against Defendants McKesson Corporation, Cardinal Health, Inc., AmerisourceBergen Corporation, and Johnson & Johnson (collectively, "Settling Defendants"). Collectively, the 37 litigating counties and cities in Washington represent nearly 90% of the state's population. We write specifically in reference to the above-referenced Case Management Order outlining certain requirements for these litigating entities to comply with, including providing the Settling Defendants with updated Plaintiffs' Fact Sheets, detailed suspicious orders and damage calculations, and identification of experts and their potential opinions. *See* Doc. # 3795, ¶ I-II.

As set forth in more detail below, given the unique circumstances of the litigating counties and cities in Washington State, we respectfully request (1) relief from this Case Management Order in the form of a stay or an extension of time, or (2) in the alternative, remand of the Washington cases back to a federal district court in Washington.

**A.    Background applicable to Washington State**

In the July 23, 2021 Case Management Order Applicable to Cases of "Non-Participating Subdivisions" Asserting Claims Against Settling Defendants (Doc. # 3795) (hereinafter "CMO"), the Court set forth various requirements for Non-Participating Subdivisions to comply with if they were not a Participating Subdivision to the Distributor and Johnson & Johnson ("J&J") national settlements ("National Settlements"). As noted in the CMO, Non-Participating Subdivisions are "[e]ssentially … an eligible Subdivision that *chooses* not to participate in the Settlement Agreements." CMO, n.2 (emphasis added).

As Your Honor is aware, under the terms of the Distributor and J&J settlements, a local government can only participate in the National Settlements if the state in which it is located opts into the deals. *See* § VII.G to both Settlement Agreements ("Subdivisions in Non-Settling States and Prior Litigating Subdivisions are not eligible to be Participating Subdivisions."). The Washington Attorney General has chosen *not* to opt-in to the National Settlements, and instead is litigating its own cases against the Distributors and J&J. The Washington AG's case against the Distributors is currently in trial in King County Superior Court in Washington, and its case against J&J is set for trial in September 2022.

Judge Polster
March 29, 2022
Page 2

Washington was not the only state that indicated, at least initially, that it would not opt-in to the National Settlements. The local governments in these states likewise did not have an opportunity to participate in the National Settlements. Because local governments would be placed in the position to comply with the CMO requirements without having a say in whether to accept the national deals, Clark County in Nevada filed a motion for clarification in which it sought relief from the various discovery and expert obligations required by the CMO. Doc. #4192.

On December 13, 2021, this Court denied that relief. Among other reasons, the Court explained that the agreements "were designed to incentivize political subdivisions to put political pressure on one another as well as on their States to maximize participation in the global settlements." Doc. #4192 at 2. The Court further noted that in States that did not accept the deals:

> [T]he Court expects the Attorneys General who have not joined to have consulted with the political leadership of the Cities and Counties of that State, and to have concluded that most Cities and Counties agreed with the State not to opt in to the Settlement Agreements. To the extent that has not happened, and a majority of the Cities and Counties of a State has not opted in do, in fact, wish to participate in the global settlement, the political leadership of those subdivisions need to use the political processes at their disposable to try and change their State's decision.

*Id.*

With respect to Washington, however, no amount of political pressure will induce the State to participate in the National Settlements. The Washington Attorney General has publicly indicated that it will not join the National Settlements, and is now in the midst of trial with the Distributor Defendants that has been pending since November 2021. Moreover, the Determination Date as defined in the CMO has passed and, between the date of the CMO and the Determination Date, the Washington AG neither consulted with the local governments nor sought their input in rejecting the deal, notwithstanding extensive communications between counsel for the local governments and the Attorney General's office. Thus, the Washington local governments respectfully submit that the stated reasons in the Court's December 13 Order are not applicable to the unique circumstances faced by the Washington local governments.

**B.     Relief is warranted from the CMO**

The litigating counties and cities in Washington State respectfully request relief from the CMO for two specific reasons. First, as discussed above, at this point, with the Determination Date in the past, and the State in the midst of trial against the Distributor Defendants, the rationale for the CMO is not applicable to Washington counties and cities. Simply put, the Washington Attorney General is not joining the National Settlements, and Washington counties and cities lack the ability to change the Attorney General's mind.

Judge Polster
March 29, 2022
Page 3

Second, in the absence of any realistic possibility of the State joining the National Settlements, the burdens of compliance with the CMO are unjustified. CMO ¶ II.B requires Washington counties and cities to identify, among other things, "suspicious orders" that the Settling Defendants "should not have shipped," including most prominently "any sources relied upon and algorithms used." As a threshold matter, the Washington local governments do not (and have not) had access to the same information as the cities and counties that have been selected to date for bellwether trials. This complicates and makes more burdensome the collection of this information.

As the Court is also aware, the identification of suspicious orders was the subject of extensive discovery along with time-consuming and costly expert reports in both CT1 and CT3, as well as other jurisdictions in which opioid cases have been litigated. Washington local governments have not been authorized to take affirmative discovery in the MDL specific to Washington State and, accordingly, do not have all the information needed to construct complete suspicious order models for their jurisdictions. Even if they did gain access to the necessary information, many of the experts who could assist in determining "suspicious orders" and the "sources relied upon and algorithms used" are currently involved in other case tracks this Court has remanded for trial, including CT4 and CT 7-11, as well as related state-court actions that are occurring at the same time. Their availability and willingness to create analyses and models for purposes of the CMO are severely compromised by their ongoing opioid-related expert obligations in cases this court has prioritized over Washington city and county cases.

The requirement set forth in both ¶ II of the CMO are also burdensome and costly. For example, with regard to the identification of "suspicious orders," the expert analyses was expensive and time consuming, requiring the work of subject matter experts and litigation consultants – and this work was performed just with respect to two Ohio counties in CT1. In Washington State, 37 counties and cities have filed claims against the Settling Defendants, thereby exponentially increasing the burden and cost of creating similar analyses in their respective jurisdictions.

As the Court also knows from CT3 and its forthcoming abatement phase of that trial, the scope of abatement, its amount, and potential collateral sources is a complex undertaking requiring detailed factual discovery and expert analyses. And this is also just for two Ohio counties – whereas 37 Washington counties and cities would need similar resources in less than 90 days to comply with the provisions of ¶ II.A.

The undersigned are committed to the cases they filed, and are prepared to litigate their claims against the Defendants. But discovery and litigation are a two-way street. If required to comply with the provisions of the CMO (and to the extent it is even possible to comply), the Washington local governments will be providing Defendants with fact and expert disclosures regarding each of their jurisdictions before receiving any discovery from the defendants in return.

Amplifying this one-sided discovery is the substantial third-party discovery each of the Washington local governments have undergone in the Washington AG's various opioid cases. As early as 2018, and in connection with the Washington AG's case against Purdue, each of these local governments have had to respond to burdensome and broad third-party discovery requests from Purdue, then from the Distributor Defendants, and now from J&J. Over the last 3.5 years, Washington local governments have had to collectively respond to thousands of discovery requests through over a hundred third-party subpoenas, sit for several depositions, and engage in substantial motion practice in front of the Special Master in King County in each of the Washington AG's cases to try and limit the far-reaching discovery requested by the Settling Defendants. Indeed, witnesses from Washington State local governments are testifying at trial in the Washington AG's action against the distributors. Meanwhile, these local governments have received *no discovery in return*. Litigation requires the participation of parties on both sides of the 'v' – it is not designed to only elicit information from just one party, and unfortunately compliance with the CMO will only continue this trend for the Washington local governments.

Thus, the Washington local governments respectfully request that the provisions of the CMO be stayed. At a minimum, because the requirements to comply with ¶ II of the CMO are particularly burdensome, costly, and substantial, the Washington local governments respectfully request that the Court stay these provisions and only require them to comply with the provisions of ¶ I. The Washington subdivisions can be prepared to update their plaintiffs' fact sheets as required ¶ I in the timeframe required by the CMO. Such compliance will serve the Court's stated objective of identifying the "essential details" of cases that may potentially be remanded. *See* Doc. # 4192 at 3.

If the requirements of ¶ II of the CMO are not stayed, the Washington local governments respectfully request that Court extend the deadline for compliance with ¶ II of the CMO by ninety (90) calendar days.

## C. In the alternative, we seek remand of Washington local government cases back to federal district court in Washington State

To the extent the Court is not inclined to grant relief from the CMO, Washington counties and cities respectfully submit that remand of these cases is appropriate under the circumstances and will serve the objective of encouraging widespread settlement participation.[1]

---

[1] While the City of Seattle joins this request for remand to Washington district court, it does so without consenting to federal subject matter jurisdiction. Seattle's case against the Manufacturer Defendants was filed in state court, improperly removed, and then transferred to the MDL with Seattle's remand motion pending. *See* Case No. 18-op-45089, Doc. # 11. Seattle respectfully reserves all rights to renew its fully briefed remand motion upon any remand to federal district court in Washington. Similarly, Snohomish County and King County also join in this request for remand to Washington district court, but without consenting to federal subject matter jurisdiction and reserving all rights concerning remand back to state court.

Judge Polster
March 29, 2022
Page 5

      Under JMPL rule 10.1, the transferee judge may initiate remand by recommending remand of an action, or a part of it, to the transferor court "at any time by filing a suggestion of remand with the Panel." The exercise of discretion to remand "generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Darvocet*, 106 F. Supp. 3d 849, 857-58 (E.D. Ky. 2015) (citation and internal quotations omitted).

      Given that there is not a realistic possibility of the Attorney General joining the National Settlements, there no longer is any benefit achieved from staying the Washington cities' and counties' cases against the Settlement Defendants in the MDL. There is, however, significant detriment. If the cases remain stayed in the MDL, the Washington cities and counties will be required to comply with substantial fact and expert discovery requirements including through the CMO, and will continue to be subject to the Settling Defendants third party discovery requests in connection with the Washington AG's actions. Information will continue to flow to the Settling Defendants while the Washington local governments get nothing in return.

      Remand, on the other hand, has the potential to benefit the parties by activating the litigation, and increasing the likelihood that parties will engage in settlement negotiations. If the Court is inclined to grant remand of specific Washington local government cases, rather than all of them, the undersigned respectfully request that the Court stay the requirements of the CMO and solicit the parties' input on a Washington bellwether selection process.

                                Sincerely,

                                Lynn Sarko
                                lsarko@kellerrorhback.com
                                Derek Loeser
                                dloeser@kellerrohrback.com
                                David J. Ko
                                dko@kellerrohrback.com
                                KELLER ROHRBACK L.L.P.
                                1201 Third Avenue, Suite 3200
                                Seattle, WA 98101

                                *Attorneys for City of Tacoma, King County, Skagit County, City of Mount Vernon, City of Burlington, City of Sedro-Woolley, Pierce County, Thurston County, Clark County, City of Kent, Clallam County, Spokane County, Whatcom County, Franklin County, Kitsap County, Island County, City of Olympia, Walla Walla County, Kittitas County, Jefferson County, Whitman County, Chelan County, San Juan County, City of Anacortes, City of Lakewood, City of Vancouver, Lincoln County, City*

Judge Polster
March 29, 2022
Page 6

*of Bainbridge Island, City of Spokane, and City of Kirkland*

Christopher M. Huck
huck@goldfarb-huck.com
GOLDFARB & HUCK
ROTH RIOJAS, PLLC
925 Fourth Avenue, Suite 3950
Seattle, WA 98104

*Attorney for Snohomish County and City of Everett*

Ben Harrington
benh@hbsslaw.com
HAGENS BERMAN
SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710

*Attorney for City of Seattle*

Hunter Shkolnik
hunter@napolilaw.com
NAPOLI SHKOLNIK
NS PR Law Services
302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907

Shayna Sacks
ssacks@napolilaw.com
NAPOLI SHKOLNIK
360 Lexington Ave., 11th Floor
New York, NY 10017

*Attorneys for Lewis County*

cc:     Special Master David Cohen