UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) | JUDGE POLSTER |

### ORDER ESTABLISHING APPLICATION PROTOCOLS FOR REIMBURSEMENT OF COMMON BENEFIT ATTORNEYS' FEES UNDER THE JANSSEN AND DISTRIBUTORS SETTLEMENT AGREEMENTS

Pursuant to Section II of the Order to Establish Qualified Settlement Fund, Appoint Panel of Common Benefit and Contingency Fee Fund Arbiters, Approve Fee Fund Allocation and Distribution Process, and Approve Common Benefit Cost Payment and Assessment (hereinafter, "*Fee Panel Order*") (Doc. 3828), the Fee Panel has developed protocols for submission and review of common benefit time and for the application for and awarding of attorneys' fees from the Settling Distributors and Janssen Common Benefit Fund (hereinafter, "Fee Fund")[1]. (Doc. 3828). *See* Janssen and Distributors Settlement Agreements (hereinafter, "Settlement Agreements") at Exhibit R at II.A.3 (stating the Fee Panel "shall design the process and procedures for the allocation of fees pursuant to this Fee Agreement and the MDL Court's Order."). The Court **approves** these protocols, which are set out below.

Any reference below to "prior common benefit orders" refers collectively to the Order Regarding Plaintiff Attorneys' Fees and Expenses (hereinafter, "*Fee and Expense Order*") (Doc. 358); the *Fee Panel Or*der; the Order Regarding Fee Panel, Fund Administrator, and Assistants (hereinafter, "*Fee Panel Assistants Order*") (Doc. 4030); and Order Appointing Fee Committee and

---

[1] The process and procedures for the reimbursement of expenses from the Settling Distributors and Janssen Litigating Subdivision Cost Fund shall be governed by a separate order to be entered by this Court.

1

Addressing Related Matters (hereinafter, "*Fee Committee Order*") (Doc. 4286)[2].

## I. Eligibility

Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions or Tribal Nations, as defined in Exhibit R to the Settlement Agreements, may be eligible for an award of attorneys' fees from the Fee Fund, if those Attorneys: (1) performed work for the common benefit of all subdivisions or Tribal Nations pursuant to the guidelines set forth in the *Fee and Expense Order*, as amended by the *Fee Committee Order*[3]; and (2) satisfy the eligibility criteria set forth in Exhibit R, Section II.G. (See Exhibit R, Section II.C.2).

Participating Counsel and Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions or Tribal Nations who wish to apply for attorneys' fees from the Fee Fund (hereinafter, "Fee Applicants"[4]) shall review the prior common benefit orders and Exhibit R to the Settlement Agreements to ensure eligibility for compensation prior to submitting a Fee Application.

## II. Submission of Fee Applications and Time Reports

By **June 15, 2022**, Fee Applicants shall submit to the Fee Panel a completed Fee Application, which may be accessed via the following website: http://opioidfeepaneldocuments.com.  (Note – this website may not be "live" until April 5, 2022.)  Late Fee Applications will not be permitted without

---

[2] The Settlement Agreements refer to docket no. 636, which was a later version of the *Fee and Expense Order,* but which was vacated on June 9, 2018: "Order [non-document] vacating 636 Case Management Order No. 5 based on document# 358." Accordingly, the Court understands the Settlement Agreements to refer to and incorporate docket no. 358.

[3] The *Fee and Expense Order* originally limited common benefit eligibility to MDL "Participating Counsel," which was defined to include "(i) [MDL] Co-Lead Counsel, (ii) [MDL] Co-Liaison Counsel, (iii) the [MDL] PEC, [and] (iv) any other counsel authorized in writing (via email or letter) by Co-Lead Counsel to perform work that may be considered of value to the MDL." Order at 1.  Attorneys pursuing Opioid litigation outside of the MDL were not included.  Eligibility for Common Benefit Fees has now been expanded to comply with Exhibit R, as set forth in the *Fee Committee Order*. Accordingly, the Court recognizes some Fee Applicants may *seek* reimbursement of common benefit fees for litigation pursued outside of the MDL; and these Fee Applicants may not have complied with certain provisions of the *Fee and Expense Order*. Such non-compliance by those Fee Applicants will not alone be a valid reason for rejection of non-MDL work as eligible for common benefit reimbursement.  This Order is intended to provide a window of opportunity for such applicants to comply.

[4] The term "Fee Applicants" shall include any employee or member of a firm or group of firms on behalf of which the firm submitting the Fee Application is seeking a common benefit attorney fee award.

2

prior leave of the Fee Panel and only for good cause shown.

To be eligible for an award of attorneys' fees from the Fee Fund, Fee Applicants must also submit a completed Time Report to the MDL Billing Manager and Auditor (hereinafter, "Auditor") (to the extent not previously submitted), a copy of which is available on the website: http://opioidfeepaneldocuments.com.  Fee Applicants who only litigated outside of the MDL (hereinafter, "Non-MDL Participating Counsel") and have not heretofore submitted to the Auditor any monthly time as otherwise required by the *Fee and Expense Order*, shall submit their common benefit Time Report as soon as possible, and no later than **June 15, 2022**.  Fee Applicants who are also MDL Participating Counsel and who have been required to submit monthly common benefit time to the Auditor per the *Fee and Expense Order* are permitted to submit any past due time for work performed through June 2021. These submissions must occur no later than **May 2, 2022**. This grace period is intended to provide MDL Participating Counsel the same opportunity to submit time for the Audit Process set forth in Section III below.  Fee Applicants who are also MDL Participating Counsel and have performed work outside of the MDL for which the Fee Applicant wishes to seek common benefit attorneys' fees shall submit such time, to the extent not previously submitted to the Auditor, on the Time Report posted on the website: http://opioidfeepaneldocuments.com as soon as possible, and no later than **June 15, 2022**.  It should be noted that time for work performed after June 2021 related to the implementation of the Settlement Agreements (as set forth further in the Fee Application) may be submitted for common benefit consideration.

To assist Fee Applicants in preparing their Time Reports, the Auditor, at the direction of the Fee Panel, has prepared a Guide to Common Benefit Time Billing Under the Distributors and Janssen Settlement Agreements (hereinafter, "Billing Guide"), which includes detailed instructions, examples, and illustrations for completing the Time Report.  The Billing Guide is available for all Fee Applicants at the website: http://opioidfeepaneldocuments.com.  Fee Applicants shall refer to the

3

Billing Guide when preparing their time submissions and while preparing their responses pursuant to the Audit Process set forth in Section III below.  Late submission of Time Reports will not be permitted without prior leave of the Fee Panel and only for good cause shown.

Submission of Time Reports must conform to the requirements set forth in the Billing Guide and the *Fee and Expense Order*, as amended by the *Fee Committee Order*. The completed Time Report shall be submitted electronically to the Auditor via email or ShareFile to OpioidTimeReport@amylcollinspc.com.

**III.   Audit Process**

The *Fee and Expense Order*, incorporated into Exhibit R of the Settlement Agreements, directs the MDL Co-Leads to perform certain functions related to submission of common benefit time and expenses.  The PEC previously retained Amy Collins to serve as Auditor for common benefit time and expenses submitted for work performed in the MDL. The Auditor has been contemporaneously reviewing all MDL submitted common benefit time and expenses for compliance with the *Fee and Expense Order* and identifying those entries which are not compliant. In 2019, the Auditor provided to forty-seven (47) of the MDL firms who had submitted common benefit time and/or expenses through 2018 a detailed spreadsheet of those time and expense entries that were not in compliance with the *Fee and Expense Order*, and the Auditor's reasoning for the non- compliance (hereinafter, "the 2018 audit"), which resulted in a voluntary reduction of approximately twelve thousand (12,000) hours of time and more than three hundred twenty-five thousand dollars ($325,000.00) in expenses. Additionally, the Auditor observed an improvement in many of the billing practices of those firms who participated in that audit.

Since the 2018 audit, several hundred thousand additional hours in common benefit time and several million dollars in additional common benefit expenses have been submitted by MDL firms and reviewed by the Auditor. Moreover, additional firms have since joined the litigation who were

not participants in the 2018 audit and did not receive the benefit of detailed feedback regarding their billing practices.

To ensure that the time received since the 2018 audit is in compliance with all applicable common benefit orders, the Fee Panel has directed the Auditor to conduct another audit, to allow all Fee Applicants "the opportunity to provide responses to notices of non-compliance, in order to demonstrate compliance" (*Fee and Expense Order* at 3). Thus, the Fee Panel orders the audit process envisioned in the *Fee and Expense Order* will be performed by the Auditor for all Fee Applicants, rather than by the Fee Committee.[5]

For common benefit time submitted by Fee Applicants by June 15, 2022 for work performed from January 1, 2019 through June 30, 2021[6], the Auditor will provide the Fee Applicant with a spreadsheet of non-compliant time entries with reasons for non-compliance indicated for each entry (hereinafter, "time audit spreadsheet"). The Auditor will undertake best efforts to provide this information no later than August 15, 2022. Fee Applicants who submitted time for work performed in 2018 but who did not participate in the 2018 audit will be provided their non-compliant 2018 time entries as well.

The Fee Panel directs the Auditor to identify and include in the time audit spreadsheet, for each Fee Applicant, any time entry that the Auditor concludes falls into one or more of the following categories:

> A. Any time entry in which the hours of service were not properly submitted or coded in accordance with prior common benefit orders, including this Order, and any requirements of the Fee Panel.
>
> B. Any time entry that does not meet the definition of common benefit work or that does not benefit the Participating Litigating Subdivisions or Tribal Nations.

---

[5] To the extent the *Fee Committee Order* stated it would be the Fee Committee, and not the Auditor, who would undertake the audit process, that statement is amended by the instant Order.

[6] The Fee Panel is aware of approximately thirty-eight thousand (38,000) hours of time submitted to date for work performed prior to the December 12, 2017 formation of the MDL (hereinafter, "Pre-MDL work"). The Fee Panel will consider pre-MDL work in determining common benefit attorneys' fees, although such work will not be included in the audit process.

C. Any time entry that was incurred in connection with the prosecution of an individual case or group of individual cases asserting claims in this litigation, unless: (1) the case or cases were designated by the Court as bellwether or common benefit cases and Counsel were authorized by Co-Lead Counsel to perform such work primarily for the common benefit of the Participating Litigating Subdivisions or Tribal Nations; or (2) the work performed in connection with the case or group of cases was used to advance the litigation for the benefit of the Participating Litigating Subdivisions or Tribal Nations. Case-specific work will be analyzed to determine the extent to which it is deemed to have benefited the Participating Litigating Subdivisions or Tribal Nations. If case-specific work added nothing to the common benefit, it will not be considered compensable.

D. Any time entry that does not meet the requirements of prior common benefit orders, including this Order, and any requirements of the Fee Panel.

E. Any time entry that is not described in sufficient detail to determine the nature and purpose of the service involved. Examples: Reviewing emails, general review of documents without explanation, reviewing court records, phone call with no explanation, review correspondence, internal administration.

F. Excessive and/or unnecessary time entries expended to "review" pleadings, emails, correspondence and similar items.

G. Any submission of time in which the amount of "review" time is excessive individually or as a whole when judged in reference to the role of the timekeeper or which did not substantially benefit the Participating Litigating Subdivisions or Tribal Nations.

H. Any submission of time that is excessive on its face when considered as a whole in light of the role(s) that the timekeeper(s) had in this litigation, or which did not substantially benefit the Participating Litigating Subdivisions or Tribal Nations.

I. Excessive and/or unnecessary items of time for "monitoring" or review of Electronic Court Filings ("ECF").

J. Excessive and/or unnecessary items of time for "monitoring" the MDL proceedings or related state court litigation by attending hearings, status conferences, or meetings.

K. Any time not reasonably necessary and not part of a bona fide effort to advance the interests of the Participating Litigating Subdivisions or Tribal Nations.

L. Any time in which more than one timekeeper within one firm reviewed a single document, email, deposition or pleading without an independent reason clearly explained by the firm as to why review by more than one timekeeper was necessary and beneficial to the Participating Litigating Subdivisions or Tribal Nations generally.

M. Any time within one firm for the purpose of monitoring or reviewing the work of a timekeeper for that firm's internal purposes.

N. Any time related to preparing, amending, or correcting time and expense reports for submission, including preparing audit responses, pursuant to any prior common benefit order or this Order.

O. Any time arising out of representation of any subdivision that is not a Participating Litigating Subdivision as defined in Exhibit R to the Settlement Agreements, including, but not limited to: private hospitals, third-party payors, NAS claimants, personal injury/wrongful death claimants, or any entity other than a Participating Litigating Subdivision unless the expense was incurred for the common benefit of the Participating Litigating Subdivisions or Tribal Nations generally.

P. Any time related to representation of Participating Litigating Subdivisions in matters other than those claims against the Settling Distributors and Janssen, as defined in the Settlement Agreements; however, submitted time may include an appropriate share of time worked to pursue claims against multiple defendants including the Settling Distributors and Janssen.

The time audit spreadsheet will be considered confidential but may be considered by the Fee Panel during the deliberative process. Fee Applicants are prohibited from engaging in substantive discussions with the Auditor regarding time entries determined by the Auditor to be non-compliant. If Fee Applicants disagree with the Auditor's determination regarding time entries appearing in their time audit spreadsheet, they may so indicate in their time audit response and may, at their discretion, provide additional documentation in support of their position along with their time audit response.

Fee Applicants shall submit their time audit responses to the Auditor within **45 days** of receipt of their time audit spreadsheet, but no later than **October 3, 2022**. Under no circumstances may Fee Applicants add time when responding to the time audit without prior leave of the Fee Panel and only for good cause shown. Late time audit responses will not be permitted without prior leave of the Fee Panel and only for good cause shown.

The Auditor will review the time audit responses of each Fee Applicant and prepare a report summarizing each Fee Applicant's time submission for review by the Fee Panel. The Auditor's final determination of non-compliance is not binding, nor does the Auditor have the authority to disallow, either in whole or in part, any time submission of any Fee Applicant. To be clear, the Fee Panel

review of all time submissions will be *de novo*.

### IV. Fee Panel Review and Recommendation

To repeat, the Fee Panel shall conduct a *de novo* review of the Auditor's Time Report. The Fee Panel shall be provided, upon request of the Fee Panel, any and all information relied upon by the Auditor.

The Fee Panel may, at their discretion, invite input from attorneys who held leadership positions within the federal and/or state litigation, including the Fee Committee, members of the MDL Plaintiffs' Executive Committee, members of state committees or co-chairs, defendant team leaders, trial team leaders, and any other attorneys (hereinafter, "Leadership Attorneys")[7] who are able to provide insight into the quantity and quality of the work claimed in the Fee Applications, including the common benefit time submissions. All information exchanged between the Fee Panel and Leadership Attorneys shall be treated by all participants as confidential.

The Fee Panel may also conduct interviews with Fee Applicants at the discretion of the Fee Panel, to ask questions regarding information contained in the Fee Applications and the Auditor's Time Report. Each interview shall be conducted in the presence of a court reporter. The transcript will be solely for the use of the Fee Panel, unless otherwise directed by the Court.

All information exchanged between the Fee Panel and others (including Fee Applicants, Leadership Attorneys, the Fee Committee, or the Auditor) will be treated by all participants as confidential and will not be disclosed to any person other than members of the Fee Panel; and no member of the Fee Panel shall share with any lawyer information obtained from another Fee Application, any interview, or any related submission. None of the Fee Panel meetings, interviews, fee applications, or related submissions or materials, including the Auditor's reports, are subject to discovery.

---

[7] The term "Leadership Attorneys" as used herein also includes paralegals and assistants who worked with or assisted those attorneys.

After deliberation, the Fee Panel shall issue their preliminary fee allocation recommendation in writing to all Fee Applicants. The preliminary fee allocation recommendation shall contain a list of all Fee Applicants and their corresponding fee allocations. (Thus, a Fee Applicant would see not only its own preliminary fee allocation recommendation, but also those of every other Fee Applicant.)

In making their preliminary fee allocation recommendation, the Fee Panel shall consider all relevant factors contained in the prior common benefit orders, including but not limited to the *Johnson* factors, the factors listed in the *Fee Panel Order* (pp. 11-13), and any common detriment contributed by the Fee Applicant. The Fee Panel shall also consider the relative common benefit contribution of each Fee Applicant to the outcome of the litigation, including whether the Fee Applicant:

    A.    Made no known material common benefit contribution to the litigation;

    B.    Made isolated material common benefit contributions, but mostly "monitored" the material common benefit efforts of other firms and performed some document review;

    C.    Made periodic material common benefit contributions and/or mostly performed document review;

    D.    Made consistent material common benefit contributions from inception of the litigation;

    E.    Was a leader taking primary responsibility to accomplish the overarching common goals of all Plaintiffs, was heavily relied upon by other Plaintiff Leaders, and provided consistent material common benefit contributions, full-time at times, from inception of the litigation;

    F.    Was a senior leader taking primary responsibility to accomplish the overarching common goals of all Plaintiffs, organized others and/or led a team of common benefit attorneys, was heavily relied upon by the other Plaintiff Leaders, and provided consistent material common benefit contributions almost full-time for a substantial time during the litigation; or

    G.    Was a senior leader providing maximum senior leadership effort in terms of intensity, consistency, and duration relative to all other common benefit counsel, taking primary responsibility for the entire litigation to accomplish the overarching common goals of all Plaintiffs, engaging in overall strategic planning since the inception of the litigation, organizing others and/or leading one or more teams of common benefit attorneys, providing consistent material common benefit contributions, virtually full-

9

time for much of the litigation, and will likely continue to assume a key leadership role for several more years.

Fee Applicants shall have 30 days to submit to the Fee Panel confidential written objections to the Fee Panel's preliminary fee allocation recommendation. A Fee Applicant may only object to its own fee award. Fee Applicants filing a written objection shall include:

A. A statement that the fee allocation recommendation is disputed;

B. The basis and reasoning for the dispute, including a discussion of any applicable case law;

C. A proposed resolution; and

D. A request to appear before the Fee Panel either via Zoom or in person, including the name(s) of the individuals who will be appearing on behalf of the Fee Applicant. If the objecting Fee Applicant requests to have more than two people from its firm in attendance at the hearing, the Fee Applicant must explain why each person's presence is necessary.

Upon receipt of the Fee Applicant's notice of objection, the Fee Panel shall provide written notice of receipt of the objection, the names of those individuals whom the Fee Panel has authorized to appear at the hearing on behalf of the Fee Applicant, and the date, time, and location (in-person or via Zoom) for the hearing.[8] The hearings shall be conducted in the presence of a court reporter. The transcript shall be for the use of only the Fee Panel and the Court. If the Fee Panel concludes the objection is frivolous or in bad faith, it may reduce the Fee Applicant's award.

Upon conclusion of all Fee Applicant objector hearings, the Fee Panel shall deliberate and file with the Court their final common benefit attorney fee allocation recommendations and shall provide notice to all Fee Applicants.

---

[8] Pursuant to the *Fee Panel Order* (Doc. 4030), the Fee Panel may include assistants or consultants at hearings, meetings, or other communications, to the extent their presence is necessary to assist the Fee Panel in fulfilling its responsibilities under the Settlement Agreements and any orders entered by this Court.

## V. Appeal of Fee Panel Allocation Recommendation

The Court will set forth, at the appropriate time, the process by which Fee Applicants may appeal to the Court the final fee allocation recommendation of the Fee Panel, including the deadline for filing notice with the Court. Any appeal of the Fee Panel's final fee allocation recommendation shall be reviewed by the Court under an abuse of discretion standard.

The Court has plenary authority regarding the awarding of common benefit attorneys' fees and will make the final determination of an approved distribution of fees from the Fee Fund.

## VI. Final Award and Distribution

Upon resolution of all appeals to the Court, or in the event no appeals are filed, the Court will enter a final non-appealable award of attorneys' fees from the Fee Fund and shall direct the Fee Panel to allocate those amounts to each Fee Applicant by year, using the criteria set forth in Exhibit R of the Settlement Agreements.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated: April 1, 2022**