# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 17-md-2804 |
| This document relates to: *The Government of Puerto Rico v. Teva Pharmaceutical Industries, Ltd. et al.,* Case No. 1:22-op-45007 | Judge Dan Aaron Polster |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR COSTS</u>

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND ................................................................................................... 3

    A.   Plaintiff's Claims Repeatedly Reference And Incorporate Federal Law .............. 3

    B.   Puerto Rico Law Merely Incorporates The Federal CSA. .................................... 5

    C.   Actavis Laboratories FL Removed This Action Based On Federal
        Question Jurisdiction And, Contrary To What Plaintiff Alleges, Has
        Vigorously Defended Its Basis For Removal. ....................................................... 5

    D.   Defendants Ultimately Consented To Remand To Avoid A Protracted
        Fight With Plaintiff In The Federal MDL And Without Waiver Of Their
        Position. ................................................................................................................ 7

    E.   Plaintiff Waited Twenty Days After Remand To File Its Motion For Costs. ......... 7

III. ARGUMENT ........................................................................................................ 7

    A.   The Court Should Deny Plaintiff's Motion For Costs Because It Is
        Untimely. .............................................................................................................. 7

    B.   Plaintiff's Motion For Costs Should Also Be Denied Because An
        Objectively Reasonable Basis Existed For Removal. ........................................... 8

        1.   The Complaint "Necessarily Raises" A Federal Issue. ................ 10

        2.   The Parties "Actually Dispute" the Federal Issues. ..................... 14

        3.   The Federal Issues Are "Substantial." ......................................... 15

        4.   Federal Jurisdiction Will Not Disrupt The Congressionally
            Approved Balance Of Federal Judicial Responsibilities. ............ 17

        5.   The Circumstances Of This Removal Are Completely
            Unlike Those Courts Have Found To Have Been
            Objectively Unreasonable. ........................................................... 18

IV.  CONCLUSION .................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*,
 913 F. Supp. 2d 243 (E.D. Va. 2012) .....................................................................17

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.*,
 850 F.3d 714 (5th Cir. 2017) .............................................................................9, 15

*BHCMC, LLC v. Pom of Kansas, LLC*,
 No. 20-2609-DDC-ADM, 2022 WL 392291 (D. Kan. Feb. 9, 2022) .......................8

*Broder v. Cablevision Sys. Corp.*,
 418 F.3d 187 (2d Cir. 2005).............................................................................9, 16

*Cardinal Health, Inc. v. Holder*,
 846 F. Supp. 2d 203 (D.D.C. 2012) .......................................................................17

*Caterpillar, Inc. v. Williams*,
 482 U.S. 386 (1987).........................................................................................10, 11

*City of Chicago v. Int'l College of Surgeons*,
 522 U.S. 156 (1997)...............................................................................................12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
 545 U.S. 546 (2005)..................................................................................................9

*Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
 375 F. Supp. 2d 170 (E.D.N.Y. 2005) .....................................................................6

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
 545 U.S. 308 (2005)...............................................2, 6, 9, 14, 15, 16, 17, 18, 19

*Gunn v. Minton*,
 568 U.S. 251 (2013)...........................................................................................9, 14

*New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*,
 824 F.3d 308 (2d Cir. 2016).............................................................................9, 10

*Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*,
 512 F. App'x 485 (6th Cir. 2013) ...........................................................................18

*Keybank Nat'l Ass'n v. Lake Villa Oxford Assocs., LLC*,
 No. 12-13611, 2012 WL 13013623 (E.D. Mich. Aug. 24, 2012)............................8

*Martin v. Franklin Cap. Corp.*,
    546 U.S. 132 (2005).............................................................................................1, 7, 8

*Masters Pharm., Inc. v. DEA*,
    861 F.3d 206 (D.C. Cir. 2017)..................................................................................4, 10

*Montana ex rel. McGrath v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
    Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. Lexis 10355
    (E.D.N.Y. Feb. 12, 2008)................................................................................................6

*West Virginia ex rel. McGraw v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
    476 F. Supp. 2d 230 (E.D.N.Y. 2007) ...........................................................................6

*Merrell Dow Pharms. v. Thompson*,
    478 U.S. 804 (1986)...............................................................................................10, 16

*Michigan v. Enbridge Energy, Ltd. P'ship*,
    No. 1:20-CV-1142, 2021 WL 5355511 (W.D. Mich. Nov. 16, 2021) .............................6

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007) .................................................................................10, 11

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
    770 F.3d 1010 (2d Cir. 2014)...........................................................................9, 10, 16

*In re: Nat'l Prescription Opiate Litig.*,
    No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161 ....................................16

*In re: National Prescription Opiate Litig.*,
    No. 1:17-MD-2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019) .............................13

*In re: National Prescription Opiate Litig.*,
    No. 1:17-MD-2804 Dkt. 899 (N.D. Ohio Aug. 23, 2018) ....................................12, 18

*New Mexico v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*,
    Nos. 04-MD-1596,07-CV-01749, 2009 U.S. Dist. Lexis 20768 (E.D.N.Y.
    Mar. 11, 2009)................................................................................................................6

*New Mexico v. Purdue Pharma L.P.*,
    No. 1:18-cv-00386, 2018 WL 2943246 (D.N.M. June 12, 2018)...............................12

*Oklahoma, ex rel., Hunter v. Purdue Pharma L.P.*,
    No. 5:18-cv-00574-M (W.D. Okla. Aug. 3, 2018), ECF No. 53 .............................12

*PDK Labs. Inc. v. U.S. Drug Enf't Admin.*,
    362 F.3d 786 (D.C. Cir. 2004) .................................................................................17

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    457 F. Supp. 2d 77 (D. Mass. 2006) ...............................................................6

*Pirie v. Broadview Multi-Care Ctr.*,
    No. 1:08 CV 1427, 2008 WL 2745977 (N.D. Ohio July 11, 2008)...................2, 19

*Ranck v. Mt. Hood Cable Regulatory Comm'n*,
    No. 3:16-cv-02409-AA, 2017 WL 1752954 (D. Or. May 2, 2017)...................9, 16

*Safe Streets Alliance v. Hickenlooper*,
    859 F.3d 865 (10th Cir. 2017) .....................................................................15

*Stallworth v. Greater Cleveland Reg'l Transit Auth.*,
    105 F.3d 252 (6th Cir. 1997) ....................................................................1, 7

*State of Rhode Island v. Purdue Pharma L.P. et al.*,
    C.A. No. PC-2018-455..............................................................................14

*State of West Virginia, et al. v. McKesson Corporation*,
    No. 2:17-cv-03555, Dkt. 21 (S.D.W.Va. Feb. 15, 2018) .............................13

*Toledo Police Patrolmen's Ass'n v. City of Toledo*,
    167 F. Supp. 2d 975 (N.D. Ohio 2001)......................................................8

*V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*,
    27 F.3d 911 (3d Cir. 1994)........................................................................10

*Warthman v. Genoa Twp. Bd. of Trustees*,
    549 F.3d 1055 (6th Cir. 2008) ...................................................................18

*Wullschleger v. Royal Canin U.S.A., Inc.*,
    953 F.3d 519 (8th Cir. 2020) ..................................................................9, 16

**Statutes**

24 L.P.R.A. §§ 2101-608.............................................................................5, 11

24 L.P.R.A. § 2303 .........................................................................................5

21 U.S.C. § 823 ..............................................................................................4

21 U.S.C. § 882(a) ........................................................................................17

28 U.S.C. § 1331............................................................................................5, 9, 10

28 U.S.C. § 1367(a) .....................................................................................f12

28 U.S.C. § 1441(a) .......................................................................................9

28 U.S.C. § 1447(c) ...................................................................................................................18

Controlled Substances Act ................................................2, 3, 4, 5, 10, 11, 12, 13, 14, 15, 16, 17, 19

Puerto Rico's Controlled Substance Act...................................................................................5, 11

**Other Authorities**

21 C.F.R. § 1301.74 ...............................................................................................................4, 10

Federal Rule of Civil Procedure 54(d)(2)(B)...............................................................................7

H.R. Rep. No. 91-1444 (1970)...................................................................................................15

## I.      **INTRODUCTION**

Defendant Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc. Florida ("Actavis Laboratories FL") removed this action on federal question grounds, because the claims brought by the Government of Puerto Rico ("Plaintiff") expressly rest on alleged violations of federal law. Following transfer to this multi-district litigation ("MDL"), Defendants ultimately consented to remand to avoid a protracted battle with Plaintiff over removal issues.  Nonetheless, Plaintiff now claims that it is entitled to costs because Defendants had no basis for removal in the first place. Plaintiff's Motion[1] should be denied for two independent reasons.

*First*, Plaintiff's Motion is untimely.  The Sixth Circuit has made clear that motions seeking costs after remand ***must be made within fourteen days after remand***.  *Stallworth v. Greater Cleveland Reg'l Transit Auth*., 105 F.3d 252, 257 (6th Cir. 1997) (citing Fed. R. Civ. P. 54).  Here, the Court issued its remand order on March 9, 2022.  Yet Plaintiff did not file its motion seeking costs until March 29, 2022—***twenty days after remand***.  Because Plaintiff failed to file its Motion seeking costs within the fourteen-day period required under federal law, it is untimely and it should be denied on this basis alone.

*Second*, even if it were timely, Plaintiff's Motion fails on its merits.  Plaintiff does not and cannot carry its burden of showing that the "removing party lacked an objectively unreasonable basis"—the test to recover fees and costs.  *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 136, 141 (2005).  Plaintiff does not even mention the "objectively unreasonable" standard at all in its Motion.  Nor does Plaintiff cite any controlling case law that forecloses removal here.  There is none.

---

[1]      Case No. 17-md-2804, ECF No. 4340-12 (the "Motion").

Rather, federal question jurisdiction is proper—and an objectively reasonable basis existed for removal—because all four factors of the Supreme Court's *Grable*[2] test were satisfied:

- Plaintiff's Complaint raises federal issues because its claims against Defendants are based on alleged failures to report and halt "suspicious orders" for prescription opioids—a duty that Plaintiff acknowledges arises out of the federal Controlled Substance Act ("CSA"). (Compl. at ¶ 58);

- The parties dispute the federal issues because Defendants contest not just whether they violated the CSA, but also the scope and applicability of the duties alleged under the CSA with respect to manufacturers.

- The federal issues are substantial given the federal interest in uniform enforcement of the CSA's nationwide regulatory scheme and the federal government's asserted interest in the subject matter of this litigation.

- Federal jurisdiction will not upset any federal-state balance.

As a result, a colorable basis existed for removal. *See Pirie v. Broadview Multi-Care Ctr.*, No. 1:08 CV 1427, 2008 WL 2745977, at *3 (N.D. Ohio July 11, 2008) (denying motion for costs because "[d]efendants' reliance on *Grable* [] in support of removal . . . was not unreasonable or inappropriate given the flexible test described by the Supreme Court in *Grable* . . .")

Plaintiff's Motion does not even discuss, much less dispute, the four *Grable* factors discussed above. Instead, Plaintiff argues that there was no colorable basis for removal primarily because **district courts elsewhere**, evaluating **claims based on different state laws**, found federal jurisdictional lacking in **other actions** concerning opioids, including in a number of actions brought by Attorneys General.[3] But, of course, **none** of these decisions are binding on this Court.

---

[2]      *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005).

[3]      Mot. at 6 (citing *Oklahoma, ex rel., Hunter v. Purdue Pharma L.P.*, No. 5:18-cv-00574-M (W.D. Okla. Aug. 3, 2018), ECF No. 53 ("*Oklahoma*"); *New Mexico, ex rel. Balderas, Attorney General, v. Purdue Pharma L.P.* ("*New Mexico*"), 323 F.Supp.3d 1242, (D.N.M. June 12, 2018); *Delaware, ex rel. Denn, Attorney General of Delaware v. Purdue Pharma L.P., et al.* ("*Delaware*"), 1:18–383–RGA, 2018 WL 1942363 (D. Del. Apr. 25, 2018); and Memorandum Opinion and Order, *State of West Virginia, et al. v. McKesson Corporation* ("*West Virginia*"), No. 2:17-cv-03555, Dkt. 21 at 3 (S.D.W.Va. Feb. 15, 2018).)

Moreover, *all* of the Plaintiff's cited cases are inapposite.  Those decisions involved different allegations and different state laws.  And they did not address removal under the CSA, did not address claims against manufacturers, or involved alternative theories of recovery under state laws with separate alleged requirements independent from the federal CSA.  None of those circumstances are present here.  An objectively reasonable basis existed for removal in this case.

In short, Defendants consented to remand not because this Court lacks federal question jurisdiction or because they did not have an objectively reasonable basis for removal, but because Defendants wanted to avoid the very type of protracted sideshow and waste of judicial resources created by Plaintiff's misguided Motion.  That Motion should be denied as both substantively and procedurally flawed.

## II.    **BACKGROUND**

### A.    **Plaintiff's Claims Repeatedly Reference And Incorporate Federal Law**.

Plaintiff filed this lawsuit in Puerto Rico superior court on August 27, 2021.  (ECF. No. 1-1, Compl. ¶¶ 1–2.)[4]  The Complaint asserts four counts against Defendants: Public Nuisance (Count I); Negligence/Fault (Count II); Fair Competition Act (Count III); and Unjust Enrichment (Count IV).  (*Id.* ¶¶ 201–62.)  The Complaint seeks punitive and actual damages.  (*Id.* ¶¶ 239–41.)

Plaintiff's central theory of liability is that Manufacturer Defendants violated two purported duties aimed at preventing "diversion" of controlled substances:  (1) a duty to monitor, detect, and report "suspicious orders" for controlled substances; and (2) a duty to halt shipments of suspicious orders.  (*Id* at ¶ 58 (alleging Defendants breached "a duty to monitor, detect, report, investigate, and refuse to ship suspicious orders.").)  As Plaintiff expressly acknowledges, the two alleged duties on which Plaintiff's claims rest ***arise out of the federal CSA and its implementing***

---

[4]    All cites to ECF Nos. are to this action's MDL member case number (1:22-op-45007-DAP) unless otherwise stated.

*regulations*.  (*Id* at ¶¶ 55–58 (alleging Defendants "violat[ed] . . . the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*," by allegedly breaching "a duty to monitor, detect, report, investigate, and refuse to ship suspicious orders" that Plaintiff contends is "impose[d]" by the federal CSA and its implementing regulations.).)

The alleged reporting duty—*i.e.*, to implement effective controls to detect and report suspicious orders—is set forth in the CSA's implementing regulations.  *See* 21 C.F.R. § 1301.74(b). The alleged shipment-halting duty purportedly arises out of the Drug Enforcement Administration's ("DEA") interpretation of the CSA, pursuant to which certain actors must "decline to ship" suspicious orders for controlled substances.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212–13 (D.C. Cir. 2017).  Plaintiff thus openly relies on federal law to establish the alleged duties to report and halt shipments of suspicious orders for controlled substances.  (*See, e.g.*, Compl. ¶ 55 ("By violating . . . the federal Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.*, Defendants placed themselves at an advantage over their competitors because they failed to maintain effective controls against diversion and dispensed suspicious orders in order to boost their own profits."); *id.* at ¶ 58 ("[T]he CSA, 21 U.S.C. § 801 *et seq.* and its implementing regulations impose a duty on registrants (entities, like Defendants, licensed to manufacture and distribute controlled substances) to monitor, detect, report, investigate, and refuse to ship suspicious orders.  Specifically, the CSA requires registrants of Schedule II substances like opioids to: (a) limit sales within a quota set by the DEA for the overall production of Schedule II substances; (b) register to distribute opioids; (c) maintain effective controls against diversion of the controlled substances that they distribute; and (d) design and operate a system to identify suspicious orders of controlled substances, halt such unlawful sales, and report them to the DEA. *See* 21 U.S.C. § 823; 21 C.F.R. § 1301.74.")

**B.      Puerto Rico Law Merely Incorporates The Federal CSA.**

Although Plaintiff's Motion purports to disavow stating a federal question and asserts its claims are actually based "exclusively" on Puerto Rico law (Mot. at 1-2), the Puerto Rico CSA does not set any suspicious order requirements separate and apart from the federal regulatory scheme; instead, it simply requires compliance with the federal laws. (Compl. ¶ 33 (conceding that "Puerto Rico's Controlled Substance Act . . . incorporates the CSA's obligations.").) Indeed, the Puerto Rico CSA does not mention the words "suspicious" or "suspicious order" even once, and contains no explicit requirement as to the reporting of diversion whatsoever, much less to any Puerto Rico agency. 24 L.P.R.A. §§ 2101-608. Although the Puerto Rico CSA requests "the possibility of compliance with applicable federal and local laws," it leaves the contours of any reporting requirements as to diversion or suspicious orders exclusively to federal law. 24 L.P.R.A. § 2303.

Because Plaintiff alleges that the duties governing reporting and shipping "suspicious" opioid orders arise from the federal CSA and its implementing regulations, alleged violations of federal law form the basis for Plaintiff's claims.

**C.      Actavis Laboratories FL Removed This Action Based On Federal Question Jurisdiction And, Contrary To What Plaintiff Alleges, Has Vigorously Defended Its Basis For Removal.**

Actavis Laboratories FL removed this action to federal court on November 10, 2021. (ECF No. 1, Notice of Removal.) It invoked federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's state law claims necessarily raise substantial and disputed federal questions concerning the scope and applicability of the CSA to manufacturers. (*Id*. at 2-3.)

Before the case was transferred to this MDL, Plaintiff filed a motion to remand in the United States District Court for the District of Puerto Rico on November 24, 2021. (ECF No. 9.) Contrary to Plaintiff's allegation that "Actavis did not make even a perfunctory attempt to defend

its decision to remove" (Mot. at 4), Actavis Laboratories FL vigorously defended removal and filed its opposition to Plaintiff's motion to remand on December 8, 2021.  (ECF No. 12.)

Actavis Laboratories FL explained that there is no carve out to *Grable* federal question removal to cases brought by state or territorial governments.  *Grable*, 545 U.S. at 319; (ECF No. 12, Opp. to Remand at 15.)  To the contrary, courts across the country have applied the Supreme Court's *Grable* test to uphold the removal of Attorney General actions that assert only state law causes of action when they require the resolution of a substantial federal question.  *See, e.g.*, *Michigan v. Enbridge Energy, Ltd. P'ship*, No. 1:20-CV-1142, 2021 WL 5355511, at *5 (W.D. Mich. Nov. 16, 2021) (denying motion to remand despite the fact that State of Michigan brought state law claims in state court because they raised substantial federal question.); *West Virginia ex rel. McGraw v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 476 F. Supp. 2d 230, 233 (E.D.N.Y. 2007) (denying motion to remand despite the fact that "State of West Virginia brought state-law claims in state court" based on finding that they raised substantial federal question); *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 78 (D. Mass. 2006) (denying motion to remand despite the fact that "State of Arizona, through its Attorney General . . . asserts two state law causes of action" based on finding that they raised substantial federal question); *Montana ex rel. McGrath v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596, 07-CV-1933 (JBW), 2008 U.S. Dist. Lexis 10355, at *8–10 (E.D.N.Y. Feb. 12, 2008); *Louisiana ex rel. Foti v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, 375 F. Supp. 2d 170, 172 (E.D.N.Y. 2005); *New Mexico v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.)*, Nos. 04-MD-1596,07-CV-01749, 2009 U.S. Dist. Lexis 20768, at *71 (E.D.N.Y. Mar. 11, 2009) (same).

**D. Defendants Ultimately Consented To Remand To Avoid A Protracted Fight With Plaintiff In The Federal MDL And Without Waiver Of Their Position.**

The case was transferred to this MDL proceeding on February 1, 2022. (ECF Nos. 22-24.) Plaintiff filed a second motion to remand, this time in the MDL, on February 22, 2022. (Case No. 17-md-2804, ECF No. 4340-12.)

In order to avoid a protracted fight before this Court and without waiver of their position that removal was proper, Actavis Laboratories, FL and the other Defendants subsequently consented to remand. Their consent made clear that they "continu[ed] to maintain that there is a basis for federal jurisdiction in this case." (Case No. 17-md-2804, ECF No. 4298.)

**E. Plaintiff Waited Twenty Days After Remand To File Its Motion For Costs.**

This Court entered an order remanding Plaintiff's action back to state court on March 9, 2022. (ECF No. 26.) Plaintiff waited until March 29, 2022—*twenty* days after remand had already been entered—to file its motion seeking costs. (Case No. 17-md-2804, ECF No. 4285.)

**III. ARGUMENT**

A motion for costs after remand is properly denied when it is filed beyond the time allowed for such motions or where the movant fails to show that the removing party lacked an objectively reasonable basis for removal. *Stallworth*, 105 F.3d at 257; *Martin*, 546 U.S. at 141.

Here, Plaintiffs' Motion should be denied for two reasons: (1) it is untimely; and (2) Actavis Laboratories FL had an objectively reasonable basis for removal of this case.

**A. The Court Should Deny Plaintiff's Motion For Costs Because It Is Untimely.**

Plaintiff did not file its motion for costs until *twenty days* after this Court entered its order on remand. (ECF No. 26, Remand Order; Case No. 17-md-2804, ECF No. 4340, Mot. for Costs.) Although the Sixth Circuit allows a motion for costs to be made after the order on remand has been entered, it has made clear that Federal Rule of Civil Procedure 54(d)(2)(B) requires it be made

***fourteen days*** after remand. *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 257 (6th Cir. 1997) ("We agree . . . that the proper timeliness requirement for a motion for attorney fees in connection with remand is found in Fed. R. Civ. P. 54(d)(2)(B), which states that '[u]nless otherwise provided by statute or order of the court, the motion must be filed and served no later than 14 days after entry of judgment."); *Toledo Police Patrolmen's Ass'n v. City of Toledo*, 167 F. Supp. 2d 975, 977 (N.D. Ohio 2001) (applying rule and holding that motion for costs must be made within 14 days after order on order on remand); *Keybank Nat'l Ass'n v. Lake Villa Oxford Assocs., LLC*, No. 12-13611, 2012 WL 13013623, at *3 (E.D. Mich. Aug. 24, 2012) (same); *see also BHCMC, LLC v. Pom of Kansas, LLC*, No. 20-2609-DDC-ADM, 2022 WL 392291, at *3 (D. Kan. Feb. 9, 2022) ("The court thus follows the approach of the Third and Sixth Circuits and treats its May 12, 2021 remand Order as a judgment for the purposes of Rule 54(d)(2)(B) . . . Plaintiffs thus had 14 days from the court's May 12, 2021 remand Order to file their motion for attorney's fees.").

Because Plaintiff failed to file its motion for costs within fourteen days of remand, it is untimely and should be denied for this reason alone. *City of Toledo*, 167 F. Supp. 2d at 977 (denying plaintiff's motion for costs after remand because "plaintiff's motion was filed outside the [14-day] time limit, and is, therefore, untimely."); *BHCMC, LLC*, 2022 WL 392291, at *3 (same).

### B.    Plaintiff's Motion For Costs Should Also Be Denied Because An Objectively Reasonable Basis Existed For Removal.

As explained above, this Court need not determine whether an objectively reasonable basis existed for removal because Plaintiff's motion for costs is untimely and fails for this reason alone. But even if it were timely, the Court should still deny the Motion. Plaintiff's claims are based on necessary, substantial, and highly-disputed questions of federal law that give rise to federal jurisdiction under controlling Supreme Court law. At a minimum, no fees or costs can be awarded

because these federal questions provided an objectively reasonable basis for removal.  *See Martin*, 546 U.S. at 141 (affirming denial of motion for fees and costs because removing party had "objectively reasonable basis for removing this case to federal court").

Federal courts have removal jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction," 28 U.S.C. § 1441(a), and original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.  "A single claim over which federal-question jurisdiction exists is sufficient to allow removal."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005); *see Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 563 (2005).

Even where state law creates the causes of action asserted in a complaint, one or more of those causes of action may raise a federal question sufficient to warrant removal jurisdiction under the Supreme Court's *Grable* and *Gunn* decisions.  *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable*, 545 U.S. at 315.  Given Plaintiff's reliance on duties arising under federal law, all four of the requirements for federal jurisdiction—a federal issue that is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance—are satisfied.[5]  For the reasons stated herein, as well as in the Notice of

---

[5]    Courts have found these factors to be satisfied in cases where state law claims are predicated on violations of federal statutes governing complex, nationwide regulatory schemes for which uniformity is essential.  *See, e.g.*, *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, NA*, 824 F.3d 308, 315-18 (2d Cir. 2016) (state law claims based on alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Broder*, 418 F.3d at 196 (state law claims premised on alleged violations of Communication Act satisfy "*Grable* test for federal-question removal jurisdiction"); *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (state-law claims involving Food & Drug Administration labeling were "premise[d] . . . on violations and interpretations of federal law"); *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.* ("*Louisiana Flood*"), 850 F.3d 714, 722–23 (5th Cir. 2017) (federal question was necessarily raised where claims relied on the

Removal, an objectively reasonable basis existed for removal of this case.

**1.      The Complaint "Necessarily Raises" A Federal Issue.**

Plaintiff's state law claims "necessarily raise" a federal question because their resolution "depends on the validity, construction, or effect of federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007).  Significantly, "an action under 28 U.S.C. § 1331(a) arises . . . *if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles." *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) (emphasis added); *see Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 808-09 (1986) (federal question jurisdiction exists if "vindication of a right under state law *necessarily turn*[*s*] *on some construction of federal law.*") (emphasis added); *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315 (2d Cir. 2016) (federal question jurisdiction exists when state law claims are "affirmatively premised on a violation of federal law.")

In determining whether state law claims turn on construction or application of federal law, the Court must "begin by considering the duty underlying each claim." *NASDAQ*, 770 F.3d at 1020.   A state-law claim "necessarily raises" federal questions where the "singular duty" underlying the claim arises under federal law.  *Id.* at 1021.  Here, Plaintiff's claims necessarily raise federal questions because they are premised on Defendants' alleged violations of legal duties—*i.e.*, the alleged duties to report and halt suspicious orders for controlled substances—that arise out of the CSA and its implementing regulations.   (Compl. ¶¶ 55-58); *see* 21 C.F.R. § 1301.74(b); *Masters Pharm*, 861 F.3d at 212–13.

---

scope of a duty of care contained in the Rivers and Harbors Act and the Clean Water Act); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *5 (D. Or. May 2, 2017).

Despite its protestations to the contrary, Plaintiff's reliance on federal law is evident on the face of the Complaint.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (federal jurisdiction exists when federal question is presented "on the face of the plaintiffs' properly pleaded complaint").  Throughout the Complaint, Plaintiff cites to ***federal*** laws and regulations to establish the alleged duties to report and halt suspicious orders, and repeatedly alleges that Defendants' violations of these purported duties give rise to Plaintiff's causes of action.  (*See, e.g.*, Compl. ¶¶ 55, 58 (discussed *supra*).)  As these and other citations demonstrate, Plaintiff's claims against Defendants rest squarely on its allegations that Defendants breached alleged duties arising out of the CSA and its implementing regulations.

Plaintiff argues that its claims are not necessarily based in federal law because the Complaint brings claims "exclusively" under Puerto Rico law, including the Puerto Rico CSA. (Mot. at 1-2.)  That is not correct.  (Compl. ¶¶ 55, 58.)  But even if it were, the flaw in that argument is clear:  Puerto Rico law, including the Puerto Rico CSA, ***does not*** set forth any requirements as to suspicious orders that are separate and apart from those set forth in the federal regulatory scheme.  Indeed, the Puerto Rico CSA does not mention the word "suspicious" or "suspicious order" even once or contain any explicit requirement as to the reporting of diversion whatsoever. 24 L.P.R.A. §§ 2101-608.  Thus, ***all*** of Plaintiff's claims are based on alleged violations of federal requirements to report "suspicious" orders of prescription opioids.  Indeed, Plaintiff's invocation of federal law undergirds its entire theory of liability against Defendants.  Under controlling law, "if the vindication of a right under state law depends on the validity, construction, or effect of federal law," it necessarily raises an embedded federal question.  *Mikulski*, 501 F.3d at 565.

Although a plaintiff "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar*, 482 U.S. at 392 (emphasis added), Plaintiff here does not rely exclusively on state

law; instead, it relies **primarily on federal** law and would have to establish that Defendants breached **federal requirements** to prevail on its claims.  Plaintiff's claim for negligence (Count II) illustrates the point. Plaintiff alleges that Defendants violated duties to "report suspicious orders of opioids" and "to not fill suspicious orders."  (Compl. ¶ 227.)  But as noted, the alleged duty to halt or refuse to fill shipments of suspicious orders arises (if at all) under the federal CSA, not under state law.  Plaintiff even cites federal law as the basis for this alleged duty.  (*Id.* (citing 21 U.S.C. § 801 and 21 C.F.R. § 1301.74 as basis for negligence claim).)  To establish negligence as the Complaint has alleged, Plaintiff would have to show that Defendants violated federal law.

For this reason, Plaintiff's reliance on *New Mexico v. Purdue Pharma L.P.*, No. 1:18-cv-00386, 2018 WL 2943246, at *1 (D.N.M. June 12, 2018), is misplaced.  (Mot. at 5.)  There the plaintiff alleged violations of state regulations requiring the reporting of prescription drug diversions to state regulatory bodies.  *New Mexico*, 2018 WL 2943246, at *2, *5.  That case, therefore, involved interpretation of separate state regulations.  By contrast, Plaintiff's claims here rely on alleged violations of duties arising solely from the federal CSA, and there are no parallel state-law statutory requirements to support its allegations against Defendants.[6]

Plaintiff's reliance on other remanded Attorney General actions, including those remanded by this Court, are similarly misplaced, as they either applied different law or evaluated materially different allegations.  (Mot. 2, 4–5.)  For example, the *Montana* and *Oklahoma* decisions do not

---

[6]     Defendants need not establish that all of Plaintiff's counts against it raise a federal question. Even if Plaintiff could prove one or more of those counts without establishing a violation of federal law, Defendants still had an objectively reasonable basis for removal based upon federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).  There was an objectively reasonable basis to assert federal question jurisdiction as to at least one count here, and supplemental jurisdiction applied to any other state law claims.  28 U.S.C. § 1367(a).

even mention the CSA and, therefore, did not address the question presented here.  *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 Dkt. 899 (N.D. Ohio Aug. 23, 2018); *Oklahoma, ex rel., Hunter v. Purdue Pharma L.P.*, No. 5:18-cv-00574-M (W.D. Okla. Aug. 3, 2018), ECF No. 53.  And while the *Kentucky* and *West Virginia* actions addressed the issue of federal jurisdiction in connection with claims brought by Attorneys General based on the CSA, they both did so only in the context of the laws of those particular states, the specific plaintiffs bringing those claims, and the allegations pled in those complaints; in fact, the *Kentucky* decision also was subsequently withdrawn as moot.  *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804, 2019 WL 180246 at *2 (N.D. Ohio Jan. 14, 2019); Memorandum Opinion and Order, *West Virginia*, No. 2:17-cv-03555, Dkt. 21 at 3 (S.D.W.Va. Feb. 15, 2018).

Unlike those other cases, Plaintiff's action here rests almost ***exclusively*** on the purported duties by manufacturers to report and halt suspicious orders—which, as described above, are expressly alleged to flow from the federal CSA.  And ***none*** of the decisions cited by Plaintiff addressed, much less resolved, whether Puerto Rico law gives rise to the independent duties to report and halt suspicious orders that Plaintiff bases its claims on.  It does not.  Determining whether a federal question is necessarily raised in this case requires an individualized analysis of Plaintiff's claims as they have pled them.  No decision cited by Plaintiff, from this Court or otherwise, answers this fundamental question in any dispositive way.

In short, Plaintiff's state law causes of action all hinge on its allegations that Defendants breached alleged duties arising out of the CSA and its implementing regulations.  To determine whether Defendants breached those alleged duties, a court would necessarily have to interpret and apply the CSA.  Accordingly, because Plaintiff's claims necessarily raise federal issues, an objectively reasonable basis existed for removal of this action.

13

### 2. **The Parties "Actually Dispute" the Federal Issues**.

The parties dispute the federal issues presented by Plaintiff's Complaint. Defendants vigorously contest whether the CSA, its implementing regulations, and derivative state law regulations give rise to actionable duties to report and halt suspicious orders for prescription opioids, the precise scope and contours of any such duties, and whether Defendants violated these alleged duties.  Indeed, Defendants contest that they owed *Plaintiff* any duties or that any such CSA duties are actionable in civil litigation.  Because Plaintiff's claims depend on their theory that Defendants breached these alleged duties, this issue forms the "central point of dispute." *Gunn*, 568 U.S. at 259.

Assessing whether Defendants breached duties arising out of the CSA raises a whole series of disputed questions under federal law.  For instance, a court must assess whether the CSA and its implementing regulations in fact give rise to separate duties to report and then to halt allegedly suspicious orders, what any such duties entail, what constitutes a "suspicious" order under the CSA's implementing regulations, what actions should have been taken to resolve those suspicions orders or "halt" the shipment, whether Defendants' existing processes satisfy federal reporting or other guidelines, and other disputes arising under federal regulations.  Any argument that the scope of duties applicable to manufacturers under the CSA is well-settled is simply not true.  In fact, it is a continued point of litigation in opioid cases, including one, for example, where a state court held the CSA does not impose a duty not to ship allegedly suspicious orders. *See, e.g.,* May 5 2020 Decision, *State of Rhode Island v. Purdue Pharma L.P. et al.*, C.A. No. PC-2018-455 at 4-8, attached as **Exhibit 1**.

Given these live disputes about the existence and scope of alleged duties imposed on Defendants under the CSA, Plaintiff does not and cannot credibly maintain that the parties do not "actually dispute" these federal issues.

### 3. The Federal Issues Are "Substantial."

The Supreme Court has explained that "[t]he substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. A federal issue "can be important for many reasons," including because (i) "state adjudication would undermine the development of a uniform body of federal law"; (ii) "resolution of the issue has broad significance for the federal government"; or (iii) "the case presents a nearly pure issue of law that would have applications to other federal cases." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017) (internal quotation marks omitted). Exercising federal-question jurisdiction in such cases "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312.

All of these factors are satisfied. The federal issues presented here are important to the federal system as a whole because the United States has a strong interest in ensuring a uniform interpretation and implementation of the CSA. The scope of the obligations the CSA places on DEA registrants, including whether and how to halt "suspicious" orders, raises a legal question that has broad significance to the federal government, including by affecting the DEA's ability to enforce the CSA and its methods for enforcing it. It makes absolutely no sense to have a patchwork of state judicial decisions that take different views of the scope of the CSA and that impose different and inconsistent standards of conduct based upon that federal statutory and regulatory regime—all under the pretense of interpreting state law. *See e.g.*, *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 897 (10th Cir. 2017) (plaintiffs' attempts to privately enforce federal CSA to enjoin Colorado marijuana law "raise, at minimum, 'substantial question[s] of federal law'" on the merits that were sufficient to exercise federal jurisdiction (citations omitted)).

Congress has said as much. In enacting the CSA, Congress stated that it was "providing the legitimate drug industry with a ***unified*** approach to narcotic and dangerous drug control." H.R. Rep. No. 91-1444 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4566, 4572 (emphasis added). Plaintiff's claims thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder*, 418 F.3d, at 195, and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole." *NASDAQ*, 770 F.3d, at 1024.[7]

Any argument that, in the absence of a private right of action, a claimed violation of the CSA is insufficiently "substantial" to confer federal-question jurisdiction is completely without merit. In *Grable*, the Supreme Court held that the federal issue presented in that case was sufficiently substantial notwithstanding the lack of a federal cause of action. *E.g.*, *Broder*, 418 F.3d, at 196 ("The *Grable* Court found this last requirement to be satisfied even in the absence of a private right of action."); *Ranck*, 2017 WL 1752954, at *4 ("In *Grable*, the Supreme Court expressly rejected this line of reasoning [that lack of a private right of action precludes substantiality], finding that applying *Merrell Dow* in this way would both 'overturn[ ] decades of precedent,' and 'convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one.' *Grable*, 545 U.S. at 317."). Thus, the fact that the CSA does not afford Plaintiff a private right of action does not diminish the substantiality of the federal

---

[7] Even the federal government has made clear the effect that the opioid litigation will have on its ability to enforce the CSA. Most notably, the Department of Justice filed a Statement of Interest on behalf of the United States in the MDL proceedings, asserting the federal government's interests in, among other things, its "law enforcement and legal activities in conjunction . . . with the multidistrict litigation," specifically including "[c]riminal and civil tools available *under the Controlled Substances Act*." *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio Mar. 1, 2018), ECF No. 161, at 7 (emphasis added.).

questions here.[8]

Put simply, the federal issues raised by this case are substantial and certainly justified removal.   Allowing state courts to resolve claims premised on the CSA—and to determine the existence and scope of any duties under the CSA—creates the potential for inconsistent interpretations of the CSA across jurisdictions.  This, in turn, would inevitably undermine the federal government's efforts to enforce the statute and sow confusion among federally-regulated entities.  For this reason and the many others cited above, removal of this action on the basis of federal question jurisdiction was objectively reasonable under *Grable*.

4.      **Federal Jurisdiction Will Not Disrupt The Congressionally Approved Balance Of Federal Judicial Responsibilities.**

Finally, recognizing federal jurisdiction would not disturb the division of labor between state and federal courts.  Federal courts are ***already*** the exclusive fora to hear challenges to DEA authority to enforce the federal CSA against registrants.[9]   And federal courts have jurisdiction over proceedings seeking to enjoin violations of the CSA. 21 U.S.C. § 882(a) ("The district courts of the United States and all courts exercising general jurisdiction in the territories and possessions of the United States shall have jurisdiction in proceedings . . . to enjoin violations of this subchapter.").

Plaintiff argues there was no basis for removal of this action by referencing dicta in prior

---

[8]      *See NASDAQ OMX Grp., Inc.*, 770 F.3d at 1018–19, 1024 (federal issue was substantial even though the underlying federal statute did not include a private right of action because it was "significant to the development of a uniform body of federal securities regulation"); *Wullschleger*, 953 F.3d at 522 (federal issue was substantial despite the absence of a private right of action).

[9]      *See, e.g.*, *PDK Labs. Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786 (D.C. Cir. 2004) (challenge to DEA program enforcing CSA to prevent diversion of ephedrine); *Admin. Subpoena Walgreen Co. v. U.S. Drug Enf't Admin.*, 913 F. Supp. 2d 243 (E.D. Va. 2012) (resolving registrant's motion to require DEA to return subpoenaed documents); *Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203 (D.D.C. 2012) (challenge under Administrative Procedure Act to DEA order suspending registration of distribution facility).

decisions where this Court questioned whether it could exercise jurisdiction over Attorney General actions filed in state court. (Mot. at 4-5.) But that dicta clearly does not foreclose removal of federal-question government cases under the Supreme Court's *Grable* test. Any notion that Attorney General cases are not removable under *Grable* is contrary to the test set forth by the Supreme Court—which makes no carve-outs for cases bought by an Attorney General. It is also contrary to the holding of various courts that have allowed the removal of Attorney General actions under the same *Grable* standard asserted here. *See supra* at 7-8 (collecting cases). Rather, any finding by this Court that it could not exercise federal question jurisdiction in prior Attorney General actions is, at most, a case-specific finding that the presence of an Attorney General as plaintiff in those cases was relevant to evaluating the balance between federal and state powers under *Grable* and supported (but was not dispositive) of its decision to remand.

Indeed, Plaintiff's own citations to decisions from this Court confirm that the presence of an Attorney General is but one of many other factors to be considered in determining the propriety of federal question jurisdiction. *See e.g.*, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 Dkt. 899 (N.D. Ohio Aug. 23, 2018) (recognizing the presence of Attorney General as plaintiff but nevertheless proceeding to evaluate the other *Grable* factors in determining whether exercise of federal question jurisdiction was proper). The removal statutes, the Supreme Court, and the Sixth Circuit have never recognized a complete exception to federal question jurisdiction when the case is brought by an Attorney General of a state or the government of a territory.

## 5. The Circumstances Of This Removal Are Completely Unlike Those Courts Have Found To Have Been Objectively Unreasonable.

Even a cursory review of decisions where courts have granted motions for fees and costs under 28 U.S.C. § 1447(c) shows why Plaintiff's Motion should be denied here. Courts have found the lack of an objectively reasonable basis for removal where removal was wholly and

completely unfounded, such as a single passing reference in the Complaint to the U.S. Constitution or where the removing party entirely ignored controlling law precluding removal.  *See Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1064 (6th Cir. 2008) (granting motion for costs after remand where the defendant "rested removal on an isolated mention of the Fourteenth Amendment."); *Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 491 (6th Cir. 2013) (granting motion for costs where removal ignored, among other things, the "(settled) federal fraudulent joinder standard" in the Sixth Circuit.)

This case presents the opposite situation.  There is no controlling law holding that Attorney General actions are not removable or that Plaintiffs' state law claims, which rest expressly on alleged violations of the federal CSA, do not present an embedded federal question giving rise to federal jurisdiction.  Plaintiff's Complaint does not just make passing references to federal law; rather, it repeatedly references and alleges violations of the CSA and its accompanying federal regulations as the basis for its claims.  And Defendants continue to believe that federal jurisdiction exists, yet chose to consent to remand to avoid protracted litigation over this very issue.

Moreover, recognizing that the Supreme Court's *Grable* test presents a claim-specific and flexible legal standard, courts have been reluctant to grant motions for costs when removal is based upon a *Grable* analysis.  *See Pirie*, 2008 WL 2745977, at *3 (denying motion for costs because "[d]efendants' reliance on *Grable* [] in support of removal . . . was not unreasonable or inappropriate given the flexible test described by the Supreme Court in *Grable* . . .").  So, too, here.  Plaintiffs' claims rest upon alleged violations of the CSA—either directly or indirectly.  As a result, even a cursory review of the Plaintiff's Complaint makes clear that removal was objectively reasonable under the *Grable* test.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion should be denied.

Dated: April 12, 2022        *Respectfully submitted,*

*/s/ Brian M. Ercole*
Brian M. Ercole
MORGAN, LEWIS & BOCKIUS LLP
600 Brickell Avenue, Suite 1600
Miami, FL 33131-3075
Tel: (305) 415-3000
brian.ercole@morganlewis.com

Eric W. Sitarchuk
Rebecca J. Hillyer
MORGAN, LEWIS & BOCKIUS LLP
1701 Market St.
Philadelphia, PA 19103-2921
Tel: (215) 963-5603
eric.sitarchuk@morganlewis.com
rebecca.hillyer@morganlewis.com

Wendy West Feinstein
MORGAN, LEWIS & BOCKIUS LLP
One Oxford Centre, Thirty Second Floor
Pittsburgh, PA 15219-6401
Tel: (412) 560-3300
wendy.feinstein@morganlewis.com

*Counsel for Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Watson Laboratories, Inc., Actavis Pharma, Inc. f/k/a Watson Pharma, Inc., Actavis South Atlantic LLC, Actavis Elizabeth LLC, Actavis Mid Atlantic LLC, Actavis Totowa LLC, Actavis LLC, Actavis Kadian LLC, Actavis Laboratories UT, Inc. f/k/a Watson Laboratories, Inc.-Salt Lake City, Teva Puerto Rico LLC f/k/a Warner Chilcott Company, LLC and Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc. Florida*

*s/Donna Welch*
Donna Welch, P.C.
Timothy Knapp P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
jennifer.levy@kirkland.com

*Counsel for Allergan Finance, LLC, Allergan USA, Inc. and Allergan Sales, LLC*

## **CERTIFICATE OF SERVICE**

It is hereby certified that, on this same date, this document was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*s/ Brian M. Ercole*
Brian M. Ercole
