# EXHIBIT 1

## EXHIBIT F

## INJUNCTIVE RELIEF

I. **INTRODUCTION**

    A. Within 90 days of the Effective Date of the Settlement Agreement and Release (as defined in the Settlement Agreement and Release, the "Effective Date") (except where this Agreement specifies a different implementation period), CVS Pharmacy, Inc. (the "Settling Pharmacy") shall implement the terms set forth in this Agreement (the "Settlement Terms").

    B. To the extent that the Settling Pharmacy already has in place committees, departments, policies or programs that satisfy the terms of this Agreement, no re-naming is required by this Agreement.

    C. Overview

        1. The Settling Pharmacy will implement or maintain a Controlled Substance Compliance Program ("CSCP").

        2. The CSCP must include written standard operating procedures and/or corporate policies (the "CSCP Policies and Procedures") required by this Agreement.

        3. The CSCP shall apply during the term of this Agreement to each of the Settling Pharmacy's retail pharmacy stores within the State of Florida.

        4. The Settling Pharmacy shall provide a copy of the relevant CSCP Policies and Procedures to the State within 90 days of the Effective Date. To the extent any implementation is expected to require additional time, the parties agree to work together in good faith to establish a timeline for implementation.

    D. Compliance with Laws

        1. The Settling Pharmacy acknowledges and agrees that its retail pharmacies must comply with applicable federal and Florida state laws, including regarding the dispensing of Controlled Substances. The requirements of the Settlement Terms are in addition to, and not in lieu of, any other requirements of federal or Florida state law. Nothing in the Settlement Terms shall be construed as relieving the Settling Pharmacy of the obligation of its retail pharmacies to comply with all federal and Florida state and local laws, nor shall any of the provisions of the Settlement Terms be deemed as permission for the Settling Pharmacy to engage in any acts or practices prohibited by such laws.

        2. The Settlement Terms are not intended to and shall not be interpreted to prevent the Settling Pharmacy from taking or implementing any other compliance or policy steps necessary to address their retail pharmacies' conformity with local, state, and federal legal requirements.

3. In the event that the Settling Pharmacy determines that there is a conflict between the Settlement Terms and the requirements of federal, state, or local laws, such that the Settling Pharmacy determines that it cannot comply with the Settlement Terms without violating these requirements, the Settling Pharmacy shall document such conflicts and notify the State that it intends to comply with the law to the extent necessary to eliminate the conflict. Within thirty (30) days after receipt of a notification from the Settling Pharmacy referenced above, the State may request a meeting to discuss the conflict and the Settling Pharmacy shall comply with any such reasonable request. Nothing in this paragraph shall (i) limit the right of the State to disagree with the Settling Pharmacy as to the impossibility of compliance and to seek to enforce the Settlement Terms accordingly; or (ii) be deemed to relieve the Settling Pharmacy from following any subsequently enacted law that is more restrictive than the provisions of the Settlement Terms, or from following the Settlement Terms if they are more restrictive than applicable laws, to the extent the Settling Pharmacy can adhere to both the Settlement Terms and the provisions of local, state or federal law.

4. In the event that the State learns of any action, administrative or otherwise, to be commenced against the Settling Pharmacy, any of its retail pharmacies, or its pharmacy personnel as a result of the Settling Pharmacy's obligations under this Agreement—including but not limited to actions brought by State Boards of Medicine and Pharmacy or the State Department of Health—the State will make best efforts to intervene and seek dismissal or to otherwise assist in achieving resolution, including by certifying that the State's position is that the Settling Pharmacy should not be held liable for actions required by this Agreement.

5. The Settling Pharmacy shall retain all records it is required to create pursuant to its obligations hereunder in an electronic or otherwise easily accessible format for the term of this Agreement. Nothing in this Agreement shall waive any applicable privilege that may be asserted over any such record.

II. **TERM AND SCOPE**

A. The term of the Agreement shall be ten years from the Effective Date, unless otherwise specified herein.

B. The Settlement Terms shall apply to the Settling Pharmacy's operation of any retail pharmacy store within the State of Florida that dispense Controlled Substances to Patients.

III. **DEFINITIONS**

A. The term "Controlled Substances" means those substances designated under schedules II-V pursuant to the federal Controlled Substances Act and the laws and regulations of the State that incorporate the federal Controlled Substances Act.

C. The term "Designated Controlled Substances" shall include: (a) oxycodone; (b) hydrocodone; (c) hydromorphone; (d) oxymorphone; (e) morphine; (f) methadone; and (g) fentanyl.

D. The term "Prescriber" means any individual that has written a prescription, whether legally valid or not, that is presented to one of the Settling Pharmacy's retail pharmacy stores in the State of Florida.

E. The term "Patient" means any individual who receives a prescription for a Designated Controlled Substance from a Prescriber, whether legally valid or not, and attempts to fill it at one of the Settling Pharmacy's retail pharmacy stores in the State of Florida.

IV. **CONTROLLED SUBSTANCE COMPLIANCE PERSONNEL**

A. The Settling Pharmacy shall designate a Chief Controlled Substance Compliance Officer, or other appropriately titled position, to be a member of the Controlled Substance Compliance Committee (described below in Section VI), and to oversee a Controlled Substance Compliance Department and the Settling Pharmacy's compliance with these Settlement Terms. As used in this agreement, the terms "Controlled Substance Compliance Committee" and "Controlled Substance Compliance Department" refer to the entity or entities, however titled, that carry out the functions required by this Agreement. Notwithstanding the preceding sentence, to the extent an existing position, committee or department carries out the functions required by this Agreement, any other functions undertaken by such position, committee or department shall not be subject to this Agreement or oversight by the State pursuant to this Agreement. The position, committee and department discussed in this subsection and below may bear different names and need not be limited to the roles and functions set forth herein.

B. The Chief Controlled Substance Compliance Officer shall have knowledge of and experience with the laws and regulation of Controlled Substances.

C. The Chief Controlled Substance Compliance Officer shall provide at least quarterly reports to the Controlled Substance Compliance Committee (described below in Section VI) regarding the Settling Pharmacy's compliance with these Settlement Terms, including the implementation of any changes to the CSCP Policies and Procedures required by these Settlement Terms.

D. Staffing levels of the Settling Pharmacy's Controlled Substance Compliance Department shall be reviewed periodically, but at least on an annual basis, by the Settling Pharmacy's Controlled Substance Compliance Committee, to assess whether such staffing levels are sufficient for the Controlled Substance Compliance Department to comply with this Agreement. This review shall include consideration of relevant developments in technology, law, and regulations.

E. Throughout the term of this Agreement, the Settling Pharmacy shall maintain a telephone and email hotline(s) (the "Hotline") to permit employees and/or Patients to anonymously report suspected inappropriate or illegitimate dispensing, prescribing or diversion of Designated Controlled Substances, violations of the CSCP Policies and Procedures, these Settlement Terms, the Settling Pharmacy's company policy, or other applicable law. The Settling Pharmacy shall

3

publish its Hotline contact information to its employees and Patients in the State of Florida. The Settling Pharmacy shall maintain for the duration of this Agreement a record of each complaint made to the Hotline regarding Designated Controlled Substances and documentation regarding any investigation or response to such complaints.  Nothing herein shall require the Settling Pharmacy to investigate a pharmacist's professional judgment to refuse a prescription that the pharmacist believes was prescribed or is being used for other than a legitimate medical purpose or that the pharmacist believes was not prescribed by an individual Prescriber acting in the usual course of his or her professional practice.

V.	**INDEPENDENCE**

A.	The Settling Pharmacy's Controlled Substance Compliance Department personnel, the pharmacy personnel who work at the Settling Pharmacy's retail pharmacies within the State of Florida, and field personnel who supervise such pharmacy personnel (together, "CSCP Employees") shall not be compensated in whole or in part by commissions, bonuses, incentives or any other monetary or non-pecuniary benefit that depends in any part on revenue or profitability targets or expectations specific to sales of Controlled Substances.  Nothing in this Agreement shall be interpreted to prevent compensation of employees based on sales volume, revenue or profitability targets/expectations for enterprise-, store-, or pharmacy-wide sales.

B.	No CSCP Employees may be terminated, suspended, threatened with or face any other negative employment consequence for failing to meet any revenue or profitability targets/expectations specific to sales of Controlled Substances.

C.	To the extent necessary to comply with this section, the Settling Pharmacy's Controlled Substance Compliance Committee shall review, modify, and implement any changes to any compensation and non-retaliation policies specific to the sale or dispensing of Designated Controlled Substances.

VI.	**OVERSIGHT**

A.	To the extent not already established, within ninety (90) business days of the Effective Date, the Settling Pharmacy shall establish a compliance committee, however titled, that includes representatives from its respective legal, compliance, pharmacy operations, and asset protection departments, however named, to provide oversight over the CSCP and its compliance with the Settlement Terms.  For the purposes of reference herein, this committee, however named, shall be referred to as the "Controlled Substance Compliance Committee."  The Settling Pharmacy shall maintain its Controlled Substance Compliance Committee for the duration of the term of the Settlement Terms.  The Chief Controlled Substance Compliance Officer of the Settling Pharmacy shall be a member of the Controlled Substance Compliance Committee.

B.	The  Settling Pharmacy's Controlled Substance Compliance Committee shall have regular meetings during which the Chief Controlled Substance Compliance Officer shall report on, and the Controlled Substance Compliance Committee shall review, among other things, (a) the Prescription Validation Process, including the CSCP Policies and Procedures on identifying and resolving Patient, Prescriber and Prescription Red Flags; (b) the training required under this Agreement; (c) proactive due diligence and site visits; (d) the Prescriber Review Processes; (e)

4

significant new national and regional diversion trends involving Controlled Substances; (f) the Settling Pharmacy's adherence to this Agreement and applicable laws and regulations; and (g) any technology, staffing, or other resource needs for the CSCP. The Controlled Substance Compliance Committee shall have access to all CSCP reports described in the following subsection.

       C.     On an annual basis, the Settling Pharmacy's Controlled Substance Compliance Committee shall provide a written report to the President of CVS Retail, Chief Financial Officer of CVS Retail, Chief Legal Officer of CVS Retail, and the CVS Health Chief Compliance Officer, as well as the CVS Health Compliance Committee (however such positions or committees are named at the time), outlining (a) the Settling Pharmacy's adherence to, and any deviations from, the Settlement Terms; (b) the allocation of resources sufficient to comply with this Agreement; and (c) any revisions to the CSCP that the Controlled Substance Compliance Committee has approved. The Compliance Committee shall document in its minutes its review of the annual Controlled Substance Compliance Committee reports.

       D.     The Settling Pharmacy, through its Controlled Substance Compliance Department and Committee, shall, at least once every year, review and oversee any enhancements to the CSCP Policies and Procedures and systems for dispensing activity that the Controlled Substance Compliance Committee deems necessary.

       E.     The Settling Pharmacy's Controlled Substance Compliance Committee shall be responsible for the approval of all material revisions to the CSCP Policies and Procedures, provided that nothing herein shall prevent the Settling Pharmacy from implementing changes to the CSCP Policies and Procedures pending such review and approval.

## VII. MANDATORY TRAINING

       A.     The CSCP Policies and Procedures shall be published in a form and location readily accessible to all pharmacy and compliance personnel at each of the Settling Pharmacy's retail pharmacy stores in the State of Florida. Online availability is sufficient, so long as pharmacy and compliance personnel have access to a computer with access to the CSCP Policies and Procedures.

       B.     Within 90 days of entering into these Settlement Terms, to the extent not already in place, the Settling Pharmacy shall implement policies and procedures requiring all CSCP Employees to complete trainings on the CSCP Policies and Procedures required under this Agreement, including with respect to the Prescription Validation Process and their corresponding responsibility.

       C.     On an annual basis for the duration of the Agreement, the Settling Pharmacy shall test its CSCP Employees, and any contractors serving as pharmacists or pharmacy technicians in its retail pharmacies in the State of Florida, on their knowledge regarding the CSCP Policies and Procedures required under this Agreement, including with respect to the Prescription Validation Process and their corresponding responsibility.

       D.     It shall be a part of the CSCP Policies and Procedures and all trainings of all CSCP Employees required under these Settlement Terms that pharmacists shall refuse to dispense Controlled Substances that they believe were prescribed or are being used for other than a

5

legitimate medical purpose or that they believe were not prescribed by an individual Prescriber acting in the usual course of his or her professional practice.

E. All trainings required under these Settlement Terms shall also make clear that pharmacists will not be penalized in any way for refusing to fill prescriptions for Controlled Substances pursuant to their corresponding responsibility.

VIII. **THE PRESCRIPTION VALIDATION PROCESS**

A. As part of its CSCP, to the extent not already in place, the Settling Pharmacy shall have a Prescription Validation Process in the CSCP Policies and Procedures, as further described and set forth in this section, that each pharmacist employed by the Settling Pharmacy at a retail pharmacy in the State of Florida is directed to follow when dispensing a prescription for a Controlled Substance.

B. The Settling Pharmacy's CSCP Policies and Procedures shall provide that a Red Flag will be considered "resolved" if, after further investigation as described below, and given other facts and circumstances surrounding the prescription, a pharmacist determines, in his or her professional judgment, that the facts that triggered the Red Flag do not lead him or her to believe that the prescription was written or is being submitted for an illegitimate medical purpose or outside the usual course of a Prescriber's professional practice.

C. The Settling Pharmacy's CSCP Policies and Procedures shall provide that if a pharmacist identifies any "Patient Red Flags" associated with a Controlled Substance prescription (described in Section IX(1) below), before filling the prescription the pharmacist must resolve them; and that the method of resolution falls within the judgment of the pharmacist and may include reviewing the Patient's profile and history with the Settling Pharmacy, calling the Prescriber or Prescribers if appropriate, speaking with the Patient if appropriate, calling on the pharmacist's pre-existing knowledge of the Patient or Prescriber, reviewing available PDMP data, and/or reviewing other data or information available to the pharmacist.

D. The Settling Pharmacy's CSCP Policies and Procedures shall provide that, except as allowed by Florida law, a pharmacist may only fill a Controlled Substance prescription electronically transmitted by a Prescriber for such drugs; that if the pharmacist identifies any other "Prescription Red Flags" (described in Section IX(2) below), the pharmacist must resolve them; and that the method of resolution falls within the judgment of the pharmacist and may include reviewing the Patient's profile and history with the Settling Pharmacy, calling the Prescriber or Prescribers if appropriate, speaking with the Patient if appropriate, calling on the pharmacists pre-existing knowledge of the Patient or Prescriber, reviewing available PDMP data, and/or reviewing other data or information available to the pharmacist.

E. The Settling Pharmacy must put in place, to the extent not already in place, systems at its retail pharmacies in the State of Florida to check the licensure status of a Prescriber of Controlled Substances through a regularly updated prescriber database, to the extent such information is reasonably available for such purposes. The dispensing system shall block a Controlled Substance prescription from being filled if the prescriber database check reflects a DEA registration or state license that has been suspended or revoked and likewise shall block from being

6

filled a Controlled Substance prescription written by a prescriber blocked by the Settling Pharmacy under a prescriber review program. CSCP Policies and Procedures shall require that if a pharmacist identifies any Prescriber Red Flags, the pharmacist must resolve them, and that the method of resolution falls within the judgment of the pharmacist and may include reviewing the Settling Pharmacy's records regarding the Prescriber, calling the Prescriber if appropriate, speaking with the Patient if appropriate, calling on the pharmacist's pre-existing knowledge of the Patient or the Prescriber, reviewing available PDMP data, and/or reviewing other data or information available to the pharmacist .

F. The Settling Pharmacy's CSCP Policies and Procedures shall provide that the resolution of all Red Flags identified by the pharmacist must be documented. Any such records shall be maintained for the duration of this Agreement.

G. The Settling Pharmacy's CSCP Policies and Procedures shall provide that, even if all Red Flags are resolved, a pharmacist shall reject a prescription if, in his or her professional judgment, he or she believes that it was written or is being submitted for other than a legitimate medical purpose and/or was written outside the usual course of an individual Prescriber's professional practice.

IX. **RED FLAGS**

A. Notwithstanding any other potential Red Flags that the Settling Pharmacy may identify in its CSCP Policies and Procedures, the Settling Pharmacy shall identify in its CSCP Policies and Procedures the following potential "Patient Red Flags":

1. A Patient seeks to fill a Designated Controlled Substance prescription more than three days prior to the contemplated exhaustion date of an earlier prescription of the same Designated Controlled Substance;

2. A Patient seeks to fill Designated Controlled Substance prescriptions from more than four Prescribers, from separate practices, in a given 6-month period;

3. A Patient resides more than 50 miles from the Settling Pharmacy's retail pharmacy where the Designated Controlled Substance prescription is submitted;

B. Notwithstanding any other potential Red Flags that the Settling Pharmacy may identify in its CSCP Policies and Procedures, with respect to any Controlled Substance prescriptions, the Settling Pharmacy shall identify in its CSCP Policies and Procedures the following potential "Prescription Red Flags:"

1. A prescription that fails to meet the requirements of law, e.g. Fla. Stat. §§ 456.42(2), (3).

2. A prescription that appears altered;

3. A prescription written with misspellings suggesting the prescription may not have been written by a Prescriber;

7

    4. A prescription using atypical abbreviations suggesting the prescription may not have been written by a Prescriber; and

    5. A prescription written with multiple colors of ink or in multiple different handwritings.

  C. Notwithstanding any other potential Red Flags that the Settling Pharmacy may identify in its CSCP Policies and Procedures, with respect to any Prescriber of Controlled Substances, the Settling Pharmacy shall identify in their CSCP Policies and Procedures the following potential "Prescriber Red Flags:"

    1. A Prescriber provides a Patient with prescriptions for a Designated Controlled Substance, a benzodiazepine, and carisoprodol; and

    2. A Prescriber has no office within 50 miles of the retail pharmacy store.

X. **PRESCRIBER REVIEW**

  A. To the extent not already in place, the Settling Pharmacy shall develop a process by which it regularly reviews the prescribing patterns and practices of Prescribers of Designated Controlled Substances (the "Prescriber Review Process"). The Prescriber Review Process shall employ algorithms, or other means, to review the Settling Pharmacy's retail dispensing data for potential Prescribers of concern. Once the Settling Pharmacy identifies through its process a Prescriber for further investigation, the review of a Prescriber shall include review of his or her prescribing as contained in the Settling Pharmacy's data and available licensing and disciplinary history. It may also include internet searches, interviews and other information gathered in the discretion of the employees operating the Prescriber Review Process.

  B. If after the Prescriber Review Process the Settling Pharmacy has not resolved its concerns of illegitimate prescribing, then Controlled Substance prescriptions written by the Prescriber shall be blocked from being filled by the Settling Pharmacy's retail pharmacies in the State of Florida, with an opportunity at the discretion of the Settling Pharmacy for the prescriber to seek future reinstatement by providing information to the Settling Pharmacy that may resolve its concerns. This block shall be on top of and in addition to any block based on a Prescriber's licensure. On written demand by the State, the Settling Pharmacy shall provide the names of the prescribers who it has identified for investigation and/or whose prescriptions it has blocked.

XI. **PROACTIVE DUE DILIGENCE AND SITE VISITS**

  A. During the term of this Agreement, the Settling Pharmacy shall conduct periodic proactive compliance reviews of its retail pharmacy stores in the State of Florida to assist with the identification of potential compliance issues related to the dispensing of Designated Controlled Substances at its retail pharmacy stores in the State of Florida. This may be satisfied by the use of algorithms, or other electronic means, to analyze data associated with each pharmacy to identify particular pharmacies for review. Documentation of any resulting reviews shall be maintained by the Settling Pharmacy and made accessible to all Controlled Substance Compliance Department personnel upon request for the duration of the Agreement.

8

B. During the term of this Agreement, the Settling Pharmacy's field personnel shall also conduct site visits to each of its retail pharmacy stores in the State of Florida each year for the duration of the Agreement. Operating procedures shall specify that any concerns identified with the dispensing of Designated Controlled Substances shall be reported to the Controlled Substance Compliance Department. The Controlled Substance Compliance Department shall maintain documentation of any such reported concerns.

C. During the term of this Agreement, to the extent not already in place, the Settling Pharmacy shall put in place processes to oversee inventory, recording keeping and theft and loss prevention controls at its retail pharmacy stores in the State of Florida.

D. The CSCP Policies and Procedures shall require that site visit reports, if any, related to the dispensing of Designated Controlled Substances shall be maintained by the Settling Pharmacy and made accessible to all Controlled Substance Compliance Department personnel upon request for the duration of the Agreement.

## XII. CONTROLLED SUBSTANCE DISPOSAL

A. The Settling Pharmacy's retail pharmacies in the State of Florida shall make available or display information to all Patients receiving a Designated Controlled Substance about the need to dispose and the proper disposal of unneeded Controlled Substances and the availability of disposal boxes, pouches or containers for purchase from the Settling Pharmacy, or other products commercially manufactured to allow for the safe disposal of Controlled Substances and medications at home.

B. At each of its retail pharmacies in the State of Florida, the Settling Pharmacy shall make available to Patients at its actual cost (per generally accepted accounting principles) a pouch or other container or product commercially manufactured to allow for the safe disposal of Controlled Substances and medications at home. The Settling Pharmacy shall maintain sufficient written documentation supporting its actual cost for the duration of this Agreement.

## XIII. NALOXONE DISPENSING

A. To the extent not already in place, the Settling Pharmacy agrees to obtain a non-patient-specific standing order covering each of its retail pharmacies in the State of Florida allowing for the dispensing of naloxone or other overdose reversal medications to the fullest extent allowable under Florida law.

B. To the extent that the State of Florida obtains or enters into an agreement with a manufacturer of naloxone or other overdose reversal medication to provide naloxone or an overdose reversal medication to the State for free or at cost, the Settling Pharmacy agrees to dispense that naloxone or other overdose reversal medication at its actual cost for dispensing that naloxone or other overdose reversal medication (time and expense). Upon request by the State to dispense such medication, in the course of arranging logistics with the State, the Settling Pharmacy shall provide the State with its calculation of the actual cost to dispense.

9

XIV.  **FRAUD, THEFT AND LOSS PREVENTION**

In addition to complying with all fraud, theft and loss procedures, policies and precautions required by state and federal law, the Settling Pharmacy shall maintain information regarding the receipt and disposition of inventory of all Designated Controlled Substances for each retail pharmacy in the State of Florida.

XV.  **REPORTING TO LAW ENFORCEMENT**

To the extent not already in place, the Settling Pharmacy shall implement standard operating procedures directing its employees to report any confirmed forged prescriptions to state or local law enforcement authorities within 7 days of completing any review of such prescription or conduct. The State shall provide appropriate contact information for such reports. The Settling Pharmacy shall comply with all statutes and regulations requiring the reporting of thefts and losses of Controlled Substances.

XVI.  **ENFORCEMENT OF SETTLEMENT TERMS**

      A.    Notice of Potential Violations and Opportunity to Cure.

          1.    A "Potential Violation" occurs when the State determines, after appropriate investigation and due diligence, that the Settling Pharmacy is not in substantial compliance with a material aspect of the Settlement Terms. A Potential Violation may be for a single retail pharmacy. A violation of this Agreement does not occur when a pharmacist or other pharmacy personnel employed by the Settling Pharmacy violates the Settling Pharmacy's CSCP Policies and Procedures or the law.

          2.    Potential Violation Discovered by State.

              a.    In the event of a Potential Violation identified by the State, the State shall notify the Settling Pharmacy in writing (the "State's Notice").

              b.    Within thirty (30) days of receipt of the State's Notice, the Settling Pharmacy shall provide a written response to the State. The response shall include the Settling Pharmacy's position as to the act(s) of non-compliance with these Settlement Terms, including, possibly, a statement setting forth why the Settling Pharmacy believes it is in substantial compliance with the relevant provision(s) or a statement explaining how the Potential Violation has been addressed.

              c.    If the State wishes to meet with the Settling Pharmacy, the Settling Pharmacy shall promptly make itself available for such a meeting.

          3.    If, after review of a written response and any meeting, the State believes that a Potential Violation is ongoing or has not been substantially addressed, it will provide written notice to the Settling Pharmacy and work in conjunction with the Settling Pharmacy to devise, within thirty (30) days, a corrective action plan ("Corrective Action Plan") to remedy such Potential Violation, including a reasonable period for implementation of such plan.

      4.      Within 60 and 120 days after implementing the Corrective Action Plan, the Settling Pharmacy will provide a written compliance update to the State and make itself available to meet with the State if requested. If after reviewing the compliance update and any meeting, the State believes a Potential Violation remains ongoing or has not been substantially addressed, the State may commence a 30-day mediation period. If mediation fails to resolve the dispute between the parties, the State may take whatever action it deems necessary, including but not limited to bringing an action to enforce the settlement agreement, filing a new action (administrative or civil action) for violation of the settlement agreement as allowed by Florida law, conducting further investigation, or attempting to negotiate an updated Corrective Action Plan with the Settling Pharmacy. But the State may not seek to reinstate claims that have been released as part of this settlement.

      5.      If the Settling Pharmacy fails or refuses to provide a written response, to devise or implement a Corrective Action Plan or to provide a compliance update as required by subsections A(2), A(3) and/or A(4), the State may bring an action to enforce the settlement agreement, file a new action (administrative or civil action) for violation of the settlement agreement as allowed by Florida law, conduct further investigation, or attempt to negotiate an updated Corrective Action Plan with the Settling Pharmacy. But the State may not seek to reinstate claims that have been released as part of this settlement.

      6.      If, after review of a written response and any meeting, pursuant to subsection A(2) or A(3), above, the State concludes that a Potential Violation is not ongoing or has been substantially addressed, the State will provide written notice of this conclusion to the Settling Pharmacy within 30 days of reaching its conclusion.

      B.      Enforcement Action. The State agrees that prior to taking any court or administrative action, other than an action that the State concludes is necessary to address an immediate threat to the health, safety, or welfare of the citizens of the State, or that a public emergency requiring immediate action exists, it will follow the process outlined above. If the State concludes that action is necessary to address an immediate threat to the health, safety, or welfare of the citizens of the State or that a public emergency requiring immediate action exists, it will make best efforts to provide reasonable notice to the Settling Pharmacy prior to initiating any such action.

## XVII. **COMPLIANCE CERTIFICATION**

      A.      The Settling Pharmacy's Chief Controlled Substance Compliance Officer shall, after diligent inquiry, complete an annual compliance certification.

      B.      The certification shall be filed annually for the duration of this Agreement with the Florida Department of Health, the Florida Department of Business and Professional Regulation, and the Florida Office of Attorney General.

      C.      The certification shall state:

"I understand the compliance requirements and responsibilities as they relate to [insert name of department], an area under my supervision. My job responsibilities include promoting compliance with regard to the [insert name of department] with

all applicable statutory requirements, obligations of the Agreement, and applicable policies, and I have taken steps to promote such compliance. To the best of my knowledge, the [insert name of department] is in compliance with the obligations of the Agreement. I understand that this certification is being provided to and relied upon by the State of Florida."

    D.    If the Chief Controlled Substance Compliance Officer is unable to provide such a certification, he or she shall provide a written explanation of the reasons why he or she is unable to provide the certification outlined above.

    E.    Upon written demand by the Florida Department of Health, the Florida Department of Business and Professional Regulation, or the Florida Office of Attorney General, the Settling Pharmacy shall provide to the requesting agency within a reasonable time after request the below materials. The State of Florida, through its agencies and departments, including without limitation the Florida Department of Health, has preexisting access to certain records maintained by CVS retail pharmacies in the State of Florida and to certain data on their Controlled Substances dispensing. This provision is in addition to, and not in place of, that access.

        1.    Any specific, non-privileged documents reviewed by the Chief Controlled Substance Compliance Officer solely to make his/her certification, not including documents reviewed in the course of his/her duties throughout the year that provide him/her with relevant knowledge;

        2.    The current versions of the CSCP Policies and Procedures that are required by this Agreement;

        3.    The names of Florida prescribers of Designated Controlled Substances who the Settling Pharmacy has flagged for investigation and/or whose prescriptions it has blocked as part of its Prescriber Review Process; or

        4.    With regard to a particular retail pharmacy store in the State of Florida identified by the State, any non-privileged reports related to that pharmacy store prepared pursuant to the processes outlined in Section XI.A.

    F.    Nothing in this Paragraph shall limit the State's authority to subpoena other records.

    G.    Nothing in this Agreement shall be interpreted to abrogate the Settling Pharmacy's applicable privileges or protections from disclosure, including without limitation those related to the attorney-client privilege, the attorney work product doctrine, and the patient-safety work product privilege. Nothing in this Agreement shall require the Settling Pharmacy to provide or produce any such privileged or protected materials.

    H.    To the extent that the above records contain personal health information of patients, the personal health information of patients shall be redacted and the presence of personal health information shall not be a reason to not produce any category of documents. To the extent that city, state, or zip code related information is contained within the above records and does not constitute personal health information of patients, the Settling Pharmacy shall provide such information upon written request.

XVIII. **RECORDKEEPING**

The Settling Pharmacy shall retain records it is required to create pursuant to its obligations hereunder in an electronic or otherwise readily accessible format. In addition to the prescription data regularly provided to the State of Florida through its prescription drug monitoring program and all of the other records to which the State of Florida has access under its pharmacy regulations, including without limitation through its on-site inspections of retail pharmacies, the State of Florida shall have the right to review the CSCP Policies and Procedures discussed herein. Nothing in these terms shall prohibit the State of Florida from issuing a lawful subpoena for records pursuant to an applicable law.

XIX. **MOST FAVORED NATION**

    A.    To the extent the Settling Pharmacy enters a global settlement resolving substantially all claims against it brought by states, counties, and/or municipalities nationwide that contains additional injunctive relief provisions, the State of Florida shall have the right to obtain the benefit of those provisions under the terms set forth in any such global settlement.

    B.    To the extent that the Settling Pharmacy agrees to take part in the Clearinghouse described in the Distributor Settlement Agreement as part of any global settlement as defined above, the Settling Pharmacy agrees to provide data and otherwise take part in the Clearinghouse with respect to Florida retail pharmacies at no reduction to any settlement amount under this Agreement.

XX. **CHANGES AND MODIFICATIONS**

    A.    This Agreement may be amended or modified with the written consent of the Parties.

    B.    Nothing in this Agreement shall be construed to prohibit the Settling Pharmacy from implementing improvements or enhancements or from otherwise evolving its systems and practices.