# EXHIBIT A

| | |
|---|---|
| **From:** | Peter H. Weinberger <PWeinberger@spanglaw.com> |
| **Sent:** | Friday, February 4, 2022 8:39 AM |
| **To:** | David R. Cohen |
| **Cc:** | External User - Tara Fumerton; W. Mark Lanier (wml@lanierlawfirm.com); Kaspar Stoffelmayr; Delinsky, Eric; Miller, Sasha; Hynes, Paul B.; Majoras, John M.; Tabacchi, Tina M.; 'FGallucci@pglawyer.com'; Salvatore C. Badala; Hunter Shkolnik |
| **Subject:** | Request for Ruling on Phase 2 (Abatement) Deposition Issues |
| **Attachments:** | Young Depo Trx FINAL (20190514).pdf |

**EXTERNAL**

SM Cohen:

To provide a prompt response, I am providing plaintiffs' response below highlighted in yellow.

Pete

---

**From:** David Cohen <david@davidrcohen.com>
**Sent:** Thursday, February 3, 2022 9:10 PM
**To:** Fumerton, Tara A. <tfumerton@JonesDay.com>; David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law>
**Cc:** Peter H. Weinberger <PWeinberger@spanglaw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Kaspar Stoffelmayr <kaspar.stoffelmayr@bartlitbeck.com>; Delinsky, Eric <edelinsky@zuckerman.com>; Miller, Sasha <smiller@zuckerman.com>; Hynes, Paul B. <PHynes@zuckerman.com>; Majoras, John M. <jmmajoras@JonesDay.com>; Tabacchi, Tina M. <tmtabacchi@JonesDay.com>; fgallucci@pglawyer.com; Salvatore C. Badala <SBadala@napolilaw.com>; Hunter Shkolnik <hunter@napolilaw.com>
**Subject:** Re: Request for Ruling on Phase 2 (Abatement) Deposition Issues

Ps should please submit promptly a response email, and I will rule promptly as well.

========================
This email sent from:
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122
216-831-0001 tel
866-357-3535 fax
www.SpecialMaster.law

---

**From:** Fumerton, Tara A. <tfumerton@JonesDay.com>
**Sent:** Thursday, February 3, 2022 8:36 PM
**To:** David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law>
**Cc:** Peter H. Weinberger <PWeinberger@spanglaw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Kaspar Stoffelmayr <kaspar.stoffelmayr@bartlitbeck.com>; Delinsky, Eric <edelinsky@zuckerman.com>; Miller, Sasha <smiller@zuckerman.com>; Hynes, Paul B. <PHynes@zuckerman.com>; Majoras, John M. <jmmajoras@JonesDay.com>;

Tabacchi, Tina M. <tmtabacchi@JonesDay.com>; fgallucci@pglawyer.com <fgallucci@pglawyer.com>; Salvatore C. Badala <SBadala@napolilaw.com>; Hunter Shkolnik <hunter@napolilaw.com>
**Subject:** Request for Ruling on Phase 2 (Abatement) Deposition Issues

Dear Special Master Cohen,

The parties appear to have reached an impasse with respect to certain expert and fact depositions of plaintiffs' witnesses for the Phase 2 trial and the Pharmacy Defendants (CVS, Walgreens and Walmart) are writing to seek a ruling on these matters.

As you are aware, the Phase 2 CMO (Dkt 488) sets a deadline of February 15, 2022 for the Pharmacy Defendants to depose plaintiffs' Phase 2 expert witnesses and a deadline of March 1 to depose plaintiffs' Phase 2 fact witnesses.  The parties have reached an agreement with respect to the deposition of Dr. Burke (who is replacing Dr. Rosen), and that deposition is set for Feb. 11.  The parties have not, however, been able to reach an agreement with respect to depositions of plaintiffs' other expert and fact witnesses.  Each such witness is discussed below.

**Dr. Alexander**:  Dr. Alexander sets forth plaintiffs' purported abatement plan in his expert report dated April 16, 2021.  He was deposed for 5.5 hours in Track 3 concerning his opinions in that report that did not deal solely with abatement.  The pharmacy defendants specifically reserved 1.5 hours of their allotted 7 hours for his deposition to depose him concerning abatement issues if liability were found and the parties were to move to Phase 2.   Plaintiffs acknowledged this reservation of time, but have agreed to produce Dr. Alexander for a deposition on February 11, 2022 for 1 hour only, citing the fact that he was also deposed in the San Francisco opioid litigation.  *See* 1/26/22 Email from P. Weinberger to T. Fumerton (thread attached).  Only Walgreens (and not CVS or Walmart) are parties to that action and, more importantly, that deposition concerned the San Francisco abatement plan, not the purported plan for Lake and Trumbull Counties.  Thus, the Pharmacy Defendants request an order requiring plaintiffs to produce Dr. Alexander for a deposition on their purported abatement plan in this case for 1.5 hours.

In CT 3, we reached an agreement with the pharmacy defendants that Dr. Alexanders' deposition would be limited to 6 hours as to all aspects of his opinions.  Plaintiffs informed defendants that Dr. Alexanders' testimony in phase 1 would be limited to describing the nature and extent of the opioid epidemic in the two counties.  Nonetheless, defendants insisted on proceeding with his 6 hour deposition before the liability phase of the trial and deposed him extensively on his abatement plan. After 4 ½ hours of questioning, defendants suddenly terminated the deposition and stated that they were reserving rights to an additional 1 ½ hours.  Plaintiffs did not concede to this.  Dr. Alexander has submitted a similar abatement report in SF/CT 4 with the same categories of abatement.  He was deposed on January 19th for four hours and Walgreens participated in that deposition.  Frankly, the defendants should not be entitled to any more time because they used up their opportunity to depose him in CT 3 and had no right to reserve time that they did not use.  But plaintiffs are willing to compromise by offering the defendants an additional 1 hour which is more than reasonable under the circumstances.

**Dr. Young**:  Dr. Young submitted an expert report in Track 3, but because plaintiffs identified her as only opining on abatement issues her deposition was postponed until after the liability trial.  Dr. Young also submitted an expert report in Track 1 that, as plaintiffs' admit, is not identical to the one that she submitted in Track 1, but rather "mirrors in many respects her report in CT1."  *See* 1/26/22 Email from P. Weinberger to T. Fumerton (thread attached).  Pursuant to the June 25, 2020 Ruling Regarding Re-Deposition of Witnesses, Dkt 3349 (attached), the Pharmacy Defendants are entitled to 5.0 hours with Ms. Young.  Plaintiffs nevertheless refuse to produce her report is "moderately amended" and not "identical" to that of her report in Track 1.  Plaintiffs, nevertheless refuse to produce Dr. Young for more than 2 hours of deposition, citing the fact that she was deposed in CT 2, California, Rhode Island, Washington, and New Hampshire opioid litigations.  Plaintiffs further acknowledge, however, that CVS, Walgreens and Walmart were not parties to that other litigation.  The Pharmacy Defendants are entitled to both 5.0 hours of deposition time with Dr. Young and for plaintiffs to produce her other testimony and expert reports in other opioid litigation and request that the Special Master so order.

Dr. Young was deposed in CT 1 for a full 7 hours.  All three pharmacy defendants participated in that deposition.  The deposition was comprehensive.  In that deposition Dr. Young described the scope of her expertise as follows:

A. I am an expert in the social  policy issues related to children of parents with substance use disorders and specifically  how they relate to the child welfare system.
Q. Anything else?
 A. No. Those -- those are the areas of my expertise, how the treatment  system, the court system, and the child welfare system work together in different  models that address those issues for children  and parents that cross between those systems.  So family treatment courts, and various  models to put in place to assist families and children.

To give you a flavor of how extensive the deposition was, I have attached a copy to this email.

Her report provides her generic opinions on these issues and extrapolates them to Lake and Trumbull Counties.  The report is not defendant specific.  As is obvious from Ms. Fumerton's submission above, Dr. Young has been deposed multiple other times in opioid litigation.  It is clear therefore that her opinions and bases for the opinions have been fully explored, and all that is left for this case is for her to explain how the opinions apply to the CT 3 counties.  The two hours we have offered should be more than enough.  Anything more is unnecessary, unduly burdensome, and harassing.

**Ms. Fraser and Ms. Caraway** – Plaintiffs have stated that they intend to call both Ms. Fraser and Ms. Caraway to testify during Phase 2.  Both witnesses were deposed in Track 3, *but prior to the disclosure of* plaintiffs' purported abatement plan through Dr. Alexander's report.  The Pharmacy Defendants requested that Ms. Fraser be produced for a deposition for 2 hours on the morning of Feb. 28 and that Ms. Caraway be produced for a deposition for 2 hours on the afternoon of Feb. 28.   Plaintiffs indicated that did not see a need for either witness to be deposed.  The pharmacy defendants indicated that they would forgo those depositions if plaintiffs confirmed that neither Ms. Fraser or Ms. Caraway will testify about plaintiffs' abatement plan.  *See* 1/31/22 Email from T. Fumerton to P. Weinberger (thread attached).  Plaintiffs have not provided such confirmation and, thus, the pharmacy defendants ask that the Special Master order plaintiffs to produce each witness for 2 hours as requested.  Our questions will be limited to plaintiffs purported abatement plan and the implementation thereof—including the witnesses' involvement with and knowledge of the purported plan, its development, and approval. Again, these witnesses previously were deposed *before* plaintiffs disclosed their plan.

Ms. Fraser and Ms. Caraway have each been deposed for 14 hours. They were asked extensively about what their counties have done to deal with the opioid epidemic and the resources that have been used to do so.  Plaintiffs do not intend to have them comment on Dr. Alexander's report unless the defendants open the door.  They have read the report but will offer their own testimony about their perception of what their departments need to combat the epidemic.  Plaintiffs are not calling them as experts on abatement.  No further deposition is necessary or appropriate.

Thank you for consideration of these issues.

Tara

Tara A. Fumerton (bio)
Partner
JONES DAY® - One Firm Worldwide℠
77 West Wacker Drive
Chicago, IL 60601-1692
Office +1.312.269.4335
tfumerton@jonesday.com

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Peter H. Weinberger
Of Counsel
**Spangenberg Shibley & Liber LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
216-696-3232 Office
216-696-3924 Fax
PWeinberger@spanglaw.com | www.spanglaw.com

CONFIDENTIALITY NOTICE: The information in this e-mail, including any attachments, is for the sole use of the intended recipient(s), and may contain confidential and legally privileged communications. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this communication is strictly prohibited and may be unlawful, and could subject the unlawful user to civil and criminal penalties. Any unintended receipt should be reported to this sender immediately and all copies returned, deleted, and destroyed. TO OUR CLIENTS: Any dissemination of this communication to third-parties may be a waiver of the attorney-client privilege.

Peter H. Weinberger
Of Counsel
**Spangenberg Shibley & Liber LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
216-696-3232 Office
216-696-3924 Fax
PWeinberger@spanglaw.com | www.spanglaw.com



CONFIDENTIALITY NOTICE: The information in this e-mail, including any attachments, is for the sole use of the intended recipient(s), and may contain confidential and legally privileged communications. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this communication is strictly prohibited and may be unlawful, and could subject the unlawful user to civil and criminal penalties. Any unintended receipt should be reported to this sender immediately and all copies returned, deleted, and destroyed. TO OUR CLIENTS: Any dissemination of this communication to third-parties may be a waiver of the attorney-client privilege.

# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

~~~~~~~~~~~~~~~~~~~~

IN RE:  NATIONAL PRESCRIPTION   MDL No. 2804
OPIATE LITIGATION

Case No. 17-md-2804

Judge Dan Aaron

This Document Relates To:       Polster

The County of Lake, Ohio v.
Purdue Pharma L.P., et al.

Case No. 18-op-45032

The County of Trumbull, Ohio v.
Purdue Pharma L.P., et al.,

Case No. 18-op-45079

Track 3 Cases

~~~~~~~~~~~~~~~~~~~~

Remote videotaped deposition of
KIMBERLY FRASER

March 7, 2022
9:04 a.m.

Renee L. Pellegrino, RPR, CLR
(Appearing Remotely)

Page 12

1      Q.    Are you aware that the Plaintiffs'

2  abatement plan consists of the expert report

3  of Caleb Alexander that was dated April 16th,

4  2021?

5      A.    Yes, I am.

6      Q.    And have you reviewed

7  Dr. Alexander's expert report for Plaintiffs'

8  abatement plan?  And from this point forward

9  I'll try to refer to it as Plaintiffs'

10  abatement plan.  Does that work for you?

11      A.    Yes, it does.

12          MR. BADALA:  Objection to form.

13  Just I thought there was two questions in

14  there, but go ahead.

15      Q.    Have you reviewed Plaintiffs'

16  abatement plan?

17      A.    Yes, I have.

18      Q.    And can you open now envelope

19  number 1, please?

20      A.    Okay, I have it here.

21      Q.    And do you recognize that

22  document, Ms. Fraser?

23      A.    Yes, I do.

24      Q.    And is this the expert report of

25  Dr. Caleb Alexander dated April 16th, 2021?

Page 15

1   Probably more than two, probably less than

2   five.

3        Q.    When was the first time you

4   reviewed Plaintiffs' abatement plan?

5        A.    I don't recall exactly the first

6   time I saw it.

7        Q.    Was it before January 18th, 2022,

8   when it was submitted by Plaintiffs as their

9   abatement plan?

10        A.    No, I don't believe so.

11        Q.    So your recollection is that you

12   only reviewed Plaintiffs' abatement plan after

13   it was submitted as such?

14             MR. BADALA:  Objection to form.

15        A.    That's correct.

16        Q.    In other words, you did not review

17   Dr. Alexander's expert report prior to it

18   being submitted as Plaintiffs' abatement plan?

19        A.    To my recollection, no.

20        Q.    And who provided you with a copy

21   of the abatement plan?

22             MR. BADALA:  Kim, I just want to

23   be clear.  She's just asking who, not

24   discussions or anything to the extent it was

25   counsel, so I just want to make that clear.

Page 25

1   question.

2          Q.     Yeah.  I'm sorry.  Let me clarify.

3                 Have you spoken with any of your

4   colleagues at the ADAMHS Board about what

5   should be included or should have been

6   included in an abatement plan that was

7   submitted in this case?

8                 MR. BADALA:  Objection to form.

9          A.     No, I haven't; no.

10         Q.     Have you had any communications

11  with anyone else in any Lake County department

12  or agency regarding any programs or resources

13  that should be included in the abatement plan

14  in this case?

15         A.     No.

16         Q.     Have you had any communications

17  with any treatment providers in Lake County as

18  to what resources or programs should be

19  included in the abatement plan in this case?

20         A.     No.

21         Q.     Did you perform any analysis

22  regarding what should be included in any

23  abatement plan in this case?

24         A.     No.

25                MR. BADALA:  Objection to form.

1       Q.    To your awareness, did anyone

2   perform any analysis internal to Lake County

3   government or the ADAMHS Board regarding what

4   should be included in an abatement plan?

5       A.    To my knowledge, no.

6       Q.    Have you communicated with anyone

7   at the ADAMHS Board regarding the abatement

8   plan that was submitted to the Court?

9       A.    No.

10      Q.    Did anyone else at the ADAMHS

11  Board review the abatement plan?

12          MR. BADALA:  Objection to form.

13      A.    No.  To my knowledge, no.

14      Q.    To your knowledge, has anyone in

15  any Lake County department or agency reviewed

16  the abatement plan?

17      A.    I don't know.

18      Q.    Has any analysis been performed by

19  the ADAMHS Board regarding the abatement plan?

20      A.    No.

21      Q.    To your knowledge, has any

22  analysis been conducted by any Lake County

23  department or agency regarding the abatement

24  plan?

25      A.    I don't know.

1      Q.    Did you review Dr. Alexander's

2  abatement plan to consider whether certain of

3  those elements could not be implemented in

4  Lake County?

5      A.    In my review of the plan, there

6  was nothing that I thought could not be

7  implemented from my perspective.

8      Q.    Did you review it with an eye

9  towards whether implementation was possible?

10           MR. BADALA:  Objection to form.

11     A.    I reviewed it, yes, to see how it

12  could positively impact our county.

13     Q.    But you didn't conduct any

14  analysis or specific evaluation as to

15  whether -- as to any particular aspect of the

16  abatement plan, correct?

17     A.    I did not conduct an analysis.

18           MR. BADALA:  Objection to form.

19     Q.    I want to talk now about

20  individuals who are treated for OUD by the

21  service providers that work with the Lake

22  County ADAMHS Board.  And do I have it right

23  that the Lake County ADAMHS Board has

24  information on the number of individuals who

25  are treated by its service providers for OUD?

Page 43

1      Q.    And there was no discussion of the

2  abatement plan proposed by Plaintiffs in this

3  case at that meeting?

4      A.    There was not, no.

5      Q.    Now, turning back to the proposed

6  abatement plan, Plaintiffs' proposed abatement

7  plan, it's fair to say, Ms. Fraser, that Lake

8  County is already providing services or

9  programs in many of the areas covered by the

10 abatement plan?

11     A.    We are providing services and

12 supports in response to the opioid epidemic.

13 Some of those are reflective of the abatement

14 plan.

15     Q.    So there is some overlap between

16 the services and the programs that are

17 currently offered in Lake County and those

18 that are contained in the proposed abatement

19 plan; is that right?

20     A.    Yes, but the current services and

21 supports don't go as far, are not as

22 comprehensive and are not as holistic in the

23 approach as is outlined in the abatement plan.

24     Q.    What are some of the areas where

25 the services that are currently provided by

Page 44

1   Lake County are also contained in the

2   abatement plan to your recollection?

3        A.    Well, I think that through the

4   Lake County ADAMHS Board network we have

5   worked over the past two decades to be

6   responsive to the epidemic, and in that we

7   have developed medication-assisted treatment

8   programs; we have developed residential

9   treatment programs, intensive outpatient

10  programs; we've developed some programs in

11  conjunction with the criminal justice system;

12  we developed some programs in conjunction with

13  education.  But again, what we've been able to

14  do has not gone as far, has not been as

15  comprehensive, and has not been approached in

16  the holistic manner, as is outlined in the

17  abatement plan, that can more significantly

18  impact our community.

19       Q.    And have you actually tried to

20  evaluate how that suite of programs that you

21  just testified about, which I'm sure is not

22  everything, interacts with the programs and

23  services that Dr. Alexander is recommending?

24       A.    I've not done an evaluation of our

25  current continuum through the lens of the

Page 45

1    abatement plan, if that's what you're asking.

2         Q.    Yes, that was.  Thank you.

3              You just referenced your

4    residential treatment centers.  I'd just like

5    to follow up on some of your testimony from

6    your deposition.

7              So during that deposition you

8    testified that two residential treatment

9    facilities were under construction but had not

10   yet opened in Lake County.  Do you recall

11   that?

12        A.    From my deposition a year ago, a

13   little over a year ago, yeah, I recall that, I

14   believe.

15        Q.    And one of those was the Everett

16   Center?

17        A.    Yes.

18        Q.    Is the Everett Center now open?

19        A.    No, it is not.

20        Q.    It's still under construction?

21        A.    Correct.

22        Q.    And what about the residential

23   treatment facility that you testified about

24   that is to be operated by the Lake-Geauga

25   Recovery Center?

# EXHIBIT C

1          IN THE UNITED STATES DISTRICT COURT

2           FOR THE NORTHERN DISTRICT OF OHIO

3                   EASTERN DIVISION

4

5    IN RE: NATIONAL PRESCRIPTION   )

     OPIATE LITIGATION              )

6                                   )  MDL No. 2804

     THIS DOCUMENT RELATES TO:      )  Case No. 17-md-2804

7                                   )

     Track Three Cases              )

8

9

10

11

12

13

14       VIDEOTAPED DEPOSITION OF KIMBERLY FRASER

15             Conducted via Zoom

16             Painesville, Ohio

17          Monday, March 8th, 2021

18

19

20

21

22

23

24    REPORTED BY:  GREG S. WEILAND, CSR, RMR, CRR

25    JOB NO.:      4450197

Page 205

1            MS. LEYIMU:  Object to the form.

2            THE WITNESS:  I have not quantified that

3        because what we are in the business of doing is

4        creating and developing programs that are going

5        to respond to the community needs.

6            So we are continuously working to develop

7        programs, implement programs and protocols that

8        are going to have a positive impact on the

9        lives of the people that we serve, to the

10       extent that we're able to do that in the

11       current environment.

12   BY MR. FOTIADES:

13       Q.   You're not able to quantify the amount of

14   unmet need for treatment services in the county; is

15   that right?

16       A.   I -- we don't -- again, we're not in the

17   business of quantifying the unmet need.

18            We're in the business of building and

19   creating programs that meet the needs of our

20   community, that are responsive to our community.

21       Q.   Are there any programs that don't

22   currently exist but that you believe would benefit

23   Lake County residents with opioid abuse issues that

24   you would like to see the board invest in?

25       A.   Again, what we have -- we've been fluid

# EXHIBIT D

| | |
|---|---|
| **From:** | Peter H. Weinberger <PWeinberger@spanglaw.com> |
| **Sent:** | Friday, April 29, 2022 3:01 PM |
| **To:** | Miller, Sasha; Hynes, Paul B. |
| **Cc:** | Delinsky, Eric; Ruiz, Anthony; Majoras, John M.; Jeff Hall; Fumerton, Tara A.; Tabacchi, Tina M. (tmtabacchi@JonesDay.com); Kat Hacker; Hunter Shkolnik; Laura Fitzpatrick; Mildred Conroy; W. Mark Lanier (wml@lanierlawfirm.com); Salvatore C. Badala; 'FGallucci@pglawyer.com' |
| **Subject:** | RE: Kim Fraser and Burke Rosen report |

EXTERNAL

Sasha:

 In our witness disclosure, we stated as follows:  Ms. Fraser will testify in phase 2 about the current programs that Lake County has to deal with the opioid  epidemic and how those programs are inadequate to meet the needs of true abatement. She will testify how Dr. Alexander's plan fills the gaps in the needed abatement programs in the county.

That remains the case.  She will be in court when Dr. Alexander presents his abatement plan to the court.  She testified that she has read the Alexander report.  She will further  testify how the current Lake County programs are inadequate, that she relies on Dr. Alexander's expertise as to what an adequate program requires, and how Lake County does not provide the level of services that Dr. Alexander's programs describe.   That is not inconsistent with her testimony in the deposition.


Paul:

Burke Rosen has not prepared a red line of the report.  However,  before the deposition of Dr. Burke when we provided supplemental pages to the 4/16/2021 report, in the 4/22/2022 report itself, and in my latest email, we have provided specific detail how the 4/22/2202 report differs from the earlier report.   Burke Rosen has also made it easier for counsel to correlate what the data/reliance sources are for many of the charts in the 4/22/2022 report.  We have gone above and beyond to assist your review.


Pete


**From:** Miller, Sasha <smiller@zuckerman.com>
**Sent:** Wednesday, April 27, 2022 5:46 PM
**To:** Peter H. Weinberger <PWeinberger@spanglaw.com>; Mark Lanier <Mark.Lanier@LanierLawFirm.com>; Salvatore C. Badala <SBadala@NapoliLaw.com>; Frank Gallucci <FGallucci@pglawyer.com>
**Cc:** Delinsky, Eric <edelinsky@zuckerman.com>; Hynes, Paul B. <PHynes@zuckerman.com>; Ruiz, Anthony <ARuiz@zuckerman.com>; Majoras, John M. <jmmajoras@JonesDay.com>; Jeff Hall <jeff.hall@bartlitbeck.com>; Fumerton, Tara A. <tfumerton@JonesDay.com>; Tabacchi, Tina M. (tmtabacchi@JonesDay.com) <tmtabacchi@JonesDay.com>; Kat Hacker <kat.hacker@bartlitbeck.com>
**Subject:** Kim Fraser

Pete,

During her recent deposition in March, Ms. Fraser testified, for example:

Q:  Have you spoken with any of your colleagues at the ADAMHS Board about what should be included or should have been included in an abatement plan that was submitted in this case?
A:  No, I haven't; no.

Q:  Have you had any communications with anyone else in any Lake County department or agency regarding any programs or resources that should be included in the abatement plan in this case?
A:  No.

Q:  Have you had any communications with any treatment providers in Lake County as to what resources or programs should be included in the abatement plan in this case?
A:  No.

Q:  Did you perform any analysis regarding what should be included in any abatement plan in this case?
A:  No.

Fraser Tr. at 25.

Plaintiffs' witness list disclosure suggests that Ms. Fraser might offer testimony at trial regarding plaintiffs' abatement plan that deviates from her deposition testimony and / or is based on an evaluation of plaintiffs' abatement plan that she conducted after her deposition.  *See* Doc. 4353 at 2-3 ("[Ms. Fraser] will testify how Dr. Alexander's plan fills the gaps in the needed abatement programs in the county.").  Can you please confirm this is not plaintiffs' intent?  Thanks.

Sasha



**Sasha Miller**
**Zuckerman Spaeder LLP**
smiller@zuckerman.com

1800 M STREET NW, SUITE 1000 • WASHINGTON,  DC 20036-5807
202.778.1845 direct • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful.  If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

Peter H. Weinberger
Of Counsel
**Spangenberg Shibley & Liber LLP**
1001 Lakeside Avenue East, Suite 1700
Cleveland, Ohio 44114
216-696-3232 Office

216-696-3924 Fax
PWeinberger@spanglaw.com | www.spanglaw.com



CONFIDENTIALITY NOTICE: The information in this e-mail, including any attachments, is for the sole use of the intended recipient(s), and may contain confidential and legally privileged communications. If you are not the intended recipient, any disclosure, copying, distribution or use of the contents of this communication is strictly prohibited and may be unlawful, and could subject the unlawful user to civil and criminal penalties. Any unintended receipt should be reported to this sender immediately and all copies returned, deleted, and destroyed. TO OUR CLIENTS: Any dissemination of this communication to third-parties may be a waiver of the attorney-client privilege.

# EXHIBIT E

Page 1

1           IN THE UNITED STATES DISTRICT COURT
2            FOR THE NORTHERN DISTRICT OF OHIO
3                   EASTERN DIVISION
4
                ~~~~~~~~~~~~~~~~~~~~
5
6    IN RE:  NATIONAL PRESCRIPTION     MDL No. 2804
     OPIATE LITIGATION
7                                Case No. 17-md-2804
8                                    Judge Dan Aaron
     This Document Relates To:     Polster
9
10   The County of Lake, Ohio v.
     Purdue Pharma L.P., et al.
11
                                Case No. 18-op-45032
12
     The County of Trumbull, Ohio v.
13   Purdue Pharma L.P., et al.,
14                               Case No. 18-op-45079
15   Track 3 Cases
16
                ~~~~~~~~~~~~~~~~~~~~
17
18           Remote videotaped deposition of
                   APRIL CARAWAY
19
20
21                  March 7, 2022
                   11:34 a.m.
22
23
24           Renee L. Pellegrino, RPR, CLR
                (Appearing Remotely)
25

1      Q.    And you mentioned recommendations

2  from Dr. Caleb Alexander.  Is that set forth

3  in a particular document?

4      A.    Yes.

5      Q.    And what document?

6      A.    His abatement plan

7  recommendations.

8      Q.    Okay.  Why don't we look at these

9  envelopes and maybe that will help us narrow

10  this down.  Can you pull out envelope 1,

11  please?  And we're going to mark that as

12  Exhibit 1.

13      A.    Abatement plan for addressing the

14  opioid crisis in Lake and Trumbull County.

15                -    -    -    -    -

16            (Thereupon, Deposition Exhibit 1,

17            Abatement Plan for Addressing the

18            Opioid Crisis in Lake and Trumbull

19            County - Expert Witness Report of

20            G. Caleb Alexander, M.D., M.S.,

21            dated April 16, 2021, was marked

22            for purposes of identification.)

23                -    -    -    -    -

24      Q.    Well -- and my first question was

25  do you recognize this document?

1          A.     Yes.

2          Q.     And I think you described what the

3    title is.  Do you consider this document to be

4    the Trumbull County abatement plan?

5          A.     Yes.

6          Q.     When was the first time you saw

7    this document?

8          A.     Probably back in December.

9          Q.     And that was December of 2021?

10         A.     Yes.

11         Q.     And could you describe the

12   circumstances in which you first saw the

13   document?

14              MR. BADALA:  And just -- April, I

15   just want to give you an instruction, and the

16   question didn't ask for this, but any time you

17   have communications with attorneys, just not

18   to disclose any communications of what was

19   discussed with attorneys, okay?

20         Q.     Just a follow-up on that.  If it

21   was, you know, your attorney sent it to you,

22   that's a perfectly fine answer and I'm not

23   going to probe into the communications with

24   your attorneys, but I do want to understand

25   how you came into possession of the Trumbull

```
                                            Page 13
 1        A.    No, I didn't take any notes about

 2   it.

 3        Q.    Can you please open envelope 3,

 4   which I'm going to mark as Exhibit 2, just to

 5   make things complicated?

 6        A.    Okay.

 7                    -    -    -    -    -

 8              (Thereupon, Deposition Exhibit 2,

 9              Monument Analytics Trumbull County

10              Opioid Epidemic Abatement

11              Estimates, Last Updated April 14,

12              2021, was marked for purposes of

13              identification.)

14                    -    -    -    -    -

15        Q.    Do you recognize this document?

16        A.    No.

17        Q.    Do you think you've never seen it

18   before?

19        A.    I don't think so.

20        Q.    So, for the record, it's a

21   document that is titled "Monument

22   Analytics" -- well, in the left-hand corner it

23   says, "Monument Analytics Health Care

24   Consultancy," and then it says, "Confidential.

25   Do not distribute.  Trumbull County opioid
```

Page 14

1   epidemic abatement estimate.  Last updated:
2   April 14th, 2021."
3              Do you see that?
4       A.    I see that.
5       Q.    Does this document constitute
6   Trumbull County's abatement plan to your
7   knowledge?
8       A.    I've never read it so I don't
9   know.
10      Q.    Okay.  So going back to -- you can
11  set that aside for right now, but going back
12  to the expert report of Caleb Alexander, do
13  you understand everything that is in the
14  proposed abatement plan?
15             MR. BADALA:  Objection to form.
16      A.    I don't know what -- I mean,
17  understand?  I mean, I read it.  There's some
18  stuff in there that I'm not familiar with, you
19  know, some of the things that -- yeah.
20      Q.    So when you were reading it, were
21  there any questions that you had about it?
22      A.    I thought it was -- you know, it
23  looked like some good programs, and I -- I
24  wished we could do, you know, some of the
25  stuff in there that showed some good evidence

Page 18

```
 1              MR. BADALA:  Objection.  Asked and
 2    answered.
 3              Go ahead.
 4              THE WITNESS:  Sorry.
 5         Q.    Have you discussed Dr. Alexander's
 6    abatement proposal with anybody else besides
 7    attorneys?
 8         A.    No.
 9         Q.    Have you discussed it with anybody
10    at Trumbull County?
11         A.    No.
12         Q.    Are you aware of anybody at
13    Trumbull County that has reviewed
14    Dr. Alexander's abatement proposal?
15         A.    I'm not aware if anybody else has
16    reviewed it.
17         Q.    Are you aware of anybody at
18    Trumbull County that gave input into Dr. Caleb
19    Alexander's abatement proposal?
20              MR. BADALA:  Objection to form.
21         A.    I don't -- no, I'm not.  I mean, I
22    don't know who might have.  I don't know.
23         Q.    You don't know one way or the
24    other?
25         A.    Correct.
```

Page 42

1   it would be some slight of hand thing.  We do

2   contracts with agencies, with our Salvation

3   Army, with faith-based initiatives, to help

4   people get to recovery.  So it wouldn't be

5   anything outside of what we're already doing.

6        Q.    And so you are already doing those

7   programs; is that fair?

8        A.    We're doing -- my example is we're

9   doing those kinds of initiatives with private

10  sector, with grassroots agencies currently.

11  And if that was still the prosecutor's stance,

12  you know, I could see it going in that other

13  direction through one of the coalitions.  I'm

14  just saying I don't see -- your question was,

15  you know, would we not do that piece of it,

16  and my testimony is I don't see that as being

17  a barrier.

18       Q.    Have you done any type of analysis

19  to determine which portions of Dr. Alexander's

20  abatement plan the county is already

21  performing?

22       A.    No, I have not.

23       Q.    But by reading Dr. Alexander's

24  abatement plan, you recognize that a number of

25  his initiatives are already being performed by