# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Case No. 1:18-op-46326-DAP<br><br>THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS and THE STATE OF OHIO *EX REL.* MATHIAS H. HECK, JR., PROSECUTING ATTORNEY,<br><br>       Plaintiff,<br><br> vs.<br><br>CARDINAL HEALTH, INC. et al.,<br><br>       Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## Objection to Special Master's Ruling Regarding Track 7 Custodians

### Introduction

Moving Defendants[1] object to the Special Master's April 15, 2022 ruling declining to require Plaintiff Montgomery County to add three current or former DEA task force officers ("TFOs") as document custodians, as later explained and clarified by the Special Master on April 24, 2022 (Exhibit 1, the "Ruling"). Discovery in prior tracks has shown that TFOs are important witnesses with important documents, and Montgomery County has not provided any reason to think its own TFOs will be any different. The Ruling deviates from past discovery practice in the MDL, and the reasoning underlying the Ruling is erroneous. Moving Defendants therefore request that the Court sustain this objection and order Montgomery County to add the TFOs as custodians.

---

[1] Moving Defendants are The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II, Meijer, Inc., Meijer Distribution, Inc., and Meijer Stores Limited Partnership.

**Argument**

**I.    The TFOs' documents are relevant and important and should be produced.**

As the Court will recall, discovery from local TFOs was sought and provided in prior tracks. Montgomery County, by contrast, initially refused to even disclose whether any of its local law enforcement officers served as Drug Enforcement Agency (DEA) or High Intensity Drug Trafficking Area (HITDA) task force officers.[2] Montgomery County eventually disclosed this information only on January 14, 2022, after being ordered to do so.[3]

Discovery in prior MDL tracks showed that TFOs often have unique insights into drug enforcement priorities in their local geographic areas, including the most problematic drugs and the source(s) of those drugs. TFOs in those tracks, as opposed to other law enforcement personnel, were more directly involved and familiar with matters relating to alleged *prescription* drug diversion, as opposed to illicit drug issues. Thus, the TFOs' documents are likely to contain unique information regarding whether and to what extent retail pharmacies—and the Track 7 Defendants, in particular—had anything to do with the alleged diversion of prescription opioids in Montgomery County. The Track 7 defendants intend to depose all three TFOs and sought their availability for deposition more than a month ago. Having access to these TFOs' custodial files, before they are deposed, will enable the Track 7 Defendants to streamline those depositions, corroborate or challenge the TFOs' testimony if and when needed, and make the best use of everyone's time.

---

[2] The Ohio HIDTA website explains: "The mission of the Ohio HIDTA is to reduce drug availability by creating intelligence-driven task forces aimed at eliminating or reducing drug trafficking and its harmful consequences through enhancing and helping to coordinate drug trafficking control efforts among Federal, state, and local law enforcement agencies." *See* https://ohiohidta.net/ (*last accessed May 6, 2022*).

[3] Montgomery County labeled this correspondence "Contains Confidential Information; Subject to Protective Order." It also labeled the identity of a retired TFO as confidential. Moving Defendants accordingly are not filing this letter to the docket, but will provide a copy upon the Court's request. All exhibits hereto include redactions to conceal the identity of the retired TFO.

**II. The reasoning for not adding TFOs as custodians is erroneous.**

Montgomery County advanced, and the Special Master identified, several reasons for refusing to add TFOs as custodians. Each of those reasons is erroneous, and none excuses Montgomery County from its obligation to produce these highly relevant documents.

*A. The TFOs' custodial files are not likely to be duplicative.*

Montgomery County argues (without any substantiation) that adding TFOs as custodians is likely to duplicate discovery already provided from other Sheriff's Office personnel.[4] The Special Master similarly observed that the Track 7 Defendants already have many custodians from the Sheriff's Office, and explained "it is likely that another such custodian can testify to the main points," such as that Moving Defendants "were never the subject of a TFO investigation[.]" (*See* Ex. 1.) But prior discovery in earlier tracks showed that TFOs working with DEA have tended to focus more on *prescription drug diversion* than local law enforcement agencies. It is certainly relevant whether and how illicit drugs (as opposed to prescription drugs) contributed to the nuisance alleged by Montgomery County, and perhaps other custodians' documents will address illicit drug issues. But if discovery in Montgomery County follows the trend from earlier cases, it will be *TFOs* whose documents speak to whether and how, if at all, prescription drugs (generally), and/or the Track 7 Defendants (in particular), allegedly contributed to the nuisance alleged by Montgomery County. Indeed, it is not clear who else—from the Sheriff's Office, or otherwise—could provide firsthand, admissible testimony as to whether any Track 7 Defendant was (or was not) the subject of a TFO investigation.

---

[4] The briefing before the Special Master is submitted herewith. The Track 7 Defendants' motion is Exhibit 2, Montgomery County's opposition is Exhibit 3, the Track 7 Defendants' reply is Exhibit 4, and email correspondence regarding this dispute is Exhibit 5. The 125 pages of exhibits to Montgomery County's opposition included many pages that were marked Confidential, and Moving Defendants have accordingly removed those pages from Exhibit 3.

The Special Master speculated that another individual could speak to some of the points that would be elicited from a Montgomery County TFO at a deposition, but (1) it is hard to predict what those points would be without first seeing the TFOs' *documents*, and (2) the only question presented to the Special Master (and now presented to the Court) is whether those *documents* should be produced so that deponents can be identified and selected. Neither the Track 7 Defendants, nor the Special Master, nor the Court can predict whether the TFOs' documents will be duplicative—and Montgomery County, despite being uniquely able to substantiate that claim, has chosen not to do so, instead speculating that the files *may* be duplicative. The Track 7 Defendants obviously are not asking for a second copy of a document produced from another custodian's files, and Montgomery County need not produce the same documents a second time. Regardless, Montgomery County is not arguing that these documents *are* duplicative, but rather that they *may be* duplicative—*i.e.*, Montgomery County is speculating—and no one can really speak to whether these documents would be duplicative without first seeing them. Instead, all that can be shown is that TFOs tend to have unique, and uniquely relevant, documents.[5]

   B.  *It is irrelevant whether other defendants referred to TFO discovery in Track 3's trial.*

Montgomery County argued, and the Special Master noted, that no TFO discovery was utilized at the Track 3 trial. This is irrelevant for several reasons.

First, TFOs are likely to have relevant and important information regardless of whether they are called as trial witnesses, as confirmed by the fact that TFO discovery was cited in

---

[5] To the Special Master's point, Montgomery County can determine whether any of these TFOs had involvement with prescription drug diversion in general or any of the Track 7 Defendants in particular. The Track 7 Defendants do not have that insight, in part because they do not have access to the TFOs' documents. If Montgomery County wants to offer a stipulation—for example, that none of the TFOs ever dealt with alleged diversion from a Track 7 Defendant's pharmacy—that may help to narrow the issues in dispute. But to date, Montgomery County has made no such offer. Thus, the Track 7 Defendants are entitled to defend themselves with the discovery they seek.

4

dispositive briefing in prior tracks. *See*, *e.g.,* Walgreens Motion for Summary Judgment (Dkt. 1876-1) at 4 (citing Patrick Leonard and John Prince depositions).

Second, TFOs appeared on witness lists for both Track 1 and Track 3. (*See* Dkt. 2742 at 15 (Patrick Leonard), 18 (John Prince); Dkt. 3808-1 at 5 (Damian Blakeley).) No one can predict whether one or more TFOs would have been called during the Track 1 trial, had it gone forward; or in the Track 3 trial, had it not included time limits that may not be present in any eventual Track 7 trial. Again, though, the TFOs in earlier tracks had relevant and important documents, and those *documents* are the only issue now before the Court.

Third, it would be error to presume that Track 3 proceedings are precedential for this purpose in Track 7 in any event. The TFOs now at issue will have different documents than TFOs in other tracks, though their subject-matter likely will be similar. Moving Defendants were not part of Track 1 or Track 3, and accordingly had no input in trial strategy in either track. While it is not particularly helpful to speculate what might have happened under different circumstances, the fact remains that TFOs' documents were sought, produced, and relevant in prior tracks. There is no reason to believe anything would be different here, and the Track 7 parties can leave deponent and trial witness decisions for after the TFOs' documents have been produced, so that decisions can be made based on actual information and without the need for speculation. Finally, a defendant's defenses are often a product of the case a plaintiff chooses to present, and discovery from TFOs may therefore be even more important in responding to Montgomery County's claims than it was in prior tracks.

### III. The Court should sustain this objection.

Moving Defendants acknowledge that they requested formalization of the Special Master's email ruling four days late—after the three-day deadline for requesting formalization established

by the Court. *See* Dkt. 69. When formalization was sought, Moving Defendants had been working diligently to become familiar with years' worth of proceedings and rulings in this MDL, but they did not realize that the Court had issued an order in 2018 requiring a party who wishes to object to an informal email ruling to request formalization of that order within three days. *See id*. The Court established this deadline more than four years ago, before Montgomery County was a bellwether plaintiff and before Moving Defendants were on an active track. That order deviates from Rule 53 of the Federal Rules of Civil Procedure in terms of whether, when, and how a Special Master's rulings must be entered or objected to. *See* Rule 53(f)(2) (setting presumptive 21-day period for objecting to a Special Master's ruling). Perhaps for these reasons, the Special Master empathized with Moving Defendants on this issue and indicated Moving Defendants "can still appeal my ruling directly to the Court, and explain why you did not seek formalization" of the ruling within three days. (*See* Ex. 1.)

The 2003 Advisory Notes to Rule 53 explain that the time limits for objecting to a Special Master's orders "are not jurisdictional" and a "court may excuse the failure to seek timely review." In *Petties v. D.C.*, the court excused an "administrative error" that resulted in an objection being filed "three days late," noting that "[t]he timeliness requirement . . . is not absolute, as the Court retains discretion to excuse a party's failure to seek timely review." 291 F.R.D. 1, 3 (D.D.C. 2013). Moving Defendants ask that the Court excuse their four-days-late request for formalization, and consider and sustain this objection for four reasons.

First, as set forth above, Moving Defendants did not realize the Court had entered an order shortening the time to object to Special Master rulings. As in *Petties*, the delay was not due to any "bad faith or neglect." 291 F.R.D. at 3.

6

Second, the Special Master has explained the bases for the Ruling, and this objection is being made within 21 days of the Ruling itself. (*See* Ex. 1.) This is even sooner than contemplated under Dkt. 69, which calls for objections 24 days or more after an informal ruling.[6]

Third, and for the same reasons, Montgomery County will suffer no prejudice from the timing of this request. The request for formalization specifically noted that there was no conceivable prejudice to Montgomery County from the request, and Montgomery County never responded to the contrary.

Fourth, the issue at hand—discovery of documents from TFO custodians—will continue to come before the Court. All new bellwether defendants have sought to add TFOs as custodians, as was done in prior tracks and in light of the relevant and important documents found in their files. Defendants in Tracks 8 through 11 have requested TFOs as custodians, and it appears as if the plaintiffs in those cases will refuse to add them—particularly after the Ruling.[7] The defendants in those cases are not going to simply abandon this important source of information. Thus, a decision on this issue will have to be made; the only question is whether it will be made now, or in the near future. Moving Defendants respectfully submit that the most efficient way to deal with this issue is to address the Ruling now.

---

[6] Three days to request formalization, plus 21 days after formalization, is at least 24 days—and perhaps much longer, depending on how long the formalization process takes. *See* Dkt. 69 at 4-5.

[7] The Track 7 through 11 Defendants issued a request to DEA for various communications with the bellwether counties, as well, and DEA has not yet agreed to produce those documents (though discussions are ongoing). Montgomery County, meanwhile, has speculated that its own documents would be duplicative of whatever the DEA can produce (Ex. 3 at 8)—though Moving Defendants do not believe Montgomery County's speculation is correct. Regardless, if DEA refuses to produce these documents, that is another way in which this issue may quickly return to the Court.

**Conclusion**

For the foregoing reasons, Moving Defendants object to the Special Master's ruling declining to require Plaintiff Montgomery County to add three current or former TFOs as document custodians, as later explained and clarified by the Special Master on April 24, 2022. Moving Defendants ask that the Court consider and sustain this objection and order Montgomery County to add the three TFOs as document custodians in advance of their depositions.

Dated: May 6, 2022

Respectfully submitted,

*s/ Ronda L. Harvey*
Ronda L. Harvey Esq. (WVSB 6326)
Fazal A. Shere, Esq. (WVSB 5433)
Ashley H. Odell, Esq. (WVSB 9380)
Jennifer B. Hagedorn, Esq. (WVSB 315543)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia  25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
ahardestyodell@bowlesrice.com
jhagedorn@bowlesrice.com

*Counsel for Defendants The Kroger Co.,
Kroger Limited Partnership I, and
Kroger Limited Partnership II*

 */s/ Joseph M. Vanek (consent)*
Joseph M. Vanek, jvanek@sperling-law.com
Greg Shinall, shinall@sperling-law.com
David P. Germaine, dgermaine@sperling-law.com
Trevor K. Scheetz, tscheetz@sperling-law.com
Sperling & Slater, P.C.
55 West Monroe, Suite 3200
Chicago, Illinois 60603
(312) 641-3200 (p)
(312) 641-6492 (f)

*Counsel for Meijer, Inc., Meijer Distribution, Inc.,
and Meijer Stores Limited Partnership*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "**Objection to Special Master's Ruling Regarding Track 7 Custodians**" was served via the Court's CM/ECF system to all counsel of record via electronic filing on this 6th day of May 2022.

*/s/     Ronda L. Harvey*
Ronda L. Harvey (WVSB #6326)

13014306.1