MotleyRice®
ATTORNEYS AT LAW
www.motleyrice.com

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
o.  843.216.9000    f.  843.216.9450

**Lisa M. Saltzburg**
*Licensed in CO, SC*
direct:  843.216.9630
lsaltzburg@motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

March 14, 2022

<u>**CONTAINS CONFIDENTIAL INFORMATION; SUBJECT TO PROTECTIVE ORDER**</u>

<u>**VIA E-MAIL**</u>

Special Master David Cohen
Carl B. Stokes U.S. Courthouse
801 West Superior Avenue
Cleveland, OH 44113-1837
david@specialmaster.law

**Re:**   ***Montgomery County v. Cardinal Health, Inc., et al.*, Case No. 1:18-op-46326-DAP,
Defendants' Belated Attempt to Revive Custodian Dispute**

Dear Special Master Cohen:

    With the exception of the County's efforts to bend over backwards to accommodate Defendants still *further* on areas in which it had already compromised, the Parties find themselves back where they were when the County welcomed resolution of this dispute by the Special Master two months ago, but Defendants declined. The relevant procedural background, including the time consumed in seeking to confer with Defendants, who attempted to *expand*, rather than narrow the dispute following the January correspondence, and the prejudicial delay, is set forth below. Defendants' demand is both untimely and unwarranted, both as a matter of discovery burden and placing both officers and their families at risk, as stated more fully below.

    As relevant here, by the first time Defendants presented the Special Master with their request the County had included on its initial custodian list ***seven*** custodians from the Sheriff's Office alone, including multiple custodians who have been with that office since the 1990s. Not only was its over-generous custodian list designed to capture the relevant information, it had ***also*** committed to producing non-custodial files from the Sheriff's Office as well.  That is as many custodians on the County's list from this office as each Defendants' ***entire* new jurisdiction specific custodian** list. The County, contingent on good-faith cooperation by Defendants, by that point had agreed to add five additional custodians for a total of ***35***.  This exceeded the number of custodians agreed to by each Defendant in Track 7.  In fact, new Defendants Kroger and Meijer agreed to only 13 each and 18 respectively.

    Nevertheless, Defendants demanded three additional custodians sought when they previously raised this dispute former Sheriff Plummer, and a custodian from the courts and human services,

EXHIBIT
**3**



March 14, 2022
Page 2

respectively, along with the files of DEA/HIDTA task force members they sought at that time, for a total of six particular individuals at issue,. The County, hoping to resolve the matter and focus on its production, agreed to compromise by adding two more custodians, one each from the courts and Human Services, respectively), for a total of **37 custodians**, in addition to voluminous non-custodial sources. Defendants, rather than compromise, now seek four more custodians, all of which are from the already overrepresented Sheriff's Office.

As set forth below, Defendants offer nothing to justify adding to the already lopsided discovery in this case, in which the County is both collecting from nearly double the number of custodians as the new defendants and, on top of that, applying broader search terms than the Defendants. Instead, they claim entitlement to documents from an apex witness without satisfying the relevant standard. And, they mistakenly insist their bald claim of entitlement to files from officers whose safety concerns and law enforcement privilege add to the undue burden of discovery. This argument is both unavailing and especially unfounded given that the Defendants have not used the discovery from DEA/HIDTA task force members at trial. In fact, in Track 3 they did not use a single County-produced document at trial.

Finally, Defendants' request here is particularly burdensome given their delay, and tactics in connection with these particular requests, described further below, which should not be rewarded.

## I.     Procedural Background

The Parties conferred and exchanged correspondence last fall regarding each side's document custodians. As part of that exchange, the County sent Defendants a letter on December 17, 2021 discussing Defendants' custodian request in detail.[1] Defendants advised, the same day, that they would "review [the letter] and respond in due course."[2] Instead of doing that, however, Defendants delayed for three weeks and then, instead of responding to the County, raised before the Special Master what was, in effect, a motion to compel on January 7, 2022. The letter sought three things: (1) information about individuals in the Prosecutor's Office already contained in the December 17, 2021 letter; (2) identification of and discovery from DEA task force members, which Defendants baldly insisted was "critically relevant"; and (3) additional custodians claimed to be "persons with knowledge": namely, former Sheriff Plummer, a custodian from the court system (Defendants sought Mary Kay Stirling), and Tom Kelley from Human Services.

On January 14, 2022, the County responded, pursuant to the Special Master's directive, with delicate information about the task force members which the County is bound to keep confidential. The County also reiterated the information on the other topics from its December 17, 2021 letter, as Defendants had not disclosed that the County already had provided this information. Consistent with the request Defendants made, the County also briefed, as requested, the issue of why Defendants were

---

[1] *See* Ex. A, Letter from L. Saltzburg to Counsel for Defendants (Dec. 17, 2021).
[2] Ex. B, Email from J. Hagedorn to L. Saltzburg re: Montgomery County CT7 Custodians and Search Terms (Dec. 17, 2021).



March 14, 2022
Page 3

not entitled to the additional custodial files sought from the task force members, Sheriff Plummer, and others.[3]

A week later, on January 21, Defendants abruptly dropped their demand, informing the Special Master that they had (belatedly) responded by letter to the County directly. That same day, Defendants, five weeks after the County's December 17 letter, responded to that correspondence.[4] Although one would expect a dispute to narrow over time, Defendants instead made their position a moving target, dramatically expanding the custodians they sought.[5]

The County responded by letter, email and during a February 10 meet and confer, with both puzzlement and concern at the expanded list and clear position that Defendants had not justified their expansive requests, particularly from the Sheriff's office.[6] During the February 10 conference, Defendants asserted that they were seeking to add *thirteen* more custodians – an amount the size of new Defendants Kroger's and Meijer's entire respective lists, on top of the 5 added custodians about which the County proposed to compromise.[7]

The Parties continued to consume time and resources in conferences and correspondence. Although the County had been clear throughout that any willingness to add still more custodians was contingent on resolving the dispute, Defendants ultimately offered only an open-ended proposal in which they demanded six additional files, just as they had in January, and further reserved the right to seek to add still *more* custodians in their discretion.[8] In an effort to avoid diverting still further resources into this dispute and focus on its production, the County, while maintaining its position that 35 custodians is more than adequate, agreed to add Mr. Kelley as a custodian despite the marginal relevance discussed in January. The County also agreed to add as a custodian an individual from the Court system anticipated to have more relevant, non-privileged documents than the individual Defendants identified.[9] This brought the County's total list from 30 to 37 custodians.

Having received additional files from the areas, other than the Sheriff's Office, they sought before the Special Master in January, Defendants then proceeded to press for all four further Sheriff's Office custodians whose files they previously sought to compel. The County made clear on February 25 that its expanded list of 37 custodians was more than enough, and it would stand on that further

---

[3] *See* Ex. C, Letter from L. Saltzburg to Special Master Cohen (Jan. 14, 2022).

[4] *See* Ex. D, Letter from C. McLaughlin to L. Saltzburg (Jan. 21, 2022).

[5] *See id.*

[6] *See, e.g.,* Ex. E, Letter from L. Saltzburg to Defense Counsel (Feb. 7, 2022); Ex. F, February 22 e-mail chain (Feb. 15 message cautioning that any further negotiation "would entail few, if any additions" beyond the five added custodians to which the County previously agreed, particularly "at this stage, in which substantial time already has been consumed by serial responses to the same inquiries).

[7] *See* Ex. F.

[8] *See id.* Defendants may contend that they abandoned any request for custodians from the Prosecutor's Office. They did not, however, name any particular individual that they would have sought. Instead, they demanded information the County had already responded was impossible to provide, and confirmed last January did not exist. As such, this is something of a hollow concession.

[9] *See id.*



March 14, 2022
Page 4

accommodation of Defendants.[10] Defendants continued to ask the County to reconsider and then finally presented to the Special Master, in essence, the same dispute they had in January.

**II.     Argument**

**A.  Sheriff Plummer**

The Special Master had occasion to consider demands for apex custodians such as Sheriff's files in Track One, in which Defendants sought custodial files and depositions of high-ranking officials such as Steve Barry (Summit County Sheriff) and Ilene Shapiro (Summit County Executive). On September 15, 2018, the Special Master denied requests for those files and depositions, ruling that the Defendants "must first attempt to obtain information they seek from other sources."[11] Rejecting that demand was consistent with courts across the country, which declined to allow the depositions of high-ranking officials recognize the need to demonstrate "extraordinary circumstances" to support such a request. *See United States v. Morgan*, 313 U.S. 409 (1941); *EMW Women's Surgical Ctr., P.S.C. & Planned Parenthood of Indiana & Kentucky, Inc.*, No. 3:17-cv-00189-GNS, 2017 WL 3749889, at *2 (W.D. Ky. Aug. 30, 2017). "The extraordinary circumstances test may be met where the official has first-hand knowledge related to the claim being litigated *and where it is shown that other persons cannot provide the necessary information*[.]" *EMW Women's Surgical Ctr.*, 2017 WL 3749889, at *2 (emphasis added; quotation marks and citations omitted). *See also Turner v. City of Detroit*, No. 11-cv-12961, 2012 WL 4839139, at *2 (E.D. Mich. Oct. 11, 2012) ("*discovery is permitted only where it is shown that other persons cannot provide the necessary information*.") (emphasis added; citations omitted); Fed. R. Civ. P. 26(b)(2)(C)(i) ("[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]").

Here, Defendants do not even attempt to show extraordinary circumstances. They merely contend that Sheriff Plummer is one of many knowledgeable people. They premised their request for his file initially on the notion that he was among the individuals listed as persons with knowledge in a discovery request but was not already a custodian. That, of course, is not the standard. Indeed, if it were, Plaintiffs would have been entitled to have dozens of additional custodians in Track 7 and Track 3.[12] This MDL has proceeded on the understanding, however, that merely listing someone with knowledge in a discovery response is not grounds to add them to a custodial list.

---

[10] *See id.*

[11] Ex. G, E-mail from Special Master Cohen to Counsel for the Parties, Re: Agenda for the 9/17 discovery conference (Sept. 15, 2018).

[12] For example, in Walgreen's and CVS's Track 7 Interrogatory Responses 10 and 13, they listed far more individuals than they have proposed as custodians or that Plaintiff has required. *See*, Ex. H, Track 7 Interrogatory Responses from Walgreens and CVS dated September 15th and 22, 2021, respectively. In Track 3, CVS identified over 100 CVS employees plus unnamed individuals as trial witnesses, even though most of those witnesses were not Track 3 custodians. Similar



March 14, 2022
Page 5

Aware of this, Defendants stretch to find some bases for their request in two brief news articles. But, these only undermine their argument. One describes former Sheriff Plummer as accepting an award honoring the "Montgomery County Sheriff's Office" and highlight that the "sheriff's office employs the R.A.N.G.E. Task Force and Bulk Smuggling Task Forces" to combat drug trafficking.[13] The County is already producing both custodial and non-custodial documents related to both the R.A.N.G.E. Task Force and Bulk Smuggling Task Forces. Defendants offer nothing to suggest that these sources will not be more than adequate, particularly given that the custodians selected are expected to have more pertinent, non-duplicative documents than would a high-ranking officer.

Defendants cite another article, but it, like the first, offers nothing to suggest extraordinary circumstances. That article describes a single "roundtable" discussion in 2016 involving a number of "community leaders."[14] They fail to explain how this justifies their attempt to collect voluminous documents spanning many years. To the extent their entire request is premised on participation in a single event hosted by two U.S. Senators, it also raises concerns those in Track One regarding the privilege pursuant to Section 12, Article II of the Ohio Constitution's Speech or Debate Clause. Ohio courts have interpreted this clause as conferring a privilege that extends to matters under consideration, discussion, or debate by members of local governing bodies. *See Costanzo v. Gaul*, 62 Ohio St. 2d 106, 110, 403 N.E.2d 979, 983 (1980) ("We believe that the rule of absolute privilege may reasonably be applied to utterances made during the course of official proceedings by members of local governing bodies, at least where the statements relate to a matter under consideration, discussion or debate.").

As the Ohio Court of Appeals has explained:

It is well settled that absolute privilege applies to legislative proceedings, judicial proceedings, official acts of the executive offices of state or nation and acts done in the exercise of military naval authority.  Courts have extended absolute privilege to a statement made by a board of county commissioners relative to official acts of the county surveyor, to statements made by the mayor and chief of police of a village in connection with a tavern operator's request for renewal of a liquor permit, and to utterances made by members of local governing bodies during the course of official proceedings. Accordingly, we conclude that a communication made by law director of a village or municipality in his official capacity should be afforded an absolute privilege.

---

non-custodial trial witness disclosures were also made by the other Defendants.  *See*, Ex. I, Letter from Peter Weinberger November 23, 2020 to Special Master Cohen.
[13] https://dayton247now.com/news/local/sheriff-phil-plummer-honored-for-work-in-fight-against-opioid-epidemic
[14] https://www.portman.senate.gov/newsroom/press-releases/portman-and-turner-discuss-opioid-epidemic-dayton-community-leaders



March 14, 2022
Page 6

*Flynn v. Relic.*, No. 41404, 1980 WL 355035, at *4 (Ohio Ct. App. June 26, 1980) (internal citations omitted). This clause thus creates a testimonial privilege that applies to discovery inquiries concerning conduct related to the performance of an individual's official duties. *See, e.g., Dublin v. State of Ohio*, 742 N.E.2d 232, 237 (Ohio Ct. App. 2000) ("common law and the Ohio Constitution provide state legislators with an absolute privilege protecting them from having to testify about their legislative conduct"). *See also Tanner v. Gault*, 20 Ohio App. 243, 245, 153 N.E. 124, 124 (1925) (applying absolute privilege to statements made by county commissioners).

The request here is particularly unwarranted because unlike, for example, Ms. Shapiro, who was quoted in the Track One complaint concerning the epidemic's "staggering" toll,[15] former Sheriff Plummer is not similarly cited in the Track Seven pleading.

Moreover, the County's collection of Sheriff's Office files is undeniably expansive. There is no real dispute that the documents sought are likely to be duplicative and that the County appropriately selected non-custodial and custodial sources targeted to more than fully respond to Defendants' request. Indeed, Defendants would not eliminate even one of these custodians. They simply, and unreasonably, demand still more.

As explained at length to Defendants, the County has already agreed to seven custodians from the Sheriff's office, who cover the entire timeframe and breadth of relevant divisions.

| 1. | Terry | Ables | Captain - Range Task Force | 2005-present |
|----|-------|-------|----------------------------|--------------|
| 2. | Bruce | Langos | Criminal Intelligence Specialist | 2016-2019 |
| 3. | Matthew | Overholt | Detective - Range Task Force | 2013-current |
| 4. | Teresa | Russell | Jail Treatment Coordinator | 2017-now |
| 5. | Rob | Streck | Sheriff | 1996-now |
| 6. | Josh | Walters | Detective - Bulk Smuggling Task Force | 2004-now |
| 7. | Daryl | Wilson | Chief Deputy | 1991-now |

These individuals include three custodians for the Regional Agencies Narcotics & Gun Enforcement (R.A.N.G.E.) and the Miami Valley Bulk Smuggling Task Forces: Detective Josh Walters, Detective Matthew Overholt and Captain Terry Ables.

In the course of determining appropriate custodians, the County determined that former Sheriff Plummer is redundant and duplicative of still other Sheriff's Office custodians. The County included both the current Sheriff, Rob Streck and the deputy Sheriff, Daryl Wilson as custodians. Wilson has been with the Sheriff's Office since 1991, becoming Chief Deputy on January 1, 2019. Sheriff Streck joined the Montgomery County Sheriff's Office in 1996 as a Corrections Officer in the

---

[15] MDL 2804 Dkt. 513 ¶ 721.



March 14, 2022
Page 7

Jail Division. Later that year, Sheriff Streck was promoted to the rank of Deputy Sheriff served in the Operation Division as a patrol deputy in Harrison, Jefferson, and Washington Townships.  During this time, he served as a Field Training Officer for the Sheriff training new deputies. In 2002, he was assigned to the Montgomery County Regional Training Center as a full time law enforcement trainer. In 2003, Sheriff Streck was assigned as a detective in the Inspectional Services Unit, where he was responsible for conducting internal investigations for the Sheriff's Office and numerous other law enforcement agencies. Sheriff Streck also served Montgomery County as a member of the SWAT team during this period. In 2004, Sheriff Streck was promoted to the rank of Sergeant. As a Sergeant, he was assigned to the County Jail, Court Services, and the Inspectional Services Unit. During 2005 and 2006, he also served as the Sheriff's Office Accreditation Manager for the Commission on Accreditation for Law Enforcement Agencies (CALEA).  Sheriff Streck was promoted to the rank of Captain on October 13, 2006 and was assigned as the Assistant Division Commander of the Support Services Division. As the Assistant Division Commander he was tasked with overseeing the creation and implementation of the Regional Dispatch Center. In 2008, he was assigned as the Commander of the newly created Dispatch Center. He was promoted to the rank of Chief Deputy on January 1, 2013 where he oversaw the day-to-day operations of the Montgomery County Sheriff's Office. In October 2013, the Montgomery County Drug-Free Coalition was formally announced and he was appointed as the Assistant Director. Sheriff Streck is currently the Director of the Coalition." Sheriff Streck served as deputy Sheriff since 2013, before becoming the Sheriff in 2019.

In addition, the County is producing non-custodial files from both the Sheriff's Office and task forces.  The former include all responsive documents from the Montgomery County Drug Free Coalition, Accreditation, Budget-Finance, Public Records, Social Media, Training Center, and its databases, Spillman (jail incidents, 2019-2021), Tiburon (record management system and computer aided dispatch, 1996-2017, and jail incidents, 1996-2019)), and Motorola (record management system and computer aided dispatch, 2019-2021). The latter include producing non-custodial documents for the task forces, including Bulk Smuggling task forces monthly reports and statistics back to 2013, and RANGE task force operational plans, press releases, grants, and annual and quarterly reports.

## B. DEA/HIDTA Task Force Members

As the County previously explained, it has been informed that one of these individuals is engaged in ongoing highly sensitive under-cover operations which requires that his identity be protected and similarly the Sheriff's Office is not authorized to identify the other individual, who works on highly sensitive operations with the FBI. The County is subject to disclosure restrictions pursuant to a union contract for any officer who works in narcotics.  One officer is retired, and the County has confirmed that disclosure of his name is not subject to the same restrictions.

- Member #1 (on DEA/HIDTA task force 2012-2014): he currently works undercover for the Sheriff's Office and his identity is kept confidential to protect his safety.  He is not in the



March 14, 2022
Page 8

Sheriff's employee photo nor the employee yearbook and he is not identified by the Sheriff's office online.  This is to protect his safety and per union contract.

- Member #2 (on DEA/HIDTA task force 2014-2021): he currently works for the Sheriff's Office in anti-terrorism and is assigned to the FBI.  He is not in the Sheriff's employee photo nor the employee yearbook and he is not identified by the Sheriff's office online.  This is to protect his safety and per union contract.

- **CONFIDENTIAL:** Member #3 (on DEA/HIDTA task force 2010-2012): ████████ is retired from the Sheriff's office, and the County has confirmed that his name can be released.

Defendants have shown no basis to add as custodians DEA/HIDTA task force members to the already expansive custodian list from the Sheriff's Office. Their request for these files is duplicative and overbroad and unnecessarily places their officers at risk.

Notably, Defendants have yet to identify any specific information they believe these additional Sheriff's Office employees possess that is both needed and non-duplicative. They argue that they expect such individuals "often" have "unique insights" because of work with DEA, but this says nothing about their documents, nor is specific to *these* three people. If anything, seeking this discovery solely because of proximity to *DEA*'s "priorities" or information demonstrates that the discover sought is duplicative. .[16]Finally, the custodial files Defendants seek to add are also duplicative of third-party discovery in which they are engaged as well. On January 14, 2022, Defendants served a Notice of Subpoena on the DEA seeking all communications with the bellwether counties relating broadly, to "Prescription Opioids" in any of the bellwether jurisdictions, along with "[a]ll Documents relating to the misuse, diversion, abuse, addiction, overdose, or death from Prescription Opioids or Illicit Drugs in any of the Counties," among other requests.[17]

### III.   Conclusion

The Special Master previously rejected similar contentions as to apex witnesses and should do so again here. Defendants' request for three other Sheriff's Office custodians is equally unjustified and should also be rejected, particularly given Defendants' delay. Seven custodians from a single office is more than enough. This is particularly true, given that, in Track One, the parties were admonished, and even expected, to make due with "80 percent of what they need for this first trial." Dkt. 1059 at 52.

Respectfully,

---

[16] Defendants state they "share the concern about protecting the identities of law enforcement officers" but disclosure of their identities is inconsistent with that stated concern.
[17] Dkt. 441.

Case: 1:17-md-02804-DAP  Doc #: 4426-3  Filed:  05/06/22  9 of 9.  PageID #: 579399



March 14, 2022
Page 9


*/s/ Lisa M. Saltzburg*

Lisa M. Saltzburg

cc:    mdl2804discovery@motleyrice.com
       Alex Harris, alex.harris@bartlitbeck.com
       tracks6to10defendants@bbhps.com