# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No: 1:17-md-2804-DAP |
| **This document relates to:** | Honorable Dan Aaron Polster |
| *Town of Chapmanville v. West Virginia Board of Pharmacy, et al.,* Case No.1:17-op-45055 | |
| *The City of Williamson v. West Virginia Board of Pharmacy, et al.,* Case No.1:17-op-45057 | |
| *Town of Kermit v. West Virginia Board of Pharmacy, et al.,* Case No.1:17-op-45058 | DISTRIBUTOR DEFENDANTS' SUPPLEMENTAL RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND |
| *Town of Gilbert v. West Virginia Board Of Pharmacy, et al.,* Case No.1:17-op-45059 | |
| *The County Commission of Lincoln County v. West Virginia Board Of Pharmacy, et al.,* Case No.1:17-op-45060 | |
| *The County Commission of Mercer County v. West Virginia Board of Pharmacy, et al.,* Case No.1:17-op-45064 | |
| *City of Welch v. West Virginia Board Of Pharmacy, et al.,* Case No.1:17-op-45065 | |

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................... 1

ARGUMENT ........................................................................................................... 3

I.   COMPLETE DIVERSITY EXISTS IN THESE ACTIONS BECAUSE ALL OF THE WEST VIRGINIA DEFENDANTS ARE FRAUDULENTLY JOINED. ............... 3

    A.   Qualified Immunity and the Public Duty Doctrine Both Bar Plaintiffs' Claims against the Board of Pharmacy. ................................................... 4

        1.   Plaintiffs' Claims Are Barred by Qualified Immunity. ........................... 4

        2.   The Public Duty Doctrine Bars Plaintiffs' Claims against the Board of Pharmacy. ................................................................................... 9

        3.   The BOP's Insurance Policy Does Not Waive Its Immunity. ................. 11

        4.   Federal Courts Have Not Rejected the Application of Qualified Immunity or the Public Duty Doctrine to the BOP. ............................... 12

    B.   Plaintiffs' Claims against Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants are Barred by the MPLA's Pre-Suit Requirements. .......................... 14

II.   THIS COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO UNILATERALLY AMEND THEIR COMPLAINTS TO EVADE FEDERAL JURISDICTION. ......................................................................................... 20

CONCLUSION...................................................................................................... 23

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*A.D.A, As Next Friend of L.R.A., v. Johnson & Johnson*,
  2022 WL 636423 (N.D. W. Va. Feb. 15, 2022) .................................................................13

*Beavers v. DePuy Orthopaedics, Inc.*,
  2012 WL 1945603 (N.D. Ohio May 30, 2012)..................................................................19

*Bell v. Zurich Ins. Co.*,
  2016 WL 5118294 (N.D. Ohio Sept. 21, 2016).................................................................19

*Blankenship v. Ethicon, Inc.*,
  221 W. Va. 700 (2007) ......................................................................................................15

*Bridgepointe Condominiums, Inc. v. Integra Bank Nat'l Ass'n*,
  2009 WL 700056 (W.D. Ky. Mar. 13, 2009) ....................................................................22

*City of Cleveland v. Deutsche Bank Trust Co.*,
  571 F.Supp.2d 807 (N.D. Ohio 2008).........................................................................20, 21

*City of Marmet v. Hunter*,
  2018 WL 2263584 (W. Va. May 17, 2018) .......................................................................10

*Combs v. ICG Hazard, LLC*,
  934 F. Supp. 2d 915 (E.D. Ky. 2013) .........................................................................19, 24

*Coyne v. Am. Tobacco Co.*,
  183 F.3d 488 (6th Cir. 1999) ..........................................................................................4, 18

*Crouch v. Gillispie*,
  240 W.Va. 229 (2018) .......................................................................................................5, 6

*Cty. Comm'n of McDowell Cty. v. McKesson Corp.*,
  263 F. Supp. 3d 639, 645 (S.D. W. Va. 2017) ...............................................2, 16, 17, 19

*Fields v. Allied Van Lines, Inc.*,
  2021 WL 5181027 (W.D. Ky. Nov. 8, 2021) ....................................................................20

*Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*,
  491 F.3d 320 (6th Cir. 2007) ............................................................................................20

*Glover v. Kia Motors Am., Inc.*,
  2018 WL 1976033 (W.D. Tenn. Apr. 25, 2018).........................................................21, 22

*Harper v. AutoAlliance Int'l, Inc.*,
  392 F. 3d 195 (6th Cir. 2004) ...........................................................................................20

*Hess v. W. Va. Div. of Corr.*,
    227 W. Va. 15 (2010) ........................................................................................................12

*Holsten v. Massey*,
    200 W.Va. 775 (1997) ......................................................................................................10

*State ex rel. Hope Clinic, PLLC v. McGraw*,
    245 W. Va. 171 (2021) .....................................................................................................15

*Hupp v. Cook*,
    2017 WL 3392780 (S.D. W. Va. Aug. 7, 2017) ...............................................................12

*Jackson v. Cooper Tire & Rubber Co.*,
    57 F. Supp. 3d 863, 868 (M.D. Tenn. 2014).....................................................................19

*Jeffrey v. W.Va. Dep't of Pub. Safety*,
    198 W.Va. 609 (1996) ......................................................................................................10

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*,
    176 F.3d 904 (6th Cir. 1999) ...........................................................................................14

*Kramer v. United States*,
    2009 WL 2382940 (S.D. Ohio July 30, 2009)..................................................................20

*Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth.*,
    2008 WL 313957 (S.D. W. Va. Feb. 4, 2008) .................................................................12

*Osborne v. U.S.*,
    567 S.E.2d 677 (W. Va. 2002).........................................................................................16

*Osborne v. United States*,
    211 W. Va. 667 (2002) ...............................................................................................15, 16

*Parkulo v. W. Va. Bd. of Prob. & Parole*,
    199 W. Va. 161 (1996) .....................................................................................................10

*Pledger v. Lynch*,
    5 F.4th 511 (4th Cir. 2021) ..............................................................................................18

*Bd. of Educ. of Prince George's Cty. v. Mayor & Common Council of Town of Riverdale*,
    320 Md. 384 (1990) ..........................................................................................................11

*Pyles v. Mason Cty. Fair, Inc.*,
    239 W. Va. 882 (2017) .....................................................................................................10

*Randall v. Fairmont City Police Dep't*,
    186 W.Va. 336 (1991) ......................................................................................................10

*Roddy v. Grand Trunk W. R.R. Inc.*,
  395 F.3d 318 (6th Cir. 2005) ............................................................8

*Saginaw Hous. Comm'n v. Bannum, Inc.*,
  576 F.3d 620 (6th Cir. 2009) ............................................................3

*Scottsdale Ins. Co. v. Flowers*,
  513 F.3d 546 (6th Cir. 2008) ............................................................9

*State v. City of Bowling Green*,
  38 Ohio St. 2d 281 (1974)................................................................11

*Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*,
  654 F. App'x 218 (6th Cir. 2016) ....................................................20

*Va. Jail & Corr. Facility Auth. v. A.B.*,
  234 W. Va. 492 (2014) ......................................................................7

*Vanriper v. Loc. 14, Int'l Union United Auto., Aerospace & Agr. Implement
  Workers of Am.*,
  2015 WL 45533 (N.D. Ohio Jan. 2, 2015)........................................9

*W. Va. Bd. of Educ. v. Croaff*,
  2017 WL 2172009 (W. Va. May 17, 2017) ...............................7, 8, 11

*W. Va. Bd. of Educ. v. Marple*,
  236 W. VA. 654 (2015) .................................................................5, 11

*W. Va. Dep't of Env't Prot. v. Dotson*,
  244 W.Va. 621 (2021) ..................................................................5, 12

*W. Va. Dep't of Health & Hum. Res. v. Payne*,
  231 W. Va. 563 (2013) ...................................................................4, 7

*W. Virginia State Police v. Hughes*,
  238 W. Va. 406 (2017) ...................................................................7, 9

*Wells v. Certainteed Corp.*,
  950 F. Supp. 200 (E.D. Mich. 1997).................................................22

*Woodworth v. Time Warner Cable, Inc.*,
  2015 WL 6742085 (N.D. Ohio Nov. 2, 2015) .................................19

**Statutes**

28 U.S.C. § 1447..................................................................................20

W. Va. Code S. R. § 15-2-5 ..............................................................5, 6

West Virginia Medical Professional Liability Act, W. Va. Code § 55-7B, *et seq*. ............... *passim*

W. Va. Code § 60A-3-303 ...............................................................................................................8

Defendants McKesson Corporation, AmerisourceBergen Drug Corporation, and Cardinal Health 110, LLC (collectively "Distributor Defendants") respectfully submit this supplemental response to the remand motions filed in the seven above-captioned cases.  Distributor Defendants properly removed these seven actions on diversity grounds because each of the non-diverse West Virginia defendants was fraudulently joined in a transparent bid to evade federal jurisdiction.

## <u>BACKGROUND</u>

In 2017, Plaintiffs filed the seven above-captioned cases in West Virginia state court against Distributor Defendants and the West Virginia Board of Pharmacy ("BOP").  Four of the cases also named certain health care professionals and entities as defendants – Dr. Harold Anthony Cofer, Jr., Dr. Cameron Justice, Chip Rx, LLC (a local pharmacy) and George Chapman, III (a local pharmacist and the owner of Chip Rx, LLC) (collectively, the "Local Pharmacy Defendants").[1]  Distributor Defendants timely removed these cases to the Southern District of West Virginia on diversity grounds, alleging that the West Virginia BOP, Dr. Cofer, Dr. Justice and the Local Pharmacy Defendants were fraudulently joined and misjoined, and that their citizenship could thus be disregarded to preserve complete diversity.[2]

---

[1] Plaintiffs named the Distributor Defendants and the West Virginia BOP in all seven cases.  In four of the seven actions, Plaintiffs also named additional, non-diverse defendants: the City of Welch and Mercer County named Dr. Cofer; the Town of Kermit named Dr. Justice; and Lincoln County named the Local Pharmacy Defendants (Chip RX, LLC and George Chapman, III).

[2] Distributor Defendants no longer stand on their fraudulent misjoinder argument with respect to these seven cases.  Because W. Va. Code § 14-2-2(a) was amended in 2018 to permit actions against state agencies to be brought outside of Kanawha County, Distributor Defendants no longer assert that Plaintiffs' claims must be dismissed because they were filed outside of Kanawha County.  However, Distributor Defendants continue to stand on their fraudulent joinder argument.

Shortly thereafter, the U.S. District Court for the Southern District of West Virginia

denied a motion to remand a case raising a nearly identical issue of fraudulent joinder, which

was brought in West Virginia state court by McDowell County against Distributor Defendants

and Dr. Cofer, and was removed by Distributor Defendants on diversity grounds.  The court

found that the "procedural prerequisites for filing a medical malpractice claim" under the West

Virginia Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-6, including its

requirement that Plaintiffs serve a notice of their lawsuit and a screening certificate on the

defendant 30 days before filing a complaint, applied to McDowell County's claims against Dr.

Cofer.  *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 645 (S.D. W.

Va. 2017) (Faber, J.).  Because McDowell County "failed to comply with the requirements of

[the MPLA] before joining Dr. Cofer in this civil action . . . there is no possibility of recovery by

the plaintiff against Dr. Cofer in this civil action[.]"  *Id*.  Accordingly, the court ruled that Dr.

Cofer was fraudulently joined and dismissed him from the suit, creating complete diversity

among the parties.  *Id*. at 647.

Although Plaintiffs were aware of this decision, they nevertheless filed motions to

remand in the Southern District of West Virginia, raising many of the same arguments that were

made in *McDowell*.  The court allowed Distributor Defendants and plaintiffs to file a

consolidated opposition to remand and reply in support of remand, respectively.  *See*

Consolidated Opposition to Plaintiff's Motion to Remand ("Remand Opp."), *Cty. Comm'n of*

*Lincoln Cty. v. W. Va. Board of Pharmacy*, No. 1:17-op-45060 (N.D. Ohio Sept. 11, 2017), ECF

23; Consolidated Reply in Support of Motions to Remand ("Reply"), *Cty. Comm'n of Lincoln*

*Cty. v. W. Va. Board of Pharmacy*, No. 1:17-op-45060 (N.D. Ohio Oct. 2, 2017), ECF 25.

Briefing on remand in all seven cases concluded in October 2017.  In December 2017, prior to a

2

decision being issued by the Southern District of West Virginia, these cases were transferred to this Court.

On March 15, 2019, Plaintiffs filed amended complaints in these seven cases, pleading additional causes of action and joining a number of manufacturer, distributor, pharmacy, and individual defendants.  Among other defendants, Plaintiffs joined five Purdue Sales Representatives who were citizens of West Virginia: Mark Ross, Patty Carnes, Carol DeBord, Jeff Waugh, and Shane Cook (collectively, the "Purdue Sales Representatives").  *See, e.g.*, Lincoln Amended Compl. ¶¶ 96-100, *Cty. Comm'n of Lincoln Cty. v. W. Va. Board of Pharmacy*, No. 1:17-op-45060 (N.D. Ohio Mar. 15, 2019), ECF 45.

### ARGUMENT

The non-diverse Defendants in these actions are all fraudulently joined because Plaintiffs cannot state a colorable claim against them under West Virginia law.  Plaintiffs' negligence and nuisance claims against the West Virginia Board of Pharmacy ("BOP") are barred by both qualified immunity and the public duty doctrine.  Plaintiffs' claims against Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants – all of whom are "health care providers" within the meaning of West Virginia's MPLA – must also be dismissed for failure to comply with the pre-suit notice requirements of the MPLA.  Because post-removal amendments to join non-diverse Defendants cannot defeat diversity jurisdiction, moreover, this Court should deny Plaintiffs' proposed joinder of the Purdue sales representatives in their March 15, 2019 amended complaint.  The remand motions should thus be denied.

## I.   COMPLETE DIVERSITY EXISTS IN THESE ACTIONS BECAUSE ALL OF THE WEST VIRGINIA DEFENDANTS ARE FRAUDULENTLY JOINED.

"[F]raudulent joinder of non-diverse defendants will not defeat removal on diversity grounds."  *Saginaw Hous. Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009).  To

establish that a defendant was fraudulently joined, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). Here, Plaintiffs cannot state a claim under West Virginia law against any of the non-diverse West Virginia Defendants named in the original complaints in these seven actions: the BOP, Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants.

### A. Qualified Immunity and the Public Duty Doctrine Both Bar Plaintiffs' Claims against the Board of Pharmacy.

Central to Plaintiffs' theory of liability against the BOP is the allegation that the agency "was aware of, but opted to disregard" its duties to "determine whether [the distributors] ha[ve] provided effective controls against diversion" and "evaluate the overall security system and needs of the [distributors]." Lincoln Compl. ¶¶ 103-05 (ECF 1-1).[3]  Simply put, Plaintiffs allege that the BOP acted negligently as a state regulator.  But as West Virginia courts have affirmed, qualified immunity bars such negligence claims where, as here, Plaintiffs seek to impose liability on a state agency for exercising its regulatory discretion in overseeing licensing requirements for an industry.  Moreover, the public duty doctrine independently bars such claims in the absence of any special duty owed by the BOP to the Plaintiffs, which they have not alleged.

#### 1. Plaintiffs' Claims Are Barred by Qualified Immunity.

"In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency . . . with respect to the discretionary judgments, decisions, and actions" of that agency. *W. Va. Dep't of Health & Hum.*

---

[3] Plaintiffs plead identical allegations against the BOP and raise identical arguments with respect to the joinder of the BOP in all seven cases.  Rather than citing to the complaints and remand motions filed in each case, this brief references the complaint and remand motion filed in Lincoln County in discussing the fraudulent joinder of the BOP.  *See* Case No. 1:17-op-45060.

*Res. v. Payne*, 231 W. Va. 563, 572 (2013).  Plaintiffs do not dispute that the negligence and nuisance claims pled in their complaints challenge the BOP's exercise of its discretionary functions as a state regulator.  *See* Lincoln Remand Mot. at 5 (ECF 15); Remand Opp. at 19-20 (ECF 23).  To pierce the BOP's qualified immunity, Plaintiffs must plausibly allege a violation of "a clearly established statutory or constitutional right of which a reasonable person would have known[.]"  *W. Va. Bd. of Educ. v. Marple*, 236 W. VA. 654, 663 (2015).[4]  Furthermore, plaintiffs must plead allegations sufficient to show that the purported violation has a "causal relation to the ultimate injury."  *Crouch v. Gillispie*, 240 W.Va. 229, 237 (2018).  Plaintiffs cannot make either showing, because the only law that Plaintiffs allege the BOP violated is a regulation giving the agency broad discretion to determine whether, when, and how to investigate registrants such as Distributor Defendants.

Plaintiffs' claims fail at the outset because they cannot plausibly allege that the BOP's conduct "violated clearly established statutory or constitutional rights or laws of which a reasonable person would have known[.]"  *W. Va. Dep't of Env't Prot. v. Dotson*, 244 W.Va. 621, 630 (2021).  In prior briefing, Plaintiffs made clear that the only law that the BOP is alleged to have violated is a regulation providing that "[i]n order to determine whether a registrant has provided effective controls against diversion, the Board shall evaluate the overall security system and needs of the applicant or registrant."  W. Va. Code R. § 15-2-5.1.1; Lincoln Remand Mot. at

---

[4] Plaintiffs allege only two claims against the BOP: negligence (Count III) and public nuisance (Count VII).  Though styled as a separate cause of action, Plaintiffs' nuisance claim is derivative of their negligence claim, and relies on the same allegations. *Compare* Lincoln Compl. ¶162 (alleging that the BOP contributed to a public nuisance by failing to ensure that defendants had a "effective controls and procedures to guard against theft and diversion of controlled substances, and . . . a system to disclose suspicious orders of controlled substances"), *with id.* ¶ 128 (alleging that the BOP acted negligently in "failing to investigate Defendant Distributors in order to determine whether they had provided effective controls against diversion").

3-5; Reply at 8-9 (ECF 25).[5]  Plaintiffs argue that the BOP "fail[ed] to abide" by this regulation because it did not "investigate" or "inspect" the distributors to determine if they had implemented effective controls against diversion, even after receiving suspicious order reports. Lincoln Remand Mot. at 4-5; Lincoln Compl. ¶¶ 104, 128.  But the rule does not require the BOP to investigate, inspect, or use any particular method to "evaluate the overall security system and needs" of a registrant; nor does the rule specify when the BOP must conduct such an evaluation.  W. Va. Code S. R. § 15-2-5.1.1.  Similarly, the rule offers no guidance on what would constitute a failure to implement effective controls against diversion, or how the BOP should respond to such noncompliance.  *Id*.

As West Virginia courts have consistently affirmed, state agencies do not violate "clearly established" law by making discretionary decisions about whether, when, and how to address potential violations of broadly worded regulations like the BOP rules at issue.  In *Crouch v. Gillispie*, for instance, plaintiffs alleged that the Department of Health and Human Resources ("DHHR") violated agency rules requiring it to "interview as many [third parties] as needed to reach conclusions regarding the alleged abuse/neglect" of a child, because it only contacted two individuals who had knowledge of the child's home situation in the weeks before the child's death.  240 W. Va. at 236.  In upholding qualified immunity, the West Virginia Supreme Court explained that the "directive is riddled with discretion[,]" providing "no specific method that a CPS worker must use to investigate a home situation[,] . . . the length or timing of interviewing [third parties], or the lengths to which CPS workers must go to identify additional [third parties.]"  *Id*.

---

[5] Prior to 2018, this requirement was contained in W. Va. Code S. R. § 15-2-4, which is the provision cited in the prior remand briefing.  Since 2018, this requirement has appeared in W. Va. Code S. R. § 15-2-5.

In so holding, the West Virginia Supreme Court reinforced the straightforward principle that plaintiffs cannot overcome qualified immunity simply by alleging that "if the [state] defendants were doing their job properly, this [injury] would not have occurred." *Va. Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 516 n.33 (2014); *see* Lincoln Compl. ¶ 102 (alleging that "[i]f the BOP had done its job, the Defendant Distributors herein could not have undertaken such widespread and damaging conduct"). Under this well-established principle, for example, the Board of Education was entitled to qualified immunity for discretionary choices it made about how to repair a freezer in order to create a "reasonably safe" workplace required under W. Va. Code § 21–3–1, because the plaintiff "did not plead . . . any legal, statutory, or regulatory requirements as to the scope, nature, timing, or frequency of freezer inspection and maintenance." *W. Va. Bd. of Educ. v. Croaff*, 2017 WL 2172009, at *6 & n.2 (W. Va. May 17, 2017). Similarly, the State Police were protected by qualified immunity against negligence claims for failing to take in a person at risk of suicide and mishandling a subsequent search for his remains, where there was no "law requiring a State Police office assistant to transmit any particular information to a dispatcher[,]" or "governing the length of time or the method by which a State Police trooper must search a potential crime scene." *W. Virginia State Police v. Hughes*, 238 W. Va. 406, 413–4 (2017). Likewise, qualified immunity shielded the DHHR from liability for failing to inspect and uncover safety violations in a rehabilitation center, because "nothing in the regulations require[d] greater oversight or involvement in the day-to-day operations of the facilities than that occasioned by the bi-annual or licensure inspections." *W. Va. Dep't of Health & Hum. Res. v. Payne*, 231 W. Va. 563, 573–74 (2013). Here, as in those cases, the BOP rules at issue simply establish "a general requirement" to determine whether a registrant has effective controls against theft and diversion, and "lack[] the specificity necessary

7

to avoid application of qualified immunity for discretionary acts." *Croaff*, 2017 WL 2172009, at
*6 n.2.

Plaintiffs assert that the BOP behaved negligently in declining to "restrict, suspend or
revoke" the distributors' licenses to distribute controlled substances.  Lincoln Compl. ¶ 128.  In
deciding whether to license a prospective distributor, the BOP considers seven different, non-
exclusive factors—just one of which is whether the applicant maintains "effective controls
against diversion of controlled substances."  W. Va. Code § 60A-3-303(a)(1).  Plaintiffs do not
allege that the BOP failed to take these factors into consideration, but rather that the BOP made
the wrong decision in exercising its discretion to grant registrations to distributors.[6]  Under the
settled West Virginia law identified above, plaintiffs have failed to overcome BOP's entitlement
to qualified immunity for these discretionary regulatory decisions.

The state court's decision denying the BOP's motion to dismiss in *Brooke County* is not
persuasive authority to the contrary.  Order Denying West Virginia Board of Pharmacy's Motion
to Dismiss ("Brooke County Order"), *Brooke Cty. Comm'n v. Purdue Pharma, L.P.*, No. 17-C-
248 (Marshall Cty. Cir. Ct Dec. 28, 2018).  There, a West Virginia state trial court denied a
motion to dismiss arguing that claims against the BOP were barred by qualified immunity.  *See*
*id.* at 12 ("BOP's conduct as alleged in the Complaint violates clearly established laws.").
Thereafter, the BOP sought interlocutory review of the trial court's qualified immunity decision,
relying on the overwhelming West Virginia case law, discussed above, that a state agency
exercising discretionary authority is entitled to qualified immunity.  Then, in a transparent effort

---

[6] Having pled this specific theory of liability against the BOP in their complaints, Plaintiffs
cannot now recast their allegations for purposes of defeating removal.  *See Roddy v. Grand*
*Trunk W. R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (courts "look to the complaint *at the time*
*of removal* [to] determine whether the action was properly removed") (emphasis added)).

to avoid appellate review of the trial court's qualified immunity decision, the *Brooke County* plaintiffs voluntarily dismissed their claims against the BOP.  *See* Plaintiffs' Notice of Voluntary Dismissal of Defendants West Virginia Board of Pharmacy and David Potters, *Brooke Cty. Comm'n v. Purdue Pharma, L.P.*, No. 17-C-248 (Marshall Cty. Cir. Ct. Feb. 14, 2019).  This Court should thus not afford any weight to that decision.[7]

For all these reasons, plaintiffs' claim that the BOP negligently failed to perform its duties is barred by qualified immunity.

> 2.  The Public Duty Doctrine Bars Plaintiffs' Claims against the Board of Pharmacy.

The BOP was fraudulently joined for a second, independent reason:  Plaintiffs' claims against it are barred by the public duty doctrine because the BOP owed no duty to plaintiffs.[8]

Under the public duty doctrine, the "duty imposed upon a governmental entity is one owed to the general public, and unless the injured party can demonstrate that some special

---

[7] The plaintiffs in *Brooke County*, moreover, pled substantially different allegations and claims against the BOP than are at issue here, including a cause of action for malicious and intentional conduct.  Notice of Removal, Ex. 1, *Brooke Cty. Comm'n v. Purdue Pharma, L.P.,* 5:18-cv-00009 (N.D. W.Va. Jan. 18, 2018), ECF 1.  Among other things, the *Brooke County* plaintiffs pleaded and argued that the BOP should be stripped of qualified immunity because it acted fraudulently, maliciously, or oppressively.  At no point in the prior remand briefing, however, did Plaintiffs in these seven cases raise this argument; accordingly, it has been waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (issues raised for the first time in reply briefs are waived); *Vanriper v. Loc. 14, Int'l Union United Auto., Aerospace & Agr. Implement Workers of Am.*, 2015 WL 45533, at *9 (N.D. Ohio Jan. 2, 2015) (plaintiffs waived argument that was first raised in supplemental brief filed after reply).

[8] The *Brooke County* court held that the public duty doctrine did not shield the BOP from liability because plaintiffs "clearly allege[d] that the actions and conduct of the BOP were willful, reckless, intentional, malicious, wanton, and in bad faith."  Brooke County Order at 6-7. But the *only* exception to the public duty doctrine that West Virginia courts have recognized is one based on a special relationship between a plaintiff and a government entity. *See, e.g.*, *Hughes*, 238 W.Va. at 410 (discussing special relationship exception, without mentioning exception based on reckless or intentional conduct, where plaintiffs alleged police "negligently or recklessly breached a duty to protect" a suicidal family member).  The *Brooke County* court erred as a matter of law in holding otherwise.

relationship existed between the injured person and the allegedly negligent entity, the claim is barred." *Jeffrey v. W.Va. Dep't of Pub. Safety*, 198 W.Va. 609, 614 (1996). Thus, "[a] governmental entity is not liable because of its failure to enforce regulatory or penal statutes." *Parkulo v. W. Va. Bd. of Prob. & Parole*, 199 W. Va. 161, 178 (1996). Instead, "only the breach of a duty owed to the particular person injured is actionable." *Randall v. Fairmont City Police Dep't,* 186 W.Va. 336, 346 (1991).

Here, Plaintiffs' claims against the BOP turn on the alleged breach of a duty to "oversee[] and enforc[e]" regulations purportedly requiring distributors to maintain "effective controls against diversion." Lincoln Compl. ¶¶ 101, 104; Lincoln Remand Mot. at 3-4. This is precisely the type of "duty imposed upon a governmental entity [that] is . . . owed to the general public," and not to a specific individual. *Pyles v. Mason Cty. Fair, Inc*., 239 W. Va. 882, 887 n.9 (2017).

Plaintiffs, moreover, failed to allege or identify any special relationship between themselves and the BOP, as required. *See* Lincoln Remand Mot. at 7; Reply at 5-7 (failing to address special relationship exception).[9] For this additional reason, Plaintiffs' negligence and derivative public nuisance claims are barred by the public duty doctrine. *See Holsten v. Massey*,

_____

[9] Plaintiffs notably failed to allege any special relationship in their complaints. *See* Remand Opp. at 15 n.7. In any event, Plaintiffs would not be able to satisfy the requirements for the special relationship exception, which include: (1) an assumption by the state governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the state governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the state governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the state governmental entity's affirmative undertaking. *Parkulo*, 199 W. Va. at 164; *see also* Remand Opp. at 15 n.7. Plaintiffs have "not presented any facts supporting an assumption of duty" by the BOP to act on their behalf; any evidence that the BOP had "knowledge that inaction could lead to [plaintiffs'] harm"; or any "direct contact" between plaintiffs and the BOP that could support "justifiable reliance" on the BOP's oversight. *City of Marmet v. Hunter*, 2018 WL 2263584, at *3 (W. Va. May 17, 2018) (public duty doctrine barred negligence claim against city for alleged failure to investigate 911 distress call, where plaintiff failed to provide any evidence of a special relationship).

200 W.Va. 775 (1997) (public duty doctrine barred negligence claims based on county's alleged failure to investigate drunk driver and revoke his license).

Plaintiffs argue that the public duty doctrine does not apply to political subdivisions like municipalities.  Lincoln Remand Mot. at 6-7; Reply at 5.  But the Maryland and Ohio state court decisions they cite do not apply West Virginia law and do not suggest that a municipality can pierce the immunity of a state agency.  Reply at 6.  Rather, the cases stand for the very different proposition that a municipality may not assert sovereign immunity when sued by the state.  *Bd. of Educ. of Prince George's Cty. v. Mayor & Common Council of Town of Riverdale*, 320 Md. 384, 390 (1990); *State v. City of Bowling Green*, 38 Ohio St. 2d 281, 285 (1974).  In short, Plaintiffs have identified no authority—let alone any West Virginia authority—supporting their contention that the public duty doctrine does not apply to cases brought by local governments.

3.     The BOP's Insurance Policy Does Not Waive Its Immunity.

"The fact that a plaintiff seeks recovery against a state agency and/or its official 'under and up to the limits' of its liability insurance policy does not waive" statutory or common law immunity defenses.  *W. Va. Bd. of Educ. v. Marple*, 236 W. va. 654, 662 (2015).  Rather, such immunities are "waived by an insurance policy only if the policy's terms expressly say so."  *Id*.  Here, the insurance policy that covered the BOP during the relevant period clearly barred the agency from waiving any immunity defenses without the consent of the insurance company.  Remand Opp., Ex. 1 at 24 ("No 'insureds' shall, except at their own cost, voluntarily make a payment, assume any obligation, waive any statutory or common law immunity, or incur any expense, other than for first aid, without the consent of the Company.").  Plaintiffs do not allege that the insurance company has consented to such a waiver.  Accordingly, the BOP has not waived its immunity.  *See Croaff,* 2017 WL 2172009, at *4 (no waiver of qualified immunity

where insurance policy made it a condition precedent of coverage that the insured "not waive any statutory or common law immunities conferred upon it").

Contrary to Plaintiffs' assertion, no additional discovery is necessary to determine whether any of the BOP's insurance policies waived its immunity defenses.  Reply at 7-8. Plaintiffs plead no facts that would create "a bona fide dispute" as to whether the applicable insurance policies waived the BOP's common law immunities.  *Dotson*, 244 W.Va. at 627.  Nor could they.  All of the insurance policies that covered state agencies like the BOP during the relevant period are available online, and each contains an identical provision barring the insured from waiving any immunity without the consent of the insurer.[10]  Courts presented with similar insurance policies have routinely dismissed claims on the basis of qualified immunity and the public duty doctrine.  *See Hupp v. Cook*, 2017 WL 3392780, at *4 (S.D. W. Va. Aug. 7, 2017); *Lavender v. W. Va. Reg'l Jail & Corr. Facility Auth*., 2008 WL 313957, at *9 (S.D. W. Va. Feb. 4, 2008) (no waiver where insurance policy stated "[i]t is a condition precedent of coverage under the policies that the additional insured does not waive any statutory or common law immunity conferred upon it"); *Hess v. W. Va. Div. of Corr*., 227 W. Va. 15, 20 (2010) (insurance policy attached to motion to dismiss established that it "does not waive the Appellant's qualified immunity").  This Court should reach the same result.

        4.    <u>Federal Courts Have Not Rejected the Application of Qualified Immunity or the Public Duty Doctrine to the BOP.</u>

---

[10] *See, e.g*, Municipality and Other (SB3) Liability Policy, *available at* https://brim.wv.gov/policies/Documents/2006%20Policies/Municipality%20and%20Other%20(SB3)%20Liability%20Policy.pdf.  This Court may properly consider these insurance policies without conducting discovery, because the policies are "both integral to and explicitly relied on in" plaintiffs' complaints, and there is no dispute as to their authenticity.  *Hupp*, 2017 WL 3392780, at *4 n.5.

Although the federal district court for the Northern District of West Virginia has granted motions to remand in two diversity-removed cases that named the BOP as a local defendant, those decisions are distinguishable.  In *Brooke County*, Distributor Defendants removed an action brought by West Virginia municipalities on diversity grounds, alleging that manufacturers, manufacturer sales representatives, health care professionals, and the BOP were all fraudulently joined and misjoined.  Notice of Removal, *Brooke Cty. Comm'n v. Purdue Pharma, L.P.*, 5:18-cv-00009 (N.D. W.Va. Jan. 18, 2018), ECF 1.  In granting the plaintiffs' motion to remand, the court held that certain West Virginia sales representatives for the manufacturers were proper parties to the case.  Because the presence of the sales representatives destroyed complete diversity, the court did not reach the question whether the BOP or certain doctors were improperly joined.  Order Granting Plaintiffs' Emergency Motions to Remand at 17 & n.5, *Brooke Cty. Comm'n v. Purdue Pharma, L.P.*, 5:18-cv-00009 (N.D. W.Va. Feb. 23, 2018).  Thus, the court did not have occasion to address the merits of the Distributor Defendants' argument that the BOP was fraudulently joined because plaintiffs' claims were barred by qualified immunity and the public duty doctrine.

Similarly, in *A.D.A, As Next Friend of L.R.A., v. Johnson & Johnson*, 2022 WL 636423 (N.D. W. Va. Feb. 15, 2022), the same court held that the BOP was not fraudulently *misjoined*, and was thus a proper party.  However, the court's decision failed to address two other grounds for removal: the argument that the BOP had also been fraudulently joined because it was entitled to qualified immunity against the plaintiffs' claims; and the argument that the court had bankruptcy jurisdiction over the action due to the potential impact of the plaintiffs' claims on the Purdue bankruptcy estate.

13

Thus, West Virginia federal courts have yet to address whether qualified immunity and the public duty doctrine shield the BOP from liability against claims like the ones at issue here. However, the overwhelming weight of West Virginia state law discussed above establishes that the BOP is entitled to qualified immunity against Plaintiffs' claims.

### B. Plaintiffs' Claims against Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants are Barred by the MPLA's Pre-Suit Requirements.

In addition to the BOP, certain plaintiffs have named a handful of West Virginia health care professionals as defendants:  Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants (Chip RX, LLC; and George Chapman, III).  Because Plaintiffs failed to satisfy the pre-suit notice requirements of West Virginia's MPLA before filing claims against these health care professionals, Plaintiffs did not state a colorable state-court claim against any of these defendants. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). They have thus been fraudulently joined, and their citizenship must be disregarded. *Id*. at 908-09.

To determine if a defendant was fraudulently joined, a court asks whether the plaintiffs would have a viable cause of action against that defendant in the state court where the claim was originally brought. *Id*. at 907 ("Under the doctrine of fraudulent joinder, the inquiry is whether JDI had at least a colorable cause of action against North Brothers in the Michigan state courts.").  Thus, federal courts apply the law of the state where the action was filed in assessing the colorability of the plaintiff's claims. *Id*. (applying Michigan law).

Here, this Court must decide whether Plaintiffs' claims against Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants would have survived dismissal under West Virginia law if they had not been removed.  This necessarily includes determining whether Plaintiffs complied with West Virginia's MPLA, which requires Plaintiffs who file "medical professional liability"

actions against health care providers to provide pre-suit notice of their claims, or face dismissal. W. Va. Code §55-7B-6(b) to (h); *see also* Remand Opp. at 26-28.

As the West Virginia Supreme Court recently confirmed, "[t]he pre-suit notice requirements contained in the West Virginia Medical Professional Liability Act are jurisdictional, and failure to provide such notice deprives a circuit court of subject matter jurisdiction." *State ex rel. Hope Clinic, PLLC v. McGraw*, 245 W. Va. 171, 179, (2021). The MPLA requires plaintiffs to provide pre-suit notice of claims for medical professional liability against health care providers, including doctors, pharmacists, and pharmacies. W. Va. Code §55-7B-6(b) to (h). Plaintiffs do not dispute that no such notice was given in these cases. Remand Opp. at 28.

The MPLA provides that, at least 30 days before filing a "medical professional liability action against a health care provider," a "claimant" must serve "a notice of claim on each health care provider the claimant will join in litigation[.]" . W. Va. Code §55-7B-6(b). The notice must contain a statement of claims, a list of all health care providers to whom such notices are being sent, and a "screening certificate of merit" executed under oath by a health care provider. *Id.* The MPLA governs any case "where the allegedly offensive action was committed within the context of the rendering of 'health care.'" *Blankenship v. Ethicon, Inc.*, 221 W. Va. 700, 707 (2007). The MPLA likewise applies to claims filed by third-party non-patients as well as patients. *Osborne v. United States*, 211 W. Va. 667, 675 (2002).

Plaintiffs do not deny that Dr. Cofer, Dr. Justice and the Local Pharmacy Defendants are "health care provider[s]" within the meaning of the MPLA. *See* W. Va. Code § 55-7B-2(g) (defining "health care provider" to include any "person, partnership, corporation, professional limited liability company, health care facility, entity or institution" licensed "to provide health

care or professional health care services," including but not limited to "a physician" or "pharmacist"); Remand Opp. at 27; Reply at 13-15.  Nor do Plaintiffs dispute that the claims against these defendants seek to impose "medical professional liability," which includes "any liability for damages resulting from the death or injury of a person for any tort or breach of contract based on health care services rendered, or which should have been rendered, by a health care provider or health care facility to a patient."  W. Va. Code § 55-7B-2(i).  And Plaintiffs have not claimed that they served pre-suit notice of their claims on these defendants.  Reply at 13-15.

Instead, Plaintiffs argue that municipalities are not "persons" within the meaning of § 55-7B-6(a), which states that "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section."  Reply at 13-14; Remand Opp. at 28.  But the MPLA's pre-suit notice requirement expressly applies to "claimant[s]," and not just "person[s]."  § 55-7B-6(b); Remand Opp. at 29.  The fact that the MPLA refers to both "person[s]" and "claimant[s]" does not limit its application to the former, particularly since the provisions describing the contents of the required pre-suit notice all use the word "claimant."  § 55-7B-6(b)-(i).[11]

A West Virginia federal court has already considered – and rejected – plaintiffs' argument in a case raising a nearly identical issue of fraudulent joinder, which was removed by Distributor Defendants on the same grounds presented here.  *See McDowell*, 263 F. Supp. 3d at

---

[11] Plaintiffs also mischaracterize *Osborne v. U.S.,* 567 S.E.2d 677, 684 n.9 (W. Va. 2002), in arguing that "the word 'person' in the MPLA refers to individuals rather than to . . . governmental entities."  Reply at 14.  In *Osborne*, the court was asked to interpret a provision of the MPLA that defined "[m]edical professional liability" to mean "liability for damages resulting from the ***death or injury of a person*** for any tort or breach of contract based on health care services rendered[.]"  W. Va. Code § 55-7B-2(i) (emphasis added); Remand Opp. at 29.  That case did not address the meaning of "claimant," which as discussed in text is the operative language governing the pre-suit notice requirement.

644 (Faber, J.).  There, McDowell County argued that the MPLA's pre-suit requirements did not apply to its claims against Dr. Cofer because the term "'person' in the MPLA refers to individuals rather than to corporate or governmental entities[.]'"  Transcript of March 28, 2017 Motions Hearing at 5-6, *Cty. Comm'n of McDowell Cty. v. McKesson Corp.*, 1:17-00946 (S.D. W. Va. Mar. 30, 2017), ECF 56.  The court declined to adopt that argument, holding instead that there was "no possibility of recovery" against Dr. Cofer because McDowell County "failed to comply with the requirements of [the MPLA] before joining Dr. Cofer in this civil action." *McDowell*, 263 F. Supp. 3d at 645.  The court thus found that Dr. Cofer was fraudulently joined and dismissed him from the suit.  *Id.* at 647.

The same result is warranted here.  Because there is no possibility that Plaintiffs can overcome their failure to comply with the MPLA's pre-suit requirements in this case, *id.* at 645, this Court should likewise find that Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants were fraudulently joined.

The Sixth Circuit's decision in *Albright v. Christensen* does not compel a different result. 24 F.4th 1039, 1048 (6th Cir. 2022).  In *Albright*, the plaintiff filed a diversity action in federal district court, pleading a negligence claim under Michigan law against a doctor whose treatments allegedly worsened her opioid addiction.  *Id.* at 1042–43.  The defendant doctor moved to dismiss under Rule 12(b)(6), on the grounds that the plaintiff failed to satisfy the affidavit-of-merit and pre-suit notice requirements for bringing medical malpractice claims under Michigan law.  *Id.*  Thus, the pertinent question was whether the plaintiff needed to satisfy the additional, pre-suit obligations imposed by Michigan law in order to commence and proceed with a medical malpractice action ***in federal court***.  The Sixth Circuit found that Michigan's pre-suit requirements conflicted with the Federal Rules, which allow an action to be commenced by

filing a complaint that contains only a short and plain statement of a claim.  *Id*. at 1045-46 (citing *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co*., 559 U.S. 393, 421-25 (2010)).  In holding that Michigan's pre-suit requirements were preempted by the Federal Rules, the Sixth Circuit expressed concern that a state might otherwise be able to "create any pleading requirement it chose and label it a notice requirement, and it would apply in federal court."  24 F.4th at 1048.[12]

Here, by contrast, applying West Virginia's MPLA for purposes of the fraudulent joinder inquiry will not trigger a conflict with the Federal Rules.  While the *Albright* court was ruling on a motion to dismiss a case ***filed originally in federal court***, this case presents the different issue of whether claims filed ***in state court*** against health care professionals must comply with the pre-suit notice requirements of West Virginia's MPLA.  Thus, the only question before the Court here is whether there is a "colorable basis" for plaintiffs to recover from the non-diverse defendants ***in state court***.  *Coyne v. Am. Tobacco Co*., 183 F.3d 488, 493 (6th Cir. 1999).

On the one hand, if this Court holds that Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants were fraudulently joined, they will be dismissed from this suit entirely, and further

---

[12] Similarly, the Fourth Circuit has held that the pleading standards in the Federal Rules preempted the pre-suit obligations of West Virginia's MPLA in a FTCA action that was filed in federal district court.  *Pledger v. Lynch*, 5 F.4th 511, 519 (4th Cir. 2021) ("[W]e conclude that the Federal Rules governing the sufficiency of pleadings likewise answer the 'question in dispute' here, and thus supplant West Virginia's certificate requirement in this federal-court FTCA action.").  As in *Albright*, the Fourth Circuit premised its decision on the fact that applying state law pre-suit requirements to actions filed in federal court would create a direct conflict with the Federal Rules, which allow plaintiffs to commence a civil action simply by filing a complaint.  *Id*. at 519-20.  *Pledger*, which is not binding on this court, is also distinguishable because the court was presented with a 12(b)(6) motion to dismiss an action that was filed in federal court in the first instance.  *Id*. at 518 ("Because Pledger has brought an FTCA claim in federal court, the Federal Rules apply.").  As Plaintiffs sought to litigate their claims in federal court, the MPLA's pre-suit requirements triggered a direct conflict with the pleading standards in the Federal Rules.  Here, by contrast, there is no risk of a conflict with the Federal Rules, because plaintiffs do not seek to prosecute their claims against Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants in federal court.

proceedings (if any) against them will occur in state court.  *McDowell*, 263 F.Supp.3d at 647 (finding Dr. Cofer to be fraudulently joined and misjoined, and dismissing the claims against him without prejudice).  On the other hand, an order holding that these defendants were properly joined will result in remand to state court.  In either scenario, the claims against the non-diverse defendants will be litigated in state court, not federal court.  Accordingly, it would make "little sense to measure the state-law viability of such claims, which were originally filed in state court, by federal pleading standards."  *Combs v. ICG Hazard, LLC*, 934 F. Supp. 2d 915, 923 (E.D. Ky. 2013); *see also Jackson v. Cooper Tire & Rubber Co.*, 57 F. Supp. 3d 863, 868 (M.D. Tenn. 2014) (applying Tennessee pleading standards to determine viability of state law claims against non-diverse defendant).[13]

In sum, the Court should hold that Dr. Cofer, Dr. Justice, and the Local Pharmacy Defendants were fraudulently joined because (1) there can be no real dispute that Plaintiffs' claims against those defendants would be barred in a West Virginia state court, and (2) this Court should apply West Virginia state law in assessing the viability of Plaintiffs' claims against those Defendants.

---

[13] Some district courts have applied federal pleading standards in conducting the fraudulent joinder analysis. *See, e.g.*, *Bell v. Zurich Ins. Co.*, 2016 WL 5118294, at *2 (N.D. Ohio Sept. 21, 2016); *Beavers v. DePuy Orthopaedics, Inc.*, 2012 WL 1945603, at *3 (N.D. Ohio May 30, 2012).  However, the Sixth Circuit has not yet ruled on this issue.  *See Woodworth v. Time Warner Cable, Inc.*, 2015 WL 6742085, at *2 n.1 (N.D. Ohio Nov. 2, 2015) ("The Sixth Circuit has not explicitly stated whether district courts assessing fraudulent joinder should consider the plaintiff's claims in light of the federal or state pleading standard (if they differ).").  But for the reasons addressed in text, it would make "little sense" to evaluate the viability of a case filed originally in state court under federal pleading standards.  *See Combs*, 934 F. Supp. 2d at 923.

II.  **THIS COURT SHOULD REJECT PLAINTIFFS' ATTEMPT TO UNILATERALLY AMEND THEIR COMPLAINTS TO EVADE FEDERAL JURISDICTION.**

This Court should also reject Plaintiffs' last-ditch effort to avoid removal by attempting to join additional Defendants, including five Purdue Sales Representatives who are West Virginia citizens.

Once this Court has jurisdiction over a case, Plaintiffs cannot unilaterally divest it of jurisdiction simply by amending their complaint.  *Harper v. AutoAlliance Int'l, Inc*., 392 F. 3d 195, 210 (6th Cir. 2004) (district court had discretion to retain supplemental jurisdiction over state law claims following plaintiff's dismissal of Title VII claim that was basis for federal question removal).[14]  Rather, pursuant to 28 U.S.C. § 1447(e), a court "may deny a plaintiff's motion to join a defendant whose joinder would destroy subject-matter jurisdiction" following removal.  *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.*, 654 F. App'x 218, 221 (6th Cir. 2016); *City of Cleveland v. Deutsche Bank Trust Co.*, 571 F.Supp.2d 807 (N.D. Ohio 2008) (same).  Notably, "[c]ourts have the power to refuse post-removal joinder of a nondiverse party even if it resulted from the filing of an amended complaint as a matter of course

---

[14]  While the propriety of a removal petition is judged by reference to the complaint on file at the time of the defendant's removal, a plaintiffs' post-removal amendment to add federal claims will cure any defects in the removal notice and confer federal jurisdiction over the action.  *See Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co*., 491 F.3d 320, 329 (6th Cir. 2007) (plaintiff who "amended its complaint to explicitly state federal claims" following removal "waived its argument that removal was improper"); *see also Fields v. Allied Van Lines, Inc*., 2021 WL 5181027, at *2 (W.D. Ky. Nov. 8, 2021) (finding it unnecessary to analyze propriety of federal question removal "because, regardless of the original complaint, federal question is present on the face of the Amended Complaint"); *Kramer v. United States*, 2009 WL 2382940, at *3 (S.D. Ohio July 30, 2009) ("The filing of the Amended Complaint, which facially states a basis for the Court to assert federal question jurisdiction, acted as a waiver of Kramer's right to challenge the propriety of the removal.").

under Fed. R. Civ. P. 15(a)." *Glover v. Kia Motors Am., Inc*., 2018 WL 1976033, at *3 (W.D. Tenn. Apr. 25, 2018).

To determine whether to deny a request to join a non-diverse defendant through an amended pleading, courts look to "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether the plaintiff has been dilatory in seeking amendment; (3) whether the plaintiff will be significantly prejudiced if amendment is not allowed; and (4) any other equitable factors." *Deutsche Bank*, 571 F.Supp.2d at 823. Of these factors, the first is of "paramount importance." *Id*. Here, each factor weighs heavily in favor of rejecting Plaintiffs' proposed amendment.

First, the circumstances of this proposed amendment indicate that Plaintiffs joined the Purdue Sales Representatives to evade federal jurisdiction. When joining the Purdue Sales Representatives as additional, non-diverse Defendants, Plaintiffs did not "allege that [they] discovered a claim" against these new defendants, or otherwise "explain why [they] needed to amend." *Glover*, 2018 WL 1976033, at *5. Nor did they include any significant factual allegations relating to these defendants. Under similar circumstances, courts routinely conclude that the plaintiffs' primary motive was to defeat removal jurisdiction. *Glover*, WL 1976033, at *6-8 (amended complaint that added only a "catch-all allegation" that non-diverse defendant negligently failed to inspect vehicle, without pleading additional facts, indicated joinder "was made for the purpose of defeating diversity jurisdiction")*; Telecom Decision Makers*, 654 F. App'x at 221 (plaintiff's joinder of nondiverse defendant after removal and failure to plead additional claims in amended complaint "indicate[d] that [plaintiff] filed the motion to amend with the intent to destroy federal jurisdiction"). Plaintiffs' request to amend should be denied based on this factor alone. *Deutsche Bank*, 571 F.Supp.2d at 824 (city's motion to amend could

not survive admission that its joinder of local defendant was intended to destroy diversity jurisdiction).

Second, Plaintiffs have offered no reason why the Purdue Sales Representatives were not named in the original complaint, even as Doe Defendants.  *See Glover*, 2018 WL 1976033, at *5. And they have not identified any new facts relating to these Defendants that could justify their belated addition to the complaint.  Under these circumstances, Plaintiffs' two year delay in joining the Purdue Sales Representatives was plainly "dilatory."  *See, e.g.*, *Wells v. Certainteed Corp.*, 950 F. Supp. 200, 201 (E.D. Mich. 1997) (two month delay in joining defendant whom plaintiff knew was involved in her termination was dilatory).

Finally, the balance of hardships weighs in favor of denying leave to amend.  Because the bare-bones allegations in the amended complaint cannot support a viable claim against the Purdue Sales Representatives, excluding them from this case would not prejudice Plaintiffs. *Glover*, 2018 WL 1976033, at *8 ("[G]iven the Court's conclusion that Plaintiff fails to state valid claims against Hutton, the Court determines that dismissing Hutton from the Amended Complaint would not significantly prejudice Plaintiff.").  Nor would it create a risk of piecemeal, inconsistent litigation, given the weakness of Plaintiffs' allegations against the Purdue Sales Representatives.  *Id.* (denying joinder of defendant against whom plaintiff failed to plead elements of negligence claim did not create risk of multiple, inconsistent litigation, because the "valid claims arising out of the subject incident remain[ed] in one lawsuit").  Moreover, distributors are "out-of-state defendant[s]" that have "a substantial interest in proceeding in a federal forum."  *Bridgepointe Condominiums, Inc. v. Integra Bank Nat'l Ass'n*, 2009 WL 700056, at *4 (W.D. Ky. Mar. 13, 2009).  Accordingly, the balance of prejudice weighs strongly in favor of denying leave to amend.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Distributor Defendants respectfully request that this Court deny Plaintiffs' motions to remand; dismiss the claims against the West Virginia Board of Pharmacy, Dr. Cofer, Dr. Justice, Chip Rx, LLC; and George Chapman, III; and retain jurisdiction over the remaining defendants.

May 10, 2022

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Timothy C. Hester
Christian J. Pistilli
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
ghobart@cov.com
thester@cov.com
cpistilli@cov.com
Tel: 202-662-6000

*Counsel for McKesson Corporation*

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug
Corporation*

*/s/ Enu Mainigi*
Enu Mainigi
Jennifer Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: 202.434.5000
emainigi@wc.com
jwicht@wc.com

*Counsel for Defendant Cardinal Health 110,
LLC*

24