# EXHIBIT B

LEVIN SEDRAN & BERMAN LLP
ARNOLD LEVIN, ESQUIRE
DANIEL C. LEVIN, ESQUIRE
CHARLES E. SCHAFFER, ESQUIRE
Identification No. 02280, 80013 & 76259
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

Filed and Attested by the
Office of Judicial Records
16 MAR 2018 11:56 am
M. BRYANT

Attorneys for Plaintiffs

JURY TRIAL DEMANDED
TWELVE JURORS REQUESTED

| | |
|---|---|
| THE CITY OF NEW CASTLE, CITY OF ALIQUIPPA and UNION TOWNSHIP, on behalf of themselves and all others similarly situated, | : |
| | : |
| | : |
| | : |
| Plaintiffs, | : |
| v. | : |
| | : |
| PURDUE PHARMA L.P. | : |
| One Stamford Forum | : |
| 201 Tresser Boulevard | : |
| Stamford, Connecticut 06901 | : |
| And | : |
| PURDUE PHARMA INC. | : |
| One Stamford Forum | : |
| 201 Tresser Boulevard | : |
| Stamford, Connecticut 06901 | : |
| And | : |
| THE PURDUE FREDERICK COMPANY, | : |
| INC. | |
| One Stamford Forum | : |
| 201 Tresser Boulevard | : |
| Stamford, Connecticut 06901 | : |
| And | : |
| TEVA PHARMACEUTICALS USA, INC. | : |
| 1090 Horsham Road | : |
| North Whales, Pennsylvania 19454 | : |
| And | : |
| CEPHALON, INC. | : |
| 1090 Horsham Road | : |
| North Whales, Pennsylvania 19454 | : |
| And | : |
| JOHNSON & JOHNSON | : |
| 1 Johnson & Johnson Plaza | : |

COURT OF COMMON PLEAS OF

PHILADELPHIA COUNTY

NO.

**CLASS ACTION COMPLAINT**

2018 MAR 20 P 1:20

1

New Brunswick, New Jersey 08933 :
    And :
JANSSEN PHARMACEUTICALS, INC. :
1125 Trenton Harbouton Road :
Titusville, New Jersey 08560-0200 :
    And :
ORTHO-McNEIL-JANSSEN :
PHARMACEUTICALS, INC. N/K/A :
JANSSEN PHARMACEUTICALS, INC. :
1125 Trenton Harbouton Road :
Titusville, New Jersey 08560-0200 :
    And :
JANSSEN PHARMACEUTICA, INC. :
N/K/A JANSSEN PHARMACEUTICALS, :
INC. :
1125 Trenton Harbouton Road :
Titusville, New Jersey 08560-0200 :
    And :
ENDO HEALTH SOLUTIONS INC. :
1400 Atwater Drive :
Malvern, Pennsylvania 19355 :
    And :
ALLERGAN PLC :
Morris Corporate Center III :
400 Interpace Parkway :
Parsippany, NJ 07054 :
  :
    Defendants. :

---

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

## AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO. VAYA EN PERSONA O LLAME PONDIMIN OR REDUX TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA**

Case ID: 180301961

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
215·238·6300

ABAJO PARA AVERIGUAR DONDE SE PUEDE
CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107
215·238·6300

3

# CLASS ACTION COMPLAINT

Plaintiffs, The City of New Castle ("New Castle"), the City of Aliquippa ("Aliquippa") and Union Township ("Union") (collectively, "Plaintiffs") bring this action on behalf of themselves and other similarly situated townships, cities, municipalities and other counties in the Commonwealth of Pennsylvania against Defendants, Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Endo Health Solutions, Inc., and Endo Pharmaceuticals, Inc., (collectively, "Defendants") and alleges as follows:

## I. INTRODUCTION

1. Plaintiffs, like many other cities, municipalities, counties and townships across the Commonwealth of Pennsylvania are suffering from severe public health and safety crisis arising out of the unlawful and deceptive marketing and sale of prescription opioids by Defendants.

2. The deceptive marketing and sale of prescription opioids for medical use in New Castle, Aliquippa and Union are responsible for an opioid epidemic.

3. As a result of the opioid epidemic, Plaintiffs have suffered a public health and safety crisis which has and will continue to cause a lack of economic productivity and diminished quality of life in their cities and township. Further, Plaintiffs have expended money to contain the epidemic and its adverse impacts on public health and safety which has caused Plaintiffs to suffer damages. The opioid crisis has affected the citizens of New Castle, Aliquippa, Union and other cities, municipalities, counties and townships across the

4

Commonwealth of Pennsylvania resulting in crime, family and social disfunction. In addition, the opioid epidemic has caused health consequences to the citizens of New Castle, Aliquippa, Union and other cities, municipalities, counties and townships. Finally, the city agencies have been responsible for coping and containing the epidemic crisis by expending unnecessary money to discharge their duties.

4. The opioid epidemic has affected New Castle's, Union's and Aliquippa's agencies including police, fire and hospitals which costs have greatly increased in an efford to control the opioid epidemic.

5. The opioid epidemic has affected New Castle's, Union's and Aliquippa's agencies which include its police department.

6. The opioid epidemic has also affected the law enforcement authorities which include the criminal justice system, social services, health and municipal or governmental agencies. Plaintiffs have been forced to incur substantial costs as a provider of health coverage to its employees, their families and emergency health services as a result of the opioid epidemic.

7. The costs incurred by Plaintiffs are similar to costs that are incurred by cities, townships, counties and municipalities across the Commonwealth of Pennsylvania. The epidemic is directly a result of the commercial activities of Defendants.

8. The opioid drugs that are prescribed by the Defendants are dangerous and have severe adverse side effects to its users. The Defendants marketed and promoted the prescription drugs for long-term use to treat chronic pain. However, the overwhelming weight of medical and scientific authority is that the prescription opioids should not be used for long-term treatment of chronic pain.

Case ID: 180301961

9. The opioids include brand name drugs like OxyContin and Percocet and generics like oxycodone and hydrocodone. The oxycodone is derived from properties similar to opium and heroin, and, as such are highly addictive and dangerous and are regulated by the United States Food and Drug Administration ("FDA") as controlled substances.

10. While opioids provide effective treatment for short-term, post-surgical and trauma-related pain, the Defendants have manufactured, promoted and marketed the opioids for management of chronic pain and/or long-term use by misleading consumers and providers regarding their appropriate use. Opioids should not be prescribed for long-term treatment.

11. Opioids are addictive drugs. Defendants knew that barring exceptional circumstances, opioids are too addictive and too debilitating for long-term use.

12. The Defendants knew with prolonged use, the effectiveness of opioids will be outweighed by the risks of side effects and addiction.

13. Defendants knew of controlled studies where the risks of addiction and adverse outcomes were significantly minimized by prescribing opioids for limited short-term use. Despite this information, Defendants marketed opioids for long-term use creating a false perception of the safety and efficacy of opioids. Defendants had a highly deceptive marketing campaign that begin in the late 1990's up until 2006.

14. Defendants were able to convince doctors to prescribe opioids for long-term use even though Defendants were aware of the negative consequences of using opioids for long-term use.

15. Defendants were aware that opioid use should be short-term because opioids are addictive and debilitating when prescribed and taken for long-term use.

6

16.     Plaintiffs brings this class action on their own behalf and on behalf of similarly situated Pennsylvania governmental entities to obtain mandatory injunctive relief, compensatory and punitive damages. Plaintiffs seek that Defendants cease all promotional activities of prescribing opioids as safe and effective treatment for chronic pain and long-term use.

17.     Plaintiffs and members of the Class also seek actual damages to recover costs of reimbursement of prescription opioids for long-term daily use and the cost of treatment of opioid addiction and other adverse medical conditions associated with long-term use incurred by the Class members' health plans and/or paid directly by them.

18.     Plaintiffs and members of the Class also seek recovery of its costs of increased medical services directly associated with opioids including increased emergency response costs, increased costs of Plaintiffs' law enforcement authorities, its criminal justice system and social and health agencies which are attributable to the long-term use of prescription opioids to treat chronic pain.

19.     Plaintiffs brings this action against Defendants for public nuisance, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law and unjust enrichment.

**II.     JURISDICTION AND VENUE**

20.     This Court has jurisdiction over this action pursuant to 42 Pa.C.S. § 931(a). The amount in controversy exceeds $50,000 exclusive of interest and costs.

21.     Venue is proper in Philadelphia County because Defendants conduct substantial amounts of business in Philadelphia County.

22.     This action is not removable to federal court. Among other things, there is insufficient diversity for removal. Plaintiffs' class only includes municipalities, counties, townships and political subdivisions in the Commonwealth of Pennsylvania. 100% of the Class

7

are citizens of the same state as primary Defendants, Teva Pharmaceuticals USA, Inc., Cephalon, Inc. and Endo Health Solutions, Inc.

## III.    PARTIES

23.    Plaintiff, New Castle is a city and is the County Seat in Lawrence County, Pennsylvania. It is home to approximately 20,000 residents.

24.    Plaintiff, Aliquippa is a city in Beaver County, Pennsylvania. It is home to approximately 20,000 residents.

25.    Plaintiff, Union is a township in Washington County, Pennsylvania. It is home to approximately 6,000 residents.

26.    New Castle, Union and Aliquippa provide a wide range of social services on behalf of their residents including health related services. In addition, New Castle and Aliquippa provide funding for, including but not limited to, the Police Department and Fire Department. New Castle, specifically funds its District Attorney's Office, New Castle Defenders Association and Social Services. Union funds its own Police Department.

27.    All Plaintiffs fund their own benefits plan on behalf of their full time employees through which it pays medical costs including cost of treatment for opioid addiction, related diseases and/or conditions, etc.

28.    Plaintiffs self fund their own worker's compensation and disability plan through which they pay disability costs and related benefits for covered employees.

29.    Plaintiffs' health, prescription, workers' compensation and disability plans are administered by third party service providers that are in the business of administrating employee health plan accounts and worker's compensation and disability benefits.

8

Case ID: 180301961

30.     Defendant, Purdue Pharma L.P. ("PPL") is a limited partnership organized under the laws of Delaware with its principal place of business in Stamford, Connecticut.

31.     Defendant Purdue Pharma Inc. ("PPI") is a New York corporation with its principal place of business in Stamford, Connecticut.

32.     Defendant, The Purdue Frederick Company, Inc. ("PFC") is a New York corporation with its principal place of business in Stamford, Connecticut.

33.     PPL, PPI and PFC (collectively, "Purdue") are engaged in the manufacture, promotion, distribution and sale of opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 1. Purdue Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| OxyContin | Oxycodone hydrochloride extended release | Schedule II |
| MS Contin | Morphine sulfate extended release | Schedule II |
| Dilaudid | Hydromorphone hydrochloride | Schedule II |
| Dilaudid-HP | Hydromorphone hydrochloride | Schedule II |
| Butrans | Byprenorpine | Schedule III |
| Hysingla ER | Hydrocodone bitrate | Schedule II |
| Targiniq ER | Oxycodone hydrochloride and naloxone hydrochloride | Schedule II |

34.     Defendant, Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business in North Whales, Pennsylvania. Teva USA is a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd. ("Teva Ltd."), an Israeli corporation.

35.     Defendant, Cephalon, Inc. is a Delaware corporation with its former place of business in Frazer, Pennsylvania. In 2011, Teva Ltd. acquired Cephalon, Inc.

9

36.     Teva USA and Cephalon, Inc. (collectively, "Cephalon") work together to manufacture, promote, distribute and sell both brand name and generic versions of the opiods nationally, throughout the Commonwealth of Pennsylvania, including the following:

**Table 2. Cephalon Opioids**

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Actiq | Fentanyl citrate | Schedule II |
| Fentora | Fentanyl citrate | Schedule II |

37.     Teva USA was in the business of selling generic opioids, including a generic form of OxyContin from 2005 to 2009 nationally, throughout the Commonwealth of Pennsylvania.

38.     Defendant, Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

39.     Defendant, Janssen Pharmaceutical, Inc. ("Janssen Pharmaceuticals") is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of J&J.

40.     Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which in turn was formerly known as Janssen Pharmaceutica, Inc.

41.     Defendant, Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("OMP"), now known as Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey.

42.     J&J is the only company that owns more than 10% of Janssen Pharmaceuticals stock.  Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals drugs and Janssen Pharmaceuticals profits inure to J&J's benefit.

Case ID: 180301961

43.    J&J, Janssen Pharmaceuticals, OMP and Janssen Pharmaceutica (collectively, "Janssen") are or have been engaged in the manufacture, promotion, distribution and sale of opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 3. Janssen Opiods*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Duragesic | Fentanyl | Schedule II |
| Nucynta | Tapentadol extended release | Schedule II |
| Nucynta Er | Tapentadol | Schedule II |

44.    Together, Nucynta and Nucynta ER accounted for $172 million in sales in 2014. Prior to 2009, Duragesic accounted for at least $1 billion in annual sales.

45.    Defendant, Endo Health Solutions, ("EHS") is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

46.    Defendant, Endo Pharmaceuticals, Inc. ("EPI") is a wholly owned subsidiary of EHS and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

47.    EHS and EPI (collectively, "Endo") manufacture, promote, distribute and sell opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 4. Endo Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Opana ER | Oxymorphone hydrochloride extended release | Schedule II |
| Opana | Oxymorphone hydrochloride | Schedule II |
| Percodan | Oxymorphone hydrochloride and aspirin | Schedule II |
| Percocet | Oxymorphone hydrochloride and acetaminophen | Schedule II |

48.    Defendant, Allergan PLC is a publicly traded company, traded on the New York Stock Exchange. It is incorporated in Ireland with its principal place of business in Dublin, Ireland. Its U.S. headquarters are located in Parsippany, New Jersey. Actavis PLC acquired

Case ID: 180301961

Allergan PLC in March, 2015 and the combined company changed its name to Allergan PLC in March, 2015.

49.     Defendant, Allergan PLC acquired, merged with, or otherwise combined with several Actavis entities (including Actavis PLC and Actavis, Inc.), Watson entities (including Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc.) and Warner Chilcott entities (including Warner Chilcott Company, LLC and Warner Chilcott PLC) that manufactured, marketed and sold opioids.  Upon information and belief, profits from the sale of opioid products by Activis, Watson and Warner Chilcott ultimately inured or inure to the benfit of Defendant Allergan PLC.

50.     At all times material hereto, Defendant Allergan PLC and the Actavis, Watson and Warner Chilcott entities (collectively referred to herein as "Allergan/Activis") promoted, marketed and sold both brand name and generic versions of opioids throughout the Commonwealth of Pennsylvania.

*Table 5. Allergan/Actavis Opioids*

| Drug Name | Chemical Name | Schedule |
|---|---|---|
| Kadian | Morphine sulfate extended release | Schedule II |
| Norco | Hydrocodone bitartrate and acetaminophen | Schedule II |
| Generic Duragesic | Fentanyl | Schedule II |
| Generic Kadian | Morphine sulfate extended release | Schedule II |
| Generic Opana | Oxymorphone hydrochloride | Schedule II |

## IV.    FACTS

51.     The pain relieving properties of opioids are well recognized by the medical community.  Prescription opioids are similar and related to illegal drugs including heroin.

Case ID: 180301961

Prescription opioids are controlled substances regulated by the US Drug Enforcement Administration since 1970.

52.     Studies and articles from the 70's and 80's made clear the reasons to avoid opioids, especially for long-term use and treatment of chronic pain.

53.     In fact, leading journals advocated the prohibition of the use of opioid therapy for chronic pain.

54.     Medical research shows that discontinuing opioids that have been prescribed for just a few weeks causes withdrawal symptoms which include severe anxiety, nausea, vomiting, headaches, agitation, insomnia, tremors, hallucinations, delirium, pain and other serious symptoms which will persist depending on how long the prescription opioids were used.

55.     Further, the longer that you are on opioids and as your tolerance is increased, the dosage that is needed to achieve the required result becomes greater. Thus, patients who are on opioids for long use, their dosages escalate because of their tolerance to the drug which, in turn, causes an increased risk of overdosing and addiction.

56.     However, despite this above information, Defendants promoted opioids for long-term use. In fact, in 2013 the FDA warned of grave risks of opioids. The FDA further warned that the use of prescription opioid drugs, even under medical supervision, can cause life threatening harm. The FDA warned that long-term use of opioids should be used as a last resort when other treatments are inadequate.

57.     The FDA expanded its warnings for immediate release to apply to opioid pain medications. Defendants were well aware of the harms from long-term use of opioids which the FDA warned about.

Case ID: 180301961

58.     Despite the underlying knowledge of prescription opioids and its risk to users, Defendants successfully marketed and achieved the dramatic expansion of prescription opioids for use for medical purposes in the last 20 years. From 1999 - 2010 the sale of prescription opioids in the US nearly quadrupled.

59.     In 2010, nearly 20% of all doctor visits resulted in a prescription of an opioid.

60.     Nearly 70% of adults nationwide have used opioid pain medication in their lifetime and approximately 30% have used opioids in the previous year.

61.     In 2012 7% of adults age 20 and over reported using a prescription opioid in the past 30 days.

62.     In 2017, the CDC noted, prescription opioid related deaths and admissions for treatment of opioid use disorder, have increased in parallel with increased opioids prescribed in the United States which quadrupled from 1999 – 2010. The sales of opioid pain medication have increased in parallel with opioid related deaths.

63.     The principal cause of the opioid epidemic in 1999 – 2014 was the unprecedented increase in use of prescription opioids.

64.     The CDC and other researchers have concluded that prescription opioids are the principal causative factor driving both epidemics and opioid addiction and overdoses.

65.     Defendants' marketing campaign of prescription opioids to physicians, pharmacist and patients has proximately caused damage to Plaintiffs and members of the Class. Defendants created a false perception it was safe to use prescription opioids for an extended period of time or long-term use.

66.     The unbranded marketing materials that Defendants provided did not disclose the risks of addiction, abuse, misuse and overdose.

14

Case ID: 180301961

## V.   CLASS ALLEGATIONS

67.   Plaintiffs bring this action against Defendants on behalf of themselves and as a class action, pursuant to Pennsylvania Rules of Civil Procedure 1701 *et seq.* on behalf of the following class:

> All political subdivisions, municipalities, cities, townships and counties in the Commonwealth of Pennsylvania who incurred damages as a result Defendants' marketing of prescription opioids.

68.   Plaintiffs reserve the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate. The Class does not include any entities outside of the Commonwealth of Pennsylvania.

69.   The proposed class is so numerous that the case would be impracticable under the circumstances. While the exact number of members of the Class is unknown to Plaintiffs, it is upon information and belief that the Class consists of hundreds of entities.

70.   The individual class members are ascertainable, as the names and addresses of all class members can be identified through public records.

71.   Numerous questions of law or fact arise from Defendant's conduct that are common to the Class, including but not limited to:

> a.  Whether Defendants unlawfully marketed prescription opioids in a manner that was unsafe to citizens of the Commonwealth of Pennsylvania;
> b.  Whether prescription opioids are intended for long-term use;
> c.  Whether prescription opioids are safe for long-term use;
> d.  Whether prescription opioids prescribed for long-term use are addictive;
> e.  Whether prescription opioids should have been marketed for long-term use;
> f.  Whether municipalities, cities, counties, townships and other political subdivisions have been harmed as a result of Defendants marketing prescription opioids for long-term use;
> g.  Whether Plaintiffs and class members are entitled to damages;

15

h. Whether Plaintiffs and class members are entitled to injunctive relief; and

i. Whether Defendants are liable.

72.  These and other questions are common to the Class and predominate over any questions affecting only individual class members.

73.  Plaintiff's claims are typical of the Class in that Plaintiffs suffered damages as a result of Defendants' marketing of prescription opioids for long-term use when they are unsafe for long-term use.

74.  Plaintiffs will fairly and adequately represent the interests of the Class in that it has no conflict with any other members of the Class. Furthermore, Plaintiffs have retained competent counsel experienced in class action and other complex commercial litigation.

75.  Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

76.  This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

77.  The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

78.  Class members who have already retained counsel will have the option, if they have the financial ability, to opt-out and prosecute their actions individually, should they so choose, without the use of a class action. However, numerous counties, municipalities, townships and cities will not have the financial resources to retain a lawyer to prosecute this

16

Case ID: 180301961

action. A class action will be an effective procedural mechanism to allow smaller cities, counties, municipalities and townships to be reimbursed for harm done by Defendants.

## FIRST CAUSE OF ACTION
## CONSUMER FRAUD-DECEPTIVE PRACTICES 73 P.S. § 201-1 – 201-9.3 *et seq.*
### (AGAINST ALL DEFENDANTS)

79.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

80.     73 P.S. § 201-1 – 201-9.3 *et seq.*, ("Pennsylvania Unfair Trade Practices and Consumer Protection Law" or "UTPCPL") makes it unlawful for a person or business to employ "unfair methods of competition" and "unfair or deceptive acts or practices" by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have. 73 P.S. § 201.2(4)(v).

81.     Defendants have engaged in unfair or deceptive acts or practices in violation of UTPCPL as set forth above.

82.     Defendants' practices as described herein are unfair or deceptive acts or practices that violate UTPCPL because the practices were and are intended to deceive consumers and occurred and continue to occur in the course of conduct involving trade and commerce in New Castle, Aliquippa, Union and throughout the Commonwealth of Pennsylvania.

83.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and/or by aiding and abetting third parties, violated the UTPCPL by making and disseminating untrue, false and misleading statements to Pennsylvania prescribers and consumers to promote the sale and use of opioids to treat chronic pain, including for long-term use, or by causing untrue, false and misleading statements about opioids to be made or

17

disseminated to Pennsylvania and County prescribers and consumers in order to promote the sale and use of opioids to treat chronic pain, including for long-term use. These untrue, false and misleading statements included, but were not limited to:

      a.  Misrepresenting the truth about how opioids lead to addiction;

      b.  Misrepresenting that opioids improve function;

      c.  Misrepresenting that addiction risk can be managed;

      d.  Misleading doctors, patients and payors through the use of misleading terms like "pseudoaddiction";

      e.  Falsely claiming that withdrawal is simply managed;

      f.  Misrepresenting that increased doses pose no significant additional risks;

      g.  Falsely omitting or minimizing the adverse effects of opioids and overstating the risks of alternative forms of pain treatment and management.

      84.    At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and by aiding and abetting third parties, also violated the UTPCPL by making statements that omitted or concealed material facts to promote the sale and use of opioids to treat chronic pain, including for long-term use. Defendants and their third-party allies repeatedly failed to disclose or minimized material facts about the risks of opioids, including the risk of addiction and their risks compared to alternative treatments. Such material omissions were deceptive and misleading in their own right, and further rendered even otherwise truthful statements about opioids untrue, false and misleading, creating a misleading impression of the risks, benefits and superiority of opioids for treatment of chronic pain, including for long-term use.

18

85.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties and by aiding and abetting third parties, made and disseminated the foregoing untrue, false and misleading statements and material omissions, through an array of marketing channels, including but not limited to: in-person and other forms of detailing; speaker events, including meals, conferences and teleconferences; CMEs; studies and journal articles and supplements; advertisements; and brochures and other patient education materials.

86.     Defendants knew at the time of making or disseminating these misstatements and material omissions, or causing these misstatements and material omissions statements to be made or disseminated, that they were untrue, false or misleading and therefore likely to deceive the public. In addition, Defendants knew or should have known that their marketing and promotional efforts created an untrue, false and misleading impression of the risks, benefits and superiority of opioids.

87.     In sum, Defendants: (a) directly engaged in untrue, false and misleading marketing; (b) disseminated the untrue, false and misleading marketing through third parties; and (c) aided and abetted the untrue, false and misleading marketing third parties.

88.     All of this conduct, separately and collectively, was intended to deceive Pennsylvania consumers who used or paid for opioids for chronic pain; Pennsylvania physicians who prescribed opioids to consumers to treat chronic pain; and Pennsylvania payors, including New Castle, Aliquippa and Union, who purchased or covered the purchase of opioids for chronic pain. As a direct result of the foregoing acts and practices, the Defendants have received, or will receive, income, profits and other benefits, which they would not have received if they had not engaged in the violations of the UTPCPL as described in this Complaint.

19

89.     In addition, 73 P.S. § 201-8(b) specifically allows the Plaintiffs to bring this claim for a penalty for each violation by the Defendants.

## SECOND CAUSE OF ACTION
## PUBLIC NUISANCE
## (AGAINST ALL DEFENDANTS)

90.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

91.     Defendants' conduct constitutes a public nuisance.

92.     Defendants, individually and acting through their employees and agents and in concert with each other, have intentionally, recklessly or negligently engaged in conduct or omissions which endanger or injure other property, health, safety or comfort of a considerable number of persons in the New Castle, Aliquippa and Union by their untrue, false and misleading promotion and marketing of opioids for use by residents of New Castle, Aliquippa and Union.

93.     Defendants' marketing conduct and subsequent sale of its opioid products is not only unlawful, but has also resulted in substantial and unreasonable interference with the public health, and the public's enjoyment of its right that not to be defrauded or negligently injured.

94.     Defendants' conduct is not insubstantial or fleeting. Indeed, Defendants' unlawful conduct has so severely impacted public health on every geographic and demographic level that the public nuisance perpetrated by Defendants' conduct is commonly referred to as "crisis" or an "epidemic". It has caused deaths, serious injuries and a severe disruption of public peace, order and safety; it is ongoing and it is producing permanent and long-lasting damage.

95.     By reason of the foregoing, Plaintiffs have been injured and continues to be injured in that it has paid and continues to pay for long-term opioid treatment using opioids manufactured or distributed by Defendants or by other drug makers. Plaintiffs have suffered

20

Case ID: 180301961

additional damages and continues to suffer damage for the additional costs of providing and using opioids long-term to treat chronic pain.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### VIOLATIONS OF THE COMMON LAW PROHIBITION ON UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

96.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

97.     Defendants have unjustly retained a benefit to the Plaintiffs' detriment, and the Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience.

98.     By illegally and deceptively promoting opioids to treat chronic pain, directly, through their control of third parties, and by acting in concert with third parties, Defendants have unjustly enriched themselves at Plaintiffs' expense.  Plaintiffs' have made payments for opioid prescriptions and Defendants benefited from those payments.  Because of their deceptive promotion of opioids, Defendants obtained enrichment they would not otherwise have obtained. The enrichment was without justification and Plaintiffs claims a remedy provided by law.

99.     In addition, and by reason of the foregoing, Plaintiffs were injured and continues to be injured in that Defendants' ongoing concerted actions in illegally and deceptively marketing opioids caused doctors and other health care providers to prescribe and Plaintiffs to pay for long-term opioid treatment using opioids manufactured by Defendants or by other drug makers.  Defendants caused and are responsible for those costs and claims.  Plaintiffs also incurred damages because of the increased costs associated with medical services rendered to the opioid crisis including emergency response costs, law enforcement authorities costs, criminal justice system and social and health care costs, all of which resulted from and are attributed to

21

the long-term use of prescription opioids manufactured, distributed, marketed and/or sold by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on each Cause of Action against Defendants in excess of Fifty Thousand Dollars ($50,000), jointly and severally awarding Plaintiffs:

1. Compensatory damages in an amount sufficient to fairly and completely compensate Plaintiffs for all damages;

2. Treble damages, penalties and costs pursuant to Consumer Fraud – Deceptive Practices, violations of 73 P.S. § 201-1 – 201-9.3 *et seq*.;

3. Certifying the Class;

4. A declaratory judgment requiring Defendants to abate the public health nuisance;

5. Punitive damages;

6. Interest, costs and attorney fees; and

7. Such other and further relief as this Court deems just and proper.

LEVIN SEDRAN & BERMAN LLP

Date:   March 16, 2018

/s/ Daniel C. Levin
Arnold Levin, Esquire
Daniel C. Levin, Esquire
Charles E. Schaffer, Esquire
510 Walnut Street, Ste. 500
Philadelphia, Pa 19106
215-592-1500

*Attorneys for Plaintiffs*

Case ID: 180301961

## VERIFICATION

I, <u>Robert Eckert</u>, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

<u>3-12-18</u>
Date

## VERIFICATION

I, *Anthony Mastrangelo*, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

___3/10/18_____
Date

*Anthony S. Mastrangelo*

4/4/18        Cephalon

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

**MARCH 2018**
E-Filing Number: 1803039020

**001961**

PLAINTIFF'S NAME
THE CITY OF NEW CASTLE

DEFENDANT'S NAME
PURDUE PHARMA L.P.

PLAINTIFF'S ADDRESS
230 N. JEFFERSON STREET MUNICIPAL BUILDING
NEW CASTLE PA 16101

DEFENDANT'S ADDRESS
ONE STAMFORD FORUM 201 TRESSER BLVD
STAMFORD CT 06901

PLAINTIFF'S NAME
CITY OF ALIQUIPPA

DEFENDANT'S NAME
PURDUE PHARMA INC.

PLAINTIFF'S ADDRESS
581 FRANKLIN AVENUE
ALIQUIPPA PA 15001

DEFENDANT'S ADDRESS
ONE STAMFORD FORUM 201 TRESSER BLVD
STAMFORD PA 06901

PLAINTIFF'S NAME
UNION TOWNSHIP

DEFENDANT'S NAME
THE PURDUE FREDERICK COMPANY INC.

PLAINTIFF'S ADDRESS
3904 FINLEYVILLE-ELRAMA ROAD
FINLEYVILLE PA 15332

DEFENDANT'S ADDRESS
ONE STAMFORD FORUM 201 TRESSER BLVD
STAMFORD PA 06901

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 3 | 11 | ☒ Complaint  ☐ Petition Action  ☐ Notice of Appeal<br>☐ Writ of Summons  ☐ Transfer From Other Jurisdictions |

AMOUNT IN CONTROVERSY

☐ $50,000.00 or less
☒ More than $50,000.00

COURT PROGRAMS

☐ Arbitration
☐ Jury
☐ Non-Jury
☒ Other CLASS ACTION

☐ Mass Tort
☐ Savings Action
☐ Petition

☐ Commerce
☐ Minor Court Appeal
☐ Statutory Appeals

☐ Settlement
☐ Minors
☐ W/D/Survival

CASE TYPE AND CODE
C1 - CLASS ACTION

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

MAR **16** 2018

**M. BRYANT**

IS CASE SUBJECT TO
COORDINATION ORDER?
YES        NO

2018 MAR 20 PM 2:21 ...CO.PA

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: THE CITY OF NEW CASTLE , CITY OF ALIQUIPPA , UNION TOWNSHIP

Papers may be served at the address set forth below.

NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY
DANIEL C. LEVIN

ADDRESS
510 WALNUT STREET, STE. 500
LEVIN SEDRAN & BERMAN
PHILADELPHIA PA 19106

PHONE NUMBER
(215)592-1500

FAX NUMBER
none entered

SUPREME COURT IDENTIFICATION NO.
80013

E-MAIL ADDRESS
dlevin@lfsblaw.com

SIGNATURE OF FILING ATTORNEY OR PARTY
DANIEL LEVIN

DATE SUBMITTED
Friday, March 16, 2018, 11:56 am

**COMPLETE LIST OF DEFENDANTS:**

   1. PURDUE PHARMA L.P.
        ONE STAMFORD FORUM 201 TRESSER BLVD
        STAMFORD CT 06901
   2. PURDUE PHARMA INC.
        ONE STAMFORD FORUM 201 TRESSER BLVD
        STAMFORD PA 06901
   3. THE PURDUE FREDERICK COMPANY INC.
        ONE STAMFORD FORUM 201 TRESSER BLVD
        STAMFORD PA 06901
   4. TEVA PHARMACEUTICALS USA, INC.
        1090 HORSHAM ROAD
        NORTH WHALES PA 19454
   5. CEPHALON, INC.
        1090 HORSHAM ROAD
        NORTH WHALES PA 19454
   6. JOHNSON & JOHNSON
        1 JOHNSON & JOHNSON PLAZA
        NEW BRUNSWICK NJ 08933
   7. JANSSEN PHARMACEUTICALS, INC.
        1125 TRENTON HARBOUTON ROAD
        TITUSVILLE NJ 08560
   8. ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
        ALIAS: N/K/A JANSSEN PHARMACEUTICALS, INC.
        1125 TRENTON HARBOUTON ROAD
        TITUSVILLE NJ 08560
   9. JANSSEN PHARMACEUTICA, INC.
        ALIAS: N/K/A JANSSEN PHARMACEUTICALS, INC.
        1125 TRENTON HARBOUTON ROAD
        TITUSVILLE NJ 08560
  10. ENDO HEALTH SOLUTIONS, INC.
        1400 ATWATER DRIVE
        MALVERN PA 19355
  11. ALLERGAN PLC
        MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY
        PARSIPPANY NJ 07054

LEVIN SEDRAN & BERMAN LLP
ARNOLD LEVIN, ESQUIRE
DANIEL C. LEVIN, ESQUIRE
CHARLES E. SCHAFFER, ESQUIRE
Identification No. 02280, 80013 & 76259
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500

Filed and Attested by the
Office of Judicial Records
16 MAR 2018 11:56 am
M. BRYANT

Attorneys for Plaintiffs

JURY TRIAL DEMANDED
TWELVE JURORS REQUESTED

| | |
|---|---|
| THE CITY OF NEW CASTLE, CITY OF ALIQUIPPA and UNION TOWNSHIP, on behalf of themselves and all others similarly situated, | : : : : : |
| Plaintiffs, | : : |
| v. | : : |
| PURDUE PHARMA L.P.<br>One Stamford Forum<br>201 Tresser Boulevard<br>Stamford, Connecticut 06901<br>And | : : : : : |
| PURDUE PHARMA INC.<br>One Stamford Forum<br>201 Tresser Boulevard<br>Stamford, Connecticut 06901<br>And | : : : : : |
| THE PURDUE FREDERICK COMPANY, INC.<br>One Stamford Forum<br>201 Tresser Boulevard<br>Stamford, Connecticut 06901<br>And | : : : : : |
| TEVA PHARMACEUTICALS USA, INC.<br>1090 Horsham Road<br>North Whales, Pennsylvania 19454<br>And | : : : : |
| CEPHALON, INC.<br>1090 Horsham Road<br>North Whales, Pennsylvania 19454<br>And | : : : : |
| JOHNSON & JOHNSON<br>1 Johnson & Johnson Plaza | : : |

COURT OF COMMON PLEAS OF

PHILADELPHIA COUNTY

NO.

**CLASS ACTION COMPLAINT**

2018 MAR 20 P 1: 21

1

Case ID: 180301961

New Brunswick, New Jersey 08933 :
    And :
JANSSEN PHARMACEUTICALS, INC. :
1125 Trenton Harbouton Road :
Titusville, New Jersey 08560-0200 :
    And :
ORTHO-McNEIL-JANSSEN :
PHARMACEUTICALS, INC. N/K/A :
JANSSEN PHARMACEUTICALS, INC. :
1125 Trenton Harbouton Road :
Titusville, New Jersey 08560-0200 :
    And :
JANSSEN PHARMACEUTICA, INC. :
N/K/A JANSSEN PHARMACEUTICALS, :
INC. :
1125 Trenton Harbouton Road :
Titusville, New Jersey 08560-0200 :
    And :
ENDO HEALTH SOLUTIONS INC. :
1400 Atwater Drive :
Malvern, Pennsylvania 19355 :
    And :
ALLERGAN PLC :
Morris Corporate Center III :
400 Interpace Parkway :
Parsippany, NJ 07054 :
     :
    Defendants. :

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the Plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siquientes, usted tiene viente (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICO. VAYA EN PERSONA O LLAME PONDIMIN OR REDUX TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA

2

**ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11ᵗʰ Floor
Philadelphia, Pennsylvania 19107
215·238·6300

ASOCIACIÓN DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Información Legal
1101 Market Street, 11ᵗʰ Floor
Filadelfia, Pennsylvania 19107
215·238·6300

Case ID: 180301961

## CLASS ACTION COMPLAINT

Plaintiffs, The City of New Castle ("New Castle"), the City of Aliquippa ("Aliquippa") and Union Township ("Union") (collectively, "Plaintiffs") bring this action on behalf of themselves and other similarly situated townships, cities, municipalities and other counties in the Commonwealth of Pennsylvania against Defendants, Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Endo Health Solutions, Inc., and Endo Pharmaceuticals, Inc., (collectively, "Defendants") and alleges as follows:

## I.    INTRODUCTION

1.    Plaintiffs, like many other cities, municipalities, counties and townships across the Commonwealth of Pennsylvania are suffering from severe public health and safety crisis arising out of the unlawful and deceptive marketing and sale of prescription opioids by Defendants.

2.    The deceptive marketing and sale of prescription opioids for medical use in New Castle, Aliquippa and Union are responsible for an opioid epidemic.

3.    As a result of the opioid epidemic, Plaintiffs have suffered a public health and safety crisis which has and will continue to cause a lack of economic productivity and diminished quality of life in their cities and township.  Further, Plaintiffs have expended money to contain the epidemic and its adverse impacts on public health and safety which has caused Plaintiffs to suffer damages.  The opioid crisis has affected the citizens of New Castle, Aliquippa, Union and other cities, municipalities, counties and townships across the

Case ID: 180301961

Commonwealth of Pennsylvania resulting in crime, family and social disfunction. In addition, the opioid epidemic has caused health consequences to the citizens of New Castle, Aliquippa, Union and other cities, municipalities, counties and townships. Finally, the city agencies have been responsible for coping and containing the epidemic crisis by expending unnecessary money to discharge their duties.

    4.    The opioid epidemic has affected New Castle's, Union's and Aliquippa's agencies including police, fire and hospitals which costs have greatly increased in an efford to control the opioid epidemic.

    5.    The opioid epidemic has affected New Castle's, Union's and Aliquippa's agencies which include its police department.

    6.    The opioid epidemic has also affected the law enforcement authorities which include the criminal justice system, social services, health and municipal or governmental agencies. Plaintiffs have been forced to incur substantial costs as a provider of health coverage to its employees, their families and emergency health services as a result of the opioid epidemic.

    7.    The costs incurred by Plaintiffs are similar to costs that are incurred by cities, townships, counties and municipalities across the Commonwealth of Pennsylvania. The epidemic is directly a result of the commercial activities of Defendants.

    8.    The opioid drugs that are prescribed by the Defendants are dangerous and have severe adverse side effects to its users. The Defendants marketed and promoted the prescription drugs for long-term use to treat chronic pain. However, the overwhelming weight of medical and scientific authority is that the prescription opioids should not be used for long-term treatment of chronic pain.

Case ID: 180301961

9.      The opioids include brand name drugs like OxyContin and Percocet and generics like oxycodone and hydrocodone. The oxycodone is derived from properties similar to opium and heroin, and, as such are highly addictive and dangerous and are regulated by the United States Food and Drug Administration ("FDA") as controlled substances.

10.     While opioids provide effective treatment for short-term, post-surgical and trauma-related pain, the Defendants have manufactured, promoted and marketed the opioids for management of chronic pain and/or long-term use by misleading consumers and providers regarding their appropriate use.  Opioids should not be prescribed for long-term treatment.

11.     Opioids are addictive drugs.  Defendants knew that barring exceptional circumstances, opioids are too addictive and too debilitating for long-term use.

12.     The Defendants knew with prolonged use, the effectiveness of opioids will be outweighed by the risks of side effects and addiction.

13.     Defendants knew of controlled studies where the risks of addiction and adverse outcomes were significantly minimized by prescribing opioids for limited short-term use. Despite this information, Defendants marketed opioids for long-term use creating a false perception of the safety and efficacy of opioids.  Defendants had a highly deceptive marketing campaign that begin in the late 1990's up until 2006.

14.     Defendants were able to convince doctors to prescribe opioids for long-term use even though Defendants were aware of the negative consequences of using opioids for long-term use.

15.     Defendants were aware that opioid use should be short-term because opioids are addictive and debilitating when prescribed and taken for long-term use.

6

16.     Plaintiffs brings this class action on their own behalf and on behalf of similarly situated Pennsylvania governmental entities to obtain mandatory injunctive relief, compensatory and punitive damages. Plaintiffs seek that Defendants cease all promotional activities of prescribing opioids as safe and effective treatment for chronic pain and long-term use.

17.     Plaintiffs and members of the Class also seek actual damages to recover costs of reimbursement of prescription opioids for long-term daily use and the cost of treatment of opioid addiction and other adverse medical conditions associated with long-term use incurred by the Class members' health plans and/or paid directly by them.

18.     Plaintiffs and members of the Class also seek recovery of its costs of increased medical services directly associated with opioids including increased emergency response costs, increased costs of Plaintiffs' law enforcement authorities, its criminal justice system and social and health agencies which are attributable to the long-term use of prescription opioids to treat chronic pain.

19.     Plaintiffs brings this action against Defendants for public nuisance, violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law and unjust enrichment.

## II.     JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 42 Pa.C.S. § 931(a). The amount in controversy exceeds $50,000 exclusive of interest and costs.

21.     Venue is proper in Philadelphia County because Defendants conduct substantial amounts of business in Philadelphia County.

22.     This action is not removable to federal court. Among other things, there is insufficient diversity for removal. Plaintiffs' class only includes municipalities, counties, townships and political subdivisions in the Commonwealth of Pennsylvania. 100% of the Class

Case ID: 180301961

are citizens of the same state as primary Defendants, Teva Pharmaceuticals USA, Inc., Cephalon, Inc. and Endo Health Solutions, Inc.

**III.   PARTIES**

23.     Plaintiff, New Castle is a city and is the County Seat in Lawrence County, Pennsylvania. It is home to approximately 20,000 residents.

24.     Plaintiff, Aliquippa is a city in Beaver County, Pennsylvania. It is home to approximately 20,000 residents.

25.     Plaintiff, Union is a township in Washington County, Pennsylvania. It is home to approximately 6,000 residents.

26.     New Castle, Union and Aliquippa provide a wide range of social services on behalf of their residents including health related services. In addition, New Castle and Aliquippa provide funding for, including but not limited to, the Police Department and Fire Department. New Castle, specifically funds its District Attorney's Office, New Castle Defenders Association and Social Services. Union funds its own Police Department.

27.     All Plaintiffs fund their own benefits plan on behalf of their full time employees through which it pays medical costs including cost of treatment for opioid addiction, related diseases and/or conditions, etc.

28.     Plaintiffs self fund their own worker's compensation and disability plan through which they pay disability costs and related benefits for covered employees.

29.     Plaintiffs' health, prescription, workers' compensation and disability plans are administered by third party service providers that are in the business of administrating employee health plan accounts and worker's compensation and disability benefits.

8

Case ID: 180301961

30.    Defendant, Purdue Pharma L.P. ("PPL") is a limited partnership organized under the laws of Delaware with its principal place of business in Stamford, Connecticut.

31.    Defendant Purdue Pharma Inc. ("PPI") is a New York corporation with its principal place of business in Stamford, Connecticut.

32.    Defendant, The Purdue Frederick Company, Inc. ("PFC") is a New York corporation with its principal place of business in Stamford, Connecticut.

33.    PPL, PPI and PFC (collectively, "Purdue") are engaged in the manufacture, promotion, distribution and sale of opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 1. Purdue Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| OxyContin | Oxycodone hydrochloride extended release | Schedule II |
| MS Contin | Morphine sulfate extended release | Schedule II |
| Dilaudid | Hydromorphone hydrochloride | Schedule II |
| Dilaudid-HP | Hydromorphone hydrochloride | Schedule II |
| Butrans | Byprenorpine | Schedule III |
| Hysingla ER | Hydrocodone bitrate | Schedule II |
| Targiniq ER | Oxycodone hydrochloride and naloxone hydrochloride | Schedule II |

34.    Defendant, Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business in North Whales, Pennsylvania. Teva USA is a wholly owned subsidiary of Teva Pharmaceutical Industries, Ltd. ("Teva Ltd."), an Israeli corporation.

35.    Defendant, Cephalon, Inc. is a Delaware corporation with its former place of business in Frazer, Pennsylvania. In 2011, Teva Ltd. acquired Cephalon, Inc.

9

36.     Teva USA and Cephalon, Inc. (collectively, "Cephalon") work together to manufacture, promote, distribute and sell both brand name and generic versions of the opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 2. Cephalon Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Actiq | Fentanyl citrate | Schedule II |
| Fentora | Fentanyl citrate | Schedule II |

37.     Teva USA was in the business of selling generic opioids, including a generic form of OxyContin from 2005 to 2009 nationally, throughout the Commonwealth of Pennsylvania.

38.     Defendant, Johnson & Johnson ("J&J") is a New Jersey corporation with its principal place of business in New Brunswick, New Jersey.

39.     Defendant, Janssen Pharmaceutical, Inc. ("Janssen Pharmaceuticals") is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey, and is a wholly owned subsidiary of J&J.

40.     Janssen Pharmaceuticals, Inc. was formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc., which in turn was formerly known as Janssen Pharmaceutica, Inc.

41.     Defendant, Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("OMP"), now known as Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey.

42.     J&J is the only company that owns more than 10% of Janssen Pharmaceuticals stock. Upon information and belief, J&J controls the sale and development of Janssen Pharmaceuticals drugs and Janssen Pharmaceuticals profits inure to J&J's benefit.

Case ID: 180301961

43.    J&J, Janssen Pharmaceuticals, OMP and Janssen Pharmaceutica (collectively,

"Janssen") are or have been engaged in the manufacture, promotion, distribution and sale of

opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 3. Janssen Opiods*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Duragesic | Fentanyl | Schedule II |
| Nucynta | Tapentadol extended release | Schedule II |
| Nucynta Er | Tapentadol | Schedule II |

44.    Together, Nucynta and Nucynta ER accounted for $172 million in sales in 2014.

Prior to 2009, Duragesic accounted for at least $1 billion in annual sales.

45.    Defendant, Endo Health Solutions, ("EHS") is a Delaware corporation with its

principal place of business in Malvern, Pennsylvania.

46.    Defendant, Endo Pharmaceuticals, Inc. ("EPI") is a wholly owned subsidiary of

EHS and is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

47.    EHS and EPI (collectively, "Endo") manufacture, promote, distribute and sell

opioids nationally, throughout the Commonwealth of Pennsylvania, including the following:

*Table 4. Endo Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Opana ER | Oxymorphone hydrochloride extended release | Schedule II |
| Opana | Oxymorphone hydrochloride | Schedule II |
| Percodan | Oxymorphone hydrochloride and aspirin | Schedule II |
| Percocet | Oxymorphone hydrochloride and acetaminophen | Schedule II |

48.    Defendant, Allergan PLC is a publicly traded company, traded on the New York

Stock Exchange. It is incorporated in Ireland with its principal place of business in Dublin,

Ireland. Its U.S. headquarters are located in Parsippany, New Jersey. Actavis PLC acquired

11

Allergan PLC in March, 2015 and the combined company changed its name to Allergan PLC in March, 2015.

49.     Defendant, Allergan PLC acquired, merged with, or otherwise combined with several Actavis entities (including Actavis PLC and Actavis, Inc.), Watson entities (including Watson Pharmaceuticals, Inc. and Watson Laboratories, Inc.) and Warner Chilcott entities (including Warner Chilcott Company, LLC and Warner Chilcott PLC) that manufactured, marketed and sold opioids. Upon information and belief, profits from the sale of opioid products by Activis, Watson and Warner Chilcott ultimately inured or inure to the benfit of Defendant Allergan PLC.

50.     At all times material hereto, Defendant Allergan PLC and the Actavis, Watson and Warner Chilcott entities (collectively referred to herein as "Allergan/Activis") promoted, marketed and sold both brand name and generic versions of opioids throughout the Commonwealth of Pennsylvania.

*Table 5. Allergan/Actavis Opioids*

| Drug Name | Chemical Name | Schedule |
|-----------|---------------|----------|
| Kadian | Morphine sulfate extended release | Schedule II |
| Norco | Hydrocodone bitartrate and acetaminophen | Schedule II |
| Generic Duragesic | Fentanyl | Schedule II |
| Generic Kadian | Morphine sulfate extended release | Schedule II |
| Generic Opana | Oxymorphone hydrochloride | Schedule II |

## IV.  FACTS

51.     The pain relieving properties of opioids are well recognized by the medical community. Prescription opioids are similar and related to illegal drugs including heroin.

Case ID: 180301961

Prescription opioids are controlled substances regulated by the US Drug Enforcement Administration since 1970.

52. Studies and articles from the 70's and 80's made clear the reasons to avoid opioids, especially for long-term use and treatment of chronic pain.

53. In fact, leading journals advocated the prohibition of the use of opioid therapy for chronic pain.

54. Medical research shows that discontinuing opioids that have been prescribed for just a few weeks causes withdrawal symptoms which include severe anxiety, nausea, vomiting, headaches, agitation, insomnia, tremors, hallucinations, delirium, pain and other serious symptoms which will persist depending on how long the prescription opioids were used.

55. Further, the longer that you are on opioids and as your tolerance is increased, the dosage that is needed to achieve the required result becomes greater. Thus, patients who are on opioids for long use, their dosages escalate because of their tolerance to the drug which, in turn, causes an increased risk of overdosing and addiction.

56. However, despite this above information, Defendants promoted opioids for long-term use. In fact, in 2013 the FDA warned of grave risks of opioids. The FDA further warned that the use of prescription opioid drugs, even under medical supervision, can cause life threatening harm. The FDA warned that long-term use of opioids should be used as a last resort when other treatments are inadequate.

57. The FDA expanded its warnings for immediate release to apply to opioid pain medications. Defendants were well aware of the harms from long-term use of opioids which the FDA warned about.

13

58.     Despite the underlying knowledge of prescription opioids and its risk to users,
Defendants successfully marketed and achieved the dramatic expansion of prescription opioids
for use for medical purposes in the last 20 years.  From 1999 - 2010 the sale of prescription
opioids in the US nearly quadrupled.

59.     In 2010, nearly 20% of all doctor visits resulted in a prescription of an opioid.

60.     Nearly 70% of adults nationwide have used opioid pain medication in their
lifetime and approximately 30% have used opioids in the previous year.

61.     In 2012 7% of adults age 20 and over reported using a prescription opioid in the
past 30 days.

62.     In 2017, the CDC noted, prescription opioid related deaths and admissions for
treatment of opioid use disorder, have increased in parallel with increased opioids prescribed in
the United States which quadrupled from 1999 – 2010.  The sales of opioid pain medication have
increased in parallel with opioid related deaths.

63.     The principal cause of the opioid epidemic in 1999 – 2014 was the unprecedented
increase in use of prescription opioids.

64.     The CDC and other researchers have concluded that prescription opioids are the
principal causative factor driving both epidemics and opioid addiction and overdoses.

65.     Defendants' marketing campaign of prescription opioids to physicians,
pharmacist and patients has proximately caused damage to Plaintiffs and members of the Class.
Defendants created a false perception it was safe to use prescription opioids for an extended
period of time or long-term use.

66.     The unbranded marketing materials that Defendants provided did not disclose the
risks of addiction, abuse, misuse and overdose.

14

## V.    CLASS ALLEGATIONS

67.    Plaintiffs bring this action against Defendants on behalf of themselves and as a

class action, pursuant to Pennsylvania Rules of Civil Procedure 1701 *et seq.* on behalf of the

following class:

> All political subdivisions, municipalities, cities, townships and counties in
> the Commonwealth of Pennsylvania who incurred damages as a result
> Defendants' marketing of prescription opioids.

68.    Plaintiffs reserve the right to modify or amend the definition of the proposed class

before the Court determines whether certification is appropriate.  The Class does not include any

entities outside of the Commonwealth of Pennsylvania.

69.    The proposed class is so numerous that the case would be impracticable under the

circumstances.  While the exact number of members of the Class is unknown to Plaintiffs, it is

upon information and belief that the Class consists of hundreds of entities.

70.    The individual class members are ascertainable, as the names and addresses of all

class members can be identified through public records.

71.    Numerous questions of law or fact arise from Defendant's conduct that are

common to the Class, including but not limited to:

> a.  Whether Defendants unlawfully marketed prescription opioids in a
>     manner that was unsafe to citizens of the Commonwealth of
>     Pennsylvania;
> b.  Whether prescription opioids are intended for long-term use;
> c.  Whether prescription opioids are safe for long-term use;
> d.  Whether prescription opioids prescribed for long-term use are
>     addictive;
> e.  Whether prescription opioids should have been marketed for long-term
>     use;
> f.  Whether municipalities, cities, counties, townships and other political
>     subdivisions have been harmed as a result of Defendants marketing
>     prescription opioids for long-term use;
> g.  Whether Plaintiffs and class members are entitled to damages;

Case ID: 180301961

h. Whether Plaintiffs and class members are entitled to injunctive relief; and

i. Whether Defendants are liable.

72. These and other questions are common to the Class and predominate over any questions affecting only individual class members.

73. Plaintiff's claims are typical of the Class in that Plaintiffs suffered damages as a result of Defendants' marketing of prescription opioids for long-term use when they are unsafe for long-term use.

74. Plaintiffs will fairly and adequately represent the interests of the Class in that it has no conflict with any other members of the Class. Furthermore, Plaintiffs have retained competent counsel experienced in class action and other complex commercial litigation.

75. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

76. This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitive litigation. There will be no material difficulty in the management of this action as a class action.

77. The prosecution of separate actions by individual class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

78. Class members who have already retained counsel will have the option, if they have the financial ability, to opt-out and prosecute their actions individually, should they so choose, without the use of a class action. However, numerous counties, municipalities, townships and cities will not have the financial resources to retain a lawyer to prosecute this

16

action. A class action will be an effective procedural mechanism to allow smaller cities, counties, municipalities and townships to be reimbursed for harm done by Defendants.

### FIRST CAUSE OF ACTION
### CONSUMER FRAUD-DECEPTIVE PRACTICES 73 P.S. § 201-1 – 201-9.3 *et seq.*
### (AGAINST ALL DEFENDANTS)

79.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

80.     73 P.S. § 201-1 – 201-9.3 *et seq.*, ("Pennsylvania Unfair Trade Practices and Consumer Protection Law" or "UTPCPL") makes it unlawful for a person or business to employ "unfair methods of competition" and "unfair or deceptive acts or practices" by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have. 73 P.S. § 201.2(4)(v).

81.     Defendants have engaged in unfair or deceptive acts or practices in violation of UTPCPL as set forth above.

82.     Defendants' practices as described herein are unfair or deceptive acts or practices that violate UTPCPL because the practices were and are intended to deceive consumers and occurred and continue to occur in the course of conduct involving trade and commerce in New Castle, Aliquippa, Union and throughout the Commonwealth of Pennsylvania.

83.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and/or by aiding and abetting third parties, violated the UTPCPL by making and disseminating untrue, false and misleading statements to Pennsylvania prescribers and consumers to promote the sale and use of opioids to treat chronic pain, including for long-term use, or by causing untrue, false and misleading statements about opioids to be made or

17

Case ID: 180301961

disseminated to Pennsylvania and County prescribers and consumers in order to promote the sale and use of opioids to treat chronic pain, including for long-term use. These untrue, false and misleading statements included, but were not limited to:

      a.  Misrepresenting the truth about how opioids lead to addiction;

      b.  Misrepresenting that opioids improve function;

      c.  Misrepresenting that addiction risk can be managed;

      d.  Misleading doctors, patients and payors through the use of misleading terms like "pseudoaddiction";

      e.  Falsely claiming that withdrawal is simply managed;

      f.  Misrepresenting that increased doses pose no significant additional risks;

      g.  Falsely omitting or minimizing the adverse effects of opioids and overstating the risks of alternative forms of pain treatment and management.

84.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties, and by aiding and abetting third parties, also violated the UTPCPL by making statements that omitted or concealed material facts to promote the sale and use of opioids to treat chronic pain, including for long-term use. Defendants and their third-party allies repeatedly failed to disclose or minimized material facts about the risks of opioids, including the risk of addiction and their risks compared to alternative treatments. Such material omissions were deceptive and misleading in their own right, and further rendered even otherwise truthful statements about opioids untrue, false and misleading, creating a misleading impression of the risks, benefits and superiority of opioids for treatment of chronic pain, including for long-term use.

Case ID: 180301961

85.     At all times relevant to this Complaint, Defendants, directly, through their control of third parties and by aiding and abetting third parties, made and disseminated the foregoing untrue, false and misleading statements and material omissions, through an array of marketing channels, including but not limited to: in-person and other forms of detailing; speaker events, including meals, conferences and teleconferences; CMEs; studies and journal articles and supplements; advertisements; and brochures and other patient education materials.

86.     Defendants knew at the time of making or disseminating these misstatements and material omissions, or causing these misstatements and material omissions statements to be made or disseminated, that they were untrue, false or misleading and therefore likely to deceive the public. In addition, Defendants knew or should have known that their marketing and promotional efforts created an untrue, false and misleading impression of the risks, benefits and superiority of opioids.

87.     In sum, Defendants: (a) directly engaged in untrue, false and misleading marketing; (b) disseminated the untrue, false and misleading marketing through third parties; and (c) aided and abetted the untrue, false and misleading marketing third parties.

88.     All of this conduct, separately and collectively, was intended to deceive Pennsylvania consumers who used or paid for opioids for chronic pain; Pennsylvania physicians who prescribed opioids to consumers to treat chronic pain; and Pennsylvania payors, including New Castle, Aliquippa and Union, who purchased or covered the purchase of opioids for chronic pain. As a direct result of the foregoing acts and practices, the Defendants have received, or will receive, income, profits and other benefits, which they would not have received if they had not engaged in the violations of the UTPCPL as described in this Complaint.

19

89.    In addition, 73 P.S. § 201-8(b) specifically allows the Plaintiffs to bring this claim for a penalty for each violation by the Defendants.

**SECOND CAUSE OF ACTION**
**PUBLIC NUISANCE**
**(AGAINST ALL DEFENDANTS)**

90.    Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

91.    Defendants' conduct constitutes a public nuisance.

92.    Defendants, individually and acting through their employees and agents and in concert with each other, have intentionally, recklessly or negligently engaged in conduct or omissions which endanger or injure other property, health, safety or comfort of a considerable number of persons in the New Castle, Aliquippa and Union by their untrue, false and misleading promotion and marketing of opioids for use by residents of New Castle, Aliquippa and Union.

93.    Defendants' marketing conduct and subsequent sale of its opioid products is not only unlawful, but has also resulted in substantial and unreasonable interference with the public health, and the public's enjoyment of its right that not to be defrauded or negligently injured.

94.    Defendants' conduct is not insubstantial or fleeting. Indeed, Defendants' unlawful conduct has so severely impacted public health on every geographic and demographic level that the public nuisance perpetrated by Defendants' conduct is commonly referred to as "crisis" or an "epidemic". It has caused deaths, serious injuries and a severe disruption of public peace, order and safety; it is ongoing and it is producing permanent and long-lasting damage.

95.    By reason of the foregoing, Plaintiffs have been injured and continues to be injured in that it has paid and continues to pay for long-term opioid treatment using opioids manufactured or distributed by Defendants or by other drug makers. Plaintiffs have suffered

20

Case ID: 180301961

additional damages and continues to suffer damage for the additional costs of providing and using opioids long-term to treat chronic pain.

### THIRD CAUSE OF ACTION
### UNJUST ENRICHMENT
### VIOLATIONS OF THE COMMON LAW PROHIBITION ON UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

96.     Plaintiffs incorporate the allegations within all prior paragraphs within this Complaint as if they were fully set forth herein.

97.     Defendants have unjustly retained a benefit to the Plaintiffs' detriment, and the Defendants' retention of the benefit violates the fundamental principles of justice, equity and good conscience.

98.     By illegally and deceptively promoting opioids to treat chronic pain, directly, through their control of third parties, and by acting in concert with third parties, Defendants have unjustly enriched themselves at Plaintiffs' expense. Plaintiffs' have made payments for opioid prescriptions and Defendants benefited from those payments. Because of their deceptive promotion of opioids, Defendants obtained enrichment they would not otherwise have obtained. The enrichment was without justification and Plaintiffs claims a remedy provided by law.

99.     In addition, and by reason of the foregoing, Plaintiffs were injured and continues to be injured in that Defendants' ongoing concerted actions in illegally and deceptively marketing opioids caused doctors and other health care providers to prescribe and Plaintiffs to pay for long-term opioid treatment using opioids manufactured by Defendants or by other drug makers. Defendants caused and are responsible for those costs and claims. Plaintiffs also incurred damages because of the increased costs associated with medical services rendered to the opioid crisis including emergency response costs, law enforcement authorities costs, criminal justice system and social and health care costs, all of which resulted from and are attributed to

21

the long-term use of prescription opioids manufactured, distributed, marketed and/or sold by
Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment on each Cause of Action against Defendants
in excess of Fifty Thousand Dollars ($50,000), jointly and severally awarding Plaintiffs:

1. Compensatory damages in an amount sufficient to fairly and completely compensate
   Plaintiffs for all damages;

2. Treble damages, penalties and costs pursuant to Consumer Fraud – Deceptive
   Practices, violations of 73 P.S. § 201-1 – 201-9.3 *et seq.*;

3. Certifying the Class;

4. A declaratory judgment requiring Defendants to abate the public health nuisance;

5. Punitive damages;

6. Interest, costs and attorney fees; and

7. Such other and further relief as this Court deems just and proper.

LEVIN SEDRAN & BERMAN LLP

Date:   March 16, 2018                    /s/ Daniel C. Levin
                                          Arnold Levin, Esquire
                                          Daniel C. Levin, Esquire
                                          Charles E. Schaffer, Esquire
                                          510 Walnut Street, Ste. 500
                                          Philadelphia, Pa 19106
                                          215-592-1500

                                          *Attorneys for Plaintiffs*

Case ID: 180301961

# VERIFICATION

I, <u>Robert Eckert</u>, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

<u>3-12-18</u>
Date

Case ID: 180301961

## VERIFICATION

I, _Anthony Mastrangelo_, hereby state that I am the plaintiff in this action, and that the facts set forth in the foregoing Class Action Complaint are true and correct to the best of my knowledge. I understand that this Verification is being made subject to 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorizations.

_3/10/18_
Date

_Anthony G. Mastrangelo_