# Exhibit 4

Rule 408 Settlement Communication – Privileged and Confidential –
Cannot be used for any purpose except settlement discussion

PEC/MSGE Fee Allocation Agreement – October 9, 2020

1. This agreement applies to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ the allocation of attorneys' fees for outside counsel in connection with the Purdue bankruptcy.

2. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ one singular "all attorneys' fees" fund ▬▬▬▬▬▬▬▬▬ shall be deposited (as the funds are received) into an interest-bearing account to cover all attorneys' fees for any lawyer involved in opioid litigation on behalf of governmental entities/political subdivisions that agree to the terms of this agreement, whether a member of the PEC in the national opioids MDL or not. The fund does NOT cover fees for lawyers related to representing state Attorneys General, hospitals, third party payers, NAS babies, and/or personal injury/wrongful death claimants, or any other entity except governmental entities/political subdivisions, as payment of fees for those engagements will be subject to a different procedure and/or the claims are not covered by this agreement

3. Any fees awarded for such outside counsel in the Purdue bankruptcy will likewise be deposited into a separate single interest-bearing account described in paragraph 2 above. The Purdue fees will be used to cover (and will likewise exclude fees set forth in paragraph 2 above) the same group of attorneys as described in paragraph 2 above.

4. This is a voluntary procedure for those attorneys or firms who are eligible to apply to the fund. If any law firm/attorney (the "applicant") chooses to apply, doing so will require him or her to certify on behalf of himself, herself and his or her law firm that the application to the fund is in lieu of enforcing any contingency fee retention agreement they may have with any government entity/political subdivision opioid litigation client(s), excluding those clients excluded in paragraph 2 above. Participation in this fund, however, does not preclude applicants from participating in any fee funds or "backstops" established in state specific MOU's or agreements, so long as such participation, or anticipation of such participation, is fully disclosed to the arbiters as further described herein. Moreover, applicants knowingly and expressly waive any appellate rights except those described herein and waive the ability to assert the lack of enforceability of the allocation reached through the arbitration procedures outlined herein.

5. The fund is intended to be used to pay fees to applicants (and their respective law firms) who have (a) contributed "common benefit" work to the litigation and settlement at issue; or, (b) valid and enforceable contingency agreements with litigating clients who had pending cases against the settling defendants in either state or federal court (or both) as of the date of August 21; or, (c) who fall into both categories (a) and (b). Awards from the fund will be made via binding arbitration by a three-arbitrator Panel comprised of: David R. Cohen, Randi S. Ellis, and Hon. David R. Herndon (ret.). The payment of fees shall be handled in accordance with the terms of the final settlement documents (i.e., they may be paid over time as funds are paid into the fee account). The fee fund shall be administered by an administrator who shall pay fee awards as directed by the Panel or Judge Polster with regard to the 12.5% as referenced in Paragraph 9 below.

Rule 408 Settlement Communication – Privileged and Confidential – 
Cannot be used for any purpose except settlement discussion

6. The arbiters shall ultimately establish the rules for the arbitration process and the submission of fee applications, including the submission of documentary and/or other evidence; interviews with applicants and/or other counsel that they deem appropriate, and other means of creating a record upon which fee awards will be based and for any appeal taken in accordance with the intentions of this document. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Fee awards made by the Panel with respect to the Purdue bankruptcy portion of the fee fund shall be appealable solely to Judge Drain of the United States Bankruptcy Court for the Southern District of New York (under an abuse of discretion standard) who has final authority over the Purdue portion of any fee awards.

7. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8. Notwithstanding Judge Polster's oversight and appellate authority, and his jurisdiction to enforce the fee allocations derived through this process, participation in the fund process shall not create broader general federal jurisdiction, equitable or otherwise, over applicants to the fund who are not otherwise subject to federal jurisdiction, nor shall the fund require participation by any applicant or its client(s) in an involuntary class action or the signing of a participation agreement as part of the criteria for participating in the fund. The Panel or Judge Polster, as the case may be, however, may request the execution of a document or a certification with respect to representations or statements made to the Panel or on appeal from the Panel's decision in order to participate in this fee process.

9. 

10. Any appeal to Judge Drain of the Purdue bankruptcy portion of the fee fund will also be subject to an abuse of discretion standard, however there will be no "hold back" of funds out of the Purdue bankruptcy portion of the fee fund, and it is anticipated that the arbiters will allocate the entirety of the Purdue bankruptcy portion of the fee fund. Judge Drain's determination of any appeal is final and binding. With regard to the Purdue fees, any appeal to Judge Drain shall be made within twenty-eight (28) days of the Panel decision as to any

Page 2 of 4

Rule 408 Settlement Communication – Privileged and Confidential –
Cannot be used for any purpose except settlement discussion

applicant, and no payments shall be made until the appeal to Judge Drain has been concluded.

11. With respect to the entirety of the fee funds ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the Purdue bankruptcy portion, the arbiters will be asked to give consideration to the *Johnson* factors, as well as the following factors in reaching their determination (which factors may be applied and given relative weight in the arbiters' collective discretion):(a) the applicant's contemporaneously recorded time and labor dedicated to opioid litigation along with the applicant's financial commitment to the case. Claimed "time" will not be automatically accepted by the arbiters but will be critically reviewed and given substantially more weight and consideration if such time was subject to the audit process described in any Pretrial Order(s) governing the collection of common benefit time; (b) the novelty and complexity of the lawsuit and causes of action asserted by the applicants' client(s); (c) the skill requisite to perform legal services properly and the undesirability of the case,; (d) the preclusion of other employment by the attorney/firm due to time dedication to opioid litigation; (e) the "common benefit," if any, alleged to have been conferred by the attorney/firm and whether such common benefit work product by that attorney/firm was used by others in parallel litigations whether within or outside of the MDL; (f) any contingent fee agreements with clients, the nature and extent of any work for those clients, whether those clients actively litigated and, if so, the nature and procedural history of such case(s); (g) the experience, reputation, and ability of the attorney/firm; (h) whether the attorney/firms' clients brought claims against the settling Defendants; (i) the status of discovery in the cases primarily handled by applicant; (j) the nature of any work by the applicant on "bellwether" cases or cases that were similarly active in litigation; (k) any pressure points successfully exerted by applicants in cases against settling defendants and any risk for settling defendants created by applicants in cases against them; (l) any risk for defendants created by applicants in cases against the settling defendants; (m) successful motion practice in cases worked on by the applicant; (n) the date of filing of any cases filed by the applicant; (o) obtaining consolidation of the litigation in the applicant's jurisdiction; (p) the number and population of entities represented by the applicant and the fees that would have been awarded under the extinguished contingent fee agreements; (q) whether any of the applicants' client entities were bellwether or lead plaintiffs; (r) whether the applicants' clients brought claims against the settling defendants; (s) the status of discovery in the cases primarily handled by the applicant; (t) whether the applicant has had a leadership role in the litigation, whether in state or federal court; (u) whether the applicant has had a leadership role in any negotiations aimed at resolving the litigation; (v) whether the applicant's cases have survived motions to dismiss; (w) and any other factors that the Panel finds to be appropriate to consider after input from fund applicants.

12. To the extent an applicant has already been paid or expects to be paid a fee in connection with a settlement of opioid litigation, the details of such payment must be disclosed to the arbiters prior to the issuance of award.

13. Any applicant claiming that he or she substantially benefited cases other than those in which he or she entered an appearance as counsel must substantiate those claims by proffering factual support, such as proper supporting affidavits and other documents. (See Rubenstein, William B., "Report and Recommendation Addressing Motion for Common Benefit Fund,"



Page 3 of 4

Rule 408 Settlement Communication – Privileged and Confidential –
Cannot be used for any purpose except settlement discussion

4 & 4 n.5, In re: Nat'l Prescription Opiate Litig., Case: 1:17-md-02804, Doc #: 3319 (June 3, 2020).)

14. It is intention of all parties participating in this fee allocation protocol that there will be total transparency to the arbiters and to fund participants. Any and all monies in attorney's fees, including referral fees, or expenses paid, or promised for payment, to any applicant in any opioid litigation shall be disclosed to the arbitration Panel as a condition of participating in the fund and prior to an award from the Panel. Any payment, expectation of payment or perceived entitlement to participate in a state specific "backstop" agreement plan, or any other agreement reached with a state Attorney General's office or any political subdivision or any other source regarding the payment of fees, must be disclosed to the arbiters. Similarly, any right to payment from any *other* fund, for example a fund for payment to lawyers representing Attorneys General or Tribes, or political subdivisions shall be disclosed to the arbiters. Because it is anticipated that there will be multiple firms listed on contingent fee agreements with political subdivisions, the Panel shall establish procedures for who should petition for fees from such groups and to whom the fees shall be paid and thereafter distributed to all co-counsel in accordance with applicable agreements.

15. Other than as set forth above, fees allocated and awarded under the procedure outlined herein shall not be subject to any additional common benefit order or other effort to tax recoveries awarded by the arbitration Panel, except that it is understood that all applicants shall identify for the arbiters, for purposes of this fund only, whether they utilized state litigation work product, or MDL work product, including but not limited ARCOS data, document repositories and deposition transcripts, and whether they signed the MDL participation agreement.

16. The costs associated with the arbitration process are to be funded by the Defendants. If the arbitration process is not funded by the Defendants, the payments will come from the fee funds or the interest thereon.

_____
Joseph Rice
Motley Rice, LLC
(*PEC Co-Lead*)

_____
Paul J. Geller
Robbins Geller
Rudman & Dowd, LLP
(*PEC Member*)

_____
Christopher A. Seeger
Seeger Weiss LLP
(*PEC Member*)

_____
Mikal C. Watts
Watts Guerra, LLP
(*MSGE*)

_____
John B. White, Jr.
Harrison White, PC
(*MSGE*)

_____
F. Jerome Tapley
Cory Watson, PC
(*MSGE*)

Page 4 of 4