# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

----------------------------------------------------------------- X

**IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**

This document relates to:

All cases identified in Exhibit A

----------------------------------------------------------------- X

MDL No. 2804

Hon. Dan Aaron Polster

**POSITION STATEMENT OF THE NEW YORK ATTORNEY GENERAL IN SUPPORT OF SETTLING DISTRIBUTORS' MOTION TO DISMISS CLAIMS FILED BY NON-PARTICIPATING NEW YORK SUBDIVISIONS AS BARRED BY STATUTE**

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005

Andrew Amer
*of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................. 3

    A.    New York's Response to the Opioid Crisis ................................................... 3

    B.    New York's Statewide Opioid Settlement with Distributors ................................. 8

    C.    Procedural History ................................................................................. 11

ARGUMENT ...................................................................................................................... 11

  I.    THE NY SUBDIVISIONS LACK THE LEGAL CAPACITY TO
       CHALLENGE § 25.18(d) OF THE MENTAL HYGIENE LAW ............................ 11

  II.    NEW YORK'S STATUTE LIMITING THE ABILITY OF POLITICAL
       SUBDIVISIONS TO ASSERT AND MAINTAIN CLAIMS RELEASED IN
       STATEWIDE OPIOID SETTLEMENTS IS VALID AND ENFORCEABLE ........ 15

    A.    The Petition Clause Does Not Preempt The Act ....................................... 15

    B.    The Petition Clause Does Not Preclude A State Legislature From Imposing
       Limits On The Right To Bring A Cause Of Action ................................. 17

  III.    THE ACT DOES NOT VIOLATE NEW YORK'S HOME-RULE
       PROVISION BECAUSE IT ADDRESSES A MATTER OF SUBSTANTIAL
       STATEWIDE CONCERN ............................................................................ 18

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

**Cases**

*Adler v. Deegan*, 251 N.Y. 467 (1929) ........................................................................ 19

*BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516 (2002) ................................................... 16

*Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379 (2011) .................................... 16, 17

*California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972) ............ 16

*Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954
    F. Supp. 2d 127 (E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017) ..................... 13

*Christopher v. Harbury*, 536 U.S. 403 (2002) ............................................................ 17

*City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384 (2d Cir. 2008) ..................... 18

*City of New York v. State of New York,* 86 N.Y.2d 286, 289 (1995) ...................... 13, 15

*Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94 (1973) ............ 16

*County of Rensselaer v. Regan*, 80 N.Y.2d 988 (1992) ........................................... 13, 14

*County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387 (E.D.N.Y.
    1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990) .............................................................. 17

*Empire State Chapter of Associated Builders & Contractors, Inc. v. Smith*, 21
    N.Y.3d 309 (2013) ............................................................................................... 18, 19

*Friedman v. Bloomberg L.P.*, 884 F.3d 83 (2d Cir. 2017) ........................................... 18

*Hammond v. United States*, 786 F.2d 8 (1st Cir.1986) ................................................. 18

*In re World Trade Center Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377
    (2017) ................................................................................................................... 13, 15

*In re World Trade Center Lower Manhattan Disaster Site Litigation*, 892 F.3d
    108 (2d Cir. 2018) ................................................................................................... 14

*Jacoby & Meyets, LLP v. The Presiding Justices of the First, Second, Third and
    Fourth Departments*, 852 F.3d 178 (2d Cir. 2017) .................................................. 16

*Mosdos Chofetz Chaim Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568
    (S.D.N.Y. 2010) ....................................................................................................... 17

*Patrolmen's Benevolent Assn. of City of N.Y. v. City of New York*, 97 N.Y.2d 378
(2001) ........................................................................................................ 14, 18, 19

*Sampson v. Garrett*, 917 F.3d 880 (6th Cir. 2019) ...................................................... 17

*Shurtleff v. City of Boston, Massachusetts*, 142 S. Ct. 1583 (2022) ........................... 17

*Suburban Restoration Co., Inc. v. ACMAT Corp.*, 700 F.2d 98 (2d Cir. 1983) ......... 17

*Sure-Tan, Inc. v. NLRB*, 467 U.S. 883 (1984) ........................................................... 16

*Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019) ......... 14, 15

*United Transp. Union v. State Bar of Mich.*, 401 U.S. 576 (1971) ............................. 16

**Statutes**

16 Del. C. § 4809B ........................................................................................................ 6

735 ILCS 5/13-226 (b) .................................................................................................. 7

Conn. Gen. Stat. Ann. § 3-129h .................................................................................... 6

Ga. Code Ann. § 10-13B-3(a) ....................................................................................... 6

IC 4-6-15-3 .................................................................................................................... 7

K.S.A. 75-780 ............................................................................................................... 7

Ky. St. § 15.293(4)(d) ................................................................................................... 7

N.Y. Finance Law § 99-nn ............................................................................................ 4

N.Y. Mental Hygiene Law § 25.18 ....................................................................... *passim*

T.C.A. § 47-17-105 ....................................................................................................... 7

W.S.A. 165.12 ............................................................................................................... 8

**Other Authorities**

Carol Rice Andrews, *A Right of Access to Court Under the Petition Clause of the
First Amendment: Defining the Right*, 60 Ohio St. L.J. 557 (1999) ....................... 15

New York Sponsors Memorandum, 2021 S.B. 7194 ................................................. 3, 4

**Rules**

Fed. R. Civ. P. 17(b)(3) .............................................................................................. 13

**Treatises**

1 William Blackstone, Commentaries ........................................................................................... 15

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................................... 15

Letitia James, the Attorney General of the State of New York, respectfully submits this
Position Statement in support of Settling Distributors' Motion (Dkt. No. 4398) (the "Motion") to
dismiss the claims of certain New York subdivisions as barred by New York's Mental Hygiene
Law § 25.18(d) (the "Act"), in accordance with the Court's request in its Order entered on April
25, 2022.

## PRELIMINARY STATEMENT

The Motion before the Court relies on the application of the Act, a landmark piece of
legislation passed with full bipartisan support by the New York State Senate and Assembly to
address New York's opioid crisis. The Act has already facilitated settlements entered into by the
New York Attorney General with opioid defendants, including the Settling Distributors, that will
bring into the State over $1.5 billion in much needed funds to address the myriad harms of the
opioid epidemic. As an integral part of the Act, the Legislature imposed certain limitations on the
ability of political subdivisions to assert and maintain claims against opioid defendants where
those claims are released by the Attorney General as part of a statewide opioid settlement. This
limitation has assisted the State in recovering the maximum funds possible under opioid
settlements entered into with the Settling Distributors and other opioid defendants by enabling
New York to deliver claim releases to those parties for 100% of its subdivisions.

The plaintiffs opposing the Motion are all political subdivisions of New York (hereafter,
"NY Subdivisions"). They seek to invalidate the Act because the Attorney General released their
claims against the Settling Distributors in the actions listed on the attached Exhibit A, and
thereby extinguished those claims by operation of the limitation imposed by the Legislature. The
NY Subdivisions' opposition (Dkt. No. 4445) ("Opposition") principally asks that this Court put
the Settling Distributors' Motion on a shelf to await the outcome of a lawsuit that a handful of

them initiated in the United States District Court for the Eastern District of New York (the "EDNY Action"), including any appeal, and makes only passing reference to the two claims in that case asserting violations of "federal and state constitutions" – namely, that the Act is preempted by the Petition Clause of the First Amendment and violates the "Home Rule" provision of Article IX of the New York Constitution. *See* Opposition at 3-4, Exh. B at ¶¶ 19, 26, 32, 41-45.

This Court should reject the request by the NY Subdivisions to defer ruling on the Motion until the EDNY Action is resolved on appeal, which could take years. The Motion presents an issue of paramount importance for statewide opioid settlements – the enforceability of laws enacted by ten states (thus far) placing limitations on subdivision claims against released opioid defendants to facilitate statewide opioid settlements. This Court, chosen to supervise pretrial proceedings in all federal opioid actions, should hear and decide this question without delay or deferral to other courts.

Turning to the merits of the Motion, the Act requires the Court to dismiss the NY Subdivisions' claims for multiple reasons.

As a threshold matter, under settled law New York's political subdivisions lack the legal capacity to challenge acts of the legislature except in very limited circumstances, none of which apply here. But even if the NY Subdivisions did have the legal capacity to challenge the Act, their arguments are without merit. The Act does not conflict with the Petition Clause because under that constitutional provision, the right of access to courts is guaranteed to *the public*, not government entities. Accordingly, it does not conflict with the limitation in the Act on the ability of political subdivisions to assert and maintain claims against released opioid defendants. And in any event, the Petition Clause protects only the right of access to courts, not the right to assert

2

any particular cause of action that a legislature may otherwise choose to abrogate or limit.

The NY Subdivisions' other challenge under the Home Rule provision of the New York Constitution fares no better. New York courts have long held that where, as here, a statute bears a reasonable relationship to addressing an important state interest, it is not subject to home-rule restrictions, even if the legislation simultaneously relates to the property, affairs or government of a local government.

For these reasons, the Act is a valid exercise of authority by the New York Legislature and the Settling Distributors' Motion should be granted in its entirety.

## **BACKGROUND**

### A.    **New York's Response to the Opioid Crisis**

The New York Legislature, with the strongest possible showing of bipartisan support, amended the State's laws to address the devastating impact of the opioid crisis in New York. By a unanimous vote in both the Assembly and Senate, the Legislature passed a bill in June 2021 to amend the State Finance Law, Mental Hygiene Law, and Executive Law for the purpose of establishing an opioid settlement fund and advisory board to ensure that substantial monies generated by judgments and settlements from statewide opioid litigation against manufacturers, distributors, and dispensers are dedicated towards substance use disorder prevention, treatment and recovery. *See* New York Sponsors Memorandum, 2021 S.B. 7194, available at https://www.nysenate.gov/legislation/bills/2021/S7194. In justifying the need for an opioid settlement fund, the Legislature cited to the potential liability of defendants in lawsuits brought by New York and other states against opioid defendants, including the Settling Distributors:

> While a number of factors helped cause the overdose
> epidemic, one significant element was the huge increase in
> prescribing of opioid medications that began in the 1990s. Yet, for

3

> years, the corporations that manufactured, distributed, and sold
> these drugs willfully ignored or misrepresented the impact of these
> medications and the extent of the problem. To hold them
> accountable for their actions . . . New York, along with other states
> and localities, have brought a number of lawsuits and other
> enforcement actions against these entities. . . .
>
> The lawsuits and enforcement actions that New York is
> currently taking against manufacturers and distributors of opioids
> could result in the State receiving millions of dollars. Any money
> obtained from these lawsuits must be used to address the harms
> caused by drug use and by the ways in which drug laws have been
> enforced.

*Id*. (emphasis added). The Governor signed this legislation into law on June 29, 2021. *Id*.

The Act consists of a number of critical components. **First**, the Legislature amended the State Finance Law to establish a special, segregated "opioid settlement fund" that "shall not be commingled with any other funds in the custody of the state comptroller" to receive money paid to the state "as a result of the settlement of litigation" or "judgments" or other resolution of claims against opioid defendants, with such funds to be expended only on eligible approved uses for "prevention, treatment, harm reduction and recovery services related to substance use disorders and co-occurring mental illnesses" in accordance with the terms of statewide opioid settlements. N.Y. Finance Law § 99-nn.

**Second**, the Legislature amended the Mental Hygiene Law to: (i) define key terms to be used in statewide settlements between the State and opioid defendants, including what qualifies as a statewide opioid settlement, an approved use for monies in the opioid settlement fund, and a government subdivision that may participate in statewide opioid settlements; (ii) require the appropriation of monies in the opioid settlement fund for distribution to subdivisions upon their application consistent with the approved uses, with detailed accounting by each subdivision receiving a distribution demonstrating "how the funds were used as well as an analysis and

4

evaluation of the services and programs funded;" and (iii) establish an advisory board under the

New York Office of Addiction Services and Supports ("OASAS") to provide recommendations

to the Legislature on how funding received by the opioid settlement fund shall be allocated. N.Y.

Mental Hygiene Law § 25.18(a)-(c).

      **Third**, to strengthen the negotiating position of the State when seeking to enter into

statewide opioid settlements for the purpose of maximizing the funds to be received, the

Legislature amended the Mental Hygiene Law to bar subdivisions from filing future claims and

extinguish past claims asserted by subdivisions after June 30, 2019 when released by the

Attorney General as part of a statewide opioid settlement. N.Y. Mental Hygiene Law

§ 25.18(d).[1] More specifically, this negotiation-enhancing clause provides as follows:

> (d) Limitation on authority of government entities to bring
> lawsuits. No government entity shall have the authority to assert
> released claims against entities released by the [Office of the
> Attorney General] in a statewide opioid settlement agreement
> executed by the [Office of the Attorney General] and the released
> party on or after June first, two thousand twenty-one. Any action
> filed by a government entity after June thirtieth, two thousand
> nineteen asserting released claims against a manufacturer,
> distributor, or dispenser of opioid products shall be extinguished

---

[1] The NY Subdivisions assert that the Act does not extinguish their claims "under the New York State Drug Dealer Liability Act." Opposition at 1. That assertion is plainly wrong. Section 25.18(d) broadly applies to all "released claims released" by the Attorney General in a statewide opioid settlement agreement." N.Y. Mental Hygiene Law § 25.18(d). The Attorney General has released the Distributors from all "Released Claims" as defined in the Distributors Settlement Agreement (*see* Motion, Exhibit C at pdf pages 9-10), and that term, intended to "be interpreted broadly," includes without limitation any claim asserted by a "Litigating Subdivision in any federal, state or local action or proceeding . . . based on, arising out of, or relating to" any "alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever . . . relating in any way to" the manufacture, marketing, distribution, or dispensing of opioid products. Motion, Exhibit B at II.L, ZZ, AAA. The release provided by the Attorney General certainly encompasses claims under the New York State Drug Dealer Liability Act.

5

> by operation of law upon being released by the [Office of the
> Attorney General] in such statewide opioid settlement agreement.

*Id*. This provision recognizes the economic reality of the negotiating dynamics between the State

and opioid defendants – namely, that the more subdivision claim releases the Attorney General

can deliver to an opioid defendant as part of a statewide opioid settlement with that defendant,

the greater the amount of money the defendant will pay into the opioid settlement fund, thereby

maximizing the recovery for the State and its residents.

In addition to New York, nine other states have enacted provisions that place limitations

on the authority of subdivisions to assert claims against settling opioid defendants and/or

authorize the state's attorney general to release such claims. The chart below summarizes all of

these statutory limitations on subdivision authority:

| State | Citation | Description |
|---|---|---|
| Connecticut | Conn. Gen. Stat. Ann. § 3-129h (effective June 23, 2021) | The attorney general is authorized to "enter into any agreement concerning any state-wide opioid claim, including an agreement to compromise, release, waive or otherwise settle such claim, on behalf of the state and any political subdivisions," and subdivisions are barred from asserting any future "state-wide opioid claim for which the state has entered into" a settlement agreement. |
| Delaware | 16 Del. C. § 4809B (effective October 14, 2021) | "No government entity has the authority to assert released claims after February 28, 2021 against entities released by the Department of Justice in a statewide opioid settlement agreement executed by the Attorney General and the released party." |
| Georgia | Ga. Code Ann. § 10-13B-3(a) (effective May 2, 2022) | "Entry into a state-wide opioid settlement agreement shall serve to bar any and all past, present or future claims on behalf of any governmental entity seeking to recover against any business or person that is a released entity under the terms of the relevant settlement. . . . No such claim barred by this Code section shall be brought, threatened, |

6

| | | |
|---|---|---|
| | | asserted or pursued in any way in any court, and any such claim shall be dismissed by the court in which the claim is brought." |
| Illinois | 735 ILCS 5/13-226 (b) (effective July 9, 2021) | Future claims by subdivisions are barred against an opioid defendant that is subject to a national multistate opioid settlement without the attorney general's approval, and the attorney general is authorized to "release with prejudice any [pending] claims brought by a unit of local government or school district against an opioid defendant that are subject to a national multistate opioid settlement" provided counties representing 60% of the population of Illinois, including all counties with a population of at least 250,000, have entered into an intrastate allocation agreement with the attorney general. |
| Indiana | IC 4-6-15-3 (effective March 10, 2022) | "After January 1, 2021, no political subdivision shall initiate or file opioid litigation in any court." |
| Kansas | K.S.A. 75-780 (effective May 27, 2021) | Barring any municipality from filing or becoming a party to opioid litigation on and after January 1, 2021 without prior approval of the attorney general and requiring any such municipality to "withdraw such opioid litigation." |
| Kentucky | Ky. St. § 15.293(4)(d) (effective March 24, 2021 to April 25, 2022) | To the extent a settlement has been reached with certain specific opioid defendants, each subdivision "shall be deemed to have released its claims against" those settling defendants. |
| New York | Mental Health Law §25.18(d) (effective June 29, 2021) | Barring government entities from asserting claims against opioid defendants released by the attorney general in a statewide opioid settlement on or after June 1, 2021 and extinguishing any action filed by a government entity after June 30, 2019 asserting released claims against an opioid defendant upon being released pursuant to a statewide opioid settlement. |
| Tennessee | T.C.A. § 47-17-105 (effective May 24, 2021) | Upon the attorney general entering into a statewide opioid settlement agreement, no subdivision shall have the authority to assert any released claim against any settling defendant and "[a]ny pending or future litigation brought by a [subdivision] asserting |

| | | |
|---|---|---|
| | | released claims against released entities shall be dismissed with prejudice." |
| Wisconsin | W.S.A. 165.12 (effective July 2, 2021) | Barring any political subdivision that is not a party to opioid litigation as of June 1, 2021 from maintaining or commencing "any action related to opioids against" an opioid defendant released in a settlement agreement with the state. |

### B.    New York's Statewide Opioid Settlement with Distributors

On July 20, 2021, the Attorney General entered into a statewide opioid settlement with the Settling Distributors. *See* Motion at 1, Exhibit B. A key feature of the settlement is that the amount of the payment to New York depends in part on the percentage of subdivisions that "participate," with the maximum payment to the State achieved with 100% participation. *See id.*, Exhibit B at Sections V.E, V.F, V.F.1.b, and V.F.4.[2] Pursuant to the terms of the settlement, subdivision participation is accomplished in one of three ways: (i) for subdivisions that asserted claims against the Settling Distributors on or before June 30, 2019, by execution of a subscription form agreement pursuant to which they agree to participate in the settlement, be bound by its terms, and release their claims; (ii) for subdivisions that asserted claims against the Settling Distributors after June 30, 2019, by the extinguishment of their claims under § 25.18(d) upon being released by the Attorney General; and (iii) for subdivisions that have not asserted claims against the Settling Distributors, pursuant to the bar against asserting future claims under § 25.18(d) when released by the Attorney General. *Id.* at Section V.F.1.b.

---

[2] The maximum settlement amount payable to New York (the "New York Abatement Amount") consists of a base payment (55% of the total) and incentive payments (45% of the total). *See* Motion, Exhibit B at Sections II.AA, V.E and V.F.

The State achieved 100% participation in the settlement from all subdivisions through a combination of executed subscription forms and operation of § 25.18(d), and thereby obtained the maximum payment available from the Settling Distributors under the settlement terms.[3] *See* Motion, Exhibit C at pdf pages 2-3. More specifically with respect to the NY Subdivisions – all of which are subdivisions that asserted their claims against the Settling Distributors after June 30, 2019 (*see* Motion, Exhibit A) – the Attorney General released their claims as part of the settlements (*see id.*, Exhibit C at pdf page 9-10), which extinguished their claims under § 25.18(d) and deemed them to be "participating subdivisions." *See id.*, Exhibit B at Section IV.A (providing that a litigating subdivision becomes a "participating subdivision" "by having its claims extinguished by operation of law or released by the" Attorney General).

For the Settling Distributors' settlement, § 25.18 together with the applicable intrastate sharing agreement specify how settlement funds will be allocated. Per the intrastate sharing agreement, direct payments will be made by the Settling Distributors to all counties and the six largest cities by population (New York City, Buffalo, Rochester, Yonkers, Syracuse, and Albany), and the New York State Legislature will appropriate the remaining funds to be used exclusively for abatement purposes. Pursuant to the statute, the appropriated funds will be "distributed regionally and in accordance with the statewide opioid settlement agreements to ensure adequate geographic disbursement across the state." N.Y. Mental Hygiene Law

---

[3] New York became eligible to receive the full amount of the incentive payments in addition to the base payment by qualifying for Incentive Payment A (40%) and Incentive Payment D (5%) through: (a)  for Incentive Payment A,  the voluntary release of claims by all litigating subdivisions that asserted claims on or before June 30, 2019 and the extinguishment of claims by all litigating subdivisions that asserted claims after June 30, 2019 by operation of § 25.18(d) (*see* Motion, Exhibit B at Section V.F.1.b); and (b) for Incentive Payment D, the bar against future claims under § 25.18(d) (*id.* at Section V.F.4.a).

§ 25.18(b)(1); New York Opioid Settlement Sharing Agreement at Section II.B, available at

https://nationalopioidsettlement.com/wp-content/uploads/2021/09/NY-Sharing-Agreement.pdf.[4]

   While the criteria and process for distributing funds through an appropriation have yet to

be announced, at a minimum, subdivisions like the NY Subdivisions – which do not receive a

direct share of the settlement funds – will be eligible to apply for discretionary distributions.

Moreover, subdivisions that are cities, towns, villages, and special districts may qualify to

receive distributions from the counties in which they are situated out of the direct payments those

counties receive.

   Finally, even if a specific subdivision does not qualify to receive a distribution from a

statewide opioid settlement, their residents may nevertheless benefit from opioid treatment and

prevention measures undertaken at the county level using settlement funds distributed to the

counties in which they reside. For example, residents of the NY Subdivisions may directly

benefit from the opioid treatment and prevention programs established by counties in which they

reside using opioid settlement funds those counties receive, even though the subdivisions

themselves do not directly receive a distribution of opioid settlement funds.

---

[4] After entering into the statewide settlement with the Settling Distributors, New York entered into a global settlement with the Settling Distributors along with many other states as indicated was New York's intention in the "Overview" of the statewide agreement (*see id*., Exhibit B at Section I). Because the global settlement became effective prior to July 1, 2022, as a technical matter its terms supersede the terms of the statewide agreement except for three sections that are not applicable here. *See id*. However, the global agreement has parallel terms governing the payment amount and eligibility requirements for base and incentive payments so there is no distinction between the two agreements as to those provisions. *Compare id*., Exhibit B *with* Distributors Settlement Agreement, available at https://nationalopioidsettlement.com/wp-content/uploads/2022/03/Final_Distributor_Settlement_Agreement_3.25.22_Final.pdf.

C.      **Procedural History**

The NY Subdivisions initially commenced an action challenging the Act on August 3, 2021 in the United States District Court for the Eastern District of New York. *See Village of Amityville, et al. v. State of New York*, Case No. 2:21-cv-04358 (E.D.N.Y.) (Dkt. No. 2). After the State filed a notice of its intention to move to dismiss the complaint, the NY Subdivisions filed a notice of voluntary dismissal on September 9, 2021, and the court ordered the case dismissed and closed the next day. *Id.*, Dkt. Nos. 14, 15.

Many months later, in March 2022, a much smaller group of nine New York subdivisions (the Towns of Babylon, Brookhaven, Hempstead, Islip, Oyster Bay, North Hempstead, Huntington, Ramapo, and Smithtown) initiated the EDNY Action against the Attorney General. *See* Opposition, Exhibit B.  The plaintiffs in the EDNY Action allege they are all governmental subdivisions within the meaning of the Act and are subject to the limitations on their authority to pursue claims against opioid defendants set forth in § 25.18(d). *Id*. at ¶ 3. Although difficult to parse in the absence of any enumerated causes of action, their complaint appears to assert two claims: (i) a federal-law claim alleging that § 25.18(d) is preempted by the Petition Clause of the First Amendment applicable through the Supremacy Clause of the U.S. Constitution (*id.* at ¶¶ 26, 32-33, 35); and (ii) a state-law claim alleging that § 25.18(d) violates the "Home Rule" article of the New York Constitution (*id*. at ¶¶ 24, 41-45).

## **ARGUMENT**

I.      **THE COURT SHOULD NOT DEFER RULING ON THE IMPORTANT ISSUE RAISED BY THE SETTLING DISTRIBUTORS' MOTION**

The NY Subdivisions ask this Court to defer ruling on the Motion until the Attorney General's motion to dismiss the EDNY Action involving a small subset of the NY Subdivisions

11

"is resolved, whether by the district court in New York *or on any appeal*" – which could take years. Opposition at 3 (emphasis added). The Court should reject this invitation to shelve the Motion and sit on the sidelines.

The Motion presents an issue of paramount importance for statewide opioid settlements – namely, the enforceability of laws enacted by states, not just New York, that place limitations on the ability of government subdivisions to initiate and maintain claims against released opioid defendants for the purpose of maximizing the settlement funds that states are able to recover. Nine other states have joined New York in enacting some form of statutory limitation on subdivision claims against settling opioid defendants that are released by the state attorney general – Delaware, Connecticut, Georgia, Illinois, Indiana, Kansas, Kentucky, Tennessee, and Wisconsin. *See, supra*, at 6-8. As the enforceability of these state statutes will involve multiple states and multiple statewide opioid settlements impacting subdivisions across the country, it is necessary and appropriate for this Court – the forum to which all federal opioid actions have been transferred for pretrial proceedings by the Judicial Panel on Multidistrict Litigation – to hear and decide the enforceability of these statutes without deferral to other courts and potentially years of delay. Moreover, there is minimal risk of inconsistent rulings because any decision by this Court upholding the Act will have preclusive effect on the NY Subdivisions who are plaintiffs in the EDNY Action, and the judge in that case has indicated that she "can't promise" the parties will receive "a decision by the end of the year." *See* May 3, 2022 Transcript of Pre-Motion Conference at 17:9-10, the relevant excerpt of which is attached as Exhibit B.

Accordingly, the Court should hear and decide the Settling Distributors' Motion without delay.

## II.    THE NY SUBDIVISIONS LACK THE LEGAL CAPACITY TO CHALLENGE § 25.18(d) OF THE MENTAL HYGIENE LAW

As a threshold matter, the NY Subdivisions lack the legal capacity to challenge the Act. The capacity of a political subdivision to sue and be sued is governed by state law. *See* Fed. R. Civ. P. 17(b)(3); *Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 136–37 (E.D.N.Y. 2013), *aff'd*, 868 F.3d 104 (2d Cir. 2017). Under New York law, as a general matter "municipalities and other local governmental corporate entities and their officers lack capacity to mount constitutional challenges to acts of the State and State legislation." *City of New York v. State of New York,* 86 N.Y.2d 286, 289 (1995) (cited by *In re World Trade Center Lower Manhattan Disaster Site Litig.*, 30 N.Y.3d 377, 384 (2017) ("*Matter of WTC*")). Although not absolute, New York's broad proscription on political subdivisions challenging state laws can be evaded only in rare cases. *Matter of WTC*, 30 N.Y.3d at 387 ("We stress that the exceptions we have recognized to date are narrow.").

The New York Court of Appeals has expressly recognized only two exceptions arguably relevant here: (i) where a public entity is vested with a proprietary interest in a specific fund by law and the challenged statute adversely affects its interest in the fund; and (ii) where a state statute impinges on a municipality's home rule powers under the State Constitution. *Id*. at 386. Neither of these narrow exceptions applies here.

To invoke the proprietary-interest exception, a political subdivision must identify discrete funds to which it is otherwise entitled and a piece of legislation that specifically withholds those funds. *See County of Rensselaer v. Regan*, 80 N.Y.2d 988, 990-91 (1992). There is no language in the Act that specifically withholds from the NY Subdivisions access to any discrete funds. Rather, the statute extinguishes the NY Subdivisions' right to pursue claims previously asserted

13

against opioid manufacturers, distributors, and dispensers upon such claims being released by the Attorney General in a statewide opioid settlement agreement. N.Y. Mental Hygiene Law § 25.18(d). To the extent the NY Subdivisions suggest that they have a proprietary interest in potential recoveries associated with their previously asserted claims, such an inchoate right to recovery that may or may not have materialized absent the Act is simply not enough. *County of Rensselaer*, 80 N.Y.2d at 990-91. At most, such an interest amounts to a future "indirect impact" on each political subdivision's general finances. *See In re World Trade Center Lower Manhattan Disaster Site Litigation*, 892 F.3d 108, 112 (2d Cir. 2018).

Nor do the home-rule restrictions apply for the reasons stated below (*see, infra,* Point IV). Where, as here, legislation was "enacted in furtherance of and bears a reasonable relationship to a substantial State-wide concern," it is not subject to home-rule restrictions, even if the legislation simultaneously relates to the property, affairs or government of a local government." *Patrolmen's Benevolent Assn. of City of N.Y. v. City of New York*, 97 N.Y.2d 378, 388 (2001).

In *Tweed-New Haven Airport Authority v. Tong*, 930 F.3d 65 (2d Cir. 2019), the Second Circuit held that Connecticut's analogous capacity rule did not prevent a political subdivision of Connecticut from asserting that a state statute was preempted under the Supremacy Clause by a federal statute because the argument "raises unique federalism concerns." 930 F.3d at 73. But even if the New York Court of Appeals were to adopt this preemption exception for New York's capacity rule,[5] such an exception would not apply here. Unlike in *Tweed*, where the plaintiff

---

[5] The New York Court of Appeals has noted that other state and federal courts applying analogous capacity rules have created an exception for cases asserting federal preemption, but

argued preemption based on a federal statute that directly conflicted with a state statute, *id*. at 73-74, the NY Subdivisions rely for their preemption argument on a constitutional provision that confers no rights on them as government entities. *See, infra*, at Point III.

In the absence of any applicable exception to New York's capacity rule, the NY Subdivisions "lack capacity to mount constitutional challenges to" the Act, and therefore their attempt to challenge the Act should be rejected. *City of New York,* 86 N.Y.2d at 289 (1995).

### III.   NEW YORK'S STATUTE LIMITING THE ABILITY OF POLITICAL SUBDIVISIONS TO ASSERT AND MAINTAIN CLAIMS RELEASED IN STATEWIDE OPIOID SETTLEMENTS IS VALID AND ENFORCEABLE

Even if the NY Subdivisions had the legal capacity to challenge the Act (which is not the case), their challenge would fail. The NY Subdivisions assert that New York's Mental Hygiene Law § 25.18(d) is preempted by the Petition Clause of the First Amendment and violates the Home Rule provision of the New York Constitution. Neither argument has any merit.

#### A.   The Petition Clause Does Not Preempt The Act

The Petition Clause prohibits the enactment of any law "abridging . . . the right of *the people* . . . to petition the Government for a redress of grievances." U.S. Const. amend. I (emphasis added). Historically, the right to petition, as Blackstone noted in 1765, was one "appertaining to [the] individual." 1 William Blackstone, Commentaries at *138 (emphasis added) (cited by Carol Rice Andrews, *A Right of Access to Court Under the Petition Clause of the First Amendment: Defining the Right*, 60 Ohio St. L.J. 557, 628 (1999)). The Petition Clause

---

has not yet considered whether to adopt such an exception for New York's capacity rule. *See Matter of WTC*, 30 N.Y.3d at 386, n.4.

thus "protects the *right of individuals* to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011) (emphasis added). This "right of access to courts for redress of wrongs" secured to individuals "is an aspect of the First Amendment right to petition the government," *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984) (emphasis added), with "deep roots in the Anglo-American legal tradition" affording "British subjects" and "colonial Americans" the "right to petition both the British government and local legislative assemblies," *Jacoby & Meyets, LLP v. The Presiding Justices of the First, Second, Third and Fourth Departments*, 852 F.3d 178, 184-85 (2d Cir. 2017).

Because the NY Subdivisions are government entities, they have no right of court access under the Petition Clause. *Cf. Columbia Broad. Sys., Inc. v. Democratic Nat'l Comm.*, 412 U.S. 94, 139 (1973) (Stewart, J., concurring) ("The First Amendment protects the press from governmental interference; it confers no analogous protection on the [g]overnment."). The fact that courts have extended the right of access to courts under the Petition Clause to groups of individuals and corporations does not alter the analysis. *See, e.g., BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 525 (2002) (noting extension of right to access courts under the Petition Clause to "groups" that use the courts to advocate views respecting resolution of interests vis-à-vis competitors); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972) (holding right of access to courts extends to corporate plaintiff). The extension of the right of court access to groups is based on the need to protect "collective activity undertaken to obtain meaningful access to the courts" in order to petition the government for redress of wrongs. *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971). This rationale does not apply where the entity seeking to invoke the right of court access is a government entity rather

16

than the public; simply put, the Petition Clause does not confer a right on the government to

petition itself.[6] As the NY Subdivisions have no right to court access guaranteed to them under

the Petition Clause, there is no conflict between § 25.18(d), which limits the authority of

"government entities" to bring lawsuits, and the Petition Clause, which protects the rights of the

public to bring lawsuits, *Borough of Duryea*, 564 U.S. at 387.

> **B.   The Petition Clause Does Not Preclude A State Legislature From Imposing Limits On The Right To Bring A Cause Of Action**

Even where applicable, the Petition Clause protects only the right of access to courts, not

the right to assert any particular cause of action that the legislature may otherwise choose to

abrogate or limit. "[T]he Petition Clause protects the right of individuals to appeal to courts and

other forums established by the government for resolution of legal disputes," *Borough of*

*Duryea*, 564 U.S. at 387, but "the right is ancillary to the underlying claim, without which a

plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury*, 536

U.S. 403, 415 (2002); *see also Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (holding

that a successful access to court claim requires the plaintiff to have an underlying claim that is

arguable and non-frivolous). Under *Christopher,* "[t]he right to petition exists in the presence of

---

[6] The Supreme Court has "neither accepted nor rejected" the view "that governmental entities have First Amendment rights." *Shurtleff v. City of Boston, Massachusetts*, 142 S. Ct. 1583, 1599 (2022); *see also Mosdos Chofetz Chaim Inc. v. Village of Wesley Hills*, 701 F. Supp. 2d 568, 598 (S.D.N.Y. 2010) (discussing split among the circuit courts). Moreover, cases holding that a municipality's petitioning activity is immune from liability under the *Noerr-Pennington* antitrust doctrine, *see, e.g., County of Suffolk v. Long Island Lighting Co*., 710 F. Supp. 1387, 1390 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990), have no applicability to the circumstance presented here outside the context of antitrust, where a municipality is seeking to invalidate on preemption grounds a state statute that places limitations on its ability to assert certain claims in court. *Cf. Suburban Restoration Co., Inc. v. ACMAT Corp*., 700 F.2d 98, 101 (2d Cir. 1983) (declining to follow *dicta* in prior Second Circuit cases characterizing the *Noerr-Pennington* doctrine as applying to all First Amendment conduct).

an underlying cause of action and is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008).

Accordingly, the right of access to courts for redress provided under the Petition Clause does not conflict with the New York Legislature's decision to "curtail[] a category of causes of action" by authorizing the Attorney General to release such claims, and thereby extinguish them, pursuant to § 25.18(d) as part of a statewide opioid settlement. *Beretta*, 524 F.3d at 397; *Hammond v. United States*, 786 F.2d 8, 13 (1st Cir.1986) (noting that Congressional "alter[ation] ... [of] prior rights and remedies" does not provoke right-of-access concerns because "[t]here is no fundamental right to particular state-law tort claims"); *see also Friedman v. Bloomberg L.P.*, 884 F.3d 83, 91 (2d Cir. 2017) (holding that a plaintiff's right of access to courts is not violated by a state's long-arm statute that prevents plaintiff from bringing suit because "[t]here is nothing to compel a state to exercise jurisdiction over a foreign [defendant] unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature") (cleaned up).

## IV.  THE ACT DOES NOT VIOLATE NEW YORK'S HOME-RULE PROVISION BECAUSE IT ADDRESSES A MATTER OF SUBSTANTIAL STATEWIDE CONCERN

As the New York Court of Appeals has repeatedly held, legislation that "was enacted in furtherance of and bears a reasonable relationship to a substantial State-wide concern" is not subject to home-rule restrictions, even if the legislation simultaneously relates to the property, affairs or government of a local government. *Patrolmen's Benevolent Assn.*, 97 N.Y.2d at 388 (quoted by *Empire State Chapter of Associated Builders & Contractors, Inc. v. Smith*, 21 N.Y.3d 309, 318 (2013)). The Court of Appeals has adopted the test that Chief Judge Cardozo

18

formulated nearly a century ago: "if the subject be in substantial degree a matter of State concern, the Legislature may act, though intermingled with it are concerns of the locality." *Empire State*, 97 N.Y.2d at 316 (quoting *Adler v. Deegan*, 251 N.Y. 467, 491 (1929)).

There can be no serious dispute that the Act – which facilitates statewide opioid settlements by establishing a statewide fund to address the opioid crisis and has already resulted in settlements that will provide in excess of $1.5 billion to all counties and several cities in New York – bears "a reasonable relationship to a substantial State-wide concern." *Patrolmen's Benevolent Assn.*, 97 N.Y.2d at 388.

## CONCLUSION

For the reasons set forth above, the New York Attorney General respectfully requests that the Court grant the Settling Distributors' Motion in its entirety.

Dated: New York, New York
      May 25, 2022

                                       LETITIA JAMES
                                       Attorney General
                                       State of New York

                                       By: __*/s/* Andrew Amer_____
                                          Andrew Amer
                                          Special Counsel
                                          New York, NY  10005
                                          (212) 416-6127
                                          Andrew.Amer@ag.ny.gov

19