UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| | **Case No. 17-md-2804** |
| This document relates to | **[1:20-op-45281-DAP]** |
| | **Judge Dan Aaron Polster** |
| **BOARD OF EDUCATION OF THORNTON TOWNSHIP HIGH SCHOOLS, DISTRICT 205,** *et al.***, on behalf of themselves and others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | |
| **CEPHALON, INC.,** *et al.* | |
| **Defendants.** | |

## ROCHESTER CITY SCHOOL DISTRICT'S RESPONSE IN OPPOSITION TO SETTLING DISTRIBUTORS' MOTION TO DISMISS

Rochester City School District ("RCSD") submits this Response in Opposition to Settling Distributors' Motion to Dismiss Claims filed by Non-Participating New York Subdivisions as Barred by Statute. RCSD requests that the Court stay consideration of Settling Distributors' Motion to Dismiss during the pendency of the litigation in the Eastern District of New York seeking declaratory relief finding New York Mental Hygiene Law § 25.18(d) unconstitutional. In the alternative, RCSD requests a thirty-day extension of time to respond to the merits of Settling Distributors' Motion to Dismiss.

**BACKGROUND**

On December 16, 2020, RCSD, for itself and on behalf of all independent New York public school districts, filed a class action complaint against the Settling Distributors and other defendants.  RCSD, who, along with other New York public school districts, provides crucial special education services and other educational supports to children born with Neonatal Opioid Withdrawal Syndrome ("NOWS" also known as Neonatal Abstinence Syndrome, or "NAS"), seeks damages and abatement funds to address this aspect of the opioid crisis.  The Court stayed all public school claims.

Although there were no discussions with public school districts, and, thus, no input from them on effective abatement strategies, on July 20, 2021, the New York State Attorney General ("AG") entered into a settlement agreement with Settling Distributors.  This led to a settlement that fails to compensate New York public school districts for the costs of meeting their obligations to children born with NOWS and to those living in families disrupted by the opioid crisis.  The settlement fails to provide for abatement funding to address those major effects of the opioid crisis.

The New York Legislature then passed, and subsequently amended, New York Mental Hygiene Law § 25.18, which retroactively became effective June 29, 2021.  The legislative history does not appear to include any mention of public school districts' claims for educational supports.  *See* NYLS Governor's Bill Jacket, Chapter 190 (2021); *See* NYLS Governor's Bill Jacket, Chapter 171 (2022).  As discussed below, New York's statutory eligible expenditures do not include abatement related to the claims asserted by public school districts.  The statute is constitutionally suspect as it attempts to immunize the Settling Distributors from pending claims without providing any consideration to these claimants.

## Section 25.18 Precludes Settlement Funding for Educational Supports

Subsection (d) of § 25.18 purports to release the claims against the Settling Distributors of both New York Subdivisions who have monies earmarked to them and public school districts who, in contrast, do not.  The Settling Distributors have failed to inform the Court that New York's abatement plan specifies an exclusive list of eligible expenditures that omits abatement uses to address the school districts' claims.  Specifically, § 25.18(a)(1) states that:

> Eligible expenditures shall include services and programs that are consistent with the approved uses and terms of the statewide opioid settlement agreement as defined in this section, ***which may _only_ include***:
> (i) to prevent substance use disorders through an evidence-based youth-focused public health education and prevention campaign, including school-based prevention and health care services and programs to reduce the risk of substance use by school-aged children;
> (ii) to develop and implement statewide public education campaigns to reduce stigma against individuals with a substance use disorder, provide information about the risks of substance use, best practices for addressing substance use disorders, and information on how to locate services that reduce the adverse health consequences associated with substance use disorders or provide treatment for substance use disorders;
> (iii) to provide substance use disorder treatment and early recovery programs for youth and adults, with an emphasis on programs that provide a continuum of care that includes screening and assessment for substance use disorders and co-occurring disorders, active treatment, family involvement, case management, relapse management for substance use and other co-occurring behavioral health disorders, vocational services, literacy services, parenting classes, family therapy and counseling services, crisis services, recovery services, evidence-based treatments, medication-assisted treatments, including medication assisted treatment provided in correctional facilities, psychiatric medication, psychotherapy and transitional services programs;
> (iv) to provide harm reduction counseling and services to reduce the adverse health consequences associated with substance use disorders, including overdose prevention and prevention of communicable diseases related to substance use, provided by a substance use disorder service provider or qualified community-based organization;
> (v) to provide housing services for people who are recovering from a substance use disorder. Such housing services shall be appropriate, based on the individual's current need and stage of recovery. Such housing services may include but are not limited to supportive housing services;

(vi) to support community-based programs that reduce the likelihood of criminal justice involvement for individuals who have or are at risk of having a substance use disorder;

(vii) to provide programs for pregnant women and new parents who currently or formerly have had a substance use disorder and newborns with neonatal abstinence syndrome; and/or

(viii) to provide vocational and educational training for individuals with or at risk for a substance use disorder.

New York Mental Hygiene Law § 25.18(a)(1) (emphasis added).

While this list does mention programs for women and parents of newborns with NAS, it completely omits any expenditures for public school districts to provide special education or other educational supports for these children. Between the ages of 3 to at least 18, New York public school districts carry out federal mandates addressing the needs of these children.

## ANALYSIS

Settling Distributors' Motion asks this Court to dismiss RCSD due to the statutory bar found in New York Mental Hygiene Law § 25.18(d). Settling Distributors' Motion neglects to highlight that the constitutionality of § 25.18(d) is currently the subject of litigation in the Eastern District of New York, attached here as Exhibit A. *See Town of Babylon v. James*, 2:22-cv-01681-KAM-AYS (E.D.N.Y. 2022). That action involves nine New York subdivisions (general-purpose governments) that are seeking declaratory relief finding New York Mental Hygiene Law § 25.18(d) unconstitutional. The AG has entered an appearance, *id.* at ECF 12, and is actively defending § 25.18(d) in the Eastern District of New York, *see, e.g., id.* at ECF 25. Further, the district court in which that case was filed often is tasked with construing and applying New York law.

The challenges raised to the statutory bar's constitutionality include that: (1) the legislature did not comply with New York constitutional provisions for enacting "special laws;" and (2) the legislature arbitrarily and capriciously enacted the statute which restricts the

4

subdivisions' right to seek redress in the courts in violation of the Constitution.  These arguments, set out more fully in the municipalities' Amended Complaint, Ex. A, largely mirror the arguments RCSD would expect to make in response to Settling Distributors' Motion to Dismiss.  However, not only do New York public school districts have no monies earmarked to them, there are no means under the restrictive list of eligible expenditures to obtain the funding needed to provide educational supports to public school districts to abate this aspect of the opioid crisis.

Because the issue of the constitutionality of New York Mental Hygiene Law § 25.18(d) is squarely presented in the Eastern District of New York, the importance of the parties and interests represented there, and given that court's comparative familiarity with the New York Constitution and New York law, RCSD ask that this Court stay briefing on the Motion to Dismiss here, to wait and have the benefit of the New York district court's analysis of the issue. This approach conserves both the Court's and the parties' time and resources.

Alternatively, RCSD asks the Court to allow thirty days to file a brief responding to the Settling Distributors' Motion.

## CONCLUSION

For these reasons, Rochester City School District respectfully requests that the Court stay its consideration and ruling on Settling Distributors' Motion to Dismiss and, in the alternative, grant Rochester City School District a thirty-day extension to respond substantively to the Settling Distributors' Motion to Dismiss.

Dated: May 27, 2022

Respectfully submitted,

*/s/ Cyrus Mehri*

Wayne Hogan
hogan@terrellhogan.com

Cyrus Mehri
cmehri@findjustice.com

Leslie A.  Goller
lgoller@terrellhogan.com
TERRELL HOGAN YEGELWEL, P.A.
233 E.  Bay Street, Suite 800
Jacksonville, FL 32202
904.722.2228

Neil Henrichsen
nhenrichsen@hslawyers.com
HENRICHSEN LAW GROUP
301 W Bay Street, Suite 1400
Jacksonville, FL 32202
904.381.8183

Joshua Karsh
jkarsh@findjustice.com
Ezra Bronstein
ebronstein@findjustice.com
MEHRI & SKALET, PLLC
2000 K Street, N.W., Suite 325
Washington, D.C.  20006
202.822.5100


*Attorneys for Rochester City School District*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of May 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF Systems.


*/s/ Cyrus Mehri*
Cyrus Mehri