**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  May 27, 2022

Mr. Joseph J. Cappelli
Bern Cappelli
101 W. Elm Street
Suite 215
Conshohocken, PA 19428

Mr. Mark A. Correro
Law Offices
2900 North Loop West
Suite 400
Houston, TX 77092

Mr. Michael Timothy Gallagher
Law Offices
2905 Sackett Street
Houston, TX 77098

Mr. Nabil Majed Nachawati II
Law Offices
4925 Greenville Avenue
Suite 715
Dallas, TX 75206

Ms. Shelly A Sanford
Watts Guerra
811 Barton Springs Road
Suite 725
Austin, TX 78704

Ms. Sherri Ann Saucer
Fears Nachawati
5489 Blair Road
Dallas, TX 75231

Ms. Marghretta Hagood Shisko
Law Office
P.O. Box 2465
Spartanburg, SC 29304

Mr. John S. Simmons
Simmons Law Firm, LLC
1711 Pickens Street
Columbia, SC 29201

Mr. Patrick Sullivan
Salazar, Sullivan & Jasionowski
100 Gold Avenue SW
Suite 201
Albuquerque, NM 87102

Mr. Frank Jerome Tapley
Cory Watson
2131 Magnolia Avenue, S.
Suite 200
Birmingham, AL 35205

Mr. John Belton White Jr.
Law Office
P.O. Box 2465
Spartanburg, SC 29304

           Re:  Case No. 22-3493, *In re: Harris County, TX, et al*
                Originating Case No. 1:17-md-02804 : 1:19-op-45713

Dear Counsel:

   The petition for writ of mandamus has been docketed as case number **22-3493** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

   Counsel for petitioners must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **June 10, 2022**.  The forms are available on the court's website.

**NOTE:** Due to the large number of petitioners, the clerk's office will be adding petitioners' names to the docket until all parties are listed.  **This process might take an extra day or two beyond case opening.**

   The district court judge to whom this petition refers has been served with this letter.

                    Sincerely yours,

                    s/Amy E. Gigliotti
                    Case Management Specialist
                    Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

No. _____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

In re: County of Harris, Texas; County of Rockwall, Texas; County of Ellis, Texas;
County of Walker, Texas; City of Albuquerque, New Mexico;
City of Santa Fe, New Mexico; and
Certain Municipalities in Arkansas and South Carolina,
*Petitioners*,

On Petition for a Writ of Mandamus to the United States District Court for the Northern District
of Ohio, Eastern Division, In Re: National Prescription Opiate Litigation,
Cause No. 1:17-md-2804, 1:19-op-45713

## PETITION FOR WRIT OF MANDAMUS
## OF HARRIS, ROCKWALL, ELLIS, WALKER COUNTIES, TEXAS,
## ALBUQUERQUE AND SANTA FE CITIES, NEW MEXICO, AND
## CERTAIN MUNICIPALITIES IN ARKANSAS AND SOUTH CAROLINA

S. Ann Saucer
TX Bar 00797885, LA Bar 21368
N. Majed Nachawati
TX Bar 24038319
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
asaucer@fnlawfirm.com
mn@fnlawfirm.com

Dan Downey
TX Bar 06085400
DAN DOWNEY, P.C.
Tel. (512) 569-3400
Dandowney427@gmail.com

John B. White, Jr. (S.C. Bar 5996)
Marghretta H. Shisko (S.C. Bar 100106)
JOHN B. WHITE, JR. P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC  29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com

F. Jerome Tapley
CORY WATSON, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
(205) 328 2200
jtapley@CoryWatson.com

*Counsel for Petitioners*
*Additional Counsel on Signature Page*

## **Complete List of Petitioners**

Texas Municipalities:
County of Harris, County of Rockwall, County of Ellis, and County of Walker

New Mexico Municipalities:
City of Albuquerque and City of Santa Fe

Arkansas Municipalities:
City of Adona, City of Alexander, City of Alicia, City of Allport, City of Alma, City of Almyra, City of Alpena, City of Altheimer, City of Altus, City of Amagon, City of Amity, City of Anthonyville, City of Antoine, City of Arkadelphia, City of Arkansas City, City of Ash Flat, City of Ashdown, City of Atkins, City of Aubrey, City of Augusta, City of Austin, City of Avoca, City of Bald Knob, City of Banks, City of Barling, City of Bassett, City of Batesville, City of Bauxite, City of Bay, City of Bearden, City of Beaver, City of Beebe, City of Beedeville, City of Bella Vista, City of Bellefonte, City of Belleville, City of Ben Lomond, City of Benton, City of Bentonville, City of Bergman, City of Berryville, City of Bethel Heights, City of Big Flat, City of Bigelow, City of Biggers, City of Birdsong, City of Biscoe, City of Black Oak, City of Black Rock, City of Black Springs, City of Blevins, City of Blue Eye, City of Blue Mountain, City of Bluff City, City of Blytheville, City of Bodcaw, City of Bonanza, City of Bono, City of Booneville, City of Bradford, City of Bradley, City of Branch, City of Briarcliff, City of Brinkley, City of Brookland, City of Bryant, City of Buckner, City of Bull Shoals, City of Burdette, City of Cabot, City of Caddo Valley, City of Caldwell, City of Cale, City of Calico Rock, City of Calion, City of Camden, City of Cammack Village, City of Campbell Station, City of Caraway, City of Carlisle, City of Carthage, City of Casa, City of Cash, City of Caulksville, City of Cave City, City of Cave Springs, City of Cedarville, City of Centerton, City of Central City, City of Charleston, City of Cherokee Village, City of Cherry Valley, City of Chester, City of Chidester, City of Clarendon, City of Clarksville, City of Clinton, City of Coal Hill, City of Colt, City of Concord, City of Conway, City of Corning, City of Cotter, City of Cotton Plant, City of Cove, City of Coy, City of Crawfordsville, City of Crossett, City of Cushman, City of Daisy, City of Damascus, City of Danville, City of Dardanelle, City of Datto, City of De Queen, City of Decatur, City of Delaplaine, City of Delight, City of Dell, City of Denning, City of Dermott, City of Des Arc, City of Devalls Bluff, City of Dewitt, City of Diamond City, City of Diaz, City of Dierks, City of Donaldson, City of Dover, City of Dumas, City of Dyer, City of Dyess, City of Earle, City of East Camden, City of Edmondson, City of Egypt, City of El Dorado, City of Elaine, City of Elkins, City of Elm Springs,

City of Emerson, City of Emmet, City of England, City of Enola, City of Etowah,
City of Eudora, City of Eureka Springs, City of Evening Shade, City of Everton,
City of Fairfield Bay, City of Fargo, City of Farmington, City of Fayetteville, City
of Felsenthal, City of Fifty-Six, City of Fisher, City of Flippin, City of Fordyce,
City of Foreman, City of Forrest City, City of Fort Smith, City of Fouke, City of
Fountain Hill, City of Fountain Lake, City of Fourche, City of Franklin, City of
Friendship, City of Fulton, City of Garfield, City of Garland, City of Garner, City
of Gassville, City of Gateway, City of Gentry, City of Georgetown, City of Gilbert,
City of Gillett, City of Gillham, City of Gilmore, City of Glenwood, City of
Goshen, City of Gosnell, City of Gould, City of Grady, City of Grannis, City of
Gravette, City of Green Forest, City of Greenbrier, City of Greenland, City of
Greenway, City of Greenwood, City of Greers Ferry, City of Griffithville, City of
Grubbs, City of Guion, City of Gum Springs, City of Gurdon, City of Guy, City of
Hackett, City of Hamburg, City of Hampton, City of Hardy, City of Harrell, City
of Harrisburg, City of Harrison, City of Hartford, City of Hartman, City of Haskell,
City of Hatfield, City of Havana, City of Haynes, City of Hazen, City of Heber
Springs, City of Hector, City of Helena-West Helena, City of Hermitage, City of
Hickory Ridge, City of Higden, City of Higginson, City of Highfill, City of
Highland, City of Hindsville, City of Holland, City of Holly Grove, City of Hope,
City of Horatio, City of Horseshoe Bend, City of Horseshoe Lake, City of Hot
Springs, City of Houston, City of Hoxie, City of Hughes, City of Humnoke, City of
Humphrey, City of Hunter, City of Huntington, City of Huntsville, City of Huttig,
City of Imboden, City of Jacksonport, City of Jacksonville, City of Jasper, City of
Jennette, City of Jericho, City of Jerome, City of Johnson, City of Joiner, City of
Jonesboro, City of Judsonia, City of Junction City, City of Keiser, City of Kensett,
City of Keo, City of Kibler, City of Kingsland, City of Knobel, City of Knoxville,
City of La Grange, City of Lafe, City of Lake City, City of Lake View, City of
Lake Village, City of Lakeview, City of Lamar, City of Lavaca, City of Leachville,
City of Lead Hill, City of Leola, City of Lepanto, City of Leslie, City of Letona,
City of Lewisville, City of Lexa, City of Lincoln, City of Little Flock, City of
Littlerock, City of Lockesburg, City of London, City of Lonoke, City of Lonsdale,
City of Louann, City of Lowell, City of Luxora, City of Lynn, City of Madison,
City of Magazine, City of Magness, City of Magnolia, City of Malvern, City of
Mammoth Spring, City of Manila, City of Mansfield, City of Marianna, City of
Marie, City of Marion, City of Marked Tree, City of Marmaduke, City of Marshall,
City of Marvell, City of Maumelle, City of Mayflower, City of Maynard, City of
Mccaskill, City of Mccrory, City of Mcdougal, City of Mcgehee, City of Mcnab,
City of Mcneil, City of Mcrae, City of Melbourne, City of Mena, City of Menifee,
City of Midland, City of Mineral Springs, City of Minturn, City of Mitchellville,
City of Monette, City of Monticello, City of Montrose, City of Moorefield, City of

Moro, City of Morrilton, City of Morrison Bluff, City of Mount Ida, City of Mount Pleasant, City of Mount Vernon, City of Mountain Home, City of Mountain Pine, City of Mountain View, City of Mountainburg, City of Mulberry, City of Murfreesboro, City of Nashville, City of Newark, City of Newport, City of Nimmons, City of Norfork, City of Norman, City of Norphlet, City of North Little Rock, City of O'kean, City of Oak Grove, City of Oak Grove Heights, City of Oakhaven, City of Oden, City of Ogden, City of Oil Trough, City of Okolona, City of Ola, City of Omaha, City of Oppelo, City of Osceola, City of Oxford, City of Ozan, City of Ozark, City of Palestine, City of Pangburn, City of Paragould, City of Paris, City of Parkdale, City of Parkin, City of Patmos, City of Patterson, City of Pea Ridge, City of Peach Orchard, City of Perla, City of Perry, City of Perrytown, City of Perryville, City of Piggott, City of Pindall, City of Pine Bluff, City of Pineville, City of Plainview, City of Pleasant Plains, City of Plumerville, City of Pocahontas, City of Pollard, City of Portia, City of Portland, City of Pottsville, City of Powhatan, City of Poyen, City of Prairie Grove, City of Prattsville, City of Prescott, City of Pyatt, City of Quitman, City of Ratcliff, City of Ravenden, City of Ravenden Springs, City of Rector, City of Redfield, City of Reed, City of Reyno, City of Rison, City of Rockport, City of Roe, City of Rogers, City of Rondo, City of Rose Bud, City of Rosston, City of Rudy, City of Russell, City of Russellville, City of Salem, City of Salesville, City of Scranton, City of Searcy, City of Sedgwick, City of Shannon Hills, City of Sheridan, City of Sherrill, City of Sherwood, City of Shirley, City of Sidney, City of Siloam Springs, City of Smackover, City of Smithville, City of South Lead Hill, City of Sparkman, City of Springdale, City of Springtown, City of St. Charles, City of St. Francis, City of St. Joe, City of St. Paul, City of Stamps, City of Star City, City of Stephens, City of Strawberry, City of Strong, City of Stuttgart, City of Subiaco, City of Success, City of Sulphur Rock, City of Sulphur Springs, City of Summit, City of Sunset, City of Swifton, City of Taylor, City of Texarkana, City of Thornton, City of Tillar, City of Tinsman, City of Tollette, City of Tontitown, City of Traskwood, City of Trumann, City of Tuckerman, City of Tull, City of Tupelo, City of Turrell, City of Twin Groves, City of Tyronza, City of Ulm, City of Valley Springs, City of Van Buren, City of Vandervoort, City of Victoria, City of Vilonia, City of Viola, City of Wabbaseka, City of Waldenburg, City of Waldo, City of Waldron, City of Walnut Ridge, City of Ward, City of Warren, City of Washington, City of Watson, City of Weiner, City of Weldon, City of West Fork, City of West Memphis, City of West Point, City of Western Grove, City of Wheatley, City of Whelen Springs, City of White Hall, City of Wickes, City of Widener, City of Wiederkehr Village, City of Williford, City of Willisville, City of Wilmar, City of Wilmot, City of Wilson, City of Wilton, City of Winchester, City of Winslow, City of Winthrop, City of Wooster, City of Wrightsville, City of Wynne, City of Yellville, City of

Zinc, County of Arkansas, County of Ashley, County of Baxter, County of Benton, County of Boone, County of Bradley, County of Calhoun, County of Carroll, County of Chicot, County of Clark, County of Clay, County of Cleburne, County of Cleveland, County of Columbia, County of Conway, County of Craighead, County of Crawford, County of Crittenden, County of Cross, County of Dallas, County of Desha, County of Drew, County of Faulkner, County of Franklin, County of Fulton, County of Garland, County of Grant, County of Greene, County of Hempstead, County of Hot Spring, County of Howard, County of Independence, County of Izard, County of Jackson, County of Jefferson, County of Johnson, County of Lafayette, County of Lawrence, County of Lee, County of Lincoln, County of Little River, County of Logan, County of Lonoke, County of Madison, County of Marion, County of Miller, County of Mississippi, County of Monroe, County of Montgomery, County of Nevada, County of Newton, County of Ouachita, County of Perry, County of Phillips, County of Pike, County of Poinsett, County of Polk, County of Pope, County of Prairie, County of Pulaski, County of Randolph, County of Saline, County of Scott, County of Searcy, County of Sebastian, County of Sevier, County of Sharp, County of St. Francis, County of Stone, County of Union, County of Van Buren, County of Washington, County of White, County of Woodruff, and County of Yell

South Carolina Municipalities:
Aiken County, Anderson County, Calhoun County, Cherokee County, Chester County, Dillon County, Edgefield County, Florence County, Greenville County, Greenwood County, Horry County, Lancaster County, Laurens County, Marion County, Marlboro County, McCormick County, Newberry County, Oconee County, Pickens County, Spartanburg County, Sumter County, Union County, York County, Abbeville County, Allendale County, Bamberg County, Barnwell County, Beaufort County, Chesterfield County, Clarendon County, Colleton County, Dorchester County, Fairfield County, Hampton County, Jasper County, Kershaw County, Kershaw County Hospital Board, Lee County, Orangeburg County, Saluda County, Williamsburg County, City of Myrtle Beach, and Lexington County

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................. 1

II.   STATEMENT OF RELIEF SOUGHT ............................................ 2

III.  STATEMENT OF ISSUES PRESENTED ..................................... 3

IV.  STATEMENT OF FACTS AND PROCEDURAL BACKGROUND. ....... 4

  A.  **The District Court's Order Strips State Litigants of Part of Their Recoveries and Their Rights to State Court Discovery.** ........................... 4

  B.  **Petitioners' State-Filed Opioid Cases Have Either Never Been in Federal Court, or Were Only in Federal Court After an Improper Removal.** ........................................................................................ 6

  C.  **The Court's Order Was Issued Without Notice, an Opportunity to Be Heard, or Proof that MDL 2804 Court-Appointed Counsel Provide A Benefit to Petitioners' Cases.** .................................................... 8

  D.  **The Order Relies on the PEC's Work with ARCOS Data Notwithstanding that Neither the PEC Nor Its ARCOS Data Provides Any Benefit to the State Cases.** ................................................ 10

V.   REASONS WHY A WRIT OF MANDAMUS SHOULD ISSUE ............. 14

  A.  **A Mandamus Writ Is the Only Adequate Remedy** ................................. 15

  B.  **Petitioners Have a Clear and Indisputable Right to Proceed in State Court Without Having Discovery Obstructed and Recoveries Siphoned Off to a Federal Fund.** ................................................................ 16

    1.  **The District Court does not have the authority to dictate fees and e xpenses in state court cases** ................................................... 16

      a.  **The common-fund exception to the American Rule is inapplicable because the proceeds from state court cases are outside of the District Court's authority.** ............................................. 17

      b.  **Independently, the common-fund doctrine is inapplicable because the work of District Court-appointed counsel is not traceable to future proceeds in state court cases** ................................. 22

      c.  **The Order violates Texas law.** .............................................. 24

    2.  **The Order violates the Anti-Injunction Act.** ............................ 26

    3.  **The Order violates the Due Process Clause.** .......................... 29

  C.  **The Writ Is Otherwise Appropriate under the Circumstances.** ........... 31

VI.  CONCLUSION ............................................................................ 32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Crash Disaster at Fla. Everglades*,
549 F.2d 1006 (5th Cir. 1977) ............................................................................17

*Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*,
398 U.S. 281 (1970)...............................................................................26, 27

*In re Avandia Marketing, Sales Practices and Products Liability Litig.*,
617 F. App'x 136 (3d Cir. 2015) ........................................................................20

*In re Baycol Prod.*,
No. MDL 1431, 2004 WL 190272 (D. Minn. Jan. 29, 2004)............................20

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...........................................................................................17

*U.S. ex rel. Bogart v. King Pharmas.*,
493 F.3d 323 (3d Cir. 2007) ........................................................................17, 22

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942)...........................................................................................31

*Cheney v. U.S. Dist. Ct. for Dist. of Columbia*,
542 U.S. 367 (2004)...........................................................................................15

*Colonial Pipeline Co. v. Morgan*,
474 F.3d 211 (6th Cir. 2007) ............................................................................31

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
No. 16-MD-02744, 2017 WL 6402992 (E.D. Mich. Mar. 21, 2017)................20

*In re Fed. Skywalk Cases*,
680 F.2d 1175 (8th Cir. 1982) ..........................................................................27

*Garcia v. Fed. Nat'l Mortg. Ass'n*,
782 F.3d 736 (6th Cir. 2015) ............................................................................29

*Geier v. Sundquist*,
  372 F.3d 784 (6th Cir. 2004) ........................................................................22, 23

*In re Gen. Motors LLC Ignition Switch Litig.*,
  477 F. Supp. 3d 170 (S.D.N.Y. 2020) ...............................................................21

*United States ex rel. Grubbs v. Kanneganti*,
  No. 1:05-CV-323, 2007 WL 9718264 (E.D. Tex. June 4, 2007) .......................26

*Guba v. Huron Co.*,
  600 Fed. App'x 374 (6th Cir. 2015) ...................................................................30

*Hall v. Cole*,
  412 U.S. 1 (1973).................................................................................................23

*In re Harris County, TX*,
  No. 21-3637 (6th Cir. March 11, 2022)...................................................7, 11, 15

*Hartland v. Alaska Airlines*,
  544 F.2d 992 (9th Cir. 1976) ...............................................................16, 19, 20

*In re High Sulfur Content Gasoline Products Liability Litig.*,
  517 F.3d 220 (5th Cir. 2008) ..............................................................................30

*Hill v. Martin*,
  296 U.S. 393 (1935)............................................................................................26

*In re Lidoderm Antitrust Litigation*,
  No. 14-md-02521-WHO, 2017 WL 3478810 (N.D. Cal. 2017) .......................20

*Martingale LLC v. City of Louisville*,
  361 F.3d 297 (6th Cir. 2004) ........................................................................26, 28

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982)............................................................................................31

*Mills v. Electric Auto-Lite Co.*,
  396 U.S. 375 (1970)............................................................................................23

*Mitchum v. Foster*,
  407 U.S. 225 (1972)............................................................................................27

*In re Motors Liquidation Co.*,
    829 F.3d 135 (2d Cir. 2016) .................................................................30

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) .............................................................................30

*In re Nat'l Prescription Opiate Litig.*,
    927 F.3d 919 (6th Cir. 2019) .........................................................11, 12

*In re Nat'l Prescription Opiate Litig.*,
    MDL 2804 (N.D. Ohio July 22, 2021) ...............................................13

*Re: Opioid Litigation*,
    South Carolina Supreme Court Order August 9, 2018 ........................28

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943) ...............................................................................15

*In re Roundup Prod. Liab. Litig.*,
    544 F. Supp. 3d 950 (N.D. Cal. 2021) (appeal pending) .....................21

*Schlagenhauf v. Holder*,
    379 U.S. 104 (1964) .............................................................................15

*Shimman v. Int'l Union of Operating Engineers, Loc. 18*,
    744 F.2d 1226 (6th Cir. 1984) ............................................................23

*In re Showa Denko K.K. L–Tryptophan Products Liability Litigation–*
    *II*,
    953 F.2d 162 (4th Cir. 1992) ......................................................*passim*

*In re Simons*,
    567 F.3d 800 (6th Cir. 2009) ..............................................................14

*Sprague v. Ticonic Nat'l Bank*,
    307 U.S. 161 (1939) .............................................................................18

*Summit Valley Indus. Inc. v. Loc. 112, United Bhd. of Carpenters &*
    *Joiners of Am.*,
    456 U.S. 717 (1982) .............................................................................16

*In re Syngenta AG MIR 162 Corn Litig.*,
    No. 14-MD-2591-JWL, 2015 WL 2165341 (D. Kan. May 8, 2015) ...........20, 22

*In re United States*,
　32 F.4th 584 (6th Cir. 2022) ................................................................15

*In re Univ. of Michigan*,
　936 F.3d 460 (6th Cir. 2019) .........................................................16, 31

*Vietti v. Welsh & McGough, PLLC*,
　No. 21-CV-58-JFH-SH, 2022 WL 1288314 (N.D. Okla. Apr. 30,
　2022) ......................................................................................................26

*Vincent v. Hughes Air West, Inc.*,
　557 F.2d 759 (9th Cir. 1977) .......................................................17, 19

*In re Zyprexa Products Liability Litigation*,
　467 F. Supp. 2d 256 (E.D. N.Y. 2006) ...........................................20, 31

**Statutes**

28 U.S.C. § 2283 .......................................................................................26, 27

TEX. GOV'T CODE §§403.501-511 ................................................................25

TEX. GOV'T CODE §403.506(c) .....................................................................25

TEX. GOV'T CODE §403.507 .........................................................................25

TEX. GOV'T CODE §2254.106 ........................................................................24

TEX. GOV'T CODE §2254.108(d) ...................................................................24

TEX. GOV'T CODE §2254.110 ........................................................................24

TEX. GOV'T CODE §2254.1036(a) ..................................................................24

TEX. GOV'T CODE §2254.1038(a) ..................................................................24

**Other Authorities**

15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.)...............................................20

U.S. CONST. amend. V ..................................................................................29

## I.     INTRODUCTION

Petitioners are municipalities who initiated state-court litigation to abate the opioid epidemic in their communities. Without waiving objections to jurisdiction,[1] Petitioners seek a writ of mandamus requiring that the District Court in MDL 2804 vacate its order obstructing discovery in Petitioners' state court cases and requiring that settlements and judgments in these state cases be paid in part into a federal court fund.

Five of the Petitioners were granted writ relief by this Court, and as a result, their cases were remanded from MDL 2804 to the state courts with jurisdiction. However, on May 9, 2022, without any prior motion, notice, or opportunity for hearing, the District Court issued an Order explicitly commandeering aspects of state court cases, including Petitioners' cases. The Order requires that 7.5% of future opioid case settlements and judgments be diverted from *inter alia* Petitioners' state-court cases and deposited into the District Court's common-benefit fund. According to the Order's explanation of how the 7.5% is to be calculated, upwards of **75**% of attorney fees and costs must be paid to the federal fund from statewide settlements outside the District Court's jurisdiction and reach.

This Order also obstructs discovery in state courts and purports to divest state Judges of control over discovery in state cases. According to the Order, defendants

---

[1] Petitioners hereby make a special appearance objecting to federal jurisdiction.

need not re-produce documents and evidence in cases remanded to state court; however, plaintiffs not signatory to a federal "Participation Agreement" cannot access any of these documents and evidence—except through discovery in their home forum, i.e., except through the discovery the Order bars. For South Carolina and Texas Petitioners, the Order purports to contradict standing discovery orders issued in state court cases. This is a clear usurpation of power, because the District Court does not have jurisdiction to prevent defendants from producing their own documents in state court cases where they are parties. If the Order stands, substantial evidence will be outside the reach of governmental-entity plaintiffs trying to litigate their state court cases.

Petitioners have no adequate remedy other than to seek a writ of mandamus. Petitioners either were never before the District Court or are no longer before the District Court.[2] The Order is both clearly erroneous and a usurpation of authority.

## II.    STATEMENT OF RELIEF SOUGHT

Petitioners ask that this Court vacate the Ongoing Common Benefit Order to the extent that it applies to cases over which the District Court does not have subject-matter jurisdiction and authority, and issue a writ forbidding the District Court from dictating attorney fees, expenses, discovery, and evidence in cases not properly

---

[2] With the exception of Walker County, which remains in MDL 2804 notwithstanding the lack of federal subject matter jurisdiction.

2

before the District Court. This writ is not brought on behalf of plaintiffs whose cases belong in federal court, plaintiffs who agreed to pay a common benefit assessment through a Participation Agreement, or plaintiffs specifically proven to have actually substantially benefited from and used MDL 2804 work product.[3]

## III.   STATEMENT OF ISSUES PRESENTED

1. Can a District Court enter orders controlling attorney's fees, expenses, and discovery in cases over which the District Court lacks jurisdiction or authority?

2. Can a District Court, without notice and an opportunity to be heard, require that a percentage of judgments and settlements, in cases over which the District Court lacks jurisdiction and authority, be deposited into a federal fund?

3. Can a District Court require that a percentage of judgments and settlements, in cases over which the District Court lacks jurisdiction and authority, be deposited into a federal common benefit fund without proof that court-appointed counsel's work can be traced to a substantial benefit in such cases?

---

[3] The term "MDL 2804 work product" does not include the DEA's "ARCOS data," which is addressed below.

4.  Can a District Court order that a defendant in a state court case need not

produce documents and evidence when the state court has ruled otherwise?

## IV.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND.

### A. The District Court's Order Strips State Litigants of Part of Their Recoveries and Their Rights to State Court Discovery.

The District Court, without prior notice or an opportunity to be heard, entered

an order that dispossesses Petitioners of future litigation recoveries, divests state-

court judges of the authority to manage discovery in cases before them, and usurps

existing state court discovery orders. The District Court's "Ongoing Common

Benefit Order" provides that, "each Defendant named in any case pending in MDL

2804 is hereby ORDERED to hold back the 7.5% common benefit percentage from

all applicable judgments and settlements entered after the date of this Order and to

deposit such amounts into the Court Common Benefit Fund." Exhibit 1, Ongoing

Common Benefit Order, Doc. 4428 ("Order"), at 18. While the Order compels all

Defendants in MDL 2804 to make these deposits, the Order is not limited to

judgments and settlements of the **cases** pending in MDL 2804. The Order also

applies to *inter alia* all Opioid cases that were remanded from MDL 2804 after being

wrongfully removed, and appears to apply to every opioid case a plaintiff's lawyer

has if that lawyer has or had a case in MDL 2804.[4] As the District Court recognizes,

---

[4]  *See* Order, 11 ("will apply to . . . other plaintiffs and claims represented by plaintiffs' counsel with Opioid Cases pending in or remanded from MDL 2804"), 12

the Judicial Panel on Multidistrict Litigation (J.P.M.L.) has stopped the transfer of cases to MDL 2804,[5] yet the District Court Order taxes and dictates discovery practices for newly filed cases, state or federal.

The 7.5% number is also misleading in effect. The Order dictates how the assessment "would work in a state-wide settlement involving claims by both the State Attorney General and governmental subdivisions within the State." Order, 18 n.11. If there is a $400 million abatement payment plus $40 million for fees and costs, both divided equally between the State and subdivisions, then "the common benefit assessment [owed to the federal fund] would be 7.5% of the $200M subdivision share = **$15M**[.]" *Id.* (emphasis added). In this hypothetical, the subdivisions' fees and expense recovery is $20 million (half of the $40 million fee/cost total). The Order thus takes $15 million out of $20 million—**75% rather than 7.5%**—for the federal common benefit fund. Thus, the federal Plaintiffs' Executive Committee lawyers (PEC) walk away with the lion's share of the fee and cost compensation after doing no work at all in state cases.

---

("Court has authority over plaintiffs' counsel by and through their MDL cases" and is making "assessments on non-MDL cases *actually filed* in state courts"). *See also* Order, 3 n.1 (Opioid Cases defined as opioid-related litigation "in any court throughout the United States"), n.11 (example indicating application to state-wide settlements).

[5] *See id.* at 6.

The Order also prevents state court judges from entering discovery orders pursuant to state law and facts applicable in the state cases, and would operate to abrogate existing state court orders. Specifically, the Order states that:

> [I]n any case remanded by this Court to any other court: (1) Defendants are not required to re-produce documents or evidence they produced in the MDL; and (2) the plaintiffs' access to such documents or evidence, and to any MDL work product, is subject to the provisions of this Ongoing Common Benefit Order.

Order, 9 n.6; *see also id.* at 8 ("in factually related cases in other courts"). The reference to other "provisions" is significant: plaintiffs cannot access documents or evidence unless they are party to "Participation Agreements," and this prerequisite applies "**regardless of where or whether their cases or claims are filed**." Order, 19 (emphasis added). The Order thereby purports to strip *inter alia* Petitioners of their rights to compel the production of "documents or evidence" from Defendants in state court cases, regardless of the fact that federal subject matter jurisdiction never existed as to these cases.[6]

### B. Petitioners' State-Filed Opioid Cases Have Either <u>Never</u> Been in Federal Court, or Were Only in Federal Court After an Improper Removal.

Harris, Rockwall, and Ellis Counties, Texas, and Albuquerque and Santa Fe Cities, New Mexico, are now proceeding in state courts, thanks to this Honorable

---

[6] Petitioners will fight application of the Order in all state cases and reserve the right to do so.

Court granting their writ of mandamus. Exhibit 2, Order, *In re Harris County, TX*, No. 21-3637 (6th Cir. March 11, 2022) ("*Harris County* Order"). This Court found that Petitioners' motions to remand had been pending an unduly long time, that the unanimity of the decisions of courts that had adjudicated opioid defendants' removals lent significant support to Petitioners' arguments, and that Petitioners lacked an alternative remedy. *Id.* at 3-5. On March 11, 2022, this Court granted Petitioners' writ, ordered the District Court to promptly address Petitioners' remand motions, and required the District Court to submit a status report every thirty days. *Id*. at 5. Petitioners' cases were remanded to state court by March 30, 2022, without any objection from any Defendant[7]—demonstrating federal subject matter jurisdiction was never proper.

To the knowledge of the undersigned, the status of the Walker County, Texas case has not yet appeared on any monthly status reports on remand motions by the District Court to this Court. The only such report of which Petitioners are aware was made on April 1, 2022.

---

[7]  Exhibit 3, Remand Order, Doc. 4335 (N.D. Ohio March 26, 2022) (Rockwall and Ellis County, Texas, remanded after removing Pharmacy Defendants consented to remand); Exhibit 4,  Remand Order, Doc. 4341 (N.D. Ohio March 30, 2022) (Harris County, Texas and Cities of Santa Fe and Albuquerque, New Mexico, cases were remanded after defendants "did not submit supplementary filings as … required" in the New Mexico cases; the Harris County removal was mooted).

The Arkansas and South Carolina Petitioners are all proceeding in the state courts with jurisdiction over their claims. These cases for the most part were never in federal court; a handful were wrongfully removed and remanded back to state court before transfer to the JPML.

### C. The Court's Order Was Issued Without Notice, an Opportunity to Be Heard, or Proof that MDL 2804 Court-Appointed Counsel Provide A Benefit to Petitioners' Cases.

The District Court's Order was entered without motion, a hearing, or proof that PEC lawyers substantially benefitted any of Petitioners' state-initiated opioid cases.[8]

Two years ago, the PEC filed a motion requesting a common benefit assessment order, and this motion was denied without prejudice.[9] That motion sought only a 7% common-fund assessment.[10] A tsunami of objections were filed, including objections filed by certain Petitioners here.[11] Objectors explained that the PEC was an **impediment** to the efforts of State plaintiffs to negotiate settlements

---

[8] *See* Exhibit 5, Docket Sheet excerpts, Entry for Document 4428 (omitting Related Document number identification of any prior motion).

[9] *See* Order, 4.

[10] Exhibit 6, Am. Mot. for Entry of Order Establishing Common Benefit Fund, Doc. 3112 (filed N.D. Ohio Jan. 28, 2020).

[11] *See* Exhibit 7, R&R Addressing Mot. for Common Benefit Fund, Doc. 3319 (N.D. Ohio June 3, 2020), at 1 (listing thirteen opposition briefs).

with the opioid defendants.[12] Other objectors explained that cases were being worked up in the state courts without any help from the PEC.[13]

The District Court appointed Professor William Rubenstein to make a recommendation. The Professor reported that, "[t]o demonstrate their entitlement to a common benefit fee, proponents must show that their work 'substantially benefited' the cases to be taxed."[14] However, the PEC failed to "substantiate [their legal arguments] with proper supporting affidavits or documents" to demonstrate "that their efforts have substantially benefited the many satellite cases they seek to tax."[15] On May 9, 2022, when the District Court entered its Order diverting 7.5% of Petitioners' future recoveries to the federal fund, this deficiency was not corrected, and no responsive pleadings or hearing was allowed to make the record clear.

Consistent with the PEC's inability to prove entitlement to proceeds from cases on which it never worked, a prior District Court Order stated the PEC would no longer try. On July 22, 2021, a District Court fee-related Order memorialized that "[t]he PEC . . . makes clear it is **not** seeking a global common benefit order

---

[12] *See, e.g.,* Exhibit 7, R&R, 6 (National Association of AGs claimed irreparable disruption).

[13] *See, e.g.,* Exhibit 8, County of Harris' Br. in Resp. to Prof. Rubenstein's R&R, Doc. 3350 (N.D. Ohio June 23, 2020), at 2-3 (explaining how "[t]he parties to the State of Texas' *In Re Texas Opioid Litigation* have heavily litigated the claims of Texas governmental entities for years without any assistance from the PEC.").

[14] *Id.* at 2.

[15] *Id.* at 4 n.2.

applicable to any other case. Specifically, . . . the PEC will not seek to make it applicable to settlement proceeds or judgments payable . . . to any state court plaintiff that is entirely outside of the Court's jurisdiction (with certain understandable exceptions)."[16] Less than nine months later, the Order increases the assessment and does the very thing the PEC allegedly was "***not*** seeking."

Simply put, the May 9, 2022, Order was not preceded by a relevant motion, notice, hearing, or proof that the 7.5% holdback was sought or earned in any state-filed case.

### D. The Order Relies on the PEC's Work with ARCOS Data[17] Notwithstanding that Neither the PEC Nor Its ARCOS Data Provides Any Benefit to the State Cases.

The Order acknowledges the "routine[] caution against exercising authority to impose common benefit assessments on non-MDL cases actually filed in state courts." Order, 12 (emphasis omitted). The Order does so anyway. As to why state court cases are subjected to a federal common benefit assessment, the Order states:

> [L]evying a common benefit tax upon this category of Plaintiffs and their counsel is crucial because of: (1) the virtually unprecedented expense by the PEC for the common benefit in obtaining and synthesizing the ARCOS data; and (2) the absolutely essential character of the ARCOS data in allowing any and all opioid plaintiffs to prosecute their cases in the first place.

---

[16] Exhibit 9, Order Establishing Common Benefit Fee Fund and Directing Certain Payments, Doc. 3794, at 3 (emphasis in original).

[17] ARCOS is the Drug Enforcement Administration's Automation of Reports and Consolidated Orders System database.

Order, 12-13. This reasoning is impeached by six counterfactual points.

First, several Petitioners were not free "to prosecute their cases **in the first place**" (*id.,* emphasis supplied). Petitioners' cases were stayed for years in the District Court, which lacked jurisdiction and would not grant Petitioners leave to file anything—not even a remand motion.[18]

Second, the PEC were no help. Rather than benefitting Petitioners, MDL 2804 presented a roadblock that took some Petitioners years of court filings to navigate. Petitioners finally succeeded in their petition to this Court for a writ of mandamus.[19] The PEC never assisted any Petitioner, even though it was obvious that the cases were wrongfully removed.[20]

Third, the PEC's work on the ARCOS data is not "absolutely essential" to Petitioners' cases. There is **no** showing of substantial benefit to Petitioners. The ARCOS data stops at 2014,[21] and is limited to 14 products. Additionally, Petitioners are using superior sources of information, including, for example, Defendants' data, state governmental data, industry group data, and local information; these sources

---

[18]  *See* Exhibit 2, *Harris County* Order, 2.

[19]  *See In re Harris County, Texas,* No. 21-3637 (6th Cir.), at Doc. 1-3 (exhibits illustrating that five Petitioners filed remand motions in the transferor courts, tried filing remand motions in MDL 2804 but were denied leave, filed remand motions in the J.P.M.L., and ultimately applied to this Court for a writ).

[20]  *See id.*; *see also* § IV.B & note 7 *supra*.

[21]  *In re Nat'l Prescription Opiate Litig*., 927 F.3d 919, 925-26 (6th Cir. 2019) (the time period for ARCOS production ended December 31, 2014).

are more relevant, in terms of products, dates, and plaintiff-specific facts, than the ARCOS data.[22]

Fourth, if Petitioners wanted the ARCOS data, Petitioners would not need the PEC. The PEC stipulated to a protective order that would have kept the ARCOS data under seal.[23] When the Washington Post appealed, this Court vacated the protective order.[24] Therefore, if Petitioners wanted to use ARCOS data, they would not need to get it from the PEC.

Fifth, the PEC explicitly and repeatedly promised that the ARCOS data would not be the basis for a common benefit tax against recoveries.[25] Now, however, the District Court *sua sponte* cites ARCOS data as its basis for taxing state cases. *See* Order, 12-13 (quoted above).

---

[22] *E.g.*, Texas Prescription Monitoring Program, https://txpmp.org/.

[23] *See In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 930 ("the parties stipulated to a protective order. . . . It is a grave mischaracterization to state that Plaintiffs 'energetically fought' over the issue of public disclosure when they neither raised it before the district court nor even objected when the district court stated that the issue was not disputed.").

[24] *In re Nat'l Prescription Opiate Litig.*, 927 F.3d at 938 ("we hold that the district court abused its discretion in finding 'good cause' not to permit disclosure of the ARCOS data pursuant to state public records requests").

[25] Exhibit 10, MDL 2804: Second Amended Notice of ARCOS Disclosure, Doc. 1613, at 1 (first paragraph of letter from PEC "explains how you may obtain, **without charge**, refined data . . .  from the ARCOS database") (emphasis added), *ibid* ("the MDL PEC is making available to you **without charge** the unprocessed ARCOS data"), *ibid* ("We are also providing you, **again without charge**, access to the result of that investment") (emphasis added); *see also* Exhibit 11, The Mayor and City Council of Baltimore's Request as Amicus Curiae for Modification of the Court's August 12, 2021 Order, Doc. 3888, at 2-4.

Sixth, the PEC has already been more than compensated for ARCOS data processing expenses. While the District Court categorizes ARCOS compilation as a "virtually unprecedented expense,"[26] the Order fails to quantify what that expense actually was. To the knowledge of undersigned, the expense was previously reported by the PEC as in the area of one million dollars. The PEC has already been reimbursed a thousand times over. At the end of 2019, the Court ordered a hold-back from Track One settlements, and in July 2021, $14.2 million in fees and $7.1 million in expenses were disbursed.[27] More recently, two settling defendant groups agreed to pay $50 million into the MDL PEC-only Expense Fund;[28] an additional $160 million into a Participating Subdivision Counsel Expense Fund; and, more than $1,900,000,000.00 ($1.9 billion) into an attorney's fee fund (consisting of 40% contingency fee and 60% common benefit fee).[29]

---

[26]  Order,  13.

[27]  Exhibit 9, Order Establishing Common Benefit Fee Fund and Directing Certain Payments, Doc. 3794, *In re Nat'l Prescription Opiate Litig.,* MDL 2804 (N.D. Ohio July 22, 2021).

[28]  Exhibit 12, Order to Establish QSF, Doc. 3828, p. 15 ("total of $50,000,000 . . . into the agreed-upon MDL Expense Fund.").

[29]  *Id*. at 16 (7.5% of gross recovery, non-participating subdivisions). *See also* Distributor Master Settlement Agreement Exhibit R at R-2 https://opioidfeepaneldocuments.files.wordpress.com/2022/04/exhibit-r_distributor_settlement_agreement_3.25.22_final.pdf; Janssen Master Settlement Agreement Exhibit R at R-3 https://opioidfeepaneldocuments.files.wordpress.com/2022/04/exhibt-r-janssen-agreement-03302022-final2.pdf.

\* \* \*

To summarize, there is no dispute that:

- Petitioners filed their cases in state court.

- No Defendant tried to justify the wrongful removals of the five Petitioners' cases.

- Thus MDL 2804 did not and does not have subject matter jurisdiction over Petitioners' cases.

- Petitioners and their counsel have not signed a federal "Participation Agreement."

- No MDL "common benefit" work has been used in the Petitioners' cases.

- Petitioners intend to litigate their claims against the retail pharmacy defendants and other non-settling defendants in state court.

- Once Petitioners do so, the District Court's Order will substantially hamper their ability to prosecute and, if appropriate, resolve their cases by purporting to control discovery.

- The Order was issued without notice or opportunity to be heard.

## V.  REASONS WHY A WRIT OF MANDAMUS SHOULD ISSUE

"A party seeking relief in mandamus generally must demonstrate a 'clear and indisputable' right to that relief." *In re Simons*, 567 F.3d 800, 801 (6th Cir. 2009)

14

(citations omitted). One traditional use of the writ has been to confine the court against which mandamus is sought "to a lawful exercise of its prescribed jurisdiction." *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943)). To confine writs to only extraordinary causes, three conditions must be satisfied. First, petitioners cannot have adequate alternative means to obtain the relief they seek. *Id*. at 380. Second, petitioners must show a "clear and indisputable" right to the relief sought. *Id*. at 381 (quotation omitted). Third, petitioners must show that issuing the writ is otherwise "appropriate under the circumstances." *Id*. *See also Harris County* Order, 3-4. Each requisite is addressed in turn below.

### A. A Mandamus Writ Is the Only Adequate Remedy

"[A] mandamus lies, if there be no other *adequate*, *specific*, *legal* remedy." *In re United States*, 32 F.4th 584, 590 (6th Cir. 2022) (quotation omitted). There is no other adequate remedy, as there is no final judgment the District Court can issue in Petitioners' cases. Most Petitioners were never in federal court; five were recently remanded pursuant to the *Harris County* Order, and one Petitioner's case, Walker County's, remains in MDL 2804 but should soon be remanded to state court.

A "writ is appropriately … issued when there is usurpation of judicial power or a clear abuse of discretion." *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) (quotation omitted). Where, as here, the district court usurped judicial power by

15

ordering persons not within its jurisdiction to make payments into a court-designated fee fund, a writ of mandamus should issue to correct the jurisdictional overreach. *See, e.g., Hartland v. Alaska Airlines,* 544 F.2d 992 (9th Cir. 1976).

### B. Petitioners Have a Clear and Indisputable Right to Proceed in State Court Without Having Discovery Obstructed and Recoveries Siphoned Off to a Federal Fund.

#### 1. The District Court does not have the authority to dictate fees and expenses in state court cases.

"Under the American Rule it is well established that attorney's fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *Summit Valley Indus. Inc. v. Loc. 112, United Bhd. of Carpenters & Joiners of Am.*, 456 U.S. 717, 721 (1982) (citation omitted). Absent recognized exceptions, "the rule has been consistently followed for almost 200 years." *Id.*

"A court can only act if it has power. And a court only has power if an act of Congress or the Constitution grants it." *In re Univ. of Michigan*, 936 F.3d 460, 467 (6th Cir. 2019). No statute or rule authorizes common benefit fees in multidistrict litigation. The District Court's reliance upon the common-fund doctrine as an exception to the American Rule is misplaced. First, every Circuit Court to address the issue has decided that if a district court does not have authority over the litigation, then it lacks authority to distribute proceeds from the litigation. Second, Petitioners should not be forced to pay for legal services they never received. Third, the Order violates state law.

16

> ### a.    The common-fund exception to the American Rule is inapplicable because the proceeds from state court cases are outside of the District Court's authority.

The Supreme Court defined the common fund doctrine as follows:

> [P]ersons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. **Jurisdiction over the fund involved in the litigation** allows a court to prevent this inequity by assessing the attorneys' fees against the entire fund, thus spreading fees proportionately among those benefitted by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted) (emphasis added). The court's ability to "legitimately exercise authority or control" over the fund is "crucial." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 770 (9th Cir. 1977). Because the MDL court cannot "legitimately exercise authority or control" over settlements and judgments in other courts—beyond the MDL—the common-fund doctrine cannot support ordering holdbacks from non-MDL cases.  *See id.* at 771 n.11; *see also In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1018 (5th Cir. 1977) ("Determination of whether a fund exists is a combination of traditional and pragmatic concepts centering around the power of the court to control the alleged fund."); *id.* at 1018 n.16 ("Central, of course, is authority to adjudicate the rights and duties of interested parties."); *U.S. ex rel. Bogart v. King Pharmas.*, 493 F.3d 323, 329 (3d Cir. 2007) ("Application of the common fund doctrine . . . requires court 'control over a fund or jurisdiction over the parties.' "). The District

Court's attempt to do so is a gross overreach of its authority and an unwarranted expansion of the common fund doctrine.

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 167 (1939) (cited at Order, 2), underscores that the common-fund doctrine requires court control over the fund in order for the court to assess fees and costs. In *Sprague*, the fund consisted of specific property held by the defendant trustee in the case, i.e., certain bonds used to secure bank deposits, and this property was before the court. 307 U.S. at 162-63. The *Sprague* petitioner "established the claims of [others] pertaining to the same bonds." *Id*. at 166.

Consistently, the Circuit Courts have recognized that authority over the fund is an essential predicate to application of the common fund doctrine. For example, *In re Genetically Modified Rice Litigation* explains that "the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs*" and the defendant. 764 F.3d 864, 874 (8th Cir. 2014) ("*GMO Rice*"). "[S]tate-court cases, related or not, are not before the district court." *Id.* That remained true "[e]ven if the state plaintiffs' *attorneys* participated in the MDL" because the MDL court "does not have authority over separate disputes between state-court *plaintiffs* and" the defendant. *Id.*; *see also id.* (noting "the district court **does not have the power** to order parties in cases not before it to contribute to the Fund" (emphasis added)).

In *Hartland v. Alaska Airlines*, two claimants settled with the defendant airline, and the MDL judge required them to pay a portion of their recoveries as a holdback in anticipation of common benefit attorneys' fees and expenses. 544 F.2d at 996-97. Neither of the settled claims, however, was part of the MDL. One settlement resolved a state-court claim; the other settled before any suit was filed. *See id.* at 996-99. The appellate court issued a writ of mandamus to overturn the order, deeming the MDL court's decision to assess fees against non-MDL recoveries a "usurpation of power." *Id.* at 1001. The MDL court had no authority "to compel lawyers who were not parties to the action to pay" a holdback. *Id.* The Ninth Circuit subsequently followed *Hartland*, finding "the district court had no jurisdiction to compel [a non-party] to pay." *Vincent*, 557 F.2d at 766.

The Fourth Circuit similarly held that the MDL court "has **no power** to extend the obligations of its [holdback] order" to non-MDL plaintiffs.  *In re Showa Denko K.K. L–Tryptophan Products Liability Litigation–II*, 953 F.2d 162, 166 (4th Cir. 1992) (emphasis added). The MDL court's authority "is limited to cases and controversies between persons who are properly parties to the cases transferred." *Id.* at 165-66. "[A]ny attempt without service of process to reach others who are unrelated is beyond the court's power." *Id.* at 166 (citing *Hartland*); *see also id.* (noting the MDL court "has no power to extend the obligations of its orders" to claimants outside MDL).

Other tribunals similarly recognize that a court does not have the authority to order that certain recoveries in cases not before the court be paid into a common benefit fund.[30] In sum, "[t]he **only** circuit courts of appeal to have addressed this issue have held that a district court does not have such jurisdiction to subject parties not before it to common benefit assessments." *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2015 WL 2165341, at *2 (D. Kan. May 8, 2015) (citing *Showa Denko*, 953 F.2d at 165–66; *GMO Rice*, 764 F.3d at 873–74) (emphasis added).

---

[30] *See In re Avandia Marketing, Sales Practices and Products Liability Litig.*, 617 F. App'x 136, 141 (3d Cir. 2015) ("[A] transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred."); *In re Zyprexa Products Liability Litigation*, 467 F. Supp. 2d 256, 268–69 (E.D. N.Y. 2006) (assessing state cases "should, in the first instance, be left to state court judges"); *In re Lidoderm Antitrust Litigation*, No. 14-md-02521-WHO, 2017 WL 3478810, at *3 (N.D. Cal. 2017) ("[D]istrict courts operating pursuant to their multi-district litigation powers do 'not have jurisdiction to order holdbacks from state-court plaintiffs' recoveries' absent some 'independent basis for jurisdiction over these state-court actions.'") (quoting *GMO Rice*, 764 F.3d at 874); *In re Baycol Prod.*, No. MDL 1431, 2004 WL 190272 (D. Minn. Jan. 29, 2004) (court lacked jurisdiction to assess fees and costs against parties whose cases had not been transferred into the MDL; amending PTO accordingly). *Cf. In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 16-MD-02744, 2017 WL 6402992, at *3 (E.D. Mich. Mar. 21, 2017) ("although a transferee judge has the authority to appoint a committee of attorneys to conduct consolidated discovery and can require parties in the MDL cases to make payments into a common discovery fund, that authority does not extend to parties or attorneys involved in related state court proceedings, un-transferred federal cases, or unfiled claims." (quoting 15 Fed. Prac. & Proc. Juris. § 3866 (4th ed.), citing *Showa Denko*, 953 F.2d at 164; *Hartland*, 544 F.2d at 1001)).

Here, the District Court acknowledged that other courts "routinely caution" against commandeering fees from cases filed in state court, but the court then ignored the routine limitations because of a purported "free-rider problem" caused by what it wrongly perceived to be the "unprecedented expense" of the ARCOS data. Order, 11, 12, 13 (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 181 (S.D.N.Y. 2020)). Contrary to the District Court's reliance on *General Motors,* that case did "**not** apply [the common-fund tax] to state-court cases in which the Firms did not use Common Benefit Work Product." 477 F. Supp. 3d at 192 (emphasis added).

Nor is the "free-rider" theory a legitimate basis for seizing authority over proceeds in state-court cases where, as here, no federal work product is used and no "participation agreement" regarding such work product was signed. As one federal court observed last year:

> But free riding occurs all across our legal system. The presence of free riding, and the desire to address it, is not itself a source of judicial power. The power of a court to address free riding concerns—just like the power of a court to address any concern—must actually come from somewhere. . . . [T]hat power does not seem to come from the common fund doctrine.

*In re Roundup Prod. Liab. Litig.*, 544 F. Supp. 3d 950, 960 (N.D. Cal. 2021) (discussing *General Motors*) (appeal pending).

The presence of Defendants before the MDL 2804 Court did not give that court authority over **cases** pending elsewhere. *See GMO Rice*,764 F.3d at 874

("district court overseeing the MDL does not have authority over separate disputes between state-court plaintiffs" and defendant); *Bogart,* 493 F.3d at 329 (finding no authority "hold[ing] that jurisdiction over the defendant, alone, is sufficient to confer authority" to order payment of attorneys' fees from other plaintiffs' recoveries); *Showa Denko*, 953 F.2d at 166 (rejecting argument that jurisdiction over defendant grants authority to order holdback from non-MDL recoveries); *Syngenta*, 2015 WL 2165341, at *3 ("this Court's jurisdiction over the defendant and some attorneys with respect to cases in the MDL does not grant it jurisdiction to issue orders requiring assessments in cases not before this Court.").

Consistently, that a lawyer appears before the District Court does not grant authority over the lawyer's cases pending in different courts. "Even if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and [the defendant]." *GMO Rice*, 764 F.3d at 874; *see also Syngenta*, 2015 WL 2165341, at *3 (quoted above).

### b. *Independently, the common-fund doctrine is inapplicable because the work of District Court-appointed counsel is not traceable to future proceeds in state court cases*

The common benefit fund doctrine requires that the "benefits must be traceable with some accuracy" and "there must be reason for confidence that the costs can in fact be shifted with some exactitude to those benefitting." *Geier v.*

*Sundquist*, 372 F.3d 784, 790 (6th Cir. 2004). Federal courts have equitable power to award attorney's fees where "overriding considerations indicate the need for such a recovery." *Hall v. Cole*, 412 U.S. 1, 5 (1973) (quoting *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-392 (1970)). In *Hall* and *Mills*, reimbursement of attorney's fees to those who provided a "substantial service" "simply shift[ed] the costs of litigation to the class that has benefited from them and that would have had to pay them had it brought the suit." *Hall,* 412 U.S. at 8-9 (quotation omitted). "*Mills* and *Hall* did not change the requirement that the benefit be received in common by those against whom the fee award operates." *Shimman v. Int'l Union of Operating Engineers, Loc. 18*, 744 F.2d 1226, 1234–35 (6th Cir. 1984).

The common-fund prerequisites clearly are not satisfied. Even after Professor Rubenstein's report, the District Court taxed Petitioners' cases without proof that the PEC has or will provide them any legal services or benefit. The Order does not "trace[] with some accuracy" or explain with any "confidence" or "exactitude," *see Geier*, 372 F.3d at 790, why Petitioners' cases benefit from the federal PEC. Instead, the Order relies upon what could **at most** be incidental, i.e. the stale ARCOS data (*see* Order, 12-13). However, "[a]n incidental benefit . . . will not justify a fee award." *Shimman*, 744 F.2d at 1235. Moreover, the PEC repeatedly promised the

ARCOS data would **not** be cause for a common benefit tax, the PEC has been amply compensated, and the ARCOS data is inferior to more current sources of proof.[31]

### c. The Order violates Texas law.

The Order violates Texas law. Texas law forbids the payment of any contingency fee for legal services on behalf of a Texas political subdivision unless several prerequisites are satisfied. "[N]o fees may be paid to any person under the contract **or under any theory of recovery**" without compliance with several prerequisites of the Texas Government Code.[32] Any contingent fee must be approved – before the legal work is performed – by the political subdivision and the Texas Attorney General ("Texas OAG") after statutorily prescribed notice.[33] The amount and payment of such fees are regulated.[34] Contingency fees and expenses must be based on work performed for the political subdivision.[35]

In addition, the Texas Political Subdivisions and the Texas OAG executed a binding agreement ("Texas Intrastate Allocation Agreement"), which caps fees from any statewide opioid settlement at 9.3925% plus expenses, and places such

---

[31]  *See* §IV.D *supra*.
[32]  TEX. GOV'T CODE  §2254.110 (emphasis added).
[33]  TEX. GOV'T CODE §2254.1036(a) (notice and open meeting approval requirements), §2254.1036(a)(1)(B) (content of public notice), §2254.1036(b) (requisite written statements of political subdivision); TEX. GOV'T CODE §2254.1038(a) ("political subdivision must receive attorney general approval").
[34]  TEX. GOV'T CODE §2254.106(b, c) (directing computation).
[35]  TEX. GOV'T CODE §2254.108(d).

24

recoveries under **the sole jurisdiction** of state Judge Schaffer, presiding over the Texas intra-state MDL Court.[36] The settlements that have occurred have complied with this term sheet.[37] An entire Texas code subchapter, Government Code Subchapter R, "Statewide Opioid Settlement Agreement," was enacted in 2021.[38] Texas statutory law thereby codified the Texas Intrastate Allocation Agreement regarding distribution terms,[39] and the deposit and allocation of settlement money.[40]

Any recovery of a percentage fee from a political subdivision in Texas is ineffective and unenforceable unless and until review and approval by the Texas OAG, Texas political subdivisions, and Judge Schaffer.[41] The PEC has not attempted to comply with any of these provisions of Texas law, which the Order violates. A District Court cannot usurp the authority of the Texas Legislature, but does so here.[42]

---

[36] Exhibit 13, Motion to Establish Application Protocols *et al.*, *In re: Texas Opioid Litigation,* No. 2018-63587 (152nd Jud. Dist. Ct. Harris County, Texas April 26, 2022), at Exhibit N to Exhibit B, ¶C.1 (control of any "fees and expenses to the 'Texas Opioid Fee and Expense Fund,' which shall be allocated and distributed by the Texas MDL Court").

[37] *See, e.g., id.* at Exhibit A (Janssen), Exhibit B (Distributors). These and other settlements (Endo, Teva) are posted on the Texas OAG website. *E.g.,* https://www.texasattorneygeneral.gov/sites/default/files/global/files/Teva%20-%20Final%20Texas%20AG%20Settlement%202.4.22.pdf.

[38] TEX. GOV'T CODE §§403.501-511.

[39] *See, e.g.,* TEX. GOV'T CODE §403.506(c) (codifying percent distributions).

[40] TEX. GOV'T CODE §403.507.

[41] *See* notes 33-41 *supra.*

[42] *See* §V.B.2, §V.C *infra.*

## 2. The Order violates the Anti-Injunction Act.

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "The Supreme Court has, on several occasions, recognized that the Anti–Injunction Act creates an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (quotation omitted). The phrase "proceedings in a State court" is "comprehensive" and "includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 403 (1935). A federal order that would bar discovery in a state case implicates the Anti-Injunction Act.[43] "[T]he prohibition of § 2283 cannot be evaded by addressing the order to the parties." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 287 (1970).

---

[43] *See Vietti v. Welsh & McGough, PLLC,* No. 21-CV-58-JFH-SH, 2022 WL 1288314, at *4 (N.D. Okla. Apr. 30, 2022) (request that federal court enjoin state-court deposition subpoena fell "squarely within the Anti-Injunction Act's prohibition"); *see also, e.g.*, *United States ex rel. Grubbs v. Kanneganti*, No. 1:05-CV-323, 2007 WL 9718264, at *3 (E.D. Tex. June 4, 2007) (court lacked authority to protect a party from "noticed deposition in the state court proceeding").

The Supreme Court has "expressly rejected the view that the anti-injunction statute merely states a flexible doctrine of comity, and made clear that the statute imposes an absolute ban upon the issuance of a federal injunction against a pending state court proceeding, in the absence of one of the recognized exceptions." *Mitchum v. Foster*, 407 U.S. 225, 228–29 (1972) (note omitted). "[A] federal court does not have inherent power to ignore the limitations of § 2283 and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. Coast*, 398 U.S. at 294. "[A] simultaneous in personam state action does not interfere with the jurisdiction of a federal court in a suit involving the same subject matter." *In re Fed. Skywalk Cases*, 680 F.2d 1175, 1183 (8th Cir. 1982).

The District Court's Order provides that state courts cannot compel Defendants to produce documents and evidence in accordance with state rules if the documents and evidence were produced in MDL 2804.[44] The Order then forbids Petitioners from accessing any such documents or evidence, because Petitioners are non-signatories to a "Participation Agreement."[45] The Order is not titled an

---

[44] Order, 9 n.6 ("in any case remanded by this Court to any other court: (1) Defendants are not required to re-produce documents or evidence they produced in the MDL").

[45] Order, 9 n.6, 19 (quoted above at §IV.A).

"injunction," but the title is not controlling; the Order's practical effect is in the nature of a federal court injunction of state court proceedings.[46] The Anti-Injunction Act is violated because the Order prevents state court judges from controlling discovery in cases before them and none of the statutory exceptions apply.

The Order also contradicts existing discovery orders in intrastate MDLs. Texas Judge Robert Schaffer, presiding over *In re Texas Opioid Litigation*, No. 18-0358, promulgated orders dictating the production of documents, including documents produced in MDL 2804.[47] Similarly, South Carolina Judge Perry Gravely, vested "with exclusive jurisdiction to hear and dispose of all opioid litigation [cases],"[48] requires that defendants produce to the South Carolina plaintiffs "all document productions from MDL 2804 . . . that are not specific to the State of Ohio," as well as "all deposition transcripts of Rule 30(b)(6) witnesses and employees from the MDL."[49] This Order further provides that the defendants must

---

[46] For example, *Martingale* finds that the Anti-Injunction Act cannot be evaded by omitting a request for an injunction and asking instead for declaratory relief, if declaratory relief would have the same practical effect as an injunction. 361 F.3d at 303.

[47] Exhibit 14, ESI Production Protocol, *In Re: Texas Opioid Litigation*, No. 2018-63587, 4 ("each Texas MDL Defendant shall produce the non-jurisdiction specific documents and ESI that it has previously produced in the National MDL … to the individual member of Plaintiffs' Leadership Counsel"); Exhibit 15, Protocol for Coordination with the National MDL, *In Re: Texas Opioid Litigation*, No. 2018-63587.

[48] *Re: Opioid Litigation,* South Carolina Supreme Court Order August 9, 2018.

[49] Exhibit 16, CMO No. 2 (South Carolina), at §C.1.

28

make these productions on a rolling basis "as additional documents are produced by Defendants in the MDL proceedings."[50]

The Order appears to contradict these prior orders by seemingly adding the additional prerequisite, not otherwise required, that plaintiffs' counsel become parties to a federal "Participation Agreement." *See* Order, 19. The quagmire that the Order, if valid, would create in the state consolidated Courts is precisely why the Anti-Injunction Act is necessary. Defendants are ordered in state court to produce the documents to plaintiffs; however, according to the federal Order, plaintiffs cannot see them because they are non-signatories to the "Participation Agreement," that, *inter alia*, gives the federal court jurisdiction over counsel and counsel's cases.[51]

### 3.  The Order violates the Due Process Clause.

"No person shall…be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. ("Due Process Clause"). The Sixth Circuit and Supreme Court have long held that due process, "requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (quotations omitted).

---

[50] *Id.*

[51] *See* Exhibit 17, Opioid Participation Agreement, Doc. 3352-3, I.A (incorporating Doc. 358), I.B & II.B (submission to federal court orders), I.C (unfiled and state cases included), II.D (must deposit money in federal fund).

A primary purpose of the notice requirement of the Due Process Clause is to ensure that a party is well apprised of the matter potentially affecting one's property rights and that the party is ensured that the opportunity for a hearing is meaningful. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("Th[e] right to be heard has little reality or worth unless one is informed that the matter [which has the potential to affect one's rights] is pending and can choose for himself whether to appear or default, acquiesce or contest."). "[T]he root requirement of the Due Process Clause is that generally an individual [must] be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Guba v. Huron Co.*, 600 Fed. App'x 374, 382 (6th Cir. 2015) (quotation omitted).

"Legal claims are sufficient to constitute property such that a deprivation would trigger due process scrutiny." *In re Motors Liquidation Co.*, 829 F.3d 135, 158 (2d Cir. 2016). "On a broad public level, fee disputes, like other litigation with millions at stake, ought to be litigated openly," and "when a judge constructs a process for setting fees, the process must contain at least the procedural minima of due process: notice and an opportunity to be heard." *In re High Sulfur Content Gasoline Products Liability Litig.*, 517 F.3d 220, 230-31 (5th Cir. 2008) (quotation omitted).

Not only are Petitioners deprived of a portion of case recoveries without any prior motion, notice, or hearing, but the Order contradicts prior representations made by the PEC.[52]

### C. The Writ Is Otherwise Appropriate under the Circumstances.

Mandamus is "appropriate to prevent intrusion by the federal judiciary on a delicate area of federal-state relations[.]" *In re Univ. of Michigan*, 936 F.3d at 466 (quotation omitted). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (recognizing a "strong federal policy against federal-court interference with pending state judicial proceedings," grounded in notions of comity and federalism); *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 222 (6th Cir. 2007) ("the state's interest in administration of its judicial system is important ... [and] federal court interference would be an offense to the state's interest" (quotation omitted)). "Principles of comity and respect for the state courts' supervision of their own dockets and the attorneys before them" counsel against "compel[ling] attorneys who represent both state and federal plaintiffs to set aside a portion of their fee recoveries in state cases." *Zyprexa*, 467 F. Supp. 2d at 268. In *Showa Denko*, the Fourth Circuit concluded that a holdback order created

---

[52] *See* §IV.C & note 16 *supra*.

the "very real potential of interfering with discovery proceedings in state court" and "raise[d] questions of conflict with the policy of comity between federal and state courts." 953 F.2d at 166.

The Order's substantial interference with state courts cannot be seriously denied as it contradicts numerous provisions of state law governing contingency fee contracts and opioid settlement proceeds,[53] and countermands the standing discovery orders of at least two state court jurists.[54]

## VI.   CONCLUSION

Petitioners respectfully request, consistent with their objections to federal jurisdiction, that their petition be granted, that the District Court's Ongoing Common Benefit Order be vacated to the degree it affects cases not pending in MDL 2804 and to cases with meritorious remand motions, that the District Court be prohibited from entering any order affecting Petitioners' cases (other than remand to state court and associated defense sanctions), and for such other relief as may be just.

Date: May 25, 2022                   Respectfully Submitted,[55]

                                     */s/ S. Ann Saucer*
                                     S. Ann Saucer
                                     Texas Bar No. 00797885
                                     Louisiana Bar No. 21368
                                     asaucer@fnlawfirm.com
                                     N. Majed Nachawati

---

[53] *See* §V.B.1.c *supra.*
[54] *See* §V.B.2 *supra.*
[55] Signatories specially appear, preserving objections to federal jurisdiction.

32

Texas Bar No. 24038319
mn@fnlawfirm.com
FEARS NACHAWATI, PLLC
5473 Blair Road
Dallas, Texas 75231
Tel. (214) 890-0711
Fax (214) 890-0712

Matthew S. Daniel
Texas Bar No. 24047575
mdaniel@lawyerworks.com
FERRER POIROT & WANSBROUGH
2603 Oak Lawn Ave. Ste. 300
Dallas, TX 75219
Tel. (214) 521-4412
Fax (866) 513-0115

*Counsel for Petitioners Ellis and Rockwall
Counties, Texas, Cities of Albuquerque and Santa
Fe, New Mexico*

Shelly A. Sanford
State Bar No. 00784904
WATTS GUERRA LLP
811 Barton Springs Rd. #725
Austin, TX 78704
Telephone: (210) 447-0500
Facsimile: (210) 447-0502
ssanford@wattsguerra.com

*On behalf of the Court-Appointed Liaison Counsel
for Texas Local Entity Plaintiffs to Federal MDL
2804*[56]

Pia Salazar
pia@salazar-sullivanlaw.com
Patrick Sullivan

---

[56] Exhibit 18, Order Appointing Leadership for the Plaintiffs, *In re: Texas Opioid Litigation,* No. 2018-63587 (Nov. 26, 2018).

pat@salazar-sullivanlaw.com
SALAZAR, SULLIVAN & JASIONOWSKI
100 Gold Avenue SW, Suite 201
Albuquerque, New Mexico 87102
Tel. (505) 314-1414
Fax. (505) 31401419

*Counsel for Petitioners City of Albuquerque, New Mexico; City of Santa Fe, New Mexico*

THE GALLAGHER LAW FIRM
Michael T. Gallagher
SBOT Bar No. 5395
Texas State Bar No.07586000
Pamela McLemore
Texas State Bar No. 24099711
Boyd Smith
Texas State Bar No. 18638400
SDOT Bar No.: 8203
2905 Sackett Street
Houston, Texas 77098
(713) 222-8080
(713) 222-0066 – facsimile
mike@gld-law.com

Tommy Fibich
Texas State Bar No. 06952600
SDOT Bar #: 5482
Jay Henderson
Texas State Bar No. 09424050
Sara J. Fendia
Texas State Bar No. 06898800
FIBICH, LEEBRON, COPELAND BRIGGS
1150 Bissonnet Street
Houston, Texas 77005
Telephone: (713) 751-0025
Facsimile: (713) 751-0030
Email: tfibich@fibichlaw.com

Dan Downey

Dan Downey, P.C.
SBOT Bar # 459
Texas State Bar No. 06085400
1609 Shoal Creek Blvd. #100
Austin, TEXAS 78701
Telephone: (512) 569-3400
Dandowney427@gmail.com

*Counsel for Petitioner County of Harris, Texas*

Mark A. Correro
TX State Bar No. 24045702
Law Office of Mark A. Correro, P.C.
2900 North Loop West, Suite 400
Houston, TX 77092
(713) 955-3102
mark@correrolaw.com

*Counsel for Petitioner Walker County*

F. Jerome Tapley
Cory Watson, P.C.
2131 Magnolia Avenue South
Birmingham, AL 35205
Direct: (205) 271-7112
Main: (205) 328-2200
Toll Free: (800) 852-6299
jtapley@CoryWatson.com

*Counsel for Petitioners County of Arkansas, AR;*
*County of Ashley, AR; County of Baxter, AR;*
*County of Benton, AR; County of Boone, AR;*
*County of Bradley, AR; County of Calhoun, AR;*
*County of Carroll, AR; County of Chicot, AR;*
*County of Clark, AR; County of Clay, AR; County*
*of Cleburne, AR; County of Cleveland, AR; County*
*of Columbia, AR; County of Conway, AR; County*
*of Craighead, AR; County of Crawford, AR;*
*County of Crittenden, AR; County of Cross, AR;*
*County of Dallas, AR; County of Desha, AR;*

35

*County of Drew, AR; County of Faulkner, AR; County of Franklin, AR; County of Fulton, AR; County of Garland, AR; County of Grant, AR; County of Greene, AR; County of Hempstead, AR; County of Hot Spring, AR; County of Howard, AR; County of Independence, AR; County of Izard, AR; County of Jackson, AR; County of Jefferson, AR; County of Johnson, AR; County of Lafayette, AR; County of Lawrence, AR; County of Lee, AR; County of Lincoln, AR; County of Little River, AR; County of Logan, AR; County of Lonoke, AR; County of Madison, AR; County of Marion, AR; County of Miller, AR; County of Mississippi, AR; County of Monroe, AR; County of Montgomery, AR; County of Nevada, AR; County of Newton, AR; County of Ouachita, AR; County of Perry, AR; County of Phillips, AR; County of Pike, AR; County of Poinsett, AR; County of Polk, AR; County of Pope, AR; County of Prairie, AR; County of Pulaski, AR; County of Randolph, AR; County of Saline, AR; County of Scott, AR; County of Searcy, AR; County of Sebastian, AR; County of Sevier, AR; County of Sharp, AR; County of St. Francis, AR; County of Stone, AR; County of Union, AR; County of Van Buren, AR; County of Washington, AR; County of White, AR; County of Woodruff, AR; County of Yell, AR; City of Benton, AR; City of Bentonville, AR; City of Conway, AR; City of Fayetteville, AR; City of Fort Smith, AR; City of Hot Springs, AR; City of Jacksonville, AR; City of Jonesboro, AR; City of Littlerock, AR; City of Monticello, AR; City of North Little Rock, AR; City of Pine Bluff, AR; City of Rogers, AR; City of Sherwood, AR; City of Springdale, AR; City of Texarkana, AR; City of Adona, AR; City of Alexander, AR; City of Alicia, AR; City of Allport, AR; City of Alma, AR; City of Almyra, AR; City of Alpena, AR; City of Altheimer, AR; City of Altus, AR; City of Amagon, AR; City of Amity, AR; City of Anthonyville, AR; City of Antoine, AR; City of*

*Arkadelphia, AR; City of Arkansas City, AR; City of Ash Flat, AR; City of Ashdown, AR; City of Atkins, AR; City of Aubrey, AR; City of Augusta, AR; City of Austin, AR; City of Avoca, AR; City of Bald Knob, AR; City of Banks, AR; City of Barling, AR; City of Bassett, AR; City of Batesville, AR; City of Bauxite, AR; City of Bay, AR; City of Bearden, AR; City of Beaver, AR; City of Beebe, AR; City of Beedeville, AR; City of Bella Vista, AR; City of Bellefonte, AR; City of Belleville, AR; City of Ben Lomond, AR; City of Bergman, AR; City of Berryville, AR; City of Bethel Heights, AR; City of Big Flat, AR; City of Bigelow, AR; City of Biggers, AR; City of Birdsong, AR; City of Biscoe, AR; City of Black Oak, AR; City of Black Rock, AR; City of Black Springs, AR; City of Blevins, AR; City of Blue Eye, AR; City of Blue Mountain, AR; City of Bluff City, AR; City of Blytheville, AR; City of Bodcaw, AR; City of Bonanza, AR; City of Bono, AR; City of Booneville, AR; City of Bradford, AR; City of Bradley, AR; City of Branch, AR; City of Briarcliff, AR; City of Brinkley, AR; City of Brookland, AR; City of Bryant, AR; City of Buckner, AR; City of Bull Shoals, AR; City of Burdette, AR; City of Cabot, AR; City of Caddo Valley, AR; City of Caldwell, AR; City of Cale, AR; City of Calico Rock, AR; City of Calion, AR; City of Camden, AR; City of Cammack Village, AR; City of Campbell Station, AR; City of Caraway, AR; City of Carlisle, AR; City of Carthage, AR; City of Casa, AR; City of Cash, AR; City of Caulksville, AR; City of Cave City, AR; City of Cave Springs, AR; City of Cedarville, AR; City of Centerton, AR; City of Central City, AR; City of Charleston, AR; City of Cherokee Village, AR; City of Cherry Valley, AR; City of Chester, AR; City of Chidester, AR; City of Clarendon, AR; City of Clarksville, AR; City of Clinton, AR; City of Coal Hill, AR; City of Colt, AR; City of Concord, AR; City of Corning, AR; City of Cotter,*

37

*AR; City of Cotton Plant, AR; City of Cove, AR; City of Coy, AR; City of Crawfordsville, AR; City of Crossett, AR; City of Cushman, AR; City of Daisy, AR; City of Damascus, AR; City of Danville, AR; City of Dardanelle, AR; City of Datto, AR; City of De Queen, AR; City of Decatur, AR; City of Delaplaine, AR; City of Delight, AR; City of Dell, AR; City of Denning, AR; City of Dermott, AR; City of Des Arc, AR; City of Devalls Bluff, AR; City of Dewitt, AR; City of Diamond City, AR; City of Diaz, AR; City of Dierks, AR; City of Donaldson, AR; City of Dover, AR; City of Dumas, AR; City of Dyer, AR; City of Dyess, AR; City of Earle, AR; City of East Camden, AR; City of Edmondson, AR; City of Egypt, AR; City of El Dorado, AR; City of Elaine, AR; City of Elkins, AR; City of Elm Springs, AR; City of Emerson, AR; City of Emmet, AR; City of England, AR; City of Enola, AR; City of Etowah, AR; City of Eudora, AR; City of Eureka Springs, AR; City of Evening Shade, AR; City of Everton, AR; City of Fairfield Bay, AR; City of Fargo, AR; City of Farmington, AR; City of Felsenthal, AR; City of Fifty-Six, AR; City of Fisher, AR; City of Flippin, AR; City of Fordyce, AR; City of Foreman, AR; City of Forrest City, AR; City of Fouke, AR; City of Fountain Hill, AR; City of Fountain Lake, AR; City of Fourche, AR; City of Franklin, AR; City of Friendship, AR; City of Fulton, AR; City of Garfield, AR; City of Garland, AR; City of Garner, AR; City of Gassville, AR; City of Gateway, AR; City of Gentry, AR; City of Georgetown, AR; City of Gilbert, AR; City of Gillett, AR; City of Gillham, AR; City of Gilmore, AR; City of Glenwood, AR; City of Goshen, AR; City of Gosnell, AR; City of Gould, AR; City of Grady, AR; City of Grannis, AR; City of Gravette, AR; City of Green Forest, AR; City of Greenbrier, AR; City of Greenland, AR; City of Greenway, AR; City of Greenwood, AR; City of Greers Ferry, AR; City of Griffithville,*

*AR; City of Grubbs, AR; City of Guion, AR; City of Gum Springs, AR; City of Gurdon, AR; City of Guy, AR; City of Hackett, AR; City of Hamburg, AR; City of Hampton, AR; City of Hardy, AR; City of Harrell, AR; City of Harrisburg, AR; City of Harrison, AR; City of Hartford, AR; City of Hartman, AR; City of Haskell, AR; City of Hatfield, AR; City of Havana, AR; City of Haynes, AR; City of Hazen, AR; City of Heber Springs, AR; City of Hector, AR; City of Helena-West Helena, AR; City of Hermitage, AR; City of Hickory Ridge, AR; City of Higden, AR; City of Higginson, AR; City of Highfill, AR; City of Highland, AR; City of Hindsville, AR; City of Holland, AR; City of Holly Grove, AR; City of Hope, AR; City of Horatio, AR; City of Horseshoe Bend, AR; City of Horseshoe Lake, AR; City of Houston, AR; City of Hoxie, AR; City of Hughes, AR; City of Humnoke, AR; City of Humphrey, AR; City of Hunter, AR; City of Huntington, AR; City of Huntsville, AR; City of Huttig, AR; City of Imboden, AR; City of Jacksonport, AR; City of Jasper, AR; City of Jennette, AR; City of Jericho, AR; City of Jerome, AR; City of Johnson, AR; City of Joiner, AR; City of Judsonia, AR; City of Junction City, AR; City of Keiser, AR; City of Kensett, AR; City of Keo, AR; City of Kibler, AR; City of Kingsland, AR; City of Knobel, AR; City of Knoxville, AR; City of La Grange, AR; City of Lafe, AR; City of Lake City, AR; City of Lake View, AR; City of Lake Village, AR; City of Lakeview, AR; City of Lamar, AR; City of Lavaca, AR; City of Leachville, AR; City of Lead Hill, AR; City of Leola, AR; City of Lepanto, AR; City of Leslie, AR; City of Letona, AR; City of Lewisville, AR; City of Lexa, AR; City of Lincoln, AR; City of Little Flock, AR; City of Lockesburg, AR; City of London, AR; City of Lonoke, AR; City of Lonsdale, AR; City of Louann, AR; City of Lowell, AR; City of Luxora, AR; City of Lynn, AR; City of Madison, AR; City of Magazine, AR; City*

*of Magness, AR; City of Magnolia, AR; City of
Malvern, AR; City of Mammoth Spring, AR; City
of Manila, AR; City of Mansfield, AR; City of
Marianna, AR; City of Marie, AR; City of Marion,
AR; City of Marked Tree, AR; City of Marmaduke,
AR; City of Marshall, AR; City of Marvell, AR;
City of Maumelle, AR; City of Mayflower, AR; City
of Maynard, AR; City of Mccaskill, AR; City of
Mccrory, AR; City of Mcdougal, AR; City of
Mcgehee, AR; City of Mcnab, AR; City of Mcneil,
AR; City of Mcrae, AR; City of Melbourne, AR;
City of Mena, AR; City of Menifee, AR; City of
Midland, AR; City of Mineral Springs, AR; City of
Minturn, AR; City of Mitchellville, AR; City of
Monette, AR; City of Montrose, AR; City of
Moorefield, AR; City of Moro, AR; City of
Morrilton, AR; City of Morrison Bluff, AR; City of
Mount Ida, AR; City of Mount Pleasant, AR; City
of Mount Vernon, AR; City of Mountain Home,
AR; City of Mountain Pine, AR; City of Mountain
View, AR; City of Mountainburg, AR; City of
Mulberry, AR; City of Murfreesboro, AR; City of
Nashville, AR; City of Newark, AR; City of
Newport, AR; City of Nimmons, AR; City of
Norfork, AR; City of Norman, AR; City of
Norphlet, AR; City of O'kean, AR; City of Oak
Grove, AR; City of Oak Grove Heights, AR; City of
Oakhaven, AR; City of Oden, AR; City of Ogden,
AR; City of Oil Trough, AR; City of Okolona, AR;
City of Ola, AR; City of Omaha, AR; City of
Oppelo, AR; City of Osceola, AR; City of Oxford,
AR; City of Ozan, AR; City of Ozark, AR; City of
Palestine, AR; City of Pangburn, AR; City of
Paragould, AR; City of Paris, AR; City of
Parkdale, AR; City of Parkin, AR; City of Patmos,
AR; City of Patterson, AR; City of Pea Ridge, AR;
City of Peach Orchard, AR; City of Perla, AR;
City of Perry, AR; City of Perrytown, AR; City of
Perryville, AR; City of Piggott, AR; City of
Pindall, AR; City of Pineville, AR; City of*

40

*Plainview, AR; City of Pleasant Plains, AR; City of Plumerville, AR; City of Pocahontas, AR; City of Pollard, AR; City of Portia, AR; City of Portland, AR; City of Pottsville, AR; City of Powhatan, AR; City of Poyen, AR; City of Prairie Grove, AR; City of Prattsville, AR; City of Prescott, AR; City of Pyatt, AR; City of Quitman, AR; City of Ratcliff, AR; City of Ravenden, AR; City of Ravenden Springs, AR; City of Rector, AR; City of Redfield, AR; City of Reed, AR; City of Reyno, AR; City of Rison, AR; City of Rockport, AR; City of Roe, AR; City of Rondo, AR; City of Rose Bud, AR; City of Rosston, AR; City of Rudy, AR; City of Russell, AR; City of Russellville, AR; City of Salem, AR; City of Salesville, AR; City of Scranton, AR; City of Searcy, AR; City of Sedgwick, AR; City of Shannon Hills, AR; City of Sheridan, AR; City of Sherrill, AR; City of Shirley, AR; City of Sidney, AR; City of Siloam Springs, AR; City of Smackover, AR; City of Smithville, AR; City of South Lead Hill, AR; City of Sparkman, AR; City of Springtown, AR; City of St. Charles, AR; City of St. Francis, AR; City of St. Joe, AR; City of St. Paul, AR; City of Stamps, AR; City of Star City, AR; City of Stephens, AR; City of Strawberry, AR; City of Strong, AR; City of Stuttgart, AR; City of Subiaco, AR; City of Success, AR; City of Sulphur Rock, AR; City of Sulphur Springs, AR; City of Summit, AR; City of Sunset, AR; City of Swifton, AR; City of Taylor, AR; City of Thornton, AR; City of Tillar, AR; City of Tinsman, AR; City of Tollette, AR; City of Tontitown, AR; City of Traskwood, AR; City of Trumann, AR; City of Tuckerman, AR; City of Tull, AR; City of Tupelo, AR; City of Turrell, AR; City of Twin Groves, AR; City of Tyronza, AR; City of Ulm, AR; City of Valley Springs, AR; City of Van Buren, AR; City of Vandervoort, AR; City of Victoria, AR; City of Vilonia, AR; City of Viola, AR; City of Wabbaseka, AR; City of Waldenburg, AR; City of Waldo, AR; City of Waldron, AR; City*

*of Walnut Ridge, AR; City of Ward, AR; City of Warren, AR; City of Washington, AR; City of Watson, AR; City of Weiner, AR; City of Weldon, AR; City of West Fork, AR; City of West Memphis, AR; City of West Point, AR; City of Western Grove, AR; City of Wheatley, AR; City of Whelen Springs, AR; City of White Hall, AR; City of Wickes, AR; City of Widener, AR; City of Wiederkehr Village, AR; City of Williford, AR; City of Willisville, AR; City of Wilmar, AR; City of Wilmot, AR; City of Wilson, AR; City of Wilton, AR; City of Winchester, AR; City of Winslow, AR; City of Winthrop, AR; City of Wooster, AR; City of Wrightsville, AR; City of Wynne, AR; City of Yellville, AR; and City of Zinc, AR;*

John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
JOHN B. WHITE, JR. P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC  29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com

*Counsel for Petitioners Aiken County, SC; Anderson County, SC; Calhoun County, SC; Cherokee County, SC; Chester County, SC; Dillon County, SC; Edgefield County, SC; Florence County, SC; Greenville County, SC; Greenwood County, SC; Horry County, SC; Lancaster County, SC; Laurens County, SC; Marion County, SC; Marlboro County, SC; McCormick County, SC; Newberry County, SC; Oconee County, SC; Pickens County, SC; Spartanburg County, SC; Sumter County, SC; Union County, SC; and York County, SC*

Joseph J. Cappelli

42

Marc J. Bern & Partners LLP
101 West Elm Street, Ste. 520
Conshohocken, PA 19428
(610) 941-4444
jcappelli@bernllp.com

*Counsel for Petitioners Abbeville County, SC;
Allendale County, SC; Bamberg County, SC;
Barnwell County, SC; Beaufort County, SC;
Chesterfield County, SC; Clarendon County, SC;
Colleton County, SC; Dorchester County, SC;
Fairfield County, SC; Hampton County, SC;
Jasper County, SC; Kershaw County, SC and
Kershaw County Hospital Board; Lee County, SC;
Orangeburg County, SC; Saluda County, SC;
Williamsburg County, SC; and City of Myrtle
Beach, SC*

John S. Simmons
Simmons Law Firm, LLC
1711 Pickens Street
Columbia, SC 29201
(803) 779-4600
jsimmons@simmonslawfirm.com

*Counsel for Petitioner Lexington County, SC*

## CERTIFICATE OF COMPLIANCE

The foregoing petition complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because it contains 7,800 words, excluding accompanying documents required by Fed. R. App. P. 21(a)(2)(C) and items excluded from any length computation per Fed. R. App. P. 32(f). The words are counted using the word-count function on Microsoft Word 2016 software.

This petition complies with the requirements of Fed. R. App. P. 32(a) and Fed. R. App. P. 32(c)(2) because it has been prepared using Microsoft Word 2016 in Times New Roman, 14-point font.

*/s/ S. Ann Saucer*
S. Ann Saucer

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May 2022, a copy of this petition, appendix, and exhibits was filed electronically through this Court's CM/ECF system.

I further certify that service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

*/s/ S. Ann Saucer*
S. Ann Saucer

## APPENDIX

| Exhibit No. | Description | Location in Record | Page ID Range |
|---|---|---|---|
| 1 | Ongoing Common Benefit Order | 1:17-md-02804, Doc. 4428 | 516405-516422 |
| 2 | Order, *In re Harris County, TX* | 21-3637, Doc. 6-1 | Pages 1-5 |
| 3 | Remand Order | 1:17-md-02804, Doc. 4335 | 575458-575459 |
| 4 | Remand Order | 1:17-md-02804, Doc. 4341 | 575661-575662 |
| 5 | Docket Sheet excerpts, Entry for Document 4428 (omitting Related Document number identification) | 1:17-md-02804 | N/A |
| 6 | Amended Motion for Entry of Order Establishing Common Benefit Fund | 1:17-md-02804, Doc. 3112 | 481997-482011 |
| 7 | Report and Recommendation Addressing Motion for Common Benefit Fund | 1:17-md-02804, Doc. 3319 | 494887-494896 |
| 8 | County of Harris' Brief in Response to Professor Rubenstein's Report and Recommendation | 1:17-md-02804, Doc. 3350 | 495854-495876 |
| 9 | Order Establishing Common Benefit Fee Fund and Directly Certain Payments | 1:17-md-02804, Doc. 3794 | 514769-514774 |
| 10 | MDL 2804: Second Amended Notice of ARCOS Disclosure | 1:17-md-02804, Doc. 1613 | 45100-45103 |
| 11 | The Mayor and City Council of Baltimore's Request as Amicus Curiae for Modification of the Court's August 12, 2021 Order | 1:17-md-02804, Doc. 3888 | 534813-534825 |
| 12 | Order to Establish Qualified Settlement Fund, Appoint Panel of Common Benefit and Contingency Fee Fund Arbiters, Approve Fee Fund Allocation and | 1:17-md-02804, Doc. 3828 | 516405-516422 |

| | | | |
|---|---|---|---|
| | Distribution Process, and Approve Common Benefit Cost Payment and Assessment | | |
| 13 | Motion to Establish Application Protocols to the Arbitration Fee Panel for Reimbursement of Attorney Fees and Costs Under the Janssen Texas State-Wide Opioid Settlement Agreement and the Distributors Texas Settlement Agreement | *In re: Texas Opioid Litigation,* No. 2018-63587 | Pages 1-334 |
| 14 | ESI Production Protocol | *In re: Texas Opioid Litigation,* No. 2018-63587 | Pages 1-20 |
| 15 | Protocol for Coordination with the National MDL | *In re: Texas Opioid Litigation,* No. 2018-63587 | Pages 1-10 |
| 16 | Case Management Order No. 2 | In re: South Carolina Opioid Litigation, Case No. 2018-CP-23-01294 | Pages 1-4 |
| 17 | Opioid Participation Agreement | 1:17-md-02804, Doc. 3352-3 | 495961-495967 |
| 18 | Order Appointing Leadership for the Plaintiffs | *In re: Texas Opioid Litigation,* No. 2018-63587 | Pages 1-2 |