UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: "All Cases" | ) ) ) ) ) ) ) | JUDGE POLSTER<br><br>ORDER CLARIFYING ONGOING COMMON BENEFIT ORDER |

This Court earlier entered an *Ongoing Common Benefit Order* at docket no. 4428. In response, one MDL Plaintiff filed a notice of appeal, *see* docket no. 4484, and numerous parties in Opioid state court litigation filed a petition for writ of mandamus, *see* docket no. 4486.

The Court has reviewed the mandamus petition and observes that two of the issues raised by petitioners are based upon language in the *Ongoing Common Benefit Order* that could have been more clear. Accordingly, the Court enters the instant Order to clarify the following two points.

1.   **Footnote 6.**

In the *Ongoing Common Benefit Order*, the Court explained that one of the reasons for entry of that *Order* was to "ensure[] that discovery and litigation tasks, once completed, need not be repeated, as their results are made accessible to all – with the costs thereof equitably spread – in lieu of repetitive expenditures of time, money, and effort." *Order* at 8. In a footnote, the Court added: "Accordingly, in any case remanded by this Court to any other court: (1) Defendants are not required to re-produce documents or evidence they produced in the MDL; and (2) the

plaintiffs' access to such documents or evidence, and to any MDL work product, is subject to the provisions of this Ongoing Common Benefit Order." *Id.* at 9 n.6.

Mandamus petitioners assert (correctly) that this language could be read to "provide[] that state courts cannot compel Defendants to produce documents and evidence in accordance with state rules if the documents and evidence were produced in MDL 2804." Docket no. 4486-1 at 27; *see id.* at 6 (asserting the *Order* "prevents state court judges from entering discovery orders pursuant to state law and facts applicable in the state cases, and would operate to abrogate existing state court orders").

This Court did not intend to enjoin or preclude any state court from entering any discovery order it concludes is appropriate. Indeed, the Court has been careful throughout this MDL to coordinate with state courts and to avoid giving them any direction.[1] The Court meant only to emphasize that, in every related Opioid case (both in state and federal courts), the presiding judge should be aware that plaintiffs, defendants, and third-parties have all spent great time and expense to produce to the MDL Repository an enormous amount of relevant discovery; and this discovery is available to any party that signs a Participation Agreement. The basis for the *Ongoing Common Benefit Order* rests in part upon Fed. R. Civ. P. 26(b)(1), which directs that discovery "must be proportional to the needs of the case," and proportionality is clearly

---

[1] *See, e.g.* docket no. 1029 at 2 ("This Court previously appointed Special Master Cathy Yanni to oversee state and federal coordination efforts . . . . In order to enhance efficiency and avoid duplication of effort and unwarranted expense, the State-Federal Coordination Committee shall communicate on a regular basis with Special Master Yanni in order to coordinate discovery and case schedules in the MDL proceeding with discovery and case schedules in the state court cases to the maximum extent possible.").

undermined by repeated production of the same information in different courts in related cases.[2]

Nonetheless, mandamus petitioners are correct that the Court's language was imprecise, so the Court amends it here. The existing footnote 6 in the *Ongoing Common Benefit Order* is hereby replaced in its entirety with the following language:

> [6] Accordingly, in any case remanded by this Court to any other *federal* court (or otherwise pending in any *federal* court): (1) Defendants are not required to re-produce documents or evidence they produced in the MDL; and (2) the plaintiffs' access to such documents or evidence, or to any MDL work product, is subject to the provisions of this Ongoing Common Benefit Order.
>
> Similarly, in any case remanded by this Court to any *state* court (or otherwise pending in any *state* court): (1) Defendants and third parties may urge the plaintiffs to look first to documents or evidence produced in the MDL, and may advise the state court of the provisions for access to the MDL Repository as a means for satisfying a discovery obligation in state court; and (2) any resulting access to such documents or evidence, or to any MDL work product, is subject to the provisions of this Ongoing Common Benefit Order.

**2.     Footnote 11.**

In the *Ongoing Common Benefit Order*, the Court attempted to set out a rough illustration of how the 7.5% Common Benefit assessment might work in the case of a hypothetical, state-wide $440 million settlement that did not already include any common benefit provisions. *See Order* at 18 n.11. Mandamus petitioners observe that, under this

---

[2] Put squarely: It makes no sense to require or allow a plaintiff that requests discovery in "court A" to incur the costs of maintaining and preserving the information and data received from defendants and third parties, when another plaintiff in the MDL Court is already performing these services and paying those costs for the common benefit. There is no reason for the parties in "court A" to pay *up front* for discovery production and preservation, regardless of any ultimate recovery to defray these costs, when access to the same discovery can be obtained though an assessment that applies *at the end* of the "court A" case if and only if the plaintiff recovers. Moreover, it is not fair to require Defendants to produce duplicative discovery in different courts, after the MDL parties and the Court set up a mechanism specifically to avoid this result.

example: (1) counsel for local governmental subdivisions would receive $20 million toward payment of contingent fees; (2) the total common benefit assessment would be $15 million; and (3) therefore, 75% of counsel's contingent fee payments would go instead to the common benefit fund.[3]

Petitioners' calculation simply shows the results of the Court's fictional hypothetical. If the Court had written that the imaginary settlement included "$40M for reimbursement of ***the subdivisions'*** attorney fees and litigation costs," instead of ***"the State's and subdivisions'*** attorney fees and litigation costs," then the result of petitioners' calculation would be 37.5%, not 75%. And if the amount was $60M instead of $40M, petitioners' calculation would instead yield 25%. The Court could have constructed an imaginary deal that yielded 1.0%. The Court's hypothetical is not real, and was designed mostly to illustrate that the common benefit assessment would apply ***only to the subdivisions' share***, not also the state's share. And the larger point of the footnote, which the Court highlights and clarifies here, is that "the parties may move the Court for modification of the assessment" depending on the terms of any ***actual*** settlement. *Ongoing Common Benefit Order* at 18 n.11; *see also id.* at 19 ("the Court recognizes that the particular circumstances of a settlement or judgment in an Opioid case may justify a case-specific modification of this Order. The parties are free to move for modification at that time."). The Court would not allow imposition of a 7.5% common benefit assessment

---

[3] Petitioners conclude that "the federal Plaintiffs' Executive Committee lawyers (PEC) [would] walk away with the lion's share of the fee and cost compensation after doing no work at all in state cases." Docket no. 4486-1 at 5. First, the entire point of the common benefit assessment, as explained at length in the *Ongoing Common Benefit Order*, is that the PEC ***did*** provide critical work that inured to the benefit of state court cases. Second, the Court expects common benefit awards will be made to many attorneys, not just PEC lawyers – possibly including petitioners, themselves.

4

to yield unfair results in a non-hypothetical case.

*   *   *   *   *

The Court concludes this Order by repeating that the common benefit assessment applies **ONLY** to a judgment or settlement of an Opioid case that is "not otherwise included in global settlements that have their own negotiated, Court-approved common benefit fees and cost structures." *Id.* at 3.  This is likely to be a very small universe.  The Court fully expects that parties in virtually every Opioid case will make the *Ongoing Common Benefit Order* moot by negotiating inclusion of mutually-acceptable common benefit provisions.  Indeed, the parties have a history of "negotiating around" the Court's fee-related orders.[4]  The *Ongoing Common Benefit Order* is meant to serve primarily as a source of context and last resort, applying only if the parties cannot come to their own agreement.[5]

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*

**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** June 8, 2022

---

[4] The Court earlier entered an Order capping certain contingent fee agreements at 15%, but also provided that counsel could negotiate "Back-Stop" agreements with State Attorneys General to provide additional compensation.  *See* Order at 1 and 6 n.18 (docket no. 3814).  Counsel then successfully negotiated about 30 such State Back-Stop agreements, increasing the available total contingent fee in about 80% of cases filed and yielding about $550 million in total additional contingent fee payments.

[5] *See id.* at 5 n.17 (noting the Order that capped contingent fees "addresses contingent attorney fees ***now***, prior to final consummation of the settlement agreement," so that the parties can take the cap into account during further settlement negotiations) (emphasis added).