# EXHIBIT D

The following are Defendants' proposed Conclusions of Law:

1.    Plaintiffs do not, in fact, seek proper "abatement" but instead seek what amounts to future damages.  *See* Dkt. 2535 at 4–5; Dkt. 2163 at 10–12; *see also Longbottom v. Mercy Hosp. Clermont*, 998 N.E.2d 419, 421 (Ohio 2013) (identifying "anticipated medical expenses" as future damages).  Plaintiffs have forfeited their claim to damages.  The Court will not, therefore, award any of what Plaintiffs seek.

2.    Plaintiffs' sought relief is also not abatement because it will not, in fact, eliminate the condition that constitutes the nuisance or the conduct that caused it.  The Court thus refuses to impose what Plaintiffs seek.

3.    Consistent with the Seventh Amendment, the Federal Rules of Civil Procedure, and its own prior orders, the Court cannot award any relief for a nuisance that is any broader than or different from the one the jury found.  The jury did not find that the nuisance was the "opioid epidemic," the "opioid crisis," the "people" who ingested opioid medications, or even opioid addiction and abuse.  Instead, the jury found only that the nuisance was the "oversupply of legal prescription opioids, and the diversion of those opioids into the illicit market outside of appropriate medical channels" in each County.  Dkt. 4176 at 2, 6.  Yet Plaintiffs' plan is not close to directed only at the found nuisance.  Instead, it tries to cure broad, multidimensional social ills that were not the subject of any jury finding and are not abatable under Ohio law.  The Court thus cannot impose the relief Plaintiffs seek.

4.    Plaintiffs' plan also necessarily does not target oversupply caused by defendants' allegedly wrongful dispensing.  Almost all of the harms addressed by the categories of purported "abatement" in Dr. Alexander's report stem instead from causes completely untethered to defendants' dispensing practices.  Plaintiffs' plan requires defendants to pay for all opioid-related

remediation, even those measures that address wrongs transparently unrelated to defendants' dispensing conduct (or associated diversion).  By failing to target only oversupply caused by defendants' wrongful dispensing, the plan is overbroad.  The Court refuses to award Plaintiffs the relief they seek.

5. Plaintiffs' did not provide factual support for their "gateway" causation theory at trial.  The Court thus rejects that theory in its entirety.

6. Under *Grupo Mexicano*, and for the reasons Defendants explain in their post-trial briefing, the Court finds that it lacks authority to award the relief Plaintiffs seek.  Their relief is truly unprecedented.  Yet relief must be the sort that is historically awarded in equity.  Because none of the relief Plaintiffs seek in this truly unprecedented action falls in that category, the Court may not award it.  Even if the award were otherwise proper and tailored, the Court rejects it.

7. Ohio statutory law bars joint liability in this litigation.  Under Ohio law, a tort defendant may be held jointly and severally liable only if the plaintiff proves that the defendant was more than fifty percent at fault.  *See* Ohio Rev. Code § 2307.22(A)(1), (B), (C).  This Court previously held that this statutory scheme did not apply here because Plaintiffs do not seek compensatory damages.  *See In re Nat'l Prescription Opiate Litig.*, No. 17-md-2804, 2020 WL 7330956, at *1 (N.D. Ohio Dec. 9, 2020) (Dkt. 3579, Track Three).  The Court now reconsiders that decision, both because Plaintiffs do, in fact, seek compensatory damages and because the statutory provision does not actually draw distinctions based on the label Plaintiffs place on a request for money but instead applies to "economic loss" more generally.

8. Even if Ohio statutory law allowed joint-and-several liability, Ohio case law would prohibit it.  That case law is reflected in the Restatement (Second) of Torts § 840E cmt. b (1979) and § 433B cmt. e (1965).  The Court finds it would be unjust and would cause defendants

disproportionate harm to impose joint liability on them, especially when Plaintiffs were permitted to prove their liability case in the aggregate and when Plaintiffs offered no evidence to try to show the amount of these defendants' particular shares in the total harm. This was Plaintiffs' burden, and they failed to meet it.

9. The Seventh Amendment requires a jury, not a judge, to determine the facts relating to the relief Plaintiffs seek. In a case like this one, in which Plaintiffs seek the payment of economic damages as part of a traditionally legal claim, the Seventh Amendment requires trial by jury.

10. Even if the Seventh Amendment allowed a judge to sit as factfinder, the Due Process Clause would require it to be a different judge than this Court, which has been significantly involved in settlement discussions, including as a settlement master. This Court served as settlement master, working with the same lawyers representing Plaintiffs to fashion broad settlements with two different sets of settling defendants.

11. Awarding an abatement remedy that addresses the supply, abuse, and effects of illicit opioids would expand the jury's finding of nuisance liability and violate the Seventh Amendment, Rule 42(b), and the Court's prior orders for that reason as well.

12. For the reasons explained in Defendants' post-trial briefs, awarding what Plaintiffs seek would violate due process.

13. For the reasons explained in Defendants' post-trial briefs, awarding what Plaintiffs seek would violate the Excessive Fines Clause.