UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases Naming Sandoz Inc.*<br>*as Defendant* | ) MDL 2804<br>)<br>) Case No. 1:17-md-2804<br>)<br>) Judge Dan Aaron Polster<br>)<br>)<br>) |

## STATUS REPORT OF DEFENDANT SANDOZ INC.

Defendant Sandoz Inc. ("Sandoz"), by its undersigned counsel, submits this status report in accordance with the Court's Order entered April 21, 2022 [Dkt. 4380].

### POSITION ON SETTLEMENT[1]

Sandoz is open to engaging in settlement negotiations. Sandoz requests an opportunity to confer with a designated Plaintiffs' representative to seek agreement on an outside mediator or special master-assisted mediation, to report back to the Court on the parties' progress, and either to seek appointment of an outside mediator or to request the assistance of the special master. Sandoz requests sixty (60) days to provide an initial status report to the Court on the parties' progress in identifying an agreed outside mediator, and an additional thirty (30) days to seek appointment of an outside mediator and to propose a mediation schedule, or, alternatively, to request the special master's assistance.

### POSITION ON ADDITIONAL BELLWETHERS

Sandoz respectfully submits that scheduling of additional bellwether trials and bellwether tracks would be premature with respect to Sandoz. To date, Sandoz and Plaintiffs have not engaged in sufficient pre-trial activity *inter se* to enable a near-term bellwether trial. The lack of substantive

---

[1] In accordance with the Court's Order, Sandoz has also submitted an *ex parte* addendum providing further details regarding its position on settlement negotiations.

1

discovery relevant to a Sandoz bellwether trial would likely impede Plaintiffs' ability to try the case. For the reasons described below, Sandoz believes the parties' time, energy, and resources as pertains to Sandoz would be allocated more efficiently to settlement negotiations, at least as a first step, and further believes that placing Sandoz on a bellwether track may be more likely to distract from rather than contribute to negotiations on potential settlement(s) in these cases. Sandoz therefore requests an opportunity to first pursue settlement negotiations prior to the creation of additional bellwethers or bellwether tracks in which Sandoz is named as Defendant.

In the event the Court disagrees and anticipates placing Sandoz on a bellwether track, for the additional reasons described below, Sandoz requests entry of a case management order affording Sandoz an opportunity to be provided and to review Plaintiff Fact Sheets ("PFSes") and limited initial disclosures from those Plaintiffs naming Sandoz as Defendant, so that Sandoz may ascertain the bases for Sandoz' inclusion as a Defendant in each case and evaluate the claims for purposes of proposing potential cases to be named as new bellwether tracks.

**A.     Placing Sandoz on a Bellwether Track Is Likely to Be Time-Consuming, Expensive, and Less Fruitful than Focusing Initially on Settlement Negotiations.**

Sandoz[2] is a named Defendant in approximately 600 cases in this MDL, as well as one case in New York state court (which has never been served) and three cases in Pennsylvania state court. To this point, Sandoz has not been a named Defendant in any bellwether track in this MDL, any remanded case from this MDL, or any state court bellwether or discovery track case. Accordingly, Sandoz has neither taken nor responded to substantive discovery in any proceeding, has not participated in fact or expert discovery in any case, and has had only limited interactions with Plaintiffs' counsel in this MDL or any related state court cases.

---

[2] Some of the complaints against Sandoz also erroneously name a foreign affiliate, Sandoz International GmbH, which had no involvement in the sale of opioids in the United States, is not a proper defendant in these actions, and has never been served.

2

Sandoz is also positioned quite differently from many other Defendants. Sandoz manufactured or distributed only a few generic versions of opioid medications at issue in this MDL, including generic versions of oxycodone and fentanyl transdermal patches. As a generic-only seller, Sandoz did not engage in promotion or marketing. Moreover, Sandoz voluntarily exited the market and ceased selling these medications in 2017 and 2018, prior to the start of any litigation against it. Throughout the time in which it manufactured or sold the at-issue opioid product lines, Sandoz had a small market share—less than 0.5% by total volume of the oxycodone and fentanyl transdermal patches it manufactured or distributed. If Sandoz were placed on a bellwether track, therefore, it anticipates fact and expert discovery, dispositive motions and/or motions regarding threshold issues, and any bellwether trial are likely to focus on Sandoz-specific issues that are factually distinct from those addressed in the earlier bellwether tracks, would provide little meaningful guidance outside of the Sandoz-specific claims, and would consume significant resources at the expense of pursuing settlement negotiations.

As one important example of such a Sandoz-specific issue, Plaintiffs did not calculate Sandoz' market share from ARCOS data using only the standard metric of dosage units, but instead added an external conversion of the ARCOS data into putative morphine milligram equivalents ("MMEs"). Moreover, for transdermal fentanyl patches—which is the most important component of Plaintiffs' market share claims for Sandoz—Plaintiffs employed a conversion factor of 100 rather than the conversion factor of 7.2 specified in Plaintiffs' own expert report. Only by adding the extrinsic MME metric and employing the excessive conversion factor were Plaintiffs able to allege that Sandoz exceeded the 5% market share threshold this Court established for adding Defendants. Measured by dosage units and without Plaintiffs' 100x conversion factor, Sandoz' market share is below 5% in every market in which Sandoz has been sued. *See*

3

https://www.slcg.com/opioid-data/ (last visited June 15, 2022). And even using Plaintiffs' erroneous MME metric and conversion factor *arguendo*, Sandoz expects discovery to show it has been sued in many markets in which its market share still falls below the 5% threshold. This issue is specific to Sandoz and just a few other Manufacturer Defendants, as it disproportionately impacts manufacturers of transdermal fentanyl patches and appears designed to bring those manufacturers into the litigation.

At the same time, as a consequence of its limited role in these proceedings to date, Sandoz has limited information regarding the claims asserted against it and has not participated in substantive discovery. Sandoz has not received PFSes in the vast majority of the approximately 600 cases pending against it in the MDL. It is likely that PFSes were circulated in many of the other cases before Sandoz was added as a Defendant in spring of 2019 via short-form and/or amended short-form complaints. Other Plaintiffs naming Sandoz as Defendant may not yet have complied with PFS requirements in their cases. Sandoz is actively attempting to gather additional PFSes in the cases pending against it, but its efforts to date have met with only limited success.

Because it has not been part of an active discovery track in any venue, Sandoz also has not issued discovery requests or taken any depositions, nor has it requested production of any documents to date. Accordingly, Sandoz at this point lacks basic information and data in most of the cases pending against it, including the bases for its inclusion as a Defendant in each case. Likewise, because Sandoz has not been a participant in any prior discovery or bellwether track, it has not participated in any discovery in these proceedings or any state proceeding. Sandoz has only limited knowledge of the discovery requests, search terms, and productions made by other Defendants, and does not know whether similar requests, search terms, or production requests would even be applicable to Sandoz' particular factual history.

Given Sandoz' voluntary withdrawal from the opioid market before it was added to this litigation, its generic-only role in which it did not market or promote to patients or prescribers, its small market share, and its non-participation in prior discovery, Sandoz foresees that placing it on a discovery or bellwether track would effectively require starting over from square one with respect discovery directed to the claims against Sandoz. The commitment of time, energy, and resources for Plaintiffs to develop their allegations and claims against Sandoz, and for Sandoz to develop its defenses and to prepare its dispositive motions, would be substantial. Although Sandoz is prepared to defend itself vigorously, it believes an opportunity to pursue settlement negotiations prior to protracted discovery and litigation activity may yield a more productive settlement outcome. Conversely, having to expend substantial financial resources on bellwether-related litigation activity would necessarily distract and detract from settlement negotiations and the amounts available for settlement. For these reasons, Sandoz requests an initial opportunity to pursue settlement negotiations before being placed on a bellwether track.

**B.    If the Court Decides to Place Sandoz on a Bellwether Track, Sandoz Requests a Fair Opportunity to Gather Information on the Claims Against It and to Work with Plaintiffs' Counsel to Prepare a Bellwether Proposal.**

Should the Court conclude it is appropriate to consider placing Sandoz on a bellwether track despite the factors outlined herein, Sandoz respectfully submits that a necessary first step would be for each Plaintiff pursuing claims against Sandoz to provide Sandoz with sufficient information to evaluate the claims against it and to make meaningful recommendations to the Court. As discussed above, Sandoz does not yet have PFSes for the vast majority of the cases filed against it and lacks claim-specific information and data needed for Sandoz to provide a meaningful proposal regarding specific cases that would be appropriate for bellwether selection. Given Sandoz' voluntary withdrawal from the market, generic-only role with no marketing or promotion, and overall small market share, Sandoz believes it has been named as a Defendant in many cases

5

in which it actually did not have sufficient market share to support the claims asserted against it. Sandoz believes a review of the PFSes and limited additional data from Plaintiffs with respect to the markets in which it has been named may reveal errors and discrepancies that could narrow the number of cases against it and separate viable bellwether candidates from non-viable bellwether candidates. An opportunity to review and address these threshold market share and Sandoz-specific liability issues could significantly narrow the number of cases and claims against Sandoz without the necessity of a bellwether track.

Accordingly, in the event the Court decides it is appropriate to place Sandoz on a bellwether track, Sandoz respectfully requests that the Court enter a case management order: (1) directing those Plaintiffs that have named Sandoz as a Defendant to provide Sandoz within 30 days with their PFSes or to confirm that they have not yet prepared a PFS; (2) directing Plaintiffs' designated representative and Sandoz to meet-and-confer within 30 days after production of the PFSes on a plan for an initial round of discovery to provide Plaintiffs and Sandoz with sufficient information to address threshold market share and liability issues and to provide the Court with meaningful proposals regarding specific cases to be named as new bellwether tracks with respect to Sandoz; and (3) directing Plaintiffs' designated representative and Sandoz to provide to the Court within 60 days after production of the PFSes their agreed proposal or competing proposals to complete such discovery and to proceed with specific proposals to create a bellwether track for Sandoz.

Dated: June 16, 2022

Respectfully submitted,

*/s/ Gregory E. Ostfeld*
Gregory E. Ostfeld
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
(312) 456-8400 *Telephone*
(312) 456-8444 *Facsimile*

Email: ostfeldg@gtlaw.com

Lori G. Cohen
Sara K. Thompson
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
(678) 553-2385 *Telephone*
(678) 553-2386 *Facsimile*
Email: cohenl@gtlaw.com
Email: thompsons@gtlaw.com

*Attorneys for Defendant
Sandoz Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2022, the foregoing was filed using the Court's CM/ECF filing system and will be served via the Court's CM/ECF filing system on all attorneys of record.

Dated: June 16, 2022                                   Respectfully submitted,

*/s/ Gregory E. Ostfeld*
Gregory E. Ostfeld
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive
Suite 3100
Chicago, IL 60601
(312) 456-8400 *Telephone*
(312) 456-8444 *Facsimile*
Email: ostfeldg@gtlaw.com

Lori G. Cohen
Sara K. Thompson
**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road NE
Suite 2500
Atlanta, GA 30305
(678) 553-2385 *Telephone*
(678) 553-2386 *Facsimile*
Email: cohenl@gtlaw.com
Email: thompsons@gtlaw.com

*Attorneys for Defendant
Sandoz Inc.*