# APPENDIX B

# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 29th day of October 2021, among Endo, as defined herein, and the State of Alabama ("Plaintiff") (collectively, "the Settling Parties") in the lawsuit captioned, *State of Alabama vs. Purdue Pharma, L.P., et al.* (Civil Action No. 03-CV-2019-901174.00) (Ala. Cir. Ct. Montgomery County) (the "Alabama AG Action"). This Settlement Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof (the "Settlement").

WHEREAS, the Plaintiff filed its complaint in the Alabama AG Action (i) alleging that Endo, among others, violated Alabama law by deceptively marketing opioid pain medications so as to overstate their efficacy and downplay the associated risk of addiction, which resulted in a public nuisance in Alabama; (ii) alleging that Endo, among others, violated federal and state law by failing to monitor, report, and not ship alleged suspicious orders of opioid pain medications; and (iii) asserting claims for damages, equitable abatement, civil penalties and other relief;

WHEREAS, the Plaintiff brought the Alabama AG Action in its sovereign capacity in order to protect the interests of the State of Alabama and its citizens as *parens patriae*;

WHEREAS, numerous other persons and entities in Alabama ("Other Alabama Opioid Plaintiffs") have filed lawsuits in various forums against Endo, among others, raising claims or allegations concerning, related to, based upon, or in connection with the Covered Conduct (defined below) and seeking relief that overlaps in whole or in part with the relief sought by Plaintiff in the Alabama AG Action;

WHEREAS, Endo (i) denies each and all of the claims and allegations of wrongdoing made by the Plaintiff in the Alabama AG Action and by the Other Alabama Opioid Plaintiffs in each of

1

the Other Alabama Opioid Actions (as defined below) and maintains that it has meritorious defenses; (ii) denies all assertions of wrongdoing or liability against Endo arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Alabama AG Action or the Other Alabama Opioid Actions, and contends that the factual allegations made in the Alabama AG Action and the Other Alabama Opioid Actions relating to Endo are false and materially inaccurate; (iii) denies that the Plaintiff was harmed by any conduct of Endo alleged in the Alabama AG Action, the Other Alabama Opioid Actions, or otherwise; (iv) denies liability, expressly denies any wrongdoing, and denies it violated any federal or state statute or common law; and (v) maintains that Endo would be able to successfully defend against Plaintiff's claims and allegations at trial, that the facts do not support the allegations, that Endo engaged in no misconduct or unlawful activity, and caused no harm to Plaintiff or its residents;

WHEREAS, the Parties have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses that have been or could have been asserted in the Alabama AG Action and the Other Alabama Opioid Actions;

WHEREAS, the Parties have each considered the costs and delays and uncertainty associated with the continued prosecution and defense of the Alabama AG Action and the Other Alabama Opioid Actions;

WHEREAS, the Parties believe the Settlement set forth herein avoids the uncertainties of litigation and assures that the benefits reflected herein are obtained;

WHEREAS, the Plaintiff has concluded that the terms are fair, reasonable and adequate and in the best interest of Plaintiff and its citizens;

WHEREAS, the Plaintiff and Endo agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be a concession as to any claim, an admission, evidence of any violation of any statute or law, evidence of any liability or

2

wrongdoing by Endo, or evidence of the truth of any of the claims, allegations, denials, or defenses made in the Alabama AG Action or the Other Alabama Opioid Actions; and

WHEREAS, arm's-length settlement negotiations have taken place over the course of several weeks between Endo and the Plaintiff;

NOW, THEREFORE, IT IS HEREBY AGREED by and between the Plaintiff and Endo, by and through their respective counsel, as follows:

**A.** **Definitions.** As used in this Agreement the following capitalized terms have the meanings specified below.

(a) "Actions" means the Alabama AG Action and all Other Alabama Opioid Actions.

(b) "Agreement" or "Settlement Agreement" means this Settlement Agreement, together with any exhibits attached hereto, which are incorporated herein by reference.

(c) "Alabama Opioid Claims" means any and all claims or causes of action of any nature that have been brought or could be brought in any forum against any Releasees raising claims or allegations concerning, related to, based upon, or in connection with any Covered Conduct in or affecting Alabama by, on behalf of, or in the name of any entity or individual, including but not limited to any public entities or units of government in Alabama, whether incorporated or unincorporated, counties, cities, or any other state or local governmental entities or organizations, and each of their past, present, and future agencies, authorities, boards, commissions, councils, departments, districts, divisions, offices, predecessors, successors, assigns, officials (elected or unelected), employees, attorneys, agents, and representatives, and any other person or entities within the control of any of the foregoing or through which any of the foregoing may take action; provided, however, that "Alabama Opioid Claims" shall not include claims by individuals for damages for personal injury arising out of their own use of any Opioid Product.

(d) "Court" means the Circuit Court for Montgomery County, State of Alabama.

(e) "Covered Conduct" means any and all alleged acts, failures to act, conduct, statements, errors, omissions, events, transactions, services, work, or other activity of any kind whatsoever, arising from or relating in any way to: (i) the discovery, development, manufacture, marketing, promotion, advertising, recall, withdrawal, distribution, monitoring, supply, sale, prescribing, use or abuse of any Opioid Product (as defined herein), or (ii) the characteristics, properties, risks, or benefits of any Opioid Product, whether known or unknown, whether asserted in the Alabama AG Action or the Other Alabama Opioid Actions or unasserted, and whether discovered or undiscovered,

3

including, but not limited to, acts, failures to act, conduct, omissions, events, transactions, or activity of any kind whatsoever alleged in the Alabama AG Action or the Other Alabama Opioid Actions, occurring up to and including the Execution Date.

(f) "Covered Products" means any Opioid Product (as defined below).

(g) "Execution Date" means the date on which this Agreement is executed by the last party to do so.

(h) "Effective Date of the Release" means the date upon which Endo has paid the amount due to the Plaintiff under Section C.1 of this Agreement.

(i) "Endo" means Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.

(j) "Opioid Product" means any chemical substance, whether natural, synthetic, or semi-synthetic, that binds or otherwise interacts with opioid receptors in the body or brain, as well as any product containing any such substance; this definition shall include, but is not limited to, any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, or any similar substance, whether used for medicinal or non-medicinal purposes.

(k) "Other Alabama Opioid Actions" means lawsuits, other than the Alabama AG Action, asserting any Alabama Opioid Claim against any Releasee.

(l) "Other Alabama Opioid Actions Releases and Dismissals" means the releases and dismissals with prejudice referenced in Section B.2 herein.

(m) Unless otherwise specified, "Other Alabama Opioid Plaintiffs" includes not only governmental persons and entities that have filed an Other Alabama Opioid Action, but also those who could or do file an Other Alabama Opioid Action.

(n) "Parties" and "Settling Parties" means Endo and the Plaintiff with each being a "Party" and "Settling Party".

(o) "Released Claims" means any and all Alabama Opioid Claims and any and all other claims or causes of action of any nature, including but not limited to state and federal statutory, regulatory, and common law claims, that were brought or could have been brought by Releasors related to or arising out of the Covered Conduct, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, that Releasors, whether directly, representatively, derivatively, or in any other capacity, may have, including all past and present civil, criminal, derivative, regulatory, administrative, or any other claims Releasors may have under any applicable federal, state, regulatory, or administrative law or statute related to or arising out of any Covered Conduct.

(p) "Releasees" means: (i) Endo Health Solutions Inc.; (ii) Endo Pharmaceuticals Inc.; (iii) Par Pharmaceutical, Inc.; (iv) Par Pharmaceutical Companies,

4

Inc.; and (v) each of the respective parents, members, divisions, direct and indirect subsidiaries, joint ventures, predecessors, successors, affiliates, agents (but only in their capacity as such), assigns, insurers (but only in their capacity as such), and current and former employees, officers, directors, members, shareholders (but only in their capacity as such), partners, trustees, and any current or former related companies of any of the foregoing entities.

(q) "Releasors" means the State of Alabama and all Other Alabama Opioid Plaintiffs, and all of their past, present, and future agencies, authorities, boards, commissions, councils, departments, districts, divisions, subdivisions, offices, predecessors, successors, assigns, officials (elected or unelected), employees, attorneys, agents, representatives, and any other persons or entities within the control of any of the foregoing or through which any of the foregoing may take action.  For clarity, it is the intention of the Parties that all Other Alabama Opioid Plaintiffs release their Alabama Opioid Claims whether or not they have previously filed or been a party to an Other Alabama Opioid Action.

(r) "Settlement Payment" means the payment set forth in Section C.1 of this Settlement Agreement.

**B.     Release and Dismissals in the Other Alabama Opioid Actions**.

1. It is the intention of the Settling Parties to fully and finally resolve all Alabama Opioid Claims that have been or could be brought against the Releasees with respect to the Covered Conduct.

2. In addition to the pro tanto release and dismissal to be provided by Plaintiff as set forth in Sections D & E, Plaintiff will deliver to Endo signed agreements from each Other Alabama Opioid Plaintiff that is a party to any pending Other Alabama Opioid Action, including but not limited to the entities and persons listed in attached Exhibit A.  Such agreement shall include: (a) the Other Alabama Opioid Plaintiff's acceptance of the terms and conditions of this Agreement, including its express agreement to be bound by the irrevocable releases set forth in Section D below; (b) the Other Alabama Opioid Plaintiff's agreement to implement an immediate cessation of any and all litigation activities relating to such Other Alabama Opioid Plaintiff's Alabama Opioid Claims as to all Releasees; and (c) the Other Alabama Opioid Plaintiff's agreement to file, within fourteen (14) days of the Effective Date of the Release, a notice or stipulation of voluntary

dismissal with prejudice of any and all Alabama Opioid Claims asserted by the Other Alabama Opioid Plaintiff against the Releasees, with each party to bear its own costs.

3. Plaintiff represents and warrants that it will use its best efforts to ensure that no additional Other Alabama Opioid Actions are filed against any Releasees or, if such an Other Alabama Opioid Action is filed, to seek prompt dismissal of such Action.

4. Plaintiff further represents and warrants that no portion of the Settlement Payment will be distributed to or used for the benefit of any Other Alabama Opioid Plaintiff unless and until such Plaintiff has delivered to Endo a signed agreement from such Other Alabama Opioid Plaintiff providing for the Other Alabama Opioid Plaintiff's acceptance of the terms and conditions of this Agreement, including its express agreement to be bound by the irrevocable releases set forth in Section D below.

C. **Settlement Consideration**.

1. **Settlement Payment.** In full and complete satisfaction of the releases and dismissals granted in Sections B and D herein, Endo Pharmaceuticals Inc. shall pay to the Plaintiff the sum of Twenty-Five Million Dollars ($25,000,000) (the "Settlement Amount") within ten (10) days after all of the following conditions are satisfied: (a) Plaintiff has delivered to Endo (i) this Agreement executed by Plaintiff and (ii) Other Alabama Opioid Action Releases and Dismissals for all Other Alabama Opioid Plaintiffs with pending Other Alabama Opioid Actions, as required by Section B.2; (b) Endo has received a completed Form W-9 for Plaintiff and confirmation of wire transfer instructions to be promptly provided by Plaintiff in writing to Endo. If for any reason, Plaintiff must remit any portion of the Settlement Amount to a bankruptcy court or other party as result of the commencement of the case with respect to the defendants under Title 11 of the United States Code (the "Bankruptcy Code") then, in the event that Endo International plc is not subject

6

to a case under the Bankruptcy Code, Endo International plc shall make such payment to Plaintiff as soon as reasonably practicable.

2. **No Other Payments By Releasees As To Covered Conduct, Released Claims, Other Alabama Opioid Actions, or Other Alabama Opioid Plaintiffs.** Other than the Settlement Payment by Endo Pharmaceuticals Inc. to Plaintiff referenced in Section C.1, none of the Releasees shall have any obligation to make any further or additional payments in connection with the Alabama AG Action, Other Alabama Opioid Actions, Other Alabama Opioid Plaintiffs, this Settlement, or any of the Covered Conduct, Released Claims, or Alabama Opioid Claims, including but not limited to, in connection with the releases contemplated in Section B above and Section D below.

3. **Apportionment.** Except as provided in Section B.4 above, the Settlement Payment may be further apportioned among and used by the Plaintiff and the Other Alabama Opioid Plaintiffs at the sole discretion of the Plaintiff and the Other Alabama Opioid Plaintiffs as may be agreed upon among them, and Endo shall have no duty, liability, or influence of any kind with respect to that further apportionment and use. The Plaintiff specifically represents, however, that any such apportionment and use shall be made in accordance with all applicable laws.

4. **Use of Evidence at Trial.** Plaintiff agrees that none of the Releasees will be a defendant in any trial of the Alabama AG Action and that any evidence that references the Releasees or the Covered Products will be used solely against other Defendants in the Alabama AG Action.

5. **Jury Verdict Form.** Plaintiff agrees that none of the Releasees will be included on the jury verdict form in any trial related to the Alabama AG Action.

7

D.     **Settlement of Claims and Pro Tanto Release**.

1.     On the Effective Date of the Release, Releasors shall be deemed to have fully, finally, and forever released all Releasees from all Released Claims.  Releasors hereby absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist, or permit to be brought, filed, or claimed, any Released Claims of any type in any forum whatsoever against Releasees.  For the avoidance of doubt, Releasors agree that this Settlement Agreement and the releases contained therein shall fully and completely resolve any past, present, or future liability that any Releasee may have arising from, relating to or based on the Covered Conduct, whether in the Actions or otherwise.  The releases provided for in this Agreement are intended by the Settling Parties to be broad and shall be interpreted so as to give the Releasees the broadest possible bar against any and all Released Claims.  This Settlement Agreement is, will constitute, and may be pleaded as a complete bar to any Released Claim asserted against Releasees.

2.     A Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but Plaintiff, on behalf of itself and all other Releasors, hereby expressly waives and fully, finally, and forever settles, releases and discharges, upon the Effective Date of the Release, any and all Released Claims against the Releasees which may exist as of this date but which they do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Settlement Agreement.

3.     Releasors agree that (i) they will not publicly or privately encourage any other Releasor to bring or maintain any Released Claim and (ii) they will cooperate in good faith with the Releasees to secure the prompt dismissal of any and all Released Claims.

4.     Notwithstanding subsection D.2 above, this is a pro tanto release of the Releasees.  It is not intended to be a release for defendants other than the Releasees.  Releasors reserve the

8

right to proceed against other defendants, liable parties, and/or joint tortfeasors.  Releasors do not release any party or entity who allegedly combined and/or concurred with the Releasees.  It is the intention of the Settling Parties to effect a good-faith pro tanto settlement.

       5.       Notwithstanding the foregoing subsection, it is the intention of the Parties in executing this Settlement Agreement to release the Releasees from any and all potential Alabama Opioid Claims, to the extent permitted by law.

       **E.**       **Cessation of Litigation Activities and Dismissal of Action with Prejudice.**

       1.       **Cessation of Litigation Activities.** It is the Parties' intent that all litigation activities in the Alabama AG Action relating to Alabama Opioid Claims against the Releasees shall immediately and permanently cease as of the Execution Date.  Plaintiff agrees to take all steps reasonably necessary to implement the prompt cessation of such litigation activities, including by, for example, jointly requesting a severance of Endo from any trial in the Alabama AG Action and/or a stay of further proceedings against Endo pending the implementation of this Settlement.

       2.       **Dismissal with Prejudice.** Within five (5) business days of the Effective Date of the Release, the Plaintiff shall voluntarily dismiss Endo with prejudice from the Alabama AG Action with each Party to bear its own costs.

       **F.**       **No Admission of Liability.** The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between Endo and the Plaintiff and between Endo and all Other Alabama Opioid Plaintiffs.  Endo is entering into this Settlement Agreement solely for the purposes of settlement, to resolve the Alabama AG Action and all Other Alabama Opioid Actions and Alabama Opioid Claims and thereby avoid significant expense, inconvenience, and uncertainty.  Endo denies the allegations in the Alabama AG Action and the Other Alabama Opioid Actions and denies any civil or criminal liability in the Alabama AG Action

and the Other Alabama Opioid Actions. Nothing contained herein may be taken as or deemed to be an admission or concession by Endo of: (i) any violation of any law, regulation, or ordinance; (ii) any fault, liability, or wrongdoing; (iii) the strength or weakness of any claim or defense or allegation made in the Alabama AG Action, in any Other Alabama Opioid Action, or in any other past, present, or future proceeding relating to any Covered Conduct or any Opioid Product; or (iv) any other matter of fact or law. Nothing in this Settlement Agreement shall be construed or used to prohibit any Releasee from engaging in the manufacture, marketing, licensing, distribution, or sale of branded or generic opioid medications in accordance with applicable laws and regulations.

G. **Miscellaneous Provisions**.

1. **Use of Agreement as Evidence.** Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the Covered Conduct alleged in the Alabama AG Action or the Other Alabama Opioid Actions, of any allegation made in those cases, or of any wrongdoing or liability of any Releasees; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that Releasees may file this Agreement in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or to support a claim for contribution and/or indemnification.

10

2. **Voluntary Settlement.** This Settlement Agreement was negotiated in good faith and at arm's-length over several weeks, and the exchange of the Settlement Payment for the releases set forth herein is agreed to represent appropriate and fair consideration.

3. **Authorization to Enter Settlement Agreement.** Each party specifically represents and warrants that this Settlement Agreement constitutes a legal, valid, and binding obligation of such Party. Each signatory to this Settlement Agreement on behalf of a Party specifically represents and warrants that he or she has full authority to enter into this Settlement Agreement on behalf of such Party. Plaintiff specifically represents and warrants that it has concluded that the terms of this Settlement Agreement are fair, reasonable, adequate, and in the public interest, and that it has satisfied all conditions and taken all actions required by law in order to validly enter into this Settlement Agreement. Plaintiff specifically represents and warrants that, other than the claims asserted in the Alabama AG Action and the Other Alabama Opioid Actions, it has no interest (financial or otherwise) in any other claim against any Releasee related to the Covered Conduct.

4. **Dispute Resolution.** If Plaintiff believes Endo is not in compliance with any term of this Settlement Agreement, then Plaintiff shall (i) provide written notice to Endo specifying the reason(s) why Plaintiff believes Endo is not in compliance with the Settlement Agreement; and (ii) allow Endo at least thirty (14) days to attempt to cure such alleged non-compliance.

5. **No Third Party Beneficiaries.** Except as to Releasees, nothing in this Settlement Agreement is intended to or shall confer upon any third party any legal or equitable right, benefit, or remedy of any nature whatsoever.

6. **Notices.** All notices under this Agreement shall be in writing and delivered to the persons specified in this paragraph ("Notice Designees") via: (i) e-mail; and (ii) by either hand delivery or registered or certified mail, return receipt requested, postage pre-paid.

Notices to Plaintiff shall be delivered to:

Clay Crenshaw
Chief Deputy Attorney General
Office of the Attorney General
State of Alabama
501 Washington Avenue
PO Box 300152
Montgomery, Alabama 36130
clay.crenshaw@alabamaag.gov

    and

Michael G. Dean
Assistant Attorney General
Consumer Interest Division
Office of the Attorney General
State of Alabama
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130
michael.dean@alabamaag.gov

Notices to Endo shall be delivered to:

Geoffrey M. Wyatt
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue N.W.
Washington, DC 20005
geoffrey.wyatt@skadden.com

    and

Matthew J. Maletta
Executive Vice President and Chief Legal Officer
Endo
1400 Atwater Drive
Malvern, PA 19355
maletta.matthew@endo.com

7.    **Taxes.** Each of the Parties acknowledges, agrees, and understands that it is its intention that, for purposes of Section 162(f) of the Internal Revenue Code, the provision of the Settlement Amount by Endo constitutes restitution for damage or harm allegedly caused by the potential violation of a law and/or is an amount paid to come into compliance with the law. The

12

Parties acknowledge, agree and understand that no portion of the Settlement Amount represents reimbursement to the Plaintiff or other person or entity for the costs of any investigation or litigation, and no portion of the Settlement Amount represents or should properly be characterized as the payment of fines, penalties, or other punitive assessments.  The Plaintiff acknowledges, agrees and understands that Endo intends to allocate the cost of the Settlement Amount among the Releasees using a reasonable basis.  If requested by Endo, the Plaintiff shall complete and file Form 1098-F with the Internal Revenue Service, identifying the Settlement Amount as remediation/restitution amounts, and shall furnish Copy B of such Form 1098-F to Endo.  Endo makes no warranty or representation to Plaintiff as to the tax consequences of the Settlement Amount or any portion thereof.

       8.     **Binding Agreement.** This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

       9.     **Choice of Law.** Any dispute arising from or in connection with this Settlement Agreement shall be governed by Alabama law without regard to its choice of law provisions.

      10.    **Jurisdiction.** The Parties agree to submit and consent to the exclusive jurisdiction of the Circuit Court for Montgomery County, Alabama for the resolution of any disputes arising under the Settlement Agreement.

      11.    **No Conflict Intended.** The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement. The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms.

      12.    **No Party Deemed to be the Drafter.** None of the Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law

or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

13.     **Amendment; Waiver.** This Agreement shall not be modified in any respect except by a writing executed by all the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party.  The waiver by any Party of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous.

14.     **Execution in Counterparts.** This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

15.     **Severability.** In the event any one or more provisions of this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement.

16.     **Statements to the Press.** Any press release or other public statement concerning this Settlement Agreement will describe it positively and will not disparage any other Party.  No Party or attorney, agent, or representative of any Party shall state or suggest that this Settlement Agreement may be used to predict the value of any Claim or any future settlement agreement in any action or proceeding.

17.     **Integrated Agreement.** This Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have executed this Agreement as of the dates set forth below.

**ENDO HEALTH SOLUTIONS INC.**

By:  _____
Name: Matthew J. Maletta
       Its: Authorized Signatory


Date: _____


**ENDO PHARMACEUTICALS INC.**

By:  _____
Name: Matthew J. Maletta
       Its: Authorized Signatory


Date: _____


**PLAINTIFF**

**STATE OF ALABAMA**

By:  *[signature: Steve Marshall]*
Name: Steve Marshall
       Attorney General

Date: October 29, 2021

15