# EXHIBIT C

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION**

**This document relates to:**

    *County of Lake, Ohio v. Purdue
    Pharma L.P., et al.,*
       Case No. 18-op-45032 (N.D. Ohio)

    *County of Trumbull, Ohio v. Purdue
    Pharma, L.P., et al.,*
       Case No. 18-op-45079 (N.D. Ohio)

  **"Track 3 Cases"**

**MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster**

**<ins>KESSLER DECLARATION IN SUPPORT OF
WALGREENS' AND WALMART'S JOINT RESPONSE TO PLAINTIFFS' CLOSING
BRIEF</ins>**

I, Daniel P. Kessler, state as follows:

1. I am a professor at Stanford University where I teach a university-wide health care finance and regulation course for JD, MBA, and MD students.

2. I am also a Senior Fellow at the Stanford Institute for Economic Policy Research and serve as the Director of Research at Stanford University's Hoover Institution.

3. Initially, counsel for Walmart Inc. asked me to respond to certain opinions and assertions made in the April 16, 2021 report of Harvey S. Rosen, PhD., including the revisions submitted by John F. Burke, Jr., Ph.D. on February 1 and 14, 2022, and the April 16, 2021 report of G. Caleb Alexander MD, MS.

4. I testified regarding my opinions on those reports before this Court in May 2022.

5. Since that testimony, counsel for Walmart Inc. asked me to review the Plaintiffs' Closing Brief for Phase 2 Trial filed with this Court on June 12, 2022 at Docket Number 4513.

6. In that submission, Lake County proposed 15-year cost figures based on reducing the estimate of the number of individuals with opioid use disorder ("OUD") from 5,668 to 3,745 in Lake County and from 7,221 to 3,899 in Trumbull County.

7. The exhibit below calculates one-year and five-year uncorrected cost figures assuming the same reduction in the number of individuals with OUD.

8. Although I maintain the opinions I testified about during trial in May 2022 to a reasonable degree of scientific certainty, I revised the corrections I testified about using the Counties updated estimates at the request of counsel and to provide additional information to the Court.

9. Because the Counties revised their estimates of the number of individuals with OUD, in the calculations set forth in the exhibits attached to my declaration, I omit my correction to Professor Katherine Keyes' overestimate of the count of people with OUD.

10. I have included the remainder of the corrections I testified about at trial with revised numbers based on the Counties revised OUD population estimates.

11. Under the assumptions described above, the calculations in the exhibit below are made to a reasonable degree of scientific certainty.

I declare under penalty of perjury that the foregoing is true and correct.  Dated: July 8, 2022

_____

Daniel P. Kessler, PhD

# Exhibit 1

**Correcting Overstatements By Professors Alexander, Burke, and Rosen and Excluding Some Spending Already Covered By Existing Sources Cuts Abatement Costs by 38 Percent**
**(1 Year Plan)**

| | Correcting Overstatements By Professors Alexander, Burke, and Rosen | Lake County | Trumbull County | Sum of Lake County and Trumbull County | Percent of Burke and Rosen Abatement Cost |
|---|---|---|---|---|---|
| [A] | Using Plaintiff's Updated OUD Counts | $53,104,338 | $63,507,126 | $116,611,465 | 100% |
| [B] | [A] + Correct Professor Alexander's Overestimate of the Share of People with OUD Who Will Obtain Treatment (Kessler Report § IV.B) | $52,111,991 | $62,475,802 | $114,587,793 | 98% |
| [C] | [B] + Correct Professor Rosen's Assumption that All People Treated for OUD Receive Treatment Year Round (Kessler Report § IV.C)[1] | $37,862,056 | $47,640,634 | $85,502,690 | 73% |
| [D] | [C] + Correct Professor Alexander's Overstatement of the Number of Heroin Users (Kessler Report § IV.D) | $37,598,996 | $47,369,218 | $84,968,214 | 73% |
| [E] | [D] + Correct Professor Alexander's Mathematical Error (Kessler Report § IV.E) | $37,598,996 | $47,234,418 | $84,833,414 | 73% |
| | **Excluding Some Spending Already Covered by Existing Sources** | | | | |
| [F] | [E] + Exclude Costs of OUD Treatment for Insured People Already Receiving Treatment (Kessler Report § V.A) | $32,472,663 | $41,910,229 | $74,382,891 | 64% |
| [G] | [F] + Exclude Costs of Medical Care for Complications Attributable to OUD for Insured People (Kessler Report § V.B) | $32,288,520 | $41,720,237 | $74,008,757 | 63% |
| [H] | [G] + Exclude Costs of Other Opioid-Related Medical Care for Insured People (Kessler Report § V.C) | $30,932,202 | $40,828,575 | $71,760,778 | 62% |

Source:  Production for Expert Report of G. Caleb Alexander filed April 16, 2021;  Corrected Expert Report of Harvey S. Rosen and John F. Burke filed April 22, 2022; TEDS

Note:
[1] Professor Rosen's assumptions of treatment length were corrected to match the average length of stay for those who began OUD treatment in the state of Ohio, according to TEDS data.

## Correcting Overstatements By Professors Alexander, Burke, and Rosen and Excluding Some Spending Already Covered By Existing Sources Cuts Abatement Costs by Over 40 Percent
## (5 Year Plan)

| | Correcting Overstatements By Professors Alexander, Burke, and Rosen | Lake County | Trumbull County | Sum of Lake County and Trumbull County | Percent of Burke and Rosen Abatement Cost |
|---|---|---|---|---|---|
| [A] | Using Plaintiff's Updated OUD Counts | $291,844,601 | $348,075,285 | $639,919,886 | 100% |
| [B] | [A] + Correct Professor Alexander's Overestimate of the Share of People with OUD Who Will Obtain Treatment (Kessler Report § IV.B) | $276,042,356 | $331,663,726 | $607,706,082 | 95% |
| [C] | [B] + Correct Professors Burke and Rosen's Assumption that All People Treated for OUD Receive Treatment Year Round (Kessler Report § IV.C)[1] | $196,129,180 | $248,468,857 | $444,598,037 | 69% |
| [D] | [C] + Correct Professor Alexander's Overstatement of the Number of Heroin Users (Kessler Report § IV.D) | $194,642,125 | $246,934,565 | $441,576,690 | 69% |
| [E] | [D] + Correct Professor Alexander's Mathematical Error (Kessler Report § IV.E) | $194,642,125 | $244,626,143 | $439,268,268 | 69% |
| | **Excluding Some Spending Already Covered by Existing Sources** | | | | |
| [F] | [E] + Exclude Costs of OUD Treatment for Insured People Already Receiving Treatment (Kessler Report § V.A) | $165,482,099 | $214,383,531 | $379,865,630 | 59% |
| [G] | [F] + Exclude Costs of Medical Care for Complications Attributable to OUD for Insured People (Kessler Report § V.B) | $164,441,161 | $213,309,527 | $377,750,687 | 59% |
| [H] | [G] + Exclude Costs of Other Opioid-Related Medical Care for Insured People (Kessler Report § V.C) | $157,462,091 | $208,721,390 | $366,183,481 | 57% |

Source:  Production for Expert Report of G. Caleb Alexander filed April 16, 2021;  Corrected Expert Report of Harvey S. Rosen and John F. Burke filed April 22, 2022; TEDS

Note:
[1] Professor Rosen's assumptions of treatment length were corrected to match the average length of stay for those who began OUD treatment in the state of Ohio, according to TEDS data.