**EXHIBIT 1**

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO  44114.1190

TELEPHONE: +1.216.586.3939 • JONESDAY.COM

Direct Number:  (216) 586-7507
CMMCLAUGHLIN@JONESDAY.COM

JP005629                                         May 13, 2022
415406.999005

**VIA EMAIL**

Special Master David Cohen
24400 Chagrin Blvd., Suite 300
Cleveland, Ohio 44122

                Re:      Track 7 – Montgomery County Discovery Disputes

Dear Special Master Cohen:

        I write on behalf of the Pharmacy Defendants ("Defendants") in Track 7 to bring certain
issues regarding Plaintiff Montgomery County's ("Plaintiff") discovery responses to your
attention and to seek your assistance in resolving these matters.  Despite Defendants' repeated
efforts to engage with Plaintiff on these issues, numerous disputes remain.  The interrogatories
and requests for production on which the parties have reached an impasse and for which we seek
your assistance at this time are listed below.

## Background and Procedural History

        Defendants have diligently sought discoverable information from Montgomery County
for the past seven months.  Yet, Plaintiff's pattern and practice of ignoring or refusing to answer
simple questions posed by Defendants is one of the reasons this letter became necessary.
Defendants suspect that many of the disputes addressed in this letter could have been resolved if
Plaintiff simply provided direct answers to a few basic questions.  Unfortunately, as explained
below, Plaintiff has repeatedly declined to do so.

        On September 20, 2021, Plaintiff served its objections and responses to Defendants' first
sets of interrogatories and documents requests.  (Ex. 1.)  Plaintiff served its objections and
responses to Defendants' second set of interrogatories on November 15, 2021.  (Ex. 2.)

        On November 24, 2021, Defendants sent Plaintiff a letter outlining deficiencies in its
responses to Defendants' first sets of interrogatories and document requests.  (Ex. 3.)
Defendants requested a written response by December 3, 2021, and invited a meet and confer to
discuss the disputed issues.  Plaintiff did not respond.  Defendants followed up by email on
December 7, 2021, inquiring when Plaintiff's response would be forthcoming.  (Ex. 4.)  Once
again, Plaintiff did not respond.  Ten days later, on December 17, 2021, Defendants sent another
email to Plaintiff asking that a written response be provided by December 22, 2021, so that a

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Special Master Cohen
May 13, 2022
Page 2

meet and confer could be scheduled.  (Ex. 5.)  On December 21, 2021, Plaintiff's counsel responded that Plaintiff was not in a position to provide a substantive response due to "holiday schedules," and indicated that Plaintiff "will aim to send a response letter next week."  (*Id.*) Plaintiff did not send a response letter the following week.

At that point, Defendants sought your assistance and you ordered Plaintiff to provide a written response to Defendants' November 24 letter by January 14, 2022.  (Ex. 6.)  In the meantime, on January 13, 2022, Defendants sent another letter to Plaintiff outlining deficiencies in its responses to Defendants' second set of interrogatories.  (Ex. 7.)

Pursuant to your order, on January 14, 2022, Plaintiff finally provided a written response to Defendants' November 24 letter.  (Ex. 8.)  That response, however, failed to substantially address the concerns raised by Defendants.  Indeed, one week later on January 21, 2022, Plaintiff served supplemental discovery responses.  (Ex. 9.)  But, although Defendants had raised problems with Plaintiff's responses to twenty interrogatories and thirteen document requests, Plaintiff supplemented only three of its interrogatory responses and none of its responses to Defendants' document requests.

Consequently, on February 22, 2022, Defendants sent another letter once again outlining the outstanding deficiencies in Plaintiff's discovery responses and requesting a meet and confer. (Ex. 10.)  The parties met and conferred on March 2, 2022.  At that time, Plaintiff's counsel was not willing to discuss all of the issues that remained outstanding.  In fact, the parties were not able to finish discussing the responses that Plaintiff was willing to address because of the limited availability that Plaintiff's counsel had that day.

So, the parties agreed to schedule a follow-up meet and confer.  In the meantime, Plaintiff agreed to provide supplemental responses to a number of Defendants' interrogatories and document requests.  On March 8, 2022, Defendants inquired when they could expect to receive Plaintiff's supplemental responses and when Plaintiff was available for a follow-up meet and confer to discuss the issues that were not addressed during the prior call.  (Ex. 11.)  The next day, Plaintiff responded that, while Montgomery County intended to supplement its interrogatory responses, it "will likely do that on a rolling basis as we continue to evaluate your request" and Plaintiff indicated that it planned to "send a supplement next week."  (*Id.*)  Plaintiff also suggested that the parties schedule a meet and confer call either the following Thursday (March 17) or Friday (March 18).  (*Id.*)  Defendants confirmed they were available on March 18 at the time Plaintiff proposed.  (*Id.*)

Unfortunately, Plaintiff did not provide the supplemental responses it agreed to provide during the week of March 14.  Plaintiff's counsel also informed Defendants that week that they no longer were available to meet and confer on March 18—*i.e.*, the date and time Plaintiff's

JONES DAY

Special Master Cohen
May 13, 2022
Page 3

counsel proposed—but that they were available the following Wednesday (March 23). (*Id.*) As a result, on March 18, 2022, Defendants sent an email to Plaintiff expressing concerns about this pattern of delay and the importance of completing the meet and confer process in an effort to resolve or at least narrow the outstanding discovery disputes. (*Id.*)

Ultimately, the parties met and conferred on March 23, 2022. Plaintiff finally provided the supplemental responses it had been promising for weeks, but it did not do so until a couple of hours before the scheduled meet and confer call, leaving Defendants little time to review them in advance of the call. (Ex. 12.)[1] Once again, Plaintiff's counsel ended the call prematurely before the parties had an opportunity to discuss all of the issues that remained in dispute.

Defendants were forced yet again to try to schedule another follow-up meet and confer. The parties agreed to speak again on March 30, 2022. That morning, however, Plaintiff's counsel cancelled the call, indicating that they would not speak with Defendants again until Defendants identified whether any disputed issues were "moot" in light of Plaintiff's March 23 supplemental discovery responses. (Ex. 11.)

Over the next 24 hours, Defendants sent Plaintiff multiple emails laying out the issues on which the parties had reached an impasse, the issues that remained in dispute, and the issues the parties still needed to discuss because they had not been addressed in prior meet and confer calls. (*Id.*) Defendants also attempted to obtain clarity on a number of items from Plaintiff, all in an effort to narrow the issues in dispute. For example, on the March 23 meet and confer call, Plaintiff's counsel stated that Montgomery County did not possess documents responsive to certain document requests (even though its written responses suggest otherwise); that Montgomery County did not possess additional documents responsive to other document requests beyond those specifically identified in its supplemental responses (even though its written responses suggest otherwise); and that Montgomery County does not possess information responsive to certain interrogatories (even though its written responses suggest otherwise). Defendants asked Plaintiff to confirm those statements in writing so those issues could be put to bed. Plaintiff did not respond.

The parties had a final meet and confer call on March 31, 2022. The issues presented below are those on which the parties have reached an impasse.[2]

---

[1] Unless otherwise indicated below, all references to Plaintiff's responses refer to Plaintiff's supplemental responses found in Exhibit 12.

[2] The parties continue to meet and confer regarding Plaintiff's responses to certain discovery requests, including RFP Nos. 5 and 27, and will raise any disputes regarding those requests if necessary to the extent they cannot be resolved by the parties in the near term.

Special Master Cohen
May 13, 2022
Page 4


<u>**Interrogatories**</u>


***Interrogatory Nos. 1 and 11 (First Set).***  These interrogatories asked Plaintiff to identify "each prescription for a Prescription Opioid or Cocktail Medication that you contend was diverted" or "should not have been dispensed because it was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice" in Montgomery County.[3]  Plaintiff responded with a litany of objections, ultimately stating that it "intends to show that a significant number of prescriptions filled by Defendants were diverted" and that it reserves the right to "supplement" its responses and "identify additional prescriptions, including through expert discovery."  To date, however, Plaintiff has not identified even a single prescription dispensed by Defendants that it believes was diverted or that it believes should not have been dispensed because it was not written for a legitimate medical purpose.

Instead, Plaintiff merely cited to Plaintiff Montgomery County's Supplemental and Amended Allegations to be Added to Short Form for Supplementing Complaint and Amending Defendants and Jury Demand ("Supplemental Pleading") filed on May 19, 2021 (Dkt. No. 3772) and to its submission under "Section D.2 of the CMO" (*i.e.*, Plaintiff's "Red Flagged" prescription analysis) and then listed the names of a handful of prescribers "who were prosecuted, or the subject of disciplinary actions for their illegal or improper prescribing of opioids."  The Supplemental Pleading makes plain that the information requested in these interrogatories is central to Plaintiff's claim,[4] but it does not provide an answer to these interrogatories.  Nor is Plaintiff's citation to its red flag submission an appropriate response.  The CMO required Plaintiff to identify what it considers to be "Red Flagged" prescriptions, but Plaintiff's submission says nothing about diversion or whether such prescriptions were or were not issued for a legitimate medical purpose, which is the subject of these interrogatories.  And

---

[3] Among the positions Plaintiff asserts in its objections are: (a) that it is "not obligated to provide individualized proof of diversion to establish its public nuisance claim"; and (b) that "Plaintiff is not claiming any damages on behalf of an individual or group of individuals who were harmed by Defendants' conduct and the public nuisance claim does not require a showing that any third-party individuals were harmed."  (Ex. 12.)  Defendants note these positions because Plaintiff should be held to its commitments that it will neither offer individualized proof of diversion nor claim that its abatement relief should account for services for specific "third-party individuals [who] were harmed" as a result of any Defendant's conduct.

[4] The term "diversion" appears over 300 times in Plaintiff's Supplemental Pleading.  The terms "divert" or "diverted" appear approximately 50 more times.  The term "legitimate medical purpose" and similar variations of it also appear nearly 50 times.  Indeed, Plaintiff specifically alleges that each Defendant engaged in misconduct by failing to "prevent diversion" and "by filling prescriptions in volumes, doses, or combinations that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose."  (Dkt. No. 3772 ¶¶ 234, 242, 327, 340, 356, 399, 418, 431, 461, 474, 476, 486.)  Plaintiff also alleges that Defendants' pharmacists failed to comply with their "corresponding responsibility" under 21 C.F.R. § 1306.04(a), which requires that prescriptions "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  (*See id.* ¶ 119.)

JONES DAY

Special Master Cohen
May 13, 2022
Page 5

listing the names of prescribers alone does not identify the requested information either. Consequently, in their February 22, 2022 letter to Plaintiff, Defendants sought clarification as to whether Plaintiff contends that every red flagged prescription identified by it was diverted or was not written for a legitimate medical purpose. (Ex. 10.) Plaintiff failed to provide the requested clarification.

Plaintiff's refusal to directly answer these interrogatories is improper and is hampering Defendants' ability to prepare their defenses. It also is contrary to your ruling on virtually identical issues in Track 3, in which you ordered Lake County and Trumbull County to provide written responses identifying:

- "Prescription Opioids dispensed by Pharmacy Defendants that (Trumbull/Lake) County contends were diverted."

- "Opioid prescriptions filled by Pharmacy Defendants that (Trumbull/Lake) County contends were not issued for a legitimate medical purpose or were not issued by an individual practitioner acting in the usual courses of his or her professional practice."

(Ex. 13.) As you observed then, the plaintiffs in Track 3 may "expect additional information to be provided by their experts, but Plaintiffs must answer the questions by supplying as completely as reasonably possible the responsive information/knowledge they have." The same reasoning applies here. Montgomery County should be ordered to provide any responsive information or knowledge it has without further delay.

*Interrogatory No. 3 (First Set).* This interrogatory asked Plaintiff to "[i]dentify each pharmacy or pharmacist employee that has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the pharmacy's or pharmacist employee's dispensing of Prescription Opioids or Cocktail Medications." Plaintiff responded by indicating that it would produce responsive documents pursuant to Rule 33(d), which it apparently never did.[5] In fact, contrary to its written response, on the March 23 meet and confer call Plaintiff's counsel stated that Montgomery County is not aware of any responsive information in its possession. Thus, on March 30, 2022, Defendants requested written confirmation that Plaintiff does not possess information responsive to this interrogatory. (Ex. 11.) Plaintiff ignored this request.

Defendants should not be left with the ambiguity created by Plaintiff's written response and the subsequent inconsistent statement of its counsel. Defendants are entitled to a clear

---

[5] As with many of Plaintiff's responses, its mere reference to Rule 33(d) without specifying any records from which the answer to this interrogatory could be derived was inappropriate. That issue is addressed below.

JONES DAY

Special Master Cohen
May 13, 2022
Page 6

response to this interrogatory.  Plaintiff either possesses responsive information—in which case Plaintiff should be ordered to provide it—or it does not—in which case Plaintiff should be ordered to confirm as much in writing.

*Interrogatory Nos. 5 and 12 (First Set).*  Interrogatory No. 5 asked Plaintiff to "[i]dentify all false, fraudulent, and/or misleading information that You allege that any National Retail Pharmacy supplied to You" or any other person "about Suspicious Orders and/or Prescription Opioids."  Interrogatory No. 12 asked Plaintiff to "[i]dentify each instance during the Relevant Time Period in which You . . . communicated with any pharmacy including any National Retail Pharmacy about diversion of Prescription Opioids or Cocktail Medications, actual or suspected Suspicious Orders of Prescription Opioids, or unlawful or excessive prescribing or dispensing of Prescription Opioids during the Relevant Time Period."  Plaintiff initially responded with general citations to Rule 33(d).  It later provided supplemental responses identifying "exemplar" or "examples" of purportedly responsive documents but reserved the right to identify additional materials.

On March 30, 2022, Defendants requested confirmation that the documents Plaintiff identified are the only responsive documents it is aware of at this time.  (Ex. 11.)  Plaintiff did not respond.  As a result, Defendants have no way of knowing whether Plaintiff is withholding other responsive information it currently has knowledge of or not.  Plaintiff should be ordered to clarify its responses.

*Interrogatory No. 15 (First Set).*  This interrogatory asked Plaintiff to "[i]dentify each instance in which a Person in the Geographic Area and during the Relevant Time Period forged or otherwise improperly altered any prescription for any Prescription Opioid or Cocktail Medication or sought to obtain any Prescription Opioid or Cocktail Medication through a forged or otherwise improper prescription."  Plaintiff initially responded with a general citation to Rule 33(d).  It later provided a supplemental response identifying a spreadsheet containing extracts of incident reports from two databases used by the Montgomery County Sheriff's Office.[6]

The problem, however, is that the spreadsheet Plaintiff provided categorizes drug-related incidents by general reference to sections of the Ohio Revised Code.  In most instances, the specific drug involved is not identified and—particularly with respect to extracts from the Tiburon database—there is no way to determine whether an incident involved prescription drugs (as opposed to other drugs), let alone forgery or alteration of a prescription.  To be clear, Montgomery County confirmed that it possesses underlying incident reports containing sufficient detail to identify instances in which the Sheriff's Office investigated crimes involving

---

[6] The spreadsheet reflects extracts from two law enforcement databases.  The newer one, "Motorola," includes 2,909 incidents.  The older one, "Tiburon," includes 17,805 incidents.  The Motorola database was implemented in 2015.

JONES DAY

Special Master Cohen
May 13, 2022
Page 7

prescription forgery or alteration.  Plaintiff simply will not produce them.  If Plaintiff wishes to rely on Rule 33(d) instead of providing a narrative response to this interrogatory, it should be ordered to produce those underlying incident reports.  Otherwise, Plaintiff should be ordered to supplement its answer to provide an appropriate narrative response.

 *Interrogatory No. 16 (First Set).*  This interrogatory asked Plaintiff to "[i]dentify all Healthcare Providers that You allege wrote a prescription for Prescription Opioids that was not medically necessary during the Relevant Time Period that were filled at a pharmacy in the Geographic Area."  Plaintiff refused to provide a substantive response, primarily on the asserted basis that proof of "whether or not particular prescriptions were 'medically necessary' or whether particular providers wrote prescriptions that were not 'medically necessary'" is not needed to establish Plaintiff's claims—a contention with which Defendants disagree.  Regardless, this interrogatory did not ask what evidence Plaintiff believes is or is not necessary to prove its claims.  Rather, it asked Plaintiff to identify any prescribers during a certain time period who wrote a prescription for an opioid medication that was not medically necessary and that was filled at a pharmacy in Montgomery County—information that plainly is relevant to Defendants' defenses in this case.  If Plaintiff can identify any such information, it should be ordered to do so.  If Plaintiff is unable to identify any such information, it should simply say so.

 *Interrogatory No. 5 (Second Set).*  This interrogatory focused on a specific statement in Plaintiff's red flagged submission, in which Plaintiff identified certain prescriptions "written by prescribers regarding whom Defendants had or should have had actual or constructive notice were engaged in activity indicative of possible or actual diversion and/or were written by prescribers who issued the prescription without a legitimate medical purpose or outside the usual course of professional practice and/or were not authorized to issue controlled substance prescriptions."  Defendants asked Plaintiff to describe how it identified those prescribers and what facts its claims should have provided "actual or constructive notice" to Defendants that those prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions."

 Plaintiff's response included only examples of information that Plaintiff submits should have put Defendants on notice of the activities of these prescribers.  It did not, however, include the requested information about what Plaintiff used to identify these prescribers in the first place and how.  Plaintiff should be ordered to supplement its response to provide that information.

 *Interrogatory No. 6 (Second Set).*  This interrogatory asked Plaintiff to "[s]tate whether or not You believe that the 115 prescribers identified in Your Red Flag Submission contributed to the alleged public nuisance that You claim exists."  Plaintiff initially responded by listing only Defendants (along with drug manufacturers and distributors generally) and claiming that

JONES DAY

Special Master Cohen
May 13, 2022
Page 8

"[w]hether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability."  Plaintiff supplemented its response to this interrogatory for the first time on January 21, 2022.  In that supplemental response, Plaintiff stated "that certain prescribers contributed to the opioid epidemic in Montgomery County, Ohio."  (Ex. 9.)  But two months later, when Plaintiff supplemented its interrogatory responses again, it removed that statement thereby changing its prior sworn answer.

On March 31, 2022, Defendants sent an email to Plaintiff asking, among other things, whether the exclusion of that statement was "inadvertent or intentional."  (Ex. 11.)  Again, Plaintiff ignored Defendants' question.  Plainly, Plaintiff believes that "certain prescribers" contributed to the opioid epidemic in Montgomery County.  If Plaintiff is unable or unwilling to state unequivocally that the 115 prescribers it identified were part of the problem then, at the very least, Plaintiff should be ordered to identify the "certain prescribers" it believes contributed to the opioid epidemic in Montgomery County.

***Interrogatory No. 19 (First Set); Interrogatory Nos. 7, 10, 11, and 12 (Second Set).***
Plaintiff answered each of these interrogatories with the same stock response, agreeing to "produce non-privileged documents maintained in the ordinary course of business and that could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d)."  These responses are improper.  If Plaintiff wishes to rely on the option to produce business records rather than provide a narrative response to these interrogatories, it must specify which records contain the responsive information and make those records available to Defendants for review without further delay.  *See* FED. R. CIV. P. 33(d)(1)-(2).  It is not sufficient for Plaintiff to put off its substantive responses by referring to some vague production tied to "agreed upon search terms on agreed custodians."

While Defendants do not dispute that there is an option to produce business records in response to an interrogatory "if the answer . . . may be determined by examining" those documents and "the burden of . . . ascertaining the answer will be substantially the same for either party," Defendants do dispute that Plaintiff has properly utilized the option available to it under Rule 33(d).  To the contrary, Plaintiff has abused this option.

Instead of identifying the documents from which answers to these interrogatories can be derived as the rule requires, *see* FED. R. CIV. P. 33(d)(1)-(2), Plaintiff chose a tactic that wholly avoids providing substantive responses by referring to the *entirety* of its productions tied to "agreed upon search terms on agreed custodians."  This provides no information about the specific records that must be reviewed to obtain the information sought.  Plaintiff's response is improper and tantamount to no response at all.

JONES DAY

Special Master Cohen
May 13, 2022
Page 9

In prior correspondence, Plaintiff queried whether Defendants were taking the position that the County must identify documents by Bates Numbers.  While that would be one way to comply with the requirements of the rule, Defendants merely insist that Plaintiff either provide an appropriate narrative response or "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  FED. R. CIV. P. 33(d)(1).  Thus far, Plaintiff has done neither.

A similar issue arose in Track 3.  In that instance you ruled that, at the very least, plaintiffs must provide enough information to allow defendants to more easily locate responsive records.  (*See* Ex. 14 at 10, 49-50.)  The bottom line is that, whether Plaintiff provides Bates numbers or identifies the records that must be reviewed in some other way, it must somehow specify the records from which the answers to these interrogatories can be derived to comply with Rule 33(d).  It has not done so and it should be ordered to do so without further delay.

### Document Requests

*RFP Nos. 3 and 4.*  Request No. 3 seeks "[a]ll Documents reflecting or relating to any pharmacy or pharmacist's cooperation, assistance, and/or participation in any inspection, audit, investigation, or enforcement action (including enforcement actions related to fines, suspensions, revocations, and letters or other formal warnings or notices) against any pharmacy, pharmacist, doctor or other prescriber, or individual relating to the distribution, dispensing, failure to dispense, diversion, or misuse of Prescription Opioids or Cocktail Medications."  Request No. 4 seeks "[i]nvestigation files for any physician, healthcare provider, pharmacy, or pharmacist employee who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the physician's or provider's prescribing or dispensing of Prescription Opioids or Cocktail Medications."

Plaintiff provided an identical response to each request, stating:  "Plaintiff responds that this information does not reside within the County Sheriff's office.  Rather, non-sheriff task forces would handle this and related documents are with those task forces.  If Defendants believe their employees or former employees have engaged in such cooperation, please provide the name and time-frame, and the County will prioritize a search.  The County has also been conducting a reasonably diligent search for non-privileged documents from the custodial and non-custodial sources referenced in the Parties' prior correspondence."  Although this response suggests that Plaintiff was still searching for responsive documents, on the parties' March 23 meet and confer call, Plaintiff's counsel stated that Montgomery County does not possess responsive documents, except what may be referenced in the law enforcement database extracts mentioned above and the incident reports underlying those extracts (which Plaintiff still has not produced and the parties continue to meet and confer on).

JONES DAY

Special Master Cohen
May 13, 2022
Page 10

On March 30, 2022, Defendants requested written confirmation that Plaintiff does not possess any responsive documents other than what may be referenced in the database extracts and the files underlying those extracts.  (Ex. 11.)  Plaintiff ignored this request.

Defendants are entitled to a clear response to these requests, not the ambiguity created by Plaintiff's written response and the subsequent inconsistent statement of its counsel.  Plaintiff should be ordered to produce any responsive documents it does have and supplement its responses to clarify its position.

***RFP Nos. 11, 15, 17, and 18.***  Each of these requests seeks documents that Plaintiff maintains or holds in its possession regarding certain topics at issue in this case related to Prescription Opioids.  Plaintiff responded to each of these requests either by stating that responsive documents are in the possession of "state or federal authorities" or by referring Defendants to "their own files and documents produced in discovery"; for Request Nos. 11, 17, and 18, Plaintiff went further and stated it "has also been conducting a reasonably diligent search" for responsive documents in its possession.  Nonetheless, during the March 23 meet and confer call Plaintiff's counsel stated that Montgomery County does not possess any documents responsive to any of these requests.  Thus, on March 30, 2022, Defendants asked for written confirmation that Plaintiff does not possess any documents responsive to these requests.  Once again, Plaintiff did not respond to this request.

Again, Defendants are entitled to a clear response to these requests.  If Plaintiff does not possess responsive documents, that is fine.  Defendants simply ask that Plaintiff be ordered to clarify its responses to state as much.

\*          \*          \*

For the foregoing reasons, Defendants respectfully ask that Montgomery County be ordered to supplement or clarify its responses to the document requests and interrogatories identified in this letter as requested above.

Very truly yours,

*/s/ Christopher M. McLaughlin*

Christopher M. McLaughlin

Enclosures

cc:     MDL Track 7 Defendants' counsel
        MDL Track 7 Plaintiff's counsel