# GROUP EXHIBIT 2

# EXHIBIT 2.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:
Case No. 1:18-op-46326-DAP

THE MONTGOMERY COUNTY BOARD OF
COUNTY COMMISSIONERS and THE STATE
OF OHIO *EX REL.* MATHIAS H. HECK, JR.,
PROSECUTING ATTORNEY,

                 Plaintiff,

vs.

CARDINAL HEALTH, INC. et al.,

                 Defendants.

MDL No. 2804

Case No. 17-md-2804

Judge Dan Aaron Polster

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO THE
PHARMACY DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as the local rules and orders

of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County")

hereby responds to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies")

First Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as

follows:

## OBJECTIONS

The following objections apply to each Interrogatory. To the extent that certain specific

objections are cited in response to an individual Interrogatory, those specific objections are

1

provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.    Plaintiff objects to each Interrogatory to the extent it is overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this MDL or the Local Rules of the United States District Court of the Northern District of Ohio.

2.    These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein. All such objections and the grounds therefore are hereby reserved.

3.    No admission of any nature whatsoever is to be implied or inferred in these responses. The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

4.    Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet received adequate discovery from Defendants. As a result, Plaintiff has not completed its investigation of the facts relating to this action and have not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

5.    Plaintiff objects to each Interrogatory to the extent it purports to require Plaintiff to produce documents that are in the public domain or otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff.

2

6.    Plaintiff objects to each Interrogatory to the extent it seeks information more appropriately obtained through other methods of discovery.

7.    Plaintiff objects to each Interrogatory to the extent that it seeks  information that is privileged or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

8.    Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

9.    Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control" and which constitute the records of, or that belong to, the County or its departments.

10.    Plaintiff objects to each Interrogatory to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

11.    Plaintiff objects to each Interrogatory to the extent it seeks information that is not information belonging to the County within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff. Plaintiff's responses may reference documents and/or information provided by other parties in this MDL. Plaintiff's reference to such documents is not

3

intended to signify that Plaintiff maintains possession, custody, or control of these documents or that they belong to the County.

12.     Plaintiff objects to each Interrogatory to the extent it prematurely seeks expert opinion(s). All expert opinions will be disclosed on the dates set forth in the Case Management Order.

13.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

14.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that it seeks  discovery that is not relevant to any party's claims or defenses.

15.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they are overly burdensome and not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Plaintiff objects to these Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, because they seek discovery that is not relevant to a claim or defense or proportional to the needs of the case.

17. Plaintiff objects to these Interrogatories to the extent they seek protected health information.

18.     Plaintiff objects to these Interrogatories to the extent that they include multiple subparts. Plaintiff further objects to these Interrogatories on the grounds that they are individually

4

and collectively overbroad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of the case. To the extent that Plaintiff agrees to respond to these Interrogatories, Plaintiff is agreeing to produce only the information it identifies in its Response.

19.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they seek information that: (a) is in Defendants' possession, custody, or control; (b) is equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; (d) is not reasonably accessible to Plaintiff; and/or € is publicly available to Defendants. With regard to any Response that Plaintiff provides, Plaintiff's Response will be limited to relevant, responsive, and non-privileged information in its possession, custody, or control of, and belonging to, the County located after a reasonable search that is proportional to the needs of the case.

20.     Plaintiff objects to these Interrogatories to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

21.     Plaintiff objects to these Interrogatories, and to the Interrogatories' Definitions and Instructions, to the extent that any Interrogatory, Definition, or Instruction: (a) is unduly burdensome, oppressive, overbroad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Plaintiff to draw a legal conclusion in order to respond.

22.     Plaintiff objects to the Interrogatories that purport to require that Plaintiff provide discovery with regard to "any," "each," "every," "all," or similar all-encompassing wording, on the grounds that such Interrogatories are overly broad, unduly burdensome, seek discovery that is

not relevant to any party's claims or defenses, not proportional to the needs of the case, and beyond the scope of permissible discovery, particularly at this stage of the proceeding.

23. Plaintiff objects to the Interrogatories to the extent that they seek premature expert discovery or disclosure of expert opinions and go beyond the scope of permissible expert discovery under the Discovery Rules. Plaintiff will provide expert discovery and disclosures in compliance with the Discovery Rules but assumes no further obligation.

24. Plaintiff's investigation and discovery are ongoing as to all matters referred to in these Objections and Responses to Defendants' Interrogatories. Plaintiff's Responses are based upon information that has been collected and reviewed to date for the purpose of responding to these Interrogatories, and they are not prepared from the personal knowledge of any single individual. Plaintiff reserves the right to amend and supplement these Responses as discovery and this litigation proceed.

25. Responding to these Interrogatories does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD- 2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible.

26.     Plaintiff objects to these Interrogatories to the extent they seek to compel individual proof, or to compel Plaintiff to use any particular method of proof, at trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiff objects to the Definitions of "Plaintiff" and "You" on the grounds that they are overly broad, vague, and seek to extend the requests beyond the Plaintiff entities that are named as Plaintiff and represented by the Prosecutor's Office in this litigation. For purposes of its Responses, Plaintiff will consider "Plaintiff" and "You" to mean the  County  and will respond with regard to information and documents that are records of, or belong to, the County or its departments.

2.     Plaintiff objects to the Definitions of "Document" and "Communication" to the extent that it seeks to impose obligations on Plaintiff beyond those imposed by the Discovery Rules. Plaintiff will respond in accordance with the applicable Discovery Rules and assumes no further obligation.

3.     Plaintiff objects to the Definition of "related to" or "relating to" to the extent that the Definition goes beyond common usage of the term, results in Interrogatories that are overbroad, vague, ambiguous, and unduly burdensome and, using Defendants' Definition of "related to" or "relating to," seeks discovery that is not relevant to any party's claims or defenses, nor proportional to the needs of the case, purports to impose obligations or burdens on Plaintiff that go beyond the Discovery Rules, and makes demands for information and documents that are not in Plaintiff's possession, custody, or control or records that belong to the County. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to an Interrogatory not otherwise stated in the actual Interrogatory and creates a compound Interrogatory. Plaintiff will respond to the Interrogatory as propounded, subject to its Objections, and does not agree to respond with regard

7

to additional requirements or questions that Plaintiff purports to impose through their Definition of "related to" or "relating to."

4.      Plaintiff objects to the Definition of "Relevant Time Period" to the extent it seeks to impose obligations on the Plaintiff beyond those outlined in *Discovery Ruling 3* (Doc #: 762) (Filed: 07/1//18).  Plaintiff will respond in accordance with *Discovery Ruling 3* and assumes no further obligation.

5.      Plaintiff objects to Definitions 1 through 21 and Instructions 1 through 7 on the grounds that they are overly burdensome and seek to impose obligations or burdens on Plaintiff that go beyond those imposed by the Discovery Rules. Plaintiff will comply with the Discovery Rules.

## **NON-WAIVER**

1.      Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.      If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.      Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to

supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 1:**

Identify each prescription for a Prescription Opioid or Cocktail Medication that you contend was diverted.

**Response to Interrogatory No. 1:**

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible.

Plaintiff is not obligated to provide individualized proof of diversion to establish its public nuisance claim.

In addition to its General Objections, Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, in that it seeks "to identify each prescription."  The burden is totally disproportional to the needs of the case.

9

Plaintiff objects to this Interrogatory as calling for premature disclosure of expert opinion. Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the CMO in this case and the Federal Rules of Civil Procedure.

Plaintiff further objects to this Interrogatory because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff. Plaintiff is not claiming any damages on behalf an individual or group of individuals who were harmed by Defendants' conduct and the public nuisance claim does not require a showing that any third-party individuals were harmed.

Additionally, Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26.

Subject to and without waiving its objections, Plaintiff refers Defendants to the supplemental pleading served May 19, 2021 and notes that Plaintiff will comply with Section D.2 of the CMO in this case. Plaintiff intends to show that significant numbers of prescriptions filled by Defendants were diverted, but is not obligated to identify, or even to know, each and every such prescription; indeed it is not possible to know every prescription that was diverted. Subject to the objections and limitations described above, Plaintiff also provides the following list of health care providers who were prosecuted, or the subject of disciplinary actions for their illegal or improper prescribing of opioids, as follows:

- David Kirkwood
- James Bressi

- Maged Fouad
- Adolph Harper, Jr.
- Brian Heim
- Juan Hernandez
- Tony Lababidi
- Lorenzo Lalli
- Frank Lazzerini
- Jermone Yokiel
- Guang Yang
- Christopher Stegawski
- Ronald Celeste
- Syed Jawed Akhtar-Zaidi
- Charles Njoku
- Michael P. Tricaso
- Gregory Gerber
- Gregory Ingram

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 2 :**

Identify each instance in which You contend a pharmacy (including but not limited to a National Retail Pharmacy) knowingly allowed diversion of Prescription Opioids or Cocktail Medications to occur and the details You have regarding each such instance.

**Response to Interrogatory No. 2:**

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am.*, Inc., 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No.

1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible and Plaintiff is not obligated to provide individual proof.

The burden is totally disproportional to the needs of the case.

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery.  *See* F.R.C.P. 26.

Plaintiff further objects to this Interrogatory as irrelevant.  Defendants misconstrue the claim and ignore that the Court has already held, for example, that a pharmacy may not fill a prescription that it knows or has reason to know is invalid and may not remain deliberately ignorant or willfully blind to the prescription information it has, including computerized reports it maintains. Employment of a pharmacist does not relieve a pharmacy or pharmacy owner of the obligation to ensure that only valid prescriptions are filled.[1]  Plaintiff also objects to Defendants' reference to "knowingly" "allow[ing] diversion" to occur as vague.

Plaintiff objects to the term "each instance" as overly broad and disproportionately burdensome to Plaintiff.  Plaintiff objects to this Interrogatory as calling for expert opinion that will be the subject of a fully-supported and detailed expert opinion(s)  that will be disclosed in accordance with the CMO in this case and the Federal Rules of Civil Procedure.  Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness

---

[1] Opinion and Order denying Defendants' motion to dismiss, Dkt. 3403 at 13-25; *see also Linden Med. Pharm. v. Ohio State Bd. of Pharm.*, 2001 Ohio App. LEXIS 2041, at *24 (Ohio Ct. App. 11th Dist. May 8, 2001) (explaining that the Ohio Administrative Code "places the ultimate responsibility upon the 'registrant' ... to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs" and that "licensees electing to operate a business through employees are responsible to the licensing authority for their conduct").

opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff also objects to this Interrogatory as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals.  Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Interrogatory.  Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff do not require a showing that any third-party individuals were harmed.  The burden is totally disproportional to the needs of the case.

Plaintiff also objects to this Interrogatory in that it calls for information uniquely in the Defendants' possession or control.  The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Subject to and without waiving its objections, Plaintiff refers to Defendants to the supplemental pleading served May 19, 2021 and to its response to Interrogatory No. 1.  Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 3:**

Identify each pharmacy or pharmacist employee that has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the pharmacy's or pharmacist employee's dispensing of Prescription Opioids or Cocktail Medications.

**Response to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory as overbroad, unreasonably burdensome, and not proportional to the needs of the case, including because it is not addressed to Defendants' own pharmacies and employees and seeks information that is in the public domain, equally available to

Defendants from other sources, or available through less burdensome means.  For example, information about pharmacies that faced disciplinary action from the Ohio Board of Pharmacy, including CVS and Rite Aid stores in the County, is publicly available online.  Defendants should also have records of which of their own employees faced law enforcement or other action.  Plaintiff objects to this interrogatory to the extent it seeks information covered by the law enforcement privilege.  Plaintiff further objects to this Interrogatory as also vague to the extent it references "participated in" and as to geographic scope.

Subject to and without waiving any objection, Plaintiff responds it will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments, pursuant to Federal Rule of Civil Procedure 33(d).  Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A
- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A
- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A

- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A
- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250
- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250

- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
- 472951E.90Z

## Interrogatory No. 4:

Identify all Suspicious Orders for Prescription Opioids that You allege were shipped to a pharmacy, including the Pharmacy Defendants, in the Geographic Area during the Relevant Time Period, including for each the name and location of the pharmacy that placed the order, the distributor to whom it was placed, the respective dates that it was placed and shipped, the manufacturer, name and amount of the medication that was ordered and shipped, the reason(s) why the order was suspicious, Your criteria for determining that a Prescription Opioid order is a Suspicious Order, and, for all criteria identified, any support or sources for those criteria.

## Response to Interrogatory No. 4:

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26.  Plaintiff also objects to this Interrogatory as overbroad and unduly burdensome in going beyond the scope of even a contention Interrogatory. Defendants ask the County to make allegations about suspicious orders from any pharmacy, rather than the Chain Pharmacies who are the subject of the allegations in the public nuisance claim or stores to which the Chain Pharmacies distributed.  The County "allege[s]" that *Defendants* failed to implement effective controls against diversion and shipped suspicious orders.  It is not required to make allegations about other parties.

In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure. Plaintiff objects to this interrogatory to extent it calls for an expert opinion. Plaintiff objects to this interrogatory on the grounds the

information sought is under the possession and control of the Defendants or the DEA. Plaintiff further objects to this interrogatory because the Defendants have failed to answer substantially similar discovery requests yet demand the Plaintiff do so without an adequate record and/or the benefit of expert witness testimony. Plaintiff's ability to respond is further limited by Defendants' failure to produce all information, including due diligence files, necessary to complete the requested analysis.

In a good faith effort to meet Plaintiff's discovery obligations and to comply with the Court's existing Discovery Rulings regarding substantially similar requests, and subject to and without waiving any objections or reservations of rights, Plaintiff refers Defendants to the ARCOS data and to: (a) the metrics from the decision in *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017), (b) orders flagged by Defendants' own suspicious order monitoring systems that they shipped without investigation, or due diligence clearing the suspicion and/or without reporting to DEA, and (c) orders which based on review of the data, should have alerted the pharmacy to investigate such orders for highly abused opioids, and which will be disclosed in expert discovery consistent with the deadlines in the CMO.

For the purposes of responding to this Interrogatory, Plaintiff has not attempted to identify every suspicious order, nor has Plaintiff applied every reasonable method for identifying suspicious orders, but has provided responses identifying methods and data to which those methods may be applied consistent with the Court's previous rulings, including, inter alia, Discovery Ruling 12.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court. The answer to this contention interrogatory "does not limit [Plaintiff's] experts from using different criteria to identify suspicious orders, and therefore

from concluding that there exist suspicious orders in addition to those identified [herein]." *See* Discovery Ruling No. 7, p. 6. Plaintiff further reserves the right to supplement this answer based on additional discovery, including, without limitation any disclosure by Defendants of the system(s) the Defendants designed and/or operated to detect suspicious orders using Defendants' own metrics and production of Defendants' due diligence files.

**Interrogatory No. 5:**

Identify all false, fraudulent, and/or misleading information that You allege that any National Retail Pharmacy supplied to You, the DEA, the Ohio Board of Pharmacy, and/or any other Person or entity (including the United States Department of Justice, the Federal Bureau of Investigation, a United States Attorney's Office, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, and the Ohio Board of Medicine, and any other state or local law enforcement agency) about Suspicious Orders and/or Prescription Opioids.

**Response to Interrogatory No. 5:**

Plaintiff objects to the term "fraudulent" as requiring a legal determination more appropriate for the Court.

Plaintiff also objects to this request in that it calls for documents and information uniquely in the Defendants' possession or control and/or in the possession of third parties. The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources. Plaintiff objects to this interrogatory as prematurely calling for expert report or opinion.

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the pleadings in this case and Plaintiffs' motion to dismiss oppositions in CT3 (MDL Doc. 3366).

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and that could be located following a

reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 6:**

Identify any and all forms of data that You allege pharmacies, including the Pharmacy Defendants, were required to use in order to satisfy the standard of care You claim is applicable in this case and the time period you contend that data was available and should have been used. For each form of data that You identify as required, please identify (a) the support and/or sources for the requirement that pharmacies use it in such fashion, and (b) how it was communicated to pharmacies that such use of data was required.

**Response to Interrogatory No. 6:**

Plaintiff objects to the term "standard of care" as undefined, potentially irrelevant and more appropriately the subject of expert testimony. Plaintiff objects to "all forms of data" as overly broad. Plaintiff objects to this interrogatory as requiring Plaintiff to identify data sets in the possession, custody and control of defendants or third parties.

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refer Defendants to the Complaint in this case.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving objections, Plaintiff answers that the Defendants should have used any and all data that they used for any purpose or had in their actual possession, whether they used it or not, including but not limited to all distribution data, all dispensing data, all customer data and all data involving prescribers or patients.

**Interrogatory No. 7:**

Identify any and all training that You allege pharmacies, including the Pharmacy Defendants, were required to provide in order to satisfy the standard of care You claim is applicable in this case. For each aspect of training that You identify as required, please identify (a) to whom the training was required to be provided, (b) any support and/or sources for the training requirement, and (c) how it was communicated to pharmacies that such training was required.

**Response to Interrogatory No. 7:**

Plaintiff objects to the term "standard of care" as undefined and more appropriately the subject of expert testimony, if any. Plaintiff objects to the term "training" as vague, ambiguous and undefined. Plaintiff objects on the basis this information is within the Defendants' possession and control.

Subject to and without waiving objections, Plaintiff refers Defendants to Judge Polster's SOMS A Ruling (MDL Doc. 2483) in the MDL Track One cases,  the Plaintiffs' motion to dismiss oppositions in CT3 (MDL Doc. 3366), and to the expert report of Carmen Catizone served in CT3.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement or amend this response as discovery proceeds.

**Interrogatory No. 8:**

Identify any and all policies and procedures that You allege pharmacies, including the Pharmacy Defendants, were required to put in place in order to satisfy the standard of care You claim is applicable in this Action and the years you claim each policy or procedure was required. For each policy or procedure that you identify as required, please identify (a) any support and/or sources for the requirement for such a policy or procedure, and (b) how it was communicated to pharmacies that such a policy or procedure was required.

**Response to Interrogatory No. 8:**

Plaintiff objects to this Interrogatory on the basis of the burden it attempts to create for Plaintiff beyond what is proportional to the needs of this case. Plaintiff is being asked to provide

the Pharmacy Defendants with "all policies and procedures," something squarely in Defendants' possession and control. Plaintiff objects to the term "standard of care" as undefined and more properly the subject of expert testimony, if any.

Subject to and without waiving objections, Plaintiff responds that this is a contention interrogatory more appropriately answered at the close of discovery on the dispensing claims. *See* F.R.C.P. 26. The issue of what "policies and procedures" are and were in place is the subject of Plaintiff's ongoing discovery requests of Defendants here, making this request premature. Plaintiff refers Defendants to the supplemental pleading served May 19, 2021 in this case, to the "Track Three" summary judgment briefing (MDL Doc. 3877) and motion to dismiss briefing (MDL Doc. 3366), and to the Judge Polster's SOMS A Ruling (MDL Doc. 2483).

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 9:**

Identify any and all systems and/or programs that You allege pharmacies, including the Pharmacy Defendants, were required to implement in order to satisfy the standard of care You claim is applicable in this case. For each system that You identify, please explain it in detail, including without limitation by explaining: how it works in practice; what data, if any, it uses; the extent to which it is automated, if at all; what, if any, "red flags" it identifies and whether it identifies those "red flags" retrospectively or concurrently with the filling of prescriptions; how, if at all, it applies to pharmacists or should be used by pharmacists on receipt of a prescription; how it impacts, and/or whether it limits, the exercise of professional judgment by pharmacists in determining whether to fill a prescription; whether it imposes quantity limits and, if so, how; and how, if at all, it limits dispensing.

**Response to Interrogatory No. 9:**

Plaintiff objects to the term "standard of care" as undefined, irrelevant, and more appropriately the subject of expert testimony, if any. Plaintiff objects in that the identity of "all

systems and/or programs" defendants were "required to implement" to safeguard against the proliferation of opioids are in the possession and control of the defendants.

Subject to and without waiving objections, Plaintiff responds as follows: this is a contention interrogatory more appropriately answered at the close of discovery on the dispensing claims. *See* F.R.C.P. 26. The issue of what "systems and programs" are and were in place is the subject of Plaintiff ongoing discovery requests of Defendants here, making this request premature. Plaintiff refers Defendants to the supplemental pleading served May 19, 2021 in this case, to the "Track Three" summary judgment briefing (MDL Doc. 3877) and motion to dismiss briefing (MDL Doc. 3366), and to the Judge Polster's SOMS A Ruling (MDL Doc. 2483). In addition, Plaintiff refers Defendants to the forthcoming "red flag" related information which will be served pursuant to the deadlines in the CMO.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 10:**

Identify the specific provision(s) of each governmental or industry regulation, standard, guideline, recommendation, accepted practice, or custom that You contend was applicable to the lawful distribution of Prescription Opioids by the Pharmacy Defendants during each year of the Relevant Time Period.

**Response to Interrogatory No. 10:**

Plaintiff objects to the over breadth of the term "custom" as vague and ambiguous. Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26.

Subject to and without waiving objections, Plaintiff refers Defendants to the pleadings for the provisions of law they deem "applicable to the lawful distribution of Opioids."

As set forth in the Track Three Plaintiffs' November 6, 2020 submission in connection with a request from the Court concerning proposed jury instructions, filed on the Master Docket as Doc. 3548, it is unlawful for any person knowingly to distribute or dispense controlled substances other than in accordance with the requirements of the federal Controlled Substances Act ("CSA") and its implementing regulations, or in violation of the Ohio controlled substances laws and regulations.[2]

It is unlawful to distribute or dispense controlled substances, including opioids, without providing effective controls and procedures to guard against theft and diversion under both the CSA and Ohio Controlled Substances laws.[3] The obligation to provide effective controls against diversion applies to every registrant under the CSA and Ohio law.

Under the federal and Ohio controlled substances laws, wholesale distributors, including the Defendants, have a legal duty: (1) to design and operate a system to identify suspicious orders; (2) to inform the DEA and Ohio Board of Pharmacy of suspicious orders when discovered; and (3) not to ship those orders unless investigation first shows them to be legitimate.[4]

Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.[5]

---

[2] 1 U.S.C. § 841(a); Ohio Rev. Code Ann. § 2925.03.
[3] 21 C.F.R. § 1301.71(a); Ohio Admin. Code 4729-9-05; Ohio Admin. Code 4729-9-16(L); Ohio Admin. Code 4729-9-28(I).
[4] Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, *In re: National Prescription Opiate Litig.*, 2019 WL 3917575, at *7 & 9 (N.D. Ohio Aug. 19, 2019); Ohio Admin. Code 4729-9-16(H)(1)(e); Ohio Admin. Code 4729-9-28(E).
[5] 21 C.F.R. § 1301.74(b).

In retail pharmacy stores, it is unlawful to dispense a controlled substance without a valid prescription.[6] A prescription, to be effective, must be issued for a legitimate medical purpose in the usual course of a professional practice.[7] An order purporting to be a prescription that does not meet this definition is not a "prescription" within the meaning of state and federal controlled substances laws, and it is a violation of those laws to knowingly fill such a purported prescription.[8] A pharmacy may not fill a prescription that it knows or has reason to know is invalid and may not remain deliberately ignorant or willfully blind to the prescription information it has, including computerized reports it maintains. Employment of a pharmacist does not relieve a pharmacy or pharmacy owner of the obligation to ensure that only valid prescriptions are filled.[9]

Pharmacies must "maintain systems, policies, or procedures to identify prescriptions that bear indicia ('red flags') that the prescription is invalid, or that the prescribed drugs may be diverted for illegitimate use."[10] "Dispensers of controlled substances are obligated to check for and conclusively resolve red flags of possible diversion prior to dispensing those substances."[11] Pharmacies also have an obligation under Ohio law to maintain adequate safeguards in their business to "allow[] pharmacists ... to practice pharmacy in a safe and effective manner."[12]

---

[6] 21 U.S.C.A. § 829.

[7] 21 C.F.R. § 1306.04.

[8] *Id.*

[9] Opinion and Order denying Defendants' motion to dismiss, Dkt. 3403 at 13-25; *see also Linden Med. Pharm. v. Ohio State Bd. of Pharm.*, 2001 Ohio App. LEXIS 2041, at *24 (Ohio Ct. App. 11th Dist. May 8, 2001) (explaining that the Ohio Administrative Code "places the ultimate responsibility upon the 'registrant' ... to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs" and that "licensees electing to operate a business through employees are responsible to the licensing authority for their conduct").

[10] Dkt. 3403 at 21-22 & 24-25.

[11] *Id.* at 24-25; O.R.C. § 4729.55(D).

[12] *Id.* at 20 & 24; O.R.C. § 4729.55(D).

As set forth in the Track Three Plaintiffs' prior filing, Defendants' conduct is unlawful under the Ohio and federal controlled substances laws, including the following provisions:

"Except as authorized by [the federal Controlled Substances Act ("CSA")], it shall be unlawful for any person knowingly or intentionally to . . . distribute or dispense, or possess with intent to . . . distribute or dispense, a controlled substance." **21 U.S.C. § 841(a).**

All registrants under the CSA must "provide effective controls and procedures to guard against diversion," and it is a violation of the CSA for any registrant to distribute or dispense a controlled substance without providing such controls. **21 C.F.R. § 1301.71(a)**.

Under the CSA, a distributor "shall design and operate a system to disclose to [it] suspicious orders of controlled substances." **21 C.F.R. § 1301.74(b)**.

Implicit in this requirement is an obligation to use that system to halt suspicious orders unless and until due diligence disproves the suspicion. *Id.*

Only DEA registrants may distribute or dispense controlled substances. A DEA registrant "shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant." **21 C.F.R. § 1301.74(b)**.

"Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern The CSA also prohibits dispensing a controlled substances without a prescription. 21 U.S.C.A. § 829.

"A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04. "An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829)" and "knowingly filling such a purported prescription" violates the CSA. Id.

Under Ohio law, no person shall "[s]ell or offer to sell a controlled substance" except as authorized by the Ohio controlled substances statutes and regulations. Ohio Rev. Code Ann. § 2925.03. These regulations incorporate the federal requirements described above. Specifically, "[w]holesale drug distributors shall operate in compliance with applicable federal, state, and local laws and regulations." Ohio Admin. Code 4729-9-16(L); Ohio Admin. Code 4729-9-28(I).

Under Ohio law, distributors and pharmacies must obtain a state license, or registration, in addition to the federal registration. "All licensees and registrants shall provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs." Ohio Admin. Code 4729-9-05., and orders of unusual frequency." **21 C.F.R. § 1301.74(b)**.[13]

For wholesalers, "[a] system shall be designed and operated to disclose orders for controlled substances and other dangerous drugs subject to abuse. The wholesaler shall inform the state board of pharmacy of suspicious orders for drugs when discovered. Suspicious orders are those which, in relation to the wholesaler's records as a whole, are of unusual size, unusual frequency, or deviate substantially from established buying patterns." Ohio Admin. Code 4729-9-16(H)(1)(e).

"A prescription, to be valid, must be issued for a legitimate medical purpose by an individual prescriber acting in the usual course of his/her professional practice. . . . An order purporting to be a prescription issued not in the usual course of bona fide treatment of a patient is not a prescription and the person knowingly dispensing such a purported prescription, as well as the person issuing it, shall be subject to the penalties of law." Ohio Admin. Code 4729-5-21(A).

"No license shall be issued to an applicant for licensure as a terminal distributor of dangerous drugs [which includes a pharmacy] unless the applicant has furnished satisfactory proof to the state board of pharmacy that: . . . [a]dequate safeguards are assured that the applicant will carry on the business of a terminal distributor of dangerous drugs in a manner that allows pharmacists and pharmacy interns employed by the terminal distributor to practice pharmacy in a safe and effective manner." O.R.C. § 4729.55(D).

In addition to clear legal requirements, Defendants had the benefit of ample guidance on their legal obligations, and Plaintiff has previously described the same in its pleadings in this action.

---

[13] This Supplemental Response uses the regulations in force at the time these actions were originally filed. As the Court recognized in its Opinion and Order denying Defendants' motion to dismiss, "Sections 4729-9-05(A) and 4729-9-16(H) of the Code were recently rescinded, revised, and reorganized" and provisions cited therein "now appear at §§ 4729:5-3-14 and 4729:6-3-05." Dkt. 3403 at 5 n.8.

Under the CSA, the duty to prevent diversion lies with the Chain Pharmacies, not the individual pharmacist. As such, although it acts through its agents, the pharmacy is ultimately responsible to prevent diversion, as described above.[14] Further, as described above, the obligations under the controlled-substances laws extend to any entity selling prescription opioids, whether it is the registration-holder or not. *See also* May 19, 2021 Supplemental Pleading.

The criteria set forth in 21 C.F.R. § 1301.74(b) are disjunctive and not all inclusive. For example, if an order deviates substantially from a normal pattern, the size of the order does not matter and the order should be reported as suspicious. Likewise, a distributor need not wait for a normal pattern to develop over time before determining whether a particular order is suspicious. The size of an order alone, regardless of whether it deviates from a normal pattern, is enough to trigger the responsibility to report the order as suspicious. The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer but also on the patterns of the entirety of the customer base and the patterns throughout the relevant segment of the industry. For this reason, identification of suspicious orders serves also to identify excessive volume of the controlled substance being shipped to a particular region. *See, e.g.*, May 19, 2021 Supplemental Pleading ¶ 126; *id.* ¶ 125 ("'Other indicia of potential diversion may include, for example, "[o]rdering the same controlled substance from multiple distributors."'").

---

[14] *The Medicine Shoppe; Decision and Order*, 79 FR 59504, 59515 (DEA Oct. 2, 2014) (emphasis added); *see also Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 and 5195*; Decision and Order, 77 FR 62316-01 ("When considering whether a pharmacy has violated its corresponding responsibility, the Agency considers whether the entity, not the pharmacist, can be charged with the requisite knowledge."); *Top RX Pharmacy*; Decision and Order, 78 FR 26069, 62341 (DEA Oct. 12, 2012) (same); *cf. Jones Total Health Care Pharmacy LLC and SND Health Care LLC v. Drug Enforcement Administration,* 881 F.3d 82 (11th Cir. 2018) (revoking pharmacy registration for, *inter alia,* dispensing prescriptions that prescriptions presented various red flags, i.e., indicia that the prescriptions were not issued for a legitimate medical purpose without resolving red flags).

The DEA has testified in this MDL that:

    a.   DEA registrants are required to block all suspicious orders of prescription opioids.[15]

    b.   Shipping a suspicious order is a per se violation of federal law.[16]

    c.   If a wholesale distributor blocks a suspicious order, they should terminate all future sales to that same customer until they can rule out that diversion is occurring.[17]

    d.   After the fact reporting of suspicious orders has never been in compliance with federal law.[18]

Of course, due diligence efforts must be thorough: "the investigation must dispel all red flags indicative that a customer is engaged in diversion to render the order non-suspicious and exempt it from the requirement that the distributor 'inform' the [DEA] about the order. Put another way, if, even after investigating the order, there is any remaining basis to suspect that a customer is engaged in diversion, the order must be deemed suspicious and the Agency must be informed."[19] Indeed, the DEA may revoke a distributor's certificate of registration as a vendor of controlled substances if the distributor identifies orders as suspicious and then ships them "without performing adequate due diligence."[20]

To comply with the law, wholesale distributors, including Defendants, must know their customers and the communities they serve. Each distributor must "perform due diligence on its

---

[15] *See* Prevoznik Dep. Vol II, 770:6 to 771:20, April 18, 2019 (DEA 30(b)(6) designee).

[16] *Id.* at 632:7 to 633:2.

[17] *Id.* at 628:24 to 629:15.

[18] *Id.* at 673:7 to 674:13, 679:20 to 680:8.

[19] *Masters Pharmaceuticals, Inc.*, Decision and Order, 80 Fed. Reg. 55418-01 at *55477 (DEA Sept. 15, 2015).

[20] *Masters Pharmaceuticals*, 861 F.3d at 212. The *Decision and Order* was a final order entered by the DEA revoking Masters Pharmaceutical's certificate of registration, without which Masters Pharmaceutical could not sell controlled substances. In *Masters Pharmaceutical*, the D.C. Circuit Court of Appeals denied a petition for review, leaving intact the DEA's analysis and conclusion in the *Decision and Order*.

customers" on an "ongoin customer." *Masters Pharms., Inc.*, 80 Fed. Reg. 55,418, 55,477 (DEA Sept. 15, 2015), petition for review denied, 861 F.3d 206 (D.C. Cir. 2017).

In addition to their duties as distributors, Defendants also had a duty to design and implement systems to prevent diversion of controlled substances in their retail pharmacy operations. Defendants had the ability, and the obligation, to look for these red flags on a patient, prescriber, and store level, and to refuse to fill and to report prescriptions that suggested potential diversion. Accord Mitch Betses, R.Ph., and Troyen Brennan, M.D., M.P.H., Abusive Prescribing of Controlled Substances - A Pharmacy View, N. ENGL. J. MED. 369;11, Sept. 12., 2013, at 989-991 (recognizing that "[p]harmacies have a role to play in the oversight of prescriptions for controlled substances, and opioid analgesics in particular" and that DEA has identified "both pharmaceutical distributors and chain pharmacies as part of the problem" contributing to opioid abuse and related deaths).

All suspicious conduct must be reported to relevant enforcement authorities. Further, Defendants must not fill or ship any suspicious prescription or order unless they have conducted an adequate investigation and determined that the prescription or order is not likely to be diverted into illegal channels.[21] Reasonably prudent distributors would not fall below this standard of care, and their failure to exercise appropriate controls foreseeably harms the public health and welfare.

In addition to their duties as distributors, Defendants also had a duty to design and implement systems to prevent diversion of controlled substances and to monitor and report suspicious activity in their retail pharmacy operations. Specifically, Defendants had a duty to analyze data and store-level information for known red flags such as (a) multiple prescriptions to

---

[21] *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007) (applying federal requirements no less stringent than those of Ohio); *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206 (D.C. Cir. 2017) (same).

the same patient using the same doctor; (b) multiple prescriptions by the same patient using different doctors; (c) prescriptions of unusual size and frequency for the same patient; (d) orders from out-of-state patients or prescribers; (e) an unusual or disproportionate number of prescriptions paid for in cash; (f) prescriptions paired with other drugs frequently abused with opioids, like benzodiazepines, or prescription "cocktails"; (g) volumes, doses, or combinations that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose.  May 19, 2021 Supplemental Pleading ¶ 134.

According to law and industry standards, if a pharmacy finds evidence of prescription diversion, the Board of Pharmacy and DEA must be contacted.  *Id.* ¶ 136. This is part of their "corresponding responsibility" under the controlled-substances laws.

State and federal statutes and regulations reflect a standard of conduct and care below which reasonably prudent distributors and pharmacies would not fall. Together, these laws and industry guidelines make clear that Defendants possess and are expected to possess, specialized and sophisticated knowledge, skill, information, and understanding of both the market for scheduled prescription opioids and of the risks and dangers of the diversion of prescription opioids when the supply chain is not properly controlled, as well as that Defendants have a responsibility to exercise their specialized and sophisticated knowledge, information, skill, and understanding to prevent the oversupply of prescription opioids and minimize the risk of their diversion into an illicit market. *See, e.g.*, *id.* ¶¶ 138-39.

This includes using the data and information available to Defendants at a corporate level. Defendants are obligated to collect and analyze data related to all components (DEA registrants) under central, corporate control and representative of the dispensing practices and data generated by all such DEA registrants for purposes of maintaining effective controls against diversion. Defendants

must provide a system of alerts, or instruct their pharmacists to check, and allow time to check, whether a patient is presenting prescriptions to multiple stores within the same chain.

Red flags are not also specific to the prescription being presented, as the totality of the circumstances, such as the prescriber's prescribing patters across different patients, large quantities, or "cocktails" may raise red flags. It is important to monitor the overall controlled substance volume dispensed by the pharmacy and the ratio of controlled substances to non-controlled substances that the pharmacy is dispensing. *See, e.g., United States v. Lawson*, 682 F.2d 480, 482-483 (4th Cir. 1982).

DEA has repeatedly informed Defendants about their legal obligations, including obligations that were so obvious that they simply should not have required additional clarification. As former DEA agent Joseph Rannazzisi recently explained during a deposition in this MDL:

> Q. Someone says "Don't steal," do you have to put in there "from a supermarket"?
> A. No.
> Q. Someone says "Don't trespass on the property," do you have to put "wearing tennis shoes"?
> A. No.
> Q. Next, you got asked: "Well, you never instructed the companies to keep their files." Do you remember that?
> A. Yes, sir.
> Q. Would old files be important in monitoring -- in your ongoing monitoring? Would it be important that a company keep their files so that they can look back at them?
> A: Absolutely. That's the -- the whole idea behind maintaining a due diligence file is you have a history of purchases. That way you could see what they're doing and where they're going with their purchases.[22]

For example, it is not an effective control against diversion to identify a suspicious order, ship it, and wait as long as weeks to report it to law enforcement, potentially allowing those pills to be diverted and abused in the meantime.

---

[22] Rannazzisi Dep. at 646:20-647:19.

During a 30(b)(6) deposition in this MDL, the DEA's Unit Chief of Liaison was asked whether the DEA made it "clear to industry that the failure to prevent diversion was a threat to public safety and the public interest." In response, he testified:

> Yes, I think it's established in 823 [the Controlled Substances Act] where it's part of our -- part of the registrant that is applying to be a registrant understands that they have to maintain effective controls . . . . they also know that these drugs themselves are scheduled controlled substances for a particular reason, because they're addictive, psychologically and physically they're addictive, so they know that these drugs have these properties within themselves. **So they would understand that these drugs are categorized or scheduled in that manner because they have the potential to hurt**.[23]

The requirement to report suspicious orders at the time (not after the fact) has always been clear and Defendants themselves have acknowledged as much through their various trade groups and associations. As described above, correspondence between the NWDA and the DEA, as early as 1984, illustrates that the DEA provided clear guidance well before the opioid crisis was unleashed. For example, in one letter to the NWDA, DEA Section Chief Thomas Gitchel emphasized that "the submission of a monthly printout of after-the-fact sales will not relieve a registrant from the responsibility of reporting excessive or suspicious orders," noting "**DEA has interpreted 'orders' to mean prior to shipment.**" Consistent with that understanding, the NWDA's 1984 Guidelines repeated the same directive.[24]

In addition, the DEA, for example, in April 1987, sponsored a three-day "Controlled Substances Manufacturers and Wholesalers Seminar" that was attended by "over fifty security and regulatory compliance professionals representing forty-three major pharmaceutical manufacturers

---

[23] Prevoznik Dep. Vol III at 942:3-8; 942:11-943:3 (emphasis added).
[24] CAH_MDL2804_01465723.

and wholesalers."[25] According to the executive summary of the event, Ronald Buzzeo held a session on "excessive order monitoring programs," wherein he explained:

> [A]ny system must be capable of both detecting individual orders which are suspicious, or orders which become suspicious over time due to frequency, quantity, or pattern. The NWDA system, for example, provides an excellent lookback, or trend system, but the ability to identify one time suspicious orders should not be overlooked as an element of the program." Another area at issue was whether DEA would take action against a registrant which reported an order and then shipped it. DEA pointed out that the company is still responsible under their registrations for acting in the public interest. Reporting the order does not in any way relieve the firm from the responsibility for the shipment.[26]

As set forth above, the DEA also repeatedly reminded Defendants of their obligations to report and decline to fill suspicious orders. Responding to the proliferation of internet pharmacies that arranged illicit sales of enormous volumes of opioids, the DEA began a major push to remind distributors of their obligations to prevent these kinds of abuses and educate them on how to meet these obligations. Specifically, in August 2005, the DEA's Office of Diversion Control launched the "Distributor Initiative." The Distributor Initiative did not impose any new duties on distributors, but simply reminded them of their duties under existing law. The stated purpose of the program was to "[e]ducate and inform distributors/manufacturers of their due diligence responsibilities under the CSA by discussing their Suspicious Order Monitoring System, reviewing their [Automation of Reports and Consolidated Orders System ("ARCOS")] data for sales and purchases of Schedules II and III controlled substances, and discussing national trends involving the abuse of prescription controlled substances."[27] The CSA requires that distributors (and manufacturers) report all transactions involving controlled substances to the United States Attorney General. This data is

---

[25] US-DEA-00025657.

[26] US-DEA-00025659.

[27] Thomas W. Prevoznik, Office of Diversion Control, Distributor Initiative presentation (Oct. 22, 2013), https://www.deadiversion.usdoj.gov/mtgs/distributor/conf_2013/prevoznik.pdf.

captured in ARCOS, the "automated, comprehensive drug reporting system which monitors the flow of DEA controlled substances from their point of manufacture through commercial distribution channels to point of sale or distribution at the dispensing/retail level—hospitals, retail pharmacies, practitioners, mid-level practitioners, and teaching institutions,"[28] from which certain data was recently made public.

As part of the Distributor Initiative, the DEA gave several presentations to distributors both individually and through presentations and discussions at Defendants' trade groups meetings directly targeted at some of the red flags of diversion that the Defendants were obligated to consider and monitor as part of their requirements under the law.



The DEA has hosted many different conferences throughout the years, including Pharmacy Diversion Awareness Conferences, to provide registrants with updated information about diversion trends and their regulatory obligations. The DEA also frequently presented at various other conferences for registrants at the national, state, or local level.

---

[28] U.S. Dept. of Justice, Drug Diversion Administration, Diversion Control Division website, https://www.deadiversion.usdoj.gov/arcos/index.html.

Through presentations at industry conferences and on its website, the DEA provided detailed guidance to distributors on what to look for in assessing their customers' trustworthiness. As an example, the DEA published "Suggested Questions a Distributor Should Ask Prior to Shipping Controlled Substances"[29]

In addition, the DEA sent a series of letters, beginning on September 27, 2006, to every commercial entity registered to distribute controlled substances, including chain pharmacy distributors. The 2006 letter emphasized that distributors are:

> one of the key components of the distribution chain. If the closed system is to function properly . . . distributors must be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes. This responsibility is critical, as . . . the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people.[30]

The letter also warned that "even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm."[31]

The DEA sent a second letter to distributors on December 27, 2007. Again, the letter instructed that, as registered distributors of controlled substances, they must each abide by statutory and regulatory duties to "maintain effective controls against diversion" and "design and

---

[29] U.S. Dept. of Justice DEA, Diversion Control Division website, Pharmaceutical Industry Conference (Oct 14 & 15, 2009), *Suggested Questions a Distributor should ask prior to shipping controlled substances*, Drug Enforcement Administration *available at* https://www.deadiversion.usdoj.gov/mtgs/pharm_industry/14th_pharm/levinl_ques.pdf; Richard Widup, Jr., Kathleen H. Dooley, Esq., *Pharmaceutical Production Diversion: Beyond the PDMA*, Purdue Pharma and McGuireWoods LLC, *available at* https://www.mcguirewoods.com/news-resources/publications/lifesciences/product_diversion_beyond_pdma.pdf.

[30] Letter from Joseph T. Rannazzisi, Deputy Assistant Adm'r, Off. of Diversion Control, Drug Enf't Admin., U.S. Dep't of Justice, to Cardinal Health (Sept. 27, 2006), filed in *Cardinal Health, Inc. Inc. v. Holder*, No. 1:12-cv-00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-51 ("2006 Rannazzisi Letter"); *see also* CVS-MDLT1000091513; WAGMDL00757797.

[31] *Id.*

operate a system to disclose to the registrant suspicious orders of controlled substances."[32] DEA's letter reiterated the obligation to detect, report, and not fill suspicious orders and provided detailed guidance on what constitutes a suspicious order and how to report (*e.g.*, by specifically identifying an order as suspicious, not merely transmitting ARCOS data to the DEA).

In September 2007, the NACDS, among others, also attended a DEA conference at which the DEA reminded registrants that not only were they required to report suspicious orders, but also to halt shipments of suspicious orders. Walgreens, specifically, registered for the conference.

The DEA's regulatory actions against the three largest wholesale distributors, as well as actions against Defendants themselves, further underscore the fact that distributors such as Defendants were well aware of their legal obligations. There is a long history of enforcement actions against registrants for their compliance failures, cited in Plaintiff's May 19, 2021 Supplemental Pleading. For example, in 2007, the DEA issued an Order to Show Cause and Immediate Suspension Order against three of Cardinal Health's distribution centers and on December 23, 2016, Cardinal Health agreed to pay the United States $44 million to resolve allegations that it violated the CSA in Maryland, Florida, and New York. Similarly, on May 2, 2008, McKesson entered into an Administrative Memorandum of Agreement ("AMA") with the DEA related to its failures in maintaining an adequate compliance program. Subsequently, in January 2017, McKesson entered into an Administrative Memorandum Agreement ("AMA") with the DEA wherein it agreed to pay a $150 million civil penalty for, *inter alia*, failure to identify and report suspicious orders at several of its facilities. Similarly, in 2011, the DEA took Walgreens "to the woodshed" over its dispensing

---

[32] Letter from Joseph T. Rannazzisi, Deputy Assistant Adm'r, Office of Diversion Control, Drug. Enf't Admin., U.S. Dep't of Justice, to Cardinal Health (Dec. 27, 2007), filed in Cardinal Health, Inc. v. Holder, No. 1:12-cv00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-8 ("2007 Rannazzisi Letter").

cocktail drugs and opioids to questionable out of state customers, customers with the duplicate diagnoses, young people, and customers only paying cash. Many of these same red flags were highlighted in the 2009 Walgreens Order to Show Cause and resulting 2011 Memorandum of Agreement ("MOA"). A more fulsome discussion of the various settlement agreements and enforcement actions against CVS, Walgreens, Rite Aid, Walmart, and Kroger is set forth in the May 19, 2021 Supplemental pleading as well, and familiar to Defendants. DEA actions against other pharmacies, such as the decisions cited in the footnotes to this response also has been available to Defendants.

The DEA has also repeatedly affirmed the obligations of pharmacies to maintain effective controls against diversion in regulatory action after regulatory action.[33] The DEA, among others, also has provided extensive guidance to pharmacies on how to identify suspicious orders and other evidence of diversion.

DEA has repeatedly emphasized that retail pharmacies, such as Defendants, are required to implement systems that detect and prevent diversion and must monitor for and report red flags of diversion. When red flags appear, the pharmacy's "corresponding responsibility" under 21 C.F.R. § 1306.04(a) requires it either to take steps (and document those steps) to resolve the issues or else to refuse to fill prescriptions with unresolvable red flags.[34] DEA has identified several types

---

[33] *See, e.g.*, Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 and 5195; 77 Fed. Reg. 62,316 (DEA Oct. 12, 2012) (decision and order); East Main Street Pharmacy, 75 Fed. Reg. 66,149 (DEAOct. 27, 2010) (affirmance of suspension order); Holiday CVS, L.L.C. v. Holder, 839 F.Supp.2d 145 (D.D.C. 2012); Townwood Pharmacy; 63 Fed. Reg. 8,477 (DEA Feb. 19, 1998) (revocation of registration); Grider Drug 1 & Grider Drug 2; 77 Fed. Reg. 44,069 (DEA July 26, 2012) (decision and order); The Medicine Dropper; 76 Fed. Reg. 20,039 (DEA April 11, 2011) (revocation of registration); Medicine Shoppe-Jonesborough; 73 Fed. Reg. 363 (DEA Jan. 2, 2008) (revocation of registration).

[34] *Pharmacy Doctors Enterprises, Inc. v. Drug Enf't Admin.*, No. 18-11168, 2019 WL 4565481, at *5 (11th Cir. Sept. 20, 2019).

of "unresolvable red flags" which, when present in prescriptions presented to a pharmacist, may never be filled by the overseeing pharmacist. These unresolvable red flags include: a prescription issued by a practitioner lacking valid licensure or registration to prescribe the controlled substances; multiple prescriptions presented by the same practitioner to patients from the same address, prescribing the same controlled substances in each presented prescription; a high volume of patients presenting prescriptions and paying with cash; and, a prescription presented to by a customer who has traveled significant and unreasonable distances from their home to see a doctor and/or to fill the prescription at the pharmacy.

DEA guidance also instructs pharmacies to monitor for red flags that include: (1) prescriptions written by a doctor who writes significantly more prescriptions (or in larger quantities or higher doses) for controlled substances as compared to other practitioners in the area, and (2) prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time. Most of the time, these attributes are not difficult to detect and should be easily recognizable by Defendants' diversion control systems.

DEA Guidance concerning red flags and corresponding responsibility includes the Pharmacist's Manual: An Informational Outline of the Controlled Substances Act and Actions (administrative and criminal) – Revised 2010.

The DEA has also explained these red flags in individual meetings with Defendants. For example, in December 2010, DEA hosted a meeting with CVS's representatives and counsel and advised CVS of the "red flags . . . that a pharmacy should be familiar with in order to carry out its

38

corresponding responsibility to ensure that the controlled substances are dispensed for a legitimate medical purpose."[35]

Examples of red flags that the DEA identified during its meeting with CVS include:

a. many customers receiving the same combination of prescriptions (*i.e.*, oxycodone and alprazolam);

b. many customers receiving the same strength of controlled substances (*i.e.*, 30 milligrams of oxycodone with 15 milligrams of oxycodone and 2 milligrams of alprazolam);

c. many customers paying cash for their prescriptions;

d. many customers with the same diagnosis codes written on their prescriptions (*i.e.*, back pain, lower lumbar, neck pain, or knee pain); and

e. individuals driving long distances to visit physicians and/or to fill prescriptions.[36]

As another example, in a 2016 presentation to the American Pharmacists Association, the DEA reiterated that retail pharmacies must watch for red flags such as: large numbers of customers who: receive the same combination of prescriptions, receive the same strength of controlled substance prescription (often for the strongest dose), have prescriptions from the same prescriber, and have the same diagnosis code.

Many of these red flags are acknowledged in a "Stakeholders" memorandum created by many of the Chain Pharmacies, including CVS, Rite Aid, and Walgreens, others in the business of selling controlled substances for profit, like Purdue Pharma and Cardinal Health, and their trade organizations, including the HDMA and the NACDS. Defendants also themselves acknowledged their obligations as referenced in the May 19, 2021 Supplemental Pleading, which describe CVS's recognition that its retail pharmacies had a responsibility to dispense only those prescriptions that

---

[35] Declaration of Joe Rannazzisi in *Holiday CVS, L.L.C. v. Holder*, 839 F. Supp.2d 145 (D.D.C. 2012).
[36] *Id.*

were issued based on legitimate medical need in connection with its May 2015 agreement to pay a $22 million penalty following a DEA investigation, Walgreens admissions in connection with its 2013 MOA "that certain Walgreens retail pharmacies did on some occasions dispense certain controlled substances in a manner not fully consistent with its compliance obligations under the CSA . . . and its implementing regulations,"[37] and, for example, internal documents from Walmart indicating that it not yet designed a compliant system for suspicious order identification, monitoring, and reporting, faced financial and reputational risk as a result. *See, e.g.,* May 19, 2021 Supplemental Pleading ¶ 412.

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 11:**

Identify each prescription for a Prescription Opioid or Cocktail Medication dispensed by a Pharmacy Defendant during the Relevant Time Period in the Geographic Area that You contend should not have been dispensed because it was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice and that caused the alleged damage, nuisance, or other harm for which You seek to recover in this case. For each prescription, (1) identify the same 34 fields that the Pharmacy Defendants were ordered to provide in the Court's 1/27/20 Discovery Ruling Regarding Pharmacy Data Production, Case No. 17-md-2804, Doc. 3106 at 8, (2) explain why the prescription should not have been dispensed, including any and all criteria used to determine that the prescription should not have been dispensed and the support or sources for that criteria, and (3) explain how the prescription caused the alleged damage, nuisance, or other harm for which you seek to recover in this case.

**Response to Interrogatory No. 11:**

Plaintiff refers Defendants to its responses to Interrogatories Nos. 1 and 2 and objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiff also incorporates by reference the CT1 Bellwether Plaintiffs' responses and objections to CT1 discovery responses propounded by Pharmacy Defendants. Plaintiff specifically incorporates any and all prior responses by MDL bellwether plaintiffs to discovery requests, including

---

[37] WAGMDL00490963 at WAGMDL00490964.

responses to discovery served during Tracks "1A", "1B" and "CT3" of this litigation. Subject to and without waving objections, Plaintiff responds that it will separately respond by complying with Section D.2 of the CMO in this case.

**Interrogatory No. 12:**

Identify each instance during the Relevant Time Period in which You or anyone acting on Your behalf, including Your health care and law enforcement agencies, communicated with any pharmacy including any National Retail Pharmacy about diversion of Prescription Opioids or Cocktail Medications, actual or suspected Suspicious Orders of Prescription Opioids, or unlawful or excessive prescribing or dispensing of Prescription Opioids during the Relevant Time Period.

**Response to Interrogatory No. 12:**

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome in that it requests that Plaintiff identify "each" instance in which there was any communication with any pharmacy in Plaintiff's geographic area regarding prescription opioids or cocktail medication. Plaintiff further objects to this Request as to the vast over breadth of "without limitation." The scope of this request creates a burden beyond what is appropriate and proportionate to the needs of this case as it is simply not practicable for Plaintiff to specifically identify each and every communication relating to opioids or cocktail drugs.  Plaintiff further objects to this Interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including with respect to any "suspected" conduct and to the extent it concerns communications with pharmacies other than Defendants, and also as cumulative of document requests and other discovery.  Plaintiff further objects to this Interrogatory as unduly burdensome and overbroad given that any communications with the Chain Pharmacies are in possession of and equally available to the Chain Pharmacies.  The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserve the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 13:**

Identify all Persons and entities whose conduct You believe was a substantial factor in creating the alleged public nuisance and state the bases for such belief, including: Opioid Manufacturers; Opioid Distributors (not including self-distributors); FDA; DEA; Ohio Board of Pharmacy; Healthcare Providers; internet pharmacies; pill mills; independent (non-chain) pharmacies; criminal actors; patients; drug abusers; and insurance companies.

**Response to Interrogatory No. 13:**

Plaintiff objects to use of the pejorative term "drug abusers." Plaintiff objects to the term "substantial factor" as undefined and beyond the scope of Plaintiff's burden in this case. Plaintiff contends, and will prove at trial, that the conduct of the each of the Defendants was a substantial factor in creating the public nuisance; it is irrelevant to Plaintiff's claim, and to Defendants' defenses, whether there are other persons whose conduct was also a substantial factor, because the role of any such additional persons does not absolve Defendants of responsibility for their role. Or. (MDL Doc. 2572).

Plaintiff further objects to this Interrogatory as an improper contention Interrogatory that is not reasonably calculated to lead to admissible evidence about the contentions actually at issue

in the supplemental pleading.  The County is not obligated to make additional allegations about other parties.  If the Chain Pharmacies seek to do so, such information should be part of their own discovery responses.

Subject to and without waiving any objections, Plaintiff answers that the following entities are and were a substantial factor in creating the public nuisance at issue in this case: the Opioid Manufacturer defendants, the Opioid Distributor defendants, and the Opioid Pharmacy defendants as those terms have been used and are understood in standard practice of this MDL. Specific to CT7 and relevant to this case, Plaintiff identifies CVS, Walgreens, Walmart, Rite Aid, Kroger, and Meijer as substantial factors in creating the public nuisance that is the Opioid Epidemic. Whether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability. *Id.*

**Interrogatory No. 14:**

Identify each instance in which a Person was allegedly involved in the diversion of Prescription Opioids or Cocktail Medications in the Geographic Area during the Relevant Time Period, including without limitation the alleged improper prescribing of, or filling prescriptions for, Prescription Opioids or Cocktail Medications or the submission to a distributor of a Suspicious Order. For each instance, identify the Persons involved, the nature of their involvement in the alleged diversion, and the date of the alleged diversion.

**Response to Interrogatory No. 14:**

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove their claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves their rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. See Report and Recommendation, In re: National Prescription Opiate Litig., Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); In re Neurontin Litigation, 712 F.3d 21, 29-39 (1st Cir. 2013); United States v. Life Care Centers of Am., Inc., 114 F. Supp. 3d 549 (E.D. Tenn. 2014); United States v. Life

43

Care Centers of Am., Inc., 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, In re: National Prescription Opiate Litig., Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible, nor is Plaintiff required to provide individual proof. The burden is totally disproportional to the needs of the case.

Plaintiff objects to the phrase "each instance" of involvement in opioid diversion or improper prescribing in the "geographic area" as overly broad, unnecessary, and disproportionately burdensome, and also a cumulative.  Plaintiff further objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to admissible evidence to the extent it asks the County to "allege" diversion by or involving persons or entities other than the Chain Pharmacies, who are the parties to whom the allegations in the claim at issue are directed.

Plaintiff also objects to this request in that it calls for information uniquely in the Defendants' possession or control. The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed. Further, compliance with this Interrogatory would potentially require the disclosure of potentially

44

damaging, and private information regarding persons who were investigated for or questioned about potential misconduct but were not necessarily disciplined, charged, or convicted.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving its objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case and to Plaintiff's responses to Interrogatories Nos. 1 and 2.

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 15:**

Identify each instance in which a Person in the Geographic Area and during the Relevant Time Period forged or otherwise improperly altered any prescription for any Prescription Opioid or Cocktail Medication or sought to obtain any Prescription Opioid or Cocktail Medication through a forged or otherwise improper prescription.

**Response to Interrogatory No. 15:**

Plaintiff objects to "each instance" and/or each "Person" who "forged or otherwise improperly altered any prescription for any Prescription Opioid or Cocktail Medication" as overly broad and unduly burdensome.

Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims

45

asserted by Plaintiff do not require a showing that any third-party individuals were harmed, nor is Plaintiff required to provide individual proof.

The burden is totally disproportional to the needs of the case. Plaintiff also objects to this request to the extent that it calls for information uniquely in the Defendants' possession or control, or to other information outside Plaintiff's possession, custody, and control.

Subject to and without waiving objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).   Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A
- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A
- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A
- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A

- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A
- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250
- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250
- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z

- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
- 472951E.90Z

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 16:**

Identify all Healthcare Providers that You allege wrote a prescription for Prescription Opioids that was not medically necessary during the Relevant Time Period that were filled at a pharmacy in the Geographic Area.

**Response to Interrogatory No. 16:**

Plaintiff objects to the term "medically necessary" as undefined, vague, potentially irrelevant and more appropriately the subject of expert testimony. Plaintiff objects to this interrogatory as requiring Plaintiff to identify data sets in the possession, custody and control of defendants or third parties.

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is and unnecessary. The burden is totally disproportional to the needs of the case. Plaintiff is also not obligated to allege whether or not particular prescriptions were "medically necessary" or whether particular providers wrote prescriptions that were not "medically necessary" as part of its claims.

**Interrogatory No. 17:**

Identify each Healthcare Provider who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the prescribing or dispensing of Prescription Opioids or Cocktail Medications.

**Response to Interrogatory No. 17:**

48

Plaintiff objects to this Interrogatory as overbroad, unreasonably burdensome, and not proportional to the needs of the case to the extent it seeks the identity of any healthcare provider ever investigated related to prescribing opioid or cocktail drugs.  Plaintiff objects to this interrogatory to the extent it seeks information covered by the law enforcement privilege.  Further, compliance with this Interrogatory would potentially require the disclosure of potentially damaging, and private information regarding persons who were investigated for or questioned about potential misconduct but were not necessarily disciplined, charged, or convicted.  Plaintiff further objects to this Interrogatory as vague to the extent it references "participated in" and as to geographic scope.  Plaintiff also objects to this Interrogatory as cumulative of Interrogatory No. 3 to the extent it concerns dispensing, and incorporates its objections to Interrogatory No. 3 herein.

Subject to and without waiving any objection, Plaintiff refers Defendants to its response to Interrogatory No. 16 and will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A
- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A

- 292503C3.35A
- 292503C4.35A
- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A
- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A
- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A

- 292537.25
- 292537A.250
- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250
- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
- 472951E.90Z

**Interrogatory No. 18:**

Identify each administrative action or investigation taken by federal, state, county, or local law enforcement authorities, or other governmental entities, against any pharmacies, prescribers, or individuals in the Geographic Area related to Prescription Opioids, Cocktail Medications, or Illicit Drugs.

**Response to Interrogatory No. 18:**

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome, including because it purports to encompass every administration or investigation concerning "individuals" and "Opioids, Cocktail Medications, or Illicit Drugs," and because it would require Plaintiff to collect information about investigations by non-parties which Defendants may collect and identify themselves.  Subject to and without waiving any objection, Plaintiff refers Defendants to its responses to Interrogatories Nos. 1-3, 12, 14-17, and will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

**Interrogatory No. 19:**

Identify any complaints, formal or informal, that You received—including complaints that any pharmacist, prescriber, or other Healthcare Provider employed by or affiliated with You received—regarding any prescriber or other Healthcare Provider, or any pharmacy or pharmacist, related to Prescription Opioids or Cocktail Medications.

**Response to Interrogatory No. 19:**

Plaintiff objects to this Request as vague and ambiguous to the extent that it fails to define what is meant by a "formal complaint" or "informal complaint." Plaintiff further objects to this Request as overly broad and unduly burdensome as it requires Plaintiff to identify all instances in which "any pharmacist, prescriber, or other healthcare provider employed by or affiliated with Plaintiff" received "any complaints" relating to Prescription Opioids or Cocktail Medications regarding "any" healthcare provider or pharmacy.

Subject to and without waiving objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Requests, consistent with further investigation, fact and expert discovery.

**Interrogatory No. 20:**

Identify each instance in which You, or anyone acting on Your behalf, communicated with any federal, state, or local government official or agency (including the United States Drug Enforcement Administration, the United States Department of Justice, the Federal Bureau of Investigation, a United States Attorney's Office, or any other law enforcement agency including your own agencies, the Ohio Board of Pharmacy, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, or the Ohio Medical Board), or any insurer about diversion of Prescription Opioids or Cocktail Medications, actual or suspected Suspicious Orders of Prescription Opioids or Cocktail Medications, or unlawful or excessive prescribing or dispensing of Prescription Opioids or Cocktail Medications during the Relevant Time Period.

**Response to Interrogatory No. 20:**

Plaintiff objects to the term "each instance" as overly broad and disproportionately burdensome. Plaintiff further objects to this request as cumulative and as not reasonably calculated to lead to the discovery of admissible evidence, including without limitation in seeking identification of all communications with any "government official or agency" or "insurer" and concerning "suspected" diversion. Plaintiff objects to this interrogatory as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.

Plaintiff also objects to this request in that it calls for information uniquely in the Defendants' possession or control. The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Further, Plaintiff objects to this interrogatory to the extent it seeks information covered by the law enforcement privilege.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P.33(a)(2). Plaintiff refers Defendants to the Complaint in this case which detail such facts.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 21:**

Identify all Persons with knowledge of Your claims against the Pharmacy Defendants, including all of Your employees, representatives, and/or agents with knowledge regarding the abuse, use, misuse, addiction to, and/or diversion of Prescription Opioids, or the possession, abuse, illegal sale, or addiction to other opioids by County residents. Please also include: (a) every Person You intend to rely on in proving your claims; (b) all state, local, or federal law enforcement individuals who have experience with the Pharmacy Defendants in your area, and (c) all hospitals or healthcare systems in Your Geographic Area whose Healthcare Providers prescribe and/or dispense Prescription Opioids.

**Response to Interrogatory No. 21:**

Plaintiff objects to this Interrogatory as overly broad and confusing as drafted.  The Interrogatory seeks all persons with knowledge about a public health crisis that impacts the public across the county and concerning which Defendants themselves are persons with knowledge.  The Interrogatory also seeks to define certain entities or groups as persons with knowledge then asks Plaintiff to provide information in the public domain and equally available to Defendants, such as listing the "hospitals and healthcare systems" that exist in the County. Plaintiff is not obligated to do that work for Defendants.  Similarly, the reference to "state, local, federal law enforcement individuals" with "experience with the Pharmacy Defendants" is equally available to the Pharmacy Defendants, if not more so to the extent the "experience" concerns officials outside the County. Plaintiff also objects to this Interrogatory to the extent it seeks to compel Plaintiff to prematurely disclose a witness list in advance of the deadlines in the CMO.

Subject to and without waiving objections, Plaintiff responds that this interrogatory will or may be the subject of an expert report. Plaintiff  also identifies the following Persons "with knowledge" regarding the Opioid Epidemic:

> **Name and Title**
> - Joe Spitler, Criminal Justice Director
> - Brandy Burchett, Chief Investigator
> - Bryan Casto, Deputy Coroner
> - Kent Harshbarger, Coroner
> - Matt Juhascik, Chief Toxicologist/Scientific Director
> - Lee Lehman, Coroner, Lead Pathologist

54

- Jennifer Watson, Crime Lab Chemistry Technical Leader
- Brooke Ehlers, Director Montgomery County Coroner's Office
- Jordan Barnhart, Budget Manager
- Caresse Boyd, Outcomes Specialist
- Jeff Cooper, Health Commissioner
- Michael Dohn, Medical Director
- Dawn  Ebron, Epidemiologist Supervisor
- Yevetta Hawley, Director of Nursing
- Susan Herzfeld, Epidemiologist
- Janine Howard, Director of Health Services
- Michele Howard Graham, AIDS Outreach Program Supervisor
- Barbara Marsh, Director of Health Commissioner's Office
- William Roberts, Addiction Services Sr. Manager
- Casey Smith, Project Manager – Community Overdose Action Committee
- Andrea Young, HIV Program Manager
- Jeff Jordan, Director of Emergency Management
- Phil Plummer, Sheriff
- Josh Walters, Detective - Bulk Smuggling Task Force
- Bruce Langos, Criminal Intelligence Specialist
- Teresa Russell, Jail Treatment Coordinator
- Daryl Wilson, Chief Deputy
- Terry Ables, Sergeant - Range Task Force
- Matthew Overholt, Detective - Range Task Force
- Jessica Jenkins, Bd. of County Commissioners, Assistant Director, Human Services, Planning & Development, and Manager of Housing and Homeless Systems

Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatory, consistent with further investigation and discovery.

**Interrogatory No. 22:**

Identify all of your employees, representatives, officers, agents, or others acting on Your behalf throughout the Relevant Time Period, including the positions (or their equivalent) listed in item I.A.8 of the Government Plaintiff Fact Sheet You were required to complete in this MDL.

**Response to Interrogatory No. 22:**

Plaintiff objects to this Interrogatory as overboard, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks as it seeks to identify "all of your employees, representatives, officers, agents, or others acting on Your

behalf..." in any respect.  Plaintiff further objects to this Interrogatory to the extent it is cumulative and seeks information that is in the public domain and available to Defendants from public sources.

Plaintiff also objects to this Interrogatory as vague and confusing to the extent it attempts to equate information from the Government Plaintiff Fact Sheet which pertains to municipalities or other entities within the County's geographic borders as employees or agents of the County.

Subject to and without waiving objections, Plaintiff responds that to the extent this Interrogatory calls for Plaintiff to copy information previously provided in the "Government Plaintiff Fact Sheet," the information previously provided in "item I.A.8" was:

**Mayors:**
- Nan Whaley (Dayton), Gary Leitzell (Dayton), Rhine McLin (Dayton)
- David Seagraves (Brookville)
- Brooks A. Compton (Centerville), Mark Kingseed (Centerville)
- Mike Stevens (Clayton), Joyce Deitering (Clayton)
- Patricia Burnside (Englewood)
- Stephen Boeder (Germantown)
- Jeffrey Gore (Huber Heights), Thomas F. McMasters (Huber Heights)
- Don Patterson (Kettering)
- Richard C. Church, Jr. (Miamisburg)
- Elaine Allison (Moraine)
- William M. Duncan (Oakwood)
- William R. Flaute (Riverside)
- Rhonda C. Finley (Trotwood), Mary Ann McDonald (Trotwood)
- Michael O'Callaghan (Union)
- Arlene Setzer (Vandalia)
- Jeffrey W. Sanner (West Carrollton)
- Daryl E. Weller (Farmersville)
- Raymond Arriola (New Lebanon)
- Cheryl S. Crabtree (Phillipsburg)

**County Commissioners:**
- Dan Foley
- Deborah Lieberman
- Judy Dodge
- Carolyn Rice

**Chief Health Officers:**
- Jeffrey A. Cooper (Commissioner)

- Jim Gross (Commissioner)

**Auditors:**
- Karl Keith

**Recorders:**
- Brandon McClain
- Willis E. Blackshear

**Sheriffs or Police Chiefs:**
- Rob Streck
- Phil Plummer
- Dave Vore

**Coroners or Medical Examiners:**
- Kent Harshbarger
- James H. Davis

**Treasurers:**
- Russell Joseph
- Carolyn Rice

**Chief Financial Officers:**
- Timothy Nolan
- John Parks

**Correctional Facility Supervisors:**
- Michael Flannery (Director - Monday Community Correctional Institute)
- Tim Depew (Director – Monday Community Correctional Institute)

**Wardens:**
- Shelbie Smith (Dayton)

**Heads of Department of Public Health:**
- Jeffrey A. Cooper (Commissioner)
- Jim Gross (Commissioner)

**Fire Chiefs:**
- Jeffrey L. Payne (Dayton)

**Directors of Emergency Medical Services**:
- Jeff Lykins

**Interrogatory No. 23:**

Identify with specificity each category of damages or equitable or monetary relief that You seek in this Action, including but not limited to all injunctive relief that You seek, all specific costs of efforts to combat Opioid addiction and abuse that You seek to recover or which may serve as the basis for relief sought in this Action (e.g., specific costs related to social services and increased crime), and all specific costs of Opioid education, prevention, or other programs for which you seek damages, abatement funds, or other monetary relief. For each category of damages or equitable or monetary relief identified in response to Interrogatory No. 23, identify the amount of each category of damages or equitable or monetary relief, describe how and by whom the damages or equitable or monetary relief were calculated, and identify the individual or entity that paid the costs or expenses identified as of the date of Your response to these Interrogatories. Such response should include: (a) a detailed description of any programs You contend support the relief sought, including a description of whether the program currently exists (b) an identification of any employees who provided information regarding the relief sought, and (c) Your best estimate, as of the date of this response, as to the total relief sought in this Action or a detailed explanation of what will be necessary to determine the amount.

### Response to Interrogatory No. 23:

Plaintiff objects to this Interrogatory as premature under the expert deadlines in the CMO, and premature given the ongoing Plaintiff collections of documents.  Plaintiff objects to this Interrogatory as vague, overly broad to the extent it requests "each category of damages or equitable or monetary relief" being sought.  Plaintiff objects to this interrogatory as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). For purposes of responding to this contention interrogatory, Plaintiff incorporates the factual allegations and cause of action in the supplemental pleading and further answers that the categories of equitable or monetary relief sought include but are not limited to:

- Plaintiff seeks abatement of the continuing harm caused by the public nuisance created by the opioid epidemic. Plaintiff continues to investigate and determine the scope of equitable relief they are entitled to under applicable causes of action, including abatement. Plaintiff anticipates including at a minimum the following categories of programs and services related to the abatement of the opioid epidemic:

58

- Academic detailing
- Continued healthcare provider education
- Mass media campaigns
- Drug take-back programs
- Syringe service programs
- Fentanyl testing strips
- Drug checking machines
- Prescription drug monitoring
- Opioid Abatement Coordinating Unit and data-informed systems
- Helpline, medical social workers, transportation assistance, and bridge programs for connecting individuals to care
- Quick Response Teams
- Treatment for Opioid Use Disorder (OUD), including for pregnant women, adolescents, homeless and housing insecure, and people in detention facilities/jails/prisons
- Maintenance, expansion and improvement of treatment facilities to address OUD
- Programs to manage complications of OUD, including HIV and hepatitis C screening and treatment, and endocarditis treatment
- Prenatal screening for opioid exposure
- Prenatal and postpartum biopsychosocial services
- Prenatal and postpartum housing services
- Interventions for infants exposed to opioids in utero
- School-based prevention programs for adolescents
- Adolescents screening for OUD
- Naloxone distribution and training
- Programs for diversion from criminal justice system
- Specialized overdose investigation units
- Stigma reduction training for first responders
- Programs to reduce burnout/compassion fatigue for first responders
- Drug courts and opioid-related court-system resources
- Reentry and reintegration programs and transitional housing for formerly incarcerated people
- Recovery Initiatives, including peer recovery support services, employment opportunities, and recovery housing
- Programs to support children living with parents with OUD

- Programs to support children in foster care and adopted children and families affected by opioid use
- Permanent supportive housing and recovery housing for homeless and housing insecure individuals
- Programs for individuals with opioid misuse
- Surveillance of opioid use
- Restrictions on the marketing and promotion of opioids.

Subject to and without waiving objections, Plaintiff further answers that the categories of "equitable or monetary relief" sought in this interrogatory also include but are not limited to:

- The maximum amount of punitive damages that is constitutionally permissible as determined by the trier of fact.

- All applicable statutory pre and post-judgment interest to the fullest extent permissible by state and federal law.

To the extent Plaintiff is seeking future relief as set forth above, various components and subparts may either overlap, be a component part of, or be incidental to the equitable remedy sought as part of a comprehensive abatement plan should the Court enter such a plan, including the provision of funds necessary to implement the abatement plan. Discovery into these topics is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure. Any claims other than public nuisance have been severed, and are not the subject of this response.

Plaintiff reserves the right to supplement or amend this response as discovery proceeds.

Dated: September 20, 2021                    Respectfully submitted,


By: */s/ Lisa Saltzburg*
    Lisa Saltzburg

MOTLEY RICE, LLC

Linda Singer
Elizabeth Smith

60

Motley Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com
esmith@motleyrice.com
*Attorneys for Montgomery County*

Michael Elsner
Lisa Saltzburg
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
(843) 216-9000
melsner@motleyrice.com
lsaltzburg@motleyrice.com
*Attorneys for Montgomery County*

Mathias H. Heck, Jr.
Montgomery County Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5599
Fax Number: (937) 225-4822
E-mail: heckm@mcohio.org
*Attorney for Montgomery County*

Ward C. Barrentine
Chief Assistant Prosecuting Attorney - Civil
Division
Montgomery County Prosecutor's Office
301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I caused the foregoing to be served via electronic mail on Defendants via Tracks6to10Defendants@bbhps.com.

By: */s/ Lisa Saltzburg*
Lisa Saltzburg

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:
Case No. 1:18-op-46326-DAP

THE MONTGOMERY COUNTY BOARD OF
COUNTY COMMISSIONERS and THE STATE
OF OHIO *EX REL.* MATHIAS H. HECK, JR.,
PROSECUTING ATTORNEY,

        Plaintiff,

vs.

CARDINAL HEALTH, INC. et al.,

        Defendants.

MDL No. 2804

Case No. 17-md-2804

Judge Dan Aaron Polster

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO PHARMACY**
**DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26 and 34, as well as the local rules and orders

of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County")

hereby responds to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies")

First Set of Requests for Production (the "Requests" and, each individually, a "Request"), as

follows:

**GENERAL OBJECTIONS**

The following objections apply to each Request. To the extent that certain specific

objections are cited in response to an individual Request, those specific objections are provided

1

because they are applicable to that specific Request and are not a waiver of the objections applicable to information falling within the scope of such Request.

1.      Plaintiff objects to each Request to the extent it is overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this MDL or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein. All such objections and the grounds therefore are hereby reserved.

3.      No admission of any nature whatsoever is to be implied or inferred in these responses. The fact that any of the Requests herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Requests, or that such answer constitutes evidence of any fact thus set forth or assumed.

4.      Plaintiff objects to each Request to the extent Plaintiff has not yet received adequate or substantially complete discovery from Defendants. As a result, Plaintiff has not completed its investigation of the facts relating to this action and have not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

5.      Plaintiff objects to each Request to the extent it purports to require Plaintiff to produce documents that are in the public domain or otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff.

2

6.      Plaintiff objects to each Request to the extent it seeks information more appropriately obtained through other methods of discovery.

7.      Plaintiff objects to each Request to the extent that it seeks information that is privileged or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

8.      Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Request as it may be narrowed by its general and specific objections and without waiver of any objection.

9.      Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control" and which constitute the records of, or that belong to, the County or its departments.

10.     Plaintiff objects to each Request to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff do not admit the factual or legal premise of any Request.

11.     Plaintiff objects to each Request to the extent they seek information that is not information belonging to the County within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff. Plaintiff's responses may reference documents and/or information provided by other parties in this litigation. Plaintiff's reference to such documents is

3

not intended to signify that Plaintiff maintains possession, custody, or control of these documents or that they belong to the County.

12.     Plaintiff objects to each Request to the extent it prematurely seeks expert opinion(s). All expert opinions will be disclosed on the dates set forth in the Case Management Order.

13.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

14.     Plaintiff intends to complete its production by the time period set forth in the Case Management Order (CMO) for the completion of fact and expert discovery, or as subsequently modified by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Requests. All final decisions regarding whether any information or responsive document will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of fact and expert discovery.

15.     Plaintiff objects to the Requests, and to the Definitions and Instructions included with this set of Requests, to the extent that they seek discovery that is not relevant to any party's claims or defenses.

16.     Plaintiff objects to the Requests, and to the Definitions and Instructions included with this set of Requests, to the extent that they are overly burdensome and not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

17.     Plaintiff objects to these Requests, and to the Definitions and Instructions included with this set of Requests, because they seek discovery that is not relevant to a claim or defense or proportional to the needs of the case..

17.     Plaintiff objects to these Requests to the extent they seek protected health information.

18.     Plaintiff objects to these Requests to the extent that they include multiple subparts. Plaintiff further objects to these Requests on the grounds that they are individually and collectively overbroad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of the cases. Defendants' sweeping Requests seek information without any limits on custodians or non-custodial sources. These Requests are unreasonable. To the extent that Plaintiff agrees to respond to these Requests, Plaintiff is agreeing to produce only the information it identifies in its Response.

19.     Plaintiff objects to the Requests, and to the Definitions and Instructions included with this set of Requests, to the extent that they seek documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; (d) are not reasonably accessible to Plaintiff; and/or (e) are publicly available to Defendants. With regard to any Response that Plaintiff provides, Plaintiff's Response will be limited to relevant, responsive, and non-privileged information or documents in its possession, custody, or control of, and belonging to, the County located after a reasonable search that is proportional to the needs of the case.

20.     Plaintiff objects to these Requests to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

21.     Plaintiff objects to these Requests, and to the Requests' Definitions and Instructions, to the extent that any Request, Definition, or Instruction: (a) is unduly burdensome, oppressive, overbroad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Plaintiff to draw a legal conclusion in order to respond.

22.     Plaintiff objects to the Requests that purport to require that Plaintiff provide discovery with regard to "any," "each," "every," "all," or similar all-encompassing wording, on the grounds that such Requests are overly broad, unduly burdensome, seek discovery that is not relevant to any party's claims or defenses, not proportional to the needs of the case, and beyond the scope of permissible discovery, particularly at this stage of the proceeding.

23.     Plaintiff objects to the Requests to the extent that they seek premature expert discovery or disclosure of expert opinions and go beyond the scope of permissible expert discovery under the Federal Rules of Civil Procedure. Plaintiff will provide expert discovery and disclosures in compliance with the Federal Rules of Civil Procedure but assumes no further obligation.

24.     Plaintiff's investigation and discovery is ongoing as to all matters referred to in these Objections and Responses to Defendants' Requests. Plaintiff's Responses are based upon information that has been collected and reviewed to date for the purpose of responding to these Requests, and they are not prepared from the personal knowledge of any single individual. Plaintiff reserves the right to amend and supplement these Responses as discovery and this litigation proceed.

25.      Responding to these Requests does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible. Plaintiff objects to these Requests to the extent they seek to compel individual proof or to compel Plaintiff to use any particular method of proof at trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      Plaintiff objects to the Definitions of "Plaintiff" and "You" on the grounds that they are overly broad, vague, and seek to extend the requests beyond the Plaintiff entity that is named as Plaintiff in this litigation. For purposes of its Responses, Plaintiff will consider "Plaintiff" and "You" to mean the County and will respond with regard to information and documents in the County's possession, custody, or control that are records of, or belong to, the County or its departments.

2.      Plaintiff objects to the Definitions of "Document" and "Communication" to the extent that they seek to impose obligations on Plaintiff beyond those imposed by the Federal Rules of Civil Procedure. Plaintiff will respond in accordance with the applicable Federal Rules of Civil Procedure and assumes no further obligation.

3.      Plaintiff objects to the Definition of "including" to the extent that the Definition goes beyond common usage of the term, results in Requests that are overbroad, vague, ambiguous, and unduly burdensome and, using Defendants' Definition of "including," seeks discovery that is not relevant to any party's claims or defenses, nor proportional to the needs of the case, purports to impose obligations or burdens on Plaintiff that go beyond the Federal Rules of Civil Procedure, and makes demands for information and documents that are not in Plaintiff's possession, custody, or control or records that belong to the County. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to a Request not otherwise stated in the actual Request and creates a compound Request. Plaintiff will respond to the Requests as propounded, subject to its Objections, and does not agree to respond with regard to additional requirements or questions that Defendants purport to impose through their Definition of "including."

4.      Plaintiff objects to the Definition of "Relevant Time Period" to the extent it seeks to impose obligations on the Plaintiff beyond those outlined in *Discovery Ruling 3* (Doc. 762) (Filed: 07/1//18).  Plaintiff will respond in accordance with *Discovery Ruling 3* and assumes no further obligation.

5.      Plaintiff objects to Definitions 1 through 21 and Instructions 1 through 7 on the grounds that they are overly burdensome and seek to impose obligations or burdens on Plaintiff that go beyond those imposed by the Federal Rules of Civil Procedure. Plaintiff will comply with the Federal Rules of Civil Procedure.

## **NON-WAIVER**

1.      Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.      If Plaintiff, in response to any Request, inadvertently produces information that is or could be the subject of the objections stated herein, such production is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.      Plaintiff's failure to object to a specific Request on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Requests, consistent with further investigation and discovery.

**SPECIFIC RESPONSES AND OBJECTIONS**

**Request No. 1:**

All Documents relating to any Communications or Transactions between You and any manufacturer, distributor, or dispenser of Prescription Opioids or Cocktail Medications during the Relevant Time Period.

**Response to Request No. 1:**

In addition to its General Objections, Plaintiff objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks "All Documents relating to any Communications or Transactions" with any opioid or cocktail drug manufacturer, distributor, or dispenser without regard to subject matter.  Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 2:**

All Documents related to Opioid-related task forces or other program or group to address opioid use or diversion that You formed or participated in, including but not limited to those You identified in your 3/6/19 Plaintiff Fact Sheet (e.g., the Community Overdose Action Team (COAT) and the Montgomery County Drug-Free Coalition).

**Response to Request No. 2:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 3:**

All Documents reflecting or relating to any pharmacy or pharmacist's cooperation, assistance, and/or participation in any inspection, audit, investigation, or enforcement action (including enforcement actions related to fines, suspensions, revocations, and letters or other formal warnings or notices) against any pharmacy, pharmacist, doctor or other prescriber, or individual relating to the distribution, dispensing, failure to dispense, diversion, or misuse of Prescription Opioids or Cocktail Medications.

**Response to Request No. 3:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.  Plaintiff further objects to this Request to the extent it seeks documents that are not

relevant to a claim or defense and is cumulative of other requests. Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information.

Subject to and without waiving its objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 4:**

Investigation files for any physician, healthcare provider, pharmacy, or pharmacist employee who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the physician's or provider's prescribing or dispensing of Prescription Opioids or Cocktail Medications.

**Response to Request No. 4:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents" and all "Investigation files." Plaintiff further object to this Request to the extent it seeks Privileged Information and/or disclosure of Personal Health Information.

Subject to and without waiving its objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business and could be located following a reasonably diligent search.

**Request No. 5:**

All Documents relating to potential or alleged misuse, diversion, improper dispensing, improper distribution, failure to dispense, violation of state or federal law or regulation, or any wrongful conduct related to Prescription Opioids or Illicit Drugs, including Your efforts to identify, address, detect and prevent Prescription Opioid or Illicit Drug misuse, diversion, or injury. These Documents shall include, but are not limited to:

a. All Documents reflecting or relating to any inspection, audit, investigation, or enforcement action taken by You against any pharmacy relating to the dispensing, failure to dispense, diversion, or misuse of Prescription Opioids;

b. All Documents relating to any alleged violation of state or federal law or regulation, or any wrongful conduct, by any pharmacy, medical doctor, physician assistant, pharmacist, pharmacy technician, pharmacy intern, Healthcare Provider, manufacturer, distributor, or other Person, and any related news or press releases, pleadings, transcripts, guilty pleas, or other court Documents.

c. All expert reports prepared as part of any investigation of any individual or entity regarding Prescription Opioids or Illicit Drugs.

d. All Documents—including news or press releases, pleadings, transcripts, guilty pleas, and other court Documents—that refer to diversion of Prescription Opioids or any of the Pharmacy Defendants, including Documents that have been removed from or are otherwise no longer available to the public on governmental websites maintained by You.

e. All Documents in Your possession, custody, and/or control related to any Healthcare Provider or other individual engaged in diversion and or inappropriate prescribing of Prescription Opioids, including Documents related to the individuals identified in Plaintiff's Requests for Production (i.e., Bruce Kay, Morris Brown, Thomas Greer, David Kirkwood, Suresh Gupta, Ratnam Oza, Stephen House, Lisa Lichota, Thomas Goodall, John Moore, Julia Lucente, Han Yang, Daniel Brumfield, John Dahlsten).

**<u>Response to Request No. 5</u>:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff. Plaintiff further objects to the Request as vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks

documents and information such as that concerning "potential" "wrongful conduct" or materials such as expert reports which Defendants are not producing from other litigation (even other litigation concerning the same types of claims).

Plaintiff further objects to this Request to the extent it seeks information covered by the law enforcement privilege.  Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged and Confidential Information.

Subject to and without waiving its objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A
- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A
- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A

- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A
- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250
- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250

- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
  472951E.90Z

**Request No. 6:**

All Documents relating to the prescribing of Prescription Opioids during the Relevant Time Period by any physicians or other Healthcare Providers in the Geographic Area, including Documents relating to any alleged diversion or inappropriate prescribing practices, and/or refusal to write or fill prescriptions for Prescription Opioids by any physicians, pharmacists, or other Healthcare Providers during the Relevant Time Period.

**Response to Request No. 6:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome in that it seeks "All Documents" related to prescribing of opioids. In addition to its General Objections, Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business that could be located following a reasonable diligent search, after running agreed upon search terms on the agreed to custodians, on documents belonging to the County, or its departments.

**Request No. 7:**

All Documents from the Relevant Time Period relating to the medical necessity and/or legitimate need for Prescription Opioids.

**Response to Request No. 7:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request on the grounds that it is vague and ambiguous as to the terms "medical necessity" and "legitimate need." Plaintiff further objects to the use of the term "medical necessity" as it is irrelevant to this case.

Plaintiff further objects to this Request because it seeks documents or information that are in Defendants' possession, custody, or control.

Plaintiff further objects based on the Court's ruling in *City of Chicago v. Purdue Pharma*, in which the Court granted Plaintiff's motion to be relieved from its obligation to identify opioid prescriptions that it considers to be medically unnecessary and to turn over data to the Defendants regarding opioids prescribed to individuals covered under Plaintiff's insurance plans.

**Request No. 8:**

All Documents related to the health benefits plans offered by You to Your employees (including those responsive to MDL Government Plaintiff Fact Sheets item I.B.8), including all formularies, prescription drug lists, descriptions of benefits for such plans, and all in-network and out-of-network healthcare providers for such plans.

**Response to Request No. 8:**

In addition to its General Objections, Plaintiff objects to this Request as irrelevant, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence, as health plans offered to employees have no bearing on the public nuisance claim or any potential defenses at issue. Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 9**:

All policies, procedures, and training materials regarding the proper dispensing of controlled substances, including any changes, alterations, or amendments, prior versions, and any related Communications regarding such changes.

**Response to Request No. 9**:

Subject to and without waiving its objections, the County has never owned or operated a pharmacy.  Plaintiff does not have any information responsive to this request.  As discovery is

ongoing, Plaintiff reserves its right to amend and/or to supplement its objections and response to the Requests, consistent with further investigation and discovery.

**Request No. 10:**

All Documents from the Relevant Time Period relating to the responsibilities and obligations of physicians, pharmacists, or other Healthcare Providers to treat patients for pain.

**Response to Request No. 10:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information. Plaintiff also objects to the phrase "responsibilities and obligations of physicians, pharmacists, or other Healthcare Providers," without defining any source of such obligations or otherwise demonstrating the existence of such obligations.

Subject to and without waiving its objections, and without conceding the existence of such obligations, Plaintiff will produce non-privileged documents, if any, on documents belonging to the County, or its departments, maintained in the ordinary course of business, which can be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians.

**Request No. 11:**

All Documents reflecting or relating to complaints, investigations, problems, disciplinary action, concerns relating to, or harm resulting from, the refusal or failure of a pharmacist, pharmacy intern, pharmacy technician, or other pharmacy employee or dispenser to dispense Prescription Opioids.

**Response to Request No. 11:**

18

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 12:**

All Documents relating to the Ohio Automated Rx Reporting System ("OARRS") including requests for information made by you to any law enforcement agency concerning investigations of potential criminal activity, fraud (including Medicare fraud), or theft relating to Prescription Opioids; all Documents relating to use of the OARRS during the Relevant Time Period by You and/or any entities affiliated with You or on whose behalf You seek damages or other relief in this Action; actions taken or considered based on information received from OARRS; all news or press releases You issued relating to the establishment of OARRS or the use, abuse, misuse, addiction to, prescribing, dispensing, sale, distribution, or diversion of Prescription Opioids or Illicit Drugs, including news or press releases that have been removed from or are otherwise no longer available to the public on governmental websites maintained by You; all Documents constituting, or referring or relating to, Communications between any Person and any current or former state or local government officials, or members of their respective staffs, relating to the establishment of OARRS; and all Documents referring or relating to actual or proposed sources of funds to administer OARRS.

**Response to Request No. 12:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, as vague and confusing request encompassing multiple subparts.  Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."  Plaintiff further objects to the Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than the Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide information.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 13:**

All Documents relating to Communications between You and any federal, state, or local government official or agency (including the United States Drug Enforcement Administration, the United States Department of Justice, a United States Attorney's Office, the Federal Bureau of Investigation, the American Medical Association, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, the Ohio Board of Pharmacy, the Ohio Board of Medicine, and any other federal or state law enforcement agency), or insurer regarding Prescription Opioids, Cocktail Medications, or Illicit Drugs during the Relevant Time Period. Such Documents shall include any Documents Plaintiff has received from any federal, state, or local law enforcement agency regarding any of the Pharmacy Defendants and any communications between You and the DEA or You and the Ohio Board of Pharmacy (or any other applicable entity) relating to any of the Pharmacy Defendants or any other pharmacies in the Geographic Area.

**Response to Request No. 13:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 14:**

All Documents from any source that explain, calculate, speculate about, discuss, estimate, reflect, or reference the maximum quantity of pills or other dosage units of Prescription Opioids that should have been distributed or dispensed in the Geographic Area for legitimate medical purposes during the Relevant Time Period.

**Response to Request No. 14:**

In addition to its General Objections, Plaintiff objects to this Request as compliance with this Request would be overly broad and unduly burdensome as it purports to demand "All Documents from any source that explain, calculate, speculate about, discuss, estimate, reflect, or reference the maximum quantity of pills or other dosage units of Prescription Opioids that should have been distributed or dispensed in the Geographic Area for legitimate medical purposes during the Relevant Time Period." Plaintiff further objects to this Request in that it is not reasonably calculated to lead to admissible evidence to the extent it asks about "any source" that "speculate[s]."

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order. Plaintiff further objects to this Request on the grounds that the term "legitimate medical purpose," as used in 21 C.F.R. § 1306.04 and 21 U.S.C. § 829, refers to the circumstances under which a prescription is written, not the quantity of pills dispensed pursuant to the totality of all such prescriptions, rendering the Request as formulated meaningless. Plaintiff also objects to this Request on the ground that the term "legitimate medical purpose," as used in 21 C.F.R. § 1306.04 and 21 U.S.C. § 829, provides criteria for the dispensing of opioids, not for their distribution, again rendering the Request as formulated meaningless.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 15:**

All documents you maintain that refer or relate to the volume of Prescription Opioids prescribed, dispensed, sold, distributed, diverted, or used in the Geographic Area.

21

**Response to Request No. 15:**

In addition to its General Objections, Plaintiff further objects to this Request to the extent it seeks Privileged Information.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 16:**

All Documents relating to reports, analyses, projections, forecasts, surveys, or newsletters concerning the impact of the use and abuse of Prescription Opioids or Illicit Drugs in the Geographic Area.

**Response to Request No. 16:**

In addition to the General Objections, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order. Plaintiff further objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information.

Plaintiff further objects to this Request to the extent that it calls for disclosure of Privileged Information.  Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a

reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 17:**

All Documents that identify, refer, or relate to any alleged Suspicious Orders placed by any of the Pharmacy Defendants or any other pharmacies in the Geographic Area.

**Response to Request No. 17:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order and the Federal Rules of Civil Procedure.  Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 18:**

All information within your possession, custody, or control concerning whether a pharmacy received Prescription Opioids as a result of a suspicious order.

**Response to Request No. 18:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff also objects to this Request as irrelevant to the extent it purports to include pharmacies other than the Chain Pharmacies, and as cumulative of other Requests.  Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.

Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information. Plaintiff also objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order.

Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.

 Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 19:**

24

All Documents from the Relevant Time Period related to Opioid cases handled by crime labs in the Geographic Area.

**Response to Request No. 19:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."

Plaintiff objects to this Request to the extent it seeks Privileged Information.    Plaintiff further objects to this Request as it seeks documents that are not in the possession, custody, of control of the Plaintiff.  Subject to and without waiving its objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.  Plaintiff is prepared to meet and confer on running searches on the crime lab database.

**Request No. 20:**

All Documents relating to investigations or efforts to discover or address whether any known overdose was related to the ingestion of Opioids, including medical, medical examiner, coroner, forensic pathology, toxicology records, any Documents reflecting the policies or procedures for conducting such investigations, any Documents concerning the actual or suspected source of the ingested Opioids, and any Documents reflecting Your efforts to compile or track statistics regarding fatal or non-fatal overdoses involving Opioids or Illicit Drugs.

**Response to Request No. 20:**

In addition to its General Objections, Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not

claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Plaintiff further objects to this Request as unduly burdensome to the extent it seeks "statistics regarding fatal or non-fatal overdoses involving Opioids or Illicit Drugs," as Defendants may access statistics through public and other sources.

Subject to and without waiving its objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 21:**

All documents in your possession, custody, or control relating to any prescription disposal program You have formed, funded, operated, or participated in.

**Response to Request No. 21:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff refers Defendants to its responses to Requests No. 2 and 5.

**Request No. 22:**

All documents in your possession, custody, or control relating to addiction treatment programs that you have formed, funded, operated, or participated in, including but not limited to those You identified in your 3/6/19 PFS (e.g., Dayton & Montgomery County's Addiction

26

Services; the medication assisted treatment facility that opened in the fall of 2017; Public Health's Ambulatory Withdrawal Management Services program; the 24/7 CrisisCare program; the Community Overdose Action Team (COAT); programs related to funding for residential treatment facilities such as Nova Behavioral Health, the program to provide recovery housing for pregnant women, the Dora Lee Tate Center for juvenile residential treatment; the Sheriff's Jail Treatment program; ADAMHS services for inmates in the Montgomery County Jail; CarePoint, a syringe exchange program operated by Public Health, Dayton & Montgomery County; the Common Pleas Court's Secure Transitional Offender Program ("STOP" Program); the Montgomery County Family Treatment Court; the Women's Therapeutic Court; and Public Health's Addiction Services Program that provides Intensive and Non-Intensive Outpatient services, as well as Medication Assisted Treatment).

**Response to Request No. 22:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff refers Defendants to its responses to Requests No. 2 and 5. Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 23:**

All documents in your possession, custody, or control relating to any drug abuse prevention or education programs related to Prescription Opioids that You provided, operated, or funded, including but not limited to those identified in your 3/6/19 PFS.

**Response to Request No. 23:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff refers Defendants to its responses to Requests No. 2 and 5. Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after

running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 24:**

All Documents relating to the money damages and other relief You are seeking in this Action, including the computation of the amount of such damages and the inputs into any such computation and Documents reflecting the costs and expenses You seek to recover.

**Response to Request No. 24:**

In addition to the General Objections, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order. Plaintiff further objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents" relating to claims other than the public nuisance claim at issue in Track Seven.

Plaintiff objects to this interrogatory as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.  Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged and Confidential Information.  Plaintiff further objects to the extent that this Request seeks information relating to relief other than Plaintiff's claim for abatement.  Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 25:**

All Documents relating to money requested, expected, received, allocated, or budgeted, from or by any source, for the purpose of addressing increased expenditures related to the harm for which you seek damages or other relief in this Action.

**Response to Request No. 25:**

In addition to the General Objections, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order.

Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents" and in that it seeks documents from "any source."  Plaintiff further objects to this Request to the extent it is cumulative, overbroad, unduly burdensome, and seeks documents that are in the public domain and available to Defendants from public sources.

Subject to and without waiving its objections, Plaintiff states that: (1) annual budget documents for the County, which include  Budgets in Brief, Budget and Plan, Detailed Budgets by Department, Budget Presentations and Plans for the County will be produced, along with comprehensive annual financial report, and grant files relevant to this case, and (2) Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms, on documents belonging to the County, or its departments.

**Request No. 26:**

All Documents and data referring or relating to Your expenditures relating to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids or Illicit Drugs, including Documents relating to healthcare costs paid by You or by or through fully or partially-funded medical insurance plans and workers' compensation programs and Documents relating to additional overtime costs incurred by You to replace or otherwise compensate for employees absent due to long-term Prescription Opioid use. Include in this response any policies governing evaluation or approval of such expenditures.

**Response to Request No. 26:**

In addition to its General Objections, Plaintiff objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in seeking "All Documents and data,"

and as cumulative of other Requests.  Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information. Plaintiff objects to this Request as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving its objections, Plaintiff refers Defendants to Plaintiff's response to Request No. 25.

**Request No. 27:**

All Documents relating to Your efforts to recover expenditures related to Prescription Opioid or Illicit Drug addiction, misuse, abuse, or overdose in the Geographic Area from any Person, including (without limitation) insurers, government entities, manufacturers, pharmacists, pharmacies, Healthcare Providers, clinics, drug dealers, drug traffickers, or drug trafficking organizations.

**Response to Request No. 27:**

In addition to the General Objections, Plaintiff further objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the

Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information.

Plaintiff further objects to this Interrogatory as it is irrelevant due to joint and several liability, Polster Or. (MDL Doc. 2572), and because this public nuisance claim seeks prospective abatement relief from Defendants, not past compensatory damages. Plaintiff objects to this interrogatory to the extent that is calls for disclosure of Privileged Information. Subject to and without waiving its objections, Plaintiff refers Defendants to the pleadings in this MDL.

**Request No. 28:**

Quarterly and annual budgets and financial reports for You and any entities affiliated with You or on whose behalf You seek damages or other relief in this Action.

**Response to Request No. 28:**

Plaintiff objects to the extent that this Request is overbroad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence in a public nuisance abatement action, as well as to the extent it seeks discovery concerning claims not at issue in Track Seven. Plaintiff further objects to this Request to the extent it is cumulative and to the extent seeks documents that are in the public domain and available to Defendants from public sources.

Subject to and without waiving its objections, Plaintiff refers Defendants to its Response to Request No. 25.

**Request No. 29:**

All meeting agendas for any City Council, County Commission, County Health Board/Commission, or their equivalent that reference Prescription Opioids, the misuse of Opioids, or related topics.

**Response to Request No. 29:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."  Plaintiff objects to this Request as it seeks documents or information that: (a) are not in Plaintiff's possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; and (c) are within the public domain and available to Defendants from public sources.

Subject to and without waiving its objections, Plaintiff refers Defendants to the following website:

https://www.mcohio.org/government/elected_officials/board_of_county_commissioners/resolutions/index.cfm

**Request No. 30:**

All organizational charts identifying your employees, representatives, officers, agents, or others acting on Your behalf, including the positions (or their equivalent) listed in item I.A.8 of the Government Plaintiff Fact Sheet You were required to complete in this MDL.

**Response to Request No. 30:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this request to the extent it seeks documents from sources other than the County or that are not records of, or documents belonging to, the County or its departments.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 31:**

All Documents requested in Section II of the Government Plaintiff Fact Sheet that You were required to complete in this MDL.

**Response to Request No. 31**:

Subject to and without waiving its objections, Plaintiff will re-produce documents previously produced with the Plaintiff Fact Sheet.

**Request No. 32**:

All Documents referenced, identified, and/or used in preparing answers in response to any Interrogatory served on You by any of the Pharmacy Defendants.

**Response to Request No. 32**:

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents to the extent any were referenced, identified, and/or used in preparing answers in response to the MDL Government Plaintiff Fact Sheets and/or any interrogatory served by the Pharmacies.

**Request No. 33**:

All agreements between You and any Defendant in this Action or other lawsuits related to Opioids regarding settlement or resolution of any claims, release or discharge of any liability, or payment of any funds or provision of other items of value, including all related agreements, terms sheets, memoranda of understanding, releases and agreements under the Ohio Governor's OneOhio plan.

**Response to Request No. 33**:

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence, including in seeking any "term sheets, memoranda of understanding, releases and agreements" and in seeking discovery concerning any lawsuit in any way related to Opioids.   Plaintiff further objects to this request to the extent it seeks any information subject to confidentiality orders or agreements or Privileged Information.

Subject to and without waiving its objections, Plaintiff will produce two resolutions passed concerning OneOhio and refers Defendants to settlement agreements readily available to them on the internet at https://nationalopioidsettlement.com/.

**Request No. 34:**

All Documents related to any actual or proposed agreement to settle, dismiss, discontinue, or not pursue litigation related to Opioids against any Person or entity, including any doctor, sales representative, Healthcare Provider, pharmacist, or pharmacy.

**Response to Request No. 34:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence, including in seeking "All Documents" related to  any "actual or proposed agreement" and in seeking discovery concerning any lawsuit in any way related to Opioids.   Plaintiff further objects to this request to the extent it seeks any information subject to confidentiality orders or agreements or Privileged Information.

Subject to and without waiving its objections, Plaintiff refers Defendants to Plaintiff's response to Request No. 33.

**Request No. 35:**

All Claims Data regarding each prescription dispensed under the health benefits plans offered by You to Your employees from the Relevant Time Period for either (a) a Subject Prescription Opioid, (b) a Benzodiazepine dispensed to a particular member within 14 days of a Prescription Opioid, or (c) a Muscle Relaxer dispensed to a particular member within 14 days of a Prescription Opioid. For each prescription, identify the same 34 fields that the Pharmacy Defendants were ordered to provide in the Court's 1/27/20 Discovery Ruling Regarding Pharmacy Data Production, Case No. 17-md-2804, Doc. 3106 at 8.

**Response to Request No. 35:**

In addition to its General Objections, Plaintiff objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal

medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here and the burden is totally disproportional to the needs of the case.

Plaintiff further objects based on the Court's ruling in *City of Chicago v. Purdue Pharma*, in which the Court granted Plaintiff's motion to be relieved from its obligation to identify opioid prescriptions that it considers to be medically unnecessary and to turn over data to the Defendants regarding opioids prescribed to individuals covered under Plaintiff's insurance plans.

Subject to and without waiving its objections, Plaintiff responds that Plaintiff is searching for prescription claims data for all patients who had at least one opioid prescription. For each of these patients, the County is collecting all prescription data in the County's possession, custody or control, including any benzodiazepine or muscle relaxer within 14 days of the opioid prescription.

Dated: September 20, 2021                    Respectfully Submitted,

By: */s/ Lisa Saltzburg*
Lisa Saltzburg

MOTLEY RICE, LLC

Linda Singer
Elizabeth Smith
Motley Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com
esmith@motleyrice.com
*Attorneys for Montgomery County*

Michael Elsner
Lisa Saltzburg
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
(843) 216-9000
melsner@motleyrice.com
lsaltzburg@motleyrice.com
*Attorneys for Montgomery County*

Mathias H. Heck, Jr.
Montgomery County Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5599
Fax Number: (937) 225-4822
E-mail: heckm@mcohio.org
*Attorney for Montgomery County*

Ward C. Barrentine
Chief Assistant Prosecuting Attorney - Civil Division
Montgomery County Prosecutor's Office

36

301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2021, I caused the foregoing to be served via electronic mail on Defendants via Tracks6to10Defendants@bbhps.com .

By: */s/ Lisa Saltzburg*

Lisa Saltzburg

# EXHIBIT 2.2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:
Case No. 1:18-op-46326-DAP

THE MONTGOMERY COUNTY BOARD OF
COUNTY COMMISSIONERS and THE STATE
OF OHIO *EX REL.* MATHIAS H. HECK, JR.,
PROSECUTING ATTORNEY,

        Plaintiff,

vs.

CARDINAL HEALTH, INC. et al.,

        Defendants.

MDL No. 2804

Case No. 17-md-2804

Judge Dan Aaron Polster

**PLAINTIFF'S RESPONSES AND OBJECTIONS TO THE
PHARMACY DEFENDANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as the local rules and orders of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County") hereby responds to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies") Second Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

**OBJECTIONS**

The following objections apply to each Interrogatory. To the extent that certain specific objections are cited in response to an individual Interrogatory, those specific objections are

1

provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.      Plaintiff objects to each Interrogatory to the extent it is overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this MDL or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein. All such objections and the grounds therefore are hereby reserved.

3.      No admission of any nature whatsoever is to be implied or inferred in these responses. The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

4.      Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet received adequate discovery from Defendants. As a result, Plaintiff has not completed its investigation of the facts relating to this action and have not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

5.      Plaintiff objects to each Interrogatory to the extent it purports to require Plaintiff to produce documents that are in the public domain or otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff.

6.     Plaintiff objects to each Interrogatory to the extent it seeks information more appropriately obtained through other methods of discovery.

7.     Plaintiff objects to each Interrogatory to the extent that it seeks information that is privileged or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

8.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

9.     Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control" and which constitute the records of, or that belong to, the County or its departments.

10.     Plaintiff objects to each Interrogatory to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

11.     Plaintiff objects to each Interrogatory to the extent it seeks information that is not information belonging to the County within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff. Plaintiff's responses may reference documents and/or information provided by other parties in this MDL. Plaintiff's reference to such documents is not

3

intended to signify that Plaintiff maintains possession, custody, or control of these documents or that they belong to the County.

12.     Plaintiff objects to each Interrogatory to the extent it prematurely seeks expert opinion(s). All expert opinions will be disclosed on the dates set forth in the Case Management Order.

13.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

14.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that it seeks discovery that is not relevant to any party's claims or defenses.

15.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they are overly burdensome and not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Plaintiff objects to these Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, because they seek discovery that is not relevant to a claim or defense or proportional to the needs of the case.

17. Plaintiff objects to these Interrogatories to the extent they seek protected health information.

18.     Plaintiff objects to these Interrogatories to the extent that they include multiple subparts. Plaintiff further objects to these Interrogatories on the grounds that they are individually

4

and collectively overbroad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of the case. To the extent that Plaintiff agrees to respond to these Interrogatories, Plaintiff is agreeing to produce only the information it identifies in its Response.

19.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they seek information that: (a) is in Defendants' possession, custody, or control; (b) is equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; (d) is not reasonably accessible to Plaintiff; and/or is publicly available to Defendants. With regard to any Response that Plaintiff provides, Plaintiff's Response will be limited to relevant, responsive, and non-privileged information in its possession, custody, or control of, and belonging to, the County located after a reasonable search that is proportional to the needs of the case.

20.     Plaintiff objects to these Interrogatories to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

21.     Plaintiff objects to these Interrogatories, and to the Interrogatories' Definitions and Instructions, to the extent that any Interrogatory, Definition, or Instruction: (a) is unduly burdensome, oppressive, overbroad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Plaintiff to draw a legal conclusion in order to respond.

22.     Plaintiff objects to the Interrogatories that purport to require that Plaintiff provide discovery with regard to "any," "each," "every," "all," or similar all-encompassing wording, on the grounds that such Interrogatories are overly broad, unduly burdensome, seek discovery that is

not relevant to any party's claims or defenses, not proportional to the needs of the case, and beyond the scope of permissible discovery, particularly at this stage of the proceeding.

23.     Plaintiff objects to the Interrogatories to the extent that they seek premature expert discovery or disclosure of expert opinions and go beyond the scope of permissible expert discovery under the Discovery Rules. Plaintiff will provide expert discovery and disclosures in compliance with the Discovery Rules but assumes no further obligation.

24.     Plaintiff's investigation and discovery are ongoing as to all matters referred to in these Objections and Responses to Defendants' Interrogatories. Plaintiff's Responses are based upon information that has been collected and reviewed to date for the purpose of responding to these Interrogatories, and they are not prepared from the personal knowledge of any single individual. Plaintiff reserves the right to amend and supplement these Responses as discovery and this litigation proceed.

25.     Responding to these Interrogatories does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD- 2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible.

26. Plaintiff objects to these Interrogatories to the extent they seek to compel individual proof, or to compel Plaintiff to use any particular method of proof, at trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1. Plaintiff incorporates by reference each objection to the Definitions and Instructions set forth in its Responses and Objections to the Pharmacy Defendants' First Set of Interrogatories served on September 20, 2021.

2. Plaintiff objects to the Definition of "DHHS Programs" to the extent that the Definition results in Interrogatories that are overbroad, vague, ambiguous, and unduly burdensome. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to a Interrogatory not otherwise stated in the actual Interrogatory and creates a compound Interrogatory.

4. Plaintiff objects to the Definition of "DOJ Programs" to the extent that the Definition results in Interrogatories that are overbroad, vague, ambiguous, and unduly burdensome. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to a Interrogatory not otherwise stated in the actual Interrogatory and creates a compound Interrogatory.

## NON-WAIVER

1. Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2. If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be,

7

nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.     Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.     Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 1**:

Your Red Flag Submission states that You have "not ... applied every reasonable method for identifying suspicious or 'red flag' prescriptions." Identify each such method that You omitted from Your analysis and identify any support (e.g., literature, testimony) for Your position that each is a "reasonable" method to identify suspicious or red flag prescriptions.

**Response to Interrogatory No. 1**:

Plaintiff objects to this Interrogatory as overboard and unduly burdensome to "identify each such method that You omitted from Your analysis" and further to identify why the method omitted was "reasonable".  Plaintiff objects to this Interrogatory to the extent it calls for an expert opinion.   Plaintiff has provided responses identifying the methods and data to which those methods may be applied consistent with Discovery Ruling 12.  Defendants request that Plaintiff now identify the methods not used and to identify why the omitted methods are reasonable is beyond the scope of Plaintiff's burden in this case.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

8

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 2**:

Describe how each Red Flag Criteria listed on Exhibit A to Your Red Flag Submission was created and identify each person involved in creating it.

**Response to Interrogatory No. 2**:

Plaintiff objects to this Interrogatory as unduly burdensome to "describe how each Red Flag Criteria … was created." Plaintiff objects to this Interrogatory to the extent it calls for an expert opinion.  Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 3**:

Your Red Flag Submission identifies "Recurrent Red Flagged Prescriptions," which You describe as "all subsequent prescriptions that are flagged as a result of the initial prescription." Setting aside the initial prescriptions for which You claim one or more Red Flag Criteria were present, identify all subsequent prescriptions for which one or more Red Flag Criteria were independently present.

**Response to Interrogatory No. 3**:

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Plaintiff objects to this Interrogatory as unduly burdensome to "identify all subsequent prescriptions." Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 4**:

Your Red Flag Submission provides: "A total of prescriptions 1,963,312, or 54.2% of the total prescriptions produced, were flagged by at least one Red Flag Criteria. In the absence of due diligence, the subsequent 'Recurrent Red Flagged Prescriptions' bring the number of flagged prescriptions to 2,709,209 or 74.8% of the total prescriptions produced." Describe what You mean by "due diligence" and how You would determine that it was not performed with respect to the "Recurrent Red Flagged Prescriptions" that You identified.

**Response to Interrogatory No. 4**:

Plaintiff objects to this interrogatory to the extent it calls for an expert opinion.  Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waving objections, Plaintiff defines "Due Diligence" to include any and all investigatory materials related to each distribution order, prescription, particular pharmacy's dispensing practices and all documents relating to the decision to hold or ship the order, report the order as suspicious to the DEA or any other governmental body increase the threshold or quota for a particular pharmacy and/or whether to dispense the medication.  Plaintiff also directs Defendants to Plaintiffs' Second Set of Requests for Production to All Chain Pharmacy Defendants. In Request 28, Plaintiff request Defendants to produce all Due Diligence on Red Flag prescriptions.

Subject to and without waving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 5**:

Your Red Flag Submission states that You identified "prescriptions dispensed by Defendants, which were written by prescribers regarding whom Defendants had or should have had actual or constructive notice were engaged in activity indicative of possible or actual diversion and/or were written by prescribers who issued the prescription without a legitimate medical purpose or outside the usual course of professional practice and/or were not authorized to issue controlled substance prescriptions." Describe how You identified each of these prescribers, including without limitation what facts You claim should have provided "actual or constructive notice" to Defendants that those prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions."

**Response to Interrogatory No. 5**:

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26.  Plaintiff also objects to this Interrogatory as overbroad and unduly burdensome in going beyond the scope of even a contention Interrogatory.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

In addition, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s).  Discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 6**:

State whether or not You believe that the 115 prescribers identified in Your Red Flag Submission contributed to the alleged public nuisance that You claim exists.

**Response to Interrogatory No. 6**:

Plaintiff objects to this Interrogatory as an improper contention Interrogatory that is not reasonably calculated to lead to admissible evidence about the contentions actually at issue in the supplemental pleading.  The County is not obligated to make additional allegations about other non-parties.  If the Chain Pharmacies seek to do so, such information should be part of their own discovery responses.

Plaintiff contends, and will prove at trial, that the conduct of each of the Defendants was a substantial factor in creating the public nuisance; it is irrelevant to Plaintiff's claim, and to Defendants' defenses, whether there are other persons whose conduct was also a substantial factor,

because the role of any such additional persons does not absolve Defendants of responsibility for their role.  Or. (MDL Doc. 2572).

Subject to and without waiving any objections, Plaintiff answers that the following entities are and were a substantial factor in creating the public nuisance at issue in this case: the Opioid Manufacturer defendants, the Opioid Distributor defendants, and the Opioid Pharmacy defendants as those terms have been used and are understood in standard practice of this MDL. Specific to CT7 and relevant to this case, Plaintiff identifies CVS, Walgreens, Walmart, Rite Aid, Kroger, and Meijer as substantial factors in creating the public nuisance that is the Opioid Epidemic. Whether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability. *Id.*

**Interrogatory No. 7**:

Identify all current or former employees of the Pharmacy Defendants with whom You have communicated regarding issues relevant to this Action and state whether you have obtained a recorded statement from each such person.

**Response to Interrogatory No. 7**:

Plaintiff objects to this Interrogatory as unduly burdensome to identify "all current or former employees of the Pharmacy Defendants with whom" Plaintiff may have communicated with "regarding issues relevant to this Action". Plaintiff objects to this Interrogatory to the extent it seeks information covered by the law enforcement privilege.  Further, compliance with this Interrogatory would potentially require the disclosure of potentially damaging, and private information regarding persons who were investigated for or questioned about potential misconduct but were not necessarily disciplined, charged, or convicted.  Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

13

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 8**:

Identify all marketing or promotional materials used by any Pharmacy Defendants related to Opioids that you claim contributed to the alleged public nuisance.

**Response to Interrogatory No. 8**:

Plaintiff objects to "identify all marketing or promotional materials used by any Pharmacy Defendants" as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as requiring Plaintiff to identify data sets in the possession, custody and control of Defendants or third parties.

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).  Plaintiff refer Defendants to the supplemental pleading in this case.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 9**:

Identity and describe the role of any consultant or other third party retained by You to investigate, prosecute, regulate, or provide other services related to Opioids.

**Response to Interrogatory No. 9**:

Plaintiff objects to this Interrogatory as vague, overly board, and unduly burdensome to the extent it request Plaintiff to identify "any consultant or other third party retained" to "investigate, prosecute, regulate or provide other services." Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Plaintiff objects to the Interrogatory as premature under the Scheduling Order in this matter. Subject to and without waiving objections, Plaintiff responds it will provide names of trial and expert witnesses pursuant to the CMO already in place.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 10**:

15

For each fiscal year in which You believe any Pharmacy Defendant engaged in conduct that caused or contributed to the public nuisance You believe exists and purportedly needs abatement, identify the amount and source of funding You (or any of Your divisions, departments, agencies, boards, municipalities, or other components) received in connection with each DHHS Program and/or DOJ Program.

**Response to Interrogatory No. 10**:

Plaintiff objects to the over breath terms "DOJ Programs" and "DHHS Programs" as vague and ambiguous.  Plaintiff further, objects to this Interrogatory as premature given the ongoing Plaintiff collections of documents.  Plaintiff objects to the extent that this Request is overbroad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence in a public nuisance abatement action. Plaintiff further objects to this Request to the extent it is cumulative and to the extent seeks documents that are in the public domain and available to Defendants from public sources. Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 11**:

Identify any insurance policies, surety contracts, rights to indemnity or indemnification or other claim in Your favor, or in favor of any of Your divisions, departments, agencies, boards, municipalities, or other components, which provides a source of payment, claim, cause of action or other right against any third party to compensate You (or any of Your divisions, departments, agencies, boards, municipalities, or other components) for any loss related to use or abuse of Opioids.

**Response to Interrogatory No. 11**:

16

Plaintiff objects to this Interrogatory as premature given the ongoing Plaintiff collections of documents.  Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 12**:

Please identify all of your agencies, divisions, employees, representatives, officers, agents, or other acting on Your behalf throughout the Relevant Time Period, that collect and/or retain data concerning the dispensing or sale of prescription drugs, and for each such entity or individual, describe with particularity for what purpose this data is collected and how it is used.

**Response to Interrogatory No. 12**:

Plaintiff objects to this Interrogatory as premature given the ongoing Plaintiff collections of documents.  Plaintiff object to this Interrogatory as unduly burdensome to identify "all of your agencies, divisions, employees, representatives, officers, agents, or other acting" on the Plaintiff's behalf who worked to "collect and/or retain data concerning the dispensing or sale of prescription drugs" during the Relevant Time Period. Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on

documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

Dated:  November 15, 2021                    Respectfully submitted,


By: /s/ Lisa Saltzburg
     Lisa Saltzburg

MOTLEY RICE, LLC

Linda Singer
Elizabeth Smith
Motley Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com
esmith@motleyrice.com
*Attorneys for Montgomery County*

Michael Elsner
Lisa Saltzburg
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
(843) 216-9000
melsner@motleyrice.com
lsaltzburg@motleyrice.com
*Attorneys for Montgomery County*

Mathias H. Heck, Jr.
Montgomery County Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5599
Fax Number: (937) 225-4822
E-mail: heckm@mcohio.org

*Attorney for Montgomery County*

Ward C. Barrentine
Chief Assistant Prosecuting Attorney - Civil
Division
Montgomery County Prosecutor's Office
301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2021, I caused the foregoing to be served via electronic mail on Defendants via Tracks6to10Defendants@bbhps.com.

By: /s/Tammy Rivers

# EXHIBIT 2.3


**Attorneys at Law**

600 Quarrier Street, Charleston, WV 25301
P.O. Box 1386, Charleston, WV 25325-1386
304.347.1100

**Ronda L. Harvey**
rharvey@bowlesrice.com
T 304.347.1701
F 304.347.1746

101 South Queen Street
Martinsburg, WV 25401

125 Granville Square, Suite 400
Morgantown, WV 26501

501 Avery Street
Parkersburg, WV 26101

Post Office Box 390
Wheeling, WV 26003

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, PA 15317

480 West Jubal Early Drive, Suite 130
Winchester, VA 22601

bowlesrice.com

November 24, 2021

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Re:     *In re: National Prescription Opiate Litigation*, MDL 2804, Track 7

Dear Counsel:

I write on behalf of the Pharmacy Defendants in Track 7 regarding Plaintiff Montgomery County's written responses to the Pharmacy Defendants' First Set of Interrogatories and First Set of Requests for Production, which you served on September 20, 2021. While we may have additional issues to raise in the future, many of Plaintiff's responses appear to include improper objections and/or deficient answers that require supplementation or clarification. They are listed below.

**<u>General Objections</u>**

In its responses to the Pharmacy Defendants' document requests, Plaintiff sets forth twenty-five general objections which purport to "apply to each Request." Indeed, with the exception of Request Nos. 9, 28, 31, and 32, Plaintiff specifically incorporates its general objections into each of its responses, all of which contain the phrase "[i]n addition to its General Objections."

Plaintiff appears to object to nearly every document request on the bases that they: (1) are "overly broad, vague, unduly burdensome," "not proportional to the needs of the case," or "seek information that is not relevant to any party's claim or defense" (General Objections 1, 15-16, 18, 21-22); "require Plaintiff to produce documents that are in the public domain or are otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff" (General Objections 5, 19); seek documents covered by a host of privileges (General Objection 7); seek "protected health information" (General Objection 17); and "contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner" (General Objections 20-21). Plaintiff also notes that the phrase "[s]ubject to and without waiving its objections"—which appears in each response, except the response to Request No. 7—means that Plaintiff is responding to the request "as it may be narrowed by its general and specific objections" (General Objection 8).

Bowles Rice

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
November 24, 2021
Page 2

The use of general objections in this manner is improper and makes it virtually impossible for the Pharmacy Defendants to determine what documents Plaintiff is and is not agreeing to produce. A party must state its objections to each request with specificity and whether it is withholding documents on the basis of its objections. FED. R. CIV. P. 34(b)(2)(B)-(C). The Pharmacy Defendants are entitled to a clear statement identifying each specific objection that Plaintiff claims is applicable to each request. Please clarify whether you claim that any general objection not explicitly restated in a response is applicable and, if so, identify each such objection that you contend applies to each particular document request and whether you are withholding documents on that basis.

Similarly, in its responses to the Pharmacy Defendants' interrogatories, Plaintiff sets forth twenty-five essentially identical general objections which purport to "apply to each Interrogatory." Once again, a party must state its objections to each interrogatory with specificity. FED. R. CIV. P. 33(b)(4). Please clarify whether you claim that any general objection not explicitly restated in a response is applicable and, if so, identify each such objection that you contend applies to each particular interrogatory.

In addition to the overarching problems identified above, General Objection 9 provides: "Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase 'as are within Plaintiff's possession, custody, or control' *and* which constitute the records of, or that *belong to*, the County or its departments." The applicable rule requires a responding party to produce non-objectionable, responsive documents in its "possession, custody, or control" without further qualification. *See* FED R. CIV. P. 34(a)(1). Nonetheless, the above quoted language can be construed to modify and limit the scope of the phrase "possession, custody, and control," which would be inconsistent with Rule 34(a)(1). Please clarify whether Plaintiff intends to limit its production based on this objection.

### Objections to Definitions and Instructions

***Definition of Plaintiff.*** Plaintiff objects to the definition of "Plaintiff" or "You" identified in the Pharmacy Defendants' discovery requests, and proposes what appears to be an artificially narrow definition in response. Specifically, the introductory paragraph in Plaintiff's responses define "Plaintiff" or "County" as the "Montgomery County Board of County Commissioners." In the first paragraph of Plaintiff's Objections to Definitions and Instructions, Plaintiff then purports to limit the scope of its responses to the "Plaintiff entity that is named as Plaintiff in this litigation" and further responds that it only will produce documents belonging to the "County or its departments."

As written, this language narrows the definition of "County" to the "Montgomery County Board of County Commissioners" and its "departments." A review of the Montgomery County website, however, reveals that county government consists not only of the Board of County Commissioners and various county departments, but also other elected officials, county courts, and county agencies (e.g., Montgomery County ADAMHS Board). Please clarify whether you intended to exclude these county representatives from the definition of Plaintiff as used in your responses.

Bowles Rice

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
November 24, 2021
Page 3

*Relevant Time Period*.  Plaintiff objects to the definition of "Relevant Time Period" identified in the Pharmacy Defendants' discovery requests, stating in the fourth paragraph of its Objections to Definitions and Instructions that "Plaintiff will respond in accordance with *Discovery Ruling 3* and assumes no further obligation."  Yet, Plaintiff does not identify the specific time period it believes is applicable to the Pharmacy Defendants' discovery requests.  Please clarify the specific time period that you contend is applicable.

## Responses to Specific Interrogatories

*Interrogatory No. 1*:  This interrogatory asked Plaintiff to "Identify each prescription for a Prescription Opioid or Cocktail Medication that you contend was diverted."  Plaintiff responded with a litany of objections, then stated that it "intends to show that a significant number of prescriptions filled by Defendants were diverted" citing in part to "Section D.2 of the CMO," which refers to Plaintiff's purported "red-flagged" prescription analysis.  Although Section D.2 of the Track 7 CMO required Plaintiff to identify what it considers to be "Red Flagged Prescriptions," it says nothing about diversion, which is the subject of this interrogatory.  Is it your contention that every red-flagged prescription identified by Plaintiff pursuant to Section D.2 of the CMO was diverted?

*Interrogatory No. 11*:  This interrogatory asked Plaintiff to "Identify each prescription for a Prescription Opioid or Cocktail Medication dispensed by a Pharmacy Defendant during the Relevant Time Period in the Geographic Area that You contend should not have been dispensed because it was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice and that caused the alleged damage, nuisance, or other harm for which You seek to recover in this case."  Once again, Plaintiff responded with a litany of objections and then cited to its submission in response to "Section D.2 of the CMO."  Yet, again, while Section D.2 of the CMO required Plaintiff to identify what it considers to be "Red Flagged Prescriptions," it says nothing about the medical necessity of such prescriptions, which is the subject of this interrogatory.  Is it your contention that every red-flagged prescription identified by Plaintiff pursuant to Section D.2 of the CMO was not for a legitimate medical purpose?

*Interrogatory No. 13*:  This interrogatory asked Plaintiff to "Identify all Persons and entities whose conduct You believe was a substantial factor in creating the alleged public nuisance and state the bases for such belief, including: Opioid Manufacturers; Opioid Distributors (not including self-distributors); FDA; DEA; Ohio Board of Pharmacy; Healthcare Providers; internet pharmacies; pill mills; independent (non-chain) pharmacies; criminal actors; patients; drug abusers; and insurance companies."  Plaintiff responded by listing the Pharmacy Defendants (along with drug manufacturers and distributors) and claiming that "[w]hether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability."  This response is improper.  Plaintiff cannot simply list the entities it has sued, and while the contribution of others to the alleged public nuisance may be irrelevant to Plaintiff, it is relevant to the Pharmacy Defendants' defenses in this case.  If Plaintiff believes others were a substantial factor in creating the alleged public nuisance, it must identify them.  If not, Plaintiff should clearly say so.

Bowles Rice

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
November 24, 2021
Page 4

*Interrogatory No. 16*: This interrogatory asked Plaintiff to "Identify all Healthcare Providers that You allege wrote a prescription for Prescription Opioids that was not medically necessary during the Relevant Time Period that were filled at a pharmacy in the Geographic Area." Plaintiff refused to provide a substantive response, primarily on the basis that proof of "whether particular providers wrote prescriptions that were not 'medically necessary'" is not needed to establish Plaintiff's claims. This interrogatory did not ask what evidence Plaintiff believes is or is not necessary to prove its claims. Rather, it asked Plaintiff to identify any prescribers during a certain time period who wrote a prescription for an opioid medication that was not medically necessary and that was filled at a pharmacy in Montgomery County—information that plainly is relevant to the Pharmacy Defendants' defenses in this case. If Plaintiff can identify any such information, it must do so. If Plaintiff is unable to identify any such information, it should clearly say so.

*Interrogatory Nos. 3, 5, 12, 15, and 17-20*: Plaintiff ultimately answered each of these interrogatories with the same stock response, agreeing to "produce non-privileged documents maintained in the ordinary course of business and that could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d)." These responses are improper. If Plaintiff wishes to rely on the option to produce business records rather than provide a narrative response to these interrogatories, it must specify which records contain the responsive information and make those records available to the Pharmacy Defendants for review without further delay. *See* FED. R. CIV. P. 33(d)(1)-(2). It is not sufficient for Plaintiff to put off its substantive responses by referring to some vague future production tied to "agreed upon search terms on agreed custodians."

## Responses to Specific Document Requests

*Request No. 3*: This request seeks "[a]ll Documents reflecting or relating to any pharmacy or pharmacist's cooperation, assistance, and/or participation in any inspection, audit, investigation, or enforcement action (including enforcement actions related to fines, suspensions, revocations, and letters or other formal warnings or notices) against any pharmacy, pharmacist, doctor or other prescriber, or individual relating to the distribution, dispensing, failure to dispense, diversion, or misuse of Prescription Opioids or Cocktail Medications." You offered to meet and confer regarding this request and we are willing to do so. Please be advised, however, that the Pharmacy Defendants do not agree to the "sampling" you propose. The documents requested are centrally relevant to the issues in this case and the production of similar documents was not limited to sampling in prior tracks. We ask that Plaintiff produce these documents as requested.

*Request No. 4*: This request seeks "[i]nvestigation files for any physician, healthcare provider, pharmacy, or pharmacist employee who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the physician's or provider's prescribing or dispensing of Prescription Opioids or Cocktail Medications." Your proposal to provide only a "sampling" of the requested documents is not acceptable to the Pharmacy Defendants. The documents requested are centrally relevant to the issues in this case and the production of similar documents was not limited to sampling in prior tracks. Indeed, these documents were required to be produced along with Plaintiff's Fact Sheet and they were not. (*See* Sections I.B.4 and II.3.) Thus, we do not believe

Bowles Rice

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
November 24, 2021
Page 5

it is necessary to meet and confer about this request and we ask that Plaintiff produce these documents as required without further delay.

*Request No. 5*:  This request seeks "[a]ll Documents relating to potential or alleged misuse, diversion, improper dispensing, improper distribution, failure to dispense, violation of state or federal law or regulation, or any wrongful conduct related to Prescription Opioids or Illicit Drugs, including Your efforts to identify, address, detect and prevent Prescription Opioid or Illicit Drug misuse, diversion, or injury."  Again, you offered to meet and confer regarding this request and we are willing to do so.  But, again, the Pharmacy Defendants do not agree to the "sampling" you propose.  Much like the other categories of documents addressed above, the documents requested are centrally relevant to the issues in this case and the production of similar documents was not limited to sampling in prior tracks.  We ask that Plaintiff produce these documents as requested and also that you specifically identify which "law enforcement databases" Plaintiff is searching to obtain them.

*Request No. 7*:  This request seeks "[a]ll Documents from the Relevant Time Period relating to the medical necessity and/or legitimate need for Prescription Opioids."  Plaintiff improperly objects to producing these documents.  As indicated by the Fact Sheet itself, the relevance of these documents is plain.  (*See* Section I.B.2.)  You also likely are aware that in Track 3, Special Master Cohen ordered the plaintiffs to identify (1) all prescriptions they alleged were not for a legitimate purpose, (2) all prescriptions they alleged had been diverted, and (3) all prescriptions they alleged caused them harm.  This request is consistent with Special Master Cohen's prior order and we ask that Plaintiff produce the requested documents.

*Request No. 11*:  This request seeks "[a]ll Documents reflecting or relating to complaints, investigations, problems, disciplinary action, concerns relating to, or harm resulting from, the refusal or failure of a pharmacist, pharmacy intern, pharmacy technician, or other pharmacy employee or dispenser to dispense Prescription Opioids."  You offered to meet and confer regarding this request and we are willing to do so.  Please be advised, however, that the Pharmacy Defendants do not agree to the "sampling" you propose.  The documents requested are centrally relevant to the issues in this case and the production of similar documents was not limited to sampling in prior tracks .  We ask that Plaintiff produce these documents as requested.

*Request No. 19*:  This request seeks "[a]ll Documents from the Relevant Time Period related to Opioid cases handled by crime labs in the Geographic Area."  We appreciate your offer to meet and confer about "running search terms on the crime lab database," and we are prepared to have that discussion with you.  We reiterate, however, that the Pharmacy Defendants do not believe that the "sampling" you propose is appropriate.

*Request No. 20*:  This request seeks "[a]ll Documents relating to investigations or efforts to discover or address whether any known overdose was related to the ingestion of Opioids, including medical, medical examiner, coroner, forensic pathology, toxicology records, any Documents reflecting the policies or procedures for conducting such investigations, any Documents concerning the actual or suspected source of the ingested Opioids, and any Documents reflecting Your efforts to compile or track statistics regarding fatal or non-fatal overdoses involving Opioids or Illicit Drugs."  You offered to meet and confer regarding this request and we are willing to do so.  Your proposal to provide only

Bowles Rice

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
November 24, 2021
Page 6

a "sampling" of the requested documents, however, is not acceptable to the Pharmacy Defendants.  The documents requested are critical to evaluating the potential causes of overdoses in Montgomery County and they must be produced as they were in prior tracks.  We note from documents attached to Plaintiff's Fact Sheet that, since at least 2010, the Montgomery County Coroner's office has been compiling and sending many of the documents being requested to others with whom it collaborates in preparing annual Montgomery County Poisoning Death Review Reports, so the burden of producing similar information to the Pharmacy Defendants should not be extensive.  We ask that Plaintiff produce these documents as requested.

   *Request Nos. 21, 22 and 23*:  These requests seek production of "[a]ll documents in your possession, custody, or control relating to any prescription disposal program You have formed, funded, operated, or participated in"; "[a]ll documents in your possession, custody, or control relating to addiction treatment programs that you have formed, funded, operated, or participated in, including but not limited to those You identified in your 3/6/19 PFS"; and "[a]ll documents in your possession, custody, or control relating to any drug abuse prevention or education programs related to Prescription Opioids that You provided, operated, or funded, including but not limited to those identified in your 3/6/19 PFS."  Plaintiff referred the Pharmacy Defendants to its responses to Request Nos. 2 and 5.  Please confirm that the documents Plaintiff intends to produce in response to Request Nos. 2 and 5 will cover all documents responsive to these requests including, without limitation, documents related to prescription disposal programs, addiction treatment programs, and drug abuse prevention or education programs "funded" or "operated" by Plaintiff.  If not, please produce any such documents in response to Request Nos. 21, 22, and 23.

   *Request No. 27*:  This request seeks production of "[a]ll Documents relating to Your efforts to recover expenditures related to Prescription Opioid or Illicit Drug addiction, misuse, abuse, or overdose in the Geographic Area from any Person, including (without limitation) insurers, government entities, manufacturers, pharmacists, pharmacies, Healthcare Providers, clinics, drug dealers, drug traffickers, or drug trafficking organizations."  After setting forth a litany of objections, Plaintiff refers the Pharmacy Defendants to the ". . . pleadings in this MDL."  Please provide written confirmation that Plaintiff does not have possession, custody, or control over any other documents responsive to this request or clarify whether Plaintiff simply is refusing to produce additional documents in response to this request.

   *Request Nos. 33 and 34*:  These requests seek "[a]ll agreements between You and any Defendant in this Action or other lawsuits related to Opioids regarding settlement or resolution of any claims, release or discharge of any liability, or payment of any funds or provision of other items of value, including all related agreements, terms sheets, memoranda of understanding, releases and agreements under the Ohio Governor's OneOhio plan" as well as "[a]ll Documents related to any actual or proposed agreement to settle, dismiss, discontinue, or not pursue litigation related to Opioids against any Person or entity, including any doctor, sales representative, Healthcare Provider, pharmacist, or pharmacy."  After stating several objections, Plaintiff states that it will "produce two resolutions passed concerning OneOhio and refers Defendants to settlement agreements readily available to them on the internet at https://nationalopioidsettlement.com/."  Please provide written confirmation that Plaintiff does not have possession, custody, or control over any other documents responsive to these requests

Bowles Rice

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
November 24, 2021
Page 7

or clarify whether Plaintiff simply is refusing to produce additional documents in response to these requests.

### Prior Meet and Confer

On our meet and confer call on November 1, 2021, you committed to considering the issues we discussed regarding Montgomery County's list of document custodians and providing a written response on those issues.  You also agreed to provide us with a letter or email outlining any issues Plaintiff may have with the Pharmacy Defendants' proposed search terms.  We ask that you do so as soon as possible so that the parties can work to resolve those issues or, if necessary, raise them with Special Master Cohen.

In addition, in its responses to numerous of the Pharmacy Defendants' document requests, Plaintiff stated that it only will produce documents "after running agreed upon search terms on agreed custodians."  On our call, you indicated that Plaintiff's intent is to apply the search terms only to the email files of the agreed upon custodians and not to any other email sources, but that other non-email custodial sources and non-custodial sources also would be searched.  The Pharmacy Defendants are concerned that this plan is insufficient to adequately capture the documents that they requested and that Plaintiff is obligated to produce in this case.  In order to more fully evaluate this issue, we reiterate our request that Plaintiff identify the non-custodial sources that it intends to search.

\*     \*     \*

Please provide a written response to this letter by no later than Friday, December 3, so that the parties can schedule a meet and confer call promptly thereafter to discuss any issues that remain in dispute and, if necessary, prepare to raise them with the Special Master.

Sincerely,

Ronda L. Harvey

cc:  Counsel for the Pharmacy Defendants in MDL Track7

13274030.1

# EXHIBIT 2.4

| | |
|---|---|
| **From:** | Jennifer Hagedorn <jhagedorn@bowlesrice.com> |
| **Sent:** | Tuesday, December 7, 2021 5:09 PM |
| **To:** | Mailing List - Tracks 6 to 10 defendants; 2804 Discovery, MDL |
| **Subject:** | RE: Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 11-24-21 |
| **Attachments:** | Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 11-24-21.PDF |

**\*\* External mail \*\***

Good evening: The Pharmacy Defendants wanted to follow up to determine when we can expect to receive a response to the issues raised in our letter circulated on November 24, 2021 (attached here) and the written response promised related to the issues discussed on our November 1 meet and confer call. Thank you.

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Wednesday, November 24, 2021 6:08 PM
**To:** Mailing List - Tracks 6 to 10 defendants <tracks6to10defendants@bbhps.com>; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>
**Cc:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Subject:** Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 11-24-21

Counsel: Please see the attached. Thank you.

**Jennifer B. Hagedorn**
Bowles Rice LLP
jhagedorn@bowlesrice.com
1800 Main Street, Suite 200 | Canonsburg, PA 15317
Tel: (724) 514-8940 | Fax: (724) 514-8954
Bio | vCard

**Bowles Rice**

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

**EXHIBIT 2.5**

| | |
|---|---|
| **From:** | Saltzburg, Lisa M. <lsaltzburg@motleyrice.com> |
| **Sent:** | Tuesday, December 21, 2021 2:42 PM |
| **To:** | Jennifer Hagedorn; Fu, Abigail; alex.harris@bartlitbeck.com |
| **Cc:** | Ward C. Barrentine (BarrentinW@mcohio.org); Heck, Mathias; CT7-11 |
| | _OpioidBWTeam@simmonsfirm.com; tracks6to10defendants@bbhps.com; Rivers, Tammy |
| **Subject:** | RE: Montgomery Count CT7 Custodians and Search Terms |

**\*\* External mail \*\***

Hi Jennifer,

I believe Defendants had agreed to copy individual counsel for the bellwether jurisdictions on correspondence such as this, to ensure receipt.  Could you all please make sure to direct any future letters to us individually (at least to me and Mike Elsner) as well as to the listserv?  I'm not seeing an email from you on Dec. 7, but welcome you to forward it if it includes anything additional on which Defendants seek a response – apologies if this was missed.  We are not able to respond tomorrow given the holiday schedules, but will aim to send a response letter next week.

Best wishes for the holiday,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Friday, December 17, 2021 11:33 AM
**To:** Fu, Abigail <afu@motleyrice.com>; alex.harris@bartlitbeck.com
**Cc:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Ward C. Barrentine (BarrentinW@mcohio.org)
<BarrentinW@mcohio.org>; Heck, Mathias <HeckM@mcohio.org>; CT7-11_OpioidBWTeam@simmonsfirm.com;
tracks6to10defendants@bbhps.com; Rivers, Tammy <tcrivers@motleyrice.com>
**Subject:** RE: Montgomery Count CT7 Custodians and Search Terms

CAUTION:EXTERNAL

Lisa:

The Pharmacy Defendants are in receipt of your correspondence regarding document custodians and search terms.  We will review it and respond in due course.  In the meantime, as you know, we sent you a letter on November 24 (attached here again) in which we outlined issues related to Montgomery County's discovery responses dated September 20, 2021.  It has been nearly a month, and we have not received a response to that letter.  I followed up with you regarding our letter by email on December 7, but you did not respond.  We ask that you provide a written response to the issues raised in our letter by Wednesday, December 22, so that we can keep discovery moving forward and schedule a meet and confer call if necessary.

Thank you, Jennifer

---

**From:** Fu, Abigail <afu@motleyrice.com>
**Sent:** Friday, December 17, 2021 12:16 PM
**To:** alex.harris@bartlitbeck.com
**Cc:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Ward C. Barrentine (BarrentinW@mcohio.org) <BarrentinW@mcohio.org>; Heck, Mathias <HeckM@mcohio.org>; CT7-11_OpioidBWTeam@simmonsfirm.com; tracks6to10defendants@bbhps.com; Rivers, Tammy <tcrivers@motleyrice.com>
**Subject:** Montgomery Count CT7 Custodians and Search Terms

Dear Counsel,

Please see attached correspondence.

Thank you,
Abby

**Abigail Fu** | Sr. Litigation Project Manager | Motley Rice LLC
401 9th St. NW, Suite 1001 | Washington, DC 20004 | afu@motleyrice.com
c. 202.309.5559 | f. 202.386.9622

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**Jennifer B. Hagedorn**
Bowles Rice LLP
jhagedorn@bowlesrice.com
1800 Main Street, Suite 200 | Canonsburg, PA 15317
Tel: (724) 514-8940 | Fax: (724) 514-8954
Bio | vCard

Bowles Rice

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

# EXHIBIT 2.6

| | |
|---|---|
| **From:** | David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law> |
| **Sent:** | Friday, January 7, 2022 1:00 PM |
| **To:** | Alex Harris; Saltzburg, Lisa M. |
| **Cc:** | Elsner, Mike; Fu, Abigail; Mailing List - Tracks 6 to 10 defendants; ct7-11_opioidbwteam@simmonsfirm.com |
| **Subject:** | Re: Track 7 - Montgomery County Discovery Delays |

** External mail **

Defendants' request is granted.

Montgomery County ('MC') shall respond as soon as possible and no later than next Friday, January 14.

Specifically, MC shall: (1) respond to Defendants' November 24 deficiency letter; (2) identify any Montgomery County law enforcement officers who are or have been members of a DEA/HIDTA task force; and (3) identify a minimum of 2 custodians from the Montgomery County Prosecutor's Office who regularly prosecute narcotic-related offenses.  MC shall also: (4) either (a) add as custodians the three individuals listed above whom Plaintiff has identified as persons with knowledge; or (b) explain why it believes adding any of them is not appropriate.

-d

========================
This email sent from:
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122
216-831-0001 tel
866-357-3535 fax
www.SpecialMaster.law

---

**From:** Alex Harris <alex.harris@bartlitbeck.com>
**Sent:** Friday, January 7, 2022 12:50 PM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Cc:** Elsner, Mike <melsner@motleyrice.com>; Fu, Abigail <afu@motleyrice.com>; Mailing List - Tracks 6 to 10 defendants <tracks6to10defendants@bbhps.com>; ct7-11_opioidbwteam@simmonsfirm.com <ct7-11_opioidbwteam@simmonsfirm.com>; David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law>
**Subject:** Track 7 - Montgomery County Discovery Delays

Lisa,

The Track 7 Defendants served Montgomery County with a deficiency letter before the Thanksgiving holiday and have still not received any response.  We followed up multiple times in December.  On Tuesday, December 21, you stated that you'd aim to get us a response "next week."  That did not happen, and we've now been waiting more than 6 weeks.

This has been a troubling pattern for Montgomery County.  Requests for custodians and basic information that Defendants made 3.5 months ago—back in September 2021—have been met with delay and puzzling refusals:

- In September, Defendants asked Plaintiff to identify "any Montgomery County law enforcement officers [who] are/have been members of a DEA/HIDTA task force."  As you surely know, discovery from the files and depositions of such task force members has been critically relevant in prior tracks.  Yet after waiting nearly 3 months even to provide a response, Plaintiff stated in a December 17 letter that it is "still considering [the] request."

- In that same September request, Defendants asked Plaintiff to identify custodians from the Montgomery County Prosecutor's Office involved in prosecuting narcotics cases.  After nearly 3 months of delay, and despite extensive and relevant discovery from the files and depositions of prosecutors in prior tracks, Plaintiff has refused "to add any prosecutors as custodians" and purports to limit all discovery from the Prosecutor's Office to a "CourtView" database that by Plaintiff's own admission simply "tracks cases and assignments and status of the cases."

- Montgomery County has likewise refused to add as custodians numerous individuals that Plaintiff itself identified as "persons with knowledge" of its claims (either in Plaintiff's Fact Sheet or in response to Defendants' Track 7 Interrogatories) including Phil Plummer, who served as the Sheriff of Montgomery County from 2008-2018; Tom Kelley, who serves as the Assistant County Administrator for Human Services, with oversight over the department of Job and Family Services; and Mary Kay Stirling, who serves as the Director of Case Management for the Montgomery County Court of Common Pleas and is a member of the Community Overdose Action Team.

The deadline for substantial completion of document production is just 2 months away on March 11.  The close of party fact discovery is May 6.  The parties cannot meet the deadlines in the CMO when Montgomery County repeatedly delays responding to Defendants' requests and deficiency letters and takes positions that are unreasonable.

Defendants hereby reiterate their longstanding requests that Montgomery County **(1)** respond to Defendants' November 24 deficiency letter; **(2)** identify any Montgomery County law enforcement officers who are or have been members of a DEA/HIDTA task force; **(3)** identify a minimum of 2 custodians from the Montgomery County Prosecutor's Office who regularly prosecute narcotic-related offenses; and **(4)** add as custodians the three individuals listed above whom Plaintiff has identified as persons with knowledge.  **Special Master Cohen**, Defendants respectfully request that Montgomery County be ordered to respond as soon as possible and no later than next Friday, January 14.

Defendants will respond separately by letter to address in more detail the other issues raised in Montgomery County's December 17 correspondence concerning document custodians and search terms.

BartlitBeck LLP

Alex J. Harris | p: 303.592.3197 | c: 503.347.1652 | Alex.Harris@BartlitBeck.com | 1801 Wewatta Street, Suite 1200, Denver, CO 80202

This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.

# EXHIBIT 2.7



**Attorneys at Law**

101 South Queen Street
Martinsburg, WV 25401

125 Granville Square, Suite 400
Morgantown, WV 26501

600 Quarrier Street, Charleston, WV 25301
P.O. Box 1386, Charleston, WV 25325-1386
304.347.1100

501 Avery Street
Parkersburg, WV 26101

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, PA 15317

**Ronda L. Harvey**
rharvey@bowlesrice.com
T 304.347.1701
F 304.347.1746

480 West Jubal Early Drive, Suite 130
Winchester, VA 22601

bowlesrice.com

January 13, 2022

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Re: *In re: National Prescription Opiate Litigation, MDL 2804,* Track 7

Dear Counsel:

I write on behalf of the Pharmacy Defendants in Track 7 regarding deficiencies in Plaintiff's Responses and Objections to the Pharmacy Defendants' Second Set of Interrogatories, which you served on November 15, 2021.  Without waiving the right to raise additional issues in the future, the deficiencies are listed below.

## **General Objections**

Plaintiff sets forth 26 general objections which purport to "apply to each Interrogatory." However, a party must state its objections to each interrogatory with specificity.  FED. R. CIV. P. 33(b)(4).  Please clarify whether you claim that any general objection not explicitly restated in a response is applicable and, if so, identify each such objection that you contend applies to each particular interrogatory.

## **Objections to Definitions and Instructions**

***Definition of Plaintiff.***  Plaintiff incorporates its prior objections to the definition of "Plaintiff" or "You" identified in the Pharmacy Defendants' discovery requests.  Previously, Plaintiff proposed what appeared to be an artificially narrow definition.  Specifically, the introductory paragraph in Plaintiff's prior responses defined "Plaintiff" or "County" as the "Montgomery County Board of County Commissioners."  In the first paragraph of Plaintiff's prior Objections to Definitions and Instructions, Plaintiff then purported to limit the scope of its responses to the "Plaintiff entity that is named as Plaintiff in this litigation" and further responded that it only will produce documents belonging to the "County or its departments."  This language narrows the definition of "County" to

Bowles Rice

January 13, 2022
Page 2

the "Montgomery County Board of County Commissioners" and its "departments."  A review of the Montgomery County website, however, reveals that county government consists not only of the Board of County Commissioners and various county departments, but also other elected officials, county courts, and county agencies (*e.g.*, Montgomery County ADAMHS Board).  We ask you again to clarify whether you intended to exclude these county representatives and agencies from the definition of Plaintiff as used in your responses.

*Relevant Time Period.* Plaintiff incorporates its prior objections to the definition of "Relevant Time Period" identified in the Pharmacy Defendants' discovery requests.  Plaintiff proposed in the fourth paragraph of its prior Objections to Definitions and Instructions that "Plaintiff will respond in accordance with Discovery Ruling 3 and assumes no further obligation." Yet, Plaintiff does not identify the specific time period it believes is applicable to the Pharmacy Defendants' discovery requests.  We ask you again to clarify the specific time period that you contend is applicable.

## Responses to Specific Interrogatories

*Interrogatory No. 5*:  This interrogatory focused on a specific statement made in Your Red Flag Submission, in which you identify certain prescriptions "written by prescribers regarding whom Defendants had or should have had actual or constructive notice were engaged in activity indicative of possible or actual diversion and/or were written by prescribers who issued the prescription without a legitimate medical purpose or outside the usual course of professional practice and/or were not authorized to issue controlled substance prescriptions."  Specifically, we asked you to describe how you identified those prescribers and what facts you claim should have provided "actual or constructive notice" to Defendants that those prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions."

You responded with a number of objections, among other things, by referring Defendants back to the Red Flag Submission in which the statement was made and claiming that the interrogatory prematurely seeks expert opinions.  Your objections are meritless.  This interrogatory seeks the facts (if any) that support the affirmative statement made in your submission.  If you are aware of any facts that support your statement, you must disclose them.  If you are not currently aware of any such facts, you should clearly say so.

*Interrogatory No. 6*:  This interrogatory asked Plaintiff to "State whether or not You believe that the 115 prescribers identified in Your Red Flag Submission contributed to the alleged public nuisance that You claim exists."  Plaintiff responded by listing the Pharmacy Defendants (along with drug manufacturers and distributors generally) and claiming that "[w]ether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability."  This response is improper. Plaintiff cannot simply list the entities it has sued, as the contribution of others to the alleged public nuisance is relevant to the Defendants' defenses in this case.  If Plaintiff believes any of the 115 prescribers it identified contributed to the alleged public nuisance, Plaintiff must say so.  If not, Plaintiff should clearly say that instead.

Bowles Rice

January 13, 2022
Page 3

*Interrogatory Nos. 7, 8, 9, 10, 11, and 12*:  Plaintiff ultimately answered each of these interrogatories with the same stock response, agreeing to "produce non-privileged documents maintained in the ordinary course of business and that could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d)."  These responses are improper.  If Plaintiff wishes to rely on the option to produce business records rather than provide a narrative response to these interrogatories, it must specify which records contain the responsive information and make those records available to the Pharmacy Defendants for review without further delay.  *See* FED. R. CIV. P. 33(d)(1)-(2).  It is not sufficient for Plaintiff to put off its substantive responses by referring to some vague future production tied to "agreed upon search terms on agreed custodians."

\*       \*       \*

You should consider the above as additions to the list of outstanding issues and deficiencies related to Montgomery County's written discovery responses including the issues discussed on our November 1 meet and confer call and the issues raised in our November 24 discovery deficiency letter.

Sincerely,

Ronda L. Harvey

RLH/kd

13376708.1

# EXHIBIT 2.8

**MotleyRice**
®
LLC
ATTORNEYS AT LAW
www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**o.** 843.216.9000  **f.** 843.216.9450

**Lisa M. Saltzburg**
*Licensed in CO, SC*
direct: 843.216.9630
lsaltzburg@motleyrice.com

January 14, 2022

**COUNSEL FOR TRACK 7 PHARMACY DEFENDANTS**

**VIA E-MAIL**

Rhonda Harvey
Bowles Rice LLP
600 Quarrier Street
Charleston, West Virginia 25301
rharvey@bowlesrice.com

Re:     ***Montgomery County v. Cardinal Health, Inc., et al.***, **Case No. 1:18-op-46326-DAP,**
**Defendants' Letter re County's Responses to Defendants' First Set of Interrogatories**
**and First RFPs**

Counsel:

We write in response to your letter of November 24, 2021 (to the extent not mooted by
separate correspondence) and in follow up to our earlier meet and confer and communications
concerning the County's responses to Defendants' First Set of Interrogatories and First Set of
Requests for Production (RFPs), and pursuant to Special Master Cohen's directive on January 7, 2022.

**General Objections:**

We are puzzled by your letter concerning general objections.  The use of such objections is
both appropriate and consistent with prior practice in this MDL.  Further, the types of objections
Defendants reference, such as lack of proportionality, parallel the same types of objections Defendants
routinely make throughout their own responses.  *See, e.g.*, Rite Aid's Objections and Responses to
Plaintiff's Requests for Production to Chain Pharmacy Defendants in Prior MDL Cases (raising 20
general objections following a 5-paragraph "preliminary statement"); Walmart's Objections and
Responses to Plaintiff Montgomery County's Interrogatories to Chain Pharmacy Defendants
(asserting twenty-six general objections). In response to Defendants' Interrogatories and RFPs, they
are in fact necessary given the sweeping nature of the discovery requests and failure to tie them to the
issues in the case.  Regardless, in each instance, the County has asserted specific objections and also
identified the response being provided. We do not believe it is the best use of the Parties' time to
object to a form of response that has become standard practice over the past four years and was
employed in CT3.  Rather, if Defendants' have a genuine question about a particular response, they
may seek to confer, and the Parties can focus on productively moving the discovery forward.



January 14, 2022
Page 2

To the extent Defendants raise any specific issue, it appears to be with General Objection Number Nine, which relates to the definition of the Plaintiff in this case.  This objection is fully consistent with the Federal Rules of Civil Procedure and provides that Defendants must seek documents outside the County's possession, custody, and control from sources other than the County. For avoidance of doubt, the County makes clear that such materials include those in possession of the County and its departments.  If Defendants believe there is a specific agency or department that is not included, they may seek to confer about this issue. Additionally, the County notes that, although not obligated to do so, as the material is outside its possession, custody, and control, it is undertaking to subpoena claims data to facilitate the forward progress of discovery.

**Objections to Definitions and Instructions:**

Definition of Plaintiff: We believe this aspect of your letter is separately addressed in our letter of December 17, 2021 with respect to custodians.  We do not understand the request, for example, for files of elected officials, and have advised that the County will add custodians from ADAMHS.

Relevant Time Period: Discovery Ruling No. 3 (Doc. 762) provides that the relevant time period is 2006 forward.  That is the period that applies to the County's responses. The County objects to any attempt to impose a temporal scope of discovery that is not reciprocal to that being employed by Defendants in their own productions.  We believe this is already clear in the Objections and Responses.  As a practical matter, the County is searching certain files and producing documents from 1996 forward where such documents exist, which is outside the temporal scope of Discovery Ruling No. 3, but it has no obligation to do so.  Rather, the Discovery Ruling No. 3 sets the parameters for the temporal scope of discovery. In addition, the County's claims data is available back to 2008 for employee benefits, and 2014 for workers compensation.

**Interrogatory Responses:**

Interrogatories Nos. 1 & 11: As set forth in the County's responses and objections, Defendants lack the right to dictate how the County proves its case.  The County has no obligation to prove its public nuisance claim through a prescription-by-prescription discussion of individual prescriptions that were not written for a legitimate medical purpose or were diverted.  Further, attempts to argue otherwise are not new, and the Case Management Order ("CMO") governing this case already addresses the prescription-level information to be provided to Defendants.  As such, the County's responses appropriately reference that it will provide the information called for by the CMO as part of *fact*, rather than *expert* discovery, through its identification of "red flag" prescriptions.  It is not obligated to do otherwise, and Defendants' argument to the contrary is, in effect, an attempt to rewrite the CMO after the fact.  Nevertheless, Plaintiff will provide some specific examples after Defendants produce their due diligence fields and notes fields. As set forth in the discovery response, Plaintiff intends to show that significant numbers of prescriptions filled by Defendants were diverted, but is not obligated to



January 14, 2022
Page 3

identify, or even to know, each and every such prescription.  Plaintiff also identified in its Response to Interrogatory No. 1, incorporated into its response to Interrogatory No. 11 as well, a list of prescribers who were the subject of disciplinary actions for their illegal or improper prescribing of opioids.  "Prescriptions" from these prescribers may also serve as examples.  To date, Defendants have not provided any jurisdiction specific discovery other than its distribution and dispensing data.  We will update this response when you provide sufficient discovery responses.

Interrogatory No. 13: Defendants do not dispute that this Interrogatory is irrelevant to the County's claims in this case. As this is a *contention* interrogatory, that ends the matter.  The County has more than fully responded to this Interrogatory by identifying the entities it has identified, and sought to hold responsible, in litigation.  Defendants cannot compel it to make additional allegations that are not at issue.  Further, Defendants' arguments that they desire the County allege that others are at fault is not, as Defendants suggest, pertinent even to their own purported defenses.  Whether a third-party is also a substantial factor would not negate evidence, or even allegations, of Defendants' own fault. Further, Defendants are jointly and severally liable.  The County is not alleging, and need not allege, that any particular Pharmacy Defendant is solely responsible, and the Court struck the Defendants' Third Party Complaint. (Doc. 4173). Even assuming, hypothetically, that they were to attempt to assign responsibility to a third party, *they* would need to plead and prove those allegations for themselves.  The County has no obligation to make claims for them, nor would such an allegation substitute for proof.

Interrogatory No. 16:  Track 7 includes no False Claims Act causes of action or other claims to which allegations about whether a prescription is "medically necessary" would have any relevance. Defendants make no attempt to define that phrase for purposes of this Interrogatory.  Nor do Defendants explain how allegations that a claim did or did not fit a particular payor's criteria for payment—the context from which the phrase Defendants use appears to derive—has any bearing on the issues in this case.  The public nuisance claim concerns allegations that Defendants fueled diversion, not that prescriptions were not "medically necessary."  The County is not obligated to asset additional claims or make irrelevant allegations through its interrogatory responses.  Again, a contention interrogatory may only appropriately be directed to claims, or contentions, actually at issue in this litigation.

Interrogatories Nos. 3, 5, 12, 15, and 17-20: Defendants do not appear to dispute the adequacy of the response or the County's right, under the Rules of Civil Procedure, to produce documents in response to these Interrogatories.  To the extent Defendants argue that the County should identify documents by Bates Number, Plaintiffs expect that Defendants will likewise identify documents by Bates number as requested in certain Interrogatory Responses.  To date, Defendants have refused to do so.  We remain willing to negotiate a certain number of documents to be identified by Bates number in our production and Defendants' productions.  Special Master Cohen has previously ruled that such identification is not required.  Absent a reciprocal agreement on a discrete universe of documents, we will abide by the order of the Special Master.



January 14, 2022
Page 4

**Requests for Production:**

<u>RFPs Nos. 3, 4, 5, 11, 20</u>: As your letter notes, the County offered to meet and confer concerning these Requests.  We remain willing to set a conference.

At that time, the Parties can discuss, among other things, why Defendants assert that they will request any "sample" or "sampling" offhand, without discussion or considering the extensive searches and production underway. We note that Defendants do not appear to suggest any prior MDL plaintiff was ordered to produce this discovery, nor do Defendants address the particulars of this case. Defendants should also be prepared to address overlap and duplication in the requests and the proportionality concerns raised by the County.  This is particularly true given that Defendants appear to seek, for example, any and all documents concerning any complaint or investigation, whether or not it uncovered any wrongdoing or involved a Party to this case.  To the extent Defendants argue that some information appears to be available in response to RFP No. 20, they also concede it was produced long ago with the County's Fact Sheet.

Defendants should also refrain, in the future, from misstating the information sought in the Plaintiff Fact Sheet.  On its face, and contrary to Defendants' characterization, Section I.B.4 does not encompass the sweeping request made in RFP No. 4.  That RFP seeks, among other things, all documents related to any investigation of physicians, pharmacy employees, and others related to opioids or cocktail drugs.  By contrast, the Fact Sheet asks plaintiffs to simply identify, based on reasonably available information, pharmacies that were the target of closed investigations since January 1, 2008.  Section II.B refers only to targets identified on the Fact Sheet.

<u>RFP No. 7</u>: This RFP, which seeks documents concerning "medically necessary" prescriptions is both sweepingly overbroad and irrelevant to this case.  As noted above, arguments about medical necessity have no bearing on the public nuisance claim.  Defendants cite the Fact Sheet to argue otherwise.  The Fact Sheet, however, was a negotiated document intended to encompass a wide variety of claims, including causes of action not at issue in this streamlined Track.  Further, Defendants again take language from the Fact Sheet out of context.  In response to Section II.B.2, which inquires about information concerning particular providers who wrote medically unnecessary prescriptions, the County wrote that: This response is limited to certain publicly available information about healthcare providers who were charged with crimes and/or disciplined by the State Medical Board, which is equally available to Defendants.  That information remains public and equally available to Defendants.

<u>RFP No. 19</u>: As, Defendants note, the County offered to meet and confer on this request.  The County believes the search terms run on the crime lab database would more than adequately respond.

<u>RFPS Nos. 21, 22, & 23</u>: We are not certain we understand what Defendants seek concerning these Interrogatories, and do not wish to inadvertently make the clear RFP responses unclear through a



January 14, 2022
Page 5

letter exchange.  The Responses speak for themselves and reflect the overlap and duplication in the Interrogatories themselves.  The County is willing, however, to include a discussion of these responses in a meet and confer.

RFP No. 27:  The County seeks prospective abatement relief through the actions currently pending in the MDL.  In the event that were to change, the County would supplement its response, but it has no present intent to file another action. As Defendants are aware, these lawsuits also include claims, not at issue in Track 7, seeking other relief.  Those claims were severed and are not the subject of discovery and Defendants have not identified any relevance to this RFP.

RFPS Nos. 33 and 34: Defendants have yet to explain how any documents pertaining to settlement of severed claims could be relevant. Nor could such a request be proportional to the needs of the case, particularly given that the MDL Court has overseen settlement efforts for years without such matters becoming the subject of discovery in litigation tracks.  In the interest of candor, the County advised that it intends to participate in the Ohio-specific and national settlements with McKesson, Cardinal, AmerisourceBergen, and Janssen/J&J.  It will also produce two resolutions it passed in that regard. Additional information concerning the settlements also is publicly available at: National Opioid Settlement

**Non-Custodial Sources referenced in Discovery Responses or Prior Meet and Confer:**

The County listed non-custodial sources in its MC_001 production cover letter served on December 13, 2021, which includes:

1. Alcohol, Drug Addiction and Mental Health Services (ADAMHS) of Montgomery County – meeting agendas, budgets, and minutes
2. Montgomery County – news articles, press releases, document retention schedules
3. Montgomery County Auditor – consolidated amended financial reports
4. Montgomery County Board of County Commissioners – agenda, meeting information, resolutions, newsletters
5. Montgomery County Coroner's Office – newsletters, updates, action plans, death data, autopsy and toxicology and investigators' reports, press releases, training and education, organizational charts, grant information, LIMS and Patheist Database of Coroner and Toxicology Data for all opioid related deaths (1990-May 2021)
6. Montgomery County Human Resources – health plan information: coverage, employee booklets, enrollment information, formularies, etc.
7. Montgomery County Office of Emergency Management – reports, COAT documents, organizational chart, and health updates related to opioids
8. Montgomery County Office of Management and Budget – budget documents (1996-2021)



January 14, 2022
Page 6

9. Montgomery County Sheriff's Office – overdose weekly bulletins, drug arrest information and data, annual reports, and final report of the Justice Committee
10. Public Health – Dayton & Montgomery County – agency and COAT reports, data, organizational charts, Addiction Services - aggregate reports from patient electronic records database including trends reports and quarterly reports

Additional non-custodial sources were listed in the County's letter to defendants on December 17, 2021, which includes:

11. Montgomery County Courts – database search all cases with a relevant Ohio Revised Code
12. Public Health – Dayton & Montgomery County – shared drive
13. Montgomery County Prosecutor's Office – CourtView database which tracks cases and assignments and status of cases

Furthermore, the County is searching and producing documents from these additional non-custodian sources:

14. ADAMHS Shared Drive
15. Jail policies and procedures
16. Sheriff's Accreditation Office, Range Task Force, Bulk Smuggling Task Force Budget – Finance office, Montgomery County Drug Free Coalition documents, Social Media office, Naphcare aggregate data on MAT and patients with OUD diagnosis, Training Center, Data from the following databases: Motorola (CAD and incident reports, 2017-2021), Tiburon (Cad and incident reports, 1996-2017), Tiburon Jail (incidents, 1996-2019), Spillman Jail (incidents, 2019-2021)
17. Public Health – Dayton & Montgomery County – Project Save documents,
18. Montgomery County Courts – annual reports, pre-service investigation statistics, Probation treatment
19. Stillwater – reports, opioid prescriptions, claims data from their vendor, ICP, policies and procedures
20. Job and Family Services - organizational charts; child support enforcement: policies, procedures, training materials, forms, recovery plan, highlights, caseloads, letters, budgets, intake data where drugs involved
21. Human Services Resources and Planning – reports, applications, presentations, contractor awards, grants, Point in Time data and statistics, HMIS database data
22. Risk, Safety and Emergency Management – opioid prescription claims data pulled by vendor, York Risk Services



January 14, 2022
Page 7

Sincerely,

*/s/ Lisa M. Saltzburg*

Lisa M. Saltzburg

cc:  mdl2804discovery@motleyrice.com
 Jennifer Hagedorn (jhagedorn@bowlesrice.com)
 Alex Harris (alex.harris@bartlitbeck.com)
 tracks6to10defendants@bbhps.com

# EXHIBIT 2.9

| | |
|---|---|
| **From:** | Saltzburg, Lisa M. <lsaltzburg@motleyrice.com> |
| **Sent:** | Friday, January 21, 2022 3:56 PM |
| **To:** | Jennifer Hagedorn; Elsner, Mike |
| **Cc:** | tracks6to10defendants@bbhps.com; CT7-11_OpioidBWTeam@simmonsfirm.com; 2804 Discovery, MDL; Fu, Abigail |
| **Subject:** | RE: Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 2022.01.13 |
| **Attachments:** | 20220121 CT7 Supplemental Response to Interrogatory 4_pdf; CT7 SOMS Chain ROG 4 Response_pdf; CT7 SOMS Distributor ROG 4 Response_pdf; Exhibit A to Rog 4 Response_pdf; 20220121 CT7 Supplemental Response to Second Set ROGS 5  6 FINAL_pdf |

**\*\* External mail \*\***

Jennifer,

Attached please find Supplemental Responses to Interrogatory No. 4 from Defendants' First Set of Interrogatories and Interrogatories Nos. 5-6 from the Second Set.  This is in response to your letter of January 13 and the other points raised in our letter of January 14.

We believe the other issues raised in your January 13 letter mirror the same arguments raised concerning the first set of interrogatories, to which we have already responded in our January 14 letter and refer you there again for those points.

Best regards,

Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Thursday, January 13, 2022 8:06 PM
**To:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>; Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>
**Cc:** tracks6to10defendants@bbhps.com; CT7-11_OpioidBWTeam@simmonsfirm.com; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; Fu, Abigail <afu@motleyrice.com>
**Subject:** RE: Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 2022.01.13

CAUTION:EXTERNAL

This is the correct version.  My sincere apologies.

---

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Thursday, January 13, 2022 7:57 PM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>
**Cc:** tracks6to10defendants@bbhps.com; CT7-11_OpioidBWTeam@simmonsfirm.com; 2804 Discovery, MDL

<mdl2804discovery@motleyrice.com>; Fu, Abigail <afu@motleyrice.com>
**Subject:** RE: Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 2022.01.13

**External E-mail**

Please disregard the last email which inadvertently omitted an addressee and see the attached. Thank you.

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Thursday, January 13, 2022 7:53 PM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>
**Cc:** tracks6to10defendants@bbhps.com; CT7-11_OpioidBWTeam@simmonsfirm.com; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; Fu, Abigail <afu@motleyrice.com>
**Subject:** Pharmacy Defs Letter to Track 7 Plaintiffs re discovery response deficiencies 2022.01.13

Counsel: Please see the attached correspondence.  Thank you.

**Jennifer B. Hagedorn**
Bowles Rice LLP
jhagedorn@bowlesrice.com
1800 Main Street, Suite 200 | Canonsburg, PA 15317
Tel: (724) 514-8940 | Fax: (724) 514-8954
Bio | vCard

Bowles Rice

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

**Jennifer B. Hagedorn**
Bowles Rice LLP
jhagedorn@bowlesrice.com
1800 Main Street, Suite 200 | Canonsburg, PA 15317
Tel: (724) 514-8940 | Fax: (724) 514-8954
Bio | vCard

Bowles Rice

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Case No. 1:18-op-46326-DAP<br><br>THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS and THE STATE OF OHIO *EX REL.* MATHIAS H. HECK, JR., PROSECUTING ATTORNEY,<br><br>                Plaintiff,<br><br>      vs.<br><br>CARDINAL HEALTH, INC. et al.,<br><br>              Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OJBECTIONS TO INTERROGATORY FOUR OF PHARMACY DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as the local rules and orders of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County") hereby offers this amended response to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies") First Set of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

## OBJECTIONS

Plaintiffs' incorporate the Objections previously submitted on September 20, 2021 with Plaintiffs' Responses and Objections to the Pharmacy Defendants' First Set of Interrogatories.

## NON-WAIVER

1.      Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.      If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.      Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory No. 4:

Identify all Suspicious Orders for Prescription Opioids that You allege were shipped to a pharmacy, including the Pharmacy Defendants, in the Geographic Area during the Relevant Time Period, including for each the name and location of the pharmacy that placed the order, the distributor to whom it was placed, the respective dates that it was placed and shipped, the manufacturer, name and amount of the medication that was ordered and shipped, the reason(s) why the order was suspicious, Your criteria for determining that a Prescription Opioid order is a Suspicious Order, and, for all criteria identified, any support or sources for those criteria.

**Response to Interrogatory No. 4:**

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26. Plaintiff also objects to this Interrogatory as overbroad and unduly burdensome in going beyond the scope of even a contention Interrogatory. Defendants ask the County to make allegations about suspicious orders from any pharmacy, rather than the Chain Pharmacies who are the subject of the allegations in the public nuisance claim or stores to which the Chain Pharmacies distributed. The County "allege[s]" that *Defendants* failed to implement effective controls against diversion and shipped suspicious orders. It is not required to make allegations about other parties.

In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure. Plaintiff objects to this interrogatory to extent it calls for an expert opinion. Plaintiff objects to this interrogatory on the grounds the information sought is under the possession and control of the Defendants or the DEA. Plaintiff further objects to this interrogatory because the Defendants have failed to answer substantially similar discovery requests yet demand the Plaintiff do so without an adequate record and/or the benefit of expert witness testimony. Plaintiff's ability to respond is further limited by Defendants' failure to produce all information, including due diligence files, necessary to complete the requested analysis.

In a good faith effort to meet Plaintiff's discovery obligations and to comply with the Court's existing Discovery Rulings regarding substantially similar requests, and subject to and without waiving any objections or reservations of rights, Plaintiff refers Defendants to the ARCOS data and to: (a) the metrics from the decision in *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861

F.3d 206 (D.C. Cir. 2017), (b) orders flagged by Defendants' own suspicious order monitoring systems that they shipped without investigation, or due diligence clearing the suspicion and/or without reporting to DEA, and (c) orders which based on review of the data, should have alerted the pharmacy to investigate such orders for highly abused opioids, and which will be disclosed in expert discovery consistent with the deadlines in the CMO.

For the purposes of responding to this Interrogatory, Plaintiff has not attempted to identify every suspicious order, nor has Plaintiff applied every reasonable method for identifying suspicious orders, but has provided responses identifying methods and data to which those methods may be applied consistent with the Court's previous rulings, including, inter alia, Discovery Ruling 12.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court. The answer to this contention interrogatory "does not limit [Plaintiff's] experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified [herein]." *See* Discovery Ruling No. 7, p. 6. Plaintiff further reserves the right to supplement this answer based on additional discovery, including, without limitation any disclosure by Defendants of the system(s) the Defendants designed and/or operated to detect suspicious orders using Defendants' own metrics and production of Defendants' due diligence files.

**<u>Supplemental Response:</u>**

Subject to and without waiving its Objections, Plaintiff contends that Defendants shipped approximately 101,612,330 hydrocodone pills and 10,578,300 oxycodone pills into Montgomery County between 2006 and 2014.  Plaintiff contends the sheer volume of opioid pills shipped is

indicative of the fact that the Defendants failed to maintain "effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels." 21 U.S.C.A. § 823(b)(1) [1970].

Plaintiff contends each Defendant owes a duty under federal law to maintain "effective control against diversion of particular controlled substances into other than legitimate medical, scientific, and industrial channels." 21 U.S.C.A. § 823(b)(1) [1970]. This duty has been defined to include the following obligations:

> The "security requirement" at the heart of this case mandates that distributors "design and operate a system" to identify "suspicious orders of controlled substances" and report those orders to DEA (the Reporting Requirement). 21 C.F.R. § 1301.74(b). The Reporting Requirement is a relatively modest one: It requires only that a distributor provide basic information about certain orders to DEA, so that DEA "investigators in the field" can aggregate reports from every point along the legally regulated supply chain and use the information to ferret out "potential illegal activity." Southwood Pharm., Inc., 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007). Once a distributor has reported a suspicious order, it must make one of two choices: decline to ship the order, or conduct some "due diligence" and—if it is able to determine that the order is not likely to be diverted into illegal channels— ship the order (the [No-]Shipping Requirement).

*Masters Pharm., Inc. v. Drug Enf't Admin*., 861 F.3d 206, 212–13 (D.C. Cir. 2017) (emphasis added) (bracket inserted).

Plaintiff's ability to respond is further limited by Defendants' failure to produce all information, including due diligence files, necessary to complete the requested analysis. In a good faith effort to meet Plaintiff' discovery obligations and to comply with the Court's existing Discovery Rulings regarding substantially similar requests, and subject to and without waiving any objections or reservations of rights, Plaintiff respond with the suspicious orders, and information regarding the same, as set out in **Exhibit A** to these responses, along with the contemporaneous production referenced therein.

For the purposes of responding to this interrogatory, Plaintiff have not attempted to identify every suspicious order, nor have Plaintiff applied every reasonable method for identifying suspicious orders, but have provided responses consistent with the Court's previous rulings, including, *inter alia*, Discovery Ruling 12.  Some examples of suspicious orders may include: the shipment of opioids to a pharmacy where the number of opioids exceeds the legitimate medical needs of the community; the shipment of a specific opioid product and/or a specific dose of an opioid product to a pharmacy which is significantly in excess of the national and/or state averages; the shipment of a specific opioid or dose of opioid which is significantly in excess of national and/or state average for that specific pharmacy chain; frequent shipments which reflect an effort by the pharmacy to evade specific thresholds.  These examples are not meant to be exclusive, there are simply illustrative of the types of orders which may be suspicious based on size, frequency or pattern.

Plaintiff reserve the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court. The answer to this contention interrogatory "does not limit [Plaintiff'] experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified [herein]." *See* Discovery Ruling No. 7, p. 6. Plaintiff further reserve the right to supplement this answer based on additional discovery, including, without limitation any disclosure by Defendants of the system(s) the Defendants designed and/or operated to detect suspicious orders using Defendants' own metrics and production of Defendants' due diligence files.

Dated: January 21, 2022 `      ` Respectfully Submitted,

|  | /s/ Michael Elsner, Esq. |
|---|---|
|  | MOTLEY RICE, LLC<br>Linda Singer<br>Elizabeth Smith<br>Motley Rice LLC<br>401 9th Street NW<br>Suite 1001<br>Washington, DC 20004<br>(202) 386-9626<br>lsinger@motleyrice.com<br>esmith@motleyrice.com<br>*Attorneys for Montgomery County*<br><br>Michael Elsner<br>Lisa Saltzburg<br>Motley Rice LLC<br>28 Bridgeside Blvd.<br>Mount Pleasant, South Carolina 29464<br>(843) 216-9000<br>melsner@motleyrice.com<br>lsaltzburg@motleyrice.com<br>*Attorneys for Montgomery County*<br><br>Mathias H. Heck, Jr.<br>Montgomery County Prosecuting Attorney<br>301 West Third Street<br>P.O. Box 972<br>Dayton, Ohio 45422<br>Telephone: (937) 225-5599<br>Fax Number: (937) 225-4822<br>E-mail: heckm@mcohio.org<br>*Attorney for Montgomery County*<br><br>Ward C. Barrentine<br>Chief Assistant Prosecuting Attorney - Civil Division<br>Montgomery County Prosecutor's Office<br>301 West Third Street<br>4th Floor, Suite 461<br>Dayton, Ohio 45422<br>Telephone: (937) 496-7797<br>E-mail: BarrentinW@mcohio.org<br>*Attorney for Montgomery County* |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Case No. 1:18-op-46326-DAP<br><br>THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS and THE STATE OF OHIO *EX REL.* MATHIAS H. HECK, JR., PROSECUTING ATTORNEY,<br><br>             Plaintiff,<br><br>    vs.<br><br>CARDINAL HEALTH, INC. et al.,<br><br>             Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### PLAINTIFFS' SUPPLEMENTAL RESPONSES AND OJBECTIONS TO INTERROGATORIES FIVE AND SIX OF PHARMACY DEFENDANTS' SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as the local rules and orders of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County")hereby offers this amended response to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies") Second Set of Interrogatories Requests 5 and 6 (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

## OBJECTIONS

Plaintiffs' incorporate the Objections previously submitted on November 15, 2021 with Plaintiffs' Responses and Objections to the Pharmacy Defendants' First Set of Interrogatories.

## NON-WAIVER

1.      Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.      If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.      Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 5:**

Your Red Flag Submission states that You identified "prescriptions dispensed by Defendants, which were written by prescribers regarding whom Defendants had or should have had actual or constructive notice were engaged in activity indicative of possible or actual diversion and/or were written by prescribers who issued the prescription without a legitimate medical purpose or outside the usual course of professional practice and/or were not authorized to issue controlled substance prescriptions." Describe how You identified each of these prescribers, including without limitation what facts You claim should have provided "actual or constructive

notice" to Defendants that those prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions."

**Response to Interrogatory No. 5:**

Plaintiff objects to this Interrogatory on the grounds of attorney work product privilege. Plaintiff also objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26. Plaintiff also objects to this Interrogatory as overbroad and unduly burdensome in going beyond the scope of even a contention Interrogatory.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

In addition, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

Notwithstanding the above objections, Plaintiff submits that the Defendants should have used their own dispensing data and any data it purchased or was provided by third parties to identify high risk prescribers potentially engaged in diversion or prescribing opioids for illegitimate medical purposes.  Among the factors that the Defendants should have considered was: the volume of opioids prescribed compared to national, state and chain averages; the share of opioids prescribed compared to national, state and chain averages; the share of opioid medications prescribed compared to non-opioid medications; and the number of red flag prescriptions written

by prescribers.  There are a number of other metrics which may have been used to identify prescribers at higher risk of diversion.  The examples above are merely representative.

The Defendants should have also used its own programs, systems and databases to identify high risk prescribers.  The programs may include any prescriber monitoring programs, controlled substance dispensing programs, refusal to fill lists, good faith dispensing forms, blanket refusal to fill data, prescriber notes fields, patient notes fields and other data fields in Defendant's own systems.[1]  Some examples of sources from Defendants own production that could have been used to identify high risk prescribers include CVS-MDLT3-000121335, WMT_MA_000008510 and WMT_MDL_SD_0002424.  This list is not meant to be exclusive.  The list is merely a sample of the types of materials which may have consulted.  Based on records reviewed, we believe Defendants have yet to fully produce all records related to this topic.

There is also significant public information including from the Ohio Board of Pharmacy, the Ohio Board of Medicine, DEA, other law enforcement agencies and publicly available reports and news reports that the Defendants could have used to identify prescribers that had been indicted, were under investigation, or are the subject of civil and other criminal proceedings for their prescribing practices.

**Interrogatory No. 6:**

State whether or not You believe that the 115 prescribers identified in Your Red Flag Submission contributed to the alleged public nuisance that You claim exists.

**Response to Interrogatory No. 6:**

Plaintiff objects to this Interrogatory as an improper contention Interrogatory that is not

---

[1] Programs include those identified in Defendant responses to Plaintiffs' Track Three Notice of Document Deposition Pursuant to 30(b)(6), November 9, 2020, Topic 6 and other similar programs operated by those Defendants and Meijer and Kroger.

reasonably calculated to lead to admissible evidence about the contentions actually at issue in the supplemental pleading. The County is not obligated to make additional allegations about other non-parties. If the Chain Pharmacies seek to do so, such information should be part of their own discovery responses.

Plaintiff contends, and will prove at trial, that the conduct of each of the Defendants was a substantial factor in creating the public nuisance; it is irrelevant to Plaintiff's claim, and to Defendants' defenses, whether there are other persons whose conduct was also a substantial factor, because the role of any such additional persons does not absolve Defendants of responsibility for their role. Or. (MDL Doc. 2572).

Subject to and without waiving any objections, Plaintiff answers that the Opioid Pharmacy defendants named as Defendants in this case including CVS, Walgreens, Walmart, Rite Aid, Kroger, and Meijer as substantial factors in creating the public nuisance that is the Opioid Epidemic. Whether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability. *Id.*

Notwithstanding the above objections, Plaintiff states that certain prescribers contributed to the opioid epidemic in Montgomery County, Ohio.  Plaintiff does not have access to records from the Defendants related to these prescribers or records of physicians that prescribed and in some cases may have dispensed opioids to patients in Montgomery County.

Dated: January 21, 2022  `                    Respectfully Submitted,

|  | /s/ Michael Elsner, Esq. |
|  |  |
|  | MOTLEY RICE, LLC |
|  | Linda Singer |
|  | Elizabeth Smith |
|  | Motley Rice LLC |
|  | 401 9th Street NW |
|  | Suite 1001 |
|  | Washington, DC 20004 |
|  | (202) 386-9626 |
|  | lsinger@motleyrice.com |
|  | esmith@motleyrice.com |
|  | *Attorneys for Montgomery County* |
|  |  |
|  | Michael Elsner |
|  | Lisa Saltzburg |
|  | Motley Rice LLC |
|  | 28 Bridgeside Blvd. |
|  | Mount Pleasant, South Carolina 29464 |
|  | (843) 216-9000 |
|  | melsner@motleyrice.com |
|  | lsaltzburg@motleyrice.com |
|  | *Attorneys for Montgomery County* |
|  |  |
|  | Mathias H. Heck, Jr. |
|  | Montgomery County Prosecuting Attorney |
|  | 301 West Third Street |
|  | P.O. Box 972 |
|  | Dayton, Ohio 45422 |
|  | Telephone: (937) 225-5599 |
|  | Fax Number: (937) 225-4822 |
|  | E-mail: heckm@mcohio.org |
|  | *Attorney for Montgomery County* |
|  |  |
|  | Ward C. Barrentine |
|  | Chief Assistant Prosecuting Attorney - Civil Division |
|  | Montgomery County Prosecutor's Office |
|  | 301 West Third Street |
|  | 4th Floor, Suite 461 |
|  | Dayton, Ohio 45422 |
|  | Telephone: (937) 496-7797 |
|  | E-mail: BarrentinW@mcohio.org |
|  | *Attorney for Montgomery County* |

**EXHIBIT 2.10**

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114.1190

TELEPHONE: +1.216.586.3939 • JONESDAY.COM

Direct Number:  (216) 586-7507
CMMCLAUGHLIN@JONESDAY.COM

JP005629:                           February 22, 2022
415406-999005

***VIA ELECTRONIC MAIL***

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

            Re:      *In re: National Prescription Opiate Litigation*, MDL Track 7

Dear Counsel,

        I write on behalf of the Track 7 Pharmacy Defendants in response to your letter of
January 14, 2022 ("Letter") and regarding Plaintiff Montgomery County's written responses to
the Pharmacy Defendants' discovery requests.  While certain issues raised in our prior
correspondence have been resolved, many issues remain outstanding.  We believe that some of
them could be resolved in short order if Plaintiff provides direct answers to a few basic questions
we have posed but, unfortunately, we have not received many of the clarifications we requested.
Thus, we write one final time to identify the issues in dispute and ask that you provide your
availability for a meet and confer call on February 24 or 25.

        ***General Objections***.  In your Letter, you claim to be "puzzled" by the obligations laid out
in Federal Rules of Civil Procedure 34(b)(2)(B)-(C) and 33(b)(4) to state objections to each
document request and interrogatory with specificity, but you offered to confer to the extent that
the Pharmacy Defendants "have a genuine question about a particular response."  As we noted in
our letters of November 24, 2021, and January 13, 2022, the discovery rules are clear about the
use of objections, and Plaintiff's responses do not comply.  Plaintiff set forth at least twenty-five
general objections at the outset to the Pharmacy Defendants' document requests and
interrogatories and then stated that every single one of its general objections "appl[ied] to" every
single one of the Pharmacy Defendants' corresponding discovery requests.  Plaintiff then
asserted additional specific objections in response to particular document requests and
interrogatories.

NAI-1527002302v1

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • DETROIT
DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MELBOURNE
MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH • SAN DIEGO • SAN FRANCISCO
SÃO PAULO • SAUDI ARABIA • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 2

The Pharmacy Defendants have "genuine" questions about the application of Plaintiff's general objections.  The Federal Rules require the responding party to provide sufficient information for the requesting party to understand in advance what will or will not be produced in response to each request and why.  Instead, Plaintiff has shifted the burden to the Pharmacy Defendants to discern the effects of Plaintiff's objections on the scope of its production.  To do so, the Pharmacy Defendants would have to wait for Plaintiff to complete productions and then catalogue what was received in order to identify gaps in responsiveness and figure out how the asserted objections were applied.  This is compounded by Plaintiff's use of the same stock response to nearly every request: that "subject to and without waiving its objections" (or "all objections" or "any objection"), "Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms, on documents belonging to the County, or its departments."

The Pharmacy Defendants seek to have a clear understanding of the discovery Plaintiff is agreeing to provide—which necessarily includes which objections Plaintiff asserts—in response to each individual document request and interrogatory so that productive meet and confer discussions can take place.  How do Plaintiff's general objections and objections stated in response to each request affect the scope of the documents and information Plaintiff is and is not agreeing to provide for that request?  Stated differently, (1) what is Plaintiff agreeing to produce in response to each request, and (2) if Plaintiff is agreeing to produce only a subset of what was requested, why?  These questions should not be difficult for you to answer.  Given the discovery timelines in this case, we cannot wait for Plaintiff to purportedly finish its productions and only then find out that Plaintiff did not produce documents that would provide the full scope of requested information.  Providing a list of the non-custodial sources Plaintiff has produced or may produce from in general, like the one included in your Letter, does not negate the requirement that Plaintiff identify what it is producing in response to the specific document requests and interrogatories presented.  We do not wish to belabor this issue, nor should that be necessary.

*Interrogatory Nos. 3, 5, 12, 15, and 17-20 (First Set); Interrogatory Nos. 7-12 (Second Set)*.  The Pharmacy Defendants do not dispute that there is an option to produce business records in response to an interrogatory if the answer may be determined by examining those documents and the burden of ascertaining the answer will be substantially the same for either side.  We do dispute, however, that Plaintiff has properly utilized the option available to it under Rule 33(d).  To the contrary, Plaintiff has abused this option, and its responses to these interrogatories are inadequate.

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 3

Plaintiff provided the same stock response to fourteen of the thirty-five interrogatories served upon it—namely, it agreed to "produce non-privileged documents maintained in the ordinary course of business and that could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d)."  Instead of identifying the documents from which answers to these interrogatories can be derived as the rule requires, s*ee* FED. R. CIV. P. 33(d)(1)-(2), Plaintiff chose a tactic that wholly avoids providing substantive responses by referring to the *entirety* of its past or future productions tied to "agreed upon search terms on agreed custodians."  This provides no information about the specific records that must be reviewed to obtain the information sought.  Plaintiff's response is improper and tantamount to no response at all.

In your Letter, you query whether the Pharmacy Defendants "argue that the County should identify documents by Bates Numbers."  That would be one way to comply with the requirements of the rule.  What the Pharmacy Defendants insist upon, however, is that Plaintiff either provide an appropriate narrative response to the interrogatories at issue or "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."  FED. R. CIV. P. 33(d)(1).  Thus far, Plaintiff has done neither.  Plaintiff's proposal that it could instead "negotiate a certain number of documents to be identified by Bates number" will not provide an adequate response.

You also misstate Special Master Cohen's prior rulings on nearly identical issues. Indeed, while there may be exceptions for specific types of information, Special Master Cohen previously stated this general rule:  "If all I'm being presented with today is the question of whether the plaintiffs have to point to Bates numbers in response to interrogatory answers, they do, okay?  That's part one."  (11/19/20 Tr. of Telephonic Status Conference at 10.)

Please confirm by February 25 that Plaintiff will provide appropriate supplemental responses to each of these interrogatories or the Pharmacy Defendants will bring this issue before Special Master Cohen.

***Interrogatory Nos. 1 and 11 (First Set)***.  These interrogatories asked Plaintiff to identify "each prescription for a Prescription Opioid or Cocktail Medication that you contend was diverted" or "should not have been dispensed because it was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice" in Montgomery County.  The Pharmacy Defendants asked for clarification as to why Plaintiff cited its red-flag submission in its responses to each.  In your Letter, you assert that Plaintiff's "identification of 'red flag' prescriptions" is sufficient for how it intends to prove its case, stating that Plaintiff need not provide additional information as part of fact discovery or ever provide

NAI-1527002302v1

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 4

information on a prescription-by-prescription basis. Whether Plaintiff intends to rely on these facts to try to prove its case is beside the point; these interrogatories seek discoverable facts relevant to the defense. Thus, we reiterate our prior requests for clarification; specifically, does Plaintiff take the position that every red-flagged prescription identified by it was diverted (No. 1)? Does Plaintiff contend that every red-flagged prescription identified by it was not written for a legitimate medical purpose (No. 11)? If the answer is yes, say so. If the answer is no, identify which prescriptions Plaintiff asserts were diverted (No. 1) and/or were not written for a legitimate medical purpose (No. 11).

Your Letter further states (a) that "Plaintiff intends to show that significant numbers of prescriptions filled by Defendants were diverted" and "will provide some specific examples after Defendants produce their due diligence and notes fields" and (b) that prescriptions from the list of 18 prescribers identified in Interrogatory No. 1 "may also serve as examples" and that Plaintiff "will update this response" following further discovery responses from Defendants. Please confirm whether Plaintiff is in possession of any additional information in response to Interrogatory Nos. 1 and 11 and whether, and when, it intends to provide that information as part of fact discovery.

*Interrogatory No. 13 (First Set)*. This interrogatory asked Plaintiff to identify "all Persons and entities whose conduct You believe was a substantial factor in creating the alleged public nuisance." After objecting that others' conduct is irrelevant and also that this is a contention interrogatory, Plaintiff identified only the Pharmacy Defendants and others Plaintiff has sued already. Your Letter states that Plaintiff does not need to identify anyone else because it contends only that the named defendants are jointly and severally liable, making others irrelevant, and the Court has rejected third party complaints. Plaintiff's objections and arguments miss the point; this interrogatory asks for Plaintiffs' belief and not whether Plaintiff contends others should be named in this or any lawsuit. Further, the Court has not ruled that there is joint and several liability; the Court order Plaintiff cites actually denied the Track 1 plaintiffs' request for a ruling that public nuisance liability is joint and several as a matter of law. The requested information therefore is relevant to Plaintiff's claim in this case, as the conduct of others can and does inform whether any of the named defendants were a "substantial" factor and the various contributions of non-defendant entities will be a core matter of dispute at the remedies phase.

*Interrogatory No. 16 (First Set)*. This interrogatory asked Plaintiff to "Identify all Healthcare Providers that you allege wrote a prescription for Prescription Opioids that was not medically necessary during the Relevant Time Period that were filled at a pharmacy" in Montgomery County. Your Letter provides: "The public nuisance claim concerns allegations

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 5

that Defendants fueled diversion, not that prescriptions were not 'medically necessary,'" which Plaintiff deems "irrelevant" to its claim.

Whether a prescription is "medically necessary" (or medically inappropriate) is directly relevant to whether it is for a "legitimate medical purpose" or likely to be diverted, which is what Plaintiff repeatedly alleges the Pharmacy Defendants had an obligation to determine.  Dkt. 3772. For example, Plaintiff alleges that "Defendants had a duty to analyze data and store-level information for known red flags . . . that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose."  Dkt. 3772 ¶ 134; *see also, e.g.*, ¶¶ 109, 115, 119, 122, 183.  Plaintiff further accuses Defendants of "flooding that market [for opioids] with far greater quantities of prescription opioids than they know could be necessary for legitimate medical purposes," with the County receiving more dosage units "than could be justified by legitimate medical need."  *Id.* ¶¶ 22, 707; *see also, e.g.*, ¶¶ 24 ("rogue prescribers stepped in to supply prescriptions for non-medical use … [and] cannot channel opioids for illicit use without at least the tacit support and willful blindness of the Defendants, if not their knowing support"), 140 ("It is both intuitive and understood that selling drugs for non-medical purposes, or drugs which the dispenser knows or should know present a significant risk for diversion[,] falls outside the standards of care and is not a legitimate practice."), 706 ("The volume of opioids distributed and sold in Montgomery County is so high as to raise a red flag that not all of the prescriptions being ordered and sold could be for legitimate medical uses.").  These allegations form the basis for Plaintiff's public nuisance claim.  Indeed, the Court has noted in its motion to dismiss rulings that plaintiffs' allegations go to whether defendants were aware of "unnecessary prescriptions."  *See* Dkt. 1025 at 82 n.52 (noting allegations that defendants "were aware of[] unnecessary prescriptions and the operation of pill mills"); Dkt. 3767 (incorporating Dkt. 1025 into ruling on Track 7 motions to dismiss).

Contrary to Plaintiff's assertions, there is no need to separately define "medically necessary," nor is the concept of medical necessity solely used in the context of the False Claims Act.  *See, e.g.*, https://www.dea.gov/press-releases/2017/11/02/doctor-office-administrator-and-nurse-practitioner-selling-prescriptions; https://www.dea.gov/press-releases/2021/08/09/albany-doctor-admits-violating-controlled-substance-act; https://www.deadiversion.usdoj.gov/fed_regs/actions/2000/fr0818.htm.  The DEA regularly discusses medical necessity in assessing whether opioid dispensing is for a legitimate medical purpose, as Plaintiff noted in its allegations.  *See, e.g.*, Dkt. 3772 ¶¶ 263, 631.

Plaintiff need only understand the plain language of Interrogatory No. 16 to prepare a response.  If Plaintiff maintains that the medical necessity of any prescription is truly irrelevant to its public nuisance claim, we ask that you stipulate that you will not put forward any testimony or evidence regarding the medical need of any prescription or set of prescriptions at trial.  We

NAI-1527002302v1

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 6

also ask that you stipulate that you will not contend that any prescriber wrote a prescription that was not for a legitimate medical purpose.

***Interrogatory No. 5 (Second Set)***.  This interrogatory asked Plaintiff to "[d]escribe how [it] identified each of the[] prescribers" listed in its the red-flag submission.  The response included only information that "Plaintiff submits that Defendants should have used," not the requested information about what Plaintiff used to identify these prescribers and how.  Please confirm whether, and when, Plaintiff intends to provide that information as part of fact discovery.

***Request No. 4***.  This request seeks "[i]nvestigation files for any physician, healthcare provider, pharmacy, or pharmacist employee who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the physician's or provider's prescribing or dispensing of Prescription Opioids or Cocktail Medications."  You offer to meet and confer concerning your proposed "production of a sampling" of the requested documents; however, as the Pharmacy Defendants explained in their November 24, 2021 letter, we do not believe a meet and confer is necessary.  Plaintiff concedes that these documents are relevant, and the documents called for by this request match the scope of what Plaintiff was required to identify and produce along with Plaintiff's Fact Sheet but did not.  In your Letter, you accuse the Pharmacy Defendants of "misstating the information" required to be provided with Plaintiff's Fact Sheet.  That is incorrect.  Your letter focuses exclusively on Section I.B.4,[1] while ignoring Section I.B.1 and the corresponding requirements in Section II.3.[2]  Plainly, Request No. 4 is consistent with these requirements.  To the extent necessary, the Pharmacy Defendants clarify that the investigation files they seek pertain to closed investigations.  Please confirm that Plaintiff will produce responsive documents, as required, without further delay.

***Request No. 7***:  In your Letter, you attempt to justify Plaintiff's refusal to produce the requested documents "relating to the medical necessity and/or legitimate need for Prescription Opioids" on the grounds that whether a prescription for opioids is "medically necessary" is "irrelevant to this case" and that there are some publicly available documents concerning prescribers who were charged with crimes or otherwise disciplined for inappropriate prescribing.

---

[1] Section I.B.4 provides:  "Identify each pharmacy within Your boundaries, based on information reasonably available to You, that has been the target of a law enforcement or administrative investigation You conducted concerning the Pharmacy's dispensing of Prescription Opioids since January 1, 2008 (this request is only intended to pertain to closed investigations). ***See also Section II, question 3***."  (emphasis added)

[2] Section II.3 provides:  "To the extent that You identified any physician, healthcare provider, or Pharmacy in response to questions I.B.1 and I.B.4 above, please provide that investigation file for those physicians, healthcare providers, or Pharmacies."

NAI-1527002302v1

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 7

Plaintiff's objections miss the point, as this request seeks documents of a different sort. In particular, it seeks documents that address the appropriate use and benefits of opioid medications generally for patients suffering from pain—not documents regarding the medical necessity of individual prescriptions. To the extent Plaintiff has possession, custody, or control over any document in the former category, please confirm that it will produce them.

**Request Nos. 21, 22, and 23**. These requests seek production of all documents in Plaintiff's possession, custody, or control "relating to any prescription disposal program You have formed, funded, operated, or participated in"; "addiction treatment programs that you have formed, funded, operated, or participated in"; and "drug abuse prevention or education programs related to Prescription Opioids that You provided, operated, or funded." Plaintiff referred the Pharmacy Defendants to its responses to Request Nos. 2 and 5.

In our November 24, 2021 letter, we asked for confirmation that the documents Plaintiff intends to produce in response to Request Nos. 2 and 5 would encompass those sought in these requests. Instead, your Letter refers to "Interrogatories," unspecified "overlap and duplication," and provides that you "do not wish to inadvertently make the clear RFP responses unclear through a letter exchange" but, unfortunately, that is precisely what you have done. Request No. 5, for example, does not overlap or duplicate these requests at all. Indeed, these requests seek documents related to specific types of programs that Plaintiff "formed, funded, operated, or participated in." Rather than add these requests to the list of meet and confer items, it would seem more useful for Plaintiff to clarify whether it intends to produce the documents clearly defined in these requests. If Plaintiff is not willing to do so, please be prepared to explain what it is that you do not "understand" about these requests on our meet and confer call.

**Request No. 27**. This request seeks production of "[a]ll Documents relating to Your efforts to recover expenditures related to Prescription Opioid or Illicit Drug addiction, misuse, abuse, or overdose in the Geographic Area from any Person, including (without limitation) insurers, government entities, manufacturers, pharmacists, pharmacies, Healthcare Providers, clinics, drug dealers, drug traffickers, or drug trafficking organizations." In response to our request that Plaintiff either confirm it has no such documents or that it is refusing to produce them, you state in your Letter that the "County seeks prospective abatement relief." We understand that. However, to the extent that Plaintiff has obtained or sought funds from sources other than the Pharmacy Defendants in order to pay for its prior or future efforts to address the alleged public nuisance it claims to exist based on "Prescription Opioid or Illicit Drug addiction, misuse, abuse, or overdose in the Geographic Area," such documents plainly are relevant and must be produced. This is especially true given the Court's January 4 Order Regarding Abatement Proceeding and the Special Master's January 26, 2022 Phase II Discovery Order, both of which made clear that documents relating to past expenditures are relevant to prospective

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 8

abatement relief.  To the extent Plaintiff has possession, custody, or control over any such
documents, please confirm that it will produce them.

**Request Nos. 33 and 34**.  In response to these requests, Plaintiff agreed to "produce two
resolutions passed concerning OneOhio and refer[ed] Defendants to settlement agreements
readily available to them on the internet at http://nationalopioidssettlement.com/."  You also
advised in your Letter that Montgomery County "intends to participate in the Ohio-specific and
national settlements with McKesson, Cardinal, AmerisourceBergen, and Janssen/J&J."
Particularly in light of the Special Master's January 26, 2022 Phase II Discovery Order requiring
the production of certain settlement agreements entered into by the Track 3 plaintiffs, please
confirm (as we previously requested) either that Plaintiff does not have possession, custody, or
control over any other documents responsive to these requests or that Plaintiff will produce all
responsive documents in its possession, custody, or control.

**Request Nos. 3, 4, 5, 11, 19, and 20**.  As indicated in the parties' prior correspondence,
we are prepared to meet and confer on these requests.  You ask in your Letter why the Pharmacy
Defendants reject Plaintiff's unspecified "sampling" proposals for each of these requests
"offhand."  As we noted for each request in our November 24, 2021 letter, the documents called
for by these requests are centrally relevant to the issues in this case and production of similar
documents was not limited to sampling in prior tracks.  These documents include, for example,
pharmacy cooperation with law enforcement actions (No. 3); closed investigation files for targets
of law enforcement investigations concerning prescribing or dispensing (No. 4); efforts to
identify, address, detect, and prevent misuse, diversion, and injury related to prescription opioids
(No. 5); refusals to dispense (No. 11); opioid cases handled by crime labs (No. 19); and
investigations related to overdoses (No. 20).  All of the requested materials are relevant and
necessary for our defense.  Plaintiff's proposed "production of a sampling" of the requested
materials is inappropriate absent a burden argument supported by actual facts related to each of
these requests.  Even so, any burden argument would be outweighed by the fact that Plaintiff is
seeking to hold the Pharmacy Defendants liable based on broadly stated allegations of
oversupply leading to abuse of prescription and illicit drugs and ultimately seeks to have the
Pharmacy Defendants fund an abatement plan that could cost billions of dollars.

To the extent Plaintiff still insists on discussing a "sampling" approach to the production
of plainly relevant documents, please be prepared to explain in detail for each request why that
is, including why the burden of responding to each request outweighs its benefit; how you intend
to identify and collect the full scope of requested materials from which each sample set will be
pulled; and how you intend to identify each sample set to be produced.

\*     \*     \*

JONES DAY

Lisa Saltzburg, Esq.
Michael Elsner, Esq.
February 22, 2022
Page 9


        Please provide us with your availability for a meet and confer call on February 24 or 25
to discuss the outstanding issues with Plaintiff's discovery responses identified above.

                                        Very truly yours,

                                        */s/ Christopher M. McLaughlin*

                                        Christopher M. McLaughlin

cc:  MDL Track 7 defense counsel

# EXHIBIT 2.11

| | |
|---|---|
| **From:** | McLaughlin, Christopher M. |
| **Sent:** | Thursday, March 31, 2022 2:19 PM |
| **To:** | Saltzburg, Lisa M.; Jennifer Hagedorn |
| **Cc:** | Gates, Lisa B.; Trevor Scheetz; Fu, Abigail; Elsner, Mike; Unterreiner, Amanda; alex.harris@bartlitbeck.com; Morrison, Kristin S.M.; External User - Steven Herman; External User - Trevor Sheetz; Peter Bigelow; Mike Burns; Ronda Harvey |
| **Subject:** | RE: Montgomery County document custodians |

Lisa,

We are available to meet and confer at 4:00 PM today and will circulate an invite.

At least twice, you proposed dates and times for meet and confer calls, we responded that we were available on those dates and at those times, and you subsequently informed us that you were no longer able to speak with us at the agreed upon date and time (e.g., March 16).  That is what I referred to.

In your emails on Tuesday and Wednesday, you asked us to tell you what was "moot" in light of the supplemental responses.  We obviously discussed a number of issues related to the supplemental responses on our call last week, and we continue to believe a number of your responses are deficient.  For example, we have said we believe we are at an impasse on ROGs 1 and 11, and that we may raise those issues with Special Master Cohen.  With regard to the Interrogatories that we said we still want to discuss with you, I'm putting additional information about why we want to discuss them with you below.  To the extent necessary (and we are not sure it is), after we talk today, we can send you a follow up letter.

**First Set**

Interrogatory No. 15 – This is not an appropriate use of Rule 33(d).  The county's citation to the Sheriff's Office database extract is insufficient because it does not clearly identify each instance of a forged or altered prescription.  The county should produce all underlying incident reports relating to prescription forgery or alteration.

Interrogatory No. 16 – We are not asking the county to answer a different interrogatory, only the interrogatory that was asked.  The county has not provided a substantive response.

Interrogatory No. 19 – This is not an appropriate use of Rule 33(d).  The county has not specified any records from which the answer to this interrogatory can be derived.  If the county is unable to identify any information responsive to this interrogatory, please simply confirm that your investigation did not uncover any such complaints.

Interrogatory No. 20 – The county relied on Rule 33(d), but the few documents cited do not appear to be responsive to the question that was asked.

**Second Set**

Interrogatory No. 5 – The county still has not provided all responsive information.  Specifically, the county has not answered how it identified the prescribers listed in its red flag submission.

Interrogatory No. 6 – The county previously supplemented this response, stating:  "Plaintiff states that certain prescribers contributed to the opioid epidemic in Montgomery County, Ohio."  The most recent supplement excluded that statement and changed the county's previously sworn answer.  Was that inadvertent or intentional?

<u>Interrogatory No. 7</u> – This is not an appropriate use of Rule 33(d).  The county has not specified any records from which the answer to this interrogatory can be derived.  The county's supplemental narrative answer does not cure this deficiency, unless you confirm that your investigation revealed no other responsive communications with current/former employees of the Pharmacy Defendants.

<u>Interrogatory No. 8</u> – The county relied on Rule 33(d), but the few documents cited do not appear to be responsive to the question that was asked.

<u>Interrogatory No. 10</u> – This is not an appropriate use of Rule 33(d).  The county has not specified any records from which the answer to this interrogatory can be derived.

<u>Interrogatory No. 11</u> – This is not an appropriate use of Rule 33(d).  The county has not specified any records from which the answer to this interrogatory can be derived.

<u>Interrogatory No. 12</u> – This is not an appropriate use of Rule 33(d).  The county has not specified any records from which the answer to this interrogatory can be derived.

**RFP 5 Sampling Proposal**

What specific fields associated with which specific databases did the county choose not to include in the database extracts that were produced?  Is there a way to filter the Tiburon data by statutory subsection (similar to the filtering function available for the Motorola data) or is filtering limited to the general code number?   Is there a way to filter the court data by statutory subsection (similar to the filtering function available for the Motorola data) or is filtering limited to the general code number?  Why do certain fields show up as "Null?"  Why are certain fields in the court database extract blank?

**Abatement Discovery/RFP 27**

As I'm sure you're aware, during CMO discussions, Defendants took the position that Plaintiffs should provide their abatement plan early in discovery, precisely because it was necessary to conduct efficient fact discovery and that the provision of it later would result in difficulties in getting documents and questioning relevant witnesses about that plan.  Plaintiffs opposed that request.  If Plaintiff cannot provide discovery or information necessary to assess the relief its seeks, we should discuss the issue with Special Master Cohen.  Plaintiffs are creating a catch-22, where they say that discovery on abatement is "premature," but then oppose efforts to seek full discovery on abatement in "Phase II."

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Thursday, March 31, 2022 12:38 PM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey

<rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Chris,

I take the unwillingness to identify any instance to support your claim that "[t]his isn't the first time that you've unilaterally cancelled a scheduled meet and confer call," as an acknowledgment that Defendants cannot substantiate that accusation. Turning to the issues at hand, if you have questions regarding the sampling proposal, pending for more than a week, you must know what they are. You also expressed confidence previously that Defendants could respond as early as last Friday, and have had the information in the production since March 16. We do not take issue with seeking to discuss it further, but do not understand the refusal to tell us what your questions are in advance so we can be prepared to address them. To ensure we are clear, are Defendants refusing to do that? And is the reason Defendants are not yet offering a counter-proposal that their response turns on the answer to one of those questions?

Regarding the Interrogatories, you have not written us multiple letters, or provided any information at all, concerning issues with the supplemental responses. All of your correspondence pre-dates the supplement. Since then, you simply stated that you did not have time to discuss those interrogatories yet. That is why we seek to understand what your issues are so that we can be prepared to address them and have a productive discussion. Are Defendants refusing to tell us what issues they still take with the responses?

Given we have essentially no idea what Defendants seek to discuss, it is difficult to see how a productive discussion can be had. At this point, I am frankly a bit confused about whether you are seeking to confer on the sampling today, or stating that it is too "complicated" such that Defendants desire to carve that out for future discussion. Please provide the questions you seek to ask on sampling and some basic idea of what you would like to discuss on the Interrogatories, and we will carve out an hour this afternoon to discuss them.

Separately, regarding Interrogatory No. 27, your explanation seems different than the RFP is written, and also internally inconsistent. Because we have not yet submitted an abatement plan, given the expert deadlines in this case, it is also premature, as Defendants seem to be seeking the "Phase II" discovery in the order they reference. As framed, it does appear to encompass materials Defendants' review of documents has likely disclosed to them that they already possess. Given the timing, we will separately respond to your belated and shifting position regarding various discovery requests in your March 28 letter to all Plaintiffs in coordination with those Plaintiffs.

Please let us know if 4pm today works for you and provide the basic information we have repeatedly requested about what you seek to discuss.

Best regards,

Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Thursday, March 31, 2022 11:45 AM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>

3

**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

CAUTION:EXTERNAL

Lisa,

This is not productive.  We've asked for a meet and confer to finish discussing the ROGs that we weren't able to discuss.  We've written you multiple letters about issues that we want to discuss, and we've been clear that we don't think you're providing the required discovery related to the relief that you seek.  We were supposed to meet and confer yesterday, but you canceled.  You said you would be available to meet and confer today, if we provided times and the issues that we thought were still necessary to discuss.  We did so.  We should meet and confer today to try to address those ROGs, so that any disputes can be narrowed and any remaining issues may be raised with Special Master Cohen.  If you're refusing to do so, please let us know.

Our discussions on sampling should not delay discussions of other issues.  After weeks of requesting a proposal from you, you provided us with one last week.  The issue is a complicated one, and it should not surprise you that we want to discuss it further with you, especially when we learned on the call last week that you have narrative information that was not included in the spreadsheets provided that might assist us in formulating a counter-proposal.

To answer your question on RFP 27, we would point you to the request itself, which asks for "[a]ll Documents relating to Your efforts to recover expenditures related to Prescription Opioid or Illicit Drug addiction, misuse, abuse, or overdose in the Geographic Area from any Person . . . ."  As you know, in our February 22, 2022 letter, we also explained that "to the extent that Plaintiff has obtained or sought funds from sources other than Pharmacy Defendants in order to pay for its prior or future efforts to address the alleged public nuisance it claims to exist . . . such documents plainly are relevant and must be produced."  We think that explanation is pretty clear.  It would potentially include grants, forfeitures, and other categories of documents related to efforts to obtain funds to pay for efforts to address the alleged public nuisance.  As to the relevance of the request, we've already pointed you to the Court's January 4, 2022 order, which required the Track 3 Plaintiffs to produce "discovery showing how much money Lake County and Trumbull County each expended on [the elements of their abatement plan] in the two most recent years for which such data is available."  ECF No. 4220.  Clearly, we are entitled to discovery on efforts to obtain funds to pay for "prior or future efforts to address the alleged public nuisance it claims to exist."  Furthermore, such information and efforts to recover funding, go to, among other things, the nature of the alleged issues, priorities in addressing those issues, and so forth.  Please let us know, as we have been asking for months, whether Plaintiff will produce the documents it is required to produce in response to this request.

As Plaintiff is required to do, we will expect Plaintiff to provide appropriate discovery on abatement.  If it does not intend to do so, we will immediately raise the issue with Special Master Cohen, including the issues raised on our March 28, 2022 letter.  We believe we are at an impasse on ROGs 1 and 11, which we discussed on our last call.  We will also consider raising those with Special Master Cohen, unless you believe it would be productive to discuss them further.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point

901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

---

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Thursday, March 31, 2022 9:36 AM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail
<afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda
<AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>;
External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-
law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey
<rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Chris,

Please explain what you mean by unilaterally cancelling a meet and confer? I'm not aware of what you are referencing.
The fact is, Defendants took nearly five weeks to respond to our January 21 letter. Despite that unexplained delay, which
meant that Defendants suddenly raised their request to confer at more difficult time for scheduling a conference, we
still carved out time and spent more than an hour on the phone with you. We then continued to confer, including
discussing sampling approaches with New York counsel, which both sides agreed would be beneficial, and spent, again,
more time than planned as defendants exhausted the hour and half they set the call for last week. Much of that
discussion did not address the issues in your letter at all, but rather where in an addition to meeting the substantial
completion deadline, the County had utterly completed its production of all documents. We also made clear to you at
the last call that we have continually sought defendants' position to inform our own and provide for a productive
discussion.

So that we can use our conference time to have a meaningful, productive discussion, please advise as to what issues
Defendants are raising with respect to the Interrogatories as supplemented. We believe we have addressed any issues
and need to know what Defendants are raising so that we can productively discuss them.

Concerning sampling, it is troubling that defendants assert they are not now providing a counter-proposal because they
feel they had too few hours before the conference a week ago to do so. That does not explain today's response.
Defendants have had both the County's proposal and detailed information from the conference for a full week at this
point. They have also had our last production with an especially detailed cover letter since March 16. To suggest there
has been insufficient time to formulate a proposal or response is not reasonable (nor do defendants, who had advised
they would respond earlier on our last call, actually suggest they had insufficient time over the past week to do so). You
state that you "have some questions" about the sampling proposal we discussed. Please let us know what those
questions are so that we can plan to address them before we speak. We also look forward to a counter-proposal from
Defendants concerning what *would* be sufficient.

Regarding the lengthy discussion of other issues, it is troubling that Defendants seem more interested in raising
disputes, and casting unfounded aspersions, than in resolving them or productively moving forward with discovery.
Defendants' position regarding RFP responses is particularly puzzling, including concerning issues we discussed over 90
minutes and believed we have resolved. Defendants seemingly shifting position, and the email below, cannot be
squared with Defendants' own discovery responses and approach to discovery, which entails asserting dozens of general
objections and then stating they will search or produce, or reserve the right to produce, certain documents – with far

less detail in any follow up than the County has provided. When we discussed this disconnect, you have asserted that different counsel handle affirmative and defensive discovery.  Regardless of which counsel press which effort for a defendant, however, that defendant cannot claim that a different standard applies to its own RFP responses than the County's. The time spent on this issue, and defendants' posture, is also puzzling in light of the history and established practice in this MDL for some four years now, including in the Track Three case against the pharmacy defendants. More broadly, in 4-5 years of working on opioid litigation, I cannot think of a time any defendant has taken the position the chain pharmacies are now asserting concerning the ability to understand discovery responses. It comes across as especially odd given the extent to which the County has gone above and beyond in its Responses—including providing exemplar Bates numbers in response to RFPs, for example, as well as in its detailed cover letters.

Troublingly, when we asked defendants to explain what they seek in one RFP, No. 27, they proved unable to do so. Instead, they attempted to avoid the issue and asserted that the purpose of a meet and confer is not for defendants to explain what they are seeking. When pressed, defendants than gave two conflicting answers. You asserted that the RFP clearly sought only discovery related to efforts to recover abatement relief. We then explained that we have provided the non-privileged information in response. A different counsel subsequently jumped in to disagree with your characterization of the RFP, stating that it was not limited to abatement, but directed to something different. When we asked whether it involves all past costs, such as grant information, defendants were unable to answer. As we have explained, the County's broad collection of documents may well mean that, notwithstanding the fact that the request is objectionable, responsive information has been obtained. We have yet to receive an explanation, however, of what defendants seek. Nor could defendants explain the relevance of the RFP to any issue in the Track 7 case. We therefore ask that you be prepared to discuss on the next call the information defendants were unable to provide as a unified position on our last conference. Specifically, we seek answers to the following questions: (1) is the request directed to abatement only, or something else; (2) how is this relevant to the Track 7 litigation; and (3) what type of information are you seeking/expecting to be responsive?

On that front, we note that defendants delayed past their own projected time-frame in responding to our sampling proposal, and failed to respond to my email below, but in the interim found time to write a 7-page letter about *other* discovery requests. Although Defendants objected to participation of any other Plaintiff's counsel in our previous conferences, suddenly, this correspondence is addressed to all Tracks. We expect the reason is that Defendants never previously raised any issue with the interrogatories in the letter they sent Tuesday evening in correspondence or prior conferences over the past five months. Neither the November nor the February letters from Defendants raise any issue with these Interrogatories. The only overlap is with RFP 27, and there is a complete disconnect with our discussion on that RFP, referenced above. Given defendants insistence on discussing these issues separately in Track 7, any attempt to add a late objection to responses with which Defendants never suggested they were taking issue in hours of conferences and correspondence is inappropriate.

Please respond concerning the issues Defendants seek to discuss regarding the Interrogatories referenced in your email below and the questions defendants have with respect to sampling (as well as their counter-proposal), and we will set a time to confer.

Best regards,

Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Wednesday, March 30, 2022 1:32 PM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail

<afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda
<AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>;
External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-
law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey
<rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

CAUTION:EXTERNAL

Lisa,

This isn't the first time that you've unilaterally cancelled a scheduled meet and confer call.  I shouldn't have to remind
you that after weeks of requesting supplemental responses and a sampling proposal from you, you provided them to us
just a few hours before our meet and confer call last Wednesday yet we still went forward with the call and tried to
make it productive.

The purpose of the call today was to discuss the interrogatories and document requests that we were not able to discuss
on our meet and confer call last week because you ended the call.  Your characterization of our discussion last week also
is inaccurate.  To the extent we asked questions about whether the county had produced documents in response to
certain requests it was because the county's written responses are littered with so many objections and are so
ambiguous that it was unclear to us what, if anything, the county intended to produce.  That has been a concern of ours
all along, and it was validated last week when you revealed for the first time that the county does not actually possess
documents responsive to several requests that the county previously indicated it would produce documents in response
to.  As we repeatedly advised in our correspondence to you and in our meet and confer calls, if you do not have
responsive documents, we would expect that you say that.

To that end, please confirm that the county does not possess documents responsive to RFP Nos. 11, 15, 17, and
18.  Please also confirm that the county does not possess documents responsive to RFP Nos. 3 and 4, other than what
may be referenced in the database extracts you provided and the Sheriff's Office and court files underlying those
extracts.  You also stated that, besides the documents specifically cited in its supplemental response, you do not believe
the county possesses any other documents responsive to RFP No. 9.  Please confirm that is the case.

With respect to the interrogatories, we only were able to discuss three of them before you ended the call.  As we
informed you on the call, the Pharmacy Defendants do not believe that the county's supplemental responses to
Interrogatory Nos. 1 and 11 are sufficient because, quite plainly, the county is refusing to provide the requested
information.  We also discussed Interrogatory No. 3 and you stated that the county is not aware of any responsive
information in its possession.  Please confirm that is the case.

As to the interrogatories that we were not able to discuss last week, the Pharmacy Defendants continue to believe that
many of the county's responses/supplemental responses are deficient.  Without waiving our position that Plaintiff's
responses are deficient (*e.g.*, ROG 13) or that Plaintiff will need to supplement a response at a later date, as Plaintiff has
committed to do in certain instances (*e.g.*, ROGs 7-9 (first set)), we would like to discuss Interrogatory Nos. 15, 16, 19,
and 20 (first set) and Interrogatory Nos. 5, 6, 7, 8, 10, 11, and 12 (second set) on our next call.  Those are the
interrogatories for which we sought to meet and confer with you today.  In addition, if the county will confirm that the
documents referenced in its supplemental responses to Interrogatory Nos. 5 and 12 (first set) are the only responsive
documents the county is aware of at this time, then it will not be necessary to discuss those responses further.

Additionally, we have some questions that we need to discuss with you about Plaintiff's sampling proposal regarding RFP
No. 5, which again you provided only hours before the last call.  Plaintiff's proposal is that "Defendants select 100
random records from each database for the County to collect and produce."  As you know, each database was produced
only on March 16, contains more than 20,000 incidents and more than 114,000 court cases, respectively, and provides

only a limited amount of information excerpted from a larger database.  We have some questions that we expect you can address on our next call, now that we have had time to review the database excerpts.

We do not, however, believe that the sampling proposal you offered is sufficient.  At a minimum, it is our position that underlying incident reports and court records related to ORC 2925.22 (Deception to obtain a dangerous drug) and ORC 2925.23 (Illegal processing of drug documents) should be produced by the county without any sampling.  These are the two code sections that diversion investigators in prior tracks identified as the ones most often associated with charges related to prescription drug diversion.  We also believe that there are relevant records associated with ORC 2925.03, 2925.11, and 2925.37.  We understand that those records would be voluminous and we are willing to discuss a sampling or targeted collection of a subset of the underlying documents associated with those code sections.  However, the search functions across the Motorola, Tiburon, and court database extracts are inconsistent which makes filtering difficult and that problem is exacerbated by the county's decision to exclude narrative fields from at least some of the database extracts.  Those are issues we need to discuss with you so that we can try to come up with a reasonable solution.

Lastly, we disagree with your statements about RFP 27.  We have always been, and continue to be consistent, that Plaintiff's response is problematic, and that Plaintiff needs to produce documents responsive to this RFP.  We've discussed our position in multiple letters, including the February 22, 2022 letter.  As you note, we also sent a letter to Plaintiffs regarding their failure to meet their obligations related to "abatement" discovery.  We will expect you to meet those obligations with respect to RFP 27 and other discovery requests that relate to Plaintiff's claims, including any abatement remedy it seeks.

We're available to continue this meet and confer tomorrow between 12:00-2:00 PM.  Please confirm that time works for you and we will send an invite.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Wednesday, March 30, 2022 8:34 AM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Chris,

We received a meeting invite but still no response to this email. We also have not received the response to our sampling proposal, which defendants anticipated they would send last week or at the latest, early this week. We have spent in excess of two and half hours conferring on defendants' past correspondence, without an update from Defendants. Much of that time was spent not on questions about *scope* of responses, the subject of this correspondence, but rather *timing* of production and, specifically, whether every document had gone out the door. Defendants have not yet advised which, if any issues with Interrogatory responses they did not raise on the last call are not moot by the supplements to those same responses.

We will need to reschedule this call until after receiving defendants' response and having had a chance to review Matthew Ladd's separate letter concerning RFPs, which is directed to all tracks despite defendants' unwillingness to confer with Plaintiffs together here for the sake of efficiency on the same Request. On our last call, defendants advanced two conflicting positions concerning the scope of the only RFP involving that issue, and we asked for information concerning what Defendants seek in this RFP which Defendants were unable to provide at that time. Please confirm Defendants will provide that information.

We will try to accommodate a time tomorrow that works for defendants if you will propose a time to reschedule.

Best regards,

Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** Saltzburg, Lisa M.
**Sent:** Tuesday, March 29, 2022 11:01 AM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

Chris, we can do 11EST. We'd like to have a chance to see defendants' response regarding sampling before the call. I know you had said last week/early this week. Could you let us know when we will receive that and what issues Defendants think are moot in light of the earlier supplement?

Best,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Monday, March 28, 2022 7:13 AM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail

<afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda
<AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>;
External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-
law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey
<rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

CAUTION:EXTERNAL

Lisa,

We're available on Wednesday morning.  How about 11:00 AM (EST)?

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

---

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Friday, March 25, 2022 7:39 PM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>; Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Sheetz <tscheetz@sperling-law.com>; Fu, Abigail
<afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda
<AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>;
External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-
law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey
<rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Chris,

Are you all available Wednesday morning? We can also do Thursday after 10AM. We look forward to hearing back from
you on the issues we discussed. If there are issues you think are moot given our prior correspondence, it would be
helpful to know that as well so we can focus our discussion next week.

Best regards,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Wednesday, March 23, 2022 2:36 PM
**To:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>; Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Sheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

CAUTION:EXTERNAL

Lisa,

We're available to complete the meet and confer any time this Friday.  We're also available next Monday between 9:00 AM and 2:00 PM or any time next Tuesday.  Please let us know if any of those windows work.  Thanks.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Sunday, March 20, 2022 7:11 PM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Sheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Lisa: I just sent a meeting invite for Wednesday from 3 until 4:30.  It would be helpful to have the discovery supplement and the "sampling" proposal by Tuesday so that we have enough time to review and hopefully remove some of the issues from the discussion agenda.  Thank you.

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Saturday, March 19, 2022 11:47 PM
**To:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>; McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Sheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda

<AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians


Jennifer,

We spent over an hour conferring with Defendants on these issues after Defendants took more than a month to respond to our letter addressing them, and then demanded that we both respond and complete a meet and confer within essentially the same amount of time it has taken Defendants to confirm Wednesday will work for them here. This is sort of delay of 4-5 weeks, only to demand that the County respond at the drop of a hat, is not productive, and to respond to the lengthy recitation below would only distract from productively moving forward.

We do plan to provide a supplement, and rather than doing it piecemeal last week and next week before the conference, will plan to supplement before we confer on Wednesday. I did anticipate it being sooner, so apologies for my estimate being off on that. In the meantime, although not obligated to do so, we have also, for example, provided bates numbers of RFP responsive documents. We will also be transposing the information we already provided via letter into the responses as discussed. I believe both sides agreed on our last call that it would be helpful to have the benefit of the background on the New York experience before we speak again. We remain puzzled by Defendants' insistence that, before they can tell us if they will categorically oppose any sampling approach, no matter what we describe on our next call, they desire that we provide this additional information before they will disclose their position on that front. We have, nevertheless, coordinated with New York counsel as planned, and hope we can have a productive discussion on Wednesday.

We look forward to a productive discussion on Wednesday. Between 3-4:30 eastern is best for me, but we can make any time after noon eastern work. Would you like to circulate a call in, or do you prefer we do?

Best,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Friday, March 18, 2022 10:04 AM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>; Mike Burns <mburns@hilgersgraben.com>; Ronda Harvey <rharvey@bowlesrice.com>
**Subject:** RE: Montgomery County document custodians
**Importance:** High

CAUTION:EXTERNAL

Good afternoon Lisa:  Confirming that the Pharmacy Defendants are available for a meet and confer on **Wednesday, March 23, 2022** at a time convenient for you.  We will preliminarily choose **11 a.m. EST**; however, we want to make it clear that we will make ourselves available at any time of your choosing that day given the importance of the resolution of these discovery issues.  To recap the written discovery process with you, we observe the following:

- On November 24, 2021, we sent our initial correspondence outlining the deficiencies in the County's responses to the Pharmacy Defendants' first sets of interrogatories and documents.

- After not receiving a response to the correspondence dated November 24, 2021, we sent an email inquiry dated December 7, 2021, requesting a response to the issues raised in the deficiency letter dated November 24, 2021.

- Ten days later, on December 17, 2021, we sent another email requesting a response by December 22, 2021.

- On December 21, 2021, you responded by email stating that you were ". . . not able to respond tomorrow given the holiday schedules, but will aim to send a response letter next week."

- After not receiving any response to the original deficiency letter or the follow-up emails, Special Master Cohen, at the request of the Pharmacy Defendants on January 7, 2022, ordered you to respond to the deficiency letter by January 14, 2022.

- In the meantime, on January 13, 2022, we sent another letter outlining deficiencies in the County's responses to the Pharmacy Defendants' second set of interrogatories.

- On January 14, 2022, the County finally responded to the original deficiency letter, however, the response failed to substantially address the concerns raised by the Pharmacy Defendants.

- Although our initial letter raised problems with the County's responses to 12 interrogatories and 13 documents requests, on January 21, 2022, the County supplemented only 1 interrogatory from the Pharmacy Defendants' first set of interrogatories and none of the County's problematic responses to the Pharmacy Defendants' first set of document requests.

- On February 22, 2022, the Pharmacy Defendants sent another letter once again outlining the outstanding deficiencies in the County's discovery responses. In that correspondence, we requested a meet and confer to discuss the outstanding issues.

- You responded on February 25, 2022, agreeing to meet and confer.

- The parties met and conferred on March 2, 2022.  At that time, you were not prepared to discuss all of the issues that remained outstanding.  In fact, you refused to discuss many of the interrogatories or requests for production at issue without the involvement of counsel for the plaintiffs in the other tracks, even though the purpose of the meet and confer was to discuss Montgomery County's deficient responses.  Furthermore, we could not finish the discussion on the discovery requests that you were willing to discuss because of the limited time that you had available that day.

- So, we agreed to schedule a follow-up meet and confer call.  In the meantime, you promised to provide the following prior to our next meet and confer:

- o Updated RFP responses
- o Updated ROG responses
- o A proposal on the "sampling" the County proposed.  As we explained, we could not evaluate your unilateral attempt to impose a sampling of documents in response to numerous RFPs without understanding what specifically you proposed to do.  We also stated that we did not believe we were likely to agree to sampling, but that we would consider and evaluate any specific proposal that you provided.

- To date, we still have not received any of the promised supplements to our discovery requests.  On March 9, 2022 at 5:11 PM, you sent an email stating that, while the County plans to supplement its interrogatory responses, it "will likely do that on a rolling basis as we continue to evaluate your request" and you committed to "send a supplement next week."  You also provided a clarification that you "believe[d] the parties had previously resolved," which was that the county had produced documents in responses to RFPs 21, 22, and 23.  While we disagree that that issue had previously been resolved (it had not), we appreciate the clarification and the information you provided on those RFPs, but we are still waiting for the promised supplementation of all of your RFP responses, which we explained was required to allow us to understand, at least generally, what you were agreeing to provide in response to the RFPs.

- In your email, you also "suggest[ed that] we confer again next Thursday or Friday between 12-1:30."  Upon receiving your email, the Pharmacy Defendants in Track 7 coordinated on availability, and we replied less than two days later at 3:46 PM on March 11 that we were available at the time you proposed on Friday.  You never replied to our email confirming the time you proposed, so we followed up on March 16.  You then stated that the time no longer worked for plaintiffs.  As we explained in our last meet and confer, we need you to provide the supplementation you promised and be prepared to discuss all remaining outstanding issues, so we can understand where the parties might still have a disagreement, what issues we might be able to reach a compromise on, and the issues on which we have reached an impasse.  We are particularly concerned with the delay, because, despite our effort to work with you on custodians, you later claimed in your March 14 letter to Special Master Cohen that we were "late" in raising issues.  Your March 9 email, which incorrectly complained that "defendants are raising issues so late," suggests that you are planning to pursue the same approach again.  Given the history here, such an argument would be meritless, but let us know immediately if you intend to make such a claim. If so, we will simply raise our issues with Special Master Cohen.  If, however, you are prepared to have a meaningful discussion with us so that we can understand your positions, see if we can reach agreement, and narrow issues where possible we would prefer that approach.

Given the fact that you have made productions in this case prior to our working through the deficiencies that we have outlined in our various letters, including on the issue of "sampling," it is our position that Montgomery County has unilaterally attempted to impose sampling without providing us with any explanation as to its "sampling" protocol or methodology.  You provided no details on what type of "sampling" you proposed, and therefore, we rejected it.  In our last meet and confer, we raised the issue again, and you still have provided no description, details, or explanation about the proposed sampling for us to evaluate.  Consequently, we expect the county to produce all responsive documents as requested and without sampling.

Your continued delays in response to our good faith efforts to work with you are causing issues in the fast-tracked discovery schedule. Please confirm your availability on **March 23 at 11 a.m. EST**.  Furthermore, please confirm that we will receive all written responses outlined above prior to that meeting. Thank you.

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Wednesday, March 16, 2022 11:30 PM
**To:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>; McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>
**Subject:** RE: Montgomery County document custodians

Jennifer, Friday does not still work for us, but we could set a time on Wednesday if that works for you?
Best,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

**From:** Jennifer Hagedorn <jhagedorn@bowlesrice.com>
**Sent:** Wednesday, March 16, 2022 4:43 AM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>; McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>
**Subject:** RE: Montgomery County document custodians

CAUTION:EXTERNAL

Lisa: Following up on this request to meet and confer on Friday at 1:30 p.m. on the outstanding issues related to Montgomery County's responses to written discovery.  Please advise so we can calendar this meeting.   Thank you.

**From:** Jennifer Hagedorn
**Sent:** Friday, March 11, 2022 3:46 PM
**To:** 'Saltzburg, Lisa M.' <lsaltzburg@motleyrice.com>; McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>
**Subject:** RE: Montgomery County document custodians

Lisa: Counsel to the Pharmacy Defendants are available next Friday from noon until 1:30 p.m.  Please confirm that this time still works for you.  Thank you.

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Wednesday, March 9, 2022 5:11 PM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; Jennifer Hagedorn <jhagedorn@bowlesrice.com>; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>
**Subject:** RE: Montgomery County document custodians


Chris,

We previously responded as to all custodians with the County's final position. As set forth below, we believe the County's list is more than generous in terms of the overall list and accommodating Defendants shifting positions and request for repeated responses on the same issues. On that front, we believe the shifting requests by Defendants, particularly so late in the discovery period, are distracting from the County's efforts to productively move forward with discovery. Defendants did not seek to address custodians at all during the meet and confer and we have not construed this issue as being one subject to further discussion.

The County does plan to supplement rogg responses and will likely do that on a rolling basis as we continue to evaluate your request. We plan to send a supplement next week. As discussed, we also include clarification of issues we believe the parties previously resolved and on which we previously corresponded over an extended period of time. In the interim we note the following concerning RFPs 21, 22, and 23 as examples of documents already produced:

- Prescription disposal program. We produced responsive documents, examples: MC_000102302, MC_000145454, MC_000133717, MC_001195863, MC_000918093, MC_000918110, MC_000918941, MC_000919052, MC_000135646
- Addiction treatment programs. We produced responsive documents, examples: MC_000001624-MC_000001636
- Drug abuse prevention or education programs. We produced responsive documents, examples: MC_000135634, MC_000135969, MC_000138456, MC_000139143, MC_001194045

We are also very concerned that defendants are raising issues so late, while the parties have yet to resolve the search issues we have been seeking to negotiate for months. Since our call went over an hour without resolving everything before, and all parties agree it would be helpful to better understand each other's position regarding sampling, we'd suggest we confer again next Thursday or Friday between 12-1:30.

Best,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Tuesday, March 8, 2022 11:29 AM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; alex.harris@bartlitbeck.com; External User - Jenn Hagedorn

<jhagedorn@bowlesrice.com>; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>
**Subject:** RE: Montgomery County document custodians

CAUTION:EXTERNAL

Lisa,

Following up on this.  What is your position on Sheriff Plummer and the three TFOs?

In addition, when do you expect to provide the written response and additional information you committed to providing on our meet and confer call last Wednesday?  And when are you available for a follow-up meet and confer call so that we can discuss the items that weren't addressed on our call last week.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

**From:** McLaughlin, Christopher M.
**Sent:** Wednesday, March 2, 2022 12:52 PM
**To:** 'Saltzburg, Lisa M.' <lsaltzburg@motleyrice.com>
**Cc:** Gates, Lisa B. <lgates@jonesday.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>; External User - Jenn Hagedorn <jhagedorn@bowlesrice.com>; Morrison, Kristin S.M. <kmorrison@jonesday.com>; External User - Steven Herman <SHerman@zuckerman.com>; External User - Trevor Sheetz <tscheetz@sperling-law.com>; Peter Bigelow <pbigelow@hilgersgraben.com>
**Subject:** RE: Montgomery County document custodians

Lisa,

We too would like to bring this to a close.  There have been multiple communications and calls back and forth on this, so I thought it would be helpful to recap where things stand.

In addition to its initial list of document custodians, the county has agreed to add Jim Gross, Jessica Jenkins, Helen Jones-Kelley, Jodi Long, Larry Sexton, Tom Kelley, and Dawn Schwartz (who you suggested as a substitute for the other court custodians we identified).  Most of these additional custodians are associated with county departments or agencies that were not covered on the county's initial list.  In addition, you advised that the custodial files of Jewell Good, Chris Williams, James Davis, and Timothy Nolan have been deleted or destroyed.

We, in turn, withdrew our requests for the custodial files of Jeremy Roy, Jeff Lykins, Steve Stine, and Doug Thomson.  In the spirit of compromise and in an effort to bring this to a conclusion, the Pharmacy Defendants withdraw their requests for the custodial files of Terri Hawk, Mary Kay Stirling, Carlos Walker, Andy Flagg, and Mike Brem.

We do not, however, withdraw our requests for the custodial files of former Sheriff Phil Plummer and the three DEA/HIDTA task force officers that Special Master Cohen required the county to identify.  If the county agrees to add them as custodians, then this dispute will be resolved.  If not, the Pharmacy Defendants will raise this issue with Special Master Cohen.

Our reservation of rights, which all parties have used in various circumstances, is merely meant to preserve our right to seek additional information if warranted and necessary based on the discovery we receive from the county.  We do not, at this time, have reason to believe that will be necessary.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

---

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Friday, February 25, 2022 4:00 PM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Chris,

We disagree with your characterization of the background and Defendants' submission but in the interest of time, will refrain from rehashing the dispute. The County has already agreed to 35 custodians and, as we've discussed, adding additional custodians is neither warranted nor justified by Defendants who, now, rather than offering to reach an end point, claim to reserve the right to seek still *additional* custodians. The County has more than covered the relevant agencies and relevant job positions.  That being said, in the spirit of compromise and to push this to conclusion in order to make the March 11 deadline, the County agrees to add **Dawn Schwartz** of the Common Pleas Court and **Tom Kelley** of Human Services.

We will not agree to add additional custodians from the Sheriff's office, as per our prior conversations and letters, we feel this agency is more than fully represented by the seven custodians already proposed. Further, the custodial documents requested would be cumulative and have not been justified by any claim of unique information.  Concerning the task force members there is also the safety concern to the officers, confidentiality obligation, and the burden of privilege review, which is particularly unwarranted given that defendants in prior tracks over the years have not ultimately used the materials.

We believe the County has been generous in its custodian list and stands on its current list of **37 custodians**, which are being produced in addition to voluminous non-custodial files.

Best regards,

Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Tuesday, February 15, 2022 10:42 AM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>
**Subject:** RE: Montgomery County document custodians

> CAUTION:EXTERNAL

Lisa,

Thank you for your email and for providing some of the additional information we requested.

As I explained on our meet and confer call, the Pharmacy Defendants did not bring a "narrowed dispute" concerning custodians before Special Master Cohen.  We merely pointed out, among other things, that the county had not been responsive to our correspondence and appeared to be taking positions on custodians that we believed were unjustified (citing three individuals as examples).  I responded to the other points you raise below in prior correspondence and on our meet and confer call.  Rather than address them again, I agree that the best use of our time at this point is to try and reach a compromise on this issue and move forward.

To that end, the Pharmacy Defendants will agree to the following:

**ADAMHS**:  We withdraw our request for the custodial file of Doug Thomson.

**Courts**:  We accept your offer to add Dawn Schwartz as a custodian.  Given the short time period that she has been in her current position, however, we maintain our request that the county also add Terri Hawk as a custodian.  If the county agrees to add them as custodians, we will withdraw our requests for the custodial files of Mary Kay Stirling and Carlos Walker.

**Human Services/Job and Family Services**:  We maintain our request that the county add Tom Kelley as a custodian.

**Insurance/Worker's Compensation**:  In prior correspondence, you indicated that the county intends to produce responsive, non-custodial files related to its insurance benefits and workers' compensation claims.  The Pharmacy Defendants are willing to table any request for the custodial files of Joyce Carter and Pamela Gilbert until we have the opportunity to evaluate the sufficiency of the forthcoming production of non-custodial files.

**Sheriff's Office**.  We maintain our requests that the county add Phil Plummer and the three DEA/HIDTA task force officers as custodians.  If the county agrees to add them as custodians, we will withdraw our requests for the custodial files of Andy Flagg and Mike Brem.

We believe this is a reasonable compromise.  Please advise if we have an agreement under the terms outlined above.  If you'd like to discuss any of this further, let us know.

For the avoidance of doubt, the Pharmacy Defendants reserve the right to request custodial files of other county witnesses (either those withdrawn as part of our negotiations or others) to the extent that the county's document production or deponents reveal information warranting the production of their custodial files.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

---

**From:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Sent:** Tuesday, February 15, 2022 9:42 AM
**To:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>; Elsner, Mike <melsner@motleyrice.com>; Unterreiner, Amanda <AUnterreiner@motleyrice.com>
**Subject:** RE: Montgomery County document custodians

** External mail **

Thank you Chris. We remain concerned that five weeks after the County's Dec. 17 letter, and after already raising a narrowed dispute before Special Master Cohen, Defendants are now seeking to add *thirteen* additional custodians – an addition the size of new Defendants Kroger's and Meijer's entire respective lists, on top of the 5 added custodians about which the County proposed to compromise. This is particularly true given that although Defendants seek 14 custodians from the Sheriff's office, a clearly excessive amount, Defendants have made clear they are not suggesting the County selected the wrong people for its list and would not substitute any proposed custodian for one of the custodians the County identified. We appreciate that there seems to be some movement and hope there is some room to reach a middle ground, but caution that it would entail few, if any additions at this stage, in which substantial time already has been consumed by serial responses to the same inquiries.

In the spirit of continued negotiation, we are providing additional information you requested concerning certain individuals, with the understanding that, as discussed on our call, seeking 3-4 custodians from the courts and 14 from the Sheriff's Office is not something Defendants have justified, and we are taking the time to provide this detail with the understanding Defendants are reevaluating their position.

Dawn Schwartz is the Program Coordinator for Addiction Treatment and Programming at the Montgomery County Common Pleas Court.  In this role, she assists in assessments and placements for treatment for all four specialty courts (Drug Court, Mental Health Court, Veteran's Treatment Court, and Woman's Therapeutic Court).  She is on COAT as well as the Treatment Advisory Council at the courts.
- Started in June 2002 as a basic probation officer
- July 2003 promoted to senior probation officer
- 2003- October 2015 - chemical abuse/mental health probation officer
- November 2015-June 2021 Men's Drug Court senior probation officer.
- July 2021 – Promoted to Program Coordinator for Addiction Treatment and Programming, Montgomery County Common Pleas Court - General Division

We also confirmed that Detective Overholt has been assigned to the RANGE Task Force since 2012, and that Josh Walters served on the RANGE task force from 2010-2013, going straight from there to the Bulk Smuggling Task Force in 2013.

Best,
Lisa

**Lisa Saltzburg** | Attorney at Law | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9630 | f. 843.216.9450 | lsaltzburg@motleyrice.com

---

**From:** McLaughlin, Christopher M. <cmmclaughlin@JonesDay.com>
**Sent:** Thursday, February 10, 2022 6:25 PM
**To:** Saltzburg, Lisa M. <lsaltzburg@motleyrice.com>
**Cc:** Gates, Lisa B. <lgates@JonesDay.com>; Trevor Scheetz <tscheetz@sperling-law.com>; Fu, Abigail <afu@motleyrice.com>
**Subject:** Montgomery County document custodians

CAUTION:EXTERNAL

Lisa,

As discussed on our meet and confer call this afternoon, we appreciate your willingness to provide the following additional information about some of the county's custodians:

- Dawn Schwartz's position(s) and timeframes of employment with the county.  I believe you mentioned that she is the Program Coordinator for Mental Health and Addiction Treatment at the county court as well as a member of COAT and the Treatment Advisory Council.  Please confirm if that is correct and let us know if she has held any other positions with the county and her timeframes of employment.

- The table on page 2 of your February 7 letter identifies Matthew Overholt as a "Detective – Range Task Force," but you later described him as a member of the "Bulk Smuggling Task Force."  Can you clarify which task force Detective Overholt is attached to and the time period that he's been involved with that task force?

- Your February 7 letter provides that Josh Walters joined the Bulk Smuggling Task Force in 2014 and that he became the "director" of that task force in 2018, a position he still holds today.  You also stated in your letter that Detective Walters joined the RANGE task force in 2010.  Can you clarify whether he was a member of the RANGE task force from 2010 until 2014 when he joined the Bulk Smuggling Task Force?

- Your February 7 letter provides that Terry Ables has been "supervising" the RANGE Task Force since 2013 and that since October 2021 he also "oversees" the Bulk Smuggling Task Force.  The Sheriff's Office website indicates that Captain Andy Flagg "oversees" both task forces and also that Captain Ables "oversees" both task forces.  Can you clarify if they have joint oversight of the task forces or whether each oversaw one or both task forces at different times?  Can you also clarify the difference between being a "director," "supervising," and overseeing the task forces?

We would appreciate it if you would provide this information as soon as possible so that we can make a decision about whether we can withdraw any of our requests for additional custodians from the county court system and the Sheriff's Office.  I will speak to the pharmacy group about the other custodians we discussed today as well, so that I'll be in a

position to make a proposal to you regarding all of the custodians at issue promptly after receiving the above information.  Thank you.

Chris

Christopher M. McLaughlin
Partner
**JONES DAY® - One Firm Worldwide℠**
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Office +1.216.586.7507

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**Jennifer B. Hagedorn**
Bowles Rice LLP
jhagedorn@bowlesrice.com

1800 Main Street, Suite 200 | Canonsburg, PA 15317
Tel: (724) 514-8940 | Fax: (724) 514-8954
Bio | vCard

## Bowles Rice

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**Jennifer B. Hagedorn**
Bowles Rice LLP
jhagedorn@bowlesrice.com
1800 Main Street, Suite 200 | Canonsburg, PA 15317
Tel: (724) 514-8940 | Fax: (724) 514-8954
Bio | vCard

## Bowles Rice

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**Jennifer B. Hagedorn**

Bowles Rice LLP
jhagedorn@bowlesrice.com

1800 Main Street, Suite 200 | Canonsburg, PA 15317

Tel: (724) 514-8940 | Fax: (724) 514-8954

Bio | vCard

## Bowles Rice

CONFIDENTIAL AND PRIVILEGED: This e-mail is confidential and privileged, and intended only for the review and use of the addressee(s). If you have received this e-mail in error, please notify the sender at (724) 514-8940 or by e-mail at jhagedorn@bowlesrice.com. Thank you.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**EXHIBIT 2.12**

| | |
|---|---|
| **From:** | Unterreiner, Amanda <AUnterreiner@motleyrice.com> |
| **Sent:** | Wednesday, March 23, 2022 11:46 AM |
| **To:** | Tracks6to10Defendants@bbhps.com; ct7-11_opioidbwteam@simmonsfirm.com |
| **Cc:** | Elsner, Mike; Saltzburg, Lisa M.; Rivers, Tammy; Fu, Abigail |
| **Subject:** | CT7 - Montgomery County Supplemental Interrogatory Responses |
| **Attachments:** | 2022.3.23 MC Supp. Responses to Defs 1st Set RFP.pdf; 2022.3.23 Plaintiff's Supp. Responses and Objections to Defendants' Second Set of Interrogatories.pdf; 20220323 MoCo Supp. Resp. First Set Roggs_FINAL.pdf |
| **Importance:** | High |

** External mail **

Counsel,

Attached please find the County's Supplemental Responses to Interrogatories 1, 5, 11-13, & 15-20 (1st Set); Interrogatories 5 & 7-8 (2nd Set); and RFPs 1, 2-5, 7-9, 11-15, 17-23 & 27.

In addition, to facilitate our conference, we note that:

The County searched the Sheriff's and Court's databases for incidents and cases responsive to defendants' discovery requests.  As previously explained, the County used the ORC codes listed in Lisa Saltzburg's January 14, 2022 letter in order to identify responsive records.  All cases and incidents with one of these ORC codes were produced as follows:

- Sheriff incident reports from Motorola and Tiburon databases, MC_001608804
- Clerk of Court, Court of Common Pleas cases, MC_001595950

The database extracts produced by the County contain additional non-privileged information, where available, which provides information on each record.  In both the Sheriff's database and the Clerk of Court's, pulling the underlying incident report/court documents requires an individual to convert each document to PDF and then download it from their system.  Given there are over 20,000 sheriff incidents in MC_001608804 and over 114,000 court cases in MC_001595950, producing each and every document is unduly burdensome taking into account the needs of this case.  The Sheriff office estimates pulling each report and its supplements to take from 10-45 minutes, depending on the complexity of the case.  The Courts estimate pulling 100 records will take about one week, and some cases will have hundreds of pages of records associated with it.

The County proposes using a sampling method such that a subset of these records produced.  The County proposes Defendants select 100 random records from each database for the County to collect and produce.

We look forward to speaking today.

Thanks,

1

**Amanda Unterreiner** | Paralegal | Motley Rice LLC
28 Bridgeside Blvd. | Mt. Pleasant, SC 29464
o. 843.216.9210 | f. 843.216.9450 | AUnterreiner@motleyrice.com

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distr bution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

MDL No. 2804

This document relates to:
Case No. 1:18-op-46326-DAP

Case No. 17-md-2804

THE MONTGOMERY COUNTY BOARD OF
COUNTY COMMISSIONERS and THE STATE
OF OHIO *EX REL.* MATHIAS H. HECK, JR.,
PROSECUTING ATTORNEY,

Judge Dan Aaron Polster

Plaintiff,

vs.

CARDINAL HEALTH, INC. et al.,

Defendants.

**PLAINTIFF'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO THE**
**PHARMACY DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as the local rules and

orders of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or

"County") hereby responds to the Pharmacy Defendants (collectively "Defendants" or "Chain

Pharmacies") First Set of Interrogatories (the "Interrogatories" and, each individually, an

"Interrogatory"), as follows:

**OBJECTIONS**

The following objections apply to each Interrogatory. To the extent that certain specific

objections are cited in response to an individual Interrogatory, those specific objections are

1

provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.     Plaintiff objects to each Interrogatory to the extent it is overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this MDL or the Local Rules of the United States District Court of the Northern District of Ohio.

2.     These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein. All such objections and the grounds therefore are hereby reserved.

3.     No admission of any nature whatsoever is to be implied or inferred in these responses. The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

4.     Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet received adequate discovery from Defendants. As a result, Plaintiff has not completed its investigation of the facts relating to this action and have not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

5.     Plaintiff objects to each Interrogatory to the extent it purports to require Plaintiff to produce documents that are in the public domain or otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff.

6.     Plaintiff objects to each Interrogatory to the extent it seeks information more appropriately obtained through other methods of discovery.

7.     Plaintiff objects to each Interrogatory to the extent that it seeks information that is privileged or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

8.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

9.     Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control" and which constitute the records of, or that belong to, the County or its departments.

10.     Plaintiff objects to each Interrogatory to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

11.     Plaintiff objects to each Interrogatory to the extent it seeks information that is not information belonging to the County within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff. Plaintiff's responses may reference documents and/or information provided by other parties in this MDL. Plaintiff's reference to such

3

documents is not intended to signify that Plaintiff maintains possession, custody, or control of these documents or that they belong to the County.

12.  Plaintiff objects to each Interrogatory to the extent it prematurely seeks expert opinion(s). All expert opinions will be disclosed on the dates set forth in the Case Management Order.

13.  Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

14.  Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that it seeks discovery that is not relevant to any party's claims or defenses.

15.  Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they are overly burdensome and not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

16.  Plaintiff objects to these Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, because they seek discovery that is not relevant to a claim or defense or proportional to the needs of the case.

17. Plaintiff objects to these Interrogatories to the extent they seek protected health information.

18.  Plaintiff objects to these Interrogatories to the extent that they include multiple subparts. Plaintiff further objects to these Interrogatories on the grounds that they are

4

individually and collectively overbroad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of the case. To the extent that Plaintiff agrees to respond to these Interrogatories, Plaintiff is agreeing to produce only the information it identifies in its Response.

19.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they seek information that: (a) is in Defendants' possession, custody, or control; (b) is equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; (d) is not reasonably accessible to Plaintiff; and/or € is publicly available to Defendants. With regard to any Response that Plaintiff provides, Plaintiff's Response will be limited to relevant, responsive, and non-privileged information in its possession, custody, or control of, and belonging to, the County located after a reasonable search that is proportional to the needs of the case.

20.     Plaintiff objects to these Interrogatories to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

21.     Plaintiff objects to these Interrogatories, and to the Interrogatories' Definitions and Instructions, to the extent that any Interrogatory, Definition, or Instruction: (a) is unduly burdensome, oppressive, overbroad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Plaintiff to draw a legal conclusion in order to respond.

22.     Plaintiff objects to the Interrogatories that purport to require that Plaintiff provide discovery with regard to "any," "each," "every," "all," or similar all-encompassing wording, on the grounds that such Interrogatories are overly broad, unduly burdensome, seek discovery that is

not relevant to any party's claims or defenses, not proportional to the needs of the case, and beyond the scope of permissible discovery, particularly at this stage of the proceeding.

23. Plaintiff objects to the Interrogatories to the extent that they seek premature expert discovery or disclosure of expert opinions and go beyond the scope of permissible expert discovery under the Discovery Rules. Plaintiff will provide expert discovery and disclosures in compliance with the Discovery Rules but assumes no further obligation.

24. Plaintiff's investigation and discovery are ongoing as to all matters referred to in these Objections and Responses to Defendants' Interrogatories. Plaintiff's Responses are based upon information that has been collected and reviewed to date for the purpose of responding to these Interrogatories, and they are not prepared from the personal knowledge of any single individual. Plaintiff reserves the right to amend and supplement these Responses as discovery and this litigation proceed.

25. Responding to these Interrogatories does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD- 2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible.

26.     Plaintiff objects to these Interrogatories to the extent they seek to compel individual proof, or to compel Plaintiff to use any particular method of proof, at trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiff objects to the Definitions of "Plaintiff" and "You" on the grounds that they are overly broad, vague, and seek to extend the requests beyond the Plaintiff entities that are named as Plaintiff and represented by the Prosecutor's Office in this litigation. For purposes of its Responses, Plaintiff will consider "Plaintiff" and "You" to mean the  County  and will respond with regard to information and documents that are records of, or belong to, the County or its departments.

2.     Plaintiff objects to the Definitions of "Document" and "Communication" to the extent that it seeks to impose obligations on Plaintiff beyond those imposed by the Discovery Rules. Plaintiff will respond in accordance with the applicable Discovery Rules and assumes no further obligation.

3.     Plaintiff objects to the Definition of "related to" or "relating to" to the extent that the Definition goes beyond common usage of the term, results in Interrogatories that are overbroad, vague, ambiguous, and unduly burdensome and, using Defendants' Definition of "related to" or "relating to," seeks discovery that is not relevant to any party's claims or defenses, nor proportional to the needs of the case, purports to impose obligations or burdens on Plaintiff that go beyond the Discovery Rules, and makes demands for information and documents that are not in Plaintiff's possession, custody, or control or records that belong to the County. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to an Interrogatory not otherwise stated in the actual Interrogatory and creates a compound Interrogatory. Plaintiff will respond to the Interrogatory as propounded, subject to its Objections,

and does not agree to respond with regard to additional requirements or questions that Plaintiff purports to impose through their Definition of "related to" or "relating to."

4.    Plaintiff objects to the Definition of "Relevant Time Period" to the extent it seeks to impose obligations on the Plaintiff beyond those outlined in *Discovery Ruling 3* (Doc #: 762) (Filed: 07/1//18). Plaintiff will respond in accordance with *Discovery Ruling 3* and assumes no further obligation.

5.    Plaintiff objects to Definitions 1 through 21 and Instructions 1 through 7 on the grounds that they are overly burdensome and seek to impose obligations or burdens on Plaintiff that go beyond those imposed by the Discovery Rules. Plaintiff will comply with the Discovery Rules.

### NON-WAIVER

1.    Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.    If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.    Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.    Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to

supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory No. 1:

Identify each prescription for a Prescription Opioid or Cocktail Medication that you contend was diverted.

### Response to Interrogatory No. 1:

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible.

Plaintiff is not obligated to provide individualized proof of diversion to establish its public nuisance claim.

In addition to its General Objections, Plaintiff objects to this Interrogatory because it is overly broad, unduly burdensome, in that it seeks "to identify each prescription." The burden is totally disproportional to the needs of the case.

Plaintiff objects to this Interrogatory as calling for premature disclosure of expert opinion. Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the CMO in this case and the Federal Rules of Civil Procedure.

Plaintiff further objects to this Interrogatory because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff. Plaintiff is not claiming any damages on behalf an individual or group of individuals who were harmed by Defendants' conduct and the public nuisance claim does not require a showing that any third-party individuals were harmed.

Additionally, Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26.

Subject to and without waiving its objections, Plaintiff refers Defendants to the supplemental pleading served May 19, 2021 and notes that Plaintiff will comply with Section D.2 of the CMO in this case. Plaintiff intends to show that significant numbers of prescriptions filled by Defendants were diverted, but is not obligated to identify, or even to know, each and every such prescription; indeed it is not possible to know every prescription that was diverted. Subject to the objections and limitations described above, Plaintiff also provides the following list of health care providers who were prosecuted, or the subject of disciplinary actions for their illegal or improper prescribing of opioids, as follows:

- David Kirkwood
- Morris Brown

- Han Yang
- John Dahlsten
- Nilesh Jobalia
- Darrell Hall
- Victor Georgescu
- Daniel Brumfield
- Richard Sievers
- Bruce Kay
- Noel Watson
- Laila Gomaa
- Stephen House
- John Moore
- Julia Lucente
- James Laub
- Daniel Brumfield
- Margaret Edwards
- Raymond Noshang

Plaintiff is not obligated to identify every prescription from these, or other prescribers that were diverted. Plaintiff reserves the right to supplement and amend this response as discovery proceeds. Plaintiff also reserved the right to identify additional prescriptions, including through expert discovery.

**Interrogatory No. 2:**

Identify each instance in which You contend a pharmacy (including but not limited to a National Retail Pharmacy) knowingly allowed diversion of Prescription Opioids or Cocktail Medications to occur and the details You have regarding each such instance.

**Response to Interrogatory No. 2:**

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United*

11

*States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am.*, Inc., 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible and Plaintiff is not obligated to provide individual proof.

The burden is totally disproportional to the needs of the case.

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26.

Plaintiff further objects to this Interrogatory as irrelevant. Defendants misconstrue the claim and ignore that the Court has already held, for example, that a pharmacy may not fill a prescription that it knows or has reason to know is invalid and may not remain deliberately ignorant or willfully blind to the prescription information it has, including computerized reports it maintains. Employment of a pharmacist does not relieve a pharmacy or pharmacy owner of the obligation to ensure that only valid prescriptions are filled.[1] Plaintiff also objects to Defendants' reference to "knowingly" "allow[ing] diversion" to occur as vague.

Plaintiff objects to the term "each instance" as overly broad and disproportionately burdensome to Plaintiff. Plaintiff objects to this Interrogatory as calling for expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in

---

[1] Opinion and Order denying Defendants' motion to dismiss, Dkt. 3403 at 13-25; *see also Linden Med. Pharm. v. Ohio State Bd. of Pharm.*, 2001 Ohio App. LEXIS 2041, at *24 (Ohio Ct. App. 11th Dist. May 8, 2001) (explaining that the Ohio Administrative Code "places the ultimate responsibility upon the 'registrant' ... to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs" and that "licensees electing to operate a business through employees are responsible to the licensing authority for their conduct").

accordance with the CMO in this case and the Federal Rules of Civil Procedure.  Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff also objects to this Interrogatory as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals.  Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Interrogatory.  Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff do not require a showing that any third-party individuals were harmed.  The burden is totally disproportional to the needs of the case.

Plaintiff also objects to this Interrogatory in that it calls for information uniquely in the Defendants' possession or control.  The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Subject to and without waiving its objections, Plaintiff refers to Defendants to the supplemental pleading served May 19, 2021 and to its response to Interrogatory No. 1.  Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 3:**

Identify each pharmacy or pharmacist employee that has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the pharmacy's or pharmacist employee's dispensing of Prescription Opioids or Cocktail Medications.

**Response to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory as overbroad, unreasonably burdensome, and not proportional to the needs of the case, including because it is not addressed to Defendants' own pharmacies and employees and seeks information that is in the public domain, equally available to Defendants from other sources, or available through less burdensome means.  For example, information about pharmacies that faced disciplinary action from the Ohio Board of Pharmacy, including CVS and Rite Aid stores in the County, is publicly available online.  Defendants should also have records of which of their own employees faced law enforcement or other action.  Plaintiff objects to this interrogatory to the extent it seeks information covered by the law enforcement privilege.  Plaintiff further objects to this Interrogatory as also vague to the extent it references "participated in" and as to geographic scope.

Subject to and without waiving any objection, Plaintiff responds it will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments, pursuant to Federal Rule of Civil Procedure 33(d).  Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A
- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A

14

- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A
- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A
- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250

- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250
- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
- 472951E.90Z

**Interrogatory No. 4:**

Identify all Suspicious Orders for Prescription Opioids that You allege were shipped to a pharmacy, including the Pharmacy Defendants, in the Geographic Area during the Relevant Time Period, including for each the name and location of the pharmacy that placed the order, the distributor to whom it was placed, the respective dates that it was placed and shipped, the manufacturer, name and amount of the medication that was ordered and shipped, the reason(s) why the order was suspicious, Your criteria for determining that a Prescription Opioid order is a Suspicious Order, and, for all criteria identified, any support or sources for those criteria.

**Response to Interrogatory No. 4:**

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26. Plaintiff also objects to this Interrogatory as overbroad and unduly burdensome in going beyond the scope of even a contention Interrogatory. Defendants ask the County to make allegations about suspicious orders from any pharmacy, rather than the Chain Pharmacies who are the subject of the allegations in the public nuisance claim or stores to which the Chain Pharmacies distributed. The County "allege[s]" that *Defendants* failed to implement effective controls against diversion and shipped suspicious orders. It is not required to make allegations about other parties.

In addition, discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the

16

scheduling orders in this case and the Federal Rules of Civil Procedure. Plaintiff objects to this interrogatory to extent it calls for an expert opinion. Plaintiff objects to this interrogatory on the grounds the information sought is under the possession and control of the Defendants or the DEA. Plaintiff further objects to this interrogatory because the Defendants have failed to answer substantially similar discovery requests yet demand the Plaintiff do so without an adequate record and/or the benefit of expert witness testimony. Plaintiff's ability to respond is further limited by Defendants' failure to produce all information, including due diligence files, necessary to complete the requested analysis.

In a good faith effort to meet Plaintiff's discovery obligations and to comply with the Court's existing Discovery Rulings regarding substantially similar requests, and subject to and without waiving any objections or reservations of rights, Plaintiff refers Defendants to the ARCOS data and to: (a) the metrics from the decision in *Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206 (D.C. Cir. 2017), (b) orders flagged by Defendants' own suspicious order monitoring systems that they shipped without investigation, or due diligence clearing the suspicion and/or without reporting to DEA, and (c) orders which based on review of the data, should have alerted the pharmacy to investigate such orders for highly abused opioids, and which will be disclosed in expert discovery consistent with the deadlines in the CMO.

For the purposes of responding to this Interrogatory, Plaintiff has not attempted to identify every suspicious order, nor has Plaintiff applied every reasonable method for identifying suspicious orders, but has provided responses identifying methods and data to which those methods may be applied consistent with the Court's previous rulings, including, inter alia, Discovery Ruling 12.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court. The answer to this contention interrogatory "does not limit [Plaintiff's] experts from using different criteria to identify suspicious orders, and therefore from concluding that there exist suspicious orders in addition to those identified [herein]." *See* Discovery Ruling No. 7, p. 6. Plaintiff further reserves the right to supplement this answer based on additional discovery, including, without limitation any disclosure by Defendants of the system(s) the Defendants designed and/or operated to detect suspicious orders using Defendants' own metrics and production of Defendants' due diligence files.

**Interrogatory No. 5:**

Identify all false, fraudulent, and/or misleading information that You allege that any National Retail Pharmacy supplied to You, the DEA, the Ohio Board of Pharmacy, and/or any other Person or entity (including the United States Department of Justice, the Federal Bureau of Investigation, a United States Attorney's Office, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, and the Ohio Board of Medicine, and any other state or local law enforcement agency) about Suspicious Orders and/or Prescription Opioids.

**Response to Interrogatory No. 5:**

Plaintiff objects to the term "fraudulent" as requiring a legal determination more appropriate for the Court.

Plaintiff also objects to this request in that it calls for documents and information uniquely in the Defendants' possession or control and/or in the possession of third parties. The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources. Plaintiff objects to this interrogatory as prematurely calling for expert report or opinion.

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to

the pleadings in this case and Plaintiffs' motion to dismiss oppositions in CT3 (MDL Doc. 3366).

Subject to and without waiving any objection, Plaintiff  was not aware that Defendants' information was false, fraudulent, and/or misleading at the time it was provided to Plaintiff, the DEA, the Ohio Board of Pharmacy, and/or any other Person or entity (including the United States Department of Justice, the Federal Bureau of Investigation, a United States Attorney's Office, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, and the Ohio Board of Medicine, and any other state or local law enforcement agency) about Suspicious Orders and/or Prescription Opioids.  Additionally, Plaintiff identifies the following exemplar bates numbers of documents it intends to rely on:

- 2012 DEA Report of Investigation (US-DEA-00027006)
- WAGMDL00852039
- WAGMDL01014299
- WAGMDL00659802
- WAGMDL00002718
- WAGMDL_T1_TX00002807
- WAGMDL_T1_TX00002682
- WAGMDL_T1_TX00003162
- WAGMDL_T1_TX00003348
- WAGMDL00007388
- WAGMDL00035669
- WAGMDL00049753
- WAGMDL00303031

- WAGMDL00608995

- WAGMDL00429246

- WMT_MDL_000307891

- WMT_MDL_000317765

- WMT_MDL_000352888

- WMT_MDL_000260779

- HBC_MDL00137363

- HBC_MDL00135668

- Statements and documents provided by Walmart to the United States Department of Justice during the criminal investigation emanating out of the United States Attorney's Office for the Eastern District of Texas ("EDTX")

- For example, in November of 2013, CVS's Mark Nicastro, Director of Operations at the Indianapolis distribution center, mislead DEA agent, Daniel Gillen regarding the nature, operation and existence of CVS's Suspicious Order Monitoring policies and procedures. CVS-MDLT1-00000409; *see also* CVS-MDLT1-000008016 (January 26, 2016 email and letter from Betsy Ferguson to DEA regarding CVS's suspicious order monitoring system).

Plaintiff also refers Defendants to the materials referenced in Paragraphs 599-616 of the Supplemental Pleading. Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 6:**

Identify any and all forms of data that You allege pharmacies, including the Pharmacy Defendants, were required to use in order to satisfy the standard of care You claim is applicable in this case and the time period you contend that data was available and should have been used. For each form of data that You identify as required, please identify (a) the support and/or sources

for the requirement that pharmacies use it in such fashion, and (b) how it was communicated to pharmacies that such use of data was required.

**Response to Interrogatory No. 6:**

Plaintiff objects to the term "standard of care" as undefined, potentially irrelevant and more appropriately the subject of expert testimony. Plaintiff objects to "all forms of data" as overly broad. Plaintiff objects to this interrogatory as requiring Plaintiff to identify data sets in the possession, custody and control of defendants or third parties.

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refer Defendants to the Complaint in this case.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving objections, Plaintiff answers that the Defendants should have used any and all data that they used for any purpose or had in their actual possession, whether they used it or not, including but not limited to all distribution data, all dispensing data, all customer data and all data involving prescribers or patients.

**Interrogatory No. 7:**

Identify any and all training that You allege pharmacies, including the Pharmacy Defendants, were required to provide in order to satisfy the standard of care You claim is applicable in this case. For each aspect of training that You identify as required, please identify (a) to whom the training was required to be provided, (b) any support and/or sources for the training requirement, and (c) how it was communicated to pharmacies that such training was required.

**Response to Interrogatory No. 7:**

Plaintiff objects to the term "standard of care" as undefined and more appropriately the subject of expert testimony, if any. Plaintiff objects to the term "training" as vague, ambiguous and undefined. Plaintiff objects on the basis this information is within the Defendants' possession and control.

Subject to and without waiving objections, Plaintiff refers Defendants to Judge Polster's SOMS A Ruling (MDL Doc. 2483) in the MDL Track One cases, the Plaintiffs' motion to dismiss oppositions in CT3 (MDL Doc. 3366), and to the expert report of Carmen Catizone served in CT3.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement or amend this response as discovery proceeds.

**Interrogatory No. 8:**

Identify any and all policies and procedures that You allege pharmacies, including the Pharmacy Defendants, were required to put in place in order to satisfy the standard of care You claim is applicable in this Action and the years you claim each policy or procedure was required. For each policy or procedure that you identify as required, please identify (a) any support and/or sources for the requirement for such a policy or procedure, and (b) how it was communicated to pharmacies that such a policy or procedure was required.

**Response to Interrogatory No. 8:**

Plaintiff objects to this Interrogatory on the basis of the burden it attempts to create for Plaintiff beyond what is proportional to the needs of this case. Plaintiff is being asked to provide the Pharmacy Defendants with "all policies and procedures," something squarely in Defendants' possession and control. Plaintiff objects to the term "standard of care" as undefined and more properly the subject of expert testimony, if any.

Subject to and without waiving objections, Plaintiff responds that this is a contention interrogatory more appropriately answered at the close of discovery on the dispensing claims. *See* F.R.C.P. 26. The issue of what "policies and procedures" are and were in place is the subject of Plaintiff's ongoing discovery requests of Defendants here, making this request premature. Plaintiff refers Defendants to the supplemental pleading served May 19, 2021 in this case, to the "Track Three" summary judgment briefing (MDL Doc. 3877) and motion to dismiss briefing (MDL Doc. 3366), and to the Judge Polster's SOMS A Ruling (MDL Doc. 2483).

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 9:**

Identify any and all systems and/or programs that You allege pharmacies, including the Pharmacy Defendants, were required to implement in order to satisfy the standard of care You claim is applicable in this case. For each system that You identify, please explain it in detail, including without limitation by explaining: how it works in practice; what data, if any, it uses; the extent to which it is automated, if at all; what, if any, "red flags" it identifies and whether it identifies those "red flags" retrospectively or concurrently with the filling of prescriptions; how, if at all, it applies to pharmacists or should be used by pharmacists on receipt of a prescription; how it impacts, and/or whether it limits, the exercise of professional judgment by pharmacists in determining whether to fill a prescription; whether it imposes quantity limits and, if so, how; and how, if at all, it limits dispensing.

**Response to Interrogatory No. 9:**

Plaintiff objects to the term "standard of care" as undefined, irrelevant, and more appropriately the subject of expert testimony, if any. Plaintiff objects in that the identity of "all systems and/or programs" defendants were "required to implement" to safeguard against the proliferation of opioids are in the possession and control of the defendants.

Subject to and without waiving objections, Plaintiff responds as follows: this is a contention interrogatory more appropriately answered at the close of discovery on the dispensing claims. *See* F.R.C.P. 26.  The issue of what "systems and programs" are and were in place is the subject of Plaintiff ongoing discovery requests of Defendants here, making this request premature.  Plaintiff refers Defendants to the supplemental pleading served May 19, 2021 in this case, to the "Track Three" summary judgment briefing (MDL Doc. 3877) and motion to dismiss briefing (MDL Doc. 3366), and to the Judge Polster's SOMS A Ruling (MDL Doc. 2483).  In addition, Plaintiff refers Defendants to the forthcoming "red flag" related information which will be served pursuant to the deadlines in the CMO.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 10:**

Identify the specific provision(s) of each governmental or industry regulation, standard, guideline, recommendation, accepted practice, or custom that You contend was applicable to the lawful distribution of Prescription Opioids by the Pharmacy Defendants during each year of the Relevant Time Period.

**Response to Interrogatory No. 10:**

Plaintiff objects to the over breadth of the term "custom" as vague and ambiguous. Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery.  *See* F.R.C.P. 26.

Subject to and without waiving objections, Plaintiff refers Defendants to the pleadings for the provisions of law they deem "applicable to the lawful distribution of Opioids."

As set forth in the Track Three Plaintiffs' November 6, 2020 submission in connection with a request from the Court concerning proposed jury instructions, filed on the Master Docket as Doc. 3548, it is unlawful for any person knowingly to distribute or dispense controlled substances other than in accordance with the requirements of the federal Controlled Substances Act ("CSA") and its implementing regulations, or in violation of the Ohio controlled substances laws and regulations.[2]

It is unlawful to distribute or dispense controlled substances, including opioids, without providing effective controls and procedures to guard against theft and diversion under both the CSA and Ohio Controlled Substances laws.[3] The obligation to provide effective controls against diversion applies to every registrant under the CSA and Ohio law.

Under the federal and Ohio controlled substances laws, wholesale distributors, including the Defendants, have a legal duty: (1) to design and operate a system to identify suspicious orders; (2) to inform the DEA and Ohio Board of Pharmacy of suspicious orders when discovered; and (3) not to ship those orders unless investigation first shows them to be legitimate.[4]

Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.[5]

---

[2] 1 U.S.C. § 841(a); Ohio Rev. Code Ann. § 2925.03.

[3] 21 C.F.R. § 1301.71(a); Ohio Admin. Code 4729-9-05; Ohio Admin. Code 4729-9-16(L); Ohio Admin. Code 4729-9-28(I).

[4] Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act, *In re: National Prescription Opiate Litig.*, 2019 WL 3917575, at *7 & 9 (N.D. Ohio Aug. 19, 2019); Ohio Admin. Code 4729-9-16(H)(1)(e); Ohio Admin. Code 4729-9-28(E).

[5] 21 C.F.R. § 1301.74(b).

In retail pharmacy stores, it is unlawful to dispense a controlled substance without a valid prescription.[6] A prescription, to be effective, must be issued for a legitimate medical purpose in the usual course of a professional practice.[7] An order purporting to be a prescription that does not meet this definition is not a "prescription" within the meaning of state and federal controlled substances laws, and it is a violation of those laws to knowingly fill such a purported prescription.[8] A pharmacy may not fill a prescription that it knows or has reason to know is invalid and may not remain deliberately ignorant or willfully blind to the prescription information it has, including computerized reports it maintains. Employment of a pharmacist does not relieve a pharmacy or pharmacy owner of the obligation to ensure that only valid prescriptions are filled.[9]

Pharmacies must "maintain systems, policies, or procedures to identify prescriptions that bear indicia ('red flags') that the prescription is invalid, or that the prescribed drugs may be diverted for illegitimate use."[10] "Dispensers of controlled substances are obligated to check for and conclusively resolve red flags of possible diversion prior to dispensing those substances."[11] Pharmacies also have an obligation under Ohio law to maintain adequate safeguards in their business to "allow[] pharmacists ... to practice pharmacy in a safe and effective manner."[12]

---

[6] 21 U.S.C.A. § 829.

[7] 21 C.F.R. § 1306.04.

[8] *Id.*

[9] Opinion and Order denying Defendants' motion to dismiss, Dkt. 3403 at 13-25; *see also Linden Med. Pharm. v. Ohio State Bd. of Pharm.*, 2001 Ohio App. LEXIS 2041, at *24 (Ohio Ct. App. 11th Dist. May 8, 2001) (explaining that the Ohio Administrative Code "places the ultimate responsibility upon the 'registrant' ... to provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs" and that "licensees electing to operate a business through employees are responsible to the licensing authority for their conduct").

[10] Dkt. 3403 at 21-22 & 24-25.

[11] *Id.* at 24-25; O.R.C. § 4729.55(D).

[12] *Id.* at 20 & 24; O.R.C. § 4729.55(D).

As set forth in the Track Three Plaintiffs' prior filing, Defendants' conduct is unlawful under the Ohio and federal controlled substances laws, including the following provisions:

"Except as authorized by [the federal Controlled Substances Act ("CSA")], it shall be unlawful for any person knowingly or intentionally to . . . distribute or dispense, or possess with intent to . . . distribute or dispense, a controlled substance." **21 U.S.C. § 841(a).**

All registrants under the CSA must "provide effective controls and procedures to guard against diversion," and it is a violation of the CSA for any registrant to distribute or dispense a controlled substance without providing such controls. **21 C.F.R. § 1301.71(a)**.

Under the CSA, a distributor "shall design and operate a system to disclose to [it] suspicious orders of controlled substances." **21 C.F.R. § 1301.74(b)**.

Implicit in this requirement is an obligation to use that system to halt suspicious orders unless and until due diligence disproves the suspicion. *Id.*

Only DEA registrants may distribute or dispense controlled substances. A DEA registrant "shall inform the Field Division Office of the [DEA] in his area of suspicious orders when discovered by the registrant." **21 C.F.R. § 1301.74(b)**.

"Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern The CSA also prohibits dispensing a controlled substances without a prescription. 21 U.S.C.A. § 829.

"A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04. "An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829)" and "knowingly filling such a purported prescription" violates the CSA. Id.

Under Ohio law, no person shall "[s]ell or offer to sell a controlled substance" except as authorized by the Ohio controlled substances statutes and regulations. Ohio Rev. Code Ann. § 2925.03. These regulations incorporate the federal requirements described above. Specifically, "[w]holesale drug distributors shall operate in compliance with applicable

27

federal, state, and local laws and regulations." Ohio Admin. Code 4729-9-16(L); Ohio Admin. Code 4729-9-28(I).

Under Ohio law, distributors and pharmacies must obtain a state license, or registration, in addition to the federal registration. "All licensees and registrants shall provide effective and approved controls and procedures to deter and detect theft and diversion of dangerous drugs." Ohio Admin. Code 4729-9-05., and orders of unusual frequency." **21 C.F.R. § 1301.74(b)**.[13]

For wholesalers, "[a] system shall be designed and operated to disclose orders for controlled substances and other dangerous drugs subject to abuse. The wholesaler shall inform the state board of pharmacy of suspicious orders for drugs when discovered. Suspicious orders are those which, in relation to the wholesaler's records as a whole, are of unusual size, unusual frequency, or deviate substantially from established buying patterns." Ohio Admin. Code 4729-9-16(H)(1)(e).

"A prescription, to be valid, must be issued for a legitimate medical purpose by an individual prescriber acting in the usual course of his/her professional practice. . . . An order purporting to be a prescription issued not in the usual course of bona fide treatment of a patient is not a prescription and the person knowingly dispensing such a purported prescription, as well as the person issuing it, shall be subject to the penalties of law." Ohio Admin. Code 4729-5-21(A).

"No license shall be issued to an applicant for licensure as a terminal distributor of dangerous drugs [which includes a pharmacy] unless the applicant has furnished satisfactory proof to the state board of pharmacy that: . . . [a]dequate safeguards are assured that the applicant will carry on the business of a terminal distributor of dangerous drugs in a manner that allows pharmacists and pharmacy interns employed by the terminal distributor to practice pharmacy in a safe and effective manner." O.R.C. § 4729.55(D).

---

[13] This Supplemental Response uses the regulations in force at the time these actions were originally filed. As the Court recognized in its Opinion and Order denying Defendants' motion to dismiss, "Sections 4729-9-05(A) and 4729-9-16(H) of the Code were recently rescinded, revised, and reorganized" and provisions cited therein "now appear at §§ 4729:5-3-14 and 4729:6-3-05." Dkt. 3403 at 5 n.8.

In addition to clear legal requirements, Defendants had the benefit of ample guidance on their legal obligations, and Plaintiff has previously described the same in its pleadings in this action.

Under the CSA, the duty to prevent diversion lies with the Chain Pharmacies, not the individual pharmacist. As such, although it acts through its agents, the pharmacy is ultimately responsible to prevent diversion, as described above.[14] Further, as described above, the obligations under the controlled-substances laws extend to any entity selling prescription opioids, whether it is the registration-holder or not. *See also* May 19, 2021 Supplemental Pleading.

The criteria set forth in 21 C.F.R. § 1301.74(b) are disjunctive and not all inclusive. For example, if an order deviates substantially from a normal pattern, the size of the order does not matter and the order should be reported as suspicious. Likewise, a distributor need not wait for a normal pattern to develop over time before determining whether a particular order is suspicious. The size of an order alone, regardless of whether it deviates from a normal pattern, is enough to trigger the responsibility to report the order as suspicious. The determination of whether an order is suspicious depends not only on the ordering patterns of the particular customer but also on the patterns of the entirety of the customer base and the patterns throughout the relevant segment of the industry. For this reason, identification of suspicious orders serves also to identify excessive

---

[14] *The Medicine Shoppe; Decision and Order*, 79 FR 59504, 59515 (DEA Oct. 2, 2014) (emphasis added); *see also Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 and 5195*; Decision and Order, 77 FR 62316-01 ("When considering whether a pharmacy has violated its corresponding responsibility, the Agency considers whether the entity, not the pharmacist, can be charged with the requisite knowledge."); *Top RX Pharmacy*; Decision and Order, 78 FR 26069, 62341 (DEA Oct. 12, 2012) (same); *cf. Jones Total Health Care Pharmacy LLC and SND Health Care LLC v. Drug Enforcement Administration,* 881 F.3d 82 (11th Cir. 2018) (revoking pharmacy registration for, *inter alia,* dispensing prescriptions that prescriptions presented various red flags, i.e., indicia that the prescriptions were not issued for a legitimate medical purpose without resolving red flags).

volume of the controlled substance being shipped to a particular region. *See, e.g.*, May 19, 2021 Supplemental Pleading ¶ 126; *id.* ¶ 125 ("'Other indicia of potential diversion may include, for example, "[o]rdering the same controlled substance from multiple distributors.'").

The DEA has testified in this MDL that:

    a.  DEA registrants are required to block all suspicious orders of prescription opioids.[15]

    b.  Shipping a suspicious order is a per se violation of federal law.[16]

    c.  If a wholesale distributor blocks a suspicious order, they should terminate all future sales to that same customer until they can rule out that diversion is occurring.[17]

    d.  After the fact reporting of suspicious orders has never been in compliance with federal law.[18]

Of course, due diligence efforts must be thorough: "the investigation must dispel all red flags indicative that a customer is engaged in diversion to render the order non-suspicious and exempt it from the requirement that the distributor 'inform' the [DEA] about the order. Put another way, if, even after investigating the order, there is any remaining basis to suspect that a customer is engaged in diversion, the order must be deemed suspicious and the Agency must be informed."[19] Indeed, the DEA may revoke a distributor's certificate of registration as a vendor of controlled substances if the distributor identifies orders as suspicious and then ships them "without performing adequate due diligence."[20]

---

[15] *See* Prevoznik Dep. Vol II, 770:6 to 771:20, April 18, 2019 (DEA 30(b)(6) designee).

[16] *Id.* at 632:7 to 633:2.

[17] *Id.* at 628:24 to 629:15.

[18] *Id.* at 673:7 to 674:13, 679:20 to 680:8.

[19] *Masters Pharmaceuticals, Inc.*, Decision and Order, 80 Fed. Reg. 55418-01 at *55477 (DEA Sept. 15, 2015).

[20] *Masters Pharmaceuticals*, 861 F.3d at 212. The *Decision and Order* was a final order entered by the DEA revoking Masters Pharmaceutical's certificate of registration, without which Masters Pharmaceutical could not sell controlled substances. In *Masters Pharmaceutical*, the D.C. Circuit

To comply with the law, wholesale distributors, including Defendants, must know their customers and the communities they serve. Each distributor must "perform due diligence on its customers" on an "ongoin customer." Masters Pharms., Inc., 80 Fed. Reg. 55,418, 55,477 (DEA Sept. 15, 2015), petition for review denied, 861 F.3d 206 (D.C. Cir. 2017).

In addition to their duties as distributors, Defendants also had a duty to design and implement systems to prevent diversion of controlled substances in their retail pharmacy operations. Defendants had the ability, and the obligation, to look for these red flags on a patient, prescriber, and store level, and to refuse to fill and to report prescriptions that suggested potential diversion. Accord Mitch Betses, R.Ph., and Troyen Brennan, M.D., M.P.H., Abusive Prescribing of Controlled Substances - A Pharmacy View, N. ENGL. J. MED. 369;11, Sept. 12., 2013, at 989-991 (recognizing that "[p]harmacies have a role to play in the oversight of prescriptions for controlled substances, and opioid analgesics in particular" and that DEA has identified "both pharmaceutical distributors and chain pharmacies as part of the problem" contributing to opioid abuse and related deaths).

All suspicious conduct must be reported to relevant enforcement authorities. Further, Defendants must not fill or ship any suspicious prescription or order unless they have conducted an adequate investigation and determined that the prescription or order is not likely to be diverted into illegal channels.[21] Reasonably prudent distributors would not fall below this standard of care, and their failure to exercise appropriate controls foreseeably harms the public health and welfare.

---

Court of Appeals denied a petition for review, leaving intact the DEA's analysis and conclusion in the *Decision and Order*.

[21] *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enf't Admin. July 3, 2007) (applying federal requirements no less stringent than those of Ohio); *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206 (D.C. Cir. 2017) (same).

In addition to their duties as distributors, Defendants also had a duty to design and implement systems to prevent diversion of controlled substances and to monitor and report suspicious activity in their retail pharmacy operations. Specifically, Defendants had a duty to analyze data and store-level information for known red flags such as (a) multiple prescriptions to the same patient using the same doctor; (b) multiple prescriptions by the same patient using different doctors; (c) prescriptions of unusual size and frequency for the same patient; (d) orders from out-of-state patients or prescribers; (e) an unusual or disproportionate number of prescriptions paid for in cash; (f) prescriptions paired with other drugs frequently abused with opioids, like benzodiazepines, or prescription "cocktails"; (g) volumes, doses, or combinations that suggested that the prescriptions were likely being diverted or were not issued for a legitimate medical purpose. May 19, 2021 Supplemental Pleading ¶ 134.

According to law and industry standards, if a pharmacy finds evidence of prescription diversion, the Board of Pharmacy and DEA must be contacted. *Id.* ¶ 136. This is part of their "corresponding responsibility" under the controlled-substances laws.

State and federal statutes and regulations reflect a standard of conduct and care below which reasonably prudent distributors and pharmacies would not fall. Together, these laws and industry guidelines make clear that Defendants possess and are expected to possess, specialized and sophisticated knowledge, skill, information, and understanding of both the market for scheduled prescription opioids and of the risks and dangers of the diversion of prescription opioids when the supply chain is not properly controlled, as well as that Defendants have a responsibility to exercise their specialized and sophisticated knowledge, information, skill, and understanding to prevent the oversupply of prescription opioids and minimize the risk of their diversion into an illicit market. *See, e.g.*, *id.* ¶¶ 138-39.

32

This includes using the data and information available to Defendants at a corporate level. Defendants are obligated to collect and analyze data related to all components (DEA registrants) under central, corporate control and representative of the dispensing practices and data generated by all such DEA registrants for purposes of maintaining effective controls against diversion. Defendants must provide a system of alerts, or instruct their pharmacists to check, and allow time to check, whether a patient is presenting prescriptions to multiple stores within the same chain.

Red flags are not also specific to the prescription being presented, as the totality of the circumstances, such as the prescriber's prescribing patters across different patients, large quantities, or "cocktails" may raise red flags. It is important to monitor the overall controlled substance volume dispensed by the pharmacy and the ratio of controlled substances to non-controlled substances that the pharmacy is dispensing. *See, e.g., United States v. Lawson*, 682 F.2d 480, 482-483 (4th Cir. 1982).

DEA has repeatedly informed Defendants about their legal obligations, including obligations that were so obvious that they simply should not have required additional clarification. As former DEA agent Joseph Rannazzisi recently explained during a deposition in this MDL:

> Q. Someone says "Don't steal," do you have to put in there "from a supermarket"?
> A. No.
> Q. Someone says "Don't trespass on the property," do you have to put "wearing tennis shoes"?
> A. No.
> Q. Next, you got asked: "Well, you never instructed the companies to keep their files." Do you remember that?
> A. Yes, sir.
> Q. Would old files be important in monitoring -- in your ongoing monitoring? Would it be important that a company keep their files so that they can look back at them?

> A: Absolutely. That's the -- the whole idea behind maintaining a due diligence file is you have a history of purchases. That way you could see what they're doing and where they're going with their purchases.[22]

For example, it is not an effective control against diversion to identify a suspicious order, ship it, and wait as long as weeks to report it to law enforcement, potentially allowing those pills to be diverted and abused in the meantime.

During a 30(b)(6) deposition in this MDL, the DEA's Unit Chief of Liaison was asked whether the DEA made it "clear to industry that the failure to prevent diversion was a threat to public safety and the public interest." In response, he testified:

> Yes, I think it's established in 823 [the Controlled Substances Act] where it's part of our -- part of the registrant that is applying to be a registrant understands that they have to maintain effective controls . . . . they also know that these drugs themselves are scheduled controlled substances for a particular reason, because they're addictive, psychologically and physically they're addictive, so they know that these drugs have these properties within themselves. **So they would understand that these drugs are categorized or scheduled in that manner because they have the potential to hurt**.[23]

The requirement to report suspicious orders at the time (not after the fact) has always been clear and Defendants themselves have acknowledged as much through their various trade groups and associations. As described above, correspondence between the NWDA and the DEA, as early as 1984, illustrates that the DEA provided clear guidance well before the opioid crisis was unleashed. For example, in one letter to the NWDA, DEA Section Chief Thomas Gitchel emphasized that "the submission of a monthly printout of after-the-fact sales will not relieve a registrant from the responsibility of reporting excessive or suspicious orders," noting "**DEA has**

---

[22] Rannazzisi Dep. at 646:20-647:19.
[23] Prevoznik Dep. Vol III at 942:3-8; 942:11-943:3 (emphasis added).

**interpreted 'orders' to mean prior to shipment.**" Consistent with that understanding, the NWDA's 1984 Guidelines repeated the same directive.[24]

In addition, the DEA, for example, in April 1987, sponsored a three-day "Controlled Substances Manufacturers and Wholesalers Seminar" that was attended by "over fifty security and regulatory compliance professionals representing forty-three major pharmaceutical manufacturers and wholesalers."[25] According to the executive summary of the event, Ronald Buzzeo held a session on "excessive order monitoring programs," wherein he explained:

> [A]ny system must be capable of both detecting individual orders which are suspicious, or orders which become suspicious over time due to frequency, quantity, or pattern. The NWDA system, for example, provides an excellent lookback, or trend system, but the ability to identify one time suspicious orders should not be overlooked as an element of the program." Another area at issue was whether DEA would take action against a registrant which reported an order and then shipped it. DEA pointed out that the company is still responsible under their registrations for acting in the public interest. Reporting the order does not in any way relieve the firm from the responsibility for the shipment.[26]

As set forth above, the DEA also repeatedly reminded Defendants of their obligations to report and decline to fill suspicious orders. Responding to the proliferation of internet pharmacies that arranged illicit sales of enormous volumes of opioids, the DEA began a major push to remind distributors of their obligations to prevent these kinds of abuses and educate them on how to meet these obligations. Specifically, in August 2005, the DEA's Office of Diversion Control launched the "Distributor Initiative." The Distributor Initiative did not impose any new duties on distributors, but simply reminded them of their duties under existing law. The stated purpose of the program was to "[e]ducate and inform distributors/manufacturers of their due diligence

---

[24] CAH_MDL2804_01465723.
[25] US-DEA-00025657.
[26] US-DEA-00025659.

responsibilities under the CSA by discussing their Suspicious Order Monitoring System, reviewing their [Automation of Reports and Consolidated Orders System ("ARCOS")] data for sales and purchases of Schedules II and III controlled substances, and discussing national trends involving the abuse of prescription controlled substances."[27] The CSA requires that distributors (and manufacturers) report all transactions involving controlled substances to the United States Attorney General. This data is captured in ARCOS, the "automated, comprehensive drug reporting system which monitors the flow of DEA controlled substances from their point of manufacture through commercial distribution channels to point of sale or distribution at the dispensing/retail level— hospitals, retail pharmacies, practitioners, mid-level practitioners, and teaching institutions,"[28] from which certain data was recently made public.

As part of the Distributor Initiative, the DEA gave several presentations to distributors both individually and through presentations and discussions at Defendants' trade groups meetings directly targeted at some of the red flags of diversion that the Defendants were obligated to consider and monitor as part of their requirements under the law.

---

[27] Thomas W. Prevoznik, Office of Diversion Control, Distributor Initiative presentation (Oct. 22, 2013), https://www.deadiversion.usdoj.gov/mtgs/distributor/conf_2013/prevoznik.pdf.
[28] U.S. Dept. of Justice, Drug Diversion Administration, Diversion Control Division website, https://www.deadiversion.usdoj.gov/arcos/index.html.

The DEA has hosted many different conferences throughout the years, including Pharmacy Diversion Awareness Conferences, to provide registrants with updated information about diversion trends and their regulatory obligations. The DEA also frequently presented at various other conferences for registrants at the national, state, or local level.

Through presentations at industry conferences and on its website, the DEA provided detailed guidance to distributors on what to look for in assessing their customers' trustworthiness. As an example, the DEA published "Suggested Questions a Distributor Should Ask Prior to Shipping Controlled Substances"[29]

---

[29] U.S. Dept. of Justice DEA, Diversion Control Division website, Pharmaceutical Industry Conference (Oct 14 & 15, 2009), *Suggested Questions a Distributor should ask prior to shipping controlled substances*, Drug Enforcement Administration *available at* https://www.deadiversion.usdoj.gov/mtgs/pharm_industry/14th_pharm/levinl_ques.pdf; Richard Widup, Jr., Kathleen H. Dooley, Esq., *Pharmaceutical Production Diversion: Beyond the PDMA,* Purdue Pharma and McGuireWoods LLC, *available at* https://www.mcguirewoods.com/news-resources/publications/lifesciences/product_diversion_beyond_pdma.pdf.

In addition, the DEA sent a series of letters, beginning on September 27, 2006, to every commercial entity registered to distribute controlled substances, including chain pharmacy distributors. The 2006 letter emphasized that distributors are:

> one of the key components of the distribution chain. If the closed system is to function properly . . . distributors must be vigilant in deciding whether a prospective customer can be trusted to deliver controlled substances only for lawful purposes. This responsibility is critical, as . . . the illegal distribution of controlled substances has a substantial and detrimental effect on the health and general welfare of the American people.[30]

The letter also warned that "even just one distributor that uses its DEA registration to facilitate diversion can cause enormous harm."[31]

The DEA sent a second letter to distributors on December 27, 2007. Again, the letter instructed that, as registered distributors of controlled substances, they must each abide by statutory and regulatory duties to "maintain effective controls against diversion" and "design and operate a system to disclose to the registrant suspicious orders of controlled substances."[32] DEA's letter reiterated the obligation to detect, report, and not fill suspicious orders and provided detailed guidance on what constitutes a suspicious order and how to report (*e.g.*, by specifically identifying an order as suspicious, not merely transmitting ARCOS data to the DEA).

In September 2007, the NACDS, among others, also attended a DEA conference at which the DEA reminded registrants that not only were they required to report suspicious orders, but

---

[30] Letter from Joseph T. Rannazzisi, Deputy Assistant Adm'r, Off. of Diversion Control, Drug Enf't Admin., U.S. Dep't of Justice, to Cardinal Health (Sept. 27, 2006), filed in *Cardinal Health, Inc. Inc. v. Holder*, No. 1:12-cv-00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-51 ("2006 Rannazzisi Letter"); *see also* CVS-MDLT1000091513; WAGMDL00757797.

[31] *Id.*

[32] Letter from Joseph T. Rannazzisi, Deputy Assistant Adm'r, Office of Diversion Control, Drug Enf't Admin., U.S. Dep't of Justice, to Cardinal Health (Dec. 27, 2007), filed in Cardinal Health, Inc. v. Holder, No. 1:12-cv00185-RBW (D.D.C. Feb. 10, 2012), ECF No. 14-8 ("2007 Rannazzisi Letter").

also to halt shipments of suspicious orders. Walgreens, specifically, registered for the conference.

The DEA's regulatory actions against the three largest wholesale distributors, as well as actions against Defendants themselves, further underscore the fact that distributors such as Defendants were well aware of their legal obligations. There is a long history of enforcement actions against registrants for their compliance failures, cited in Plaintiff's May 19, 2021 Supplemental Pleading. For example, in 2007, the DEA issued an Order to Show Cause and Immediate Suspension Order against three of Cardinal Health's distribution centers and on December 23, 2016, Cardinal Health agreed to pay the United States $44 million to resolve allegations that it violated the CSA in Maryland, Florida, and New York. Similarly, on May 2, 2008, McKesson entered into an Administrative Memorandum of Agreement ("AMA") with the DEA related to its failures in maintaining an adequate compliance program. Subsequently, in January 2017, McKesson entered into an Administrative Memorandum Agreement ("AMA") with the DEA wherein it agreed to pay a $150 million civil penalty for, *inter alia*, failure to identify and report suspicious orders at several of its facilities. Similarly, in 2011, the DEA took Walgreens "to the woodshed" over its dispensing cocktail drugs and opioids to questionable out of state customers, customers with the duplicate diagnoses, young people, and customers only paying cash. Many of these same red flags were highlighted in the 2009 Walgreens Order to Show Cause and resulting 2011 Memorandum of Agreement ("MOA"). A more fulsome discussion of the various settlement agreements and enforcement actions against CVS, Walgreens, Rite Aid, Walmart, and Kroger is set forth in the May 19, 2021 Supplemental pleading as well, and familiar to Defendants. DEA actions against other pharmacies, such as the decisions cited in the footnotes to this response also has been available to Defendants.

The DEA has also repeatedly affirmed the obligations of pharmacies to maintain effective controls against diversion in regulatory action after regulatory action.[33] The DEA, among others, also has provided extensive guidance to pharmacies on how to identify suspicious orders and other evidence of diversion.

DEA has repeatedly emphasized that retail pharmacies, such as Defendants, are required to implement systems that detect and prevent diversion and must monitor for and report red flags of diversion. When red flags appear, the pharmacy's "corresponding responsibility" under 21 C.F.R. § 1306.04(a) requires it either to take steps (and document those steps) to resolve the issues or else to refuse to fill prescriptions with unresolvable red flags.[34] DEA has identified several types of "unresolvable red flags" which, when present in prescriptions presented to a pharmacist, may never be filled by the overseeing pharmacist. These unresolvable red flags include: a prescription issued by a practitioner lacking valid licensure or registration to prescribe the controlled substances; multiple prescriptions presented by the same practitioner to patients from the same address, prescribing the same controlled substances in each presented prescription; a high volume of patients presenting prescriptions and paying with cash; and, a prescription presented to by a customer who has traveled significant and unreasonable distances from their home to see a doctor and/or to fill the prescription at the pharmacy.

---

[33] *See, e.g.*, Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 and 5195; 77 Fed. Reg. 62,316 (DEA Oct. 12, 2012) (decision and order); East Main Street Pharmacy, 75 Fed. Reg. 66,149 (DEA Oct. 27, 2010) (affirmance of suspension order); Holiday CVS, L.L.C. v. Holder, 839 F.Supp.2d 145 (D.D.C. 2012); Townwood Pharmacy; 63 Fed. Reg. 8,477 (DEA Feb. 19, 1998) (revocation of registration); Grider Drug 1 & Grider Drug 2; 77 Fed. Reg. 44,069 (DEA July 26, 2012) (decision and order); The Medicine Dropper; 76 Fed. Reg. 20,039 (DEA April 11, 2011) (revocation of registration); Medicine Shoppe-Jonesborough; 73 Fed. Reg. 363 (DEA Jan. 2, 2008) (revocation of registration).

[34] *Pharmacy Doctors Enterprises, Inc. v. Drug Enf't Admin.*, No. 18-11168, 2019 WL 4565481, at *5 (11th Cir. Sept. 20, 2019).

DEA guidance also instructs pharmacies to monitor for red flags that include: (1) prescriptions written by a doctor who writes significantly more prescriptions (or in larger quantities or higher doses) for controlled substances as compared to other practitioners in the area, and (2) prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time. Most of the time, these attributes are not difficult to detect and should be easily recognizable by Defendants' diversion control systems.

DEA Guidance concerning red flags and corresponding responsibility includes the Pharmacist's Manual: An Informational Outline of the Controlled Substances Act and Actions (administrative and criminal) – Revised 2010.

The DEA has also explained these red flags in individual meetings with Defendants. For example, in December 2010, DEA hosted a meeting with CVS's representatives and counsel and advised CVS of the "red flags . . . that a pharmacy should be familiar with in order to carry out its corresponding responsibility to ensure that the controlled substances are dispensed for a legitimate medical purpose."[35]

Examples of red flags that the DEA identified during its meeting with CVS include:

a. many customers receiving the same combination of prescriptions (*i.e.*, oxycodone and alprazolam);

b. many customers receiving the same strength of controlled substances (*i.e.*, 30 milligrams of oxycodone with 15 milligrams of oxycodone and 2 milligrams of alprazolam);

c. many customers paying cash for their prescriptions;

d. many customers with the same diagnosis codes written on their prescriptions (*i.e.*, back pain, lower lumbar, neck pain, or knee pain); and

---

[35] Declaration of Joe Rannazzisi in *Holiday CVS, L.L.C. v. Holder*, 839 F. Supp.2d 145 (D.D.C. 2012).

e. individuals driving long distances to visit physicians and/or to fill prescriptions.[36]

As another example, in a 2016 presentation to the American Pharmacists Association, the DEA reiterated that retail pharmacies must watch for red flags such as: large numbers of customers who: receive the same combination of prescriptions, receive the same strength of controlled substance prescription (often for the strongest dose), have prescriptions from the same prescriber, and have the same diagnosis code.

Many of these red flags are acknowledged in a "Stakeholders" memorandum created by many of the Chain Pharmacies, including CVS, Rite Aid, and Walgreens, others in the business of selling controlled substances for profit, like Purdue Pharma and Cardinal Health, and their trade organizations, including the HDMA and the NACDS. Defendants also themselves acknowledged their obligations as referenced in the May 19, 2021 Supplemental Pleading, which describe CVS's recognition that its retail pharmacies had a responsibility to dispense only those prescriptions that were issued based on legitimate medical need in connection with its May 2015 agreement to pay a $22 million penalty following a DEA investigation, Walgreens admissions in connection with its 2013 MOA "that certain Walgreens retail pharmacies did on some occasions dispense certain controlled substances in a manner not fully consistent with its compliance obligations under the CSA . . . and its implementing regulations,"[37] and, for example, internal documents from Walmart indicating that it not yet designed a compliant system for suspicious order identification, monitoring, and reporting, faced financial and reputational risk as a result. *See, e.g.,* May 19, 2021 Supplemental Pleading ¶ 412.

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

---

[36] *Id.*
[37] WAGMDL00490963 at WAGMDL00490964.

**Interrogatory No. 11:**

Identify each prescription for a Prescription Opioid or Cocktail Medication dispensed by a Pharmacy Defendant during the Relevant Time Period in the Geographic Area that You contend should not have been dispensed because it was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice and that caused the alleged damage, nuisance, or other harm for which You seek to recover in this case. For each prescription, (1) identify the same 34 fields that the Pharmacy Defendants were ordered to provide in the Court's 1/27/20 Discovery Ruling Regarding Pharmacy Data Production, Case No. 17-md-2804, Doc. 3106 at 8, (2) explain why the prescription should not have been dispensed, including any and all criteria used to determine that the prescription should not have been dispensed and the support or sources for that criteria, and (3) explain how the prescription caused the alleged damage, nuisance, or other harm for which you seek to recover in this case.

**Response to Interrogatory No. 11:**

Plaintiff refers Defendants to its responses to Interrogatories Nos. 1 and 2 and objects to this request as overbroad, unduly burdensome, and not proportional to the needs of the case. Plaintiff also incorporates by reference the CT1 Bellwether Plaintiffs' responses and objections to CT1 discovery responses propounded by Pharmacy Defendants. Plaintiff specifically incorporates any and all prior responses by MDL bellwether plaintiffs to discovery requests, including responses to discovery served during Tracks "1A", "1B" and "CT3" of this litigation. Subject to and without waving objections, Plaintiff refers Defendants to its Response to Interrogatory No. 1. Plaintiff reserves the right to supplement this Response and to identify additional prescriptions, including through expert discovery.

**Interrogatory No. 12:**

Identify each instance during the Relevant Time Period in which You or anyone acting on Your behalf, including Your health care and law enforcement agencies, communicated with any pharmacy including any National Retail Pharmacy about diversion of Prescription Opioids or Cocktail Medications, actual or suspected Suspicious Orders of Prescription Opioids, or unlawful or excessive prescribing or dispensing of Prescription Opioids during the Relevant Time Period.

**Response to Interrogatory No. 12:**

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome in that it requests that Plaintiff identify "each" instance in which there was any communication with any pharmacy in Plaintiff's geographic area regarding prescription opioids or cocktail medication. Plaintiff further objects to this Request as to the vast over breadth of "without limitation." The scope of this request creates a burden beyond what is appropriate and proportionate to the needs of this case as it is simply not practicable for Plaintiff to specifically identify each and every communication relating to opioids or cocktail drugs.   Plaintiff further objects to this Interrogatory as unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, including with respect to any "suspected" conduct and to the extent it concerns communications with pharmacies other than Defendants, and also as cumulative of document requests and other discovery.  Plaintiff further objects to this Interrogatory as unduly burdensome and overbroad given that any communications with the Chain Pharmacies are in possession of and equally available to the Chain Pharmacies.  The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserve the right to supplement and amend this response as discovery proceeds.

Subject to and without waiving objections, Plaintiff responds that if any Chain Pharmacy Defendant identifies an instance in which it reported actual or potential diversion to local law enforcement (which records should be equally available to Defendants), the County will prioritize a search for those records. The County also refers Defendants to the "Slow Down! Simple Ways to Prevent Prescription Drug Abuse & Support Patients" brochure distributed through the Community Overdose Action Team, including Montgomery County ADAMHS and Dayton & Montgomery Public Health. This material was distributed to both chain and independent pharmacies, and should be in Defendants' possession, but is also being produced by Plaintiff. *See* MC_000731319.

The County also refers Defendants to the free opioid warning stickers and prescription bags offered to pharmacies in the County. None of the Pharmacy Defendants accepted the offer to provide these resources. The County will produce examples of the stickers and provide Bates numbers of relevant documents.

- Alternative Campaign Survey from Montgomery County Prevention Coalition Opioid Committee and opioid warning stickers, MC_000385117 - MC_000385121
- Montgomery County Prevention Coalition (MCPC) reached out to pharmacies on prescription diversion prevention. *See* "Opioid Warning Stickers"
  - ADAMHS 2019 newsletter, "The Montgomery County Prevention Coalition, in partnership with the Community Overdose Action Team (COAT) is working with pharmacies to implement opioid warning stickers. The stickers, which are placed on prescription container caps, identify the medication as an opioid and provides warnings that it may be addictive and could lead to overdose. The Coalition piloted this project by dispersing 1,000 stickers to three local pharmacies, including Rite Aid and Kroger. The pharmacies were very receptive to implementation of the stickers, and the coalition is currently working to disperse 10,000 more stickers throughout the county. Local Rite Aid stores have begun printing the sticker on their own, ensuring that all patients can easily identify an opioid prescription." MC_000352574,
  - "More buy-in is being received from smaller pharmacies." MC_000385220,
  - Jan. 2020 – corporate policies may make use of stickers more difficult. MC_001235839

- Pharmacy bags distributed to all 25 Kroger locations in Montgomery County, MC_001561407
- "Dear Pharmacist" Letter from Dr. Michael Dohn of COAT Prescription Branch, MC_001141866

**Interrogatory No. 13:**

Identify all Persons and entities whose conduct You believe was a substantial factor in creating the alleged public nuisance and state the bases for such belief, including: Opioid Manufacturers; Opioid Distributors (not including self-distributors); FDA; DEA; Ohio Board of Pharmacy; Healthcare Providers; internet pharmacies; pill mills; independent (non-chain) pharmacies; criminal actors; patients; drug abusers; and insurance companies.

**Response to Interrogatory No. 13:**

Plaintiff objects to use of the pejorative term "drug abusers." Plaintiff objects to the term "substantial factor" as undefined and beyond the scope of Plaintiff's burden in this case. Plaintiff contends, and will prove at trial, that the conduct of the each of the Defendants was a substantial factor in creating the public nuisance; it is irrelevant to Plaintiff's claim, and to Defendants' defenses, whether there are other persons whose conduct was also a substantial factor, because the role of any such additional persons does not absolve Defendants of responsibility for their role. Or. (MDL Doc. 2572). Whether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability. *Id.*

Plaintiff further objects to this Interrogatory as an improper contention Interrogatory that is not reasonably calculated to lead to admissible evidence about the contentions actually at issue in the supplemental pleading. The County is not obligated to make additional allegations about other parties. If the Chain Pharmacies seek to do so, such information should be part of their own discovery responses.

46

Subject to and without waiving any objections, Plaintiff answers that the following entities are and were a substantial factor in creating the public nuisance at issue in this case: the Opioid Manufacturer defendants, the Opioid Distributor defendants, and the Opioid Pharmacy defendants as those terms have been used and are understood in standard practice of this MDL. Specific to CT7 and relevant to this case, Plaintiff identifies CVS, Walgreens, Walmart, Rite Aid, Kroger, and Meijer as substantial factors in creating the public nuisance that is the Opioid Epidemic.

The basis for this belief includes the matters set forth in the Complaint, as well as all of the evidence produced to date in this litigation.  In general, Plaintiff believes that the conduct of the Manufacturer Defendants was a factor in creating the public nuisance (1) because the Manufacturer Defendants misrepresented the risks and benefits of prescription opioids, leading to the prescribing of far more opioids than would have been prescribed had doctors, patients, and the public been aware of the true risks and benefits of these drugs; and (2) because the Manufacturer Defendants failed to provide effective controls against diversion and shipped orders of opioids without due regard for the risks that such orders would be diverted, leading to substantial diversion of prescription opioids in and into Plaintiff's community.  Plaintiff further believes that the conduct of the Distributor Defendants was a factor in creating the public nuisance because the Distributor Defendants failed to provide effective controls against diversion and shipped orders of opioids without due regard for the risks that such orders would be diverted, leading to substantial diversion of prescription opioids in and into Plaintiff's community. Similarly, Plaintiff believes that the conduct of the Pharmacy Defendants was a factor in creating the public nuisance because the Pharmacy Defendants failed to provide effective controls against diversion and both shipped opioid orders and dispensed opioid prescriptions without due regard

for the risks that such orders and prescriptions would be diverted, leading to substantial diversion in and into Plaintiff's community. Plaintiff also believes that the conduct of other opioid manufacturers, distributors and pharmacy chains as described in the Complaint was also a factor in creating the public nuisance. Further, Plaintiff believes that the conduct of the Pharmacy Defendants and McKinsey contributed to the public nuisance through their role in collaborating with opioid manufacturers in their marketing campaign and the Pharmacy Defendants' role in purportedly educational programming; the Pharmacy Defendants also used their purported ability to self police and status as large, lucrative customers to incentivize the Distributors who acted as their outside vendors not to conduct adequate due diligence. Plaintiff has not determined whether the conduct of other entities was also a factor in creating the public nuisance in Plaintiff's community or, to the extent that the conduct of non-parties was a factor, whether such conduct was a *de minimus* factor. Plaintiff reserves the right to supplement this response to the extent that it obtains additional information sufficient to form a belief as to whether the conduct of other entities was a factor, or additional information pertaining to the bases of Plaintiff's beliefs.

**Interrogatory No. 14:**

Identify each instance in which a Person was allegedly involved in the diversion of Prescription Opioids or Cocktail Medications in the Geographic Area during the Relevant Time Period, including without limitation the alleged improper prescribing of, or filling prescriptions for, Prescription Opioids or Cocktail Medications or the submission to a distributor of a Suspicious Order. For each instance, identify the Persons involved, the nature of their involvement in the alleged diversion, and the date of the alleged diversion.

**Response to Interrogatory No. 14:**

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove their claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves their rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. See Report and Recommendation, In re: National

48

Prescription Opiate Litig., Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); In re Neurontin Litigation, 712 F.3d 21, 29-39 (1st Cir. 2013); United States v. Life Care Centers of Am., Inc., 114 F. Supp. 3d 549 (E.D. Tenn. 2014); United States v. Life Care Centers of Am., Inc., 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, In re: National Prescription Opiate Litig., Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible, nor is Plaintiff required to provide individual proof.  The burden is totally disproportional to the needs of the case.

Plaintiff objects to the phrase "each instance" of involvement in opioid diversion or improper prescribing in the "geographic area" as overly broad, unnecessary, and disproportionately burdensome, and also a cumulative.  Plaintiff further objects to this Interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to admissible evidence to the extent it asks the County to "allege" diversion by or involving persons or entities other than the Chain Pharmacies, who are the parties to whom the allegations in the claim at issue are directed.

Plaintiff also objects to this request in that it calls for information uniquely in the Defendants' possession or control. The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages

on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed. Further, compliance with this Interrogatory would potentially require the disclosure of potentially damaging, and private information regarding persons who were investigated for or questioned about potential misconduct but were not necessarily disciplined, charged, or convicted.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving its objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case and to Plaintiff's responses to Interrogatories Nos. 1 and 2.

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 15:**

Identify each instance in which a Person in the Geographic Area and during the Relevant Time Period forged or otherwise improperly altered any prescription for any Prescription Opioid or Cocktail Medication or sought to obtain any Prescription Opioid or Cocktail Medication through a forged or otherwise improper prescription.

**Response to Interrogatory No. 15:**

Plaintiff objects to "each instance" and/or each "Person" who "forged or otherwise improperly altered any prescription for any Prescription Opioid or Cocktail Medication" as overly broad and unduly burdensome.

Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to

50

individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff do not require a showing that any third-party individuals were harmed, nor is Plaintiff required to provide individual proof.

The burden is totally disproportional to the needs of the case. Plaintiff also objects to this request to the extent that it calls for information uniquely in the Defendants' possession or control, or to other information outside Plaintiff's possession, custody, and control.

Subject to and without waiving objections, Plaintiff will meet and confer with counsel for Defendants to agree on the production of non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d). Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A
- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A
- 292503C5.35A

- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A
- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A
- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250
- 292537B.250

- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250
- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
- 472951E.90Z

The County produced all incidents of forgery from the Sheriff's department in its database production of incident case reports, MC_001608804. Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 16:**

Identify all Healthcare Providers that You allege wrote a prescription for Prescription Opioids that was not medically necessary during the Relevant Time Period that were filled at a pharmacy in the Geographic Area.

**Response to Interrogatory No. 16:**

Plaintiff objects to the term "medically necessary" as undefined, vague, potentially irrelevant and more appropriately the subject of expert testimony. Plaintiff objects to this interrogatory as requiring Plaintiff to identify data sets in the possession, custody and control of defendants or third parties. Defendants failed to define this term or to link it to an issue in this case. Plaintiff notes, for example, in the Medicare context, in which services must be "medically necessary," care such as tooth extractions and other routine dental services is not covered.[38] That

---

[38] https://www.medicare.gov/coverage/dental-services; *see* 42 U.S.C.A. § 1395y.

is not, of course the equivalent of saying such service should cease or would be inappropriate to receive and pay for through other means.

Plaintiff objects as responding to this Interrogatory does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is and unnecessary. The burden is totally disproportional to the needs of the case. Plaintiff is also not obligated to allege whether or not particular prescriptions were "medically necessary" or whether particular providers wrote prescriptions that were not "medically necessary" as part of its claims.

Subject to and without waiving its objections, Plaintiff states that Defendants have sought to evade the Interrogatory limits by asking Plaintiff to answer a different question than the one they asked: namely, whether prescribers wrote prescriptions lacking a legitimate medical purpose or which should not have been dispensed. Defendants have not sought or received leave from the Court for additional Interrogatories. Plaintiff is not obligated to identify, or even to know, each and every such prescriber; indeed it is not possible to know every such prescriber. Subject to the objections and limitations described above, Plaintiff refers Defendants to its response to Interrogatory No. 1 above.

**Interrogatory No. 17:**

Identify each Healthcare Provider who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the prescribing or dispensing of Prescription Opioids or Cocktail Medications.

**Response to Interrogatory No. 17:**

Plaintiff objects to this Interrogatory as overbroad, unreasonably burdensome, and not proportional to the needs of the case to the extent it seeks the identity of any healthcare provider

ever investigated related to prescribing opioid or cocktail drugs. Plaintiff objects to this interrogatory to the extent it seeks information covered by the law enforcement privilege. Further, compliance with this Interrogatory would potentially require the disclosure of potentially damaging, and private information regarding persons who were investigated for or questioned about potential misconduct but were not necessarily disciplined, charged, or convicted.  Plaintiff further objects to this Interrogatory as vague to the extent it references "participated in" and as to geographic scope.  Plaintiff also objects to this Interrogatory as cumulative of Interrogatory No. 3 to the extent it concerns dispensing, and incorporates its objections to Interrogatory No. 3 herein.

Subject to and without waiving any objections, Plaintiff refers Defendants to its response to Interrogatory No. 16 and will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d). Plaintiff also produced an indictment at MC_000101783. Typically, the information sought by this Interrogatory would be with the agency that lead the investigation at the state or federal level, not local law enforcement, but the County's document search aims to capture responsive materials.

Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A

- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A
- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A
- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A

- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250
- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250
- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
- 472951E.90Z

If Defendants seek particular materials from the results of those searches, the County is willing

to confer concerning this request.


**Interrogatory No. 18:**

Identify each administrative action or investigation taken by federal, state, county, or local law enforcement authorities, or other governmental entities, against any pharmacies, prescribers, or individuals in the Geographic Area related to Prescription Opioids, Cocktail Medications, or Illicit Drugs.

**Response to Interrogatory No. 18:**

Plaintiff objects to this Interrogatory as overbroad and unduly burdensome, including

because it purports to encompass every administration or investigation concerning "individuals"

and "Opioids, Cocktail Medications, or Illicit Drugs," and because it would require Plaintiff to

collect information about investigations by non-parties which Defendants may collect and

identify themselves.  Subject to and without waiving any objection, Plaintiff refers Defendants to

57

its responses to Interrogatories Nos. 1-3, 12, 14-17, and will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d). The County produced all drug related incidents that hit on ORCs from the Sheriff's department in its database production, MC_001608804.

**Interrogatory No. 19:**

Identify any complaints, formal or informal, that You received—including complaints that any pharmacist, prescriber, or other Healthcare Provider employed by or affiliated with You received—regarding any prescriber or other Healthcare Provider, or any pharmacy or pharmacist, related to Prescription Opioids or Cocktail Medications.

**Response to Interrogatory No. 19:**

Plaintiff objects to this Request as vague and ambiguous to the extent that it fails to define what is meant by a "formal complaint" or "informal complaint." Plaintiff further objects to this Request as overly broad and unduly burdensome as it requires Plaintiff to identify all instances in which "any pharmacist, prescriber, or other healthcare provider employed by or affiliated with Plaintiff" received "any complaints" relating to Prescription Opioids or Cocktail Medications regarding "any" healthcare provider or pharmacy.

Subject to and without waiving objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Requests, consistent with further investigation, fact and expert discovery. If Defendants

believe an employee or former employee has made such a complaint, please provide the name and time frame and the County will prioritize a search.

**Interrogatory No. 20:**

Identify each instance in which You, or anyone acting on Your behalf, communicated with any federal, state, or local government official or agency (including the United States Drug Enforcement Administration, the United States Department of Justice, the Federal Bureau of Investigation, a United States Attorney's Office, or any other law enforcement agency including your own agencies, the Ohio Board of Pharmacy, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, or the Ohio Medical Board), or any insurer about diversion of Prescription Opioids or Cocktail Medications, actual or suspected Suspicious Orders of Prescription Opioids or Cocktail Medications, or unlawful or excessive prescribing or dispensing of Prescription Opioids or Cocktail Medications during the Relevant Time Period.

**Response to Interrogatory No. 20:**

Plaintiff objects to the term "each instance" as overly broad and disproportionately burdensome. Plaintiff further objects to this request as cumulative and as not reasonably calculated to lead to the discovery of admissible evidence, including without limitation in seeking identification of all communications with any "government official or agency" or "insurer" and concerning "suspected" diversion. Plaintiff objects to this interrogatory as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.

Plaintiff also objects to this request in that it calls for information uniquely in the Defendants' possession or control. The requested information is therefore more readily available to Defendants, from their own business dealings or from third-party sources.

Further, Plaintiff objects to this interrogatory to the extent it seeks information covered by the law enforcement privilege.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P.33(a)(2). Plaintiff refers Defendants to the Complaint in this case which detail such facts.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

- DEA National Take-Back Initiative, MC_001367550- MC_001367553, MC_000322711
- Commitment to secure collection bins for unused prescription drugs. (Email from Bruce Langos of Sheriff office), MC_001375669, MC_000455442, MC_000197097
- MC Sheriff and outside agencies, including US DOJ, re jail detox and drug treatment systems. MC_000419950, MC_000420086, MC_000166831, MC_000166851, MC_000166921
- Drug Overdose Mortality Data, MC_000774127
- Law Enforcement's Role in the Opioid Epidemic, MC_001029058
- Emails with USDOJ re price of drugs for heroin, fentanyl, cocaine and meth, and request for DEA slides, MC_000235479, MC_000235525
- Fentanyl and First Responders Risk, MC_001033411- MC_001033416
- USDOJ participate in Sheriff's Montgomery County Drug Free Coalition meetings, MC_001033632, MC_001033636

**Interrogatory No. 21:**

Identify all Persons with knowledge of Your claims against the Pharmacy Defendants, including all of Your employees, representatives, and/or agents with knowledge regarding the abuse, use, misuse, addiction to, and/or diversion of Prescription Opioids, or the possession, abuse, illegal sale, or addiction to other opioids by County residents. Please also include: (a)

every Person You intend to rely on in proving your claims; (b) all state, local, or federal law enforcement individuals who have experience with the Pharmacy Defendants in your area, and (c) all hospitals or healthcare systems in Your Geographic Area whose Healthcare Providers prescribe and/or dispense Prescription Opioids.

**Response to Interrogatory No. 21:**

Plaintiff objects to this Interrogatory as overly broad and confusing as drafted. The Interrogatory seeks all persons with knowledge about a public health crisis that impacts the public across the county and concerning which Defendants themselves are persons with knowledge. The Interrogatory also seeks to define certain entities or groups as persons with knowledge then asks Plaintiff to provide information in the public domain and equally available to Defendants, such as listing the "hospitals and healthcare systems" that exist in the County. Plaintiff is not obligated to do that work for Defendants. Similarly, the reference to "state, local, federal law enforcement individuals" with "experience with the Pharmacy Defendants" is equally available to the Pharmacy Defendants, if not more so to the extent the "experience" concerns officials outside the County. Plaintiff also objects to this Interrogatory to the extent it seeks to compel Plaintiff to prematurely disclose a witness list in advance of the deadlines in the CMO.

Subject to and without waiving objections, Plaintiff responds that this interrogatory will or may be the subject of an expert report. Plaintiff also identifies the following Persons "with knowledge" regarding the Opioid Epidemic:

> **Name and Title**
> - Joe Spitler, Criminal Justice Director
> - Brandy Burchett, Chief Investigator
> - Bryan Casto, Deputy Coroner
> - Kent Harshbarger, Coroner
> - Matt Juhascik, Chief Toxicologist/Scientific Director
> - Lee Lehman, Coroner, Lead Pathologist
> - Jennifer Watson, Crime Lab Chemistry Technical Leader
> - Brooke Ehlers, Director Montgomery County Coroner's Office

- Jordan Barnhart, Budget Manager
- Caresse Boyd, Outcomes Specialist
- Jeff Cooper, Health Commissioner
- Michael Dohn, Medical Director
- Dawn Ebron, Epidemiologist Supervisor
- Yevetta Hawley, Director of Nursing
- Susan Herzfeld, Epidemiologist
- Janine Howard, Director of Health Services
- Michele Howard Graham, AIDS Outreach Program Supervisor
- Barbara Marsh, Director of Health Commissioner's Office
- William Roberts, Addiction Services Sr. Manager
- Casey Smith, Project Manager – Community Overdose Action Committee
- Andrea Young, HIV Program Manager
- Jeff Jordan, Director of Emergency Management
- Phil Plummer, Sheriff
- Josh Walters, Detective - Bulk Smuggling Task Force
- Bruce Langos, Criminal Intelligence Specialist
- Teresa Russell, Jail Treatment Coordinator
- Daryl Wilson, Chief Deputy
- Terry Ables, Sergeant - Range Task Force
- Matthew Overholt, Detective - Range Task Force
- Jessica Jenkins, Bd. of County Commissioners, Assistant Director, Human Services, Planning & Development, and Manager of Housing and Homeless Systems

Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatory, consistent with further investigation and discovery.

**Interrogatory No. 22:**

Identify all of your employees, representatives, officers, agents, or others acting on Your behalf throughout the Relevant Time Period, including the positions (or their equivalent) listed in item I.A.8 of the Government Plaintiff Fact Sheet You were required to complete in this MDL.

**Response to Interrogatory No. 22:**

Plaintiff objects to this Interrogatory as overboard, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, including to the extent it seeks as it seeks to identify "all of your employees, representatives, officers, agents, or others acting on Your behalf..." in any respect.  Plaintiff further objects to this Interrogatory to the

extent it is cumulative and seeks information that is in the public domain and available to Defendants from public sources.

Plaintiff also objects to this Interrogatory as vague and confusing to the extent it attempts to equate information from the Government Plaintiff Fact Sheet which pertains to municipalities or other entities within the County's geographic borders as employees or agents of the County.

Subject to and without waiving objections, Plaintiff responds that to the extent this Interrogatory calls for Plaintiff to copy information previously provided in the "Government Plaintiff Fact Sheet," the information previously provided in "item I.A.8" was:

**Mayors:**
- Nan Whaley (Dayton), Gary Leitzell (Dayton), Rhine McLin (Dayton)
- David Seagraves (Brookville)
- Brooks A. Compton (Centerville), Mark Kingseed (Centerville)
- Mike Stevens (Clayton), Joyce Deitering (Clayton)
- Patricia Burnside (Englewood)
- Stephen Boeder (Germantown)
- Jeffrey Gore (Huber Heights), Thomas F. McMasters (Huber Heights)
- Don Patterson (Kettering)
- Richard C. Church, Jr. (Miamisburg)
- Elaine Allison (Moraine)
- William M. Duncan (Oakwood)
- William R. Flaute (Riverside)
- Rhonda C. Finley (Trotwood), Mary Ann McDonald (Trotwood)
- Michael O'Callaghan (Union)
- Arlene Setzer (Vandalia)
- Jeffrey W. Sanner (West Carrollton)
- Daryl E. Weller (Farmersville)
- Raymond Arriola (New Lebanon)
- Cheryl S. Crabtree (Phillipsburg)

**County Commissioners:**
- Dan Foley
- Deborah Lieberman
- Judy Dodge
- Carolyn Rice

**Chief Health Officers:**
- Jeffrey A. Cooper (Commissioner)

- Jim Gross (Commissioner)

**Auditors:**
- Karl Keith

**Recorders:**
- Brandon McClain
- Willis E. Blackshear

**Sheriffs or Police Chiefs:**
- Rob Streck
- Phil Plummer
- Dave Vore

**Coroners or Medical Examiners:**
- Kent Harshbarger
- James H. Davis

**Treasurers:**
- Russell Joseph
- Carolyn Rice

**Chief Financial Officers:**
- Timothy Nolan
- John Parks

**Correctional Facility Supervisors:**
- Michael Flannery (Director - Monday Community Correctional Institute)
- Tim Depew (Director – Monday Community Correctional Institute)

**Wardens:**
- Shelbie Smith (Dayton)

**Heads of Department of Public Health:**
- Jeffrey A. Cooper (Commissioner)
- Jim Gross (Commissioner)

**Fire Chiefs:**
- Jeffrey L. Payne (Dayton)

**Directors of Emergency Medical Services**:
- Jeff Lykins

**Interrogatory No. 23:**

Identify with specificity each category of damages or equitable or monetary relief that You seek in this Action, including but not limited to all injunctive relief that You seek, all specific costs of efforts to combat Opioid addiction and abuse that You seek to recover or which may serve as the basis for relief sought in this Action (e.g., specific costs related to social services and increased crime), and all specific costs of Opioid education, prevention, or other programs for which you seek damages, abatement funds, or other monetary relief. For each category of damages or equitable or monetary relief identified in response to Interrogatory No. 23, identify the amount of each category of damages or equitable or monetary relief, describe how and by whom the damages or equitable or monetary relief were calculated, and identify the individual or entity that paid the costs or expenses identified as of the date of Your response to these Interrogatories. Such response should include: (a) a detailed description of any programs You contend support the relief sought, including a description of whether the program currently exists (b) an identification of any employees who provided information regarding the relief sought, and (c) Your best estimate, as of the date of this response, as to the total relief sought in this Action or a detailed explanation of what will be necessary to determine the amount.

**Response to Interrogatory No. 23:**

Plaintiff objects to this Interrogatory as premature under the expert deadlines in the CMO, and premature given the ongoing Plaintiff collections of documents. Plaintiff objects to this Interrogatory as vague, overly broad to the extent it requests "each category of damages or equitable or monetary relief" being sought. Plaintiff objects to this interrogatory as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). For purposes of responding to this contention interrogatory, Plaintiff incorporates the factual allegations and cause of action in the supplemental pleading and further answers that the categories of equitable or monetary relief sought include but are not limited to:

- Plaintiff seeks abatement of the continuing harm caused by the public nuisance created by the opioid epidemic. Plaintiff continues to investigate and determine the scope of equitable relief they are entitled to under applicable causes of action, including abatement. Plaintiff anticipates including at a minimum the following categories of programs and services related to the abatement of the opioid epidemic:

65

- Academic detailing
- Continued healthcare provider education
- Mass media campaigns
- Drug take-back programs
- Syringe service programs
- Fentanyl testing strips
- Drug checking machines
- Prescription drug monitoring
- Opioid Abatement Coordinating Unit and data-informed systems
- Helpline, medical social workers, transportation assistance, and bridge programs for connecting individuals to care
- Quick Response Teams
- Treatment for Opioid Use Disorder (OUD), including for pregnant women, adolescents, homeless and housing insecure, and people in detention facilities/jails/prisons
- Maintenance, expansion and improvement of treatment facilities to address OUD
- Programs to manage complications of OUD, including HIV and hepatitis C screening and treatment, and endocarditis treatment
- Prenatal screening for opioid exposure
- Prenatal and postpartum biopsychosocial services
- Prenatal and postpartum housing services
- Interventions for infants exposed to opioids in utero
- School-based prevention programs for adolescents
- Adolescents screening for OUD
- Naloxone distribution and training
- Programs for diversion from criminal justice system
- Specialized overdose investigation units
- Stigma reduction training for first responders
- Programs to reduce burnout/compassion fatigue for first responders
- Drug courts and opioid-related court-system resources
- Reentry and reintegration programs and transitional housing for formerly incarcerated people
- Recovery Initiatives, including peer recovery support services, employment opportunities, and recovery housing
- Programs to support children living with parents with OUD

- Programs to support children in foster care and adopted children and families affected by opioid use
- Permanent supportive housing and recovery housing for homeless and housing insecure individuals
- Programs for individuals with opioid misuse
- Surveillance of opioid use
- Restrictions on the marketing and promotion of opioids.

Subject to and without waiving objections, Plaintiff further answers that the categories of "equitable or monetary relief" sought in this interrogatory also include but are not limited to:

- The maximum amount of punitive damages that is constitutionally permissible as determined by the trier of fact.

- All applicable statutory pre and post-judgment interest to the fullest extent permissible by state and federal law.

To the extent Plaintiff is seeking future relief as set forth above, various components and subparts may either overlap, be a component part of, or be incidental to the equitable remedy sought as part of a comprehensive abatement plan should the Court enter such a plan, including the provision of funds necessary to implement the abatement plan. Discovery into these topics is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.  Any claims other than public nuisance have been severed, and are not the subject of this response.

Plaintiff reserves the right to supplement or amend this response as discovery proceeds.

Dated:  March 23, 2022                          Respectfully submitted,


By: */s/ Lisa Saltzburg*
   Lisa Saltzburg

MOTLEY RICE, LLC

Linda Singer

Elizabeth Smith
Motley Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com
esmith@motleyrice.com
*Attorneys for Montgomery County*

Michael Elsner
Lisa Saltzburg
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
(843) 216-9000
melsner@motleyrice.com
lsaltzburg@motleyrice.com
*Attorneys for Montgomery County*

Mathias H. Heck, Jr.
Montgomery County Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5599
Fax Number: (937) 225-4822
E-mail: heckm@mcohio.org
*Attorney for Montgomery County*

Ward C. Barrentine
Chief Assistant Prosecuting Attorney - Civil
Division
Montgomery County Prosecutor's Office
301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 23, 2022, I caused the foregoing to be served via electronic

mail on Defendants via Tracks6to10Defendants@bbhps.com.

By: */s/ Lisa Saltzburg*
Lisa Saltzburg

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:
Case No. 1:18-op-46326-DAP

THE MONTGOMERY COUNTY BOARD OF
COUNTY COMMISSIONERS and THE STATE
OF OHIO *EX REL.* MATHIAS H. HECK, JR.,
PROSECUTING ATTORNEY,

                   Plaintiff,

    vs.

CARDINAL HEALTH, INC. et al.,

                  Defendants.

MDL No. 2804

Case No. 17-md-2804

Judge Dan Aaron Polster

**PLAINTIFF'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PHARMACY
DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Federal Rules of Civil Procedure 26 and 34, as well as the local rules and orders

of this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County")

hereby responds to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies")

First Set of Requests for Production (the "Requests" and, each individually, a "Request"), as

follows:

**GENERAL OBJECTIONS**

The following objections apply to each Request. To the extent that certain specific

objections are cited in response to an individual Request, those specific objections are provided

1

because they are applicable to that specific Request and are not a waiver of the objections applicable to information falling within the scope of such Request.

1.      Plaintiff objects to each Request to the extent it is overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this MDL or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein. All such objections and the grounds therefore are hereby reserved.

3.      No admission of any nature whatsoever is to be implied or inferred in these responses. The fact that any of the Requests herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Requests, or that such answer constitutes evidence of any fact thus set forth or assumed.

4.      Plaintiff objects to each Request to the extent Plaintiff has not yet received adequate or substantially complete discovery from Defendants. As a result, Plaintiff has not completed its investigation of the facts relating to this action and have not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

5.      Plaintiff objects to each Request to the extent it purports to require Plaintiff to produce documents that are in the public domain or otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff.

2

6.    Plaintiff objects to each Request to the extent it seeks information more appropriately obtained through other methods of discovery.

7.    Plaintiff objects to each Request to the extent that it seeks information that is privileged or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

8.    Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Request as it may be narrowed by its general and specific objections and without waiver of any objection.

9.    Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control" and which constitute the records of, or that belong to, the County or its departments.

10.    Plaintiff objects to each Request to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff do not admit the factual or legal premise of any Request.

11.    Plaintiff objects to each Request to the extent they seek information that is not information belonging to the County within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff. Plaintiff's responses may reference documents and/or information provided by other parties in this litigation. Plaintiff's reference to such documents is

3

not intended to signify that Plaintiff maintains possession, custody, or control of these documents or that they belong to the County.

12.     Plaintiff objects to each Request to the extent it prematurely seeks expert opinion(s). All expert opinions will be disclosed on the dates set forth in the Case Management Order.

13.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

14.     Plaintiff intends to complete its production by the time period set forth in the Case Management Order (CMO) for the completion of fact and expert discovery, or as subsequently modified by the Court. Upon request by the requesting party, Plaintiff is willing to meet and confer regarding its responses to the Requests. All final decisions regarding whether any information or responsive document will be withheld pursuant to any objection shall be made, and notice thereof provided, before the completion of fact and expert discovery.

15.     Plaintiff objects to the Requests, and to the Definitions and Instructions included with this set of Requests, to the extent that they seek discovery that is not relevant to any party's claims or defenses.

16.     Plaintiff objects to the Requests, and to the Definitions and Instructions included with this set of Requests, to the extent that they are overly burdensome and not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

17.     Plaintiff objects to these Requests, and to the Definitions and Instructions included with this set of Requests, because they seek discovery that is not relevant to a claim or defense or proportional to the needs of the case.

17.     Plaintiff objects to these Requests to the extent they seek protected health information.

18.     Plaintiff objects to these Requests to the extent that they include multiple subparts. Plaintiff further objects to these Requests on the grounds that they are individually and collectively overbroad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of the cases. Defendants' sweeping Requests seek information without any limits on custodians or non-custodial sources. These Requests are unreasonable. To the extent that Plaintiff agrees to respond to these Requests, Plaintiff is agreeing to produce only the information it identifies in its Response.

19.     Plaintiff objects to the Requests, and to the Definitions and Instructions included with this set of Requests, to the extent that they seek documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; (d) are not reasonably accessible to Plaintiff; and/or (e) are publicly available to Defendants. With regard to any Response that Plaintiff provides, Plaintiff's Response will be limited to relevant, responsive, and non-privileged information or documents in its possession, custody, or control of, and belonging to, the County located after a reasonable search that is proportional to the needs of the case.

20.     Plaintiff objects to these Requests to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

21.     Plaintiff objects to these Requests, and to the Requests' Definitions and Instructions, to the extent that any Request, Definition, or Instruction: (a) is unduly burdensome, oppressive, overbroad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Plaintiff to draw a legal conclusion in order to respond.

22.     Plaintiff objects to the Requests that purport to require that Plaintiff provide discovery with regard to "any," "each," "every," "all," or similar all-encompassing wording, on the grounds that such Requests are overly broad, unduly burdensome, seek discovery that is not relevant to any party's claims or defenses, not proportional to the needs of the case, and beyond the scope of permissible discovery, particularly at this stage of the proceeding.

23.     Plaintiff objects to the Requests to the extent that they seek premature expert discovery or disclosure of expert opinions and go beyond the scope of permissible expert discovery under the Federal Rules of Civil Procedure. Plaintiff will provide expert discovery and disclosures in compliance with the Federal Rules of Civil Procedure but assumes no further obligation.

24.     Plaintiff's investigation and discovery is ongoing as to all matters referred to in these Objections and Responses to Defendants' Requests. Plaintiff's Responses are based upon information that has been collected and reviewed to date for the purpose of responding to these Requests, and they are not prepared from the personal knowledge of any single individual. Plaintiff reserves the right to amend and supplement these Responses as discovery and this litigation proceed.

25.     Responding to these Requests does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible. Plaintiff objects to these Requests to the extent they seek to compel individual proof or to compel Plaintiff to use any particular method of proof at trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiff objects to the Definitions of "Plaintiff" and "You" on the grounds that they are overly broad, vague, and seek to extend the requests beyond the Plaintiff entity that is named as Plaintiff in this litigation. For purposes of its Responses, Plaintiff will consider "Plaintiff" and "You" to mean the County and will respond with regard to information and documents in the County's possession, custody, or control that are records of, or belong to, the County or its departments.

2.     Plaintiff objects to the Definitions of "Document" and "Communication" to the extent that they seek to impose obligations on Plaintiff beyond those imposed by the Federal Rules of Civil Procedure. Plaintiff will respond in accordance with the applicable Federal Rules of Civil Procedure and assumes no further obligation.

3.      Plaintiff objects to the Definition of "including" to the extent that the Definition goes beyond common usage of the term, results in Requests that are overbroad, vague, ambiguous, and unduly burdensome and, using Defendants' Definition of "including," seeks discovery that is not relevant to any party's claims or defenses, nor proportional to the needs of the case, purports to impose obligations or burdens on Plaintiff that go beyond the Federal Rules of Civil Procedure, and makes demands for information and documents that are not in Plaintiff's possession, custody, or control or records that belong to the County. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to a Request not otherwise stated in the actual Request and creates a compound Request. Plaintiff will respond to the Requests as propounded, subject to its Objections, and does not agree to respond with regard to additional requirements or questions that Defendants purport to impose through their Definition of "including."

4.      Plaintiff objects to the Definition of "Relevant Time Period" to the extent it seeks to impose obligations on the Plaintiff beyond those outlined in *Discovery Ruling 3* (Doc. 762) (Filed: 07/1//18).  Plaintiff will respond in accordance with *Discovery Ruling 3* and assumes no further obligation.

5.      Plaintiff objects to Definitions 1 through 21 and Instructions 1 through 7 on the grounds that they are overly burdensome and seek to impose obligations or burdens on Plaintiff that go beyond those imposed by the Federal Rules of Civil Procedure. Plaintiff will comply with the Federal Rules of Civil Procedure.

## **NON-WAIVER**

1.      Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.      If Plaintiff, in response to any Request, inadvertently produces information that is or could be the subject of the objections stated herein, such production is not intended to be, nor is it deemed to be, a waiver of the objections with respect to such information produced or withheld.

3.      Plaintiff's failure to object to a specific Request on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Requests, consistent with further investigation and discovery.

**SPECIFIC RESPONSES AND OBJECTIONS**

**Request No. 1:**

All Documents relating to any Communications or Transactions between You and any manufacturer, distributor, or dispenser of Prescription Opioids or Cocktail Medications during the Relevant Time Period.

**Response to Request No. 1:**

In addition to its General Objections, Plaintiff objects to this request as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks "All Documents relating to any Communications or Transactions" with any opioid or cocktail drug manufacturer, distributor, or dispenser without regard to subject matter.  Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

Examples:

MC_000897537, MC_000904249, MC_000906546, MC_000906591, MC_000909259, MC_000909544, MC_000278543, MC_000278545

Alternative Campaign Survey from Montgomery County Prevention Coalition Opioid Committee and opioid warning stickers, MC_000385117 - MC_000385121

Montgomery County Prevention Coalition (MCPC) reached out to pharmacies on prescription diversion prevention. See "Opioid Warning Stickers"

ADAMHS 2019 enewsletter, MC_000352574. *See also* MC_000385220, MC_001235839

Pharmacy bags distributed to all 25 Kroger locations in Montgomery County, MC_001561407

"Dear Pharmacist" Letter from Dr. Michael Dohn of COAT Prescription Branch, MC_001141866

Montgomery County disseminated brochures related to program, called "Slow Down", MC_000731319

**Request No. 2:**

All Documents related to Opioid-related task forces or other program or group to address opioid use or diversion that You formed or participated in, including but not limited to those You identified in your 3/6/19 Plaintiff Fact Sheet (e.g., the Community Overdose Action Team (COAT) and the Montgomery County Drug-Free Coalition).

**Response to Request No. 2:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a

reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

Too numerous to list all documents, examples:

Community Overdose Action Team (COAT), MC_000132535 - MC_000132554, MC_000132706 - MC_0001323510, MC_000727316 - MC_000729633, MC_000135643 - MC_000135657, MC_001215757 - MC_001236424, MC_001213612 – MC_001204326, MC_000003096 - MC_000003413

Montgomery County Drug-Free Coalition, MC_001602081 - MC_001608722

Montgomery County Prevention Coalition, MC_000135453 - MC_000136833, MC_000162723, MC_000186033 - MC_000187639, MC_000205165, MC_000216827, MC_000216840, MC_000216913, MC_000216918, MC_000217003, MC_000225678, MC_000479254, MC_000653552 - MC_000653570, MC_001378470, MC_001406878, MC_001411031, MC_001463789 - MC_001464478, MC_001464605 - MC_001465220

Montgomery County Criminal Justice Council, MC_001349367 – MC_001350068

Getting Recovery Options Working (G.R.O.W.) is an interdisciplinary outreach team that consists of a representative from law enforcement, a Medically Assisted Treatment (MAT) provider, Peer-and-Family Support Service provider, and a local community based organization that has established trusted relationships within the community and can address the social determinates of health. The team conducts weekly visits to the homes of individuals who have overdosed on opiates and have been saved or have suffered a fatal overdose with the intention of educating the community on available resources and treatment options. An overdose save can be defined as any individual overdosing on opiates and being brought back to life through naloxone administration by law enforcement,

11

Emergency medical services, or a community member. MC_001603689 - MC_001603718,

MC_001606131, MC_001606146, MC_001606375, MC_001606751

**Request No. 3:**

All Documents reflecting or relating to any pharmacy or pharmacist's cooperation, assistance, and/or participation in any inspection, audit, investigation, or enforcement action (including enforcement actions related to fines, suspensions, revocations, and letters or other formal warnings or notices) against any pharmacy, pharmacist, doctor or other prescriber, or individual relating to the distribution, dispensing, failure to dispense, diversion, or misuse of Prescription Opioids or Cocktail Medications.

**Response to Request No. 3:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly

broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this

Request because it seeks documents or information that: (a) are in Defendants' possession,

custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c)

can be obtained from other sources that are more convenient, less burdensome, and/or less

expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible

to Plaintiff.  Plaintiff further objects to this Request to the extent it seeks documents that are not

relevant to a claim or defense and is cumulative of other requests. Plaintiff also objects to this

Request to the extent that it calls for disclosure of Privileged Information.

Subject to and without waiving its objections, Plaintiff responds that this information does

not reside within the County Sheriff's office. Rather, non-sheriff task forces would handle this and

related documents are with those task forces. If Defendants believe their employees or former

employees have engaged in such cooperation, please provide the name and time-frame, and the

County will prioritize a search. The County has also been conducting a reasonably diligent search

for non-privileged documents from the custodial and non-custodial sources referenced in the Parties' prior correspondence.

**Request No. 4:**

Investigation files for any physician, healthcare provider, pharmacy, or pharmacist employee who has been the target of a law enforcement or administrative investigation You conducted or participated in concerning the physician's or provider's prescribing or dispensing of Prescription Opioids or Cocktail Medications.

**Response to Request No. 4:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents" and all "Investigation files." Plaintiff further object to this Request to the extent it seeks Privileged Information and/or disclosure of Personal Health Information.

Subject to and without waiving its objections, Plaintiff responds that this information does not reside within the County Sheriff's office. Rather, non-sheriff task forces would handle this and related documents are with those task forces. If Defendants believe their employees or former employees have engaged in such cooperation, please provide the name and time-frame, and the County will prioritize a search. The County has also been conducting a reasonably diligent search for non-privileged documents from the custodial and non-custodial sources referenced in the Parties' prior correspondence..

**Request No. 5:**

All Documents relating to potential or alleged misuse, diversion, improper dispensing, improper distribution, failure to dispense, violation of state or federal law or regulation, or any wrongful conduct related to Prescription Opioids or Illicit Drugs, including Your efforts to identify, address, detect and prevent Prescription Opioid or Illicit Drug misuse, diversion, or injury. These Documents shall include, but are not limited to:

  a. All Documents reflecting or relating to any inspection, audit, investigation, or enforcement action taken by You against any pharmacy relating to the dispensing, failure to dispense, diversion, or misuse of Prescription Opioids;

13

b. All Documents relating to any alleged violation of state or federal law or regulation, or any wrongful conduct, by any pharmacy, medical doctor, physician assistant, pharmacist, pharmacy technician, pharmacy intern, Healthcare Provider, manufacturer, distributor, or other Person, and any related news or press releases, pleadings, transcripts, guilty pleas, or other court Documents.

c. All expert reports prepared as part of any investigation of any individual or entity regarding Prescription Opioids or Illicit Drugs.

d. All Documents—including news or press releases, pleadings, transcripts, guilty pleas, and other court Documents—that refer to diversion of Prescription Opioids or any of the Pharmacy Defendants, including Documents that have been removed from or are otherwise no longer available to the public on governmental websites maintained by You.

e. All Documents in Your possession, custody, and/or control related to any Healthcare Provider or other individual engaged in diversion and or inappropriate prescribing of Prescription Opioids, including Documents related to the individuals identified in Plaintiff's Requests for Production (i.e., Bruce Kay, Morris Brown, Thomas Greer, David Kirkwood, Suresh Gupta, Ratnam Oza, Stephen House, Lisa Lichota, Thomas Goodall, John Moore, Julia Lucente, Han Yang, Daniel Brumfield, John Dahlsten).

**Response to Request No. 5:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff. Plaintiff further objects to the Request as vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks documents and information such as that concerning "potential" "wrongful conduct" or materials

14

such as expert reports which Defendants are not producing from other litigation (even other litigation concerning the same types of claims).

Plaintiff further objects to this Request to the extent it seeks information covered by the law enforcement privilege.  Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged and Confidential Information.

Subject to and without waiving its objections, Plaintiff states that many of the materials referenced pertain to state and federal level investigations, the files for which would be in the possession, custody, or control of those authorities or task forces, not the County. The request is also overbroad, but the County conducted a diligent search for non-privileged documents from the custodial and non-custodial sources referenced in the Parties' prior correspondence, including Sheriff databases. Defendants also seek materials such as expert reports, which have not been produced in this MDL even when authored by an expert retained by a defendant in this litigation who also testified in other cases. Further, the County will meet and confer with counsel for Defendants to agree on the production of a sampling of non-privileged documents maintained in the ordinary course of business.  Additionally, the County is producing non-privileged documents that could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

Plaintiff is also searching law enforcement databases using the following Ohio Revised Codes:

- 292502.35A
- 292502A1.35A
- 292502A2.35A
- 292502A3.35A
- 292502A4A.35A
- 292502A4B.35A
- 292502A4C.35A
- 292503.35A

- 292503A1.35A
- 292503A2.35A
- 292503C1.35A
- 292503C2.35A
- 292503C3.35A
- 292503C4.35A
- 292503C5.35A
- 292503C6.35A
- 292503C7.35A
- 292504.35A
- 2925041.35A
- 292505.35A
- 292505A1.35A
- 292505A2.35A
- 292505A3.35A
- 292505A4.35A
- 292505A5.35A
- 292505A6.35A
- 292511.35A
- 292511C1.35A
- 292511C2.35A
- 292511C3.35A
- 292511C4.35A
- 292511C5.35A
- 292511C6.35A
- 292511C7.35A
- 292513.35A
- 292513A.35A
- 292513B.35A
- 292522.25
- 292523.26A
- 292523A.26A
- 292523B1.26A
- 292523B2.26A
- 292523B3.26A
- 292523B4.26A
- 292523B5.26A
- 292523C1.23H
- 292523C2.23H
- 292523C3.23H
- 292523C4.23H
- 292523C5.23H
- 292523C6.23H
- 292523D.26A

- 292524.35A
- 292524A.35A
- 292524B.35A
- 292536.35A
- 292537.25
- 292537A.250
- 292537B.250
- 292537C.250
- 292537D.250
- 292537E.250
- 292537F.250
- 472951.90Z
- 472951A.90Z
- 472951B1.90Z
- 472951B2.90Z
- 472951C1.90Z
- 472951C2.90Z
- 472951C3.90Z
- 472951D.90Z
  472951E.90Z

That search is now complete and the County is willing to confer with Defendants concerning

requests for additional documents concerning specific cases.

**Request No. 6:**

All Documents relating to the prescribing of Prescription Opioids during the Relevant Time Period by any physicians or other Healthcare Providers in the Geographic Area, including Documents relating to any alleged diversion or inappropriate prescribing practices, and/or refusal to write or fill prescriptions for Prescription Opioids by any physicians, pharmacists, or other Healthcare Providers during the Relevant Time Period.

**Response to Request No. 6:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly

broad, unduly burdensome in that it seeks "All Documents" related to prescribing of opioids. In

addition to its General Objections, Plaintiff also objects to this request as unreasonably

burdensome and not proportional to the needs of the case in that it seeks information from personal

medical files or relating to individuals. Requiring production of these materials would impose an

unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business that could be located following a reasonable diligent search, after running agreed upon search terms on the agreed to custodians, on documents belonging to the County, or its departments.

**Request No. 7:**

All Documents from the Relevant Time Period relating to the medical necessity and/or legitimate need for Prescription Opioids.

**Response to Request No. 7:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request on the grounds that it is vague and ambiguous as to the terms "medical necessity" and "legitimate need." Plaintiff further objects to the use of the term "medical necessity" as it is irrelevant to this case.

Plaintiff further objects to this Request because it seeks documents or information that are in Defendants' possession, custody, or control.

Plaintiff further objects based on the Court's ruling in *City of Chicago v. Purdue Pharma*, in which the Court granted Plaintiff's motion to be relieved from its obligation to identify opioid

18

prescriptions that it considers to be medically unnecessary and to turn over data to the Defendants regarding opioids prescribed to individuals covered under Plaintiff's insurance plans.

Subject to and without waiving any objections, Plaintiff notes that, although this request is vague and overbroad, Plaintiff's extensive collection of non-privileged documents from custodial and non-custodial sources is likely to return responsive information.

**Request No. 8**:

All Documents related to the health benefits plans offered by You to Your employees (including those responsive to MDL Government Plaintiff Fact Sheets item I.B.8), including all formularies, prescription drug lists, descriptions of benefits for such plans, and all in-network and out-of-network healthcare providers for such plans.

**Response to Request No. 8:**

In addition to its General Objections, Plaintiff objects to this Request as irrelevant, unduly burdensome, and not reasonably calculated to the lead to the discovery of admissible evidence, as health plans offered to employees have no bearing on the public nuisance claim or any potential defenses at issue. Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Subject to and without waiving its objections, Plaintiff produced non-privileged documents maintained in the ordinary course of business and could be located in non-custodial files or

following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

Examples: MC_000089002 - MC_000090063

**Request No. 9:**

All policies, procedures, and training materials regarding the proper dispensing of controlled substances, including any changes, alterations, or amendments, prior versions, and any related Communications regarding such changes.

**Response to Request No. 9:**

The County objects to this request as unduly burdensome and not proportional to the needs of the case, not reasonably calculated to lead to the discovery of admissible evidence, and to the extent it seeks privileged information or work product. Subject to and without waiving its objections, the County produced the following responsive documents, MC_001608723 – MC_001608801.

**Request No. 10:**

All Documents from the Relevant Time Period relating to the responsibilities and obligations of physicians, pharmacists, or other Healthcare Providers to treat patients for pain.

**Response to Request No. 10:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information. Plaintiff also objects to the phrase "responsibilities and obligations of physicians, pharmacists, or other Healthcare Providers," without defining any source of such obligations or otherwise demonstrating the existence of such obligations.

20

Subject to and without waiving its objections, and without conceding the existence of such obligations, Plaintiff will produce non-privileged documents, if any, on documents belonging to the County, or its departments, maintained in the ordinary course of business, which can be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians.

**Request No. 11:**

All Documents reflecting or relating to complaints, investigations, problems, disciplinary action, concerns relating to, or harm resulting from, the refusal or failure of a pharmacist, pharmacy intern, pharmacy technician, or other pharmacy employee or dispenser to dispense Prescription Opioids.

**Response to Request No. 11:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff responds that this Request seeks information in possession, custody, or control of state or federal authorities. If Defendants believe their employees or former employees have engaged in such cooperation and that pertinent communication exists at the County level please provide the name and time-frame, and the County will prioritize a search. The County has also been conducting a reasonably diligent search for non-privileged documents from the custodial and non-custodial sources referenced in the Parties' prior correspondence.

**Request No. 12:**

All Documents relating to the Ohio Automated Rx Reporting System ("OARRS") including requests for information made by you to any law enforcement agency concerning investigations of potential criminal activity, fraud (including Medicare fraud), or theft relating to Prescription Opioids; all Documents relating to use of the OARRS during the Relevant Time Period by You and/or any entities affiliated with You or on whose behalf You seek damages or other relief in this Action; actions taken or considered based on information received from OARRS; all news or press releases You issued relating to the establishment of OARRS or the use,

21

abuse, misuse, addiction to, prescribing, dispensing, sale, distribution, or diversion of Prescription Opioids or Illicit Drugs, including news or press releases that have been removed from or are otherwise no longer available to the public on governmental websites maintained by You; all Documents constituting, or referring or relating to, Communications between any Person and any current or former state or local government officials, or members of their respective staffs, relating to the establishment of OARRS; and all Documents referring or relating to actual or proposed sources of funds to administer OARRS.

**Response to Request No. 12:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, as vague and confusing request encompassing multiple subparts. Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than the Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide information.

Subject to and without waiving its objections, Plaintiff produced non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

Examples:

MC_000003096 - MC_000003413, MC_000085586, MC_000087041, MC_000087344, MC_000930926, MC_000930962, MC_000931047, MC_000931079, MC_000931121, MC_000931210, MC_001603770, MC_001603823 - MC_001603902, MC_000953575 - MC_000953577

**Request No. 13:**

22

All Documents relating to Communications between You and any federal, state, or local government official or agency (including the United States Drug Enforcement Administration, the United States Department of Justice, a United States Attorney's Office, the Federal Bureau of Investigation, the American Medical Association, the Ohio Department of Children and Families and its constituent providers, the Ohio Office of the Attorney General, the Ohio Board of Pharmacy, the Ohio Board of Medicine, and any other federal or state law enforcement agency), or insurer regarding Prescription Opioids, Cocktail Medications, or Illicit Drugs during the Relevant Time Period. Such Documents shall include any Documents Plaintiff has received from any federal, state, or local law enforcement agency regarding any of the Pharmacy Defendants and any communications between You and the DEA or You and the Ohio Board of Pharmacy (or any other applicable entity) relating to any of the Pharmacy Defendants or any other pharmacies in the Geographic Area.

## Response to Request No. 13:

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff produced non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

## Request No. 14:

All Documents from any source that explain, calculate, speculate about, discuss, estimate, reflect, or reference the maximum quantity of pills or other dosage units of Prescription Opioids that should have been distributed or dispensed in the Geographic Area for legitimate medical purposes during the Relevant Time Period.

## Response to Request No. 14:

In addition to its General Objections, Plaintiff objects to this Request as compliance with this Request would be overly broad and unduly burdensome as it purports to demand "All Documents from any source that explain, calculate, speculate about, discuss, estimate, reflect, or reference the maximum quantity of pills or other dosage units of Prescription Opioids that should have been distributed or dispensed in the Geographic Area for legitimate medical purposes during

the Relevant Time Period." Plaintiff further objects to this Request in that it is not reasonably calculated to lead to admissible evidence to the extent it asks about "any source" that "speculate[s]."

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order. Plaintiff further objects to this Request on the grounds that the term "legitimate medical purpose," as used in 21 C.F.R. § 1306.04 and 21 U.S.C. § 829, refers to the circumstances under which a prescription is written, not the quantity of pills dispensed pursuant to the totality of all such prescriptions, rendering the Request as formulated meaningless. Plaintiff also objects to this Request on the ground that the term "legitimate medical purpose," as used in 21 C.F.R. § 1306.04 and 21 U.S.C. § 829, provides criteria for the dispensing of opioids, not for their distribution, again rendering the Request as formulated meaningless.

Subject to and without waiving its objections, Plaintiff produced non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 15:**

All documents you maintain that refer or relate to the volume of Prescription Opioids prescribed, dispensed, sold, distributed, diverted, or used in the Geographic Area.

**Response to Request No. 15:**

In addition to its General Objections, Plaintiff further objects to this Request to the extent it seeks Privileged Information.

24

Subject to and without waiving its objections, Plaintiff refers Defendants to the ARCOS and SORS information produced in the MDL and to their own files produced in discovery in the MDL, to which Defendants already have access.

**Request No. 16:**

All Documents relating to reports, analyses, projections, forecasts, surveys, or newsletters concerning the impact of the use and abuse of Prescription Opioids or Illicit Drugs in the Geographic Area.

**Response to Request No. 16:**

In addition to the General Objections, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order. Plaintiff further objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information.

Plaintiff further objects to this Request to the extent that it calls for disclosure of Privileged Information.  Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 17:**

All Documents that identify, refer, or relate to any alleged Suspicious Orders placed by any of the Pharmacy Defendants or any other pharmacies in the Geographic Area.

**Response to Request No. 17:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order and the Federal Rules of Civil Procedure.  Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information.

Subject to and without waiving its objections, Plaintiff refers Defendants to their own files and documents produced in discovery, to which Defendants already have access. The County has also conducted a reasonably diligent search for non-privileged documents maintained in the ordinary course of business after running agreed upon search terms on agreed custodians and non-custodial sources, on documents belonging to the County, or its departments, as referenced in its prior correspondence.

**Request No. 18:**

All information within your possession, custody, or control concerning whether a pharmacy received Prescription Opioids as a result of a suspicious order.

**Response to Request No. 18:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff also objects to this Request as irrelevant to the extent it purports to include pharmacies other than the Chain Pharmacies, and

as cumulative of other Requests.  Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.

Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information. Plaintiff also objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order.

Plaintiff further objects to this Request because it seeks documents or information that: (a) are in Defendants' possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; and (d) are not reasonably accessible to Plaintiff.

 Subject to and without waiving its objections, Plaintiff refers Defendants to their own files and documents produced in discovery, to which Defendants already have access. The County has also conducted a reasonably diligent search for non-privileged documents maintained in the ordinary course of business after running agreed upon search terms on agreed custodians and non-custodial sources, on documents belonging to the County, or its departments, as referenced in its prior correspondence.

**Request No. 19:**

All Documents from the Relevant Time Period related to Opioid cases handled by crime labs in the Geographic Area.

**Response to Request No. 19:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."

Plaintiff objects to this Request to the extent it seeks Privileged Information.  Plaintiff further objects to this Request as it seeks documents that are not in the possession, custody, of control of the Plaintiff.  Subject to and without waiving its objections, Plaintiff will produce responsive, non-privileged information, including LIMS database extracts of all tests done by the crime lab, quarterly reports, presentations, and other non-privileged documents kept in the ordinary course of business and which could be located following a reasonable diligent search, after running agreed upon search terms on custodial and non-custodial sources.

**Request No. 20:**

All Documents relating to investigations or efforts to discover or address whether any known overdose was related to the ingestion of Opioids, including medical, medical examiner, coroner, forensic pathology, toxicology records, any Documents reflecting the policies or procedures for conducting such investigations, any Documents concerning the actual or suspected source of the ingested Opioids, and any Documents reflecting Your efforts to compile or track statistics regarding fatal or non-fatal overdoses involving Opioids or Illicit Drugs.

**Response to Request No. 20:**

In addition to its General Objections, Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Plaintiff further objects to this Request as unduly burdensome to the extent it seeks "statistics regarding fatal or non-fatal overdoses involving Opioids or Illicit Drugs," as Defendants may access statistics through public and other sources.

Subject to and without waiving its objections, Plaintiff has produced non-privileged documents maintained in the ordinary course of business and that could be located following a reasonable diligent search on documents belonging to the County, or its departments.

**Request No. 21:**

All documents in your possession, custody, or control relating to any prescription disposal program You have formed, funded, operated, or participated in.

**Response to Request No. 21:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff refers Defendants to its responses to Requests No. 2 and 5. Although Defendants' Request is overbroad, the County has produced and is producing responsive, non-privileged documents that could be located following a reasonable diligent search from the custodial and non-custodial sources identified in its previous correspondence.

**Request No. 22:**

All documents in your possession, custody, or control relating to addiction treatment programs that you have formed, funded, operated, or participated in, including but not limited to those You identified in your 3/6/19 PFS (e.g., Dayton & Montgomery County's Addiction Services; the medication assisted treatment facility that opened in the fall of 2017; Public Health's Ambulatory Withdrawal Management Services program; the 24/7 CrisisCare program; the Community Overdose Action Team (COAT); programs related to funding for residential treatment facilities such as Nova Behavioral Health, the program to provide recovery housing for pregnant

29

women, the Dora Lee Tate Center for juvenile residential treatment; the Sheriff's Jail Treatment program; ADAMHS services for inmates in the Montgomery County Jail; CarePoint, a syringe exchange program operated by Public Health, Dayton & Montgomery County; the Common Pleas Court's Secure Transitional Offender Program ("STOP" Program); the Montgomery County Family Treatment Court; the Women's Therapeutic Court; and Public Health's Addiction Services Program that provides Intensive and Non-Intensive Outpatient services, as well as Medication Assisted Treatment).

**Response to Request No. 22:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff refers Defendants to its responses to Requests No. 2 and 5.  Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments, as well as responsive, non-privileged documents that could be located following a reasonably diligent search of non-custodial sources.

**Request No. 23:**

All documents in your possession, custody, or control relating to any drug abuse prevention or education programs related to Prescription Opioids that You provided, operated, or funded, including but not limited to those identified in your 3/6/19 PFS.

**Response to Request No. 23:**

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents."

Subject to and without waiving its objections, Plaintiff refers Defendants to its responses to Requests No. 2 and 5.  Plaintiff will produce non-privileged documents maintained in the ordinary course of business and that could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County,

or its departments, as well as responsive, non-privileged documents that could be located following a reasonably diligent search of non-custodial sources referenced in prior correspondence.

**Request No. 24:**

All Documents relating to the money damages and other relief You are seeking in this Action, including the computation of the amount of such damages and the inputs into any such computation and Documents reflecting the costs and expenses You seek to recover.

**Response to Request No. 24:**

In addition to the General Objections, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order. Plaintiff further objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents" relating to claims other than the public nuisance claim at issue in Track Seven.

Plaintiff objects to this interrogatory as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure. Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged and Confidential Information. Plaintiff further objects to the extent that this Request seeks information relating to relief other than Plaintiff's claim for abatement. Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 25:**

All Documents relating to money requested, expected, received, allocated, or budgeted, from or by any source, for the purpose of addressing increased expenditures related to the harm for which you seek damages or other relief in this Action.

**Response to Request No. 25**:

In addition to the General Objections, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). All expert opinions, reports, and materials will be disclosed on the dates set forth in the Case Management Order.

Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents" and in that it seeks documents from "any source."  Plaintiff further objects to this Request to the extent it is cumulative, overbroad, unduly burdensome, and seeks documents that are in the public domain and available to Defendants from public sources.

Subject to and without waiving its objections, Plaintiff states that: (1) annual budget documents for the County, which include  Budgets in Brief, Budget and Plan, Detailed Budgets by Department, Budget Presentations and Plans for the County will be produced, along with comprehensive annual financial report, and grant files relevant to this case, and (2) Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms, on documents belonging to the County, or its departments.

**Request No. 26**:

All Documents and data referring or relating to Your expenditures relating to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids or Illicit Drugs, including Documents relating to healthcare costs paid by You or by or through fully or partially-funded medical insurance plans and workers' compensation programs and Documents relating to additional overtime costs incurred by You to replace or otherwise compensate for employees absent due to long-term Prescription Opioid use. Include in this response any policies governing evaluation or approval of such expenditures.

**Response to Request No. 26**:

In addition to its General Objections, Plaintiff objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case in seeking "All Documents and data,"

and as cumulative of other Requests.  Plaintiff also objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here, and the burden is totally disproportional to the needs of the case.

Plaintiff also objects to this Request to the extent that it calls for disclosure of Privileged Information. Plaintiff objects to this Request as calling for an expert opinion that will be the subject of a fully-supported and detailed expert opinion(s) that will be disclosed in accordance with the CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving its objections, Plaintiff refers Defendants to Plaintiff's response to Request No. 25.

**Request No. 27:**

All Documents relating to Your efforts to recover expenditures related to Prescription Opioid or Illicit Drug addiction, misuse, abuse, or overdose in the Geographic Area from any Person, including (without limitation) insurers, government entities, manufacturers, pharmacists, pharmacies, Healthcare Providers, clinics, drug dealers, drug traffickers, or drug trafficking organizations.

**Response to Request No. 27:**

In addition to the General Objections, Plaintiff further objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to the

Request to the extent that it seeks documents or information that: (a) are equally or more readily available from sources other than Plaintiff; and/or (b) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information.

Plaintiff further objects to this Request as it is irrelevant due to joint and several liability, Polster Or. (MDL Doc. 2572), and because this public nuisance claim seeks prospective abatement relief from Defendants, not past compensatory damages. Defendants also appear to seek this discovery for purposes of the abatement phase, not liability. Plaintiff objects to this Request to the extent that is calls for disclosure of Privileged Information. Subject to and without waiving its objections, Plaintiff refers Defendants to the pleadings in this MDL, and its complaint against McKinsey in MDL 2996, which identify the defendants identified in its efforts to obtain relief for the public nuisance. All claims other than the claims against the Pharmacy Defendants have been stayed by the MDL courts.

**Request No. 28:**

Quarterly and annual budgets and financial reports for You and any entities affiliated with You or on whose behalf You seek damages or other relief in this Action.

**Response to Request No. 28:**

Plaintiff objects to the extent that this Request is overbroad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence in a public nuisance abatement action, as well as to the extent it seeks discovery concerning claims not at issue in Track Seven. Plaintiff further objects to this Request to the extent it is cumulative and to the extent seeks documents that are in the public domain and available to Defendants from public sources.

Subject to and without waiving its objections, Plaintiff refers Defendants to its Response to Request No. 25.

**Request No. 29**:

All meeting agendas for any City Council, County Commission, County Health Board/Commission, or their equivalent that reference Prescription Opioids, the misuse of Opioids, or related topics.

**Response to Request No. 29**:

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad, unduly burdensome, in that it seeks "All Documents."  Plaintiff objects to this Request as it seeks documents or information that: (a) are not in Plaintiff's possession, custody, or control; (b) are equally or more readily available from sources other than Plaintiff; and (c) are within the public domain and available to Defendants from public sources.

Subject to and without waiving its objections, Plaintiff refers Defendants to the following website:

https://www.mcohio.org/government/elected_officials/board_of_county_commissioners/resolutions/index.cfm

**Request No. 30**:

All organizational charts identifying your employees, representatives, officers, agents, or others acting on Your behalf, including the positions (or their equivalent) listed in item I.A.8 of the Government Plaintiff Fact Sheet You were required to complete in this MDL.

**Response to Request No. 30**:

In addition to its General Objections, Plaintiff objects to this Request because it is overly broad and unduly burdensome, in that it seeks "All Documents." Plaintiff further objects to this request to the extent it seeks documents from sources other than the County or that are not records of, or documents belonging to, the County or its departments.

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a

reasonable diligent search, after running agreed upon search terms on agreed custodians, on documents belonging to the County, or its departments.

**Request No. 31**:

All Documents requested in Section II of the Government Plaintiff Fact Sheet that You were required to complete in this MDL.

**Response to Request No. 31**:

Subject to and without waiving its objections, Plaintiff will re-produce documents previously produced with the Plaintiff Fact Sheet.

**Request No. 32**:

All Documents referenced, identified, and/or used in preparing answers in response to any Interrogatory served on You by any of the Pharmacy Defendants.

**Response to Request No. 32**:

Subject to and without waiving its objections, Plaintiff will produce non-privileged documents to the extent any were referenced, identified, and/or used in preparing answers in response to the MDL Government Plaintiff Fact Sheets and/or any interrogatory served by the Pharmacies.

**Request No. 33**:

All agreements between You and any Defendant in this Action or other lawsuits related to Opioids regarding settlement or resolution of any claims, release or discharge of any liability, or payment of any funds or provision of other items of value, including all related agreements, terms sheets, memoranda of understanding, releases and agreements under the Ohio Governor's OneOhio plan.

**Response to Request No. 33**:

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence, including in seeking any "term sheets, memoranda of understanding, releases and agreements" and in seeking

discovery concerning any lawsuit in any way related to Opioids.   Plaintiff further objects to this request to the extent it seeks any information subject to confidentiality orders or agreements or Privileged Information.

Subject to and without waiving its objections, Plaintiff will produce two resolutions passed concerning OneOhio and refers Defendants to settlement agreements readily available to them on the internet at https://nationalopioidsettlement.com/.

**Request No. 34:**

All Documents related to any actual or proposed agreement to settle, dismiss, discontinue, or not pursue litigation related to Opioids against any Person or entity, including any doctor, sales representative, Healthcare Provider, pharmacist, or pharmacy.

**Response to Request No. 34:**

In addition to its General Objections, Plaintiff objects to this Request as overly broad, unduly burdensome, and not reasonably calculated to lead to admissible evidence, including in seeking "All Documents" related to  any "actual or proposed agreement" and in seeking discovery concerning any lawsuit in any way related to Opioids.   Plaintiff further objects to this request to the extent it seeks any information subject to confidentiality orders or agreements or Privileged Information.

Subject to and without waiving its objections, Plaintiff refers Defendants to Plaintiff's response to Request No. 33.

**Request No. 35:**

All Claims Data regarding each prescription dispensed under the health benefits plans offered by You to Your employees from the Relevant Time Period for either (a) a Subject Prescription Opioid, (b) a Benzodiazepine dispensed to a particular member within 14 days of a Prescription Opioid, or (c) a Muscle Relaxer dispensed to a particular member within 14 days of a Prescription Opioid. For each prescription, identify the same 34 fields that the Pharmacy Defendants were ordered to provide in the Court's 1/27/20 Discovery Ruling Regarding Pharmacy Data Production, Case No. 17-md-2804, Doc. 3106 at 8.

37

**Response to Request No. 35:**

In addition to its General Objections, Plaintiff objects to this request as unreasonably burdensome and not proportional to the needs of the case in that it seeks information from personal medical files or relating to individuals. Requiring production of these materials would impose an unreasonable cost on Plaintiff and would cause substantial harm to strong privacy interests held by the individuals whose private medical files are the subject of this Request. Plaintiff is not claiming any damages on behalf of any individual or group of individuals who were harmed by Defendants' conduct, and the claims asserted by Plaintiff does not require a showing that any third-party individuals were harmed.

Individual proof is not necessary here and the burden is totally disproportional to the needs of the case.

Plaintiff further objects based on the Court's ruling in *City of Chicago v. Purdue Pharma*, in which the Court granted Plaintiff's motion to be relieved from its obligation to identify opioid prescriptions that it considers to be medically unnecessary and to turn over data to the Defendants regarding opioids prescribed to individuals covered under Plaintiff's insurance plans.

Subject to and without waiving its objections, Plaintiff responds that Plaintiff is searching for prescription claims data for all patients who had at least one opioid prescription.  For each of these patients, the County is collecting all prescription data in the County's possession, custody or control, including any benzodiazepine or muscle relaxer within 14 days of the opioid prescription.


Dated: March 23, 2022                                    Respectfully Submitted,

By: */s/ Lisa Saltzburg*
 Lisa Saltzburg

MOTLEY RICE, LLC

Linda Singer
Elizabeth Smith
Motley Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com
esmith@motleyrice.com
*Attorneys for Montgomery County*

Michael Elsner
Lisa Saltzburg
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
(843) 216-9000
melsner@motleyrice.com
lsaltzburg@motleyrice.com
*Attorneys for Montgomery County*

Mathias H. Heck, Jr.
Montgomery County Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5599
Fax Number: (937) 225-4822
E-mail: heckm@mcohio.org
*Attorney for Montgomery County*

Ward C. Barrentine
Chief Assistant Prosecuting Attorney - Civil Division
Montgomery County Prosecutor's Office

301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2022, I caused the foregoing to be served via electronic mail on Defendants via Tracks6to10Defendants@bbhps.com .

By: */s/ Lisa Saltzburg*

Lisa Saltzburg

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

IN RE NATIONAL PRESCRIPTION
OPIATE LITIGATION

This document relates to:
Case No. 1:18-op-46326-DAP

THE MONTGOMERY COUNTY BOARD OF
COUNTY COMMISSIONERS and THE STATE
OF OHIO *EX REL.* MATHIAS H. HECK, JR.,
PROSECUTING ATTORNEY,

                Plaintiff,

vs.

CARDINAL HEALTH, INC. et al.,

                Defendants.

MDL No. 2804

Case No. 17-md-2804

Judge Dan Aaron Polster

**PLAINTIFF'S SUPPLEMENTAL RESPONSES AND OBJECTIONS TO THE
PHARMACY DEFENDANTS' SECOND SET OF INTERROGATORIES**

Pursuant to Federal Rules of Civil Procedure 26 and 33, as well as the local rules and orders of
this Court, the Montgomery County Board of County Commissioners ("Plaintiff" or "County") hereby
responds to the Pharmacy Defendants (collectively "Defendants" or "Chain Pharmacies") Second Set
of Interrogatories (the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

**OBJECTIONS**

The following objections apply to each Interrogatory. To the extent that certain specific
objections are cited in response to an individual Interrogatory, those specific objections are

1

provided because they are applicable to that specific Interrogatory and are not a waiver of the objections applicable to information falling within the scope of such Interrogatory.

1.      Plaintiff objects to each Interrogatory to the extent it is overly broad, vague, unduly burdensome, seek information that is not relevant to any party's claim or defense, or seek to impose obligations or require actions beyond those required by the Rules of Civil Procedure, the ESI Protocol entered in this MDL or the Local Rules of the United States District Court of the Northern District of Ohio.

2.      These responses are made solely for the purpose of and in relation to this action. Each answer is given subject to all appropriate objections, which would require the exclusion at trial of any statement contained or document provided herein. All such objections and the grounds therefore are hereby reserved.

3.      No admission of any nature whatsoever is to be implied or inferred in these responses. The fact that any of the Interrogatories herein may have been answered should not be taken as an admission or a concession of the existence of any facts set forth or assumed by the Interrogatories, or that such answer constitutes evidence of any fact thus set forth or assumed.

4.      Plaintiff objects to each Interrogatory to the extent Plaintiff has not yet received adequate discovery from Defendants. As a result, Plaintiff has not completed its investigation of the facts relating to this action and have not yet completed its preparation for trial. Accordingly, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.

5.      Plaintiff objects to each Interrogatory to the extent it purports to require Plaintiff to produce documents that are in the public domain or otherwise available to the Chain Pharmacies as easily from other sources as from Plaintiff.

6.     Plaintiff objects to each Interrogatory to the extent it seeks information more appropriately obtained through other methods of discovery.

7.     Plaintiff objects to each Interrogatory to the extent that it seeks information that is privileged or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").

8.     Whenever in the responses Plaintiff employs the phrase "subject to and without waiving all objections," Plaintiff is responding to the Interrogatory as it may be narrowed by its general and specific objections and without waiver of any objection.

9.     Any response stating that Plaintiff will produce documents shall be deemed followed by the phrase "as are within Plaintiff's possession, custody, or control" and which constitute the records of, or that belong to, the County or its departments.

10.     Plaintiff objects to each Interrogatory to the extent that it implies the existence of facts or circumstances that do not or did not exist, and to the extent that it states or assumes legal conclusions. In providing these objections and responses, Plaintiff does not admit the factual or legal premise of any Interrogatory.

11.     Plaintiff objects to each Interrogatory to the extent it seeks information that is not information belonging to the County within Plaintiff's possession, custody, or control, seek documents that do not already exist, or which purport to require a response by Plaintiff on behalf of an entity or individual other than Plaintiff. Plaintiff's responses may reference documents and/or information provided by other parties in this MDL. Plaintiff's reference to such documents is not

intended to signify that Plaintiff maintains possession, custody, or control of these documents or that they belong to the County.

12.     Plaintiff objects to each Interrogatory to the extent it prematurely seeks expert opinion(s). All expert opinions will be disclosed on the dates set forth in the Case Management Order.

13.     Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections in the event that additional information becomes available.

14.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that it seeks discovery that is not relevant to any party's claims or defenses.

15.     Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they are overly burdensome and not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Plaintiff objects to these Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, because they seek discovery that is not relevant to a claim or defense or proportional to the needs of the case.

17.     Plaintiff objects to these Interrogatories to the extent they seek protected health information.

18.     Plaintiff objects to these Interrogatories to the extent that they include multiple subparts. Plaintiff further objects to these Interrogatories on the grounds that they are individually

and collectively overbroad and unduly burdensome and seek discovery that is not relevant to any party's claims or defenses and not proportional to the needs of the case. To the extent that Plaintiff agrees to respond to these Interrogatories, Plaintiff is agreeing to produce only the information it identifies in its Response.

19. Plaintiff objects to the Interrogatories, and to the Definitions and Instructions included with this set of Interrogatories, to the extent that they seek information that: (a) is in Defendants' possession, custody, or control; (b) is equally or more readily available from sources other than Plaintiff; (c) can be obtained from other sources that are more convenient, less burdensome, and/or less expensive than requiring Plaintiff to provide the information; (d) is not reasonably accessible to Plaintiff; and/or is publicly available to Defendants. With regard to any Response that Plaintiff provides, Plaintiff's Response will be limited to relevant, responsive, and non-privileged information in its possession, custody, or control of, and belonging to, the County located after a reasonable search that is proportional to the needs of the case.

20. Plaintiff objects to these Interrogatories to the extent that they contain terms that are not defined or terms that are defined in a vague, ambiguous, or unintelligible manner.

21. Plaintiff objects to these Interrogatories, and to the Interrogatories' Definitions and Instructions, to the extent that any Interrogatory, Definition, or Instruction: (a) is unduly burdensome, oppressive, overbroad, ambiguous, confusing, or vague; (b) is duplicative or unreasonably cumulative of other discovery in this investigation; or (c) calls for Plaintiff to draw a legal conclusion in order to respond.

22. Plaintiff objects to the Interrogatories that purport to require that Plaintiff provide discovery with regard to "any," "each," "every," "all," or similar all-encompassing wording, on the grounds that such Interrogatories are overly broad, unduly burdensome, seek discovery that is

not relevant to any party's claims or defenses, not proportional to the needs of the case, and beyond the scope of permissible discovery, particularly at this stage of the proceeding.

23.     Plaintiff objects to the Interrogatories to the extent that they seek premature expert discovery or disclosure of expert opinions and go beyond the scope of permissible expert discovery under the Discovery Rules. Plaintiff will provide expert discovery and disclosures in compliance with the Discovery Rules but assumes no further obligation.

24.     Plaintiff's investigation and discovery are ongoing as to all matters referred to in these Objections and Responses to Defendants' Interrogatories. Plaintiff's Responses are based upon information that has been collected and reviewed to date for the purpose of responding to these Interrogatories, and they are not prepared from the personal knowledge of any single individual. Plaintiff reserves the right to amend and supplement these Responses as discovery and this litigation proceed.

25.     Responding to these Interrogatories does not waive Plaintiff's rights to prove its claims, in whole or in part, through aggregate proof or statistical evidence. Plaintiff reserves its rights to assert that the use of any individualized prescription information is inappropriate, irrelevant, or inadmissible. *See* Report and Recommendation, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD-2804 (DAP), Doc. 1025 (N.D. Ohio) (Magistrate Judge David A. Ruiz); *In re Neurontin Litigation*, 712 F.3d 21, 29-39 (1st Cir. 2013); *United States v. Life Care Centers of Am., Inc.*, 114 F. Supp. 3d 549 (E.D. Tenn. 2014); *United States v. Life Care Centers of Am., Inc.*, 1:08-CV-251, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015); Order Regarding Discovery Ruling No. 5, *In re: National Prescription Opiate Litig.*, Case No. 1:17-MD- 2804 (DAP), Doc. 1047 (N.D. Ohio). In short, by responding, Plaintiff does not concede that this information is relevant or admissible.

26.     Plaintiff objects to these Interrogatories to the extent they seek to compel individual proof, or to compel Plaintiff to use any particular method of proof, at trial.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Plaintiff incorporates by reference each objection to the Definitions and Instructions set forth in its Responses and Objections to the Pharmacy Defendants' First Set of Interrogatories served on September 20, 2021.

2.     Plaintiff objects to the Definition of "DHHS Programs" to the extent that the Definition results in Interrogatories that are overbroad, vague, ambiguous, and unduly burdensome. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to a Interrogatory not otherwise stated in the actual Interrogatory and creates a compound Interrogatory.

3.     Plaintiff objects to the Definition of "DOJ Programs" to the extent that the Definition results in Interrogatories that are overbroad, vague, ambiguous, and unduly burdensome. Plaintiff further objects to this Definition to the extent that it seeks to add requirements to a Interrogatory not otherwise stated in the actual Interrogatory and creates a compound Interrogatory.

## NON-WAIVER

1.     Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

2.     If Plaintiff, in response to any Interrogatory, inadvertently produces information that is or could be the subject of objections stated herein, such information is not intended to be nor is it deemed to be a waiver of the objections with respect to such information produced or withheld.

7

3.      Plaintiff's failure to object to a specific Interrogatory on a particular ground or grounds shall not be construed as a waiver of its rights to object on any additional grounds.

4.      Plaintiff responds herein based upon information it has been reasonably able to gather at the time of making these responses. Plaintiff reserves its right to amend and/or to supplement its objections and responses to the Interrogatories, consistent with further investigation and discovery.

## SPECIFIC RESPONSES AND OBJECTIONS

**Interrogatory No. 1**:

Your Red Flag Submission states that You have "not ... applied every reasonable method for identifying suspicious or 'red flag' prescriptions." Identify each such method that You omitted from Your analysis and identify any support (e.g., literature, testimony) for Your position that each is a "reasonable" method to identify suspicious or red flag prescriptions.

**Response to Interrogatory No. 1**:

Plaintiff objects to this Interrogatory as overboard and unduly burdensome to "identify each such method that You omitted from Your analysis" and further to identify why the method omitted was "reasonable". Plaintiff objects to this Interrogatory to the extent it calls for an expert opinion. Plaintiff has provided responses identifying the methods and data to which those methods may be applied consistent with Discovery Ruling 12. Defendants request that Plaintiff now identify the methods not used and to identify why the omitted methods are reasonable is beyond the scope of Plaintiff's burden in this case.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 2**:

Describe how each Red Flag Criteria listed on Exhibit A to Your Red Flag Submission was created and identify each person involved in creating it.

**Response to Interrogatory No. 2**:

Plaintiff objects to this Interrogatory as unduly burdensome to "describe how each Red Flag Criteria ... was created." Plaintiff objects to this Interrogatory to the extent it calls for an expert opinion. Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 3**:

Your Red Flag Submission identifies "Recurrent Red Flagged Prescriptions," which You describe as "all subsequent prescriptions that are flagged as a result of the initial prescription." Setting aside the initial prescriptions for which You claim one or more Red Flag Criteria were present, identify all subsequent prescriptions for which one or more Red Flag Criteria were independently present.

**Response to Interrogatory No. 3**:

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Plaintiff objects to this Interrogatory as unduly burdensome to "identify all subsequent prescriptions." Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 4**:

Your Red Flag Submission provides: "A total of prescriptions 1,963,312, or 54.2% of the total prescriptions produced, were flagged by at least one Red Flag Criteria. In the absence of due diligence, the subsequent 'Recurrent Red Flagged Prescriptions' bring the number of flagged prescriptions to 2,709,209 or 74.8% of the total prescriptions produced." Describe what You mean by "due diligence" and how You would determine that it was not performed with respect to the "Recurrent Red Flagged Prescriptions" that You identified.

**Response to Interrogatory No. 4**:

Plaintiff objects to this interrogatory to the extent it calls for an expert opinion. Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2).

Subject to and without waving objections, Plaintiff defines "Due Diligence" to include any and all investigatory materials related to each distribution order, prescription, particular pharmacy's dispensing practices and all documents relating to the decision to hold or ship the order, report the order as suspicious to the DEA or any other governmental body increase the threshold or quota for a

10

particular pharmacy and/or whether to dispense the medication. Plaintiff also directs Defendants to Plaintiffs' Second Set of Requests for Production to All Chain Pharmacy Defendants. In Request 28, Plaintiff request Defendants to produce all Due Diligence on Red Flag prescriptions.

Subject to and without waiving objections, Plaintiff refers Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

**Interrogatory No. 5**:

Your Red Flag Submission states that You identified "prescriptions dispensed by Defendants, which were written by prescribers regarding whom Defendants had or should have had actual or constructive notice were engaged in activity indicative of possible or actual diversion and/or were written by prescribers who issued the prescription without a legitimate medical purpose or outside the usual course of professional practice and/or were not authorized to issue controlled substance prescriptions." Describe how You identified each of these prescribers, including without limitation what facts You claim should have provided "actual or constructive notice" to Defendants that those prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions."

**Response to Interrogatory No. 5**:

Plaintiff objects to this Interrogatory as a contention interrogatory better answered at the close of fact and expert discovery. *See* F.R.C.P. 26. Plaintiff also objects to this Interrogatory as overbroad and unduly burdensome in going beyond the scope of even a contention Interrogatory. Further, to the extent Defendants seek information about identification of information, this is privileged and impermissibly seeks work product. Subject to and without waiving objections, Plaintiff refers

11

Defendants to Plaintiff's Second Submission Pursuant to Case Management Order served on October 27, 2021.

In addition, Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery is ongoing and this information will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the scheduling orders in this case and the Federal Rules of Civil Procedure.

Plaintiff reserves the right to supplement this answer through expert witnesses pursuant to the Scheduling Order entered by the Court.

Subject to and without waiving any objection, Plaintiff need not, and could not identify every prescriber or every piece of information Defendants possessed providing actual or constructive notice. Regarding the information alerting Defendants that prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions," Plaintiff also refers Defendants to the Supplemental Pleading detailing the sources of information available to them, including, for example, Paragraphs 101-113, 130-34, & 181-88. Plaintiff refers Defendants to the red flag prescriptions themselves and to the information in their own files. Plaintiff reserves the right to cite as an example any prescriber identified in Defendants' documents as potentially "engaged in activity indicative of possible or actual diversion," "issuing prescriptions 'without a legitimate medical purpose or outside the usual course of professional practice,'" or "'not authorized to issue controlled substance prescriptions.'" Plaintiff also notes that the Court's recent ruling denying the Track Three Defendants' Rule 50(b) motion highlighted the failure to use information available and the significance of information providing notice, but which the Track Three Defendants did *not* maintain in their files or did keep or failed to

12

share with their pharmacists. For example, the Court described evidence "CVS **knew** it did not have sufficient policies in place to ensure compliance," and that even its "more advanced iteration of RxConnect" failed to "give pharmacists known information about the company's investigations into suspicious prescribers," among other information. Dkt. 4295 at 7-8 (emphasis in original). Walgreens' policy was to return refused opioid prescriptions to the patient without documenting the refused prescription, allowing the same person to "try his luck" again either with a different, time-pressured pharmacist or at another store. *Id.* at 14-15. Walmart as of 2011 provided "aggregate reporting regarding refusal-to-fill information to company leadership," but "failed to 'push that down to the stores.'" *Id.* at 18. Defendants were each on notice of their inadequate policies and procedures, as well as the pressures their performance metrics put on those filling the prescriptions. *See generally* Supplemental Pleading.

### Interrogatory No. 6:

State whether or not You believe that the 115 prescribers identified in Your Red Flag Submission contributed to the alleged public nuisance that You claim exists.

### Response to Interrogatory No. 6:

Plaintiff objects to this Interrogatory as an improper contention Interrogatory that is not reasonably calculated to lead to admissible evidence about the contentions actually at issue in the supplemental pleading. The County is not obligated to make additional allegations about other non-parties. If the Chain Pharmacies seek to do so, such information should be part of their own discovery responses.

Plaintiff contends, and will prove at trial, that the conduct of each of the Defendants was a substantial factor in creating the public nuisance; it is irrelevant to Plaintiff's claim, and to Defendants' defenses, whether there are other persons whose conduct was also a substantial factor, because the role

of any such additional persons does not absolve Defendants of responsibility for their role. Or. (MDL Doc. 2572).

Subject to and without waiving any objections, Plaintiff answers that the following entities are and were a substantial factor in creating the public nuisance at issue in this case: the Opioid Manufacturer defendants, the Opioid Distributor defendants, and the Opioid Pharmacy defendants as those terms have been used and are understood in standard practice of this MDL. Specific to CT7 and relevant to this case, Plaintiff identifies CVS, Walgreens, Walmart, Rite Aid, Kroger, and Meijer as substantial factors in creating the public nuisance that is the Opioid Epidemic. Whether any other person or entity is a substantial factor in creating the nuisance is irrelevant to these defendants' liability due to joint and several liability. *Id.*

**Interrogatory No. 7**:

Identify all current or former employees of the Pharmacy Defendants with whom You have communicated regarding issues relevant to this Action and state whether you have obtained a recorded statement from each such person.

**Response to Interrogatory No. 7**:

Plaintiff objects to this Interrogatory as unduly burdensome to identify "all current or former employees of the Pharmacy Defendants with whom" Plaintiff may have communicated with "regarding issues relevant to this Action". Plaintiff objects to this Interrogatory to the extent it seeks information covered by the law enforcement privilege. Further, compliance with this Interrogatory would potentially require the disclosure of potentially damaging, and private information regarding persons who were investigated for or questioned about potential misconduct but were not necessarily disciplined, charged, or convicted. Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving all objections, Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refers Defendants to the supplemental pleading in this case.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

Subject to and without waiving any objection, Plaintiff responds that efforts of Community Overdose Action Team and Montgomery County Prevention Coalition included reaching out to chain pharmacies to offer free opioid warning stickers and prescription bags through Medibags. None of the Pharmacy Defendants accepted the offer to provide these resources. The County will produce examples of the stickers and has provided responsive information in connection with its Response to Interrogatory No. 12 in Defendants' First Set of Interrogatories. If any Pharmacy Defendant is aware of any communication with the County, the County will also search for related documents.

**Interrogatory No. 8**:

Identify all marketing or promotional materials used by any Pharmacy Defendants related to Opioids that you claim contributed to the alleged public nuisance.

**Response to Interrogatory No. 8**:

Plaintiff objects to "identify all marketing or promotional materials used by any Pharmacy Defendants" as overly broad and unduly burdensome. Plaintiff objects to this Interrogatory as requiring Plaintiff to identify data sets in the possession, custody and control of Defendants or third parties.

15

Plaintiff responds that this Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff refer Defendants to the supplemental pleading in this case.

Plaintiff objects to this Request to the extent it prematurely seeks expert opinion(s). Discovery into this topic is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with CMO and the Federal Rules of Civil Procedure.

Subject to and without waiving any objection, Plaintiff also refers Defendants to Paragraphs 560-598 of the Supplemental Pleading and to the following materials referenced therein, and reserves the right to supplement this response and to reference any materials.

- Acquired_Actavis_00376614
- ENDO-CHI_LIT-00214078
- ENDO-OPIOID_MDL-06157733
- INSYS-MDL-000422516
- Partners Against Pain" Web site, under "Professional Education" menu and "Opioids and back pain: the last taboo"—2000. Available at: http://www.partnersagainstpain.com/html/proofed/pmc/pe_pmc6.htm. Accessed March 19, 2001.
- *Dispelling the Myths About Opioids* [brochure for physicians]. Stamford, CN: Purdue Pharma; 1998;
- PDD1701046870
- PDD8801136088
- PDD8801366607
- PKY180267742
- PKY180293682
- PKY181985212
- PPLP003469655
- PPLPC008000015973
- PPLPC008000019586
- PPLPC008000021190
- PPLPC012000007168
- PPLPC024000012813
- PPLPC024000014423
- PPLPC024000596540
- PPLPC025000005258
- PPLPC028000008080
- PPLPC029000019201
- PPLPC030000616602
- PPLPC065000000818

- WAGFLDEA00000363
- WAGFLDEA00000659
- WAGFLDEA00000812
- WAGFLDEA00000925
- WAGFLDEA00001297
- WAGMDL00659801
- WAGMDL00766955

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 9**:

Identity and describe the role of any consultant or other third party retained by You to investigate, prosecute, regulate, or provide other services related to Opioids.

**Response to Interrogatory No. 9**:

Plaintiff objects to this Interrogatory as vague, overly board, and unduly burdensome to the extent it request Plaintiff to identify "any consultant or other third party retained" to "investigate, prosecute, regulate or provide other services." Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Plaintiff objects to the Interrogatory as premature under the Scheduling Order in this matter. Subject to and without waiving objections, Plaintiff responds it will provide names of trial and expert witnesses pursuant to the CMO already in place.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable

diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 10**:

For each fiscal year in which You believe any Pharmacy Defendant engaged in conduct that caused or contributed to the public nuisance You believe exists and purportedly needs abatement, identify the amount and source of funding You (or any of Your divisions, departments, agencies, boards, municipalities, or other components) received in connection with each DHHS Program and/or DOJ Program.

**Response to Interrogatory No. 10**:

Plaintiff objects to the over breath terms "DOJ Programs" and "DHHS Programs" as vague and ambiguous. Plaintiff further, objects to this Interrogatory as premature given the ongoing Plaintiff collections of documents. Plaintiff objects to the extent that this Request is overbroad, unduly burdensome, and not reasonably calculated to the discovery of admissible evidence in a public nuisance abatement action. Plaintiff further objects to this Request to the extent it is cumulative and to the extent seeks documents that are in the public domain and available to Defendants from public sources. Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 11**:

18

Identify any insurance policies, surety contracts, rights to indemnity or indemnification or other claim in Your favor, or in favor of any of Your divisions, departments, agencies, boards, municipalities, or other components, which provides a source of payment, claim, cause of action or other right against any third party to compensate You (or any of Your divisions, departments, agencies, boards, municipalities, or other components) for any loss related to use or abuse of Opioids.

**Response to Interrogatory No. 11**:

Plaintiff objects to this Interrogatory as premature given the ongoing Plaintiff collections of documents. Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure 33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

**Interrogatory No. 12**:

Please identify all of your agencies, divisions, employees, representatives, officers, agents, or other acting on Your behalf throughout the Relevant Time Period, that collect and/or retain data concerning the dispensing or sale of prescription drugs, and for each such entity or individual, describe with particularity for what purpose this data is collected and how it is used.

**Response to Interrogatory No. 12**:

Plaintiff objects to this Interrogatory as premature given the ongoing Plaintiff collections of documents. Plaintiff object to this Interrogatory as unduly burdensome to identify "all of your agencies, divisions, employees, representatives, officers, agents, or other acting" on the Plaintiff's behalf who worked to "collect and/or retain data concerning the dispensing or sale of prescription drugs" during the Relevant Time Period. Plaintiff also objects to this Request as it is not limited in time as set forth in the Discovery Rules.

Subject to and without waiving any objection, Plaintiff will produce non-privileged documents maintained in the ordinary course of business and could be located following a reasonable diligent search, after running agreed upon search terms on agreed custodians on documents belonging to the County, or its departments pursuant to Federal Rule of Civil Procedure

33(d).

Plaintiff reserves the right to supplement and amend this response as discovery proceeds.

Dated: March 22, 2022                    Respectfully submitted,


                                         By: /s/ *Lisa Saltzburg*
                                         Lisa Saltzburg

                                         MOTLEY RICE, LLC

                                         Linda Singer
                                         Elizabeth Smith
                                         Motley Rice LLC
                                         401 9th Street NW
                                         Suite 1001
                                         Washington, DC 20004
                                         (202) 386-9626
                                         lsinger@motleyrice.com
                                         esmith@motleyrice.com
                                         *Attorneys for Montgomery County*

                                         Michael Elsner
                                         Lisa Saltzburg
                                         Motley Rice LLC
                                         28 Bridgeside Blvd.
                                         Mount Pleasant, South Carolina 29464
                                         (843) 216-9000
                                         melsner@motleyrice.com
                                         lsaltzburg@motleyrice.com
                                         *Attorneys for Montgomery County*

                                         Mathias H. Heck, Jr.
                                         Montgomery County Prosecuting Attorney
                                         301 West Third Street
                                         P.O. Box 972
                                         Dayton, Ohio 45422
                                         Telephone: (937) 225-5599
                                         Fax Number: (937) 225-4822
                                         E-mail: heckm@mcohio.org
                                         *Attorney for Montgomery County*

                                         Ward C. Barrentine
                                         Chief Assistant Prosecuting Attorney - Civil
                                         Division

21

Montgomery County Prosecutor's Office
301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

## CERTIFICATE OF SERVICE

I hereby certify that on March 23, 2021, I caused the foregoing to be served via electronic mail on Defendants via Tracks6to10Defendants@bbhps.com.

By: /s/ Dominique Brown

# EXHIBIT 2.13

| | |
|---|---|
| **From:** | owner-ext-track3defendants@groups.jonesday.com on behalf of David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law> |
| **Sent:** | Thursday, December 31, 2020 11:21 AM |
| **To:** | External User - Paul Hynes |
| **Cc:** | EXT Track3Defendants; External User - John Lavelle; FGallucci; Hunter Shkolnik; Salvatore C. Badala; Weinberger, Peter H.; Jayne Conroy; Elsner, Mike (melsner@motleyrice.com) |
| **Subject:** | Re: CT3 -- 30(b)(6) issues |

**\*\* External mail \*\***

Greetings.

Regarding Topics 11-13, Plaintiffs will answer these in writing as originally asked - that is, without the addition of the language "as non-experts and subject to supplementation by experts."  Plaintiffs may indicate ***briefly*** in their written answers the two truths that they are not experts, and expect additional information to be provided by their experts, but Plaintiffs must answer the questions by supplying as completely as reasonably possible the responsive information/knowledge they have.

Regarding Topic 15, which touches on the particularized abatement remedies sought by the Plaintiff Counties, Plaintiffs may respond to this topic in writing rather than produce a 30(b)(6) witness.  The written response should be as thorough as reasonably possible.  After receiving this response, Defendants may choose to be satisfied, or may instead submit the written response to me along with an explanation of why they believe they still need a 30(b)(6) deposition, including the types of questions they would ask, and why the written response is not sufficient knowing they will receive Plaintiffs' expert reports and expert depos.

Please set yourselves response deadlines to allow any additional 30(b)(6) depositions connected to Topic 15 to occur well before the March 5 fact discovery deadline, should I later decide to allow them.

Finally, I do not see anywhere in the emails I have received a demand by Ps that "data/document 30(b)(6) depositions take place the week of January 11," but Rite Aid's request for more time, and promise that it will 'will propose dates to plaintiffs as quickly as possible," is reasonable.

-d

========================
This email sent from:
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122
216-831-0001 tel
866-357-3535 fax
www.SpecialMaster.law

**From:** Hynes, Paul B. <PHynes@zuckerman.com>
**Sent:** Thursday, December 31, 2020 9:10 AM
**To:** David R. Cohen (David@SpecialMaster.Law) <david@specialmaster.law>
**Cc:** EXT Track3Defendants <EXT-TRACK3DEFENDANTS@GROUPS.JONESDAY.COM>; Lavelle (External), John <john.lavelle@morganlewis.com>; FGallucci <FGallucci@pglawyer.com>; Hunter Shkolnik <Hunter@napolilaw.com>; Salvatore C. Badala <SBadala@napolilaw.com>; Weinberger, Peter H. <PWeinberger@spanglaw.com>; Jayne Conroy <jconroy@simmonsfirm.com>; Elsner, Mike (melsner@motleyrice.com) <melsner@motleyrice.com>
**Subject:** RE: CT3 -- 30(b)(6) issues

EXTERNAL

Special Master Cohen,

We write regarding plaintiffs' suggestion that the data/document 30(b)(6) depositions take place the week of January 11.  The pharmacy defendants object to the depositions taking place that week.  The topics were just agreed to this past Thursday, which also was Christmas Eve.  We need time after the holiday period to confer with our clients on the timing of preparation sessions and of the depositions themselves.  We then need time to prepare our witnesses. We will propose dates to plaintiffs as quickly as possible, but the week of January 11 is simply unrealistic.

Thank you for your attention to these matters, and happy new year.

Respectfully submitted,
Paul



Paul Hynes, Jr.
Zuckerman Spaeder LLP
PHynes@zuckerman.com

1800 M STREET NW, SUITE 1000 •  WASHINGTON,  DC 20036-5807
202.778.1890 direct • 202.822.8106 fax

► Download vCard | zuckerman.com

This transmission (including any attachments) from the law firm of Zuckerman Spaeder LLP may contain information that is confidential and/or subject to the attorney-client privilege or the work product doctrine. Use or dissemination of this information by anyone other than the intended recipient is prohibited and may be unlawful.  If you have received this transmission in error, please immediately notify the sender by return email or contact us by telephone at 202.778.1800 and permanently delete all copies.

**From:** EXT Track3Defendants <EXT-TRACK3DEFENDANTS@GROUPS.JONESDAY.COM> **On Behalf Of** Lavelle, Jr., John P.
**Sent:** Wednesday, December 30, 2020 5:00 PM
**To:** EXT-TRACK3DEFENDANTS@GROUPS.JONESDAY.COM
**Subject:** CT3 -- 30(b)(6) issues

EXTERNAL

** External mail **

Special Master Cohen-

The parties have been able through extensive discussions to reach agreement on most of the 30(b)(6) topics the Pharmacy Defendants have served on Track 3 Plaintiffs.  However, in addition to topic 15 regarding remedies, which the parties submitted for decision last week, the parties have been unable to resolve their dispute concerning topics 11-13:

> 11. Opioid prescriptions filled by Pharmacy Defendants that (Trumbull/Lake) County contends were not issued for a legitimate medical purpose or were not issued by an individual practitioner acting in the usual courses of his or her professional practice.

> 12. Prescription Opioids dispensed by Pharmacy Defendant that (Trumbull/Lake) County contends were diverted.

> 13. Orders for prescription opioids distributed by a Pharmacy Defendant that (Trumbull/Lake) County contends were suspicious.

The parties have agreed that Plaintiffs may answer these topics in writing in writing, including by reference to interrogatory responses supplemented as necessary to answer the topics.  The parties have not, however, been able to reach agreement on the topics themselves.  Plaintiffs have instead proposed to answer the following topics (Plaintiffs' additional proposed language in red):

> 11. Opioid prescriptions filled by Pharmacy Defendants that Trumbull County and Lake County contend, as non-experts and subject to supplementation by experts, were not issued for a legitimate medical purpose or were not issued by an individual practitioner acting in the usual courses of his or her professional practice.

> 12. Prescription Opioids dispensed by Pharmacy Defendant that Trumbull County and Lake County contend, as non-experts and subject to supplementation by experts, were diverted.

> 13. Orders for prescription opioids distributed by a Pharmacy Defendant that Trumbull County and Lake County contend, as non-experts and subject to supplementation by experts, were suspicious.

To prepare their defense, the Pharmacy Defendants require responses to these topics as written, without the limiting language proposed by plaintiffs.  The topics are intended to require Plaintiffs to identify now, during fact discovery, which of the 3 million prescriptions identified in their "red flag" analysis, if any, violated the requirements of the Controlled Substances Act.  This is necessary so that the Pharmacy Defendants can respond to Plaintiffs' assertions, and conduct whatever additional discovery may be needed to mount a defense.

In particular, Topic 11 tracks the "corresponding responsibility" language of 21 CFR 1306.04(a):

§1306.04 Purpose of issue of prescription.
(a)  A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

Defendants are entitled to know whether Plaintiffs contend that any prescriptions were filled in violation of these "corresponding responsibility" limitations, and if so, which ones.  Topics 12 and 13 similarly seek this

information concerning which prescriptions Plaintiffs claim were "diverted" (12) and which orders were "suspicious" (13).

Pharmacy Defendants' 30(b)(6) topics request straightforward and basic information about Plaintiff's claims: the orders and prescriptions at issue. We are not asking how Plaintiffs intend to prove any contentions at trial. We are not asking (via an expert opinion or otherwise) why Plaintiffs believe a prescription was not for a legitimate medical purpose, opioids were diverted, or an order was suspicious. We are just asking for the most basic information--the identification of the orders and prescriptions at issue--that is necessary to defend against the claims.

These inquiries—which ask what Plaintiffs believe without asking for the basis for the belief—do not seek expert testimony. *See Fractus, S.A. v. ZTE Corp.*, No. 3:18-CV-2838-K, 2019 WL 5697205, at *3 (N.D. Tex. Nov. 4, 2019) ("While specific details as to . . . any acceptable non-infringing devices may be the subject of expert testimony depending on the circumstances, the simple identification of acceptable non-infringing devices is not.").

Plaintiffs should be required to answer these questions for the same reasons that they were previously required to disclose all prescriptions purportedly subject to "red flags," and all purportedly suspicious orders. *See* Ex. A, Dec. 4, 2019 Tr. at 34-35 (agreeing that Plaintiffs would be required to identify "all of the scripts they're contending are bad scripts," even if subsequent discovery into those scripts might be limited). It is basic information about Plaintiffs' claims, which is necessary for Pharmacy Defendants to defend themselves.

  Respectfully,

**John P. Lavelle, Jr.**
**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.4824 | Main: +1.215.963.5000 | Fax: +1.215.963.5001 | Mobile: +1.610.331.3910
Assistant: Donna M. Shapley | +1.215.963.4827 | donna.shapley@morganlewis.com

502 Carnegie Center | Princeton, NJ 08540-6289
Direct: +1.609.919.6688 | Main: +1.609.919.6600 | Fax: +1.609.919.6701

john.lavelle@morganlewis.com | www.morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying
it and notify sender by reply e-mail, so that our records can be corrected.*** ***This e-mail (including any attachments)
may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received
this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our
records can be corrected.***
***This e-mail (including any attachments) may contain information that is private, confidential, or protected by
attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying
it and notify sender by reply e-mail, so that our records can be corrected.*** ***This e-mail (including any attachments)

may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

**EXHIBIT 2.14**

00001

2

3

4                              — — —

5                 TRANSCRIPTION OF MEDIA

6              TELEPHONIC STATUS CONFERENCE

7           IN RE NATIONAL PRESCRIPTION OPIATE

8                       LITIGATION

9                              — — —

10

11

12         TRANSCRIPTION OF AUDIO-RECORDED

13    TELEPHONIC STATUS CONFERENCE, held before

14    SPECIAL MASTER DAVID R. COHEN on November 19,

15    2020, transcribed by Susan Perry Miller,

16    Certified Court Reporter, Registered

17    Diplomate Reporter, Certified Realtime

18    Reporter and Notary Public.

19

20

21

22                              — — —

23              GOLKOW LITIGATION SERVICES

            877.370.3377 ph | 917.591.5672 fax

24               deps@golkow.com

25                              — — —

```
 1                    (Transcriber's Note:  Due to
 2            the inherent limitations of post-event
 3            transcription, best efforts were made
 4            to correctly identify speakers.)
 5                          — — —
 6
 7            SPECIAL MASTER COHEN:  Okay.
 8     So I had some time, never seems to be
 9     enough time, to go through the
10     submissions that you-all gave me in
11     connection with agenda item 281.  And
12     I have read the most recent letters,
13     I've read some of the exhibits, I've
14     looked at the interrogatories.  I
15     don't know the entire history because
16     I didn't have a chance to read all of
17     the attachments of the parties'
18     discussions and negotiations regarding
19     the scope of interrogatories and
20     interrogatory answers.
21            So I'm just letting you know
22     that I have, you know, a modest degree
23     of familiarity with the things we're
24     going to be talking about.  Some of
25     what we raise today I may simply rule
```

```
 1          on, some of it I may just have to take

 2          under advisement and kind of dig into

 3          it and understand it and let you know

 4          later, I don't know.  I'll try to get

 5          to as much of it today as I can, as I

 6          feel comfortable doing.

 7                There seems to be an overriding

 8          issue and that is -- maybe two of

 9          them.  One is that -- the most

10          important one is that the plaintiffs

11          are objecting, as far as I can tell,

12          to providing a narrative answer and/or

13          to providing Bates numbers.  And

14          plaintiffs seem to be saying, we'll

15          provide Bates numbers if defendants

16          do.  And also, it seems like some of

17          what is being asked for in the

18          interrogatories is -- it's kind of

19          like defendants will produce documents

20          to plaintiffs and then say, okay, of

21          the documents that we defendants

22          produced, tell us the documents that

23          support your position about X or

24          reveal facts about X.  So it's this

25          odd kind of plaintiffs say, yeah, as
```

```
 1          soon as you give us the information
 2          that we can go through, we'll tell you
 3          what the documents you gave us are
 4          that support that contention or relate
 5          to those facts.
 6               And therefore defendants are
 7          asking for Bates numbers themselves --
 8          excuse me, plaintiffs are asking for
 9          Bates numbers themselves of
10          defendants.
11               I think that's what I'm seeing.
12          But of course you guys just spent a
13          lot more time actually discussing all
14          of this.  There are references to
15          agreements that were made and are or
16          are not being honored now.  So maybe
17          plaintiffs can begin by just
18          explaining to me that overriding issue
19          about Bates numbers.
20               And before we get started, I
21          think that there was a fair complaint
22          made the last time I was on the phone
23          with the parties about the number of
24          plaintiffs' attorneys who had comments
25          and it was Tara Fumerton on behalf of
```

```
1              Walmart and there were at least three
2              and I think maybe five plaintiffs
3              attorneys, which frankly makes it more
4              difficult for me.  So what I would
5              like to do is, as much as possible,
6              keep it so that we have maybe two
7              attorneys from each side responding
8              unless somebody really doesn't know
9              and needs someone else to jump in.
10                  I'll stop there and ask
11             plaintiffs to explain to me about
12             Bates numbers.
13                  MR. ACKERMAN:  Sure.  Special
14             Master Cohen, this is David Ackerman.
15             I will likely be the one responding
16             but will certainly defer to others in
17             the event that I don't know, and we'll
18             try to keep that number at a minimum.
19                  I think the question about
20             Bates numbers is this, is that there
21             are certainly interrogatories in here
22             where the bellwethers have said, we
23             will, you know, pursuant to rule
24             33(d), refer you to the documents
25             where you can find the answer to your
```

```
 1          interrogatory just like we -- because

 2          that is all we would do in order to

 3          answer the interrogatory, which is

 4          what the rules provide.

 5               And what the concern from the

 6          plaintiffs' side is is that we don't

 7          want this to be some sort of one-sided

 8          give, that there are -- to where there

 9          are defense interrogatory responses,

10          where defendants have referred broadly

11          to a production, that they too be

12          required to provide Bates numbers and

13          that the parties do that at roughly

14          the same time so that there's no

15          unequal advantage to one side or the

16          other.  That's my understanding of the

17          dispute.

18               SPECIAL MASTER COHEN:

19          Anybody -- go ahead, Sharon.

20               MS. DESH:  Sure.  I just wanted

21          to make sure they were finished.

22               So our response is this.

23          First, plaintiffs often complain that

24          it should not be a tit for that's and

25          I think we have said previously, we've
```

1      said in a previous session with

2      Special Master Cohen, that if we can

3      find ways to make an issue of things

4      together offline where both parties

5      give that, it's great; but if things

6      come to you, you will decide them

7      independently.

8          I think the Federal Rules and

9      your previous rulings in this case are

10     clear that if a party says they will

11     rely on 33(d), most of the time that

12     does require reference to Bates

13     numbers.  In terms of a give,

14     Walgreens was -- just speaking for

15     Walgreens, we were in the process of

16     negotiating this with the plaintiffs

17     at the same time, and while they did

18     update our interrogatory responses on

19     October 23rd to identify Bates

20     numbers, in reliance on the fact that

21     plaintiffs would do the same and then

22     they didn't.

23         So I don't think it's

24     necessarily a situation where just

25     because we have a complaint about

```
1              plaintiffs' interrogatories they also
2              get to raise a complaint about
3              defendants, but in this case we did
4              actually provide those and the
5              pharmacies have -- generally have
6              responded to interrogatories by
7              identifying Bates numbers all through
8              this case in Track 1 through Track 1B
9              into Track 3, and the Track 1A
10             plaintiffs had to as well.  So frankly
11             I don't think it's something that
12             should be a surprise.  We really do
13             think that this is a clear application
14             of what we've discussed previously.
15                 I want to touch on the idea
16             that plaintiffs need defendants'
17             productions in order to identify Bates
18             numbers.  That is not what we are
19             asking.  We are not asking plaintiffs
20             to tell us where in defendants'
21             productions they think the relevant
22             documents are.  We are asking for
23             plaintiffs -- the information that is
24             in plaintiffs' possession.
25                 We want to know what plaintiffs
```

1          have in their possession that shows a

2          national retail pharmacy knowingly

3          allowed diversion of opioids, and if

4          the answer is that we don't have

5          anything, then we also need that info.

6          If their position is we have no

7          documents in our possession showing a

8          national retail pharmacy diverting

9          opioids, then that answer to an

10         interrogatory is just as valuable to

11         us.

12              So this is not about

13         defendants' productions, it's about

14         what is in plaintiffs' productions.

15         And we think that defendants have done

16         their side of this, not that that is

17         required here.

18              SPECIAL MASTER COHEN:  Okay.

19         So there are two overriding rules that

20         we're going to apply here.  The first

21         one is that every party is obligated

22         to point to Bates numbers.  I don't

23         have in front of me any specific

24         complaint from plaintiffs that

25         defendants didn't do so.  If

1    plaintiffs have that complaint, they

2    can bring it.  If plaintiffs want to

3    point to some interrogatory that a

4    defendant didn't respond with Bates

5    numbers and they should have, then

6    they should bring it to me, but I

7    don't see that.

8         If all I'm being presented with

9    today is the question of whether the

10   plaintiffs have to point to Bates

11   numbers in response to interrogatory

12   answers, they do, okay?  That's part

13   one.

14        The second overriding rule is

15   that, and you-all know this, if you

16   don't produce evidence, you can't use

17   it.  So if the interrogatory, for

18   example, is hey, plaintiffs, show

19   us -- point to any evidence, point to

20   any documents, that show that there

21   is -- that there were inappropriate

22   prescriptions billed by pharmacies,

23   and the plaintiffs say, we're not

24   doing that.  We're doing this using

25   aggregate evidence.  We've said that

1          from the beginning, aggregate data.

2          You'll get an expert report that talks

3          about it.  We don't -- we're not going

4          to point to that because we're not

5          going to use it.

6               That's fine, but guess what?

7          That means you can't use it.  That

8          means you can't use it at trial, that

9          means you can't point to any such

10         evidence.  And, you know, with a

11         possible exception that if it's

12         identified in an expert report and

13         relied on by the expert and thereby

14         disclosed, then it's been disclosed.

15         And it doesn't necessarily have to

16         come out in an interrogatory because I

17         agree that a lot of this is the

18         subject of expert opinion.

19               But if the expert relies on it,

20         then it has to be produced; and if all

21         of that doesn't happen, if any of that

22         doesn't happen, then you can't rely on

23         it at trial.  So if it ends up being

24         the case that an interrogatory's

25         answer is, we're not going to produce

1          those documents, then that means that

2          even if they exist, you can't rely on

3          them.

4                    MR. ACKERMAN:  This is David

5          Ackerman again.  That is understood,

6          Special Master Cohen.  And I think

7          your second point was a point I was

8          going to make, which is that the

9          plaintiffs have identified for the

10         pharmacy defendants the red flags that

11         they intend to rely on in --

12         prosecuting is not the right word, but

13         that's the word that's in my head

14         right now -- in prosecuting this case

15         or in litigating this case.  And the

16         defendants have that.

17                   So when you look at a lot of

18         these other interrogatories, they're

19         trying to seek information that

20         plaintiffs aren't going to use, aren't

21         going to rely on.  And I think that's

22         the point that you just made.

23                   SPECIAL MASTER COHEN:  Well,

24         all right.

25                   MS. DESH:  Sorry, can I respond

1          to that point just quickly?

2                    SPECIAL MASTER COHEN:  Yep.

3                    MS. DESH:  Which is -- so I

4          think it's important to recognize

5          that, but interrogatories are also

6          served for the purpose of aiding our

7          defense's case.

8                    SPECIAL MASTER COHEN:

9          Understood.

10                   MS. DESH:  If the plaintiffs

11         say all that we're going to show you

12         is our red flag analysis, that does

13         not permit defendants sufficient

14         discovery into the ways to attack it

15         and things that we might want to

16         elicit in our discovery.

17                   So it is very important to us

18         to know, for example, whether

19         plaintiffs have this information.  And

20         I think what I hear you say, Special

21         Master Cohen, is if they don't

22         supplement, then that can be taken as

23         a reading that they don't have any

24         evidence in their own files of any

25         individuals, for example, knowingly

1          permitting diversion of prescription

2          opioids.  If that's the case, then we

3          can take their representation.

4               But it's not -- it's not only

5          what plaintiffs want to rely on, it's

6          what defendants need for our defense

7          as well.

8               MR. ACKERMAN:  I think that --

9               SPECIAL MASTER COHEN:  Hold on.

10              MR. ACKERMAN:  Go ahead, I'm

11         sorry.

12              SPECIAL MASTER COHEN:  I was

13         just going to say, though, I

14         understand what you are saying and

15         agree, Sharon, that your discovery is

16         appropriately directed not only to

17         knowing what the plaintiffs have that

18         would be inculpatory but also what

19         they might have that might be

20         exculpatory, to use terms that aren't

21         exactly the correct words.

22              But what you're asking for, at

23         least what I'm seeing here, is 99%

24         inculpatory information, not

25         exculpatory.  It wouldn't go to your

```
 1              defense.  It would go to how are they

 2              going to prove their case, how are

 3              plaintiffs going to prove their case.

 4              And if they don't produce it, then

 5              they can't use it.  They can't use

 6              that inculpatory evidence, and you're

 7              free to say at trial, you don't have

 8              any documents that show a bad

 9              prescription.  All you have are these

10              red flag analysis.  All you have is

11              this aggregate red flag analysis

12              approach.  And you can make all the

13              arguments, legal and factual, that

14              that's insufficient.

15                   So what I think we need to do

16              to make some headway is to jump into

17              these one by one, and I'm looking at,

18              excuse me, the November 2nd and

19              November 10th letters, interrogatory

20              by interrogatory, and address these.

21                   So with interrogatory 1, I

22              agree that this is largely the subject

23              of expert opinion and that that's

24              where the plaintiffs will explain

25              their case and defendants will learn
```

```
1          the information about, you know, what
2          aspects of abatement plaintiffs are
3          looking for and what the costs are.
4          But whoever that expert is is going to
5          have to rely on information that I
6          assume, and this is kind of a
7          question, that they will be obtaining,
8          gleaning from various folks working
9          for Trumbull and Lake Counties.
10             So I don't have in front of me
11         the list of 35 or so categories of
12         abatement, but let's say opioid
13         treatment facilities is one of them,
14         or in treating NAS babies, whatever it
15         is.  The expert is going, I assume, to
16         have to receive that information from
17         the county from somebody.  Those
18         people I think need to be identified
19         as soon as possible; they will
20         presumably be identified within the
21         expert report.  But I think it's
22         appropriate -- an appropriate answer
23         to the question as to who those people
24         are or what departments it is that
25         that information is coming from.  Does
```

1          that make sense?  Is there any

2          question about that?

3                    MR. ACKERMAN:  No, that makes

4          sense.

5                    MS. DESH:  I think that makes

6          sense to us.  And then the only other

7          thing we would say on interrogatory

8          No. 1 is they have laid out what they

9          claim to be a non-exhaustive list of

10         programs underlying the abatement

11         remedy and we will certainly do our

12         best to take discovery related to that

13         list.  But if we see new programs --

14         you know, we have asked several times

15         if it's complete and we haven't gotten

16         a representation as to that, and so if

17         we see new things arise in an expert

18         report that we didn't have an

19         opportunity to take discovery on

20         during the fact discovery period, we

21         are going to be asking for relief

22         related to that.

23                    SPECIAL MASTER COHEN:  Right.

24         Well, you know, I don't recall getting

25         a communication from a plaintiff or a

```
 1              defendant saying this very, very, very
 2              long list of issues is not exhaustive
 3              and we reserve the right to come back,
 4              every time.  So I'm kind of taking
 5              that with a grain of salt.  It's an
 6              awfully long list and it seems to
 7              touch on everything.  I agree with
 8              you, if you don't -- if something
 9              brand-new comes up, fine, but I really
10              don't expect it.  I think it's just
11              kind of legal boilerplate.
12                   All right.  No. 2.
13                   MS. DESH:  Can I ask to kind of
14              put 2 and interrogatory 9 kind of in
15              the same category?  I know they
16              weren't grouped in the letters, but
17              when I was looking at this they seemed
18              similar to me.
19                   SPECIAL MASTER COHEN:  I guess
20              what I'm confused about, Sharon, is
21              that if this seems to be asking for --
22              I want to make sure I understand what
23              you're asking for.  It seems to be
24              asking for tell us all of the
25              individual prescriptions that you
```

1           plaintiffs think shouldn't have been

2           written or that ended up being

3           diverted.  Is that what you're asking

4           for?

5                   MS. DESH:  So if the only

6           answer -- so let me find that

7           interrogatory No. 2 so I have the

8           language in front of me.

9                   If the only answer that they

10          have is we're going to point you to

11          our red flag analysis, then I think we

12          should receive that answer in response

13          to this interrogatory.

14                  What we are really looking for

15          here is if they are familiar with or

16          if they have any, you know, evidence

17          in their possession in which they --

18          there was, sort of in the moment, a

19          knowing diversion of prescription

20          opioids, not something that they

21          looked back on afterwards and said,

22          based on our expert analysis six years

23          later, this prescription shouldn't

24          have been filled.

25                  We know we have that

```
 1              information from them.  What we want
 2              to know with this interrogatory is,
 3              were there any prescriptions that,
 4              during the relevant time period in the
 5              moment, plaintiffs identified as a
 6              prescription that was inappropriately
 7              filled or another instance of
 8              diversion, which can happen in other
 9              ways.  So that's -- I think that's why
10              interrogatory 2 is different.
11                   If their answer is no, we don't
12              have that information, it's just our
13              red flag analysis, then that answer is
14              also valuable to us here.
15                   SPECIAL MASTER COHEN:  Or that
16              they're not going to rely on it.  You
17              know, maybe it's out there and they
18              don't care.  Maybe they've never
19              looked for it and they're just not
20              going to use it.
21                   When you describe what it is
22              that you're looking for with this
23              interrogatory, it sounds to me, for
24              example -- I'm just trying to
25              understand again exactly what you're
```

1          looking for.  It sounds to me like

2          you're looking for, say, evidence that

3          Trumbull County task force, opioid

4          task force or something, knew that --

5          knew at that time that there was a

6          pill mill and this guy was writing bad

7          scripts, knew that at the time, which

8          may be coming through a different

9          interrogatory or a request for

10         production.  Am I touching -- am I

11         getting closer --

12              MS. DESH:  Yes.  I think that's

13         right.  I think that's right, and I

14         think the important thing here is if

15         you say they're not going to rely on

16         it, what that means to us is that in

17         putting up their affirmative case,

18         they're not going to say the reason

19         this prescription was inappropriately

20         filled is because it came from, you

21         know, this pill mill or because we

22         recognized it in the moment.  We are

23         only going to say that it's based on

24         aggregate data, you know, nothing

25         about what our law enforcement was

1          doing on the ground in terms of

2          recognizing prescriptions at the time

3          is relevant to our case.

4               If they refuse to answer it, I

5          think that's the inference we will be

6          asking for.  And so we expect that

7          that's not what they will say and that

8          they do have documents like this and

9          that they should be identified.

10              SPECIAL MASTER COHEN:  Well,

11         and maybe they were through other

12         interrogatories, but go ahead,

13         plaintiffs.

14              MS. DESH:  No other document

15         has really been identified.  I'm

16         sorry.

17              MR. ACKERMAN:  Thank you.  Let

18         me just respond to that, which is

19         this.  The prescriptions that we

20         intend to rely on in order to show

21         that the defendants did not fulfill

22         their duties are the prescriptions

23         that are identified by the red flag

24         analysis.  I think we've made that

25         pretty clear.

```
1                      To the extent there are

2             documents or other evidence that has

3             been produced that demonstrate that

4             there were improperly filled

5             prescriptions -- and what I'm thinking

6             of is I understand from Frank that

7             there is a spreadsheet that has been

8             produced from at least one of the

9             counties of every case that was

10            charged under a particular statute.

11            We can identify that by Bates number.

12                      The concern that we have is

13            that what was just explained is a

14            little different than what -- how the

15            interrogatory is phrased.  And I think

16            we can certainly respond to what was

17            explained, which is identify instances

18            where the county identified an

19            improperly filled prescription, right?

20            I'm just kind of -- talking generally.

21                      Interrogatory No. 2, as

22            phrased, is identify each instance in

23            which you contend a pharmacy knowingly

24            allowed diversion.  The contention is

25            the red flag analysis, and I think
```

1          that's where the confusion lies.

2              SPECIAL MASTER COHEN:  Okay.

3      Well, we've just unconfused it.

4              MR. ACKERMAN:  Yep.

5              SPECIAL MASTER COHEN:  It may

6      have been phrased broadly.  They

7      already have the red flag analysis.

8      What you need to do in response to

9      this interrogatory is maybe simply a

10     reference to the spreadsheet or

11     something like that.  But you need to

12     answer by pointing to any such

13     prescriptions.  And, you know, this is

14     kind of cover your ass.  You want to

15     make sure that you identify any

16     evidence and documents by Bates

17     number, to the extent you can, that

18     you might rely on at trial that comes

19     under this interrogatory.

20             MR. ACKERMAN:  I understand.

21             SPECIAL MASTER COHEN:  Okay.  I

22     want to stay kind of as we go so I'm

23     not going to jump to 9.

24             So the next one is a group of

25     five, interrogatories 3, 7, 11, 20,

```
 1              and 21.
 2                   MR. ACKERMAN:  I can -- for 3,
 3              I think it's the same answer as 2.
 4                   SPECIAL MASTER COHEN:  Okay.
 5              That was each person they allege
 6              forged a prescription, that makes
 7              sense to me.
 8                   MR. ACKERMAN:  Yep.
 9                   SPECIAL MASTER COHEN:  Number 7
10              was each person they -- each person to
11              whom plaintiffs provided compensation
12              for endorsement of opioid treatment
13              therapies.  I think what that means is
14              that -- anybody that the counties paid
15              for opioid treatment to residents, is
16              that what's being requested?
17                   MS. DESH:  Is that a question
18              to me?  Yes.  I'm sorry, I was
19              reading.
20                   SPECIAL MASTER COHEN:  I'm
21              trying to just say it in kind of
22              everyday language.  You want to know
23              who the cities paid, cities and
24              counties paid, for opioid treatment
25              for citizens or residents, right?
```

```
 1                    MS. DESH:  Right, or for

 2          endorsement of the same, yeah.

 3                    MR. SHKOLNIK:  David, can I

 4          weigh in on this?  I know we don't

 5          want to bounce through a lot of

 6          people --

 7                    MR. ACKERMAN:  That's fine.  I

 8          just don't know what "endorsement"

 9          means.

10                    MR. SHKOLNIK:  That was my

11          question.  They wrote the question in

12          this interrogatory and it's now for us

13          to be sitting here and trying to

14          figure out what it means is exactly

15          the problem.  Endorsement is really an

16          unusual phraseology.

17                    If they want to know who we

18          paid, that's answerable.  But to have

19          some kind of vague, let's see how it

20          feels kind of a question, it's a

21          gotcha question to us at the time of

22          trial.  And that's our problem with

23          that.

24                    MS. DESH:  I don't --

25                    MR. ACKERMAN:  Hold on, Sharon,
```

1           I just want to add one more layer on

2           that, which is the reimbursement

3           point.  I don't know whether Lake or

4           Trumbull were paying for therapy for

5           residents; but to the extent they

6           were, they can't identify those

7           residents because those residents

8           would be subject to the Part 2

9           regulations.

10               SPECIAL MASTER COHEN:  No, no,

11          no.  I don't think it's asking for

12          that but --

13               MR. ACKERMAN:  Okay, go ahead.

14               SPECIAL MASTER COHEN:  Yeah,

15          they're not looking for the names of

16          residents who received therapy.

17          They're looking for the therapists.

18          They're looking for the entities that

19          provided therapy to residents.

20          Correct?

21               MS. DESH:  Right.  Right.

22               SPECIAL MASTER COHEN:  So that

23          seems simple enough, that the counties

24          should provide information as to who

25          they paid to provide therapy to

1          residents for opioid treatment.

2                  Now, I'm not sure what endorse

3          means, but to the extent that

4          plaintiffs have a list somewhere of

5          saying, you know, if somebody contacts

6          the county and says, wow, I think I

7          have a problem here, where should I go

8          for help, and the county has a list of

9          therapists, opioid treatment centers,

10         saying, well, you know, here's where

11         you should go for help, okay, that's

12         an endorsement, you should produce it.

13                 I'm not sure what else there is

14         here, but I think those things you

15         should produce.  Does that touch on

16         everything you're looking for, Sharon?

17                 MS. DESH:  Yes, I think that's

18         right, and identify it.  Yes.  I think

19         that's right.  I think plaintiffs have

20         agreed -- already agreed to do that.

21         They did say -- they didn't actually

22         object to those terms in their

23         response so -- but yes, I think we've

24         answered it.

25                 SPECIAL MASTER COHEN:  A lot of

1          my job is just making sure we're all
2          talking the same language.  Okay.  So
3          that was number 7.
4                Number 11 is reimbursement they
5          received from the pharmacies.  Again,
6          I'm not sure exactly what that means,
7          reimbursement.  I don't know what
8          you're thinking, and this is probably
9          just my failure of knowledge.
10               But what is it that -- I'm
11         asking this of you, Sharon -- what is
12         it that a national pharmacy would have
13         done as far as paying the plaintiffs?
14               MS. DESH:  So any
15         reimbursements by any individuals from
16         any retail pharmacy or anyone who was
17         acting on behalf of or in concert with
18         a retail pharmacy, I think that this
19         is trying to get basically to the
20         question of whether, you know, they're
21         essentially alleging that the
22         pharmacies are offering compensation
23         for any, you know, particular purpose.
24         Although I'll defer -- Sten is on as
25         well, to see if he has additional

1          color on this one.

2                    MR. JERNUDD:  That's generally

3          right.  Or if there's any programs

4          like, you know, they worked in

5          concert, we've seen that in some other

6          jurisdictions where there was money

7          exchanged and changed hands.  But

8          that's about the only extra thing I

9          can think of.

10                   SPECIAL MASTER COHEN:  So I'm

11         still naive, I suppose.  I don't

12         understand.  When you say money

13         changed hands, who paid who for what

14         in those other jurisdictions?  You're

15         looking -- you've got something in

16         mind; I still don't know what it is.

17                   MS. DESH:  I think it's any

18         payments received by the county from

19         any retail pharmacy.

20                   SPECIAL MASTER COHEN:  Okay.

21         That's simple and straightforward.

22                   MS. DESH:  Whether it was --

23         yes.

24                   SPECIAL MASTER COHEN:  Let me

25         just ask you, though.  Why would a

1          national pharmacy have paid the

2          county?  I'm just trying to understand

3          what's going on here.

4               MS. DESH:  I think we want to

5          see whether -- what the financial

6          relationship, if any, was between the

7          two of them.

8               And, you know, now that we're

9          talking about this one, I think that

10         this is one that plaintiffs did agree

11         to supplement.  But this probably can

12         be one that we table for now.  If we

13         think there's a sufficient way --

14              SPECIAL MASTER COHEN:  I'm not

15         letting you table it.  I want to

16         understand why a national pharmacy

17         would have paid the county.  One thing

18         I can think of is maybe the county

19         owns property and they're leasing it

20         or they made lease payments, they made

21         rental payments for a building.

22              But I'm just trying to

23         understand, what is the financial

24         relationship?  Sten says in other

25         cases, this has come up.  What has

1          come up?  Explain it to me.  If I pay

2          you to mow my lawn, then it's easy; I

3          gave you money, you mowed my lawn.

4                What is it that the pharmacy is

5          paying the county for?

6                MR. JERNUDD:  I'm not sure if

7          the pharmacies, if they paid them -- I

8          know there were partnerships, like in

9          San Francisco, for example, there were

10         partnerships between -- I believe in

11         San Francisco, there were partnerships

12         between Walgreens and the City with

13         various programs.  And that's sort of

14         the context that I think we're looking

15         for here is anything similar and at

16         the financial relationship between the

17         two parties.

18                SPECIAL MASTER COHEN:  Perfect.

19                Plaintiffs, if there is a

20         financial relationship where the

21         national pharmacies are paying you for

22         any reason, you need to disclose that.

23         I would think the national pharmacies

24         would kind of know if they're paying

25         the counties, but fine.

1           MR. ACKERMAN:  That was going

2      to be my question, but we will -- if

3      there is some sort of partnership,

4      then we will identify it.

5           SPECIAL MASTER COHEN:  Or

6      payments, you know, if there's money

7      flowing from a national pharmacy to

8      the county and the county knows it,

9      they should let the plaintiffs -- let

10     the pharmacies know that they are

11     receiving money from them.

12          MR. ACKERMAN:  Yep.  Other than

13     property taxes or something like that,

14     but yes.

15          SPECIAL MASTER COHEN:  Right.

16     Right.

17          MR. ACKERMAN:  Yes.

18          SPECIAL MASTER COHEN:  No. 20

19     is false information that the

20     plaintiffs allege a pharmacy supplied

21     about suspicious orders and/or

22     prescription opioids.  This seems kind

23     of analogous to the red flag analysis,

24     which is to say, you know, we're kind

25     of talking the distinction between

1          specific proof and aggregate proof, I

2          think.

3               Who wants to take this?  Maybe,

4          Sharon, you should explain, if you

5          could explain to me a little bit more

6          carefully what it is you're looking

7          for.

8               MS. DESH:  Sure.  And I think

9          that the distinction that you're

10         drawing is the same one that's

11         important to us, which is that if

12         plaintiffs -- if all plaintiffs are

13         going to say is, we looked at these

14         prescriptions six years later and we

15         think that 95% of them shouldn't have

16         been filled, then that's fine.

17               But we want to know in the

18         moment whether any information --

19         whether they're aware of any

20         information that a national retail

21         pharmacy supplied to them that was

22         false or that was fraudulent or that

23         was misleading and if the answer is,

24         no, we have no evidence of that, then

25         we need to know that.

```
 1              SPECIAL MASTER COHEN:  Right.
 2         So in the same way that -- with the
 3         suspicious prescriptions, call it, red
 4         flag prescriptions, if the counties
 5         had an opioid task force that knew
 6         about the pill mill and those
 7         prescriptions at the time and that's
 8         evidence that they would want to use
 9         at trial, plaintiffs have to disclose
10         that.  Same thing as to suspicious
11         orders; seems less likely, but not
12         necessarily.  It's the same thing as
13         to prescriptions as it is to
14         suspicious orders.
15              Go ahead.
16              MR. ACKERMAN:  So my question
17         is, the way this interrogatory is
18         written, it is exceedingly broader
19         than that because it says any
20         information that any national retail
21         pharmacy supplied to you, the DEA, the
22         Ohio Board of Pharmacy and/or any
23         other person or entity, and then it's
24         got like five or six lines of other
25         persons or entities.
```

1           Are we now limiting this only

2      to information, false or fraudulent or

3      misleading information that the

4      pharmacies provided to the counties?

5           MS. DESH:  No.  No, I'm not

6      limiting it to that.  We are limiting

7      it to the counties' knowledge.  The

8      question here is what information does

9      the county have that the national

10     retail pharmacies supplied false or

11     misleading information either to them

12     or to the DEA, which I think would

13     more likely get to sort of the core of

14     their claim.  So it's asking for

15     information in the counties'

16     possession; but, no, we are not

17     limiting the interrogatory as written.

18          MR. ACKERMAN:  So then again,

19     I'm not sure I understand the

20     distinction that Sharon is making.

21          MS. DESH:  I think our

22     distinction is if plaintiffs believe

23     that the national retail pharmacies

24     provided false, fraudulent or

25     misleading information to the DEA and

1          were aware of that in the moment, and

2          that's going to be something that they

3          allege or everything that's said in

4          here, I'm not trying to limit it, and

5          that's going to be something that they

6          try to prove at trial, then they need

7          to identify that.

8                    And if the counties are going

9          to say, no, we are aware of no false,

10         fraudulent or misleading information

11         that the pharmacies supplied to the

12         DEA, then we also need that answer.

13                    MR. SHKOLNIK:  David, if I

14         can -- can I jump in for a second?

15                    MR. ACKERMAN:  Hold on, let me

16         address this.  So what you said there,

17         Sharon, I think was two different

18         things, because you said what the

19         counties were aware of in the moment

20         and what the counties plan to allege

21         at trial, and those are two entirely

22         different things.

23                    The counties don't police what

24         the pharmacies say to the DEA or to

25         the Board of Pharmacy or the

1           Department of Justice or to any of the

2           eight or nine other entities that are

3           listed in this interrogatory.  The

4           counties know what was provided to

5           them.

6               If this is now a contention

7           interrogatory, which is what do

8           plaintiffs -- the bellwether

9           plaintiffs contend and what will they

10          assert at trial that the national

11          retail pharmacies said to all these

12          entities that was false, fraudulent or

13          misleading, then it is what it is, a

14          contention interrogatory; but those

15          types of interrogatories should be

16          deferred until the end of discovery

17          because we have to take discovery on

18          what it is you-all said to the DEA or

19          to the Board of Pharmacy or to the DOJ

20          or to anyone else.

21              SPECIAL MASTER COHEN:  So let

22      me jump in.

23              MS. DESH:  Well, we are at the

24      end of that discovery.

25              SPECIAL MASTER COHEN:  Hold on.

1           Yeah.  But the interrogatory as

2           written is so broad that it would be

3           easy for me to say it's so broad it

4           can't be answered and plaintiffs don't

5           have to.  Right?  I could do that very

6           easily and feel justified in doing so.

7               But I think that there is a

8           kernel of information there that you

9           deserve to know, which is the first

10          bit that you said.  What is it that

11          the counties know or knew at the time

12          with regard to -- you know, I'm

13          looking for the language -- but

14          information that they had.  Sorry I'm

15          not phrasing that well.

16              It's what you said -- I agree

17          with David.  You said two different

18          things, and the first one is

19          appropriate.  The second one isn't.

20              The second one is a broad, wide

21          contention.  The first one is just

22          what did the counties know at the time

23          with regard to what the pharmacies did

24          regarding what they were saying to the

25          DEA and those others.  That's

1                something that they can answer.  The

2                other stuff is largely expert opinion.

3                     So I'm ordering the plaintiffs

4                to answer it as limited.  Beyond that,

5                it's too broad.  It doesn't make

6                sense.  Do we need to talk about that

7                any more, No. 21?

8                     MS. DESH:  I think that was 20.

9                     SPECIAL MASTER COHEN:  You're

10              right.

11                 MS. DESH:  I think that was 20,

12              yeah.

13                 SPECIAL MASTER COHEN:  I'm

14              sorry, okay.  So 21.

15                 MR. ACKERMAN:  Seems like the

16              same thing.

17                 SPECIAL MASTER COHEN:  Yeah, I

18                think this really does keep coming

19                down to what it is that these counties

20                actually knew and with, you know, the

21                overriding caveat that the plaintiffs

22                need to be careful to point to

23                evidence that they might use at trial.

24              And if they don't, they can't use it.

25                 All right.  We can go to No. 8.

1          I think this one's in -- is this the
2          one?  Yeah, this is an easy no.  You
3          know, plaintiffs have said this same
4          thing happened in Track 1.  Plaintiffs
5          say they don't own any or operate any
6          pharmacies, end of story.  So there's
7          nothing more to be asked or to be
8          discovered.
9               Interrogatory No. 10, this
10          refers back to 6, 7, 8 and 9, and I
11          kind of got confused.  I was spinning
12          around looking at exhibits that
13          referred to exhibits that referred to
14          exhibits and trying to understand
15          what's being asked here.  You want to
16          take a shot, excuse me, take a shot at
17          this, Sharon?  I'm not sure what it is
18          you're looking for.
19               MS. DESH:  Sure.  So I think 6,
20          7, 8 and 9 are interrogatories that
21          ask -- so it's good, because I'm
22          looking at it thinking about 8, so
23          essentially communications between
24          arms of the plaintiffs and --
25               SPECIAL MASTER COHEN:  I'm

```
 1              sorry, you said between -- I didn't

 2              hear you.  Between arms?

 3                   MS. DESH:  Arms of the

 4              plaintiffs, right, so a pharmacy that

 5              was run by the plaintiffs so it's

 6              trying to incorporate not only the

 7              plaintiffs themselves but anybody else

 8              who was working with the plaintiffs

 9              and any retail pharmacy.  And

10              specifically limited to the topics

11              that were discussed -- sorry, I just

12              of got a little bit of feedback.

13                   SPECIAL MASTER COHEN:  I'm

14              sorry, I lost the last thing you said.

15                   MR. ACKERMAN:  I'm sorry, I

16              switched phones.  I apologize.

17                   MS. DESH:  Can you guys hear me

18              now?  I don't know if I'm still

19              cutting out.

20                   SPECIAL MASTER COHEN:  Yep.

21                   MS. DESH:  So it would be -- I

22              do think that this might require a

23              little bit of mapping because I'm also

24              now going back and looking at them.

25              So I think that these are -- if we
```

```
1              look at 9, for example, each instance
2              in which the person was allegedly
3              involved in the diversion of
4              prescription opioids, we want to know
5              what the plaintiffs believe the
6              pharmacy's relationship was to that.
7                   So, for example, if they're
8              identifying a pill mill, we want to
9              know if they believe that the pharmacy
10             had a relationship with the individual
11             that they identified.
12                  So I agree with you that
13             there's a little bit of -- we could
14             draw some lines and there could be
15             line-drawing in the wrong way, but we
16             are basically asking about what they
17             believe to be the national retail
18             pharmacy's relationship to the facts
19             that they're identifying in these
20             other interrogatories.
21                  MR. ACKERMAN:  So I'm not --
22             David, do you want me to respond?  Or
23             I don't know if you have questions.
24                  SPECIAL MASTER COHEN:  Go
25             ahead.
```

1              MR. ACKERMAN:  I'm not sure

2      whether I grasp all that Sharon just

3      said, but the interrogatory No. 10 as

4      written is identify all communication

5      between whatever is in 6, 7, 8 or 9

6      and any national retail pharmacy.

7      That's seeking information that's

8      outside of what the counties would

9      know.  It's one thing if it's

10     communications between the county and

11     the pharmacy.  You know, we'd use

12     search terms or apply it against the

13     people we think are most likely to

14     have the information and we produce a

15     document, that's what we've done.

16              But I don't know how the county

17     would identify a communication between

18     a pill mill and a national retail

19     pharmacy.  That's why we take

20     discovery from the defendants, to try

21     to get that information.

22              MS. DESH:  And I think my

23     response would be the same, which is

24     that if you don't have that

25     information and you're not aware of

1         any communications between the pill

2         mill and a national retail pharmacy,

3         then that answer is equally valuable

4         to us.  And that's the answer we would

5         request.

6              MR. ACKERMAN:  But I want to be

7         clear how that answer would be

8         phrased, because it would be that, you

9         know, other than what we'll learn in

10        discovery, the counties aren't aware

11        of communications between, you know,

12        Pharmacy No. 23 and, you know,

13        Hunter's Pill Mill on Elm Street.

14             It would not -- that answer I

15        wouldn't think -- would not preclude

16        plaintiffs from then at trial

17        introducing some document that was

18        produced by Walgreens No. 23 where

19        they're communicating directly with

20        the pill mill.

21             SPECIAL MASTER COHEN:  It would

22        not, because that was never within

23        plaintiff's knowledge.

24             MR. ACKERMAN:  Right.

25             SPECIAL MASTER COHEN:  This has

```
1              to be within plaintiffs' knowledge.  I
2         mean, everything -- this is an
3         interrogatory addressed to the
4         plaintiff about its knowledge and its
5         documents.  So it may be -- so it may
6         be an interrogatory that is phrased in
7         such a way that the answer is
8         virtually a null set.  But I think we
9         understand what it is that the
10        defendants are looking for.
11             If you have that type of
12        communication, somehow, if you've come
13        across it and you have it, then you
14        need to produce it because it shows
15        your knowledge.
16             The essence, David, of your
17        response is, I can't imagine we have
18        those documents, I can't imagine we
19        have that knowledge, okay.  But it's a
20        fair enough question that you should
21        answer it even if the answer is, yeah,
22        we ain't got none of that.
23             MR. ACKERMAN:  Okay.
24             SPECIAL MASTER COHEN:  Okay.
25        That was No. 10, am I right?
```

```
 1                    MS. DESH:  That's right.

 2                    MR. ACKERMAN:  Yes.

 3                    SPECIAL MASTER COHEN:  So tell

 4           me -- I'm reading it, but tell me,

 5           Sharon, if you will, what you're

 6           looking for with 9 and 18.

 7                    Each instance of alleged

 8           diversion is kind of like the same as

 9           each suspicious order and each red

10           flag prescription; I don't think we

11           have to address that.  We've talked

12           about what plaintiffs need to do and

13           it's analogous, unless I'm missing

14           something.  But then all medical or

15           forensic examinations -- go ahead.

16                    MS. DESH:  Yes.  Yes.  So

17           sorry, I was going to say 9 I think

18           we've addressed.

19                    SPECIAL MASTER COHEN:  Okay.

20                    MS. DESH:  For 18, this is part

21           of a larger conversation that I know

22           that Walmart was having with

23           plaintiffs, but I want to pause to see

24           if Ed or anyone else from Walmart is

25           on the phone and can kind of give us
```

```
 1              an update as to where that stands.
 2                   MR. CARTER:  Hi, everyone, this
 3         is --
 4                   SPECIAL MASTER COHEN:  Go
 5         ahead.
 6                   MR. ACKERMAN:  Yeah, this is
 7         David Ackerman and I don't want to
 8         skip over 9 and go straight to 18
 9         because I don't think 9 is -- I think
10         9 is a separate interrogatory unto
11         itself.  With respect to 9, identify
12         each instance in which a person was
13         allegedly involved in diversion, you
14         know, that's an exceedingly broad
15         interrogatory.
16                   SPECIAL MASTER COHEN:  No,
17         David, we talked about this.  It's the
18         same as suspicious -- the question is
19         your knowledge.  Did the counties, you
20         know, have contemporaneous knowledge
21         of, probably from their opioid task
22         force or something like that, you
23         know, instances of diversion.  And if
24         you don't produce that, then you can't
25         rely on it.
```

```
 1                    MR. ACKERMAN:  It's not a

 2          question of produce, though, Special

 3          Master Cohen.  It's a question of

 4          identifying in response to an

 5          interrogatory.  The counties have

 6          produced documents from police

 7          custodians, from prosecutors' files,

 8          from court files, all of which may

 9          have indicia of diversion or identify,

10          you know, opioid-related offenses that

11          could be characterized as diversion.

12                    Is it really -- do the counties

13          have to identify every single document

14          from a police captain's files that

15          identifies some type of diversion?

16          That is overbroad.  That is an immense

17          burden on the plaintiffs.

18                    SPECIAL MASTER COHEN:  I would

19          agree with you that you can point

20          to -- you know, this is where I see

21          that you must have gotten into the

22          argument about Bates numbers.

23                    I agree that with regard to

24          that specific interrogatory, at least,

25          that because diversion is such a broad
```

1 term and could mean so much and could

2 refer to so many things, that you

3 don't need to point to each document

4 by Bates number that has indicia --

5 you know, that suggests diversion

6 occurred.

7   But you just did a fairly good

8 job of saying this is where that stuff

9 would be, in the files of Prosecutor

10 Jones and Police Officer Smith and

11 whatever else.  So you can do that.

12   MS. DESH:  And I think we would

13 also want to see -- I mean, I agree

14 that in some instances, identifying

15 every single document to the end of

16 the earth is not feasible.  But that

17 we want to see examples here of what

18 plaintiffs are going to be relying on

19 for diversion.  Because what I heard

20 David say is maybe, well, I don't even

21 know how to define diversion, I would

22 just look at what a police officer was

23 doing.

24   But at this point, we do need

25 to know what the plaintiffs are going

1          to be pointing to that, in their mind,

2          represents diversion within the

3          county.  And if it's an individual who

4          was tried for overprescribing, that

5          would be a good example and

6          plaintiffs, you know, would be aware

7          of that.  I think we want to see some

8          examples here and not just a general

9          reference to a police officer's file

10         which doesn't really narrow it down.

11              I mean, we also know where the

12         police officers' files are.  We can

13         search for them by custodian.  We want

14         to see what the plaintiffs are viewing

15         as examples of diversion in this

16         instance.

17              SPECIAL MASTER COHEN:  So

18         here's what's going on.  Here's what's

19         really going on, in my view.  This is

20         what I'm sensing.  Defendants want to

21         know how plaintiffs are going to make

22         their case; that's fair.  Plaintiffs

23         may come along and say here's the

24         number of people in Trumbull County,

25         here are the number of prescriptions

1       that were filled, res ipsa loquitur

2       and sit down.  Okay?  They could do it

3       that way, it's just completely

4       aggregate, and not get into any of the

5       weeds at all.

6            Or they could do that and say

7       and here's an example, here's kind of

8       a typical problem that was happening

9       every day, all day, and point to an

10      example of diversion, an example of a

11      suspicious order, an example of a bad

12      script that red flags should have lit

13      it up and it obviously shouldn't have

14      been filled.

15           To the extent plaintiffs do

16      that, point to anything that isn't

17      aggregate, they need to make sure that

18      defendants know that that's going to

19      happen.  That's the key.  That is what

20      will make this a fair trial, that each

21      side knows what the other is going to

22      do before you get there.  You either

23      got it or you don't, you're going to

24      convince the judge and the jury that

25      you've got it or you don't.

1           But there should be no trickery

2     or hiding the ball or misunderstanding

3     as to what each side has and how

4     they're gonna do it.

5           So with respect to this

6     interrogatory, it's probably not a bad

7     idea for plaintiffs to give exemplars.

8     They don't have to point to every

9     document.  They can point to

10    custodians who would have those sorts

11    of documents.  But if you're -- if

12    plaintiffs are going to use an

13    example, that example needs to be

14    something that was disclosed.  And I

15    don't know who's running the train

16    when we get to trial.  If it's Lanier,

17    you better talk to him and make sure

18    that whatever it is he's going to use,

19    that plaintiffs know that -- excuse

20    me -- defendants know that, both, both

21    of you do.  That's how this

22    interrogatory needs to get answered.

23          MR. ACKERMAN:  Okay.

24          SPECIAL MASTER COHEN:  All

25    right.  I think we were on 18.  Go

1          ahead, Sharon.

2                  MS. DESH:  And Ed, I believe,

3          are you there?

4                  MR. CARTER:  Yes, I am.

5          Thanks, Sharon.  Thanks, Special

6          Master.  Ed Carter for Walmart.

7                  No. 18 is asking for the

8          identification of the universe of

9          opioid death investigations for each

10         county.  We've been conferring with

11         plaintiffs regarding the nature of

12         productions in that area.  Those

13         conversations are ongoing and are not

14         before Your Honor on this issue.

15                 But the interrogatory itself,

16         you know, is just identifying kind of

17         the denominator, what universe are we

18         traveling in in terms of opioid death

19         investigations.

20                 SPECIAL MASTER COHEN:  And

21         that's information that you would

22         expect to receive from what, the

23         coroner's office?

24                 MR. CARTER:  Presumably.

25                 SPECIAL MASTER COHEN:  Okay.  I

1      think I may be hearing that you don't

2      want me to touch it because you guys

3      are working on it?  Is that right?

4           MR. CARTER:  We're working on

5      the nature of the files and the scope

6      of the production of the underlying

7      documents.  This interrogatory is just

8      calling for the bottom-line numbers.

9           SPECIAL MASTER COHEN:  Oh.

10      Literally, a statistic?

11           MR. CARTER:  Yes.  So it's just

12      asking for the date, location and

13      which coroner or physician conducted

14      the investigation.

15           MR. ACKERMAN:  Well, that's not

16      the bottom-line numbers, then.  That's

17      information about every single

18      examination.

19           MR. CARTER:  The bottom-line

20      numbers would be the most important

21      part of that.

22           MR. BADALA:  And, Special

23      Master Cohen, this is Sal Badala, just

24      to jump in for a moment.  We've

25      produced the bottom-line numbers to

1          the defendants.  They have that.  This

2          is one of early things they requested

3          when we were discussing Plaintiff Fact

4          Sheets and they needed to know the

5          overdose numbers.  We've produced

6          that.  They have that information.

7                    MS. DESH:  Sorry, Sal.  I don't

8          believe that we have that information

9          that's separated out, that are

10         overdoses related to ingestion of

11         opioids.  I think we just have the

12         total number of overdoses, and the

13         information we need is

14         opioid-specific.

15                    MR. ACKERMAN:  Can I ask a

16         stupid question, which is --

17                    SPECIAL MASTER COHEN:  Oh, what

18         you're saying, Sharon, is total

19         overdoses, not total opioid overdoses.

20         Is that what you meant?

21                    MS. DESH:  Right, that

22         plaintiffs have produced the number of

23         total overdoses, not total opioid

24         overdoses, correct.

25                    MR. ACKERMAN:  Okay.

1          SPECIAL MASTER COHEN:  So is

2     that something that plaintiffs can

3     produce?  I would think that they

4     could, or it would be a part of an

5     expert opinion at the least.

6          MR. BADALA:  And, Special

7     Master Cohen -- go ahead, David, I'm

8     sorry.

9          MR. ACKERMAN:  I was just going

10     to say I needed -- that I couldn't

11     answer that question.  Go ahead, Sal.

12          MR. BADALA:  I was just going

13     to say, we've produced what we have,

14     what the coroners have.  I'm not sure

15     if it's for both counties, that

16     doesn't have the exact breakdown.  I

17     know that we've collected that and

18     we've produced it, but we've produced

19     everything that we have regarding

20     that.

21          MS. DESH:  So I will let Ed,

22     I guess, talk about the document

23     production, because I do think that

24     there's a relationship here.  But the

25     overall question is, do plaintiffs

1       know the answer of how many of these

2       overdoses are related to opioids?  Is

3       that something they track, can we see

4       that from the documents?

5               There's a reference to the

6       documents that says maybe someone

7       could know.  I don't know if that's

8       true, because I do think we still have

9       a lot outstanding.  But the question

10      is can we determine which ones were

11      related to ingestion of opioids, can

12      we isolate them, and can we identify

13      the person who made that observation

14      or determination.

15              SPECIAL MASTER COHEN:  So

16      obviously if the plaintiffs keep the

17      statistics themselves, they need to

18      produce it; it sounds like they don't.

19      I think they produced the statistics

20      that they have, and what we're talking

21      about here as a general matter is

22      evidence that's pretty squarely in the

23      center of what it is plaintiffs should

24      produce.

25              If plaintiffs don't have the

1      statistics, they can't produce it.  If

2      plaintiffs don't have the statistics,

3      I'm not sure it's their burden to

4      create it.  But I think that it is

5      their burden to give the defendants

6      enough information to be able to

7      ascertain it.  And so I don't know

8      what that means.  I don't know what

9      kind of document production I just

10     suggested is necessary to allow the

11     defendants to look into the number and

12     extent of opioid overdoses and who it

13     was that was determining whether an

14     overdose was due to opioids or

15     something else, or if they just said,

16     you know, yeah, the guy died and

17     didn't code it.  All of that goes into

18     what the numbers are and the

19     statistics are.

20          So that's my riff on what it is

21     that the parties should be looking for

22     and asking for and producing, and I

23     think that that's enough direction at

24     this time.  And it sounds like you

25     guys are working on it.  Anybody think

1           I need to say anything more?

2                Okay.  And thank you, Ed, for

3           piping up.

4                All right.  The next one is

5           interrogatory No. 22, which I think

6           had to do with improper conduct or

7           relationships between the defendant

8           and a doctor or patient.  Again, this

9           has to be -- going back to a theme

10          that we have -- this has to be what

11          the plaintiffs know themselves, might

12          have known themselves, at the time it

13          occurred.

14               So if plaintiffs knew that, you

15          know -- again, I keep saying opioid

16          task force or whatever -- if

17          plaintiffs knew that some doctor and

18          some pharmacy seemed a little bit too

19          cozy and these scripts were getting

20          filled -- I'm making things up --

21          then, yes, the plaintiffs have to

22          produce that information, and

23          certainly, again, can't rely on any of

24          that kind of discovery unless it's

25          disclosed.

1          So I'll stop there and ask if

2     I'm missing something, if there's

3     something different about this

4     category, and I'll ask Sharon.  Am I

5     kind of touching on what it is you're

6     looking for?

7          MS. DESH:  That's right, yes.

8     I would agree with what you said.

9          SPECIAL MASTER COHEN:  Okay.

10    Any question from plaintiffs on that?

11         MR. ACKERMAN:  no.

12         SPECIAL MASTER COHEN:  All

13    right, last category.  Interrogatories

14    24, 26, 27 and 28, I actually didn't

15    get to this before our meeting, so I

16    don't know what these ask for.  I

17    didn't have a chance to read it.

18         So I'll ask you, Sharon, if you

19    could summarize.

20         MS. DESH:  Sure.  So these

21    interrogatories ask for the provisions

22    of the regulations, standards,

23    guidelines, recommendations or customs

24    that were applicable to opioids.

25         SPECIAL MASTER COHEN:  Right.

1                MS. DESH:  They're similar,

2          they ask for -- actually, it's not 25,

3          I'm skipping that one -- training that

4          plaintiffs allege that the retail

5          pharmacists should have had,

6          pharmacies should have had, policies

7          that we were required to put in place,

8          and then systems and programs that we

9          were required to implement.

10              So this is us trying to

11          understand, you know, what are the

12          specific regulations and provisions of

13          the regulations that plaintiffs

14          contend apply here, what were the

15          specific programs and training that

16          they contend we were required to have.

17              SPECIAL MASTER COHEN:  Right.

18          So it seems to me that virtually all

19          of that falls into one of two

20          categories.  It's either expert

21          testimony or it's probably contained,

22          frankly, in the parties' recent

23          submissions regarding which statutes

24          and regulations should be included in

25          the jury instructions.

1              I mean, certainly you-all know

2        which regulations of the CSA are at

3        issue.  And if you don't, you can read

4        Walmart's very beautifully written

5        brief submitted to the MDL panel about

6        whether their case in the Eastern

7        District of Texas should be shipped

8        over to the JPML.  All of the regs,

9        all of the statutes are addressed in

10        that brief.  So I don't think there's

11        really any question that you know the

12        answer to that already.

13              As for what programs, what

14        training the plaintiffs assert the

15        defendants should have put into place,

16        that just sounds like expert testimony

17        to me.

18              MS. DESH:  Well, so two things

19        on that.  The first is we want to know

20        what the plaintiffs are relying on

21        here, and if the plaintiffs are just

22        going to reiterate the statutes that

23        were in Walmart's brief, they can do

24        that.  But this is an interrogatory

25        that asks what plaintiffs' position

1          is.  And it's my understanding that in

2          the briefing on jury instructions,

3          that position was still left quite

4          unclear as it related to the

5          regulations.

6                If plaintiffs know, we would

7          like to see that in an interrogatory

8          answer.  And if it's as clear as you

9          say it is, that shouldn't be a

10         problem.  They're going to be

11         supplementing anyway; we think that

12         they should be required to put that

13         into a written interrogatory.

14               In terms of the training and

15         systems and programs, I mean, it is a

16         core issue in this case.  I believe

17         that what plaintiffs are saying is

18         that the training and the policies

19         that the defendants had in place were

20         insufficient.  But we need to know,

21         you know, why that is and why they

22         believe they were insufficient; and

23         the only way we can determine that is

24         to understand what the plaintiffs

25         believe that the defendants should

1    have had in place.

2         Now, that's not something that

3    really requires discovery of

4    defendants because the plaintiffs say

5    you should have had A, and we say oh,

6    great, we did have A, then that's the

7    answer.  And if the plaintiffs say you

8    should have had A but we actually had

9    B, that's a different answer.

10        But we need to know what

11   plaintiffs believe should have been

12   put in place.  And we think this is a

13   fundamental question about this entire

14   case, it's the reason why they're

15   bringing them, and it really goes to

16   the dispute I think that's being

17   echoed since the beginning of this

18   case of, you know, it is the

19   pharmacist or is it the corporate

20   entity.

21        Plaintiffs clearly have

22   something in mind that they believe

23   was required by the corporate entity.

24   It's the defendants' position that

25   those requirements don't exist and we

1              don't know what plaintiffs have in

2              mind.  But, you know, we're at the end

3              of fact discovery and we shouldn't be

4              seeing for the first time in an expert

5              report some sort of creation of a

6              policy that we didn't have any

7              opportunity to sort of question anyone

8              about during fact discovery.  So we

9              feel strongly that this should be

10             answered now.

11             SPECIAL MASTER COHEN:  I'm

12             going to give plaintiffs a chance, but

13             who is it that you would question

14             during fact discovery about a policy

15             that plaintiffs say they think should

16             have been in place?  The only people

17             that I can imagine you asking would be

18             either experts or your own people.  I

19             can't imagine that you're going to ask

20             the mayor.

21             MS. DESH:  Or a third party

22             pharmacy.  We served subpoenas today

23             on third party pharmacies.  You know,

24             did any independent pharmacy have this

25             policies in place?  There are medical

1           centers that we're aware of that

2           dispense opioids that are covered by

3           the plaintiffs' medical plans, we're

4           planning to talk to them.  We're

5           planning to talk to doctors.

6                 There's a lot of people who can

7           offer, you know, fact witness

8           testimony on policies and procedures

9           that are -- that we would like the

10          opportunity to take the fact discovery

11          of once we know what kind of beliefs

12          they answer.

13          SPECIAL MASTER COHEN:  I

14          understand.  Plaintiffs, do you want

15          to respond, please?

16          MR. ACKERMAN:  Yeah.  You asked

17          the first question that I had, and

18          then I think what I hear the

19          defendants saying is that they would

20          like to know what our experts are

21          going to say in advance of the expert

22          reports because I think that's what

23          this all boils down to.

24               You're absolutely right,

25          Special Master Cohen.  This is going

1          to be expert testimony.  And I think

2          in every case, every litigant would

3          love to know what an expert is going

4          to say before the expert testimony

5          deadline, but that's not the way that

6          discovery works.

7               These aren't factual questions.

8          These really could be rephrased to say

9          what are your experts going to say

10         about our practices and policies, or

11         what are your experts going to say

12         about the standard of care?

13              MS. DESH:  So I disagree with

14         that.  Just because an expert says

15         something doesn't mean that it's only

16         expert testimony.  What I understand

17         plaintiffs' experts will do, likely,

18         is compare the policies they believe

19         should have been in place to the

20         defendants' policies and say in my

21         expert opinion, you know, X does not

22         equal Y, or A does not equal B, to

23         keep with my analogy.  But we need to

24         know what A is.

25              We need to know the standard

1           against which we're being judged here.

2           We don't know that answer, and that's

3           a fundamental issue of this entire

4           case and we can't wait until expert

5           testimony for somebody to come in and

6           say, oh, I've figured it out, here is

7           the training you should have provided

8           to plaintiffs all along.

9                If plaintiffs can't tell us

10          that now, after two years of this

11          case, how are we supposed to know that

12          we should have had that in place?  I

13          mean, this is something plaintiffs

14          absolutely know.  100% they are

15          working with their experts on it right

16          now.  Just because it's something that

17          will be in an expert report doesn't

18          mean that it's only expert testimony,

19          and we're entitled to take fact

20          discovery of that standard that

21          plaintiffs believe we didn't satisfy.

22                MR. ACKERMAN:  So I think

23          that -- I just want to make sure that

24          the record is clear, because I don't

25          think that is an accurate

1    representation of what the experts

2    will do.

3         I think what the experts are

4    going to do is to say, these are the

5    laws that apply. Under those laws, in

6    my opinion, the practice and

7    procedures should have looked like

8    this, because that's what complies

9    with the law, but defendants'

10   procedure looks like something else.

11        It's that second step that is

12   absolutely an expert opinion.

13        MS. DESH: Right. I agree that

14   the second step is, but not the first

15   step. And what I am concerned with is

16   that plaintiffs are waiting till they

17   understand the second step and then

18   they are reverse-engineering the first

19   step and that's not what should happen

20   here. I think we need to know -- we

21   need to know A.

22        MR. ACKERMAN: A is the expert

23   opinion.

24        SPECIAL MASTER COHEN: Hold on

25   a minute.

1              MR. ACKERMAN:  The first step

2        is the law.  I'm sorry.

3              SPECIAL MASTER COHEN:  David,

4        hold on, please.  I don't think that

5        plaintiffs have to respond regarding

6        the statutes and the laws in play.

7        Those have been addressed in the

8        parties' briefs, and it just doesn't

9        seem productive to require a bullet

10       point list of all the statutes and

11       regulations that plaintiffs think

12       apply in this case.  Arguably,

13       arguably, the interrogatory should be

14       asked the other way around.

15             But I think it is not

16       unreasonable for the plaintiffs to

17       answer this interrogatory with an

18       explanation in a general way.  It's

19       kind of -- frankly, it seems to be a

20       little bit of Kabuki theatre, but to

21       answer in a general way what it is

22       they think the pharmacy defendants

23       should have been doing with regard to

24       their programs and with regard to

25       their prescriptions.

1              And by doing so, maybe I'm

2        simply requiring plaintiffs to distill

3        and crystallize their theory of the

4        case.  But that's okay, nothing wrong

5        with that.  Maybe it will make the

6        trial cleaner or better.  Do it now,

7        do it early, instead of midway

8        through.  So I think it is

9        appropriate.

10             Now, I'm not saying that you

11       can't say, this will be fleshed out in

12       expert opinion.  But I think that you

13       should be able to, at this juncture,

14       answer that in a general way.

15             MR. ACKERMAN:  It's not that it

16       will be fleshed out in expert opinion.

17       It's that it is expert opinion.  The

18       expert opinion will say, the law says

19       this, and --

20             SPECIAL MASTER COHEN:  Then

21       start talking to your experts.  David,

22       we're in Track 3.  We're in Track 3.

23       You guys have been talking to your

24       experts for two years.  You know what

25       they're going to say, more or less.

1          You can give the plaintiffs an idea.

2          Like I said, I think it's a bit of

3          Kabuki theatre, but I don't think it's

4          unfair.

5              MR. ACKERMAN:  We weren't

6          litigating dispensing practices for

7          two years.

8              SPECIAL MASTER COHEN:  I know.

9              MR. ACKERMAN:  We weren't

10         litigating pharmacist training for two

11         years, so we're not that -- it's one

12         thing if you're asking me about

13         suspicious orders and distribution, I

14         get it.  Everybody, we've done that.

15             But pharmacies and pharmacy

16         training and pharmacy regulations are

17         not something that we have taken

18         extensive discovery on.  And to ask

19         the plaintiffs at this point to say,

20         what is it that your experts are going

21         to say the law provides, is asking for

22         early disclosure of an expert opinion.

23             SPECIAL MASTER COHEN:  Well --

24             MR. ACKERMAN:  It's not a

25         factual interrogatory.

1           SPECIAL MASTER COHEN:  Well,
2      you're right, it is a bit of a
3      contention interrogatory.  But of
4      course, if you read the rules, it says
5      there's nothing necessarily
6      inappropriate about a contention
7      interrogatory; it's just a matter of
8      timing.  And I understand that you
9      think it's too early; I'm telling you
10     that it's time.
11          It's not going to preclude your
12     experts from saying something more
13     precise and even slightly different
14     than what you answer in your
15     interrogatory.  But we're, you know,
16     whatever it is, six months away from
17     trial, and I think it's not
18     inappropriate for you to answer this
19     question.
20          Have we touched on all of 24,
21     26, 27 and 28?
22          MS. DESH:  Yes.  I think that
23     if you're ruling -- we understand your
24     ruling relating to the regulations.
25     26, 27 and 28, we understand to be

1          your ruling that they should

2          supplement.

3                And those are all the

4          interrogatories that I had, and then

5          I guess the only other question we

6          have is when, what's the -- what would

7          the timing look like.  You know, we're

8          sensitive to the holidays, but we also

9          don't want it to go too long, so maybe

10         by December 4th would be our request.

11               MR. ACKERMAN:  Can I have a

12         minute to read 26, 27 and 28 before we

13         move on, just to make sure that we --

14         and I would open it up to anyone on

15         the plaintiffs' side to make sure that

16         we don't have any other questions

17         about them.

18               SPECIAL MASTER COHEN:  Yes, go

19         ahead.

20               MR. ACKERMAN:  Yeah.  So 26 is

21         training, 27 is policies and

22         procedures required to be put in place

23         to satisfy the standard of care.

24               So as I understand your ruling,

25         then -- I'm looking at 27

```
 1              specifically, which is identify all
 2              policies and procedures.  Is it the
 3              case, then, that this second sentence
 4              of 27, where it says for each policy
 5              or procedure that you identified,
 6              please explain it in detail including
 7              and without limitation by explaining
 8              that -- we'll give as much detail as
 9              we can.
10                   SPECIAL MASTER COHEN:  The
11              detail comes in the expert report.
12                   MR. ACKERMAN:  Okay.
13                   SPECIAL MASTER COHEN:  You
14              know, look, I'm making this up, right.
15              Pharmacy defendants should have had in
16              place a red flag analysis that used a
17              computer and looked for the following
18              data points and, if the flags went up,
19              told the pharmacist, who then should
20              have done X.  Done.
21                   Now, what that looks like, the
22              details of it, is up to your expert.
23              But you should be able to say that
24              much now.  And if that means talking
25              to your expert now to get some idea of
```

1          where this is going to do, then that's
2          what you should do.  It's time.
3               MR. ACKERMAN:  Understood.
4               MS. DESH:  And does that also
5          include --
6               MR. ACKERMAN:  On 28 --
7               MS. DESH:  Sorry, can I ask a
8          question on 27?  Does that also
9          include subsection A, which would be
10          any support and/or sources for that
11          requirement?  So why or essentially
12          what they're looking at that makes
13          them believe that that requirement
14          should have been in place?
15               SPECIAL MASTER COHEN:  If they
16          know that now, sure.  But that is
17          largely what is going to be in the
18          expert report.  And if it's not in the
19          interrogatory -- and I'm not saying
20          that they should withhold it; if they
21          know it, they should say it -- that's
22          the kind of stuff that's more the
23          subject of an expert report.
24               I'm looking for an answer that
25          gives the general contours of what

1           this case is going to look like and
2           what the plaintiffs' arguments are
3           going to be.  Not the details.  That
4           comes with the expert report.
5                   MR. ACKERMAN:  So for -- I
6           think that's 27.  For 28, we
7           identified the red flags.  I guess my
8           question is, what else is it that we
9           need to supplement beyond what is
10          already there?
11                  SPECIAL MASTER COHEN:  I'm not
12          looking at the language.  I've tried
13          to give you an overarching theme.
14                  MR. ACKERMAN:  Okay.
15                  SPECIAL MASTER COHEN:  Okay.  I
16          don't have anything else.  Does
17          anybody else have anything else to
18          raise?
19                  Okay.  So it sounds like --
20          look.  In all of these calls where
21          it's just a Walmart call or it's just
22          a Walgreens call, I get reports and I
23          have phone numbers and there's 40
24          people on the phone and I know that
25          it's likely that it's not just Walmart

1          defendants -- excuse me, Walgreens

2          defendants who are paying attention.

3          And I saw that the last time with Eric

4          Delinsky's e-mail saying, hey, if

5          you're going to change discovery

6          deadlines, we'd like to have a say.

7          Well, of course you were listening in.

8          That's fine, I don't have a problem

9          with that.

10              My point is that what I'm

11         seeing -- I'm saying this because I

12         know other people are listening -- I'm

13         seeing complaints from plaintiffs that

14         there have been some document

15         production issues, complete with

16         numbers as to how many from each

17         custodian have or have not been

18         produced.

19              And I'm just putting it out

20         there now, I'll get into the weeds

21         with all of that stuff too, I really

22         don't want it to be the case that I

23         end up having to ask the judge to

24         spank somebody because they were being

25         too tight with their documents, but I

1          will.  I mean, some of what I'm seeing

2          is like, you've got to be kidding me.

3               So I'm just letting everybody

4          know out there, don't monkey around.

5          Don't play games with this stuff.

6          Just get the documents out.  Okay,

7          so --

8               MS. DESH:  Sorry, Special

9          Master Cohen.  I did want to address

10         one thing on that, which is that we

11         have the fact discovery cutoff coming

12         up.  We're all working very hard to

13         reach it.  You know, requests have

14         been made to us late for additional

15         data, additional custodians, which

16         we're working our best to come to

17         agreement on.

18              But if things come late, it's

19         usually because it took a long time to

20         reach agreement or to get to that

21         point where we understood what the

22         requirement was.  So it's heard, but I

23         also want that to be part of the

24         consideration as well.

25              SPECIAL MASTER COHEN:  You

1          know, if you're working in good faith

2          to come to agreement, that's one

3          thing.  That's fine and I appreciate

4          it.  That's what you should be doing.

5          So I would never penalize somebody for

6          doing that, as long as they're working

7          hard and in good faith to come to an

8          agreement.

9               But some of what I'm seeing is

10         here's what we asked for and here's

11         the production and it's this late in

12         the game.  Some of it's just not

13         computing.  Now, I haven't heard both

14         sides, and I always wait until I do,

15         but I am concerned.  So I'm just

16         putting that out there.

17              All righty.  I'm going to go

18         home and have some dinner.  I hope you

19         all do too.  Thank you very much.  I

20         may not talk to you before the

21         holiday.  Please enjoy it and stay

22         safe.

23              MS. DESH:  I'm sorry, can we

24         talk about the timing, the timing for

25         the supplement?

```
 1                    SPECIAL MASTER COHEN:  Right.

 2          I think you asked for December 4th.

 3          Do plaintiffs have any response to

 4          that?

 5                    MR. ACKERMAN:  Sal?  You want

 6          to jump in?  I think December 4th will

 7          probably work.  Sounds reasonable.

 8                    MR. BADALA:  Yeah, I think it

 9          will work.  And if anything comes up,

10          Sharon, we can give you a heads-up,

11          but I think that sounds reasonable for

12          now.

13                    MS. DESH:  Sal always knows how

14          to reach me.  All right.  Sounds good.

15                    SPECIAL MASTER COHEN:  All

16          right, thank you, everybody.  Have a

17          good holiday.  (End of media.)

18

19                    --o0o--

20

21

22

23

24

25
```

1                    REPORTER'S CERTIFICATION

2

3          I, Susan Perry Miller, RDR, CRR, Notary

4    Public, hereby certify that this transcript

5    is a true transcription of the digital media

6    provided to me, to the best of my ability.

7          I further certify that I am neither

8    counsel for, related to, nor employed by any

9    of the parties or attorneys in the action(s)

10   in which this transcription was undertaken;

11   and, further, I am not a relative or employee

12   of any attorney of record in said action(s),

13   nor am I financially or otherwise interested

14   in the outcome of any proceedings.

15          Subscribed and sworn to on this, the

16   22nd day of November, 2020.

17

18

19

20   _____

     Susan Perry Miller

21   CSR-TX, CCR-LA, CSR-CA-13648

     Registered Diplomate Reporter

22   Certified Realtime Reporter

     Certified Realtime Captioner

23   Notary Public, Exp. 03/30/2024

24

25