**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Case No. 1:18-op-46326-DAP<br><br>THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS and THE STATE OF OHIO *EX REL.* MATHIAS H. HECK, JR., PROSECUTING ATTORNEY,<br><br>                    Plaintiff,<br><br>    vs.<br><br>CARDINAL HEALTH, INC. et al.,<br><br>                    Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**Plaintiff Montgomery County's Response to Defendants' Objection
to Special Master's Discovery Ruling No. 25**

## I.    Introduction

Plaintiff Montgomery County respectfully submits this Response to Defendants'[1]

Objection to the Special Master's Discovery Ruling No. 25. Defendants challenge the Special

Master's ruling as to the overbreadth and undue burden of, and adequacy of the County's response

---

[1] CVS Indiana L.L.C., CVS Rx Services, Inc., CVS TN Distribution, LLC, CVS Pharmacy, Inc., Ohio CVS Stores, LLC, The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II, Rite Aid of Maryland, Inc., Rite Aid Hdqtrs. Corp., Rite Aid of Ohio, Inc., Meijer, Inc., Meijer Distribution, Inc., Meijer Stores Limited Partnership, Walgreens Boots Alliance, Inc., Walgreen Co., Walgreen Eastern Co., Inc., and Walmart, Inc. The Rite Aid defendants joined the objection but have since reached a settlement and filed a proposed dismissal stipulation mooting the objection as to them.

1

to, three Interrogatories Defendants served. Interrogatory Nos. 1 and 11 are contention Interrogatories seeking to force the County to make arguments that it need not make, concerning facts it need not prove, to establish its claims. In effect, Defendants seek to override the County's right to prove its case through aggregate evidence by insisting upon a prescription-by-prescription analysis demanding that the County make allegations on an individual level as to each prescription diverted. This is precisely the type of proof the Court repeatedly has held Plaintiff need not present at trial. Similarly, Interrogatory No. 5 simply misreads the "red flag" prescription submission made pursuant to CMO Section D.2 and then demands an impossible level of granular contentions about this misreading. *See* Dkt. 3769 at 4.

Accordingly, the Special Master's rulings are, if anything, generous to Defendants. As set forth below, Defendants' objection, ultimately, is not to the County's Responses, but to its right, as master of its own complaint, to decide how it will present its case, including whether it will rely on aggregate evidence or expert testimony, or at attempt, on its own, the herculean and ultimately impossible tasks which Defendants have tried to impose through the Interrogatories at issue.

Evidently aware of this, Defendants attempt, after the fact, to re-write the interrogatories at issue to now also seek all "knowledge" of or "information" about diversion or failures on Defendants' part. That re-writing still misses the point. The information underpinning the County's allegations, and the evidence it would present at trial, would not be a mini-trial into the path of each prescription, but rather evidence such as the absence of effective diversion controls, profit-based performance metrics that further undermined compliance, and other evidence referenced in response to other Interrogatories that did seek such information. In any event, the County did provide: a) a lengthy and detailed spreadsheet, along with background information concerning prescriptions that were more likely than not diverted and specific prescribers who were disciplined,

criminally convicted, and/or appeared in Defendants' own files as raising red flags, of whose prescriptions the County might offer examples at trial and b) another, separate spreadsheet with more examples of prescriptions from prescribers about whom Defendants had information that should have alerted them to red flags.

The granular analysis asked of the County concerning issues that will be the subject matter of expert testimony and aggregate proof, the Special Master correctly concluded, is both untethered from the proof obligations on a public nuisance claim as well as overbroad, unduly burdensome and disproportionate to the needs of the case. Further, the suggestion that Defendants, without further education by the County, do not understand "why" a so-called prescription written by a "pill mill" doctor for a non-medical purpose is "bad" or "how" dispensing such quote-unquote prescriptions is harmful strains credulity. *See* Dkt. 4575 at 7. If true, it would suggest Defendants have not read the Supplemental Pleading (among other things) and is troubling on a level that goes beyond the proportionality issues addressed herein.

Because Defendants appear to have omitted from their nearly 500 pages of exhibits the Supplemental Responses that the County served on May 20, 2022 and that were the subject of the Special Master's ruling, the County has attached them hereto as Exhibit A so that the Court will have access to the Responses whose adequacy is in dispute.[2] For the reasons set forth below, the Court should overrule the objection.

---

[2] The Responses to Interrogatories No. 1 (First Set) and Interrogatory No. 5 (Second Set) attached spreadsheets, which inclusion would greatly expand the volume of the exhibit. In the interest of efficiency, the County attaches only the first page in pdf format of each so that the Court can understand the nature of their contents. The County will provide full pdf versions if the Court desires.

## II.    Interrogatory No. 1

The Special Master hit the nail on the head in observing that "Defendants are not entitled to pin Plaintiff down to a specific contention that Plaintiff need not prove in order to make out its claims." Dkt. 4566 at 3.[3] Plaintiff would go further to assert that in addition to not being "pinned down" to the language Defendants demand, it need not make, at all, contentions for purposes of an Interrogatory response which it has no plans to make at trial. As the court in *City of Chicago v. Purdue Pharma, L.P., et al.*, explained, "Defendants cannot demand discovery based on a proof element the opposing party does not accept as a required element." C.A. No. 1:14-cv-04361, Doc. No. 824, Memorandum Opinion and Order (N.D. Ill. July 1, 2020) (attached as Exhibit B). Here, it is not only the County, but the Court which has repeatedly rejected the attempt to impose individualized proof as an element of the case.

This Court consistently has upheld the ability of MDL plaintiffs to proceed based on aggregate proof. *See, e.g.*, *In re: National Prescription Opiate Litigation*, 2019 WL 4178617, at *3 (N.D. Ohio Sept. 3, 2019) (Track 1 order finding "Plaintiffs' aggregate proof of causation sufficient to overcome summary judgment"). As the Court explained in denying the Track 3 Rule 50(b) motion by a number of the same Defendants raising the instant challenge:

> At the outset, **the Court rejects Defendants' argument that Plaintiffs were required to show Defendants' pharmacists filled specific illegitimate prescriptions in the Counties. This argument ignores the aggregate nature of Plaintiffs' theory of proof at trial.** Plaintiffs chose to demonstrate unlawful conduct by showing Defendants knowingly failed to take adequate measures to guard against diversion of prescription opioids. In particular, Plaintiffs presented evidence of Defendants' dispensing of large quantities of highly addictive drugs in the Counties, while repeatedly failing to take legally-required, effective measures to identify and resolve "red flags" prior to dispensing, and failing to document any due diligence with respect to those red flags.

---

[3] All references to "Dkt. _" are to the master docket in MDL 2804 unless otherwise stated.

*In re Nat'l Prescription Opiate Litig.*, 2022 WL 671219, at *2 (N.D. Ohio Mar. 7, 2022) (emphasis added). The Court further held:

> **Defendants contend the verdict is unsupported because Plaintiffs failed to present evidence of specific prescriptions filled by Defendants that were actually illegitimate or diverted. This argument ignores the aggregate nature of the evidence presented at trial and the natural inferences allowed therefrom. The Court previously found aggregate evidence of massive increases in the supply of prescription opioids, combined with evidence demonstrating failures by each Defendant to maintain effective controls against diversion, supported a reasonable inference that Defendants' conduct was a substantial factor in creating the alleged nuisance. CT1 Causation MSJ Order at 8 (Doc. #: 2561). Under this evidentiary model, proof of specific prescriptions is not necessary.** As discussed above, the trial evidence demonstrated each Defendant failed to maintain effective controls against diversion. Additionally, the evidence showed each Defendant dispensed increasingly large quantities of prescription opioids in the Counties, which corresponded with huge increases in addiction and other health and safety issues in their communities. This evidence amply supports the jury's finding that the dispensing conduct of each Defendant contributed to creating the nuisance.

*Id.* at *12 (emphasis added, internal footnotes omitted).

The County will have no obligation at trial to point to individual prescriptions in the manner sought by Interrogatory No. 1. Nevertheless, in the spirit of compromise and to have the opportunity to provide some examples of diverted prescriptions, the County responded to the Interrogatory. In so doing, it provided a detailed, and quite lengthy, spreadsheet with individualized prescription information and attendant explanations. The Special Master rightly ruled that Defendants are not entitled to more.

As relevant here, the County's Response to Interrogatory No. 1 identified individual prescriptions and further explained that "these particular prescriptions were at especially high risk of diversion." Ex. A at 11. Explaining still further, the Response described these prescriptions as "prescriptions flagged in Plaintiff's red flag analysis, prescriptions flagged by Defendants' own systems and never investigated and cleared by Defendants, and prescriptions dispensed that were

written by doctors identified by Defendants as high volume or problematic prescribers without proper due diligence." *Id.* The County reserved the "right to refer to all such prescriptions as evidence of Defendants' failure to prevent diversion" while reiterating that "how Defendants' actions lead to diversion in the community" will be the subject of expert testimony. *Id.*

Additionally, the County responded that it may point to two additional forms of evidence of diverted prescriptions: (1) "any prescription by prescribing doctors listed in Defendants' own documents as generating red flags for diversion or suspicious activity, or prescriptions in any state or federal criminal or regulatory enforcement actions, including any actions by State Boards of Medicine or Pharmacy," and (2) "examples of diverted prescriptions" from a list of named healthcare providers. Even before the Interrogatory response, the Supplemental pleading alleged that Defendants filled prescriptions referenced in an indictment of one prescriber as linked to overdose deaths. *See* Dkt. 3772 ¶ 708.

Defendants do not dispute that the County provided the information described above. Their challenge rests on the mistaken argument that the County must conclusively state whether or not each of these (or other prescriptions) was diverted. That, however, is not a contention the County needs to make. Even assuming *arguendo* that the County, as part of fact testimony or evidence at trial, needed to point to particular prescriptions, the burden of proof in a civil case is more likely than not. Plaintiff provided a list of prescriptions noting that they were examples of prescriptions that were "more likely than not diverted." As such, the Response satisfies any obligation to identify prescriptions to which the County may point (apart from expert testimony) as satisfying its burden of proof. Ironically, Defendants appear to concede as much, and even to acknowledge that this Response fulfills the purpose of Interrogatory No. 1, which they contend is to "put Plaintiff to its burden of proof." Dkt. 4575 at 4. The Special Master rightly recognized that by responding with

6

reference to prescriptions at an "'especially high risk of diversion,' [the County] furnished a response that comports with the standard of proof in a civil action." Dkt. 4566 at 3.

Seeking to rewrite Interrogatory No. 1 after the fact, Defendants now contend, as they did before the Special Master, that the Interrogatory is not about which prescriptions the County would contend or ultimately prove were diverted, but rather dictates that the County must "provide any responsive information or knowledge it has" about the just how clear the evidence of diversion is concerning a particular prescription. Dkt. 4566 at 3. Even setting aside the proportionality and other issues with this Interrogatory, that is not what Interrogatory No. 1 asked. Rather, Interrogatory No. 1 reads, in full: "Identify each prescription for a Prescription Opioid or Cocktail Medication that you contend was diverted." Dkt. 4566 at 2. On its face, the Interrogatory seeks not individualized background information about the circumstances of each pill, but a list of prescriptions the County contends were diverted.

Given this, Defendants' repeated arguments that they need not accept the County's "*ipse dixit*" are particularly puzzling. The County's *ipse dixit* is exactly what they asked for. Moreover, even this re-write misses the point. At bottom, Defendants argue that because "diversion" in general is important in this case, so too must be individualized proof in the form of "tracing each of these inappropriately dispensed pills to its end point." Dkt. 4566 at 3. The Special Master correctly concluded that such an analysis is "disproportionate to the needs of the case, especially given a public nuisance claim does not require this type of individualized proof." Dkt. 4566 at 3. *See also, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 2022 WL 671219, at *2 & 12 (N.D. Ohio Mar. 7, 2022).

A discovery request (not at issue here) targeted to any information about "knowledge" of potential diversion would include the type of aggregate proof ultimately at issue at trial and

evidence of Defendants inadequate diversion control, not what would become a mini-trial into the path of each pill. Defendants are wrong to suggest that the County cannot argue at trial that diversion of any prescriptions occurred unless it identifies individual prescriptions in an Interrogatory response. *See* Dkt. 4575 at 4. To insist that the County make individualized proof contentions for purposes of an Interrogatory that it need not make or prove at trial would effectively force the County to pursue an individualized proof path, negating its right to proceed via aggregate proof. Ironically, such aggregate proof is far more likely to demonstrate knowledge of diversion as opposed to the path of one (1) individually diverted prescription.

Evidently aware of their inability to justify their contention Interrogatory based on the claims at issue in this case, Defendants vaguely argue that it is relevant to their defenses. In particular, Defendants appear to suggest that they seek to use Interrogatory No. 1 to establish that prescriptions were *not* diverted. But, they would need evidence to establish such a defense, not the *ipse dixit* they so disdain. Moreover, it is beyond question that the scope of prescription diversion alleged in the County is larger than that which could be identified pill-by-pill. As the Special Master recognized, it would be impossible to "know every prescription that was diverted." Dkt. 4566 at 3. Omission of a given prescription from a list or spreadsheet of individual pill bottles is not a "clear statement" that Defendants could "present to the jury" as purported evidence that diversion is confined to certain listed prescriptions. If Defendants desire to attempt the impossible through individualized proof, they may do so. They cannot, however, shift to the County the burden of marshalling whatever individualized analysis Defendants might seek to undertake.[4]

---

[4] Defendants also argue that the "Track 3 plaintiffs were required to provide virtually identical information" in the context of a Rule 30(b)(6) deposition. Dkt. 4575 at 5. This is misleading. The Special Master, well acquainted with that background, did not treat the case tracks differently. Rather, the Track 3 dispute that Defendants cite concerned whether to add to a Topic that the plaintiffs had *agreed* to answer language disclaiming any expert status. That is not the same issue

Accord *United States v. Life Care Centers of Am., Inc.*, 2015 WL 10987029, at *3 (E.D. Tenn. Feb. 18, 2015) ("Simply because the Defendant may choose, among these options, to pursue a litigation strategy that relies on a claim-by-claim review does not justify placing the burden on the Government to be the party that performs that review.").

In sum, Defendants' argument boils down to the contention that because "diversion" is a subject relevant to the claims, Dkt. 4575 at 2, any Interrogatory, however needlessly burdensome, touching on that topic is permissible, even though: (1) the contentions Interrogatory No. 1 asks the County to make are not the contentions it would make, or needs to make, to prove its public nuisance claim, and (2) the Interrogatory asks the impossible. The Court should overrule the objection.

## III.    Interrogatory No. 11

Defendants' arguments concerning Interrogatory No. 11 parallel their arguments concerning Interrogatory No. 1 and fail for the same reasons. Instead of asking the County to identify every prescription that was diverted, this Interrogatory asks the County to:

> Identify each prescription for a Prescription Opioid or Cocktail Medication dispensed by a Pharmacy Defendant during the Relevant Time Period in the Geographic Area that You contend should not have been dispensed because it was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice and that caused the alleged damage, nuisance, or other harm for which You seek to recover in this case. . . .

---

presented in Discovery Ruling No. 25. Moreover, it bears noting that where, unlike in the Track 3 actions, a different plaintiff objected and moved to quash a Rule 30(b)(6) Notice seeking individualized prescription information, the special master in that action granted a motion to quash the topic as "overly broad and thereby fail[ing] to meet the 30(b)(6) reasonable particularity requirement, whereby the designated deponent or deponents could fulfill his/her duty to prepare a response," and the court overruled objections to that ruling. *See* Exhibit C (Rhode Island Orders and for context, Rule 30(b)(6) Notice).

Dkt. 4566 at 3. Interrogatory No. 11 then goes on to ask for still more discussion, as to each prescription, of "why each individual prescription" should not have been dispensed, including a prescription-by-prescription analysis of all criteria used to evaluate the prescription and supporting information relating to it, and also a narrative as to each prescription, about how it caused harm. *Id.* As described in more detail below, the Special Master ruled the County's response to the first part of this Interrogatory sufficient, while rejecting Defendants' arguments of entitlement to further response, including to the additional subparts (which are somewhat circular given that "why" a prescription that is not for a legitimate medical purpose should not be dispensed is that the so-called "prescription" is not for a legitimate medical purpose).

Interestingly, although Defendants describe Interrogatory No. 11 as seeking "virtually identical information" as that requested in a Rule 30(b)(6) Topic from the Track 3 plaintiffs, that could only be true as to the first sentence. *Compare* Dkt. 4575-2 at 343-45. The Track 3 Defendants chose not to ask for the same explanation as to why each was not legitimate or how each caused harm in the Track 3 cases. It is unclear why they added these requests to the Interrogatory here. What is clear, however, is that the past Rule 30(b)(6) request cannot cure the impropriety of Interrogatory No. 11, in whole or part.

Regardless, the first part of Interrogatory No. 11 overlaps with the information already requested in Interrogatory No. 1. As such, the County's supplement to Interrogatory No. 1 served to supplement this cumulative request. As the Special Master observed, the Response to Interrogatory No. 1 "included a spreadsheet identifying alleged red-flag prescriptions, and voluminous data of the sort requested in the first sentence of Interrogatory No. 11 (First Set)." Dkt. 4566 at 4. The Special Master concluded this provided the information sought, particularly given that the Response at issue also incorporated other discovery responses. *See Id.* At the same time,

10

the Special Master directed that the County disclose any specific known prescriptions from "pill mill" doctors if it had not already done so. *Id.* at 5.

Defendants make essentially the same arguments as to the first part of Interrogatory No. 11 that they did concerning Interrogatory No. 1 — namely, a demand that the County make individualized proof contentions and an attempt to re-write the Interrogatory as one seeking background about what the County "knows" or "information" it had. *See* Dkt. 4575 at 6-8. These arguments fail for the same reasons described above with respect to Interrogatory No. 1.[5] Their objection here rests on the same flawed assumption that if their lacking controls and filling of illegitimate "prescriptions" is at issue, then they may insist the County present its case through individualized proof as part of the discovery process, regardless of how it will proceed at trial.

Turning to the additional subparts of the Interrogatory, Defendants argue that they are entitled to still more granular individualized proof, including an extensive narrative as to each prescription. *See* Dkt. 4566 at 2. The Special Master correctly ruled that Plaintiff need not answer these subparts, which seek to convert a public nuisance claim into even more of a mini-trial around each prescription than does the first part of the Interrogatory. The ruling explained that these subparts are "overbroad, unduly burdensome, and not proportional to the needs of the case," as well as that, "[a]s Defendants well know, Plaintiff intends to prove its case in the aggregate, and not by pointing to individual prescriptions." *Id.* at 4.

Having no answer to this, Defendants again seek to rewrite their Interrogatory. First, they make the same "knowledge" argument described above. But as the Special Master recognized, "Defendants do not need the information requested to defend against Plaintiff's claims, especially

---

[5] Additionally, Defendants incorrectly state that the Response to Interrogatory No. 1 referenced only the County's "red flag" submission pursuant to the CMO. *See* Dkt. 4575 at 6. That contention is contradicted on the face of the Interrogatory Response.

because they already have much of the information regarding their own dispensed prescriptions." *Id.* The red-flag list to which they point is based on *their* dispensing data. And any "knowledge" would include the referenced information from their own files, such as the documents reflecting that Defendants' employees or corporate office identified certain high-risk prescribers, referenced above. *See, also, e.g.,* Dkt. 4575-4 at 4. Defendants may perform their own analysis, if they desire to do so. *Compare City of Chicago v. Purdue Pharma, L.P., et al.*, *supra*, at 10 (holding that "because the City committed to proving its case based on aggregate proof, discovery related to the identification of individual prescriptions "falls outside the scope of Rule 26(b)(1)").

Second, Defendants argue that in *lieu* of the individualized proof for which they asked in Interrogatory No. 11, they seek to know what "variety of things" they did wrong, or more about the "aggregate proof" Plaintiff will use at trial. Dkt. 4575 at 7-8. Even assuming *arguendo* the Interrogatory could be re-cast in the manner Defendants suggest, both the Response to Interrogatory No. 1, referenced above, and the other discovery responses expressly incorporated by reference into the County's Response to Interrogatory No. 11 provide extensive information, as does the 260-page Supplemental Pleading. The Interrogatory Responses include, for example, a more than 18-page Response concerning legal requirements and recognized red flags. *See* Dkt. 4575-2 at 232-250. The County also reserved the right to supply expert testimony. In that regard, experience in the MDL also should have led them to anticipate that fact discovery will not be the only evidence concerning, for example criteria for analyzing Defendants' extensive data.[6] Defendants do not even attempt to explain why they need a non-expert analysis of their own

---

[6] Kroger and Meijer may argue that they are "new" defendants unversed in MDL practice or the history of prior Tracks. Defendants have worked cooperatively, however (including collectively making the instant objection), and have an army of sophisticated counsel anticipated to have, for example, reviewed various transcripts, reports, rulings, or other materials.

prescription data on top of forthcoming expert disclosures, if the expert analysis is what would be used at trial.

## IV.     Interrogatory No. 5

Interrogatory No. 5, like the others, seeks granular detail related to "red flag" prescriptions. The paragraph-long Interrogatory reads:

> Your Red Flag Submission states that You identified "prescriptions dispensed by Defendants, which were written by prescribers regarding whom Defendants had or should have had actual or constructive notice were engaged in activity indicative of possible or actual diversion and/or were written by prescribers who issued the prescription without a legitimate medical purpose or outside the usual course of professional practice and/or were not authorized to issue controlled substance prescriptions." Describe how You identified each of these prescribers, including without limitation what facts You claim should have provided "actual or constructive notice" to Defendants that those prescribers "were engaged in activity indicative of possible or actual diversion," were issuing prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," or "were not authorized to issue controlled substance prescriptions."

This Interrogatory asks about identification of "prescribers" in the red flag submission. But, as Plaintiff already explained, the red flag submission identified *prescriptions*, not prescribers. *See* Dkt. 4575-4 at 4 ("Red Flag prescriptions are not identified on the basis of a specific prescriber."). Plaintiff was required under the CMO to provide a spreadsheet of red flag prescriptions to Defendants last Fall, and it did so as required. *See id.* The detailed information provided included the prescriber who wrote the prescription. But asking how the County identified those prescribers is like asking how it identified the drugs, or any other information in the data fields: the information was in the data. That the prescriptions raised red flags, in and of itself, indicates an alert to Defendants of potential diversion. Defendants mischaracterize the Response in asserting that any prescriber who writes a prescription raising a red flag is automatically "assert[ed]" to be "violating the law." Dkt. 4575 at 11. That is not the nature of the red flag

submission called for by the CMO, and the County consistently has corrected this mischaracterization.

Additionally, the County, last Fall, also "reserved the right to include among the red flag prescriptions, certain prescribers' prescriptions that were identified by Defendants' own pharmacists or by Defendants' own corporate programs as high-risk prescribers, as well as information related to disciplinary actions taken by the DEA or the Ohio Board of Pharmacy." Dkt. 4575-4 at 4. In the May 2022 Supplemental Response, it included "examples of the types of materials" identified in Defendants' productions "which should have placed the Defendants on notice as to certain prescribers" and which "examples demonstrate how the prescribers were selected." *Id.* Additionally, the County provided a spreadsheet with a sampling of the prescribers' prescriptions that meet the criteria. *Id.*

Nevertheless, the response explains, "Defendants should have used their own dispensing data and any data it purchased or was provided by third parties to identify high risk prescribers potentially engaged in diversion or prescribing opioids for illegitimate medical purposes." Ex. A at 19. It goes on to elaborate as to various representative examples of factors Defendants should have considered, programs Defendants had and could have used, documents Defendants could have used from their own production, and significant public sources of information available to Defendants from DEA, the Ohio Boards of Pharmacy and Medicine, and other sources. As stated in the Response, it is neither necessary nor possible to provide an exhaustive list: "Defendants are best positioned to know what information they possessed, and fact discovery is still on-going." Ex. A at 20. The County also attached a spreadsheet with example prescriptions. *See* Ex. A at 16.

The Special Master "agree[d] with Plaintiff that the information it provided is sufficient" and ruled that "[t]he additional information requested is overly broad and not proportional to the

needs of the case. In addition, much of what the Interrogatory asks for is already in Defendants' possession." Doc. 4566 at 6. Defendants offer no basis to dispute these conclusions. Further, if one takes Defendants at their word that "[a]ll Defendants want" is to understand why the County's red flag submission identified "115 prescribers" as "problematic" or "violating the law," they have, and have had it: they are misreading the submission. Likewise, there is no great mystery to how the red flag prescriptions came to appear on the red flag prescription list: each is identified as raising a particular red flag or flags. The red flag submission explains, consistent with the CMO, the metrics used by Plaintiff and its experts to identify the prescriptions, and Defendants have not taken issue with that explanation.

## V.        Conclusion

The Special Master correctly concluded that the County sufficiently responded to the overbroad, unduly burdensome, and to the extent they seek contentions the County plans not to make, irrelevant, discovery requests. The County respectfully requests that the Court overrule the objection.

Dated: July 18, 2022

Respectfully submitted,

By: */s/ Lisa Saltzburg*
Lisa Saltzburg

MOTLEY RICE, LLC

Linda Singer
Elizabeth Smith
Motley Rice LLC
401 9th Street NW
Suite 1001
Washington, DC 20004
(202) 386-9626
lsinger@motleyrice.com
esmith@motleyrice.com

*Attorneys for Montgomery County*

Michael Elsner
Lisa Saltzburg
Motley Rice LLC
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
(843) 216-9000
melsner@motleyrice.com
lsaltzburg@motleyrice.com
*Attorneys for Montgomery County*

Mathias H. Heck, Jr.
Montgomery County Prosecuting Attorney
301 West Third Street
P.O. Box 972
Dayton, Ohio 45422
Telephone: (937) 225-5599
Fax Number: (937) 225-4822
E-mail: heckm@mcohio.org
*Attorney for Montgomery County*

Ward C. Barrentine
Chief Assistant Prosecuting Attorney - Civil
Division
Montgomery County Prosecutor's Office
301 West Third Street
4th Floor, Suite 461
Dayton, Ohio 45422
Telephone: (937) 496-7797
E-mail: BarrentinW@mcohio.org
*Attorney for Montgomery County*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2022, I electronically filed the foregoing with the Clerk

of the Court and served on counsel of record using the CM/ECF system.


By: /s/ Lisa Saltzburg
Lisa Saltzburg