**Execution Copy**

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into on the 7th day of September, 2021 ("Effective Date"), by and between Rite Aid of Maryland Inc. d/b/a /Mid-Atlantic Customer Support Center ("Rite Aid of Maryland"), Rite Aid Hdqtrs. Corp., Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center, Rite Aid of Ohio, Inc., along with each of the foregoing's predecessors, parents, joint ventures, subsidiaries, divisions, affiliates, directors, officers, agents, employees, representatives, members, shareholders, and attorneys (including each of their respective successors, assigns, heirs, administrators, and executors) (collectively, "Rite Aid") and Lake County, Ohio and Trumbull County, Ohio (together, "Lake and Trumbull Counties" or the "County Plaintiffs") (collectively, the "Parties") and is intended to set forth the terms of the agreement reached by the Parties with respect to the actions captioned *County of Lake, Ohio v. Purdue Pharma L.P., et al.*, Case Nos. 18-op-45032, 1:17-md-2804 (N.D. Ohio) and *County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*, Case Nos. 18-op-45079, 1:17-md-2804 (N.D. Ohio) (the "Actions"). The County Plaintiffs include without limitation any and all of the County Plaintiffs' constitutional offices, departments, agencies, boards, attorneys, and/or officers, but only to the extent that the County Plaintiffs have the right to release claims described in Paragraph 4 below on behalf of the County Plaintiffs' constitutional offices, departments, agencies, boards, attorneys, and/or officers.

## I. RECITALS

A.      On December 11, 2017, Lake County, by and through its counsel, filed its Complaint for Damages in the Lake County Court of Common Pleas, Ohio. On December 18, 2017, Trumbull County, by and through its counsel, filed its Complaint

CONFIDENTIAL

DEF-MDL-14530.00001

LAKE005706831



Execution Copy

hunter@napolilaw.com
sbadala@napolilaw.com

With a copy to:

James J. Misocky, Attorney at Law
Administrator of Special Projects
Trumbull County Commissioners
160 High St., N.W., Warren, OH 44481
cemisock@co.trumbull.oh.us

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly
authorized representatives of each of the Parties.

Date: _____        LAKE COUNTY

                                   By: _____

                                   Name: _____

                                   Title: _____


Date: _____        TRUMBULL COUNTY

                                   By: _____

                                   Name: _____

                                   Title: _____


Date: _____        PLEVIN & GALLUCCI

                                   By: _____

                                   Name: Frank Gallucci _____

                                   Title: _____

15

CONFIDENTIAL

LAKE005706832

DEF-MDL-14530.00002

Execution Copy

Date: September 1, 2021

RITE AID

By: _Paul Gilbert_

Name: PAUL GILBERT

Title: Executive Vice President, Secretary
and General Counsel

Date: September 7, 2021

MORGAN, LEWIS & BOCKIUS LLP

By: _____

Name: Kelly Moore

Title: Partner

16

LAKE005706833



# Board of Commissioners

*Jason W. Boyd, Administrator*

lakecountyohio.**gov**

**MEMO**

TO:    BCC

FROM:  Jason W. Boyd, County Administrator

RE:    Rite Aid Settlement

DATE:  Wednesday, September 01, 2021

Pursuant to the August 26, 2021 executive session, please see the attached settlement agreement from Rite Aid.

I will sign the agreement under Section C of the Administrators Resolution dated June 16, 2016 which permits me to sign settlement agreements with the authorization of the Commissioners.

APPROVED

Commissioners

of

Lake County, Ohio

Attest

PRESIDENT

CLERK 9-2-21

105 Main Street
Building A, Suite 513
Painesville, Ohio 44077
Office: 440-350-2745

CONFIDENTIAL

LAKE005706834

DEF-MDL-14530.00004

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

This CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE ("Agreement") is entered into on the _____ day of September, 2021 ("Effective Date"), by and between Rite Aid of Maryland Inc. d/b/a /Mid-Atlantic Customer Support Center ("Rite Aid of Maryland"), Rite Aid Hdqtrs. Corp., Eckerd Corporation d/b/a Rite Aid Liverpool Distribution Center, Rite Aid of Ohio, Inc., along with each of the foregoing's predecessors, parents, joint ventures, subsidiaries, divisions, affiliates, directors, officers, agents, employees, representatives, members, shareholders, and attorneys (including each of their respective successors, assigns, heirs, administrators, and executors) (collectively, "Rite Aid") and Lake County, Ohio and Trumbull County, Ohio (together, "Lake and Trumbull Counties" or the "County Plaintiffs") (collectively, the "Parties") and is intended to set forth the terms of the agreement reached by the Parties with respect to the actions captioned *County of Lake, Ohio v. Purdue Pharma L.P., et al.*, Case Nos. 18-op-45032, 1:17-md-2804 (N.D. Ohio) and *County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*, Case Nos. 18-op-45079, 1:17-md-2804 (N.D. Ohio) (the "Actions"). The County Plaintiffs include without limitation any and all of the County Plaintiffs' constitutional offices, departments, agencies, boards, attorneys, and/or officers, but only to the extent that the County Plaintiffs have the right to release claims described in Paragraph 4 below on behalf of the County Plaintiffs' constitutional offices, departments, agencies, boards, attorneys, and/or officers.

### I. RECITALS

A.      On December 11, 2017, Lake County, by and through its counsel, filed its Complaint for Damages in the Lake County Court of Common Pleas, Ohio. On December 18, 2017, Trumbull County, by and through its counsel, filed its Complaint

DEF-MDL-14530.00005

for Damages in the Trumbull County Court of Common Pleas, Ohio. On January 11,
2018 and January 18, 2018, respectively, Lake and Trumbull Counties removed the
Actions to the U.S. District Court for the Northern District of Ohio. On March 18,
2019, Lake and Trumbull Counties, by and through their counsel, filed Short Forms for
Supplementing Complaints and Amending Defendants and Jury Demands
commencing the Actions as against, *inter alia,* Rite Aid of Maryland and Rite Aid
Corp. On June 5, 2020, Lake and Trumbull Counties, by and through their counsel,
filed Supplemental and Amended Allegations to be Added to Short Forms for
Supplementing Complaints and Amending Defendants and Jury Demands, which, in
addition to naming Rite Aid of Maryland and Rite Aid Corp., commenced the Actions
as against, *inter alia*, Rite Aid Hdqtrs. Corp., Eckerd Corporation d/b/a Rite Aid
Liverpool Distribution Center, and Rite Aid of Ohio, Inc. (collectively, the "County
Plaintiffs' Complaints"). On January 21, 2021, Rite Aid Corp. was dismissed without
prejudice from the Actions. The County Plaintiffs' Complaints asserted claims against
Rite Aid under eleven causes of action, including but not limited to their Eleventh
Claims for Relief, for Common Law Absolute Public Nuisance.

B.     With respect to the County Plaintiffs' claims against Rite Aid, the
County Plaintiffs' Complaints allege, *inter alia,* that Rite Aid failed to effectively
monitor and report suspicious orders of prescription opioids from its retail stores and
failed to implement measures to prevent diversion of prescription opioids, which
contributed to an increase in opioid overdose and addiction and contributed to a public
health crisis in Lake and Trumbull Counties. County Plaintiffs also allege, *inter alia*,
with respect to the alleged failure to prevent diversion of prescription opioids that Rite
Aid failed to adequately train pharmacists at its retail stores on how to adequately

2

handle prescriptions for opioids, and failed to institute policies and procedures at its retail stores to avoid the diversion of opioids.

C.       Rite Aid has asserted several defenses to County Plaintiffs' allegations and has expressly denied and disclaimed any misconduct, wrongdoing, or liability in connection with its distribution and dispensing of prescription opioids in Ohio, and has affirmatively contended that its actions were and are consistent and in compliance with all applicable federal and state laws and regulations governing the distribution and dispensing of controlled substances.

D.       Rite Aid has commenced an action against certain of its insurers which, individually and collectively, jointly and severally, owe a duty to pay or reimburse settlements and judgments reasonably entered into or awarded against Rite Aid, which action is currently pending before the Supreme Court of the State of Delaware (the "Rite Aid Coverage Action").

E.       The trial court in the Rite Aid Coverage Action has determined, among other things, that opioid lawsuits alleging liability based on Rite Aid's alleged lack of proper controls in distributing and/or dispensing opioids allege one occurrence and that, accordingly, Rite Aid's payment of more than $3,000,000 in defense costs satisfied the self-insured retention under the first layer policy under which Rite Aid has sought coverage for the Actions, such that Rite Aid's insurance is now "first dollar" coverage for any settlement or judgment of those Actions and all similarly pled opioid lawsuits (the "Rite Aid Policies", issued by the "Rite Aid Insurers").

F.       The Parties agree that this Agreement's terms shall be tendered to the Rite Aid Insurers with a demand for payment of the entirety of the Settlement Amount.

3

CONFIDENTIAL                                                                                                                LAKE005706837

DEF-MDL-14530.00007

G.     The Parties agree that should Rite Aid's Insurers, after a reasonable period of time, not to exceed 10 days, fail to agree or refuse to agree to pay the Settlement Amount as provided for herein, then Rite Aid (i) will advance the sum of $3,000,000 pending receipt of insurance proceeds; (ii) will vigorously seek to collect the entirety of the Settlement Amount from Rite Aid's Insurers, at its sole expense as between these Parties; (iii) will pay over all insurance proceeds attributable to the Settlement Amount less the sum advanced by Rite Aid and interest collected thereon, together with interest at the statutory rate, within fifteen (15) days of their receipt from Rite Aid's insurers; (iv) will retain and vigorously prosecute any and all "bad faith" and similar statutory and other remedies as the result of Rite Aid's Insurers' failure or refusal to pay the Settlement Amount, at Rite Aid's sole expense as between these Parties.

H.     The Parties further agree that Rite Aid's insurers are obligated to pay the Settlement Amount in full, as provided for in this Settlement Agreement, and otherwise, and to do so in timely fashion, it being further understood and agreed that, should Rite Aid's insurers fail or refuse to meet their obligations, then there shall be no obligation for County Plaintiffs to re-pay the advance of $3,000,000 or obligation on the part of Rite Aid to pay or advance more than $3,000,000, it being further understood and agreed that these provisions shall impose no restriction, limitation or cap on Rite Aid's damages or remedies against its insurers.

I.     The County Plaintiffs have determined that this Agreement is in the public interest. The County Plaintiffs acknowledge Rite Aid's good faith and responsible corporate citizenship in reaching this resolution.

4

CONFIDENTIAL                                                                                                          LAKE005706838

DEF-MDL-14530.00008

J.    The Parties recognize that the outcome of the Actions is uncertain and a final resolution through the litigation process likely will require protracted litigation.

K.    Therefore, without any admission of liability or wrongdoing by Rite Aid, the parties now mutually desire to enter into this Agreement to provide for the full resolution, settlement, release and discharge of any and all of the claims that the County Plaintiffs have brought or could have brought against Rite Aid in the Actions, upon the terms and conditions set forth in this Agreement and to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

## II. AGREEMENT

In consideration of the mutual promises, terms, and conditions hereinafter expressed, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Rite Aid and the County Plaintiffs, as follows:

1.    Recitals Incorporated. The foregoing Recitals are incorporated herein and constitute an express term of this Agreement.

2.    Settlement Amount And Payment By Rite Aid's Insurers. The Parties agree that the Settlement Amount is Six Million Dollars ($6,000,000) and further agree that, subject to all of the terms, conditions, recitals, and provisions of this Agreement, the Settlement Amount is a reasonable compromise of matters in dispute and fairly apportions the risk of proceeding further in litigation *inter se*. Each of Lake and Trumbull Counties will be entitled to half of the Settlement Amount, or $3,000,000 (three million dollars, the "Per-Plaintiff Settlement Amount"). The Parties further agree that the Settlement Amount is fully covered by Rite Aid's Policies and should be paid and is payable in full by Rite Aid's Insurers. In order to effectuate this Agreement, the Parties further agree as follows:

5

CONFIDENTIAL                                                                                                    LAKE005706839

DEF-MDL-14530.00009

a.  This Agreement and all of its terms will be tendered to Rite Aid's insurers which shall be afforded a reasonable time, not to exceed 10 days, to determine whether one or more of Rite Aid's insurers will pay the Settlement Amount on Rite Aid's behalf.

b.  If any of Rite Aid's Insurers agree to pay the Settlement Amount, Rite Aid agrees that it will not insist that such insurer(s) do so without asserting any reservation of rights.

3.  Procedure and Agreement In the Event Rite Aid's Insurers Fail Timely

To Pay the Settlement Amount In Full. Should Rite Aid's Insurers, individually and

collectively, fail timely to pay the Settlement Amount on Rite Aid's behalf, the Parties

agree that Rite Aid will advance the sum of $3,000,000 and shall seek to collect the

remaining portion of the Settlement Amount from Rite Aid's Insurers. The Parties

further agree as follows:

a.  Rite Aid shall seek the entirety of the Settlement Amount from Rite Aid's Insurers, including interest on the Settlement Amount at the statutory rate, at Rite Aid's sole expense as between these Parties;

b.  Rite Aid shall promptly pay over all amounts collected from one or more of the Rite Aid Insurers in respect of the Settlement Amount less the $3,000,000 advanced by Rite Aid and interest collected thereon, within fifteen (15) days after Rite Aid's receipt; and

c.  Rite Aid shall retain all "bad faith", statutory remedies, breach of contract and other claims against the Rite Aid Insurers including those relating to the Rite Aid Insurers' failure or refusal timely to pay the Settlement Amount.

Rite Aid's advancement of $3,000,000 of the Settlement Amount to the County

Plaintiffs shall be made within 14 days of full execution of this Agreement or within 2

days of the approval of this Agreement by the legislatures of both Lake County and

Trumbull County (the "County Plaintiffs' Legislatures"), whichever is later. The

advancement of the Settlement Amount is to be allocated as follows:

6

$1.5 million to Lake County by and through account information to be identified by counsel.

$1.5 million to Trumbull County by and through account information to be identified by counsel.

4.    Scope. This Agreement will resolve all of the claims that the County Plaintiffs have asserted or could have asserted in the Actions seeking damages, costs, and any other remedies relating to and arising from historic and continuing opioid-related injuries that the County Plaintiffs contend were caused by or arise from Rite Aid's alleged failure to properly distribute and/or dispense prescription opioids. The conduct at issue in the Actions (hereafter, the "Covered Conduct") includes any and all alleged acts, failures to act, conduct, statements, errors, omissions, events, services, work, or other activity of any kind whatsoever, occurring up to and including the Effective Date, arising from or relating in any way to Rite Aid's distribution or dispensing of prescription opioid products.

5.    Most Favored Nation Clause. If within twelve months of the execution date of the settlement agreement, Rite Aid or Rite Aid's insurers acting on Rite Aid's behalf execute a separate settlement agreement with one or more of the plaintiffs in the recently-created MDL bellwether actions in which Rite Aid is a defendant (specifically: Montgomery County, Ohio; Cobb County, Georgia; Durham County, North Carolina), and such separate agreement provides for a per-plaintiff settlement amount that is greater than $3,000,000 (the "Other Bellwether Settlement Amount"), then Rite Aid agrees that the "Per-Plaintiff Settlement Amount" will be adjusted to add the difference between the Per-Plaintiff Settlement Amount set forth in Paragraph 2 and the Other Bellwether

7

CONFIDENTIAL

LAKE005706841

DEF-MDL-14530.00011

Settlement Amount and Rite Aid will seek to require the Rite Aid Insurers to pay those additional amounts.

6. <u>Release and Covenant Not to Sue</u>. The Parties acknowledge that the following Release and Covenant Not to Sue provisions are integral parts of this Agreement.

a. In consideration for and upon the payment provided in Paragraph 2 above or, alternatively, upon the advancement set forth in Paragraph 3 above and the agreement to pursue the undertakings set forth in Paragraph 2, the County Plaintiffs hereby agree to release, remise, acquit, and forever discharge, to the fullest extent permitted by law, Rite Aid and all of its past and present parents, subsidiaries, divisions, affiliates, predecessors, successors, assigns, and transferees and each and all of their current and former officers, directors, members, shareholders, employees, insurers, attorneys, contractors, representatives, agents, predecessors, successors in interest, assigns and anyone acting or purporting to act on their behalf, from any and all claims, demands, damages, debts, liabilities, penalties, restitution, disgorgement, reimbursement, fines, expenses, actions and causes of action whatsoever known and unknown, foreseen, unforeseen or unforeseeable, which Lake and Trumbull Counties have asserted or could have asserted in the Actions against Rite Aid in any way related to or concerning the Covered Conduct.

b. This is a full, final, and complete release of the County Plaintiffs' claims against Rite Aid and totally and completely bars any further future claims or demands of any kind or character whatsoever as a result of or relating to the Covered Conduct.

c. Upon the payment of the $6,000,000 of the Settlement Amount by Rite Aid's Insurers as provided in Paragraph 2 or, alternatively, the $3,000,000 advancement by Rite Aid of the Settlement Amount as provided in Paragraph 3, no default by any Party in the performance of any covenant or obligation under this Agreement or any order entered in connection therewith shall affect the dismissal of Rite Aid from the Actions, the res judicata effect of the dismissal of Rite Aid from the Actions, or the foregoing releases; provided, however, that all legal and equitable remedies for violation of a court order or breach of this Agreement shall remain available to the Parties.

8

CONFIDENTIAL                                                                                                                    LAKE005706842

7. Severance. Upon execution of this Agreement, the County Plaintiffs will immediately move to sever Rite Aid from the Actions and all litigation activities against Rite Aid will immediately cease while awaiting County Plaintiffs' Legislatures' approval of this Agreement. The County Plaintiffs' claims against Rite Aid therefore will not be included in the trial of the Actions against the other defendants.

8. Dismissals with Prejudice. The County Plaintiffs and Rite Aid will, concurrently with the full execution of this Agreement, execute a So-Ordered Stipulation of Dismissal with Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) and with all Parties to bear their own costs and attorneys' fees, in the form annexed hereto as Exhibit A. The County Plaintiffs and/or Rite Aid shall promptly submit the executed Stipulation of Dismissal with Prejudice to the Court with a request that it be so ordered but not filed. County Plaintiffs will hold the executed and so ordered Stipulation of Dismissal in escrow until the $6,000,000 (Six Million Dollars) or $3,000,000 (Three Million Dollars), as applicable under Paragraphs 2 and 3 respectively, is paid in full to the County Plaintiffs and the funds clear the County Plaintiffs' financial institutions, and County Plaintiffs' Legislatures' approval of this Agreement. Rite Aid shall be entitled to declare this Agreement void *ab initio* in the event the Court declines to so order the dismissal of the Actions with prejudice as against Rite Aid. If Rite Aid does not declare this Agreement void *ab initio* and the $6,000,000 (Six Million Dollars) or $3,000,000 (Three Million Dollars), as applicable under Paragraphs 2 and 3 respectively, is paid in full and clears the County Plaintiffs' financial institutions, County Plaintiffs will file the executed and so-ordered Stipulation of Dismissal with Prejudice on the public docket. If the

9

CONFIDENTIAL                                                                                                    LAKE005706843

Agreement is not approved by the County Plaintiffs' Legislatures or the aforementioned funds are not paid by Rite Aid or are paid and do not clear the County Plaintiffs' financial institutions, County Plaintiffs will destroy the Stipulation of Dismissal.

9.    No Admission of Liability. Rite Aid is entering into this Agreement solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Rite Aid expressly denies. Rite Aid does not admit that it caused or contributed to any public nuisance, and Rite Aid does not admit any wrongdoing that was or could have been alleged by the County Plaintiffs before the date of the Agreement. No part of this Agreement, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Rite Aid.

10.    Confidentiality. It is agreed that the terms of this Agreement are strictly confidential and that:

a.    The Parties agree to keep the terms of this Agreement confidential except to the extent disclosure is required by law.

b.    Except as necessary to obtain any required Court approval, no Party or counsel may reveal the terms of this Agreement (including but not limited to any range or estimate of settlement amounts) to anyone outside of his law firm or law firms participating in the representation of County Plaintiffs, the counsel for the Legislature, and the Legislature as required by law. The terms may be revealed within the law firms only to those with a need to know. The terms may also be revealed to the Parties'

10

CONFIDENTIAL                                                                                                          LAKE005706844

DEF-MDL-14530.00014

accountants and attorneys and to Rite Aid's insurers, provided that they are shown, and agree to be bound by, this confidentiality provision. The Agreement also may be produced to Rite Aid's insurers in the coverage action styled *Rite Aid Corporation et al. v. ACE American Insurance Company et al.*, C.A. No. N19C-04-150 EMD [CCLD] (Del. Super. Ct.), as long as the Agreement is designated "Confidential" and produced subject to the Stipulation and Order Governing the Production and Exchange of Confidential Information that has been entered in that action. If Court approval is required, any necessary correspondence with the Court shall be made in a manner that maintains and protects the confidentiality of the terms of this Agreement.

c. These confidentiality provisions may be enforced by a suit for consequential damages and/or injunctive relief.

11. No Waiver. This Agreement is made without trial or adjudication of any issue of fact or law or finding of liability of any kind. This Agreement shall not be construed or used as a waiver of any jurisdictional defense Rite Aid may raise in any other proceeding, or as a waiver or limitation of any defense otherwise available to Rite Aid in any other action. This Agreement shall not be construed or used as a waiver of Rite Aid's right to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Agreement.

12. No Private Right of Action. No part of this Agreement shall create a private cause of action or confer any right to any third party for violation of any federal

11

CONFIDENTIAL                                                                                                    LAKE005706845

DEF-MDL-14530.00015

or state statute. This Agreement is not enforceable by any persons or entities besides the County Plaintiffs, Rite Aid, and this Court.

13.     Entire Agreement. This Agreement represents the full and complete terms of the settlement entered into by the Parties hereto. In any action undertaken by the Parties, no prior versions of this Agreement and no prior versions of any of its terms that were not entered by the Court in this Agreement, may be introduced for any purpose whatsoever.

14.     No Severability. If for any reason a provision of this Agreement or the application of any provision of this Agreement is held to be invalid or unenforceable, that decision shall render this Agreement null and void and unenforceable in its entirety and Rite Aid shall be repaid the Settlement Amount under Paragraphs 2 and/or 3, as applicable, of this Agreement.

15.     No Challenge. The Parties agree not to challenge the entry of the executed and so-ordered Stipulation of Dismissal and waive all rights of appeal.

16.     Modification. This Agreement may be modified only in writing signed by all parties.

17.     Mutual Interpretation. The Parties agree and stipulate that this Agreement was negotiated on an arm's-length basis between parties of equal bargaining power. The Agreement has been drafted jointly by counsel for each Party. Accordingly, this Agreement shall be mutually interpreted and not construed in favor of or against either Party.

12

CONFIDENTIAL                                                                                                      LAKE005706846

DEF-MDL-14530.00016

18. Counterparts. This Agreement may be executed in counterparts, and a facsimile or .pdf signature shall be deemed to be, and shall have the same force and effect as, an original signature.

19. Governing Law. The terms of this Agreement shall be governed by the laws of the State of Ohio provided, however, that any matter bearing on insurance matters shall be governed by the law applied in the Rite Aid Coverage Action.

20. Legislature Approval. This Agreement is subject to acceptance by the County Plaintiffs' Legislatures for final approval. The content and details are to be discussed with the Legislatures at executive sessions or as required by law.

21. Further Assurances. Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement.

22. Venue. Any suits, actions or proceedings arising out of this Agreement shall be brought in the appropriate state or federal court sitting in and for the County or judicial district in Lake County, Ohio for Plaintiff Lake County and Trumbull County, Ohio for Plaintiff Trumbull County.

23. Notice. All Notices under this Agreement shall be provided to the following via email and Overnight Mail:

> If to Rite Aid:
>
> Paul Gilbert, General Counsel
> Rite Aid Hdqtrs. Corp.
> 30 Hunter Lane
> Camp Hill, PA 17011
>
> paul.d.gilbert@riteaid.com
>
> CC: Kelly A. Moore
> Morgan, Lewis & Bockius LLP
> 101 Park Avenue
> New York, NY 10178

13

CONFIDENTIAL

LAKE005706847

DEF-MDL-14530.00017

kelly.moore@morganlewis.com

For Lake County:

Frank Gallucci
Plevin & Gallucci
Cleveland Office
55 Public Square #2222
Cleveland, OH 44113
FGallucci@pglawyer.com

And

Hunter Shkolnik
Salvatore Badala
Napoli Shkolnik PLLC
400 Broadhollow Road
Melville, New York 11747
hunter@napolilaw.com
sbadala@napolilaw.com

With a copy to:

Jason W. Boyd
County Administrator
Lake County Board of Commissioners
105 Main St.
Painesville, Ohio 44077
jboyd@lakecountyohio.org

For Trumbull County:

Frank Gallucci
Plevin & Gallucci
Cleveland Office
55 Public Square #2222
Cleveland, OH 44113
FGallucci@pglawyer.com

and

Hunter Shkolnik
Salvatore Badala
Napoli Shkolnik PLLC
400 Broadhollow Road
Melville, New York 11747

14

hunter@napolilaw.com
sbadala@napolilaw.com

With a copy to:

James J. Misocky, Attorney at Law
Administrator of Special Projects
Trumbull County Commissioners
160 High St., N.W., Warren, OH 44481
cemisock@co.trumbull.oh.us

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly authorized representatives of each of the Parties.

Date: 9/3/21

LAKE COUNTY
By: _____
Name: JASON W. BOYD
Title: COUNTY ADMINISTRATOR

Date: _____

TRUMBULL COUNTY
By: _____
Name: _____
Title: _____

Date: _____

PLEVIN & GALLUCCI
By: _____
Name: Frank Gallucci
Title: _____

15

CONFIDENTIAL

LAKE005706849

DEF-MDL-14530.00019

Date: _____ 

RITE AID

By: _____

Name: _____

Title: Executive Vice President, Secretary
and General Counsel

Date: _____ 

MORGAN, LEWIS & BOCKIUS LLP

By: _____

Name: Kelly Moore _____

Title: Partner _____

16

CONFIDENTIAL

LAKE005706850

DEF-MDL-14530.00020

**20.  A RESOLUTION TO AUTHORIZE MAURO CANTALAMESSA, PRESIDENT OF THE BOARD OF TRUMBULL COUNTY COMMISSIONERS TO EXECUTE ANY AND ALL DOCUMENTS NECESSARY TO ACCEPT AND APPROVE THE SETTLEMENT AGREEMENT WITH RITE AID, AS FULLY DEFINED IN THE OPIOID LITIGATION, CASE NO 18-OP-45032, 1:17 -MD-2804 (N.D.OHIO)**

## RESOLUTION

**To adopt and execute a Resolution to authorize Mauro Cantalamessa, President of the Board of Trumbull County Commissioners to execute any and all documents necessary to accept and approve the Settlement Agreement with Rite Aid, as fully defined in the Opioid Litigation, Case No. 18-OP-45032, 1:17 -MD-2804 (N.D.OHIO).**

**WHEREAS**, there is a pending matter on behalf of Trumbull County regarding the Opioid addiction crisis in which Trumbull County is a named plaintiff (The Action); and

**WHEREAS**, the Action alleges several causes of action against defendant, collectively referred to as Rite Aid, based on claims that Rite Aid contributed to the Opioid epidemic by failing to implement measures to prevent diversion of prescription opioids in connection with the distribution and dispersing of opioids, all of which contributed to a public health crisis in Trumbull County; and

**WHEREAS**, Rite Aid has offered to settle the claims of Trumbull County against it in accord with the terms of the attached Settlement Agreement and Release(Agreement). The Agreement is attached hereto as Exhibit "A"; and

**WHEREAS**, Trumbull County does hereby accept and approve the attached settlement Agreement.

## NOW THEREFORE, BE IT RESOLVED BY THE BOARD OF THE TRUMBULL COUNTY COMMISSIONERS OF WARREN, OHIO.

That Trumbull County does hereby accept and approve the terms of the Settlement Agreement and Release; and that Mauro Cantalamessa, President of the Board of Trumbull County Commissioners is hereby authorized and directed to execute any and all documents necessary to accept and approve the Settlement Agreement and Release on behalf of Trumbull County.

CONFIDENTIAL

DEF-MDL-14530.00021

**Execution Copy**

hunter@napolilaw.com
sbadala@napolilaw.com

With a copy to:

James J. Misocky, Attorney at Law
Administrator of Special Projects
Trumbull County Commissioners
160 High St., N.W., Warren, OH 44481
cemisock@co.trumbull.oh.us

IN WITNESS WHEREOF, this Agreement has been read and signed by the duly
authorized representatives of each of the Parties.

Date: _____        LAKE COUNTY

                                      By: _____

                                      Name: _____

                                      Title: _____

Date: __September 1st, 2021__         TRUMBULL COUNTY

                                      By: _____

                                      Name: Mauro Cantalamessa, President

                                      Title: Trumbull County Commissioner

Date: _____         PLEVIN & GALLUCCI

                                      By: _____

                                      Name: Frank Gallucci _____

                                      Title: _____

15

CONFIDENTIAL

LAKE005706852

DEF-MDL-14530.00022

**Execution Copy**

Date: _____

RITE AID

By: _____

Name: _____

Title: Executive Vice President, Secretary and General Counsel

Date: _____

MORGAN, LEWIS & BOCKIUS LLP

By: _____

Name: Kelly Moore _____

Title: Partner _____

16

CONFIDENTIAL

LAKE005706853

DEF-MDL-14530.00023