IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Case No. 1:18-op-46326-DAP<br><br>THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS and THE STATE OF OHIO *EX REL.* MATHIAS H. HECK, JR., PROSECUTING ATTORNEY,<br>                    Plaintiff,<br>   v.<br>CARDINAL HEALTH, INC. et al.,<br>                    Defendants. | MDL No. 2804<br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**Pharmacy Defendants' Reply in Support of Objection to Discovery Ruling No. 25**

Defendants' Objection (ECF No. 82, the "Objection") presents three simple and straightforward issues. The Court should sustain the Objection and order the County to provide information on three subjects central to this case.[1]

**Interrogatory 5 (Second Set)**

The County alleges each Defendant "had or should have had actual or constructive notice" that 115 prescribers specifically identified *by the County* (1) "were engaged in activity indicative of possible or actual diversion," (2) issued prescriptions "without a legitimate medical purpose or outside the usual course of professional practice," and/or (3) "were not authorized to issue controlled substance prescriptions." (Objection ¶ 20.) Defendants are entitled to understand the basis for the County's claim that they should have been on notice that these particular prescribers

---

[1] Defendants disagree with legal positions the County takes in its Response, and they reserve all rights, but the issue presently before the Court is whether Defendants are entitled to factual discovery to test the County's legal theories and proof.

were engaged in misconduct, and so Defendants asked the County to describe how it identified the prescribers and what specific facts the County alleges should have put Defendants on notice of the prescribers' activities. This interrogatory does not "demand[] an impossible level of granular contentions," (Response at 2); it just seeks the factual basis for the County's affirmative statement.

### Interrogatories 1 and 11 (First Set)

The County alleges each Defendant had notice of, and contributed to, diversion of prescription opioid medications. (Objection ¶ 4.) The County's Response insists—repeatedly—that the County will not rely on diversion of any particular prescription opioid medication, and instead will rely on aggregate proof.[2] Still, Defendants are entitled to discover whether the County has knowledge of any prescriptions that were in fact diverted and, if so, the identity of those prescriptions. That is all Defendants sought in Interrogatory 1. The problem is not the County's refusal to "conclusively state whether or not *each* of these (or other prescriptions) was diverted," (Response at 6 (emphasis added)), but rather the County's refusal to state whether *any* prescription was in fact diverted. If the County does not have knowledge of any prescriptions that were in fact diverted, the County should be ordered to say so. And if the County does have knowledge of any prescriptions that were in fact diverted, Defendants are entitled to discovery about those prescriptions. The County's identification of prescriptions it believes were "most likely" diverted, or at a "high risk" for diversion, simply does not answer the question that was asked.[3]

The County separately alleges each Defendant filled prescriptions for opioids that were not issued for "legitimate medical uses." (Objection ¶ 12.) Again, the County's Response insists—

---

[2] The County says it will rely on "aggregate evidence" or "aggregate proof" at least ten times.

[3] The County's Response is internally inconsistent, but the County is exactly right when it concedes: "On its face, [Interrogatory 1] seeks not individualized background information about the circumstances of each pill, but a list of prescriptions the County contends were diverted." (Response at 7.)

2

repeatedly—that the County does not intend to present evidence of diversion of any particular prescription for opioids, and instead will rely on aggregate proof. Still, Defendants are entitled to discover whether the County has knowledge that any Defendant in fact filled any prescription for an opioid that was not written for a legitimate medical purpose by a practitioner acting in the usual course of his or her professional practice and, if so, the identity of those prescriptions. Again, that is all Defendants sought in Interrogatory 11. If the County lacks knowledge that any Defendant actually filled prescriptions for opioids that were not issued for a legitimate medical purpose, the County should be ordered to say so. And if the County does have knowledge of any prescription opioids that were dispensed in response to a prescription that was not written for a legitimate medical purpose, Defendants are entitled to know which prescriptions the County believes fit that description.[4]

# # #

All of this is relevant to the County's claims, notwithstanding the County's insistence that it will rely exclusively on aggregate proof. Indeed, each interrogatory is in response to allegations in the County's own pleadings. All of this is relevant to Defendants' defenses, too. Defendants are entitled to understand and rebut the County's evidence of alleged diversion, of alleged dispensing of illegitimate prescriptions, and that Defendants should have been on notice of purportedly suspicious practices by certain prescribers—if the County has any such evidence.[5] Nor is any of

---

[4] The County repeatedly invokes its Supplemental Pleading. (Response at 3, 6, 12.) The County's unsworn and unproven allegations are not evidence. Regardless, answers to Defendants' interrogatories cannot be found in that 260-page document. If they could, the County would point to them—which would, of course, be fatal to the County's unsubstantiated claims of undue burden.

[5] The County suggests Defendants are interfering with its right to be "master of its complaint." (Response at 2.) Not so. The County might attempt to prove its case through "aggregate proof," and has now committed to doing so. But each Defendant similarly must be allowed to take discovery, to explore defenses and, ultimately, to be the "master" of its defense.

3

this disproportional to the needs of this case, especially given the scope of the allegations the County has made and the relief the County will inevitably seek. Defendants only seek the County's knowledge on key factual issues, including the same information other plaintiffs in this MDL were ordered to disclose.[6]

In a last-ditch effort to justify its refusals to respond to centrally relevant discovery requests, the County repeatedly suggests that it does not matter whether the County answers these interrogatories, because the County's experts may do so later. (Response at 2, 3, 6 (twice), 12 & n.6, 13.) But these interrogatories did not ask the County what theories its experts might gin up—long after fact discovery is closed, and long after Defendants can test the County's evidence and contentions with the benefit of fact discovery. They asked the County to disclose its knowledge, if it had any—or to simply say it has none.

Defendants therefore reiterate their request that the Court sustain their Objection and order the County to respond to the three interrogatories at issue.

---

While the County may believe its "aggregate proof" is sufficient, Defendants have a right to attack that so-called "proof." Quite frankly, Defendants do not know what the County means when it says that "it is beyond question that the scope of prescription diversion alleged in the County is larger than that which would be identified pill-by-pill," (Response at 8), because the County's so-called "aggregate proof" is made up of individual prescriptions. The County apparently wants to avoid that uncomfortable fact because, as it concedes, it views tracing prescriptions to harm (*i.e.*, "causation") as impossible. (Response at 2, 8-9.) The fact that the County has chosen (and this Court previously allowed others) to avoid proof that prescriptions dispensed by Defendants actually were diverted and, ultimately, caused harm—despite the varied possibilities of what may have happened to any of the FDA-approved mediations dispensed by Defendants pursuant to prescriptions written by licensed doctors (*e.g.*, being used as directed, sitting in a medicine cabinet, being thrown away, etc.), and the numerous potential alternative causes of any alleged harm (*e.g.*, actions of entities other than the Defendants, illicit drugs, and so on)—cannot mean that Defendants are precluded from undermining the County's proof by showing, *inter alia*, that the County does not know whether any prescriptions *actually* were diverted or *actually* were improperly dispensed.

[6]   The County calls it "misleading" to say that the Special Master ordered the Track 3 plaintiffs to provide the same or similar information. (Response at 8-9 n.4.) The Special Master's prior ruling was submitted with Defendants' Objection and speaks for itself.

Dated: July 24, 2022            Respectfully submitted,

*/s/ Trevor K. Scheetz*
Trevor K. Scheetz
Joseph M. Vanek
Greg Shinall
David P. Germaine
Sperling & Slater, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
(312) 641-3200 (p)
(312) 641-6492 (f)
tscheetz@sperling-law.com
jvanek@sperling-law.com
shinall@sperling-law.com
dgermaine@sperling-law.com

*Counsel for Meijer, Inc., Meijer Distribution, Inc., and Meijer Stores Limited Partnership*

/s/ *Alex J. Harris (consent)*
Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Tel: (303) 592-3100
Fax: (303) 592-3140
E-mail: alex.harris@bartlitbeck.com

Kaspar J. Stoffelmayr
Katherine M. Swift
BARTLIT BECK LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312) 494-4400
Fax: (312) 494-4440
E-mail: kaspar.stoffelmayr@bartlitbeck.com
E-mail: kate.swift@bartlitbeck.com

Alec H. Schultz
HILGERS GRABEN PLLC
1221 Brickell Avenue
Suite 900
Miami, Florida 33131
Tel: (305) 630-8304
E-mail: aschultz@hilgersgraben.com

Michael Burns
HILGERS GRABEN PLLC
601 Pennsylvania Ave. NW
South Building Suite 900
Washington, D.C. 20004
Tel: (202) 985-1664
E-mail: mburns@hilgersgraben.com
*Counsel for Walgreens Boots Alliance, Inc. and Walgreen Co.*

*/s/ Eric R. Delinsky (consent)*
Zuckerman Spaeder
1800 M Street NW, Ste. 1000
Washington, DC 20036
Phone: 202-778-1831
Fax: 202-822-8106
Email: edelinsky@zuckerman.com
*Counsel for CVS Indiana L.L.C., CVS Rx Services, Inc., CVS TN Distribution, LLC, CVS Pharmacy, Inc., and Ohio CVS Stores, LLC*

*/s/ Tara A. Fumerton (consent)*
Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
77 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: tmtabacchi@jonesday.com
Email: tfumerton@jonesday.com
*Counsel for Walmart Inc.*

*/s/ Ronda L. Harvey (consent)*
Ronda L. Harvey, Esq. (WVSB 6326)
Fazal A. Shere, Esq. (WVSB 5433)
Jennifer B. Hagedorn, Esq. (WVSB 8879)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
jhagedorn@bowlesrice.com
*Counsel for Defendants The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II*

**Certificate of Service**

    I, Trevor K. Scheetz, an attorney, hereby certify that on July 24, 2022, I filed a copy of the foregoing document using the Court's electronic case filing system, which will deliver notice and a copy of the filing to all counsel of record.

                                                                                         */s/ Trevor K. Scheetz*