UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------------X

TOWN OF BABYLON, NY; TOWN OF BROOKHAVEN, NY;
TOWN OF HEMPSTEAD, NY; TOWN OF ISLIP, NY; TOWN
OF OYSTER BAY, NY; TOWN OF NORTH HEMPSTEAD, NY;
TOWN OF HUNTINGTON, NY; TOWN OF RAMAPO, NY; and
TOWN OF SMITHTOWN, NY,

        22-cv-1681
        (KAM) (AYS)

*Plaintiffs,*

-against-

LETITIA JAMES, in her Official Capacity as the Attorney General
for the State of New York,

*Defendant.*

-----------------------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

TATE, GROSSMAN & KELLY
*Attorneys for Plaintiffs*
1248 Montauk Hwy
West Islip, New York 11795

Mirel Fisch
The Law Office of Mirel Fisch
2329 Nostrand Ave, Suite 100
Brooklyn, New York 11210
(929) 382-4933
*Of Counsel*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................ i

TABLE OF AUTHORITIES ................................................................. ii

PRELIMINARY STATEMENT ............................................................ 1

LEGAL STANDARD ON A MOTION TO DISMISS ............................ 4

    I.      STANDARD OF REVIEW AS TO A RULE 12(b)(1) MOTION ..................... 4

    II.     STANDARD OF REVIEW AS TO A RULE 12(b)(6) MOTION ..................... 5

         A.  Standard of Review ....................................................... 5

         B.  This Court cannot consider the Declaration by Andrew Amer,
            Esq., Special Counsel with the Office of the Attorney General,
            or the Position Statement of the New York Attorney General
            and the documents annexed thereto, which New York submitted
            in support of its motion to dismiss ................................. 6

ARGUMENT .................................................................................. 7

    I.      THE SECOND CIRCUIT EXPRESLLY HELD THAT A
         MUNICIPALITY HAS STANDING TO SUE ITS STATE ............................ 7

    II.     PLAINTIFFS ALLEGED COGNIZABLE FEDERAL CLAIMS
         SEEKING A DECLARATORY JUDGMENT THAT § 25.18(d)
         IS PREEMPTED BY THE FIRST AMENDMENT, AND
         INJUNCTIVE RELIEF THEREFORE ................................................... 11

         A.  Courts have long recognized the right to pursue claims seeking
            a declaratory judgment and injunctive relief which invoke the
            Supremacy Clause, and Plaintiffs do not, as New York claims,
            attempt to bring a "private right of action under the Supremacy
            Clause" ................................................................. 12

         B.  Courts have recognized that a political subdivision of a state
            has rights under the First Amendment to petition the courts ....................... 18

         C.  The New York Drug Dealer Liability Act provides Plaintiffs
            with an underlying cause of action which § 25.18(d) denies
            them access to the courts to adjudicate ................................... 21

i

III.   PLAINTIFFS ALLEGED A COGNIZABLE FEDERAL
       SUBSTANTIVE DUE PROCESS CLAIM GIVEN THAT
       § 25.18(d) RETROACTIVELY EXTINQUISHED TIMLEY-
       FILED ACTIONS WITHOUT DUE PROCESS ......................................... 24

IV.    New York violated the New York State Constitution's Home Rule
       given that § 25.18(d), which effects some but not all municipalities,
       does not bear a reasonable relationship to a stated substantial State-
       wide concern ............................................................................................. 26

CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**<u>Cases</u>**

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
    300 U.S. 227 (1937) ............................................................................................... 13

*Am. Econ. Ins. Co. v. State,*
    30 N.Y.3d 136 (2017) ............................................................................................ 25

*Armstrong v. Exceptional Child Care Center, Inc.,*
    575 U.S. 320 (2015) .......................................................................... 12, 14, 15, 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 5, 6

*Aurecchione v. Schoolman Transp. Sys., Inc.,*
    426 F.3d 635 (2d Cir. 2005) .................................................................................... 5

*Baldwin Union Free Sch. Dist. v. Cnty. of Nassau,*
    105 A.D.3d 113 (2d Dep't 2013) .......................................................................... 27

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 5

*Bertuglia v. City of New York,*
    839 F. Supp. 2d 703 (S.D.N.Y. 2012) .................................................................... 4

*Branson Sch. Dist. RE-82 v. Romer,*
    161 F.3d 619 (10th Cir. 1998) .............................................................................. 10

*Bros. v. Florence,*
    95 N.Y.2d 290 (2000) ........................................................................................... 26

*Carter v. HealthPort Techs., LLC,*
    822 F.3d 47 (2d Cir. 2016) ...................................................................................... 5

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.,*
    850 F.3d 58 (2d Cir. 2017) ...................................................................................... 5

*CFCU Cmty. Credit Union v. Hayward,*
    552 F.3d 253 (2d Cir. 2009) .................................................................................. 25

*Chambers v. Time Warner, Inc.,*
    282 F.3d 147 (2d Cir. 2002) ................................................................................ 6, 7

*Christopher v. Harbury,*
  536 U.S. 403 (2002) ........................................................................ 21, 23

*City of New York v. Beretta U.S.A. Corp.,*
  524 F.3d 384 (2d Cir. 2008) ...................................................... 21, 22, 23

*City of New York v. Patrolmen's Benevolent Assn. of City of N.Y.,* (PBA I)
  89 N.Y.2d 380 (1996) ............................................................ 27, 28, 29

*City of New York v. State,*
  94 N.Y.2d 577 (2000) .......................................................................... 28

*City of Trenton v. New Jersey,*
  262 U.S. 182 (1923) ............................................................................ 28

*Cnty. of Suffolk v. Long Island Lighting Co.,*
  710 F. Supp. 1387 (E.D.N.Y. 1989) ............................................... 19, 20
  907 F.2d 1295 (2d Cir. 1990) .............................................................. 19

*Crawford v. Cuomo,*
  796 F.3d 252 (2d Cir. 2015) ................................................................... 5

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104 (2d Cir. 2010) ................................................................... 6

*EDP Med. Computer Sys., Inc. v. United States,*
  480 F.3d 621 (2d Cir. 2007) ................................................................... 4

*Espinoza v. Montana Dep't of Revenue,*
  140 S. Ct. 2246 (2020) ........................................................................ 17

*Ex-parte Young,*
  209 U.S. 123 (1908) ............................................................................ 14

*Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons,*
  954 F.3d 118 (2d Cir. 2020) ........................................................... 16, 17

*Figueroa v. Foster,*
  864 F.3d 222 (2d Cir. 2017) ................................................................. 15

*First Nat'l Bank of Boston v. Bellotti,*
  435 U.S. 765 (1978) ............................................................................ 19

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
  561 U.S. 477 (2010) ............................................................................ 18

iv

*Friedl v. City of New York,*
    210 F.3d 79 (2d Cir. 2000) ............................................................ 6, 7

*Friedman v. Bloomberg L.P.,*
    884 F.3d 83 (2d Cir. 2017) ............................................................ 22

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
    841 F.3d 133 (2d Cir. 2016) .......................................................... 14

*General Motors Corp. v. Romein,*
    503 U.S. 181 (1992) ...................................................................... 25

*Gomillion v. Lightfoot,*
    364 U.S. 339 (1960) ................................................................. 8, 11

*Greater New York Taxi Ass'n v. State,*
    21 N.Y.3d 289 (2013) ................................................................... 28

*Hamilton v. Accu-tek,*
    935 F. Supp. 1307 (E.D.N.Y. 1996) ............................................. 20

*Hammond v. United States,*
    786 F.2d 8 (1st Cir. 1986) ............................................................ 22

*Herr v. Pequea Tp.,*
    274 F.3d 109 (3d Cir. 2001) .................................................. 20, 21

*Hogan v. Fischer,*
    738 F.3d 509 (2d Cir. 2013) .......................................................... 6

*Hu v. City of New York,*
    927 F.3d 81 (2d Cir. 2019) ........................................................... 29

*Hughes v. Talen Energy Mktg., LLC,*
    578 U.S. 150 (2016) ...................................................................... 15

*Jacobus v. Colgate,*
    217 N.Y. 235 (1916) .................................................................... 25

*Jensen v. Farrell Lines, Inc.,*
    625 F.2d 379 (2d Cir. 1980) ........................................................ 13

*J.S. ex rel. N.S. v. Attica Cent. Sch.,*
    386 F.3d 107 (2d Cir. 2004) .......................................................... 5

*Kansas v. Garcia*,
    140 S. Ct. 791 (2020) ............................................................... 17

*Kearns v. Cuomo*,
    415 F. Supp. 3d 319 (W.D.N.Y. 2019) ............................................. 9
    981 F.3d 200 (2d Cir. 2020) ........................................................ 9

*Kopec v. Coughlin*,
    922 F.2d 152 (2d Cir. 1991) ....................................................... 7

*Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1*,
    469 U.S. 256 (1985) ............................................................... 14

*Maine v. Thiboutot*,
    448 U.S. 1 (1980) ................................................................. 18

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.*,
    91 N.Y.2d 577(1998) ............................................................. 24

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ....................................................... 4

*Manistee Town Ctr. v. City of Glendale*,
    227 F.3d 1090 (9th Cir. 2000) .................................................... 20

*Mariana v. Fisher*,
    338 F.3d 189 (3d Cir. 2003) ...................................................... 20

*Mayer v. Neurological Surgery, P.C.*,
    2016 WL 347329 (E.D.N.Y. Jan. 28, 2016) ....................................... 4

*Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*,
    701 F. Supp. 2d 568 (S.D.N.Y. 2010) ......................................... 19, 20

*Nielsen v. Rabin*,
    746 F.3d 58 (2d Cir. 2014) ........................................................ 6

*Ocean Cnty. Bd. of Commissioners v. Att'y Gen. of State of New Jersey*,
    8 F.4th 176 (3d Cir. 2021) ....................................................... 10

*Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*,
    467 U.S. 717 (1984) ............................................................... 25

*Pistolesi v. Calabrese*,
    709 F. App'x 97 (2d Cir. 2018) ................................................... 15

*Pub. Serv. Comm'n of Utah v. Wycoff Co.,*
    344 U.S. 237 (1952) ............................................................. 13

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal,*
    35 N.Y.3d 332 (2020) ............................................................. 25

*Rogers v. Brockette,*
    588 F.2d 1057 (5th Cir. 1979) .................................................. 10

*Sahu v. Union Carbide Corp.,*
    548 F.3d 59 (2d Cir. 2008) ...................................................... 7

*Samuels v. Air Transp. Local 504,*
    992 F.2d 12 (2d Cir. 1993) ...................................................... 29

*Scheuer v. Rhodes,*
    416 U.S. 232 (1974) ............................................................. 5

*Shaw v. Delta Air Lines, Inc.,*
    463 U.S. 85 (1983) .............................................................. 15

*Sure-Tan, Inc. v. NLRB,*
    467 U.S. 883 (1984) ............................................................. 18

*Terry v. Anderson,*
    95 U.S. 628 (1877) .............................................................. 25

*Thomas v. Goord,*
    215 Fed. App'x 51 (2d Cir. 2007) ............................................. 6

*Tweed-New Haven Airport Auth. v. Tong,*
    930 F.3d 65 (2d Cir. 2019) ...................................................... 8

*United Transp. Union v. State Bar of Mich.,*
    401 U.S. 576 (1971) ............................................................. 19

*Will v. Michigan Dep't of State Police,*
    491 U.S. 58 (1989) .............................................................. 18

*Williams v. Mayor of Baltimore,*
    289 U.S. 36 (1933) .............................................................. 8

*Zinermon v. Burch,*
    494 U.S. 113 (1990) ............................................................. 6

## Constitutions

N.Y. Const, art. IX, § 2(b)(1) ………………………………………………... 2, 27

N.Y. Const, art. IX, § 3(d) ………………………………………………... 27

U.S. Const. amend. I ……………………………………………………… 18

U.S. Const. art. VI, cl. 2 ………………………………………………… 12, 17

## Statutes

15 U.S.C. § 7901 ………………………………………………………… 22

28 U.S.C. § 2201 ………………………………………………………… 13

Fed. R. Civ. P. 10(c) …………………………………………………… 6

Fed. R. Civ. P. 12(b)(1) ………………………………………………… 4

Fed. R. Civ. P. 12(b)(6) ……………………………………………… 5, 6

Fed. R. Civ. P. 12(d) …………………………………………………… 6, 7

N.Y. Gen. Oblig. Law § 12-102(2) …………………………………… 23

N.Y. Gen. Oblig. Law § 12-104 ……………………………………… 23

N.Y. Mental Hyg. Law § 25.18(d) ………………………………………… *passim*

## PRELIMINARY STATEMENT

This action arises out of the State of New York's ("New York") attempts to deprive Plaintiffs, nine Towns located across Long Island and Rockland County, the ability to collect compensation for the damages they suffered in responding to the opioid crises within their respective townships. *See* DE 21, Third Am. Compl. ("TAC") ¶ 6.

Litigation regarding the opioid crises is pending nationally against the manufacturers, distributors, and suppliers of opiates (the "opioid defendants"). *See id.* ¶ 23. New York, as well as local municipalities within the State, are pursing claims against these defendants for their roles in the opioid crises which municipalities were forced to address within their respective boundaries, *see id.* ¶¶ 4-5, 7, 10, 23, and these opioid defendants have offered a substantial sum to settle the various claims against them. *See id.* ¶ 18.

On December 10, 2019, Plaintiffs all timely filed suit against the opioid defendants in Suffolk County Supreme Court. *See id.* ¶¶ 10, 23. The defendants in those suits were properly served, and the litigation was proceeding in State court. *See id.* ¶ 23. However, on June 5, 2021, the New York Legislature passed Senate Bill 7149 (the "Act"), *see* TAC at 12-20 (Ex. A), which "extinguished" Plaintiffs' claims "by operation of law," thereby depriving them the ability to collect their due compensation against the opioid defendants. *See id.*; *id.* ¶ 18.

Specifically, the Act "amend[ed] the state finance law, the mental hygiene law, and the executive law, in relation to establishing an opioid settlement fund," *see* TAC at 13 (Ex. A at 1), and within that, the "mental hygiene law [was] amended by adding a new section 25.18 28." *Id.* at 14 (Ex. A at 2). N.Y. Mental Hygiene Law § 25.18(d), titled "Statewide opioid settlements" ("§ 25.18(d)") reads as follows:

> Limitation on authority of government entities to bring lawsuits. No government entity shall have the authority to assert released claims against

1

entities released by the department of law in a statewide opioid settlement agreement executed by the department of law and the released party on or after June first, two thousand twenty-one. *Any action filed by a government entity after June thirtieth, two thousand nineteen asserting released claims against a manufacturer, distributor, or dispenser of opioid products shall be extinguished by operation of law* upon being released pursuant to such statewide opioid settlement agreement.

*See id.* at 18 (Ex. A at 6) (emphasis added). § 25.18(d) took effect on June 29, 2021, *see* N.Y. Mental Hygiene Law § 25.18(d), and it retroactively "extinguished by operation of law" claims which were timely filed in the *two years* prior to its passage. *See id.*[1] Plaintiffs in this case are all "government entities" referenced in § 25.18(d), *see id.* ¶ 3, and accordingly, their claims, which were already pending for *18 months* at the time the Act was passed, were "extinguished by operation of law" on June 29, 2019. *See id.* ¶¶ 10, 23; N.Y. Mental Hygiene Law § 25.18(d). In blatant violation of the First Amendment to the United States Constitution, which prohibits laws infringing on the ability to petition for redress of grievances, New York simply shut Plaintiffs out of the courts, while at the same time, permitting claims filed by other municipalities a mere five months and 10 days prior, to proceed. *See id.* ¶¶ 1-2, 5-7, 10, 26, 35, 40.

Given that § 25.18(d) distinguished between municipalities which filed before and after that magic June 30, 2019 date, Article IX of the New York Constitution, New York's "Home Rule," mandated that such act only be passed in accordance with specific requirements. *See id.* ¶¶ 11-12, 17, 24-25, 39-45; N.Y. Const, art. IX, § 2(b)(1). However, New York violated its own constitutional requirements by failing to do so. *See* TAC ¶¶ 23-24. To add insult to injury, there is absolutely no justification, reasonable or otherwise, for New York permitting claims filed as of June 30, 2019 to proceed, while extinguishing claims filed the next day and onward, and the text

---

[1] New York is the only State to have done so. *See* TAC ¶ 8. While New York argues otherwise and sets forth a table which purports to summarize the retroactive application of nine other states' opioid settlement agreements, *see* Mem. at 5-7, New York completely misrepresents these other settlement agreements. *See* Grossman Decl. (providing a counter-table as to these states' opioid settlement agreements, demonstrating New York's inaccuracies).

2

of the Act is completely silent on arbitrary demarcation. *See id.* ¶¶ 10, 15, 18, 28-29, 40-45.

Accordingly, Plaintiffs are seeking a (a) declaratory judgment that the Act, and specifically, § 25.18(d) of the New York Mental Hygiene Law, is preempted by the Petition Clause of the First Amendment and that it is therefore unconstitutional, and (b) injunctive relief therefrom. *See id.* ¶¶ 1, 26, 33, 35; *id.* at 10 (Wherefore clauses). Plaintiffs are also raising a substantive due process claim given § 25.18(d)'s retroactive effect. *Id.* ¶¶ 13-15 Finally, invoking this Court's supplemental jurisdiction, Plaintiffs are challenging the Act as violative of the New York State Constitution. *Id.* ¶¶ 41-45.

Completely disregarding established federal jurisdiction over claims seeking declaratory and injunctive relief, New York attempts to mislead this Court by falsely stating that Plaintiffs merely allege "a private right of action under the Supremacy Clause." *See* Mem. at 1-2, 14-15. Then, New York sets forth pages and pages of assertions (many of which are blatantly false), *see* Mem. at 1, 3-5, 7-10, which are based on the Declaration of its attorney, Andrew Amer, Esq., where he purports to set for "facts" "based upon my personal knowledge and/or review of the documents in the possession of OAG." *See* Amer Decl. ¶¶ 1-2. It also submitted a Position Statement filed in connection with an action pending in the Eastern Division of the United States District Court for the Northern District of Ohio. *See* Position Statement. These hearsay "facts" are not contained in, nor are they relied upon, anywhere in the Complaint, and New York offered no basis for how or why this Court may consider them in addressing the motion to dismiss.

Based on these misrepresentations and improper assertions, New York argues that this Court does not have federal jurisdiction over Plaintiffs' claims; the federal claims nonetheless lack merit; in the absence of federal jurisdiction this Court should not exercise supplemental jurisdiction over Plaintiffs' State law claim; and that Plaintiffs' State law claim also lacks merit.

3

However, as demonstrated below, New York's arguments misconstrue, and misrepresent, the nature of the claims and the application of relevant legal principles. Accordingly, the motion to dismiss should be denied in its entirety.

## LEGAL STANDARD ON A MOTION TO DISMISS

The applicable standards of review as to motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), and the limitations on a court's ability to consider matters outside the pleadings such as the documents which New York submitted in this case, are addressed below. However, as to motions under both rules, it should be noted that if New York raises new arguments or theories in its reply papers, those arguments must be disregarded. *See Mayer v. Neurological Surgery, P.C.*, 2016 WL 347329, at *4 (E.D.N.Y. Jan. 28, 2016) ("The law in this Circuit is clear that arguments raised for the first time in reply briefs need not be considered."), *citing, e.g., EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 625 n.1 (2d Cir. 2007). "[A]rguments raised for the first time in reply should not be considered, because the plaintiffs had no opportunity to respond to those new arguments." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012).

## I.    STANDARD OF REVIEW AS TO A RULE 12(b)(1) MOTION

A Rule 12(b)(1) motion challenges a court's subject-matter jurisdiction. New York correctly notes that a court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it "lacks the statutory or constitutional power to adjudicate it," *see* Mem. at 11, *quoting Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000), and that a plaintiff bears the burden of proving the existence of subject matter jurisdiction. *See* Mem. at 12, *citing Makarova*, 201 F.3d at 113.

4

However, "it is well established that, in passing on a motion to dismiss [ ] on the ground of lack of jurisdiction over the subject matter . . . the allegations of the complaint should be construed favorably to the pleader." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005), *quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). And where a complaint makes "a colorable pleading of subject matter jurisdiction," a complaint should not be dismissed for lack of subject-matter jurisdiction. *See id.*

New York correctly notes that in determining whether subject-matter jurisdiction exists, courts may look to evidence outside the pleadings to resolve the issue. *See* Mem. at 12, *citing J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). However in doing so, a court "may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S.*, 386 F.3d at 110. Furthermore, if the complaint plausibly demonstrate the existence of subject-matter jurisdiction, then a defendant's evidence to the contrary is "immaterial" and should be disregarded. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

## II.     STANDARD OF REVIEW AS TO A RULE 12(b)(6) MOTION

### A.  Standard of Review.

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a cause of action, "a court must accept as true all of the allegations contained in a complaint," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "draw[ ] all reasonable inferences in the plaintiff's favor." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017), *quoting Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015).

To survive a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However "[i]n ruling on a motion pursuant to

Fed.R.Civ.P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support thereof."

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (citation omitted). "A claim

is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged.'" *Hogan v. Fischer*, 738 F.3d

509, 514 (2d Cir. 2013), *quoting Ashcroft*, 556 U.S. at 678. "[A] well-pleaded complaint may

proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and

that a recovery is very remote and unlikely." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).

> **B. This Court cannot consider the Declaration by Andrew Amer, Esq., Special Counsel with the Office of the Attorney General, or the Position Statement of the New York Attorney General and the documents annexed thereto, which New York submitted in support of its motion to dismiss.**

In considering a defendant's motion to dismiss, courts should consider the "documents

appended to the complaint." *Thomas v. Goord*, 215 Fed. App'x 51, 53 (2d Cir. 2007); *see also*

Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of

the pleading for all purposes."); *Zinermon v. Burch*, 494 U.S. 113, 118 (1990) (taking as true the

allegations contained in the complaint and attached exhibits for purposes of reviewing a Rule

12(b)(6) motion). A court may also consider documents not annexed to the complaint if they are

incorporated by reference, or where the complaint "relies heavily upon its terms and effect."

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

If a defendant submits documents in support of its motion to dismiss for failure to state a

claim, other than documents a court may take judicial notice of, they *may not* be considered

unless the motion is converted to one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Friedl v.*

*City of New York*, 210 F.3d 79, 83 (2d Cir. 2000). "This conversion requirement is 'strictly

enforced' whenever a district court considers extra-pleading materials in ruling on a motion to dismiss." *Chambers*, 282 F.3d at 154. However prior to converting the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008).

In this case, New York submitted a 14-paragraph Declaration by Special Counsel Andrew Amer, Esq., which set forth facts "based upon my personal knowledge and/or review of the documents in the possession of OAG." *See* Amer Decl. ¶¶ 1-2.[2] It also submitted a Position Statement of the New York Attorney General in Support of Settling Distributors' Motion to Dismiss Claims Filed by Non-Participating New York Subdivisions as Barred by Statute, which was filed in connection with the National Prescription Opiate Litigation in the Eastern Division of the United States District Court for the Northern District of Ohio. *See* Position Statement. New York cites 'facts' contained in these extraneous documents throughout its motion to dismiss. *See* Mem. at 1, 3-5, 7-10, 19. However, this Court may not "'consider[ ] affidavits and exhibits submitted by' [a] defendant[ ]" in "ruling on a 12(b)(6) motion to dismiss." *Friedl*, 210 F.3d at 83, *quoting Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir. 1991).

## ARGUMENT

## I. THE SECOND CIRCUIT EXPRESLLY HELD THAT A MUNICIPALITY HAS STANDING TO SUE ITS STATE

Initially, New York argues that Plaintiffs, as political subdivisions of New York, do not have legal capacity to challenge the laws of the State. *See* Mem. at 12-14. It argues that the New York Court of Appeals recognized two arguably-applicable exceptions, but that neither of those

---

[2] Plaintiff acknowledges, as New York states, that this Court may take judicial notice of statutes New York cited. *See* Mem. at 5 n. 1. It is worth noting that New York did not even claim, as it cannot, that this Court may take judicial notice of any of the numerous claimed 'facts' asserted in Amer's Declaration which are relied upon throughout New York's Memorandum.

apply—(1) where a public entity is vested with a proprietary interest in a specific fund by law and the challenged statute adversely affects its interest in the fund; and (2) where a state statute impinges on a municipality's home rule powers under the State Constitution. *See id.* at 13-14.

However, New York disregards, and misstates, the line of federal cases which explicitly held that a municipality *does have* capacity to mount constitutional challenges against its state.

Specifically, in *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 68 (2d Cir. 2019), an airport owned by the State of Connecticut sued its Attorney General in his official capacity, seeking a declaratory judgment that a State statute which limited expanding runways beyond a certain length, was invalid as it was preempted by federal law. As in *this* case, that State argued "Tweed cannot sue Connecticut because it is a political subdivision of the State." *See id.* at 69.

However, the Second Circuit made clear that "[t]he view that subdivisions were broadly prevented from suing a state was put to rest in *Gomillion v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960)." *Id.* at 72. In *Gomillion*, the Supreme Court permitted challenges asserted pursuant to the Fourteenth and Fifteenth Amendments against Alabama's gerrymandering of the boundaries of the City of Tuskegee. *See id.* at 73. As the Second Circuit noted, "[t]he Court *rejected* Alabama's assertion that a state's power over its political subdivisions was unrestricted by the Constitution: 'Legislative control of municipalities, no less than other state power, lies within the scope of relevant limitations imposed by the United States Constitution.'" *Id.* (emphasis added), *quoting Gomillion*, 364 U.S. at 344-45. The Second Circuit went on to note that prior Supreme Court decisions which did limit a municipality's ability to sue its state, were subscribed specifically to the constitutional challenges raised in *those particular cases, see id.* at 73, which were limited to challenges under the Equal Protection Clause, and the Contract Clause, only, *see id.* at 72, *citing Williams v. Mayor of Baltimore*, 289 U.S. 36, 40

8

(1933); *City of Trenton v. New Jersey*, 262 U.S. 182, 188 (1923), and did not "involve[ ] the Supremacy Clause, which raises unique federalism concerns." *Tweed*, 930 F.3d at 73.

The Second Circuit continued, explaining that "[i]n the years following *Gomillion*, the Supreme Court has *repeatedly* entertained suits against a state by a subdivision of the state, including cases under the Supremacy Clause." *Id.* (emphasis added) (citing numerous cases). The court then concluded as follows: "In light of this authority, we hold that *a subdivision may sue its state* under the Supremacy Clause." *Id.* (emphasis added).

In this case, as discussed below, *see infra* Point II, Plaintiffs' claims are one by "a subdivision . . . under the Supremacy Clause." *See Tweed*, 930 F.3d at 73. Accordingly, Plaintiffs have standing to assert these claims against "[their] state." *See id.*

Since *Tweed*, the Second Circuit has indicated its adherence to its prior holding. In *Kearns v. Cuomo*, 415 F. Supp. 3d 319, 322-23 (W.D.N.Y. 2019), *aff'd*, 981 F.3d 200 (2d Cir. 2020), the Clerk of the County of Erie suing in part in his official capacity, sued then-Governor Andrew Cuomo in his official capacity, seeking to challenge the constitutionality of New York State Driver's License and Privacy Act. Citing *Tweed*, the Western District noted that "[i]n assessing the standing of *a state subdivision* to *challenge a state law under the Supremacy Clause*, the Second Circuit has applied the traditional test for Article III standing." *Id.* at 336 (emphasis added). In that case, the municipality could not establish a cognizable injury, and *therefore* lacked standing. *See id.* In affirming that decision, the Second Circuit found that the County lacked standing to sue only because it did not establish a cognizable injury, and it did not indicate that as a local municipality, it did not have standing to sue the State of New York. *See Kearns*, 981 F.3d at 212.[3]

---

[3] The Second Circuit is not alone in finding capacity to sue. In holding that "a subdivision may sue its state under the Supremacy Clause," it noted "we join the Fifth and Tenth Circuits" in doing so. *See Tweed*, 930 F.3d at 73, *citing*

Perhaps recognizing that *Tweed* expressly grants Plaintiffs standing to sue in this case and therefore forecloses its argument, New York seeks to 'distinguish' it by falsely representing the holding in that case. *See* Mem. at 14. New York states that the Second Circuit "held that *Connecticut's analogous capacity rule* did not prevent a political subdivision of Connecticut from asserting that a state statute was preempted under the Supremacy Clause by a federal statute because the argument "raises unique federalism concerns." *See* Mem. at 14 (emphasis added), *purporting to cite Tweed*, 930 F.3d at 73.[4] The court however did no such thing and New York is attempting to mislead this Court. The Second Circuit did not analyze, or so much as reference, the State of Connecticut's state-created limitations on its municipalities' ability to sue it, or, as New York termed it, "Connecticut's analogous capacity rule." *See generally Tweed*, 930 F.3d 65. Indeed Connecticut itself did not even seek to invoke its state-created capacity-rule (whatever that was). *See id.* Rather, as the court noted, Connecticut relied on the two Supreme Court decisions noted above pertaining to the Equal Protection and Contract Clauses, which involved Maryland and New Jersey—neither of which addressed *Connecticut's* bar on its political subdivision's ability to sue. *See id.* at 72.

New York then incorrectly attempts to distinguish *Tweed* even more. It argues that while that plaintiff "argued preemption based on a federal statute that directly conflicted with a state statute," Plaintiffs in this case "rely for their preemption argument on a constitutional provision

---

*Rogers v. Brockette*, 588 F.2d 1057 (5th Cir. 1979); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619 (10th Cir. 1998). And since *Tweed*, the Third Circuit followed suit as well. Persuaded by the Second Circuit's reasoning, the court in *Ocean Cnty. Bd. of Commissioners v. Att'y Gen. of State of New Jersey*, 8 F.4th 176, 180-81 (3d Cir. 2021) echoed the belief that "'[i]f the Supremacy Clause means anything . . . it means that a state is not free to enforce within its boundaries laws preempted by federal law.'" *Id., quoting Tweed*, 930 F.3d at 73. "Political subdivision suits 'invoking the Supremacy Clause are one of the main ways of ensuring that this does not occur.'" *Id., quoting Tweed*, 930 F.3d at 73. Accordingly, the Third Circuit "agree[d] with the reasoning of the Second Circuit and h[e]ld that a political subdivision may sue its creator state in federal court under the Supremacy Clause." *Id.*

[4] Piggy-backing off that false representation, New York then made some irrelevant reference to the Second Circuit's speculative prediction on how the New York Court of Appeals would "adopt the same preemption exception for New York's capacity rule." *See* Mem. at 14.

that confers no rights on them as government entities and which they have asserted no private right of action to invoke." *See* Mem. at 14. Once again, New York completely misses the mark. Not only did the the Second Circuit expressly "hold that a subdivision may sue its state *under the Supremacy Clause*," generally speaking, *see Tweed*, 930 F.3d at 73 (emphasis added), but it did not limit its holding to circumstances involving preemption by *statute*. *See generally id.; see also id.* at 73 (citing numerous additional cases involving various grounds for preemption, including those pursuant to constitutional amendments as well as by statute). And indeed in reaching its decision, the court relied in part on Supreme Court cases which addressed challenges based upon the Fourteenth and Fifteenth Amendments to the United States Constitution, specifically, *see id.* at 72-73, *citing Gomillion*, 364 U.S. at 340, which are obviously "constitutional provision[s]" New York now claims the holding does not apply to. *See* Mem. at 14.

Accordingly, as demonstrated, Plaintiffs have standing, or legal capacity, to prosecute this action, and New York's motion to dismiss on this basis must be denied. Additionally, Plaintiffs also have standing to sue given that New York violated the Home Rule provision of Article IX of the New York State Constitution, which is addressed at *infra* Point IV. *See* Mem. at 13 (recognizing that a political subdivision has capacity to sue "where a state statute impinges on a municipality's home rule powers under the State Constitution.").

## II.  PLAINTIFFS ALLEGED COGNIZABLE FEDERAL CLAIMS SEEKING A DECLARATORY JUDGMENT THAT § 25.18(d) IS PREEMPTED BY THE FIRST AMENDMENT, AND INJUNCTIVE RELIEF THEREFORE

Next, New York argues that Plaintiffs failed to state a cognizable federal claim upon which to base federal jurisdiction. *See* Mem. at 15-18. It argues that (1) "there is no private right of action under the Supremacy Clause," *id.* at 15; (2) even if there was, "a political subdivision of the state enjoys no rights under the Petition Clause," *id.* at 15-16; and (3) the Petition Clause

in any event "protects only the right of access to courts, not the right to assert any particular cause of action that the legislature may otherwise choose to abrogate or limit." *Id.* at 17-18. As demonstrated below, each of these arguments are misplaced.

**A. Courts have long recognized the right to pursue claims seeking a declaratory judgment and injunctive relief which invoke the Supremacy Clause, and Plaintiffs do not, as New York claims, attempt to bring a "private right of action under the Supremacy Clause."**

New York boldly asserts that Plaintiffs' federal claim is "purportedly under the Supremacy Clause," and that Supreme Court jurisprudence provides that there is no such independent claim. *See* Mem. at 15. Plaintiffs acknowledge, of course, that the Supreme Court in *Armstrong v. Exceptional Child Care Center, Inc.*, 575 U.S. 320, 324-25 (2015), which New York relies on, held that the Supremacy Clause "does not create a cause of action." *See* Mem. at 15, *quoting Armstrong*, 575 U.S. at 324-25. However, while Plaintiffs *invoke* the Supremacy Clause, their federal claims are for declaratory judgment and injunctive relief, and *not* stand-alone Supremacy-Clause claims as New York falsely represents.

The TAC alleges that New York's Mental Hygiene Law § 25.18 ("§ 25.18") denies government entities such as Plaintiffs the ability to seek redress in the courts for their claims against manufacturers, distributors, or dispensers of opioid products, given that it extinguished their already-pending claims "by operation of law." *See* TAC ¶¶ 3, 23. This however conflicts with the First Amendment to the United States Constitution, which guarantees access to the courts to seek redress of grievances. *Id.* ¶¶ 26, 32. Accordingly, § 25.18 is preempted by the First Amendment pursuant to the Supremacy Clause of the United States Constitution. *Id.* ¶¶ 33, 35.

Accordingly, Plaintiffs' Third Amended Complaint ("TAC") asserts the following federal cause of action: "This action seeks declaratory relief declaring that 'New York's Mental Hygiene

Law § 25.18' is unconstitutional under Art. VI, Cl.2 of the United States Constitution as violative of the First Amendment." *See* DE 21, TAC ¶ 1. It also seeks injunctive relief: "This action seeks to prevent the enforcement of an Act of the New York State Legislature . . ." *Id.* ¶ 2; *see also id.* at 10(a)-(d) (WHEREFORE clauses asking this Court to declare the statute unconstitutional, and to permanently enjoin New York from enforcing it against Plaintiffs as violative of their First Amendment rights to petition for redress of grievances and through the invocation of the Supremacy Clause).

The Declaratory Judgment Act of 1934, codified as 28 U.S.C. § 2201, *see Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952), provides the following:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. 85 years ago, the Supreme Court affirmatively held that the Declaratory Judgment Act confers federal jurisdiction over complaints which *merely* seek declaratory judgments, but do not seek any other remedy or relief. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 236-39, 241, 244 (1937). Indeed, Congress "styled" 28 U.S.C. § 2201 the "Creation of [a] *remedy*." *See* 28 U.S.C. § 2201 (emphasis added); *Pub. Serv. Comm'n of Utah*, 344 U.S. at 241. A request for a declaratory judgment is, and as demonstrated has long been, recognized as an independent cognizable federal claim upon which federal jurisdiction may be based.[5] *See also Jensen v. Farrell Lines, Inc.*, 625 F.2d 379, 383 (2d Cir. 1980) (finding, in action raising First Amendment challenges, that the district court "correctly held that a cause

---

[5] New York does not contend otherwise. *See generally* Mem. Rather, it entirely disregards the fact that the TAC seeks declaratory and injunctive relief.

of action existed for both declaratory and injunctive relief from the court. . . . Declaratory relief is expressly authorized under 28 U.S.C. s 2201. Availability of federal equitable relief to remedy constitutional violations has been presumed by the courts."); *Armstrong*, 575 U.S. at 326 ("we have long held that federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law.").

A claim seeking a declaratory judgment is a proper federal claim over which district courts have jurisdiction, even where the claim seeks to invoke the Supremacy Clause. As the Second Circuit noted (in the year following *Armstrong*), "the Supreme Court has consistently recognized federal jurisdiction over declaratory- and injunctive-relief actions to prohibit the enforcement of state or municipal orders alleged to violate federal law." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016) (citing several cases). The Second Circuit did not overlook *Armstrong*, as the court cited *Armstrong throughout* its decision. *See generally id.* Indeed it even quoted *Armstrong* for the proposition that "[t]he Supreme Court has 'long recognized' that where 'individuals claim federal law immunizes them from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Id.* at 144, *quoting Armstrong*, 575 U.S. at 326 (alteration in original). In *Armstrong*, while the Court held the Supremacy Clause does not create an *independent* cause of action, it nonetheless recognized that separate and apart from that, "we have long held that federal courts may in some circumstances grant *injunctive* relief against state officers who are violating, or planning to violate, federal law,"[6] and that "[t]he ability to sue to *enjoin* unconstitutional actions

---

[6] The Court noted that this principle was recognized back in *Ex-parte Young*, 209 U.S. 123, 155-56 (1908). *See Armstrong*, 575 U.S. at 326. And even more recently, for example, the Court in *Lawrence Cnty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 260 n. 6 (1985), noted that the Eight Circuit's vacature of "a declaratory judgment that the state statute conflicted with the federal Act and was therefore invalid under the Supremacy Clause," on the basis "that the county's invocation of the Supremacy Clause did not convert the action into one arising under federal law for purposes of federal jurisdiction," was "erroneous." The Court explained that it has in the past "granted declaratory relief to a party challenging a state statute on pre-emption grounds, *reaffirming the general rule that 'a*

14

by state and federal officers is the creation of courts of equity, and reflects a long history of

judicial review of illegal executive action, tracing back to England." *Id.* at 325-27 (emphasis

added).[7] The Court explained that while the Supremacy Clause does not create a separate right of

action, the ability to seek an injunction is "a judge-made remedy." *Id.* at 327.[8]

On year later, in 2017, the Second Circuit addressed a plaintiff's "causes of action

pursuant to the Supremacy Clause . . . *for declaratory and injunctive relief.*" *Figueroa v. Foster*,

864 F.3d 222, 225-26 (2d Cir. 2017) (emphasis added). The court decided the issues on the

merits, and did not raise any concerns regarding the appropriateness of claims seeking equitable

relief as a basis to invoke the Supremacy Clause. *See generally id.* And one after that, in 2018,

the Second Circuit again quoted *Armstrong* for the proposition that a federal court may issue

declaratory relief where a state law is preempted, as follows: "If an entity claims that a federal

law immunizes it from a state regulation, a federal court may issue an injunction upon finding

the state regulation preempted." *Pistolesi v. Calabrese*, 709 F. App'x 97, 98 (2d Cir. 2018),

*quoting* Armstrong, 575 U.S. at 326 (alteration in original).

Four years post-*Armstrong*, the Second Circuit recognized, as noted above, that "[i]f the

Supremacy Clause means anything, it means that a state is not free to enforce within its

---

plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under.'" *Id.*, *quoting Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n. 14 (1983).

[7] The Supreme Court ultimately found that the respondents' claim could not proceed in equity, and therefore it did not grant the injunction, based upon the fact that the Medicaid Act, which the respondents argued was being violated by the State of Idaho, "implicitly precludes private enforcement" thereof, therefore "respondents cannot, by invoking our equitable powers, circumvent Congress's exclusion of private enforcement." *See Armstrong*, 575 U.S. at 323-24, 327-28. There is no such similar congressional limitation on pursuing claims under the First Amendment.

[8] The following year, the Supreme Court addressed claims seeking "a declaratory judgment that Maryland's [electricity regulatory] program violates the Supremacy Clause by setting a wholesale rate for electricity and by interfering with [Federal Energy Regulatory Commission]'s capacity-auction policies. *See Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 153, 160 (2016). There, the Court noted that "[b]ecause neither CPV nor Maryland has challenged whether plaintiffs may seek declaratory relief under the Supremacy Clause, the Court *assumes* without deciding that *they may.*" *Id.* at 161 n. 6 (emphasis added).

boundaries laws preempted by federal law. Lawsuits invoking the Supremacy Clause are one of the main ways of ensuring that this does not occur." *Tweed*, 930 F.3d at 73. Contrary to New York's argument that in that case "the defendant never challenged, and the court never addressed, the basis for plaintiff's federal cause of action," *see* Mem. at 15 n. 4, the decision expressly states, consistent with *Armstrong* continuing to recognize a federal court's jurisdiction over claims seeking declaratory judgments, that "Tweed sued the then Connecticut Attorney General George Jepsen in his official capacity (the 'State'), seeking a declaratory judgment that a Connecticut statute (the 'Runway Statute' or 'Statute') that limits the Airport's runway to its current length of 5,600 feet was invalid. . . . Tweed claimed that the Statute *was preempted by federal laws governing the regulation of air transportation, including the Federal Aviation Act.*" *See Tweed*, 930 F.3d at 68 (emphasis added). And the State *did* challenge that, arguing that Tweed was not yet injured as the State did not threaten to enforce the statute, to which the Second Circuit noted that "[t]he very purpose of the *Declaratory Judgment Act* was to avoid requiring a litigant to confront this dilemma." *See id.* at 70 (emphasis added).[9]

And just two years ago, the Second Circuit considered an equity claim by the Federal Defenders which alleged that the Federal Bureau of Prisons' suspension of attorney-client visitation violation the Sixth Amendment right to counsel. *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 132 (2d Cir. 2020). The Second Circuit criticized the district court for construing the claim as a mere private right of action under the Sixth Amendment, as opposed to "an implied right of action under the Supremacy Clause to seek injunctive relief against the enforcement or implementation of state legislation" as supported by *Armstrong*. *See id.* at 132-34. It noted the Federal Defenders' Sixth Amendment claim and "the legitimacy of

---

[9] In any event, Plaintiff is not asserting the Supremacy Clause as a separate cause of action, and is not relying on *Tweed* for the proposition that the Supremacy Clause provides that separate cause of action. *See* Mem. at 15 n. 4.

their reliance on *Armstrong* as a basis for pursuing suits in equity." *Id.* at 133. It then explained

that "the District Court overlooked a narrow but well-drawn line of precedent establishing that a

plaintiff may invoke the court's equitable powers to enjoin a defendant from violating

constitutional provisions that do not, themselves, grant any legal rights to private plaintiffs." *Id.*

Accordingly, the court "direct[ed] the District Court on remand to consider the Defenders' Sixth

Amendment action as one in equity under *Armstrong*." *Id* at 134.

In this case, Plaintiffs' claims allege that § 25.18(d), which precludes them from

maintaining prior lawsuits they already filed, is preempted by the Petition Clause of the First

Amendment, because it denies them access to the courts. *See* TAC ¶¶ 1, 19, 26, 32-33.

The Supremacy Clause of the United States Constitution provides, in relevant part, that

"*This Constitution*, and the Laws of the United States which shall be made *in Pursuance thereof* .

. . shall be the supreme Law of the Land . . ." U.S. Const. art. VI, cl. 2 (emphasis added). While

New York insinuates that "the First Amendment or any other Constitutional provision" *cannot*

be the basis of preemption, *see* Mem. at 15 n. 4, it is axiomatic that the Constitution is, of course,

the "supreme law of the land." Indeed "the federal restrictions or rights that are said to conflict

with state law must stem from either the *Constitution* itself *or* a valid statute enacted by

Congress." *Kansas v. Garcia*, 140 S. Ct. 791, 801 (2020) (emphasis added). Clearly, the

Supremacy Clause has been applied specifically in the context of *constitutional* preemption, not

merely to acts of Congress. *See Espinoza v. Montana Dep't of Revenue*, 140 S. Ct. 2246, 2262-

63 (2020) (finding that statute at issue which created a discriminatory scholarship program

conflicted with, and was therefore preempted by, the Free Exercise Clause of the First

Amendment); *Fed. Defs. of New York, Inc.*, 954 F.3d at 132-34 (recognizing plaintiff's "implied

right of action under the Supremacy Clause to seek injunctive relief against the enforcement or

17

implementation of state legislation" which was alleged to have violated the Sixth Amendment

right to counsel). *See also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477,

491 n. 2 (2010) (recognizing that plaintiffs may pursue claims under the "Appointments Clause

[and] separation-of-powers" even if they have no "implied private right of action directly under

the Constitution," as there is no basis to treat constitutional claims "differently").

Accordingly, as demonstrated, Plaintiffs' federal claims, which seek declaratory and

injunctive relief, constitute cognizable federal claims.

### B. Courts have recognized that a political subdivision of a state has rights under the First Amendment to petition the courts.

The First Amendment to the United States Constitution provides, in relevant part, that

"Congress shall make no law . . . abridging . . . the right of the people . . . to petition the

Government for a redress of grievances." U.S. Const. amend. I.

Citing various authorities which noted that the right of access to courts *historically*

applied to 'individuals,' 'British subjects,' or 'colonial Americans,'[10] New York boldly states,

without any actual authority in support, whatsoever, that "a political subdivision of the state

enjoys no rights under the Petition Clause." *See* Mem. at 15-16.[11] New York continues its faulty

analysis by claiming, again without any authority in support, that the Court's extension of the

right of access to the courts from individuals to groups, which was "based on the need to 'protect

'collective activity undertaken to obtain meaningful access to the courts' in order to petition the

---

[10] It is worth noting that in the context of the Civil Rights Act (claims which Plaintiffs are *not* asserting), local "municipalities are 'persons' under § 1983," *see Maine v. Thiboutot*, 448 U.S. 1, 5 (1980), as distinguished from states which are not. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

[11] In addition to the fact that none of the authorities cited actually supports the proposition New York is espousing, it should be noted that New York's citation to *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 896-97 (1984), *see* Mem. at 16, is misleading. Nowhere did that Court hold, or note, that the right of access to the courts is "secured to individuals," as New York claims, nor did it use any language to that effect. *See generally Sure-Tan, Inc.*, 467 U.S. 883.

18

government for redress of wrongs," *see* Mem. at 16-17, *quoting United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585 (1971), "does not apply where the entity seeking to invoke the right of court access is a government entity rather than the public." *See* Mem. at 17.

However, courts *have* extended the First Amendment Petition Clause and the right of access to the courts to local government entities, and New York failed to cite any controlling authority which held otherwise. In *Cnty. of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387, 1390 (E.D.N.Y. 1989), *aff'd*, 907 F.2d 1295 (2d Cir. 1990), the defendants demonstrated that Suffolk County fought to prevent Shoreham from producing oil, at the "local, state and national levels," before the "state legislature and state and federal administrative bodies," and its activities caused great economic damage. *See id.* at 1389-90. However, the court found that the Suffolk's activities were immunized by the First Amendment. Judge Weinstein expressly held that "Suffolk had, and has, a constitutional right under the First Amendment to speak and act in opposition to Shoreham," and that it may do so by "exercising its power to petition any agency of government including the legislature, administrative agencies *and the courts*." *Id.* at 1390 (emphasis added). Citing *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 776-84 (1978), the court noted that "[a] municipal corporation, like any corporation, *is protected under the First Amendment in the same manner as an individual*," *Cnty. of Suffolk*, 710 F. Supp. at 1390 (emphasis added), and that the "right to petition" is "a basic First Amendment right." *See id.*

Similarly, in *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 574-80 (S.D.N.Y. 2010), four villages had filed an Article 78 petition challenging the Town of Ramapo's enactment of a law which permitted construction of a housing facility at an Orthodox Jewish school. The plaintiffs, who owned and operated the school, alleged that the villages' challenge of the law was discriminatory, and the villages argued their conduct was protected "by

19

the First Amendment right to petition." *Id.* at 580-81, 593. After analyzing an extensive line of cases addressing municipalities' rights under the First Amendment, and specifically the right to petition courts, the court was "persuaded that government actors are afforded some measure of protection under the *Noerr–Pennington* doctrine[12] and the First Amendment to petition when they lawfully do so." *Id.* at 593-02. Accordingly, it found the Village of Wesley Hills was "entitled to some protection under *Noerr–Pennington* and the First Amendment." *Id.* at 602.

Additionally, contrary to New York's contention, courts also found that the rational for extending the right of access to the courts from individuals to groups, *does* apply to local municipalities. *See* Mem. at 17. In *Cnty. of Suffolk*, 710 F. Supp. at 1390, Judge Weinstein noted that Suffolk's "view that Shoreham represents a danger to Suffolk residents may be expressed in exercising its power to petition any agency of government including . . . the courts." So too, In *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1093 (9th Cir. 2000), the Ninth Circuit noted that "[g]overnment officials are frequently called upon to be ombudsmen for their constituents. In this capacity, they intercede, lobby, and generate publicity to advance their constituents' goals, both expressed and perceived. This kind of petitioning may be nearly as vital to the functioning of a modern representative democracy as petitioning that originates with private citizens." In *Mariana v. Fisher*, 338 F.3d 189, 200 (3d Cir. 2003), the Third Circuited noted that "[g]overnmental petitioning is as crucial to the modern democracy as is that of private parties." And in *Herr v. Pequea Tp.*, 274 F.3d 109, 120 (3d Cir. 2001), *abrogated on other*

---

[12] New York's bold assertion, that the *Noerr-Pennington* anti-trust doctrine which immunizes parties from liability for their acts of petitioning, "has no applicability to the circumstances presented here outside the context of antitrust," *see* Mem. at 17 n. 5, is clearly inaccurate. In addition to *Mosdos Chofetz Chaim, Inc.*, 701 F. Supp. 2d at 601-02, the court in *Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1316 (E.D.N.Y. 1996), noted that the "doctrine developed in large part to *protect the First Amendment right to petition* government," and "the First Amendment, *not construction of the antitrust statute*, is the real basis of the doctrine." (emphasis added). Accordingly, as that court noted, "[w]hile the doctrine originated as a limit on antitrust liability, *Noerr–Pennington* has been *extended* by analogy to protect petitioning activity challenged under other federal statutes." *Id.* (emphasis added).

*grounds by United Artists Theatre Cir., Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003), that court similarly noted that when petitioning, "a township and its supervisors represent their constituents and facilitate their participation in the government process," and that a contrary rule would leave a townships' citizens "without a voice in important matters."

New York recognizes that "§ 25.18(d)[ ] limits the authority of 'government entities' to bring lawsuits, and [that] the Petition Clause[ ] protects the rights of the public to bring lawsuits." *See* Mem. at 17. Accordingly, given that Plaintiffs have rights under the First Amendment to petition the courts, § 25.18(d) conflicts with that right and is therefore preempted.

### C. The New York Drug Dealer Liability Act provides Plaintiffs with an underlying cause of action which § 25.18(d) denies them access to the courts to adjudicate.

In its final attempt to deny Plaintiffs their First Amendment rights, New York argues that because the legislature extinguished Plaintiffs' claims, they have no claims to litigate, therefore they have no basis to assert that they were denied access to the courts. *See* Mem. at 17-18.

Plaintiffs acknowledge, as New York noted, that the right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *See* Mem. at 17, *quoting Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiffs also acknowledge that *Beretta* interpreted this holding to mean that the "right to petition exists in the presence of an underlying cause of action and is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action." *See* Mem. at 18, *quoting City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir. 2008). New York however attempts to stretch *Beretta's* interpretation beyond its application.

In *Beretta*, New York City challenged the Protection of Lawful Commerce in Arms Act, which eliminated as a cause of action any claim against manufacturers, distributors, dealers, and

21

importers of firearms for damages stemming from "the misuse of firearms by third parties, including criminals." *See Beretta*, 524 F.3d at 397; 15 U.S.C. § 7901. Congress recognized that entities engaging in lawful business practices protected by the Second Amendment, "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." *See* 15 U.S.C. § 7901(a)(1-5). Congress found that these claims, amongst other things, are "an abuse of the legal system," and "are based on theories without foundation in hundreds of years of the common law and jurisprudence of the United States and do not represent a bona fide expansion of the common law." *Id.* § 7901(a)(6-7). Accordingly, Congress abolished these claims as cognizable causes of action. *See Id.* § 7901(b) ("Purposes"). As such, any then-pending cause of action which fell into the now-proscribed categories, were dismissed. *See Id.* § 7902(b). Accordingly, the Second Circuit held that because the City of New York no longer *had* an "underlying cause of action" to adjudicate as that claim no longer *existed*, the City was not denied access to the courts to adjudicate any such cognizable claim. *See Beretta*, 524 F.3d at 397-98.[13]

This case is vastly different. Here, New York passed the New York Drug Dealer Liability Act, which expressly *gave* Plaintiffs a cause of action against those involved in "illegal drug-

---

[13] New York's reliance on *Hammond v. United States*, 786 F.2d 8, 13 (1st Cir. 1986), *see* Mem. at 18, which in any event is not controlling in this matter, is similarly misplaced. There, Congress acted to substitute the United States as the appropriate defendant in "a certain category of tort suits," generally, which relegated the plaintiffs in those claims to remedies provided for by the Federal Tort Claims Act. *See Hammond*, 786 F.2d at 9-10, 12-13. Similar to the Court's holding in *Beretta*, the First Circuit noted that Congress may act, generally, to foreclose certain categories of claims, as there is "no fundamental right to particular state-law tort claims." *See id.* at 13. Here however, the underlying claim at issue was not foreclosed generally speaking, it was only foreclosed against a specific class of plaintiffs. *See* pages 22-23. Indeed *Hammond* noted that there was no "suspect classification involved here," *Hammond*, 786 F.2d at 13, which is precisely was does exist in *this* case as § 25.18(d) only foreclosed claims against Plaintiffs' class, while at the same time not foreclosing the identical claims against other classes of plaintiffs. *See* TAC ¶¶ 4, 11-12, 29, 31.

New York's reliance on *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 91 (2d Cir. 2017), *see* Mem. at 18, is also misplaced, as that addressed long-arm jurisdiction specifically, and the well-established principle that due process does not require states to choose to exercise jurisdiction over out-of-state defendants. *See Friedman*, 884 F.3d at 91.

related operations, from production to retail sales." *See* N.Y. Gen. Oblig. Law §§ 12-102(2) (Definitions); 12-104 (Recovery by personal other than illegal drug users). § 12-104(1)(c) provides as follows: "One or more of the following persons may bring an action for and recover damages caused by use of an illegal drug by an individual: A medical facility, insurer, ***governmental entity***, employer, or other entity that funds a drug treatment program or employee assistance program for the individual drug user." (emphasis added). New York itself *gave* Plaintiffs an "underlying cause of action" to adjudicate in the courts. § 25.18(d) did not eliminate these claims as cognizable claims generally, as Congress had done with respect to the underlying claims in *Beretta*. Rather, it provided that as to a particular *subset* of plaintiffs who brought such claims, they were "extinguished by operation of law," whereas other plaintiffs were permitted to maintain the identical causes of action. *See id.* Unlike *Beretta* where there was simply no claim to adjudicate any longer, here, the "underlying causes of action" still exist as a matter of law, and other plaintiffs are permitted to maintain them. Indeed *Beretta* itself reiterated that "right-of-access concerns are triggered when "official action denies an opportunity to litigate to a *class* of potential plaintiffs," *Beretta*, 524 F.3d at 398 (emphasis added) (cleaned up), *quoting Harbury*, 536 U.S. at 413, which is precisely what § 25.18(d) does—it permits the class of plaintiffs who initiated suit by June 30, 2019, to maintain their claims, while at the same time prohibiting the class of plaintiffs who initiated suit on July 1, 2019 and onward, from maintaining their identical claims.

The Second Circuit reiterated the well-established principle that a "plaintiff's constitutional right of access to the courts is violated where government officials obstruct legitimate efforts to seek judicial redress." *Beretta*, 524 F.3d at 397 (citation and internal quotation marks omitted). In this case, as New York provided plaintiffs with a viable underlying

causes of action, which it seeks to foreclose as to a specific class of plaintiffs only, New York is 'obstructing Plaintiffs' *legitimate* efforts to seek judicial redress.'

### III. PLAINTIFFS ALLEGED A COGNIZABLE FEDERAL SUBSTANTIVE DUE PROCESS CLAIM GIVEN THAT § 25.18(d) RETROACTIVELY EXTINQUISHED TIMLEY-FILED ACTIONS WITHOUT DUE PROCESS

New York does not challenge Plaintiffs' allegations regarding a violation of their substantive due process rights. *See generally* Mem.

As noted, § 25.18(d), which took effect on June 29, 2021, extinguished all claims by government entities against the manufacturer, distributor, or dispenser of opioid products, which were filed after June 30, 2019. The statute, on its face and as applied, retroactively extinguished all claims filed in the prior two years, including Plaintiffs' claims which, at the time, were timely filed on December 10, 2019. *See* TAC ¶¶ 10, 23. When § 25.18(d) took effect, Plaintiffs' claims had already been in litigation for *18 months, see id.*, before they were completely extinguished "by operation of law," without any recourse to Plaintiffs whatsoever.

The TAC alleges that "passed legislation impacted the *substantive rights* of Plaintiffs in that it retroactively extinguished their then pending lawsuits." *See* TAC ¶ 13 (emphasis added). "There exists a presumption against retroactivity based upon elementary considerations of fairness, notice, and conformity." *Id.* ¶ 14. And "[w]ithout a clear expression of legislative purpose justifying retroactivity of the law, such law is *unconstitutional* as it bears no relation to the Defendant herein stated goals." *Id.* ¶ 15 (emphasis added), *see also id.* ¶¶ 7-10.

"It is a fundamental canon of statutory construction that retroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (1998). As Judge Cardozo noted, in language which the Second Circuit quoted

with approval, "[i]t takes a clear expression of the legislative purpose to justify a retroactive application." *See CFCU Cmty. Credit Union v. Hayward*, 552 F.3d 253, 262 (2d Cir. 2009), *quoting Jacobus v. Colgate*, 217 N.Y. 235, 240 (1916).

In addressing a substantive due process challenge to retroactive legislation, courts apply the "legitimate legislative purpose furthered by rational means" test. *See Am. Econ. Ins. Co. v. State*, 30 N.Y.3d 136, 157 (2017) (noting the federal standard), *quoting General Motors Corp. v. Romein*, 503 U.S. 181, 191 (1992). This requires "showing that the retroactive application of the legislation is itself justified by a rational legislative purpose." *Am. Econ. Ins. Co.*, 30 N.Y.3d at 158, *quoting Pension Benefit Guaranty Corporation v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984). "Because [retroactive] legislation presents problems of unfairness that are more serious than those posed by prospective legislation . . . the justifications for prospective legislation may not suffice for the retroactive aspects." *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 375 (2020), *reargument denied sub nom, Raden v. W7879, LLC*, 35 N.Y.3d 1079, 154 N.E.3d 12 (2020) (citations omitted) (alteration in original). Accordingly, "in order to comport with due process, there must be a 'persuasive reason' for the 'potentially harsh' impacts of retroactivity." *Id.*

In this case, while § 25.18(d) contains an explicit two-year retroactive bar on claims *already* filed, the Act is absolutely silent regarding the motive or justification for that retroactive application. *See generally* DE 1 at 13-20 (TAC Ex. A). Simply stated, the text of Act provides no rational legislative purpose, and certainly no "persuasive reason," supporting this retroactive abolishment of claims already in existence for 18 months prior to the Act taking effect.

In a related context, the Supreme Court noted long ago that when "a limitations period is statutorily shortened, or created where none existed before, *Due Process requires* that potential

litigants be afforded a "'reasonable time [ ] for the commencement of an action before the bar takes effect.'" *Bros. v. Florence*, 95 N.Y.2d 290, 295 (2000) (emphasis added), *quoting Terry v. Anderson*, 95 U.S. 628, 632-33 (1877). The Court noted that a statute "is not unconstitutional" only if this bar is "provided." *Terry*, 95 U.S. at 633. In *Bros.*, 95 N.Y.2d at 297, New York shortened the limitations period for non-medical malpractice claims to three years, which took effect immediately. Applying the federal standard, the New York Court Appeals noted that in order to uphold the constitutionality of the "retroactive application of the new statute," the court interprets, as courts have interpreted such similar statutes, as "authorizing suits upon otherwise time-barred claims within a reasonable time after the statute's effective date." *Id.* at 301.

In this case, not only did § 25.18(d) create a retroactive bar on the timeliness of claims, but it completely extinguished, "by operation of law," claims which had *already been timely filed* and pending for 18 months. If due process "required" new statutes effecting limitations period to provide a reasonable time after their effective dates for plaintiffs who had not yet filed suit to do so, due process certainly prohibits New York's conduct in this case, which deemed untimely, and simply extinguished, claims already filed.

IV. **New York violated the New York State Constitution's Home Rule proscriptions given that § 25.18(d), which effects some but not all municipalities, does not bear a reasonable relationship to a stated substantial State-wide concern.**

Finally, New York argues that this Court should not retain supplemental jurisdiction over Plaintiffs' state law claim, and that in any event, that claim should nonetheless be dismissed. As demonstrated below however, New York's arguments lack merit.

Plaintiffs recognize, of course, that in the absent of a cognizable federal claim, a court need not exercise supplemental jurisdiction over a pendent state law claim. *See* Mem. at 18-19. However, as demonstrated above, Plaintiffs have a cognizable federal claim which confers

original jurisdiction on this Court. Accordingly, this Court should exercise its supplements jurisdiction over Plaintiffs' state law claim.

The TAC alleged a pendent state law claim asserting that New York violated Article IX of the New York State Constitution, the "Home Rule," by enacting special laws in violation of State constitutional requirements. *See* TAC ¶¶ 41-45.

Article IX, Section b(2) of the New York Constitution limits the State's ability to enact "special law(s)" effecting some but not all municipal subdivisions in New York. *See* N.Y. Const, art. IX, § 3(d)(1)-(4); *Baldwin Union Free Sch. Dist. v. Cnty. of Nassau*, 105 A.D.3d 113, 118 (2d Dep't 2013), *aff'd*, 22 N.Y.3d 606 (2014) (defining general and special laws). As relevant to this action, the State legislature may only enact a "special law" "on request of two-thirds of the total membership of its legislative body or on request of its chief executive officer concurred in by a majority of such membership," or "on certificate of necessity from the governor reciting facts which in the judgment of the governor constitute an emergency requiring enactment of such law and . . . with the concurrence of two-thirds of the members elected to each house of the legislature." *See* N.Y. Const, art. IX, § 2(b)(2). However, § 25.18(d), which effects some, but not all, municipal subdivisions in New York, *see* TAC ¶¶ 11-12, 23, 25, 44; Mental Hyg. Law § 25.18(d), was passed in violation of that "special law" requirement. *See* TAC ¶¶ 23-25, 41-45.

New York does not argue otherwise, effectively conceding the point. *See* Mem. at 19. Rather, it claims that the Act is not subject to Home Rule limitations because it "bears a reasonable relationship to a substantial State-wide concern." *See id.* (internal quotations omitted).

Plaintiffs acknowledge, as the Court of Appeals held, that legislation that "was enacted in furtherance of and bears a reasonable relationship to a substantial State-wide concern," is not subject to Home Rule restrictions. *See City of New York v. Patrolmen's Benevolent Assn. of City*

*of N.Y.*, 89 N.Y.2d 380, 391 (1996) (PBA I). As the Court of Appeals noted, this requirement "serves 'as a corollary to the constitutional balancing of overlapping local and state interests requiring that the subjects of State concern be *directly* and substantially involved.'" *Greater New York Taxi Ass'n v. State*, 21 N.Y.3d 289, 301 (2013), *quoting PBA I*, 89 N.Y.2d at 391.

However, determining what constitutes a substantial state interest is "dependent on the 'stated purpose and legislative history of the act in question.'" *Greater New York Taxi Ass'n*, 21 N.Y.3d at 302, *quoting PBA I*, 89 N.Y.2d at 392. "In the cases where [the New York Court of Appeals has] found a special law to be unconstitutional, [it has] done so, in part, *because the legislation failed to identify a substantial state interest and/or the legislative history did not support the State's reason for enacting it.*" *Id.* (emphasis added). The "stated purpose and legislative history of the act" controls, and "a court of law cannot inquire into the motives by which law was produced." *City of New York v. State*, 94 N.Y.2d 577, 591 (2000).

In this case, New York Senate Bill 7194, the "ACT to amend the state finance law, the mental hygiene law, and the executive law, in relation to establishing an opioid settlement fund," *see* TAC at 13 (Ex. A) (New York law at issue), "failed to identify" any "state interest" whatsoever, in support of the Act. *See id.* As this Court can plainly see, there is no introduction to the Act, no reason for its enactment, and no explanation, whatsoever, as to the purpose or reason for the amendments to the various laws at issue. *See generally id.* at 13-20 (Ex. A). While New York makes broad-stroked arguments regarding the Act facilitating statewide opioid settlements, and it throws out numbers regarding how much money the State will receive over the years to come, *see* Mem. at 19, as a matter of law this Court may not consider those arguments. *See supra* pages 6-7. As noted, these "facts" were submitted in a Declaration by New York's attorney in this matter, which he claims were "based upon my personal knowledge and/or

review of the documents in the possession of OAG," *see* Amer Decl. ¶¶ 1-2, and are outside the

four corners of the complaint, *see generally* TAC, or the documents which this Court may

consider in this Rule 12(b)(6) motion. *See supra* pages 6-7; *Hu v. City of New York*, 927 F.3d 81,

88 (2d Cir. 2019) ("In deciding a Rule 12(b)(6) motion, the court may consider 'only the facts

alleged in the pleadings, documents attached as exhibits or incorporated by reference in the

pleadings, and matters of which judicial notice may be taken.'") (alteration in original),

*quoting Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993).[14] Additionally, as the

Court of Appeals noted in *PBA I*, a case New York now relies on, *see* Mem. at 19, "drily logical

[ ] asserted facts" regarding a claimed substantial State-wide concern *cannot* be considered

"*without foundation in the record*." *PBA I*, 89 N.Y.2d at 392 (emphasis in original).

Furthermore, even if the Act did identify a substantial State-wide concern (which it did

not), it nonetheless does not indicate how the challenged legislation bears a reasonable

relationship to that concern. *See PBA I*, 89 N.Y.2d at 391; *see generally* TAC at 13-20 (Ex. A).

§ 25.18(d) took effect June 29, 2021 provides that "[a]ny action filed by a government

entity after June thirtieth, two thousand nineteen asserting released claims against a

manufacturer, distributor, or dispenser of opioid products shall be extinguished by operation of

law." Nothing in the Act indicates the purpose behind this two-year retroactive extinguishing of

claims, *or* how it is *reasonably* related to some unstated state-wide concern. *See generally* TAC

at 13-20 (Ex. A). Indeed, New York does not even identify any such reasonable relation now, in

its Declaration which this Court may nonetheless not consider.[15] And indeed there is none. As

---

[14] New York did not even argue that this Court *may* consider the 'factual' assertions contained in Mr. Amer's Declaration—it merely presented these claimed 'facts' to the Court. *See generally* Mem. Should New York raise additional arguments on this point in its reply papers, those arguments must be disregarded. *See supra* page 4.

[15] While New York claims that retroactively extinguishing claims already filed would allow for "the maximum funds possible under opioid settlements" because it would "enable[e] New York to deliver claim releases to the settling defendants for 100% of its subdivisions," *see* Mem. at 1, this bold assertion is based on the Declaration this

the TAC alleges, New York selected an arbitrary and capricious date by when to extinguish properly-filed and already-pending claims, which merely served to allow Nassau and Suffolk County to profit over the towns that make up those counties, as their claims were not extinguished. *See* TAC ¶¶ 23, 28-29, 40. There is absolutely no reasonable justification for New York deciding that claims filed June 30, 2019 *may* proceed, while claims filed a mere five months and 10 days later, on December 10, 2019, *see id.* ¶ 10, may *not* proceed. Or, as more directly relevant to the analysis, extinguishing claims filed July 1, 2019 and onward, while permitting claims filed on June 30, 2019, does not bear a reasonable relationship to any *stated* substantial State-wide concern, and indeed the text of the Act is entirely silent on this issue. Accordingly, New York violated the Home Rule provisions of the New York Constitution.

## CONCLUSION

This Court has subject-matter jurisdiction given that Plaintiffs alleged cognizable federal claims. And as Plaintiffs' federal and pendent State law claims are sufficiently alleged, this Court should deny New York's motion to dismiss in its entirety.

Dated: West Islip, New York
      July 21, 2022

                    TATE, GROSSMAN & KELLY
                    *Attorneys for Plaintiffs*
                    1248 Montauk Hwy
                    West Islip, New York 11795

      By:    *s/Mark Tate*
               Mark Tate, Esq.

CC: Counsel for Defendant via ECF

---

Court cannot consider, is not contained in the Act itself, and regardless, is unsound. New York could have 'delivered' these claims in a number of other ways. For example, it could have settled with the Towns regarding these claims; it could have provided for the allocation of a proportional percentage of funds to these Towns reflective of their claims; it could have simply permitted these Towns to proceed on their claims as it did with respect to claims filed approximately five months prior, on June 30, 2019.