UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>*This document relates to:*<br>**Track Three Cases** | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

**PLAINTIFFS' RESPONSE TO PHARMACY DEFENDANTS' MOTION TO APPROVE BOND AND STAY EXECUTION OF JUDGMENT PENDING APPEAL**

Defendants request a stay of execution of the monetary portion of the Court's judgment (Dkt. #4614) pending their appeal to the Sixth Circuit Court of Appeals and potential appeal to the United States Supreme Court.[1] They seek to obtain the stay by providing a bond in the amount of $86.7 million, which "reflects the entire first two years of payments due on October 1, 2022, under the monetary portion of the Court's judgment." Motion at p. 3. Alternatively, Defendants propose a bond in the amount of $95.4 million to the extent the Court determines that additional security is necessary to account for costs and interest. *Id*. at pp. 3-4 n.2.

Plaintiffs do not oppose a stay of execution of the monetary portion of the judgment pending appeal upon the posting of an appropriate bond. However, the bond amount suggested by Defendants is too low. It is reasonably likely that before the appellate process has concluded, several payments under the judgment will come due. Accordingly, Plaintiffs request that Defendants be required to post a bond in the amount of $173.5 million (constituting Defendants' first three payments under the judgment) to secure the stay.[2]

---

[1] Defendants' motion seeks only to stay the *monetary* portion of the judgment; it does not request a stay of the portion of the judgment dealing with injunctive relief. Motion at pp. 1, 6. As discussed herein, Plaintiffs do not oppose a stay of the *monetary* portion of the judgment so long as a sufficient bond is posted. However, Plaintiffs do and will oppose any attempt to stay execution of the portion of the judgment dealing with injunctive relief pending appeal.

[2] Plaintiffs' consent to a $173.5 million bond is based on the current financial condition of Defendants. To the extent the financial condition of one or more Defendants changes, Plaintiffs reserve the right to ask the Court to reconsider the amount of the bond.

**ARGUMENT**

Rule 62(b) of the Federal Rules of Civil Procedure allows a party to obtain a stay after judgment is entered "by providing a bond or other security." FED. R. CIV. P. 62(b).  The purpose of the bond is two-fold: it "preserve[s] the status quo for the sake of the appellant," while also protecting the appellee "from the risk of a later uncollectible judgment" and compensating it "for the deprivation of the immediate benefits of its judgment." *Tri County Wholesale Distributors, Inc. v. Labatt USA Operating Co., LLC*, 311 F.R.D. 166, 172, 176 (S.D. Ohio 2015) (citation omitted).  *See also Integrated Design Engr. and Analysis Services, Inc. v. Giddy Holdings, Inc.*, 5:20-CV-00563, 2021 WL 5206553, at *2 (N.D. Ohio Nov. 9, 2021) ("*Integrated II*"); *Sel. Ins. Co. of the S.E. v. RLI Ins. Co.*, 5:12CV2126, 2017 WL 366296, at *1 (N.D. Ohio Jan. 25, 2017).  Although courts have discretion in determining the amount of the bond, because of Rule 62(b)'s dual protective role, a full bond "should almost always be required" and "should only be excused where the appellant has demonstrated the existence of extraordinary circumstances." *Allied Erecting & Dismantling Co., Inc. v. U.S. Steel Corp.*, 4:12-CV-1390, 2016 WL 1106854, at *14 (N.D. Ohio Mar. 21, 2016) (citation omitted).[3]  The appellant "bears the burden to 'objectively demonstrate the reasons for' a modified bond requirement, and '[t]he opposing party has no obligation to introduce evidence to the contrary.'" *Liang v. AWG Remarketing, Inc.*, 2:14-CV-99, 2017 WL 11634752, at *2 (S.D. Ohio Oct. 30, 2017) (citation omitted).  Finally, even in cases where the "appellant persuades the court that a full bond is unnecessary, the court typically requires a substitute form of judgment guarantee." *Tri County*, 311 F.R.D. at 172.  *See also Liang*, 2017 WL 11634752, at *2 (same); *Monks*, 2012 WL 1598294, at *3.

---

[3]  *See also Integrated Design Engr. and Analysis Services, Inc. v. Giddy Holdings, Inc.*, 5:20-CV-00563, 2021 WL 4459407, at *1 (N.D. Ohio Sept. 29, 2021) ("*Integrated I*"); *Sel. Ins.*, 2017 WL 366296, at *2; *Sabatine v. Paul Revere Life Ins. Co.*, 4:09CV1480, 2012 WL 13026787, at *1 (N.D. Ohio June 22, 2012); *Sofco Erectors, Inc. v. Trustees of Ohio Operating Engineers Pension Fund*, 2:19-CV-2238, 2021 WL 858728, at *2 (S.D. Ohio Mar. 8, 2021); *Monks v. Long Term Disability Benefits Plan for Certain Hourly Employees of Champion Intern. Corp. No. 703*, 1:08-CV-752, 2012 WL 1598294, at *2 (S.D. Ohio May 7, 2012).

Here, Plaintiffs are not requesting that Defendants post a bond for the full amount of the judgment ($650.6 million). Rather, they ask that Defendants post a bond in the amount of the portion of the judgment that is reasonably likely to come due during the pendency of the appeal. Defendants acknowledge that the Sixth Circuit appeal alone is likely to take at least two years. Motion at p. 3. And they further acknowledge that if they lose their Sixth Circuit appeal, they anticipate appealing to the United States Supreme Court. *Id.* at pp. 1, 3-4. Thus, it is likely that the appellate process in this case will take three years or longer to conclude. The bond amount should reflect all payments that would have otherwise been made during the entire appellate time period. In accordance with the Court's judgment, Defendants are required to make payments of ~$86.7 million on October 1, 2022, ~$43.4 million on October 1, 2024, and ~$43.4 million on October 1, 2025. Dkt. #4614 (Final Judgment) at p. 2. Plaintiffs therefore request that Defendants be required to post a bond in the amount of $173.5 million in order to stay execution of the $650.6 million judgment pending appeal.

Defendants argue that even if the case is appealed to the Supreme Court, the $86.7 million bond amount is sufficient because their "uncontested ability to pay . . . would prevent any harm to Plaintiffs from those additional proceedings." Motion at p. 3.[4] Defendants further contend that, under these circumstances, the Court would be justified in ordering a stay without requiring any bond at all. *Id.* at pp. 4-5. As evidence of their "uncontested ability to pay" they point to Walmart's recent financial statement showing that its annual revenues in fiscal 2022 were ~$573 billion. *Id.* at p. 5 & n.3. They offer no evidence of Walgreens' or CVS's financial condition.

As a preliminary matter, the fact that Walmart's current financial statements show that is solvent today does not ensure that it will remain solvent in the future. "[A]s is well known, financial statements are merely a look back and not a look forward. . . . [W]hat may clearly appear

---

[4] Alternatively, they suggest that the Court "could consider ordering a second bond if a later payment becomes due while proceedings continue." *Id.* However, as discussed herein, it is reasonably likely that multiple payments will come due before the appellate process has concluded. Requiring a $173.5 million bond serves the goal of Rule 62(b) by ensuring Plaintiffs' ability to recover those payments in full. *See, e.g., Integrated II*, 2021 WL 5206553, at *2; *Monks*, 2012 WL 1598294, at *3.

to be a financially healthy company one day, may become a bankrupt company the next day." *Monks*, 2012 WL 1598294, at *3 (quoting *Thomas & Marker Const., Co. v. Wal-Mart Stores, Inc.*, 3:06-CV-406, 2009 WL 1119582, at *28 (S.D. Ohio Apr. 27, 2009) (denying Walmart's request to waive bond requirement despite evidence from its financial statements showing its ability to pay the judgment)). Defendants are certainly large companies, but they are also being sued in hundreds (if not thousands) of opioid-related lawsuits, most of which are seeking hundreds of millions, if not billions, in abatement costs. Other large companies have sought bankruptcy protection under similar circumstances. *See, e.g.,* Dkt. #4513 (Ps' Closing Brief) at p. 25 & n.52. Plaintiffs should not have to bear the risk that Defendants are unable to pay the full judgment in the future. *See Monks*, 2012 WL 1598294, at *3 ("In this uncertain financial environment, the risk that Defendant might not have the ability to pay the judgment is rightly placed with Defendant, not with Plaintiff.").[5]

Regardless, courts in this District, including this Court, have repeatedly rejected arguments that a full bond should be waived merely because the defendant has the ability to pay the judgment:

> The requirement of a bond balances and protects the parties' interests and is not a mere formality that should be waived simply because the judgment debtor may have the financial wherewithal to pay the judgment if it does not prevail on appeal. Thus, courts in this District generally decline to waive the full supersedeas bond requirement, even where a party clearly has the ability to pay. Indeed, numerous courts in this District have held that even corporations with millions or billions of dollars in annual revenues cannot escape the full bond requirement, even for much smaller judgments than the one at issue here.

*Allied Erecting*, 2016 WL 1106854, at *15 (cleaned up; internal citations omitted). *See also U.S. ex rel. Gonter v. Gen. Dynamics Marine Sys. Div. Elec. Boat*, 4:01 CV 634, 2006 WL 3783140, at *3 (N.D. Ohio Dec. 21, 2006) (Polster, J.) ("Shipbuilders are not entitled to an unsecured stay by right simply because they have immense financial resources. The holding in *Arban* does not mandate that a wealthy movant is *entitled* to an unsecured stay, only that a movant's financial

---

[5] This is particularly true given that Defendants have not even suggested that posting a larger bond would impose an undue financial burden on them. *See, e.g., Integrated I*, 2021 WL 4459407, at *1; *Sel. Ins.*, 2017 WL 366296, at *2.

stability is one element a district court may consider in deciding whether the grant an unsecured stay."; to conclude otherwise "would obliterate Rule 62(d)'s[6] dual protection functions; Rule 62(d) not only establishes the appellant's right to a stay, but also the appellee's right to have a bond posted securing the stay").[7] The cases cited by Defendants where the court issued a stay of a monetary judgment without requiring bond are distinguishable.[8]

The Court would be well within its rights to require Defendants to post a bond in the full amount of the judgment ($650.6 million). Plaintiffs, however, are only asking for a bond of $173.5

---

[6] Under a prior version of Rule 62, the provision dealing with the posting of a bond to secure a stay fell under subsection (d) rather than subsection (b).

[7] *See also Sel. Ins.*, 2017 WL 366296, at *2 ("While RLI paints a portrait of financial stability, it fails to convince the Court that the posting of the bond would pose an undue financial burden or that the Court should not protect the interests of Selective—the prevailing party in this action. Accordingly, in recognition of the dual purposes of the bond, the Court finds that the posting of a full *supersedeas* bond is required and not excused."); *Sabatine*, 2012 WL 13026787, at *1 ("'[C]ases have required bonds even when the defendant clearly had the ability to pay.' 'In this uncertain financial environment, however, the risk that it would not have that ability is rightly placed with the appellant, not the appellee.'"; "[C]ounsel relies solely upon his ability to pay the sanctions and his willingness to place those funds in some separate account. As noted above, relieving the obligation to post a bond through solely a review of finances would obliterate the protections built into Rule 62(d).") (internal citations omitted); *see also Buckhorn Inc. v. Orbis Corp.*, 3:08-CV-459, 2014 WL 4377811, at *2 (S.D. Ohio Sept. 3, 2014) ("[M]ost courts have required bonds even when the defendant clearly had the ability to pay."); *Monks*, 2012 WL 1598294, at *3 ("The fact that Defendant is administered by a Fortune 500 company is not enough to secure waiver of the bond. In *Thomas & Marker Constr., Co. v. Wal-Mart Stores, Inc.*, this Court denied Wal-Mart's request to waive the bond requirement, even after Wal-Mart, a Fortune 500 company, presented its financial statements to show its ability to pay the judgment."); *Thomas & Marker*, 2009 WL 1119582, at *28 (rejecting Walmart's argument that no bond was necessary because its financial statements demonstrated that plaintiff was in no danger of being unable to collect on its judgment").

[8] *See Arban v. W. Pub. Corp.*, 345 F.3d 390, 400, 409 (6th Cir. 2003) (district court did not abuse its discretion in staying execution of ~$225,000 judgment in employment discrimination action; no indication that defendant was involved in numerous other lawsuits that might impact its ability to pay the judgment in the future); *thyssenkrupp Materials, LLC v. Triumph Group, Inc.*, 20-CV-11087, 2022 WL 983158, at *1-3 & n.1 (E.D. Mich. Mar. 30, 2022) (staying execution of ~$2.9 million arbitral award without requiring bond; court distinguished Northern District of Ohio case cited by plaintiff, noting that case "rested, in part, on that court's recognition that 'courts in [the Northern District of Ohio] generally decline to' grant stays without requiring bond 'even where a party clearly has the ability to pay[.]'" whereas, "courts in [the Eastern] District [of Michigan] do not appear to apply a similar general rule") (citation omitted); *Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 756, 760-61 (D.C. Cir. 1980) (in antitrust action, district court did not abuse its discretion in granting stay on appeal without requiring bond where damage award was $102,000 (plus attorneys' fees and costs yet to be determined) and both parties had appealed on the merits).

5

million, which will cover the three payments that are likely to come due before the appeal is fully concluded.  This amount satisfies the dual purpose of Rule 62(b) and would not impose any undue financial burden on Defendants.

## CONCLUSION

For these reasons, Plaintiffs request that the Court require Defendants to post a bond in the amount of $173.5 million in order to secure a stay of execution of the monetary judgment pending appeal.

Dated:  September 9, 2022

>
> Respectfully submitted,
>
> Jayne Conroy
> SIMMONS HANLY CONROY
> 112 Madison Avenue, 7th Floor
> New York, NY 10016
> (212) 784-6400
> (212) 213-5949 (fax)
> jconroy@simmonsfirm.com
>
> Joseph F. Rice
> MOTLEY RICE LLC
> 28 Bridgeside Blvd.
> Mt. Pleasant, SC  29464
> (843) 216-9000
> (843) 216-9290 (Fax)
> jrice@motleyrice.com
>
> Paul T. Farrell, Jr., Esq.
> FARRELL & FULLER LLC
> 1311 Ponce de Leone Ave., Suite 202
> San Juan, PR  00907
> (304) 654-8281
> paul@farrellfuller.com
>
> *Plaintiffs' Co-Lead Counsel*

W. Mark Lanier
M. Michelle Carreras
LANIER LAW FIRM
10940 W. Sam Houston Pkwy N., Ste 100
Houston, TX  77064
(713) 659-5200
(713) 659-2204 (Fax)
wml@lanierlawfirm.com
mca@lanierlawfirm.com

*Trial Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

Frank L. Gallucci
PLEVIN & GALLUCCI CO., L.P.A.
55 Public Square, Suite 222
Cleveland, OH 44113 (216)
861-0804
(216) 861-5322 (Fax)
FGallucci@pglawyer.com

Hunter J. Shkolnik
Salvatore C. Badala
NAPOLI SHKOLNIK
270 Munoz Rivera Avenue, Suite 201
Hato Rey, Puerto Rico 00918
(787) 493-5088, Ext. 2007
hunter@napolilaw.com
sbadala@napolilaw.com

*Counsel for Plaintiffs Lake County and Trumbull County, Ohio*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

> */s/Peter H. Weinberger*
> Peter H. Weinberger