**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

-------------------------------------------------------------x
                                                             :
**IN RE: NATIONAL PRESCRIPTION**                             :
**OPIATE LITIGATION**                                        :  MDL No. 2804
                                                             :
This document relates to:                                    :  Hon. Dan Aaron Polster
                                                             :
Case No. 1:20-op-45281                                       :
-------------------------------------------------------------x

_____


**POSITION STATEMENT OF THE STATE OF MINNESOTA, BY ITS
ATTORNEY GENERAL, KEITH ELLISON, IN SUPPORT OF SETTLING
DEFENDANTS' MOTION TO DISMISS CLAIMS FILED BY NON-
PARTICIPATING MINNESOTA SUBDIVISION AS BARRED BY
STATUTE**

_____

KEITH ELLISON
Attorney General
State of Minnesota

James Canaday
Deputy Attorney General

Eric Maloney
Evan Romanoff
Assistant Attorneys General

445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
(651) 757-1021
eric.maloney@ag.state.mn.us

*Attorneys for the State of Minnesota*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ........................................................................................................................2

I.      MINNESOTA JOINS NATIONAL SETTLEMENTS WITH DISTRIBUTORS AND JANSSEN. ...............2

II.     MINNESOTA'S RESPONSE TO THE OPIOID CRISIS. ..................................................................2

        A.     The Minnesota Memorandum of Agreement. .........................................................2

        B.     The Minnesota Opioid Legislation. .......................................................................3

ARGUMENT .............................................................................................................................5

I.      PLAINTIFF'S CLAIMS AGAINST SETTLING DEFENDANTS ARE BARRED BY MINNESOTA STATUTES SECTION 3.757. ....................................................................................5

II.     MINNESOTA'S SETTLEMENT FUNDS CAN BE USED TO REMEDY THE HARMS OF NAS INDIVIDUALS. ...................................................................................................................8

CONCLUSION .........................................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

CASES

*Board of Education of Thornton Township High Schools (IL), et al. v. Cephalon, Inc., et al.*
Case No. 1:20-op-45281(N.D. Ohio Dec. 16, 2020) ................................................................1, 5

*State of Minnesota v. Johnson & Johnson et al.*
No. 62-CV-22-3970 (Ramsey Cty. Dist. Ct. July 20, 2022).........................................................7

*State of Minnesota v. McKesson Corp., et al.*
No. 62-CV-22-4001 (Ramsey Cty. Dist. Ct. July 20, 2022).........................................................7

STATUTES

MINN. STAT. § 3.757 ...............................................................................................PASSIM
MINN. STAT. § 16A.151 ......................................................................................................... 3
MINN. STAT. § 256.042.......................................................................................................... 4
MINN. STAT. § 466.01 ........................................................................................................... 6
MINN. STAT. § 645.17 ........................................................................................................... 8

OTHER AUTHORITIES

H. FILE 400, 91ST LEG., REG. SESS. (MINN. 2019) ........................................................ 3
S. FILE 4025, 92ND LEG., REG. SESS. (MINN. 2022) ................................................... 1, 4

## PRELIMINARY STATEMENT

The State of Minnesota by its Attorney General, Keith Ellison ("Minnesota"), respectfully submits this Position Statement in support of Settling Defendants' Motion to Dismiss (Dkt. No. 4612) (the "Motion") the claims of a non-participating Minnesota subdivision as barred by Minnesota Statutes section 3.757 (the "Statute"), in accordance with the Court's request from its August 25, 2022, docket entry.

The Motion relies on the Statute, which the Minnesota Legislature passed as part of opioid response legislation[1] enacted by Minnesota Governor Tim Walz in May 2022.  An essential piece of this legislation was promulgating a claims bar to ensure that no Minnesota government subdivision could bring new claims *or continue to pursue existing claims* against the Settling Defendants, which would enable Minnesota to maximize its recovery under the settlements' payment structure.

The only Minnesota political subdivision with remaining claims against the Settling Defendants is Plaintiff Minnetonka School District.[2]  Because the Statute explicitly extinguishes the Plaintiff's claims as a matter of law, the Court should grant the Settling Defendants' Motion.

---

[1] S. File 4025, 92nd Leg., Reg. Sess. (Minn. 2022) (enacted as 2022 Minn. Laws. ch. 53).  A copy of the session law is attached as **Exhibit A.**

[2] Through the Settling Defendants' motion, Settling Defendants only seek dismissal of the claims brought by plaintiff Minnetonka School District, which is a Minnesota municipality subject to the statutory bar.  *See* Settling Defendants' Motion at 2.  Plaintiff's suit against Settling Defendants is contained in *Board of Education of Thornton Township High Schools (IL), et al. v. Cephalon, Inc., et al.*, Case No. 1:20-op-45281 (filed Dec. 16, 2020).  This is a class action case filed by plaintiff school districts from multiple states, with Minnetonka being the only Minnesota school district who is a named class representative in the suit.

# BACKGROUND

## I.  MINNESOTA JOINS NATIONAL SETTLEMENTS WITH DISTRIBUTORS AND JANSSEN.

On August 20, 2021, the Minnesota Attorney General's Office announced that it was joining national opioid settlements (the "Settlements") with pharmaceutical distributors McKesson, Cardinal Health, and AmerisourceBergen, and opioid manufacturer Johnson & Johnson—the Settling Defendants who brought the instant Motion.  A key feature of the Settlements is that the amount paid to each state depends, in part, on the level of participation by that state's subdivisions, with the maximum payment earned only by achieving 100% subdivision participation in that state.

After Minnesota joined the Settlements, subdivisions had the opportunity to join the Settlements by executing participation forms and, for litigating subdivisions, dismissing their ongoing lawsuits.  The Attorney General's Office, in conjunction with state agencies and local government groups, led a concerted public campaign to encourage Minnesota subdivisions (both litigating and non-litigating) to sign on to the Settlements.  Through this effort, Minnesota achieved nearly complete participation in the Settlements from Minnesota subdivisions.[3]  By early 2022, the only Minnesota subdivision that had not joined the Settlements and still had active litigation against the Settling Defendants was Plaintiff Minnetonka School District.

## II.  MINNESOTA'S RESPONSE TO THE OPIOID CRISIS.

### A.  The Minnesota Memorandum of Agreement.

As Minnesota was working to secure sign-on from its subdivisions, state and local government stakeholders were also working together to create a Memorandum of Agreement ("MOA") that would dictate the division and uses of funds within the state from the Settlements.

---

[3] All 87 Minnesota counties and 145 municipalities joined the Settlements, including every city with a population greater than 10,000.

After several months of work, the MOA was completed and executed by January 24, 2022, with a later reporting addendum being finished on May 2, 2022.[4]

The MOA provides that every Minnesota county and every Minnesota city with a population greater than 30,000 is eligible for a direct share from the settlement.[5] If a specific subdivision does not qualify to receive a distribution from a statewide opioid settlement, their residents may nevertheless benefit from opioid treatment and prevention measures undertaken at the state or county level using settlement funds distributed to the state or counties in which they reside. Moreover, smaller cities, towns, villages, and special districts—including Plaintiff Minnetonka School District and other Minnesota school districts—are eligible to receive grants from the subdivisions in which they are located out of the direct payments those subdivisions receive, or from the state's opioid response grantmaking process.

**B.    The Minnesota Opioid Legislation.**

The Minnesota Legislature was one of the first state legislatures in the country to take decisive action in fighting the opioid crisis by passing landmark opioid response legislation in May 2019.[6] Among other things, this legislation placed opioid-related monies into a separate, restricted opioid fund, as an exception to Minnesota law that monies otherwise recovered on behalf of the state must be placed into the state's General Fund for unrestricted appropriation by the Legislature. *See* Minn. Stat. § 16A.151. The legislation also created the Minnesota Opioid Epidemic Response Advisory Council— a new state council responsible for deciding how to spend Minnesota's opioid

---

[4]  Minnesota Opioids State-Subdivision Memorandum of Agreement, *available at* https://www.ag.state.mn.us/Opioids/docs/MN_MoA.pdf; Minnesota Opioids State-Subdivision Memorandum of Agreement Reporting and Compliance Addendum*, available at* http://www.ag.state.mn.us/Opioids/docs/MN_MOA_ReportingAddendum.pdf.

[5] Minnesota Opioids State-Subdivision Memorandum of Agreement at § II.I.

[6] H. File 400, 91st Leg., Reg. Sess. (Minn. 2019) (enacted as 2019 Minn. Laws. ch. 63).

3

litigation recoveries and revenue earned from opioid manufacturer and distributor fees. *See* Minn. Stat. § 256.042.

The MOA, however, contemplated additional changes to state law in order to implement the MOA and the Settlements.[7] Accordingly, during the 2022 Minnesota legislative session, state and local stakeholders asked the Minnesota Legislature to pass new legislation to update the state's opioid epidemic response framework in conjunction with the Settlements and the MOA.

The resulting legislation[8] made several changes to the state's opioid framework to accommodate the MOA and the Settlements, including allowing direct payments of settlement proceeds to subdivisions, enabling the immediate transfer of settlement funds into the state opioid response fund, and implementing reporting requirements for Minnesota subdivisions.

Finally, to ensure that Minnesota would receive the maximum level of payment from the Settlements, state and local stakeholders urged the Legislature to bar claims by Minnesota subdivisions against the Settling Defendants for opioid-related claims. The Legislature included this statutory bar in the enacted legislation. *See* Minn. Laws ch. 53, section 1 (2022). Plaintiff Minnetonka School District was aware of the legislation prior to its enactment. In fact, Attorney General Ellison sent a letter to Plaintiff on March 21, 2022—two months prior to the legislation's enactment—encouraging the school district to join the settlements and informing the school district that

> the Minnesota Legislature has introduced bipartisan legislation that would release pending opioid lawsuits and bar future opioid lawsuits by Minnesota governmental entities, including opioid lawsuits by school districts. This legislation would ensure that Minnesota is eligible to earn full bonus payments under the settlements regardless of [Minnetonka School District]'s voluntary participation.

---

[7] Minnesota Opioids State-Subdivision Memorandum of Agreement at §§ II.C and II.D.

[8] S. File 4025, 92nd Leg., Reg. Sess. (Minn. 2022) (enacted as 2022 Minn. Laws. ch. 53).

4

## ARGUMENT

I.   **PLAINTIFF'S CLAIMS AGAINST SETTLING DEFENDANTS ARE BARRED BY MINNESOTA STATUTES SECTION 3.757.**

Plaintiff's claims against the Settling Defendants are extinguished by the Statute.  In fact, Minnesota's need to extinguish Plaintiff's claim is the primary reason why the Statute exists.  The chief author of the bill in the Minnesota Senate, State Senator Julie Rosen, told a Minnesota news publication that "[o]nly the Minnetonka School District did not sign onto the settlement," and that "[t]he bill would prevent the district from pursuing litigation against the four plaintiffs, though it could still get money from the settlement."[9]  By passing the Statute and quieting all opioid-related claims again the Settling Defendants by Minnesota subdivisions, Minnesota is slated to receive millions of dollars in additional settlement funds.

The statutory language confirms the Legislature's intent and undoubtedly bars Plaintiff's suit.  The Statute provides that "[a]ny claim in pending opioid litigation filed by a municipality against a settling defendant that is within the scope of a released claim is extinguished by operation of law."  Minn. Stat. § 3.757, subd. 2(b).[10]  Plaintiff's class action suit names all four Settling Defendants and alleges unlawful conduct related to their marketing, sale, and distribution of opioids.  *See* Class Action Complaint, *In re Nat'l Prescription Opiate Litig.*, Case No. 1:20-op-45281 (N.D. Ohio Dec. 16, 2020) (Dkt. No. 1).  An explanation of the Statute's terms with regard to Plaintiff's suit show the Statute's obvious applicability:

---

[9] Peter Callaghan, *Legislature looks to get money from national opioid settlement moving to Minnesota cities and counties*, MinnPost (Apr. 4, 2022), https://perma.cc/K6K6-T5KQ.

[10] The Statute further gives the Minnesota Attorney General the authority to appear and intervene in opioid litigation and "release with prejudice any released claims."  Minn. Stat. § 3.757, subd. 2(c).

- "Opioid litigation" means "any civil litigation [or] demand . . . alleging unlawful conduct related to the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids."  Minn. Stat. § 3.757, subd. 1(c).  Plaintiff's lawsuit against the Settling Defendants is "opioid litigation" under this definition.

- The definition of "municipality" is not limited to cities and counties, and includes "special district[s]" and "school district[s], however organized."  Minn. Stat. § 3.757, subd. 1(b) (citing Minn. Stat. § 466.01, subd. 1).  Plaintiff is a Minnesota school district that clearly comes within this definition of "municipality."

- "Settling defendant" is defined to cover the four Settling Defendants that brought this Motion and are named defendants in Plaintiff's complaint.  Minn. Stat. § 3.757, subd. 1(e).

Plaintiff does not contest the application of these terms to its lawsuit. Instead, it misreads the Statute as only applying to municipalities that already released their own claims.  However, the Statute does not require a municipality to have itself released claims to be barred by the statute; rather, it ties the scope of the statutory claims bar to the claims released *by the Attorney General* and applies that bar to all Minnesota subdivisions regardless of whether they have already released claims.

The Statute defines "released claim" to mean "any cause of action or other claim that has been released in a statewide opioid settlement agreement, including matters identified as a released claim as that term or a comparable term is defined in a statewide opioid settlement agreement." Minn. Stat. § 3.757, subd. 1(d).  "Statewide opioid settlement agreement," in turn, means "an agreement, including consent judgments, assurances of discontinuance, and related agreements or

6

documents, between the attorney general, on behalf of the state, and a settling defendant, to provide or allocate remuneration for conduct related to the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids."  Minn. Stat. § 3.757, subd. 1(f).

The State's execution of the Settlements in Minnesota properly constitute "statewide opioid settlement agreement[s]" with the Settling Defendants to create and define the scope of "released claim[s]" barred by section 3.757.  After the Settlements took effect on April 2, 2022, the Attorney General's Office filed Complaints and Consent Judgments[11] executing the Settlements in Minnesota in July 2022.  The nationwide settlement agreements attached to these filings provide a lengthy definition of "released claims" and related "covered conduct"[12] that spell out the scope of claims released by the Attorney General's Office and other settlement participants.  Moreover, the state-court-approved Consent Judgments specifically provide that, by virtue of the release language in the Settlements and by operation of Minnesota Statutes section 3.757, the Attorney General's Office, on behalf of the State of Minnesota and *on behalf of all Minnesota subdivisions and districts*, is releasing the Settling Defendants from the opioid-related claims described in the national settlement agreements.[13]

---

[11] Consent Judgment, *State of Minnesota v. McKesson Corp., et al.*, No. 62-CV-22-4001 (Ramsey Cty. Dist. Ct. July 20, 2022) ("Distributor Consent Judgment"), *available at* https://www.ag.state.mn.us/Opioids/docs/Distributors_ConsentJudgment.pdf; Amended Consent Judgment, *State of Minnesota v. Johnson & Johnson et al.*, No. 62-CV-22-3970 (Ramsey Cty. Dist. Ct. July 20, 2022) ("Janssen Consent Judgment"), *available at* https://www.ag.state.mn.us/Opioids/docs/Janssen_ConsentJudgment.pdf.

[12] Distributor Consent Judgment, Ex. A, at §§ I.O and I.GGG; Janssen Consent Judgment, Ex. A, at §§ I.16 and I.60.

[13] *See* Distributor Consent Judgment ¶ 11 ("[T]he Settling Distributors . . . are, as of the Effective Date, hereby released from any and all Released Claims of . . . (b) any public entities, public
(Footnote Continued on Next Page)

Accordingly, the Statute is clear that the "released claims" a municipality is barred from asserting are the claims *already released by the Attorney General* in the statewide opioid settlement agreement. Whether a municipality voluntarily joined the Settlements and released its claims is immaterial because the Statute predicates the claims bar on the Attorney General's release, not on that municipality's own release. To read the Statute otherwise is to render it meaningless—extinguishing claims that have already been released. Such a reading is untenable under Minnesota's rules of statutory construction, which instruct courts to presume that the Legislature creates effective law and does not intend absurd or unreasonable results. Minn. Stat. § 645.17(1) and (2).

Taken as a whole, the national settlement agreements, Minnesota's court-approved Consent Judgments, and Minnesota Statutes section 3.757 combine to bar Minnesota municipalities, including Minnetonka School District, from initiating or continuing litigation against the Settling Defendants if the claims are within the scope of claims released by the Attorney General. Plaintiff's claims are extinguished by operation of Minnesota law.

## II.    MINNESOTA'S SETTLEMENT FUNDS CAN BE USED TO REMEDY THE HARMS OF NAS INDIVIDUALS.

One of the goals of Minnesota's opioid abatement strategy is inclusion and collaboration.[14] Minnetonka and other school districts in Minnesota can, and should, work with the state's opioid council and the counties and cities in Minnesota that are receiving distributions to ensure that school district needs related to opioid abatement are addressed as part of Minnesota's statewide

---

instrumentalities, public educational institutions . . . and other Special Districts in the State[.]"); Janssen Consent Judgment ¶ 11 ("Janssen . . . [is], as of the Effective Date, hereby released from any and all Released Claims of . . . (b) any public entities, public instrumentalities, public educational institutions . . . school districts, . . . and other Special Districts in the State[.]").

[14] *See* Minnesota Opioids State-Subdivision Memorandum of Agreement at §§ B (Public health departments as Chief Strategists), E (Consultation and partnerships) and F (Collaboration).

strategy to combat the opioid epidemic.  The MOA allows for flexibility in choosing uses for funds ("The programs and strategies listed in this Exhibit are not exclusive") and specifically contemplates the use of funds to address the needs of children with NAS and to fund school-based opioid remediation programs[15]—which could include the special education funding desired by Plaintiff.  Attorney General Ellison's March 21, 2022, letter to Minnetonka School District made this point clear:

> The AGO is engaged with stakeholders in the Minnetonka area and Hennepin County on this issue, and remains willing to facilitate and be part of a discussion amongst interested parties to find a path to secure [Minnetonka School District]'s joinder to the settlements.  OERAC [the State's opioid council], Hennepin County, and the cities of Minnetonka and Eden Prairie are all direct recipients of settlement funds with the ability to consider grant applications by interested stakeholder constituents, including school districts.  The MOA expressly authorizes a number of school-related expenditures, including an entire section on addressing the needs of populations suffering from NAS.  The MOA also requires consultation, collaboration, and coordination among the State, local governments, and community stakeholders to identify and coordinate spending priorities.

The Settling Defendants have similarly confirmed their understanding that the scope of the national settlement documents contemplates opioid remediation strategies related to NAS and schools, such that special education programs are eligible for abatement funds.[16]

Moreover, residents of the Minnetonka School District may directly benefit from the opioid treatment and prevention programs established by the state or the counties in which they reside using opioid settlement funds the state or those counties receive, even though the Plaintiff itself does not directly receive a distribution of opioid settlement funds.

---

[15] Minnesota Opioids State-Subdivision Memorandum of Agreement, Ex. A at §§ E, G.8, G.9, G.12.

[16] Correspondence re: Qualification of Special Education Expenses as Opioid Remediation (Sept. 14, 2022), attached as **Exhibit B.**

## CONCLUSION

For the foregoing reasons, the State of Minnesota, by its Attorney General, Keith Ellison,

respectfully requests that the Court grant the Settling Defendant's Motion in its entirety.

Dated:  September 27, 2022

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

JAMES W. CANADAY
Deputy Attorney General

**/s/ Eric J. Maloney**
ERIC J. MALONEY
Assistant Attorney General

EVAN S. ROMANOFF
Assistant Attorney General

445 Minnesota Street, Suite 1200
St. Paul, Minnesota 55101-2130
(651) 757-1021
(651) 757-1454
eric.maloney@ag.state.mn.us
evan.romanoff@ag.state.mn.us

*Attorneys for State of Minnesota*

## CHAPTER 53--S.F.No. 4025

*An act relating to opioids; providing for the deposit and allocation of opioid settlement proceeds; establishing two accounts in the opiate epidemic response fund; eliminating a separate opioid account in the state treasury; modifying the time frame for eliminating the opioid manufacturer registration fee and reducing license fees; barring municipal claims against litigants in certain settled opioid cases; amending Minnesota Statutes 2020, sections 256.042, subdivisions 1, 5, by adding a subdivision; 256.043, subdivision 1, by adding a subdivision; Minnesota Statutes 2021 Supplement, sections 16A.151, subdivision 2; 151.066, subdivision 3; 256.042, subdivision 4; 256.043, subdivisions 3, 4; Laws 2019, chapter 63, article 3, section 1, as amended; Laws 2021, First Special Session chapter 7, article 16, section 12; proposing coding for new law in Minnesota Statutes, chapter 3.*

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MINNESOTA:

Section 1. **[3.757] RELEASE OF OPIOID-RELATED CLAIMS.**

Subdivision 1. **Definitions.** (a) For purposes of this section, the following terms have the meanings given.

(b) "Municipality" has the meaning provided in section 466.01, subdivision 1.

(c) "Opioid litigation" means any civil litigation, demand, or settlement in lieu of litigation alleging unlawful conduct related to the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids.

(d) "Released claim" means any cause of action or other claim that has been released in a statewide opioid settlement agreement, including matters identified as a released claim as that term or a comparable term is defined in a statewide opioid settlement agreement.

(e) "Settling defendant" means Johnson & Johnson, AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation, as well as related subsidiaries, affiliates, officers, directors, and other related entities specifically named as a released entity in a statewide opioid settlement agreement.

(f) "Statewide opioid settlement agreement" means an agreement, including consent judgments, assurances of discontinuance, and related agreements or documents, between the attorney general, on behalf of the state, and a settling defendant, to provide or allocate remuneration for conduct related to the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids.

Subd. 2. **Release of claims.** (a) No municipality shall have the authority to assert, file, or enforce a released claim against a settling defendant.

(b) Any claim in pending opioid litigation filed by a municipality against a settling defendant that is within the scope of a released claim is extinguished by operation of law.

(c) The attorney general shall have authority to appear or intervene in opioid litigation where a municipality has asserted, filed, or enforced a released claim against a settling defendant and release with prejudice any released claims.

Exhibit A

(d) This section does not limit any causes of action, claims, or remedies, nor the authority to assert, file, or enforce such causes of action, claims, or remedies, by a party other than a municipality.

(e) This section does not limit any causes of action, claims, or remedies, nor the authority to assert, file, or enforce such causes of action, claims, or remedies by a municipality against entities and individuals other than a released claim against a settling defendant.

**EFFECTIVE DATE.**  This section is effective the day following final enactment.

Sec. 2. Minnesota Statutes 2021 Supplement, section 16A.151, subdivision 2, is amended to read:

Subd. 2.  **Exceptions.**  (a) If a state official litigates or settles a matter on behalf of specific injured persons or entities, this section does not prohibit distribution of money to the specific injured persons or entities on whose behalf the litigation or settlement efforts were initiated. If money recovered on behalf of injured persons or entities cannot reasonably be distributed to those persons or entities because they cannot readily be located or identified or because the cost of distributing the money would outweigh the benefit to the persons or entities, the money must be paid into the general fund.

(b) Money recovered on behalf of a fund in the state treasury other than the general fund may be deposited in that fund.

(c) This section does not prohibit a state official from distributing money to a person or entity other than the state in litigation or potential litigation in which the state is a defendant or potential defendant.

(d) State agencies may accept funds as directed by a federal court for any restitution or monetary penalty under United States Code, title 18, section 3663(a)(3), or United States Code, title 18, section 3663A(a)(3). Funds received must be deposited in a special revenue account and are appropriated to the commissioner of the agency for the purpose as directed by the federal court.

(e) Tobacco settlement revenues as defined in section 16A.98, subdivision 1, paragraph (t), may be deposited as provided in section 16A.98, subdivision 12.

(f) Any money received by the state resulting from a settlement agreement or an assurance of discontinuance entered into by the attorney general of the state, or a court order in litigation brought by the attorney general of the state, on behalf of the state or a state agency, related to alleged violations of consumer fraud laws in the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids, must be deposited in ~~a separate account in the state treasury and the commissioner shall notify the chairs and ranking minority members of the Finance Committee in the senate and the Ways and Means Committee in the house of representatives that an account has been created. Notwithstanding section 11A.20, all investment income and all investment losses attributable to the investment of this account shall be credited to the account~~ the settlement account established in the opiate epidemic response fund under section 256.043, subdivision 1. This paragraph does not apply to attorney fees and costs awarded to the state or the Attorney General's Office, to contract attorneys hired by the state or Attorney General's Office, or to other state agency attorneys. ~~If the licensing fees under section 151.065, subdivision 1, clause (16), and subdivision 3, clause (14), are reduced and the registration fee under section 151.066, subdivision 3, is repealed in accordance with section 256.043, subdivision 4, then the commissioner shall transfer from the separate account created in this paragraph to the opiate epidemic response fund under section 256.043 an amount that ensures that $20,940,000 each fiscal year is available for distribution in accordance with section 256.043, subdivision 3.~~

Exhibit A

(g) Notwithstanding paragraph (f), if money is received from a settlement agreement or an assurance of discontinuance entered into by the attorney general of the state or a court order in litigation brought by the attorney general of the state on behalf of the state or a state agency against a consulting firm working for an opioid manufacturer or opioid wholesale drug distributor ~~and deposited into the separate account created under paragraph (f),~~ the commissioner shall ~~annually transfer from the separate account to the opiate epidemic response fund under section 256.043 an amount equal to the estimated amount submitted to the commissioner by the Board of Pharmacy in accordance with section 151.066, subdivision 3, paragraph (b). The amount transferred shall be included in the amount available for distribution in accordance with section 256.043, subdivision 3. This transfer shall occur each year until the registration fee under section 151.066, subdivision 3, is repealed in accordance with section 256.043, subdivision 4, or the money deposited in the account in accordance with this paragraph has been transferred, whichever occurs first~~ deposit any money received into the settlement account established within the opiate epidemic response fund under section 256.042, subdivision 1. Notwithstanding section 256.043, subdivision 3a, paragraph (a), any amount deposited into the settlement account in accordance with this paragraph shall be appropriated to the commissioner of human services to award as grants as specified by the opiate epidemic response advisory council in accordance with section 256.043, subdivision 3a, paragraph (d).

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 3. Minnesota Statutes 2021 Supplement, section 151.066, subdivision 3, is amended to read:

Subd. 3. **Determination of an opiate product registration fee.** (a) The board shall annually assess an opiate product registration fee on any manufacturer of an opiate that annually sells, delivers, or distributes an opiate within or into the state 2,000,000 or more units as reported to the board under subdivision 2.

(b) For purposes of assessing the annual registration fee under this section and determining the number of opiate units a manufacturer sold, delivered, or distributed within or into the state, the board shall not consider any opiate that is used for medication-assisted therapy for substance use disorders. ~~If there is money deposited into the separate account as described in section 16A.151, subdivision 2, paragraph (g), The board shall submit to the commissioner of management and budget an estimate of the difference in the annual fee revenue collected under this section due to this exception.~~

(c) The annual registration fee for each manufacturer meeting the requirement under paragraph (a) is $250,000.

(d) In conjunction with the data reported under this section, and notwithstanding section 152.126, subdivision 6, the board may use the data reported under section 152.126, subdivision 4, to determine which manufacturers meet the requirement under paragraph (a) and are required to pay the registration fees under this subdivision.

(e) By April 1 of each year, beginning April 1, 2020, the board shall notify a manufacturer that the manufacturer meets the requirement in paragraph (a) and is required to pay the annual registration fee in accordance with section 151.252, subdivision 1, paragraph (b).

(f) A manufacturer may dispute the board's determination that the manufacturer must pay the registration fee no later than 30 days after the date of notification. However, the manufacturer must still remit the fee as required by section 151.252, subdivision 1, paragraph (b). The dispute must be filed with the board in the manner and using the forms specified by the board. A manufacturer must submit, with the required forms, data satisfactory to the board that demonstrates that the assessment of the registration fee was incorrect. The board must make a decision concerning a dispute no later than 60 days after receiving the required

Exhibit A

dispute forms. If the board determines that the manufacturer has satisfactorily demonstrated that the fee was incorrectly assessed, the board must refund the amount paid in error.

(g) For purposes of this subdivision, a unit means the individual dosage form of the particular drug product that is prescribed to the patient. One unit equals one tablet, capsule, patch, syringe, milliliter, or gram.

**EFFECTIVE DATE.**  This section is effective the day following final enactment.

Sec. 4. Minnesota Statutes 2020, section 256.042, subdivision 1, is amended to read:

Subdivision 1.  **Establishment of the advisory council.**  (a) The Opiate Epidemic Response Advisory Council is established to develop and implement a comprehensive and effective statewide effort to address the opioid addiction and overdose epidemic in Minnesota. The council shall focus on:

(1) prevention and education, including public education and awareness for adults and youth, prescriber education, the development and sustainability of opioid overdose prevention and education programs, the role of adult protective services in prevention and response, and providing financial support to local law enforcement agencies for opiate antagonist programs;

(2) training on the treatment of opioid addiction, including the use of all Food and Drug Administration approved opioid addiction medications, detoxification, relapse prevention, patient assessment, individual treatment planning, counseling, recovery supports, diversion control, and other best practices;

(3) the expansion and enhancement of a continuum of care for opioid-related substance use disorders, including primary prevention, early intervention, treatment, recovery, and aftercare services; and

(4) the development of measures to assess and protect the ability of cancer patients and survivors, persons battling life-threatening illnesses, persons suffering from severe chronic pain, and persons at the end stages of life, who legitimately need prescription pain medications, to maintain their quality of life by accessing these pain medications without facing unnecessary barriers. The measures must also address the needs of individuals described in this clause who are elderly or who reside in underserved or rural areas of the state.

(b) The council shall:

(1) review local, state, and federal initiatives and activities related to education, prevention, treatment, and services for individuals and families experiencing and affected by opioid use disorder;

(2) establish priorities to address the state's opioid epidemic, for the purpose of recommending initiatives to fund;

(3) recommend to the commissioner of human services specific projects and initiatives to be funded;

(4) ensure that available funding is allocated to align with other state and federal funding, to achieve the greatest impact and ensure a coordinated state effort;

(5) consult with the commissioners of human services, health, and management and budget to develop measurable outcomes to determine the effectiveness of funds allocated; and

(6) develop recommendations for an administrative and organizational framework for the allocation, on a sustainable and ongoing basis, of any money deposited into the separate account under section 16A.151, subdivision 2, paragraph (f), in order to address the opioid abuse and overdose epidemic in Minnesota and the areas of focus specified in paragraph (a);

Exhibit A

(7) review reports, data, and performance measures submitted by municipalities under subdivision 5; and

(8) consult with relevant stakeholders, including lead agencies and municipalities, to review and provide recommendations for necessary revisions to the reporting requirements under subdivision 5 to ensure that the required reporting accurately measures progress in addressing the harms of the opioid epidemic.

(c) The council, in consultation with the commissioner of management and budget, and within available appropriations, shall select from the projects awarded grants projects under section 256.043, subdivisions 3 and 3a, and municipality projects funded by direct payments received as part of a statewide opioid settlement agreement, that include promising practices or theory-based activities for which the commissioner of management and budget shall conduct evaluations using experimental or quasi-experimental design. Grants awarded to Grant proposals and municipality projects that include promising practices or theory-based activities and that are selected for an evaluation shall be administered to support the experimental or quasi-experimental evaluation and require. Grantees to and municipalities shall collect and report information that is needed to complete the evaluation. The commissioner of management and budget, under section 15.08, may obtain additional relevant data to support the experimental or quasi-experimental evaluation studies.

(d) The council, in consultation with the commissioners of human services, health, public safety, and management and budget, shall establish goals related to addressing the opioid epidemic and determine a baseline against which progress shall be monitored and set measurable outcomes, including benchmarks. The goals established must include goals for prevention and public health, access to treatment, and multigenerational impacts. The council shall use existing measures and data collection systems to determine baseline data against which progress shall be measured. The council shall include the proposed goals, the measurable outcomes, and proposed benchmarks to meet these goals in its initial report to the legislature under subdivision 5, paragraph (a), due January 31, 2021.

Sec. 5. Minnesota Statutes 2021 Supplement, section 256.042, subdivision 4, is amended to read:

Subd. 4. **Grants.** (a) The commissioner of human services shall submit a report of the grants proposed by the advisory council to be awarded for the upcoming calendar year to the chairs and ranking minority members of the legislative committees with jurisdiction over health and human services policy and finance, by December 1 of each year, beginning March 1, 2020.

(b) The grants shall be awarded to proposals selected by the advisory council that address the priorities in subdivision 1, paragraph (a), clauses (1) to (4), unless otherwise appropriated by the legislature. The advisory council shall determine grant awards and funding amounts based on the funds appropriated to the commissioner under section 256.043, subdivision 3, paragraph (c) (h), and subdivision 3a, paragraph (d). The commissioner shall award the grants from the opiate epidemic response fund and administer the grants in compliance with section 16B.97. No more than ten percent of the grant amount may be used by a grantee for administration.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 6. Minnesota Statutes 2020, section 256.042, subdivision 5, is amended to read:

Subd. 5. **Reports.** (a) The advisory council shall report annually to the chairs and ranking minority members of the legislative committees with jurisdiction over health and human services policy and finance by January 31 of each year, beginning January 31, 2021. The report shall include information about the

Exhibit A

individual projects that receive grants, the municipality projects funded by direct payments received as part of a statewide opioid settlement agreement, and the overall role of the project in addressing the opioid addiction and overdose epidemic in Minnesota. The report must describe the grantees and municipalities and the activities implemented, along with measurable outcomes as determined by the council in consultation with the commissioner of human services and the commissioner of management and budget. At a minimum, the report must include information about the number of individuals who received information or treatment, the outcomes the individuals achieved, and demographic information about the individuals participating in the project; an assessment of the progress toward achieving statewide access to qualified providers and comprehensive treatment and recovery services; and an update on the evaluations implemented by the commissioner of management and budget for the promising practices and theory-based projects that receive funding.

(b) The commissioner of management and budget, in consultation with the Opiate Epidemic Response Advisory Council, shall report to the chairs and ranking minority members of the legislative committees with jurisdiction over health and human services policy and finance when an evaluation study described in subdivision 1, paragraph (c), is complete on the promising practices or theory-based projects that are selected for evaluation activities. The report shall include demographic information; outcome information for the individuals in the program; the results for the program in promoting recovery, employment, family reunification, and reducing involvement with the criminal justice system; and other relevant outcomes determined by the commissioner of management and budget that are specific to the projects that are evaluated. The report shall include information about the ability of grant programs to be scaled to achieve the statewide results that the grant project demonstrated.

(c) The advisory council, in its annual report to the legislature under paragraph (a) due by January 31, 2024, shall include recommendations on whether the appropriations to the specified entities under Laws 2019, chapter 63, should be continued, adjusted, or discontinued; whether funding should be appropriated for other purposes related to opioid abuse prevention, education, and treatment; and on the appropriate level of funding for existing and new uses.

(d) Municipalities receiving direct payments from a statewide opioid settlement agreement must report annually to the commissioner of human services on how the payments were used on opioid remediation. The report must be submitted in a format prescribed by the commissioner. The report must include data and measurable outcomes on expenditures funded with direct payments from a statewide opioid settlement agreement, including details on services listed in the categories of approved uses, as identified in agreements between the state of Minnesota, the Association of Minnesota Counties, and the League of Minnesota Cities. Reporting requirements must include, at a minimum:

(1) contact information;

(2) information on funded services and programs; and

(3) target populations for each funded service and program.

(e) In reporting data and outcomes under paragraph (d), municipalities must include, to the extent feasible, information on the use of evidence-based and culturally relevant services.

(f) For municipal projects using $25,000 or more of statewide opioid settlement agreement payments in a calendar year, municipalities must also include in the report required under paragraph (d):

(1) a brief qualitative description of successes or challenges; and

(2) results using process and quality measures.

Exhibit A

**EFFECTIVE DATE.**  This section is effective the day following final enactment.

Sec. 7. Minnesota Statutes 2020, section 256.042, is amended by adding a subdivision to read:

Subd. 6.  **Definitions.**  (a) For purposes of this section, the following definitions apply.

(b) "Municipality" has the meaning provided in section 466.01, subdivision 1.

(c) "Statewide opioid settlement agreement" means an agreement as defined in section 3.757, subdivision 1, paragraph (f), involving a settling defendant as defined in section 3.757, subdivision 1, paragraph (e).

Sec. 8. Minnesota Statutes 2020, section 256.043, subdivision 1, is amended to read:

Subdivision 1.  **Establishment.**  (a) The opiate epidemic response fund is established in the state treasury. ~~The registration fees assessed by the Board of Pharmacy under section 151.066 and the license fees identified in section 151.065, subdivision 7, paragraphs (b) and (c), shall be deposited into the fund.~~ The commissioner of management and budget shall establish within the opiate epidemic response fund two accounts: (1) a registration and license fee account; and (2) a settlement account. Beginning in fiscal year 2021, for each fiscal year, the fund shall be administered according to this section.

(b) The commissioner of management and budget shall deposit into the registration and license fee account the registration fee assessed by the Board of Pharmacy under section 151.066 and the license fees identified in section 151.065, subdivision 7, paragraphs (b) and (c).

(c) The commissioner of management and budget shall deposit into the settlement account any money received by the state resulting from a settlement agreement or an assurance of discontinuance entered into by the attorney general of the state, or a court order in litigation brought by the attorney general of the state, on behalf of the state or a state agency, related to alleged violations of consumer fraud laws in the marketing, sale, or distribution of opioids in this state or other alleged illegal actions that contributed to the excessive use of opioids, pursuant to section 16A.151, subdivision 2, paragraph (f).

**EFFECTIVE DATE.**  This section is effective the day following final enactment.

Sec. 9. Minnesota Statutes 2021 Supplement, section 256.043, subdivision 3, is amended to read:

Subd. 3.  **Appropriations from ~~fund~~ registration and license fee account.**  (a) The appropriations in paragraphs (b) to (h) shall be made from the registration and license fee account on a fiscal year basis in the order specified.

~~After~~ (b) The appropriations specified in Laws 2019, chapter 63, article 3, section 1, ~~paragraph (e), are made, $249,000 is appropriated to the commissioner of human services for the provision of administrative services to the Opiate Epidemic Response Advisory Council and for the administration of the grants awarded under paragraph (e).~~ paragraphs (b), (f), (g), and (h), as amended by Laws 2020, chapter 115, article 3, section 35, shall be made accordingly.

(c) $300,000 is appropriated to the commissioner of management and budget for evaluation activities under section 256.042, subdivision 1, paragraph (c).

(d) $249,000 is appropriated to the commissioner of human services for the provision of administrative services to the Opiate Epidemic Response Advisory Council and for the administration of the grants awarded under paragraph (h).

Exhibit A

(b) (e) $126,000 is appropriated to the Board of Pharmacy for the collection of the registration fees under section 151.066.

(c) (f) $672,000 is appropriated to the commissioner of public safety for the Bureau of Criminal Apprehension. Of this amount, $384,000 is for drug scientists and lab supplies and $288,000 is for special agent positions focused on drug interdiction and drug trafficking.

(d) (g) After the appropriations in paragraphs (a) (b) to (c) (f) are made, 50 percent of the remaining amount is appropriated to the commissioner of human services for distribution to county social service and tribal social service agencies and Tribal social service agency initiative projects authorized under section 256.01, subdivision 14b, to provide child protection services to children and families who are affected by addiction. The commissioner shall distribute this money proportionally to counties and tribal county social service agencies and Tribal social service agency initiative projects based on out-of-home placement episodes where parental drug abuse is the primary reason for the out-of-home placement using data from the previous calendar year. County and tribal social service agencies and Tribal social service agency initiative projects receiving funds from the opiate epidemic response fund must annually report to the commissioner on how the funds were used to provide child protection services, including measurable outcomes, as determined by the commissioner. County social service agencies and Tribal social service agencies agency initiative projects must not use funds received under this paragraph to supplant current state or local funding received for child protection services for children and families who are affected by addiction.

(e) (h) After making the appropriations in paragraphs (a) (b) to (d) (g) are made, the remaining amount in the fund account is appropriated to the commissioner of human services to award grants as specified by the Opiate Epidemic Response Advisory Council in accordance with section 256.042, unless otherwise appropriated by the legislature.

(f) (i) Beginning in fiscal year 2022 and each year thereafter, funds for county social service and tribal social service agencies and Tribal social service agency initiative projects under paragraph (d) (g) and grant funds specified by the Opiate Epidemic Response Advisory Council under paragraph (e) shall (h) may be distributed on a calendar year basis.

**EFFECTIVE DATE.**  This section is effective the day following final enactment.

Sec. 10. Minnesota Statutes 2020, section 256.043, is amended by adding a subdivision to read:

Subd. 3a.  **Appropriations from settlement account.**  (a) The appropriations in paragraphs (b) to (e) shall be made from the settlement account on a fiscal year basis in the order specified.

(b) If the balance in the registration and license fee account is not sufficient to fully fund the appropriations specified in subdivision 3, paragraphs (b) to (f), an amount necessary to meet any insufficiency shall be transferred from the settlement account to the registration and license fee account to fully fund the required appropriations.

(c) $209,000 in fiscal year 2023 and $239,000 in fiscal year 2024 and subsequent fiscal years are appropriated to the commissioner of human services for the administration of grants awarded under paragraph (e). $276,000 in fiscal year 2023 and $151,000 in fiscal year 2024 and subsequent fiscal years are appropriated to the commissioner of human services to collect, collate, and report data submitted and to monitor compliance with reporting and settlement expenditure requirements by grantees awarded grants under this section and municipalities receiving direct payments from a statewide opioid settlement agreement as defined in section 256.042, subdivision 6.

Exhibit A

(d) After any appropriations necessary under paragraphs (b) and (c) are made, an amount equal to the calendar year allocation to Tribal social service agency initiative projects under subdivision 3, paragraph (g), is appropriated from the settlement account to the commissioner of human services for distribution to Tribal social service agency initiative projects to provide child protection services to children and families who are affected by addiction. The requirements related to proportional distribution, annual reporting, and maintenance of effort specified in subdivision 3, paragraph (g), also apply to the appropriations made under this paragraph.

(e) After making the appropriations in paragraphs (b), (c), and (d), the remaining amount in the account is appropriated to the commissioner of human services to award grants as specified by the Opiate Epidemic Response Advisory Council in accordance with section 256.042.

(f) Funds for Tribal social service agency initiative projects under paragraph (d) and grant funds specified by the Opiate Epidemic Response Advisory Council under paragraph (e) may be distributed on a calendar year basis.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 11. Minnesota Statutes 2021 Supplement, section 256.043, subdivision 4, is amended to read:

Subd. 4. **Settlement; sunset.** (a) If the state receives a total sum of $250,000,000 ~~either~~: (1) as a result of a settlement agreement or an assurance of discontinuance entered into by the attorney general of the state, or resulting from a court order in litigation brought by the attorney general of the state on behalf of the state or a state agency, related to alleged violations of consumer fraud laws in the marketing, sale, or distribution of opioids in this state, or other alleged illegal actions that contributed to the excessive use of opioids, ~~or~~; (2) from the fees collected under sections 151.065, subdivisions 1 and 3, and 151.066, that are deposited into the opiate epidemic response fund established in this section, ~~or~~; or (3) from a combination of both, the fees specified in section 151.065, subdivisions 1, clause (16), and 3, clause (14), shall be reduced to $5,260, and the opiate registration fee in section 151.066, subdivision 3, shall be repealed. For purposes of this paragraph, any money received as a result of a settlement agreement specified in this paragraph and directly allocated or distributed and received by either the state or a municipality as defined in section 466.01, subdivision 1, shall be counted toward determining when the $250,000,000 is reached.

(b) The commissioner of management and budget shall inform the Board of Pharmacy, the governor, and the legislature when the amount specified in paragraph (a) has been reached. The board shall apply the reduced license fee for the next licensure period.

(c) Notwithstanding paragraph (a), the reduction of the license fee in section 151.065, subdivisions 1 and 3, and the repeal of the registration fee in section 151.066 shall not occur before July 1, ~~2024~~ 2031.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 12. Laws 2019, chapter 63, article 3, section 1, as amended by Laws 2020, chapter 115, article 3, section 35, is amended to read:

Section 1. **APPROPRIATIONS.**

(a) **Board of Pharmacy; administration.** $244,000 in fiscal year 2020 is appropriated from the general fund to the Board of Pharmacy for onetime information technology and operating costs for administration of licensing activities under Minnesota Statutes, section 151.066. This is a onetime appropriation.

Exhibit A

(b) **Commissioner of human services; administration.** $309,000 in fiscal year 2020 is appropriated from the general fund and $60,000 in fiscal year 2021 is appropriated from the opiate epidemic response fund to the commissioner of human services for the provision of administrative services to the Opiate Epidemic Response Advisory Council and for the administration of the grants awarded under paragraphs (f), (g), and (h). The opiate epidemic response fund base for this appropriation is $60,000 in fiscal year 2022, $60,000 in fiscal year 2023, $60,000 in fiscal year 2024, and $0 in fiscal year 2025.

(c) **Board of Pharmacy; administration.** $126,000 in fiscal year 2020 is appropriated from the general fund to the Board of Pharmacy for the collection of the registration fees under section 151.066.

(d) **Commissioner of public safety; enforcement activities.** $672,000 in fiscal year 2020 is appropriated from the general fund to the commissioner of public safety for the Bureau of Criminal Apprehension. Of this amount, $384,000 is for drug scientists and lab supplies and $288,000 is for special agent positions focused on drug interdiction and drug trafficking.

(e) **Commissioner of management and budget; evaluation activities.** $300,000 in fiscal year 2020 is appropriated from the general fund and $300,000 in fiscal year 2021 is appropriated from the opiate epidemic response fund to the commissioner of management and budget for evaluation activities under Minnesota Statutes, section 256.042, subdivision 1, paragraph (c). ~~The opiate epidemic response fund base for this appropriation is $300,000 in fiscal year 2022, $300,000 in fiscal year 2023, $300,000 in fiscal year 2024, and $0 in fiscal year 2025.~~

(f) **Commissioner of human services; grants for Project ECHO.** $400,000 in fiscal year 2020 is appropriated from the general fund and $400,000 in fiscal year 2021 is appropriated from the opiate epidemic response fund to the commissioner of human services for grants of $200,000 to CHI St. Gabriel's Health Family Medical Center for the opioid-focused Project ECHO program and $200,000 to Hennepin Health Care for the opioid-focused Project ECHO program. The opiate epidemic response fund base for this appropriation is $400,000 in fiscal year 2022, $400,000 in fiscal year 2023, $400,000 in fiscal year 2024, and $0 in fiscal year 2025.

(g) **Commissioner of human services; opioid overdose prevention grant.** $100,000 in fiscal year 2020 is appropriated from the general fund and $100,000 in fiscal year 2021 is appropriated from the opiate epidemic response fund to the commissioner of human services for a grant to a nonprofit organization that has provided overdose prevention programs to the public in at least 60 counties within the state, for at least three years, has received federal funding before January 1, 2019, and is dedicated to addressing the opioid epidemic. The grant must be used for opioid overdose prevention, community asset mapping, education, and overdose antagonist distribution. The opiate epidemic response fund base for this appropriation is $100,000 in fiscal year 2022, $100,000 in fiscal year 2023, $100,000 in fiscal year 2024, and $0 in fiscal year 2025.

(h) **Commissioner of human services; traditional healing.** $2,000,000 in fiscal year 2020 is appropriated from the general fund and $2,000,000 in fiscal year 2021 is appropriated from the opiate epidemic response fund to the commissioner of human services to award grants to Tribal nations and five urban Indian communities for traditional healing practices to American Indians and to increase the capacity of culturally specific providers in the behavioral health workforce. The opiate epidemic response fund base for this appropriation is $2,000,000 in fiscal year 2022, $2,000,000 in fiscal year 2023, $2,000,000 in fiscal year 2024, and $0 in fiscal year 2025.

Exhibit A

(i) **Board of Dentistry; continuing education.** $11,000 in fiscal year 2020 is appropriated from the state government special revenue fund to the Board of Dentistry to implement the continuing education requirements under Minnesota Statutes, section 214.12, subdivision 6.

(j) **Board of Medical Practice; continuing education.** $17,000 in fiscal year 2020 is appropriated from the state government special revenue fund to the Board of Medical Practice to implement the continuing education requirements under Minnesota Statutes, section 214.12, subdivision 6.

(k) **Board of Nursing; continuing education.** $17,000 in fiscal year 2020 is appropriated from the state government special revenue fund to the Board of Nursing to implement the continuing education requirements under Minnesota Statutes, section 214.12, subdivision 6.

(l) **Board of Optometry; continuing education.** $5,000 in fiscal year 2020 is appropriated from the state government special revenue fund to the Board of Optometry to implement the continuing education requirements under Minnesota Statutes, section 214.12, subdivision 6.

(m) **Board of Podiatric Medicine; continuing education.** $5,000 in fiscal year 2020 is appropriated from the state government special revenue fund to the Board of Podiatric Medicine to implement the continuing education requirements under Minnesota Statutes, section 214.12, subdivision 6.

(n) **Commissioner of health; nonnarcotic pain management and wellness.** $1,250,000 is appropriated in fiscal year 2020 from the general fund to the commissioner of health, to provide funding for:

(1) statewide mapping and assessment of community-based nonnarcotic pain management and wellness resources; and

(2) up to five demonstration projects in different geographic areas of the state to provide community-based nonnarcotic pain management and wellness resources to patients and consumers.

The demonstration projects must include an evaluation component and scalability analysis. The commissioner shall award the grant for the statewide mapping and assessment, and the demonstration project grants, through a competitive request for proposal process. Grants for statewide mapping and assessment and demonstration projects may be awarded simultaneously. In awarding demonstration project grants, the commissioner shall give preference to proposals that incorporate innovative community partnerships, are informed and led by people in the community where the project is taking place, and are culturally relevant and delivered by culturally competent providers. This is a onetime appropriation.

(o) **Commissioner of health; administration.** $38,000 in fiscal year 2020 is appropriated from the general fund to the commissioner of health for the administration of the grants awarded in paragraph (n).

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 13. Laws 2021, First Special Session chapter 7, article 16, section 12, is amended to read:

Sec. 12. **COMMISSIONER OF MANAGEMENT AND BUDGET**                                  $              300,000 $              ~~300,000~~ -0-

(a) This appropriation is from the opiate epidemic response fund.

(b) **Evaluation.** $300,000 in fiscal year 2022 ~~and $300,000 in fiscal year 2023~~ is for evaluation activities

Exhibit A

under Minnesota Statutes, section 256.042, subdivision
1, paragraph (c).

(e) **Base Level Adjustment.** The opiate epidemic
response fund base is $300,000 in fiscal year 2024 and
$300,000 in fiscal year 2025.

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Sec. 14. **TRANSFER; ELIMINATION OF ACCOUNT.**

(a) The commissioner of management and budget shall transfer any money in the separate account established in the state treasury under Minnesota Statutes, section 16A.151, subdivision 2, paragraph (f), to the settlement account in the opiate epidemic response fund established under Minnesota Statutes, section 256.043, subdivision 1. Notwithstanding section 256.043, subdivision 3a, paragraph (a), money transferred into the account under this paragraph shall be appropriated to the commissioner of human services to award as grants as specified by the Opiate Epidemic Response Advisory Council in accordance with Minnesota Statutes, section 256.043, subdivision 3a, paragraph (d).

(b) Once the money is transferred as required in paragraph (a), the commissioner of management and budget shall eliminate the separate account established under Minnesota Statutes, section 16A.151, subdivision 2, paragraph (f).

**EFFECTIVE DATE.** This section is effective the day following final enactment.

Presented to the governor May 9, 2022

Signed by the governor May 10, 2022, 9:13 a.m.

Exhibit A

September 14, 2022

<u>Via E-mail</u>

Enforcement Committee of the Distributor
Settlement Agreement

*Connecticut; Delaware; Florida; Georgia;*
*Massachusetts; New York; North Carolina;*
*Ohio; Pennsylvania; Tennessee; Texas; Broward*
*County, Florida; Chicago, Illinois; Cincinnati,*
*Ohio; Nashville, Tennessee; and Nassau County,*
*New York*

Re:    Qualification of Special Education Expenses
as Opioid Remediation

To the Enforcement Committee:

We write to clarify that it is the Settling Distributors' intent that special education
programs and expenditures provided by School Districts that meet the definition of Opioid
Remediation in the Distributor Settlement Agreement ("Settlement Agreement"), i.e., that are
"designed to (1) address the misuse and abuse of opioid products, (2) treat or mitigate opioid use
or related disorders, or (3) mitigate other alleged effects of, including on those injured as a result
of, the opioid epidemic" are allowable uses of settlement funds.  Section I.SS.  The non-
exhaustive list of expenditures that qualify as being paid for Opioid Remediation (Exhibit E to
the Settlement Agreement) includes, as a "core abatement strategy" to be given "priority",
programs to address the needs of children with Neonatal Abstinence Syndrome ("NAS").
Exhibit E at Schedule A.D; see also Exhibit E at Schedule A.B.2; Schedule A.G.2; Schedule
B.E.1, 4, and 5; Schedule B.C.12; Schedule B.G 8–12 (describing abatement strategies involving
families and children affected by NAS and school-based programs as "core strategies" and
"approved uses").

As the Settlement Agreement's definition of Opioid Remediation makes clear that
Exhibit E is a "non-exhaustive list of expenditures that qualify as being paid for Opioid
Remediation," this letter's purpose is to clarify that, from the Settling Distributors' perspective,
expenditures for special education programs and supports that meet the definition of Opioid
Remediation in the Settlement Agreement are abatement strategies eligible for the same
consideration as those specifically in Exhibit E.  Section I.SS.  Therefore, the Settling
Distributors affirmatively recognize that special education programs that qualify under the
definition of Opioid Remediation are an abatement strategy eligible for settlement funds.

**EXHIBIT B**

Sincerely,


/s/  Elaine P. Golin
Elaine P. Golin
Wachtell, Lipton, Rosen & Katz
epgolin@WLRK.com
*Counsel for Cardinal Health, Inc.*

/s/  JB Kelly
JB Kelly
Wachtell, Lipton, Rosen & Katz
jbkelly@WLRK.com
*Counsel for Cardinal Health, Inc.*

/s/  Thomas J. Perrelli
Thomas J. Perrelli
Jenner & Block
tperrelli@jenner.com
*Counsel for McKesson Corporation*

/s/  David Cookson
David Cookson
Bruning Law Group
david@bruninglawgroup.com
*Counsel for AmerisourceBergen
Corporation*

/s/ Michael Reynolds
Michael Reynolds
Cravath, Swaine & Moore LLP
mreynolds@cravath.com
*Counsel for AmerisourceBergen
Corporation*

**EXHIBIT B**