# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**This document relates to:**<br><br>***Frederick County, Virginia, v. Mallinckrodt PLC, et al.***<br>**Case No. 1:20-OP-45233**<br><br>***City of Roanoke Virginia v. Mallinckrodt PLC, et al.***<br>**Case No. 1:19-OP-45696** | MDL No. 2804<br><br>Case No. 1:17-MD-2804-DAP<br><br>Judge Dan Aaron Polster |

# EXPRESS SCRIPTS DEFENDANTS' SUPPLEMENTAL BRIEF
## ON FEDERAL OFFICER REMOVAL
## IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND

# Table of Contents

Table of Authorities..................................................................................................................... ii

Introduction.................................................................................................................................1

Argument ....................................................................................................................................3

I.      The Express Scripts Defendants are "acting under" a federal officer.................................3

     A.      The Department of Defense directs and controls the Express Scripts
         Defendants' administration of the TRICARE program. .........................................4

         1.      The ESI Mail Order Pharmacies satisfy the "acting under" prong.............5

         2.      Express Scripts, Inc., also satisfies the "acting under" prong.....................9

     B.      The Express Scripts Defendants alternatively satisfy the "acting under"
         prong through their acts under the Federal Employees Health Benefits
         Program.................................................................................................................10

II.     The Express Scripts Defendants' charged conduct relates to their acts under
     TRICARE and the Federal Employees Health Benefits Program. ...................................11

III.    The Express Scripts Defendants have colorable federal defenses. ...................................15

Conclusion ................................................................................................................................18

## Table of Authorities

### Cases

*Badilla v. Nat'l Air Cargo, Inc.*,
  2014 WL 6390324 (W.D.N.Y. Nov. 17, 2014) ........................................................................... 8

*Bennett v. MIS Corp.*,
  607 F.3d 1076 (6th Cir. 2010) ........................................................................ 3, 4, 7, 11, 15, 16

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988) ................................................................................................................. 15

*County Board of Arlington County, Virginia v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) ....................................................................... 1–8, 10–13, 15–17

*Coventry Health Care of Missouri v. Nevils*,
  137 S. Ct. 1190 (2017) ....................................................................................................... 10, 17

*Grider Drug, LLC v. Express Scripts, Inc.*,
  2009 U.S. Dist. Lexis 107515 (W.D. Ky. Nov. 17, 2009) ........................................... 1, 2, 9, 17

*Grider Drug, LLC v. Express Scripts, Inc.*,
  500 F. App'x 402 (6th Cir. 2012) ...................................................................................... 1, 2, 9

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*,
  790 F.3d 457 (3d Cir. 2015) .................................................................................................... 12

*In re Nat'l Prescription Opiate Litig.* ("*Cherokee Nation*"),
  327 F. Supp. 3d 1064 (N.D. Ohio 2018) ................................................... 2–4, 7, 12, 13, 15–18

*Jacks v. Meridian Res. Co., LLC*,
  701 F.3d 1224 (8th Cir. 2012) ................................................................................................. 11

*Jackson v. Avondale Indus. Inc.*,
  469 F. Supp. 3d 689 (E.D. La. 2020) ...................................................................................... 15

*Latiolais v. Huntington Ingalls, Inc.*,
  951 F.3d 286 (5th Cir. 2020) ................................................................................................... 11

*Maguire v. Hughes Aircraft Corp.*,
  912 F.2d 67 (3d Cir. 1990) ...................................................................................................... 15

*Mayor & City Council of Baltimore v. BP P.L.C.*,
  952 F.3d 452 (4th Cir. 2020), *rev'd on other grounds*, 141 S. Ct. 1532 (2021) ........................ 5

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ............................................................................... 12

*Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*,
    647 F. App'x 619 (6th Cir. 2016) ..........................................................5, 11

*Reed v. Tyson Foods, Inc.*,
    2021 WL 5107725 (W.D. Tenn. Nov. 3, 2021) ................................11, 12

*Tate v. Boeing Helicopters*,
    140 F.3d 654 (6th Cir. 1988) ................................................................ 15

*Tech Hills II Associates v. Phoenix Home Life Mut. Ins. Co.*,
    5 F.3d 963 (6th Cir. 1993) .................................................................... 10

*Watson v. Philip Morris Companies, Inc.*,
    551 U.S. 142 (2007) .............................................................................. 3

**Statutory Authorities**

5 U.S.C. § 8901 et seq. ....................................................................... 10, 17

5 U.S.C. § 8902(m)(1) .............................................................................. 17

10 U.S.C. § 1073a ...................................................................................... 4

10 U.S.C. § 1103(a) .................................................................................. 17

28 U.S.C. 1442(a)(1) .........................................................................1–3, 11

28 U.S.C. § 1447(d) .................................................................................. 18

Removal Clarification Act of 2011 ...........................................................11

**Rules and Regulations**

32 C.F.R. § 199.21(o) ............................................................................... 17

**Introduction**

The Express Scripts Defendants properly removed the two above-captioned Virginia cases (as well as dozens of other nearly identical cases pending in the MDL) under the federal-officer-removal statute, 28 U.S.C. § 1442(a)(1). They did so because they were acting under the federal government's control when administering and filling opioid prescriptions through military and federal employee healthcare programs.[1]

Ample case law confirms that removal is proper here. The Sixth Circuit previously noted that an "action was properly removed to federal court by Express Scripts" under § 1442(a)(1) because of its work at the behest of the U.S. Department of Defense ("DOD") and TRICARE, the military healthcare program. *See Grider Drug, LLC v. Express Scripts, Inc.*, 500 F. App'x 402, 404 (6th Cir. 2012), *affirming* 2009 U.S. Dist. Lexis 107515, at *4–11 (W.D. Ky. Nov. 17, 2009).

And just last year, the Fourth Circuit affirmed the Express Scripts Defendants' removal under § 1442(a)(1) of a Virginia opioid case substantively identical to the two Virginia opioid cases at issue here. *County Board of Arlington County, Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243 (4th Cir. 2021). "[R]emoval was proper," the Fourth Circuit held, because the Express Scripts Defendants had shown that they satisfied all three elements of federal officer removal under § 1442(a)(1), including that "they were 'acting under' DOD in operating the TMOP [TRICARE Mail Order Pharmacy] in accordance with the DOD contract." *Id.* at 248.

In reaching that decision, the Fourth Circuit drew on this Court's ruling that McKesson had properly removed an opioid case under § 1442(a)(1), concluding that "[s]imilar to McKesson, the [Express Scripts] Defendants have plausibly alleged that they distributed opioid medications

---

[1] In this brief, "Express Scripts Defendants" refers to Express Scripts, Inc., Express Scripts Holding Company, Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.

1

pursuant to reasonably precise specifications found in the DOD contract." *Id.* at 255 (citing *In re Nat'l Prescription Opiate Litig.* ("*Cherokee Nation*"), 327 F. Supp. 3d 1064 (N.D. Ohio 2018)).

As is apparent from *Arlington County*, *Cherokee Nation*, and *Grider*, the Express Scripts Defendants readily satisfy the three elements for removal under § 1442(a)(1).

**First**, the Express Scripts Defendants act under the direction of a federal officer when administering both the TRICARE program and the Federal Employees Health Benefits Program ("FEHBP"). In implementing each healthcare program, various Express Scripts Defendants provide pharmacy-benefit-manager ("PBM") services and mail-order-pharmacy services to military members and federal employees under the federal government's strict and detailed requirements, subject to its supervision and control. In so doing, the Express Scripts Defendants perform a basic governmental task that the government would otherwise have to do itself.

**Second**, Plaintiffs' claims relate to the acts that the Express Scripts Defendants take in carrying out their duties under TRICARE and FEHBP. The complaints allege that the Express Scripts Defendants are liable under Virginia law because they purportedly failed to prevent the over-prescription of opioids in Frederick County and the City of Roanoke. These allegations fault the Express Scripts Defendants for following TRICARE's and FEHBP's requirements when opioids were dispensed to the military and federal employees within Plaintiffs' borders. They therefore relate to the Express Scripts Defendants' conduct under those programs.

**Third**, the Express Scripts Defendants have two federal defenses: a government-contractor defense and federal preemption. The Court should thus deny Plaintiffs' remand motions: *Frederick County*, Dkt. No. 23 ("*Frederick* MTR"), and *City of Roanoke*, Dkt. No. 59 ("*Roanoke* MTR").[2]

---

[2] These two cases were also removed on federal-question grounds, which provides an alternative basis for denying remand. The federal-question basis for removal in these and other cases is being addressed in a separate supplemental brief being filed concurrently with this brief.

**Argument**

"Title 28, Section 1442 of the U.S. Code permits the removal of a 'civil action . . . that is commenced in a State court and that is against or directed to . . . any officer (or any person acting under that officer) of the United States . . . in an official or individual capacity, for or relating to any act under color of such office.'" *Cherokee Nation*, 327 F. Supp. 3d at 1069 (quoting 28 U.S.C. § 1442(a)(1)). This federal-officer-removal statute is "liberally construed," *id.* (citing *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007)), and has "broad scope," *Bennett v. MIS Corp.*, 607 F.3d 1076, 1084 (6th Cir. 2010).

A private company may remove under § 1442(a)(1) if: "(1) it is a person who acted under the direction of a federal officer; (2) the actions for which it is being sued were performed under the color of federal office, and (3) there is a colorable federal defense to the plaintiff's claims." *Cherokee Nation*, 327 F. Supp. 3d at 1069–70 (citing *Bennett*, 607 F.3d at 1085).

Plaintiffs Frederick County and City of Roanoke have urged this Court to follow the district court decision in *Arlington County* because that case is materially identical to the cases at issue here. *Frederick County*, Dkt. No. 35 at 4; *Roanoke* MTR at 1–2, 6. Plaintiffs are correct that these cases are materially identical to *Arlington County*. And as the Fourth Circuit concluded when it reversed the district court in *Arlington County*, the Express Scripts Defendants meet each element for removal under § 1442(a)(1). 996 F.3d at 251–57. This Court should conclude the same.

**I.     The Express Scripts Defendants are "acting under" a federal officer.**

The "acting under" prong contemplates a relationship in which the government exerts some "subjection, guidance, or control" over a private entity beyond mere compliance with the law. *Watson*, 551 U.S. at 151 (citation omitted). The central question is whether the private entity is helping a federal officer "fulfill other basic governmental tasks" that "in the absence of a contract with a private firm, the Government itself would have had to perform." *Id.* at 153–54. "Therefore,

3

while mere compliance with a government regulation, even a strict one, is insufficient to find that a private company was acting under the direction of a federal officer, delegation of specific government tasks meets the 'acting under' prong." C*herokee Nation*, 327 F. Supp. 3d at 1070. This "acting under" analysis is the same in both the Sixth and Fourth Circuits, where this case was originally filed. *Compare Bennett*, 607 F.3d at 1086, *with Arlington County*, 996 F.3d at 251–53.

Here, the Express Scripts Defendants meet the "acting under" prong under two different federal programs: TRICARE and FEHBP.

**A.    The Department of Defense directs and controls the Express Scripts Defendants' administration of the TRICARE program.**

TRICARE is a federal health insurance program that DOD administers to provide medical care to military members and their families. *Arlington County*, 996 F.3d at 248–49. To help meet that goal, DOD is required by statute to contract with private entities. *Id.* at 253 (citing 10 U.S.C. § 1073a). In following that statutory mandate, DOD signed a contract with Express Scripts, Inc., both to provide PBM services and to operate the TRICARE Mail Order Pharmacy ("TMOP") for TRICARE members across the country, including those in Frederick and Roanoke. *See Frederick County*, Dkt. No. 29-3 ("*Frederick* Cahill Decl.") ¶¶ 3–8; Ex. A, attached hereto ("*Roanoke* Cahill Decl.") ¶¶ 3–8. Express Scripts, Inc., is not a mail-order pharmacy itself, so it subcontracted the responsibility of running the TMOP to two affiliates: the ESI Mail Order Pharmacies.[3] *Id.* ¶ 14. The duties of Express Scripts, Inc., and the ESI Mail Order Pharmacies under the DOD contract are etched into the accompanying Statement of Work ("SOW"). *Id.* ¶¶ 3, 11–13, 20; *see Frederick County*, Dkt. No. 29-4 (SOW) §§ C.6–C.7.

---

[3] In this brief, "ESI Mail Order Pharmacies" refers to Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc.

**1.**    **The ESI Mail Order Pharmacies satisfy the "acting under" prong.**

As the Fourth Circuit held in *Arlington County* on a materially identical complaint and a materially identical record while applying identical law, the ESI Mail Order Pharmacies "acted under" the DOD when operating the TMOP. 996 F.3d at 251–54.

By running the TMOP, the ESI Mail Order Pharmacies are "providing healthcare services that DOD must, by law, provide." *Id.* at 243. In so doing, the ESI Mail Order Pharmacies help DOD fulfill "basic government tasks"—providing prescription drugs to servicemembers—that the government "would have had to perform if it had not contracted with" a private entity. *Id.* (citation omitted). The Fourth Circuit realized that this is a far cry from the situation in one of its prior cases where the private entity simply sold a commercial good, oil, to the government and was therefore not acting under a federal officer's direction.[4] *Id.* Rather, the ESI Mail Order Pharmacies effectively became "the statutorily authorized *alter ego* of the federal government" because the "TRICARE statute requires the Secretary of Defense to contract out the administration of the TMOP program." *Id.* at 253–54.

This alone is reason to find that the ESI Mail Order Pharmacies meet the "acting under" prong. *See also Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 624 (6th Cir. 2016) (recognizing that a private party can meet the "acting under" requirement by "providing health care to federal employees," which is a task "the government would otherwise have to use its own agents to complete") (citation omitted).

But that is not the sole reason. Not only are the ESI Mail Order Pharmacies providing a basic government function, but they are doing so under DOD's specific requirements and control.

---

[4] That case, *Mayor & City Council of Baltimore v. BP P.L.C.*, 952 F.3d 452 (4th Cir. 2020), *rev'd on other grounds*, 141 S. Ct. 1532 (2021), was previously touted by Frederick County as a reason for remand. *See Frederick* MTR at 11–12.

As the Fourth Circuit found, the ESI Mail Order Pharmacies "performed the day-to-day administration of the TMOP pursuant to a lengthy and detailed SOW." *Arlington County*, 996 F.3d at 254. For example, the SOW mandates the exclusive use of the DOD formulary created by DOD's own Pharmacy & Therapeutics Committee. *Frederick* Cahill Decl. ¶ 10. Thus, "prescriptions are dispensed in accordance with the guidelines promulgated by DOD." *Arlington County*, 996 F.3d at 252. Moreover, the SOW "dictates"—in granular detail—"how the [ESI Mail Order Pharmacies] must operate the TMOP. Pricing, eligibility verification, shipping, payment and many other specifications are detailed in the SOW." *Id.*; *see also Frederick* Cahill Decl. ¶¶ 20–21 (listing the SOW's many requirements governing the ESI Mail Order Pharmacies); SOW § C.7. These contractual requirements supplement the multiple federal regulations and manuals that also shape the ESI Mail Order Pharmacies' duties. *See Arlington County*, 996 F.3d at 252.

To oversee compliance with the SOW's detailed terms, DOD assigned a contracting officer who "regularly meets" with representatives of Express Scripts, Inc. *Frederick* Cahill Decl. ¶ 24. The contracting officer holds weekly briefings with Express Scripts, Inc., and formally reviews its contractual compliance three times a year. *Id.* Outside of these official meetings, Express Scripts, Inc., and the contracting officer speak daily about the "administration and execution" of the DOD contract and the SOW. *Id.* Express Scripts, Inc., communicates the officer's instructions to the ESI Mail Order Pharmacies as needed to operate the TMOP. *Id.* The federal government and the ESI Mail Order Pharmacies also directly interact—for instance, "during some audits that are performed under the contract." *Id.* ¶ 27. Indeed, the SOW specifically grants the Government the right to directly audit mail-order pharmacies. SOW § C.11.4.2.

All these facts led the Fourth Circuit to conclude that the ESI Mail Order Pharmacies were "carrying out the duties of DOD" and were "at all times, subject to the federal government's

guidance and control." *Arlington County*, 996 F.3d at 253; *accord id.* at 252 (holding that the ESI Mail Order Pharmacies "performed the day-to-day management of the TMOP under the terms of the contract and were subject to extensive oversight by the federal government").

What's more, the record before this Court surpasses the one in *Arlington County* with respect to the DOD's monitoring. The record here establishes that in addition to audits, DOD representatives also visit the ESI Mail Order Pharmacies' facilities "to review the operations." *Frederick* Cahill Decl. ¶ 26. During those visits, DOD representatives tour the facilities with the ESI Mail Order Pharmacies' employees, and, on at least one occasion, the employees showed the representatives specialized bottle tops approved for use for TRICARE prescriptions. *Id.*

Where, as here, the contract at issue contains such "precise specifications" and federal officers "closely monitor[]" the contractor's compliance with that contract, the "acting under" element is satisfied. *Bennett*, 607 F.3d at 1087; *see also Cherokee Nation*, 327 F. Supp. 3d at 1070.

Plaintiffs do not seriously dispute the extensive control that the DOD has over how the ESI Mail Order Pharmacies operate the TMOP. In fact, they seemingly embrace it. According to Plaintiffs, DOD has ***so much control*** over the details of the ESI Mail Order Pharmacies' work that they are merely performing "rote administrative tasks." *Frederick* MTR at 7; *Roanoke* MTR at 7. Unsurprisingly, Plaintiffs cite no authority suggesting that a private entity ceases to be "acting under" a federal officer when the federal officer exercises too much control over the private entity.

Plaintiffs also resort to a formalistic argument that the Fourth Circuit saw right through: that the ESI Mail Order Pharmacies are not acting under a federal officer because they are subcontractors and not themselves parties to the contract between DOD and Express Scripts, Inc. *See Frederick* MTR at 6; *Roanoke* MTR at 6. As the Fourth Circuit correctly recognized, "the absence of a *direct contractual relationship* with the federal government is *not* a bar to removing

an action under" the federal-officer-removal statute. *Arlington County*, 996 F.3d at 254. Many other courts have held the same. *See, e.g.*, *Badilla v. Nat'l Air Cargo, Inc.*, 2014 WL 6390324, at *2 (W.D.N.Y. Nov. 17, 2014); *see also Frederick County*, Dkt. No. 29 at 25–26 (collecting cases).

These holdings reinforce the wide net that the federal-officer-removal statute was designed to cast. If subcontractors could not remove under the statute, then its promises of broad protection would be "significantly curtailed as federal contracts are often carried out, at least in part, through subcontractors." *Arlington County*, 996 F.3d at 254. Courts thus properly look beyond whether the subcontractor is a party to a contract and instead focus on "the nature of the relationship between" the subcontractor and the federal government. *Id.*

Here, as explained above, the relationship between the ESI Mail Order Pharmacies and DOD was particularly close, leaving little to no discretion to the ESI Mail Order Pharmacies when implementing the TMOP. Indeed, although the DOD contract was between DOD and Express Scripts, Inc., the SOW expressly contemplates subcontractors, like the ESI Mail Order Pharmacies, and it requires that those subcontractors "be thoroughly trained and knowledgeable regarding the requirements of" the SOW. *Id.* at 253 (quoting SOW § C.16.1). And through the audits, the DOD contract makes the subcontractors "directly accountable to the federal government." *Id.*

Moreover, one of the DOD contract's primary purposes was to provide mail-order-pharmacy services. SOW § C.2. Express Scripts, Inc., is not itself a pharmacy, so, as the Fourth Circuit concluded, DOD had "to anticipate that Express Scripts, Inc. would use subcontractors to operate and administer the TMOP." *Arlington County*, 996 F.3d at 253. And the record here reveals that DOD did more than anticipate; it was aware of and approved of every site that the ESI Mail Order Pharmacies used for delivering drugs under the TMOP. *Frederick* Cahill Decl. ¶¶ 17–18.

In sum, the ESI Mail Order Pharmacies are acting under the direction of a federal officer when running the TMOP under the SOW, subject to the DOD's guidance and control.

### 2. Express Scripts, Inc., also satisfies the "acting under" prong.

Express Scripts, Inc., also independently satisfies the "acting under" prong based on the PBM services it provides to TRICARE members under its DOD contract.

The SOW dictates every aspect of the PBM services that Express Scripts, Inc., performs for TRICARE members. *Frederick* Cahill Decl. ¶ 9. For example, it mandates the exclusive use of the DOD formulary. *Id.* ¶ 10. It sets out the claim-processing requirements. *Id.* ¶¶ 11, 13; SOW § C.6. And it specifies the restrictions that Express Scripts, Inc., could enforce for prescription opioids and other medications through the "Prescription Restriction Program." *Frederick* Cahill Decl. ¶ 12; SOW § C.9. All these are tasks that DOD would otherwise have had to do itself.

The Sixth Circuit previously noted that Express Scripts, Inc., had "properly removed" a case under the federal-officer-removal statute because it was acting under DOD when providing PBM services to TRICARE members. *Grider Drug, LLC v. Express Scripts, Inc.*, 500 F. App'x 402, 404 (6th Cir. 2012). As the district court in that case explained, Express Scripts, Inc., as a PBM, assists DOD by (among other things) "providing the retail pharmacy network and acting as a fiscal intermediary," and by "issu[ing] funds to pay for each TRICARE prescription only after receiving verification and authorization from the DoD." 2009 U.S. Dist. Lexis 107515, at *7. Accordingly, the district court concluded "that when executing its duties under this contract ESI [Express Scripts, Inc.,] is 'acting under' the Secretary of the DoD because it is performing a job that the DoD otherwise would have to perform." *Id.* at *7. The same is true here.

**B.      The Express Scripts Defendants alternatively satisfy the "acting under" prong through their acts under the Federal Employees Health Benefits Program.**

In the notice of removal and prior response to Frederick County's motion to remand, the Express Scripts Defendants fully laid out their alternative argument why their activities under the FEHBP independently satisfy the "acting under" prong. *See Frederick County*, Dkt. No. 1 at 13–15 & Dkt No. 29 at 24–28.[5] Frederick County completely ignored the Express Scripts Defendants' FEHBP argument in its prior briefing, so the Express Scripts Defendants largely rest on their original filings. They only briefly summarize the argument here and stress that *Arlington County*'s reasoning applies equally to the Express Scripts Defendants' conduct under the FEHBP.

In the Federal Employees Health Benefits Act of 1959, 5 U.S.C. § 8901 *et seq.*, Congress empowered the Office of Personnel Management ("OPM") "to contract with private carriers for federal employees' health insurance." *Coventry Health Care of Missouri v. Nevils*, 137 S. Ct. 1190, 1194 (2017). Participating insurance plans are known as FEHBP plans. Express Scripts, Inc., and the ESI Mail Order Pharmacies provide PBM and mail-order-pharmacy services for several FEHBP plans, including in Frederick County. *Frederick County*, Dkt. No. 29-10 ("Donnelly Decl.") ¶¶ 3–4. In that capacity, the Express Scripts Defendants are subject to OPM's requirements, oversight, and control. *See Frederick County*, Dkt. No. 29 at 12–17, 27.

Thus, just as the Eighth Circuit held in affirming removal by a local insurance vender to a FEHBP plan without a direct contract with OPM, the Express Scripts Defendants are "help[ing] the government fulfill the basic task of establishing a health benefits program for federal

---

[5] The Express Scripts Defendants did not discuss the FEHBP in their *City of Roanoke* notice of removal. Should the Court find it necessary to reach the alternative FEHBP basis for removal, the Express Scripts Defendants request leave to amend their *City of Roanoke* notice of removal to set out the FEHBP allegations that support removal jurisdiction. *See Tech Hills II Associates v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 969 (6th Cir. 1993) (allowing amendment of notice of removal to add missing allegations supporting removal jurisdiction).

employees." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1233 (8th Cir. 2012). And because OPM has extensive control over the Express Scripts Defendants in helping it carry out that goal, the Express Scripts Defendants are acting under a federal officer.

## II.     The Express Scripts Defendants' charged conduct relates to their acts under TRICARE and the Federal Employees Health Benefits Program.

Under the federal-officer-removal statute's second prong, the removing defendant must show that the charged conduct was "for ***or relating to*** any act under color" of the federal office. 28 U.S.C. § 1442(a)(1) (emphasis added). Until 2011, courts interpreted this prong as requiring that the removing defendant show "a nexus, a 'causal connection' between the charged conduct and the asserted official authority." *Bennett*, 607 F.3d at 1088 (cleaned up). That "causal nexus" test, however, was based on the pre-2011 language stating that the charged conduct must be "for any act under color of office." *Ohio State Chiropractic*, 647 F. App'x at 624. In other words, the old language lacked the "or relating to" phrase.

In the Removal Clarification Act of 2011, Congress amended that phrase to its current form. *Id.* The new "relating to" language was, as the Sixth Circuit has recognized, "intended to broaden the universe of acts that enable Federal officers to remove to Federal court." *Id.* In keeping with that holding, district courts within this circuit have recognized that the "federal officer removal statute thus no longer imposes a 'direct causal nexus' requirement." *Reed v. Tyson Foods, Inc.*, 2021 WL 5107725, at *4 (W.D. Tenn. Nov. 3, 2021).

Although the Sixth Circuit has not definitively interpreted this new statutory language, other circuits—including the Fourth Circuit in *Arlington County*—have held that this prong now requires a "***connection or association*** between the act in question and the federal office." *Arlington County*, 996 F.3d at 256 (emphasis added; citation omitted); *see also, e.g.*, *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc) (adopting "connection" test over outdated

"causal nexus" test); *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015) (same). This new test echoes how the Supreme Court has interpreted the phrase "relating to," which is a "broad" phrase meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into ***association with or connection*** with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (emphasis added; citation omitted). This Court should, like the district court in *Reed*, adopt the well-reasoned decisions of other Circuits and apply the "connection or association" test—the test that matches how the Supreme Court has defined the phrase "relating to."

In any event, the Express Scripts Defendants satisfy either test.

As to the ESI Mail Order Pharmacies, *Arlington County* paves the way. The allegations in the *Arlington County* complaint relevant to this issue are word-for-word identical to Plaintiffs' allegations here. This Court's analysis can thus track (exactly) the Fourth Circuit's analysis, which also happens to mirror this Court's own prior discussion of this prong in *Cherokee Nation*.

In their complaints, Plaintiffs allege that the ESI Mail Order Pharmacies "did nothing to stem the flow of excess opioids into" Frederick and Roanoke. *Frederick County*, Dkt. No. 1-2 ("*Frederick* Compl.") ¶ 16; *City of Roanoke*, Dkt. No. 48 ("*Roanoke* Compl.") ¶ 15. They purportedly "purchased, dispensed and profited from the movement of the brand and generic opioids at issue in this litigation." *Frederick* Compl. ¶ 487; *Roanoke* Compl. ¶ 485. And they supposedly "made money on every opioid prescription they filled," even though they allegedly knew that opioids were oversupplied. *Frederick* Compl. ¶¶ 16, 422; *Roanoke* Compl. ¶¶ 15, 420. Plaintiffs then purport to calculate the total number of opioid pills that the ESI Mail Order Pharmacies purchased and assert that those pills were "dispensed . . . by mail to patients nationwide, including in" Frederick and Roanoke. *Frederick* Compl. ¶¶ 489–91; *Roanoke* Compl.

¶¶ 487–89. Plaintiffs' allegations wrap up with a public-nuisance claim: The ESI Mail Order Pharmacies allegedly "created a condition of a grossly excessive amount of opioids in circulation that was and continues to be dangerous to the public and has injured those in" Frederick and Roanoke. *Frederick* Compl. ¶ 591; *Roanoke* Compl. ¶ 589.

As the Fourth Circuit held, these allegations "necessarily include[] activity that is ***directly connected*** to the DOD contract" because the ESI Mail Order Pharmacies were "required to act in conformity with that contract" when mailing opioids to military members within Plaintiffs' borders. *Arlington County*, 996 F.3d at 257 (emphasis added); *see also Frederick* Cahill Decl. ¶¶ 4–5, 8; *Roanoke* Cahill Decl. ¶¶ 4–5, 8. Plaintiffs blame the ESI Mail Order Pharmacies "for filling certain opioid prescriptions and causing a public nuisance, but the ESI Defendants were required to fill those prescriptions to comply with their duties under the DOD contract because they had no ability to modify the contract." *Arlington County*, 996 F.3d at 257. The same is true for the prescriptions filled for federal employees under FEHBP plans. In short, Plaintiffs' allegations and claims relate to the ESI Mail Order Pharmacies' "governmentally-directed conduct." *Id.*

Plaintiffs try to use artful pleading to escape this conclusion. According to Plaintiffs, no causal connection exists between the ESI Mail Order Pharmacies and the DOD contract because the complaints do not mention the DOD contract by name. *Frederick* MTR at 3 n.2, 10; *Roanoke* MTR at 3 n.2, 9. The Fourth Circuit rejected this argument because it would "elevate form over substance." *Arlington County*, 996 F.3d at 256. Plaintiffs chose to put "every opioid prescription" filled at issue, *Frederick* Compl. ¶¶ 16, 422; *Roanoke* Compl. ¶¶ 15, 420; this necessarily includes opioids that the ESI Mail Order Pharmacies filled through the TMOP and the FEHBP plans.

This Court rejected a similar argument in *Cherokee Nation*. There, the plaintiffs (Native American tribes) argued that no causal nexus existed between the actions directed by the federal

officer and the complaint because they had not expressly alleged that any diverted opioids came from tribal healthcare facilities. 327 F. Supp. 3d at 1077. This Court disagreed. It correctly realized that the tribes—like Plaintiffs here—"put *all* prescription opioids at issue and allege[d] that diversion can occur at any point in the supply chain, including those opioids supplied" under McKesson's contract with the Department of Veterans Affairs. *Id.* Thus, there was a "causal nexus between McKesson's action under the direction of a federal officer (filling orders pursuant to the PPV contract) and Cherokee's claim of opioid diversion (that McKesson knew or should have known that the orders were suspicious and should not have filled them)." *Id.* So too here. Plaintiffs' allegations (filling opioid prescriptions) have a connection with the ESI Mail Order Pharmacies' acts under color of federal office (mailing opioids to TRICARE members through the TMOP and doing the same for FEHBP members through their federal healthcare plans).

Frederick County's allegations against Express Scripts, Inc., are also connected and associated with its role under the DOD contract and FEHBP plans. Frederick County alleges that Express Scripts, Inc., as a PBM, should have controlled "the distribution of prescription opioids," *Frederick* Compl. ¶ 532, especially by altering its formularies to impose more restrictions on opioids and to cover more nonopioids, *id.* ¶¶ 572–579. But DOD specifies the formulary for TRICARE members as well as the requirements and restrictions that Express Scripts, Inc., must adhere to when adjudicating claims by TRICARE members for prescription opioids and other medications. *Frederick* Cahill Decl. ¶¶ 9–13; SOW §§ C.6, C.9. And OPM imposes similar requirements for FEHBP plans. *See Frederick County*, Dkt. No. 29 at 12–17, 27.

The conduct alleged against Express Scripts, Inc. (purported failure to control opioid prescriptions, including through formularies) is therefore connected and associated with the very tasks it must carry out for DOD and the FEHBP plans (implementing the government's formulary

decisions and processing claims by military members and federal employees for prescription opioids and other medications). Express Scripts, Inc., thus fulfills the "related to" prong.

Plaintiffs also assert that TRICARE members' involvement with opioids is too *de minimis* to support removal jurisdiction. *Frederick* MTR at 10 n.5; *Roanoke* MTR at 10 n.6. The Express Scripts Defendants previously addressed this argument in full. *See Frederick County*, Dkt. No. 29 at 30–31. In short, there is no *de minimis* exception to removal jurisdiction, and even if there were, the Express Scripts Defendants' activities for TRICARE are not *de minimis*. Among other things, DOD is the Express Scripts Defendants' second largest client, and the Express Scripts Defendants have processed many claims for TRICARE members. *Frederick* Cahill Decl. ¶¶ 5–6, 8; *Roanoke* Cahill Decl. ¶¶ 5–6, 8.

## III.   The Express Scripts Defendants have colorable federal defenses.

The final element—the colorable-federal-defense prong—is a low bar. A defense need only be "plausible." *Bennett*, 607 F.3d at 1089. Here, the Express Scripts Defendants have two such defenses: (1) government contractor, and (2) preemption.

*Government-contractor defense.* The government-contractor defense applies when "(a) the United States approved reasonably precise specifications; (b) the equipment conformed to those specifications; and (c) the supplier warned the United States about dangers in the use of the equipment known to the supplier but not to the United States." *Cherokee Nation*, 327 F. Supp. 3d at 1078 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500, 501 (1988)). It covers both contractors and subcontractors alike. *See Tate v. Boeing Helicopters*, 140 F.3d 654, 658 n.2 (6th Cir. 1988); *see also, e.g.*, *Arlington County*, 469 F.3d at 255 (applying government-contractor defense to a subcontractor); *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3d Cir. 1990) (same); *Jackson v. Avondale Indus. Inc.*, 469 F. Supp. 3d 689, 705 (E.D. La. 2020) (collecting cases).

At its core, the defense protects contractors and subcontractors from the state "tort liability" that may befall them should they carry out the federal contract. *Bennett*, 607 F.3d at 1089. Although the defense originated in the military-procurement-contract context, this Court correctly recognized that "the Sixth Circuit specifically addressed whether the government contractor defense was available to non-military service contractors and found that it was." *Cherokee Nation*, 607 F. Supp. 3d at 1078 (citing *Bennett*, 607 F.3d at 1091).

The Express Scripts Defendants have a plausible government-contractor defense for the same reasons that this Court found the defense plausible in *Cherokee Nation*. There, this Court found that McKesson had established the first two requirements because (1) McKesson plausibly alleged that its contract with the government to supply opioids to the Cherokee Nation showed that "the United States [had] approved reasonably precise specifications"; and (2) McKesson's performance under the contract "conformed to those specifications." *Id.* In *Arlington County*, the Fourth Circuit applied that holding to the ESI Mail Order Pharmacies' actions. It concluded that, "[s]imilar to McKesson [in *Cherokee Nation*], the ESI Defendants have plausibly alleged that they distributed opioid medications pursuant to reasonably precise specifications found in the DOD contract and, more specifically, the SOW." *Arlington County*, 996 F.3d at 243.

The same reasoning applies here. The Express Scripts Defendants have alleged that they provide PBM services and operate the TMOP for TRICARE members under the SOW's detailed specifications and that they comply with those specifications. Similarly, they allege that they provide the same services to FEHBP members under OPM's robust requirements, which they likewise follow.

As to the third element of the government-contractor defense, this Court held that McKesson had satisfied it because McKesson could "plausibly argue that it was aware of no

16

greater danger than the government was already aware of." *Cherokee Nation*, 327 F. Supp. 3d at 1078. Here, as the Fourth Circuit recognized, the Express Scripts Defendants can likewise plausibly argue that they "were not aware of any greater dangers than DOD or the federal government more generally." *Arlington County*, 996 F.3d at 256.

**Preemption.** The Express Scripts Defendants have also raised a colorable preemption defense under two federal statutes: (1) the TRICARE statute, and (2) the Federal Employees Health Benefits Act of 1959 ("FEHBA"), 5 U.S.C. § 8901 *et seq.*

The TRICARE statute has an express preemption provision that preempts any state laws to the extent that the Secretary of Defense determines that those laws are "inconsistent with a specific provision of the contract" or that "preemption . . . is necessary to implement or administer the provisions of the [TRICARE] contract or to achieve any other important Federal interest." 10 U.S.C. § 1103(a). The Secretary has done so. *See* 32 C.F.R. § 199.21(o). Here, as the Fourth Circuit held, "it is plausible that the ESI Defendants have a valid preemption defense" under the TRICARE statute against Plaintiffs' state-law claims—both common law and statutory. *Arlington County*, 996 F.3d at 256. That is because the conduct about which Plaintiffs complain is conduct that the Express Scripts Defendants "were required to carry out to comply with the language of the DOD contract as well as the TRICARE statute, regulations and policies." *Id.*; *see also Grider*, 2009 U.S. Dist. Lexis 107515, at *10 (finding "colorable" the defense that 32 C.F.R. § 199.21(o) preempts state-law claims against Express Scripts, Inc.).

FEHBA, too, contains an express preemption provision displacing any state laws relating to coverage or benefits afforded by FEHBP plans. 5 U.S.C. § 8902(m)(1); *see Coventry*, 137 S. Ct. 1190 (holding that FEHBA preempted state laws that bar enforcement of contractual subrogation and reimbursement provisions). Here, Frederick County's state-law claims are preempted under

FEHBA because they seek to interfere with uniform FEHBP plan administration by trying to dictate the terms of FEHBP plans when it comes to opioids. They are therefore related to the coverage and benefits provided by FEHBP plans.

Whether the Express Scripts Defendants will prevail on these defenses remains to be seen. But success on the merits is irrelevant for federal-officer-removal purposes; the defenses need only be colorable. Here, they are.

### Conclusion

The Express Scripts Defendants have met the requirements of the federal-officer-removal statute. The Fourth Circuit has already so held on a materially identical complaint and record. This Court should adopt that correct conclusion and deny Plaintiffs' motions to remand.[6]

---

[6] If this Court decides to grant remand in one or both of these Virginia cases, then the Express Scripts Defendants request that the Court wait on directing the clerk to execute any remand order for at least 30 days so that the Express Scripts Defendants may seek a stay and an appeal. "The Federal Officer Removal Statute is unique in that it provides a right to appeal where a case removed under 28 U.S.C. § 1442 is subsequently remanded." *Cherokee Nation*, 327 F. Supp. 3d at 1069 (citing 28 U.S.C. § 1447(d)).

Dated: September 30, 2022

Respectfully submitted,

/s/ Jonathan Cooper
Michael Lyle
Jonathan Cooper
QUINN EMANUEL URQUHART &
  SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Counsel for Defendants Express Scripts, Inc.,
Evernorth Health, Inc. (formerly Express Scripts
Holding Co.), ESI Mail Pharmacy Service, Inc.,
and Express Scripts Pharmacy, Inc.*