# Appendix B

# DISTRIBUTORS OKLAHOMA
# SETTLEMENT AGREEMENT

**Table of Contents**

| | | |
|---|---|---|
| I. | Overview | 1 |
| II. | Conditions to Effectiveness of Agreement | 1 |
| III. | Participation by Subdivisions | 2 |
| IV. | Settlement Payments | 3 |
| V. | Plaintiffs' Attorneys' Fees and Costs | 4 |
| VI. | Release | 4 |
| VII. | Miscellaneous | 4 |

Exhibit A Primary Subdivisions .......................................................................................... A-1

Exhibit B Agreed List of Litigating Subdivisions ................................................................. B-1

Exhibit C Oklahoma Payment Schedule ............................................................................... C-1

Exhibit D ABC IRS Form 1098-F ........................................................................................ D-1

Exhibit E Cardinal Health IRS Form 1098-F ....................................................................... E-1

Exhibit F McKesson IRS Form 1098-F ................................................................................ F-1

Exhibit G Subdivision Settlement Participation Form .......................................................... G-1

Exhibit H Consent Judgment and Stipulation of Dismissal with Prejudice ......................... H-1

Exhibit I Distributor Global Settlement Agreement ............................................................. I-1

I

## DISTRIBUTORS OKLAHOMA SETTLEMENT AGREEMENT

### I.      Overview

This Distributors Oklahoma Settlement Agreement (the "*Agreement*") sets forth the terms and conditions of a settlement agreement between and among the State of Oklahoma, McKesson Corporation ("*McKesson*"), Cardinal Health, Inc. ("*Cardinal*") and AmerisourceBergen Corporation ("*Amerisource*") (collectively, the "*Agreement Parties*") to resolve opioid-related Claims against McKesson, Cardinal, and/or Amerisource (collectively, the "*Settling Distributors*").

By entering into this Agreement and except as otherwise provided for in this Agreement, the State of Oklahoma and its Participating Subdivisions agree to be bound by all terms and conditions of Exhibit I.[1]  The Settling Distributors agree to treat the State of Oklahoma for all purposes as if it were a Settling State under Exhibit I and its Participating Subdivisions for all purposes as if they were Participating Subdivisions under Exhibit I, except as specifically otherwise set forth in this Agreement.  Unless stated otherwise in this Agreement, the terms of this Agreement are intended to be consistent with the terms of Exhibit I and shall be construed accordingly.  Unless otherwise defined in this Agreement, all capitalized terms in this Agreement shall be defined as they are in Exhibit I.

The Settling Distributors have agreed to the below terms for the sole purpose of settlement, and nothing herein, including in any exhibit to this Agreement, may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, or any misfeasance, nonfeasance, or malfeasance, all of which the Settling Distributors expressly deny.  No part of this Agreement, including its statements and commitments, and its exhibits, shall constitute or be used as evidence of any liability, fault, or wrongdoing by the Settling Distributors.  Unless the contrary is expressly stated, this Agreement is not intended for use by any third party for any purpose, including submission to any court for any purpose.

### II.     Conditions to Effectiveness of Agreement

A.     *Exhibit I Conditions to Effectiveness.*

1.      The Agreement Parties acknowledge that certain deadlines set forth in Section VIII of Exhibit I passed before the execution of this Agreement.  For that reason, (a) Settling Distributors agree to treat the State of Oklahoma as satisfying the deadlines set forth in Section VIII of Exhibit I provided that the State of Oklahoma satisfies its obligations set

---

[1] Exhibit I was last updated on May 27, 2022.  Further updates to Exhibit I shall be deemed incorporated into this Agreement as appropriate and consistent with the terms of this agreement, and shall supersede all earlier versions of the updated provisions where appropriate.

III

forth in this <u>Section II,</u> and (b) the State of Oklahoma agrees to treat Settling Distributors as having satisfied all notice obligations under Section VIII.B of <u>Exhibit I</u> as to the State of Oklahoma.

2.      The State of Oklahoma shall deliver all signatures and releases required by the Agreement to be provided by the Settling States to the Settling Distributors by September 30, 2022.  This <u>Section II.A.2</u> supersedes the deadline for delivering those signatures and releases set forth in Section VIII.A.1 of <u>Exhibit I</u>.

B.      *Participation by Subdivisions*.  This Agreement shall become effective upon one of the following conditions being satisfied:

1.      One hundred percent (100%) of Litigating Subdivisions and Non-Litigating Primary Subdivisions in the State of Oklahoma must become Participating Subdivisions by September 23, 2022.  For the avoidance of doubt, all Subdivisions in the State of Oklahoma that are General Purpose Governments with a population greater than 10,000 must become Participating Subdivisions by such date.

2.      If the condition set forth in <u>Section II.B.1</u> is not met, the Settling Distributors shall have sole discretion to accept the terms of this Agreement, which shall become effective upon notice provided by the Settling Distributors to the State of Oklahoma.  If the condition set forth by <u>Section II.B.1</u> is not met and Settling Distributors do not exercise discretion to accept this Agreement, this Agreement will have no further effect and all releases and other commitments or obligations contained herein will be void.

C.      *Dismissal of Claims*.  Provided that the conditions in <u>Sections II.B</u> have been satisfied, the State of Oklahoma shall file the Consent Judgment described in Section I.N of <u>Exhibit I</u> and attached hereto as <u>Exhibit H</u> ("*Oklahoma Consent Judgment*") with the District Court of Bryan County, State of Oklahoma ("*Oklahoma Court*") on or before November 1, 2022.  This <u>Section II.C</u> supersedes the deadline for filing a Consent Judgment set forth in Section VIII.B of <u>Exhibit I</u>.  In the event that the Court declines to enter the Oklahoma Consent Judgment, each Settling Distributor shall be entitled to terminate the Agreement as to itself and shall be excused from all obligations under the Agreement, and if a Settling Distributor terminates the Agreement as to itself, all releases and other commitments or obligations contained herein with respect to that Settling Distributor will be null and void.  The date of the entry of the Oklahoma Consent Judgment shall be the effective date of this Agreement ("*Oklahoma Effective Date*").

## III.      Participation by Subdivisions

A.      *Notice*.  The Office of the State of Oklahoma Attorney General shall send individual notice of the opportunity to participate in this Agreement and the requirements for participation to all Subdivisions eligible to participate who have not returned an executed Subdivision Settlement Participation Form within fifteen (15) days of the execution of this Agreement.  The Office of the State of Oklahoma Attorney General may also provide general notice reasonably calculated to alert Subdivisions, including publication and other standard forms of notification.  Nothing contained herein shall preclude the State of Oklahoma from providing further notice to, or from contacting any of its Subdivision(s) about, becoming a Participating Subdivision.

2

IV

B.  *Trigger Date for Later Litigating Subdivisions.*  Notwithstanding Sections I.EE and I.GGGG of Exhibit I, as to the State of Oklahoma, Settling Distributors and the State of Oklahoma agree to treat the Trigger Date for Primary Subdivisions as September 23, 2022 and the Trigger Date for all other Subdivisions as June 24, 2022.

C.  *Initial and Later Participating Subdivisions.*  Notwithstanding Sections I.BB, I.CC, I.FF, VII.D and VII.E of Exhibit I, any Participating Subdivision in Oklahoma that meets the applicable requirements for becoming a Participating Subdivision set forth in Section VII.B or Section VII.C of Exhibit I on or before September 23, 2022 shall be considered an Initial Participating Subdivision.  Participating Subdivisions that are not Initial Participating Subdivisions but meet the applicable requirements for becoming Participating Subdivisions set forth in Section VII.B or Section VII.C of Exhibit I after September 23, 2022 shall be considered Later Participating Subdivisions.

D.  *Subdivision Settlement Participation Forms.*  Each Subdivision Settlement Participation Form submitted by a Participating Subdivision from the State of Oklahoma shall be materially identical to Exhibit G to this Agreement.  Nothing in Exhibit G is intended to modify in any way either the terms of this Agreement or the terms of Exhibit I, both of which the State of Oklahoma and Participating Subdivisions agree to be bound.  To the extent that any Subdivision Settlement Participation Form submitted by any Participating Subdivision is worded differently from Exhibit G to this Agreement, or interpreted differently from Exhibit I and this Agreement in any respect, the Exhibit I and this Agreement control.

## IV.  Settlement Payments

A.  *Schedule.*  Annual Payments under this Agreement shall be calculated as if the State of Oklahoma were a Settling State under Exhibit I and shall be made pursuant to the terms of Section IV of Exhibit I except that, as to the State of Oklahoma, the Payment Date for Payment Year 1 shall be December 1, 2022 and the Payment Date for Payment Year 2 shall be December 1, 2022.  For the avoidance of doubt, the sole component of the State of Oklahoma's Annual Payment is the portion of the Net Abatement Amount allocated to the State of Oklahoma under Exhibit I ("*Oklahoma Abatement Amount*").  The maximum possible Oklahoma Abatement Amount is $293,740,207.19, which, if all incentives are met, would be paid consistent with the schedule set forth on Exhibit C.

B.  *Use of Payment.*  The Oklahoma Abatement Amount paid under this Agreement shall be used as provided for in Section V.B. of Exhibit I.  In addition, at least eighty-five percent (85%) of the total amount paid under this Agreement, including amounts paid under Section IV.A and amounts paid under Section V, shall be used for Opioid Remediation.  Nothing herein shall affect the allocation of the Oklahoma Abatement Amount payments between the State and its Participating Subdivisions, which shall be governed by a separate State-Subdivision Agreement.

C.  *Nature of Payment.*  The State of Oklahoma and its Participating Subdivisions agree that payments made to the State of Oklahoma and its Participating Subdivisions under this Agreement are properly characterized as described in Section V.F of Exhibit I.

3

V

### V.    Plaintiffs' Attorneys' Fees and Costs

A.      *Interaction with Exhibit I.*  Notwithstanding any contrary provision in Exhibit I, payments to cover attorneys' fees and costs under this Agreement shall be made pursuant to this Section V.

B.      *State Fees and Costs.*  Settling Distributors shall pay the $6,609,154.66 Fixed Amount for the State of Oklahoma on the schedule set forth in Exhibit C; *provided, however,* that the Payment Dates for Payment Years 1 and 2 shall be December 1, 2022.

C.      *Participating Litigating Subdivisions' Attorneys' Fees and Costs.*  $7,654,253.00 is the estimated share of the Contingency Fee Fund amount described in Section II.D of Exhibit R of the Global Settlement allocable to Litigating Subdivisions in the State of Oklahoma (the "Estimated Oklahoma Contingency Fee Allocation").  This reflects the Global Settlement Contingency Fee Fund model's current estimate for the allocation to Oklahoma's Litigating Subdivisions in the Global Settlement Contingency Fee Fund.  The actual amount may be greater or less.  Within fourteen (14) days of the execution of this Agreement, the Distributors will take such action(s) necessary to obtain permission from the Fee Panel (including through extension of time for the date of application) for counsel for Oklahoma's Litigating Subdivisions to apply to the Contingency Fee Fund of the Global Settlement.  Thereafter, attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions who meet the criteria set forth in Section II.G of Exhibit R of the Global Settlement may apply for the Contingency Fee Fund as set forth in Exhibit R of the Global Settlement.  Nothing in Exhibit R of the Global Settlement Agreement shall be interpreted to preclude the Litigating Subdivisions from recovering fees and costs under a separate State Back-Stop Agreement with the State of Oklahoma.

### VI.    Release

A.      *Scope.*  As of the Oklahoma Effective Date, Section XI of Exhibit I is fully binding on, and effective with respect to, all Releasors under this Agreement.  Accordingly, as of the Oklahoma Effective Date, the Released Entities are hereby released and forever discharged from all Released Claims of Releasors, including the State of Oklahoma and its Participating Subdivisions.

### VII.    Miscellaneous

A.      *No Admission.*  The Settling Distributors do not admit liability, fault, or wrongdoing.  Neither this Agreement nor the Oklahoma Consent Judgment shall be considered, construed or represented to be (1) an admission, concession or evidence of liability or wrongdoing or (2) a waiver or any limitation of any defense otherwise available to the Settling Distributors.  It is the understanding and intent of the Agreement Parties that no portion of the Agreement shall be entered into evidence in any other action against the Settling Distributors, among other reasons, because it is not relevant to such action.  For the avoidance of any doubt, nothing herein shall prohibit a Settling Distributor from entering this Agreement into evidence in any litigation or arbitration concerning a Settling Distributor's right to coverage under an insurance contract.

**VII**

B.      *Tax Cooperation and Reporting.*  The State of Oklahoma and its Participating Subdivisions will be bound by Section V.F and Section XIV.F of Exhibit I, except (1) as set forth in the final sentence of this Section VII.B and (2) that the State of Oklahoma shall be its own Designated State and shall designate its own "appropriate official" within the meaning of Treasury Regulations Section 1.6050X-1(f)(1)(ii)(B).  The IRS Forms 1098-F to be filed with respect to this Agreement are attached as Exhibit D, Exhibit E, and Exhibit F.  The State of Oklahoma and its Participating Subdivisions agree that any return, amended return, or written statement filed or provided pursuant to Section XIV.F.4 of Exhibit I with respect to this Agreement, and any similar document, shall be prepared and filed in a manner consistent with reporting each Settling Distributor's portion of the aggregate amount of payments paid or incurred by the Settling Distributors hereunder as the "Total amount to be paid" pursuant to this Agreement in Box 1 of IRS Form 1098-F, each Settling Distributor's portion of the amount equal to the aggregate amount of payments paid or incurred by the Settling Distributors hereunder less the Compensatory Restitution Amount as the "Amount to be paid for violation or potential violation" in Box 2 of IRS Form 1098-F and each Settling Distributor's portion of the Compensatory Restitution Amount as "Restitution/remediation amount" in Box 3 of IRS Form 1098-F, as reflected in Exhibit D, Exhibit E, and Exhibit F.

C.      *No Third-Party Beneficiaries.*  Except as expressly provided in this Agreement, no portion of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not the State of Oklahoma or a Released Entity.  The State of Oklahoma may not assign or otherwise convey any right to enforce any provision of this Agreement.

D.      *Cooperation.*  Each Agreement Party and each Participating Subdivision agrees to use its best efforts and to cooperate with the other Agreement Parties and Participating Subdivisions to cause this Agreement to become effective, to obtain all necessary approvals, consents and authorizations, if any, and to execute all documents and to take such other action as may be appropriate in connection herewith.  Consistent with the foregoing, each Agreement Party and each Participating Subdivision agrees that it will not directly or indirectly assist or encourage any challenge to this Agreement or the Oklahoma Consent Judgment by any other person, and will support the integrity and enforcement of the terms of this Agreement and the Oklahoma Consent Judgment.

E.      *Enforcement.*  All disputes between Settling Distributors and the State of Oklahoma and/or the Participating Subdivisions in the State of Oklahoma shall be handled as specified in Section VI of Exhibit I, including the referral of relevant disputes to the National Arbitration Panel.

F.      *No Violations of Applicable Law.*  Nothing in this Agreement shall be construed to authorize or require any action by Settling Distributors in violation of applicable federal, state, or other laws.

G.      *Modification.*  This Agreement may be modified by a written agreement of the Agreement Parties.  For purposes of modifying this Agreement or the Oklahoma Consent Judgment, Settling Distributors may contact the Oklahoma Attorney General for purposes of coordinating this process. The dates and deadlines in this Agreement may be extended by written agreement of the Agreement Parties, which consent shall not be unreasonably withheld.

**VII**

  H.  *No Waiver.* Any failure by any Agreement Party to insist upon the strict performance by any other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

  I.  *Entire Agreement.* This Agreement, including all Exhibits, represents the full and complete terms of the settlement entered into by the Agreement Parties, except as provided herein. In any action undertaken by the Agreement Parties, no prior versions of this Agreement and no prior versions of any of its terms may be introduced for any purpose whatsoever.

  J.  *Counterparts.* This Agreement may be executed in counterparts, and a facsimile or .pdf signature shall be deemed to be, and shall have the same force and effect as, an original signature.

  K.  *Notice.* All notices or other communications under this Agreement shall be provided to the following via email and overnight delivery to:

    *Copy to AmerisourceBergen Corporation's attorneys at:*
    Michael T. Reynolds
    Cravath, Swaine & Moore LLP
    825 8th Avenue
    New York, NY 10019
    mreynolds@cravath.com

    *Copy to Cardinal Health, Inc.'s attorneys at:*
    Elaine Golin
    Wachtell, Lipton, Rosen & Katz
    51 West 52nd Street
    New York, NY 10019
    epgolin@wlrk.com

    *Copy to McKesson Corporation's attorneys at*:
    Thomas J. Perrelli
    Jenner & Block LLP
    1099 New York Avenue, NW, Suite 900
    Washington, DC 20001-4412
    TPerrelli@jenner.com

    *Copy to the State of Oklahoma at:*
    Dawn Cash
    Office of Oklahoma Attorney General
    313 NE 21st Street
    Oklahoma City, OK 73105
    dawn.cash@oag.ok.gov

    Michael Burrage

VII

Whitten Burrage LLC
512 N. Broadway Avenue, Suite 300
Oklahoma City, OK 73102
mburrage@whittenburragelaw.com

Brad Beckworth
Nix Patterson LLP
8701 Bee Cave Road
Building I, Suite 500
Austin, TX  78746
bbeckworth@nixlaw.com

[Signatures begin on next page.]

**Authorized and agreed to by**:

Dated: 6.24.22

STATE OF OKLAHOMA

By: _____

JOHN M. O'CONNOR
ATTORNEY GENERAL

**Authorized and agreed to by**:

Dated:___6/22/2022_____      CARDINAL HEALTH, INC.

By:_____

Name:  Jessica L. Mayer

Title:    Chief Legal and Compliance Officer

DocuSign Envelope ID: C08DEBE2-FFFB-4ACD-913B-30699FDD3385

**Authorized and agreed to by**:

Dated: 6/23/2022         MCKESSON CORPORATION

By: Saralisa Brau

Name: Saralisa Brau

Title: Corporate Secretary

**Authorized and agreed to by**:

Dated:___June 24, 2022

AMERISOURCEBERGEN CORPORATION

By:_____

Elizabeth Campbell
Executive Vice President and Chief Legal Officer

**Exhibit A**
**Primary Subdivisions[2]**

1. Ada City
2. Adair County
3. Altus City
4. Ardmore City
5. Atoka County
6. Bartlesville City*
7. Beckham County
8. Bethany City
9. Bixby City
10. Broken Arrow City*
11. Bryan County*
12. Caddo County
13. Canadian County*
14. Carter County*
15. Cherokee County*
16. Chickasha City
17. Choctaw City
18. Choctaw County
19. Claremore City
20. Cleveland County*
21. Comanche County*
22. Coweta City
23. Craig County
24. Creek County*
25. Custer County
26. Del City
27. Delaware County*
28. Duncan City
29. Durant City
30. Edmond City*
31. El Reno City
32. Elk City
33. Enid City*
34. Garfield County*
35. Garvin County
36. Glenpool City
37. Grady County*
38. Guthrie City
39. Guymon City

40. Haskell County
41. Hughes County
42. Jackson County
43. Jenks City
44. Johnston County
45. Kay County*
46. Kingfisher County
47. Latimer County
48. Lawton City*
49. Le Flore County*
50. Lincoln County*
51. Logan County*
52. Love County
53. Marshall County
54. Mayes County*
55. Mcalester City
56. Mcclain County*
57. Mccurtain County*
58. Mcintosh County
59. Miami City
60. Midwest City*
61. Moore City*
62. Murray County
63. Muskogee City*
64. Muskogee County*
65. Mustang City
66. Newcastle City
67. Noble County
68. Norman City*
69. Nowata County
70. Okfuskee County
71. Oklahoma City*
72. Oklahoma County*
73. Okmulgee City
74. Okmulgee County*
75. Osage County*
76. Ottawa County*
77. Owasso City*
78. Pawnee County

---

[2] Entities denoted with an asterisk (*) indicate a population of greater than 30,000 for purposes of the definition of Primary Subdivision as it relates to Incentive Payment C.

79. Payne County*
80. Pittsburg County*
81. Ponca City
82. Pontotoc County*
83. Pottawatomie County*
84. Pushmataha County
85. Rogers County*
86. Sand Springs City
87. Sapulpa City
88. Seminole County
89. Sequoyah County*
90. Shawnee City*
91. Stephens County*

92. Stillwater City*
93. Tahlequah City
94. Texas County
95. Tulsa City*
96. Tulsa County*
97. Wagoner County*
98. Warr Acres City
99. Washington County*
100. Washita County
101. Weatherford City
102. Woodward City
103. Woodward County
104. Yukon City

**Exhibit B**
**Agreed List of Litigating Subdivisions**

1. Ada City
2. Altus City
3. Anadarko City
4. Atoka County
5. Beckham County
6. Bethany City
7. Broken Arrow City
8. Caddo County
9. Choctaw County
10. Cimarron County
11. Cleveland County
12. Coal County
13. Collinsville City
14. Comanche County
15. Craig County
16. Creek County
17. Custer County
18. Delaware County
19. Dewey County
20. Edmond City
21. El Reno City
22. Elk City
23. Enid City
24. Garvin County
25. Grady County
26. Greer County
27. Guthrie City
28. Harmon County
29. Harper County
30. Haskell County
31. Hughes County
32. Jackson County
33. Jefferson County
34. Jenks City
35. Johnston County
36. Kay County
37. Kiowa County
38. Latimer County
39. Lawton City
40. Le Flore County
41. Lincoln County
42. Logan County
43. Love County
44. Major County
45. Mayes County
46. Mcclain County
47. Mccurtain County
48. Midwest City
49. Muskogee City
50. Muskogee County
51. Mustang City
52. Noble County
53. Nowata County
54. Okfuskee County
55. Oklahoma City
56. Oklahoma County
57. Okmulgee County
58. Osage County
59. Ottawa County
60. Owasso City
61. Pawnee County
62. Payne County
63. Pittsburg County
64. Ponca City
65. Pottawatomie County
66. Roger Mills County
67. Rogers County
68. Seminole City
69. Seminole County
70. Shawnee City
71. Stephens County
72. Stillwater City
73. Texas County
74. Tillman County
75. Tulsa City
76. Tulsa County
77. Washington County
78. Woods County
79. Woodward County
80. Yukon City

**Exhibit C**
**Oklahoma Payment Schedule**

| Payment Year | Abatement Amount[3] | State Fees and Costs[4] | Subdivision Fees and Costs[5] | Annual Total[6] |
|---|---|---|---|---|
| 1 | $12,548,350.40 | $3,180,625.42 | $805,781.86 | $16,534,757.68 |
| 2 | $13,187,704.53 | $3,021,327.84 | $893,977.50 | $17,103,009.87 |
| 3 | $13,187,704.53 | $407,201.40 | $1,604,081.19 | $15,198,987.12 |
| 4 | $16,506,280.34 | $0.00 | $1,087,603.11 | $17,593,883.45 |
| 5 | $16,506,280.34 | $0.00 | $1,087,603.11 | $17,593,883.45 |
| 6 | $16,506,280.34 | $0.00 | $1,087,603.11 | $17,593,883.45 |
| 7 | $16,506,280.34 | $0.00 | $1,087,603.11 | $17,593,883.45 |
| 8 | $19,413,374.39 | $0.00 | $0.00 | $19,413,374.39 |
| 9 | $19,413,374.39 | $0.00 | $0.00 | $19,413,374.39 |
| 10 | $19,413,374.39 | $0.00 | $0.00 | $19,413,374.39 |
| 11 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 12 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 13 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 14 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 15 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 16 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 17 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| 18 | $16,318,900.40 | $0.00 | $0.00 | $16,318,900.40 |
| Totals | $293,740,207.19 | $6,609,154.66 | $7,654,253.00 | $308,003,614.85 |

---

[3] The Oklahoma Abatement Amount is the maximum that the State of Oklahoma and its Participating Subdivisions may receive if the conditions for all Incentive Payments are satisfied.

[4] The amounts in this column are the state fees and costs described in Section V.B.

[5] The amounts in this column are estimates of the Participating Litigating Subdivisions' share of the Contingency Fee Fund described in Section V.C. Pursuant to Section V.C, these amounts shall be paid from the Contingency Fee Fund established by the Global Settlement, and the actual amount shall be as determined by the Fee Panel for the Global Settlement.

[6] The State of Oklahoma has indicated that the total amounts paid each year by Settling Distributors may be allocated among the State's abatement fund and counsel for the State of Oklahoma and its Participating Litigating Subdivisions differently than stated in this Exhibit C. For the avoidance of doubt, any allocation shall be consistent with the requirements of Section IV.B of this Agreement.

Exhibit C
1

**Exhibit D**
**ABC IRS Form 1098-F**

| 0303 | ☐ VOID | ☐ CORRECTED | | | |
|---|---|---|---|---|---|
| FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no | | **1** Total amount required to be paid $ 95,481,120.62 | OMB No. 1545-2284 | | Fines, Penalties, and Other Amounts |
| [APPROPRIATE OFFICIAL] The State of Oklahoma [ADDRESS] | | **2** Amount to be paid for violation or potential violation $ 4,421,656.37 | Form **1098-F** (Rev. January 2022) | | |
| | | **3** Restitution/remediation amount | For calendar year 20 22 | | |
| FILER'S TIN XX-XXXXXXX | PAYER'S TIN 23-3079390 | $ 91,059,464.24 | **5** Date of order/agreement XX XX 2022 | | Copy A |
| PAYER'S name | | **4** Compliance amount $ | | | For Internal Revenue Service Center |
| AmerisourceBergen Corporation | | **6** Court or entity | | | File with Form 1096. |
| Street address (including apt. no.) 1 West First Avenue | | **7** Case number | | | For Privacy Act and Paperwork Reduction |
| City or town, state or province, country, and ZIP or foreign postal code Conshohocken, PA 19428 | | **8** Case name or names of parties to suit, order, or agreement | | | Act Notice, see the current General Instructions for |
| | | **9** Code A, B | | | Certain Information Returns. |

Form **1098-F** (Rev. 1-2022)    Cat. No. 71382B    www.irs.gov/Form1098F    Department of the Treasury - Internal Revenue Service
**Do Not Cut or Separate Forms on This Page — Do Not Cut or Separate Forms on This Page**

**Exhibit D**
**1**

## Exhibit E
## Cardinal Health IRS Form 1098-F

0303 ☐ VOID ☐ CORRECTED

| FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no. | | 1 Total amount required to be paid<br>$ 95,173,117.00 | OMB No. 1545-2284 | Fines, Penalties, and Other Amounts |
|---|---|---|---|---|
| [APPROPRIATE OFFICIAL]<br>State of Oklahoma<br>[ADDRESS] | | 2 Amount to be paid for violation or potential violation<br>$ 4,407,392.97 | Form **1098-F**<br>(Rev. January 2022) | |
| | | 3 Restitution/remediation amount<br>$ 90,765,724.03 | For calendar year<br>20 22 | |
| FILER'S TIN<br>XX-XXXXXXX | PAYER'S TIN<br>31-0958666 | | 5 Date of order/agreement<br>XX XX 2022 | Copy A |
| PAYER'S name | | 4 Compliance amount<br>$ | | For |
| Cardinal Health, Inc. and consolidated subsidiaries | | 6 Court or entity<br>District Court of Bryan County, State of Oklahoma and jurisdictions of other cases settled under the Distributors Oklahoma Settlement Agreement, dated as of [ ] | | Internal Revenue Service Center |
| Street address (including apt. no.)<br>7000 Cardinal Place | | 7 Case number<br>Case No. CJ-2020-68 and other cases settled under the Distributors Oklahoma Settlement Agreement, dated as of [ ] | | File with Form 1096. |
| City or town, state or province, country, and ZIP or foreign postal code | | 8 Case name or names of parties to suit, order, or agreement<br>State of Oklahoma v. Cardinal Health Inc. and other cases settled under the Distributors Oklahoma Settlement Agreement, dated as of [ ] | | For Privacy Act and Paperwork Reduction |
| Dublin, Ohio 43017 | | | | Act Notice, see the current General Instructions for |
| | | 9 Code<br>A B | | Certain Information Returns. |

Form **1098-F** (Rev. 1-2022)   Cat. No. 71382B   www.irs.gov/Form1098F   Department of the Treasury - Internal Revenue Service

**Do Not Cut or Separate Forms on This Page — Do Not Cut or Separate Forms on This Page**

Exhibit E
1

**Exhibit F**
**McKesson IRS Form 1098-F**

| | | | | |
|---|---|---|---|---|
| **0303** | ☐ VOID | ☐ CORRECTED | | |

| FILER'S name, street address, city or town, state or province, country, ZIP or foreign postal code, and telephone no.<br><br>[APPROPRIATE OFFICIAL]<br>State of Oklahoma<br>[ADDRESS] | 1 Total amount required to be paid<br>$ 117,349,377.27 | OMB No. 1545-2284 | Fines, Penalties, and Other Amounts |
|---|---|---|---|
| | 2 Amount to be paid for violation or potential violation<br>$ 5,434,358.32 | Form **1098-F**<br>(Rev. January 2022) | |
| | 3 Restitution/remediation amount<br>$ 111,915,018.95 | For calendar year<br>20 22 | |

| FILER'S TIN<br>XX-XXXXXXX | PAYER'S TIN<br>23-3079390 | 4 Compliance amount<br>$ | 5 Date of order/agreement<br>XX XX 2022 | Copy A |
|---|---|---|---|---|
| PAYER'S name<br>McKesson Corporation | | 6 Court or entity  District Court of Bryan County, State of Oklahoma and<br>periods/terms of other cases settled under the Settlement Agreement entered into by the Settling<br>Distributors (as defined in such agreement) and Oklahoma, dated as of [] | | For Internal Revenue Service Center |
| Street address (including apt. no.)<br>6535 N. State Highway 161 | | 7 Case number  Case No. CJ-2020-84 and other cases settled under the<br>Settlement Agreement entered into by the Settling Distributors (as defined in<br>such agreement) and Oklahoma, dated as of [] | | File with Form 1096. |
| City or town, state or province, country, and ZIP or foreign postal code<br>Irving, TX 75039 | | 8 Case name or names of parties to suit, order, or agreement<br>State of Oklahoma v. McKesson Corp. and other cases settled under the Settlement Agreement entered into<br>by the Settling Distributors (as defined in such agreement) and Oklahoma, dated as of [] | | For Privacy Act and Paperwork Reduction Act Notice, see the current General Instructions for Certain Information Returns. |
| | | 9 Code<br>A  B | | |

Form **1098-F** (Rev. 1-2022)  Cat. No. 71382B  www.irs.gov/Form1098F  Department of the Treasury - Internal Revenue Service

Do  Not  Cut  or  Separate  Forms  on  This  Page  —  Do  Not  Cut  or  Separate  Forms  on  This  Page

**Exhibit F**
**1**

**Exhibit G**
**Subdivision Settlement Participation Form**

| Governmental Entity: | State: |
|---|---|
| Authorized Official: | |
| Address 1: | |
| Address 2: | |
| City, State, Zip: | |
| Phone: | |
| Email: | |

The governmental entity identified above (the "*Governmental Entity*"), in order to obtain and in consideration for the benefits provided to the Governmental Entity pursuant to the Settlement Agreement dated June 24, 2022 (the "*Distributors Oklahoma Settlement*"), and acting through the undersigned authorized official, hereby elects to participate in the Distributors Oklahoma Settlement, release all Released Claims against all Released Entities, and agrees as follows.

1. The Governmental Entity is aware of and has reviewed the Distributors Oklahoma Settlement, including Exhibit I thereto, understands that all terms in this Participation Form have the meanings defined therein, and agrees that by signing this Participation Form, the Governmental Entity elects to participate in the Distributors Oklahoma Settlement and become a Participating Subdivision as provided therein.

2. The Governmental Entity shall, within 14 days of October 1, 2022 and prior to the filing of the Consent Judgment, secure the dismissal with prejudice of any Released Claims that it has filed.

3. The Governmental Entity agrees to the terms of the Distributors Oklahoma Settlement pertaining to Subdivisions as defined therein.

4. By agreeing to the terms of the Distributors Oklahoma Settlement and becoming a Releasor, the Governmental Entity is entitled to the benefits provided therein, including, if applicable, monetary payments beginning after December 1, 2022.

5. The Governmental Entity agrees to use any monies it receives through the Distributors Oklahoma Settlement solely for the purposes provided therein.

6. The Governmental Entity submits to the jurisdiction of the Oklahoma Court for purposes limited to that court's role as provided in, and for resolving disputes to the extent provided in, the Distributors Oklahoma Settlement. The Governmental Entity likewise agrees to arbitrate before the National Arbitration Panel as provided in, and for resolving disputes to the extent otherwise provided in the Distributors Oklahoma Settlement.

7. The Governmental Entity has the right to enforce the Distributors Oklahoma Settlement as provided therein.

8. The Governmental Entity, as a Participating Subdivision, hereby becomes a Releasor for all purposes in the Distributors Oklahoma Settlement, including, but not limited to, all provisions of Section XI of Exhibit I thereto, and along with all departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, and any person in their official capacity elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, and any other entity identified in the definition of Releasor, provides for a release to the fullest extent of its authority.  As a Releasor, the Governmental Entity hereby absolutely, unconditionally, and irrevocably covenants not to bring, file, or claim, or to cause, assist or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever.  The releases provided for in the Distributors Oklahoma Settlement are intended by the Agreement Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of the Governmental Entity to release claims.  The Distributors Oklahoma Settlement shall be a complete bar to any Released Claim.

9. The Governmental Entity hereby takes on all rights and obligations of a Participating Subdivision as set forth in the Distributors Oklahoma Settlement.

10. In connection with the releases provided for in the Distributors Oklahoma Settlement, each Governmental Entity expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.**  A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or released party.

A Releasor may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Governmental Entity hereby expressly waives and fully, finally, and forever settles, releases and discharges, upon the date the Distributors Oklahoma Settlement becomes effective pursuant to Section II.B of the Distributors Oklahoma Settlement, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Governmental Entities' decision to participate in the Distributors Oklahoma Settlement.

11. Nothing herein is intended to modify in any way the terms of the Distributors Oklahoma Settlement, to which the Governmental Entity hereby agrees.  To the extent this Participation Form is worded differently from Exhibit G to the Distributors Oklahoma

Settlement or interpreted differently from the Distributors Oklahoma Settlement in any respect, the Distributors Oklahoma Settlement controls.

I have all necessary power and authorization to execute this Participation Form on behalf of the Governmental Entity.

Signature: _____

Name: _____

Title: _____

Date: _____

**Exhibit H**
**Consent Judgment and Stipulation of Dismissal with Prejudice**

## IN THE DISTRICT COURT OF BRYAN COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA, *ex rel.* JOHN O'CONNOR, ATTORNEY GENERAL OF OKLAHOMA, | Case No. CJ-2020-86 Case No. CJ-2020-85 Case No. CJ-2020-84 |
| Plaintiff, | Hon. Mark Campbell |
| v. | FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE |
| MCKESSON CORPORATION; AMERISOURCEBERGEN CORP.; AMERISOURCEBERGEN DRUG CORP.; CARDINAL HEALTH INC.; CARDINAL HEALTH 105 INC.; CARDINAL HEALTH 108 LLC; CARDINAL HEALTH 110 LLC. | |
| Defendants. | |

## FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE

The State of Oklahoma ("*State*") and McKesson Corporation, Cardinal Health, Inc., AmerisourceBergen Drug Corporation and AmerisourceBergen Corporation, together with the subsidiaries thereof (collectively, the "*Settling Distributors*," and each a "*Settling Distributor*") (together with the State, the "*Parties*," and each a "*Party*") have entered into a consensual resolution of the above-captioned litigation (the "*Action*") pursuant to a settlement agreement entitled Distributors Oklahoma Settlement Agreement, dated as of June 24, 2022 (the "*Oklahoma Agreement*"), a copy of which is attached hereto as Exhibit A. The Oklahoma Agreement shall become effective by its terms upon the entry of this Final Consent Judgment (the "*Judgment*") by the Court without adjudication of any contested issue of fact or law, and without finding or admission of wrongdoing or liability of any kind. By entering into the Oklahoma Agreement, the State of Oklahoma agrees to be bound by all terms and conditions of Exhibit B (together with the

Oklahoma Agreement, the "*Agreements*") unless stated otherwise in the Oklahoma Agreement. Unless stated otherwise in the Oklahoma Agreement, the terms of the Oklahoma Agreement are intended to be consistent with the terms of Exhibit B and shall be construed accordingly.

## I. RECITALS:

1. Each Party warrants and represents that it engaged in arm's-length negotiations in good faith. In hereby executing the Agreements, the Parties intend to effect a good-faith settlement.

2. The State has determined that the Agreements are in the public interest.

3. The Settling Distributors deny the allegations against them and that they have any liability whatsoever to the State, its Subdivisions, and/or (a) any of the State's or Subdivisions' departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public.

4. The Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation.

5. The Parties agree to the entry of the injunctive relief terms pursuant to Exhibit P of Exhibit B.

6. Therefore, without any admission of liability or wrongdoing by the Settling Distributors or any other Released Entities (as defined in Exhibit B), the Parties now mutually consent to the entry of this Judgment and agree to dismissal of the claims with prejudice pursuant to the terms of the Agreements to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

In consideration of the mutual promises, terms, and conditions set forth in the Agreements, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between the Settling Distributors and the State, and adjudicated by the Court, as follows:

1. The foregoing Recitals are incorporated herein and constitute an express term of this Judgment.

2. The Parties have entered into a full and final settlement of all Released Claims of Releasors against the Settling Distributors (including but not limited to the State) and the Released Entities pursuant to the terms and conditions set forth in the Agreements.

3. The "Definitions" set forth in Section I of Exhibit B are incorporated by reference into this Judgment.  The State is a "Settling State" within the meaning of Exhibit B.  Unless otherwise defined herein, capitalized terms in this Judgment shall have the same meaning given to them in Exhibit B, or, if not defined in Exhibit B, the same meaning given to them in the Oklahoma Agreement.

4. The Parties agree that the Court has jurisdiction over the subject matter of the Action and over the Parties with respect to the Action and this Judgment.  This Judgment shall not be construed or used as a waiver of any jurisdictional defense the Settling Distributors or any other Released Entity may raise in any other proceeding.

5. The Court finds that the Agreements were entered into in good faith.

6. The Court finds that entry of this Judgment is in the public interest and reflects a negotiated settlement agreed to by the Parties.  The Action is dismissed with prejudice, subject to a retention of jurisdiction by the Court as provided herein and in the Agreements.

7. By this Judgment, the Agreements are hereby approved by the Court, and the Court hereby adopts their terms as its own determination of this matter and the Parties' respective rights and obligations.

8. The Court shall have authority to resolve disputes identified in Section VI.F.1 of Exhibit B, governed by the rules and procedures of the Court.

9. The Parties have satisfied the Conditions to Effectiveness of Agreement set forth in Section II.B of the Oklahoma Agreement as follows:

    a.      All Litigating Subdivisions and Non-Litigating Primary Subdivisions in the State of Oklahoma became Participating Subdivisions by September 23, 2022.

10. The Parties have satisfied the Condition to Effectiveness of Agreement set forth in Section VIII of Exhibit B and the Release set forth in Sections XI.A, F, and G of Exhibit B, as follows:

    a.      The Attorney General of the State exercised the fullest extent of his or her powers to release the Settling Distributors and all other Released Entities from all Released Claims pursuant to the release attached hereto as Exhibit C (the "*AG Release*").

    b.      The Settling Distributors have determined that there is sufficient State participation and sufficient resolution of the Claims of the Litigating Subdivisions in the Settling States to proceed with the Agreements.

    c.      The Participation Form for each Initial Participating Subdivision in the State has been delivered to the Settling Distributors. As stated in the Participation Form, and for the avoidance of doubt, nothing in the Participation Form executed by the Participating Subdivisions is intended to modify in any way the terms of the Agreements to which the Participating Subdivisions agree. As stated in the Participation Form, to the extent the executed version of the Participation Form differs from Exhibit B in any respect, Exhibit B controls.

    d.      Pursuant to Section VIII.B of Exhibit B, each Participating Subdivision in the State is dismissing with prejudice any Released Claims that it has filed against the Settling Distributors and the Released Entities.

11. Release. The Parties acknowledge that the AG Release, which is incorporated by reference herein, is an integral part of this Judgment. Pursuant to the Agreements and the AG Release and without limitation and to the maximum extent of the power of the State's Attorney

General, the Settling Distributors and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (a) the State and its Participating Subdivisions and any of their departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including the State's Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing, and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts in the State, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State or any Subdivision in the State, whether or not any of them participate in the Agreements. Pursuant to the Agreements and the AG Release and to the maximum extent of the State's power, the Settling Distributors and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the State, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, and (3) any of the State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Further, the provisions set forth in Section XI of Exhibit B are incorporated by reference into this Judgment as if fully set forth herein. The Parties acknowledge, and the Court finds, that those provisions are an integral part of the Agreements and this Judgment, and shall govern the rights and obligations of all participants in the settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected parties and approved by the Court.

12. Release of Unknown Claims.  The State expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

13. The State may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the State expressly waived and fully, finally, and forever settled, released and discharged, through the Agreements and AG Release, any and all Released Claims that may exist as of the Effective Date but which the State does not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would have materially affected the State's decision to enter into the Agreements.

14. Costs and Fees.  The Parties will bear their own costs and attorneys' fees except as otherwise provided in the Agreements.

15. No Admission of Liability.  The Settling Distributors are consenting to this Judgment solely for the purpose of effectuating the Agreements, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which the Settling Distributors expressly deny.  None of the Settling Distributors or any other Released Entity admits that it caused or contributed to any public nuisance, and none of the Settling Distributors or any other Released Entity admits any wrongdoing that was or could have been alleged by the State, its Participating Subdivisions, or any other person or entity.  No part of this Judgment shall constitute evidence of any liability, fault, or wrongdoing by the Settling Distributors or any other Released Entity.  The Parties acknowledge that payments made under the Agreements are not a fine, penalty,

or payment in lieu thereof and are properly characterized as described in Section V.F of Exhibit B.

16. No Waiver. This Judgment is entered based on the Agreements without adjudication of any contested issue of fact or law or finding of liability of any kind. This Judgment shall not be construed or used as a waiver of any Settling Distributor's right, or any other Released Entity's right, to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Judgment. Notwithstanding the foregoing, the State may enforce the terms of this Judgment as expressly provided in the Agreements.

17. No Private Right of Action. This Judgment is not intended for use by any third party for any purpose, including submission to any court for any purpose, except pursuant to Section VI.A of Exhibit B. Except as expressly provided in the Agreements, no portion of the Agreements or this Judgment shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Entity. The State shall allow Participating Subdivisions in the State to notify it of any perceived violations of the Agreements or this Judgment. No Settling State, including the State of Oklahoma, may assign or otherwise convey any right to enforce any provision of the Agreements.

18. Admissibility. It is the intent of the Parties that this Judgment not be admissible in other cases against the Settling Distributors or binding on the Settling Distributors in any respect other than in connection with the enforcement of this Judgment or the Agreements. For the avoidance of doubt, nothing herein shall prohibit a Settling Distributor from entering this Judgment or the Agreements into evidence in any litigation or arbitration concerning (1) a Settling Distributor's right to coverage under an insurance contract or (2) the enforcement of the releases provided for by the Agreements and this Judgment.

19. Preservation of Privilege. Nothing contained in the Agreements or this Judgment, and no act required to be performed pursuant to the Agreements or this Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work

product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

20. Mutual Interpretation.  The Parties agree and stipulate that the Agreements were negotiated on an arm's-length basis between parties of equal bargaining power and was drafted jointly by counsel for each Party.  Accordingly, the Agreements are incorporated herein by reference and shall be mutually interpreted and not construed in favor of or against any Party, except as expressly provided for in the Agreements.

21. Retention of Jurisdiction.  The Court shall retain jurisdiction of the Parties for the limited purpose of the resolution of disputes identified in Section VI.F.1 of Exhibit B.  The Court shall have jurisdiction over Participating Subdivisions in the State for the limited purposes identified in the Agreements.

22. Successors and Assigns.  This Judgment is binding on each of the Settling Distributor's successors and assigns.

23. Modification.  This Judgment shall not be modified (by the Court, by any other court, or by any other means) without the consent of the State and the Settling Distributors, or as provided for in Section XIV.U of Exhibit B.

So ORDERED this _____ day of _____ 2022.


_____


APPROVED, AGREED TO AND PRESENTED BY:


[SIGNATURE BLOCKS]

**Exhibit I**
**Distributor Global Settlement Agreement**

[*This page intentionally left blank.*]

Exhibit I
1