UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*County of Lake, Ohio v. Purdue Pharma, L.P., et al.,* Case No. 18-op-45032 (N.D. Ohio)<br><br>*County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*, Case No. 18-op-45079 (N.D. Ohio)<br><br>*"Track 3 Cases"* | MDL No. 2084<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**DEFENDANTS' RESPONSE TO OCTOBER 7 ORDER
REGARDING MOTION TO STAY**

Defendants hereby respond to the Court's October 7, 2022 Order (Doc. 4669) seeking additional information to assist the Court with "evaluat[ing] . . . the merits of" their Motion to Stay (Doc. 4658).

As an initial matter, in the context of the Motion, the significance of "whether and to what extent" each Defendant already "is in full or substantial compliance" requires consideration of three critical points.

First, as the Motion to Stay explains, the irreparable harm to Defendants primarily arises from the court-appointed Administrators and the terms of the Appointment Order. By giving the Administrators and their team unconstrained access to Defendants' personnel, premises, files and computers, the Appointment Order intrudes on patient privacy and creates intolerable risks of breaching the confidentiality of protected health information and other highly sensitive information. It simultaneously imposes on Defendants the costs not only of the Administrator, but

also of an Assistant Administrator and an untold number of additional assistants and consultants. These costs are effectively unrecoverable. And by appointing the Court's special masters as the Administrators, the Appointment Order contaminates the neutrality of the litigation process. These are the primary irreparable harms that the Court is asked to consider in deciding the Motion.

Second, regarding the equities of the stay, Plaintiffs have conceded that they do not need injunctive relief. If injunctive terms were essential to the public health of the counties, Plaintiffs would have required them in their settlements with Rite Aid and Giant Eagle. But they did not. They did not even though both Rite Aid and Giant Eagle had sizeable opioid dispensing in the counties[1] and even though each was the subject of opinions from Plaintiffs' experts that their policies, procedures, and systems were inadequate and that they wrongfully dispensed opioids.[2]

Third, and also regarding the equites of the stay, Plaintiffs have made no *evidentiary* showing that the injunctive terms are necessary (or even helpful) to abate the nuisance found by the jury. In sharp contrast to the monetary relief sought by Plaintiffs, which was the subject of expert testimony explaining the purported need for monetary relief and the degree to which it might alleviate harms being suffered in the counties, no witness testified how injunctive terms regulating Defendants' current processes and systems would make any meaningful difference to current conditions in the counties. That is, no witness testified about the degree to which, if any, the injunctive terms would reduce the volume of prescription opioids dispensed in the counties. No witness testified about the degree to which, if any, the injunctive terms would reduce the

---

[1] *See* CVS-MDL-05013; CVS-MDL-05014.

[2] *See, e.g.,* Doc. 4219-2; Doc. 3913.

diversion of prescription opioids. And no witness testified about the degree to which, if any, the injunctive terms would otherwise remedy county harms.[3]

More specifically, faced with evidence that Defendants' opioid dispensing declined significantly years ago,[4] as well as evidence from Plaintiffs' own experts that the prescription opioid "wave" of the crisis concluded more than a decade ago,[5] no witness testified that the injunctive terms would have any additional effect in the counties. Faced with evidence that the majority of "red flag" prescriptions filled in the counties were filled by non-defendant pharmacies,[6] no witness explained whether—or how—the injunctive terms, applied only to these three Defendants, would have material impact. Nor did Plaintiffs provide any analyses of Defendants' *current* dispensing to try to show that the injunctive terms were necessary *today* to improve conditions in the counties.[7] In short, although Plaintiffs had the opportunity at the abatement trial to present evidence to try to show that the imposition of injunctive terms was necessary to address the public nuisance found by the jury and to try to show the potential impact of such terms, they did not do so.

---

[3] By way of illustration, there was no testimony to indicate whether policies requiring a pharmacist to write down details of how she resolved a red flag associated with a prescription would reduce the volume of opioid dispensing and, if so, to what degree.

[4] *See* Doc. 4169-16 (CVS-MDL-04346a); Doc. 4046-16 (P-26322-A); Doc. 4036-3 (P-26321).

[5] *See, e.g.*, Doc. 4446 at 451-53.

[6] *See* CVS-MDL-05013; CVS-MDL-05014.

[7] Plaintiffs' analyses of Defendants' dispensing data ended in 2019. *See, e.g.*, Doc. 4219-10 at 120-25, 138-49. While the Court issued an order calling on the parties to identify discovery that required abatement-phase supplementation, Doc. 4220, Plaintiffs sought no supplementation of Defendants' dispensing data productions.

The jury verdict does not fill the evidentiary void. The Court permitted the jury to find against Defendants even if their dispensing was "superb." Doc. 4153 at 7169. Moreover, as noted above, the jury was not presented with analyses of Defendants' current dispensing and most certainly was not called on to decide whether requirements for committees, policies and record-keeping would remedy the nuisance they found.

Thus, the degree to which each Defendant already "is in full or substantial compliance" with the injunctive terms, Doc. 4669 at 1-2, should not impact the Court's evaluation of Defendants' Motion to Stay. There is no evidence that compliance with those terms is necessary to abatement. Accordingly, there is no basis to conclude that the equities require immediate imposition of the injunctive terms, especially in the face of the likelihood of reversal and the irreparable harm to Defendants stemming from the terms of the Appointment Order.

Subject to these points, Defendants' individual responses to the Court's order are attached at Exhibits A (CVS), B (Walgreens), and C (Walmart).

Dated:  October 14, 2022  Respectfully submitted,

/s/ Kaspar J. Stoffelmayr
Kaspar J. Stoffelmayr
Jeffrey A. Hall
BARTLIT BECK LLP
54 West Hubbard Street
Chicago, Illinois 60654
(312) 494-4400
kaspar.stoffelmayr@bartlitbeck.com
jeff.hall@bartlitbeck.com

Alex J. Harris
BARTLIT BECK LLP
1801 Wewatta Street, Suite 1200
Denver, Colorado 80202
(303) 592-3100
alex.harris@bartlitbeck.com

*Counsel for Walgreens Boots Alliance, Inc., Walgreen Co., and Walgreen Eastern Co., Inc.*


/s/ Eric R. Delinsky
Eric R. Delinsky
Alexandra W. Miller
Paul B. Hynes, Jr.
ZUCKERMAN SDAEDER LLP
1800 M Street, N.W., Suite 1000
Washington, D.C. 20036
(202) 778-1800
edelinsky@zuckerman.com
smiller@zuckerman.com
phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*


/s/ Tina M. Tabbachi
John M. Majoras
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001

5

(202) 879-3939
jmmajoras@jonesday.com

Tina M. Tabacchi
Tara A. Fumerton
JONES DAY
110 North Wacker Drive
Suite 4800
Chicago, Illinois 60606
(312) 269-4335
tmtabacchi@jonesday.com
tfumerton@jonesday.com

*Counsel for Walmart Inc.*