# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 )  ) Case No. 1:17-md-2804 |
| *This document relates to:* | ) ) Hon. Dan Aaron Polster |
| *All cases identified in Exhibit A* | ) ) ) ) |

**ALLERGAN DEFENDANTS' MOTION TO DISMISS CLAIMS FILED BY NON-PARTICIPATING NEW YORK SUBDIVISIONS AS BARRED BY STATUTE**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

ARGUMENT .................................................................................................................................... 3

    I.    The Barred Entities Are "Government Entities" For Purposes Of The Statutory Prohibition. ................................................................................................ 3

    II.    The Barred Entities' Claims Were Released By The Attorney General ................. 6

    III.    All Of The Barred Entities' Lawsuits Were Filed After The Statutory Deadline ................................................................................................................... 7

CONCLUSION .................................................................................................................................. 7

## INTRODUCTION

Allergan Finance, LLC (f/k/a Actavis, Inc., which in turn, was f/k/a Watson Pharmaceuticals, Inc.), Allergan Limited (f/k/a Allergan plc, which in turn, was f/k/a Actavis plc), Allergan Sales, LLC, and Allergan USA, Inc. (collectively, "Allergan" or "Allergan Defendants") move this Court to dismiss all claims against the Allergan Defendants and Released Entities,[1] including AbbVie Inc., in cases filed by certain New York government entities (the "Barred Entities") and consolidated in this MDL proceeding on the ground that the claims are barred by New York statute. A list of these cases is attached as Exhibit A. On June 21, 2022, this Court granted a similar motion by Settling Distributor Defendants dismissing these cases against them on identical grounds (attached as Exhibit B), and on August 9, 2022 this Court granted a similar motion by the Janssen Defendants. Allergan respectfully requests the Court do the same here.

In furtherance of statewide opioid settlement agreements entered into by the New York Attorney General, the recently passed amendments to New York Mental Hygiene Law § 25.18(d) extinguish by operation of law certain claims brought by New York "government entities" against Allergan and Released Entities. As discussed further below, the Barred Entities and the claims they assert all fall within the scope of the statutory prohibition.

Because the Barred Entities are statutorily barred from proceeding with any of the claims against Allergan and Released Entities currently pending before this Court, Allergan requests that the Court enter a similar order and final judgment to the June 21, 2022 Order Granting Settling Distributors' Motion to Dismiss, pursuant to Fed. R. Civ. P. 54(b), dismissing the claims against Allergan and Released Entities in the cases listed in Exhibit A.

---

[1] As defined in the Allergan New York Statewide Opioid Settlement Agreement (the "New York Agreement") attached as Exhibit C. *See* Exhibit C, at § II.X.

1

## BACKGROUND

On December 8, 2021, the Attorney General for the State of New York entered into a settlement agreement and release between the State of New York and Allergan to resolve the myriad lawsuits brought by state government entities against Allergan relating to the manufacture and marketing of prescription opioids.  *See* Exhibit C.  To facilitate settlements between the New York Attorney General and defendants in the opioid litigation, the New York State Legislature amended the New York Mental Hygiene Law, effective June 29, 2021, to create a statewide opioid settlement fund comprised of specified proceeds from the statewide settlements.  *See generally* N.Y. Mental Hyg. Law § 25.18.  The amendment provides that the statewide opioid settlement fund will be disbursed to eligible and qualifying political subdivisions within the State which have submitted Subdivision Settlement Participation Forms.  *See id*.

Of critical relevance here, the amendment sets forth what happens to claims filed by political subdivisions like those of the Barred Entities here.  The amendment provides that "[n]o government entity shall have the authority to assert released claims against entities released by the department of law in a statewide opioid settlement agreement executed by the department of law and the released party on or after June first, two thousand twenty-one."  *Id*. § 25.18(d).  Furthermore, "[a]ny action filed by a government entity after June thirtieth, two thousand nineteen asserting released claims against a manufacturer, distributor, or dispenser of opioid products shall be extinguished by operation of law upon being released by the department of law in such statewide opioid settlement agreement."  *Id*.[2]

"Government entity" is defined to include "any governmental subdivision within the boundaries of the state of New York, including, but not limited to, counties, municipalities,

---

[2] By statute, the New York Attorney General is the "head of the department of law."  N.Y. Exec. Law § 60.

2

districts, towns and/or villages, and any of their subdivisions, special districts and school districts, and any department, agency, division, board, commission and/or instrumentality thereof." *Id*. § 25.18(a)(2). "Released claims" are given the same meaning as "such term is defined in the statewide opioid settlement agreements." *Id*. § 25.18(a)(5). And "Released entities" are given the same meaning "as such term is defined in the statewide opioid settlement agreements." *Id*. § 25.18(a)(6).

## ARGUMENT

By its terms, § 25.18(d) of the amended Mental Hygiene Law extinguishes claims against Allergan and Released Entities by political subdivisions if three elements are met. First, the party asserting the claims must be a "government entity." Second, the "government entity" must be asserting "released claims" as defined in the statewide settlement agreement against Allergan. And third, the action must have been filed after June 30, 2019. As discussed below, each of these elements is met as to all of the claims against Allergan in the lawsuits listed in Exhibit A, and thus the Court should dismiss those claims as statutorily barred.

**I.  The Barred Entities Are "Government Entities" For Purposes Of The Statutory Prohibition.**

As noted, the amendments to the Mental Hygiene Law broadly define "government entities" to include standard "governmental subdivision[s]" in New York like "counties, municipalities, districts, towns and/or villages," but also "any department, agency, division, board, commission and/or instrumentality thereof." N.Y. Mental Hyg. Law § 25.18(a)(2)(ii). A review of Exhibit A reveals that all of the Barred Entities fall within the scope of this broad definition.

***Cities, Towns, and Villages.*** Many of the Barred Entities fall within the scope of the statutory definition of "government entities" as cities, towns, and villages. The statute specifically

3

identifies these types of municipal bodies as "government entities." *See* N.Y. Mental Hyg. Law § 25.18(a)(2)(ii); *see also* Exhibit A.

*Districts.* A number of other Barred Entities are districts, including: fire districts; water districts; and school districts. The statute expressly includes "districts" within the definition of "government entities." *See* N.Y. Mental Hyg. Law § 25.18(a)(2)(ii); *see also* Exhibit A.

*Public Libraries.* The three libraries listed as Barred Entities in Exhibit A—West Hampstead Public Library, Plainview-Old Bethpage Public Library, and Rockville Centre Public Library—are listed as "Special Districts" by the U.S. Census Bureau. *See* 2017 Governmental Units Listing, U.S. Census Bureau, available at https://www2.census.gov/programs-surveys/gus/datasets/2017/govt_units_2017.ZIP (last visited October 12, 2022). The statute expressly includes "special districts" like these three entities within the definition of "government entities." *See* N.Y. Mental Hyg. Law § 25.18(a)(2)(ii). At least one of these entities also expressly notes their state affiliation on their website. *See* Board of Trustees, West Hempstead Public Library, available at https://www.whplibrary.org/board-of-trustees/ (last visited October 12, 2022). These three Public Libraries' claims against Distributors and Janssen were dismissed, *see, e.g.,* Exhibit B, and their claims against Allergan and Released Entities should be dismissed as well.

*Nassau University Medical Center and Erie County Medical Center.*[3] Claims by Medical Centers against Distributors and Janssens were dismissed, and the result should be the same for Nassau University Medical Center and Erie County Medical Center's claims against Allergan. The Nassau University Medical Center is a public entity operated by a public benefits

---

[3] *Erie County Medical Center* is a multi-plaintiff case filed by plaintiffs that include private entities. Through this motion, Allergan only seeks dismissal of the claims brought by plaintiff Erie County Medical Center, which is a New York government entity subject to the statutory bar.

corporation—the Nassau Health Care Corporation—created by Nassau County and the State of New York, and has been treated as such in past lawsuits. *See* Our History, Nassau University Medical Center, available at https://www.numc.edu/about/our-history/ (last visited October 12, 2022); *Yates v. Singh*, No. 601020/18, 2018 N.Y. Misc. LEXIS 3189, at *9 (N.Y. Sup. Ct. Nassau Cnty. June 22, 2018) (in suit involving, inter alia, Nassau University Medical Center, the court referred to it as a "public entity").

Likewise, Erie Medical Center Corporation is a "public benefit corporation formed and existing under the laws of the state of New York." Case No. 21-op-45116, Dkt. Nos. 1-2 ¶ 17. The New York Public Authorities Law refers to Erie County Medical Center Corporation as a "state board" and describes the Medical Center as a public hospital performing "an essential public and government function." *See* N.Y. Pub. Auth. Law §§ 3626, 3628. As a public benefit corporation, Erie Medical Center is governed by a board of directors appointed by the governor and the county executive of Erie County and constitutes a governmental entity within the meaning of the Mental Hygiene Law as an agency of the state and the local government. *See* N.Y. Pub. Auth. Law § 3628 (2003); *Civil Service Employees Ass'n, Inc., Local 1000, AFSCME, AFL-CIO v. County of Erie*, 63 A.D.3d 1536, 1537 (N.Y. App. Div. 2009) ("Pursuant to Public Authorities Law § 2(1) and (2)(a), a 'public benefit corporation' such as ECMCC that was created under that or any other New York State law is included under the definitions for both a 'state authority' and a 'local authority.'"). Federal courts have also routinely recognized that Erie County Medical Center is a public hospital and state actor. *See, e.g., Williams v. Saul*, 2019 WL 3940246, at *3 (W.D.N.Y. Aug. 20, 2019); *VanBrocklen v. Gupta*, 2012 WL 7801682, at *3 (W.D.N.Y. Sept. 20, 2012). The statutory definition of "government entities" specifically includes any "department, agency, division, board, commission and/or instrumentality" of a "count[y]," both the Nassau

5

University Medical Center and the Erie County Medical Center are "governmental entities" under the statute as well. *See* N.Y. Mental Hyg. Law § 25.18(a)(2)(ii).

The Barred Entities all fall within the scope of "government entities" that are statutorily precluded from maintaining suits against Allergan and Released Entities.

## II. The Barred Entities' Claims Were Released By The Attorney General.

The claims asserted in each of the Barred Entities' cases identified in Exhibit A were released by the New York Attorney General, thus satisfying the second statutory bar requirement.

The amendment provides that "released claims against a manufacturer, distributor, or dispenser of opioid products shall be extinguished by operation of law upon being released by the department of law in such statewide opioid settlement agreement." N.Y. Mental Hyg. Law § 25.18(d). As noted, on December 8, 2021, the New York Attorney General (in her capacity as head of the department of law) entered into a full and final statewide opioid settlement agreement and release. *See* Exhibit C. That settlement agreement released Allergan and Released Entities from "all Claims for Covered Conduct" and was drafted broadly to bar "any further claim, demand, liability, or relief of any kind or character whatsoever … for any and all Covered Conduct …." *Id*. at 5, 25. "Covered Conduct" in turn is broadly defined to cover, *inter alia*, any claim related to the manufacture, promotion, or distribution of prescription opioids, including unbranded or branded promotion, the monitoring or reporting of orders, and diversion control programs related to any opioid product. *See* Exhibit C, § II.H. The Attorney General made the determination that the settlement, including resolution of all subdivision claims, was in the State's best interests.

The Attorney General explicitly stated in the Release of Opioid-Related Claims Pursuant to the Allergan New York Statewide Settlement Agreement and New York Mental Hygiene Law § 25.18(d), that the Attorney General had obtained the authority to settle and release, to the maximum extent of the State's power, all Released Claims, and that the New York Agreement

constitutes a "statewide opioid settlement agreement" under § 25.18(d) of the Mental Hygiene Law. *See* Exhibit D. And the Attorney General had good reason to exercise this authority because, under the settlement, resolution of all subdivision claims, including through the statutory bar, maximizes settlement bonus payments to the State of New York. *See* Exhibit C, at Section III.

Here, there can be no dispute that the claims against Allergan and Released Entities in all of the complaints listed in Exhibit A and consolidated for pretrial purposes in this MDL fall within the scope of the release and thus fall within the scope of the statutory prohibition in § 25.18(d).

**III.    All Of The Barred Entities' Lawsuits Were Filed After The Statutory Deadline.**

Third, and finally, the amendment applies to claims filed "after June thirtieth, two thousand nineteen." N.Y. Mental Hyg. Law § 25.18(d). All of the Barred Entities' lawsuits were filed after the June 30, 2019 cutoff. *See* Exhibit A. Accordingly, all three criteria for the statutory bar set forth in § 25.18(d) are met, and the Barred Entities' lawsuits should be dismissed.

## CONCLUSION

For the foregoing reasons, Allergan respectfully request that this Court dismiss all claims against the Allergan Defendants and the Released Entities in the lawsuits identified in Exhibit A as statutorily barred by New York Mental Hygiene Law § 25.18(d).

Dated:  October 22, 2022            Respectfully submitted,

*/s/ Rebecca Fitzpatrick*
Rebecca Fitzpatrick
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
rebecca.fitzpatrick@kirkland.com

*Counsel for Allergan Finance, LLC, Allergan Limited, Allergan Sales, LLC, and Allergan USA, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2022, I caused **ALLERGAN DEFENDANTS' MOTION TO DISMISS CLAIMS FILED BY NON-PARTICIPATING NEW YORK SUBDIVISIONS AS BARRED BY STATUTE** to be served on counsel of record via the CM/ECF system.

*/s/ Rebecca Fitzpatrick*
Rebecca Fitzpatrick