**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*County of Lake, Ohio v. Purdue Pharma, L.P., et al.,* Case No. 18-op-45032 (N.D. Ohio)<br><br>*County of Trumbull, Ohio v. Purdue Pharma, L.P., et al.*, Case No. 18-op-45079 (N.D. Ohio)<br><br>*"Track 3 Cases"* | MDL No. 2084<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**CVS'S SUPPLEMENTAL RESPONSE TO THE COURT'S OCTOBER 7 ORDER REGARDING DEFENDANTS' MOTION TO STAY**

CVS submits this supplemental response to the Court's Order dated October 7, 2022 (Doc. 4669) (the "Order") regarding defendants' Motion to Stay (Doc. 4658). By e-mail dated October 18, 2022 from Special Master Cohen, the Court added a new requirement that was not contained in the Order: that defendants "append appropriate corporate documents and/or sworn affidavits supporting their descriptions" of whether they are in compliance with each requirement of the Court's Injunction Order (Doc. 4611-1). *See* Doc. 4684-1. CVS objects to the e-mail amendment of the Order as unnecessary and nonresponsive.

Nevertheless, in response to the Special Master's e-mail and to supply the Court with the information requested therein, CVS submits the attached declaration from its Chief Controlled Substance Compliance Officer and the CVS dispensing policy that is attached to the declaration. These materials are being filed under seal as suggested by the Special Master's e-mail. To further

guide the Court, CVS annotates below its initial response to the Order (filed at Doc. 4676-1) with citations to the attached declaration and/or the attached policy.

* * *

CVS has had in place, and will continue to have in place, the following measures on a national basis:

- Policies and procedures requiring its pharmacists to resolve red flags before filling prescriptions, to document how red flags are resolved, and to refuse to fill prescriptions when a red flag cannot be resolved or when the pharmacist believes that a prescription was not written or is not being submitted for a legitimate medical purpose (§§ VIII, IX). Ex. A, Declaration of CVS Chief Controlled Substance Compliance Officer ("CVS Decl.") ¶ 14; Ex. A-1, CVS Dispensing Policy at 1-4;[1]

- training and testing on these policies and procedures (§ VII). Ex. A, CVS Decl. ¶¶ 12-13;

- a program that uses algorithms and other means to review the opioid prescribing of doctors and, when appropriate, to block their controlled substance prescriptions from being filled at CVS pharmacies (§§ X and VIII.E). Ex. A, CVS Decl. ¶¶ 17-18;

- an automated system to check the state and federal licensure of controlled-substance prescribers and to block prescriptions written by unlicensed prescribers

---

[1] These policies and procedures currently specify the particular red flags identified in the Injunction Order (§ IX), among others, and are readily accessible to all pharmacy and compliance personnel (§ VII.A). Ex. A, CVS Decl. ¶¶ 11, 14; Ex. A-1, CVS Dispensing Policy at 1-3.

> or prescribers with suspended or revoked licenses (§ VIII.E). Ex. A, CVS Decl. ¶ 15; and,

- an algorithm-based program to review the controlled-substance dispensing of its pharmacies (§ XI). Ex. A, CVS Decl. ¶ 19.[2]

These national policies, programs, and systems meet the corresponding requirements of the Florida agreement and hence the same requirements of the Injunction Order, which the Court adopted from the Florida agreement. They already are in place in CVS pharmacies in Lake and Trumbull Counties.

All additional pharmacy requirements taken from the Florida agreement also already are in place in CVS pharmacies in Lake and Trumbull Counties. This includes the provisions on a chief controlled substances compliance officer, controlled substance compliance department, and controlled substance compliance committee (§§ IV, VI), Ex. A CVS Decl. ¶¶ 2-7; the hotline provisions (§ IV.E), Ex. A, CVS Decl. ¶ 8; the provisions on independence (§ V), Ex. A, Harington Decl. ¶¶ 9-10; the provisions on site visits (§ XI), Ex. A, CVS Decl. ¶¶ 19-20; the provisions on disposal (§ XII) and naloxone (§ XIII.A), Ex. A, CVS Decl. ¶¶ 21-23; the provisions on fraud, theft and loss prevention (§§ XI.C and XIV), Ex. A, CVS Decl. ¶¶ 24-26, 28; and the provisions on law-enforcement reporting (§ XV), Ex. A, CVS Decl. ¶¶ 26, 28.

The Court imposed new pharmacy requirements beyond the Florida terms in three areas. For two of them (implementation of policies requiring pharmacists to include "clear description[s]" in their documentation of red-flag resolution, § VIII.F, and maintenance of a database available to all pharmacists that records forged prescriptions, § XV), CVS believes that it already has in place documentation policies and a forgery system—which employs computer

---

[2] These measures, and others, are in the record. *See, e.g.*, Doc 4115 at 5667-5764.

alerts to pharmacists based on prior forgeries—that meet the requirements. Ex. A, CVS Decl. ¶ 27; Ex. A-1, CVS Dispensing Policy at 3; *see also* Doc. 4115 at 5707-09.

The third added requirement—policies requiring CVS pharmacists in Lake and Trumbull Counties to document each instance they refuse to fill prescriptions with clear explanations of the reasons why (§ VIII.F)—is different. Because CVS seeks to make it as easy as possible for its pharmacists to refuse to fill prescriptions, CVS policy imposes no documentation or other requirements on a pharmacist when they do so. Ex. A, CVS Decl. ¶ 16. This approach is consistent with the judgment of state and federal regulators, which do not require pharmacists to document their refusals to fill. The Court's injunctive terms, however, would require a change in policy. If necessary, CVS would implement this policy change in its Lake and Trumbull County pharmacies in accordance with the timing terms of the Injunction Order. *Id.*

CVS also has had in place in CVS pharmacies in Lake and Trumbull Counties, and will continue to have in place, additional measures to assist in identifying illegitimate opioid prescriptions and/or preventing diversion that are not included in the Court's injunctive terms. These other measures include, among other things: (1) computer alerts to pharmacists identifying high-MME prescriptions, *see* Doc 4115 at 5705-07; (2) a display to pharmacists of the Narxcare score for each prescription generated from OARRS data, *id.* at 5709-14, and (3) limits on the volume of opioid medications that each pharmacy may order, *id.* at 5723-25.

Dated: October 25, 2022     Respectfully submitted,

*/s/ Eric R. Delinsky*
Eric R. Delinsky
Alexandra W. Miller
Paul B. Hynes, Jr.
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
E-mail: edelinsky@zuckerman.com
E-mail: smiller@zuckerman.com
E-mail: phynes@zuckerman.com

*Counsel for CVS Pharmacy, Inc., Ohio CVS Stores, L.L.C., CVS TN Distribution, L.L.C., CVS Rx Services, Inc., and CVS Indiana, L.L.C.*

5