# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| | |
| **This Document Relates to:** | **Case No. 17-MD-2804-DAP** |
| | |
| *International Union of Operating Engineers, Local 150, et al. v. Purdue Pharma L.P., et al.,* Case No. 1:19-OP-45414 | **Judge Dan Aaron Polster** |
| | |
| *City of Roanoke, Virginia v. Purdue Pharma, L.P., et al.,* Case No. 1:19-OP-45696 | **PLAINTIFFS' SUPPLEMENTAL RESPONSE ON FEDERAL-QUESTION JURISDICTION IN SUPPORT OF PLAINTIFFS' MOTIONS TO REMAND** |
| | |
| *Adams County v. Purdue Pharma L.P., et al.,* Case No. 1:20-OP-45140 | |
| | |
| *Frederick County, Virginia v. Mallinckrodt PLC, et al.,* Case No. 1:20-OP-45233 | |
| | |
| *City of Sacramento, et al. v. Teva Pharmaceutical Industries, Ltd., et al.,* Case No. 1:20-OP-45290 | |

# TABLE OF CONTENTS

ISSUE TO BE DECIDED ....................................................................................................1

SUMMARY OF ARGUMENT ...........................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT .....................................................................................................................4

    A.     No Federal Issue Is Necessarily Raised ....................................................6

           1.     California: *City of Sacramento and the People of the State of California v. Teva Pharmaceutical Industries, Ltd.*, No. 1:20-OP-45290 ....................................................................................................14

           2.     Illinois: *International Union of Operating Engineers, Local 150 v. Purdue Pharma L.P.*, No. 19-OP-45414 ..................................17

           3.     Pennsylvania: *Adams County v. Purdue Pharma L.P.*, No. 1:20-OP-45140 ..............................................................................................19

           4.     Virginia: *Frederick County v. Mallinckrodt PLC*, No. 1:20-OP-45233; *City of Roanoke v. Purdue Pharma, L.P.*, No. 1:19-OP-45696 ............................................................................................21

    B.     Any Federal Issue Is Not Substantial ...................................................24

    C.     Exercising Jurisdiction Would Disrupt the Federal-State Balance .......28

CONCLUSION ................................................................................................................30

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Alexander v. Elec. Data Sys. Corp.*,
   13 F.3d 940 (6th Cir. 1994) ...................................................................................6, 12

*Am. Fire & Cas. Co. v. Finn*,
   341 U.S. 6 (1951) ..........................................................................................................4

*Barnes v. Quarries, Inc.*,
   204 Va. 414 (1963) ......................................................................................................22

*Bauer v. Elrich*,
   8 F.4th 291 (4th Cir. 2021) ...................................................................................13, 28

*Baze v. Parker*,
   632 F.3d 338 (6th Cir. 2011) ........................................................................................4

*Bell v. Hood*,
   327 U.S. 678 (1946) ...............................................................................................11, 12

*Bennett v. Sw. Airlines Co.*,
   484 F.3d 907 ................................................................................................................17

*Board of Commissioners of Southeast Louisiana Flood Protection Authority-East
   v. Tennessee Gas Pipeline Gas Co.*,
   850 F.3d 714 (5th Cir. 2017) ......................................................................................13

*Christianson v. Colt Indus. Op. Corp.*,
   486 U.S. 800 (1988)...................................................................................................7, 8

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
   2022 WL 3224463 (N.D. Cal. Aug. 10, 2022) .......................................................14, 16, 17

*City of El Monte v. Purdue Pharma L.P.*,
   No. 2:19-CV-3588, Dkt. 39 (C.D. Cal. Jun. 18, 2019)......................................10, 17

*City of Granite City, IL v. AmerisourceBergen Drug Corp.*,
   2018 WL 3408126 (S.D. Ill. July 13, 2018) ............................................17, 18, 19

*City of Las Vegas v. Purdue Pharma, L.P.*,
   2020 WL 223614 (D. Nev. Jan. 15, 2020)................................................................18

*City of Oakland v. BP PLC*,
   969 F.3d 895 (9th Cir. 2020) ......................................................................................25

*City of Phila. v. CVS Rx Servs., Inc.*,
  2022 WL 226072 (E.D. Pa. Jan 26, 2022) ...........................................................21

*City of Reno v. Purdue Pharma, L.P.*,
  2018 WL 5730158 (D. Nev. Nov. 2, 2018) ..............................................................9

*Cnty. Bd. of Arlington Cnty., Va. v. Purdue Pharma, L.P.*,
  No. 1:19-CV-402, ECF 63 (E.D. Va. May 6, 2019) .............................................23

*Cnty. of Kern v. Purdue Pharma, L.P.*,
  2019 WL 3310668 (E.D. Cal. July 23, 2019) ...................................................9, 17

*Cnty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) .................................................................................15

*Commonwealth of Kentucky v. Walgreens Boots Alliance, Inc.*,
  No. 1:18-OP-46311 .................................................................................................9

*Delaware ex rel. Denn v. Purdue Pharma L.P.*,
  2018 WL 1942363 (D. Del. Apr. 25, 2018) ........................................................9, 29

*Dinwiddie Cnty., Va. v. Purdue Pharma, L.P.*,
  2019 WL 2518130 (E.D. Va. June 18, 2019) .....................................................9, 23

*Dixon v. Coburg Dairy Inc.*,
  369 F.3d 811 (4th Cir. 2004) ...............................................................................5, 7

*Dunaway v. Purdue Pharma L.P.*,
  391 F. Supp. 3d 802 (M.D. Tenn. 2019) .................................................................9

*E. Maine Med. Ctr. v. Teva Pharms. USA Inc.*,
  581 F. Supp. 3d 281 (D. Me. 2022) ......................................................................19

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
  547 U.S 677 (2006) ........................................................................................ *passim*

*Estate of Cornell v. Bayview Loan Servicing, LLC*,
  908 F.3d 1008 (6th Cir. 2018) ................................................................................5

*Fire & Police Retiree Health Care Fund v. CVS Health Corp.*,
  2019 WL 13191642 (S.D. Tex. July 24, 2019) ......................................................19

*Fla. Health Scis. Ctr., Inc. v. Sackler*,
  2020 WL 1046601 (S.D. Fla. Jan. 24, 2020) ........................................................19

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*,
  463 U.S. 1 (1983) ........................................................................................... *passim*

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ............................................................................................... *passim*

*Grancare, LLC v. Thrower*,
    889 F.3d 543 (9th Cir. 2018) ............................................................................5, 6

*Greenlaw v. United States*,
    554 U.S. 237 (2008) ..............................................................................................11

*Gunn v. Minton*,
    568 U.S. 251 (2013) ......................................................................................... *passim*

*Gutierrez v. Flores*,
    543 F.3d 248 (5th Cir. 2008) ..................................................................................5

*Haith ex rel. Accretive Health, Inc. v. Bronfman*,
    928 F. Supp. 2d 964 (N.D. Ill. 2013) ..................................................................17

*Hampton v. R.J. Corman R.R. Switching Co.*,
    683 F.3d 708 (6th Cir. 2012) ..............................................................2, 24, 28, 29

*Harding-Wright v. D.C. Water and Sewer Auth.*,
    350 F. Supp. 2d 102 (D.D.C. 2005) ....................................................................20

*Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*,
    756 F.3d 1032 (7th Cir. 2014) ..............................................................................17

*Hartley v. CSX Transp., Inc.*,
    187 F.3d 422 (4th Cir. 1999) ................................................................................12

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ..............................................................................15

*Ill. Pub. Risk Fund v. Purdue Pharma L.P.*,
    2019 WL 3080929 (N.D. Ill. July 15, 2019) ................................................. *passim*

*In re Nat'l Prescription Opiate Litig.*,
    2019 WL 180246 (N.D. Ohio Jan. 14, 2019) ............................................3, 5, 6, 9

*James v. Meow Media, Inc.*,
    300 F.3d 683 (6th Cir. 2002) ................................................................................12

*Long v. Bando Mfg. of Am., Inc.*,
    201 F.3d 754 (6th Cir. 2000) ..........................................................................6, 7, 8

*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
    772 F.3d 158 (3d Cir. 2014) ........................................................................5, 7, 12

*Mayor & City Council of Baltimore v. BP P.L.C.*,
    31 F.4th 178 (4th Cir. 2022), *cert. pending* ..................................................14, 15

*Mays v. City of Flint, Mich.*,
    871 F.3d 437 (6th Cir. 2017) ...........................................................................26, 29

*Mecklenburg Cnty., Va. v. Purdue Pharma, L.P.*,
    2019 WL 3207795 (E.D. Va. Jul. 16, 2019) ...........................................................23

*Medtronic, Inc. v. Lohr*,
    518 U.S. 470 (1996)..................................................................................................27

*Merrell Dow Pharm. Inc. v. Thompson*,
    478 U.S. 804 (1986)...............................................................................5, 27, 28, 29

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007) .......................................................................... *passim*

*Miller v. Bruenger*,
    949 F.3d 986 (6th Cir. 2020) .............................................................................2, 24

*Mulcahey v. Columbia Organic Chemicals Co.*,
    29 F.3d 148 (4th Cir. 1994) ......................................................................................7

*NASDAQ OMX Group Inc. v. UBS Securities LLC.*
    770 F.3d 1010 (2d Cir. 2014)...................................................................................13

*Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*,
    954 F.3d 831 (6th Cir. 2020) ...........................................................................1, 5, 30

*New Mexico ex rel. Balderas v. Purdue Pharma L.P.*,
    323 F. Supp. 3d 1242 (D.N.M. 2018) ...........................................................9, 25, 29

*Newtok Village v. Patrick*,
    21 F.4th 608 (9th Cir. 2021) ......................................................................................8

*Ohio ex rel. Skaggs v. Brunner*,
    549 F.3d 468 (6th Cir. 2008) .....................................................................................4

*People v. ConAgra Grocery Prods. Co.*,
    227 Cal. Rptr. 3d 499 (Ct. App. 2017)...................................................................14

*Quisenberry v. Huntington Ingalls, Inc.*,
    296 Va. 233 (2018) .................................................................................................22

*Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Department of
    Environmental Management*,
    585 F.3d 42 (1st Cir. 2009).............................................................................13, 14

*Rhode Island v. Shell Oil Prods. Co.,*
35 F.4th 44 (1st Cir. 2022) ........................................................................5

*Safe Streets Alliance v. Hickenlooper,*
859 F.3d 865 (10th Cir. 2017) ...............................................................28

*State of W. Virginia ex rel. Morrisey v. McKesson Corp.,*
2017 WL 357307 (S.D. W. Va. Jan. 24, 2017)........................................9

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998).............................................................................11, 28

*Syngenta Crop Protection, Inc. v. Henson,*
537 U.S. 28 (2002)....................................................................................5

*T.H. v. Novartis Pharm. Corp.,*
4 Cal.5th 145 (2017) ..............................................................................15

*Uintah Cnty., Utah v. Purdue Pharma, L.P.,*
2018 WL 3747847 (D. Utah Aug. 7, 2018) .........................................9, 25

*Wullschleger v. Royal Canin U.S.A., Inc.,*
953 F.3d 519 (8th Cir. 2020) ................................................................13

**Statutes**

21 U.S.C. § 811...............................................................................................25

21 U.S.C. § 903...............................................................................................26

28 U.S.C. § 1331.......................................................................................1, 3, 4

28 U.S.C. § 1447(d).........................................................................................10

Cal. Bus. & Prof. Code § 4169.1 ...................................................................16

Cal. Bus. & Prof. Code § 4301 ......................................................................16

Cal. Civ. Code § 1714(a) ...............................................................................15

Cal. H. & Safety Code § 11153.5(a)..............................................................16

Federal Employees Health Benefits Act ........................................................29

Illinois Consumer Fraud and Deceptive Business Practices Act, 814 ILCS 505/2,
*et seq.* ......................................................................................................18

Illinois Controlled Substances Act, 720 ILCS 570, *et seq*...........................18

Ky. Rev. Stat. § 61.102 ..........................................................................................7

Pennsylvania Controlled Substance, Drug, Device & Cosmetic Act 35 P.S. § 780,
    *et seq.* ................................................................................................................20

Pennsylvania's Wholesale Prescription Drug Distributors License Act 63 P.S. §
    391.3...................................................................................................................20

Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. §
    201-1, *et seq.* ...............................................................................................19, 21

Va. Code Ann. § 15.2-900 ....................................................................................22

Wholesale Drug Distribution Licensing Act, 225 ILCS 120, *et seq.*..................18

**Regulations**

21 C.F.R. § 1301.71 ..............................................................................................25

21 C.F.R. § 1308.43 ..............................................................................................25

71 Fed. Reg. 52,716 (DEA Sept. 6, 2006) ...........................................................27

## ISSUE TO BE DECIDED

Whether state-law claims asserted by five municipalities and other entities in California, Illinois, Pennsylvania, and Virginia "aris[e] under" federal law for purposes of 28 U.S.C. § 1331, such that there is federal subject-matter jurisdiction over their actions.[1]

## SUMMARY OF ARGUMENT

This briefing relates to Defendants' bold assertion of implied federal-question jurisdiction over Plaintiffs' state-law claims. As the Supreme Court, the Sixth Circuit, and just about every court to consider assertions like these has emphasized, this kind of jurisdiction is "exceptional." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S 677, 699 (2006). It exists only where four stringent requirements are satisfied: A state-law claim must (1) ***necessarily*** raise a federal issue that is (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the balance of power between federal and state courts. *See Gunn v. Minton*, 568 U.S. 251, 258 (2013). And because Defendants invoke the Court's removal jurisdiction, they must show that these requirements are satisfied beyond question. *See Nessel ex rel. Michigan v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). They cannot.

***First***, federal law does not provide an "essential" or necessary element of Plaintiffs' state-law claims. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 10-11 (1983). Plaintiffs' claims *can* succeed upon a showing that Defendants' actions violated any of a variety of duties existing under state law. These include not only specific statutory duties relating

---

[1] *International Union of Operating Engineers, Local 150, et al. v. Purdue Pharma, L.P., et al.*, ("International Union"), No. 1:19-OP-45414; *City of Roanoke, Virginia v. Purdue Pharma, L.P., et al.* ("Roanoke"), No. 1:19-OP-45696; *Adams County v. Purdue Pharma L.P., et al.* ("Adams County"), No. 1:20-OP-45140; *Frederick County, Virginia v. Mallinckrodt PLC, et al.* ("Frederick County"), No. 1:20-OP-45233; and *City of Sacramento et al. v. Teva Pharmaceutical Industries, Ltd., et al.* ("Sacramento"), No. 1:20-OP-45290.

to the detection and disclosure of suspicious orders, but also general common-law duties, such as the duty to exercise due care and avoid creating an unreasonable risk of injury. Defendants' assertions that no such duties exist under state law are not credible, particularly because they are unsupported by any cases interpreting state law. In any event, bedrock principles of federal law require courts to assume for jurisdictional purposes that all nonfrivolous claims are meritorious.

***Second***, any federal issue that might arise in this litigation is not "substantial" within the meaning of *Gunn*. Notably, this litigation does not implicate the legality of any federal agency's activity. *See Miller v. Bruenger*, 949 F.3d 986, 993 (6th Cir. 2020) (considering "whether a federal agency is a party to the action"). Federal issues are not determinative, as reflected by the fact that the parties dispute other elements, such as state-law duties, proximate causation, and abatement costs. *See Empire Healthchoice*, 547 U.S at 700 (considering whether the federal issue is "the only issue contested in the case"). Any federal issues that may arise are likely to be "fact-bound and situation-specific," such that they will not be settled "once and for all." *Id.* And "presence of a claimed violation of [a] federal statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Hampton*, 683 F.3d at 712 (quoting *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 814 (1986)) (alterations omitted). Defendants' arguments boil down to distrust in state courts to appropriately apply federal law, despite no indication that Congress shared this view.

And ***third***, exercising jurisdiction over these cases would severely disrupt the balance of power between state and federal courts. State courts have primary authority to interpret their state's statutes and establish common law. Defendants would oust state courts from that role and install federal courts as arbiters of state law applicable to the distribution of controlled substances. Congress never intended that result, as reflected by its choice to neither create a private right of

action to enforce the Controlled Substances Act (CSA) nor preempt state remedies. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 318-19 (2005) (this is "a missing welcome mat, required in the circumstances"); *id.* at 313 (federal-question jurisdiction exists only where "consistent with congressional judgment about the sound division of labor between state and federal courts"). Moreover, jurisdiction here would "attract[] a horde" of cases that belong in state court, including cases unrelated to the opioid crisis or the CSA. *Id.* at 318.

It is no surprise, then, that every single court to have considered the issue—including this one—has agreed with the Plaintiffs: There is no federal-question jurisdiction here. *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 (N.D. Ohio Jan. 14, 2019). In response, Defendants cite courts that issued stays instead of considering remand motions—but a stay order is not equivalent to the exercise of jurisdiction. And the only "two outcomes" have been an order to remand or an order to stay, Supp. Opp. 3, because when given the chance, no court has been willing to credit Defendants' arguments and deny remand. This Court should not be the first.

## BACKGROUND

Plaintiffs filed suit against Defendants in their respective states' courts, asserting claims arising only under their respective states' laws. *Sacramento*, Dkt. 1-3; *International Union*, Dkt. 1-1; *Adams County*, Dkts. 1-2–5; *Frederick County*, Dkt. 1-2; *Roanoke*, Dkts. 1-2, 48. Although the relevant facts and law differ from case to case, Plaintiffs' causes of action are broadly similar: negligence, public nuisance, misrepresentation, fraud, and unjust enrichment. *Id.* Defendants removed Plaintiffs' cases, asserting that each arises under federal law under 28 U.S.C. § 1331. *Sacramento*, Dkt. 1; *International Union*, Dkt. 1; *Adams County*, Dkt. 1; *Frederick County*, Dkt. 13; *Roanoke*, Dkt. 2. Plaintiffs promptly moved to remand, but when their cases were transferred to this MDL, their remand motions remained pending. Plaintiffs' remand motions have been pending for more than two years. *Sacramento*, Dkt. 9; *International Union*, Dkt. 12; *Adams*

*County*, Dkt. 12; *Frederick County*, Dkts. 23-24; *Roanoke*, Dkt. 11-12.

These Plaintiffs are not alone: 127 other cases in this MDL have pending remand motions relating to federal-question jurisdiction. At the Court's direction, the parties selected these cases to serve as "bellwethers" to guide expeditious and efficient resolution of these pending motions.

## ARGUMENT

The "starting point" of every jurisdictional analysis is the oft-repeated maxim that "the lower courts are courts of limited jurisdiction and possess only those powers granted to them by Congress." *Baze v. Parker*, 632 F.3d 338, 341 (6th Cir. 2011). Guided by that principle, federal courts must "carefully guard[]" their jurisdiction "against expansion by judicial interpretation." *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17 (1951) (superseded by statute on other grounds). As the "part[ies] seeking to invoke the jurisdiction of the federal courts," Defendants "bear[] the burden of establishing that such jurisdiction exists." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 474 (6th Cir. 2008).

There are two primary sources of federal subject-matter jurisdiction: diversity of citizenship and federal question. *See Mikulski*, 501 F.3d at 560. Defendants have wisely abandoned their frivolous contention—made in all of these cases but International Union's—that the Class Action Fairness Act creates diversity jurisdiction for these non-class claims.[2]

Instead, Defendants baselessly assert that federal question jurisdiction exists for these state-law claims. A case can "aris[e] under" federal law in two ways. 28 U.S.C. § 1331. Most directly, a case arises under federal law "when federal law creates the cause of action asserted." *Gunn*, 568 U.S. at 257. That does not apply here because Plaintiffs assert only state-law claims. There is also

---

[2] *See* Dkt. 4303 (ordering supplemental briefing on Defendants' "good faith bas[e]s to believe the Court has subject-matter jurisdiction"); Dkt. 4654 ("Supp. Opp."), at 5, 7, 8 ("[D]efendants … will not be submitting additional briefing on CAFA."); *see also Sacramento*, Dkts. 9, 38 (explaining why Defendants' assertion of CAFA jurisdiction is frivolous).

a "special and small category" of claims that "find[] [their] origins in state rather than federal law" but can be said to "aris[e] under" federal law for jurisdictional purposes. *Id.* at 258 (quotation marks omitted). Defendants do not come close to showing that this case falls within that "special and small category" of cases. "[F]ederal jurisdiction over a state law claim will lie" only if:

> a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.

*Id.*; *see Grable*, 545 U.S. at 314. Courts repeatedly warn that this category of claims described in *Grable* and *Gunn* must "be read narrowly," and only the rarest of cases fall within it. *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1015 (6th Cir. 2018); *see Merrell Dow*, 478 U.S. at 808-09 (statements about federal-question jurisdiction over state-law claims "must be read with caution"); *Mikulski*, 501 F.3d at 565 (*Grable/Gunn* jurisdiction is "exceptional").

Defendants face an especially difficult task because "all doubts as to the propriety of removal are resolved in favor of remand." *Nessel ex rel. Michigan,*, 954 F.3d at 834 (quotation marks and alterations omitted); *see Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002) ("statutory procedures regarding removal are to be strictly construed"); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2. This "presumption against removal jurisdiction," *Grancare, LLC v. Thrower*, 889 F.3d 543, 550 (9th Cir. 2018), is necessary to address and minimize the "serious federalism concerns" that arise when a federal court strips a state court of its authority to adjudicate a case or, here, an entire category of cases, *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 52 (1st Cir. 2022); *see Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008); *Dixon v. Coburg Dairy Inc.*, 369 F.3d 811, 816 (4th Cir. 2004).

Defendants cannot carry their doubly "heavy burden." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (citation omitted). District courts have spoken with one voice: Plaintiffs' claims do not necessarily raise a federal issue, any connected

federal issue is not substantial, and exercising jurisdiction would disrupt the federal-state balance. Defendants cite courts' orders staying remand proceedings, but these stay orders implicate an entirely different legal standard, and none of them decide whether there is subject-matter jurisdiction in these circumstances. No court that has ever resolved the issue presented here has credited Defendants' arguments. Defendants cannot show that all of the requirements in *Grable* and *Gunn* are satisfied beyond "any doubt," *Grancare*, 889 F.3d at 550 (citation omitted), and the Court should remand Plaintiffs' cases without delay.

### A.  No Federal Issue Is Necessarily Raised

Defendants' bid for federal-question jurisdiction stumbles out of the starting gate. As this Court recognized, Plaintiffs' claims do not necessarily raise any federal question. *See In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at \*2. Defendants offer no reason that the Court should reach a different conclusion here.

As "master[s] of [their] complaint[s]," Plaintiffs, not Defendants, choose "what law [they] will rely upon." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943-44 (6th Cir. 1994) (citations omitted). This first prong of the *Grable* test is satisfied if and only if adjudication of the claims as Plaintiffs have framed them ___**requires**___ resolution of a question under federal law. It would not matter, for example, if "the wrong asserted ___**could**___ be addressed under . . . federal law," *id.* at 943 (emphasis added), nor if "the only question truly at issue in the case" were an anticipated "federal defense," *Franchise Tax Bd.*, 463 U.S. at 14. However "likely" it is that a federal question will arise, jurisdiction does not lie unless a federal right or obligation is "an element, and an essential one, of the plaintiff's cause of action." *Id.* at 10-11 (emphasis added, quotation marks omitted).

No federal-question jurisdiction exists where, as here, "the complaint on its face states alternate theories supporting a state-law claim, at least one of which does not involve a federal question." *Long v. Bando Mfg. of Am., Inc.*, 201 F.3d 754, 760 (6th Cir. 2000) (citing *Christianson*

6

*v. Colt Indus. Op. Corp.*, 486 U.S. 800, 809-10 (1988)); *accord Manning*, 772 F.3d at 164; *Dixon*, 369 F.3d at 817 (4th Cir. 2004) ("A plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue."). Under those circumstances, a violation of federal law would at most be a sufficient condition, not a "necessary" one. *Gunn*, 468 U.S. at 259. As the Supreme Court explained in a related context, "a claim supported by alternative theories in the complaint may not form the basis for [federal-question] jurisdiction unless [federal] law is essential to each of those theories." *Christianson*, 486 U.S. at 810.

In *Long*, for example, the plaintiff sued his former employer, asserting a state-law claim for wrongful discharge in violation of public policy. *Long*, 201 F.3d at 759. Even though the claim required identification of relevant "legislative enactments" and the complaint identified only federal statutes, the Sixth Circuit held that it lacked federal-question jurisdiction. *Id.* at 760-61. The court explained that the plaintiff could succeed even without federal law because his complaint referred broadly to the "public policies of th[e] Commonwealth [of Kentucky] and the United States," and because Kentucky has a whistleblower statute that, while limited in scope and unnoticed by the plaintiff, might reflect a broader state policy against retaliatory discharge. *Id.* at 760 & nn.4-5 (relying on Ky. Rev. Stat. § 61.102, which the plaintiff failed to cite, and which protects only those employees who, unlike the plaintiff, report unlawful activity to state authorities). The Sixth Circuit concluded that "Long's complaint offered state as well as federal policies," foreclosing federal-question jurisdiction. *Id.* at 760.

The Fourth Circuit's decision in *Mulcahey v. Columbia Organic Chemicals Co.* further illustrates the principle. 29 F.3d 148 (4th Cir. 1994). There, the plaintiffs asserted state-law tort claims against a chemical company that polluted the surrounding environment. *Id.* at 149. The

7

plaintiffs alleged that the defendant was negligent because it breached the general duty of reasonable care, and alternatively that it was negligent *per se* because it violated several federal environmental laws. *Id.* at 150. The Fourth Circuit nonetheless held that federal law was not "essential" to the plaintiffs' negligence claim: "Even if [the defendant] was found not to have violated any federal statute, the Plaintiffs might still be entitled to recover under an alternative theory of negligence." *Id.* at 153-54. Accordingly, "[n]o federal subject matter jurisdiction exist[ed]." *Id.* at 154.

There is no subject-matter jurisdiction over Plaintiffs' claims for the very same reasons. As described in greater detail below, every claim that Plaintiffs assert is supported by alternative and independent violations of duties imposed by state statutory and common law, foreclosing federal-question jurisdiction. *See infra* at 14-24. Defendants make much of the fact that Plaintiffs' complaints refer to the CSA, *see generally* Supp. Opp. 14-15, 16, 18-19, 21, but "the mere reference of a federal statute in a pleading will not convert a state law claim into a federal cause of action," *Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) (citation omitted); *see Long*, 201 F.3d at 760 (no federal-question jurisdiction despite reliance on federal statutes). The Court's focus must remain on whether a violation of federal law is "an element" of Plaintiffs' claims—"and an essential one." *Franchise Tax Bd.*, 463 U.S. at 10-11 (citation omitted). Here, the complaints' references to the CSA and related regulations are used primarily as background information and as alternative bases to establish Defendants' duty of care. Because Plaintiffs also allege that Defendants violated a litany of duties under state law, federal law does not amount to an essential element. *Long*, 201 F.3d at 760; *cf. Christianson*, 486 U.S. at 809-10.

This Court has already concluded that claims like Plaintiffs' do not necessarily raise an issue of federal law, as have countless other district courts. In connection with Kentucky's motion

for remand, for example, this Court held that federal law would "not be necessarily raised" because Kentucky alleged that Defendants violated duties imposed not only by the CSA, but also by "state common law, statutes, and promulgated rules." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 (quoting *New Mexico ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242, 1252 (D.N.M. 2018)) (alterations omitted). The Court reached that result even though it recognized that when examined on the merits, a court might conclude that state law does not impose on Defendants "any" duty to prevent diversion of prescription drugs, and even though Kentucky's claims might be "partially predicated on federal law." *Id.* The Court granted that and two other remand motions, rejecting Defendants' arguments each time. *See* Dkts. 899, 1987. District court after district court, evaluating claims under the laws of many jurisdictions, have agreed: Plaintiffs' claims do not necessarily raise a federal issue.[3]

Defendants' two responses are both unpersuasive. First, Defendants attempt to distinguish this Court's earlier decisions on the ground that they "were in different contexts." Supp. Opp. 13. The differences that Defendants identify, however, are immaterial. Most prominently, Defendants explain that the Kentucky case that the Court remanded was "brought by [a] state attorney[] general." *Id.*[4] But the analysis focuses on ***the nature of the claim***, not the plaintiff's identity, and

---

[3] To name just a few: *Dunaway v. Purdue Pharma L.P.*, 391 F. Supp. 3d 802, 810-14 (M.D. Tenn. 2019); *Dinwiddie Cnty., Va. v. Purdue Pharma, L.P.*, 2019 WL 2518130, at *6 (E.D. Va. June 18, 2019); *Cnty. of Kern v. Purdue Pharma, L.P.*, 2019 WL 3310668, at *3 (E.D. Cal. July 23, 2019); *Ill. Pub. Risk Fund v. Purdue Pharma L.P.*, 2019 WL 3080929, at *2 (N.D. Ill. July 15, 2019); *City of Reno v. Purdue Pharma, L.P.*, 2018 WL 5730158, at *2 (D. Nev. Nov. 2, 2018); *Uintah Cnty., Utah v. Purdue Pharma, L.P.*, 2018 WL 3747847, at *5-6 (D. Utah Aug. 7, 2018); *New Mexico ex rel. Balderas*, 323 F. Supp. 3d at 1252; *Delaware ex rel. Denn v. Purdue Pharma L.P.*, 2018 WL 1942363, at *2 (D. Del. Apr. 25, 2018); *State of W. Virginia ex rel. Morrisey v. McKesson Corp.*, 2017 WL 357307, at *7-8 (S.D. W. Va. Jan. 24, 2017).

[4] In a footnote, Defendants note that the Court's decision was withdrawn. Supp. Opp. 14 n.6. But that was because Walgreens "consented" to remand after the Court rejected its arguments. *Commonwealth of Kentucky v. Walgreens Boots Alliance, Inc.*, No. 1:18-OP-46311, Dkts. 12, 15.

even Defendants cannot argue otherwise. Defendants argue that another remand order is distinguishable because it was driven by "the express request of a state court judge." Supp. Opp. 14. Of course, a state court judge's request cannot transform a "necessary" federal element into an unnecessary one.[5] And Defendants argue that yet a third remand order is distinguishable because it involved "a different federal statute and regulations." Supp. Opp. 14. But as explained above, the focus is on the state cause of action and its necessary elements, not the federal law that Defendants contend gives rise to the duties at issue. The reasoning supporting the Court's earlier remand orders applies equally here.

Second, Defendants fault other district courts—all of them, apparently—for failing to "independently analyze" whether the state-law sources that the plaintiffs cited really do give rise to the duties alleged. Supp. Opp. 13; *see also id.* at 15-16, 18, 20, 23. Defendants give short shrift to the work done by other district judges. These courts did not simply "defer[] to plaintiffs' bare allegations" about the existence and scope of state-law duties. Supp. Opp. 23. In *City of El Monte v. Purdue Pharma L.P.*, for example, the court grounded its reasoning in the plain text of a California statute and Supreme Court decision. *City of El Monte v. Purdue Pharma L.P.*, No. 2:19-CV-3588, Dkt. 39, at 6 (C.D. Cal. Jun. 18, 2019) (citing Cal. Civ. Code § 1714(a) and *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 837 (2019)); *see also Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2 (interpreting an Illinois regulation to "support[] the plaintiff's contention that Illinois law imposes duties independent of the defendants' obligations to comply with federal

---

What it means to "consent" to a court-ordered remand is anyone's guess, particularly because federal law does not permit appeal of the remand order. 28 U.S.C. § 1447(d). Regardless, the opinion's withdrawal is unrelated to the merits and does not affect its persuasiveness.

[5] Defendants also suggest that the Court's decision on this remand motion was "discretion[ary]"—in direct conflict with its argument elsewhere that remand motions "must be denied when Congress has authorized removal of the case." Supp. Opp. 8, 14 (quotation marks omitted).

law"). In asking this Court to do more, Defendants do not even pause to consider whether it is they, and not the dozens of judges they criticize, who have "go[ne] astray." Supp. Opp. 13.[6]

And sure enough, the law does not even permit the kind of searching inquiry that Defendants contend is required.[7] "[I]n a long and venerable line of cases," federal courts have firmly established that jurisdiction must "be addressed first," and that unless and until jurisdiction is established, district courts lack authority to pass on the merits of the claims presented. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998); *see also Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."). Defendants invert the proper procedure, asking the Court to reject Plaintiffs' arguments regarding the content of state law on the merits, so that it may then exercise jurisdiction over any remaining federal issues.

As this case clearly demonstrates, Defendants' approach—which involves a full-blown merits determination of state-law duties prior to determining jurisdiction—would "offend[] fundamental principles of separation of powers" and federalism. *Steel Co.*, 523 U.S. at 94. If a federal court were to remand after such a merits inquiry, its determination would encroach on the state court's authority to decide the case. And if federal courts were to find jurisdiction based on a determination that state law does not impose the duties asserted, state courts might never have the

---

[6] Defendants' position calls to mind a parable: A woman is watching the news and sees a report about a driver going the wrong way on the same highway that her husband is taking to come home. When she calls her husband and warns him that there is a person driving the wrong way, he responds, "One person? It's everybody!"

[7] Even if the Court were to conduct such an inquiry, Defendants have not provided the Court with any basis for a decision in their favor, as the party-presentation principle requires of the party bearing the burden. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008). Defendants offer nothing but general assertions about the importance of the CSA to Plaintiffs' claims and criticisms of courts that they believe conducted an inadequate inquiry into the merits of Plaintiffs' claims.

chance to disagree. That is especially problematic for common-law claims, which are shaped by policy judgments. *See James v. Meow Media, Inc.*, 300 F.3d 683, 693 (6th Cir. 2002) ("the existence of a duty of care reflects judicial policy at bottom"). Accordingly, "even where there may be some basis to agree with defendants that plaintiffs' view of the state law is incorrect and will be so found, it is for the state court to make the determination as to the applicability of its state law." *Manning*, 772 F.3d at 163-64 (citation and internal alterations omitted).

If federal courts cannot determine the merits of a claim on a jurisdictional motion, Defendants protest, then "plaintiffs could rely on spurious citations to state law to avoid federal jurisdiction, only to later turn around and ask a state court to make federal law." Supp. Opp. 2.[8] But federal courts can and do protect against that kind of jurisdictional gamesmanship—by asking whether the claim is frivolous. To ensure that plaintiffs do not add meritless federal claims to create federal-question jurisdiction, for example, federal courts may dismiss federal claims that are "wholly insubstantial and frivolous" for lack of subject-matter jurisdiction. *Bell*, 327 U.S. at 682-83. And to ensure that plaintiffs do not add meritless claims against non-diverse defendants to defeat diversity jurisdiction, courts will ignore defendants who could not possibly be liable. *See Alexander*, 13 F.3d at 949 ("There can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged." (citation omitted)). These related lines of cases stand for the proposition that when evaluating jurisdiction, courts must assume that claims have merit unless they are truly frivolous. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425-26 (4th Cir. 1999) ("the jurisdictional inquiry ends" when there is even a "glimmer of hope for the plaintiff").

---

[8] Set aside for a moment the misguided suggestion that it is somehow undesirable for state courts to interpret federal law. *See Mikulski*, 501 F.3d at 560-61; *infra* at 24-28.

The cases upon which Defendants rely do not, and cannot, undermine that foundational principle. Not a single court was called upon to scrutinize the existence or scope of state-law duties that a plaintiff asserted. In *Board of Commissioners of Southeast Louisiana Flood Protection Authority-East v. Tennessee Gas Pipeline Gas Co.*, the complaint "dr[ew] on federal law as the *exclusive basis* for holding Defendants liable" for certain claims, eschewing state law. 850 F.3d 714, 722 (5th Cir. 2017) (emphasis added). Plaintiffs attempted to remedy their error in remand briefing, but the state's highest court had "explicitly rejected the proposition" that state statutes like the one on which they relied could create the alleged obligations. *Id.* at 723. In *NASDAQ OMX Group Inc. v. UBS Securities LLC*, the plaintiffs also did not allege state-law sources of the alleged obligations. 770 F.3d 1010, 1022 (2d Cir. 2014). Instead, they sought damages arising only from NASDAQ's alleged violation of "federal law duties to operate fair and orderly markets," as well as SEC regulations and NASDAQ rules with which federal law required NASDAQ to comply. *Id.*

In *Bauer v. Elrich*, the plaintiffs alleged that the defendants' conduct was wrongful only because it violated federal law; the obligations at issue concededly had nothing to do with state law. 8 F.4th 291, 295, 297 (4th Cir. 2021) (the plaintiffs' complaint "contain[ed] a single theory of liability, namely that the County defendants' implementation of the EARP violates a federal law"). In *Wullschleger v. Royal Canin U.S.A., Inc.*, the plaintiffs' theories of liability for two of their three claims were predicated entirely on violations of the Food, Drug, and Cosmetic Act, as well as guidance issued by the Food and Drug Administration. 953 F.3d 519, 521 (8th Cir. 2020). If the court were to determine that the defendant did not violate federal law, plaintiffs would have had nothing to fall back on; their claims would fail. *See id.* And finally, in *Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Department of Environmental Management*, the state law at issue prohibited the state agency from a certain type of action "unless expressly required by

13

federal law." 585 F.3d 42, 49 (1st Cir. 2009). The First Circuit correctly reasoned that it was "not logically possible for the plaintiffs to prevail" without prevailing on the disputed federal issue. *Id.* In none of these cases did the court's finding of jurisdiction rest on a rejection of "plaintiffs' allegations that common law or other state law duties exist." Supp. Opp. 13.

The Court should reject Defendants' improper request to evaluate the merits of Plaintiffs' state-law allegations. But whatever approach the Court takes, the conclusion is the same: Plaintiffs' claims do not necessarily raise a federal issue.

1. **California:** *City of Sacramento and the People of the State of California v. Teva Pharmaceutical Industries, Ltd.*, No. 1:20-OP-45290

Start with Sacramento. To begin with, Defendants fail to identify the specific claims that they contend will require resolution of a federal issue—a fatal error for the party that bears the burden of persuasion. *See Mayor & City Council of Baltimore v. BP P.L.C.* ("*Baltimore*"), 31 F.4th 178, 211-12 (4th Cir. 2022), *cert. pending* (rejecting the removing parties' arguments in part because they did not identify the claim or element at issue). But given Defendants' reliance on *City and County of San Francisco v. Purdue Pharma L.P.*, Sacramento understands Defendants to take issue with Sacramento's public nuisance and negligence claims.

Sacramento does not have to rely on federal law to succeed on these claims. Under California law, "[a] public nuisance cause of action is established by proof that a defendant knowingly created or assisted in the creation of a substantial and unreasonable interference with a public right." *People v. ConAgra Grocery Prods. Co.*, 227 Cal. Rptr. 3d 499, 525 (Ct. App. 2017). Interference with a public right "is substantial if it causes significant harm and unreasonable if its social utility is outweighed by the gravity of the harm inflicted." *Id.* at 552 (citation omitted). Specific duties are implied from this general test. *See id.* at 554 ("interior residential lead paint" may be a public nuisance even in "the absence of a regulation or statute declaring [it] unlawful").

Here, Defendants distributed massive quantities of opiates without identifying and halting suspicious orders, causing significant harm to Sacramento and the nation that is not outweighed by any conceivable social benefit. *See Sacramento*, Dkt. 1-2 ("Sac. Compl.") ¶¶ 429-437. Federal law is not a necessary element of public nuisance. *See, e.g.*, *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 747 (9th Cir. 2022) (public nuisance claim did not raise a substantial federal question because it "neither require[d] an interpretation of a federal statute[,] . . . nor challenge[d] a federal statute's constitutionality, nor identifie[d] a legal issue necessarily raised by the claim that, if decided, will be controlling in numerous other cases" (citation and internal alterations omitted)). *Baltimore*, 31 F.4th at 210-11 (discussing Restatement (Second) of Torts, upon which California law also relies).

Sacramento's negligence claim is similar. Section 1714(a) of the California Civil Code, which Defendants fail to mention, imposes on "[e]veryone" broad tort liability for "injur[ies] occasioned to another by [their] want of ordinary skill in the management of [their] property or person." And it is "well established" under California common law that all entities have a general "legal duty to exercise due care so as not to create an unreasonable risk of injury to others." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citation omitted); *see id.* at 1203-15 (Glock could be liable in negligence and public nuisance for a shooting involving guns it manufactured). The policy considerations that shape this duty, such as "moral blame" and "the burden on the defendant and the general public," plainly support the conclusion that opioid distributors have a common-law duty to detect and halt suspicious orders. *T.H. v. Novartis Pharm. Corp.*, 4 Cal.5th 145, 164-65 (2017); Sac. Compl. ¶¶ 441-52. Federal law is not a necessary element of negligence.

Sacramento's nuisance and negligence claims are further supported by Defendants' breaches of specific, relevant duties created by California statutes and regulations. Because they

refused to detect and halt suspicious orders of opiates, for example, Defendants "furnished controlled substances for other than legitimate medical purposes," in direct violation of California law. Cal. H. & Safety Code § 11153.5(a); Cal. Bus. & Prof. Code § 4301; Sac. Compl. ¶¶ 447-48. Other provisions of California law require distributors to track and notify state authorities of "orders of unusual size, orders deviating substantially from a normal pattern, . . . orders of unusual frequency," and orders that are otherwise "suspicious." Cal. Bus. & Prof. Code § 4169.1; *see also id.* § 4164(a), (b).[9]

Defendants attempt to elevate federal law to a necessary element of Sacramento's claims only by adopting self-serving interpretations of California statutes and willfully ignoring California courts' prerogative to determine the content of state common law. Defendants also misconstrue the injunctive relief sought. Sacramento seeks to enjoin Defendants "from refusing to report suspicious orders of opioids," as *both* state law and the CSA require. Sac. Compl. Pray. (f).

Finally, Defendants argue that Judge Breyer's analysis of a different plaintiff's claims in a different case did not cite state law. Supp. Opp. 23 (citing *City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 2022 WL 3224463 (N.D. Cal. Aug. 10, 2022)). It goes without saying that a court cannot authoritatively interpret state law without so much as "referenc[ing]" it. *Id.* And Defendants are wrong anyway. Judge Breyer recognized that even if Defendants did not violate federal law, they would still be liable for public nuisance upon a showing that "the harms produced by [their] behavior outweigh the benefits, and that there is a link between the behavior and the interference with a public right." *San Francisco*, 2022 WL 3224463, at *52 n.28. Judge Breyer did not decide

---

[9] Defendants note that the form of the required notice is a copy of certain information provided to the federal government. Supp. Opp. 21. That fact alone does not implicate a federal issue. Sacramento alleges that Defendants failed *entirely* to notify California authorities of "suspicious orders" as defined by California law, not that the form of any notice was defective.

whether Defendants' conduct met that test because it was "unnecessary" given clear evidence showing they violated federal law. *Id.* Whatever course other litigation has taken, the question is not whether federal law will "likely" be addressed, but instead whether it is "essential" to Plaintiffs' claims. *Franchise Tax Bd.*, 463 U.S. at 10-11 (citation omitted). And here, it is not. *See City of El Monte*, Dkt. 39 at 5-6; *Kern*, 2019 WL 3310668, at *3.

### 2. Illinois: *International Union of Operating Engineers, Local 150 v. Purdue Pharma L.P.*, No. 19-OP-45414

Conspicuously missing from Defendants' supplemental brief is any Seventh Circuit authority supporting removal of International Union's case, whose "garden-variety state law tort claims" do not belong in federal court. *City of Granite City, IL v. AmerisourceBergen Drug Corp.*, 2018 WL 3408126, at *2 (S.D. Ill. July 13, 2018) (ordering remand of identical case under Illinois law *sua sponte*). This is unsurprising, as Seventh Circuit courts deciding remand motions in opioid cases like this one have universally found *Grable*'s requirements unmet. *See id.*; *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2-3. Referencing the CSA is insufficient to show the case "necessarily raises" a federal issue; the claim must rely entirely and solely on federal law to invoke *Grable*. *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2 ("[T]his reference to federal law does not suggest that a federal issue will inevitably arise . . ."); *see also Hartland Lakeside Joint No. 3 Sch. Dist. v. WEA Ins. Corp.*, 756 F.3d 1032, 1035 (7th Cir. 2014) (first prong is met when "[d]eciding an issue of federal law [is] inescapable"); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 ("[T]he influence of federal law on the outcome of a contract (or tort) suit is not enough to support the arising-under jurisdiction."); *Haith ex rel. Accretive Health, Inc. v. Bronfman*, 928 F. Supp. 2d 964, 970 (N.D. Ill. 2013) ("As *Gunn* makes clear, the fact that [p]laintiffs' state law claims turn in part on the application of federal laws—the HIPAA, the HITECH Act, the FDCPA, and the federal

17

securities laws—is not enough to satisfy *Grable*.").[10]

The Complaint includes alleged violations of Illinois laws that impose their own duties in addition to or independent of duties imposed by the CSA. *See, e.g.*, Int'l Union Compl. ¶¶ 579-80, 584, 611, 638, 648, 752). These include, for example, obligations imposed by Illinois' own Controlled Substances Act, 720 ILCS 570, *et seq*., as well as its Wholesale Drug Distribution Licensing Act, 225 ILCS 120, *et seq.*, regulating opiate manufactures, distributors, and prescribers. Int'l Union Compl. ¶¶ 579-80, 584, 611, 638, 648, 752. These statutory schemes are far more complex than merely regulating building security or maintenance of records, as Defendants suggest, *see* Supp. Opp. 19-20, but are comprehensive regimes that "support[] the [P]laintiff[s'] contention that Illinois law imposes duties independent of the [D]efendants' obligations to comply with federal law." *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2 (these "alleged state-law duties mean that the construction of the Controlled Substances Act is not a necessary part of the plaintiff's claims"). The conduct alleged would not only violate these statutes, but "also business practices that constitute independent violations of the [Illinois Consumer Fraud and Deceptive Business Practices Act, 814 ILCS 505/2, *et seq*.]." Int'l Union Compl. ¶ 709. And a jury could also find this conduct violates a general duty of reasonable care, independent of any CSA violation. *See, e.g.*, *City of Las Vegas v. Purdue Pharma, L.P.*, 2020 WL 223614, at *5 (D. Nev. Jan. 15, 2020) ("The city may also successfully argue that defendants breached the general duty of reasonable care.").

Defendants fail to meaningfully address either *Granite City* or *Ill. Pub. Risk Fund*—the only opiate cases in which remand motions were decided throughout the Seventh Circuit—likely because both roundly rejected Defendants' arguments. The best Defendants can muster is to claim

---

[10] As set out in International Union's original motion for remand, Defendants also fail to meet each of the other *Grable* requirements, including because they fail to identify a specific provision within the whole of the CSA that is actually in dispute. *International Union*, Dkt. 12.

in a single sentence that both courts "failed to grapple with Illinois law to determine whether any state law duties actually existed." Supp. Opp. 20. Setting aside that both decisions do in fact address how plaintiffs' allegations invoke Illinois law in a way that doesn't turn on the CSA, *see Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2-3; *Granite City*, 2018 WL 3408126, at *1-2, this is a red herring. That's because "insofar as [Defendants] dispute[] that Illinois law in fact establishes a relevant duty of care, [their] argument improperly seeks to litigate the merits of the plaintiff[s'] claims." *Ill. Pub. Risk Fund*, 2019 WL 3080929, at *2. District courts in Texas, Florida, and Maine have since cited the reasoning in *Granite City* and *Ill. Pub. Risk Fund* in rejecting Defendants' *Grable* arguments. *E. Maine Med. Ctr. v. Teva Pharms. USA Inc.*, 581 F. Supp. 3d 281, 288 (D. Me. 2022) (remanding and noting that the "conclusion was not difficult to reach"); *Fla. Health Scis. Ctr., Inc. v. Sackler*, 2020 WL 1046601, at *2 (S.D. Fla. Jan. 24, 2020); *Fire & Police Retiree Health Care Fund v. CVS Health Corp.*, 2019 WL 13191642, at *5 (S.D. Tex. July 24, 2019). This Court should not hesitate to do the same.

### 3. Pennsylvania: *Adams County v. Purdue Pharma L.P.*, No. 1:20-OP-45140

Even though Plaintiff Adams County's complaint is devoid of any cause of action filed under federal law, Defendants argue that Adams County's references to federal regulations under the CSA present a substantial federal question.

First, Adams County filed its complaint against Defendants asserting exclusively state law causes of action arising under Pennsylvania statutory and common law. Adams County's allegation that Defendants breached standards of care created by federal law is but one of many bases asserted by Adams County to establish its state law claims. *See, e.g.*, Adams Compl. ¶¶ 864-976. Specifically, Adams County's causes of action against all Defendants included: consumer fraud, deceptive trade practices in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law 73 P.S. §201-1 – 201-9.3, *et seq.*, *see, e.g.*, Adams Compl. ¶¶ 864-877;

19

public nuisance under Pennsylvania common law, *see, e.g.*, Adams Compl. ¶¶ 878-885; negligence under Pennsylvania common law, *see, e.g.*, Adams Compl. ¶¶ 886-917; and unjust enrichment under Pennsylvania common law, *see, e.g.*, Adams Compl. ¶¶ 918-933; (and common law fraud claims against some Defendants *see, e.g.*, Adams Compl. ¶¶ 934-976). Furthermore, Adams County in the complaint refers to Pennsylvania's Wholesale Prescription Drug Distributors License Act ("WPDDLA")[11] and the Pennsylvania Controlled Substance, Drug, Device & Cosmetic Act ("PCSA")[12] which impose state legal duties and obligations on the Defendants to identify, monitor, detect, investigate, refuse to ship and report suspicious orders of prescription opiates and to dispense opioids for only legitimate medical purposes. Federal courts have held that claims, such as those here, "'supported by alternative theories' may not supply the basis for federal question jurisdiction unless federal law 'is essential to each of those theories.'" *Harding-Wright v. D.C. Water and Sewer Auth.*, 350 F. Supp. 2d 102, 106 (D.D.C. 2005) (citations omitted).

Second, whether the alleged federal issue is "actually disputed" refers to whether there is a dispute over the meaning of the federal statute or regulation, not whether there is a factual dispute over whether the defendant violated the statute or regulation. *See Grable*, 545 U.S. at 309 ("the federal statute's meaning is actually disputed"). In its removal papers, CVS does not assert that the meaning of a federal statute or regulations was in dispute but rather candidly asserted only that there are disputes as to whether "CVS violated its duties." Adams Notice of Removal ¶ 28.

Third, recently the Eastern District of Pennsylvania, in remanding the City of Philadelphia's opioid case, addressed some of the same state law claims which are raised in Adams County's Complaint—namely Pennsylvania state law claims of public nuisance, deceptive trade

---

[11] *See* Adams Compl. ¶¶ 524, 528; 63 P.S. § 391.3.
[12] *See* Adams Compl. ¶¶ 524, 528; 35 P.S. § 780, *et seq*.

practices under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and unjust enrichment. *City of Phila. v. CVS Rx Servs., Inc.,* 2022 WL 226072 (E.D. Pa. Jan 26, 2022). In its analysis, the Court noted that the City of Philadelphia's "Complaint discusses Defendants' duty as pharmaceutical distributors under the *Controlled Substances Act (CSA)* to support its allegations that Defendants are liable for state law claims." *Id.* at *3. The Court then held, as many other courts which have rejected similar Defendant's arguments in other opioid cases, that references to the CSA did not establish federal-question jurisdiction:

> The City's reference to the CSA, without more, does not establish federal question jurisdiction. **The CSA does not provide a civil cause of action, nor does the City allege one** …. The complaint sets forth extensive factual allegations and alternative legal theories to support its claims its claims for public nuisance, unjust enrichment and violations of the Pennsylvania UTPCPL statute.

*Id.* at *5-6 (emphasis added).

The Court further rejected Defendants' arguments that the case was removable under the Class Action Fairness Act ("CAFA"), holding unequivocally that City of Philadelphia's opioid lawsuit was not a class action. *Id.* at *6.

In sum, Adams County's state law claims do not necessarily raise substantial issues of federal law which are capable of resolution in federal court without disrupting the congressionally approved federal-state balance. *See Grable*, 545 U.S. at 312–14; *Gunn*, 568 U.S. at 264. Adams County's case, therefore, does not fit within the "special and small category" of cases that fall within the substantial federal question doctrine, and there is no federal jurisdiction over this action. *See Empire Healthchoice*, 547 U.S. at 699. Furthermore, the litany of caselaw strongly cautions against establishing federal question jurisdiction under the foregoing facts.

### 4. Virginia: *Frederick County v. Mallinckrodt PLC*, No. 1:20-OP-45233; *City of Roanoke v. Purdue Pharma*, L.P., No. 1:19-OP-45696

The complaints filed by Frederick County and the City of Roanoke ("Virginia pleadings")

both include only state law counts.[13] Defendants contend, however, that they "rely on federal law to establish" the duties underlying the claims of public nuisance and negligence. Supp. Opp. 16.

But Virginia has long recognized that a nuisance embraces "everything that endangers life or health." *Barnes v. Quarries, Inc.*, 204 Va. 414, 417 (1963). And Virginia provides a statutory and a common law remedy for local subdivisions afflicted by a public nuisance—neither requires federal law underpinnings. *See* Va. Code Ann. § 15.2-900 (providing that "any locality may maintain an action to compel a responsible party to abate … a public nuisance").

Likewise, the Virginia pleadings' negligence counts are grounded in common law duties. Virginia negligence law recognizes that liability attaches where a person's "conduct . . . create[s] a recognizable risk of harm to . . . a class of persons . . . within a given area of danger." *Quisenberry v. Huntington Ingalls, Inc.*, 296 Va. 233, 244 (2018). Defendants' conduct, as alleged in the Virginia pleadings, meets this definition, regardless of federal law.

The Virginia pleadings' state law negligence *per se* counts do mention federal law—but only as an element of these state law claims and only as an additional corollary to violations of Virginia law. *See* Frederick Cnty. Compl. ¶¶ 682, 691 (citing "the Virginia Drug Control Act . . . and the CSA"). Plus, the counts quote multiple Virginia statutes and regulations, such as a statute requiring notice to Virginia authorities when a suspicious order shipment is halted. *Id.* ¶ 692.

Defendants strain to minimize this reliance on express Virginia law. For example, they falsely claim that "plaintiffs concede that [how to monitor or when to halt orders] must be resolved 'pursuant to CSA requirements.'" Supp. Opp. 17. The Virginia pleadings, however, do not make

---

[13] The counts are identical in the two Virginia complaints, with the exception that the City of Roanoke's original complaint (the operative complaint as of the date of removal to federal court) did not include a negligence per se count against pharmacy defendants. The allegations referenced herein also appear in both Virginia complaints, although the paragraph numbering is not identical because Roanoke's original complaint addressed pharmacy defendants differently.

any such "concession"; rather, they expressly quote the Virginia statute providing this allegedly missing detail in the very negligence *per se* count that Defendants criticize. Frederick Cnty. Compl. ¶ 692 (Virginia statute defines "suspicious order" as "(i) orders of unusual size, (ii) orders deviating substantially from a normal pattern, and (iii) orders of unusual frequency.").[14]

Defendants next try to recast a state regulation requiring Distributors to "provide and maintain appropriate inventory controls in order to detect and document any theft, counterfeiting, or diversion of prescription drugs." Frederick Cnty. Compl. ¶ 693 (quoting 18 VAC 110-5-90)). They contend this citation is "irrelevant" because it does not apply to customer orders. Supp. Resp. 17. But what the regulation may or may not apply to is a substantive question and has nothing to do with whether federal question jurisdiction exists.

Defendants also criticize several decisions by Virginia federal judges rejecting the precise arguments made here. Supp. Opp. 19; *see Mecklenburg Cnty., Va. v. Purdue Pharma, L.P.*, 2019 WL 3207795 (E.D. Va. Jul. 16, 2019); *Dinwiddie Cnty.*, 2019 WL 2518130; *Cnty. Bd. of Arlington Cnty., Va. v. Purdue Pharma, L.P.*, No. 1:19-CV-402, ECF 63 (E.D. Va. May 6, 2019). Defendants claim these judges failed because they did not "analyze[] the alleged state law duties at issue." Supp. Op. 19. This statement, of course, is presumptuous. Unlike Defendants, the federal judges in question actually read the pleadings for what they are, complaints sounding only in state law.

Finally, Defendants mischaracterize the reality of Virginia opioid proceedings. According to Defendants, "[o]ther federal judges in Virginia have taken a different approach" than those that rejected this federal question argument. *Id.* But the fact is that *no* Virginia federal judge presented

---

[14] Defendants also contend that since this same Virginia "halt orders" statute was passed in 2015, it "could not support Frederick County or Roanoke's claims, which stretch back far before 2015…" Supp. Opp. 17, fn.8. However, the fact that this particular claim may only be brought against Distributors for conduct from 2015 forward is irrelevant to the remainder of the counts against Defendants and any applicable timetables that may apply.

with this argument by opioid defendants has ever embraced it. Virginia federal judges have either stayed cases and declined to address remand issues at all (thus permitting transfer to this Court by the JPML), or they have expressly rejected Defendants' federal question argument. There is no different approach.

### B.  Any Federal Issue Is Not Substantial

Even if Plaintiffs' claims necessarily raised a question of federal law (which they do not), it would not be substantial withing the meaning of *Gunn*.

"In assessing whether a federal question of law is substantial" as that term is used by *Grable* and *Gunn*, courts "consider whether a federal agency is a party to the action, whether the federal issue is important and dispositive, and how broad the binding effect of the decision will be[,] . . . along with any other[ factors] that are relevant, in aggregate." *Miller v. Bruenger*, 949 F.3d at 993 (quotation marks omitted). The "presence of a claimed violation of [a] federal statute as an element of a state cause of action" is insufficient. *Hampton*, 683 F.3d at 712 (quoting *Merrell Dow*, 478 U.S. at 814) (internal alterations omitted).

In *Empire Healthchoice*, for example, the federal issue was not "triggered . . . by the action of any federal department, agency or service," was "fact-bound and situation-specific," and involved law that state courts were "competent to apply." *Empire Healthchoice*, 547 U.S. at 700-01. By contrast, the federal issue in *Grable* was substantial because it was "the only issue contested in the case," and it was a "nearly pure issue of law" that would resolve "once and for all" whether the IRS was acting in accordance with federal law. *Id.* at 700 (quotation marks omitted).

"This case," like most, "is poles apart from *Grable*." *Id.* First, none of Plaintiffs' claims, or the elements of those claims, bear on the lawfulness of any federal agency's activity. Defendants argue that if these cases were to be remanded, state courts might "affect[] the DEA's ability to enforce the CSA," but it is hard to imagine how that might be so. Supp. Opp. 25. DEA enforcement

actions occur in federal fora, none of which would be bound by any state court's interpretation of the rights and obligations created by the CSA. *See Mikulski*, 501 F.3d at 570 ("The government is free to interpret and apply the tax code as it sees fit, without the slightest regard for this lawsuit."). And if the DEA disagrees with state courts' decisions, it "even has the authority to vindicate its interest by issuing a formal interpretation of [the CSA] via administrative rule making." *Mikulski*, 501 F.3d at 570; *see* 21 U.S.C. § 811 (vesting in the Attorney General authority to administer the CSA; 21 C.F.R. § 1308.43 (delegating Attorney General's authority to administer the CSA to the DEA); *see also, e.g.*, 21 C.F.R. § 1301.71 (DEA regulation imposing duty to guard against diversion of controlled substances).

Second, "Plaintiff[s'] claim[s] [are] 'fact-bound and situation specific' and do not readily present a pure issue of law which federal adjudication could resolve 'once and for all.'" *New Mexico ex rel. Balderas*, 323 F. Supp. 3d at 1252 (quoting *Empire Healthchoice*, 547 U.S. at 700); *see also Uintah Cnty.*, 2018 WL 3747847, at *8. The Court need look no further for proof than Defendants' own brief, in which Defendants state the purportedly essential federal issue at a remarkably high level of generality: "the existence and scope of alleged duties arising under the CSA, and if they exist, whether defendants violated any duties to monitor, detect, investigate, and report suspicious orders under the CSA." Supp. Opp. 24. That is a highly textured federal question presenting mixed issues of law and fact. It stands in stark contrast to *Grable*, which involved just two competing interpretations of a federal statute. *See* 545 U.S. at 311, 315; *City of Oakland v. BP PLC*, 969 F.3d 895, 907 (9th Cir. 2020) (noting that a public nuisance claim "is not the type of claim for which federal-question jurisdiction lies" because it "require[s] factual determinations").

Third, the scope of Defendants' duty to identify and halt suspicious orders of controlled substances is not the only issue in these cases. Plaintiffs allege that Defendants have breached a

wide range of other duties, too. And if the litigation in this MDL is any indication, other issues are likely to be hotly contested, too. *See, e.g.*, Dkt. 2561 (order denying Defendants' motion for summary judgment on proximate causation).

Fourth, while the regulation of controlled substances is surely important, "state courts are generally presumed competent to interpret and apply federal law." *Mikulski*, 501 F.3d at 560 (citing *Zwickler v. Koota*, 389 U.S. 241, 245 (1967)). The Sixth Circuit warns against being "misled" by "histrionic fear[s]" like those raised by Defendants—that "allowing state courts to decide federal law might lead to some disastrous consequence, such as 50 irreconcilable interpretations of the [CSA], a potential race to the bottom," or an imbalanced regulatory scheme. *Id.* at 561. "[T]hese are *not* the types of consequences to be considered by *courts*. . . . It is up to Congress . . . to decide when the risk of state-court error becomes so unbearable as to justify divesting the state courts of authority to decide the federal matter." *Id.* (quotation marks and alterations omitted). The Court's "inquiry is ultimately one of congressional intent, not policy or personal preference." *Id.* And here, the best indications of Congress's intent are its decisions not to create a private right of action to enforce the CSA, not to create exclusive federal jurisdiction over the CSA, and not to preempt all state regulation of controlled substances. *See* 21 U.S.C. § 903; *Mays v. City of Flint, Mich.*, 871 F.3d 437, 449-50 (6th Cir. 2017) ("[W]here Congress has not created a private cause of action for violations of a federal statute, there is less likely to be a substantial interest in favor of removal."); *Gunn*, 568 U.S. at 259-64 (patent law issue was not substantial even though federal courts have exclusive jurisdiction over patent law). Opioid litigation has been proceeding in state court since before this MDL's inception, including to trial, and Congress has expressed no concern about the implications for the CSA.

Defendants cite scattered portions of the legislative and regulatory record, stripping each

of important context. For example, Defendants argue that Congress intended the CSA to protect the appropriate medical use of controlled substances, *see* Supp. Opp. 25, but a closer review of the sources cited and the broader history reveals that Congress wanted to protect medical practice by getting out of the states' way. The DEA policy statement on which Defendants rely emphasizes that "State laws and State licensing bodies," not the federal government, "collectively regulate the practice of medicine," and that "Congress expressly intended" that the "regulation of controlled substances . . . was to be shared by the Federal and state governments." Dispensing Controlled Substances for the Treatment of Pain, 71 Fed. Reg. 52,716, 52,717 & n.12 (DEA Sept. 6, 2006). That history demonstrates that while the CSA did, in fact, create some "Federal control" over the regulation of controlled substances, Congress never wanted its control to be exclusive. Supp. Opp. 25 (quotation marks omitted).[15]

And because Congress preserved the states' authority to regulate controlled substances, it could not have sought to create a truly uniform regulatory scheme as Defendants suggest. Regardless, uniformity is created by federal statutes, not federal jurisdiction. Even if the federal courts had exclusive jurisdiction over the CSA, nothing would require the more-than-600 district judges, 94 district courts, and 13 courts of appeals to agree with one another. Any remaining "concern about the uniformity of interpretation, moreover, is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of actions, th[e Supreme Court] retains power to review the decisions of a federal issue in a state cause of action." *Merrell Dow*, 478 U.S. at 816.

---

[15] *Cf. Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) (where "Congress has legislated in a field which the states have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress" (citation and internal alterations omitted)); *id.* at 491 (legislative history did not reflect intent to interfere with "common-law duties enforced by damages actions").

The cases upon which Defendants rely also do not support their arguments. *Safe Streets Alliance v. Hickenlooper*, for example, involved plaintiffs' attempts to enjoin Colorado's liberal marijuana regulatory scheme as violative of the CSA. 859 F.3d 865 (10th Cir. 2017). If those plaintiffs had a cause of action at all, its roots were in federal common law. *See id.* at 896-897. The Tenth Circuit found that the claims were "substantial" in the sense of "nonfrivolous," as there is no jurisdiction over federal claims that are "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit." *Steel Co.*, 523 U.S. at 89; *Safe Sts. All.*, 859 F.3d at 897 (citing *Steel Co.* and *Bolivarian Rep. of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1322 (2017) for this proposition).

There is nothing more here than "[t]he presence of a claimed violation of [a] federal statute as an [alternative] element of a state cause of action." *Hampton*, 683 F.3d at 712. That is "insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* Defendants' own cases agree: In *Bauer*, the Fourth Circuit reaffirmed its longstanding precedent that plaintiffs who assert a "negligence *per se* claim that relies on a federal standard of care" are "limited to state court under *Merrell Dow* . . . which held that such state law claims do not raise substantial federal questions." 8 F.4th at 301. The Court should reject Defendants' baseless contention that Plaintiffs' "garden variety state tort claims" implicate substantial federal issues. *Grable*, 545 U.S. at 318.

### C.  Exercising Jurisdiction Would Disrupt the Federal-State Balance

There is a third, independent ground to reject federal jurisdiction: Exercising jurisdiction over Plaintiffs' cases would disrupt the balance of power between federal and state courts.

The "starting point for this part of the analysis" is Congress's choice not to provide a private cause of action to enforce the CSA or preempt state remedies. *Mikulski*, 501 F.3d at 573. In *Merrell Dow*, for example, there was no federal jurisdiction over a negligence claim even though it was premised on the defendant drug manufacturer's violation of federal labeling requirements. 478

U.S. 804. Because Congress had neither provided a private cause of action nor preempted related state remedies, the Supreme Court "thought it improbable" that Congress meant to create jurisdiction over tort claims whenever "violation of the federal law is said to create a rebuttable presumption of negligence." *Grable*, 545 U.S. at 319 (internal alterations omitted).

"This case is functionally identical to *Merrell Dow*." *Hampton*, 683 F.3d at 712. At most, Plaintiffs allege that Defendants were "presumptively negligent" by virtue of their violations of federal law—a "garden-variety state tort claim." *Id.* (no jurisdiction over negligence claims based on violations of the Railroad Safety Act). Finding Plaintiffs' claims removable—even though Congress neither created a private right of action nor preempted related state remedies—would "flout, or at least undermine congressional intent" and "herald a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 712-13 (quotation marks omitted).

Defendants emphasize that this case involves "a complex federal regulatory framework," but such frameworks fill the United States Code. Supp. Opp. 29. *Merrell Dow* involved a complex regulatory framework. 478 U.S. at 805-06 (FDCA). So did *Hampton* and *Mays*. *Hampton*, 683 F.3d at 710-14 (Railroad Safety Act); *Mays*, 871 F.3d at 441-42 (Safe Drinking Water Act). *Empire Healthchoice*, *Franchise Tax Board*, and countless other cases did, too. *Empire Healthchoice*, 547 U.S. at 682 (Federal Employees Health Benefits Act); *Franchise Tax Bd.*, 463 U.S. at 5 (ERISA). As those cases make clear, the Court should consider the impact jurisdiction might have on litigation of state-law claims relating not only to the CSA, but also to other federal laws. "For if the federal [CSA's] standard[s] without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action." *Grable*, 545 U.S. at 318; *see Ill. Pub. Risk Fund*, 2019 WL 3080929, at *3; *Delaware ex rel. Denn*, 2018 WL 1942363, at *5; *New Mexico ex rel. Balderas*, 323 F. Supp. 3d at 1253. That outcome would flood the federal

courts' dockets in a manner never intended by Congress.

Defendants claim otherwise, arguing that this litigation is "unlike any other" and therefore may be distinguished in future cases. Supp. Opp. 29. Defendants' assurances inspire no confidence, particularly because they fail to identify any distinguishing feature of this litigation that would affect the jurisdictional analysis. *See id.* (citing Court Orders describing the unusually difficult task of crafting an appropriate remedy). Defendants also argue that exercising jurisdiction will not threaten the balance of power between state and federal courts because federal courts are "already" adjudicating state-law claims relating to the opioid crisis. Supp. Opp. 29-30. But that is no reason to deny state courts the power to adjudicate these issues in cases properly before them.

It is imperative that these cases be remanded. As this Court knows better than any, opiate litigation burdens the federal courts. Equally serious, federal jurisdiction compromises states' autonomy. It would deprive state courts of the opportunity to propound and apply their own statutory and common law, instead leaving them to cross their fingers that federal courts get it right. "[C]onsiderations of comity" allow for removal jurisdiction originally brought by state officials in state court only when "some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21 n.22; *see also Nessel ex rel. Michigan*, 954 F.3d at 837-38. There is no such clear rule here.

## CONCLUSION

For the reasons stated here and in the earlier briefing, the Court lacks federal-question jurisdiction over Plaintiffs' cases, each of which involves only state-law claims. Plaintiffs respectfully ask the Court to grant their pending motions for remand and allow these municipalities to litigate their claims in the local jurisdictions where they belong.

Dated:        October 28, 2022        */s/ Robert Peck*
Robert Peck

Robert Peck
Center for Constitutional Litigation, P.C.
1901 Connecticut Avenue, NW, Suite 1008
Washington, DC 20009
Phone:  (202) 944-2874
Fax:  (646) 365-3382
robert.peck@cclfirm.com

Joel Liberson
Trial & Appellate Resources, P.C.
3655 Torrance Blvd., 3rd Floor
Torrance, CA 90503
Phone:  (917) 848-3218
joel@taresources.com

Susana Alcala Wood
City Attorney
City of Sacramento
915 I Street, 4th Floor
Sacramento, CA 95814-2608
Phone:  (916) 808-5346
Fax:  (916) 808-7455
sawood@cityofsacramento.org

*Attorneys for the City of Sacramento and the People of the State of California*

*/s/ Jay Edelson*
Jay Edelson
jedelson@edelson.com
Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for International Union of Operating Engineers, Local 150, Midwest Operating Engineers Health and Welfare Fund, Chicago Regional Council of Carpenters, and Chicago Regional Council of Carpenters Welfare Fund*

31

/s/ *Joseph J. Cappelli*
Joseph J. Cappelli, Esq. (PA ID 55166)
Marc J. Bern & Partners, LLP
101 West Elm Street, Suite 520
Conshohocken, PA 19428
Tel: (610) 941-4444
Fax: (610) 941-9880
jcappelli@bernllp.com

*Attorneys for Adams County, Pennsylvania*

/s/*Kevin Sharp*
Kevin Sharp
ksharp@sanfordheisler.com
Grant Morris
gmorris@sanfordheisler.com
Jonathan Tepe
jtepe@sanfordheisler.com
Kasi Wautlet
kwautlet@sanfordheisler.com
Sanford Heisler Sharp, LLP
611 Commerce Street, Suite 3100
Nashville, TN 37203
Tel.: (615) 434-7000
Fax: (615) 434-7020

Steve Kelly
skelly@sanfordheisler.com
Sanford Heisler Sharp, LLP
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
Phone: (410) 834-7420
Fax: (410) 834-7425

Kaitlin Leary
kleary@sanfordheisler.com
James Hannaway
jhannaway@sanfordheisler.com
Sanford Heisler Sharp, LLP
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Phone: (202) 499-5200
Fax: (202) 499-5199

Joanne Cicala
joanne@cicalapllc.com
R. Johan Conrod, Jr.
johan@cicalapllc.com
Josh Wackerly
josh@cicalapllc.com
Shelbi Flood
shelbi@cicalapllc.com
Cristina Moreno
cristina@cicalapllc.com
The Cicala Law Firm PLLC
101 College Street
Dripping Springs, TX 78620
Tel.: (512) 275-6550
Fax: (512) 858-1801

W. Edgar Spivey
wespivey@kaufcan.com
Patrick H. O'Donnell
phodonnell@kaufcan.com
Kaufman & Canoles, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510
Tel.: (757) 624-3000
Fax: (888) 360-9092

*Attorneys for Frederick County, Virginia and the City of Roanoke, Virginia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 28, 2022, a copy of the above and foregoing was electronically filed using the CM/ECF system, which will send a notification to all counsel of record.

*<u>/s/ Robert Peck</u>*