UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**This Document Relates to:**<br><br>*City of Roanoke, Virginia v. Purdue Pharma, L.P., et al.*,<br>Case No. 1:19-OP-45696<br><br>*Frederick County, Virginia v. Mallinckrodt PLC, et al.*,<br>Case No. 1:20-OP-45233 | MDL No. 2804<br><br>Case No. 17-MD-2804-DAP<br><br>Judge Dan Aaron Polster<br><br><br><br>**PLAINTIFFS' SUPPLEMENTAL RESPONSE ON FEDERAL OFFICER JURISDICTION IN SUPPORT OF PLAINTIFFS' MOTIONS TO REMAND** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 3

ARGUMENT ............................................................................................................................. 4

    A.    Choice of Law ............................................................................................................. 4

    B.    Standard of Review .................................................................................................... 5

        1.    Removing Defendants Have Not Met Their Burden to Establish That the Actions for Which They are Being Sued Were Performed Under the Color of a Federal Officer ............................................................................................ 6

        2.    Removal Based on the DOD Contract Does Not Comply with the Purposes of the Federal Officer Removal Statute ................................................................ 9

    C.    The FEHBA Relationships Do Not Provide a Basis for Federal Officer Removal ........... 11

**CONCLUSION AND REQUEST FOR RELIEF IN THE ALTERNATIVE** ....................... 13

## TABLE OF AUTHORITIES

**Cases**

*Arlington Cnty. v. Mallinckrodt PLC*,
 No. 21-Op-45078, Dkt. 40-2 (Dec. 12, 2019) .................................................................. 2, 7

*Atl. Shore Surgical Assocs. v. Aetna Life Ins. Co.*,
 2021 U.S. Dist. LEXIS 73127 (D.N.J. Apr. 12, 2021) ....................................................... 9

*Bailey v. Monsanto Co.*,
 176 F. Supp. 3d 853 (E.D. Mo. 2016) ............................................................................ 7, 8

*Baker v. Atl. Richfield Co.*,
 962 F.3d 937 (7th Cir. 2020) ............................................................................................. 8

*Cherokee Nation v. McKesson Corp. (In re Nat'l Prescription Opiate Litig.)*, |
 327 F. Supp. 3d 1064 (N.D. Ohio 2018) ..................................................................... 5, 11

*City of Martinsville, Virginia v. OptumRx, Inc.*,
 No. CL18-240 (Va. Cir. Ct. 2018) ..................................................................................... 3

*Eastman v. Marine Mech. Corp.*,
 438 F.3d 544 (6th Cir. 2006) ............................................................................................. 5

*Freedom Steel, Inc. v. Senn Freight Lines, Inc.*,
 2010 U.S. Dist. LEXIS 12876 (N.D. Ohio Jan. 26, 2010) ................................................ 9

*Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*,
 491 F.3d 320 (6th Cir. 2007) ............................................................................................. 5

*Harnden v. Jayco, Inc.*,
 496 F.3d 579 (6th Cir. 2007) ............................................................................................. 5

*In re Abbott Lab'ys*,
 2022 U.S. Dist. LEXIS 150047 (N.D. Ill. Aug. 22, 2022) ................................................ 5

*Jacks v. Meridian Res. Co., LLC*,
 701 F.3d 1224 (8th Cir. 2012) ......................................................................................... 12

*Maryland v. Soper (No. 1)*,
 270 U.S. 9 (1926) ............................................................................................................ 10

*Mays v. City of Flint*,
 871 F.3d 437 (6th Cir. 2017) .................................................................................. 5, 6, 10

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
 935 F.3d 352 (5th Cir. 2017) ................................................................................. 3, 11, 12

*St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*,
 990 F.3d 447 (5th Cir. 2021) ................................................................................... 9, 11

*Strebler v. Morgan Stanley & Co.*,
 2014 U.S. Dist. LEXIS 128231 (N.D. Ohio Sept. 12, 2014) ............................................ 9

*Watson v. Philip Morris Cos.*,
 551 U.S. 142 (2007) ................................................................................................. 10

**Statutes**

28 U.S.C. § 1442 ................................................................................................................ 1, 5

Va. Code Ann. §§ 8.01-267.1, *et seq.* ................................................................................. 3

## INTRODUCTION

In accordance with settled choice of law principles in MDL matters, this Court should apply Sixth Circuit law to the federal law issue of removal under the federal officer removal statute, 28 U.S.C. § 1442. The Sixth Circuit places the burden of establishing federal jurisdiction squarely on the shoulders of the party seeking such jurisdiction—here, the Removing Express Scripts Defendants.[1] This means the Removing Defendants bear the burden of establishing the elements necessary for federal officer removal jurisdiction, including that, with respect to the claims made in the suits at issue, they acted under color of a federal officer.

The Removing Defendants have failed to carry this burden. While they rely principally on a contract with the Department of Defense to manage pharmaceutical benefits and provide mail pharmacy services for TRICARE beneficiaries (*i.e.*, military personnel and their families) ("DOD contract")[2], they fail to draw any connection between this DOD contract and either the City of Roanoke or Frederick County. Specifically, they fail to provide any evidence of any pharmaceuticals, much less any opioids, being dispensed pursuant to the DOD contract to persons in or near Roanoke or Frederick County.

By contrast, in the Arlington County opioid litigation (*i.e.*, the litigation that led to the Fourth Circuit decision upholding federal officer removal jurisdiction) the Removing Defendants

---

[1] The Removing Defendants in the Frederick County case are Express Scripts, Inc. (ESI), Express Scripts Holding Company (ESHC), Express Scripts Pharmacy, Inc. (ESPI), and ESI Mail Pharmacy Service, Inc. (ESIMPS). ESPI and ESIMPS are mail order pharmacies. ESI is the principal PBM operating entity. Neither ESI nor ESHC are mail order pharmacies.

In the City of Roanoke case, the Removing Defendants are only the two mail order pharmacies, ESPI and ESIMPS. The difference between the two cases is that the mail order pharmacies were not original defendants in Roanoke—rather, they were added by amendment after the case was transferred to the MDL. In fact, the original notice of removal filed in Roanoke did not actually include federal officer as a ground for removal—only after the mail order pharmacies were added as defendants did they file a supplemental notice of removal and add federal officer as a ground for removal.

[2] The DOD Contract is attached as Exhibit 4 to Removing Defendants' Mem. in Opp. to Remand, *Frederick Cnty.* Dkt. 29-4.

1

supplied specific evidence (in the form of a sworn declaration) that over 29% of the mail order pharmacy dispensing transactions by the Removing Defendants to persons in Arlington County were made under the auspices of the DOD contract. *Arlington Cnty. v. Mallinckrodt PLC,* No. 21-Op-45078, Dkt. 40-2 (Dec. 12, 2019). This should not be surprising, given that Arlington County is both the home of the Pentagon and just across the Potomac from Washington, D.C.

Roanoke and Frederick County, however, are not Arlington County—and that is nowhere more evident than in the fact that the Removing Defendants chose to omit providing any jurisdiction-specific evidence tying the claims in the complaint to the DOD contract.[3] Instead, they only provide information regarding the total percentage of DOD contract claims for the *entire* Commonwealth of Virginia, not any specific jurisdiction, even though the claims in the complaints are grounded in public nuisances and the like causing harm within the Plaintiffs' localities. The Removing Defendants' failure to provide this critical link is dispositive—they have failed to carry their burden, and the Court should grant the Motions to Remand.

Finally, in the Frederick County case only, the Removing Defendants contend that federal officer removal is appropriate under their non-DOD federal employee insurance relationships (*i.e.*, their reliance on involvement with insurance plans governed by the Federal Employees Health Benefits Act, or FEHBA).[4] This argument also fails.

First, the Removing Defendants have failed to provide sufficient evidence of FEHBA claims specific to either Roanoke or Frederick County. As with the DOD contract addressed above, this omission is fatal. Second, while some courts have recognized FEHBA-based federal officer

---

[3] Presumably this omission was intentional since the supporting witness declarations in Roanoke and Frederick County were both filed *after* the declaration in Arlington County and were both made by the same witness. In fact, the Roanoke declaration was just filed with the Removing Defendants' supplemental brief on September 30, 2022. Put differently, these defendants knew how to provide such evidence when it suited their arguments.

[4] As Removing Defendants concede in their Supplemental Brief, FEHBA was not raised as a ground for removal in the City of Roanoke case. Dkt. 4653 at 10 n. 5.

2

removal, those cases are readily distinguishable, primarily because they feature insurance carrier defendants, not third-party benefit managers like the Removing Defendants in Frederick County. *See St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 935 F.3d 352, 356 (5th Cir. 2017) (*"St. Charles I")* (observing that other circuits have found that insurance "carriers" sued in connection with FEHBA plans may remove on federal officer grounds).

For these reasons, those set forth below, and the reasons set forth in the Plaintiffs' original memoranda in support of remand, this Court should grant the Motions to Remand filed by the City of Roanoke and Frederick County.

## BACKGROUND

The suits filed by the City of Roanoke and Frederick County allege a number of state law claims against manufacturers, distributors, pharmacies and pharmacy benefit managers (PBMs). Included among the pharmacy defendants are mail-order pharmacies owned by PBM Defendants Express Scripts, Inc. and Express Scripts Holding Company.[5]

ESI is party to a contract with the Department of Defense to provide certain pharmacy benefit management services in connection with the DOD's TRICARE health insurance program. These services include mail-order pharmacy activities. DOD Contract, Section C.7.1.1 *et seq.* The Removing Defendants base their principal federal officer removal theory on this DOD Contract. Their essential theory is that Roanoke and Frederick County bring claims for improper dispensing of opioids and PBM activities creating and contributing to a public nuisance in these localities (a

---

[5] On November 20, 2018, the Supreme Court of Virginia entered an order on opioid litigation matters pursuant to Virginia's Multiple Claimant Litigation Act, which provides for consolidation of cases when more than six matters involving the same core issues are pending in state courts. Va. Code Ann. §§ 8.01-267.1, *et seq.* That order appointed a panel of three judges to decide issues of consolidation and transfer for opioid cases. Before the panel could act, the cases were removed. Today, there is only one opioid case brought by a locality pending in Virginia state court (*City of Martinsville, Virginia v. OptumRx, Inc.*, No. CL18-240 (Va. Cir. Ct. 2018)). The MCLA panel, however, has yet to be formally dissolved and would be engaged in the event more than five additional opioid cases are remanded to Virginia state court.

3

simplistic and inaccurate characterization of plaintiffs' claims); that at least some of the opioids were dispensed and managed under the auspices of the TRICARE program; and that therefore the DOD contract "relates to" the lawsuits. *See, e.g., Frederick Cnty.* Notice of Removal Dkt. 1 at ¶¶ 33-34.[6]

In Frederick County, Removing Defendants also assert FEHBA relationships as a basis for removal. In Paragraph 28 of the Notice of Removal in that case, Removing Defendants assert that ESI "holds contracts with the Government Employees Health Association, Inc. ("GEHA"), American Foreign Service Protective Association ("AFSPA"), and Compass Rose Benefits Group ("Compass Rose") … to provide PBM and mail order pharmacy services to federal employees, including in Frederick County, Virginia." ESI alleges in its Notice that these plans contract with the U.S. Office of Personnel Management ("OPM") to provide insurance to federal employees. *Id.* ESI also alleges in its Notice that it is sometimes audited by OPM and provides links to audit reports prepared by OPM. *Id.* at ¶¶ 29-30. In support of their original opposition to the county's motion to remand, the Removing Defendants also supplied a five-paragraph cursory declaration that, in material part, repeated the allegations of the Notice. *Frederick Cnty,* Dkt. 29-10. They also attached audit reports and other FEHBA-related materials, none of which provide any additional substantive evidence of connections to the county. Dkt 29-11 through Dkt 29-20.

## ARGUMENT

### A. Choice of Law

In assessing questions of federal law, including remand issues, an MDL court applies the law of the circuit in which it sits, rather than the circuit of the transferor court. *In re Abbott Lab'ys*,

---

[6] ESI, the operating PBM, is not a removing defendant in Roanoke; therefore, in Roanoke only the mail order pharmacy DOD contract activities are at issue. Nonetheless, the general theories advanced by the Removing Defendants—and failure to provide evidentiary support—are the same.

4

2022 U.S. Dist. LEXIS 150047, at *13 (N.D. Ill. Aug. 22, 2022) ("…[W]hen considering matters of federal law raised by the motions, however, the court applies the law of its own circuit."). Indeed, this Court took the same approach in its prior opinion addressing federal officer removal. *Cherokee Nation v. McKesson Corp. (In re Nat'l Prescription Opiate Litig.)*, 327 F. Supp. 3d 1064, 1069 (N.D. Ohio 2018) ("Therefore, in deciding the present motions, the Court will apply Sixth Circuit case law to its analysis of the Federal Officer Removal Statute.") Thus, Sixth Circuit law applies.

  **B.**  **Standard of Review**

It is axiomatic that the party seeking removal bears the burden of establishing federal court jurisdiction. *Mays v. City of Flint*, 871 F.3d 437, 442 (6th Cir. 2017) (*citing Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006)). In addition, "[w]here, as here, the district court treats the motion to remand as a facial attack on the court's jurisdiction, we look only to the pleadings—the complaint and the notice of removal—for the relevant facts." *Id.* (*citing Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). Finally, "removal statutes are to be strictly construed, and 'all doubts should be resolved against removal.'" *Id.* (*quoting Harnden v. Jayco, Inc.*, 496 F.3d 579, 581 (6th Cir. 2007)).

To qualify for removal under 28 U.S.C. § 1442, "a private corporate defendant [must] show that (1) it is a person who acted under the direction of a federal officer; (2) the actions for which it is being sued were performed under the color of the federal office; and (3) there is a colorable federal defense to the plaintiff's claims." *Cherokee Nation*, 327 F. Supp. 3d at 1069-70.

Finally, as the Sixth Circuit in *Mays* observed, while "[t]he words 'acting under' are broad, … [b]road language is not limitless. And a liberal construction can nonetheless find limits in a text's language, context, history, and purposes.' … [The] purpose [of the statute] is to protect federal officers from state court hostility to the federal government …." 871 F.3d at 448.

5

>    1.   **Removing Defendants Have Not Met Their Burden to Establish That the Actions for Which They are Being Sued Were Performed Under the Color of a Federal Officer[7]**

As cited above, the Removing Defendants bear the burden to establish removal is proper. *Mays*, 871 F.3d at 442. This necessarily includes establishing that the actions for which they are being sued were performed under the color of a federal officer.

It is undisputed that the complaints filed by Roanoke and Frederick County do not refer to the DOD contract or mention it, and none of the counts in the complaints is in any way based on the contract. Thus, there is no evidence in the complaints that any of defendants' actions were performed under color of a federal officer, and the only connections that can be drawn between the complaints and the DOD contract are those based on evidence supplied by the Removing Defendants.

The Removing Defendants, however, have failed to meet their burden of establishing that they are being sued for actions performed under color of a federal officer. In fact, they have provided *no* evidence establishing that any opioids dispensed into either Roanoke or Frederick County, or their surrounding localities, were paid for pursuant to the DOD Contract.

Rather, in support of their federal officer arguments, the Removing Defendants have filed declarations that merely give overall percentages for the *entire* Commonwealth of Virginia, not either locality specifically, or even percentages that would include a locality and its surrounding jurisdictions. Nor is a word said about opioids as opposed to pharmaceutical claims generally. *See Frederick Cnty.,* Decl. of William T. Cahill in Supp. Of Express Scripts' Opp. to Mot. To Remand, Dkt 29-3 ¶ 6 (stating that the number of TRICARE members with pharmacy claims in the entire

---

[7] With respect to the question of whether Removing Defendants were "acting under" a federal officer, Roanoke and Frederick County rely upon the arguments set forth in their original memoranda in support of their respective motions to remand (in the case of Roanoke, its supplemental motion to remand, which addressed the federal officer issues raised for the first time in the supplemental notices of removal). *City of Roanoke*, Dkt 59; *Frederick County,* Dkt 23.

State of Virginia "ranged from approximately 15.5% in 2014 to approximately 25.5% in 2019); *City of Roanoke,* Decl. of William T. Cahill in Supp. of Opp. to Supp. Mot. To Remand Dkt 4653-1 ¶ 6 (same).

Notably, this omission stands in stark contrast to the declaration that Mr. Cahill provided in opposing the motion to remand filed by Arlington County (*i.e.*, the case that ultimately was decided by the Fourth Circuit in favor of federal officer removal). In his Arlington County declaration, Mr. Cahill specifically stated that from January 1, 2014 through July 31, 2019, "the TRICARE mail order pharmacy prescription opioid claims are approximately 29.5% of the total number of mail order pharmacy prescription opioid claims <u>for members residing in Arlington County</u>." *Arlington Cnty.*, Dkt. 40-2 ¶ 6 (emphasis added). This is not surprising, given that Arlington County, Virginia, is not only situated just outside Washington, D.C. but also is the home of the Pentagon. One might expect the number of DOD/TRICARE dispensed pharmaceuticals to be relatively significant in such a department of defense-heavy jurisdiction.

Neither Roanoke nor Frederick County, however, are similarly situated just outside Washington, D.C. In fact, both are located in the Western District of Virginia, unlike Arlington County which is situated in the Eastern District. And as noted, no such jurisdiction-specific evidence has been provided for either locality. This omission is, without doubt, material. While the Removing Defendants have scoffed at these Plaintiffs' contention that a *de minimis* number of dispensing transactions would not be sufficient to establish federal officer jurisdiction, the indisputable fact is that there is authority in support of the argument. *See Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (E.D. Mo. 2016) (finding plaintiff's "de minimis argument persuasive" and stating that the amount of product produced by defendants in connection with the government project was "simply too small to satisfy the requirement that there be a causal connection between

7

the conduct that was taken under federal authority and Plaintiffs' claims. This dictates against finding federal officer removal.")

Indeed, the Seventh Circuit has recognized the sensibility of such a requirement, although in the case at bar it determined that the percentages crossed the necessary threshold to establish jurisdiction. *See Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020) ("It may make some sense, at least as a matter of policy, to require a removing defendant to allege more than a de minimis amount of federal transactions to establish jurisdiction. This is not the case in which to do so, however, given that the district court estimated that Atlantic Richfield's predecessor operated under government commands for 20% of the relevant time span and DuPont for 5-to-15% of the period.")

But *Bailey* and *Baker* both involved evidence that at least *some* percentage of transactions at issue in the complaint were performed under the color of a federal officer. Here, the record is completely devoid of any such evidence—in a case in which the claims center around the public nuisances created by the Removing Defendants in the Plaintiff localities for which damages are claimed and abatement is sought.

In fact, the Removing Defendants themselves make much of this point in attempting to compare these cases to the Arlington County case on page 13 of their Supplemental Opposition: "[T]hese allegations [of the complaint] 'necessarily include[] activity that is directly connected to the DOD contract' because the ESI Mail Order Pharmacies were 'required to act in conformity with that contract' when mailing opioids to military members within Plaintiffs' borders." (emphasis added). Again, there is no evidence in the record that any opioids were mailed to military members within the borders of Roanoke or Frederick County.[8] *See also St. Charles Surgical Hosp.,*

---

[8] For that matter, as noted previously, there is no evidence in the record of any opioids being mailed anywhere,

8

*LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 455 (5th Cir. 2021) ("*St. Charles II*") ( "…[E]ven if BCBS is determined to have been acting under OPM in this case, it is possible that the alleged conduct underlying St. Charles's fraud and abuse-of-right claims was not connected or associated with (or related to) any federal directive from OPM. We leave these considerations to the district court.")

In sum, the Removing Defendants have failed to carry their burden, and the Motions to Remand should be granted. *See Atl. Shore Surgical Assocs. v. Aetna Life Ins. Co.*, 2021 U.S. Dist. LEXIS 73127, at *32 (D.N.J. Apr. 12, 2021) (rejecting federal officer removal in large part because "[t]he Notice of Removal lacks the requisite factual allegations" to establish that federal officer exercised control). *See also Strebler v. Morgan Stanley & Co.*, 2014 U.S. Dist. LEXIS 128231, at *11 (N.D. Ohio Sept. 12, 2014) ("Diversity jurisdiction must be established by defendants at the time of removal and defendants have failed to carry their burden. The Court finds that neither the notice of removal, nor the pleadings attached thereto, contain facts or evidence from which removal jurisdiction can be determined."); *Freedom Steel, Inc. v. Senn Freight Lines, Inc.*, 2010 U.S. Dist. LEXIS 12876, at *13 (N.D. Ohio Jan. 26, 2010) ("The removing party bears the burden of showing that the requirements of removal have been satisfied. As the Defendant has failed to meet this burden, the Court cannot conclude that the Defendant timely filed its notice of removal. Accordingly, the Court GRANTS the Plaintiff's motion to remand.")

### 2. Removal Based on the DOD Contract Does Not Comply with the Purposes of the Federal Officer Removal Statute

The DOD contract expressly states that the mail-order pharmacy contractor's "tracking and dispensing procedures shall comply with Federal and *State law and all applicable state board of*

---

including in the Commonwealth of Virginia. The percentages in Mr. Cahill's declarations all describe overall pharmaceutical dispensing, not opioids specifically.

9

*pharmacy requirements*." DOD Contract, Section C.7.1.1 (emphasis added). This fact matters because the Sixth Circuit has instructed that the "basic purpose" of federal officer removal must be considered in the remand analysis.

As explained by *Mays*, 871 F.3d at 443, federal officer removal dates back to the War of 1812. For the entirety of its 210 years of existence, the point of the statute has been to permit agents of the federal government—originally customs officials—to escape prosecution by hostile state courts when the agents seek to enforce unpopular federal law. *Id.* For example, one famous early twentieth century application of the statute involved federal agents charged with murder after a raid on an illegal distillery. *Id.* (citing *Maryland v. Soper (No. 1)*, 270 U.S. 9 (1926)).

The Sixth Circuit explained the importance of this history:

> [T]hese early cases "illustrate that the removal statute's 'basic' purpose is to protect the Federal Government from the interference with its 'operations'" that would occur if a federal officer could be tried in state court for a state offense related to the operation. *Id*. Concerns about "'local prejudice' against unpopular federal laws or federal officials" thus underlie the federal-officer removal statute. *Id*. As the Court [in *Watson*] explained, states that were antagonistic toward federal government operations might use state court proceedings to thwart the enforcement of federal law.

*Id.* (citing and quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007)).

The suits filed by the City of Roanoke and Frederick County—and indeed any suits in which this DOD contract is relied upon as the basis for federal officer removal—do not raise the threat of "local prejudice" against unpopular federal law or "interference" with government operations. Rather, the exact opposite is true. This DOD contract *requires* compliance with state law. A statute meant to protect the federal government from interference by state courts should not be extended to a case in which the federal government contract expressly invites such interference by its explicit terms. Removing defendants offer no support for a contrary position.

10

This feature sharply distinguishes this case from other federal officer cases—for example, the Fifth Circuit's conclusion that federal officer jurisdiction applied because "OPM's directives even governed when they required that BCBS act contrary to Louisiana law …." *St. Charles II*, 990 F.3d at 452 (describing result in *St. Charles I*, 935 F.3d 352).[9]

In sum, finding federal officer removal jurisdiction exists via the DOD contract would be contrary to the purposes of the federal officer removal statute and improperly nullify an express contract term. For this additional reason, the Court should grant the motions to remand.

### C. The FEHBA Relationships Do Not Provide a Basis for Federal Officer Removal

In the Frederick County case, the Removing Defendants also assert that their contracts with insurance plans that provide insurance to federal employees under FEHBA provide a basis for federal officer removal.[10]

As with the DOD contract, however, the Removing Defendants provide no details on the connection of these FEHBA relationships to Roanoke or Frederick County, other than two cursory statements in a five-paragraph declaration that the Removing Defendants provide services to FEHBA insurance plans and their members, "including in Frederick County, Virginia," and process FEHBA pharmacy claims, "including claims for Plan members who reside in Frederick County, Virginia." *Frederick Cnty.*, Decl. of Michael Donnelly in Supp. of Express Scripts' Opp.

---

[9] In *Cherokee Nation*, the Tribes did assert that "McKesson filled suspicious orders in violation of the PPV Contract's express mandates to comply with state and federal laws." 327 F. Supp. 3d at 1075. Rather than argue that the state law requirement conflicted with the underlying purpose of the federal officer statute, however, the Tribes instead argued that McKesson's alleged violations of the contract meant that it was not "acting under the direction of a federal officer." *Id.* This Court rejected that argument under the circumstances of the case. In any event, that holding is not dispositive here given the differences between the two contentions.

[10] The Court should decline to permit the Removing Defendants to amend the Roanoke notice to add FEHBA plans as a basis for federal officer removal. It goes without saying that the thirty-day deadline has long since passed for notices of removal to be filed—not to mention that the supplemental notice in question identifying federal officer removal as a basis for jurisdiction was itself filed long after the Roanoke case had been removed to federal court under different removal theories (all of which, like *Grable* federal question, are suspect and being addressed in separate contemporaneous briefing filed in these cases and *City of Sacramento*, No. 20-op-45290).

11

to Mot. to Remand, Dkt. 29-10 at ¶¶ 3, 4. These cursory statements are not even specific to opioids, nor do they provide sufficient factual support to establish that the claims in the complaint actually are related to actions taken by defendants under color of a federal officer.

Moreover, as discussed above, courts finding federal officer removal applicable in the FEHBA context do so typically when the removing defendant is an actual insurance carrier that contracts directly with the federal government. *See St. Charles I*, 935 F.3d at 356 (observing that other circuits have found that insurance "carriers" sued in connection with FEHBA plans may remove on federal officer grounds).

In fact, the case cited by the Removing Defendants for the proposition that federal officer removal in the FEHBA context would extend to a local vendor did not actually make such a holding. Instead, the court in the very beginning of its opinion lumped both the insurance carrier and the vendor together and defined them collectively as BCBS (*i.e.*, Blue Cross Blue Shield). *See Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1227 (8th Cir. 2012). It then proceeded to analyze the issue as if the carrier were the only defendant. *Id.* at 1234 ("At all times, the *carrier* is subject to OPM oversight, uniquely operates with the United States Treasury, submits to OPM's regulatory requirements, and ultimately answers to federal officers…. We remain mindful as well that at all times, if OPM finds an *insurer's* performance wanting, it can withdraw approval of that *carrier* or terminate its contract…As a private contractor, BCBS-KC is helping the government to produce an item that it needs—the basic governmental task of providing health benefits for its employees.") (emphasis added). In sum, *Jacks* does not provide the vendor theory support the Removing Defendants claim that it does.

For these reasons, the Court should reject federal officer removal based on the Removing Defendants' relationships with FEHBA plans.

## CONCLUSION
## AND REQUEST FOR RELIEF IN THE ALTERNATIVE

For the reasons stated here and in the earlier briefing, federal officer removal jurisdiction does not apply in these cases. Plaintiffs respectfully ask the Court to grant their pending motions for remand.

In the alternative, Plaintiffs note that the MDL cases involving federal officer removal are unique in that they each involve PBM defendants. Moreover, to date, the PBMs are the only category of defendants in the MDL for which a bellwether trial has never been set. Thus, should the Court determine that federal officer removal is proper and that these PBM-specific cases should remain in federal court—and thereby remain a part of the MDL—Plaintiffs respectfully request that the Court establish a PBM bellwether, and that the City of Roanoke be named as the bellwether plaintiff. The impact of the opioid epidemic on Roanoke and points west in the Commonwealth is well documented, not only through the ARCOS data itself and the breakdowns of that data performed by media outlets like *The Washington Post*, but also independent investigations such as Beth Macy's *Dopesick. See Dopesick: Dealers, Doctors, and the Drug Company that Addicted America*, p. 43 (Little, Brown 2018) (("[Southwest Virginia doctor] Art Van Zee saw it unfolding, and he was terrified. Within two years of the drug's release, 24 percent of Lee High School juniors reported trying OxyContin, and so had 9 percent of the county's seventh-graders.").

As the unofficial capital of Southwest Virginia, Roanoke is an appropriate standard-bearer for the devastating impacts of the opioid epidemic in what is one of the hardest-hit regions of the country. Roanoke is also geographically convenient and accessible, featuring a major airport and world-class lodging. Should this alternative be of interest to the Court, the City of Roanoke would be pleased to supply additional briefing in support.

13

Dated: October 28, 2022 /s/ *Kevin Sharp*

**SANFORD HEISLER SHARP, LLP**
Kevin Sharp
Grant Morris
Jonathan Tepe
Kasi Wautlet
611 Commerce Street, Suite 3100
Nashville, TN 37203
ksharp@sanfordheisler.com
gmorris@sanfordheisler.com
jtepe@sanfordheisler.com
kwautlet@sanfordheisler.com
Tel.: (615) 434-7000
Fax: (615) 434-7020

**SANFORD HEISLER SHARP, LLP**
Steve Kelly
111 S. Calvert Street, Suite 1950
Baltimore, MD 21202
skelly@sanfordheisler.com
Phone: (410) 834-7420
Fax: (410) 834-7425

**SANFORD HEISLER SHARP, LLP**
Kaitlin Leary
James Hannaway
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
kleary@sanfordheisler.com
jhannaway@sanfordheisler.com
Phone: (202) 499-5200
Fax: (202) 499-5199

**THE CICALA LAW FIRM PLLC**
Joanne Cicala
R. Johan Conrod, Jr.
Josh Wackerly
Shelbi Flood
Cristina Moreno
101 College Street
Dripping Springs, TX 78620
joanne@cicalapllc.com
johan@cicalapllc.com
josh@cicalapllc.com
shelbi@cicalapllc.com
cristina@cicalapllc.com

14

Tel.: (512) 275-6550
Fax: (512) 858-1801

**KAUFMAN & CANOLES, P.C.**
W. Edgar Spivey
Patrick H. O'Donnell
150 W. Main Street, Suite 2100
Norfolk, VA 23510
wespivey@kaufcan.com
phodonnell@kaufcan.com
Tel.: (757) 624-3000
Fax: (888) 360-9092

*Attorneys for Plaintiff The City of Roanoke and Frederick County, Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2022, a copy of the above and foregoing was electronically filed using the CM/ECF system, which will send a notification to all counsel of record.

*/s/ Kevin Sharp*

15