# APPENDIX B

## JANSSEN OKLAHOMA SUBDIVISION OPIOID SETTLEMENT AGREEMENT

### I.     Overview

In accordance with the agreement in principle reached between and among Janssen and the Participating Subdivisions on April 24, 2022, this settlement agreement dated as of July 25, 2022 (the "*Agreement*") sets forth the principal terms and conditions of a settlement agreement between and among the Participating Subdivisions and Janssen (as those terms are defined below). Janssen has agreed to the below terms for the sole purpose of settlement, and nothing herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Janssen expressly denies. No part of this Agreement, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Janssen. Unless the contrary is expressly stated, this Agreement is not intended for use by any third party for any purpose, including submission to any court for any purpose.

### II.     Definitions

Unless otherwise specified, the following definitions apply:

1.     "*Agreement*" means this agreement as set forth above, inclusive of all exhibits.

2.     "*Attorney*" means any of the following retained through a legal contract: a solo practitioner, multi-attorney law firm, or other legal representative of a Participating Subdivision.

3.     "*Claim*" means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including but not limited to any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

4.     "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Effective Date (and any past,

present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (a) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to any Product, or any system, plan, policy, or advocacy relating to any Product or class of Products, including but not limited to any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (b) the characteristics, properties, risks, or benefits of any Product; (c) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders for any Product placed with any Released Entity; (d) the selective breeding, harvesting, extracting, purifying, exporting, importing, applying for quota for, procuring quota for, handling, promoting, manufacturing, processing, packaging, supplying, distributing, converting, or selling of, or otherwise engaging in any activity relating to, precursor or component Products, including but not limited to natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, or any related intermediate Products; or (e) diversion control programs or suspicious order monitoring related to any Product.

5.   *"Effective Date"* means the execution date of this Agreement.

6.   *"Janssen"* means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

7.   *"Janssen Global Settlement"* means the Janssen Settlement Agreement pertaining to opioid litigations, as revised March, 2022, resolving the litigation and claims brought or threatened to be brought by participating states and subdivisions against Janssen. A copy of the Janssen Settlement Agreement is available at https://nationalopioidsettlement.com/wp-content/uploads/2022/04/Janssen-agreement-03302022-FINAL2.pdf.

8.   *"Participation Date"* means the date ninety (90) days after the Effective Date, unless it is extended by written agreement of the Parties.

9.   *"Participating Subdivision"* means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity on or before the Effective Date that was not separately resolved prior to that date and that executes a Settlement Participation Form by the Participation Date. A list of Participating Subdivisions is attached as Exhibit A.

10.  *"Parties"* means Janssen and each Participating Subdivision (each, a *"Party"*).

11.  *"Product"* means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any

2

finished pharmaceutical product made from or with such substance, that is an opioid or opiate, as well as any product containing any such substance. It also includes: 1) the following when used in combination with opioids or opiates: benzodiazepine, carisoprodol, zolpidem, or gabapentin; and 2) a combination or "cocktail" of any stimulant or other chemical substance prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. For the avoidance of doubt, "Product" does not include benzodiazepine, carisoprodol, zolpidem, or gabapentin when not used in combination with opioids or opiates. "Product" includes but is not limited to any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, any variant of these substances, or any similar substance. "Product" also includes any natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, and any related intermediate products used or created in the manufacturing process for any of the substances described in the preceding sentence.

12. *"Settlement Fund Escrow"* means the fund established by this Agreement into which all payments by Janssen are made, unless otherwise expressly provided in this Agreement.

13. *"Settlement Fund Escrow Holder"* means the entity that administers the Settlement Fund Escrow. Prior to the Participation Date, the Parties shall agree to selection and removal processes for and a detailed description of the Settlement Fund Escrow Holder's duties, all of which shall be appended to the Agreement as Exhibit F.

14. *"Released Claims"* means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Effective Date. Without limiting the foregoing, "Released Claims" include any Claims that have been asserted against the Released Entities by the Participating Subdivisions in any federal, state or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding. Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to the Agreement, whether or not such claims relate to Covered Conduct. The Parties intend that "Released Claims" be interpreted broadly. This Agreement does not release Claims by the State of Oklahoma or any private individuals.

15. *"Released Entities"* means Janssen and (1) all of Janssen's past and present direct or indirect parents, subsidiaries, divisions, predecessors, successors, assigns, including Noramco, Inc. and Tasmanian Alkaloids PTY. LTD.; (2) the past and present direct or indirect subsidiaries, divisions, and joint ventures, of any of the foregoing; (3) all of Janssen's insurers (solely in their role as insurers with respect to the Released Claims); (4) all of Janssen's, or of any entity described in subsection (1), past and present joint ventures; and (5) the respective past and present officers, directors, members, shareholders (solely in their capacity as shareholders of the foregoing

3

entities), partners, trustees, agents, and employees of any of the foregoing (for actions that occurred during and related to their work for, or employment with, Janssen). Any person or entity described in subsections (3)-(5) shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity. For the avoidance of doubt, the entities listed in Exhibit G are not Released Entities; and provided further that any joint venture partner of Janssen or Janssen's subsidiary is not a Released Entity unless it falls within subsections (1)-(5) above. A list of Janssen's present subsidiaries and affiliates can be found at https://johnsonandjohnson.gcs-web.com/static-files/f61ae5f3-ff03-46c1-bfc9-174947884db2. Janssen's predecessor entities include but are not limited to those entities listed on Exhibit E. For the avoidance of doubt, any entity acquired, or joint venture entered into, by Janssen after the Effective Date is not a Released Entity.

16. "*Releasors*" means each Participating Subdivision and without limitation and to the maximum extent of the power of the Participating Subdivision to release Claims, the Participating Subdivision's departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys.   In addition to being a Releasor as provided herein, a Participating Subdivision shall also provide the Settlement Participation Form attached as Exhibit C providing for a release to the fullest extent of the Participating Subdivision's authority.

17. "*Special District*" means a formal and legally recognized sub-entity of the State that is authorized by State law to provide one or a limited number of designated functions, including but not limited to school districts, fire districts, healthcare & hospital districts, and emergency services districts. Special Districts do not include sub-entities of the State that provide general governance for a defined area that would qualify as a Subdivision.

18. "*State*" means the State of Oklahoma.

19. "*Subdivision*" means a formal and legally recognized sub-entity of the State that provides general governance for a defined area, including a county, parish, city, town, village, or similar entity. Unless otherwise specified, "Subdivision" includes all functional counties and parishes and other functional levels of sub-entities of the State that provide general governance for a defined area. Historic, non-functioning sub-entities of the State are not Subdivisions, unless the entity has filed a lawsuit that includes a Released Claim against a Released Entity in a direct or any other capacity. For purposes of this Agreement, the term Subdivision does not include Special Districts.

20. "*Settlement Participation Form*" means the form attached as Exhibit C that Participating Subdivisions must execute and return to Janssen and the Settlement Fund Escrow Holder, and which shall (1) make such Participating Subdivisions signatories to this Agreement, (2) include a full and complete release of any and of such Participating Subdivision's claims, and (3) require the prompt dismissal with

prejudice of any Released Claims that have been filed by any such Participating Subdivision.

## III.    Release

A.    *Scope*. As of the date that the settlement payment defined in Section IV.B is made to the Settlement Fund Escrow, the Released Entities will be released and forever discharged from all of the Releasors' Released Claims. Each Participating Subdivision (for itself and its Releasors) will, on or before the Participation Date, absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released claims and extend to the full extent of the power of the Participating Subdivisions to release claims. The Release shall be a complete bar to any Released Claim.

B.    *General Release*. In connection with the releases provided for in the Agreement, each Participating Subdivision (for itself and its Releasors) will expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may thereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Participating Subdivision (for itself and its Releasors) will expressly waive and fully, finally, and forever settle, release and discharge, upon the date that the Settlement Payment is received, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Participating Subdivisions' decision to participate in the Agreement.

C.    *Res Judicata*. Nothing in the Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in the Agreement, and/or any judgment entered on the Agreement, gives rise to under applicable law.

D.    *Representation and Warranty*. Counsel executing this Agreement on behalf of the Participating Subdivisions expressly represent and warrant that they are counsel of record for the Participating Subdivision, will recommend this Agreement to the Participating Subdivisions and will use their best efforts to have the Participating Subdivisions approve

this Agreement by their respective government authority on or before the Participation Date of this Agreement. A Participating Subdivision shall not be bound by this Agreement until the Agreement is approved by the respective Participating Subdivision's government authority. Approval by a Participating Subdivision shall include a representation and warranty that the Participating Subdivision will obtain on or before the Participation Date (or has obtained) the authority to settle and release, to the maximum extent of the Participating Subdivision's power, all Released Claims.

E.    *Effectiveness.* The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors. Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the Settlement Fund Escrow or any portion thereof, or by the enactment of future laws, or by any seizure of the Settlement Fund Escrow or any portion thereof.

F.    *Cooperation.* Releasors (i) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (ii) will reasonably cooperate with and not oppose any effort by a Released Entity to secure the prompt dismissal of any and all Released Claims.

G.    *Non-Released Claims.* Notwithstanding the foregoing or anything in the definition of Released Claims, the Agreement does not waive, release or limit any criminal liability, Claims for any outstanding liability under any tax or securities law, Claims against parties who are not Released Entities, Claims brought by the State of Oklahoma, Claims by private individuals and any claims arising under the Agreement for enforcement of the Agreement. A non-exclusive list of non-Released Entities is attached as Exhibit D.

## IV.    Monetary Relief and Payments

A.    *Participation.* As consideration for the payments under subsection IV.B below, all Participating Subdivisions must obtain and deliver (or cause to be obtained and delivered) to Janssen executed Settlement Participation Forms by the Participation Date.

B.    *Payments.* Within thirty (30) days after the Participation Date, Janssen shall pay into the Settlement Fund Escrow the sum of $14,020,446.75 (the "Settlement Payment"). Janssen will not hold back any of the Settlement Payment for the payment of any fee or assessment, including any common benefit assessment. The parties understand and intend that that payments under this Agreement will not be subject to a separate common benefit assessment entitling Janssen to claim an offset from its payments to the common benefit fund established under the Janssen Global Settlement; provided, however, that if a common benefit assessment is nevertheless made against the Settlement Payment, Janssen will claim an offset under Janssen Settlement Agreement Exhibit R Section II.C.6.b.ii.2 and pay the amount of the offset into the Settlement Fund Escrow to satisfy any common benefit assessment on the Settlement Payment.

C.    *Settlement Fund Escrow Holder Costs.* Any costs and fees associated with or arising out of the duties of the Settlement Fund Escrow Holder as described in Exhibit F with regard to

Janssen's payments to the Settlement Fund Escrow shall be paid out of interest accrued on the Settlement Fund Escrow and from the Settlement Fund Escrow should such interest prove insufficient.

## V. Allocation of Settlement Funds

Janssen's payments shall be allocated as set forth on Exhibit B attached hereto.

## VI. Attorneys' Fee and Cost Payments

A. Janssen shall not be responsible for making payments for attorneys' fees and costs beyond amounts paid to the Settlement Fund Escrow under Section IV.

B. An Attorney may not receive any payment for attorney fees unless the Attorney represents that s/he has no present intent to represent or participate in the representation of any Subdivision or Special District or any Releasor that brings Released Claims against Released Entities after the Effective Date.

C. Participating Subdivisions shall use best efforts to provide Janssen with the information necessary for Janssen to secure a reduction of its payment obligation of the Janssen Global Settlement Contingency Fee Fund by the amount that would have been owed to counsel for Participating Subdivisions had Oklahoma been a Settling State under the Global Settlement, as provided in Section II of Exhibit R of the Janssen Settlement Agreement.

## VII. Enforcement and Dispute Resolution

A. The parties to any dispute arising from this Agreement shall promptly meet and confer in good faith to resolve it. If the parties cannot resolve the dispute informally, and unless otherwise agreed in writing, they shall follow the remaining provisions of this section to resolve the dispute.

B. Disputes not resolved informally shall be exclusively resolved in District Court for Pottawatomie County, State of Oklahoma. The parties consent to the District Court's jurisdiction for purposes of resolving any such disputes.

## VIII. Miscellaneous

A. *No Admission.* Janssen does not admit liability or wrongdoing. This Agreement shall not be considered, construed, or represented to be (1) an admission, concession, or evidence of liability or wrongdoing or (2) a waiver or any limitation of any defense otherwise available to Janssen.

B. *Statement on Restitution and Cooperation.*

1. The Parties agree that the purpose of the Settlement Fund Escrow, other than the amounts directed to payment of attorney fees and litigation costs, will be to receive from Janssen and pay over to the Participating Subdivisions monies to remediate the harms allegedly caused by Janssen's conduct or to provide restitution for such

7

alleged harms that were previously incurred. The payments received by the Settlement Fund Escrow, other than the amounts directed to attorney fees and costs, shall be disbursed to the Participating Subdivisions, which were allegedly harmed by Janssen in a manner consistent with their above-stated remedial and/or restitutive purpose. No amount paid to the Settlement Fund Escrow or paid over to any requesting entity constitutes a fine or penalty.

2. Each Participating Subdivision shall, prior to receipt of any direct payments from the Settlement Fund Escrow, provide the Settlement Fund Escrow Holder with a written statement certifying that: (1) the entity suffered harm allegedly caused by Janssen; (2) the payments to be received by the entity from Janssen represent an amount that is less than or equal to the actual monetary damage allegedly caused by Janssen; and (3) the entity shall use such payments for the sole purpose of remediating the harm allegedly caused by Janssen or to provide restitution for such alleged harms that were previously incurred.

3. The Settlement Fund Escrow Holder shall complete and file Form 1098-F with the Internal Revenue Service on or before February 28 (March 31 if filed electronically) of the year following the calendar year that the Settlement Fund Escrow receives the Settlement Payment. On the Form 1098-F, the Settlement Fund Escrow Holder or requesting entity, as applicable, shall identify such payments from Janssen as remediation/restitution amounts. The Settlement Fund Escrow Holder shall also, on or before January 31 of the year following the calendar year in which the dismissals become binding, furnish Copy B of such Form 1098-F (or an acceptable substitute statement) to Janssen.

C. *No Third-Party Beneficiaries.* Except as expressly provided in this Agreement, no portion of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not the Participating Subdivisions or Released Entities. The Participating Subdivisions may not assign or otherwise convey any right to enforce any provision of this Agreement.

D. *Calculation.* Any figure or percentage referred to in this Agreement shall be carried to seven decimal places.

E. *Construction.* None of the Parties shall be considered to be the drafter of this Agreement or of any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement. The headings of the provisions of this Agreement are not binding and are for reference only and do not limit, expand, or otherwise affect the contents or meaning of this Agreement.

F. *Cooperation.* Each Party agrees to use its best efforts and to cooperate with the other Parties to cause this Agreement to become effective, to obtain all necessary approvals, consents and authorizations, if any, and to execute all documents and to take such other action as may be appropriate in connection herewith. Consistent with the foregoing, each Party agrees that it will not directly or indirectly assist or encourage any challenge to this Agreement by any other person, and will support the integrity and enforcement of the terms of this Agreement.

G. *Entire Agreement.* This Agreement, its exhibits and any other attachments embodies the entire agreement and understanding between and among the Parties relating to the subject matter hereof and supersedes (1) all prior agreements and understandings relating to such subject matter, whether written or oral and (2) all purportedly contemporaneous oral agreements and understandings relating to such subject matter.

H. *Execution.* This Agreement may be executed in counterparts and by different signatories on separate counterparts, each of which shall be deemed an original, but all of which shall together be one and the same Agreement. One or more counterparts of this Agreement may be delivered by facsimile or electronic transmission with the intent that it or they shall constitute an original counterpart hereof. One or more counterparts of this Agreement may be signed by electronic signature.

I. *Good Faith and Voluntary Entry.* Each Party warrants and represents that it negotiated the terms of this Agreement in good faith. Each of the Parties and signatories to this Agreement warrants and represents that it freely and voluntarily entered into this Agreement without any degree of duress or compulsion. The Parties state that no promise of any kind or nature whatsoever (other than the written terms of this Agreement) was made to them to induce them to enter into this Agreement.

J. *No Prevailing Party.* The Parties each agree that they are not the prevailing party in this action, for purposes of any claim for fees, costs, or expenses as prevailing parties arising under common law or under the terms of any statute, because the Parties have reached a good faith settlement. The Parties each further waive any right to challenge or contest the validity of this Agreement on any ground, including, without limitation, that any term is unconstitutional or is preempted by, or in conflict with, any current or future law.

K. *Non-Admissibility.* The settlement negotiations resulting in this Agreement have been undertaken by the Parties in good faith and for settlement purposes only, and no evidence of negotiations or discussions underlying this Agreement shall be offered or received in evidence in any action or proceeding for any purpose. This Agreement shall not be offered or received in evidence in any action or proceeding for any purpose other than in an action or proceeding arising under or relating to this Agreement.

L. *Notices.* All notices or other communications under this Agreement shall be in writing (including but not limited to electronic communications) and shall be given to the recipients indicated below:

      Defendant:

      Copy to Janssen's attorneys at:

      Charles C. Lifland
      Daniel R. Suvor
      400 South Hope Street, 18th Floor Los Angeles, CA 90071
      Phone: (213) 430-6000
      clifland@omm.com

dsuvor@omm.com

For the Participating Subdivisions:

Copy to Participating Subdivisions' counsel at:

Todd Court
McAfee & Taft
211 N. Robison, Two Leadership Square, Floor 8
Oklahoma City, Oklahoma 73102
Phone: (405) 235-9621
Todd.court@mcafeetaft.com

Matt Sill
FULMER SILL LAW GROUP
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK 73103
Phone/Fax: 405-510-0077
msill@fulmersill.com
*Attorneys for Plaintiff*

Bradford D. Barron
The Barron Law Firm, PLLC
P.O. Box 369
Claremore, OK 74018
(918)341-8402 Phone
(918)515-4691 Fax
bbarron@barronlawfirmok.com

George Gibbs, OBA #11843
GIBBS ARMSTRONG BOROCHOFF
601 S. Boulder, Suite 500
Tulsa, OK 74119
(918) 587-3939 phone
(918) 5 82-5 504 fax
ggibbs@gablawyers.com

Any Party may change or add the contact information of the persons designated to receive notice on its behalf by notice given (effective upon the giving of such notice) as provided in this subsection.

M.   *No Waiver.* The waiver of any rights conferred hereunder shall be effective only if made by written instrument executed by the waiving Party or Parties. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, nor shall such waiver be deemed to be or construed as a waiver by any other Party.

10

N. *Preservation of Privilege.* Nothing contained in this Agreement, and no act required to be performed pursuant to this Agreement, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

O. *Successors.* This Agreement shall be binding upon, and inure to the benefit of, Janssen and its respective successors and assigns. Janssen shall not sell the majority of its voting stock or substantially all its assets without obtaining the acquiror's agreement that it will constitute a successor with respect to Janssen's obligations under this Agreement.

P. *Modification, Amendment, Alteration.* This Agreement may be modified, amended, or altered by a written agreement of the Parties. For purposes of modifying this Agreement, Janssen may contact counsel for the Participating Subdivisions.

Q. *Governing Law.* Except as otherwise provided in the Agreement, this Agreement shall be governed by and interpreted in accordance with the laws of Oklahoma, without regard to the conflict of law rules of Oklahoma.

**Approved:**

Dated: _____

JOHNSON & JOHNSON, JANSSEN
PHARMACEUTICALS, INC., ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC., AND
JANSSEN PHARMACEUTICA INC. N/K/A
JANSSEN PHARMACEUTICALS, INC.

By: _____
Marc Larkins
Assistant Corporate Secretary
Johnson & Johnson

ON BEHALF OF COUNSEL FOR THE LITIGATING POLITICAL SUBDIVISIONS:

[A separate signature page will be executed by each counsel for Litigating Political Subdivisions]

11

TONY G. PUCKETT, OBA #13336
TODD A. COURT, OBA #19438
MCAFEE & TAFT A PROFESSIONAL CORPORATION
8th Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK  73102
405/235-9621; 405/235-0439 (FAX)
tony.puckett@mcafeetaft.com
todd.court@mcafeetaft.com

**ATTORNEYS FOR**:
*City of Ada*
*City of Anadarko*
*City of Altus*
*City of Bethany*
*City of Broken Arrow*
*City of Collinsville*
*City of Edmond*
*City of Elk City*
*City of Enid*
*City of Guthrie*
*City of Jenks*
*City of Lawton*
*City of Midwest City*
*City of Mustang*
*City of Oklahoma City*
*City of Owasso*
*City of Ponca City*
*City of Seminole*
*City of Shawnee*
*City of Stillwater*
*City of Tulsa*
*City of Yukon*
*Hughes County*
*Woods County*

MATTHEW J. SILL, OBA #21547
HARRISON C. LUJAN, OBA #30154
FULMER SILL LAW GROUP
1101 N. Broadway Ave., Suite 102
Oklahoma City, OK 73103
Phone/Fax: 405-510-0077
msill@fulmersill.com
hlujan@fulmersill.com

**ATTORNEYS FOR:**

*Atoka County*
*Beckham County*
*Caddo County*
*Choctaw County*
*Cimarron County*
*Cleveland County*
*Coal County*
*Comanche County*
*Custer County*
*Dewey County*
*Grady County*
*Greer County*
*Harmon County*
*Harper County*
*Haskell County*
*Jackson County*
*Jefferson County*
*Johnston County*
*Kay County*
*Kiowa County*
*Latimer County*
*LeFlore County*
*Lincoln County*
*Logan County*
*Love County*
*Major County*
*McCurtain County*
*Muskogee County*
*Noble County*
*Oklahoma County*
*Payne County*
*Pittsburg County*
*Pottawatomie County*

*Roger Mills County*
*Stephens County*
*Texas County*
*Tillman County*
*Woodward County*
*City of El Reno*
*City of Muskogee*

GEORGE GIBBS
GIBBS ARMSTRONG BOROCHOFF
601 S. Boulder, Suite 500
Tulsa, OK 74119
(918) 587-3939 phone
(918) 582-5504 fax
ggibbs@gablawyers.com

ON BEHALF OF THE FOLLOWING COUNTIES:

1. Tulsa County
2. Pawnee County
3. Ottawa County
4. Osage County
5. Garvin County
6. Delaware County
7. McClain County; and
8. Seminole County
9. Okfuskee County

Bradford D. Barron, OBA #17571
The Barron Law Firm, PLLC
P.O. Box 369
Claremore, OK  74018
(918)341-8402 Phone
(918)515-4691 Fax
bbarron@barronlawfirmok.com

On behalf of the following Oklahoma Counties:

Washington County
Nowata County
Craig County
Rogers County
Mayes County
Okmulgee County
Creek County

## EXHIBIT A

### Participating Subdivision List

1. Ada (OK), City of, Oklahoma
2. Altus (OK), City of, Oklahoma
3. Anadarko (OK), City of, Oklahoma
4. Atoka (OK), County of, Oklahoma
5. Beckham (OK), County of, Oklahoma
6. Bethany (OK), City of, Oklahoma
7. Broken Arrow (OK), City of, Oklahoma
8. Caddo (OK), County of, Oklahoma
9. Choctaw (OK), County of, Oklahoma
10. Cimarron (OK), County of, Oklahoma
11. Cleveland (OK), County of, Oklahoma
12. Coal (OK), County of, Oklahoma
13. Collinsville (OK), City of, Oklahoma
14. Comanche (OK), County of, Oklahoma
15. Craig (OK), County of, Oklahoma
16. Creek (OK), County of, Oklahoma
17. Custer (OK), County of, Oklahoma
18. Delaware (OK), County of, Oklahoma
19. Dewey (OK), County of, Oklahoma
20. Edmond (OK), City of, Oklahoma
21. El Reno (OK), City of, Oklahoma
22. Elk City (OK), City of, Oklahoma
23. Enid (OK), City of, Oklahoma
24. Garvin (OK), County of, Oklahoma
25. Grady (OK), County of, Oklahoma
26. Greer (OK), County of, Oklahoma
27. Guthrie (OK), City of, Oklahoma
28. Harmon (OK), County of, Oklahoma
29. Harper (OK), County of, Oklahoma
30. Haskell (OK), County of, Oklahoma
31. Hughes (OK), County of, Oklahoma
32. Jackson (OK), County of, Oklahoma
33. Jefferson (OK), County of, Oklahoma
34. Jenks (OK), City of, Oklahoma
35. Johnston (OK), County of, Oklahoma
36. Kay (OK), County of, Oklahoma
37. Kiowa (OK), County of, Oklahoma
38. Latimer (OK), County of, Oklahoma
39. Lawton (OK), City of, Oklahoma
40. Le Flore (OK), County of, Oklahoma
41. Lincoln (OK), County of, Oklahoma
42. Logan (OK), County of, Oklahoma
43. Love (OK), County of, Oklahoma
44. Major (OK), County of, Oklahoma
45. Mayes (OK), County of, Oklahoma
46. McClain (OK), County of, Oklahoma
47. McCurtain (OK), County of, Oklahoma

13

48. Midwest City (OK), City of, Oklahoma
49. Muskogee (OK), City of, Oklahoma
50. Muskogee (OK), County of, Oklahoma
51. Mustang (OK), City of, Oklahoma
52. Noble (OK), County of, Oklahoma
53. Nowata (OK), County of, Oklahoma
54. Okfuskee (OK), County of, Oklahoma
55. Oklahoma (OK), County of, Oklahoma
56. Oklahoma City (OK), City of, Oklahoma
57. Okmulgee (OK), County of, Oklahoma
58. Osage (OK), County of, Oklahoma
59. Ottawa (OK), County of, Oklahoma
60. Owasso (OK), City of, Oklahoma
61. Pawnee (OK), County of, Oklahoma
62. Payne (OK), County of, Oklahoma
63. Pittsburg (OK), County of, Oklahoma
64. Ponca City (OK), City of, Oklahoma
65. Pottawatomie (OK), County of, Oklahoma
66. Roger Mills (OK), County of, Oklahoma
67. Rogers (OK), County of, Oklahoma
68. Seminole (OK), City of, Oklahoma
69. Seminole (OK), County of, Oklahoma
70. Shawnee (OK), City of, Oklahoma
71. Stephens (OK), County of, Oklahoma
72. Stillwater (OK), City of, Oklahoma
73. Texas (OK), County of, Oklahoma
74. Tillman (OK), County of, Oklahoma
75. Tulsa (OK), City of, Oklahoma
76. Tulsa (OK), County of, Oklahoma
77. Washington (OK), County of, Oklahoma
78. Woods (OK), County of, Oklahoma
79. Woodward (OK), County of, Oklahoma
80. Yukon (OK), City of, Oklahoma

14

Exhibit B

The initial allocations are shown on Table 1. Ten percent (10%) of funds received will be held back from this initial allocation to establish an Appeal Fund for any Participating Subdivision to appeal their allocation of settlement funds as set forth in this exhibit, and to pay administrative costs. Each participating subdivision will have six months after receipt of their allocation to appeal to a Special Master appointed to hear appeals. If all the money in the Appeal Fund is not distributed through the appeals process, it will be redistributed in accordance with Table 2 below. The allocations shown below will be further reduced for the payment of attorneys' fees and costs in accordance with each locality's representation agreement with their counsel.

Table 1: Opioid Settlement Allocation Shares to Litigating Oklahoma Counties, Cities and Towns, with 10% Holdback

| Municipal Area | Area % of Total | Municipal Area | Area % of Total |
|---|---|---|---|
| City of Ada | 1.150% | Lincoln County | 0.358% |
| City of Altus | 0.090% | Logan County | 0.760% |
| City of Anadarko | 0.320% | Love County | 0.144% |
| Atoka County | 0.283% | Major County | 0.016% |
| Beckham County | 0.252% | Mayes County | 0.668% |
| City of Bethany | 0.348% | McClain County | 0.284% |
| City of Broken Arrow | 2.831% | McCurtain County | 0.624% |
| Caddo County | 0.428% | City of Midwest City | 1.917% |
| Choctaw County | 0.295% | City of Muskogee | 2.976% |
| Cimarron County | 0.046% | Muskogee County | 0.153% |
| Cleveland County | 0.372% | City of Mustang | 0.225% |
| Coal County | 0.144% | Noble County | 0.040% |
| City of Collinsville | 0.173% | Nowata County | 0.109% |
| Comanche County | 3.101% | Okfuskee County | 0.204% |
| Craig County | 0.144% | City of Oklahoma City | 20.187% |
| Creek County | 1.137% | Oklahoma County | 4.021% |
| Custer County | 0.278% | Okmulgee County | 0.305% |
| Delaware County | 0.336% | Osage County | 0.647% |
| Dewey County | 0.017% | Ottawa County | 0.258% |
| City of Edmond | 2.051% | City of Owasso | 1.034% |
| City of El Reno | 0.279% | Pawnee County | 0.316% |
| City of Elk City | 0.448% | Payne County | 0.513% |
| City of Enid | 1.042% | Pittsburg County | 0.140% |
| Garvin County | 0.115% | City of Ponca City | 0.626% |
| Grady County | 1.418% | Pottawatomie County | 0.705% |
| Greer County | 0.059% | Roger Mills County | 0.080% |
| City of Guthrie | 0.298% | Rogers County | 1.266% |
| Harmon County | 0.042% | City of Seminole | 0.344% |
| Harper County | 0.057% | Seminole County | 0.433% |
| Haskell County | 0.224% | City of Shawnee | 1.601% |
| Hughes County | 0.172% | Stephens County | 0.599% |
| Jackson County | 0.696% | City of Stillwater | 1.244% |
| Jefferson County | 0.189% | Texas County | 0.448% |
| City of Jenks | 0.249% | Tillman County | 0.132% |
| Johnston County | 0.227% | City of Tulsa | 16.441% |
| Kay County | 0.437% | Tulsa County | 7.121% |
| Kiowa County | 0.155% | Washington County | 0.510% |
| Latimer County | 0.357% | Woods County | 0.041% |
| City of Lawton | 0.496% | Woodward County | 0.198% |
| LeFlore County | 1.135% | City of Yukon | 0.421% |

Table 2: Opioid Settlement Allocation Shares to Litigating Oklahoma Counties, Cities and Towns

| Municipal Area | Area % of Total | Municipal Area | Area % of Total |
|---|---|---|---|
| City of Ada | 1.278% | Lincoln County | 0.398% |
| City of Altus | 0.101% | Logan County | 0.845% |
| City of Anadarko | 0.356% | Love County | 0.160% |
| Atoka County | 0.315% | Major County | 0.018% |
| Beckham County | 0.280% | Mayes County | 0.742% |
| City of Bethany | 0.387% | McClain County | 0.316% |
| City of Broken Arrow | 3.146% | McCurtain County | 0.694% |
| Caddo County | 0.475% | City of Midwest City | 2.130% |
| Choctaw County | 0.328% | City of Muskogee | 3.307% |
| Cimarron County | 0.051% | Muskogee County | 0.170% |
| Cleveland County | 0.413% | City of Mustang | 0.249% |
| Coal County | 0.160% | Noble County | 0.045% |
| City of Collinsville | 0.192% | Nowata County | 0.121% |
| Comanche County | 3.445% | Okfuskee County | 0.227% |
| Craig County | 0.160% | City of Oklahoma City | 22.430% |
| Creek County | 1.263% | Oklahoma County | 4.468% |
| Custer County | 0.309% | Okmulgee County | 0.339% |
| Delaware County | 0.373% | Osage County | 0.719% |
| Dewey County | 0.019% | Ottawa County | 0.287% |
| City of Edmond | 2.279% | City of Owasso | 1.148% |
| City of El Reno | 0.310% | Pawnee County | 0.351% |
| City of Elk City | 0.498% | Payne County | 0.570% |
| City of Enid | 1.158% | Pittsburg County | 0.155% |
| Garvin County | 0.127% | City of Ponca City | 0.695% |
| Grady County | 1.575% | Pottawatomie County | 0.783% |
| Greer County | 0.066% | Roger Mills County | 0.089% |
| City of Guthrie | 0.331% | Rogers County | 1.406% |
| Harmon County | 0.046% | City of Seminole | 0.382% |
| Harper County | 0.063% | Seminole County | 0.481% |
| Haskell County | 0.249% | City of Shawnee | 1.779% |
| Hughes County | 0.191% | Stephens County | 0.666% |
| Jackson County | 0.773% | City of Stillwater | 1.382% |
| Jefferson County | 0.210% | Texas County | 0.497% |
| City of Jenks | 0.277% | Tillman County | 0.147% |
| Johnston County | 0.252% | City of Tulsa | 18.267% |
| Kay County | 0.486% | Tulsa County | 7.912% |
| Kiowa County | 0.172% | Washington County | 0.566% |
| Latimer County | 0.396% | Woods County | 0.046% |
| City of Lawton | 0.552% | Woodward County | 0.220% |
| LeFlore County | 1.261% | City of Yukon | 0.468% |

**EXHIBIT C**
**Settlement Participation Form**

| Governmental Entity: | State: |
|---|---|
| Authorized Official: | |
| Address 1: | |
| Address 2: | |
| City, State, Zip: | |
| Phone: | |
| Email: | |

The governmental entity identified above ("Governmental Entity"), in order to obtain and in consideration for the benefits provided to the Governmental Entity pursuant to the Settlement Agreement dated _____, 2022 ("Janssen Settlement"), and acting through the undersigned authorized official, hereby elects to participate in the Janssen Settlement, release all Released Claims against all Released Entities, and agrees as follows.

1. The Governmental Entity is aware of and has reviewed the Janssen Settlement, understands that all terms in this Election and Release have the meanings defined therein, and agrees that by this Election, the Governmental Entity elects to participate in the Janssen Settlement and become a Participating Subdivision as provided therein.

2. The Governmental Entity shall, within 14 days of the Participation Date, dismiss with prejudice any Released Claims that it has filed.

3. The Governmental Entity agrees to the terms of the Janssen Settlement pertaining to Participating Subdivisions as defined therein.

4. By agreeing to the terms of the Janssen Settlement and becoming a Releasor, the Governmental Entity is entitled to the benefits provided therein, including, if applicable, monetary payments beginning after the Participation Date.

5. The Governmental Entity agrees to use any monies it receives through the Janssen Settlement solely for the purposes provided therein.

6. The Governmental Entity submits to the jurisdiction of the court of Pottawatomie County, State of Oklahoma for purposes limited to that court's role as provided in, and for resolving disputes to the extent provided in, the Janssen Settlement.

7. The Governmental Entity has the right to enforce the Janssen Settlement as provided therein.

8. The Governmental Entity, as a Participating Subdivision, hereby becomes a Releasor for all purposes in the Janssen Settlement, including but not limited to all provisions of Section III (Release), and along with all departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, and any person in their official capacity elected or appointed to serve any of the foregoing and any agency, person, or other entity

16

claiming by or through any of the foregoing, and any other entity identified in the definition of Releasor, provides for a release to the fullest extent of its authority. As a Releasor, the Governmental Entity hereby absolutely, unconditionally, and irrevocably covenants not to bring, file, or claim, or to cause, assist or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Janssen Settlement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of the Governmental Entity to release claims. The Janssen Settlement shall be a complete bar to any Released Claim. The Janssen Settlement does not release or effect in any way the claims asserted by the State of Oklahoma against a Released Entity.

9. In connection with the releases provided for in the Janssen Settlement, each Governmental Entity expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Governmental Entity hereby expressly waives and fully, finally, and forever settles, releases and discharges, upon the date that the settlement payment defined in Section IV.B of the Janssen Settlement is made to the Settlement Fund Escrow, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Governmental Entities' decision to participate in the Janssen Settlement.

10. Nothing herein is intended to modify in any way the terms of the Janssen Settlement, to which Governmental Entity hereby agrees. To the extent this Election and Release is interpreted differently from the Janssen Settlement in any respect, the Janssen Settlement controls.

17

I have all necessary power and authorization to execute this Election and Release on behalf of the Governmental Entity.

Signature: _____

Name: _____

Title: _____

Date: _____

18

## EXHIBIT D

### Non-Released Entities

The following includes a non-exclusive list of non-Released Entities:

1.   Actavis LLC
2.   Actavis Pharma, Inc.
3.   Actavis PLC
4.   Allergan Finance, LLC
5.   Allergan PLC
6.   AmerisourceBergen Corporation
7.   AmerisourceBergen Drug Corporation
8.   Amneal Pharmaceuticals, Inc.
9.   Anda Pharmaceuticals, Inc.
10.  Anda, Inc.
11.  Cardinal Health, Inc.
12.  Cephalon, Inc.
13.  Collegium Pharmaceuticals
14.  CVS Health Corp.
15.  CVS Health Corporation
16.  CVS Pharmacy, Inc.
17.  Endo Health Solutions Inc.
18.  Endo Pharmaceuticals Inc.
19.  GCP Pharma, LLC
20.  H.D. Smith, LLC
21.  Hikma Pharmaceuticals PLC
22.  Indivior Inc.
23.  Keysource Medical, Inc.
24.  L. & R. Distributors, Inc., d/b/a SAJ Distributors
25.  Mallinckrodt LLC
26.  McKesson Corp.
27.  McKesson Corporation
28.  McKinsey & Company Inc.
29.  Morris & Dickson Co, LLC
30.  Mylan Pharmaceuticals, Inc.
31.  Oklahoma CVS Pharmacy, LLC
32.  Par Pharmaceutical Companies, Inc.
33.  Par Pharmaceutical, Inc.
34.  PD-RX Pharmaceuticals, Inc.
35.  Physicians Total Care, Inc.
36.  Purdue Pharma Inc.
37.  Purdue Pharma L.P.
38.  Quest Pharmaceuticals, Inc.
39.  Saj Distributors
40.  Sandoz Inc.

41. SpecGx LLC
42. Teva Pharmaceutical Industries, Ltd.
43. Teva Pharmaceuticals USA, Inc.
44. The Harvard Drug Group, LLC
45. The Purdue Frederick Company
46. Walgreen Co.
47. Walgreens Boots Alliance Inc. a/k/a Walgreen Co.
48. Walgreens Boots Alliance, Inc.
49. Walmart Inc.
50. Watson Laboratories, Inc.
51. Watson Pharma, Inc.
52. Watson Pharmaceuticals, Inc.
53. West-Ward Pharmaceuticals Corp. d/b/a Hikma

## EXHIBIT E

### Janssen Predecessors and Former Affiliates

The following includes a non-exclusive list of Janssen's predecessors and former affiliates:

54. Janssen Pharmaceutica, Inc.
55. Janssen Pharmaceutica N.V.
56. Janssen-Cilag Manufacturing, LLC
57. Janssen Global Services, LLC
58. Janssen Ortho LLC
59. Janssen Products, LP
60. Janssen Research & Development, LLC
61. Janssen Supply Group, LLC
62. Janssen Scientific Affairs, LLC
63. JOM Pharmaceutical Services, Inc.
64. OMJ Pharmaceuticals, Inc.
65. Ortho-McNeil Finance Co.
66. Ortho-McNeil Pharmaceutical
67. Ortho-McNeil-Janssen Pharmaceuticals
68. Ortho-McNeil Pharmaceutical Services Division
69. Ortho-McNeil Neurologic
70. Patriot Pharmaceuticals, LLC
71. Pricara, Ortho-McNeil-Janssen Pharmaceuticals
72. Alza Corp.
73. Alza Development Corp.
74. Janssen Supply Chain, Alza Corp.
75. Noramco, Inc.
76. Tasmanian Alkaloids PTY LTD.