No. 22-3491

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 13, 2022
DEBORAH S. HUNT, Clerk

|  |  |
|---|---|
| In re: NATIONAL PRESCRIPTION OPIATE LITIGATION _____ WALKER COUNTY, TX,     Plaintiff-Appellant, v. OPTUMRX, INC., et al.,     Defendants-Appellees, PLAINTIFFS' EXECUTIVE COMMITTEE,     Appellee. | O R D E R |

Before: SUTTON, Chief Judge; GUY and COLE, Circuit Judges.

Walker County, Texas, appeals from the district court's Common Benefit Order ("CBO") entered in the National Prescription Opiate MDL. The CBO manages access to discovery material generated in large part by the Plaintiffs' Executive Committee ("PEC") and made available to litigants in other opiate cases, and it dictates a cost-sharing structure funded in part by attorney fee remissions from counsel who benefit from the PEC's work. Recognizing that the CBO is an interlocutory order, the clerk ordered Walker County to show cause why the appeal should not be

dismissed for lack of jurisdiction as a non-appealable, non-final order. Walker County responded, and the PEC filed its own response as a real party in interest, urging this court to dismiss the appeal.

We generally review only final decisions of the district courts, under 28 U.S.C. § 1291. *See Catlin v. United States*, 324 U.S. 229, 233 (1945). But certain interlocutory orders may be deemed final under § 1291 if they satisfy the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949); *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Mohawk Indus.*, 558 U.S. at 106 (citation omitted).

The CBO has three primary effects. First, it relates to the use of MDL work product for discovery in later cases, including some state-court cases, by empowering defendants and third parties to "urge" a state-court plaintiff to consider MDL evidence or "advise" the state court that the MDL evidence might satisfy a plaintiff's discovery request. These provisions are permissive and have no binding effect on state courts, which remain free to manage discovery however they see fit, nor require respondents to offer MDL work product, nor obligate plaintiffs to accept access to MDL work product in satisfaction of a discovery request. Contrary to Walker County's assertion, the CBO does not authorize improper *ex parte* communication between third-party discovery respondents and state courts; it merely contemplates that, after receiving a plaintiff's discovery request, those respondents may notify the plaintiff and the court that the discovery being sought is already available in the MDL repository. Such communication is well within the scope of routine interaction between discovery respondents and the presiding court, and nothing in the CBO suggests that those respondents need not follow the same rules and norms that apply in any other case before that court. If the plaintiff does not want to accept MDL work product in response

to its discovery requests, it can move the state court to compel production of the documents anew. As such, these provisions are neither conclusive nor resolve any important matter separate from the merits.

Nor are the CBO's discovery provisions effectively unreviewable.  "This court has repeatedly held . . . that discovery orders are generally not appealable under the collateral order doctrine." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F.3d 462, 472 (6th Cir. 2006) (collecting cases).  And for good reason:  allowing parties to immediately appeal discovery orders "would '. . . invite the inundation of appellate dockets with what have heretofore been regarded as non[-]appealable matters.'"  *Dow Chem. Co. v. Taylor*, 519 F.2d 352, 354–55 (6th Cir. 1975) (quoting *Borden Co. v. Sylk*, 410 F.2d 843, 846 (3d Cir. 1969)).  Even when a discovery order involves an issue as significant as a claim of privilege, this court will not immediately review the order unless the "party claiming a privilege is 'powerless to avert the mischief of the order,'" such as when a client challenges an order compelling their attorney to reveal privileged information.  *Ross v. City of Memphis*, 423 F.3d 596, 599 (6th Cir. 2005) (quoting *Perlman v. United States*, 247 U.S. 7, 13 (1918)).  Nothing so weighty is at stake in here.

Instead, "[t]ypically, a nonparty aggrieved by a discovery order must subject [itself] to civil contempt to gain appellate review."  *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 438 (6th Cir. 2009) (quoting *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1491 (9th Cir. 1989)).  Parties to the litigation have additional avenues to review; in addition to disobeying the order and appealing a contempt citation, they can "await final judgment to seek review of a discovery order," *id.*, "or seek the extraordinary remedy of a writ of mandamus," *Pogue*, 444 F.3d at 475 (Griffin, J., concurring).  In short, the discovery provisions of the CBO are not unreviewable, and they do not trigger the collateral order doctrine.

Second, the CBO requires plaintiffs to sign a participation agreement as a condition of accessing MDL work product, although the CBO places the burden of enforcing that condition on MDL counsel rather than through any action by the district court. In any event, even accepting Walker County's argument that the CBO improperly includes plaintiffs whose cases are outside the district court's jurisdiction, the non-binding nature of the CBO's discovery provisions means plaintiffs are only affected if they willingly access MDL work product or are compelled to do so by some ruling in the presiding court. In either case, the CBO is not the "last word on the subject." *Rosenstein v. Merrell Dow Pharms., Inc.*, 769 F.2d 352, 354 (6th Cir. 1985) (quoting *Bradshaw v. Zoological Soc'y of San Diego*, 662 F.2d 1301, 1306 (9th Cir. 1981)). For the same reason, this provision does not resolve an important matter separate from the merits. And, again, alternative avenues to review are available to parties and non-parties alike. *In re Pros. Direct Ins. Co.*, 578 F.3d at 438; *Pogue*, 444 F.3d at 475.

The CBO's third primary effect relates to attorney fees. The order mandates a contribution to the common benefit fund in some cases, including some in state court. But these provisions are also insufficient to trigger immediate review under the collateral order doctrine.

To begin, the fee provisions in the CBO are non-conclusive in multiple ways. First, a plaintiff may (indeed, the district court expects that most will) contract around the contribution obligation by including "its own negotiated, MDL-Court-approved Common Benefit [fee and cost] structure." Second, the CBO expressly states that the district court has not yet determined the appropriate award of fees or costs and that "the operation, payment, allocation, award, and distribution of funds" will be dictated through future orders. As was true of its discovery provisions, the CBO's preliminary directive to withhold funds is not the district court's "last word on the subject." *Rosenstein*, 769 F.2d at 354.

In addition, interim orders involving attorney fees rarely trigger the collateral order doctrine because litigants almost always have an opportunity to appeal following final judgment. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Winget*, 920 F.3d 1103, 1109 (6th Cir. 2019). Only when there is no clear end to the process—such as indefinite post-judgment monitoring cases or when the district court imposes "a *prospective* burden of large monthly fee payments with no definite cutoff date"—is immediate appeal justified. *Id.* (quotation omitted). The CBO simply is not the kind of indefinite fee order that leaves plaintiffs without a real opportunity to appeal.

Walker County asserts that appeals courts have consistently held that MDL courts lack the authority to intervene in discovery or fee awards in non-MDL actions. Regardless, the relevant inquiry is whether Walker County has an opportunity to challenge the CBO's attorney-fee provisions. It does. In fact, in the parallel mandamus petition filed by Walker County and other state-court plaintiffs, all of the cases cited in support of this jurisdictional argument were heard without resort to the collateral order doctrine, most commonly in the ordinary course after a final fee award. *See, e.g.*, *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 770 (9th Cir. 1977).

Alternatively, Walker County cites *Fox v. Saginaw County, Michigan*, 35 F.4th 1042, 1047 (6th Cir. 2022), for the proposition that "orders that cause irreparable harm are effectively unreviewable without an interlocutory appeal." Walker County asserts that signing a participation agreement is an irreparable waiver of the plaintiff's objections to the district court's jurisdiction and that the hold-back provision violates state courts' authority and forces plaintiffs to submit to federal jurisdiction if they wish to challenge the district court's collection or disbursement of common benefit funds. But Walker County cites no authority for the proposition that this constitutes irreparable harm or is otherwise unreviewable. And, once again, Walker County's own mandamus citations prove that there are alternative mechanisms to fully vindicate the interests of

No. 22-3491
-6-

parties who oppose the district court's jurisdiction, even after initially acquiescing. *See, e.g.*, *Vincent*, 557 F.2d at 765–66 (resolving a jurisdiction-based appeal of a common benefit award brought by a claimant who never filed suit against any of the defendants in any court, after the claimant initially complied with the hold-back requirement); *Hartland v. Alaska Airlines*, 544 F.2d 992, 996–97, 1001 (9th Cir. 1976) (granting mandamus relief in nearly identical circumstances).

Finally, Walker County's citation to *In re Showa Denko K.K. L-Tryptophan Products Liability Litigation-II*, 953 F.2d 162 (4th Cir. 1992), for the proposition that this court has jurisdiction to review the CBO under 28 U.S.C. § 1292(a)(1) as an injunction is unavailing. The order at issue in that case affirmatively "enjoin[ed] Showa Denko to certify compliance with its terms when participating in settlements and paying judgments entered in other proceedings beyond the scope of the multi-district litigation." *Id.* at 165. Walker County cites no analogous provision in the CBO. Despite Walker County's assertions to the contrary, the CBO does not enjoin defendants in opioid cases from "paying the state court litigants the proceeds owed to them"; it instead directs plaintiffs' counsel to remit a portion of their fee awards to a common benefit fund, some of which may be used to offset the PEC's costs of conducting discovery from which plaintiffs' counsel can benefit.

Because the CBO does not trigger the collateral order doctrine and is not an injunction, we lack jurisdiction to review it prior to a final appealable order. Accordingly, the appeal is **DISMISSED**.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk