Nos. 22-3493/3653

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 13, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| In re: NATIONAL PRESCRIPTION OPIATE LITIGATION. | ) ) ) ) |
| In re: HARRIS COUNTY, TX, et al., | ) ) ) |
| Petitioners (No. 22-3493). | ) ) ) |
| In re: ADAMS COUNTY, PA, et al., | ) ) )) |
| Petitioners (No. 22-3653). | |

O R D E R

Before: SUTTON, Chief Judge; GUY and COLE, Circuit Judges.

These cases both relate to a Common Benefit Order ("CBO") entered by the district court in the National Prescription Opiate Multidistrict Litigation. *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2017). The CBO deals with access to discovery material generated in large part by the Plaintiffs' Executive Committee ("PEC") and made available to litigants in other opiate cases, and it dictates a cost-sharing structure funded in part by attorney fee remissions from counsel who benefit from the PEC's work.

In *In re Harris County, Texas*, No. 22-3493, more than 600 counties and municipalities in Texas, New Mexico, Arkansas, and South Carolina petition for a writ of mandamus requiring the district court to vacate the CBO, arguing, among other things, that the district court has no jurisdiction over their state-court opiate cases. The district court has responded and subsequently

entered an order below, seeking to clarify two footnotes in the CBO that Petitioners had discussed in their petition. Petitioners reply. In a related case, *In re Adams County, PA*, No. 22-3653, eighty-four counties and municipalities in Pennsylvania, Ohio, Delaware, Oklahoma, and Mississippi filed their own mandamus petition, joining Harris County's petition and seeking similar relief on similar bases. Because of their similarity, we considered both petitions in a single order and directed the PEC to respond, which it has done.

The CBO mandates a contribution to a common benefit fund, totaling 7.5% of the gross recovery, unless a different percentage is negotiated by the parties and approved by the district court. It also provides that state-court discovery respondents may suggest access to the MDL's discovery repository in satisfaction of discovery requests; access to the repository requires counsel to sign a participation agreement that includes the fee-holdback mandate. The CBO applies only to a limited number of cases, but it includes those brought by state court plaintiffs whose case was remanded from the MDL, whose counsel participated in an MDL case, or whose counsel signed a participation agreement on behalf of a plaintiff in a different state court case. Petitioners argue that the district court lacks jurisdiction over their cases and that the order was entered without due process. They seek a writ of mandamus vacating the CBO to the extent it applies to them and prohibiting the district court from interfering in their state court cases.

"[B]efore we address the merits of [Petitioners'] claims, we must first determine whether [Petitioners] have Article III standing to raise them. Indeed, whether a [Petitioner] has Article III standing is the threshold question in every federal case[.]" *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 899 F.3d 437, 443 (6th Cir. 2018) (internal quotation marks omitted). Article III standing requires a concrete harm that is actual or imminent, traceable to the respondent's conduct, and redressable by the requested relief. *Id.*

The CBO's discovery provision plainly has no coercive effect on Petitioners or the state courts; it merely says that when the plaintiff serves a discovery request, the respondent may notify the plaintiff and the state court that the discovery being sought is already available in the MDL repository. Meanwhile, the CBO's fee provision is entirely prospective, so Petitioners' past recoveries and cases are not impacted. It is also contingent on the absence of an approved alternative fee assessment. Likewise, the district court has yet to enter a final fee award, introducing yet another link in the hypothetical chain between Petitioners and the alleged injuries. As such, the alleged injury to Petitioners' or counsel's property interests in recovered fees is neither concrete nor imminent, *see Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 395 (6th Cir. 2001) (holding that plaintiff's "claim of potential future injury is too speculative to grant him standing"), and vacating the CBO would redress no injury. Petitioners therefore lack standing to seek mandamus relief.

Even if Petitioners' alleged injuries were sufficient to give them standing, they are not entitled to a writ of mandamus. "[T]he writ is one of the most potent weapons in the judicial arsenal," and "only exceptional circumstances amounting to a judicial usurpation of power . . . or a clear abuse of discretion . . . will justify [its] invocation." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quotation omitted). As such, a petitioner must satisfy three conditions to obtain mandamus relief. First, the petitioner must have no adequate alternative means to obtain the relief they seek—"a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 380−81. Second, the petitioner must show a "clear and indisputable" right to issuance of the writ. *Id.* at 381 (quotation omitted). And third, the petitioner must show that issuing the writ is otherwise "appropriate under the circumstances." *Id.*

Direct appeal is an adequate alternative means to obtain the relief Petitioners seek. Plaintiffs in several circuits have successfully challenged a district court's jurisdiction to enter a common benefit order by bringing a direct appeal from the final fee award. *See In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014); *U.S. ex rel. Bogart v. King Pharms.*, 493 F.3d 323, 329 (3d Cir. 2007); *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 765–66, 770–72 (9th Cir. 1977); *In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1018 (5th Cir. 1977); *accord Toth v. United Auto. Aerospace & Agric. Implement Workers of Am. UAW*, 743 F.2d 398, 405–06 (6th Cir. 1984); *see also In re Austrian & German Holocaust Litig.*, 250 F.3d 156, 162 (2d Cir. 2001) (per curiam) ("An order that is beyond the scope of the district court's authority is of course normally remediable through a direct appeal."); *but see Hartland v. Alaska Airlines*, 544 F.2d 992, 1001 (9th Cir. 1976) (construing a notice of appeal as a mandamus petition instead of engaging in the collateral order doctrine analysis). Petitioners may even challenge the district court's jurisdiction on direct appeal after initially complying with the CBO's requirements. *See Vincent*, 557 F.2d at 765–66 (resolving the jurisdiction-based appeal to a common benefit award brought by Mrs. Vincent, who never filed suit against any of the defendants in any court, and after she initially complied with the hold-back provision); *see also Ex parte Harding*, 219 U.S. 363, 369 (1911) (observing that the doctrine that challenges to a district court's jurisdiction should be brought on direct appeal is "so often expounded . . . that it may be taken as elementary and requiring no further reference to authority").

Petitioner's due process claim can also wait; even when challenging the fundamental constitutionality of the judicial tribunal itself, courts consider direct appeal after final judgment to be an adequate remedy. *See In re al-Nashiri*, 791 F.3d 71, 73, 81–82 (D.C. Cir. 2015). That

Petitioners can avail themselves of alternatives if and when they are subjected to the CBO's provisions is sufficient to deny their mandamus petitions.

Accordingly, the petitions for writs of mandamus are **DENIED**.

                         ENTERED BY ORDER OF THE COURT

                         Deborah S. Hunt, Clerk