# APPENDIX B

## JANSSEN ALABAMA STATE-WIDE OPIOID SETTLEMENT AGREEMENT

### I.  <u>Overview</u>

This settlement agreement dated as of April 1, 2022 (the "*Agreement*") sets forth the principal terms and conditions of a settlement agreement between and among the State of Alabama, Participating Subdivisions, Participating Special Districts, and Janssen (as those terms are defined below). Janssen has agreed to the below terms for the sole purpose of settlement, and nothing herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Janssen expressly denies. No part of this Agreement, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Janssen. Unless the contrary is expressly stated, this Agreement is not intended for use by any third party for any purpose, including submission to any court for any purpose.

### II.  <u>Definitions</u>

Unless otherwise specified, the following definitions apply:

1.  "*Agreement*" means this agreement as set forth above, inclusive of all exhibits.

2.  "*Attorney*" means any of the following retained through a legal contract: a solo practitioner, multi-attorney law firm, or other legal representative of a Participating Subdivision or Participating Special District.

3.  "*Claim*" means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, parens patriae claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including but not limited to any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

4.  "*Claim Over*" means a Claim asserted by a Non-Released Entity against a Released Entity on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.  The measure of any Claim Over shall not exceed amounts attributable to anything other than a Releasors' compensatory damages, restitution, and/or

monetary abatement awarded against the Non-Released entity underlying the claim originating the Claim Over.

5. "*Consent Judgment*" means a consent judgment in the form attached as Exhibit E.

6. "*Court*" means the court to which the Agreement and the Consent Judgment are presented for approval and/or entry.

7. "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Effective Date (and any past, present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (a) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to any Product, or any system, plan, policy, or advocacy relating to any Product or class of Products, including but not limited to any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (b) the characteristics, properties, risks, or benefits of any Product; (c) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders for any Product placed with any Released Entity; (d) the selective breeding, harvesting, extracting, purifying, exporting, importing, applying for quota for, procuring quota for, handling, promoting, manufacturing, processing, packaging, supplying, distributing, converting, or selling of, or otherwise engaging in any activity relating to, precursor or component Products, including but not limited to natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, or any related intermediate Products; or (e) diversion control programs or suspicious order monitoring related to any Product.

8. "*Effective Date*" means the date on which this Agreement is executed by the State and Janssen.

9. "*Global Settlement*" means the Janssen Settlement Agreement pertaining to opioid litigations, dated July 21, 2021, resolving the litigation and claims brought or threatened to be brought by participating states and subdivisions against Janssen, including claims against Janssen asserted in the multi-district litigation *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) ("MDL") and state court prescription opiate litigation. A copy of the Global Settlement is available at https://nationalopioidsettlement.com/wp-content/uploads/2022/03/Janssen-agreement-03112022.pdf.

10. "*Injunctive Relief Terms*" means the terms described in Section III and set forth in Exhibit C.

11. "*Janssen*" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

12. "*Later Litigating Special District*" means a Special District (or Special District official asserting the right of or for the Special District to recover for alleged harms to the Special District, the State, or the people thereof) that is not a Litigating Special District and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Effective Date.

13. "*Later Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision or the State to recover for alleged harms to the Subdivision, the State, and/or the people thereof) that is not a Litigating Subdivision and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Effective Date.

14. "*Litigating Special District*" means a Special District (or Special District official asserting the right of or for the Special District to recover for alleged harms to the Special District, the State, or the people thereof ) that brought any Released Claims against any Released Entities on or before the Effective Date that were not separately resolved prior to that date.

15. "*Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision or the State to recover for alleged harms to the Subdivision, the State, and/or the people thereof) that brought any Released Claim against any Released Entity on or before the Effective Date that were not separately resolved prior to that date.

16. "*Non-Litigating Special District*" means a Special District that is not a Litigating Special District.

17. "*Non-Litigating Subdivision*" means a Subdivision that is not a Litigating Subdivision.

18. "*Non-Party Covered Conduct Claim*" means a Claim against any Non-Released Entity involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity).

19. "*Non-Party Settlement*" means a settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Entity.

20. "*Non-Released Entity*" means an entity that is not a Released Entity.

3

21.     "*Participating Special District*" means a Special District that meets the requirements for becoming a Participating Special District under Section VII. Special Districts eligible to participate in the settlement are listed on Exhibit F.

22.     "*Participating Subdivision*" means a Subdivision that meets the requirements for becoming a Participating Subdivision under Section VII. Subdivisions eligible to participate in the settlement are listed on Exhibit F.

23.     "*Parties*" means Janssen and the State of Alabama (each, a "*Party*").

24.     "*Product*" means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is an opioid or opiate, as well as any product containing any such substance. It also includes: 1) the following when used in combination with opioids or opiates: benzodiazepine, carisoprodol, zolpidem, or gabapentin; and 2) a combination or "cocktail" of any stimulant or other chemical substance prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. For the avoidance of doubt, "Product" does not include benzodiazepine, carisoprodol, zolpidem, or gabapentin when not used in combination with opioids or opiates. "Product" includes but is not limited to any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, any variant of these substances, or any similar substance. "Product" also includes any natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, and any related intermediate products used or created in the manufacturing process for any of the substances described in the preceding sentence.

25.     "*Released Claims*" means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Effective Date. Without limiting the foregoing, "Released Claims" include any Claims that have been asserted against the Released Entities by the State or any of its Litigating Subdivisions or Litigating Special Districts in any federal, state or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding brought by the State, any of its Subdivisions or Special Districts, or any Releasors (whether or not such State, Subdivision, Special District, or Releasor has brought such action or proceeding), provided the Covered Conduct occurs prior to the Effective Date. Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to the Agreement, whether or not such claims relate to Covered Conduct, provided the Covered Conduct occurs prior to the Effective Date. The Parties intend that "Released Claims" be interpreted broadly. This Agreement does not release Claims by private individuals. It is the

4

intent of the Parties that Claims by private individuals be treated in accordance with applicable law. Released Claims is also used herein to describe Claims brought by a Later Litigating Subdivision or Later Litigating Special District or other non-party Subdivision or Special District that would have been Released Claims if they had been brought by a Releasor against a Released Entity provided the Covered Conduct occurs prior to the Effective Date.

26. "*Released Entities*" means Janssen and (1) all of Janssen's past and present direct or indirect parents, subsidiaries, divisions, predecessors, successors, assigns, including Noramco, Inc. and Tasmanian Alkaloids PTY. LTD.; (2) the past and present direct or indirect subsidiaries, divisions, and joint ventures, of any of the foregoing; (3) all of Janssen's insurers (solely in their role as insurers with respect to the Released Claims); (4) all of Janssen's, or of any entity described in subsection (1), past and present joint ventures; and (5) the respective past and present officers, directors, members, shareholders (solely in their capacity as shareholders of the foregoing entities), partners, trustees, agents, and employees of any of the foregoing (for actions that occurred during and related to their work for, or employment with, Janssen). Any person or entity described in subsections (3)-(5) shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity. For the avoidance of doubt, the entities listed in Exhibit D are not Released Entities; and provided further that any joint venture partner of Janssen or Janssen's subsidiary is not a Released Entity unless it falls within subsections (1)-(5) above. A list of Janssen's present subsidiaries and affiliates can be found at https://johnsonandjohnson.gcs-web.com/static-files/f61ae5f3-ff03-46c1-bfc9-174947884db2. Janssen's predecessor entities include but are not limited to those entities listed on Exhibit A. For the avoidance of doubt, any entity acquired, or joint venture entered into, by Janssen after the Effective Date is not a Released Entity.

27. "*Releasors*" means (1) the State; (2) each Participating Subdivision and Participating Special District; and (3) without limitation and to the maximum extent of the power of the State's Attorney General and/or Participating Subdivision or Special District to release Claims, (a) the State's and Participating Subdivision's or Special District's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in their official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in the State, and (c) any person or entity acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State, Subdivision, or Special District in the State, whether or not any of them participate in the Agreement. The inclusion of a specific

reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Subdivision or Special District. In addition to being a Releasor as provided herein, a Participating Subdivision or Participating Special District shall also provide the Settlement Participation Form or the Election and Release Form referenced in Section VII providing for a release to the fullest extent of the Participating Subdivision's or Participating Special District's authority, which shall be attached as an exhibit to the Agreement. The State's Attorney General represents that he or she has or has obtained (or will obtain no later than the Effective Date) the authority set forth in the Representation and Warranty subsection of Section IV.

28.   "*Special District*" means a formal and legally recognized sub-entity of the State that is authorized by State law to provide one or a limited number of designated functions, including but not limited to school districts, fire districts, healthcare & hospital districts, and emergency services districts. Special Districts do not include sub-entities of the State that provide general governance for a defined area that would qualify as a Subdivision.

29.   "*State*" means the State of Alabama.

30.   "*Subdivision*" means a formal and legally recognized sub-entity of the State that provides general governance for a defined area, including a county, parish, city, town, village, or similar entity. Unless otherwise specified, "Subdivision" includes all functional counties and parishes and other functional levels of sub-entities of the State that provide general governance for a defined area. Historic, non-functioning sub-entities of the State are not Subdivisions, unless the entity has filed a lawsuit that includes a Released Claim against a Released Entity in a direct, parens patriae, or any other capacity. For purposes of this Agreement, the term Subdivision does not include Special Districts.

31.   "*Settlement Participation Form*" means the form attached as Exhibit B that Participating Subdivisions and Special Districts must execute and return to Janssen and the State of Alabama, and which shall (1) make such Participating Subdivisions and Special Districts signatories to this Agreement, (2) include a full and complete release of any and of such Subdivision's or Special District's claims, and (3) require the prompt dismissal with prejudice of any Released Claims that have been filed by any such Participating Subdivision or Special District.

### III.   **Injunctive Relief**

As part of the Consent Judgment, the Parties agree to the injunctive relief terms attached as Exhibit C.

### IV.   **Release**

A.   *Scope*. As of the Effective Date, the Released Entities will be released and forever discharged from all of the Releasors' Released Claims. The State of Alabama (for itself

and its Releasors) and each Participating Subdivision and Special District (for itself and its Releasors) will, on or before the Effective Date, absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of the State and its Attorney General to release claims. The Release shall be a complete bar to any Released Claim.

B.  *Claim Over and Non-Party Settlement.*

    1.  *Statement of Intent.* It is the intent of the Parties that:

        a.  Released Entities should not seek contribution or indemnification (other than pursuant to an insurance contract) from other parties for their payment obligations under this Settlement Agreement;

        b.  the payments made under this Settlement Agreement shall be the sole payments made by the Released Entities to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity);

        c.  Claims by Releasors against non-Parties should not result in additional payments by Released Entities, whether through contribution, indemnification or any other means; and

        d.  the Settlement meets the requirements of the Uniform Contribution Among Joint Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

        e.  The provisions of this subsection IV.B are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

    2.  *Contribution/Indemnity Prohibited.* No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Released Entity shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

    3.  *Non-Party Settlement.* To the extent that, on or after the Effective Date, any Releasor enters into a Non-Party Settlement, including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of

7

creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Janssen in subsection IV.B.2, or a release from such Non-Released Entity in favor of the Released Entities (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.

4.   *Claim-Over*. In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that in subsection IV.B.3, or any Releasor files a Non-Party Covered Conduct Claim against a non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in subsection IV.B.3, and such Non-Released Entity asserts a Claim-Over against a Released Entity, that Releasor and Janssen shall take the following actions to ensure that the Released Entities do not pay more with respect to Covered Conduct to Releasors or to Non-Released Entities than the amounts owed under this Settlement Agreement by Janssen or otherwise reduce the amounts so owed:

a.    Janssen shall notify that Releasor of the Claim-Over within thirty (30) days of the assertion of the Claim-Over or thirty (30) days of the Effective Date of this Settlement Agreement, whichever is later;

b.    Janssen and that Releasor shall meet and confer concerning the means to hold Released Entities harmless and ensure that it is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement;

c.    That Releasor and Janssen shall take steps sufficient and permissible under the law of the State of the Releasor to hold Released Entities harmless from the Claim-Over and ensure Released Entities are not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement. Such steps may include, where permissible:

(1)   Filing of motions to dismiss or such other appropriate motion by Janssen or Released Entities, and supported by Releasors, in response to any claim filed in litigation or arbitration;

(2)   Reduction of that Releasor's Claim and any judgment it has obtained or may obtain against such Non-Released Entity by whatever amount or percentage is necessary to extinguish such Claim-Over under applicable law, up to the amount that Releasor

has obtained, may obtain, or has authority to control from such Non-Released Entity;

    (3)    Such other actions as that Releasor and Janssen may devise to hold Janssen harmless from the Claim Over.

d.    The actions of that Releasor and Janssen taken pursuant to paragraph (c) must, in combination, ensure Janssen is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement.

e.    Janssen may not settle or compromise any Claim-Over without the consent of the State; *provided, however*, that such consent shall not be unreasonably withheld.

f.    In the event of any dispute over the sufficiency of the actions taken pursuant to paragraph (c), that Releasor and Janssen may seek review by the court that enters the Consent Judgment pursuant to Section X.

5.    To the extent that the Claim-Over is based on a contractual indemnity, the obligations under subsection IV.B.4 shall extend solely to a Non-Party Covered Conduct Claim against a pharmacy, a manufacturer that sold Products, and/or a pharmacy benefit manager or other third-party payor. Janssen shall notify the State, to the extent permitted by applicable law, in the event that any of these types of Non-Released Entities asserts a Claim-Over arising out of contractual indemnity against it.

C.    *General Release*. In connection with the releases provided for in the Agreement, the State of Alabama (for itself and its Releasors) and each Participating Subdivision and Special District (for itself and its Releasors) will expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

**General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may thereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the State (for itself and its Releasors) and each Participating Subdivision and Special District (for itself and its Releasors) will expressly waive and fully, finally, and forever settle, release and discharge, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if

9

known, would materially affect the State's decision to enter into the Agreement or the Participating Subdivisions' or Special Districts' decision to participate in the Agreement.

D.   *Res Judicata*. Nothing in the Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in the Agreement, and/or any Consent Judgment or other judgment entered on the Agreement, gives rise to under applicable law.

E.   *Representation and Warranty*. The signatories hereto on behalf of the State and its Participating Subdivisions and Participating Special Districts expressly represent and warrant that they will obtain on or before the Effective Date (or have obtained) the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) the State; (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts; (3) any of the State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license; and (4) any Participating Subdivisions and Special Districts. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Also, for the purposes of clause (3), a release from the State's Governor is sufficient to demonstrate that the appropriate releases have been obtained.

F.   *Effectiveness*. The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors. Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the settlement funds or any portion thereof, or by the enactment of future laws, or by any seizure of the settlement funds or any portion thereof.

G.   *Cooperation*. Releasors (i) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (ii) will reasonably cooperate with and not oppose any effort by a Released Entity to secure the prompt dismissal of any and all Released Claims.

H.   *Non-Released Claims.* Notwithstanding the foregoing or anything in the definition of Released Claims, the Agreement does not waive, release or limit any criminal liability, Claims for any outstanding liability under any tax or securities law, Claims against parties who are not Released Entities, Claims by private individuals and any claims arising under the Agreement for enforcement of the Agreement.

## V.   <u>Monetary Relief and Payments</u>

A.   *Participation.* As consideration for the Remediation and Restitution Payments under subsection V.B below, the State represents and warrants that, subject to the holdback

10

provision in subsection V.C below, it will obtain and deliver (or cause to be obtained and delivered) to Janssen, within ninety (90) days after the Effective Date or such later date as the Parties may agree, executed Settlement Participation Forms for all Litigating Subdivisions and Litigating Special Districts and all Non-Litigating Subdivisions listed on Exhibit F.

B. *Remediation and Restitution Payments*. Within forty-five (45) days after delivery of the executed Settlement Participation Forms required under subsection V.A. above, Janssen shall pay to the State of Alabama the sum of $70,329,014.38, plus the fees and costs provided for in Section IX, subject to any holdback under subsection V.C below.

C. *Holdback for Non-Litigating Subdivisions and Special Districts*. If, by the Effective Date, any Non-Litigating Subdivision listed on Exhibit F has not executed a Settlement Participation Form or has not provided Janssen an acknowledgement that the Subdivision or Special District has no intention to file a lawsuit asserting Released Claims against Released Entities, then Janssen will hold back $3,516,450.72 from the payment described in subsection V.B above, which Janssen will not pay to the State of Alabama ; *provided, however*, Janssen will pay the $3,516,450.72 to the State of Alabama two years after the Effective Date if no such Non-Litigating Subdivision has filed litigation asserting Released Claims in the interim.

## VI.    Intra-State Allocation

Janssen's payments shall be allocated as determined by the State.

## VII.    Participation by Subdivisions and Special Districts

A. *Requirements for Becoming a Participating Subdivision: Non-Litigating Subdivisions*. Non-Litigating Subdivisions listed on Exhibit F are eligible to become Participating Subdivisions.  A Non-Litigating Subdivision may become a Participating Subdivision by returning an executed Settlement Participation Form.

B. *Requirements for Becoming a Participating Subdivision or Special District: Litigating Subdivisions and Special Districts.* Litigating Subdivisions and Special Districts listed on Exhibit F are eligible to become Participating Subdivisions and Special Districts.  A Litigating Subdivision or Special District may become a Participating Subdivision or Special District by returning an executed Settlement Participation Form and upon prompt dismissal of its legal action.

C. Non-Litigating Special Districts are not eligible to participate in the settlement, but if any Non-Litigating Special District files a lawsuit against any Released Entity, the State will file a motion to intervene in the litigation and will use its best efforts to obtain either dismissal of the litigation in cooperation with Janssen or a release consistent with Section IV of the Special District's Claims.

## VIII.  Filing of Consent Judgment

The Parties will proceed to file the Consent Judgment within thirty (30) days of the Effective Date.

## IX.  Attorney Fee and Cost Payments

A.    The terms for attorney fee and cost payments are as follows:

1.    Within forty-five (45) days after delivery of the executed Settlement Participation Forms required under subsection V.A. above, Janssen shall pay to the State of Alabama $5,074,243.46, to be available to reimburse attorney fees for the State, Participating Litigating Subdivisions, and Special Districts.

2.    Participating Subdivisions and Special Districts shall use best efforts to provide Janssen with the information necessary for Janssen to secure a reduction of its payment obligation to the Global Settlement Contingency Fee Fund by the amount that would have been owed to counsel for Litigating Subdivisions had Alabama been a Settling State under the Global Settlement, as provided in Sections II.D.4 and II.H.6 of Exhibit R of the Global Settlement.

3.    Within forty-five (45) days after delivery of the executed Settlement Participation Forms required under subsection V.A. above, Janssen shall pay to the State of Alabama an additional $1,424,854.66 for attorneys' fees for the State, Participating Litigating Subdivisions, and Participating Special Districts.

4.    Within forty-five (45) days after delivery of the executed Settlement Participation Forms required under subsection V.A. above, Janssen shall pay to the State of Alabama $494,738.74, to be available to compensate counsel for the State and Participating Subdivisions and Special Districts for costs and expenses arising out of representation of the State and Participating Litigating Subdivisions or Special Districts related to their litigation against Janssen. Participating Litigating Subdivisions and Special Districts shall use best efforts to provide Janssen with the information necessary for Janssen to secure the maximum available reduction of its payment obligation to the Global Settlement Litigating Subdivision Cost Fund under Section II.E.4 of Exhibit R of the Global Settlement.

5.    Nothing herein is meant to prohibit an agreement by the State and private counsel for the State or Participating Subdivisions or Special Districts (or legislation enacted in the State) to provide, adjust, or guarantee attorney fees and costs. Nothing contained within this section is meant to prohibit the State's ability to otherwise pay attorney fees and costs of private counsel for the State, Participating Subdivisions or Special Districts from other sources within this Agreement including amounts paid for remediation and restitution under Section V above.

B.    An Attorney may not receive any payment for attorney fees unless the Attorney represents that s/he has no present intent to represent or participate in the

12

representation of any Later Litigating Subdivision or Special District or any Releasor with respect to Released Claims against Released Entities.

## X.    Enforcement and Dispute Resolution

A.     The terms of the Agreement and Consent Judgment applicable to the State will be enforceable solely by the State and Janssen..

B.     Janssen consents to the jurisdiction of the court in which the Consent Judgment is filed, limited to resolution of disputes identified in subsection X.D for resolution in the court in which the Consent Judgment is filed.

C.     The parties to a dispute shall promptly meet and confer in good faith to resolve any dispute. If the parties cannot resolve the dispute informally, and unless otherwise agreed in writing, they shall follow the remaining provisions of this section to resolve the dispute.

D.     Disputes not resolved informally shall be resolved in the Court that entered the Consent Judgment.

## XI.    Miscellaneous

A.     *No Admission*. Janssen does not admit liability or wrongdoing. Neither this Agreement nor the Consent Judgment shall be considered, construed, or represented to be (1) an admission, concession, or evidence of liability or wrongdoing or (2) a waiver or any limitation of any defense otherwise available to Janssen.

B.     *Population of Subdivisions*. The population figures for Subdivisions shall be the published U.S. Census Bureau's population estimates for July 1, 2019, released May 2020. These population figures shall remain unchanged during the term of this Agreement.

C.     *Population of Special Districts*. For any purpose in this Agreement in which the population of a Special District is used: (a) School Districts' population will be measured by the number of students enrolled who are eligible under the Individuals with Disabilities Education Act ("*IDEA*") or Section 504 of the Rehabilitation Act of 1973; (b) Health Districts' and Hospital Districts' population will be measured at 25% of discharges; and (c) all other Special Districts' (including Fire Districts' and Library Districts') population will be measured at 10% of the population served.

D.     *Statement on Restitution and Cooperation.*

1.     The Parties agree that the purpose of the settlement funds, other than the amounts directed to payment of attorney fees and litigation costs, will be to receive from Janssen and pay over to the State and Participating Subdivisions and Special Districts monies to remediate the harms allegedly caused by Janssen's conduct or to provide restitution for such alleged harms that were previously incurred. The payments received by the State of Alabama, other than the amounts directed to

attorney fees and costs, shall be disbursed to the State and Participating Subdivisions and Special Districts, which were allegedly harmed by Janssen in a manner consistent with their above-stated remedial and/or restitutive purpose. No amount paid to the State of Alabama or paid over to any requesting entity constitutes a fine or penalty.

2.  The State and each Participating Subdivision or Special District shall, prior to receipt of any payments of settlement funds from the State of Alabama shall, provide Janssen with a written statement certifying that: (1) the entity suffered harm allegedly caused by Janssen; (2) the payments to be received by the entity from Janssen represent an amount that is less than or equal to the actual monetary damage allegedly caused by Janssen; and (3) the entity shall use such payments for the sole purpose of remediating the harm allegedly caused by Janssen or to provide restitution for such alleged harms that were previously incurred.

3.  The State of Alabama shall complete and file Form 1098-F with the Internal Revenue Service on or before February 28 (March 31 if filed electronically) of the year following the calendar year in which the order entering the Consent Judgment becomes binding. On the Form 1098-F, the State of Alabama or requesting entity, as applicable, shall identify such payments from Janssen as remediation/restitution amounts. The State of Alabama, as applicable, shall also, on or before January 31 of the year following the calendar year in which the order entering the Consent Judgment becomes binding, furnish Copy B of such Form 1098-F (or an acceptable substitute statement) to Janssen.

E.  *No Third-Party Beneficiaries.* Except as expressly provided in this Agreement, no portion of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not the State or Released Entity. The State may not assign or otherwise convey any right to enforce any provision of this Agreement.

F.  *Calculation.* Any figure or percentage referred to in this Agreement shall be carried to seven decimal places.

G.  *Construction.* None of the Parties and no Participating Subdivision or Special District shall be considered to be the drafter of this Agreement or of any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement. The headings of the provisions of this Agreement are not binding and are for reference only and do not limit, expand, or otherwise affect the contents or meaning of this Agreement.

H.  *Cooperation.* Each Party and each Participating Subdivision and Special District agrees to use its best efforts and to cooperate with the other Parties and Participating Subdivisions and Special Districts to cause this Agreement and the Consent Judgment to become effective, to obtain all necessary approvals, consents and authorizations, if any, and to execute all documents and to take such other action as may be appropriate in connection herewith. Consistent with the foregoing, each Party and each Participating Subdivision and Special District agrees that it will not directly or indirectly assist or

14

encourage any challenge to this Agreement or the Consent Judgment by any other person, and will support the integrity and enforcement of the terms of this Agreement and the Consent Judgment.

I.   *Entire Agreement*. This Agreement, its exhibits and any other attachments embodies the entire agreement and understanding between and among the Parties and Participating Subdivisions and Special Districts relating to the subject matter hereof and supersedes (1) all prior agreements and understandings relating to such subject matter, whether written or oral and (2) all purportedly contemporaneous oral agreements and understandings relating to such subject matter.

J.   *Execution*. This Agreement may be executed in counterparts and by different signatories on separate counterparts, each of which shall be deemed an original, but all of which shall together be one and the same Agreement. One or more counterparts of this Agreement may be delivered by facsimile or electronic transmission with the intent that it or they shall constitute an original counterpart hereof. One or more counterparts of this Agreement may be signed by electronic signature.

K.   *Good Faith and Voluntary Entry*. Each Party warrants and represents that it negotiated the terms of this Agreement in good faith. Each of the Parties and signatories to this Agreement warrants and represents that it freely and voluntarily entered into this Agreement without any degree of duress or compulsion. The Parties state that no promise of any kind or nature whatsoever (other than the written terms of this Agreement) was made to them to induce them to enter into this Agreement.

L.   *No Prevailing Party.* The Parties each agree that they are not the prevailing party in this action, for purposes of any claim for fees, costs, or expenses as prevailing parties arising under common law or under the terms of any statute, because the Parties have reached a good faith settlement. The Parties each further waive any right to challenge or contest the validity of this Agreement on any ground, including, without limitation, that any term is unconstitutional or is preempted by, or in conflict with, any current or future law.

M.   *Non-Admissibility.* The settlement negotiations resulting in this Agreement have been undertaken by the Parties and by certain representatives of the Participating Subdivisions and Special Districts in good faith and for settlement purposes only, and no evidence of negotiations or discussions underlying this Agreement shall be offered or received in evidence in any action or proceeding for any purpose. This Agreement shall not be offered or received in evidence in any action or proceeding for any purpose other than in an action or proceeding arising under or relating to this Agreement.

N.   *Notices.* All notices or other communications under this Agreement shall be in writing (including but not limited to electronic communications) and shall be given to the recipients indicated below:

Defendant:

Copy to Janssen's attorneys at:

Charles C. Lifland
Daniel R. Suvor
400 South Hope Street, 18th Floor Los Angeles, CA  90071
Phone: (213) 430-6000
clifland@omm.com
dsuvor@omm.com


For the Attorney General:

Clay Crenshaw
Chief Deputy Attorney General
Office of the Attorney General
State of Alabama
501 Washington Avenue
PO Box 300152
Montgomery, Alabama 36130
clay.crenshaw@alabamaag.gov

      and

Michael G. Dean
Assistant Attorney General
Consumer Interest Division
Office of the Attorney General
State of Alabama
501 Washington Avenue
Post Office Box 300152
Montgomery, Alabama 36130
michael.dean@alabamaag.gov

Any Party may change or add the contact information of the persons designated to receive notice on its behalf by notice given (effective upon the giving of such notice) as provided in this subsection.

O.    *No Waiver.* The waiver of any rights conferred hereunder shall be effective only if made by written instrument executed by the waiving Party or Parties. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, nor shall such waiver be deemed to be or construed as a waiver by any other Party.

P.    *Preservation of Privilege.* Nothing contained in this Agreement or any Consent Judgment, and no act required to be performed pursuant to this Agreement or any Consent Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint

16

defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

Q.   *Successors.* This Agreement shall be binding upon, and inure to the benefit of, Janssen and its respective successors and assigns. Janssen shall not sell the majority of its voting stock or substantially all its assets without obtaining the acquiror's agreement that it will constitute a successor with respect to Janssen's obligations under this Agreement.

R.   *Modification, Amendment, Alteration.* This Agreement may be modified, amended, or altered by a written agreement of the Parties or, in the case of the Consent Judgment, by court proceedings resulting in a modified judgment of the Court. For purposes of modifying this Agreement or the Consent Judgment, Janssen may contact the Alabama Attorney General to coordinate this process.

S.   *Governing Law.* Except as otherwise provided in the Agreement, this Agreement shall be governed by and interpreted in accordance with the laws of Alabama, without regard to the conflict of law rules of Alabama.

**Approved:**

Dated: 4-1-2022

JOHNSON & JOHNSON, JANSSEN PHARMACEUTICALS, INC., ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. N/K/A JANSSEN PHARMACEUTICALS, INC., AND JANSSEN PHARMACEUTICA INC. N/K/A JANSSEN PHARMACEUTICALS, INC.

By:

Marc Larkins
Assistant Corporate Secretary
Johnson & Johnson

Dated: 4/1/22

THE STATE OF ALABAMA

By:

Clay Crenshaw
Chief Deputy Attorney General
Alabama Attorney General's Office

17

## EXHIBIT A

### Janssen Predecessors and Former Affiliates

The following includes a non-exclusive list of Janssen's predecessors and former affiliates:

1. Janssen Pharmaceutica, Inc.
2. Janssen Pharmaceutica N.V.
3. Janssen-Cilag Manufacturing, LLC
4. Janssen Global Services, LLC
5. Janssen Ortho LLC
6. Janssen Products, LP
7. Janssen Research & Development, LLC
8. Janssen Supply Group, LLC
9. Janssen Scientific Affairs, LLC
10. JOM Pharmaceutical Services, Inc.
11. OMJ Pharmaceuticals, Inc.
12. Ortho-McNeil Finance Co.
13. Ortho-McNeil Pharmaceutical
14. Ortho-McNeil-Janssen Pharmaceuticals
15. Ortho-McNeil Pharmaceutical Services Division
16. Ortho-McNeil Neurologic
17. Patriot Pharmaceuticals, LLC
18. Pricara, Ortho-McNeil-Janssen Pharmaceuticals
19. Alza Corp.
20. Alza Development Corp.
21. Janssen Supply Chain, Alza Corp.
22. Noramco, Inc.
23. Tasmanian Alkaloids PTY LTD.

**EXHIBIT B**
**Settlement Participation Form**

| Governmental Entity: | State: |
|---|---|
| Authorized Official: | |
| Address 1: | |
| Address 2: | |
| City, State, Zip: | |
| Phone: | |
| Email: | |

The governmental entity identified above ("Governmental Entity"), in order to obtain and in consideration for the benefits provided to the Governmental Entity pursuant to the Settlement Agreement dated [X] ("Janssen Settlement"), and acting through the undersigned authorized official, hereby elects to participate in the Janssen Settlement, release all Released Claims against all Released Entities, and agrees as follows.

1. The Governmental Entity is aware of and has reviewed the Janssen Settlement, understands that all terms in this Election and Release have the meanings defined therein, and agrees that by this Election, the Governmental Entity elects to participate in the Janssen Settlement and become a Participating Subdivision or Special District as provided therein.

2. The Governmental Entity shall, within 30 days of the execution of this Settlement Participation Form, dismiss with prejudice any Released Claims that it has filed.

3. The Governmental Entity agrees to the terms of the Janssen Settlement pertaining to Subdivisions or Special Districts as defined therein.

4. By agreeing to the terms of the Janssen Settlement and becoming a Releasor, the Governmental Entity is entitled to the benefits provided therein, including, if applicable, monetary payments beginning after the Effective Date.

5. The Governmental Entity agrees to use any monies it receives through the Janssen Settlement solely for the purposes provided therein.

6. The Governmental Entity submits to the jurisdiction of the court in the Governmental Entity's state where the Consent Judgment is filed for purposes limited to that court's role as provided in, and for resolving disputes to the extent provided in, the Janssen Settlement.

7. The Governmental Entity has the right to enforce the Janssen Settlement as provided therein.

8. The Governmental Entity, as a Participating Subdivision or Special District, hereby becomes a Releasor for all purposes in the Janssen Settlement, including but not limited

to all provisions of Section IV (Release), and along with all departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, and any person in their official capacity elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, and any other entity identified in the definition of Releasor, provides for a release to the fullest extent of its authority. As a Releasor, the Governmental Entity hereby absolutely, unconditionally, and irrevocably covenants not to bring, file, or claim, or to cause, assist or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Janssen Settlement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of the Governmental Entity to release claims. The Janssen Settlement shall be a complete bar to any Released Claim.

9. In connection with the releases provided for in the Janssen Settlement, each Governmental Entity expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Governmental Entity hereby expressly waives and fully, finally, and forever settles, releases and discharges, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Governmental Entities' decision to participate in the Janssen Settlement.

10. This Settlement Participation Form shall be deemed effective as of the Effective Date of the Janssen Settlement.

11. Nothing herein is intended to modify in any way the terms of the Janssen Settlement, to which Governmental Entity hereby agrees. To the extent this Election and Release is interpreted differently from the Janssen Settlement in any respect, the Janssen Settlement controls.

I have all necessary power and authorization to execute this Election and Release on behalf of the Governmental Entity.

Signature: _____

Name: _____

Title: _____

Date: _____

## EXHIBIT C

## Injunctive Relief

A.  **Definitions Specific to this Exhibit**

1.  *"Cancer-Related Pain Care"* means care that provides relief from pain resulting from a patient's active cancer or cancer treatment as distinguished from treatment provided during remission.

2.  *"Janssen"* means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively, "Janssen"), including all of their subsidiaries, predecessors, successors, current officers, directors, employees, representatives, agents, affiliates, parents, and assigns acting on behalf of Janssen in the United States.

3.  *"End-of-Life Care"* means care for persons with a terminal illness or at high risk for dying in the near future in hospice care, hospitals, long-term care settings, or at home.

4.  *"Health Care Provider"* means any U.S.-based physician or other health care practitioner who is licensed to provide health care services or to prescribe pharmaceutical products and any medical facility, practice, hospital, clinic, or pharmacy.

5.  *"In-Kind Support"* means payment or assistance in the form of goods, commodities, services, or anything else of value.

6.  *"Lobby"* and *"Lobbying"* shall have the same meaning as "lobbying activities" and "lobbying contacts" under the federal lobbying disclosure act, 2 U.S.C. § 1602 *et seq.*, and any analogous state or local provisions governing the person or entity being lobbied. As used in this document, "Lobby" and "Lobbying" include Lobbying directly or indirectly, through grantees or Third Parties.

7.  *"Opioid(s)"* means all naturally occurring, synthetic, or semisynthetic substances that interact with opioid receptors and act like opium. For the avoidance of doubt, the term "Opioid(s)" does not include Imodium.

8.  *"Opioid Product(s)"* means all current and future medications containing Opioids approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II, III, or IV drugs pursuant to the federal Controlled Substances Act (including but not limited to buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, and tramadol). The term "Opioid Products(s)" shall not include (i) methadone and other substances when used exclusively to treat opioid abuse, addiction, or overdose; or (ii) raw materials, immediate precursors, and/or active pharmaceutical ingredients (APIs) used in the manufacture or study of Opioids or

22

Opioid Products, but only when such materials, immediate precursors, and/or APIs are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers.

9.  *"OUD"* means opioid use disorder defined in the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–5)*, as updated or amended.

10.  *"Product(s) for the Treatment of Opioid-Induced Side Effects"* means any over-the-counter or prescription remedy used to treat those side effects identified on the FDA label for any Opioid Product, except that, for purposes of the Agreement, Product(s) for the Treatment of Opioid-Induced Side Effects shall not include products that treat OUD or respiratory depression.

11.  *"Promote,"* *"Promoting,"* *"Promotion,"* and *"Promotional"* means dissemination of information or other practices intended or reasonably anticipated to increase sales, prescriptions, or that attempts to influence prescribing practices in the United States.  These terms shall not include the provision of scientific information or data in response to unsolicited requests from Health Care Providers or payors as allowed in subsection C.2.e-h.

12.  *"Third Party(ies)"* means any person or entity other than Janssen or a government entity.

13.  *"Treatment of Pain"* means the provision of therapeutic modalities to alleviate or reduce pain.

14.  *"Unbranded Information"* means any information that does not identify a specific branded or generic product.

a  **Ban on Selling and Manufacturing Opioids**

1.  Janssen shall not manufacture or sell any Opioids or Opioid Products for distribution in the State of Alabama. Janssen represents that prior to the Effective Date, it de-listed all of its Opioid Products and no longer ships any of them to or within the United States. Janssen shall provide notice to the State of Alabama when the last of the inventory Janssen has shipped has expired.

2.  Notwithstanding subsection B.1 above, Janssen may continue to manufacture Nucynta and Nucynta ER (collectively "Nucynta") in accordance with the terms of its April 2, 2015 contract with Depomed, Inc., rights to which were assigned to Collegium Pharmaceutical, Inc. ("Collegium") on February 13, 2020, so long as Janssen is not Promoting Nucynta, or selling Nucynta to anyone other than Collegium. Janssen shall not extend, amend, or otherwise alter the terms of its April 2, 2015 contract or enter into any similar agreement related to Nucynta or any other Opioid or Opioid Product. For the term of its April 2, 2015 contract, or until the expiration of subsection B.1, whichever is shorter, Janssen shall make an annual report to the State of Alabama showing the amount of Nucynta manufactured in accordance with the April 2, 2015 contract.

23

C.    **Ban on Promotion**

1.    Janssen shall not engage in Promotion of Opioids or Opioid Products including but not limited to, by:

   a.    Employing or contracting with sales representatives or other persons to Promote Opioids or Opioid Products to Health Care Providers or patients, or to persons involved in determining the Opioid Products included in formularies;

   b.    Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events for Promotion of Opioids or Opioid Products;

   c.    Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs for Promotion of Opioids or Opioid Products;

   d.    Creating, sponsoring, operating, controlling, or otherwise providing financial support or In-Kind Support to any website, network, and/or social or other media account for the Promotion of Opioids or Opioid Products;

   e.    Creating, sponsoring, distributing, or otherwise providing financial support or In-Kind Support for materials Promoting Opioids or Opioid Products, including but not limited to brochures, newsletters, pamphlets, journals, books, and guides;

   f.    Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Opioids or Opioid Products, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements; and

   g.    Engaging in internet search engine optimization or other techniques designed to Promote Opioids or Opioid Products by improving rankings or making content appear among the top results in an internet search or otherwise be more visible or more accessible to the public on the internet.

2.    Notwithstanding subsection C.1 directly above, Janssen may:

   a.    Maintain a corporate website;

   b.    Maintain a website for any Opioid Product that contains principally the following content: the FDA-approved package insert, medication guide, and labeling, and a statement directing patients or caregivers to speak with a licensed Health Care Provider;

24

c.     Provide information or support the provision of information as expressly
       required by law or any state or federal government agency with
       jurisdiction in Alabama;

d.     Provide the following by mail, electronic mail, on or through Janssen's
       corporate or product websites or through other electronic or digital
       methods: FDA-approved package insert, medication guide, approved
       labeling for Opioid Products, or other prescribing information for Opioid
       Products that are published by a state or federal government agency with
       jurisdiction in Alabama;

e.     Provide scientific and/or medical information in response to an unsolicited
       request by a Health Care Provider consistent with the standards set forth in
       the FDA's Draft Guidance for Industry, *Responding to Unsolicited
       Requests for Off-Label Information About Prescription Drugs and
       Medical Devices* (Dec. 2011) as updated or amended by the FDA, and
       Guidance for Industry, *Good Reprint Practices for the Distribution of
       Medical Journal Articles and Medical or Scientific Reference Publications
       on Unapproved New Uses of Approved Drugs and Approved or Cleared
       Medical Devices* (Jan. 2009) as updated or amended by the FDA;

f.     Provide a response to any unsolicited question or request from a patient or
       caregiver, directing the patient or caregiver to the FDA-approved labeling
       or to speak with a licensed Health Care Provider without describing the
       safety or effectiveness of Opioids or any Opioid Product or naming any
       specific provider or healthcare institution; or directing the patient or
       caregiver to speak with their insurance carrier regarding coverage of an
       Opioid Product;

g.     Provide Health Care Economic Information, as defined at 21 U.S.C. §
       352(a), to a payor, formulary committee, or other similar entity with
       knowledge and expertise in the area of health care economic analysis
       consistent with standards set forth in the FDA's Draft Questions and
       Answers Guidance for Industry and Review Staff, *Drug and Device
       Manufacturer Communications With Payors, Formulary Committees, and
       Similar Entities* (Jan. 2018), as updated or amended by the FDA;

h.     Provide information relating solely to the pricing of any Opioid Product;

i.     Sponsor or provide financial support or In-Kind Support for an accredited
       or approved continuing medical education program required by either an
       FDA-approved Risk Evaluation and Mitigation Strategy (REMS) program
       or other federal or state law or regulation applicable in Alabama through
       an independent Third Party, which shall be responsible for the program's
       content without the participation of Janssen; and

j.     Provide information in connection with patient support information on co-pay assistance and managing pain in End-of-Life Care and/or Cancer-Related Pain Care relating to the use of Opioids for managing such pain, as long as the information identifies Janssen as the source of the information.

3.    Janssen shall not engage in the Promotion of Products for the Treatment of Opioid-induced Side Effects, including but not limited to:

a.    Employing or contracting with sales representatives or other persons to Promote Products for the Treatment of Opioid-induced Side Effects to Health Care Providers or patients;

b.    Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events to Promote Products for the Treatment of Opioid induced Side Effects;

c.    Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs that Promote Products for the Treatment of Opioid-induced Side Effects;

d.    Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Products for the Treatment of Opioid-induced Side Effects, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements.

4.    Notwithstanding subsection C, Janssen may Promote Products for the Treatment of Opioid-induced Side Effects so long as such Promotion does not associate the product with Opioids or Opioid Products.

5.    Treatment of Pain

a.    Janssen shall not, either through Janssen or through Third Parties, engage in any conduct that Promotes the Treatment of Pain, except that Janssen may continue to Promote the Treatment of Pain with branded non-Opioids, including Tylenol and Motrin.

b.    Janssen shall not, either through Janssen or through Third Parties, engage in any conduct that Promotes the concept that pain is undertreated, except in connection with Promoting the use of branded non-Opioids, including Tylenol and Motrin, for the Treatment of Pain.

c.    Janssen shall not disseminate Unbranded Information, including Unbranded Information about a medical condition or disease state, that contains links to branded information about Opioid Products or that otherwise Promotes Opioids or Opioid Products.

6. Notwithstanding subsection C.5 above:

    a. Janssen may Promote or provide educational information about the Treatment of Pain with non-Opioids or therapies such as acetaminophen or non-steroidal anti-inflammatory drugs (NSAIDS), including Promoting or providing educational information about such non-Opioids or therapies as alternatives to Opioid use, or as part of multimodal therapy which may include Opioid use, so long as such non-Opioid Promotional or educational information does not Promote Opioids or Opioid Products.

    b. Janssen may provide educational information about the Treatment of Pain related to medical procedures involving devices manufactured or sold by Janssen, including educational information about Opioids or Opioid Products, so long as such information does not Promote Opioids or Opioid Products.

7. The Promotional conduct prohibited in subsection C is not prohibited insofar as it relates to the Promotion of Opioids or Opioid Products for Cancer-Related Pain Care or End-of-Life Care only, and so long as Janssen is identified as the sponsor or source of such Promotional conduct.

D. **No Financial Reward or Discipline Based on Volume of Opioid Sales**

1. Janssen shall not provide financial incentives to its sales and marketing employees or discipline its sales and marketing employees based upon sales volume or sales quotas for Opioid Products;

2. Janssen shall not offer or pay any remuneration (including any kickback, bribe, or rebate) directly or indirectly, to any person in return for the prescribing, sale, use, or distribution of an Opioid Product; and

3. Janssen's compensation policies and procedures shall ensure compliance with the Agreement.

E. **Ban on Funding/Grants to Third Parties**

1. Janssen shall not directly or indirectly provide financial support or In-Kind Support to any Third Party that primarily engages in conduct that Promotes Opioids, Opioid Products, or Products for the Treatment of Opioid-induced Side Effects (subject to subsections B.2, 4, and 6), including educational programs or websites that Promote Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects, excluding financial support otherwise required by the Agreement, a court order, or by a federal or state agency.

2. Janssen shall not create, sponsor, provide financial support or In-Kind Support to, or otherwise operate or control any medical society or patient advocacy group that primarily engages in conduct that Promotes Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects.

27

3.      Janssen shall not provide links to any Third Party website or materials or otherwise distribute materials created by a Third Party for the purpose of Promoting Opioids, Opioid Products, or products intended for the treatment of Opioid-induced side effects (subject to subsections B.2, 4, and 6).

4.      Janssen shall not use, assist, or employ any Third Party to engage in any activity that Janssen itself would be prohibited from engaging in pursuant to the Agreement. To the extent Janssen supports trade groups engaged in Lobbying, Janssen shall stipulate that such support not be used for any purpose prohibited by the Agreement.

5.      Janssen shall not enter into any contract or agreement with any person or entity or otherwise attempt to influence any person or entity in such a manner that has the purpose or foreseeable effect of limiting the dissemination of information regarding the risks and side effects of using Opioids.

6.      Janssen shall not compensate or support Health Care Providers or organizations to advocate for formulary access or treatment guideline changes for the purpose of increasing access to any Opioid Product through third-party payors, i.e., any entity, other than an individual, that pays or reimburses for the dispensing of prescription medicines, including but not limited to managed care organizations and pharmacy benefit managers.

7.      No officer or management-level employee of Janssen may concurrently serve as a director, board member, employee, agent, or officer of any entity that primarily engages in conduct that Promotes Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects. For the avoidance of doubt, nothing in this provision shall preclude an officer or management-level employee of Janssen from concurrently serving on the board of a hospital.

8.      Janssen shall play no role in appointing persons to the board, or hiring persons to the staff, of any entity that primarily engages in conduct that Promotes Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects. For avoidance of doubt, nothing in this paragraph shall prohibit Janssen from fully and accurately responding to unsolicited requests or inquiries about a person's fitness to serve as an employee or Board member at any such entity.

F.    **Lobbying Restrictions**

1.      Janssen shall not Lobby for the enactment of any federal, state, or local legislative or regulatory provision that:

a.      Encourages or requires Health Care Providers to prescribe Opioids or sanctions Health Care Providers for failing to prescribe Opioids or failing to treat pain with Opioids;

b.      Has the effect of limiting access to any non-Opioid alternative pain treatments; or

28

    c.      Pertains to the classification of any Opioid or Opioid Product as a scheduled drug under the Controlled Substances Act.

2.    Janssen shall not Lobby against the enactment of any federal, state or local legislative or regulatory provision that supports:

    a.      The use of non-pharmacologic therapy and/or non-Opioid pharmacologic therapy to treat chronic pain over or instead of Opioid use, including but not limited to third party payment or reimbursement for such therapies;

    b.      The use and/or prescription of immediate release Opioids instead of extended release Opioids when Opioid use is initiated, including but not limited to third party reimbursement or payment for such prescriptions;

    c.      The prescribing of the lowest effective dose of an Opioid, including but not limited to third party reimbursement or payment for such prescription;

    d.      The limitation of initial prescriptions of Opioids to treat acute pain;

    e.      The prescribing and other means of distribution of naloxone to minimize the risk of overdose, including but not limited to third party reimbursement or payment for naloxone;

    f.      The use of urine testing before starting Opioid use and annual urine testing when Opioids are prescribed, including but not limited to third party reimbursement or payment for such testing;

    g.      Evidence-based treatment (such as using medication-assisted treatment with buprenorphine or methadone in combination with behavioral therapies) for OUD, including but not limited to third party reimbursement or payment for such treatment; or

    h.      The implementation or use of Opioid drug disposal systems.

3.    Janssen shall not Lobby against the enactment of any federal, state or local legislative or regulatory provision expanding the operation or use of PDMPs, including but not limited to provisions requiring Health Care Providers to review PDMPs when Opioid use is initiated and with every prescription thereafter.

4.    Notwithstanding the foregoing restrictions in subsections F.1-3, the following conduct is not restricted:

    a.      Challenging the enforcement of or suing for declaratory or injunctive relief with respect to legislation, rules, or regulations referred to in subsection F.1;

    b.      Communications made by Janssen in response to a statute, rule, regulation, or order requiring such communication;

29

      c.      Communications by a Janssen representative appearing before a federal or state legislative or administrative body, committee, or subcommittee as result of a mandatory order or subpoena commanding that person to testify;

      d.      Responding, in a manner consistent with the Agreement, to an unsolicited request for the input on the passage of legislation or the promulgation of any rule or regulation when such request is submitted in writing specifically to Janssen from a government entity directly involved in the passage of that legislation or promulgation of that rule or regulation; or

      e.      Lobbying for or against provisions of legislation or regulation that address other subjects in addition to those identified in subsections F.1-3, so long as the company does not support specific portions of such legislation or regulation covered by subsection F.1 or oppose specific portions of such legislation or regulation covered by subsections F.2-3.

5.      Janssen shall provide notice of the prohibitions in subsection F to all employees engaged in Lobbying; shall incorporate the prohibitions in subsection F into trainings provided to Janssen employees engaged in Lobbying; and certify to the State of Alabama that it has provided such notice and trainings to Janssen employees engaged in Lobbying.

## G.    Ban on Prescription Savings Programs

1.      Janssen shall not directly or indirectly offer any discounts, coupons, rebates, or other methods which have the effect of reducing or eliminating a patient's co-payments or the cost of prescriptions (e.g., free trial prescriptions) for any Opioid Product.

2.      Janssen shall not directly or indirectly provide financial support to any Third Party for discounts, coupons, rebates, or other methods which have the effect of reducing or eliminating a patient's co-payments or the cost of prescriptions (e.g., free trial prescriptions) for any Opioid Product.

3.      Janssen shall not directly or indirectly assist patients, Health Care Providers, or pharmacies with the claims and/or prior authorization process required for third-party payors to approve payment for any Opioid Product.

## H.    General Terms

1.      Janssen shall not make any written or oral statement about Opioids or any Opioid Product that is unfair, false, misleading, or deceptive as defined under the law of Alabama State.  For purposes of this paragraph, "Opioid Product" shall also include methadone and other substances when used exclusively to treat opioid abuse, addiction, or overdose.

30

2.   Janssen shall not represent that Opioids or any Opioid Product(s) have approvals, characteristics, uses, benefits, or qualities that they do not have.  For purposes of this paragraph, "Opioid Product" shall also include methadone and other substances when used exclusively to treat opioid abuse, addiction, or overdose.

3.   For the avoidance of doubt, the Agreement shall not be construed or used as a waiver or limitation of any defense otherwise available to Janssen in any action, and nothing in the Agreement is intended to or shall be construed to prohibit Janssen in any way whatsoever from taking legal or factual positions with regard to any Opioid Product(s) in defense of litigation or other legal proceedings.

4.   Upon the request of the State of Alabama Attorney General, Janssen shall provide the Alabama Attorney General with copies of the following, within thirty (30) days of the request:

   a.   Any litigation or civil or criminal law enforcement subpoenas or Civil Investigative Demands relating to Janssen's Opioid Product(s); and

   b.   Warning or untitled letters issued by the FDA regarding Janssen's Opioid Product(s) and all correspondence between Janssen and the FDA related to such letters.

5.   The Agreement applies to conduct that results in the Promotion of Opioids or Opioid Products, or the Treatment of Pain inside the United States.

6.   Janssen will enter into the Agreement solely for the purpose of settlement, and nothing contained therein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Janssen expressly denies. No part of the Agreement, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Janssen. The Agreement is not intended for use by any third party for any purpose, including submission to any court for any purpose.

7.   Nothing in the Agreement shall be construed to limit or impair Janssen's ability to:

   a.   Communicate its positions and respond to media inquiries concerning litigation, investigations, reports or other documents or proceedings relating to Janssen or its Opioid Products.

   b.   Maintain a website explaining its litigation positions and responding to allegations concerning its Opioid Products, including the website, www.factsaboutourprescriptionopioids.com.

I.   **Compliance with All State Laws and Regulations Relating to the Sale, Promotion, and Distribution of Any Opioid Product**

1. Janssen shall comply with all applicable state laws and regulations that relate to the sale, promotion, distribution, and disposal of Opioids or Opioid Products, including conduct permitted by subsection B.2, provided that nothing in this paragraph requires Janssen to violate federal law or regulations, including but not limited to:

   a. Alabama State Controlled Substances Act, including all guidance issued by the applicable state regulator(s);

   b. Alabama State Consumer Protection Laws;

   c. Alabama State laws, regulations, and guidelines related to opioid prescribing, distribution, and disposal; and

J. **Clinical Data Transparency**

1. Janssen agrees to continue sharing clinical trial data under the Yale University Open Data Access (YODA) Project to allow researchers qualified under the program to access the company's propriety data under the terms of the project.

2. In the event Yale University discontinues or withdraws from the YODA Project agreement with Janssen, Janssen shall make its clinical research data regarding Opioids and Opioid Products, and any additional clinical research data that Janssen sponsors and controls regarding Opioids and Opioid Products, available to an independent entity that is the functional equivalent of the YODA Project under functionally equivalent terms.

K. **Enforcement**

1. For the purposes of resolving disputes with respect to compliance with this Exhibit, should the State of Alabama have a reasonable basis to believe that Janssen has engaged in a practice that violates a provision of this Exhibit subsequent to the Effective Date, the State of Alabama shall notify Janssen in writing of the specific objection, identify with particularity the provision of the Agreement that the practice appears to violate, and give Janssen thirty (30) days to respond in writing to the notification; provided, however, that the State of Alabama may take any action if the State believes that, because of the specific practice, a threat to health or safety of the public requires immediate action.

2. Upon receipt of written notice, Janssen shall provide a good faith written response to the State's notification, containing either a statement explaining why Janssen believes it is in compliance with the provisions of this Exhibit of the Agreement, or a detailed explanation of how the alleged violation occurred and a statement explaining how Janssen intends to remedy the alleged breach. Nothing in this section shall be interpreted to limit the State of Alabama's civil investigative demand ("CID") or investigative subpoena authority, to the extent such authority exists under applicable law, and Janssen reserves all of its rights in responding to a CID or investigative subpoena issued pursuant to such authority.

3.     The State of Alabama may agree, in writing, to provide Janssen with additional time beyond thirty (30) days to respond to a notice provided under subsection L.1, above, without Court approval.

4.     Upon giving Janssen thirty (30) days to respond to the notification described above, the State shall also be permitted reasonable access to inspect and copy relevant, non-privileged, non-work product records and documents in possession, custody, or control of Janssen that relate to Janssen's compliance with each provision of the Agreement pursuant to the State of Alabama's CID or investigative subpoena authority.

5.     The State of Alabama may assert any claim that Janssen has violated the Agreement in a separate civil action to enforce compliance with the Agreement, or may seek any other relief afforded by law for violations of the Agreement, but only after providing Janssen an opportunity to respond to the notification described in subsection L.1, above; provided, however, the State of Alabama may take any action if the State believes that, because of the specific practice, a threat to the health or safety of the public requires immediate action.

6.     In the event of a conflict between the requirements of the Agreement and any other law, regulation, or requirement such that Janssen cannot comply with the law without violating the terms of the Agreement or being subject to adverse action, including fines and penalties, Janssen shall document such conflicts and notify the State of the extent to which it will comply with the Agreement in order to eliminate the conflict within thirty (30) days of Janssen's discovery of the conflict. Janssen shall comply with the terms of the Agreement to the fullest extent possible without violating the law.

7.     Janssen or the State may request that Janssen and the State meet and confer regarding the resolution of an actual or potential conflict between the Agreement and any other law, or between interpretations of the Agreement by different courts. Nothing herein is intended to modify or extend the jurisdiction of any single judicial authority as provided by law.

L.    **Compliance Duration**

1.     Subsections B-J of this Exhibit shall be effective for 10 years from the Effective Date.

2.     Nothing in this Agreement shall relieve Janssen of its independent obligation to fully comply with the laws of the State of Alabama after expiration of the 10-year period specified in this subsection.

M.    **Compliance Deadlines**

1.     Janssen must be in full compliance with the provisions included this Agreement by the Effective Date. Nothing herein shall be construed as permitting Janssen to avoid existing legal obligations.

## EXHIBIT D

### Non-Released Entities

The following includes a non-exclusive list of non-Released Entities:

1. Actavis LLC
2. Actavis Pharma, Inc.
3. Allergan PLC
4. Allergan Finance, LLC
5. AmerisourceBergen Corporation
6. AmerisourceBergen Drug Corporation
7. Anda, Inc.
8. Cardinal Health, Inc.
9. Cephalon, Inc.
10. Collegium Pharmaceuticals
11. CVS Health Corp.
12. CVS Pharmacy, Inc.
13. Endo Pharmaceuticals Inc.
14. Endo Health Solutions Inc.
15. Mallinckrodt LLC
16. McKesson Corporation
17. McKinsey & Company Inc.
18. Par Pharmaceutical, Inc.
19. Par Pharmaceutical Companies, Inc.
20. Purdue Pharma L.P.
21. Purdue Pharma Inc.
22. SpecGx LLC
23. Teva Pharmaceuticals USA, Inc.
24. The Purdue Frederick Company
25. Walgreen Co.
26. Walgreens Boots Alliance, Inc.
27. Walmart Inc.
28. Watson Laboratories, Inc.

**EXHIBIT E**

**Template Consent Judgment**

[CASE]                                                    [COURT]

                                                         C.A. NO.:

**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE**

The State of Alabama ("*State*") and Johnson & Johnson, Janssen Pharmaceuticals, Inc.,

Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively,

"*Janssen*" or "*Defendants*") (together with the State, the "*Parties*," and each a "*Party*") have

entered into a consensual resolution of the above-captioned litigation (the "*Action*") pursuant to a

settlement agreement entitled Janssen Alabama State-Wide Opioid Settlement Agreement, dated

as of April 1, 2022 (the "*Agreement*"), a copy of which is attached hereto as Exhibit A.  The

entry of this Final Consent Judgment (the "*Judgment*") by the Court is made without trial or

adjudication of any contested issue of fact or law, and without finding or admission of

wrongdoing or liability of any kind.

**RECITALS:**

1.      Each Party warrants and represents that it engaged in arm's-length negotiations in

good faith.  In hereby executing the Agreement, the Parties intend to effect a good-faith settlement.

2.      The State has determined that the Agreement is in the public interest.

3.      Janssen denies the allegations against it and that it has any liability whatsoever to

the State, its Subdivisions or Special Districts, and/or (a) any of the State's or Subdivisions' or

35

Special Districts' departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, including its Attorney General and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public.

4. The Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation.

5. The Parties agree to the entry of the injunctive relief terms pursuant to Exhibit C of the Agreement.

6. Therefore, without any admission of liability or wrongdoing by Janssen or any other Released Entities (as defined in the Agreement), the Parties now mutually consent to the entry of this Judgment and agree to dismissal of the claims with prejudice pursuant to the terms of the Agreement to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

In consideration of the mutual promises, terms, and conditions set forth in the Agreement, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendants and the State, and adjudicated by the Court, as follows:

1. The foregoing Recitals are incorporated herein and constitute an express term of this Judgment.

36

2.     The Parties have entered into a full and final settlement of all Released Claims of Releasors against Janssen (including but not limited to the State) and the Released Entities pursuant to the terms and conditions set forth in the Agreement.

3.     The "Definitions" set forth in Section II of the Agreement are incorporated by reference into this Judgment. Unless otherwise defined herein, capitalized terms in this Judgment shall have the same meaning given to them in the Agreement.

4.     The Parties agree that the Court has jurisdiction over the subject matter of the Action and over the Parties with respect to the Action and this Judgment. This Judgment shall not be construed or used as a waiver of any jurisdictional defense Janssen or any other Released Entity may raise in any other proceeding.

5.     The Court finds that the Agreement was entered into in good faith.

6.     The Court finds that entry of this Judgment is in the public interest and reflects a negotiated settlement agreed to by the Parties. The Action is dismissed with prejudice, subject to a retention of jurisdiction by the Court as provided herein and in the Agreement.

7.     By this Judgment, the Agreement is hereby approved by the Court, and the Court hereby adopts the Agreement's terms as its own determination of this matter and the Parties' respective rights and obligations.

8.     The Court shall have authority to resolve disputes identified in Section X of the Agreement, governed by the rules and procedures of the Court.

9.     [By this Judgment, *[the State-Subdivision/Special District Agreement] [name of state's agreement]*, a copy of which is attached hereto as Exhibit [X] and as incorporated into the Agreement, is hereby approved by the Court as the means by which relevant funds paid pursuant to the Agreement will be divided within the State, subject to the full acceptance by any Subdivision

and Special District receiving such funds of the terms of the Agreement, including the releases

provided therein. [Add any state-specific language necessary for the effectiveness of the state-

subdivision/special district agreement.]]

      10.    The Parties have satisfied all conditions to effectiveness of the Agreement,

including as follows:

      a.    The Attorney General of the State exercised the fullest extent of his or her powers to release Janssen and all other Released Entities from all Released Claims pursuant to the release attached hereto as Exhibit B (the "*Release*").

      b.    The Settlement Participation Form for each Participating Subdivision and Special District in the State has been delivered to Janssen. As stated in the Settlement Participation Form, and for the avoidance of doubt, nothing in the Settlement Participation Form executed by the Participating Subdivisions and Special Districts is intended to modify in any way the terms of the Agreement to which the Participating Subdivisions and Special Districts agree. As stated in the Settlement Participation Form, to the extent the executed version of the Settlement Participation Form differs from the Agreement in any respect, the Agreement controls.

      c.    Pursuant to the Settlement Participation Form, each Participating Subdivision and Special District in the State is dismissing with prejudice any Released Claims that it has filed against Janssen and the Released Entities.

      11.    <u>Release</u>.  The Parties acknowledge that the Release, which is incorporated by

reference herein, is an integral part of this Judgment. Pursuant to the Agreement and the Release

and without limitation and to the maximum extent of the power of the State's Attorney General,

Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and

all Released Claims of (a) the State and its Participating Subdivisions and Special Districts and

any of their departments, agencies, divisions, boards, commissions, Subdivisions, districts,

instrumentalities of any kind and attorneys, including the State's Attorney General, and any person

in his or her official capacity whether elected or appointed to serve any of the foregoing, and any

agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities,

public instrumentalities, public educational institutions, unincorporated districts, fire districts,

irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in the State, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State or any Subdivision or Special District in the State, whether or not any of them participate in the Agreement.   Pursuant to the Agreement and the Release and to the maximum extent of the State's power, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the State, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, (3) any of the State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license, and (4) any Participating Subdivision and Special District.  For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor.  Further, the provisions set forth in Section IV of the Agreement are incorporated by reference into this Judgment as if fully set forth herein.  The Parties acknowledge, and the Court finds, that those provisions are an integral part of the Agreement and this Judgment, and shall govern the rights and obligations of all participants in the settlement.  Any modification of those rights and obligations may be made based only on a writing signed by all affected parties and approved by the Court.

12. <u>Release of Unknown Claims.</u>  The State expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory

of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

13.    The State may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the State expressly waived and fully, finally, and forever settled, released and discharged, through the Agreement and Release, any and all Released Claims that may exist as of the Effective Date but which the State does not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would have materially affected the State's decision to enter into the Agreement.

14.    [[If State has statute that releases or bars opioid claims add state specific language re: statute]]

15.    Costs and Fees. The Parties will bear their own costs and attorneys' fees except as otherwise provided in the Agreement.

16.    No Admission of Liability. Defendants are consenting to this Judgment solely for the purpose of effectuating the Agreement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Defendants expressly deny. No Defendant or Released Entity admits that it caused or contributed to any public nuisance, and no Defendant or Released Entity admits any wrongdoing that was or could have been alleged by the State, its Participating Subdivisions and/or Participating Special Districts, or any other person or entity. No part of this Judgment shall constitute evidence of any liability, fault, or

wrongdoing by Defendants or any other Released Entity.  The Parties acknowledge that payments made under the Agreement are not a fine, penalty, or payment in lieu thereof.

17.    No Waiver.  This Judgment is entered based on the Agreement without trial or adjudication of any contested issue of fact or law or finding of liability of any kind.  This Judgment shall not be construed or used as a waiver of Janssen's right, or any other Released Entity's right, to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Judgment. Notwithstanding the foregoing, the State may enforce the terms of this Judgment as expressly provided in the Agreement.

18.    No Private Right of Action.  This Judgment is not intended for use by any third party for any purpose, including submission to any court for any purpose, except pursuant to Section X of the Agreement.  Except as expressly provided in the Agreement, no portion of the Agreement or this Judgment shall provide any rights to, or be enforceable by, any person or entity that is not the State or Released Entity.  The State shall allow Participating Subdivisions and Special Districts in the State to notify it of any perceived violations of the Agreement or this Judgment. The State may not assign or otherwise convey any right to enforce any provision of the Agreement.

19.    Admissibility.  It is the intent of the Parties that this Judgment not be admissible in other cases against Defendants or binding on Defendants in any respect other than in connection with the enforcement of this Judgment or the Agreement.  For the avoidance of doubt, nothing herein shall prohibit Defendants from entering this Judgment or the Agreement into evidence in any litigation or arbitration concerning (1) Defendants' right to coverage under an insurance contract or (2) the enforcement of the releases provided for by the Agreement and this Judgment.

41

20.    <u>Preservation of Privilege</u>.  Nothing contained in the Agreement or this Judgment, and no act required to be performed pursuant to the Agreement or this Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

21.    <u>Mutual Interpretation</u>.  The Parties agree and stipulate that the Agreement was negotiated on an arm's-length basis between parties of equal bargaining power and was drafted jointly by counsel for each Party.  Accordingly, the Agreement is incorporated herein by reference and shall be mutually interpreted and not construed in favor of or against any Party, except as expressly provided for in the Agreement.

22.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction of the Parties for the limited purpose of the resolution of disputes identified in Section X of the Agreement.  The Court shall have jurisdiction over Participating Subdivisions and Special Districts in the State for the limited purposes identified in the Agreement.

23.    <u>Successors and Assigns</u>.  This Judgment is binding on Defendants' successors and assigns.

24.    <u>Modification</u>.  This Judgment shall not be modified (by the Court, by any other court, or by any other means) without the consent of the State and Defendants, or as provided for in Section XI.R of the Agreement.

So ORDERED this _____ day of [[*]], 2022.

Enter:                                              By Order:

_____        _____

**APPROVED, AGREED TO AND PRESENTED BY:**

[[SIGNATURE BLOCKS]]

## EXHIBIT F[1]

### Litigating Subdivisions and Special Districts

1. Abbeville City
2. Alabaster City
3. Albertville City
4. Alexander City
5. Anniston City
6. Arab City
7. Argo Town
8. Ashland Town
9. Ashville City
10. Athens City
11. Attalla City
12. Auburn City
13. Autauga County
14. Baldwin County
15. Barbour County
16. Bay Minette City
17. Berry Town
18. Bessemer City
19. Bibb County
20. Bibb County Healthcare Authority
21. Birmingham City
22. Blount County
23. Boaz City
24. Brent City
25. Brewton City
26. Bridgeport City
27. Brookwood Town
28. Brundidge City
29. Bullock County
30. Butler County
31. Butler Town
32. Calera City
33. Calhoun County
34. Camp Hill Town
35. Carbon Hill City
36. Cedar Bluff Town
37. Center Point City
38. Centre City
39. Centreville City
40. Chambers County
41. Cherokee County
42. Cherokee Town
43. Chickasaw City
44. Chilton County
45. Choctaw County
46. Clanton City
47. Clarke County
48. Clay County
49. Cleburne County
50. Cleveland Town
51. Coffee County
52. Colbert County
53. Columbiana City
54. Conecuh County
55. Coosa County
56. Cordova City
57. Covington County
58. Crenshaw County
59. Cullman City
60. Cullman County
61. Dadeville City
62. Dale County
63. Dale County Healthcare Authority
64. Daleville City
65. Dallas County
66. Daphne City
67. Dauphin Island Town
68. DCH Health Care Authority
69. De Kalb County
70. Decatur City
71. Demopolis City
72. Dora City
73. Dothan City
74. Double Springs Town
75. Douglas Town
76. East Brewton City
77. Elmore County
78. Enterprise City
79. Escambia County
80. Etowah County
81. Eufaula City
82. Evergreen City

---

[1] The Parties to this agreement agree that Special Districts shall not include entities that are in fact private for-profit or 501(c)(3) organizations and that are not owned or operated by a Subdivision or Special District. The Parties have agreed that Health Care Authorities created under Ala. Code 22-21-310 et seq. and County Boards of Health are correctly identified as Special Districts. Janssen has previously identified the following entities as Special Districts: Mobile County Emergency Medical Services System Rescue Squad, J. Paul Jones Hospital, Attentus Mouton, LLC d/b/a Lawrence Medical Center, Cullman Regional Medical Center, Inc. The State believes they are not. If evidence comes to light within 30 days of execution of this agreement that these entities are not private for-profit or 501(c)(3) organizations, or that an entity identified as a Health Care Authority in this Exhibit F is in fact not a Health Care Authority, the Parties will revisit the issue with respect to these entities.

83. Fairfield City
84. Fairhope City
85. Family Oriented Primary Health Care Clinic
86. Faunsdale Town
87. Fayette City
88. Fayette County
89. Florence City
90. Foley City
91. Fort Deposit Town
92. Fort Payne City
93. Franklin County
94. Fultondale City
95. Gadsden City
96. Geneva City
97. Geneva County
98. Geneva County Health Care Authority
99. Georgiana Town
100. Geraldine Town
101. Gilbertown Town
102. Grant Town
103. Graysville City
104. Greene County
105. Greensboro City
106. Greenville City
107. Guin City
108. Gulf Shores City
109. Guntersville City
110. Gurley Town
111. Hale County
112. Haleyville City
113. Hamilton City
114. Hammondville Town
115. Hartselle City
116. Headland City
117. Health Care Authority of Clarke County
118. Health Care Authority of Cullman County
119. Health Care Authority of Morgan County - Decatur City
120. Health Care Authority of the City of Huntsville d/b/a HH Health System
121. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital
122. Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital for Women and Children
123. Health Care Authority of the City of Huntsville d/b/a Madison Hospital
124. Healthcare Authority for Baptist Health
125. Helena City
126. Henagar City
127. Henry County
128. Homewood City
129. Hoover City
130. Houston County
131. HueyTown City
132. Huntsville City

133. Irondale City
134. Jackson County
135. Jackson County Health Care Authority
136. Jacksonville City
137. Jasper City
138. Jefferson County
139. Killen Town
140. Lamar County
141. Lanett City
142. Lauderdale County
143. Lawrence County
144. Leeds City
145. Leesburg Town
146. Leighton Town
147. Level Plains Town
148. Limestone County
149. Lincoln City
150. Linden City
151. Locust Fork Town
152. Louisville Town
153. Lowndes County
154. Loxley Town
155. Luverne City
156. Macon County
157. Madison City
158. Madison County
159. Marengo County
160. Marion City
161. Marion County
162. Marshall County
163. Marshall County Health Care Authority
164. McKenzie Town
165. Medical West Hospital Authority
166. Midfield City
167. Millbrook City
168. Mobile City
169. Mobile County
170. Mobile County Board of Health
171. Monroe County
172. Monroe County Health Care Authority d/b/a Monroe County Hospital
173. Monroe County Healthcare Authority
174. Monroeville City
175. Montgomery City
176. Montgomery County
177. Moody City
178. Morgan County
179. Moulton City
180. Mountain Brook City
181. Munford Town
182. Muscle Shoals City
183. Nauvoo Town
184. New Hope City
185. Northport City
186. Oakman Town
187. Oneonta City

45

188. Opelika City
189. Opp City
190. Orange Beach City
191. Oxford City
192. Ozark City
193. Parrish Town
194. Pelham City
195. Pell City City
196. Perry County
197. Phenix City City
198. Pickens County
199. Piedmont City
200. Pike County
201. Pleasant Grove City
202. Powell Town
203. Prattville City
204. Priceville Town
205. Prichard City
206. Ragland Town
207. Rainbow City City
208. Rainsville City
209. Randolph County
210. Red Bay City
211. Roanoke City
212. Robertsdale City
213. Rockford Town
214. Russell County
215. Russellville City
216. Saraland City
217. Satsuma City
218. Scottsboro City
219. Selma City
220. Semmes City
221. Sheffield City
222. Shelby County
223. Sheriff of Etowah County
224. Sheriff of Fayette County
225. Sheriff of Jefferson County
226. Sheriff of Lamar County
227. Sipsey Town
228. Slocomb City
229. Spanish Fort City
230. Springville City
231. St. Clair County
232. Sumiton City
233. Summerdale Town
234. Sumter County
235. Sweet Water Town
236. Sylacauga City
237. Sylacauga Health Care Authority
238. Talladega City
239. Talladega County
240. Tallapoosa County
241. Tarrant City
242. Thomasville City
243. Tombigbee Health Care Authority

244. Troy City
245. Trussville City
246. Tuscaloosa City
247. Tuscaloosa County
248. Tuscumbia City
249. Tuskegee City
250. Union Springs City
251. UnionTown Town
252. Vance Town
253. Vernon City
254. Vestavia Hills City
255. Walker County
256. Washington County
257. Weaver City
258. West Blocton Town
259. Wetumpka City
260. Wilcox
261. Winfield City
262. Woodville Town
263. Yellow Bluff Town

## Non-Litigating Subdivisions

1. Chelsea City
2. Gardendale City
3. Lee County
4. Pike Road Town
5. Winston County