**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| **IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Track Seven* | **MDL No. 2804**<br>**Case No. 17-md-2804**<br>**Judge Dan Aaron Polster** |

**KROGER DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT ON CERTAIN OF
DEFENDANTS' AFFIRMATIVE DEFENSES**

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................1

II.     LEGAL STANDARD........................................................................................1

III.    ARGUMENT .....................................................................................................3

      A.      Disposal of Fault- and Cost-Shifting Affirmative Defenses is
            Premature Because They Depend on Material Factual Issues and
            Relate to Liability, if any, and Apportionment, to be Determined at
            Trial...................................................................................................3

            1.      Contributory Negligence and Fault................................5

            2.      Comparative Negligence or Fault ..................................6

            3.      Voluntary Payment Doctrine ........................................6

            4.      Failure to Mitigate........................................................8

            5.      The Affirmative Defenses of Equitable Subrogation, Laches,
                  Acquiescence, and Settlement/Release Depend on Factual
                  Issues and Relate to Liability, if any, and Apportionment, to
                  be Determined at Trial and the Circumstances Justify the
                Application of the Asserted Equitable Defenses to the
                County................................................................................9

                a.      Equitable Subrogation................................9

                b.      Laches ......................................................10

                c.      Acquiescence ...........................................11

                d.      Settlement and Release .............................11

      B.      Qualified Public Nuisance Claims Mirror Negligence Claims; thus,
            Affirmative Defenses Related to Negligence Should Apply to the
            County's Claim. ...............................................................................11

            1.      Derivative Injury Rule and Remoteness Doctrine .....................12

            2.      Contributory and Comparative Negligence .............................14

      C.      The Ohio Products Liability Act Forecloses the County's Public
            Nuisance Claim; Thus, Products Liability Defenses Should Apply
            to the County's Claim. ......................................................................15

IV.     CONCLUSION...................................................................................................18

i

**TABLE OF AUTHORITIES**

Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ...................................................... 3

*Cherokee Nation v. McKesson Corp.*,
    529 F. Supp. 3d 1225 (E.D Okla. 2021) ................................................................. 12, 13

*Cincinnati v. Berretta U.S.A. Corp.*,
    95 Ohio St. 3d 416, 768 N.E.2d 1136 (Ohio 2002) .................................................. 13, 14

*City and Cnty of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ...................................................................... 14, 18

*City and Cnty of San Francisco*,
    WL 4625624 (N.D. Cal. 2022) ....................................................................................... 18

*City of Cincinnati v. Deutsche Bank National Trust Company*,
    863 F. 3d 474 (6th Cir. 2017) ...................................................... 11, 13, 15, 17

*Corbin v. Norfolk & Western Ry. Co.*,
    856 F. 2d 193 (6th Cir. 1988) .......................................................................................... 8

*Erie Ins. Co. v. Kaltenbach*,
    720 N.E.2d 597 (Ohio Ct. App. 1998) ............................................................................ 9

*Estate of Banfield v. Turner*, 131 Ohio App. 3d 213, 722 N.E.2d 136 (Ohio Ct.
    App. 1999) ...................................................................................................................... 3

*Gallagher v. Cleveland Browns Football Co.*,
    74 Ohio St. 3d 427, 659 N.E.2d 1232 (Ohio 1996) ........................................................ 5

*Hazelwood v. Bayview Loan Servicing*,
    WL 664059 (S.D. Ohio 2021) ........................................................................................ 7

*In re Nat'l Prescription Opiate Litig.*,
    2018 WL 6628898 (N.D. Ohio Aug. 19, 2018) ............................................................. 12

*In Re: National Prescription Opiate Litigation*,
    440 F. Supp. 3d 773 (N.D. Ohio 2020)......................................................................... 13

*In re: National Prescription Opiate Litigation*,
    WL 7330956 (N.D. Ohio 2020).................................................................. 3, 5, 9, 13, 15

*Kintner v. ALDI, Inc.*,
    494 F. Supp. 2d 811 (S.D. Ohio 2007) ............................................................... 5

*Mahr v. G.D. Searle & Co.*,
    72 Ill. App. 3d 540, 390 N.E.2d 1214 (1974) ................................................... 17

*Malley v. Youngstown State Univ.*,
    658 N.E.2d 333 (Ohio Ct. Cl. 1995) .................................................................. 15

*Meilink v. Northwest Ohio*,
    Ohio App. 6 Dist. (1998) ..................................................................................... 15

*Murphy v. Reynoldsburg*,
    65 Ohio St. 3d 356, 604 N.E.2d 138 (Ohio 1992) ............................................. 3

*N. Coast Cable L.P. v. Hanneman,* 98 Ohio App. 3d 434, 648 N.E.2d 875 (Ohio
    Ct. App. 1994) ....................................................................................................... 3

*Nichols v. Lathrop Co.*,
    159 Ohio App. 3d 702, 825 N.E.2d 211 (Ohio Ct. App. 2005) ......................... 5

*Randazzo v. Harris Bank Palatine*,
    262 F.3d 663 (7th Cir. 2001) ............................................................................... 7

*Rothfuss v. Hamilton Masonic Temple Co. of Hamilton*,
    34 Ohio St. 2d 176, 297 N.E.2d 105 (1973) .................................................... 15

*Salling v. Budget Rent-A-Car Systems*,
    672 F.3d 442 (Ohio Ct. App. 2012) ..................................................................... 7

*Seeley v. Rahe*,
    16 St. 3d 25, 475 N.E.2d 1271 (1985) ................................................................ 6

*Start v. Armstrong World Industries, Inc.*,
    21 Fed. Appx 371 (Sixth Cir. 2001) ................................................................. 18

*State ex rel. Chester Tp. Bd. of Trustees v. Makowski*,
    12 Ohio St. 3d 94, 465 N.E.2d 453 (Ohio 1984) ............................................. 10

*State ex rel. Duclos v. Hamilton City Bd. of Elections*,
    145 Ohio St. 3d 254, 48 N.E.3d 543 (Ohio 2016) ........................................... 11

*State ex rel. Martin v. City of Columbus, Dept. of Health*,
    58 Ohio St. 2d 261, 389 N.E.2d 1123 (Ohio 1979) ........................................... 8

*State ex rel. The Plain Dealer Publishing Co. v. Cleveland*,
    75 Ohio St. 3d 31, 661 N.E.2d 187 (Ohio 1996) ........................................... 2, 8

*State Dept. of Taxation v. Jones*,
  61 Ohio St. 2d 99, 399 N.E.2d 1215 (Ohio 1980) ........................................................... 10

*Szuch v. FirstEnergy Nuclear Operating Co.*,
  60 N.E.3d 494, 508 (Ohio Ct. App. 2016) ....................................................................... 15

*Taylor v. City of Cincinnati*,
  143 Ohio St. 428, 55 N.E.2d 724 (1944) ......................................................................... 15

*Temple v. Wean United, Inc.*,
  50 Ohio St. 2d 317, 364 N.E.2d 267 (1977) .............................................................. 15, 18

*United States v. Firestone Tire & Rubber Co.*,
  374 F. Supp. 431 (N.D. Ohio 1974) ................................................................................. 11

*Washington Mut. Bank, FA v. Aultman*,
  172 Ohio App. 3d 584, 876 N.E.2d (Ohio Ct. App. 2007) ................................................ 9

Statutes

Ohio Rev. Code § 2703.22 ....................................................................................................... 4

Ohio Rev. Code §§ 2307.71-2307.80 ..................................................................................... 16

Ohio Rev. Code Ann. § 2315.19 .............................................................................................. 5

Other Authorities

Merriam-Webster Dictionary (last updated February 18, 2023),
  https://www.merriam-webster.com ..................................................................................... 7

Restatement (Second) of Torts § 402A ................................................................................... 17

Restatement (Third) of Torts: Products Liability § 6 .............................................................. 17

*Restatement of the Law – Restitution*, Chapter 3, § 24 Performance of an
  Independent Obligation (Equitable Subrogation) (2022) ................................................. 10

Rules

Fed. R. Civ. P. 8(c) ................................................................................................................... 2

Fed. R. Civ. P. 56(a) ................................................................................................................. 2

Fed. R. of Civ. P. 56(c)(1)(A) ................................................................................................. 2

Fed. R. Civ. P. 56(d) ................................................................................................................ 3

# I. INTRODUCTION

The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II (collectively, "Kroger") hereby responds in opposition to Montgomery County, Ohio (the "County"), and its *Motion for Summary Judgment on Certain of Defendants' Affirmative Defenses* [Doc. # 4882]. The County states that it proceeds on "a single claim for common law absolute and qualified public nuisance," seeking abatement funds as its desired remedy. As such, the County argues that certain of Kroger's asserted affirmative defenses are invalid or inapplicable to its public nuisance claim.

Kroger asserts that its asserted affirmative defenses are applicable and should not be disposed of by summary judgment for three reasons. First, fault, and, subsequently, apportionment, depend on factual issues that will be determined at trial, so any decision on fault-shifting and cost-shifting affirmative defenses is premature. Second, in Ohio, qualified public nuisance mirrors a negligence claim, so affirmative defenses related to negligence apply and are rightly reserved until the Court's determination regarding abatement and apportionment. Third, the County's public nuisance claim should be abrogated by the Ohio Products Liability Act ("OPLA") under the plain language of the statute, so affirmative defenses related to products liability apply and bear directly on the jury's determination regarding substantial factors in the creation of the alleged public nuisance. For these reasons, disposal of any of Kroger's asserted affirmative defenses is premature because they depend on factual issues to be determined by the fact-finder and/or apportionment issues to be determined by the Court.

# II. LEGAL STANDARD

Affirmative defenses are governed by Federal Rule of Civil Procedure 8(c), which states as follows:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.

Fed. R. Civ. P. 8(c).

An affirmative defense is a defense in which the defendant introduces evidence, which, if found to be credible, will negate civil liability, even if it is proven that the defendant committed the alleged acts. *State ex rel. The Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St. 3d 31, 33-34, 661 N.E.2d 187, 189-90 (Ohio 1996).  An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it. *Id.*

Summary judgment is governed by Federal Rule of Civil Procedure 56.  The rule states:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).

Further, the rule states that "a party asserting that a fact cannot be … genuinely disputed must support the assertion by citing to particular parts of the materials in the record … showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. of Civ. P. 56(c)(1)(A).

In addition, with respect to facts that are unavailable to the nonmovant:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

Courts must exercise caution when granting summary judgment. *Estate of Banfield v. Turner*, 131 Ohio App. 3d 213, 219, 722 N.E.2d 136, 140 (Ohio Ct. App. 1999) (citing affirmatively *Murphy v. Reynoldsburg*, 65 Ohio St. 3d 356, 359, 604 N.E.2d 138, 140-41 (Ohio 1992)).  In addition, for summary judgment purposes, all doubts must be resolved in favor of the nonmoving party. *N. Coast Cable L.P. v. Hanneman,* 98 Ohio App. 3d 434, 648 N.E.2d 875 (Ohio Ct. App. 1994).

Importantly, the United States Supreme Court has emphasized that a ruling on a motion for summary judgment "necessarily implicates that substantive evidentiary standard of proof that would apply at a trial on the merits." Syl. Pt. 1, in part, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).  Further, the Supreme Court cautioned that a court reviewing a motion for summary judgement <u>must bear in mind the actual "quantum and quality"</u> <u>of proof necessary to support liability</u>. *Liberty Lobby,* 477 U.S. at Syl. Pt. 2, in part.  Therefore, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment. *See Liberty Lobby*, 477 U.S. at 252.

### III.  ARGUMENT

**A.** **Disposal of Fault- and Cost-Shifting Affirmative Defenses is Premature Because They Depend on Material Factual Issues and Relate to Liability, if any, and Apportionment, to be Determined at Trial.**

This Court has analyzed and issued prior rulings providing guidance related to liability, apportionability, and apportionment. *See In re: National Prescription Opiate Litigation*, WL 7330956 (N.D. Ohio 2020) (clarifying for Track Three cases its prior ruling on Track One Plaintiffs' motion for summary judgment related to the establishment of a public nuisance; joint and several liability upon a finding of liability; abatement; and affirmative defenses). *See also*

Docket No. 2572.  In its *Order Regarding Apportionability and Apportionment* (the "Order"), this Court clarified that the jury would determine whether or not a public nuisance existed and, if so, whether or not any defendant was a substantial factor in causing it.  *Id.* at 2.  Further, the Court clarified that, upon a finding of the existence of a public nuisance *and* liability, the Court would determine all matters connected to abatement, including apportionability and apportionment.  *Id.* In its Order, this Court reiterated and further explained its conclusion that Ohio Rev. Code § 2703.22 did not foreclose the argument that liability, if any, for creating a nuisance should be determined on a proportional basis.  *Id.*

Kroger asserts that liability, if any, for the creation of a public nuisance should be apportioned.  Further, any apportionment decision would necessarily depend on factual issues to be determined at trial.  In Track One, this Court summarily denied plaintiff's motion for summary judgment that would have prevented defendants from presenting the argument on apportionment and relying upon their affirmative defenses.  *Id.*  The Court should rule similarly here, denying *Plaintiff's Motion for Summary Judgement on Certain of Defendants' Affirmative Defenses* for the same reasons.

Cost-shifting and fault-shifting defenses are both applicable to the County's public nuisance claim and material fact-dependent.  Further, it is premature to dispose of such affirmative defense before the jury has made its determination on the existence of a public nuisance and liability, if any.  For the foregoing reasons, the County's *Motion for Summary Judgement on Certain of Defendants' Affirmative Defendants* related to cost-shifting and fault-shifting affirmative defenses is premature and should be denied.

4

1.      **Contributory Negligence and Fault**

Although the County attempts to discount the affirmative defense of contributory negligence as bearing only claims for damages, the County cites no case law that actually prohibits the affirmative defense of contributory negligence as a defense to qualified nuisance or in actions that seek relief other than damages.  Under Ohio law, contributory negligence may be asserted as a defense, but does not act as a total bar to recovery. *Kintner v. ALDI, Inc.*, 494 F. Supp. 2d 811 (S.D. Ohio 2007).  Ohio Rev. Code Ann. § 2315.19.  Under Ohio Revised Code § 2315.19 and case law interpreting it, implied assumption of risk merged with contributory negligence, such that the defenses could limit "recovery."  *Gallagher v. Cleveland Browns Football Co.,* 74 Ohio St. 3d 427, 659 N.E.2d 1232 (Ohio 1996).  The County offers no case law in support of the notion that an abatement remedy is excluded from the "recovery" that could be limited.  A plain language definition of "recovery" includes "the act, process or an instance of recovering" and "the process of combating a disorder [] or a real or perceived problem."[1]  Abatement is but one means of recovery, and contributory negligence should not be disposed as an affirmative defense on the basis of the County's requested relief.

This Court has clarified that the "quintessential questions *for the jury* in this case" are the existence of a public nuisance and, if so, the substantial factors in causing it.  *In re Nat'l Prescription Opiate Litig.*, WL 7330956 (N.D. Ohio 2020) (emphasis in the original).  Moreover, in Ohio, the level of contributory negligence of the injured party is generally a question for the fact-finder. *Nichols v. Lathrop Co.*, 159 Ohio App. 3d 702, 825 N.E.2d 211 (Ohio Ct. App. 2005).  Here, a jury question has been generated as to the County's contributory negligence and its bearing

---

[1] Merriam-Webster Dictionary (last updated February 18, 2023) https://www.merriam-webster.com/dictionary/recovery#:~:text=re%C2%B7%E2%80%8Bcov%C2%B7%E2%80%8Bery,or%20an%20instance%20of%20recovering.

on the substantial factors causing the alleged nuisance.  The ultimate determination of the contributory negligence of the County is solely within the province of the fact-finder. Accordingly, a genuine issue of material fact related to the County's contributory negligence precludes summary judgement on the affirmative defense of contributory negligence. It is premature to dispose of the affirmative defense of contributory negligence before the fact-finder has made its determination on the existence of a public nuisance and liability, if any.

2.      **Comparative Negligence**

The County asserts that the comparative negligence law, R.C. 2315.19, apportions damages between plaintiff and defendant where defendant's negligence equals or exceeds that of plaintiff's negligence.  In fact, the doctrine of comparative negligence, consistent with the provisions of R.C. 2315.19, is a "defense to a claim for relief for negligence." *Seeley v. Rahe*, 16 St. 3d 25, 26-27, 475 N.E.2d 1271, 1273 (1985).  Kroger acknowledges that the County seeks abatement as its relief in this matter and asserts that the doctrine of comparative negligence is a legitimate defense of a qualified public nuisance claim.

Again, there is a dispute of material fact as to the County's comparative negligence and its bearing on the substantial factors causing the alleged nuisance.  The ultimate determination of the comparative negligence of the County is solely within the province of the fact-finder.  Thus, a genuine issue of material fact related to the County's comparative negligence precludes summary judgement on the affirmative defense of comparative negligence.

3.      **Voluntary Payment Doctrine**

Kroger invokes the voluntary payment doctrine.  Under the voluntary payment doctrine of Ohio law, in the absence of fraud, duress, compulsion or mistake of fact, money voluntarily paid by one person to another on a claim of right to such payment cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay. *Salling v. Budget*

*Rent-A-Car Systems*, 672 F.3d 442 (Ohio Ct. App. 2012).  "[A] person who voluntarily pays another with full knowledge of the facts <u>will not be entitled to restitution</u>."  *Hazelwood v. Bayview Loan Servicing*, WL 664059 (S.D. Ohio 2021) (emphasis added) (affirmatively citing *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001)).

Kroger acknowledges the County is not seeking to recover payments it already made but, rather, is seeking a remedy in abatement.  However, abatement is restitution or the "equivalent for some injury" such that the voluntary payment doctrine should apply.  Specifically, the voluntary payment doctrine should apply to the extent that the County's voluntary payments to Kroger related to prescription opioids have been used to project or in any way quantify abatement funds, if any, needed to address downstream problems associated with opioid abuse and addiction.

Here, the issue of whether the County made voluntary payments to Kroger, and to what extent, is a question of fact, precluding the disposal of this defense by summary judgement.  Opioid prescriptions purchased by County customers were, in some instances, reimbursed by the County, either through insurance administered by the County or other programs administered by the County.  Kroger cannot, at this time, quantify an exact figure of payments made voluntarily by the County to Kroger related to prescription opioids.  However, Kroger argues the voluntary payment doctrine applies to the payments for prescription opioids purchased by customers that were reimbursed by the County, through County-administered insurance or other programs.  The extent to which voluntary payments were used to calculate or quantify abatement funds allegedly needed is a question of material fact, such that disposal of this defense by summary judgment is premature.  Further, the extent to which voluntary payments by the County were made to Kroger was a substantial factor in the creation of an alleged public nuisance is a question of material fact, such that disposal of this defense by summary judgement is premature.

### 4.      Failure to Mitigate

Mitigation is an affirmative defense in Ohio.  *State ex rel. Martin v. City of Columbus, Dept. of Health*, 58 Ohio St. 2d 261, 389 N.E.2d 1123 (Ohio 1979).  The Sixth Circuit has acknowledged it is a "well-established rule that an injured plaintiff has a duty to mitigate."  *Corbin v. Norfolk & Western Ry. Co.*, 856 F. 2d 193 (6th Cir. 1988) (internal citation omitted).  The duty to mitigate is generally based on common law doctrines of fairness and common sense and typically deals with a plaintiff's damages that could be reasonably avoided.  Kroger acknowledges that the County seeks an abatement remedy in lieu of damages but notes that the County cites no case law supporting the notion that failure to mitigate is *not* an applicable defense to public nuisance.  The County merely encourages the Court to grant its motion for summary judgment as to the failure to mitigate defense solely on the basis of non-precedential decisions in courts of other jurisdictions. As noted previously, an affirmative defense is a defense in which the defendant introduces evidence, which, if found to be credible, will negate civil liability, even if it is proven that the defendant committed the alleged acts.  *State ex rel. The Plain Dealer Publishing Co. v. Cleveland*, 75 Ohio St. 3d 31, 33-34, 661 N.E.2d 187, 189-90 (Ohio 1996).  Whether or not the County acted reasonably to avoid any unnecessary costs stemming from the alleged public nuisance is rightfully a question for the fact-finder.  In concurrent cases, this court has made clear that any apportionment decision depends on factual issues to be determined at trial.  *See In re: National Prescription Opiate Litigation*, WL 7330956 (N.D. Ohio 2020).  Any apportionment decision should weigh the reasonableness of the County's conduct to avoid unnecessary costs of the alleged nuisance.  Therefore, the disposal by summary of the affirmative defense of failure to mitigate is premature at this juncture.

5.      **The Affirmative Defenses of Equitable Subrogation, Laches, Acquiescence, and Settlement/Release Depend on Factual Issues and Relate to Liability, if any, and Apportionment, to be Determined at Trial and the Circumstances Justify the Application of the Asserted Equitable Defenses to the County.**

Kroger asserts that equitable subrogation, laches, acquiescence, and settlement/release are equitable defenses that depend on factual issues to be determined at trial and, thus, disposal of these equitable defenses is premature.   While maintaining that the basis of all asserted equitable defenses apply here, Kroger acknowledges that some equitable defense, specifically unclean hands, *in pari delicto*, estoppel, and waiver, generally do not apply to claims by governmental entities.   However, certain circumstances justify application of certain equitable defenses to governmental entities, such as the County.

a.      **Equitable Subrogation**

As Plaintiff noted, equitable subrogation arises by operation of law.  *Erie Ins. Co. v. Kaltenbach,* 720 N.E.2d 597 (Ohio Ct. App. 1998).  Further, equitable subrogation "arises by operation of law when one having a <u>liability</u> . . . pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *Washington Mut. Bank, FA v. Aultman*, 172 Ohio App. 3d 584, 876 N.E.2d (Ohio Ct. App. 2007) (internal citation omitted) (emphasis added).  Equitable subrogation is one of the mechanisms by which the law of restitution and unjust enrichment will reallocate the burden of a given liability from one who has originally discharged it to another whom the law considers more appropriate to bear it.  *Restatement of the Law – Restitution*, Chapter 3, § 24 Performance of an Independent Obligation (Equitable Subrogation) (2022).   Equitable subrogation authorizes restitution when the claimant – although ultimately determined not to be an obligor at all – has acted to discharge a potential legal liability before a factual determination of responsibility can be

9

made.  *Id.*  Equitable subrogation is applied to prevent unjust enrichment.  *State Dept. of Taxation v. Jones*, 61 Ohio St. 2d 99, 399 N.E.2d 1215 (Ohio 1980) (Homes, J., dissenting).

To the extent that Kroger is ordered to pay into an abatement fund, Kroger would necessarily be liable for a debt due by another, namely, at a minimum, pharmaceutical manufacturers that manufactured and marketed prescription opioids, health care prescribers who wrote prescriptions for prescription opioids, and other pharmacies that dispensed prescription opioids that allegedly led to downstream problems of opioid misuse and addiction.  Any obligation on the part of Kroger in a "forward-looking abatement" remedy undoubtedly creates a liability on the part of Kroger for the discharge of debt that ultimately may be determined to stem from other responsible parties, such that equitable subrogation should apply.  Pharmaceutical manufacturers, health care prescribers, and other pharmacies should be equitably subrogated to Kroger with respect to payment into an abatement fund, if any.  The amount to which other parties should be equitably subrogated to Kroger is still a question of material fact, thereby precluding summary judgment on this defense.

**b.    Laches**

While laches does not generally apply to bar a claim made by governmental entities, circumstances can justify limited exceptions to this rule.  *See State ex rel. Chester Tp. Bd. of Trustees v. Makowski,* 12 Ohio St. 3d 94, 465 N.E.2d 453, 456 (Ohio 1984).  The elements of laches are present here, namely: (1) unreasonable delay or lapse of time in asserting right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive of the injury or wrong, and (4) prejudice to the other party."  *State ex rel. Duclos v. Hamilton City. Bd. of Elections*, 145 Ohio St. 3d 254, 48 N.E.3d 543 (Ohio 2016).  Evidence at trial can and will illustrate that the County has sat on its rights for purposes of laches without an excuse for the delay.  *Id.*  The County's delay was unreasonable and has prejudiced Kroger.  Moreover, the application of laches,

10

as it applies as a limited exception to the general rule, turns on the County's knowledge, whether actual or constructive, of the alleged injury. Because the County's knowledge of alleged injury is a material fact, disposal of the affirmative defense of laches at this stage is premature.

### c. Acquiescence

As noted previously, under Ohio law, an "absolute nuisance" may be based on intentional conduct (intentional creation of nuisance), which requires evidence of intent (akin to intentional tort). *City of Cincinnati v. Deutsche Bank National Trust Company*, 863 F. 3d 474, 477 (6th Cir. 2017). Courts have found that the defense of acquiescence can bear on a defendant's specific intent. *United States v. Firestone Tire & Rubber Co*., 374 F. Supp. 431 (N.D. Ohio 1974) (refusing to strike the phrase "with knowledge and acquiescence" from defendant's Answer because of its relevance to defendant's specific intent). If Plaintiff establishes an absolute nuisance, acquiescence applies as a defense. Moreover, the question of acquiescence and intent bears on the larger questions of liability, to be determined by the jury, and apportionment, to be determined by the Court. The County's knowledge related to an alleged public nuisance, whether actual or constructive, is a material fact in dispute, foreclosing disposal of this defense via summary judgment.

### d. Settlement and Release

Simply put, dismissal of these affirmative defenses is premature at this stage in litigation, as Kroger has not yet, but may, reach a settlement agreement with the County.

### B. Qualified Public Nuisance Claims Mirror Negligence Claims; thus, Affirmative Defenses Related to Negligence Should Apply to the County's Claim.

Claims for absolute public nuisance and qualified public nuisance are two distinct claims, but Ohio case law states that a qualified public nuisance "mirrors" a negligence tort. *City of Cincinnati*, 863 F.3d at 477. Kroger acknowledges the County seeks the relief of abatement.

11

However, that should not change the analysis related to defenses applicable to a qualified public nuisance claim.  Accordingly, a qualified public nuisance claim akin to a negligence claim is deservedly subject to negligence defenses.

### 1.    Derivative Injury Rule and Remoteness Doctrine

Kroger maintains that the derivative injury rule and remoteness doctrine are a bar to Plaintiff's requested relief.  With respect to the derivative injury rule, Plaintiff cites *Cherokee Nation v. McKesson Corp.* as evidence that courts were "rejecting opioid distributor defendants' invocation of the rule as a defense to public nuisance as well as other claims by a tribal plaintiff." 529 F. Supp. 3d 1225 (E.D Okla. 2021).  Critically, Plaintiff has omitted that the *Cherokee Nation* court rejected the use of the derivative injury rule as the basis to dismiss the tribal nation's claims in a Rule 12(b) motion to dismiss.  The *Cherokee Nation* court did *not* discuss the rule's application as an affirmative defense, only that the rule did not provide a basis for dismissal at that early stage in the proceedings.

Plaintiff states that "[t]his Court rejected application of the derivative injury rule to claims, like those here, by a local government plaintiff for opioid epidemic harms to be borne by the plaintiff itself," citing *In re Nat'l Prescription Opiate Litig.,* 2018 WL 6628898 (N.D. Ohio Aug. 19, 2018) (the "CTI MTD Order").  However, Plaintiff's reliance on the CT1 MTD Order is misplaced.  Primarily, Plaintiff states its singular claim here is common law nuisance, distinguishable from the Racketeer Influenced and Corrupt Organization ("RICO") Act claim analyzed in the CT1 MTD Order.  This court's discussion of the derivative injury rule in the CT1 MTD Order dealt solely with the "by reason of" limitation as it applied to standing, as required to advance a RICO claim.  Therefore, in the CT1 MTD Order, this Honorable Court examined the derivative injury rule as it related discretely to standing in a RICO claim, not how it applies as an affirmative defense to common law nuisance.

Kroger acknowledges that "[t]he derivative injury rule can be understood as an extension of the proximate causation requirement." *Cherokee Nation*, 529 F. Supp. 3d at 1233. The Sixth Circuit made clear that proximate cause was a necessary element of both common law absolute and qualified nuisance. *City of Cincinnati v. Deutsche Bank National Trust Company*, 863 F. 3d 474 (6th Cir. 2017) (distinguished by *In Re: National Prescription Opiate Litigation*, 440 F. Supp. 3d 773 (N.D. Ohio 2020), on other grounds, specifically on the issues of the economic loss doctrine and standing, *inter alia*). It is for precisely this reason that derivative injury is a directly applicable affirmative defense to public nuisance. Just as the issue of proximate causation cannot typically be resolved at the summary judgment because of factual disputes concerning intervening acts and foreseeability, so, too, should the affirmative defense of the derivative injury rule be reserved until the factual dispute relating to intervening acts and the causal chain can be resolved. *See In re National Prescription Opiate Litigation*, 440 F. Supp. 3d at 807. Bearing in mind that the ultimate standard of proof, including the burden related to proximate cause, is relevant for purposes of ruling on a summary judgment, dismissal of the derivative injury rule is not appropriate at this time.

In terms of the factual dispute, Kroger maintains that the County's evidence in support of its nuisance claims is insufficient to establish proximate cause. The use of the derivative injury rule reflects courts' great emphasis on the "foreseeability of harm" in determining whether a public nuisance claim sufficiently establishes proximate cause. *City and Cnty of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610, 679 (N.D. Cal. 2020). Material facts in dispute related to the attenuated causal chain advanced by Plaintiff includes pharmacies' alleged failure to develop systems to detect red flags; alleged over-dispensing of prescription opioids; illegal diversion of

13

some prescription opioids; development in some individuals of addiction to prescription opioids;

addiction to illicit opioids; overdose; crime; and costs of health care, education, and social services.

The Supreme Court of the State of Ohio defined remoteness in the following way:

> Remoteness is not an independent legal doctrine but is instead
> related to the issues of proximate causation . . . thus, a negligence
> claim will fail on remoteness grounds if the harm alleged is the
> remote consequence of the defendant's misconduct or is wholly
> derivative of the harm suffered by a third party.

*Cincinnati v. Berretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 768 N.E.2d 1136 (Ohio 2002).

The remoteness doctrine also serves as an affirmative defense such to permit Kroger to

avoid liability if this court finds that the County has established the elements of a public nuisance.

Kroger maintains that any connection between its alleged conduct and the County's asserted injury

is too remote to allow for an abatement remedy.  The extent to which injury to the County has

stemmed from other factors is a factual issue in dispute, to be determined by the fact-finder.

The remoteness doctrine goes directly to the determination of whether the County's injury

stemmed from Kroger's conduct.  Kroger maintains that even if the County establishes the

elements of public nuisance, the injuries to the County are still too remote to create liability on the

part of Kroger.  This affirmative defense should not be disposed of at the summary judgment stage

because of the material factual disputes concerning intervening acts of pharmaceutical

manufacturers, health care prescribers, and other pharmacies, which will be determined by the

jury.

### 2.      Contributory and Comparative Negligence

A "qualified nuisance" is "a lawful act so negligently or carelessly done as to create a

potential and unreasonable risk of harm, which in due course results in injury to another."  *Szuch

v. FirstEnergy Nuclear Operating Co.*, 60 N.E.3d 494, 508 (Ohio Ct. App. 2016) (internal citation

omitted).  Under Ohio law, a qualified public nuisance mirrors a negligence tort, and it requires

the plaintiff to show duty, breach, causation, and injury.  *City of Cincinnati*, 863 F.3d at 477.

Contributory negligence is available as a defense to an action for nuisance based upon negligence.

*Taylor v. City of Cincinnati*, 143 Ohio St. 428, 55 N.E.2d 724 (1944) (citing affirmatively Judge

Cardozo's proposition on contributory negligence, internal citation omitted).  So too, contributory

negligence is a proper defense in an action brought for maintenance of a qualified nuisance.

*Rothfuss v. Hamilton Masonic Temple Co. of Hamilton*, 34 Ohio St. 2d 176, 297 N.E.2d 105 (1973)

(distinguished on other grounds by *Meilink v. Northwest Ohio*, Ohio App. 6 Dist. (1998)).

With respect to comparative negligence, Kroger notes that "once both plaintiff and

defendant are found to be negligent, the doctrine of comparative negligence is triggered." *Malley*

*v. Youngstown State Univ.*, 658 N.E.2d 333 (Ohio Ct. Cl. 1995).  The County implies that

comparative negligence does not apply in a public nuisance claim, but does not cite any authority

for the exclusion of comparative negligence as a defense to nuisance claims.  Because a qualified

public nuisance mirrors a negligence tort, it stands to reason a defense to negligence could be

applied as a defense to qualified nuisance.  *City of Cincinnati*, 863 F.3d at 477 (distinguished on

other grounds by *In re National Prescription Opiate litigation*, 440 F. Supp. 3d 773 (N.D. 2020)).

The application of the doctrine of comparative negligence is triggered by the fact-finder's

determination that the defendant, as well as the plaintiff, was negligent.  Accordingly, a genuine

issue of material fact related to the County's comparative negligence precludes summary

judgement on the affirmative defense  of comparative negligence.

**C.     The Ohio Products Liability Act Forecloses the County's Public Nuisance Claim; Thus, Products Liability Defenses Should Apply to the County's Claim.**

Kroger asserts that product liability affirmative defenses apply to this public nuisance claim

because it is abrogated by the plain language of the OPLA.  Kroger argues that products liability

defenses are applicable to Plaintiff's public nuisance claim and should not be disposed of at the

summary judgment phase.  Kroger respectfully submits that this Court erred in rejecting previous arguments by defendants related to the Ohio law bar on the County's public nuisance claim.  *See Meijer's Memorandum in Support,* Doc. 60-1, and *Order Regarding Meijer's Motion to Dismiss*, Doc. 63.  Specifically, Kroger maintains that Plaintiff's claim is rightfully subsumed by the OPLA, Ohio Rev. Code §§ 2307.71-2307.80.  The OPLA is "intended to abrogate all common law product liability claims or causes of action."  Ohio Rev. Code Ann. § 2307.71(B).  The OPLA specifically defines a "product liability claim" as follows:

> a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> (a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
>
> (b) Any warning or instruction, or lack of warning or instruction, associated with that product;
>
> (c) Any failure of that product to conform to any relevant representation or warranty.
>
> "Product liability claim" also includes any public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public.

Ohio Rev. Code § 2307.71(A)(13) (emphasis added).

Notably, by the clear language of the statute, the OPLA abrogates *any* public nuisance where, as here, it is alleged that the "marketing," "distribution," and "sale of the product" interferes with a right common to the general public.  For this precise reason, Kroger's affirmative product liability defenses necessarily apply.  The product liability defense, if Plaintiff establishes the elements of a public nuisance, is simply that the cause of action has been abrogated by the OPLA.

Even if the County's claim was not abrogated, the product liability affirmative defenses of the Restatement (Second) of Torts § 402A, Comments J and K, and Restatement (Third) of Torts: Products Liability § 6 still apply.  Under Ohio law, an "absolute nuisance," or "nuisance per se," may be based on intentional conduct (akin to an intentional tort) or an abnormally dangerous condition (akin to a strict liability tort) that cannot be maintained without injury to property, no matter what precautions are taken.  *City of Cincinnati*, 863 F.3d at 477. An abnormally dangerous condition of absolute nuisance is akin to strict liability tort and, therefore, requires less evidence of intent.  *Id.*  It is premature to dismiss Kroger's product liability affirmative defenses, as they relate to Plaintiff's claim with respect to an absolute nuisance akin to strict liability tort.  If the Plaintiff establishes a public nuisance akin to a strict liability tort, a critical defense will be whether warning(s) given about the use of prescription opioids were adequate in light of the state of medical and scientific knowledge at the time of distribution of the drug, as premised under Section 402A of the Restatement (Second) of Torts, Comment K.  *See generally Mahr v. G.D. Searle & Co.,* 72 Ill. App. 3d 540, 390 N.E.2d 1214 (1974).  In the same vein, Comment J states that "in order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning … as to its use."  *Temple v. Wean United, Inc.*, 50 Ohio St. 2d 317, 364 N.E.2d 267 (1977).  Finally, "risk-utility balancing," as discussed in the Restatement (Third) of Torts Product Liability may serve as a defense to Plaintiff's claim related to absolute nuisance. *See Start v. Armstrong World Industries, Inc.*, 21 Fed. Appx 371, 375-76 (Sixth Cir. 2001).  In sum, because there has not yet been a finding related to the establishment of an absolute public nuisance, it is premature to dismiss Kroger's affirmative defenses related to product liability and the adequacy of warnings and/or directions as to use, all of which are questions of material fact.

17

Plaintiff cites *City and County of San Francisco*, WL 4625624 (N.D. Cal. 2022), in which summary judgment was granted on product liability defenses.  Such ruling is not applicable and, moreover, is not precedence for a ruling on Kroger's products liability defenses here.  Unlike in *City and County of San Francisco,* here, Plaintiff's theory of absolute nuisance is premised on the existence of an abnormally dangerous condition (arising from alleged failure to implement effective systems to monitor and to prevent diversion of opioids), such that summary judgment is premature as to Kroger's products liability affirmative defenses.

## IV.  CONCLUSION

For the foregoing reasons, disposal of Kroger's asserted affirmative defenses is premature because they depend on factual issues, to be determined by the fact-finder, and/or apportionment issues, to be determined by the Court.

Dated: March 9, 2023

Respectfully submitted,

**The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II,**

**By counsel,**

*/s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)
Ashley Hardesty Odell, Esq. (WVSB 9380)
Fazal A. Shere, Esq. (WVSB 5433)
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
ahardestyodell@bowlesrice.com
fshere@bowlesrice.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on March 9, 2023, the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record. Copies of this document may be obtained through the CM/ECF system.

*/s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)

15524899.1