UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>Case No. 1:18-op-46326-DAP<br><br>THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS and THE STATE OF OHIO EX REL. MATHIAS H. HECK, JR., PROSECUTING ATTORNEY,<br><br>    Plaintiff,<br><br> vs.<br><br>CARDINAL HEALTH, INC. et al.,<br><br>    Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON CERTAIN OF DEFENDANTS' AFFIRMATIVE DEFENSES**

2769422.4

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    A.    Affirmative Defenses Inapplicable to an Equitable Public Nuisance Claim ......................................................................................... 1

        1.    Voluntary Payment Doctrine ............................................................. 1

        2.    Subrogation ........................................................................................ 2

        3.    Remoteness and Derivative Injury Rule ........................................... 3

        4.    Products Liability Defenses ............................................................... 4

    B.    Equitable Defenses Inapplicable to Government Public Enforcement Claims ............................................................................. 6

    C.    Fault- and Cost-Shifting Defenses Based on the County's Conduct .................................................................................................. 8

        1.    Contributory Negligence and Fault ................................................... 9

        2.    Comparative Negligence and Fault ................................................. 11

        3.    Informed Consent and Assumption of Risk .................................... 11

        4.    Failure to Mitigate ........................................................................... 12

CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

**Cases**

*Chicago Title Ins. Co. v. Huntington Nat'l Bank*,
  719 N.E.2d 955 (Ohio 1999) ............................................................................................... 12

*City & County of San Francisco v. Purdue Pharma L.P.*,
  2022 WL 4625624 (N.D. Cal. Apr. 18, 2022) ................................................................ 3, 4, 12

*City & County of San Francisco v. Purdue Pharma L.P.*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ................................................................................... 4

*City of Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ............................................................................................... 5

*City of Wooster v. Ent. One, Inc.*,
  814 N.E.2d 521 (Ohio Ct. App. 2004) ................................................................................... 6

*Davignon v. Clemmey*,
  322 F.3d 1 (1st Cir. 2003) ..................................................................................................... 8

*Estate of Graves v. City of Circleville*,
  922 N.E.2d 201 (Ohio 2010) ............................................................................................... 10

*Gallagher v. Cleveland Browns Football Co.*,
  659 N.E.2d 1232 (Ohio 1996) ......................................................................................... 9, 11

*In re Nat'l Prescription Opiate Litig.*,
  2022 WL 3443614 (N.D. Ohio Aug. 17, 2022) ..................................................................... 2

*In re Nat'l Prescription Opiate Litig.*,
  2018 WL 6628898 (N.D. Ohio Dec. 19, 2018) ..................................................................... 3

*In re Nat'l Prescription Opiate Litig.*,
  2020 WL 7330956 (N.D. Ohio Dec. 9, 2020) ..................................................................... 10

*S.R. Prods. v. Gerrity*,
  805 N.E.2d 104 (Ohio Ct. App. 2004) ................................................................................... 7

*Seeley v. Rahe*,
  475 N.E.2d 1271 (Ohio 1985) ............................................................................................. 11

*State ex rel. Chester Twp. Bd. of Trustees v. Makowski*,
  465 N.E.2d 453 (Ohio 1984) ................................................................................................. 6

# TABLE OF AUTHORITIES
## (continued)

**Page**

*State of Washington v. McKesson Corp.*,
   No. 19-2-06975-9-SEA (Wash. Super. Ct. Aug. 18, 2021) ............................................ 12

*United States v. Firestone Tire & Rubber Co.*,
   374 F. Supp. 431 (N.D. Ohio 1974) ................................................................................ 7

*Wash. Mut. Bank, FA v. Aultman*,
   876 N.E.2d 617 (Ohio Ct. App. 2007) ............................................................................ 3

## Other Authorities

Ohio Rev. Code
   §§ 2307.71-2307.80 ........................................................................................................ 5
   § 2315.19 .................................................................................................................. 9, 11
   § 2703.22 ...................................................................................................................... 12
   § 2744.03 ...................................................................................................................... 10

*Restatement (Second) of Torts*
   § 402A ....................................................................................................................... 4, 5
   § 821B ............................................................................................................................ 5

*Restatement (Third) of Torts: Products Liability*
   § 6 ............................................................................................................................. 4, 5

## Introduction

Plaintiff Montgomery County, Ohio (the "County") moved for summary judgment on certain of Defendants The Kroger Co. *et al.*'s ("Kroger") affirmative defenses, arguing that they do not apply to its public nuisance claim as a matter of law.  Kroger argues in opposition that this Court's rulings addressing joint and several liability and apportionment as issues to be determined at trial foreclose granting summary judgment on its defenses.  This argument misconstrues the County's motion.  The County does not seek a blanket ruling that Kroger's liability will be joint and several or that apportionment is unavailable.  Rather, the County focuses on 14 specific affirmative defenses (out of the 88 Kroger pleads) that do not apply as a matter of law to equitable public nuisance claims, to government public enforcement claims, or to the government's conduct.  When Kroger addresses these defenses individually, its arguments consist largely of taking issue with established Ohio law as recognized by this Court and others, or else trying to draw untenable distinctions with this authority.  The Court should reject these arguments and should grant partial summary judgment for the County on Kroger's affirmative defenses numbers 6-8, 13-14, 18, 25, 40-41, 55, 61-62, 73, and 80.

## Argument

### A. Affirmative Defenses Inapplicable to an Equitable Public Nuisance Claim

#### 1. Voluntary Payment Doctrine

The County seeks summary judgment on voluntary payment doctrine (Aff. Def. 6) as inapplicable where its public nuisance claim does not seek recovery of any

1

prior payments made. Kroger admits that "the County is not seeking to recover payments it already made but, rather, is seeking a remedy in abatement." Opposition (ECF No. 4947) ("Opp.") at 7. This suffices to grant the County's motion on this defense.

Kroger argues in opposition that "the voluntary payment doctrine should apply to the extent that the County's voluntary payments to Kroger related to prescription opioids have been used to project or in any way quantify abatement funds, if any, needed to address downstream problems associated with opioid abuse and addiction." *Id.* Kroger cites no legal authority or evidence supporting this assertion, which confuses abatement with damages. *See In re Nat'l Prescription Opiate Litig.*, 2022 WL 3443614, at *4 (N.D. Ohio Aug. 17, 2022) ("The goal [of abatement] is not to compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward."). No payments the County might previously have made for opioid prescriptions (none are identified) relate to this claim. The Court should grant summary judgment on this defense.

### 2. Subrogation

The County seeks summary judgment on subrogation (Aff. Def. 18) as inapplicable where its public nuisance claim does not relate to any contract with Kroger or prior payment made by Kroger on the County's behalf. Kroger does not dispute that conventional (i.e., contractual) subrogation does not apply here. Rather, it argues that equitable subrogation applies, *not* because of any prior

2

payment it made on the County's behalf, but because if it is found liable to pay into an abatement fund, then it "would necessarily be liable for a debt due by . . . pharmaceutical manufacturers that manufactured and marketed prescription opioids, health care prescribers who wrote prescriptions for prescription opioids, and other pharmacies that dispensed prescription opioids that allegedly led to downstream problems of opioid misuse and addiction." Opp. at 10.  Kroger provides no authority or evidence showing that any abatement payment it may be ordered to make would constitute or include a "debt due by another" in which the County holds a "security or obligation." *Wash. Mut. Bank, FA v. Aultman*, 876 N.E.2d 617, 622 (Ohio Ct. App. 2007).  Absent evidence of another's debt or liability, the doctrine of equitable subrogation does not apply.  The Court should grant summary judgment on this defense.

### 3. Remoteness and Derivative Injury Rule

The County seeks summary judgment on the "derivative injury rule" and the "remoteness doctrine" (Aff. Def. 25) as inapplicable.  *See In re Nat'l Prescription Opiate Litig.*, 2018 WL 6628898, at *6 (N.D. Ohio Dec. 19, 2018) ("*CT1 MTD Order*"); *City & County of San Francisco v. Purdue Pharma L.P.*, 2022 WL 4625624, at *3 (N.D. Cal. Apr. 18, 2022).  Kroger argues in opposition that this Court's prior ruling is inapposite because it addressed derivative injury as applied to causation for a RICO claim, not public nuisance.  Opp. at 12.  However, the Court's finding that the CT1 Plaintiffs' injuries "are borne by them and not passed-on by any intermediate party standing less removed from Defendants' actions[,]" 2018 WL 6628898, at * 6, applies equally if not more so to the County's public nuisance claim,

3

for which causation is *less stringent* than it is under RICO's "by reason of" standard. *See City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 679 (N.D. Cal. 2020) ("Unlike RICO, courts place great emphasis on 'foreseeability of harm' in determining whether a public nuisance claim sufficiently alleges proximate cause." (Citations omitted)). *Accord* CT7 ECF No. 45 (Denying Pharmacy Defendants' Motion to Dismiss).

Kroger also argues that the derivative injury rule and remoteness doctrine apply because they relate to proximate cause, which is an element of public nuisance. Opp. at 13 ("Kroger maintains that the County's evidence in support of its nuisance claims is insufficient to establish proximate cause."). This argument improperly conflates the sufficiency of the County's evidence with the availability of affirmative defenses. *See City & County of San Francisco*, 2022 WL 4625624, at *3 ("Defendants' arguments attack Plaintiff's ability to carry its burden of proving the elements of its claim. Defendants do not show why the affirmative defenses of remoteness and derivative injury apply here. Accordingly, summary judgment is granted with respect to these defenses."). The Court should grant summary judgment on these defenses.

### 4. Products Liability Defenses

The County seeks summary judgment on Kroger's products liability defense (Aff. Def. 55), based on *Restatement (Second) of Torts* § 402A, cmts. j-k, and *Restatement (Third) of Torts: Products Liability* § 6, as inapplicable based on the Court's prior rulings. *See* CT7 ECF No. 45 (denying motion to dismiss based on arguments listed in CT7 ECF No. 44-1); CT7 ECF No. 63 (denying motion to dismiss

4

asserting arguments in CT7 ECF No. 60-1); *CT1 MTD Order*, 2018 WL 6628898, at *13 (N.D. Ohio Dec. 19, 2018).  Kroger argues in opposition that the Court erred in its prior rulings.  Opp. at 16 ("[T]his Court erred in rejecting previous arguments by defendants related to the Ohio law bar on the County's public nuisance claim.").  The Court, however, ruled correctly that the Ohio Products Liability Act ("OPLA"), Ohio Rev. Code §§ 2307.71-2307.80, does not apply where, as here, the Plaintiff does not "1) seek to recover compensatory damages 2) for death, physical injury to a person, emotional distress, or physical damage to property other than the product in question (*i.e.* 'harm' as defined by the statute)."  2018 WL 6628898, at *13-14.  The Court should reaffirm these rulings here.

Kroger argues in the alternative that its *Restatement*-based defense still would apply even if OPLA did not.  Opp. at 17.  This is incorrect.  The County's public nuisance abatement claim is governed not by *Restatement (Second)* § 402A or *Restatement (Third)* § 6 (both addressing injury to person or property), but by *Restatement (Second)* § 821B addressing harms to *public* rights such as "public health, safety, peace, comfort, or convenience[.]"  *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) (citing § 821B); *see also* ECF No. 2572 (Order denying CT1 Plaintiffs' motion for summary judgment on public nuisance) at 2 (quoting *Beretta*).  Since the *Restatement* products liability provisions do not address public harms, they do not apply to the County's claim to abate a public nuisance.  The Court should grant summary judgment on this defense.

5

2769422.4

### B. Equitable Defenses Inapplicable to Government Public Enforcement Claims

The County seeks summary judgment on Kroger's equitable defenses—unclean hands, *in pari delicto*, laches, estoppel, waiver, acquiescence, settlement, and release (Aff. Defs. 7, 8, 40, 80). These defenses are inapplicable to government public enforcement claims. *See City of Wooster v. Ent. One, Inc.*, 814 N.E.2d 521, 539 (Ohio Ct. App. 2004) ("Ohio courts have expressed the clear position that equitable defenses generally do not apply to bar a claim by a governmental unit.").

Kroger concedes that its unclean hands (Aff. Def. 7), *in pari delicto* (Aff. Def. 8), estoppel (Aff. Def. 40), and waiver (*id.*) defenses "generally do not apply to claims by governmental entities" and makes no argument for their application here. Opp. at 9. The Court therefore should grant summary judgment on these defenses.

Kroger also recognizes that "laches does not generally apply to bar a claim by governmental entities," Opp. at 10, but invokes an exception recognized in *State ex rel. Chester Twp. Bd. of Trustees v. Makowski*, 465 N.E.2d 453 (Ohio 1984). *Makowski* applied a "limited exception" to the "general rule that laches does not apply to bar a claim made by a governmental unit," *id.* at 456, where, after a municipal government sued a county government for an apportioned share of interest earned on public deposits, the statute supporting the claim was amended to limit the municipality's recovery. *Id.* ("Our decision in this regard is also influenced by the fact that the relevant statutory provisions were amended subsequent to the commencement of these proceedings to obviate the requirement that interest be apportioned."). This limited exception does not apply where, as here, there is no

6

2769422.4

post-suit change in governing law.  *See S.R. Prods. v. Gerrity*, 805 N.E.2d 104, 110 (Ohio Ct. App. 2004).  Instead, this case is governed by the general rule that "laches is generally no defense to a suit by the government to enforce a public right or to protect a public interest."  *Id.*  (Citation omitted).  The Court should grant summary judgment on laches (Aff. Def. 40).

Kroger also argues that the general rule against applying the defense of acquiescence to the government does not apply here because Kroger's intent may be at issue.  Opp. at 11 ("Courts have found that the defense of acquiescence can bear on a defendant's specific intent.") (*citing United States v. Firestone Tire & Rubber Co.*, 374 F. Supp. 431 (N.D. Ohio 1974)).  In *Firestone*, an antitrust attempt-to-monopolize action, the Court denied the government's Rule 12(f) motion to strike a statement in Firestone's answer that it made three acquisitions at issue "with the knowledge and acquiescence of the plaintiff."  *Id.* at 433.  The Court found as to these "acquisitions under consideration" that "the 'knowledge and acquiescence' of the Government would at least bear some relevance as to whether [Firestone] possessed the specific intent to monopolize," and that "[m]otions to strike matter in pleadings are not favored" and "should not be granted unless it is apparent that such matter can have no possible relationship to the controversy."  *Id.* at 434.  Here, unlike in *Firestone*, this issue arises at summary judgment when Kroger does not identify any specific transaction to which the County purportedly acquiesced.  In this setting, absent evidence of "immunity" or "lawfully authorized exemption," the case is governed by the general rule that "the alleged 'knowledge or acquiescence' of

7

the Government . . . would not bar a subsequent suit . . . in the public interest." *Id.* at 433 (citations omitted). The Court should grant summary judgment on Kroger's "acquiescence" defense (Aff. Def. 80).

The Court also should grant summary judgment on Kroger's "settlement" and "release" defenses (Aff. Def. 80). Kroger admits that there is no settlement or release to which this defense applies. Opp. at 11 ("Kroger has not yet, but may, reach a settlement agreement with the County."). This is fatal to these defenses. *Cf. Davignon v. Clemmey*, 322 F.3d 1, 15-16 (1st Cir. 2003) ("Rule 8(c) . . . plainly evinces an intention to accord discrete treatment to the preclusive effects of ***prior*** consent judgments, releases, and settlements." (emphasis added)).

For all of the reasons set forth, the Court should grant summary judgment for the County on Kroger's equitable defenses (Aff. Defs. 7, 8, 40, 80) as inapplicable to this government public enforcement action.

### C. Fault- and Cost-Shifting Defenses Based on the County's Conduct

The County seeks summary judgment on Kroger's fault- and cost-shifting defenses—Aff. Defs. 13 (contributory negligence), 14 (contributory fault), 41 (comparative fault), 61 (failure to enforce), 62 (informed consent, assumption of risk), and 73 (failure to mitigate)—solely as they seek to shift fault or responsibility for costs *onto the County*. These defenses, when applied to the County's own conduct, fail as a matter of law because the defenses are limited to damages claims and/or are barred by the public duty doctrine.

8

1.     **Contributory Negligence and Fault**

Kroger argues in opposition that contributory negligence and fault apply to equitable abatement relief because, "[u]nder Ohio Revised Code § 2315.19 and case law interpreting it, implied assumption of risk merged with contributory negligence, such that the defenses could limit 'recovery.'" Opp. at 5.  Kroger's attempt to expand § 2315.19 to "recovery" of any relief fails based on the statute's plain language.  It is titled "[t]rial court review of award of *compensatory damages for noneconomic loss*." Ohio Rev. Code § 2315.19 (emphasis added).  It provides in relevant part that "a trial court in a tort action shall review the evidence supporting *an award of compensatory damages for noneconomic loss* that the defendant has challenged as excessive." Ohio Rev. Code § 2315.19(a) (emphasis added).  Skipping past the statute's text, Kroger cites *Gallagher v. Cleveland Browns Football Co.*, 659 N.E.2d 1232 (Ohio 1996), as holding that the statute applies to any "recovery" of relief.  Opp. at 5.  It does not.  *Gallagher* involved personal injury claims.  659 N.E.2d at 1238.  It nowhere addresses abatement, equitable relief, or the statute's application to either.  It thus provides no support for Kroger's invitation to rewrite statute's plain language covering awards of compensatory damages for noneconomic loss.

Kroger then pivots from rewriting the statute to rewriting this Court's rulings.  Kroger argues that the Court already has found that contributory negligence is a jury question because "[t]his Court has clarified that the 'quintessential questions *for the jury* in this case' are the existence of a public nuisance and, if so, the substantial factors causing it." Opp. at 5 (quoting *In re Nat'l*

9

*Prescription Opiate Litig.*, 2020 WL 7330956 (N.D. Ohio Dec. 9, 2020) ("*CT3 Apportionment Order*") (emphasis in opinion)). What the Court actually ruled was that the questions for the jury are: "(i) whether a public nuisance exists; and (ii) if so, was ***any defendant*** a substantial factor in causing it?" 2020 WL 7330956, at *2 (emphasis added). The Court nowhere addressed questions of a ***plaintiff's*** contributory negligence or fault as an issue for the jury in deciding liability or for the Court in deciding the remedy.

Nor could the Court have done so with respect to a government plaintiff's purported failure to regulate or enforce. As set forth in the County's motion, Ohio recognizes the "public-duty rule," under which a local government "owes a duty only to the general public when performing functions imposed on it by law, and therefore it is not liable for a breach of that duty resulting in harm to an individual, absent a special duty owed to the injured person." *Estate of Graves v. City of Circleville*, 922 N.E.2d 201, 204 (Ohio 2010) (citations omitted). Ohio also recognizes government discretionary function immunity, under which a "political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee." Ohio Rev. Code § 2744.03(A)(3). Kroger ignores this authority altogether in its Opposition. The Court should grant summary judgment on Kroger's contributory negligence and fault defenses (Aff. Defs. 13-14, 61).

10

2769422.4

### 2. Comparative Negligence and Fault

Kroger's argument with respect to its comparative negligence/fault defense fails for the same reason. Kroger argues that "the doctrine of comparative negligence, consistent with the provisions of [Ohio Rev. Code §] 2315.19, is a 'defense to a claim for <u>relief</u> for negligence.'" Opp. at 6 (emphasis in orig.) (*quoting Seeley v. Rahe*, 475 N.E.2d 1271, 1273 (Ohio 1985)). The *Seeley* case, like the *Gallagher* case, *supra*, involved personal injury claims, here arising out of an automobile accident. 475 N.E.2d at 1272 n.2. It, too, nowhere addresses abatement, equitable relief, or the application of either to § 2315.19 (again, titled "Trial court review of award of compensatory damages for noneconomic loss").

In separately arguing that "there is a dispute of material fact as to the County's comparative negligence," Opp. at 6, Kroger again ignores Ohio law recognizing the "public-duty rule" and discretionary function immunity as bars to any finding that the County was negligent or at fault for purported failure to regulate or enforce. For each of these reasons, the Court also should grant summary judgment on Kroger's comparative negligence and fault defenses (Aff. Defs. 41, 61).

### 3. Informed Consent and Assumption of Risk

Kroger provides no independent argument in support of its defense based on "informed consent" and "assumption of risk" (Aff. Def. 62). Kroger does not address informed consent at all in its Opposition. As to assumption of risk, Kroger simply argues that "[u]nder Ohio Revised Code § 2315.19 and case law interpreting it, implied assumption of risk merged with contributory negligence[.]" Opp. at 5. For

11

the same reasons that Kroger's contributory negligence and fault and comparative negligence and fault defenses based on § 2315.19 fail—the statute applies only to "compensatory damages for noneconomic loss," and fault may not be imposed for a government entity's purported failure to regulate or enforce—so, too, does its assumption of risk defense fail. The Court should grant summary judgment on Kroger's informed consent and assumption of risk defenses (Aff. Def. 62).

### 4. Failure to Mitigate

In Ohio, failure to mitigate is a defense to damages. *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955, 961 (Ohio 1999) ("The general rule is that an injured party has a duty to mitigate and may not recover for damages that could reasonably have been avoided."). Kroger argues that the defense is not so limited, but cites no authority supporting this proposition. Opp. at 8. Other courts have granted summary judgment for government plaintiffs seeking equitable public nuisance abatement on the defense of failure to mitigate and on fault-shifting defenses generally. *City & County of San Francisco*, 2022 WL 4625624, at *5 (defenses of failure to mitigate, comparative fault, and comparative negligence); *State of Washington v. McKesson Corp.*, No. 19-2-06975-9-SEA (Wash. Super. Ct. Aug. 18, 2021) (Motion Ex. A) at 7, ¶13 (fault-shifting defenses).

Kroger also argues that this Court "has made clear that any apportionment decision depends on factual issues to be determined at trial." Opp. at 8 (citing *CT3 Apportionment Order, supra*). What the Court actually ruled with respect to fault-shifting is that "Ohio Rev. Code § 2703.22 does not bar joint and several liability, but neither does the statute bar Defendants from arguing at trial that the *fault of*

12

*any Defendants* found liable for creating the nuisance should be determined on a proportional basis." *CT3 Apportionment Order*, 2020 WL 7330956, at *1 (internal quotation marks and citation omitted) (emphasis added).  The Court did not address attempted fault-shifting onto a government plaintiff, which, for the reasons set forth herein, is unavailable as a matter of law.  The Court should grant summary judgment on Kroger's failure to mitigate defense (Aff. Def. 73).

## Conclusion

For the reasons set forth herein and in the County's Motion, the Court should grant summary judgment for the County on Kroger's affirmative defenses 6-8, 13-14, 18, 25, 40-41, 55, 61-62, 73, and 80.

March 23, 2023

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC
29464 (843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

13

2769422.4

                        Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR 00907
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*


*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY
&LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH
44114 (216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*


## CERTIFICATE OF SERVICE

     I hereby certify that on March 23, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

                        */s/Peter H. Weinberger*
                        Peter H. Weinberger