UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

THIS DOCUMENT RELATES TO:

*Track Seven*

MDL No. 2804
Case No. 17-md-2804
Judge Dan Aaron Polster

**KROGER DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO EXCLUDE PORTIONS OF ANNA LEMBKE'S, DAVID COURTWRIGHT'S, AND JAMES RAFALSKI'S OPINIONS THAT VIOLATE PRIOR COURT ORDERS**

On February 10, 2023, Defendants the Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II (hereafter collectively referred to as "Kroger") filed a motion to exclude portions of Dr. Anna Lembke's, Dr. David Courtwright's, and James Rafalski's expert reports and proffered testimony to the extent they violate Orders previously entered by the Court in prior MDL tracks ("Motion to Exclude"). *See* Dkt. 4889. On March 9, 2023, Plaintiff filed a Motion in Opposition to Kroger's Motion to Exclude, requesting the Court to deny Kroger's Motion on all grounds except for one sentence in Dr. Lemke's report, which states that pharmacies "failed to provide pharmacists with sufficient time, resources, or incentives to investigate red flags." *See* Dkt. 4946 at 9.

Although Kroger agrees with the Plaintiff insofar as the Court should exclude Dr. Lembke's opinion regarding an alleged failure by pharmacies to provide adequate time and resources, the Court should also reject all of Plaintiff's other arguments in its Opposition Motion because: (1) Dr. Courtwright's marketing causation opinions violate the CT2 Court's prior ruling against evidence concerning a defendant's state of mind, he is not an expert in pharmaceutical marketing, and his alleged expertise concerning the history of opioids ends with the Twentieth

Century; (2) Mr. Rafalski's report contains interpretations of federal law, which this Court specifically prohibited experts from doing in this litigation and particularly for Mr. Rafalski; and (3) Kroger's Motion to Exclude, in regards to Anna Lembke's marketing and pharmacy practices opinions was appropriate in scope and the Plaintiffs do not offer convincing evidence for why she is now, suddenly qualified to opine on opioid marketing causation when she was prohibited form doing so in both CT1 and CT3.

## LEGAL STANDARD

The U.S. Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) explains the standard for the admissibility of expert testimony by analyzing Fed. R. Civ. P. 702. Rule 702 provides that "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Daubert*, 509 U.S. 579 at 588 (quoting Fed. R. Civ. P. 702(a)). A district judge is the gatekeeper of expert testimony who "evaluat[es] the relevance and reliability of proffered expert testimony with heightened care." *Surles ex rel. Johnson v. Greyhound Lines, Inc.,* 474 F.3d 288, 295 (6th Cir. 2007).

Additionally, the Court, in its *Nunc Pro Tunc* Evidentiary Order in CT3, noted that all prior evidentiary orders from the various MDL Tracks will "normally apply to all future cases in the MDL…including "remanded cases tried by transferor courts." *See* Dkt. 4889 at 1 (quoting Dkt. 3058 at 1). The Court also stated that "a party may file a motion in an MDL case to modify the contours of prior rulings only if that party can show that the particular circumstances of an individual case warrant a revision." *In re Nat'l Prescription Opiate Litig.,* No. 1:17-MD-2804, 2020 WL 6450290, at *1 (N.D. Ohio Nov. 3, 2020).

2

## ARGUMENT

I. <u>**David Courtwright**</u>

### A. Dr. Courtwight's Opinions Violate Prior Rulings

Plaintiff is incorrect in asserting that David Courtwright "has never been subjected to a Daubert motion in this MDL." *See* Dkt. 4946 at 3. In CT2, the Court ruled on motions to exclude improper opinion testimony from several of Plaintiff's experts, including Dr. Courtwright. Dkt. 1262 at 2. The Court ruled that all experts in the MDL litigation, including Dr. Courtwright, could not: (1) give lengthy expert testimony that merely restates factual information found in documents; (2) offer opinions regarding defendants' motive, intent, and/or state of mind; or (3) offer opinions regarding defendants' corporate ethics, responsibilities, and/or duties. *Id.* at 10.

The Court noted that opinions regarding defendants' motive, intent, or state of mind are inadmissible because, among several other grounds, "this type of evidence does not meet the helpfulness criterion of [Federal Rules of Evidence] 702." *Id*. at 5-6 (quoting *Young v. Mentor Worldwide LLC*, 312 F. Supp.3d 765, 770 (E.D. Ark. 2018). The Court noted that "[t]he touchstone of whether a witness may testify as an expert under Fed. R. Evid. 702 is…whether [the expert] would be 'helpful', but it is helpfulness to the trier of fact, not to a party's case, that counts." *Id*. at 3 (quoting *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995)). The Court provided this guidance to the CT2 Defendants' motions to strike several of the Plaintiff's expert reports even though the "reports were not necessarily reflective of what the experts' trial testimony will be." Dkt. 1262 at 2.[1]

---

[1] The CT2 Court declined to review every example cited by Defendants that violated these three categories. However, as an example of impermissible motive or state of mind evidence, the Court referenced the opinion in Dr. Andrew Kolodny's CT2 expert report, "In fact, numerous internal documents evidence how Defendants made conscious decisions to ignore the law." *Id*. at 7 (quoting CT2 Kolodny Report at 83).

Kroger clearly stated in its Motion to Exclude that it sought to exclude Dr. Courtwright's, Dr. Lembke's, and Mr. Rafalski's "expert reports and proffered testimony to the extent they violate Orders previously entered by the Court in prior MDL tracks." *See* Dkt. 4489 at 1. In its Motion to Exclude, Kroger notes one example of Dr. Courtwright's impermissible marketing causation testimony:

> [N]ational pharmacies all played multiple roles in that campaign["to subvert narcotic conservatism and the strict regulatory regime with which it was associated"]. The common, ***intended effect*** of their efforts was to substantially increase exposure to prescription opioids, despite their known addictive and toxic properties.

*Id.* at 7 (quoting Courtwright CT7 Rpt. at 395) (emphasis added).[2]

Here, Dr. Courtwright is clearly opining on pharmacies' intent and state of mind in participating in a campaign to "subvert narcotic conservatism." Courtwright CT7 Rpt. at 395. Therefore, the Court should exclude this opinion in Dr. Courtwright's report along with his other opinions that violate any of the other three categories of impermissible testimony from the Court in CT2. *See* Dkt. 1262 at 2.

### B.  Dr. Courtwright Is Not Qualified to Opine on Pharmaceutical Marketing

Dr. Courtwright is not an expert in opioid marketing, and his opinions are discredited by the fact that his alleged expertise in history of drug use predominantly focuses on the history through the early 2000s.

Plaintiff does not provide, nor could they provide, sufficient evidence to show that Dr. Courtwright is qualified to offer his opinions with respect to marketing causation. *See* Dkt. 4946

---

[2] Kroger in no way adopts the views cited in Dr. Courtwright CT7 report or the expert reports of any of Plaintiff's expert witnesses. All references to contents within Plaintiff's expert reports in this Motion are only for the purposes of explaining why the cited portion of the experts' reports violate prior MDL orders.

4

at 3. Courts have found that, as a general rule, the fact that a historian may be an expert in one discipline alone is not sufficient to warrant a court's designating that historian as an expert witness in other disciplines without intensive scrutiny of the historian's specialized knowledge of the issues in the present case. *See*, *e.g. Smelser v. Norfolk Southern Ry. Co.*, 105 F.3d 299, 303 (6th Cir. 1997) (explaining that courts must examine "not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."); *see also*, *Berry v. Crown Equipment Corp.*, 108 F. Supp. 2d 743, 749 (E.D. Mich. 2000) (applying the rule from *Smelser* and excluding a proffered expert as unqualified).

The only caselaw Plaintiff cites for its assertion that Dr. Courtwright should be permitted to testify regarding marketing causation in the litigation is a case decided more than one hundred years ago, *Pierce v. United States*, 252 U.S. 239, 267 (1920), which is completely devoid of any reference to parties' experts or expert opinions. *Id*. at 4. In *Pierce*, the U.S. Supreme Court overruled the convictions of several Defendants because the Court found that the Defendants' pamphlet, which argued that the U.S. government entered World War I for financial reasons and not the reasons as stated by Congress, was not a "false statement" under the Espionage Act. *Pierce*, 252 U.S. 239 at 66-67. The Court found that there were arguably multiple causes for war and only mentions historians in the context that they "rarely agree in their judgment as to what was the determining factor in a particular war… ." *Id*. at 267. *Pierce* does not provide any support for Plaintiff's assertion that Dr. Courtwright is qualified to opine on pharmaceutical marketing causation, which is outside of his expertise.

Courts have also found that historian experts do not possess the requisite specialized knowledge to opine on a topic where their area of expertise relates to historical periods prior to significant historical changes related to the specific topic of the expert's opinions. *Aldasoro v.*

5

*Kennerson*, 922 F. Supp. 339, 364, 109 Ed. Law Rep. 163 (S.D. Cal. 1995).[3] Here, even if this Court finds that Dr. Courtwright is qualified as an expert in the effects of pharmaceutical marketing, his testimony regarding this topic should still be excluded because Dr. Courtwright's materials Plaintiff cites in its Opposition Motion primarily discuss the history of drug usage in the United States prior to 2000.[4]

Therefore, the Court should not only exclude Dr. Courtwright's marketing causation testimony because his opinions violate the CT2 Court's prior order against impermissible evidence regarding defendants' state of mind or intent, but also because he is still not qualified to opine on those matters.

## II. James Rafalski

### A. Kroger Requests that this Court to Apply its Earlier Rulings as to Mr. Rafalski, Not Extend Them

Plaintiff is incorrect in asserting that Kroger wishes to "extend, rather than apply" the Court's prior rulings in CT1 and CT3 striking Mr. Rafalski's opinions that contained improper legal conclusions. *See* Dkt. 4946 at 5. In CT1, the Court found that Mr. Ralfaski has "no legal training and is not an expert in the law" and therefore "to the extent Rafalski expresses opinions as to what the law requires…His opinions are not admissible." *In re Opiate*, 2019 WL 3934490,

---

[3] In *Aldasoro*, the plaintiffs alleged that an at-large election system for a local school board violated the federal Voting Rights Act. One of the plaintiffs' witnesses, Dr. Romo, was a historian who specialized in voter discrimination in California and in the geographic area involved in the suit. However, the court concluded that "his area of expertise involved events that occurred before 1970" and that he had failed to consider significant population changes that had occurred after 1970 or the post-1970 laws that had been enacted to enhance minority voting opportunities. Larson, *Qualifying Historians as Expert*s, 130 Am. Jur. Proof of Facts 3d 89 (Originally published in 2012) (Updated February 2023) (quoting *Aldasoro*, 922 F. Supp. 339 at 364).

[4] *See*, *e.g.* David Courtwright, *Dark Paradise: A History of Opiate Addiction in America, 1822–1940* (2001), which clearly only examines opioid addiction through 1940 and does not implicate Kroger or any other pharmacies' marketing practices; *see also* David Courtwright, *Forces of Habit: Drugs and the Making of the Modern World* (2002) where Dr. Courtwright only discusses the global drug trade through the Twentieth Century.

6

at *3-5 (N.D. Ohio Aug. 20, 2019) (Dkt. 2494 at 8). In CT3, the Court upheld the CT1 ruling finding that "the Court will impose well-established legal principles *generally prohibiting experts from opining as to what the law requires*." *In re Opiate*, 2021 WL 4060359 at *2 (N.D. Ohio Sept. 7, 2021) (Dkt. 3929 at 7) (emphasis added) (internal citations omitted).

Therefore, the Court should apply its CT3 ruling to Mr. Rafalski's CT7 report, and prohibit Mr. Rafalski and other experts from expressing opinions as to what the law requires.

### B. Mr. Rafalski's Report Contains Improper Interpretations of Law that Should Be Excluded

In "Section L" of his CT7 report, Mr. Rafalski discusses the DEA Chemical Handler's Manual, which he argues "Walgreens and others have relied on…as guidance provided by the DEA regarding its suspicious order monitoring system for Schedule II and III controlled substances." *See* Rafalski CT7 Rpt. at 37. Mr. Rafalski attempts to draw a parallel between the Drug Enforcement Agency's Chemical Handlers Manual and guidelines related to "Suspicious Orders of Listed Chemicals," which is defined by 21 USC § 830(b)(1)(A) as "orders of 'extraordinary' size," and the requirement under 21 CFR 1301.74(b) that DEA registrants must "design and operate a system to disclose to the registrant suspicious orders of controlled substances." Dkt. 4889 at 8 (quoting *Id.*). By conflating the requirements of the two statutes, Mr. Rafalski concludes that a threshold of "extraordinary size" for Listed Chemicals in 21 USC § 830 would "[fail] to detect orders of 'unusual size' and is thus not *compliant* with 21 CFR 1301.74(b)." *Id*. (emphasis added).

Sixth Circuit courts agree with courts in other circuits that expert testimony that communicates a legal conclusion should be excluded, as well as testimony that discusses, explicitly or implicitly, a legal standard. *Berry v. City of* Detroit, 25 F.3d 1342, 1353 (6th Cir. 1994) (adopting *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992)). Here, Mr. Rafalski offers his

7

unqualified interpretation of what is required for a SOMS system and more notably, whether a particular SOMS system would be *compliant* under federal law (21 CFR 1301.74(b)). Mr. Rafalski is not a lawyer and therefore should not offer his interpretations of legal statutes. Additionally, this Court explicitly told Mr. Rafalski that he could not "opine as to what the law requires," which is exactly what he attempts to do in Section L. Dkt. 3929 at 7. Therefore, the Court should still exclude, in the entirety, his opinions under Section L and throughout his report to the extent they contain legal conclusions or interpretations of law.

### III.  Anna Lembke

#### A. The Relief Sought by Kroger in Excluding the Marketing and Pharmacy Practices Opinions of Dr. Lembke Is Appropriate in Scope

i. The Court Should Exclude Dr. Lembke's Opinion #4 in its Entirety Because it Clearly Violates the Court's Prior Rulings

In Kroger's Motion to Exclude, it sought to exclude the entirety of Dr. Lembke's Opinion #4[5] and supporting opinions, spanning from pages 27 through 91 of her CT7 report, because it contained numerous opioid-related marketing conclusions that violate the Court's CT1 and CT3 rulings. Dkt. 4889 at 3. Plaintiff is correct that the Court in CT1 stated that its ruling regarding the exclusion of Dr. Lembke's marketing opinions applies narrowly, only to…*opinions...that purport to find Defendants' marketing efforts resulted in or caused increased sales and/or increased prescriptions of opioids*. *See* Dkt. 4946 (quoting MDL ECF No. 2549 at 12) (emphasis in original). However, the thesis of Opinion #4, including all the supporting opinions, is that "The

---

[5] Dr. Lembke's Opinion #4 states, "**The Pharmaceutical Opioid Industry contributed substantially to the paradigm shift in opioid prescribing through misleading messaging about the safety and efficacy of prescription opioids. The Industry disseminated these misleading messages through an aggressive sales force, key opinion leaders, medical school curricula, continuing medical education courses, seeding the medical literature, clinical decision support tools, professional medical societies, patient advocacy groups, the Federation of State Medical Boards, and The Joint Commission.**" Lembke CT7 Rpt. at 27 (emphasis in original).

8

Pharmaceutical Opioid Industry [6] contributed substantially to the paradigm shift in opioid prescribing through misleading messaging about the safety and efficacy of prescription opioids." *See* Lembke CT7 Rpt. at 27.

According to Dr. Lembke, this "paradigm shift in opioid prescribing" occurred through the marketing activities of the various Defendants by way of "aggressive sales force[s] [which were] incentivized to target doctor's offices and pharmacies to increase sales." *Id.* at 29. Dr. Lembke's Opinion #4 is that allegedly misleading messaging about the safety and efficacy of opioids by the various Defendants increased opioid sales. Therefore, the Court should exclude Dr. Lembke's Opinion #4 in its entirety because the opinion itself and all its supporting opinions purport to show that "Defendants' marketing efforts resulted in or caused increased sales and/or increased prescriptions of opioids." MDL ECF No. 2549 at 12.

> ii.  The Court Should Exclude Several of Dr. Lembke Pharmacy Practices Opinions Because They Violate Prior Orders

Kroger and Plaintiff agree that Dr. Lembke's opinion that the Defendant Pharmacies "failed to provide pharmacists with sufficient time, resources, or incentives to investigate red flags," in her CT7 reports clearly violates the Court's CT1 and CT3 rulings. *See* Dkt. 4946 at 9; see also Dkt. 4889 at 5 (quoting Lembke CT7 Rpt. at 10 and 100). Therefore, the Court should exclude this statement from Dr. Lembke's CT7 Report. However, the Court should also exclude Dr. Lembke's opinion (and all supporting opinions and materials) that "Pharmacy Defendants failed to adequately respond to 'red flags' for misuse and diversion or support individual pharmacists in these efforts." Lembke T7 Rpt. at 142.[7]

---

[6] Dr. Lembke notes that, when used in her report, the term "Pharmaceutical Opioid Industry" includes "the defendants in this case" including pharmacies such as Kroger. Lembke CT7 Rpt. at 9 n.24.

[7] Plaintiff argues that any "additional statements" outside of Dr. Lembke's numbered opinions are not actually "opinions" and thus materials outside of Dr. Lembke's explicitly stated opinions should not be excluded. *See* Dkt. 4946 at 9, n. 9. Kroger disagrees and notes that the opinion Kroger cites under the Opinion #6 subheading, that

9

Although the Court in CT1 and CT3 permitted Dr. Lembke to "opine as to…what red flags were, and whether in her opinion…the pharmacists were following those red flags…," the issue with Dr. Lembke's CT7 opinion is that she argues pharmacies failed to support individual pharmacists in their effort to prevent misuse and diversion. *See* Dkt. 4946 at 10 (quoting MDL ECF No. 3953, at 12–13). Plaintiff already agrees that Dr. Lembke may not opine that the Pharmacy Defendants "failed to provide pharmacists with sufficient time, resources, or incentives to investigate red flags." *Id.* at 9. However, the Plaintiff does not, nor could it explain how Dr. Lembke's assertion that the Pharmacy Defendants, including Kroger, failed to support individual pharmacy efforts to prevent prescription opioid misuse and diversion is not simply a restatement of her broader argument that the Defendant Pharmacies failed to provide pharmacists with sufficient time, resources, etc., to investigate red flags. Therefore, the opinion that "Pharmacy Defendants failed to adequately respond to 'red flags' for misuse and diversion or support individual pharmacists in these efforts" and any related opinions should be excluded for the same reasons. *See* Dkt. 4889 at 6.

### B. The Court Should Not Alter its Prior Rulings to Permit Dr. Lembke to Testify Regarding Opioid Marketing Causation

    i. <u>Prior Rulings Clearly Indicate that Dr. Lembke Is Not Qualified as an Expert in Opioid Marketing Causation</u>

The Court in CT1 and CT3 found that Dr. Lembke was not qualified to opine on several matters related to opioid marketing causation. In CT1, the Court ruled that Dr. Lembke was not qualified to offer opinion and testimony "regarding a causal connection with respect to

---

"Pharmacy Defendants failed to adequately respond to 'red flags' for misuse and diversion or support individual pharmacists in these efforts" mirrors Dr, Lembke's main argument in Opinion 6 that the Pharmacy Defendants "ignored 'red flags' for misuse and diversion…and failed to provide pharmacists with sufficient time, resources, or incentives to investigate red flags." Lembke Rpt. at 100 and 142. Thus, the Court should exclude both opinions including supporting materials.

10

pharmaceutical marketing." *In re Opiate*, 2019 WL 4054054998 at \*6. In CT3, the Court affirmed this ruling and found that the plaintiff's new evidence that Dr. Lembke had allegedly expanded her field of expertise regarding pharmaceutical marketing was insufficient to qualify her to opine regarding a causal connection between the Pharmacy Defendants' marketing of opioids and an increase in the supply of prescription opioids. Dkt. 3953 at 6-7. Similarly, here, the Court should find that the Plaintiff's proffered new evidence of Dr. Lembke's alleged expertise in opioid marketing causation is insufficient. *See infra* Section III. Part B.ii.

The Court should also disregard Plaintiff's reference to the CT4 Order, which denied the Defendant's Motion to Exclude Dr. Keyes' and Dr. Lembke's marketing causation opinions. *See Id.* (citing Order on Daubert Motions, *City & County of San Francisco v. Purdue Pharma*, No. 18-cv-07591-CRB (N.D. Cal. May 6, 2022) (ECF No. 1297 at 1)). According to Plaintiff, the Court found that "Dr. Lembke was qualified to opine on the effects of *Defendants*' marketing practices." See Dkt. 4946 at 14 (citing Id.) (emphasis added). The Plaintiff also requests the Court to "adhere to the narrow limits of its prior rulings." Dkt. 4946 at 15. However, Kroger was not a *Defendant* in CT4, and the Court should not apply its CT4 ruling to the instant case. Instead, the Court should uphold its prior rulings from CT1 and CT3 prohibiting Dr. Lembke from testifying regarding opioid marketing causation.

      ii. <u>Plaintiff's New Evidence of Dr. Lembke's Alleged Expertise Is Insufficient for the Court to Deviate from its Prior Rulings</u>

Plaintiff argues this Court should completely disregard the CT1 and CT3 rulings that explicitly prohibited Dr. Lembke from testifying regarding opioid marketing causation in light of two new pieces of evidence. This evidence is unconvincing. First, the Plaintiff argues that Dr. Lembke's participation in the Stanford-*Lancet* Commission's 2022 Report, "Responding to the opioid crisis in North America and beyond…" the Standford-*Lancet* Report qualifies Dr. Lembke

11

to opine about how pharmacies and others marketing practices caused the alleged opioid crisis. *See* Dkt. 4946 at 12-13. However, the Standford-*Lancet* Report references the marketing activities of opioid manufacturers and distributors, not pharmacies.[8] *See* Humphreys K, et al. Responding to the opioid crisis in North America and beyond: Recommendations of the Stanford-Lancet Commission. *The Lancet Commissions*. Vol. 399, Iss. 10324, 555-604 at 566 (Feb. 2, 2022). Therefore, the Court should disregard this new evidence of expertise offered by the Plaintiff.

Second, the Plaintiff argues that mere invitations from two governmental bodies, only one of which is an agency located within the United States, to speak about the alleged opioid epidemic and its causes clearly indicates that Dr. Lembke is "an acknowledged expert on the causal role of the industry's false and misleading promotional activities." *See* Dkt. 4946 at 13-14. However, neither invitation references Dr. Lembke's alleged expertise in opioid marketing causation. Additionally, an invitation to speak about the alleged opioid crisis from a Ministerial Assistant to an Associate Minister within a Canadian governmental entity, is by no means convincing that Dr. Lembke is somehow qualified to opine on opioid marketing causation in this litigation, which falls exclusively under the jurisdiction of the United States. *Id*. at 13. Therefore, the Court should not be swayed by these two invitations and instead, uphold its prior rulings, prohibiting Dr. Lembke from opining on opioid marketing causation.

## CONCLUSION

The Court should grant Kroger's Motion to Exclude. Specifically, the Court should: (1) grant the motion with respect to Dr. Courtwright because Dr. Courtwright's CT7 Report violated

---

[8] The Standard-*Lancet* Commission Report discusses the marketing activities of the "pharmaceutical industry." It defines these marketing activities as "in-person office visits, large and small gifts (eg, branded office supplies, meals and receptions at conferences, travel expenses), and direct financial payments for endorsing industry products in lectures and case conferences" and describes how these marketing activities were employed by opioid manufacturers and distributors, *not* pharmacies like Kroger. Humphreys K, et al., Vol. 399, Iss. 10324 at 566-68.

12

the Court's prior rulings and hold that Dr. Courtwright, like Dr. Lembke, is not qualified to opine on matters related to opioid marketing causation; (2) grant the motion with respect to Mr. Rafalski because his CT7 Report contains legal analyses, which violates this Court's previous Orders; (3) grant the motion with respect to Dr. Lembke because her CT7 Report contains opinions regarding opioid marketing causation and pharmacy practices, which this Court found previously should be excluded; and (4) deny Plaintiff's request for the Court to reconsider its prior rulings prohibiting Dr. Lembke from discussing opioid marketing causation.

Dated: March 23, 2023

                                            Respectfully submitted,

                                            **The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II,**

                                            **By counsel,**

*/s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)
Ashley Hardesty Odell, Esq. (WVSB 9380)
Fazal A. Shere, Esq. (WVSB 5433)
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
ahardestyodell@bowlesrice.com
fshere@bowlesrice.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on March 23, 2023, the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record. Copies of this document may be obtained through the CM/ECF system.

*/s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)
