# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION </br></br> THIS DOCUMENT RELATES TO: </br></br> *All Cases* | ) MDL 2804 </br> ) </br> ) </br> ) Case No. 1:17-md-2804 </br> ) </br> ) </br> ) Judge Dan Aaron Polster </br> ) </br> ) **ORDER REGARDING FAILURES TO** </br> ) **SUBMIT PLAINTIFF FACT SHEETS** |

Despite multiple directives from this Court, many governmental plaintiffs still have not submitted a Plaintiff Fact Sheet ("PFS") into the PEC's PFS Repository. This Order presents those plaintiffs with one last opportunity to correct this deficiency. Accordingly, the Court **ORDERS** all governmental subdivision plaintiffs that have not already done so to submit a complete PFS into the PFS Repository within 45 days of the date of this Order. Governmental subdivision plaintiffs who fail to comply with this Order will have their case ***dismissed with prejudice*** for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b). The PEC shall circulate this Order through its own internal channels to ensure the broadest possible dissemination.

## Background

In its inaugural Case Management Order ("CMO-1"), the Court ordered the parties to meet and confer and submit a proposed order regarding PFSs. *Case Management Order One* at 14 (¶ 9.i.) (docket no. 232). The parties' meet and confer process resulted in the Court's June 19, 2018, *Fact Sheet Implementation Order* (docket no. 638). The *Fact Sheet Implementation Order*

required "governmental entities" to serve a completed PFS on Defense Liaison Counsel via email.[1] *Id.* at 1.

Recently, the Court conducted several settlement conferences with the Second- and Third-Tier Defendants, also referred to as the Non-Litigating Defendants ("NLDs").[2] During those meetings, the Court discovered the Defense Liaison Counsel's repository for PFSs had inadvertently been lost or destroyed, so that the NLDs could not obtain access to many of the PFSs. Due to that revelation, on October 6, 2022, the Court ordered the PEC to create its own, new, central repository for all PFSs ("PFS Repository") and ordered all "governmental plaintiffs" to re-serve their PFSs into the newly created PFS repository.[3] *See Order to All Governmental Plaintiffs Regarding Re-Service of Plaintiff Fact Sheets* (docket no. 4664).

During subsequent settlement conferences with the NLDs, the Court further learned that, despite its multiple orders, many governmental subdivision plaintiffs had still not served or re-served a PFS into the PFS repository. Therefore, on January 3, 2023, this Court ordered NLDs to provide by January 30 "a list showing all plaintiff-subdivisions that named the NLD in an MDL case, but the plaintiff . . . did not serve a PFS to the PFS Repository." *Order Regarding Plaintiff Fact Sheets and Service of Process* at 2 (docket no. 4801). On March 29, 2023, the PEC filed an omnibus response (docket no. 4977) to the Court's *Order Regarding Plaintiff Fact Sheets and*

---

[1] On June 20, 2018, the Court clarified that the *Fact Sheet Implementation Order* does not apply to State or Tribal plaintiffs in the MDL. *See Order Clarifying Fact Sheet Implementation Order* (docket no. 642).

[2] The term "NLD" refers here, as it did in the Court's prior orders, to any **defendant family** listed in docket nos. 4380 or 4670. *See Order Regarding Plaintiff Fact Sheets and Service of Process* at 1, n.2 (docket no. 4801).

[3] Many of the defendants' lists supplied to the Court, purportedly out of an abundance of caution, listed Tribal plaintiffs, which they allege also failed to serve or re-serve a PFS. The Court's *Order to All Governmental Plaintiffs Regarding Re-Service of Plaintiff Fact Sheets* (docket no. 4664) unfortunately used similar imprecise language to what was used in CMO-1. The Court now clarifies, as it did then, that for the purposes of this, that, and all other PFS orders going forward, unless expressly stated otherwise, "governmental plaintiffs" ***does not*** apply to State or Tribal plaintiffs in the MDL. The term is intended only to apply to city- and county-type governmental subdivision plaintiffs.

*Service of Process*. A careful review of those lists revealed that many plaintiffs have corrected the PFS deficiencies identified by defendants; however, there are still many instances where a plaintiff was required to, but has not, submitted or resubmitted a PFS to the Repository.

The Court concludes that, for the reasons stated below, plaintiffs who have so far failed to serve a PFS into the Repository will be given this last chance to do so. Failure to abide by this Order, however, will be considered egregious, dilatory, or contumacious conduct and will result in their case being dismissed **with prejudice**.

### Legal Standard

Despite the plain language of Rule 41(b) that "***a defendant*** may move to dismiss the action or any claim against it," the Supreme Court has held that district courts have the inherent authority to dismiss cases on their own motion for want of prosecution under Fed. R. Civ. P. 41(b) (emphasis added). *See Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962) ("Neither the permissive language of the Rule—which merely authorizes a motion by the defendant—nor its policy requires us to conclude that it was the purpose of the Rule to abrogate the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief. The authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.").

"Dismissal under Fed. R. Civ. P. 41(b) is a harsh sanction which the court should order only in extreme situations in which a clear record of delay or contumacious conduct by the plaintiff can be shown." *Bush v. City of Toledo*, No. 3:06 CV 7047, 2008 WL 728368, at *2 (N.D. Ohio Mar. 14, 2008) (citing *Jones v. Schindler Elevator Corporation*, 2007 WL 4556673, *5 (N. D.

Ohio 2007)). Generally, "[t]o be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." *Id.* (quoting *Shepard Claims Service v. William Darrah & Associates*, 796 F.2d 190, 194 (6th Cir.1986)).

Decisions to dismiss under Rule 41(b) are reviewed for abuse of discretion. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 369 (6th Cir. 1997). "[I]n assessing the appropriateness of a district court's decision to dismiss a complaint for failure to prosecute, [the Sixth Circuit considers]: (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001) (citing *Knoll v. American Tel. & Tel.*, 176 F.3d 359 (6th Cir.1999)).

**Analysis**

PFSs are an important tool that can aid judicial efficiency in large-scale complex litigation, such as the Opioid MDL. *See* Manual for Complex Litigation, Fourth at § 22.83 (describing PFSs as being "used successfully in the breast implant and diet drug litigations" and used to, for example, "help prevent multiple requests for the same information."). As a discovery mechanism, requiring PFSs early in litigation may aid in facilitating settlement negotiations. *See id.* at § 13.12 (explaining that "the parties may be unwilling or unable to settle until they have conducted some discovery).

Here, dismissal under Rule 41(b) for failure to prosecute is warranted because all four of the Sixth Circuit's considerations are met. First, this Court has been very generous in providing many opportunities for the plaintiffs to supply PFSs. There can be little doubt that any continued

failure to submit a PFS at this point—nearly five years after the Court's first PFS implementation order (docket no. 638)—must be due to "willfulness, bad faith, or fault." *Mulbah*, 261 F.3d at 589.

The Court has expressly required plaintiffs to exchange or provide PFSs numerous times. *See, generally*, the various orders described above, docket nos. 232; 638; 642; 4664; 4801; *see also*, docket no. 1183 (granting additional time for some plaintiffs to submit PFSs due to natural disaster); docket no. 1822 (overruling some plaintiffs' objections to the PFS requirement); docket no. 3795 (requiring updated PFSs for Non-Participating Subdivisions in the Distributor and/or Janssen Settlements). There is no good reason to countenance continued failure to submit a PFS.

Second, with many of the major corporate defendants having now reached global settlement agreements,[4] the Court has naturally turned its attention to the NLDs. These defendants have all expressed an interest in settling their opioid cases. Not having PFSs for all the plaintiffs naming them as defendants has hampered the NLDs' ability to evaluate the cases filed against them. It has also hindered the Court's ability to effectuate meaningful settlement discussions. The NLDs undoubtedly have been, or will be, prejudiced by those plaintiffs' continuing failure to submit a PFS to the Repository.

Third, the appellate court will consider "whether the dismissed party was warned that failure to cooperate could lead to dismissal." *Id.* As stated previously, this Court has already given ample warning and opportunity for plaintiffs to correct their PFS deficiencies. However, the Court is sympathetic to the facts that: (1) some of these plaintiffs may have filed a PFS into the Defense Liaison Repository that is now unrecoverable; (2) some of these plaintiffs may have inadvertently missed some of the Court's recent orders on an MDL docket rapidly approaching 5,000 entries;

---

[4] Cardinal, McKesson, AmerisourceBergen, Janssen, Allergan, Teva, CVS, Walgreens, and Walmart have all announced settlement agreements. Purdue, Mallinckrodt, and Endo have declared bankruptcy.

and/or (3) plaintiffs' counsel—especially counsel who may have hundreds of MDL clients—may have made an administrative oversight due to their large number of clients.[5] This Order, therefore, acts as a final warning that continued failure to submit a PFS into the PFS Repository will result in ***dismissal with prejudice***.

In reaching its decision, the Court considered, among other things, the less drastic sanction of dismissal *without* prejudice. Since the Joint Panel on Multidistrict Litigation has ceased transferring cases into this MDL however, *see* Joint Panel on Multidistrict Litigation April 8, 2022, Order, MDL No. 2804, document no. 9586, the Court is wary that some plaintiff's attorneys, with knowledge their case will no longer be transferred into the MDL, may intentionally fail to file a PFS in order to have their cases dismissed, then refile outside of the MDL to try to secure an earlier trial date. Such strategic behavior would undermine the Court's efforts to facilitate global settlements between these plaintiffs and the NLDs, which is one of the primary purposes of the Court's PFS orders in the first place. Thus, the lesser sanction of dismissal *without* prejudice will not only fail to "achieve compliance with its order," it may instead encourage noncompliance. *Mulbah*, 261 F.3d at 589. The Court also notes that the sanction of dismissal with prejudice remains purely hypothetical at this point and can easily be avoided by timely submitting a PFS by the deadline provided in this Order.

Accordingly, all government subdivision plaintiffs who have not submitted a PFS into the PFS Repository must do so within 45 days of the date of this order, or have their cases ***dismissed with prejudice***. The PEC shall circulate this order as widely as possible to ensure plaintiffs and

---

[5] *See* the Court's companion *Order Regarding Service of Process*, issued contemporaneously with the instant order (discussing the administrative burden associated with an MDL this large and the unique circumstances that burden creates).

their counsel have notice. At the appropriate time, any defendant may move for dismissal with prejudice of any case filed by a plaintiff that fails to comply with this Order.

**IT IS SO ORDERED.**

                                              **/s/ Dan Aaron Polster  April 6, 2023**
                                              **DAN AARON POLSTER**
                                              **UNITED STATES DISTRICT JUDGE**