UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION )<br>)<br>THIS DOCUMENT RELATES TO: )<br>)<br>*All Cases* )<br>)<br>)<br>) | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**ORDER REGARDING<br>SERVICE OF PROCESS** |

On November 9, 2022, the Court requested "suggestions on mechanics to winnow and resolve remaining cases and claims" of the Non-Litigating Defendants ("NLDs").[1] *Order Regarding Second Tier Defendants* (docket no. 4742). After reviewing those suggestions, the Court issued its January 3, 2023, *Order Regarding Plaintiff Fact Sheets and Service of Process* (docket no. 4801). That Order required, among other things, NLDs to compile a list of service defects, and Plaintiffs to respond to those defects.

There remain well over 3,000 cases in the MDL. Many of those cases name more than 20 defendants. The administrative burden to properly serve every defendant is immense.[2] To help alleviate some of that burden, the Court in its inaugural Case Management Order ("CMO-1") wrote, "Defendants are encouraged to avoid unnecessary expenses associated with serving the summons and, absent good cause, shall grant requests to waive service pursuant to Fed. R. Civ. P. 4(d)(1)." *Case Management Order One* at 10 (¶ 6.c.) (docket no. 232).

---

[1] The term "NLD" refers here, as it did in the Court's prior orders, to any ***defendant family*** listed in docket nos. 4380 or 4670. *See Order Regarding Plaintiff Fact Sheets and Service of Process* at 1, n.2 (docket no. 4801).

[2] The administrative burden on Defendants to return executed waiver requests is also very large.

Further complicating the issue of service of process, the Court—upon motion by the PEC—allowed a short-form complaint amendment process where plaintiffs could add or remove defendants based on an analysis of ARCOS data. *See Opinion and Order Regarding Approval of a Short Form Complaint* (docket no. 1282). It is not surprising, then, that there were some administrative oversights by all parties with respect to service of those complaints.

For example, in one instance, plaintiffs' counsel states they timely served notice and requested a waiver, but never received a response from the defendant, despite the directive in CMO-1. In another instance, plaintiffs' counsel states they represent 568 clients,[3] 36 of whom sued one particular defendant, and service was properly made on that defendant on behalf of 35 of those clients—inadvertently overlooking one. Virtually all plaintiffs' counsel state they perfected or attempted to perfect service promptly upon being made aware of any defect.

The purpose of the Court's prior orders was not to punish plaintiffs for administrative oversights made in the course of a good faith attempt to prosecute their cases—especially where, as here, the number of cases and the number of defendants in each case is quite large. Nor was the Court's purpose to reward any defendant for their own administrative mistakes. The purpose underlying the Court's January 3, 2023, Order was to begin a process of resolving remaining cases, claims, and issues, where a plaintiff is not actively involved in monitoring and prosecuting its case against a given defendant.

Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

---

[3] That plaintiff's counsel asserts that it added over 4,000 defendants during the short-form amendment process.

> specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Even where a plaintiff fails to show good cause, however, the Rule is clear that the Court has discretion to order that service may be made within a specified time, rather than to dismiss the case. Recently, in *United States v. Oakland Physicians Med. Ctr., LLC*, the Sixth Circuit provided a list of seven factors "[a] district court should consider . . . when deciding whether to grant a discretionary extension of time in the absence of a finding of good cause:"

> (1) whether an extension of time would be well beyond the timely service of process;
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
> (3) whether the defendant had actual notice of the lawsuit;
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, *i.e.*, would the plaintiff's lawsuit be time-barred;
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

44 F.4th 565, 569 (6th Cir. 2022), *cert. denied sub nom. Mohamad Sy v. Oakland Physicians Med. Ctr., LLC*, 143 S. Ct. 782 (2023).

There is no question that service was not made in many MDL cases against many defendants within 90 days after the complaint was filed. Thus, there are two issues for the Court to evaluate: (1) whether there was good cause for the delay (if so, the Court ***must*** grant an extension of time); and (2) if there was not good cause, whether the Court should nevertheless exercise its discretion to grant an extension of time to the plaintiffs.

First is the issue of good cause. As a practical matter, across all MDL cases there were at least 2,177 alleged service defects. *See PEC Omnibus Response* (docket no. 4977-1). Given the large number of alleged defects and wide range of responses thereto, there is simply no efficient

3

way the Court can conduct an individualized analysis of each service defect to determine whether the plaintiff can show good cause for their failure. From its review, however, the Court finds that good cause is likely shown in at least a substantial portion of the thousands of alleged service defects. In those cases, by Rule, the Court "***must*** extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m) (emphasis added).

Second is the issue of a discretionary extension in the absence of good cause. As the Court notes, there was good cause for some of the thousands of alleged service defects. In other instances, there was likely no good cause for the service defects. Thus, the Court looks to the *Oakland Physicians* factors.

Although an extension in this case would be well beyond the 90-day timely service deadline,[4] many of the other factors are neutral or weigh in favor of granting an extension. For example, the Court has only recently turned to these "Second and Third Tier" NLD cases and the NLDs have not been prejudiced in the interim and will not be meaningfully prejudiced going forward (other than the inherent prejudice of having to defend the suit).[5] The NLDs obviously had actual notice of the lawsuits where service was not perfected, because the NLDs were the ones that brought them to the Court's and Plaintiffs' attention.[6] As mentioned previously, most plaintiffs attempted to cure their service defects immediately upon being made aware of their existence.[7]

---

[4] Factor 1 weighs in favor of dismissal.

[5] Factor 2 weighs in favor of granting an extension.

[6] Factor 3 weighs in favor of granting an extension.

[7] Factor 5 weighs very slightly in favor of granting an extension.

Finally, the sheer magnitude of the MDL creates its own unique circumstance that affects all of these inextricably intertwined, related cases.[8]

The Court concludes, therefore, that the simplest solution to achieve its stated goal of winnowing these cases, while at the same time adhering to the federal rules, is to use its discretion to extend the deadline for perfecting service to the date 45 days from the date of this Order. Now that each plaintiff has been made aware of its service discrepancies and administrative oversights, those defects should be easily cured within that timeframe. In fact, many plaintiffs have already cured defects the NLDs recently disclosed. This new deadline will have the desired effect of dismissing the cases or claims of those plaintiffs that are neither monitoring the MDL nor prosecuting their cases. Defendants are again encouraged to avoid unnecessary expenses associated with serving the summons and, absent good cause, shall grant requests to waive service pursuant to Fed. R. Civ. P. 4(d)(1).

Finally, as in this Order's companion Order regarding failures to submit Plaintiff Fact Sheets, and for the reasons stated therein—notwithstanding the language of Rule 4(m)—failure to comply with this order will result in ***dismissal with prejudice*** pursuant to Federal Rule of Civil Procedure 41(b) for failure to prosecute.

Accordingly, all governmental subdivision plaintiffs that have not perfected service must do so within 45 days of the date of this Order or have their cases or claims, as appropriate, ***dismissed with prejudice***. The PEC shall circulate this Order as widely as possible to ensure plaintiffs and their counsel have notice. At the appropriate time, any defendant may move for

---

[8] Factor 7 weighs in favor of granting an extension. Factors 4 and 6 are neutral or not applicable.

5

dismissal with prejudice of any claim against them filed by a plaintiff that fails to comply with this Order.

   **IT IS SO ORDERED.**

               **/s/ Dan Aaron Polster  April 6, 2023**
               **DAN AARON POLSTER**
               **UNITED STATES DISTRICT JUDGE**