UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *Track Three Cases* | ) ) ) ) ) ) ) ) ) ) | MDL 2804 <br><br> Case No. 1:17-md-2804 <br><br> Judge Dan Aaron Polster <br><br> **<u>ORDER REGARDING PLAINTIFFS' MOTION TO ENFORCE THE INJUNCTION ORDER</u>** |

On February 2, 2023, the Court issued its *Track Three Injunction Order* (docket no. 4893), requiring Defendants Walgreens, Walmart, and CVS to undertake various procedures and meet various requirements surrounding opioid prescriptions.[1] On March 13, 2023, the *Track Three* Plaintiffs filed a motion: (1) for an order directing Defendants to comply with certain provisions of the *Injunction Order* that Plaintiffs believed Defendants were not heeding; and (2) to permit disclosure, to members of the Plaintiffs' Executive Committee, of documents the *Injunction Order* required the Defendants to produce. *See* docket no. 4952. On March 23, 2023, Defendants Walgreens, Walmart, and CVS each filed an opposition to Plaintiffs' motion. *See* docket nos. 4965, 4967, 4969, respectively. On March 29, 2023, Plaintiffs filed a reply in support. *See* docket no.

---

[1] Docket no. 4893 was actually an *Injunction Order Nunc Pro Tunc*—it was a reissue of the Court's August 17, 2022, *Track Three Injunction Order* (docket no. 4611-1), but with some minor changes. For simplicity, the Court refers herein to this *Nunc Pro Tunc* Order as simply the "*Injunction Order.*"

4976. For the reasons set forth below, Plaintiffs' motion is **DENIED**, but the Court adds certain clarifying instructions for the parties.

\* \* \* \* \*

The Court first addresses Defendants' procedural argument. Walgreens and CVS correctly note the *Injunction Order* has its own internal enforcement mechanism at Section XVI. Defendants argue Plaintiffs' motion should be denied because Plaintiffs failed to properly employ this mechanism in its entirety. Plaintiffs reply that they "properly complied with the Order's enforcement provisions as set forth in the email exchanges between the parties provided previously to the court." Reply at 2 (docket no. 4976).

The Court agrees with Defendants that Plaintiffs failed to comply fully with the *Injunction Order's* procedural requirements, but this is partly the fault of the Court's own language, so the Court will not deny the motion on that ground.

Plaintiffs' emails may, as a technical matter, comply with some portions of the *Injunction Order's* enforcement mechanism; but these emails fall short of "follow[ing] the entire process outlined [in §XVI.A]." *Injunction Order* § XVI.B. Specifically, the *Injunction Order's* enforcement mechanism provides, in relevant part:

a. In the event a Potential Violation is identified by a County, the County shall notify the Defendant and the Court in writing (the "County Notice").

b. Within thirty (30) days of receipt of the County Notice,[2] the Defendant shall provide a written response to the County and the Court. The response shall include the Defendant's position as to the act(s) of non-compliance with this Order's Terms, including, possibly, a statement setting forth why the Defendant believes it is in

---

[2] Although the *Injunction Order* allows for 30 days, Defendants filed their responses within 10 days of Plaintiffs' motion, presumably because it was unclear whether Plaintiffs were using traditional motion practice or were attempting to follow the process outlined in the *Injunction Order*.

  substantial compliance with the relevant provision(s) or a statement explaining how the Potential Violation has been addressed.

 c. If the County and/or the Court wish to meet with the Defendant, the Defendant shall promptly make itself available for such a meeting.

*Id.* § XVI.A.2.

Because Plaintiffs' email correspondence with the Defendants, copying the Court, could be construed as fulfillment of the first step of this process, the Court will not deny Plaintiffs' motion on this procedural ground. The Court concludes, however, that the *Injunction Order* is vague in that it does not expressly describe the mechanism by which the County must provide the required notice to the Defendant and the Court. Nor does it make clear that the parties should attempt to meet and confer to resolve a Potential Violation before asking the Court to intervene.

Accordingly, the Court now clarifies that, "notify . . . in writing" means a letter brief sent to the Court via email with the phrase "Notice of Potential Violation" in the subject line. And, of course, the Court always encourages the parties, to the maximum extent possible, to attempt first to work out their differences by agreement through the meet and confer process. In its role as compliance monitor, the Court need not and should not be copied on every email exchanged between the parties.[3]

The Court further concludes that, for the purpose of resolving the present motion, the Court will construe Plaintiffs' motion and Defendants' responses as Steps (a) and (b) of the *Injunction Order* enforcement procedure. The Court does not need to meet with the parties as provided in Step (c).

---

[3] In fact, copying the Court on every email is an inefficient use of judicial resources. Many of the parties' email-exchange disagreements can and should ultimately be resolved between the parties and not rise to the level of requiring the Court's attention. When disputes do require the Court's attention, if the email exchanges are important for the Court's evaluation of a party's position, that party can append the emails to its letter brief notice or response, as Walmart has done here.

Turning now to the substance of the motion, Plaintiffs make three requests. The first is "that they be permitted to share the documents produced by [D]efendants in accordance with the *Injunctive Order* to members of the Plaintiffs' Executive Committee who have executed the standard protective orders under the applicable CMOs issued by the Court regarding documents designated as confidential by a party." Motion at 3 (docket no. 4952). In their Reply, Plaintiffs justify this request by stating: "These documents are relevant to the ongoing litigation which Third Party Payors and Private hospitals have against these defendants." Reply at 2 (docket no. 4976).

The Court denies this request for the reasons offered by Defendants. Walgreens succinctly and correctly responds:

> Plaintiffs provide no reason why they would be entitled to share Defendants' internal policy documents with all members of the PEC, including many who have no relationship with the Counties and no connection to the Track 3 trial. The purpose of sharing policy documents under Section I.C.4 of the Injunction Order is to permit the Counties themselves to understand what steps Defendants have taken to comply with the Order and to raise questions. The Court's Track 3 Injunction Order is not a vehicle for providing internal company documents to litigation counsel for other parties across the country to use for other purposes.

Walgreens' Response at 3 (docket no. 4965).

It is almost certainly true that at least some documents produced by Defendants pursuant to the *Injunction Order* will be relevant and discoverable in other litigation by other Plaintiffs. In those cases, those Plaintiffs can request production of the documents in discovery; and if properly discoverable, Defendants will have to produce them in the context of that action. But the *Injunction Order* cannot be used as a shortcut through the normal progression of case-specific discovery and pretrial proceedings. *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 846 (6th Cir. 2020) ("discovery . . . must—per the terms of the Rule [26]—be based on the court's determination of the needs of *the particular case* in which the discovery is ordered.") (emphasis added).

Accordingly, the Court denies Plaintiffs' request to share with other members of the PEC the documents produced by Defendants under the *Injunction Order*. Plaintiffs may use the documents produced by Defendants under the *Injunction Order* to evaluate pharmacy compliance, but Plaintiffs may not share those documents beyond counsel for the Counties.

Plaintiffs' second request is that Walmart be ordered to produce several of its Pharmacy Operation Manuals ("POMs"), which purportedly set forth Walmart's Prescription Validation Process; Plaintiffs assert the *Injunction Order* requires this. Motion at 2–3 (docket no. 4952). In an email from Walmart's counsel to counsel for the Counties, Walmart stated: "As a courtesy Walmart [is] willing to provide you with the policies you requested, but only if you assure Walmart that these current policies be maintained as confidential and not disseminated beyond counsel for the Counties." Response Ex. A at 2 (docket no. 4967-1). Because Plaintiffs would not give this assurance, Walmart would not produce the policies. Now, however, the Court's denial of Plaintiffs' PEC disclosure request resolves this dispute. Walmart shall provide the Counties with the requested policies, which the Counties and their counsel shall not share with the PEC or any other non-party counsel.

Plaintiffs' final request is aimed at CVS and Walgreens, and focuses on *accessibility* of certain documents created by pharmacists versus *retention* of those documents. Plaintiffs request the Court order the pharmacies to establish a written policy requiring that a pharmacist's documentation of red flag resolutions and of refusals-to-fill remain *accessible* to pharmacists for the entire 15-year term of the *Injunction Order*. CVS and Walgreens counter that the *Injunction Order* merely requires the *retention* of those records for the 15-year term, not that they remain accessible to all pharmacists for that period.

The Injunction Order is at least slightly unclear on the timeframe for accessibility. The operative provision of the Injunction Order states:

> The Defendant's CSCP Policies and Procedures shall provide that the resolution of all Red Flags and Refusals-to-Fill identified by the pharmacist must be

> documented. The pharmacist must provide a clear description of the Red Flag(s) and either (i) how the Flag was resolved before the medication was dispensed, or (ii) the reasons why the pharmacist refused to dispense the medication. The documentation should provide sufficient details in order that any subsequent reviewer will have a clear understanding of how each Flag was resolved for any review or inquiry for auditing or regulatory purposes. ***The documentation must be available and easily accessible to all pharmacists employed by the Defendant at all of its retail pharmacies. Any such records shall be maintained for the duration of this Order.***

*Injunction Order* § VIII.F (emphasis added).

That the *Injunction Order* requires Defendants to "maintain" these records for 15 years does not necessarily mean the records must also be easily accessible to a pharmacist for that entire period. Upon further reflection, the Court concludes a 15-year *accessibility* requirement is not appropriate.

Specifically, the Court is not convinced that a pharmacist—for the purpose of conducting due diligence pursuant to their corresponding responsibility—needs to review 15 years of a patient's prescription history. Indeed, as CVS points out, "OARRS, the prescription drug monitoring program operated by the Ohio Board of Pharmacy, provides pharmacists with only 'up to ***two years*** of an individual's controlled substance prescription history.'" CVS Response at 3 (docket no. 4969) (citing OARRS 2013-14 Biennial Report at 6, *available at https://www.ohiopmp.gov/documents/2013-2014_legislative_report.pdf*) (emphasis in original).

In forming its opinions during this MDL, the Court has consistently relied upon applicable statutes and regulations, the administrative actions taken by the Drug Enforcement Agency (and analogous State Agencies), and the opinions of experts and practitioners in the field of pharmacy. The Court finds highly persuasive the evidence of what the Ohio Board of Pharmacy itself makes available to pharmacists to ensure they can perform due diligence on a prescription. The Court thus concludes that the pharmacies are in compliance with the *Injunction Order* so long as: (1) the pharmacies ***maintain*** for review 15 years of documentation of their pharmacists' resolutions of

6

red flags and refusals-to-fill—and the pharmacies can upon request provide them to the County and this Court to ensure compliance with the *Injunction Order*; and (2) such documentation is ***readily available and easily accessible*** to their pharmacists for ***at least two years***, so that a pharmacist can conduct sufficient and timely due diligence to prevent diversion.

        **IT IS SO ORDERED.**

                            **/s/ Dan Aaron Polster  April 13, 2023**
                            **DAN AARON POLSTER**
                            **UNITED STATES DISTRICT JUDGE**