# APPENDIX B

# JANSSEN WEST VIRGINIA STATE-WIDE OPIOID SETTLEMENT AGREEMENT

## I.  Overview

In accordance with the Term Sheet executed by Janssen and the State of West Virginia on April 18, 2022, this settlement agreement (the "*Agreement*") sets forth the terms and conditions of a settlement agreement between and among Janssen, the State of West Virginia, and Participating Local Governments (as those terms are defined below). Janssen has agreed to the below terms for the sole purpose of settlement, and nothing herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Janssen expressly denies. No part of this Agreement, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Janssen. Unless the contrary is expressly stated, this Agreement is not intended for use by any third party for any purpose, including submission to any court for any purpose.

## II.  Definitions

Unless otherwise specified, the following definitions apply:

1.  "*Agreement*" means this agreement as set forth above, inclusive of all exhibits.

2.  "*Alleged Harms*" means the alleged past, present, and future financial, societal, and related expenditures arising out of the alleged misuse and abuse of opioid products that have allegedly been caused by Janssen.

3.  "*Attorney*" means any of the following retained through a legal contract: a solo practitioner, multi-attorney law firm, or other legal representative of a Participating Local Government.

4.  "*Claim*" with respect to Covered Conduct as described herein below, means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, *parens patriae* claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including but not limited to any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

1

5.      "*Claim Over*" means a Claim asserted by a Non-Released Entity against a Released Entity on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.

6.      "*Restitution Amount*" means the aggregate amount of payments by Janssen hereunder other than amounts used for attorneys' fees and costs.

7.      "*Consent Judgment*" means a consent judgment in the form attached as Exhibit E.

8.      "*Court*" means the court to which the Agreement and the Consent Judgment are presented for approval and/or entry.

9.      "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Effective Date (and any past, present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (a) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to any Product, or any system, plan, policy, or advocacy relating to any Product or class of Products, including but not limited to any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (b) the characteristics, properties, risks, or benefits of any Product; (c) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders for any Product placed with any Released Entity; (d) the selective breeding, harvesting, extracting, purifying, exporting, importing, applying for quota for, procuring quota for, handling, promoting, manufacturing, processing, packaging, supplying, distributing, converting, or selling of, or otherwise engaging in any activity relating to, precursor or component Products, including but not limited to natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, or any related intermediate Products; or (e) diversion control programs or suspicious order monitoring related to any Product.

10.     "*Effective Date*" means the date on which this Agreement is executed by the State and Janssen.

11.     "*Janssen*" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

12.     "*Litigating Local Government*" means a Local Government (or Local Government official) asserting the right  to recover for alleged harms to the Local Government, the State, and/or the people thereof, that brought any Released Claim against any Released Entity on or before the Effective Date that were not separately resolved

2

prior to that date. Exhibit F includes Litigating Local Governments identified by the Parties as of the Effective Date but is subject to amendment in the event it proves to be incomplete.

13. "*Local Government*" means a formal and legally recognized sub-entity of the State that provides general governance for a defined area, including a county, city, town, village, or similar entity, including as further described in W. Va. Code §§ 7-1-1 et seq., and §§ 8-1-1 et seq. Historic, non-functioning sub-entities of the State are not Local Governments, unless the entity has filed a lawsuit that includes a Released Claim against a Released Entity in a direct, parens patriae, or any other capacity. For purposes of this Agreement, Local Government includes the Mason County Board of Education and the Kanawha County Board of Education and the public schools they supervise, but does not include any other county boards of education or public schools.

14. "*Non-Litigating Local Government*" means a Local Government that is not a Litigating Local Government.

15. "*Non-Party Covered Conduct Claim*" means a Claim against any Non-Released Entity involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity).

16. "*Non-Party Settlement*" means a settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Entity.

17. "*Non-Released Entity*" means an entity that is not a Released Entity.

18. "*Participating Local Government*" means a Local Government that meets the requirements for becoming a Participating Local Government under Section VII.

19. "*Parties*" means Janssen and the State of West Virginia (each, a "*Party*").

20. "*Product*" means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is an opioid or opiate, as well as any product containing any such substance. It also includes: 1) the following when used in combination with opioids or opiates: benzodiazepine, carisoprodol, zolpidem, or gabapentin; and 2) a combination or "cocktail" of any stimulant or other chemical substance prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. For the avoidance of doubt, "Product" does not include benzodiazepine, carisoprodol, zolpidem, or gabapentin when not used in combination with opioids or opiates. "Product" includes but is not limited to any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, any variant of these substances, or any similar substance. "Product" also includes any natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, and any

3

related intermediate products used or created in the manufacturing process for any of the substances described in the preceding sentence.

21.　"*Released Claims*" means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Effective Date. Without limiting the foregoing, "Released Claims" include any Claims that have been asserted against the Released Entities by the State or any of its Litigating Local Governments in any federal, state or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding brought by the State, any of its Local Governments, or any Releasors (whether or not such State, Local Governments, or Releasor has brought such action or proceeding), provided the Covered Conduct occurs prior to the Effective Date. Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to the Agreement, whether or not such claims relate to Covered Conduct, provided the Covered Conduct occurs prior to the Effective Date. The Parties intend that "Released Claims" be interpreted broadly. This Agreement does not release Claims by private individuals. It is the intent of the Parties that Claims by private individuals be treated in accordance with applicable law. Released Claims is also used herein to describe Claims brought by a Local Government or other non-party Local Government after the Effective Date that would have been Released Claims if they had been brought by a Releasor against a Released Entity.

22.　"*Released Entities*" means Janssen and (1) all of Janssen's past and present direct or indirect parents, subsidiaries, divisions, predecessors, successors, assigns, including Noramco, Inc. and Tasmanian Alkaloids PTY. LTD.; (2) the past and present direct or indirect subsidiaries, divisions, and joint ventures, of any of the foregoing; (3) all of Janssen's insurers (solely in their role as insurers with respect to the Released Claims); (4) all of Janssen's, or of any entity described in subsection (1), past and present joint ventures; and (5) the respective past and present officers, directors, members, shareholders (solely in their capacity as shareholders of the foregoing entities), partners, trustees, agents, and employees of any of the foregoing (for actions that occurred during and related to their work for, or employment with, Janssen). Any person or entity described in subsections (3)-(5) of this paragraph shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity. For the avoidance of doubt, the entities listed in Exhibit D are not Released Entities; and provided further that any joint venture partner of Janssen or Janssen's subsidiary is not a Released Entity unless it falls within subsections (1)-(5) above. A list of Janssen's present subsidiaries and affiliates can be found in the attached Exhibit G. Janssen's predecessor entities include but are not limited to those entities listed on Exhibit A. For the avoidance of doubt, any entity acquired, or joint venture entered into, by Janssen after the Effective Date is not a Released Entity.

23.     "*Releasors*" means (1) the State; (2) each Participating Local Government; and (3) without limitation and to the maximum extent of the power of the State's Attorney General and/or Participating Local Government to release Claims, (a) the State's and Participating  Local Government's departments, agencies, divisions, boards, commissions, instrumentalities of any kind and attorneys, including its Attorney General, and any person in their official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, water districts, law enforcement districts, emergency services districts,  public hospitals, highway authorities, conservation districts, development authorities, reclamation districts, recreation districts, economic development authorities, housing authorities, sanitary districts, solid waste authorities, urban mass transportation authorities, and any other person or entity that performs services at the direction of the State and/or one or more Participating Local Governments and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State or Local Governments in the State, whether or not any of them participate in the Agreement. The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Local Government. In addition to being a Releasor as provided herein, a Participating Local Government shall also provide the Settlement Participation Form referenced in Section VII providing for a release to the fullest extent of the Participating Local Government's authority, which shall be attached as an exhibit to the Agreement. The State's Attorney General represents that he or she has or has obtained the authority set forth in the Representation and Warranty subsection of Section IV.

24.      "*State*" means the State of West Virginia, by and through its Attorney General.

25.     "*Settlement Participation Form*" means the form attached as Exhibit B that Participating Local Governments must execute and return to Janssen and the State of West Virginia, and which shall (1) make such Participating Local Governments signatories to this Agreement, (2) include a full and complete release of any and of such Local Government's claims, and (3) require the prompt dismissal with prejudice of any Released Claims that have been filed by any such Participating Local Government.

## III.     Injunctive Relief

As part of the Consent Judgment, the Parties agree to the injunctive relief terms attached as Exhibit C.

## IV.     Release

A.     *Scope*. As of the Effective Date, the Released Entities will be released and forever discharged from all of the Releasors' Released Claims. The State of West Virginia (for itself

5

and its Releasors) and each Participating Local Government (for itself and its Releasors) will, on or before the Effective Date, absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of the State and its Attorney General to release claims. The Release shall be a complete bar to any Released Claim.

B.  *Claim Over and Non-Party Settlement.*

1.  *Statement of Intent.* It is the intent of the Parties that:

    a.  Released Entities should not seek contribution or indemnification (other than pursuant to an insurance contract) from other parties for their payment obligations under this Agreement;

    b.  the payments made under this Agreement shall be the sole payments made by the Released Entities to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity), and each Releasor expressly waives its right to seek reallocation to Janssen pursuant to W. Va. Code 55-7-13c(d) of any amount that the Releasor is unable to collect from any other party held to be liable to the Releasor;

    c.  Claims by Releasors against non-Parties should not result in additional payments by Released Entities, whether through contribution, indemnification or any other means; and

    d.  It is expressly understood and agreed that the Parties have entered into this Agreement in good faith.  In accordance with the Supreme Court of Appeals of West Virginia's decisions in *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990), and *Smith v. Monongahela Power Co.*, 189 W. Va. 237, 429 S.E.2d 643 (1993), it is the intent of the Releasors and the Released Entities that by making this good faith settlement of a disputed matter, the Released Entities are hereby relieved from any liability for Covered Conduct under any Claim-Over theory.

    e.  The provisions of this subsection IV.B are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

2.  *Contribution/Indemnity Prohibited.* No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager,

health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Released Entity shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

3.   *Non-Party Settlement*. To the extent that, on or after the Effective Date, any Releasor enters into a Non-Party Settlement, including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Janssen in subsection IV.B.2, or a release from such Non-Released Entity in favor of the Released Entities (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.

4.   *Claim-Over*. In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that in subsection IV.B.3, or any Releasor files a Non-Party Covered Conduct Claim against a Non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in subsection IV.B.3, and such Non-Released Entity asserts a Claim-Over against a Released Entity, Janssen and that Releasor shall meet and confer and take steps to ensure that the Released Entities are not required to make any payment with respect to Covered Conduct (beyond the amounts that will already have been paid by Janssen under this Agreement).

C.   *General Release*. In connection with the releases provided for in the Agreement, the State (for itself and its Releasors) and each Participating Local Government (for itself and its Releasors) will expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred by any law of the State or principle of common law which would exclude from the scope of the Released Claims any Claims that a Releasor does not know or suspect to exist in the Releasor's favor as of the Effective Date that, if known by the Releasor, would have materially affected the State's or any Participating Local Government's decision to provide the general release contemplated by this Section.A Releasor may thereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the State (for itself and its Releasors) and each Participating Local Governments (for itself and its Releasors) will expressly waive and fully, finally, and forever settle, release and discharge, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the State's decision to enter into the Agreement or the Participating Local Governments' decision to participate in the Agreement.

7

D.   *Res Judicata*. Nothing in the Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in the Agreement, and/or any Consent Judgment or other judgment entered on the Agreement, gives rise to under applicable law.

E.   *Representation and Warranty*. The State's Attorney General expressly represents and warrants that he will obtain on or before the Effective Date (or have obtained) the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) the State; (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts; (3) any of the State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license.. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Also, for the purposes of clause (3), a release from the State's Governor is sufficient to demonstrate that the appropriate releases have been obtained.

F.   *Effectiveness*. The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors. Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the settlement funds or any portion thereof, or by the enactment of future laws, or by any seizure of the settlement funds or any portion thereof.

G.   *Cooperation*. Releasors (i) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (ii) will reasonably cooperate with and not oppose any effort by a Released Entity to secure the prompt dismissal of any and all Released Claims.

H.   *Non-Released Claims.* Notwithstanding the foregoing or anything in the definition of Released Claims, the Agreement does not waive, release or limit any criminal liability, Claims for any outstanding liability under any tax or securities law, Claims against parties who are not Released Entities, Claims by private individuals and any claims arising under the Agreement for enforcement of the Agreement.

## V.   <u>Monetary Relief and Payments</u>

A.   As consideration for the releases from the State and Participating Local Governments provided in section IV above and the Settlement Participation Forms specified in section VII.A and Exhibit B below, Janssen shall pay the State up to $99,000,000.00 in accordance with the terms and conditions specified in subsection V.B below. To qualify for payment of the full amount, the State must obtain and deliver (or cause to be obtained and delivered) to Janssen executed Settlement Participation Forms for all Litigating Local Governments and all Non-Litigating Local Governments with populations over 10,000 as listed on Exhibit F within 90 days of the Effective Date or such later date as the Parties may agree. The State

and its counsel also represent and warrant that they will use best efforts to secure participation of all Local Government in the West Virginia First Memorandum of Understanding and this Agreement. The State represents that counsel for Local Governments that have not yet signed the West Virginia First Memorandum of Understanding have recommended participation to those Local Governments.

B.    Janssen shall pay to the State up to $99,000,000.00 on the following schedule:

1.    Within 45 days after delivery to Janssen of executed Settlement Participation Forms from Participating Local Governments representing 96% of the population of all Local Governments (calculated by summing the populations of all Local Governments, including Kanawha County Board of Education and Mason County Board of Education), Janssen shall pay $95,040,000 to the State.

2.    Janssen shall pay an additional $990,000 to the State within 45 days after each delivery of additional executed Settlement Participation Forms from Participating Local Governments representing an additional 1% of the population of all Local Governments (calculated by summing the populations of all Local Governments, including Kanawha County Board of Education and Mason County Board of Education) over and above the 96% referenced in Section V.B.1.

## VI.    Intra-State Allocation

Janssen's payments shall be allocated as determined by the West Virginia First Memorandum of Understanding.

## VII.    Participation by Local Governments

*Requirements for Becoming a Participating Local Government*. A Local Government may become a Participating Local Government by returning an executed Settlement Participation Form to Janssen and the State and upon prompt dismissal of its legal action pursuant to the terms of this Agreement and the Settlement Participation Form.

## VIII.    Filing of Consent Judgment and Dismissals with Prejudice

A.    Within 15 days of delivery of Settlement Participation Forms satisfying Section V.B.1, the State and Janssen will jointly request that the Court sever all Litigating Non-Participating Local Governments' Claims against Released Entities and place the lawsuits on an inactive docket.

B.    Within 30 days of Janssen's initial payment under Section V.B.1, the Parties will proceed to file the Consent Judgment, and Participating Local Governments shall dismiss any Released Claims with prejudice.

C.    Within 30 days of each additional payment under Section V.B.2, the additional Participating Local Governments shall dismiss any Released Claims with prejudice.

## IX.    Attorney Fee and Cost Payments

A.    Janssen shall not be responsible for making payments for attorneys' fees and costs beyond amounts paid to the State under Section V.

B.    An Attorney may not receive any payment for attorney fees unless the Attorney represents that s/he has no present intent to represent or participate in the representation of any Local Government or any Releasor with respect to Released Claims against Released Entities brought after the Effective Date.

## X.    Enforcement and Dispute Resolution

A.    The terms of the Agreement and Consent Judgment applicable to the State will be enforceable solely by the State and Janssen.

B.    Janssen consents to the jurisdiction of the court in which the Consent Judgment is filed, limited to resolution of disputes identified in subsection X.D for resolution in the court in which the Consent Judgment is filed.

C.    The parties to a dispute shall promptly meet and confer in good faith to resolve any dispute. If the parties cannot resolve the dispute informally, and unless otherwise agreed in writing, they shall follow the remaining provisions of this section to resolve the dispute.

D.    Disputes not resolved informally shall be resolved in the Court that entered the Consent Judgment.

## XI.    Miscellaneous

A.    *No Admission*. Janssen does not admit liability or wrongdoing. Neither this Agreement nor the Consent Judgment shall be considered, construed, or represented to be (1) an admission, concession, or evidence of liability or wrongdoing or (2) a waiver or any limitation of any defense otherwise available to Janssen.

B.    *Population of Local Governments*. The population figures for Local Governments shall be the published 2020 U.S. Census Bureau's data, provided, however, that the population figures for school districts and boards of education will be measured by enrollment as reported in the U.S. Census Bureau's data for enrollment year 2016. These population figures shall remain unchanged during the term of this Agreement.

C.    *Nature of Payment.* Janssen, the State, and the Participating Local Governments acknowledge and agree that notwithstanding anything to the contrary in this Agreement, including, but not limited to, the scope of the Released Claims:

1.    Janssen has entered into this Agreement to avoid the delay, expense, inconvenience, and uncertainty of further litigation;

2.    The State and the Participating Local Governments sought restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) for harms suffered by the State and

10

Participating Local Governments, as further described in the complaints filed of record;

3. The payment of the Restitution Amount by Janssen constitutes, and is paid for, restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) for harm allegedly caused by Janssen, as further described in the complaints filed of record;

4. The Restitution Amount is being paid as restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) in order to restore, in whole or in part, the State and each of the Participating Local Governments to the same position or condition that they would be in had the State and each of the Participating Local Governments not suffered the Alleged Harms;

5. For the avoidance of doubt: (a) no portion of the Restitution Amount represents reimbursement to the State, any Participating Local Government, or other person or entity for the costs of any investigation or litigation, (b) the entire Restitution Amount is properly characterized as described in subsection XI.C, and (c) no portion of the Restitution Amount constitutes disgorgement or is properly characterized as the payment of statutory or other fines, penalties, punitive damages, other punitive assessments, or attorneys' fees; and

6. The State, on behalf of all itself and Participating Local Governments (the "Form 1098-F Filer") shall complete and file Form 1098-F with the Internal Revenue Service on or before February 28 (March 31 if filed electronically) of the year following the calendar year in which the order entering this Agreement becomes binding. On the Form 1098-F, the Form 1098-F Filer shall identify the entire Restitution Amount received by the Form 1098-F Filer as remediation/restitution. The Form 1098-F Filer shall also, on or before January 31 of the year following the calendar year in which the order entering this Agreement becomes binding, furnish Copy B of such Form 1098-F (or an acceptable substitute statement) to Janssen.

D. *Tax Reporting and Cooperation.*

1. Upon request by Janssen, the State and Participating Local Governments agree to perform such further acts and to execute and deliver such further documents as may be reasonably necessary for Janssen to establish the statements set forth in subsection XI.C to the satisfaction of their tax advisors, their independent financial auditors, the Internal Revenue Service, or any other governmental authority, including as contemplated by Treasury Regulations Section 1.162-21(b)(3)(ii) and any subsequently proposed or finalized relevant regulations or administrative guidance.

2. Without limiting the generality of this subsection XI.E, the State and each Participating Local Government shall cooperate in good faith with Janssen with respect to any tax claim, dispute, investigation, audit, examination, contest, litigation, or other proceeding relating to this Agreement.

3. The State, on behalf of itself and Participating Local Governments, shall designate

one of its officers or employees to act as the "appropriate official" within the meaning of Treasury Regulations Section 1.6050X-1(f)(1)(ii)(B) (the "Appropriate Official").

4. For the avoidance of doubt, neither Janssen nor the State and Participating Local Governments make any warranty or representation to any Settling jurisdiction or Releasor as to the tax consequences of the payment of the Compensatory Restitution Amount (or any portion thereof).

E. *No Third-Party Beneficiaries.* Except as expressly provided in this Agreement, no portion of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not the State or a Released Entity. The State may not assign or otherwise convey any right to enforce any provision of this Agreement.

F. *Calculation*. Any figure or percentage referred to in this Agreement shall be carried to seven decimal places.

G. *Construction*. None of the Parties and no Participating Local Government shall be considered to be the drafter of this Agreement or of any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement. The headings of the provisions of this Agreement are not binding and are for reference only and do not limit, expand, or otherwise affect the contents or meaning of this Agreement.

H. *Cooperation*. Each Party and each Participating Local Government agrees to use its best efforts and to cooperate with the other Parties and Participating Local Governments to cause this Agreement and the Consent Judgment to become effective, to obtain all necessary approvals, consents and authorizations, if any, and to execute all documents and to take such other action as may be appropriate in connection herewith. Consistent with the foregoing, each Party and each Participating Local Government agrees that it will not directly or indirectly assist or encourage any challenge to this Agreement or the Consent Judgment by any other person, and will support the integrity and enforcement of the terms of this Agreement and the Consent Judgment.

I. *Entire Agreement*. This Agreement, its exhibits and any other attachments embodies the entire agreement and understanding between and among the Parties and Participating Local Governments relating to the subject matter hereof and supersedes (1) all prior agreements and understandings relating to such subject matter, whether written or oral and (2) all purportedly contemporaneous oral agreements and understandings relating to such subject matter.

J. *Execution*. This Agreement may be executed in counterparts and by different signatories on separate counterparts, each of which shall be deemed an original, but all of which shall together be one and the same Agreement. One or more counterparts of this Agreement may be delivered by facsimile or electronic transmission with the intent that it or they shall constitute an original counterpart hereof. One or more counterparts of this Agreement may be signed by electronic signature.

12

K.    *Good Faith and Voluntary Entry*. Each Party warrants and represents that it negotiated the terms of this Agreement in good faith. Each of the Parties and signatories to this Agreement warrants and represents that it freely and voluntarily entered into this Agreement without any degree of duress or compulsion. The Parties state that no promise of any kind or nature whatsoever (other than the written terms of this Agreement) was made to them to induce them to enter into this Agreement.

L.    *No Prevailing Party.* The Parties each agree that they are not the prevailing party in this action, for purposes of any claim for fees, costs, or expenses as prevailing parties arising under common law or under the terms of any statute, because the Parties have reached a good faith settlement. The Parties each further waive any right to challenge or contest the validity of this Agreement on any ground, including, without limitation, that any term is unconstitutional or is preempted by, or in conflict with, any current or future law.

M.    *Non-Admissibility.* The settlement negotiations resulting in this Agreement have been undertaken by the Parties and by certain representatives of the Participating Local Governments in good faith and for settlement purposes only, and no evidence of negotiations or discussions underlying this Agreement shall be offered or received in evidence in any action or proceeding for any purpose. This Agreement shall not be offered or received in evidence in any action or proceeding for any purpose other than in an action or proceeding arising under or relating to this Agreement.

N.    *Severability.* If any provision of this agreement—excepting Section IV (Release), Section V (Monetary Relief and Payments), Section VII (Participation by Local Governments), Section IX (Attorney Fee and Cost Payments), Section XI.C (Nature of Payment), and Section XI.D (Tax Reporting and Cooperation)—were for any reason held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Settlement Agreement.

O.    *Notices.* All notices or other communications under this Agreement shall be in writing (including but not limited to electronic communications) and shall be given to the recipients indicated below:

        For Janssen:

        Charles C. Lifland
        Daniel R. Suvor
        400 South Hope Street, 18th Floor Los Angeles, CA  90071
        Phone: (213) 430-6000
        clifland@omm.com
        dsuvor@omm.com

For the Attorney General:

Abby Cunningham
Assistant Attorney General
The Office of the West Virginia Attorney General
P.O. Box 1789
Charleston, WV 25326
Abby.G.Cunningham@wvago.gov
Consumer Protection Office: (304) 558-8986

Any Party may change or add the contact information of the persons designated to receive notice on its behalf by notice given (effective upon the giving of such notice) as provided in this subsection.

P.     *No Waiver*. The waiver of any rights conferred hereunder shall be effective only if made by written instrument executed by the waiving Party or Parties. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, nor shall such waiver be deemed to be or construed as a waiver by any other Party.

Q.     *Preservation of Privilege.* Nothing contained in this Agreement or any Consent Judgment, and no act required to be performed pursuant to this Agreement or any Consent Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

R.     *Successors*. This Agreement shall be binding upon, and inure to the benefit of, Janssen and its respective successors and assigns. Janssen shall not sell the majority of its voting stock or substantially all its assets without obtaining the acquiror's agreement that it will constitute a successor with respect to Janssen's obligations under this Agreement.

S.     *Modification, Amendment, Alteration*. This Agreement may be modified, amended, or altered by a written agreement of the Parties or, in the case of the Consent Judgment, by court proceedings resulting in a modified judgment of the Court. For purposes of modifying this Agreement or the Consent Judgment, Janssen may contact the West Virginia Attorney General to coordinate this process.

T.     *Termination.*

1.     Unless otherwise agreed to by Janssen and the State, this Agreement and all of its terms (except subsection XI.N and any other non-admissibility provisions, which shall continue in full force and effect) shall be canceled and terminated with respect to the State, and the Agreement and all orders issued by the Court pursuant to the Agreement shall become null and void and of no effect if one or more of the following conditions applies:

14

> a. A Consent Judgment approving this Agreement without modification of any of the Agreement's terms has not been entered as to the State by a court of competent jurisdiction on or before one hundred eighty (180) days after Janssen's payment under Section V.B.1; or
>
> b. This Agreement or the Consent Judgment as to the State has been disapproved by a court of competent jurisdiction to which it was presented for approval and/or entry (or, in the event of an appeal from or review of a decision of such a court to approve this Agreement and the Consent Judgment, by the court hearing such appeal or conducting such review), and the time to appeal from such disapproval has expired, or, in the event of an appeal from such disapproval, the appeal has been dismissed or the disapproval has been affirmed by the court of last resort to which such appeal has been taken and such dismissal or disapproval has become no longer subject to further appeal (including, without limitation, review by the United States Supreme Court).

2. If this Agreement is terminated with respect to the State and its Participating Local Governments for whatever reason pursuant to subsection XI.T.1, then:

> a. An applicable statute of limitation or any similar time requirement (excluding any statute of repose existing as of the Effective Date) shall be tolled from the date the State signed this Agreement until the later of the time permitted by applicable law or for one year from the date of such termination, with the effect that Janssen and the State in question shall be in the same position with respect to the statute of limitation as they were at the time the State filed its action; and
>
> b. Janssen and the State and its Participating Local Governments shall jointly move the relevant court of competent jurisdiction for an order reinstating the actions and claims dismissed pursuant to the terms of this Agreement governing dismissal, with the effect that Janssen and the State and its Participating Local Governments shall be in the same position with respect to those actions and claims as they were at the time the action or claim was stayed or dismissed.

U. *Governing Law.* Except as otherwise provided in the Agreement, this Agreement shall be governed by and interpreted in accordance with the laws of West Virginia, without regard to the conflict of law rules of West Virginia.

**Approved:**

Dated: _10-11-2022_

JOHNSON & JOHNSON, JANSSEN
PHARMACEUTICALS, INC., ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC. N/K/A
JANSSEN PHARMACEUTICALS, INC., AND
JANSSEN PHARMACEUTICA INC. N/K/A
JANSSEN PHARMACEUTICALS, INC.

By: _____

Marc Larkins
Corporate Secretary
Johnson & Johnson

Dated: _10-11-2022_

THE STATE OF WEST VIRGINIA

By: _____

Patrick Morrisey
Attorney General

16

## EXHIBIT A

## Janssen Predecessors and Former Affiliates

The following includes a non-exclusive list of Janssen's predecessors and former affiliates:

1. Janssen Pharmaceutica, Inc.
2. Janssen Pharmaceutica N.V.
3. Janssen-Cilag Manufacturing, LLC
4. Janssen Global Services, LLC
5. Janssen Ortho LLC
6. Janssen Products, LP
7. Janssen Research & Development, LLC
8. Janssen Supply Group, LLC
9. Janssen Scientific Affairs, LLC
10. JOM Pharmaceutical Services, Inc.
11. OMJ Pharmaceuticals, Inc.
12. Ortho-McNeil Finance Co.
13. Ortho-McNeil Pharmaceutical
14. Ortho-McNeil-Janssen Pharmaceuticals
15. Ortho-McNeil Pharmaceutical Services Division
16. Ortho-McNeil Neurologic
17. Patriot Pharmaceuticals, LLC
18. Pricara, Ortho-McNeil-Janssen Pharmaceuticals
19. Alza Corp.
20. Alza Development Corp.
21. Janssen Supply Chain, Alza Corp.
22. Noramco, Inc.
23. Tasmanian Alkaloids PTY LTD.

## EXHIBIT B
## Settlement Participation Form

This Settlement Participation Form for West Virginia Participating Local Governments resolves opioid-related Claims against Janssen under the terms and conditions set forth in the Janssen West Virginia State-Wide Opioid Settlement Agreement executed on _____ (the "Agreement"), the provisions of which are here incorporated by reference in their entirety. Upon executing this Election and Release Form, a Participating Local Government agrees that, in exchange for the consideration described in the Agreement, the Participating Local Government is bound by all the terms and conditions of the Agreement.

By executing this Settlement Participation Form, the Participating Local Government submits to the jurisdiction of the panel overseeing the mass litigation proceeding captioned *In re: Opioid Litigation,* Civil Action No. 21-C-9000 MFR, in the Circuit Court of Kanawha County, West Virginia (the "Court"). To the extent the Participating Local Government has asserted Claims against Janssen in Actions that are pending before the Court, the Participating Local Government hereby grants all necessary right and authority to the West Virginia Attorney General to seek dismissal of the Participating Local Government's Action through the submission of the Consent Judgment as contemplated in the Agreement. If the Participating Local Government's Action is pending in another court as of the Effective Date, the Participating Local Government hereby agrees to dismiss (or if necessary move to dismiss) that Action with prejudice as to Janssen and any other Released Entities within 30 days of Janssen's payment under Section V.B.1 or Section V.B.2, as applicable.

Dated: _____

_____

LOCAL GOVERNMENT

BY: _____

PRINTED NAME: _____

TITLE:_____

ADDRESS: _____

_____

18

TELEPHONE: _____

EMAIL ADDRESS: _____

**EXHIBIT C**

**Injunctive Relief**

A.   **Definitions Specific to this Exhibit**

1.   "*Cancer-Related Pain Care*" means care that provides relief from pain resulting from a patient's active cancer or cancer treatment as distinguished from treatment provided during remission.

2.   "*Janssen*" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively, "Janssen"), including all of their subsidiaries, predecessors, successors, current officers, directors, employees, representatives, agents, affiliates, parents, and assigns acting on behalf of Janssen in the United States.

3.   "*End-of-Life Care*" means care for persons with a terminal illness or at high risk for dying in the near future in hospice care, hospitals, long-term care settings, or at home.

4.   "*Health Care Provider*" means any U.S.-based physician or other health care practitioner who is licensed to provide health care services or to prescribe pharmaceutical products and any medical facility, practice, hospital, clinic, or pharmacy.

5.   "*In-Kind Support*" means payment or assistance in the form of goods, commodities, services, or anything else of value.

6.   "*Lobby*" and "*Lobbying*" shall have the same meaning as "lobbying activities" and "lobbying contacts" under the federal lobbying disclosure act, 2 U.S.C. § 1602 *et seq.*, and any analogous state or local provisions governing the person or entity being lobbied. As used in this document, "Lobby" and "Lobbying" include Lobbying directly or indirectly, through grantees or Third Parties.

7.   "*Opioid(s)*" means all naturally occurring, synthetic, or semisynthetic substances that interact with opioid receptors and act like opium. For the avoidance of doubt, the term "Opioid(s)" does not include Imodium.

8.   "*Opioid Product(s)*" means all current and future medications containing Opioids approved by the U.S. Food & Drug Administration (FDA) and listed by the DEA as Schedule II, III, or IV drugs pursuant to the federal Controlled Substances Act (including but not limited to buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, and tramadol). The term "Opioid Products(s)" shall not include (i) methadone and other substances when used exclusively to treat opioid abuse, addiction, or overdose; or (ii) raw materials, immediate precursors, and/or active

20

pharmaceutical ingredients (APIs) used in the manufacture or study of Opioids or Opioid Products, but only when such materials, immediate precursors, and/or APIs are sold or marketed exclusively to DEA-licensed manufacturers or DEA-licensed researchers.

9. "*OUD*" means opioid use disorder defined in the *Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM–5)*, as updated or amended.

10. "*Product(s) for the Treatment of Opioid-Induced Side Effects*" means any over-the-counter or prescription remedy used to treat those side effects identified on the FDA label for any Opioid Product, except that, for purposes of the Agreement, Product(s) for the Treatment of Opioid-Induced Side Effects shall not include products that treat OUD or respiratory depression.

11. "*Promote*," "*Promoting*," "*Promotion*," and "*Promotional*" means dissemination of information or other practices intended or reasonably anticipated to increase sales, prescriptions, or that attempts to influence prescribing practices in the United States. These terms shall not include the provision of scientific information or data in response to unsolicited requests from Health Care Providers or payors as allowed in subsection C.2.e-h.

12. "*Third Party(ies)*" means any person or entity other than Janssen or a government entity.

13. "*Treatment of Pain*" means the provision of therapeutic modalities to alleviate or reduce pain.

14. "*Unbranded Information*" means any information that does not identify a specific branded or generic product.

a **Ban on Selling and Manufacturing Opioids**

1. Janssen shall not manufacture or sell any Opioids or Opioid Products for distribution in the State of West Virginia. Janssen represents that prior to the Effective Date, it de-listed all of its Opioid Products and no longer ships any of them to or within the United States. Janssen shall provide notice to the State of West Virginia when the last of the inventory Janssen has shipped has expired.

2. Notwithstanding subsection B.1 above, Janssen may continue to manufacture Nucynta and Nucynta ER (collectively "Nucynta") in accordance with the terms of its April 2, 2015 contract with Depomed, Inc., rights to which were assigned to Collegium Pharmaceutical, Inc. ("Collegium") on February 13, 2020, so long as Janssen is not Promoting Nucynta, or selling Nucynta to anyone other than Collegium. Janssen shall not extend, amend, or otherwise alter the terms of its April 2, 2015 contract or enter into any similar agreement related to Nucynta or any other Opioid or Opioid Product. For the term of its April 2, 2015 contract, or until the expiration of subsection B.1, whichever is shorter, Janssen shall make an annual

21

report to the State of West Virginia showing the amount of Nucynta manufactured in accordance with the April 2, 2015 contract.

C.  **Ban on Promotion**

1.  Janssen shall not engage in Promotion of Opioids or Opioid Products including but not limited to, by:

    a.  Employing or contracting with sales representatives or other persons to Promote Opioids or Opioid Products to Health Care Providers or patients, or to persons involved in determining the Opioid Products included in formularies;

    b.  Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events for Promotion of Opioids or Opioid Products;

    c.  Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs for Promotion of Opioids or Opioid Products;

    d.  Creating, sponsoring, operating, controlling, or otherwise providing financial support or In-Kind Support to any website, network, and/or social or other media account for the Promotion of Opioids or Opioid Products;

    e.  Creating, sponsoring, distributing, or otherwise providing financial support or In-Kind Support for materials Promoting Opioids or Opioid Products, including but not limited to brochures, newsletters, pamphlets, journals, books, and guides;

    f.  Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Opioids or Opioid Products, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements; and

    g.  Engaging in internet search engine optimization or other techniques designed to Promote Opioids or Opioid Products by improving rankings or making content appear among the top results in an internet search or otherwise be more visible or more accessible to the public on the internet.

2.  Notwithstanding subsection C.1 directly above, Janssen may:

    a.  Maintain a corporate website;

    b.  Maintain a website for any Opioid Product that contains principally the following content: the FDA-approved package insert, medication guide, and labeling, and a statement directing patients or caregivers to speak with a licensed Health Care Provider;

22

c.  Provide information or support the provision of information as expressly required by law or any state or federal government agency with jurisdiction in West Virginia;

d.  Provide the following by mail, electronic mail, on or through Janssen's corporate or product websites or through other electronic or digital methods: FDA-approved package insert, medication guide, approved labeling for Opioid Products, or other prescribing information for Opioid Products that are published by a state or federal government agency with jurisdiction in West Virginia;

e.  Provide scientific and/or medical information in response to an unsolicited request by a Health Care Provider consistent with the standards set forth in the FDA's Draft Guidance for Industry, *Responding to Unsolicited Requests for Off-Label Information About Prescription Drugs and Medical Devices* (Dec. 2011) as updated or amended by the FDA, and Guidance for Industry, *Good Reprint Practices for the Distribution of Medical Journal Articles and Medical or Scientific Reference Publications on Unapproved New Uses of Approved Drugs and Approved or Cleared Medical Devices* (Jan. 2009) as updated or amended by the FDA;

f.  Provide a response to any unsolicited question or request from a patient or caregiver, directing the patient or caregiver to the FDA-approved labeling or to speak with a licensed Health Care Provider without describing the safety or effectiveness of Opioids or any Opioid Product or naming any specific provider or healthcare institution; or directing the patient or caregiver to speak with their insurance carrier regarding coverage of an Opioid Product;

g.  Provide Health Care Economic Information, as defined at 21 U.S.C. § 352(a), to a payor, formulary committee, or other similar entity with knowledge and expertise in the area of health care economic analysis consistent with standards set forth in the FDA's Draft Questions and Answers Guidance for Industry and Review Staff, *Drug and Device Manufacturer Communications With Payors, Formulary Committees, and Similar Entities* (Jan. 2018), as updated or amended by the FDA;

h.  Provide information relating solely to the pricing of any Opioid Product;

i.  Sponsor or provide financial support or In-Kind Support for an accredited or approved continuing medical education program required by either an FDA-approved Risk Evaluation and Mitigation Strategy (REMS) program or other federal or state law or regulation applicable in West Virginia through an independent Third Party, which shall be responsible for the program's content without the participation of Janssen; and

j.  Provide information in connection with patient support information on co-pay assistance and managing pain in End-of-Life Care and/or Cancer-Related

23

Pain Care relating to the use of Opioids for managing such pain, as long as the information identifies Janssen as the source of the information.

3.     Janssen shall not engage in the Promotion of Products for the Treatment of Opioid-induced Side Effects, including but not limited to:

    a.     Employing or contracting with sales representatives or other persons to Promote Products for the Treatment of Opioid-induced Side Effects to Health Care Providers or patients;

    b.     Using speakers, key opinion leaders, thought leaders, lecturers, and/or speaking events to Promote Products for the Treatment of Opioid induced Side Effects;

    c.     Sponsoring, or otherwise providing financial support or In-Kind Support to medical education programs that Promote Products for the Treatment of Opioid-induced Side Effects;

    d.     Creating, sponsoring, or otherwise providing financial support or In-Kind Support for advertisements that Promote Products for the Treatment of Opioid-induced Side Effects, including but not limited to internet advertisements or similar content, and providing hyperlinks or otherwise directing internet traffic to advertisements.

4.     Notwithstanding subsection C, Janssen may Promote Products for the Treatment of Opioid-induced Side Effects so long as such Promotion does not associate the product with Opioids or Opioid Products.

5.     Treatment of Pain

    a.     Janssen shall not, either through Janssen or through Third Parties, engage in any conduct that Promotes the Treatment of Pain, except that Janssen may continue to Promote the Treatment of Pain with branded non-Opioids, including Tylenol and Motrin.

    b.     Janssen shall not, either through Janssen or through Third Parties, engage in any conduct that Promotes the concept that pain is undertreated, except in connection with Promoting the use of branded non-Opioids, including Tylenol and Motrin, for the Treatment of Pain.

    c.     Janssen shall not disseminate Unbranded Information, including Unbranded Information about a medical condition or disease state, that contains links to branded information about Opioid Products or that otherwise Promotes Opioids or Opioid Products.

6.     Notwithstanding subsection C.5 above:

24

    a.    Janssen may Promote or provide educational information about the Treatment of Pain with non-Opioids or therapies such as acetaminophen or non-steroidal anti-inflammatory drugs (NSAIDS), including Promoting or providing educational information about such non-Opioids or therapies as alternatives to Opioid use, or as part of multimodal therapy which may include Opioid use, so long as such non-Opioid Promotional or educational information does not Promote Opioids or Opioid Products.

    b.    Janssen may provide educational information about the Treatment of Pain related to medical procedures involving devices manufactured or sold by Janssen, including educational information about Opioids or Opioid Products, so long as such information does not Promote Opioids or Opioid Products.

7.    The Promotional conduct prohibited in subsection C is not prohibited insofar as it relates to the Promotion of Opioids or Opioid Products for Cancer-Related Pain Care or End-of-Life Care only, and so long as Janssen is identified as the sponsor or source of such Promotional conduct.

D.    **No Financial Reward or Discipline Based on Volume of Opioid Sales**

1.    Janssen shall not provide financial incentives to its sales and marketing employees or discipline its sales and marketing employees based upon sales volume or sales quotas for Opioid Products;

2.    Janssen shall not offer or pay any remuneration (including any kickback, bribe, or rebate) directly or indirectly, to any person in return for the prescribing, sale, use, or distribution of an Opioid Product; and

3.    Janssen's compensation policies and procedures shall ensure compliance with the Agreement.

E.    **Ban on Funding/Grants to Third Parties**

1.    Janssen shall not directly or indirectly provide financial support or In-Kind Support to any Third Party that primarily engages in conduct that Promotes Opioids, Opioid Products, or Products for the Treatment of Opioid-induced Side Effects (subject to subsections B.2, 4, and 6), including educational programs or websites that Promote Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects, excluding financial support otherwise required by the Agreement, a court order, or by a federal or state agency.

2.    Janssen shall not create, sponsor, provide financial support or In-Kind Support to, or otherwise operate or control any medical society or patient advocacy group that primarily engages in conduct that Promotes Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects.

3.      Janssen shall not provide links to any Third Party website or materials or otherwise distribute materials created by a Third Party for the purpose of Promoting Opioids, Opioid Products, or products intended for the treatment of Opioid-induced side effects (subject to subsections B.2, 4, and 6).

4.      Janssen shall not use, assist, or employ any Third Party to engage in any activity that Janssen itself would be prohibited from engaging in pursuant to the Agreement. To the extent Janssen supports trade groups engaged in Lobbying, Janssen shall stipulate that such support not be used for any purpose prohibited by the Agreement.

5.      Janssen shall not enter into any contract or agreement with any person or entity or otherwise attempt to influence any person or entity in such a manner that has the purpose or foreseeable effect of limiting the dissemination of information regarding the risks and side effects of using Opioids.

6.      Janssen shall not compensate or support Health Care Providers or organizations to advocate for formulary access or treatment guideline changes for the purpose of increasing access to any Opioid Product through third-party payors, i.e., any entity, other than an individual, that pays or reimburses for the dispensing of prescription medicines, including but not limited to managed care organizations and pharmacy benefit managers.

7.      No officer or management-level employee of Janssen may concurrently serve as a director, board member, employee, agent, or officer of any entity that primarily engages in conduct that Promotes Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects. For the avoidance of doubt, nothing in this provision shall preclude an officer or management-level employee of Janssen from concurrently serving on the board of a hospital.

8.      Janssen shall play no role in appointing persons to the board, or hiring persons to the staff, of any entity that primarily engages in conduct that Promotes Opioids, Opioid Products, or products for the treatment of Opioid-induced side effects. For avoidance of doubt, nothing in this paragraph shall prohibit Janssen from fully and accurately responding to unsolicited requests or inquiries about a person's fitness to serve as an employee or Board member at any such entity.

F.    **Lobbying Restrictions**

1.      Janssen shall not Lobby for the enactment of any federal, state, or local legislative or regulatory provision that:

a.      Encourages or requires Health Care Providers to prescribe Opioids or sanctions Health Care Providers for failing to prescribe Opioids or failing to treat pain with Opioids;

b.      Has the effect of limiting access to any non-Opioid alternative pain treatments; or

  c.  Pertains to the classification of any Opioid or Opioid Product as a scheduled drug under the Controlled Substances Act.

2. Janssen shall not Lobby against the enactment of any federal, state or local legislative or regulatory provision that supports:

  a.  The use of non-pharmacologic therapy and/or non-Opioid pharmacologic therapy to treat chronic pain over or instead of Opioid use, including but not limited to third party payment or reimbursement for such therapies;

  b.  The use and/or prescription of immediate release Opioids instead of extended release Opioids when Opioid use is initiated, including but not limited to third party reimbursement or payment for such prescriptions;

  c.  The prescribing of the lowest effective dose of an Opioid, including but not limited to third party reimbursement or payment for such prescription;

  d.  The limitation of initial prescriptions of Opioids to treat acute pain;

  e.  The prescribing and other means of distribution of naloxone to minimize the risk of overdose, including but not limited to third party reimbursement or payment for naloxone;

  f.  The use of urine testing before starting Opioid use and annual urine testing when Opioids are prescribed, including but not limited to third party reimbursement or payment for such testing;

  g.  Evidence-based treatment (such as using medication-assisted treatment with buprenorphine or methadone in combination with behavioral therapies) for OUD, including but not limited to third party reimbursement or payment for such treatment; or

  h.  The implementation or use of Opioid drug disposal systems.

3. Janssen shall not Lobby against the enactment of any federal, state or local legislative or regulatory provision expanding the operation or use of PDMPs, including but not limited to provisions requiring Health Care Providers to review PDMPs when Opioid use is initiated and with every prescription thereafter.

4. Notwithstanding the foregoing restrictions in subsections F.1-3, the following conduct is not restricted:

  a.  Challenging the enforcement of or suing for declaratory or injunctive relief with respect to legislation, rules, or regulations referred to in subsection F.1;

  b.  Communications made by Janssen in response to a statute, rule, regulation, or order requiring such communication;

    c.      Communications by a Janssen representative appearing before a federal or state legislative or administrative body, committee, or subcommittee as result of a mandatory order or subpoena commanding that person to testify;

    d.      Responding, in a manner consistent with the Agreement, to an unsolicited request for the input on the passage of legislation or the promulgation of any rule or regulation when such request is submitted in writing specifically to Janssen from a government entity directly involved in the passage of that legislation or promulgation of that rule or regulation; or

    e.      Lobbying for or against provisions of legislation or regulation that address other subjects in addition to those identified in subsections F.1-3, so long as the company does not support specific portions of such legislation or regulation covered by subsection F.1 or oppose specific portions of such legislation or regulation covered by subsections F.2-3.

5.     Janssen shall provide notice of the prohibitions in subsection F to all employees engaged in Lobbying; shall incorporate the prohibitions in subsection F into trainings provided to Janssen employees engaged in Lobbying; and certify to the State of West Virginia that it has provided such notice and trainings to Janssen employees engaged in Lobbying.

## G.    Ban on Prescription Savings Programs

1.     Janssen shall not directly or indirectly offer any discounts, coupons, rebates, or other methods which have the effect of reducing or eliminating a patient's co-payments or the cost of prescriptions (e.g., free trial prescriptions) for any Opioid Product.

2.     Janssen shall not directly or indirectly provide financial support to any Third Party for discounts, coupons, rebates, or other methods which have the effect of reducing or eliminating a patient's co-payments or the cost of prescriptions (e.g., free trial prescriptions) for any Opioid Product.

3.     Janssen shall not directly or indirectly assist patients, Health Care Providers, or pharmacies with the claims and/or prior authorization process required for third-party payors to approve payment for any Opioid Product.

## H.    General Terms

1.     Janssen shall not make any written or oral statement about Opioids or any Opioid Product that is unfair, false, misleading, or deceptive as defined under the law of West Virginia.  For purposes of this paragraph, "Opioid Product" shall also include methadone and other substances when used exclusively to treat opioid abuse, addiction, or overdose.

2.     Janssen shall not represent that Opioids or any Opioid Product(s) have approvals, characteristics, uses, benefits, or qualities that they do not have.  For purposes of this

paragraph, "Opioid Product" shall also include methadone and other substances when used exclusively to treat opioid abuse, addiction, or overdose.

3. For the avoidance of doubt, the Agreement shall not be construed or used as a waiver or limitation of any defense otherwise available to Janssen in any action, and nothing in the Agreement is intended to or shall be construed to prohibit Janssen in any way whatsoever from taking legal or factual positions with regard to any Opioid Product(s) in defense of litigation or other legal proceedings.

4. Upon the request of the State of West Virginia Attorney General, Janssen shall provide the West Virginia Attorney General with copies of the following, within thirty (30) days of the request:

    a. Any litigation or civil or criminal law enforcement subpoenas or Civil Investigative Demands relating to Janssen's Opioid Product(s); and

    b. Warning or untitled letters issued by the FDA regarding Janssen's Opioid Product(s) and all correspondence between Janssen and the FDA related to such letters.

5. The Agreement applies to conduct that results in the Promotion of Opioids or Opioid Products, or the Treatment of Pain inside the United States.

6. Janssen will enter into the Agreement solely for the purpose of settlement, and nothing contained therein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Janssen expressly denies. No part of the Agreement, including its statements and commitments, shall constitute evidence of any liability, fault, or wrongdoing by Janssen. The Agreement is not intended for use by any third party for any purpose, including submission to any court for any purpose.

7. Nothing in the Agreement shall be construed to limit or impair Janssen's ability to:

    a. Communicate its positions and respond to media inquiries concerning litigation, investigations, reports or other documents or proceedings relating to Janssen or its Opioid Products.

    b. Maintain a website explaining its litigation positions and responding to allegations concerning its Opioid Products, including the website, www.factsaboutourprescriptionopioids.com.

I. **Compliance with All State Laws and Regulations Relating to the Sale, Promotion, and Distribution of Any Opioid Product**

1. Janssen shall comply with all applicable state laws and regulations that relate to the sale, promotion, distribution, and disposal of Opioids or Opioid Products, including

29

conduct permitted by subsection B.2, provided that nothing in this paragraph requires Janssen to violate federal law or regulations, including but not limited to:

 a. West Virginia State Controlled Substances Act, including all guidance issued by the applicable state regulator(s);

 b. West Virginia State Consumer Protection Laws;

 c. West Virginia State laws, regulations, and guidelines related to opioid prescribing, distribution, and disposal; and

## J. Clinical Data Transparency

1. Janssen agrees to continue sharing clinical trial data under the Yale University Open Data Access (YODA) Project to allow researchers qualified under the program to access the company's propriety data under the terms of the project.

2. In the event Yale University discontinues or withdraws from the YODA Project agreement with Janssen, Janssen shall make its clinical research data regarding Opioids and Opioid Products, and any additional clinical research data that Janssen sponsors and controls regarding Opioids and Opioid Products, available to an independent entity that is the functional equivalent of the YODA Project under functionally equivalent terms.

## K. Enforcement

1. For the purposes of resolving disputes with respect to compliance with this Exhibit, should the State of West Virginia have a reasonable basis to believe that Janssen has engaged in a practice that violates a provision of this Exhibit subsequent to the Effective Date, the State of West Virginia shall notify Janssen in writing of the specific objection, identify with particularity the provision of the Agreement that the practice appears to violate, and give Janssen thirty (30) days to respond in writing to the notification; provided, however, that the State of West Virginia may take any action if the State believes that, because of the specific practice, a threat to health or safety of the public requires immediate action.

2. Upon receipt of written notice, Janssen shall provide a good faith written response to the State's notification, containing either a statement explaining why Janssen believes it is in compliance with the provisions of this Exhibit of the Agreement, or a detailed explanation of how the alleged violation occurred and a statement explaining how Janssen intends to remedy the alleged breach. Nothing in this section shall be interpreted to limit the State of West Virginia's civil investigative demand ("CID") or investigative subpoena authority, to the extent such authority exists under applicable law, and Janssen reserves all of its rights in responding to a CID or investigative subpoena issued pursuant to such authority.

3.      The State of West Virginia may agree, in writing, to provide Janssen with additional time beyond thirty (30) days to respond to a notice provided under subsection L.1, above, without Court approval.

4.      Upon giving Janssen thirty (30) days to respond to the notification described above, the State shall also be permitted reasonable access to inspect and copy relevant, non-privileged, non-work product records and documents in possession, custody, or control of Janssen that relate to Janssen's compliance with each provision of the Agreement pursuant to the State of West Virginia's CID or investigative subpoena authority.

5.      The State of West Virginia may assert any claim that Janssen has violated the Agreement in a separate civil action to enforce compliance with the Agreement, or may seek any other relief afforded by law for violations of the Agreement, but only after providing Janssen an opportunity to respond to the notification described in subsection L.1, above; provided, however, the State of West Virginia may take any action if the State believes that, because of the specific practice, a threat to the health or safety of the public requires immediate action.

6.      In the event of a conflict between the requirements of the Agreement and any other law, regulation, or requirement such that Janssen cannot comply with the law without violating the terms of the Agreement or being subject to adverse action, including fines and penalties, Janssen shall document such conflicts and notify the State of the extent to which it will comply with the Agreement in order to eliminate the conflict within thirty (30) days of Janssen's discovery of the conflict. Janssen shall comply with the terms of the Agreement to the fullest extent possible without violating the law.

7.      Janssen or the State may request that Janssen and the State meet and confer regarding the resolution of an actual or potential conflict between the Agreement and any other law, or between interpretations of the Agreement by different courts. Nothing herein is intended to modify or extend the jurisdiction of any single judicial authority as provided by law.

L.      **Compliance Duration**

1.      Subsections B-J of this Exhibit shall be effective for 10 years from the Effective Date.

2.      Nothing in this Agreement shall relieve Janssen of its independent obligation to fully comply with the laws of the State of West Virginia after expiration of the 10-year period specified in this subsection.

M.      **Compliance Deadlines**

31

1.     Janssen must be in full compliance with the provisions included this Agreement by the Effective Date. Nothing herein shall be construed as permitting Janssen to avoid existing legal obligations.

**EXHIBIT D**

**Non-Released Entities**

The following includes a non-exclusive list of non-Released Entities:

1. Actavis LLC
2. Actavis Pharma, Inc.
3. Allergan PLC
4. Allergan Finance, LLC
5. AmerisourceBergen Corporation
6. AmerisourceBergen Drug Corporation
7. Anda, Inc.
8. Cardinal Health, Inc.
9. Cephalon, Inc.
10. Collegium Pharmaceuticals
11. CVS Health Corp.
12. CVS Pharmacy, Inc.
13. Endo Pharmaceuticals Inc.
14. Endo Health Solutions Inc.
15. Mallinckrodt LLC
16. McKesson Corporation
17. McKinsey & Company Inc.
18. Par Pharmaceutical, Inc.
19. Par Pharmaceutical Companies, Inc.
20. Purdue Pharma L.P.
21. Purdue Pharma Inc.
22. SpecGx LLC
23. Teva Pharmaceuticals USA, Inc.
24. The Purdue Frederick Company
25. Walgreen Co.
26. Walgreens Boots Alliance, Inc.
27. Walmart Inc.
28. Watson Laboratories, Inc.

**EXHIBIT E**

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

**IN RE: OPIOID LITIGATION**                    **CIVIL ACTION NO. 19-C-9000 MFR**

**THIS DOCUMENT APPLIES TO:**

STATE OF WEST VIRGINIA ex rel.
PATRICK MORRISEY, Attorney General,

        Plaintiff,

    v.                                                                    Civil Action No. 19-C-151 BNE

JANSSEN PHARMACEUTICALS, INC,
ORTHO-MCNEIL-JANSSEN
PHARMACEUTICALS, INC. n/k/a
JANSSEN PHARMACEUTICALS, INC.,
JANSSEN PHARMACEUTICA, INC. n/k/a
JANSSEN PHARMACEUTICALS, INC.,
and JOHNSON & JOHNSON,

        Defendants.

**CONSENT JUDGMENT**

Plaintiff, the State of West Virginia ("Plaintiff"), brought the above-captioned action against

Defendants  Johnson  &  Johnson,  Janssen  Pharmaceuticals,  Inc.,  Ortho-McNeil-Janssen

Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. n/k/a

Janssen Pharmaceuticals, Inc. (collectively, "Janssen"), among others, alleging:  that Janssen violated

West Virginia law by deceptively marketing opioid pain medications so as to overstate their efficacy

and downplay the associated risk of addiction, which resulted in a public nuisance in West Virginia;

that Janssen violated the law by failing to monitor, report and not ship allegedly suspicious orders of

opioid pain medications; and that Janssen violated the West Virginia Consumer Credit and Protection

Act, W. Va. Code §§ 46A-1-101 et seq. (the "West Virginia AG Action").

In addition, numerous governmental entities in West Virginia, including counties, cities, towns and villages ("Local Governments") have brought separate lawsuits ("Actions") in various forums against Janssen, among others.  These Actions assert claims that arise out of or relate to alleged conduct that is substantially similar to or overlaps with the conduct alleged in the West Virginia AG Action (the "Covered Conduct").

Janssen denies the allegations in the West Virginia AG Action and other Actions and maintains that it has no liability whatsoever to Plaintiff or to any Local Government or other governmental entity (whether such governmental entity has brought or is a party to another Action or not).  Plaintiff and Janssen (the "Parties"), by their respective counsel, have agreed to a resolution of the West Virginia AG Action on terms set out in the Janssen West Virginia State-Wide Opioid Settlement Agreement ("Agreement," attached to this judgment), which include the entry of this Consent Judgment (and the injunctive terms incorporated herein) by the Court without trial or finding of admission or wrongdoing or liability of any kind.  Furthermore, under the Agreement, the West Virginia AG has agreed to obtain releases on behalf of all Litigating Local Governments as well as Non-Litigating Local Governments as specified in the Agreement.  The intention of the Parties is to resolve and release all Claims of the West Virginia AG and Local Governments, whether asserted previously or in the future, that arise out of or relate to the Covered Conduct.  Unless otherwise specified, capitalized terms used herein shall have the meanings specified in the Agreement.

NOW THEREFORE, without trial or adjudication of any issue of fact or law presented in the West Virginia AG Action or the other Actions, without this Consent Judgment constituting evidence against or admission by anyone with respect to any issue of fact or law, and upon the Parties' consent, IT IS HEREBY ORDERED AS FOLLOWS:

## I.     PARTIES

1.     Defendant Johnson & Johnson is a New Jersey corporation with its principal place of business in New Jersey.

2.     Defendant Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in New Jersey.

3.     Defendant Ortho-McNeil-Janssen Pharmaceuticals, Inc., now known as Janssen Pharmaceuticals, Inc., is a Pennsylvania corporation with its principal place of business in New Jersey.

4.     Defendant Janssen Pharmaceutica, Inc., now known as Janssen Pharmaceuticals, Inc., is a Pennsylvania corporation with its principal place of business in New Jersey.

5.     Plaintiff has the authority to act in the public interest and on behalf of the people of West Virginia.

## II.     JURISDICTION

6.     This Court has jurisdiction over the Parties and the subject matter of this action.

## III.     AGREEMENT

7.     The Parties have agreed to resolution of the West Virginia AG Action under the terms of their Agreement, which is attached hereto as Exhibit A.  This Consent Judgment summarizes and gives effect to those terms.  In the event of a conflict between the terms of the Exhibits and this summary document, the terms of the Agreement shall govern.

## IV.     FINANCIAL TERMS

8.     Pursuant to the terms of the Parties' Agreement, Janssen shall pay Plaintiff up to $99,000,000.00 on the following schedule:

36

(a)    Within 45 days after delivery to Janssen of executed Settlement Participation Forms from Participating Local Governments representing 96% of the population of all Local Governments (calculated by summing the populations of all Local Governments), Janssen shall pay $95,040,000 to Plaintiff.

(b)    Janssen shall pay an additional $990,000 to Plaintiff within 45 days after each delivery of additional executed Settlement Participation Forms from Participating Local Governments representing an additional 1% of the population of all Local Governments (calculated by summing the populations of all Local Governments) over and above the 96% referenced in Section V.B.1 of the Agreement.

9.     Through the entry of this Consent Judgment, the Court finds that the financial terms of the Agreement were negotiated in good faith, are fair and are in the in the best interests of the State, the Local Governments and their respective citizens.

## V.    INJUNCTIVE TERMS

10.    The Parties have agreed that Janssen shall be subject to the injunctive terms set forth in Exhibit C to their Agreement.  Those agreed injunctive terms are expressly incorporated into and are given full force and effect by this Consent Judgment, and Janssen shall comply with the injunctive terms as of the entry of this Consent Judgment.

11.    Compliance with injunctive terms may be enforced in this Court consistent with the terms specified in the injunctive provisions set forth in the Parties' Agreement.

## VI.    RELEASES AND DISMISSAL WITH PREJUDICE

12.    Plaintiff and Janssen have agreed to the Release of certain Claims as provided in Section IV of the Agreement.  Such Releases are given in good faith and upon entry of this Consent Judgment shall be effective as to all Releasors.

13.     Plaintiff's Claims against Janssen are hereby DISMISSED WITH PREJUDICE, with each Party to bear its own costs except as specified in the Agreement.

14.     Further, as a condition precedent to the Agreement becoming Effective, all Participating Local Governments were required to execute an Election and Release Form (Exhibit B to the Agreement), through which those Participating Local Governments agreed to be bound by all terms and conditions of the Agreement, including but not limited to the Release of certain Claims provided in Section IV of the Agreement.  Such Releases are given in good faith and upon entry of this Consent Judgment shall become effective (a) as to all Litigating Local Governments that have asserted Claims against Janssen as part of any Actions pending before the Court and (b) as to all Non-Litigating Local Governments that, as of the date of this Consent Judgment, have become Participating Local Governments pursuant to Section VII of the Agreement.

15.     The Claims of all Litigating Local Governments that have been asserted against Janssen in Actions pending before this Court are hereby DISMISSED WITH PREJUDICE, with each party to bear its own costs except as specified in the Agreement.[1]

## VII.    MISCELLANEOUS

16.     This Court retains jurisdiction to enforce the terms of this Consent Judgment.  The parties may jointly seek to modify the terms of this Consent Judgment, subject to the approval of this Court.  This Consent Judgment may be modified only by order of this Court.

17.     This Consent Judgment shall remain in full force and effect for ten years from the date it is entered, at which time Janssen's obligations under the Consent Judgment shall expire.

18.     Entry of this Consent Judgment is in the public interest.

---

[1] Prior to finalizing and submitting the Consent Judgment to the Court, the Parties will agree upon, and attach as an exhibit to this Consent Judgment, a list of all Actions to be dismissed by the Court.

IT IS SO ORDERED, ADJUDGED AND DECREED, this ___ day of [INSERT MONTH]

2022.

_____

JOINTLY APPROVED AND
SUBMITTED FOR ENTRY:


FOR STATE OF WEST VIRGINIA

PATRICK MORRISEY
ATTORNEY GENERAL


By:  _____
          [to come]

Date:  _____

[Additional approvals on subsequent pages]

FOR DEFENDANTS:


Date:                                                By:
                                                     Marc Larkins
                                                     Assistant Corporate Secretary, Johnson & Johnson

Approved as to form:

Date:                                                By:
                                                     Charles C. Lifland
                                                     O'Melveny & Myers LLP
                                                     Counsel for Defendants


Date:                                                 By:
                                                      LOCAL COUNSEL
                                                      [Insert Signature Block]
                                                      Local Counsel for Defendants

## EXHIBIT F[2]

## Litigating Local Governments

1. Addison (Webster Springs) Town
2. Barbour County
3. Barboursville Village
4. Beckley City
5. Belington Town
6. Belle Town
7. Berkeley County
8. Bluefield City
9. Boone County
10. Braxton County
11. Brooke County
12. Buckhannon City
13. Cabell County
14. Calhoun County
15. Ceredo City
16. Chapmanville City
17. Charles Town City
18. Charleston City
19. Chesapeake Town
20. Clarksburg City
21. Clay County
22. Clendenin Town
23. Delbarton Town
24. Doddridge County
25. Dunbar City
26. Eleanor Town
27. Elizabeth Town
28. Fairmont City
29. Fayette County
30. Fort Gay Town
31. Gauley Bridge Town
32. Gilbert Town
33. Gilmer County
34. Glenville Town
35. Grafton City
36. Grant County
37. Granville Town
38. Greenbrier County
39. Hamlin Town
40. Hancock County
41. Hardy County
42. Harrison County
43. Harrisville Town
44. Huntington City
45. Hurricane City
46. Jackson County
47. Jefferson County
48. Junior Town
49. Kanawha County
50. Kenova City
51. Kermit Town
52. Lewis County
53. Lincoln County
54. Logan City
55. Logan County
56. Madison City
57. Marion County
58. Marshall County
59. Mason County
60. Mason County Board of Education
61. Matewan Town
62. Mcdowell County
63. Mercer County
64. Milton Town
65. Mineral County
66. Mingo County
67. Monongalia County
68. Monroe County
69. Montgomery City
70. Morgan County
71. Moundsville City
72. Mullens City
73. Nicholas County
74. Nitro City
75. Oceana Town
76. Ohio County
77. Parkersburg City
78. Pendleton County
79. Philippi City
80. Pleasants County
81. Pocahontas County
82. Point Pleasant City
83. Preston County
84. Princeton City
85. Putnam County
86. Quinwood Town
87. Rainelle Town
88. Randolph County

---

[2] This Exhibit represents a good faith effort by the Parties to list all Litigating Local Governments and all Non-Litigating Local Governments with populations over 10,000.  To the extent that any Party subsequently identifies a Local Government that should have been included on this Exhibit but was inadvertently omitted, the Parties will add the Local Government to the Exhibit and use their best efforts to secure participation of that Local Government under the terms of Section VII.

89. Ravenswood City
90. Richwood City
91. Ripley City
92. Ritchie County
93. Roane County
94. Romney City
95. Rupert Town
96. Smithers City
97. Sophia Town
98. South Charleston City
99. Spencer City
100. St. Albans City
101. St. Marys City
102. Star City Town
103. Summersville City
104. Sutton Town
105. Taylor County

106. Tucker County
107. Tyler County
108. Upshur County
109. Vienna City
110. Wayne County
111. Webster County
112. Weirton City
113. Welch City
114. West Hamlin Town
115. Wetzel County
116. White Sulphur Springs City
117. Whitesville Town
118. Williamson City
119. Williamstown City
120. Winfield Town
121. Wirt County
122. Wood County

## <u>Non-Litigating Local Governments with Population over 10,000</u>

1. Hampshire County
2. Kanawha County Board of Education
3. Martinsburg City
4. Morgantown City
5. Raleigh County
6. Summers County
7. Wheeling City
8. Wyoming County

**EXHIBIT G**

**SUBSIDIARIES**

Johnson & Johnson, a New Jersey corporation, had the U.S. and international subsidiaries shown below as of January 2, 2022. Johnson & Johnson is not a subsidiary of any other entity.

| Name of Subsidiary | Jurisdiction |
| --- | --- |
| **U.S. Subsidiaries:** | |
| Acclarent, Inc. | Delaware |
| Actelion Pharmaceuticals US, Inc. | Delaware |
| Akros Medical, Inc. | Delaware |
| Albany Street LLC | New Jersey |
| ALZA Corporation | Delaware |
| Alza Land Management, Inc. | Delaware |
| AMO Development, LLC | Delaware |
| AMO Manufacturing USA, LLC | Delaware |
| AMO Nominee Holdings, LLC | Delaware |
| AMO Sales and Service, Inc. | Delaware |
| AMO Spain Holdings, LLC | Delaware |
| AMO U.K. Holdings, LLC | Delaware |
| Anakuria Therapeutics, Inc. | Delaware |
| Animas Diabetes Care, LLC | Delaware |
| Animas LLC | Delaware |
| Animas Technologies LLC | Delaware |
| AorTx, Inc. | Delaware |
| Aragon Pharmaceuticals, Inc. | Delaware |
| Asia Pacific Holdings, LLC | New Jersey |
| Atrionix, Inc. | California |
| AUB Holdings LLC | Delaware |
| Auris Health, Inc. | Delaware |
| BeneVir BioPharm, Inc. | Delaware |
| BioMedical Enterprises, Inc. | Texas |
| Biosense Webster, Inc. | California |
| Calibra Medical LLC | Delaware |
| Centocor Biologics, LLC | Pennsylvania |
| Centocor Research & Development, Inc. | Pennsylvania |
| Cerenovus, Inc. | New Jersey |
| Ci:Labo USA, Inc. | New York |
| Coherex Medical, Inc. | Delaware |
| Company Store.com, Inc. | New Jersey |
| Cordis International Corporation | Delaware |
| CoTherix Inc. | Delaware |
| CSATS, Inc. | Washington |
| DePuy Mitek, LLC | Massachusetts |
| DePuy Orthopaedics, Inc. | Indiana |
| DePuy Products, Inc. | Indiana |
| DePuy Spine, LLC | Ohio |
| DePuy Synthes Institute, LLC | Delaware |
| DePuy Synthes Products, Inc. | Delaware |
| DePuy Synthes Sales, Inc. | Massachusetts |
| DePuy Synthes, Inc. | Delaware |
| Dutch Holding LLC | Delaware |
| ECL7, LLC | Delaware |
| Ethicon Endo-Surgery, Inc. | Ohio |
| Ethicon Endo-Surgery, LLC | Delaware |

| Name of Subsidiary | Jurisdiction |
|---|---|
| Ethicon LLC | Delaware |
| Ethicon US, LLC | Texas |
| Ethicon, Inc. | New Jersey |
| Hansen Medical International, Inc. | Delaware |
| Hansen Medical, Inc. | Delaware |
| Hickory Merger Sub, Inc. | Delaware |
| I.D. Acquisition Corp. | New Jersey |
| Innovative Surgical Solutions, LLC | Michigan |
| Janssen BioPharma, LLC | Delaware |
| Janssen Biotech, Inc. | Pennsylvania |
| Janssen Diagnostics, LLC | Delaware |
| Janssen Global Services, LLC | New Jersey |
| Janssen Oncology, Inc. | Delaware |
| Janssen Ortho LLC | Delaware |
| Janssen Pharmaceuticals, Inc. | Pennsylvania |
| Janssen Products, LP | New Jersey |
| Janssen Research & Development, LLC | New Jersey |
| Janssen Scientific Affairs, LLC | New Jersey |
| Janssen Supply Group, LLC | Pennsylvania |
| Janssen-Cilag Manufacturing, LLC | Delaware |
| Jevco Holding, Inc. | New Jersey |
| JJHC, LLC | Delaware |
| JNJ International Investment LLC | Delaware |
| Johnson & Johnson | New Jersey |
| Johnson & Johnson (Middle East) Inc. | New Jersey |
| Johnson & Johnson Consumer Inc. | New Jersey |
| Johnson & Johnson Enterprise Innovation Inc. | Delaware |
| Johnson & Johnson Finance Corporation | New Jersey |
| Johnson & Johnson Gateway, LLC | New Jersey |
| Johnson & Johnson Health and Wellness Solutions, Inc. | Michigan |
| Johnson & Johnson Health Care Systems Inc. | New Jersey |
| Johnson & Johnson Innovation - JJDC, Inc. | New Jersey |
| Johnson & Johnson Innovation LLC | Delaware |
| Johnson & Johnson International | New Jersey |
| Johnson & Johnson Medical Devices & Diagnostics Group - Latin America, L.L.C. | Florida |
| Johnson & Johnson S.E., Inc. | New Jersey |
| Johnson & Johnson Services, Inc. | New Jersey |
| Johnson & Johnson Surgical Vision, Inc. | Delaware |
| Johnson & Johnson Urban Renewal Associates | New Jersey |
| Johnson & Johnson Vision Care, Inc. | Florida |
| JOM Pharmaceutical Services, Inc. | Delaware |
| LTL Management LLC | North Carolina |
| McNeil Consumer Pharmaceuticals Co. | New Jersey |
| McNeil Healthcare LLC | Delaware |
| McNeil LA LLC | Delaware |
| McNEIL MMP, LLC | New Jersey |
| McNeil Nutritionals, LLC | Delaware |
| Medical Device Business Services, Inc. | Indiana |
| Medical Devices & Diagnostics Global Services, LLC | Delaware |
| Medical Devices International LLC | Delaware |
| MegaDyne Medical Products, Inc. | Utah |
| Mentor Partnership Holding Company I, LLC | Delaware |
| Mentor Texas GP LLC | Delaware |
| Mentor Texas L.P. | Delaware |

| Name of Subsidiary | Jurisdiction |
|---|---|
| Mentor Worldwide LLC | Delaware |
| Micrus Endovascular LLC | Delaware |
| Middlesex Assurance Company Limited | Vermont |
| Momenta Pharmaceuticals, Inc. | Delaware |
| NeoStrata Company, Inc. | Delaware |
| Netherlands Holding Company | Delaware |
| NeuWave Medical, Inc. | Delaware |
| Novira Therapeutics, LLC | Delaware |
| NuVera Medical, Inc. | Delaware |
| OMJ Pharmaceuticals, Inc. | Delaware |
| Omrix Biopharmaceuticals, Inc. | Delaware |
| Ortho Biologics LLC | Delaware |
| Ortho Biotech Holding LLC | Delaware |
| Ortho-McNeil Pharmaceutical, LLC | Delaware |
| Patriot Pharmaceuticals, LLC | Pennsylvania |
| Peninsula Pharmaceuticals, LLC | Delaware |
| Percivia LLC | Delaware |
| Princeton Laboratories, Inc. | Delaware |
| Pulsar Vascular, Inc. | Delaware |
| Regency Urban Renewal Associates | New Jersey |
| Royalty A&M LLC | North Carolina |
| Rutan Realty LLC | New Jersey |
| Scios LLC | Delaware |
| Sightbox, LLC | Delaware |
| SterilMed, Inc. | Minnesota |
| Synthes USA Products, LLC | Delaware |
| Synthes USA, LLC | Delaware |
| Synthes, Inc. | Delaware |
| TARIS Biomedical LLC | Delaware |
| TearScience, Inc. | Delaware |
| The Anspach Effort, LLC | Florida |
| The Vision Care Institute, LLC | Florida |
| Tibotec, LLC | Delaware |
| Torax Medical, Inc. | Delaware |
| Verb Surgical Inc. | Delaware |
| Vogue International LLC | Delaware |
| Vogue International Trading, Inc. | Florida |
| WH4110 Development Company, L.L.C. | Georgia |
| Zarbee's, Inc. | Delaware |

| Name of Subsidiary | Jurisdiction |
|---|---|
| **International Subsidiaries:** | |
| 3Dintegrated ApS | Denmark |
| Actelion Ltd | Switzerland |
| Actelion Pharmaceuticals Ltd | Switzerland |
| Actelion Pharmaceuticals Trading (Shanghai) Co., Ltd. | China |
| Actelion Treasury Unlimited Company | Ireland |
| AMO (Hangzhou) Co., Ltd. | China |
| AMO (Shanghai) Medical Devices Trading Co., Ltd Beijing Branch | China |
| AMO (Shanghai) Medical Devices Trading Co., Ltd Guangzhou Branch | China |
| AMO (Shanghai) Medical Devices Trading Co., Ltd. | China |
| AMO ASIA LIMITED | Hong Kong |
| AMO Asia Limited (Korea Branch) | Korea, Republic of |
| AMO Asia Limited Taiwan Branch (Hong Kong) | Taiwan |
| AMO Australia Pty Limited | Australia |
| AMO Australia Pty Limited (New Zealand Branch) | New Zealand |
| AMO Canada Company | Canada |
| AMO Denmark ApS | Denmark |
| AMO France | France |
| AMO Germany GmbH | Germany |
| AMO Groningen B.V. | Netherlands |
| AMO International Holdings Unlimited Company | Ireland |
| AMO Ireland | Cayman Islands |
| AMO Ireland, Ireland Branch | Ireland |
| AMO Italy SRL | Italy |
| AMO Japan K.K. | Japan |
| AMO Netherlands BV | Netherlands |
| AMO Norway AS | Norway |
| AMO Puerto Rico Manufacturing, Inc. | Cayman Islands |
| AMO Singapore Pte. Ltd. | Singapore |
| AMO Switzerland GmbH | Switzerland |
| AMO United Kingdom, Ltd. | United Kingdom |
| AMO Uppsala AB | Sweden |
| Apsis | France |
| Backsvalan 2 Aktiebolag | Sweden |
| Backsvalan 6 Handelsbolag | Sweden |
| Beijing Dabao Cosmetics Co., Ltd. | China |
| Berna Rhein B.V. | Netherlands |
| Biosense Webster (Israel) Ltd. | Israel |
| Branch of Johnson & Johnson LLC (RU) in Kazakhstan | Kazakhstan |
| C Consumer Products Denmark ApS | Denmark |
| Campus-Foyer Apotheke GmbH | Switzerland |
| Carlo Erba OTC S.r.l. | Italy |
| ChromaGenics B.V. | Netherlands |
| Ci:Labo Customer Marketing Co., Ltd. | Japan |
| Ci:z. Labo Co., Ltd. | Japan |
| Cilag AG | Switzerland |
| Cilag GmbH International | Switzerland |
| Cilag Holding AG | Switzerland |
| Cilag Holding Treasury Unlimited Company | Ireland |
| Cilag-Biotech, S.L. | Spain |
| ColBar LifeScience Ltd. | Israel |
| Cordis de Mexico, S.A. de C.V. | Mexico |
| Corimmun GmbH | Germany |
| Debs-Vogue Corporation (Proprietary) Limited | South Africa |

| Name of Subsidiary | Jurisdiction |
| --- | --- |
| DePuy Hellas SA | Greece |
| DePuy International Limited | United Kingdom |
| DePuy Ireland Unlimited Company | Ireland |
| DePuy Mexico, S.A. de C.V. | Mexico |
| DePuy Synthes Gorgan Limited | Ireland |
| DePuy Synthes Leto SARL | Luxembourg |
| EES Holdings de Mexico, S. de R.L. de C.V. | Mexico |
| EES, S.A. de C.V. | Mexico |
| EIT Emerging Implant Technologies GmbH | Germany |
| Ethicon Endo-Surgery (Europe) GmbH | Germany |
| Ethicon PR Holdings Unlimited Company | Ireland |
| Ethicon Sarl | Switzerland |
| Ethicon Women's Health & Urology Sarl | Switzerland |
| Ethnor (Proprietary) Limited | South Africa |
| Ethnor del Istmo S.A. | Panama |
| Ethnor Farmaceutica, S.A. | Venezuela, Bolivarian Republic of |
| Finsbury (Development) Limited | United Kingdom |
| Finsbury (Instruments) Limited | United Kingdom |
| Finsbury Medical Limited | United Kingdom |
| Finsbury Orthopaedics International Limited | United Kingdom |
| Finsbury Orthopaedics Limited | United Kingdom |
| FMS Future Medical System SA | Switzerland |
| GH Biotech Holdings Limited | Ireland |
| Global Investment Participation B.V. | Netherlands |
| GMED Healthcare BV | Belgium |
| GMED Healthcare BV (Branch) | United Arab Emirates |
| Guangzhou Bioseal Biotech Co., Ltd. | China |
| Hansen Medical Deutschland GmbH | Germany |
| Hansen Medical UK Limited | United Kingdom |
| Healthcare Services (Shanghai) Ltd. | China |
| Innomedic Gesellschaft für innovative Medizintechnik und Informatik mbH | Germany |
| J & J Company West Africa Limited | Nigeria |
| J&J Pension Trustees Limited | United Kingdom |
| J.C. General Services BV | Belgium |
| Janssen Alzheimer Immunotherapy (Holding) Limited | Ireland |
| Janssen Biologics (Ireland) Limited | Ireland |
| Janssen Biologics B.V. | Netherlands |
| Janssen Cilag Farmaceutica S.A. | Argentina |
| Janssen Cilag S.p.A. | Italy |
| Janssen Cilag SPA | Algeria |
| Janssen Cilag, C.A. | Venezuela, Bolivarian Republic of |
| Janssen Development Finance Unlimited Company | Ireland |
| Janssen Egypt LLC | Egypt |
| Janssen Farmaceutica Portugal Lda | Portugal |
| Janssen Holding GmbH | Switzerland |
| Janssen Inc. | Canada |
| Janssen Irish Finance Unlimited Company | Ireland |
| Janssen Korea Ltd. | Korea, Republic of |
| Janssen Pharmaceutica (Proprietary) Limited | South Africa |
| Janssen Pharmaceutica NV | Belgium |
| Janssen Pharmaceutica S.A. | Peru |
| Janssen Pharmaceutical K.K. | Japan |
| Janssen Pharmaceutical Sciences Unlimited Company | Ireland |
| Janssen Pharmaceutical Unlimited Company | Ireland |

| | |
|---|---|
| **Janssen Pharmaceuticals, Inc., Japan Branch** | Japan |
| Janssen R&D Ireland Unlimited Company | Ireland |
| Janssen Sciences Ireland Unlimited Company | Ireland |
| Janssen Vaccines & Prevention B.V. | Netherlands |
| Janssen Vaccines Corp. | Korea, Republic of |
| Janssen Vaccines, Branch of Cilag GmbH International | Switzerland |
| Janssen-Cilag | France |
| Janssen-Cilag (New Zealand) Limited | New Zealand |
| Janssen-Cilag A/S | Denmark |
| Janssen-Cilag AG | Switzerland |
| Janssen-Cilag Aktiebolag | Sweden |
| Janssen-Cilag AS | Norway |
| Janssen-Cilag B.V. | Netherlands |
| Janssen-Cilag de Mexico S. de R.L. de C.V. | Mexico |
| Janssen-Cilag Farmaceutica Lda. | Portugal |
| Janssen-Cilag Farmaceutica Ltda. | Brazil |
| Janssen-Cilag GmbH | Germany |
| Janssen-Cilag International NV | Belgium |
| Janssen-Cilag Kft. | Hungary |
| Janssen-Cilag Kft. Branch Office | Hungary |
| Janssen-Cilag Limited | Thailand |
| Janssen-Cilag Limited | United Kingdom |
| Janssen-Cilag NV | Belgium |
| Janssen-Cilag OY | Finland |
| Janssen-Cilag Pharma GmbH | Austria |
| Janssen-Cilag Pharmaceutical S.A.C.I. | Greece |
| Janssen-Cilag Polska, Sp. z o.o. | Poland |
| Janssen-Cilag Pty Ltd | Australia |
| Janssen-Cilag Pty Ltd (Branch) | New Zealand |
| Janssen-Cilag S.A. | Colombia |
| Janssen-Cilag s.r.o. | Czech Republic |
| Janssen-Cilag, S.A. | Spain |
| Janssen-Cilag, S.A. de C.V. | Mexico |
| Janssen-Pharma, S.L. | Spain |
| J-C Health Care Ltd. | Israel |
| JJ Surgical Vision Spain, S.L. | Spain |
| JJC Acquisition Company B.V. | Netherlands |
| JJSV Belgium BV | Belgium |
| JJSV Manufacturing Malaysia SDN. BHD. | Malaysia |
| JJSV Norden AB | Sweden |
| JJSV Produtos Oticos Ltda. | Brazil |
| JNJ Global Business Services s.r.o. | Czech Republic |
| JNJ Holding EMEA B.V. | Netherlands |
| J-C Health Care Ltd. | Israel |
| JJ Surgical Vision Spain, S.L. | Spain |
| JJC Acquisition Company B.V. | Netherlands |
| JJSV Belgium BV | Belgium |
| JJSV Manufacturing Malaysia SDN. BHD. | Malaysia |
| JJSV Norden AB | Sweden |
| JJSV Produtos Oticos Ltda. | Brazil |
| JNJ Global Business Services s.r.o. | Czech Republic |
| JNJ Holding EMEA B.V. | Netherlands |
| Johnson & Johnson - Societa' Per Azioni | Italy |
| Johnson & Johnson (Angola), Limitada | Angola |
| Johnson & Johnson (China) Investment Ltd. | China |

| Name of Subsidiary | Jurisdiction |
|---|---|
| Johnson & Johnson (China) Investment Ltd. Beijing Branch | China |
| Johnson & Johnson (Egypt) S.A.E. | Egypt |
| Johnson & Johnson (Hong Kong) Limited | Hong Kong |
| Johnson & Johnson (Ireland) Limited | Ireland |
| Johnson & Johnson (Jamaica) Limited | Jamaica |
| Johnson & Johnson (Kenya) Limited | Kenya |
| Johnson & Johnson (Middle East) Inc. Service Center (DAFZA Branch) | United Arab Emirates |
| Johnson & Johnson (Middle East), Inc. (DHCC Branch) | United Arab Emirates |
| Johnson & Johnson (Middle East), Inc. (JAFZA Branch) | United Arab Emirates |
| Johnson & Johnson (Mozambique), Limitada | Mozambique |
| Johnson & Johnson (Namibia) (Proprietary) Limited | Namibia |
| Johnson & Johnson (New Zealand) Limited | New Zealand |
| Johnson & Johnson (Philippines), Inc. | Philippines |
| Johnson & Johnson (Private) Limited | Zimbabwe |
| Johnson & Johnson (Thailand) Ltd. | Thailand |
| Johnson & Johnson (Trinidad) Limited | Trinidad and Tobago |
| Johnson & Johnson (Vietnam) Co., Ltd | Vietnam |
| Johnson & Johnson AB | Sweden |
| Johnson & Johnson AB Eesti filiaal (Branch) | Estonia |
| Johnson & Johnson AG | Switzerland |
| Johnson & Johnson AG (Zuchwil Branch) | Switzerland |
| Johnson & Johnson Belgium Finance Company BV | Belgium |
| Johnson & Johnson Bulgaria EOOD | Bulgaria |
| Johnson & Johnson China Ltd. | China |
| Johnson & Johnson Consumer (Hong Kong) Limited | Hong Kong |
| Johnson & Johnson Consumer (Thailand) Limited | Thailand |
| Johnson & Johnson Consumer B.V. | Netherlands |
| Johnson & Johnson Consumer Health Care Switzerland, Branch of Janssen-Cilag AG | Switzerland |
| Johnson & Johnson Consumer Holdings France | France |
| Johnson & Johnson Consumer NV | Belgium |
| Johnson & Johnson Consumer Saudi Arabia Limited | Saudi Arabia |
| Johnson & Johnson Consumer Services EAME Ltd. | United Kingdom |
| Johnson & Johnson Consumer, Inc. (Dominican Republic Branch) | Dominican Republic |
| Johnson & Johnson d.o.o. | Slovenia |
| Johnson & Johnson de Argentina S.A.C. e. I. | Argentina |
| Johnson & Johnson de Chile Limitada | Chile |
| Johnson & Johnson de Chile S.A. | Chile |
| Johnson & Johnson de Colombia S.A. | Colombia |
| Johnson & Johnson de Mexico, S.A. de C.V. | Mexico |
| Johnson & Johnson de Uruguay S.A. | Uruguay |
| Johnson & Johnson de Venezuela, S.A. | Venezuela, Bolivarian Republic of |
| Johnson & Johnson del Ecuador, S.A. | Ecuador |
| Johnson & Johnson Del Paraguay, S.A. | Paraguay |
| Johnson & Johnson del Peru S.A. | Peru |
| Johnson & Johnson do Brasil Industria E Comercio de Produtos Para Saude Ltda. | Brazil |
| Johnson & Johnson Dominicana, S.A.S. | Dominican Republic |
| Johnson & Johnson European Treasury Unlimited Company | Ireland |
| Johnson & Johnson Finance Limited | United Kingdom |
| Johnson & Johnson Financial Services GmbH | Germany |
| Johnson & Johnson Financial Services GmbH (Branch Office) | France |
| Johnson & Johnson for Export and Import LLC | Egypt |
| Johnson & Johnson Gesellschaft m.b.H. | Austria |
| Johnson & Johnson GmbH | Germany |
| Johnson & Johnson Guatemala, S.A. | Guatemala |

| | |
|---|---|
| **Johnson & Johnson Hellas Commercial and Industrial S.A.** | Greece |
| Johnson & Johnson Hellas Consumer Products Commercial Societe Anonyme | Greece |
| Johnson & Johnson Hemisferica S.A. | Puerto Rico |
| Johnson & Johnson Holding GmbH | Germany |
| Johnson & Johnson Inc. | Canada |
| Johnson & Johnson Industrial Ltda. | Brazil |
| Johnson & Johnson Innovation Limited | United Kingdom |
| Johnson & Johnson International (Belgian Branch) (European Logistics Center) | Belgium |
| Johnson & Johnson International (Singapore) Pte. Ltd. | Singapore |
| Johnson & Johnson International (Singapore) Pte. Ltd. (Branch) | Philippines |
| Johnson & Johnson International Financial Services Unlimited Company | Ireland |
| Johnson & Johnson K.K. | Japan |
| Johnson & Johnson Kft. | Hungary |
| Johnson & Johnson Korea Ltd. | Korea, Republic of |
| Johnson & Johnson Korea Selling & Distribution LLC | Korea, Republic of |
| Johnson & Johnson Limited | United Kingdom |
| Johnson & Johnson Limited (Sri Lanka Branch) | Sri Lanka |
| Johnson & Johnson LLC | Russian Federation |
| Johnson & Johnson Luxembourg Finance Company Sarl | Luxembourg |
| Johnson & Johnson Management Limited | United Kingdom |
| Johnson & Johnson Medical (China) Ltd. | China |
| Johnson & Johnson Medical (Proprietary) Ltd | South Africa |
| Johnson & Johnson Medical (Shanghai) Ltd. | China |
| Johnson & Johnson Medical (Shanghai) Ltd. Beijing Branch | China |
| Johnson & Johnson Medical (Suzhou) Ltd. | China |
| Johnson & Johnson Medical B.V. | Netherlands |
| Johnson & Johnson Medical GmbH | Germany |
| Johnson & Johnson Medical Korea Ltd. | Korea, Republic of |
| Johnson & Johnson Medical Limited | United Kingdom |
| Johnson & Johnson Medical Mexico, S.A. de C.V. | Mexico |
| Johnson & Johnson Medical NV | Belgium |
| Johnson & Johnson Medical Products GmbH | Austria |
| Johnson & Johnson Medical Pty Ltd | Australia |
| Johnson & Johnson Medical S.A. | Argentina |
| Johnson & Johnson Medical S.p.A. | Italy |
| Johnson & Johnson Medical SAS | France |
| Johnson & Johnson Medical Saudi Arabia Limited | Saudi Arabia |
| Johnson & Johnson Medical Taiwan Ltd. | Taiwan |
| Johnson & Johnson Medical, S.C.S. | Venezuela, Bolivarian Republic of |
| Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi | Turkey |
| Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi (Ankara Branch) | Turkey |
| Johnson & Johnson Medikal Sanayi ve Ticaret Limited Sirketi (Izmir Branch) | Turkey |
| Johnson & Johnson Middle East - Scientific Office | United Arab Emirates |
| Johnson & Johnson Middle East FZ - LLC (Lebanese Branch) | Lebanon |
| Johnson & Johnson Middle East FZ-LLC | United Arab Emirates |
| Johnson & Johnson Middle East FZ-LLC (Ghana Branch) | Ghana |
| Johnson & Johnson Middle East FZ-LLC (Kenya Branch) | Kenya |
| Johnson & Johnson Middle East FZ-LLC Branch (TSO) (Saudi Arabia Branch) | Saudi Arabia |
| Johnson & Johnson Morocco Societe Anonyme | Morocco |
| Johnson & Johnson NCB (Belgian Branch) | Belgium |
| Johnson & Johnson Nordic AB | Sweden |
| Johnson & Johnson Pacific Pty Limited | Australia |
| Johnson & Johnson Pakistan (Private) Limited | Pakistan |
| Johnson & Johnson Panama, S.A. | Panama |
| Johnson & Johnson Personal Care (Chile) S.A. | Chile |

| | |
|---|---|
| **Johnson & Johnson Poland Sp. z o.o.** | **Poland** |
| Johnson & Johnson Poland sp. z o.o. oddzial w Warszawie "Consumer" | Poland |
| Johnson & Johnson Private Limited | India |
| Johnson & Johnson Pte. Ltd. | Singapore |
| Johnson & Johnson Pte. Ltd. Korea Branch | Korea, Republic of |
| Johnson & Johnson Pty. Limited | Australia |
| Johnson & Johnson Romania S.R.L. | Romania |
| Johnson & Johnson S.E. d.o.o. | Croatia |
| Johnson & Johnson Sante Beaute France | France |
| Johnson & Johnson SDN. BHD. | Malaysia |
| Johnson & Johnson Surgical Vision India Private Limited | India |
| Johnson & Johnson Taiwan Ltd. | Taiwan |
| Johnson & Johnson UK Treasury Company Limited | United Kingdom |
| Johnson & Johnson Ukraine LLC | Ukraine |
| Johnson & Johnson Vision Care (Shanghai) Ltd. | China |
| Johnson & Johnson Vision Care Ireland Unlimited Company | Ireland |
| Johnson & Johnson, Lda | Portugal |
| Johnson & Johnson, S.A. | Spain |
| Johnson & Johnson, S.A. de C.V. | Mexico |
| Johnson & Johnson, s.r.o. | Czech Republic |
| Johnson & Johnson, s.r.o. | Slovakia |
| Johnson and Johnson (Proprietary) Limited | South Africa |
| Johnson and Johnson Sihhi Malzeme Sanayi Ve Ticaret Limited Sirketi | Turkey |
| Johnson Y Johnson de Costa Rica, S.A. | Costa Rica |
| La Concha Land Investment Corporation | Philippines |
| Latam International Investment Company Unlimited Company | Ireland |
| Legal Entity Name | Country |
| McNeil AB | Sweden |
| McNeil Denmark ApS | Denmark |
| McNeil Healthcare (Ireland) Limited | Ireland |
| McNeil Healthcare (UK) Limited | United Kingdom |
| McNeil Iberica S.L.U. | Spain |
| McNeil Panama, LLC | Panama |
| McNeil Products Limited | United Kingdom |
| McNeil Sweden AB | Sweden |
| MDS Co. Ltd. | Japan |
| Medos International Sarl | Switzerland |
| Medos International Sàrl, succursale de Neuchâtel (Branch) | Switzerland |
| Medos Sarl | Switzerland |
| Menlo Care De Mexico, S.A. de C.V. | Mexico |
| Mentor B.V. | Netherlands |
| Mentor Deutschland GmbH | Germany |
| Mentor Medical Systems B.V. | Netherlands |
| Momenta Ireland Limited | Ireland |
| NeoStrata UG (haftungsbeschränkt) | Germany |
| Neuravi Limited | Ireland |
| Obtech Medical Mexico, S.A. de C.V. | Mexico |
| OBTECH Medical Sarl | Switzerland |
| OGX Beauty Limited | United Kingdom |
| OMJ Holding GmbH | Switzerland |
| OMJ Ireland Unlimited Company | Ireland |
| Omrix Biopharmaceuticals Ltd. | Israel |
| Omrix Biopharmaceuticals NV | Belgium |
| Orthospin Ltd. | Israel |
| Orthotaxy | France |

| | |
|---|---|
| **Pharmadirect Ltd.** | **Canada** |
| Pharmedica Laboratories (Proprietary) Limited | South Africa |
| Productos de Cuidado Personal y de La Salud de Bolivia S.R.L. | Bolivia |
| Proleader S.A. | Uruguay |
| PT Integrated Healthcare Indonesia | Indonesia |
| PT. Johnson & Johnson Indonesia | Indonesia |
| RespiVert Ltd. | United Kingdom |
| RoC International | Luxembourg |
| Sedona Singapore International Pte. Ltd. | Singapore |
| Sedona Thai International Co., Ltd. | Thailand |
| Serhum S.A. de C.V. | Mexico |
| Shanghai Elsker For Mother & Baby Co., Ltd | China |
| Shanghai Elsker Mother & Baby Co., Ltd Minghang Branch | China |
| Shanghai Johnson & Johnson Ltd. | China |
| Shanghai Johnson & Johnson Pharmaceuticals Ltd. | China |
| Sodiac ESV | Belgium |
| Spectrum Vision Limited Liability Company | Russian Federation |
| Spectrum Vision Limited Liability Company | Ukraine |
| Spectrum Vision Limited Liability Partnership | Kazakhstan |
| Surgical Process Institute Deutschland GmbH | Germany |
| Synthes Costa Rica S.C.R., Limitada | Costa Rica |
| SYNTHES GmbH | Germany |
| Synthes GmbH | Switzerland |
| Synthes Holding AG | Switzerland |
| Synthes Holding Limited | United Arab Emirates |
| SYNTHES Medical Immobilien GmbH | Germany |
| Synthes Medical Surgical Equipment & Instruments Trading LLC | United Arab Emirates |
| Synthes Produktions GmbH | Switzerland |
| Synthes Proprietary Limited | South Africa |
| Synthes S.M.P., S. de R.L. de C.V. | Mexico |
| Synthes Tuttlingen GmbH | Germany |
| UAB "Johnson & Johnson" | Lithuania |
| UAB Johnson & Johnson Eesti Filiaal (Estonian Branch) | Estonia |
| Vania Expansion | France |
| Vision Care Finance Unlimited Company | Ireland |
| Xian Janssen Pharmaceutical Ltd. | China |
| Xian-Janssen Pharmaceutical Ltd. Beijing Branch Office | China |
| Xian-Janssen Pharmaceutical Ltd. Shanghai Branch Office | China |
| XO1 Limited | United Kingdom |