# Exhibit A

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

___

| | |
|---|---|
| **In re: National Prescription Opiate Consultant Litigation** | **MDL No. _____** |

___

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR TRANSFER OF
ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR
CONSOLIDATED PRETRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation (the "Panel"), McKinsey & Company, Inc., McKinsey & Company, Inc. United States, and McKinsey & Company, Inc. Washington D.C. (collectively, "McKinsey") respectfully submit this brief in support of their Motion for Transfer of Actions Pursuant to 28 U.S.C. § 1407 for Coordinated or Consolidated Pretrial Proceedings. McKinsey seeks the transfer of all actions identified in the Schedule of Actions, as well as any actions subsequently filed against McKinsey or affiliates thereof involving similar facts or claims (the "McKinsey Actions"), to a single district for all pre-trial proceedings. McKinsey further requests that the United States District Court for the Southern District of New York be selected for such centralized proceedings.

**I.      INTRODUCTION**

Despite never manufacturing, distributing, or dispensing a single opioid medication, McKinsey, a consulting firm, now faces a growing number of similar or nearly identical complaints being filed against it throughout the country on the heels of its recent $600 million multistate attorney general settlement to resolve potential opioid-related claims. McKinsey settled such claims to be part of the opioid solution but it steadfastly maintains that it has done nothing wrong. Nevertheless, numerous local government entities and tribal communities now

challenge the sufficiency of that settlement and are pursuing their own claims against McKinsey in numerous courts. McKinsey seeks pretrial coordination of these claims in a single court.

McKinsey is aware of the existing opioid-related MDL in the Northern District of Ohio, where, since its inception over three years ago, no claims have been brought against McKinsey. But it respectfully submits that including these newly-filed actions within the existing, and procedurally advanced, MDL would benefit neither that MDL nor the newly-filed cases. In fact, it would likely create significant inefficiencies and further administrative challenges because the claims against McKinsey – raising different theories of secondary liability against an entirely new class of consulting defendant – are unique to the current MDL.

Instead, McKinsey respectfully submits that a new MDL should be established in the Southern District of New York, where these new claims are centered. The claims relate to work McKinsey allegedly performed for Purdue, a defendant originally in the existing MDL but which, since late 2019, has been in bankruptcy proceedings in the Southern District of New York. Indeed, many plaintiffs now pursuing claims against McKinsey are already pursuing claims against Purdue in the Southern District of New York. McKinsey is also located within that District, and consequently relevant evidence and witnesses are located there or in nearby Connecticut, where Purdue is located. Thus, we respectfully request that the Panel transfer these new actions against McKinsey to the Southern District of New York for pretrial coordination.

## II. FACTS

### A. McKinsey Settles with State Attorneys General for Nearly $600 Million, but a Group of Plaintiffs Contends that Is Insufficient.

On January 29, 2021, the <u>Wall Street Journal</u> reported that McKinsey, a management consulting firm, was in talks with a consortium of state attorneys general to resolve potential claims pertaining to advice it gave Purdue Pharma, L.P. ("Purdue"), the manufacturer of the

2

prescription opioid medication OxyContin.  (See Declaration of James L. Bernard In Support Of Defendants' Motion to Transfer ("Bernard Decl." Ex. 1).  McKinsey never manufactured opioids, never sold opioids, and never prescribed opioids. The principal theory of liability advanced by the states was that, by providing advice requested by Purdue about how Purdue could more effectively sell OxyContin, McKinsey improperly assisted Purdue and thereby was liable for harm caused by the opioid epidemic. This was and remains a unique, legally unsupported theory of liability that, as explained further below, is now being pursued against McKinsey by the plaintiffs in the McKinsey Actions.

On February 3, 2021, a settlement was announced with the attorneys general for forty-nine states, the District of Columbia and five U.S. territories.  (Id. Ex. 2).  McKinsey denied fault but nonetheless agreed to pay nearly $600 million to help address the opioid crisis and to avoid the expense of litigation.  (Id.).

Before the ink was dry on the settlement documents, numerous plaintiffs filed suit in jurisdictions around the country. Most of the plaintiffs are counties, cities, or other political subdivisions of the settling states. Some plaintiffs are Native American tribes. Plaintiffs use boilerplate, copycat complaints, and their counsel have claimed in press interviews that the cases were filed because they believe the multistate attorney general settlement was insufficient.  (Id. Ex. 3).  McKinsey seeks to centralize all the cases in an appropriate forum and jurisdiction to obtain an efficient and just resolution of what are, at bottom, collateral attacks on an intensely negotiated and eminently fair settlement obtained by state attorneys general.

  **B.**  **The History of No. 2804 and the Unique Issues to Be Addressed in the McKinsey Actions.**

There is no dispute that the volume of similar cases filed against McKinsey, presenting similar factual and legal issues, justifies centralization. As of this filing, no less than seventeen

3

separate federal cases are pending in at least eight district courts, with collectively hundreds of plaintiffs included.  (See Schedule of Actions).

The core question for the Panel is whether the McKinsey Actions should be centralized in the existing MDL No. 2804 or whether the McKinsey Actions should be centralized in a new MDL in a different district. The recent history of No. 2804, and the issues to be addressed in the McKinsey Actions, makes clear that creation of a new MDL is essential both to ensure the efficient progress of No. 2804 and to address the new and unique issues in the McKinsey Actions in an efficient, expeditious, and fair manner.

No. 2804, In re: National Prescription Opiate Litigation, was created in 2017 with the initial transfer of sixty-two separate actions to the Northern District of Ohio, the Hon. Dan A. Polster presiding. It has come to encompass claims by thousands of plaintiffs against various manufacturers, distributors, and pharmacies that sell or dispense opioid medication. During the past four years of intense litigation, however, no claims against McKinsey or any other professional services firm have been included in No. 2804. Claims against Purdue, originally included in No. 2804, are stayed due to Purdue's bankruptcy case in the Southern District of New York, and the newly-filed McKinsey Actions focus on McKinsey's work for Purdue. They do not allege any claims against McKinsey based on the activity of any distributor or pharmacy. Thus, the claims against McKinsey in the McKinsey Actions relate to work for an entity against whom litigation has been stayed in No. 2804 since September 2019.

Shortly after No. 2804 was created, the Panel anticipated that the cases would pose extreme management challenges above and beyond the expected complexities of every multidistrict litigation. "As this litigation progresses, it may become apparent that certain types of actions or claims could be more efficiently handled in the actions' respective transferor

4

courts." In re: Nat'l Prescription Opiate Litig., 290 F. Supp. 3d 1375, 1379 (J.P.M.L. 2017). Subsequently, the included cases have progressed substantially, but the sheer volume and variety of claims have stressed No. 2804 so severely that last year the presiding judge suggested remands (to transferor jurisdictions) of particular species of claims to avoid delay: "What the Court has learned is that, if it proceeds with the bellwether trial process as it has so far, it will simply take too long to reach each <u>category</u> of plaintiff and defendant, much less each <u>individual</u> plaintiff and defendant. Meanwhile, the Opioid Crisis shows no sign of ending." In re: Nat'l Prescription Opiate Litig., MDL No. 2804, 2020 WL 582151, at *1 (J.P.M.L. Feb. 5, 2020) (emphasis in original). The Panel approved the suggestion of partial remand, acknowledging the challenges presented by the multiplicity of categories of parties and claims, and by the growing complexity of the proceedings. The proposed solution – to allow certain categories of claims to be handled in other districts – was accepted.

     The new McKinsey Actions present both a new category of party – a management consulting firm – and a new species of claims not previously part of No. 2804. Indeed, the liability theories are not simply new to No. 2804, they are theories of indirect liability against a management consulting firm that no court has ever accepted. Accordingly, there is no efficiency to be gained by transferring the McKinsey Actions to the court hearing No. 2804 because that court, like any court that hears these complaints, will be faced with unique, meritless theories of secondary liability. The specific facts pertaining to McKinsey's work for Purdue will need to be developed, and while that work was the subject of some discovery in No. 2804, it must now be addressed in a completely different light and to a completely different degree given McKinsey's status as a defendant. There is no reason to believe that the plaintiffs in the McKinsey Actions would agree to limit discovery on the grounds that ample discovery already has been taken

against other parties in No. 2804. Moreover, discovery has been further complicated because claims against Purdue were stayed following Purdue's bankruptcy filing in the Southern District of New York, No. 19-23649 (Bankr. S.D.N.Y.).

Despite all of the laudable efforts of the District Judge responsible for No. 2804, the litigation has caused substantial administrative challenges, which will only become more pronounced by adding a new category of defendant and liability theory to the proceedings. Early on, the District Judge recognized the exceptional case management difficulties and attempted to resolve them, with the assistance of a civil procedure expert, through the creation of a novel "negotiation class." However, the Sixth Circuit rejected this approach as not expressly authorized by Federal Rule of Civil Procedure 23. See In re: Nat'l Prescription Opiate Litig., 976 F.3d 664 (6th Cir. 2020). Accordingly, administrative challenges remain. On the pharmacy defendant track alone, pre-trial work and eventual trial will be necessary in approximately 1,400 cases. To make just two pharmacy bellwether cases ready for trial later this year will likely occupy most activity in No. 2804 through the end of the year.

There is also no genuine nexus between the new claims against McKinsey and the Northern District of Ohio. But for the existence of No. 2804, there would be no justification for centralizing the cases there. McKinsey is based in New York and performed its work for Purdue in Connecticut.[1] (See Bernard Decl. ¶ 2). Unlike the other defendants in No. 2804, McKinsey did not have any relevant contacts with Ohio, and, accordingly, McKinsey has meritorious

---

[1] Defendant McKinsey & Company, Inc. is a New York corporation with its principal place of business in New York. Defendant McKinsey & Company, Inc. United States is a Delaware corporation with its principal place of business in New York. Defendant McKinsey & Company, Inc. Washington D.C. (named in only one action) is a Delaware corporation with its principal place of business in the District of Columbia. (See Bernard Decl. ¶¶ 2-4).

personal jurisdiction defenses to cases there. It similarly would have valid personal jurisdiction defenses to cases pursued in virtually every district except those in New York, Delaware, or Connecticut (depending on the specific McKinsey entity sued). Within the past ten years, the Supreme Court has issued a series of rulings imposing new limits on personal jurisdiction. See Bristol-Myers Squibb Co. v. Superior Court of Cal., S.F. Cnty., 137 S. Ct. 1773 (2017); BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549 (2017); Walden v. Fiore, 134 S. Ct. 1115 (2014); Daimler AG v. Bauman, 134 S. Ct. 746 (2014); Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011). Without No. 2804, there would be no logical reason to send the McKinsey Actions to the Northern District of Ohio, and the existence of No. 2804 does not obviate McKinsey's personal jurisdiction defenses to transfer there. Most significantly, in light of the current status of No. 2804, no efficiency will be gained by including the new McKinsey Actions in that proceeding.

### C. The Center of Gravity for the McKinsey Actions Is the Southern District of New York.

By contrast, the appropriate place for centralization of the McKinsey Actions is the Southern District of New York, where the Purdue bankruptcy proceedings and the main offices of the principal McKinsey defendants are located. (See Bernard Decl. ¶¶ 2-4).

Purdue's ongoing bankruptcy proceedings in the Southern District of New York are likely to have a significant effect on how the claims against McKinsey may be resolved. Nearly fifty plaintiffs in the cases identified in the Schedule of Actions have already filed proofs of claims in Purdue's bankruptcy case. The face value of their bankruptcy claims approaches sixteen billion dollars. And of the seven McKinsey Actions filed in state court (and subsequently removed to federal court), four have been removed on related to bankruptcy jurisdiction grounds, demonstrating the nexus between those cases and the Southern District of New York and further

7

justifying centralization of all related cases there. In addition, because McKinsey is being sued on a theory of indirect liability based on its work for Purdue, McKinsey has potential third-party claims that may need to be presented in the Southern District of New York. Establishing a new MDL in the Southern District of New York, where the Purdue bankruptcy case is pending, will ensure the efficient coordination between the McKinsey Actions and any bankruptcy-related proceedings involving Purdue that may impact the litigation of the claims in the McKinsey Actions, and vice versa.

Similarly, because the main McKinsey defendants are based in the Southern District of New York, many of the witnesses required to defend the McKinsey Actions are current or former McKinsey employees, most of whom are based in the New York City area. Additional necessary evidence to adjudicate this action fairly is located in the Southern District of New York by virtue of Purdue's bankruptcy case. Much of the evidence bearing on the McKinsey Actions is within Purdue's or McKinsey's unique knowledge or possession. Discovery involving both entities will therefore be necessary, and is most conveniently obtained in the Southern District of New York.

### III. ARGUMENT

#### A. Transfer and Consolidation or Coordination Is Appropriate Under 28 U.S.C. § 1407.

Centralization under 28 U.S.C. § 1407 is warranted when (1) "civil actions involving one or more common questions of fact are pending in different districts," and (2) doing so will serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407. The objective of centralization is to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." In re: Rail Freight Fuel Surcharge Antitrust Litig. (No. II), 437 F. Supp. 3d 1365, 1365 (J.P.M.L. 2020).

There is no serious dispute that centralization pursuant to section 1407 is appropriate here. McKinsey believes that most plaintiffs likewise support centralization (but may disagree as to where the cases should be centralized). As shown in the Schedule of Actions, there are at least seventeen federal cases pending in eight separate jurisdictions proposed to be centralized. Even a cursory review of the complaints shows that they make similar – indeed, nearly identical – factual allegations and present similar legal theories. In turn, McKinsey expects to assert consistent factual and legal defenses across all cases. Additionally, the new McKinsey Actions are all at the same procedural stage. All have been recently filed with neither initial pleading practice nor discovery yet underway. Centralization and early organization will promote judicial efficiency and economy by allowing briefing of core legal issues in a coordinated manner that can readily be applied across multiple cases. Likewise, discovery across all the cases likely will be similar, and coordination in a single forum focused specifically on the McKinsey Actions is likely to promote efficiencies on the discovery front.

### B. The McKinsey Actions Should Be Centralized in a New MDL in the Southern District of New York.

Section 1407(a) authorizes transfer to "any district." Here, the most appropriate district for transfer is the Southern District of New York, as that district will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the newly-filed McKinsey Actions. See In re: Nine West LBO Secs. Litig., 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020).

McKinsey acknowledges the existence of No. 2804 in the Northern District of Ohio, but given its status as a brand new defendant differently situated from all existing defendants and the uniqueness of the new claims against it, and the current status of the administration of No. 2804, where portions of the litigation are already being broken off and remanded to their original

transferor jurisdictions, McKinsey respectfully suggests that inclusion of the new cases in No. 2804 will significantly impair the progress of both the existing cases and the new cases. The existing cases in No. 2804 are much farther along than the McKinsey Actions, which have just been filed and have not even been through any discovery or initial pleading challenges. (See Bernard Decl. ¶ 8). The greatly different procedural stage of the McKinsey Actions is an important factor that justifies managing them separately from the others. See In re: Gaiam, Inc., Water Bottle Mktg., Sales Practices & Prod. Liab. Litig., 672 F. Supp. 2d 1373, 1375 (J.P.M.L. 2010) (declining to consolidate two actions with an existing MDL, in part because the MDL "is advanced, and these two new cases would not fit easily within it").

  Simply putting the McKinsey Actions on a separate track within No. 2804 will not adequately address the fundamental legal, factual, and procedural differences between the McKinsey Actions and the existing cases in No. 2804. The more efficient course of action would be to create a new MDL in a new district to address the many new issues now presented in the McKinsey Actions that were not previously addressed in No. 2804. See id.; see also In re: Rail Freight, 437 F. Supp. at 1365-66 (creating a separate MDL for newly-filed actions pending in numerous districts because the "newly-filed actions are in a significantly different procedural posture than the [existing MDL] . . . [and] they threaten to significantly hinder the resolution of the already-centralized actions"); In re: Nat'l Ski Pass Ins. Litig., MDL No. 2955, 2020 WL 5884793, at *1 (J.P.M.L. Oct. 2, 2020) (creating separate defendant-specific MDLs to reduce administrative complexity because including claims against a multitude of defendants in a single MDL "usually adds few efficiencies and does not serve the convenience of the parties and witnesses"); In re: Aqueous Film-Forming Foams Prods. Liab. Litig., 357 F. Supp. 3d 1391,

1396 (J.P.M.L. 2018) (declining to include additional nine actions in existing MDL because they are "different in kind" and "involve more varied defendants").[2]

Purdue's ongoing bankruptcy case in the Southern District of New York, in which multiple plaintiffs already are participating, also counsels strongly in favor of transfer to that jurisdiction, particularly because so many plaintiffs already are pursuing proofs of claim there. See Nine West, 464 F. Supp. 3d at 1385 (cases pertaining to failure of bankruptcy debtor transferred to district where bankruptcy was being administered, as that was the "center of gravity" for the other cases). The claims against McKinsey depend in large part on the interactions between McKinsey and Purdue, but discovery of Purdue's conduct remains underdeveloped in No. 2804 because of the bankruptcy stay. To the extent discovery of Purdue is sought for purposes of litigating the McKinsey Actions, it will be essential to coordinate with the bankruptcy court to avoid undue interference with the progress of the bankruptcy case. Moreover, the possibility of a third-party claim against the debtor could have substantial effects on the bankruptcy estate as well as the ultimate value of the proofs of claim filed in the Purdue bankruptcy by many of the plaintiffs in the McKinsey Actions. Where it is important to "facilitate coordination with the bankruptcy court on, *inter alia*, discovery, indemnification and settlement issues," this Panel recognizes the many benefits of transfer to the same district where the bankruptcy is pending. In re: Sunedison, Inc. Secs. Litig., 214 F. Supp. 3d 1350, 1353 (J.P.M.L. 2016). It should do so here as well by transferring all the McKinsey Actions to the Southern District of New York due to the need to coordinate with the Purdue bankruptcy case.

---

[2] McKinsey has never been part of No. 2804 and so its request is unlike that made in 2018 in In re: Infants Born Opioid-Dependent Prods. Liab. Litig., 350 F. Supp. 3d 1377 (J.P.M.L. 2018).

11

To include the new McKinsey Actions in No. 2804 will hamper the progress of the thousands of cases already in that proceeding and introduce immediate inefficiency into the new cases against McKinsey. Based on the history of No. 2804 and its current schedule for 2021, which focuses principally on getting bellwether pharmacy cases to trial, it is highly doubtful that adding the McKinsey Actions to No. 2804 makes that proceeding more efficient. See In re: Gaiam, Inc., 672 F. Supp. 2d at 1375 ("doubt[ing] that including [new cases in advanced MDL proceedings] would produce sufficient efficiencies or benefits for either group of cases"). In addition to the lack of any improvement to case management efficiency, no substantial efficiency gains result from prior legal analysis in No. 2804 because many of the legal issues in the McKinsey Actions are completely new to the existing opiate litigation there. And because the legal issues are new, creating a separate proceeding in the Southern District of New York presents no risk of conflicting legal determinations. See id. (declining to transfer two new actions to an existing MDL despite some overlap because the actions involved different "parties, facts, and theories," namely, in the existing MDL, plaintiffs alleged that various defendants "manufactured, sold or distributed [defective products without proper warnings]," but in the newly filed actions, plaintiffs alleged that one of the defendants "affirmatively misrepresented" the safety of its products); see also In re: Enron Corp. Secs., Derivative & "ERISA" Litig., 227 F. Supp. 2d 1389, 1392 (J.P.M.L. 2002) (presence of "some overlap" between newly-filed cases involving new parties did not justify including new cases in existing MDL, when the legal issues are "largely distinct from the operative conduct at issue" in the first MDL).

Finally, as noted above, the main McKinsey defendants are based in New York and the relevant work for Purdue was performed there or in Connecticut. (See Bernard Decl. ¶¶ 2-4). There is no nexus here to the Northern District of Ohio, other than the fortuity that No. 2804 is

12

pending there. Indeed, McKinsey had no substantial contacts with Ohio and McKinsey thus has exceptionally strong personal jurisdiction defenses to cases filed or transferred there. At a minimum, the current MDL transferee court, in the Northern District of Ohio, is not a proper forum in which cases against McKinsey can be directly filed.[3] This further justifies creation of a separate MDL in the Southern District of New York, where, unlike the Northern District of Ohio, the benefits of J.P.M.L. R. 7.2(a) (permitting direct filings in transferee forum to avoid expense and delay associated with future tag-along and transfer requests to the Panel) could be realized.

Moreover, for these same reasons, it would also be improper to transfer any McKinsey Actions to Ohio. Although McKinsey acknowledges this Panel's recent decision in In re: Delta Dental Antitrust Litig., MDL No. 2931, 2020 WL 7382602, *2 (J.P.M.L. Dec. 16, 2020), McKinsey respectfully submits that Delta Dental did not examine potential constitutional due process limits on the transfer of a case to a district where the defendant lacked minimum contacts, and McKinsey preserves that constitutional challenge under Bristol-Myers Squibb and similar controlling authority. That constitutional concern can be avoided entirely by transferring the McKinsey Actions to their most logical forum, the Southern District of New York, where McKinsey does not dispute that personal jurisdiction can be properly exercised.[4]

---

[3] See, e.g., In re: Nat'l Hockey League Players' Concussion Injury Litig., MDL No. 14-2551, 2019 WL 5079980, at *2 (D. Minn. Oct. 10, 2019) (explaining that "when an action is directly filed into the MDL, both state and constitutional prerequisites [for finding personal jurisdiction in the MDL transferee forum] must be satisfied."); In re: Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig., MDL No. 2046, 2011 WL 1232352, *5-13 (S.D. Tex. Mar. 31, 2011) (dismissing a case directly filed in the MDL court for lack of personal jurisdiction when defendant did not stipulate to personal jurisdiction in MDL court).

[4] For the avoidance of doubt, regardless of the transferee forum selected by the JPML, where personal jurisdiction is lacking over McKinsey in the original transferor forum(s) from which any of the McKinsey Actions are transferred, McKinsey does not waive and expressly preserves the right to assert the defense of lack of personal jurisdiction.

The Southern District of New York is an ideal venue for the McKinsey Actions. Once travel for court proceedings becomes possible again, New York City is a major metropolitan area and a transportation hub with ready access from anywhere in the United States. Many plaintiffs are already active in the Purdue bankruptcy pending there. McKinsey is there and the documentary evidence and witnesses are there or nearby. Purdue was headquartered in nearby Stamford, Connecticut. Many counsel in the various cases, including McKinsey's counsel, also are based either there or nearby. The Southern District of New York also has a long and proud tradition of resolving major multidistrict litigation, and is, thus, the ideal choice for these cases.

### IV.  CONCLUSION

For the foregoing reasons, McKinsey respectfully requests that, pursuant to 28 U.S.C. § 1407, the Panel centralize the McKinsey Actions. McKinsey further requests that all actions be transferred to a newly-constituted multidistrict litigation in the Southern District of New York, and that the Panel grant such other and further relief as may be just and proper.

Dated:      New York, New York
            March 5, 2021

                                    STROOCK & STROOCK & LAVAN LLP


                                    By:  /s/ James L. Bernard
                                         James L. Bernard
                                         David M. Cheifetz
                                         180 Maiden Lane
                                         New York, New York 10038
                                         Phone: (212) 806-5400
                                         Fax: (212) 806-9245
                                         jbernard@stroock.com

                                    *Attorneys for McKinsey & Company, Inc.,
                                    McKinsey & Company, Inc. United States, and
                                    McKinsey & Company, Inc. Washington D.C.*