UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**OPTUMRX'S MOTION TO VACATE THE COURT'S APRIL 6, 2023 ORDER AND FOR OTHER RELIEF**

## INTRODUCTION

OptumRx, Inc. moves the Court to vacate and withdraw its April 6, 2023 order (Dkt. 4984) requiring OptumRx to produce broad categories of data and documents to the Plaintiffs' Executive Committee (PEC) and certain MDL plaintiffs for a private mediation that the Court is not overseeing. The Order is objectionable for at least three reasons.

*First*, Plaintiffs have not served discovery requests on OptumRx in any litigation, so the Court lacked authority to order OptumRx to produce anything. *See, e.g., Craig v. Bridges Bros. Trucking LLC*, No. 2:12-cv-954, 2014 U.S. Dist. LEXIS 105470, at *14 (S.D. Ohio Aug. 1, 2014); *Garrison v. Dutcher*, No. 1:07-cv-642, 2008 U.S. Dist. LEXIS 28267, at *6 (W.D. Mich. April 7, 2008); *James v. Wash Depot Holdings, Inc.*, 240 F.R.D. 693, 695 (S.D. Fla. 2006); *Sithon Maritime Co. v. Holiday Mansion*, No. 96–2262–EEO, 1998 U.S. Dist. LEXIS 5432, at *6 (D. Kan. Apr.10, 1998); *Iniguez v. Barrientos*, No. BC616038, 2021 Cal. Super. LEXIS 80210, at *5–6 (Cal. Sup. Ct. July 6, 2021).

*Second*, through the Order, the Court seems to exert pressure toward settlement by suggesting that "[i]f mediation is not successful, the scope of discovery the Court will order in the litigation context may be substantially broader." Order at 1. The Court has made similar statements to OptumRx's counsel during off-the-record status conferences. *Compare, e.g., Love v. v. Vilsack*, 908 F. Supp. 2d 139, 145 (D.D.C. 2012) ("Coercing parties to settle is not only beyond a federal court's authority, but also is prohibited by the ethical rules that govern the conduct of federal judges.") (quoting the Code of Conduct for United States Judges Canon 3A(4)); *Smith v. ABN AMRO Mortg. Grp., Inc.*, 434 F. App'x 454, 462 (6th Cir. 2011); *Gevas v. Ghosh,* 566 F.3d 717, 719–20 (7th Cir. 2009); *Goss Graphics Sys. v. DEV Indus., Inc.*, 267 F.3d 624, 627-28 (7th Cir. 2001); *Kothe v. Smith*, 771 F.2d 667, 669 (2d Cir. 1985); *Byrd v. Time Warner Cable*, No. 1:09-cv-772, 2012 U.S. Dist. LEXIS 13354, at *12 (S.D. Ohio Feb. 3, 2012), *aff'd,* 507 F. App'x 565 (6th Cir. 2012).

*Third*, at least certain of Plaintiffs' counsel have sent *ex parte* communications to Special Master Cohen about potential bellwether cases against the PBMs. Those communications undermine confidence in the process and should not be permitted.

The Order should be vacated and withdrawn.

## BACKGROUND

Only 89 opioid cases name OptumRx as a defendant—barely 2% of all opioid cases nationwide. Of those cases, 61 are in Virginia, and 63 are carbon copies filed by a single law firm: The Cicala Law Firm.[1] All but six of the 89 cases have been removed to and are stayed in the MDL. Until recently, when the PEC expressed interest in a PBM bellwether track, OptumRx had only limited interactions with the Court. PBMs are different from the manufacturers, distributors, and pharmacies that have been defendants in the bulk of opioid cases in the MDL. Unlike those entities, PBMs are not part of the closed system of distribution established by the U.S. Drug Enforcement Administration to regulate prescription opioids and other controlled substances and are not otherwise subject to federal or state-controlled substance regulations. PBMs do not manufacture, market, or prescribe opioids; they provide administrative services to employer health plans, unions, government plans, and other third-party payors. This Court recognized as much in its July 15, 2019 order:

> The Court deeply appreciates the actions taken by the PBM Defendants to offer these limitations to their clients and appreciates Plaintiffs' willingness to discuss the issues with the Court. The Court understands that the PBM Defendants do not manufacture, market, or prescribe opioid medications. It also understands that plan sponsors decide whether to adopt the programs that the PBM Defendants offer. The Court encourages plan sponsors—as part of their own efforts to combat opioid abuse—to consider and

---

[1] The Cicala Law Firm has filed numerous opioid and non-opioid lawsuits against PBMs. Of those cases, only one (a non-opioid case) has made it to final judgment, and the PBMs won dismissal with prejudice. *See* Memorandum Opinion and Order, *Harris Cnty. v. Eli Lilly & Co., et al.*, Case No. 4:19-cv-04994, Dkt. 182 (S.D. Tex.); Final Judgment, *Harris Cnty.*, Dkt. 187 (S.D. Tex. Mar. 16, 2022).

adopt for their members, where appropriate, the opioid programs that the PBM Defendants offer.

*See* Order, *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, Dkt. 1848 (N.D. Ohio July 15, 2019).

OptumRx first learned on October 28, 2022 that Plaintiffs had turned their attention to a potential PBM bellwether when Plaintiffs argued in supplemental briefing on a motion to remand that the Court should create a PBM bellwether track with *City of Roanoke* as the bellwether case. Dkt. 4700. Those arguments in unrelated briefing should have gone nowhere. Instead, on November 11, 2022, Special Master Cohen contacted OptumRx's and Express Scripts' counsel by email and advised them that the Court would hold a Zoom conference with the PEC, OptumRx, and Express Scripts. Special Master Cohen instructed that "[b]oth clients and counsel for Express Scripts and Optum[Rx] are required to attend" and asked for a status report by noon on December 7, 2022, addressing "(1) the current state of opioid-related litigation and settlement discussions in state and federal court; (2) suggestions regarding the setting of federal bellwether trials involving PBMs; and (3) any other topic related to PBM litigation the parties wish the Court to know." Consistent with those instructions, OptumRx and Express Scripts submitted a joint status report and served it on the PEC.

On December 10, 2022, The Cicala Law Firm submitted a "Response to Express Scripts and Optum's Status Report re: The December 12, 2022 Conference." But unbeknownst to OptumRx and Express Scripts, that was not Cicala's first submission to the Court before the December 12 status conference. On December 7, Cicala had submitted a different letter to Special Master Cohen—*ex parte* and without serving the status report on OptumRx or Express Scripts—entitled "PBM Status Report" and branded "**EX PARTE SUBMISSION**" (emphasis in original). In that *ex parte* submission, Cicala made arguments about the Plaintiffs' claims against the PBMs and urged the Court to establish a PBM bellwether track. OptumRx and Express Scripts learned of Cicala's *ex parte* submission to Special

3

Master Cohen only later when Cicala included it (perhaps unwittingly) as an exhibit to Plaintiffs' February 17, 2023 status report.

On December 12—without the PBMs receiving Cicala's *ex parte* status report—the Court held a status conference with Cicala, the PEC, OptumRx, and Express Scripts. The Court and the parties discussed a possible PBM bellwether and the prospects of mediation. Around a month later, on January 6, 2023, the PEC sent the PBMs a letter setting out what they described as "Mediation-related Requests." Those requests extended far beyond what would ever be permissible in discovery in litigation.

The Court held additional status conferences on January 25 and February 21 to discuss the PBM bellwether-selection process and the timeline for a potential mediation track. The Court initially ordered the parties to choose two PBM bellwether cases within weeks using a selection process that the Court ordered. The PEC refused to proceed as the Court and Special Master Cohen directed; instead, the PEC reached out to Special Master Cohen lodging its objections to the process. At the next status conference, the Court reversed course and put off bellwether selection.

After a series of conferences and negotiations, both OptumRx and Express Scripts agreed to mediate with the PEC. As part of its good-faith efforts to mediate, OptumRx began the process of responding to and meeting and conferring about the PEC's "Mediation-related Requests," which included information requests from OptumInsight, Inc. and OptumInsight Life Sciences, Inc.— entities that the Court has allowed the PEC to add to the PBM bellwether process even though neither is a PBM and neither was a defendant in opioid litigation until December 2022. Even now, those

entities are defendants in only one case nationwide (*Butler County Board of Commissioners, Ohio v. Evernorth Health, Inc.*, No. 1:17-md-2804-DAP (N.D. Ohio)).[2]

On March 13, OptumRx responded to the requests in writing. The PEC responded on March 27. The PBMs also sent their own requests for certain information from the PEC to aid in the PBMs' preparation for mediation. On March 31, the parties held a conference to discuss mediation-related issues, including selecting a mediator (agreed to by all parties), mediation dates, and objections to the outstanding mediation-related requests served by each side. On April 3, in anticipation of the April 4 status conference with the Court, both sides filed status reports.

The Court held a status conference on April 4 during which the parties discussed certain questions and concerns regarding mediation and the scope of any mediation-related document productions. OptumRx made its position clear that OptumRx would agree to produce certain documents and data in response to the mediation-related requests only if Plaintiffs agreed in a written stipulation, blessed by the Court, that doing so would not constitute a waiver of any entities' defenses in litigation, including their right to challenge personal jurisdiction. Plaintiffs agreed, and the Court agreed to sign a proposed order to that effect.[3] When the parties discussed the PEC's broad mediation requests, the Court indicated that the PEC could seek data production from the PBMs covering not only those jurisdictions where an MDL case was pending but also from Florida and two other jurisdictions "of Plaintiffs' choosing," even though no MDL case against PBMs is pending in those states. OptumRx's counsel also explained that there are no pending discovery requests in any MDL case against the PBMs.

---

[2] Both OptumInsight, Inc. and OptumInsight Life Sciences, Inc will move to dismiss for lack of personal jurisdiction.

[3] OptumRx and Plaintiffs have filed a stipulation and proposed order.

Nevertheless, on April 6, the Court issued the Order "memorializ[ing] the Court's rulings" regarding the exchange of information between the PBMs and the PEC. OptumRx objects to that Order. Even though there are no active federal cases against the PBMs and no pending discovery requests to OptumRx in any MDL case (never mind a discovery-related motion), the Court ordered OptumRx to produce certain information to the PEC. The Court ordered OptumRx to produce claims data and rebate data from 2010 to 2021 and covering a geographic area of 12 states, including at least three states selected by the Court and the PEC where no MDL case against the PBMs is pending. The Court also suggested that OptumRx may face even greater discovery burdens ahead in any bellwether litigation even though, again, there are no pending discovery requests in any MDL case.

## ARGUMENT

The Court's April 6 Order and Plaintiffs' *ex parte* communications raise concerns about due process and basic fairness and threaten to undermine the mediation process. The Order is objectionable for several reasons and should be vacated and withdrawn. *See* Fed. R. Civ. P. 54(b)[4]; Fed. R. Civ. P. 59(e); Fed. R. Civ. P. 60; *Lincoln Elec. Co. v. MPM Techs., Inc.*, No. 1:08-cv-2853, 2009 WL 2413625, at *2 (N.D. Ohio Aug. 5, 2009).

**1.  The Court cannot order production of data and documents when there are no discovery requests pending.**

The Court exceeded its authority in ordering the PBMs to produce information even though there are no pending discovery requests. The Federal Rules of Civil Procedure "provide necessary boundaries and requirements for formal discovery." *Wash Depot Holdings*, 240 F.R.D. at 695 (quoting

---

[4]  "District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).

*Sithon Maritime Co.*, 1998 U.S. Dist. LEXIS 5432, at *6). To obtain discovery, a party must serve formal discovery requests. *Id.* "In the absence of a formal discovery request made in accordance with the Rules of Civil Procedure, the Court cannot compel the production of any information." *Bridges Bros. Trucking*, 2014 U.S. Dist. LEXIS 105470, at *1; *see also Wash Depot Holdings*, 240 F.R.D. at 695 ("Rule 37 does not authorize a court to compel documents or a release to obtain them based on an informal discovery request.").

The PEC has not served discovery requests on OptumRx or Express Scripts in any case pending before the Court, so there is no basis for the Court to compel production of anything. *See Bridges Bros. Trucking*, 2014 U.S. Dist. LEXIS 105470, at *14; *Iniguez*, 2021 Cal. Super. LEXIS 80210, at *6 ("Plaintiff argues that St. Francis should be ordered to provide Nurse Jackson's most recent contact information, but there is no discovery request (such as an interrogatory) at issue in this motion that would support such an order. The court . . . cannot order St. Francis to provide it in the absence of a formal discovery request."). The parties are pursuing mediation, and any data or documents that OptumRx or Express Scripts produces are part of that voluntary mediation process. The Court should vacate and withdraw the Order because it is beyond the scope of the Federal Rules.

2.     **The Court cannot use the suggestion of future discovery burdens to pressure a settlement.**

Even though there is no pending discovery request to OptumRx in any MDL case, the Court also indicated through the Order that "[i]f mediation is not successful, the scope of discovery the Court will order in the litigation context may be substantially broader." Order at 1.[5]  The Court has

---

[5] The Court could never predetermine the scope of discovery "relevant to any party's claim or defense and proportional to the *needs of the case*" (Fed. R. Civ. P. 26(b)(1)) (emphasis added) in an *unidentified* lawsuit based on *non-existent* discovery requests.

also made comments to the effect that there are only two options for PBM litigation: settlement or trials.[6] The Sixth Circuit has admonished that "although judges should encourage and aid early settlement, . . . they should not attempt to coerce that settlement." *Smith*, 434 F. App'x at 462 (alterations in original); *accord* Code of Conduct for United States Judges, Vol. 2, Pt. A, Canon 3A(4) (Commentary) ("A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts."); *see also In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2019) (cautioning against using the disclosure of ARCOS data as a "bargaining chip in settlement discussions"). Coercion "occurs when a judge threatens to penalize a party that refuses to settle." *Gevas,* 566 F.3d at 719; *Byrd*, 2012 U.S. Dist. LEXIS 13354, at *12 (same); *Smith*, 434 F. App'x at 462; *Goss Graphics Sys.*, 267 F.3d at 627-28; *Kothe*, 771 F.2d at 669.

Statements in the Order and during off-the-record status conferences could be understood as suggesting that if OptumRx doesn't settle, it will face overbroad discovery and will be denied a meaningful opportunity to present dispositive motions. Those kinds of "pressure tactics to coerce settlement simply are not permissible." *Kothe*, 771 F.2d at 669 (citing *Schunk v. Schunk*, 84 A.D.2d 904, 905, 446 N.Y.S.2d 672 (N.Y. App. Div. 4th Dep't 1981) and *Chomski v. Alston Cab Co.*, 32 A.D.2d 627, 299 N.Y.S.2d 896 (N.Y. App. Div. 1st Dep't 1969)). For that separate reason, the Court should vacate and withdraw its Order.

---

[6] Those comments suggest that the Court has already concluded that it will not genuinely entertain dispositive motions—such as a motion to dismiss or a motion for judgment on the pleadings—even though no federal court has addressed opioid-related liability theories against PBMs. The claims against PBMs fail the applicable pleading standards, so OptumRx should not be ordered to produce anything before any bellwether court rules on a motion to dismiss.  *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise.").

**3.** **Plaintiffs' *ex parte* communications violate the ethical rules, due process, and principles of basic fairness.**

Improper *ex parte* communications from Plaintiffs to Special Master Cohen raise additional concerns about the process. With limited exceptions, the governing ethical rules and rules of conduct prohibit litigants from engaging in *ex parte* communications with the Court and require the Court to disclose any *ex parte* communications.[7] *See* Canon 3(A)(4) of the Code of Conduct for United States Judges ("[A] judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers."); Fed. R. Civ. P. 53, Advisory Committee's Note, 2003 amendments ("Masters are subject to the Code of Conduct for United States Judges, with exceptions spelled out in the Code); *see also United States v. Lanier*, 748 F. App'x 674, 678 (6th Cir. 2018) ("[E]x parte communications should be avoided. If any such communications do occur . . . the district court should endeavor to disclose, as appropriate, the *ex parte* communication to the parties as soon as possible."); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 294-95 (3d Cir. 2004) ("Whatever value the *ex parte* meetings may have had in moving the [cases] along or creating a settlement-friendly atmosphere was outweighed by the attendant risks and problems . . . ."); *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) (It is "a gross breach of the appearance of justice" and "a dangerous procedure" for a party's adversary to be "given private access to the ear of the court."); *In re Oral Sodium Phosphate Sol.-Based Prod. Liab. Action*, No. 1:09-sp-8000, 2009 WL 2601395, at *3 (N.D. Ohio Aug. 24, 2009) ("[E]x *parte*

---

[7] Canon 3(A)(4)(d) of the Code of Conduct for United States Judges provides that the Court may, "with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters." Dec. 5, 2019 Minute Entry. OptumRx has not consented to *ex parte* communications in connection with mediation or settlement, so that exception does not apply here.

communications [between the special master and the parties] shall not, however, address the merits of any substantive issue [without] the prior permission of those opposing counsel who are pertinent to the particular dispute."); *In re Welding Rod Prod. Liab. Litig.*, No. 1:03-cv-17000, 2004 WL 3711622, at *4 (N.D. Ohio Nov. 10, 2004) (same).; *Rio Tinto PLC v. Vale S.A.*, No. 14 Civ. 3042, 2015 WL 4367250, at *2 (S.D.N.Y July 15, 2015) ("The Special Master may not communicate *ex parte* with the parties (except to arrange scheduling matters) without the consent of all parties.").

On December 7, unbeknownst to OptumRx and Express Scripts, Cicala submitted an *ex parte* report to Special Master Cohen making arguments about Plaintiffs' claims and the PBMs' alleged conduct. In that submission, Cicala urged the Court to establish a PBM bellwether track. OptumRx and Express Scripts learned of Cicala's *ex parte* submission to Special Master Cohen only later when Cicala included it as an exhibit to Plaintiffs February 17, 2023 status report.

After OptumRx learned of Cicala's *ex parte* submission and asked for a copy, Cicala sent it by email and argued that the communication was "entirely consistent with MDL Order 2804-69 Appointing the Special Masters." That is plainly wrong. That Order identifies two categories of permissible *ex parte* communications between the Special Masters and attorneys: "[t]he Special Masters may communicate *ex parte* with any party or its attorney, as each Special Master deems appropriate, for the purposes of ensuring the efficient administration and management and oversight of this case, and for the purpose of mediating or negotiating a resolution of part or all of any dispute related to this case." Dkt. 69, at 3. Cicala's December 7, 2022 *ex parte* status report—which makes substantive arguments about the merits of the claims against the PBMs—does not fall within either of those categories. Cicala should have shared that submission with OptumRx and Express Scripts.

If there have been any other *ex parte* communications sent by Plaintiffs or the PEC to either Special Master Cohen or the Court, the Court should disclose them to OptumRx and Express Scripts.

4.      **All future status conferences or hearings should take place on the record before a court reporter.**

In accordance with MDL Order 2804-69 (Special Master Appointment Order), Federal Rules of Civil Procedure 53 and 79, and 28 U.S.C. § 753, all future conferences and hearings—both before the Court and the Special Master—should take place on the record before a court reporter. The certified transcript of any conference or hearing, as well as any ruling or order, should be entered on the docket.

* * *

The Order should be vacated and withdrawn. The Court should also (1) order disclosure of all *ex parte* communications from Plaintiffs or the PEC to Special Master Cohen or the Court (*see Ewing v. Freedom Forever, LLC*, No. 3:20-cv-0880, 2021 U.S. Dist. LEXIS 95353, at *1 (S.D. Cal. May 19, 2021) (issuing "order prohibiting *ex parte* communication with the court and any direct communication with chambers staff")) and (2) hold all future hearings and status conferences on the record with a court reporter.

 Respectfully submitted,

*/s/ Brian D. Boone*
ALSTON & BIRD LLP
Brian D. Boone
**ALSTON & BIRD LLP**
Bank of America Plaza, Suite 4000
101 S. Tryon St.
Charlotte, NC 28280
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
Caroline R. Strumph
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
caroline.strumph@alston.com

Kimberly K. Chemerinsky
Ethan J. Bond
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Tel: (213) 576-1000
kim.chemerinsky@alston.com
ethan.bond@alston.com

*Attorneys for Defendant OptumRx, Inc.*