UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | SPECIAL MASTER COHEN |
| THIS DOCUMENT RELATES TO: "*All Cases*" | ) ) ) | |
| | ) | DISCOVERY RULING NO. 14, PART 32 |
| | ) | REGARDING KROGER'S |
| | ) | PRIVILEGE CLAIMS |

During Track Seven discovery, defendant Kroger withheld as privileged certain documents related to the work of Kroger's third-party consultants at BuzzeoPDMA.[1] Plaintiff challenged a number of those privilege designations. The parties agreed to submit a sampling of the challenged documents to the Special Master for *in camera* review, and submitted letter briefs in support of their positions.[2] Having considered these submissions carefully, the Special Master now rules on the challenged documents.

I.     **Legal Standards.**

The Special Master has applied the legal standards and authorities set out in **all** prior "Discovery Rulings No. 14, Part x," and incorporates them by reference.[3] *See, e.g., Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (a "communication is not

---

[1] BuzzeoPDMA's full name is "BuzzeoPDMA – A Cegedim Company," and it has been known at various times as Buzzeo, Cegedim, Cegedim Dendrite, and other similar names.  This Ruling refers to the company as "Buzzeo."
[2] Letter from Anthony Irpino to Special Master (April 11, 2023); Letter from Ronda L. Harvey to Special Master (April 17, 2023).
[3] *See, e.g.,* docket nos. 1321, 1353, 1359, 1380, 1387, 1395, 1498, 1593, 1610, and 1666.

privileged simply because it is made by or to a person who happens to be an attorney. To be privileged, the communication must have the *primary* purpose of soliciting legal, rather than business, advice") (internal quotation marks and citations omitted, emphasis in original); *see also Fed. Trade Comm'n v. Abbvie, Inc.*, 2015 WL 8623076 at *9 (E.D. Pa. Dec. 14, 2015) ("attorney-client privilege does not apply . . . if the client seeks regulatory advice for a business purpose"). Also, when asserting attorney-client privilege, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821 at 825 (6th Cir. 2000). *See also* docket no. 3584 at 1 ("The burden is on the proponent to prove that the documents are privileged; and to be privileged, the communication must have the primary purpose of soliciting or receiving legal, as opposed to business, advice. That line is sometimes very difficult to draw when . . . [a company] operates in a heavily regulated business and regulatory compliance advice from in-house counsel is therefore part of [the company's] day-to-day business operations."). "Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia/HCA*, 293 F.3d 289 at 294 (quoting *United States v. Collins*, 128 F.3d 313, 320 (6th Cir. 1997)).

## II.  The Documents

All the documents addressed herein were created during a period when Kroger was deciding whether, and the extent to which, it would hire Buzzeo to review, and provide recommendations to strengthen, Kroger's suspicious order monitoring system (SOMS). Buzzeo has advised numerous defendants in this MDL on compliance with SOMS and other DEA regulatory requirements.

Throughout the course of this MDL, distributor and pharmacy defendants have claimed privilege over documents very similar to those on which the undersigned now rules. These documents, including SOMS audits and reports created by Buzzeo and similar consultants, reflect regulatory compliance advice related to the Controlled Substances Act and its implementing regulations. The undersigned has consistently overruled claims of privilege on most such documents, finding they do not contain legal advice from attorney to client, or are primarily business-related. *See, e.g. Discovery Ruling 14-5* (docket no. 1498 at 13); *DR 14-7* (docket no. 1610). In so ruling, the Special Master has adhered to "the distinction between legal advice and business advice, applying the principle that compliance with regulations is usually a business matter, not a legal one." *DR 14-12* (docket no 3245 at 1); *see Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007).

Nearly all of the documents Kroger submitted for *in camera* review relate to the retention of Buzzeo for SOMS consulting and the work Buzzeo performed in the course of that engagement. Consequently, Kroger carries the burden of persuading the Special Master that the advice of an attorney, or documents provided to an attorney for the purpose of soliciting advice, actually relate to the rendering of *legal advice*, and not *business advice*.

### III. The Rulings

**KRO-PRIV-91** is a September 20, 2013 email exchange between Frances Tucker, Kroger's in-house counsel, and Robert Williamson, Manager of DEA Consulting at Buzzeo. In one message, Tucker informs Williamson of minor changes to slides in a draft presentation to be given to Kroger personnel. Kroger argues this document reflects attorney advice and notes it has

3

produced the final version of these slides to Plaintiff.[4] Comments to a ***third-party SOMS consultant*** about a presentation to Kroger employees is not legal advice from a lawyer to her client. Kroger's claim of privilege over **KRO-PRIV-91** is **overruled.**

**KRO-PRIV-96** is an email exchange between Tucker, Williamson, Gary Glotz (Director of Business Development at Buzzeo), and other business people at Buzzeo, discussing evolving drafts of a Customer Services Agreement – Statement of Work No. 2. This document merely conveys negotiations between the parties over the Statement of Work. Although Kroger maintains the document reflects an attorney's advice,[5] there is no advice of any kind in the email chain itself (as opposed to the Statement of Work, discussed below). Kroger's claim of privilege over **KRO-PRIV-96** is **overruled**.

**KRO-PRIV-97** is the draft Customer Services Agreement – Statement of Work No. 2 that Tucker was discussing in KRO-PRIV-96. Kroger points out that Plaintiff is already in possession of the final version of this agreement.[6] Kroger cites to *DR 14-13* (docket no. 3249), where the undersigned wrote: "[a]fter careful review of these documents and the context in which they were created and shared, and *mindful that, in the main, the substance of the final presentations either has already been produced or will be produced in discovery in other documents*, the Special Master concludes that all of the challenged documents are entitled to the protection of attorney-client privilege." *Id.* at 2 (emphasis in original). Having reviewed this document with similar care, and taking into account all relevant facts and circumstances, the Special Master **sustains** Kroger's claim of privilege over **KRO-PRIV-97**.

---

[4] Harvey Letter at 1-2.
[5] *Id*.
[6] *Id*.

**KRO-PRIV-116, -117, -118, -119**. KRO-PRIV-117 and -119 are both final SOMS compliance reports, dated March 12, 2013 and March 25, 2013, transmitted from Ronald W. Buzzeo (Chief Compliance Officer of Buzzeo) to Larry P. Cote of Quarles & Brady, LLP (Kroger's outside counsel). The Special Master has consistently overruled privilege designations asserted over similar SOMS compliance reports commissioned by other defendants in this MDL. *See DR 14-5* (docket no. 1498 – Cardinal Health) and *DR 14-7* (docket no. 1610 – CVS).

Kroger argues that prior rulings denying privilege to Buzzeo SOMS audits of Cardinal Health should not apply to these documents. Kroger attempts to distinguish itself from Cardinal Health by noting that Kroger, as a self-distributing pharmacy, engages in distribution activities that are not revenue-generating; consequently, its SOMS compliance is not a business matter, so it must be a purely legal one.[7] The Special Master is not persuaded that this distinction makes any difference and observes that the SOMS privilege claims of self-distributing pharmacy chains like CVS have been overruled to the same extent as those of third-party distributors.

Kroger also argues "the fact that Buzzeo drafted the Reports and furnished them to Quarles & Brady in no way impedes or destroys the privilege."[8] But the rulings on these documents are not based on Buzzeo being an independent third party that is neither the attorney nor the client; rather, the rulings depend on the character of the subject matter as overwhelmingly regulatory and business-related. Moreover, although Kroger has not specifically raised the point, the Special Master has previously ruled, in analogous circumstances involving Cardinal's Dendrite SOMS audit, that the interposition of outside counsel between the SOMS consultant and the defendant "did not transform Dendrite from a business advisor to a legal advisor." (Docket no. 1498 at 13).[9]

---

[7] *Id.* at 2-4.
[8] *Id.* at 3.
[9] It should be noted that Plaintiff is already in possession of these two reports as a result of a court order in opioid litigation in state court in New Mexico. The parties dispute whether the production of the reports in the New Mexico

5

KRO-PRIV-116 and -118 are email chains in which Robert Williamson transmits the final March 12 and March 25 SOMS Reports to Larry Cote of Quarles & Brady; Cote transmits it to Tucker; and Tucker forwards it to various Kroger personnel. Although these emails are marked "Attorney-Client Privileged," Kroger has not carried its burden of demonstrating that these emails contain legal advice.

Accordingly, Kroger's claims of privilege over **KRO-PRIV-116, -117, -118, and -119** are **overruled**.

**KRO-PRIV-130, -131, -132**. KRO-PRIV-130 is a January 2013 email chain between Frances Tucker and Gary Glotz. These emails trace the back-and-forth between Tucker and Glotz over revisions to the draft Customer Service Agreement the parties ultimately entered into, pursuant to which Buzzeo provided the March 12, 2013 and March 25, 2013 SOMS reports. KRO-PRIV-131 and -132 are drafts of that Customer Service Agreement, the final version of which Kroger has already produced. These documents are analogous to KRO-PRIV-96 and -97. For the same reasons, Kroger's claims of privilege over **KRO-PRIV-130** (the email chain conveying drafts of the Customer Service Agreement) is **overruled** and its claims of privilege over **KRO-PRIV-131, and -132** (the Customer Service Agreement drafts, themselves) are **sustained**.

**KRO-PRIV-167** is a February 26-28, 2013 email chain between Frances Tucker and a group of Kroger business personnel. The email discussion addresses various concerns surrounding implementation of Buzzeo's SOMS recommendations, including resources needed to implement the recommendations, accounting for the cost of Buzzeo's work, and gathering appropriate personnel. Kroger argues the emails contain discussions of "specific legal issues that need

---

litigation amounts to a waiver of privilege. *See* Letter from Anthony Irpino to Special Master (April 18, 2023); Letter from Ronda L. Harvey to Special Master (April 19, 2023). Because the reports are not privileged under jurisprudence consistently applied in this MDL, the question of waiver due to the state court order is moot.

6

addressed relating to [Buzzeo's] work."[10] The overriding thrust of these emails is addressing business and regulatory matters, not the provision of legal advice. Kroger's claim of privilege over **KRO-PRIV-167** is **overruled**.

### IV.     Objections.

Any party choosing to object to any aspect of this Ruling must do so on or before May 1, 2023.

**RESPECTFULLY SUBMITTED,**

/s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: April 24, 2023**

---

[10] Harvey April 17, 2023 Letter at 2.