**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No.: 2804 |
| **THIS DOCUMENT RELATES TO:** | Case No.: 17-md-2804 |
| **"*All Cases*"** | Judge Dan Aaron Polster |
|  | **ORAL ARGUMENT REQUESTED** |

## KROGER'S OBJECTION TO SPECIAL MASTER COHEN'S DISCOVERY RULING NO. 14, PART 32 REGARDING KROGER'S PRIVILEGE CLAIMS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

          A.    Kroger Seeks Legal Advice To Comply With Complex Regulatory
               Framework .................................................................................................2

          B.    Buzzeo Provides Information Necessary for the Provision of Legal
               Advice ........................................................................................................4

          C.    Procedural History of Plaintiffs' Requests to Deny Kroger's
               Privilege ....................................................................................................5

ARGUMENT ...............................................................................................................................6

     I.    The Special Master Erred in Applying the Law of Privilege..................................6

          A.    The Special Master's Application of the Primary Purpose Test
               Created a False Dichotomy between Business Advice and Legal
               Advice. ......................................................................................................7

          B.    The Special Master is Incorrect that Compliance with Regulations
                is Usually a Business Matter. ....................................................................9

          C.    Kroger is Distinguishable from Cardinal Because Kroger At All
               Times Maintained Confidentiality Over the Privileged Materials............12

     II.    The Privileged Materials Should Be Protected From Disclosure. .........................15

          A.    The Q&B Reports and Transmittal Emails are Privileged.........................15

          B.    KRO-PRIV-167 Should be Redacted ......................................................17

     III.    Kroger Did Not Waive Privilege Over the Q&B Reports. ....................................17

CONCLUSION.........................................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alomari v. Ohio Dep't of Pub. Safety*,
    626 F. App'x 558 (6th Cir. 2015) ............................................................................8

*In re Bieter Co.*,
    16 F.3d 929 (8th Cir. 1994) ....................................................................................14

*City of Roseville Emps. Ret. Sys. v. Apple Inc.*,
    No. 19-cv-02033-YGR (JCS), 2022 U.S. Dist. LEXIS 139843 (N.D. Cal. Aug.
    3, 2022) ......................................................................................................................7

*Cottillion v. United Refin. Co.*,
    279 F.R.D. 290 (W.D. Pa. 2011) ............................................................................14

*Crabtree v. Experian Info. Sols., Inc.*,
    No. 1:16-cv-10706, 2017 U.S. Dist. LEXIS 173905 (N.D. Ill. Oct. 20, 2017) ..................9, 10

*Edwards v. Scripps Media, Inc.*,
    No. 18-10735, 2019 U.S. Dist. LEXIS 97006 (E.D. Mich. June 10, 2019) ........................7, 8

*United States ex rel. Fry v. Health All. of Greater Cincinnati*,
    No. 1:03-cv-167, 2009 WL 5033940 (S.D. Ohio Dec. 11, 2009)...........................................14

*FTC v. Abbvie, Inc.*,
    No. 14-5151, 2015 WL 8623076 (E.D. Pa. Dec. 14, 2015)..................................................10

*Graff v. Haverhill N. Coke Co.*,
    No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio Nov. 13, 2012) ..............................11, 12, 16

*Hopson v. Mayor & City Council of Balt.*,
    232 F.R.D. 228 (D. Md. 2005)................................................................................17

*Jacob v. Duane Reade, Inc.*,
    No. 11 Civ. 0160 (JMO) (THK), 2012 U.S. Dist. LEXIS 25689 (S.D.N.Y.
    Feb. 28, 2012) ............................................................................................................1

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ...................................................................... *passim*

*Marusiak v. Adjustable Clamp Co.*,
    No. 01 C 6181, 2003 U.S. Dist. LEXIS 9450 (N.D. Ill. June 5, 2003) ....................................9

*Myers v. City of Centerville*,
    No. 3:20-cv-00402, 2023 U.S. Dist. LEXIS 8297 (S.D. Ohio Jan. 17, 2023).........................8

*Occidental Chemical Corp. v. OHM Remediation Services Corp.*,
    175 F.R.D. 431 (W.D.N.Y. 1997) ...........................................................................16

*Pension Comm. v. Banc of Am. Sec., LLC*,
    No. 05 Civ. 9016 (SAS), 2009 WL 2921302 (S.D.N.Y. Sept. 8, 2009) ..................................17

*Roth v. Aon Corp.*,
    254 F.R.D. 538 (N.D. Ill. 2009) .............................................................................9

*In re Sealed Case*,
    877 F.2d 976 (D.C. Cir. 1989) ..............................................................................17

*United States Postal Serv. v. Phelps Dodge Refin. Corp.*,
    852 F. Supp. 156 (E.D.N.Y. 1994) .........................................................................16

*Upjohn. Co. v. United States*,
    449 U.S. 383 (1981) .................................................................................7, 8, 11, 15

*Wachtel v. Health Net, Inc.*,
    482 F.3d 225 (3d Cir. 2007) ..................................................................................9

*Waters v. Drake*,
    No. 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179 (S.D. Ohio Dec. 8, 2015) .......................15

*Yellowstone Women's First Step House, Inc. v. City of Costa Mesa*,
    No. SACV 14-01852-JVS, 2018 U.S. Dist. LEXIS 229229 (C.D. Cal. May 9,
    2018) ...............................................................................................................9

*Zigler v. Allstate Ins. Co.*,
    2007 WL 1087607 (N.D. Ohio Apr. 9, 2007) ..........................................................10

## Other Authorities

Fed. R. Civ. P. 53(f) ....................................................................................................1

Fed. R. Evid. 502(c) ..................................................................................................17

N.M. R. Evid. 11-511 ................................................................................................18

Under Federal Rule of Civil Procedure 53(f), the Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II ("Kroger"), object to *DR 14-32* [Dkt. No. 5019] (the "Order") as to certain documents submitted herewith for *in camera* review (the "Privileged Materials").

## PRELIMINARY STATEMENT

In overruling Kroger's privilege claims, "the Special Master adhered to 'the distinction between legal advice and business advice, applying the principle that compliance with regulations is usually a business matter, not a legal one.'"  Order at 3.  But that is not the law.  Rather, "[t]his type of advice—how to comply with regulatory or statutory requirements—is precisely the type of ***legal advice*** one would expect in-house counsel to provide to business people." *Jacob v. Duane Reade, Inc.*, No. 11 Civ. 0160 (JMO) (THK), 2012 U.S. Dist. LEXIS 25689, at *9 (S.D.N.Y. Feb. 28, 2012) (holding in-house counsel's recommendations on statutory compliance with the Fair Labor Standards Act were protected "legal advice").[1]  As demonstrated below, the Special Master's attempt to create a bright-line rule that advice concerning regulatory compliance is "business advice" flies in the face of Supreme Court precedent and should be overruled.

Further, the Special Master improperly relied on so-called "analogous circumstances involving Cardinal's Dendrite SOMS audit" to reach his decision.  Order at 5.  But the facts and circumstances surrounding the creation of Cardinal's "audit" are distinguishable from Kroger's. The primary purpose of Cardinal's "audit" was to get into the DEA's good graces after it revoked the registration for several Cardinal distribution centers.  *DR 14-5* [Dkt. No. 1498] at 2–5 (finding Cardinal attempted to "placate the DEA" by sharing Dendrite's assessment).  In other words, Cardinal always anticipated sharing the results outside the company, specifically with the DEA; the "audit" was never intended to remain confidential.  *Id.* at 5, 8.

---

[1] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

In contrast, Kroger's legal department directed BuzzeoPDMA ("Buzzeo") to conduct an investigation and assessment so that Kroger's outside and in-house counsel could provide legal advice to Kroger's business personnel.  Kroger never intended for the results of that investigation, the Q&B Reports, to be shared with a third party.  Because they were used to provide legal advice and the company retained confidentiality over them at all times, they are precisely the types of communications protected by attorney-client privilege.  And the "false dichotomy" between legal matters and regulatory compliance that the Special Master has created in this MDL should be overruled.  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 758–59, 762 (D.C. Cir. 2014) (Kavanaugh, J.) (granting mandamus because district court's conclusion—that the purpose of an internal investigation was to comply with regulatory requirements rather than to obtain or provide legal advice—rested on a "false dichotomy" and constituted a "clear legal error").

## STATEMENT OF FACTS

### A.    Kroger Seeks Legal Advice To Comply With Complex Regulatory Framework

Kroger is most fundamentally a grocery store chain.  Ex. A (Kroger 10-K) at 63.[2]  Certain locations offer a pharmacy, which account for a sliver of Kroger's overall business.  *Id.* at 3, 63.  Given the highly regulated environment in which the pharmacy business segment operates, Kroger understandably seeks the legal advice of its counsel (both in-house and outside) regarding regulatory compliance matters.  *See* Tucker Decl. ¶ 2.

The Q&B Reports,[3] two of the documents at issue in Special Master Cohen's Order, were generated, at the direction of Kroger's in-house counsel, by an outside consultant to aid in the

---

[2] All references to "Ex. __" are exhibits to the *Declaration of* Ashley Hardesty Odell submitted contemporaneously herewith.  Exhibits K–O are the disputed Privileged Materials and are being submitted for *in camera* review via secure email to the Court's Clerk, Carrie Roush, titled "Kroger's in camera submission for objections to Dkt. No. 5019." All references to the "Tucker Declaration" are to the *Declaration of Frances Tucker, Esq.*, submitted contemporaneously herewith.

[3] *See* Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119) (collectively, the "Q&B Reports").

provision of legal and regulatory advice to Kroger in the wake of DEA enforcement actions involving other companies.  In particular, in early 2012, the DEA suspended the distribution license of a Cardinal facility in Florida.  *See* Ex. B (Reuters 2.3.12); Ex. C (Cardinal Press Release 2.3.12).  The DEA was also investigating certain Walgreens facilities in Florida around that time. *See* Ex. D (DEA Press Release 9.14.12).  The DEA suspended Walgreens' distribution license a few months later.  *See id.*

Shortly after news of Cardinal's suspension became public, Kroger retained Quarles & Brady, LLP in 2012 as outside counsel to provide legal advice and develop a regulatory action plan to ensure that Kroger remained in compliance with DEA regulations and did not become the target of an investigation.  *See* Tucker Decl. ¶¶ 3–5.  The lead Quarles & Brady partner, Larry Cote, is a former DEA attorney and possessed particularized subject matter expertise in those areas. *See* Ex. E (Cote Bio).  Kroger's in-house attorneys directed Quarles & Brady to review Kroger's controlled substance policies and procedures, and provide an analysis of Kroger's compliance with Drug Enforcement Agency (DEA)'s suspicious order monitoring (SOM) regulations.  *See* Tucker Decl. ¶ 5.

Kroger's in-house attorneys also engaged a third-party consultant to aid in the legal review. In particular, in late 2012, at the direction of Quarles & Brady, Kroger began to engage in discussions with an outside consultant, Buzzeo, to investigate and assess Kroger's SOM program, given their expertise in, among other things, the policies of the DEA, the requirements of the Controlled Substances Act (CSA), federal implementing regulations, as well as state law across the country.  *See* Ex. F (Kroger-MDL00062168); Tucker Decl. ¶ 6.  Quarles & Brady advised that such an assessment would aid it in the provision of legal advice to Kroger.  *See* Tucker Decl. ¶ 6.

Kroger's in-house attorneys ultimately retained Buzzeo in January 2013 to perform an onsite review and assessment of Kroger's current SOM system at two pharmacies and one distribution facility. *See id.* ¶ 8; Ex. G (KrogerSmithNMAG00002666) at 8. The scope of work included, among other things, a report that included recommendations regarding Kroger's SOM system, leveraging Buzzeo's extensive DEA and SOM knowledge. *See* Tucker Decl. ¶¶ 7–8; 12; Ex. G (KrogerSmithNMAG00002666) at 8. The primary purpose of Buzzeo's assessment was to provide Kroger's outside and in-house counsel with information and recommendations necessary to facilitate the provision of legal advice to Kroger regarding compliance with DEA regulations. *See* Tucker Decl. ¶¶ 8–9, 12. Paul Heldman, Kroger's General Counsel at the time, acting in his capacity as legal counsel, executed the agreement. *See id.* ¶ 10; Ex. G (KrogerSmithNMAG00002666) at 6.

### B. Buzzeo Provides Information Necessary for the Provision of Legal Advice

After weeks of investigation, Buzzeo issued the Q&B Reports relating to its onsite assessment of (i) two Kroger pharmacies, and (ii) one distribution facility. *See* Tucker Decl. ¶ 11; Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119). The Q&B Reports are addressed exclusively to Kroger's outside counsel, Quarles & Brady. *See* Tucker Decl. ¶ 13; Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119). The e-mails transmitting each report were sent only to Mr. Cote, Kroger's outside counsel. *See* Tucker Decl. ¶ 13; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118). Every page of the Q&B Reports contains an "Attorney-Client Privilege" watermark. *See* Tucker Decl. ¶ 13; Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119). Mr. Cote transmitted each Q&B Report to Kroger's in-house counsel, Frances Tucker, under the Attorney-Client Privilege banner, providing his initial legal impressions in the body of the e-mail. *See* Tucker Decl. ¶ 14; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118). Ms. Tucker, in turn, transmitted the Q&B Reports to Kroger's senior management, also under the privilege banner and providing her own

initial legal impressions, and cautioning that the information was not for dissemination and should not be provided to a third party of any kind. *See* Tucker Decl. ¶ 15; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118).  These communications confirm that at all times, Kroger's in-house and outside counsel intended for the Q&B Reports to remain confidential and not be shared with third parties. *See* Tucker Decl. ¶¶ 11, 13–15; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118).

The Q&B Reports contain Buzzeo's observations, analysis, and recommendations based on the information provided to Buzzeo by Kroger's in-house team and individuals Buzzeo interviewed. *See* Tucker Decl. ¶ 12; Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119).  Buzzeo's opinions and recommendations for the continued improvement of Kroger's diversion prevention programs and applicable federal regulations represented its best professional judgment based on its knowledge of the CSA and its implementing regulations, and Buzzeo's experience with them. *See* Tucker Decl. ¶ 12; Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119).  The Q&B Reports were provided to Kroger's outside and in-house counsel to facilitate the provision legal advice to Kroger's management. *See* Tucker Decl. ¶¶ 7, 9.  Indeed, even in the e-mails simply transmitting the reports, both outside and in-house counsel provided Kroger with legal advice. *See id.* ¶¶ 14–15; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118).  As time went on, the Q&B Reports continued to assist Kroger's counsel in the provision of legal advice to Kroger's business personnel. *See* Tucker Decl. ¶ 16.

### C. Procedural History of Plaintiffs' Requests to Deny Kroger's Privilege

Kroger first claimed privilege over the Q&B Reports in a privilege log disclosed to the MDL plaintiffs in early August 2022.  Ex. H (9.30.22 Ltr.).  A few days later, a state court judge in New Mexico ordered Kroger to produce the Q&B Reports to the New Mexico Attorney General ("NMAG").  Ex. H (9.30.22 Ltr.).  Kroger did so promptly as required by the New Mexico court's order, but maintained at all times that the records were privileged.  Ex. H (9.30.22 Ltr.).  For this

reason, after the production of the Q&B Reports in the New Mexico action, Kroger continued asserting privilege over these materials in the MDL—including on a privilege log disclosed to the MDL plaintiffs.  However, after Plaintiffs threatened sanctions against Kroger for failing to produce the Q&B Reports, Kroger determined that Court orders in the MDL—specifically, *DR-22* and Dkt. No. 3633—required the production of those materials.  Kroger therefore produced the Q&B Reports pursuant to the Court's orders, while maintaining its assertion of privilege over the materials.  Indeed, the Court order pursuant to which Kroger produced the Q&B Reports expressly acknowledges that the production of documents under that order does not waive privilege.  *See* Dkt. No. 3633 (concluding a party's "past or future compliance with the Court's orders does not suggest [the party] has waived its rights on appeal to argue that such documents are privileged").

Two weeks ago, the Special Master issued the Order overruling Kroger's privilege claim and ordering the production of the Privileged Materials.  *See* Dkt. No. 5019.

## ARGUMENT

## I.    THE SPECIAL MASTER ERRED IN APPLYING THE LAW OF PRIVILEGE.[4]

Despite recognizing that communications are privileged if they have a primary purpose of soliciting legal, rather than business advice, Order at 1–2, the Special Master ordered Kroger to produce the Privileged Materials based on his conclusion that they "reflect regulatory compliance advice related to the Controlled Substances Act and its implementing regulations."  *Id.* at 3.  But in analyzing the primary purpose here, the Special Master made several key errors.  *First*, by announcing that "compliance with regulations is usually a business matter, not a legal one," *id.*,

---

[4] Kroger does not dispute that the Sixth Circuit has set forth the essential elements of the attorney-client privilege: (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.  *See, e.g.*, *DR 14-5* at 8.  Nor does Kroger dispute that "[t]he burden of establishing the existence of the privilege rests with the person asserting it."  *Id.* at 9 (quoting *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 2000)).

the Special Master improperly created a rigid distinction between business matters and legal advice. *Second*, it is simply not true that "compliance with regulations is usually a business matter." None of the authority cited by the Special Master supports that proposition, and the authority he incorporates into the Order mandates a different result. *Third*, when analogizing the Q&B Reports to the Dendrite audits that Cardinal commissioned, the Special Master failed to consider that Cardinal always intended sharing those results with the DEA. Kroger, on the other hand, never intended to share the Q&B Reports with a third party. This Court should vacate the Order.

A.     **The Special Master's Application of the Primary Purpose Test Created a False Dichotomy between Business Advice and Legal Advice.**

When "sensibly and properly applied," the primary purpose test "cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other." *Kellogg*, 756 F.3d at 759. A bright-line rule that advice concerning regulatory compliance is business advice would "fly in the face" of *Upjohn*. *City of Roseville Emps. Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 U.S. Dist. LEXIS 139843, at *34–36 (N.D. Cal. Aug. 3, 2022). Rather, the primary purpose test "boils down to whether obtaining or providing legal advice was ***one of the significant purposes*** of the attorney-client communication." *Kellogg*, 756 F.3d. at 760; *see also Edwards v. Scripps Media, Inc.*, No. 18-10735, 2019 U.S. Dist. LEXIS 97006, at *3–4 (E.D. Mich. June 10, 2019) (if one of the significant purposes of the internal investigation was to obtain or provide legal advice, the privilege will apply); Restatement (Third) of the Law Governing Lawyers § 72 (2000) ("In general, American decisions agree that the privilege applies if ***one of the significant purposes*** of a client communicating with a lawyer is that of obtaining legal assistance."). Privilege applies, "even if there were also other purposes for the investigation and

even if the investigation was mandated by regulation rather than simply an exercise of company discretion." *Kellogg*, 756 F.3d at 758–59.

*Kellogg*—which applied the "primary purpose" test that governs in this Circuit and has been favorably cited by district courts within the Sixth Circuit[5]—counsels overruling the Special Master here.  There, the D.C. Circuit granted a writ of mandamus and vacated the district court's decision holding that documents relating to an internal investigation were not privileged because "the primary purpose of the internal investigation was to comply with federal defense contractor regulations, not to secure legal advice."  *Kellogg*, 756 F.3d at 756, 759.  In reaching its decision, the district court reasoned that because Department of Defense regulations required defense contractors to maintain compliance programs and conduct internal investigations into allegations of potential wrongdoing, the primary purpose of the investigation was to comply with those regulations.  *Id.* at 758.  In vacating the district court's decision, the D.C. Circuit concluded that the district court's decision "rested on a false dichotomy," was "legally erroneous," and "irreconcilable with *Upjohn*."  *Id.* at 756–58.

Therefore, that the Privileged Materials relate to "compliance with SOMS and other DEA regulatory requirements" does not automatically and exclusively place them in the ambit of "business advice."  Rather, as in *Kellogg*, their primary purpose was to assist in the provision of legal advice to Kroger regarding regulatory compliance and, therefore, they are privileged. Further, as in *Alomari*, the advice Kroger sought from outside and in-house counsel could only be

---

[5] *See Edwards*, 2019 U.S. Dist. LEXIS 97006, at *3–4; *Myers v. City of Centerville*, No. 3:20-cv-00402, 2023 U.S. Dist. LEXIS 8297, at *10 (S.D. Ohio Jan. 17, 2023); *accord Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) ("[P]redominant purpose should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer.").

rendered by "consulting the legal authorities" based on Buzzeo's investigation. 626 F. App'x at 570.

    **B.**    **The Special Master is Incorrect that Compliance with Regulations is Usually a Business Matter.**

        *1.*    *The Special Master Misstated the Law.*

The law does not support the Special Master's conclusion that "compliance with regulations is ***usually*** a business matter, not a legal one." Order at 3. The need for attorney-client privilege "is at its height where the law with which the client seeks to comply is complicated and the penalties for noncompliance are great." *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 237 (3d Cir. 2007). Therefore, a lawyer's recommendation of a policy that complies (or better complies) with a legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice. *See Yellowstone Women's First Step House, Inc. v. City of Costa Mesa*, No. SACV 14-01852-JVS, 2018 U.S. Dist. LEXIS 229229, at *11 (C.D. Cal. May 9, 2018) (protecting documents involving an "assessment and guidance in complying with applicable laws"). Helping a corporation comply with a statute or regulation—although required by law—does not transform quintessentially legal advice into business advice. *See Kellogg*, 756 F.3d at 760 (citing Andy Liu et al., *How to Protect Internal Investigation Materials from Disclosure*, 56 Government Contractor ¶ 108 (Apr. 9, 2014)). For example, advice as to how best to "***comply*** with SEC ***regulations***," is "precisely" the type of guidance for which a corporation would likely rely on counsel. *Roth v. Aon Corp.*, 254 F.R.D. 538, 541 (N.D. Ill. 2009).

Furthermore, to the extent compliance with legal requirements constitutes a "business decision"—which it does not in this instance—the attorney-client privilege protects an attorney's legal advice about a business decision. *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-cv-10706, 2017 U.S. Dist. LEXIS 173905, at *6 (N.D. Ill. Oct. 20, 2017) (quoting *Perius v. Abbott Lab'ys*,

2008 U.S. Dist. LEXIS 83775, at *22 (N.D. Ill. Aug. 20, 2008)); *see also Marusiak v. Adjustable Clamp Co.*, No. 01 C 6181, 2003 U.S. Dist. LEXIS 9450, at *4–5 (N.D. Ill. June 5, 2003) ("While it is true that ***solely*** personal or business advice is not protected by the attorney-client privilege, legal advice relating to business matters clearly is.").  For example, in *Crabtree*, the court protected documents relating to an internal investigation conducted to determine whether a business decision complied with Federal Credit Reporting Act regulations.  2017 U.S. Dist. LEXIS 173905, at *6–7.  The same should be true of the Q&B Reports, which related to Kroger's compliance with its own applicable regulatory scheme.

### 2. The Authority Cited by the Special Master Does Not Support His Interpretation of the Law.

None of the authority cited by the Special Master supports his conclusion that "compliance with regulations is usually a business matter, not a legal one."  Order at 3 (citing *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007); *FTC v. Abbvie, Inc.*, No. 14-5151, 2015 WL 8623076, at *9 (E.D. Pa. Dec. 14, 2015)).[6]  In *Zigler*, the court held that all of the disputed documents were "properly shielded from discovery by the attorney-client privilege." 2007 WL 1087607, at *4.  In so holding, the court observed that documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues.  *See id.* at *1 (quoting *In re OM Grp. Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005)).  Similarly, the mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the privilege.  *See id.*

Nor does *Abbvie* support the Special Master's conclusion.  The Special Master quoted *Abbvie* for the thoroughly unremarkable proposition that attorney-client privilege "does not apply if the client seeks regulatory advice ***for a business purpose***."  *Abbvie*, 2015 WL 8623076, at *9.

---

[6] The Special Master's citation to *Abbvie* is by reference to *DR 14-12*.

As a preliminary matter, that formulation **assumes** that the conclusion of the primary purpose test would be that such advice was rendered for a **business** purpose. More importantly, however, *Abbvie* does not support the logical leap that the Special Master has made in this MDL—specifically, that compliance with regulations is **usually** a business matter and, therefore, any related advice does not constitute protected legal advice. In this case, the regulatory advice was not sought for a business purpose. Rather, Kroger's in-house counsel sought regulatory advice from Quarles & Brady in light of the DEA's regulatory enforcement actions against other companies, and in order to best position the company to contend with possible regulatory investigations or enforcement actions that were sweeping the industry. This involved quintessentially legal, rather than business, advice to the company.

3. *Binding Authority Cited by the Special Master Mandates Protection of the Privileged Materials.*

Attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable [them] to give sound and informed advice." *DR 14-5* at 10 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981)). The "privilege applies to factual investigations conducted by counsel at a corporate client's request (to provide legal advice to that client), and also to agents of an attorney who are assisting in rendering legal advice to the client." *DR 14-5* at 10 (quoting *In re Behr Dayton Thermal Prods., LLC*, 298 F.R.D. 369, 373 (S.D. Ohio 2013)); *see also Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514, at *15 (S.D. Ohio Nov. 13, 2012) ("The attorney-client privilege extends to agents of the attorney where the confidential communication was made for the purpose of assisting the attorney in rendering legal advice to the client.").

Although the Special Master cited *Graff* three times in *DR 14-5*, and incorporated that decision by reference into the Order, the Special Master ignored that case—and its reasoning—

when ruling on Kroger's Privileged Materials.  In *Graff*, the court held that "audits" generated by two separate outside consulting firms were privileged.  2012 WL 5495514, at *10, *13, *15.  There, the client directed the consultants to "assess its compliance with regulatory requirements and company policies"—specifically, certain EPA regulations.  *Id.* at *9, *13 (consultant "retained to provide assistance in assessing . . . compliance with federal regulations").  Because the audit reports contained "more than raw information and/or data" but also included the "advice and opinions" of the consultant's personnel "directed to [the client] on legal compliance issues," the court found that they contained legal advice and were therefore privileged.  *Id.* at *9–10.

The same is true here.  Kroger's counsel initiated an investigation to gather facts and assess compliance with the law with a primary purpose of providing legal advice to the company.  *See* Tucker Decl. ¶¶ 5–9, 12.  At the direction and with the participation of Kroger's law department, non-attorneys conducted the fact gathering and interviews of Kroger employees.  *See id.* ¶¶ 7–8, 11–12; Ex. L (KRO-PRIV-117); Ex. N (KRO-PRIV-119); *Graff*, 2012 WL 5495514, at *9; *Kellogg*, 756 F.3d at 758.  Buzzeo provided facts, data, recommendations, and opinions to Kroger's in-house and outside counsel in order to facilitate the provision of legal advice.  Tucker Decl. ¶¶ 7–9, 11–12, 16; *Graff*, 2012 WL 5495514, at *9.  Finally, the information gathered by Buzzeo was maintained in the "strictest of confidentiality."  Ex. F (Kroger-MDL00062168) at 2.

### C.    Kroger is Distinguishable from Cardinal Because Kroger At All Times Maintained Confidentiality Over the Privileged Materials.

The Special Master improperly relied on his reasoning from *DR 14-5*, which he erroneously applied to Kroger because he incorrectly assumed Kroger was similarly situated to Cardinal.  In *DR 14-5*, the Special Master compelled the production of several "audits" performed by Cardinal's outside consultant, Dendrite.  But the facts and circumstances surrounding the ***creation and treatment*** of the Dendrite audits render the Special Master's analysis inapplicable here.

After the DEA revoked Cardinal's registration for four of its distribution centers, Cardinal quickly retained Dendrite.  *DR 14-5* at 2.  To "placate" the DEA and avoid additional show cause orders, Cardinal offered to **share** the results of Dendrite's assessment **with the DEA**.  *Id.* at 5–6.[7] Because Cardinal repeatedly offered, and ***did***, share Dendrite's observations and conclusions with the DEA, the circumstances created a "clear picture" that the work and advice Dendrite provided was not legal.  *Id.* at 14.  Furthermore, the Special Master held that it was "entirely inconsistent" for Cardinal to advertise Dendrite as an "independent third-party" to the DEA, offering to share Dendrite's observations and conclusions with the DEA, while simultaneously insisting Dendrite was Cadwalader's agent, gathering only privileged information to support counsel's provision of legal services.  *Id.*

No such inconsistency exists here.  There has never been any suggestion that Kroger commissioned the Q&B Reports with the intention of sharing them with the DEA, or any other third party.  *See* Tucker Decl. ¶¶ 11, 13–15.  In fact, when transmitting the reports to a small group of Kroger personnel, Kroger's in-house counsel expressly stated "[t]his report is not for wide dissemination and is ***definitely not to be provided to a third party of any kind***."  Ex. K (KRO-PRIV-116).

Nor did Kroger ever represent that Buzzeo was an "independent third party" or herald its work in order to appease the DEA and escape sanction.  *See* Tucker Decl. ¶¶ 11, 13–15.  Buzzeo has always been Kroger's agent, retained to gather information and assess Kroger's compliance

---

[7] *See DR 14-5* at 2–5 (Cardinal retained a consulting firm, Dendrite, to **share with the DEA** a "detailed and on-the-ground assessment of the current effectiveness of [Cardinal's] anti-diversion controls"); *id.* at 7 ("Cardinal's promise to the DEA that it would use Dendrite to 'develop a corrective action plan and implement improvements arising out of its independent third-party investigation' began to come true when, on January 23, 2008, Dendrite delivered to Cadwalader the 'Dendrite Audit.'").  *DR 14-5* is incorporated by reference into the Order.  *See* Order at 1 n.3.

with regulatory requirements so that, in turn, Kroger's in-house and outside counsel could render legal advice to Kroger's management. *See id.* ¶¶ 5–9, 11–16.

Finally, the Special Master incorrectly suggested, in a footnote, that privilege did not apply to Cardinal's "audit" because the retention agreement defined Dendrite as an "independent contractor." *See DR 12-5* at 14 n.10. To the contrary, courts take "an expansive view of protected communications between independent contractors and counsel where the outside consultant functions like an employee in providing information which facilitates the obtaining of legal advice." *Cottillion v. United Refin. Co.*, 279 F.R.D. 290, 299 (W.D. Pa. 2011); *see also In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir. 1994) ("[W]hen applying the attorney-client privilege to a corporation or partnership, it is ***inappropriate*** to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors."); *United States ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5033940, at *4 (S.D. Ohio Dec. 11, 2009) ("As long as the independent contractor has a role similar to that of an employee [ ], communications between the contractor and attorneys for the purpose of seeking legal advice are privileged."). Therefore, although Buzzeo is described as an "independent contractor" in its agreement with Kroger, that designation does not affect this Court's privilege analysis. *See* Ex. G (KrogerSmithNMAG00002666) § 9.2. This Court should overrule the Special Master and hold that the Privileged Materials discussed below are protected by the attorney-client privilege.

## II.     THE  PRIVILEGED  MATERIALS  SHOULD  BE  PROTECTED  FROM DISCLOSURE.

### A.     The Q&B Reports and Transmittal Emails are Privileged.[8]

The Q&B Reports are privileged.  As the Supreme Court has observed, the "first step in the resolution of any legal problem is ascertaining the factual background and sifting through the facts with an eye to the legally relevant."  *Upjohn*, 449 U.S. at 390–91.  Faced with regulatory uncertainty, and potential legal exposure, Kroger retained Quarles & Brady to provide legal advice. *See* Tucker Decl. ¶¶ 3–4.  After reviewing Kroger's policies and procedures, Quarles & Brady advised Kroger's in-house legal department to engage Buzzeo to gather information and make recommendations to facilitate Quarles & Brady's provision of legal advice to Kroger regarding DEA regulations.  *See id.* ¶¶ 5–6.  Kroger did so and at the direction of Kroger's in-house counsel, Buzzeo conducted two separate assessments of Kroger's SOM program.  *See id.* ¶¶ 7–9, 11–12. To perform the assessment, Buzzeo conducted interviews of Kroger employees, reviewed Kroger's policies and procedures, and provided the Q&B Reports—containing observations, analysis, recommendations, and Buzzeo's opinions regarding Kroger's compliance with DEA regulations— to outside counsel so that Quarles & Brady and Kroger's in-house lawyers could provide legal advice to Kroger regarding those same regulations.  *See generally id.*

Regardless of the moniker ascribed to the Q&B Reports—audit, report, assessment, or investigation—their purpose was to assist counsel in providing legal advice to Kroger and they are protected from disclosure.  None of the authority cited by the Special Master alters that outcome. For example, in *Waters v. Drake*, the outside consultant was a public relations firm.  No. 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179, at *4, *6–7 (S.D. Ohio Dec. 8, 2015) ("[I]t is generally true

---

[8] Ex. K (KRO-PRIV-116) is the transmittal e-mail for the March 12, 2013 Q&B Report (Ex. L (KRO-PRIV-117). Ex. M (KRO-PRIV-118) is the transmittal e-mail for the March 25, 2013 Q&B Report (Ex. N (KRO-PRIV-119)).

that sharing attorney-client privileged communications with a public relations firm is a waiver of the privilege.").  There, the public relations firm was not retained to assist in ensuring compliance with the law, but "as part of an effort to craft announcements which would be more palatable to the media or the public."  *Id.* at *6–7.[9]  It is similarly unsurprising that the consultant's report was not privileged in *Occidental Chemical Corp. v. OHM Remediation Services Corp.*, 175 F.R.D. 431 (W.D.N.Y. 1997).  Unlike Buzzeo, who could not have provided any assessment whatsoever without reviewing Kroger's policies and procedures and speaking to its employees, the *Occidental* consultant's analysis related exclusively to the physical condition of a plot of land and was entirely ***independent*** of client confidences.  *Id.* at 437.[10]  Furthermore, the consultants in both *Occidental* and *Phelps Dodge* were retained to share information with the New York State Department of Environmental Conservation—just like Cardinal's consultant.  *See id.*  Here, on the other hand, both Buzzeo and Kroger have always treated Buzzeo's findings with the strictest confidence.

The e-mails transmitting the Q&B Reports are also privileged.  Outside counsel's e-mails to Kroger's in-house counsel are marked "Attorney-Client Privilege."  *See* Tucker Decl. ¶ 14; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118).  So too are Ms. Tucker's e-mails to Kroger business personnel.  *See* Tucker Decl. ¶ 15; Ex. K (KRO-PRIV-116); Ex. M (KRO-PRIV-118).  Further, both Mr. Cote and Ms. Tucker provided their initial legal impressions of the Q&B Reports in the body of the e-mails.  *See* Tucker Decl. ¶¶ 14–15; Ex. K (KRO-PRIV-116).  Both the e-mails

---

[9] Notably, the court rejected the defendant's attempt to analogize to *Graff* reasoning "there is a large factual difference between environmental audit reports prepared by an engineering consultant [like in *Graff*] and public relations advice given to a university which is fully aware that a decision it is about to make will spark great public and media interest." *Waters*, 2015 U.S. Dist. LEXIS 164179, at *6.

[10] *See also United States Postal Serv. v. Phelps Dodge Refin. Corp.*, 852 F. Supp. 156, 162 (E.D.N.Y. 1994) ("Such underlying factual data can never be protected by the attorney-client privilege and neither can the resulting opinions and recommendations.  There are few, if any, conceivable circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client.").

and the Q&B Reports themselves are therefore privileged.  *See Graff*, 2012 WL 5495514, at *14
(e-mail reflecting counsel's initial legal impressions about consultant's audit were privileged).

### B.     KRO-PRIV-167 Should be Redacted

The Special Master held that the "overriding thrust" of Kroger's internal February 2013 e-
mails is "addressing business and regulatory matters, not the provision of legal advice."  Order at
7.    According  to  the  Special  Master,  this  chain  addresses  various  concerns  surrounding
implementation of Buzzeo's SOMS recommendations, accounting for the cost of Buzzeo's work,
and gathering appropriate personnel.  *See* Order at 6.

Kroger withdraws its privilege claim with respect to most of the e-mail chain (Ex. O).  But
the February 26, 2013 e-mail from Ms. Tucker at 5:51 p.m. puts into proper context Kroger's
retention of Quarles & Brady and, in turn, Buzzeo.  *See* Ex. O (KRO-PRIV-167).  It also
independently provides in-house counsel's legal impressions and opinions.  *See id.*  Kroger
requests that the first paragraph of that e-mail be redacted.

### III.    KROGER DID NOT WAIVE PRIVILEGE OVER THE Q&B REPORTS.

The PEC has argued that Kroger waived privilege over the Q&B Reports because Kroger
produced the documents, over the company's objection, to comply with an order from a New
Mexico state court. Ex. I (NM Order).  The Special Master held that this issue was moot because
he concluded the "reports are not privileged."  Order at n.9.  If the Court finds that the Q&B
Reports are privileged, it should find that Kroger has not waived its claim.

The Federal Rules of Evidence provide that production of materials in state court does not
waive privilege in a federal court proceeding "if the disclosure: (1) would not be a waiver under
this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the
state where the disclosure occurred."  Fed. R. Evid. 502(c).  These requirements are satisfied here.
It is well settled that a party's compelled disclosure of privileged communications does not waive

privilege because the disclosure is not voluntary.  *See Pension Comm. v. Banc of Am. Sec., LLC*, No. 05 Civ. 9016 (SAS), 2009 WL 2921302, at *1 (S.D.N.Y. Sept. 8, 2009); *Hopson v. Mayor & City Council of Balt.*, 232 F.R.D. 228, 243–44 (D. Md. 2005).  Even the strictest waiver doctrines do not construe compliance with court orders as a waiver.  *See, e.g., In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) ("Short of court-compelled disclosure . . . we will not distinguish between various degrees of voluntariness in waivers of the attorney-client privilege.").  New Mexico law does not require a different result.  *See* N.M. R. Evid. 11-511 (privilege waiver applies to information "*voluntarily* disclose[d]").  Therefore, Kroger's production of the Q&B Reports in New Mexico did not waive Kroger's privilege objection over the materials.

Plaintiff's waiver argument in connection with this dispute focused exclusively on the production of the Q&B Reports in New Mexico.  *See* Ex. J (4-18 PEC Reply Br.) ("Kroger's conduct in New Mexico resulted in waiver of privilege.").  Plaintiffs have not argued that Kroger's production of the Q&B Reports in the MDL constitutes waiver, nor could they.  Kroger has always maintained privilege over the Q&B Reports, and it produced them in the MDL based on Court orders compelling their production.  Specifically, *DR-22* required Kroger to produce materials produced in other state actions, including the New Mexico action.  And the Special Master ordered the parties to proactively apply the Special Master's decisions overruling privilege determinations to "similar documents" on their privilege logs and produce those documents—subject to a reservation of their privilege objections.  *See* Dkt. No. 3633 (concluding a party's "past or future compliance with the Court's orders does not suggest [the party] has waived its rights on appeal to argue that such documents are privileged").  While Kroger believes that the Special Master's conclusion in *DR 14-5* should not apply to the Q&B Reports, Kroger reasonably determined that the Special Master would conclude the Q&B Reports were "similar" to the reports at issue in *DR*

*14-5.*  Kroger thus concluded that the Special Master compelled it to produce the Q&B Reports. But because compelled productions do not waive privilege objections, Kroger's production of the Q&B Reports pursuant to DR-22 and Dkt. No. 3633 does not constitute waiver.

## CONCLUSION

For the forgoing reasons, Kroger respectfully requests that the Court sustain this Objection, vacate the Special Master's Order, and hold that the Privileged Materials are protected from disclosure by attorney-client privilege.

Dated:   May 10, 2023
         Charleston, West Virginia

Respectfully submitted,

**The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II,**

**By counsel,**

*/s/ Ronda L. Harvey_____*
Ronda L. Harvey, Esq. (WVSB 6326)
Ashley Hardesty Odell, Esq. (WVSB 9380)
Fazal A. Shere, Esq. (WVSB 5433)
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
ahardestyodell@bowlesrice.com

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on May 10, 2023, the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record.

*s/Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)

15721625.1