# EXHIBIT G

## CUSTOMER SERVICES AGREEMENT

This Customer Services Agreement (together with the Schedules, this "Agreement") is made as of the 24th day of January, 2013, by and between BuzzeoPDMA LLC, a Delaware limited liability company having its principal office at 1025 Boulders Parkway, Suite 301, Richmond, Virginia 23225 ("BuzzeoPDMA"), and The Kroger Co., an Ohio corporation having its address at 1014 Vine Street, Cincinnato, OH 45202-1100 ("Customer").

### WITNESSETH:

WHEREAS, BuzzeoPDMA provides compliance and sample management solutions to the life sciences industry; and

WHEREAS, Customer desires to engage BuzzeoPDMA to provide Customer with services as more fully described in this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual representations, warranties, covenants and agreements contained herein, the parties hereto, intending to be legally bound, hereby agree as follows:

### ARTICLE I
### DEFINITIONS AND RULES OF CONSTRUCTION

Section 1.1. Defined Terms. The following capitalized terms shall have the respective meanings given them below:

"Affiliate" of any Person shall mean any other Person which directly or indirectly controls, is controlled by or is under common control with, such Person. The term "control" (including its correlative meanings "controlled by" and "under common control with") means possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person (whether through ownership of securities or partnership or other ownership interests, by contract or otherwise).

"Confidential Information" shall mean any and all business and technical information of a party disclosed to, or otherwise acquired or observed by, the other party, whether communicated in writing, orally, electronically or in any other form, including, but not limited to, the terms and conditions of this Agreement, except Confidential Information does not include any information which (1) becomes generally available to the public through no fault of the receiving party; (2) was independently developed by the receiving party without use of or access to the disclosing party's Confidential Information or (3) becomes available to the receiving party on a non-confidential basis from a source other than the disclosing party; provided that such source is not prohibited from transferring the information to the receiving party by a contractual, legal or fiduciary obligation.

"Contractor" shall mean any vendor, consultant or contractor utilized by BuzzeoPDMA to accomplish defined tasks in the Services.

"Governmental Authority" shall mean any Federal, state, local or foreign governmental authority, agency, court, regulatory commission or other governmental body.

"Person" shall mean any individual, firm, corporation, unincorporated association, partnership, limited liability company, trust, Governmental Authority or other entity.

"Schedule" shall mean any schedule to this Agreement identified as such.

"Services" shall mean the services described on Schedule 1.

Section 1.2. Rules of Construction. All defined terms contained herein shall apply equally to both the singular and plural forms of such terms. Whenever the context may require, any pronoun shall have the corresponding masculine, feminine and neuter forms. Headings of Articles and Sections have been inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement. In the event of any conflict in interpretation between this Agreement and any Schedule or any statement of work or work order issued hereunder, the provisions of this Agreement shall control. This Agreement has been jointly prepared and shall not be strictly construed against either party.

### ARTICLE II
### CONTRACTORS

Section 2.1. Performance of Services by Contractors. BuzzeoPDMA may delegate to a Contractor its obligations to perform any of the Services with prior written consent of Customer. Such delegation shall not release BuzzeoPDMA of its responsibility to Customer regarding the timely and proper performance of such Services.

### ARTICLE III
### SERVICES

Section 3.1. Performance of Services. (a) Subject to the terms of this Agreement, BuzzeoPDMA agrees to provide to Customer, and Customer agrees to pay for, the Services. BuzzeoPDMA agrees that the Services will be performed in accordance with the service descriptions set forth in Schedule 1. Customer acknowledges and agrees that the fees which BuzzeoPDMA is charging Customer for the Services are premised upon the types of Services which Customer has purchased from BuzzeoPDMA. Accordingly, any changes in the Services or any usage by Customer of Services other than those purchased pursuant to this Agreement will be subject to the imposition of additional service fees by BuzzeoPDMA, the amount of such fees to be determined by BuzzeoPDMA in its sole discretion. Any change in Service fees occurring as a result of the operation of this Section 3.1 shall be reflected in the next invoice delivered to Customer.

(b) Customer may request BuzzeoPDMA from time to time to perform additional services other than the Services. In such event, such services shall be performed pursuant to an appropriate statement of work or work order executed by

1

HIGHLY CONFIDENTIAL                                                                                                          KrogerSmithNMAG00002666

Customer and accepted by BuzzeoPDMA. Any such statement of work or work order shall be subject to the terms and conditions of this Agreement.

Section 3.2. Commencement of Services. BuzzeoPDMA shall provide the Services to Customer commencing on the date hereof and continuing through the Term (defined herein) in the manner set forth on Schedule 1, except that Services which are to be provided upon Customer's request shall be provided by BuzzeoPDMA from time to time as appropriate.

Section 3.3. Customer Support. Customer agrees to provide BuzzeoPDMA with all necessary information, personnel, license rights, documentation and support to enable BuzzeoPDMA to perform the Services and to carry out its obligations hereunder. A failure by Customer to provide any of such assistance will relieve BuzzeoPDMA of its obligations hereunder to perform the Services.

Section 3.4 Subpoenas or Summons. In the event that BuzzeoPDMA or any party acting on behalf of BuzzeoPDMA receives a subpoena or summons requesting that BuzzeoPDMA (or such person) to testify concerning this engagement, BuzzeoPDMA will promptly notify Customer. Customer may, within the time permitted for BuzzeoPDMA (or such person) to respond to any such requests, initiate legal action seeking a protective order or other relief as Customer deems appropriate to protect information from disclosure. If Customer takes no action within the time permitted for BuzzeoPDMA (or such person) to respond or if Customer's actions do not result in a judicial order preventing BuzzeoPDMA (or such person) from testifying, BuzzeoPDMA may comply with the request. Customer shall reimburse and pay BuzzeoPDMA (or such person) for all costs and expenses incurred by BuzzeoPDMA (or such person) in connection with any such summons or subpoenas, including reasonable attorney's fees and time spent by BuzzeoPDMA's personnel, billed at their regular rates for any such action other than an action between BuzzeoPDMA and Customer.

### ARTICLE IV
### FEES AND EXPENSES

Section 4.1. Amount of Service Fees; Payment Terms. (a) Subject to Section 3.1, Customer agrees to pay to BuzzeoPDMA for the Services the fees set forth on Schedule 1. Except as otherwise set forth in this Agreement, all fees for Services will be invoiced at regular monthly intervals. All Services which are one-time services will be invoiced as incurred. All Services which are to be charged on a per diem, per incident or per user basis will be invoiced on a monthly basis. If Customer elects to submit payment via wire transfer or other electronic means, Customer will be solely responsible for all additional payment costs incurred.

(b) All payments due to BuzzeoPDMA hereunder are to be paid in U.S. dollars and are due within sixty (60) days of the date of the applicable invoice.

Section 4.2. Taxes. All amounts due to BuzzeoPDMA hereunder are net of any and all taxes (including withholding taxes), assessments, charges and levies of any Governmental Authority, all of which shall be the sole obligation of Customer, except for taxes payable on the income of BuzzeoPDMA.

Section 4.3. Expenses. (a) Customer shall be responsible to reimburse BuzzeoPDMA for all reasonable travel, meals and lodging expenses which are incurred by BuzzeoPDMA in connection with BuzzeoPDMA's performance hereunder and with Customer's prior approval. All reimbursable expenses shall be paid to BuzzeoPDMA net sixty (60) days from the date of invoice therefor.

(b) Customer will pay BuzzeoPDMA in advance, or reimburse to BuzzeoPDMA upon demand, for all amounts payable or to be paid to third parties by BuzzeoPDMA on Customer's behalf. If Customer does not make such payment to BuzzeoPDMA in advance of BuzzeoPDMA's payment to a third party, then, in addition to Customer's reimbursement of such payment to BuzzeoPDMA upon demand, Customer will incur an additional handling charge payable to BuzzeoPDMA (upon demand) in the amount of fifteen percent (15%) of such reimbursement.

### ARTICLE V
### WARRANTIES, LIMITATIONS ON LIABILITY, INSURANCE AND INDEMNIFICATION

Section 5.1. Services Warranty. BuzzeoPDMA represents and warrants to Customer (the "Services Warranty") that (a) it has the right to perform the Services and provide any related deliverables in accordance with the terms of this Agreement and to BuzzeoPDMA's knowledge neither the Services nor any related deliverables infringe any valid copyright, patent or tradesecret of any third party, and (b) it will perform the Services in accordance with customary industry standards.

Section 5.2. LIMITATIONS ON WARRANTIES. THE WARRANTY SET FORTH IN SECTION 5.1 HEREOF IS IN LIEU OF ALL OTHER REPRESENTATIONS AND WARRANTIES AND BUZZEOPDMA HEREBY DISCLAIMS ALL OTHER REPRESENTATIONS AND WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY AND/OR FITNESS FOR USE AND/OR A PARTICULAR PURPOSE.

Section 5.3. LIMITATIONS ON LIABILITY. (a) EXCEPT FOR ITS INDEMNIFICATION OBLIGATIONS SET FORTH IN THIS AGREEMENT, IN NO EVENT SHALL BUZZEOPDMA BE LIABLE UNDER ANY CIRCUMSTANCES FOR SPECIAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES OF ANY NATURE WHATSOEVER (WHETHER ARISING OUT OF CONTRACT, STRICT LIABILITY, OR OTHERWISE), INCLUDING, WITHOUT LIMITATION, ANY LOST REVENUES OR PROFITS OF CUSTOMER, RESULTING FROM OR ARISING OUT OF A BREACH OF ANY WARRANTY TO CUSTOMER, WHETHER OR NOT BUZZEOPDMA HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

(b) NOTWITHSTANDING ANYTHING IN THIS AGREEMENT TO THE CONTRARY, EXCEPT FOR THE INDEMNIFICATION OBLIGATIONS SET FORTH IN THIS AGREEMENT, THE PARTIES AGREE THAT BUZZEOPDMA'S AGGREGATE LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED, UNDER ANY CIRCUMSTANCES, THE AGGREGATE AMOUNT OF FEES PAID PURSUANT TO THE APPLICABLE STATEMENT OF WORK OR WORK ORDER DURING

Customer Services
Agreement
Version 1.2013

HIGHLY CONFIDENTIAL

THE SIX MONTH PERIOD IMMEDIATELY PRECEDING THE DATE UPON WHICH THE EVENT GIVING RISE TO SUCH CLAIM OCCURRED.

Section 5.4. Indemnification. (a) During the term hereof, the BuzzeoPDMA agrees to maintain in full force and effect insurance in the amounts and types set forth on Schedule 2.

(b) Each party ("Indemnifying Party") hereto agrees to indemnify and hold the other party ("Indemnified Party") harmless from and against all suits, proceedings at law or in equity, claims, liabilities, costs, payments and expenses (including reasonable attorneys' fees) asserted against the Indemnified Party or incurred by the Indemnified Party, arising out of or in connection with any claim for damages to property or physical injuries to persons, caused by or resulting from the willful or negligent acts or omissions of Indemnifying Party or Indemnifying Party personnel.

(c) Misappropriation Claims. Subject to Section 5.4(d), BuzzeoPDMA agrees to indemnify, defend and hold harmless Customer from and against any and all losses arising out of any third party claim that the Services infringes or misappropriates any patent, trademark, trade secret or copyright of such third party (a "Misappropriation Claim"); provided, that (1) Customer promptly notifies BuzzeoPDMA in writing of such Misappropriation Claim, (2) BuzzeoPDMA has sole control of the defense of and all settlement negotiations relating to such Misappropriation Claim, and (3) Customer cooperates fully in the defense of the Misappropriation Claim.

(d) LIMITATIONS ON WARRANTIES. (I) THE WARRANTIES SET FORTH IN SECTIONS 5.1 SHALL NOT APPLY TO, AND BUZZEOPDMA SHALL NOT HAVE ANY LIABILITY TO CUSTOMER WITH REGARD TO, ANY MISAPPROPRIATION OR OTHER CLAIM WHICH IS BASED IN WHOLE OR IN PART ON A CHANGE, MODIFICATION OR SUPPLEMENT TO THE SERVICES MADE BY CUSTOMER OR ANY OTHER PERSON WITHOUT BUZZEOPDMA'S PRIOR WRITTEN CONSENT.

(II) WITHIN A REASONABLE TIME FOLLOWING NOTICE OF ANY ALLEGED MISAPPROPRIATION CLAIM, BUZZEOPDMA SHALL HAVE THE RIGHT, AND, IF SUCH RIGHT IS EXERCISED, SHALL NOT BE DEEMED TO BE IN BREACH OF SECTION 5.1, TO (1) OBTAIN FOR CUSTOMER THE RIGHT TO CONTINUE USING THE SERVICES IN ACCORDANCE WITH THE TERMS OF THIS AGREEMENT, (2) MODIFY THE SERVICES SO AS TO MAKE THEM NON-INFRINGING, (3) REPLACE THE SERVICES WITH SERVICES WHICH ARE EQUIVALENT OR (4) IF THE RIGHT TO CONTINUE TO USE THE SERVICES CANNOT BE PROCURED OR THE SERVICES CANNOT BE MODIFIED OR REPLACED, BUZZEO MAY TERMINATE CUSTOMER'S RIGHT TO USE THE SERVICES, HAVE CUSTOMER REMOVE OR DESTROY THE APPLICABLE DELIVERABLES, AND GRANT CUSTOMER A CREDIT ON THAT PORTION OF THE FEE PAID BY CUSTOMER ATTRIBUTABLE TO THE INFRINGING SERVICES AS DEPRECIATED ON A STRAIGHT LINE BASIS OVER A PERIOD OF FIVE YEARS COMMENCING ON THE DATE OF THIS AGREEMENT. THIS SECTION 5.4(D) STATES THE ENTIRE LIABILITY OF BUZZEOPDMA WITH RESPECT TO INFRINGEMENT OF PATENTS, TRADE SECRETS AND COPYRIGHTS BY THE SERVICES, AND BUZZEOPDMA SHALL HAVE NO ADDITIONAL LIABILITY WITH RESPECT TO ANY ALLEGED OR PROVEN INFRINGEMENT.

**ARTICLE VI             TERM AND TERMINATION**

Section 6.1. Term. The term of this Agreement (the "Term") shall commence on the date hereof and shall continue for an initial term of three (3) years and may be renewed upon written agreement of the parties prior to the expiration of such initial anniversary or any subsequent anniversary.

Section 6.2. Termination with Cause. Either party may terminate this Agreement at any time in the event the other party commits a material default of any of its obligations, which such defaulting party fails to cure within thirty (30) days after receiving written notice of such default from the other party.

Section 6.3. Termination in the Event of Bankruptcy. Either party may terminate this Agreement upon thirty (30) days written notice following (1) the filing of a voluntary or

HIGHLY CONFIDENTIAL                                                                KrogerSmithNMAG00002668

involuntary petition in bankruptcy by or against the other party or (2) the liquidation of the other party.

Section 6.4. Survival. Articles I, IV, V, VII and VIII shall survive any termination or expiration of this Agreement.

## ARTICLE VII
## CONFIDENTIALITY

Section 7.1. Restrictions on Disclosure of Confidential Information. Subject to this Article VII, each party shall maintain in confidence all Confidential Information of the other party and shall not use, copy or disclose any such Confidential Information without the other party's prior written consent. Notwithstanding the foregoing, each party may disclose Confidential Information (1) to its Affiliates and those of its and its Affiliates' directors, officers, employees, independent contractors, accountants and attorneys (collectively "Representatives") who need such information in order to assist or advise such party in the performance of its obligations hereunder provided that disclosure to independent contractors may not be made without the other party's prior written consent, which consent shall not be unreasonably withheld and (2) regarding the terms and conditions of this Agreement to the extent required by applicable law. In addition, BuzzeoPDMA and its Affiliates may identify Customer as a customer of BuzzeoPDMA and its Affiliates in sales or promotional material, public announcements with Customer's prior written consent or government filings. Each party shall promptly notify the other party if it discovers any unauthorized use, copying or disclosure of the other party's Confidential Information.

Section 7.2. Compelled Disclosure. In the event that a party (including its Representatives) is requested in accordance with applicable law to disclose the other party's Confidential Information, the receiving party agrees to provide the disclosing party with prompt notice of such request so that the disclosing party will have an opportunity to limit or preclude such disclosure. The receiving party agrees to cooperate with the disclosing party, at the disclosing party's expense, in any lawful effort to contest the requirement of such disclosure. In the event that a protective order or other remedy is not obtained, the receiving party may furnish only that portion of the disclosing party's Confidential Information which such party is legally compelled to disclose and will exercise its best efforts to obtain reliable assurance that confidential treatment will be accorded any Confidential Information so furnished.

Section 7.3. Confidentiality Obligations after Termination of Agreement. Upon termination of this Agreement, the parties agree that (a) all confidentiality provisions of this Article VII shall survive for a period of ten (10) years and (b) within thirty (30) days of the termination date, each party shall return or certify in writing the destruction of all documents and electronic media containing the other party's Confidential Information, including all copies.

## ARTICLE VIII
## ACKNOWLEDGEMENTS

Section 8.1. With respect to any consulting services performed as part of the Services which involve compliance with regulatory requirements, the sole duty of BuzzeoPDMA shall be to examine or review existing practices, policies or procedures (as set forth in its engagement), report to the Customer and makes appropriate recommendations within the scope of the Services; BuzzeoPDMA shall have no liability or obligation (i) with respect to any prior violations of such requirements by the Customer; or (ii) to insure that any analysis or recommendations are adopted or implemented by the Customer; responsibility for implementing any recommendations and monitoring, overseeing and insuring compliance shall be the sole responsibility of the Customer. Without limiting the generality of the foregoing, Customer agrees and acknowledges that the ultimate regulatory burden of compliance is and shall remain with the Customer, and nothing herein contained is intended to shift such burden to BuzzeoPDMA.

Section 8.2 Any analysis by BuzzeoPDMA as part of the Services is based solely on information and individuals made available to BuzzeoPDMA by Customer during its performance of the Services. Recommendations and analysis provided by BuzzeoPDMA as part of the Services represent BuzzeoPDMA's professional judgment based on its knowledge of and experience with the DEA, CSA, FDA and PDMA and comparable state laws. Customer acknowledges, however, that BuzzeoPDMA's performance of Services does not include providing legal, accounting, actuarial, financial, real estate, insurance or any other advice which is legally required to be provided by a licensed or certified professional and Customer should at all times rely on its own employees, personnel or agents for the provision of same. Certain requirements of federal and state regulations thereunder are subject to interpretation and such interpretations may contain subjective components; implementation of any recommendations does not guarantee that federal, state, or other governmental authority would not find any violations.

Section 8.3 The Services provided to Customer by BuzzeoPDMA are advisory in nature and BuzzeoPDMA's entitlement to payment hereunder is neither, directly or indirectly, tied to nor a function of any specific results or the outcome of any efforts BuzzeoPDMA may undertake.

Section 8.4 BuzzeoPDMA has expended considerable time and effort to develop and maintain its goodwill and credibility in the pharmaceutical and regulatory community. To avoid diminution in this regard, Customer agrees to disclose fully, completely and accurately any and all material information regarding its business and services to BuzzeoPDMA in order to permit BuzzeoPDMA to perform the Services hereunder.

Section 8.5 BuzzeoPDMA performs services to other clients which may have, directly or indirectly, common, similar or competing interests to the interests of Customer. Without derogating from BuzzeoPDMA's confidentiality obligations expressly provided under this Agreement, nothing herein shall be construed or interpreted to limit or restrict in any way the nature or type of services which may, during the Term of this Agreement or thereafter, be performed or undertaken by BuzzeoPDMA for other parties.

## ARTICLE IX
## MISCELLANEOUS

Customer Services
Agreement
Version 1.2013

HIGHLY CONFIDENTIAL

KrogerSmithNMAG00002669

Section 9.1. Notices. All notices required by this Agreement must be in writing and may be delivered personally, by overnight courier (e.g., Federal Express), or by certified or registered mail, return receipt requested, addressed to the parties at the respective addresses set forth above (and if to BuzzeoPDMA, to the attention of the General Counsel). A notice shall be deemed given on the earlier of its date of delivery or the third business day after its date of mailing or transmission.

Section 9.2. Relationship of the Parties. BuzzeoPDMA and Customer are independent contractors under this Agreement and are not agents, representatives, partners or joint venturers of each other. No party has any right or authority to make any representation or warranty, or create any obligation or responsibility, on behalf of the other party.

Section 9.3. Amendments and Waivers. This Agreement may not be modified or amended except by a written instrument signed by an authorized representative of each of the parties. Any failure of a party to comply with any obligation contained herein may be waived by the party entitled to the benefit thereof only by a written instrument signed by an authorized representative of the party granting such waiver. No failure on the part of any party to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right or remedy hereunder preclude any future exercise thereof or the exercise of any other right or remedy.

Section 9.4. Assignment; Parties in Interest. This Agreement may not be assigned (by operation of law or otherwise) or transferred, in whole or in part, by either party without the prior written consent of the other party; provided, however, that either party shall be entitled to assign this Agreement, without the prior written consent of the other party, to an Affiliate of such party or to any successor corporation which succeeds as a going concern to the business presently conducted by such party pursuant to a merger, consolidation or sale of all or substantially all of its assets, if such successor corporation assumes such party's obligations hereunder. Except as specifically provided herein, this Agreement is not intended to and does not create any rights in favor of any Person not a party hereto.

Section 9.5. Entire Agreement; Severability. This Agreement contains the entire agreement and understanding between the parties relating to the subject matter hereof, and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to such subject matter. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. If any provision of this Agreement is declared invalid or illegal for any reason, then the remaining provisions of this Agreement shall remain in full force and effect in the same manner as if the invalid or illegal provision had not been contained herein.

Section 9.6. Governing Law; Jurisdiction. This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York, without regard to its conflict of law principles or the United Nations Convention on the International Sale of Goods.

Section 9.7. Remedies. Each party acknowledges that money damages would be both incalculable and an insufficient remedy for any breach of this Agreement by the other party and that any such breach would cause such party irreparable harm. Accordingly, each party also agrees that in such event, the other party, in addition to any other remedies at law or in equity it may have, is entitled, without the requirement of posting any security, to equitable relief, including injunctive relief and specific performance.

Section 9.8. Force Majeure. Each party shall be excused for any reasonable delay in its performance under this Agreement, if such delay shall be due to any cause beyond its reasonable control, including, but not limited to, acts of God or the public enemy, valid law, acts or requests of any Governmental Authority, wars or acts of war, terrorist acts, threats of terrorism, floods, fires, storms, strikes, lockouts, delivery of nonconforming or defective raw material, supplies or equipment, interruptions of transportation, freight embargoes or failures, exhaustion or unavailability on the open market or delays in delivery of raw material, supplies, equipment, or services necessary for the performance of any provision hereof, or happening of any unforeseen acts, misfortune, or casualty by which performance hereunder is delayed or prevented, provided, however, that each party will use all commercially reasonable efforts to remedy the situation, except that nothing contained herein shall require any party to make settlement of any labor dispute on terms unacceptable to it and no such party shall be liable to the other for any losses, damages, or costs by reason of its inability to remedy the situation. If any such delay occurs, the party affected by the delay shall inform the other parties of the occurrence of the circumstances causing the delay, and (unless the cause thereof shall frustrate or render impossible or illegal the performance of this Agreement or shall otherwise discharge the same), the period for performing obligations under this Agreement shall be extended (not limited to the length of the delay) as may reasonably be required to complete the delayed performance or obligation; further provided, however, that nothing herein shall relieve Customer of its obligations to make payment of any and all accrued fees and expenses under Article IV.

Section 9.9. No Solicitation of BuzzeoPDMA Employees. During the term of this Agreement, and for a period of two years thereafter, Customer will not directly, and it will cause its Affiliates not to directly, solicit for employment any Person who performed Services under this Agreement and who is an employee or consultant of BuzzeoPDMA or any of its Affiliates or who was an employee or consultant of BuzzeoPDMA or its Affiliates at any time during the term of this Agreement or (b) encourage any employee or consultant, that performed Services under this Agreement, of BuzzeoPDMA or any of its Affiliates to alter or terminate its relationship with BuzzeoPDMA or any of its Affiliates.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives effective as of the date and year first above written.

5

HIGHLY CONFIDENTIAL

BUZZEOPDMA LLC

By: _____
Name: William E. Buzzeo
Title: Senior Vice President, Business Development
Date: 1/54/13

THE KROGER CO.

By: _____
Name: Paul Heidman
Title: Executive Vice President & General Counsel
Date: 1/24/13
Tax ID #: 31-0345740

Customer Services
Agreement
Version 1.2013

6

HIGHLY CONFIDENTIAL
KrogerSmithNMAG00002671

Addresses for Notice:
BuzzeoPDMA LLC
1025 Boulders Parkway
Suite 301
Richmond, Virginia 23225

The Kroger Co.
1014 Vine Street
Cincinnati, OH 45202
Attn: Frances Tucker

Invoices shall be sent to:

Frances Tucker, corporate Counsel
Name, Title The Kroger Co.
1014 Vine Street
Address
Cincinnati, OH 45202

513-762-1314
Phone Number
513-762-4935
Fax Number

Frances.tucker@kroger.com
Email address

*Please check one of the following:*

____ Purchase order # _____ required (please attach copy)
　　Mail Checks to:　　　　　　　　　　　　　Wire Transfer to:
　　BuzzeoPDMA LLC　　　　　　　　　　　　BuzzeoPDMA LLC
　　P.O. Box 281414　　　　　　　　　　　　c/o Bank of America
　　Atlanta, Georgia 30384-1414　　　　　　ABA# 0212-0033-9 (ACH)
　　　　　　　　　　　　　　　　　　　　　　ABA# 0260-0959-3 (EFT)
　　　　　　　　　　　　　　　　　　　　　　ACCT# 381026605690

✓ Purchase order not required for payment

*Please answer the following questions:*

1. Does your company allow for invoices to be received electronically? Yes (No)
If the answer is "yes", to what e-mail address should the invoices be sent? _____
(BuzzeoPDMA understands that certain invoices have supporting documentation; therefore, these invoices will be mailed with the backup, in addition to the invoice being sent electronically.)

**Representatives:**

BuzzeoPDMA has designated Gary Glotz to act on its behalf under the Agreement and the Customer has designated Frances Tucker to act on its behalf under the Agreement.

7

Customer Services
Agreement
Version 1.2013

HIGHLY CONFIDENTIAL                                                              KrogerSmithNMAG00002672

## SCHEDULE 1: SERVICES AND SERVICE FEES

Description of Services and Pricing

### Project #1: Suspicious Order Monitoring (SOM) Assessment Project

BuzzeoPDMA will review, comment and provide consulting recommendations to help strengthen Customer's SOM and due diligence program. The project will leverage BuzzeoPDMA's extensive DEA and SOM knowledge and "best practices" to provide recommendations for enhancing Customer's SOM computer analysis model, SOM process and procedures, including SOPs, order analysis / evaluation / disposition processes, order pending process, and store reviews and investigations related to SOM. BuzzeoPDMA will provide Customer an onsite review and assessment of its current SOM system. We will meet with Customer's SOM team to conduct a thorough discussion and review of the SOM system. The assessment will involve onsite meetings at Customer's corporate office, one distribution facility and two pharmacies.

During this assessment, BuzzeoPDMA consulting team will review, discuss, and evaluate the following elements of Customer's SOM system:

- We will review and analyze Customer's SOM system.
- We will discuss and review Customer's approach used to design its SOM system.
- We will meet with Customer's IT and compliance teams to gain an understanding of the available data tables, schemas, fields, etc. in your current orders tracking system and how these items have been integrated into Customer's approach to SOM.
- We will discuss the data that is available and what is the appropriate sampling of the actual data needed to "train" a set of statistically based and supportable index modeling formulas, if appropriate.
- We will discuss those parameters and data points that are inherently unique to each account type and the requirements for developing a statistically justifiable SOM model specific to each account type.
- We will discuss the systems validation of the SOM system if applicable.
- We will provide a report to Customer and include recommendations regarding Customer's SOM system within 7 to 10 days days of completing the onsite visits.

As part of this project, BuzzeoPDMA will review the following areas of Customer's operations:

1. Onsite meeting at Customer's corporate office to gain a better understanding of its corporate compliance program's oversight into its SOM program.
2. Visit one of Customer's distribution facilities nearest to its corporate office to assess what it's currently doing at the facility level to support Customer's SOM program.
3. Visit two of Customer's pharmacies to assess their pharmacy operations and gain an understanding of its SOM program compliance to the store level.

*Project Fee:* $39,500.00 plus business expenses. This includes the onsite time, offsite consulting time, travel time and report writing time to complete an assessment of Customer's SOM program. This project will be staffed using two Senior Consultants, one PhD Statistician along with executive sponsorship from Ron Buzzeo, R.Ph, Chief Compliance Officer.

### Optional Drug Distribution facility SOM Assessments:
As an added option to the project scope above and to allow a more indepth assessment of each distribution facility's process and procedures, BuzzeoPDMA will assessment the two additional drug distribution facilities for a Project Fee of $9,950.00 each facility plus business expenses. This includes two Senior Consultants onsite for 1 ½ days each site, travel time for both Consultants and the report development time for each facility.

HIGHLY CONFIDENTIAL                                                                              KrogerSmithNMAG00002673

### Project #2: Ongoing Consulting

BuzzeoPDMA will provide regulatory consulting services off-site and/or on-site to the Customer regarding DEA/CSA/FDA/PDMA/Part 11/Computer Systems Validation requirements, state issues, and other regulatory requirements. A key Consultant will be assigned to the Customer and will be available by telephone, email, facsimile, or on-site on an "as needed" basis. If requested, BuzzeoPDMA can provide written and/or oral recommendations and/or position papers following such discussions.

*On-site visits may require a separate SOW / addendum.

*Professional Fee:* $245.00 per hour per Consultant; $275.00 per hour for Senior Consultants, Consulting Manager, Consulting Director or Compliance Director; $300.00 per hour for PhD Statistician, Senior FDA Consultant and $425.00 per hour for Ronald W. Buzzeo, R.Ph, Chief Compliance Officer, plus business expenses. Partial hours will be billed in 15 minute increments.

*The following are reimbursable expenses:*
*Business expenses will include hotels, meals, rental car, airfare, mileage, parking, taxi, and postage etc.*

*For Project #1, 50% will be invoiced upon signing this contract, and the remaining 50% will be invoiced upon completion, plus a pass through of expenses. For Project #2, you will only be invoiced for this project when you use it. There is a 4% annual escalator for all ongoing services. Schedule 1:* Termination for convenience with 60 days written notice for this Schedule.

HIGHLY CONFIDENTIAL



## Schedule 2 Service Providers - Insurance Requirements

The Kroger Co. and/or Kroger's affiliates and subsidiaries may require higher insurance coverage limits and/or different coverages for certain product and service providers.

| Underwritten by insurance companies rated A- or higher by A.M. Best |
|---|

| Must be shown as additional wording on Certificates: <br> > "The Kroger Co. and Kroger's and Subsidiaries are Additional Insureds" (except Workers' Compensation and Employers Liability)" <br> > "Primary and Non-Contributory" (except Workers' Compensation and Employers Liability) <br> > Waiver of Subrogation in favor of The Kroger Co. (except Workers' Compensation and Employers Liability) | Certificate Holder Name and Address: <br> The Kroger Co. and Kroger's subsidiaries <br> C/o Ebix BPO <br> PO Box 12010-12 <br> Hemet, CA 92546-8010 |
|---|---|

### General Liability

| Commercial General Liability | Yes |
|---|---|
| Occurrence Basis | Yes |
| Product Liability / Completed Operations | Yes |
| Each Occurrence | 3,000,000 |

The following coverages are required if services are provided by vendor on The Kroger Co. premises, or as otherwise required by The Kroger Co.:

### Auto Liability

| Any Auto | Yes |
|---|---|
| Combined Single Limit <br> Bodily Injury & Property Damage | 1,000,000 |

Note: As it concerns Auto Liability, a combination of "All Owned Autos, Hired Autos & Non-Owned Autos" OR "Scheduled Autos, Hired Autos & Non-Owned Autos" is acceptable

### Workers Compensation

| Statutory Limits | Yes |
|---|---|

### Employers Liability

| Each Accident | 500,000 |
|---|---|
| Disease   Policy Limit | 500,000 |
| Disease   Each Employee | 500,000 |

Note: a) Required coverage limits can be achieved through a combination of your each occurrence limit of Primary & Umbrella or Excess Liability Insurance; b) In certain instances, "Claims Made" policies may be acceptable, consult with the Ebix BPO Kroger Certificate Administrator to validate exceptions.

**ONLY FAX your Compliant Certificate to Kroger's Certificate Administrator – Ebix BPO @ 1-888-720-3834.**

For Questions, please contact:

| Contact Name: | Contact Title / Company: | Contact Phone: | Contact e-Mail: |
|---|---|---|---|
| Jim Aalberg | VP Corporate Insurance – Kroger | 1-503-797-5300 | jim.aalberg@kroger.com |
| Ed Bird | Insurance Analyst – Kroger | 1-503-797-3318 | edward.bird@kroger.com |
| Jan Stage | Kroger Certificate Administrator – Ebix BPO | 1-619-407-7348 | Jan.stage@ebix.com |

Last Revision: May 8, 2012

C:\Documents and Settings\agoodman\My Documents\BuzzeoPDMA\Agreements-Attachments-WOs\The Kroger Company Insurance Form 1.24.13.doc

HIGHLY CONFIDENTIAL

KrogerSmithNMAG00002675