# EXHIBIT J



April 18, 2023

*Via Electronic Mail*
Special Master David Cohen
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122

    Re:    *In re: National Prescription Opiate Litigation*, MDL No. 2804
             PEC's Reply ISO Motion Challenging Kroger's Privilege Claims

Dear Special Master Cohen:

    Kroger's 4/17/2023 letter brief opposition ("Kroger Opp.") does not carry its burden of proving that the attorney-client privilege applies to the documents at issue. "[S]imply *saying* a document contains legal advice – and not simply regulatory advice for a business purpose – is insufficient; it is [Kroger's] burden to show how and explain why this is true." *See* DR 14-15 (Doc. No. 3562) at 3. Kroger provides no supporting evidence and fails to squarely address the significant proof attached to Plaintiffs' 4/11/2023 letter brief motion ("Plaintiffs' Mot.") showing that the documents address regulatory advice for a business purpose.

    Rather than providing evidence, the Kroger Opp. misstates fundamental privilege standards, ignores critical facts, and mischaracterizes prior MDL privilege rulings. For example, it is not true that plaintiffs need to prove "the '**primary purpose**' of the advice must be business, rather than legal, to overcome the privilege." *See* Kroger Opp. at 4 (emphasis in original). Kroger has it backwards. The burden rests with Kroger, and "[t]o be privileged, the communication must have the *primary* purpose of soliciting legal, rather than business, advice.'"[1] Notably, Kroger fails to prove how and why its in-house counsel (Frances Tucker) was providing legal advice relative to the documents at issue. Similarly, while third-party consultant work *can* be privileged, such is

---

[1] *See* DR 14-1 (Doc. No. 1321) at 2-3 (quoting *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (emphasis in original). *See also*, 1 Paul R. Rice, *Attorney-Client Privilege in the United States* § 7:6 (2020 ed.) (There is "general agreement" among courts that the attorney-client privilege "applies only if the primary or predominant purpose of the attorney-client consultation is to seek legal advice or assistance.").

the case only where the proponent of the privilege *proves* that the communication with the consultant is "***for the purpose of obtaining legal advice from the lawyer***".[2] This critical requirement, which Kroger has not satisfied, is also recognized in the jurisprudence cited in the Kroger Opp.[3]

Relative to the purpose of the work performed for Kroger by third-party consultant Buzzeo, Plaintiffs do agree with Kroger that "the lines here are crystal clear and are established by contract". *See* Kroger Opp. at 4. However, Kroger ignores that the contract specifies Buzzeo's work was to "review, comment and provide consulting recommendations **to help strengthen Customer's SOM and due diligence program**." *See* Ex. C to Plaintiffs' Mot. at 8 (emphasis added).[4] Nothing in the contract states that Buzzeo's work was to aid counsel in providing legal advice, and no evidence exists or even suggests that Buzzeo was retained as a litigation consultant or in connection with any litigation. Moreover, Kroger further ignores the substantial evidence that Buzzeo's activities were to provide business analysis and advice to Kroger so that it could meet its regulatory obligations – not to assist Kroger's counsel in providing legal analysis. *See* Plaintiffs' Mot. at 2-3.

Considering that Buzzeo's work was *not* primarily to aid counsel in providing legal advice, it cannot be that negotiations and communications between Kroger and Buzzeo are privileged. *See, e.g.*, Ex. A to Plaintiffs' Mot. at rows 4, 9-10 (KRO-PRIV-91, 96-97), Ex. B at rows 3, 5, 7-9 (KRO-PRIV-117, 119, 130-132). Kroger's reliance on DR 14-11 (Doc No. 2979) and DR 14-13 (Doc. No. 3249) is misplaced.[5]

Kroger also ignores facts and makes no sense in its assertion that DR 14-5 & 14-8 actually "support Kroger's privilege". For example, Kroger admits that DR 14-5 "reasoned that '[a]ll the activity Dendrite undertook involved investigation and support of Cardinal's business processes, followed by advice on modifications to those processes to ensure regulatory compliance.'" *See* Kroger Opp. at 3 (citing DR 14-5 at 14). However, Kroger fails to acknowledge that this same

---

[2] *See* DR 14-5 (Doc. No. 1498) at 10-11 (emphasis added in original) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961)). *See also, e.g., Intl. Brotherhood of Elec. Workers Loc. 212 v. American Laundry Machinery, Inc.*, No. 07–cv–324, 2009 WL 81114 at *3 (S.D. Ohio Jan.9, 2009).

[3] *In re Behr Dayton Therman Products, LLC*, 298 F.R.D. 369, 374 (S.D. Ohio 2013) (affidavit submitted by defendant evidenced that "the information contained in these documents was provided by [consultant] to aid [counsel] in providing *legal* advice to [the defendant]") (emphasis added).

[4] Kroger also ignores that this same purpose was *restated* in Buzzeo's March 12th Audit as well as its March 25th Audit. *See* Ex. D to Plaintiffs' Mot. at 2, Ex. E to Plaintiffs' Mot. at 2.

[5] Kroger cites DR 14-11 to argue that disclosures to third party consultants do not waive privilege. *See* Kroger Opp. at 3. However, the bases for DR 14-11 sustaining a few of the privilege claims involving the third-party consultant were that "the privilege [still] applies to . . . agents of an attorney who are assisting in rendering *legal* advice", and that Cardinal *proved* same (for 4 of the 18 privilege claims) by way of "a consulting agreement between Cardinal and [the consultant]". *See* DR 14-11 at 4 (emphasis added, citation omitted). Conversely, the consulting contract herein *disproves* Kroger's privilege claims. *See* Ex. C to Plaintiffs' Mot. at 8. DR 14-13 did not involve communications with third parties at all, and unlike Kroger herein, Walmart's submission included evidence of the "context in which [the documents] were created and shared" to *prove* that its counsel's advice was primarily legal. *See* DR 14-13 at 2.

type of work is what Buzzeo did for Kroger.  *See* Plaintiffs' Mot. at 2-3.  Kroger then attempts to actually distinguish DR 14-5 and DR 14-8 by claiming that its "self-distribution processes are several steps removed from Kroger's business" and as such its "SOM is predominantly—if not *purely*—a legal question".  *See* Kroger Opp. at 4.  Apart from providing no legal or factual support for this claim, Kroger's reasoning is nonsensical.  There is no appreciable distinction between SOM for wholesalers and self-distributing pharmacies.  Moreover, even if there were, the chain pharmacy defendants were in the same position as Kroger relative to self-distribution and the prior rulings and orders regarding lack of privilege over their SOM audits would still equally apply.  *See, e.g.*, DR 14-15 (Doc. No. 3562).

Finally, Kroger has also failed to carry its burden of proving that the privilege has not been waived, and this is particularly problematic because of clear third-party disclosure/involvement in a non-legal capacity, as well as Kroger's prior waiver of privilege in the New Mexico litigation.  *See* Ex. H to Plaintiffs' Mot. at 2.  In fact, Kroger's conduct in New Mexico resulted in waiver of privilege for multiple underlying and related documents at issue herein,[6] and this provides yet another basis for overruling those respective Kroger privilege claims.  Notably, the Kroger Opp. is completely silent on the waiver which occurred in the New Mexico litigation.

Sincerely,

/s/ *Anthony Irpino*

Anthony Irpino

ADI/bcz
Attachments

cc: (via e-mail)
Ashley Hardesty Odell
Ronda Harvey
William Lorensen
Gabriele Wohl
Laura Dunning
Jeff Gaddy
Pearl Robertson
Peter Weinberger
James Young

---

[6] Kroger waived privilege over the March 12th Buzzeo Audit and the March 25th Buzzeo Audit, as well as the emails from Larry Cote (Quarles & Brady) transmitting same, and plaintiffs have these documents.  In fact, they were all previously submitted (as part of) Ex. F to plaintiffs' 9/23/2022 letter brief in connection with Agenda Item 334, and they are publicly available on the New Mexico litigation docket.  However, based on Kroger's privilege log and the Kroger Opp. these 4 documents appear to be part of documents currently being withheld by Kroger – namely the internal Kroger emails which distribute those 4 documents.  *See* Ex. B to Plaintiffs' Mot. at rows 2-5 (KRO-PRIV-116, 117-119); Kroger Opp. at 2-3.  Plaintiffs do also need and seek those internal distribution emails currently being withheld by Kroger.