UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) Judge Dan Aaron Polster |
| *The Montgomery County Board of County Commissioners, et al. v. Cardinal Health, Inc., et al.,* Case No. 1:18-op-46326 ("*Track Seven*") | ) ) **OPINION AND ORDER** ) **REGARDING PLAINTIFF'S MOTION** ) **TO EXCLUDE CERTAIN OPINIONS** ) **OF DR. JOHN E. SCHNEIDER** ) |

Before the Court is Plaintiff Montgomery County's Motion to Exclude Certain Opinions of Defense Expert John E. Schneider (docket no. 4886). Kroger filed a response in opposition (docket no. 4950) and Plaintiff filed a reply in support (docket no. 4968). For the reasons stated below, Plaintiff's Motion is **GRANTED in part** to the extent described below, but otherwise **DENIED**.

### Legal Standard

The Court incorporates by reference the applicable *Daubert* legal standards set forth in its *Track One Daubert Order Regarding Dr. Meredith Rosenthal* at 1–10 (docket no. 2495).[1]

### Analysis

Plaintiff asks the Court to "exclude the opinions set forth in Dr. Schneider's December 12, 2022, Expert Report in Sections 4, 5, 6, and 8, and those portions of Section 9 (Dr. Schneider's summary section) contained in paragraphs 9.1 through 9.5, as well as the last sentence of paragraph

---

[1] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 3934597, at *1-5 (N.D. Ohio Aug. 20, 2019).

9.6." Motion at 1 (docket no. 4886). Sections 4, 5, and 6 contain Dr. Schneider's theories and opinions about liability. Section 8, entitled "Comment on Alexander Report," contains Dr. Schneider's opinions responsive to the report of Plaintiff's Expert, Dr. Caleb Alexander.

For the reasons set forth below, the Court denies Plaintiff's Motion with respect to Dr. Schneider's liability opinions in sections 4, 5, and 6 of his Report. Regarding Dr. Schneider's opinions about Dr. Alexander's report and abatement plan, Plaintiff's motion is granted to the extent that Dr. Schneider may not offer these opinions during the liability phase of trial. The Court leaves for the trial court on remand the question of what testimony Dr. Schneider may offer during the abatement phase of trial, if there is one.

**A. Dr. Schneider's Liability Opinions (Sections 4, 5, and 6)**

Plaintiff asserts that Dr. Schneider's opinions are irrelevant, do not fit the facts or law of the case, and are likely to confuse issues or mislead the jury. Plaintiff asserts Dr. Schneider "declined to review any of the documents or testimony in this case," did not "review any type of material related to diversion-control at Kroger," "chose not to research [Kroger's 'access to information and role in diversion'] with respect to pharmacies," and "has not reviewed the County's complaint." Motion at 3–4.

Plaintiff argues that Dr. Schneider's opinions should be excluded under Federal Rules of Evidence 401 and 403. Under Rule 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Further, under Rule 403, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury." Fed. R. Evid. 403.

There is some merit to the County's argument. Dr. Schneider's opinions pertain, in large part, to "allocation of liability," which is somewhat troubling. *See, e.g.,* Motion Ex. A, Schneider Rpt. at ¶¶ 4.1, 4.2 (docket no. 4886-1); Motion Ex. B, Schneider Depo Tr at 109:24–110:2 (docket no. 4886-2). Under Ohio public nuisance law, neither allocation nor apportionment have anything to do with whether Kroger may be found liable for creating a public nuisance.

This Court has written extensively on the legal standard for absolute public nuisance in the context of this opioid MDL. *See, e.g., Opinion and Order on CT3 Defs. Motion for New Trial*, docket no. 4296.[2] There, the Court explained that "[a] defendant's conduct is substantial if a reasonable person would regard that conduct as the cause, or one of the material, meaningful, or considerable causes, of the nuisance." *Id.* at 67. This Court further explained, "the substantial factor test permits the factfinder to conclude that a defendant is liable for a public nuisance which would have occurred even in the absence of the defendant's wrongful conduct, so long as that defendant's conduct was a substantial factor in bringing about the nuisance." *Id.* at 69. Put differently, it matters very little whether there are *other* responsible or potentially responsible parties; the critical question in this case is simply whether *Kroger's* conduct was a substantial factor in bringing about a public nuisance.[3] Therefore, the probative value of the liability sections of Dr. Schneider's Report is extremely low.

However, "[a]t its core, the relevance standard, or fit requirement, is 'a liberal one' premised on Federal Rule of Evidence 401." *CT1 Daubert Order on Rosenthal* at 5 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)). If Kroger believes that identifying other

---

[2] *In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 739, 780 (N.D. Ohio 2022).

[3] This Court, itself, has noted that, "[f]rom the outset, it has been readily apparent that the opioid crisis was caused by a confluence of failures by virtually everyone: from federal, state, and local governments to the litany of named defendants in the thousands of MDL cases; and many, many others in between." *CT3 Order on New Trial Motion* at 68.

"potentially liable parties" will benefit its defense in some way and wants to argue that—perhaps when compared to other non-party entities' allegedly even more egregious conduct—its own conduct was not substantial, it may pursue that theory. As this Court has previously stated:

> [C]ourts will "generally permit" erroneous or weak expert testimony as long as it has "some support" in the record. *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 530 (citations omitted). Once such evidence is admitted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Burgett v. Troy–Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993)).

*Id.* at 3. Plaintiff's remedy with respect to its relevance argument, therefore, is to attack the probative value of Dr. Schneider's opinions on the witness stand.

Beyond the question of relevance, Plaintiff argues the probative value of Dr. Schneider opinions is substantially outweighed by a danger of prejudice, confusing the issues, or misleading the jury. Plaintiff asserts that "Dr. Schneider bases his concept of 'responsible' person on factors different from those that give rise to legal responsibility under Ohio law." Reply at 2 (docket no. 4968). In other words, Plaintiff asserts Dr. Schneider uses what amounts to an extralegal, and thus impermissible, theory of liability.

Again, the County's concerns are not without merit. For example, Dr. Schneider's repeated use of the phrase "allocation of liability" is confusing. It appears to merge the finding of legal fault with the separate concept of equitable allocation.[4] In the liability context, as stated previously, under Ohio's substantial factor test, the conduct of other potentially responsible parties is virtually irrelevant to the ultimate determination of whether Kroger is liable for its own conduct. Apportionment and/or allocation, on the other hand, only become relevant once liability has been

---

[4] "Allocation" is generally awarded pursuant to the Court's equitable powers. *See In re Nat'l Prescription Opiate Litig.*, No. 18-OP-45032, 2022 WL 3443614 (N.D. Ohio Aug. 17, 2022); *see also* footnote 5, below.

established.[5] On balance, however, the confusion that might be caused by Dr. Schneider's imprecise language is easily offset by appropriate instructions from the trial court.

Dr. Schneider's method for identifying potentially responsible parties is also opaque. First, Dr. Schneider identifies, by citation to various reference materials, seven "critical causative drivers of the supply of prescription opioids." Motion Ex. A, Schneider Rpt. at ¶ 2.7 (docket no. 4886-1). He then "maps" these seven factors to a list of 13 potentially responsible parties. *Id.* at ¶ 4.5.

In paragraphs 4.6–4.19 of his report, Dr. Schneider explains his rationale for choosing his thirteen specifically identified potentially responsible parties. But he never clearly articulates his purported mapping process. Dr. Schneider instead merely states that "discussion of contributing factors *directly or indirectly implies* specific [potentially responsible parties]." *Id.* at ¶ 4.3 (emphasis added). He barely elaborates in his deposition: "So my approach to liability is twofold. One is—as an economist, one is identifying contributing factors, and the second would be mapping those contributing factors into responsible parties." Motion Ex. B, Schneider Depo Tr at 18:19–23 (docket no. 4886-2). Dr. Schneider never explains why his field of health economics might identify

---

[5] This is also true in the CERCLA context on which Dr. Schneider relies by analogy. The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), expressly identifies which parties may be potentially liable and, in general, holds them jointly and severally liable for the harm. *See* 42 U.S.C. § 9607(a). The exception to the joint-and-several liability rule only applies when a party found responsible can show that the harm is apportionable. *See Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 614 (2009); *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 758 (7th Cir. 2021).

The distinction between allocation (which Dr. Schneider purports to discuss) and apportionment (mentioned above in the CERCLA context) is also worth briefly distinguishing. "[A]pportioned (divisible) liability and allocated liability are not one and the same under CERCLA. To the contrary, they are distinct, with apportioned liability imposed on the basis of **principles of causation** and allocated liability the product of an application of equitable factors." *Von Duprin*, 12 F.4th at 758 (emphasis added). In other words, "Apportionment is a way of avoiding the joint and several liability that would otherwise result from a successful § 107(a) claim; allocation, under § 113(f), is the equitable division of costs among liable parties. To apportion is to request separate checks, with each party paying only for its own meal. To allocate is to take an unitemized bill and ask everyone to pay what is fair." *Yankee Gas Servs. Co. v. UGI Utilities, Inc.*, 852 F. Supp. 2d 229, 241–42 (D. Conn. 2012). Despite Dr. Schneider's references to "allocation of liability," it appears, based on his discussion of causation, what he actually means may be apportionment.

some causal factors over others or recognize some potentially responsible parties to the exclusion of others.

If Dr. Schneider were, as Plaintiff asserts, attempting to substitute his two-step liability determination process for the actual legal standard articulated by the Court, that would plainly be impermissible. The Court is not convinced, however, Dr. Schneider is attempting to do so. In his deposition, Dr. Schneider made statements that seem to show his economic theory of liability is, in fact, simply a discussion of the causal connection between potentially liable parties and the various causative factors he identifies as causing the total opioid supply in Montgomery County.

> Q: But so you're not opining that the potentially responsible parties that you identify in [Figure] 4.1 are *causes* of OUD, correct?
>
> A: Correct.
>
> Q: Okay. Are you opining that the potential responsible parties in Figure 4.1 are *causes* of opioid supply?
>
> A: *Causes* of an increase in opioid supply, yes.

Motion Ex. B, Schneider Depo Tr at 123:9–17 (docket no. 4886-2) (emphasis added).

Of course, Dr. Schneider may not opine that any party or entity is, in fact, legally liable merely because they are associated with a factor he believes, from an economic perspective, caused an increase in total opioid supply. Similarly, he may not offer an opinion that purports to impose legal liability on those entities by any mechanism other than that they are a substantial factor in creating a public nuisance in Montgomery County. Such opinions would amount to a legal conclusion that is ultimately the decision of the trier of fact. Dr. Schneider may explain, however, why he believes his selected causal factors facilitate increased opioid supply. He may also explain his opinions on why certain non-party entities are causally associated with his chosen causal factors.

This Court will not attempt to parse every statement made by Dr. Schneider to determine whether it is or may be construed as an opinion about legal liability, rather than simply about causal association. Neither will this Court exclude Dr. Schneider's opinions wholesale on the chance that some of his statements could be construed as substituting his own extralegal theory of liability. The trial court is capable of making those individualized rulings in the context of specific objections by Plaintiff's counsel at trial. Once again, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Burgett*, 579 F. App'x at 377.

Kroger may introduce Dr. Schneider's laundry list of hypothetical causal associations between and among various entities who are not parties to this case as well as the contributing causal factors he has identified in the literature. Of course, Kroger must also accept the risk that Plaintiff may point out—and the jury may agree—that many of the causal associations identified by Dr. Schneider apply with equal force to Kroger's own pharmacies.

Accordingly, Plaintiff's Motion to exclude Sections 4, 5, 6, and the corresponding portions of Section 9 contained in paragraphs 9.1 through 9.5—Dr. Schneider's liability opinions—is **DENIED**.

**B. Dr. Schneider's Critique of Dr. Alexander's Report (Section 8)**

The Court now turns to Dr. Schneider's critique of Dr. Alexander's report entitled "Abatement Strategies for Addressing the Opioid Crisis." During his deposition, Dr. Schneider is very clear that he is not an expert on abatement strategies and that his opinions only pertain to liability. *See* Motion Ex. B, Schneider Depo. at 210:4–14; 259:20–260:7 (docket no. 4886-2). The County insists the opinions of its own expert, Dr. Alexander, only address abatement, so Dr. Schneider completely lacks the expertise to critique Dr. Alexander. *See* Motion at 13 ("Dr.

7

Alexander is a pharmacoepidemiologist and medical doctor who was retained to 'provide [his] scientific expertise regarding *how to abate* or reduce the harms caused by opioid epidemic in the United States.'") (citing Motion Ex. D, Alexander Rpt. ¶1 (docket no. 4886-4)) (emphasis added). Therefore, the parties essentially agree there is not any meaningful overlap between the two experts' reports. Put simply: Dr. Schneider's opinions do not address abatement, and Dr. Alexander's opinions do not address liability.

Kroger's response does not persuade the Court otherwise. Kroger scarcely attempts to describe how Dr. Schneider's liability opinion *might* apply to an abatement report. Kroger asserts: "[a]lthough Dr. Schneider is not an expert on the design and implementation of such public health and social services, the economic perspective brought to his assessment of liability (and any future assessment of abatement costs) would necessarily estimate the costs of such programs and attribute a portion of those costs to OUD." Response at 17. Despite Kroger's conclusory allusion to Dr. Schneider's "assessment of liability," his "perspective" is very clearly about "estimat[ing] costs . . . and attribut[ing] . . . those costs to OUD."[6] Those issues only apply, if at all, to an eventual abatement remedy and have no meaningful application to causation or a finding of liability. It is nonsensical to attempt to estimate the cost of the remedy prior to a finding of fault—and Dr. Schneider does not attempt to estimate any costs.[7] If Kroger is eventually found not liable for

---

[6] Dr. Schneider purports to offer some high-level economic principles that might apply to Dr. Alexander's abatement strategies. *See* Motion Ex. B, Schneider Depo. at 217:12–20 (docket no. 4886-2) ("I read [Dr. Alexander's Report] and provided some sort of, I guess, top-line opinions on some of the material he's included"); *id.* at 216:5–6 ("I'm just pointing out more sort of important economic, conceptual things."). In this Court's careful review of Dr. Schneider's report and deposition testimony, to the extent he does offer such "top-line opinions," they are wholly inapplicable to a jury's examination of Kroger's potential liability or to any specific liability opinion Dr. Schneider, himself, offers in his report. If needed, Kroger can seek to offer Dr. Schneider's "important economic concept[s]" during the abatement phase, consistent with the trial court's rulings on the matter.

[7] *See, e.g.,* Motion Ex. B, Schneider Depo Tr at 180:15–24 (docket no. 4886-2) ("Q: Are you including all, you know, financial costs of, you know, treatment, criminal justice or only costs incurred by the County? A: Well, just to be clear, in this liability report, I'm not doing any of that. So I haven't gotten that far in any of the work that I've done, and I'm certainly—it's certainly not part of this report to—to get into the patients.").

8

creating a public nuisance, there will be no need to estimate the cost of an abatement remedy or to attribute those costs to OUD.

Accordingly, Plaintiff's Motion is granted as to Dr. Schneider's opinions about Dr. Alexander's report (*i.e.*, section 8 and the last sentence of paragraph 9.6) and only for the liability phase. If the trial court turns its attention to abatement, Dr. Schneider may—to the extent he is found qualified by the trial court to do so—offer opinions on the economic or actual costs of Dr. Alexander's proposed abatement plan.[8] These opinions may be offered in direct rebuttal to Dr. Alexander's report or to other experts designated by Plaintiff to address abating the opioid crisis or determining the cost of implementing Dr. Alexander's proposed plan. At the appropriate time, Plaintiff may move to exclude those abatement-related opinions should they be offered by Dr. Schneider.

Accordingly, Plaintiff's Motion is **GRANTED** with respect to Section 8 and the last sentence of paragraph 9.6 of Dr. Schneider's report and limited to the liability phase of the trial as described above, but in all other respects **DENIED**.

**IT IS SO ORDERED.**

                                                    */s/ Dan Aaron Polster*       May 15, 2023
                                                    **DAN AARON POLSTER**
                                                    **UNITED STATES DISTRICT JUDGE**

---

[8] Nothing in this Order is intended to preclude Dr. Schneider from offering *additional* rebuttal opinions about any of Plaintiff's abatement experts' reports, should he be retained by Kroger to do so. The Court offers no opinion on whether Dr. Schneider is qualified or should be allowed to offer these or additional opinions during the abatement phase of trial. The Court only concludes that Dr. Schneider's abatement opinions presented in section 8 and the last sentence of paragraph 9.6 are not relevant to the trial's liability phase.