# Exhibit B



**Attorneys at Law**

600 Quarrier Street, Charleston, WV 25301
P.O. Box 1386, Charleston, WV 25325-1386
304.347.1100

**Ronda L. Harvey**
rharvey@bowlesrice.com
T 304.347.1701
F 304.347.1746

101 South Queen Street
Martinsburg, WV 25401

125 Granville Square, Suite 400
Morgantown, WV 26501

501 Avery Street
Parkersburg, WV 26101

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, PA 15317

480 West Jubal Early Drive, Suite 130
Winchester, VA 22601

April 17, 2023

**bowlesrice.com**

Special Master David Cohen
David R. Cohen Co. LPA
24400 Chagrin Blvd., Suite 300
Cleveland, OH 44122

*VIA EMAIL*

Re:   *In re: National Prescription Opiate Litigation, MDL No. 2804*
      *Kroger's Response to PEC's Motion Challenging Kroger's Privilege Claims*

Dear Special Master Cohen:

In their April 11, 2023 submission letter, Plaintiffs essentially argue that all documents and communications that Kroger has asserted privilege over are not privileged because, according to Plaintiffs, they are "business" related and not legal. Setting aside the merits of this argument, Plaintiffs' attempt to lump all of these together as one is incorrect, and Kroger respectfully requests that each privilege claim be evaluated separately and in accordance with the merits of each individual claim over the document at issue. In any event, Kroger's privilege claims over the subject documents easily satisfy the standard for attorney-client privilege, and the Plaintiffs' submission challenging these privileges should be denied for the reasons set forth below.

On January 22, continuing through January 23, 2013, Kroger's in-house counsel Frances Tucker, Esq., provided to Buzzeo, via email, redlined drafts of the Customer Services Agreement[1]. *See* KRO-PRIV-130, 131, and 132. What Plaintiffs seek by challenging KRO-PRIV-130, 131, and 132 are the thoughts and impressions of Ms. Tucker who, acting in her capacity as Kroger's attorney, provided redlined edits to specific provisions of the to-be-executed Customer Services Agreement. The content and subject matter of the draft Customer Services Agreement as being "business related", according to Plaintiffs, has no relevance to the discoverability of the thoughts and impressions of Kroger's attorney. Similarly, the same analysis is also true with respect to the redlines Ms. Tucker provided to Buzzeo, via email on June 3, 2013, regarding the draft of the Customer Services

---

[1] Kroger has produced the final version of this document at KrogerSmithNMAG00002666-2675. It is also attached as Exhibit C to Plaintiffs' Submission.

Agreement Statement of Work No. 2.² *See* KRO-PRIV-96 and 97. Again, Kroger has produced all of the final contracts. These draft documents reflecting attorney advice are clearly privileged and Kroger's assertion over the same is correct.

On a similar note, Plaintiffs also seek to discover email correspondence between Ms. Tucker and Buzzeo regarding specific edits and revisions to draft PowerPoint slides that were to be presented to Kroger personnel regarding the Suspicious Order Monitoring program.³ *See* KRO-PRIV-91. Plaintiffs' challenge to this document is nearly identical to the challenges Plaintiffs made to Walmart's withholding of draft and final presentations detailing the development of Walmart's SOM system, which was ruled upon in DR 14-13 (Doc. No. 3249). In that ruling, Special Master Cohen held that "[a]fter careful review of these documents and the context in which they were created and shared, and *mindful that, in the main, the substance of the final presentations either has already been produced or will be produced in discovery in other documents*, the Special Master concludes that all of the challenged documents are entitled to the protection of attorney-client privilege." (emphasis in original). *Id*. at 2. Like the drafts discussed *supra*, Kroger correctly asserts privilege over this document.

The final correspondence that Plaintiffs are attempting to discover from Ms. Tucker is an internal email chain between Ms. Tucker and other Kroger employees beginning on February 26, and continuing to February 28th, 2013. *See* KRO-PRIV-167. These emails contain discussions with Ms. Tucker following Buzzeo's visit to Kroger's distribution centers, the status of the work that Buzzeo is completing for Kroger, and specific legal issues that need addressed relating to that work. At the bottom of the emails from Ms. Tucker contains the following admonition:

> This memorandum, together with any attachments hereto, is a confidential communication governed by the attorney-client privilege and the attorney work product doctrine. In order to maintain the privilege, you should not furnish a copy of this memorandum or its attachments to anyone outside our Company.

Plaintiffs' challenge to these emails is simply another attempt to combine Kroger's privilege claims into one, arguing that these emails from Ms. Tucker are not privileged because they "related to Buzzeo's *regulatory* work for Kroger." See Plaintiffs' Submission at 2 (emphasis in original). However, despite Plaintiffs' efforts to conflate these issues, it cannot be overlooked that Plaintiffs' challenge to these communications is a clear attempt to get into the mind of Kroger's in-house counsel, Frances Tucker, Esq., as she renders legal advice to the Company.

Next, the Plaintiffs challenge Kroger's privilege assertions over the Quarles & Brady Reports and the emails attaching them. *See* KRO-PRIV-116, 117, 118, and 119. The Quarles & Brady Reports were transmitted from Larry P. Cote, Esq. of Kroger's outside law firm Quarles & Brady LLP to

---

² Kroger has produced the final version of this document at KrogerSmithNMAG00002679-2684. It is also attached as Exhibit G to Plaintiffs' Submission.

³ Kroger has produced the final version of these PowerPoint slides at KrogerSmithNMAG00007167-7194.

Kroger's in-house counsel Frances Tucker, Esq. *See* Plaintiffs' Exhibit B. The reports were sent to Ms. Tucker in two separate transmittal e-mails, each titled "Attorney-Client Privileged" in the subject line. *See Id*. The Reports are demarcated by an Attorney-Client Privilege watermark over each page of the Reports—a watermarked applied back in 2013—long before this litigation began. There is no doubt that (i) both parties contemplated that the attorney client privilege does and will exist, (ii) the advice is in counsel's capacity as legal advisor, and (iii) the communication was intended to be kept confidential.

Additionally, the fact that Buzzeo drafted the Reports and furnished them to Quarles & Brady in no way impedes or destroys the privilege. The privilege extends not only to "the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him [or her] to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). To that end, "[t]he privilege applies to factual investigations conducted by counsel at a corporate client's request (to provide legal advice to that client), and ***also to agents of an attorney who are assisting in rendering legal advice***." *In re Behr Dayton Therman Products, LLC*, 298 F.R.D. 369, 374 (S.D. Oh. 2013)(emphasis added)(citing *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, No. 93-3084, 1994 WL 58999, at *5-6 (6th Cir. Feb. 25, 1994)). This is consistent with Special Master's prior ruling holding that a party does not waive its privilege claims by virtue of sharing documents with a third party, when that third party's work contributed to the subject matter of those documents. *See* DR 14-11 at 3-4 (Doc No. 2979).

Furthermore, and contrary to Plaintiffs' belief otherwise, prior MDL rulings support Kroger's privilege regarding the substance of the Reports. Plaintiffs cite to prior rulings from Special Master Cohen on privilege assertions made by third-party distributor Cardinal Health, and Purdue. *See* DR 14-5, DR 14-8. The Plaintiffs claim that the Cardinal Health and Purdue rulings govern Kroger's privilege over the Quarles & Brady Reports. This is not true. In fact, these prior rulings support Kroger's privilege.

In the Cardinal Health ruling, Special Master Cohen held that a third-party (Dendrite) "provide[d] business consulting work to Cardinal" rather than legal advice. *See* DR 14-5 at 17 (Doc No. 3562). Special Master Cohen reasoned that "[a]ll the activity Dendrite undertook involved investigation and support of Cardinal's business processes, followed by advice on modifications to those processes to ensure regulatory compliance." *Id.* at 14. Indeed, for a third-party distributor, "monitoring orders" and "monitoring business" are synonymous. *See* DR 14-8 at 4 (Doc. No. 1666)(emphasizing that SOM, for McKesson, is a "business function"). Special Master Cohen later affirmed that reasoning for similar reports furnished to similarly situated wholesalers. *See, e.g.*, DR 14-8 at 13 ("[T]he Special Master's core conclusion [is] that the Par Report, as was the case [with Cardinal Health and McKesson], was principally (if not solely) designed to improve Par's business processes."). Special Master Cohen reasoned that SOM is predominantly a business matter for wholesalers given SOM's synonymity with a wholesaler's business operations. *See, e.g.*, DR 14-5 and DR 14-8.[4]

---

[4] Likewise, in the Purdue ruling, Special Master Cohen held that Purdue's IMS Audit Report was not entitled to attorney-client privilege because IMS's work for Purdue was handled by *non-attorney* compliance personnel and the

*That is not true for Kroger*.  Kroger is a retail chain, and it only distributes to itself.  For Kroger, self-distribution is not commercial or revenue-earning conduct.  It is upstream and incidental to its retail operations.  Kroger warehouses a wide range of grocery products which includes some medications, but ***not*** the schedule II medications at issue in the opioid litigation.  Kroger ships those products only to its own store locations.  Unlike a wholesaler or even a drug manufacturer, Kroger's self-distribution processes are several steps removed from Kroger's business.  The business impact of SOM for a self-distributor like Kroger is dependent on downstream, point-of-sale contingencies.  These downstream, highly contingent possibilities are *far* removed from the predominant "business processes" found by Special Master Cohen with respect to a wholesaler's SOM.  For a retail self-distributor like Kroger, SOM is predominantly—if not *purely*—a legal question.

This sustains Kroger's privilege.  Advice that merely "reflect[s]", "includes", or "consider[s]" business issues "will not vitiate the attorney client privilege." *In re OM Securities Litigation*, 226 F.R.D. 579, 587 (N.D. Oh. 2005) (internal citations omitted).  Rather, the "***primary purpose***" of the advice must be business, rather than legal, to overcome the privilege. And the "primary purpose" of Kroger's SOM-compliance cannot be "business" in nature because Kroger is not in the business of distributing controlled substances.  If the Plaintiffs here are correct—i.e., anything upstream and incidental to Kroger's retail operations is deemed "primarily" or "predominantly" business-related then the attorney-client privilege is rendered meaningless and such a ruling would render the attorney-client privilege non-existent for a company like Kroger.

It is also important to note the key factual differences between the Quarles & Brady Reports, the Dendrite Audits, and the IMS Audit Report provided to Purdue.

For example, Dendrite "simultaneously provided to [the law firm] and to Cardinal both privileged and non-privileged services" which Special Master Cohen found "suggests, if anything, subject matter waiver." *See* DR 14-5 at 15. Similarly, IMS's work for Purdue was prompted by *non-attorney* compliance personnel. *See* DR 14-8 at 8. The opposite is true here: Kroger and Buzzeo entered into distinct statements of work for each of the independent projects the parties undertook in this time period.  Unlike the "fuzzy and contrived" lines drawn by Cardinal between the legal and non-legal services provided by Dendrite, the lines here are crystal clear and are established by contract. *See* DR 14-5 at 15.

As is clear, Plaintiffs' requests to discover the subject documents and correspondence is nothing short of an attempt to circumvent the attorney client privilege and should be denied for the reasons discussed herein.

---

purpose was fundamentally to provide business consulting work. *See* DR 14-8 at 7. Like a distributor such as Cardinal Health or McKesson, and unlike Kroger, Purdue's business is centered around and imperative to the distribution of pharmaceutical products it produces, many of which are the controlled substances at issue in this litigation.

Bowles Rice

Special Master David Cohen
April 17, 2023
Page 5

                                      Sincerely,

                                      */s/ Ronda L. Harvey*

                                      Ronda L. Harvey

RLH:rsm

cc:   William Lorensen
       Ronda L. Harvey
       Ashley Hardesty Odell
       Anthony Irpino
       Jeff Gaddy
       James Young
       Renee Cook

15653443.1