# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No. 1:17-MD-2804 |
| *APPLIES TO ALL CASES* | Hon. Dan A. Polster |

### PLAINTIFFS' REPLY TO KROGER'S OBJECTION TO SPECIAL MASTER COHEN'S DISCOVERY RULING NO. 14, PART 32 ON KROGER'S PRIVILEGE CLAIMS

### Introduction

Kroger has not carried its burden of proving that the documents at issue are privileged.  To support a claim of privilege, Sixth Circuit jurisprudence requires proponents to prove that the "primary" or "predominant" purpose of the withheld material is to render or solicit *legal* advice and dictates that claims of privilege are to be narrowly construed.  Kroger's objection to Discovery Ruling 14, Part 32 fails to meet this standard.  On the contrary, the evidence demonstrates that the primary purpose of the materials was *business* advice, not legal advice.

The documents at issue involve Kroger's 2013 work with third-party suspicious order monitoring ("SOM") and regulatory compliance consultant BuzzeoPDMA ("Buzzeo").  Kroger hired and directed Buzzeo to analyze and make recommendations regarding Kroger's SOM and due diligence programs, to develop a SOM algorithm, to create SOM standard operating procedures ("SOPs"), and to provide SOM training to Kroger employees. Buzzeo's assignment was done to develop and implement SOM tools and procedures for Kroger.  Indeed, the Buzzeo-Kroger contract, as well as the audit reports Buzzeo issued, explicitly state that the purpose of Buzzeo's work was to "review, comment and provide consulting recommendations to help

strengthen [Kroger's] SOM and due diligence program."  Notably, neither the contract nor the audit reports state that Buzzeo's work was to assist counsel to provide legal advice.

## Procedural Background

On March 24, 2023, the Special Master issued Discovery Ruling No. 14, Part 32 (Doc. #: 5019) ("DR 14-32"), which overruled 8 of 11 Kroger privilege claims.[1]  On May 10, 2023, Kroger filed an objection ("Kroger Obj.") to certain determinations from DR 14-32.[2]  On May 16, 2023, Plaintiffs filed a motion to strike the Kroger Obj., on May 17, 2023 Kroger filed an opposition to the motion to strike, and on May 18, 2023 Plaintiffs filed a reply in support of the motion to strike. Doc. ##: 5032, 5035, 5040.  Plaintiffs hereby file this substantive reply to the Kroger Objection.

## Factual Background

The following is a timeline of pertinent facts relative to Buzzeo's regulatory compliance consulting work for Kroger:

- January 24, 2013: Buzzeo and Kroger enter into a "Customer Services Agreement", directing Buzzeo to "review, comment and provide consulting recommendations **to help strengthen [Kroger's] SOM and due diligence program**."[3]

- February 19-21, 2013: Buzzeo interviews Kroger personnel and inspects  Kroger facilities.[4]

---

[1] DR 14-32 at 4-7 (Kroger's overruled privilege claims identified as KRO-PRIV-91, -96, -116, -117, -118, -119, -130, and -167).

[2] Doc. #: 5029.  Kroger objects to the overruling of privilege on KRO-PRIV-116, -117, -118, and -119.  Kroger partially objects to the overruling of privilege on KRO-PRIV-167.  *Id*. at 17 ("Kroger withdraws its privilege claim with respect to most of the e-mail chain").

[3] Ex. 1 ("Agreement #1") at 8 (emphasis added).  Buzzeo's initial scope of work for Kroger included providing "recommendations for enhancing Customer's SOM computer analysis model, SOM process and procedures, including SOPs, order analysis / evaluation / disposition processes, order pending processes, and store reviews and investigations related to SOM."  *Id*.

[4] Ex. 2 ("March 12th Audit") at 2-3.

- <u>February 26-28, 2013</u>: Kroger employees send internal emails with a subject of "Pharmacy - Suspicious Order Monitoring Request" relating to Buzzeo's regulatory work for Kroger. *See* Kroger Obj. Ex. O (KRO-PRIV-167).

- <u>March 12, 2013</u>: Buzzeo issues its first SOM/compliance audit report, reconfirming the purpose of Buzzeo's work - to "review, comment and provide consulting recommendations **to help strengthen (Kroger's) SOM and due diligence program**."[5]

- <u>March 15, 2013</u>: Kroger's in-house counsel (Frances Tucker) forwards the March 12th Audit to 6 Kroger employees with various corporate supervisory responsibilities.[6]

- <u>March 25, 2013</u>: Buzzeo issues its second SOM/compliance audit report.[7]

- <u>March 25, 2013</u>: Ms. Tucker forwards the March 25th Audit to the same 6 Kroger employees to who she sent the March 12th Audit.  *See* Kroger Obj. Exs. M and N (KRO-PRIV-118, and -119).

- <u>April 5, 2013</u>: Kroger's Logistics Regional Controller (Keith Wilson) emails 17 Kroger employees advising that Kroger is **working with Buzzeo to develop a SOM program**.[8]

---

[5] Ex. 2 at 2 (emphasis added).  Moreover, the March 12th Audit found that "[t]he Kroger Company does not have a Suspicious Order Monitoring Program that is compliant with the DEA's regulations", specified several major deficiencies, and made various recommendations to revamp Kroger's SOM and due diligence programs.  *Id*. at 1, 4-9.

[6] Kroger Obj. Exs. K and L (KRO-PRIV-116, and -117).  The Kroger employees included Laura Raney – Manager of Pharmacy Regulatory Compliance, Keith Wilson – Logistics Regional Controller, Lincoln Lutz – VP of Pharmacy, Mark Woolf – Pharmacy Director, Frank Bruni – VP of Supply Chain and Logistics, Philecia Avery – Director of Pharmacy Operations.

[7] Ex. 3 ("March 25th Audit"). The March 25th Audit reconfirmed Buzzeo's work for Kroger to "review, comment and provide consulting recommendations to help strengthen (Kroger's) SOM and due diligence program." *Id*. at 2.  It also "reinforced" that "[t]he Kroger Company does not have a Suspicious Order Monitoring Program that is compliant with the DEA's regulations", and specified major SOM deficiencies for Kroger to address at its distribution centers.  *Id*. at 1, 3-6.

[8] Ex. 4 (4/5/2013 Wilson email, stating in pertinent part: "As I believe all of you are aware, we are working to develop a suspicious order monitoring (SOM) program for Kroger.  The key to this program is to have a method of reviewing orders BEFORE they are processed and shipped to the stores. To help us with this, we have contracted with BuzzeoPDMA a division of Cegedim.").

Over subsequent weeks Kroger "noted that the Suspicious Order Monitoring (SOM) process still needs to be further assessed and improved" and that it was "**working with BUZZEO to implement the necessary process**".  *See* Ex. 5 (5/28/2013 PCC meeting minutes) at 2 (emphasis added).  On June 4, 2013, Buzzeo and Kroger executed "Customer Services Agreement Statement of Work No. 2"– formalizing the continued implementation of the recommendations from the March 12th Audit and March 25th Audit (collectively, "Buzeo Audits").[9]  Just like Agreement #1 and each of the Buzzeo Audits, Agrement #2 does not provide any directive, purpose, or goal for Buzzeo to assist any of Kroger's counsel with providing legal advice. Consistent with Kroger's other attempts to mischaracterize the purpose of Buzzeo's work, the Kroger Obj. mislabels the Buzzeo Audits as the "Q&B Reports" (after Quarles & Brady).[10]

## Legal Standards – Burden of Proof & Narrow Construction of Privilege

"The burden of establishing the existence of the privilege rests with the person asserting it."[11]  "[W]here the party claiming the privilege fails to meet its burden . . . i.e., by way of affidavits, depositions, or equivalent proof—the party should be denied the protection of the privilege."[12] Further, "[c]laims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'"[13]  Indeed, Courts

---

[9] Ex. 6 ("Agreement #2").  Buzzeo's work for Kroger pursuant to Agreement #2 included: 1) developing a SOM algorithm, 2) supporting for the new SOM, 3) creating SOM SOPs, and 4) providing SOM training.  *Id*. at 1-3.  Buzzeo continued this SOM work over the ensuing months.

[10] There is no evidence that Quarles & Brady wrote any portion of the Buzzeo Audits.  Further, it was Kroger (and not Quarles & Brady) that coordinated, negotiated and contracted with Buzzeo.

[11] *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.2000).

[12] *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381–82 (6th Cir.2009).

[13] *In Re Columbia/HCA Healthcare Corporate Billing Practices*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).

have been reminded that since "testimonial exclusionary rules and privileges contravene the fundamental principle that the public...has a right to every man's evidence, any such privilege must be strictly construed."[14]

## Law and Argument

Kroger has not carried its burden of proving that the documents at issue are entitled to privileged treatment.  Most notably, Kroger has not proven that the primary purpose of the Buzzeo Audits and related communication was to provide legal advice as opposed to business/regulatory advice.  Additionally, Kroger has failed to carry its burden of proving that privilege over the documents at issue was not previously waived.  Further, Kroger objects to DR 14-32 based on alleged errors which it has manufactured.  Kroger's objections should be overruled.

**A.      Kroger Failed to Meet Its Burden of Proving that Legal Advice was the Primary Purpose of the Buzzeo Audits and Related Communications.**

Kroger is required to prove that the primary or predominant purpose of the Buzzeo Audits and related communication was for counsel to provide legal advice.[15]  Kroger has failed to do so. To begin with, Kroger has not shown what if any *legal* advice was provided by its attorneys based on the Buzzeo work.  It has also not proven how any legal advice predominated over the clear business purpose of the Buzzeo Audits.  This deficiency is particularly fatal to Kroger's privilege claim since the advice at issue – regulatory compliance analysis and recommendations - can be

---

[14] *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990).  *See also In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (The privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain *legal* advice.").

[15] *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) ("When a communication involves both legal and non-legal matters, [the Sixth Circuit] consider[s] whether the predominant purpose of the communication is to render or solicit legal advice.").  *See also Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007).

(and was here) provided by non-attorneys.[16]  Similarly, the materials are not privileged because the advice which Kroger sought and received was not from its attorneys, but rather from Buzzeo.[17]

The evidence proves that the overwhelming (if not exclusive) purpose of the Buzzeo Audits was to evaluate and strengthen Kroger's SOM and due diligence program.  The contract governing Buzzeo's work (Agreement #1) and each of the Buzzeo Audits expressly state such.  *See* Ex. 1 at 8, Ex. 2 at 2, Ex. 3 at 2.  Additional materials showing Kroger's internal communications and actions implementing Buzzeo's recommendations provide more proof.  *See* Ex. 4 at 1, Ex. 5 at 2.

Kroger relies on a May 10, 2023 post-ruling declaration from its in-house counsel Francis Tucker.  *See* Doc. #: 5029-1 ("Tucker Decl.").  Even if not stricken, this Tucker Decl. falls well short of carrying Kroger's burden of proving privilege. The declaration lacks critical details (e.g., what legal advice was given, why that advice could only be rendered by an attorney; how it predominated over the obvious business advice).  Rather, the Tucker Decl. makes generalized self-serving claims about the "primary purpose" of the Buzzeo Audits and that "[o]ver time" they helped to provide legal advice.[18]  As such, the Tucker Decl. is impermissibly vague and conclusory.[19]  The Tucker Decl. also lacks credibility and should be rejected as it significantly

---

[16] "This predominant purpose should be assessed dynamically and in light of the advice being sought or rendered, as well as **the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer**." *Alomari*, 626 F. App'x at 570 (emphasis added, citation and internal quotation marks omitted).

[17] *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ("If what is sought is not legal advice but only [consulting] service, ... or if the advice sought is the [consultant's] rather than the lawyer's, no privilege exists.").

[18] *See, e.g.*, Tucker Decl. at 2, ¶ 9 ("The primary purpose of Buzzeo's assessment was to provide Kroger's outside and in-house counsel with information necessary to facilitate the provision of legal advice to Kroger regarding compliance with DEA regulations."); *id.* at 3, ¶ 16 ("Over time, the Q&B Reports assisted me and Quarles & Brady in providing legal advice to Kroger's business personnel regarding compliance with DEA regulations.").

[19] *See* Doc. #: 3562 at 2-3 ("[S]imply *saying* a document contains legal advice – and not simply regulatory advice for a business purpose – is insufficient; it is [the proponent's] burden to show

contradicts her prior August 26, 2022 affidavit.[20]  When it suited Kroger's interest in opposing a sanctions motion 9 months ago Ms. Tucker did not recall anything about the Buzzeo Audits.  *Id.*

**B.      Kroger Failed to Carry its Burden of Proving That Privilege Was Not Waived.**

The Buzzeo Audits and the emails from Larry Cote transmitting same are still publicly available on the docket in *State of New Mexico, Ex Rel, Hector Balderas, Attorney General v. Purdue Pharma, L.P., et al.*, Case No.: D-101-CV-2017-0254 (the "New Mexico litigation").[21] For good reason, because the court in the New Mexico litigation found that Kroger **waived privilege** over the Buzzeo Audits due to its discovery misconduct.  The August 15, 2022 order in the New Mexico litigation found waiver because "the documents were knowingly withheld without disclosure" by Kroger.  *See* Ex. I to Kroger Obj. at 3.  The order specified that "[i]f Kroger had a privilege or immunity with respect to the [Buzzeo Audit] documents, Kroger waived any such claim by its failure to timely disclose the existence of the documents and properly assert such privilege or immunity claim".  *Id.*  Consequently, Kroger was ordered to produce the documents within one business day.  *Id.*

Kroger argues that the order finding waiver and resulting production of the Buzzeo materials in the New Mexico litigation should not apply in the MDL.  As support for its position, Kroger cites to Fed. R. Evid. 502(c).  However, in so doing, Kroger omits the most critical provision of the rule.  Fed. R. Evid. 502(c) states, in pertinent part, as follows:

---

how and explain why this is true."). (Emphasis in original).  *See also, e.g., Tucker v. Jefferson Operator, LLC*, 2013 WL 6592194, at *3 (E.D. Tenn. Dec. 16, 2013) ("An *ipse dixit* assertion, as is found in [Defendant's] declaration, does not establish the applicability of a privilege.").

[20] Ex. 7 ("Tucker Aff.") at 1, ⁋ 3, at 2, ⁋ 4 (Ms. Tucker did not recall retaining Buzzeo, did not recall the Buzzeo Audits, did not recall receiving them, and did not recall forwarding them to anyone).

[21] Ex. 8 (State of New Mexico 9/22/2022 publicly filed brief with exhibits) at PDF pp. 15-39.

> When the disclosure is made in a state proceeding **and is not the subject of a state-court order concerning waiver,** the disclosure does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver under this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred.

Fed. R. Evid. 502(c) (emphasis added).

Here, the disclosure was the subject of a state-court order concerning waiver.  *See* Ex. I to Kroger Obj. at 3.  "Once waived, the privilege is waived with respect to all communications involving the same subject matter."  *In re United Shore Financial Services, LLC*, 2018 WL 2283893 at *2 (6th Cir. Jan. 3, 2018).  Additionally, "[t]he party claiming an attorney-client privilege not only bears the burden of proving that the privilege applies, but must also show that the privilege has not been waived."  *Davis v. Drake*, 2014 WL 5795554 at *3-4 (N.D. Ohio Nov. 6, 2014).  Not only has Kroger failed to prove that the privilege has not been waived, but plaintiffs have shown that it has.

## C.    Kroger's Objections to the Special Master's Legal Applications are Meritless

The Kroger Obj. summarizes that DR 14-32 is erroneous for three reasons.  According to Kroger, Special Master Cohen erred in: 1) creating "a rigid distinction between business matters and legal advice", 2) basing his determinations on a false premise that "compliance with regulations is usually a business matter", and 3) "analogizing" the Buzzeo Audits to "the Dendrite audits that Cardinal commissioned".[22]  Kroger's alleged errors are factually and legally flawed.

### 1.    DR 14-32 correctly distinguished business advice from legal advice.

The Kroger Obj. asserts that Special Master Cohen misapplied the law of privilege and created a "bright-line rule that advice concerning regulatory compliance is business advice".  Kroger Obj. at 7.  As part of this alleged error, Kroger relies on an out-of-circuit case, *In re Kellogg*

---

[22] Kroger Obj. at 6-7.

*Brown & Root, Inc.*, 756 F.3d 754 (D.C. Cir. 2014), for the legal proposition that the "primary purpose test" is satisfied if "providing legal advice was ***one of the significant purposes*** of the attorney-client communication".  Kroger Obj. at 8 (emphasis in original).

Special Master Cohen did not create a "bright line rule" about regulatory compliance advice.  Rather, he made a factual determination based upon the evidence which showed the true purpose of the Buzzeo Audits and related communication.  Moreover, DR 14-32 is consistent with the long-established standard applied in this case *and by the Sixth Circuit* - that the proponent of the privilege carries the burden of proving that ***the*** "primary" or "predominant" purpose of the communication is to seek or convey legal advice.[23]  Kroger failed to meet this standard.  In fact, the evidence affirmatively proved that legal advice was *not* the primary or predominant (or even a significant) purpose of the materials at issue.

> 2.  The facts and law support the Special Master's characterization of regulatory compliance as usually a business matter.

Kroger claims that "[t]he law does not support the Special Master's conclusion that compliance with regulations is ***usually*** a business matter, not a legal one."  Kroger Obj. at 9 (emphasis in original, internal quotes and citation omitted).  Kroger further claims that "[n]one of the authority cited by the Special Master supports his conclusion" and that *Graff v. Haverhill N. Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio Nov. 13, 2012) is binding authority which mandates protection of the materials at issue.  *Id*. at 10-11.

Kroger's claims are factually and legally misplaced.  Defendants have entire departments of non-attorneys performing day-to-day regulatory work.[24]  Moreover, the concept of regulatory

---

[23] *See, e.g., Alomari*, 626 F. App'x at 570 (The Sixth Circuit's standard is "whether the predominant purpose of the communication is to render or solicit legal advice.").

[24] Ex. 2 at 2 (the Manager of Kroger's Pharmacy Regulatory Compliance at the time of the Buzzeo Audits was Laura Raney, a non-attorney).  She even co-coordinated Buzzeo's audits.  Ex. 5 at 1.

compliance (usually being a business matter) has justly meant that "simply saying a document contains legal advice – and not simply regulatory advice for a business purpose – is insufficient; it is [the proponent's] burden to show how and explain why this is true."  Doc. #: 3562 at 2-3.  This is supported by cases within the Sixth Circuit and throughout the country.[25]

Kroger's reliance on *Graff v. Haverhill N. Coke Co.*, is misplaced for multiple reasons.  Most notably, the *Graff* court found that the Defendant carried its burden, in part, because the special audit project was "discretely maintained and not intermingled with any other day-to-day business".[26]  This is far from what occurred here – Kroger using the Buzzeo Audits as blueprints for developing a SOM program.  Further, a subsequent Southern District of Ohio case explicitly rejected the broad reading of *Graff* suggested by Kroger herein.[27]

---

[25] *See, e.g., Intl. Brotherhood of Elec. Workers Loc. 212 v. American Laundry Machinery, Inc.*, No. 07–cv–324, 2009 WL 81114, at *3 (S.D. Ohio Jan.9, 2009) (The privilege does not extend to "communications made to secure or provide [regulatory] advice" when such is a necessary part of conducting the business.); *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 662 & 665 (D. Idaho 2018) (privileged denied where "there are also readily-apparent business needs related to operational safety and, in some circumstances, regulatory requirements"); *Marquette Transportation Company, LLC v. M/V Century Dream*, 2016 WL 11686640 at *2 (E.D. La. Dec. 13, 2016) (documents not proven to be privileged "as opposed to some other non-protected purposes, such as regulatory compliance, safety enhancement or other ordinary course of business function;"); *Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 4514092, at *9 (D. N.J. Sept. 30, 2008) ("The Court concludes that [the document] does not reflect the exercise of a predominantly legal function as opposed to business advice in a regulatory industry, and thus is not protected from disclosure by the attorney-client privilege.").

[26] 2012 WL 5495514 at *9-10.

[27] *See Shahbabian v. Trihealth, Inc.*, 2019 WL 6467213, at *4 (S.D. Ohio Dec. 2, 2019) ("The undersigned also discussed and specifically *rejected* the application of the legal authorities relied upon by [Defendant] in support of its assertion of privilege, including . . . an unpublished decision from this Court . . . *Graff v. Haverhill North Coke Co.*, Case No. 1:09-cv-670, 2012 WL 5495514 at **9-10 (S.D. Ohio Nov. 13, 2012) . . . Given the varied business and regulatory purposes . . . in the highly regulated industry of healthcare, the undersigned must respectfully disagree with the breadth of the *Graff* analysis in this particular context.  Such a broad reading of *Graff* also runs counter to the basic principle that privileges should be construed narrowly, and that much of the underlying accounting 'factual' data is not privileged.") (Emphasis in original).

     3.     <u>DR 14-32 correctly analogized the Buzzeo Audits to other similar compliance audits determined not to be privileged.</u>

Kroger asserts that "[t]he Special Master improperly relied on his reasoning from DR 14-5, which he erroneously applied to Kroger because he incorrectly assumed Kroger was similarly situated to Cardinal."  Kroger Obj. at 12.  However, Kroger misleadingly applies an overly narrow reading of the reasoning behind DR 14-5.  *Id*. at 12-13.  Further, Kroger's argument is the same as the one made by Par Pharmaceuticals and rejected in DR 14-8.  Doc. #: 1666 at 12-13.

DR 14-5 was not based exclusively on the premise that the Dendrite audit was intended to be shared.  Rather, the main reasoning of DR 14-5 was that "the entire thrust of the Audit was to determine the extent to which Cardinal's Suspicious Order Monitoring System met existing DEA regulatory requirements, and to identify and execute modifications necessary to improve compliance."  DR 14-5 at 7.  This is precisely what the Buzzeo Audits were for Kroger.

Kroger's argument also ignores that DR 14-5 was cited to by Special Master Cohen as just one example of similar SOM audit privilege rulings in the MDL.[28]  Thus, Kroger has failed to distinguish or even address the various other MDL privilege rulings which are similar to and support the findings from DR 14-32.[29]

---

[28] As accurately stated by Special Master Cohen, prior MDL privilege rulings on SOM audits have "consistently overruled claims of privilege on most such documents, finding they do not contain legal advice from attorney to client, or are primarily business-related."  *See* DR 14-32 at 3 (citing as examples DR 14-5; DR 14-7 (Doc. #: 1610) overruling CVS privilege claims on SOM audits).

[29] *See, e.g*., DR 14-8 (Doc. #: 1666) at 4 ("[T]he Reports explain a McKesson business function and assess its weaknesses, and are designed for use by compliance personnel to improve that business function.  Consequently, the Special Master concludes McKesson has not sustained its burden of establishing that the four withheld Audit Reports are entitled to protection of attorney-client privilege."); *Id*. at 7-8 (overruling Purdue privilege claims over compliance audit).

## <u>CONCLUSION</u>

Based on the foregoing jurisprudence, reasoning, and argument, Kroger's Objection to Discovery Ruling No. 14, Part 32 should be overruled.

Dated: May 24, 2023                    Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com


Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system and may be obtained by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger