UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*The Montgomery County Board of County Commissioners, et al. v. Cardinal Health, Inc., et al.,*<br>Case No. 1:18-op-46326<br>(*"Track Seven"*) | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster<br><br>**ORDER REGARDING KROGER'S OBJECTIONS TO SPECIAL MASTER RULING 14, PART 32 AND PLAINTIFF'S MOTION TO STRIKE KROGER'S OBJECTIONS** |

Before the Court are two related issues: (1) *Track Seven* Defendant, Kroger's, Objection to Special Master Cohen's Discovery Ruling Regarding Kroger's Privilege Claims (docket no. 5029), and (2) Plaintiff's Motion to Strike Kroger's Objection ("MTS") (docket no. 5032). Kroger filed a response in opposition to Plaintiff's MTS ("MTS Opposition") (docket no. 5035) and Plaintiff filed a reply (docket no. 5040). Plaintiff also filed a substantive response in opposition to Kroger's objection to the special master's ruling ("Obj. Opposition") (docket no. 5046). Having carefully reviewed the briefs and the discovery documents, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Strike. The Court **OVERRULES** Kroger's Objection on all but Kroger's specific request regarding KRO-PRIV-167, on which point Kroger's Objection is **SUSTAINED**. In all other respects, the Court **AFFIRMS** the special master's ruling.

### The Special Master's Ruling

On April 24, 2023, Special Master Cohen formalized and issued his Discovery Ruling No. 14, Part 32 Regarding Kroger's Privilege Claims ("DR 14-32") (docket no. 5019). As is

evident from the title, this was not the special master's first foray into discovery disputes regarding privilege claims in the MDL. In this iteration, Kroger sought to withhold several documents related to: (1) its retention of a company called BuzzeoPDMA ("Buzzeo") to conduct a series of regulatory-compliance audits; and (2) the email transmittal of the resulting audit reports to Kroger executive personnel. Kroger objects to the following Special Master rulings[1]:

- KRO-PRIV-117 and -119, "final SOMS compliance reports, dated March 12, 2013, and March 25, 2013, transmitted from Ronald W. Buzzeo (Chief Compliance Officer of Buzzeo) to Larry P. Cote of Quarles & Brady, LLP (Kroger's outside counsel)," are **not privileged** and must be produced.

- KRO-PRIV-116 and -118, "email chains in which Robert Williamson transmits the final March 12 and March 25 SOMS Reports to Larry Cote of Quarles & Brady," are **not privileged** and must be produced.

- KRO-PRIV-167, "a February 26-28, 2013, email chain between Frances Tucker and a group of Kroger business personnel . . . address[ing] various concerns surrounding implementation of Buzzeo's SOMS recommendations, including resources needed to implement the recommendations, accounting for the cost of Buzzeo's work, and gathering appropriate personnel," is **not privileged** and must be produced.

DR 14-32 at 3–7.

In its Objection to DR 14-32, Kroger argues that the special master erred in applying the law of privilege. Kroger asserts documents 116, 117, 118, and 119 are privileged, and document 167 should be redacted in so far as it provides legal impressions and opinions of Kroger's in-house counsel. With its Objection, Kroger appended 17 attachments, at least 7 of which (5 exhibits and 2 declarations) were never given to the Special Master. For this reason, Plaintiff moved to strike Kroger's Objection pursuant to several prior rulings of this Court.

---

[1] Kroger does not challenge the Special master's rulings with respect to KRO-PRIV-91, -96, -97, -130, -131, and -132. Accordingly, those rulings are hereby adopted and ordered by the Court. *See* Appointment Order at 4–5 (docket no. 69).

2

## Background

This Court has a long-standing procedural rule that it will not consider evidence or legal theories that are not first submitted to the special master. *See* Order regarding Discovery Ruling 14, Part 1 (docket no. 1349).

In that February 8, 2019, order, the Court wrote:

> Submitting new evidence, case law, or legal theories to the Court for *de novo* review in an objection to a special master's ruling without first submitting them to the special master undermines this purpose and wastes judicial resources. Therefore, going forward, the Court will strike any party's objection to a special master's ruling that raises, for the first time before the Court, new evidence or legal theories not first provided to the special master for consideration.

*Id.* at 2. Although the Court indicated it would strike an offending objection in its entirety, the Court has never taken this approach.

For example, on March 6, 2019, the PEC moved "to strike the objection of nonparty Healthcare Distribution Alliance [("HDA")] to Discovery Ruling No. 14, Part 3." Docket no. 1420. Although the PEC moved, as Plaintiff does here, to "strike HDA's **objection**," *id.* (emphasis added), the Court—in "granting" Plaintiffs' motion—instead merely struck the "*new evidence* produced by HDA for the Court's consideration." Order regarding Discovery Ruling 14, Part 3 at 2 (docket no. 1422) (emphasis added). In November 2020, the Court again characterized its February 2019 ruling as indicating the Court "would strike—and therefore would not consider— *new evidence or theories* not raised before the Special Master."[2] Order Regarding Rite Aid's Objection to the Special Master's Ruling on Jurisdictional Discovery at 5 (docket no. 3545) (emphasis added).[3]

---

[2] In that instance, the Court further concluded that its February 2019 ruling did not *require* the Court to ignore new evidence or theories. *Id.* The Court found that it could "efficiently address Rite Aid's [new] argument without requiring resubmission to the Special Master." *Id.*

[3] Still further, the Special Master also came to a similar conclusion in his Revised Discovery Ruling 14, Part 10. The Special Master wrote, "Strict adherence to this warning [from the Court's February 2019 Order] would require the

Because, as described below, Kroger failed to follow this long-standing rule, the Court, once again, reiterates and hereby rules that it will not consider new evidence or legal theories raised in an objection to a special master's ruling.

**Motion to Strike**

Turning now to Plaintiff's motion to strike, Plaintiff asserts—and is correct—that Kroger's two declarations and at least the first five exhibits (A–E) are newly presented to the Court without first being presented to the special master. Kroger argues that the special master implicitly granted it "an opportunity to 'present evidence' that would facilitate the Court's *de novo* review of [DR 14-32]." MTS Opposition at 1. In support, Kroger cites its April 27, 2023, letter brief to Special Master Cohen requesting until May 15 to file an objection. Kroger's letter stated, "[a]djusting Kroger's objection deadline to May 15 will not only conform with Rule 53's timing requirements, but also allow Kroger an opportunity to present evidence that will facilitate Judge Polster's *de novo* review of the order." MTS Opposition, Ex. A at 1 (Kroger's April 27, 2023, Letter Brief from Ryan Moore to SM Cohen). In response to this request, the special master (1) rejected the full extension Kroger requested, but instead (2) granted a shorter extension from May 1st to May 10th,[4] and (3) was completely silent on Kroger's request to present evidence to the Court.

If Kroger had indicated it would be presenting *new* evidence to the Court, Special Master Cohen likely would have denied Kroger's request. Kroger's assumption that his silence might properly be interpreted as permission to disregard a long-standing procedural ruling in this MDL

---

undersigned to ignore H.D. Smith's *new evidence* and clarified explanations, and stick with the initial conclusion." Revised DR 14-10 at 3 (docket no. 3071). The Special Master further admonished, "the Special Master warns the parties (again) that it is their duty to carry fully their burdens of persuasion and production at the outset when presenting issues to the undersigned." *Id.* at 4.

[4] *See* Order Overruling Objection to DR 23 at 3, n.6 ("Twenty-one days is the default maximum; not the minimum [pursuant to Fed. R. Civ. P. 53(f)(2)] as Walgreens suggests. The Special Master was within his discretion to set the deadline for objecting to his ruling at a time that he considered appropriate under the circumstances.").

was unreasonable. At the very least, Kroger could have—and, indeed, should have—requested clarification from the special master on this point. Accordingly, Plaintiff's motion is **GRANTED** with respect to these exhibits and declarations.[5] The Court will not consider them.[6]

Plaintiff further asserts that Kroger "raises new arguments and legal theories." MTS at 2. On this point the Court disagrees. Federal Rule of Civil Procedure 53(f)(4) requires the Court to "decide *de novo* all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). Kroger's Objection does not attempt to introduce a new legal theory. Rather, it asserts the special master "erred in applying the law of privilege." Objection at 6 (docket no. 5029). Under Rule 53, Kroger is entitled to challenge the special master's legal conclusions.[7]

Accordingly, Plaintiff's motion to strike Kroger's substantive legal argument is **DENIED**. The Court will address below the substance of Kroger's legal challenge to the special master's ruling.

---

[5] Besides the two declarations, Plaintiff does not expressly identify which exhibits constitute new evidence. Based on the letter briefing, Exhibits A–E were not before the special master. It is less clear, however, whether Exhibits F–J were before the special master. Exhibits H and J certainly were, as they are, themselves, letter briefs addressed to Special Master Cohen. Exhibit I, a New Mexico court order, was discussed in letter briefing and likely was before him as well. Exhibits K–O are the contested documents and were obviously before Special Master Cohen. Ultimately, the Court concludes that it will only not consider the new evidence presented in the two declarations and Exhibits A–E but will consider the remaining Exhibits as part of the record.

[6] The Court notes that none of the new evidence changes the Court's analysis below or the result.

[7] The Court notes that Kroger's legal challenge here is differently situated than a typical objection to a ruling of the special master. The special master has ruled on this legal issue—whether and to what extent advice regarding regulatory compliance has more of a business or a legal character—many times. *See, e.g.*, DR 14-1 (docket no. 1321); DR 14-5 (docket no. 1498); DR 14-8 (docket no. 1666); DR 14-15 (docket no. 3562). The Court has also explicitly affirmed and adopted some of those rulings. *See, e.g.*, Order regarding DR 14-5 (docket no. 1553); Order regarding DR 14-15 (docket no. 3584). The remaining rulings were adopted by operation of the Court's Appointment Order (docket no. 69) ("Absent timely objection, the orders, findings, reports, rulings, and recommendations of the Special Master shall be deemed approved, accepted, and ordered by the Court.")

Kroger's Objection thus seeks not only this Court's *de novo* review of the special master's ruling pursuant to FRCP 53, but it also effectively seeks reconsideration of the Court's own prior orders, and reconsideration has traditionally been a disfavored form of relief. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004); *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003) ("Motions for reconsideration are disfavored.").

**Kroger's Objection**

Kroger makes three arguments to support its assertion of legal error. First, Kroger asserts "the Special Master improperly created a rigid distinction between business matters and legal advice." Objection at 7. Second, Kroger questions the veracity of the statement: "compliance with regulations is usually a business matter." *Id.* Finally, Kroger alleges that Special Master Cohen never contemplated the factual distinctions between Kroger's audit and Cardinal's, which was the subject of Discovery Ruling 14, Part 5. *Id.*

When asserting attorney-client privilege, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821 at 825 (6th Cir. 2000). "Claims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir.1997)). The privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir.1986) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1975)).

A "communication is not privileged simply because it is made by or to a person who happens to be an attorney. To be privileged, the communication must have the *primary* purpose of soliciting legal, rather than business, advice." *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (internal quotation marks and citations omitted, emphasis in original). "It is now generally accepted that communications between an attorney and client of primarily a business nature are outside the scope of the privilege." *Glazer v. Chase Home Finance LLC*, 2015 WL 12733394 at *4 (N.D. Ohio Aug. 5, 2015).

> When a communication involves both legal and non-legal matters, [the Sixth Circuit] "consider[s] whether the predominant purpose of the communication is to render or solicit legal advice." This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."

*Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420–21 (2d Cir.2007)).

Kroger relies on *In re Kellogg Brown & Root, Inc.* for the proposition that that "primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other." 756 F.3d 754, 759 (D.C. Cir. 2014). This D.C. Circuit opinion, does not displace relevant, binding Sixth Circuit precedent which follows the predominant or primary purpose test for mixed-purpose documents. *See Alomari*, 626 F. App'x at 570. Moreover, even if this Court was not bound by controlling precedent from its own circuit, it is not persuaded by the *Kellogg* court's definition of the word "primary."[8]

Next Kroger argues that "[t]he law does not support the Special Master's conclusion that 'compliance with regulations is ***usually*** a business matter, not a legal one.'" Objection at 9 (quoting DR 14-32 at 3) (emphasis in original). This Court disagrees. Corporations, like Kroger, frequently

---

[8] "Primary" traditionally means first or most important. *See Primary*, Merriam-Webster On-Line Dictionary (https://www.merriam-webster.com/dictionary/primary) ("of first rank, importance, or value: PRINCIPAL (*the primary purpose*)"); *see also Predominant*, Merriam-Webster On-Line Dictionary (https://www.merriam-webster.com/dictionary/predominant) ("having superior strength, influence, or authority: PREVAILING"). The *Kellogg* court, however, opines that a mixed-use document may have multiple *primary* purposes. *See Kellogg*, 756 F.3d at 759–60. ("It is [] not correct for a court to presume that a communication can have only one primary purpose. It is likewise not correct for a court to try to find *the* one primary purpose in cases where a given communication plainly has multiple purposes. . . . [The primary purpose test] boils down to whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication."). A more natural understanding of the primary purpose test—and the one endorsed by the Sixth Circuit—is that when a communication has multiple purposes, a court will look thoughtfully at the advice being sought or rendered and determine if the single overarching purpose of that advice is legal in nature. *See Alomari*, 626 F. App'x at 570. If so, then the privilege applies.

7

have regulatory-compliance departments staffed by non-attorneys.[9] If compliance with regulations was usually a legal matter, rather than a business one, that would not be the case.

This Court has previously noted that:

> While the black letter law is clear and easy to recite, it is not easy to apply in this case. The burden is on the proponent to prove that the documents are privileged; and to be privileged, the communication must have the primary purpose of soliciting or receiving legal, as opposed to business, advice. That line is sometimes very difficult to draw when, as here, [a company] operates in a heavily regulated business and regulatory compliance advice from in-house counsel is therefore part of [the company's] day-to-day business operations.

Order Regarding Discovery Ruling 14, Part 15 (docket no. 3584). Kroger operates a pharmacy and is a registrant under the Controlled Substances Act ("CSA"). Compliance with the CSA's and its implementing regulations is necessarily a part of Kroger's day-to-day ordinary business operations.[10]

Therefore, in order for the attorney-client privilege to apply to its regulatory compliance advice, Kroger must do more than merely assert a subjective belief the advice is privileged. *See* DR 14-15 at 2–3 ("simply saying a document contains legal advice—and not simply regulatory advice for a business purpose—is insufficient; it is [the company's] burden to show how and explain *why* this is true.") (emphasis added). In other words, Kroger needed to produce some evidence "of the [legal] advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer." *Alomari*, 626 F. App'x at 570. Kroger has failed to do so.

---

[9] Plaintiff points out, for example, that Kroger's Manager of Pharmacy Regulatory Compliance and Government Relations, Laura Raney, is a non-attorney. *See* Obj. Opposition at 9 n.24.

[10] Kroger implies that because its pharmacies are only a small part of its larger grocery business, that compliance with pharmacy regulations is not part of its day-to-day business operations. *See* Objection at 2. This argument is not well-taken. Kroger's pharmacy business may be a small part of its business, but it is a part of its business nonetheless. Kroger's pharmacy business must comply with regulations on a daily basis.

Kroger also asserts that the special master's reliance on *Graff* is misplaced. Objection at 11–12 (citing *Graff v. Haverhill N. Coke Co.,* No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio Nov. 13, 2012)). Kroger is correct that the *Graff* court concluded that certain audits provided by outside consulting firms were privileged. However, in reviewing the special master's prior rulings as they apply to the attorney-client privilege, the special master cites *Graff* primarily for the legal principle that "federal courts place a heavy burden on the proponent [of the privilege] to make a clear showing that counsel is acting in a professional legal capacity and that the document reflects legal, as opposed to business, advice." DR 14-1 at 2; DR 14-5 at 10; *Graff*, 2012 WL 5495514 at *21 (quoting *Amway Corp. v. Procter & Gamble Co.*, No. 1:98–cv–726, 2001 WL 1818698, at *5 (W.D.Mich. April 3, 2001)).

A careful review of the *Graff* opinion reveals that attorney client privilege determinations are a fact-intensive inquiry. *See id.* at *11–*28 (carefully addressing the individualized facts of many withheld documents and ruling that attorney-client privilege applies or does not apply as appropriate to each document); *see also* Order Regarding Discovery Ruling 14, Part 5 at 1 (quoting *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir. 2000) ("The inquiry into whether documents are subject to a privilege is a highly fact-specific one.")).

Furthermore, if the case-specific and fact-intensive *Graff* analysis of regulatory audits were to be applied broadly to all audits as a general principle, companies in highly regulated industries would effectively be permitted to conduct their normal business operations in complete secrecy behind the veil of attorney-client privilege. *See Shahbabian v. TriHealth, Inc.*, No. 1:18-CV-790, 2019 WL 6467213, at *4 (S.D. Ohio Dec. 2, 2019) ("Applying Graff broadly, TriHealth could claim attorney-client privilege for any documentation from any type of consultant, so long as the consultant was engaged by or provided information to an attorney (whether corporate or outside

counsel), and as long as counsel was retained (at least in part) to assist with regulatory compliance. Given the varied business and regulatory purposes of FMV analysis of physician compensation in the highly regulated industry of healthcare, the undersigned must respectfully disagree with the breadth of the *Graff* analysis in this particular context.").[11] Such a result would run afoul of the Sixth Circuit's explicit guidance in *In re Columbia* that "[c]laims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'" *In re Columbia*, 293 F.3d at 294.

Viewed in that light, very little of Kroger's production, even considering the late-filed declarations and exhibits, contained privileged legal advice of counsel that could not have been given by a non-lawyer or provided without consulting legal authorities or applying legal principles. *See In re Cnty. of Erie*, 473 F.3d at 419 ("Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct.") (citing 1 Paul R. Rice, *Attorney Client Privilege in the United States* § 7:9 (2d ed.1999)). The primary, or even substantial, purpose of the regulatory audits was not to seek legal advice.[12] It was Kroger's burden to present evidence to the contrary. Even if, as Kroger argues, the Buzzeo audits were conducted to help provide legal advice over time (Objection at 5), Kroger hasn't adequately identified the nature of the legal advice, why it may have required consultation with legal authorities or application of legal principles, or why it could only have been provided by an attorney. *See Alomari*, 626 F. App'x at 570.

Finally, Kroger argues Special Master Cohen did not consider the factual distinctions between its own SOMS audits and those of Cardinal's. Kroger distinguishes its audits by arguing

---

[11] This Court "respectfully disagrees with the breadth of the Graff analysis in this particular context" as well. *Id.*

[12] Kroger's withheld audits and emails do not even pass the D.C. Circuit's "substantial purpose test" were this Court to apply it.

that while Cardinal characterized its Dendrite audit as being conducted by "an independent third-party" to the DEA, Kroger made no such representations about Buzzeo. *See* Objection at 12–13. While Kroger may be able to distinguish its audits on this basis, it is of no consequence because the special master's ruling was not based on Cardinal waiving any privilege. Rather, the special master concluded, "[t]he overwhelming nature of Dendrite's activities were to provide business analysis and advice to Cardinal so that it could meet its regulatory obligations—not to assist Cadwalader in providing legal analysis and advice to Cardinal." DR 14-5 at 13; *affirmed* Order regarding Discovery Ruling 14, Part 5 at 2 ("The Court finds that Special Master Cohen properly reviewed the relevant facts, correctly applied the relevant law, and achieved the right result."). In Cardinal's case, the SOMS audits were commissioned to "determine the extent to which [the] Suspicious Order Monitoring System met existing DEA regulatory requirements, and to identify and execute modifications necessary to improve compliance." *Id.* at 7. In that respect, Kroger's audits are virtually identical. The Court concludes that Special Master Cohen properly applied privilege law in making his Discovery Ruling No. 14, Part 32. The special master's rulings with respect to KRO-PRIV-116, -117, -118, and -119 are affirmed.

In its Objection, Kroger also withdraws its privilege claim with respect to all but a single paragraph of KRO-PRIV-167. *See* Objection at 17. Kroger asserts that the paragraph at issue is its "in-house counsel's legal impressions and opinions," and requests that the Court redact the identified paragraph. In its response, Plaintiff does not specifically address Kroger's redaction request. After a careful review of the document, the Court agrees that the first paragraph of the February 26, 2013, email from Ms. Tucker at 5:51 p.m. contained in KRO-PRIV-167 may be redacted.

Accordingly, for the reasons stated above, Plaintiff's motion to strike is **GRANTED IN PART** and **DENIED IN PART**. Furthermore, after a careful review of the applicable law and relevant facts, Kroger's Objection is **OVERRULED** with the exception that the paragraph identified by Kroger contained in KRO-PRIV-167 may properly be redacted. In all other respects, however, Discovery Ruling No. 14, Part 32 is **AFFIRMED.**

       **IT IS SO ORDERED.**

     /s/ Dan Aaron Polster  June 7, 2023
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**