## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No.: 2804 |
| THIS DOCUMENT RELATES TO: | Case No.: 17-md-2804 |
| *"All Cases"* | Judge Dan Aaron Polster |
| | **ORAL ARGUMENT REQUESTED** |

## REPLY IN FURTHER SUPPORT OF KROGER'S OBJECTION
## TO SPECIAL MASTER COHEN'S DISCOVERY RULING NO. 14, PART 32
## REGARDING KROGER'S PRIVILEGE CLAIMS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ............................................................................................................3

    I.      Special Master Cohen Misapplied the Law of Attorney-Client Privilege, the Most Sacred of All Privileges ............................................................3

          A.     In Applying the Primary Purpose Test, Special Master Cohen Improperly Drew a Bright-Line Distinction Between Business Advice and Legal Advice..............................................................3

          B.     It was Error for the Special Master to Conclude that Compliance with Regulations is "Usually" a Business Matter, not a Legal One ...........5

    II.     Kroger Carried its Burden in Demonstrating Privilege ...........................6

          A.     The Plaintiffs' Attempts to Attack the Tucker Declaration are Meritless..................................................................................6

          B.     Special Master Cohen Improperly Analogized to the Cardinal Audits.......................................................................................10

    III.    Kroger Did Not Waive its Privilege Claim.............................................11

          A.     The New Mexico State Court Order is a Sanctions Order and Construing it as an Order Concerning Waiver Would Severely Prejudice Kroger ....................................................................12

          B.     Neither the Law of this MDL Nor the Purpose of Federal Rule of Evidence 502(c) is Served by Construing the New Mexico State Court Order as Barring Kroger's Privilege Claims....................................13

CONCLUSION.......................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alomari v. Ohio Dep't of Pub. Safety*,
    626 F. App'x 558 (6th Cir. 2015) ...........................................................................1, 4

*In re Am. Realty Cap. Props., Inc. Litig.*,
    No. 15-MC-40 (AKH), 2017 WL 11641957 (S.D.N.Y. Aug. 14, 2017)...................................4

*Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. 93–3084, 1994 WL 58999 (6th Cir. Feb. 25, 1994)............................................................9

*Banks v. Off. of the Senate Sergeant-at-Arms*,
    233 F.R.D. 1 (D.D.C. 2005)....................................................................................................14

*Candy v. IRS (In re Candy)*,
    625 B.R. 701 (Bankr. W.D. Tenn. 2021) ..............................................................................12

*Cashman Equip. Corp. v. Rozel Operating Co.*,
    No. 08-363-C-M2, 2009 U.S. Dist. LEXIS 70264 (M.D. La. Aug. 11, 2009) .......................14

*City of Roseville Emps.' Ret. Sys. v. Apple Inc.*,
    No. 19-cv-02033-YGR (JCS), 2022 WL 3083000 (N.D. Cal. Aug. 3, 2022) ..........................8

*In re Cnty. of Erie*,
    473 F.3d 413 (2d Cir. 2007)......................................................................................................4

*Crabtree v. Experian Info. Sols., Inc.*,
    No. 1:16-cv-10706, 2017 U.S. Dist. LEXIS 173905 (N.D. Ill. Oct. 20, 2017) .......................9

*CSC Recovery Corp. v. Daido Steel Co.*,
    No. 94 CIV. 9214 (LAP) (THK), 1997 WL 661122 (S.D.N.Y. Oct. 22, 1997) ......................7

*Edwards v. Scripps Media, Inc.*,
    No. 18-10735, 2019 U.S. Dist. LEXIS 97006 (E.D. Mich. June 10, 2019) ............................4

*In re Gen. Motors LLC Ignition Switch Litig.*,
    80 F. Supp. 3d 521 (S.D.N.Y. 2015)....................................................................................3, 4

*Graff v. Haverhill N. Coke Co.*,
    No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio Nov. 13, 2012) ...............................5, 6, 9, 10

*In re Honeywell Int'l, Inc., Sec. Litig.*,
    230 F.R.D. 293 (S.D.N.Y. 2003) ..........................................................................................15

*Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*,
No. 08 cv 1559 BTM, 2010 WL 2404664 (S.D. Cal. June 11, 2010) ...................................15

*Int'l Bhd. of Elec. Workers Loc. 212 v. Am. Laundry Mach., Inc.*,
No. 1:07–cv–324, 2009 WL 81114 (S.D. Ohio Jan. 9, 2009) ...................................................6

*In re Kellogg Brown & Root, Inc.*,
756 F.3d 754 (D.C. Cir. 2014) ..............................................................................1, 3, 4, 10

*In re King's Daughters Health Sys., Inc.*,
31 F.4th 520 (6th Cir. 2022) ....................................................................................................7

*Marquette Transp. Co., LLC v. M/V Century Dream*
No. 16-522, 2016 WL 11686640 (E.D. La. Dec. 13, 2016) ....................................................6

*Myers v. City of Centerville*,
No. 3:20-CV-00402, 2023 WL 195427 (S.D. Ohio Jan. 17, 2023), *objections
overruled*, No. 3:20-CV-402, 2023 WL 3611459 (S.D. Ohio May 24, 2023) .........................4

*Redlin v. Gross Pointe Pub. Sch. Sys.*,
921 F.3d 599 (6th Cir. 2019) ................................................................................................12

*Rowe v. E.I. duPont de Nemours & Co*
Nos. 06-1810-RMB-AMD, 06-3080-RMB-AMD, 2008 WL 4514092 (D.N.J.
Sept. 30, 2008) .........................................................................................................................5

*Shahbabian v. TriHealth, Inc.*,
No. 1:18-cv-790, 2019 WL 6467213 (S.D. Ohio Dec. 2, 2019) ...........................................5, 6

*Sherwood v. BNSF Ry. Co*
325 F.R.D. 652 (D. Idaho 2018) ..............................................................................................6

*Tomlin v. Smith & Nephew, Inc.*,
No. 3:19-CV-354, 2020 WL 5230830 (S.D. Ohio Sept. 2, 2020) ...........................................3

*Trudeau v. N.Y. State Consumer Prot. Bd.*,
237 F.R.D. 325 (N.D.N.Y. 2006) ...........................................................................................14

*United States Fire Ins. Co. v. City of Warren*,
No. 2:10-CV-13128, 2012 U.S. Dist. LEXIS 58353 (E.D. Mich. Apr. 26,
2012) .......................................................................................................................................15

*United States v. Eaton Corp.*,
No. 12 MC 24, 2012 WL 3486910 (N.D. Ohio Aug. 15, 2012)...........................................7, 8

*United States v. Mount Sinai Hosp.*,
185 F. Supp. 3d 383 (S.D.N.Y. 2016).......................................................................................4

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981)............................................................................................3, 4

**Statutes and Regulations**

Fed. R. Civ. P. 26(b)(5)....................................................................................14

Fed. R. Evid. 502(c).................................................................................. *passim*

Restatement (Third) of the Law Governing Lawyers § 72 (2000)  .................................................4

## PRELIMINARY STATEMENT

In ordering the production of the Privileged Materials, "the Special Master adhered to 'the distinction between legal advice and business advice, applying the principle that compliance with regulations is usually a business matter, not a legal one.'" Order at 3.[1]  As demonstrated in Kroger's objection to the Order, that so-called "principle" finds no support in the law.  *See* Obj. at 6–12.[2]  Furthermore, the Special Master misapplied the primary purpose test, which cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other hand.  *See* Obj. at 7–9.  In fact, the "rigid distinction" applied by Special Master Cohen "would eradicate" the attorney-client privilege for businesses that are legally required to maintain compliance programs.  *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014).[3] Simply put, Special Master Cohen failed to properly apply privilege law.

Plaintiffs take issue with Kroger's reliance on *Kellogg*, among other cases, claiming that Kroger's position is inconsistent with Sixth Circuit precedent.  *See* Opp. at 9.  But that is simply not true.  When first articulating the primary or predominant purpose test in *Alomari v. Ohio Department of Public Safety*, 626 F. App'x 558 (6th Cir. 2015), the Sixth Circuit endorsed a Second Circuit decision that held (i) parties are not required to demonstrate that the legal advice was the *sole* purpose of the disputed materials, and (ii) assessments with respect to compliance with legal obligations are legal advice.  That is precisely the reasoning that warrants vacating the Special Master's Order.

---

[1] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Objection.

[2] The Objection refers to *Kroger's Objection to Special Master Cohen's Discovery Ruling No. 14, Part 32 Regarding Kroger's Privilege Claims* [Dkt. No. 5029].  The Opposition refers to *Plaintiffs' Reply to Kroger's Objection to Special Master Cohen's Discovery Ruling No. 14, Part 32 on Kroger's Privilege Claims* [Dkt. No. 5046].

[3] Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

Here, Kroger has carried its burden of demonstrating that the Privileged Materials are protected from disclosure by attorney-client privilege.  Upon the advice of outside counsel, Kroger's legal department directed Buzzeo to conduct an investigation and assessment so that Kroger's outside and in-house counsel could provide legal advice to Kroger's business personnel to ensure that Kroger remained in compliance with DEA regulations and did not become the target of an investigation.  The documents associated with that investigation and assessment are privileged.

Kroger also carried its burden of demonstrating that it has not waived the privilege.  Kroger has not attempted to gain a tactical advantage by affirmatively using the Privileged Materials, nor has there been any inadvertent disclosure.  Kroger was ordered to produce the Privileged Materials by a New Mexico state court twenty-two days before trial, as a sanction for previously failing to identify those documents on a privilege log following Special Master Cohen's orders regarding other defendants' privilege claims in this MDL.  It would be inconsistent with the Special Master' *Order Regarding Production of "Similar" Documents with Privilege Claims* [Dkt. No. 3633] and the purpose of Federal Rule 502(c)—to apply the law that is most protective of privilege—to construe the New Mexico state court's sanctions order as an order concerning waiver.  Further, given the current stage of this litigation, there is absolutely no prejudice to the Plaintiffs in allowing this Court to decide the privilege issue.  In contrast, finding waiver—based on a deficient privilege log—would by highly prejudicial to Kroger, and require post-judgment appellate review of every subsequent decision in this MDL that is affected by that finding.

## ARGUMENT

I.    **SPECIAL MASTER COHEN MISAPPLIED THE LAW OF ATTORNEY-CLIENT PRIVILEGE, THE MOST SACRED OF ALL PRIVILEGES.**

    A.    **In Applying the Primary Purpose Test, Special Master Cohen Improperly Drew a Bright-Line Distinction Between Business Advice and Legal Advice.**

The Plaintiffs fail to contest—and therefore concede—that, in applying the primary purpose test, a bright-line rule that advice concerning regulatory compliance is business advice would "fly in the face" of binding Supreme Court precedent from *Upjohn Co. v. United States*, 449 U.S. 383 (1981).  *See* Obj. at 7.[4]  When "sensibly and properly applied," the primary purpose test "cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other."  Obj. at 7 (quoting *Kellogg*, 756 F.3d at 759).  Indeed, the "rigid distinction" applied by Special Master Cohen—and advocated for here by the Plaintiffs—"would *eradicate* the attorney-client privilege for internal investigations conducted by businesses that are required by law to maintain compliance programs . . . ."  *Kellogg*, 756 F.3d at 759.  Rather than attempting to substantively engage with *Kellogg*'s legal analysis, the Plaintiffs attempt to discredit Kroger's reliance on now-Justice Kavanaugh's opinion simply because it is an "out-of-circuit case[.]"  Opp. at 8–9.  But *Kellogg*'s reasoning is "compelled" by "the Supreme Court's logic in *Upjohn*."  *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015).[5]

Therefore, not only does *Kellogg* reflect the proper application of Supreme Court precedent, but—contrary to the Plaintiffs' claim (*see* Opp. at 9)—it also is *completely consistent*

---

[4] *See, e.g.*, *Tomlin v. Smith & Nephew, Inc.*, No. 3:19-CV-354, 2020 WL 5230830, at *2 (S.D. Ohio Sept. 2, 2020) (finding that by not responding to defendant's argument, the plaintiff impliedly conceded that some of its claims were abrogated by the state regulation).

[5] Rather than attempting to grapple with this legal reality, the Plaintiffs argue that Special Master Cohen's Order was consistent with the "long-established standard" applied in this MDL.  Opp. at 9.  That the Special Master's improper bight-line distinction between business and legal advice may be "long-established" does not make it any less erroneous.

with binding Sixth Circuit precedent from *Alomari*, 626 F. App'x at 570. In *Alomari*, the Sixth Circuit adopted, by direct quotation, the Second Circuit's formulation of the primary purpose test from *In re County of Erie*, 473 F.3d 413, 420 (2d Cir. 2007).[6] In *Erie*, the Second Circuit made clear that to demonstrate privilege, a party is not required to show that the communication was made "**solely** for the purpose of the corporation seeking legal advice . . . ." 473 F.3d at 420, n.7 (emphasis in original). More importantly, however, the Second Circuit found that "[w]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice." *Erie*, 473 F.3d at 423. In other words, *Kellogg*, *Erie*, and *Alomari* are in complete alignment as to the proper application of the primary purpose test—legal advice regarding regulatory compliance matters are privileged, even where a legal and non-legal purpose may have motivated the communication.[7] This Court should reject the Plaintiffs' unsupported attempt to claim otherwise. *See* Opp. at 8–9.

---

[6] "When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.'" *Alomari*, 626 F. App'x at 570 (quoting *Erie*, 473 F.3d at 420).

[7] Moreover, since the D.C. Circuit issued its decision, *Kellogg*'s reasoning has been widely adopted by district courts within the Second and Sixth Circuits. *See, e.g.*, *Edwards v. Scripps Media, Inc.*, No. 18-10735, 2019 U.S. Dist. LEXIS 97006, at *3–4 (E.D. Mich. June 10, 2019) ("[T]he attorney-client privilege applies," "[s]o long as obtaining or providing legal advice was one of the significant purposes of the internal investigation . . . even if there were also other purposes for the investigation."); *Myers v. City of Centerville*, No. 3:20-CV-00402, 2023 WL 195427, at *4 (S.D. Ohio Jan. 17, 2023), *objections overruled*, No. 3:20-CV-402, 2023 WL 3611459 (S.D. Ohio May 24, 2023) (applying *Kellogg* to hold that disputed documents were privileged); *In re Gen. Motors*, 80 F. Supp. 3d at 530 (finding *Kellogg*'s "analysis of the 'primary purpose' test as applied to internal investigations" to be "consistent with the Second Circuit's analysis in *County of Erie*" and "consistent with—if not compelled by—the Supreme Court's logic in *Upjohn*."); *United States v. Mount Sinai Hosp.*, 185 F. Supp. 3d 383, 390 (S.D.N.Y. 2016) ("The party invoking the attorney-client privilege, therefore, need only show that the provision of legal advice was a 'primary purpose' of the investigation and of the communications as to which the privilege is claimed."); *In re Am. Realty Cap. Props., Inc. Litig.*, No. 15-MC-40 (AKH), 2017 WL 11641957, at *3 (S.D.N.Y. Aug. 14, 2017) ("[S]o long as obtaining or providing legal advice was *one of the significant purposes* of the internal investigation, the attorney-client privilege applies, even if there were also other purposes for the investigation."). Indeed, "American decisions agree that the privilege applies if *one of the significant purposes* of a client in communicating with a lawyer is that of obtaining legal assistance." *See* Restatement (Third) of the Law Governing Lawyers § 72, Reporter's Note, cmt. c (2000).

**B.**     **It was Error for the Special Master to Conclude that Compliance with Regulations is "Usually" a Business Matter, not a Legal One.**

The law does not support the Special Master's guiding "principle" that "compliance with regulations is *usually* a business matter, not a legal one." Order at 3; *but see* Obj. at 9–12. Rather than identify authority to support the Special Master's so-called "principle," the Plaintiffs misrepresent the findings and reasoning from a series of cases that supposedly support their position. *See* Opp. at 10. For example, the Plaintiffs argue that Kroger's reliance on *Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 WL 5495514 (S.D. Ohio Nov. 13, 2012)— which held that audits created by outside consulting firms to asses compliance with EPA regulatory requirements were privileged (*id.* at *9, *13)—is "misplaced" because "a subsequent Southern District of Ohio case explicitly rejected the broad reading of *Graff* suggested by Kroger . . . ." Opp. at 10 (citing *Shahbabian v. TriHealth, Inc.*, No. 1:18-cv-790, 2019 WL 6467213 (S.D. Ohio Dec. 2, 2019)). This argument is a red herring. In *Shahbabian*, the documents at issue were objective, "factual" calculations of the fair market value of doctors' salaries, as required by the doctors' employment contract, and were generated "for use in the contract negotiations" with third parties. 2019 WL 6467213, at *1, *3, *4. Kroger agrees that such documents are not privileged. *See* Obj. at 12–14.[8] But the *Shahbabian* court itself acknowledged that the documents in *Graff*, like the Q&B Reports here, were created to "provide legal advice on [defendant's] compliance with regulatory matters" and, thus, were fully protected by the asserted attorney-client privilege. *Shahbabian*, 2019 WL 6467213, at *4 (citing *Graff*, 2012 WL 5495514, at *9–10). Therefore,

---

[8] Likewise, in *Rowe v. E.I. duPont de Nemours & Co.*, the disputed materials—like the Cardinal "audits" here—were *created* with the purpose of being shared with a third party, the EPA. Nos. 06-1810-RMB-AMD, 06-3080-RMB-AMD, 2008 WL 4514092, at *8–9 (D.N.J. Sept. 30, 2008). In contrast, the Q&B Reports and related materials were "discretely maintained"—Kroger's in-house counsel expressly stated, "[t]his report is not for wide dissemination and is definitely not to be provided to a third party of any kind." *See, e.g.*, Obj. Ex. K (KRO-PRIV-116).

*Shahbabian* neither supports the Special Master's reasoning nor undermines Kroger's reliance on *Graff*.[9]

Similarly, in an attempt to support Special Maser Cohen's flawed analysis, the Plaintiffs cite to *International Brotherhood of Electrical Workers Local 212 v. American Laundry Machinery, Inc.*, No. 1:07–cv–324, 2009 WL 81114, at *2 (S.D. Ohio Jan. 9, 2009).  That case, however, *supports* Kroger's position.  There, the magistrate held that objective "testing and sampling information" were *not* privileged, but also held that "requests for advice," as well as "options and legal advice" were protected from disclosure by attorney-client privilege.  *See id.* at *1, *3.  That is precisely the distinction that Kroger submits requires vacating the Special Master's Order. *See* Obj. at 15–17 & n.10.  Upon review, the district court in *International Brotherhood* held that the magistrate's privilege rulings were "well-reasoned and correct." *Id.* at *3.  Kroger agrees, but *International Brotherhood* does nothing to advance the Plaintiffs' position.[10]

This Court should find that Special Master Cohen's conclusion that "compliance with regulations is *usually* a business matter, not a legal one[,]" Order at 3, finds no support in the law and that the Plaintiffs have failed to demonstrate otherwise.

## II.      KROGER CARRIED ITS BURDEN IN DEMONSTRATING PRIVILEGE.

### A.      The Plaintiffs' Attempts to Attack the Tucker Declaration are Meritless.

Unable to find legal support for the Special Master's erroneous bright-line "principle," the Plaintiffs offer a series of arguments that Kroger failed to prove that the primary or predominant

---

[9] In any event, Special Master Cohen has already recognized *Graff* as persuasive authority in this MDL.  *See DR 14-5* [Dkt. No. 1498] at 10, 12, 16.

[10] Nor do the other cases cited by the Plaintiffs suggest, let alone mandate, a different result.  In *Sherwood v. BNSF Railway Co.*, the disputed documents were company policies—not reports of an investigation concerning compliance with applicable regulations—and Kroger is not claiming privilege over such documents here.  325 F.R.D. 652, 662, 665 (D. Idaho 2018).  And in *Marquette Transportation Co., LLC v. M/V Century Dream*, the court simply concluded that it was unable to determine whether a sufficient showing had been made to establish privilege.  No. 16-522, 2016 WL 11686640, at *2 (E.D. La. Dec. 13, 2016).

purpose of the Privilege Materials was to provide legal advice. *See* Opp. at 5–7. This Court should reject each of the Plaintiffs' conclusory arguments in turn.

*First*, the Plaintiffs make the preposterous claim that Kroger failed to carry its burden because "Kroger has not shown *what* if any *legal advice* was provided by its attorneys based on the Buzzeo work." Opp. at 5. Parties claiming privilege are not required to *disclose* the resulting legal advice to carry their burden. *See, e.g.*, *United States v. Eaton Corp.*, No. 12 MC 24, 2012 WL 3486910, at *6, *9 (N.D. Ohio Aug. 15, 2012) (parties must describe the nature of the document "*without revealing information itself privileged or protected*"); *CSC Recovery Corp. v. Daido Steel Co.*, No. 94 CIV. 9214 (LAP) (THK), 1997 WL 661122, at * 5 (S.D.N.Y. Oct. 22, 1997) (finding that the defendant "was not required to reveal its attorney's advice" to assert the attorney client privilege). Indeed, if parties were required to *disclose* such information in order to *claim* privilege, the result would be voluntary waiver in every privilege dispute. *In re King's Daughters Health Sys., Inc.*, 31 F.4th 520, 527 (6th Cir. 2022) ("[T]he voluntary disclosure of attorney-client privileged communications to a third party waives the privilege as to those communications."). This Court should reject, out of hand, the standard that the Plaintiffs propose as completely unsupported by the law and antithetical to the concept of attorney-client privilege.

*Second*, the Plaintiffs incorrectly claim that Kroger has "not proven how any legal advice predominated over the clear business purpose of the [Q&B Reports]." Opp. at 5. As a preliminary matter, that argument relies on the same improper distinction between business and legal advice that plagues Special Master Cohen's Order. *See supra* § I.A. It also ignores all of the legal authority finding that advice concerning regulatory compliance is *legal* advice. *See* Obj. at 9–12.

Regardless, it is factually incorrect.  The Tucker Declaration "show[s] how and explain[s] why" the Privileged Materials are privileged.[11]  As is unrefuted in the record, Kroger retained Quarles & Brady, as outside counsel, to provide legal advice when it was facing regulatory uncertainly and potential legal exposure.  *See* Tucker Decl. ¶¶ 3–4.  After reviewing Kroger's policies and procedures, Quarles & Brady advised Kroger's in-house legal department to engage Buzzeo to gather information and make recommendations to facilitate Quarles & Brady's provision of legal advice to Kroger regarding DEA regulations.  *See id.* ¶¶ 5–6.  Kroger did so and at the direction of Kroger's in-house counsel, Buzzeo conducted two separate assessments of Kroger's SOM program.  *See id.* ¶¶ 7–9, 11–12.  To perform the assessment, Buzzeo conducted interviews of Kroger employees, reviewed Kroger's policies and procedures, and provided the Q&B Reports to outside counsel so that Quarles & Brady and Kroger's in-house lawyers could provide legal advice to Kroger regarding compliance with DEA regulations.  *See generally id.*  The primary purpose of Buzzeo's assessment was to provide Kroger's outside and in-house counsel with information and recommendations necessary to facilitate the provision of legal advice.  *See* Tucker Decl. ¶¶ 8–9, 12.  This undisputed factual record provides this Court with an ample basis to find that they are privileged and *nothing* in the record would support a contrary conclusion.[12]

---

[11] This Court should similarly reject the Plaintiffs' claim that Ms. Tucker "lacks credibility" because "9 months ago Ms. Tucker did not recall anything about the [Q&B Reports]."  Opp. at 6–7 (emphasis omitted).  In so arguing, the Plaintiffs blatantly misrepresent the substance of Ms. Tucker's August 2022 Affidavit.  *See* Opp. Ex. 7.  As set forth therein, Kroger, through Ms. Tucker, retained Quarles & Brady to provide honest and frank legal advice pertaining to Kroger's suspicious order monitoring efforts.  And although Ms. Tucker generally recalled those efforts, she simply did not recall the written materials prepared for Kroger in connection with those efforts—*i.e.*, the Q&B Reports— until she discovered them on July 29, 2022.  *See generally id.*  But Ms. Tucker's recollection does not, in any way, alter the plain text of the Privileged Materials, which have been submitted to this Court for in camera review.  *See* Exs. K–O.

[12] This Court should reject the Plaintiffs claim that the Tucker Declaration is "impermissibly vague and conclusory." Opp. at 6.  It is precisely the type of document court rely upon in finding privilege, and provides adequate specificity. *See Eaton Corp.*, 2012 WL 3486910, at *10, *12 (finding that a declaration that attests that each documents withheld "reflect[s] communications . . . relating to requests for or the provision of legal . . . advice" was sufficient to assert the attorney client privilege); *City of Roseville Emps.' Ret. Sys. v. Apple Inc.*, No. 19-cv-02033-YGR (JCS), 2022 WL 3083000, at *23 (N.D. Cal. Aug. 3, 2022) (finding privilege where declaration stated where disputed documents were created "for the purpose of ensuring compliance reporting requirements and minimizing legal risk to the [c]ompany.").

*Third*, the Plaintiffs argue that the Privileged Materials are not privileged because they were created by, and included information from, Buzzeo employees who are not lawyers.  *See* Opp. at 5–6.  But this argument misses the mark because it is undisputed by Plaintiffs that Buzzeo was Kroger's agent.  *See* Obj. at 11–12.  It is further undisputed that the attorney-client privilege also applies "to agents of an attorney who are assisting in rendering legal advice to the client."  *DR 14-5* at 10; *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 93–3084, 1994 WL 58999, at *5 (6th Cir. Feb. 25, 1994) (communications between the client to a third-party agent for the purpose of ultimately receiving legal advice are privileged).  Therefore, the notes, results, reports, and summaries of the internal investigation that Kroger directed Buzzeo to conduct are quintessentially privileged.  *See, e.g.*, *Graff*, 2012 WL 5495514, at *9, *15; *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-cv-10706, 2017 U.S. Dist. LEXIS 173905, at *6 (N.D. Ill. Oct. 20, 2017).

*Finally*, this Court should reject the Plaintiffs' argument that Kroger failed to carry its burden because neither the agreements nor the Q&B Reports state that Buzzeo's work was to assist counsel to provide legal advice.  *See* Opp. at 2.  As a factual matter, every single page of the Q&B Reports states that they are protected by attorney-client privilege.  *See* Obj. Ex. K (KRO-PRIV-116); Obj. Ex. M (KRO-PRIV-118).  So too state their transmittal emails.  *See* Tucker Decl. ¶ 15; Obj. Ex. K (KRO-PRIV-116); Obj. Ex. M (KRO-PRIV-118).  As a legal matter, none of the authority relied upon by either the Plaintiffs or the Special Master suggests that a retention agreement *must expressly state* that an outside consultant is being retained to assist counsel in the

---

Contrary to the Plaintiffs' claim, Kroger is not required to disclose "what legal advice was given . . . ."  Opp. at 6. Because Buzzeo was Kroger's agent, directed to gather information to facilitate the provision of legal advice, Kroger is not obligated to demonstrate "why [Buzzeo's] advice could only be rendered by an attorney . . . ."  *Id.*  And, as set forth above, the Tucker Declaration establishes how the legal advice "predominated" over the so-called business advice.  *Id.*

provision of legal advice. To the contrary, *Graff* and *Kellogg* teach that the reason for retaining the consultant—as evidenced through a party's declaration—and the substance of the work product determine whether privilege applies. *Graff*, 2012 WL 5495514, at *10, *13, *15; *Kellogg*, 756 F.3d at 758. Here, as in both *Graff and Kellogg*, Kroger retained Buzzeo to "assess its compliance with regulatory requirements and company policies," *Graff*, 2012 WL5495514, at *9, *13, which further establishes that Buzzeo's work was to assist counsel to provide legal advice to Kroger.

### B. Special Master Cohen Improperly Analogized to the Cardinal Audits.

The Plaintiffs claim that Kroger "misleadingly applie[d] an overly narrow reading of the reasoning behind DR 14-5." Opp. at 11. To that end, the Plaintiffs quote the Special Master:

> [T]he entire thrust of the Audit was to determine the extent to which Cardinal's Suspicious Order Monitoring System met existing DEA regulatory requirements, and to identify and execute modifications necessary to improve compliance.

Opp. at 11 (quoting *DR 14-5* at 7). The Plaintiffs are correct, that "is precisely what the [Q&B Reports] were for Kroger." Opp. at 11. And that is why they are privileged. *See* Obj. at 9–12 ("Helping a corporation comply with a statute or regulation—although required by law—does not transform quintessentially legal advice into business advice."). But Cardinal did not commission its "audits" to obtain legal advice, it did so to "placate" the DEA after it revoked the registration for several Cardinal distribution centers. *DR 14-5* at 2–5. Cardinal *always* intended to—and eventually did—share Dendrite's assessments with the DEA. *Id.* at 5, 8. Therefore, both the *creation* and *actual treatment* of Cardinal's "audits" belie any privilege claim. In contrast, Kroger always maintained the Q&B Reports in the strictest of confidentiality. *See* Obj. at 12.

The Plaintiffs also claim that Kroger failed to reckon with Special Master Cohen's reasoning in *DR 14-7* [Dkt. No. 1610] and *DR 14-8* [Dkt. No. 1666], regarding CVS's and Par Pharmaceuticals' respective privilege claims. But Special Master Cohen *only* cited to *DR 14-7*—

which is devoid of any legal analysis, and merely adopts the reasoning of *DR 14-5*[13]—in rejecting Kroger's privilege claim. *See* Order at 5 (citing *DR 14-5* and *DR 14-7*). In any event, *DR 14-7* and *DR 14-8* suffer from the same flawed legal reasoning to which Kroger is now objecting—that advice regarding regulatory matters is "usually" business advice. *See id.*; *DR 14-8* at 4 ("Examination of the withheld Reports alongside the produced reports reveals that all the reports concern themselves with regulatory matters."). For the reasons set forth in the Objection, and above, the Special Master misapplied the law of privilege in arriving at the determination that advice regarding regulatory compliance is "usually" a business matter, not a legal one. *See* Order at 3. In fact, the case law confirms the Special Master was wrong, *see* Obj. at 6–14, and that this Court should find that the Privileged Materials are protected from disclosure by attorney-client privilege.

## III. KROGER DID NOT WAIVE ITS PRIVILEGE CLAIM.

Although Special Master Cohen did not decide whether Kroger waived its privilege claim,[14] the Plaintiffs argue that Federal Rule of Evidence 502(c) does not apply, and that Kroger waived its privilege claim, because the New Mexico state court found that Kroger's failure to include the documents on early iterations of its privilege log suggested no such documents existed. Opp. at 7; Obj. Ex. I at 1–2. But Kroger did ultimately include the Privileged Materials on their privilege log in New Mexico (immediately after the documents were discovered by Kroger) and the context of the New Mexico order makes clear that it was a sanction, not "an order concerning waiver," as the Plaintiffs claim. *See* Obj. Ex. I. Indeed, the State of New Mexico—the plaintiff in that case—consistently referred to it as the "Sanctions Order." *See, e.g.*, Opp. Ex. 8 at 1.

---

[13] *See DR 14-7* ("Based on [*DR 14-5*], the Special Master concludes that the Dendrite-DCAG Audit Reports are not privileged.").

[14] *See* Order at 5 n.9 ("[T]he question of waiver due to the state court order is moot."). Therefore, the only issue before this Court is whether Special Master Cohen's ruling as to Kroger's substantive privilege claim is correct.

Further, neither the law of this MDL nor the purpose of Federal Rule of Evidence 502(c) is served by concluding that the Privileged Materials are not privileged simply because the New Mexico state court imposed a discovery sanction on Kroger.

> ### A. The New Mexico State Court Order is a Sanctions Order and Construing it as an Order Concerning Waiver Would Severely Prejudice Kroger.

Plaintiffs do not dispute that Kroger has never voluntarily produced the materials at issue here and has only produced them pursuant to court orders.  Nor do Plaintiffs dispute the many authorities that Kroger cites holding a court-ordered production of documents cannot constitute privilege waiver.  Instead, Plaintiffs' only argument is that Federal Rule of Evidence 502(c) supports ordering the production of these materials here because the New Mexico decision is an "order concerning waiver."  That is incorrect.

As recognized by the State of New Mexico, the New Mexico state court's order is a sanctions order.  *See generally* Opp. Ex. 8.  There, according to the State of New Mexico, Kroger disclosed the existence of the Q&B Reports and other related materials on a privilege log on "the eve of trial."  Opp. Ex. 8 at 1.  Without addressing whether the documents were privileged, the New Mexico state court found that "Kroger was on notice of the lack of a privilege or immunity with respect to the documents by its participation in the National Prescription Opiate Litigation wherein Special Master Cohen addressed and dismissed similar claims."  Obj. Ex. I at 2.  As a result, the court concluded that it was "not believable that Kroger performed a good faith search for the requested documents at the time of . . . the Special Master's original order and would not have uncovered the documents or known of their existence."  *Id.* at 1–2.[15]  Due to Kroger's failure

---

[15] By concluding it was "not believable" that Kroger conducted a good faith search, the New Mexico state court improperly made credibility determination of Ms. Tucker's affidavit.  *See, e.g.*, *Candy v. IRS (In re Candy)*, 625 B.R. 701, 714 (Bankr. W.D. Tenn. 2021) (state of mind and credibility determinations are not appropriate for summary judgment); *accord Redlin v. Gross Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606 (6th Cir. 2019).

to "timely disclose the existence of the documents and properly assert such privilege or immunity claim," the New Mexico state court sanctioned Kroger by ordering their production twenty-two days before trial was scheduled to begin. *Id.* And because Kroger settled that case, it had no opportunity to appeal.

Finding that the New Mexico state court order precludes Kroger from asserting its attorney-client privilege would severely prejudice Kroger. Special Master Cohen's original sin—applying the "principle" that "compliance with regulations is usually a business matter, not a legal one" (Order at 3)—is baked into the New Mexico state court's reasoning. As set forth above, Kroger respectfully submits that Special Master Cohen misapplied not only law of privilege, but also the facts as they relate to Kroger, when addressing and dismissing so-called "similar [privilege] claims" asserted by other defendants. *See supra* §§ I, II. Nevertheless, the New Mexico state court compounded Special Master Cohen's error by finding that his faulty analysis put Kroger on notice that the Q&B Reports and other related documents should be produced, without ever reaching a determination as to *whether* the documents at issue were privileged. Should this Court decline to address this privilege issue now, Special Master Cohen would likely present Kroger with two options—take a sanction or seek post-judgment appellate review. *See, e.g.*, Dkt. No. 44478. Either option would jeopardize all future proceedings stemming from this MDL. Kroger would be forced to separately appeal every adverse verdict in order to correct a single error committed by Special Master Cohen, and which this Court has the opportunity to correct now.

B. **Neither the Law of this MDL Nor the Purpose of Federal Rule of Evidence 502(c) is Served by Construing the New Mexico State Court Order as Barring Kroger's Privilege Claims.**

The purpose of Federal Rule of Evidence 502(c) is "for the federal court is to apply the law that is *most protective* of privilege and work product." Fed. R. Evid. 502(c), Explanatory Note on Evidence Rule 502. And orders from this MDL—which, according the New Mexico state court,

13

put Kroger on notice—expressly stated that production of documents pursuant to them did *not* constitute a waiver of privilege. *See* Dkt. No. 3633 at 2–3 ("Walgreens' past or future compliance with the Court's orders does not suggest Walgreens has waived its rights on appeal to argue that such documents are privileged, or that the Court's orders of production were not correct. Finally, any other party besides Walgreens may use this same cover-letter procedure, and the same rules apply."). Because the New Mexico state court ignored the important protections provided to the litigants in this MDL following Special Master Cohen's orders, interpreting the New Mexico decision to be an order concerning waiver would contravene the purpose of Federal Rule of Evidence 502(c) and set a precedent that is *least* protective of attorney-client privilege.

Furthermore, unlike the State of New Mexico, the Plaintiffs cannot claim any prejudice here. Kroger disclosed the existence of these documents on a privilege log 10 months ago. *See* Obj. Ex. H (9.30.22 Ltr.). Kroger and the Plaintiffs are not "on the eve of trial" in any of the bellwether cases; rather, they are mired in discovery. And under federal law, waiver of privilege objections is "not required as a result of the production of a deficient privilege log" under Federal Rule of Civil Procedure 26(b)(5). *Cashman Equip. Corp. v. Rozel Operating Co*., No. 08-363-C-M2, 2009 U.S. Dist. LEXIS 70264, at *7 n.4 (M.D. La. Aug. 11, 2009) (collecting cases); *see Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006) ("[A]djudging these documents as waived would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation."); *Banks v. Off. of the Senate Sergeant-at-Arms*, 233 F.R.D. 1, 8 (D.D.C. 2005) (sanction of waiver was deemed disproportionate). Given the current posture of the litigation between the Plaintiffs and Kroger, there is absolutely no prejudice to the Plaintiffs to litigate the issue now, as contemplated by Dkt. No. 3633. Therefore, this Court should

find that federal law is more protective of attorney client privilege and the New Mexico state court order was *not* an "order concerning waiver" under Federal Rule of Evidence 502(c).[16]

## CONCLUSION

For the foregoing reasons, Kroger respectfully requests that the Court sustain Kroger's Objection, vacate the Special Master's Order, and hold that the Privileged Materials are protected from disclosure by attorney-client privilege.

Dated: June 7, 2023
Charleston, West Virginia

Respectfully submitted,

**The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II,**

**By counsel,**

 */s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)
Ashley Hardesty Odell, Esq. (WVSB 9380)
Fazal A. Shere, Esq. (WVSB 5433)
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
ahardestyodell@bowlesrice.com

---

[16] But even if the New Mexico state court order constitutes an "order concerning waiver," it would not—as the Plaintiffs claim—waive privilege "with respect to all communications involving the same subject matter" (Opp. at 8). *See United States Fire Ins. Co. v. City of Warren*, No. 2:10-CV-13128, 2012 U.S. Dist. LEXIS 58353, at *17–18 (E.D. Mich. Apr. 26, 2012) (noting that failure to list documents on a privilege log could result in waiver, but "it would do so only with respect to these specific documents; it would not effect a general subject-matter waiver of the attorney-client privilege."); *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08 cv 1559 BTM, 2010 WL 2404664, at *3 (S.D. Cal. June 11, 2010) (finding "[t]he purported privilege would be waived only as to [the] specific document" at issue; "[n]o subject matter waiver" would be implicated); *In re Honeywell Int'l, Inc., Sec. Litig.*, 230 F.R.D. 293, 300 & n.3 (S.D.N.Y. 2003) (noting that a finding of waiver of the attorney-client privilege due to an inadequate privilege log should not "be read as inviting a broader subject-matter waiver.").

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on June 7, 2023, the foregoing document was filed with the

Clerk of Court using the CM/ECF system which will send notice to all counsel of record.

_s/Ronda L. Harvey_____
Ronda L. Harvey, Esq. (WVSB 6326)

16