**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br>*All Hospital Cases* | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**DISTRIBUTOR DEFENDANTS' PRELIMINARY RESPONSE IN OPPOSITION
TO THE BARRETT LAW GROUP'S MOTION TO APPOINT
<u>INTERIM CLASS COUNSEL FOR HOSPITAL CASES</u>**

Distributor Defendants AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation ("Distributors") hereby submit this preliminary response in opposition to the Barrett Law Group's Motion to Appoint Interim Class Counsel for Hospital Cases, filed in *Southwest Mississippi Regional Medical Center, et al. v. AmerisourceBergen Drug Corp., et al.*, Case No. 1:17-op-45175 (ECF No. 34) (the "Motion"[1]).  As set forth below, the Motion should be stricken or summarily denied because it was filed in violation of the Court's orders.  Moreover, contrary to its stated purpose, the relief the Motion seeks would only serve to hinder settlement discussions and delay the progress of the litigation.

**I.      Relevant Background**

Over the past several months, the Court has been engaged in an orderly process of selecting additional bellwether cases to proceed through discovery to trial.  Specifically, over the past half-

---

[1] The Motion was accompanied by a Memorandum of Law (ECF No. 34-2) ("Memo"), a "case list" attached as Exhibit A to the Motion (ECF No. 34-1), and a Proposed Order (ECF No. 34-4), among other materials.

year, the Court has conducted several status conferences with the parties to discuss the possibility of selecting cases filed by third party payors ("TPPs") and/or hospitals as potential bellwethers.

During the fall and winter of last year, Distributors and Mr. Barrett (together with the other counsel his motion terms the "Barrett Team") engaged in extensive discussions about whether a federal bellwether case was necessary and, if so, what a selection process for a federal bellwether might look like. Although the Barrett Team took the position that they were pursuing a state court strategy and did not want to activate federal cases, Distributors pushed the Barrett Team to engage in a bellwether selection process. Eventually, because Hospital Plaintiffs generally were unable to identify cases that they would propose to activate as a federal bellwether, the parties decided that the *Lester Cox* case, then underway in federal district court in Missouri, would serve the purpose of a federal bellwether. In a letter to the Court dated February 10, 2023, Distributors and Hospital Plaintiffs jointly apprised the Court that the parties were in agreement that it was unnecessary to select any additional hospital bellwethers involving Distributors, given the pendency of *Lester Cox* and several active hospital cases in state court (including cases filed by plaintiffs represented by the Barrett Law Group).

This spring, as the Court has encouraged, Distributors and the Barrett Team on behalf of Hospital Plaintiffs have been in engaged in an ongoing mediation process under the auspices of Judge Schenkier. In addition, as Distributors have advised the mediator and Mr. Barrett, Distributors have from time to time received overtures about potential resolution discussions from various other counsel representing certain hospital plaintiffs.

On May 17, 2023, Mr. Barrett sent a letter to the Court stating that the Hospital Plaintiffs had concluded that a "bellwether trial is necessary" and requesting a conference "to discuss bellwether issues," which the Court scheduled for June 15, 2023. Then, on May 24, 2023, the

Barrett Law Group filed this Motion seeking to be appointed as "interim class counsel" on the docket of *Southwest Mississippi Regional Medical Center, et al. v. AmerisourceBergen Drug Corp., et al.*, Case No. 1:17-op-45175. The Barrett Law Group did not file the Motion on the MDL master docket, 17-md-2804. Nor, as far as Distributors are aware, did the Barrett Law Group serve the Motion on any defense liaison or lead counsel via email. The Motion specifically requests the Court to order, *inter alia*, that Mr. Barret has the "sole authority" to "[c]onduct settlement negotiations" on behalf of a putative class of all acute care hospitals nationwide. Proposed Order ¶ 2(c).

## II. Preliminary Response

### A. The Motion Should Be Stricken As Procedurally Improper

The Motion should be stricken or denied because it was filed in violation of the Court's prior orders.

*First*, the Motion violates the Court's moratorium on substantive filings (other than filings in bellwether cases or specifically authorized by court order). Dating as far back as December 2017, there has been a filing moratorium with only limited exceptions. *See* ECF No. 4; ECF No. 70 at 2. The Court repeatedly has confirmed the moratorium, including in CMO-1. *See* ECF No. 232 ¶ 6(g) ("No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties."). The Court consistently has denied motions that violated this moratorium. *See, e.g.*, ECF No. 1074 (denying motion to dismiss and directing counsel to "familiarize themselves with the MDL docket and the case management orders and to not waste judicial resources by filing motions that are subject to the moratorium on substantive motions"); ECF No. 3578 (denying motion to amend to assert class allegations "pursuant to the Court's moratorium on substantive filings and Case Management Order One").

The Barrett Law Group, as a member of Plaintiffs' MDL leadership, undoubtedly is aware of this moratorium. Indeed, they previously filed a brief *opposing* a similar motion on this very

ground. *See* ECF No. 414 at 1-2 n.2 ("It should be noted that Baptist Hospital Inc.'s Modification Motion violates Section 6.g. of Case Management Order One ('CMO One') which states: 'No party may file any motion not expressly authorized by this Order absent further Order of this Court or express agreement of the parties.'"). That motion—filed by other hospital plaintiffs not represented by the Barrett Law Group—likewise sought relief related to plaintiff representation and bellwether selection, and it was denied. *See* ECF No. 405; July 3, 2018 Minute Order.

Here, the Motion is a substantive filing related to important topics. The Motion was not permitted by court order and the case in which it was filed is stayed. Filing of the Motion plainly violates the moratorium and should be stricken on that ground alone.

*Second*, the Motion was improperly filed only on the individual docket and not on the master MDL docket. CMO-1 requires that filings such as these be filed on the master docket: "Any document that pertains to one or multiple specific cases shall be electronically filed in each case docket *and* in the master MDL docket." ECF No. 232 ¶ 4 (emphasis in original). "Electronic case filing of a document, other than an initial pleading, *in the master docket* shall be deemed to constitute proper service on all parties." *Id.* (emphasis added).

The Motion plainly relates to multiple cases. The Motion seeks to represent a "proposed nationwide class of hospitals" and to appoint Mr. Barrett "on behalf of" this putative nationwide class. Motion at 1, 3. By filing the Motion on the individual docket, and not on the master docket, the Barrett Law Group failed to provide notice to dozens of impacted parties—including all but one of the named defendants in the individual case,[2] all defendants named only in other hospital cases, and all hospital plaintiffs not represented by Barrett Law Group. Regardless of whether this

---

[2] Other than filing waivers of service (in 2017) and an amended complaint (in 2019), there has been no substantive activity in this individual case, it has never been selected as a bellwether for any purpose, and only one defendant had filed an entry of appearance as of the filing of the Motion.

near-total failure to serve or provide notice of the Motion was the intent or merely the effect, this is a serious and material defect.

In short, the Motion should be stricken or denied for non-compliance with the Court's prior orders, including CMO-1.

### B. The Motion Would Stifle Potential Resolution Discussions

The Motion claims that appointment of Mr. Barrett as interim class counsel "would be helpful in settlement negotiations in a number of ways." Motion at 1. This assertion is simply contrary to reality.

Most problematically, the Motion proposes that Mr. Barrett be the *only person* authorized to conduct settlement negotiations on behalf of *all Hospital Plaintiffs*. *See* Memo at 1 (seeking to "appoint a representative to negotiate on behalf of and to *exclusively* represent the interests of the Hospital Class") (emphasis in original); *id.* at 11 ("The appointment of a single individual is appropriate . . . ."); Proposed Order ¶ 2(c) (granting "sole authority" to "[c]onduct settlement negotiations on behalf of the Hospital Class").

Far from advancing potential settlement discussions, this proposal would hamper these efforts by creating a settlement "bottleneck" and formally preventing Distributors from engaging with other Hospital Plaintiffs, including Hospital Plaintiffs that have reached out to Distributors' resolution counsel through counsel other than Mr. Barrett. Settlement discussions cannot artificially exclude varying viewpoints and constituencies simply because all of the plaintiffs are "hospitals." Distributors never have been limited to only discussing settlement with any one group of lawyers, and certainly never one individual. The global settlement of state and subdivision claims is instructive—while certain State AGs and PEC members took the lead in negotiations with Distributors, there were varying viewpoints among plaintiffs, even within the PEC itself, and

5

it was important to the success of the global settlement that each of these viewpoints be considered by Distributors.

This is not an academic concern. On multiple occasions over the past year, counsel representing various hospital plaintiffs have directly contacted Distributor Resolution Counsel seeking separate settlement discussions not involving Mr. Barrett.[3] In fact, certain of these outreaches have come from *hospitals listed on Exhibit A to the Motion*. Thus, the Motion appears to be an attempt by the Barrett Team to stifle resolution discussions involving any other counsel and force hospital plaintiffs to adhere to the Barrett Team's strategy, whether they want to or not. Indeed, one of the Motion's stated purposes is to prevent defendants from conducting a "reverse auction" when settling hospital cases; put less pejoratively, the Motion seeks to block individual hospitals or groups of hospitals from seeking to resolve their claims in a manner that they believe is appropriate. Moreover, because making Mr. Barrett the sole point of contact will make it impossible to learn the views of any dissenting hospital plaintiffs or their counsel, an order restricting Distributors' ability to communicate with others is in reality only likely to delay and undermine the success of any potential resolution.

The Motion also incorrectly claims that Mr. Barrett "brought the first case on behalf of hospitals." Motion at 2. To the contrary, Baptist Hospital—which previously opposed Mr. Barrett's appointment as the sole PEC representative for hospitals (*see* ECF No. 405)—filed its lawsuit first, on November 21, 2017. *See* Complaint, *Baptist Hosp., Inc., et al. v. McKesson Corp., et al.*, Case No. 18-op-45073, ECF No. 1 (Nov. 21, 2017). Distributors make this point not because they believe that the identity of the firm that filed the first hospital lawsuit is particularly

---

[3] Distributors are not at liberty to share the identity of these hospitals, which approached Distributors in confidence and specifically requested that the outreach be kept confidential.

6

meaningful in this analysis, but instead because it further shows that not all Hospital Plaintiffs speak through the Barrett Team.

It also bears noting that certain of the cases listed on Exhibit A already have been dismissed as to Distributors. While Mr. Barrett asserts that the Barrett Team has 25 cases pending against defendants, only 21 of those are against Distributors, and in two of those Distributors prevailed on a motion to dismiss, although appeals are pending. By contrast, there are approximately 37 pending hospital cases in the MDL that do not involve the "Barrett Team."

Finally, the Motion is wrong to suggest that the Court should appoint Mr. Barrett as interim class counsel (or take any actions) "to help . . . maximize the return to hospitals." Motion at 1. That is not the Court's job and it would be inappropriate to appoint interim class counsel—in general or Mr. Barrett specifically—in an attempt to leverage the highest possible settlements on behalf of any group of plaintiffs.

### C. Class Certification Is Not Appropriate for Hospital Cases and Litigation Over Class Certification Would Only Delay Resolution of These Cases

Despite seeking appointment of interim class counsel, the Motion does not even suggest that *Southwest Mississippi Regional Medical Center* should be selected as a bellwether or that a motion for class certification will be filed. Instead, the Motion's only purpose appears to be giving Mr. Barrett unwarranted and counter-productive control over settlement discussions. Nevertheless, it bears emphasis that a class action is not an appropriate bellwether and a motion for class certification would only *delay* the resolution of the hospital cases.

The Court has scheduled a conference to discuss the bellwether selection process, at Mr. Barrett's request, for June 15, 2023. As the Court and parties have recently experienced in the context of the ongoing TPP bellwether process, it can take multiple conferences and several months simply to structure and implement a bellwether case-selection process and complete

plaintiff fact sheets. To the extent the Motion is an attempted end-run around this orderly bellwether selection process, it should be denied as premature.

Moreover, the Court has already expressed well-founded concerns about class actions in this litigation, and Distributors respectfully submit that hospital claims are particularly ill-suited for a class action. For example, hospitals play an active role in determining the standard of care for treatment of pain. Hospitals frequently implement their own prescribing guidelines and they (or their employees) regularly purchase, prescribe, dispense, and administer prescription opioids. These circumstances, which will bear on questions of commonality, predominance, typicality, and superiority, will vary hospital by hospital. Indeed, this Court already has expressed concern about the fact-specific complexities of injury and damages in a Hospital case:

> To the extent the Defendants are liable to the patients for the costs of medical bills, it ought to be the patients' responsibility to hold the Defendants liable as "private attorneys general." The Court is concerned it might be forced to establish a complicated remedial scheme to adequately apportion damages between patients and hospitals, so that Defendants will not be subject to duplicative recoveries from each. This is the exact problem about which the second and third *Holmes* factors caution and, as Defendants point out, something courts in the tobacco cases nearly unanimously declined to do.

ECF No. 3253 at 23 (Opinion and Order granting in part and denying in part motions to dismiss in *West Boca Medical Center* hospital bellwether) (citations and footnotes omitted). A class action also would be a poor choice for procedural reasons, as it invariably would be bogged down for a year or more with class certification briefing, discovery, and appeals.

The Motion therefore should be denied as premature, subject to potential refiling if—and only if—it ever becomes relevant.

### III. Conclusion and Reservation of Rights

For the reasons set forth above, the Court either should strike or summarily deny the Motion. Distributors reserve the right to advance these and other arguments in a future opposition to the Motion, should one be required.

Dated: June 8, 2023

                                             Respectfully submitted,

                                             */s/ Robert A. Nicholas*
                                             Robert A. Nicholas
                                             Shannon E. McClure
                                             Joseph J. Mahady
                                             Anne R. Bohnet
                                             REED SMITH LLP
                                             Three Logan Square
                                             1717 Arch Street, Suite 3100
                                             Philadelphia, PA 19103
                                             Telephone: (215) 851-8100
                                             Fax: (215) 851-1420
                                             bnicholas@reedsmith.com
                                             smcclure@reedsmith.com
                                             jmahady@reedsmith.com
                                             arollins@reedsmith.com

                                             *Counsel for AmerisourceBergen Corporation*

                                             */s/ Enu A. Mainigi*
                                             Enu A. Mainigi
                                             Jennifer G. Wicht
                                             Steven Pyser
                                             Ashley Hardin
                                             WILLIAMS & CONNOLLY LLP
                                             725 Twelfth Street NW
                                             Washington, DC 20005
                                             (202) 434-5000 / tel.
                                             (202) 434-5029/ fax
                                             emainigi@wc.com

                                             *Attorneys for Defendant Cardinal Health, Inc.*

/s/ Geoffrey E. Hobart
Geoffrey E. Hobart
Timothy C. Hester
Christian J. Pistilli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
thester@cov.com
cpistilli@cov.com

*Counsel for Defendant McKesson Corporation*

## CERTIFICATE OF SERVICE

    I hereby certify that, on June 8, 2023, Distributors' Preliminary Response in Opposition to the Barrett Law Group's Motion to Appoint Interim Class Counsel for Hospital Cases was served on all counsel of record via the CM/ECF system.

                                                            /s/ *Robert A. Nicholas*
                                                            Robert A. Nicholas