UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*Southwest Mississippi Regional Medical Center, et al. v. AmerisourceBergen Drug Corp., et al.*, Case No. 1:17-op-45175, and all Hospital Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE, AND IN SUPPORT OF, PROPOSED RENEWED MOTION TO APPOINT INTERIM CLASS COUNSEL FOR HOSPITAL CLASS**

Plaintiffs ("Plaintiffs" or "Hospital Plaintiffs") named in the above-captioned constituent case styled *Southwest Mississippi Regional Medical Center, et al. v. AmerisourceBergen Drug Corp., et al.*, Case No. 1:17-op-45175 (the "Putative Class Action") respectfully submit this memorandum of law in support of both their (1) "Motion for Leave of Court to File Renewed Motion to Appoint Interim Class Counsel for Hospital Class" (the "Motion for Leave") filed herewith and (2) their underlying "[Proposed] Renewed Motion to Appoint Interim Class Counsel for Hospital Class" (the "Proposed Renewed Motion to Appoint" or the "Proposed Motion"). Plaintiffs submit a single memorandum in support of both the instant procedural motion, as well as the proposed underlying motion, because the grounds for granting leave to move for the appointment of interim class counsel, and the underlying proposed motion, substantially overlap. For the reasons stated below, and in the Declaration of Don Barrett ("Barrett Declaration") attached as Exhibit B to the Motion for Leave, Hospital Plaintiffs respectfully pray that the Court (1) in the first instance, grant Hospital Plaintiffs leave of Court to file the Proposed "Renewed Motion to Appoint Interim Class Counsel for Hospital Class," and (2) after an opportunity for full

1

briefing and argument, grant the underlying motion appointing interim class counsel.

I.     INTRODUCTION

       A. Background

On November 30, 2017, Hospital Plaintiffs commenced the above-referenced national class action on behalf of a nationwide class (the proposed "Hospital Class") consisting of hospitals. That case was transferred to this Court as part of the newly constituted MDL. The operative amended complaint was filed on March 11, 2019. Dkt. No. 31. On January 4, 2018, this Court recognized that hospitals had and have claims separate and distinct from other categories of plaintiffs and appointed John W. ("Don") Barrett as PEC Counsel for the Hospital Plaintiffs. MDL Dkt. No. 37.  Hospital Plaintiffs seek appointment of Mr. Barrett as Interim Class Counsel for the proposed Hospital Class pursuant to Federal Rule of Civil Procedure 23(g).

Hospital Plaintiffs believe it is necessary to appoint a representative to negotiate on behalf of and *exclusively* represent the interests of the Hospital Class on a class-wide basis, as this litigation advances and settlement negotiations continue.  Appointing Interim Class Counsel at this time benefits the litigation in several respects. First, the Hospital litigation has features distinct from the public nuisance claims of government plaintiffs, which are known best to proposed Interim Class Counsel, Don Barrett, who only represents hospitals; who represents the largest hospital systems in comparison to others; who has ongoing Hospital litigation with trial dates set; and who has explicitly argued in favor of Hospitals Plaintiffs' interests in the various bankruptcy proceedings (even when at odds with the governmental plaintiffs). Because of the substantial investment of time and resources made by Hospital Plaintiffs represented by Don Barrett, his further leadership will protect those interests of Hospital Plaintiffs and prevent improper treatment of the Hospital Plaintiffs' interests. Second, appointment of proposed Interim Class Counsel, Don Barrett, should satisfy any Defendants who seek assurance that the undersigned can speak for a

Hospital Class in this case. Third, Hospital Plaintiffs also believe that appointment of an Interim Class Counsel for the Hospital Class would be helpful in settlement negotiations in a number of ways. While some Defendants may want to seek a class-wide settlement, granting this motion will help to deter Defendants from obtaining a "reverse auction" that does not maximize the return to Hospital Plaintiffs, but merely attempts to settle their claims at discounted rates with an incentive payment to a class representative with counsel other than Mr. Barrett. As Mr. Barrett and his colleagues are not the only lawyers to represent hospitals, an order under Federal Rule of Civil Procedure 23(g) would deter Defendants from conducting a "reverse auction" to achieve a cheap settlement of hospital claims.

This Court previously established "settlement negotiating teams" representing plaintiffs, Manufacturer-Defendants, Distributor-Defendants, Attorneys General (Multistate Group and Litigation Group), and Insurers. *See* MDL Dkt. Nos. 118, 124.  These teams have been expanded to specifically include representatives for Wal-Mart (MDL Dkt. No. 186), Walgreens (MDL Dkt. No. 187), and Chain Pharmacies (MDL Dkt. No. 228).  Hospital Plaintiffs now seek appointment of an Interim Class Counsel to represent the interests of the Hospital Class, in class certification preparation, preparation for trial, and settlement negotiations regarding the Hospitals' Putative Class.

Hospital Plaintiffs believe that Mr. Barrett would best represent the interests of the Hospital Class. Mr. Barrett is lead counsel in the first hospital case brought, and lead counsel for the Plaintiffs in this Putative Class Action. Mr. Barrett was appointed and has been serving since January 2018 as the sole member of the Plaintiffs' Executive Committee ("PEC") representing the interests of hospitals. *See* MDL Dkt. Nos. 36, 37.  His selection for appointment to the PEC reflects his leadership in filing early cases on behalf of hospitals to recover for their unique injuries arising

from the opioid epidemic. He has assembled a team of prominent firms with national reputations[1] representing hospitals in opioids cases. In this MDL, the Barrett Team filed the first RICO class action[2] on behalf of U.S. hospitals against the manufacturers and distributors of opioids, as well as the bellwether *West Boca Medical Center, Inc.* case,[3] which survived a motion to dismiss. Mr. Barrett and the Barrett Team have been retained by 945 hospitals in 43 states (approximately 15% of the nation's acute care hospitals), many of which are located in the Appalachian center of the opioids crises (West Virginia, Kentucky, and Tennessee) and other hard-hit areas such as Florida. Overall, the Barrett Team has filed 25 cases in state and federal courts[4] on behalf of hospitals in connection with the opioids epidemic. The Barrett Team has also spent substantial time and money investigating claims unique to acute care hospitals, as well as retaining experts and consultants, and developing a damages model to support hospital claims. Mr. Barrett has also led settlement negotiations for hospitals in four courts (Alabama, West Virginia, Missouri, and in this MDL), and has successfully settled claims in bankruptcy through which hospitals potentially stand to recover in excess of $300 million.

In addition to his work on behalf of hospitals in opioid cases, Mr. Barrett also has a substantial amount of experience shepherding large-scale actions to successful conclusions. In short, as more fully described below, Mr. Barrett meets the applicable standards for appointment as Interim Class Counsel. *See generally* Barrett Declaration attached as Exhibit B to the Motion

---

[1] The Barrett Team includes the law firms of Burns Charest, LLP; Clifford Law Offices, P.C.; Cuneo Gilbert & LaDuca, LLP; Farmer, Cline & Campbell, PLLC; and Taylor Martino, P.C. All have substantial experience in complex litigation and successful track records. In the opioids litigation, the Barrett Team represents *only* hospitals.
[2] *Southwest Mississippi Regional Medical Center, et al. v. AmerisouceBergen Drug Corp., et al.*, Case No. 1:17-op-45175 (N.D. Ohio).
[3] *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp, et al.*, Case No. 1:18-op-45530 (N.D. Ohio) (the "*West Boca* Action").
[4] A full list of cases is provided as Exhibit C to the Motion for Leave.

for Leave. Accordingly, Hospital Plaintiffs ask the Court to appoint Mr. Barrett as Interim Class Counsel for Hospital Plaintiffs in accordance with Rule 23(g) of the Federal Rules of Civil Procedure.

### B. Pertinent Procedural History of This Motion

On May 23, 2023, Hospital Plaintiffs filed a motion styled "Motion to Appoint Interim Class Counsel for Hospital Class" [Dkt. No. 34 in the Putative Class Action] (the "Initial Motion"). The Proposed Motion Plaintiffs presently seek to file does not differ materially from the previously filed Initial Motion. The Initial Motion was filed in the Putative Class Action, but was not on the master MDL docket.

On or about June 8, 2023, certain defendants filed papers opposing, or otherwise in response to, the Initial Motion.

The Distributor Defendants filed an opposition memorandum styled "Distributor Defendants' Preliminary Response in Opposition to the Barrett Law Group's Motion to Appoint Interim Class Counsel for Hospital Cases" [Dkt. No. 5059 in Master MDL Docket and Dkt. No. 36 in the Putative Class Action] ("Distributors' Preliminary Response"). asserting primarily procedural grounds, contending, *inter alia*, that (1) the motion was procedurally improper due to existing moratoria on substantive motions and Hospital Plaintiffs should have first sought leave of Court to file the motion, and (2) Plaintiffs should have filed the motion on the master MDL docket (either in lieu of, or addition to, filing in the Putative Class Action).

The National Pharmacy Defendants filed a document styled "Pharmacy Defendants' Notice Regarding the Barrett Law Group's Motion to Appoint Interim Class Counsel for Hospital Cases" [Dkt. No. 5058 in Master MDL Docket] alleging that they had not been served in the Putative Class Action and that they were "unaware that the Motion had even been filed until it was

raised to their attention by counsel for another defendant."[5]

Hospital Plaintiffs do not necessarily concur with the procedural arguments raised by the Distributor Defendants and National Pharmacy Defendants, and believe that the Initial Motion was properly filed. But instead of litigating threshold procedural issues of the motion, it would be more efficient to resubmit the motion under cover of the Motion for Leave, filed on the Master MDL Docket, in order to address the procedural concerns raised by certain defendants. Accordingly, Hospital Plaintiffs have, contemporaneously, (1) withdrawn the previously filed Initial Motion, and (2) filed the Motion for Leave (to which the Proposed Renewed Motion to Appoint is attached as Exhibit A).

**II.  ARGUMENT**

    **A.  The Court Should First Grant Hospital Plaintiffs Leave to File the Proposed Renewed Motion to Appoint Interim Counsel for the Hospital Class**

The Court has entered certain orders on the master docket limiting the filing of substantive motions absent leave of Court. *See, e.g.*, Case Management Order 1, Dkt. No. 232 ¶ 6(g).  These restrictions generally serve the purposes of judicial efficiency through the litigation through discovery and trial of certain bellwether cases while most actions remain stayed.

But, as noted above, the Court has previously appointed counsel to speak for certain classes of stakeholders in various contexts, including the appointment of Plaintiffs' Executive Committee, and the establishment of "settlement negotiating teams" representing various classes of plaintiffs and defendants. Such appointments are purely procedural and have no bearing on the efficiency of the bellwether process or of this litigation generally. In fact, as well understood by the Court, such

---

[5] Hospital Plaintiffs disagree with the contention that the National Pharmacy Defendants were not properly served in the Putative Class Action. But since the Initial Motion was withdrawn, and the present Motion for Leave has been filed in the MDL Master Docket (with courtesy copies served by email on counsel for the National Pharmacy Defendants and Distributor Defendants), there would not appear to be any relevant question of notice for purposes of the present motion practice.

appointments enhance efficiency both in the litigation and settlement contexts.

The Distributor Defendants have asserted, and other stakeholders may later seek to assert, what they believe to be substantive grounds for opposing the present motion (we briefly address those points asserted by the Distributor Defendants in Section II(B), *infra*). But the fact of opposition is not a basis for denying Hospital Plaintiffs leave to file the Proposed Motion in the first place. Hospital Plaintiffs are, in the first instance, only seeking leave of Court, which would not preclude any person from opposing the Proposed Motion once filed.

### B. The Court Should Grant the Underlying Proposed Motion to Appoint Interim Counsel for the Hospital Class

Rule 23(g)(3) provides that a district court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the class." "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as … negotiating settlement." Manual For Complex Litigation (Fourth) § 21.11 (2004) ("Manual"). The Manual also recommends that courts in complex litigation should "institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients," in order to avoid inefficiency, duplication, and possible prejudice to plaintiffs and further the interests of justice. *See* Manual § 10.22. Courts routinely appoint interim class counsel to coordinate prosecution and settlement of matters. *See* H. Newberg & A. Conte, Newberg on Class Actions, § 9.35 at 9-99 (3rd ed. 1992) ("it is almost standard practice for the court to issue an order at an early stage."). Even in cases where no motion is pending before a court to certify a class, courts have found appointing an interim class counsel to facilitate settlement negotiations continuing in a productive manner is appropriate where the candidate(s) for class counsel have the requisite "qualifications and experience to adequately and fairly represent clients." *In re Flint Water Cases*, No. 16-10444, 2019 WL 11787971, at *1 (E.D.

7

Mich. Sept. 5, 2019).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of interim class counsel under Rule 23(g)(1)(A). *See Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020) (citing *In re Navistar Maxxforce Engines Mktg., Sales Practices & Prods. Liab. Litig.*, No. 14-cv-10318, 2015 WL 1216318, at *1 (N.D. Ill. Mar. 5, 2015). Rule 23(g)(1)(A) provides that the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class. If there is more than one applicant, Rule 23(g)(2) directs the Court that it "must appoint the applicant best able to represent the interests of" the class. The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Leading and coordinating complex cases, including class actions, requires a robust understanding of precedent and strategy, as well as judgment gained from having led, and succeeded in, similar cases. With this in mind, Hospital Plaintiffs propose Mr. Barrett as exclusive Interim Class Counsel for the Hospital Class, and ask the Court to confirm his appointment. Mr. Barret readily meets all of Rule 23(g)'s requirements to be appointed as Interim Class Counsel.

Mr. Barrett has the requisite experience[6] and is uniquely situated to serve as the sole Interim Class Counsel for the Hospital Class.  Mr. Barrett maintains a nationwide complex civil litigation practice and has significant experience shepherding large-scale actions to successful conclusions. Mr. Barrett has served as lead counsel or as a member of the executive committee in

---

[6] The Barrett Declaration, attached as Exhibit B to the Motion for Leave, describes Mr. Barrett's expansive complex litigation experience.

numerous antitrust and other class action cases. Mr. Barrett also has the valuable, and rare, experience of successfully trying a certified national class action case, in federal court, to a verdict for the class. Barrett Decl. ¶ 28. He is also co-lead class counsel for the automobile dealer class in *In Re: Automotive Parts Antitrust Litigation*, MDL No. 2311, pending before Judge Sean Cox (previously before Judge Marianne Battani) in the Eastern District of Michigan. Barrett Decl. ¶ 18. In that capacity, he represents some 16,000 automobile dealers in 31 states, victimized by one of the largest price-fixing conspiracies in history.

Interim Class Counsel's duties for the Hospital Class would be to:

    a.    Determine and present to the Court and opposing parties the position of the Hospital Class on litigation, pretrial, and settlement matters;

    b.    Conduct settlement negotiations on behalf of the Hospital Class, but not to enter into binding agreements except to the extent authorized by law;

    c.    Delegate specific tasks to other counsel in a manner to ensure that pretrial preparation is conducted efficiently and effectively;

    d.    Enter into stipulations with opposing counsel as necessary;

    e.    Prepare and distribute periodic status reports to the parties;

    f.    Perform such other duties in connection with settlement negotiations as may be incidental to settlement negotiating, drafting, finalizing, or submitting settlements to the court; and

    g.    Perform such other pretrial duties as may be incidental to the proper coordination of pretrial activities or as authorized by further order of the Court.

In their "Preliminary Response," the Distributor Defendants contend that the proposed appointment would somehow undercut the bellwether process, and, in fact, described the Initial Motion as "an attempted end-run around this orderly bellwether selection process." Distributors' Preliminary Response, at 8. But Distributor Defendants overlook the obvious facts that Mr. Barrett and his co-counsel represent (1) Plaintiff West Boca in the *West Boca* Action earlier selected as

9

the bellwether hospital action for purposes of briefing and disposition of motions to dismiss, and (2) the named plaintiffs in the action styled *Lester E. Cox Medical Centers d/b/a Cox Medical Centers, et al. v. Amneal Pharmaceuticals, LLC, et al.*, Case No. 6:22-cv-03192 (W.D. Mo.) which, as noted by the Distributor Defendants, has been selected by the parties as a suitable bellwether hospital action.  Moreover, because of his Hospital-only representation, and his development of those cases in other courts, Mr. Barrett should be part of a bellwether selection process. The granting of the Proposed Motion is thus entirely consistent with the orderly bellwether process described by Defendants.

Distributor Defendants further contend that the proposed appointment would "stifle resolution discussions involving any other counsel and force hospital plaintiffs to adhere to the Barrett Team's strategy." Distributors' Preliminary Response, at 6. Distributor Defendants suggest that they have been engaged in discussions with representatives of at least some other hospitals. *Id.* ("On multiple occasions over the past year, counsel representing various hospital plaintiffs have directly contacted Distributor Resolution Counsel seeking separate settlement discussions not involving Mr. Barrett").  But the proposed appointment will stifle nothing. The Initial Motion certainly was not intended to preclude discussions between representatives of defendants and representatives concerning the individual claims of hospitals not represented by Mr. Barrett. In order to avoid any confusion, Hospital Plaintiffs have modified the proposed order to make it clear that it will not preclude such discussions, or of the negotiations of individual settlements.  *See* Proposed Order on Proposed Motion (attached as Exhibit D to the Motion for Leave), ¶ 3. The only communications it would limit are those of other hospital representatives seeking to effect *class-wide* relief, including negotiation of any *class-wide* settlement. The Distributors and other defendants can, and will continue to be able to, negotiate individual settlements with any hospital

10

with whom they wish to negotiate. But they will not be able to engage in parallel attempts to negotiate a universal resolution for all hospitals with whichever hospital representative offers them the most favorable terms.

### 1. Proposed Interim Class Counsel Has Worked for Years to Investigate, Prosecute, and Settle Hospital Claims

Mr. Barrett and the Barrett Team have investigated, identified and prosecuted hospitals' claims. Before filing Hospital Plaintiffs' and other hospitals' cases, and as additional information has become available, Mr. Barrett and the Barrett Team invested significant time and resources into this litigation, including investigating, drafting, and revising complaints, investigating the nature and extent of the alleged conspiracy and its effect on Plaintiffs and other hospitals, selecting and working with experts, reviewing documents, and coordinating strategy with co-counsel. Barrett Decl. ¶¶3-12. Before filing the first RICO class action on behalf of the Hospital Class on November 30, 2017, Mr. Barrett was acutely familiar with the potential claims, defenses, challenges, and opportunities for Hospital Plaintiffs and the classes. As noted above, as a result of his ongoing work to prosecute actions on behalf of hospitals harmed by the opioid epidemic, Mr. Barrett now represents 945 hospitals in 43 states (or approximately 15% of hospitals harmed by the opioid epidemic) in cases both before the MDL and in various state courts. Barrett Decl. ¶11 and Case List, attached as Exhibit C to the Motion for Leave.

Defendants in the hospital opioids cases have vigorously contested hospitals' rights to pursue claims. Barrett Decl. ¶5. Nevertheless, the Barrett Team has successfully pursued hospitals' claims. In the MDL, the Barrett Team has succeeded in moving the bellwether *West Boca Medical Center* case beyond a motion to dismiss. Barrett Decl. ¶3. In cases in state courts, the Barrett Team has succeeded in defeating motions to dismiss in Arizona, Alabama, Florida, Missouri, and West Virginia. Barrett Decl. ¶5. Orders granting motions to dismiss in Arkansas

11

and Maine are now on appeal. Barrett Decl. ¶5.  The state case in Alabama is most advanced, with a bellwether trial scheduled in Alabama for this summer. Barrett Decl. ¶6.

Mr. Barrett and the Barrett Team have also spent substantial time (over one hundred thousand hours) and millions of dollars engaging leading experts on liability and experts concerning damages and relief that relate to hospitals' claims. Barrett Decl. ¶7.  Courts supervising the Insys, Purdue, and Mallinckrodt bankruptcies have already adopted and applied this damages model. Barrett Decl. ¶8.

Mr. Barrett has also led settlement negotiations for hospitals in four courts: state courts in Alabama, West Virginia, Missouri, and in this MDL. Barrett Decl. ¶9. To date, as a result of negotiations in the Insys, Purdue, and Mallinckrodt bankruptcies, hospitals potentially stand to recover in excess of $300 million.  Barrett Decl. ¶8.

> 2. **Proposed Interim Class Counsel Has Significant Experience Handling Class Actions, Other Complex Litigation, And Claims Similar to Those Asserted by Hospital Plaintiffs, Making Him Knowledgeable About the Applicable Law**

An interim class counsel applicant's experience and knowledge of the applicable law is a determining factor in evaluating interim class counsel appointments. *See, e.g.*, *Lively v. Dynegy, Inc.*, No. 05-cv-00063-MJR, 2007 WL 685861, at *17 (S.D. Ill. Mar. 2, 2007). *See also Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 445 (N.D. Ill. 2009) (appointing counsel with "extensive experience in class action litigation and settlement"). Ultimately, the Court must appoint the "best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

Mr. Barrett has a plethora of experience litigating class actions, including antitrust cases and other complex litigation, and Hospital Plaintiffs believe that he would be best able to represent them as Interim Class Counsel and in future settlement negotiations on behalf of Hospital Plaintiffs.  Mr. Barrett's experience in complex litigation, including class actions and antitrust

cases, makes him well-suited to serve as Interim Class Counsel here.

### a. Mr. Barrett's Class Action and Complex Litigation Experience.

Mr. Barrett's professional background encompasses a wealth of litigation, leadership, claims resolution, and strategy experience. He has successfully led large, multidistrict litigation with a demonstrated ability to organize and manage large litigation and to do so cooperatively with counsel for all of the involved parties. *See generally* Barrett Decl. Other federal courts have recognized this by appointing him to leadership positions in other MDL and class actions. *Id.* Here, Mr. Barrett represents Hospital Plaintiffs against manufacturers, distributors and dispensers of opioids. On January 4, 2018, this Court, presiding over *In Re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio), appointed Mr. Barrett to the Plaintiffs' Executive Committee as the representative of hospitals. Barrett Decl. ¶ 11. Courts elsewhere have also recognized his leadership, allowing him to further interests of plaintiffs in other complex litigation. For example:

- Mr. Barrett served as lead counsel in a group of thirty-five attorneys from around the country prosecuting cases, mostly in California, against major food producers who routinely misbrand their food products to hide unhealthy ingredients. As a result of this litigation, Mr. Barrett has been featured in stories on the front page of the New York Times and in the London Sunday Times. Barrett Decl. ¶19.

- On May 28, 2015, Mr. Barrett was appointed co-lead counsel for plaintiffs in *In Re: Coca-Cola Products Marketing and Sales Practices Litigation*, MDL No.14-02555, by Judge Jeffrey White of the Northern District of California. Plaintiffs in that action effected corrective label changes by every defendant they sued. Barrett Decl. ¶¶ 19-20.

- Mr. Barrett and BLG represent the State of Mississippi and Mississippi landowners against the United States for a constitutional taking of thousands of acres for a floodway along the Mississippi River without compensation. The firm currently represents landowners of more than 600,000 acres along the Mississippi River. Barrett Decl. ¶34.

- Mr. Barrett represented Bridgestone Americas, Inc., the largest manufacturer and seller of tires in the Western Hemisphere, in a multi-million-dollar fraud lawsuit against IBM, over the failed implementation of a business enterprise computer

13

- system for the entire company. That suit (*Bridgestone Americas, Inc. v. International Business Machines Corporation*, No. 3:13-cv-1196 (M.D. Tenn.)) settled for a very substantial confidential sum on the eve of trial on June 4, 2018. Barrett Decl. ¶35.

- In 2001, Mr. Barrett was named by Judge Kathleen O'Malley, U.S.D.C., Northern District of Ohio, to the Plaintiffs' Steering Committee in *In Re: Inter-Op Hip Prosthesis Liability Litigation*, MDL No. 1401, and was the principal negotiator for the plaintiff class for a $1.045 billion settlement reached with defendants. Barrett Decl. ¶ 27.

- Since 1986, Mr. Barrett and the firm have taken a national leadership role in litigation against cigarette companies, and Mr. Barrett is one of only a handful of plaintiffs' attorneys in the United States to have tried three tobacco liability cases through jury submission. Mr. Barrett had a leadership role in the massive *Castano* class action litigation in the U.S. District Court in New Orleans, and in its related state class action cases around the country. Mr. Barrett is one of the attorneys who represented the State of Mississippi in the state's successful efforts to recover its cigarette-related healthcare monies sent over the past years. Mr. Barrett also represented the Attorneys General of New York, Louisiana, Arizona, Washington, Indiana, Alaska, Idaho, Oregon, Rhode Island, Ohio, Vermont, Illinois, and Puerto Rico in their successful litigation against the tobacco industry. Mr. Barrett also helped negotiate the landmark settlement with Liggett Group announced in March of 1996, and was one of the lead attorneys in the historic settlement agreement entered into by twenty-two Attorneys General with Liggett Group on March 20, 1997. Barrett Decl. ¶34. In October of 2013, a state court in Arkansas certified a class of Arkansas smokers of light cigarettes against the Philip Morris Company, a case in which Mr. Barrett was co-counsel for the class. In the fall of 2016, that case settled for $45 million.

- Mr. Barrett's litigation experiences have been chronicled in various national publications, including the ABA Journal, The New York Times, The American Lawyer, the Wall Street Journal, and The Washington Post. Two books concerning tobacco litigation featured Mr. Barrett: Cornered: Big Tobacco at the Bar of Justice, by Peter Pringle (Henry Holt and Company, New York City, 1998); and The People vs. Big Tobacco, by Carrick Mollencamp, *et al.* (Bloomberg Press, Princeton, N.J., 1998), and his experiences in tobacco litigation are the primary focus of another book, Assuming the Risk, by Michael Orey (Little, Brown & Co., New York City, September, 1999).

    b. **Mr. Barrett's Experience Litigating Antitrust Cases, Including Cases Concerning Conspiracies.**

Mr. Barrett has particularly deep experience with antitrust cases, including cases concerning conspiracies as is alleged regarding opioids manufacturers, distributors, and pharmacy

14

Defendants. *See generally* Barrett Decl. For example:

- Mr. Barrett was recently appointed as interim co-lead counsel of a direct purchaser class in an antitrust action, finding that Mr. Barrett has "substantial experience litigating complex commercial disputes including class action and antitrust matters . . ." Op., *In Re Insulin Pricing Litigation*, No. 3:17-cv-699, Doc. No. 376 (D.N.J. Sept. 22, 2020), Barrett Decl. ¶ 15.

- In *First Impressions Salon, Inc.*, Mr. Barrett was appointed co-lead counsel in this antitrust action and helped negotiate a $200 million settlement on the eve of trial. The Court gave final approval to this settlement on April 27, 2020. Barrett Decl. ¶ 14).

- Mr. Barrett has also represented the State of Mississippi in its effort to recover monies lost by the state and Mississippi consumers, as a result of an alleged price-fixing conspiracy among infant formula manufacturers, and was co-counsel for plaintiffs in thirteen state court class actions involving this same price-fixing conspiracy, resulting in multi-million-dollar settlements. Barrett Decl. ¶21.

- Mr. Barrett also served as lead class counsel and lead trial attorney for the plaintiffs in a national class action against State Farm Mutual Insurance Company in Illinois, concerning State Farm's use of imitation crash parts in auto repair. Barrett Decl. ¶ 28. After a seven-week trial, the jury awarded a verdict of $456 million and an additional $600 million in punitive damages was awarded by the trial judge; the largest verdict ever rendered in the State of Illinois. *Id.* As a result of that litigation, Mr. Barrett was named the first-ever "Litigator of the Month" by the National Law Journal in its issue of November 22, 1999. *Id.* This verdict was subsequently affirmed by a unanimous Illinois Court of Appeals, and reversed by the Illinois Supreme Court. *Id.* From the ashes of that case arose *Hale v. State Farm Mutual Insurance Co.*, No. 3:12-cv-00660 (S.D. Ill.). On September 13, 2018, after the trial jury was empaneled, and over 21 years after the original litigation began, Judge Herndon granted final approval to a settlement with State Farm for $250 million. *Id.* From the bench, Judge Herndon stated, "important principles have been vindicated by this settlement," and also that, **"Class Counsel were diligent…and they performed at the highest level of professional standards."** *Id.* (emphasis added). On July 29, 2019, the Public Justice Foundation awarded Mr. Barrett's firm the 2019 Trial Lawyer of the Year award as part of the *Hale v. State Farm* trial team. https://www.publicjustice.net/2019-tloy-winner/.

  3. **Proposed Interim Class Counsel Has Sufficient Resources to Timely Advance Settlement Negotiations**

Mr. Barrett has both the resources and the experience to further prosecute or settle the Hospital Plaintiffs' actions. The appointment of a single individual is appropriate and will provide efficiency, preservation of financial resources, and the experience that the Hospital Class deserves.

Litigating the hospitals' claims this way will also safeguard against excessive common benefit fee requests consisting of time spent accomplishing only "make work." Instead, the proposed single Interim Class Counsel structure will avoid unnecessary bureaucracy, duplication of efforts, and foster efficiency. *See, e.g.*, *In re Stericycle, Inc.*, No. 13 C 5795, 2013 WL 5609328, at *1 (N.D. Ill. Oct. 11, 2013); *Singer v. Nicor, Inc.*, Nos. 02 C 5168, 02 C 5239, 02 C 5319, 02 C 5558, 02 C 6037, 2002 WL 31356419, at *1 (N.D. Ill. Oct. 17, 2002) (selecting one interim class counsel because "the court can foresee a number of reasons why such an arrangement [multiple lead plaintiff firms] would be less beneficial: increased costs and a more cumbersome decision-making process raise the greatest concerns."). An interim class counsel structure also serves the purpose of the Rule 23 Committee Note, which warns of "the risk of overstaffing or an ungainly counsel structure." The Manual for Complex Litigation also cautions against the appointment of too many firms to lead or litigate a matter and that "the number should not be so large as to defeat the purpose of making such appointments." Manual for Complex Litigation 3rd § 20.221, pp. 27–28.

Mr. Barrett has already been working for the last several years along with other firms on the Barrett Team representing hospitals in opioids litigation, and will continue to coordinate with them on billing and expense issues to avoid unnecessary duplication and expenses. Barrett Decl. ¶10. This group of firms has also cooperated to establish a litigation fund to pay for the costs incurred for the specific advancement of hospitals' claims. Barrett Decl. ¶10. All told, the Barrett Team has already spent substantial time (over a hundred thousand hours) and millions of dollars investigating and retaining experts in a host of fields, and have successfully developed a damages model to support hospitals' claims that has been accepted by courts in bankruptcy cases. Barrett Decl. ¶¶7-8.

In light of the ample resources Mr. Barrett has already dedicated to representing hospitals,

16

and his past successes on their behalf, his appointment as Interim Class Counsel will ensure that this litigation, including trial preparation and settlement negotiations on behalf of the Hospital Class, proceed as efficiently as possible. Mr. Barrett is capable of providing the resources needed for this litigation. He is well-established, with the financial wherewithal to support the litigation and settlement negotiations. As noted above, Mr. Barrett has also led various other complex, resource-intensive litigations, as well as antitrust class actions involving conspiracies, and successfully shepherded them to closure. He will devote these resources in a manner that best serves the interests of the hospital plaintiffs as putative class members. *See generally* Barrett Decl.

### III.   CONCLUSION

The proposed Interim Class Counsel is willing and able to devote the necessary time, effort, and resources necessary to perform all of these duties to the best of their ability.  As noted above, Mr. Barrett has already spent years working in furtherance of hospitals' claims, and has shown he meets the criteria for appointment of Interim Class Counsel, including by counsel's (1) work identifying or investigating potential claims in the action; (2) experience with claims of the type asserted in the action; (3) knowledge of the applicable law; and (4) the resources that counsel has and will continue to commit to representing the class. See Fed. R. Civ. P. 23(g)(1)(A)(i-iv) & (B); see also Manual § 21.271 (2012). A review of these factors confirms that Mr. Barrett is well-qualified to serve as Interim Class Counsel for the Hospital Class and would be "best able to represent the interests" of any potential class(es) of hospitals. Fed. R. Civ. P. 23(g)(2) (quoting Manual § 21.11 (2004)).

Proposed Interim Class Counsel for the Hospital Class has experience litigating and managing hospital opioids cases and class action cases. Mr. Barrett is well respected in his field, and his appointment would provide Hospital Plaintiffs with an opportunity to ensure their interests

are well represented as settlement negotiations continue and that their claims are not sold in a "reverse auction" to Defendants. For the foregoing reasons, Hospital Plaintiffs support Mr. Barrett's appointment and respectfully request that this Court appoint him as sole Interim Class Counsel for the Hospital Class with the responsibilities identified above.

Dated: June 14, 2023               By: */s/ Don Barrett*
                                   John W. ("Don") Barrett
                                   **BARRETT LAW GROUP, P.A.**
                                   P.O. Box 927
                                   404 Court Square North
                                   Lexington, Mississippi 39095-0927
                                   Telephone: (662) 834-2488
                                   Facsimile: (662) 834-2628
                                   Email: dbarrett@barrettlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Don Barrett*
John W. ("Don") Barrett