# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>*This document relates to:*<br><br>*Southwest Mississippi Regional Medical Center, et al. v. AmerisourceBergen Drug Corp., et al., Case No. 1:17-op-45175, and all Hospital Cases* | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**DECLARATION OF JOHN W. BARRETT IN SUPPORT RENEWED MOTION FOR APPOINTMENT OF CLASS COUNSEL FOR HOSPITAL PLAINTIFFS**

I, John W. ("Don") Barrett, declare:

1. My statements contained herein are based on my personal knowledge.

2. I am an attorney licensed to practice law in the State of Mississippi, and I am the senior partner of Barrett Law Group, P.A ("BLG"), a law firm headquartered in Lexington, Mississippi.

3. I and my firm, BLG, along with other firms representing Hospital Plaintiffs[1] in this litigation, have spent substantial time investigating the nature of the conspiracy at issue and its effect on Hospital Plaintiffs. We are litigating numerous cases, including some in state courts and some that have been sent to the *In re: National Prescription Opiate Litigation* MDL. In this MDL,

---

[1] I have assembled a team of prominent firms with national reputations to represent hospitals in the opioids cases. The Barrett Team includes the law firms of Burns Charest, LLP; Clifford Law Offices; Cuneo Gilbert & LaDuca, LLP; Farmer, Cline & Campbell, PLLC; and Taylor Martino, P.C. All have substantial experience in complex litigation and successful track records. In opioids litigation, the Barrett Team represents only hospitals.

1

my firm led the filing, on November 30, 2017, of the first RICO class action[2] on behalf of U.S. hospitals against the manufacturers and distributors of opioids, as well as the bellwether *West Boca Medical Center* case[3] which has survived a motion to dismiss.

4. Overall, the Barrett Team has filed 25 cases in state and federal courts[4] on behalf of hospitals in connection with the opioids epidemic. Many of these hospitals are located in the Appalachian center of the opioids crisis (West Virginia, Kentucky, Tennessee), and other hard-hit areas such as Florida.

5. Defendants in these opioids cases have vigorously contested the hospitals' rights to pursue claims. The Barrett Team has succeeded in defeating Motions to Dismiss in Arizona, Alabama, Florida, Missouri, and West Virginia as well as in this MDL. We have lost Motions to Dismiss in Arkansas and Maine, which are on appeal.

6. The state case in Alabama is most advanced, with a bellwether trial scheduled in Alabama for this summer.

7. The Barrett Team has also spent substantial time (over a hundred thousand hours) and millions of dollars investigating and retaining experts in a host of fields. We have developed a damages model to support Hospital Plaintiffs' claims.

8. This damages model was accepted by courts supervising the Insys, Purdue, and Mallinckrodt bankruptcies, through which hospitals potentially stand to recover in excess of $300 million. My clients were appointed to the Committee of Unsecured Creditors in both the Insys and Purdue bankruptcies. In the Purdue Pharma bankruptcy trial, the Hospitals presented the testimony

---

[2] *Southwest Mississippi Regional Medical Center, et al. v. AmerisouceBergen Drug Corp., et al.*, Case No. 1:17-op-45175 (N.D. Ohio).
[3] *West Boca Medical Center, Inc. v. AmerisourceBergen Drug Corp, et al.*, Case No. 1:18-op-45530 (N.D. Ohio).
[4] A full list of cases is provided as Exhibit C to the Motion for Leave.

2

of three experts (also made available for cross-examination) who testified on behalf of the injury suffered by acute care hospitals and mitigation efforts specific to reducing harm suffered by the Hospitals.

9. I have also led settlement negotiations for hospitals in four courts, Alabama, West Virginia, Missouri, and in this MDL.

10. I have been working for the last several years along with other firms representing Hospital Plaintiffs in this litigation and will continue to coordinate closely with them on billing and expense issues, coordinating the activities of multiple firms, and monitoring and assigning work to avoid unnecessary duplication. We have also cooperated to establish a litigation fund to pay for the costs incurred to advance the Hospital Plaintiffs' claims.

11. On January 4, 2018, I was appointed by Judge Dan Polster to the Plaintiffs Executive Committee as the representative of hospitals. As of today, the Barrett Team represents 945 hospitals in 43 states (approximately 15% of the nation's acute care hospitals) in this important litigation.

12. It is my belief that appointing Class Counsel for Hospital Plaintiffs is necessary at this time as it would be helpful in settlement negotiations in a number of ways. I believe that some Defendants may want to seek a class-wide settlement. Granting this motion will also help to deter Defendants who may want to conduct a reverse auction from obtaining a settlement that does not maximize the return to hospitals but settles their claims at bargain-basement rates.

13. Courts have appointed me to serve as co-lead counsel, interim class counsel, and in other leadership roles for plaintiffs in numerous cases, including in antitrust and other complex litigation.

14. I was co-lead counsel for a national class of direct purchasers of dairy products in *First Impressions Salon, Inc. et al. v National Milk Producers Federation*, in the Southern District of Illinois. We settled this $200 million case on the eve of trial. The Court gave final approval to this settlement on April 27, 2020.

15. In September 2020, I was appointed as interim co-lead counsel for a class of indirect purchasers of analog insulins, seeking recovery of damages under the Sherman Act and RICO for price-fixing. Judge Brian R. Martinotti found that Mr. Barrett has "substantial experience litigating complex commercial disputes including class action and antitrust matters. . . ." Op., *In Re Insulin Pricing Litigation*, No. 3:17-cv-699, Dkt. No. 376 (D. NJ Sept. 22, 2020).

16. In September 2018, I was appointed as class counsel for a class of Mississippi insureds for recovery of improperly withheld labor depreciation. This case has settled with court approval on January 29, 2020.

17. In June 2017, I was appointed as a member of the Plaintiffs' Steering Committee on behalf of Indirect Resellers in the antitrust case *In Re: Generic Pharmaceuticals Pricing Antitrust Litigation*, MDL No. 2724 (E.D. Pa.). These cases revolve around a long-running series of schemes by generic pharmaceutical manufacturers and distributors to fix prices, allocate markets, and rig bids for a large number of generic pharmaceuticals in the United States.

18. I am co-lead class counsel for the Automobile Dealer Actions in *In Re: Automotive Parts Antitrust Litigation*, No. 2311, pending before Judge Sean Cox (previously before Judge Marianne Battani) in the Eastern District of Michigan. In this capacity we represent some 8,000 automobile dealers in 31 states, victimized by one of the largest price-fixing conspiracies in history. In this litigation we have forged a unique pact with the end-payer plaintiffs, and together have reached settlements with 71 different defendants for a total of more than $1.6 billion.

19. I was lead counsel in a group of thirty-five attorneys from around the country prosecuting cases, mostly in California, against major food producers who routinely misbrand their food products to hide unhealthy ingredients. As a result of this litigation, I have been featured in stories on the front page of the *New York Times* and other papers around the nation, I was the subject of a major article in the London *Sunday Times*, I was interviewed at length on BBC's *Newshour*, by the Swedish newspaper *Aftonbladet*, and by a Paris television station, and I have given numerous interviews on public radio and on radio stations around the country, as well as in Canada and even in New Zealand. All this publicity says little or nothing about my own character or ability, but does suggest that our firm was prosecuting litigation which has struck a nerve with the American people and others who share our values. We have effected corrective label changes by every defendant we sued.

20. I also represented the State of Mississippi in its effort to recover monies lost by Mississippi consumers, and by the state itself, as a result of an alleged price-fixing conspiracy among infant formula manufacturers. I was also co-counsel for plaintiffs in state court class actions in thirteen state court actions involving this same price-fixing conspiracy. These cases resulted in multi-million-dollar settlements in twelve of these states.

21. I was co-lead counsel for plaintiff trucking firms from around the nation in a class action against the Pilot/Flying J truck stop group over alleged rebate under-payments to the truckers concerning the purchase of diesel fuel, I negotiated a settlement of 106% of all under-payments, plus all costs and fees of the litigation. Payments approached $85 million; the final approval was given November 25, 2013, by the U.S. District Court in Little Rock, Arkansas.

22. I was co-lead class counsel in *Vereen v. Lowe's Home Centers, Inc.*, a national class action over the sale of defective drywall, pending in the Superior Court of Muscogee County,

5

Georgia. On January 12, 2012, a settlement was finally approved by that court, affording financial relief to over 40,000 claimants. In approving the requested fee award, the *Vereen* Court spoke of our "excellent reputations in the legal community."

23. I was co-lead counsel in a class action lawsuit (*Holman v. Noble Energy, Inc.*, District Court County of Weld, Colorado) brought on behalf of royalty owners in the Greater Wattenberg natural gas field in Colorado. This suit, which complained of systematic under-payments of royalties by a major natural gas producer, resulted in a $98 million settlement for the class. This settlement received final approval by the Colorado court on June 11, 2007. Since that time, we have achieved class settlement in four similar cases, most recently in the federal district court in Denver on October 29, 2010. These five cases have produced settlements exceeding $150 million; I was also co-lead counsel in several similar cases currently pending in the Western District of Virginia. In the first of these cases, a settlement of $3.4 million, which recovered over 95% of all compensatory damages claimed by the plaintiff class, received final approval by the District Court on October 4, 2011. In approving the fee application for that case, Judge James P. Jones complimented our work, adding, "I'm sure the class realizes that, were it not for the experienced and well-resourced counsel in this case, there would be no recovery." In the cases against CNX and EQT, Judge Jones certified classes by orders entered on March 29, 2017, and those cases have now been settled.

24. On November 22, 2000, I was appointed as the Lead Class Counsel by Chief Judge Sarah Evans Barker in the Bridgestone/Firestone/Ford tire and Explorer litigation, centralized in the U.S. District Court for the Southern District of Indiana (MDL No. 1373). A nationwide settlement of the consumer class case against Bridgestone/Firestone was achieved in 2004 and approved by the Court in a Texas state case. On December 3, 2007, Judge David DeAlba of the

6

Superior Court of Sacramento County, California preliminarily approved a multi-state class action settlement with Ford Motor Company. Final approval was granted in April 2008.

25. On January 26, 2009, in *Stanich, et al. v. Travelers Indemnity Company, et al.*, No. 1:06-cv-962-KMO (N.D. Ohio), I, with others, was appointed as class counsel in a certified class action concerning fraudulent insurance pricing. On March 31, 2010, the Court approved a settlement reached in that case which the Court values at $17,398,633, finding that class counsel were "experienced, professional, and highly skilled."

26. In the Summer of 2001, I was named by Judge Kathleen O'Malley, in the Northern District of Ohio, to the Plaintiffs' Steering Committee in *In Re: Inter-Op Hip Prosthesis Liability Litigation*, MDL No. 1401, and I was a principal negotiator for the plaintiff class for a $1.045 billion settlement reached with defendants. This settlement was finally approved by Judge O'Malley on May 22, 2002. Personal injury classes, especially successful ones, are very rare, and were so even back in 2002.

27. I was lead class counsel and lead trial attorney for the plaintiffs in a national class action against State Farm Mutual Insurance Company in Illinois, concerning State Farm's use of imitation crash parts in auto repair. After a seven-week trial ending in October of 1999, the jury awarded a verdict of $456 million and an additional $600 million in punitive damages was awarded by the trial judge. This was the largest verdict ever rendered in the State of Illinois and the largest against any insurance company in the United States. As a result of that litigation, I was named the first-ever "Litigator of the Month" by the National Law Journal in its issue of November 22, 1999. This verdict was subsequently affirmed by a unanimous Illinois Court of Appeals, and reversed by the Illinois Supreme Court. From the ashes of that case arose *Hale, et al. v. State Farm Mutual Insurance Company* (Case No. 3:12-cv-00660-NJR), filed in the Southern District of Illinois,

which alleged that State Farm engineered the election of an Illinois Supreme Court justice, then lied about its election activities, to avoid a recusal of that justice from the panel deciding the *Avery v. State Farm* appeal. State Farm's motion to dismiss was denied and class certification was granted, and State Farm had three petitions denied in the Seventh Circuit. Sometimes justice takes a while to play out: On September 13, 2018, after the trial jury was empaneled, and over 21 years after the original litigation began, Judge Herndon granted final approval to a settlement with State Farm for $250 million. From the bench, Judge Herndon stated, "Important principles have been vindicated by this settlement," and also stated, "Class Counsel were diligent…and they performed at the highest level of professional standards."

28.     On December 16, 2004, I was appointed one of six members of the Class Plaintiffs' Steering Committee in the *In Re Neurontin Marketing and Sales Practices Litigation* (MDL No. 1629), by U.S. District Judge Patti B. Saris of the District of Massachusetts. In that MDL, the case of an individual plaintiff (Kaiser Foundation Health Plan) against the defendant Pfizer, Inc., was tried over a five-week period in February and March, 2010 in Boston, and I was a member of the trial team for Kaiser. That trial resulted in a jury verdict for plaintiff on its civil RICO claim in the amount of $47.34 million, which was trebled under the RICO statute. This is believed to be the first civil RICO verdict ever rendered against a major pharmaceutical company. This verdict was affirmed by the 1st Circuit Court of Appeals, and has been paid in full.

29.     On November 22, 2004, I was appointed Plaintiffs' Co-Lead Counsel in *In Re High Sulfur Content Gasoline Products Liability Litigation* (MDL No. 1632), by U.S. District Judge Ivan L.R. Lemelle of the Eastern District of Louisiana. A $100 million plus settlement was finally approved by the Court in September of 2006.

30. On September 17, 2003, I was appointed plaintiffs' co-lead counsel *in In Re Welding Fume Litigation* (MDL 1535) by the U.S. District Court in Cleveland, Ohio. This litigation settled for $26.5 million. At a contested class certification hearing in that Court on April 24, 2007, nationally-prominent defense attorney John Beisner represented to the Court that I am one of "the most outstanding lawyers in the country." I do not believe that Mr. Beisner really meant it, but he did say it.

31. I was lead counsel in the "alternative commission" class action litigation against Progressive Insurance Company, in which a nationwide settlement valued by the court at $493 million was reached in the Circuit Court of Johnson County, Illinois, with final approval being given by the court on November 14, 2002.

32. I was lead counsel of the Katrina Litigation Group, a consortium of lawyers who represented hundreds of homeowners along the Mississippi Coast who were victimized first by Hurricane Katrina in August, 2005, and then by their insurance companies. Our group favorably settled over 1,600 homeowners' claims (including those of former U.S. Senator Trent Lott, former U.S. Representative Gene Taylor, and U.S. District Court Judge Louis Guirola) for more than $215 million. We are the only attorneys to have tried Hurricane Katrina cases to successful verdict in both state and federal court (*Lisanby v. USAA*, in June of 2008, resulting in a verdict and payment to Admiral and Mrs. Lisanby of $849,841; and *Penthouse v. Certain Underwriters at Lloyds*, resulting in a verdict on February 24, 2011, amounting to $1,832,804. On December 21, 2011, the *Penthouse* Court entered final judgment in the case, adding attorneys' fees, costs, and interest in the amount of $3,111,533, bringing the total award to $4,944,135.

33. Since 1986, I have taken a national leadership role in litigation against cigarette companies. I am one of only a handful of plaintiff's attorneys in the United States to have tried

9

three tobacco liability cases through jury submission. I had a leadership role in the massive *Castano* class action litigation in the U.S. District Court in New Orleans, and in its related state class action cases around the country. I am one of the attorneys who represented the State of Mississippi, through Attorney General Mike Moore, in the state's successful efforts to recover its cigarette-related health care monies sent over the past years. I also represented the Attorneys General of New York, Louisiana, Arizona, Washington, Indiana, Alaska, Idaho, Oregon, Rhode Island, Ohio, Vermont, Illinois, and the Commonwealth of Puerto Rico in their successful litigation against the tobacco industry. I was one of three plaintiffs' attorneys who negotiated the landmark settlement with Liggett Group announced in March of 1996, as well as one of the lead attorneys in the historic settlement agreement entered into by twenty-two Attorneys General with Liggett Group on March 20, 1997.

34. My firm and I represent the State of Mississippi and numerous Mississippi landowners holding more than 600,000 acres along the Mississippi River, in a constitutional takings case against the United States for the taking of their land to be used as a floodway without compensation.

I affirm under penalty of perjury on this the 14th day of June 2023 that the foregoing is true to the best of my knowledge.

By: _/s/ John W. Barrett_
John W. ("Don") Barrett