IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>Case No. 1:18-op-46136-DAP<br><br>Case No. 1:19-op-45913-DAP<br><br>Case No. 1:21-op-45092-DAP<br><br>Case No. 1:22-op-45025-DAP | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**SETTLED DEFENDANTS' MOTION TO DISMISS
CLAIMS FILED BY NON-PARTICIPATING FLORIDA SUBDIVISIONS
AS RELEASED BY THE ATTORNEY GENERAL PURSUANT TO SETTLEMENT**

**TABLE OF CONTENTS**

                                                                                                                                           **Page**

I. INTRODUCTION ................................................................................................................. 1

II. BACKGROUND .................................................................................................................. 2

    A. Plaintiffs' Complaints ................................................................................................ 2

    B. Florida's Participation in the Global Settlements and Release of Subdivision Claims ........................................................................................................ 3

    C. The Florida Attorney General's Declaratory Judgment Suit ................................. 4

III. ARGUMENT ........................................................................................................................ 6

    A. The Florida Attorney General Has The Power To, And Did, Release All Opioid-Related Claims Brought By Its Governmental Entities, Including Its Political Subdivisions ........................................................................................... 6

    B. Plaintiffs Are Political Subdivisions And Their Claims Are Released ................... 9

IV. CONCLUSION .................................................................................................................... 9

I.  INTRODUCTION

Settled Defendants[1] move this Court to dismiss all claims against Settled Defendants filed by the following Florida subdivision plaintiffs (collectively, "Plaintiffs"):

- Lee Memorial Health System, d/b/a Lee Health (Case No. 1:21-op-45092-DAP);

- Sarasota County Public Hospital District d/b/a Memorial Healthcare System, Inc. (Case No. 1:18-op-46136-DAP);

- School Board of Miami-Dade (Case No. 1:19-op-45913-DAP); and

- Putnam County School Board (Case No. 1:22-op-45025-DAP).

Plaintiffs' claims against Settled Defendants must be dismissed on the ground that such claims have been released by the Florida Attorney General pursuant to the Janssen and Distributor Global Settlements.

As part of Florida's participation in the Global Settlements, the Florida Attorney General provided a broad release of opioid-related claims, including claims asserted by Florida's political subdivisions. It is not reasonably in dispute that this release was a proper and lawful exercise of the Attorney General's power: a Florida state court faced with this precise issue just reached this exact conclusion. In that lawsuit—a declaratory judgment action filed by the Florida Attorney General against subdivisions that include the Plaintiffs here—the Florida court concluded, at summary judgment, that the Florida Attorney General "had the authority to release [the subdivisions'] claims and did, indeed, release [the subdivisions'] claims." *See* Order, *Office of the*

---

[1] The Settled Defendants are Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen, Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. (collectively, "Janssen"), AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, McKesson Corporation, and Cardinal Health, Inc. (collectively, "Distributors") as well as any other Released Entities, as that term is defined in the Settlement Agreements, that have been named as defendants in Plaintiffs' Complaints. *See infra* n.3; Janssen Final Consent Judgment and Order of Dismissal (relevant excerpts attached as **Exhibit 1**) at Exhibit A p. 8-9 & Exhibit J thereto; Distributor Final Consent Judgment and Order of Dismissal (relevant excerpts attached as **Exhibit 2**) at Exhibit A p. 8 & Exhibit J thereto; *infra* n.3 (citing complaints).

*Att'y Gen. v. Sarasota Cnty. Public Hosp. Dist. et al.*, No. 2022 CA 000541 (Fla. Cir. Ct. May 26, 2023) (attached as **Exhibit 3**).

This Court should give effect to the well-reasoned opinion of the Florida court. Because Plaintiffs' claims are extinguished by operation of the settlements and the release provided pursuant thereto by the Florida Attorney General, Settled Defendants request that the Court enter an order and final judgment, pursuant to Fed. R. Civ. P. 54(b), dismissing the claims against the Settled Defendants.[2]

## II. BACKGROUND

### A. Plaintiffs' Complaints

Plaintiffs are two public hospital districts and two public school districts that filed opioid-related lawsuits either directly in this Court or in federal court in Florida between 2018 and 2022.[3] Plaintiffs admit in their complaints that they are public entities:

- "Plaintiff, Lee Health, is a political subdivision of the State of Florida, i.e. Lee Health is a special district created by Special Act of the Florida Legislature to operate, control, and maintain a public hospital and other healthcare facilities in Southwest Florida pursuant to Chapter 2000-439, Laws of Florida (2000)." Lee Memorial Complaint ¶ 29.

---

[2] This Court previously dismissed claims asserted by similarly-situated subdivisions against Settled Defendants in other states based on settlement-related statutory bars. *See In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP (N.D. Ohio), Dkt. Nos. 4547 (June 21, 2022) (dismissing claims of New York subdivisions) & 4651 (Sept. 29, 2022) (dismissing claims of Minnesota subdivisions). This is the first motion Settled Defendants have filed to dismiss claims based on a State Attorney General's release of subdivision claims.

[3] *See generally Lee Memorial Health Sys., d/b/a Lee Health v. Actavis LLC, et al.*, Case No. 1:21-op-45092-DAP (N.D. Ohio July 15, 2021) (Dkt. No. 1) ("Lee Memorial Complaint"); *Sarasota Cnty. Pub. Hosp. Dist. d/b/a Sarasota Mem. Healthcare Sys. v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-46136-DAP (N.D. Ohio Mar. 19, 2021) (Dkt. No. 20) ("Sarasota Complaint") & (Dkt. No. 26) (short-form complaint adding additional defendants); *Sch. Bd. of Miami-Dade Cnty., Fla. v. Endo Health Solutions Inc. et al.*, Case No. 1:19-op-45913-DAP (N.D. Ohio Sept. 30, 2019) (Dkt. No. 1) ("Miami-Dade Complaint"); *Putnam Cnty. Sch. Bd., et al. v. Cephalon, Inc., et al.*, Case. No. 1:22-op-45025-DAP (N.D. Ohio May 27, 2022) (Dkt. No. 1) ("Putnam Complaint").

- "Plaintiff Sarasota County Public Hospital District, d/b/a Sarasota Memorial Health Care System is a community hospital chartered and organized under the laws of the State of Florida."  Sarasota Complaint ¶ 16.

- "Plaintiff THE SCHOOL BOARD OF MIAMI-DADE COUNTY, FLORIDA is a political subdivision organized under the laws of the State of Florida."  Miami-Dade Complaint ¶ 26.

- "Plaintiff brings this civil action against Defendants on behalf of itself and other similarly situated independent public school districts in Florida . . . ."  Putnam Complaint ¶ 32.

Plaintiffs' allegations relate generally to the opioid-abuse crisis.  They assert claims familiar to this Court, including public nuisance and various tort claims, as well as federal and state statutory claims, including for violation of the Florida Deceptive and Unfair Trade Practices Act.  *See supra* n.3.

> **B.  Florida's Participation in the Global Settlements and Release of Subdivision Claims**

On July 21, 2021, the Florida Attorney General announced Florida's participation in nationwide opioid settlements with Settled Defendants (the "Global Settlements").[4]  The Global Settlements were subsequently embodied in Final Consent Judgments and Orders of Dismissal.  Both the Janssen Final Consent Judgment and Dismissal with Prejudice and the Distributor Final Consent Judgment and Dismissal with Prejudice were entered on May 4, 2022 in the Circuit Court of the Sixth Judicial Circuit in Pasco County, Florida.  *See* Ex. 1 (Janssen); Ex. 2 (Distributors).

The Settlement Agreements include broad releases of all opioid-related claims.  *See* Ex. 1 at Exhibit A p. 8 (definition of "Released Claims") & p. 14-18 (release provision); Ex. 2 at Exhibit A p. 7-8 (definition of "Released Claims") & p. 44-49 (release provision).  The broad language of the releases applies to claims brought by Florida's governmental entities, including its political

---

[4] *See* Press Release: Billions Secured Through Historic Opioid Litigation Agreements, Fla. Office of Att'y Gen. (July 21, 2021), https://www.myfloridalegal.com/newsrelease/billions-secured-through-historic-opioid-litigation-agreements.

3

subdivisions. For example, "Releasors" (*i.e.*, the entities whose claims are released) is defined in the Distributor Settlement as follows:

> "*Releasors.*" **With respect to Released Claims**, (1) each Settling State; (2) each Participating Subdivision; and (3) ***without limitation and to the maximum extent of the power of each Settling State's Attorney General*** and/or Participating Subdivision to release Claims, (a) ***the Settling State's and Participating Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind*** and attorneys, including its Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) ***any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts in a Settling State,*** and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in this Agreement. The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Subdivision. . . .

Ex. 2 at Exhibit A at p. 8-9 (emphasis added).[5]

Accordingly, to the maximum extent allowable by law, Florida's release of opioid-related claims also released the claims of its governmental entities, including "departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind" and "any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts." Ex. 2 at Exhibit A at p. 8-9; *see also* Ex. 1 at Exhibit A at p. 9.

### C. The Florida Attorney General's Declaratory Judgment Suit

On April 2, 2022, the Florida Attorney General initiated a declaratory judgment action in the Circuit Court of the Second Judicial Circuit in and for Leon County, Florida (the "Florida

---

[5] Because the definition of "Releasors" in the Janssen settlement is materially similar, the Motion will excerpt only the Distributor Settlement Agreement for purposes of clarity and efficiency. *Compare* Ex. 1 at Exhibit A at p.9, *with* Ex. 2 at Exhibit A at p. 8-9.

4

Court") against several Florida political subdivisions that refused to participate in the Global Settlements. *See Office of the Att'y Gen. v. Sarasota Cnty. Public Hosp. Dist. et al.*, No. 2022 CA 000541 (Fla. Cir. Ct.). The Florida Attorney General filed an Amended Complaint on June 2, 2022 ("Declaratory Judgment Complaint") (attached as **Exhibit 4**). The subdivisions named as defendants in the Declaratory Judgment Complaint include the four MDL Plaintiffs that are the subject of this Motion filed by Settled Defendants. *See* Ex. 4 ¶¶ 26 (Sarasota County Public Hospital District), 27 (Lee Memorial Health System), 31 (School Board of Miami-Dade County), 32 (Putnam County School Board); *see also id.* ¶ 33 ("Defendants have brought actions against opioid manufacturers, distributors, and dispensers. Each of these actions have been transferred to the Prescription Opioids Multidistrict Litigation ('Opioid MDL'), Case No. 1:17-md-2804.").

The Declaratory Judgment Complaint set forth as allegations: the background of the opioid litigation in Florida, including the Florida Attorney General's opioid lawsuit against Settled Defendants and the lawsuits filed by Florida subdivisions in the federal MDL; information about Florida's opioid-related settlements, including the Distributor and Janssen Global Settlements; and the harms that would result to Florida by virtue of certain subdivisions' refusal to participate in the settlements. Ex. 4 ¶¶ 1-21. The Declaratory Judgment Complaint sought a declaration that "the Attorney General had the power to release, and did release, Defendants' subordinate claims through execution of Settlement Agreements and Release Provisions with the Settlement Agreements." *Id.* ¶ 22.

The Florida Attorney General subsequently moved for summary judgment, which the Florida Court granted in an order dated May 26, 2023. *See* Ex. 3. The Order concluded, among other things, that Florida Attorney General was "entitled to judgment as a matter of law because

the Attorney General had the authority to release the Defendants' claims and did, indeed, release the Defendants' claims." *Id.* at 12.[6]

### III. ARGUMENT

#### A. The Florida Attorney General Has The Power To, And Did, Release All Opioid-Related Claims Brought By Its Governmental Entities, Including Its Political Subdivisions

The Florida Court correctly concluded that the Florida Attorney General has the authority to release the opioid-related claims filed by Florida's political subdivisions, including specifically the Plaintiffs here.

The Florida Court began its analysis by noting that, pursuant to the Florida Constitution, the Attorney General is the "chief state legal officer." *Id.* at 7 (citing Fla. Const. Art. IV §§ 10(a), 10(b)). Pursuant to Florida statute, the Attorney General "shall have and perform all powers and duties incident or usual to such office." *Id.* (citing Fla. Stat. §§ 16.01(4), (5)). "Florida courts have, repeatedly, interpreted this provision within its plain language and intent to mean that the Attorney General retains all of the historic, sovereign common law powers and duties to represent and protect the people of Florida and their interests." *Id.* (citation omitted).

The Florida Court addressed these powers and duties with specific reference to certain of the causes of action at issue here. Regarding "public nuisance-like claims," the Florida Court explained that "it is the Attorney General's duty to abate and prevent nuisances." *Id.* at 8 (citing *State ex rel. Landis v. S.H. Kress & Co.*, 155 So. 823, 827 (Fla. 1934)). The Attorney General also has, by legislative grant, "the authority to enforce consumer protection laws, including the authority to bring an action 'on behalf of one or more consumers or *governmental entities* for the

---

[6] Certain of the defendant subdivisions (including certain of the Plaintiffs here) have appealed the Florida Court's Order to the First District Court of Appeal. As of the date of filing of this Motion, the Florida Court's Order has not been stayed pending appeal.

6

actual damages caused by an act or practice in violation of this part.'" *Id.* at 8-9 (citing Fla. Stat. § 501.207(1)(c)) (emphasis in Order). This is especially true for claims under Florida's Deceptive and Unfair Trade Practices Act, "because the violations alleged in the relevant opioid lawsuits in the state affect 'more than one judicial circuit.'" *Id.* at 8 (citing Fla. Stat. § 501.203).

The Florida Court then explained that, "absent an explicit statutory limitation," the Attorney General "typically may exercise all such authority as the public interest requires" and any such "undertakings are presumed to be lawful sovereign actions." *Id.* at 8-9 (citing *Shevin v. Exxon*, 526 F.2d 266, 268 (5th Cir. 1976)). "And the attorney general has wide discretion in making the determination as to the public interest." *Id.* at 9 (citing *Shevin*, 526 F.2d at 269).

The Florida Court next discussed important Florida appellate precedent regarding the Attorney General's power. First, in *Shevin v. Exxon*, the Fifth Circuit was presented with the question of "whether the [Florida] Attorney General may institute actions under federal law to recover damages sustained by departments, agencies, and political subdivisions that have not affirmatively authorized the Attorney General to bring suit for recovery on their behalf." *Id.* at 9-10 (citing 526 F.2d at 270). The Fifth Circuit answered in the affirmative: "[B]ecause [the court] could find no legislation barring the Attorney General from bringing an action on behalf of subdivisions without their consent, the Attorney General may act." *Id.* at 10 (citing 526 F.2d at 270, 273-74).

Second, in *Barati v. State*, 198 So. 3d 69, 72 (Fla. 1st Dist. Ct. App. 2016), the First District Court of Appeal considered "whether the Attorney General had the power to dismiss an action in which she had not intervened." *Id.* The court concluded that the Attorney General did, both under statutory authorization for false claims suits and more generally based on "the constitutional authority of the executive branch vested in the Attorney General of the State of Florida to act as

7

the State's chief legal officer." *Id.* (citing 198 So. 3d at 72, 84). "[C]onducting and terminating legal actions brought in the name of and for the benefit of the State is the *sine qua non* of the State's chief legal officer." *Id.* (citing 198 So. 3d at 84).

Applying this appellate precedent, the Florida Court concluded that "if the Attorney General has the power to *bring litigation* on behalf of the people of Florida and its subdivisions, she must also be able to *settle litigation* on behalf of the people of Florida and its subdivisions—including the subordinate claims brought by Defendants." *Id.* at 10-11. "Based on the foregoing authorities and given that the Defendants are subdivisions," the Florida Court "conclude[d] that the Attorney General has the power to release claims, including the claims at issue in this case." *Id.* at 11.

Finally, the Florida Court emphasized the important public policy issues underlying its decision. "[W]hen there is conflict (or overlap) between sovereign state interests and insular subdivision interests, the sovereign's interest necessarily must be deemed to be superior because the State's interest subsumes, in its entirety, the subdivision's interest." *Id.* at 11-12. Here, the Florida Court explained:

> Allowing [the subdivisions] to continue pursuing their subordinate opioid claims threatens Florida's sovereign interest in vindicating its citizens' rights-all of its citizens' rights-when confronted with societal harms such as the opioid crisis. These are collective harms. They do not flow in an insular fashion to individual subdivisions-the harms cross city and county lines.

*Id.* at 12 (citations and footnotes omitted). And the Florida Court noted the practical consequences: "[The subdivisions'] continued pursuit of their opioid claims in contravention of the Opioid Settlements jeopardizes the flow of tens of millions of dollars that will aid in the abatement of the opioid epidemic throughout the State of Florida." *Id.* Accordingly, "Florida is entitled to judgment as a matter of law because the Attorney General had the authority to release the [the subdivisions'] claims and did, indeed, release the [the subdivisions'] claims." *Id.*

### B. Plaintiffs Are Political Subdivisions And Their Claims Are Released

Here, there can be no doubt that Plaintiffs are political subdivisions. Plaintiffs admitted this in their complaints. *See, e.g.*, Lee Health Complaint ¶ 29 ("Plaintiff, Lee Health, is a political subdivision of the State of Florida . . . ."); *supra* at 2-3. The Florida Attorney General confirmed this in its declaratory judgment complaint. Ex. 4 ¶¶ 26, 27, 31, 32. And the Florida Court reiterated this fact in its Order. Ex. 3 at 6 ("It is undisputed that the Defendants are political subdivisions of the State of Florida.").

The settlement releases unambiguously released the claims of Florida's governmental entities, including its subdivisions. *See* Ex. 2 at Exhibit A p. 8-9 (providing a release on behalf of "departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind" and "any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts"); Ex. 1 at Exhibit A p. 9; *see also supra* n.5.

The Florida Court—considering the applicability of this release for these subdivisions and their opioid-related lawsuits consolidated in this MDL—concluded that the Florida Attorney General had the power to provide that release and did, in fact, release these claims. In so concluding, the Florida Court applied a wide range of authority, including the Florida Constitution, Florida statutes, and appellate authority from both federal and state courts. Ex. 3 at 6-12. While the Florida Supreme Court has not ruled on this precise issue, the Florida Court's Order is highly persuasive and deserving of deference. This Court should give effect to the Florida Court's well-reasoned decision and grant Settled Defendants' Motion to Dismiss.

### IV. CONCLUSION

For the foregoing reasons, Settled Defendants respectfully request that this Court dismiss all claims by Plaintiffs against Settled Defendants.

Dated:  June 15, 2023

Respectfully submitted,

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:  (215) 851-8100
Fax: (215) 851-1420
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Corporation*

/s/ Enu A. Mainigi
Enu A. Mainigi
Jennifer G. Wicht
Steven Pyser
Ashley Hardin
WILLIAMS & CONNOLLY LLP
680 Maine Ave SW
Washington, DC  20024
 (202) 434-5000 / tel.
(202) 434-5029/ fax
emainigi@wc.com

*Attorneys for Defendant Cardinal Health, Inc.*

/s/ Geoffrey E. Hobart
Geoffrey E. Hobart
Timothy  C. Hester
Christian J. Pistilli
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
thester@cov.com
cpistilli@cov.com

*Counsel for Defendant McKesson Corporation*

*/s/ Charles C. Lifland*
Charles C. Lifland
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407
clifland@omm.com

*Counsel for Defendants Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; and Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on June 15, 2023, Settled Defendants' Motion To Dismiss Claims Filed By Non-Participating Florida Subdivisions As Released By The Attorney General Pursuant To Settlement was served on all counsel of record via the CM/ECF system.

/s/ *Robert A. Nicholas*
Robert A. Nicholas