*SETTLED DEFENDANTS' MOTION TO DISMISS CLAIMS FILED BY
NON-PARTICIPATING FLORIDA SUBDIVISIONS AS RELEASED BY
THE ATTORNEY GENERAL PURSUANT TO SETTLEMENT*

# EXHIBIT 1

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT

## IN AND FOR PASCO COUNTY, FLORIDA

STATE OF FLORIDA, OFFICE OF THE
ATTORNEY GENERAL, DEPARTMENT OF
LEGAL AFFAIRS,

       Plaintiff,

    v.

PURDUE PHARMA L.P., PURDUE PHARMA,
INC., THE PURDUE FREDERICK COMPANY,
INC., ENDO HEALTH SOLUTIONS INC.,
ENDO PHARMACEUTICALS INC., JANSSEN
PHARMACEUTICALS, INC., JOHNSON &
JOHNSON, CEPHALON, INC., TEVA
PHARMACEUTICALS USA, INC., ALLERGAN
FINANCE, LLC, ACTAVIS PHARMA, INC.,
ACTAVIS LLC, INSYS THERAPEUTICS, INC.,
AMERISOURCEBERGEN DRUG
CORPORATION, CARDINAL HEALTH, INC.,
MCKESSON CORPORATION,
MALLINCKRODT LLC, WALGREEN CO., CVS
HEALTH CORPORATION, and CVS
PHARMACY, INC.,

       Defendants.

Case No. 2018-CA-001438

Filed For Record
Pasco County, Florida
2022 MAY -4  AM 11:55
Nikki Alvarez-Sowles
Clerk & Comptroller
Pasco County, Florida

## FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE

    The State of Florida ("State") and Johnson & Johnson, Janssen Pharmaceuticals, Inc.,

Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively,

"*Janssen*" or "*Defendants*") (together with the State, the "*Parties*," and each a "*Party*") have

entered into a consensual resolution of the above-captioned litigation (the "*Action*") pursuant to a

settlement agreement entitled Janssen Settlement Agreement, dated as of July 21, 2021 (as

subsequently updated) (the "*Agreement*"), a copy of which is attached hereto as <u>Exhibit A</u>. The Agreement shall become effective by its terms upon the entry of this Final Consent Judgment (the "*Judgment*") by the Court without trial or adjudication of any contested issue of fact or law, and without finding or admission of wrongdoing or liability of any kind.

**RECITALS:**

1. Each Party warrants and represents that it engaged in arm's-length negotiations in good faith. In hereby executing the Agreement, the Parties intend to effect a good-faith settlement.

2. The State has determined that the Agreement is in the public interest.

3. Janssen denies the allegations against it and that it has any liability whatsoever to the State, its Subdivisions, and/or (a) any of the State's or Subdivisions' departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, including its Attorney General and any person in her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public.

4. The Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation.

5. The Parties agree to the entry of the injunctive relief terms pursuant to Exhibit P of the Agreement.

6.      Therefore, without any admission of liability or wrongdoing by Janssen or any other Released Entities (as defined in the Agreement), the Parties now mutually consent to the entry of this Judgment and agree to dismissal of the claims with prejudice pursuant to the terms of the Agreement to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

In consideration of the mutual promises, terms, and conditions set forth in the Agreement, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendants and the State, and adjudicated by the Court, as follows:

1.      The foregoing Recitals are incorporated herein and constitute an express term of this Judgment.

2.      The Parties have entered into a full and final settlement of all Released Claims of Releasors against Janssen (including but not limited to the State) and the Released Entities pursuant to the terms and conditions set forth in the Agreement.

3.      The "Definitions" set forth in Section I of the Agreement are incorporated by reference into this Judgment. The State is a "Settling State" within the meaning of the Agreement. Unless otherwise defined herein, capitalized terms in this Judgment shall have the same meaning given to them in the Agreement.

4.      The Parties agree that the Court has jurisdiction over the subject matter of the Action and over the Parties with respect to the Action and this Judgment. This Judgment shall not be construed or used as a waiver of any jurisdictional defense Janssen or any other Released Entity may raise in any other proceeding.

5.      The Court finds that the Agreement was entered into in good faith.

6.     The Court finds that entry of this Judgment is in the public interest and reflects a negotiated settlement agreed to by the Parties. The Action is dismissed with prejudice, subject to a retention of jurisdiction by the Court as provided herein and in the Agreement.

7.     By this Judgment, the Agreement is hereby approved by the Court, and the Court hereby adopts the Agreement's terms as its own determination of this matter and the Parties' respective rights and obligations.

8.     The Court shall have authority to resolve disputes identified in Section XII.F.2 of the Agreement, governed by the rules and procedures of the Court.

9.     By this Judgment, the Janssen Florida State-Wide Opioid Settlement Agreement and Settlement Term Sheet, a copy of which is attached hereto as Exhibit B and as incorporated into the Agreement pursuant to Exhibit O of the Agreement, is hereby approved by the Court as the means by which relevant funds paid pursuant to the Agreement will be divided within the State, subject to the full acceptance by any Subdivision receiving such funds of the terms of the Agreement, including the releases provided therein.

10.     The Parties have satisfied the Condition to Effectiveness of Agreement set forth in Section VIII of the Agreement and the Release set forth in Sections IV.A, D, and E of the Agreement, as follows:

a.     The Attorney General of the State exercised the fullest extent of her powers to release Janssen and all other Released Entities from all Released Claims pursuant to the release attached hereto as Exhibit C (the "*Release*").

b.     Janssen has determined that there is sufficient State participation and sufficient resolution of the Claims of the Litigating Subdivisions in the Settling States to proceed with the Agreement.

c.     The Settlement Participation Form for each Initial Participating Subdivision in the State has been delivered to Janssen. As stated in the Settlement Participation Form, and for the avoidance of doubt, nothing in the Settlement Participation Form executed by the Participating Subdivisions is intended to modify in any way the terms of the Agreement to which the Participating Subdivisions agree. As

4

stated in the Settlement Participation Form, to the extent the executed version of the Settlement Participation Form differs from the Agreement in any respect, the Agreement controls.

d.      Pursuant to the Settlement Participation Form, each Participating Subdivision in the State is dismissing with prejudice any Released Claims that it has filed against Janssen and the Released Entities.

11.    <u>Release</u>.   The Parties acknowledge that the Release, which is incorporated by reference herein, is an integral part of this Judgment.  Pursuant to the Agreement and the Release and without limitation and to the maximum extent of the power of the State's Attorney General, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (a) the State and its Participating Subdivisions and any of their departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including the State's Attorney General, and any person in her official capacity whether elected or appointed to serve any of the foregoing, and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in the State, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State or any Subdivision in the State, whether or not any of them participate in the Agreement.  Pursuant to the Agreement and the Release and to the maximum extent of the State's power, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the State, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, (3) any of the State's past and present executive departments, agencies,

5

divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license, and (4) any Participating Subdivision. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Further, the provisions set forth in Section IV of the Agreement are incorporated by reference into this Judgment as if fully set forth herein. The Parties acknowledge, and the Court finds, that those provisions are an integral part of the Agreement and this Judgment, and shall govern the rights and obligations of all participants in the settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected parties and approved by the Court.

12.    <u>Release of Unknown Claims.</u> The State expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

13.    The State may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the State expressly waived and fully, finally, and forever settled, released and discharged, through the Agreement and Release, any and all Released Claims that may exist as of the Effective Date but which the State does not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no

6

fault whatsoever, and which, if known, would have materially affected the State's decision to enter into the Agreement.

14.    <u>Costs and Fees.</u>  The Parties will bear their own costs and attorneys' fees except as otherwise provided in the Agreement.

15.    <u>No Admission of Liability.</u>  Defendants are consenting to this Judgment solely for the purpose of effectuating the Agreement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Defendants expressly deny. No Defendant or Released Entity admits that it caused or contributed to any public nuisance, and no Defendant or Released Entity admits any wrongdoing that was or could have been alleged by the State, its Participating Subdivisions and/or Participating Special Districts, or any other person or entity.  No part of this Judgment shall constitute evidence of any liability, fault, or wrongdoing by Defendants or any other Released Entity.  The Parties acknowledge that payments made under the Agreement are not a fine, penalty, or payment in lieu thereof and are properly characterized as described in Section VI.F of the Agreement.

16.    <u>No Waiver.</u>  This Judgment is entered based on the Agreement without trial or adjudication of any contested issue of fact or law or finding of liability of any kind.  This Judgment shall not be construed or used as a waiver of Janssen's right, or any other Released Entity's right, to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Judgment. Notwithstanding the foregoing, the State may enforce the terms of this Judgment as expressly provided in the Agreement.

17.    <u>No Private Right of Action</u>.  This Judgment is not intended for use by any third party for any purpose, including submission to any court for any purpose, except pursuant to Section XII.A of the Agreement.  Except as expressly provided in the Agreement, no portion of the Agreement or this Judgment shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Entity.  The State shall allow Participating Subdivisions in the State to notify it of any perceived violations of the Agreement or this Judgment. No Settling State, including the State, may assign or otherwise convey any right to enforce any provision of the Agreement.

18.    <u>Admissibility</u>.  It is the intent of the Parties that this Judgment not be admissible in other cases against Defendants or binding on Defendants in any respect other than in connection with the enforcement of this Judgment or the Agreement.  For the avoidance of doubt, nothing herein shall prohibit Defendants from entering this Judgment or the Agreement into evidence in any litigation or arbitration concerning (1) Defendants' right to coverage under an insurance contract or (2) the enforcement of the releases provided for by the Agreement and this Judgment.

19.    <u>Preservation of Privilege</u>.  Nothing contained in the Agreement or this Judgment, and no act required to be performed pursuant to the Agreement or this Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

20.    <u>Mutual Interpretation</u>.  The Parties agree and stipulate that the Agreement was negotiated on an arm's-length basis between parties of equal bargaining power and was drafted jointly by counsel for each Party.  Accordingly, the Agreement is incorporated herein by reference

8

and shall be mutually interpreted and not construed in favor of or against any Party, except as expressly provided for in the Agreement.

21.     Retention of Jurisdiction.  The Court shall retain jurisdiction of the Parties for the limited purpose of the resolution of disputes identified in Section XII.F.2 of the Agreement.  The Court shall have jurisdiction over Participating Subdivisions in the State for the limited purposes identified in the Agreement.

22.     Successors and Assigns.  This Judgment is binding on Defendants' successors and assigns.

23.     Modification.  This Judgment shall not be modified (by the Court, by any other court, or by any other means) without the consent of the State and Defendants, or as provided for in Section XIII.S of the Agreement.

So ORDERED this __4th__ day of __May__2022.


_____
Honorable Kimberly Sharpe Byrd
Circuit Court Judge

JOINTLY APPROVED AND
SUBMITTED FOR ENTRY:

**For the Janssen Defendants:**

Date: _____  By: _____

Marc Larkins

Assistant Corporate Secretary, Johnson & Johnson

Approved as to form:

Date: _____  By: _____

Charles C. Lifland

O'Melveny & Myers

Counsel for Defendants

Date: _____  By: _____

Virginia L. Gulde

Nelson Mullins

Local Counsel for Defendants

JOINTLY APPROVED AND
SUBMITTED FOR ENTRY:


**For the Janssen Defendants:**


Date: _____          By: _____

Marc Larkins

Assistant Corporate Secretary, Johnson & Johnson


Approved as to form:


Date: _____          By: _____

Charles C. Lifland

O'Melveny & Myers

Counsel for Defendants


Date: _____          By: _____

Virginia L. Gulde

Nelson Mullins

Local Counsel for Defendants

JOINTLY APPROVED AND
SUBMITTED FOR ENTRY:


**For the Janssen Defendants:**


Date: _____                By: _____

                                   Marc Larkins

                                   Assistant Corporate Secretary, Johnson & Johnson


Approved as to form:


Date: _____                By: _____

                                   Charles C. Lifland

                                   O'Melveny & Myers

                                   Counsel for Defendants



Date: _____                By: *Virginia Gulde*

                                   Virginia L. Gulde

                                   Nelson Mullins

                                   Local Counsel for Defendants



10

**THE STATE OF FLORIDA**
**ASHLEY MOODY**
**Attorney General**

By: _____

Name: John Guard
      Chief Deputy Attorney General

Date: 4/26/22

**STATE OUTSIDE LITIGATION COUNSEL**

**Kellogg, Hansen, Todd, Figel & Frederick,**
  **P.L.L.C.**

By: _____

Name:  David C. Frederick

Date: May 3, 2022

**Drake Martin Law Firm, LLC**

By: _____

Name:  Drake Martin

Date: May 3, 2022

11

**<u>EXHIBIT A</u>**

**<u>JANSSEN SETTLEMENT AGREEMENT</u>**

# <u>JANSSEN SETTLEMENT AGREEMENT</u>

**Table of Contents**

I.      Definitions ........................................................................................................ 1

II.     Participation by States and Condition to Preliminary Agreement ......................... 13

III.    Injunctive Relief ............................................................................................... 14

IV.     Release ............................................................................................................. 14

V.      Monetary Relief and Payments ........................................................................ 18

VI.     Allocation and Use of Settlement Funds .......................................................... 29

VII.    Participation by Subdivisions and Special Districts .......................................... 36

VIII.   Condition to Effectiveness of Agreement and Filing of Consent Judgment ..................... 39

IX.     Potential Payment Adjustments ....................................................................... 40

X.      Additional Restitution Amount ........................................................................ 42

XI.     Plaintiffs' Attorneys' Fees and Costs .............................................................. 43

XII.    Enforcement and Dispute Resolution .............................................................. 43

XIII.   Miscellaneous .................................................................................................. 48

EXHIBIT A – Alleged Harms ...................................................................................... A-1

EXHIBIT B – Enforcement Committee Organizational Bylaws ...................................... B-1

EXHIBIT C – Litigating Subdivision and Special District List ...................................... C-1

EXHIBIT D – [Intentionally Omitted] .......................................................................... D-1

EXHIBIT E – List of Opioid Remediation Uses ............................................................ E-1

EXHIBIT F – List of States and Overall Allocation Percentages ................................... F-1

EXHIBIT G – Subdivisions Eligible to Become Participating Subdivisions and Default Subdivision Fund Allocation Percentages ................................................................ G-1

EXHIBIT H – Participation Tier Determination ................................................................ H-1

EXHIBIT I – Primary Subdivisions and Subdivisions with Population Over 10,000 ................. I-1

EXHIBIT J – Janssen Predecessors and Former Affiliates ........................................... J-1

EXHIBIT K – Settlement Participation Form ............................................................ K-1

EXHIBIT L – Settlement Fund Administrator ........................................................... L-1

EXHIBIT M – Settlement Payment Schedule ........................................................... M-1

EXHIBIT N – Additional Restitution Amount Allocation ............................................. N-1

EXHIBIT O – Adoption of a State-Subdivision Agreement .......................................... O-1

EXHIBIT P – Injunctive Relief ........................................................................... P-1

EXHIBIT Q – Non-Released Entities ..................................................................... Q-1

EXHIBIT R – Agreement on Attorneys' Fees, Costs, and Expenses ............................... R-1

EXHIBIT S – Agreement on the State Cost Fund Administration ................................... S-1

EXHIBIT T – Severity Factors ............................................................................ T-1

EXHIBIT U – Agreement on the State Outside Counsel Fee Fund ................................. U-1

## JANSSEN SETTLEMENT AGREEMENT

This settlement agreement dated as of July 21, 2021 (the "*Agreement*") sets forth the terms of settlement between and among the Settling States, Participating Subdivisions, and Janssen (as those terms are defined below). Upon satisfaction of the conditions set forth in Sections II and VIII, this Agreement will be binding on the Settling States, Janssen, and Participating Subdivisions. This Agreement will then be filed as part of Consent Judgments in the respective courts of each of the Settling States, pursuant to the terms set forth in Section VIII.

## I.      Definitions

Unless otherwise specified, the following definitions apply:

1.      "*Abatement Accounts Fund*" means a component of the Settlement Fund described in subsection VI.E.

2.      "*Additional Restitution Amount*" means the amount available to Settling States listed in Exhibit N of $67,307,692.

3.      "*Agreement*" means this agreement as set forth above, inclusive of all exhibits.

4.      "*Alleged Harms*" means the alleged past, present, and future financial, societal, and related expenditures arising out of the alleged misuse and abuse of opioid products, non-exclusive examples of which are described in the documents listed on Exhibit A, that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, death, and other related diseases and disorders, and that have allegedly been caused by Janssen.

5.      "*Allocation Statute*" means a state law that governs allocation, distribution, and/or use of some or all of the Settlement Fund amounts allocated to that State and/or its Subdivisions. In addition to modifying the allocation, as set forth in subsection VI.D.2, an Allocation Statute may, without limitation, contain a Statutory Trust, further restrict expenditure of funds, form an advisory committee, establish oversight and reporting requirements, or address other default provisions and other matters related to the funds. An Allocation Statute is not required to address all three (3) types of funds comprising the Settlement Fund or all default provisions.

6.      "*Annual Payment*" means the total amount payable to the Settlement Fund by Janssen on the Payment Date each year in 2023 and onward, as calculated by the Settlement Fund Administrator pursuant to Section V. For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to Section XI.

7.      "*Appropriate Official*" means the official defined in subsection XIII.E.

*revised March 30, 2022*

8.     "*Attorney Fee Fund*" means an account consisting of funds allocated to pay attorneys' fees and costs pursuant to the agreement on attorneys' fees and costs attached as Exhibit R.

9.     "*Bar*" means either (1) a ruling by the highest court of the State or the intermediate court of appeals when not subject to further review by the highest court of the State in a State with a single intermediate court of appeals setting forth the general principle that no Subdivisions or Special Districts in the State may maintain Released Claims against Released Entities, whether on the ground of the Agreement (or the release in it) or otherwise; (2) a law barring Subdivisions and Special Districts in the State from maintaining or asserting Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and that authority is exercised in full); or (3) a Settlement Class Resolution in the State with full force and effect. For the avoidance of doubt, a law or ruling that is conditioned or predicated upon payment by a Released Entity (apart from payments by Janssen incurred under the Agreement) shall not constitute a Bar.

10.    "*Case-Specific Resolution*" means either (1) a law barring specified Subdivisions or Special Districts from maintaining Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and that authority is exercised in full); (2) a ruling by a court of competent jurisdiction over a particular Subdivision or Special District that has the legal effect of barring the Subdivision or Special District from maintaining any Released Claims at issue against Released Entities, whether on the ground of the Agreement (or the release in it) or otherwise; or (3) in the case of a Special District, a release consistent with Section IV below. For the avoidance of doubt, a law, ruling, or release that is conditioned or predicated upon a post-Effective Date payment by a Released Entity (apart from payments by Janssen incurred under the Agreement or injunctive relief obligations incurred by it) shall not constitute a Case-Specific Resolution.

11.    "*Claim*" means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, parens patriae claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including but not limited to any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert

2

*revised March 30, 2022*

fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

12.     "*Claim Over*" means a Claim asserted by a Non-Released Entity against a Released Entity on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.

13.     "*Compensatory Restitution Amount*" means the aggregate amount of payments by Janssen hereunder other than amounts paid as attorneys' fees and costs or identified pursuant to subsection VI.B.2 as being used to pay attorneys' fees and investigation costs or litigation costs.

14.     "*Consent Judgment*" means a state-specific consent judgment in a form to be agreed upon by the Settling States, Participating Subdivisions, and Janssen prior to the Initial Participation Date that, among other things, (1) approves this Agreement and (2) provides for the release set forth in Section IV, including the dismissal with prejudice of any Released Claims that the Settling State has brought against Released Entities.

15.     "*Court*" means the respective court for each Settling State to which the Agreement and the Consent Judgment are presented for approval and/or entry as to that Settling State, or the Northern District of Ohio for purposes of administering the Attorney Fee Fund and any related fee and cost agreements.

16.     "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Reference Date (and any past, present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (a) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to any Product, or any system, plan, policy, or advocacy relating to any Product or class of Products, including but not limited to any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (b) the characteristics, properties, risks, or benefits of any Product; (c) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders for any Product placed with any Released Entity; (d) the selective breeding, harvesting, extracting, purifying, exporting, importing, applying for quota for, procuring quota for, handling, promoting, manufacturing, processing, packaging, supplying, distributing, converting, or selling of, or otherwise engaging in any activity relating to, precursor or component Products, including but not limited to natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished

*revised March 30, 2022*

active pharmaceutical ingredients, drug substances, or any related intermediate Products; or (e) diversion control programs or suspicious order monitoring related to any Product.

17.　　"*Designated State*" means New York.

18.　　"*Effective Date*" means April 2, 2022.

19.　　"*Enforcement Committee*" means a committee consisting of representatives of the Settling States and of the Participating Subdivisions. Exhibit B contains the organizational bylaws of the Enforcement Committee. Notice pursuant to subsection XIII.O shall be provided when there are changes in membership or contact information.

20.　　"*Global Settlement Abatement Amount*" means the abatement amount of $4,534,615,385.

21.　　"*Global Settlement Amount*" means $5 billion, which shall be divided into the Global Settlement Abatement Amount, the Additional Restitution Amount, and the Global Settlement Attorney Fee Amount.

22.　　"*Global Settlement Attorney Fee Amount*" means the attorney fee amount of $398,076,923.

23.　　"*Incentive A*" means the incentive payment described in subsection V.E.4.

24.　　"*Incentive B*" means the incentive payment described in subsection V.E.5.

25.　　"*Incentive C*" means the incentive payment described in subsection V.E.6.

26.　　"*Incentive D*" means the incentive payment described in subsection V.E.7.

27.　　"*Incentive Payment Final Eligibility Date*" means, with respect to a Settling State, the date that is the earliest of (1) three years after the Effective Date; (2) the date of completion of opening statements in a trial of any action brought by a Subdivision in that State that includes a Released Claim against a Released Entity when such date is more than two (2) years after the Effective Date; or (3) two (2) years after the Effective Date in the event a trial of an action brought by a Subdivision in that State that includes a Released Claim against a Released Entity began after the Initial Participation Date but before two (2) years after the Effective Date.

28.　　"*Initial Participating Subdivision*" means a Subdivision that meets the requirements set forth in subsection VII.D.

29.　　"*Initial Participation Date*" means January 26, 2022, as extended by written agreement of Janssen and the Enforcement Committee on December 29, 2021.

*revised March 30, 2022*

30.    "*Initial Year Payment*" means the total amount payable to the Settlement Fund by Janssen on each of the two Payment Dates in 2022, as calculated by the Settlement Fund Administrator pursuant to Section V. For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to Section XI.

31.    "*Injunctive Relief Terms*" means the terms described in Section III and set forth in Exhibit P.

32.    "*Janssen*" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

33.    "*Later Litigating Special District*" means a Special District (or Special District official asserting the right of or for the Special District to recover for alleged harms to the Special District and/or the people thereof) that is not a Litigating Special District and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Preliminary Agreement Date. It may also include a Litigating Special District whose claims were resolved by a judicial Bar or Case-Specific Resolution which is later revoked following the execution date of this Agreement, when such Litigating Special District takes any affirmative step in its lawsuit other than seeking a stay or removal.

34.    "*Later Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that is not a Litigating Subdivision and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Trigger Date. It may also include a Litigating Subdivision whose claims were resolved by a judicial Bar or Case-Specific Resolution which is later revoked following the execution date of this Agreement, when such Litigating Subdivision takes any affirmative step in its lawsuit other than seeking a stay or removal.

35.    "*Later Participating Subdivision*" means a Participating Subdivision that meets the requirements of subsection VII.E but is not an Initial Participating Subdivision.

36.    "*Litigating Special District*" means a Special District (or Special District official) that brought any Released Claims against any Released Entities on or before the Preliminary Agreement Date that were not separately resolved prior to that date. A list of Litigating Special Districts will be agreed to by the parties and attached hereto as of the Preliminary Agreement Date.

37.    "*Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity prior to the Trigger Date that were not separately resolved prior to that

*revised March 30, 2022*

Trigger Date. A Prior Litigating Subdivision shall not be considered a Litigating Subdivision. Exhibit C is an agreed list of the Litigating Subdivisions. Exhibit C will be updated (including with any corrections) periodically, and a final version of Exhibit C will be attached hereto as of the Reference Date.

38. "*National Arbitration Panel*" means the panel described in subsection XII.F.

39. "*National Disputes*" means the disputes described in subsection XII.F.

40. "*Non-Litigating Special District"* means a Special District that is neither a Litigating Special District nor a Later Litigating Special District.

41. "*Non-Litigating Subdivision*" means a Subdivision that is neither a Litigating Subdivision nor a Later Litigating Subdivision.

42. "*Non-Participating Subdivision*" means a Subdivision that is not a Participating Subdivision.

43. "*Non-Party Covered Conduct Claim*" means a Claim against any Non-Released Entity involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity).

44. "*Non-Party Settlement*" means a settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Entity.

45. "*Non-Released Entity*" means an entity that is not a Released Entity.

46. "*Non-Settling State*" means a State that is not a Settling State.

47. "*Opioid Remediation*" means care, treatment, and other programs and expenditures (including reimbursement for past such programs or expenditures except where this Agreement restricts the use of funds solely to future Opioid Remediation) designed to (1) address the misuse and abuse of opioid products, (2) treat or mitigate opioid use or related disorders, or (3) mitigate other alleged effects of the opioid abuse crisis, including on those injured as a result of the opioid abuse crisis. Exhibit E provides a non-exhaustive list of expenditures that qualify as being paid for Opioid Remediation. Qualifying expenditures may include reasonable related administrative expenses.

48. "*Overall Allocation Percentage*" means a Settling State's percentage as set forth in Exhibit F. The aggregate Overall Allocation Percentages of all States (including Settling States and Non-Settling States) shall equal 100%.

49. "*Participating Special District*" means a Special District that executes a release consistent with Section IV below and meets the requirements for becoming a Participating Special District under Section VII.

*revised March 30, 2022*

50.     "*Participating Subdivision*" means a Subdivision that meets the requirements for becoming a Participating Subdivision under Section VII. Participating Subdivisions include both Initial Participating Subdivisions and Later Participating Subdivisions.

51.     "*Participation Tier*" means the level of participation in this Agreement as determined pursuant to subsection VIII.C using the criteria set forth in Exhibit H.

52.     "*Parties*" means Janssen and the Settling States (each, a "*Party*").

53.     "*Payment Date*" means the date on which Janssen makes its payments pursuant to Section V and Exhibit M.

54.     "*Payment Year*" means the calendar year during which the applicable Initial Year Payments or Annual Payments are due pursuant to subsection V.B. Payment Year 1 is 2022, Payment Year 2 is 2023 and so forth. References to payment "for a Payment Year" mean the Initial Year Payments or Annual Payment due during that year. References to eligibility "for a Payment Year" mean eligibility in connection with the Initial Year Payments or Annual Payment due during that year.

55.     "*Preliminary Agreement Date*" means the date on which Janssen gives notice to the Settling States and MDL PEC of its determination that a sufficient number of States have agreed to be Settling States. This date shall be no more than fourteen (14) days after the end of the notice period to States, unless it is extended by written agreement of Janssen and the Enforcement Committee.

56.     "*Primary Subdivision*" means a Subdivision that has a population of 30,000 or more. A list of Primary Subdivisions in each State is provided in Exhibit I.

57.     "*Prior Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity prior to the Trigger Date and all such Released Claims were separately settled or finally adjudicated prior to the Trigger Date; *provided, however*, that if the final adjudication was pursuant to a Bar, such Subdivision shall not be considered a Prior Litigating Subdivision. Notwithstanding the prior sentence, Janssen and the State of the relevant Subdivision may agree in writing that such Subdivision shall not be considered a Prior Litigating Subdivision.

58.     "*Product*" means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is an opioid or opiate, as well as any product containing any such substance. It also includes: 1) the following when used in combination with opioids or opiates: benzodiazepine, carisoprodol, zolpidem, or gabapentin; and 2) a combination or "cocktail" of any stimulant or other chemical substance prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. For the

7

*revised March 30, 2022*

avoidance of doubt, "Product" does not include benzodiazepine, carisoprodol, zolpidem, or gabapentin when not used in combination with opioids or opiates. "Product" includes but is not limited to any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, any variant of these substances, or any similar substance. "Product" also includes any natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, and any related intermediate products used or created in the manufacturing process for any of the substances described in the preceding sentence.

59.     "*Reference Date*" means the date on which Janssen is to inform the Settling States and MDL PEC of its determination whether there is sufficient resolution of claims and potential claims at the Subdivision level to go forward with the settlement. The Reference Date is February 25, 2022, as extended by written agreement of Janssen and the Enforcement Committee on December 29, 2021.

60.     "*Released Claims*" means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Reference Date. Without limiting the foregoing, "Released Claims" include any Claims that have been asserted against the Released Entities by any Settling State or any of its Litigating Subdivisions or Litigating Special Districts in any federal, state or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding brought by a State, any of its Subdivisions or Special Districts, or any Releasors (whether or not such State, Subdivision, Special District, or Releasor has brought such action or proceeding). Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to the Agreement, whether or not such claims relate to Covered Conduct. The Parties intend that "Released Claims" be interpreted broadly. This Agreement does not release Claims by private individuals. It is the intent of the Parties that Claims by private individuals be treated in accordance with applicable law. Released Claims is also used herein to describe Claims brought by a Later Litigating Subdivision or other non-party Subdivision or Special District that would have been Released Claims if they had been brought by a Releasor against a Released Entity.

61.     "*Released Entities*" means Janssen and (1) all of Janssen's past and present direct or indirect parents, subsidiaries, divisions, predecessors, successors, assigns, including Noramco, Inc. and Tasmanian Alkaloids PTY. LTD.; (2) the past and present direct or indirect subsidiaries, divisions, and joint ventures, of any of the foregoing; (3) all of Janssen's insurers (solely in their role as insurers with respect to the Released Claims); (4) all of Janssen's, or of any entity described in subsection (1), past and present joint ventures; and (5) the respective past and present officers, directors, members, shareholders (solely in their capacity as

*revised March 30, 2022*

shareholders of the foregoing entities), partners, trustees, agents, and employees of any of the foregoing (for actions that occurred during and related to their work for, or employment with, Janssen). Any person or entity described in subsections (3)-(5) shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity. For the avoidance of doubt, the entities listed in Exhibit Q are not Released Entities; *and provided further* that any joint venture partner of Janssen or Janssen's subsidiary is not a Released Entity unless it falls within subsections (1)-(5) above. A list of Janssen's present subsidiaries and affiliates can be found at https://johnsonandjohnson.gcs-web.com/static-files/f61ae5f3-ff03-46c1-bfc9-174947884db2. Janssen's predecessor entities include but are not limited to those entities listed on Exhibit J. For the avoidance of doubt, any entity acquired, or joint venture entered into, by Janssen after the Reference Date is not a Released Entity.

62. "*Releasors*" means (1) each Settling State; (2) each Participating Subdivision; and (3) without limitation and to the maximum extent of the power of each Settling State's Attorney General and/or Participating Subdivision to release Claims, (a) the Settling State's and Participating Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in their official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in a Settling State, and (c) any person or entity acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in the Agreement. The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Subdivision. In addition to being a Releasor as provided herein, a Participating Subdivision shall also provide the Subdivision Settlement Participation Form or the Election and Release Form referenced in Section VII providing for a release to the fullest extent of the Participating Subdivision's authority, which shall be attached as an exhibit to the Agreement. Each Settling State's Attorney General represents that he or she has or has obtained (or will obtain no later than the Initial Participation Date) the authority set forth in the Representation and Warranty subsection of Section IV.

63. "*Revocation Event*" means with respect to a Bar, Settlement Class Resolution, or Case-Specific Resolution, a legislative amendment or a revocation, rescission, reversal, overruling, or interpretation that in any way limits the effect of such Bar, Settlement Class Resolution, or Case-Specific Resolution on Released Claims or any other action or event that otherwise deprives the Bar, Settlement Class Resolution or Case-Specific Resolution of force or effect in any material respect.

*revised March 30, 2022*

64.    "*Settlement Class Resolution*" means a class action resolution in a court of competent jurisdiction in a Settling State with respect to a class of Subdivisions and Special Districts in that State that (1) conforms with that Settling State's statutes, case law, and/or rules of procedure regarding class actions; (2) is approved and entered as an order of a court of competent jurisdiction in that State and has become final as defined in "State-Specific Finality"; (3) is binding on all Non-Participating Subdivisions and Special Districts in that State (other than opt outs as permitted under the next sentence); (4) provides that all such Non-Participating Subdivisions or Special Districts may not bring Released Claims against Released Entities, whether on the ground of the Agreement (or the releases herein) or otherwise; and (5) does not impose any costs or obligations on Janssen other than those provided for in the Agreement, or contain any provision inconsistent with any provision of the Agreement. If applicable state law requires that opt-out rights be afforded to members of the class, a class action resolution otherwise meeting the foregoing requirements shall qualify as a Settlement Class Resolution unless Subdivisions collectively representing more than 1% of the total population of all of that State's Subdivisions listed in Exhibit G opt out. In seeking certification of any Settlement Class, the applicable State and Participating Subdivisions shall make clear that certification is sought solely for settlement purposes and shall have no applicability beyond approval of the settlement for which certification is sought. Nothing in this Agreement constitutes an admission by any Party that class certification would be appropriate for litigation purposes in any case.

65.    "*Settlement Fund*" means the interest-bearing fund established under the Agreement into which all payments by Janssen are made other than amounts paid as attorneys' fees and costs or identified pursuant to subsection VI.B.2 as being used to pay attorneys' fees and costs. The Settlement Fund comprises the Abatement Accounts Fund, State Fund, and Subdivision Fund.

66.    "*Settlement Fund Administrator*" means the entity that determines the Annual Payments (including calculating Incentive Payments pursuant to Section V) and any amounts subject to suspension or offset pursuant to Sections V and IX), determines the Participation Tier, and administers and distributes amounts into the Settlement Fund. The duties of the Settlement Fund Administrator shall be governed by this Agreement. Prior to the Initial Participation Date, the Parties shall agree to selection and removal processes for and a detailed description of the Settlement Fund Administrator's duties, including a detailed mechanism for paying the Settlement Fund Administrator's fees and costs, all of which shall be appended to the Agreement as Exhibit L.

67.    "*Settlement Fund Escrow*" means the interest-bearing escrow fund established pursuant to this Agreement to hold disputed or suspended payments made under this Agreement.

68.    "*Settlement Payment Schedule*" means the schedule of payments attached to this Agreement as Exhibit M. A revised Settlement Payment Schedule will be

*revised March 30, 2022*

substituted for Exhibit M after any offsets, reductions, or suspensions under Sections V and IX are determined.

69. "*Settling State*" means any State that has entered the Agreement.

70. "*Special District*" means a formal and legally recognized sub-entity of a State that is authorized by State law to provide one or a limited number of designated functions, including but not limited to school districts, fire districts, healthcare & hospital districts, and emergency services districts. Special Districts do not include sub-entities of a State that provide general governance for a defined area that would qualify as a Subdivision.

71. "*State*" means any state of the United States of America, the District of Columbia, American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands. Additionally, the use of non-capitalized "state" to describe something (e.g., "state court") shall also be read to include parallel entities in commonwealths, territories, and the District of Columbia (e.g., "territorial court").

72. "*State Fund*" means a component of the Settlement Fund described in subsection VI.C.

73. "*State-Specific Finality*" means, with respect to the Settling State in question:

   a. the Agreement and the Consent Judgment have been approved and entered by the Court as to Janssen, including the release of all Released Claims against Released Entities as provided in this Agreement;

   b. for all lawsuits brought by the Settling State against Released Entities for Released Claims, either previously filed or filed as part of the entry of the Consent Judgment, the Court has stated in the Consent Judgment or otherwise entered an order finding that all Released Claims against Released Entities asserted in the lawsuit have been resolved by agreement; and

   c. (1) the time for appeal or to seek review of or permission to appeal from the approval and entry as described in subsection (a) hereof and entry of such order described in subsection (b) hereof has expired; or (2) in the event of an appeal, the appeal has been dismissed or denied, or the approval and entry described in (a) hereof and the order described in subsection (b) hereof have been affirmed in all material respects (to the extent challenged in the appeal) by the court of last resort to which such appeal has been taken and such dismissal or affirmance has become no longer subject to further appeal (including, without limitation, review by the United States Supreme Court).

74. "*State-Subdivision Agreement*" means an agreement that a Settling State reaches with the Subdivisions in that State regarding the allocation, distribution, and/or use of funds allocated to that State and to Participating Subdivisions in that State.

*revised March 30, 2022*

A State-Subdivision Agreement shall be effective if approved pursuant to the provisions of Exhibit O or if adopted by statute. Preexisting agreements addressing funds other than those allocated pursuant to this Agreement shall qualify if the approval requirements of Exhibit O are met. A State and its Subdivisions may revise, supplement, or refine a State-Subdivision Agreement if approved pursuant to the provisions of Exhibit O or if adopted by statute.

75.    "*Statutory Trust*" means a trust fund established by state law to receive funds allocated to a State's Abatement Accounts Fund and restrict their expenditure to Opioid Remediation purposes subject to reasonable administrative expenses. A State may give a Statutory Trust authority to allocate one or more of the three Settlement Funds, but this is not required.

76.    "*Subdivision*" means a formal and legally recognized sub-entity of a State that provides general governance for a defined area, including a county, parish, city, town, village, or similar entity. Unless otherwise specified, "Subdivision" includes all functional counties and parishes and other functional levels of sub-entities of a State that provide general governance for a defined area. Historic, non-functioning sub-entities of a State (such as Connecticut counties) are not Subdivisions, unless the entity has filed a lawsuit that includes a Released Claim against a Released Entity in a direct, parens patriae, or any other capacity. For purposes of this Agreement, the term Subdivision does not include Special Districts. A list of Subdivisions by state will be agreed to prior to any Subdivision sign-on period.

77.    "*Subdivision Allocation Percentage*" means for Subdivisions in a Settling State that are eligible to receive an allocation from the Subdivision Fund pursuant to subsection VI.C or subsection VI.D, the percentage as set forth in Exhibit G. The aggregate Subdivision Allocation Percentage of all Subdivisions receiving a Subdivision Allocation Percentage in each State shall equal 100%. Immediately upon the effectiveness of any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3 (or upon the effectiveness of an amendment to any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3) that addresses allocation from the Subdivision Fund, or upon any, whether before or after the Initial Participation Date, Exhibit G will automatically be amended to reflect the allocation from the Subdivision Fund pursuant to the State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by Section V.D.3. The Subdivision Allocation Percentages contained in Exhibit G may not change once notice is distributed pursuant to subsection VII.A, except upon the effectiveness of any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3 (or upon the effectiveness of an amendment to any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3) that addresses allocation from the Subdivision Fund. For the avoidance of doubt, no Subdivision

12

not listed on Exhibit G shall receive an allocation from the Subdivision Fund and no provision of this Agreement shall be interpreted to create such an entitlement.

78. "*Subdivision Fund*" means a component of the Settlement Fund described in subsection VI.C.

79. "*Subdivision Settlement Participation Form*" means the form attached as Exhibit K that Participating Subdivisions must execute and return to the Settlement Fund Administrator, and which shall (1) make such Participating Subdivisions signatories to this Agreement, (2) include a full and complete release of any and of such Subdivision's claims, and (3) require the prompt dismissal with prejudice of any Released Claims that have been filed by any such Participating Subdivision.

80. "*Threshold Motion*" means a motion to dismiss or equivalent dispositive motion made at the outset of litigation under applicable procedure. A Threshold Motion must include as potential grounds for dismissal, any applicable Bar or the relevant release by a Settling State or Participating Subdivision provided under this Agreement and, where appropriate under applicable law, any applicable limitations defense.

81. "*Trigger Date*" means, in the case of a Primary Subdivision, the Reference Date, or, in the case of all other Subdivisions, the Preliminary Agreement Date.

## II.    Participation by States and Condition to Preliminary Agreement

A.    *Notice to States*. On July 22, 2021 this Agreement shall be distributed to all States. The States' Attorneys General shall then have a period of thirty (30) days to decide whether to become Settling States. States that determine to become Settling States shall so notify the National Association of Attorneys General and Janssen and shall further commit to obtaining any necessary additional State releases prior to the Reference Date. This notice period may be extended by written agreement of Janssen and the Enforcement Committee.

B.    *Condition to Preliminary Agreement*. Following the notice period set forth in subsection II.A above, Janssen shall determine on or before the Preliminary Agreement Date whether, in its sole discretion, enough States have agreed to become Settling States to proceed with notice to Subdivisions as set forth in Section VII below. If Janssen determines that this condition has been satisfied, and that notice to the Litigating Subdivisions should proceed, it will so notify the Settling States by providing notice to the Enforcement Committee and Settlement Fund Administrator on the Preliminary Agreement Date. If Janssen determines that this condition has not been satisfied, it will so notify the Settling States by providing notice to the Enforcement Committee and Settlement Fund Administrator, and this Agreement will have no further effect and all releases and other commitments or obligations contained herein will be void.

C.    *Later Joinder by States*. After the Preliminary Agreement Date, a State may only become a Settling State with the consent of Janssen, in its sole discretion. If a State becomes a

*revised March 30, 2022*

Settling State more than sixty (60) days after the Preliminary Agreement Date, but on or before January 1, 2022, the Subdivisions and Special Districts in that State that become Participating Subdivisions and Participating Special Districts within ninety (90) days of the State becoming a Settling State shall be considered Initial Participating Subdivisions or Initial Participating Special Districts. A State may not become a Settling State after January 1, 2022.

### III.  Injunctive Relief

A.     *Entry of Injunctive Relief.* As part of the Consent Judgment, the Parties agree to the injunctive relief terms attached as Exhibit P.

### IV.  Release

A.     *Scope.* As of the Effective Date, the Released Entities will be released and forever discharged from all of the Releasors' Released Claims. Each Settling State (for itself and its Releasors) and Participating Subdivision (for itself and its Releasors) will, on or before the Effective Date, absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Settling State and its Attorney General to release claims. The Release shall be a complete bar to any Released Claim.

B.     *Claim Over and Non-Party Settlement.*

      1.     *Statement of Intent.* It is the intent of the Parties that:

           a.     Released Entities should not seek contribution or indemnification (other than pursuant to an insurance contract) from other parties for their payment obligations under this Settlement Agreement;

           b.     the payments made under this Settlement Agreement shall be the sole payments made by the Released Entities to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity);

           c.     Claims by Releasors against non-Parties should not result in additional payments by Released Entities, whether through contribution, indemnification or any other means; and

           d.     the Settlement meets the requirements of the Uniform Contribution Among Joint Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

*revised March 30, 2022*

e.     The provisions of this subsection IV.B are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

2.     *Contribution/Indemnity Prohibited.* No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Released Entity shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

3.     *Non-Party Settlement.* To the extent that, on or after the Reference Date, any Releasor enters into a Non-Party Settlement, including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Janssen in subsection IV.B.2, or a release from such Non-Released Entity in favor of the Released Entities (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.

4.     *Claim-Over.* In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that in subsection IV.B.3, or any Releasor files a Non-Party Covered Conduct Claim against a non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in subsection IV.B.3, and such Non-Released Entity asserts a Claim-Over against a Released Entity, that Releasor and Janssen shall take the following actions to ensure that the Released Entities do not pay more with respect to Covered Conduct to Releasors or to Non-Released Entities than the amounts owed under this Settlement Agreement by Janssen:

a.     Janssen shall notify that Releasor of the Claim-Over within sixty (60) days of the assertion of the Claim-Over or sixty (60) days of the Effective Date of this Settlement Agreement, whichever is later;

b.     Janssen and that Releasor shall meet and confer concerning the means to hold Released Entities harmless and ensure that it is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement;

15

*revised March 30, 2022*

    c.      That Releasor and Janssen shall take steps sufficient and permissible under the law of the State of the Releasor to hold Released Entities harmless from the Claim-Over and ensure Released Entities are not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement. Such steps may include, where permissible:

        (1)      Filing of motions to dismiss or such other appropriate motion by Janssen or Released Entities, and supported by Releasors, in response to any claim filed in litigation or arbitration;

        (2)      Reduction of that Releasor's Claim and any judgment it has obtained or may obtain against such Non-Released Entity by whatever amount or percentage is necessary to extinguish such Claim-Over under applicable law, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

        (3)      Placement into escrow of funds paid by the Non-Released Entities such that those funds are available to satisfy the Claim-Over;

        (4)      Return of monies paid by Janssen to that Releasor under this Settlement Agreement to permit satisfaction of a judgment against or settlement with the Non-Released Entity to satisfy the Claim-Over;

        (5)      Payment of monies to Janssen by that Releasor to ensure it is held harmless from such Claim-Over, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

        (6)      Credit to Janssen under this Settlement Agreement to reduce the overall amounts to be paid under the Settlement Agreement such that it is held harmless from the Claim-Over; and

        (7)      Such other actions as that Releasor and Janssen may devise to hold Janssen harmless from the Claim Over.

    d.      The actions of that Releasor and Janssen taken pursuant to paragraph (c) must, in combination, ensure Janssen is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement.

    e.      In the event of any dispute over the sufficiency of the actions taken pursuant to paragraph (c), that Releasor and Janssen may seek review by the National Arbitration Panel, provided that, if the parties agree, such dispute may be heard by the state court where the relevant Consent Judgment was filed. The National Arbitration Panel shall have authority to

*revised March 30, 2022*

require Releasors to implement a remedy that includes one or more of the actions specified in paragraph (c) sufficient to hold Released Entities fully harmless. In the event that the panel's actions do not result in Released Entities being held fully harmless, Janssen shall have a claim for breach of this Settlement Agreement by Releasors, with the remedy being payment of sufficient funds to hold Janssen harmless from the Claim-Over. For the avoidance of doubt, the prior sentence does not limit or eliminate any other remedy that Janssen may have.

5.    To the extent that the Claim-Over is based on a contractual indemnity, the obligations under subsection IV.B.4 shall extend solely to a Non-Party Covered Conduct Claim against a pharmacy, clinic, hospital or other purchaser or dispenser of Products, a manufacturer that sold Products, a consultant, and/or a pharmacy benefit manager or other third-party payor. Janssen shall notify the Settling States, to the extent permitted by applicable law, in the event that any of these types of Non-Released Entities asserts a Claim-Over arising out of contractual indemnity against it.

C.    *General Release.* In connection with the releases provided for in the Agreement, each Settling State (for itself and its Releasors) and Participating Subdivision expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may thereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Settling State (for itself and its Releasors) and Participating Subdivision hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Settling States' decision to enter into the Agreement or the Participating Subdivisions' decision to participate in the Agreement.

D.    *Res Judicata.* Nothing in the Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in the Agreement, and/or any Consent Judgment or other judgment entered on the Agreement, gives rise to under applicable law.

*revised March 30, 2022*

E.   *Representation and Warranty.* The signatories hereto on behalf of their respective Settling States and its Participating Subdivisions expressly represent and warrant that they will obtain on or before the Effective Date (or have obtained) the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) their respective Settling States; (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts; (3) any of their respective Settling State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license; and (4) any Participating Subdivisions. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Also, for the purposes of clause (3), a release from a State's Governor is sufficient to demonstrate that the appropriate releases have been obtained.

F.   *Effectiveness.* The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors. Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the Settlement Fund or any portion thereof, or by the enactment of future laws, or by any seizure of the Settlement Fund or any portion thereof.

G.   *Cooperation.* Releasors (i) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (ii) will reasonably cooperate with and not oppose any effort by a Released Entity to secure the prompt dismissal of any and all Released Claims.

H.   *Non-Released Claims.* Notwithstanding the foregoing or anything in the definition of Released Claims, the Agreement does not waive, release or limit any criminal liability, Claims for any outstanding liability under any tax or securities law, Claims against parties who are not Released Entities, Claims by private individuals and any claims arising under the Agreement for enforcement of the Agreement.

## V.   Monetary Relief and Payments

A.   **Structure of Payments**

1.   All payments under this Section V shall be made into the Settlement Fund, except that where specified, they shall be made into the Settlement Fund Escrow. The Settlement Fund shall be allocated and used only as specified in Section VI.

2.   Janssen shall pay into the Settlement Fund the sum of Four Billion, Five Hundred Thirty-Four Million, Six Hundred Fifteen Thousand, Three Hundred Eighty-Five Dollars ($4,534,615,385) minus (1) the offsets and credits specified in subsection

*revised March 30, 2022*

V.C below, (2) any unearned incentive payments under subsection V.E below, and (3) any adjustments under Section IX below.

3.     The payments to the Settlement Fund shall be divided into base and incentive payments as provided in subsections V.D and V.E below.

B.   **Payment Process**

1.     Except as otherwise provided in this Agreement, Janssen shall make two Initial Year Payments and nine (9) Annual Payments. The Initial Year Payments will consist of base payments. The first Annual Payment shall consist of incentive payments and subsequent Annual Payments shall each consist of base and incentive payments. The amount of all Initial Year Payments and Annual Payments shall be determined by the Settlement Fund Administrator applying Section V and Exhibit M. The Payment Date for the first Initial Year Payment shall be no later than ninety (90) days after the Effective Date. The Payment Date for the second Initial Year Payment shall be no later than July 15, 2022. The Payment Date for the first Annual Payment shall be no later than one year and sixty days following the Effective Date; the Payment Date for the second Annual Payment shall be no later than two years and sixty days following the Effective Date, and so forth, until all Annual Payments are made.

2.     All data relevant to the determination of each such payment shall be submitted to the Settlement Fund Administrator sixty (60) days prior to the Payment Date for each payment. Prior to the Initial Participation Date, the Parties will include an exhibit to the Agreement setting forth in detail the process for submitting such data to the Settlement Fund Administrator prior to each Payment Date. The Settlement Fund Administrator shall then determine the Initial Year Payment or Annual Payment and the amount to be paid to each Settling State and its Participating Subdivisions, consistent with the provisions in Exhibit L, by:

a.     determining, for each Settling State, the amount of base and incentive payments to which the State is entitled by applying the criteria in this Section;

b.     applying any reductions, suspensions, or offsets required by Sections V and IX; and

c.     determining the total amount owed by Janssen to all Settling States and Participating Subdivisions.

3.     The Settlement Fund Administrator shall then allocate the Initial Year Payment or Annual Payment pursuant to Section VI among the Settling States, among the separate types of funds for each Settling State (if applicable), and among the Participating Subdivisions.

4.     As soon as possible, but no later than fifty (50) days prior to the Payment Date for each payment and following the determination described in subsection V.B.2, the

19

*revised March 30, 2022*

Settlement Fund Administrator shall give notice to Janssen, the Settling States, and the Enforcement Committee of the amount of the Initial Year Payment or Annual Payment, the amount to be received by each Settling State, the amount to be received by the separate types of funds for each Settling State (if applicable), and the amount to be received by each Settling State's Participating Subdivisions.

5.    Within twenty-one (21) days of the notice provided by the Settlement Fund Administrator, any party may dispute, in writing, the calculation of the Initial Year Payment or Annual Payment, or the amount to be received by a Settling State and/or its Participating Subdivisions. Such disputing party must provide a written notice of dispute to the Settlement Fund Administrator, the Enforcement Committee, any affected Settling State, and Janssen identifying the nature of the dispute, the amount of money that is disputed, and the Settling State(s) affected.

6.    Within twenty-one (21) days of the sending of a written notice of dispute, any affected party may submit a response, in writing, to the Settlement Fund Administrator, the Enforcement Committee, any affected Settling State, and Janssen identifying the basis for disagreement with the notice of dispute.

7.    If no response is filed, the Settlement Fund Administrator shall adjust the amount calculated consistent with the written notice of dispute, and Janssen shall pay the adjusted amount as the Initial Year Payment or Annual Payment on the Payment Date. If a written response to the written notice of dispute is timely sent to the Settlement Fund Administrator, the Settlement Fund Administrator shall notify Janssen of the preliminary amount to be paid, which shall be the greater of the amount originally calculated by the Settlement Fund Administrator or the amount that would be consistent with the notice of dispute, *provided*, *however* that in no circumstances shall the preliminary amount to be paid be higher than the maximum amount of base and incentive payments for that payment as set forth in Exhibit M. For the avoidance of doubt, a transfer of suspended payments from the Settlement Fund Escrow does not count toward determining whether the amount to be paid is higher than the maximum amount of base and incentive payments for that payment as set forth in Exhibit M.

8.    The Settlement Fund Administrator shall place any disputed amount of the preliminary amount paid by Janssen into the Settlement Fund Escrow and shall disburse any undisputed amount to each Settling State and its Participating Subdivisions receiving direct allocations within fifteen (15) days of the Payment Date or at such later time as directed by each Settling State.

9.    Disputes described in this subsection (other than those for which no response is filed under subsection V.B.6) shall be resolved in accordance with the terms of Section XII.

10.   The process described in this subsection V.B shall also apply to accelerated payments made pursuant to Incentive A under subsection V.E.4.

*revised March 30, 2022*

11. For the avoidance of doubt, Subdivisions not listed on Exhibit G shall not receive an allocation from the Subdivision Fund.

C. **Offsets for Non-Settling States and Credits**

1. A credit of Two Hundred and Seventy Million Dollars ($270,000,000) shall be deducted from the maximum Settlement Fund amount to be paid by Janssen under subsection V.A.2 above and applied to the payment amounts as specified by Exhibit M. For the avoidance of doubt, the base payments and maximum incentive payment amounts shown on Exhibit M already reflect the deduction of the offset.

2. In addition to the credit, an offset equal to Four Billion, Two Hundred Sixty-Four Million, Six Hundred Fifteen Thousand, Three Hundred Eighty-Five Dollars ($4,264,615,385) times the percentage allocation assigned to each Non-Settling State in Exhibit F shall be deducted from the total amount to be paid by Janssen to the Settlement Fund under subsection V.A.2 above.

3. Notwithstanding any other provision of this Agreement or any other agreement, in the event that: (1) Janssen enters into an agreement with any Settling State that resolves such Settling State's Claims consistent with Section IV of this Agreement and such agreement has an effective date prior to the Effective Date of this Agreement (such agreement, a "State-Specific Agreement") and (2) pursuant to the terms of the State-Specific Agreement, any payments, or any portion thereof, made by Janssen thereunder are made in lieu of any payments (for the avoidance of doubt, including the Additional Restitution Amount), or any portion thereof, to be made under this Agreement and Janssen makes such a payment pursuant to the State-Specific Agreement, then Janssen will reduce any payments allocable to such Settling State (whether made to the Settlement Fund Escrow or the Settlement Fund) made pursuant to this Agreement to the extent such amount was already paid pursuant to the terms of the State-Specific Agreement. This provision includes but is not limited to any corresponding amounts already paid to the Qualified Settlement Fund established under the Agreement between Janssen and the State of New York dated June 25, 2021.

4. Non-Settling States shall not be eligible for any payments or have any rights in connection with this Agreement. Accordingly, the stated maximum dollar amounts of the payments specified in Exhibit M are reduced by the aggregate Overall Allocation Percentage of Non-Settling States as set forth in Exhibit F.

D. **Base Payments**

1. Janssen shall make base payments into the Settlement Fund totaling One Billion, Nine Hundred Forty-Two Million, Three Hundred Forty-Six Thousand, One Hundred Fifty-Five Dollars ($1,942,346,155) minus the offsets and credits specified in subsection V.C above. The base payments will be paid in accordance

*revised March 30, 2022*

with the payment schedule specified by Exhibit M, subject to potential acceleration and potential deductions as provided herein.

2.     The base payments will be allocated by Settling State proportionate to each Settling State's assigned percentages in Exhibit F, adjusted for any Non-Settling States.

3.     If a State qualifies for Incentive A (described below), Janssen will accelerate the base payment schedule so that the State receives its Payment Year 1-4 base payment allocations and full Payment Year 1-4 Incentive A payment amounts within ninety (90) days of notice, on or after the Effective Date, of the Bar's implementation. Payment Year 5-10 payments are made annually and cannot be accelerated.

4.     The exemplar payment schedule in Exhibit M does not account for deductions for offsets or unearned incentives, which will be separately calculated for each payment.

E.    **Incentive Payments**

1.     Janssen shall make incentive payments into the Settlement Fund potentially totaling up to Two Billion, Three Hundred Twenty-Two Million, Two Hundred Sixty-Nine Thousand, Two Hundred Thirty Dollars ($2,322,269,230), consisting of $2,109,038,461 for Incentive A (or, alternatively up to $2,109,038,461 for combined Incentives B and C if Incentive A is not achieved) and $213,230,769 for Incentive D, prior to being adjusted for credits if every State is a Settling State and were to satisfy the requirements specified below to earn its maximum incentive amount. The incentive payments will be paid in accordance with the payment schedule in Exhibit M, subject to potential acceleration and potential deductions as provided herein.

2.     The maximum incentive amount for any Settling State shall be $2,322,269,230 times the percentage allocation assigned that Settling State in Exhibit F.

3.     A Settling State may qualify to receive incentive payments in addition to base payments if, as of the Incentive Payment Final Eligibility Date, it meets the incentive eligibility requirements specified below. Settling States may qualify for incentive payments in four ways. If a Settling State qualifies for "Incentive A," it will become entitled to receive the maximum Incentive A payment allocable to the State as stated in subsection V.E.1. If a Settling State does not qualify for Incentive A, it can alternatively qualify for "Incentive B" and/or "Incentive C." A Settling State can qualify for "Incentive D" regardless of whether it qualifies for another incentive payment. The Incentive Payment Final Eligibility Date is not relevant to Incentive D.

*revised March 30, 2022*

4.     *Incentive A: Accelerated Incentive Payment for Full Participation.*

    a.     A Settling State shall receive an accelerated Incentive A payment allocable to the State for full participation as described in subsection V.E.4.b.

    b.     A State qualifies for Incentive A by: (1) complete participation in the form of releases consistent with Section IV above from all Litigating Subdivisions and Litigating Special Districts, Non-Litigating Subdivisions with population over 10,000, and Non-Litigating Covered Special Districts (as defined in subsection V.E.7.e); (2) a Bar; or (3) a combination of approaches in clauses (1)-(2) that achieves the same level of resolution of Subdivision and Special District claims (e.g., a law barring future litigation combined with full joinder by Litigating Subdivisions and Litigating Special Districts). For purposes of Incentive A, a Subdivision or Special District is considered a "Litigating Subdivision" or "Litigating Special District" if it has brought Released Claims against Released Entities on or before the Reference Date; all other Subdivisions and Special Districts are considered "Non-Litigating." For purposes of Incentive A, Non-Litigating Special Districts shall not include a Special District with any of the following words or phrases in its name: mosquito, pest, insect, spray, vector, animal, air quality, air pollution, clean air, coastal water, tuberculosis, and sanitary.

    c.     Qualification for Incentive A entitles the qualifying Settling State to expedited payment of base payments and incentive payments for Payment Years 1-4, which Janssen shall pay into the Settlement Fund within ninety (90) days after receiving notice from the Settlement Fund Administrator that a State has qualified for Incentive A, but in no event less than ninety (90) days from the Effective Date. Base and incentive payments for Payment Years 5-10 will not be expedited.

    d.     If a Settling State qualifies for Incentive A after receiving an incentive payment under Incentives B or C, described below, the Settling State's payments under Incentive A will equal the remainder of its total Incentive A payments less any payments previously received under Incentives B or C. A Settling State that receives all of its maximum incentive allocation under Incentive A shall not receive additional incentive payments under Incentives B or C.

    e.     A Settling State that is not eligible for Incentive A as of the Incentive Payment Final Eligibility Date shall not be eligible for Incentive A for that Payment Year or any subsequent Payment Years.

*revised March 30, 2022*

5.      *Incentive B: Early Participation or Released Claims by Litigating Subdivisions and Litigating Special Districts.*

a.      If a Settling State does not qualify for Incentive A, it may still qualify to receive up to 60% of its total potential Incentive A payment allocation under Incentive B.

b.      A Settling State can qualify for an Incentive B payment if Litigating Subdivisions and Litigating Special Districts collectively representing at least 75% of the Settling State's litigating population are either Participating Subdivisions or have their claims resolved through Case-Specific Resolutions.

(1)     A Settling State's litigating population is the sum of the population of all Litigating Subdivisions and Litigating Special Districts. A Settling State's litigating population shall include all Litigating Subdivisions and Litigating Special Districts whose populations overlap in whole or in part with other Litigating Subdivisions and Litigating Special Districts, for instance in the case of a Litigating Special District, city, or township contained within a county.

(2)     For example, if a Litigating Special District and a city that is a Litigating Subdivision are located within a county that is a Litigating Subdivision, then each of their individual populations would be added together to determine the total litigating population. Special District populations shall be counted in the manner set forth in subsection XIII.C. If each qualifies as a Litigating Subdivision or Litigating Special District and the county has a population of 10, the City has a population of 8, and the Special District has a population of 1, the total litigating population would be 19.

c.      The following time periods apply to Incentive B payments:

(1)     Period 1: Zero to two hundred ten (210) days after the Effective Date.

(2)     Period 2: Two hundred eleven (211) days to one year after the Effective Date.

(3)     Period 3: One year and one day to two years after the Effective Date.

d.      Within Period 1: If Litigating Subdivisions and Litigating Special Districts collectively representing at least 75% of a Settling State's litigating population are Participating Subdivisions or have their claims resolved through Case-Specific Resolutions during Period 1, a sliding scale will determine the share of the funds available under Incentive B, with a

24

*revised March 30, 2022*

maximum of 60% of the Settling State's total potential incentive payment allocation available. Under that sliding scale, if Litigating Subdivisions and Litigating Special Districts collectively representing 75% of a Settling State's litigating population become Participating Subdivisions or achieve Case-Specific Resolution status by the end of Period 1, a Settling State will receive 50% of the total amount available to it under Incentive B. If more Litigating Subdivisions and Litigating Special Districts become Participating Subdivisions or achieve Case-Specific Resolution status, the Settling State shall receive an increased percentage of the total amount available to it under Incentive B as shown in the table below.

| Participation or Case-Specific Resolution Levels (As percentage of litigating population) | Incentive B Award (As percentage of total amount available to State under Incentive B) |
|---|---|
| 75% | 50% |
| 76% | 52% |
| 77% | 54% |
| 78% | 56% |
| 79% | 58% |
| 80% | 60% |
| 85% | 70% |
| 90% | 80% |
| 95% | 90% |
| 100% | 100% |

  e. <u>Within Period 2</u>: If a Settling State did not qualify for an Incentive B payment in Period 1, but Litigating Subdivisions and Litigating Special Districts collectively representing at least 75% of the Settling State's litigating population become Participating Subdivisions or achieve Case-Specific Resolution status by the end of Period 2, then the Settling State qualifies for 75% of the Incentive B payment it would have qualified for in Period 1.

  f. <u>Within Period 3</u>: If a Settling State did not qualify for an Incentive B payment in Periods 1 or 2, but Litigating Subdivisions and Litigating Special Districts collectively representing at least 75% of the Settling State's litigating population become Participating Subdivisions or achieve Case-Specific Resolution status by the end of Period 3, then the Settling State qualifies for 50% of the Incentive B payment it would have qualified for in Period 1.

  g. A Settling State that receives the Incentive B payment for Periods 1 and/or 2 can receive additional payments if it secures participation from additional Litigating Subdivisions and Litigating Special Districts (or Case-Specific Resolutions of their claims) during Periods 2 and/or 3.

*revised March 30, 2022*

Those additional payments would equal 75% (for additional participation or Case-Specific Resolutions during Period 2) and 50% (for additional participation or Case-Specific Resolutions during Period 3) of the amount by which the increased litigating population levels would have increased the Settling State's Incentive B payment if they had been achieved in Period 1.

h.  If Litigating Subdivisions and Litigating Special Districts that have become Participating Subdivisions or achieved Case-Specific Resolution status collectively represent less than 75% of a Settling State's litigating population by the end of Period 3, the Settling State shall not receive any Incentive B payment.

i.  If there are no Litigating Subdivisions or Litigating Special Districts in a Settling State, and that Settling State is otherwise eligible for Incentive B, that Settling State will receive its full allocable share of Incentive B.

j.  Incentives earned under Incentive B shall accrue after each of Periods 1, 2, and 3. After each period, the Settlement Fund Administrator shall conduct a look-back to assess which Settling States vested an Incentive B payment in the preceding period. Based on the look-back, the Settlement Fund Administrator will calculate the incentives accrued under Incentive B for the period; *provided* that the percentage of Incentive B for which a Settling State is eligible as of the Incentive Payment Final Eligibility Date shall cap its eligibility for that Payment Year and all subsequent Payment Years.

6.  *Incentive C: Early Participation of Subdivisions*

a.  If a Settling State does not qualify for Incentive A, it may still qualify to receive up to 40% of its total potential Incentive A payment allocation under Incentive C, which has two parts.

(1)  Part 1: Under Incentive C, Part 1, a Settling State can receive up to 75% of its Incentive C allocation. A Settling State can qualify for a payment under Incentive C, Part 1 only if Primary Subdivisions (whether Litigating Primary Subdivisions or Non-Litigating Primary Subdivisions as of the Reference Date) representing at least 60% of the Settling State's Primary Subdivision population become Participating Subdivisions or achieve Case-Specific Resolution status.

(2)  A Settling State's Primary Subdivision population is the sum of the population of all Primary Subdivisions (whether Litigating Primary Subdivisions or Non-Litigating Primary Subdivisions as of the Reference Date). Because Subdivisions include Subdivisions whose populations overlap in whole or in part with other

26

*revised March 30, 2022*

Subdivisions, for instance in the case of a city or township contained within a county, the Settling State's Primary Subdivision population is greater than Settling State's total population. (Special Districts are not relevant for purposes of Incentive C calculations.)

(3)     A sliding scale will determine the share of the funds available under Incentive C, Part 1 to Settling States meeting the minimum 60% threshold. Under that sliding scale, if a Settling State secures participation or Case-Specific Resolutions from Primary Subdivisions representing 60% of its total Primary Subdivision population, it will receive 40% of the total amount potentially available to it under Incentive C, Part 1. If a Settling State secures participation or Case-Specific Resolutions from Primary Subdivisions representing more than 60% of its Primary Subdivision population, the Settling State shall be entitled to receive a higher percentage of the total amount potentially available to it under Incentive C, Part 1, on the scale shown in the table below. If there are no Primary Subdivisions, and that Settling State is otherwise eligible for Incentive C, that Settling State will receive its full allocable share of Incentive C, Part 1.

| Participation or Case-Specific Resolution Levels (As percentage of total Primary Subdivision population) | Incentive C Award (As percentage of total amount available to State under Incentive C, Part 1) |
|---|---|
| 60% | 40% |
| 70% | 45% |
| 80% | 50% |
| 85% | 55% |
| 90% | 60% |
| 91% | 65% |
| 92% | 70% |
| 93% | 80% |
| 94% | 90% |
| 95% | 100% |

b.      Part 2:  If a Settling State qualifies to receive an incentive under Incentive C, Part 1, the State can also qualify to receive an additional incentive amount equal to 25% of its total potential Incentive C allocation by securing 100% participation of the ten (10) largest Subdivisions by population in the Settling State. (Special Districts are not relevant for purposes of this calculation.) If a Settling State does not qualify for any amount under Incentive C, Part 1, it cannot qualify for Incentive C, Part 2.

c.      Incentives earned under Incentive C shall accrue on an annual basis up to three years after the Effective Date. At one, two, and three years after the

*revised March 30, 2022*

Effective Date, the Settlement Fund Administrator will conduct a look-back to assess which Subdivisions had agreed to participate or had their claim resolved through a Case-Specific Resolution that year. Based on the look-back, the Settlement Fund Administrator will calculate the incentives accrued under Incentive C for the year; *provided* that the percentage of Incentive C for which a Settling State is eligible as of the Incentive Payment Final Eligibility Date shall cap its eligibility for that Payment Year and all subsequent Payment Years.

7.  *Incentive D: Release of Payments if No Qualifying Special District Litigation.*

   a.  $213,230,769 shall be available for potential Incentive D payments according to the terms specified in this subsection V.E.7.

   b.  If, within five years of the Reference Date, a Covered Special District files litigation against any Released Entity, Janssen shall, within thirty (30) days of Janssen being served, provide notice of the litigation to the Settling State in which the Covered Special District sits, which shall file a motion to intervene in the litigation and use its best efforts to obtain either dismissal of the litigation in cooperation with Janssen, or a release consistent with Section IV of the Special District's Claims.

   c.  A Settling State shall receive its allocation of the Incentive D payment if, within five years after the Effective Date (the "look-back date"), no Covered Special District within the Settling State has filed litigation which has survived a Threshold Motion and remains pending as of the look-back date, unless the dismissal after the litigation survived the Threshold Motion is conditioned or predicated upon payment by a Released Entity (apart from payments by Janssen incurred under the Agreement or injunctive relief obligations incurred by it).

   d.  Prior to the look-back date, a Released Entity shall not enter into a settlement with a Covered Special District unless the State in which the Covered Special District sits consents to such a settlement or unreasonably withholds consent of such a settlement.

   e.  "*Covered Special Districts*" are school districts, healthcare/hospital districts, and fire districts, subject to the following population thresholds:

      (1)  For school districts, the K-12 student enrollment must be 25,000 or 0.12% of a State's population, whichever is greater;

      (2)  For fire districts, the district must cover a population of 25,000, or 0.20% of a State's population if a State's population is greater than 18 million. If not easily calculable from state data sources and agreed to between the State and Janssen, a fire district's population is calculated by dividing the population of the county or counties a

28

*revised March 30, 2022*

fire district serves by the number of fire districts in the county or counties.

(3)    For healthcare/hospital districts, the district must have at least 125 hospital beds in one or more hospitals rendering services in that district.

## VI.    <u>Allocation and Use of Settlement Funds</u>

A.    *Components of Settlement Fund*. The Settlement Fund shall be comprised of an Abatement Accounts Fund, a State Fund, and a Subdivision Fund for each Settling State. The payments under Section V into the Settlement Fund shall be initially allocated among those three (3) sub-funds and distributed and used as provided below or as provided for by a State-Subdivision Agreement (or other State-specific allocation of funds). Unless otherwise specified herein, payments placed into the Settlement Fund do not revert back to Janssen.

B.    *Use of Settlement Payments*.

1.    It is the intent of the Parties that the payments disbursed from the Settlement Fund to Settling States and Participating Subdivisions listed in Exhibit G be for Opioid Remediation, subject to limited exceptions that must be documented in accordance with subsection VI.B.2. In no event may less than 86.5% of Janssen's maximum amount of payments pursuant to Sections V, X, and XI over the entirety of all Payment Years (but not any single Payment Year) be spent on Opioid Remediation.

2.    While disfavored by the Parties, a Settling State or Participating Subdivision listed on Exhibit G may use monies from the Settlement Fund (that have not been restricted by this Agreement solely to future Opioid Remediation) for purposes that do not qualify as Opioid Remediation. If, at any time, a Settling State or a Participating Subdivision listed on Exhibit G uses any monies from the Settlement Fund for a purpose that does not qualify as Opioid Remediation, such Settling State or Participating Subdivision shall identify such amounts and report to the Settlement Fund Administrator and Janssen how such funds were used, including if used to pay attorneys' fees, investigation costs, litigation costs, or costs related to the operation and enforcement of this Agreement, respectively. It is the intent of the Parties that the reporting under this subsection VI.B.2 shall be available to the public. For the avoidance of doubt, (a) any amounts not identified under this subsection VI.B.2 as used to pay attorneys' fees, investigation costs, or litigation costs shall be included in the "Compensatory Restitution Amount" for purposes of subsection VI.F and (b) Participating Subdivisions not listed on Exhibit G or Participating Special Districts that receive monies from the Settlement Fund indirectly may only use such monies from the Settlement Fund for purposes that qualify as Opioid Remediation.

*revised March 30, 2022*

C.   *Allocation of Settlement Fund.* The allocation of the Settlement Fund allows for different approaches to be taken in different states, such as through a State-Subdivision Agreement. Given the uniqueness of States and their Subdivisions, Settling States and Participating Subdivisions are encouraged to enter into State-Subdivision Agreements in order to direct the allocation of their portion of the Settlement Fund. As set out below, the Settlement Fund Administrator will make an initial allocation to three (3) state-level sub-funds. The Settlement Fund Administrator will then, for each Settling State and its Participating Subdivisions listed on Exhibit G, apply the terms of this Agreement and any relevant State-Subdivision Agreement, Statutory Trust, Allocation Statute, or voluntary redistribution of funds as set out below before disbursing the funds.

1.   <u>Base Payments</u>. The Settlement Fund Administrator will allocate base payments under subsection V.D among the Settling States in proportion to their respective Overall Allocation Percentages. Base payments for each Settling State will then be allocated 15% to its State Fund, 70% to its Abatement Accounts Fund, and 15% to its Subdivision Fund. Amounts may be reallocated and will be distributed as provided in subsection VI.D.

2.   <u>Incentive Payments</u>. The Settlement Fund Administrator will treat incentive payments under subsection V.E on a State-specific basis. Incentive payments for which a Settling State is eligible under subsection V.E will be allocated 15% to its State Fund, 70% to its Abatement Accounts Fund, and 15% to its Subdivision Fund. Amounts may be reallocated and will be distributed as provided in subsection VI.D.

3.   <u>Application of Adjustments</u>. If a reduction, offset, or suspension under Section IX applies with respect to a Settling State, the reduction, offset, or suspension shall be applied proportionally to all amounts that would otherwise be apportioned and distributed to the State Fund, the Abatement Accounts Fund, and the Subdivision Fund for that State.

4.   <u>Settlement Fund Administrator</u>. Prior to the Initial Participation Date, Janssen and the Enforcement Committee will agree to a detailed mechanism consistent with the foregoing for the Settlement Fund Administrator to follow in allocating, apportioning, and distributing payments, which shall be appended hereto as Exhibit L.

5.   <u>Settlement Fund Administrator Costs</u>. Any costs and fees associated with or arising out of the duties of the Settlement Fund Administrator as described in Exhibit L with regard to Janssen's payments to the Settlement Fund shall be paid out of interest accrued on the Settlement Fund and from the Settlement Fund should such interest prove insufficient.

D.   *Settlement Fund Reallocation and Distribution.* As set forth below, within a particular Settling State's account, amounts contained in the Settlement Fund sub-funds may be reallocated and distributed per a State-Subdivision Agreement or other means. If the

*revised March 30, 2022*

apportionment of amounts is not addressed and controlled under subsections VI.D.1-2, then the default provisions of subsection VI.D.4 apply. It is not necessary that a State-Subdivision Agreement or other means of allocating funds pursuant to subsections VI.D.1-2 address all of the Settlement Fund sub-funds. For example, a Statutory Trust might only address disbursements from a Settling State's Abatement Accounts Fund.

1.      <u>Distribution by State-Subdivision Agreement</u>. If a Settling State has a State-Subdivision Agreement, amounts apportioned to that State's State Fund, Abatement Accounts Fund, and Subdivision Fund under subsection VI.C shall be reallocated and distributed as provided by that agreement. Any State-Subdivision Agreement entered into after the Preliminary Agreement Date shall be applied only if it requires: (1) that all amounts be used for Opioid Remediation, except as allowed by subsection VI.B.2, and (2) that at least 70% of amounts be used solely for future Opioid Remediation (references to "future Opioid Remediation" include amounts paid to satisfy any future demand by another governmental entity to make a required reimbursement in connection with the past care and treatment of a person related to the Alleged Harms). For a State-Subdivision Agreement to be applied to the relevant portion of an Initial Year Payment or an Annual Payment, notice must be provided to Janssen and the Settlement Fund Administrator at least sixty (60) days prior to the Payment Date.

2.      <u>Distribution by Allocation Statute</u>. If a Settling State has an Allocation Statute and/or a Statutory Trust that addresses allocation or distribution of amounts apportioned to such State's State Fund, Abatement Accounts Fund, and/or Subdivision Fund and that, to the extent any or all such sub-funds are addressed, requires (1) all amounts to be used for Opioid Remediation, except as allowed by subsection VI.B.2, and (2) at least 70% of all amounts to be used solely for future Opioid Remediation, then, to the extent allocation or distribution is addressed, the amounts apportioned to that State's State Fund, Abatement Accounts Fund, and Subdivision Fund under subsection VI.C shall be allocated and distributed as addressed and provided by the applicable Allocation Statute or Statutory Trust. For the avoidance of doubt, an Allocation Statute or Statutory Trust need not address all three (3) sub-funds that comprise the Settlement Fund, and if the applicable Allocation Statute or Statutory Trust does not address distribution of all or some of these three (3) sub-funds, the applicable Allocation Statute or Statutory Trust does not replace the default provisions in subsection VI.D.4 of any such unaddressed fund. For example, if an Allocation Statute or Statutory Trust that meets the requirements of this subsection VI.D.2 only addresses funds restricted to abatement, then the default provisions in this Agreement concerning allocation among the three (3) sub-funds comprising the Settlement Fund and the distribution of the State Fund and Subdivision Fund for that State would still apply, while the distribution of the applicable State's Abatement Accounts Fund would be governed by the qualifying Allocation Statute or Statutory Trust.

3.      <u>Voluntary Redistribution</u>. A Settling State may choose to reallocate all or a portion of its State Fund to its Abatement Accounts Fund. A Participating Subdivision listed on Exhibit G may choose to reallocate all or a portion of its

allocation from the Subdivision Fund to the State's Abatement Accounts Fund or to another Participating Subdivision or Participating Special District. For a voluntary redistribution to be applied to the relevant portion of an Initial Year Payment or an Annual Payment, notice must be provided to the Settling Distributors and the Settlement Fund Administrator at least sixty (60) days prior to the Payment Date.

4.   Distribution in the Absence of a State-Subdivision Agreement, Allocation Statute, or Statutory Trust. If subsections VI.D.1-2 do not apply, amounts apportioned to that State's State Fund, Abatement Accounts Fund, and Subdivision Fund under subsection VI.C shall be distributed as follows:

    a.   Amounts apportioned to that State's State Fund shall be distributed to that State.

    b.   Amounts apportioned to that State's Abatement Accounts Fund shall be distributed consistent with subsection VI.E. Each Settling State shall submit to the Settlement Fund Administrator a designation of a lead state agency or other entity to serve as the single point of contact for that Settling State's funding requests from the Abatement Accounts Fund and other communications with the Settlement Fund Administrator. The designation of an individual entity is for administrative purposes only and such designation shall not limit funding to such entity or even require that such entity receive funds from this Agreement. The designated entity shall be the only entity authorized to request funds from the Settlement Fund Administrator to be disbursed from that Settling State's Abatement Accounts Fund. If a Settling State has established a Statutory Trust then that Settling State's single point of contact may direct the Settlement Fund Administrator to release the State's Abatement Accounts Fund to the Statutory Trust.

    c.   Amounts apportioned to that State's Subdivision Fund shall be distributed to Participating Subdivisions in that State listed on Exhibit G per the Subdivision Allocation Percentage listed in Exhibit G. Subsection VII.I shall govern amounts that would otherwise be distributed to Non-Participating Subdivisions listed in Exhibit G.

    d.   Special Districts shall not be allocated funds from the Subdivision Fund, except through a voluntary redistribution allowed by subsection VI.D.3. A Settling State may allocate funds from its State Fund or Abatement Accounts Fund for Special Districts.

5.   Restrictions on Distribution. No amounts may be distributed from the Subdivision Fund contrary to Section VII, *i.e.*, no amounts may be distributed directly to Non-Participating Subdivisions or to Later Participating Subdivisions in excess of what is permissible under subsection VII.E. Amounts allocated to the Subdivision Fund that cannot be distributed by virtue of the preceding sentence shall be distributed

*revised March 30, 2022*

into the sub-account in the Abatement Accounts Fund for the Settling State in which the Subdivision is located, unless those payments are redirected elsewhere by a State-Subdivision Agreement described in subsection VI.D.1 or by an Allocation Statute or a Statutory Trust described in subsection VI.D.2.

E.      *Provisions Regarding Abatement Accounts Fund.*

1.      <u>State-Subdivision Agreement, Allocation Statute, and Statutory Trust Fund Provisions</u>. A State-Subdivision Agreement, Allocation Statute, or Statutory Trust may govern the operation and use of amounts in that State's Abatement Accounts Fund so long as it complies with the requirements of subsection VI.D.1 or VI.D.2 as applicable, and all direct payments to Subdivisions comply with subsections VII.E-H.

2.      <u>Absence of a State-Subdivision Agreement, Allocation Statute, or Statutory Trust</u>. In the absence of a State-Subdivision Agreement, Allocation Statute, or Statutory Trust that addresses distribution, the Abatement Accounts Fund will be used solely for future Opioid Remediation and the following shall apply with respect to a Settling State:

a.      *Regional Remediation.*

(1)     At least 50% of distributions for remediation from a State's Abatement Accounts Fund shall be annually allocated and tracked to the regional level. A Settling State may allow the Advisory Committee established pursuant to subsection VI.E.2.d to define its regions and assign regional allocations percentages. Otherwise, a Settling State shall (1) define its initial regions, which shall consist of one (1) or more Subdivisions and which shall be designated by the State agency with primary responsibility for substance abuse disorder services employing, to the maximum extent practical, existing regions established in that State for opioid abuse treatment or other public health purposes; and (2) assign initial regional allocation percentages to the regions based on the Subdivision Allocation Percentages in Exhibit G and an assumption that all Subdivisions listed on Exhibit G will become Participating Subdivisions.

(2)     This minimum regional expenditure percentage is calculated on the Settling State's initial Abatement Accounts Fund allocation and does not include any additional amounts a Settling State has directed to its Abatement Accounts Fund from its State Fund, or any other amounts directed to the fund. A Settling State may dedicate more than 50% of its Abatement Accounts Fund to the regional expenditure and may annually adjust the percentage of its Abatement Accounts Fund dedicated to regional expenditures as long as the percentage remains above the minimum amount.

*revised March 30, 2022*

(3)    The Settling State (1) has the authority to adjust the definition of the regions, and (2) may annually revise the percentages allocated to each region to reflect the number of Subdivisions in each region that are Non-Participating Subdivisions.

b.    *Subdivision Block Grants*. Certain Subdivisions listed on Exhibit G shall be eligible to receive regional allocation funds in the form of a block grant for future Opioid Remediation. A Participating Subdivision listed on Exhibit G eligible for block grants is a county or parish (or in the case of States that do not have counties or parishes that function as political subdivisions, a city) that (1) does not contain a Litigating Subdivision or a Later Litigating Subdivision for which it has the authority to end the litigation through a release, bar, or other action; (2) either (i) has a population of 400,000 or more or (ii) in the case of California has a population of 750,000 or more; and (3) has funded or otherwise managed an established health care or treatment infrastructure (e.g., health department or similar agency). Each Subdivision listed on Exhibit G eligible to receive block grants shall be assigned its own region.

c.    *Small States*. Notwithstanding the provisions of subsection VI.E.2.a, Settling States with populations under four (4) million that do not have existing regions described in subsection VI.E.2.a shall not be required to establish regions. However, such a Settling State that contains one (1) or more Subdivisions listed on Exhibit G eligible for block grants under subsection VI.E.2.b shall be divided regionally so that each block-grant eligible Subdivision listed on Exhibit G is a region and the remainder of the state is a region.

d.    *Advisory Committee*. The Settling State shall designate an Opioid Settlement Remediation Advisory Committee (the "*Advisory Committee*") to provide input and recommendations regarding remediation spending from that Settling State's Abatement Accounts Fund. A Settling State may elect to use an existing advisory committee or similar entity (created outside of a State-Subdivision Agreement or Allocation Statute); provided, however, the Advisory Committee or similar entity shall meet the following requirements:

(1)    Written guidelines that establish the formation and composition of the Advisory Committee, terms of service for members, contingency for removal or resignation of members, a schedule of meetings, and any other administrative details;

(2)    Composition that includes at least an equal number of local representatives as state representatives;

(3)    A process for receiving input from Subdivisions and other communities regarding how the opioid crisis is affecting their

*revised March 30, 2022*

communities, their abatement needs, and proposals for abatement strategies and responses; and

(4)     A process by which Advisory Committee recommendations for expenditures for Opioid Remediation will be made to and considered by the appropriate state agencies.

3.     <u>Abatement Accounts Fund Reporting</u>. The Settlement Fund Administrator shall track and assist in the report of remediation disbursements as agreed to among the Parties.

F.     *Nature of Payment.* Janssen, the Settling States, the Participating Subdivisions, and the Participating Special Districts, acknowledge and agree that notwithstanding anything to the contrary in this Agreement, including, but not limited to, the scope of the Released Claims:

1.     Janssen has entered into this Agreement to avoid the delay, expense, inconvenience, and uncertainty of further litigation;

2.     The Settling States, the Participating Subdivisions, and the Participating Special Districts sought compensatory restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) as damages for the Alleged Harms allegedly suffered by the Settling States and Participating Subdivisions;

3.     By executing this Agreement the Settling States, the Participating Subdivisions, and the Participating Special Districts certify that: (a) the Compensatory Restitution Amount is no greater than the amount, in the aggregate, of the Alleged Harms allegedly suffered by the Settling States and Participating Subdivisions; and (b) the portion of the Compensatory Restitution Amount received by each Settling State or Participating Subdivision is no greater than the amount of the Alleged Harms allegedly suffered by such Settling State or Participating Subdivision;

4.     The payment of the Compensatory Restitution Amount by Janssen constitutes, and is paid for, compensatory restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) for alleged damage or harm (as compensation for alleged damage or harm arising out of alleged bodily injury) allegedly caused by Janssen;

5.     The Compensatory Restitution Amount is being paid as compensatory restitution (within the meaning of 26 U.S.C. § 162(f)(2)(A)) in order to restore, in whole or in part, the Settling States and Participating Subdivisions to the same position or condition that they would be in had the Settling States and Participating Subdivisions not suffered the Alleged Harms;

6.     For the avoidance of doubt: (a) no portion of the Compensatory Restitution Amount represents reimbursement to any Settling State, Participating Subdivision, Participating Special District, or other person or entity for the costs of any investigation or litigation, (b) the entire Compensatory Restitution Amount

35

*revised March 30, 2022*

is properly characterized as described in subsection VI.F, and (c) no portion of the Compensatory Restitution Amount constitutes disgorgement or is properly characterized as the payment of statutory or other fines, penalties, punitive damages, other punitive assessments, or attorneys' fees; and

7. New York, on behalf of all Settling States, Participating Subdivisions, and Participating Special Districts (the "Form 1098-F Filer") shall complete and file Form 1098-F with the Internal Revenue Service on or before February 28 (March 31 if filed electronically) of the year following the calendar year in which the order entering this Agreement becomes binding. On the Form 1098-F, the Form 1098-F Filer shall identify the entire Compensatory Restitution Amount received by the Form 1098-F Filer as remediation/restitution. The Form 1098-F Filer shall also, on or before January 31 of the year following the calendar year in which the order entering this Agreement becomes binding, furnish Copy B of such Form 1098-F (or an acceptable substitute statement) to Janssen.

## VII.  Participation by Subdivisions and Special Districts

A.  *Notice.* No later than fifteen (15) days after the Preliminary Agreement Date, the Settling States, with the cooperation of Janssen, shall send individual written notice of the opportunity to participate in this Agreement and the requirements of participation to all Subdivisions in the Settling States of this Agreement that are (1) Litigating Subdivisions or (2) Non-Litigating Subdivisions listed on Exhibit G. Janssen's share of costs of the written notice to such Subdivisions shall be advanced by Janssen and deducted from its initial settlement payment. Notice shall also be provided simultaneously to counsel of record for Litigating Subdivisions and Non-Litigating Subdivisions on Exhibit G. The Settling States, with the cooperation of Janssen, will also provide general notice reasonably calculated to alert Non-Litigating Subdivisions listed on Exhibit G in the Settling States to this Agreement, the opportunity to participate in it and the requirements for participation. Such notice may include publication and other standard forms of notification, as well as notice to national state and county organizations such as the National Association of Counties and the National League of Cities. The notice will include that the deadline for becoming an Initial Participating Subdivision is the Initial Participation Date. Nothing contained herein shall preclude a Settling State from providing further notice to or otherwise contacting any of its Subdivisions about becoming a Participating Subdivision, including beginning any of the activities described in this paragraph prior to the Preliminary Agreement Date.

B.  *Requirements for Becoming a Participating Subdivision: Non-Litigating Subdivisions*. A Non-Litigating Subdivision in a Settling State that is listed on Exhibit G may become a Participating Subdivision by returning an executed Subdivision Settlement Participation Form specifying (1) that the Subdivision agrees to the terms of this Agreement pertaining to Subdivisions, (2) that the Subdivision releases all Released Claims against all Released Entities, (3) that the Subdivision agrees to use monies it receives, if any, from the Settlement Fund pursuant to the applicable requirements of Section VI, and (4) that the Subdivision submits to the jurisdiction of the court where the Consent Judgment is filed

36

*revised March 30, 2022*

for purposes limited to that court's role under the Agreement. The required Subdivision Settlement Participation Form is attached as Exhibit K.

C.   *Requirements for Becoming a Participating Subdivision: Litigating Subdivisions/Later Litigating Subdivisions*. A Litigating Subdivision or Later Litigating Subdivision in a Settling State may become a Participating Subdivision by returning an executed Subdivision Settlement Participation Form to the Settlement Fund Administrator and upon prompt dismissal of its legal action. A Settling State may require each Litigating Subdivision in that State to specify on the Subdivision Settlement Participation Form whether its counsel has waived any contingency fee contract with that Participating Subdivision and intends to seek fees according to Exhibit R. The Settlement Fund Administrator shall provide quarterly reports of this information to the parties organized by Settling State. Except for trials begun before the Initial Participation Date, a Litigating Subdivision or a Later Litigating Subdivision may not become a Participating Subdivision after the completion of opening statements in a trial of a legal action it brought that includes a Released Claim against a Released Entity.

D.   *Initial Participating Subdivisions.* A Subdivision qualifies as an Initial Participating Subdivision if it meets the applicable requirements for becoming a Participating Subdivision set forth in subsections VII.B or VII.C by the Initial Participation Date. Provided however, all Subdivision Settlement Participation Forms shall be held by the Settlement Fund Administrator until Janssen provides the notice in subsection VIII.B that it intends to proceed with the settlement, at which time the obligations created by such forms become effective.

E.   *Later Participating Subdivisions.* A Subdivision that is not an Initial Participating Subdivision may become a Later Participating Subdivision by meeting the applicable requirements for becoming a Participating Subdivision after the Initial Participation Date and agreeing to be subject to the terms of a State-Subdivision Agreement (if any) or any other structure adopted or applicable pursuant to subsections VI.D or VI.E. The following provisions govern what a Later Participating Subdivision can receive (but do not apply to Initial Participating Subdivisions):

1.   A Later Participating Subdivision shall not receive any share of any base or incentive payments paid to the Subdivision Fund that were due before it became a Participating Subdivision.

2.   A Later Participating Subdivision that becomes a Participating Subdivision after July 15, 2022 shall receive 75% of the share of future base or incentive payments that it would have received had it become a Later Participating Subdivision before that date (unless the Later Participating Subdivision is subject to subsections VII.E.3 or VII.E.4 below).

3.   A Later Participating Subdivision that, after the Initial Participation Date, maintains a lawsuit for a Released Claim(s) against a Released Entity and has judgment entered against it on every such Claim before it became a Participating Subdivision (other than a consensual dismissal with prejudice) shall receive 50%

*revised March 30, 2022*

of the share of future base or incentive payments that it would have received had it become a Later Participating Subdivision prior to such judgment; *provided, however*, that if the Subdivision appeals the judgment and the judgment is affirmed with finality before the Subdivision becomes a Participating Subdivision, the Subdivision shall not receive any share of any base payment or incentive payment.

4.      A Later Participating Subdivision that becomes a Participating Subdivision while a Bar or Case-Specific Resolution involving a different Subdivision exists in its State shall receive 25% of the share of future base or incentive payments that it would have received had it become a Later Participating Subdivision without such Bar or Case-Specific Resolution.

F.      *No Increase in Payments*. Amounts to be received by Later Participating Subdivisions shall not increase the payments due from Janssen.

G.      *Ineligible Subdivisions.* Subdivisions in Non-Settling States and Prior Litigating Subdivisions are not eligible to be Participating Subdivisions.

H.      *Non-Participating Subdivisions*. Non-Participating Subdivisions shall not directly receive any portion of any base or incentive payments, including from the State Fund and direct distributions from the Abatement Accounts Fund; however, a Settling State may choose to fund future Opioid Remediation that indirectly benefits Non-Participating Subdivisions.

I.      *Unpaid Allocations to Later Participating and Non-Participating Subdivisions*. Any base payment and incentive payments allocated pursuant to subsection VI.D to a Later Participating or Non-Participating Subdivision that cannot be paid pursuant to this Section VII, will be allocated to the Abatement Accounts Fund for the Settling State in which the Subdivision is located, unless those payments are redirected elsewhere by a State-Subdivision Agreement or by a Statutory Trust.

J.      *Requirements for Becoming a Participating Special District: Non-Litigating Special Districts*. A Non-Litigating Special District may become a Participating Special District by either executing a release consistent with Section IV or by having its claims extinguished by operation of law or released by a Settling State.

K.      *Requirements for Becoming a Participating Special District: Litigating Special Districts/Later Litigating Special Districts.* A Litigating Special District or Later Litigating Special District in a Settling State may become a Participating Special District by either executing a release consistent with Section IV and upon prompt dismissal of its legal action or by having its claims extinguished by operation of law or released by a Settling State.

L.      *Initial Participating Special Districts*. A Special District qualifies as an Initial Participating Special District if it meets the applicable requirements for becoming a Participating Special District by the Initial Participation Date.

M.    *Later Participating Special Districts.* A Special District that is not an Initial Participating Special District may become a Later Participating Special District by meeting the applicable requirements for becoming a Participating Special District after the Initial Participation Date and agreeing to be subject to the terms of any agreement reached by the applicable Settling State with Initial Participating Special Districts. A Later Participating Special District shall not receive any share of any base or incentive payments paid to the Settlement Fund that were due before it became a Participating Special District.

## VIII.    Condition to Effectiveness of Agreement and Filing of Consent Judgment

A.    *Determination to Proceed With Settlement.* Janssen will determine on or before the Reference Date whether there has been a sufficient resolution of the Claims of the Litigating Subdivisions in the Settling States (through participation under Section VII, Case-Specific Resolution(s), and Bar(s)) to proceed with this Agreement. The determination shall be in the sole discretion of Janssen and may be based on any criteria or factors deemed relevant by Janssen.

B.    *Notice by Janssen*. On or before the Reference Date, Janssen shall inform the Settling States and MDL PEC of its determination pursuant to subsection VIII.A. If Janssen determines to proceed, the Parties will proceed to file the Consent Judgments. If Janssen determines not to proceed, this Agreement will have no further effect and all releases (including those given by Participating Subdivisions) and other commitments or obligations contained herein will be void.

C.    *Determination of the Participation Tier.*

1.    On July 1, provided that Janssen determines to proceed with this Agreement, the Settlement Fund Administrator shall determine the Participation Tier. The criteria used to determine the Participation Tier are set forth in Exhibit H. Any disputes as to the determination of the Participation Tier shall be decided by the National Arbitration Panel.

2.    The Participation Tier shall be redetermined by the Settlement Fund Administrator annually as of the Payment Date, beginning with Payment Year 1, pursuant to the criteria set forth in Exhibit H.

3.    After Payment Year 3, the Participation Tier cannot move higher, unless this restriction is waived by Janssen.

4.    In the event that a Participation Tier redetermination moves the Participation Tier higher, and that change is in whole or in part as a result of the post-Reference Date enactment of a Bar and there is later a Revocation Event with respect to that Bar, then on the next Payment Date that is at least one hundred eighty (180) days after the Revocation Event, the Participation Tier shall move down to the Participation Tier that would have applied had the Bar never been enacted, unless the Bar is reinstated or all Subdivisions affected by the Revocation Event become Participating Subdivisions within one hundred eighty (180) days of the

*revised March 30, 2022*

Revocation Event. This is the sole circumstance in which, on a nationwide basis, the Participation Tier can move down.

5. In the event that there is a post-Reference Date Revocation Event with respect to a Bar that was enacted in a Settling State prior to the Reference Date, then, on the next Payment Date that is at least one hundred eighty (180) days after the Revocation Event, unless the Bar is reinstated or all Subdivisions affected by the Revocation Event become Participating Subdivisions within one hundred eighty (180) days of the Revocation Event, the Participation Tier shall decrease – solely for the State in which the Revocation Event occurred – to the Participation Tier commensurate with the percentage of Litigating Subdivisions in that State that are Participating Subdivisions and the percentage of Non-Litigating Subdivisions that are both Primary Subdivisions and Participating Subdivisions, according to the criteria set forth in Exhibit H, except that the calculations shall be performed as to that State alone. For the avoidance of doubt and solely for the calculation in this subparagraph, the Settling States Column of Exhibit H shall play no role. This is the sole circumstance in which one Settling State will have a different Participation Tier than other Settling States.

6. The redetermination of the Participation Tier under subsection VIII.C.2 shall not affect payments already made or suspensions or offsets already applied.

## IX. Potential Payment Adjustments

A. *Later Litigating Subdivisions.*

1. If a Later Litigating Subdivision in a Settling State with a population above 10,000 brings a lawsuit or other legal proceeding against Released Entities asserting Released Claims, Janssen shall, within thirty (30) days of the lawsuit or other legal proceeding being served on Janssen, provide notice of the lawsuit or other legal proceeding to the Settlement Fund Administrator and the Settling State in which the Later Litigating Subdivision sits and provide the Settling State an opportunity to intervene in the lawsuit or other legal proceeding. A Released Entity shall not enter into a settlement with a Later Litigating Subdivision unless the State in which the Later Litigating Subdivision sits consents to such a settlement or unreasonably withholds consent to such a settlement.

2. If no Participation Tier applies and the Later Litigating Subdivision's lawsuit or other legal proceeding survives a Threshold Motion before Janssen makes its last settlement payment to the Settling State, the following shall apply:

   a. Janssen will, from the date of the entry of the order denying the Threshold Motion and so long as the lawsuit or other legal proceeding is pending, be entitled to a suspension of the following payments it would otherwise owe the Settling State in which the Later Litigating Subdivision is located: (1) all remaining incentive payments to the relevant state; and (2) the last two scheduled base payments, if not already paid (the "Suspended Payments").

*revised March 30, 2022*

      b.      For each Payment Year that Janssen is entitled to a suspension of payments, the Settlement Fund Administrator shall calculate the Suspended Payments applicable to the next Payment due from Janssen. The Suspended Payments shall be paid into the Settlement Fund Escrow account.

3.      If a Participation Tier applies at the time the Threshold Motion is denied, Janssen will be entitled to a suspension of the following percentages of Suspended Payments depending on the applicable Tier—75% for Tier 1, 50% for Tier 2, 35% for Tier 3, and 25% for Tier 4. Otherwise, the requirements of subsection IX.A.2 apply.

4.      If the Released Claim is resolved with finality without requirement of payment by a Released Entity, the placement of any remaining balance of the Suspended Payments into the Settlement Fund Escrow shall cease and the Settlement Fund Administrator shall immediately transfer amounts in the Settlement Fund Escrow on account of the suspension to the Settling State at issue and its Participating Subdivisions listed on Exhibit G. The lawsuit will not cause further suspensions unless the Released Claim is reinstated upon further review, legislative action, or otherwise.

5.      If the Released Claim is resolved with finality on terms requiring payment by a Released Entity (*e.g.*, if the lawsuit in which the Released Claim is asserted results in a judgment against Janssen or a settlement with Janssen), the Settlement Fund Administrator will transfer the amounts in the Settlement Fund Escrow on account of the suspension to Janssen necessary to satisfy 75% of the payment obligation of the Released Entity to the relevant Later Litigating Subdivision. The Settlement Fund Administrator shall immediately transfer any remaining balance in the Settlement Fund Escrow on account of the suspension to the Settling State at issue and its Participating Subdivisions listed on Exhibit G. If the amount to be transferred to Janssen exceeds the amounts in the Settlement Fund Escrow on account of the suspension, Janssen shall receive a dollar-for-dollar offset for the excess amount against its obligation to pay any remaining payments that would be apportioned to the Settling State at issue and to its Participating Subdivisions listed on Exhibit G.

B.      *Settlement Class Resolution Opt Outs.* If a Settling State is eligible for Incentive A on the basis of a Settlement Class Resolution, and a Primary Subdivision that opted out of the Settlement Class Resolution maintains a lawsuit asserting a Released Claim against a Released Entity, the following shall apply. If the lawsuit asserting a Released Claim either survives a Threshold Motion or has an unresolved Threshold Motion fewer than sixty (60) days prior to the scheduled start of a trial involving a Released Claim, and is resolved with finality on terms requiring payment by the Released Entity, Janssen shall receive a dollar-for-dollar offset for the amount paid against its obligation to make remaining Incentive A payments that would be apportioned to that State or Participating Subdivisions listed on Exhibit G. For the avoidance of doubt, an offset shall not be

*revised March 30, 2022*

applicable under this subsection if it is applicable under subsection IX.A with respect to the Subdivision at issue.

C.  *Revoked Bar, Settlement Class Resolution, or Case-Specific Resolution.*

   1.  If Janssen made a payment as a result of the existence of a Bar, Settlement Class Resolution, or Case-Specific Resolution in a Settling State, and that Bar, Settlement Class Resolution, or Case-Specific Resolution is subject to a Revocation Event, Janssen shall receive a dollar-for-dollar offset against its obligation to make remaining payments that would be apportioned to that State or Participating Subdivisions listed on Exhibit G. This offset will be calculated as the dollar amount difference between (1) the total amount of incentive payments paid by Janssen during the time the Bar, Settlement Class Resolution, or Case-Specific Resolution subject to the Revocation Event was in effect, and (2) the total amount of Incentive Payments that would have been due from Janssen during that time without the Bar, Settlement Class Resolution, or Case-Specific Resolution subject to the Revocation Event being in effect. The amount of incentive payments that would have been due, referenced in (2) above, will be calculated based on considering any Subdivision that provides a release within one hundred eighty (180) days after the Revocation Event as having been a Participating Subdivision (in addition to all other Participating Subdivisions) during the time that the Bar, Settlement Class Resolution, or Case-Specific Resolution subject to the Revocation Event was in effect. If a Revocation Event causes a Settling State to no longer qualify for Incentive D, the Settling State shall return to Janssen all payments made under Incentive D.

   2.  Notwithstanding anything to the contrary in paragraph 1 above, if a Bar or Case-Specific Resolution is reinstated by the Settling State, either through the same or different means as the initial Bar or Case-Specific Resolution, Janssen's right to an offset is extinguished and any amounts withheld to offset amounts paid on account of the revoked, rescinded, reversed, or overruled Bar or Case-Specific Resolution shall be returned to the Settling State, less and except any incentive payments that would have been paid during the period in which the Bar or Case-Specific Resolution was revoked, rescinded, reversed, or overruled.

## X.  Additional Restitution Amount

A.  *Additional Restitution Amount.* Pursuant to the schedule set forth below and subject to the reduction specified in subsection X.B below, Janssen shall pay an Additional Restitution Amount to the Settling States listed in Exhibit N. Such funds shall be paid on the schedule set forth on Exhibit M on the Payment Date for each relevant Payment Year to such Settling States as allocated by the Settlement Fund Administrator pursuant to Exhibit N.

   Payment Year 1        $15,384,615.38

   Payment Year 2        $26,923,076.92

*revised March 30, 2022*

Payment Year 3      $25,000,000.00

B.    *Reduction of Additional Restitution Amount*. In the event that any Non-Settling State appears on Exhibit N, the amounts owed by Janssen pursuant to this Section X shall be reduced by the allocation set forth on Exhibit N for any such Non-Settling States.

C.    *Use of Funds*. All funds paid as an Additional Restitution Amount shall be part of the Compensatory Restitution Amount, shall be used for Opioid Remediation, except as allowed by subsection VI.B.2, and shall be governed by the same requirements as specified in subsection VI.F.

## XI.    Plaintiffs' Attorneys' Fees and Costs

A.    The Agreement on Attorneys' Fees, Expenses and Costs is set forth in Exhibit R and incorporated herein by reference. The Agreement on the State Outside Counsel Fee Fund and Agreement on the State Cost Fund Administration are set forth in Exhibit U and Exhibit S, respectively, and are incorporated herein by reference.

## XII.    Enforcement and Dispute Resolution

A.    *Enforceability*. The terms of the Agreement and Consent Judgment applicable to or in a Settling State will be enforceable solely by that Settling State and Janssen. Settling States or Participating Subdivisions shall not have enforcement rights with respect either to the terms of this Agreement that apply only to or in other States or to any Consent Judgment entered into by another Settling State. Participating Subdivisions shall not have enforcement rights against Janssen with respect to the Agreement or any Consent Judgment except as to payments that would be allocated to the Subdivision Fund or Abatement Accounts Fund pursuant to Section VI; *provided, however*, that each Settling State shall allow Participating Subdivisions in that State to notify it of any perceived violations of the Agreement or Consent Judgment.

B.    *Jurisdiction*. Janssen consents to the jurisdiction of the court in which the Consent Judgment is filed, limited to resolution of disputes identified in subsection XII.F.2 for resolution in the court in which the Consent Judgment is filed.

C.    *Specific Terms Dispute Resolution.*

     1.    Any dispute that is addressed by the provisions set forth in the Injunctive Relief terms in Exhibit P shall be resolved as provided therein.

     2.    In the event Janssen believes the 86.5% threshold established in subsection VI.B.1 is not being satisfied, any Party may request that Janssen and the Enforcement Committee meet and confer regarding the use of funds under subsection VI.B.1. The completion of such meet-and-confer process is a precondition to further action regarding any such dispute. Further action concerning subsection VI.B.1 shall: (i) be limited to Janssen seeking to reduce its Annual Payments by no more than 5% of the difference between the actual amount of Opioid Remediation and the 86.5% threshold established in subsection VI.B.1; (ii) only reduce Annual

*revised March 30, 2022*

Payments to those Settling States and its Participating Subdivisions that are below the 86.5% threshold established in subsection VI.B.1; and (iii) not reduce Annual Payments restricted to future Opioid Remediation.

D.    *State-Subdivision Enforcement.*

1.    A Participating Subdivision shall not have enforcement rights against a Settling State in which it is located with respect to the Agreement or any Consent Judgment except: (1) as provided for in a State-Subdivision Agreement, Allocation Statute, or Statutory Trust with respect to intrastate allocation; or (2) in the absence of a State-Subdivision Agreement, Allocation Statute, or Statutory Trust, as to allegations that: (a) the Settling State's use of Abatement Accounts Fund monies were not used for uses similar to or in the nature of those uses contained in Exhibit E; or (b) a Settling State failed to pay funds directly from the Abatement Accounts Fund to a Participating Subdivision eligible to receive a block grant pursuant to subsection VI.E.2.b.

2.    A Settling State shall have enforcement rights against a Participating Subdivision located in its territory: (1) as provided for in a State-Subdivision Agreement, Allocation Statute, or Statutory Trust; or (2) in the absence of a State-Subdivision Agreement, Allocation Statute, or Statutory Trust, as to allegations that the uses of Abatement Accounts Fund monies by Participating Subdivisions listed on Exhibit G were not for uses similar to or in the nature of those uses contained in Exhibit E.

3.    As between Settling States and Participating Subdivisions, the above rights are contractual in nature and nothing herein is intended to limit, restrict, change, or alter any other existing rights under law.

E.    *Subdivision Payment Enforcement.* A Participating Subdivision shall have the same right as a Settling State pursuant to subsection XII.F.4.a(4) to seek resolution of any failure by Janssen to make its required base and/or incentive payments in a Payment Year.

F.    *Other Dispute Resolution Terms.*

1.    Except as provided in subsection XII.C, the parties to a dispute shall promptly meet and confer in good faith to resolve any dispute. If the parties cannot resolve the dispute informally, and unless otherwise agreed in writing, they shall follow the remaining provisions of this subsection XII.F to resolve the dispute.

2.    Except as provided in subsections XII.C and XII.F.4, disputes not resolved informally shall be resolved in either the court that entered the relevant Consent Judgment or, if no Consent Judgment was entered, a state or territorial court with jurisdiction located wherever the seat of state government is located. State court proceedings shall be governed by the rules and procedures of the forum. For the avoidance of doubt, disputes to be resolved in state court include, but are not limited to, the following:

*revised March 30, 2022*

a.     disputes concerning whether expenditures qualify for Opioid Remediation;

b.     disputes between a Settling State and Participating Subdivisions located in such Settling State as provided by subsection XII.D, except to the extent the State-Subdivision Agreement provides for other dispute resolution mechanisms. For the avoidance of doubt, disputes between a Settling State and any Participating Subdivision shall not be considered National Disputes;

c.     whether this Agreement and relevant Consent Judgment are binding under state law;

d.     the extent of the Attorney General's or other participating entity's authority under state law, including the extent of the authority to release claims;

e.     whether the requirements of a Bar, a Case-Specific Resolution, State-Specific Finality, Later Litigating Subdivision, Litigating Subdivision, or a Threshold Motion have been met; and

f.     all other disputes not specifically identified in subsections XII.C and XII.F.4.

3.     Any Party may request that the National Arbitration Panel provide an interpretation of any provision of the settlement that is relevant to the state court determination, and the National Arbitration Panel shall make reasonable best efforts to supply such interpretation within the earlier of thirty (30) days or the time period required by the state court proceedings. Any Party may submit that interpretation to the state court to the extent permitted by, and for such weight provided by, the state court's rules and procedures. If requested by a Party, the National Arbitration Panel shall request that its interpretation be accepted in the form of an amicus curiae brief, and any attorneys' fees and costs for preparing any such filing shall be paid for by the requesting Party.

4.     National Disputes involving a Settling State, Participating Subdivision, and/or Janssen shall be resolved by a National Arbitration Panel.

a.     "*National Disputes*" are disputes that are exceptions to subsection XII.F.2's presumption of resolution in state courts because they involve issues of interpretation of Agreement terms applicable to all Settling States without reference to a particular State's law. Disputes between a State and any Participating Subdivisions shall not be considered National Disputes. National Disputes are limited to the following:

(1)     the amount of offset and/or credit attributable to Non-Settling States and Tribes;

(2)     issues involving the scope and definition of "Product";

*revised March 30, 2022*

(3)     interpretation and application of the terms "Covered Conduct" and "Released Entities";

(4)     disputes over a given year's payment or the payment of the Additional Restitution Amount to all Settling States (for the avoidance of doubt, disputes between a Settling State and Janssen over the amounts owed to only that State shall not be considered National Disputes);

(5)     questions regarding the performance and/or removal of the Settlement Fund Administrator;

(6)     disputes involving liability of successor entities;

(7)     disputes that require a determination of sufficient Subdivision and Special District participation to qualify for Incentives A, B, C, or D, as well as disputes over qualification for Participation Tiers;

(8)     disputes that require interpretation of Agreement terms (i) that concretely affect four (4) or more Settling States; and (ii) do not turn on unique definitions and interpretations under State law; and

(9)     any dispute subject to resolution under subsection XII.F.2 but for which all parties to the dispute agree to arbitration before the National Arbitration Panel under the provisions of this subsection XII.F.4.

b.     The "*National Arbitration Panel*" shall be comprised of three (3) neutral arbitrators. One (1) arbitrator shall be chosen by Janssen, one (1) arbitrator shall be chosen by the Enforcement Committee with due input from Participating Subdivisions, and the third arbitrator shall be agreed upon by the first two (2) arbitrators. The membership of the National Arbitration Panel is intended to remain constant throughout the term of this Agreement, but in the event that replacements are required, the retiring arbitrator shall be replaced by the party that selected him/her.

(1)     The National Arbitration Panel shall make reasonable best efforts to decide all matters within one hundred eighty (180) days of filing, and in no event shall it take longer than one (1) year.

(2)     The National Arbitration Panel shall conduct all proceedings in a reasonably streamlined process consistent with an opportunity for the parties to be heard. Issues shall be resolved without the need for live witnesses where feasible, and with a presumption in favor of remote participation to minimize the burdens on the parties.

(3)     To the extent allowed under state law, a Settling State, Participating Subdivision, and (at any party's request) the National

46

*revised March 30, 2022*

Arbitration Panel may certify to an appropriate state court any question of state law. The National Arbitration Panel shall be bound by a final state court determination of such a certified question. The time period for the arbitration shall be tolled during the course of the certification process.

(4)     The arbitrators will give due deference to any authoritative interpretation of state law, including any declaratory judgment or similar relief obtained by a Settling State, Participating Subdivision, or Janssen on a state law issue.

(5)     The decisions of the National Arbitration Panel shall be binding on Settling States, Participating Subdivisions, Janssen, and the Settlement Fund Administrator. In any proceeding before the National Arbitration Panel involving a dispute between a Settling State and Janssen whose resolution could prejudice the rights of a Participating Subdivision(s) or Participating Special District(s) in that Settling State, such Participating Subdivision(s) or Participating Special District(s) shall be allowed to file a statement of view in the proceeding.

c.     Nothing herein shall be construed so as to limit or otherwise restrict a State from seeking injunctive or other equitable relief in state court to protect the health, safety, or welfare of its citizens.

d.     Each party shall bear its own costs in any arbitration or court proceeding arising under this subsection XII.F. The costs for the arbitrators on the National Arbitration Panel shall be divided and paid equally by the disputing sides for each individual dispute, *e.g.*, a dispute between Janssen and Setting States/Participating Subdivisions shall be split 50% by Janssen and 50% by the Settling States/Participating Subdivisions that are parties to the dispute; a dispute between a Settling State and a Participating Subdivision shall be split 50% by the Settling State and 50% by any Participating Subdivisions that are party to the dispute.

5.     Prior to initiating an action to enforce pursuant to this subsection XII.F, the complaining party must:

a.     Provide written notice to the Enforcement Committee of its complaint, including the provision of the Consent Judgment and/or Agreement that the practice appears to violate, as well as the basis for its interpretation of the disputed provision. The Enforcement Committee shall establish a reasonable process and timeline for obtaining additional information from the involved parties; *provided, however*, that the date the Enforcement Committee establishes for obtaining additional information from the parties shall not be more than forty-five (45) days following the notice.

*revised March 30, 2022*

The Enforcement Committee may advise the involved parties of its views on the complaint and/or seek to resolve the complaint informally.

    b.    Wait to commence any enforcement action until thirty (30) days after the date that the Enforcement Committee establishes for obtaining additional information from the involved parties.

6.    If the parties to a dispute cannot agree on the proper forum for resolution of the dispute under the provisions of subsections XII.F.2 or XII.F.4, a committee comprising the Enforcement Committee and sufficient representatives of Janssen such that the members of the Enforcement Committee have a majority of one (1) member will determine the forum where the dispute will be initiated within twenty-eight (28) days of receiving notification of the dispute relating to the proper forum. The forum identified by such committee shall be the sole forum for determining where the dispute shall be heard, and the committee's identification of such forum shall not be entitled to deference by the forum selected.

G.    *No Effect*. Nothing in this Agreement shall be interpreted to limit the Settling State's Civil Investigative Demand ("CID") or investigative subpoena authority, to the extent such authority exists under applicable state law and the CID or investigative subpoena is issued pursuant to such authority, and Janssen reserves all of its rights in connection with a CID or investigative subpoena issued pursuant to such authority.

# XIII.  <u>Miscellaneous</u>

A.    *No Admission.* Janssen does not admit liability or wrongdoing. Neither this Agreement nor the Consent Judgments shall be considered, construed, or represented to be (1) an admission, concession, or evidence of liability or wrongdoing or (2) a waiver or any limitation of any defense otherwise available to Janssen.

B.    *Population of Subdivisions*. The population figures for Subdivisions shall be the published U.S. Census Bureau's population estimates for July 1, 2019, released May 2020. These population figures shall remain unchanged during the term of this Agreement.

C.    *Population of Special Districts*. For any purpose in this Agreement in which the population of a Special District is used, other than the use of "Covered Special District": (a) School Districts' population will be measured by the number of students enrolled who are eligible under the Individuals with Disabilities Education Act ("*IDEA*") or Section 504 of the Rehabilitation Act of 1973; (b) Health Districts' and Hospital Districts' population will be measured at 25% of discharges; and (c) all other Special Districts' (including Fire Districts' and Library Districts') population will be measured at 10% of the population served.

D.    *Population Associated with Sheriffs*. For any purpose in this Agreement in which the population associated with a lawsuit by a sheriff is used, the population will be measured at 20% of the capacity of the jail(s) operated by the sheriff.

*revised March 30, 2022*

E.     *Tax Reporting and Cooperation*.

     1.      Upon request by Janssen, the Settling States, Participating Subdivisions, and Participating Special Districts agree to perform such further acts and to execute and deliver such further documents as may be reasonably necessary for Janssen to establish the statements set forth in subsection VI.F to the satisfaction of their tax advisors, their independent financial auditors, the Internal Revenue Service, or any other governmental authority, including as contemplated by Treasury Regulations Section 1.162-21(b)(3)(ii) and any subsequently proposed or finalized relevant regulations or administrative guidance.

     2.      Without limiting the generality of subsection XIII.E, each Settling State, Participating Subdivision, and Participating Special District shall cooperate in good faith with Janssen with respect to any tax claim, dispute, investigation, audit, examination, contest, litigation, or other proceeding relating to this Agreement.

     3.      The Designated State, on behalf of all Settling States, Participating Subdivisions, and Participating Special Districts, shall designate one of its officers or employees to act as the "appropriate official" within the meaning of Treasury Regulations Section 1.6050X-1(f)(1)(ii)(B) (the "Appropriate Official").

     4.      For the avoidance of doubt, neither Janssen nor the Settling States, Participating Subdivisions, and Participating Special Districts make any warranty or representation to any Settling jurisdiction or Releasor as to the tax consequences of the payment of the Compensatory Restitution Amount (or any portion thereof).

F.     *No Third-Party Beneficiaries.* Except as expressly provided in this Agreement, no portion of this Agreement shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Entity. No Settling State may assign or otherwise convey any right to enforce any provision of this Agreement.

G.     *Calculation*. Any figure or percentage referred to in this Agreement shall be carried to seven decimal places.

H.     *Construction*. None of the Parties and no Participating Subdivision shall be considered to be the drafter of this Agreement or of any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement. The headings of the provisions of this Agreement are not binding and are for reference only and do not limit, expand, or otherwise affect the contents or meaning of this Agreement.

I.     *Cooperation*. Each Party and each Participating Subdivision agrees to use its best efforts and to cooperate with the other Parties and Participating Subdivisions to cause this Agreement and the Consent Judgments to become effective, to obtain all necessary approvals, consents and authorizations, if any, and to execute all documents and to take such other action as may be appropriate in connection herewith. Consistent with the foregoing, each Party and each Participating Subdivision agrees that it will not directly or indirectly assist or encourage any challenge to this Agreement or any Consent Judgment

*revised March 30, 2022*

by any other person, and will support the integrity and enforcement of the terms of this Agreement and the Consent Judgments.

J.    *Entire Agreement*. This Agreement, its exhibits and any other attachments, including the attorneys' fees and cost agreement in Exhibit R, embodies the entire agreement and understanding between and among the Parties and Participating Subdivisions relating to the subject matter hereof and supersedes (1) all prior agreements and understandings relating to such subject matter, whether written or oral and (2) all purportedly contemporaneous oral agreements and understandings relating to such subject matter.

K.    *Execution*. This Agreement may be executed in counterparts and by different signatories on separate counterparts, each of which shall be deemed an original, but all of which shall together be one and the same Agreement. One or more counterparts of this Agreement may be delivered by facsimile or electronic transmission with the intent that it or they shall constitute an original counterpart hereof. One or more counterparts of this Agreement may be signed by electronic signature.

L.    *Good Faith and Voluntary Entry*. Each Party warrants and represents that it negotiated the terms of this Agreement in good faith. Each of the Parties and signatories to this Agreement warrants and represents that it freely and voluntarily entered into this Agreement without any degree of duress or compulsion. The Parties state that no promise of any kind or nature whatsoever (other than the written terms of this Agreement) was made to them to induce them to enter into this Agreement.

M.    *No Prevailing Party.* The Parties each agree that they are not the prevailing party in this action, for purposes of any claim for fees, costs, or expenses as prevailing parties arising under common law or under the terms of any statute, because the Parties have reached a good faith settlement. The Parties each further waive any right to challenge or contest the validity of this Agreement on any ground, including, without limitation, that any term is unconstitutional or is preempted by, or in conflict with, any current or future law.

N.    *Non-Admissibility.* The settlement negotiations resulting in this Agreement have been undertaken by the Parties and by certain representatives of the Participating Subdivisions in good faith and for settlement purposes only, and no evidence of negotiations or discussions underlying this Agreement shall be offered or received in evidence in any action or proceeding for any purpose. This Agreement shall not be offered or received in evidence in any action or proceeding for any purpose other than in an action or proceeding arising under or relating to this Agreement.

O.    *Notices.* All notices or other communications under this Agreement shall be in writing (including but not limited to electronic communications) and shall be given to the recipients indicated below:

*revised March 30, 2022*

1.      For the Attorney(s) General:

        Ashley Moody,
        Attorney General
        State of Florida
        The Capitol,
        PL-01
        Tallahassee, FL 32399

        Josh Stein, Attorney General
        North Carolina Department of Justice
        Attn: Daniel Mosteller
        PO Box 629
        Raleigh, NC 27602
        Dmosteller@ncdoj.gov

2.      For the Plaintiffs' Executive Committee:

        Paul F. Farrell
        Farrell Law
        P.O. Box 1180
        Huntington, WV 25714-1180

        Jayne Conroy
        Simmons Hanly Conroy LLC
        112 Madison Avenue, 7th Floor
        New York, NY 10016-7416
        JConroy@simmonsfirm.com

        Joseph F. Rice
        Motley Rice LLC
        28 Bridgeside Blvd.
        Mount Pleasant, SC 29464
        jrice@motleyrice.com

        Peter Mougey
        Levin Papantonio Rafferty
        316 South Baylen St.
        Pensacola, FL 32502
        pmougey@levinlaw.com

        Paul J. Geller
        Robbins Geller Rudman & Dowd LLP
        120 East Palmetto Park Road
        Boca Raton, FL 33432
        PGeller@rgrdlaw.com

*revised March 30, 2022*

3.     For Janssen:

Charles C. Lifland
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor Los Angeles, CA 90071
Phone: (213) 430-6000
clifland@omm.com

Daniel R. Suvor
O'Melveny & Myers LLP
400 South Hope Street, 18th Floor Los Angeles, CA 90071
Phone: (213) 430-6000
dsuvor@omm.com

Any Party or the Plaintiffs' Executive Committee may change or add the contact information of the persons designated to receive notice on its behalf by notice given (effective upon the giving of such notice) as provided in this subsection.

P.    *No Waiver.* The waiver of any rights conferred hereunder shall be effective only if made by written instrument executed by the waiving Party or Parties. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, nor shall such waiver be deemed to be or construed as a waiver by any other Party.

Q.    *Preservation of Privilege.* Nothing contained in this Agreement or any Consent Judgment, and no act required to be performed pursuant to this Agreement or any Consent Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

R.    *Successors.* This Agreement shall be binding upon, and inure to the benefit of, Janssen and its respective successors and assigns. Janssen shall not sell the majority of its voting stock or substantially all its assets without obtaining the acquiror's agreement that it will constitute a successor with respect to Janssen's obligations under this Agreement.

S.    *Modification, Amendment, Alteration.* After the Reference Date, any modification, amendment, or alteration of this Agreement by the Parties shall be binding only if evidenced in writing signed by Janssen along with the signatures of at least thirty-seven (37) of those then-serving Attorneys General of the Settling States along with a representation from each Attorney General that either: (1) the advisory committee or similar entity established or recognized by that Settling State (either pursuant to subsection VI.E.2, by a State-Subdivision Agreement, or by statute) voted in favor of the modification, amendment, or alteration of this Agreement including at least one Participating Subdivision-appointed member; or (2) in States without any advisory committee, that 50.1% of the Participating Subdivisions by population expressed approval of the modification, amendment, or alteration of this Agreement in writing.

*revised March 30, 2022*

Provided, however, in the event the modification, amendment, or alteration relates to injunctive relief, interstate allocation between the Settling States, intrastate allocation in a particular Settling State, or fees or costs of Settling States and Participating Subdivisions, then every Settling State and each Participating Subdivision affected by that modification, amendment, or alteration must assent in writing. Provided further that, in the event the modification, amendment, or alteration relates to injunctive relief, then such amendment, modification, or alteration of injunctive relief against Janssen will not be effective unless and until any Consent Judgment is modified by a court of competent jurisdiction, except as otherwise provided by the Injunctive Terms.

T.    *Termination.*

1.    Unless otherwise agreed to by Janssen and the Settling State in question, this Agreement and all of its terms (except subsection XIII.N and any other non-admissibility provisions, which shall continue in full force and effect) shall be canceled and terminated with respect to the Settling State, and the Agreement and all orders issued by the courts in the Settling State pursuant to the Agreement shall become null and void and of no effect if one or more of the following conditions applies:

a.    A Consent Judgment approving this Agreement without modification of any of the Agreement's terms has not been entered as to the Settling State by a court of competent jurisdiction on or before one hundred eighty (180) days after the Effective Date; or

b.    This Agreement or the Consent Judgment as to that Settling State has been disapproved by a court of competent jurisdiction to which it was presented for approval and/or entry (or, in the event of an appeal from or review of a decision of such a court to approve this Agreement and the Consent Judgment, by the court hearing such appeal or conducting such review), and the time to appeal from such disapproval has expired, or, in the event of an appeal from such disapproval, the appeal has been dismissed or the disapproval has been affirmed by the court of last resort to which such appeal has been taken and such dismissal or disapproval has become no longer subject to further appeal (including, without limitation, review by the United States Supreme Court).

2.    If this Agreement is terminated with respect to a Settling State and its Participating Subdivisions for whatever reason pursuant to subsection XIII.T.1, then:

a.    An applicable statute of limitation or any similar time requirement (excluding any statute of repose) shall be tolled from the date the Settling State signed this Agreement until the later of the time permitted by applicable law or for one year from the date of such termination, with the effect that Janssen and the Settling State in question shall be in the same

*revised March 30, 2022*

position with respect to the statute of limitation as they were at the time the Settling State filed its action; and

b. Janssen and the Settling State and its Participating Subdivisions in question shall jointly move the relevant court of competent jurisdiction for an order reinstating the actions and claims dismissed pursuant to the terms of this Agreement governing dismissal, with the effect that Janssen and the Settling State and its Participating Subdivisions in question shall be in the same position with respect to those actions and claims as they were at the time the action or claim was stayed or dismissed.

3. Unless Janssen and the Enforcement Committee agree otherwise, this Agreement, with the exception of the Injunctive Relief Terms that have their own provisions on duration, shall terminate as to all Parties as of the Payment Date for Payment Year 9, *provided* that Janssen has performed its payment obligations under the Agreement as of that date. Notwithstanding any other provision in this Agreement, all releases under this Agreement will remain effective despite any termination under this paragraph.

U. *Governing Law.* Except (1) as otherwise provided in the Agreement or (2) as necessary, in the sole judgment of the National Arbitration Panel, to promote uniformity of interpretation for matters within the scope of the National Arbitration Panel's authority, this Agreement shall be governed by and interpreted in accordance with the respective laws of the Settling State, without regard to the conflict of law rules of such Settling State, that is seeking to enforce the Agreement against Janssen or against which Janssen is seeking enforcement. Notwithstanding any other provision in this subsection on governing law, any disputes relating to the Settlement Fund Escrow shall be governed by and interpreted in accordance with the law of the state where the escrow agent has its primary place of business.

*revised March 30, 2022*

**EXHIBIT J**

**Janssen Predecessors and Former Affiliates**

The following includes a non-exclusive list of Janssen's predecessors and former affiliates:

1. Janssen Pharmaceutica, Inc.
2. Janssen Pharmaceutica N.V.
3. Janssen-Cilag Manufacturing, LLC
4. Janssen Global Services, LLC
5. Janssen Ortho LLC
6. Janssen Products, LP
7. Janssen Research & Development, LLC
8. Janssen Supply Group, LLC
9. Janssen Scientific Affairs, LLC
10. JOM Pharmaceutical Services, Inc.
11. OMJ Pharmaceuticals, Inc.
12. Ortho-McNeil Finance Co.
13. Ortho-McNeil Pharmaceutical
14. Ortho-McNeil-Janssen Pharmaceuticals
15. Ortho-McNeil Pharmaceutical Services Division
16. Ortho-McNeil Neurologic
17. Patriot Pharmaceuticals, LLC
18. Pricara, Ortho-McNeil-Janssen Pharmaceuticals
19. Alza Corp.
20. Alza Development Corp.
21. Janssen Supply Chain, Alza Corp.
22. Noramco, Inc.
23. Tasmanian Alkaloids PTY LTD.

*revised March 30, 2022*

**<u>EXHIBIT C</u>**


**<u>ATTORNEY GENERAL'S RELEASE OF OPIOID-RELATED CLAIMS
PURSUANT TO THE JANSSEN SETTLEMENT AGREEMENT</u>**

**Attorney General's Release of Opioid-Related Claims Pursuant to the Janssen Settlement Agreement**

WHEREAS the Janssen Settlement Agreement dated July 21, 2021 (the "Agreement") provides in Section IV.A that, as of the Effective Date of the Agreement, Janssen and the related Released Entities will be released and forever discharged from all of the Releasors' Released Claims;[1] and

WHEREAS the Agreement provides in Section I.62 that Releasors who are releasing claims under Section IV.A include without limitation and to the maximum extent of the power of each Settling State's Attorney General to release Claims (a) the Settling State's and Participating Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in their official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in a Settling State, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in this Agreement; and

WHEREAS the Agreement provides in Section IV.E that each Settling State's Attorney General expressly represents and warrants that he or she has, has obtained, or will obtain on or before the Effective Date, the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) his or her respective Settling State, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, and (3) any of his or her respective Settling State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license, and (4) any Participating Subdivisions.  For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor;

THEREFORE, pursuant to the foregoing provisions of the Agreement and without limitation and to the maximum extent of the power of the Attorney General, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (a) the State of Florida and its Participating Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of

---

[1] Capitalized terms used herein and defined in the Agreement have the meanings given to them in the Agreement.

the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in the State of Florida, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State of Florida or Subdivision in the State of Florida, whether or not any of them participate in the Agreement; and

THEREFORE, pursuant to the foregoing provisions of the Agreement and to the maximum extent of the State of Florida's power, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the State of Florida, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, and (3) any of the State of Florida's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license, and (4) any Participating Subdivisions.  For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State of Florida's Governor.

John M. Guard,
Chief Deputy Attorney General
by and through the authority
delegated to him by
Ashley Moody,
Attorney General of the State of Florida

Date: _____4/26/22_____