*SETTLED DEFENDANTS' MOTION TO DISMISS CLAIMS FILED BY NON-PARTICIPATING FLORIDA SUBDIVISIONS AS RELEASED BY THE ATTORNEY GENERAL PURSUANT TO SETTLEMENT*

# EXHIBIT 3

IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
IN AND FOR LEON COUNTY, FLORIDA

OFFICE OF THE ATTORNEY GENERAL,
DEPARTMENT OF LEGAL AFFAIRS,
STATE OF FLORIDA,

    Plaintiff,                      CASE NO.: 2022 CA 000541

v.

SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT,
    d/b/a Memorial Healthcare System, Inc.,
LEE MEMORIAL HEALTH SYSTEM,
    d/b/a Lee Health,
NORTH BROWARD HOSPITAL DISTRICT,
    d/b/a Broward Health,
HALIFAX HOSPITAL MEDICAL CENTER,
    d/b/a Halifax Health,
WEST VOLUSIA HOSPITAL AUTHORITY,
SCHOOL BOARD OF MIAMI-DADE COUNTY, and
SCHOOL BOARD OF PUTNAM COUNTY.

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT,
DENYING HALIFAX HOSPITAL MEDICAL CENTER'S MOTION FOR SUMMARY
JUDGMENT, AND DENYING SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT
AND LEE MEMORICAL HEALTH SYSTEM'S MOTION FOR CONTINUANCE OF
THE SUMMARY JUDGMENT HEARING AND SUMMARY FINAL JUDGMENT**

This case came for consideration after hearing on the Office of the Attorney General, Department of Legal Affairs, State of Florida's ("Florida" or "Plaintiff")) Motion for Summary Judgment and Supporting Memorandum of Law (Dkt. #111), Halifax Hospital Medical Center's ("Halifax") Motion for Summary Judgment (Dkt. #105), and Sarasota County Public Hospital District's ("Memorial Healthcare") and Lee Memorial Health System's ("Lee Health") Motion for Continuance of the Summary Judgment Hearing (Dkt. ##128, 134). No party disputes the

1

damage wrought by the opioid epidemic in the State of Florida. The question in this case is whether Florida can release its subdivision claims as part of its settlement with those that purportedly caused this epidemic. After review of the motions, responses by each of the defendants, and argument of counsel, this Court concludes that Florida has the power to settle and release subdivisions' claims, based on the Florida Constitution, Florida Statutes, and the common law for the reasons stated below. There is no genuine issue of any material fact, and Florida is entitled to judgment as a matter of law. Accordingly, this Court will **GRANT** Florida's motion for summary judgment (Dkt. #111) on its claim and against the counterclaims filed by the defendants, **DENY** Halifax's motion for summary judgment (Dkt. #105), and **DENY** Memorial Healthcare's and Lee Health's motions for continuance (Dkt. ##128, 134).

## PROCEDURAL POSTURE

On or about June 13, 2022, Florida filed its Amended Complaint (Dkt. #45) against Defendants Halifax, Memorial Healthcare, Lee Health, North Broward Hospital District ("North Broward"), the School Board of Miami-Dade County ("SBMD"), and the School Board of Putnam County ("SBPC"),[1] seeking a declaratory judgment that Florida had the power to release and did release each of the defendants' claims in a series of settlements that Florida entered into related to its opioid litigation. Just prior to the Amended Complaint being filed, on or about June 13, 2022, this Court granted (Dkt. #38) South Broward Hospital District's ("South Broward" and

---

[1] Almost all of these Defendants have separately sued distributors, manufacturers, or pharmacies in Florida or federal courts for alleged opioid-related harms. Sarasota County Public Hospital District, Lee Memorial Health System, Putnam County School Board, and School Board of Miami-Dade brought suits in federal court that are now part of a pending multidistrict litigation. *See Sarasota Mem. Healthcare Sys. v. Purdue Pharma L.P., et al.*, 1:18-op-46136-DAP; *Lee Health v. Actavis LLC, et al.*, 1:21-op-45092-DAP; *Putnam County School Board, et al. v. Cephalon, Inc., et al.*, 1:22-op-45025-DAP; *School Board of Miami-Dade County, Florida v. Endo Health Solutions Inc. et al.* 1:19-op-45913-DAP. Halifax Hospital Medical Center and North Broward Hospital District sued in Florida state court. *See Florida Health Sciences Center, Inc., et al. v. Richard Sackler, et al.*, CACE-19-018882.

2

collectively, Halifax, Memorial Healthcare, Lee Health, North Broward, South Broward, SBMD, and SBPC are referred to as "Defendants") Motion to Intervene as a Defendant in this matter. All Defendants answered the Amended Complaint (Dkt. ##51, 57, 60, 61, 64, & 73). On or about July 5, 2022, North Broward filed a counterclaim against Florida (Dkt. #57), seeking a declaratory judgment that Florida did not have authority and did not release North Broward's claims and seeking recovery from Florida for allegedly taking North Broward's opioid claims. That same day, South Broward filed a counterclaim (Dkt. #60), seeking a declaratory judgment, seeking the imposition of a constructive trust against the State, and claiming that Florida had been unjustly enriched by the settlements. Also, that same day, SBMD and SBPC filed counterclaims (Dkt. ## 61, 64), alleging that each were entitled to declaratory relief that Florida had no authority to preempt their claims with the settlements. On or about July 15, 2022, Memorial Healthcare and Lee Health filed a counterclaim (Dkt.#73), seeking declaratory relief and asserting a takings claim against Florida.

On or about September 22, 2022, Halifax moved for summary judgment (Dkt. #105). On or about November 4, 2022, Florida moved for summary judgment (Dkt. #104) and filed a Declaration of John M. Guard attaching voluminous exhibits, including the settlement agreements at issue in this case (Dkt.## 116-21, 151). The Defendants filed responses (Dkt. ##134, 135, 137, 138, 139 141, 143) and affidavits opposing summary judgment (Dkt. ## 124-27, 129, 132-33, 140, 142, 144, 145). On or about November 23, 2022, Lee Memorial moved to continue the summary judgment hearing (Dkt.#128), which Florida opposed (Dkt. #148). On December 19, 2022, this Court held oral argument on the motions. On April 6, 2023, this Court held a status conference and heard additional argument.

3

**BACKGROUND**

The evidence in the record demonstrates that the opioid overuse has touched every part of the State of Florida. On May 3, 2017, then-Governor Rick Scott declared a public health emergency in the State. In 2020, the Florida Medical Examiners Commission ("Commission") reported that there were 7,842 opioid-related deaths reported or almost twenty-one and a half opioid-related overdose deaths a day.[2] In its 2021 interim report, the Commission reported 4,140 opioid-related deaths reported in the first half of 2021 or roughly twenty-three Floridians dying everyday of an opioid-related drug overdose.[3]

On May 15, 2018, Florida filed its initial complaint (the "Opioid Litigation") in the Sixth Judicial Circuit in and for Pasco County, Florida (the "State Court"). In its initial complaint of the Opioid Litigation, Florida brought claims against certain manufacturers and distributors who made and distributed opioids in the State of Florida. The Complaint alleged violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida's Racketeer Influenced and Corrupt Organization Act ("Florida RICO"), public nuisance, and negligence.

On November 16, 2018, the Office of Attorney General amended its complaint in the Opioid Litigation and added claims against two pharmacy chains who dispensed opioids in Florida (collectively, all the Opioid Litigation defendants are referred to as the "Opioid Defendants"), alleging similar causes of action as those in the initial complaint.

After Florida filed its initial complaint, around one hundred Florida cities, counties, and other political subdivisions, including the Defendants in the instant action, filed separate lawsuits

---

[2] https://www.fdle.state.fl.us/MEC/Publications-and-Forms/Documents/Drugs-in-Deceased-Persons/2020-Annual-Drug-Report-FINAL.aspx (last viewed October 31, 2022); Declaration of John Guard, Ex. C.

[3] https://www.fdle.state.fl.us/MEC/Publications-and-Forms/Documents/Drugs-in-Deceased-Persons/2021-Interim-Drug-Report-FINAL.aspx (last visited October 31, 2022); Declaration of John Guard, Ex. C.

4

against the Opioid Defendants and others, alleging similar claims as those raised by Florida.

After years of litigation and negotiation, the Attorney General finalized settlement agreements with (1) Johnson & Johnson (the "JJ Settlement");[4] (2) McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Drug Corporation (the "Distributor Settlement");[5] (3) Endo (the "Endo Settlement");[6] (4) CVS (the "CVS Settlement");[7] (5) Teva (the "Teva Settlement");[8] (6) Allergan (the "Allergan Settlement");[9] and (7) after almost four weeks of a jury trial, Walgreens (the "Walgreens Settlement")[10] (collectively, the JJ Settlement, the Distributor Settlement, the Endo Settlement, the CVS Settlement, the Teva Settlement, the Allergan Settlement, and the Walgreens Settlement are referred to collectively as the "Opioid Settlements"). The State Court subsequently entered Consent Judgments.

Each of the Opioid Settlements provided for a release of the subdivision claims. For instance, The Distributor Settlement included in the definitions applicable to the release the following language:

> III. "Releasors." ***With respect to Released Claims,*** (1) each Settling State; (2) each Participating Subdivision; and (3) ***without limitation and to the maximum extent of the power of each Settling State's Attorney General*** and/or Participating Subdivision to release Claims, (a) ***the Settling State's*** and Participating Subdivision's ***departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind*** and attorneys, including its Attorney General, and any person in his or her official capacity whether elected or appointed to serve

---

[4]     *See* Declaration of John Guard, Ex. H.

[5]     *Id.*, Ex. G.

[6]     *Id.*, Ex. I.

[7]     *Id.*, Ex. L.

[8]     *Id.*, Ex. J.

[9]     *Id.*, Ex. K.

[10]     *Id.*, Ex. M.

any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) *any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts in a Settling State*, and (c) any person or entity acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in this Agreement. The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Subdivision. Each Settling State's Attorney General represents that he or she has or has obtained (or will obtain no later than the Initial Participation Date) the authority set forth in Section XI.G. In addition to being a Releasor as provided herein, a Participating Subdivision shall also provide the Subdivision Settlement Participation Form referenced in Section VII providing for a release to the fullest extent of the Participating Subdivision's authority.

Distributor Settlement at 8-9 (emphasis added).

## LEGAL STANDARD

Florida Rule of Civil Procedure 1.510(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). This rule is "applied in accordance with the federal summary judgment standard." *See id.*; *see also In re Amends. to Fla. Rule of Civ. Pro. 1.510*, 317 So.3d 72, 74 (Fla. 2021). Courts may grant summary judgment when, as here, "the only question a court must decide is a question of law." *Glob. Travel Int'l, Inc. v. Mount Vernon Fire Ins. Co.*, 2021 WL 6070579, at *1 (M.D. Fla. Dec. 21, 2021) (citing *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011)).

## DISCUSSION

### A. The Attorney General's Authority to Release Subdivisions' Claims

It is undisputed that the Defendants are political subdivisions of the State of Florida.

6

Attorney General executed the Opioid Settlements and those settlements release all of the opioid-related claims on behalf of Florida and all its political subdivisions. The only remaining issue is the legal question whether the Attorney General has the authority to release subdivision claims.

The Florida Constitution declares that the Attorney General is a member of the Cabinet, and she "shall be the chief state legal officer." Fla. Const. Art IV, §§10(a), 10(b). The Attorney General's duties extend to representing the interests of the State. Fla. Stat. §§ 16.01(4), (5) (stating that the Attorney General "[s]hall appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which *the state* may be a party, *or in anywise interested*, in the Supreme Court and district courts of appeal of this state"; and "[s]hall appear in and attend to such suits or prosecutions in any other of the courts of this state or in any courts of any other state or of the United States.")[11] (emphasis added). "When occasion arises 'it is [her] duty to use means most effectual to the enforcement of the laws, and the protection of the people.' The Attorney General is the principal law officer of the state." *Thompson v. Wainwright*, 714 F.2d 1495, 1500 (11th Cir. 1983).

Critically, the Florida Statutes provide that the Attorney General "shall have and perform all powers and duties incident or usual to such office." Fla. Stat. § 16.01(7). Florida courts have, repeatedly, interpreted this provision within its plain language and intent to mean that the Attorney General retains all of the historic, sovereign common law powers and duties to represent and protect the people of Florida and their interests. *See State ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 270 (5th Cir. 1976):

---

[11] *See, e.g., State ex rel. Boyles v. Fla. Parole & Prob. Comm'n*, 436 So.2d 207, 210 (Fla. 1st DCA 1983) ("In cases such as the one at bar, where the injury is to the public, the Attorney General has standing as a representative of the people. The Attorney General, as chief law officer of the State, may appear in and attend to all suits or actions in which the State may be 'in anywise interested.' He is the 'people's attorney' and may properly intervene in a matter to represent the people in the courts.") (internal citations omitted).

7

> Finally, and most importantly, the Florida Supreme Court has consistently recognized the continuing existence of the Attorney General's common law powers. . . . This affirmation of the existence of the Attorney General's common law powers does not stand alone in Florida jurisprudence. It is echoed in case after case from *Gleason* to the 1972 decision in *State ex rel. Shevin v. Yarborough* . . . We conclude that there simply is no question that such powers exist.

"The Attorney General has the power and it is [her] duty among the many devolving upon [her] by the common law to prosecute all actions necessary for the protection and defense of the property and revenue of the state." *State ex rel Landis v. S.H. Kress & Co.,* 155 So.823, 827 (Fla. 1934). "As the chief law officer of the state, it is [her] duty, in the absence of express legislative restrictions to the contrary, to exercise all such power and authority as public interests may require from time to time." *Id.*

With respect to public nuisance-like claims, like the claims brought by the Defendant subdivisions, the Florida Supreme Court has been clear that it is the Attorney General's duty to abate and prevent nuisances. In *Kress*, the Florida Supreme Court stated that those common-law duties specifically include her duty "to prosecute all actions necessary for the protection and defense of the property and revenue of the state . . . to . . . prevent public nuisances . . . ." *Id.* Indeed, it is her duty "in the absence of express legislative restrictions to the contrary, to exercise all such power and authority as public interests may require from time to time." 155 So. at 827.

In addition to these broad grants of power, the legislature has made repeated grants of specific authority.[12] As is most relevant to this case, the legislature specifically granted the Attorney General authority to enforce consumer protection laws, including the authority to bring

---

[12] In addition, the legislature has granted the Attorney General authority to pursue other actions, including: (1) false claims on the government (Fla. Stat. §68.082 (defining state for purposes of the false claims act as "the government of the state or any department, division, bureau, commission, regional planning agency, board, district, authority, agency, or other instrumentality of the state.); (2) antitrust claims (Fla. Stat. §542.27 ("The Attorney General is authorized to institute or intervene in civil proceedings ... on behalf of the state, its departments, agencies, and units of government"); (3) public nuisance claims (Fla. Stat. §§60.05, 60.06, 823.05).

8

an action "on behalf of one or more consumers or *governmental entities* for the actual damages caused by an act or practice in violation of this part." Fla. Stat. §501.207(1)(c) (emphasis added). Under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), the Attorney General is the enforcing authority in circumstances like this, because the violations alleged in the relevant opioid lawsuits in the state affect "more than one judicial circuit." Fla. Stat. § 501.203.[13]

Although the Attorney General's power may be limited by the Florida Legislature, absent an explicit statutory limitation, the Attorney General's undertakings are presumed to be lawful sovereign actions.[14] "As the chief law officer of the state, it is [her] duty, in the absence of express legislative restrictions to the contrary, to exercise all such power and authority as public interests may require from time to time." *Kress,* 155 So. at 827. "Their duties and powers typically are not exhaustively defined by either constitution or statute but include all those exercised at common law. There is and has been no doubt that the legislature may deprive the Attorney General of specific powers; but in the absence of such legislative action, he typically may exercise all such authority as the public interest requires." *Shevin v. Exxon,* 526 F.2d. at 268. "And the attorney general has wide discretion in making the determination as to the public interest." *Id.* at 269.

The court in *Shevin v. Exxon* was presented with a related question to the question before this Court: whether the Attorney General may institute actions under federal law to recover

---

[13]  Moreover, the enforcing authority for matters affecting only one judicial circuit is *not* the Defendant subdivisions in this case—it is the applicable state attorney's office. *Id.*

[14]  Subdivisions' statutory authority to sue does not supersede the Attorney General's broad, sovereign common law powers, absent a clear legislative edict to the contrary. No such legislative edict exists in this case regarding any statutory claim; thus Defendants' claims were validly released by the Attorney General. Separately, where a subdivision may have concurrent statutory authority to bring claims, the Attorney General's claims are the superior claims, and as such she may release subdivisions' claims pursuant to a statewide settlement.

9

damages sustained by departments, agencies, and political subdivisions that have not affirmatively authorized the Attorney General to bring suit for recovery on their behalf. 526 F.2d at 270. The court stated the Attorney General retained the power, and indeed had the duty, to "prosecute all actions necessary for the protection and defense of the property and the revenue of the state." *Id.*[15] Additionally, the court analyzed whether the Attorney General could initiate actions on behalf of state instrumentalities "without affirmative authorization" to recover damages on those instrumentalities' behalf. *Shevin*, 526 F.2d at 272. The court concluded that because it could find no legislation barring the Attorney General from bringing an action on behalf of subdivisions without their consent, the Attorney General may act. *Id.* at 273-74.

The First District Court of Appeal in *Barati v. State* considered a similar issue to the issue presented in this case when it resolved whether the Attorney General had the power to dismiss an action in which she had not intervened. 198 So. 3d at 72. In *Barati*, the Attorney General filed a notice of voluntary dismissal in an action to which she was not a party, citing the Attorney General's power to dismiss false claims suits under Florida Statutes §68.084(2)(a). *Id.* The First District did not rely solely on the plain language of Section 68.084(2)(a) in endorsing the Attorney General's assertion but concluded that the Attorney General had authority to dismiss such an action in part based on "the constitutional authority of the executive branch vested in the Attorney General of the State of Florida to act as the State's chief legal officer." *Id.* at 84. The court reasoned that "[c]onducting and terminating legal actions brought in the name of and for the benefit of the State is the *sine qua non* of the State's chief legal officer." *Id.*

Similar to *Shevin* and *Barati*, it follows that, if the Attorney General has the power to

---

[15] *See also id.* at n.10: "We must reject any argument by defendants that the right to 'prosecute' an action does not include the right to institute the action. That term typically is used to refer, as a unit, to the institution and maintenance to a conclusion of a legal proceeding."

10

*bring litigation* on behalf of the people of Florida and its subdivisions, she must also be able to *settle litigation* on behalf of the people of Florida and its subdivisions—including the subordinate claims brought by Defendants. *See Abramson v. Fla. Psych. Ass'n*, 634 So.2d 610, 612 (Fla. 1994) ("[T]he power of a public body to settle litigation is incident to and implied from its power to sue and be sued."); *In re Certified Question,* 638 N.W.2d 409, 414 (Mich. 2002) ("[I]nherent in the Attorney General's authority to sue on behalf of a county in matters of state interest, is the Attorney General's authority to settle such a suit. Given that the Attorney General has the authority to bring claims, it inevitably follows that the Attorney General has the authority to settle and release such claims.").

The Defendants primarily rely on two Florida Supreme Court decisions: *Holland v. Watson,* 14 So. 2d 200 (Fla. 1943); *Watson v. Caldwell,* 27 So. 2d 524 (1946). In those cases, the Florida Supreme Court held that the statutorily created Board of Administration and Trustees of the Internal Improvement Fund were not required to allow the Attorney General to represent them in legal matters. Here, however, the question is not whether the Attorney General can force an agency to retain the Attorney General directly as its attorney. It is whether the Attorney General, in a case in which she is concededly authorized to represent the State, may exercise litigation authority to settle claims on behalf of the people of Florida and its subdivisions. Neither *Holland* nor *Watson* cast doubt on that well established authority.

Based on the foregoing authorities and given that the Defendants are subdivisions, this Court concludes that the Attorney General has the power to release claims, including the claims at issue in this case. This Court further states that when there is conflict (or overlap) between sovereign state interests and insular subdivision interests, the sovereign's interest necessarily must be deemed to be superior because the State's interest subsumes, in its entirety, the

11

subdivision's interest. "Local governments, including counties and municipalities, are creatures of the State without any independent sovereignty." *Fried v. State*, 355 So. 3d 899, 908 (Fla. 2023). Allowing Defendants to continue pursuing their subordinate opioid claims threatens Florida's sovereign interest in vindicating its citizens' rights—all of its citizens' rights—when confronted with societal harms such as the opioid crisis.[16] These are collective harms. They do not flow in an insular fashion to individual subdivisions—the harms cross city and county lines. Indeed, the Opioid Settlements consider the pervasive harms caused by the opioid crisis and apply a mixture of statewide and local solutions--a framework to which nearly all affected parties (states and subdivisions alike) have agreed. Defendants' continued pursuit of their opioid claims in contravention of the Opioid Settlements jeopardizes the flow of tens of millions of dollars that will aid in the abatement of the opioid epidemic throughout the State of Florida. Accordingly, this Court concludes that Florida is entitled to judgment as a matter of law because the Attorney General had the authority to release the Defendants' claims and did, indeed, release the Defendants' claims.

### B. The Defendants' Counterclaims

This Court concludes that Florida is entitled to summary judgment against the Defendants' counterclaims. There is no genuine issue of any material fact, and Florida is entitled to judgment as a matter of law on the Defendants' counterclaims. Florida is entitled to summary judgment on the Defendants' counterclaims seeking a declaratory judgment for the same reasons as Florida is entitled to judgment on its claim for a declaratory judgment. As to the takings

---

[16] *See, e.g., United States v. City of Miami*, 614 F.2d 1322, 1332 (5th Cir. 1980) ("Unlike the situations in which we fear that a party may be attempting [to] profit at the expense of unrepresented individuals, e.g., class actions and shareholder derivative suits, we here have as plaintiff the government department charged with seeing that the laws are enforced. We therefore need not fear that the pecuniary interests of the plaintiff and defendant will tempt them to agree to a settlement unfair to unrepresented persons, but can safely assume that the interests of all affected have been considered."

12

claims, Florida is entitled to judgment because subdivisions cannot assert takings claims against the state that created them. *City of Trenton v. New Jersey*, 262 U.S. 182 (1923); *also Bd. Of Levee Com'rs of the Orleans Levee Bd. v. Huls*, 852 F.2d 140, 142 (5th Cir. 1988) ("[A]s between the state and its agency, property is placed under the control of the agency for supervision and administration, the land to all practical intents and purposes being still the property of the state"); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1254 (5th Cir. 1976) (rejecting civil rights lawsuit brought by the City of Safety Harbor, Florida, regarding the annexation of a portion of Safety Harbor for the City of Clearwater).[17] South Broward's unjust enrichment and constructive trust claims also fail because they are barred by sovereign immunity[18] and fail as a matter of law.[19]

### C. Lee Health's and Memorial Healthcare's Motions for Continuance

The Florida Rules of Civil Procedure were revised in 2021 to adopt the federal standards of summary judgment. F.R.C.P. 1.510(a) (2022) ("The summary judgment standard provided for in this rule shall be construed and applied in accordance with the federal summary judgment standard."). Under Florida Rule of Civil Procedure 1.510(d), a nonmovant seeking to delay

---

[17] Florida's takings clause is coextensive with the Fifth Amendment's and may properly be analyzed with cases interpreting the Federal Constitution. *See, e.g., Chmielewski v. City of St. Pete Beach*, 890 F.3d 942, 949 (11th Cir. 2018) ("Because Florida follows federal takings law, we can look to cases brought under the Fifth Amendment to inform our analysis."); *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1222 (Fla. 2012) ("This Court has previously interpreted the takings clause of the Fifth Amendment and the takings clause of the Florida Constitution coextensively."), *rev'd on other grounds*, 570 U.S. 595 (2013); *Highlands–In–The–Woods, L.L.C. v. Polk Cty.*, 217 So. 3d 1175, 1180 (Fla. 2d DCA 2017) (holding "because [developer] did not establish an unconstitutional taking under the U.S. Constitution, it has failed to establish an unconstitutional taking under the Florida Constitution").

[18] *See Lee Memorial Health System v. Hilderbrand*, 304 So. 3d 58, 62 (Fla. 2d DCA 2020) (concluding that sovereign immunity barred an unjust enrichment claim); *City of Fort Lauderdale v. Israel* 178 So. 3d 444, 447 (Fla. 4th DCA 2015) (holding that an unjust enrichment claim was barred "with no written contract" to defeat the [government entity's] sovereign immunity claim....").

[19] *14th & Heinberg, LLC v. Terhaar and Cronley General Contractors, Inc.*, 43 So. 3d 877, 881 (Fla. 1st DCA 2010); *Williams v. Stanford*, 977 So. 2d 722, 730 (Fla. 1st DCA 2008) (citations omitted); *Est. of Kester v. Rocco*, 117 So. 3d 1196, 1201 (Fla. 1st DCA 2013).

13

consideration of a motion for summary judgment must *"show by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition..."* (emphasis added).[20] Here, Lee Health and Memorial Healthcare have failed to meet the requirements of the new standard adopted by the Supreme Court of Florida for the continuance of a summary judgment hearing. The facts that they seek in discovery will do nothing to help resolve a purely legal issue. And I would deny the motions for a continuance in my discretion anyway, as it is in the public interest for this matter to be resolved as quickly as possible. Accordingly, this Court will deny Lee Health and Memorial Healthcare's Motions for Continuance.

It is therefore **ORDERED** and **ADJUDGED** that:

1. Florida's motion for summary judgment (Dkt. #111) on its claim and against the counterclaims filed by the Defendants is **GRANTED.**

2. Halifax's motion for summary judgment (Dkt. #105) is **DENIED.**

3. Memorial Healthcare's and Lee Health's motions for continuance (Dkt. ##128, 134) are **DENIED.**

4. A Summary Final Judgment is hereby entered in favor of Florida and against each of the Defendants on Florida's claim for a declaratory judgment. The Attorney General had the power to release the Defendants' claims against the Opioid Defendants and any other entity released by the Opioid Settlements. The Defendants' claims against the Opioid Defendants and any other entity released by the Opioid Settlements were and are released.

5. A Summary Final Judgment is hereby entered in favor of Florida and against Defendants North Broward, South Broward, SBMD, SBPC, Memorial Healthcare, and Lee Health on each of these Defendants' counterclaims for a declaratory judgment.

---

[20] The applicable Rule provides that "[a] party may move for summary judgment at any time after the expiration of 20 days from the commencement of the action." Florida Rule of Civil Procedure 1.510(b).

6. A Summary Final Judgment is hereby entered in favor of Florida and against Defendants Memorial Healthcare, Lee Health, and North Broward on each of these Defendants' counterclaims asserting a takings claim.

7. A Summary Final Judgment is hereby entered in favor of Florida and against Defendant South Broward on its counterclaim for unjust enrichment.

8. The motions to dismiss the takings claims are denied as moot. The Clerk is directed to deny any other pending motion.

**DONE** and **ORDERED** in chambers in Tallahassee, Leon County, Florida this 26th day of April, 2023.

JOHN C. COOPER
CIRCUIT COURT JUDGE

Copies:

To all parties of record