

401 9th St. NW, Suite 1001
Washington, DC 20004
**o.** 202.232.5504  **f.** 202.232.5513

**Linda Singer**

*Licensed in DC, NY*
direct:  202.386.9626
lsinger@motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."

–Ron Motley (1944–2013)

June 8, 2023

*VIA EMAIL*
Special Master David Cohen
2400 Chagrin Boulevard, Suite 300
Cleveland, OH 44122
david@specialmaster.law

Re:  *In re National Prescription Opiate Litigation*, No. 17-md-2804: Dispute Regarding DEA's Production of ARCOS Transactional Data for 2015 to 2019

Dear Special Master Cohen,

The Plaintiffs' Executive Committee ("PEC"), on behalf of all MDL Plaintiffs, hereby moves for an order enforcing its Subpoena (Ex. A) to the U.S. Drug Enforcement Administration ("DEA") for production of complete transactional Automated Records and Consolidated Orders System ("ARCOS") data for all relevant opioid drugs for the years 2015 to 2019.  Since it served the Subpoena on May 11, 2023, the PEC has had discussions with counsel from the Justice Department, who stated that DEA is amenable to producing ARCOS data for *some but not all* of the opioids for which it previously produced ARCOS data in 2018.  The PEC requests that the Special Master order DEA to produce complete transactional ARCOS data for the years 2015 to 2019 for *all* relevant opioid drugs for which it previously produced ARCOS data.

## I.  The Full Scope of Updated ARCOS Data is Relevant to Ongoing MDL Cases.

The Plaintiffs in this MDL—county and municipal governments from across the country—have brought claims against the manufacturers, distributors, and dispensers of prescription opioids and other Defendants for their roles in causing the devastating opioid epidemic in Plaintiffs' communities.  Plaintiffs allege that these Defendants have contributed to the opioid epidemic by promoting increased opioid use and/or facilitating or preventing the diversion of opioids, in derogation of their federal- and state-law duties.

At the outset of the MDL, in April-May 2018, Judge Polster issued Orders (Dkt. 233, 397) for DEA to produce to the parties complete transactional ARCOS data for all prescription oxycodone, hydrocodone, hydromorphone, and fentanyl transactions for the period January 1, 2006 through December 31, 2014.  Dkt. 233 at 1; Dkt. 397 at 2-3.  In so ordering, Judge Polster ruled that enforcement of a subpoena served on a federal government agency is governed by the Federal Rules of Civil Procedure.  Dkt. 233 at 8-9.  Judge Polster also noted the agreement of the parties and DEA alike that the ARCOS data was relevant and necessary to litigation of Plaintiffs' claims in this litigation.  *Id.* at 7-8.

Special Master David Cohen
June 8, 2023
Page 2

After entry of these Orders, DEA produced transactional ARCOS data for *all* relevant prescription opioid families—the four opioids Judge Polster named plus oxymorphone, tapentadol, buprenorphine, morphine, codeine, dihydrocodeine, meperidine, powdered opium, methadone, and levorphanol.  There was and is no dispute that all of these opioid drugs are relevant to litigation of Plaintiffs' claims.  *See, e.g.*, Dkt. 1203 (Opinion and Order on Motions to Dismiss) at 17-18 and n.8 (identifying tapentadol as among the "prescription opiates at issue in this case").  The Special Master should order DEA to again produce ARCOS data for all of these opioids.

DEA also appears not to dispute the relevancy of ARCOS data for the more recent 2015 to 2019 period.  Since the Court ordered DEA to produce the earlier-period ARCOS data, some Defendants have entered into national settlement agreements resolving the MDL cases against them.  Other Defendants have not, however.  MDL Plaintiffs continue to have claims against certain national retail pharmacy chains, as well as "Tier 2" and "Tier 3" opioid manufacturers, distributors and dispensers and PBM Defendants.  The 2015 to 2019 transactional ARCOS data is as relevant to the cases against these Defendants being litigated in 2023 as the earlier-period data was relevant, by DEA's own admission, to cases against other Defendants that were being litigated five years ago in 2018.  The updated ARCOS data is also important for settlement purposes with regard to the remaining Defendants, as it provides both Defendants and the PEC with a more current view of their relative market shares.  Calculating market share requires national data and, to ensure that the data is comparable to prior periods and settlements, also necessitates carrying forward the same base set of opioids.  The Special Master therefore should order DEA to produce transactional ARCOS data for the 2015 to 2019 period for all of the relevant opioids.

## II.    The Full Scope of Updated ARCOS Data is not Unduly Burdensome Under Rule 45.

The PEC's request for the same scope of transactional ARCOS data previously produced, only for a later (*and shorter*) time period, does not unduly burden DEA.  The Court previously considered DEA's objections related to alleged burden and either overruled the objections or ordered that accommodation be made to facilitate production.  *See* Dkt. 233 at 14 (amending 1995 "begin-date" to January 1, 2006); *id.* at 15 (overruling objection to producing data for non-party entities); *id.* (narrowing Plaintiffs' request to cover only opioid drug transactions); *id.* (ordering production through secure third-party consultant to prevent "open access to the ARCOS system"); *id.* at 15-16 (overruling Privacy Act objection); *id.* at 16-17 (finding law enforcement investigation objection to be addressed by three-year buffer between data requested and date of production and by DEA's right to move for relief based upon particularized showing as to a specific proceeding);[1] *id.* at 17 (overruling objection to producing market share information); *id.* at 17-18 (overruling objection to disclosing locations of distribution facilities, finding the information already to be public); *id.* at 18 (addressing objection based on size of database by ordering production in native format and shifting burden and expense of data mining and extraction to Plaintiffs); *id.* at 18-19 (overruling objection that production is unnecessary because ARCOS data already is publicly

---

[1] The PEC's request herein provides the same three-year buffer, seeking production of data through the end of 2019.

Special Master David Cohen
June 8, 2023
Page 3

available).  If DEA renews any of these objections here, the Special Master should rule as the Court did and enforce the Subpoena.

To the extent DEA argues that producing transactional ARCOS data for the 14 opioids at issue is unduly burdensome in light of the prior Orders' focus on just four of these opioids, this argument has no merit.  As discussed, DEA previously produced transactional ARCOS data for all 14 opioids spanning a nine-year time period (2006 to 2014).  The PEC's current request is roughly half that size, covering just five years (2015 to 2019).  Moreover, the PEC would accept a staged production by DEA as it did in 2018, although a more condensed timeline is appropriate here given that the more recent time period avoids the difficulty of dealing with older data and platforms.  The PEC would accept the following production timeline:

- **oxycodone, hydrocodone, hydromorphone, fentanyl:**    14 days after Order
- **oxymorphone, tapentadol, buprenorphine, morphine:**    21 days after Order
- **codeine, dihydrocodeine, meperidine, powdered opium:** 28 days after Order
- **methadone, levorphanol:**                              35 days after Order.

Since DEA previously produced transactional ARCOS data for all of these drugs and the PEC's current request covers four fewer years than the prior productions did, this proposed timeline for DEA's production is abundantly reasonable.

For all of the reasons set forth, the Special Master should enforce the PEC's Subpoena and order DEA to produce transactional ARCOS data for the 14 listed opioids for the period from January 1, 2015 to December 31, 2019 on the production timeline set forth.

Respectfully submitted,

/s/ *Linda Singer*

Cc:    Defense Counsel, tracks6to10defendants@bbhps.com

Elias F. Boujaoude,  F.E.Boujaoude@usdoj.gov

Natalie A. Waites,  Natalie.A.Waites@usdoj.gov

James R. Bennett,  James.Bennett4@usdoj.gov

Renee A. Bacchus,  Renee.Bacchus@usdoj.gov

MDL 2804 Discovery, mdl2804discovery@motleyrice.com

# **<u>EXHIBIT A</u>**



401 9th St. NW, Suite 630
Washington, DC 20004
**o.** 202.232.5504   **f.** 202.232.5513

**Linda Singer**
*Licensed in DC, NY*
direct:  202.386.9626
lsinger@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

May 11, 2023

**VIA FEDERAL EXPRESS AND ELECTRONIC MAIL**

Ms. Michelle M. Baeppler
First Assistant U.S. Attorney
Office of the United States Attorney
801 W. Superior Avenue, Suite 400
Cleveland, OH 44113-1852
usaohn.contact@usdoj.gov

> RE:  Civil Discovery Request *In re National Prescription Opioid Litigation*,
>      No. 1:17-md-2804 (N.D. Ohio)

Dear Ms. Baeppler,

This letter is submitted pursuant to the Justice Department *Touhy* regulations, 28 C.F.R. §§ 16.21 *et seq.*, and is intended to set forth the basis for the civil discovery requests attached hereto as Appendix A.  These requests are made on behalf of the Plaintiffs' Executive Committee ("PEC") in the above-referenced multidistrict litigation ("MDL").  Consistent with 28 C.F.R. § 16.24(c) and Federal Rule of Civil Procedure 37, we are willing to discuss the scope of this request as well as the most efficient means to move forward at your earliest convenience.

Please confirm that you accept service.

## I.     Summary of Information Sought and its Relevance to the Proceeding

The Plaintiffs in this MDL—county and municipal governments from across the country—have brought claims against the manufacturers, distributors, and dispensers of prescription opioids for their roles in causing the devastating opioid epidemic in Plaintiffs' communities.  Plaintiffs allege that these Defendants have contributed to the opioid epidemic by facilitating or failing to prevent the diversion of prescription opioids, in derogation of their federal- and state-law duties.

At the outset of the MDL in April-May 2018, the Court (Hon. Dan A. Polster, U.S.D.J.) issued Orders (MDL Dkt. Nos. 233, 397) for DOJ and the U.S. Drug Enforcement Administration ("DEA") to produce to the parties certain data contained in DEA's Automated Records and Consolidated Orders System/Diversion Analysis and Detection System ("ARCOS/DADS") database.  Specifically, the Court ordered DEA to produce to the parties complete transactional ARCOS data for all opioid drug families for the period January 1, 2006 through December 31,



Touhy Letter from Linda Singer to Michelle M. Baeppler
Re: Civil Discovery Request in MDL 2804
May 11, 2023
Page 2

2014, first for the States of Ohio, West Virginia, Illinois, Alabama, Michigan, and Florida (Dkt. 233 at 1), and then for all States and territories (Dkt. 397 at 2-3).  DEA thus produced ARCOS data for all prescription buprenorphine, codeine, dihydrocodeine, fentanyl, hydrocodone, hydromorphone, levorphanol, meperidine, methadone, morphine, opium powdered, oxycodone, oxymorphone, and tapentadol transactions in these geographic locales for this time period.

The PEC now requests that DEA produce the same data—complete transactional ARCOS data for opioid drug families—for the period January 1, 2015 to December 31, 2019, as set forth in the attached Schedule A.  The requested data is relevant and indeed necessary to this litigation, as the Court and DEA itself recognized with respect to the originally-produced transactional ARCOS data.  *See* Dkt. 297 at 7 ("DEA and defendants also conceded the data was relevant and necessary to litigation.").  Although some Defendants since have entered into national settlement agreements resolving the MDL cases against them, others have not.  Specifically, MDL Plaintiffs continue to litigate cases against numerous national retail pharmacy chains that acted as both distributors and dispensers of opioids.  The 2015 to 2019 transactional ARCOS data is as relevant to the cases against these Defendants being litigated in 2023 as the earlier-period data was, by DEA's own admission, to the cases against other Defendants litigated five years ago in 2018.

## II.     Disclosure is Consistent with 28 C.F.R. §§ 16.21 *et seq.* and Fed. R. Civ. P. 45.

DOJ's *Touhy* regulations provide that when deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider: (1) whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and (2) whether disclosure is appropriate under the relevant substantive law concerning privilege. 28 C.F.R. § 16.26(a).

Here, both considerations are satisfied.  First, the MDL Court previously ordered and DEA produced transactional ARCOS data for the earlier 2006 to 2014 period, thus determining disclosure of the requested information to be appropriate under the governing rules.  Second, although *Touhy* regulations prohibit disclosure in certain circumstances, the PEC's requests are not intended to, and would not, implicate these regulatory exclusions.[1]

---

[1] Subject to certain exceptions, disclosure of information is prohibited pursuant to 28 C.F.R. § 16.26 if:

> (b)(1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),
> (2) Disclosure would violate a specific regulation;



Touhy Letter from Linda Singer to Michelle M. Baeppler
Re: Civil Discovery Request in MDL 2804
May 11, 2023
Page 3

Here, too, the MDL Court considered DEA's objections to producing the same requested information for the earlier 2006 to 2014 period and either overruled the objections or modified the Plaintiffs' request to address DEA's concerns. *See* Dkt. 233 at 14 (amending "begin-date" to January 1, 2006"); *id.* at 15 (overruling objection to producing non-party entities' data); *id.* (narrowing Plaintiffs' claim to cover only opioid drug transactions); *id.* (ordering production through secure third-party consultant to prevent "open access to the ARCOS system"); *id.* at 15-16 (overruling Privacy Act objection); *id.* at 16-17 (finding law enforcement investigation objection to be addressed by three-year buffer between data requested and date of production and by DEA's right to move for relief based upon particularized showing as to a specific proceeding); *id.* at 17 (overruling objection to producing market share information); *id.* at 17-18 (overruling objection to disclosing locations of distribution facilities, finding information already to be public); *id.* at 18 (finding objection to scope of production to be mooted by shifting burden of data mining and extraction to Plaintiffs); *id.* at 18-19 (overruling objection that production is unnecessary because ARCOS data already is publicly available).

Since the PEC is requesting no more than that DEA produce ARCOS transactional data for the later 2015 to 2019 period on the same terms on which it produced the same information for the earlier 2006 to 2014 period pursuant to Court orders, this request does not run afoul of any of the *Touhy* regulations' prohibitions. Moreover, to the extent DEA has any concerns related specifically to the later period, the PEC is willing to work with DOJ and DEA, as appropriate, to address such concerns.

**III.    Expedited Responses**

Please let us know by May 19 if you agree to produce the ARCOS data for the requested time period. We would be happy to work with you to establish a reasonable schedule for disclosure of the requested data. *Cf.* Dkt. 397 at 2 (May 8, 2018 Order that DEA produce nationwide transactional ARCOS data by May 25, 2018). If you have any questions or concerns regarding

---

(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency;

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection;

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.



Touhy Letter from Linda Singer to Michelle M. Baeppler
Re: Civil Discovery Request in MDL 2804
May 11, 2023
Page 4

this request or require additional information, please contact me directly at (202) 386-9626 or
lsinger@motleyrice.com.

Respectfully yours,

*/s/Linda Singer*
Linda Singer

Enclosures as referenced.

cc:     Natalie A. Waites, natalie.a.waites@usdoj.gov
        Peter H. Weinberger, pweinberger@spanglaw.com
        Jayne Conroy, jconroy@simmonsfirm.com
        Joseph F. Rice, jrice@motleyrice.com
        Paul T. Farrell, Jr., paul@farrellfuller.com
        Ronda L. Harvey, rharvey@bowlesrice.com
        Gretchen N. Miller, millerg@gtlaw.com
        Francis A. Citera, citeraf@gtlaw.com
        Kara Kapke, kkapke@btlaw.com
        Meredith Thornburgh White, mwhite@btlaw.com

# APPENDIX A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Ohio

In Re: National Prescription Opiate Litigation

|  |  |
|---|---|
| _Plaintiff_ | ) |
| v. | ) Civil Action No. 1:17-MD-2804 |
|  | ) |
|  | ) |
| _Defendant_ | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: United States Department of Justice, Drug Enforcement Agency
c/o Michelle M. Baeppler, First Assistant U.S. Attorney

_(Name of person to whom this subpoena is directed)_

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attached Schedule A

| Place: Spangenberg Shibley & Liber<br>1001 Lakeside Avenue East, Suite 1700<br>Cleveland, OH 44114 | Date and Time:<br><br>06/01/2023 10:00 am |
|---|---|

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/11/2023

|  |  |
|---|---|
| *CLERK OF COURT* | |
|  | OR |
|  | /s/Linda J. Singer |
| _Signature of Clerk or Deputy Clerk_ | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Plaintiffs' Executive Committee                                                  , who issues or requests this subpoena, are:
Linda J. Singer, Motley Rice LLC, 401 9th Street NW, Suite 630, Washington, DC 20004; lsinger@motleyrice.com; 202-386-9626

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:17-MD-2804

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**SCHEDULE A**

**REQUESTS FOR PRODUCTION
TO UNITED STATES DEPARTMENT OF JUSTICE and
<u>DRUG ENFORCEMENT AGENCY</u>**

COMES NOW the Plaintiffs' Executive Committee ("PEC"), by counsel, and submits the following discovery requests to the United States Department of Justice ("DOJ") and Drug Enforcement Agency ("DEA") in accordance with and at the direction of Deputy Assistant Attorney General David Morrell, Civil Division, Consumer Protection Branch of the U.S. Department of Justice.[1]

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, the PEC in the above captioned lawsuit hereby requests that you produce, and/or permit the PEC to inspect and copy at a location mutually agreed upon by the parties, the documents described below.

**DEFINITIONS**

1.      "Any" shall be construed to mean "any and all."

2.      "Communication" or "Communications" shall mean and refer to any oral, written, spoken or electronic transmission of information, including but not limited to, meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between yourselves or between You and any other person or entity.

---

[1] <u>See</u> Email correspondence from Mr. Morrell dated July 2, 2019 ("Given the large volume of discovery requests that the DEA has and continues to receive, the Department and the DEA would prefer that the plaintiffs submit formal discovery requests so that, in turn, the DEA can respond formally, including by interposing any appropriate objections, and/or authorizing the disclosure of the requested information.").

3.     "Concerning" or "regarding" or "pertaining to" means directly or indirectly mentioning or describing, relating to, referring to, regarding, evidencing, setting forth, identifying, memorializing, created in connection with or as a result of, commenting on, embodying, evaluating, analyzing, tracking, reflecting or constituting, in whole or in part, a stated subject matter.

4.     "Diversion" or "Drug Diversion" means the transfer of any legally prescribed controlled substance from the individual for whom it was prescribed to another person for any illicit use or purpose, and/or, the removal of a prescription drug from its intended path from manufacturer to patient.

5.     "Documents" or "Documents" as used in this Request is coextensive with the meaning of the terms "Documents" and "tangible things" in Fed. R. Civ. P. 34 and shall have the broadest possible meaning and interpretation ascribed to the terms "Documents" and "tangible things" under Fed. R. Civ. P. 34 and the applicable Local Rules. Consistent with the above definition, the term "Document" or "Documents" shall include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers,

2

booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, correspondence and Communications, as defined herein, of any type, including but not limited to video files, audio files, inter- and intra-office communications, questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of You or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of You, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on Your behalf. "Document" includes metadata, formulas, and other embedded, hidden, and bibliographic or historical data describing or relating to any document.

6.      "Opioid" or "Opioids" refer to that class of drugs, legal or illegal, natural or synthetic, used to control pain, including, but not limited to, the drugs referenced in Plaintiffs' Complaints in the above-referenced matter.

7.      "Opioid Defendants" or "Opioid Defendant" means the entities named in Plaintiffs' Joint Third Amended Complaint and includes any predecessor, successor, domestic or foreign parent, wholly or partially owned subsidiary, division, d/b/a, partnership, and joint venture, all owners, officers, agents, and employees of such entities, and other persons acting or authorized to act on behalf of any Opioid Defendant.

8.      "Opioid Product" or "Opioid Products" refer to the Opioids that were manufactured, marketed, advertised and distributed by any Defendant named in the above-captioned case. These

products include but are not limited to, by way of example only, OxyContin, or any Opioid Product, generic or otherwise, containing oxycodone; and Duragesic, as well as any Opioid Product, generic or otherwise, containing fentanyl. This includes coatings, capsule configurations, delivery systems or mechanisms that include, but are not limited to, antiabuse, tamper resistant and crush-proof mechanisms and mechanisms to deter immediate release. Opioid Products is also intended to include rescue medication for break through pain. For the removal of all doubt, requests for Documents and Communications related to any "Opioid Product" shall include Documents and Communications related to conduct related to the Opioid Product, including each allegation in the Complaint.

9.    "You" and "Your" shall refer to the Drug Enforcement Administration ("DEA"), the Department of Justice ("DOJ"), and/or all others acting or purporting to act on the DEA's or DOJ's behalf, including any employees, officers, committees, subcommittees, working groups, and joint task forces.

10.    "DEA Registrant" means Registrant as defined in 21 CFR 1300.01(b).

11.    The words "and/or," "or" and "and" are used inclusively, not exclusively. As such, "and/or," "or" and "and" should be construed so as to require the broadest possible response.

12.    Use of the present tense shall be construed to include the past tense and vice versa, to make the request inclusive rather than exclusive.

## INSTRUCTIONS

1.    When providing your responses, please indicate the Request to which each document or answer responds in the meta data field. If You believe that You already have produced documents responsive to any of the Requests below, then please specify (by Bates-number) which

documents are responsive to which specific Request, to whom the documents were produced, and when.

2.      Documents shall be produced in accordance with and as they are kept in the usual course of business.

3.      For each document that you produce, produce the current version together with all earlier editions, versions or predecessor documents during the relevant time period, even though the title of earlier documents may differ from current versions.

4.      Requested format for documents produced electronically in response to this Request:

a.      Any documents produced in response to this Request should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images. Document Unitization. Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

b.      Bates Numbering. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically branded onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. In order to ensure that the Bates Numbers do not obscure portions of the documents, the images may be proportionally reduced to create a larger margin in which the Bates Number may be branded. There shall be no other legend or stamp placed on the document image, except those sections of a document that are redacted to eliminate material protected from disclosure by the attorney-client or work product privileges shall have the legend "REDACTED" placed in the location where the redaction(s) occurred or shall otherwise note the location and/or location of the information for which such protections are claimed.

       c.      File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

       d.      Production Media. The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner: "V001-001," "V001-002," "V001-003." Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

       e.      Objective Coding/Extracted Meta Data. Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields and type of content set forth in the SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

       f.      Native format for Excel and databases. To the extent that such documents exist in Excel or another spreadsheet program, produce the document in its native format. To the extent that the document format constitutes a database created or maintained in Access or another software program, produce the document in its native format. If the database is based upon proprietary software, produce whatever keys and instructions are necessary to review it.

     5.      Requested format for hard copies of documents produced in response to this Request:

       a.  create electronic copies of the documents and produce them in accordance with the procedures described in Section 4 herein, provided that you retain the originals from which the electronic copies were made until the final disposition of the matter;

       b.  include a loadfile with corresponding information, including the following data fields: BegDoc, EndDoc, Custodian, DocTitle, Filename, Request No.;

       c.  the Custodian field in the loadfile should contain the name of the custodian or location from which the hard copy document was taken;

       d.  the Request No. field should contain the number of the Requests to which the document is responsive.

6.      These Requests require you to produce all described documents in your possession, custody or control without regard to the person or persons by whom or for whom the documents were prepared (e.g., your employees, distributors or dealers, competitors or others).

7.      If any responsive document was, but no longer is, in your possession, custody or control, produce a description of each such document. The description shall include the following:

       a.  the name of each author, sender, creator, and initiator of such document;

       b.  the name of each recipient, addressee, or party for whom such document was intended;

       c.  the date the document was created;

       d.  the date(s) the document was in use;

       e.  the title of the document;

       f.  a detailed description of the content of the document;

       g.  the reason it is no longer in your possession, custody or control; and

       h.  the document's present whereabouts and custodian thereof.

8.      In the event a document that is responsive to these Requests is not in your possession but you have a right to obtain the document or a copy of the document from a third party, you must obtain it (or a copy) and produce it in response to these Requests.

9.      If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

10.      If you assert a privilege in responding to this Subpoena, state the type of privilege asserted and the basis for its assertion. In addition, identify the Communication or Document with respect to which the privilege is asserted. For any document to which a privilege is asserted, state:

a. The type of document (e.g., letter, memorandum, contract, etc.), the date of the document, and the subject matter of the same;

b. The name, address, and position of the author of the document and of any person who assisted in its preparation;

c. The name, address, and position of each addressee or recipient of the document or any copies of it;

d. The present location of the document and the identity of the person having custody of it.

11. The documents requested: (i) shall not contain any HIPAA-protected patient information including patient names, social security numbers, addresses, birth dates, or other identifying information; or, (ii) shall have HIPAA-protected patient identifying information redacted by defendant.

12. Produce documents in the order in which you maintained them in your files, in copies of their original file folders, labeled with the folder's original file labels. Do not mask any portion of any document; produce the entire document, including all attachments to such responsive documents. Provide a key to all abbreviations used in documents and attach the key to the appropriate documents.

13. If you obtain information or documents responsive to any Request after you have submitted your written Responses or production, you have an affirmative duty to supplement your Responses and/or production with any new and/or different information and/or documents that become available to you.

**SPECIAL INSTRUCTIONS FOR PROPRIETARY DATABASES**

14. Documents stored in proprietary databases should be produced in such a way that the data, information, and functionality of the original database(s) is not lost and can be provided, as in the past, through a secure third party facility.

## REQUESTS FOR PRODUCTION

1.      Complete transactional Automated Records and Consolidated Orders System ("ARCOS") data for all prescription buprenorphine, codeine, dihydrocodeine, fentanyl, hydrocodone, hydromorphone, levorphanol, meperidine, methadone, morphine, opium powdered, oxycodone, oxymorphone, and tapentadol transactions in all states and territories in the United States for the period of January 1, 2015 through December 31, 2019.