## EXHIBIT R

## Agreement on Attorneys' Fees, Costs, and Expenses

This Agreement on Attorneys' Fees, Costs, and Expenses ("Fee Agreement") is entered between Walmart and the Plaintiffs' Executive Committee appointed in the multidistrict litigation in the Northern District of Ohio, *In re National Prescription Opiate Litigation*, No. 1:17-MD-2804 ("MDL PEC"), in connection with the Walmart Global Opioid Settlement Agreement ("Walmart Agreement").  This Fee Agreement becomes effective on the Effective Date of the Walmart Agreement or the date that the Consent Judgments anticipated under the Walmart Agreement become final in 25 Settling States (whichever is later).

## I.    Definitions

A.  This Fee Agreement incorporates all defined terms in the Walmart Agreement, unless otherwise defined herein, and shall be interpreted in a manner consistent with the Walmart Agreement.

B.  "*Applicant*."  Any Attorney or MDL Participating Counsel who seeks an award of attorneys' fees from the Attorney Fee Fund pursuant to the procedures established by the MDL Court and the Fee Panel.

C.  "*Attorney*."  Any of the following retained through a legal contingency fee or hourly fee contract: a solo practitioner, multi-attorney law firm, or other legal representative of a Participating Subdivision or MDL Participating Counsel.  This does not include Subdivision in-house attorneys.[1]

D.  "*Attorney Fee Fund*."  An account consisting of funds allocated to pay attorneys' fees approved pursuant to Section II.B of this Fee Agreement established by Order of and under the ongoing jurisdiction of the MDL Court, as provided below.

E.  "*Common Benefit*."  Work performed for the benefit of all Participating Subdivisions and Tribal Nations, including, but not limited to, pretrial matters, discovery, trial preparation, trial, settlement negotiations, and all other work that advances the interests of the Participating Subdivisions.

F.  "*Common Benefit Fund*."  The sub fund of the Attorney Fee Fund described in Section II.C.

G.  "*Contingency Fee Fund*."  The sub fund of the Attorney Fee Fund described in Section II.D.

---

[1] For the avoidance of doubt, Nassau County and Suffolk County of New York are eligible to receive payment under the Walmart Agreement and thus the legal services provided to Nassau County and Suffolk County in its litigation against Walmart, which was resolved through a separate settlement agreement, shall be treated as a Qualifying Representation for purposes of this Agreement.

EXHIBIT
C

H. "*Cost and Expense Fund Administrator*." The administrator appointed by the MDL Court on August 12, 2021 (MDL Docket No. 3828), to administer the Cost Fund and its sub funds as provided in the Fee Agreement.

I. "*Court Common Benefit Fund*." The Common Benefit Fund established by the MDL Court in its orders of July 22, 2021, MDL Docket No. 3794, and May 9, 2022, MDL Docket No. 4428.

J. "*Fee Entitlement*." Any right, entitlement, or expectation, including but not limited to a fee contract, contingent fee contract, agreement, referral arrangement, co-counsel arrangement, State Back-Stop Agreement, or any other arrangement by which counsel could receive compensation or other consideration. For the avoidance of doubt, the scope of Fee Entitlement under paragraph II.G.3.a does not include any Attorneys' fees associated with representation of a State.

K. "*Fee Panel*." The three-person panel appointed by the MDL Court on August 12, 2021 (MDL Docket No. 3828), to administer and make recommendations for the allocation and distribution of the Attorney Fee Fund and its sub funds as provided in the Fee Agreement.

L. "*Later Litigating State.*" A State that first files a lawsuit bringing a Released Claim against a Released Entity after November 14, 2022.

M. "*MDL Court*." United States District Court for the Northern District of Ohio Eastern Division, Case No. 1:17-md-2804, Judge Dan Aaron Polster.

N. "*MDL Expense Fund*." The cost fund described in Section II.F below.

O. "*MDL Participating Counsel.*" MDL Participating Counsel includes an attorney or firm authorized by MDL 2804 Lead Counsel to perform work for the Common Benefit of Participating Subdivisions. By way of example, it would include insurance counsel and appellant counsel.

P. "*MDL PEC*." The Plaintiffs' Executive Committee appointed by the MDL Court.

Q. "*Non-Participating Litigating Subdivision*." A Litigating Subdivision that is not a Participating Subdivision.

R. "*Non-Participating State.*" A State that is not a Participating State.

S. "*Participating Litigating Subdivision*." A Litigating Subdivision that is also a Participating Subdivision.

T. "*Participation Agreement*." An agreement executed by an Attorney that acknowledges the obligation to pay an appropriate MDL Common Benefit Assessment.

U. "*Qualified Tribal Representation.*"  Representation by an attorney of a Participating Tribal Government regarding Released Claims against Released Entities.  Such counsel are eligible for Common Benefit Fee consideration.  The Walmart Tribal Global Settlement provides for the contribution to the Common Benefit Fund as shall be determined by the MDL Court.

V. "*Qualifying Representation.*"  Legal services provided for representation of the MDL PEC or Participating Litigating Subdivision regarding Released Claims against Released Entities.

W. "*State Back-Stop Agreement.*"  Any agreement by a Settling State and private counsel for Participating Subdivisions in that State (or legislation enacted in that State) to provide, adjust, or guarantee attorneys' fees and costs, whether from the Attorney Fee Fund or any other source recognized in the agreement or legislation.[2]

X. "*Subdivision Cost and Expense Fund.*"  The fund created to pay approved Subdivision and Tribal Nations costs and expenses as set forth in Section II.E.

Y. "*Walmart.*" (i) Walmart Inc. and (ii) all of its respective past and present direct or indirect parents, subsidiaries, divisions, affiliates, joint ventures, predecessors, successors, and assigns.

## II. Fees and Costs

### A. *Total Attorneys' Fees and Costs*

1. Total attorneys' fees and costs to be paid by Walmart to Attorneys under this Fee Agreement shall be up to but in no event more than $297,720,376.93, subject to the reductions and provisions set forth below.  The total attorneys' fees and costs consists of up to $267,720,376.93 for the Attorney Fee Fund, as set forth in Section II, and $30,000,000 in total for the Subdivision Cost and Expense Fund and MDL Expense Fund, as set forth in Sections II.E and II.F respectively.

2. If an Eligible State does not join the Agreement by the State Participation Date and is accordingly not a Settling State, the total attorneys' fees and costs to be paid under this Fee Agreement by Walmart shall be reduced by twelve point four percent (12.4%) times the Remediation Payment amount that would have been allocated to that Non-Settling State as set forth in Section IV.B of the Walmart Agreement.

3. The total attorneys' fees and costs to be paid under this Fee Agreement by Walmart shall also be reduced by the amount of the Contingency Fee Fund for Attorneys representing Litigating Subdivisions in any Settling State that continue

---

[2] Nothing herein shall be understood to indicate approval for additional State Back-Stop Agreements or modifications of existing State Back-Stop Agreements.

to pursue Released Claims ("*Non-Participating Litigating Subdivisions*"), as set forth in Section II.D.4 and II.H.7 below.

4.      If Walmart settles with any Non-Settling State after November 14, 2022, and such settlement allows for the Subdivision(s) in such Non-Settling State to join the settlement, Walmart agrees to withhold from the attorney fee portion of such settlement a Common Benefit Fund assessment, to be deposited in the Common Benefit Fund, of 7.5% times the portion of the Remediation Payment that would have been due to such State if it had participated in the Walmart Settlement and been awarded its full portion of the Remediation Payment (the "*Walmart State Settlement CBF Assessment*").  If Walmart settles with any Subdivision(s) in a Non-Settling State other than in connection with a statewide settlement that includes the relevant State after November 14, 2022, then Walmart agrees to withhold from the attorney fee portion of such settlement a Common Benefit Fund assessment, to be deposited in the Common Benefit Fund, of 7.5% times the portion of the Remediation Payment that would have been due to such Subdivision under this Agreement (the "*Walmart Subdivision CBF Assessment,*" and, along with the Walmart State Settlement CBF Assessment, each a "*Walmart CBF Assessment*").  If (a) Walmart settles with a Non-Settling State after November 14, 2022, (b) such settlement does not allow for the Subdivision(s) in such Non-Settling State to join the settlement, and (c) Walmart later prevails in asserting that Released Claims of Primary Subdivisions in such Non-Settling State were released as a result of such settlement, Walmart agrees to deposit the Walmart State Settlement CBF Assessment in the Common Benefit Fund.  Any Walmart CBF Assessment is inclusive of any assessment related to such settlement that would be required by the Ongoing Common Benefit Order (Dkt. #4428) in *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804. To the extent that Walmart is required to pay any additional and/or separate assessment on such settlement as a result of the Ongoing Common Benefit Order, the Walmart CBF Assessment shall be reduced by the amount required to be paid pursuant to the Ongoing Common Benefit Order.

B.      *Attorney Fee Fund and Sub Funds*

1.      The Attorney Fee Fund shall consist of the Contingency Fee Fund and the Common Benefit Fee Fund.

2.      There shall be a split of the Attorney Fee Fund into the Contingency Fee Fund and the Common Benefit Fund.  The split shall be 40% to the Contingency Fee Fund and 60% to the Common Benefit Fund.  The Cost Funds shall include the MDL Expense Fund, and the Subdivision Cost and Expense Fund.  The State Counsel Fee Fund and the State Cost Fund shall be separate funds under the control of the Settling States.

3.      The Contingency Fee Fund and the Common Benefit Fund shall be administered by a Fee Panel to be appointed by the MDL Court that will be governed by the provisions of this Fee Agreement and shall design the process

and procedures for the allocation of fees pursuant to this Fee Agreement and the MDL Court's Order.  The Cost Funds shall be administered by the Cost and Expense Fund Administrator to be appointed by the MDL Court who will be governed by the provisions of this Agreement and shall design the process and procedures for the allocation of costs pursuant to this Agreement and the MDL Court's Order.

4.      The fees to be paid under this Fee Agreement are available for Attorneys engaged in Qualifying Representations and Qualified Trial Representations only. Fees to be paid under this Fee Agreement are not available prior to the Effective Date of the Walmart Agreement.  Fees to be paid under this Fee Agreement are not available for representation of States, Non-Participating Subdivisions or Non-Litigating Subdivisions and are not available for representation of private hospitals, third-party payors, NAS claimants, personal injury/wrongful death claimants, or any entity other than Participating Litigating Subdivisions.  In addition, fees under this Fee Agreement are not available for representation of any individual or entity in matters other than those claims against Released Entities, but may include a reasonable share of representations that involve development of facts for pursuit of opioid-related claims against multiple defendants in the pharmacy, manufacturing, and distribution chain.

5.      In no event shall Walmart be required to pay more into the Attorney Fee Fund than the maximum amount specified in paragraph II.A.1.  The amounts allocated to the Contingency Fee Fund and the Common Benefit Fund set by the Fee Panel shall be subject to the reductions set forth in Section II.A.2 and the reductions and refunds set forth below.

6.      Awards of fees from the Contingency Fee Fund shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Walmart Agreement, as set forth in Exhibit G to the Walmart Agreement, and shall be made by applying the Mathematical Model attached as Exhibit "A" to this Fee Agreement.  The collection of the data and calculations for the Mathematical Model has been a cooperative effort among private counsel for a large number of Litigating Subdivisions.  The analysis has been spearheaded by Joseph Tann and Andrew Arnold.  The Fee Panel is encouraged to continue working with those counsel in application of the Model.  The Fee Panel shall oversee the application of the Model and resolve any questions or disputes concerning the eligibility of a Counsel to participate as required in Section II.G.  The Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculation.

7.      As to awards from the Contingency Fee Fund, there shall be no right of appeal.

8.      Any appeal of an award of the Fee Panel from the Common Benefit Fund will be made to the MDL Court and be reviewed under an abuse of discretion standard.

C.      *Common Benefit Fund* (60% of the Attorney Fee Fund.)

1.  Walmart shall pay the entirety of the Common Benefit Fund payments into the Attorney Fee Fund within fifteen (15) calendar days of the Effective Date of the Walmart Agreement, subject to the reductions set forth in Section II.A.2 and the adjustments set forth below.

2.  The Common Benefit Fund shall be available to compensate Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions and Qualified Tribal Representation of Tribal Participating Governments who:

    a.  have performed work for the Common Benefit of all Participating Subdivisions and/or Tribal Nations consistent with the provisions to the guidelines established by Judge Polster set forth in MDL 2804 and the Order dated May 1, 2018, under docket number 358, which is included herein by reference; and

    b.  satisfy the eligibility criteria set forth in Section II.G.

    For purposes of Common Benefit Fund distribution, notwithstanding paragraph II.A.5, Attorneys representing Tribal Nations litigating against Walmart have also reached a settlement for Released Claims with Walmart, and these settlements are the subject of agreements with Walmart. Attorneys are eligible for Common Benefit consideration provided such agreement with Walmart became effective under their terms.  Such Attorneys must meet the eligibility criteria in Section II.G.

    For purposes of Common Benefit Fund distribution, notwithstanding paragraph II.A.5, MDL Participating Counsel not engaged in Qualifying Representations of Participating Litigating Subdivisions but who performed work for the Common Benefit pursuant to authorization from the MDL Co-Leads and meet the eligibility criteria in Section II.G shall be eligible.

3.  The Common Benefit Fund shall be overseen by the Fee Panel, which shall determine the allocation of funds to eligible Attorneys consistent with this Fee Agreement and the May 1, 2018 Order.

4.  In assessing the benefits that an Applicant has conferred to Participating Subdivisions (including non-Litigating Subdivisions) and/or Tribes for

purposes of any compensation decision, the Fee Panel shall give significant weight to the extent to which (i) the Applicant and his or her clients have contributed to increasing (or reducing) Subdivision Participation in the Walmart Agreement as of the Threshold Subdivision Participation Date, and (ii) the Applicant and his or her clients have contributed to increasing (or reducing) the amounts achieved under Incentive Payments A-D through participation in the Walmart Agreement, including the Walmart Tribal Agreement.  The Fee Panel shall also consider additional fee recoveries the Applicant may potentially obtain, including, but not limited to, from attorney fee funds under other Settlement Agreements, State Back-Stop Agreements, representations of States or Tribal Nations, representations of other clients in opioids-related matters, or through the representation of Subdivision clients, whether they participated in the Walmart Agreement or not.  It is the intent of this provision to recognize that the goal of the Walmart Agreement is to provide for maximum participation by the Subdivisions, maximum abatement funding for all Subdivisions nationally, and the maximum peace for Released Entities.  Therefore, representing a Non-Participating Subdivision does not further the goal of the Walmart Agreement, and should not be considered Common Benefit because it does not increase funds available to Participating Subdivisions' abatement programs.  Representing Later Litigating Subdivisions or Later Litigating States is antithetical to the Walmart Agreement and detracts from Common Benefit.  The Fee Panel shall consider this concept of "common detriment" set forth in this paragraph in all of its decision making with respect to the allocation of the Attorney Fee Fund among Applicants, as well as, in its discretion, any refunds provided to Walmart as set forth in Section II.H.  The Fee Panel shall consider the totality of the Applicant's Participating Litigating Subdivisions as compared to the Applicant's Non-Participating Litigating Subdivisions; the Parties recognize that, although the goal is for 100% participation, Applicants with a greater number of clients have a greater probability of having one or more Non-Participating Litigating Subdivision.  As used in this paragraph II.C.4, "client" or "representing" a Subdivision shall include any Litigating Subdivision as to which the Applicant has a Fee Entitlement.

5. As set forth in Section II.H, the Fee Panel must consider the factors described in paragraph II.C.4 to determine how and whether to allocate funds among Applicants and to determine the amounts to refund to Walmart.  Any reduction to an Applicant not refunded to Walmart shall be allocated to attorneys whose Litigating Subdivision clients participated in the settlement by the Threshold Subdivision Participation Date.

D.   *Contingency Fee Fund*.  (40% of the Attorney Fee Fund.)

1. Walmart shall pay the entirety of the Contingency Fee Fund payment into the Attorney Fee Fund within fifteen (15) calendar days of the Effective Date of the Walmart Agreement, subject to the reductions set forth in Section II.A.2 and the adjustments set forth below.

2.  The Contingency Fee Fund shall be available to compensate Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions that meet the criteria set forth in Section II.G.

   a.  The Contingency Fee Fund shall be available to Attorneys who represent Litigating Subdivisions that are Participating Subdivisions, whether their actions are filed in state or federal court, and meet the eligibility criteria of Section II.G.

   b.  Participation in the Contingency Fee Fund by counsel that have a case that is not subject to the jurisdiction of the MDL Court shall not create, provide, or waive jurisdiction of the MDL Court over that Litigating Subdivision, that case or Attorneys, other than to oversee the fairness of the distribution process, and enforcement of this Fee Agreement.

3.  The amount owed by Walmart to the Contingency Fee Fund shall be reduced to reflect the non-joinder of Litigating Subdivisions in Settling States by subtracting the amounts identified by the Fee Panel, pursuant to paragraph II.H.7, that would have been owed to counsel for Non-Participating Litigating Subdivisions in Settling States had such Litigating Subdivisions been Participating Subdivisions. The Fee Panel shall remit payment to Walmart from the Contingency Fee Fund for any amounts corresponding to such reductions.

4.  In the event that after the date of the Walmart Agreement, Walmart, prior to the Effective Date of the Walmart Agreement, settles with any Litigating Subdivision that would have been eligible to participate in the Settlement Agreement, and, under such settlement agreement pays attorneys' fees, the Fee Panel shall treat those Litigating Subdivisions as Participating Litigating Subdivisions and, applying the same criteria applicable to all Attorneys for Participating Litigating Subdivisions, determine what amount they would have been paid from the Contingency Fee Fund if they had become Participating Subdivisions under the Walmart Agreement without such prior settlement.  That sum, rather than being paid to the Attorney for the previously settling Litigating Subdivision, shall be returned to Walmart, except that such refund shall not be greater than the amount paid to the Attorneys under the Litigating Subdivision's prior settlement agreement.

E.  *Subdivision Cost and Expense Fund*

1.      Walmart shall pay $22,500,000 into the Subdivision Cost and Expense Fund.

2.      The Subdivision Cost and Expense Fund shall be available to compensate Attorneys for costs and expenses arising out of representation of Participating Litigating Subdivisions.  No funds in the Subdivision Cost and Expense Fund

may be used to compensate the costs incurred by Non-Participating Subdivisions or Non-Litigating Subdivisions or costs and expenses arising out of representation of any such Subdivision.  In allocating the Subdivision Cost and Expense Fund, the Administrator shall not allocate any funds for costs incurred after November 14, 2022.

3.      During the period between November 14, 2022 and the Effective Date, the MDL PEC, as well as Litigating Subdivisions eligible to claim costs from the Subdivision Cost and Expense Fund shall make best efforts to cease litigation activity against Walmart, including by jointly seeking stays or severance of claims against Walmart, where feasible, or postponements if a motion to stay or sever is not feasible or is denied, so long as such actions are not otherwise detrimental to the Litigating Subdivision.

4.      In the event that Walmart, prior to the Effective Date of the Walmart Agreement, settles with any Litigating Subdivision and, under such settlement agreement pays costs to the Litigating Subdivision or its Attorney, the MDL Cost and Expense Fund Administrator shall treat those Litigating Subdivisions as Participating Litigating Subdivisions and, using the same criteria applicable to all applicants to the Subdivision Cost and Expense Fund, determine what amount in costs the Litigating Subdivision or its Attorney would have been paid from the Subdivision Cost and Expense Fund if they had settled under the Walmart Agreement.  That sum, rather than being paid to the Attorney or the previously settling Litigating Subdivision, shall be credited and/or returned to Walmart, except that such sum shall not be greater than the amount paid under the previously settled Litigating Subdivision's settlement agreement.

5.      The Cost Fund shall be administered by the Cost Fund and Expense Fund Administrator (MDL Docket No. 3828), who will be governed by the provisions of this Agreement and shall design the process and procedures for the allocation of costs pursuant to this Agreement and the MDL Court's Order.

6.      The costs of the Cost and Expense Fund Administrator shall be paid from the Cost Fund and allocated by the Cost and Expense Fund Administrator between the MDL Direct Cost Fund and the Subdivision Cost and Expense Fund to fairly charge each fund the cost incurred in implementing and supervising the specific fund.

7.      The Cost and Expense Fund Administrator shall set the process and procedures for submission of and criteria for applications for payment of Subdivisions' and Tribal Nations' costs and expenses.  The Cost and Expense Fund Administrator shall receive and evaluate applications from Participating Litigating Subdivisions and litigating Tribal Nations, whether filed in Federal Court or State Court, to seek reimbursement for eligible costs under Section II.E.2 in pursuit of claims against Walmart.  The process shall require a showing that the costs or expenses sought were reasonably incurred in furtherance of active litigation of a designated state or federal bellwether trial-set case, or Common Benefit.  The Cost and Expense Fund Administrator shall require transparency from all applicants as to any other sources for compensating Attorneys for Subdivisions and Tribal Nations for costs incurred.  If funds remain after the reimbursement of approved out-of-pocket costs, the Cost and Expense Fund Administrator may consider reasonable and appropriate payment for client time, costs, or expenses incurred by recognized trial bellwether plaintiffs.  At the conclusion of the process, any funds not allocated by the Cost and Expense Fund Administrator shall be transferred to the Common Benefit Fund established in this Exhibit R.

8.      In the event that States and Subdivisions enter into an additional global settlement with a party or parties other than Walmart that is (a) under the jurisdiction of the MDL Court in MDL No. 2804, (b) creates a separate cost fund, and (c) unless the parties agree to another date, such agreement has an effective date prior to June 30, 2023, the Cost and Expense Fund Administrator shall have the authority to aggregate the Cost Fund with the cost fund created under that global settlement agreement.  The Cost and Expense Fund Administrator shall have the authority to address the appropriate procedures and required information to allow the costs to be funded from the appropriate cost fund or shared by two or more cost funds; *provided, however*, that the Subdivision Cost and Expense Fund shall remain subject to the requirements set forth in Section II.E.2.  For the avoidance of doubt, the Subdivision Cost and Expense Fund is available only to compensate Attorneys for costs and expenses arising out of representation of Participating Litigating Subdivisions and no funds in the Subdivision Cost and Expense Fund may be used to compensate the costs incurred by Non-Participating Subdivisions or Non-Litigating Subdivisions or costs and expenses arising out of representation of any such Subdivision.

F.      *MDL Expense Fund*

1.      Walmart shall pay $7,500,000 into the MDL Expense Fund.

2.      The MDL Expense Fund shall be released following the Effective Date of this Fee Agreement without any delay to reimburse the MDL Counsel for an agreed-to portion of the expenses incurred, as approved by the Cost and Expense Fund Administrator.  The sum deposited into the MDL Expense Fund will be paid directly to the MDL Cost Account, set up by MDL Order and will be administered under the ongoing jurisdiction of the MDL Court, as provided

below.  No funds may be used to compensate the costs incurred by Non-Participating Subdivisions or to compensate any Attorney for costs incurred in representing one or more Non-Participating Subdivisions.

3.      In allocating the MDL Expense Fund, the Administrator shall not allocate any funds for costs incurred after November 14, 2022, unless the Administrator determines that there are sufficient funds to cover all subdivision costs incurred prior to November 14, 2022 and that special circumstances exist to justify costs incurred following the public announcement of the Walmart Agreement, including reasonable costs related to the implementation of the Walmart Agreement.

G.   *Eligibility*

1.   It is the intention of all parties participating in the Fee Panel process that there should be total transparency to the Fee Panel and to all fund participants.  In connection with the process to be developed by the Fee Panel, any and all monies in attorney's fees received or awarded, including prior or future Contingency Fees, Common Benefit Fees, referral fees, expenses paid, promises for payment, or any other Fee Entitlement, to any Applicant in any opioid litigation shall be disclosed to the Fee Panel as a condition of participating in the Attorney Fee Fund and prior to an award from the Fee Panel.  Any payment, expectation of payment or perceived entitlement to participate in a State Back-Stop Agreement or any other agreement reached with a Settling State or any Subdivision or any other source regarding payment of fees must be disclosed to the Fee Panel.  Similarly, any right to payment from any other fund, for example a fund for payment to lawyers representing Settling States or Tribal Nations or Subdivisions shall be disclosed to the Fee Panel.  Because it is anticipated that there will be multiple firms listed on contingent fee agreements with Litigating Subdivisions, the Fee Panel shall establish procedures, with input from Attorneys for Participating Litigating Subdivisions, for which party or parties should petition for fees from such groups and to whom the fee shall be paid and thereafter distributed to co-counsel in accordance with applicable agreements.  For the avoidance of doubt, all Attorneys that are part of such groups must meet the eligibility criteria in paragraph II.G.3, must be subject to the criteria set forth in paragraph II.C.4, and must be disclosed to the Fee Panel.

2.   An Applicant may apply for and recover attorneys' fees from the Common Benefit Fund, the Contingency Fee Fund, and any fund created by a past or future State Back-Stop Agreement, provided the Applicant satisfies the requirements relevant to each such fund and requirements for disclosure to the Fee Panel.

3.   An Attorney may not receive any payment from the Attorney Fee Fund (which includes both the Contingency Fee Fund and the Common Benefit

Fund) unless the following eligibility criteria are met and annually certified by the Attorney:

a. The Attorney must expressly waive the enforcement against the Litigating Subdivision client of all Fee Entitlements (other than under State Back-Stop Agreements) arising out of or related to any or all Qualifying Representations of any Participating Litigating Subdivision prior to applying for attorneys' fees from the Attorney Fee Fund.  All applications for attorneys' fees under this Fee Agreement shall include an affirmation by the Attorney of such waiver and notice to the client(s) of such waiver.  Such waiver shall not preclude the Attorney from submitting such Fee Entitlements to the Fee Panel as a factor for consideration in allocating payments from the Attorney Fee Fund or in connection with a State Back-Stop Agreement.  For the avoidance of doubt, no Attorney may recover fees under this Fee Agreement unless the Attorney expressly agrees not to enforce Fee Entitlements as to each and every Participating Litigating Subdivision represented by that Attorney, but such Attorneys may participate in and receive funds from a State Back-Stop Agreement.

b. The Attorney must represent that s/he has no present intent to represent or participate in the representation of any Later Litigating Subdivision or Later Litigating State with respect to Released Claims against Released Entities.

c. The Attorney must represent that s/he has not and will not engage in any advertising or solicitation related to Released Claims against Released Entities where such advertising or solicitation relates to a representation of a Subdivision eligible to be a Participating Subdivision after the Threshold Subdivision Participation Date.

d. The Attorney must represent s/he will not charge or accept any referral fees for any Released Claims brought against Released Entities by Later Litigating Subdivisions or Later Litigating States.  This representation shall not prohibit Attorneys from receiving allocated shares of any future common benefit assessments arising out of settlements or judgments with Later Litigating Subdivisions or Later Litigating States that are the result of the MDL Court's Common Benefit Order.

e. The Attorney may not have and must represent that s/he does not have a Fee Entitlement related to a Later Litigating Subdivision or Later Litigating State, other than a potential Common Benefit Fee.

f. The Attorney must fully disclose the participation, or the anticipation of participation, in any agreement with a Settling State or Participating Subdivision concerning fees arising out of or related to the Walmart

Agreement, including any fees paid or anticipated to be paid or any State Back-Stop Agreement.

g.  The Attorney must identify for the Fee Panel whether s/he utilized state litigation work product or MDL work product, including but not limited to ARCOS data, document repositories, experts developed in the MDL, trial transcripts, or deposition transcripts.  The Attorney must identify whether s/he signed the MDL Participation Agreement.

h.  Any Attorney who applies for fees from one or both Funds must represent that, having exercised his/her independent judgment, s/he believes the Walmart Agreement to be fair and will make or has made best efforts to recommend the Agreement to his or her Subdivision clients in Settling States.  For avoidance of doubt, each Attorney is expected to exercise his or her independent judgment in the best interest of each client individually before determining whether to recommend joining the settlement.  All applications for attorneys' fees or costs under this Section shall include an affirmation by the Attorney in compliance with this Subsection.

4.  No Attorney receiving fees under this Fee Agreement may apply for or recover from the Attorney Fee Fund fees arising from representing a Non-Settling State or a Non-Participating Subdivision, provided, however, that this provision is not intended to prohibit Attorneys who do not represent or otherwise have a contractual agreement with such Non-Settling State or Non-Participating Subdivision from receiving allocated shares of any future common benefit assessments that arise out of settlements or judgments involving such Non-Settling State or Non-Participating Subdivision.  All applications for attorneys' fees under this Section shall include an affirmation by the Attorney of compliance with this Section.

5.  An Attorney who has filed an application under this section and received an award of attorneys' fees shall provide a certification of compliance with the Sections of this Fee Agreement annually during the years upon which they are still entitled to receive attorneys' fee payments under this Agreement.  This certification will be done as directed by the Panel.

6.  If, at any time, the Attorney is unable to make the representations set forth in this Section, such representations become untrue, or the Attorney falsely represents compliance with the eligibility criteria, the Attorney shall cease to be eligible to receive funds from the Attorney Fee Fund until further review by the Fee Panel of the Attorney's eligibility under and compliance with this Section II.

7.  If an Attorney has a Fee Entitlement with a Later Litigating Subdivision or Later Litigating State or otherwise becomes unable to reaffirm compliance with the eligibility criteria set forth above, the Attorney shall notify Walmart

and the Fee Panel.  For the avoidance of doubt, any Attorney who undertakes any new representation of, or has a Fee Entitlement with, a Later Litigating Subdivision or Later Litigating State shall be prohibited from receiving any future funds from the Attorney Fee Fund and be subject to additional obligations as set forth in Subsection 8 below.  If an Attorney fails to notify Walmart and the Fee Panel of such Fee Entitlement with a Later Litigating Subdivision or Later Litigating State, the Attorney shall be required to refund amounts previously paid.  The Fee Panel shall notify Walmart when it receives notification.

8.  To the extent an Attorney who has received compensation from the Attorney Fee Fund based on Qualifying Representations of Participating Litigating Subdivisions under the Walmart Agreement represents a Later Litigating Subdivision or Later Litigating State, such Attorney shall be obligated to refund such amounts received as compensation from the Attorney Fee Fund to Walmart.  Walmart or such Attorney may bring any dispute as to whether such Attorney shall be obligated to refund such amounts received from the Attorney Fee Fund to Walmart to the Fee Panel.  Nothing herein shall require a multi-attorney law firm that has received compensation from the Attorney Fee Fund to refund such amounts if an attorney of the firm that is no longer affiliated with such law firm, after such departure, represents a Later Litigating Subdivision or Later Litigating State, provided that (a) neither the law firm nor any of its other attorneys have any contractual or financial arrangement regarding, stand to benefit directly or indirectly from, or directly or indirectly provide financial or other support of any kind to, the former attorney's representation of the Later Litigating Subdivision or Later Litigating State and (b) if the former attorney was a partner or owner of the multi-attorney law firm at the time that the law firm received compensation from the Attorney Fee Fund, the former attorney shall be obligated to refund such amounts as the former attorney earned as a result of the compensation that the law firm received from the Attorney Fee Fund.

9.  In the event that an Attorney is deemed ineligible by the Fee Panel (whether based on its initial application or subsequent recertification), the Fee Panel shall provide notice to the Attorney and give the Attorney 30 days to provide additional information such that the Fee Panel could re-consider the Attorney's eligibility.

10. To the extent that an Attorney has a Fee Entitlement with a Participating Subdivision and is authorized to bring Released Claims against Released Entities, but such authorization is, in scope, less broad than the category of Released Claims set forth in the Walmart Agreement, such Attorney may participate fully in both the Contingency Fee Fund and the Common Benefit Fund, without any reduction imposed by the Fee Panel due to the scope of the authorization, so long as the Participating Subdivision fully releases all Released Claims against Released Entities.

11. Attorneys applying to the Attorney Fee Fund knowingly and expressly agree to be bound by the decisions of the Fee Panel, subject to the limited appeal rights set forth in this Fee Agreement, and waive the ability to assert the lack of enforceability of the allocation reached through the procedures outlined herein.

12. Applicants are under an ongoing obligation to inform the Fee Panel in writing of any additional fees earned, expected, or received related to any Opioid litigation throughout the period of the Fee Panel's operation.

H.    *Calculation of Amounts Due.*

1. The Fee Panel shall be solely responsible for determining the amount of fees to be paid to each Applicant.  None of the Released Entities shall have any responsibility, obligation, or liability of any kind whatsoever with respect to how attorneys' fees are calculated under this Section, except that the Fee Panel may receive information from Walmart as to (a) the identity of Participating, Non-Participating, Litigating, Later Litigating, and Non-Litigating Subdivisions; (b) the impact of non-participation by a Litigating Subdivision as is relevant to the Fee Panel's determination in paragraph II.C.4; and (c) such other information as Walmart may voluntarily elect to provide.

2. The Fee Panel shall establish procedures for making determinations under this Fee Agreement consistent with this Fee Agreement and orders of the MDL Court.  Such procedures may include submission of documentary and/or other evidence, interviews with Applicants and/or other counsel (including counsel for Walmart) that the Fee Panel deems appropriate, and/or other means of creating a record upon which fee awards will be based.

3. In making determinations under this Fee Agreement, the Fee Panel must apply the eligibility criteria set forth in Section II.G of this Fee Agreement and the criteria set forth in Section II.  The Fee Panel shall ensure that payments are only made for Qualifying Representations of Participating Litigating Subdivisions.  In addition, the Fee Panel will give consideration in regard to Common Benefit Fund awards to the *Johnson* factors, as well as the following factors (which factors may be applied and given relative weight in the Fee Panel's discretion):

   a. The Applicant's contemporaneously recorded time and labor dedicated to Qualifying Representations along with the Applicant's financial commitment to such Qualifying Representations.  Claimed "time" will not be automatically accepted by the Fee Panel but will be critically reviewed and given substantially more weight and consideration if such time was subject to the audit process described in any Pretrial Order(s) governing the collection of common benefit time;

b.  The novelty, time, and complexity of the Qualifying Representations;

c.  The skill requisite to perform legal services properly and undesirability of the case;

d.  The preclusion of other employment by the Applicant due to time dedicated to Qualifying Representations;

e.  The Common Benefit, if any, alleged to have been conferred by the Applicant and whether such Common Benefit work product by that Applicant was used by others in parallel litigations against Released Entities whether within or outside the MDL, provided that any Applicant claiming that s/he substantially benefited cases other than those in which s/he entered an appearance as counsel must substantiate such claims by proffering factual support, such as proper supporting affidavits or other documents as determined by the Fee Panel with input from Attorneys for Participating Litigating Subdivisions;

f.  Any "common detriment," as set forth in paragraph II.C.4;

g.  Any contingent fee agreement or other Fee Entitlement with Participating Subdivisions, enforcement of which, except for State Back-Stop Agreements, are waived in conjunction with the application, the nature and extent of any work for those Participating Subdivisions, whether such Participating Subdivisions actively litigated and, if so, the nature and procedural history of such case(s);

h.  The experience, reputation, and ability of the Applicant;

i.  Whether the Applicant's clients brought Released Claims against Released Entities;

j.  The status of discovery in cases primarily handled by the Applicant;

k.  The nature of any work by the Applicant on "bellwether" cases or cases that were similarly active in litigation;

l.  Any pressure points successfully asserted by the Applicant in cases against Walmart or any risk for Walmart created by the Applicant in cases against Walmart;

m.  Any risk for defendants created by Applicants in cases against Walmart;

n.  Successful and unsuccessful motion practice in cases worked on by the Applicant;

R-16

o. The date of filing of any cases filed by the Applicant;

p. Obtaining consolidation of the litigation in the Applicant's jurisdiction;

q. The number and population of entities represented by the Applicant and the fees that would have been awarded under extinguished contingent fee arrangements;

r. Whether the Applicant's clients brought claims against Walmart prior to the announcement of this settlement on November 14, 2022;

s. Whether the Applicant has had a leadership role in the litigation, whether in state or federal court;

t. Whether the Applicant has had a leadership role in any negotiations aimed at resolving the litigation;

u. Whether the Applicant's cases have survived motions to dismiss;

v. The extent to which the Applicant contributed to the work product used for the common benefit of opioids litigants, including, without limitation, work on ARCOS data, Prescription Data Monitoring Programs, IQVIA data, depositions, document production and analysis experts, motions, briefs and pleadings, trial preparations, and trials;

w. The extent to which litigation occurred prior to and contributed to completion of settlement negotiations, as distinct from litigation that occurred after the announcement of the Walmart Agreement on November 14, 2022, such latter litigation both being of less value and, the case of litigation filed after the announcement of the Walmart Agreement on November 14, 2022, resulting in a common detriment to the settlement process, which in both cases should be viewed less favorably; and

x. Any other factors that the Fee Panel finds to be appropriate to consider after input from Applicants to the Attorney Fee Fund.

4. It is possible that the States and Subdivisions that are litigating Opioid cases will enter additional settlements in close proximity of the time for processing the Walmart Settlement. If there are additional settlements and these settlements create a Common Benefit Attorney Fee Fund to be administered by the Fee Panel, the Fee Panel may:

a. Consolidate the Common Benefit approval process to include evaluation of all Common Benefit Applications for all settlements entered after November 14, 2022;

b. Determine the fair and equitable allocation of the Aggregate Common Benefit Fees that come after November 14, 2022, including consideration of beneficial or detrimental actions taken with respect to any Settling Defendant contributing to the Common Benefit Attorney Fee Fund;

c. Give consideration to the amount and timing of each settlement, including the amount and timing of Common Benefit Fees;

d. The Fee Panel shall abide by the applicable Attorney Fee Agreement in each of the Settlements in Allocating the Common Benefit Fees provided for in the Settlement; and

e. Be guided in their work by the Orders of the Court related to Fees and Costs.

5. The Fee Panel shall develop procedures for receiving a single application, which may be updated or amended based on new information (such as participation by additional Litigating Subdivisions) from each Applicant seeking compensation from each sub fund of the Attorney Fee Fund pursuant to processes and procedures developed by the Fee Panel, which shall not be inconsistent with this Fee Agreement.  Any request for attorneys' fees not included on the single application or through the updating/amendment process designed by the Fee Panel shall be deemed waived.  For purposes of transparency and to permit the Fee Panel to conduct its work, the application from each Applicant shall, at a minimum, require each Applicant to:

a. Identify all Litigating Subdivisions for which s/he is seeking payment from the Attorney Fee Fund;

b. Identify all Subdivisions in both Settling and Non-Settling States (and, where applicable, Tribal Nations) with respect to which s/he has a Fee Entitlement with respect to Relevant Claims against Released Entities, and identify all co-counsel in such cases;

c. Identify which of those Subdivisions are Participating Subdivisions and which are not (with similar information for Tribal Nations, where applicable);

d. Specify the specific fund or funds within the Attorney Fee Fund from which the Attorney is seeking compensation;

e. Demonstrate his or her eligibility for compensation from the relevant sub funds within the Attorney Fee Fund pursuant to the criteria set forth for the relevant sub fund;

R-18

    f.   Identify any and all Fee Entitlements from representations of States, Tribal Nations, or other plaintiffs related to Released Claims against Released Entities or in opioids-related matters;

    g.   Notwithstanding "a-f" above, the Panel may consider a supplemental application if the Applicant shows good cause why circumstances exist that will lead to consideration for additional Common Benefit award. Examples would include, but are not limited to, an Applicant having Non-Participating Litigating Subdivision clients that subsequently become Participating Subdivisions, a Bar Date passes that increases participation or an Allocation Agreement is reached.

6.   With respect to the Common Benefit Fund, the Fee Panel shall (subject to any applicable MDL Court Order):

    a.   Review the applications of all Applicants seeking compensation from the Common Benefit Fund, including determining eligibility for each Applicant as set forth in Section II.G.

    b.   Using criteria set forth in Sections II.C and II.G, allocate amounts from the Common Benefit Fund to eligible Applicants, including payment amounts for each Payment Year.  In making such allocations, the Panel shall apply the principles set forth in paragraph II.C.5 to the amounts paid to Applicants with a Common Benefit Fee Entitlement.

7.   With respect to the Contingency Fee Fund, the Fee Panel shall:

    a.   Review the applications of all Attorneys seeking compensation from the Litigating Subdivision Fee Fund, including determining eligibility for each Attorney as set forth in Section II.G.

    b.   Apply the Mathematical Model in Exhibit A.

    c.   Use such allocations to determine refund amounts owed to Walmart from the Attorney Fee Fund, and inform Walmart and the MDL PEC of all such adjustments.

8.   To the extent that there is a dispute about the calculations of the Fee Panel related to the amount that Walmart is required to pay (including application of any reductions or refunds under this Fee Agreement), such disputes shall be presented to the Fee Panel and any disputed funds be paid into/held in escrow. The Fee Panel shall resolve such disputes expeditiously, with either Party having the right to seek review from the MDL Court.

9.   For purposes of determination of fee or cost awards, allocations, reductions, and possible reversions under this Fee Agreement, unless specified otherwise

a Subdivision will be considered a Non-Participating Subdivision if it is not a Participating Subdivision as of the deadline for the application for the fee at issue (or, if the determination does not involve a specific application, the date on which the record for such determination closes).

10. In the event that the Fee Panel, through the use of the Mathematical Model set forth in Exhibit A, allocates funds from the Contingency Fee Fund for an Attorney based on a Qualifying Representation of a Participating Litigating Subdivision and that Subdivision is in a Settling State in which the Consent Judgment has not been approved, such funds shall be placed into escrow until the Consent Judgment is approved, after which time they shall be released.

I.    *Miscellaneous.*

1. The Fee Panel shall charge an hourly rate approved by the Court.  The Pre-Effective Date costs associated with the Cost and Expense Fund Administrator shall be paid from funds in the Cost Fund. Post-Effective Date, the cost of the Fee Panel shall be charged against the applicable Fee Fund based on allocation by the Fee Panel and shall not be otherwise funded by Walmart.

2. The MDL PEC will seek, and the Attorneys General for Settling States and the Walmart will not oppose, a Common Benefit Fee Order requiring an assessment of 7.5% on the gross recovery (by judgment or settlement) of any Non-Participating Subdivision that is subject to the federal court jurisdiction, represented by a MDL PEC firm, represented by any Attorney receiving fees from the Common Benefit Fund, represented by any Attorney that signed a Participation Agreement or had been paid in a case otherwise under the jurisdiction of the MDL Court.

3. The MDL PEC shall provide to Walmart information the PEC has that identifies Attorneys who represent Litigating Subdivisions who are not Participating Subdivisions and who have an obligation to pay a common benefit assessment, either due to the MDL Court's orders or having signed a Participation Agreement.

4. The MDL PEC and Walmart agree that it is a conflict of interest for an Attorney that had represented a Participating Subdivision to represent a Later Litigating Subdivision or Later Litigating State.  This Subsection shall be enforceable to the extent permitted by the equivalent to Rules 1.16 and 5.6 of the ABA Model Rules of Professional Conduct in the relevant jurisdictions. The MDL PEC represents that it will comply with this provision in the case of the Walmart Agreement until the Effective Date of the Walmart Agreement, as well as thereafter, if the Walmart Agreement proceeds.

5. Participating Subdivisions agree to instruct their counsel to treat information, work product and expert materials as confidential under Rule 1.6 of the ABA Model Rules of Professional Conduct.  Accordingly, an Attorney shall not

share information or work product with, or experts or materials to, non-participants (other than the Attorney's own current clients or their lawyers, consultants, experts or other representatives or agents).  However, nothing herein shall prevent MDL Leadership or PEC Counsel from fulfilling their obligations in any MDL and the MDL Court Order.

## III.  Miscellaneous

A.  *Termination*.  If the Walmart Agreement does not proceed past the date on which the Settlement Fund Administrator makes a determination as to whether the Subdivision Participation Thresholds have been satisfied and the time for the Parties to the Walmart Agreement to dispute such determination has passed, this Fee Agreement shall be null and void, Walmart shall have no obligation to make any payments under this Fee Agreement, and Walmart and the MDL PEC shall take such steps as are necessary to restore the *status quo ante*.  All funds paid by Walmart into the Attorney Fee Fund and Cost Fund shall be promptly returned to Walmart (including interest that accrues during such time as the monies are in escrow).

B.  *MDL Court Consideration*.  This Fee Agreement shall be attached as an exhibit to the Walmart Agreement. This Fee Agreement shall also be submitted by Walmart and the MDL PEC to the MDL Court for approval pursuant to the motion and order that shall be attached, prior to the notice date under Section II.A.3 of the Walmart Agreement as to whether the State Participation Threshold has been satisfied, to this Fee Agreement, as Exhibit B.

1.  In the event that the MDL Court, through an order, makes any change to the amounts potentially to be paid by Walmart under this Fee Agreement, makes any change to the Fee Panel's consideration of the factors set forth in paragraph II.C.4, or any other material change to the draft Order attached as part of Exhibit B or the terms of this Fee Agreement, Walmart and the MDL PEC shall meet and confer concerning such changes.  The MDL Court shall have no authority to increase the payments made by Walmart related to fees and costs beyond the amounts described in this Fee Agreement.

2.  If Walmart and the MDL PEC are unable to reach agreement and revisions to this Fee Agreement, this Fee Agreement shall be null and void, Walmart shall have no obligation to make any payments under this Fee Agreement, and Walmart and the MDL PEC shall take such steps as are necessary to restore the *status quo ante*.  All funds paid by Walmart into the Attorney Fee Fund and Cost Fund shall be promptly returned to Walmart (including interest that accrues during such time as the monies are in escrow prior to the Effective Date of the Walmart Agreement).

C.  *Amendment*.  Once the MDL Court has entered an order implementing this Fee Agreement, this Fee Agreement can only be amended by (1) written agreement of Walmart and the MDL PEC and (2) approval by the MDL Court.

D.  *Jurisdiction and Enforcement*.  The MDL Court shall have exclusive and ongoing jurisdiction over the enforcement and implementation of this Fee Agreement as set forth herein.  The MDL PEC shall be the Authorized Party to enforce this Fee Agreement, as to the payment obligations of Walmart as set forth in this Fee Agreement and as to Attorneys making application to the Funds under this Fee Agreement.  Solely for purposes of assessing or allocating common benefit fees, the MDL Court will continue to have jurisdiction over the work product developed in the MDL Court by and under the direction of the MDL PEC with respect to claims against Walmart, including data and documents, depositions, expert reports, briefs and pleadings; and the MDL Court's protective orders, management orders, and other decisions regarding such discovery and other work product, including but not limited to, conditions on its use, will continue in full force and effect.  Nothing in this paragraph authorizes the MDL Court to act contrary to this Agreement or to share any of the work product, or provides the MDL Court with jurisdiction over the Walmart Agreement.

**Description of Mathematical Model for the Allocation of the Contingency Fee Funds**

Walmart Settlement Agreement

This document describes the Mathematical Model for allocation of the Contingency Fee Fund described in Exhibit R (Agreement of Attorneys' Fees, Costs, and Expenses) to the Walmart Settlement Agreement.[3]  Awards of fees from the Contingency Fee Funds shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Walmart Settlement Agreement.[4]  A Fee Panel shall oversee the application of the Model and resolve any questions or disputes concerning the eligibility of a counsel to participate.  The Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculations.

In general terms, allocation of the Contingency Fee Fund shall be made by (1) determining the amount of the Settlement Fund that is attributable to each Participating Litigating Subdivision; (2) making certain adjustments to these amounts based on when the Subdivision filed suit and the terms of the applicable fee contract; and (3) dividing the Contingency Fee Fund proportionately among counsel for each Participating Litigating Subdivision based on the amounts calculated in subpart 2.

To collect a fee award from the Contingency Fee Fund, a Participating Litigating Subdivision must have named Walmart in its lawsuit.  The total maximum amount of the Contingency Fee Fund in the Walmart Settlement Agreement is $107,088,150.77.[5]

Allocation of the Contingency Fee Fund shall be made according to the following steps.   These calculations are made only for purpose of determining the percentage share of the Contingency Fee Fund that Attorneys for each Participating Litigating Subdivision should receive, ***not*** for determining the dollar amount each Subdivision will receive.

(1) For each Settling State, attribute 50% of the settlement funds for that State to its Subdivisions according to the Subdivision Allocation Percentage in Exhibit G to the Walmart Settlement Agreement.

```
Illustrative example:
```

- ```
  Assume that State A is allocated 1.00000% of the
  $2,393,794,118.64 Remediation amount [see Exhibit M of the
  Walmart Settlement Agreement].
  ```

- ```
  50% of the 1% share allocated to State A is $11,968,970.60.
  ```

- ```
  Assume that, per Exhibit G of the Agreement, the
  ```

---

[3] *See* Walmart Settlement Agreement, Exhibit R § II.D.2.
[4] Walmart Settlement Agreement, Exhibit R § II.D.2.
[5] Walmart Settlement Agreement, Exhibit R § II.A.1 & II.D.1.

```
Subdivision Allocation Percentage for City B in State A is
1.00000000%.
```

- ```
  For purposes of determining its counsel's share of the
  Contingency Fee Fund, City B is attributed 1.00000000% of
  $11,968,970.60, or
  $119,689.71.
  ```

(1) Adjust the amounts in paragraph 1 as follows:

    a. *Upward Adjustment for Early Filers.* Increase the amount calculated in paragraph 1 above by 10% for any Litigating Subdivision that named Walmart in a suit before December 5, 2017, the date the National Prescription Opiate Litigation MDL was formed. If the Litigating Subdivision did not name Walmart in a suit before December 2, 2022, then fees from the Contingency Fee Fund will not be awarded to Attorneys with otherwise Qualifying Representations of that Participating Litigating Subdivision.

```
Illustrative Example:
```
- ```
  Assume City C is attributed $1,000,000 under paragraph
  1 above.
  ```
- ```
  If City C named Walmart before 12/5/2017, the
  attributed amount would be adjusted to $1,100,000.
  ```

    b. *Determine Amount Due under Contingency Fee Contract.* Determine the amount that would be due to Attorneys with Qualifying Representations of each Participating Litigating Subdivision under the terms of the applicable fee contract if the Participating Litigating Subdivision were to receive the amount calculated in paragraph 2.a. This amount can be referred to as the Contingency Fee Assumption.

```
Illustrative Example:
```
- ```
  Continuing the example given in paragraph 2.a, if Attorneys
  have a 20% contingency fee contract with City C for the
  relevant litigation, the amount calculated in this step
  would be 20% of $1,100,000, or $220,000.
  ```

In the next step, the Contingency Fee Assumption is used to determine the percentage share of the Contingency Fee Fund due to Attorneys for each Participating Litigating Subdivision.

(2) Divide the Contingency Fee Fund proportionately among Attorneys for each Participating Litigating Subdivision in two ways:

    a. *National Fee Pool Calculation.* Determine each Litigating Subdivision's percentage share of all amounts due under contingency fee contracts nationwide

by dividing the Contingency Fee Assumption calculated for each Subdivision in paragraph 2.b by the sum of all Contingency Fee Assumptions. Then multiply that percentage by the Contingency Fee Fund to figure each Subdivision's dollar share of the Contingency Fee Fund (but only if the Subdivision timely named Walmart in a lawsuit).

```
Illustrative example:
```
- ```
  $220,000 [from para. 2.b] ÷ $1,800,000,000 [total amount
  owed under contingency fee contracts nationwide] =
  0.012222%⁶
  ```
- ```
  0.012222%  *  $107,088,150.77 [Contingency  Fee  Fund] =
  $13,088.31
  ```

b. *Separate State Fee Pools Calculation.* Determine each Litigating Subdivision's percentage share of all amounts due under contingency fee contracts statewide by dividing the Contingency Fee Assumption calculated for each Subdivision in paragraph 2.b by the sum of all Contingency Fee Assumptions in the same State. Then multiply that percentage by the portion of the Contingency Fee Fund that corresponds to that State's Overall Allocation Percentage, shown in Exhibit F of the Walmart Settlement Agreement, to figure each Subdivision's dollar share of the Contingency Fee Fund (but only if the Subdivision timely named Walmart in a lawsuit).

```
Illustrative example:
```
- ```
  1%  *  $107,088,150.77  =  $1,070,881.51  [amount  of
  the Contingency Fee Fund corresponding to State A]
  ```
- ```
  Assume a total of $17,600,000 is owed under contingency
  fee contracts for State A.
  ```
- ```
  $220,000 [from para. 2.b] ÷ $17,600,000 = 1.25%
  ```
- ```
  1.25% * $1,070,881.51 = $13,386.02
  ```

The award of fees to Attorneys with Qualifying Representations of Participating Litigating Subdivisions will be the average of the final amounts calculated in paragraphs 3.a and 3.b above.[7]

---

[6] In this example, $1.8 billion is the amount theoretically owed under all contingency fee contracts for litigation against Walmart as calculated in paragraph 2.b. This amount is illustrative only; the actual amount will not be known until all Participating Litigating Subdivisions are identified and the terms of all of their contingency fee contracts are collected.

[7] The model also enforces a maximum fee award of 20% of the amount calculated in paragraph 2.b. This rule is designed to prevent windfalls by addressing over-allocation in a small number of states with relatively few Participating Litigating Subdivisions. An estimated 97% of Qualifying Representations are not impacted this rule. The description in this document of the Mathematical Model is by necessity an abstraction; the precise contours of the calculations are defined in the model itself.

Paragraph 3.a represents allocation based on a proportional share of a National Fee Pool, while paragraph 3.b represents allocation based on a proportional share of the Separate State Fee Pools.  In other words, for the National Fee Pool described above in paragraph 3.a, the contingency fee contract rate is compared to all other contingency fee contract rates in the nation.  For the Separate State Fee Pools described above in paragraph 3.b, the contingency fee contract terms are compared to the other contingency fee contract terms in that same State.  The National Fee Pool and the Separate State Fee Pools are given equal weighting.

Using the first methodology, Attorneys for two Subdivisions <u>in different States</u> with the same amount calculated under paragraph 2.b would be assigned the same amount under paragraph 3.a.   Using the second methodology, Attorneys for the same two Subdivisions would be assigned different amounts under paragraph 3.b because they are in different States.   Specifically, the Subdivision in the State with a smaller proportion of Participating Litigating Subdivisions would be allocated more than the Subdivision in the State with a greater proportion of Participating Litigating Subdivisions.

By: _____

Name: Rachel Brand
       Executive Vice President of Global
       Governance, Chief Legal Officer and
       Corporate Secretary

Date: _____

*On behalf of Walmart Inc.*

By: _____

Name: Paul T. Farrell, Jr.

Date: _____

By: _____

Name: Jayne Conroy

Date: _____

By: _____

Name: Joseph F. Rice

Date: _____

*On behalf of Plaintiffs' Executive Committee*