# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All actions* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**ORDER TO ESTABLISH QUALIFIED SETTLEMENT FUNDS, APPOINT PANEL OF COMMON BENEFIT AND CONTINGENCY FEE FUNDS ARBITERS, APPROVE FEE FUND ALLOCATION AND DISTRIBUTION PROCESS, AND APPROVE COMMON BENEFIT COST PAYMENT AND ASSESSMENT**

The Plaintiffs' Executive Committee ("PEC") appointed by this Court, on behalf of the subdivisions that have reached resolution (the three "Settlement Agreements"[1]) with Defendants CVS,[2] Walgreens, and Walmart[3] (CVS, Walgreens, and Walmart together, the "Settling Defendants"), have moved for entry of an Order: (i) approving the establishment, under this Court's continuing jurisdiction, of three Qualified Settlement Funds, which are more specifically described in Exhibit R of each Settlement Agreement and which shall be called for each of the Settling Defendants, the CVS Pharmacy Attorney Fee Fund, the Walgreens Attorney Fee Fund, and the Walmart Attorney Fee Fund (hereinafter referred to collectively as the "Attorney Fee Funds" or the "Funds"); (ii) appointing an Administrator for the Funds (the "Administrator"); (iii)

---

[1] Any capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreements, including those terms defined in Exhibit R: "Agreement on Attorneys' Fees, Costs, and Expenses" of the Settlement Agreements ("Exhibit R"). For the avoidance of doubt, the term "Settlement Agreements" shall refer to the three Settlement Agreements between and among the Settling States, CVS, Walgreens, Walmart, and Participating Subdivisions (as those terms are defined therein), respectively, inclusive of all exhibits (including Exhibit R) thereof (the "CVS, Walgreens, and Walmart Settlement Agreements," respectively).
[2] "CVS" means CVS Health Corporation and CVS Pharmacy, Inc. and all of their past and present direct and indirect parents and subsidiaries.
[3] "Walmart" means Walmart Inc. and all of their past and present direct and indirect parents and subsidiaries.  As to Walmart, Inc., this Order will not be effective until the Walmart Settlement Agreement becomes effective.

1

determining that the three Funds, including each of their two constituent funds described below (the "Common Benefit Funds" and the "Contingency Fee Funds"), all constitute single qualified settlement funds within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Sections 1.468B-1, et seq.; (iv) approving payments into the agreed upon MDL Expense Fund; (v) approving a common benefit assessment of 7.5% on any cases described in Section VII below against any of the Settling Defendants, which shall supersede the payment obligations of all prior orders (ECF 4428 and ECF 3794) approving common benefit assessments against Settling Defendants; (vi) establishing, as a separate qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Sections 1.468B-1, et seq., a Cost and Expense Fund (as defined below in Section V and as more fully described in Exhibit R Section II), and appointing an administrator for the Cost and Expense Fund (the "Cost and Expense Fund Administrator").  The Order is intended to facilitate and be wholly consistent with Exhibit R of the Settlement Agreements, and in the event of any inconsistency between this Order and Exhibit R, Exhibit R shall control.

I. **Creation of the Attorney Fee Funds Under MDL Court Jurisdiction including Common Benefit Funds and Contingency Fee Funds**

Pursuant to the terms of the Settlement Agreements, the Settling Defendants have each agreed, if the conditions to making such payments set forth in the respective Settlement Agreements are met, to make payments into their respective Attorney Fee Funds, as more specifically described in Exhibit R of the Settlement Agreements, under the continuing jurisdiction of this Court, that will be used to pay attorneys' fees that have been incurred in furtherance of the opioid litigation related to these defendants, including, but not limited to, work done and fees incurred with respect to opioid litigation generally and against other defendants.

2

The Attorney Fee Fund for each Settling Defendant will consist of the following separate sub-funds, which shall together constitute a single qualified settlement fund for each Settling Defendant, and will remain subject to the continuing and exclusive jurisdiction of this Court:

- The Common Benefit Funds, which shall be 60% of the Fund, and which shall hold and disburse funds intended to cover common benefit work as defined in previous Orders of the Court; and

- The Contingency Fee Funds, which shall be 40% of the Fund, and which shall hold and disburse funds intended to compensate attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions that meet the criteria set forth in Exhibit R of the Settlement Agreements, in lieu of enforcement of contingency fee contracts with such Subdivisions.

- Eligibility of counsel for the Common Benefit Funds and the Contingency Fee Funds shall be determined under the terms of Exhibit R.

Subject to the conditions for making payments set forth in the each of the Settling Defendants' Settlement Agreement, which allow for certain reductions, suspensions, or offsets, the Settling Defendants shall make Payments as follows:

CVS will pay a maximum total of $530,615,944.00 (the "CVS Total Payment") into the CVS Attorney Fee Fund over a period of five years starting June 30, 2023. The CVS Total Payment shall be prorated in accordance with the CVS Settlement Agreement and its Exhibit R (Exhibit A hereto). Should any provision of the CVS Settlement Agreement or Exhibit R thereto pertaining to reductions, refunds, suspensions, or offsets be triggered, the appropriate amounts shall revert from the CVS Attorney Fee Fund to CVS or reduce the CVS Total Payment consistent with the provisions in the CVS Settlement Agreement and Exhibit R.

Walgreens will pay a maximum total of $593,732,518.00 (the "Walgreens Total Payment") into the Walgreens Attorney Fee Fund over a period of five years. The Walgreens Total Payment shall be prorated in accordance with the Walgreens Settlement Agreement and its

Exhibit R (Exhibit B hereto). Should any provision of the Walgreens Settlement Agreement pertaining to relevant reductions, suspensions, or offsets be triggered, the appropriate amounts shall revert from the Walgreens Attorney Fee Fund to Walgreens or reduce the Walgreens Total Payment consistent with the provisions in the Walgreens Settlement Agreement, including Exhibit R.

Walmart will pay a maximum total of $297,720,376.93 (the "Walmart Total Payment") into the Walmart Attorney Fee Fund within fifteen (15) calendar days of the Effective Date of the Walmart Agreement, subject to reductions set forth in Exhibit R Section II.A.2, Section II.C. and Section II.H.. The Walmart Total Payment shall be prorated in accordance with the Walmart Settlement Agreement and its Exhibit R (Exhibit C hereto). Should any provision of the Walmart Settlement Agreement pertaining to relevant reductions, and/or refunds, be triggered, the appropriate amounts shall revert from the Walmart Attorney Fee Fund to Walmart or reduce the Walmart Total Payment consistent with the provisions in the Walmart Settlement Agreement, including Exhibit R.

The obligations of the Settling Defendants in the Settlement Agreements arise out of the claims and case brought by the Settling States and the Participating Subdivisions related to the alleged past, present, and future financial, societal, and public nuisance harms and related expenditures arising out of the alleged misuse and abuse of opioid products that have allegedly been caused by the Settling Defendants. The Settling Defendants deny the allegations made in Plaintiffs' claims.

For the avoidance of doubt, the CVS Total Payment is separate and distinct from the Total Remediation Amount (as defined by the CVS Settlement Agreement), which is compensatory restitution (within the meaning of 26 U.S.C. Section 162(f)(2)(A)) paid as

4

damages by the Settling Defendants for the Alleged Harms allegedly suffered by the Settling States and Participating Subdivisions.

For the avoidance of doubt, the Walgreens Total Payment is separate and distinct from the Compensatory Restitution Amount (as defined by the Walgreens Settlement Agreement), which is compensatory restitution (within the meaning of 26 U.S.C. Section 162(f)(2)(A)) paid as damages by the Settling Defendants for the Alleged Harms allegedly suffered by the Settling States.

For the avoidance of doubt, the Walmart Total Payment is separate and distinct from the Total Remediation Amount (as defined by the Walmart Settlement Agreement), which is compensatory restitution (within the meaning of 26 U.S.C. Section 162(f)(2)(A)) paid as damages by the Settling Defendants for the Alleged Harms allegedly suffered by the Settling States and Participating Subdivisions.

## II. Common Benefit Funds and Contingency Fee Funds

Amounts in the Funds shall be allocated to the Common Benefit Funds and the Contingency Fee Funds as set forth in each Exhibit R to the Settlement Agreements.  The payments are to be made in the amounts, on the yearly schedule, and subject to the adjustments set forth in each Exhibit R.  Each year, 60% of each payment shall be deposited into the Common Benefit Funds and 40% of each payment shall be deposited into the Contingency Fee Funds.  Should any condition set forth in the Settlement Agreements for making payments into the Funds or MDL Expense Fund go unmet, the Settling Defendants will be under no obligation to make any payment related to the condition.

The Court hereby appoints, as the movants request, the three experienced jurists/special masters appointed under MDL Docket No. 3828 as Fee Panel Arbiters, to oversee and allocate

the Common Benefit Funds and the Contingency Fee Funds. The Court appoints David R. Cohen as Administrator to oversee administration and administrative costs of the Attorney Fee Funds. In the interest of transparency, proportionality, and efficiency, the Court appoints the same Arbiters to oversee the disbursement of the Common Benefit Funds as the Contingency Fee Funds.

With respect to the Contingency Fee Funds, the Arbiters are directed to establish and implement procedures for the distribution of the Contingency Fee Funds consistent with the terms of Exhibit R of the Settlement Agreements attached thereto. As part of that process, counsel submitting fee petitions for each Participating Litigating Subdivision will represent they waive enforcement rights against the Participating Subdivision clients of all contracts entered into in conjunction with the Qualifying Representation prior to applying for attorneys' fees or costs, under the Contingency Fee Funds. If a client is a non-Settling or non-Participating Client, counsel submitting fee petitions does not waive enforcement rights.  To the extent a State allocation agreement or process provides for a fee fund, such agreements shall be enforceable consistent with State law and the Settlement Agreements.

Awards of fees from the Contingency Fee Funds shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Settlement Agreements, and shall be made applying the Mathematical Model attached as Exhibit A to the Exhibit R (the "Mathematical Model"). The collection of the data and calculations for the Mathematical Model has been a cooperative effort among private counsel for a large number of Litigating Subdivisions. The Fee Panel is encouraged to continue working with those counsel in application of the Mathematical Model. The Fee Panel shall oversee the application of the Mathematical Model and resolve any questions or disputes

concerning the eligibility of an Attorney to participate as required in Sections II.G-H of Exhibit R to each of the CVS, Walgreens and Walmart Settlement Agreements. The Fee Panel is empowered to hear disputes concerning and ensure the accuracy of the mathematical calculation. As to awards from the Contingency Fee Funds, there shall be no right of appeal. Any appeal of an award of the Fee Panel from the Common Benefit Funds will be made to this Court and be reviewed under an abuse of discretion standard.

The Court hereby: (1) authorizes the Arbiters to commence start-up work, which shall be compensated as set forth below; (2) directs the Arbiters to set up a process to receive requests for common benefit fees and set forth the required materials to be provided to them in connection with fee petitions, which may be in supplementation of requests made pursuant to other settlements; (3) directs the Arbiters, once the conditions necessary for the Settlement Agreements to come into effect are fulfilled, to make a preliminary recommendation on the distribution of common benefit fees; and (4) directs the Arbiters to address any requests to be heard regarding that preliminary recommendation by attorneys that sought common benefit fees and make a final recommendation to the Court. This Court will make the final determination of an approved distribution of any common benefit funds. No distributions shall be made from the Contingency Fee Funds or the Common Benefit Funds except through the process established by this Order and by the Arbiters pursuant to this Order.

All payments into the Funds, and any interest thereon, will be held by the Funds until disbursed by the Arbiters or the Court, or by the Administrator or Trustee acting under the Court's supervision, in accordance with the terms of the Settlement Agreements and any escrow or trust agreement governing the Funds. No parties or their counsel, including the Participating

Subdivisions and their counsel, shall be considered to be in constructive receipt, as determined under federal income tax principles, of any amounts held by the Funds.

The Funds shall be structured and operated in a manner so that they qualify as "qualified settlement funds" as described in Treasury Regulations Section 1.468B-1, and shall remain subject to the continuing jurisdiction of this Court. The Contingency Fee Funds and the Common Benefit Funds for each settling Defendant shall be established as sub-funds of their respective Funds that together constitute a single qualified settlement fund for each Settling Defendant.

The Court appoints David R. Cohen, who is one of the Court-appointed Arbiters, to serve as Trustee and as the Administrator (the "Administrator/Trustee") of these qualified settlement funds for purposes of Treasury Regulations Section l.468B-2(k)(3), and who shall be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the Funds. The Administrator/Trustee shall be responsible for responding to any questions from, or audits regarding, such taxes by the Internal Revenue Service or any state or local tax authority, as well as questions from the Department of Labor. The Administrator/Trustee shall also be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the Funds, as well as paying any associated interest and penalties. All such tax, interest, and penalty payments and all expenses and costs incurred in connection with taxation of the Funds (including, without limitation, expenses of tax attorneys and accountants) shall be paid from the Funds and shall be considered administrative costs of the settlement.

With respect to work undertaken by the Arbiters or Administrator/Trustee prior to the fulfillment of the conditions precedent of the Settlement Agreements, such costs shall be paid from the first interest generated by the Funds, or from the Funds.

No bond shall be required. The Funds shall be held under this Court's ongoing jurisdiction, at a financial institution selected by the Administrator/Trustee in his discretion and approved by the Court. All amounts deposited in the Funds shall be invested conservatively in a manner designed to assure timely availability of funds, protection of principal, and avoidance of concentration risk, consistent with the limitations set forth in Exhibit R.[4]  The services of the Administrator/Trustee and the Court-appointed members of the Fee Panel, and any vendors and services they determine to be necessary and appropriate to conduct and complete their work, shall be paid or reimbursed from the interest earned or from the Fund.

The Administrator/Trustee will obtain a Federal Taxpayer Identification Number for each Fund upon entry of an order by this Court establishing the Funds. The Administrator/Trustee shall be authorized, upon final distribution of all monies paid into the Funds to take appropriate steps to wind down the Funds and thereafter be discharged from any further responsibility with respect to the Funds.

### III. Appointment of Fee Panel

The Court hereby appoints David R. Cohen, Randi S. Ellis, and Hon. David R. Herndon (ret.) to serve as Arbiters on the Fee Panel, charged with the fair, equitable, and reasonable allocation of awards from the Common Benefit Funds and Contingency Fee Funds pursuant to the terms and provisions of the Settlement Agreements.

David R. Cohen is well known to this Court, and intimately familiar with the issues of the Opioids litigation, both generally and as they relate to the claims against the Settling Defendants.

---

[4] Sections II.E.6 of Exhibit R to the CVS, Walgreens, and Walmart Settlement Agreements each provide that Pre-Effective Date costs associated with the Cost and Expense Fund Administrator shall be paid from the "Cost Fund." Further, Sections II.E.8 of Exhibit R to the CVS, Walgreens, and Walmart Settlement Agreements each provide that the Cost and Expense Fund Administrator shall have the authority to aggregate, allocate, and share among separate costs funds created by this MDL.

He has extensive experience as a special master for federal judges in other MDLs as well, and as a mediator and arbitrator.

Randi S. Ellis has served as a court-appointed mediator, special master, or neutral in over two dozen major MDLs, class actions, and mass torts. This service to numerous courts includes the allocation of settlement proceeds among claimants, determining the reasonableness of attorneys' fees, and common benefit fund determinations.

Hon. David R. Herndon retired recently from 27 years as a judge, including service as an MDL Transferee Judge in major MDLs and other federal complex cases that were successfully resolved through mass tort or class action settlements.

Each of these Arbiters has worked with thousands of lawyers from across the country in the MDL and complex litigation context, and is thoroughly familiar with the interests and issues involved in the fair and reasonable consideration and allocation of common benefit and contingency fees.

## IV. Description of the Attorney Fee Fund Conditions and Criteria

The Court hereby directs the Fee Panel to administer the Funds in accordance with the Settlement Agreements (including the Exhibits R), the principles of transparency and equity, and the following requirements and conditions for any attorney seeking an award from the Attorney Fee Funds:

A. Amounts disbursed from the Funds are available only to Attorneys engaged in Qualifying Representations. No Attorney may apply for or recover from the Funds any costs incurred or fees arising from representing a Non-Settling State or a Non-Participating Subdivision. Absent agreement otherwise entered between the MDL 2804 Co-Leads and the Tribal Leadership Counsel, or Order of the Court, an Attorney representing a Tribe that is a Participating Tribe in the Tribal Settlement Agreement with a Settling Defendant is eligible to participate in the Common Benefit Funds and may seek to participate in the Subdivision Cost and Expense Fund but they shall not be eligible to participate in the Contingency Fee Funds under Exhibit R.

B. Attorneys requesting disbursement from the Funds must disclose to the Fee Panel prior to any award from the Funds: (1) any and all attorneys' fees, including referral fees, expenses paid, promises for payment, or any other Fee Entitlement to any applicant in any opioid litigation; (2) any payment, expectation of payment, or opportunity to participate in a State Back-Stop Agreement or any other agreement regarding payment of fees; and (3) any right to payment from any other fund created under either of the Settlement Agreements or from funds paid under either of them.

C. In order to receive an award from the Funds, prior to applying for such award, an Attorney must: (1) expressly waive enforcement against every Participating Litigating Subdivision client of all Fee Entitlements (other than under State Back-Stop Agreements) arising out of or related to any or all Qualifying Representations of any Participating Litigating Subdivision (such waiver shall not preclude the Attorney from submitting such Fee Entitlements to the Fee Panel as a factor for consideration in allocating payments from the Funds or in connection with a State Back-Stop Agreement; for the avoidance of doubt, no Attorney may recover fees under Exhibit R to the Settlement Agreements unless the Attorney expressly agrees not to enforce Fee Entitlements as to each and every Participating Litigating Subdivision represented by that Attorney, but such Attorneys may participate in and receive funds from a State Back-Stop Agreement); (2) provide notice to the applicable client(s) of the waiver described in subsection (1) and make an affirmation or certification of the aforementioned waiver; (3) represent that s/he has no present intent to represent or participate in the representation of any Later Litigating Subdivision or any Releasor with respect to Released Claims against Released Entities; (4) represent that s/he has not and will not engage in any advertising or solicitation related to Released Claims against Released Entities where such advertising or solicitation relates to a representation of a Subdivision eligible to be a Participating Subdivision after the Reference Date (or, for the Walmart Settlement Agreement, the Threshold Subdivision Participation Date) unless the Attorney is recommending participation in the Agreement; (5) represent that s/he will not charge or accept any referral fees for any Released Claims brought against Released Entities by Later Litigating Subdivisions or Later Litigating States; (6) not have and must represent that s/he does not have any Fee Entitlement related to a Later Litigating Subdivision or Later Litigating State; (7) fully disclose the participation, or the anticipation of participation, in any agreement with a Settling State or Participating Subdivision concerning fees arising out of or related to the Settling Defendants' Settlement Agreements, including any fees paid or anticipated to be paid from any State Back-Stop Agreement; (8) identify for the Fee Panel whether s/he utilized state litigation work product or MDL work product, including, but not limited to, ARCOS data, document repositories, experts developed in the MDL, trial transcripts, and deposition transcripts, as well as whether s/he signed the MDL participation agreement; and (9) represent and affirm that, having exercised his/her independent judgment, s/he believes the Settlement Agreements to be fair and will make or has made best efforts to recommend the Settlement Agreements to his/her Subdivision clients in Settling States having exercised his/her independent judgment in the best interest of each client individually before determining whether to recommend joining the settlement.

D. In order to continue receiving awards from the Funds, an attorney must provide an annual certification that he or she continues to meet the eligibility requirements spelled out above in Section IV (C), and in Exhibit R of the Settling Defendants' Settlement Agreements.

E. Attorneys applying to the Funds knowingly and expressly agree to be bound by the decisions of the Fee Panel and waive the ability to assert the lack or enforceability of the allocation reached through the procedures outlined in Exhibit R of the Settlement Agreements.

Nothing in the Agreements shall preclude an applicant from applying for compensation from multiple fee funds and cost funds. There are currently at least the following funds: the Contingency Fee Fund established under MDL Docket No. 3828, the Common Benefit Fund established under MDL Docket No. 3828, the Costs Fund established under MDL Docket No. 3828, multiple State Back-Stop Agreements, and State Outside Counsel Manufacturers Fee Funds. It is anticipated there could be additional fee and costs funds established. Applying to one or multiple fee and cost funds does not preclude an applicant from applying to additional fee and cost funds if the specific eligibility criteria are met. In applying to the funds that are overseen by the Arbiters as described herein, in an effort to provide full transparency, applicants must disclose any intent and expectation to apply to other funds even if not overseen by the Arbiters, as set forth in Exhibit R of the Settlement Agreements.

In making their determinations, the Arbiters are hereby charged to consider the *Johnson*[5] factors, as these have been applied and interpreted by the federal courts with reference to common benefit and other court-awarded fees, as well as the following factors, which may be applied and given relative weight in the Arbiters' collective discretion:

A. the applicant's contemporaneously recorded time and labor dedicated to Qualifying Representations along with the applicant's financial commitment to such Qualifying Representations. Claimed "time" will not be automatically accepted by the Fee Panel but will be critically reviewed and given substantially more weight and consideration if such

---

[5] *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 717-19 (5th Cir.1974).

12

  time was subject to the audit process described in any Pretrial Order(s) governing the collection of common benefit time;

B. the novelty, time, and complexity of the Qualifying Representations;

C. the skill requisite to perform legal services properly and the undesirability of the case;

D. the preclusion of other employment by the applicant due to time dedicated to Qualifying Representations;

E. the "common benefit," if any alleged to have been conferred by the applicant and whether such common benefit work product by that applicant was used by others in parallel litigations against Released Entities whether within or outside of the MDL, provided that any applicant claiming that s/he substantially benefitted cases other than those in which s/he entered an appearance as counsel must substantiate such claims by proffering factual support, such as proper supporting affidavits or other documents as determined by the Fee Panel with input from applicants for Participating Litigating Subdivisions;

F. any "common detriment," as set forth in Section II.C.4 of Exhibit R to the Settlement Agreements;

G. any contingent fee agreements or other Fee Entitlements with Participating Subdivisions, enforcement of which, except for State Back-Stop Agreements, are waived in conjunction with the application, the nature and extent of any work for those Participating Subdivisions, whether such Participating Subdivisions actively litigated and, if so, the nature and procedural history of such case(s);

H. the experience, reputation, and ability of the applicant;

I. whether the applicant's clients brought claims against the Released Entities;

J. the status of discovery in the cases primarily handled by the applicant;

K. the nature of any work by the applicant on "bellwether" cases or cases that were similarly active in litigation;

L. any pressure points successfully exerted by the applicant in cases against the Settling Defendants or any risk for Settling Defendants created by the applicant in cases against them;

M. any risk for defendants created by applicants in cases against the Settling Defendants;

N. successful and unsuccessful motion practice in cases worked on by the applicant;

O. the date of filing of any cases filed by the applicant;

P. obtaining consolidation of the litigation in the applicant's jurisdiction;

Q. the number and population of entities represented by the applicant and the fees that would have been awarded under the extinguished contingent fee agreements;

R. whether the applicants' clients brought claims against the Settling Defendants;

S. whether the applicant has had a leadership role in the litigation, whether in state or federal court;

T. whether the applicant has had a leadership role in any negotiations aimed at resolving the litigation;

U. whether the applicant's cases have survived motions to dismiss;

V. the extent to which the applicant contributed to the work product used for the common benefit of opioids litigants, including, without limitation, work on ARCOS data, Prescription Data Monitoring Programs, IQVIA data, depositions, document production, analysis experts, motions, briefs and pleadings, trial preparation and trials;

W. the extent to which litigation was done prior to and contributed to completion of settlement negotiations, as distinct from litigation that was done litigating after the announcement of the Settlement Agreements, such latter litigation both being of less value and potentially resulting in a common detriment to the settlement process; and

X. any other factors that the Fee Panel finds to be appropriate to consider after input from applicants to the Attorney Fee Funds.

The Court notes that the goal of the Settlement Agreements is to provide for maximum participation by the Subdivisions, maximum abatement funding for all Subdivisions nationally, and maximum peace for Released Entities. Therefore, representing a Non-Participating State, a Non-Participating Subdivision, or a Later Litigating Subdivision does not further the goal of the Settlements, should not be considered Common Benefit, and shall be considered an adverse impact on the attempt to maximize funds available to Participating Subdivisions' abatement programs. The Fee Panel shall consider this concept of "common detriment" set forth in Exhibit R of the Settlement Agreements in all of its decision making.

To the extent an applicant has already been paid or expects to be paid a fee in connection with a settlement of opioid litigation, the details of such payment must be disclosed to the Arbiters prior to the issuance of an award. Any applicant claiming that he or she substantially benefited cases other than those in which he or she entered an appearance as counsel must substantiate those claims by proffering factual support, such as proper supporting affidavits and other documents. (*See* Rubenstein, William B., "Report and Recommendation Addressing Motion for Common Benefit Fund," at 4 & 4 n.5, *In re: Nat'l Prescription Opiate Litig.*, Case no. 1:17-md-02804, Doc #: 3319 (June 3, 2020).)

Other than as set forth above, fees allocated and awarded to applicants from the Funds outlined herein shall not be subject to any additional common benefit order, including the common benefit order herein, or other effort to tax recoveries awarded by the Fee Panel for Fees.

## V. Description of Fund Procedures

Because it is anticipated there will be multiple firms listed on contingent fee agreements with Litigating Subdivisions, the Court directs the Fee Panel to establish procedures, with input from Attorneys for Participating Litigating Subdivisions, addressing who should petition for fees from such groups and to whom the fee shall be paid and thereafter distributed to all co-counsel in accordance with applicable agreements.

The Court charges the Fee Panel to: (1) review the applications of all Attorneys seeking compensation from the Common Benefit Funds, including determining eligibility for each Attorney as set forth above in Section II.G. of Exhibit R to the Settlement Agreements; (2) reduce the Settling Defendants' payment obligations, as set forth in Section II.E.5 of Exhibit R of the Settlement Agreements, and inform the Settling Defendants and the MDL Fee Committee of all such amounts and adjust the Settling Defendants' payment obligations accordingly; and (3)

15

using criteria set forth in Section II.C. and II.H of Exhibit R of the Settlement Agreements, allocate amounts from the Common Benefit Fund to eligible Attorneys, including payment amounts for each Payment Year.

With respect to the Contingency Fee Funds, the Court hereby charges the Fee Panel to: (1) review the applications of all applicants seeking compensation from the Contingency Fee Funds, including determining eligibility for each Attorney as set forth in Section II.G of Exhibit R to the Settlement Agreements; (2) apply the Mathematical Model described in and attached to Exhibit R to the Settlement Agreements; and (3) use such allocations to reduce, on an annual basis, the payment obligations of the Settling Defendants to the Funds as set forth in Sections II.D.3 and II.D.4 of Exhibit R to the Settlement Agreements, and distributions therefrom; and to inform the Settling Defendants and the MDL Fee Committee of all such adjustments.

**VI.   Cost and Expense Fund**

As more fully set forth in Section II of Exhibit R to the Settlement Agreements, and as summarized herein, the Parties have agreed that each of the Settling Defendants will make a $7,500,000.00 payment directly into the agreed-upon MDL Expense Fund. Each of the Settling Defendants have likewise agreed to make payments totaling $22,500,000 into a Subdivision Cost and Expense Fund, as set forth in Exhibit R to the Settlement Agreements. Litigating Subdivisions are those subdivisions that have commenced their lawsuits as follows:

As of the Initial Subdivision Participation Date as defined in the CVS Settlement Agreement and are Participating Subdivisions;

As of the Threshold Subdivision Participation Date, as defined in the Walmart Settlement Agreement and are Participating Litigating Subdivisions;

16

As of the Threshold Subdivision participation Date as defined in the Walmart Settlement Agreement and are Participating Subdivisions.

The MDL Expense Fund and the Subdivision Cost and Expense Fund shall be treated as sub-funds of the "qualified settlement fund" (the "Cost Fund"), to be administered by the Court-appointed Cost Fund Administrator David R. Cohen, who shall be authorized to retain and utilize accountants and/or other professionals and vendors, as necessary and appropriate, to assist in the administration and distribution of the Cost Fund and its sub-funds, pursuant to the terms of Exhibit R (including without limitation determining any reductions under Section II.E.4 of Exhibit R). All expenses of Cost Fund administration shall be borne by the Cost Fund.

## VII. Common Benefit Assessment of Non-Participating Subdivisions

The PEC seeks, and the Attorneys General for Settling States and the Settling Defendants do not oppose, a Common Benefit Fee Order of 7.5% on the gross recovery of any Non-Participating Subdivision in a Non-Settling State[6] that is subject to this Court's jurisdiction, represented by a MDL PEC firm or a firm receiving a Common Benefit Fee, or one in which counsel signed a Participation Agreement. Such assessments would be paid by such Non-Participating Subdivision into the MDL Common Benefit Fund.[7]

---

[6] It is the Court's understanding that, with regard to any Non-Participating Subdivisions in a *Settling* State, the Settling Defendants need not withhold and pay 7.5% into the MDL Common Benefit Fund on any gross recovery because the Settling Defendants' payments into the Common Benefit Funds under the three Settlement Agreements already account for those amounts.

[7] *See e.g., In re Gadolinium-Based Contrast Agents Prods. Liab. Litig.,* case no. 08-GD-50000, docket no. 277 (N.D. Ohio Feb. 20, 2009) (setting a 6% common benefit assessment – 5.0% for fees and 1.0% for expenses); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.,* 268 F. Supp. 2d 907, 919 n.19 (N.D. Ohio 2003) (setting a 5.5% common benefit assessment – 4.8% for fees and 0.7% for expenses); *In re Avandia Marketing, Sales Practices and Prods. Liab. Litig.,* 2012 WL 6923367 at *1 (E.D. Pa. Oct. 19, 2012) (awarding common benefit fees and expenses after having set a 7% assessment); *In re Vioxx Prods. Liab. Litig.,* 760 F. Supp. 2d 640, 661 (E.D. La. 2010) (awarding 6.5% of the total settlement amount for common benefit fees); *In re Juul Labs, Inc., Mktg., Sales Prac., and Prods. Liab. Litig.,* MDL No. 2913 (N.D. Cal.) ECF No. 586 (CMO No. 5(A)) (7%-10%); *In re Xarelto (Rivaroxaban) Prods. Liab. Litig.,* MDL No. 2592, ECF No. 17634 (12% fees, 2.75% expenses); *In re Syngenta AG MIR162 Corn Litig.,* MDL No. 2591 (D. Kan.) ECF No. 936 (7.5%-14%); *In re Davol, Inc./C.R. Bard, Inc. Polypropylene*

17

For the avoidance of doubt, as applicable to settlements under the Settlements with the Settling Defendants, the payment obligations under this Court's prior orders approving common benefit assessments (ECF 4428 and ECF 3794) are superseded and this Order shall control the Common Benefit Fee payment obligations applicable to settlements with Non-Participating Subdivisions going forward.

Early in this MDL, the PEC sought, over the objection of the United States Drug Enforcement Agency ("DEA"), the production to MDL plaintiffs of data compiled in the DEA's Automated Records and Consolidated Orders System/Diversion Analysis and Detection System ("ARCOS/DADS") database. The Court ordered the DEA to produce complete transactional ARCOS data for the period of January 1, 2006 through December 31, 2014, first for six states (Ohio, West Virginia, Illinois, Alabama, Michigan, and Florida), and then for the remaining States and Territories, in a series of Orders, governing its production and use under its Protective Order (Doc # 167) See, e.g., Order Regarding ARCOS Data ( Doc # 233, 04/11/18); Second Order Regarding ARCOS Data ( Doc # 397, 05/08/18); Third Order Regarding ARCOS Data ( Doc #668, 06/26/18).

The ARCOS data produced to the PEC in essentially raw form was organized, programmed, and analyzed by the PEC and the resulting detailed data, which readily shows "the number of opioid pills delivered to each City and County in America, partitioned by manufacturer and distributor and pharmacy," has proved "essential" in enabling the parties to file and amend complaints, design discovery, bring and defend motions, develop damages and

---

*Hernia Mesh Products Liability Litig.,* 2:18-md- 02846-EAS-KAJ ("Hernia Mesh") ECF No. 70 (CMO No. 11) (10% fees, 3% expenses); *In re E. I. Dupont De Nemours & Co. C-8 Pers. Injury Litig.,* MDL No. 2433 (S.D. Ohio) 2018 WL 4810290 (S.D. Ohio 2018) (9%); *In re Aredia and Zometa Prods. Liab. Litig.,* MDL 1760 (3:06-md-1760) (M.D. Tenn.) (ECF No. 593, Aug. 30, 2007) (8%).

abatement models, inform experts, prepare for trial, and engage in meaningful settlement discussions. *See* Second Order Regarding ARCOS Data, Doc #397 at p. 2. The indispensable nature of this common fund of data, as produced to, organized in, and protected by this Court, vests it with a centrality to the nationwide opioids litigation unmatched in other MDLs. The initial and ongoing efforts of the PEC to obtain, organize, and analyze this data, and make it available in meaningful and useable form to litigants, provides a uniquely beneficial and indispensable resource to opioids litigants. The costs to develop this common resource may and should be equitably spread among all beneficiaries.

This Court, which has ongoing jurisdiction over the ARCOS data produced by the DEA, as organized, analyzed, and made available by the PEC and as made available subject to this Court's protective and case management Orders, has the authority and may exercise the discretion to condition the use of this data by all parties to the MDL and their counsel, and all litigants and their counsel (other than the States) who wish access to it for use in their non-MDL investigations and cases, upon the imposition of a back-end, contingent assessment of 7.5% of their recoveries from any judgments or settlements not part of settlements otherwise providing for contributions into a Court-supervised MDL Common Benefit Fund, with such 7.5% assessment payable from the attorneys' fee portions of such recoveries.

WHEREFORE, as set forth in detail above, the Court grants the Agreed Motion of the PEC and the Settling Defendants, and hereby:

A. Consents to take continuing jurisdiction over the Funds and the Cost Fund pursuant to Treasury Regulation Section 1.468Bl (c)(1);

B. Appoints Messrs. David R. Cohen and David R. Herndon, and Ms. Randi S. Ellis, to a Fee Panel to oversee a process for allocation and distribution of the MDL Contingency Fee Funds and the Common Benefit Funds consistent with the parties' agreed motion and the terms of the Settlement Agreements and Exhibits R and Exhibits G thereto;

C. Establishes the Funds, comprised of sub-funds the Contingency Fee Funds and the Common Benefit Funds, as described in and pursuant to the three Settlement Agreements and Exhibits R, and appoints David R. Cohen as Administrator or Trustee to oversee the Funds;

D. Establishes the Cost Fund, comprised of sub-funds the MDL Expense Fund and the Subdivision Cost and Expense Fund, as described in and pursuant to the three Settlement Agreements and Exhibits R, and appoints David R, Cohen as Cost Fund Administrator; and

E. Supersedes the payment obligations in ECF 4428 and ECF 3794 as applicable to Settling Defendants and Participating Subdivisions and approves an MDL Common Benefit assessment against the Non-Participating Subdivisions in a Non-Settling State of 7.5% of their gross recoveries from any judgments or settlements not part of settlements otherwise providing for contributions into a Court-supervised MDL Common Benefit Fund, with such 7.5% assessment payable only from the attorneys' fee portions of such gross recoveries.

This Court will enter such further Orders as may be necessary and appropriate regarding all of the matters addressed herein, and future common benefit assessments paid into the Fund.

**IT IS SO ORDERED.**

/s/ *Dan Aaron Polster*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

**Dated:** June 27, 2023