UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases* | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**PUBLIX AND KROGER'S POSITION STATEMENT
IN OPPOSITION TO PEC'S ARCOS MOTION**

Publix Super Markets, Inc. ("Publix") respectfully submits this Position Statement in response to the Court's June 15, 2023 Order soliciting position statements on the issues raised by the June 8, 2023 motion of the Plaintiffs' Executive Committee ("PEC") to enforce a subpoena to DEA for production of certain Automation of Reports and Consolidated Orders Systems ("ARCOS") data. The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II ("Kroger") also join Publix's Position Statement in its entirety. In its motion, the PEC seeks complete transactional data for all prescription buprenorphine, codeine, dihydrocodeine, fentanyl, hydrocodone, hydromorphone, levorphanol, meperidine, methadone, morphine, opium powdered, oxycodone, oxymorphone, and tapentadol transactions in all states and territories in the United States for the period of January 1, 2015 through December 31, 2019.[1]

The Court noted that it "is particularly interested in the views of non-settling MDL defendants as to their need for updated ARCOS data for litigation and/or settlement purposes." Dkt. 5072 at 1-2. The short answer for Publix, as of now a non-settling MDL defendant, is that there is no need for updated ARCOS data, and the provision of such updated ARCOS data is likely to stall the progress Publix and the Plaintiffs have made both in litigation and settlement efforts. Because the burden and effort to produce, review, and otherwise accommodate this large set of data into the exiting MDL litigation and settlement work outweighs any minimal relevance of the data, the request for this discovery should be denied. Fed. R. Civ. P. 26(b)(1).

**I.  ARCOS Data from 2015-2019 is Not Needed for Settlement Purposes.**

**A. Other Parties Subject to the Same Claims as Publix have Completed Settlements Without the 2015-2019 ARCOS Data.**

As Plaintiffs acknowledge, "some Defendants have entered into national settlement agreements resolving the MDL cases against them" without the use of ARCOS Data from 2015-

---

[1] Introducing this additional data would expand the work and prolong the proceedings and settlement efforts in this MDL as outlined herein. In addition, the subpoena also expands the scope of the drugs for which data is sought beyond those at issue in the MDL to date. This expansion is unnecessary and seeks irrelevant evidence.

2019. As recently as June 2023, CVS, Walgreens, and Walmart completed settlements with the PEC. *See* Dkt. 5083. CVS, Walgreens, and Walmart are Defendants in Track 8, along with Publix and Kroger, and all are subject to identical claims and similar allegations. The absence of ARCOS Data from 2015-2019 had no apparent effect on CVS', Walgreens', and Walmart's ability to settle claims on a national scope or the ability of plaintiffs nationwide to join those settlements. The absence of the 2015-2019 data will not affect Publix's ability to settle these same claims.

### B. The Parties and Issues Remaining in the MDL Following the Settlement Agreements to Date are Limited, Minimizing the Effect that National ARCOS Data from 2015-2019 Will Have on Settlement Negotiations.

Because of the increasing number of national settlement agreements executed by the various parties in the MDL to date, the scope of the parties and issues remaining in the MDL as a whole has shrunk. Given the ever-diminishing size of the MDL at this stage, the additional ARCOS Data from 2015-2019 would provide little to no value to the remaining parties' settlement negotiations. In fact, the introduction of such data would have the effect of expanding the scope of the issues that need to be addressed as part of the parties' ongoing settlement negotiations, which will prolong any such negotiations and cause them to be delayed by many months at a minimum as the parties analyze the additional data.

### C. Publix's Experience in Settlement Discussions to Date Indicates that Such Data Will Not Materially Impact the Parties' Positions.

Publix has been engaged in settlement negotiations with Plaintiffs for several months, and the parties' general positions have been well-established. Neither side's position at this stage in the negotiations is likely to be impacted by the introduction of ARCOS Data for this more recent time period. Indeed, the introduction of such data would serve only to delay the ongoing negotiations as the parties' process and analyze the contents.

As a result of the foregoing, Publix does not believe the ARCOS Data from 2015-2019 would provide any benefit to the ongoing settlement negotiations between Publix and the PEC or plaintiffs more generally. Indeed, Publix believes the introduction of such data would unnecessarily prolong the negotiations at a minimum.

## II. ARCOS Data from 2015-2019 is Not Needed For This Litigation and Could Unnecessarily Expand the MDL.

### A. Additional ARCOS Data from 2015-2019 is Not Relevant to Plaintiffs' Theory of Causation.

The PEC's theory of causation advanced throughout the MDL, including in Track 8, is that there have been "three waves" of the opioid epidemic: first a prescription-opioid wave, then a heroin wave, and finally a fentanyl wave. The PEC has maintained (and their expert witnesses have so testified) that the prescription-opioid wave had ebbed by 2012, when the heroin wave took

2

over.[2] Because the originally-produced ARCOS data runs through 2014, it covers the so-called prescription-opioid wave in its entirety. This production already enabled the PEC to identify defendants in the prescription opioid market who, according to Plaintiffs, may have contributed to later stages of the opioid crisis, just as the Court intended. The 2015-2019 ARCOS Data has no relevance to Plaintiffs' theories and would serve only to permit Plaintiffs to attempt to further complicate and expand what is already a complicated and expansive litigation.

### B. The PEC Does Not Need Additional ARCOS Data for Trial.

The PEC completed the Track 3 trial just a year ago, without any ARCOS data past 2014. The issues in Track 3 are largely the same as those in the remaining bellwether tracks, and there has been no indication that the introduction of additional ARCOS data would have any effect on the parties' abilities to conduct a comprehensive trial on these issues.

### C. Additional ARCOS Data from 2015-2019 Would Unnecessarily Expand the Scope of Bellwether Discovery.

Fact discovery in the pharmacy bellwethers (Tracks 8-11) is set to close on August 4, 2023. Further, preparation for expert discovery, including the analysis of expert reports and testimony from prior tracks, which were prepared with only the original ARCOS data set, is well underway. At this point in the discovery process, the parties have expended substantial time, energy, and resources developing and refining fact discovery and expert issues in preparation for a potential trial. The introduction of five additional years of ARCOS data would greatly expand the work required for the parties to become appropriately prepared for any potential trial or additional litigation. The data will take significant time to process and analyze, both for internal use and for work with experts. Although experts have not yet been disclosed in Track 8, Plaintiffs have represented that their Track 8 experts will be similar to prior expert disclosures, so much so that they have argued that Defendants—even ones like Publix, who have never participated in any expert discovery—should have significantly curbed abilities to depose experts, and the Track 8 expert schedule is based in part on that premise, which Publix disputes. The parties would be forced to revise, update, and expand the expert analysis developed to date, resulting in additional and unnecessary expense for all of the parties involved. Moreover, given that it will take DEA some time to produce the data, it is unclear when in the process of expert disclosures for Track 8 the production would be made, which could cause a raft of scheduling disputes and issues including, ultimately, significantly pushing back the time frame for remands and trial.

### D. Plaintiffs Have Indicated Their Intent to Use the Additional ARCOS Data to Improperly Amend Existing MDL Complaints.

Plaintiffs have indicated that they may seek to use the newly sought ARCOS data ranging from 2015-2019 to amend existing complaints in the MDL, including to add defendants to existing complaints. Such amendments would unnecessarily complicate and expand the MDL. The Court had previously ordered that all amendments based on the production of ARCOS data ranging from

---

[2] *See* Anna Lembke Phase I Trial Testimony (Dkt. 4000) at 648-49; Katherine Keyes Phase I Trial Testimony (Dkt. 4065) at 3644; Caleb Alexander Phase I Trial Testimony (Dkt. 4064) at 3536; Caleb Alexander Phase II Trial Testimony (Dkt. 4446) at 451-55.

2006-2014 were required to be made by March 19, 2019.  *See* Dkt. 1106.  Moreover, the JPML directed, more than a year ago in April 2022, that this MDL be closed to new matters.  *See In re Nat'l Prescription Opiate* Litig., MDL No. 2804, Doc. 9586 (J.P.M.L. April 8, 2022) ("[T]he benefits are outweighed by the effects of transferring new cases to this mature litigation."), reconsideration denied, Doc. 9607 (June 1, 2022).  Any attempt by the PEC to utilize the ARCOS Data from 2015-2019 to add additional parties or claims to this "mature" MDL that is effectively closed to new matters would improperly move the MDL further away from an efficient resolution.  Moreover, there is no legitimate argument that new ARCOS data from 2015-2019 would actually illuminate new parties or claims that could not have been brought previously.  Therefore, the introduction of such data into these proceedings would cause unnecessary disputes and thus delay.

### III. Conclusion.

Based upon the foregoing, Publix, as joined by Kroger, respectfully requests that the Court deny the PEC's motion to enforce its subpoena to the DEA dated May 11, 2023.  The discovery sought provides no benefit to ongoing settlement and litigation activities and is therefore not proportional to the needs of these matters.

Dated: June 29, 2023                                Respectfully submitted,

*/s/ Meredith Thornburgh White*
Meredith Thornburgh White (IN 28094-49)
Kara M. Kapke (IN 25906-49)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
mwhite@btlaw.com
kkapke@btlaw.com

*Attorneys for Defendant Publix Super Markets, Inc.*

*/s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)
Ashley Hardesty Odell, Esq. (WVSB 9380)
Fazal A. Shere, Esq. (WVSB 5433)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
ahardestyodell@bowlesrice.com

4

*Attorneys for The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II*