```
 1       IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
                  IN AND FOR LEON COUNTY, FLORIDA
 2
                    CASE NO.: 37-2022-CA-000541
 3


 4   OFFICE OF THE ATTORNEY GENERAL,
     DEPARTMENT OF LEGAL AFFAIRS,
 5   STATE OF FLORIDA,

 6                        Plaintiff,

 7   vs.

 8   SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT,
     d/b/a Sarasota Memorial Healthcare System, Inc.;
 9   LEE MEMORIAL HEALTH SYSTEM, d/b/a Lee Health;
     NORTH BROWARD HOSPITAL DISTRICT, d/b/a Broward
10   Health; HALIFAX HOSPITAL MEDICAL CENTER,
     d/b/a Halifax Health; WEST VOLUSIA HOSPITAL
11   AUTHORITY; SCHOOL BOARD OF MIAMI-DADE COUNTY;
     and PUTNAM COUNTY SCHOOL BOARD,
12
                          Defendants.
13   _____

14
                       VIDEOCONFERENCE HEARING
15                       BEFORE THE HONORABLE
                         JUDGE JOHN C. COOPER
16                        (VOLUME II OF II)

17

18        DATE TAKEN:     December 19, 2022

19        TIME:           3:00 p.m.

20        PLACE TAKEN:    All parties via Zoom

21        REPORTED BY:    KAREN A. CHAMBERS
                          Court Reporter
22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2    For the Plaintiff:

 3                 JOHN GUARD, ESQUIRE
                 Office of Attorney General
 4                  PL-01, The Capital
                  Tallahassee, Florida 32399
 5              john.guard@myfloridalegal.com

 6


 7    For School Board Miami-Dade County:

 8               JOSEPH W. JACQUOT, ESQUIRE
               Gunster, Yoakley & Stewart, P.A.
 9              1 Independent Drive, Ste. 2300
                  Jacksonville, Florida 32202
10                   jjacquot@gunster.com

11
      For School Board Putnam County:
12
                    WAYNE HOGAN, ESQUIRE
13               Terrell, Hogan, Yegelwel, P.A.
                 233 East Bay Street, 8th floor
14                Jacksonville, Florida 32202
                    hogan@terrellhogan.com

15

16    For Lee Memorial:

17                 TIMOTHY HARTLEY, ESQUIRE
                    Hartley Law Offices, PLC
18            12 Southeast Seventh Street, Ste. 610
                   Fort Lauderdale, Florida 33301
19                    hartley@hartleylaw.net

20

21    For North Broward Hospital:

22                 GEORGE LEVESQUE, ESQUIRE
                      Gray Robinson, P.A.
23              301 S. Bronough Street, Ste. 600
                   Tallahassee, Florida 32301
24             george.levesque@gray-robinson.com

25
```

```
 1   For Sarasota Public Hospital:

 2                MORGAN R. BENTLEY, ESQUIRE
                  DAVID A. WALLACE, ESQUIRE
 3              Bentley, Goodrich, Kison, P.A.
                783 S. Orange Ave., 3rd floor
 4                 Sarasota, Florida 34236
                      mbentley@bgk.law
 5
                  STEVEN W. TEPPLER, ESQUIRE
 6                    Sterlington, PLLC
                228 Park Avenue South #97956
 7                 New York, New York 10003
                   steppler@sterlington.net
 8

 9   For South Broward Hospital:

10                 FRANK P. RAINER, ESQUIRE
                   Memorial Healthcare System
11                 Office of General Counsel
                      3111 Stirling Road
12                 Hollywood, Florida 33312
                        frainer@mhs.net
13

14   For Halifax Hospital:

15                   BARRY RICHARD, ESQUIRE
                     FRED HARRIS, ESQUIRE
16                   Greenberg Traurig, P.A.
                     101 E. College Avenue
17                 Tallahassee, Florida 32301
                    barry.richard@gtlaw.com
18                     harrisf@gtlaw.com

19

20

21

22

23

24

25
```

```
 1      raised factual disputes, some have.  This may
 2      surprise you, but I don't have a law clerk.
 3                MR. BENTLEY:  Well, I'll just say this,
 4      no, I'm not asking --
 5                THE COURT:  I don't have partners either.
 6      So I'm asking you what are the practicalities of
 7      what everyone here is asking me to do?
 8                MR. BENTLEY:  Right.  Good question.
 9                THE COURT:  Why shouldn't we get a read
10      on this from the First District?  Which you know
11      we're going to get no matter what I do.
12                MR. BENTLEY:  That's probably true.
13      Yeah, I would agree with that.
14                However, I would answer your question in
15      the negative, actually.  It is, no, I'm not asking
16      you to tell them they cannot settle.  I'm asking
17      them to stay in their lane.  I'm saying, settle
18      your case, not my case.  You know, you have your
19      own case worth billions of dollars, because you
20      have Medicare funding just like the tobacco
21      companies and you settled those cases through the
22      legislation.  And we still have individual tobacco
23      claims.  All I -- and we have class actions --
24                THE COURT:  I have several right now.
25                MR. BENTLEY:  What's that?
```

1   because I accept their proposition that they were
2   my attorney, I accept their proposition that they
3   released my claims.
4            THE COURT: Here's what I think is the
5   ultimate answer, this is a practical answer, not a
6   legal answer. There's a bunch of lawyers here, all
7   good lawyers. Every one I know is good, including
8   all the people I see who haven't spoken here that I
9   know. So whatever I rule, you're going to go to
10  the First District, maybe the Florida Supreme
11  Court. And you-all can't be correct. One side is
12  wrong. It's possible both sides are wrong to a
13  certain degree. And do you want to take this case
14  and turn it into the law forever, you being the
15  State of Florida, the Attorney General, and the
16  various defendants. Do you want to do that or do
17  you want to go back to mediation where the mediator
18  said you've made progress and you-all agreed not to
19  terminate it. Do you want to go back and see if
20  you can figure out a way, whereby your clients can
21  share in the proceeds of this settlement in some
22  equitable way to make your claims, at least from a
23  practical standpoint, something you would wish to
24  resolve with the State.
25           Now, I can't make the State be

```
 1      will make everyone happy, even from the defense
 2      side.  So that's all I can say.  I will say to
 3      everyone, whatever I decide I'll probably do an
 4      email and let you-all know in general what I've
 5      decided and ask you to write an order.  I would
 6      hope that who ever gets to write an order can do it
 7      in a fewer amount of pages than you did on your
 8      briefing.  Now, Mr. Richard, I think, was about 12
 9      pages.  That's about what I have in mind.  I don't
10      know if he'll be the one writing the order or not.
11      But you-all can't write 60, 70-page orders and
12      expect me by myself with 800 other cases to fact
13      check an order like that.
14              MR. RAINER:  An excellent reason to rule
15      for me, Your Honor, I'll give you a 12-page order.
16              THE COURT:  Well, Mr. Rainer, you got to
17      convince everybody else that they agree with you.
18              MR. RAINER:  No, I don't think so, Your
19      Honor.  I think they can go on their merry way.
20      And the AG and I can have the discussion on how to
21      handle this case going forward.
22              THE COURT:  What I think is, no matter
23      what I do this case is going to be before the First
24      District Court of Appeal and probably the Florida
25      Supreme Court.
```