# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION**

This document relates to:

Case No. 1:21-op-45913-DAP
Case No. 1:22-op-45025-DAP

MDL No. 2804

Hon. Dan Aaron Polster

## MEMORANDUM OF SCHOOL BOARD OF MIAMI-DADE COUNTY AND PUTNAM COUNTY SCHOOL BOARD IN OPPOSITION TO [PREMATURE] MOTION TO DISMISS

### Introduction

The self-named "Settled" Defendants have moved to dismiss the claims of the School Board of Miami-Dade County and the Putnam County School Board ("School Boards"), contending they have entered into a settlement— with the Florida Attorney General— purporting to settle not just the Attorney General's claims but the School Boards' claims too. As this memorandum discusses, that assertion raises thorny unresolved questions of Florida law—about the balance of power between the Florida Attorney General and that state's subdivisions and school districts, about home rule, and about nonparty preclusion under Florida law.

Unlike earlier motions to dismiss filed by these and other defendants relying on a state statutory "bar" to subdivision or school district claims, Florida's attorney general failed to get a statutory bar enacted. So, the defendants admit as they must, that they are inviting the Court into uncharted waters.

Because there is no statutory bar here, the Court is not being asked to construe or apply the will of the Legislature but, instead, to create Florida law—to opine on how Florida courts would allocate authority between the Attorney General and units of local government and treat privity, or the lack of it, in matters of res judicata—issues on which there is no clearly binding Florida case law applicable to this case.

Exactly these questions are now pending in the Florida First District Court of Appeal. The Florida trial court order, which has triggered the Defendants' motion to dismiss, is a slim reed. That order is not precedential. It has no current force: it has been automatically stayed under the rules of appellate procedure adopted by the Supreme Court of Florida. And the trial court judge who entered it expressly acknowledged its provisional nature: "this is an

issue, purely legal issue of the State's authority which *needs to be resolved* very quickly *by an appellate court….*"

## Argument

### I.     A single trial court ruling on an issue of first impression under Florida law, and already appealed, is a slender reed for a motion to dismiss.

In moving to dismiss the School Boards' claims for opioid-caused damages and mitigation costs, the defendants rely on a state trial court ruling they admit (a) has been appealed and (b) raises a question of first impression on a difficult issue of Florida law in which federal courts have no independent interest. In short, that ruling is entitled to little if any weight. (See Exhibit A, Acknowledgment of New Case, District Court of Appeal, First District; Exhibit B, Index to Record on Appeal (first page) and July 14, 2023, email from the Clerk of the Leon County Circuit Court.)

The defendants have mistakenly told this Court that the Florida trial court order "has not been stayed." Defendants' Motion to Dismiss, p.6, n.6. But to the contrary, *it has automatically been stayed. Under Florida procedure, all such orders are stayed once appealed.* See Fla. R. App. P. 9.310(b)(2) ("The timely filing of a

3

notice shall **automatically operate as a stay** pending review, …
when the state, any public officer in an official capacity, **board**,
commission, or other public body seeks review….") (emphasis
added). See also *Charter Review Commission of Orange County v.
Scott*, 647 So. 2d 835, 836 (Fla. 1994): ("The Board filed notice of
appeal, which operated as an automatic stay of the trial court's
order pursuant to Florida Rule of Appellate Procedure 9.310(b)(2)").
*Accord*, *Charter Review Commission of Orange County v. Scott*, 627
So. 2d 520, 521 (Fla. 5th DCA 1993); *City of Jacksonville Beach v.
Public Employees Relations Commission*, 359 So. 2d 578 (Fla. 1st
DCA 1978).

Before declaring victory, the defendants ought to have paid
heed to Winston Churchill's cautious optimism, and admonition,
after the second battle of El Alamein:

> "Now this is not the end. It is not even the beginning of
> the end. But it is, perhaps, the end of the beginning**.**"[1]

---

[1] Winston Churchill, The Lord Mayor's Luncheon, Mansion House, November 10, 1942. VE Day was two years away; the Italian Campaign, D-Day and the Battle of the Bulge were yet to be come.

4

A single state trial court ruling, stayed on appeal, on a question of first impression soon to be addressed (and likely reversed) by the Florida First District Court of Appeal, is a slim reed for a motion to dismiss.

In Florida, "Trial courts do not create precedent." *State v. Bamber*, 592 So. 2d 1129, 1132 (Fla. 2d DCA 1991), *approved*, *State v. Bamber*, 630 So. 2d 1048 (Fla.1994); *Williams v. McDonough*, 2006 U.S. Dist. Lexis 71067, n. 2 (N.D. Fla. 2006). And, in *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992), the Florida Supreme Court set out the judicial hierarchy:

> This Court has stated that "the decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court." *Stanfill v. State,* 384 So. 2d 141, 143 (Fla. 1980). Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts. *Weiman v. McHaffie,* 470 So. 2d 682, 684 (Fla. 1985).

Naturally, then, Judge Cooper, the Leon County circuit judge, fully-attuned to the judicial hierarchy in Florida, rightly acknowledged that, in a case like this with no governing precedent,

his ruling is only the beginning. Of the Attorney General's attempt to release subdivision and school board claims, he said:

> I think this is an issue, purely legal issue of the State's authority which *needs to be resolved very quickly by an appellate court....* So therefore I'm granting the summary judgment. This needs to *get up to the First District right away* to get a more detailed determination.

Transcript of Hearing, April 6, 2023, pp. 14, 15 (Exhibit C), emphasis added). Judge Cooper was consistent on this. Four months before, in the previous hearing, he had said the same. Transcript of Hearing, December 19, 2022, pp. 36, 62 (Exhibit D).

## II.   There is no compelling reason for this Court to venture an opinion on a thorny and delicate question of Florida law that the Florida First District Court of Appeal is about to decide.

This Court has previously recognized the hazards and the federalism concerns raised by a motion to dismiss that asks this Court to venture opinions on the content of state law, in the delicate area of state/local relations and home rule on which state law is, or is substantially, silent. ECF #4802.

With a motion to dismiss Georgia subdivisions' claims pending, the Court certified questions to the Georgia Supreme Court about the validity of the Georgia opioid settlement-related bar statute, rather than deciding them in the first instance. ECF #4799. Here, by contrast, no bar statute has been enacted by the Florida legislature.

This, then, is an even stronger case for deferring a decision until state courts have weighed in. The Court should await the decision by the First District Court of Appeal, which has this very issue before it, on appeal from the Florida trial court's stayed and non-precedential ruling, which even that court recognized was provisional.[2]

The Court should not get ahead of the Florida courts on an issue that is actively under appellate review.

---

[2] A certification, as in the Georgia diversity jurisdiction case, is not available to this Court in these Florida-based diversity cases. Although the Florida certification rule applies when, as here, "there is no controlling precedent of the Supreme Court of Florida," certification can occur only when the certifying court is the Supreme Court of the United States or a United States Court of Appeals. Rule 9.150(a), Florida Rules of Appellate Procedure.

III. **If this Court were to reach the merits, addressing the question the Florida Attorney General's authority to release the School Boards' claims, the Court should deny the motion to dismiss.**

Florida School Boards are independent, autonomous, entities whose rights and rights of action can only be asserted, released, or extinguished by them or by another entity they have agreed to allow to proceed for them. Here, there is no evidence, and the defendants do not assert, that School Boards did, or have ever, authorized the Florida Attorney General to release their opioid claims. The defendants point to no Florida statute or constitutional provision expressly granting the Florida Attorney General that power. None does.

A. *The Attorney General tried and failed to get legislative authorization to dismiss the School Boards' claims.*

The Florida Attorney General has never questioned the School Boards' ability to bring opioid litigation. In fact, she chose not to intervene in this Court or in any way seek to challenge the School Boards' claims here. And she tried and failed to secure legislation giving her the power to release opioid claims brought by the School Boards. Florida Senate Bill 102 (2021) would have provided the

8

Attorney General authority to release claims on a matter of "great government concern," but it died in committee.

Having failed to persuade the Legislature, the Attorney General resorted to the courts, asking a Florida trial court to do what the Legislature refused to do. She succeeded at the trial court level. But with that ruling on appeal, the issue is far from resolved—as the trial court judge explicitly acknowledged.

**B.  *The Florida trial court's ruling is likely to be reversed because, without legislative authorization, the Attorney General has no power to settle or dismiss the School Boards' opioid claims.***

Under Florida law, school boards own and control their own legal claims. The Attorney General cannot settle or extinguish them.

*First*, in bringing opioid claims the School Boards are asserting their own distinct proprietary interests, for losses *they* have incurred, paid from funds *they* raised. School boards have school district taxing authority. Art. IX, Sec. (4) (b), Fla. Const.

Unlike the Attorney General, the School Boards are not bringing opioid claims on behalf of the public in general. Despite the Attorney General's having asserted that the School Boards are suing *parens patriae*, they are not. The School Boards' recovery will

address years of steadily rising costs for providing special education and related services to children exposed to opioid use. A necessary precondition to even assert the concept of releasing the School Boards' claims would be for the Attorney General to demonstrate that those claims are statewide in nature, rather than specific to each school board's own costs. The defendants have not shown that. On this basis alone, the motion to dismiss must be denied.

*Second*, Florida constitutional and decisional law is clear that school boards operate independently rather than as departments or agencies of the state or the Attorney General. Thus:

**1.**    Article IX, Section 4(b), of the Florida Constitution establishes the independence of school boards, providing: "The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school taxes within the limits prescribed herein." See also Chapter 1001, Florida Statutes.

**2.**    Re-enforcing and expanding on the Constitution, Florida's Legislature has also vested locally elected school boards with

comprehensive and exclusive statutory powers that are not shared

with the State (or the State Attorney General), by providing that:

> In accordance with the provisions of s. 4(b), Art. IX of
> the State Constitution, district School Boards shall
> operate, control, and supervise all free public schools
> in their respective districts and **may exercise any
> power except as expressly prohibited by the State
> Constitution or general law**.

§ 1001.32(2), Fla. Stat. (emphasis added). In turn, the Florida

Supreme Court has expressly held that under Florida law

 "the power of a public body *to settle litigation* is incident to and

implied from its power to sue and be sued." *Abramson v. Fla.*

*Psychological Ass'n*, 634 So. 2d 610, 612 (Fla. 1994) (quoting

*Williams v. Public Util. Protective League*, 178 So. 286 (1938)). School

Boards have been granted the power to sue under Section

1001.41(4).[3]

 **3.** Decisional law also recognizes School Boards' independent

authority, which may not constitutionally be invaded by the State.

---

[3] Defendants' citation to *Barati v. State*, 198 So. 3d. 69, 81-82 (Fla. 1st DCA 2016), a *qui tam* suit, is way off base. The Attorney General has power to dismiss a qui tam suit because a *qui tam* "relator is only the assignee of the government." *Id.* at 80. The Attorney General has **explicit** statutory authority to dismiss a relator's *qui tam* action that was itself brought on behalf of the State's interests. The Attorney General has no such authority here.

In *Duval County School Board. v. State Board of Education*, 998 So. 2d 641, 643 (Fla. 1st DCA 2008), the First District Court of Appeal struck down an attempt by the state to partially divest school boards of control (in that case, over the authority to authorize charter schools). The Court held that Art. IX, § 4, of the Constitution admitted of no such exceptions to school boards' independence and authority because the operation, control and supervision of school affairs are constitutionally specifically reserved to locally elected school boards.

**4.** *The Legislature has expressly enumerated school boards' power to "sue."* § 1001.41(4), Fla. Stat. And that power to sue logically encompasses the power to sue (and decide whether to settle) to recover costs incurred to carry out the other statutory duties implicated by the School Boards' efforts to provide services to their opioid-affected students. These costs, increased because of the opioid crisis, and the increasing number of opioid-affected students, include the increased costs the School Boards have incurred and continue to incur to:

- § 1001.42(4)(c), F.S.: "Provide adequate educational facilities for all children

12

- § 1001.42(8)(a), F.S.: "provide…for proper attention to health, safety, and other matters relating to the welfare of students"

- § 1001.42(12), F.S.: "Take steps to assure adequate educational facilities…(a) and arrange for the levying of district school taxes necessary to provide the amount needed from district sources…(d) require that an accurate account is kept of all funds…(e) borrow money…when necessary in anticipation of funds reasonably to be expected…(k) protect against loss"

- § 1001.43(2), F.S.: "adopt policies providing for fiscal management of the school district with respect to…nonstate revenue resources, budgeting, fundraising, and other activities relating to the fiscal management of district resources."

### D. The Attorney General cannot preempt School Boards' authority merely by enforcement actions.

The preemption of the School Boards' constitutional and statutory powers cannot be imposed through enforcement actions by the Attorney General. Preemption is only by law, and most fundamentally, only the legislative branch can preempt. *Masons v. City of Aventura*, 147 So. 3d 492, 495 (Fla. 2014) ("Preemption by state law, however, need not be explicit so long as it is clear that *the legislature* has clearly preempted….") (emphasis added); *see also State v. City of Weston*, 316 So. 3d 398 (1st DCA 2021). Neither the

13

Florida Constitution nor the Florida Legislature have given the Attorney General preemption powers.

The power of School Boards, like that of certain political subdivisions, is derived from both the state Constitution and statutes. *D'Agastino v. City of Miami*, 220 So. 3d 410, 420 (2017). Under that framework, political subdivisions are "subject to the legislative prerogatives in the conduct of their affairs." *Weaver v. Heidtman*, 245 So. 2d 295, 296 (Fla. 1st DCA 1971). Subdivisions are not, however, subject to the whims of the Attorney General when it comes to their ability to seek redress for their own harms.

**E. The Attorney General's designation as the "Chief State Legal Officer" (Fla Const. Art. IV §§ 10(a & b) is subject to limitations elsewhere in the Florida Constitution or imposed by the Florida Legislature.**

It is axiomatic that although the Florida Attorney General has broad powers and common law powers, those powers do not extend to instituting or resolving actions to recover damages sustained by political subdivisions *that have not affirmatively authorized suit by the Attorney General.* Where state constitutional or statutory law conflicts with an Attorney General's assertion of a power, they control. See *Shevin v. Exxon Corp.*, 526 F.2d 266, 270 (5th Cir. 1976)

14

(addressing only standing to sue) noting that the Florida Attorney General's powers might not extend to "the institution of an action … to recover damages sustained by … political subdivisions *which have not affirmatively authorized* suit"). In *Shevin*, the Court was explicit in reserving "questions [such as damages] as to the representation of the state on behalf of other governmental entities." *Id.* at 273 and n. 23.

The Attorney General's designation as the "Chief State Legal Officer" does not operate as authority to disregard the Legislature's (and Constitution's) grant of authority to School Boards. While the Attorney General may sue and settle on behalf of the State's interest, such settlement cannot eliminate the School Boards' power to sue and recover in their own interests.

The Legislature, in line with the Constitution, has provided powers to School Boards that simply cannot be disregarded through an attorney general's enforcement action.

## CONCLUSION

In other cases, settled defendants have moved to dismiss subdivision or school district claims by invoking state "bar" statutes

specifically addressing those claims. Here, by contrast, the issue is different—and more difficult: the scope of one particular state Attorney General's power (Florida's), under that state's constitution or decisional law, in cases in which the Attorney General has not intervened, to extinguish claims brought by School Boards, which are separately constituted bodies under Florida law. This issue implicates profound—and unresolved— questions about the relationship and balance of power between the Florida Attorney General and that state's subdivisions and school districts, about home rule, and about nonparty preclusion, which should be resolved by Florida's courts rather than through an "Erie guess."

In this unusual posture, with weighty issues of the balance of power between state and local government in the balance, the substantial importance of which transcends this case, we respectfully submit that the sage course would be to: (a) stay and continue this motion, pending appellate answers to these questions in a process that is already underway; or (b) transfer these School Boards' cases to federal court in Florida to allow greater familiarity with Florida law to help decide whether to defer ruling or decide the

issue on the merits. If, instead, this Court chooses to decide these state law issues on the merits, then Defendants' motion to dismiss should be denied for the reasons discussed in Section III of this memorandum.

Respectfully submitted,

Wayne Hogan
hogan@terrellhogan.com
Terrell Hogan Yegelwel, P.A.
233 East Bay Street, 8th Floor
Jacksonville, FL 32202
Telephone: (904) 722-2228

Cyrus Mehri
Joshua Karsh
cmehri@findjustice.com
jkarsh@findjustice.com
Mehri & Skalet, PLLC
2000 K Street NW, Suite 325
Washington, DC 20006
Telephone: (202) 822-5100

By: /s/ Peter G. Tsarnas
Peter G. Tsarnas, #0076934
Marc P. Gertz, #0003808
mpgertz@gertzrosen.com
ptsarnas@gertzrosen.com
Gertz & Rosen, Ltd
159 S. Main Street, Suite 400
Akron, OH 44308
Telephone: (330) 376-8336

Neil Henrichsen
nhenrichsen@hslawyers.com
Henrichsen Law Group, PLLC
301 W. Bay Street, Suite 1400
Jacksonville, FL 32202
(904) 381-8183

*Counsel for Plaintiffs School Board of Miami-Dade County and Putnam County School Board*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 17, 2023, the Memorandum of School Board of Miami-Dade County and Putnam County School Board in Opposition To [Premature] Motion To Dismiss was served on all counsel of record via the CM/ECF system.

By: /s/ Peter G. Tsarnas_____ _
Peter G. Tsarnas, #0076934

EXHIBIT A

## DISTRICT COURT OF APPEAL, FIRST DISTRICT
### 2000 Drayton Drive,
### Tallahassee, Florida 32399-0950
### Telephone No. (850) 488-6151

June 20, 2023

### Acknowledgment of New Case

School Board of Miami-Dade County and Putnam County School Board,

        Appellant(s)

v.

Office of the Attorney General, Department of Legal Affairs, State of Florida, Sarasota County Public Hospital District d/b/a Memorial Healthcare System, Inc., Lee Memorial Health System d/b/a Lee Health, North Broward Hospital District d/b/a Broward Health, Halifax Hospital Medical Center d/b/a Halifax Health, South Broward Hospital District, d/b/a Memorial Healthcare System and West Volusia Hospital Authority,

        Appellee(s).

**Case No. - 1D23-1484**

L.T. No.: 2022 CA 000541

The First District Court of Appeal has received the Notice of Appeal, filed in the lower tribunal on May 26, 2023 and in this Court on May 31, 2023. The case type is: NOA Final - Circuit Civil - Other.

All documents filed in this case must contain this Court's case number.

Per Administrative Order 23-1, Appellant must file a Docketing

## Wayne Hogan

| | |
|---|---|
| **From:** | Kristin Rycko <KMRycko@leoncountyfl.gov> |
| **Sent:** | Friday, July 14, 2023 4:23 PM |
| **To:** | JJACQUOT@GUNSTER.COM; DMOUNTFORD@GUNSTER.COM; JOHN.GUARD@MYFLORIDALEGAL.COM; GREG.SLEMP@MYFLORIDALEGAL.COM; NICHOLAS.NIEMIEC@MYFLORIDALEGAL.COM; SCOTT.PALMER@MYFLORIDALEGAL.COM; COLIN.FRASER@MYFLORIDALEGAL.COM; HENRY.WHITAKER@MYFLORIDALEGAL.COM; DANIEL.BELL@MYFLORIDALEGAL.COM; DAVID.COSTELLO@MYFLORIDALEGAL.COM; LEE.ISTRAIL@MYFLORIDALEGAL.COM; ANDREW.BUTLER@MYFLORIDALEGAL.COM; STEPPLER@STERLINGTON.NET; APENA@STERLINGTON.NET; MBENTLEY@BGK.LAW; ESERVE@BGK.LAW; DWALLACE@BGK.LAW; FRAINER@MHS.NET; KHOUSEKNECHT@MHS.NET; HARTLEY@HARTLEYLAW.NET; BARRY.RICHARD@GTLAW.COM; GEORGE.LEVESQUE@GRAY-ROBINSON.COM; JASON.UNGER@GRAY-ROBINSON.COM; STEPHEN.VARNELL@GRAY-ROBINSON.COM; Wayne Hogan |
| **Subject:** | 1D23-1484 INDEX  – 2022 CA 000541, OFFICE OF ATTORNEY GENERAL DEPARTMENT OF LEGAL AFFAIRS STATE OF FLORIDA vs. HALIFAX HOSPITAL MEDICAL CENTER |
| **Attachments:** | 1D23_1484_INDEX.PDF |

2nd Judicial Circuit, Leon County
2022 CA 000541
OFFICE OF ATTORNEY GENERAL DEPARTMENT OF LEGAL AFFAIRS STATE OF FLORIDA vs. HALIFAX HOSPITAL MEDICAL CENTER


Please do not reply to this email; this email is used by the sender strictly to perform eservice under Fla. R. Jud. Admin. 2.156.  If you have questions or concerns about its content, please contact our office at 850-606-4000.

KRISTIN M RYCKO
Leon County Clerk of the Circuit Court And Comptroller's Office
301 S. Monroe St., Suite 100
Tallahassee, FL 32301-1861
(850) 606-4000

**Case No. - 1D23-1484**
Page < 3 >

David Wallace
Henry Whitaker

MH

1D2023-1484 June 20, 2023
Kristina Samuels, Clerk
1D2023-1484 June 20, 2023



EXHIBIT B

IN THE DISTRICT COURT OF
APPEAL OF FLORIDA
FIRST DISTRICT

CASE NO: 2022 CA 000541

DCA NO: 1D23-1484

SCHOOL BOARD OF MIAMI-DADE COUNTY AND PUTNAM COUNTY SCHOOL BOARD,
APPELLANTS,

VS

OFFICE OF THE ATTORNEY GENERAL, DEPARTMENT OF LEGAL AFFAIRS, STATE OF FLORIDA, ET AL.,

APPELLEES,

# RECORD ON APPEAL

FROM THE CIRCUIT
COURT OF LEON COUNTY, FLORIDA
HONORABLE JOHN C. COOPER

JOSEPH W. JACQUOT, ESQ
DEREK K. MOUNTFORD, ESQ
1 INDEPENDENT DRIVE, SUITE 2300
JACKSONVILLE, FL 32202

JOHN GUARD, ESQ
GREGORY S. SLEMP, ESQ
NICHOLAS NIEMIEC, ESQ
R. SCOTT PALMER, ESQ
COLIN FRASER, ESQ
HENRY WHITAKER, ESQ
DANIEL BELL, ESQ
DAVID COSTELLO, ESQ
LEE ISTRAIL, ESQ
ANDREW H. BUTLER, ESQ
OFFICE OF THE ATTORNEY GENERAL
THE CAPITOL, PL-01
TALLAHASSEE, FL 32399

STEVEN W. TEPPLER, ESQ
ARTURO PENA, ESQ
228 PARK AVENUE SOUTH #97956
NEW YORK, NY 10003

MORGAN R. BENTLEY, ESQ
DAVID A. WALLACE, ESQ
783 SOUTH ORANGE AVENUE, THIRD FLOOR
SARASOTA, FL 34236

FRANK P. RAINER, ESQ
KATHLEEN HOUSEKNECHT, ESQ
3111 STIRLING ROAD
HOLLYWOOD, FL 33312

TIMOTHY M. HARTLEY, ESQ
12 SOUTHEAST SEVENTH STREET, SUITE 610
FORT LAUDERDALE, FL 33301

BARRY RICHARD, ESQ
101 EAST COLLEGE AVENUE
TALLAHASSEE, FL 32301

GEORGE T. LEVESQUE, ESQ
JASON L. UNGER, ESQ
STEPHEN K. VARNELL, ESQ
POST OFFICE BOX 11189
TALLAHASSEE, FL 32302
JOHN WAYNE HOGAN, ESQ
233 EAST BAY STREET, 8TH FLOOR
JACKSONVILLE, FL 32202

ATTORNEY(S) FOR APPELLANT(S)                    ATTORNEY(S) FOR APPELLEE(S)

**Case No. - 1D23-1484**
Page < 2 >


Statement/Notice of Appearance of Counsel ("Docketing Statement") within twenty days of the date of this acknowledgment notice. If pro se, Appellant may file a paper Docketing Statement by mail or an electronic Docketing Statement via the Florida Court's E-Filing Portal. If represented, Appellant's attorney must file the Docketing Statement via the Portal. A fillable form version of the Docketing Statement is available via a link on the "Documents" tab of the Portal or on this Court's website at https://www.1dca.flcourts.gov/Resources/General-Information. Opposing parties must file a Docketing Statement only if they seek to make amendments, corrections, or additions to Appellant's Docketing Statement.

Served:
Daniel W. Bell
Morgan R. Bentley
Andrew H. Butler
David M. Costello
Colin G. Fraser
John Guard
Timothy M. Hartley
John Wayne Hogan
Kathleen J. Houseknecht
Lee Istrail
Joseph W. Jacquot
George Levesque
Hon. Gwen Marshall
Ashley Moody
Derek K Mountford
Nicholas D. Niemiec
R. Scott Palmer
Arturo Pena
Frank P. Rainer
Barry Richard
Gregory S. Slemp
Steven W. Teppler
Jason L. Unger
Stephen Varnell

EXHIBIT C

1

```
 1    IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT,
              IN AND FOR LEON COUNTY, FLORIDA
 2

 3   OFFICE OF THE ATTORNEY GENERAL,
     DEPARTMENT OF LEGAL AFFAIRS,
 4   STATE OF FLORIDA,

 5        Plaintiff,                  Case No.:  2022-CA-000541

 6   vs.

 7   SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT
     d/b/a Sarasota Memorial Healthcare System, Inc.,
 8   LEE MEMORIAL HEALTH SYSTEM d/b/a Lee Health,
     NORTH BROWARD HOSPITAL DISTRICT d/b/a Broward Health,
 9   HALIFAX HOSPITAL MEDICAL CENTER d/b/a Halifax Health,
     WEST VOLUSIA HOSPITAL AUTHORITY,
10   SCHOOL BOARD OF MIAMI-DADE COUNTY, and
     PUTNAM COUNTY SCHOOL BOARD,
11
          Defendants.
12   _____/

13

14                    TRANSCRIPT OF PROCEEDINGS

15         Held Before the HONORABLE JOHN C. COOPER

16

17        DATE:      April 6, 2023

          TIME:      10:23 a.m. - 10:45 p.m.
18
          PLACE:   Via Zoom Video Conference
19
               This cause came on to be heard at the time and
20   place aforesaid, when and where the following
     proceedings were stenographically reported by:
21

22                    Deborah Alff, RPR

23             For the Record Reporting, Inc.
                1500 Mahan Drive, Suite 140
24              Tallahassee, Florida  32803

25
```

14

1          MR. SLEMP:  January 19 is --

2          THE COURT:  Supplemental authority, 1-19?

3          MR. SLEMP:  Yes, Your Honor.

4          THE COURT:  The 34-page, okay, notice of

5     supplemental authority.  I'm glad you didn't file a

6     memo on that.

7          MR. SLEMP:  Well, we just attached the case,

8     Your Honor.

9          THE COURT:  Okay.

10          MR. SLEMP:  For the record it's a brand-new,

11     supreme court case --

12          THE COURT:  Oh, you're right.  Let me take

13     just a second.

14          MR. SLEMP:  Sure.

15          THE COURT:  Nikki Fried vs. State, yes, I

16     recall this, Polston.  Let me go back and

17     double-check the Lee's response.  Just give me a

18     second.  (Pause.)

19          Okay.  Anything else?

20          All right.  I agree with the State's response

21     on discovery issue and whether or not there's a

22     factual dispute and with regard to continuance.  So

23     the motions for continuance are denied.

24          I think this is an issue, purely legal issue

25     of the State's authority which needs to be resolved

15

1     very quickly by an appellate court.

2         Therefore I'm granting the State's motion for

3     summary judgment for the reasons stated by the

4     State in its argument and in the motion; denying, I

5     think it's Halifax, Mr. Richard's motion for

6     summary judgment for the same reasons as I granted

7     the State's motion; and the other motions, motion

8     to dismiss or counterclaim, I think those are

9     subsumed into the ruling on the summary judgment.

10    So therefore I'm granting the summary judgment.

11    This needs to get up to the First District right

12    away to get a more detailed determination.

13        It seems to me, the circumstances of this

14    case, this multi-state, statewide settlement,

15    whether one thinks that it's good or bad, you know

16    that's not my place to say, but I don't see how you

17    could have a settlement such as this if they

18    were -- if multiple governmental entities were

19    allowed to separately litigate.  You would have no

20    settlement.  It would be a group of people

21    litigating for years on this.  I don't think that's

22    what's contemplated in the -- in this process.

23        I think the State and the AG, in this case

24    the Attorney General had authority to proceed as it

25    did, and I find that.

19

CERTIFICATE OF REPORTER

I, DEBORAH ALFF, do hereby certify that I was authorized to and did report the foregoing proceedings, and that the transcript, pages 1 through 19, contains a true and correct record of my stenographic notes and recordings thereof.

Dated this 11th day of April, 2023 at Tallahassee, Leon County, Florida.

DEBORAH ALFF

Court Reporter

EXHIBIT D

```
 1        IN THE CIRCUIT COURT OF THE SECOND JUDICIAL CIRCUIT
               IN AND FOR LEON COUNTY, FLORIDA
 2
                  CASE NO.: 37-2022-CA-000541
 3

 4   OFFICE OF THE ATTORNEY GENERAL,
     DEPARTMENT OF LEGAL AFFAIRS,
 5   STATE OF FLORIDA,

 6                      Plaintiff,

 7   vs.

 8   SARASOTA COUNTY PUBLIC HOSPITAL DISTRICT,
     d/b/a Sarasota Memorial Healthcare System, Inc.;
 9   LEE MEMORIAL HEALTH SYSTEM, d/b/a Lee Health;
     NORTH BROWARD HOSPITAL DISTRICT, d/b/a Broward
10   Health; HALIFAX HOSPITAL MEDICAL CENTER,
     d/b/a Halifax Health; WEST VOLUSIA HOSPITAL
11   AUTHORITY; SCHOOL BOARD OF MIAMI-DADE COUNTY;
     and PUTNAM COUNTY SCHOOL BOARD,
12
                      Defendants.
13   _____

14
                  VIDEOCONFERENCE HEARING
15                 BEFORE THE HONORABLE
                  JUDGE JOHN C. COOPER
16                  (VOLUME II OF II)

17

18        DATE TAKEN:     December 19, 2022

19        TIME:           3:00 p.m.

20        PLACE TAKEN:    All parties via Zoom

21        REPORTED BY:    KAREN A. CHAMBERS
                          Court Reporter
22

23

24

25
```

```
 1        raised factual disputes, some have.  This may
 2        surprise you, but I don't have a law clerk.
 3               MR. BENTLEY:  Well, I'll just say this,
 4        no, I'm not asking --
 5               THE COURT:  I don't have partners either.
 6        So I'm asking you what are the practicalities of
 7        what everyone here is asking me to do?
 8               MR. BENTLEY:  Right.  Good question.
 9               THE COURT:  Why shouldn't we get a read
10        on this from the First District?  Which you know
11        we're going to get no matter what I do.
12               MR. BENTLEY:  That's probably true.
13        Yeah, I would agree with that.
14               However, I would answer your question in
15        the negative, actually.  It is, no, I'm not asking
16        you to tell them they cannot settle.  I'm asking
17        them to stay in their lane.  I'm saying, settle
18        your case, not my case.  You know, you have your
19        own case worth billions of dollars, because you
20        have Medicare funding just like the tobacco
21        companies and you settled those cases through the
22        legislation.  And we still have individual tobacco
23        claims.  All I -- and we have class actions --
24               THE COURT:  I have several right now.
25               MR. BENTLEY:  What's that?
```

```
 1          No. 2, that they did represent me; and No. 3, that
 2          they did get a settlement for me.
 3                    THE COURT:  Here's my dilemma --
 4                    Not to just to Mr. Rainer but to
 5          everyone.
 6                    -- I'm not sure there is a case that
 7          deals with this scenario that I've been presented
 8          with.
 9                    MR. RAINER:  No.
10                    THE COURT:  If there was, this would be
11          easier.  I recall --
12                    Mr. Richard, you probably remember this
13          or maybe Mr. Hogan does --
14                    This was maybe 30 years ago, a totally
15          different issue but there was someone, I think, was
16          injured on an airplane.  They weren't in Florida
17          but they were flying to Florida.  And the issue
18          was, was there sufficient personal context to file
19          a suit in Florida.  Unfortunately, I don't remember
20          what the court ruled on that case.  I think it went
21          to the Florida Supreme Court and the issue became,
22          did Florida's public policy, was it strong enough
23          to take dominion of this case in Florida, or was it
24          not.  And the Supreme Court weighed in, I think, on
25          a public policy issue.  I don't know that there's
```

```
 1     will make everyone happy, even from the defense
 2     side.  So that's all I can say.  I will say to
 3     everyone, whatever I decide I'll probably do an
 4     email and let you-all know in general what I've
 5     decided and ask you to write an order.  I would
 6     hope that who ever gets to write an order can do it
 7     in a fewer amount of pages than you did on your
 8     briefing.  Now, Mr. Richard, I think, was about 12
 9     pages.  That's about what I have in mind.  I don't
10     know if he'll be the one writing the order or not.
11     But you-all can't write 60, 70-page orders and
12     expect me by myself with 800 other cases to fact
13     check an order like that.
14              MR. RAINER:  An excellent reason to rule
15     for me, Your Honor, I'll give you a 12-page order.
16              THE COURT:  Well, Mr. Rainer, you got to
17     convince everybody else that they agree with you.
18              MR. RAINER:  No, I don't think so, Your
19     Honor.  I think they can go on their merry way.
20     And the AG and I can have the discussion on how to
21     handle this case going forward.
22              THE COURT:  What I think is, no matter
23     what I do this case is going to be before the First
24     District Court of Appeal and probably the Florida
25     Supreme Court.
```

1                    CERTIFICATE OF REPORTER

2

3            I, KAREN A. CHAMBERS, Court Reporter,

4               in and for the County of Brevard,

5        do hereby certify that I was authorized to and did

6        stenographically report the foregoing proceedings via

7                 Zoom, and that this transcript,

8                      pages 1 through 67,

9          is a true and correct record of the proceedings

10                 to the best of my ability.

11            DATED this 28th day of December, 2022,

12            in Melbourne, Brevard County, Florida.

13

14          _____

             KAREN A. CHAMBERS, Court Reporter

15

16

17

18

19

20

21

22

23

24

25