# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**

THIS DOCUMENT RELATES TO:

*Track Seven: Montgomery County Board of County Commissioners et al v. Cardinal Health, Inc., et al Case No.: 1:18-op-46326*

**MDL No. 2804**
**Case No. 1:17-md-2804**
**Judge Dan Aaron Polster**

---

## KROGER DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE THE EXPERT TESTIMONY OF DR. JACK FINCHAM

Defendants The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II (collectively "Kroger") submits this Reply Memorandum in support of its Motion to Exclude the Expert Testimony of Dr. Jack E. Fincham (the "Motion to Exclude"). For the reasons set forth below, and in its Motion to Exclude, Kroger moves this Court to prohibit the Montgomery County Board of County Commissioners ("Plaintiff") from presenting, relying on, or otherwise submitting the opinions of Plaintiff's expert witness, Dr. Jack E. Fincham, expressed in his Expert Report.

## INTRODUCTION

On June 14, 2023, Kroger filed its Motion to Exclude, requesting this Court to preclude Plaintiff from presenting, relying on, or otherwise submitting the opinions of Dr. Fincham contained in his expert report, dated February 17, 2023. In its Response in Opposition to Kroger's Motion to Exclude ("Response"), Plaintiff first argues that, "[a]lthough Kroger does not directly challenge Dr. [Fincham's] qualifications", Dr. Fincham is qualified to opine on the validity of and to draw conclusions from the results of the Surveys about Kroger pharmacists dispensing prescription opioid medications. *Id.* at 9 (corrected for misspelling). Second, Plaintiff asserts that Dr. Fincham's opinions that the State of Ohio Board of Pharmacy's ("BoP's") 2020 and 2021 Pharmacist Workload Surveys (collectively, the "Pharmacist Workload Surveys" or "Surveys") collected sufficient and reliable information to identify concerns about Kroger's opioid dispensing practices. Dkt. 5099 at 10. Finally, Plaintiff argues Dr. Fincham's opinions about the methodology of the Surveys are reliable and admissible. *Id.* at 13.

As an initial matter, Kroger did not challenge the qualifications of Dr. Fincham in its Motion to Exclude. However, because Plaintiff chose to address Dr. Fincham's qualifications in its Reply, Kroger notes that, regardless of an expert's qualifications, the Supreme Court held that a district court is not required to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Courts have found that a lack of expertise in survey design would not per se disqualify the expert from using the survey data in their analysis. *See*, *e.g.*, *Hurt v. Com. Energy, Inc.*, No. 1:12-CV-00758, 2015 WL 410703, at *4 (N.D. Ohio Jan. 29, 2015). However, the expert must show that their opinion was "based on sufficient facts or data" and was "the product of reliable principles and methods" that were reliably applied. *Id*. (quoting Fed. R. Evid. 702(b) and (d)).

For the foregoing reasons, Dr. Fincham's opinions concerning the Pharmacist Workload Surveys and their application to prescription opioids and diversion are unreliable and run afoul of the requirements for expert testimony in Fed. R. Evid. 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and its progeny. Additionally, in its Response, Plaintiff repeatedly misstates Kroger's arguments for excluding Dr. Fincham's testimony and provides no substantive defense to Kroger's legitimate criticisms of Dr. Fincham's methodology. Accordingly, the Court should grant Kroger's Motion to Exclude.

## ARGUMENT

I.   **Dr. Fincham's Opinions that the Surveys Were Designed to Provide Insight on Opioid Abuse and Diversion Are Unreliable**

A.   Dr. Fincham and Plaintiff Offer Conflicting Opinions Concerning the Purpose of the Pharmacist Workload Surveys

Plaintiff mischaracterizes the purpose of the Surveys and what the Surveys' purported to measure to rebut Kroger's argument that Dr. Fincham offers conflicting and contradictory opinions concerning the Surveys' purpose. Dr. Fincham and Dr. Selzer agree that the Pharmacist Workload Surveys were not designed to measure the responding pharmacists' concerns about safely dispensing opioid medication. *See*, *e.g.*, Selzer Rpt. at 2 ("the [2021 Pharmacist Workload Survey] is not a survey about pharmacists' and pharmacies' roles in opioid abuse and diversion."); *see also* Fincham Dep. at 162:19-23 (Q. [Ms. Wohl] "Dr. Selzer says that some pharmacists may have concerns about opioids, but the survey did not purport to measure that. Do you agree or disagree with that?" A. [Dr. Fincham] "I agree with that.").

Plaintiff argues that Dr. Fincham believes that the Surveys measured "pharmacists' concerns about safe dispensing of all medications", including prescription opioids. Dkt. 5099 at 10. This conflicts with Dr. Fincham's testimony that the Surveys did not purport to specifically measure concerns about opioid dispensing. *See* Fincham Dep. at 162:19-23. Plaintiff further

mischaracterizes Kroger's argument, stating Kroger "manufactured" a conflict based on its "unsupported proposition that pharmacists' concerns about safe dispensing of medications generally would somehow *not* apply to the dispensing of highly dangerous drugs such as opioids." Dkt. 5099 at 10-11 (emphasis in original). However, Kroger never argued that the purpose of the Surveys was to capture pharmacists' concerns about safely dispensing medication. Kroger and Dr. Fincham agree that the purpose of the Surveys was to "capture vital feedback on pharmacists' working conditions in the [S]tate." Dkt. 5070 (quoting Fincham Dep. 72:7-9). The Surveys may have sought to broadly capture data concerning pharmacists' working conditions, but the Surveys did not purport to measure pharmacists' specific concerns related to dispensing medications, which render's Dr. Fincham's conflicting opinions about the purpose of the Surveys unreliable.

  B. <u>Dr. Fincham Fails to Show the Pharmacist Workload Surveys Are a Valid Measure of Pharmacists Concerns Related to Prescription Opioid Dispensing</u>

In its Response, Plaintiff also claims that "Kroger insists that the surveys provide no information [relevant] to Plaintiff's claims simply because they were not specifically designed for that purpose." Dkt. 5099 at 11 (corrected for misspelling). However, again, Plaintiff misstates Kroger's argument. Kroger argues that the Surveys are not "a valid test of pharmacists' opinions or attitudes on how their work is related to opioid abuse and diversion" because the Surveys were not intended to address or measure pharmacists' concerns about opioid dispensing. Dkt. 5070 at 7 (quoting Selzer Rpt. at 3).

Plaintiff is also incorrect in asserting that, "Kroger does not explain why the information gathered in these particular surveys about safe dispensing practices would not be relevant to the dispensing of opioids." Dkt. 5099 at 11. First, the Surveys were conducted to "capture vital feedback concerning pharmacists' working conditions in the [S]tate" and not to capture data regarding "safe dispensing practices." *See* Dkt. 5070-1 at 1. Second, Kroger argued that the

4

Pharmacist Workload Surveys lacked relevance to the main issue in controversy in this litigation, which is whether Kroger has "created and maintained a public nuisance by…dispensing and selling opioids in ways that unreasonably interfere with the public health, welfare, and safety in Plaintiff's community", because the Surveys did not purport to provide any data regarding opioids or diversion of controlled substances. *Id*. at 7-8 (quoting Dkt. 3738 at 247, ¶ 773).

Finally, Plaintiff criticizes Kroger's reliance on 1 Mod. Sci. Evidence § 7:6 (2022-2023 ed.) for its proposition that "surveys not conducted specifically in preparation for, or in response to, litigation may sometimes provide important information, but they frequently ask irrelevant questions, unrelated to the issue in controversy", because this authority implies "such surveys *may* provide important information." *See* Dkt. 5099 at 11 (emphasis in original) (citing Dkt. 5070 at 7). However, this Reference Guide on Survey Research references *Loctite Corp. v. National Starch & Chem. Corp.*, 516 F.Supp. 190 (S.D.N.Y.1981) as an illustrative example of a case where a court found that a survey conducted before litigation lacked probative value related to the issue in controversy in the litigation. *See Id*. at n.32. In *Loctite Corp.*, the Court found that marketing surveys conducted by the Plaintiff, designed to test for brand awareness, lacked probative value on the single issue in controversy, which was "whether consumers understood the term 'Super Glue' to designate glue from a single source." *Id*. at 206. Similarly, in this litigation, the Pharmacist Workload Surveys lack probative value and ask completely irrelevant questions to the main issue in controversy, which relates to the dispensing and diversion of prescription opioids.

C. <u>Dr. Fincham Did Not Properly Utilize Standard, Well-Accepted Methodologies to Analyze the Data in the Surveys</u>

In its Motion to Exclude, Kroger argues that Dr. Fincham's methodology in analyzing the Pharmacist Workload Surveys is unreliable because he failed to analyze the Surveys' data in accordance with accepted statistical principles, and he fails to provide any statistical basis that the

data "identif[ies] serious concerns about the safe and effective dispensing of opioids…". Dkt. 5070 at 8 (quoting Fincham Rpt. at 5). Plaintiff is incorrect in asserting that Kroger "confuses the issues" by relying on *Navarro v. Procter & Gamble Co.*, 1:17-CV- 406, 2021 WL 868586 (S.D. Ohio Mar. 8, 2021) in support of Kroger's argument that Dr. Fincham failed to analyze the Survey data in accordance with accepted statistical principles. Dkt. 5099 at 12.

Plaintiff suggests that *Navarro* only addresses "how an expert *conducting* a study should go about interpreting the results." *Id.* (emphasis in original). However, the Court in *Navarro* provides no such limitation. The Plaintiff in *Navarro* filed a motion to exclude Defendant's expert, who conducted six online consumer surveys to address Plaintiff's claim for profit-based damages in a copyright infringement case. 2021 WL 868586 at *12. The Court in *Navarro* noted that "*Daubert's* reliability threshold requires an expert to analyze survey data in accordance with accepted statistical principles", but the Court did not make a distinction between surveys conducted by an experts and experts interpreting the survey results conducted by another person or entity. Accordingly, this Court should find that, for an expert interpreting the survey results for any survey, the expert must do so in accordance with accepted statistical principles. In its Response, Plaintiff does not refute Kroger's assertion that Dr. Fincham failed to conduct a statistical analysis of the data from the Surveys. Thus, Dr. Fincham's failure to perform such an analysis renders his opinions analyzing the Surveys' data unreliable.

Plaintiff also cites *Navarro* for the contention that "objections as to an expert's interpretation of the [survey] data, go to the 'weight', of his testimony 'not its admissibility.'" Dkt. 5070 at 8 (quoting *Id.* at *14). However, courts also recognize there are limits to permissible expert testimony in interpreting survey data. *See*, *e.g*., *Safe Auto Ins. Co. v. State Auto. Mut. Ins. Co.*, No. 2:07-CV-1121, 2009 WL 3150328, at *2 (S.D. Ohio Sept. 30, 2009) (arguing "[t]he court need not

and should not respond reflexively to every criticism [of a survey] by saying it merely 'goes to the weight' of the survey rather than to its admissibility."). In the context of surveys prepared by an expert for litigation, "[i]f the flaws in the proposed survey are too great, the court may find that the probative value of the survey is substantially outweighed by the prejudice, waste of time, and confusion it will cause at trial." *Id.* (*quoting Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 452 F.Supp.2d 772, 778 (W.D. Mich. 2006)). This Court should find that a similar rule should apply in the context of an expert analyzing the survey results, whereby if the flaws in the proposed interpretation of the survey are too great, the court should find that the probative value of the survey interpretation or analysis is substantially outweighed by prejudicial factors.

Applying the methodology from *Safe Auto Ins. Co.* to the instant case, the probative value of Dr. Fincham's interpretation of the Surveys is substantially outweighed by the prejudice against Kroger and confusion it will cause at trial. Specifically, the Surveys and Dr. Fincham's analysis of the Surveys have little to no probative value to this litigation because the Surveys we not designed to address prescription opioids or diversion and Dr. Fincham's contradictory explanations about the purpose of the Surveys will cause confusion at trial.

## II.   Dr. Fincham's Opinions Concerning the Survey Methodology Are Unreliable and Inconsistent with Generally Accepted Principles of Survey Research

In its Motion to Exclude, Kroger asserts that Dr. Fincham provided contradictory responses in his report and during his deposition concerning whether the results of the Pharmacist Workload Surveys were generalizable to the entire population of Ohio pharmacists. Dkt. 5070 at 10. In his report, Dr. Fincham argues the results of the Surveys are generalizable to all pharmacists working in chain grocery stores, stating, "[d]ata from the [S]urveys indicates that pharmacists working in large chain grocery stores believe their employers' policies and procedures, workload tasks, metrics and staffing levels in their workplace impact patient safety…". Fincham Rpt. at 30.

However, in his deposition, Dr. Fincham agreed the results of the 2021 Pharmacist Workload Survey were not generalizable to the entire population of Ohio pharmacists. *See* Fincham Dep. at 149:22-150:7. Additionally, Dr. Fincham offers no explanation or for why the results from the Surveys are not generalizable to reflect the views of all pharmacists working in Ohio, but they are somehow representative of the views of all pharmacists in Ohio working in a chain grocery store setting, like Kroger.

In its Response, Plaintiff mischaracterizes Kroger's argument, claiming, "Kroger is challenging Dr. Fincham's *conclusion* that the BoP methodology was sound." Dkt. 5099 at 13 (emphasis in original). However, Kroger argues that Dr. Fincham's methodology in analyzing the generalizability of the Surveys' results, beyond the pharmacists who responded to the Surveys, is flawed, contradictory, and ultimately, unreliable. Plaintiff further misstates Kroger's position, arguing, "the issue is not whether the [S]urvey results can be 'generalized,' by which Kroger appears to mean whether all pharmacists would give the same responses, but rather whether the surveys are sufficiently [representative] and reliable for him to draw [conclusions] about the overall dispensing environment in supermarket pharmacies." Dkt. 5099 at 14 (corrected for misspellings). However, Kroger's use of the term "generalized" or "generalizability" in its Motion to Exclude, refers to the definition of the term, as cited by Dr. Selzer in her report and other survey researchers, which is to "*generalize* the findings beyond just those who participated in the survey." Selzer Rpt. at 15 (emphasis added).

Therefore, Kroger and Plaintiff agree that the issue is whether the Surveys' respondents are sufficiently representative of the population of pharmacists working in Ohio to generalize the Surveys' results beyond the population of the pharmacists who completed to the Surveys. Dr. Fincham and Dr. Selzer agree that the results of the Surveys are not generalizable to reflect the

views of all pharmacists working in Ohio. However, Dr. Fincham offers no explanation or methodology for his conflicting opinion that the results are not generalizable as to one population of pharmacists but are generalizable as to another. Accordingly, Dr. Fincham's opinions arguing that the data from the Surveys accurately represents the concerns of pharmacists working in large chain grocery stores, outside the scope of pharmacists who completed the Surveys, is unreliable and should be excluded.

**<u>CONCLUSION</u>**

For the foregoing reasons, Kroger respectfully requests that the Court grant its Motion to Exclude the Expert Testimony of Dr. Jack E. Fincham.

Respectfully submitted,

**The Kroger Co., Kroger Limited Partnership I, Kroger Limited Partnership II,**

**By Counsel,**

*/s Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)
Ashley Hardesty Odell, Esq. (WVSB 9380)
Fazal A. Shere, Esq. (WVSB 5433)
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100
rharvey@bowlesrice.com
ahardestyodell@bowlesrice.com
fshere@bowlesrice.com

15907460.1

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on July 19, 2023, the foregoing document was filed with the Clerk of Court using the CM/ECF system which will send notice to all counsel of record. Copies of this document may be obtained through the CM/ECF system.

*/s/ Ronda L. Harvey*
Ronda L. Harvey, Esq. (WVSB 6326)