**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) ) ) | **CASE NO. 1:17-MD-2804** |
| **THIS DOCUMENT RELATES TO:** *Tracks Seven, Eight, Nine, & Ten* | ) ) ) ) ) | **SPECIAL MASTER COHEN** **RULING REGARDING TUCKER DEPOSITION** |

As of early July of 2023, in connection with pending bellwether cases where plaintiffs named Kroger as a defendant, plaintiffs had deposed about 34 Kroger fact witnesses and eight 30(b)(6) witnesses. Toward the end of discovery, plaintiffs asked for six additional fact witnesses and two additional 30(b)(6) witnesses. After some haggling, Kroger agreed to depositions of both 30(b)(6) witnesses and four of the six fact witnesses, while plaintiff agreed to drop one of the fact witnesses. This left one fact witness in dispute: Kroger's Senior In-House Counsel Frances Tucker.

Kroger submitted to the undersigned a letter dated July 5, 2023, seeking a protective order precluding Tucker's deposition ("Motion"). Plaintiffs submitted a letter-response dated July 13, 2023 ("Response"), and Kroger submitted a letter-reply dated July 20, 2023 ("Reply"). On August 8, 2023, the Special Master denied Kroger's motion via email, and Kroger timely asked that this ruling be formalized. This is the formalized ruling.

That Ms. Tucker is Senior In-House Counsel for Kroger raises obvious concerns, because questioning by plaintiff may address matters protected by attorney-client privilege and/or the work

product doctrine. In its Motion, Kroger makes these concerns clear: "Attorney Tucker has been involved in identifying and gathering documents for discovery, compiling and providing background information for discovery, and litigation strategy. Her deposition would risk the improper disclosure of litigation strategy and would undermine the attorney-client relationship." Motion at 6 (footnotes omitted).

Plaintiffs respond "they are not seeking and will not seek any information on litigation strategy," and note they specifically agreed Kroger "does not have to produce any documents after March 9, 2017 – the date [on] which . . . Ms. Tucker began emailing about Kroger's opioid litigation" – thus "eliminat[ing] the possibility that privileged material related to litigation strategy would be produced." Response at 4-5. Rather, plaintiffs seek Ms. Tucker's deposition because she is the longest-tenured member of Kroger's Pharmacy Compliance Committee ("PCC"), which created and oversaw Kroger's policies on distribution of controlled substances (including SOMS) and dispensing of controlled substances (including red flags). Furthermore, Tucker is the only member of the PCC whose emails were not automatically deleted after 30 days, pursuant to Kroger's document retention policy.

In reply, Kroger contends Tucker's testimony, "even if theoretically limited to pre-litigation, non-privileged topics[, would] still reflect[] the opinion work product [she] developed in the course of the pending litigation." Reply at 1.

The Sixth Circuit has adopted a three-part "*Shelton* test" to determine whether deposition of opposing counsel should be allowed. The *Shelton* test holds that "[d]iscovery from an opposing counsel is 'limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information . . . ; (2) the information sought is relevant and nonprivileged;

and (3) the information is crucial to the preparation of the case.'" *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).[1]

As set forth below, the Special Master concludes that: (a) Plaintiffs meet all three prongs of this test, so the deposition should be allowed; but (b) two guardrails shall be put in place, to ensure Kroger's legitimate privilege concerns are protected.

The Special Master first examines the third prong – whether the information sought from Tucker is crucial to the preparation of the case. Plaintiffs earlier filed a motion to compel production of documents from Tucker's custodial file. The Special Master granted this motion after concluding "Tucker was intimately involved in controlled substances policies that relate directly to the central issues in this case." Response Exh. A at 1. These policies included, for example, design and auditing of Kroger's SOMS program, devising rules for refusals to fill, identification of specific pharmacies that were outliers for dispensing of controlled substances, and establishing other protocols to ensure compliance with the Controlled Substances Act. Tucker has been a member of Kroger's PCC since it was formed; she has extensive, intimate knowledge of the formation and evolution of Kroger's policies that are at the very core of this litigation. The bellwether cases cannot fairly be tried without discovery of that information.

The Special Master next examines the first prong – whether there are other means to obtain the information sought. Tucker was one of the rare exceptions to Kroger's "relatively draconian

---

[1] The *Shelton* test "does not automatically apply when opposing counsel is subpoenaed. This test applies only: (1) when trial or litigation counsel are being deposed and (2) when such questioning would expose litigation strategy in the pending case.'" *J&R Passmore, LLC v. Rice Drilling D, LLC,* 2023 WL 2633671, at *5 (S.D. Ohio Mar. 24, 2023) (cleaned up, citations omitted).

30-day document deletion policy." *Id.* Thus, Kroger has produced numerous, highly-relevant documents from Tucker's file that were not found elsewhere, including from the files of other PCC members who had received them. *See id.* at 2 (ordering document production because "the PEC's request will produce relevant documents not otherwise discovered or discoverable"). Kroger argues that plaintiffs have questioned other deponents about these documents; therefore, information about the documents and their broader subject matter can be obtained elsewhere. But plaintiffs provide examples strongly suggesting Tucker would have additional and more thorough knowledge and information. For example, one document reports a communication at a conference between Tucker and a Director of Pharmacy (Mr. Hardman) regarding a form used to identify outlier pharmacies. Hardman's testimony made clear that Tucker may have different or additional knowledge about this form, and also about numerous other matters discussed at the conference, that Hardman does not. *See* Motion Exh. P. Given Tucker's longstanding, central role on Kroger's PCC, it is inevitable that she has unique familiarity with information fundamental to the bellwether cases.

Finally, plaintiffs also satisfy the second prong. It is clear the information sought is relevant. Further, at least some of it is not privileged. For example, questioning Tucker about the many *non-privileged* documents produced from her file does not necessarily or obviously raise any privilege issues. Further, simple facts and circumstances surrounding the creation and implementation of Kroger's policies are separate from Tucker's mental impressions. Accordingly, Kroger's motion is denied and Tucker's deposition is allowed.

That said, it is not difficult to imagine Kroger might interpose objections based on attorney-client privilege or work-product, even if plaintiffs try to avoid them. The existence of the *Shelton* and *Passmore* cases shows that, when opposing counsel is deposed, the issues can be tricky and the

4

Court must be careful to preserve privilege.  And it is easy to imagine a deposition of opposing counsel can quickly bog down.  The Special Master concludes the best way to address this potential problem is to put into place two guardrails.  First, the undersigned will attend the deposition and rule upon objections as and when raised.  Second, the deposition will be limited to four hours.  These conditions should have the effect of forcing plaintiffs to ask questions that will elicit allowed responses and not time-wasting colloquy on potentially privileged matters.

Any party wishing to file an objection to this ruling must do so on or before Monday, August 21, 2023.

**RESPECTFULLY SUBMITTED,**

/s/ *David R. Cohen*
**David R. Cohen**
**Special Master**

**Dated:** August 14, 2023