*MOTION FOR LEAVE TO FILE SETTLED DEFENDANTS'*
*MOTION TO DISMISS CLAIMS FILED BY NON-PARTICIPATING*
*KENTUCKY SUBDIVISION AS RELEASED BY STATUTE*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>Case No. 1:20-op-45060 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**SETTLED DEFENDANTS' MOTION TO DISMISS
CLAIMS FILED BY NON-PARTICIPATING KENTUCKY SUBDIVISION
AS RELEASED BY STATUTE**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 1

III.    ARGUMENT ............................................................................................................... 4

        A.      Plaintiff is a "Public Agency" Within The Meaning Of The Statute ...................... 4

        B.      Plaintiffs' Claims Against Settled Defendants Are Expressly Released By
                The Statute ............................................................................................................ 5

IV.     CONCLUSION ............................................................................................................ 6

i

## I.      INTRODUCTION

Settled Defendants[1] move this Court to dismiss all claims against Settled Defendants filed by Plaintiff Taylor County Hospital District Health Facilities Corporation ("Plaintiff") on the ground that such claims are released by Kentucky statute. In furtherance of statewide opioid settlement agreements entered into by the Kentucky Attorney General, the Kentucky legislature enacted Kentucky Revised Statute § 15.293 (the "Statute"), which releases certain claims against Settled Defendants and their affiliates and subsidiaries. As discussed further below, Plaintiff and the claims it filed against Settled Defendants fall within the scope of the statute.

Because Plaintiff's claims are extinguished by operation of law, Settled Defendants request that the Court enter an order and final judgment, pursuant to Fed. R. Civ. P. 54(b), dismissing the claims against the Settled Defendants.

## II.     BACKGROUND

To facilitate settlements between the Kentucky Attorney General and defendants in the opioid litigation, the Kentucky legislature enacted Kentucky Revised Statute § 15.293, effective March 24, 2021.  The statute created an "opioid abatement trust fund" to govern administration and distribution of certain funds collected by the Commonwealth (and its political subdivisions and government agencies) as part of potential opioid litigation–related settlements, among other

---

[1] The Settled Defendants are Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen, Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively, "Janssen"), AmerisourceBergen Corporation, McKesson Corporation, Cardinal Health, Inc., and H. D. Smith, LLC (collectively, "Distributors"), as well as any other Released Entities, as that term is defined in the Settlement Agreements, that have been named as defendants in Plaintiff's Amended Complaint.  *See Bowling Green-Warren Cnty. Community Hosp. Corp. et al v. Purdue Pharma L.P., et al*. Case No. 1:20-op-45060 (N.D. Ohio Sept. 5, 2019) (Dkt. No. 1-1) ("Am. Compl."); Janssen Final Consent Judgment and Order of Dismissal (relevant excerpts attached as **Exhibit 1**) at Ex. A p. 8-9 & Ex. J thereto; Distributor Final Consent Judgment and Order of Dismissal (relevant excerpts attached as **Exhibit 2**) at Ex. A p. 8 & Ex. J thereto.  H. D. Smith, LLC is a Released Entity of AmerisourceBergen Corporation.  *See* Exhibit 2 at Ex. A and Ex. J thereto.

purposes.  *Id.* § 15.293(2) – (4).   The Statute specifically contemplated potential settlements between the Commonwealth and Settled Defendants, referring to:

> any settlement . . . against ***McKesson Corporation, Cardinal Health 5, LLC,***[2] ***Amerisourcebergen Drug Corporation, Johnson & Johnson***, and any named defendant in In re National Prescription Opiate Litigation, MDL No. 2804, Case No. 1:17-md-02804, in the United States District Court for the Northern District of Ohio, ***and any of their affiliates or subsidiaries*** related to opioid manufacturing or distribution to the extent included in a settlement agreement[.]

*Id.* § 15.293(3)(a), 4(a) (emphasis added).  In the event that any such settlements were reached, including with Settled Defendants, the statute provided a release of opioid-related claims:

> To the extent that a settlement has been reached in any litigation against the companies listed in paragraph (a) of this subsection, ***each county, consolidated local government, urban-county government, city, political subdivision, and public agency, as that term is defined in KRS 61.805(2), of the Commonwealth shall be deemed to have released its claims against the companies listed in paragraph (a) of this subsection and their affiliates and subsidiaries*** to the extent referenced in a settlement agreement, consent judgment, order, or other document that reflects the terms of any settlement.

*Id.* § 15.293(4)(d) (emphasis added).

On February 25, 2022, the Kentucky Attorney General announced Kentucky's participation in nationwide opioid settlements with Settled Defendants, which resolved the vast majority of the myriad lawsuits brought by states, territories, and local governmental entities against Settled Defendants.[3]

Plaintiff Taylor County Hospital District Health Facilities Corporation is a Kentucky nonprofit corporation with its principal business office located in Campbellsville, Kentucky. Am. Compl. ⁋ 88.  Plaintiff was formed as a nonprofit corporation by the Taylor County Hospital

---

[2] Cardinal Health 5, LLC is a subsidiary of Cardinal Health, Inc.  Accordingly, Cardinal Health, Inc. is an "affiliate[]" of Cardinal Health 5, LLC within the meaning of the Statute.  K.R.S. § 15.293(3)(a).

[3] *See* Summary of Proposed Opioid Settlements, The Office of Attorney General Daniel Cameron, https://www.ag.ky.gov/Priorities/Tackling-the-Drug-Epidemic/Pages/Opioid-Settlement.aspx (last visited August 1, 2023).

District pursuant to Articles of Incorporation maintained by the Kentucky Secretary of State. *See* **Exhibit 3**.[4]  As set forth in the Articles of Incorporation, the purpose of the corporation (i.e., Plaintiff) "is solely to cooperate with the Taylor County Hospital District, a political subdivision of the Commonwealth of Kentucky organized under the provisions of KRS 216.310 to 216.360 . . . and to act as an agency and instrumentality thereof." Exhibit 3 art. II.[5]  Each of the five individuals that incorporated Plaintiff were "the present members of the Board of Trustees of the Taylor County Hospital District." *Id.* art. VI.  These five individuals were to serve as Plaintiff's board of directors, to be "succeeded automatically" by their "duly appointed successor[s] . . . in public office." *Id.*  Accordingly, pursuant to the Articles of Incorporation, Taylor County Hospital District would always maintain exclusive control over Plaintiff.[6]

Plaintiff filed its Amended Complaint in the Circuit Court of Warren County, Kentucky on September 5, 2019, asserting opioid-related claims against the Settled Defendants. *See generally id.* (asserting claims for, *inter alia*, violation of Kentucky's Consumer Protection Act, nuisance, and negligence based on allegations related to prescription opioid manufacturing and

---

[4]  The Articles of Incorporation are available on the Kentucky Secretary of State's website: https://web.sos.ky.gov/BusSearchNProfile/genpdf.aspx?ctr=5309813.

[5]  The Court may take judicial notice of public records, including articles of incorporation, when considering a motion to dismiss. *See Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) ("In addition to the allegations in the complaint, [we] may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice.") (citation omitted); *Gomba Music, Inc. v. Clarence Avant & Interior Music Corp.*, 62 F. Supp. 3d 632, 636 (E.D. Mich. 2014) (taking judicial notice of articles of incorporation in resolving a motion to dismiss).

[6]  *See id.* (providing that the individuals serving in public office as Board of Trustees of Taylor County Hospital District would serve as Plaintiffs' directors in an ongoing and continuous fashion and that Plaintiff, as a corporation, would have no members).

distribution).[7]  The case was removed to the Western District of Kentucky on October 17, 2019, and subsequently transferred to the national MDL on February 10, 2020.

After finalizing its settlements with Settled Defendants, the Kentucky Attorney General's Office issued a notice to local political subdivisions detailing the steps necessary to participate in the settlements and to receive funds.[8]  Both hospital districts and other entities controlled by hospital districts—like the Plaintiff here—fall within the meaning of "public agency" under the relevant statute. *See* K.R.S. § 61.805(2); *see also* Ky. OAG 78-128, 1978 Ky. AG LEXIS 589 (Ky. Off. Att'y Gen. Feb. 28, 1978).  Nevertheless, Plaintiff did not participate in the settlements and has not dismissed its complaint.

## III.    ARGUMENT

Kentucky Revised Statute § 15.293(4)(d) provides that "[t]o the extent that a settlement has been reached in any litigation against [Settled Defendants], each county, consolidated local government, urban-county government, city, political subdivision, and public agency, as that term is defined in KRS 61.805(2), of the Commonwealth shall be deemed to have released its claims." As outlined below, dismissal of Plaintiff's claims is required because Plaintiff is a "public agency" as defined by K.R.S. § 61.805(2) and the Settled Defendants are covered by the Statute.

### A.      Plaintiff is a "Public Agency" Within The Meaning Of The Statute

Because Plaintiff is a public agency, its claims are released by the Statute.  The Statute incorporates the definition of "public agency" from the Kentucky "Open Meetings" law.   K.R.S. § 15.293(4)(d).   The Open Meetings law defines a public agency as one that is "created by or

---

[7] The Amended Complaint includes other Plaintiffs whose claims are not the subject of this Motion.

[8] Notice to Local Political Subdivisions, The Office of Attorney General Daniel Cameron, https://www.ag.ky.gov/Documents/v2_NPD_KY_Notice_092121.pdf (last visited August 1, 2023).

pursuant to state or local statute, executive order, ordinance, resolution, or other legislative act" K.R.S. § 61.805(2)(d). The Open Meetings law further defines a public agency as "[a]ny entity when the majority of its governing body is appointed by a 'public agency.'" *Id.* § 61.805(2)(f). Both Plaintiff and Taylor County Health District are public agencies pursuant to statute.

In an Attorney General Opinion interpreting the Open Meetings law, the Kentucky Attorney General previously concluded that a hospital district created under K.R.S. §§ 216.310 to 216.360 is a public agency. *See* Ky. OAG 78-128, 1978 Ky. AG LEXIS 589 (Ky. Off. Att'y Gen. Feb. 28, 1978) ("A hospital district created under the above cited statute [K.R.S. §§ 216.310-216.360] is therefore a public agency within the meaning of the open meetings law.").[9] Plaintiff's Articles of Incorporation reflect that Taylor County Hospital District was organized pursuant to the provisions of K.R.S. §§ 216.310 to 216.360. *See* Exhibit 3 art. II..[10] Taylor County Hospital District is a public agency as defined by K.R.S. § 61.805(2)(d). Plaintiff was formed by Taylor County Hospital District and is exclusively controlled by Taylor County Hospital District's Board of Trustees. *See* Exhibit 3 art. II, VI. Because Taylor County Hospital District is a public agency, Plaintiff also is a public agency pursuant to K.R.S. § 61.805(2)(f). Plaintiff's opioid-related claims are therefore released pursuant to the Statute.

**B.** **Plaintiffs' Claims Against Settled Defendants Are Expressly Released By The Statute**

The Settled Defendants each are released under § 15.293, which expressly applies to "McKesson Corporation, Cardinal Health 5, LLC, Amerisourcebergen Drug Corporation, [and]

---

[9] "Opinions of the Attorney General are not binding on courts, but are instead considered to be highly persuasive and are accorded great weight." *Bentley v. Commonwealth*, 497 S.W.3d 253, 255 (Ky. Ct. App. 2016).

[10] The Articles of Incorporation also described Taylor County Hospital District as a "political subdivision." Exhibit 3 art. II. The claims of political subdivisions likewise are released by statute. *See* K.R.S. § 15.293(4)(d).

Johnson & Johnson" and "any of their affiliates or subsidiaries," as well as "any named defendant in In re National Prescription Opiate Litigation, MDL No. 2804" more generally.[11] K.R.S. § 15.293(3)(a), 4(a).  In addition to being specifically identified by statute, each of the Settled Defendants are named defendants in this MDL.

The release contained in the Statute became effective as to Settled Defendants when the Kentucky Attorney General entered into statewide settlement agreements resolving claims against Settled Defendants.  The Kentucky settlement agreements were subsequently embodied in Final Consent Judgments and Orders of Dismissal. The Janssen Consent Judgment and Dismissal with Prejudice was entered on July 29, 2022 in the McCracken Circuit Court Division II.  *See* Exhibit 1.  The Distributor Final Consent Judgment and Dismissal with Prejudice was entered on August 18, 2022 in the Franklin Circuit Court Division II.  *See* Exhibit 2.

The Settlement Agreements include broad releases of all opioid-related claims.  *See* Exhibit 1 at Ex. A p. 8 (definition of "Released Claims") & p. 14-18 (release provision); Exhibit 2 at Ex. A p. 7-8 (definition of "Released Claims") & p. 44-49 (release provision).).  These releases cover the opioid-related claims asserted in Plaintiff's Amended Complaint.  Plaintiffs' claims likewise are released pursuant to statute and must now be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Settled Defendants respectfully request that this Court dismiss all claims by Plaintiff against Settled Defendants.

---

[11] H. D. Smith, LLC is a subsidiary and "Released Entity" of AmerisourceBergen Corporation.  *See* Exhibit 2 at Ex. A at Ex. J thereto page J-3.

Dated:

                                   Respectfully submitted,

                                   */s/ Robert A. Nicholas*
                                   Robert A. Nicholas
                                   Shannon E. McClure
                                   Joseph J. Mahady
                                   Anne R. Bohnet
                                   REED SMITH LLP
                                   Three Logan Square
                                   1717 Arch Street, Suite 3100
                                   Philadelphia, PA 19103
                                   Telephone:  (215) 851-8100
                                   Fax: (215) 851-1420
                                   smcclure@reedsmith.com

                                   *Counsel for AmerisourceBergen Corporation*

                                   */s/ Enu A. Mainigi*
                                   Enu A. Mainigi
                                   Jennifer G. Wicht
                                   Steven Pyser
                                   Ashley Hardin
                                   WILLIAMS & CONNOLLY LLP
                                   680 Maine Ave SW
                                   Washington, DC  20024
                                    (202) 434-5000 / tel.
                                   (202) 434-5029/ fax
                                   emainigi@wc.com

                                   *Attorneys for Defendant Cardinal Health, Inc.*

                                   */s/ Timothy C. Hester*
                                   Geoffrey E. Hobart
                                   Timothy C. Hester
                                   Christian J. Pistilli
                                   COVINGTON & BURLING LLP
                                   One CityCenter
                                   850 Tenth Street NW
                                   Washington, DC 20001
                                   Tel: (202) 662-5281
                                   ghobart@cov.com
                                   thester@cov.com
                                   cpistilli@cov.com

*Counsel for Defendant McKesson*
*Corporation*

*/s/ Charles C. Lifland*
Charles C. Lifland
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407
clifland@omm.com

*Counsel for Defendants Johnson & Johnson;*
*Janssen Pharmaceuticals, Inc.; Ortho-*
*McNeil-Janssen Pharmaceuticals, Inc. n/k/a*
*Janssen Pharmaceuticals, Inc.; and Janssen*
*Pharmaceutica, Inc. n/k/a Janssen*
*Pharmaceuticals, Inc.*

*/s/ Brian T. Himmel*
Brian T. Himmel
REED SMITH LLP
225 Fifth Avenue
Pittsburgh, PA 15222
Telephone: 412.288.4058
Facsimile: 414.288.3063
bhimmel@reedsmith.com

Louis W. Schack
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Fax: (215) 851-1420
lschack@reedsmith.com

*Counsel for Defendant H. D. Smith, LLC,*
*f/k/a. H. D. Smith Wholesale Drug Co.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

|  |  |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>Case No. 1:20-op-45060 | MDL No. 2804<br><br>Hon. Dan Aaron Polster |

**[PROPOSED] ORDER GRANTING SETTLED DEFENDANTS'**
**MOTION TO DISMISS CLAIMS FILED BY NON-PARTICIPATING**
**KENTUCKY SUBDIVISION AS BARRED BY STATUTE**

Upon consideration of Settled Defendants' Motion to Dismiss Claims Filed By Non-Participating Kentucky Subdivision As Barred By Statute ("Settled Defendants' Motion"), and any opposition thereto, and as there is no just reason for delay, it is hereby ORDERED that Settled Defendants' Motion is GRANTED. It is further ORDERED that the claims asserted against Settled Defendants[1] in the above-captioned lawsuit filed by Plaintiff Taylor County Hospital District Health Facilities Corporation are hereby DISMISSED WITH PREJUDICE.

_____
Hon. Dan A. Polster
United States District Judge

---

[1] The Settled Defendants are Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen, Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. (collectively, "Janssen"), AmerisourceBergen Corporation, McKesson Corporation, Cardinal Health, Inc., and H. D. Smith, LLC (collectively, "Distributors") as well as any other Released Entities, as that term is defined in the Settlement Agreements, that have been named as defendants in Plaintiff's Amended Complaint. *See Bowling Green-Warren Cnty. Community Hosp. Corp. et al v. Purdue Pharma L.P., et al.* Case No. 1:20-op-45060 (N.D. Ohio Sept. 5, 2019) (Dkt. No. 1-1) ("Am. Compl."); Janssen Final Consent Judgment and Order of Dismissal (relevant excerpts attached as Exhibit 1 to Settled Defendants' Motion) at Ex. A p. 8-9 & Ex. J thereto; Distributor Final Consent Judgment and Order of Dismissal (relevant excerpts attached as Exhibit 2 to Settled Defendants' Motion) at Exhibit A p. 8 & Exhibit J thereto.

*SETTLED DEFENDANTS' MOTION TO DISMISS
CLAIMS FILED BY NON-PARTICIPATING KENTUCKY
SUBDIVISION AS RELEASED BY STATUTE*

# EXHIBIT 1

Tendered          18-CI-00313          07/21/2022          Kim Channell, McCracken Circuit Clerk

**COMMONWEALTH OF KENTUCKY**
**MCCRACKEN CIRCUIT COURT**
**DIVISION II**
**CIVIL ACTION NO. 18-CI-00313**
*Electronically Filed*



ENTERED
JUL 29 2022
MCCRACKEN CIRCUIT COURT
PADUCAH, KENTUCKY

COMMONWEALTH OF KENTUCKY, *ex. rel.*                                    PLAINTIFF
DANIEL CAMERON, ATTORNEY GENERAL,


v.


JOHNSON & JOHNSON;
JANSSEN PHARMACEUTICALS, INC.;
ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
N/K/A JANSSEN PHARMACEUTICA, INC.
N/K/A JANSSEN PHARMACEUTICALS, INC.,                                   DEFENDANTS


**COVER SHEET TO**

**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE**


The Final Consent Judgment and Dismissal with Prejudice attached hereto is provided to

the Commonwealth of Kentucky, ex. rel. Daniel Cameron, Attorney General, by and Johnson &

Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen

Pharmaceutica, Inc. (collectively, "*Janssen*" or "*Defendants*").

In relation to the filing of the Final Consent Judgment and Dismissal with Prejudice in the

applicable court in the Commonwealth of Kentucky as required by statute, the Defendants waive

notice and service of process regarding the filing of the Final Consent Judgment and Dismissal

with Prejudice and do not object to the court's approval and entry of the Final Consent Judgment

and Dismissal with Prejudice. The Defendants also do not object to the ex parte submission and

presentation of this Final Consent Judgment and Dismissal with Prejudice by the Kentucky

Attorney General's Office to the court.

WHEREFORE, the Court being well and sufficiently advised in the premises, and the Court having jurisdiction and venue for the purposes of entering and enforcing this judgment, the Final Consent Judgment and Dismissal with Prejudice attached hereto is hereby approved and the above referenced Civil Action is dismissed with prejudice.

The Office of the Attorney General shall receive thirteen and five tenths percent (13.5%) of each payment referenced in KRS 15.293(3)(a) as its reasonable costs of investigation and litigation per KRS 48.005.

DATE: _7/29/2022_

_____
JUDGE, MCCRACKEN CIRCUIT COURT

TD : 000002 of 000011

2

ENTERED

JUL 29 2022

MCCRACKEN CIRCUIT COURT
PADUCAH, KENTUCKY

**COMMONWEALTH OF KENTUCKY**
**MCCRACKEN CIRCUIT COURT**
**DIVISION II**
**CIVIL ACTION NO. 18-CI-00313**
*Electronically Filed*

COMMONWEALTH OF KENTUCKY, *ex. rel.*                    PLAINTIFF
DANIEL CAMERON, ATTORNEY GENERAL,


v.


JOHNSON & JOHNSON;
JANSSEN PHARMACEUTICALS, INC.;
ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
N/K/A JANSSEN PHARMACEUTICA, INC.
N/K/A JANSSEN PHARMACEUTICALS, INC.,                    DEFENDANTS


**<u>FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE</u>**


The Commonwealth of Kentucky ("*Commonwealth*") and Johnson & Johnson, Janssen

Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica,

Inc. (collectively, "*Janssen*" or "*Defendants*") (together with the Commonwealth, the "*Parties*,"

and each a "*Party*") have entered into a consensual resolution of the above-captioned litigation

(the "*Action*") pursuant to a settlement agreement entitled Janssen Settlement Agreement, dated

as of July 21, 2021 (as subsequently updated) (the "*Agreement*"), a copy of which is attached

hereto as Exhibit A.  The Agreement shall become effective by its terms upon the entry of this

Final Consent Judgment (the "*Judgment*") by the Court without trial or adjudication of any

contested issue of fact or law, and without finding or admission of wrongdoing or liability of any

kind.

TD : 000003 of 000011

**RECITALS:**

1.      Each Party warrants and represents that it engaged in arm's-length negotiations in good faith.  In hereby executing the Agreement, the Parties intend to effect a good-faith settlement.

2.      The Commonwealth has determined that the Agreement is in the public interest.

3.      Janssen denies the allegations against it and that it has any liability whatsoever to the Commonwealth, its Subdivisions, and/or (a) any of the Commonwealth's or Subdivisions' departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, including its Attorney General and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public.

4.      The Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation.

5.      The Parties agree to the entry of the injunctive relief terms pursuant to Exhibit P of the Agreement.

6.      Therefore, without any admission of liability or wrongdoing by Janssen or any other Released Entities (as defined in the Agreement), the Parties now mutually consent to the entry of this Judgment and agree to dismissal of the claims with prejudice pursuant to the terms of the Agreement to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

TD : 000004 of 000011

Tendered      18-CI-00313      07/21/2022      Kim Channell, McCracken Circuit Clerk

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

In consideration of the mutual promises, terms, and conditions set forth in the Agreement, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendants and the Commonwealth, and adjudicated by the Court, as follows:

1.  The foregoing Recitals are incorporated herein and constitute an express term of this Judgment.

2.  The Parties have entered into a full and final settlement of all Released Claims of Releasors against Janssen (including but not limited to the Commonwealth) and the Released Entities pursuant to the terms and conditions set forth in the Agreement.

3.  The "Definitions" set forth in Section I of the Agreement are incorporated by reference into this Judgment. The Commonwealth is a "Settling State" within the meaning of the Agreement. Unless otherwise defined herein, capitalized terms in this Judgment shall have the same meaning given to them in the Agreement.

4.  The Parties agree that the Court has jurisdiction over the subject matter of the Action and over the Parties with respect to the Action and this Judgment. This Judgment shall not be construed or used as a waiver of any jurisdictional defense Janssen or any other Released Entity may raise in any other proceeding.

5.  The Court finds that the Agreement was entered into in good faith.

6.  The Court finds that entry of this Judgment is in the public interest and reflects a negotiated settlement agreed to by the Parties. The Action is dismissed with prejudice, subject to a retention of jurisdiction by the Court as provided herein and in the Agreement.

7.  By this Judgment, the Agreement is hereby approved by the Court, and the Court hereby adopts the Agreement's terms as its own determination of this matter and the Parties' respective rights and obligations.

5

TD : 000005 of 000011

8.      The Court shall have authority to resolve disputes identified in Section XII.F.2 of the Agreement, governed by the rules and procedures of the Court.

9.      The Parties have satisfied the Condition to Effectiveness of Agreement set forth in Section VIII of the Agreement and the Release set forth in Sections IV.A, D, and E of the Agreement, as follows:

a.      The Attorney General of the Commonwealth exercised the fullest extent of his or her powers to release Janssen and all other Released Entities from all Released Claims pursuant to the release attached hereto as Exhibit B (the "*Release*").

b.      Janssen has determined that there is sufficient State participation and sufficient resolution of the Claims of the Litigating Subdivisions in the Settling States to proceed with the Agreement.

c.      The Settlement Participation Form for each Initial Participating Subdivision in the Commonwealth has been delivered to Janssen. As stated in the Settlement Participation Form, and for the avoidance of doubt, nothing in the Settlement Participation Form executed by the Participating Subdivisions is intended to modify in any way the terms of the Agreement to which the Participating Subdivisions agree. As stated in the Settlement Participation Form, to the extent the executed version of the Settlement Participation Form differs from the Agreement in any respect, the Agreement controls.

d.      Pursuant to the Settlement Participation Form, each Participating Subdivision in the Commonwealth is dismissing with prejudice any Released Claims that it has filed against Janssen and the Released Entities.

10.      Release.  The Parties acknowledge that the Release, which is incorporated by reference herein, is an integral part of this Judgment. Pursuant to the Agreement and the Release and without limitation and to the maximum extent of the power of the Commonwealth's Attorney General, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (a) the Commonwealth and its Participating Subdivisions and any of their departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including the Commonwealth's Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing,

6

TD : 000006 of 000011

and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in the Commonwealth, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the Commonwealth or any Subdivision in the Commonwealth, whether or not any of them participate in the Agreement. Pursuant to the Agreement and the Release and to the maximum extent of the Commonwealth's power, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the Commonwealth, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, (3) any of the Commonwealth's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license, and (4) any Participating Subdivision. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the Commonwealth's Governor. Further, the provisions set forth in Section IV of the Agreement are incorporated by reference into this Judgment as if fully set forth herein. The Parties acknowledge, and the Court finds, that those provisions are an integral part of the Agreement and this Judgment, and shall govern the rights and obligations of all participants in the

7

TD : 000007 of 000011

Tendered          18-CI-00313          07/21/2022          Kim Channell, McCracken Circuit Clerk

settlement. Any modification of those rights and obligations may be made based only on a writing

signed by all affected parties and approved by the Court.

11.    <u>Release of Unknown Claims.</u>  The Commonwealth expressly waives, releases, and

forever discharges any and all provisions, rights, and benefits conferred by any law of any state or

territory of the United States or other jurisdiction, or principle of common law, which is similar,

comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to
> claims that the creditor or releasing party does not know or suspect
> to exist in his or her favor at the time of executing the release that,
> if known by him or her, would have materially affected his or her
> settlement with the debtor or released party.

12.    The Commonwealth may hereafter discover facts other than or different from those which

it knows, believes, or assumes to be true with respect to the Released Claims, but the

Commonwealth expressly waived and fully, finally, and forever settled, released and discharged,

through the Agreement and Release, any and all Released Claims that may exist as of the Effective

Date but which the Commonwealth does not know or suspect to exist, whether through ignorance,

oversight, error, negligence or through no fault whatsoever, and which, if known, would have

materially affected the Commonwealth's decision to enter into the Agreement.

13.    To the extent that the Agreement became effective as of April 2, 2022, and a settlement

has been reached in the Action against the companies listed in KRS § 15.93(4)(a), each county,

consolidated local government, urban-county government, city, political subdivision, and public

agency, as that term is defined in KRS 61.805(2), of the Commonwealth is by operation of law

deemed to have released its claims against the companies listed in KRS § 15.93(4)(a) and their

affiliates and subsidiaries to the extent referenced in a settlement agreement, consent judgment,

order, or other document that reflects the terms of any settlement.

Tendered          18-CI-00313          07/21/2022          Kim Channell, McCracken Circuit Clerk

14.    <u>Costs and Fees.</u>  The Parties will bear their own costs and attorneys' fees except as otherwise provided in the Agreement.

15.    <u>No Admission of Liability.</u>  Defendants are consenting to this Judgment solely for the purpose of effectuating the Agreement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Defendants expressly deny.  No Defendant or Released Entity admits that it caused or contributed to any public nuisance, and no Defendant or Released Entity admits any wrongdoing that was or could have been alleged by the Commonwealth, its Participating Subdivisions and/or Participating Special Districts, or any other person or entity.  No part of this Judgment shall constitute evidence of any liability, fault, or wrongdoing by Defendants or any other Released Entity.  The Parties acknowledge that payments made under the Agreement are not a fine, penalty, or payment in lieu thereof and are properly characterized as described in Section VI.F of the Agreement.

16.    <u>No Waiver.</u>  This Judgment is entered based on the Agreement without trial or adjudication of any contested issue of fact or law or finding of liability of any kind.  This Judgment shall not be construed or used as a waiver of Janssen's right, or any other Released Entity's right, to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Judgment.  Notwithstanding the foregoing, the Commonwealth may enforce the terms of this Judgment as expressly provided in the Agreement.

17.    <u>No Private Right of Action.</u>  This Judgment is not intended for use by any third party for any purpose, including submission to any court for any purpose, except pursuant to Section XII.A of the Agreement.  Except as expressly provided in the Agreement, no portion of

9

TD : 000009 of 000011

the Agreement or this Judgment shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Entity.  The Commonwealth shall allow Participating Subdivisions in the Commonwealth to notify it of any perceived violations of the Agreement or this Judgment.  No Settling State, including the Commonwealth, may assign or otherwise convey any right to enforce any provision of the Agreement.

18.    <u>Admissibility</u>.  It is the intent of the Parties that this Judgment not be admissible in other cases against Defendants or binding on Defendants in any respect other than in connection with the enforcement of this Judgment or the Agreement.  For the avoidance of doubt, nothing herein shall prohibit Defendants from entering this Judgment or the Agreement into evidence in any litigation or arbitration concerning (1) Defendants' right to coverage under an insurance contract or (2) the enforcement of the releases provided for by the Agreement and this Judgment.

19.    <u>Preservation of Privilege</u>.  Nothing contained in the Agreement or this Judgment, and no act required to be performed pursuant to the Agreement or this Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

20.    <u>Mutual Interpretation</u>.  The Parties agree and stipulate that the Agreement was negotiated on an arm's-length basis between parties of equal bargaining power and was drafted jointly by counsel for each Party.  Accordingly, the Agreement is incorporated herein by reference and shall be mutually interpreted and not construed in favor of or against any Party, except as expressly provided for in the Agreement.

21.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction of the Parties for the limited purpose of the resolution of disputes identified in Section XII.F.2 of the Agreement.  The

10

Tendered        18-CI-00313        07/21/2022        Kim Channell, McCracken Circuit Clerk

Court shall have jurisdiction over Participating Subdivisions in the Commonwealth for the limited

purposes identified in the Agreement.

22.   <u>Successors and Assigns</u>.  This Judgment is binding on Defendants' successors and

assigns.

23.   <u>Modification</u>.  This Judgment shall not be modified (by the Court, by any other

court, or by any other means) without the consent of the Commonwealth and Defendants, or as

provided for in Section XIII.S of the Agreement.

### APPROVAL BY COURT

APPROVED FOR FILING and SO ORDERED this 29th day of July, 2022.

_____
Judge

### APPROVED, AGREED TO AND PRESENTED BY:

**For the Commonwealth of Kentucky:**

Date:  7/21/2022        By:  */s/ J. Christian Lewis*------------------------------
                                J. Christian Lewis, Executive Director,
                                Office of Consumer Protection
                                Kentucky Office of the Attorney General

**For the Janssen Defendants:**

Date:  7/21/2022        By:  */s/ Marc Larkins*_____
                                Marc Larkins
                                Assistant Corporate Secretary, Johnson & Johnson

Approved as to form:

Date:  7/21/2022        By:  */s/ Charles Lifland*_____
                                Charles C. Lifland
                                O'Melveny & Myers
                                Counsel for Defendants

Tendered        18-CI-00313        07/21/2022        Kim Channell, McCracken Circuit Clerk

TD : 000011 of 000011

# EXHIBIT A

# JANSSEN SETTLEMENT AGREEMENT

# JANSSEN SETTLEMENT AGREEMENT

## **Table of Contents**

I.      Definitions .................................................................................................. 1

II.     Participation by States and Condition to Preliminary Agreement .......................................... 13

III.    Injunctive Relief............................................................................................. 14

IV.     Release ..................................................................................................... 14

V.      Monetary Relief and Payments.................................................................................. 18

VI.     Allocation and Use of Settlement Funds ...................................................................... 29

VII.    Participation by Subdivisions and Special Districts ......................................................... 36

VIII.   Condition to Effectiveness of Agreement and Filing of Consent Judgment ..................................... 39

IX.     Potential Payment Adjustments ............................................................................... 40

X.      Additional Restitution Amount ............................................................................... 42

XI.     Plaintiffs' Attorneys' Fees and Costs ....................................................................... 43

XII.    Enforcement and Dispute Resolution .......................................................................... 43

XIII.   Miscellaneous ................................................................................................ 48

EXHIBIT A – Alleged Harms ................................................................................... A-1

EXHIBIT B – Enforcement Committee Organizational Bylaws...................................................... B-1

EXHIBIT C – Litigating Subdivision and Special District List ................................................ C-1

EXHIBIT D – [Intentionally Omitted] ........................................................................ D-1

EXHIBIT E – List of Opioid Remediation Uses ................................................................ E-1

EXHIBIT F – List of States and Overall Allocation Percentages ............................................... F-1

EXHIBIT G – Subdivisions Eligible to Become Participating Subdivisions and Default Subdivision Fund Allocation Percentages ........................................................................ G-1

EXHIBIT H – Participation Tier Determination ........................................................... H-1

EXHIBIT I – Primary Subdivisions and Subdivisions with Population Over 10,000 ................. I-1

EXHIBIT J – Janssen Predecessors and Former Affiliates ............................................. J-1

EXHIBIT K – Settlement Participation Form .............................................................. K-1

EXHIBIT L – Settlement Fund Administrator ............................................................. L-1

EXHIBIT M – Settlement Payment Schedule .............................................................. M-1

EXHIBIT N – Additional Restitution Amount Allocation ............................................... N-1

EXHIBIT O – Adoption of a State-Subdivision Agreement ............................................. O-1

EXHIBIT P – Injunctive Relief .............................................................................. P-1

EXHIBIT Q – Non-Released Entities ........................................................................ Q-1

EXHIBIT R – Agreement on Attorneys' Fees, Costs, and Expenses .................................. R-1

EXHIBIT S – Agreement on the State Cost Fund Administration ...................................... S-1

EXHIBIT T – Severity Factors ............................................................................... T-1

EXHIBIT U – Agreement on the State Outside Counsel Fee Fund ..................................... U-1

## JANSSEN SETTLEMENT AGREEMENT

This settlement agreement dated as of July 21, 2021 (the "*Agreement*") sets forth the terms of settlement between and among the Settling States, Participating Subdivisions, and Janssen (as those terms are defined below). Upon satisfaction of the conditions set forth in Sections II and VIII, this Agreement will be binding on the Settling States, Janssen, and Participating Subdivisions. This Agreement will then be filed as part of Consent Judgments in the respective courts of each of the Settling States, pursuant to the terms set forth in Section VIII.

## I.      <u>Definitions</u>

Unless otherwise specified, the following definitions apply:

1.  "*Abatement Accounts Fund*" means a component of the Settlement Fund described in subsection VI.E.

2.  "*Additional Restitution Amount*" means the amount available to Settling States listed in Exhibit N of $67,307,692.

3.  "*Agreement*" means this agreement as set forth above, inclusive of all exhibits.

4.  "*Alleged Harms*" means the alleged past, present, and future financial, societal, and related expenditures arising out of the alleged misuse and abuse of opioid products, non-exclusive examples of which are described in the documents listed on Exhibit A, that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, death, and other related diseases and disorders, and that have allegedly been caused by Janssen.

5.  "*Allocation Statute*" means a state law that governs allocation, distribution, and/or use of some or all of the Settlement Fund amounts allocated to that State and/or its Subdivisions. In addition to modifying the allocation, as set forth in subsection VI.D.2, an Allocation Statute may, without limitation, contain a Statutory Trust, further restrict expenditure of funds, form an advisory committee, establish oversight and reporting requirements, or address other default provisions and other matters related to the funds. An Allocation Statute is not required to address all three (3) types of funds comprising the Settlement Fund or all default provisions.

6.  "*Annual Payment*" means the total amount payable to the Settlement Fund by Janssen on the Payment Date each year in 2023 and onward, as calculated by the Settlement Fund Administrator pursuant to Section V. For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to Section XI.

7.  "*Appropriate Official*" means the official defined in subsection XIII.E.

*revised March 30, 2022*

8.     "*Attorney Fee Fund*" means an account consisting of funds allocated to pay attorneys' fees and costs pursuant to the agreement on attorneys' fees and costs attached as Exhibit R.

9.     "*Bar*" means either (1) a ruling by the highest court of the State or the intermediate court of appeals when not subject to further review by the highest court of the State in a State with a single intermediate court of appeals setting forth the general principle that no Subdivisions or Special Districts in the State may maintain Released Claims against Released Entities, whether on the ground of the Agreement (or the release in it) or otherwise; (2) a law barring Subdivisions and Special Districts in the State from maintaining or asserting Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and that authority is exercised in full); or (3) a Settlement Class Resolution in the State with full force and effect. For the avoidance of doubt, a law or ruling that is conditioned or predicated upon payment by a Released Entity (apart from payments by Janssen incurred under the Agreement) shall not constitute a Bar.

10.    "*Case-Specific Resolution*" means either (1) a law barring specified Subdivisions or Special Districts from maintaining Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and that authority is exercised in full); (2) a ruling by a court of competent jurisdiction over a particular Subdivision or Special District that has the legal effect of barring the Subdivision or Special District from maintaining any Released Claims at issue against Released Entities, whether on the ground of the Agreement (or the release in it) or otherwise; or (3) in the case of a Special District, a release consistent with Section IV below. For the avoidance of doubt, a law, ruling, or release that is conditioned or predicated upon a post-Effective Date payment by a Released Entity (apart from payments by Janssen incurred under the Agreement or injunctive relief obligations incurred by it) shall not constitute a Case-Specific Resolution.

11.    "*Claim*" means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, parens patriae claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including but not limited to any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert

2

*revised March 30, 2022*

fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

12.     "*Claim Over*" means a Claim asserted by a Non-Released Entity against a Released Entity on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.

13.     "*Compensatory Restitution Amount*" means the aggregate amount of payments by Janssen hereunder other than amounts paid as attorneys' fees and costs or identified pursuant to subsection VI.B.2 as being used to pay attorneys' fees and investigation costs or litigation costs.

14.     "*Consent Judgment*" means a state-specific consent judgment in a form to be agreed upon by the Settling States, Participating Subdivisions, and Janssen prior to the Initial Participation Date that, among other things, (1) approves this Agreement and (2) provides for the release set forth in Section IV, including the dismissal with prejudice of any Released Claims that the Settling State has brought against Released Entities.

15.     "*Court*" means the respective court for each Settling State to which the Agreement and the Consent Judgment are presented for approval and/or entry as to that Settling State, or the Northern District of Ohio for purposes of administering the Attorney Fee Fund and any related fee and cost agreements.

16.     "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Reference Date (and any past, present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (a) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to any Product, or any system, plan, policy, or advocacy relating to any Product or class of Products, including but not limited to any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (b) the characteristics, properties, risks, or benefits of any Product; (c) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders for any Product placed with any Released Entity; (d) the selective breeding, harvesting, extracting, purifying, exporting, importing, applying for quota for, procuring quota for, handling, promoting, manufacturing, processing, packaging, supplying, distributing, converting, or selling of, or otherwise engaging in any activity relating to, precursor or component Products, including but not limited to natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished

3

*revised March 30, 2022*

active pharmaceutical ingredients, drug substances, or any related intermediate Products; or (e) diversion control programs or suspicious order monitoring related to any Product.

17.  "*Designated State*" means New York.

18.  "*Effective Date*" means April 2, 2022.

19.  "*Enforcement Committee*" means a committee consisting of representatives of the Settling States and of the Participating Subdivisions. Exhibit B contains the organizational bylaws of the Enforcement Committee. Notice pursuant to subsection XIII.O shall be provided when there are changes in membership or contact information.

20.  "*Global Settlement Abatement Amount*" means the abatement amount of $4,534,615,385.

21.  "*Global Settlement Amount*" means $5 billion, which shall be divided into the Global Settlement Abatement Amount, the Additional Restitution Amount, and the Global Settlement Attorney Fee Amount.

22.  "*Global Settlement Attorney Fee Amount*" means the attorney fee amount of $398,076,923.

23.  "*Incentive A*" means the incentive payment described in subsection V.E.4.

24.  "*Incentive B*" means the incentive payment described in subsection V.E.5.

25.  "*Incentive C*" means the incentive payment described in subsection V.E.6.

26.  "*Incentive D*" means the incentive payment described in subsection V.E.7.

27.  "*Incentive Payment Final Eligibility Date*" means, with respect to a Settling State, the date that is the earliest of (1) three years after the Effective Date; (2) the date of completion of opening statements in a trial of any action brought by a Subdivision in that State that includes a Released Claim against a Released Entity when such date is more than two (2) years after the Effective Date; or (3) two (2) years after the Effective Date in the event a trial of an action brought by a Subdivision in that State that includes a Released Claim against a Released Entity began after the Initial Participation Date but before two (2) years after the Effective Date.

28.  "*Initial Participating Subdivision*" means a Subdivision that meets the requirements set forth in subsection VII.D.

29.  "*Initial Participation Date*" means January 26, 2022, as extended by written agreement of Janssen and the Enforcement Committee on December 29, 2021.

4

*revised March 30, 2022*

30.    "*Initial Year Payment*" means the total amount payable to the Settlement Fund by Janssen on each of the two Payment Dates in 2022, as calculated by the Settlement Fund Administrator pursuant to Section V. For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to Section XI.

31.    "*Injunctive Relief Terms*" means the terms described in Section III and set forth in Exhibit P.

32.    "*Janssen*" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

33.    "*Later Litigating Special District*" means a Special District (or Special District official asserting the right of or for the Special District to recover for alleged harms to the Special District and/or the people thereof) that is not a Litigating Special District and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Preliminary Agreement Date. It may also include a Litigating Special District whose claims were resolved by a judicial Bar or Case-Specific Resolution which is later revoked following the execution date of this Agreement, when such Litigating Special District takes any affirmative step in its lawsuit other than seeking a stay or removal.

34.    "*Later Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that is not a Litigating Subdivision and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Trigger Date. It may also include a Litigating Subdivision whose claims were resolved by a judicial Bar or Case-Specific Resolution which is later revoked following the execution date of this Agreement, when such Litigating Subdivision takes any affirmative step in its lawsuit other than seeking a stay or removal.

35.    "*Later Participating Subdivision*" means a Participating Subdivision that meets the requirements of subsection VII.E but is not an Initial Participating Subdivision.

36.    "*Litigating Special District*" means a Special District (or Special District official) that brought any Released Claims against any Released Entities on or before the Preliminary Agreement Date that were not separately resolved prior to that date. A list of Litigating Special Districts will be agreed to by the parties and attached hereto as of the Preliminary Agreement Date.

37.    "*Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity prior to the Trigger Date that were not separately resolved prior to that

*revised March 30, 2022*

Trigger Date. A Prior Litigating Subdivision shall not be considered a Litigating Subdivision. Exhibit C is an agreed list of the Litigating Subdivisions. Exhibit C will be updated (including with any corrections) periodically, and a final version of Exhibit C will be attached hereto as of the Reference Date.

38.    "*National Arbitration Panel*" means the panel described in subsection XII.F.

39.    "*National Disputes*" means the disputes described in subsection XII.F.

40.    "*Non-Litigating Special District*" means a Special District that is neither a Litigating Special District nor a Later Litigating Special District.

41.    "*Non-Litigating Subdivision*" means a Subdivision that is neither a Litigating Subdivision nor a Later Litigating Subdivision.

42.    "*Non-Participating Subdivision*" means a Subdivision that is not a Participating Subdivision.

43.    "*Non-Party Covered Conduct Claim*" means a Claim against any Non-Released Entity involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity).

44.    "*Non-Party Settlement*" means a settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Entity.

45.    "*Non-Released Entity*" means an entity that is not a Released Entity.

46.    "*Non-Settling State*" means a State that is not a Settling State.

47.    "*Opioid Remediation*" means care, treatment, and other programs and expenditures (including reimbursement for past such programs or expenditures except where this Agreement restricts the use of funds solely to future Opioid Remediation) designed to (1) address the misuse and abuse of opioid products, (2) treat or mitigate opioid use or related disorders, or (3) mitigate other alleged effects of the opioid abuse crisis, including on those injured as a result of the opioid abuse crisis. Exhibit E provides a non-exhaustive list of expenditures that qualify as being paid for Opioid Remediation. Qualifying expenditures may include reasonable related administrative expenses.

48.    "*Overall Allocation Percentage*" means a Settling State's percentage as set forth in Exhibit F. The aggregate Overall Allocation Percentages of all States (including Settling States and Non-Settling States) shall equal 100%.

49.    "*Participating Special District*" means a Special District that executes a release consistent with Section IV below and meets the requirements for becoming a Participating Special District under Section VII.

*revised March 30, 2022*

50.  "*Participating Subdivision*" means a Subdivision that meets the requirements for becoming a Participating Subdivision under Section VII. Participating Subdivisions include both Initial Participating Subdivisions and Later Participating Subdivisions.

51.  "*Participation Tier*" means the level of participation in this Agreement as determined pursuant to subsection VIII.C using the criteria set forth in Exhibit H.

52.  "*Parties*" means Janssen and the Settling States (each, a "*Party*").

53.  "*Payment Date*" means the date on which Janssen makes its payments pursuant to Section V and Exhibit M.

54.  "*Payment Year*" means the calendar year during which the applicable Initial Year Payments or Annual Payments are due pursuant to subsection V.B. Payment Year 1 is 2022, Payment Year 2 is 2023 and so forth. References to payment "for a Payment Year" mean the Initial Year Payments or Annual Payment due during that year. References to eligibility "for a Payment Year" mean eligibility in connection with the Initial Year Payments or Annual Payment due during that year.

55.  "*Preliminary Agreement Date*" means the date on which Janssen gives notice to the Settling States and MDL PEC of its determination that a sufficient number of States have agreed to be Settling States. This date shall be no more than fourteen (14) days after the end of the notice period to States, unless it is extended by written agreement of Janssen and the Enforcement Committee.

56.  "*Primary Subdivision*" means a Subdivision that has a population of 30,000 or more. A list of Primary Subdivisions in each State is provided in Exhibit I.

57.  "*Prior Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity prior to the Trigger Date and all such Released Claims were separately settled or finally adjudicated prior to the Trigger Date; *provided, however*, that if the final adjudication was pursuant to a Bar, such Subdivision shall not be considered a Prior Litigating Subdivision. Notwithstanding the prior sentence, Janssen and the State of the relevant Subdivision may agree in writing that such Subdivision shall not be considered a Prior Litigating Subdivision.

58.  "*Product*" means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is an opioid or opiate, as well as any product containing any such substance. It also includes: 1) the following when used in combination with opioids or opiates: benzodiazepine, carisoprodol, zolpidem, or gabapentin; and 2) a combination or "cocktail" of any stimulant or other chemical substance prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. For the

7

avoidance of doubt, "Product" does not include benzodiazepine, carisoprodol, zolpidem, or gabapentin when not used in combination with opioids or opiates. "Product" includes but is not limited to any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, any variant of these substances, or any similar substance. "Product" also includes any natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, and any related intermediate products used or created in the manufacturing process for any of the substances described in the preceding sentence.

59.    "*Reference Date*" means the date on which Janssen is to inform the Settling States and MDL PEC of its determination whether there is sufficient resolution of claims and potential claims at the Subdivision level to go forward with the settlement. The Reference Date is February 25, 2022, as extended by written agreement of Janssen and the Enforcement Committee on December 29, 2021.

60.    "*Released Claims*" means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Reference Date. Without limiting the foregoing, "Released Claims" include any Claims that have been asserted against the Released Entities by any Settling State or any of its Litigating Subdivisions or Litigating Special Districts in any federal, state or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding brought by a State, any of its Subdivisions or Special Districts, or any Releasors (whether or not such State, Subdivision, Special District, or Releasor has brought such action or proceeding). Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to the Agreement, whether or not such claims relate to Covered Conduct. The Parties intend that "Released Claims" be interpreted broadly. This Agreement does not release Claims by private individuals. It is the intent of the Parties that Claims by private individuals be treated in accordance with applicable law. Released Claims is also used herein to describe Claims brought by a Later Litigating Subdivision or other non-party Subdivision or Special District that would have been Released Claims if they had been brought by a Releasor against a Released Entity.

61.    "*Released Entities*" means Janssen and (1) all of Janssen's past and present direct or indirect parents, subsidiaries, divisions, predecessors, successors, assigns, including Noramco, Inc. and Tasmanian Alkaloids PTY. LTD.; (2) the past and present direct or indirect subsidiaries, divisions, and joint ventures, of any of the foregoing; (3) all of Janssen's insurers (solely in their role as insurers with respect to the Released Claims); (4) all of Janssen's, or of any entity described in subsection (1), past and present joint ventures; and (5) the respective past and present officers, directors, members, shareholders (solely in their capacity as

8

shareholders of the foregoing entities), partners, trustees, agents, and employees of any of the foregoing (for actions that occurred during and related to their work for, or employment with, Janssen). Any person or entity described in subsections (3)-(5) shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity. For the avoidance of doubt, the entities listed in Exhibit Q are not Released Entities; *and provided further* that any joint venture partner of Janssen or Janssen's subsidiary is not a Released Entity unless it falls within subsections (1)-(5) above. A list of Janssen's present subsidiaries and affiliates can be found at https://johnsonandjohnson.gcs-web.com/static-files/f61ae5f3-ff03-46c1-bfc9-174947884db2. Janssen's predecessor entities include but are not limited to those entities listed on Exhibit J. For the avoidance of doubt, any entity acquired, or joint venture entered into, by Janssen after the Reference Date is not a Released Entity.

62.     "*Releasors*" means (1) each Settling State; (2) each Participating Subdivision; and (3) without limitation and to the maximum extent of the power of each Settling State's Attorney General and/or Participating Subdivision to release Claims, (a) the Settling State's and Participating Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in their official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in a Settling State, and (c) any person or entity acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in the Agreement. The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Subdivision. In addition to being a Releasor as provided herein, a Participating Subdivision shall also provide the Subdivision Settlement Participation Form or the Election and Release Form referenced in Section VII providing for a release to the fullest extent of the Participating Subdivision's authority, which shall be attached as an exhibit to the Agreement. Each Settling State's Attorney General represents that he or she has or has obtained (or will obtain no later than the Initial Participation Date) the authority set forth in the Representation and Warranty subsection of Section IV.

63.     "*Revocation Event*" means with respect to a Bar, Settlement Class Resolution, or Case-Specific Resolution, a legislative amendment or a revocation, rescission, reversal, overruling, or interpretation that in any way limits the effect of such Bar, Settlement Class Resolution, or Case-Specific Resolution on Released Claims or any other action or event that otherwise deprives the Bar, Settlement Class Resolution or Case-Specific Resolution of force or effect in any material respect.

*revised March 30, 2022*

64.   "*Settlement Class Resolution*" means a class action resolution in a court of competent jurisdiction in a Settling State with respect to a class of Subdivisions and Special Districts in that State that (1) conforms with that Settling State's statutes, case law, and/or rules of procedure regarding class actions; (2) is approved and entered as an order of a court of competent jurisdiction in that State and has become final as defined in "State-Specific Finality"; (3) is binding on all Non-Participating Subdivisions and Special Districts in that State (other than opt outs as permitted under the next sentence); (4) provides that all such Non-Participating Subdivisions or Special Districts may not bring Released Claims against Released Entities, whether on the ground of the Agreement (or the releases herein) or otherwise; and (5) does not impose any costs or obligations on Janssen other than those provided for in the Agreement, or contain any provision inconsistent with any provision of the Agreement. If applicable state law requires that opt-out rights be afforded to members of the class, a class action resolution otherwise meeting the foregoing requirements shall qualify as a Settlement Class Resolution unless Subdivisions collectively representing more than 1% of the total population of all of that State's Subdivisions listed in Exhibit G opt out. In seeking certification of any Settlement Class, the applicable State and Participating Subdivisions shall make clear that certification is sought solely for settlement purposes and shall have no applicability beyond approval of the settlement for which certification is sought. Nothing in this Agreement constitutes an admission by any Party that class certification would be appropriate for litigation purposes in any case.

65.   "*Settlement Fund*" means the interest-bearing fund established under the Agreement into which all payments by Janssen are made other than amounts paid as attorneys' fees and costs or identified pursuant to subsection VI.B.2 as being used to pay attorneys' fees and costs. The Settlement Fund comprises the Abatement Accounts Fund, State Fund, and Subdivision Fund.

66.   "*Settlement Fund Administrator*" means the entity that determines the Annual Payments (including calculating Incentive Payments pursuant to Section V) and any amounts subject to suspension or offset pursuant to Sections V and IX), determines the Participation Tier, and administers and distributes amounts into the Settlement Fund. The duties of the Settlement Fund Administrator shall be governed by this Agreement. Prior to the Initial Participation Date, the Parties shall agree to selection and removal processes for and a detailed description of the Settlement Fund Administrator's duties, including a detailed mechanism for paying the Settlement Fund Administrator's fees and costs, all of which shall be appended to the Agreement as Exhibit L.

67.   "*Settlement Fund Escrow*" means the interest-bearing escrow fund established pursuant to this Agreement to hold disputed or suspended payments made under this Agreement.

68.   "*Settlement Payment Schedule*" means the schedule of payments attached to this Agreement as Exhibit M. A revised Settlement Payment Schedule will be

*revised March 30, 2022*

substituted for Exhibit M after any offsets, reductions, or suspensions under Sections V and IX are determined.

69. "*Settling State*" means any State that has entered the Agreement.

70. "*Special District*" means a formal and legally recognized sub-entity of a State that is authorized by State law to provide one or a limited number of designated functions, including but not limited to school districts, fire districts, healthcare & hospital districts, and emergency services districts. Special Districts do not include sub-entities of a State that provide general governance for a defined area that would qualify as a Subdivision.

71. "*State*" means any state of the United States of America, the District of Columbia, American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands. Additionally, the use of non-capitalized "state" to describe something (e.g., "state court") shall also be read to include parallel entities in commonwealths, territories, and the District of Columbia (e.g., "territorial court").

72. "*State Fund*" means a component of the Settlement Fund described in subsection VI.C.

73. "*State-Specific Finality*" means, with respect to the Settling State in question:

    a. the Agreement and the Consent Judgment have been approved and entered by the Court as to Janssen, including the release of all Released Claims against Released Entities as provided in this Agreement;

    b. for all lawsuits brought by the Settling State against Released Entities for Released Claims, either previously filed or filed as part of the entry of the Consent Judgment, the Court has stated in the Consent Judgment or otherwise entered an order finding that all Released Claims against Released Entities asserted in the lawsuit have been resolved by agreement; and

    c. (1) the time for appeal or to seek review of or permission to appeal from the approval and entry as described in subsection (a) hereof and entry of such order described in subsection (b) hereof has expired; or (2) in the event of an appeal, the appeal has been dismissed or denied, or the approval and entry described in (a) hereof and the order described in subsection (b) hereof have been affirmed in all material respects (to the extent challenged in the appeal) by the court of last resort to which such appeal has been taken and such dismissal or affirmance has become no longer subject to further appeal (including, without limitation, review by the United States Supreme Court).

74. "*State-Subdivision Agreement*" means an agreement that a Settling State reaches with the Subdivisions in that State regarding the allocation, distribution, and/or use of funds allocated to that State and to Participating Subdivisions in that State.

11

*revised March 30, 2022*

A State-Subdivision Agreement shall be effective if approved pursuant to the provisions of Exhibit O or if adopted by statute. Preexisting agreements addressing funds other than those allocated pursuant to this Agreement shall qualify if the approval requirements of Exhibit O are met. A State and its Subdivisions may revise, supplement, or refine a State-Subdivision Agreement if approved pursuant to the provisions of Exhibit O or if adopted by statute.

75.   "*Statutory Trust*" means a trust fund established by state law to receive funds allocated to a State's Abatement Accounts Fund and restrict their expenditure to Opioid Remediation purposes subject to reasonable administrative expenses. A State may give a Statutory Trust authority to allocate one or more of the three Settlement Funds, but this is not required.

76.   "*Subdivision*" means a formal and legally recognized sub-entity of a State that provides general governance for a defined area, including a county, parish, city, town, village, or similar entity. Unless otherwise specified, "Subdivision" includes all functional counties and parishes and other functional levels of sub-entities of a State that provide general governance for a defined area. Historic, non-functioning sub-entities of a State (such as Connecticut counties) are not Subdivisions, unless the entity has filed a lawsuit that includes a Released Claim against a Released Entity in a direct, parens patriae, or any other capacity. For purposes of this Agreement, the term Subdivision does not include Special Districts. A list of Subdivisions by state will be agreed to prior to any Subdivision sign-on period.

77.   "*Subdivision Allocation Percentage*" means for Subdivisions in a Settling State that are eligible to receive an allocation from the Subdivision Fund pursuant to subsection VI.C or subsection VI.D, the percentage as set forth in Exhibit G. The aggregate Subdivision Allocation Percentage of all Subdivisions receiving a Subdivision Allocation Percentage in each State shall equal 100%. Immediately upon the effectiveness of any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3 (or upon the effectiveness of an amendment to any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3) that addresses allocation from the Subdivision Fund, or upon any, whether before or after the Initial Participation Date, Exhibit G will automatically be amended to reflect the allocation from the Subdivision Fund pursuant to the State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by Section V.D.3. The Subdivision Allocation Percentages contained in Exhibit G may not change once notice is distributed pursuant to subsection VII.A, except upon the effectiveness of any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3 (or upon the effectiveness of an amendment to any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3) that addresses allocation from the Subdivision Fund. For the avoidance of doubt, no Subdivision

12

not listed on Exhibit G shall receive an allocation from the Subdivision Fund and no provision of this Agreement shall be interpreted to create such an entitlement.

78.   "*Subdivision Fund*" means a component of the Settlement Fund described in subsection VI.C.

79.   "*Subdivision Settlement Participation Form*" means the form attached as Exhibit K that Participating Subdivisions must execute and return to the Settlement Fund Administrator, and which shall (1) make such Participating Subdivisions signatories to this Agreement, (2) include a full and complete release of any and of such Subdivision's claims, and (3) require the prompt dismissal with prejudice of any Released Claims that have been filed by any such Participating Subdivision.

80.   "*Threshold Motion*" means a motion to dismiss or equivalent dispositive motion made at the outset of litigation under applicable procedure. A Threshold Motion must include as potential grounds for dismissal, any applicable Bar or the relevant release by a Settling State or Participating Subdivision provided under this Agreement and, where appropriate under applicable law, any applicable limitations defense.

81.   "*Trigger Date*" means, in the case of a Primary Subdivision, the Reference Date, or, in the case of all other Subdivisions, the Preliminary Agreement Date.

## II.   Participation by States and Condition to Preliminary Agreement

A.   *Notice to States*. On July 22, 2021 this Agreement shall be distributed to all States. The States' Attorneys General shall then have a period of thirty (30) days to decide whether to become Settling States. States that determine to become Settling States shall so notify the National Association of Attorneys General and Janssen and shall further commit to obtaining any necessary additional State releases prior to the Reference Date. This notice period may be extended by written agreement of Janssen and the Enforcement Committee.

B.   *Condition to Preliminary Agreement*. Following the notice period set forth in subsection II.A above, Janssen shall determine on or before the Preliminary Agreement Date whether, in its sole discretion, enough States have agreed to become Settling States to proceed with notice to Subdivisions as set forth in Section VII below. If Janssen determines that this condition has been satisfied, and that notice to the Litigating Subdivisions should proceed, it will so notify the Settling States by providing notice to the Enforcement Committee and Settlement Fund Administrator on the Preliminary Agreement Date. If Janssen determines that this condition has not been satisfied, it will so notify the Settling States by providing notice to the Enforcement Committee and Settlement Fund Administrator, and this Agreement will have no further effect and all releases and other commitments or obligations contained herein will be void.

C.   *Later Joinder by States*. After the Preliminary Agreement Date, a State may only become a Settling State with the consent of Janssen, in its sole discretion. If a State becomes a

*revised March 30, 2022*

Settling State more than sixty (60) days after the Preliminary Agreement Date, but on or before January 1, 2022, the Subdivisions and Special Districts in that State that become Participating Subdivisions and Participating Special Districts within ninety (90) days of the State becoming a Settling State shall be considered Initial Participating Subdivisions or Initial Participating Special Districts. A State may not become a Settling State after January 1, 2022.

### III.    Injunctive Relief

A.    *Entry of Injunctive Relief*. As part of the Consent Judgment, the Parties agree to the injunctive relief terms attached as Exhibit P.

### IV.    Release

A.    *Scope.* As of the Effective Date, the Released Entities will be released and forever discharged from all of the Releasors' Released Claims. Each Settling State (for itself and its Releasors) and Participating Subdivision (for itself and its Releasors) will, on or before the Effective Date, absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Settling State and its Attorney General to release claims. The Release shall be a complete bar to any Released Claim.

B.    *Claim Over and Non-Party Settlement*.

    1.    *Statement of Intent.* It is the intent of the Parties that:

        a.    Released Entities should not seek contribution or indemnification (other than pursuant to an insurance contract) from other parties for their payment obligations under this Settlement Agreement;

        b.    the payments made under this Settlement Agreement shall be the sole payments made by the Released Entities to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity);

        c.    Claims by Releasors against non-Parties should not result in additional payments by Released Entities, whether through contribution, indemnification or any other means; and

        d.    the Settlement meets the requirements of the Uniform Contribution Among Joint Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

*revised March 30, 2022*

e. The provisions of this subsection IV.B are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

2. *Contribution/Indemnity Prohibited*. No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Released Entity shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

3. *Non-Party Settlement*. To the extent that, on or after the Reference Date, any Releasor enters into a Non-Party Settlement, including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Janssen in subsection IV.B.2, or a release from such Non-Released Entity in favor of the Released Entities (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.

4. *Claim-Over*. In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that in subsection IV.B.3, or any Releasor files a Non-Party Covered Conduct Claim against a non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in subsection IV.B.3, and such Non-Released Entity asserts a Claim-Over against a Released Entity, that Releasor and Janssen shall take the following actions to ensure that the Released Entities do not pay more with respect to Covered Conduct to Releasors or to Non-Released Entities than the amounts owed under this Settlement Agreement by Janssen:

a. Janssen shall notify that Releasor of the Claim-Over within sixty (60) days of the assertion of the Claim-Over or sixty (60) days of the Effective Date of this Settlement Agreement, whichever is later;

b. Janssen and that Releasor shall meet and confer concerning the means to hold Released Entities harmless and ensure that it is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement;

15

*revised March 30, 2022*

c.    That Releasor and Janssen shall take steps sufficient and permissible under the law of the State of the Releasor to hold Released Entities harmless from the Claim-Over and ensure Released Entities are not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement. Such steps may include, where permissible:

(1)    Filing of motions to dismiss or such other appropriate motion by Janssen or Released Entities, and supported by Releasors, in response to any claim filed in litigation or arbitration;

(2)    Reduction of that Releasor's Claim and any judgment it has obtained or may obtain against such Non-Released Entity by whatever amount or percentage is necessary to extinguish such Claim-Over under applicable law, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

(3)    Placement into escrow of funds paid by the Non-Released Entities such that those funds are available to satisfy the Claim-Over;

(4)    Return of monies paid by Janssen to that Releasor under this Settlement Agreement to permit satisfaction of a judgment against or settlement with the Non-Released Entity to satisfy the Claim-Over;

(5)    Payment of monies to Janssen by that Releasor to ensure it is held harmless from such Claim-Over, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

(6)    Credit to Janssen under this Settlement Agreement to reduce the overall amounts to be paid under the Settlement Agreement such that it is held harmless from the Claim-Over; and

(7)    Such other actions as that Releasor and Janssen may devise to hold Janssen harmless from the Claim Over.

d.    The actions of that Releasor and Janssen taken pursuant to paragraph (c) must, in combination, ensure Janssen is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement.

e.    In the event of any dispute over the sufficiency of the actions taken pursuant to paragraph (c), that Releasor and Janssen may seek review by the National Arbitration Panel, provided that, if the parties agree, such dispute may be heard by the state court where the relevant Consent Judgment was filed. The National Arbitration Panel shall have authority to

16

*revised March 30, 2022*

require Releasors to implement a remedy that includes one or more of the actions specified in paragraph (c) sufficient to hold Released Entities fully harmless. In the event that the panel's actions do not result in Released Entities being held fully harmless, Janssen shall have a claim for breach of this Settlement Agreement by Releasors, with the remedy being payment of sufficient funds to hold Janssen harmless from the Claim-Over. For the avoidance of doubt, the prior sentence does not limit or eliminate any other remedy that Janssen may have.

5.      To the extent that the Claim-Over is based on a contractual indemnity, the obligations under subsection IV.B.4 shall extend solely to a Non-Party Covered Conduct Claim against a pharmacy, clinic, hospital or other purchaser or dispenser of Products, a manufacturer that sold Products, a consultant, and/or a pharmacy benefit manager or other third-party payor. Janssen shall notify the Settling States, to the extent permitted by applicable law, in the event that any of these types of Non-Released Entities asserts a Claim-Over arising out of contractual indemnity against it.

C.      *General Release*. In connection with the releases provided for in the Agreement, each Settling State (for itself and its Releasors) and Participating Subdivision expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may thereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Settling State (for itself and its Releasors) and Participating Subdivision hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Settling States' decision to enter into the Agreement or the Participating Subdivisions' decision to participate in the Agreement.

D.      *Res Judicata*. Nothing in the Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in the Agreement, and/or any Consent Judgment or other judgment entered on the Agreement, gives rise to under applicable law.

*revised March 30, 2022*

E.     *Representation and Warranty.* The signatories hereto on behalf of their respective Settling States and its Participating Subdivisions expressly represent and warrant that they will obtain on or before the Effective Date (or have obtained) the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) their respective Settling States; (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts; (3) any of their respective Settling State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license; and (4) any Participating Subdivisions. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Also, for the purposes of clause (3), a release from a State's Governor is sufficient to demonstrate that the appropriate releases have been obtained.

F.     *Effectiveness.* The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors. Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the Settlement Fund or any portion thereof, or by the enactment of future laws, or by any seizure of the Settlement Fund or any portion thereof.

G.     *Cooperation.* Releasors (i) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (ii) will reasonably cooperate with and not oppose any effort by a Released Entity to secure the prompt dismissal of any and all Released Claims.

H.     *Non-Released Claims.* Notwithstanding the foregoing or anything in the definition of Released Claims, the Agreement does not waive, release or limit any criminal liability, Claims for any outstanding liability under any tax or securities law, Claims against parties who are not Released Entities, Claims by private individuals and any claims arising under the Agreement for enforcement of the Agreement.

## V.     <u>Monetary Relief and Payments</u>

A.     **Structure of Payments**

1.     All payments under this Section V shall be made into the Settlement Fund, except that where specified, they shall be made into the Settlement Fund Escrow. The Settlement Fund shall be allocated and used only as specified in Section VI.

2.     Janssen shall pay into the Settlement Fund the sum of Four Billion, Five Hundred Thirty-Four Million, Six Hundred Fifteen Thousand, Three Hundred Eighty-Five Dollars ($4,534,615,385) minus (1) the offsets and credits specified in subsection

*revised March 30, 2022*

## EXHIBIT J

### Janssen Predecessors and Former Affiliates

The following includes a non-exclusive list of Janssen's predecessors and former affiliates:

1. Janssen Pharmaceutica, Inc.
2. Janssen Pharmaceutica N.V.
3. Janssen-Cilag Manufacturing, LLC
4. Janssen Global Services, LLC
5. Janssen Ortho LLC
6. Janssen Products, LP
7. Janssen Research & Development, LLC
8. Janssen Supply Group, LLC
9. Janssen Scientific Affairs, LLC
10. JOM Pharmaceutical Services, Inc.
11. OMJ Pharmaceuticals, Inc.
12. Ortho-McNeil Finance Co.
13. Ortho-McNeil Pharmaceutical
14. Ortho-McNeil-Janssen Pharmaceuticals
15. Ortho-McNeil Pharmaceutical Services Division
16. Ortho-McNeil Neurologic
17. Patriot Pharmaceuticals, LLC
18. Pricara, Ortho-McNeil-Janssen Pharmaceuticals
19. Alza Corp.
20. Alza Development Corp.
21. Janssen Supply Chain, Alza Corp.
22. Noramco, Inc.
23. Tasmanian Alkaloids PTY LTD.

*revised March 30, 2022*

*SETTLED DEFENDANTS' MOTION TO DISMISS*
*CLAIMS FILED BY NON-PARTICIPATING KENTUCKY*
*SUBDIVISION AS RELEASED BY STATUTE*

# EXHIBIT 2

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN LEWIS

**COMMONWEALTH OF KENTUCKY**
**FRANKLIN CIRCUIT COURT**
**DIVISION II**
**CIVIL ACTION NO. 18-CI-00056**
*Electronically Filed*

COMMONWEALTH OF KENTUCKY, *ex. rel.*                         PLAINTIFF
DANIEL CAMERON, ATTORNEY GENERAL,


     v.


MCKESSON CORPORATION,
CARDINAL HEALTH, INC.,
AMERISOURCEBERGEN CORPORATION,
AND H.D. SMITH, LLC                                        DEFENDANTS


**COVER SHEET TO**

**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE**


     The Final Consent Judgment and Dismissal with Prejudice attached hereto has been agreed to by the Commonwealth of Kentucky, ex. rel. Daniel Cameron, Attorney General, and McKesson Corporation, Cardinal Health, Inc., AmerisourceBergen Corporation, and H.D. Smith, LLC, together with the subsidiaries thereof (collectively, the "Settling Distributors," and each a "Settling Distributor"). The Commonwealth and the Settling Distributors request that the Court enter the attached Final Consent Judgment and Dismissal with Prejudice.

     In relation to the filing of the Final Consent Judgment and Dismissal with Prejudice in the applicable court in the Commonwealth of Kentucky as required by statute, the Settling Distributors waive notice and service of process regarding the filing of the Final Consent Judgment and Dismissal with Prejudice and do not object to the court's approval and entry of the Final Consent Judgment and Dismissal with Prejudice. The Settling Distributors also do not object to the

OO : 000001 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN LEWIS

submission and presentation of this Final Consent Judgment and Dismissal with Prejudice by the Kentucky Attorney General's Office to the court.

WHEREFORE, the Court being well and sufficiently advised in the premises, and the Court having jurisdiction and venue for the purposes of entering and enforcing this judgment, the Final Consent Judgment and Dismissal with Prejudice attached hereto is hereby approved and the above referenced Civil Action is dismissed with prejudice.

The Office of the Attorney General shall receive fifteen percent (15%) of each payment referenced in KRS 15.293(3)(a) as its reasonable costs of investigation and litigation per KRS 48.005.

/s/ HON. THOMAS DAWSON WINGATE
electronically signed
8/18/2022 12:46:11 PM ET

DATE: _____

JUDGE, FRANKLIN CIRCUIT COURT

2

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN LEWIS

**COMMONWEALTH OF KENTUCKY**
**FRANKLIN CIRCUIT COURT**
**DIVISION II**
**CIVIL ACTION NO. 18-CI-00056**
*Electronically Filed*

COMMONWEALTH OF KENTUCKY, *ex. rel.*                    PLAINTIFF
DANIEL CAMERON, ATTORNEY GENERAL,
    v.

MCKESSON CORPORATION,
CARDINAL HEALTH, INC.,
AMERISOURCEBERGEN CORPORATION,
H.D. SMITH WHOLESALE DRUG COMPANY
AND H.D. SMITH, LLC                                    DEFENDANTS


**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE**


The Commonwealth of Kentucky ("*Commonwealth*") and McKesson Corporation,

Cardinal Health, Inc., and AmerisourceBergen Corporation, AmerisourceBergen Drug

Corporation, H.D. Smith Wholesale Drug Company, and H.D. Smith, LLC, together with the

subsidiaries thereof (collectively, the "*Settling Distributors*," and each a "*Settling Distributor*")

(together with the Commonwealth, the "*Parties*," and each a "*Party*") have entered into a

consensual resolution of the above-captioned litigation (the "*Action*") pursuant to a settlement

agreement entitled Distributor Settlement Agreement, dated as of July 21, 2021 (as subsequently

updated) (the "*Agreement*"), a copy of which is attached hereto as Exhibit A.  The Agreement

shall become effective by its terms upon the entry of this Final Consent Judgment (the

"*Judgment*") by the Court without trial or adjudication of any contested issue of fact or law, and

without finding or admission of wrongdoing or liability of any kind.

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN LEWIS

**RECITALS:**

1.　　Each Party warrants and represents that it engaged in arm's-length negotiations in good faith.  In hereby executing the Agreement, the Parties intend to effect a good-faith settlement.

2.　　The Commonwealth has determined that the Agreement is in the public interest.

3.　　The Settling Distributors deny the allegations against them and that they have any liability whatsoever to the Commonwealth, its Subdivisions, and/or (a) any of the Commonwealth's or Subdivisions' departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public.

4.　　The Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation.

5.　　The Parties agree to the entry of the injunctive relief terms pursuant to Exhibit P of the Agreement.

6.　　Therefore, without any admission of liability or wrongdoing by the Settling Distributors or any other Released Entities (as defined in the Agreement), the Parties now mutually consent to the entry of this Judgment and agree to dismissal of the claims with prejudice pursuant to the terms of the Agreement to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

2

OO : 000004 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN LEWIS

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

In consideration of the mutual promises, terms, and conditions set forth in the Agreement, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between the Settling Distributors and the Commonwealth, and adjudicated by the Court, as follows:

1.     The foregoing Recitals are incorporated herein and constitute an express term of this Judgment.

2.     The Parties have entered into a full and final settlement of all Released Claims of Releasors against the Settling Distributors (including but not limited to the Commonwealth) and the Released Entities pursuant to the terms and conditions set forth in the Agreement.

3.     The "Definitions" set forth in Section I of the Agreement are incorporated by reference into this Judgment. The Commonwealth is a "Settling State" within the meaning of the Agreement. Unless otherwise defined herein, capitalized terms in this Judgment shall have the same meaning given to them in the Agreement.

4.     The Parties agree that the Court has jurisdiction over the subject matter of the Action and over the Parties with respect to the Action and this Judgment. This Judgment shall not be construed or used as a waiver of any jurisdictional defense the Settling Distributors or any other Released Entity may raise in any other proceeding.

5.     The Court finds that the Agreement was entered into in good faith.

6.     The Court finds that entry of this Judgment is in the public interest and reflects a negotiated settlement agreed to by the Parties. The Action is dismissed with prejudice, subject to a retention of jurisdiction by the Court as provided herein and in the Agreement.

7.     By this Judgment, the Agreement is hereby approved by the Court, and the Court hereby adopts the Agreement's terms as its own determination of this matter and the Parties' respective rights and obligations.

3

OO : 000005 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN .LEWIS

8.      The Court shall have authority to resolve disputes identified in Section VI.F.1 of the Agreement, governed by the rules and procedures of the Court.

9.      The Parties have satisfied the Condition to Effectiveness of Agreement set forth in Section VIII of the Agreement and the Release set forth in Sections XI.A, F, and G of the Agreement, as follows:

a.      The Attorney General of the Commonwealth exercised the fullest extent of his or her powers to release the Settling Distributors and all other Released Entities from all Released Claims pursuant to the release attached hereto as Exhibit B (the "*AG Release*").

b.      The Settling Distributors have determined that there is sufficient State participation and sufficient resolution of the Claims of the Litigating Subdivisions in the Settling States to proceed with the Agreement.

c.      The Participation Form for each Initial Participating Subdivision in the Commonwealth has been delivered to the Settling Distributors.  As stated in the Participation Form, and for the avoidance of doubt, nothing in the Participation Form executed by the Participating Subdivisions is intended to modify in any way the terms of the Agreement to which the Participating Subdivisions agree.  As stated in the Participation Form, to the extent the executed version of the Participation Form differs from the Agreement in any respect, the Agreement controls.

d.      Pursuant to Section VIII.B of the Agreement, each Participating Subdivision in the Commonwealth is dismissing with prejudice any Released Claims that it has filed against the Settling Distributors and the Released Entities.

10.     Release.  The Parties acknowledge that the AG Release, which is incorporated by reference herein, is an integral part of this Judgment.  Pursuant to the Agreement and the AG Release and without limitation and to the maximum extent of the power of the Commonwealth's Attorney General, the Settling Distributors and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (a) the Commonwealth and its Participating Subdivisions and any of their departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including the Commonwealth's Attorney General, and any person in his or her official capacity whether elected or appointed to

4

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN LEWIS

serve any of the foregoing, and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts in the Commonwealth, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the Commonwealth or any Subdivision in the Commonwealth, whether or not any of them participate in the Agreement. Pursuant to the Agreement and the AG Release and to the maximum extent of the Commonwealth's power, the Settling Distributors and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the Commonwealth, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, and (3) any of the Commonwealth's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the Commonwealth's Governor. Further, the provisions set forth in Section XI of the Agreement are incorporated by reference into this Judgment as if fully set forth herein. The Parties acknowledge, and the Court finds, that those provisions are an integral part of the Agreement and this Judgment, and shall govern the rights and obligations of all participants in the settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected parties and approved by the Court.

OO - 000007 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN .LEWIS

11.    <u>Release of Unknown Claims.</u>  The Commonwealth expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

12.    The Commonwealth may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the Commonwealth expressly waived and fully, finally, and forever settled, released and discharged, through the Agreement and AG Release, any and all Released Claims that may exist as of the Effective Date but which the Commonwealth does not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would have materially affected the Commonwealth's decision to enter into the Agreement.

13.    Pursuant to KRS 15.293(4)(d), each county, consolidated local government, urban-county government, city, political subdivision, and public agency, as that term is defined in KRS 61.805(2), of the Commonwealth is by operation of law deemed to have released its claims against the Settling Distributors and their affiliates and subsidiaries to the extent referenced in the Agreement and this Judgment.

14.    <u>Costs and Fees.</u>  The Parties will bear their own costs and attorneys' fees except as otherwise provided in the Agreement.

15.    <u>No Admission of Liability</u>.  The Settling Distributors are consenting to this Judgment solely for the purpose of effectuating the Agreement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or

OO : 000008 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN .LEWIS

regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which the Settling Distributors expressly deny. None of the Settling Distributors or any other Released Entity admits that it caused or contributed to any public nuisance, and none of the Settling Distributors or any other Released Entity admits any wrongdoing that was or could have been alleged by the Commonwealth, its Participating Subdivisions, or any other person or entity. No part of this Judgment shall constitute evidence of any liability, fault, or wrongdoing by the Settling Distributors or any other Released Entity. The Parties acknowledge that payments made under the Agreement are not a fine, penalty, or payment in lieu thereof and are properly characterized as described in Section V.F of the Agreement.

16. <u>No Waiver</u>. This Judgment is entered based on the Agreement without trial or adjudication of any contested issue of fact or law or finding of liability of any kind. This Judgment shall not be construed or used as a waiver of any Settling Distributor's right, or any other Released Entity's right, to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Judgment. Notwithstanding the foregoing, the Commonwealth may enforce the terms of this Judgment as expressly provided in the Agreement.

17. <u>No Private Right of Action</u>. This Judgment is not intended for use by any third party for any purpose, including submission to any court for any purpose, except pursuant to Section VI.A of the Agreement. Except as expressly provided in the Agreement, no portion of the Agreement or this Judgment shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Entity. The Commonwealth shall allow Participating Subdivisions in the Commonwealth to notify it of any perceived violations of the Agreement or

7

OO : 000009 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN.LEWIS

this Judgment.  No Settling State, including the Commonwealth, may assign or otherwise convey any right to enforce any provision of the Agreement.

18.  <u>Admissibility</u>.  It is the intent of the Parties that this Judgment not be admissible in other cases against the Settling Distributors or binding on the Settling Distributors in any respect other than in connection with the enforcement of this Judgment or the Agreement.  For the avoidance of doubt, nothing herein shall prohibit a Settling Distributor from entering this Judgment or the Agreement into evidence in any litigation or arbitration concerning (1) a Settling Distributor's right to coverage under an insurance contract or (2) the enforcement of the releases provided for by the Agreement and this Judgment.

19.  <u>Preservation of Privilege</u>.  Nothing contained in the Agreement or this Judgment, and no act required to be performed pursuant to the Agreement or this Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

20.  <u>Mutual Interpretation</u>.  The Parties agree and stipulate that the Agreement was negotiated on an arm's-length basis between parties of equal bargaining power and was drafted jointly by counsel for each Party.  Accordingly, the Agreement is incorporated herein by reference and shall be mutually interpreted and not construed in favor of or against any Party, except as expressly provided for in the Agreement.

21.  <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction of the Parties for the limited purpose of the resolution of disputes identified in Section VI.F.1 of the Agreement.  The Court shall have jurisdiction over Participating Subdivisions in the Commonwealth for the limited purposes identified in the Agreement.

OO : 000010 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN .LEWIS

22.  <u>Successors and Assigns</u>.  This Judgment is binding on each of the Settling Distributor's successors and assigns.

23.  <u>Modification</u>.  This Judgment shall not be modified (by the Court, by any other court, or by any other means) without the consent of the Commonwealth and the Settling Distributors, or as provided for in Section XIV.U of the Agreement.

APPROVAL BY COURT

APPROVED FOR FILING and SO ORDERED this _____ day of _____, 2022.

/s/ HON. THOMAS DAWSON WINGATE
electronically signed
8/18/2022 12:46:34 PM ET

Judge

**APPROVED, AGREED TO AND PRESENTED BY:**

<table>
<tr>
<td>

_/s/ J. Christian Lewis_____
Victor Maddox
Christopher Thacker
J. Christian Lewis
Stephen B. Humphress
Office of the Attorney General
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
Phone: (502) 696-5300
victor.maddox@ky.gov
christopher.thacker@ky.gov
christian.lewis@ky.gov
steve.humphress@ky.gov

_Attorneys for the Commonwealth of Kentucky_

_/s/ M. Jane Brannon_____
M. Jane Brannon
JACKSON KELLY PLLC
175 East Main Street
Lexington, KY 40507
Phone: (859) 288-2805
mjbrannon@jacksonkelly.com

_Counsel for AmerisourceBergen Drug Corporation_

</td>
<td>

_/s/ Carol Dan Browning_____
Carol Dan Browning
Jeffrey S. Moad
Carolyn Purcell Michener
STITES & HARBISON, PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352
Telephone: (502) 587-3400
cbrowning@stites.com
jmoad@stites.com
cmichener@stites.com

Mark R. Overstreet
STITES & HARBISON, PLLC
421 West Main Street
Frankfort, KY 40602-0634
Telephone: (502) 223-3477
moverstreet@stites.com

_Attorneys for McKesson Corporation_

</td>
</tr>
</table>

9

OO · : 000011 of 000012

NOT ORIGINAL DOCUMENT
08/18/2022 01:14:25 PM
CHRISTIAN.LEWIS

/s/ W. Kennedy Simpson
W. Kennedy Simpson
Allison O. Wildman
THOMPSON MILLER & SIMPSON PLC
734 West Main Street
Suite 400
Louisville, Kentucky 40202
Phone: (502) 585-9900
ksimpson@tmslawplc.com
awildman@tmslawplc.com

*Attorneys for H. D. Smith Wholesale Drug*
*Company and H. D. Smith, LLC*

/s/ Steven B. Loy
Steven B. Loy
Monica H. Braun
Stoll Keenon Ogden PLLC
300 West Vine Street, Suite 2100
Lexington, KY 40507-1801
Phone: (859) 231-3000
steven.loy@skofirm.com
monica.braun@skofirm.com

*Attorneys for Cardinal Health*

10

# EXHIBIT A

# DISTRIBUTOR SETTLEMENT AGREEMENT

FINAL AGREEMENT 3.25.22
EXHIBIT E AS OF 5.27.22;
EXHIBITS G AND I AS OF 02.22.23

# DISTRIBUTOR SETTLEMENT AGREEMENT

# Table of Contents

**Page**

I.      Definitions................................................................................................1

II.     Participation by States and Condition to Preliminary Agreement ....................................13

III.    Injunctive Relief........................................................................................13

IV.     Settlement Payments ....................................................................................13

V.      Allocation and Use of Settlement Payments............................................................28

VI.     Enforcement............................................................................................34

VII.    Participation by Subdivisions .........................................................................40

VIII.   Condition to Effectiveness of Agreement and Filing of Consent Judgment ...................42

IX.     Additional Restitution ..................................................................................44

X.      Plaintiffs' Attorneys' Fees and Costs ................................................................44

XI.     Release ................................................................................................44

XII.    Later Litigating Subdivisions .........................................................................49

XIII.   Reductions/Offsets......................................................................................53

XIV.    Miscellaneous ..........................................................................................54

EXHIBIT A Alleged Harms ........................................................................................A-1

EXHIBIT B Enforcement Committee Organizational Bylaws.............................................. B-1

EXHIBIT C Litigating Subdivisions List .......................................................................... C-1

EXHIBIT D Later Litigating Subdivision Suspension and Offset Determinations.................... D-1

EXHIBIT E List of Opioid Remediation Uses ................................................................... E-1

EXHIBIT F List of States and Overall Allocation Percentages .............................................F-1

EXHIBIT G Subdivisions Eligible to Receive Direct Allocations from the Subdivision
        Fund and Default Subdivision Fund Allocation Percentages ...............................G-1

EXHIBIT H Participation Tier Determination[1] ..................................................................H-1

EXHIBIT I Primary Subdivisions...................................................................................I-1

FINAL AGREEMENT 3.25.22
EXHIBIT OAS OF 5.27.22;
EXHIBITS G AND I AS OF 02.22.23

EXHIBIT J Settling Distributors' Subsidiaries, Joint Ventures, and Predecessor Entities ......... J-1

EXHIBIT K Subdivision Settlement Participation Form ........................................................... K-1

EXHIBIT L Settlement Fund Administrator ............................................................................ L-1

EXHIBIT M Settlement Payment Schedule ........................................................................... M-1

EXHIBIT N Additional Restitution Amount Allocation ......................................................... N-1

EXHIBIT O Adoption of a State-Subdivision Agreement ....................................................... O-1

EXHIBIT P Injunctive Relief .................................................................................................. P-1

EXHIBIT Q Illustrative Examples of Prepayments................................................................. Q-1

EXHIBIT R Agreement on Attorneys' Fees, Expenses and Costs .......................................... R-1

EXHIBIT S Agreement on the State Outside Counsel Fee Fund ............................................. S-1

EXHIBIT T Agreement on the State Cost Fund Administration............................................... T-1

EXHIBIT U ABC IRS Form 1098-F ....................................................................................... U-1

EXHIBIT V Cardinal IRS Form 1098-F ................................................................................. V-1

EXHIBIT W McKesson IRS Form 1098-F ............................................................................. W-1

EXHIBIT X Severity Factors.................................................................................................. X-1

## DISTRIBUTOR SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of July 21, 2021 (the "*Agreement*"), sets forth the terms of settlement between and among the Settling States, the Settling Distributors, and the Participating Subdivisions (as those terms are defined below).  Upon satisfaction of the conditions set forth in <u>Section II</u> and <u>Section VIII</u>, this Agreement will be binding on all Settling States, Settling Distributors, and Participating Subdivisions.  This Agreement will then be filed as part of Consent Judgments in the respective courts of each of the Settling States, pursuant to the terms set forth in <u>Section VIII</u>.

**I.      Definitions**

        For all sections of this Agreement except <u>Exhibit E</u> and <u>Exhibit P</u>, the following definitions apply:

        A.      "*Abatement Accounts Fund.*"  The component of the Settlement Fund described in <u>Section V.E</u>.

        B.      "*Additional Restitution Amount*."  The amount available to Settling States listed on <u>Exhibit N</u> totaling $282,692,307.70.

        C.      "*Agreement.*"  This agreement, as set forth above.  For the avoidance of doubt, this Agreement is inclusive of all exhibits.

        D.      "*Alleged Harms*."  The alleged past, present, and future financial, societal, and public nuisance harms and related expenditures arising out of the alleged misuse and abuse of Products, non-exclusive examples of which are described in the documents listed on <u>Exhibit A</u>, that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, death, and other related diseases and disorders, and that have allegedly been caused by the Settling Distributors.

        E.      "*Allocation Statute*."  A state law that governs allocation, distribution, and/or use of some or all of the Settlement Fund amounts allocated to that State and/or its Subdivisions. In addition to modifying the allocation set forth in <u>Section V.D.2</u>, an Allocation Statute may, without limitation, contain a Statutory Trust, further restrict expenditures of funds, form an advisory committee, establish oversight and reporting requirements, or address other default provisions and other matters related to the funds.  An Allocation Statute is not required to address all three (3) types of funds comprising the Settlement Fund or all default provisions.

        F.      "*Annual Payment.*"  The total amount payable to the Settlement Fund Administrator by the Settling Distributors on the Payment Date each year, as calculated by the Settlement Fund Administrator pursuant to <u>Section IV.B.1.e</u>.  For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to <u>Section X</u>.

        G.      "*Appropriate Official*."  As defined in <u>Section XIV.F.3</u>.

        H.      "*Bankruptcy Code*."  Title 11 of the United States Code, 11 U.S.C. § 101, et seq.

I.        "*Bar*." Either: (1) a law barring Subdivisions in a State from maintaining Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and the exercise of such authority in full) or (2) a ruling by the highest court of the State (or, in a State with a single intermediate court of appeals, the intermediate court of appeals when not subject to further review by the highest court of the State) setting forth the general principle that Subdivisions in the State may not maintain any Released Claims against Released Entities, whether on the ground of this Agreement (or the release in it) or otherwise. For the avoidance of doubt, a law or ruling that is conditioned or predicated upon payment by a Released Entity (apart from the Annual Payments by Settling Distributors under this Agreement) shall not constitute a Bar.

J.        "*Case-Specific Resolution*." Either: (1) a law barring the Subdivision at issue from maintaining any Released Claims against any Released Entities (either through a direct bar or through a grant of authority to release claims and the exercise of such authority in full); or (2) a ruling by a court of competent jurisdiction over the Subdivision at issue that the Subdivision may not maintain any Released Claims at issue against any Released Entities, whether on the ground of this Agreement (or the release in it) or otherwise. For the avoidance of doubt, a law or ruling that is conditioned or predicated upon payment by a Released Entity (apart from the Annual Payments by Settling Distributors under this Agreement) shall not constitute a Case-Specific Resolution.

K.        "*Claim*." Any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, *parens patriae* claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including, but not limited to, any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, abatement, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

L.        "*Claim-Over*." A Claim asserted by a Non-Released Entity against a Released Entity on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.

M.        "*Compensatory Restitution Amount*." The aggregate amount paid or incurred by the Settling Distributors hereunder other than amounts paid as attorneys' fees and costs or identified pursuant to <u>Section V.B.2</u> as being used to pay attorneys' fees, investigation costs or litigation costs.

N.    "*Consent Judgment.*"  A state-specific consent judgment in a form to be agreed by the Settling States and the Settling Distributors prior to the Initial Participation Date that, among other things, (1) approves this Agreement and (2) provides for the release set forth in Section XI.A, including the dismissal with prejudice of any Released Claims that the Settling State has brought against Released Entities.

O.    "*Covered Conduct.*"  Any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Reference Date (and any past, present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (1) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to, any Product, or any system, plan, policy or advocacy relating to any Product or class of Products, including, but not limited to, any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (2) the characteristics, properties, risks, or benefits of any Product; (3) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders placed with any Released Entity; or (4) diversion control programs or suspicious order monitoring; *provided*, *however*, that as to any Claim that a Releasor has brought or could bring, Covered Conduct does not include non-compliance with statutory or administrative supply security standards concerning cleanliness of facilities or stopping counterfeit products, so long as such standards apply to the storage and distribution of both controlled and non-controlled pharmaceuticals.

P.    "*Designated State.*"  New York.

Q.    "*Effective Date.*"  The date sixty (60) calendar days after the Reference Date.

R.    "*Enforcement Committee.*"  A committee consisting of representatives of the Settling States and of the Participating Subdivisions.  Exhibit B contains the organizational bylaws of the Enforcement Committee. Notice pursuant to Section XIV.Q shall be provided when there are changes in membership or contact information.

S.    "*Final Order.*"  An order or judgment of a court of competent jurisdiction with respect to the applicable subject matter (1) which has not been reversed or superseded by a modified or amended order, is not currently stayed, and as to which any right to appeal or seek certiorari, review, reargument, stay, or rehearing has expired, and as to which no appeal or petition for certiorari, review, reargument, stay, or rehearing is pending, or (2) as to which an appeal has been taken or petition for certiorari, review, reargument, stay, or rehearing has been filed and (a) such appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which certiorari, review, reargument, stay, or rehearing was sought, or (b) the time to appeal further or seek certiorari, review, reargument, stay, or rehearing has expired and no such further appeal or petition for certiorari, review, reargument, stay, or rehearing is pending.

T.        "*Global Settlement Abatement Amount.*"  The abatement amount of $19,045,384,616.

U.        "*Global Settlement Amount.*"  The Global Settlement Amount is $21 billion, which shall be divided into the Global Settlement Abatement Amount, the Additional Restitution Amount, and the Global Settlement Attorney Fee Amount.

V.        "*Global Settlement Attorney Fee Amount.*"  The attorney fee amount of $1,671,923,077.

W.        "*Incentive Payment A.*"  The incentive payment described in Section IV.F.1.

X.        "*Incentive Payment B.*"  The incentive payment described in Section IV.F.2.

Y.        "*Incentive Payment C.*"  The incentive payment described in Section IV.F.3.

Z.        "*Incentive Payment D.*"  The incentive payment described in Section IV.F.4.

AA.        "*Incentive Payment Final Eligibility Date.*"  With respect to a Settling State, the date that is the earlier of (1) the fifth Payment Date, (2) the date of completion of opening statements in a trial of any action brought by a Subdivision in that State that includes a Released Claim against a Released Entity when such date is more than two (2) years after the Effective Date, or (3) two (2) years after the Effective Date in the event a trial of an action brought by a Subdivision in that State that includes a Released Claim against a Released Entity began after the Initial Participation Date but before two (2) years after the Effective Date.

BB.        "*Initial Participating Subdivision.*"  A Subdivision that meets the requirements set forth in Section VII.D.

CC.        "*Initial Participation Date.*"  January 26, 2022, as extended by written agreement of the Settling Distributors and the Enforcement Committee on December 22, 2021.

DD.        "*Injunctive Relief Terms.*"  The terms described in Section III and set forth in Exhibit P.

EE.        "*Later Litigating Subdivision.*"  A Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that:  (1) first files a lawsuit bringing a Released Claim against a Released Entity after the Trigger Date; or (2) adds a Released Claim against a Released Entity after the Trigger Date to a lawsuit brought before the Trigger Date that, prior to the Trigger Date, did not include any Released Claims against a Released Entity; or (3) (a) was a Litigating Subdivision whose Released Claims against Released Entities were resolved by a legislative Bar or legislative Case-Specific Resolution as of the Trigger Date, (b) such legislative Bar or legislative Case-Specific Resolution is subject to a Revocation Event after the Trigger Date, and (c) the earlier of the date of completion of opening statements in a trial in an action brought by a Subdivision in that State that includes a Released Claim against a Released Entity or one hundred eighty (180) days from the Revocation Event passes without a Bar or Case-Specific Resolution being implemented as to that Litigating Subdivision or the Litigating Subdivision's

Released Claims being dismissed; or (4) (a) was a Litigating Subdivision whose Released Claims against Released Entities were resolved by a judicial Bar or judicial Case-Specific Resolution as of the Trigger Date, (b) such judicial Bar or judicial Case-Specific Resolution is subject to a Revocation Event after the Trigger Date, and (c) such Litigating Subdivision takes any action in its lawsuit asserting a Released Claim against a Released Entity other than seeking a stay or dismissal.

FF.    "*Later Participating Subdivision.*"  A Participating Subdivision that is not an Initial Participating Subdivision, but meets the requirements set forth in Section VII.E.

GG.    "*Litigating Subdivision.*"  A Subdivision (or Subdivision official) that brought any Released Claim against any Released Entity prior to the Trigger Date; *provided*, *however*, that a Subdivision (or Subdivision official) that is a Prior Litigating Subdivision shall not be considered a Litigating Subdivision.  Exhibit C is an agreed list of all Litigating Subdivisions. Exhibit C will be updated (including with any corrections) periodically, and a final version of Exhibit C will be attached hereto as of the Reference Date.

HH.    "*National Arbitration Panel.*"  The panel comprised as described in Section VI.F.2.b.

II.    "*National Disputes.*"  As defined in Section VI.F.2.a.

JJ.    "*Net Abatement Amount.*"  The Global Settlement Abatement Amount as reduced by the Tribal/W. Va. Subdivision Credit.

KK.    "*Net Settlement Prepayment Amount*."  As defined in Section IV.J.1.

LL.    "*Non-Litigating Subdivision.*"  Any Subdivision that is neither a Litigating Subdivision nor a Later Litigating Subdivision.

MM.    "*Non-Participating Subdivision.*"  Any Subdivision that is not a Participating Subdivision.

NN.    "*Non-Party Covered Conduct Claim.*"  A Claim against any Non-Released Entity involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity).

OO.    "*Non-Party Settlement.*"  A settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Entity.

PP.    "*Non-Released Entity.*"  An entity that is not a Released Entity.

QQ.    "*Non-Settling State.*"  Any State that is not a Settling State.

RR.    "*Offset Cap.*"  The per-State dollar amount which the dollar-for-dollar offset described in Section XII.A cannot exceed in a Payment Year, to be calculated by multiplying the amount of the relevant Annual Payment apportioned to the State and to its Subdivisions for that Payment Year by the percentage for the applicable Participation Tier as set forth in Exhibit D.

SS. "*Opioid Remediation*."  Care, treatment, and other programs and expenditures (including reimbursement for past such programs or expenditures[1] except where this Agreement restricts the use of funds solely to future Opioid Remediation) designed to (1) address the misuse and abuse of opioid products, (2) treat or mitigate opioid use or related disorders, or (3) mitigate other alleged effects of, including on those injured as a result of, the opioid epidemic.  Exhibit E provides a non-exhaustive list of expenditures that qualify as being paid for Opioid Remediation.  Qualifying expenditures may include reasonable related administrative expenses.

TT. "*Opioid Tax*."  Any tax, assessment, license fee, surcharge or any other fee (other than a fixed prospective excise tax or similar tax or fee that has no restriction on pass-through) imposed by a State on a Settling Distributor on the sale, transfer or distribution of opioid products; *provided*, *however*, that neither the Excise Tax on sale of Opioids, Article 20-D of New York's Tax Law nor the Opioid Stewardship Act, Article 33, Title 2-A of New York's Public Health Law shall be considered an Opioid Tax for purposes of this Agreement.

UU. "*Overall Allocation Percentage*."  A Settling State's percentage as set forth in Exhibit F.  The aggregate Overall Allocation Percentages of all States (including Settling States and Non-Settling States) shall equal one hundred percent (100%).

VV. "*Participating Subdivision*."  Any Subdivision that meets the requirements for becoming a Participating Subdivision under Section VII.B and Section VII.C.  Participating Subdivisions include both Initial Participating Subdivisions and Later Participating Subdivisions.

WW. "*Participation Tier*."  The level of participation in this Agreement as determined pursuant to Section VIII.C using the criteria set forth in Exhibit H.

XX. "*Parties*."  The Settling Distributors and the Settling States (each, a "*Party*").

YY. "*Payment Date*."  The date on which the Settling Distributors make the Annual Payment pursuant to Section IV.B.

ZZ. "*Payment Year*."  The calendar year during which the applicable Annual Payment is due pursuant to Section IV.B.  Payment Year 1 is 2021, Payment Year 2 is 2022 and so forth.  References to payment "*for a Payment Year*" mean the Annual Payment due during that year.  References to eligibility "*for a Payment Year*" mean eligibility in connection with the Annual Payment due during that year.

AAA. "*Preliminary Agreement Date*."  The date on which the Settling Distributors are to inform the Settling States of their determination whether the condition in Section II.B has been satisfied.  The Preliminary Agreement Date shall be no more than fourteen (14) calendar days after the end of the notice period to States, unless it is extended by written agreement of the Settling Distributors and the Enforcement Committee.

BBB. "*Prepayment Notice*."  As defined in Section IV.J.1.

---

[1] Reimbursement includes amounts paid to any governmental entities for past expenditures or programs.

CCC. "*Primary Subdivision.*" A Subdivision that is a General Purpose Government (including, but not limited to, a municipality, county, county subdivision, city, town, township, parish, village, borough, gore, or any other entities that provide municipal-type government) with population over 10,000; *provided*, *however*, that as used in connection with Incentive Payment C, the population threshold is 30,000. Attached as <u>Exhibit I</u> is an agreed list of the Primary Subdivisions in each State.

DDD. "*Prior Litigating Subdivision*" A Subdivision (or Subdivision official) that brought any Released Claim against any Released Entity prior to the Trigger Date and all such Released Claims were separately settled or finally adjudicated prior to the Trigger Date; *provided*, *however*, that if the final adjudication was pursuant to a Bar, such Subdivision shall not be considered a Prior Litigating Subdivision. Notwithstanding the prior sentence, the Settling Distributors and the Settling State of the relevant Subdivision may agree in writing that the Subdivision shall not be considered a Prior Litigating Subdivision.

EEE. "*Product.*" Any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is: (1) an opioid or opiate, as well as any product containing any such substance; or (2) benzodiazepine, carisoprodol, or gabapentin; or (3) a combination or "cocktail" of chemical substances prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. "Product" shall include, but is not limited to, any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, diazepam, estazolam, quazepam, alprazolam, clonazepam, oxazepam, flurazepam, triozolam, temazepam, midazolam, carisoprodol, gabapentin, or any variant of these substances or any similar substance. Notwithstanding the foregoing, nothing in this section prohibits a Settling State from taking administrative or regulatory action related to benzodiazepine (including, but not limited to, diazepam, estazolam, quazepam, alprazolam, clonazepam, oxazepam, flurazepam, triozolam, temazepam, and midazolam), carisoprodol, or gabapentin that is wholly independent from the use of such drugs in combination with opioids, *provided* such action does not seek money (including abatement and/or remediation) for conduct prior to the Effective Date.

FFF. "*Reference Date.*" The date on which the Settling Distributors are to inform the Settling States of their determination whether the condition in <u>Section VIII</u> has been satisfied. The Reference Date shall be no later than thirty (30) calendar days after the Initial Participation Date, unless it is extended by written agreement of the Settling Distributors and the Enforcement Committee.

GGG. "*Released Claims.*" Any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Reference Date. Without limiting the foregoing, Released Claims include any Claims that have been asserted against a Settling Distributor by any Settling State or Litigating Subdivision in any federal, state, or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of, or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding brought by a State, Subdivision, or Releasor (whether or not

such State, Subdivision, or Releasor has brought such action or proceeding).  Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to this Agreement, whether or not such claims relate to Covered Conduct.  The Parties intend that this term, "Released Claims," be interpreted broadly.  This Agreement does not release Claims by private individuals.  It is the intent of the Parties that Claims by private individuals be treated in accordance with applicable law.  Released Claims is also used herein to describe claims brought by a Later Litigating Subdivision or other non-party Subdivision that would have been Released Claims if they had been brought by a Releasor against a Released Entity.

HHH.　　"*Released Entities.*"  With respect to Released Claims, the Settling Distributors and (1) all past and present subsidiaries, divisions, predecessors, successors, and assigns (in each case, whether direct or indirect) of each Settling Distributor; (2) all past and present subsidiaries and divisions (in each case, whether direct or indirect) of any entity described in subsection (1); (3) the respective past and present officers, directors, members, trustees, and employees of any of the foregoing (each for actions that occurred during and related to their work for, or employment with, any of the Settling Distributors or the foregoing entities); (4) all past and present joint ventures (whether direct or indirect) of each Settling Distributor or its subsidiaries, including in any Settling Distributor or subsidiary's capacity as a participating member in such joint venture; (5) all direct or indirect parents and shareholders of the Settling Distributors (solely in their capacity as parents or shareholders of the applicable Settling Distributor with respect to Covered Conduct); and (6) any insurer of any Settling Distributor or any person or entity otherwise described in subsections (1)-(5) (solely in its role as insurer of such person or entity and subject to the last sentence of Section XI.C).  Any person or entity described in subsections (3)-(6) shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity.  For the avoidance of doubt, CVS Health Corp., Walgreens Boots Alliance, Inc., and Walmart Inc. (collectively, the "*Pharmacies*") are not Released Entities, nor are their direct or indirect past or present subsidiaries, divisions, predecessors, successors, assigns, joint ventures, shareholders, officers, directors, members, trustees, or employees (shareholders, officers, directors, members, trustees, and employees for actions related to their work for, employment with, or involvement with the Pharmacies) Released Entities.  Notwithstanding the prior sentence, any joint venture or past or present subsidiary of a Settling Distributor is a Released Entity, including any joint venture between a Settling Distributor or any Settling Distributor's subsidiary and a Pharmacy (or any subsidiary of a Pharmacy); *provided*, *however*, that any joint venture partner of a Settling Distributor or a Settling Distributor's subsidiary is not a Released Entity unless it falls within subsections (1)-(6) above.  Lists of Settling Distributors' subsidiaries, joint ventures, and predecessor entities are appended to this Agreement as Exhibit J.  With respect to joint ventures (including predecessor entities), only entities listed on Exhibit J are Released Entities.  With respect to wholly-owned subsidiaries (including predecessor entities), Exhibit J represents a good faith effort by the Settling Distributors to list all such entities, but any and all wholly-owned subsidiaries (including predecessor entities) of any Settling Distributor are Released Entities, whether or not they are listed on Exhibit J.  For the avoidance of doubt, any entity acquired, or joint venture entered into, by a Settling Distributor after the Reference Date is not a Released Entity.

III.　　"*Releasors*."  With respect to Released Claims, (1) each Settling State; (2) each Participating Subdivision; and (3) without limitation and to the maximum extent of the

5.      In the event that there is a post-Reference Date Revocation Event with respect to a Bar that was enacted in a Settling State prior to the Reference Date, then, on the next Payment Date that is at least one hundred eighty (180) calendar days after the Revocation Event, unless the Bar is reinstated or all Subdivisions affected by the Revocation Event become Participating Subdivisions within one hundred eighty (180) calendar days of the Revocation Event, the Participation Tier shall decrease – solely for the State in which the Revocation Event occurred – to the Participation Tier commensurate with the percentage of Litigating Subdivisions in that State that are Participating Subdivisions and the percentage of Non-Litigating Subdivisions that are both Primary Subdivisions and Participating Subdivisions, according to the criteria set forth in Exhibit G, except that the calculations shall be performed as to that State alone. For the avoidance of doubt and solely for the calculation in this subparagraph, the Settling States Column of Exhibit H shall play no role.  This is the sole circumstance in which one Settling State will have a different Participation Tier than other Settling States.

6.      The redetermination of the Participation Tier under Section VIII.C.2 shall not affect payments already made or suspensions, offsets, or reductions already applied.

## IX.      Additional Restitution

A.      *Additional Restitution Amount.*  Pursuant to the schedule set forth in Exhibit M and subject to the reduction specified in Section IX.B, the Settling Distributors shall pay an Additional Restitution Amount to the Settling States listed in Exhibit N.  Such funds shall be paid, on the schedule set forth on Exhibit M, on the Payment Date for each relevant Payment Year to such Settling States as allocated by the Settlement Fund Administrator pursuant to Exhibit N.

B.      *Reduction of Additional Restitution Amount.*  In the event that any Non-Settling States appear on Exhibit N, the amounts owed by Settling Distributors pursuant to this Section IX shall be reduced by the allocations set forth on Exhibit N for any such Non-Settling States.

C.      *Use of Funds.*  All funds paid as an Additional Restitution Amount shall be part of the Compensatory Restitution Amount, shall be used for Opioid Remediation, except as allowed by Section V.B.2, and shall be governed by the same requirements as specified in Section V.F.

## X.      Plaintiffs' Attorneys' Fees and Costs

The Agreement on Attorneys' Fees, Expenses and Costs is set forth in Exhibit R and incorporated herein by reference.  The Agreement on the State Outside Counsel Fee Fund and Agreement on the State Cost Fund Administration are set forth in Exhibit S and Exhibit T, respectively, and are incorporated herein by reference.

## XI.      Release

A.      *Scope.*  As of the Effective Date, the Released Entities are hereby released and forever discharged from all of the Releasors' Released Claims.  Each Settling State (for itself and its Releasors) and Participating Subdivision hereby absolutely, unconditionally, and irrevocably

covenants not to bring, file, or claim, or to cause, assist or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever.  The releases provided for in this Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Settling State and its Attorney General to release claims.  This Agreement shall be a complete bar to any Released Claim.

      B.     *Claim-Over and Non-Party Settlement*.

          1.     It is the intent of the Parties that:

             a.     Released Entities should not seek contribution or indemnification (other than pursuant to an insurance contract), from other parties for their payment obligations under this Agreement;

             b.     the payments made under this Agreement shall be the sole payments made by the Released Entities to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity);

             c.     Claims by Releasors against non-Parties should not result in additional payments by Released Entities, whether through contribution, indemnification or any other means; and

             d.     the Agreement meets the requirements of the Uniform Contribution Among Joint Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

The provisions of this Section XI.B are intended to be implemented consistent with these principles.  This Agreement and the releases and dismissals provided for herein are made in good faith.

          2.     No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner; *provided* that a Released Entity shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it.  For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

          3.     To the extent that, on or after the Reference Date, any Releasor enters into a Non-Party Settlement, including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from the Settling Distributors in Section XI.B.2, or a release

from such Non-Released Entity in favor of the Released Entities (in a form equivalent to the releases contained in this Agreement) of any Claim-Over.  The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.

       4.     In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that described in <u>Section XI.B.3,</u> or any Releasor files a Non-Party Covered Conduct Claim against a Non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in <u>Section XI.B.3</u>, and such Non-Released Entity asserts a Claim-Over against a Released Entity, the Released Entity shall be relieved of the prohibition in <u>Section XI.B.2</u> with respect to that Non-Released Entity and that Releasor and the Settling Distributors shall take the following actions to ensure that the Released Entities do not pay more with respect to Covered Conduct to Releasors or to Non-Released Entities than the amounts owed under this Settlement Agreement by the Settling Distributors:

       a.     Settling Distributors shall notify that Releasor of the Claim-Over within sixty (60) calendar days of the assertion of the Claim-Over or sixty (60) calendar days of the Effective Date of this Settlement Agreement, whichever is later;

       b.     Settling Distributors and that Releasor shall meet and confer concerning the means to hold Released Entities harmless and ensure that they are not required to pay more with respect to Covered Conduct than the amounts owed by Settling Distributors under this Agreement;

       c.     That Releasor and Settling Distributors shall take steps sufficient and permissible under the law of the State of the Releasor to hold Released Entities harmless from the Claim-Over and ensure Released Entities are not required to pay more with respect to Covered Conduct than the amounts owed by Settling Distributors under this Agreement.  Such steps may include, where permissible:

       (i)     Filing of motions to dismiss or such other appropriate motion by Settling Distributors or Released Entities, and supported by Releasors, in response to any claim filed in litigation or arbitration;

       (ii)     Reduction of that Releasors' Claim and any judgment it has obtained or may obtain against such Non-Released Entity by whatever amount or percentage is necessary to extinguish such Claim-Over under applicable law, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

       (iii)     Placement into escrow of funds paid by the Non-Released Entities such that those funds are available to satisfy the Claim-Over;

(iv)    Return of monies paid by Settling Distributors to that Releasor under this Settlement Agreement to permit satisfaction of a judgment against or settlement with the Non-Released Entity to satisfy the Claim-Over;

(v)    Payment of monies to Settling Distributors by that Releasor to ensure they are held harmless from such Claim-Over, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

(vi)    Credit to the Settling Distributors under this Agreement to reduce the overall amounts to be paid under the Agreement such that they are held harmless from the Claim-Over; and

(vii)    Such other actions as that Releasor and Settling Distributors may devise to hold Settling Distributors harmless from the Claim-Over.

d.    The actions of that Releasor and Settling Distributors taken pursuant to paragraph (c) must, in combination, ensure Settling Distributors are not required to pay more with respect to Covered Conduct than the amounts owed by Settling Distributors under this Agreement.

e.    In the event of any dispute over the sufficiency of the actions taken pursuant to paragraph (c), that Releasor and the Settling Distributors may seek review by the National Arbitration Panel, provided that, if the parties agree, such dispute may be heard by the state court where the relevant Consent Judgment was filed.  The National Arbitration Panel shall have authority to require Releasors to implement a remedy that includes one or more of the actions specified in paragraph (c) sufficient to hold Released Entities fully harmless.  In the event that the Panel's actions do not result in Released Entities being held fully harmless, Settling Distributors shall have a claim for breach of this Agreement by Releasors, with the remedy being payment of sufficient funds to hold Settling Distributors harmless from the Claim-Over.  For the avoidance of doubt, the prior sentence does not limit or eliminate any other remedy that Settling Distributors may have.

5.    To the extent that the Claim-Over is based on a contractual indemnity, the obligations under Section XI.B.4 shall extend solely to a Non-Party Covered Conduct Claim against a pharmacy, clinic, hospital or other purchaser or dispenser of Products, a manufacturer that sold Products, a consultant, and/or a pharmacy benefit manager or other third-party payor.  Each Settling Distributor shall notify the Settling States, to the extent permitted by applicable law, in the event that any of these types of Non-Released Entity asserts a Claim-Over arising out of contractual indemnity against it.

C.    *Indemnification and Contribution Prohibited.*  No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any

other theory, from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner.  For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

D.     *General Release*.  In connection with the releases provided for in this Agreement, each Settling State (for itself and its Releasors) and Participating Subdivision expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any State or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent**.  A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Settling State (for itself and its Releasors) and Participating Subdivision hereby expressly waives and fully, finally, and forever settles, releases and discharges, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Settling States' decision to enter into this Agreement or the Participating Subdivisions' decision to participate in this Agreement.

E.     *Assigned Interest Waiver*.  To the extent that any Settling State has any direct or indirect interest in any rights of a third-party that is a debtor under the Bankruptcy Code as a result of a claim arising out of Covered Conduct by way of assignment or otherwise, including as a result of being the beneficiary of a trust or other distribution entity, to assert claims against a Settling Distributor (whether derivatively or otherwise), under any legal or equitable theory, including for indemnification, contribution, or subrogation, such Settling State waives the right to assert any such claim, or to receive a distribution or any benefit on account of such claim and such claim, distribution, or benefit shall be deemed assigned to such Settling Distributor.

F.     *Res Judicata*.  Nothing in this Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in this Agreement, and/or any Consent Judgment or other judgment entered on this Agreement, gives rise to under applicable law.

G.     *Representation and Warranty*.  The signatories hereto on behalf of their respective Settling States expressly represent and warrant that they have (or have obtained, or will obtain no later than the Initial Participation Date) the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) their respective Settling States, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, and (3) any of their respective Settling State's past and present executive departments,

48

agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license.  For the purposes of <u>clause (3)</u> above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor.  Also for the purposes of <u>clause (3)</u>, a release from a State's Governor is sufficient to demonstrate that the appropriate releases have been obtained.

H.    *Effectiveness*.  The releases set forth in this Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors.  Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the Settlement Fund or any portion thereof, or by the enactment of future laws, or by any seizure of the Settlement Fund or any portion thereof.

I.    *Cooperation*.  Releasors (1) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (2) will reasonably cooperate with and not oppose any effort by Settling Distributors to secure the prompt dismissal of any and all Released Claims.

J.    *Non-Released Claims.*  Notwithstanding the foregoing or anything in the definition of Released Claims, this Agreement does not waive, release or limit any criminal liability, Claims for liability under tax law, Claims under securities law by a State Releasor as investor, Claims against parties who are not Released Entities, Claims by private individuals, and any claims arising under this Agreement for enforcement of this Agreement.

## XII.    Later Litigating Subdivisions

A.    *Released Claims against Released Entities.*  Subject to <u>Section XII.B</u>, the following shall apply in the event a Later Litigating Subdivision in a Settling State maintains a lawsuit for a Released Claim against a Released Entity after the Reference Date:

1.    The Released Entity shall take ordinary and reasonable measures to defend the action, including filing a Threshold Motion with respect to the Released Claim.  The Released Entity shall further notify the Settling State and Settlement Fund Administrator immediately upon notice of a Later Litigating Subdivision bringing a lawsuit for a Released Claim, and shall not oppose a Settling State's submission in support of the Threshold Motion.

2.    The provisions of this <u>Section XII.A.2</u> apply if the Later Litigating Subdivision is a Primary Subdivision (except as provided in <u>Section XII.A.2.f</u>):

a.    If a lawsuit including a Released Claim survives until the Suspension Deadline for that lawsuit, the Settlement Fund Administrator shall calculate the Suspension Amount applicable to the next Payment due from the Settling Distributor(s) at issue and apportioned to the State of the Later Litigating Subdivision and to Subdivisions in that State; *provided*, *however*, that the Suspension Amount for a Payment Year cannot exceed the Suspension Cap.  The

## EXHIBIT J

## Settling Distributors' Subsidiaries, Joint Ventures, and Predecessor Entities

## ABC

1. A.T. Pharma Consultancy FZC
2. AB Eurco Ltd
3. AB Financing, LLC
4. AB Finco Ltd
5. AB Nokco Ltd
6. AB Singapore Investments Pte. Ltd.
7. AB Specialty Solutions, LLC
8. ABBP International Company
9. ABSG Canada Holdings, Inc.
10. Access M.D. Inc.
11. AERO LINK Courier GmbH
12. Agri-Laboratories, LTD
13. Agstrata, LLC
14. AH Schweiz GmbH
15. AH UK Holdco 1 Limited
16. Alcura France
17. Alcura Health España, S.A.
18. Alcura UK Limited
19. Alliance Boots BV
20. Alliance Boots Schweiz Investments GmbH
21. Alliance Health Services, Inc.
22. Alliance Healthcare (Distribution) Limited
23. Alliance Healthcare Acores (f/k/a Proconfar, S.A.)
24. Alliance Healthcare Ecza Deposu Anonim Şirketi
25. Alliance Healthcare España Holdings, S.L.
26. Alliance Healthcare España S.A.
27. Alliance Healthcare France SA
28. Alliance Healthcare Group France SA
29. Alliance Healthcare Management Services (Nederland) B.V.
30. Alliance Healthcare Management Services Limited
31. Alliance Healthcare Nederland B.V.
32. Alliance Healthcare Norge AS
33. Alliance Healthcare Participações SGPS, unipessoal, Lda.
34. Alliance Healthcare Répartition
35. Alliance Healthcare Romania SRL
36. Alliance Healthcare S.A.
37. Alliance Healthcare s.r.o.
38. Alliance Healthcare s.r.o. Slovakia Branch
39. Alliance Healthcare Services France (f/k/a Alliance Healthcare Formation SAS)
40. Alliance Healthcare Technology Services Limited
41. Alliance Healthcare Turkey Holding A.S.
42. Alliance Healthcare Yatirim Holding Anonim Şirketi
43. Alliance Home Health Care, Inc.
44. Alliance UniChem IP Limited
45. Alloga (Nederland) B.V.
46. Alloga France SAS
47. Alloga Logifarma, S.A.
48. Alloga Logistica (España) S.L.
49. ALLOGA LOGISTICS ROMANIA SRL
50. Alloga Portugal - Armazenagem e Distribuicao Farmaceutica, Lda
51. Alloga UK Limited
52. AllyDVM, Inc.
53. Almus Farmaceutica, S.A.
54. Almus France
55. Almus Pharmaceuticals Limited
56. Almus, Lda.
57. Alphega SA
58. Ambulatory Pharmaceutical Services, Inc.
59. American Medical Distributors, Inc.
60. American Oncology Network, LLC
61. Amerisource Health Services Corporation
62. Amerisource Health Services, LLC
63. Amerisource Health Services, LLC d/b/a American Health Packaging
64. Amerisource Heritage Corporation
65. AmeriSource Heritage LLC
66. Amerisource Receivables Financial Corporation
67. Amerisource Sales Corporation
68. AmerisourceBergen Associate Assistance Fund
69. AmerisourceBergen BC, ULC
70. AmerisourceBergen Canada Corporation
71. AmerisourceBergen Canada GP LLC
72. AmerisourceBergen Canada GP, LLC
73. AmerisourceBergen Canada Holdings LP
74. AmerisourceBergen Consulting Services, Inc.

75. AmerisourceBergen Consulting Services, LLC
76. AmerisourceBergen Corporation
77. AmerisourceBergen Drug Corporation
78. AmerisourceBergen Foundation
79. AmerisourceBergen Global Holdings GmbH
80. AmerisourceBergen Global Investments S.a.r.l.
81. AmerisourceBergen Global Manufacturer Services GmbH
82. AmerisourceBergen Group GmbH
83. AmerisourceBergen Holding Corporation
84. AmerisourceBergen Integrated Services Offering, LLC
85. AmerisourceBergen International Holdings Inc.
86. AmerisourceBergen International Investments, LLC
87. AmerisourceBergen Luxembourg s.a.r.l.
88. AmerisourceBergen Services Corporation
89. AmerisourceBergen Sourcing, LLC
90. AmerisourceBergen Specialty Group Canada Corporation
91. AmerisourceBergen Specialty Group Canada Holdings, Inc.
92. AmerisourceBergen Specialty Group, Inc.
93. AmerisourceBergen Specialty Group, LLC
94. AmerisourceBergen Swiss Holdings GmbH
95. AmerisourceBergen Switzerland GmbH
96. AmerisourceBergen UK Holdings Ltd
97. Anderson Packaging, Inc.
98. AndersonBrecon Inc.
99. Animal Prescriptions Limited
100. Animalytix LLC
101. Apluspharma Ltd
102. Apotheek Hagi B.V.
103. Apotheek Lichtenvoorde B.V.
104. APS Acquisitions Corporation
105. APS Enterprises Holding Company, Inc.
106. Armila UAB
107. ASD Hemophilia Management, LLC
108. ASD Hemophilia Program, L.P.
109. ASD Specialty Healthcare, Inc.
110. ASD Specialty Healthcare, LLC
111. ASD Specialty Healthcare, LLC d/b/a ASD Healthcare
112. ASD Specialty Healthcare, LLC d/b/a Besse Medical
113. ASD Specialty Healthcare, LLC d/b/a Oncology Supply
114. Automed Technologies (Canada) Inc.
115. Automed Technologies (Canada) ULC
116. Automed Technologies, Inc.
117. BBC Laboratories
118. BBC Operating Sub, Inc.
119. BBC Packing Corporation
120. BBC Special Packaging, Inc.
121. BBC Transportation Co.
122. Beachcourse Limited
123. Bellco Drug Corp.
124. Bellco Health Corp.
125. Bergen Brunswig Corporation
126. Bergen Brunswig Drug Company
127. Bergen Brunswig Realty Services, Inc.
128. Bermuda Equity Holdings, Ltd.
129. Beverly Acquisition Corporation
130. Blue Hill II, Inc.
131. Blue Hill, Inc.
132. BluePoint Intellectual Property, LLC
133. Boots Nederland B.V.
134. Boots Norge AS
135. BP Pharmaceuticals Laboratories Unlimited Company
136. BPL Brasil Participacoes Ltda.
137. BPL Brazil Holding Company s.a.r.l.
138. BPL Brazil, LLC
139. BPL Group, LLC
140. BPL Pharmaceuticals Holding Unlimited Company
141. BPLH Ireland Company Dublin, Zug Branch
142. BPLH Ireland Unlimited Company
143. Brecon Holdings Limited
144. Brecon Pharmaceuticals Holdings Limited
145. Brecon Pharmaceuticals Limited
146. Bridge Medical, Inc.
147. Brownstone Pharmacy, Inc.
148. Bruin Acquisition Corp.
149. Burt's Pharmacy, LLC
150. Cameron Stewart Lifescience Canada Inc.
151. Cannes RJ Participacoes S.A.
152. Capstone Med, Inc.
153. Capstone Pharmacy of Delaware, Inc.
154. CDRF Parent LLC
155. CDRF Parent, Inc.
156. Centaur Services Limited
157. Centro Farmaceutico Asturiano, SA
158. Century Advertising Inc.
159. Chapin Drug Company
160. Choice Medical, Inc.
161. Clinical Outcomes Resource Application Corporation
162. Clinical Outcomes Resource Application, Inc.

163. CliniCare Concepts, Inc.
164. ClinPharm, L.L.C.
165. Committed Provider Services, LLC
166. Compuscript, Inc.
167. Computran Systems, Inc.
168. Corrections Pharmacies Licensing Company, L.L.C.
169. Corrections Pharmacies of California, LP
170. Corrections Pharmacies of Hawaii, LP
171. Corrections Pharmacies, L.L.C.
172. Cubex, LLC
173. Datapharm Sarl
174. DD Wholesale, Inc.
175. Dialysis Purchasing Alliance, Inc.
176. Directlog
177. Documedics Acquisition Co., Inc.
178. Drug Service, Inc.
179. Dunnington Drug, Inc.
180. Dunnington RX Services of Massachusetts, Inc.
181. Dunnington RX Services of Rhode Island, Inc.
182. Durr-Fillauer Medical, Inc.
183. Durvet, Inc.
184. Dymaxium Healthcare Innovations, Ltd.
185. Dymaxium Holdings, Ltd.
186. Dymaxium, Ltd.
187. Entel d.o.o.
188. Escalante Solutions, L.P.
189. Esko Itriyat Sanayi ve Ticaret Anonim Şirketi
190. Euro Registratie Collectief B.V.
191. European Physician Networks GmbH
192. Express Pharmacy Services, Inc.
193. Falcon Acquisition Sub, LLC
194. Family Center Pharmacy, Inc.
195. Feeders Advantage, LCC
196. General Drug Company
197. Goot Nursing Home Pharmacy, Inc.
198. Goot Westbridge Pharmacy, Inc.
199. Goot's Goodies, Inc.
200. Goot's Pharmacy & Orthopedic Supply, Inc.
201. Green Barn, Inc
202. H. D. Smith Holding Company
203. H. D. Smith Holdings, LLC
204. H. D. Smith Wholesale Drug Co.
205. H. D. Smith, LLC
206. HAI Acquisition, Inc.
207. HDS Solutions, LLC
208. Health Services Capital Corporation
209. Healthcare Prescription Services, Inc.
210. HealthForward Inc.

211. HealthQuest Partner II, L.P.
212. HealthTronics Data Solutions LLC
213. HealthTronics Data Solutions, LLC
214. HealthTronics Information Technology Solutions, Inc.
215. Hedef International Holdings BV
216. Home Medical Equipment Health Company
217. Hydra Pharm SPA
218. I.g.G. of America, Inc.
219. IHS Acquisition XXX, Inc.
220. Imedex, Inc.
221. Imedex, LLC
222. Independent Pharmacy Buying Group, Inc.
223. Innomar Pharmacy (BC) Inc.
224. Innomar Pharmacy (SK) Inc.
225. Innomar Pharmacy Inc.
226. Innomar Specialty Pharmacy, Inc.
227. Innomar Strategies Inc.
228. Innovation Cancer, Inc.
229. Insta-Care Holdings, Inc.
230. Insta-Care Pharmacy Services Corporation
231. Intake Initiatives Incorporated
232. IntegraConnect NewCo, LLC
233. Integrated Commercialization Solutions, Inc.
234. Integrated Commercialization Solutions, LLC
235. Integrated Health Systems Outcomes Coalition, LLC
236. Inteplex, Inc.
237. Interfill, LLC
238. International Oncology Network Solutions, Inc.
239. International Physician Networks, L.L.C.
240. International Rheumatology Network, L.L.C.
241. IntrinsiQ Holdings, Inc.
242. IntrinsiQ Specialty Solutions, Inc.
243. IntrinsiQ Tendler, Inc.
244. IntrinsiQ, LLC
245. J.M. Blanco, Inc.
246. James Brudnick Company, Inc.
247. K/S Instrument Corp.
248. KRP Investments, Inc.
249. Labpak Limited
250. LAD Drug Corporation
251. Leading Educational Research Network, LLC
252. Lexicon Pharmacy Services, L.L.C.
253. Liberty Acquisition Corp.
254. Libra C.V.
255. Los Angeles Drug Corporation
256. M.D.P. Properties, Inc.
257. Managed Care Network, Inc.
258. Marshall Reinardy LLC

259. Medical Health Industries, Inc.
260. Medical Initiatives, Inc.
261. Medidyne Corp.
262. Medselect Inc.
263. Memorial Pet Care, Inc.
264. Micro Technologies Canada Inc.
265. MWI Buying Group Limited (formerly St. Francis Limited)
266. MWI Supply (UK Acquisition) Limited
267. MWI Supply (UK Holdings) Limited
268. MWI Supply (UK) Limited
269. MWI Veterinary Supply Co.
270. MWI Veterinary Supply, Inc.
271. Nareks Ecza Deposu Ticaret Anonim Şirketi
272. Network for Medical Communication & Research Analytics, LLC
273. New Jersey Medical Corporation
274. Nexiapharma, SL
275. NMCR Holdings, Inc.
276. NMCR-Europe, LLC
277. Northeast Veterinary Supply Company, LLC
278. Oktal Pharma d.o.o
279. Oktal Pharma d.o.o
280. Oktal Pharma d.o.o [Zagreb]
281. Oktal Pharma d.o.o.
282. Oktal Pharma Hungary K.f.t.
283. Omni Med B, Inc.
284. OPH Oktal Pharma d.o.o
285. OTC Direct Limited
286. Paris Acquisition Corp.
287. Pharm Plus Acquisition, Inc.
288. Pharma One Corporation Limited
289. Pharmacy Corporation of America
290. Pharmacy Corporation of America - Massachusetts, Inc.
291. Pharmacy Healthcare Solutions, Ltd.
292. Pharmacy Review Services, Inc.
293. Pharmdata s.r.o.
294. PharMEDium Healthcare Corporation
295. PharMEDium Healthcare Holdings LLC
296. PharMEDium Healthcare Holdings, Inc.
297. PharMEDium Healthcare LLC
298. PharMEDium Pharmacy Services, LLC
299. PharMEDium R.E., LLC
300. PharMEDium Services, LLC
301. PharMerica Drug Systems, Inc.
302. PharMerica Technology Solutions, LLC
303. Pharmerica, Inc.
304. Pitango HealthTech Fund I, L.P.
305. Planet Software Limited
306. PMSI MSA Services, Inc.

307. PMSI, Inc.
308. PPSC USA, LLC
309. Premier Pharmacy, Inc.
310. Premier Source Diagnostics Inc.
311. Premier Source, LLC
312. Prescribe Wellness, LLC
313. Profarma Distribuidora de Produtos Farmaceuticos S.A.
314. Ramuneles Vaistine UAB
315. Reimbursement Education Network, LLC
316. Rightpak, Inc.
317. Rombro's Drug Center, Inc.
318. Roscoe Acquisition Corporation
319. S.R.P. (Services de la Répartition Pharmaceutique)
320. SecureDVM, LLC
321. Securos Europe GmbH
322. Silver Streak I, LLC
323. Skills in Healthcare France
324. Skills in Healthcare Pazarlama ve Tanitim Hizmetleri Anonim Şirketi
325. Skills in Healthcare Romania S.r.l.
326. Smart ID Works, LLC
327. Smith Medical Partners, LLC
328. Snipetjernveien 10 Norge AS
329. Solana Beach, Inc.
330. Southwest Pharmacies, Inc.
331. Southwestern Drug Corporation
332. SparkSense Analytics, Inc.
333. Specialty Advancement Network, LLC
334. Specialty Pharmacy of California, Inc.
335. Specialty Pharmacy, Inc.
336. Spielberg Acquisition Corp.
337. Spits B.V.
338. Stadt Solutions, LLC
339. Stephar B.V.
340. Strategic Pharmaceutical Solutions, Inc.
341. Swine Solutions Network, LLC
342. Taylor & Manno Asset Recovery, Inc.
343. Telepharmacy Solutions, Inc.
344. Terra-Lab d.o.o
345. The Allen Company
346. The Lash Group, Inc.
347. The Lash Group, LLC
348. TheraCom, L.L.C.
349. ThermoSecure Medical Equipment GmbH
350. TMESYS, Inc.
351. TrakCel Holding Company, Inc.
352. Trellis Healthcare Consulting, L.L.C.
353. Trellis Healthcare Consulting, LLC
354. True Blue Indemnity Company

355. United Company of Pharmacists SAE
356. Universal Packaging Systems, Inc.
357. US Bioservices Corporation
358. Valley Wholesale Drug Co., LLC
359. Value Apothecaries, Inc.
360. Vedco, Inc.
361. Vetbridge Animal Health, LLC
362. Vetbridge Product Development (NM-OMP) LLC
363. VetSpace Limited
364. VetSpace, Inc.
365. Vetswest Limited
366. W.C. International Limited
367. WBA Acquisitions Luxco 9 S.à.r.l.
368. Wight Nederland Holdco 2 B.V.
369. Wight Nederland Holdco 4 BV
370. WML, LLC
371. Woodglen Properties Limited
372. Woodglen Properties Limited Portugal Branch

373. World Courier (Aust) Pty. Ltd.
374. World Courier (Austria) GmbH
375. World Courier (Austria) GmbH – Serbia Branch
376. World Courier (Deutschland) GmbH
377. World Courier (Finland) Oy
378. World Courier (India) Private Limited
379. World Courier (Ireland) Limited
380. World Courier (Lithuania), UAB
381. World Courier (Malaysia) Sdn. Bhd.
382. World Courier (Norway) AS
383. World Courier (NZ) Limited
384. World Courier (Poland) Sp. Z.o.o.
385. World Courier (Shanghai) Co., Ltd Guangzhou Branch
386. World Courier (Shanghai) Co., Ltd.
387. World Courier (Shanghai) Co., Ltd., Beijing Branch
388. World Courier (Sweden) AB
389. World Courier (Switzerland) SA
390. World Courier (U.K.) Limited
391. World Courier Asia (Thailand) Co., Ltd.
392. World Courier Belgium s.a.
393. World Courier Bulgaria
394. World Courier Czech Republic s.r.o.
395. World Courier de Chile Limitada
396. World Courier de Colombia S.A.
397. World Courier de Espana, S.A.
398. World Courier de Mexico S.A. de C.V.
399. World Courier de Portugal, Lda.
400. World Courier de Uruguay S.A.

401. World Courier del Ecuador S.A.
402. World Courier del Peru S.A.
403. World Courier Denmark A/S
404. World Courier do Brasil Transportes Internacionais Ltda.
405. World Courier France S.A.R.L.
406. World Courier Ground (Europe) Limited
407. World Courier Ground, Inc.
408. World Courier Group Logistics, Inc.
409. World Courier Group S.a.r.l.
410. World Courier Group, Inc.
411. World Courier Group, Inc. Taiwan Branch
412. World Courier Hellas Limited Liability Company
413. World Courier Holland BV
414. World Courier Hong Kong Limited
415. World Courier Hungary Freight Forwarder and Service Provider Limited Liability Company
416. World Courier Israel Ltd.
417. World Courier Italia srl
418. World Courier K.K. Japan
419. World Courier Korea Co., Ltd.
420. World Courier Limited (Russia)
421. World Courier Logistics (Europe) Limited
422. World Courier Logistics (UK) Limited
423. World Courier Logistics, Inc.
424. World Courier Logistics, Inc. (DE)
425. World Courier Logistics, Inc. (NY)
426. World Courier Management Limited
427. World Courier Management, Inc.
428. World Courier of Canada Ltd
429. World Courier Operations Kenya Limited
430. World Courier Philippines – Representative Office
431. World Courier Romania S.R.L.
432. World Courier S.A.
433. World Courier Singapore Pte Ltd
434. World Courier Slovak Republic s.r.o.
435. World Courier South Africa (Proprietary) Limited
436. World Courier Tasimacilik ve Lojistik Hizmetleri Ticaret Limited Sirketi
437. World Courier Ukraine LLC
438. World Courier Venezuela, S.A.
439. World Courier Zagreb d.o.o.
440. World Courier, Inc.
441. World Courier, kurirske storitve,d.o.o.
442. World Customs Brokerage, Inc.
443. Xcenda (UK) Limited
444. Xcenda GmbH

445. Xcenda Switzerland GmbH

446. Xcenda, L.L.C.

447. ZU Vase Zdravije

## **Cardinal**

1. A+ Secure Packaging, LLC
2. Abilene Nuclear, LLC
3. Access Closure, Inc.
4. Acuity GPO, LLC
5. Aero-Med, Ltd.
6. Allegiance (BVI) Holding Co. Ltd.
7. Allegiance Corporation
8. Allegiance Healthcare (Labuan) Pte. Ltd.
9. Allegiance I, LLC
10. Allegiance Labuan Holdings Pte. Ltd.
11. API (Suppliers) Limited
12. AssuraMed Acquisition Corp.
13. AssuraMed Group, Inc.
14. AssuraMed Holding, Inc.
15. AssuraMed Intermediate Holding, Inc.
16. AssuraMed, Inc.
17. C. International, Inc.
18. Cardinal Distribution Holding Corporation - I
19. Cardinal Distribution Holding Corporation - II
20. Cardinal Health 100, Inc.
21. Cardinal Health 104 LP
22. Cardinal Health 105, Inc.
23. Cardinal Health 107, LLC
24. Cardinal Health 108, LLC
25. Cardinal Health 110, LLC
26. Cardinal Health 112, LLC
27. Cardinal Health 113, LLC
28. Cardinal Health 114, Inc.
29. Cardinal Health 115, LLC
30. Cardinal Health 116, LLC
31. Cardinal Health 118, LLC
32. Cardinal Health 119, LLC
33. Cardinal Health 121, LLC
34. Cardinal Health 122, LLC
35. Cardinal Health 123, LLC
36. Cardinal Health 124, LLC
37. Cardinal Health 125, LLC
38. Cardinal Health 126, LLC
39. Cardinal Health 127, Inc.
40. Cardinal Health 128, LLC
41. Cardinal Health 130, LLC
42. Cardinal Health 131, LLC
43. Cardinal Health 132, LLC
44. Cardinal Health 133, Inc.
45. Cardinal Health 2, LLC
46. Cardinal Health 200, LLC
47. Cardinal Health 201 Canada L.P.
48. Cardinal Health 201, Inc.
49. Cardinal Health 215, LLC
50. Cardinal Health 222 (Thailand) Ltd.
51. Cardinal Health 242, LLC
52. Cardinal Health 246, Inc.
53. Cardinal Health 247, Inc.
54. Cardinal Health 249, LLC
55. Cardinal Health 250 Dutch C.V.
56. Cardinal Health 251, LLC
57. Cardinal Health 252, LLC
58. Cardinal Health 253, LP
59. Cardinal Health 3, LLC
60. Cardinal Health 414, LLC
61. Cardinal Health 418, Inc.
62. Cardinal Health 5, LLC
63. Cardinal Health 500, LLC
64. Cardinal Health 524, LLC
65. Cardinal Health 529, LLC
66. Cardinal Health 6, Inc.
67. Cardinal Health 7, LLC
68. Cardinal Health 8, LLC
69. Cardinal Health Australia 503 Pty Ltd.
70. Cardinal Health Austria 504 GmbH
71. Cardinal Health Belgium 505 BVBA
72. Cardinal Health Canada Holdings Cooperatie U.A.
73. Cardinal Health Canada Inc.
74. Cardinal Health Capital Corporation
75. Cardinal Health Cardiology Solutions, LLC
76. Cardinal Health Chile Limitada
77. Cardinal Health Colombia S.A.S.
78. Cardinal Health Commercial Technologies, LLC
79. Cardinal Health Corporate Solutions, LLC
80. Cardinal Health D.R. 203 II Ltd.
81. Cardinal Health Denmark ApS
82. Cardinal Health do Brasil Ltda.
83. Cardinal Health Finance
84. Cardinal Health Finland Oy
85. Cardinal Health Foundation
86. Cardinal Health France 506 SAS
87. Cardinal Health Funding, LLC
88. Cardinal Health Germany 507 GmbH
89. Cardinal Health Germany Manufacturing GmbH
90. Cardinal Health Holding International, Inc.
91. Cardinal Health International Philippines, Inc.
92. Cardinal Health IPS, LLC
93. Cardinal Health Ireland 419 Designated Activity Company
94. Cardinal Health Ireland 508 Limited

J-7

95. Cardinal Health Ireland Manufacturing Limited
96. Cardinal Health Ireland Unlimited Company
97. Cardinal Health Italy 509 S.r.l.
98. Cardinal Health Japan G.K.
99. Cardinal Health Korea Limited
100. Cardinal Health Luxembourg 420 S.a.r.l.
101. Cardinal Health Luxembourg 522 S.a.r.l.
102. Cardinal Health Malaysia 211 Sdn. Bhd.
103. Cardinal Health Malta 212 Limited
104. Cardinal Health Managed Care Services, LLC
105. Cardinal Health Medical Products India Private Limited
106. Cardinal Health Mexico 244 S. de R.L. de C.V.
107. Cardinal Health Mexico 514 S. de R.L. de C.V.
108. Cardinal Health Middle East FZ-LLC
109. Cardinal Health MPB, Inc.
110. Cardinal Health Napoleon Holding, LLC
111. Cardinal Health Netherlands 502 B.V.
112. Cardinal Health Netherlands 525 Cooperatie U.A.
113. Cardinal Health Netherlands 528 B.V.
114. Cardinal Health Norway AS
115. Cardinal Health P.R. 120, Inc.
116. Cardinal Health P.R. 218, Inc.
117. Cardinal Health P.R. 220, LLC
118. Cardinal Health P.R. 436, Inc.
119. Cardinal Health Panama, S. de R.L.
120. Cardinal Health Pharmaceutical Contracting, LLC
121. Cardinal Health Pharmacy Services, LLC
122. Cardinal Health Poland Spolka z ograniczona odpowiedzialnoscia
123. Cardinal Health Portugal 513, Unipessoal Lda.
124. Cardinal Health Russia
125. Cardinal Health Singapore 225 Pte. Ltd.
126. Cardinal Health Spain 511 S.L.
127. Cardinal Health Sweden 512 A.B.
128. Cardinal Health Switzerland 515, GmbH
129. Cardinal Health Systems, Inc.
130. Cardinal Health Technologies Switzerland GmbH
131. Cardinal Health Technologies, LLC
132. Cardinal Health U.K. 418 Limited
133. Cardinal Health U.K. 432 Limited
134. Cardinal Health U.K. Holding Limited
135. Cardinal Health U.K. International Holding LLP

136. Cardinal Health, Inc.
137. Cardinal MED Equipment Consulting (Shanghai) Co., Ltd.
138. Cirpro de Delicias S.A. de C.V.
139. Clinic Pharmacies III, LLC
140. Clinic Pharmacies, LLC
141. Community Pharmacy Enterprises, LLC
142. Convertors de Mexico S.A. de C.V.
143. Cordis (Shanghai) MED Devices Co., Ltd.
144. Cordis Cashel Unlimited Company
145. Cordis Corporation
146. Cornerstone Rheumatology LP
147. Covidien Manufacturing Solutions, S.A.
148. Dutch American Manufacturers II (D.A.M. II) B.V.
149. Ellipticare, LLC
150. EPIC Insurance Company
151. Especialidades Medicas Kenmex S.A. de C.V.
152. Experience East, LLC
153. Flexible Stenting Solutions, Inc.
154. Frog Horned Capital, Inc.
155. Generic Drug Holdings, Inc.
156. GetOutcomes, LLC
157. Griffin Capital, LLC
158. HDG Acquisition, Inc.
159. imgRx Healdsburg, Inc.
160. imgRx Salud, Inc.
161. imgRx SJ Valley, Inc.
162. imgRx SLO, Inc.
163. imgRx Sonoma, Inc.
164. InnerDyne Holdings, Inc.
165. Innovative Therapies, Inc.
166. Instant Diagnostic Systems, Inc.
167. InteCardia-Tennessee East Catheterization, LLC
168. ITI Sales, LLC
169. Kendall-Gammatron Limited
170. Killilea Development Company, Ltd.
171. Kinray I, LLC
172. KPR Australia Pty. Ltd.
173. KPR Switzerland Sales GmbH
174. KPR U.S., LLC
175. Leader Drugstores, Inc.
176. Ludlow Technical Products Canada, Ltd.
177. Marin Apothecaries
178. Medicap Pharmacies Incorporated
179. Medicine Shoppe Capital Corporation
180. Medicine Shoppe International, Inc.
181. Medicine Shoppe Internet, Inc.
182. Mediquip Sdn. Bhd.
183. Mirixa Corporation

184. MosaicGPO, LLC
185. mscripts Holdings, LLC
186. mscripts Systems India Private Limited
187. mscripts, LLC
188. Nippon Covidien Ltd.
189. One Cloverleaf, LLC
190. Outcomes Incorporated
191. Owen Shared Services, Inc.
192. Pharmacy Operations Of New York, Inc.
193. Pharmacy Operations, Inc.
194. Physicians Purchasing, Inc.
195. Pinnacle Intellectual Property Services, Inc.
196. Pinnacle Intellectual Property Services-International, Inc.
197. Quiroproductos de Cuauhtemoc S. de R.L. de C.V.
198. RainTree Administrative Services, LLC
199. RainTree Care Management, LLC
200. RainTree GPO, LLC
201. Ransdell Surgical, Inc.
202. Red Oak Sourcing, LLC
203. Renal Purchasing Group, LLC
204. RGH Enterprises, Inc.
205. RT Oncology Services Corporation
206. Rxealtime, Inc.
207. Sierra Radiopharmacy, L.L.C.
208. Sonexus Health Access & Patient Support, LLC
209. Sonexus Health Distribution Services, LLC
210. Sonexus Health Financial Solutions, LLC
211. Sonexus Health Pharmacy Services, LLC
212. Sonexus Health, LLC
213. TelePharm, LLC
214. The Harvard Drug Group, L.L.C.
215. Tianjin ITI Trading Company
216. Tradex International, Inc.
217. Traverse GPO, LLC
218. Wavemark Lebanon Offshore s.a.l.
219. Wavemark, Inc.
220. Red Oak Sourcing, LLC
221. API (Suppliers) Limited
222. Sierra Radiopharmacy, L.L.C.
223. Abilene Nuclear, LLC
224. InteCardia-Tennessee East Catheterization, LLC
225. Kendall-Gammatron Limited
226. Almus Pharmaceuticals USA LLC
227. Cardinal Health (H.K.) Co. Limited
228. Cardinal Health (Shanghai) Pharmaceutical Co., Ltd.
229. Cardinal Health (Sichuan) Pharmaceutical Co., Ltd.
230. Cardinal Health (Wuxi) Pharmaceutical Co., Ltd.
231. Cardinal Health Hedan (Shenzhen) Pharmaceutical Co., Ltd.
232. Dalian Zhongda Pharmaceutical Company Limited
233. NaviHealth Holdings, LLC
234. Parch, L.L.C.
235. 6464661 Canada Inc.
236. Academy Of Managed Care Medicine, L.L.C.
237. Alaris Medical 1 (Suisse) Sarl
238. Alaris Medical New Zealand Limited
239. Allegiance Healthcare International GmbH
240. Allegiance Pro Inc.
241. Allied Healthcare Services, Inc.
242. Almus Pharmaceuticals Singapore Pte. Ltd.
243. Almus Pharmaceuticals USA LLC
244. American Threshold Industries, Inc.
245. Anoka, LLC
246. ARCH Collection Corporation
247. ARCH, S.A.
248. Armand Scott, LLC
249. Aurum Pharmaceuticals Limited
250. Behrens Inc.
251. Beijing Baiji Advanced Specialty Company Limited
252. Bellwether Oncology Alliance, Inc.
253. Bentley Merger Sub, LLC
254. Bindley Western Funding Corporation
255. Bindley Western Industries II Of Maine, Inc.
256. Biosigna GmbH Institut für Biosignalverarbeitung und Systemanalyse
257. Bird Products (Japan) Ltd.
258. Bird Products Corporation
259. Brighton Capital, Inc.
260. Buffalo Merger Corp.
261. BW Transportation Services, Inc.
262. Cardal II, LLC
263. Cardal, Inc.
264. Cardinal Florida, Inc.
265. Cardinal Health (Beijing) China Pharmaceutical Co., Ltd.
266. Cardinal Health (Beijing) Medical Trading Co., Ltd.
267. Cardinal Health (Beijing) Pharmacy Co., Ltd.
268. Cardinal Health (Chengdu) Pharmacy Co., Ltd.
269. Cardinal Health (China) Investment Co., Ltd.

270. Cardinal Health (Chongqing) Pharmaceutical Co., Ltd.
271. Cardinal Health (Chongqing) Pharmacy Co., Ltd.
272. Cardinal Health (H.K.) Co. Limited
273. Cardinal Health (Hubei) Pharmaceutical Co., Ltd.
274. Cardinal Health (L) Co., Ltd.
275. Cardinal Health (Liaoning) Pharmaceutical Co., Ltd.
276. Cardinal Health (P02296)
277. Cardinal Health (P04080)
278. Cardinal Health (Shanghai) Commercial and Trading Company Limited
279. Cardinal Health (Shanghai) Cosmetics Trading Co., Ltd.
280. Cardinal Health (Shanghai) Logistics Co., Ltd.
281. Cardinal Health (Shanghai) Pharmaceutical Co., Ltd.
282. Cardinal Health (Shanghai) Pharmacy Co., Ltd.
283. Cardinal Health (Shanxi) Pharmaceutical Co., Ltd.
284. Cardinal Health (Shenyang) Pharmacy Co., Ltd.
285. Cardinal Health (Sichuan) Pharmaceutical Co., Ltd.
286. Cardinal Health (Tianjin) Pharmaceutical Co., Ltd.
287. Cardinal Health (Wuxi) Pharmaceutical Co., Ltd.
288. Cardinal Health (WuXi) Pharmacy Co., Ltd.
289. Cardinal Health (Zhejiang) Pharmaceutical Co., Ltd.
290. Cardinal Health 101, Inc.
291. Cardinal Health 102, Inc.
292. Cardinal Health 103, Inc.
293. Cardinal Health 106, Inc.
294. Cardinal Health 109, Inc.
295. Cardinal Health 111, LLC
296. Cardinal Health 113, LLC
297. Cardinal Health 117, LLC
298. Cardinal Health 129, Inc.
299. Cardinal Health 208, Inc.
300. Cardinal Health 301, LLC
301. Cardinal Health 400, Inc.
302. Cardinal Health 401, Inc.
303. Cardinal Health 402, Inc.
304. Cardinal Health 403, Inc.
305. Cardinal Health 404, Inc.
306. Cardinal Health 405, Inc.
307. Cardinal Health 406, Inc.
308. Cardinal Health 406, LLC
309. Cardinal Health 407, Inc.
310. Cardinal Health 408, Inc.
311. Cardinal Health 409, Inc.
312. Cardinal Health 410, Inc.
313. Cardinal Health 411, Inc.
314. Cardinal Health 412, Inc.
315. Cardinal Health 413, Inc.
316. Cardinal Health 415, Inc.
317. Cardinal Health 416, Inc.
318. Cardinal Health 417, Inc.
319. Cardinal Health 419, LLC
320. Cardinal Health 420, LLC
321. Cardinal Health 421 Limited Partnership
322. Cardinal Health 421, Inc.
323. Cardinal Health 422, Inc.
324. Cardinal Health 501 Dutch C.V.
325. Cardinal Health Austria 201 GmbH
326. Cardinal Health Bermuda 224, Ltd.
327. Cardinal Health Brasil 423 Servicos Farmaceuticos Nucleares Ltda
328. Cardinal Health Canada 204, Inc.
329. Cardinal Health Canada 301, Inc.
330. Cardinal Health Canada 302, Inc.
331. Cardinal Health Canada 307, ULC
332. Cardinal Health Canada 403, Inc.
333. Cardinal Health Canada 437, Inc.
334. Cardinal Health Canada Inc.
335. Cardinal Health Canada LP
336. Cardinal Health Cayman Islands Holding Co. Ltd
337. Cardinal Health Cayman Islands Ltd.
338. Cardinal Health China Co., Ltd.
339. Cardinal Health D.R. 203 Limited
340. Cardinal Health Europe IT GmbH
341. Cardinal Health France 205 SAS
342. Cardinal Health France 309 SAS
343. Cardinal Health Germany 206 GmbH
344. Cardinal Health Germany 234 GmbH
345. Cardinal Health Germany 318 GmbH
346. Cardinal Health Hedan (Shenzhen) Pharmaceutical Co., Ltd.
347. Cardinal Health Hong Kong Limited
348. Cardinal Health I, Inc.
349. Cardinal Health Imaging, LLC
350. Cardinal Health India Private Limited
351. Cardinal Health International Ventures, Ltd.
352. Cardinal Health Ireland 406 Ltd.

353. Cardinal Health Ireland 527 General Partnership
354. Cardinal Health Italy 208 S.r.l.
355. Cardinal Health Italy 312 S.p.A.
356. Cardinal Health Lease Funding 2002A, LLC
357. Cardinal Health Lease Funding 2002AQ, LLC
358. Cardinal Health Lease Funding 2003A, LLC
359. Cardinal Health Lease Funding 2003AQ, LLC
360. Cardinal Health Lease Funding 2003B, LLC
361. Cardinal Health Lease Funding 2003BQ, LLC
362. Cardinal Health Lease Funding 2004A, LLC
363. Cardinal Health Lease Funding 2004AQ, LLC
364. Cardinal Health Luxembourg 523 S.a.r.l.
365. Cardinal Health Mauritius Holding 226 Ltd.
366. Cardinal Health Mexico 213, S.A. de C.V.
367. Cardinal Health Netherlands 238 BV
368. Cardinal Health Netherlands 526 B.V.
369. Cardinal Health Netherlands Financing C.V.
370. Cardinal Health Netherlands Holding B.V.
371. Cardinal Health New Zealand 313 Limited
372. Cardinal Health Norway 315 A/S
373. Cardinal Health P.R. 227, Inc.
374. Cardinal Health P.R. 409 B.V.
375. Cardinal Health PTS, Inc.
376. Cardinal Health PTS, LLC
377. Cardinal Health S.A. 319 (Proprietary) Limited
378. Cardinal Health Singapore 304
379. Cardinal Health Singapore 423 Pte. Ltd.
380. Cardinal Health Spain 219 S.L.U.
381. Cardinal Health Spain 239 SA
382. Cardinal Health Specialty Pharmacy, LLC
383. Cardinal Health Sweden 220 AB
384. Cardinal Health Sweden 314 AB
385. Cardinal Health Switzerland 221 Sarl
386. Cardinal Health Switzerland 317 Sarl
387. Cardinal Health Trading (Shanghai) Co., Ltd.
388. Cardinal Health U.K. 100 Limited
389. Cardinal Health U.K. 101 Limited
390. Cardinal Health U.K. 102 Limited
391. Cardinal Health U.K. 103 Limited
392. Cardinal Health U.K. 104 Limited
393. Cardinal Health U.K. 105 Limited
394. Cardinal Health U.K. 106 Limited
395. Cardinal Health U.K. 223 Limited
396. Cardinal Health U.K. 232 Limited
397. Cardinal Health U.K. 235 Limited
398. Cardinal Health U.K. 236 Limited
399. Cardinal Health U.K. 240 Limited
400. Cardinal Health U.K. 305 Limited
401. Cardinal Health U.K. 306 Limited
402. Cardinal Health U.K. 433 Limited
403. Cardinal Health U.K. 434 Limited
404. Cardinal Syracuse, Inc.
405. Cardinal.Com Holdings, Inc.
406. Care Fusion Development Private Limited
407. Care Fusion Incorporated
408. CareFusion 202, Inc.
409. CareFusion 203, Inc.
410. CareFusion 205, Inc.
411. CareFusion 206, Inc.
412. CareFusion 207, Inc.
413. CareFusion 209, Inc.
414. CareFusion 210, Inc.
415. CareFusion 211, Inc.
416. CareFusion 212, LLC
417. CareFusion 213, LLC
418. CareFusion 214, LLC
419. CareFusion 2200, Inc.
420. CareFusion 2201, Inc.
421. CareFusion 302, LLC
422. CareFusion 303, Inc.
423. CareFusion 304, Inc.
424. CareFusion Australia 200 Pty Ltd.
425. CareFusion Australia 316 Pty Limited
426. CareFusion Australia 500 Pty Ltd
427. CareFusion Belgium 202 BVBA
428. CareFusion Brasil 231 Servico e Comercia de Productos Medicos Ltda
429. CareFusion Corporation
430. CareFusion EIT, LLC
431. CareFusion Iberia 308 S.L.U.
432. CareFusion Italy 237 Srl
433. CareFusion Italy 311 Srl
434. CareFusion Japan 228 K.K.
435. CareFusion Japan 233, Inc.
436. CareFusion Luxembourg 501 Sarl
437. CareFusion Manufacturing Ireland 241 Limited
438. CareFusion Manufacturing, LLC
439. CareFusion Netherlands 214 B.V.
440. CareFusion Netherlands 238 BV
441. CareFusion Netherlands 310 B.V.
442. CareFusion Netherlands 503 B.V.
443. CareFusion New Zealand 217 Limited
444. CareFusion New Zealand 313 Limited
445. CareFusion Resources, LLC
446. CareFusion Singapore 243 Pte. Ltd.
447. CareFusion Solutions, LLC
448. CareFusion U.K. 284 Limited
449. CareFusion U.K. 286 Limited
450. CareFusion U.K. 287 Limited

451. CareFusion U.K. 288 Limited
452. Cascade Development, Inc.
453. CCB, Inc.
454. CDI Investments, Inc.
455. Centralia Pharmacy, Inc.
456. Centricity, LLC
457. Chapman Drug Company
458. Chengdu Baiji Advanced Specialty Pharmacy Company Limited
459. Cheshire Merger Sub, Inc.
460. CMI Net, Inc.
461. College Park Plaza Associates, Inc.
462. Comprehensive Medical Imaging-Anaheim Hills, Inc.
463. Comprehensive Medical Imaging-Apple Valley, Inc.
464. Comprehensive Medical Imaging-Boynton Beach, Inc.
465. Comprehensive Medical Imaging-Downey, Inc.
466. Comprehensive Medical Imaging-Encino, Inc.
467. Comprehensive Medical Imaging-Fort Lauderdale, Inc.
468. Comprehensive Medical Imaging-Fremont, Inc.
469. Comprehensive Medical Imaging-Hesperia, Inc.
470. Comprehensive Medical Imaging-Huntington Beach, Inc.
471. Comprehensive Medical Imaging-Palm Springs, Inc.
472. Comprehensive Medical Imaging-Rancho Cucamonga, Inc.
473. Comprehensive Medical Imaging-Rancho Mirage, Inc.
474. Comprehensive Medical Imaging-Salisbury, Inc.
475. Comprehensive Medical Imaging-Sherman Oaks, Inc.
476. Comprehensive Medical Imaging-Tempe, Inc.
477. Comprehensive Medical Imaging-Van Nuys, Inc.
478. Comprehensive Medical Imaging-Victorville, Inc.
479. Comprehensive Medical Imaging-Westlake Village, Inc.
480. Comprehensive Open MRI-Carmichael, Inc.
481. Comprehensive Open MRI-Folsom, Inc.
482. Comprehensive Open MRI-Fullerton, Inc.
483. Comprehensive Open MRI-Laguna Hills, Inc.
484. Comprehensive Open MRI-Sacramento, Inc.

485. Comprehensive Reimbursement Consultants, Inc.
486. Consumer2patient, LLC
487. CR Medicap, Inc.
488. Curaspan Health Group, Inc.
489. Cytokine Pharmasciences, Inc.
490. Dalian Zhongda Pharmaceutical Company Limited
491. Daniels Pharmaceuticals Limited
492. DC Merger Corp
493. Denver Biomedical, Inc.
494. Desert PET, LLC
495. Dik Drug Company, LLC
496. Dik Medical Supplies, LLC
497. Discor Limited
498. Dismed Inc.
499. Dohmen Distribution Partners Southeast, L.L.C.
500. Dover Communications, LLC
501. Duquoin Pharmacy, Inc.
502. Dutch American Manufacturers (D.A.M.) B.V.
503. East Iowa Pharmacies, Inc.
504. EGIS Holdings, Inc.
505. Eldon Laboratories Limited
506. Ellicott Drug Company
507. EME Medical, Inc.
508. Enturia Canada ULC
509. Enturia de Mexico S. de R.L. de C.V.
510. Enturia Limited
511. Enturican, Inc.
512. EON Media Inc.
513. Eureka Merger Sub, Inc.
514. European Pharmaceuticals Group Ltd.
515. First Choice, Inc. Of Maine
516. Flower Merger Corp.
517. Futuremed Health Care Products Limited Partnership
518. Futuremed Healthcare Products Corporation
519. Futuremed Holdings General Partner Inc.
520. Fuzhou Baiji Pharmacy Company Limited
521. Gala Design, Inc.
522. Gelatin Products International, Inc.
523. Geodax Technology, Inc.
524. Glacier Corporation
525. Grand Avenue Pharmacy, Inc.
526. Graphic Holdings, Inc.
527. Griffin Group Document Management Services, Inc.

528. Guangzhou Baiji Advanced Specialty Pharmaceutical Chain Stores Company Limited
529. Guangzhou Baiji Drug Store Company Limited
530. Guangzhou City Kangwei Information Technology Company Limited
531. Guangzhou Ruixun Pharmaceutical Company Limited
532. Guizhou Yibai Medical Co., Ltd.
533. Hangzhou Baiji Advanced Specialty Drug Store Company Limited
534. Heartland Diagnostic Services, Inc.
535. HLS Advantage, LLC
536. Homecare (North-West) Limited
537. Humiston-Keeling, Inc.
538. IMI Of Boca Raton, Inc.
539. IMI Of Miami, Inc.
540. IMI Of North Miami Beach, Inc.
541. Inland Empire Regional Pet Center, LLC
542. InnerDyne, Inc.
543. Inpharm Nationwide Limited
544. InteCardia-Tennessee East Diagnostic, LLC
545. Intercare Holdings Limited
546. Intercare Investments Limited
547. Intercare Properties Plc
548. Iowa Falls Pharmacy, Inc.
549. IVAC Overseas Holdings LP
550. JakaMed AB AB
551. Jinan Baiji Drug Store Company Limited
552. JRG, Ltd.
553. Kendall Patient Recovery BVBA
554. Kinetic Surgical, LLC
555. Kinray, Inc.
556. Kinray, LLC
557. KPR Italia S.r.l.
558. KPR U.S., Inc.
559. Kunming Baiji Advanced Specialty Pharmacy Company Limited
560. Lake Charles Pharmaceutical Supply Company, LLC
561. Liaoning Longda Pharmaceutical Co., Ltd.
562. Liberty Communications Network, LLC
563. Ludlow Technical Products Corporation
564. Macarthy Group Trustees Limited
565. Macarthys Laboratories Limited
566. Macarthy's Limited
567. Marmac Distributors, Inc.
568. Martindale Pharma GmbH
569. Martindale Pharmaceuticals Limited
570. Medcon S.A.
571. MedEd Resources, LLC
572. Medesta Associates, LLC
573. Medical Concepts Development, Inc.
574. Medical Diagnostic Leasing, Inc
575. Medical Education Systems, LLC
576. Medical Media Communications, LLC
577. Medical Strategies, Inc.
578. MediQual Systems, Inc.
579. Meditrol Automation Systems, Inc.
580. Meditrol, Inc.
581. MedMined, Inc.
582. Mercury Merger Sub, LLC
583. Mesa Merger Corp.
584. MicroGas Limited
585. MicroMedical Deutschland GmbH
586. Microport Healthcare, LLC
587. Midland Pharmacies, Inc
588. Mississippi Medical Supply Cooperative, L.L.C.
589. MRI Equipment Partners, Ltd.
590. Mudhen Merger Corp.
591. Multi-Medica S.A.
592. Multipharm Limited
593. Nanjing Baiji Advanced Specialty Drug Store Company Limited
594. Nanning Baiji Advanced Specialty Pharmacy Company Limited
595. Nationwide Ostomy Supplies Limited
596. Navigator Health, Inc.
597. NaviHealth Holdings, LLC
598. NaviHealth SM Holdings, Inc.
599. NaviHealth, Inc.
600. Nexus Healthcare, Inc.
601. Nitric Bio Therapeudics, Inc.
602. Northern Michigan Supply Alliance, L.L.C.
603. Ohio Valley-Clarksburg, Inc.
604. Oncology Holdings, Inc.
605. Onpointe Medical Communications, LLC
606. Oval (Shanghai) Technologies, Inc.
607. Oval Technologies (H.K.) Pty Limited
608. Owen Healthcare Building, Inc.
609. Pacific Surgical Innovations, Inc.
610. Panther Merger Sub II, Inc.
611. Panther Merger Sub, Inc.
612. Parch, L.L.C.
613. Parch, L.L.C. State File
614. ParMed Pharmaceuticals, LLC
615. PatientScribe Inc.
616. PCI Acquisition I, Inc.
617. PCI Acquisition II, Inc.
618. PCI Services Holdings, Inc.

619. PCI Services III, Inc.
620. PCI/Acquisition III, Inc.
621. PCI/All Pack Holdings, Inc.
622. PCI/Delvco, Inc. State File
623. PCI/Tri-Line (Usa), Inc.
624. Pharmaceutical & Diagnostic Services, LLC
625. Pharmacy Service Corporation
626. Phillipi Holdings, Inc.
627. PHR Staffing, Inc.
628. Post-Acute Care Center For Research, LLC
629. Practicome Solutions, LLC
630. Princeton Diagnostic Isotopes, Inc.
631. Priority Healthcare Services Corporation
632. Procedure-Based Instrument Services, L.L.C.
633. Productos Urologos de Mexico S.A. de C.V.
634. Professional Health-Care Resources, Inc.
635. Pyxis Capital Corporation
636. Pyxis Funding II, LLC
637. Pyxis Funding, LLC
638. R Cubed, Inc.
639. R. P. Scherer Hardcapsule (West)
640. R.P. Scherer Inc.
641. R.P. Scherer Technologies, Inc.
642. Radiopharmacy Of Boise, Inc.
643. Radiopharmacy Of Northern California, Inc.
644. Renlar Systems, Inc.
645. RightCare Solutions, Inc.
646. Royal Merger Sub, Inc.
647. Scela, Inc.
648. Scriptline, Inc.
649. SensorMedics (Deutschland) GmbH
650. SensorMedics Corporation
651. Shanghai Baiwei Drug Store Company Limited
652. Shanghai Cardinal Baiwei Drug Store Co., Ltd.
653. Shanghai Jinyi Health Management Consultation Co., Ltd.
654. Shanghai Luoda Pharmaceutical Company Limited
655. Shenzhen Zhengdan Investment Company Limited
656. Simolo (GL) Limited
657. Sistemas Medicos ALARIS S.A. de C.V.
658. Snowden Pencer Holdings, Inc.
659. Snowden Pencer, Inc.
660. Solomons Company

661. Source Medical Corporation
662. SRX, Inc.
663. Strategic Implications International, LLC
664. Supplyline Technologies Limited
665. Surgical Carepair, L.L.C.
666. Surgical Instrument Repair Service, L.L.C.
667. Syncor Belgium SPRL
668. Syncor Diagnostics Bakersfield, LLC
669. Syncor Diagnostics Dallas, LLC
670. Syncor Diagnostics Encino, LLC
671. Syncor Diagnostics Fullerton, LLC
672. Syncor Diagnostics Laguna Hills, LLC
673. Syncor Diagnostics Plano, LLC
674. Syncor Diagnostics Sacramento, LLC
675. Syncor Financing Corporation
676. Syncor Italy srl
677. The Enright Group, Inc.
678. The Heron Corporation
679. The LVC Corporation
680. Tianjin Cardinal Pharmacy Co., Ltd.
681. Toledo Pharmacy Company
682. Tropic Merger Sub, Inc.
683. UroMed, Inc.
684. VIASYS Healthcare Ireland Limited
685. VIASYS Healthcare Island EHF
686. VIASYS Healthcare S.A.R.L.
687. VIASYS Holdings Inc.
688. VIASYS NeuroCare France SAS
689. VIASYS Polymer Products LLC
690. Virginia Imaging Center, LLC
691. Virginia Merger Corporation
692. Vistant Corporation
693. Vistant Holdings, Inc.
694. Vubiq Inc.
695. Wenzhou Xinte Pharmaceutical Co., Ltd.
696. West Hudson, Inc.
697. West Texas Nuclear Pharmacy Partners
698. Wholesale (PI) Limited
699. Williams Drug Distributors, Inc.
700. Wolf Merger Corp.
701. Wrangler Acquisition Sub, Inc.
702. Wuhan Baiji New & Special Drug Store Company Limited
703. Xiamen Cardinal Baiwei Drug Store Co., Ltd.
704. Xi'an Baiji Advanced Specialty Pharmacy Company Limited
705. Yorkshire Pharmacy, Inc.

## McKesson

1. "Aewige" ärztliche Wirtschaftsgesellschaft m.b.H., HG Wien
2. "die apoteeke in teesdorf" Mag. pharm. Gerda Kohlhauser KG, LG Wiener Neustadt
3. "Esplanade-Apotheke" Mag. pharm. Anna-Maria Köck KG, Landesgericht Wels
4. "Panther Apotheke" Mag. pharm. Sandra Krokos KG, Landesgericht Graz
5. 10101 Woodloch Forest LLC
6. 2012 DREAM LIMITED, England
7. 28CVR LIMITED, England
8. 3068312 Nova Scotia ULC
9. 3069163 Nova Scotia Limited
10. 3069164 Nova Scotia Limited
11. 30MC LIMITED, England
12. 701985 N.B. INC.
13. A C FERGUSON (CHEMIST) LIMITED, England
14. A. SUTHRELL (HAULAGE) LIMITED, England
15. A.F.M. Bergamo S.p.A., Italy
16. A.L.I. Holdings LLC
17. A.L.I. Imaging Systems Corp.
18. A.L.I. Technologies (International) LLC
19. AAH BUILDERS SUPPLIES LIMITED, England
20. AAH FURB PENSION TRUSTEE LIMITED, England
21. AAH Glass & Windows Limited, England
22. AAH Ireland, Dublin
23. AAH LIMITED, England
24. AAH Lloyds Insurance (IoM) Limited, Isle Of Man
25. AAH LLOYDS PENSION TRUSTEES LIMITED, England
26. AAH NOMINEES LIMITED, England
27. AAH ONE LIMITED, Scotland
28. AAH PHARMACEUTICALS LIMITED, England
29. AAH TWENTY FOUR LIMITED, Scotland
30. AAH TWENTY LIMITED, England
31. AAH TWENTY SIX LIMITED, England
32. ABG Apotheken-Beratungsgesellschaft mbH, Stuttgart
33. Access Health NZ Limited
34. AccessMed Holdings, Inc.
35. AccessMed, Inc. (AccessMed, LLC)
36. AccessMed, LLC
37. ACME DRUG CO. LIMITED, Scotland
38. ADDED MARKETING LIMITED, England
39. Adler Apotheke Krems Mag. Gabriele Denk KG, LG Krems an der Donau
40. Adler-Apotheke Mag.pharm. Ingrid Chvatal KG, LG Leoben
41. Admenta Beteiligungs GmbH, HG Wien
42. Admenta Denmark ApS, Copenhagen
43. Admenta Deutschland GmbH, Stuttgart
44. ADMENTA HOLDINGS LIMITED, England
45. ADMENTA ITALIA S.P.A., CCIAA di Bologna
46. ADMENTA PENSION TRUSTEES LIMITED, England
47. Admenta Sweden AB
48. ADMENTA UK LIMITED, England
49. Admenta Verwaltungs GmbH, HG Wien
50. AFM S.p.A., CCIAA di Bologna
51. AHLP PHARMACY LIMITED, England
52. ALCHEM (SOUTHERN) LIMITED, England
53. ALPE-ADRIA PHARMA farmacevtsko podjetje d.o.o., Ljubljana
54. Alphar Ayeneux, Belgium
55. Alphar Gilly DL, Belgium
56. Alphar Monceau sur Sambre, Belgium
57. Alphar Partners SA, Belgium
58. Alte Löwen-Apotheke Mag. pharm. Kristina Taubald KG, HG Wien
59. Alte Spora Apotheke Mag.pharm. Stephan Öhlzelt KG, LG St. Pölten
60. Amethyst Acquisition Corp.
61. Ancavion GmbH, AG Darmstadt
62. Ancillary Management Solutions, Inc.
63. Anton-Bruckner-Apotheke Mag.pharm. Christian Schwarzenbrunner KG, LG Linz
64. AOR Holding Company of Indiana, Inc. (AOR Holding Company of Indiana, LLC)
65. AOR Holding Company of Indiana, LLC
66. AOR Management Company of Alabama, Inc.
67. AOR Management Company of Arizona, Inc. (AOR Management Company of Arizona, LLC)

68. AOR Management Company of Arizona, LLC
69. AOR Management Company of Central Florida, Inc.
70. AOR Management Company of Florida, Inc.
71. AOR Management Company of Indiana, Inc. (AOR Management Company of Indiana, LLC)
72. AOR Management Company of Indiana, LLC
73. AOR Management Company of Kansas, Inc.
74. AOR Management Company of Missouri, Inc. (AOR Management Company of Missouri, LLC)
75. AOR Management Company of Missouri, LLC
76. AOR Management Company of Nevada, Inc.
77. AOR Management Company of New York, Inc.
78. AOR Management Company of North Carolina, Inc.
79. AOR Management Company of Ohio, Inc.
80. AOR Management Company of Oklahoma, Inc. (AOR Management Company of Oklahoma, LLC)
81. AOR Management Company of Oklahoma, LLC
82. AOR Management Company of Oregon, Inc.
83. AOR Management Company of Pennsylvania, Inc. (AOR Management Company of Pennsylvania, LLC)
84. AOR Management Company of Pennsylvania, LLC
85. AOR Management Company of South Carolina, Inc.
86. AOR Management Company of Texas, Inc.
87. AOR Management Company of Virginia, Inc. (AOR Management Company of Virginia, LLC)
88. AOR Management Company of Virginia, LLC
89. AOR of Indiana Management Partnership
90. AOR of Texas Management Limited Partnership
91. AOR of Texas Management, LLC
92. AOR Real Estate, Inc. (AOR Real Estate, LLC)
93. AOR Real Estate, LLC
94. AOR Synthetic Real Estate, Inc. (AOR Synthetic Real Estate, LLC)
95. AOR Synthetic Real Estate, LLC
96. AORIP, Inc.
97. AORT Holding Company, Inc. (AORT Holding Company, LLC)
98. AORT Holding Company, LLC
99. AORT LP, LLC
100. Aporana AS
101. Apotheke "Zum Bergmann" Mag.pharm. Sabine Tuttner KG, LG Leoben
102. Apotheke "Zur heiligen Dreifaltigkeit" Mag. pharm. Edith Schuller-Grundnig KG, Landesgericht Korneuburg
103. Apotheke "Zur Mutter Gottes" Mag. pharm. Karin Nozicka KG, HG Wien
104. Apotheke Atzgersdorf Mr. Hermann Latzin KG, Wien
105. Apotheke im Messepark Mag. pharm. Dietmar Purin KG, LG Feldkirch
106. Apotheke Niklasdorf Mag. pharm. Matthias Schöggl KG, LG Leoben
107. APOTHEKE U1 TROSTSTRASSE, Mag. pharm. Max Wellan KG, HG Wien
108. Apotheke Zum heiligen Antonius Mag. pharm. Walter Staschek KG, LG Wiener Neustadt
109. Apotheke zum heiligen Schutzengel Mag.pharm. Barbara Penz-Arzberger KG, Landesgericht Graz
110. Apotheke zum Patriarchen Mag. pharm. Brigitte Kölbl KG, HG Wien
111. Apotheke Zur hl. Dreifaltigkeit Mag. pharm. Doris Richter KG, LG Wiener Neustadt
112. Apotheke Zur Hütte Mag. pharm. Mrak KG, LG Leoben
113. Apovest AS
114. Apovest Drift AS
115. Art Acquisition Subsidiary, Inc.
116. Ascalon International, Inc.
117. ATLAS Travel Clinic Limited, England
118. Attentus Medical Sales, Incorporated (Attentus Medical Sales, LLC)
119. Attentus Medical Sales, LLC
120. Awarix, Inc.
121. Axis Medical Management, Inc.

122. AYRSHIRE PHARMACEUTICALS LIMITED, Scotland
123. AZIENDA FARMACEUTICA MUNICIPALE di Cremona S.p.A., CCIAA di Cremona
124. Azienda Farmacie Milanesi S.p.A., CCIAA di Milano
125. Babbingore Limited, Dublin
126. BAILLIESTON HEALTH CENTRE PHARMACY LIMITED, Scotland
127. Ballycane Pharmacy Limited, Ireland
128. BANNISTER & THATCHER LIMITED, England
129. BARCLAY PHARMACEUTICALS (ATHERSTONE) LIMITED, England
130. BARCLAY PHARMACEUTICALS LIMITED, England
131. BARLEY CHEMISTS HOLDINGS LIMITED, England
132. BARRY SHOOTER (ROMFORD) LIMITED, England
133. BDI Pharma, Inc. (BDI Pharma, LLC)
134. BDI Pharma, LLC
135. Beausejour Drugs Limited
136. BEAUTY CARE DRUGSTORES LIMITED, England
137. Beldere Corporation
138. BeneVi Health LLC (Biologics, Inc.)
139. BENU Apotheken B.V., Chamber of commerce Amsterdam
140. BENU Nederland BV, Kamer van Koophandel Amsterdam
141. BERKSHIRE MEDICAL SUPPLIES LIMITED, England
142. BETTERLIFEHEALTHCARE LIMITED, England
143. BIG PHARMA LIMITED, Scotland
144. Biologics, Inc.
145. Blackhall Pharmaceutical Distributors Limited
146. Blackhawk Development LLC
147. Blackstaff Pharmaceuticals Limited, England
148. Blomsterdalen Apotek AS
149. Blue Medical Supply, Inc. (McKesson Medical-Surgical Inc.)
150. Boad Seven, Inc.
151. BOFH Holdings Unlimited Company, Ireland
152. Bottomline Medical Solutions, LLC (Linear Holdings, LLC)

153. Breamor Pharmacy Limited, Ireland
154. Brevard Radiation Oncology, LLC
155. Brickyard Acquisition Inc. (Biologics, Inc.)
156. BRIDPORT MEDICAL CENTRE SERVICES LIMITED, England
157. Brocacef Groep N.V., Maarssen
158. Brockton Radiation Oncology, LLC
159. Brooklyn Radiation Oncology, LLC
160. Brukar Enterprises, Inc.
161. Bullet Acquisition Corporation
162. CAHILL MAY ROBERTS GROUP LIMITED, Dublin
163. California Golden State Finance Company
164. Camic Pharmacies Limited, Ireland
165. Canada Distribution Holdings Limited Partnership
166. Canada Retail Holdings Limited Partnership Societe en Commandite Gestion Detail Canada
167. Cancer Treatment Associates of Northeast Missouri, Ltd.
168. CARONET TRADING LIMITED, England
169. Carrollton Radiation Therapy Center, LLC
170. Cascade Medical Supply, Inc. (McKesson Medical-Surgical Minnesota Supply Inc.)
171. Cavalier Acquisition Company LLC
172. CCCN NW Building JV, LLC
173. Celesio Business Services Ltd., Ireland
174. CENTRALE D`ADMINISTRATION DE BIENS IMMOBILIERS, Bobigny
175. CGSF Funding Corporation (CGSF Funding LLC)
176. CGSF Funding LLC
177. Chem Labs Limited, Dublin
178. CHNG Newco LLC
179. CHNG NewSub Inc.
180. City Properties, S.A.
181. Civiche Farmacie Desio S.p.A., Italy
182. Claimone, LLC (Linear Holdings, LLC)
183. ClaimSecure Inc. (SUCCESSOR)
184. CLARK CARE GROUP LIMITED, England
185. CLARK MUNRO LIMITED, Scotland
186. ClarusONE Sourcing Services LLP
187. Clinicians Database, L.L.C.
188. CMR Holdings Ltd, Dublin
189. Coleham, Dublin
190. Colorado Cancer Centers, LLC
191. Combined Enterprises Corporation

192. COMPANY CHEMISTS ASSOCIATION LIMITED, England
193. COMPTOIR MONEGASQUE DE BIOCHIMIE, Monaco
194. COMPTOIR PHARMACEUTIQUE MEDITERRANEEN, Monaco
195. CONSORZIO SERVIZI SALUTARI S.C.A. R.L., Italy
196. CookCo, Inc.
197. Cophana SA, Belgium
198. Corporation Groupe Pharmessor/Pharmessor Group Corporation (SUCCESSOR 10/01/2017)
199. Corporation of America
200. CoverMyMeds LLC
201. CoverMYMeds Specialty Pharmacy Holdings LLC
202. CoverMYMeds Specialty Pharmacy LLC
203. CPG Industries, Inc.
204. Crocker Plaza Company (Crocker Plaza LLC)
205. Crocker Plaza LLC
206. CROSS AND HERBERT (DEVON) LIMITED, England
207. CROSS AND HERBERT (HOLDINGS) LIMITED, England
208. CROSS AND HERBERT LIMITED, England
209. Crowley`s Blackrock Limited, Dublin
210. Cypress Import Brokerage LLC
211. Cypress Medical Products LLC
212. D & K Healthcare Resources LLC
213. D & K Healthcare Resources, Inc. (D & K Healthcare Resources LLC)
214. D & K Pharmacy Solutions, Inc.
215. D & K Receivables Corporation
216. D.F. O'Neill (Chemists) Ltd, Dublin
217. Dale Apotek AS
218. Danubia-Apotheke Mag. pharm. Barbara Sedelies KG, HG Wien
219. Dargle Pharmacies Holdings Limited, Ireland
220. DATACARE Datenpflege des Pharmagroßhandels Ges.m.b.H., HG Wien
221. DATAPHARM, Paris
222. Daytona Beach Radiation Oncology, LLC
223. DC Land Company
224. DCAZ Land Company
225. Delta Clinical Research, LLC
226. DEPOTRADE, Bobigny
227. Derm Vantage, LLC

228. Diana-Apotheke Dr. et Mag. pharm. Michaela Stipsits KG, LG Eisenstadt
229. Die Apotheke Ebenfurth, Mag.pharm. Beate Haage-Löwe KG, LG Wiener Neustadt
230. Dispensing Solutions Acquisition Corporation (DS Holdings, Inc.)
231. Dispensing Solutions, Inc. (Dispensing Solutions, LLC)
232. Dispensing Solutions, LLC (DS Holdings, Inc.)
233. Ditt Apotek Amfi Os AS
234. Ditt Apotek Rodberg AS
235. Ditt Apotek Sorumsand AS
236. Diversified Healthcare, LLC
237. Dix Bulles Pharma, Belgium
238. DLI Market Intelligence ApS, Denmark
239. DOL Pharmacy Limited, Ireland
240. Donnybrook Pharmacy Limited, Ireland
241. Downtown Los Angeles Radiation Oncology, LLC
242. DS Holdings, Inc. (DS Holdings, LLC)
243. DS Holdings, LLC (McKesson Medical-Surgical Top Holdings Inc.)
244. DSRX, Inc. (DS Holdings, Inc.)
245. Dublin 2016 Acquisition, LLC
246. Dublin Holdings Acquisitions, LLC (Vantage Oncology Holdings, LLC)
247. Dublin POS I Acquisition Corp. (POS I Corp.)
248. East Indy CC, LLC
249. ECLIPSE HEALTHCARE LIMITED, England
250. Edwards Medical Supply, Inc.
251. EM Acquisition Corporation
252. Emploi AS
253. Engel-Apotheke Mag. pharm. Susanne Zauner KG, LG Wiener Neustadt
254. Ephrata Diamond Spring Water Co.
255. ESCON (ST NEOTS) LIMITED, England
256. Espafarmed S.L., Belgium
257. EUROSANTE (Société en liquidation), Luxembourg
258. Evesland Limited, Dublin
259. EVOLUTION HOMECARE SERVICES LIMITED, England
260. EXPERT HEALTH LIMITED, England
261. Family Pharmacy @ Las Colinas LLC
262. Fana Apotek AS
263. FAR.CO.SAN S.p.A., CCIAA di Arezzo
264. FARILLON LIMITED, England

265. Farmacia Garbatella I S.r.l., Italy
266. Farmacie Comunali di Modena S.p.A., Italy
267. Farmacie Comunali di Padova S.p.A., Italy
268. Farmacie di Sassuolo S.p.A., Italy
269. Farmacie Pratesi Pratofarma S.p.A., CCIAA di Prato
270. FARMALVARION S.R.L. SOCIO UNICO, Italy
271. FASTPRO International, Inc.
272. Federal Medical Supplies, Inc. (McKesson Medical-Surgical Minnesota Supply Inc.)
273. Felview Limited, Dublin
274. First Aid Service, Inc.
275. First Choice Medical Supply Holding, Inc. (First Choice Medical Supply Holding, LLC)
276. First Choice Medical Supply Holding, LLC
277. First Choice Medical Supply, LLC
278. FIRTH & PILLING LIMITED, England
279. Flex-Master Technology Holdings, Inc.
280. Floriani-Apotheke Mag.pharm. Doris Leykauf KG, LG Graz
281. Foremost de Venezuela, S.A. (Forvensa)
282. Foremost Homes Hawaii, Ltd.
283. Foremost Iran Corporation
284. Foremost Shir, Inc.
285. Foremost Tehran, Inc.
286. FOSTER & PLUMPTON GROUP LIMITED, England
287. FOSTER & PLUMPTON LIMITED, England
288. Foundation For Opioid Response Efforts
289. G J MALEY LIMITED, Isle Of Man
290. G K CHEMISTS (GLOS) LIMITED, England
291. G K CHEMISTS LIMITED, England
292. GEHE Immobilien GmbH & Co. KG, Stuttgart
293. GEHE Immobilien Verwaltungs-GmbH, Stuttgart
294. GEHE Pharma Handel GmbH, Stuttgart
295. General Medical Inc.
296. GEORGE STAPLES (STOKE) LIMITED, England
297. Gerard Ryan Pharmacy (Clonmel) Limited, Dublin

298. GERSTHOFER-APOTHEKE Mag.pharm. Elisabeth Reisegger KG, HG Wien
299. Giardina Enterprises, Inc.
300. Glendale Radiation Oncology, LLC (Vantage Oncology Treatment Centers, LLC)
301. Golden State Company, Ltd.
302. Golden State Corporate Services LLC
303. Golden State Insurance Company Limited
304. Golden State Milk Products Company
305. Goodman Manufacturing Company
306. Gorrys Pharmacy Limited, Ireland
307. Goviltown Limited, Westmeath
308. GPL 2007 LIMITED, England
309. GRAEME PHARMACY (STIRLING) LIMITED, Scotland
310. GREENS PHARMACEUTICAL (HOLDINGS) LIMITED, England
311. Greenville Radiation Care, Inc.
312. Greystones Pharmacy Limited, Dublin
313. GROUPE PHR, France
314. Gulf South Medical Supply, Inc. (Gulf South Medical Supply, LLC)
315. Gulf South Medical Supply, LLC
316. Gwinnett Radiation Oncology, LLC
317. H THATCHER LIMITED, England
318. Haleston Enterprises Limited, Dublin
319. HBO & Company (VI), Inc.
320. HBO & Company of Georgia
321. HBOC Ventures, Inc.
322. HC Beteiligungsgesellschaft mbH, HG Wien
323. HDSC Acquisition Corp.
324. Health Data Sciences Corporation
325. Health Mart Atlas, LLC
326. Health Mart Systems, Inc.
327. HEALTH NEEDS LIMITED, England
328. HEALTHCLASS LIMITED, England
329. Heinz Management Co.
330. Helmard Holdings Limited, Dublin
331. HEP HealthQx Holdings, Inc. (McKesson Technologies Inc.)
332. Herba Chemosan Apotheker-AG, HG Wien
333. HERBERT FERRYMAN LIMITED, England
334. Hercules Parent LLC
335. Herz - Jesu Apotheke Mag. pharm. Marianne Keller KG, HG Wien

336. Herz Jesu Apotheke & Parfümerie Mag. pharm. Ingrid Heller KG, LG Feldkirch
337. HF Land Company
338. HFN of Northwest Florida, Inc.
339. HIGGINS & SON (CHEMISTS) LIMITED, England
340. HILL-SMITH (WARRINGTON) LIMITED, England
341. HisComp Co., Zee Medical Service Co.
342. HMS Acquisition Corp.
343. HOLLYFAR - Marcas e Comunicação, Unipessoal, Lda., Portugal
344. HOLMSCROFT HC LIMITED, Scotland
345. HOLON, S.A., Portugal
346. Honeybee Bridge LLC
347. HTP Inc. (HTP LLC)
348. HTP LLC
349. Hubertus-Apotheke Mag.pharm. E. Klettenhofer KG, HG Wien
350. HUSKY AQUISITION INC.
351. Hygeia Bottled Water, Inc.
352. HYWEL DAVIES (CAERPHILLY) LIMITED, England
353. IHA Corp.
354. Imagine Health, Inc.
355. INDEPENDENT PHARMACY CARE CENTRES (2008) LIMITED, England
356. Indian River Radiation Oncology, LLC
357. Infolab, LLC
358. Innovent Oncology, LLC
359. INSPIRON DISTRIBUTION LIMITED, England
360. Integrated Cancer Care, LLC
361. Integrated Pathology Services
362. IntelliClaim, Inc.
363. Inten GmbH, Stuttgart
364. Intercal, Inc.
365. International Dairy Engineering Co. of Asia, Inc.
366. InterQual Inc.
367. intraFUSION GP, LLC
368. Intrafusion Holding Corp.
369. intraFUSION Purchasing Network, LLC
370. intraFUSION Research Network, LLC
371. Inviva, McKesson Pharma Care Network Corporation / La Corporation Inviva, Reseau de soins pharmacologiques McKesson (SUCCESSOR)
372. Iowa Pharmaceutical Services, LLC
373. IPCC LIMITED, England
374. IPD Holdings, Inc.
375. J S DENT LIMITED, England
376. Bradbury (Surgical) Limited, Northern Ireland
377. J.G. Crowley Pharmacy Limited, Dublin
378. JACS, Inc.
379. Jaron, Inc.
380. Jeffersonville Radiation Technology, LLC
381. Jessheim Apotek AS
382. Jewett Drug Co.
383. Jewett Drug LLC
384. Johannes Apotheke Mag. pharm. Deutsch KG, LG Graz
385. JOHN BELL & CROYDEN LIMITED, England
386. JOHN HAMILTON (PHARMACEUTICALS) LIMITED, Scotland
387. Jupiter Acquisition Ltd.
388. Kairnbury, Dublin
389. Kathleen Properties Subdivision Association, Inc.
390. Keling Limited
391. Keltman Pharmaceuticals, Inc. (Linear Holdings, LLC)
392. Kemofarmacija, veletrgovina za oskrbo zdravstva, d.d., Ljubljana
393. Keystone/Ozone Pure Water Company
394. Kilshallow Limited, Dublin
395. KINGSWOOD CHEMISTS LIMITED, England
396. KINGSWOOD GK LIMITED, England
397. Kitco, Inc.
398. Knowledgeable Healthcare Solutions, Inc.
399. Kreuz-Apotheke KG, HG Wien
400. KWS & P, Inc.
401. KWS & P/SFA, Inc.
402. KYLE & CARRICK HOLDINGS LIMITED, Scotland
403. Laboratoria Flandria NV, Belgium
404. Laboratory Supply Company
405. Labsco Holdings, Inc. (McKesson Medical-Surgical Inc.)
406. Leesburg Radiation Oncology, LLC
407. LEVELCROWN LIMITED, England
408. Liberty Real Estate NJ LLC
409. Lind-Apotheke Mag. pharm. Alexander Telesko KG, LG Klagenfurt
410. Linear Holdings, Inc. (McKesson Medical-Surgical Top Holdings Inc.)
411. Linear Holdings, LLC (Linear Holdings, Inc.)

412. Linear Medical Solutions, LLC
413. LINFORD PHARMACIES LIMITED, England
414. LISEAPOTEKENE AS
415. Lissone Farmacie S.p.A., CCIAA di Monza e Brianza
416. LIVINGSTON HEALTH CENTRE (P.D) CO. LIMITED, Scotland
417. LKW, Inc.
418. LLOYDS CHEMISTS LIMITED, England
419. LLOYDS CHEMISTS RETAIL (NORTHERN) LIMITED, England
420. LLOYDS CHEMISTS RETAIL LIMITED, England
421. LLOYDS GROUP PROPERTIES LIMITED, England
422. Lloyds Pharmacy Clinical Homecare Limited, England
423. LLOYDS PHARMACY LIMITED, England
424. LLOYDS PROPERTIES LIMITED, England
425. LLOYDS Property Management Company Belgium S.A., Belgium
426. LLOYDS RETAIL CHEMISTS LIMITED, England
427. Lloyds Retail S.r.l., Socio Unico, Italy
428. LLOYDSFARMACIA ROMA 4 S.R.L., Italy
429. Lloydspharma Group S.A., Belgium
430. Lloydspharma S.A., Belgium
431. Lloydspharmacy Ireland Limited, Dublin
432. Lory Apotheke Mag. pharm. Karin Eichinger KG, HG Wien
433. LP Clinical Homecare Group Limited, England
434. LPL ONE LIMITED, England
435. M H GILL LIMITED, England
436. M PAYNE & CO LIMITED, England
437. Macfor International Finance Company
438. MACON Acquisition Corp.
439. Macro Helix LLC
440. Madison Acquisition Inc.
441. Marathon Acquisition Subsidiary, Inc.
442. Mariahilf-Apotheke Mag. pharm. Christoph Rücklinger KG, LG St. Pölten
443. Mariahilf-Apotheke Mag. pharm. Helga Mann KG, Landesgericht Graz
444. Marien-Apotheke Mag. pharm. Thomas Job KG, LG Eisenstadt
445. Marien-Apotheke, Mag.pharm. Eva Grabner KG, Landesgericht Korneuburg
446. Maryland First Aid Co., Inc.
447. MASTA Limited, England
448. Masters Drug Company, Inc.
449. MATIS Immobilien OHG, Stuttgart
450. Maurice F. Dougan Limited, Dublin
451. May Roberts Ltd, Dublin
452. MCK Acquisition Corp.
453. McK International Financial Holdings (Barbados) SRL
454. McKesson (Cayman Islands) Inc.
455. McKesson (Shanghai) Trading Company Limited
456. McKesson + Strategic Solutions ULC / Solutions Strategiques McKesson + ULC
457. McKesson Automation Systems Inc.
458. McKesson Belgium Holdings SPRL, Belgium
459. McKesson Canada Corporation/La Corporation McKesson Canada (SUCCESSOR)
460. McKesson Canada Finance IA ULC
461. McKesson Canada Finance IB ULC
462. McKesson Capital Funding Corp.
463. McKesson Capital Funding Corporation
464. McKesson Capital LLC
465. McKesson Central Fill LLC (McKesson Distribution Holdings LLC)
466. McKesson Contract Research Organization LLC
467. McKesson Cork Business Solutions Unlimited Company
468. McKesson Corporate Properties, Inc.
469. McKesson Corporation
470. McKesson Development Corp.
471. McKesson Distribution Holdings LLC
472. McKesson Drug Company LLC
473. McKesson Europe AG
474. McKesson Europe Holdings GmbH & Co. KGaA
475. McKesson Europe Holdings Verwaltungs GmbH
476. McKesson Financial Holdings II Unlimited Company
477. McKesson Financial Holdings Unlimited Company
478. McKesson Financing Trust III
479. McKesson Financing Trust IV
480. McKesson Foundation Inc.

481. McKESSON FRANCE HOLDINGS, Bobigny
482. McKesson France Retail, Bobigny B
483. McKesson Funding Company of Canada
484. McKesson Global Procurement & Sourcing Limited
485. McKesson Global Sourcing Limited
486. McKesson Global Sourcing Limited [Irish Branch]
487. McKesson Health Solutions Holdings LLC
488. McKesson Health Solutions LLC
489. McKesson Health Solutions Puerto Rico Inc.
490. McKesson Health Solutions Texas Inc.
491. McKesson High Volume Solutions Inc.
492. McKesson Information Solutions Finance S.a.r.l.
493. McKesson Information Solutions Holdings II S.a.r.l.
494. McKesson Information Solutions Holdings III S.a.r.l.
495. McKesson Information Solutions Holdings IV S.a.r.l.
496. McKesson Information Solutions Holdings V S.a.r.l.
497. McKesson Information Solutions III LLC
498. McKesson Information Solutions Inc. (McKesson Information Solutions LLC)
499. McKesson Information Solutions IV LLC
500. McKesson Information Solutions LLC
501. McKesson Information Solutions Topholdings S.a.r.l.
502. McKesson Information Solutions UK Limited
503. McKesson International Bermuda IP2A Limited
504. McKesson International Bermuda IP2B Unlimited
505. McKesson International Bermuda IP3A Limited
506. McKesson International Bermuda IP3B Unlimited (McKesson International Bermuda IP3A Limited)
507. McKesson International Bermuda IP4A Limited
508. McKesson International Bermuda IP4B Unlimited (McKesson International Bermuda IP4A Limited)
509. McKesson International Bermuda IP5A Limited
510. McKesson International Bermuda IP5B Unlimited (McKesson International Bermuda IP5A Limited)
511. McKesson International Bermuda Opco1A Limited
512. McKesson International Bermuda Opco1B Unlimited (McKesson International Bermuda Opco1A Limited)
513. McKesson International Bermuda Opco3A Limited
514. McKesson International Bermuda Opco3B Unlimited (McKesson International Bermuda Opco3A Limited)
515. McKesson International Bermuda Opco4A Limited
516. McKesson International Bermuda Opco4B Unlimited
517. McKesson International Finance III Limited (McKesson US Finance Corporation)
518. McKesson International Finance S.a.r.l.
519. McKesson International Holdings III S.a.r.l.
520. McKesson International Holdings IV S.a.r.l.
521. McKesson International Holdings S.a.r.l.
522. McKesson International Holdings Unlimited Company
523. McKesson International Holdings VI S.a.r.l.
524. McKesson International Holdings VII S.a.r.l.
525. McKesson International Investment Corp.
526. McKesson International Ireland I Limited
527. McKesson International LLC
528. McKesson International Malaysia Sdn Bhd
529. McKesson International S.a.r.l.
530. McKesson International Topholdings S.a.r.l.
531. McKesson Ireland Limited
532. McKesson Logistics Solutions
533. McKesson Medical Imaging Company Ltd. (predecessor)
534. McKesson Medical-Surgical FDT Inc.
535. McKesson Medical-Surgical Government Solutions LLC
536. McKesson Medical-Surgical Holdings Inc.
537. McKesson Medical-Surgical Inc.
538. McKesson Medical-Surgical Iowa Inc.

539. McKesson Medical-Surgical Iowa Supply Inc.
540. McKesson Medical-Surgical Maine Inc.
541. McKesson Medical-Surgical Manufacturing Inc.
542. McKesson Medical-Surgical MediMart Inc.
543. McKesson Medical-Surgical MediNet Inc.
544. McKesson Medical-Surgical Minnesota Inc. (McKesson Medical-Surgical Holdings Inc.)
545. McKesson Medical-Surgical Minnesota Supply Inc.
546. McKesson Medical-Surgical Supply Chain Services LLC
547. McKesson Medical-Surgical Top Holdings Inc.
548. McKesson Medication Management Holdings Inc.
549. McKesson Medication Management Virgin Islands Inc.
550. McKesson Norway Holdings AS
551. McKesson Pharmacy Optimization LLC
552. McKesson Pharmacy Systems Canada ULC
553. McKesson Pharmacy Systems LLC
554. McKesson Plasma and Biologics LLC
555. McKesson Prescription Drug Plan LLC
556. McKesson Property Company, Inc.
557. McKesson Purchasing Company LLC
558. McKesson Services Inc. (McKesson Services LLC)
559. McKesson Services LLC
560. McKesson Sourcing Services Inc.
561. McKesson Specialized Distribution Inc. / McKesson Distribution Specialisee Inc. (Successor)
562. McKesson Specialty Arizona Inc.
563. McKesson Specialty Care Distribution Corporation (McKesson Specialty Care Distribution LLC)
564. McKesson Specialty Care Distribution JV LLC
565. McKesson Specialty Care Distribution LLC
566. McKesson Specialty Corporation
567. McKesson Specialty Distribution LLC
568. McKesson Specialty Health Innovative Practice Services, LLC
569. McKesson Specialty Health Management Services LLC

570. McKesson Specialty Health Pharmaceutical & Biotech Solutions, LLC
571. McKesson Specialty Health Pharmaceutical & Biotech Solutions, LP (McKesson Specialty Health Pharmaceutical & Biotech Solutions, LLC)
572. McKesson Specialty Health Technology Products LLC
573. McKesson Specialty Pharmacy, LP (RxC Acquisition Company)
574. McKesson Specialty Prescription Services (Atlantic) Corporation/Corporation McKesson Services de Prescription Spécialisée (Atlantique)
575. McKesson Specialty Prescription Services (B.C.) Corporation
576. McKesson Specialty Prescription Services Corporation
577. McKesson SPS (Manitoba) Corporation
578. McKesson Strategic Services Limited
579. McKesson Technologies Inc.
580. McKesson Trading Company
581. McKesson Transportation Systems, Inc.
582. McKesson UK Finance I Limited
583. McKesson UK Finance II Limited
584. McKesson UK Finance V Limited
585. McKesson UK Holdings Limited
586. McKesson US Finance Corporation
587. McKesson US Holdings GP
588. McKesson Ventures LLC
589. McKesson Ventures Unlimited Company
590. McQueary Bros. Drug Company
591. McQueary Bros. Drug Company, LLC
592. McSweeney Dispensers 10 Limited, Ireland
593. McSweeney Dispensers 23 Limited, Ireland
594. MDD pharma N.V., Belgium
595. MED3000 Health Solutions Southeast
596. MED3000 RPG
597. Medaid Supply, Inc.
598. Medcon Telemedicine Technology, Inc.
599. Median Healthcare Services Unlimited Company, Ireland
600. Medical & Vaccine Products, Inc.
601. Medical Advisory Services for Travellers Abroad Limited, England
602. Medical Specialties Distributors Holdings, Inc. (MSD Parent Corporation)
603. Medical Specialties Distributors, LLC

604. Medical Specialties Holdings Corp. (Medical Specialties Holdings II Corp.)
605. Medical Specialties Holdings II Corp.
606. Medicentres Canada Inc. (SUCCESSOR)
607. Medicine Shoppe Atlantic Corporation
608. Medicine Shoppe Canada Corporation
609. Medicine Shoppe Canada Real Estate Corporation
610. MEDIMART LIMITED, England
611. MediVation, Inc.
612. MedVentive Inc.
613. MeMed CZ s.r.o., Praha
614. Menges Medizintechnik Schweiz AG, Sankt Gallen
615. Merlin Subsidiary Inc.
616. Merrick Healthcare Limited
617. Metabolic Healthcare Holdings Limited, England
618. Metabolic Healthcare Limited, England
619. Metropolitan Integrated Cancer Center, L.L.C.
620. MH/USON Radiation Management Company, LLC
621. MHD-USO General, LLC
622. MHD-USO Management Company, LP
623. MHS Connecticut LLC
624. Michigan Pharmaceutical Services, LLC
625. Mid-Atlantic Radiation Oncology LLC
626. Millennium Merger Corporation
627. Mohawk Liqueur Corporation
628. Mohren-Apotheke Mag. Christian Müller KG, LG Graz
629. Moore Medical LLC (McKesson Medical-Surgical Government Solutions LLC)
630. Mosaic Acquisition Corporation
631. MOUNT PHARMACY LIMITED, England
632. MSA Products LLC
633. MSD Acquisition Corp. (Medical Specialties Holdings Corp.)
634. MSD Parent Corporation (MSD Acquisition Corp.)
635. Multum Information Services, Inc.
636. MUNRO PHARMACY LIMITED, Scotland
637. MWPC Acquisition Corp.
638. MWPC Acquisition Corp. (PA)
639. My MHealth Limited, England & Wales
640. myhca, inc.
641. NARO, LLC
642. National Oncology Alliance, Inc.
643. Natureline, Dublin
644. NDC of Canada, Inc.
645. NDCHealth Corporation
646. NDCHealth Pharmacy Systems and Services, Inc.
647. Nebraska Pharmaceutical Services, LLC
648. Negatron, Inc.
649. Nensi d.o.o., Ljubljana
650. NERO GP, LLC
651. New Experimental Therapeutics of San Antonio, LLC
652. NEW KIRK PHARMACY LIMITED, Scotland
653. New Mexico Pharmaceutical Services, LLC
654. NewHealthCo, LLC
655. NexCura, LLC (McKesson Specialty Health Technology Products LLC)
656. Nibelungen-Apotheke Mag. pharm. Michaela Wachter KG, LG St. Pölten
657. Norsk Medisinaldepot AS
658. North Carolina Pharmaceutical Services, LLC
659. Northeast Pennsylvania Radiation Oncology, LP
660. Northern Arizona Oncology Centers, LLC
661. Northern Boulevard Radiation Oncology Management, LLC
662. Northern San Fernando Valley Radiation Oncology, LLC
663. Northstar Healthcare Holdings Limited
664. Northstar Healthcare Holdings Unlimited Company
665. Northstar Healthcare Limited
666. Northstar Healthcare Unlimited Company
667. Northstar International Holdings Limited
668. Northstar Rx LLC
669. Norvern Enterprises, Inc.
670. NR Direct, Inc. (McKesson Patient Care Solutions Inc.)
671. O`Leary Pharmacy (Lucan) Limited, Dublin
672. OCP FORMATION, Bobigny
673. OCP PORTUGAL, PRODUTOS FARMACÊUTICOS, S.A., Maia
674. OCP REPARTITION, Bobigny B
675. OCP, Bobigny
676. Oncology Holdings II, Inc.
677. Oncology Holdings, Inc.
678. Oncology Rehab Partners, LLC

679. Oncology Therapeutics Network Corporation
680. Oncology Today, LP
681. OnMark, Inc.
682. Optimed Health Limited, England & Wales
683. Orca Acquisition Corp.
684. Ørebekk Apotek AS
685. Oswald-Apotheke Mag. pharm. Ilse Pedevilla KG, LG Feldkirch
686. OTN Generics, Inc.
687. OTN Participant, Inc.
688. Outpatient Infusion Systems, Inc
689. Øygarden Apotek AS
690. P C Cahill & Company Limited, Dublin
691. P.L.C.E., Inc.
692. Packet Merger Sub Inc.
693. PALEMODA LIMITED, England
694. Palm Merger Sub, Inc.
695. Panther Acquisition Corporation
696. Panther-Apotheke Mag. pharm. Margarete Breyha KG., LG St. Pölten
697. Paracelsus-Apotheke Mag. pharm. Dr. Birgit Müller KG, Austria
698. Pathology Service Associates, LLC
699. Pathway Purchasing Network, LLC
700. Patient Account Management Services, Inc.
701. PAUL WHEELER LIMITED, England
702. PCB SA, Belgium
703. PEEL STREET PHARMACY LIMITED, England
704. peerVue, Inc. (DE)
705. peerVue, Inc. (NH)
706. Pemberton Marketing International Limited
707. Penn-Chem Corporation
708. PERILLA Grundstücks-Verwaltungsgesellschaft mbH & Co. KG, AG München
709. Per-Se Transaction Services, Inc.
710. PF2 McKesson Technologies Inc.
711. PF2 SpinCo Inc.
712. Pharma Belgium Belmedis SA, Belgium
713. PHARMA PARTNERS, Belgium
714. Pharma Services (NI) Limited, Northern Ireland
715. Pharmaceutical Distributors Federation Ireland Company Limited By Guarantee
716. Pharmaceutical Support Services, Inc.
717. Pharmacie Ananga-Talom, Belgium
718. Pharmacie de la Bascule, Belgium
719. PHARMACTIV DISTRIBUTION, Bobigny B
720. Pharmacy O`Riada Holdings Limited, Dublin
721. PHARMAGEN LIMITED, England
722. PHILIP GOODMAN LIMITED, England
723. PHR ANTILLES, FORT DE FRANCE
724. PhyServ Solutions, Inc.
725. Physician Micro Systems, Inc.
726. Physician Oncology Services Management Company, LLC
727. Physician Reliance Holdings, LLC
728. Physician Reliance Maryland, LP
729. Physician Reliance Network, Inc. (Physician Reliance Network, LLC)
730. Physician Reliance Network, LLC
731. Physician Reliance, L.P.
732. Physician Reliance, LLC
733. Physician Sales & Service Limited Partnership
734. Physician Sales & Service, Inc. (McKesson Medical-Surgical Top Holdings Inc.)
735. Pindsle Apotek AS
736. PMLX Limited
737. POC Management Group, LLC (Dispensing Solutions, Inc.)
738. Podiatry Online, Inc.
739. Portico Systems of Delaware, Inc.
740. POS I Corp. (Dublin 2016 Acquisition, LLC)
741. Presbyterian Cancer Center-Dallas, LLC
742. Prescribing Support Services Limited, England & Wales
743. Prima Brands Limited, Northern Ireland
744. PRIMELIGHT LIMITED, England
745. Prismedica S.A.S.
746. PRN Physician Reliance, LLC
747. Pro-AvO GmbH, Deutschland
748. Proclaim, Inc. (McKesson Medical-Surgical MediMart Inc.)
749. PRODILAB, France
750. Providence Radiation Oncology Partners LLC
751. PSS China Sourcing Limited
752. PSS Global Holdings
753. PSS Global Sourcing China Business Trust
754. PSS Global Sourcing Hong Kong Limited

755. PSS Global Sourcing Limited [Hong Kong]
756. PSS HK 1 Limited
757. PSS Holding, Inc. (McKesson Medical-Surgical Inc.)
758. PSS Service, Inc. (McKesson Medical-Surgical Top Holdings Inc.)
759. PSS Southeast Asia Limited
760. PSS World Medical, Inc.
761. PST Products, LLC
762. PST Services, Inc. (PST Products, LLC)
763. Purchasing Alliance for Clinical Therapeutics, LLC
764. R F FOSKETT & SON LIMITED, England
765. R GORDON DRUMMOND LIMITED, England
766. R/X Automation Solutions, LLC
767. Raabtal-Apotheke Mag.pharm. Karin Drawetz KG, Landesgericht Graz
768. Radiation Oncology Services of America, Inc.
769. Radiotherapy Clinic Holdings, LLC
770. Radiotherapy Clinics of Kentuckiana, LLC
771. Radiotherapy Clinics of Kentuckiana-2, LLC
772. Radius Data Solutions, LLC
773. Radius Reimbursement Services, LLC
774. Radunnco, Inc.
775. Rancare, Inc.
776. Randolph Home Care Inc.
777. Randolph Medical Inc.
778. RCOG Cancer Centers, LLC
779. Rebel Distributors Corp. (McKesson Medical-Surgical Top Holdings Inc.)
780. recucare GmbH, Stuttgart
781. recusana GmbH, Stuttgart
782. Regenbogenapotheke "Am Leberberg" Mag. pharm. Andreas Portisch KG, HG Wien
783. RelayHealth Corporation (McKesson Information Solutions LLC)
784. Renoir Acquisition Corporation
785. Renoir Acquisition Corporation (DE)
786. RESEAU SANTE, BREST
787. RetraceHealth, Inc.
788. Rexall Pharmacy Group Ltd.
789. Rexall/Pharma Plus Pharmacies (BC) Ltd.
790. Rexall/Pharma Plus Pharmacies (Sask) Ltd.
791. Rexall/Pharma Plus Pharmacies Ltd.
792. Riel, Inc.
793. Riverside Radiation Oncology, LLC (Vantage Oncology Treatment Centers, LLC)
794. R-jet, Incorporated
795. RMCC Cancer Center, Inc. (RMCC Cancer Center, LLC)
796. RMCC Cancer Center, LLC
797. ROSA of Eastern Shore, LLC
798. ROSA of Georgia, LLC
799. ROSA of South Alabama, LLC
800. ROSA of Southern New Jersey, LLC
801. Roth Medical Services, Inc.
802. RPRS, LLC
803. RX Information Technology LLC
804. RxC Acquisition Company
805. RxCrossroads 3PL LLC
806. Ryle and De Lacy Pharmacies Limited, Ireland
807. S.K.U., Inc.
808. Salus-Apotheke Mag. pharm. Simone Gaigg KG, Salzburg
809. Salvator - Apotheke Mag. pharm. Gertrude Pölzl KG, LG Leoben
810. San Bruno Mountain Ltd., A California Limited Partnership
811. Sandviken Apotek AS
812. Sangers (Northern Ireland) Limited, Northern Ireland
813. SANOVA Pharma GesmbH, HG Wien
814. SAVORY & MOORE (JERSEY) LIMITED, Jersey
815. SAVORY & MOORE LIMITED, Scotland
816. SCHOLES (CHEMISTS) LIMITED, England
817. Schutzengelapotheke Neufeld Mag. Schweifer KG, LG Eisenstadt
818. Scrip Pak, LLC (Linear Holdings, LLC)
819. Script2U Holdings LLC
820. Script2U LLC
821. ScriptHero LLC
822. ScriptHero Pharmacy Holdings LLC
823. ScriptHero Pharmacy LLC
824. Select RX, LLC (Linear Holdings, LLC)
825. SelectPlus Oncology, LLC
826. Sens Arbeidsinkludering AS
827. Sens Eiendom AS
828. Sens Gruppen AS
829. Sens Utvikling AS

830. SERVICE DE LA REPARTITION PHARMACEUTIQUE, Paris
831. SF Valley Derm Equipment I, LLC
832. Sherman Oaks Radiation Oncology, LLC (Vantage Oncology Treatment Centers, LLC)
833. Sherman Oaks Radiation Technology, LLC (Vantage Oncology Treatment Centers, LLC)
834. Shoup Properties, Inc.
835. SHS V Medtech Investments GmbH & Co. KG
836. Simply Medical LLC
837. SIVEM Pharmaceuticals ULC/SIVEM Produits Pharmaceutiques ULC
838. Six R Investments, Inc.
839. SOCIETE COOPERATIVE OUEST PARTAGE, BREST
840. SOCIETE D`ETUDES ET DE REALISATIONS INFORMATIQUES, Monaco
841. Sofarmex BVBA, Belgium
842. Sofiadis SCRL, Belgium
843. Soldier Acquisition Corporation
844. SOPI The Lough Limited, Ireland
845. SOPI Youghal Limited, Ireland
846. SourceTenn LLC
847. South Alabama Cancer Centers, LLC
848. South Bay Radiation Oncology, LLC
849. South Pacific Medical Inc.
850. Southeast Merger Corp.
851. Southeast Texas Cancer Centers, L.P.
852. Southern California Radiation Oncology, LLC
853. Spider Acquisition Corporation
854. Spirit Acquisition Corporation
855. Spring Valley Industries, LLC
856. St. Louis Pharmaceutical Services, LLC
857. St. Lucas-Apotheke Mag.pharm. Ilona Elisabeth Leitner KG, HG Wien
858. St. Markus Apotheke Dr. Elke Kramberger-Kaplan KG, LG Linz
859. St. Richard Apotheke Mag.pharm. Ursula Kohl KG, Landesgericht Korneuburg
860. Stadion-Apotheke Mag. pharm. Ulrike Grosser-Schmidt KG, LG St. Pölten
861. Stadt-Apotheke "Zur heiligen Barbara" Mag. pharm. Igor Mauritsch KG, Austria
862. Stadtapotheke Fürstenfeld Mag. pharm. Waltraud Maier KG, Landesgericht Graz

863. Stat RX USA, LLC (Linear Holdings, LLC)
864. STATIM FINANCE LIMITED, England
865. STEPHEN SMITH LIMITED, Guernsey
866. Sterling Medical Services, LLC (McKesson Patient Care Solutions Inc.)
867. STQ LLC
868. Strategic Health Alliance II, Inc.
869. Strategic Health Alliance Management Corp.
870. Strategic Sourcing Services LLC
871. Streator Radiation Oncology, LLC
872. Stubaital-Apotheke Mag.pharm. Christian Kernstock KG, LG Innsbruck
873. Summa Script LLC
874. Sund Apotek AS
875. SUPERFIELD LIMITED, England
876. Supplylogix LLC
877. T AND I WHITE LIMITED, England
878. T. Sheridan Sales & Marketing, Dublin
879. Tabor Apotheke Mag. pharm. Wolfram Schaden KG, LG Steyr
880. Targa Parent Holdings, LLC
881. TBC Products, Inc.
882. Temperature Controlled Pharmaceuticals Limited
883. Test Corporation changed 2 GM 3 AG
884. Test Entity - Corporation
885. Test Entity - Corporation (Glenette)
886. Test Entity - LLC (Anne)
887. Test Entity - LLC (Glenette)
888. Test Entity - LLC (Karen)
889. Test Entity - LLC (Melissa)
890. Test Entity - LP
891. Test Entity - Manager LLC
892. Test Entity - Member LLC
893. Test Entity - Parent Corporation
894. Texas Pharmaceutical Services, LLC
895. Texas Proton Therapy Center, LLC
896. The Oregon Cancer Centers, Ltd.
897. Theratech, Inc. (McKesson Medical-Surgical Top Holdings Inc.)
898. Thriftymed, Inc. (McKesson Medical-Surgical Top Holdings Inc.)
899. THURNBY ROSE LIMITED, England
900. Titus Home Health Care LLC
901. Tjellesen Max Jenne A/S, Rodovre
902. Todin A/S, Denmark
903. TOPS Pharmacy Services, Inc.
904. Tower Radiation Technology, LLC
905. Tracer Enterprises LLC

906. Tri-State Radiation Oncology Centers, LLC
907. Tuna Acquisition Corp.
908. Tyler Radiation Equipment Leasing, LLC
909. Unicare Dispensers 16 Limited, Ireland
910. Unicare Dispensers 27 Limited, Ireland
911. Unicare Dispensers 5 Limited, Ireland
912. Unicare Pharmacy Group Limited, Dublin
913. United Drug (Wholesale) Limited
914. United Drug Distributors Ireland Limited
915. Unity Oncology, LLC
916. Urbani-Apotheke Mag. pharm. Bernhard Prattes KG, LG Graz
917. US Oncology Corporate, Inc.
918. US Oncology Holdings, Inc.
919. US Oncology Lab Services, LLC
920. US Oncology Pharmaceutical Services, LLC
921. US Oncology Pharmacy GPO, L.P.
922. US Oncology Reimbursement Solutions, LLC
923. US Oncology Research, Inc. (US Oncology Research, LLC)
924. US Oncology Research, LLC
925. US Oncology Specialty, LP
926. US Oncology, Inc.
927. USCITA LIMITED, England
928. USON Insurance Company
929. USON Risk Retention Group, Inc.
930. Utah Acquisition Corporation
931. Valley Equipment Company
932. Vantage Acquisition Company, LLC (Vantage Oncology, LLC)
933. Vantage Acquisition Finance, LLC (Vantage Oncology, LLC)
934. Vantage Cancer Care - Alabama, LLC (Vantage Cancer Care Networks, LLC)
935. Vantage Cancer Care - Indiana, LLC (Vantage Cancer Care Networks, LLC)
936. Vantage Cancer Care - New Mexico, LLC (Vantage Cancer Care Networks, LLC)
937. Vantage Cancer Care Network of Alabama, LLC (Vantage Cancer Care Networks, LLC)
938. Vantage Cancer Care Network of Indiana, LLC (Vantage Cancer Care Networks, LLC)
939. Vantage Cancer Care Network of New Mexico, LLC (Vantage Cancer Care Networks, LLC)
940. Vantage Cancer Care Networks, LLC
941. Vantage Cancer Centers of Georgia, LLC
942. Vantage Central Ohio Radiation Therapy, LLC
943. Vantage Equipment Acquisition, LLC
944. Vantage Exton Radiation Oncology, LLC
945. Vantage Medical Management Services, LLC
946. Vantage Mokena Radiation Oncology, LLC
947. Vantage Oncology - Brooklyn, LLC
948. Vantage Oncology Centers - Beverly Hills, LLC
949. Vantage Oncology Finance Co. (Vantage Oncology, LLC)
950. Vantage Oncology Holdings, LLC
951. Vantage Oncology LLC PAC Corporation
952. Vantage Oncology Physics, LLC
953. Vantage Oncology Treatment Centers - Brevard, LLC
954. Vantage Oncology Treatment Centers - Brockton, LLC
955. Vantage Oncology Treatment Centers - Central Florida, LLC (Vantage Oncology Treatment Centers, LLC)
956. Vantage Oncology Treatment Centers - Northern Arizona, LLC
957. Vantage Oncology Treatment Centers - Ohio, LLC (Vantage Oncology Treatment Centers, LLC)
958. Vantage Oncology Treatment Centers - San Antonio, LLC (Vantage Oncology Treatment Centers, LLC)
959. Vantage Oncology Treatment Centers - Tri-State, LLC
960. Vantage Oncology Treatment Centers, LLC
961. Vantage Oncology, LLC
962. Vantage Operational Support Services, LLC
963. Vantage Radiation Oncology Associates, LLC
964. Vantage San Antonio Radiation Oncology, LLC (Vantage Oncology Treatment Centers - San Antonio, LLC)
965. Vantage South Suburban Radiation Oncology, LLC
966. VC Services, Inc.
967. VEC GP, LLC
968. VerbalCare, LLC
969. Verdal Apotek AS
970. Very Important Products, Inc.

971. Visitacion Associates
972. Vitapharm, proizvodnja in trgovina farmacevtskih izdelkov d.o.o., Murska Sobota
973. Vitusapotek Jessheim Storsenter AS
974. Vitus-Apoteket Torvbyen Fredrikstad AS
975. VOTC-Queens, LLC
976. Vulcan Acquisition Subsidiary, Inc.
977. W H CHANTER LIMITED, England
978. W H GREEN (CHEMISTS) LIMITED, England
979. W JAMIESON (CHEMISTS) LIMITED, England
980. W.H.C.P. (DUNDEE) LIMITED, Scotland
981. Walsh Distribution, L.L.C.
982. Walsh Healthcare Solutions LLC
983. Walsh Healthcare Solutions, Inc.
984. Walsh Heartland, L.L.C.
985. Walsh Southwest L.L.C.
986. Well.ca ULC
987. West Florida Radiation Therapy, LLC
988. West Wholesale Drug Co.
989. WESTCLOSE LIMITED, England
990. Western Tumor Radiation Oncology, LLC (Vantage Oncology Treatment Centers, LLC)
991. Westside LA Derm Equipment I, LLC
992. WFCC Radiation Management Company, LLC
993. Wickham Radiation Oncology, LLC (Vantage Oncology Treatment Centers, LLC)
994. Wiley Industries, LLC
995. Wilkes Barre Radiation Technology, LLC (Vantage Oncology Treatment Centers, LLC)
996. Wilkes-Barre Radiation Oncology, LLC
997. Windmill Realty, LLC
998. WOODSIDE PHARMACY (GLASGOW) LIMITED, Scotland
999. World Medical Government Solutions, LLC
1000. WorldMed Shared Services, Inc.
1001. WZ-WundZentren GmbH, AG Düsseldorf
1002. Ybbstal-Apotheke Mag.pharm. Adelheid Tazreiter KG, LG St. Pölten
1003. Zeepro, Inc.

*SETTLED DEFENDANTS' MOTION TO DISMISS*
*CLAIMS FILED BY NON-PARTICIPATING KENTUCKY*
*SUBDIVISION AS RELEASED BY STATUTE*

# EXHIBIT 3

# Commonwealth of Kentucky

## Department of State



### Office of Secretary of State

THELMA L. STOVALL, SECRETARY

## DOMESTIC CORPORATION DEPARTMENT

### NON-STOCK CORPORATION

*I, THELMA L. STOVALL, Secretary of the State of Kentucky, hereby certify that Articles of Incorporation of the*

TAYLOR COUNTY HOSPITAL DISTRICT HEALTH FACILITIES CORPORATION, Campbellsville, Kentucky

*has this day been filed in my office.*

*It appearing from said Articles of Incorporation that the said Corporation has no capital stock, and no private pecuniary profit is to be derived therefrom, the said Corporation is not required by law to pay a tax on organization; and it further appearing that the aforesaid Corporation has complied with all the requirements of the law, this certificate is issued as evidence of the fact that the said Corporation is now authorized and empowered to do business in this State under its charter, subject to the restrictions imposed by the statutes of Kentucky.*

*Given under my hand as Secretary of State, this* 30TH *day of* MAY *19* 72



**SECRETARY OF STATE**

*Mae Gerkeg, Acting*
Secretary of State

_____
Assistant Secretary of State

ARTICLES OF INCORPORATION

OF

TAYLOR COUNTY HOSPITAL DISTRICT
HEALTH FACILITIES CORPORATION



SECRETARY OF STATE
RECEIVED
Commonwealth of Kentucky

KNOW ALL MEN BY THESE PRESENTS:

That we, Floyd Hensley, Mildred Turner, Buster Hall, H. R. Richerson and Henry Ford, all of Taylor County, Kentucky, do declare that we hereby associate ourselves to form a nonprofit, no-stock corporation for charitable and public purposes pursuant to the provisions of KRS 273.161, et seq., as follows:

ARTICLE I.  The name of the Corporation shall be "Taylor County Hospital District Health Facilities Corporation."

ARTICLE II.  The purpose of the Corporation is solely to cooperate with the Taylor County Hospital District, a political subdivision of the Commonwealth of Kentucky organized under the provisions of KRS 216.310 to KRS 216.360, inclusive, and its Board of Trustees, and to act as an agency and instrumentality thereof, in the financing, by this Corporation, of public improvements and public projects constituting hospital or health facilities for the Taylor County Hospital District which may properly be undertaken pursuant to the terms of Chapter 58 of the Kentucky Revised Statutes and other statutes empowering governmental agencies to undertake such public projects, and (without in any way limiting the generality of the foregoing) for the particular purpose of acquiring, by purchase, lease, or otherwise, real estate located within or without the Taylor County Hospital District, or any interest therein, and to construct or otherwise acquire, develop and equip facilities, buildings, structures, or other improvements thereon which constitute hospital

- 1 -

ɔr health facilities and which may be utilized by the Taylor County

Hospital District for any of its public health functions and purposes,

and by lease, sale, sub-lease, or otherwise, make all or any part of

such properties available to the Taylor County Hospital District for

public health and health care purposes.  In carrying out its said

corporate purposes, the Corporation shall have all the powers enumer-

ated in KRS 273.171, and shall specifically have power to contract

and be contracted with, to sue and be sued, to acquire, as aforesaid,

own, hold and use real and personal property, by purchase, lease,

gift, or in any other manner whatsoever, with power to deal with any

and all such property in any manner consistent with the said purposes

of the Corporation, specifically including, but not by way of limita-

tion, the power to sell and dispose of the same, to mortgage, lease,

or otherwise encumber the same or to dispose of the same by gift

in the event such disposition will not violate the terms and condi-

tions of any grant pursuant to which such property is received by the

Corporation.  The Corporation shall have power to make contracts, to

borrow money, to incur indebtedness, to issue its notes or bonds in

evidence of the same, and to hypothecate any or all of its property

as security for the same in any manner consistent with the said

purpose of its incorporation.

ARTICLE III.  The Corporation is organized solely for

charitable and public purposes and as an agency and instrumentality

of the Taylor County Hospital District, in the Commonwealth of Ken-

tucky, and no private pecuniary profit shall at any time be derived

by any Officers or Directors of the Corporation.  The Corporation

shall not engage in propaganda or in any manner attempt to influence

legislation.  In the event the Corporation is dissolved, all of its

properties (after provision has first been made for the payment of

any indebtedness and expenses) shall become the property of the Tay-
lor County Hospital District automatically and without any necessity
for formal conveyances.

ARTICLE IV.  The duration of the Corporation shall be per-
petual, or until dissolved by voluntary act of the Directors in such
manner as may be prescribed by law.

ARTICLE V.  The registered office of the Corporation in
Kentucky shall be the office of Clyde Williams, Jr., Attorney at Law,
215 First Street, Campbellsville, Kentucky 42718.

The registered agent of the Corporation for the service of
process shall be Clyde Williams, Jr., Attorney at Law, whose official
address as process agent for the Corporation is 215 First Street,
Campbellsville, Kentucky 42718.

ARTICLE VI.  The Corporation shall have no capital stock.
The five Incorporators, being the present members of the Board of
Trustees of the Taylor County Hospital District, shall be the origi-
nal Directors of the Corporation and shall serve as the Corporation's
first Board of Directors, and each shall continue to be a Director
during his tenure in such public office and until qualification of his
duly appointed successor in such public office, at which time he
shall automatically cease to be a Director of the Corporation and
shall be succeeded automatically by such successor in public office,
without necessity for resignation of the one or the appointment of
the other; and thereafter each successor in such public office shall
automatically replace his predecessor in such public office as a
Director of the Corporation, and shall serve as a Director and be
succeeded, all in the foregoing described manner.

Pursuant to authority of KRS 273.187, the Corporation shall
not have any members.

- 3 -

Unless the Board of Directors shall make express provision to the contrary by Resolution, motion, or other corporate action which is made to appear in the official Minute Book of the Corporation, the signature, or any authorized facsimile of the signature, of any Director or Officer of the Corporation appearing upon any contract, note, bond, mortgage, certificate, or other document of the Corporation shall remain valid, binding and effective for all purposes, notwithstanding the fact that at the delivery or other intended effective date thereof, such Director, or Officer, shall have ceased to be a Director, or shall have ceased to hold such office of the Corporation.

It is the intent of these Articles that this Corporation shall be a legal corporate entity in its own right, separate and apart from the Taylor County Hospital District, and from the Board of Trustees of said District, but nevertheless as aforesaid, to be and to constitute the agency and instrumentality of said Taylor County Hospital District. The undertakings, promises, commitments, notes, bonds, mortgages, conveyances and contracts of this Corporation shall not in any manner or to any extent be deemed or construed to be binding upon the Taylor County Hospital District, or upon the Board of Trustees thereof, notwithstanding that it is the purpose of this Corporation to serve as an agency and instrumentality of said District and Board, and to serve and promote the same public interests and accomplish the same public objectives.

ARTICLE VII. The Corporation shall commence business immediately upon the recording of these Articles of Incorporation in the Office of the Secretary of State of Kentucky, and in the Office of the Clerk of the County Court of Taylor County, Kentucky, and upon the issuance by the Secretary of State of a Certificate of Incorporation.

- 4 -

ARTICLE VIII.  The private property of the Incorporators and Directors shall not be subject to or in any way liable for any debt or contract of the Corporation or any judgment against the Corporation.

ARTICLE IX.  The Corporation shall have such Officers as the Board of Directors may from time to time determine, and such Officers shall have such powers and duties as may be prescribed from time to time by the Board of Directors.  The Board of Directors shall have power to make By-Laws and to alter the same at will.

ARTICLE X.  The names and addresses of the Incorporators and original Directors are as follows:

| NAME | ADDRESS | |
|---|---|---|
| Floyd Hensley | Route #3 | , Campbellsville Kentucky |
| Mildred Turner | 410 East First Street | , Campbellsville Kentucky |
| Buster Hall | Route #5 | , Campbellsville Kentucky |
| H. R. Richerson | Robert Road | , Campbellsville Kentucky |
| Henry Ford | Route #1 | , Campbellsville Kentucky |

IN TESTIMONY WHEREOF, witness our signatures this 24th day of _May_, 1972.

_Floyd Hensley_
Floyd Hensley

_Buster Hall_
Buster Hall

_Mildred Turner_
Mildred Turner

_H. R. Richerson_
H. R. Richerson

_Henry Ford_
Henry Ford

- 5 -                                          (over)

STATE OF KENTUCKY )
                  ) SS
COUNTY OF TAYLOR  )

      The undersigned, a Notary Public in and for the State and County aforesaid, does hereby certify that on this day the foregoing Articles of Incorporation were produced before me in my said County and State by Floyd Hensley, Buster Hall, Mildred Turner, H. R. Richerson, and Henry Ford, and they thereupon acknowledged to me that they executed the Articles of Incorporation as their free and voluntary acts and deed for the uses and purposes therein expressed.

      WITNESS my hand and Notarial Seal this _24_ day of _May_, 1972. My commission expires _August 10, 1974_.

_Clyde Williams_
                Notary Public
            Taylor County, Kentucky

(SEAL)

      The foregoing document was prepared by William W. Davis, of GRAFTON, FERGUSON, FLEISCHER & HARPER, 310 West Liberty Street, Louisville, Kentucky 40202.

_Wm W. Davis_
            William W. Davis

ORIGINAL COPY
FILED AND RECORDED
SECRETARY OF STATE OF KENTUCKY
FRANKFORT, KENTUCKY

- MAY 3 0 1972

_Thelma L. Stovall_
SECRETARY OF STATE
BY _Mae Lindsay, Acting_
ASSISTANT SECRETARY OF STATE

- 6 -

CLYDE WILLIAMS, JR.

ATTORNEY AT LAW

CID LIKOL STREET

CAMPBELLSVILLE, KENTUCKY

TELEPHONE 465 4036

May 26, 1972

Secretary of State
Frankfort, Kentucky

Dear Sir:

Enclosed you will find four copies of Articles of
Incorporation of Taylor County Hospital, District Health
Facilities Corporation, a check to you for four dollars for
the filing fee and issuance of a certificate of incorporation,
and a check to the State Treasurer for ten dollars for the
license fee.

Please return three copies to me with attached certifi-
cates of Incorporation.

Very truly yours,

Clyde Williams, Jr.

jsj

Enclosures