EXHIBIT 1



**COMMONWEALTH OF KENTUCKY**
**MCCRACKEN CIRCUIT COURT**
**DIVISION II**
**CIVIL ACTION NO. 18-CI-00313**
*Electronically Filed*

ENTERED
JUL 29 2022
MCCRACKEN CIRCUIT COURT
PADUCAH, KENTUCKY

COMMONWEALTH OF KENTUCKY, *ex. rel.*          PLAINTIFF
DANIEL CAMERON, ATTORNEY GENERAL,

     v.

JOHNSON & JOHNSON;
JANSSEN PHARMACEUTICALS, INC.;
ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
N/K/A JANSSEN PHARMACEUTICA, INC.
N/K/A JANSSEN PHARMACEUTICALS, INC.,          DEFENDANTS

**COVER SHEET TO**

**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE**

The Final Consent Judgment and Dismissal with Prejudice attached hereto is provided to the Commonwealth of Kentucky, ex. rel. Daniel Cameron, Attorney General, by and Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc. (collectively, "*Janssen*" or "*Defendants*").

In relation to the filing of the Final Consent Judgment and Dismissal with Prejudice in the applicable court in the Commonwealth of Kentucky as required by statute, the Defendants waive notice and service of process regarding the filing of the Final Consent Judgment and Dismissal with Prejudice and do not object to the court's approval and entry of the Final Consent Judgment and Dismissal with Prejudice. The Defendants also do not object to the ex parte submission and presentation of this Final Consent Judgment and Dismissal with Prejudice by the Kentucky Attorney General's Office to the court.

WHEREFORE, the Court being well and sufficiently advised in the premises, and the Court having jurisdiction and venue for the purposes of entering and enforcing this judgment, the Final Consent Judgment and Dismissal with Prejudice attached hereto is hereby approved and the above referenced Civil Action is dismissed with prejudice.

The Office of the Attorney General shall receive thirteen and five tenths percent (13.5%) of each payment referenced in KRS 15.293(3)(a) as its reasonable costs of investigation and litigation per KRS 48.005.

DATE: _7/29/2022_        _____

JUDGE, MCCRACKEN CIRCUIT COURT

TD : 000002 of 000011

ENTERED

JUL 29 2022

MCCRACKEN CIRCUIT COURT
PADUCAH, KENTUCKY

**COMMONWEALTH OF KENTUCKY**
**MCCRACKEN CIRCUIT COURT**
**DIVISION II**
**CIVIL ACTION NO. 18-CI-00313**
*Electronically Filed*

COMMONWEALTH OF KENTUCKY, *ex. rel.*                                    PLAINTIFF
DANIEL CAMERON, ATTORNEY GENERAL,


     v.


JOHNSON & JOHNSON;
JANSSEN PHARMACEUTICALS, INC.;
ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC.
N/K/A JANSSEN PHARMACEUTICA, INC.
N/K/A JANSSEN PHARMACEUTICALS, INC.,                                    DEFENDANTS


<u>**FINAL CONSENT JUDGMENT AND DISMISSAL WITH PREJUDICE**</u>


The Commonwealth of Kentucky ("*Commonwealth*") and Johnson & Johnson, Janssen

Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica,

Inc. (collectively, "*Janssen*" or "*Defendants*") (together with the Commonwealth, the "*Parties*,"

and each a "*Party*") have entered into a consensual resolution of the above-captioned litigation

(the "*Action*") pursuant to a settlement agreement entitled Janssen Settlement Agreement, dated

as of July 21, 2021 (as subsequently updated) (the "*Agreement*"), a copy of which is attached

hereto as Exhibit A.  The Agreement shall become effective by its terms upon the entry of this

Final Consent Judgment (the "*Judgment*") by the Court without trial or adjudication of any

contested issue of fact or law, and without finding or admission of wrongdoing or liability of any

kind.

3

TD : 000003 of 000011

**RECITALS:**

1.    Each Party warrants and represents that it engaged in arm's-length negotiations in good faith.  In hereby executing the Agreement, the Parties intend to effect a good-faith settlement.

2.    The Commonwealth has determined that the Agreement is in the public interest.

3.    Janssen denies the allegations against it and that it has any liability whatsoever to the Commonwealth, its Subdivisions, and/or (a) any of the Commonwealth's or Subdivisions' departments, agencies, divisions, boards, commissions, districts, instrumentalities of any kind and attorneys, including its Attorney General and any person in his or her official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, and other Special Districts, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public.

4.    The Parties recognize that the outcome of the Action is uncertain and a final resolution through the adversarial process likely will require protracted litigation.

5.    The Parties agree to the entry of the injunctive relief terms pursuant to Exhibit P of the Agreement.

6.    Therefore, without any admission of liability or wrongdoing by Janssen or any other Released Entities (as defined in the Agreement), the Parties now mutually consent to the entry of this Judgment and agree to dismissal of the claims with prejudice pursuant to the terms of the Agreement to avoid the delay, expense, inconvenience, and uncertainty of protracted litigation.

4

TD : 000004 of 000011

Tendered 18-CI-00313 07/21/2022 Kim Channell, McCracken Circuit Clerk

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

In consideration of the mutual promises, terms, and conditions set forth in the Agreement, the adequacy of which is hereby acknowledged by all Parties, it is agreed by and between Defendants and the Commonwealth, and adjudicated by the Court, as follows:

1.    The foregoing Recitals are incorporated herein and constitute an express term of this Judgment.

2.    The Parties have entered into a full and final settlement of all Released Claims of Releasors against Janssen (including but not limited to the Commonwealth) and the Released Entities pursuant to the terms and conditions set forth in the Agreement.

3.    The "Definitions" set forth in Section I of the Agreement are incorporated by reference into this Judgment. The Commonwealth is a "Settling State" within the meaning of the Agreement. Unless otherwise defined herein, capitalized terms in this Judgment shall have the same meaning given to them in the Agreement.

4.    The Parties agree that the Court has jurisdiction over the subject matter of the Action and over the Parties with respect to the Action and this Judgment. This Judgment shall not be construed or used as a waiver of any jurisdictional defense Janssen or any other Released Entity may raise in any other proceeding.

5.    The Court finds that the Agreement was entered into in good faith.

6.    The Court finds that entry of this Judgment is in the public interest and reflects a negotiated settlement agreed to by the Parties. The Action is dismissed with prejudice, subject to a retention of jurisdiction by the Court as provided herein and in the Agreement.

7.    By this Judgment, the Agreement is hereby approved by the Court, and the Court hereby adopts the Agreement's terms as its own determination of this matter and the Parties' respective rights and obligations.

5

TD : 000005 of 000011

8.     The Court shall have authority to resolve disputes identified in Section XII.F.2 of the Agreement, governed by the rules and procedures of the Court.

9.     The Parties have satisfied the Condition to Effectiveness of Agreement set forth in Section VIII of the Agreement and the Release set forth in Sections IV.A, D, and E of the Agreement, as follows:

a.     The Attorney General of the Commonwealth exercised the fullest extent of his or her powers to release Janssen and all other Released Entities from all Released Claims pursuant to the release attached hereto as Exhibit B (the "*Release*").

b.     Janssen has determined that there is sufficient State participation and sufficient resolution of the Claims of the Litigating Subdivisions in the Settling States to proceed with the Agreement.

c.     The Settlement Participation Form for each Initial Participating Subdivision in the Commonwealth has been delivered to Janssen. As stated in the Settlement Participation Form, and for the avoidance of doubt, nothing in the Settlement Participation Form executed by the Participating Subdivisions is intended to modify in any way the terms of the Agreement to which the Participating Subdivisions agree. As stated in the Settlement Participation Form, to the extent the executed version of the Settlement Participation Form differs from the Agreement in any respect, the Agreement controls.

d.     Pursuant to the Settlement Participation Form, each Participating Subdivision in the Commonwealth is dismissing with prejudice any Released Claims that it has filed against Janssen and the Released Entities.

10.     <u>Release</u>.  The Parties acknowledge that the Release, which is incorporated by reference herein, is an integral part of this Judgment. Pursuant to the Agreement and the Release and without limitation and to the maximum extent of the power of the Commonwealth's Attorney General, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (a) the Commonwealth and its Participating Subdivisions and any of their departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including the Commonwealth's Attorney General, and any person in his or her official capacity whether elected or appointed to serve any of the foregoing,

TD : 000006 of 000011

Tendered          18-CI-00313          07/21/2022          Kim Channell, McCracken Circuit Clerk

and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in the Commonwealth, and (c) any person or entity acting in a *parens patriae*, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the Commonwealth or any Subdivision in the Commonwealth, whether or not any of them participate in the Agreement.   Pursuant to the Agreement and the Release and to the maximum extent of the Commonwealth's power, Janssen and the other Released Entities are, as of the Effective Date, hereby released from any and all Released Claims of (1) the Commonwealth, (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts, (3) any of the Commonwealth's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license, and (4) any Participating Subdivision.  For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the Commonwealth's Governor.  Further, the provisions set forth in Section IV of the Agreement are incorporated by reference into this Judgment as if fully set forth herein.  The Parties acknowledge, and the Court finds, that those provisions are an integral part of the Agreement and this Judgment, and shall govern the rights and obligations of all participants in the

TD : 000007 of 000011

Tendered          18-CI-00313          07/21/2022          Kim Channell, McCracken Circuit Clerk

settlement. Any modification of those rights and obligations may be made based only on a writing signed by all affected parties and approved by the Court.

      11.    <u>Release of Unknown Claims.</u> The Commonwealth expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

12.    The Commonwealth may hereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but the Commonwealth expressly waived and fully, finally, and forever settled, released and discharged, through the Agreement and Release, any and all Released Claims that may exist as of the Effective Date but which the Commonwealth does not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would have materially affected the Commonwealth's decision to enter into the Agreement.

13.    To the extent that the Agreement became effective as of April 2, 2022, and a settlement has been reached in the Action against the companies listed in KRS § 15.93(4)(a), each county, consolidated local government, urban-county government, city, political subdivision, and public agency, as that term is defined in KRS 61.805(2), of the Commonwealth is by operation of law deemed to have released its claims against the companies listed in KRS § 15.93(4)(a) and their affiliates and subsidiaries to the extent referenced in a settlement agreement, consent judgment, order, or other document that reflects the terms of any settlement.

TD : 000008 of 000011

Tendered          18-CI-00313          07/21/2022          Kim Channell, McCracken Circuit Clerk

14.     Costs and Fees. The Parties will bear their own costs and attorneys' fees except as otherwise provided in the Agreement.

15.     No Admission of Liability. Defendants are consenting to this Judgment solely for the purpose of effectuating the Agreement, and nothing contained herein may be taken as or construed to be an admission or concession of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Defendants expressly deny. No Defendant or Released Entity admits that it caused or contributed to any public nuisance, and no Defendant or Released Entity admits any wrongdoing that was or could have been alleged by the Commonwealth, its Participating Subdivisions and/or Participating Special Districts, or any other person or entity. No part of this Judgment shall constitute evidence of any liability, fault, or wrongdoing by Defendants or any other Released Entity. The Parties acknowledge that payments made under the Agreement are not a fine, penalty, or payment in lieu thereof and are properly characterized as described in Section VI.F of the Agreement.

16.     No Waiver. This Judgment is entered based on the Agreement without trial or adjudication of any contested issue of fact or law or finding of liability of any kind. This Judgment shall not be construed or used as a waiver of Janssen's right, or any other Released Entity's right, to defend itself from, or make any arguments in, any other regulatory, governmental, private individual, or class claims or suits relating to the subject matter or terms of this Judgment. Notwithstanding the foregoing, the Commonwealth may enforce the terms of this Judgment as expressly provided in the Agreement.

17.     No Private Right of Action. This Judgment is not intended for use by any third party for any purpose, including submission to any court for any purpose, except pursuant to Section XII.A of the Agreement. Except as expressly provided in the Agreement, no portion of

9

TD : 000009 of 000011

the Agreement or this Judgment shall provide any rights to, or be enforceable by, any person or entity that is not a Settling State or Released Entity. The Commonwealth shall allow Participating Subdivisions in the Commonwealth to notify it of any perceived violations of the Agreement or this Judgment. No Settling State, including the Commonwealth, may assign or otherwise convey any right to enforce any provision of the Agreement.

18. <u>Admissibility</u>. It is the intent of the Parties that this Judgment not be admissible in other cases against Defendants or binding on Defendants in any respect other than in connection with the enforcement of this Judgment or the Agreement. For the avoidance of doubt, nothing herein shall prohibit Defendants from entering this Judgment or the Agreement into evidence in any litigation or arbitration concerning (1) Defendants' right to coverage under an insurance contract or (2) the enforcement of the releases provided for by the Agreement and this Judgment.

19. <u>Preservation of Privilege</u>. Nothing contained in the Agreement or this Judgment, and no act required to be performed pursuant to the Agreement or this Judgment, is intended to constitute, cause, or effect any waiver (in whole or in part) of any attorney-client privilege, work product protection, or common interest/joint defense privilege, and each Party agrees that it shall not make or cause to be made in any forum any assertion to the contrary.

20. <u>Mutual Interpretation</u>. The Parties agree and stipulate that the Agreement was negotiated on an arm's-length basis between parties of equal bargaining power and was drafted jointly by counsel for each Party. Accordingly, the Agreement is incorporated herein by reference and shall be mutually interpreted and not construed in favor of or against any Party, except as expressly provided for in the Agreement.

21. <u>Retention of Jurisdiction</u>. The Court shall retain jurisdiction of the Parties for the limited purpose of the resolution of disputes identified in Section XII.F.2 of the Agreement. The

TD : 000010 of 000011

Tendered        18-CI-00313       07/21/2022       Kim Channell, McCracken Circuit Clerk

Court shall have jurisdiction over Participating Subdivisions in the Commonwealth for the limited

purposes identified in the Agreement.

22.    <u>Successors and Assigns</u>.  This Judgment is binding on Defendants' successors and

assigns.

23.    <u>Modification</u>.  This Judgment shall not be modified (by the Court, by any other

court, or by any other means) without the consent of the Commonwealth and Defendants, or as

provided for in Section XIII.S of the Agreement.

**APPROVAL BY COURT**

APPROVED FOR FILING and SO ORDERED this 29th day of July, 2022.

_____
Judge

**APPROVED, AGREED TO AND PRESENTED BY:**

**For the Commonwealth of Kentucky:**

Date:  7/21/2022        By:  */s/ J. Christian Lewis*-------------------------------
                             J. Christian Lewis, Executive Director,
                             Office of Consumer Protection
                             Kentucky Office of the Attorney General

**For the Janssen Defendants:**

Date:  7/21/2022        By:  */s/ Marc Larkins*_____
                             Marc Larkins
                             Assistant Corporate Secretary, Johnson & Johnson

Approved as to form:

Date:  7/21/2022        By:  */s/ Charles Lifland*_____
                             Charles C. Lifland
                             O'Melveny & Myers
                             Counsel for Defendants

11

TD : 000011 of 000011

# EXHIBIT A

# JANSSEN SETTLEMENT AGREEMENT

# JANSSEN SETTLEMENT AGREEMENT

## **Table of Contents**

I. Definitions ........................................................................................................... 1

II. Participation by States and Condition to Preliminary Agreement ......................... 13

III. Injunctive Relief................................................................................................... 14

IV. Release ................................................................................................................. 14

V. Monetary Relief and Payments............................................................................. 18

VI. Allocation and Use of Settlement Funds .............................................................. 29

VII. Participation by Subdivisions and Special Districts ............................................. 36

VIII. Condition to Effectiveness of Agreement and Filing of Consent Judgment .................... 39

IX. Potential Payment Adjustments ........................................................................... 40

X. Additional Restitution Amount ............................................................................ 42

XI. Plaintiffs' Attorneys' Fees and Costs ................................................................... 43

XII. Enforcement and Dispute Resolution ................................................................... 43

XIII. Miscellaneous ...................................................................................................... 48

EXHIBIT A – Alleged Harms ......................................................................................... A-1

EXHIBIT B – Enforcement Committee Organizational Bylaws....................................... B-1

EXHIBIT C – Litigating Subdivision and Special District List ....................................... C-1

EXHIBIT D – [Intentionally Omitted] ............................................................................ D-1

EXHIBIT E – List of Opioid Remediation Uses .............................................................. E-1

EXHIBIT F – List of States and Overall Allocation Percentages ..................................... F-1

EXHIBIT G – Subdivisions Eligible to Become Participating Subdivisions and Default Subdivision Fund Allocation Percentages .................................................................. G-1

EXHIBIT H – Participation Tier Determination ............................................................... H-1

EXHIBIT I – Primary Subdivisions and Subdivisions with Population Over 10,000 ................. I-1

EXHIBIT J – Janssen Predecessors and Former Affiliates ............................................... J-1

EXHIBIT K – Settlement Participation Form ................................................................... K-1

EXHIBIT L – Settlement Fund Administrator .................................................................. L-1

EXHIBIT M – Settlement Payment Schedule .................................................................. M-1

EXHIBIT N – Additional Restitution Amount Allocation .................................................. N-1

EXHIBIT O – Adoption of a State-Subdivision Agreement ............................................... O-1

EXHIBIT P – Injunctive Relief ...................................................................................... P-1

EXHIBIT Q – Non-Released Entities .............................................................................. Q-1

EXHIBIT R – Agreement on Attorneys' Fees, Costs, and Expenses .................................... R-1

EXHIBIT S – Agreement on the State Cost Fund Administration ....................................... S-1

EXHIBIT T – Severity Factors ...................................................................................... T-1

EXHIBIT U – Agreement on the State Outside Counsel Fee Fund ..................................... U-1

## JANSSEN SETTLEMENT AGREEMENT

This settlement agreement dated as of July 21, 2021 (the "*Agreement*") sets forth the terms of settlement between and among the Settling States, Participating Subdivisions, and Janssen (as those terms are defined below). Upon satisfaction of the conditions set forth in Sections II and VIII, this Agreement will be binding on the Settling States, Janssen, and Participating Subdivisions. This Agreement will then be filed as part of Consent Judgments in the respective courts of each of the Settling States, pursuant to the terms set forth in Section VIII.

## I.      Definitions

Unless otherwise specified, the following definitions apply:

1.    "*Abatement Accounts Fund*" means a component of the Settlement Fund described in subsection VI.E.

2.    "*Additional Restitution Amount*" means the amount available to Settling States listed in Exhibit N of $67,307,692.

3.    "*Agreement*" means this agreement as set forth above, inclusive of all exhibits.

4.    "*Alleged Harms*" means the alleged past, present, and future financial, societal, and related expenditures arising out of the alleged misuse and abuse of opioid products, non-exclusive examples of which are described in the documents listed on Exhibit A, that have allegedly arisen as a result of the physical and bodily injuries sustained by individuals suffering from opioid-related addiction, abuse, death, and other related diseases and disorders, and that have allegedly been caused by Janssen.

5.    "*Allocation Statute*" means a state law that governs allocation, distribution, and/or use of some or all of the Settlement Fund amounts allocated to that State and/or its Subdivisions. In addition to modifying the allocation, as set forth in subsection VI.D.2, an Allocation Statute may, without limitation, contain a Statutory Trust, further restrict expenditure of funds, form an advisory committee, establish oversight and reporting requirements, or address other default provisions and other matters related to the funds. An Allocation Statute is not required to address all three (3) types of funds comprising the Settlement Fund or all default provisions.

6.    "*Annual Payment*" means the total amount payable to the Settlement Fund by Janssen on the Payment Date each year in 2023 and onward, as calculated by the Settlement Fund Administrator pursuant to Section V. For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to Section XI.

7.    "*Appropriate Official*" means the official defined in subsection XIII.E.

*revised March 30, 2022*

8. "*Attorney Fee Fund*" means an account consisting of funds allocated to pay attorneys' fees and costs pursuant to the agreement on attorneys' fees and costs attached as Exhibit R.

9. "*Bar*" means either (1) a ruling by the highest court of the State or the intermediate court of appeals when not subject to further review by the highest court of the State in a State with a single intermediate court of appeals setting forth the general principle that no Subdivisions or Special Districts in the State may maintain Released Claims against Released Entities, whether on the ground of the Agreement (or the release in it) or otherwise; (2) a law barring Subdivisions and Special Districts in the State from maintaining or asserting Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and that authority is exercised in full); or (3) a Settlement Class Resolution in the State with full force and effect. For the avoidance of doubt, a law or ruling that is conditioned or predicated upon payment by a Released Entity (apart from payments by Janssen incurred under the Agreement) shall not constitute a Bar.

10. "*Case-Specific Resolution*" means either (1) a law barring specified Subdivisions or Special Districts from maintaining Released Claims against Released Entities (either through a direct bar or through a grant of authority to release claims and that authority is exercised in full); (2) a ruling by a court of competent jurisdiction over a particular Subdivision or Special District that has the legal effect of barring the Subdivision or Special District from maintaining any Released Claims at issue against Released Entities, whether on the ground of the Agreement (or the release in it) or otherwise; or (3) in the case of a Special District, a release consistent with Section IV below. For the avoidance of doubt, a law, ruling, or release that is conditioned or predicated upon a post-Effective Date payment by a Released Entity (apart from payments by Janssen incurred under the Agreement or injunctive relief obligations incurred by it) shall not constitute a Case-Specific Resolution.

11. "*Claim*" means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, parens patriae claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including but not limited to any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert

2

*revised March 30, 2022*

fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative, or regulatory remedy whatsoever.

12.     "*Claim Over*" means a Claim asserted by a Non-Released Entity against a Released Entity on the basis of contribution, indemnity, or other claim-over on any theory relating to a Non-Party Covered Conduct Claim asserted by a Releasor.

13.     "*Compensatory Restitution Amount*" means the aggregate amount of payments by Janssen hereunder other than amounts paid as attorneys' fees and costs or identified pursuant to subsection VI.B.2 as being used to pay attorneys' fees and investigation costs or litigation costs.

14.     "*Consent Judgment*" means a state-specific consent judgment in a form to be agreed upon by the Settling States, Participating Subdivisions, and Janssen prior to the Initial Participation Date that, among other things, (1) approves this Agreement and (2) provides for the release set forth in Section IV, including the dismissal with prejudice of any Released Claims that the Settling State has brought against Released Entities.

15.     "*Court*" means the respective court for each Settling State to which the Agreement and the Consent Judgment are presented for approval and/or entry as to that Settling State, or the Northern District of Ohio for purposes of administering the Attorney Fee Fund and any related fee and cost agreements.

16.     "*Covered Conduct*" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time through the Reference Date (and any past, present, or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) relating in any way to (a) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to any Product, or any system, plan, policy, or advocacy relating to any Product or class of Products, including but not limited to any unbranded promotion, marketing, programs, or campaigns relating to any Product or class of Products; (b) the characteristics, properties, risks, or benefits of any Product; (c) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders for any Product placed with any Released Entity; (d) the selective breeding, harvesting, extracting, purifying, exporting, importing, applying for quota for, procuring quota for, handling, promoting, manufacturing, processing, packaging, supplying, distributing, converting, or selling of, or otherwise engaging in any activity relating to, precursor or component Products, including but not limited to natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished

3

active pharmaceutical ingredients, drug substances, or any related intermediate Products; or (e) diversion control programs or suspicious order monitoring related to any Product.

17. "*Designated State*" means New York.

18. "*Effective Date*" means April 2, 2022.

19. "*Enforcement Committee*" means a committee consisting of representatives of the Settling States and of the Participating Subdivisions. Exhibit B contains the organizational bylaws of the Enforcement Committee. Notice pursuant to subsection XIII.O shall be provided when there are changes in membership or contact information.

20. "*Global Settlement Abatement Amount*" means the abatement amount of $4,534,615,385.

21. "*Global Settlement Amount*" means $5 billion, which shall be divided into the Global Settlement Abatement Amount, the Additional Restitution Amount, and the Global Settlement Attorney Fee Amount.

22. "*Global Settlement Attorney Fee Amount*" means the attorney fee amount of $398,076,923.

23. "*Incentive A*" means the incentive payment described in subsection V.E.4.

24. "*Incentive B*" means the incentive payment described in subsection V.E.5.

25. "*Incentive C*" means the incentive payment described in subsection V.E.6.

26. "*Incentive D*" means the incentive payment described in subsection V.E.7.

27. "*Incentive Payment Final Eligibility Date*" means, with respect to a Settling State, the date that is the earliest of (1) three years after the Effective Date; (2) the date of completion of opening statements in a trial of any action brought by a Subdivision in that State that includes a Released Claim against a Released Entity when such date is more than two (2) years after the Effective Date; or (3) two (2) years after the Effective Date in the event a trial of an action brought by a Subdivision in that State that includes a Released Claim against a Released Entity began after the Initial Participation Date but before two (2) years after the Effective Date.

28. "*Initial Participating Subdivision*" means a Subdivision that meets the requirements set forth in subsection VII.D.

29. "*Initial Participation Date*" means January 26, 2022, as extended by written agreement of Janssen and the Enforcement Committee on December 29, 2021.

*revised March 30, 2022*

30.     "*Initial Year Payment*" means the total amount payable to the Settlement Fund by Janssen on each of the two Payment Dates in 2022, as calculated by the Settlement Fund Administrator pursuant to Section V. For the avoidance of doubt, this term does not include the Additional Restitution Amount or amounts paid pursuant to Section XI.

31.     "*Injunctive Relief Terms*" means the terms described in Section III and set forth in Exhibit P.

32.     "*Janssen*" means Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho-McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

33.     "*Later Litigating Special District*" means a Special District (or Special District official asserting the right of or for the Special District to recover for alleged harms to the Special District and/or the people thereof) that is not a Litigating Special District and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Preliminary Agreement Date. It may also include a Litigating Special District whose claims were resolved by a judicial Bar or Case-Specific Resolution which is later revoked following the execution date of this Agreement, when such Litigating Special District takes any affirmative step in its lawsuit other than seeking a stay or removal.

34.     "*Later Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that is not a Litigating Subdivision and that files a lawsuit bringing a Released Claim against a Released Entity, or that adds such a claim to a pre-existing lawsuit, after the Trigger Date. It may also include a Litigating Subdivision whose claims were resolved by a judicial Bar or Case-Specific Resolution which is later revoked following the execution date of this Agreement, when such Litigating Subdivision takes any affirmative step in its lawsuit other than seeking a stay or removal.

35.     "*Later Participating Subdivision*" means a Participating Subdivision that meets the requirements of subsection VII.E but is not an Initial Participating Subdivision.

36.     "*Litigating Special District*" means a Special District (or Special District official) that brought any Released Claims against any Released Entities on or before the Preliminary Agreement Date that were not separately resolved prior to that date. A list of Litigating Special Districts will be agreed to by the parties and attached hereto as of the Preliminary Agreement Date.

37.     "*Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity prior to the Trigger Date that were not separately resolved prior to that

*revised March 30, 2022*

Trigger Date. A Prior Litigating Subdivision shall not be considered a Litigating Subdivision. Exhibit C is an agreed list of the Litigating Subdivisions. Exhibit C will be updated (including with any corrections) periodically, and a final version of Exhibit C will be attached hereto as of the Reference Date.

38.    "*National Arbitration Panel*" means the panel described in subsection XII.F.

39.    "*National Disputes*" means the disputes described in subsection XII.F.

40.    "*Non-Litigating Special District*" means a Special District that is neither a Litigating Special District nor a Later Litigating Special District.

41.    "*Non-Litigating Subdivision*" means a Subdivision that is neither a Litigating Subdivision nor a Later Litigating Subdivision.

42.    "*Non-Participating Subdivision*" means a Subdivision that is not a Participating Subdivision.

43.    "*Non-Party Covered Conduct Claim*" means a Claim against any Non-Released Entity involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity).

44.    "*Non-Party Settlement*" means a settlement by any Releasor that settles any Non-Party Covered Conduct Claim and includes a release of any Non-Released Entity.

45.    "*Non-Released Entity*" means an entity that is not a Released Entity.

46.    "*Non-Settling State*" means a State that is not a Settling State.

47.    "*Opioid Remediation*" means care, treatment, and other programs and expenditures (including reimbursement for past such programs or expenditures except where this Agreement restricts the use of funds solely to future Opioid Remediation) designed to (1) address the misuse and abuse of opioid products, (2) treat or mitigate opioid use or related disorders, or (3) mitigate other alleged effects of the opioid abuse crisis, including on those injured as a result of the opioid abuse crisis. Exhibit E provides a non-exhaustive list of expenditures that qualify as being paid for Opioid Remediation. Qualifying expenditures may include reasonable related administrative expenses.

48.    "*Overall Allocation Percentage*" means a Settling State's percentage as set forth in Exhibit F. The aggregate Overall Allocation Percentages of all States (including Settling States and Non-Settling States) shall equal 100%.

49.    "*Participating Special District*" means a Special District that executes a release consistent with Section IV below and meets the requirements for becoming a Participating Special District under Section VII.

*revised March 30, 2022*

50.     "*Participating Subdivision*" means a Subdivision that meets the requirements for becoming a Participating Subdivision under Section VII. Participating Subdivisions include both Initial Participating Subdivisions and Later Participating Subdivisions.

51.     "*Participation Tier*" means the level of participation in this Agreement as determined pursuant to subsection VIII.C using the criteria set forth in Exhibit H.

52.     "*Parties*" means Janssen and the Settling States (each, a "*Party*").

53.     "*Payment Date*" means the date on which Janssen makes its payments pursuant to Section V and Exhibit M.

54.     "*Payment Year*" means the calendar year during which the applicable Initial Year Payments or Annual Payments are due pursuant to subsection V.B. Payment Year 1 is 2022, Payment Year 2 is 2023 and so forth. References to payment "for a Payment Year" mean the Initial Year Payments or Annual Payment due during that year. References to eligibility "for a Payment Year" mean eligibility in connection with the Initial Year Payments or Annual Payment due during that year.

55.     "*Preliminary Agreement Date*" means the date on which Janssen gives notice to the Settling States and MDL PEC of its determination that a sufficient number of States have agreed to be Settling States. This date shall be no more than fourteen (14) days after the end of the notice period to States, unless it is extended by written agreement of Janssen and the Enforcement Committee.

56.     "*Primary Subdivision*" means a Subdivision that has a population of 30,000 or more. A list of Primary Subdivisions in each State is provided in Exhibit I.

57.     "*Prior Litigating Subdivision*" means a Subdivision (or Subdivision official asserting the right of or for the Subdivision to recover for alleged harms to the Subdivision and/or the people thereof) that brought any Released Claim against any Released Entity prior to the Trigger Date and all such Released Claims were separately settled or finally adjudicated prior to the Trigger Date; *provided, however*, that if the final adjudication was pursuant to a Bar, such Subdivision shall not be considered a Prior Litigating Subdivision. Notwithstanding the prior sentence, Janssen and the State of the relevant Subdivision may agree in writing that such Subdivision shall not be considered a Prior Litigating Subdivision.

58.     "*Product*" means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is an opioid or opiate, as well as any product containing any such substance. It also includes: 1) the following when used in combination with opioids or opiates: benzodiazepine, carisoprodol, zolpidem, or gabapentin; and 2) a combination or "cocktail" of any stimulant or other chemical substance prescribed, sold, bought, or dispensed to be used together that includes opioids or opiates. For the

*revised March 30, 2022*

avoidance of doubt, "Product" does not include benzodiazepine, carisoprodol, zolpidem, or gabapentin when not used in combination with opioids or opiates. "Product" includes but is not limited to any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, naloxone, naltrexone, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, any variant of these substances, or any similar substance. "Product" also includes any natural, synthetic, semi-synthetic or chemical raw materials, starting materials, finished active pharmaceutical ingredients, drug substances, and any related intermediate products used or created in the manufacturing process for any of the substances described in the preceding sentence.

59.    "*Reference Date*" means the date on which Janssen is to inform the Settling States and MDL PEC of its determination whether there is sufficient resolution of claims and potential claims at the Subdivision level to go forward with the settlement. The Reference Date is February 25, 2022, as extended by written agreement of Janssen and the Enforcement Committee on December 29, 2021.

60.    "*Released Claims*" means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct occurring prior to the Reference Date. Without limiting the foregoing, "Released Claims" include any Claims that have been asserted against the Released Entities by any Settling State or any of its Litigating Subdivisions or Litigating Special Districts in any federal, state or local action or proceeding (whether judicial, arbitral, or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those actions or in any comparable action or proceeding brought by a State, any of its Subdivisions or Special Districts, or any Releasors (whether or not such State, Subdivision, Special District, or Releasor has brought such action or proceeding). Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to the Agreement, whether or not such claims relate to Covered Conduct. The Parties intend that "Released Claims" be interpreted broadly. This Agreement does not release Claims by private individuals. It is the intent of the Parties that Claims by private individuals be treated in accordance with applicable law. Released Claims is also used herein to describe Claims brought by a Later Litigating Subdivision or other non-party Subdivision or Special District that would have been Released Claims if they had been brought by a Releasor against a Released Entity.

61.    "*Released Entities*" means Janssen and (1) all of Janssen's past and present direct or indirect parents, subsidiaries, divisions, predecessors, successors, assigns, including Noramco, Inc. and Tasmanian Alkaloids PTY. LTD.; (2) the past and present direct or indirect subsidiaries, divisions, and joint ventures, of any of the foregoing; (3) all of Janssen's insurers (solely in their role as insurers with respect to the Released Claims); (4) all of Janssen's, or of any entity described in subsection (1), past and present joint ventures; and (5) the respective past and present officers, directors, members, shareholders (solely in their capacity as

*revised March 30, 2022*

shareholders of the foregoing entities), partners, trustees, agents, and employees of any of the foregoing (for actions that occurred during and related to their work for, or employment with, Janssen). Any person or entity described in subsections (3)-(5) shall be a Released Entity solely in the capacity described in such clause and shall not be a Released Entity with respect to its conduct in any other capacity. For the avoidance of doubt, the entities listed in Exhibit Q are not Released Entities; *and provided further* that any joint venture partner of Janssen or Janssen's subsidiary is not a Released Entity unless it falls within subsections (1)-(5) above. A list of Janssen's present subsidiaries and affiliates can be found at https://johnsonandjohnson.gcs-web.com/static-files/f61ae5f3-ff03-46c1-bfc9-174947884db2. Janssen's predecessor entities include but are not limited to those entities listed on Exhibit J. For the avoidance of doubt, any entity acquired, or joint venture entered into, by Janssen after the Reference Date is not a Released Entity.

62.     "*Releasors*" means (1) each Settling State; (2) each Participating Subdivision; and (3) without limitation and to the maximum extent of the power of each Settling State's Attorney General and/or Participating Subdivision to release Claims, (a) the Settling State's and Participating Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and attorneys, including its Attorney General, and any person in their official capacity whether elected or appointed to serve any of the foregoing and any agency, person, or other entity claiming by or through any of the foregoing, (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts, irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other Special Districts in a Settling State, and (c) any person or entity acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, qui tam, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to a Settling State or Subdivision in a Settling State, whether or not any of them participate in the Agreement. The inclusion of a specific reference to a type of entity in this definition shall not be construed as meaning that the entity is not a Subdivision. In addition to being a Releasor as provided herein, a Participating Subdivision shall also provide the Subdivision Settlement Participation Form or the Election and Release Form referenced in Section VII providing for a release to the fullest extent of the Participating Subdivision's authority, which shall be attached as an exhibit to the Agreement. Each Settling State's Attorney General represents that he or she has or has obtained (or will obtain no later than the Initial Participation Date) the authority set forth in the Representation and Warranty subsection of Section IV.

63.     "*Revocation Event*" means with respect to a Bar, Settlement Class Resolution, or Case-Specific Resolution, a legislative amendment or a revocation, rescission, reversal, overruling, or interpretation that in any way limits the effect of such Bar, Settlement Class Resolution, or Case-Specific Resolution on Released Claims or any other action or event that otherwise deprives the Bar, Settlement Class Resolution or Case-Specific Resolution of force or effect in any material respect.

*revised March 30, 2022*

64. "*Settlement Class Resolution*" means a class action resolution in a court of competent jurisdiction in a Settling State with respect to a class of Subdivisions and Special Districts in that State that (1) conforms with that Settling State's statutes, case law, and/or rules of procedure regarding class actions; (2) is approved and entered as an order of a court of competent jurisdiction in that State and has become final as defined in "State-Specific Finality"; (3) is binding on all Non-Participating Subdivisions and Special Districts in that State (other than opt outs as permitted under the next sentence); (4) provides that all such Non-Participating Subdivisions or Special Districts may not bring Released Claims against Released Entities, whether on the ground of the Agreement (or the releases herein) or otherwise; and (5) does not impose any costs or obligations on Janssen other than those provided for in the Agreement, or contain any provision inconsistent with any provision of the Agreement. If applicable state law requires that opt-out rights be afforded to members of the class, a class action resolution otherwise meeting the foregoing requirements shall qualify as a Settlement Class Resolution unless Subdivisions collectively representing more than 1% of the total population of all of that State's Subdivisions listed in Exhibit G opt out. In seeking certification of any Settlement Class, the applicable State and Participating Subdivisions shall make clear that certification is sought solely for settlement purposes and shall have no applicability beyond approval of the settlement for which certification is sought. Nothing in this Agreement constitutes an admission by any Party that class certification would be appropriate for litigation purposes in any case.

65. "*Settlement Fund*" means the interest-bearing fund established under the Agreement into which all payments by Janssen are made other than amounts paid as attorneys' fees and costs or identified pursuant to subsection VI.B.2 as being used to pay attorneys' fees and costs. The Settlement Fund comprises the Abatement Accounts Fund, State Fund, and Subdivision Fund.

66. "*Settlement Fund Administrator*" means the entity that determines the Annual Payments (including calculating Incentive Payments pursuant to Section V) and any amounts subject to suspension or offset pursuant to Sections V and IX), determines the Participation Tier, and administers and distributes amounts into the Settlement Fund. The duties of the Settlement Fund Administrator shall be governed by this Agreement. Prior to the Initial Participation Date, the Parties shall agree to selection and removal processes for and a detailed description of the Settlement Fund Administrator's duties, including a detailed mechanism for paying the Settlement Fund Administrator's fees and costs, all of which shall be appended to the Agreement as Exhibit L.

67. "*Settlement Fund Escrow*" means the interest-bearing escrow fund established pursuant to this Agreement to hold disputed or suspended payments made under this Agreement.

68. "*Settlement Payment Schedule*" means the schedule of payments attached to this Agreement as Exhibit M. A revised Settlement Payment Schedule will be

*revised March 30, 2022*

substituted for Exhibit M after any offsets, reductions, or suspensions under Sections V and IX are determined.

69. "*Settling State*" means any State that has entered the Agreement.

70. "*Special District*" means a formal and legally recognized sub-entity of a State that is authorized by State law to provide one or a limited number of designated functions, including but not limited to school districts, fire districts, healthcare & hospital districts, and emergency services districts. Special Districts do not include sub-entities of a State that provide general governance for a defined area that would qualify as a Subdivision.

71. "*State*" means any state of the United States of America, the District of Columbia, American Samoa, Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands. Additionally, the use of non-capitalized "state" to describe something (e.g., "state court") shall also be read to include parallel entities in commonwealths, territories, and the District of Columbia (e.g., "territorial court").

72. "*State Fund*" means a component of the Settlement Fund described in subsection VI.C.

73. "*State-Specific Finality*" means, with respect to the Settling State in question:

   a. the Agreement and the Consent Judgment have been approved and entered by the Court as to Janssen, including the release of all Released Claims against Released Entities as provided in this Agreement;

   b. for all lawsuits brought by the Settling State against Released Entities for Released Claims, either previously filed or filed as part of the entry of the Consent Judgment, the Court has stated in the Consent Judgment or otherwise entered an order finding that all Released Claims against Released Entities asserted in the lawsuit have been resolved by agreement; and

   c. (1) the time for appeal or to seek review of or permission to appeal from the approval and entry as described in subsection (a) hereof and entry of such order described in subsection (b) hereof has expired; or (2) in the event of an appeal, the appeal has been dismissed or denied, or the approval and entry described in (a) hereof and the order described in subsection (b) hereof have been affirmed in all material respects (to the extent challenged in the appeal) by the court of last resort to which such appeal has been taken and such dismissal or affirmance has become no longer subject to further appeal (including, without limitation, review by the United States Supreme Court).

74. "*State-Subdivision Agreement*" means an agreement that a Settling State reaches with the Subdivisions in that State regarding the allocation, distribution, and/or use of funds allocated to that State and to Participating Subdivisions in that State.

*revised March 30, 2022*

A State-Subdivision Agreement shall be effective if approved pursuant to the provisions of Exhibit O or if adopted by statute. Preexisting agreements addressing funds other than those allocated pursuant to this Agreement shall qualify if the approval requirements of Exhibit O are met. A State and its Subdivisions may revise, supplement, or refine a State-Subdivision Agreement if approved pursuant to the provisions of Exhibit O or if adopted by statute.

75.     "*Statutory Trust*" means a trust fund established by state law to receive funds allocated to a State's Abatement Accounts Fund and restrict their expenditure to Opioid Remediation purposes subject to reasonable administrative expenses. A State may give a Statutory Trust authority to allocate one or more of the three Settlement Funds, but this is not required.

76.     "*Subdivision*" means a formal and legally recognized sub-entity of a State that provides general governance for a defined area, including a county, parish, city, town, village, or similar entity. Unless otherwise specified, "Subdivision" includes all functional counties and parishes and other functional levels of sub-entities of a State that provide general governance for a defined area. Historic, non-functioning sub-entities of a State (such as Connecticut counties) are not Subdivisions, unless the entity has filed a lawsuit that includes a Released Claim against a Released Entity in a direct, parens patriae, or any other capacity. For purposes of this Agreement, the term Subdivision does not include Special Districts. A list of Subdivisions by state will be agreed to prior to any Subdivision sign-on period.

77.     "*Subdivision Allocation Percentage*" means for Subdivisions in a Settling State that are eligible to receive an allocation from the Subdivision Fund pursuant to subsection VI.C or subsection VI.D, the percentage as set forth in Exhibit G. The aggregate Subdivision Allocation Percentage of all Subdivisions receiving a Subdivision Allocation Percentage in each State shall equal 100%. Immediately upon the effectiveness of any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3 (or upon the effectiveness of an amendment to any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3) that addresses allocation from the Subdivision Fund, or upon any, whether before or after the Initial Participation Date, Exhibit G will automatically be amended to reflect the allocation from the Subdivision Fund pursuant to the State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by Section V.D.3. The Subdivision Allocation Percentages contained in Exhibit G may not change once notice is distributed pursuant to subsection VII.A, except upon the effectiveness of any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3 (or upon the effectiveness of an amendment to any State-Subdivision Agreement, Allocation Statute, Statutory Trust, or voluntary redistribution allowed by subsection VI.D.3) that addresses allocation from the Subdivision Fund. For the avoidance of doubt, no Subdivision

12

not listed on Exhibit G shall receive an allocation from the Subdivision Fund and no provision of this Agreement shall be interpreted to create such an entitlement.

78.    "*Subdivision Fund*" means a component of the Settlement Fund described in subsection VI.C.

79.    "*Subdivision Settlement Participation Form*" means the form attached as Exhibit K that Participating Subdivisions must execute and return to the Settlement Fund Administrator, and which shall (1) make such Participating Subdivisions signatories to this Agreement, (2) include a full and complete release of any and of such Subdivision's claims, and (3) require the prompt dismissal with prejudice of any Released Claims that have been filed by any such Participating Subdivision.

80.    "*Threshold Motion*" means a motion to dismiss or equivalent dispositive motion made at the outset of litigation under applicable procedure. A Threshold Motion must include as potential grounds for dismissal, any applicable Bar or the relevant release by a Settling State or Participating Subdivision provided under this Agreement and, where appropriate under applicable law, any applicable limitations defense.

81.    "*Trigger Date*" means, in the case of a Primary Subdivision, the Reference Date, or, in the case of all other Subdivisions, the Preliminary Agreement Date.

## II.    Participation by States and Condition to Preliminary Agreement

A.    *Notice to States*. On July 22, 2021 this Agreement shall be distributed to all States. The States' Attorneys General shall then have a period of thirty (30) days to decide whether to become Settling States. States that determine to become Settling States shall so notify the National Association of Attorneys General and Janssen and shall further commit to obtaining any necessary additional State releases prior to the Reference Date. This notice period may be extended by written agreement of Janssen and the Enforcement Committee.

B.    *Condition to Preliminary Agreement*. Following the notice period set forth in subsection II.A above, Janssen shall determine on or before the Preliminary Agreement Date whether, in its sole discretion, enough States have agreed to become Settling States to proceed with notice to Subdivisions as set forth in Section VII below. If Janssen determines that this condition has been satisfied, and that notice to the Litigating Subdivisions should proceed, it will so notify the Settling States by providing notice to the Enforcement Committee and Settlement Fund Administrator on the Preliminary Agreement Date. If Janssen determines that this condition has not been satisfied, it will so notify the Settling States by providing notice to the Enforcement Committee and Settlement Fund Administrator, and this Agreement will have no further effect and all releases and other commitments or obligations contained herein will be void.

C.    *Later Joinder by States*. After the Preliminary Agreement Date, a State may only become a Settling State with the consent of Janssen, in its sole discretion. If a State becomes a

*revised March 30, 2022*

Settling State more than sixty (60) days after the Preliminary Agreement Date, but on or before January 1, 2022, the Subdivisions and Special Districts in that State that become Participating Subdivisions and Participating Special Districts within ninety (90) days of the State becoming a Settling State shall be considered Initial Participating Subdivisions or Initial Participating Special Districts. A State may not become a Settling State after January 1, 2022.

### III.  Injunctive Relief

A.   *Entry of Injunctive Relief*. As part of the Consent Judgment, the Parties agree to the injunctive relief terms attached as Exhibit P.

### IV.  Release

A.   *Scope.* As of the Effective Date, the Released Entities will be released and forever discharged from all of the Releasors' Released Claims. Each Settling State (for itself and its Releasors) and Participating Subdivision (for itself and its Releasors) will, on or before the Effective Date, absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist in bringing, or permit to be brought, filed, or claimed, or to otherwise seek to establish liability for any Released Claims against any Released Entity in any forum whatsoever. The releases provided for in the Agreement are intended by the Parties to be broad and shall be interpreted so as to give the Released Entities the broadest possible bar against any liability relating in any way to Released Claims and extend to the full extent of the power of each Settling State and its Attorney General to release claims. The Release shall be a complete bar to any Released Claim.

B.   *Claim Over and Non-Party Settlement*.

1.   *Statement of Intent.* It is the intent of the Parties that:

   a.   Released Entities should not seek contribution or indemnification (other than pursuant to an insurance contract) from other parties for their payment obligations under this Settlement Agreement;

   b.   the payments made under this Settlement Agreement shall be the sole payments made by the Released Entities to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Released Entity);

   c.   Claims by Releasors against non-Parties should not result in additional payments by Released Entities, whether through contribution, indemnification or any other means; and

   d.   the Settlement meets the requirements of the Uniform Contribution Among Joint Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

*revised March 30, 2022*

e.    The provisions of this subsection IV.B are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

2.    *Contribution/Indemnity Prohibited.* No Released Entity shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Released Entity shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it. For the avoidance of doubt, nothing herein shall prohibit a Released Entity from recovering amounts owed pursuant to insurance contracts.

3.    *Non-Party Settlement.* To the extent that, on or after the Reference Date, any Releasor enters into a Non-Party Settlement, including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include), unless prohibited from doing so under applicable law, in the Non-Party Settlement a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Janssen in subsection IV.B.2, or a release from such Non-Released Entity in favor of the Released Entities (in a form equivalent to the releases contained in this Agreement) of any Claim-Over. The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.

4.    *Claim-Over.* In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that in subsection IV.B.3, or any Releasor files a Non-Party Covered Conduct Claim against a non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in subsection IV.B.3, and such Non-Released Entity asserts a Claim-Over against a Released Entity, that Releasor and Janssen shall take the following actions to ensure that the Released Entities do not pay more with respect to Covered Conduct to Releasors or to Non-Released Entities than the amounts owed under this Settlement Agreement by Janssen:

a.    Janssen shall notify that Releasor of the Claim-Over within sixty (60) days of the assertion of the Claim-Over or sixty (60) days of the Effective Date of this Settlement Agreement, whichever is later;

b.    Janssen and that Releasor shall meet and confer concerning the means to hold Released Entities harmless and ensure that it is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement;

15

*revised March 30, 2022*

c.      That Releasor and Janssen shall take steps sufficient and permissible under the law of the State of the Releasor to hold Released Entities harmless from the Claim-Over and ensure Released Entities are not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement. Such steps may include, where permissible:

(1)     Filing of motions to dismiss or such other appropriate motion by Janssen or Released Entities, and supported by Releasors, in response to any claim filed in litigation or arbitration;

(2)     Reduction of that Releasor's Claim and any judgment it has obtained or may obtain against such Non-Released Entity by whatever amount or percentage is necessary to extinguish such Claim-Over under applicable law, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

(3)     Placement into escrow of funds paid by the Non-Released Entities such that those funds are available to satisfy the Claim-Over;

(4)     Return of monies paid by Janssen to that Releasor under this Settlement Agreement to permit satisfaction of a judgment against or settlement with the Non-Released Entity to satisfy the Claim-Over;

(5)     Payment of monies to Janssen by that Releasor to ensure it is held harmless from such Claim-Over, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

(6)     Credit to Janssen under this Settlement Agreement to reduce the overall amounts to be paid under the Settlement Agreement such that it is held harmless from the Claim-Over; and

(7)     Such other actions as that Releasor and Janssen may devise to hold Janssen harmless from the Claim Over.

d.      The actions of that Releasor and Janssen taken pursuant to paragraph (c) must, in combination, ensure Janssen is not required to pay more with respect to Covered Conduct than the amounts owed by Janssen under this Settlement Agreement.

e.      In the event of any dispute over the sufficiency of the actions taken pursuant to paragraph (c), that Releasor and Janssen may seek review by the National Arbitration Panel, provided that, if the parties agree, such dispute may be heard by the state court where the relevant Consent Judgment was filed. The National Arbitration Panel shall have authority to

16

*revised March 30, 2022*

require Releasors to implement a remedy that includes one or more of the actions specified in paragraph (c) sufficient to hold Released Entities fully harmless. In the event that the panel's actions do not result in Released Entities being held fully harmless, Janssen shall have a claim for breach of this Settlement Agreement by Releasors, with the remedy being payment of sufficient funds to hold Janssen harmless from the Claim-Over. For the avoidance of doubt, the prior sentence does not limit or eliminate any other remedy that Janssen may have.

5.      To the extent that the Claim-Over is based on a contractual indemnity, the obligations under subsection IV.B.4 shall extend solely to a Non-Party Covered Conduct Claim against a pharmacy, clinic, hospital or other purchaser or dispenser of Products, a manufacturer that sold Products, a consultant, and/or a pharmacy benefit manager or other third-party payor. Janssen shall notify the Settling States, to the extent permitted by applicable law, in the event that any of these types of Non-Released Entities asserts a Claim-Over arising out of contractual indemnity against it.

C.      *General Release*. In connection with the releases provided for in the Agreement, each Settling State (for itself and its Releasors) and Participating Subdivision expressly waives, releases, and forever discharges any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may thereafter discover facts other than or different from those which it knows, believes, or assumes to be true with respect to the Released Claims, but each Settling State (for itself and its Releasors) and Participating Subdivision hereby expressly waives and fully, finally, and forever settles, releases, and discharges, upon the Effective Date, any and all Released Claims that may exist as of such date but which Releasors do not know or suspect to exist, whether through ignorance, oversight, error, negligence or through no fault whatsoever, and which, if known, would materially affect the Settling States' decision to enter into the Agreement or the Participating Subdivisions' decision to participate in the Agreement.

D.      *Res Judicata*. Nothing in the Agreement shall be deemed to reduce the scope of the res judicata or claim preclusive effect that the settlement memorialized in the Agreement, and/or any Consent Judgment or other judgment entered on the Agreement, gives rise to under applicable law.

*revised March 30, 2022*

E.      *Representation and Warranty.* The signatories hereto on behalf of their respective Settling States and its Participating Subdivisions expressly represent and warrant that they will obtain on or before the Effective Date (or have obtained) the authority to settle and release, to the maximum extent of the State's power, all Released Claims of (1) their respective Settling States; (2) all past and present executive departments, state agencies, divisions, boards, commissions and instrumentalities with the regulatory authority to enforce state and federal controlled substances acts; (3) any of their respective Settling State's past and present executive departments, agencies, divisions, boards, commissions and instrumentalities that have the authority to bring Claims related to Covered Conduct seeking money (including abatement and/or remediation) or revocation of a pharmaceutical distribution license; and (4) any Participating Subdivisions. For the purposes of clause (3) above, executive departments, agencies, divisions, boards, commissions, and instrumentalities are those that are under the executive authority or direct control of the State's Governor. Also, for the purposes of clause (3), a release from a State's Governor is sufficient to demonstrate that the appropriate releases have been obtained.

F.      *Effectiveness*. The releases set forth in the Agreement shall not be impacted in any way by any dispute that exists, has existed, or may later exist between or among the Releasors. Nor shall such releases be impacted in any way by any current or future law, regulation, ordinance, or court or agency order limiting, seizing, or controlling the distribution or use of the Settlement Fund or any portion thereof, or by the enactment of future laws, or by any seizure of the Settlement Fund or any portion thereof.

G.      *Cooperation*. Releasors (i) will not encourage any person or entity to bring or maintain any Released Claim against any Released Entity and (ii) will reasonably cooperate with and not oppose any effort by a Released Entity to secure the prompt dismissal of any and all Released Claims.

H.      *Non-Released Claims.* Notwithstanding the foregoing or anything in the definition of Released Claims, the Agreement does not waive, release or limit any criminal liability, Claims for any outstanding liability under any tax or securities law, Claims against parties who are not Released Entities, Claims by private individuals and any claims arising under the Agreement for enforcement of the Agreement.

### V.      <u>Monetary Relief and Payments</u>

A.      **Structure of Payments**

1.      All payments under this Section V shall be made into the Settlement Fund, except that where specified, they shall be made into the Settlement Fund Escrow. The Settlement Fund shall be allocated and used only as specified in Section VI.

2.      Janssen shall pay into the Settlement Fund the sum of Four Billion, Five Hundred Thirty-Four Million, Six Hundred Fifteen Thousand, Three Hundred Eighty-Five Dollars ($4,534,615,385) minus (1) the offsets and credits specified in subsection

*revised March 30, 2022*

<u>**EXHIBIT J**</u>

<u>**Janssen Predecessors and Former Affiliates**</u>

The following includes a non-exclusive list of Janssen's predecessors and former affiliates:

1. Janssen Pharmaceutica, Inc.
2. Janssen Pharmaceutica N.V.
3. Janssen-Cilag Manufacturing, LLC
4. Janssen Global Services, LLC
5. Janssen Ortho LLC
6. Janssen Products, LP
7. Janssen Research & Development, LLC
8. Janssen Supply Group, LLC
9. Janssen Scientific Affairs, LLC
10. JOM Pharmaceutical Services, Inc.
11. OMJ Pharmaceuticals, Inc.
12. Ortho-McNeil Finance Co.
13. Ortho-McNeil Pharmaceutical
14. Ortho-McNeil-Janssen Pharmaceuticals
15. Ortho-McNeil Pharmaceutical Services Division
16. Ortho-McNeil Neurologic
17. Patriot Pharmaceuticals, LLC
18. Pricara, Ortho-McNeil-Janssen Pharmaceuticals
19. Alza Corp.
20. Alza Development Corp.
21. Janssen Supply Chain, Alza Corp.
22. Noramco, Inc.
23. Tasmanian Alkaloids PTY LTD.

*revised March 30, 2022*