# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION       MDL No.: 2804
OPIATE LITIGATION

**THIS DOCUMENT RELATES TO:**                        Case No.: 17-md-2804

*"All Cases"*                                        Judge Dan Aaron Polster

## KROGER'S OBJECTION TO SPECIAL MASTER COHEN'S DISCOVERY RULING REGARDING TUCKER DEPOSITION

Under Federal Rule of Civil Procedure 53(f), the Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II ("Kroger'), object to the *Ruling Regarding Tucker Deposition* [Doc. 5146] (the "Order") denying Kroger's request for protective relief with respect to a Notice of Deposition of Kroger's in-house counsel Frances Tucker ("Attorney Tucker").

## PRELIMINARY STATEMENT

Attorney-client privilege disputes over document productions are necessarily case-by-case, fact intensive questions.  But deposing in-house counsel poses a far greater and more fundamental intrusion upon core attorney-client protections.  An attorney's thought processes, impressions, and opinions are subject to the strictest and most sacrosanct protections at law.  The Sixth Circuit endorses the view that deposing in-house counsel degrades the profession and detracts from quality client representation.

So in this Circuit, in-house counsel may only be deposed in limited circumstances.  The party requesting the deposition must show that they seek crucial, nonprivileged information that can only be obtained by deposing in-house counsel.  Given the robust discovery into Kroger's controlled substance practices in multiple jurisdictions, this is an unmeetable bar here.  Moreover, Plaintiffs are actively taking related discovery probing into these same subject matters with other witnesses.  But the Order compels Attorney Tucker's deposition with the Special Master's attendance to rule on privilege objections as they arise.  The Special Master's Order relieves Plaintiffs of their burden of persuasion and sweeps away Kroger's core attorney-client protections.

The Special Master's Order constitutes a clear error of both law and fact.  Kroger hereby objects, and requests that its *Motion for Protective Order* regarding Attorney Tucker's Notice of Deposition be granted, or the very least, held in abeyance pending related discovery developments.

# STATEMENT OF FACTS

I.  <u>Attorney Tucker</u>

Attorney Frances Tucker has served as a practicing attorney in Kroger's legal department since 2003.  [Exh. A Tucker Declaration at ¶ 1.]  Attorney Tucker has never worked in Kroger's Health & Wellness regulatory compliance department.  Kroger Health relies on Attorney Tucker for her legal acumen, and it relies on regulatory compliance officers, managers and analysts for their compliance expertise.  [Exh. A Tucker Declaration at ¶¶ 3-4.]

As in-house counsel for Kroger, Attorney Tucker has worked with Kroger's outside counsel Bowles Rice LLP in connection with the opioid litigation.  [Exh. A Tucker Declaration at ¶ 5.]  Attorney Tucker has been involved in gathering and identifying documents, compiling and providing background information and context, and litigation strategy.  [*Id.*]  Attorney Tucker first became involved in the opioid litigation in March of 2017.  In the six years since, Attorney Tucker has developed opinion work product in connection with this case.

II.  <u>Kroger's Pharmacy Compliance Committee</u>

Kroger's Pharmacy Compliance Committee (the "PCC" or the "Committee"), established in early 2012, is an interdisciplinary cross-section of Kroger's Health & Wellness team.  [*See* Exh. B PCC Charter; Exh. C Gonzales Dep. at 22:11-24; Exh. A Tucker Declaration at ¶ 4.]  The Committee is responsible for overseeing Kroger's compliance program.  [*See* Exh. B PCC Charter at 2.5.]  Per the Committee's charter, certain Kroger personnel are required members: Kroger's Chief Ethics and Compliance Officer ("CECO"), the Vice President of Pharmacy ("VP of Health & Wellness"), the Manager of Pharmacy Regulatory Compliance and Government Relations ("Health & Wellness Officer"), and Corporate Counsel for Pharmacy.[1]  [*Id.* at 2.2.]  Other members

---

[1]  Kroger uses these abbreviations for convenience, as these job titles have changed over time.

of the Committee are appointed, with the PCC's goal of incorporating diverse backgrounds and expertise in mind.  [*See id.*]

As such, Attorney Tucker has been a member of the Committee since its formation.  (So has Kroger's CECO, Martha Sarra, the PCC's original chairwoman).  Attorney Tucker is not a member of the PCC to provide yet another business or compliance voice to the Committee's ranks. For compliance issues, the Committee relies on the subject matter expertise of Kroger's compliance officers and managers (also required Committee members).  [Exh. A Tucker Declaration at ¶ 4.]  Attorney Tucker, on the other hand, is on the Committee because she is a lawyer.  [*See* Exh. B PCC Charter at 2.5; Exh. A Tucker Declaration at ¶ 3.]  Indeed, during PCC meetings, Attorney Tucker provides legal advice and expresses legal impressions in her capacity at Kroger's counsel.  [Exh. A Tucker Declaration at ¶ 3.]  Per the Committee's charter, "[a]ny communication between the Committee and legal counsel in the course of obtaining legal advice will be considered privileged and confidential."  [*See* Exh. B PCC Charter at 2.9.]

To that end, the PCC maintains minutes of each meeting.  [*See* Exh. B PCC Charter at 2.9.] The PCC held thirty-five (35) quarterly meetings from 2012-2021, addressing a variety of topics including, but not limited to, HIPAA, Medicare/Medicaid, fraud waste & abuse, and controlled substances.  Meeting minutes and agendas for all 35 meetings have been produced to the MDL Plaintiffs over Kroger's assertions of attorney-client and self-critical analyses privileges.[2]

---

[2]    The MDL Plaintiffs have never challenged Kroger's privilege assertions over portions of the PCC Minutes.  Instead, DR-22 compelled Kroger to produce the PCC Minutes in unredacted form to the MDL repository, even though portions of the Minutes are plainly designated as privileged.  [*See* Exh D Agenda Item 334.]

II.    Discovery Efforts

Kroger has been subject to about thirty-four (34) fact depositions and eight (8) Rule 30(b) depositions in the opioid litigation.  [*See* Doc. 5146 at 1.]  Predictably, this discovery has focused on Kroger's controlled substance dispensing and distribution practices.  It is also ongoing.

To that end, Kroger Health & Wellness compliance personnel have been deposed and subject to custodial searches repeatedly.  For example, Kroger's Manager of Controlled Substance Compliance Jaime McDermott has been deposed four (4) times, and former Health & Wellness Compliance Officer Jeff Loesch has been deposed three (3) times.  Beyond fact depositions, Kroger has provided multiple rounds of corporate testimony on its controlled substance policies and procedures pursuant to Federal Rule of Civil Procedure 30(b)(6).  Kroger twice designated a corporate designee to testify about its controlled substance dispensing policies and procedures and, on two other occasions, designated a corporate designee to testify about its controlled substance distribution policies and procedures.

The PCC has also been subject to robust and targeted discovery efforts.  [*See,* Exh. E *e.g.,* Kroger's Motion at 2-3, 6.]  In total, Committee members have participated in fourteen (14) fact depositions and have generated over 25,000 custodial documents.  (To date, less than 3,000 of those documents are Attorney Tucker's.)  Three (3) of Kroger's Health & Wellness Officers (Laura Raney, Jeff Loesch and Nicholas Gonzales) have been deposed a total of six (6) times, while Kroger's former Procurement Manager (Bob Breetz), Kroger's VPs of Health & Wellness (Lincoln Lutz and Philecia Avery), and Kroger's CECO (Martha Sarra) have been, or soon will be, subject to fact depositions.

In the winter of 2022-2023, the parties honed even more specifically on Kroger's PCC.  At the Special Master's direction, Kroger identified three (3) custodians upon which to run targeted,

PCC-specific search terms.  [*See* Exh. D Agenda Item 334.]  In addition to this PCC-specific custodial discovery, Kroger presented and prepared two *more* corporate designees to offer testimony "in any way related" to the PCC.  [*See id.*]  This w

ave of PCC-specific custodial and Rule 30(b) discovery was completed in April of 2023. Plaintiffs have not informed Kroger of any perceived deficiencies in this discovery—nor have Plaintiffs plausibly indicated that Kroger's designees were unprepared to provide corporate testimony in response to Plaintiffs' questioning.

III.    This Dispute

Toward the end of discovery, Plaintiffs requested six additional fact depositions and custodial files from Kroger.[3]  [*See* Exh. F 2023.04.24 E-Mail from Gaddy.]  This wave of fact discovery focused, yet again, on the Kroger's PCC.  [*See id.*]  Kroger agreed to most of Plaintiffs' requested deponent/custodians—Lincoln Lutz (VP of Health & Wellness, until circa 2014), Philecia Avery (VP of Health & Wellness, 2014-2017), Nicholas Gonzales (Health & Wellness Compliance Officer. 2016-present), and Martha Sarra (Chief Ethics & compliance Officer, 2011-present).

But the parties disputed Attorney Tucker.  On June 2, 2023, Plaintiffs moved to compel Attorney Tucker's custodial file, claiming that she has unique documents because she is not subject to Kroger's ordinary-course-of-business e-mail retention policy.  [*See* Exh. G PLFs' Motion to Compel Tucker Custodial File.]  Although Plaintiffs made no real showing that Attorney Tucker had unique documents in her possession[4], the Special Master concluded that "it is certain that

---

[3]      Plaintiffs also noticed two unrelated Rule 30(b) depositions which are upcoming.

[4]      Plaintiffs provided examples of documents from a targeted search of Attorney Tucker's file that purportedly justified a broader search.  But every single example of important, unique documents in Attorney Tucker's file could be found elsewhere.  [*See* Exh. H Kroger's Resp. to

documents sent and received by Tucker will be more complete from Tucker's own files than from other custodians." [*See* Exh. K SM Cohen Order on Tucker Custodial File.] The Special Master directed the parties to meet and confer about how the production would impact other upcoming depositions. [*See id*.]

Although the excitement over Attorney Tucker's custodial documents seemed unwarranted to Kroger[5], Kroger did not to object to the Special Master's ruling. At the Special Master's request, Kroger conferred with Plaintiffs about the timing of producing Attorney Tucker custodial file. Because Plaintiffs demanded Attorney Tucker's file (or parts of it) before upcoming depositions of the other upcoming deponents, Kroger agreed to staggered productions in advance of these depositions. As of the date of this writing, the Attorney Tucker document productions are rolling and the other depositions are upcoming.

Attorney Tucker's custodial file is one thing—but deposing her is another. Plaintiffs claimed that they did not "have time" to "discuss specifics" about their request to depose Attorney Tucker. [*See* Exh. H Kroger's Resp. to PLFs' MTC Tucker Custodial File at 4-5.] On June 6, 2023, Plaintiffs unilaterally noticed her deposition, [*See* Exh. L Notice of Deposition of Attorney Tucker][6], compelling Kroger to seek protective relief from Special Master Cohen on July 5, 2023. [*See* Kroger's Motion.]

---

PLFs' MTC Tucker Custodial File at 6; *see also* Exh. I Kroger Buzzeo CSA (sealed); Exh. J Kroger-MDL00058810 (sealed).]

[5]     Given the data Kroger has retained for the other four deponent/custodians (Lutz, Avery, Sarra, and Gonzales), Plaintiffs' inordinate focus on Attorney Tucker's e-mail is unfounded.

[6]     The parties have since agreed that this Notice is ineffective until this dispute is resolved.

In briefing to the Special Master, Kroger made the same arguments it makes here: that in-house counsel can only be deposed in limited circumstances, and Plaintiffs make no relevant showing here.  [*See* Exh. E Kroger's Motion at 5-7.]  In response, Plaintiffs kept it high level, seeking to depose counsel about "controlled substance compliance matters generally," given that she "is the only employee" whose e-mail is not subject to Kroger's e-mail retention policies, and that she "is *the witness* to question regarding her authored e-mails."  [Exh. M PLFs' Response at 1.]

Although Plaintiffs kept it deliberately vague, they did disclose a "good illustration" of an example line of questioning that only Attorney Tucker could answer.  [Exh. M PLFs' Response at 5.]  Plaintiffs intend to ask Attorney Tucker why she "wanted" certain topics on PCC meeting agendas.  [Exh. M PLFs' Response at 5 (quoting Gonzales See Exh. C Gonzales Depo. at 35:8-24 (sealed)).]  Although Kroger has produced the PCC agendas and provided corporate testimony explaining the basis for them, Kroger's designee declined to speculate to "*any other reason*" why "*Ms. Tucker wanted*" this agenda topic.  [Exh. M PLFs' Response at 5 (quoting Gonzales Exh. C Gonzales Depo. at 35:8-24 (sealed)).]  But as set forth in Kroger's privilege logs, Attorney Tucker received legal advice and attorney-client work product from outside counsel, Hall Render LLP, in connection with the PCC agenda topics.  [*See* N Kroger-MDL071 Privilege Log (sealed).]

On August 8, 2023, the Special Master denied Kroger's motion for protective relief.  In his formalized ruling, the Special Master reasons that Attorney Tucker "was intimately involved in controlled substances policies that relate directly to the central issues in this case" as "she is the longest tenured member of [the PCC]."  [*See* Doc. 5146 at 1, 3.]  The Special Master further finds a "strong[] suggesti[on]" that Attorney Tucker "would have additional and more thorough knowledge and information" than Kroger's other fact witnesses and Rule 30(b) designees.  Finally,

the Special Master holds that "at least some" of Attorney Tucker's knowledge is "not privileged." [*Id.* at 3.] So the Special Master issues "guardrails" to "ensure Kroger's legitimate privilege concerns are protected." [*Id.*] To that end, the Special Master limits the deposition to 4 hours and directs that he preside over the deposition so he can rule upon privilege objections as they arise. [*Id.* at 5.] The Special Master provided 7 days to object to his ruling. Kroger objects here.

## LEGAL STANDARD

The Sixth Circuit has adopted the *Shelton* rule, which holds that the "practice of taking opposing counsel's deposition as a negative development" that "should only be employed in limited circumstances." *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) (adopted by *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002)). The *Shelton* rule applies to in-house attorneys who are involved in the litigation. *See, e.g., Alomari v. Ohio Dep't of Public Safety*, 626 Fed. App'x 558, 573 (6th Cir. Sept. 9, 2015) ("It could not be clearer that the standard was intended to apply to in-house attorneys engaged by the opposing party with involvement in the matter being litigated.").

*Shelton* places the burden on the *requesting* party—not the *opposing* party—to show why the deposition is necessary. *See, e.g., Libertarian Party of Ohio v. Husted*, 33 F. Supp. 3d 914, 926 (S.D. Oh. 2014). Under *Shelton*, a party seeking to depose in-house counsel bears the burden of showing "that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case." *Id.* at 1327 (internal citations omitted).

## ARGUMENT

Plaintiffs intend to question Attorney Tucker about "controlled substance compliance generally." [PLFs' Resp. at 1.] But Plaintiffs bear the burden of showing that they seek crucial,

nonprivileged information that can only be obtained by deposing Attorney Tucker. *See Shelton*, 804 F.2d at 1327; *Nationwide*, 278 F.3d at 904. Plaintiffs cannot make these showings, and the Special Master errs by concluding that they did.

      *First*, Plaintiffs cannot show that there are no other means to obtain the information they seek. The bases Plaintiffs cite to depose Attorney Tucker have been and continue to be probed by independent means of discovery. *Second*, Plaintiffs fail to explain why the unique information apparently sought here—which amounts to little more than Attorney Tucker's opinion or recollection of facts already discovered by other means—is crucial to their case. *Third*, Plaintiffs fail to show that the information sought is not privileged. Indeed, Plaintiffs admit in their letter briefs that they seek privileged information from Attorney Tucker. *Fourth*, the Special Master's "guardrails" do not safeguard Kroger's attorney-client protections; rather, they alleviate Plaintiffs' failure to satisfy *Shelton*. *Fifth* and finally, Kroger's request for protective relief should, if not granted, be at least held in abeyance. Substantial and ongoing document productions and depositions bear directly on whether Plaintiffs need to depose Attorney Tucker.

## I. Plaintiffs cannot show that deposing Attorney Tucker is the only means to obtain the information that they seek.

      Based on Attorney Tucker's comments in PCC meeting minutes, Plaintiffs contend that Attorney Tucker is a "unique and important witness." [PLFs' Letter Brief at 3.] The Special Master emphasizes that Attorney Tucker "has been a member of the PCC since it has been formed," and that "given [her] longstanding, central role on Kroger's PCC, it is inevitable that she has unique familiarity with information fundamental to the bellwether cases." [Doc. 5146 at 4.]

      But Plaintiffs fail to establish that "no other means exist to obtain the information than to depose opposing counsel." *Nationwide,* 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327). Because committees comprise of multiple people, there are inherently other means to obtain

information about the PCC outside of deposing the sole practicing lawyer serving on it.  Indeed, Kroger's PCC has been well-trodden ground in discovery.  Kroger has produced more than 25,000 documents from the custodial files of PCC members, and Plaintiffs have taken (or plan to take) 14 fact depositions of PCC members.  Moreover, Kroger corporate designees have testified about the PCC specifically on two (2) separate occasions, and Kroger produced targeted custodial files from three (3) custodians regarding the PCC.  Given that Kroger has prepared (and provided) Rule 30(b) testimony *targeting the PCC specifically*, the idea that only Attorney Tucker can answer yet-answered and yet-specified questions about the PCC strains credulity.  Ultimately, it is incumbent on Plaintiffs to show that there are no other means to obtain the information they seek from Attorney Tucker.  Plaintiffs, here, do even established that the information they seek has not been discovered already.

As of this writing, fact depositions of four (4) other PCC members are upcoming. Specifically, Kroger's former VPs of Health & Wellness Lincoln Lutz and Philecia Avery—who, in combination, sat on the PCC continuously from 2012-2017—will be deposed soon.  Also set for depositions are Kroger's current Health & Wellness Compliance Officer Nicholas Gonzales— who has sat continuously on the PCC from late 2016 to the present—and Kroger's Chief Ethics and Compliance Officer Martha Sarra—the PCC's original chair, who has sat continuously on the Committee from its inception.[7]  Plaintiffs fundamentally cannot show that there are crucial, non-privileged PCC questions that only Attorney Tucker can answer, given that four other PCC members (spanning the lifespan of the Committee) have not yet been questioned, but will be soon.

---

[7]     Plaintiffs' emphasis on Attorney Tucker as a member of the PCC is not unique to Attorney Tucker.  Plaintiffs have noticed the deposition of the other "foundational" member of the PCC. Kroger's corporate designees were prepared to testify, and did testify, about the PCC back to its foundation.  Every single compliance personnel who reported to the PCC on controlled substance issues—covering every one of the 35 meeting—has been deposed.

The Special Master concludes that Attorney Tucker has "intimate knowledge of the formation and evolution of Kroger's policies" and that "simple facts and circumstances surrounding the creation and implementation of Kroger's policies" are not generally privileged. [Doc. 5146 at 3-4.]  The Special Master concludes that "[t]he bellwether cases cannot be fairly tried without discovery of that information."  [*Id.* at 3.]  But Kroger's controlled substance policies—when they applied, how they apply, how they do not apply, where they apply—have been robustly vetted.  Kroger has prepared (and provided) corporate testimony about Kroger's controlled substance policies and procedures (both dispensing and distribution) on four (4) separate occasions.  Kroger's compliance personnel who draft, revise and approve relevant policies have been deposed repeatedly.[8]  In three separate jurisdictions, neither Kroger's nor plaintiffs' experts needed help from Attorney Tucker to detail, chronologize, and opine about Kroger's policies.  The Special Master's concern that "[t]he bellwether cases cannot be fairly tried without this information" is misplaced and fails to consider the robust discovery afforded to these topics already.

Both Plaintiffs and the Special Master emphasize that Attorney Tucker is not subject to Kroger's ordinary-course-of-business e-mail retention policy.  [*See* Doc. 5146.]  This emphasis is misplaced—to date, Kroger has produced over 25,000 documents from the custodial files of PCC members, less than 3,000 of them are Attorney Tucker's.  Those that *are* Attorney Tucker's can generally be found elsewhere.  [*See supra* at n.4.]  Even so, Kroger's ordinary-course-of-business

---

[8]  Contrary to the Special Master's reasoning, the PCC did not "create" Kroger's controlled substance policies.  Kroger's controlled substance policies (Policy 501) pre-date the PCC by about seven (7) years and are revised and approved by Kroger's Manager of Controlled Substance Compliance and Health & Wellness Leader respectively.  [*See* Exh. O Policy 501 (sealed).]  Past and present employees holding these non-lawyer positions have been deposed ten (10) different times.  [*See supra*.]

e-mail retention policy do not mean that crucial, non-privileged information can only be gleaned by deposing Attorney Tucker.  If anything, it means the opposite: the production of Attorney Tucker's custodial file is *itself* an independent means of providing information that does not require live testimony.  In fact, Plaintiffs have demanded that Attorney Tucker's custodial file be produced *before* the upcoming depositions of four other Kroger fact witnesses (Lincoln Lutz, Philecia Avery, Nick Gonzales, and Martha Sarra).  [*See* Exh. K SM Cohen's Ruling on Tucker Custodial File (directing parties to meet and confer about the timing of the production and how it impacts upcoming depositions); Exh. P Kroger's Reply at 5-6.] That Plaintiffs intend to use Attorney Tucker's custodial file in live depositions of other Kroger witnesses is proof positive that there are independent means to obtain whatever information Plaintiffs seek from Attorney Tucker's custodial file.

Ultimately, Kroger is not aware of any crucial, non-privileged information that only Attorney Tucker can provide.   While Plaintiffs' failure to identify the same ought to warrant granting Kroger's requested relief under *Shelton*, Kroger is willing to entertain providing written responses to a reasonable number of crucial, non-privileged lines of inquiry that have not been addressed already.

## II.    Plaintiffs fail to explain how the information they can only obtain by deposing Attorney Tucker is crucial to their case.

Plaintiffs must show that the information they seek from Attorney Tucker is "crucial to the preparation of [their] case."  *Nationwide,* 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327).  Given the procedural history, this notion should be viewed skeptically.  All the topics addressed in the Order—the PCC, Kroger's controlled substance procedures, etc.—have been, in multiple jurisdictions, probed (via fact and Rule 30(b) depositions) and opined about (in both plaintiff and Kroger expert reports).  So when Plaintiffs *do* arguably identify unique knowledge attributable to

Attorney Tucker, it amounts to little more than speculation that she might have a different opinion, recollection, or impression about facts that have already been discovered.  Thus, where Plaintiffs can even arguably show that deposing Attorney Tucker is the only way to obtain the information they seek, they fail to explain why her impressions are "crucial to the preparation of [their] case." *Nationwide,* 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327).

Take, for example, the Special Master's assertion that Attorney Tucker "may have different or additional knowledge about" Kroger's Controlled Substance Documentation (CSD) Form.[9] [Doc. 5146 at 4.]  A mere potential that Attorney Tucker may have "additional or different knowledge" about something is speculative; it does not show that crucial, non-privileged information can only be obtained by deposing her.  *See Shelton*, 804 F.2d at 1327; *Nationwide*, 278 F.3d at 904.  This speculation is unsupported by evidence because Attorney Tucker's memory "is unlikely to consist of anything other than is what in the documents," particularly for Plaintiffs' focus on events taking place nine plus years ago.  [Exh. A Tucker Declaration at ¶ 7.]

Moreover, the notion that Attorney Tucker's potential "additional or different knowledge" about the CSD Form is "crucial to the preparation" of Plaintiffs' case strains credulity.  At least seventeen (17) Kroger fact witnesses have answered questions about Kroger's CSD Form.[10] Kroger also presented for two (2) separate Rule 30(b) depositions on dispensing topics, and

---

[9]      The CSD Form is not used "to identify outlier pharmacies" as the Special Master surmised—it is used by certain Kroger pharmacies when dispensing certain controlled substances. Plaintiffs label these select pharmacies "outliers," which probably accounts for the Special Master's mistake.

[10]      Blair Woolf (New Mexico); Jeanie Goodrich (New Mexico); Jaime McDermott (New Mexico); Chad Andrew (New Mexico); Brenda Barnes (Track 7); Ryan Davis (Track 7); Jeff Loesch (Track 7); Rachel Divincenzo (Track 7); Chuck Page (Track 8); Jonathan Rivers (Track 8); Blake Lord (Track 8); Shannon Gooden (West Virginia); Chris Koon (Track 10); April Henry (Track 9); Micah McCuistion (Track 9); Stephanie Sanchez (Track 9); Lamar Hardman (Track 10).

Kroger's designee addressed the CSD Form and its usage at length in both depositions.  Neither Plaintiffs nor the Special Master explain why Attorney Tucker's take on this form—if it is in fact unique—is more "crucial" than all of Kroger's fact witnesses (some of whom are practicing pharmacists who actually use it).

Same with the Special Master's finding that Attorney Tucker may "have additional and more thorough knowledge" about a 2014 Pharmacy Conference attended by 50-70 other Kroger employees.  [Doc. 5146 at 4.]  Of those 50-70 other employees attending this Conference, at least nine (9) of them were deponents and/or custodians in the opioid litigation.  [*See* Exh Q 2014 Pharmacy Conference Notes (sealed).]  But 8 of those 9 have not even questioned by Plaintiffs about their recollection of the Conference.  Plaintiffs do not explain why Attorney Tucker's recollection of the Conference is crucial, while the recollection of 8 other deponents/custodians was not important enough to explore.

At bottom, Attorney Tucker's "unique familiarity with information fundamental to the bellwether cases"—if real—is just one person's recollection of facts that are already established.  [Doc. 5146 at 4.]  For example, Kroger's policies, the PCC meetings, the 2014 Pharmacy Conference and Kroger's CSD Form are all established facts with supporting documentation and deposition testimonies shedding context.  Attorney Tucker's familiarity, recollection, or opinion on these established facts is not crucial the preparation of Plaintiffs' case.  No one person's familiarity, recollection, or opinion is crucial in determining whether Kroger caused the opioid crisis.  As it were, Attorney Tucker's recollection, opinion, and mental impressions are also where Kroger's core attorney-client protections are the strongest.  *See Hickman*, 329 U.S. at 511.

### III.    Plaintiffs fail to show that the information sought here is not privileged.

Plaintiffs must demonstrate they seek non-privileged information from Attorney Tucker's deposition.  *Nationwide,* 278 F.3d at 628 (quoting *Shelton*, 805 F.2d at 1327).  They do not.

Both Plaintiffs and the Special Master assert that the presence of "non-privileged documents in [Attorney Tucker's] custodial file" shows that "at least some of [the information sought] is not privileged." [Doc. 5146 at 4.]  This is immaterial.  Every lawyer has non-privileged documents in his or her custody.  [*See* Doc. 5053 at 6 ("A communication is not privileged simply because it is made by or to a person who happens to be an attorney.") (quoting *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607, *1 (N.D. Ohio Apr. 9, 2007).]  As this Court has already concluded, Attorney Tucker has privileged documents in her possession, too.  [*See id.* at 11 (affirming Kroger's attorney-client privilege assertion over Attorney Tucker's legal impressions and opinions).]  But it is not Kroger's burden to prove that Plaintiffs seek privileged information from Attorney Tucker; it is Plaintiffs' burden to show that they do not.  *See Alomari*, 2014 WL 12651191, *7 (denying request to depose counsel because "parts" of a "broad range of questions . . . could cover privileged information").  They fail to do so.

Moreover, Plaintiffs admit that they seek to probe Attorney Tucker's mental impressions about subject matters that are plainly protected by the attorney-client privilege and work product doctrines.  In "[a] good illustration of why Ms. Tucker['s deposition] is indispensable," Plaintiffs point to testimony of Kroger's corporate testimony explaining the origins of PCC meeting agendas. [PLFs' Letter Brief at 5.]  Plaintiffs' counsel asked Kroger's designee if he had "an understanding as to why . . . Ms. Tucker thought the training issue was so important that it needed to be on the very first meeting" of the PCC.  [*See* Exh. C Gonzales Depo. at 35:14-24 (sealed).]  Kroger's designee explained that "effective training" is one of "the seven elements of an effective compliance program" per the Office of Inspector General.  [*Id.*]  Unsatisfied with this factual answer, Plaintiffs counsel inquired further as to "[a]ny other reason . . . Ms. Tucker wanted" training on the agenda.  [*Id.*]  Kroger's designee declined to speculate.

So here, Plaintiffs claim that Attorney Tucker's testimony—what she "wanted" and what she "thought" about training on the PCC agendas—is "indispensable." [PLFs' Letter at 5.] But in fact, Attorney Tucker relied on the legal advice of outside counsel Hall Render LLP in connection with setting PCC agenda topics. [*See* Privilege Log (sealed).] Hall Render provided this legal advice in connection with an unrelated, then-pending investigation. [*See id.*] Kroger's privilege assertions pre-dated the deposition and, to date, have never been challenged. But Plaintiffs admit, here, that they intend to leapfrog over Kroger's privilege assertions and simply probe Attorney Tucker's (and outside counsel's) thought processes about plainly privileged subject matters during the deposition. Plaintiffs admit what they want to do in this deposition, and they should be believed.

## IV. The Special Master's "guardrails" do not safeguard Kroger's attorney-client protections; rather, they alleviate Plaintiffs' failure to satisfy *Shelton*.

To address the "tricky" privilege issues inherent in the deposition of in-house counsel, the Special Master issued a "guardrail" of presiding over the deposition and ruling on privilege objections in the heat of the moment. This guardrail is wholly insufficient to prevent the compelled disclosure of protected information. Tellingly, *Shelton* itself arose from a deposition of in-house counsel presided by a magistrate judge ruling on privilege objections. *See* 805 F.2d at 1325-26. On appeal, the *Shelton* Court reversed the magistrate judge's *ad hoc* approach and concluded that deposing counsel was an "inappropriate method of discovering" the information the plaintiff sought. *Id.* at 1327. Indeed, as the *Shelton* court reasoned, the very act of deposing counsel "disrupts the adversarial system," "lowers the standards of the profession," and "detracts from the quality of client representation." *Id.*

More to the point, as the Sixth Circuit put it, attempting to wall-off an attorney's protected knowledge during a deposition is "meaningless." *Alomari*, 626 Fed. App'x at 573-574. An

attorney's opinion work product necessarily encompasses her impressions, opinions, and legal theories about subject matters that are not, themselves, independently privileged. *See, e.g., Shelton*, 805 F.2d at 1328; *Alomari*, 626 Fed. App'x at 573-574. Attorney Tucker has been involved in Kroger's litigation strategy for the opioid litigation over the course of the last six (6) years. [*See* Exh. A Tucker Declaration at ¶ 5.] Any answer Attorney Tucker might provide under oath—even if theoretically limited to non-privileged, pre-litigation subject matters—would still reflect the opinion work product she developed in the pendency of this litigation. *Shelton*, 805 F.2d at 1328 (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)). Attorney Tucker cannot wall-off six years of opinion work product that she developed during this case.

This Court has already concluded that Attorney Tucker's impressions and opinions are protected. [Doc. 5053 at 11]. Indeed, an attorney's mental impressions, opinions, and thought processes are "inviolate." *Hickman*, 329 U.S. at 510. Attorney Tucker's opinion work product is subject to the strictest protections at law and may not be compelled unless waived. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002). Indeed, work product "is distinct from and broader than the attorney-client privilege." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986) (internal citation omitted). Ultimately, in-house counsel is entitled "to assemble information, prepare legal theories and plan strategy without undue and needless interference" from an adversary. *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman*, 329 U.S. at 511). Production of Attorney Tucker's custodial file does not inherently run afoul these core attorney-client protections—but deposing her does.

The Special Master makes no analysis of Kroger's opinion work product protections. [*See* Doc. 5146 at 2.] Instead, the Special Master punts on the "tricky" privilege issues by imposing

"guardrails" during the deposition.  [*Id.* at 4-5.]  But these "guardrails" only relieve Plaintiffs of their burden and flips it back on Kroger.  It is not Kroger's burden to demonstrate that Plaintiffs are intruding on attorney-client work product and/or privilege while its in-house counsel is being deposed.  It is Plaintiffs' burden to demonstrate that they seek information from Attorney Tucker that is not privileged *before the deposition takes place*.  The Special Master's guardrail does not protect Kroger, it bails out Plaintiffs.

**V.      Kroger's request for protective relief should, at very least, be held in abeyance.**

Ongoing events bear directly on whether Plaintiffs have a plausible basis to depose Attorney Tucker.  The parties have scheduled four (4) upcoming depositions of other Kroger fact witnesses who bear directly on *Shelton*'s first prong—i.e., whether Plaintiffs can obtain the information they seek without deposing Kroger's in-house counsel.  All four (4) of these upcoming deponents are/were longtime members of Kroger's PCC and one of them attended and delivered opening remarks at the 2014 Pharmacy Conference.  [*See* Exh. B PCC Charter (sealed); 2014 Pharmacy Conference (sealed).]  These four depositions cover the entire lifespan of the PCC twice over.  Thus, the Special Master's finding on Prong 1—that Attorney Tucker "may" have unique knowledge about the PCC and the 2014 Pharmacy Conference—depends on testimony adduced at these upcoming depositions of other employees attending these exact same meetings and conferences.

Likewise, the Special Master's finding Attorney Tucker's custodial file warrants her deposition is contingent on what is in there.  The production of Attorney Tucker's custodial file is ongoing.  As such, whether Attorney Tucker's custodial file reflects "crucial" information (under Prong 3) remains to be seen.  Moreover, Plaintiffs intend to question four (4) other deponents about the contents of Attorney Tucker's file.  Thus, whether Attorney Tucker's custodial file reflects

information only *she* can explain in a deposition (under Prong 1) also remains to be seen.  And finally, Kroger and Plaintiffs are currently sorting through privilege disputes attendant with Attorney Tucker's ongoing custodial productions.  Thus, the extent to which Attorney Tucker will be questioned about privileged documents (under Prong 2) remains contingent on what is challenged, what is withdrawn, what is disputed and how it is resolved.  Indeed, these core bases to depose Attorney Tucker are entirely contingent on substantial, upcoming discovery.

If this ongoing, highly related discovery does not outright doom Plaintiffs' demand to depose Attorney Tucker under *Shelton*, at the very least, the ongoing developments counsel in favor of holding relief in abeyance pending the results of the depositions and document productions.

## CONCLUSION

Plaintiffs fail to show that they seek crucial, non-privileged information that can only be obtained by deposing Attorney Tucker.  Thus, a plain application of *Shelton* warrants sustaining Kroger's objections and granting Kroger's request for protective relief.  At the very least, Kroger's request for protective relief should be held in abeyance pending the related upcoming discovery.

Respectfully submitted,

**The Kroger Co., Kroger Limited Partnership I, and Kroger Limited Partnership II,**

**By Counsel,**

*/s Ronda L. Harvey*
Ronda L. Harvey (WVSB #6326)
Ashley Hardesty Odell (WVSB #9380)
Fazal A. Shere (WVSB #5433)
**BOWLES RICE LLP**
600 Quarrier Street
Charleston, West Virginia 25301
304-347-1100

rharvey@bowlesrice.com
ahardestyodell@bowlesrice.com
fshere@bowlesrice.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on August 21, 2023, a true and correct copy of the foregoing **Kroger's Objection to Special Master Cohen's Discovery Ruling Regarding Tucker Deposition**, was filed with the Clerk of the Court by using the CM/ECF system, copies of which will be served on counsel of record by the Court's CM/ECF system.

*s/ Ronda L. Harvey*
Ronda L. Harvey (WVSB #6326)

16028291.1