# EXHIBIT G



| | | | |
|---|---|---|---|
| KIMBERLY LAMBERT ADAMS | BRENTON J. GOODMAN | CARISSA PHELPS | LEFFERTS L. MABIE, JR. (1925 1996) |
| KATHRYN L. AVILA | CHELSIE L. GREEN | (LICENSED ONLY IN CALIFORNIA) | D.L. MIDDLEBROOKS (1926 1997) |
| BRIAN H. BARR | MARTIN H. LEVIN | A. RENEE PRESTON | DAVID H. LEVIN (1928 2002) |
| BRANDON L. BOGLE | ROBERT M. LOEHR | PAGE A. POERSCHKE | STANLEY B. LEVIN (1938 2009) |
| W. TROY BOUK | STEPHEN A. LUONGO | (LICENSED ONLY IN ALABAMA) | FREDRIC G. LEVIN (1937 2021) |
| WESLEY A. BOWDEN | M. JUSTIN LUSKO | MARK J. PROCTOR | LEO A. THOMAS (1972-2021) |
| VIRGINIA M. BUCHANAN | NEIL E. McWILLIAMS, JR. | TROY A. RAFFERTY | RETIRED: |
| J. CALEB CUNNINGHAM | PETER J. MOUGEY | MATTHEW D. SCHULTZ | M. ROBERT BLANCHARD |
| SARAH SHOEMAKE DOLES | TIMOTHY M. O'BRIEN | W. CAMERON STEPHENSON | CLAY MITCHELL |
| (LICENSED ONLY IN MISSOURI AND ILLINOIS) | MIKE PAPANTONIO | THOMAS A. TAYLOR | OF COUNSEL: |
| LAURA S. DUNNING | SARA T. PAPANTONIO | REBECCA K. TIMMONS | WILLIAM F. CASH III |
| (LICENSED ONLY IN ALABAMA) | CHRISTOPHER G. PAULOS | CHRISTOPHER V. TISI | C. ANDREW CHILDERS |
| JAN K. DURRANI | EMMIE J. PAULOS | (LICENSED ONLY IN WASHINGTON, D.C. AND MARYLAND) | ROSS M. GOODMAN |
| JEFF R. GADDY | MADELINE E. PENDLEY | BRETT VIGODSKY | BEN W. GORDON, JR. |
| RACHAEL R. GILMER | ALYSON M. PETRICK | SCOTT WARRICK | LARUBY MAY |
| | (LICENSED ONLY IN MISSOURI) | HILARY WOOD | WILLIAM B. YOUNG, JR. |

June 2, 2023

Special Master David Cohen
24400 Chagrin Blvd. Ste. 300
Cleveland, OH 44122
david@specialmaster.law

**RE:**  *In re: National Prescription Opiate Litigation*, MDL No. 2804
Plaintiff's Motion to Compel Production of Custodial File of Frances Tucker Using Kroger National Search Terms

Dear Special Master Cohen:

After motion practice and the threat of sanctions, Kroger finally produced its Pharmacy Compliance Committee (PCC) Meeting Minutes into the MDL in October, 2022.[1] The PCC Minutes were directly responsive to discovery requests served in 2021,[2] and were not produced until after the PEC had concluded negotiations with Kroger regarding national and jurisdictional-specific custodians related the CT7-11 case tracks. The PCC Minutes made clear that multiple individuals not designated as national custodians by Kroger played significant roles in corporate-wide controlled substance compliance matters during the relevant time period. Perhaps the individual with the most significant role in controlled substance compliance was corporate counsel Frances Tucker, and therefore documents from her custodial file should be produced using the Kroger national search terms – especially since she is the only custodian whose email was not subject to Kroger's 30-day auto deletion policy. The PEC has held multiple meet and confers with Kroger regarding this matter, but Kroger has refused to produce Ms. Tucker's documents and thus the parties are at an impasse.

---

[1] Irpino Email, October 13, 2022, attached hereto as Exhibit 1.
[2] *See* Request for Production No. 2 from CT7 ("… all minutes of Your Board of Directors meetings (including committees and subcommittees) from 1996 to the present that refer to: (a) Opioids, diversion …"), attached hereto as Exhibit 2. Kroger's PCC is a sub-committee of its Board of Directors. Specifically, it is a sub-committee of the Kroger Board of Directors' Audit Committee. *See* Exhibit 3 (3/1/2012 PCC Charter) at 2, ¶ 2.1 (Kroger-MDL00059247).

## Background

On September 22, 2021, Kroger responded to a discovery request seeking "… all minutes of Your Board of Directors meetings (including committees and subcommittees) from 1996 to the present that refer to: (a) Opioids, diversion, Suspicious Order Monitoring, Due Diligence …" by stating that it had "not located any meeting minutes of Kroger's Board of Directors that refer to opioids at this time."[3]

The PEC negotiated and ultimately agreed upon national corporate level custodians with Kroger during the first and second quarters of 2022.  Though Kroger had a duty under the CMOs to identify relevant custodians, it never identified Frances Tucker as a potential custodian.

In October 2022, only after the PEC was forced to file a motion and seek sanctions, Kroger produced into the MDL the PCC Meeting Minutes.  The Minutes produced were 143 pages, and consisted of quarterly meeting minutes from 2012 through 2018.[4]  For each PCC meeting, the Minutes list the attendees, the topics discussed, identify the individual presenting on each topic, and provide a short description of the discussion or presentation.  As discussed in more detail below, Ms. Tucker features prominently within the Minutes, and is one of only three legacy members of the PCC who was consistently a member from 2012 through 2018.

In the motion practice that led to Kroger's late production of the PCC Minutes[5], the PEC noted that a 30(b)(6) deposition of Kroger had previously taken place on topics related to Kroger's suspicious order monitoring process, and that a new deposition was warranted once the PCC Minutes and Buzzeo Audits were produced.  The Special Master subsequently ruled that "Kroger had a duty to prepare their 30(b)(6) witness relative to SOMS … and Plaintiffs were deprived of an opportunity to question that witness about highly relevant documents."[6]  The ruling included a requirement that Kroger collect the custodial file of Frances Tucker and produce documents related to the Buzzeo Audits and PCC Minutes.[7]  As a result of the ruling, the PEC and Kroger negotiated targeted search terms that were intended to produce materials related to the Buzzeo Audits and materials using the terms "Pharmacy Compliance", "PCC", or "Compliance Committee".[8]  These, of course, do not represent the Kroger national search terms, but were mere targeted terms negotiated to comply with the ruling and intended to produce additional documents referencing or referring to the PCC.

## Meet and Confers Regarding this Motion

Shortly after the PCC Minutes were produced into the MDL, discovery stays were entered in the CT7-11 case tracks.  Once the stays were lifted, the PEC notified Kroger that it was requesting the production of additional national custodial files in light of the late production of the PCC

---

[3] *Id*.
[4] *See* Composite Pharmacy Compliance Committee Meeting Minutes, attached hereto as Exhibit 4.
[5] *See* Agenda Item 334 and associated submissions.
[6] Special Master Cohen Email Ruling, October 13, 2022, attached hereto as Exhibit 5
[7] *Id*.
[8] *See* Redlined Search Terms, November 23, 2022, attached hereto as Exhibit 6

Minutes.  Despite the PCC consisting of over three dozen current or former employees over the years, the PEC requested just six of those individuals be added as additional custodians:  Frances Tucker, Martha Sarra, Bill Shinton, Nick Gonzales, Lincoln Lutz, and Philecia Avery.  During the meet and confer process, Kroger agreed to produce the files of Sarra, Gonzales, Lutz, and Avery.  Kroger refused to produce the files of Tucker and Shinton.

The PEC hereby drops its request for the custodial file of Mr. Shinton, and moves only for the production of Ms. Tucker's documents.

### Argument

The custodial file of Frances Tucker should be queried with the complete national Kroger search terms, and all responsive, non-privileged documents should be produced.  Ms. Tucker is clearly an important and relevant actor within Kroger's national controlled substance compliance program who engages in many non-privileged matters.  Additionally, Ms. Tucker's custodial file represents a rare robust source of relevant material from a Kroger employee as her documents were not subject to Kroger's restrictive 30 day purge policy.  Finally, any burden in producing Ms. Tucker's documents is minimized by the fact that they have already been collected by Kroger.

1. **The PCC Minutes Make Clear that Frances Tucker is a Highly Relevant Custodian Whose Documents Should be Subject to Production Using the National Kroger Search Terms**

The PCC Minutes highlight Ms. Tucker's role as a significant member of Kroger's national controlled substance compliance team.  At the very first meeting, Ms. Tucker presented on and led discussions regarding the proposed PCC Charter.[9]  The PCC Charter provides that the PCC is directly responsible for the management and oversight of Kroger's Pharmacy Compliance Program, that that additional responsibilities include "development and implementation of a company-wide pharmacy employee education program; maintenance of a compliance hotline; development of compliance monitoring and auditing program, and … controlled substance compliance."[10]  Significantly, while the PCC is a thirteen person committee that has had over three dozen members from 2012 through 2018 as individuals roll on and off, Ms. Tucker is one of only three members who has been a constant presence on the committee.

Ms. Tucker's involvement on the PCC goes directly to the issues at the heart of this litigation.  The PCC Minutes document that Ms. Tucker was routinely designated to speak and present on the topic of "Controlled Substances."[11]  This includes reporting on DEA investigations related to "excessive oxycodone distribution and endangering public health."[12]  Ms. Tucker also reported to the PCC on DEA's expectations regarding "pharmacies and wholesalers … obligation to know their customers."[13]  The PCC Minutes revealed for the first time that Ms. Tucker led an effort to have

---

[9] Exhibit 4 at 1.
[10] Exhibit 3 at Kroger-MDL00059249..
[11] Exhibit 4 at 6, 9, 14, 17, 20, 23, 29, 33, 38.
[12] Exhibit 4 at 6.
[13] *Id.*

Kroger's "controlled substance policies and procedures" reviewed by an outside consultant.[14] Additionally, Ms. Tucker led discussions within the PCC where it was noted that "perhaps Kroger needs to improve its SOM process,"[15] and later where she reported on Buzzeo's findings regarding "the lack of a Suspicious Order Monitoring program" at the Kroger distribution centers.[16]  Later, Ms. Tucker reported on ARCOS type reporting being implemented in some states in the context of state-specific SOM requirements.[17]

The PCC Minutes also made clear that Ms. Tucker was intimately involved with controlled substance matters related to dispensing.  In one meeting Ms. Tucker reported on how Cardinal Health identified Kroger pharmacies that were outliers for dispensing of controlled substances, and reported that she was "investigating ways that more can be done to ensure compliance".[18]  Ms. Tucker continued to report on this program at future meetings, and also reported on the practice of refusing to fill prescriptions for certain prescribers of oxycodone and methadone.[19]  Importantly, the PCC minutes exposed that Ms. Tucker reported on the corporate level monitoring of controlled substance dispensing, and commented on the fact that some Kroger pharmacists "may not be properly executing their corresponding responsibility," and "do not understand the due diligence efforts that need to be undertaken."[20]

The PCC Minutes made clear, for the first time, Ms. Tucker's intimate involvement in compliance matters directly related to Plaintiffs' claims.  Ms. Tucker's documents, which have already been collected and processed for searching, should be queried using the complete set of national Kroger search terms.

2. **The Lack of a Purge Policy on Frances Tucker's Documents Increases the Importance of the Production of Tucker's Custodial File**

As has been made clear previously, Kroger's document production is lacking.  Below are the current production numbers for national pharmacy defendants (similar to Kroger) into the MDL, as well as mere regional chains like Albertsons and Meijer.

| Walgreens | 2,086,825 |
| --- | --- |
| Walmart | 712,020 |
| CVS | 379,492 |
| Albertsons | 118,310 |
| Meijer | 49,025 |
| Rite Aid | 46,665 |
| Kroger | 31,817 |

---

[14] *Id.* at 9.
[15] *Id.* at 14
[16] *Id.* at 17.
[17] *Id.* at 29.
[18] *Id.* at 20.
[19] *Id.* at 24.
[20] *Id.* at 60.

Kroger's lack of production is due in large part to corporate policies that automatically delete and destroy all emails after 30 days unless they are saved in a "KeepIt" folder.[21] This policy has resulted in a dearth of material being produced by Kroger for all but the tail end of the relevant time period. Ms. Tucker, however, submitted an August 26, 2022 affidavit confirming that her emails are "not subject to Kroger's email retention," and that her files contained emails dating back until at least 2013.[22] Indeed, according to Kroger, the critically important March 2013 Buzzeo Audits were only located because Ms. Tucker still has them in her email. Therefore, the production of Ms. Tucker's documents (using the full set of national custodian search terms) would provide some relief from the impact of Kroger's draconian document destruction policy.

In fact, even the *limited* production Kroger made from Ms. Tucker's custodial file using the targeted search terms permitted by your October 13, 2022 Order has already led to the production of highly relevant and responsive documents that should have been produced from other agreed upon custodians, but apparently was not because such material was purged from their files under Kroger's deletion policy.[23] For example, Kroger-MDL-00062111[24] is an email chain that begins with an email on which Laura Raney is copied and includes recommendations for the initial members on the PCC. Although Ms. Raney is a longstanding MDL document custodian, this document had not been previously produced, presumably because it had been destroyed subject to Kroger's email deletion policy. Likewise, Kroger-MDL00062131[25] was only just recently produced (even though Ms. Raney is included on the email), and it discusses "Kroger's Suspicious Order Monitoring (SOM) program," and attaches a proposal from Buzzeo to implement an electronic SOM process. Another example of a document that includes a national Kroger custodian but was only produced after your recent Order mandating production of some of Ms. Tucker's documents is Kroger-MDL00062373.[26] That email includes national custodian Jeff Loesch, and evidences that Kroger contemplated outsourcing its distribution of controlled substances to a third party vendor instead of trying to bring their SOMS into compliance. When paired with other documents, it becomes clear that Kroger's compliance efforts were driven by profit. Kroger continued to distribute controlled substances without a compliant SOMS system instead of outsourcing their distribution to a third party whom Kroger assessed as having a compliant SOMS. Without production of documents from Ms. Tucker's custodial file, Plaintiffs would have been deprived of this valuable evidence.

Another different but related example is Kroger-MDL00062315[27], which includes Keith Wilson. Mr. Wilson was a Regional Logistics Controller who had a prominent role in Kroger's distribution of controlled substances which led to Plaintiffs requesting that his custodial file be produced. Kroger indicated it could not produce his file because he had retired and his documents were not maintained. This document was only produced by way of the previous Order requiring

---

[21] *See* Kroger-MDL00034579, attached hereto as Exhibit 7.
[22] See 8/26/2022 Affidavit of Frances Tucker at 2, ¶ 5, attached hereto as Exhibit 8.
[23] Further evidence of the significance of the temporal scope of the documents from Ms. Tucker's custodial file is seen in the volume of pre-2013 material that was produced from a mere targeted search. Kroger has only produced a total of 179 emails prior to 2013, and 64 of those (more than one third) come from the targeted search of the custodial file of Ms. Tucker.
[24] Attached hereto as Exhibit 9
[25] Attached hereto as Exhibit 10
[26] Attached hereto as Exhibit 11
[27] Attached hereto as Exhibit 12

targeted searches from Ms. Tucker's file, and includes a Kroger SOM Review meeting agenda and PowerPoint presentation made to Kroger by an outside expert regarding Kroger's SOM obligations. Without the prior order, this document would not have been produced to Plaintiffs.  Production of Ms. Tucker's documents is the only way Plaintiffs will get access to relevant and responsive emails for a broader scope of the relevant timeframe.

Notably, of the documents included here as examples, there is no colorable argument of privilege for any.

### 3. The Prior Ruling Already Found That Frances Tucker is a Relevant Custodian and Her Documents Have Already Been Collected and Processed For Searching

In any dispute over a request for a custodial file, two of the most important considerations are the relevance of the custodian, and the potential burden to the producing party.  Here, the prior ruling provides support for ordering the production of Ms. Tucker's documents after the *complete* search terms are run on the documents.

First, the Special Master has already considered Ms. Tucker's relevance and found that her involvement in Kroger's compliance activities was substantial enough to warrant a targeted production of her material.  Second, the prior ruling had the effect of requiring Kroger to already collect Ms. Tucker's documents and process them to be searched.  Therefore, any potential burden to Kroger has already been minimized.  In this case, as highlighted above, there is a third important consideration that weighs in favor of a more fulsome production of Ms. Tucker's documents:  due to Kroger's document destruction policy, Ms. Tucker's custodial file is likely to contain relevant and responsive documents that have not yet been produced, and Ms. Tucker's custodial file is very likely to be the one and only source from which much of the information could ever be recovered.

For the foregoing reasons, Plaintiffs respectfully request an order be entered requiring Kroger to run the national Kroger search terms on the custodial file of Frances Tucker, and to produce all responsive, non-privileged documents.

Sincerely,

*/s/Jeff Gaddy*

Jeff Gaddy

CC: Counsel for Kroger
Plaintiffs' Counsel