# EXHIBIT M



| | | | |
|---|---|---|---|
| KIMBERLY LAMBERT ADAMS | BRENTON J. GOODMAN | CARISSA PHELPS (LICENSED ONLY IN CALIFORNIA) | LEFFERTS L. MABIE, JR. (1925 1996) |
| KATHRYN L. AVILA | CHELSIE L. GREEN | A. RENEE PRESTON | D.L. MIDDLEBROOKS (1926 1997) |
| BRIAN H. BARR | MARTIN H. LEVIN | PAGE A. POERSCHKE (LICENSED ONLY IN ALABAMA) | DAVID H. LEVIN (1928 2002) |
| BRANDON L. BOGLE | ROBERT M. LOEHR | MARK J. PROCTOR | STANLEY B. LEVIN (1938 2009) |
| W. TROY BOUK | STEPHEN A. LUONGO | TROY A. RAFFERTY | FREDRIC G. LEVIN (1937 2021) |
| WESLEY A. BOWDEN | M. JUSTIN LUSKO | MATTHEW D. SCHULTZ | LEO A. THOMAS (1972-2021) |
| VIRGINIA M. BUCHANAN | NEIL E. McWILLIAMS, JR. | W. CAMERON STEPHENSON | RETIRED: |
| J. CALEB CUNNINGHAM | PETER J. MOUGEY | THOMAS A. TAYLOR | M. ROBERT BLANCHARD |
| SARAH SHOEMAKE DOLES (LICENSED ONLY IN MISSOURI AND ILLINOIS) | TIMOTHY M. O'BRIEN | REBECCA K. TIMMONS | CLAY MITCHELL |
| LAURA S. DUNNING (LICENSED ONLY IN ALABAMA) | MIKE PAPANTONIO | CHRISTOPHER V. TISI (LICENSED ONLY IN WASHINGTON, D.C. AND MARYLAND) | OF COUNSEL: |
| JAN K. DURRANI | SARA T. PAPANTONIO | BRETT VIGODSKY | WILLIAM F. CASH III |
| JEFF R. GADDY | CHRISTOPHER G. PAULOS | SCOTT WARRICK | C. ANDREW CHILDERS |
| RACHAEL R. GILMER | EMMIE J. PAULOS | HILARY WOOD | ROSS M. GOODMAN |
| | MADELINE E. PENDLEY | | BEN W. GORDON, JR. |
| | ALYSON M. PETRICK (LICENSED ONLY IN MISSOURI) | | LARUBY MAY |
| | | | WILLIAM B. YOUNG, JR. |

July 13, 2023

Special Master David Cohen
24400 Chagrin Blvd. Ste. 300
Cleveland, OH 44122
david@specialmaster.law

**RE:  Plaintiff's Response to Kroger's Motion for Protective Order Regarding Requested Depositions of Frances Tucker and Bill Shinton**

Special Master Cohen:

Plaintiffs hereby respond to Kroger's July 5, 2023 motion raising an objection to depositions of two current employees that Plaintiffs originally requested on April 24, 2023. Kroger provided information within its motion regarding Mr. Shinton that it never provided to Plaintiffs over months of email exchanges and meet and confers. Based on this newly provided information, Plaintiffs agree to withdraw their requested deposition of Mr. Shinton, and respond only as to Ms. Tucker.

Kroger's motion seeking to prevent the deposition of Ms. Tucker should be denied. As the Special Master has already noted in ruling that her custodial documents must be produced, "Ms. Tucker was intimately involved in controlled substance policies that relate directly to the central issues in this case."[1] While this was made apparent to Plaintiffs by way of the unredacted Pharmacy Compliance Committee (PCC) Minutes, it became even more apparent by way of the targeted documents produced from Ms. Tucker's custodial file (in February and March 2023) relative to Agenda Item 334. Contrary to Kroger's arguments, Plaintiffs do not wish to depose her merely about the PCC Minutes. Instead, Plaintiffs intend to depose her regarding controlled substance compliance matters generally. The fact that Plaintiffs were first informed about Ms. Tucker's significance from the PCC Minutes does not mean that is the only set of documents on which it seeks to question her. Further, *Shelton* does not serve to preclude Ms. Tucker from being deposed. As Plaintiffs have made abundantly clear to Kroger, it has no interest in documents or testimony from Ms. Tucker related to pending opioid-related civil litigation. Instead, Plaintiff's motivations are to obtain testimony from a unique and important witness who was intimately involved in non-privileged aspects of Kroger's controlled substance compliance program, and whose testimony is crucial to Plaintiff's case.

---

[1] *See* Ex. A, Special Master Cohen's Kroger Email Ruling on National Search Terms for Tucker Files, June 28, 2023.

I.  **BACKGROUND**

Contrary to the history provided by Kroger, Plaintiffs have been diligently seeking a deposition of Ms. Tucker since April, and only recently learned Kroger would be lodging an objection.

- On April 24, 2023, Plaintiffs requested custodial files be produced for six Kroger employees, including Ms. Tucker, and additionally asked that Kroger "provide some dates in July or August for these individuals to be deposed.[2]
- Kroger offered to meet and confer 10 days later on May 4, and refused requests to provide earlier times.[3]
- During the meet and confer on May 4, 2023, Kroger's attorneys explained that its client had not yet been able to get back with them about Plaintiffs' request for the additional custodial files, and asked if we could set another call on May 9 for them to tell us whether or not Kroger was agreeable to produce them.[4]  During this meet and confer Kroger did not raise any objections about depositions of the six Kroger employees.
- During the May 9, 2023 meet and confer, Kroger agreed to produce two of the requested custodial files, but not the others (including Ms. Tucker).  Kroger again raised no objection to any of the requested depositions.[5]
- Kroger wrote to Plaintiffs on May 12, and posed objections to producing *custodial files* for Ms. Tucker and Bill Shinton.  Despite Kroger's representations to the contrary, it did not object to depositions being taken of either.[6]
- On May 24, 2023, Plaintiffs reiterated their request for deposition dates for the same individuals requested on April 24, noting that Plaintiffs would begin serving any of the six who were former employees with subpoenas since Kroger was not responding.[7]
- On May 30, 2023, Kroger responded that they were representing the former employees (such that subpoenas did not need to be served), but still did not lodge any objections to any of the individuals being deposed.[8]
- On May 31, 2023, Plaintiff again asked for deposition dates for the six employees.[9]
- On June 2, 2023, Kroger *for the first time* objected to the taking of all six depositions, claiming they had done so previously (even though they had not).[10]

---

[2] *See* Ex. B, Gaddy Email, April 24, 2023.
[3] *See* Ex. C, Lorensen Email Chain, April 28, 2023.
[4] *See* Ex. D, Gaddy Email, May 5, 2023.
[5] *See* Ex. E, Gaddy Letter, May 11, 2023.
[6] As to Mr. Shinton, Kroger stated "[g]iven the burden of collecting and producing Bill Shinton's data, we cannot agree to this request …" As to Ms. Tucker, Kroger stated "we cannot agree to more custodial discovery on Ms. Tucker …).  Lest Kroger argue the phrase "custodial discovery" is meant to incorporate depositions, see Kroger's June 2, 2023 email attached hereto as Ex. I wherein Kroger indicates that they object "to these depositions taking place" but instead have agreed "to additional custodial discovery."  Kroger's use of the term "custodial discovery" refers to production of custodial files.
[7] *See* Ex. F, Gaddy Email, May 24, 2023.
[8] *See* Ex. G, Lorensen Email, May 30, 2023.
[9] *See*, Ex. H, Gaddy Email, May 31, 2023.
[10] *See*, Ex. I, Lorensen Email, June 2, 2023.

- On June 6, 2023, Plaintiff served deposition notices on Kroger for the six individuals it had been requesting Kroger provide dates for over six weeks.  Despite Kroger's lack of cooperation, Plaintiffs still offered to coordinate dates and times with Kroger.[11]
- Kroger responded to the notices 9 days later, on June 15, 2023, and asked to meet and confer.[12]
- On June 19, 2023, Plaintiffs and Kroger met and conferred.  During the meet and confer Kroger stated that it was inappropriate to consider depositions until after the custodial productions are complete.  Plaintiffs disagreed, and stated that the requested deponents were clearly appropriate deponents based on the positions they held as well as the material that had already been produced from non-custodial sources.[13]  During the meet and confer Plaintiff again reiterated its agreement to coordinate convenient dates with Kroger that would accommodate the witnesses and allow Kroger sufficient time to produce custodial files.
- On June 23, 2023, Kroger provided deposition dates for four of the six requested individuals, and lodged objections to Ms. Tucker and Mr. Shinton on privilege and apex grounds.[14]
- On July 5, 2023, Kroger moved for a protective order regarding the depositions of Ms. Tucker and Mr. Shinton.

## II. ARGUMENT

### A. Ms. Tucker is an Important and Unique Witness

Plaintiffs outlined the significance of Ms. Tucker within Kroger's national controlled substance compliance team in its June 2, 2023 motion to compel the production of her custodial file.[15]  Within that motion Plaintiffs noted a) that Ms. Tucker has been a member of the PCC since the inception of the PCC; b) that Ms. Tucker was routinely designated to speak and present on the topic of "Controlled Substances"; c) that Ms. Tucker presented on Kroger's CSA duties as a controlled substance distributor; d) that Ms. Tucker spearheaded an effort to have Kroger's controlled substance policies and procedures reviewed by an outside consultant; e) that Ms. Tucker reported on the identification of outlier Kroger pharmacies for dispensing of controlled substances; f) that Ms. Tucker was involved in reporting on Kroger's policy of refusing to fill prescriptions for certain prescribers; and g) that Ms. Tucker commented on the problem that some Kroger pharmacists may not be properly executing their corresponding responsibility or understand required due diligence requirements.  *Id*. at 3-4.  That motion led to the Special Master commenting that the "the PCC minutes reveal that Ms. Tucker was intimately involved in controlled substance

---

[11] *See* Ex. J, Gaddy Email, June 6, 2023.
[12] *See* Ex. K, Lorensen Email, June 15, 2023.
[13] *See* Ex. L, Irpino Letter, June 20, 2023.
[14] *See* Ex. M, Lorensen Email, June 23, 2023.
[15] *See* Ex. N, Plaintiff's Motion to Compel Production of Custodial File of Frances Tucker Using Kroger National Search Terms (motion only; no exhibits).

3

policies that relate directly to central issues in this case" and ruling that Kroger must produce her custodial file.[16]

Ms. Tucker's significance within Kroger's compliance department was highlighted in the recent deposition of former Harris Teeter[17] employee, Lamar Hardman. Mr. Hardman, who was the Director of Pharmacy for Harris Teeter for 20 years, was asked about a document summarizing a Kroger Pharmacy Conference he attended in 2014.[18] The documented noted an interaction between Mr. Hardman and Ms. Tucker regarding a form used by Kroger pharmacies identified as outliers for dispensing of controlled substances. When asked about Ms. Tucker, Mr. Hardman responded that "she's quite the individual."[19] When asked to explain that answer, Mr. Hardman explained that "she had a big role" in the Kroger Pharmacy Conference, that "she spoke a lot", and that she responded to "a lot of questions from the audience" that consisted of the 50-70 representatives from the 24 Kroger pharmacy divisions.[20]

There is no doubt that Ms. Tucker is a central figure in Kroger's controlled substance compliance program. The fact that she is an attorney should not serve to deprive Plaintiff from obtaining highly relevant, non-privileged testimony from a witness of significant importance.

### B. *Shelton* Does Not Preclude a Deposition of Ms. Tucker

The Federal Rules of Civil Procedure do not prohibit deposing the counsel of an opposing party.[21] As stated by the Sixth Circuit, "there is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information". *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (citation omitted). Indeed, cases within the 6th Circuit support discovery of counsel when, such as is the case herein, the discovery is shown to be not otherwise reasonably obtainable and it does not seek information on litigation strategy in the pending case. *See*, *e.g.*, *J&R Passmore, LLC v. Rice Drilling D, LLC*, 2023 WL 2633671, at *5 (S.D. Ohio Mar. 24, 2023) (allowing discovery of litigation counsel because opposing parties "do not seek information that would expose litigation strategy in the pending case"); *Pitzer v. Cinmar, LLC*, 2016 WL 7325158, at *2 (N.D. Ohio Dec. 16, 2016) (allowing deposition of prior counsel after showing a legitimate need for the information which could not otherwise be obtained); *Cheesemore v. Alliance Holdings, Inc.*, 2011 WL 4458782 (N.D. Ohio Sept.23 2011) (allowing deposition of opposing counsel to the extent that the questioning related to their prior role as transactional counsel and not their current role as litigation counsel).

Ms. Tucker's deposition is being requested because of her unique and substantial role relative to Kroger's controlled substance compliance efforts and failures. Plaintiffs hereby confirm that they are not seeking and will not seek any information on litigation strategy. In fact, although the Special Master ordered production of Ms. Tucker's complete custodial file and Kroger collected documents through May 2021, plaintiffs have agreed that Kroger does not have to produce any documents after March 9, 2017 – the date in which Kroger has represented that Ms. Tucker began

---

[16] *See* Ex. A.
[17] Harris Teeter is a wholly owned subsidiary of Kroger, and operates stores in Durham County, NC (CT10).
[18] *See* Ex. O, KrogerMDL00002571.
[19] *See* Ex. P, Deposition of Lamar Hardman, June 21, 2023, 219:16-22.
[20] *Id.* at 220:1-221:14.
[21] *See* Fed. R. Civ. P 30(a) (a party may take the deposition of "any person").

4

emailing about Kroger's opioid litigation.  This agreement by Plaintiffs allows Kroger to avoid review and production of over half the documents in Ms. Tucker's file that hit on search terms, and eliminates the possibility that privileged material related to litigation strategy would be produced.  Additionally, while the PEC submits that the *Shelton* test should not be strictly applied to the Plaintiffs' request for a deposition of Ms. Tucker, even if it is so applied, the relevant factors been met.

The *Shelton* test, when applied by the 6th Circuit, sets forth three requirements for determining if a deposition of opposing counsel is appropriate.  "Discovery from an opposing counsel is limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information...; (2) the information sought is relevant and non-privileged; and (3) the information is crucial to the preparation of the case."[22]  Each of these three requirements have been met by plaintiffs.

### 1. No Other Means Exist to Obtain the Information.

As outlined in prior briefing, Ms. Tucker not only had a unique and critical role with respect to Kroger's regulatory compliance efforts, she not only is one of the most tenured Kroger custodians (2003 to present), but she also is the *only Kroger employee* whose email was not subject to Kroger's 30-day email purge policy.  As determined by the Special Master, ". . . it is certain that documents sent and received by Tucker will be more complete from Tucker's own files than from other custodians. . . . Ultimately, it appears likely the PEC's request will produce relevant documents not otherwise discovered or discoverable."[23]

Additionally, whether from a substantive or a practical standpoint, Ms. Tucker is *the witness* to question regarding her authored emails.  A good illustration of why Ms. Tucker is indispensable in this regard can be found in the recent corporate deposition of Kroger.  The witness was questioned about an email from Ms. Tucker setting forth topics she wanted on the agenda for the initial PCC meeting.  In summary, the witness either "d[id] not have any knowledge" or would have to "speculate" to answer why Ms. Tucker wanted the PCC meeting agenda to include the topics of auditing distribution and training pharmacy staff.[24]

### 2. The Information Sought is Relevant and Non-Privileged.

To begin, the motion for protective order wholly ignores the fact that a few months ago (in February and March) Kroger already produced hundreds of *non-privileged* documents from Ms. Tucker's custodial file (using targeted/narrowed search terms pursuant to the Special Master's 10/13/2022 ruling on Agenda Item 334).  To be clear, these are Tucker custodial documents over which Kroger never even claimed privilege.  As such, there are already a significant number of relevant and non-privileged documents and topics to address with Ms. Tucker.  Further, even more such documents should be produced in the coming weeks due to the Special Master's 6/28/2023 ruling which compelled national search terms to be applied to Ms. Tucker's custodial file.

---

[22] *Nationwide Mutual Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir.2002) (citing *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986)).
[23] *See* Ex. A.
[24] *See* Ex. Q, Kroger 30(b)(6) Deposition, April 25, 2023, 34:12-22, 35:8-24.

Kroger also misrepresents matters by claiming that "[a]ttorney Tucker's impressions and opinions have already been affirmed as protected by the attorney-client privilege by Judge Polster". *See* Kroger Motion at 7.  The order at issue actually supports plaintiffs' position that *only some* of Ms. Tucker's communications are privileged. *See* Doc. #: 5053 at 10 ("the first paragraph of the February 26, 2013, email from Ms. Tucker at 5:51 p.m. contained in KRO-PRIV-167 may be Redacted").  In fact, Judge Polster found that "very little of Kroger's production, even considering the late-filed declarations and exhibits, contained privileged legal advice of counsel that could not have been given by a non-lawyer or provided without consulting legal authorities or applying legal principles." *Id*. at 10.  Moreover, Kroger ignores its prior admission that some material authored by Ms. Tucker is not privileged.  Id. at 11 ("In its Objection, Kroger also withdraws its privilege claim with respect to all but a single paragraph of KRO-PRIV-167.").

### 3. The Information is Crucial to the Preparation of the Case.

"As the PEC's [6/2/2023] letter brief demonstrates, the PCC minutes reveal that Ms. Tucker was intimately involved in controlled substances policies that relate directly to the central issues in this case."[25]  As detailed above as well as in previous briefing, Ms. Tucker has unique documents, roles and insight relative to critical matters in this litigation.

Plaintiffs believe that the three *Shelton* test factors have already been well-established by way of prior submissions and the evidence submitted herein.[26]  Also, while not necessarily dispositive, the 6/28 email ruling compelling production of Ms. Tucker's custodial file (applying national search terms) and Discovery Ruling 14, Part 32 further support the taking of her deposition.  However, there is likely even more support which exists but is not currently in plaintiffs' possession – as Kroger has yet to produce the documents from Ms. Tucker's custodial file which hit on national search terms.  Indeed, all of the above is argued without the benefit of the custodial production that the Special Master ordered in his June 28, 2023, and plaintiffs will not be taking Ms. Tucker's deposition until this production from her custodial file is complete.

Sincerely,

*/s/Jeff Gaddy*

Jeff Gaddy

CC:  Counsel for Kroger
     Plaintiffs' Counsel

---

[25] *See* Ex. A.
[26] *See, e.g.*, Ex. R, PEC's Motion Challenging Kroger Privilege Claims, April 11, 2023; and Ex. N.