# EXHIBIT P



**Attorneys at Law**

600 Quarrier Street, Charleston, WV 25301
P.O. Box 1386, Charleston, WV 25325-1386
304.347.1100

101 South Queen Street
Martinsburg, WV 25401

125 Granville Square, Suite 400
Morgantown, WV 26501

501 Avery Street
Parkersburg, WV 26101

Southpointe Town Center
1800 Main Street, Suite 200
Canonsburg, PA 15317

**Will Lorensen**
wlorensen@bowlesrice.com
T 304.347.1178
F 304.347.1756

480 West Jubal Early Drive, Suite 130
Winchester, VA 22601

July 20, 2023

**bowlesrice.com**

Special Master Cohen
24400 Chagrin Blvd. Ste. 300
Cleveland OH 44122
david@specialmaster.law

    Re:    <u>Kroger's *Reply in Support of its Motion for Protective Order re: Tucker Deposition*</u>

Special Master Cohen:

For the reasons below, Kroger requests that its *Motion for Protective Order* be granted.

### A.  Plaintiffs misunderstand *Shelton* and misconstrue why Attorney Tucker's deposition is prohibited here.

In a bid to avoid "strict application" of *Shelton*, Plaintiffs (i) agree to limit Attorney Tucker's custodial production to a pre-litigation timeframe, and (ii) promise not to question Attorney Tucker "about litigation strategy."[1]  These assurances are insufficient to prevent the compelled disclosure of information protected by attorney-client privilege and the attorney work product doctrine, as the Sixth Circuit has recognized.  *See Alomari v. Ohio Dep't of Public Safety*, 626 F. App'x 558, 573-74 (6th Cir. 2015) (affirming *Shelton*'s application to "pre-litigation matters" and that a party's promise not to seek "information about litigation strategy or privileged communications" is "meaningless").

First, Plaintiffs are wrong to suggest that questioning Attorney Tucker about the "pre-litigation timeframe" eliminates the risk of disclosing protected information.  An attorney's work product ***necessarily*** encompasses her impressions, opinions, and legal theories about pre-litigation subject matters.  Put another way, an attorney's testimony—even if theoretically limited to pre-litigation, non-privileged topics—still reflects the opinion work product the attorney developed in the course of the pending litigation.[2]  In-house counsel like Attorney Tucker are entitled "to assemble information, prepare legal theories and plan strategy without undue and needless interference" in

---

[1] Plaintiffs' Letter Brief at 1.

[2] *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1328 (8th Cir. 1986) (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947)).

Special Master Cohen
July 20, 2023
Page 2

order to "promote justice and to protect [the] client's interests."[3]  Opinion work product is "broader" than the attorney-client privilege, can only be compelled if waived by the client, and is afforded the strictest protections under law.[4]

Second, Plaintiffs are also wrong to suggest that refraining from asking questions directly about "litigation strategy" is sufficient to prevent the disclosure of protected information.  The Sixth Circuit has recognized that this type of guarantee is "meaningless."[5]  An attorney such as Ms. Tucker who has been deeply immersed in litigation strategy for many years cannot simply wall off her knowledge of litigation strategy.  To the contrary, litigation strategy—and in turn, information protected by privilege and the work product doctrine—is imbued in Attorney Tucker's knowledge of all facts relevant to this litigation.  Indeed, Attorney Tucker has worked with Kroger's outside counsel (Bowles Rice LLP) in connection with the opioid litigation by identifying and gathering documents, compiling and providing background information and context, and litigation strategy.[6]  Attorney Tucker cannot unlearn over six years[7] of litigation strategy and work product while being questioned under oath about topics she has developed legal impressions about in the course this litigation.  Plaintiffs' efforts to "limit[] the *Shelton* analysis . . . [are] untenable under Sixth Circuit precedent, and "declining to apply the [*Shelton*] standard" would be "contrary to law." [8]

In contrast to the production and privilege logging of her custodial file—which will naturally include some privileged material and some non-privileged material—probing Attorney Tucker's thought processes, mental impressions and opinions strikes at the very heart of her attorney-client relationship with Kroger.[9]  As Plaintiffs' Letter Brief candidly admits, this is *exactly* what they plan to do in this deposition.  Plaintiffs' request for Attorney Tucker's deposition warrants a plain application of the *Shelton* rule.

---

[3] *In re Columbia/HCA Healthcare Corp. Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *Hickman*, 329 U.S. at 511).

[4] *In re Columbia*, 293 F.3d at 294.

[5] *See Alomari*, 626 F. App'x at 574.

[6] *See* Ex. 13 to Kroger's Motion for Protective Order (Tucker Declaration at ¶ 5).

[7] Attorney Tucker became involved in Kroger opioid litigation in March of 2017.

[8] *Massillon Management, LLC v. Americold Realty Trust*, Case No. 5:08-cv-0799, 2009 WL 614831 (N.D. Oh. 2009).

[9] *See* Doc. 5053 at 11 (recognizing that affirming Kroger's privilege assertion over impressions and opinions of Attorney Tucker); *In re Columbia*, 293 F.3d at 294.

Special Master Cohen
July 20, 2023
Page 3

### B. Plaintiffs misunderstand Attorney Tucker's position; her knowledge is not unique and her deposition is not necessary.

Plaintiffs summarize portions of the PCC Minutes (again, expressly marked attorney-client privileged[10]) in an attempt to emphasize Attorney Tucker's "significance . . . within Kroger's national controlled substance compliance team."

To the contrary, Attorney Tucker does not work in, or report to, Kroger's Health & Wellness Regulatory Compliance Department. She has served as a practicing attorney in Kroger's Law Department since 2003.[11] Kroger's controlled substance policies are not drafted or maintained by Attorney Tucker, but rather are approved by Kroger's Senior Manager of Controlled Substance Compliance (currently, Jaime McDermott, who has been deposed four times) and Health & Wellness Compliance Officer (currently, Nicholas Gonzales, who has been deposed once and is scheduled to be deposed again).[12] Employees holding these compliance-related positions have been subject to (i) repeated depositions (by Kroger's count, nine to date), (ii) repeated rounds of custodial searching, and (iii) repeated corporate testimony on these topics.

Plaintiffs' deliberate vagueness—i.e., seeking to question Attorney Tucker "on controlled substance compliance matters generally"—is duplicative of virtually **all** discovery adduced already. And when Plaintiffs *do* choose to disclose any specific reason, it falls apart. One specific basis for Attorney Tucker's deposition came from a retired employee's testimony that, 9 years ago, Attorney Tucker "spoke a lot" at a pharmacy conference. (The deponent then quipped, "Is that not unusual for attorney?"). The other reasons, once again, relate exclusively to Attorney Tucker comments found in PCC Minutes. Kroger has presented two Rule 30(b) designees to speak to that.

To cast doubt on the multiple non-privileged avenues of discovery covering these subject matters, Plaintiffs claim that a Kroger 30(b) designee did "not have knowledge" and "had to speculate" about certain comments appearing in Attorney Tucker documents.[13] Not true; Kroger's designee answered the question, but declined to speculate in response to a rote, "any other reason?" follow-up[14]:

---

[10] As explained in Kroger's Motion, Attorney Tucker's involvement in the PCC is due to her role as in-house counsel—not to add yet another compliance or business voice to the Committee's ranks. *See generally* Ex. 14 to Kroger's Motion for Protective Order (PCC Charter).

[11] *See* Ex. 13 to Kroger's Motion for Protective Order (Tucker Declaration at ¶ 1.)

[12] *See* Ex. 16, Extract of Kroger Policy 501: Pharmacy Controlled Substance Policy and Procedures.

[13] Plaintiffs' Letter Brief at 5.

[14] The other supposedly-unanswered question—which Plaintiffs characterizes as "why Ms. Tucker wanted the PCC meeting agenda to include topics of auditing distribution"—is grossly misrepresented. The topic reflects auditing of ***third-party*** vendors—not Kroger distribution processes.

Special Master Cohen
July 20, 2023
Page 4

> Q. Do you have an understanding as to why it was that Ms. Tucker thought the pharmacy training issue was so important that it needed to be on the very first meeting?
>
> A. I think as you look at the seven elements of an effective compliance program from the Office of Inspector General, one of the seven elements is effective training.
>
> Q. Any other reason that you think Ms. Tucker wanted that included on there?
>
> A. I can't speculate to any other reason.

This asked-and-answered question is an absurd basis for deposing Kroger's in-house counsel.

> C. **Plaintiffs seek to probe Ms. Tucker's thought processes, mental impressions, and opinions: i.e., where Kroger's privilege and work product protections are at their strongest.**

Plaintiffs seek Attorney Tucker's deposition not to discover facts, but to probe her thought processes, mental impressions, and opinions. This is proven by the sole example Plaintiffs provide of a so-called "indispensable" line of questioning for Attorney Tucker.

In Plaintiffs' illustration (see above), Kroger's corporate designee provides a factual, non-privileged answer to Plaintiffs' question. The designee explains why the PCC discusses pharmacist training: effective training is one of the seven elements of an effective compliance program per the Office of Inspector General.[15] However, Kroger's designee declines to "speculate" on the follow-up question—"[a]ny other reason . . . Ms. Tucker wanted" the PCC to discuss training—which, according to Plaintiffs, renders Attorney Tucker's testimony "indispensable." Kroger has produced the PCC meeting agendas and minutes and has explained why the PCC discussed certain topics; but Plaintiffs now want to probe what Attorney Tucker *"wanted"* and *"thought"* about it.

"Not even the most liberal of discovery theories can justify unwarranted inquiries into . . . the mental impressions of an attorney."[16] An attorney's thoughts are "inviolate."[17] Kroger's attorney-client privilege and work product protections are at their strongest where an attorney's mental

---

[15] *See supra* at 3; Ex. Q to Plaintiffs' Letter Brief (Gonzales Depo at 35:14-24).

[16] *Hickman*, 329 U.S. at 510.

[17] *Shelton*, 805 F.2d at 1328 (quoting *Hickman*, 329 U.S. at 510).

impressions, opinions, conclusions, judgments, or legal theories are at stake. Plaintiffs candidly admit that this is their basis for questioning Attorney Tucker.

Moreover, Plaintiffs' "good illustration" calls for an answer that is plainly privileged and plainly work product. As Kroger disclosed in unchallenged privilege log entries, Attorney Tucker solicited (and received) legal advice from outside counsel Hall Render with respect to PCC agenda topics.[18] Outside counsel provided this legal advice as work product in connection with a then-pending, unrelated government investigation.[19] But Plaintiffs now claim it is "indispensable" to leapfrog privilege challenge protocols[20] and to question Attorney Tucker about her (and outside counsel's) thought process and impressions. Far from illustrating why Attorney Tucker's deposition is necessary, Plaintiffs' planned line of questioning clearly demonstrates how deposing in-house counsel "disrupts the adversarial system," "lowers the standards of the profession," and "detracts from the quality of client representation."[21, 22]

Nor is Attorney Tucker's deposition necessary to make sense of her custodial file. Attorney Tucker avers that, to the best of her knowledge, she does not have any unique, non-privileged testimony to provide.[23] Her limited factual knowledge is also shared by individuals in Kroger's regulatory compliance department who have been (or will be) deposed.[24] For historical information, her memory will not result in anything other than what is already found in the documents.[25] Given that Plaintiffs fail to identify any real, unique reason for Attorney Tucker's deposition, her declaration has been proven correct.

Finally, Plaintiffs cannot claim that Attorney Tucker's deposition is necessary to make sense of her custodial file while simultaneously claiming that Attorney Tucker's custodial file is necessary to proceed with the other upcoming depositions.[26] The parties have been in active communications about the timing of Attorney Tucker productions in advance of these depositions, where possible and appropriate. The fact that Plaintiffs plan to use Attorney Tucker's custodial file in upcoming

---

[18] *See* Ex. 15, Extract of Kroger's Volume 71 Privilege Log (KRO-PRIV-202, -203, -206, -207, -227, -233, -234, -235, 236.) (asserting attorney-client privilege and work product protections over "advice and work product of outside counsel pertaining to PCC agendas").

[19] *See id.*

[20] *See* Order Governing Privilege, Doc. 2882.

[21] *Shelton*, 805 F.2d at 1327.

[22] It shows why Plaintiffs fail the *Shelton* test. The information ***can*** be obtained by other means (Kroger answered the question); the information ***is*** privileged (Plaintiffs did not challenge Kroger's privilege and work product assertions); and the information ***is not*** crucial to Plaintiffs' case (no person's "thoughts" or "wants" tip the scales here).

[23] Ex. 13 to Kroger's Motion for Protective Order at ¶ 6.

[24] *Id.*

[25] *Id.* at ¶ 7.

[26] Lincoln Lutz, Philecia Avery, Martha Sarra, and Nicholas Gonzales.

Bowles Rice

Special Master Cohen
July 20, 2023
Page 6

depositions of other Kroger witnesses—none of whom are lawyers—is proof positive that there are other means to obtain the information Plaintiffs seek without deposing counsel.

At bottom, Plaintiffs' own filing demonstrates that there are other means to obtain relevant, nonprivileged information. Their filing also proves that Plaintiffs intend to probe the very heart of Attorney Tucker's attorney-client relationship with Kroger. Because this is violative of both *Shelton* and Rule 26, Kroger requests that its *Motion for Protective Order* be granted.

Regards,

Will Lorensen

CC:  Counsel for Plaintiffs