1                     UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
2                           EASTERN DIVISION

3
      IN RE:                        ) Case No. 1:17-md-2804
4                                   )
      NATIONAL PRESCRIPTION          )
5     OPIATE LITIGATION              )
                                     )
6                                   ) Wednesday, August 30, 2023
                                     )
7

8

9

10           TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

11              *HELD VIA ZOOM VIDEOCONFERENCE*

12           BEFORE THE HONORABLE DAN AARON POLSTER

13                  UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20    Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
                                 United States District Court
21                               801 West Superior Avenue
                                 Court Reporters 7-189
22                               Cleveland, Ohio 44113
                                 216.357.7036
23                               Gregory_Mizanin@ohnd.uscourts.gov

24

25        Proceedings recorded by mechanical stenography; transcript
              produced with computer-aided transcription.

1    APPEARANCES:

2

     For the Plaintiffs:

3

          PETER H. WEINBERGER, ESQ.
4         Spangenberg, Shibley & Liber, LLP
          1001 Lakeside Ave. East, Suite 1700
5         Cleveland, Ohio 44114
          216.696.3232

6

7         JOSEPH F. RICE, ESQ.
          Motley Rice
8         28 Bridgeside Blvd., 17th Floor
          Mount Pleasant, South Carolina 29464
9         843.216.9000

10

          W. MARK LANIER, ESQ.
11        Lanier Law
          10940 West Sam Houston Pkwy North, Suite 100
12        Houston, Texas 77064
          713.659.5200

13

14        PAUL T. FARRELL, JR., ESQ.
          Farrell & Farrell
15        270 Munoz Rivera Avenue, Suite 201
          San Juan, Puerto Rico 00918
16        304.654.8281

17

          JOANNE CICALA, ESQ.
18        The Cicala Law Firm PLLC
          31 S. Finley Ave., Suite 103
19        Basking Ridge, New Jersey 07920
          512.275.6550

20

21

22

23

24

25

```
 1    APPEARANCES (continued):

 2

 3    For Defendant Express Scripts:

 4         JONATHAN G. COOPER, ESQ.
           Quinn Emanuel Urquhart & Sullivan
 5         1300 I Street NW, Suite 900
           Washington, DC 20005
 6         202.538.8000

 7    For Defendant OptumRx:

 8         BRIAN D. BOONE, ESQ.
           Alston & Bird
 9         1120 South Tryon Street, Suite 300
           Charlotte, North Carolina 28203
10         704.444.1106

11

12    ALSO PRESENT:

13         Corey McCardle, Courtroom Deputy
           Carrie Roush, Law Clerk
14         David Cohen, Special Master
           Michael Borden
15         A. Scott Loge

16

17

18

19

20

21

22

23

24

25
```

1                      WEDNESDAY, AUGUST 30, 2023

2                              - - -

3                (Proceedings commenced at 12:03 p.m.)

4                              - - -

5                THE COURT:  Good afternoon, everyone.

6           This is a status call in the Opiate MDL case.  I think

7    it's MDL 2804.  We got representatives of the PEC; the two

8    remaining PBMs, Express Scripts and OptumRx; there may be

9    representatives of attorneys general, I'm not sure; special

10   master; my staff; and we have a court reporter.

11          At the last conference I had given the parties some

12   period of time to try and work with Special Master Cohen to

13   hopefully come to some agreement about a bellwether

14   selection process.  Parties worked hard, were not able to

15   come to an agreement.  I requested status reports, which

16   I've received.  So I believe I had told the parties that if

17   they couldn't come to an agreement, either I would come up

18   with a plan myself and implement it, or I would just say,

19   well, I'm done with the PBMs, I'm going to ask the JPML to

20   remand all these cases, however many there are, and to all

21   my colleagues around the country, and whatever they do, they

22   do.  I decided that would not be efficient, that wouldn't

23   advance things at all, so I'm going to -- I've given some

24   thought, and I'm going to tell everyone what I'm going to

25   do, and this will be the procedure.

1          I think we need four bellwethers.  I think the

2     plaintiffs had suggested four, the defendant had suggested

3     two.  I think two is too few.  I want to make sure that we

4     have enough that if one or two settle or somehow don't go

5     forward, that what I've learned is we need an active

6     litigating track, an active settlement track, and keep both

7     trains running, and I think I've done that pretty well over

8     five-plus years.

9          So I think that the way I'd like to do it is this.

10    The defendants will select and identify four cases, and the

11    plaintiffs will identify four cases, and then -- and to

12    ensure that we end up with four cases from different

13    circuits, because I'm going to let the defendants strike two

14    of the plaintiffs' four and the plaintiffs strike two of the

15    defendants' four, and so we will end up with four cases, two

16    of them being chosen by the defendants jointly.  Two --

17    well, I mean -- or I guess if, again, Optum can pick two --

18    OptumRx can pick two and Express Scripts two, however you

19    want to do it, we have four and the plaintiffs strike two

20    and vice versa, so we'll have four cases.

21         I want them all from different circuits.  And I think

22    the easiest way to do that is that defendants will pick

23    their four cases, and no more than one per circuit from

24    Circuits 1, 3, 5, 7, 9, and 11.  And the plaintiffs will

25    pick their four cases, no more than one per circuit, from

1      Circuits 2, 4, 6, 8, and 10.  And that way we'll end up with

2      four cases from four different circuits.  And we'll go

3      forward with those.

4           Now, in terms of amending complaints, the Sixth

5      Circuit has clearly said that because of my initial order

6      that plaintiffs could amend complaints if a case is selected

7      as a bellwether.  I will permit the plaintiffs to amend the

8      complaint in the four cases that we end up -- any of the

9      four.  So there's no point amending beforehand or

10     unnecessarily because we're only going to end up with four.

11     So the plaintiffs may amend their complaints in the four

12     cases they pick.

13          So that means that the plaintiffs can -- you know,

14     when they're selecting cases, they can select cases that

15     currently have PBMs in there or not because they'll be able

16     to add PBMs in those cases, and for that matter, the same

17     with the plaintiff -- defendants.

18          And I don't know -- have the plaintiffs discussed what

19     causes of action you're going to focus on?

20          I mean, we've had some cases with public nuisance,

21     some with RICO, some with both.  Have you thought about what

22     you want to include?

23                    MR. RICE:  Judge, I...

24                    (Unclear speech; clarification requested by

25                    court reporter.)

1          THE COURT:  Hold it.

2      Joe, you're breaking up.  I can't hear.  I'm sure the

3  court reporter can't.

4          MR. RICE:  Joe Rice for the PEC.

5      We have talked about it, and we believe that we need

6  to look at the circuits that we're going to have the cases

7  in to make that final --

8          THE COURT:  Okay.  That's fine.

9      Well, again, you know, you can amend the complaint of

10 any case that we end up with a bellwether, so any -- one,

11 two, three, or four cases.  You know, you can include, you

12 know, the conduct as PBMs and/or conduct as pharmacies if

13 you wish, all right?

14     So, again, the Sixth Circuit has been clear that

15 because of my initial order that plaintiffs could amend

16 complaints that had -- that were selected as bellwethers,

17 and as long as there hasn't been -- there had been little or

18 no work done on any case.  So, in other words, don't select

19 a case that's been actively litigated, all right, because

20 you can't -- you know, if you do, then you're not going to

21 be able to amend that case, all right?  Because the parties

22 have already started doing a lot of work on the complaint

23 that exists.

24     So I'm not -- if you -- I'm not saying you can't pick

25 a case that's being actively litigated, although I -- other

1    than the pharmacy bellwethers, I don't think there's any

2    case currently in federal court -- I'm not aware of any case

3    in federal court that's being actively litigated.  There

4    have been some cases that -- after the JPML stopped

5    assigning cases to me that are on the dockets of other

6    federal judges, but I'm not sure there's been a lot of

7    active litigated.

8         All right.  So you tell me how long you want for this

9    process, all right?  The first step obviously is each side

10   picking their four cases.

11        So you tell me it's -- you know, how much time is

12   reasonable, you know, what are -- what are the plaintiffs

13   suggesting, what are the defendants suggesting for time

14   there.

15             MR. BOONE:  Your Honor, this is Brian Boone

16   for OptumRx.

17        I guess I just have a question about the process.  Are

18   you envisioning that the parties will select the bellwethers

19   and then the PEC or the plaintiffs will generally -- will

20   move to amend complaint, or are you ruling right now --

21             THE COURT:  No.  I'm ruling right now, Brian.

22   I mean, the Sixth Circuit's already dealt with this.  We're

23   not reinventing the wheel.  The Sixth Circuit has already

24   held in a formal opinion that I -- they recognize my initial

25   order that said that plaintiffs could amend cases that are

1    bellwethers, and they said that's fine so long as the case

2    hasn't had a lot of active litigating and the parties have

3    relied on a complaint that was filed.  So that's already

4    ruled.  So I'm simply following what the Sixth Circuit has

5    directed.

6         So the plaintiffs are going to pick four, and you're

7    going to pick four.  So my question is how long will it --

8    should we allow for each side?  Obviously you get the same

9    amount of time.  You tell me.

10                   MR. COOPER:  Your Honor, this is Jon Cooper

11   for Express Scripts.

12        I have another question about this process.  I think

13   Your Honor indicated that you would like the PBMs to choose

14   potential bellwethers from the odd-numbered circuits, but --

15                   THE COURT:  Right.

16                   MR. COOPER:  -- there are only currently about

17   80 cases in the MDL against PBMs.  I don't believe there are

18   any even in, for example, the Seventh or the Ninth circuits.

19                   THE COURT:  But, again, you can pick a case,

20   all right?  It doesn't -- I mean, presumably --

21                   MR. COOPER:  But how can we -- sorry, Your

22   Honor.

23                   THE COURT:  Presumably --

24        Jon, look.  You pick a case, and if the plaintiffs

25   don't strike it -- all right.  Hypothetically, let's just

1    say you pick a case from the First and the Third and the

2    Fifth and the Seventh, and the PBMs aren't in it, okay?

3    Fine.  Well, the plaintiffs are going to have to put you

4    into one of the -- they can strike two, but they're going to

5    have to put you in the other two.

6                    MR. COOPER:  Your Honor, it doesn't make any

7    sense to me to require us to choose cases to get sued in

8    when we're not currently sued, so --

9                    THE COURT:  Well, then fine.  Then don't.

10   Then take -- you know, if you're not in one of those -- I

11   got to think you're in at least four of the odd circuits,

12   right?  1, 3, 5, 7, 9, 11.  That's six odd circuits.  Are

13   you in at least four of those circuits?

14                   MR. COOPER:  I don't believe we're in the

15   Seventh, the Ninth, or the Eleventh.  I'd have to go check

16   on some of the others.

17                   MR. BOONE:  I think that's right.

18        And, Judge Polster, I understand your ruling.  I just

19   want to get it on the record that under the rules we would

20   be entitled to an opportunity to oppose any amendments.  I

21   think even in your most recent --

22                   THE COURT:  Fine.  I mean, I'm going to deny

23   it because I'm just following the Sixth Circuit.  So fine,

24   all right?

25                   MR. BOONE:  Understood.  I just want to create

1   a record on that point.

2                   THE COURT:  All right.  Fine.  You can object.

3   You want to file it, go ahead.  I'm following the Sixth

4   Circuit.  And if you want to -- I'm following exactly what

5   the Sixth Circuit said I'm allowed to do.

6       Now --

7                   MR. BOONE:  May I just make one other comment?

8       I just want to be clear that I felt that this is what

9   you had contemplated in your most recent ARCOS order where

10   you said, I think, that you would rule on motions to amend,

11   quote, based on federal rules of civil procedure, the

12   arguments and case law provided in the parties' briefs, and

13   the guidance provided by the Sixth Circuit in the

14   above-cited mandamus rulings.  And so that seemed to us that

15   you were contemplating an opportunity for us to brief and,

16   in our case, oppose amendments.  We think we're entitled to

17   that opportunity.

18                   MR. COOPER:  And, Your Honor, Express

19   Scripts --

20                   (Unclear speech; clarification requested by

21                   court reporter.)

22                   THE COURT:  Well, I think you -- I mean, I'm

23   not going to go down -- I mean, it seems crazy to go down

24   this whole road, and then we have a lot of litigation on

25   amending complaint.

1          MR. COOPER:  Well, Your Honor --

2          THE COURT:  And, conversely, to say that the

3    plaintiffs should go ahead and amend complaints in hundreds

4    of cases, that doesn't make sense because I -- again, I'm

5    going to follow the Sixth Circuit, which says I got to --

6    you know, if it's bellwethers, you can do it.

7          MR. BOONE:  But I think the Sixth Circuit --

8    with respect, Your Honor -- also said you have to look at

9    each case individually and not in the aggregate, which I

10   think you're kind of doing here.

11         THE COURT:  No.  I'm doing it.  It can't be a

12   case that's being actively litigated because that wouldn't

13   be fair.  If you've all spent, you know, six months

14   litigating a complaint, it wouldn't be fair to suddenly

15   present you with a new case.  So we're not doing that.

16         MR. BOONE:  Understood.  I understood your

17   ruling.

18         THE COURT:  All right.  Well, look --

19         MR. BOONE:  I just wanted to make the record.

20         (Unreportable crosstalk.)

21         MR. BOONE:  And we're going to reserve our

22   rights --

23         THE COURT:  Go ahead.  If you want to file

24   your motions, you can file your motions, but I --

25         All right.  Where do we --

1           MR. BOONE:  I mean, look, as you've seen in

2    our status updates, these proposed amendments are going to

3    be later than late by any standard, we think we have real

4    grounds for opposing them and we're entitled to have that

5    opportunity.  I understand your ruling --

6           THE COURT:  Look.  Look.  Do what you want,

7    all right?  Do what you want.  You know what I'm going to

8    do.  I'm going to follow the Sixth Circuit, all right?  You

9    want to make the record, make the record.  I will do what

10   the Sixth Circuit has told me I'm permitted to do, all

11   right?  And they're not going to reverse themselves on the

12   second case.  You understand that.  But you want to do it,

13   do it.

14       Let's go back -- how do we do this selection?

15       I thought this was a good way to ensure we get cases

16   from different circuits.  I don't know that cases in -- half

17   the --

18           MR. COOPER:  Given the limited number of cases

19   against the PBMs in the MDL, Your Honor, that's one of the

20   reasons why we thought this amendment issue needed to be

21   resolved.  It doesn't -- at least to Express Scripts -- make

22   sense to choose a bellwether from a circuit or a

23   jurisdiction where there are no cases against the PBMs.

24   It's not going to serve a bellwether function, it's not

25   going to help resolve any cases.  And so if we knew the full

1    universe, that would be one thing, but if we're using just

2    the cases currently in the MDL, it should --

3                    THE COURT:  Mr. Cooper, I mean -- you're not

4    going to trap me into letting the plaintiffs amend every

5    case because I know the Sixth Circuit's not going to allow

6    that.

7                    MR. COOPER:  And --

8                    THE COURT:  So you tell me what you want --

9                    MR. COOPER:  Well, if cases can't be amended,

10   then we should just use the universe of cases that --

11                   THE COURT:  We know that the Sixth Circuit has

12   said that cases can be amended if they're bellwethers and

13   they haven't been actively litigated.  I know that, and you

14   know that.

15                   MR. COOPER:  Right.  But, Your Honor, there's

16   no reason to have a bellwether if there are no other cases

17   it's serving as a bellwether for.  If the vast majority of

18   cases can't get amended and we have to be limited primarily

19   to the cases already in the MDL, we should focus on those.

20   And those -- it doesn't make sense to choose bellwethers

21   outside of the ones that are already pending.  That won't

22   help resolve the other ones that are pending.

23                   MR. BOONE:  And I agree --

24                   THE COURT:  And so you're saying -- you're

25   saying we're limited to the 80 cases?

1              MR. COOPER:  Correct.

2              THE COURT:  That's what you're saying.  Well,

3       I don't think we are.

4           What are the plaintiffs suggesting?

5           This is why you were supposed to work all of this out.

6       And what I don't know is why these two defendants, out of

7       all the other defendants, were unwilling or unable to work

8       out a bellwether process.

9              MR. COOPER:  Your Honor, we've asked the

10      plaintiffs --

11             THE COURT:  Your Honor --

12             MR. COOPER:  -- repeatedly to provide a

13      proposal on amendments so we could understand the universe

14      of cases.  The concern is we can't choose a bellwether

15      properly if we don't know what it's serving as a bellwether

16      for.  And so we've asked the plaintiffs repeatedly to

17      provide a proposal on what cases they would seek to amend to

18      add claims against the PBMs, and they haven't done that.

19      And that's sort of been the sticking point on this.

20          On the bellwethers, we actually thought we were pretty

21      close.  In our letters last week, both sides had agreed to

22      two bellwethers, and it was just a question of sort of

23      the -- in the status report they changed tunes, and they're

24      now seeking four.  And I understand Your Honor has ordered

25      four.  But what we need to know is the universe of cases

1    because I don't see how we can choose cases where we're

2    not defendants and be asking the plaintiffs to ask

3    defendants -- that just doesn't make sense to us or our

4    client.

5                    MR. BOONE:  Your Honor, this is Brian Boone

6    for OptumRx.

7        Is that we were ready to pick bellwethers, two

8    bellwethers back in the spring, which is what, Judge

9    Polster, you had suggested, and then the PEC said let's

10   stop.  And they didn't engage for however long.  So it's not

11   true that we have been delaying or trying to delay.  We were

12   ready to do it.  The PEC wasn't ready to do it and said so,

13   and then it just kind of died for a while.

14                   MR. WEINBERGER:  So, Your Honor --

15       This is Pete Weinberger for the plaintiffs.

16       What the defendants are forgetting is that the issue

17   of amending complaints in the MDL has been an issue that

18   we've been discussing for a long time.  And we -- we agree

19   that we need to comply with Sixth Circuit in terms of cases

20   within the MDL.  The alternative is is we don't -- you know,

21   we filed a bunch of cases outside the MDL, which I don't

22   think is -- I think we all agree is not efficient.  And so,

23   you know, we're prepared to follow your directive to --

24                   THE COURT:  I'll tell you what we're going to

25   do then, since the defendants are -- this is -- this is

1      because of what the defendants are doing, I will...

2            So we got 80 cases now with the PBMs, right?  All

3      right?

4                        MR. BOONE:  It's --

5                        MS. CICALA:  The number may be larger than

6      that at this point, Your Honor.

7                        THE COURT:  How many are there?

8                        MS. CICALA:  Apologies.  This is Joanne Cicala

9      speaking.

10           I don't have a current count, but I'm quite certain

11     it's north of 80.

12                       THE COURT:  Well, I guess what I need to do

13     is -- maybe the fairest thing is to do this, is permit the

14     plaintiffs to -- I mean, what the defendants are pushing for

15     is a process that the plaintiffs are going to identify the

16     universe from which bellwethers are selected.  You want me

17     to limit those to what they select, and I'll tell you they

18     can amend two cases per circuit.  So that's two times 11 is

19     22, and we'll pick among those 22.  That's what you want,

20     then -- well, that's the 22, and then we'll go back to the

21     circuits things.  Then there will be two and, you know --

22                       MR. BOONE:  Your Honor, this --

23                       THE COURT:  Or -- so we've got those or, quite

24     frankly, I'll allow them to amend, you know -- I don't know.

25     I mean, it doesn't make sense to amend every one of these --

1     every 80 cases, but you want them to do it, fine.

2         I'm trying to limit the -- save people time but have

3     enough cases that you can select, so --

4                    (Unreportable crosstalk.)

5                    THE COURT:  Should have the plaintiff pick --

6     they can amend two cases per circuit, so that's 22 cases.

7     So if they can amend the case -- two cases in each circuit,

8     the two cases can be ones that do have PBMs now or don't.

9     And that will be the universe we pick.  Or if the defendants

10    select one of the other -- say we have a hundred cases, not

11    80, say we have a hundred cases, if the defendants choose

12    among their -- you know, their cases ones that haven't been

13    amended, well, then the plaintiffs can amend those when

14    they're picked.

15                    MR. BOONE:  Your Honor, this is Brian Boone

16    for OptumRx.

17         And I don't want to beat a dead horse here, but we do

18    think we're entitled to brief proposed amendments and oppose

19    them if we would so choose, and we would so choose because

20    they would be late by any standard, and --

21                    THE COURT:  Well, you're going to lose that,

22    okay?  You're not going to lose that.  The Sixth Circuit...

23         Mr. Boone, you can brief anything you want.  The Sixth

24    Circuit has already ruled that they're not late.  But you've

25    got to -- you got -- I'm not going to fall into your trap.

1      I see exactly what you're doing.  I'm a little smarter than

2      that.

3                    MR. BOONE:  Your Honor, I'm not trying to set

4      a trap.  I'm --

5                    THE COURT:  Well, you were -- yes, you are.

6      Yes, you are, and I'm not falling into it, all right?  I've

7      been around the block enough times.

8          Now --

9                    MR. BOONE:  Your Honor, if I can --

10                   THE COURT:  You're either going to give me a

11     process that you think is fair, or I will say you've waived

12     your right to give me a process that's fair, all right?

13         So how much time -- I'll give -- you want ten days,

14     I'll give you ten days -- ten days to produce to me a

15     process that is fair in terms of selecting bellwethers and

16     amending complaints that comports with the Sixth Circuit

17     ruling, or I will hold that you've waived it.  All right?

18                   MR. BOONE:  Your Honor, if you're going to

19     give us only ten days, we'll take the ten days, but I don't

20     think it would be appropriate for you to then say that we

21     would waive any rights.

22                   THE COURT:  Oh, yes, you've had -- you've had

23     a couple months.  What I want is you -- you give to me a

24     process that is fair for selection.  And, again, I want to

25     end up with four cases, and I want to give, you know, each

1    side -- you know, each side the equal -- equal number of

2    strikes, all right?  So that's -- any proposal has to have

3    that, all right?

4        But you give me -- give me a proposal that's fair in

5    terms of amending -- amending complaints, choosing these

6    cases and so everyone knows what is the universe from which

7    you are to identify your four cases, okay?  That's fair.

8    But you got to give it to me, or else I will have to -- I'll

9    deem that you've waived it.  If you don't give me a process,

10   you know, in ten days that meets this, then I will issue an

11   order that you've waived it.

12                   MR. BOONE:  And when you say we waived it, you

13   mean -- what would we have waived?  I just want to make sure

14   I --

15                   THE COURT:  Well, waived your right to object

16   to anything that I've come up with.

17                   MR. BOONE:  Including amendments?  I just want

18   to make clear.

19                   THE COURT:  Absolutely.  Absolutely.

20   Absolutely.

21                   MR. BOONE:  Your Honor, that would not be

22   appropriate.

23       The only other thing I was going to say about the --

24                   THE COURT:  I suggest you not tell me what is

25   appropriate, Mr. Boone.  You want to object to it, you want

1       to file whatever you want, but I know what's appropriate.

2       I'm giving you the opportunity.

3                       MR. BOONE:  I'm not trying to be

4       disrespectful, Your Honor.  I just want to create a record.

5                       THE COURT:  All right.  Create the record.

6                       MR. BOONE:  I know that you've invoked the

7       Sixth Circuit a few times.  The Sixth Circuit has never

8       looked at PBM cases in 2023, so it's not true that the Sixth

9       Circuit has decided the issues that we would raise in our

10      oppositions to amendments.

11          And I just want to --

12                      THE COURT:  If you want to tell the Sixth

13      Circuit why somehow PBMs are different than every other

14      defendant in terms of this kind of a ruling, be my guest.  I

15      don't think you'll get far.

16          So, again, we've got ten days.  And let's just make

17      it, you know, 4:00 on Monday, September 11th, all right?

18          And so you're to file -- the PBMs -- the PBMs are to

19      file your proposal for selecting bellwethers and amending

20      complaints that you think -- that you think is fair that

21      gets us -- you know, you're going to pick four, the

22      plaintiffs are going to pick four, you're going to strike

23      two of theirs, you're going to strike -- they're going to

24      strike two of yours, and we're going to end up with cases

25      from four different circuits.  All right?  I think we all

1      agree on, you know, that they should be among different

2      circuits.  All right?

3            And you want to plan where you know in advance -- I

4      mean, what the -- you know, what the case -- you know, what

5      are you choosing from?  All right?  So, all right, I accept

6      that principle, that makes sense.  You come up with a plan

7      to, you know, how it works and get -- and file it by 4 PM,

8      Monday, 9-11.  And if it -- and I'll -- and then I guess

9      I'll give the plaintiffs a few days to respond to it, all

10     right?

11           I think three days is fine.  4 PM, Thursday, 9-14, the

12     plaintiffs can file any response.  And then sometime the

13     following week I will issue an order with what we're going

14     to do.  And if the defendants have a very good plan, I'd

15     like to follow all or much of what they've got.  And if you

16     have nothing, well, obviously you got nothing.

17                 MR. COOPER:  Your Honor, for Express Scripts,

18     we'll definitely coordinate and work with Optum to come up

19     with the proposal you're asking for.  I do want to note,

20     though, that we don't agree, we do object that it makes

21     sense to have four bellwethers, and also that it makes --

22     necessarily makes --

23                 THE COURT:  Well, fine.  I'm saying I don't

24     want two.  I want four.  So you're not going to --

25                 MR. COOPER:  I understand.

1            THE COURT:  Fine.  I understand you wanted

2    two, and I'm thinking it's better to have four.  It

3    doesn't -- it doesn't change the process.  That's just

4    numbers.  The key is -- the key is a proposal for dealing

5    with amendment -- amending complaints so that everyone knows

6    what the cases are from which you're choosing.  It doesn't

7    matter if you're choosing two or four, it's the same thing.

8            MR. COOPER:  Right.

9        And, Your Honor, to that point I want to make it

10   clear.  Two points on that.  One is it's not clear to us

11   that it makes sense to have bellwethers from four separate

12   circuits given the concentration of the PBM cases in the

13   MDL.  I mean, they're primarily concentrated, for example,

14   in the Fourth Circuit.  So it's not clear to us it makes

15   sense to have four from separate circuits, especially from

16   circuits where there are zero cases against the PBMs

17   pending.

18        And on the amendment point, you know, we'll look at

19   it, but it doesn't make sense to us to be amending cases

20   beyond the pending cases to create new bellwethers in

21   completely other jurisdictions.  So we'll certainly look at

22   this issue, but I want to note that it doesn't seem to make

23   sense as of -- to serve as a bellwether to have a case in a

24   jurisdiction or a circuit where there are no other pending

25   cases.  It's not going to serve any bellwether function.

1        So, you know, I understand the point about needing to

2    amend a complaint to clarify which claims or whatever are

3    going to be pursued, that can be done within the current set

4    of 80 pending cases, there's no need to go beyond those.

5              THE COURT:  Well, if the plaintiffs are going

6    to pursue public nuisance, Mr. Cooper, that's different in

7    every state.  Every state has its own public nuisance law.

8    And I haven't heard the plaintiff say they're not using

9    public nuisance.  If it's just RICO, quite frankly doesn't

10   matter if they're -- my guess is RICO law is pretty darn

11   similar among the circuits.  The public nuisance is a state

12   law, state cause of action.

13             MR. COOPER:  And I understand that, Your

14   Honor.

15             THE COURT:  So you're saying you don't need

16   different circuits.  What do the plaintiffs think?  Maybe we

17   don't care, have them all from the same...

18        The problem is if you're going to pursue public

19   nuisance, you certainly don't want them all from the same

20   state.  That doesn't accomplish anything.

21             MR. COOPER:  I understand that, Your Honor.

22        And, you know, there are -- within the 80 pending

23   cases, they're not all in one state, they are I think from

24   eight or nine states.  So you can still get a variety of

25   states and potentially a variety of circuits.  I just don't

1    know if it will end up being four separate circuits.  So we

2    can certainly look at this issue and come back to you with a

3    proposal.  But, you know, we just want to make clear that it

4    doesn't make sense, to us at least, go outside the pending

5    cases for amendments.

6                    MR. BOONE:  So this is Brian Boone again for

7    OptumRx.

8         We'd certainly agree with that.  But, again, just to

9    be clear, we don't think there should be any amendments

10   because they're impossibly late, and so we plan to object.

11   We'll work --

12                   THE COURT:  Then let's not waste time.  If

13   you're going to -- if you're not even going to give me

14   anything because you're going to say the plaintiffs can't

15   amend anything, then there's no point going through this

16   exercise.

17                   MR. BOONE:  We'll talk to Express Scripts.

18   I'm not -- we'll coordinate and we'll get back to you by --

19                   THE COURT:  Will the plaintiffs care -- maybe

20   take them all from one circuit.  I don't care.  We need to

21   get started here.

22        The plaintiffs care?  Take them -- you know, just pick

23   from the 80, all right?  You know, I don't care about the

24   circuits.  They're all in the same circuit, so be it.

25                   MR. RICE:  Your Honor, this is Joe on

1    behalf...

2              (Unclear speech; clarification requested by

3              court reporter.)

4              MR. RICE:   The circuits -- we're addressing

5    two different issues here.   Right now we're trying to pick

6    the bellwethers where the amendment question has been

7    resolved out of the Sixth Circuit.   As you know, we believe

8    that there's been a state order in place that prevents

9    plaintiffs from filing any amendments to their complaints

10   for now or four years while you managed the process with

11   your manufacturers, distributors, and the pharmacies, and

12   that has successfully worked.   But the plaintiffs have been

13   waiting for that stay to be lifted so they can file their

14   amendments.

15        So that's not before you today, but we do need to

16   address that in a global MDL process.   And we plan to

17   present that motion once we get the ARCOS data process, they

18   can give you a full picture.   But right now we do believe in

19   the bellwether selection it should be more than one circuit,

20   and we should -- you should tell us to designate -- we'll

21   designate eight cases as bellwethers, we'll pick them from

22   different circuits.   Then the defendants can --

23              THE COURT:   No.   You don't need eight.   You

24   need four, they need four --

25              (Unreportable crosstalk.)

1              THE COURT:  -- and we'll get four.

2              MR. RICE:  You're going to pick -- you're

3      going to pick -- okay, we'll pick -- we need to have eight

4      bellwethers so that they can be amended pursuant to the

5      Court's previous order and then from those eight strike --

6              THE COURT:  Well, we can do that but, you

7      know, defendants -- I mean, we can do that if the defendants

8      are pushing me to that, then we'll let the plaintiffs pick

9      the eight cases, but I would rather, you know, the

10     defendants meet -- the point is -- the point is this, you

11     ought to -- you ought to pick the cases that you'd rather be

12     in if you want, you know, in your pick.  Why would you let

13     the plaintiffs pick all eight?  That's what you want?

14             MR. BOONE:  This is Brian Boone again from

15     OptumRx.

16         No, we don't want that, Your Honor.

17             MR. COOPER:  Nor does Express Scripts.

18             THE COURT:  Well, then --

19             (Unreportable crosstalk.)

20             THE COURT:  Then you can pick -- you can

21     pick --

22             MR. RICE:  Judge, this --

23             THE COURT:  Maybe we should just go with the

24     80 we got, all right?  And if they're not in every circuit,

25     so be it.  We'll just go with the 80 we've got and, you

1    know --

2                    MR. RICE:  Judge, the --

3                    THE COURT:  -- and get -- the 80 we got.

4         So the defendants are going to pick -- you know,

5    they'll pick four of the 80, and the plaintiffs pick four of

6    the 80, and then you get two strikes each, and we'll get

7    four, and the plaintiffs will be able to amend those four in

8    terms of -- you know, you don't have to add the PBMs,

9    they're already in, but you could, you know, add or subtract

10   causes of action and, you know -- obviously we're going to,

11   you know, sever all other defendants that are in the case

12   and just try the PBMs, so we'll do -- that's -- you know,

13   we've always done that.  All right.  Fine.  We'll just go

14   with the 80 we got, and you all figure out -- you all figure

15   out how we don't end up with, you know, four Second Circuit

16   cases because I don't think that's -- that makes sense.

17        So how are you proposing that we -- if we do this, we

18   just have those 80 and the plaintiffs pick four, defendants

19   pick four, you do two strikes, how we -- what we do so we

20   don't have all four cases from the Second Circuit?

21                   MR. BOONE:  Your Honor, this is Brian Boone

22   again from OptumRx.

23        I'm happy to talk to the ESS counsel, to Mr. Cooper,

24   and we can come up with some proposal that we can get back

25   to you by September 11th.  I can't...

```
 1                    (Unclear speech; clarification requested by

 2                    court reporter.)

 3                    MR. BOONE:  Ever going to agree in proposing a

 4      certain way forward to any amendments, but we can at least

 5      talk through the issues with Mr. Cooper, and we can meet

 6      your deadline of September --

 7                    THE COURT:  All right.

 8           Well, I -- I'm just going to cut through this right

 9      now then.  I mean, just do it.  Just -- you're going to pick

10      four right now, both sides are going to pick four, and you

11      pick four out of the 80, and pick four out of the 80, and I

12      guess the best thing to do -- I guess the plaintiffs should

13      pick, you know, four different circuits and the defendants

14      should pick four different circuits.  How does that sound?

15           I don't care if they're odd or even, all right?

16           And if there's some overlap, there's some overlap, and

17      then you do your two strikes and have your four, and I'll

18      reserve the right -- if I think -- if they all come out in

19      the same circuit or three of them are in the Second Circuit

20      and only one is the other and we just have two circuits,

21      we're going to have to do something.  We end up with four

22      cases in three different circuits, I don't have a -- that

23      isn't the problem, okay?  But I want to have at least three

24      different circuits in the four, all right?

25           So you all -- how does that sound?
```

1           MR. BOONE:  And, Your Honor --

2           THE COURT:  And I'm ruling now that if

3    plaintiffs -- well, then if the plaintiffs want to amend the

4    complaints -- all right, I will -- I will -- I mean, I'll

5    grant the motion for leave to file the amended complaint.

6    And then if the defendants want to object, they make their

7    record, they make their record, but I'm quite confident that

8    this process is following exactly what the Sixth Circuit has

9    directed.  We'll have up to four amended complaints, and no

10   one is prejudiced because there will not have been any

11   litigation at all on any of them, so...

12        How long should we -- what's reasonable for each side

13   to pick its four?  How long do you want to pick your four?

14           MR. COOPER:  Your Honor, just to be clear,

15   this is picking from the 80 existing cases?

16           THE COURT:  Yes.

17           MR. COOPER:  Okay.  That's --

18           THE COURT:  You pick four of 80, and they pick

19   four of 80.

20        And, quite frankly I mean, if there's an overlap, it

21   seems to me that's automatically -- how does that sound?  I

22   mean, if one of your four is one of their four, then that

23   should automatically be in.  Does that seem reasonable?

24   Shouldn't be striking a case that's -- you know, so --

25           MR. BOONE:  Your Honor, speaking only for

1    OptumRx, if we're talking about picking four from the

2    existing 80 or so cases --

3                    THE COURT:  There may be a hundred.  We're

4    using 80, but Ms. Cicala said it might be a hundred or more.

5                    MR. BOONE:  Understood.  But if we're talking

6    about that universe of cases where the PBMs are already

7    defendants, again, speaking only for OptumRx, I think we can

8    do it by September the 11th.

9                    THE COURT:  All right.

10         Express Scripts, can you do it by September 11th?

11                    MR. COOPER:  I think we can make that work.  I

12    think if possible we'd like to have two weeks, so until the

13    13th of September.

14                    THE COURT:  All right.  Two days is fine.

15    That's fine.

16                    MR. COOPER:  Thank you, Your Honor.

17                    THE COURT:  4 PM, the 13th.  So by 4 PM, the

18    13th, each side is to select four of the existing PBM cases

19    as potential bellwethers.

20                    MR. COOPER:  And, Your Honor, one other note,

21    if I may.

22                    MR. RICE:  Excuse me, Jonathan.

23         Judge, that's each -- therefore, it will be four

24    separate circuits, and our four will be four separate

25    circuits.

```
 1              THE COURT:  Right.  Right.  You won't know

 2   which ones, and there could be an overlap because you're

 3   going to do it simultaneously.  I want the plaintiffs to

 4   have four different circuits, I'm not telling them -- it can

 5   be odd, even, whatever.  I want the defendants to have four

 6   different circuits.  And you file -- you know, I guess file

 7   those.  And then...

 8        And, again, it seems to me pretty obvious that if

 9   you -- you each selected the same case, that should

10   automatically be one of the four, do you agree?

11              MR. RICE:  I would think that makes sense,

12   Your Honor, if we pick the same case.

13              MR. COOPER:  Your Honor, so I generally agree

14   with that in principle, but let me give you a caveat.  The

15   caveat is this.  In order to be able to pick from four

16   separate circuits, since so many of the cases are in just

17   one circuit, it's quite possible that we -- to be able to

18   pick from four circuits, there may be only a single case

19   from, say, the fifth circuit.  And if -- and so to be able

20   to get four circuits, we may have to choose from cases where

21   there's only one --

22              THE COURT:  All right.  Fine.  Fine.  I'll

23   just -- make sense, but we'll just do this -- you can

24   strike -- strike two from the four.  All right.

25        So you'll have your four by 4 PM, 9-13.  All right.
```

1          How long will it take each of you?  What's reasonable

2     to allow for you to decide which of the other side's four

3     you want to strike?

4                    MR. RICE:  Your Honor, this is Joe again from

5     the PEC.

6          This is moving in a lot of different directions.  We

7     want to move it quickly, but in --

8                    (Unclear speech; clarification requested by

9                    court reporter.)

10                   MR. RICE:  In the hurricanes that a lot of our

11    folks are dealing with in the south, we would ask we'd have

12    a little more time to select the four bellwethers because we

13    know -- to PC to talk this through --

14                   THE COURT:  All right.

15                   (Unreportable crosstalk.)

16                   THE COURT:  They requested two weeks.  What

17    would you like?

18                   MR. RICE:  I'm going to let Mr. Weinberger

19    help me out here.  I know we got some people out of the

20    country that are important to talk to.

21         How about September 22nd?

22                   MR. WEINBERGER:  I think that works, Joe.

23                   THE COURT:  All right.  Nine additional days

24    is no problem.  The PBMs obviously get the same amount of

25    time.  So we'll make it September 22nd, which is Friday.

1    All right.

2         All right.  So the next question is how much time does

3    each side think is reasonable to do the striking two?

4    Obviously same amount of time for each side.

5              MR. RICE:  I would assume we can do that

6    within seven days of the 29th, if that's reasonable to the

7    PBMs.

8              THE COURT:  Yeah.  What are you -- Jonathan

9    and...

10             MR. BOONE:  Brian.

11             THE COURT:  Brian, yes.  Sorry.  I'm looking

12    on the screen.

13        They propose the 29th.  That's a week.  Do you want a

14    little longer?  I mean -- you know, you tell me.

15             MR. COOPER:  I think a week --

16        I'm sorry.  Go ahead, Brian.

17             MR. BOONE:  I was going to say --

18        This is Brian Boone for OptumRx.

19        I was going to suggest maybe two weeks for that

20    process.

21             THE COURT:  All right.  I mean, and that --

22    that's -- I want to be fair to both sides.  So two weeks

23    would be like October 6th.  4 PM, October 6th.  Okay.  Okay.

24        So then we'll have our four.  So --

25             MR. RICE:  Your Honor, this is Joe.  And I

1    apologize to the -- since we are on the record with a court

2    reporter, I do want to make it clear that the MDL PEC has

3    been in a stay order for five years in allowing our clients

4    to amend cases, and we do plan to bring a motion unrelated

5    to the bellwether selection to be allowed to amend cases.

6    We understand there may be opposition for one or more

7    defendants, but we do want to be clear that we see this as

8    two entirely different processes.

9         The bellwether process you've spoken to, but as far as

10    the overall amendment process, we need to bring that forward

11    because in the absence of having the ability to do that, we

12    need to notify our clients that they would need to file new

13    lawsuits in order to pursue the defendants that they did not

14    name as this new ARCOS data information and other facts that

15    we've learned in --

16                    THE COURT:  I'm not going to deal with that

17    now.  And I -- whole different issue, and every defendant in

18    the country is going to be opposing that, and I have no idea

19    what I'm going to do.  On these bellwethers I will -- I will

20    now -- I will give leave for the plaintiffs to file proposed

21    amended complaints for any of the four, all right?

22    Defendants want to -- then you can file the amended

23    complaints so everyone can see it.  And if the defendants

24    want to file objections to those amended complaints, then

25    they can do so, all right?  That's how we'll proceed.

1      So those four cases that we end up with, the

2   plaintiffs have leave to file the proposed amended

3   complaints, file them.  And defendants want to file

4   objections, they may.  But I -- I believe this is exactly

5   the process the Sixth Circuit has already approved.  So

6   we'll be proceeding on those four cases.

7      And my present thought is it's more efficient for me

8   and my team to deal with the motions and discovery than to

9   send these out to four different judges around the country

10   who are going to be really upset if they get them, so I'll

11   probably just do that.

12      Now, obviously defendants may also file motions to

13   dismiss, you know, if they think there are threshold legal

14   issues after we determine what the case is.  There's no

15   point filing it if there's an amended complaint, we have

16   to -- and there's an objection, I'll have to rule on the

17   objections.  But once -- once I determine what the complaint

18   is, if defendants have what they think is a threshold legal

19   issue that can be addressed just on the -- on the face of

20   the complaint, obviously defendants can file whatever

21   motions they want.

22      And what I'll direct the parties to do, once we

23   determine what the complaints are for these four cases, is

24   to work with Special Master Cohen and try and develop a

25   litigating schedule for these cases.  Don't bother with a

1    trial date because I'm not going to be the one trying these

2    cases.  But for discovery, dispositive motions, what we've

3    done with all the other bellwethers.  And if parties can't

4    agree, have a disagreement, I'll do what I've done in the

5    past, and I've done it myself.  But generally the parties

6    have been able to do that.  But there's no point doing it

7    now before we know exactly what the complaints are.

8          And, again, if -- my objective is to end up with four

9    cases in at least three different circuits because I think

10   that makes sense.  If we don't have that, then we'll have to

11   collectively figure out what to do.

12         All right.  So --

13                   MR. BOONE:  Your Honor --

14         This is Brian Boone again for OptumRx.

15         And you mentioned Special Master Cohen.  I know that

16   he relayed to you that we wanted to raise an issue about an

17   e-mail that he sent us --

18                   THE COURT:  Yeah.

19                   MR. BOONE:  -- on Monday.

20         And -- and I don't know if you've seen the e-mail that

21   we sent to Special Master Cohen.

22                   THE COURT:  Yeah.  I read it.  I saw it.

23                   MR. BOONE:  Yeah.

24         And so it raises serious questions about his

25   impartiality vis-à-vis the PBMs.  He said in his -- he said

1    a few things in his e-mail.  By the way, he also said that

2    there should be four bellwethers to increase settlement

3    pressure or the possibility of a global resolution.  But he

4    also said that -- and I'm quoting -- claims against the PBMs

5    as mail-order pharmacies will show how much PBMs knew, and

6    they knew a lot.

7         There is no evidence in the record on that score, and

8    no discovery in the MDL or any other opioid case about

9    OptumRx's mail-order pharmacy.  And he's wrong on the

10   merits, but we haven't even had a chance to make that

11   argument in briefing or otherwise, and yet the e-mails

12   showed that Special Master Cohen has already prejudged the

13   merits.  He says they knew a lot.  That is improper by any

14   standard.  We think that Special Master Cohen should recuse

15   from PBM-related cases and proceedings.

16                 THE COURT:  Well, that isn't going to happen.

17   All right?  You know, he sent something that -- it showed --

18   may have shown his thought at the moment, doesn't in any

19   way, shape, or form indicate that he's biased or prejudged

20   anything.  All right?  No one has a clue what the evidence

21   is.  All right?  I don't.

22        I mean, the PBMs have argued that they've been part of

23   the solution, not the problem, and they should be

24   plaintiffs, not defendants, all right?  The plaintiffs have

25   a different opinion.  I don't know what the facts are.

1    Special Master Cohen doesn't know what the facts are.  We're

2    trying to come up with -- you know, with a fair system.  All

3    right?  He hasn't prejudged anything.

4         And ultimately every -- every significant decision in

5    this MDL is mine, all right?  If there's a discovery ruling

6    that he makes and the defendants object, they appeal it to

7    me.  I've got one right now, all right?  I've generally

8    upheld his rulings, I have sometimes reversed them.  That's

9    how it works.  Same way if it's a magistrate judge, the buck

10   stops with me, and I make my own decision.

11        So Special Master Cohen, I'd like to remind you, was

12   recommended by the defendants initially five-and-a-half

13   years ago.  The plaintiffs as well, but by the defendants,

14   okay?  So the defendants recommended him, and I think the

15   record has demonstrated over the last five-and-a-half years

16   he has worked incredibly hard and fairly and has advanced

17   this MDL beyond any -- what anyone -- anyone could measure.

18        So he's not recusing himself.

19                  MR. BOONE:  And just --

20                  MR. COOPER:  Your Honor --

21                  MR. BOONE:  -- for the record, OptumRx wasn't

22   part of the process that selected --

23                  THE COURT:  Well, fine.  But all the other

24   defendants were.  Okay?  The record is clear on that.

25                  MR. COOPER:  And, Your Honor, for Express

1    Scripts, a few things.

2        One, I also believe that Express Scripts was not part

3    of that decision, but more fundamentally, we respectfully

4    disagree with your view of this e-mail.  I want to make

5    clear for Express Scripts, we think this does show that

6    Special Master Cohen has prejudged some of these issues, at

7    least with respect to Express Scripts and the PBMs.  So we

8    do believe recusal would be appropriate.  If Special Master

9    Cohen doesn't recuse, we are looking actively at the facts

10   and the law in this issue, and we may need to take further

11   steps.  We don't want to be hasty about it, but I've never

12   seen an e-mail like this from a judicial officer, it raises

13   very serious concerns in our minds and --

14                THE COURT:  Well, first of all, it was sent by

15   mistake, all right?  It's someone's thoughts at the moment.

16   You have no idea what's ever in my mind.  All right,

17   Mr. Cooper?  Okay?  Or what's in your mind, okay?

18        First of all, coming up with what's a fair bellwether

19   process, obviously the objective is you need an active

20   litigating track and an active settlement track.  That's

21   what's worked, all right?  No one wants to try all four of

22   these bellwethers or the 80 cases.  No one has the time,

23   money, or resources to try them.  Everyone knows I tried one

24   of these bellwethers.  The millions and millions of dollars

25   it takes and a huge amount of court resources.  The whole

1    point is maybe you try one or two, maybe you don't have to

2    try any, in the course of the discovery you get the facts,

3    all right?

4         Again, the defendants have -- PBMs have said, hey,

5    we've been part of this solution, we should be plaintiffs

6    here.  You know, plaintiffs disagree.  I don't know.  My

7    guess is the truth's somewhere in the middle, okay?  You

8    probably got some good arguments, they've got some good

9    arguments.  So --

10                  MR. BOONE:  Your Honor --

11                  THE COURT:  Picking a number suggesting that

12   it's better to have four than two, I mean, it puts pressure

13   on both sides to settle.  Settlement pressure doesn't -- you

14   know, just doesn't work on one side, it's both sides.  So --

15   and speculating on what people knew or didn't know, all

16   right, doesn't -- in my view, it shows...

17        Let's put it this way.  It's up to Special Master

18   Cohen whether he recuses himself.  All right?  It's not up

19   to me.

20                  MR. BOONE:  Your Honor, Brian Boone again for

21   OptumRx.

22        I agree with what Mr. Cooper said.  OptumRx is also --

23                  (Unreportable crosstalk)

24                  MR. BOONE:  I think I said earlier that I

25   think the e-mail raises serious concerns about Special

1    Master Cohen's impartiality.  If I'm being candid, I think

2    it pretty well shows that he has picked a side and he should

3    recuse, and if he does not, then we'll look at our options.

4                    THE COURT:  All right.  Look at your options,

5    okay?  But --

6                    MR. FARRELL:  Judge, this is Paul Farrell.  Do

7    you mind if I make a statement?

8                    THE COURT:  No.  That's fine, Paul.

9                    MR. FARRELL:  I want to point out just a

10   couple of things is...

11       Number 1, the PBMs have been part of the discussion of

12   this court since as early as 2018 when we held meetings in

13   the basement of Mr. Weinberger's office where I believe you

14   were present, where we discussed the formularies and

15   injunctive relief.  So even though Express Scripts wasn't

16   there, even if the Optum wasn't there, this court for the

17   past five years has handled a variety of issues and is --

18   and has been embedded with certain information.

19       So for anybody that's been actually litigating this

20   for the last five years, you can ask either side, I don't

21   think anybody would say that Mr. Cohen or this court is

22   biased one way or the other.  And I think the results have

23   spoken for themselves.  So if we're going to go around

24   making statements, there is a complete record before this

25   court regarding the history of the PBMs.  That's number 1.

1           Number 2 is it seems a little disingenuous to raise

2     this issue now given that the PBMs have prevailed on their

3     process.  The plaintiffs in the PEC proposed a process that

4     is tried and trued, that has been used with the

5     manufacturers, with the distributors, with the dispensers,

6     and that includes amending bellwethers.  And not just from

7     the core group or the named plaintiffs or the name -- the

8     cases of named defendants.  The specific case that you're

9     referencing is a case where a defendant got added under this

10    process and filed a writ to the Sixth Circuit, and that

11    order said that your process was proper.

12                THE COURT:  That was my -- right.  Okay.

13                MR. FARRELL:  So now we're in a position where

14    the defendants, the PBMs -- pardon my colloquialism -- have

15    thrown a fit, and now we've reverted back to a narrower

16    process that the PEC is going to have to absorb, quite

17    frankly.

18          We are -- we have been under a stay by your order

19    since 2019.  And so the consequences of a decision limiting

20    bellwethers to simply the 80, there is going to be a

21    consequence to this.  And I'm not saying this as a threat,

22    I'm saying it as a practicality and that there are 3,000

23    cases, and I can represent to the Court that a number of

24    them are going to pursue the PBMs.

25          So this process just needs to bear out, and if the

1      PBMs insist on selecting the bellwethers from the 80 and

2      objecting to the amendment process, then we'll likely have a

3      year from now some clarity on cases that get filed across

4      the country, the JPML revisits the issue of the conditional

5      transfer order, perhaps a new MDL is formed.

6           But I just want it to be pointed out on the record

7      that defendants are getting what they wanted, and they're

8      still complaining.  And all we want from the PEC is a fair

9      process, and we believe that going in this direction is

10     going to have some consequences down the road.

11                    THE COURT:  All right.  Thank you,

12     Mr. Farrell.  That's a good point.

13          The PBMs -- the record is clear the PBMs are getting

14     what they wanted, which is limiting the bellwether -- pool

15     of bellwethers to be 80 to a hundred cases that currently

16     name PBMs, all right?  Obviously the plaintiffs are free to

17     file any new case, they always have been free to file any

18     new case against one or more defendants anywhere in the

19     country they want.  No one's ever limited that, and they --

20     that they may do so, but...

21          Well, again, I am -- it's up to Special Master Cohen

22     whether or not he recuses himself.  I'm certainly not going

23     to request or suggest that he do it.  I'm saying so on the

24     record, so...

25          PBMs are free to -- they have always been free to file

1    whatever they want.  And, again, I think they're -- you

2    know, that's -- free to file whatever -- whatever you choose

3    to file.

4                    MR. COOPER:  Understand, Your Honor.

5        And just for Express Scripts to be clear, we don't

6    agree with Mr. Farrell's suggestion that we've gotten what

7    we want here.  Our concerns, to be clear, go well beyond the

8    bellwether selection process and go to the merits.  And the

9    prejudgment of the merits are -- are our perhaps most

10   serious concern.  So --

11                   THE COURT:  Well, first of all -- first of

12   all, just so the record's clear, if there is a trial, a

13   federal judge is going to be presiding over the trial.  If

14   there are any motions, you know, I rule on -- I'm the one

15   who's going to rule on them.  All right?  If there's a

16   discovery issue, that's referred to Special Master Cohen,

17   makes his ruling.  If the party thinks he's wrong, they

18   appeal to me.  That's been the process for five-and-a-half

19   years.  It's worked very well.  And, as I said, I have at

20   times reversed what he's done or modified it.  I look at the

21   facts and the law.  The decision's mine, so...

22       And if -- and I will say categorically if I thought

23   that anyone -- if Special Master Cohen or anyone working

24   with him was biased, I wouldn't be using him or her,

25   obviously.  So...

1          All right.  So everyone understands the process, and

2     we'll move forward with these -- with these bellwethers and

3     start litigating.  And, again, I would encourage both sides

4     to keep your eyes open with what you're seeing.  And if the

5     parties are interested in having any resolution discussions,

6     I'm always available.  And obviously Eric Green has done

7     yeoman's work with many other defendants in the case, and he

8     can do so, but that's -- the objective is to learn something

9     from these bellwethers, the discovery process.  If we need

10    to have the trials, we got the federal judges who know how

11    to do them.

12         All right.  Then unless there's anything else anyone

13    has, we are adjourned.

14              MR. COOPER:  Your Honor, if I may, I have one

15    other point on the bellwether.

16         Jon Cooper for Express Scripts.

17              THE COURT:  Yes.

18              MR. COOPER:  Earlier I believe you indicated

19    that for any of these bellwethers, all other defendants

20    would be severed, and it would just be against Express

21    Scripts and Optum.  I wanted to know that depending on what

22    claims are pursued here, Express Scripts would want -- needs

23    to reserve the right to seek to have additional defendants

24    in the case if, for example, there are allegations about

25    pharmacy or dispensing claims or conspiracy claims or things

1    like that, there may be additional defendants we would seek

2    to add to any bellwether to have it be a fair proceeding.

3                    MR. BOONE:  And this is Brian Boone from

4    OptumRx.

5         OptumRx needs to also reserve the same right,

6    depending --

7                    THE COURT:  All right.  I think -- I think

8    we've had that.

9                    MR. COOPER:  We discussed that, yes.

10                    THE COURT:  The bellwethers we've had -- I

11   think the defendants always had that right.  I don't think

12   they used it, but they had the right.  So I would -- you

13   know, the defendant always has the right to add in a third

14   party defendant if -- at least move to do it.  If there's an

15   objection, I'll deal with it.

16        But, yeah, sure, you want to bring someone in that you

17   feel is indispensable, sure.  That's always been the case.

18        Am I correct from the plaintiffs that that's always

19   been the case?

20        I don't think in any of the trials, at least that I've

21   done, a defendant has, but I know there was discussion in

22   the pharmacy case about that -- the pharmacies ultimately

23   opted not to bring anyone in, but they could have.  They

24   certainly had the right to.  So, sure, either or both the

25   PBMs, you can move to name a third party defendant or

1    defendants.

2              MR. COOPER:  And, Your Honor, just to be

3    technical about it, some of them may already be defendants,

4    right?  And so my -- part of my point is maybe we need to

5    have third parties, but some of them may be defendants who

6    just should just not be severed from the case.

7         So that's just what I wanted to raise.

8              THE COURT:  All right.  Well, presumptively --

9    presumptively, Mr. Cooper, they would be severed so that we

10   have just the two PBMs, but if -- if you think they

11   shouldn't be severed and they should be left in, I would

12   hear from you at that point.

13             MR. COOPER:  We'll have to see the complaints

14   that are chosen --

15             (Unreportable crosstalk.)

16             MR. COOPER:  -- the bellwethers to understand

17   that.  I don't want to be premature.

18             THE COURT:  Well, that --

19             MR. FARRELL:  Judge, this is Paul Farrell

20   again.

21        We've addressed this same issue in every one of the

22   bellwethers for the past five years, so I'm confident at the

23   right time --

24             THE COURT:  Now, that has never been a

25   problem.  That always was a theoretical possibility, and the

1   plaintiffs understood it.  And if it turns out that we need

2   some of the existing defendants to stay in or some new ones

3   to be added, so be it.  But the idea is to make the case as

4   streamlined and focused as we can because the key litigants

5   are the two PBMs that we are trying to do here.  But if some

6   have some other defendants, that's fine.

7           Okay.  Thank you for bringing that up.

8           Have a good day, everyone.

9               (Proceedings concluded at 1:07 p.m.)

10

11

12                   **C E R T I F I C A T E**

13

14       I certify that the foregoing is a correct transcript

15   of the record of proceedings in the above-entitled matter

16   prepared from my stenotype notes.

17

                    */s/ Gregory S. Mizanin*          *August 31, 2023*
18                  GREGORY S. MIZANIN, RDR, CRR              DATE

19

20

21

22

23

24

25