# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| THIS DOCUMENT RELATES TO:<br><br>All Cases Listed on Attached Chart at Exhibit D | Master File No.<br>17-md-2804<br><br>Honorable Dan A. Polster |

**MEMORANDUM IN SUPPORT OF**
**MASTER MOTION FOR EXTENSION OF TIME**
**FOR THIRD PARTY PAYORS TO PRODUCE PLAINTIFF FACT SHEETS**
**AND CORRESPONDING DOCUMENTS AND DATA**

In support of the Master Motion by the Plaintiffs' Executive Committee ("PEC") for Extension of Time for Third Party Payors to Produce Plaintiff Fact Sheets and Corresponding Documents and Data, the undersigned, James R. Dugan, II, the Third Party Payor ("TPP") Chair on the PEC, submits this Memorandum.

## I. BACKGROUND

The TPPs' cases against certain defendants in this MDL, including the nine main non-bankrupt defendants, namely, Allergan/Actavis, Teva, and Janssen/J&J (the "Manufacturer Defendants"); Cardinal Health, Amerisource Bergen, and McKesson (the "Distributor Defendants"); and Walgreens, Walmart, and CVS (the "Pharmacy Defendants"), were either filed directly into this MDL or were filed elsewhere and then transferred into this MDL by the Judicial Panel on Multidistrict Litigation, some having been initially filed in state courts and removed to federal courts before being transferred. Some of the cases were initially filed as early as 2018.

Pursuant to the Court's April 11, 2018 Case Management Order No. 1 (ECF No. 232), as modified by its July 23, 2021 Case Management Order Applicable to Cases of "Non-Participating Subdivisions" Asserting Claims Against Settling Defendants (ECF No. 3795) ("[t]he stay shall remain in effect with respect to all other litigation activity (including discovery) until authorized by a subsequent CMO to be issued at an appropriate time after full compliance with this CMO"), the TPP actions were stayed, while the municipalities' and other entities' cases were afforded discovery, went to trial, and settled.  The undersigned filed a letter to the Court on August 3, 2021 (ECF No. 3812) requesting that the stay of the TPPs' cases be lifted.  Status Conferences related to the TPPs' cases, as well as those cases filed by hospitals and school districts, were thereafter held on November 29, 2021, March 23, 2022, May 23, 2022, July 27, 2022, October 24, 2022, and January 25, 2023.

Following the Status Conference held on February 24, 2023, the stay of the TPPs' cases was lifted by this Court's Bellwether Order, dated February 28, 2023 (ECF No. 4920), directing a bellwether process for the selection of certain TPPs' cases to be tried in order to inform the parties as to the strengths and weaknesses of their respective claims and defenses.  The Court directed the parties to meet and confer and attempt to develop an agreed-upon Plaintiff Fact Sheet ("PFS") to facilitate the bellwether selection process.

The parties met and conferred and, on March 22, 2023, agreed upon a form for the PFS, which is attached hereto as Exhibit A.  The PFS requires each TPP to answer a series of questions about itself and also to provide certain documents and data.

Specifically, Part III of the PFS requires each TPP to produce certain data related to the money it spent on certain opiates for its plan members during an agreed-upon time period.  The

2

first page of the Excel spreadsheet with the fields of "pharmacy data" for each of the drugs listed by over 20,000 NDC codes is attached as Exhibit B.[1]

Part III of the PFS also requires each TPP to produce the data related to the money it spent to treat those plan members diagnosed with Opioid Use Disorder ("OUD") during the agreed-upon time period. The Excel spreadsheet with the fields of "healthcare data" for each of the drugs listed by ICD-9 and ICD-10 codes is attached as Exhibit C.

All TPPs in this matter contracted with third parties, known as Pharmacy Benefit Managers ("PBMs"), that specialize in administering pharmaceutical claims. Many of the TPPs also contracted with medical benefit administrators, which are typically large health insurance companies, which themselves are also TPPs. Accordingly, most of the TPPs in this matter do not possess and control their own data. Instead, when needed, they must request the data from these third parties.

Finally, Part III of the PFS also requires that each TPP produce certain documents in addition to the data. The documents required are the Summary Plan Descriptions ("SPDs"), which describe the pharmaceuticals and treatments that the plan covers and the extent of that coverage, and the drug formularies, which list the drugs covered and at what "tier," meaning the level of co-pay required for the plan member. Often, the TPP is not in possession of past formularies, because they had been available to plan members through the PBM websites.

Per the Court's February 28 Order, not all TPPs with cases on file were required to complete a PFS. Rather, the Court directed that "Defendants shall identify *up to* ten potential bellwether cases per industry group, for a total of thirty cases. Plaintiffs shall identify *at least*

---

[1] A complete copy of the Excel spreadsheet can be provided to the Court, upon request. The parties and the Special Master are in possession of the complete Excel spreadsheet, which is quite voluminous.

three cases per industry group for a total of nine cases. [And, a little over three months later], Plaintiffs [were to] provide a PFS for each case identified by either party." *See* ECF No. 4920.

On March 22, 2023, plaintiffs sent a letter to the Court and the Special Master and copied defense counsel, setting forth the nine cases they chose – 3 for the Manufacturer Defendants group, 3 for the Distributor Defendants group, and 3 for the Pharmacy Defendants group - for which the TPP plaintiffs were to complete the PFSs.  The three defense groups together identified 30 cases on March 22, 2023.  Following plaintiffs' objection, on April 4, 2023, defendants complied with the Court's Order and submitted three sets of ten TPP cases – one set from each industry group – for which the TPP plaintiffs were to complete PFSs.  Those PFSs were originally due on June 23, 2023.

The PEC notified counsel for each selected TPP that their client had been selected to complete a PFS, and provided the form for the PFS and the Excel spreadsheets for the data.  Certain selected TPPs, for a variety of reasons, many related to the passage of time since the filing of their cases, began dismissing their cases, rather than complete the PFS and collect the required documents and data.  As the PEC learned of these dismissals, they so advised defense counsel and the Special Master.  Each time, the affected defendant group made new selections of TPPs to complete PFSs, to replace their originally selected, but dismissed cases.  The issue of these dismissals was a topic of discussion during the May 22, 2023 Status Conference.

On June 8, 2023, the Court issued its Order Regarding TPP Bellwether Process (ECF No. 5060), and directed that "[c]ounsel for all TPP plaintiffs shall promptly ask their clients if they are willing to serve as bellwether trial plaintiffs.  Those who answer 'no' may voluntarily dismiss their case ***without*** prejudice, on or before July 7, 2023.  After that date, if any TPP plaintiff is

4

chosen by a defendant as a potential bellwether case and then wishes to dismiss its case, the plaintiff must do so by motion; and the Court will enter dismissal *with* prejudice."

Following further dismissals of TPPs that had been selected to complete PFSs and the parties meeting and conferring on new dates for the bellwether selection process, the defendants urged the Court to order all TPPs with cases on file to complete PFSs. Plaintiffs agreed. As a result, on June 30, 2023, the Court issued its Order Amending TPP Bellwether Process (ECF No. 5097), requiring all TPPs that would not have dismissed their actions by July 7, 2023 to complete the agreed-upon PFS by September 5, 2023.

By our count, currently 92 TPPs are required to submit a PFS by September 5, or face dismissal with prejudice. This does not include 70 other TPPs, which are involved by virtue of being assignors of their claims to the MSP entities, with cases on file at Docket Nos. 18-op-45091, 18-op-45526, and 21-op-45079.[2]

Over the last few weeks, the PEC has received numerous emails from individual counsel for the TPPs, expressing concern about being able to meet the deadline, and often inquiring as to the proper procedure for requesting an extension. The most common reason articulated by those counsel for possibly not being able to comply by September 5, was that they were having difficulties obtaining the data from their third-party administrators. Because the PBMs had

---

[2] Based upon the complaints that the MSP entities filed, 62 assignor TPPs are represented by MSP Recovery Claims, Series LLP in the case with Docket No. 18-op-45091; two assignor TPPs are represented by MSPA Claims 1, LLP in the case with Docket No. 18-op-45526; one assignor TPP is represented by MAO-MSO Recovery II, LLC in the case with Docket No. 18-op-45526; four assignor TPPs are represented by MSP Recovery Claims, Series LLP in the case with Docket No. 18-op-45526; and one assignor TPP is represented by Series 17-03-615, a designated series of MSP Recovery Claims, Series LLC in the case with Docket No. 21-op-45079.

previously produced this type of data in this MDL *and* related to this specific bellwether process, the hope was that they would ultimately produce the data.

Once certain PBMs drew a line in the stand and said they would not produce the data without subpoenas, we reached out to the Special Master for guidance.  He advised that the TPPs should issue the subpoenas, which they have done or are in process of doing.  Upon receiving notice that one PBM, Optum, was objecting to the several subpoenas it had received for its TPP customers' pharmacy data and would not be producing the data by the deadline, the PEC again sought the Special Master's counsel, fearing many TPPs would not meet the deadline and could be facing dismissal with prejudice.  As a result of his further guidance, we file this motion seeking extensions for certain TPPs.

## II. DISCUSSION

As of the writing of this motion, 52 TPPs have obtained from their third-party administrators and produced to defendants 2,748 documents, via a secure FTP site, including pharmacy data, medical data, summary plan descriptions, and formularies.  Despite this due diligence, a material number of TPPs have been unable to obtain their own data from third parties,[3] and therefore, are unlikely to be able to complete their PFS obligations by the September 5, 2023 deadline set forth in the June 30 Order.  Others face different hurdles preventing them from meeting the deadline.  Therefore, on their behalf, the PEC seeks

---

[3] In the context of this motion, TPPs must note that while the PFS was "agreed-upon," the alleged need for all of these data and documents at this juncture, prior to the selection of the actual TPPs as bellwethers and the commencement of discovery, was at defendants' urging.  To the extent the Court questions why these data and documents are necessary for them to make their bellwether selections and strikes, we leave to defendants to articulate.  The PEC does not need them at this juncture.

extensions from the Court, and requests that the Court not impose on these TPPs the penalty of dismissal with prejudice.

So that the Court can assess whether to grant these extensions, and because each TPP's situation, and reasons for needing an extension, are different, we attach a chart listing those TPPs, along with corresponding individual case numbers and counsel, and listing the information they have been unable to obtain by category signified by one or more code numbers listed below, with the corresponding personalized reason(s) that each extension is needed (which reasons were provided to the undersigned by individual TPP counsel).  The chart is attached as Exhibit D.

The information categories for the code numbers included in the chart are:

1. Unable to complete the PFS

2. Unable to make a substantial production of pharmacy data (per Exhibit B)

3. Unable to produce "total amount billed" field of the pharmacy data (columns included on the Exhibit B)

4. Unable to make a substantial production of medical healthcare data (per Exhibit C)

5. Unable to produce any formularies

6. Unable to produce any Summary Plan Descriptions ("SPDs")

We seek only a two-week extension for the TPPs who have yet to upload their PFSs.  As to those that either have served or are poised to serve subpoenas upon their administrators to obtain the data, we do not request a specific time period for the extension, because we do not know how long it will take for the administrators to produce the data and note that motion practice may be involved.  As detailed below, we ask that those TPPs act diligently to issue and serve subpoenas, if not already served, and where already served, that they file motions to enforce, following good faith efforts to reach agreed-upon solutions with counsel for the

administrators.  As to those with other unique situations, we leave to the Court to determine the length of time for the extension which those TPPs should receive, if any.

### III. CONCLUSION

For all of the foregoing reasons, the Plaintiffs respectfully request that this Court enter an order:

(1) Allowing a two-week extension for those TPPs that are unable to produce completed Plaintiff Fact Sheets by September 5, 2023, such that they would now be due on or before September 19, 2023;

(2) Allowing those TPPs that have been unable to obtain data and documents from third-party administrators the needed time for the administrators to produce the data, and if necessary for the TPPs to engage in motion practice on subpoenas, and/or to engage in good faith and diligent meet and confers with counsel for the administrators to obtain the documents and data, without facing possible dismissal with prejudice of their cases, unless and until further Order of this Court; and

(3) Granting whatever relief in terms of extensions that the Court deems appropriate for those TPPs otherwise unable produce the documents and data required by the Plaintiff Fact Sheets.

Dated: September 1, 2023						Respectfully submitted,

<u>/s/ James R. Dugan, II</u>
James R. Dugan, II
David S. Scalia
TerriAnne Benedetto
**THE DUGAN LAW FIRM, APLC**
One Canal Place – Suite 1000
365 Canal Street
New Orleans, LA 70130
Tel: (504) 648-0180
jdugan@dugan-lawfirm.com
dscalia@dugan-lawfirm.com
tbenedetto@dugan-lawfirm.com

*Member of the Plaintiffs' Executive Committee and Third Party Payor Chair*

9

## CERTIFICATE OF SERVICE

  I, James R. Dugan, hereby certify that this document was electronically filed with the Clerk of the Court for the Northern District of Ohio by using the CM/ECF System, which will provide notification of such filing on all registered CM/ECF users and electronic copies will be sent to those indicated as non-registered ECF participants on this 1st day of September, 2023.

Dated: September 1, 2023          */s/ James R. Dugan*
                        James R. Dugan