**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No. 1:17-MD-2804 |
| *APPLIES TO ALL CASES* | Hon. Dan A. Polster |

**PLAINTIFFS' RESPONSE TO KROGER'S OBJECTION TO SPECIAL MASTER COHEN'S DISCOVERY RULING REGARDING TUCKER DEPOSITION**

**Introduction**

Plaintiffs seek from Frances Tucker relevant, non-privileged testimony that is crucial to the preparation of its case and which cannot be obtained from any other source, and thus the Special Master correctly denied Kroger's request for a protective order seeking to preclude her deposition. Kroger internal documents and testimony from Kroger personnel make clear the unique and prominent role Ms. Tucker played in Kroger's pharmacy compliance system for business purposes. As the Special Master found, "[t]he bellwether cases cannot fairly be tried" without deposition discovery of Ms. Tucker. *See* Doc. #: 5146 ("Cohen Ruling").

Ms. Tucker was a founding member of Kroger's Pharmacy Compliance Committee (PCC). The PCC is directly responsible for the management and oversight of Kroger's Pharmacy Compliance Program, and its responsibilities include "controlled substance compliance."[1] Ms. Tucker is not a vital deponent merely due to her founding member status on the PCC, but because of her deep and exclusive involvement in controlled substance compliance matters that she handled on behalf of Kroger and to which she reported on to the PCC. Further, Ms. Tucker is the only potential Kroger deponent whose email files were *not* subject to Kroger's draconian policy that automatically deleted emails after 30 days, making her the most robust

---

[1] Ex. 1, Pharmacy Compliance Committee Charter, Kroger-MDL0059248.

1

source of information for the earlier relevant time period.  Deposing Ms. Tucker, using the reasonable guardrails ordered by Special Master Cohen, is the only way Plaintiffs can discover the facts behind her high level involvement in Kroger's controlled substance compliance operation.

As a final preliminary matter, Plaintiffs point out that a deposition of Ms. Tucker is a reasonable and natural consequence of Kroger involving its in-house counsel on so many non-privileged matters.  While it has become clear that Kroger did this, at least in part, in order to cloak various critical facts under an imagined veil of privilege, it does not serve as a valid basis for preventing Ms. Tucker's deposition.[2]

## **Procedural and Factual Background**

On September 22, 2021, Kroger responded to a discovery request seeking "… all minutes of Your Board of Directors meetings (including committees and subcommittees) from 1996 to the present that refer to: (a) Opioids, diversion, Suspicious Order Monitoring, Due Diligence …" by stating that it had ███████████████████████████████████████

████████████████████[3]  In January of 2022, Kroger identified the PCC Minutes on a privilege log in the New Mexico Attorney General litigation.  New Mexico successfully challenged Kroger's privilege assertion, and the documents were ordered to be produced in New Mexico. Subsequently, MDL Plaintiffs filed a motion with Special Master Cohen pursuant to DR-22 to compel Kroger to produce the PCC Minutes into the MDL.  Kroger ultimately capitulated and produced the PCC Minutes into the MDL in October 2022, shortly before the discovery stay went into effect.

---

[2] Ex. 2, Kroger-MDL00224878 ████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

Ex 3, Request for Production No. 2 from CT7.

The PCC Minutes produced in October 2022 were 140+ pages of quarterly meeting minutes that documented the discussions of the PCC on a variety of compliance matters.[4] Topics routinely presented on and discussed at the meetings included Compliance Hotline, Procurement and Supply Chain, Controlled Substances, and Compliance Training. The Minutes disclosed to Plaintiffs the existence of highly relevant national-level Kroger personnel who had not been designated as document custodians by Kroger. The Minutes also made clear the deep and exclusive involvement Kroger's in-house counsel Frances Tucker had in compliance matters that primarily served a business function.

In April of 2023, once the discovery stay had lifted, Plaintiffs requested custodial files and depositions of six national-level current and former Kroger personnel on the basis of the late-produced PCC Meeting Minutes. After multiple conferences between the parties, Kroger ultimately agreed to produce the custodial files of four of the six witnesses, but not Ms. Tucker. Plaintiffs then dropped their request for one custodial file, and moved to compel the production of Ms. Tucker's file.[5] Special Master Cohen granted Plaintiff's motion, finding that "Ms. Tucker was intimately involved in controlled substance policies that relate directly to the central issues in this case."[6]

On June 6, 2023, while the matter of Ms. Tucker's custodial file was being briefed, Plaintiffs served Kroger with deposition notices for the depositions of the same six individuals for whom it had requested custodial files. After originally objecting to all depositions, Kroger eventually agreed to four of the six depositions.[7] On July 5, 2023, Kroger moved for a protective

---

[4] Ex. 4, Chronological Composite Pharmacy Compliance Committee Meeting Minutes.
[5] Ex. 5, Plaintiff's Motion to Compel Production of Custodial File of Frances Tucker Using Kroger National Search Terms, June 2, 2023 (motion only).
[6] Ex. 6, Special Master Cohen's Email Ruling on Plaintiff's Motion to Compel Production of Frances Tucker's Custodial File, June 28, 2023.
[7] The depositions of Lincoln Lutz occurred on August 31, and the depositions of Philecia Avery, Nick Gonzales, and Martha Sarra are scheduled to be completed by September 19.

order regarding the depositions of Ms. Tucker and the sixth individual.  Plaintiffs dropped their request for the deposition of the sixth individual and opposed the motion for a protective order in regards to Ms. Tucker.  Special Master Cohen denied Kroger's request for a protective order, finding that Plaintiffs request for Ms. Tucker's deposition complied with the *Shelton* Rule, and that a deposition of Ms. Tucker was required to ensure a fair trial. Kroger has filed an Objection to that Order, and Plaintiff responds herein.

### Discovery From and Of Kroger

The document production numbers provided by Kroger in its Objection were stale.  As of August 20, the day before Kroger filed its Objection, Kroger had produced approximately 55,825 documents into the MDL.  More than 10% of those documents, approximately 5,795, were from the custodial file of Frances Tucker.[8]  Most important to the instant issue, 1,653 emails involve Ms. Tucker as an author, and over 1,500 of Ms. Tucker's documents do not include any other member of the PCC who could be questioned about the documents.  Ms. Tucker is a unique and necessary deponent due to her being the only person who can provide direct testimony regarding these documents.  Of course, Ms. Tucker is also the best witness to provide testimony regarding her statements in the remaining documents that do include other PCC members.

Further, the depth of Ms. Tucker's documents from a temporal perspective is noteworthy. The pre-2014 documents produced by Kroger overwhelmingly come from the custodial file of Ms. Tucker, because her documents were not subject to Kroger's 30 day purge policy that caused the documents of other custodians to be automatically deleted after 30 days unless they took specific actions to preserve the documents.

Kroger's Objection also inflates the robustness of the discovery to which it has been subjected.  Included within the approximately 34 depositions of Kroger personnel are

---

[8] Approximately 2,000 *additional* documents from Ms. Tucker's custodial file have been produced since August 20.

jurisdiction-specific depositions taken in the New Mexico[9] and West Virginia Attorneys General actions, as well as local witness relevant primarily to CT7, CT8, CT9, or CT10.  Some Kroger compliance personnel have been deposed more than once due to Kroger's decision to designate fact witnesses to sit for 30(b)(6) depositions, and due to the aforementioned state court litigations.  MDL depositions of Kroger did not commence until summer of 2022, and the number of corporate level depositions taken of Kroger is far fewer than of other pharmacy defendants Walgreens, CVS, and Walmart.

### Plaintiff's Intent

Contrary to Kroger's assertion, Plaintiffs do not seek privileged information from Ms. Tucker, and Plaintiffs have gone to great lengths to make this clear.  In fact, Plaintiffs on their own accord reached out to Kroger and offered to forego production of years-worth of documents from Tucker's custodial file to eliminate the possibility of potentially privileged material being produced.  On a July 11, 2023 meet and confer, Kroger confirmed it intended to produce documents from Ms. Tucker's custodial file through May 19, 2021.  Plaintiffs, however, affirmed that it was "not interested in receiving documents (or testimony) from Ms. Tucker related to any involvement she may have had with litigation strategy or defense of the instant opioid litigation," and offered to set an end date for the production of her custodial file that was substantially earlier than Kroger's intended date of May 2021.[10]  Plaintiffs voluntarily agreed to an end date of March 9, 2017, the date Kroger represented Tucker first communicated about the instant opioid litigation.  Plaintiffs' willingness to forego more than four years-worth of documents from Ms. Tucker's custodial file is telling of the purity of their intentions.

---

[9] Eleven Kroger depositions, nearly a third of the total touted by Kroger, were taken in the New Mexico Attorney General action.

[10] Ex. 7, Gaddy Email to Lorensen, July 12, 2023.

Plaintiffs have zero interest in learning about attorney client privileged or work product information related to this case.  What Plaintiffs need are the historical facts and circumstances that are unique to Ms. Tucker, or about which only Ms. Tucker has the appropriate foundation to provide testimony.

Kroger is also wrong when it explicitly and implicitly implies throughout its objection that Plaintiffs merely seek to question Ms. Tucker regarding the PCC.  Plaintiffs have repeatedly expressed that the PCC Minutes are illustrative of Ms. Tucker's unique and highly relevant conduct *outside of the PCC* that she would then return and report on to the PCC.  ████

████████████████████████████████████████████████████████████████████

████████████████████  (Ex. 1).  Each member of the Committee has their own areas of expertise as well as different areas in which they are tasked with handling and then reporting on to the Committee.  This, of course, is why multiple members of the PCC have been deposed already and why more will be shortly.  Depositions of PCC members are not taken to ask about the structure or generalities of the PCC, but to discover the specific subject matters and tasks that each separate member is charged with knowing and performing for the benefit of the PCC as a whole.  The same is true for Ms. Tucker, as to her unique and exclusive responsibilities.

**Legal Standard**

As stated by the Sixth Circuit, "there is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information".  *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (citation omitted).  Indeed, cases within the 6th Circuit support discovery of counsel when, such as herein, the

discovery is shown to be not otherwise reasonably obtainable, and it does not seek information

on litigation strategy in the pending case.[11]

Consistent with these principles, the Sixth Circuit employs a three-part "Shelton test" to

determine if a deposition of opposing counsel should be allowed.  The *Shelton* test holds that

"[d]iscovery from an opposing counsel is 'limited to where the party seeking to take the

deposition has shown that (1) no other means exist to obtain the information . . . ; (2) the

information sought is relevant and nonprivileged; and (3) the information is crucial to the

preparation of the case.'"  *Nationwide Mut. Ins. Co. v. Home Ins.* Co., 278 F.3d 621, 628 (6th

Cir. 2002) (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).  As

correctly determined by Special Master Cohen, "Plaintiffs meet all three prongs of this test, so

the deposition should be allowed".  *See* Cohen Ruling at 3.

## Law and Argument

Plaintiffs have met their burden under *Shelton* to show that the deposition of Ms. Tucker

is appropriate and necessary in this MDL litigation.  A deposition of Ms. Tucker is the only

method available to Plaintiffs to discover the details of (as well as her intimate involvement in)

various Kroger controlled substance compliance matters.  These matters on which Ms. Tucker

will be questioned are undoubtedly relevant, and go to the heart of Plaintiffs case.  Further, the

topics at issue are non-privileged as evident by Kroger's production of thousands of documents

from Ms. Tucker's custodial file without any claim of privilege, and by rulings from the Special

---

[11] *See, e.g., J&R Passmore, LLC v. Rice Drilling D, LLC*, 2023 WL 2633671, at *5 (S.D. Ohio Mar. 24, 2023) (allowing discovery of litigation counsel because opposing parties "do not seek information that would expose litigation strategy in the pending case"); *Pitzer v. Cinmar, LLC*, 2016 WL 7325158, at *2 (N.D. Ohio Dec. 16, 2016) (allowing deposition of prior counsel after showing a legitimate need for the information which could not otherwise be obtained); *Cheesemore v. Alliance Holdings, Inc.*, 2011 WL 4458782 (N.D. Ohio Sept.23 2011) (allowing deposition of opposing counsel to the extent that the questioning related to their prior role as transactional counsel and not their current role as litigation counsel).

Master and the Court on privilege challenges regarding documents from Ms. Tucker.  Finally, the information to be obtained from Ms. Tucker is crucial to the preparation of Plaintiffs case.

### A. No Other Means Exist to Obtain the Information Plaintiffs Seek from Ms. Tucker

The PCC Minutes make clear Ms. Tucker's intimate and exclusive involvement in Kroger controlled substance compliance matters.  Contrary to Kroger's assertion that Ms. Tucker is a mere bystander whose only role is to provide legal advice, the PCC Minutes alone show that Ms. Tucker is an active member of the Committee who routinely made affirmative presentations on the continual topic of "Controlled Substances". (*See* Ex. 4 at 6, 9, 14, 17, 20, 23, 29, 33, 38, etc.).  Her subject matter expertise allowed her to make presentations on Kroger's CSA duties as a distributor (Ex. 4 at 6), to spearhead review of Kroger's controlled substance policies and procedures (Ex. 4 at 9), to facilitate the identification of outlier Kroger pharmacies regarding dispensing of controlled substances (Ex. 4 at 20); to report on Kroger's policy of refusing to fill prescriptions for certain prescribers (Ex. 4 at 24), and to warn that some Kroger pharmacists

(Ex. 4 at 60).  It is unremarkable that Special Master Cohen commented that "the PCC minutes reveal that Ms. Tucker was intimately involved in controlled substance policies that relate directly to central issues in this case" when he ruled that her custodial file must be produced.  (Ex. 6).

One highly relevant area in which Ms. Tucker has unique knowledge is in Kroger's corporate-level monitoring of controlled substance dispensing from Kroger stores.  In 2012 Kroger became aware of DEA action against Cardinal Health regarding

(Ex. 4, at 6).  This was significant to Kroger because Cardinal Health was Kroger's outside vendor who supplied Schedule II drugs to Kroger pharmacies.  The May 23,

2012, PCC Minutes state that Ms. Tucker ███████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████ (*Id.*).  A document recently produced from Ms. Tucker's custodial file confirms that

Ms. Tucker was in fact the drafter and negotiator of a service agreement with Cardinal Health

which calls for Cardinal Health to ███████████████████████████████████████████

████████████████████████████████████████████[12]  At the December 2012 PCC

Meeting Ms. Tucker reported that ████████████████████████████████████████████

█████████████████████████████████████████ (Ex. 4, at 14).

 It is understood by Plaintiffs that the reports Ms. Tucker collaborated on with Cardinal

Health were 9-Box Reports.  Kroger self-describes a 9-Box Report as a ██████████████████

████████████████████████████████████████████████████████████████████████████

█████████████████████████  Appearance on a 9-Box Report is not a trivial manner, as it

subjects the offending pharmacy to a "professional audit" of their controlled substance

dispensing, and requires the pharmacy to indefinitely complete formal documentation every time

they fill certain controlled substance prescriptions.  (*Id.*).

 While Kroger's description makes clear that 9-Box Reports identify outlier pharmacies

based on the ratio of dosage units of certain opioids to total prescription count, it is unclear what

ratio is required to trigger the inclusion of a Kroger pharmacy on a 9-Box Report, or what input

Kroger had into determining the trigger.  Visually, the 9-Box Reports (example below) includes

a line below which pharmacies are deemed to have an acceptable ratio of controlled substance

dispensing, and therefore are not flagged.  Kroger's 30(b)(6) designee on dispensing topics was

---

[12] Ex. 8, Kroger-MDL00222888 (Lincoln Lutz is the only other Kroger personnel included on this email. ████████
████████████████████████████████████████████████████████████████████
Ex. 9, KrogerMDL0002558, at 2563

asked about this line and Kroger's understanding of the ratio that is used to generate the line that

causes certain pharmacies to be flagged and others to be cleared.  Kroger's corporate designee's

response was ███████████████████████████████████████████████████

██████████[14]



Ms. Tucker is the one individual at Kroger who negotiated the contract with Cardinal

Health in which Kroger assigned out the task of analyzing controlled substance dispensing at

Kroger pharmacies and the identification of "outlier" Kroger pharmacies.  Ms. Tucker remained

close to this issue, as in June 2015 she was the one who reported to the PCC that ████████████

████████████████████████████████████████████████████████████

██████████████████████████ (Ex. 4, at 60).  Kroger's

understanding of what criteria and benchmarks were being used for such analysis and

identification of outlier pharmacies, including any requests or input regarding such criteria or

benchmarks offered by Kroger is fertile ground for discovery in this matter.  Plaintiffs have made

claims that Kroger inadequately monitored its controlled substance dispensing. A deposition of

---

[14] Ex. 10, 30(b)(6) Deposition of Kroger Regarding Substantive Dispensing Issues, February 22, 2022, 366:1-367:5.

the one Kroger employee who literally drafted the agreement to outsource that function is the only method available to Plaintiffs to discover this area at the heart of Plaintiffs' case.

Kroger pharmacy executives agree that Ms. Tucker is a significant player.  In a recent deposition of former Harris Teeter[15] Director of Pharmacy Lamar Hardman, Mr. Hardman testified about a 2014 Kroger Pharmacy Conference he and other Kroger pharmacy executives attended.  A document summarizing the conference noted interaction between Mr. Hardman and Ms. Tucker about the form required to be utilized by pharmacies who ever appeared on a 9-Box Report.[16]  While Mr. Hardman was unable to remember the details of the breakout session where this form was discussed with Ms. Tucker, he did recall that Ms Tucker was ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████[17]  This occasion further exemplifies Ms. Tucker's outsized role in Kroger's controlled substance compliance efforts, and further highlights the necessity of her deposition.

Ms. Tucker is also a unique deponent due to the fact that her custodial documents were not subjected to Kroger's draconian email deletion policy that caused every other Kroger employee to have their emails automatically deleted after 30 days, absent extenuating circumstances.  As highlighted above, a substantial number of documents from Ms. Tucker have already been produced, and they are continuing to be produced.  Kroger argues that her documents "can generally be found elsewhere" (Objection at 12), and that upcoming deponents could testify about her documents.  Kroger's citation to their prior briefing arguing that Ms. Tucker's documents can be found elsewhere is quite rich seeing as Special Master Cohen

---

[15] Harris Teeter is a wholly owned subsidiary of Kroger, and operates stores in Durham County, NC (CT10)
[16] Ex. 11, KrogerMDL00002571.
[17] Ex. 12, Deposition of Lamar Hardman, June 21, 2023, 218:18-221:14.

previously expressed "real doubt on Kroger's assertions about the nature and provenance" of certain exemplar documents from Ms. Tucker it claimed could be found elsewhere.  (Ex. 6). Some of Ms. Tucker's documents may be used with upcoming deponents because some of her documents include correspondence with the upcoming deponents not produced in their individual custodial files.  However, with any such documents where Ms. Tucker is the author, she of course is the best witness to question.

There are also many documents to which Ms. Tucker is truly unique.  Many of Ms. Tucker's custodial documents have her as the only PCC member author or recipient, and do not include any of the upcoming deponents.  For example, there is a 3/7/2011 email chain between Ms. Tucker (as the only Kroger representative) and the DOJ (Loren Miller), where Ms. Tucker is requesting information relative to controlled substance prescriptions.[18]  Notably, Ms. Tucker states in her email that ███████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████  *Id*. at p. 2 (emphasis added).  There are other examples of highly relevant emails involving various third parties (e.g., Buzzeo, Cardinal) and *only* Ms. Tucker.[19]  Moreover, there are many emails where Ms. Tucker is the primary Kroger representative with knowledge and/or responsibility, and where no other upcoming deponent is involved.[20]  A deposition of Ms. Tucker is the only method available for Plaintiffs to obtain discovery on this highly relevant set of documents.

> **B.     The Information Plaintiff Seeks from Ms. Tucker is Relevant and Nonprivileged**

---

[18] Ex. 13, Kroger-MDL00207605.
[19] Ex. 14, Kroger-MDL00254564 and Kroger-MDL00255677.
[20] Ex. 15, Kroger-MDL00227551; Kroger-MDL00254587; and Kroger-MDL00254608.

The material Plaintiffs seek to discovery from Ms. Tucker is relevant, and Kroger does not even attempt to argue otherwise. Ms. Tucker was at the heart of Kroger's controlled substance compliance operation, and the topic areas discussed *supra* on which Ms. Tucker would be questioned go to the core issues of the case. Ms. Tucker played important roles in matters that impact Plaintiffs distribution *and* dispensing claims.

As an example on the distribution side, Kroger learned in 2013 that it needed to obtain VAWD accreditation in order to continue distributing controlled substances into several states. In order to achieve VAWD accreditation, a distributor must have a compliant SOMS system. In early 2013 Ms. Tucker spearheaded the effort to obtain an outside audit of Kroger's SOMS system which resulted in a finding that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[21] In response to that finding, Kroger began scrambling to implement a SOMS, and Ms. Tucker was involved in each step along the way. More than being a mere participant on the team charged with implementing the SOMS to gain VAWD accreditation, Ms. Tucker was in charge of the operation. When a senior Kroger employee was providing an update about VAWD compliance, he stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[22] The process in which Ms. Tucker made the business decision about whether or not Kroger was compliant with accreditations required to distribute controlled substances is relevant and non-privileged, and therefore ripe for questioning.

On dispensing matters, Ms. Tucker has relevant testimony to provide regarding her work on corporate level monitoring of controlled substance dispensing, on Kroger's policy of refusing to fill prescriptions for certain prescribers, and her position that some Kroger pharmacists ▮

---

[21] Ex. 16, KrogerSmithNMAG00013075.
[22] Ex. 17, Kroger-MDL00156124.

██████████████████████████████████████████████ when it comes to controlled

substance dispensing.  (Ex. 4, at 60).  These topic areas are primarily business related and deal

directly with Kroger's compliance efforts, and therefore are non-privileged.

Kroger has produced thousands of documents from Ms. Tucker's custodial file without

making any claim of privilege, and its privilege claims over others have been rejected by the

Court.  (*See* Doc. #: 5053, overruling all but 1 of Kroger's privilege claims challenged by

Plaintiffs).  Despite the fact that Plaintiffs have repeatedly pointed to some of these non-

privileged documents from Ms. Tucker's custodial file that it wishes to question Ms. Tucker

about, Kroger inexplicably argues that Plaintiffs have not shown that they seek to question Ms.

Tucker about non-privileged matters.  As made clear when voluntarily giving up four years of

documents from Ms. Tucker's custodial file so as to limit the possibility of questioning on

privileged information, Plaintiffs reiterate once again it has no intention of questioning Ms.

Tucker regarding her true work product or any litigation strategy, including any involving this

litigation.  Plaintiffs intend to question Ms. Tucker regarding the facts and circumstances

previously outlined in the extensive briefing related to Ms. Tucker, and the non-privileged

documents produced from her custodial file or on which she is included.

Kroger's repeated mis-characterizations of Plaintiffs' intentions do not change reality.

Plaintiffs are most interested in the facts which Ms. Tucker uniquely possesses.  Moreover, any

of her "mental impressions" which Plaintiffs would seek are those involving *non-privileged*

*matters*, not those regarding litigation strategy (in this or any other matter).  As previously found

by the Court relative to Ms. Tucker's materials, "very little of Kroger's production, even

considering the late-filed declarations and exhibits, contained privileged legal advice of counsel

14

that could not have been given by a non-lawyer or provided without consulting legal authorities or applying legal principles." *See* Doc. #: 5053 at 10.

Further, the guardrails imposed by SM Cohen are appropriate and do not usurp Plaintiffs' satisfaction of the *Shelton* requirements.  On the contrary, the time limitation imposed on the deposition and the fact that SM Cohen will rule on objections as they are made will serve to focus the questioning of Ms. Tucker to matters where privilege challenges are less likely to be raised.  Plaintiffs have met their burden by repeatedly citing unique and non-privileged matters on which their questioning of Ms. Tucker will be directed.

**C.  The Information to be Obtained from Ms. Tucker is Crucial to the Preparation of the Case in This MDL**

As detailed above as well as in previous briefing, Ms. Tucker has unique documents, roles, and insight relative to critical matters in this litigation.  Based on Ms. Tucker's extensive involvement in Kroger's distribution and dispensing compliance apparatus, Special Master Cohen correctly found that "she has extensive, intimate knowledge of the formation and evolution of Kroger's policies that are at the very core of this litigation."  (Cohen Ruling, at 3). Contrary to Kroger's assertion, Plaintiffs are not looking for "a different opinion" out of Ms. Tucker.  Instead, Plaintiffs intend to question Ms. Tucker about controlled substance compliance matters that she led, controlled, or decided.

In many cases Ms. Tucker is the direct source of information, and the most appropriate witness to provide testimony regarding different aspects of Kroger's controlled substance compliance functions.  (*See, e.g.*, Ex. 15).  Ms. Tucker is the one individual who liaised with an outside vendor to secure an audit of Kroger's SOMS (Ex. 14), is the only Kroger employee who worked with Cardinal Health on a contract to outsource the monitoring of Kroger pharmacies controlled substance dispensing (Ex. 8), was Cardinal's primary point of contact and resource for

15

follow-up on SOM problems (Ex. 14), and appears to be primary source for Kroger's understanding of DEA's expectations of pharmacies and wholesalers obligations under the CSA (Ex. 4, at 6), (Ex. 13).

Kroger focuses in its Objection on Kroger's Controlled Substance Documentation (CSD) form, and claims it is "speculative" that Ms. Tucker would be able to provide crucial, non-privileged testimony on that topic.  But as is covered herein, Ms. Tucker is the Kroger compliance employee who drafted the service agreement to contract with Cardinal Health to identify outlier pharmacies which are the ones required to complete the CSD form.  (Ex. 8).  Ms. Tucker's self-serving statements in her declaration disclaiming any memory of pertinent events do not pass muster, and should be rejected, including because the newly obtained documents from her custodial file would be used to refresh her recollection.  Some of the SOMS topics on which Plaintiffs intend to question Ms. Tucker involve compliance matters in which Kroger was at risk of being hit with tens of millions of dollars in fines.  In one exchange, Ms. Tucker responds with ███████████████████████████████████████████████ ████████████████████████████████████████[23]  The reaction is understandable, as Ms. Tucker had personally been provided with an audit of Kroger SOMS just 3 months earlier that found ███████████████████████████████ (Ex. 16).  The suggestion that these were insignificant events about which Ms. Tucker has no memory should be rejected, or at the very least tested through the deposition ordered by Special Master Cohen.

Kroger also claims that such questioning cannot be crucial because many witnesses have been questioned about the CSD form.  This statement by Kroger is, at best, disingenuous.  No

---

[23] Ex. 18, Kroger-MDL00156136.

Kroger witness has been able to testify about the origin of the CSD form,[24] and witness after witness listed in Kroger's Objection has disclaimed knowledge about the background and scope of the form.[25] The testimony Plaintiffs seek from Ms. Tucker is unique and crucial.

### D. Kroger's Proposal that Its Request Should be Held in Abeyance Is Untimely, Not Well Taken, and Should be Denied.

As a preliminary matter, Kroger has not previously raised this argument, and it should be rejected on this basis alone. Moreover, there is no merit to Kroger's claim that "production of Attorney Tucker's custodial file is ongoing" and whether it "reflects 'crucial' information (under Prong 3) remains to be seen". *See* Kroger Obj. at 19. While there may be additional documents produced from her custodial file, the 7,000+ Tucker custodial documents already produced make clear that she is a critical witness with unique knowledge. Further, as outlined above, most of these 7,000+ documents have been produced without any claim of privilege, and many either include Ms. Tucker as the author (making her the best witness for same) and/or do not include any of the other 4 national deponents (making her the only witness for same).



[24] *See* Ex. 19, 30(b)(6) Deposition of Kroger Regarding Substantive Dispensing Issues, 353:24-354:6

*See e.g.* Deposition Testimony of Brenda Barnes, 153:14-22
Jeff Loesch, 305:16-22

Lamar

Hardman 208:8-11
; Ryan Davis, 68:10-69:7

April Henry, 264:20-22
Jonathan

Rivers, 161:14-18
and Shannon Gooden,

272:16-22

**CONCLUSION**

Based on the foregoing jurisprudence, reasoning, and argument, Kroger's Objection to Special Master Cohen's Discovery Ruling Regarding Tucker Deposition should be overruled.

Dated:  September 5, 2023

Respectfully submitted,

/s/Jeff R. Gaddy

Jeff R. Gaddy
Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr, and Mougey, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
Tel.: 850-435-7068
Fax: 850-436-6068
jgaddy@levinlaw.com

*Attorney for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of September, 2023, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.


*/s/ Jeff R. Gaddy*
Jeff R. Gaddy