UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**OPTUMRX, INC. AND EXPRESS SCRIPTS, INC.'S
MEMORANDUM OF LAW SUPPORTING THEIR
<u>MOTION TO DISQUALIFY SPECIAL MASTER COHEN</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 3

LEGAL STANDARD ................................................................................................................. 8

ARGUMENT ............................................................................................................................... 9

I.       SPECIAL MASTER COHEN MUST BE DISQUALIFIED BECAUSE A REASONABLE OBSERVER WOULD QUESTION HIS IMPARTIALITY. ............................................................................................................ 9

      A.     Special Master Cohen's comment that claims against the PBMs' affiliated mail-order pharmacies would show that the PBMs "knew a lot" would lead a reasonable observer to question his impartiality. ....................... 9

      B.     Special Master Cohen's recommendation that four bellwethers are needed to achieve a "global resolution" would also lead a reasonable observer to question his impartiality. ........................................................... 11

      C.     Special Master Cohen's affidavit does not change the outcome. ........................... 13

II.      THIS COURT'S OVERSIGHT OF SPECIAL MASTER COHEN DOES NOT CHANGE THE OUTCOME UNDER § 455(A). .................................................... 14

CONCLUSION .......................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*City of Portsmouth v. Purdue Pharma, L.P. et al.*,
   No. 1:19-op-45856-DAP (N.D. Ohio), Dkt. 54 (Short Form for Supplementing
   Complaint and Amending Defendants dated Dec. 29, 2019) ................................................4

*Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*,
   508 U.S. 602 (1993).........................................................................................................15

*County of Webb v. Purdue Pharma, L.P., et al.*,
   No. 1:18-op-45175-DAP (N.D. Ohio), Dkt. 1 (Complaint dated Jan. 25, 2018)..............................4

*Frederick County, Virginia v. Mallinckrodt PLC, et al.*,
   No. 1:20-op-45233-DAP (N.D. Ohio), Dkt. 1-2 ................................................................11

*Guardian Pipeline, LLC v. 950.80 Acres of Land*,
   525 F.3d 554 (7th Cir. 2008)...............................................................................................9

*In re Aetna Cas. & Sur. Co.*,
   919 F.2d 1136 (6th Cir. 1990) (en banc) .......................................................................1, 14

*In re Kempthorne*,
   449 F.3d 1265 (D.C. Cir. 2006) ........................................................................................14

*In re Nat'l Prescription Opiate Litig.*,
   No. 1:17-MD-2804, 2019 WL 4686815 (N.D. Ohio Sept. 26, 2019)................................11

*In re Nat'l Prescription Opiate Litig.*,
   No. 19-3935, 2019 WL 7482137 (6th Cir. Oct. 10, 2019)...................................... 10, 11, 12

*Jefferson County v. Dannie E. Williams, M.D., et al.*,
   Case No. 20JE-CC00029 .....................................................................................................4

*Liljeberg v. Health Servs. Acquisition Corp.*,
   486 U.S. 847 (1988).......................................................................................................2, 13

*Roberts v. Bailar*,
   625 F.2d 125 (6th Cir. 1980) ...............................................................................................9

*Smith v. ABN AMRO Mortg. Grp.*,
   434 F. App'x 454 (6th Cir. 2011) ......................................................................................12

*Teamsters Health Servs. & Ins. Plan Loc. 404 v. Purdue Pharma, LP, et al.*,
   No. 1:18-op-45001 (N.D. Ohio Nov. 28, 2017)...................................................................3

*United States v. Antar*,
  53 F.3d 568 (3d Cir. 1995) ...................................................................................................11

*United States v. Liggins*,
  76 F.4th 500 (6th Cir. 2023) ......................................................................................... 10, 13

*United States v. Microsoft Corp.*,
  253 F.3d 34 (D.C. Cir. 2001) ...............................................................................................11

*Ward v. Monroeville*,
  409 U.S. 57 (1972) ...............................................................................................................15

*Williams v. Pennsylvania*,
  579 U.S. 1 (2016) .................................................................................................................13

**RULES**

Fed. R. Civ. P. 53(a)(2) .................................................................................................1, 9, 14, 15

**STATUTES**

28 U.S.C. § 455(a) ................................................................................................................ passim

**OTHER AUTHORITIES**

Press Release, "FTC Launches Inquiry Into Prescription Drug Middlemen Industry" (June 7, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-launches-inquiry-prescription-drug-middlemen-industry; ..................................................................14

Statement of Snezana Mahon, United States Senate Committee on Health, Education, Labor and Pensions (Feb. 27, 2018),
  https://www.help.senate.gov/imo/media/doc/Mahon.pdf ............................................................14

# INTRODUCTION

"Any justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). The rule is mandatory: "[R]ecusal is required when a reasonable person would harbor doubts about the judge's impartiality." *In re Aetna Cas. & Sur. Co.,* 919 F.2d 1136, 1143 (6th Cir. 1990) (en banc). The rule applies equally to special masters. Fed. R. Civ. P. 53(a)(2).

Disqualification of Special Master Cohen is required because he recently sent an email to the parties and this Court's clerk that would lead any reasonable observer to question his impartiality. On August 28, 2023, Plaintiffs and OptumRx and Express Scripts (two pharmacy benefit managers or PBMs) emailed status reports to Special Master Cohen and the Court ahead of an August 30 hearing. In those reports, the parties discussed (among other things) the Plaintiffs' request to amend complaints to add claims against the PBMs' affiliated mail-order pharmacies. Minutes after the PBMs submitted their report, Special Master Cohen inadvertently replied all with the following response (Exhibit A):

> Notes on D's position:
>
> I disagree that there should be briefing on whether amendment is allowed; just allow it. Let them mandamus you, CTA6 has said that is allowed.
>
> I have some sympathy for PBMs' argument that a briefing track should be in a different case, separate from the litigating cases. But perhaps there are some truly overreaching threshold issues we should tee up more quickly. Need to see what Ps are thinking.
>
> I think we need 4 bellwethers, not 2 -- it is too easy for Ds to buy off 2 Ps, avoiding any global resolution.
>
> The Pharmacies also sought to add third parties, like PBMs do here. PBMs' goal is to complicate and delay (including a request to do nothing and set a status 4 weeks hence). I say let Ps add claims against PBMs as mail-order pharmacies. Two reasons: (1) Ps are the master of their own complaint, and (2) claims against PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot). And then let PBMs respond as they wish. If that complicates the case, so be it. We are used to that.
>
> -d

A reasonable person reading that email would question Special Master Cohen's impartiality vis-à-vis OptumRx and Express Scripts. Special Master Cohen wrote that the Court should allow Plaintiffs to amend their complaints to add claims against the PBMs' mail-order pharmacies because "claims against PBMs as mail-order pharmacies will show how much PBMs knew (**and they knew a lot**)." Ex. A (emphasis added). Although the email came on the heels of the parties' status reports, there was no discussion in those reports about what the PBMs or their affiliated mail-order pharmacies purportedly "knew." And there has been no discovery in the MDL (or any opioid case) about the mail-order pharmacies. Special Master Cohen's email shows that he has prejudged merits issues before any evidence has come in and before OptumRx or Express Scripts have had any opportunity to brief and be heard on the question of their purported knowledge. At the very least, any reasonable observer would question his impartiality. That alone requires disqualification.

But that is not all. Special Master Cohen also wrote (without basis) that the "PBMs' goal is to complicate and delay" and that additional bellwethers were needed to force a "global resolution." Ex. A. On its face, the email shows that Special Master Cohen unjustifiably ascribed an improper motive to the PBMs and improperly views the scope of his appointment to include efforts at forcing settlement. Any reasonable person reading Special Master Cohen's email would, at the very least, harbor serious doubts about his impartiality when it comes to the PBMs. Disqualification is required.

We do not raise these issues lightly. Recusal and disqualification are serious matters. But they are serious matters precisely because the proper functioning of our judicial system depends on public trust in judicial officers' neutrality. "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). That is why § 455(a) does not require proof of actual bias or partiality (even though a reasonable observer would conclude that evidence of actual bias exists

2

here); no, because the appearance of partiality does such grave damage to the public trust, it is enough that a reasonable person would question the judicial officer's impartiality. *Id.* at 859–60. Here, there is no doubt that a reasonable person would question Special Master Cohen's impartiality, so he must be disqualified from all pending and future MDL proceedings involving OptumRx or Express Scripts (or their parents or affiliates). A list of the pending affected cases is attached as Exhibit L.[1]

## BACKGROUND

**1. No opioid case against OptumRx or ESI has involved discovery about their affiliated mail-order pharmacies, never mind about what the mail-order pharmacies "knew."**

OptumRx and Express Scripts are pharmacy benefit managers. PBMs are different from the manufacturers, distributors, and pharmacies that have been defendants in the bulk of opioid cases across the country and in the MDL. Unlike those entities, PBMs are not part of the closed system of distribution that the U.S. Drug Enforcement Administration established to regulate prescription opioids and other controlled substances. PBMs do not manufacture, market, or prescribe opioids; they process claims consistent with their clients' chosen plan designs.[2] This Court has recognized as much:

> The Court deeply appreciates the actions taken by the PBM Defendants to offer these limitations to their clients and appreciates Plaintiffs' willingness to discuss the issues with the Court. The Court understands that the PBM Defendants do not manufacture, market, or prescribe opioid medications. It also understands that plan sponsors decide whether to adopt the programs that the PBM Defendants offer. The Court encourages plan sponsors—as part of their own efforts to combat opioid abuse—to consider and adopt for their members, where appropriate, the opioid programs that the PBM Defendants offer.

Order, *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio July 15, 2019), Dkt. 1848.

---

[1] Should the Court disqualify Special Master Cohen, the PBMs will work expeditiously with the Court and the Plaintiffs to identify an alternative special master as needed.

[2] OptumRx's parent company United HealthCare Services, Inc. and sister company UnitedHealthcare Inc. and Express Scripts' parent company Cigna are putative plaintiffs in the ongoing third-party payor opioid track; the PEC leads that track. *See, e.g., Teamsters Health Servs. & Ins. Plan Loc. 404 v. Purdue Pharma, LP, et al.*, No. 1:18-op-45001 (N.D. Ohio Nov. 28, 2017). In April 2018, Motley Rice reached out to United about potentially representing United as a plaintiff in opioid litigation.

3

There are 85 cases in the MDL that name OptumRx or Express Scripts as a defendant (*see* Exhibit L), less than three percent of the cases in the MDL. And although OptumRx and Express Scripts each has an affiliated mail-order pharmacy, there has been no discovery in opioid litigation directed to those mail-order pharmacies, let alone about what those mail-order pharmacies "knew." On the contrary, the only opioid case against OptumRx and Express Scripts to proceed through discovery is a state court case (*Jefferson County v. Dannie E. Williams, M.D., et al.*, Case No. 20JE-CC00029 (23rd Judicial Circuit, Missouri)), and in that case the County stipulated that it was not pressing claims against either OptumRx's or Express Scripts' affiliated mail-order pharmacies. Ex. G; Ex. H.

**2.  Before October 2022, OptumRx and Express Scripts had limited involvement in MDL No. 2804 and were not part of the process that led to Special Master Cohen's selection.**

On January 11, 2018—before OptumRx or Express Scripts were parties to any opioid litigation—the Court appointed David R. Cohen as a Special Master for *In re: National Prescription Opiate Litigation*. Dkt. 69. Neither OptumRx nor Express Scripts participated in the special-master appointment process.

After Special Master Cohen's appointment, The Cicala Law Firm filed the first opioid lawsuits against OptumRx and Express Scripts. *See, e.g.*, *County of Webb v. Purdue Pharma, L.P., et al.*, No. 1:18-op-45175 (N.D. Ohio), Dkt. 1 (Complaint dated Jan. 25, 2018). After that, certain other MDL plaintiffs amended their complaints to add the PBMs as defendants. *See, e.g.*, *City of Portsmouth v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45856-DAP (N.D. Ohio), Dkt. 54 (Short Form for Supplementing Complaint and Amending Defendants dated Dec. 29, 2019). Despite those early claims and amendments and intervening years of litigation, the Plaintiffs' Executive Committee (PEC) never litigated claims against OptumRx or Express Scripts.

It was not until late 2022 that the PEC turned its attention to the PBMs—after the PEC had spent years securing settlements with opioid manufacturers, distributors, and pharmacies. On October

4

28, 2022, Plaintiffs argued in supplemental briefing on a motion to remand that the Court should create a PBM bellwether track. Dkt. 4700. Approximately two weeks later, on November 9, 2022, Special Master Cohen emailed OptumRx's and Express Scripts' counsel and advised them that the Court would hold a Zoom conference with Cicala, the PEC, and the PBMs on December 12, 2022 to discuss "(1) the current state of opioid-related litigation and settlement discussions in state and federal court; (2) suggestions regarding the setting of federal bellwether trials involving PBMs; and (3) any other topic related to PBM litigation the parties wish the Court to know." Ex. K.

On December 12, January 25, and February 21, the Court held status conferences with Cicala, the PEC, OptumRx, and Express Scripts to discuss PBM bellwether selection and mediation. The Court explained that there would be two PBM bellwethers, with each side choosing two potential cases and then striking one proposed by the other side. *See* Ex. I at 1–2; *see also* Ex. D at 16:7–13. The PEC refused to proceed as the Court directed; instead, the PEC reached out to Special Master Cohen lodging its objections to the process. *See* Ex. I at 1–3 & Ex. 1; *see also* Ex. D at 16:7–13. At the next status conference, the Court postponed bellwether selection.

Since then, there have been three additional PBM status conferences focused on mediation and bellwether selection. As recently as the status conference on August 8, 2023, the Court stated that there would be two PBM bellwethers. The latest conference was on August 30, 2023. *See* Dkt. 5168.

3. **Special Master Cohen's August 28, 2023 email creates the appearance of partiality.**

Before the August 30 status conference, the Court asked counsel for the PBMs and for the PEC to submit status reports to Judge Polster's law clerk and to Special Master Cohen by noon on August 28. Ex. J. The status conference would focus on bellwether selection and related issues.

Each side submitted its status report to Special Master Cohen and the Court's clerk by email on August 28. The PBMs set out their positions: (1) the PBMs would oppose (on the record) any effort by Plaintiffs to amend MDL complaints to add claims against the PBMs in cases where the

5

PBMs are not defendants, (2) the PBMs understood (based on earlier communications with the PEC) that the parties agreed that there would be two bellwethers, (3) if the Plaintiffs tried to add new pharmacy-related or other claims against the PBMs, the PBMs may need to add other defendants to any bellwether selected, and (4) any motions to dismiss should be litigated within the context of a given bellwether. Ex. E.

Shortly after the PBMs submitted their joint status report, Special Master Cohen replied all, writing in an email that the Court should allow Plaintiffs to amend complaints to "add claims against PBMs as mail-order pharmacies" because "claims against PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot)." Ex. A. He also wrote, "I think we need 4 bellwethers, not 2 – it is too easy for Ds to buy off 2 Ps, avoiding any global resolution" and commented that the "PBMs' goal is to complicate and delay." *Id.* It is evident from the email's text that the content was meant for the Court (whether now or in the future). The email addresses the Court ("Let them mandamus *you*") and refers jointly to Special Master Cohen and the Court ("If that complicates the case, so be it. *We* are used to that."). *Id.* (emphases added).

Within the hour, Special Master Cohen responded again: "Dear Counsel: This email was meant to be to my own files, and not to counsel. Please discard and disregard. I apologize. -d." Ex. B.

In an email response the next day, OptumRx and Express Scripts explained that they are "not aware of any order or rule requiring us to discard or disregard [the] 12:50 p.m. email" and that "[g]iven the content of that email, we cannot agree to [the] request to discard or disregard it." Ex. C at 4–5. The PBMs went on:

> Your 12:50 p.m. email raises serious questions about your impartiality vis-à-vis OptumRx and Express Scripts in the MDL proceedings. As one example, you asserted in your email that "claims against the PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot)." There is no evidence in the record before you to support that assertion; indeed, there has been no discovery in the MDL (or any opioid case) relating to the PBMs' mail-order pharmacies. Nor have OptumRx or

6

> Express Scripts had an opportunity to brief or be heard on those issues, including merits issues about what they allegedly "knew" or did not know. Yet your email demonstrates that you have already prejudged the merits ("they knew a lot"). That is just one example; other statements in your email also raise serious concerns about your impartiality and the integrity of the process.
>
> We are evaluating the appropriate next steps to take and reserve all rights. We also plan to raise these issues at tomorrow's status conference with Judge Polster.

*Id.*

The PBMs raised those concerns with Judge Polster during the August 30 status conference. Ex. D at 37:15–45:3. OptumRx's counsel explained that Special Master Cohen's email "raises serious questions about his impartiality vis-à-vis the PBMs" and "showed that [he] has already prejudged the merits" such that "Special Master Cohen should recuse from PBM-related cases and proceedings." *Id.* at 37:20–38:15; *see also id.* at 41:24–42:3 ("I think it pretty well shows that he has picked a side and he should recuse . . . ."). Express Scripts' counsel agreed that the email shows "that Special Master Cohen has prejudged some of these issues, at least with respect to Express Scripts and the PBMs. So we do believe recusal would be appropriate." *Id.* at 39:25–40:13.

The Court initially disagreed: "Well, that isn't going to happen. All right?" *Id.* at 38:16–17; *see also id.* at 39:3 ("He hasn't prejudged anything."); *id.* at 39:18 ("So he's not recusing himself."). But the Court then put the onus on Special Master Cohen: "Let's put it this way. It's up to Special Master Cohen whether he recuses himself. All right? It's not up to me." *Id.* at 41:17–19; *see also id.* at 44:21–24 ("Well again, I am – it's up to Special Master Cohen whether or not he recuses himself. I'm certainly not going to request or suggest that he do it."). Then, in an order the next day, the Court said the following: "Finally, the PBM Defendants suggested they might move for recusal of Special Master

7

Cohen, and asked the Court to preclude him from working on PBM cases. The Court denies this request." Dkt. 5166 (Aug. 31, 2023 Minutes and Order Regarding PBM Bellwether Process).[3]

Because the Court indicated that the recusal question lies with Special Master Cohen in the first instance, OptumRx and Express Scripts wrote to Special Master Cohen the next day, asking him to voluntarily recuse himself from participating in "any MDL proceedings related to OptumRx and Express Scripts, as well as any proceedings related to any of their parent or affiliate companies." Ex. C at 2–3. The PBMs also "reserve[d] all rights, including the right to move for [Special Master Cohen's] disqualification if [he did] not voluntarily recuse." *Id.*

On September 7, Special Master Cohen responded by email "declin[ing]" the PBMs' request that he recuse himself. Ex. C at 1. He attached an affidavit to his email purporting to explain that the PBMs "misapprehended [his] email." *Id.* In the affidavit, Special Master Cohen claimed that his August 28 email was a "note [he] wrote to [him]self in . . . private" but inadvertently forwarded to counsel and the Court's clerk. Ex. C at 8–10 (Affidavit ¶¶ 7, 11). Special Master Cohen also declared that his comment about what OptumRx or Express Scripts "knew" was based on his own independent research into two sources that Plaintiffs cited in a status report from last year: (1) a 2022 FTC press release about PBMs, and (2) a statement by an Express Scripts employee to the Senate regarding Express Scripts' efforts to address opioid addiction. Ex. C at 10 (Affidavit ¶¶ 11–13). Neither source discusses what the PBMs or their affiliated mail-order pharmacies "knew."

## LEGAL STANDARD

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[A] judge's

---

[3] At the August 30 status conference, the PBMs said that Special Master Cohen should voluntarily recuse, but they did not formally move for disqualification at the time because they were still "looking actively at the facts and the law [o]n this issue." Ex. D at 40:8–11.

introspective estimate of his own ability impartially to hear a case" is not the test; rather, it is an "objective" standard: "It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge." *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980). "Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial." *Id.*

Under Federal Rule 53(a)(2), 28 U.S.C. § 455 applies to special masters. *See also Guardian Pipeline, LLC v. 950.80 Acres of Land*, 525 F.3d 554, 556 (7th Cir. 2008) ("[T]he Supreme Court amended Fed R. Civ. P. 53(a)(2) in 2003 to subject special masters to the requirements of § 455.").

## ARGUMENT

The Court should disqualify Special Master Cohen from participating in any proceedings related to OptumRx and Express Scripts or their parents or affiliates because a reasonable observer viewing all the facts would question his impartiality. Indeed, a reasonable observer would conclude that Special Master Cohen has prejudged important merits issues relating to OptumRx and Express Scripts.

**I.     SPECIAL MASTER COHEN MUST BE DISQUALIFIED BECAUSE A REASONABLE OBSERVER WOULD QUESTION HIS IMPARTIALITY.**

In view of all the facts, a reasonable observer would question Special Master Cohen's impartiality as to the PBMs. The PBMs did not know those facts before August 28, 2023, and they immediately objected to his continued participation in the proceedings after receiving that email.

**A.     Special Master Cohen's comment that claims against the PBMs' affiliated mail-order pharmacies would show that the PBMs "knew a lot" would lead a reasonable observer to question his impartiality.**

A reasonable observer would question Special Master Cohen's impartiality based on his comments on OptumRx's and Express Scripts' affiliated mail-order pharmacies: "[C]laims against the PBMs as mail-order pharmacies will show how much PBMs knew (**and they knew a lot**)." Ex. A (emphasis added). There is no evidence in the record supporting that assertion. Special Master Cohen

9

reached that conclusion even though there has been no mail-order pharmacy discovery in any opioid case and no briefing before the Court about what the PBMs and their mail-order pharmacies knew or didn't know. In fact, in the only opioid case against OptumRx and Express Scripts that has proceeded to discovery—a case in Missouri state court—the plaintiff county has stipulated that it is not pursuing liability related to the PBMs' affiliated mail-order pharmacies. *See* Ex. G; Ex. H.

Special Master Cohen's email would lead a reasonable observer to believe that he has prejudged the issues, which is all that is required for disqualification. Disqualification is required under § 455 when "a reasonable observer could have interpreted [a judge's] remark to indicate a prejudgment of [a party's] guilt." *United States v. Liggins*, 76 F.4th 500, 507 (6th Cir. 2023). *Ligon v. City of New York* illustrates the rule. 736 F.3d 118, 124 (2d Cir. 2013) (per curiam), *vacated in part on other grounds*, 743 F.3d 362 (2d Cir. 2014). In *Ligon*, a judge suggested that a party could file a new lawsuit asserting a disputed claim, remarked that the new suit would be "timely," and advised that she "would accept it as a related case." *Id.* at 124–25. Disqualification was required on those facts because a "reasonable observer could interpret [the judge] as intimating her views on the merits of a case that had yet to be filed, and as seeking to have that case filed and to preside over it after it was filed." *Id.* at 124. The *Ligon* court also recognized that disqualification was required because the judge "suggested that [] a claim could be viable and would likely entitle the plaintiffs to documents they sought." *Id.* at 126. Likewise, in *In re Boston's Children First*, disqualification was required because the judge's comments "arguably suggested that [certain] claims . . . were less than meritorious" and "placed itself in the apparent position of advising" one side. 244 F.3d 164, 166 (1st Cir. 2001). That was enough to warrant disqualification even though there was no finding of "actual bias or prejudice." *Id.* at 171.

Consistent with those authorities, the Sixth Circuit cautioned in this MDL that "[a] judge improperly comments on the merits of a case when he publicly 'disclose[s] his views on the factual

10

and legal matters at the heart of the case[,] . . . the credibility of witnesses, the validity of legal theories, the culpability of the defendant, the choice of remedy, and so forth.'" *In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137, at *2 (6th Cir. Oct. 10, 2019) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 112 (D.C. Cir. 2001)). And this Court recognized in an earlier order that disqualification is required when a "judge[] made explicit statements about the merits of the claims in litigation." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4686815, at *5 & n.6 (N.D. Ohio Sept. 26, 2019).

That is what Special Master Cohen did here. Special Master Cohen prejudged the merits of claims against OptumRx and Express Scripts—that mail-order claims would purportedly "show how much PBMs knew (and they knew a lot)"—before any discovery or briefing on those issues. Ex. A. His statement parrots language from Plaintiffs' complaints, which are full of allegations about the PBMs' knowledge and how it purportedly makes them liable. *See, e.g.*, *Frederick County, Virginia v. Mallinckrodt PLC, et al.*, No. 1:20-op-45233-DAP (N.D. Ohio), Dkt. 1-2 ¶¶ 507, 533–36, 550, 600–605, 607, 630–35, 637, 651, 659–60, 662, 665, 671, 675–76, 714, 725, 729–30. He also paired that prejudgment with other unfounded assertions about the PBMs, including that their goal is to "complicate and delay" (Ex. A), even though there is no basis in the record for that conclusion.

On its face, Special Master Cohen's email mandates his disqualification. "[A] reasonable observer is entitled to take the judge at his word" and "we must be careful not to rewrite what the judge has said and render unreasonable the clearest and most obvious reading of the language." *United States v. Antar*, 53 F.3d 568, 577 (3d Cir. 1995), *overruled in part on other grounds*, *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001). A reasonable person reading Special Master Cohen's email would, at the very least, harbor serious doubts about his impartiality as to the PBMs. That requires his disqualification.

Special Master Cohen's recommendation that four bellwethers are needed to achieve a "global resolution" would also lead a reasonable observer to question his impartiality.

11

A reasonable observer would also question Special Master Cohen's impartiality because he recommended that the Court apply more pressure to OptumRx and Express Scripts to force a "global resolution": "I think we need 4 bellwethers, not 2 – it is too easy for Ds to buy off 2 Ps, avoiding any global resolution." Ex. A. That comment also requires his disqualification.

The Sixth Circuit has admonished that "although judges should encourage and aid early settlement, . . . they should not attempt to coerce that settlement." *Smith v. ABN AMRO Mortg. Grp.*, 434 F. App'x 454, 462 (6th Cir. 2011) (alterations in original); *accord* Code of Conduct for United States Judges, Vol. 2, Pt. A, Canon 3A(4) (Commentary) ("A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts."). And yet attempting to coerce the PBMs to settle is precisely what Special Master Cohen recommended in his email.

In evaluating an earlier recusal motion directed to Judge Polster in the MDL (by different parties on different grounds), the Sixth Circuit declined to grant a writ of mandamus to disqualify Judge Polster about statements that he made regarding settlement efforts because he "equally placed blame on all parties, readily acknowledged that settlement efforts might not work," and declined to "discuss the particulars of this case." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137, at *2.[4] Here, Special Master Cohen's email prejudged merits issues against the PBMs, placed blame on the PBMs alone, and advocated for more pressure on the PBMs to avoid the chance that they "*buy off* 2 P[laintiff]s." Ex. A (emphasis added). At the August 30 hearing, just two days after Special Master Cohen's email, this Court abandoned its earlier direction that it would select two bellwethers and

---

[4] The Sixth Circuit also explained that the timing of those parties' disqualification motion—coming more than a year after the Court's public comments—didn't "help them." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137, at *1–2. OptumRx and Express Scripts raised their concerns with Special Master Cohen's email the day after receiving it and filed this motion within twelve days of Special Master Cohen's email declining to voluntarily recuse.

12

instead ordered a process that would result in four bellwethers—just as Special Cohen had suggested was needed for a "global resolution." *See* Dkt. 5166.

### B. Special Master Cohen's affidavit does not change the outcome.

Special Master Cohen's affidavit does not eliminate the appearance of bias or shield him from § 455's mandatory requirements. "[R]egardless of the [] judge's intended meaning, we must consider the interpretation that a reasonable observer . . . could have made, for we must guard against not only actual bias but also the appearance of bias, which 'demeans the reputation and integrity' of the court of which the district judge is a part." *Liggins*, 76 F.4th at 507. That is because § 455 has "constitutional dimensions": "The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, "justice must satisfy the appearance of justice."'" *Liljeberg*, 486 U.S. at 865 n.12 (citations omitted); *see also Williams v. Pennsylvania*, 579 U.S. 1, 15–16 (2016) ("Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself."). Accordingly, Special Master Cohen's affidavit purporting to explain the intended meaning of his email is irrelevant to the § 455 analysis; what matters is how a reasonable observer would understand his email.

In any event, Special Master Cohen's statement that his comments were based on "earlier research" unmoored from the record before him and from any discovery of OptumRx's or Express Scripts' affiliated mail-order pharmacies (*see* Ex. C at 10–11 (Affidavit ¶¶ 12–14)) does not change the outcome under § 455. Whatever the basis for Special Master Cohen's opinion that the PBMs "knew a lot," to a reasonable observer it appears that he already *formed an opinion* before the evidence came in. And putting aside whether the purported "research" was proper, the two citations that Special Master

13

Cohen provided say nothing about what OptumRx's or Express Scripts' affiliated mail-order pharmacies "knew"—let alone support his conclusion that "they knew a lot."[5]

Whether Special Master Cohen in fact harbors personal bias or prejudice against OptumRx and Express Scripts is not the question under § 455(a)—although in this case, his statements indicate that he does. It is enough that a reasonable observer would question Special Master Cohen's impartiality regardless of what he actually believes. *See In re Aetna Cas. & Sur. Co.,* 919 F.2d at 1143.

## II. THIS COURT'S OVERSIGHT OF SPECIAL MASTER COHEN DOES NOT CHANGE THE OUTCOME UNDER § 455(A).

During the August 30, 2023 status conference, the Court suggested that Special Master Cohen doesn't need to recuse himself because ultimate authority rests with the Court (Ex. D at 39:4–10):

> [U]ltimately every – every significant decision in this MDL is mine, all right? If there's a discovery ruling that he makes and the defendants object, they appeal it to me. . . . I've generally upheld his rulings, I have sometimes reversed them. That's how it works. Same way if it's a magistrate judge, the buck stops with me, and I make my own decision.

But 28 U.S.C. § 455(a) and Federal Rule 53(a)(2) do not provide a carve-out for situations in which the decisions of a special master or magistrate judge are subject to review by a district judge. "[A] special master is subject to the same ethical restrictions as a judge when the special master serves as the 'functional equivalent' of a judge even though the special master is under a judge's 'control.'" *In re Kempthorne*, 449 F.3d 1265, 1269 (D.C. Cir. 2006) (citation omitted)).

---

[5] *See* Press Release, "FTC Launches Inquiry Into Prescription Drug Middlemen Industry" (June 7, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-launches-inquiry-prescription-drug-middlemen-industry; Statement of Snezana Mahon, United States Senate Committee on Health, Education, Labor and Pensions (Feb. 27, 2018), https://www.help.senate.gov/imo/media/doc/Mahon.pdf.

Lina Khan, the FTC Chair leading the FTC's inquiry, faces an ethics inquiry into her role in investigating PBMs. *See* "FTC Chairwoman Lina Khan faces ethics complaint over alleged bias against pharmacy benefit managers," Washington Examiner (Sept. 7, 2023), https://www.washingtonexaminer.com/news/white-house/ftc-chair-lina-khan-faces-ethics-complaint-over-alleged-bias.

Nor could they provide any carve-out. "[D]ue process requires a 'neutral and detached judge in the first instance.'" *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 617 (1993) (quoting *Ward v. Monroeville*, 409 U.S. 57, 61–62 (1972)). If the initial adjudicator appears potentially biased, then "[e]ven appeal and a trial *de novo* will not cure a failure to provide a neutral and detached adjudicator." *Id.* at 618; *see also id.* at 626 (when an initial adjudicator appears biased, the defendant "would seem to be deprived thereby of the impartial adjudication in the first instance to which it is entitled under the Due Process Clause").

For good reason: Under his appointment, Special Master Cohen has authority to (among other things) "provide legal analysis of the parties' submissions" and "direct supervise, monitor, and report upon implementation and compliance with the Court's Orders." Dkt. 69. In practice, that has involved deciding or ruling on numerous case-shaping issues, including the temporal and geographic scope of the MDL, the scope of opioids at issue, deposition protocols and case management orders, and motions to compel, among other things.[6] And as the Court has acknowledged, the Court has "generally upheld" Special Master Cohen's rulings (Ex. D at 39:7–8), often applying a deferential standard of review. *See, e.g.*, Dkt. 3170 (reviewing discovery ruling for "abuse of discretion").

The bottom line: 28 U.S.C. § 455(a) and Federal Rule 53(a)(2) hold special masters to the same standards as district courts. Special Master Cohen must be disqualified because his email would lead a reasonable observer to question his impartiality as to OptumRx and Express Scripts.

## **CONCLUSION**

The Court should disqualify Special Master Cohen from participating in any pending or future MDL proceedings involving OptumRx or Express Scripts or their parents or affiliates.

---

[6] *See, e.g.*, Dkt. 693; Dkt. 762; Dkt. 941; Dkt. 989.

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Jonathan G. Cooper* |
| Brian D. Boone | Michael J. Lyle, Esq. |
| **ALSTON & BIRD LLP** | Jonathan G. Cooper, Esq. |
| Vantage South End | **QUINN EMANUEL URQUHART &** |
| 1120 South Tryon Street, Suite 300 | **SULLIVAN, LLP** |
| Charlotte, NC 28203 | 1300 I St. NW, Suite 900 |
| Tel: (704) 444-1000 | Washington, DC 20005 |
| brian.boone@alston.com | Tel: (202) 538-8000 |
| | mikelyle@quinnemanuel.com |
| William H. Jordan | jonathancooper@quinnemanuel.com |
| **ALSTON & BIRD LLP** | |
| 1201 West Peachtree Street NW, Suite 4900 | *Attorneys for Defendant Express Scripts, Inc.* |
| Atlanta, GA 30309 | |
| Tel.: (404) 881-7000 | |
| bill.jordan@alston.com | |

Kimberly K. Chemerinsky
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Tel: (213) 576-1000
kim.chemerinsky@alston.com

*Attorneys for Defendant OptumRx, Inc.*