# LOUISIANA STATE-LOCAL GOVERNMENT
# OPIOID LITIGATION
# MEMORANDUM OF UNDERSTANDING

Whereas, the people of the State and its communities have been harmed by misfeasance, nonfeasance, and malfeasance committed by certain entities within the Pharmaceutical Supply Chain; and,

Whereas, the State, though its Attorney General, and certain Local Governments, through their elected representatives and counsel, are separately engaged in litigation seeking to hold Pharmaceutical Supply Chain Participants accountable for the damage caused by their misfeasance, nonfeasance and malfeasance; and,

Whereas, the State, through its Attorney General, and its Local Governments share a common desire to abate and alleviate the impacts of that misfeasance, nonfeasance and malfeasance throughout the State;

Now therefore, the State and its Local Governments, subject to completing formal documents effectuating the Parties' agreements, enter into this Memorandum of Understanding ("MOU") relating to the allocation and use of the proceeds of Settlements described.

A.    Definitions

As used in this MOU:

1.    "The State" shall mean the State of Louisiana acting through the Attorney General.

2.    "Local Government(s)" shall mean all parishes, incorporated municipalities, and other certain local government political subdivisaions and Sheriffs within the geographic boundaries of the State.

3.    "The Parties" shall mean the State and the Local Governments.

4.    "Settlement" shall mean the negotiated resolution of legal or equitable claims against a Pharmaceutical Supply Chain Participant when that resolution has been jointly entered into by the State and the Local Governments.

5.    "Opioid Funds" shall mean monetary amounts obtained through a Settlement as defined in this Memorandum of Understanding.

6.    "Approved Purpose(s)" shall mean evidence-based forward-looking strategies, programming and services used to (i) provide treatment for citizens of the State of Louisiana affected by substance use disorders, (ii) provide support for citizens of the State of Louisiana in recovery from addiction who are under the care of SAMHSA qualified and appropriately

licensed health care providers, (iv) target treatment of citizens of the State of Louisiana who are not covered by Medicaid or not covered by private insurance for addictive services. See Exhibit A.

7. "Pharmaceutical Supply Chain" shall mean the process and channels through which Controlled Substances are manufactured, marketed, promoted, distributed or dispensed.

8. "Pharmaceutical Supply Chain Participant" shall mean any entity that engages in or has engaged in the manufacture, marketing, promotion, distribution or dispensing of an opioid analgesic.

9. "Municipalities" shall mean cities, towns, or villages of a Parish within the State with a Population greater than 10,000 individuals and shall also include cities, towns or villages within the State with a Population equal to or less than 10,000 individuals which filed a Complaint in this litigation against Pharmaceutical Supply Chain Participants.  The singular "Municipality" shall refer to a singular of the Municipalities.

10. "Negotiation Class Metrics" shall mean those county and city settlement allocations which come from the official website of the Negotiation Class of counties and cities certified on September 11, 2019 by the U.S. District for the Northern District of Ohio in *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio).  The website is located at https://allocationmap.iclaimsonline.com.

11. "Qualified Parish" shall mean a parish within the State that has a Population of least 300,000 individuals. For the avoidance of doubt, Qualified Parishes include: East Baton Rouge Parish, Jefferson Paris, and Orleans Parish.

12. "Parish" shall refer to one of the 64 parish governments in the State of Louisiana.

13. "Sheriff" shall refer to the sheriff in each of the 64 parishes in the State of Louisiana.

14. "Population" shall refer to published U.S. Census Bureau population estimates as of July 1, 2019, released March 2020, and shall remain unchanged during the term of this MOU. These estimates can currently be found at https://www.census.gov

B. Opioids Abatement Taskforce or Council.  The State will create an Opioid Abatement Taskforce or Council (hereinafter "Taskforce" or "Council") to advise the Attorney General and the Parishes and Municipalities on the priorities that should be addressed as part of the opioid epidemic and to review how monies have been spent and the results that have been achieved with the Opioid Funds.

1. Size.  The Taskforce shall have five (5) members.

2.      Appointments:  Local Governments

    a.     The Lousiana Municipal Association shall appoint one member.

    b.     The Police Jury Association shall appoint one member.

    c.     The Louisiana Sheriff's Association shall appoint one member.

3.      Appointments: State.

    a.     The Secretary of the Louisiana Department of Public Health or his/her designee shall appoint one member.

    b.     The Governor shall appoint one member who is a licensed SAMSHA provider.

4.      Chair.  The members of the taskforce shall designate the chair of such taskforce or council

5.      Term.  Members will be appointed to serve 3 year terms.

6.      Meetings.  The Taskforce or Council shall meet in person or virtually each year.

7.      At least annually, each Qualified Parish and Lead Parish shall provide to the State and the Taskforce a report detailing for the preceding time-period (1) the amount of the LG Share received by each Participating Local Government within the Parish, (2) the allocation of any awards approved (listing the recipient, the amount awarded, the program to be funded, and disbursement terms), and (3) the amounts disbursed on approved allocations.

8.      At least annually, the State and the Taskforce shall publish a report detailing for the preceding time-period (1) the amount of the State Share received, (2) the allocation of any awards approved (listing the recipient, the amount awarded, the program to be funded, and disbursement terms), and (3) the amounts disbursed on approved allocations.

C.     Allocation of Settlement Proceeds

    1.     All of the Opioid Settlement Funds shall be received on behalf of the Local Goverments and will be placed into one fund (hereinadfter, "Opioid Abatement Fund") for the benefit of the Parishes and Municipalities of the state after deducting costs of the Local Government Fee Fund detailed in paragraph D below:

    a.     The amounts received shall by the Local Governments shall be allocated with twenty percent (20%) going to the benefit of Sheriffs and the remaining eighty percent (80%) going to the benefit of the other Local Governments , all as provided hereinafter.

b. The amounts to be distributed to each Parish and Municipalities shall be determined by the Negotiation Class Metrics or other metrics agreed upon, in writing, by the Parishes and Municipalities.   The amounts to be distributed to each Sheriff shall be determined by the Negotiation Class Metrics or other metrics agreed upon, in writing, in the same way allocated to the Parishes.

c. The Opioid Taskforce or Council will annually calculate the share of each Parish within the State utilizing the sliding scale in section 4 of the allocation contained in the Negotiation Class Metrics or other metrics that the Parties agree upon.

d. For Qualified Parishes, the Qualified Parish's share, including the Municipalities within that Parish, will be paid to the Qualified Parish and expended on Approved Purposes, including the Core Strategies identified in Exhibit A, if applicable. A priority shall be given to treatment of citizens with opioid use disorder who are not covered by Medicaid or not covered by private insurance for such treatment.

e. For all other Parishes, the funds allocated for those Parishes and Municipalities shall be paid on a regional basis  consistent with Louisiana Department of Health Regions, as set forth in Exhibit B.   The regional share of the funds will be paid to the designated Parish as set forth in Exhibit B and expended on Approved Purposes, including the Core Strategies identified in Exhibit A, if applicable in that Region.   A priority shall be given to treatment of citizens with opioid use disorder who are not covered by Medicaid or not covered by private insurance for such treatment.

f. To the extent that funds in the Opioid Abatement Fund are not appropriated and expended in a year by the Taskforce or Council, the Taskforce or Council shall identify the investments where settlement funds will be deposited. Any gains, profits, or interest accrued from the deposit of the Opioid Funds to the extent that any funds are not appropriated and expended within a calendar year, shall be the sole property of the Party that was entitled to the initial deposit.

g. The Taskforce or Council may take no more than 3% administrative fee from the Fund ("Administrative Costs") for operation of the Taskforce or Council.

D.    Payment of Counsel and Litigation Expenses

1.    This section D shall only apply to any settlement funds or fees derived from settlement(s) with McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Corporiation (hereinafter, "Settling Distributors") and Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho- McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

2.    The Parties anticipate that any national settlement will provide for the partial payment of fees and litigation expenses to counsel representing Local Governments.  If the court in *In Re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) or a national global settlement otherwise establishes a separate fund or similar device for the payment of fees and expenses to counsel or requires any governmental plaintiffs to pay a share of their recoveries from defendants into an attorney fee and expense fund as a "tax," then Participating Local Governments shall first seek to have the settling defendants pay the requisite amounts into that fund.  If the settling defendants do not agree, then the amounts due to the fee and expense fund shall be paid from the State of Louisiana's recovery, prior to the allocation and distribution of any settlement funds to the State or Participating Local Governments.

3.    Any governmental entity who seeks attorneys' fees and expenses shall first seek to recover those amounts from the national settlement.  Anticipating that any fund established as part of a national settlement will not be sufficient to pay all contingency fee contracts for Participating Local Governments in the State of Louisiana, the Parties agree to create a supplemental fee and expense fund (the "Local Government Fee Fund" or "LGFF").

4.    The LGFF is to be used to compensate counsel for Participating Local Governments that filed opioid lawsuits by the Effective Date of this Agreement ("Litigating Participating Local Governments").

5.    The LGFF shall be used to pay fees and expenses for Participating Local Governments in the State of Louisiana who filed opioid lawsuits on or before the date of this agreement The amount of funds to be deposited in the LGFF shall be contingent upon the overall percentage of Incentive Payments awarded to the State of Louisiana under the national settlement, pursuant to the following table, with the LGFF percentage being a percentage of the Total Cash Value of payments to the State of Louisiana before any allocation of funds to the State or any Participating Local Governments.  In no circumstances shall the LGFF receive more than 7.5% of the Total Cash Value received by the State of Louisiana including any funds received from a national fee fund as described in Paragraph D(2) above.  If the State of Louisiana does not receive at least 65% of the total available Incentive

Payments, then the LGFF shall be null and void and no amounts shall be paid into the LGFF.

| PERCENTAGE OF INCENTIVE PAYMENTS AWARDED | LGFF PERCENTAGE |
|---|---|
| 65% | 2% |
| 70% | 3% |
| 75% | 4% |
| 80% | 5% |
| 85% | 6% |
| 90% | 6.5% |
| 95% | 7% |
| 100% | 7.5% |

6. The Parties further agree no counsel for any Litigating Participating Local Government shall recover, from any national fee fund and the LGFF, a combined contingency fee of more than 7.5% (plus expenses). Additionally, counsel for any Litigating Participating Local Government shall not be paid a contingency fee, from any national fee fund and the LGFF, that exceeds the amount due under its fee contract. If there are any funds remaining in the LGFF after payment of fees and expenses consistent with the terms of this agreement, those funds shall revert pro rata to the Participating LGs.

7. Although the amount of the LGFF shall be calculated based on the entirety of payments due to the LGs over a 10 to 18 year period, the LGFF shall be funded and made payable over a period of 7 years.

E. Accountability

1. The State and Participating Local Governments may object to an allocation of Opioid Funds solely on the basis that the allocation at issue (1) is inconsistent with provision B(1) hereof with respect to the amount of the State Share or LG Share; (2) is inconsistent with an agreed-upon allocation, or the default allocations in Exhibit B or (3) violates the limitations set forth in Exhibit A.

2. The Parties shall maintain, for a period of at least five years, records of abatement expenditures and documents underlying those expenditures, so that it can be verified that funds are being or have been utilized in a manner consistent with the Approved Purposes definition.

3. The Louisiana Legislative Auditor shall have the right to audit the Opioid Funds.

4.      In an action brought pursuant to E(1), attorney's fees and costs shall not be recoverable.

F.      Settlement Negotiations

1.      The State and the Participating Local Governments agree to inform each other in advance of any negotiations relating to a Louisiana-only settlement with a Pharmaceutical Supply Chain Participant that includes both the State and the Participating Local Governments and shall provide each other the opportunity to participate in all such negotiations.

2.      The State and the Participating Local Governments further agree to keep each other reasonably informed of all other global settlement negotiations with Pharmaceutical Supply Chain Participants.   Neither this provision, nor any other, shall be construed to state or imply that either the State or the Participating Local Governments (collectively, the "Louisiana Parties") are unauthorized to engage in settlement negotiations with Pharmaceutical Supply Chain Participants without prior consent or contemporaneous participation of the other, or that either party is entitled to participate as an active or direct participant in settlement negotiations with the other. Rather, while the State's and the Participating Local Government's efforts to achieve worthwhile settlements are to be collaborative, incremental stages need not be so.

3.      By virtue of executing this MOU, Participating Local Governments give the State the right to execute a settlement agreement with certain entities in the Pharmaceutical Supply Chain for those entities' role in the opioid epidemic.  The Attorney General shall have the ability to release any and all claims said Participating Local Governments may have with those entities provided such settlement comports with the parameters of this MOU, including Exhibit A and Exhibit B. Furthermore, Local Governments shall not initiate any new litigation against any entity in the Pharmaceutical Supply Chain for harm caused by misfeasance, nonfeasance, and malfeasance committed by said entities that resulted in the opioid epidemic, unless the Local Government is granted written permission from the Attorney General. For the avoidance of doubt, in the event that a Participating Litigating Local Governments seeks to add additional defendants to its lawsuit, or desires to file new litigation against an entity in the Pharmaceutical Supply Chain related to the opioid epidemic, the Participating Litigating Local Government must first receive written permission from the Attorney General.

G.      Amendments, Choice of Law, Venue, Consent Decree

1.      The Parties agree to make such amendments as necessary to implement the intent of this agreement.

2.  The Parties agree that this MOU, any amendments thereto, and any dispute arising out of or related to this MOU, shall be governed by and interpreted according to the laws of the State of Louisiana. Any action to enforce or interpret this MOU, or to resolve any dispute concerning it, shall be commenced and maintained only by a court of competent jurisdiction in East Baton Rouge Parish, Louisiana. The Parties understand and agree that, in connection with a settlement with any Pharmaceutical Supply Chain Participant, the State may file an appropriate action in a court of competent jurisdiction in East Baton Rouge, Louisiana seeking a consent decree approving such settlement and the allocation of settlement funds within the State of Louisiana pursuant to this MOU.

## Acknowledgment of Agreement

The undersigned party hereby agrees to all terms and conditions of the Louisiana State-Local Governent Opioid Litigation Memorandum of Understanding.

LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE

By: _____

Print Name: William F. Tate IV

Its: _President_____

Date: _April 13, 2023_____