CONFIDENTIAL SETTLEMENT DRAFT
SUBJECT TO FRE 408

# SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 12th day of March 2021, among Allergan, as defined herein, and the State of Louisiana ("Plaintiff") in the lawsuit captioned, *State of Louisiana vs. Purdue Pharma, L.P., et al*. (Case No. 661638) (La. 19th Judicial District for the Parish of East Baton Rouge) (the "Louisiana AG Action")(collectively "the Settling Parties"). This Settlement Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims and the Other Louisiana Opioid Claims, upon and subject to the terms and conditions hereof (the "Settlement").

WHEREAS, the Plaintiff filed its complaint in the Louisiana AG Action (i) alleging that Allergan, among others, violated Louisiana law by deceptively marketing its opioid pain medications so as to overstate their efficacy and falsely downplay the associated risk of addiction, which resulted in an opioid crisis and public nuisance in Louisiana; (ii) alleging that Allergan, among others, violated federal and state law by failing to monitor, report, and not ship alleged suspicious orders of opioid pain medications; and (iii) asserting claims for damages, equitable abatement, civil penalties and other equitable relief;

WHEREAS, numerous parishes, cities, sheriffs, coroners, hospitals, universities, fire departments, school boards, districts, and other state or local governmental entities or organizations in the State of Louisiana ("Other Louisiana Opioid Plaintiffs") have filed lawsuits against Allergan raising claims or allegations concerning, related to, based upon, or in connection with the Covered Conduct;

WHEREAS, Allergan: (i) denies each and all of the claims and allegations of wrongdoing made by the Plaintiff in the Louisiana AG Action and in each of the Other Louisiana Opioid Actions and maintains that it has meritorious defenses; (ii) denies all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that

could have been alleged, in the Louisiana AG Action or the Other Louisiana Opioid Actions, and contends that the factual allegations made in the Louisiana AG Action or the Other Louisiana Opioid Actions relating to it are false and materially inaccurate; (iii) denies that the Plaintiff was harmed by any conduct of Allergan alleged in the Louisiana AG Action, the Other Louisiana Opioid Actions, or otherwise; and (iv) denies liability, expressly denies any wrongdoing, and denies it violated any federal or state statute or common law. Allergan maintains that it would be able to successfully defend against Plaintiff's claims and allegations at trial, that the facts do not support the allegations, that Allergan engaged in no misconduct or unlawful activity, and caused no harm to Plaintiff or its residents;

WHEREAS, the Parties have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in the Louisiana AG Action (which are also asserted in the Other Louisiana Opioid Actions);

WHEREAS, the Parties have each considered the costs and delays and uncertainty associated with the continued prosecution and defense of the Louisiana AG Action, and have reached an agreement to resolve the Louisiana AG Action;

WHEREAS, the Parties also wish to simultaneously resolve all other actions against Allergan involving Covered Conduct in the State of Louisiana;

WHEREAS, the Parties believe the Settlement set forth herein (i) avoids the uncertainties of litigation and assures that the benefits reflected herein are obtained; and (ii) the Plaintiff has concluded that the terms are fair, reasonable and adequate and in the best interest of Louisiana;

WHEREAS, the Plaintiff and Allergan agree that neither this Agreement, nor any statement made in the negotiation thereof shall be deemed or construed to be a concession as to any claim, an admission, evidence of any violation of any statute or law, evidence of any liability or

2

wrongdoing by Allergan, or evidence of the truth of any of the claims, allegations, denials, or defenses made in the Louisiana AG Action or the Other Louisiana Opioid Actions;

WHEREAS, arm's-length settlement negotiations have taken place over the course of several months between Allergan and the Plaintiff; and NOW, THEREFORE, IT IS HEREBY AGREED by and among the Plaintiff and Allergan, by and through their respective counsel, that the Louisiana AG Action as against Allergan shall be finally and fully settled and released, as set forth below.

    A.    **Definitions.** As used in this Agreement the following capitalized terms have the meanings specified below.

    (a)    "AbbVie" means AbbVie Inc. and each of its current and former corporate parents, direct and indirect subsidiaries, predecessors, successors, affiliates, agents and current and former employees, officers and directors and any current or former related companies.

    (b)    "Agreement" or "Settlement Agreement" means this Settlement Agreement, together with any exhibits attached hereto, which are incorporated herein by reference.

    (c)    "Allergan" means Allergan Limited f/k/a Allergan plc f/k/a Actavis plc, Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc., Allergan Sales, LLC, Allergan USA, Inc., and each of their current and former corporate parents (including but not limited to AbbVie), direct and indirect subsidiaries, predecessors, successors, affiliates, agents (including, but not limited to, inVentiv Commercial Services, LLC and its affiliates, but only in their capacity as agents of Allergan) and current and former employees, officers and directors and any current or former related companies.

    (d)    "Settlement Payment" means the payment set forth in Section (C)(l) of this Settlement Agreement plus any interest earned on the payment set forth in Section (C)(l) of this Settlement Agreement once the funds have been transferred to the Plaintiff.

    (e)    "Court" means the 19th Judicial District for the Parish of East Baton Rouge, State of Louisiana.

    (f)    "Covered Conduct" means any and all acts, failures to act, conduct, omissions, events, transactions, or activity of any kind whatsoever, whether known or unknown, whether asserted in the Louisiana AG Action or the Other Louisiana Opioid Actions or unasserted, and whether discovered or undiscovered, including, but not limited to, acts, failures to act, conduct, omissions, events, transactions, or activity of any kind

whatsoever alleged in the Louisiana AG Action or the Other Louisiana Opioid Actions, occurring up to and including the Effective Date arising from or related in any way to the discovery, development, manufacturing, packaging, marketing (including advertising and promotion), labeling, sale, supply, distribution, suspicious order monitoring, use, or abuse of any Covered Products in or affecting Louisiana.

(g) "Covered Products" means all branded (not generic) Opioids developed, packaged, manufactured, marketed, labeled, promoted, marketed, sold, or distributed by Allergan or AbbVie (regardless of Schedule), including but not limited to: Anexsia, Bancap, Combunox, Dilaudid, Duradyne, Fiorinal with Codeine, Fioricet with Codeine, Kadian, Lorcet, Lorcet Plus, Maxidone, MoxDuo, Norco, Procet, Reprexain, Viberzi, Vicodin, and Vicoprofen.

(h) "Divested Actavis/Watson Generics Entities" means the entities listed in Exhibit A.

(i) "Effective Date" means the date on which this Agreement is executed by the last party to do so.

(j) "Effective Date of the Release" means the date upon which Allergan has paid all amounts due to the Plaintiff under Section (C)(1) of this Agreement.

(k) "Non-Settling Defendants" means Defendants other than Allergan named in the Louisiana AG Action or the Other Louisiana Opioid Actions.

(l) "Opioid" means those chemical compounds naturally found in the opium poppy plant, including synthetic analogues that interact with opioid receptors on nerve cells in the body and brain, and reduce the intensity of pain signals and feelings of pain.

(m) "Other Louisiana Opioid Actions" means lawsuits against Allergan raising claims or allegations concerning, related to, based upon, or in connection with the Covered Conduct filed by Other Louisiana Opioid Plaintiffs.  The current list of Other Louisiana Opioid Actions is attached as Exhibit B.

(n) "Other Louisiana Opioid Claims" means any and all claims or causes of action of any nature that have been brought or could be brought against Allergan raising claims or allegations concerning, related to, based upon, or in connection with the Covered Conduct by, on behalf of, or in the name of any entity or individual, including but not limited to any public entities or units of government in Louisiana, whether incorporated or unincorporated, parishes, cities, sheriffs, coroners, hospitals, universities, fire departments, school boards, districts, and other state or local governmental entities or organizations, and each of their their past, present, and future agencies, authorities, boards, commissions, councils, departments, districts, divisions, offices, predecessors, successors, assigns, officials (elected or unelected), employees, attorneys, agents, and representatives, and any other person or entities within the control of any of the foregoing or through which any of the foregoing may take action.  For the avoidance of doubt, "Other Opioids Claims" shall not include claims by individuals for personal injury arising out of their own use of any Opioid.

  (o) "<u>Parties</u>" and "<u>Settling Parties</u>" means Allergan and Releasors.

  (p) "<u>Releasees</u>" means Allergan and AbbVie as defined herein and any person or entity to the extent, and only to the extent, that such person or entity may have a claim for contribution, equitable or implied indemnity, comparative fault, reimbursement, or apportionment against Allergan or AbbVie relating to any Covered Conduct.

  (q) "<u>Released Claims</u>" means any and all claims or causes of action of any nature, including but not limited to the Plaintiff's state and federal statutory and common law claims, that were brought or could have been brought by Releasors related to or arising out of the Covered Conduct, whether known or unknown, suspected or unsuspected, asserted or unasserted, in law or in equity, that Releasors, whether directly, representatively, derivatively, or in any other capacity, have including all past and present civil, criminal, derivative, regulatory, administrative, or any other claims Releasors may have under any applicable state, regulatory, or administrative law or statute relating to any Covered Conduct prior to the Effective Date. For the avoidance of doubt, Released Claims do not include any claims against the Divested Actavis/Watson Generics Entities related to the discovery, development, manufacturing, packaging, marketing (including advertising and promotion), labeling, sale, supply, distribution, suspicious order monitoring, use, or abuse of generic, non-brand Opioids (not including any of the Covered Products). Any and all claims related to Allergan's Limited f/k/a Allergan plc's alleged responsibility to satisfy any judgement of a Divested Generics Entity or indemnification for any liability related to the Divested Generic Entities shall be severed and are expressly not Released Claims; for the avoidance of doubt, Allergan Limited f/k/a Allergan plc denies all such alleged responsibility or liability and reserves all defenses.

  (r) "<u>Releasors</u>" means the State of Louisiana and all of its past, present, and future agencies, authorities, boards, commissions, councils, departments, districts, divisions, subdivisions, offices, predecessors, successors, assigns, officials (elected or unelected), employees, attorneys, agents, representatives, and any other person or entities within the control of any of the foregoing or through which any of the foregoing may take action.

  **B.** **Release and Dismissals in Other Louisiana Opioid Actions.**

 1. Within sixty (60) business days of the Effective Date, Plaintiff will deliver to Allergan signed agreements from each of the Other Louisiana Opioid Plaintiffs in the Other Louisiana Opioid Actions that include (a) an irrevocable release for the Releasees identical to the release in Section D below and (b) a promise from each Other Opioid Plaintiff to voluntarily dismiss Allergan without prejudice from its or their lawsuit(s) against Allergan within five (5) days of the Effective Date of the Release, and that such dismissal shall be made with prejudice upon

5

any settlement with the Teva Pharmaceuticals, the Divested Actavis/Watson Generics Entities, or any of their respective affiliates related in any way to the discovery, development, manufacturing, packaging, marketing (including advertising and promotion), labeling, sale, supply, distribution, suspicious order monitoring, use, or abuse of Opioids (the "<u>Other Louisiana Opioid Actions Releases and Dismissals</u>").

   2. Plaintiff further represents and warrants to Allergan that (a) it will engage in reasonable best efforts to ensure that no additional Other Louisiana Opioid Claims are filed against Allergan after the Effective Date, and (b) if any Other Opioid Claim is filed after the Effective Date, the State will engage in reasonable best efforts to obtain for Allergan an Other Louisiana Opioid Actions Release and Dismissal related to that Other Opioid Claim.

   3. If Plaintiff fails to deliver the Other Louisiana Opioids Actions Releases and Dismissals as required by this Agreement, Allergan (and Allergan alone) shall have the option to declare this Settlement Agreement void ab initio and Allergan shall have no obligation to make the Settlement Payment.

   C. **Settlement Consideration.**

   1. **Settlement Payment.** In full and complete satisfaction of the releases granted in Sections B and D herein, Allergan shall pay to the Plaintiff the sum of Five Million Dollars ($5,000,000) within ten (10) days after all of the following conditions are satisfied: (a) this Agreement is executed by the last party to do so; (b) Plaintiff delivers to Allergan the Other Louisiana Opioid Actions Releases and Dismissals; and (c) Allergan receives wire transfer instructions to be promptly provided by Plaintiff to Allergan (the "<u>Settlement Payment</u>").

   2. **No Other Payments By Allergan As To Covered Conduct, Released Claims, or Other Louisiana Opioid Claims.** Other than the Settlement Payment referenced in Section (C)(l)

6

above to Plaintiff, Allergan shall have no obligation to make any further or additional payments in connection with the Louisiana AG Action or the Other Louisiana Opioid Actions, this Settlement, or any of the Covered Conduct, Released Claims, or Other Louisiana Opioid Claims, including but not limited in connection with any releases contemplated in Section D.2 below.

3. **Use of Evidence at Trial.** Plaintiff agrees that Allergan will not be a defendant in any trial of the Louisiana AG Action and that any evidence that references Allergan or the Covered Products in addition to the Divested Actavis/Watson Generics Entities will be used solely against the Divested Actavis/Watson Generics Entities or other Defendants in the Louisiana AG Action.

4. **Jury Verdict Form.** Plaintiff agrees that Allergan will not be included on the jury verdict form in any trial related to the Louisiana AG Action. This provision does not prohibit Plaintiff from including the Divested Actavis/Watson Generics Entities on the jury verdict form in any trial related to the Louisiana AG Action.

D. **Settlement of Claims and General Release.**

1. On the Effective Date of the Release, Releasors hereby release Releasee, and shall be deemed to have fully, finally, forever and permanently released, remised, acquitted, held harmless, relinquished and discharged with prejudice all Released Claims as against Releasees, and shall have covenanted not to sue Releasees with respect to any such Released Claim, and shall be permanently barred and enjoined from instituting, reinstituting, maintaining, commencing, or prosecuting any such Released Claim against the Releasees, and the release as set forth herein shall be given full *res judicata* effect. Releasors shall be deemed to have released all claims against Releasees that are or could have been brought by Releasors, including but not limited to the Plaintiff's state and federal statutory and common law claims. It is the intention of the Settling

Parties to fully and completely resolve the litigation between the Plaintiff on the one hand, and Allergan, on the other hand, with respect to Opioids.

2. Plaintiff further represents and warrants to Allergan that if Plaintiff settles with Teva Pharmaceuticals, the Divested Actavis/Watson Generics Entities, or any of their respective affiliates with respect to any claims related in any way to the discovery, development, manufacturing, packaging, marketing (including advertising and promotion), labeling, sale, supply, distribution, suspicious order monitoring, use, or abuse of Opioids, (a) Plaintiff will fully, finally, forever and permanently release, remise, acquit, hold harmless, relinquish and discharge with prejudice Releasees for any and all claims of any nature related in any way to Opioids, including generic Opioids and the Divested Actavis/Watson Generics Entities, and (b) Plaintiff will not assert direct, indirect, derivative, successor, alter-ego or any any other theories of liability against Allergan related in any way to Opioids, including generic Opioids or the Divested Actavis/Watson Generics Entities.

E. **Dismissal of Action with Prejudice.** Within five (5) days of the Effective Date of the Release, the Plaintiff shall voluntarily dismiss Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. without prejudice from the Louisiana AG Action. Such dismissal shall be made with prejudice upon any settlement with Teva Pharmaceuticals, the Divested Actavis/Watson Generics Entities, or any of their respective affiliates related in any way to the discovery, development, manufacturing, packaging, marketing (including advertising and promotion), labeling, sale, supply, distribution, suspicious order monitoring, use, or abuse of Opioids.

F. **No Admission of Liability:** The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the

Louisiana AG Action, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Louisiana AG Action or the Other Louisiana Opioid Actions. Allergan denies the allegations in the Louisiana AG Action and the Other Louisiana Opioid Actions and denies any civil or criminal liability in the Louisiana AG Action and the Other Louisiana Opioid Actions.

      G.    **Miscellaneous Provisions.**

      1.    **Use of Agreement as Evidence.** Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the Covered Conduct alleged in the Louisiana AG Action or the Other Louisiana Opioid Actions, of any allegation made in those cases, or of any wrongdoing or liability of any Releasees; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that Releasees may file this Agreement in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or to support a claim for contribution and/or indemnification.

      2.    **Voluntary Settlement.** This Settlement Agreement was negotiated in good faith and at arms-length over several months with the assistance of the Court, and the exchange of the

9

Settlement Payment for the release set forth herein is agreed to represent appropriate and fair consideration.

3. **Retention of Exclusive Jurisdiction.** The Court shall retain jurisdiction over all disputes arising under this Agreement.

4. **Authorization to Enter Settlement Agreement.** The undersigned representative(s) of Allergan represent that they are fully authorized to enter into and to execute this Agreement on behalf of Allergan, and Allergan has the power and authority to enter into and perform this Settlement Agreement, and the execution and performance of this Settlement Agreement has been duly authorized by all requisite corporate or other legal action. The undersigned representative(s) of Plaintiff represent that they are fully authorized to enter into and to execute this Agreement on behalf of Plaintiff, and Plaintiff has the power and authority to enter into and perform this Settlement Agreement, and the execution and performance of this Settlement Agreement has been duly authorized by all requisite corporate or other legal action.

5. **Notices.** All notices to counsel under this Agreement shall be in writing. Each such notice shall be given either by (i) e-mail; (ii) hand delivery; or (iii) registered or certified mail, return receipt requested, postage pre-paid; and shall be addressed to counsel at their addresses set forth on the signature page hereof.

6. **Tax.** The Settling Parties understand and agree that the Settlement Payment is restitution for amounts being sought as a result of the Plaintiff's allegation of violation of law resulting in alleged damage or harm to Plaintiff as set forth in the Louisiana AG Action and the Other Louisiana Opioid Actions. The Settling Parties understand and agree that the Settlement Payment is less than the amount being sought by the Plaintiff from Allergan in the Louisiana AG Action. The Settling Parties have agreed to the Settlement Payment in order to avoid the delay,

10

expense, inconvenience, and uncertainty of further litigation of the Louisiana AG Action and the Other Louisiana Opioid Actions. To the extent an appropriate official of the Plaintiff makes any return setting forth the information required under 26 U.S.C. Section 6050X, such official will report such information consistent with the terms of this Agreement.

7. **Non-Appealable and Binding Agreement.** This Agreement shall be non-appealable and shall constitute a final judgment upon the Effective Date. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

8. **Confidentiality.** The terms of the Agreement will remain confidential to the extent permitted by public record requirements. The Settling Parties, however, may advise the Non-Settling Defendants and may publicly disclose the existence of the Agreement and the amount of the Settlement Payment.

9. **Choice of Law.** Any dispute arising from or in connection with the completion and execution of the Settlement Agreement shall be governed by Louisiana law without regard to its choice of law provisions.

10. **No Conflict Intended.** The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement.

11. **No Party Deemed to be the Drafter.** None of the parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

12. **Amendment; Waiver.** This Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party

of any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Agreement.

13. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

14. **Integrated Agreement.** This Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties or inducements have been made to any party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Agreement as of the date set forth below.

Dated:

ALLERGAN

Allergan Limited f/k/a Allergan plc

By: _____
Name: Donna M. Welch
Its:    Counsel, with authority

Allergan Finance, LLC f/k/a Actavis Inc., f/k/a Watson Pharmaceuticals, Inc.

By: _____
Name: Donna M. Welch
Its:    Counsel, with authority

Allergan Sales, LLC

By: _____
Name: Donna M. Welch
Its:    Counsel, with authority

Allergan USA, Inc.

By: _____
Name: Donna M Welch
Its:    Counsel, with authority

PLAINTIFF

State of Louisiana

By: _____
Name: Stacie Lambert deBlieux
Its:    Authorized Signatory

13