## SETTLEMENT AGREEMENT

This Settlement Agreement is made and entered into this 15th day of February 2022, between Endo, as defined herein, and the State of Louisiana ("Plaintiff") in the lawsuit captioned, *State of Louisiana vs. Purdue Pharma, L.P., et al*. (Case No. 661638) (La. 19th Judicial District Court for the Parish of East Baton Rouge) (the "Louisiana AG Action") (collectively, the "Settling Parties").  This Settlement Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof (the "Settlement").

WHEREAS, the Plaintiff filed its complaint in the Louisiana AG Action (i) alleging that Endo, among others, violated Louisiana law by deceptively marketing opioid pain medications so as to overstate their efficacy and falsely downplay the associated risk of addiction, which resulted in an opioid crisis and public nuisance in Louisiana; (ii) alleging that Endo, among others, violated federal and state law by failing to monitor, report, and not ship alleged suspicious orders of opioid pain medications; and (iii) asserting claims for damages, equitable abatement, civil penalties and other equitable relief;

WHEREAS, numerous Litigating Subdivisions (defined below) have filed Actions (defined below) in various forums against Endo, among others, raising Claims or allegations concerning, related to, based upon, or in connection with the Covered Conduct (defined below) and seeking relief that overlaps in whole or in part with the relief sought in the Louisiana AG Action;

WHEREAS, there are numerous Subdivisions (defined below) that are not Litigating Subdivisions ("Non-Litigating Subdivisions") that could seek to file additional Actions raising Claims (defined below) or allegations concerning, related to, based upon, or in connection with

the Covered Conduct and seeking relief that overlaps in whole or in part with the relief sought in the Louisiana AG Action and the Actions filed by Litigating Subdivisions;

WHEREAS, Endo: (i) denies each and all of the Claims and allegations of wrongdoing made by the Plaintiff in the Louisiana AG Action and in each of the Actions and maintains that it has meritorious defenses; (ii) denies all assertions of wrongdoing or liability against Endo arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Louisiana AG Action or in other Actions already brought by Litigating Subdivisions or that could be brought by such plaintiffs or by Non-Litigating Subdivisions; (iii) contends that the factual allegations made in the Louisiana AG Action and the Litigating Subdivisions' Actions relating to Endo are false and materially inaccurate; (iv) denies that Plaintiff, any Litigating Subdivision, any other Subdivision, or any Louisiana resident, was harmed by any conduct of Endo alleged in the Louisiana AG Action, the Litigating Subdivisions' Actions, or otherwise; (v) denies liability, expressly denies any wrongdoing, and denies it violated any federal or state statute or common law; and (vi) maintains that Endo would be able to successfully defend against Plaintiff's and Litigating Subdivisions' claims and allegations at trial, that the facts do not support the allegations, that Endo engaged in no misconduct or unlawful activity, and caused no harm to Plaintiff or to the Litigating Subdivisions, other Subdivisions, or any Louisiana residents;

WHEREAS, the Parties have investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in the Louisiana AG Action (which are the same or similar to the claims and defenses asserted in the other Actions);

WHEREAS, the Parties have each considered the costs and delays and uncertainty associated with the continued prosecution and defense of the Louisiana AG Action, and have reached an agreement to resolve the Louisiana AG Action;

WHEREAS, the Parties also wish to simultaneously resolve all other actions against Endo involving Covered Conduct in the State of Louisiana, and to that end Plaintiff has obtained authority to negotiate on behalf of and bind Subdivisions to forever release their Claims as described herein;

WHEREAS, the Parties believe the Settlement set forth herein (i) avoids the uncertainties of litigation and assures that the benefits reflected herein are obtained; and (ii) the Plaintiff has concluded that the terms are fair, reasonable and adequate and in the best interest of Plaintiff and all Subdivisions and Louisiana citizens and residents;

WHEREAS, the Plaintiff and Endo agree that neither this Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be a concession as to any Claim, an admission, evidence of any violation of any statute or law, evidence of any liability or wrongdoing by Endo, or evidence of the truth of any of the Claims, allegations, denials, or defenses made in any Action; and

WHEREAS, arm's-length settlement negotiations have taken place over the course of several months between Endo and the Plaintiff;

NOW, THEREFORE, IT IS HEREBY AGREED by and between Plaintiff and Endo, by and through their respective counsel, as follows:

A.  **Definitions.**  As used in this Agreement the following capitalized terms have the meanings specified below.

(a)  "Actions" means the Louisiana AG Action and any lawsuit by the State, a Subdivision, or any other Louisiana governmental entity asserting any Released Claim against any Releasee.

(b)  "Agreement," "Settlement" or "Settlement Agreement" means this Settlement Agreement, together with any exhibits attached hereto, which are incorporated herein by reference.

(c)     "Bar" means either:  (1) a law barring all Subdivisions in the State of Louisiana from maintaining Released Claims against Releasees (either through a direct bar or through a grant of authority to release Claims and the exercise of such authority in full) or (2) a ruling by the Louisiana Supreme Court (or the Louisiana Court of Appeal if a decision is not subject to further review by the Louisiana Supreme Court) setting forth the general principle that Subdivisions in the State of Louisiana may not maintain any Released Claims against Releasees, whether on the ground of this Agreement (or the release in it) or otherwise.  For the avoidance of doubt, a law or ruling that is conditioned or predicated upon payment by a Releasee (apart from the payments by Endo contemplated under this Agreement) shall not constitute a Bar.

(d)     "Claim" means any past, present or future cause of action, claim for relief, cross-claim or counterclaim, theory of liability, demand, derivative claim, request, assessment, charge, covenant, damage, debt, lien, loss, penalty, judgment, right, obligation, dispute, suit, contract, controversy, agreement, parens patriae claim, promise, performance, warranty, omission, or grievance of any nature whatsoever, whether legal, equitable, statutory, regulatory or administrative, whether arising under federal, state or local common law, statute, regulation, guidance, ordinance or principles of equity, whether filed or unfiled, whether asserted or unasserted, whether known or unknown, whether accrued or unaccrued, whether foreseen, unforeseen or unforeseeable, whether discovered or undiscovered, whether suspected or unsuspected, whether fixed or contingent, and whether existing or hereafter arising, in all such cases, including, but not limited to, any request for declaratory, injunctive, or equitable relief, compensatory, punitive, or statutory damages, absolute liability, strict liability, abatement, restitution, subrogation, contribution, indemnity, apportionment, disgorgement, reimbursement, attorney fees, expert fees, consultant fees, fines, penalties, expenses, costs or any other legal, equitable, civil, administrative or regulatory remedy whatsoever.

(e)     "Claim-Over" means a Claim asserted by any entity that is not a Releasor against a Releasee on the basis of contribution, indemnity, or other claim-over on any theory relating to Claims arising out of or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Releasee) asserted by a Releasor.

(f)     "Court" means the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

(g)     "Covered Conduct" means any actual or alleged act, failure to act, negligence, statement, error, omission, breach of any duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity of any kind whatsoever from the beginning of time (and any past, present or future consequence of any such act, failure to act, negligence, statement, error, omission, breach of duty, conduct, event, transaction, agreement, misstatement, misleading statement or other activity) arising from or relating in any way to: (1) the discovery, development, manufacture, packaging, repackaging, marketing, promotion, advertising, labeling, recall, withdrawal, distribution, delivery, monitoring, reporting, supply, sale, prescribing, dispensing, physical security, warehousing, use or abuse of, or operating procedures relating to, any Product, or any system, plan, policy or advocacy relating to any Product or class of Products, including, but not limited to, any unbranded promotion, marketing, programs or campaigns relating

4

to any Product or class of Products; (2) the characteristics, properties, risks or benefits of any Product; (3) the reporting, disclosure, non-reporting or non-disclosure to federal, state or other regulators of orders placed with any Releasee; (4) the purchasing, selling, acquiring, disposing of, importing, exporting, applying for quota for, procuring quota for, handling, processing, packaging, supplying, distributing, converting, or otherwise engaging in any activity relating to, precursor or component Products, including, but not limited to, natural, synthetic, semi-synthetic, or chemical raw materials, starting materials, active pharmaceutical ingredients, drug substances or any related intermediate Products; and (5) diversion control programs or suspicious order monitoring.

(h)      "Effective Date of the Release" means the date upon which Endo has paid the amount due to Plaintiff under Section C.1 of this Agreement.

(i)      "Endo" means Endo Health Solutions Inc. and Endo Pharmaceuticals Inc.

(j)      "Execution Date" means the date on which this Agreement is executed by the last Party to do so.

(k)      "Litigating Subdivision" means a Subdivision (or Subdivision official) that has brought any Released Claim against any Releasees, including, but not limited to, the agreed list of Litigating Subdivisions set forth in Exhibit A.

(l)       "Non-Litigating Subdivision" means a Subdivision that is not a party to any Action.

(m)      "Participating Subdivision" means any Subdivision that has agreed to participate in the Louisiana State-Local Government Opioid Litigation Memorandum of Understanding, which is attached as Exhibit C, and pursuant to which Plaintiff has been granted authority to negotiate on behalf of and bind all Participating Subdivisions.  Written consents from each Participating Subdivision will be attached collectively as Exhibit D.

(n)      "Parties" and "Settling Parties" means Endo and Plaintiff, with each being a "Party" and "Settling Party".

(o)      "Primary Subdivision" means:  (1) a parish, regardless of population, and includes (but is not limited to) the sheriff, police jury (including each police juror) and district attorney of each parish; or (2) a Subdivision that is not a parish, but is a General Purpose Government entity (including but not limited to a municipality, city, town, township, village, borough, gore or any other entity that provides municipal-type government) with a population of more than 10,000, including, but not limited to, the agreed list of Primary Subdivisions attached hereto as Exhibit B.

(p)      "Product" means any chemical substance, whether used for medicinal or non-medicinal purposes, and whether natural, synthetic, or semi-synthetic, or any finished pharmaceutical product made from or with such substance, that is:  (1) an opioid or opiate, as well as any product containing any such substance; or (2) benzodiazepine, carisoprodol, or gabapentin; or (3) any combination of chemical substances prescribed, sold, bought or dispensed to be used together that includes opioids or opiates.  "Product" shall include, but

is not limited to, any substance consisting of or containing buprenorphine, codeine, fentanyl, hydrocodone, hydromorphone, meperidine, methadone, morphine, oxycodone, oxymorphone, tapentadol, tramadol, opium, heroin, carfentanil, diazepam, estazolam, quazepam, alprazolam, clonazepam, oxazepam, flurazepam, triozolam, temazepam, midazolam, carisoprodol, gabapentin, or any variant of these substances or any similar substance.

(q)     "Released Claims" means any and all Claims that directly or indirectly are based on, arise out of, or in any way relate to or concern the Covered Conduct.  Without limiting the foregoing, Released Claims include any Claims that have been asserted against the Releasees by Plaintiff or any other Subdivision in any federal, state or local Action or proceeding (whether judicial, arbitral or administrative) based on, arising out of or relating to, in whole or in part, the Covered Conduct, or any such Claims that could be or could have been asserted now or in the future in those Actions or in any comparable Action or proceeding brought by Plaintiff, any other Subdivision, or any Releasor (whether or not such State, Subdivision, or Releasor has brought such Action or proceeding).  Released Claims also include all Claims asserted in any proceeding to be dismissed pursuant to this Agreement, whether or not such Claims relate to Covered Conduct.  The Parties intend that this term, "Released Claims," be interpreted broadly.  This Agreement does not release Claims by private individuals for damages for any alleged personal injuries arising out of their own use of any Product.  It is the intent of the Parties that Claims by private individuals be treated in accordance with applicable law.  Released Claims is also used herein to describe Claims brought or maintained in the future that would have been Released Claims if they had been brought by a Releasor against a Releasee.

(r)     "Releasees" means: (i) Endo Health Solutions Inc.; (ii) Endo Pharmaceuticals Inc.; (iii) all of their respective past and present direct or indirect parents, subsidiaries, divisions, affiliates, joint ventures, predecessors, successors, assigns and insurers (in their capacity as such), including, but not limited to, Par Pharmaceutical, Inc., Par Pharmaceutical Companies, Inc., and Endo International plc; (iv) the past and present officers, directors, members, shareholders (solely in their capacity as shareholders of the foregoing entities), partners, trustees, employees, agents, and attorneys of each of the foregoing entities and persons referenced in clauses (i) through (iii) above for actions or omissions that occurred during and related to their work for, or employment with, any of the foregoing entities with respect to the Covered Conduct or Released Claims; and (v) the insurers (in their capacity of such) of each of the entities and persons referenced in clauses (i) through (iv) above.

(s)     "Releasors" means with respect to Released Claims:  (1) the State; (2) each Participating Subdivision; and (3) without limitation and to the maximum extent of the power of each of the State, the Louisiana Attorney General and/or Participating Subdivision to release Claims, (a) the State of Louisiana's and each Subdivision's departments, agencies, divisions, boards, commissions, Subdivisions, districts, instrumentalities of any kind and any person in his or her official capacity, whether elected or appointed to lead or serve any of the foregoing, and any agency, person or entity claiming by or through any of the foregoing; (b) any public entities, public instrumentalities, public educational institutions, unincorporated districts, fire districts,

irrigation districts, water districts, law enforcement districts, emergency services districts, school districts, hospital districts and other special districts in the State of Louisiana, and (c) any person or entity acting in a parens patriae, sovereign, quasi-sovereign, private attorney general, *qui tam*, taxpayer, or other capacity seeking relief on behalf of or generally applicable to the general public with respect to the State of Louisiana or any Subdivision in the State of Louisiana, whether or not any of them participates in this Agreement.  Nothing in this definition shall be construed to limit the definition of "Subdivision" in subsection A(u) below.  In addition to being a Releasor as provided herein, a Participating Subdivision shall also provide written consent to Plaintiff sufficient to authorize Plaintiff to bind the Participating Subdivision to the terms of this Agreement and release the Participating Subdivision's Claims against Releasees.  Such written consents of each Participating Subdivision shall be attached collectively as Exhibit D.

(t)  "Settlement Payment" means the payment set forth in Section C.1 of this Settlement Agreement.

(u)  "Subdivision" means (1) any General Purpose Government entity (including, but not limited to, a municipality, county, county subdivision, city, town, township, parish, parish subdivision, village, borough, gore or any other entity that provides municipal-type government), School District, or Special District within the State, and (2) any other subdivision or subdivision official or sub-entity of or located within the State (whether political, geographical, or otherwise, whether functioning or non-functioning, regardless of population overlap, and including, but not limited to, nonfunctioning governmental units and public institutions) that has filed or could file a lawsuit that includes a Released Claim against a Releasee in a direct, parens patriae, or any other capacity.  "General Purpose Government," "School District," and "Special District" shall correspond to the "five basic types of local governments" recognized by the U.S. Census Bureau and match the 2017 list of Governmental Units.  The three (3) General Purpose Governments are county (or parish), municipal, and township governments; the two (2) special purpose governments are School Districts and Special Districts.  "Fire District," "Health District," "Hospital District," and "Library District" shall correspond to categories of Special Districts recognized by the U.S. Census Bureau.  References to the State's Subdivisions or to a Subdivision "in," "of," or "within" the State include Subdivisions located within the State even if they are not formally or legally a sub-entity of the State.

**B.  Release of Claims of Plaintiff, Litigating Subdivisions, Primary Subdivisions, and Other Subdivisions.**

1.  It is the intention of the Parties to fully and finally resolve all Released Claims that have been or could be brought against the Releasees by Plaintiff or any Subdivision with respect to the Covered Conduct.  Plaintiff represents and warrants that it has obtained a consensual release of any and all Claims involving Covered Conduct that Plaintiff, Litigating Subdivisions, and

Primary Subdivisions, including any Primary Subdivision that is a Non-Litigating Subdivision, have asserted or could assert against the Releasees.  Consensual releases of all such Subdivisions will be attached collectively as Exhibit D.  Regardless whether such consensual release is obtained, Plaintiff represents and warrants under this Agreement that it is exercising its authority under law to release any and all Claims involving Covered Conduct that Plaintiff and all Subdivisions, including any Non-Litigating Subdivision, have asserted or could assert against the Releasees. Plaintiff further represents and warrants that it has the authority to bind, and under this Agreement is exercising such authority to bind, Plaintiff and all Subdivisions, including all Non-Litigating Subdivisions, regardless of whether they become Participating Subdivisions, to the terms of this Agreement.

2.      In the case of each Litigating Subdivision, Plaintiff will deliver to Endo such Litigating Subdivision's agreement to file (or to allow Plaintiff to file on its behalf), within seven (7) days after the Effective Date of the Release, a notice or stipulation of voluntary dismissal with prejudice of any and all Released Claims asserted by the Litigating Subdivision against the Releasees, with each party to bear its own costs.

3.      Plaintiff represents and warrants that it has the authority to release, and under this Agreement is releasing, the Claims of Louisiana State University and Agricultural and Mechanical College Board and the University of Louisiana System and shall cause each such entity to file a notice or stipulation of voluntary dismissal with prejudice of any and all Released Claims asserted by such entity against Releasees, with each party to bear its own costs.

4.      Plaintiff represents and warrants that, if any Action is pending against one or more Releasees after the Effective Date of the Release or is filed by a Subdivision against any Releasee on or after the Execution Date, Plaintiff will obtain dismissal of such Action as to such Releasees as soon as reasonably possible.  Depending on facts and circumstances, Plaintiff may obtain

dismissal, among other ways, by intervening in such Action to move to dismiss or otherwise terminate the Subdivision's Claims in the Action or by commencing a declaratory judgment or other action that establishes a Bar to the Subdivision's Claims and Action.  For avoidance of doubt, Plaintiff will seek dismissal of an Action under this paragraph regardless of whether the Subdivision in such Action is a Participating Subdivision, Primary Subdivision or other Subdivision.

5.      In the event that the actions required of Plaintiff in Section B.4 fail to secure the prompt dismissal or other termination of any Action by any Subdivision against any Releasee, Endo (and Endo alone) shall have the option to declare this Settlement Agreement void *ab initio* and (i) Endo shall have no obligation to make the Settlement Payment, if not already made, or (ii) if the Settlement Payment has been made to Plaintiff, the Settlement Payment shall be refunded in its entirety to Endo forthwith following Endo's written declaration to Plaintiff declaring this Settlement Agreement void *ab initio* pursuant to the terms of this Section B.5.  Provided that Endo shall provide Plaintiff with reasonably prompt notice of any pending or newly filed Action and at least thirty (30) days following such notice to obtain the dismissal required by Section B.4 prior to declaring the Settlement Agreement void.

6.      Plaintiff further represents and warrants that no portion of the Settlement Payment described in Section C.1 will be distributed to or used for the benefit of any Subdivision that is not a Participating Subdivision.

C.      **Settlement Consideration**.

1.      **Settlement Payment.** In full and complete satisfaction of the releases and dismissals granted in Sections B and D herein, Endo Pharmaceuticals Inc. shall pay to the Plaintiff the sum of Seven Million Five Hundred Thousand Dollars ($7,500,000) (the "Settlement Payment") within fourteen (14) days after all of the following conditions are satisfied:  (a) this

Agreement is executed by the last Party to do so; (b) Plaintiff delivers to Endo this Agreement executed by Plaintiff, the written consensual releases required by Section B.1 duly executed by all Litigating Subdivisions and Primary Subdivisions, and in the case of every Litigating Subdivision, each such Litigating Subdivision's agreement to dismiss its case with prejudice (or to allow Plaintiff to dismiss the case on the Litigating Subdivision's behalf) as required by Section B.2; (c) Plaintiff has dismissed the Louisiana AG Action with prejudice as provided in Section E and caused the dismissal of the Actions of Louisiana State University and Agricultural and Mechanical College Board and the University of Louisiana System with prejudice as provided in Section B.3; and (d) Endo receives an executed W-9 and wire transfer instructions to be promptly provided by Plaintiff in writing to Endo.

2.  **No Other Payments By Releasees as to Covered Conduct, Released Claims, the Louisiana AG Action, Other Actions, Plaintiff or Any Subdivision.**  Other than the Settlement Payment referenced in Section C.1, none of the Releasees shall have any obligation to make any further or additional payments in connection with the Louisiana AG Action, any other Actions, any Subdivision, this Settlement, or any of the Covered Conduct or Released Claims.

3.  **Apportionment and Distribution of the Settlement Payment.**  Except as provided in Section B.6 above, the Settlement Payment may be apportioned among and used by Plaintiff and the Participating Subdivisions at the sole discretion of Plaintiff and the Participating Subdivisions as may be agreed upon among them, and Endo shall have no duty, liability, or influence of any kind with respect to that further apportionment and use.  Plaintiff specifically represents, however, that any such apportionment and use shall be made in accordance with the Louisiana State-Local Government Opioid Litigation Memorandum of Understanding attached hereto as <u>Exhibit C</u> and in accordance with all applicable laws.

4.   **Use of Evidence at Trial.**  Plaintiff agrees that none of the Releasees will be a defendant in any trial of the Louisiana AG Action, that no Releasee will be subpoenaed or called to testify by Plaintiff in any trial of the Louisiana AG Action, and that any evidence that references the Releasees or the Products will be used solely against other defendants in the Louisiana AG Action.

5.   **Jury Verdict Form.**  Plaintiff agrees that none of the Releasees will be included on the jury verdict form in any trial related to the Louisiana AG Action.

D.   **Settlement of Claims and General Release**.

1.   **Scope.**  On the Effective Date of the Release, Releasors shall be deemed to have fully, finally, and forever released all Releasees from all Released Claims.  Plaintiff and all Participating Subdivisions, on behalf of themselves and all other Releasors (whether or not they have signed this Agreement or the consensual releases to be attached as <u>Exhibit D</u>), hereby absolutely, unconditionally, and irrevocably covenant not to bring, file, or claim, or to cause, assist, or permit to be brought, filed, or claimed, any Released Claims of any type in any forum whatsoever against Releasees.  For the avoidance of doubt, Releasors agree that this Settlement Agreement and the releases contained herein shall fully and completely resolve any past, present, or future liability that any Releasee may have arising from, relating to or based on the Covered Conduct, whether in the Actions or otherwise.  The releases provided for in this Agreement are intended by the Settling Parties to be broad and shall be interpreted so as to give the Releasees the broadest possible bar against any and all Released Claims.  This Settlement Agreement is, will constitute, and may be pleaded as a complete bar to any Released Claim asserted against any Releasees, whether against Plaintiff, any Participating Subdivision, or any other Subdivision.

2.   **General Release.**  In connection with the releases provided pursuant to this Settlement Agreement, Plaintiff and all Participating Subdivisions, on behalf of themselves and all

other Releasors, expressly waive, release, and forever discharge any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States or other jurisdiction, or principle of common law, which is similar, comparable, or equivalent to § 1542 of the California Civil Code, which reads:

> **General Release; extent.** A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

A Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the Released Claims, but Plaintiff and all Participating Subdivisions, on behalf of themselves and all other Releasors, hereby expressly waive and fully, finally, and forever settle, release and discharge, upon the Effective Date of the Release, any and all Released Claims which may exist as of this date but which they do not know or suspect to exist, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Settlement Agreement.

3. **Claim-Over and Non-Party Settlement.**

    (a) <u>Statement of Intent.</u> It is the intent of the Parties that:

        (1) The payment specified in Section C.1 shall be the sole payment made by the Releasees to the Releasors involving, arising out of, or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Releasee);

        (2) Claims by Releasors against non-Parties should not result in additional payments by Releasees, whether through contribution, indemnification or any other means; and

        (3) The Settlement effects a good-faith release and covenant not to sue and meets the requirements of the Uniform Contribution Among Joint Tortfeasors Act and any similar state law or doctrine that reduces or discharges a released party's liability to any other parties.

        (4) The provisions of this Section D.3 are intended to be implemented consistent with these principles. This Agreement and the releases and dismissals provided for herein are made in good faith.

12

(b)     Contribution/Indemnity Prohibited.  No Releasee shall seek to recover for amounts paid under this Agreement based on indemnification, contribution, or any other theory, from a manufacturer, pharmacy, hospital, pharmacy benefit manager, health insurer, third-party vendor, trade association, distributor, or health care practitioner, provided that a Releasee shall be relieved of this prohibition with respect to any entity that asserts a Claim-Over against it.  For the avoidance of doubt, nothing herein shall prohibit a Releasee from recovering amounts owed pursuant to insurance contracts.

(c)     Non-Party Settlement.  To the extent that any Releasor settles any Claims arising out of or related to Covered Conduct (or conduct that would be Covered Conduct if engaged in by a Releasee) ("Non-Party Covered Conduct Claims") it may have against any entity that is not a Releasee (a "Non-Released Entity") that is a defendant in the Louisiana AG Action or any other Action and provides a release to such Non-Released Entity (a "Non-Party Settlement"), including in any bankruptcy case or through any plan of reorganization (whether individually or as a class of creditors), the Releasor will include (or in the case of a Non-Party Settlement made in connection with a bankruptcy case, will cause the debtor to include) in the Non-Party Settlement, unless prohibited from doing so under applicable law, a prohibition on contribution or indemnity of any kind substantially equivalent to that required from Endo in subsection D.3(b), or a release from such Non-Released Entity in favor of the Releasees (in a form equivalent to the releases contained in this Agreement) of any Claim-Over.  The obligation to obtain the prohibition and/or release required by this subsection is a material term of this Agreement.  Plaintiff further represents and warrants that it has previously obtained prohibitions on contribution or indemnity that are substantially equivalent to that required from Endo in subsection D.3(b) in prior Non-Party Settlements with Janssen, AmerisourceBergen, Cardinal Health, and McKesson.

(d)     Claim-Over.  In the event that any Releasor obtains a judgment with respect to Non-Party Covered Conduct against a Non-Released Entity that does not contain a prohibition like that in subsection D.3(b), or any Releasor files a Non-Party Covered Conduct Claim against a Non-Released Entity in bankruptcy or a Releasor is prevented for any reason from obtaining a prohibition/release in a Non-Party Settlement as provided in subsection D.3(c), and such Non-Released Entity asserts a Claim-Over against a Releasee, that Releasor and Endo shall take the following actions to ensure that the Releasees do not pay more with respect to Covered Conduct to Releasors or to Non-Released Entities than the amounts owed under this Settlement Agreement:

(1)     Endo shall notify that Releasor of the Claim-Over within sixty (60) days of the assertion of the Claim-Over or sixty (60) days of the Effective Date of the Release, whichever is later.

(2)     Endo and that Releasor shall meet and confer concerning the means to hold Releasees harmless and ensure that Releasees are not required to make any payment with respect to Covered Conduct (beyond the amounts that will already have been paid by Endo under this Settlement Agreement).

(3)     That Releasor and Endo shall take steps sufficient and permissible under Louisiana law to hold Releasees harmless from the Claim-

13

Over and ensure Releasees are not required to make any payment with respect to Covered Conduct (beyond the amounts that will already have been paid by Endo under this Settlement Agreement). Such steps may include, where permissible:

    i. Filing of motions to dismiss or such other appropriate motion(s) by Endo or Releasees, and supported by Releasors, in response to any claim filed in litigation or arbitration, including good-faith efforts by Releasors, reasonably requested by Endo, to hold Endo harmless;

    ii. Reduction of that Releasor's Claim and any judgment it has obtained or may obtain against such Non-Released Entity by whatever amount or percentage is necessary to extinguish such Claim-Over under applicable law, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

    iii. Placement into escrow of funds paid by the Non-Released Entities such that those funds are available to satisfy the Claim-Over;

    iv. Return of monies paid by Endo under this Settlement Agreement to permit satisfaction of a judgment against or settlement with the Non-Released Entity to satisfy the Claim-Over;

    v. Payment of monies to Endo by that Releasor to ensure Endo and the other Releasees are held harmless from such Claim-Over, up to the amount that Releasor has obtained, may obtain, or has authority to control from such Non-Released Entity;

    vi. Credit to Endo under this Settlement Agreement to reduce the overall amounts to be paid under the Settlement Agreement such that Endo and the other Releasees are held harmless from the Claim-Over; and

    vii. Such other actions as that Releasor and Endo may devise to hold Endo and the other Releasees harmless from the Claim-Over.

(4) The actions of that Releasor and Endo taken pursuant to paragraph (3) must, in combination, ensure that Endo and the Releasees collectively are not required to make any payment with respect to Covered Conduct (beyond the amounts that will already have been paid by Endo under this Settlement Agreement).

(5)     In the event of any dispute over the sufficiency of the actions taken pursuant to paragraph (3), such dispute may be heard by the Court. The Court shall have authority to require Releasors to implement a remedy that includes one or more of the actions specified in paragraph (3) sufficient to hold Releasees fully harmless.  In the event that the Court's actions do not result in Releasees being held fully harmless, Endo and, as applicable, any other Releasee, shall have a claim for breach of this Agreement by Releasors, with the remedy being payment of sufficient funds to hold Endo and the other Releasees harmless from the Claim-Over.  For the avoidance of doubt, the prior sentence does not limit or eliminate any other remedy that Endo or any other Releasee may have.

4.     **Cooperation.**  Releasors, including Plaintiff and Participating Subdivisions, agree that (i) they will not publicly or privately encourage any other Releasor or Subdivision to bring or maintain any Released Claim and (ii) they will cooperate in good faith with the Releasees to secure the prompt dismissal of any and all Released Claims.

E.     **Dismissal of Action with Prejudice.**  In connection with this Agreement, Plaintiff agreed to voluntarily dismiss Endo with prejudice from the Louisiana AG Action and moved for such dismissal on February 10, 2022.  To the extent such dismissal is not effectuated by the Execution Date, Plaintiff agrees to cooperate in securing Endo's dismissal with prejudice from the Louisiana AG Action.

F.     **No Admission of Liability.**  The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Louisiana AG Action and all other Actions, and this Settlement shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Louisiana AG Action or the other Actions.  Endo denies the allegations in the Louisiana AG Action and the other Actions and denies any civil or criminal liability in the Louisiana AG Action and the other Actions.

### G. Miscellaneous Provisions.

1. **Use of Agreement as Evidence.**  Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement:  (i) is or may be deemed to be or may be used as an admission of, or evidence of, the Covered Conduct alleged in the Louisiana AG Action or the other Actions, of any allegation made in those cases, or of any wrongdoing or liability of any Releasees; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Neither this Agreement nor any act performed or document executed pursuant to or in furtherance of this Agreement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that Releasees may file this Agreement in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim or to support a claim for contribution and/or indemnification.

2. **Voluntary Settlement.**  This Settlement Agreement was negotiated in good faith and at arm's-length over several weeks, and the exchange of the Settlement Payment for the release set forth herein is agreed to represent appropriate and fair consideration.

3. **Authorization to Enter Settlement Agreement.**  Each Party specifically represents and warrants that this Settlement Agreement constitutes a legal, valid and binding obligation of such Party.  Each signatory to this Settlement Agreement on behalf of a Party specifically represents and warrants that he or she has full authority to enter into this Settlement Agreement on behalf of such Party.  Plaintiff specifically represents and warrants that it has concluded that the terms of this Settlement Agreement are fair, reasonable, adequate and in the

public interest, and that it has satisfied all conditions and taken all actions required by law in order to validly enter into this Settlement Agreement.  Plaintiff specifically represents and warrants that, other than the Claims released by this Agreement, it has no interest (financial or otherwise) in any other Claim against any Releasee related to the Covered Conduct.  In addition, Plaintiff specifically represents and warrants that through this Settlement Agreement it has the power and authority to bind all persons and entities, including all Subdivisions, with an interest in the Louisiana AG Action and all other Actions, whether filed previously or in the future.

4.      **Dispute Resolution.**  If Plaintiff believes Endo is not in compliance with any term of this Settlement Agreement, then it shall (i) provide written notice to Endo specifying the reason(s) why the Plaintiff believes Endo is not in compliance with the Settlement Agreement; and (ii) allow Endo at least thirty (30) days to attempt to cure such alleged non-compliance (the "Cure Period").  In the event the alleged non-compliance is cured within the Cure Period, Endo shall not have any liability for such alleged non-compliance.  Plaintiff may not commence a proceeding to enforce compliance with this Agreement before the expiration of the Cure Period.

5.      **No Third-Party Beneficiaries.**  Except as to Releasees, nothing in this Settlement Agreement is intended to or shall confer upon any third party any legal or equitable right, benefit or remedy of any nature whatsoever.

6.      **Notices.**  All notices under this Agreement shall be in writing and delivered to the persons specified in this paragraph ("Notice Designees") via: (i) e-mail; and (ii) either hand delivery or registered or certified mail, return receipt requested, postage pre-paid.

Notices to Plaintiff, the State of Louisiana, shall be delivered to:

Director of Civil Division
Louisiana Department of Justice
1885 North Third Street
Baton Rouge, Louisiana 70802

and

Director of Civil Division
Louisiana Department of Justice
P.O. Box. 94005
Baton Rouge, Louisiana 70804

Notices to Endo shall be delivered to:

Geoffrey M. Wyatt
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue N.W.
Washington, DC 20005
geoffrey.wyatt@skadden.com

Henninger S. Bullock
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
hbullock@mayerbrown.com

and

Matthew J. Maletta
Executive Vice President and Chief Legal Officer
Endo
1400 Atwater Drive
Malvern, PA 19355
maletta.matthew@endo.com

7.    **Taxes.**  Each of the Parties acknowledges, agrees and understands that it is its intention that, for purposes of Section 162(f) of the Internal Revenue Code, the Settlement Payment by Endo constitutes restitution for damage or harm allegedly caused by the potential violation of a law and/or is an amount paid to come into compliance with the law.  The Parties acknowledge, agree and understand that no portion of the Settlement Payment represents reimbursement to Plaintiff or other person or entity for the costs of any investigation or litigation, and that no portion of the Settlement Payment represents or should properly be characterized as the payment of fines, penalties, or other punitive assessments.  Plaintiff acknowledges, agrees and understands that Endo intends to allocate the cost of the Settlement Payment among the Releasees

using a reasonable basis. If requested by Endo, Plaintiff shall complete and file Form 1098-F with the Internal Revenue Service, identifying the Settlement Payment as remediation/restitution amounts, and shall furnish Copy B of such Form 1098-F to Endo. Endo makes no warranty or representation to Plaintiff as to the tax consequences of the Settlement Payment or any portion thereof.

8. **Binding Agreement.** This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto.

9. **Choice of Law.** Any dispute arising from or in connection with the completion and execution of the Settlement Agreement shall be governed by Louisiana law without regard to its choice of law provisions.

10. **Jurisdiction.** The Parties agree to submit and consent to the jurisdiction of the Court for the resolution of any disputes arising under the Settlement Agreement.

11. **No Conflict Intended.** The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement. The definitions contained in this Agreement or any Exhibit hereto are applicable to the singular as well as the plural forms of such terms.

12. **No Party Deemed to be the Drafter.** None of the Parties hereto shall be deemed to be the drafter of this Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

13. **Amendment; Waiver.** This Agreement shall not be modified in any respect except by a writing executed by all Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of

any breach of this Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous.

14. **Execution in Counterparts.**  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

15. **Severability.**  In the event any one or more provisions of this Settlement Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Settlement Agreement.

16. **Statements to the Press.**  Any press release or other public statement concerning this Settlement Agreement will describe it positively and will not disparage any other Party.  No Party or attorney, agent or representative of any Party shall state or suggest that this Settlement Agreement may be used to predict the value of any Claim or any future settlement agreement in any action or proceeding.

17. **Integrated Agreement.**  This Agreement constitutes the entire agreement between the Settling Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have executed this Agreement as of the dates set forth below.

ENDO HEALTH SOLUTIONS INC.

By:
Name:      Blaise Coleman
           President and CEO

Date: 02/15/2022

20

**ENDO PHARMACEUTICALS INC.**

By:
Name:     Blaise Coleman
          President and CEO

Date:     03/15/2022

**PLAINTIFF**

**STATE OF LOUISIANA**

By:
Name:     Wilbur "Bill" Stiles
          Chief Deputy Attorney General

Date:     2/15/22

21

**Exhibit A**

**LITIGATING SUBDIVISIONS**

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Acadia-St. Landry Hospital Service District** | Acadia-St. Landry Hospital Service District d/b/a Acadia-St. Landry Hospital | United States District Court, Northern District of Ohio, Eastern Division |
| **Allen Parish (Sheriff Herbert)** | Allen Parish Law Enforcement District; Douglas Herbert III, Duly Elected Sheriff of Allen Parish, In His Capacity as Officer Ex Officio of the Allen Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Ascension Parish** | Ascension Parish Government, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Ascension Parish (Sheriff Wiley)** | Jeffrey F. Wiley, duly elected Sheriff of Ascension Parish, in his capacity as Officer Ex Officio of the Ascension Parish Sheriff's Office and the Ascension Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Ascension Parish School Board** | Ascension Parish School Board | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Assumption Parish (Sheriff Falcon)** | Leland Falcon, Sheriff of Assumption Parish, Louisiana in his Capacity as Officer Ex Officio of the Assumption Parish Sheriff's Office | United States District Court, Northern District of Ohio, Eastern Division |
| **Assumption Parish Police Jury** | Assumption Parish Police Jury | United States District Court, Northern District of Ohio, Eastern Division |
| **Avoyelles Parish (Sheriff Anderson)** | Douglas Anderson, Duly Elected Sheriff of Avoyelles Parish, in his capacity as Officer Ex Officio of the Avoyelles Parish Sheriff's Office and the Avoyelles Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Avoyelles Parish Police Jury** | Avoyelles Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Ballance/Bienville Parish** | John E. Ballance, in his capacity as the Sheriff for Bienville Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Beauregard Parish Police Jury** | Beauregard Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Benton Fire Protection District No. 4** | Benton Fire Protection District No. 4, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Bossier City** | Bossier City | United States District Court, Northern District of Ohio, Eastern Division |
| **Bossier Parish** | Bossier Parish | United States District Court, Northern District of Ohio, Eastern Division |
| **Bossier Parish Ambulance District** | Bossier Parish Emergency Medical Services Ambulance District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Brown/Jackson Parish** | Andy Brown, in his capacity as the Sheriff for Jackson Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Caddo Fire Protection District No. 1** | Caddo Fire Protection District No. 1, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Caddo Parish** | Caddo Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Calcasieu Parish (Sheriff Mancuso)** | Tony Mancuso, Sheriff of Calcasieu Parish, in his Capacity as Officer Ex Officio of the Calcasieu Parish Sheriff's Office and the Calcasieu Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Calcasieu Parish Police Jury** | Calcasieu Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Caldwell Parish** | Caldwell Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Cameron Parish** | Cameron Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Catahoula Parish (Sheriff Edwards)** | Toney Edwards, in His Capacity as Sheriff on Behalf of the Catahoula Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Catahoula Parish Police Jury** | Catahoula Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Alexandria** | City of Alexandria, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Bastrop** | City of Bastrop, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **City of Baton Rouge** | City of Baton Rouge, Parish of East Baton Rouge, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Bogalusa** | City of Bogalusa, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Covington** | City of Covington, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Donaldsonville** | City of Donaldsonville, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Eunice** | City of Eunice, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Franklin** | City of Franklin, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Gretna** | City of Gretna, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **City of Kenner** | City of Kenner, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Lake Charles** | City of Lake Charles | United States District Court, Northern District of Ohio |
| **City of Mandeville** | City of Mandeville, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Monroe** | City of Monroe, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Natchitoches** | City of Natchitoches, LA | United States District Court, Northern District of Ohio, Eastern Division |
| **City of New Iberia** | City of New Iberia, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of New Orleans** | City of New Orleans, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of New Roads** | City of New Roads, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **City of Opelousas** | City of Opelousas, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Patterson** | City of Patterson, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Pineville** | City of Pineville, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Saint Martinville** | City of Saint Martinville, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Shreveport** | City of Shreveport, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of Slidell** | City of Slidell, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **City of West Monroe** | City of West Monroe, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **City of Westwego** | City of Westwego, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Claiborne Parish** | Claiborne Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Concordia Parish** | Concordia Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Concordia Parish (Sheriff Hedrick)** | Kenneth Hedrick, in His Capacity as Sheriff on Behalf of the Concordia Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **DeSoto Fire Protection District No. 8** | DeSoto Fire Protection District No. 8, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Desoto Parish** | Parish of DeSoto, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **East Baton Rouge Parish** | Sid J. Gautreaux, III, Duly Elected Sheriff of East Baton Rouge Parish, in his Capacity as Officer Ex Officio of the East Baton Rouge Parish Sheriff's Office and the East Baton Rouge Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **East Baton Rouge Parish Clerk of Court Office** | East Baton Rouge Parish Clerk of Court Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **East Carroll Parish Police Jury** | East Carroll Parish Police Jury | United States District Court, Northern District of Ohio, Eastern Division |
| **Evangeline Parish Police Jury** | Evangeline Parish Police Jury | United States District Court, Northern District of Ohio, Eastern Division |
| **Franklin Parish** | Franklin Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Gates/Union Parish** | Dusty Gates, in his capacity as the Sheriff for Union Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Grant Parish (Sheriff McCain)** | Steven McCain, Duly Elected Sheriff of Grant Parish, Louisiana, in his Capacity as Officer Ex Officio of the Grant Parish Sheriff's Office and the Grant Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **Grant Parish Police Jury** | Grant Parish, Louisiana, By and Through its Duly Elected Police Jury | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Hospital Service District i of Avoyelles Parish** | Hospital Service District No. 1 of The Parish of Avoyelles, State of Louisiana, d/b/a Bunkie General Hospital | United States District Court, Northern District of Ohio, Eastern Division |
| **Hospital Service District No. 1 of The Parish of LaSalle** | Hospital Service District No. 1 of The Parish of LaSalle State of Louisiana, D/B/A Hardtner Medical Center | United States District Court, Northern District of Ohio, Eastern Division |
| **Iberia Parish** | Iberia Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Iberia Parish (Sheriff Ackal)** | Louis M. Ackal, Duly Elected Sheriff of Iberia Parish, Louisiana, In His Capacity as Officer Ex Officio of the Iberia Parish Sheriff's Office and the Iberia Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **Iberia Parish School Board** | Iberia Parish School Board, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Iberville Parish** | Iberville Parish Council, a Louisiana governmental entity | United States District Court, Northern District of Ohio, Eastern Division |
| **Jackson Parish Police Jury** | Jackson Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Jefferson Davis Parish (Sheriff Woods)** | Ivy Woods, duly elected Sheriff of Jefferson Davis Parish, in his capacity as Officer Ex Officio of the Jefferson Davis Parish Sheriff's Office and the Jefferson Davis Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **Jefferson Davis Parish Police Jury** | Jefferson Davis Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Jefferson Parish (Sheriff Lopinto)** | Joseph P. Lopinto, III, In his capacity as Sheriff on behalf of the Jefferson Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Jefferson Parish Coroner's Office** | Jefferson Parish Coroner's Office | United States District Court, Northern District of Ohio, Eastern Division |
| **Jefferson Parish et al.** | Jefferson Parish Hospital Service District No. 1, Louisiana; Jefferson Parish Hospital Service District No. 2, Louisiana; The Parish of Jefferson | United States District Court, Northern District of Ohio, Eastern Division |
| **Lafayette Parish (Sheriff Garber)** | Mark Garber, duly elected Sheriff of Lafayette Parish, in his capacity as Officer Ex Officio of the Lafayette Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Lafourche Parish Government** | Lafourche Parish Government | United States District Court, Northern District of Ohio, Eastern Division |
| **Lafourche Parish School Board** | Lafourche Parish School Board | United States District Court, Northern District of Ohio, Eastern Division |
| **LaSalle Parish** | LaSalle Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Lincoln Parish (Sheriff Stone)** | Mike Stone, in his capacity as the Sheriff for Lincoln Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Livingston Parish** | Parish of Livingston, a Political Subdivision of the State of Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Livingston Parish (Sheriff Ard)** | Jason Ard, Ex Officio Sheriff, Parish of Livingston, State of Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Morehouse Parish Police Jury** | Morehouse Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Morgan City** | Morgan City, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Natchitoches Parish Council** | Natchitoches Parish Council | United States District Court, Northern District of Ohio |
| **North Caddo Hospital Service District** | North Caddo Hospital Service District d/b/a North Caddo Medical Center, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Opelousas Hospital** | Opelousas General Hospital Authority, A Louisiana Public trust, d/b/a/ Opelousas General Health System, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Orleans Parish (District Attorney)** | District Attorney for the Parish of Orleans, State of Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Orleans Parish Hospital** | Orleans Parish Hospital Service District - District A, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Orleans Parish Sheriff's Office** | Marlin N. Gusman, Sheriff Orleans Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Ouachita Parish Police Jury** | Ouachita Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Parish of East Carroll** | Wydette Williams, Duly Elected Sheriff of East Carroll Parish, in his Capacity as Officer Ex Officio of the East Carroll Parish Sheriff's Office and the East Carroll Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Parish of West Carroll** | Jerry L. Philley, Duly Elected Sheriff of West Carroll Parish, in his Capacity as Officer Ex Officio of the West Carroll Parish Sheriff's Office and the West Carroll Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Pointe Coupee Parish Health Services** | Pointe Coupee Parish Health Services District Number 1, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Pointe Coupee Parish Police Jury** | Police Jury of the Parish of Pointe Coupee, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Rapides Parish (DA Terrell)** | Phillip Terrell, Duly Elected District Attorney for Rapides Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Rapides Parish (Sheriff Hilton)** | William Hilton, Duly Elected Sheriff of Rapides Parish, in his Capacity as Officer Ex Officio of the Rapides Parish Sheriff's Office and the Rapides Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Rapides Parish Police Jury** | Rapides Parish Police Jury | United States District Court, Northern District of Ohio, Eastern Division |
| **Red River Fire Protection District** | Red River Fire Protection District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Red River Parish** | Red River Parish | United States District Court, Northern District of Ohio, Eastern Division |
| **Richardson/Sabine Parish** | Ronald Richardson, Duly Elected Sheriff of Sabine Parish, In His Capacity As officer Ex Officio of the Sabine Parish Sheriff's Office and the Sabine Parish Law Enforcement Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Richland Parish** | Richland Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Richland Parish (Sheriff Gilley)** | Gary Gilley, Duly Elected Sheriff of Richland Parish, in his Capacity as Officer Ex Officio of the Richland Parish Sheriff's Office and the Richland Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Russell/Ouachita Parish** | Jay Russell, Duly Elected Sheriff of Ouachita, In His Capacity As Officer Ex Officio of the Ouachita Parish Sheriff's Office and the Ouachita Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **Sabine Parish Police Jury** | Sabine Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Soileau/Evangeline Parish** | Edrick Soileau, Duly Elected Sheriff of Evangeline Parish, in his capacity as Officer Ex Officio of the Evangeline Parish Sheriff's Office and the Evangeline Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Bernard Parish** | St. Bernard Parish Government | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **St. Bernard Parish (Sheriff Pohlmann)** | James Pohlmann, Sheriff of St. Bernard Parish, Louisiana in his Capacity as Officer Ex Officio of the St. Bernard Parish Sheriff's Office and The St. Bernard Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Bernard Parish Coroner's Office (Coroner Bertucci)** | Dr. Bryan Bertucci in his Official Capacity of Coroner of St. Bernard Parish; St. Bernard Parish Coroner's Office | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Bernard Parish School Board** | St. Bernard Parish School Board | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Charles Parish** | St. Charles Parish | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Charles Parish (Sheriff Champagne)** | Greg Champagne, in His Capacity as Sheriff on Behalf of the St. Charles Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. James Parish** | St. James Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. James Parish School Board** | St. James Parish School Board | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **St. John the Baptist Parish** | Parish of St. John the Baptist, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Landry Parish** | St. Landry Parish, Louisiana President William K. "Bill" Fontenot, Jr. | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Landry Parish (Sheriff Guidroz)** | Bobby Guidroz, Duly Elected Sheriff of St. Landry Parish, Louisiana, In His Capacity as Officer Ex Officio of the St. Landry Parish Sheriff's Office and the St. Landry Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Martin Parish** | St. Martin Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Mary Parish** | St. Mary Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Mary Parish (Sheriff Anslum)** | Scott Anslum in his capacity as sheriff on behalf of the St. Mary Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Mary Parish School Board** | St. Mary Parish School Board, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **St. Tammany Fire Protection District No. 1** | St. Tammany Fire Protection District No. 1, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Fire Protection District No. 12** | St. Tammany Fire Protection District No. 12, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Fire Protection District No. 13** | St. Tammany Fire Protection District No. 13, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Fire Protection District No. 2** | St. Tammany Fire Protection District No. 2, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Fire Protection District No. 3** | St. Tammany Fire Protection District No. 3, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Fire Protection District No. 4** | St. Tammany Fire Protection District No. 4, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Fire Protection District No. 5** | St. Tammany Fire Protection District No. 5, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **St. Tammany Parish (Sheriff Smith)** | Randy Smith, Sheriff of St. Tammany Parish, Louisiana in his capacity as Officer Ex Officio of the St. Tammany Parish Sheriff's Office and the St. Tammany Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Parish Coroner's Office** | St. Tammany Parish Coroner's Office and Dr. Charles Preston, in his official capacity as the Coroner of St. Tammany Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Parish et al. (District Attorney Montgomery)** | Warren Montgomery, Duly Elected 22nd Judicial District Attorney for the Parishes of St. Tammany and Washington, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **St. Tammany Parish Government** | St. Tammany Parish Government, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **State of Louisiana** | State of Louisiana | 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana |
| **Tensas Parish (Sheriff Jones)** | Rickey A. Jones, in His Capacity as Sheriff on Behalf of the Tensas Parish Sheriff's Office, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Terrebonne Parish** | Terrebonne Parish Consolidated Government, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Terrebonne Parish (Sheriff Larpenter)** | Sheriff  J. Larpenter, in his official capacity as Sheriff of Terrebonne Parish | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Abita Springs** | Town of Abita Springs, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Baldwin** | Town of Baldwin, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Berwick** | Town of Berwick, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Delhi** | Town of Delhi, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Ferriday** | Town of Ferriday, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Gramercy** | Town of Gramercy | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Town of Jean Lafitte** | Town of Jean Lafitte, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Lake Providence** | Town of Lake Providence, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Lutcher** | Town of Lutcher | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Madisonville** | Town of Madisonville, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Pearl River** | Town of Pearl River, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Town of Richwood** | Town of Richwood, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Tubbs/Morehouse Parish** | Michael Tubbs, duly elected Sheriff of Morehouse Parish, in his capacity as Officer Ex Officio of the Morehouse Parish Sheriff's Office and the Morehouse Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Union Parish (Police Juror Taylor)** | Union Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Vermilion Parish Police Jury** | Vermilion Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Vernon Parish (Sheriff Craft)** | John Craft, Duly Elected Sheriff of Vernon Parish, in his Capacity as Officer Ex Officio of the Vernon Parish Sheriff's Office and the Vernon Parish Law Enforcement District | United States District Court, Northern District of Ohio, Eastern Division |
| **Vernon Parish Police Jury** | Vernon Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Washington Parish (Sheriff Seal)** | Randy Seal, Duly Elected Sheriff of Washington Parish, In His Capacity As Officer Ex Officio of the Washington Parish Sheriff's Office and the Washington Parish Law Enforcement District, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Washington Parish Government** | Washington Parish Government, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

| LEAD PLAINTIFF IN FILED ACTION | LITIGATING SUBDIVISIONS THAT ARE PARTIES | CURRENT VENUE |
|---|---|---|
| **Webster Parish** | Webster Parish | United States District Court, Northern District of Ohio, Eastern Division |
| **West Ascension Parish Hospital Service District** | West Ascension Parish Hospital Service District d/b/a Prevost Memorial Hospital | United States District Court, Northern District of Ohio, Eastern Division |
| **West Baton Rouge Fire Protection District No. 1** | West Baton Rouge Fire Protection District No. 1, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **West Baton Rouge Parish** | West Baton Rouge Parish | United States District Court, Northern District of Ohio, Eastern Division |
| **West Carroll Parish Police Jury** | West Carroll Parish Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Winn Parish (District Attorney Nevils)** | R. Chris Nevils, Duly Elected District Attorney of Winn Parish, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |
| **Winn Parish Police Jury** | Winn Parish, By and Through Its Duly Elected Police Jury, Louisiana | United States District Court, Northern District of Ohio, Eastern Division |

**Exhibit B**

**PRIMARY SUBDIVISIONS**

**Parishes (including sheriffs, police juries, police jurors and district attorneys)**

Acadia
Allen
Ascension
Assumption
Avoyelles
Beauregard
Bienville
Bossier
Caddo
Calcasieu
Caldwell
Cameron
Catahoula
Claiborne
Concordia
De Soto
East Baton Rouge
East Carroll
East Feliciana
Evangeline
Franklin
Grant
Iberia
Iberville
Jackson
Jefferson
Jefferson Davis
Lafayette
Lafourche
LaSalle
Lincoln
Livingston
Madison
Morehouse
Natchitoches
Orleans
Ouachita
Plaquemines

Pointe Coupee
Rapides
Red River
Richland
Sabine
St. Bernard
St. Charles
St. Helena
St. James
St. John the Baptist
St. Landry
St. Martin
St. Mary
St. Tammany
Tangipahoa
Tensas
Terrebonne
Union
Vermilion
Vernon
Washington
Webster
West Baton Rouge
West Carroll
West Feliciana
Winn

**Cities**

Abbeville
Alexandria
Baker
Bastrop
Baton Rouge
Bogalusa
Bossier City
Broussard
Central
Covington
Crowley
DeRidder
Gonzales
Gretna
Hammond

Kenner
Lafayette
Lake Charles
Mandeville
Minden
Monroe
Morgan City
Natchitoches
New Iberia
New Orleans
Opelousas
Pineville
Ruston
Shreveport
Slidell
Sulphur
Thibodaux
West Monroe
Youngsville
Zachary

## Exhibit C

**LOUISIANA STATE-LOCAL GOVERNMENT OPIOID LITIGATION
MEMORANDUM OF UNDERSTANDING**

## LOUISIANA STATE-LOCAL GOVERNMENT
## OPIOID LITIGATION
## MEMORANDUM OF UNDERSTANDING

Whereas, the people of the State and its communities have been harmed by misfeasance, nonfeasance, and malfeasance committed by certain entities within the Pharmaceutical Supply Chain; and,

Whereas, the State, though its Attorney General, and certain Local Governments, through their elected representatives and counsel, are separately engaged in litigation seeking to hold Pharmaceutical Supply Chain Participants accountable for the damage caused by their misfeasance, nonfeasance and malfeasance; and,

Whereas, the State, through its Attorney General, and its Local Governments share a common desire to abate and alleviate the impacts of that misfeasance, nonfeasance and malfeasance throughout the State;

Now therefore, the State and its Local Governments, subject to completing formal documents effectuating the Parties' agreements, enter into this Memorandum of Understanding ("MOU") relating to the allocation and use of the proceeds of Settlements described.

A.  Definitions

As used in this MOU:

1.  "The State" shall mean the State of Louisiana acting through the Attorney General.

2.  "Local Government(s)" or "LG" shall mean all parishes, incorporated municipalities, and other certain local government political subdivisaions and Sheriffs  within the geographic boundaries of the State.

3.  "The Parties" shall mean the State and the Local Governments.

4.  "Settlement" shall mean the negotiated resolution of legal or equitable claims against a Pharmaceutical Supply Chain Participant when that resolution has been jointly entered into by the State and the Local Governments.

5.  "Opioid Funds" shall mean monetary amounts obtained through a Settlement as defined in this Memorandum of Understanding.

6.  "Approved Purpose(s)" shall mean evidence-based forward-looking strategies, programming and services used to (i) provide treatment for citizens of the State of Louisiana affected by substance use disorders, (ii) provide support for citizens of the State of Louisiana in recovery from addiction who are under the care of Substance Abuse & Mental Health

Services Administration "SAMHSA" qualified and appropriately licensed health care providers, (iii) target treatment of citizens of the State of Louisiana who are not covered by Medicaid or not covered by private insurance for addictive services. See Exhibit A.

7.    "Pharmaceutical Supply Chain" shall mean the process and channels through which Controlled Substances are manufactured, marketed, promoted, distributed or dispensed.

8.    "Pharmaceutical Supply Chain Participant" shall mean any entity that engages in or has engaged in the manufacture, marketing, promotion, distribution or dispensing of an opioid analgesic.

9.    "Municipalities" shall mean cities, towns, or villages of a Parish within the State with a Population greater than 10,000 individuals and shall also include cities, towns or villages within the State with a Population equal to or less than 10,000 individuals which filed a Complaint in this litigation against Pharmaceutical Supply Chain Participants. The singular "Municipality" shall refer to a singular of the Municipalities.

10.    "Negotiation Class Metrics" shall mean those county and city settlement allocations which come from the official website of the Negotiation Class of counties and cities certified on September 11, 2019 by the U.S. District for the Northern District of Ohio in *In re National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio). The website is located at https://allocationmap.iclaimsonline.com.

11.    "Qualified Parish" shall mean a parish within the State that has a Population of least 300,000 individuals. For the avoidance of doubt, Qualified Parishes include: East Baton Rouge Parish, Jefferson Parish, and Orleans Parish.

12.    "Parish" shall refer to one of the 64 parish governments in the State of Louisiana.

13.    "Sheriff" shall refer to the sheriff in each of the 64 parishes in the State of Louisiana.

14.    "Population" shall refer to published U.S. Census Bureau population estimates as of July 1, 2019, released March 2020, and shall remain unchanged during the term of this MOU. These estimates can currently be found at https://www.census.gov

B.    Opioids Abatement Taskforce. The State will create an Opioid Abatement Taskforce (hereinafter "Taskforce") to advise the Attorney General and the Parishes and Municipalities on the priorities that should be addressed as part of the opioid epidemic and to review how monies have been spent and the results that have been achieved with the Opioid Funds.

1.     Size.  The Taskforce shall have five (5) members.

2.     Appointments:  Local Governments

     a.     The Lousiana Municipal Association shall appoint one member.

     b.     The Police Jury Association shall appoint one member.

     c.     The Louisiana Sheriff's Association shall appoint one member.

3.     Appointments: State.

     a.     The Secretary of the Louisiana Department of Public Health or his/her designee shall appoint one member.

     b.     The Governor shall appoint one member who is a licensed SAMSHA provider.

4.     Chair.  The members of the taskforce shall designate the chair of such Taskforce.

5.     Term.  Members will be appointed to serve 3 year terms.

6.     Meetings.  The Taskforceshall meet in person or virtually each year.

7.     At least annually, each Qualified Parish and Lead Parish shall provide to the State and the Taskforce a report detailing for the preceding time-period (1) the amount of the LG Share received by each Participating Local Government within the Parish, (2) the allocation of any awards approved (listing the recipient, the amount awarded, the program to be funded, and disbursement terms), and (3) the amounts disbursed for approved allocations.

8.     At least annually, the State and the Taskforce shall publish a report detailing for the preceding time-period (1) the amount of the State Share received, (2) the allocation of any awards approved (listing the recipient, the amount awarded, the program to be funded, and disbursement terms), and (3) the amounts disbursed for approved allocations.

C.     Allocation of Settlement Proceeds

     1.     All of the Opioid Settlement Funds shall be received on behalf of the Local Goverments and will be placed into one fund (hereinafter, "Opioid Abatement Fund") for the benefit of the Parishes and Municipalities of the state after deducting costs of the Local Government Fee Fund detailed in paragraph D below:

        a.     The amounts received shall by the Local Governments shall be allocated with twenty percent (20%) going to the benefit of Sheriffs and the remaining eighty percent (80%) going to the benefit of the other Local

Governments , all as provided hereinafter.

b.  The amounts to be distributed to each Parish and Municipalities shall be determined by the Negotiation Class Metrics or other metrics agreed upon, in writing, by the Parishes and Municipalities.  The amounts to be distributed to each Sheriff shall be determined by the Negotiation Class Metrics or other metrics agreed upon, in writing, in the same way allocated to the Parishes.

c.  The Opioid Taskforce  will annually calculate the share of each Parish within the State utilizing the sliding scale in section 4 of the allocation contained in the Negotiation Class Metrics or other metrics that the Parties agree upon.

d.  For Qualified Parishes, the Qualified Parish's share, including the Municipalities within that Parish, will be paid to the Qualified Parish and expended for Approved Purposes, including the Core Strategies identified in Exhibit A, if applicable. A priority shall be given to treatment of citizens with opioid use disorder who are not covered by Medicaid or not covered by private insurance for such treatment.

e.  For all other Parishes, the funds allocated for those Parishes and Municipalities shall be paid on a regional basis  consistent with Louisiana Department of Health Regions, as set forth in Exhibit B.  The regional share of the funds will be paid to the designated Parish as set forth in Exhibit B and expended for Approved Purposes, including the Core Strategies identified in Exhibit A, if applicable in that Region.  A priority shall be given to treatment of citizens with opioid use disorder who are not covered by Medicaid or not covered by private insurance for such treatment.

f.  To the extent that funds in the Opioid Abatement Fund are not appropriated and expended in a year by the Taskforce , the Taskforce shall identify the investments where settlement funds will be deposited. Any gains, profits, or interest accrued from the deposit of the Opioid Funds to the extent that any funds are not appropriated and expended within a calendar year, shall be the sole property of the Party that was entitled to the initial deposit.

g.  The Taskforce  may take no more than 3% administrative fee from the Opioid Abatement Fund ("Administrative Costs") for operation of the Taskforce .

D.     Payment of Counsel and Litigation Expenses

1.     This section D shall only apply to any settlement funds or fees derived from settlement(s) with McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Corporation (hereinafter, "Settling Distributors") and Johnson & Johnson, Janssen Pharmaceuticals, Inc., Ortho- McNeil-Janssen Pharmaceuticals, Inc., and Janssen Pharmaceutica, Inc.

2.     The Parties anticipate that any national settlement will provide for the partial payment of fees and litigation expenses to counsel representing Local Governments.  If the court in *In Re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio) or a national global settlement otherwise establishes a separate fund or similar device for the payment of fees and expenses to counsel or requires any governmental plaintiffs to pay a share of their recoveries from defendants into an attorney fee and expense fund as a "tax," then Participating Local Governments shall first seek to have the settling defendants pay the requisite amounts into that fund.  If the settling defendants do not agree, then the amounts due to the fee and expense fund shall be paid from the State of Louisiana's recovery, prior to the allocation and distribution of any settlement funds to the State or Participating Local Governments.

3.     Any governmental entity which seeks attorneys' fees and expenses for its counsel shall first seek to recover those amounts from the national settlement.  Anticipating that any fund established as part of a national settlement will not be sufficient to pay all contingency fee contracts for Participating Local Governments in the State of Louisiana, the Parties agree to create a supplemental fee and expense fund (the "Local Government Fee Fund" or "LGFF").

4.     The LGFF is to be used to compensate counsel for Participating Local Governments that filed opioid lawsuits by the Effective Date of this Agreement ("Litigating Participating Local Governments").

5.     The LGFF shall be used to pay the fees and expenses of Participating Local Governments in the State of Louisiana who filed opioid lawsuits on or before the date of this agreement The amount of funds to be deposited in the LGFF shall be contingent upon the overall percentage of Incentive Payments awarded to the State of Louisiana under the national settlement, pursuant to the following table, with the LGFF percentage being a percentage of the Total Cash Value of payments to the State of Louisiana before any allocation of funds to the State or any Participating Local Governments.  In no circumstances shall the LGFF receive more than 7.5% of the Total Cash Value received by the State of Louisiana including any funds received from a national fee fund as described in Paragraph D(2) above.  If the State of Louisiana does not receive at least 65% of the total available Incentive

Payments, then the LGFF shall be null and void and no amounts shall be paid into the LGFF.

| PERCENTAGE OF INCENTIVE PAYMENTS AWARDED | LGFF PERCENTAGE |
|---|---|
| 65% | 2% |
| 70% | 3% |
| 75% | 4% |
| 80% | 5% |
| 85% | 6% |
| 90% | 6.5% |
| 95% | 7% |
| 100% | 7.5% |

6.  The Parties further agree no counsel for any Litigating Participating Local Government shall recover, from any national fee fund and the LGFF, a combined contingency fee of more than 7.5% (plus expenses).  Additionally, counsel for any Litigating Participating Local Government shall not be paid a contingency fee, from any national fee fund and the LGFF, that exceeds the amount due under its fee contract.  If there are any funds remaining in the LGFF after payment of fees and expenses consistent with the terms of this agreement, those funds shall revert pro rata to the Participating LGs.

7.  Although the amount of the LGFF shall be calculated based on the entirety of payments due to the LGs over a 10 to 18 year period, the LGFF shall be funded and made payable over a period of 7 years.

E.  Accountability

1.  The State and Participating Local Governments may object to an allocation of Opioid Funds solely on the basis that the allocation at issue (1) is inconsistent with provision B(1) hereof with respect to the amount of the State Share or LG Share; (2) is inconsistent with an agreed-upon allocation, or the default allocations in Exhibit B or (3) violates the limitations set forth in Exhibit A.

2.  The Parties shall maintain, for a period of at least five years, records of abatement expenditures and documents underlying those expenditures, so that it can be verified that funds are being or have been utilized in a manner consistent with the Approved Purposes definition.

3.  The Louisiana Legislative Auditor shall have the right to audit the Opioid Funds.

4.      In an action brought pursuant to E(1), attorney's fees and costs shall not be recoverable.

F.      Settlement Negotiations

1.      The State and the Participating Local Governments agree to inform each other in advance of any negotiations relating to a Louisiana-only settlement with a Pharmaceutical Supply Chain Participant that includes both the State and the Participating Local Governments and shall provide each other the opportunity to participate in all such negotiations.

2.      The State and the Participating Local Governments further agree to keep each other reasonably informed of all other global settlement negotiations with Pharmaceutical Supply Chain Participants.   Neither this provision, nor any other, shall be construed to state or imply that either the State or the Participating Local Governments (collectively, the "Louisiana Parties") are unauthorized to engage in settlement negotiations with Pharmaceutical Supply Chain Participants without prior consent or contemporaneous participation of the other, or that either party is entitled to participate as an active or direct participant in settlement negotiations with the other. Rather, while the State's and the Participating Local Government's efforts to achieve worthwhile settlements are to be collaborative, incremental stages need not be so.

3.      By virtue of executing this MOU, Participating Local Governments give the State the right to execute a settlement agreement with certain entities in the Pharmaceutical Supply Chain for those entities' role in the opioid epidemic.  The Attorney General shall have the ability to release any and all claims said Participating Local Governments may have with those entities provided such settlement comports with the parameters of this MOU, including Exhibit A and Exhibit B. Furthermore, Local Governments shall not initiate any new litigation against any entity in the Pharmaceutical Supply Chain for harm caused by misfeasance, nonfeasance, and malfeasance committed by said entities that resulted in the opioid epidemic, unless the Local Government is granted written permission from the Attorney General. For the avoidance of doubt, in the event that a Participating Litigating Local Governments seeks to add additional defendants to its lawsuit, or desires to file new litigation against an entity in the Pharmaceutical Supply Chain related to the opioid epidemic, the Participating Litigating Local Government must first receive written permission from the Attorney General.

G.      Amendments, Choice of Law, Venue, Consent Decree

1.      The Parties agree to make such amendments as necessary to implement the intent of this agreement.

2.    The Parties agree that this MOU, any amendments thereto, and any dispute arising out of or related to this MOU, shall be governed by and interpreted according to the laws of the State of Louisiana. Any action to enforce or interpret this MOU, or to resolve any dispute concerning it, shall be commenced and maintained only by a court of competent jurisdiction in East Baton Rouge Parish, Louisiana. The Parties understand and agree that, in connection with a settlement with any Pharmaceutical Supply Chain Participant, the State may file an appropriate action in a court of competent jurisdiction in East Baton Rouge, Louisiana seeking a consent decree approving such settlement and the allocation of settlement funds within the State of Louisiana pursuant to this MOU.

Acknowledgment of Agreement

The undersigned has participated in the drafting of the above Memorandum of Understanding including consideration based on comments solicited from Local Governments. This document has been collaboratively drafted to maintain all individual claims while allowing the State and Local Governments to cooperate in exploring all possible means of resolution. Nothing in this agreement binds any party to a specific outcome. Any resolution under this document will require acceptance by the State and the Local Governments.

FOR THE STATE:

_____
Attorney General

## **Exhibit D**

**WRITTEN CONSENTS OF PARTICIPATING SUBDIVISIONS**