UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br>This document relates to:<br>*All Cases* | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

**PEC'S EXPEDITED MOTION TO EXPAND THE POOL FOR
SELECTION OF PBM BELLWETHER CASES OR MODIFY
THE BELLWETHER SELECTION PROCEDURES**

The PEC, by its undersigned counsel, moves this Court to expand the pool from which cases may be selected to include MDL cases from states where there are no existing cases in which claims have been asserted against PBMs. Alternatively, the PEC requests that the bellwether selection procedures be modified to eliminate the right to strike the opposing side's selections.

Because the parties' bellwether selections are due on Friday, September 29, the PEC requests an expedited ruling on this motion or a stay of that deadline while this motion is being briefed.

**INTRODUCTION**

On August 30, 2023, the Court scheduled a status conference with counsel for pharmacy benefit managers (PBMs) and the PEC for the purpose of discussing a process for selecting bellwether cases. Prior to the status conference, the PEC and the PBMs conferred but were unsuccessful in reaching agreement regarding either amending complaints to assert claims against the PBMs or the selection of bellwether PBM cases.[1] Other than the parties' status reports, no motion or briefing preceded the status conference.

---

[1] August 28, 2023 PBM Status Report for August 30, 2023 Conference Relating to

2859147.1

At the status conference, the Court noted that, in the absence of an agreement between the parties, the Court would create its own plan for the selection of four PBM bellwethers.[2] Significantly, the Court, while initially permitting amendments to add the PBMs to existing cases that would be chosen as bellwethers, ultimately proposed a procedure which limited the cases to be selected to those pending in the MDL where at least one of the PBMs had already been joined as a party.[3] The Court's bellwether protocol directed the PEC and the PBMs each to select four cases from four different circuits as proposed bellwethers. Additionally, under the Court's bellwether protocol, the PEC and the PBMs would then each be permitted to strike two of the other side's picks leaving four bellwethers. The Court subsequently memorialized this protocol in an Order.[4] Currently, the parties' selections are due on Friday, September 29, 2023.

The PEC has now had the opportunity to examine the limited pool of MDL cases in which at least one of the PBMs is currently a defendant. In contrast to the MDL as a whole, where cases from nearly every state and all circuits are pending, the cases in which at least one PBM has been joined as a party originate from a limited number of states (CT, FL, MO, NH, NJ, NY, OH, TX, VA, VT, and WV). Critically, none of the cases in that pool are from states in the Mountain West, or Pacific Coast regions. The exclusion of cases from the western states is particularly troublesome, given that the opioid epidemic was, as of 2019, disproportionately growing in the West.[5] In fact, of the twenty states with a statistically significant increase in age-adjusted rate of

---

PBMs. (Exhibit A).

[2] Doc. 5168, *Transcript of Status Conference Proceedings* (August 30, 2023) at 6:4-12. (Exhibit B).

[3] *Id.* at 16:24-18:14; 27:23-28:16; 29:8-14.

[4] Doc. 5166, Minutes and Order Regarding PBM Bellwether Process (Aug. 31, 2023). (Exhibit C).

[5] Mattson CL, Tanz LJ, Quinn K, Kariisa M, Patel P, Davis NL. Trends and

drug overdose deaths involving synthetic opioids other than methadone, fourteen of the states are outside of the bellwether pool, including five Western states (AZ, CA, CO, NM, and WA) and four populous Midwest states (IL, IN, MN, and WI).[6]  Moreover, of the states and circuits from which the parties currently must select their proposed bellwethers, two, Ohio (CT1, CT3, and CT7) and West Virginia (CT2) have already produced bellwether cases and trials.

There are other reasons to expand the pool of cases from which the PBM bellwethers may be selected.  During the last five years, significant discovery has been disclosed to MDL plaintiffs which has provided additional bases for claims against these PBM defendants.  This discovery contains information that was not available at the time of the Court's original deadline for plaintiffs to amend their pleadings.  Given that, in the majority of states, no statute of limitations bars plaintiffs from asserting new claims or filing new lawsuits against the PBMs, the PEC expects that a significant number of plaintiffs in states across the country will seek to bring such claims against the PBMs, whether by amending their existing MDL pleadings, or by filing of new lawsuits.  Consequently, limiting the bellwether pool to the states and circuits where claims against the PBMs have already been asserted will mean the bellwethers will not be representative of true nature of the claims that will be asserted against the PBMs by plaintiffs in this MDL.

---

Geographic Patterns in Drug and Synthetic Opioid Overdose Deaths — United States, 2013–2019. MMWR Morb Mortal Wkly Rep 2021;70:202–207. DOI: http://dx.doi.org/10.15585/mmwr.mm7006a4 (last accessed Sept. 5, 2023) ("From 2018 to 2019, the largest relative increase in the synthetic opioid-involved death rate occurred in the West (67.9%).").

[6] *Id.* ("States with a statistically significant change in age-adjusted rate of drug overdose deaths involving synthetic opioids other than methadone during 2018–2019 were Arizona, California, Colorado, Connecticut, District of Columbia, Florida, Georgia, Illinois, Indiana, Kentucky, Minnesota, Mississippi, New Mexico, New York, Ohio, Tennessee, Texas, Virginia, Washington, and Wisconsin.").

2859147.1

Based on this analysis of the existing PBM bellwether pool and in light of the long-standing stay that has prevented plaintiffs from amending their complaints, the PEC moves to expand the PBM bellwether pool to include cases brought by plaintiffs in states and circuits where there currently are no existing PBM claims or to eliminate the ability to strike the other side's choices in order to prevent the parties from striking the most representative cases selected by the other side. The interests of justice are served by granting this requested modification of the bellwhether protocol.

## ARGUMENT

The *Manual for Complex Litigation (Fourth)* at §22.315 (Fed. Judicial Ctr. 2004), which guides federal courts in discharging their duties with respect to MDL cases, explains that if bellwether trials "are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." Indeed, other courts dealing with large and complex MDL cases have explained that because "[the primary purpose of bellwether trials] is to provide data points for settlement discussions *with respect to the universe of cases*, the goal of bellwether case selection is to select the 'best' representatives of the universe of cases, not outliers likely to result in victory for one side or the other." *In re Gen. Motors LLC Ignition Switch Litig.*, Nos. 14-MD-2543 & 14-MC-2543, 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016) (emphasis added). *See also*, Rothstein, et al., *Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee* Judges 44 (Fed. Judicial Ctr. 2011) ("If bellwether trials are to produce reliable information about the other cases in the MDL, the specific plaintiffs and their claims should be representative of the range of cases."); Fed. Judicial Center & Judicial Panel on Multidistrict Litig., *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* (2019), at 22, *available at*

www.fjc.gov/sites/default/files/materials/19/Bellwether%20Trials%20in%20MDL%20Proceedings.pdf, ("In order to provide reliable information about the strengths and limitations of claims or defenses or global settlement value, bellwether cases must be representative of the range of cases included in the MDL proceeding … [and] both sides must consider the selected bellwether case pool a fair sample of the docket, likely to provide an unbiased valuation of claims and the likelihood of success of defenses."); *In re E.I. Du Pont De Nemours & Co. C-8 Personal Inj. Litig.*, 54 F.4th 912, n.3 (6th Cir. 2022) (observing that "[t]he court's and parties' intentions" in selecting representative bellwethers "were aligned with the broader purpose of bellwether trials, which serve the "twin goals" of being "informative indicators of future trends and catalysts for an ultimate resolution.") (citation omitted).

"Unrepresentative cases, even if they are successful at trial, will do little to resolve the entire litigation and will have little predictive value." Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2349 (2008). "Representativeness is litigation – and fact-specific." FJC & JPML, *Bellwether Trials,* at 23. The Court can "reinforce the importance of representativeness through case management and bellwether trial selection orders." *Id.* For example, in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales and Products Liability Litigation*, the MDL transferee judge emphasized,

> [T]he most critical element of this plan and the purpose it seeks to serve is for the most representative cases to be selected and for no one to lose sight of that objective. The Plaintiff's Steering Committee has a role to competently represent, at the very least administratively, all of the plaintiffs in this litigation. Defendant's leadership committee must competently represent the defendants. Together, however, they share a common interest in this phase of the litigation, which is to put together a list of cases that most accurately represent the typical case at issue in this litigation. Successful fact gathering during the bellwether process could well lead to an earlier conclusion to this litigation rather than a protracted litigation process, thereby conserving precious resources, redirecting resources, shaping expectations and serving the ends of justice for all concerned. Little credibility will

>be attached to this process, and it will be a waste of everyone's time and resources, if cases are selected which do not accurately reflect the run-of-the-mill case."

FJC & JPML, *Bellwether Trials,* at 23-24 (citing *In re Yasmin and Yaz (Drospirenone) Marketing, Sales and Products Liability Litigation* (MDL No. 2100) (S.D. Ill.  Oct. 13, 2010)).

These principles are consistent with the purpose of the MDL statute.  The core function of every MDL is to avoid duplication of pretrial activity, particularly discovery, in cases involving common factual issues.  *Ephraim v. Abbott Lab'ys*, 601 F. Supp. 3d 1274, 1276 (S.D. Fla. 2022) ("The purpose of a multidistrict ligation ('MDL') is to coordinate and consolidate pretrial proceedings 'for the convenience of parties and witnesses and [to] promote the just and efficient conduct of such actions.' 28 U.S.C. § 1407(a)").  Discovery, by its nature, uncovers facts not apparent at the outset of the litigation, and MDLs can and must evolve to continue to manage the amendments and motions resulting from new evidence and developing theories: no federal civil litigation is frozen in time at its outset.  *In re Generic Pharm. Pricing Antitrust Litig.*, 315 F. Supp. 3d 848, 855 (E.D. Pa. 2018) ("The purpose of the Electronic Case Management Orders is to facilitate the efficient management of the MDL, not to dictate the course of the litigation. . . . The Court has no hesitation in making structural adjustments as the needs of the MDL evolve.").  Indeed, in creating this MDL, the Judicial Panel on Multidistrict Litigation recognized the possibility that the evolution of the litigation might involve "additional categories of plaintiffs and defendants, as well   as different types of claims."  *In  re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1379 (JPML 2017).

The current PBM bellwether pool fails these tests.  The pool includes too few states and omits significant geographic areas where the opioid epidemic continues to worsen.  Moreover, allowing the parties to strike two of the other side's choices from an extremely limited pool of cases and circuits makes it even more likely that the resulting trials will not "serve the twin goals

of being informative indicators of future trends and catalysts for an ultimate resolution" because the parties know that the cases are simply not representative. *In re E.I. Du Pont De Nemours & Co.,* 54 F.4th at 912, n.3 (internal quotations omitted).

The PEC suggests two alternatives.  The first option would be to expand the bellwether pool.  The second option is to eliminate strikes.

With respect to the expansion of the pool, consistent with the Court's bellwether protocol, the PEC proposes that each side be permitted to pick four cases pending in the MDL from four different states in four different circuits.  However, the PEC requests the selections from each side may either be from existing MDL cases in which at least one PBM has already been sued or be from cases in which no PBMs have been sued.  Thereafter, each side would be permitted to exercise two strikes, leaving four PBM bellwether cases.  The plaintiffs in any case selected as a PBM bellwether would be permitted to amend their complaints, ensuring that the selected cases will in fact result in diversification of the bellwethers.

If the Court is not inclined to expand the pool to cases where the PBMs are not currently named as defendants, the PEC offers an alternative: that strikes be eliminated.  Each side should be permitted to pick two cases for bellwether trials from the current pool of cases asserting claims against at least one of the PBM defendants.  This alternative will allow each side to select and try two cases they believe are closer to representative of the entire litigation.

The Court can and should grant this requested relief.  District courts have authority to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment "to afford such relief from interlocutory orders as justice requires." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004).  And, in considering whether to do so, "significant discretion" is vested in the district courts. *Id.* at n.7.  This is especially true where,

as here, the order does not constitute a final judgment, the Court can treat the subsequent request as a renewed motion, and the Court is "free to reconsider or reverse its decision for any reason." *Turk v. Comerford*, No. 1:09-CV-868, 2011 U.S. Dist. LEXIS 53605, at *9 (N.D. Ohio May 17, 2011) (Polster, J.*), aff'd in part, rev'd in part on other grounds*, 488 F. App'x 933 (6th Cir. 2012).

Here, given the significance of these bellwethers and the expense of resources that will be dedicated to litigating the bellwethers by both sides, it is critical that the parties expend their efforts on cases that are representative of the true nature of claims that may be brought against the PBM defendants by plaintiffs in this MDL. The analysis of the distribution of the cases in the existing bellwether pool under the current selection protocol evidences a failure to meet the requirements for bellwether selection. This new analysis which was not before the Court at the status conference and was not briefed by the parties before the ruling supports granting the PEC's request to expand the pool to include a more representative sample of cases pending in the MDL or to eliminate the ability to strike the other side's choices in order to prevent the parties from striking the most representative cases selected by the other side. The interests of justice are served by the requested expansion.

## CONCLUSION

The current bellwether pool for cases against the PBMs is simply not representative. This Court should grant the PEC's motion to enlarge the selection pool.

*s/ Jayne Conroy*
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

2859147.1

8

          *s/ Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

          *s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
FARRELL & FULLER
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

          *s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on September 27, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

          *s/Peter H. Weinberger*
Peter H. Weinberger

2859147.1