UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>All Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

**PEC MEMORANDUM IN OPPOSITION TO MOTION TO DISQUALIFY SPECIAL MASTER COHEN**

The Plaintiffs' Executive Committee submits this memorandum in opposition to the motion filed by OptumRx, Inc. and Express Scripts, Inc. (together, the "PBMs") to disqualify Special Master David Cohen. The Affidavit provided by Special Master Cohen (the "Cohen Affidavit") in response to the PBMs' motion sets forth sufficient basis for this Court to deny the motion. Nonetheless, the PEC offers this memorandum to further elaborate on the grounds for denial, specifically that (1) the email on which the PBMs rely provides no evidence of bias or partiality; and (2) the email is protected by the judicial deliberative privilege and ought not be considered by the Court.[1]

    **A.**    **Special Master Cohen's Email Provides No Evidence of Bias or Partiality**

The PBMs contend that Special Master Cohen's email shows bias on two points: the knowledge of the PBMs, and the motivations underlying some of their positions regarding the bellwether process. They are wrong on both. The PEC notes at the outset the complete absence of any statement in Special Master Cohen's email that could be

---

[1] The facts pertaining to this motion are fully set forth in the Cohen Affidavit, familiarity with which is assumed here.

construed as demonstrating bias or hostility to any party. While it true that the Special Master expressed skepticism about some of the PBMs' positions (and about some of the PEC's positions as well), such statements do not reflect *bias*; instead, they reflect a judgment, albeit a preliminary one, about a matter submitted to him. Forming judgments about such matters is precisely what a Special Master is required to do. That a judicial officer has reached a conclusion adverse to a party is not evidence of bias; if it were, no decisions could ever be rendered. *See, e.g., In re Nat'l Prescription Opiate Litig.*, No. 19-3935, 2019 WL 7482137, at *3 (6th Cir. Oct. 10, 2019) ("[Judge Polster] pushed for settlement not because he had prejudged the case, but because that was the most expedient way to conclude the dispute."); *Bell v. Johnson*, 404 F.3d 997, 1006 (6th Cir. 2005) ("An opinion of the merits of the case, resulting from a judge's experience with the case in the course of his or her official duties, is not sufficient to justify § 455 recusal unless it demonstrates a deep-seated favoritism or antagonism that would make fair judgment impossible."). Special Master Cohen's email is devoid of anything reflecting deep-seated favoritism or antagonism to any party.

Despite the clear absence of any bias or hostility toward the PBMs in the Cohen email, the PBMs nonetheless claim that, because there has been no discovery from the PBMs in the MDL (and, specifically, no discovery from their mail-order pharmacy arms), Special Master Cohen's notation that they "knew a lot" must be the result of bias. But it is not necessary for the PBMs or their dispensing arms to have provided discovery in this action for the Special Master to believe that they "knew a lot" or to believe that permitting plaintiffs to add claims against the dispensing entities would shed light on what in fact

2

the PBMs knew. This is so for three reasons.

First, as the Special Master has already explained, his understanding that the PBMs "knew a lot" was based on a general understanding of what PBMs do and how they operate. Second, the Special Master's comment was not specific to the PBM's mail-order pharmacies or to claims arising from dispensing. Rather, the statement at issue refers only to what *the PBMs* knew; there is no reference in the text to what the mail-order pharmacies knew, and no basis to read such a specific reference into the Special Master's rough general note to himself. Third, as both the Special Master and the Court are well aware, through the DR-22 process Plaintiffs are in possession of document productions by the PBMs in a state court litigation in Missouri. That this discovery is not specific to dispensing claims is irrelevant. What the PBMs themselves knew in their capacity as pharmacy benefit managers may be relevant to their obligations as dispensers, particularly because this Court has previously held that, in discharging their obligations to provide effective controls against diversion, registrants acting as dispensers may not disregard what they—or their parent companies—have learned in other contexts or capacity. It was thus entirely appropriate for the Special Master to note that amended pleadings, including claims against the dispensing entities, would likely provide additional information about what the PBMs knew about opioids and the opioid epidemic, including information gleaned from DR-22 discovery.

Moreover, the PBMs are simply wrong in suggesting that the Special Master's comments on this subject show bias. On the contrary, the email shows the opposite of bias or partiality: it makes clear that the Special Master has no opinion about *what* the

3

PBMs knew, or whether what they knew would make them culpable, but rather that he was awaiting new information on these topics.   Far from reflecting bias, this note reflects recognition that, while the PBMs "knew a lot" (a point hardly open to debate, given the massive amounts of data to which they have access), what specifically they knew, and its significance here with respect to dispensing claims or otherwise, are open questions.

Nor is the PBMs' suggestion that it may have been improper for the Special Master to do preliminary research about the basic nature of pharmacy benefit managers well taken.  Although judicial officers must, of course, decide issues on the basis of the evidence before them, they are not expected to come to their job as complete blank slates, nor would we want them to. Judges are expected to be aware of basic facts about the world, to apply their wisdom and experience to the evidence that comes before them.  As the great Oliver Wendell Holmes wrote: "The life of the law has not been logic: it has been experience."  Oliver Wendell Holmes Jr., *The Common Law* 3 (2009 [1881]).  It would not be helpful to either side for the Special Master to address issues pertaining to PBMs, and to make recommendations to this Court, without having basic knowledge of what a PBM is.  (This is especially true where, as here, the first information in the record about what PBMs are consisted of the allegations of various plaintiffs.  Basic independent research would be a useful corrective where only one side has formally offered its view of the facts.)  Of course, if evidence put before a judicial officer contradicts or calls into question prior-held beliefs and experience, an impartial decision-maker must rethink those beliefs and experience, but it is not improper for a judicial officer to begin with knowledge beyond the evidence put before him in a particular case.  On the contrary,

4

knowledge of the world is a prerequisite, not a disqualification, for sound judging.

Nor is Special Master Cohen's comment that the PBMs are interested in complication and delay evidence of bias. The PBMs have appeared before the Court, and the Special Master, over a period of many months. The Special Master has had ample opportunity to form conclusions about their strategy and about the good faith of their positions that involve delaying adjudication of the claims against them. Indeed, the email cites evidence for his view that the PBMs have sought to delay the case against them. It does not reflect bias or partiality of any kind for the Special Master to have formed preliminary conclusions, on the way to forming judgments, about the motivations of the PBMs with respect to this litigation.

Finally, and critically, no decision was rendered by the Special Master on this matter. The email showed the Special Master's thought process as he recorded his impressions at the time. If he has formed an opinion that the PBMs may be attempting to delay this litigation, the PBMs might make better use of their time changing that opinion through a change in their behavior, rather than seeking to replace the Special Master for doing his job. But the PBMs' challenge on this issue is especially lacking because the Special Master's email reflects his preliminary conclusion that, *regardless of the PBMs' motivations*, amendments that would have the effect of complicating or delaying the case ought nonetheless be permitted. Indeed, he wrote: "If that complicates the case, so be it. We are used to that." Far from bias, this portion of the same email shows that, in the Special Master's view, even when the PBMs seek complication or delay, their positions may be well-taken and that avoidance of complication is not the ultimate goal

5

of the Court.

### B. Special Master Cohen's Email Is Privileged and Ought Not Be Considered by the Court

The Court should also take into account that Special Master Cohen's email, consisting of notes to himself including possible recommendations to the Court, is protected by the judicial deliberative privilege. That privilege protects confidential communications among judges and their staffs. *See, e.g., Matter of Certain Complaints Under Investigation by an Investigating Comm. of Judicial Council of Eleventh Circuit*, 783 F.2d 1488, 1520 (11th Cir. 1986) (superseded by statute on other grounds); *Adams v. Comm. on Jud. Conduct & Disability*, 165 F. Supp. 3d 911, 925 (N.D. Cal. 2016); *see also In the Matter of the Enforcement of a Subpoena*, 463 Mass. 162, 972 N.E.2d 1022 (2012). As the Eleventh Circuit has explained, "Judges . . . depend upon open and candid discourse with their colleagues and staff to promote the effective discharge of their duties. . . . Confidentiality helps protect judges' independent reasoning from improper outside influences." *Certain Complaints*, 783 F.2d at 1519–20. *Accord Matter of Enforcement of a Subpoena,* 463 Mass. at 168, 972 N.E.2d at 1029 (judicial privilege "ensures the integrity and quality of judicial decision-making"). Indeed, as the Supreme Court recently emphasized, "It is no exaggeration to say that the integrity of judicial proceedings depends on the inviolability of internal deliberation." U.S. Supreme Court, *Statement of the Court Concerning the Leak Investigation* 1 (Jan. 19, 2023).[2]

---

[2] *Available at* https://www.supremecourt.gov/publicinfo/press/Dobbs_Public_Report_January_19_2023.pdf.

6

As the above authorities make clear, this privilege applies to judges *and their staffs*; the internal deliberative processes of a duly-appointed Special Master are undoubtedly included in this privilege. *See Certain Complaints*, 783 F.2d at 1520 ("[T]here exists a privilege ... protecting confidential communications among judges and their staffs ... ."); *Matter of Enforcement of Subpoena*, 463 Mass. at 174, 972 N.E.2d at 1033 ("The privilege also protects confidential communications among judges and between judges and court staff ... ."). Nor can there be any doubt that the disclosure of Special Master Cohen's email containing his thought processes was inadvertent; the email so stating, and asking that the original email be discarded and disregarded, was sent less than 30 minutes after the original disclosure. *See* David R. Cohen, Email (Aug. 28, 2023), ECF No. 5196-3. The Cohen Affidavit, moreover, explicitly states that the email, consisting of his personal thoughts reflecting his initial impressions, was intended to be sent only to himself. Cohen Aff. ¶ 7. Because the privilege protects the integrity of the judicial process itself, rather than the individuals involved in that process, it cannot be waived.

Courts have disagreed as to whether the privilege is absolute, *see, e.g., Matter of Enforcement of a Subpoena,* 463 Mass. at 168, 972 N.E.2d at 1029, or qualified, *see Certain Complaints*, 783 F.2d at 1520, but in either case, the Court ought not use the email at issue here as a basis for disqualification. *See Harris v. Goins*, 2016 WL 4501466 (E.D. Ky. Aug. 26, 2016) (declining to decide if privilege is qualified or absolute, as communications at issue were protected under either standard).

In *Matter of Enforcement of a Subpoena,* a case directly on point, the Massachusetts Supreme Judicial Court held:

7

> [A]lthough holding judges accountable for acts of bias in contravention of the Code of Judicial Conduct is essential, it must be accomplished without violating the protection afforded the deliberative processes of judges fundamental to ensuring that they may act without fear or favor in exercising their constitutional responsibility to be both impartial and independent.

463 Mass. at 163, 972 N.E.2d at 1025.  The court further held:

> In light of the important interests served by the recognition of a judicial deliberative privilege . . .we agree with the Illinois Appeals Court and the West Virginia Supreme Court that the best approach is to consider this privilege narrowly tailored but absolute. . . . This absolute privilege covers a judge's mental impressions and thought processes in reaching a judicial decision, whether harbored internally or memorialized in other nonpublic materials. The privilege also protects confidential communications among judges and between judges and court staff made in the course of and related to their deliberative processes in particular cases

463 Mass. at 174, 972 N.E.2d at 1033 (citing *Thomas v. Page*, 837 N.E.2d 492, 493–94 (Ill. Ct. App. 2005); *West Virginia ex rel. Kaufman v. Zakaib*, 535 S.E.2d 727, 735 (W. Va. 2000)).

Even if the privilege were deemed to be a qualified one, however, the email at issue here should still not be considered.  As the Eleventh Circuit explained:

> Once the party asserting the privilege has met the burden of showing that the matters under inquiry implicate communications among a judge and his staff concerning performance of judicial business. . . those matters are *presumptively privileged*. . . .

*Certain Complaints*, 783 F.2d at 1521–22 (emphasis added).  To overcome the privilege, "the investigating party can attempt to show the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means."  *Id*. at 1522.  "The court then must weigh the investigating party's demonstrated need for the information against the degree of intrusion upon the confidentiality of privileged communications necessary to satisfy that need."  *Id*.

8

Here, the interests protected by the privilege are paramount because the email reflects nothing more than preliminary thoughts.  A Special Master's early musings on the issues before him—without issuing any ruling, much less a ruling against the party seeking disqualification—ought not be used to disqualify him.  Judicial officers must be free to work through their thoughts on the issues that come before them, without fear that any step in the internal process, any preliminary thought or conclusion—even those that may turn out to be wrong or unsupported—may become a basis for disqualification. The attempt to use any stray musing the Special Master may have noted to himself as evidence of bias is nothing more than an attempt to police the thoughts of judicial officers before they have had a chance to complete their analyses and render their ultimate conclusions.  Judicial officers must be impartial, of course.  But their minds must be free to consider possibilities, to draft imprecisely, and to record preliminary thoughts.  No reasonable litigant could think otherwise.  The proper question is whether the decisions rendered by a judicial officer are the product of bias or partiality, not whether every thought a judge or Special Master has can withstand close scrutiny.  However inimical to the judicial process it may be to consider judicial deliberative materials to challenge a decision rendered by a Court or a Special Master, the use of such materials to challenge the preliminary thoughts and musings of a judicial officer would undermine the ability of the Court and its staff to think and test their conclusions before rendering decisions. Any interest in challenging a judicial officer's preliminary thoughts cannot outweigh the strong institutional interests protected by the privilege.

That the email has already been disclosed does not change the analysis in this context. Using preliminary notes inadvertently disclosed to sanction a judicial officer for purported bias—even worse, the use of such material as a basis for disqualification—would thoroughly undermine the adjudicative process and the interests the privilege is designed to protect. The PEC notes, as well, that this Court's order appointing the Special Masters in this MDL, including Special Master Cohen, requires the parties to cooperate fully and faithfully with the Special Master and to "observe faithfully the requirements of any orders of the Court and rulings by the Special Masters." Appointment Order 7 (N.D. Ohio Jan. 11, 2018), ECF No. 69. In refusing to disregard and discard the email they inadvertently received—*after* Special Master Cohen specifically asked them to—at a minimum reflects a lack of cooperation with the Special Master. The PBMs should not be rewarded for this behavior.

## CONCLUSION

For the foregoing reasons, and those set forth in the Affidavit submitted by Special Master Cohen, this Court should deny the PBMs' motion to disqualify in its entirety.

Respectfully submitted,

*s/ Jayne Conroy*
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com
*Plaintiffs' Co-Lead Counsel*

*s/ Joseph F. Rice*
Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com
*Plaintiffs' Co-Lead Counsel*

*s/ Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
FARRELL & FULLER
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

*s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*s/Peter H. Weinberger*
Peter H. Weinberger