UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**OPTUMRX, INC. AND EXPRESS SCRIPTS, INC.'S
OPPOSITION TO THE PEC'S EXPEDITED MOTION
TO EXPAND THE POOL FOR SELECTION OF PBM BELLWETHER CASES
OR MODIFY THE BELLWETHER SELECTION PROCEDURES**

**INTRODUCTION**

The PEC's expedited motion (Dkt. No. 5206) is an improper request to reconsider the Court's order setting a PBM bellwether-selection process (Dkt. No. 5166). That order followed a lengthy hearing at which the Court considered and rejected most of the arguments the PEC now recycles in its motion and the remaining arguments the PEC could have raised but chose not to. The PEC doesn't identify new facts, new law, or changed circumstances justifying its reconsideration request. There are none.

At the hearing, the Court heard from both the PEC and the PBMs (OptumRx and Express Scripts) on bellwether selection and adopted neither side's proposal wholesale. Despite disagreeing with aspects of the Court-ordered process, the PBMs have followed the Court's order, devoting significant resources to implementing it and preparing to name potential bellwethers consistent with the parameters that the Court established. The PBMs should not be punished for doing what the Court instructed. The PEC's motion, which came two days before bellwether picks were due, should be denied outright without the parties' relitigating the merits of the selection process that the Court already considered and addressed in its order.

But if the Court is inclined to retread old ground, it should once again reject the PEC's arguments. *First*, the PEC's argument that the pool of potential bellwether cases is not representative is nonsensical. The existing pool is by definition representative because it is the very pool of cases filed against the PBMs in the MDL. That the PBM pool is small compared to the thousands of cases against manufacturers, pharmacies, and distributors reflects the reality that most MDL plaintiffs did not think they had viable claims against the PBMs. The few that (incorrectly) believed that they did sued years ago—before the Judicial Panel on Multidistrict Litigation closed this MDL to new cases.

1

*Second*, the PEC's request to broaden the bellwether pool to include other MDL cases that involve no claims against the PBMs turns both civil procedure and due process on their head. The PBMs do not know the MDL cases where they have *not* been sued, nor could they fairly choose one of those cases as a bellwether. The PEC cites no precedent for the proposition that a defendant can or should be forced to choose a potential bellwether from an unidentified set of cases in which it has not been sued. There is no such precedent. Nor can the PEC add brand-new cases to the pool: the JPML cut off additional transfers to the MDL nearly a year and a half ago, amending existing MDL cases to add the PBMs would be improper (and OptumRx and Express Scripts would oppose such amendments), and even if it were allowed, amending an existing MDL case in a state where the PBMs are not defendants—as the PEC proposes—would result in an entirely unrepresentative bellwether.

*Third*, the PEC proposes an alternative remedy to allow the Plaintiffs and PBMs to pick two bellwethers from the existing pool of PBM cases in the MDL cases with no strikes. But that fallback option would ensure a selection process that undermines representativeness. The well-established picks-and-strikes method is favored because it enhances the prospects of selecting a representative set of bellwethers. That may explain why the Court appears to have already rejected that part of the PEC's motion. *See* Sept. 28, 2023 Non-Document Order ("The Court will set new '**pick and strike** dates' after ruling on th[e] [PEC's] motion[.]") (emphasis added).

* * *

This is now the second time the PEC has unilaterally sought to derail the Court's PBM bellwether-selection order at the last minute. Enough is enough. In March 2023, just days before the prior Court-ordered deadline to select PBM bellwethers, the PEC sent a letter claiming it could not select bellwethers, upending the entire process. When the Court then ordered a new process

2

and instructed the parties to get their picks in by September 22, 2023, the PEC sought (and received) a one-week extension shortly before the deadline and then a week later filed this motion that once again seeks to upend the whole process just days before the new deadline. The PEC's pattern of refusing to comply with the Court's orders at the last minute and then unilaterally seeking to change the rules is improper and unreasonable. The PEC did not even meet and confer with the PBMs or otherwise offer any notice that it planned to file this motion. Unlike the PEC, the PBMs were ready to pick bellwethers the first time back in March, and they are ready to pick bellwethers now.

For months now, the PEC has repeatedly delayed and derailed PBM bellwether selection. And it has done so for one reason: It failed to sue the PBMs for nearly half a decade while this MDL was open, so it does not have the PBM cases in the MDL that it thinks it needs to guarantee that one of its cases will emerge as a bellwether. Other counsel who filed most of the 84 PBM cases in the MDL have not joined the PEC's motion because the motion is not about bellwether "representativeness" or any of the other things that the PEC mentions; it is instead the PEC's latest political effort to guarantee a seat at the bellwether table. The Court should put an end to the PEC's gamesmanship and consistent efforts to bend the rules. The parties should proceed as ordered.

## BACKGROUND

At a status conference on February 21, 2023, the Court directed the parties to decide on two PBM bellwether cases using a picks-and-strikes method. Dkt. No. 5196-10 at 1–2. The parties discussed bellwether selection at teleconferences with Special Master Cohen on February 24 and March 13. Special Master Cohen set a March 17 deadline to pick two bellwethers. *Id.* at 2. Hours before a meet and confer scheduled for March 14, the PEC canceled, citing an unspecified conflict. *Id.* The next day, the PEC announced that it would not engage further on bellwether selection and

would not comply with the Court's directive to choose two bellwethers, claiming that planned motions to disqualify certain Plaintiffs' counsel must be resolved before bellwether selection. *Id.* at 2–3. Rather than order the PEC to comply with the Court's and the Special Master's directives, Special Master Cohen informed the parties that they didn't need to continue with bellwether selection and that the Court would instead consider the matter at a status conference on March 22. Ex. 1 (3/15/23 email from Special Master Cohen).

At the March 22 status conference, the Court concluded that bellwether selection did not need to await resolution of the planned disqualification motions—the Court agreed that those disqualification motions should wait for particular cases and could not be decided in the abstract— but bellwether selection stopped while the parties participated in mediation.

Discussions about bellwethers resumed in August. Before a status conference on August 30, the parties submitted status reports with their respective positions on bellwether selection and amendments of complaints. *See* Dkt. Nos. 5196-6, 5196-7. The PBMs' report identified a number of issues to be resolved or confirmed before any bellwether process could begin, including: the PBMs' intention to oppose (on the record) any effort by Plaintiffs to amend MDL complaints to add claims against the PBMs in cases where the PBMs are not defendants, the PBMs' understanding (based on earlier communications with the PEC) that the parties agreed that there would be two bellwethers, and the PBMs' potential need to add other defendants to any PBM bellwether, depending on what claims the Plaintiffs in those bellwethers sought to pursue. *See* Dkt. 5196-6. At the conference, the Court considered those issues. The parties and the Court discussed (among other things) the pool of potential bellwethers; the PBMs proposed a pool consisting of the cases in the MDL with claims against the PBMs while the PEC pressed for a pool encompassing all cases in the MDL, even those where the PBMs are not defendants. Dkt. No. 5206-2 (Aug. 30

Hearing Transcript) at 13:18–15:1; 43:3–21. The parties also debated the number of bellwethers, with the PBMs seeking two (as the Court originally directed) and the PEC requesting four. *Id.* at 5:1–3; 15:21–22; 16:7–9.

At the hearing, the Court announced its final decision about the bellwether-selection process (*id.* at 28:4–20; 29:8–25; 30:2–24; 32:22–25) and memorialized that announcement in a written order the next day. Dkt. No. 5166. The Court directed the PEC and the PBMs to each select four cases by September 22, 2023, that (1) are already filed in the MDL, (2) name OptumRx or Express Scripts (or both) as defendants, and (3) come from four different federal circuits. Dkt No. 5166. The Court further directed each side to strike two of the other side's selections by October 6, 2023, which would leave a total of four PBM bellwether cases, two selected by each side. *Id.*

On September 19, 2023, without first consulting with the PBMs, the PEC emailed Special Master Cohen seeking a seven-day extension of the deadlines to select and strike bellwethers. Ex. 2 (9/19/23 email from Peter Weinberger). Special Master Cohen granted the PEC's request, moving the deadline to select bellwethers to 4 p.m. Eastern on September 29, 2023, and the deadline to strike bellwethers to October 13, 2023. Ex. 2 (9/19/23 email from Special Master Cohen).

At 5:45 p.m. on September 27—less than 48 hours before the new selection deadline—the PEC filed this motion seeking reconsideration of the Court's order setting the PBM bellwether-selection process. Dkt No. 5206. The PEC filed the motion without meeting and conferring with the PBMs and without otherwise providing any notice of the motion. The next morning, the Court suspended the operative deadlines and directed the PBMs to file a response by 4:00 p.m. Eastern on October 3, 2023. *See* 9.28.23 Non-Document Order.

## LEGAL STANDARD

"Traditionally, courts will find justification for reconsidering interlocutory orders [only] when there is . . . a need to correct a clear error or prevent manifest injustice." *In re Nat'l Prescription Opiate Litig.*, 2021 WL 821512, at *1 (N.D. Ohio Mar. 4, 2021) (Polster, J.) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. Appx. 949, 959 (6th Cir. 2004)). "Motions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls . . . attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Id.* (quoting *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003)).

## ARGUMENT

The Court already held a hearing and issued an order on the PBM bellwether-selection process. In its motion, the PEC provides no valid reason to reconsider that order; every argument the PEC raises in its motion either was already raised and considered at the August 30 hearing or could have been. No new facts, law, or intervening changes in circumstances justify revisiting the Court's decision. *Id.* And even if the Court were to reconsider its prior decision, there is no basis for granting the PEC's requested relief.

## I.   THE EXISTING BELLWETHER POOL IS REPRESENTATIVE.

The PEC argues that the bellwether pool must be expanded because it "is simply not representative" and "includes too few states and omits significant geographic areas where the opioid epidemic continues to worsen." Mot. at 6, 8. But the issue of the proper bellwether pool was already raised and argued at the August 30 hearing, and the Court concluded that the pool of bellwethers should be the existing PBM cases in the MDL. *See* Dkt. No. 5206-2 at 30:14–19 (Mr. Cooper: "Your Honor, just to be clear, this is picking from the 80 existing cases? The Court:

6

Yes. . . . You pick four of 80, and they pick four of 80."); *id.* at 44:13–16 (ordering that "the bellwether pool . . . [is the] 80 to a hundred cases that currently name PBMs"). The PEC recognized the Court's decision on the record. *Id.* at 43:3–21 (Mr. Farrell: "The plaintiffs in the PEC proposed a process that . . . [involves] not just . . . the cases of named defendants. . . . [A]nd now we've reverted back to a narrower process that the PEC is going to have to absorb, quite frankly. . . . And so the consequences of a decision limiting bellwethers to simply the 80, there is going to be a consequence to this."). As Mr. Farrell's comments make clear, the PEC was fully aware of the 80-case universe at the August 30 hearing.[1] If the PEC wanted to argue that the chosen universe of cases was somehow unrepresentative, it could and should have done so at the August 30 hearing . The PEC offers no valid reason to reconsider the Court's ruling.

In any event, the current pool of potential bellwethers is representative; indeed, it is *completely* representative of the MDL cases against the PBMs. The pool consists of all cases in the MDL with claims against the PBMs. That pool is, of course, identical to, and therefore perfectly representative of, all the cases in the MDL with claims against PBMs. A pool of potential bellwethers must be measured against existing claims in the MDL. *See, e.g.*, *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019–21 (5th Cir. 1997); The PEC appears to suggest that representativeness should be measured against an unidentified set of hypothetical claims that might or might not arise in the future against the PBMs (Mot. at 6, 8), but they cite no authority for that proposition. There is none.

The PEC has had ample notice of the pool of eligible PBM bellwethers. The parties have discussed PBM bellwether selection for months now, including at the status conferences with the

---

[1] At the time of the hearing, the full number was 85 cases, *see* Dkt. No. 5196-13, although one of those cases was recently dismissed with prejudice, *see* Order (Sept. 22, 2023), in No. 1:18-op-45446 (N.D. Ohio), so there are now 84 cases in the MDL with claims against the PBMs.

Court in March and August of this year. The PEC's claimed surprise at the bellwether pool (Mot. at 2) is disingenuous. Any dissatisfaction with the bellwether pool lies at the PEC's own feet—it had years to file additional cases against the PBMs and chose not to.

## II.  EXPANDING THE POOL TO INCLUDE CASES WITHOUT PBM DEFENDANTS WOULD BE UNLAWFUL AND ILLOGICAL.

The PEC now argues that, to make the bellwether pool representative, the pool must expand "to include cases brought by plaintiffs in states and circuits where there currently are no existing PBM claims." Mot. at 4. Again, the issue of the proper bellwether pool was aired and decided at the August 30 hearing, after defense counsel opposed expanding the pool to include cases without PBM defendants. *See* Dkt. No. 5206-2 at 15:25–16:2 (Mr. Cooper: "[W]hat we need to know is the universe of cases because I don't see how we can choose cases where we're not defendants . . . that just doesn't make sense to us or our client."). Here too, the PEC offers no valid reason to reconsider the Court's ruling.

But if the Court were to reconsider this argument on the merits, it should reject it. Defining the PBM bellwether pool as all existing cases in the MDL—including the thousands of cases without claims against the PBMs—would be improper on procedural and constitutional grounds. A bellwether must be representative of the "universe of claims involved in this litigation." *Chevron*, 109 F.3d at 1019. For a PBM bellwether, the universe consists of the 84 pending MDL cases in which claims have been alleged against the PBMs. Cases in which no claims have been alleged against the PBMs necessarily cannot be part of the pool of potential PBM bellwethers because they do not include claims against the PBMs. Allowing those cases to be part of the PBM bellwether pool would contravene the most basic requirements of the Federal Rules of Civil Procedure and due process, which mandate (among other things) that plaintiffs allege claims against defendants in a complaint and serve the defendants with process to give them notice of the

8

claims against them. *See* Fed. R. Civ. P. 4, 8; *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

And although the PEC asserts that some MDL plaintiffs may in the future seek to amend their existing MDL cases to add claims against PBMs, the PEC does not identify any of those plaintiffs (let alone all of them). To be clear, OptumRx and Express will oppose any such efforts to amend MDL cases to add the PBMs as defendants. But in any event, it would be both impossible and fundamentally unfair to the PBMs to ask them to choose potential bellwethers from an undefined set of potential cases where they have not even been sued.

It also makes no sense to allow the PEC to choose cases in states where PBMs have not been sued, as it proposes to do. Mot. at 3–4. As this Court has recognized, there can be significant differences in public nuisance law among different states. *See* Dkt. No. 5206-2 at 24:5–7 ("Well, if the plaintiffs are going to pursue public nuisance, Mr. Cooper, that's different in every state. Every state has its own public nuisance law."). As a result, picking a bellwether from a state where there are zero pending MDL cases against the PBMs would result in a bellwether that is not representative of any other PBM cases in the MDL. Permitting such an unfair and non-representative bellwether selection would would violate the PBMs' due process rights and would undermine bellwethers' purpose. *See Chevron*, 109 F.3d at 1019–21 (simply allowing each side to pick the best and worst cases is not a true "bellwether" process, and that due process concerns arise when bellwethers are not truly representative of the plaintiffs who have sued the defendants); *Henderson v. JPMorgan Chase Bank*, 2017 WL 6939161, at *4 (C.D. Cal. Oct. 17, 2017) ("courts

9

have found that "'representativeness" is a "core element" that must be present for a bellwether trial' to be effective") (citations omitted); *Morgan v. Ford Motor Co*., 2007 WL 1456154, at *6–7 (D.N.J. May 17, 2007) ("Bellwether plaintiffs are not created pursuant to any formal rule, and the Court in *Chevron* cautioned that the sample must be representative to maintain the parties' due process rights. . . . Therefore, to ensure the usefulness of bellwether plaintiffs to the process and the parties' due process rights, representative plaintiffs must be chosen."). The bellwether-selection method the PEC proposes would result in bellwethers that represent only the PEC's whims. That sort of process would violate the PBMs' rights and would be useless in serving as a guide for the other pending PBM cases in the MDL.

Allowing new cases in this MDL against the PBMs would also contravene the JPML's orders. The JPML has ruled that new opioid cases will no longer be transferred to this MDL. Ex. 3 (April 8, 2022 order); Ex. 4 (June 1, 2022 order denying reconsideration). Now that the JPML has closed this MDL to new cases, members of the PEC have chosen to file cases against the PBMs in other courts outside the MDL, including two within the past few weeks by the co-chair of the PEC and a number earlier this year by a member of the PEC. *See, e.g.*, *California v. Express Scripts, Inc., et al.*, No. 23 ST 20886 (Sup. Ct. Los Angeles County) (filed August 30, 2023); *Alaska v. Express Scripts, Inc., et al.*, No. 3AN-23-08083 CI (Alaska Sup. Ct.) (filed August 30, 2023); *City of Atlanta, Ga., et al. v. Mylan Pharms., Inc.*, No. 23-cv-01193 (N.D. Ga.) (filed March 21, 2023); *Palm Beach Cnty, Fla., et al. v. Mylan Pharms., Inc., et al.*, No. 23-cv-80431 (S.D. Fl.) (filed March 17, 2023). If the PEC or other Plaintiffs believe they have valid claims against the PBMs

(the Florida and Georgia claims against the PBMs have already been voluntarily dismissed), they can file outside the MDL.[2]

## III.    THE COURT SHOULD PRESERVE THE PARTIES' RIGHT TO STRIKE CASES.

The PEC argues in the alternative that the Court should "eliminate the ability to strike the other side's choice in order to prevent the parties from striking the most representative cases selected by the other side." Mot at 4. But (i) the parties have relied on the Court's order that bellwether selection proceed through a picks-and-strikes method since at least February of this year, (Dkt. No. 5196-10 at 1–2); (ii) the PEC itself proposed a picks-and-strikes method in its August 28 submission on bellwether selection, (Dkt No. 5206-1); and (iii) at the August 30 hearing, and in its later written order, the Court ordered a picks-and-strikes method. Dkt. No. 5206-2 at 32:22-24; Dkt. No. 5166. The PEC offers no valid basis for reconsidering that settled aspect of the selection process.

If the Court reconsiders the bellwether process, it should preserve the parties' right to strike cases—which it appears already to have done. *See* 9.28.23 Non-Document Order ("The Court will set new '***pick and strike*** dates' after ruling on th[e] [PEC's] motion[.]") (emphasis added).

As the PEC recognizes (Mot. at 4), bellwether selection aims to produce a representative sample of the aggregate litigation. Strikes are necessary to achieve that aim. Without strikes, each side has the incentive to pick the least representative, most self-serving cases. *See In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 919, 927 n.7 (6th Cir. 2022) (rejecting argument that picks-and-strikes bellwether selection process was unfair) (cited at Mot. at 5). "After

---

[2] Although the PEC makes much of its purported need to include western cases in the bellwether pool, the PEC itself has filed only two cases west of the Mississippi. *See California v. Express Scripts, Inc., et al.*, Case No. 23STCV20886 (Super. Ct. Aug. 30, 2023); *Alaska v. Express Scripts, Inc., et al.*, Case No. 3AN-23-08083 (Super. Ct. Aug. 31, 2023).

all, because the primary purpose of bellwether trials is to provide data points for settlement

discussions with respect to the universe of cases, the goal is to select the 'best' representatives of

the universe of cases, not outliers likely to result in victory for one side or the other." *In re: Gen.*

*Motors LLC Ignition Switch Litig.*, 2016 WL 1441804, at \*9 (S.D.N.Y. Apr. 12, 2016); *see also*

MANUAL FOR COMPLEX LITIGATION § 22.315 (4th ed. 2004) ("To obtain the most

representative cases from the available pool, a judge should . . . limit the selection to cases that the

parties agree are typical of the mix of cases.").

In fact, Judge Fallon's article—upon which the PEC relies (Mot. at 5)—discusses the

importance of strikes at length:

> [T]he transferee court can divide the selections evenly between the two sides. For example, if the transferee court determines that there should be twenty cases in the pool, then each side would be allowed to select ten. The obvious rationale behind this option is equity and fairness between the sides. ***The primary problem with this option, however, is that it does not eliminate or minimize the chance that the attorneys will select favorable, rather than representative, cases***.
>  . . .
> ***Regardless of which method is ultimately employed, a transferee court should consider allowing each side of coordinating attorneys to veto or strike from consideration a predetermined number of cases in the trial-selection pool***. No matter how diligently the attorneys or the transferee court fill the trial-selection pool, the possibility will always remain that, after the close of case-specific discovery, an unrepresentative case or a grossly unfavorable case will wind up in the trial-selection pool. By permitting the attorneys to strike or veto cases, the transferee court can minimize the chance that one of these outliers is selected as a bellwether trial, without having to disturb the preordained method of trial selection. In this way, if the abnormal case rears its head, the attorneys are equipped to deal with it on their own, without seeking court intervention.

Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2350,

2365 (2008) (emphasis added).

Beyond that, the PEC's proposal to dispense with strikes is irreconcilable with the PEC's

principal argument that the bellwether pool is not representative. The well-established picks-and-

strikes method assists in selecting a representative set of bellwethers; if the pool is inadequate to

begin with—as the PEC wrongly argues—dispensing with strikes would only compound the problem.

But again, the PEC's motion is not rooted in the law or logic. It is, at its root, about power—the power for the PEC to unilaterally select unrepresentative PBM bellwethers without any fair process as a way for the PEC to erase the consequences of its decision years ago not to sue the PBMs. The Court should not condone the PEC's attempt at an end-run around the court-ordered picks-and-strikes process.

## CONCLUSION

The Court should deny the PEC's motion to reconsider the bellwether selection process that the Court previously ordered after a hearing on the issue.


Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com


William H. Jordan
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com


Kimberly K. Chemerinsky
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Tel: (213) 576-1000
kim.chemerinsky@alston.com

*Attorneys for Defendant OptumRx, Inc.*

*/s/ Jonathan G. Cooper*
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendant Express Scripts, Inc.*

13