UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**OPTUMRX, INC. AND EXPRESS SCRIPTS, INC.'S
REPLY SUPPORTING THEIR
<u>MOTION TO DISQUALIFY SPECIAL MASTER COHEN</u>**

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I. A REASONABLE OBSERVER WOULD QUESTION SPECIAL MASTER COHEN'S IMPARTIALITY. ............................................................................ 3

II. SPECIAL MASTER COHEN HAS NEVER CLAIMED ANY PRIVILEGE OVER HIS EMAIL. ON THE CONTRARY, HE FILED A PUBLIC AFFIDAVIT ABOUT IT AND SPOKE TO THE PRESS ABOUT IT. ................................................................................................................. 6

CONCLUSION .......................................................................................................................... 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Di Lapi v. City of New York*,
  2012 WL 37576 (E.D.N.Y. Jan. 6, 2012) ................................................................................. 7

*Hobley v. Burge*,
  445 F. Supp. 2d 990 (N.D. Ill. 2006) .................................................................................... 7, 8

*In re Boston's Children First*,
  244 F.3d 164 (1st Cir. 2001) ................................................................................................... 5

*In re Enforcement of Subpoena*,
  972 N.E.2d 1022 (Mass. 2012) ............................................................................................... 7

*Lawrence v. Suffolk Cty.*,
  2022 WL 855380 (E.D.N.Y. Mar. 23, 2022) ........................................................................ 6, 7

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ............................................................................................................ 2, 9

*Matter of Certain Complaints Under Investigation by an Investigating Committee of Jud. Council of Eleventh Cir.*, 783 F.2d 1488 (11th Cir. 1986) .................................................................. 7

*Smith v. ABN AMRO Mortgage Group*,
  434 F. App'x 454 (6th Cir. 2011) ........................................................................................... 6

*State ex rel. Kaufman v. Zakaib*,
  535 S.E.2d 727 (W. Va. 2000) ................................................................................................ 7

*Thomas v. Page*,
  837 N.E.2d 483 (Ill. Ct. App. 2005) ....................................................................................... 7

*United States v. Antar*,
  53 F.3d 568 (3d Cir. 1995) ...................................................................................................... 2

*United States v. Liggins*,
  76 F.4th 500 (6th Cir. 2023) ................................................................................................ 3, 4

*United States v. Patej*,
  95 F. App'x 750 (6th Cir. 2004) ............................................................................................. 6

**STATUTES AND RULES**

Federal Rule of Civil Procedure 53(a)(2) ............................................................................................. 1

28 U.S.C. § 455(a) ............................................................................................................................ passim

## INTRODUCTION

The PEC's opposition picks up where Special Master Cohen's multiple affidavits left off,[1] arguing that Special Master Cohen does not harbor actual bias against OptumRx or Express Scripts and suggesting that Special Master Cohen's inadvertent email was purportedly cloaked in some privilege. There is such a thing as protesting too much, and here, Special Master Cohen's multiple affidavits and the PEC's response confirm that disqualification is required. Special Master Cohen sent an email to the parties and the Court that would lead any reasonable observer to question his impartiality as to OptumRx and Express Scripts. Under 28 U.S.C. § 455(a) and Federal Rule of Civil Procedure 53(a)(2), that should end the inquiry.

The PEC nevertheless tries to rewrite Special Master Cohen's email and the applicable standard. Under § 455(a), disqualification is required when there is the *appearance* of partiality; the statute does not require proof of actual bias (even though that exists here). Judged under that standard, there is no question that Special Master Cohen's email would lead a reasonable observer to question his impartiality. The PEC concedes that Special Master Cohen's email "reflects a judgment," even as it tries to downplay that judgment as a "preliminary one." Dkt. 5207 at 2. But there has been no discovery or briefing in any MDL case about what the PBMs or their affiliated mail-order pharmacies "knew," so Special Master Cohen's prejudgment of that merits issue casts doubt on his impartiality. So, too, do his statements that the PBMs' goal is to "complicate and delay" and that two bellwethers (as opposed to four) would allow the PBMs to avoid a "global resolution" by "buying off" two

---

[1] Before OptumRx and Express Scripts moved to disqualify Special Master Cohen, he served his first affidavit (Dkt. 5196-4 at 9–13). After they filed this motion, Special Master Cohen filed a second affidavit (Dkt. 5198), which he described in an email to the PBMs' counsel as "99.99% identical to my first affidavit." Ex. A (September 21, 2023 email). In the second affidavit, Special Master Cohen added language in multiple places claiming that his inadvertent email reflected his private "deliberative process" (Ex. A at 11–13 (Special Master Cohen Affidavit ¶¶ 10, 16))—an argument that features in the PEC's opposition.

plaintiffs. Dkt. 5196-2. The first has no basis in the record; the second goes far beyond encouraging settlement of particular cases and instead crosses into coercion of a "global resolution" that would include new plaintiffs and cases that have not been filed against the PBMs. "[A] reasonable observer is entitled to take the judge at his word," and "we must be careful not to rewrite what the judge has said and render unreasonable the clearest and most obvious reading of the language." *United States v. Antar*, 53 F.3d 568, 576–77 (3d Cir. 1995), *overruled in part on other grounds*, *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001).

The PEC also tries to assert the judicial deliberative privilege on Special Master Cohen's behalf—even though Special Master Cohen has never himself invoked the privilege. Even if Special Master Cohen had sought to invoke the privilege (he hasn't), it wouldn't change the outcome because he has waived any purported privilege through his words and actions. He publicly filed an affidavit discussing the email's content and even spoke to the press about it. *See* Dkt. 5198; Ex. B.

The PEC's accusations notwithstanding, OptumRx and Express Scripts do not seek to "police the thoughts of judicial officers" or "undermine the adjudicative process." Dkt. 5207 at 9–10. Quite the contrary: OptumRx and Express Scripts filed their motion to preserve (and in this case, restore) confidence in the judicial process. In any case, *Congress* has spoken and said that disqualification is *mandatory* in situations like this to "promote confidence in the judiciary." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988).

Special Master Cohen must be disqualified from participating in any pending or future MDL proceedings involving OptumRx or Express Scripts or their parents or affiliates. A list of the pending cases is at Dkt. 5196-13.[2]

---

[2] This list identifies 85 cases. Since OptumRx and Express Scripts filed their motion, this Court has dismissed with prejudice one of the cases. *See* Order (Sept. 22, 2023), in No. 1:18-op-45446 (N.D. Ohio). There are now 84 pending MDL cases with claims against OptumRx or Express Scripts.

**ARGUMENT**

The Court should disqualify Special Master Cohen from participating in any proceedings related to OptumRx and Express Scripts or their parents or affiliates because a reasonable observer viewing all the facts would question his impartiality. Nothing in the PEC's opposition changes that reality. If anything, the PEC's opposition underscores why any reasonable observer would question Special Master Cohen's impartiality.

**I.    A REASONABLE OBSERVER WOULD QUESTION SPECIAL MASTER COHEN'S IMPARTIALITY.**

Disqualification is required because a reasonable observer reading Special Master Cohen's email would question whether he has prejudged the merits of the claims about the PBMs' knowledge ("they knew a lot") and their motivations in the litigation ("their goal is to complicate and delay") and whether he is seeking to coerce a "global resolution" by the PBMs. The PEC's attempts to explain away the problems with Special Master Cohen's email only accentuate them.

*First*, the PEC argues that Special Master Cohen's opinions in his August 28 email "reflect a judgment, albeit a preliminary one, about a matter submitted to him." Dkt. 5207 at 2. OptumRx and Express Scripts agree that Special Master Cohen's email reflects judgments on his part, and that of course is the point: Special Master Cohen has prejudged merits issues without any evidentiary basis. At the very least, it *appears* that he has done so, which is all that is required for disqualification. And those judgments were not on matters "submitted" to him; there has been no discovery, no briefing, no argument, no nothing on the merits question of what the PBMs or their affiliated mail-order pharmacies "knew," and yet Special Master Cohen already believes that they "knew a lot." Dkt. 5196-2; *see also United States v. Liggins*, 76 F.4th 500, 507 (6th Cir. 2023) (disqualification is required under § 455 when "a reasonable observer could have interpreted [a judge's] remark to indicate a prejudgment of [a party's] guilt").

3

*Second*, the PEC argues that Special Master Cohen's affidavit shows that his "understanding that the PBMs 'knew a lot' was based on a general understanding of what PBMs do and how they operate." Dkt. 5207 at 3. No reasonable observer would come away with that understanding; the PEC is trying to rewrite Special Master Cohen's email for him. In any event, there has been zero evidence presented to the Court or Special Master Cohen about what the PBMs (or their affiliated mail-order pharmacies) "knew." Instead, Special Master Cohen's comment shows that he has prejudged an issue against the PBMs. Special Master Cohen's affidavit disclaiming bias does not change that fact. "[R]egardless of the [] judge's intended meaning, we must consider the interpretation that a reasonable observer . . . could have made, for we must guard against not only actual bias but also the appearance of bias, which 'demeans the reputation and integrity' of the court of which the district judge is a part." *Liggins*, 76 F.4th at 507.

The PEC also wrongly asserts that Special Master Cohen's email "refers only to what *the PBMs* knew; there is no reference in the text to what the mail-order pharmacies knew." Dkt. 5207 at 3. In fact, Special Master Cohen wrote that "claims against the PBMs *as mail-order pharmacies* will show how much PBMs knew (and they knew a lot)." Dkt. 5196-2 (emphasis added). Special Master Cohen did not draw a distinction between what the PBMs or their affiliated mail-order pharmacies "knew." To conclude, as Special Master Cohen did, that claims against the PBMs' affiliated mail-order pharmacies will show that the PBMs knew a lot, he must have prejudged—or at least, to a reasonable observer, he appears to have prejudged—the affiliated mail-order pharmacies' knowledge.

The PEC makes much of the discovery taken of the PBMs in one case outside the MDL, but none of that discovery has focused on the PBMs' affiliated mail-order pharmacies. *See* Dkt. 5207 at 3. And in trying to defend his email, Special Master Cohen has not invoked any of that discovery, which has not been presented to him in any proceeding in the MDL. There was an improper *ex parte*

4

submission that a Plaintiffs' attorney made to Special Master Cohen and the Court on December 7, 2022 (*see* Dkt. 5012 at 3–4; Dkt. 5015 at 3), but Special Master Cohen has not invoked that improper submission as a basis for the statements in his email.

*Third*, the PEC defends Special Master Cohen's comment that the PBMs seek to "complicate and delay" by arguing that he "has had ample opportunity to form conclusions about their strategy and about the good faith of their positions that involve delaying adjudication of the claims against them." Dkt. 5207 at 5. There is no basis in the record for that conclusion. On the contrary, it is the *PEC* that has delayed and complicated the proceedings against the PBMs, not the other way around. *See, e.g.*, Dkt. 5196-10 (PEC announcing its refusal to comply with March 2023 deadline to select PBM bellwethers); Dkt. 5206-2 at 33:10–25 (PEC requesting and receiving nine additional days to select PBM bellwethers, resulting in deadline of September 22, 2023); Dkt. 5213-2 (PEC requesting and receiving seven-day extension to select PBM bellwethers, resulting in deadline of September 29, 2023); Dkt. 5206 (PEC motion to change PBM bellwether selection process, resulting in suspension of September 29 deadline). But whether the PEC or Special Master Cohen's email is mischaracterizing the record is not the question under § 455(a). It is whether a reasonable observer would question Special Master Cohen's partiality in light of his remarks towards the PBMs. The answer is yes.

*Fourth*, the PEC argues that Special Master Cohen has never rendered a decision on the issues in his email. Dkt. 5207 at 5. That is irrelevant. Section 455(a) requires the disqualification of a judicial officer when there *appears* to be a lack of impartiality; it does not require that the appearance of impartiality manifest itself in a formal adverse ruling. *See, e.g.*, *In re Boston's Children First*, 244 F.3d 164, 170 (1st Cir. 2001) (disqualification required when "a reasonable person might interpret [the judge's] comments as a preview of a ruling on the merits of petitioner's motion for class certification, despite the fact that defendants had not yet filed a response to that motion").

5

*Fifth*, the PEC offers no defense of Special Master Cohen's comment that "I think we need 4 bellwethers, not 2 – it is too easy for Ds to buy off 2 Ps, avoiding any global resolution." *See* Dkt. 5196-2. Attempting to "coerce" settlement is prohibited. *Smith v. ABN AMRO Mortg. Grp.*, 434 F. App'x 454, 462 (6th Cir. 2011). Special Master Cohen's email reflects an intent to do just that; at the very least, it *appears* to do so. And coupled with Special Master Cohen's earlier statement in the same email that the Court should "just allow" the PEC to amend thousands of complaints without any briefing and "[l]et [the PBMs] mandamus you," the "global resolution" that Special Master Cohen has in mind extends beyond the existing cases against the PBMs to include other potential future plaintiffs and claims. That is far beyond a special master's authority, and the appearances created by Special Master Cohen's email on that score require disqualification. The PEC's silence on the issue says everything.

\* \* \*

Section 455(a) promotes confidence in the judiciary by requiring disqualification, not just for actual bias, but also for the appearance of bias. Special Master Cohen's prejudgment of key issues, derogatory comments towards the PBMs, and attempt to coerce the PBMs into settlement would at the very least lead a reasonable observer to question his impartiality. Taken together or apart, those comments require his disqualification.

**II.     SPECIAL MASTER COHEN HAS NEVER CLAIMED ANY PRIVILEGE OVER HIS EMAIL. ON THE CONTRARY, HE FILED A PUBLIC AFFIDAVIT ABOUT IT AND SPOKE TO THE PRESS ABOUT IT.**

The PEC's assertion of privilege over Special Master Cohen's email is baseless. Special Master Cohen has never asserted any privilege, and the PEC cannot invoke the privilege on his behalf by latching onto the phrase "private deliberative process" in the second version of Special Master Cohen's affidavit. The PEC lacks standing to do so. *See, e.g.*, *United States v. Patej*, 95 F. App'x 750, 752 (6th Cir. 2004) (finding that a defendant could not assert a third-party's privilege); *Lawrence v. Suffolk*

6

*Cty.*, 2022 WL 855380, at *10 (E.D.N.Y. Mar. 23, 2022) (rejecting attempt to raise a third-party's deliberative-process privilege).

The PEC's cited authorities—each of which involved attempted *discovery* into judicial officers' records or deliberations—don't say otherwise. *See, e.g.*, *Matter of Certain Complaints Under Investigation by an Investigating Comm. of Jud. Council of Eleventh Cir.*, 783 F.2d 1488, 1500–01 (11th Cir. 1986) (subpoenaed *judges* had standing to move to quash subpoenas seeking discovery into communications with their staffs); *In re Enforcement of Subpoena*, 972 N.E.2d 1022, 1034 (Mass. 2012) (granting in part a *judge's* claim of privilege but finding no privilege over "outward expressions of potential partiality" or other public comments); *Thomas v. Page*, 837 N.E.2d 483, 489–91, 496 (Ill. App. Ct. 2005) (granting subpoenaed *justices'* motion to quash because the justices claimed privilege over their undisclosed, confidential communications); *State ex rel. Kaufman v. Zakaib*, 535 S.E.2d 727, 737 (W. Va. 2000) (granting *judge's* petition for relief from discovery into internal mental processes). None of those cases supports the PEC's attempt to invoke the deliberative-process privilege on Special Master Cohen's behalf for already disclosed information. Indeed, "while 'the overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties,' there can be little question that the issue is moot once the proverbial horse is out of the barn." *Di Lapi v. City of New York*, 2012 WL 37576, at *7 (E.D.N.Y. Jan. 6, 2012) (citation omitted).

Even if Special Master Cohen had invoked any purported deliberative-process privilege (he hasn't), and even if the privilege would apply to this email (it wouldn't), he waived any such privilege. The deliberative-process privilege (like other privileges) is waived when a judicial officer "repeatedly and extensively disclos[es] details about his role and thought process." *Id.* at *5; *see also Hobley v. Burge*,

7

445 F. Supp. 2d 990, 998–99 (N.D. Ill. 2006) (finding "[p]rivilege[] relating to governmental decisionmaking" waived because Governor "voluntarily agreed to respond public[ly] to questions from a talk show host on the basis for his decision"). That is what Special Master Cohen has done here. Special Master Cohen knew that he had hit "reply all" within minutes of sending his August 28 email, but he didn't assert any claim of privilege in response that day—or any day since.

Instead, Special Master Cohen served an affidavit on the parties on September 7, discussing the email's content, asserting that his comments were based on prior research, and purporting to explain his intended purpose in writing the email. Dkt. 5196-4 at 11–13 (Special Master Cohen Sept. 7, 2023 affidavit at ¶¶ 11–16). Special Master Cohen then filed a *second* affidavit on the public docket in response to the PBMs' motion (Dkt. 5198) and went so far as to direct press inquiries to that affidavit, commenting, "I think the 'left arrow' for reply all and the 'right arrow' for forward are too close to each other on Outlook!" *See* Ex. B ("Opioid Special Master Facing Disqualification Motion After Hitting 'Reply All' on Email," Law.com (Sept. 20, 2023), https://www.law.com/2023/09/20/opioid-special-master-facing-disqualification-motion-after-hitting-reply-all-on-email/). He has waived any claim of privilege over his August 28 email.

The PEC closes by accusing the PBMs of not "cooperat[ing] fully and faithfully with the Special Master" because the PBMs did not ignore his (non-privileged) email. Dkt. 5207 at 10. But how could they ignore an email showing his bias against them (or at the very least raising the appearance of bias against them)? And contrary to the PEC's parade of horribles, seeking Special Master Cohen's disqualification has nothing to do with "polic[ing] the thoughts of judicial officers" or "undermin[ing] the adjudicative process." *Id.* at 9–10. No, this is about ensuring due process in the proceedings by removing the appearance of bias—and actual bias. Congress has mandated disqualification when a judicial officer's conduct leads a reasonable observer to question his impartiality precisely to "promote

8

confidence in the judiciary." *Liljeberg*, 486 U.S. at 865. There is no question that Special Master Cohen's email at least raises questions about his impartiality, so it easily meets the standard for disqualification.

## CONCLUSION

The Court should disqualify Special Master Cohen from participating in any pending or future MDL proceedings involving OptumRx or Express Scripts or their parents or affiliates.

October 4, 2023.

Respectfully submitted,

/s/ *Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com

Kimberly K. Chemerinsky
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Tel: (213) 576-1000
kim.chemerinsky@alston.com

*Attorneys for Defendant OptumRx, Inc.*

/s/ *Jonathan G. Cooper*
Michael J. Lyle, Esq.
Jonathan G. Cooper, Esq.
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendant Express Scripts, Inc.*

9

**CERTIFICATE OF SERVICE**

I certify that on October 4, 2023, I filed and served a copy of OptumRx, Inc. and Express Scripts, Inc.'s Reply using the CM/ECF system, which will give notice to counsel of record.

*/s/ Brian D. Boone*
Brian D. Boone