**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed:  October 30, 2023

Mr. Brian D. Boone
Alston & Bird
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203-6818

Mr. Christopher George Michel
Kirkland & Ellis
655 15th Street, N.W.
Suite 1200
Washington, DC 20005

Re:  Case No. 23-3882, *In re: OptumRx, Inc., et al*
Originating Case No.  1:17-md-02804

Dear Counsel:

The petition for writ of mandamus has been docketed as case number **23-3882** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

Counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **November 13, 2023**.  The forms are available on the court's website. **Please verify and if needed update your contact information in PACER to ensure continued service.**

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

RECEIVED
10/27/2023
DEBORAH S. HUNT, Clerk

CASE NO. _____

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
-------------------

In re OptumRx, Inc. and Express Scripts, Inc.
*Petitioners-Defendants*

-------------------

From the United States District Court
Northern District of Ohio, Eastern Division Case No. 17-MD-2804

-------------------

**PETITION FOR WRIT OF MANDAMUS**

_____

Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000

Christopher G. Michel
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
christophermichel@quinnemanuel.com
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendant Express Scripts, Inc.*

bill.jordan@alston.com

*Attorneys for Defendant OptumRx, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: _____     Case Name: In re OptumRx, Inc. and Express Scripts, Inc.

Name of counsel:  Quinn Emanuel Urquhart & Sullivan, LLP _____

Pursuant to 6th Cir. R. 26.1, Express Scripts, Inc. _____
*Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Yes. The Cigna Group, a publicly-held corporation traded on the New York stock exchange, holds all interests in Evernorth Health, Inc., which is the parent company of petitioner Express Scripts, Inc.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> Yes. The Cigna Group, a publicly-held corporation traded on the New York stock exchange, holds all interests in Evernorth Health, Inc., which is the parent company of petitioner Express Scripts, Inc.

---

### CERTIFICATE OF SERVICE

I certify that on _____ October 27, 2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jonathan G. Cooper _____

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed.**

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: _____          Case Name: In re OptumRx, Inc. and Express Script

Name of counsel:  Alston & Bird LLP _____

Pursuant to 6th Cir. R. 26.1, OptumRx, Inc. _____
                                                        *Name of Party*

makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Yes. UnitedHealth Group, Incorporated is the ultimate parent of OptumRx, Inc. UnitedHealth Group, Incorporated is a publicly traded corporation.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> Yes. UnitedHealth Group, Incorporated is the ultimate parent of OptumRx, Inc. UnitedHealth Group, Incorporated is a publicly traded corporation.

---

CERTIFICATE OF SERVICE

I certify that on _____ October 27, 2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Boone _____
Alston & Bird LLP _____
_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

## <u>TABLE OF CONTENTS</u>

PETITION ................................................................................................ 1

INTRODUCTION ................................................................................... 1

ISSUE PRESENTED ............................................................................... 6

STATEMENT .......................................................................................... 7

STANDARD OF REVIEW ................................................................... 18

REASONS THE WRIT SHOULD ISSUE ........................................... 19

I.     THE DISTRICT COURT ABUSED ITS DISCRETION BY INVOKING THE JUDICIAL-DELIBERATION PRIVILEGE TO FORECLOSE CONSIDERATION OF SPECIAL MASTER COHEN'S EMAIL. ................................. 19

     A.     The PBMs seek Special Master Cohen's disqualification based on his outward expression, not his "private thoughts." ................................. 20

     B.     Special Master Cohen's email is not protected by any privilege .................................................................. 22

II.     THE DISTRICT COURT ABUSED ITS DISCRETION IN RULING THAT NO REASONABLE OBSERVER WOULD QUESTION SPECIAL MASTER COHEN'S IMPARTIALITY. .................................................... 27

     A.     Special Master Cohen's email would lead a reasonable observer to question his impartiality. ............. 27

     B.     Special Master Cohen's affidavits do not erase the appearance of bias. ......................................................... 31

     C.     The District Court abused its discretion in denying the PBMs' recusal motion. ................................. 34

CONCLUSION ...................................................................................... 35

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Crawford v. Crestar Foods*,
  210 F.3d 371 (Table), No. 98-3144, 2000 WL 377349
  6th Cir. Apr. 6, 2000) ..........................................................................................24

*Di Lapi v. City of New York*,
  No. 06-CV-3101 (RJD) (JMA), 2012 WL 37576 (E.D.N.Y. Jan. 6, 2012) .......25

*Frederick Cnty., Va. v. Mallinckrodt PLC, et al.*,
  No. 1:20-op-45233-DAP (N.D. Ohio), Dkt. 1-2 ..............................................29

*Guardian Pipeline, LLC v. 950.80 Acres of Land*,
  525 F.3d 554 (7th Cir. 2008) ............................................................................18

*In re Aetna Cas. & Sur. Co.*,
  919 F.2d 1136 (6th Cir. 1990) (en banc) ..............................................1, 18, 33

*In re Boston's Children First*,
  244 F.3d 164, 166 (1st Cir. 2001) .....................................................................28

*In re Kempthorne*,
  449 F.3d 1265 (D.C. Cir. 2006) ...................................................................1, 19

*In re Nat'l Prescription Opiate Litig.*,
  No. 19-3935, 2019 WL 7482137 (6th Cir. Oct. 10, 2019) ................................31

*In re United Shore Fin. Servs., LLC*,
  No. 17-2290, 2018 WL 2283893 (6th Cir. Jan. 3, 2018) ..................................26

*Lawrence v. Suffolk Cty.*,
  No. 19-CV-2887-FB-SJB, 2022 WL 855380 (E.D.N.Y. Mar. 23, 2022) ..........24

*Ligon v. City of New York*,
  736 F.3d 118, 124-25 (2d Cir. 2013) (per curiam) ...........................................28

*Liljeberg v. Health Servs. Acquisition Corp.*,
  486 U.S. 847 (1988) ....................................................................6, 21, 22, 32

*Liteky v. United States*,
    510 U.S. 540 (1994)........................................................................21

*New Phx. Sunrise Corp. & Subsidiaries v. Comm'r*,
    408 F. App'x 908 (6th Cir. 2010) ...................................................26

*Pepsico, Inc. v. McMillen*,
    764 F.2d 458 (7th Cir. 1985)..........................................................20

*Roberts v. Bailar*,
    625 F.2d 125 (6th Cir. 1980)...................................................18, 21

*Smith v. ABN AMRO Mortg. Grp.*,
    434 F. App'x 454 (6th Cir. 2011)....................................................30

*United States v. Antar*,
    53 F.3d 568 (3d Cir. 1995).............................................................35

*United States v. Liggins*,
    76 F.4th 500 (6th Cir. 2023)....................................................passim

*United States v. Patej*,
    95 F. App'x 750 (6th Cir. 2004)....................................................24

*Williams v. Pennsylvania*,
    579 U.S. 1 (2016).........................................................................32

**RULES**

Fed. R. App. P. 21(a) ...................................................................1, 4

Fed. R. Civ. P. 53(a)(2)...............................................................1, 18

**STATUTES**

28 U.S.C. § 455 ......................................................................passim

28 U.S.C. § 1651............................................................................1

**OTHER AUTHORITIES**

"*Opioid Special Master Facing Disqualification Motion After Hitting 'Reply All' on Email*," Law.com (Sept. 20, 2023), https://www.law.com/2023/09/20/opioid-special-master-facing-disqualification-motion-after-hitting-reply-all-on-email/.................................15

Press Release, "*FTC Launches Inquiry Into Prescription Drug Middlemen Industry*" (June 7, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-launches-inquiry-prescription-drug-middlemen-industry..........................................................................................................33

Statement of Snezana Mahon, United States Senate Committee on Health, Education, Labor and Pensions (Feb. 27, 2018), https://www.help.senate.gov/imo/media/doc/Mahon.pdf .................................33

## PETITION

OptumRx, Inc. and Express Scripts, Inc. petition this Court under 28 U.S.C. § 1651 and Federal Rule of Appellate Procedure 21(a) for a writ of mandamus ordering the District Court to disqualify Special Master David R. Cohen from all pending and future proceedings in *In re: National Prescription Opiate Litigation*, No. 17-MD-2804 (N.D. Ohio), involving OptumRx or Express Scripts or their parents or affiliates.

## INTRODUCTION

"Any justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). The rule is mandatory: "[R]ecusal is required when a reasonable person would harbor doubts about the judge's impartiality." *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1143 (6th Cir. 1990) (en banc). Section 455 applies equally to special masters. Fed. R. Civ. P. 53(a)(2); *see, e.g.*, *In re Kempthorne*, 449 F.3d 1265, 1270 (D.C. Cir. 2006) (granting mandamus petition to disqualify special master under 28 U.S.C. § 455(a)).

This Court has recognized that disqualification is required when a judicial officer expresses "prejudgment" of a merits issue or unwarranted disfavor toward one of the parties. *United States v. Liggins*, 76 F.4th 500, 507 (6th Cir. 2023).

Regrettably, Special Master Cohen has expressed both in the underlying proceedings, which are part of the nationwide multi-district opioid litigation.

On August 28, 2023, Petitioners—two pharmacy benefit managers or PBMs—emailed a status report to Special Master Cohen and the District Court ahead of an August 30 hearing. In their report, the PBMs discussed (among other things) the process for selecting bellwethers and the plaintiffs' request to amend complaints to add new claims against the PBMs' affiliated mail-order pharmacies. Minutes later, Special Master Cohen inadvertently replied all to the email chain, which included Petitioners' counsel, plaintiffs' counsel, and the District Court's law clerk.

In his email, Special Master Cohen opined that the "PBMs' goal is to complicate and delay" the proceedings and stated that allowing claims against the PBMs' affiliated mail-order pharmacies "will show how much PBMs knew **(and they knew a lot)**." R.5196-2, PageID #623472 (emphasis added). Special Master Cohen also warned that the PBMs may seek "to buy off" selected bellwethers to avoid "global resolution." *Id.*

Special Master Cohen's message was both revealing and alarming. No party has submitted briefing about what the PBMs or their affiliated mail-order pharmacies purportedly "knew." On the contrary, there has been *no discovery* in the MDL (or any opioid case) about the mail-order pharmacies. The email suggests that

2

Special Master Cohen has made up his mind on a disputed issue in the case—before the evidence has come in or Petitioners have had an opportunity to be heard. A reasonable observer would certainly question his impartiality.

Special Master Cohen's unsupported statements that the "PBMs' goal is to complicate and delay" and that the PBMs may seek "to buy off" bellwether plaintiffs confirm the appearance of bias. The PBMs have sought to streamline (not "complicate and delay") the MDL proceedings and have not settled any opioid cases (let alone "bought off" anyone). It is difficult to see how any litigant in Petitioners' position—or any reasonable person—could read Special Master Cohen's message and not harbor serious doubts about his impartiality.

Petitioners immediately voiced their opposition to Special Master Cohen's continued involvement in the 84 PBM-related cases in the MDL.[1] But Special Master Cohen declined to voluntarily recuse himself and instead served an affidavit seeking to explain his email. After Petitioners moved the District Court to disqualify Special Master Cohen under § 455(a), Special Master Cohen responded to a reporter's

---

[1] Petitioners did not object and have never objected to Special Master Cohen's continuing involvement in the broader MDL, which includes thousands of cases against other defendants.

questions about the issue and publicly filed a second affidavit attempting to justify his words.

The District Court denied Petitioners' § 455(a) motion, offering two bases for the denial. *See* R.5217 ("Order").[2] Both were an abuse of discretion. Mandamus relief is warranted to protect the integrity of the proceedings.

*First*, the District Court abused its discretion by holding that Special Master Cohen's email was subject to the judicial-deliberations privilege and could not be considered when deciding whether a reasonable observer would question Special Master Cohen's impartiality. Order at 3. Special Master Cohen never asserted any privilege over the email, and the District Court could not assert privilege on his behalf. And even if the email could have been considered privileged at some point, Special Master Cohen waived the privilege when he voluntarily sought to explain his conduct by serving and publicly filing affidavits about the email and discussing the matter with the press.

Regardless, the judicial-deliberations privilege cannot erase the appearance of partiality created by Special Master Cohen's email—even if the disclosure was inadvertent. The District Court's contrary rule is untenable. Under the District

---

[2] In accordance with Federal Rule of Appellate Procedure 21(a)(2)(C), Petitioners have included a copy of the Order as an attachment to this Petition.

Court's rule, a judicial officer who reveals an improper bias against a litigant could avoid disqualification so long as he claims that he intended for the message to remain private. That is not and should not be the law.

*Second*, the District Court abused its discretion by concluding that a reasonable observer reading Special Master Cohen's email would not question his impartiality. *Id.* at 10. The District Court reached that conclusion only by rewriting Special Master Cohen's email to erase the appearance of partiality. For instance, the District Court stated that "[n]o reasonable observer could possibly construe Special Master Cohen's language" regarding what the PBMs "knew" as addressing the PBMs' exposure to liability. *Id.* at 7. But the District Court never explained what other kind of knowledge the Special Master—who was commenting on legal claims against the PBMs—could have been referring to. Any reasonable observer would conclude that the Special Master had prejudged an issue relevant to the PBMs' potential liability.

\* \* \*

Petitioners do not raise these issues lightly. Recusal and disqualification are serious matters. But they are serious matters precisely because the proper functioning of our judicial system depends on public trust in judicial officers' neutrality. "The very purpose of § 455(a) is to promote confidence in the judiciary

5

by avoiding even the appearance of impropriety whenever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988). That is why § 455(a) does not require proof of actual bias or partiality. Instead, the mere *appearance* of partiality does such grave damage to the public trust that disqualification is required so long as a reasonable person would question the judicial officer's impartiality. *Id.* at 859–60.

A reasonable observer who read Special Master Cohen's email would question his impartiality vis-à-vis the PBMs, so the District Court abused its discretion in denying the PBMs' motion. This Court should correct that error and order the District Court to disqualify Special Master Cohen from all pending and future MDL proceedings involving OptumRx or Express Scripts (or their parents or affiliates).

## ISSUE PRESENTED

Whether this Court should issue a writ of mandamus ordering the District Court to disqualify Special Master Cohen under 28 U.S.C. § 455(a) because he sent an email to the parties that would lead a reasonable observer to question his impartiality.

6

## STATEMENT

1.      OptumRx and Express Scripts are PBMs. PBMs are different from the manufacturers, distributors, and retail pharmacies that have been defendants in the bulk of opioid cases across the country and in the MDL. Unlike manufacturers, distributors, and retail pharmacies, PBMs are not part of the closed system of distribution that the U.S. Drug Enforcement Administration established to regulate prescription opioids and other controlled substances. PBMs do not manufacture, market, or prescribe opioids. Instead, PBMs contract with health plans and third-party payors to process claims for prescription drugs consistent with their clients' chosen plan designs.

The District Court previously recognized the PBMs' limited role in the market:

> The Court deeply appreciates the actions taken by the PBM Defendants to offer these limitations to their clients and appreciates Plaintiffs' willingness to discuss the issues with the Court. The Court understands that the PBM Defendants do not manufacture, market, or prescribe opioid medications. It also understands that plan sponsors decide whether to adopt the programs that the PBM Defendants offer. The Court encourages plan sponsors—as part of their own efforts to combat opioid abuse—to consider and adopt for their members, where appropriate, the opioid programs that the PBM Defendants offer.

R.1848, PageID #57491.

There are thousands of cases in the MDL, but only 84 name OptumRx or Express Scripts as a defendant. *See* R.5196-13. No discovery has been taken of OptumRx or Express Scripts in any MDL case. And although OptumRx and Express Scripts each has an affiliated mail-order pharmacy, there has been no discovery in *any* opioid litigation directed to those mail-order pharmacies—let alone briefing about how claims against those mail-order pharmacies support the contention that Petitioners "knew a lot." In fact, the only opioid case against OptumRx and Express Scripts to proceed through discovery is a state court case outside the MDL (*Jefferson County v. Dannie E. Williams, M.D., et al.*, No. 20JE-CC00029 (23rd Judicial Circuit, Missouri)), and in that case, the County stipulated that it was not asserting claims against either OptumRx's or Express Scripts' affiliated mail-order pharmacies. R.5196-8; R.5196-9.

2.     On January 11, 2018—before OptumRx or Express Scripts were parties to any opioid litigation—the District Court appointed David R. Cohen as a Special Master for the MDL. R.69. Neither OptumRx nor Express Scripts participated in the appointment process.

In 2018 and 2019, a handful of plaintiffs filed or amended complaints against OptumRx and Express Scripts. Despite those early claims and amendments against PBMs and intervening years of litigation against other defendants, the MDL

Plaintiffs' Executive Committee (PEC) did not seek to actively litigate claims against OptumRx or Express Scripts until recently.

That changed when, on November 9, 2022, Special Master Cohen informed the parties that the District Court would set a conference to discuss "the current state of opioid-related litigation and settlement discussions" and "suggestions regarding the setting of federal bellwether trials involving PBMs." R.5196-12, PageID #623583. Over the following months, the District Court held status conferences with the parties to discuss PBM bellwether selection and mediation. The District Court initially explained that there would be two PBM bellwethers, with each side choosing two potential cases and then striking one proposed by the other side. *See* R.5196-10, PageID #623570; *see also* R.5196-5, PageID #623507 (16:7–13). The PEC refused to proceed as directed; instead, the PEC reached out to Special Master Cohen and objected to the process. *See* R.5196-10, PageID #623570–623571 & 623574. At the next conference, the District Court postponed bellwether selection.

Since then, there have been three additional conferences focused on PBM mediation and bellwether selection. As recently as August 8, 2023, the District Court explained that there would be two PBM bellwethers.

3.    Before the August 30 conference, the District Court asked counsel for the PBMs and for the PEC to submit status reports to the District Court's law clerk

9

and Special Master Cohen by noon on August 28. R.5196-11. The conference would focus on bellwether selection and related issues.

On August 28, each side submitted its report to Special Master Cohen and the District Court's clerk by email. The PBMs set out their positions on certain issues: (1) the PBMs would oppose amendments adding claims against the PBMs in cases where the PBMs were not already named, (2) the PBMs understood there would be two bellwethers, (3) if Plaintiffs tried to add new claims against the PBMs (including mail-order-pharmacy-related claims), the PBMs may need to add other defendants to any bellwether selected, and (4) any motions to dismiss should be litigated in the chosen bellwethers. R.5196-6, PageID #623542–623544.

Shortly after the PBMs submitted their report, Special Master Cohen "replied all." His response, which was sent at 12:50 p.m., is reproduced below:

Notes on D's position:

I disagree that there should be briefing on whether amendment is allowed; just allow it.  Let them mandamus you, CTA6 has said that is allowed.

I have some sympathy for PBMs' argument that a briefing track should be in a different case, separate from the litigating cases.  But perhaps there are some truly overreaching threshold issues we should tee up more quickly.  Need to see what Ps are thinking.

I think we need 4 bellwethers, not 2 -- it is too easy for Ds to buy off 2 Ps, avoiding any global resolution.

The Pharmacies also sought to add third parties, like PBMs do here.  PBMs' goal is to complicate and delay (including a request to do nothing and set a status 4 weeks hence).  I say let Ps add claims against PBMs as mail-order pharmacies.  Two reasons: (1) Ps are the master of their own complaint, and (2) claims against PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot).  And then let PBMs respond as they wish.  If that complicates the case, so be it.  We are used to that.

-d

R.5196-2, PageID #623472. The text of the email suggests that its content was meant for the District Court. The email addresses the District Court ("Let them mandamus *you*") and refers jointly to Special Master Cohen and the District Court ("If that complicates the case, so be it. *We* are used to that."). *Id.* (emphases added). The email is also signed ("-d"). *Id.*

Within the hour, Special Master Cohen responded again: "Dear Counsel: This email was meant to be to my own files, and not to counsel. Please discard and disregard. I apologize. -d." R.5196-3, PageID #623475.

In an email response the next day, OptumRx and Express Scripts explained that they were "not aware of any order or rule requiring us to discard or disregard [the] 12:50 p.m. email" and that "[g]iven the content of that email, we cannot agree to [the] request to discard or disregard it." R.5214-1, PageID #623886. The PBMs went on:

> Your 12:50 p.m. email raises serious questions about your impartiality vis-à-vis OptumRx and Express Scripts in the MDL proceedings. As one example, you asserted in your email that "claims against the PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot)." There is no evidence in the record before you to support that assertion; indeed, there has been no discovery in the MDL (or any opioid case) relating to the PBMs' mail-order pharmacies. Nor have OptumRx or Express Scripts had an opportunity to brief or be heard on those issues, including merits issues about what they allegedly "knew" or did not know. Yet your email demonstrates that you have already prejudged the merits ("they knew a lot"). That is just one example; other statements in your email also raise serious concerns about your impartiality and the integrity of the process.
>
> We are evaluating the appropriate next steps to take and reserve all rights. We also plan to raise these issues at tomorrow's status conference with Judge Polster.

*Id.*

Special Master Cohen responded: "Thank you for letting me know. I have informed Judge Polster you may raise this issue at tomorrow's conference." *Id.* at PageID #623885. He did not invoke any privilege.

12

The PBMs raised their concerns with the District Court during the August 30 status conference. R.5196-5, PageID #623528–623536 (37:15–45:3). OptumRx's counsel explained that Special Master Cohen's email "raises serious questions about his impartiality vis-à-vis the PBMs" and "showed that [he] has already prejudged the merits" such that "Special Master Cohen should recuse from PBM-related cases and proceedings." *Id.* at PageID #623528–623529 (37:20–38:15); *see also id.* at PageID #623532–623533 (41:24–42:3) ("I think it pretty well shows that he has picked a side and he should recuse . . . ."). Express Scripts' counsel agreed that the email shows "that Special Master Cohen has prejudged some of these issues, at least with respect to Express Scripts and the PBMs. So we do believe recusal would be appropriate." *Id.* at PageID #623530–623531 (39:25–40:13).

The District Court initially disagreed: "Well, that isn't going to happen. All right?" *Id.* at PageID #623529 (38:16–17); *see also id.* at PageID #623530 (39:3) ("He hasn't prejudged anything."); *id.* (39:18) ("So he's not recusing himself."). But the District Court then put the onus on Special Master Cohen: "Let's put it this way. It's up to Special Master Cohen whether he recuses himself. All right? It's not up to me." *Id.* at PageID #623532 (41:17–19); *see also id.* at PageID #623535 (44:21–24) ("Well, again, I am – it's up to Special Master Cohen whether or not he recuses himself. I'm certainly not going to request or suggest that he do it. I'm saying so on

13

the record . . . .”). Then, in an order the next day, the District Court added the following: “Finally, the PBM Defendants suggested they might move for recusal of Special Master Cohen, and asked the Court to preclude him from working on PBM cases. The Court denies this request.” R.5166, PageID #621872.

4.      Because the District Court indicated that the recusal question was for Special Master Cohen in the first instance, OptumRx and Express Scripts wrote to Special Master Cohen the next day, asking him to voluntarily recuse himself from participating in “any MDL proceedings related to OptumRx and Express Scripts, as well as any proceedings related to any of their parent or affiliate companies.” R.5214-1, PageID #623884–623885. OptumRx and Express Scripts also “reserve[d] all rights, including the right to move for [Special Master Cohen’s] disqualification if [he did] not voluntarily recuse.” *Id.*

On September 7, Special Master Cohen responded by email “declin[ing]” the PBMs’ request that he recuse himself. R.5196-4, PageID #623479. He attached an affidavit purporting to explain that the PBMs “misapprehended [his] email.” *Id.* at PageID #623490. In that first affidavit, Special Master Cohen claimed that his August 28 email was a “note [he] wrote to [him]self in . . . private” but inadvertently forwarded to counsel and the District Court’s clerk. *Id.* at PageID #623487–623488 (First Affidavit ¶¶ 7, 11). Special Master Cohen also declared that his comment

14

about what OptumRx or Express Scripts "knew" was based on his own independent research into two sources that plaintiffs had cited in a status report filed nine months earlier: (1) a 2022 FTC press release about PBMs, and (2) a statement by an Express Scripts employee to the Senate regarding Express Scripts' efforts to address opioid addiction. *Id.* at PageID #623488 (First Affidavit ¶ 13). Neither source discusses what the PBMs or their affiliated mail-order pharmacies "knew."

5.    On September 19, the PBMs moved the District Court to disqualify Special Master Cohen. R.5196.

The next day, in response to a media inquiry, Special Master Cohen referred the public to his affidavit for an explanation of his email while also quipping, "I think the 'left arrow' for reply all and the 'right arrow' for forward are too close to each other on Outlook!" R.5214-2, PageID #623897   ("*Opioid Special Master Facing Disqualification Motion After Hitting 'Reply All' on Email*," Law.com (Sept. 20, 2023),   https://www.law.com/2023/09/20/opioid-special-master-facing-disqualification-motion-after-hitting-reply-all-on-email/).

One day later, Special Master Cohen filed a second affidavit. *See* R.5198. In an email to the parties, Special Master Cohen characterized his second affidavit as "99.99% identical" to his first affidavit. R.5214-1, PageID #623882. That characterization was overstated. In the second affidavit, Special Master Cohen added

language in multiple places claiming that his inadvertent email reflected his private "deliberative process." R.5198, PageID #623595, 623598 (¶¶ 10, 16). Even then, Special Master Cohen did not invoke any privilege; instead, he offered even more details about his "deliberative process," including the "point of [the] note[s]" he had written and his "earlier research" that purportedly formed the basis for his judgments. *Id.* at PageID #623596–623597 (¶¶ 12, 14, 15).

On September 27, the PEC filed an opposition to the PBMs' motion. R.5207. Citing Special Master Cohen's second affidavit and the newly added reference to the "deliberative process," the PEC attempted to invoke the privilege on Special Master Cohen's behalf. *Id.* at PageID #623816–623820. Ignoring the *appearance* of impartiality standard, the PEC defended Special Master Cohen by arguing that he does not harbor *actual* bias against OptumRx or Express Scripts. *Id.* at PageID #623812.

The PBMs filed a reply on September 23, explaining that the PEC failed to apply the correct legal standard and that the PEC has no standing to invoke the deliberative-process privilege on Special Master Cohen's behalf—even more so because he never asserted any privilege and in fact waived any claim of privilege. R.5214.

6.     On October 10, the District Court denied the PBMs' motion. It first held that Special Master Cohen's email was privileged and could not be considered when assessing whether a reasonable observer would question Special Master Cohen's impartiality. Order at 6. In reaching that conclusion, the District Court ignored that Special Master Cohen never invoked any privilege (*id.* at 5 ("No magic words were necessary . . . .")); the District Court also blamed the PBMs for Special Master Cohen's waiver of the deliberative-process privilege—even though Special Master Cohen served (and publicly filed) affidavits defending his email. *Id.* at 6.

The District Court also held that a reasonable observer would not question Special Master Cohen's impartiality because his "abbreviated notes" lacked "full context" and that, when read in "context" (that is, by inserting things the email *doesn't* say), "no reasonable observer could possibly construe Special Master Cohen's language as demonstrating a disqualifying bias against the PBMs." *Id.* at 6–7. The District Court also justified Special Master Cohen's apparent attempt to coerce a "global resolution" by pointing to the "huge premium" that other defendants in the MDL have had to pay to settle. *Id.* at 9. And even though no PBM bellwether had been selected, the District Court claimed that no one other than Special Master Cohen could serve as a special master in the PBM cases. *Id.* at 10. The District Court concluded by ordering the PBMs "to discard and disregard the Special Master's

17

email" even though no one moved for that relief, there is no basis for it in the record, and the District Court has not sealed the email or Special Master Cohen's affidavits on the docket. *Id.* at 11.

## STANDARD OF REVIEW

This Court "can and should consider a petition for mandamus following a district court's denial of a motion to disqualify based on . . . appearance of partiality under 28 U.S.C. § 455." *In re Aetna*, 919 F.2d at 1143. This Court "ordinarily review[s] recusal decisions for abuse of discretion." *Id.* (internal quotation marks omitted).

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "[A] judge's introspective estimate of his own ability impartially to hear a case" is not the test; rather, it is an "objective" standard: "It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge." *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980). "Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial." *Id.*

Section 455's requirements apply to special masters. Fed. R. Civ. P. 53(a)(2); *see Guardian Pipeline, LLC v. 950.80 Acres of Land*, 525 F.3d 554, 556 (7th Cir.

2008) ("[T]he Supreme Court amended Fed R. Civ. P. 53(a)(2) in 2003 to subject special masters to the requirements of § 455."); *In re Kempthorne*, 449 F.3d at 1270 (granting mandamus petition to disqualify special master under § 455(a)).

## REASONS THE WRIT SHOULD ISSUE

This Court should order the District Court to disqualify Special Master Cohen from participating in any proceedings related to OptumRx and Express Scripts or their parents or affiliates because a reasonable observer viewing Special Master Cohen's email would question his impartiality.

## I. THE DISTRICT COURT ABUSED ITS DISCRETION BY INVOKING THE JUDICIAL-DELIBERATION PRIVILEGE TO FORECLOSE CONSIDERATION OF SPECIAL MASTER COHEN'S EMAIL.

The District Court held that Special Master Cohen's email is "an improper basis upon which to even raise an argument about perceived partiality." Order at 3. That was manifest error—in at least two ways. First, the District Court incorrectly found that the PBMs sought disqualification based on Special Master Cohen's "private thoughts" rather than his "outward conduct." *Id.* Second, the District Court abused its discretion in ruling that Special Master Cohen's email is privileged and must be "discard[ed] and disregard[ed]." *Id.* at 4, 11.

19

### A.  The PBMs seek Special Master Cohen's disqualification based on his outward expression, not his "private thoughts."

Contrary to the District Court's finding, the PBMs do not seek to disqualify Special Master Cohen based on his "private thoughts." They seek disqualification based on the appearance of partiality created by his disclosed statements. Whether Special Master Cohen meant to send his email is of no moment. Once the parties learned of his apparent prejudgment and partiality, the damage was done. Just as a judge who inadvertently blurted out a statement revealing bias or prejudgment could not avoid disqualification under § 455(a), neither can a special master who inadvertently transmits an email revealing a basis to reasonably question his impartiality.

Section 455(a) requires disqualification whenever a judicial officer's "impartiality might reasonably be questioned." As a result, the question is what a reasonable observer would think—not what a judge intends. *See Liggins*, 76 F.4th at 507 ("regardless of the . . . judge's intended meaning, we must consider the interpretation that a reasonable observer . . . could have made"). Accordingly, courts regularly require disqualification even when the judge's conduct was unintentional. *See, e.g.*, *Pepsico, Inc. v. McMillen*, 764 F.2d 458, 459–61 (7th Cir. 1985) (requiring recusal when a judge through a headhunter engaged in "preliminary, tentative, indirect, *unintentional*, and ultimately unsuccessful" job negotiations with law firms

20

representing the parties, even though the judge instructed the headhunter not to contact those firms) (emphasis added); *Liljeberg*, 486 U.S. at 867 (requiring recusal even though judge was unaware of his "fiduciary interest in the litigation"). That is because § 455(a)'s animating concern is whether "[t]he public cannot be confident that a case . . . will be decided in accordance with the highest traditions of the judiciary." *Id.*; *see Liteky v. United States*, 510 U.S. 540, 548 (1994) ("[W]hat matters is not the reality of bias or prejudice but its appearance.").

In keeping with that concern, § 455(a) requires the District Court to consider what a reasonable observer "knowing all the circumstances" would think. *Liljeberg*, 486 U.S. at 865; *see Roberts*, 625 F.2d at 129 (Section 455(a) "asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge"). There is no support for the District Court's decision to artificially limit the scope of "all the circumstances" to exclude inadvertent public disclosures. *See* Order at 3–4. Doing so would add a limitation to § 455(a) that does not appear in the statute.

It would also lead to absurd results. Consider, for instance, a judge who makes an offensive remark about one party, intending the comment to be heard only by a law clerk. If the parties overhear it, there is no basis in § 455(a) or elsewhere for a judge to order the parties to "discard or disregard" it after the fact. In *Liggins*, this

21

Court ordered the disqualification of a judge who remarked at a hearing that the defendant "looks like a criminal." 76 F.4th at 506–07. It is inconceivable that the Court would have reached a different conclusion if the district judge had made the same statement in purported notes to himself that were inadvertently emailed to the defendant's attorneys.

Instead of disqualifying Special Master Cohen, the District Court chastised Petitioners for even raising their concerns, claiming that their motion was based on the Special Master's "private mental impressions to which [Petitioners] ought not have had access and should have destroyed at Special Master Cohen's request." Order at 4. That is wrong. Petitioners did nothing to probe his private thoughts, and § 455(a) does not require them to ignore a bias (actual or apparent) revealed to them. They should not be forced to participate in proceedings before a Special Master whose disclosed thoughts—even if disclosed inadvertently—would lead any reasonable person to question his impartiality. *See, e.g.*, *Liljeberg*, 486 U.S. at 865 (disqualification rules exist to "promote confidence in the judiciary").

### B.  Special Master Cohen's email is not protected by any privilege.

The District Court also abused its discretion by finding that Special Master Cohen's email is privileged. The District Court did not cite any case holding that the judicial-deliberations privilege bars a court from considering a statement that

establishes an appearance of partiality.  We are not aware of one. The judicial-deliberations privilege exists to preserve the sanctity of legitimate judicial consideration, not to shield apparent judicial bias after it is revealed. In any event, the privilege is inapplicable here because Special Master Cohen never asserted any privilege and waived any privilege through his public efforts to justify the statements in his email.

Special Master Cohen has never asserted any privilege over his email—even to this day. Special Master Cohen initially asked the PBMs to "discard and disregard" his email without providing any legal authority for them to do so. R.5196-3, PageID #623475. Although he noted that the "email was meant to be to my own files, and not to counsel," he did not claim any privilege over it. *Id.* When the PBMs responded that they could not disregard what they had already seen and notified Special Master Cohen of their intent to raise the issue with the District Court, Special Master Cohen responded, "Thank you for letting me know. I have informed Judge Polster you may raise this issue at tomorrow's conference." R.5214-1, PageID #623885. Special Master Cohen did not later claim any privilege over the email either—not at the District Court's hearing on August 30 (*see* R.5196-5) or in his affidavits discussing the email's contents. R.5196-4, PageID #623486; R. 5198.

To justify a claim of privilege, the PEC (in its opposition brief) and the District Court (in its order) latched onto the phrase "private deliberative process" that Special Master Cohen added in his second affidavit filed on the public docket weeks after the PBMs raised their concerns. But again, Special Master Cohen did not claim privilege. The PEC had no standing to invoke the privilege for Special Master Cohen. *See, e.g.*, *United States v. Patej*, 95 F. App'x 750, 752 (6th Cir. 2004) (finding that a defendant could not assert a third-party's privilege); *Lawrence v. Suffolk Cty.*, No. 19-CV-2887-FB-SJB, 2022 WL 855380, at *10 (E.D.N.Y. Mar. 23, 2022) (rejecting attempt to raise a third-party's deliberative-process privilege). Neither did the District Court, which improperly stepped out of its adjudicative role and acted instead as an advocate for Special Master Cohen by invoking the privilege on his behalf. *See Crawford v. Crestar Foods*, 210 F.3d 371 (Table), No. 98-3144, 2000 WL 377349, at *2 (6th Cir. Apr. 6, 2000).[3]

---

[3] The District Court also analogized Special Master Cohen's request that the PBMs "discard and disregard" his email to a provision in the MDL Case Management Order. Order at 5. That provision—governing the clawback of inadvertently produced privileged materials in discovery—does not apply to a judge's communication to the parties. R.441, PageID #5823–5826. Even still, the Case Management Order gives a party "seven (7) days to assert privilege" upon discovery of the inadvertent disclosure. *Id.* at #5823. Special Master Cohen has never asserted any privilege.

Instead of invoking privilege, Special Master Cohen did the opposite. On September 7, Special Master Cohen served an affidavit on the parties discussing the email's content, asserting that his comments were based on prior research and purporting to explain the email's purpose. R.5196-4, PageID #623486. Special Master Cohen went so far as to direct press inquiries to that affidavit, commenting, "I think the 'left arrow' for reply all and the 'right arrow' for forward are too close to each other on Outlook!" R.5214-2. The next day, he filed a *second* affidavit on the public docket in response to the PBMs' motion. R.5198.

The deliberative-process privilege (like other privileges) is waived when a judicial officer "repeatedly and extensively disclos[es] details about his role and thought process." *Di Lapi v. City of New York*, No. 06-CV-3101 (RJD) (JMA), 2012 WL 37576, at *5 (E.D.N.Y. Jan. 6, 2012). Indeed, "while 'the overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties,' there can be little question that the issue is moot once the proverbial horse is out of the barn." *Id.* at *7 (citation omitted).

The District Court excused Special Master Cohen's waiver by claiming that the PBMs are to blame for any disclosure. *See* Order at 6. But Special Master Cohen never asserted any privilege, so the PBMs had no reason not to "discuss the emails in a conference on the record" (a conference that Special Master Cohen attended and even told the District Court would cover the issue) or to excerpt his email in the initial motion. *See id.*

Ultimately, the District Court improperly used the privilege as both a shield and a sword—ruling that Special Master Cohen's email cannot be considered while simultaneously using Special Master Cohen's affidavit (which discusses both the email and his purported basis for the email) as a basis for denying the motion to disqualify. That was manifest error. *See New Phx. Sunrise Corp. & Subsidiaries v. Comm'r*, 408 F. App'x 908, 919 (6th Cir. 2010) (petitioner waived privilege by putting the subject matter of the allegedly privileged document at issue: "privilege cannot at once be used as a shield and a sword"); *In re United Shore Fin. Servs., LLC*, No. 17-2290, 2018 WL 2283893, at *2 (6th Cir. Jan. 3, 2018) (privilege is waived when a party attempts to "prove a defense by disclosing or describing the [privileged] communications" because "[l]itigants cannot hide behind the privilege if they are relying on privileged communications to make their case.").

## II.  THE DISTRICT COURT ABUSED ITS DISCRETION IN RULING THAT NO REASONABLE OBSERVER WOULD QUESTION SPECIAL MASTER COHEN'S IMPARTIALITY.

A reasonable observer would question Special Master Cohen's impartiality as to the PBMs based on his August 28 email. *See* R.5196-2. Even if Special Master Cohen did not intend his views to become public, they were shared with the parties and the District Court's law clerk and now cast a shadow over his ability to serve as a neutral arbiter in cases involving the PBMs. In ruling otherwise, the District Court abused its discretion.

### A.  Special Master Cohen's email would lead a reasonable observer to question his impartiality.

A reasonable observer would question Special Master Cohen's impartiality based on his statement that "claims against the PBMs as mail-order pharmacies will show how much PBMs knew (**and they knew a lot**)." R.5196-2, PageID #623472 (emphasis added). There is no evidence in the record to support that assertion. Special Master Cohen reached that conclusion even though there has been no mail-order pharmacy discovery in any opioid case and no briefing in the MDL about what the PBMs and their mail-order pharmacies knew or didn't know. In fact, in the only opioid case against OptumRx and Express Scripts that has proceeded to discovery— a case that is in Missouri state court rather than the MDL—the plaintiff county has

27

stipulated that it is not pursuing liability related to the PBMs' affiliated mail-order pharmacies. *See* R.5196-8; R.5196-9.

A reasonable observer would read Special Master Cohen's email to "indicate a prejudgment of" a merits issue, which is all that is required for disqualification under § 455. *Liggins*, 76 F.4th at 507. The statute mandates disqualification when "a reasonable observer could have interpreted [a judge's] remark to indicate a prejudgment of [a party's] guilt." *Id.*

Numerous cases illustrate the rule. For example, in *Ligon v. City of New York*, a district judge suggested that a party could file a new lawsuit asserting a disputed claim, remarked that the new suit would be "timely," and advised that she "would accept it as a related case." 736 F.3d 118, 124–25 (2d Cir. 2013) (per curiam), *vacated in part on other grounds*, 743 F.3d 362 (2d Cir. 2014). The Second Circuit held that disqualification was required because a "reasonable observer could interpret [the judge] as intimating her views on the merits of a case that had yet to be filed." *Id.* at 124. The *Ligon* court also recognized that disqualification was required because the judge "suggested that . . . a claim could be viable and would likely entitle the plaintiffs to documents they sought." *Id.* at 126.

Likewise, in *In re Boston's Children First*, disqualification was required because the district judge's comments "arguably suggested that [certain] claims . . .

were less than meritorious." 244 F.3d 164, 166 (1st Cir. 2001). That was enough to warrant disqualification even though the First Circuit did not find any "actual bias or prejudice on the part of [the judge]." *Id.* at 171.

Special Master Cohen's email is cut from the same cloth. His email revealed that he has already concluded that the PBMs' "knew a lot" and that allowing new claims against their affiliated mail-order pharmacies would "show how much [they] knew." R.5196-2. His pointed statement—offered before any evidence has come in—parrots language from Plaintiffs' complaints, which are full of allegations about the PBMs' knowledge and how it purportedly makes them liable. To give just a few examples, Plaintiffs claim that the PBMs "*knew* and understood that through their self-dealing, more addictive opioids—brand and generic—would enter the marketplace and more addicts would be created," that the PBMs "*knowingly* and intentionally designed benefit plans that would maximize the number of opioids in the marketplace," and that the "PBMs' complicity in the overall fraudulent scheme is *knowing* and purposeful." *See, e.g.*, *Frederick Cnty., Va. v. Mallinckrodt PLC*, *et al.*, No. 1:20-op-45233-DAP (N.D. Ohio), Dkt. 1-2 ¶¶ 507, 550, 600 (emphases added). Special Master Cohen's statements indicate that he has already judged the PBMs' knowledge.

29

But his email did not stop with that statement. Special Master Cohen paired that prejudgment with other unfounded assertions about the PBMs, including that their goal is to "complicate and delay" (R.5196-2), even though there is no basis in the record for Special Master Cohen's judgment on that score. He also recommended that the District Court apply more pressure to OptumRx and Express Scripts to force a "global resolution" and to prevent the PBMs from "buy[ing] off" bellwether plaintiffs. *Id.*

This Court has admonished that "although judges should encourage and aid early settlement, . . . they should not attempt to coerce that settlement." *Smith v. ABN AMRO Mortg. Grp.*, 434 F. App'x 454, 462 (6th Cir. 2011) (alterations in original); *accord* Code of Conduct for United States Judges, Vol. 2, Pt. A, Canon 3A(4) (Commentary) ("A judge may encourage and seek to facilitate settlement but should not act in a manner that coerces any party into surrendering the right to have the controversy resolved by the courts."). And yet, structuring the litigation to coerce the PBMs to settle is precisely what Special Master Cohen recommended in his email.

In evaluating an earlier recusal motion directed to Judge Polster in the MDL (by different parties on different grounds), this Court declined to grant a writ of mandamus to disqualify Judge Polster about statements he made to the media

regarding settlement efforts because those statements "equally placed blame on all parties, readily acknowledged that settlement efforts might not work, . . . acknowledged that both sides had compelling arguments," and declined to "discuss the particulars of this case." *In re Nat'l Prescription Opiate Litig.*, No. 19-3935, 2019 WL 7482137, at *2 (6th Cir. Oct. 10, 2019).[4] Here, by contrast, Special Master Cohen's email prejudged the PBMs' knowledge, placed blame on the PBMs alone, and advocated for more pressure on the PBMs to avoid the chance that they "*buy off 2 P*[laintiff]*s.*" R.5196-2, PageID #623472 (emphasis added).

### B. Special Master Cohen's affidavits do not erase the appearance of bias.

Special Master Cohen's affidavits do not eliminate the appearance of bias. Nor do they shield him from § 455's mandatory requirements.

In his affidavits, Special Master Cohen offered reasons why he does not have any *actual* bias against the PBMs. R.5196-4, PageID #623486; R.5198. But

---

[4] This Court also explained that the timing of those parties' disqualification motion—coming more than a year after the District Court's public comments—did not "help them." *In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137, at *1–2. OptumRx and Express Scripts raised their concerns with Special Master Cohen's email within one day of receiving it and filed their motion within twelve days of Special Master Cohen's email declining to voluntarily recuse. R.5196. OptumRx and Express Scripts filed this mandamus petition within 17 days of Judge Polster's order denying their disqualification motion.

"regardless of the . . . judge's intended meaning, we must consider the interpretation that a reasonable observer . . . could have made, for we must guard against not only actual bias but also the appearance of bias, which 'demeans the reputation and integrity' of the court of which the district judge is a part." *Liggins*, 76 F.4th at 507. That is because § 455 has "constitutional dimensions": "The Due Process Clause 'may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, "justice must satisfy the appearance of justice."'" *Liljeberg*, 486 U.S. at 865 n.12 (citations omitted); *see also Williams v. Pennsylvania*, 579 U.S. 1, 15–16 (2016) ("An insistence on the appearance of neutrality is . . . an essential means of ensuring the reality of a fair adjudication."). Special Master Cohen's assertion that he does not harbor actual bias is beside the point; what matters is whether a reasonable observer would harbor doubts about his impartiality.

Special Master Cohen's assertion that his views about the PBMs' knowledge were based on earlier "research" also does not change the outcome under § 455(a). R.5196-4, PageID #623488–623489 (¶¶ 12–14); R.5198, PageID #623596 (¶¶ 12–13). The two citations Special Master Cohen provided say nothing about what OptumRx or Express Scripts (or their affiliated mail-order pharmacies) "knew"—let

alone support his conclusion that "claims against the PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot)." *See* Press Release, "*FTC Launches Inquiry Into Prescription Drug Middlemen Industry*" (June 7, 2022), https://www.ftc.gov/news-events/news/press-releases/2022/06/ftc-launches-inquiry-prescription-drug-middlemen-industry (mentioning mail-order pharmacies only to note that "[t]he largest pharmacy benefits managers are now vertically integrated with . . . wholly owned mail order and specialty pharmacies"); Statement of Snezana Mahon, United States Senate Committee on Health, Education, Labor and Pensions (Feb. 27, 2018), https://www.help.senate.gov/imo/media/doc/Mahon.pdf (no mention of mail-order pharmacies). But regardless of how he formed his opinions, he did so before the evidence came in and the parties were heard. A reasonable observer would doubt his ability to neutrally assess any evidence and arguments developed at a later stage.

Whether Special Master Cohen in fact harbors personal bias or prejudice against Petitioners is not the question under § 455(a)—although in this case, his statements indicate that he does. It is enough that a reasonable observer would question Special Master Cohen's impartiality. Applying that standard, there is no doubt that disqualification is required. *See In re Aetna,* 919 F.2d at 1143.

**C.**     **The District Court abused its discretion in denying the PBMs'**
**recusal motion.**

The District Court abused its discretion by rewriting Special Master Cohen's
email for him. The District Court downplayed the negative commentary directed at
the PBMs as being "private mental impressions" and "abbreviated notes." Order at
6. But § 455(a) asks how a reasonable observer would view Special Master Cohen's
email—not how a reasonable observer would view a hypothetical alternative email
that was not "abbreviated."[5]

The District Court also defended Special Master Cohen's push for a "global
resolution," remarking that it is "public knowledge that Defendants that settle
bellwethers in this MDL have paid a huge premium." Order at 9. But that is no
defense at all. Neither Special Master Cohen nor the District Court should presume
that just by being named as defendants, the PBM Defendants will pay any amount—
let alone a "huge premium"—to resolve these cases.

On its face, Special Master Cohen's email meets the standard for
disqualification. "[A] reasonable observer is entitled to take the judge at his word"

_____

[5] The District Court also suggested that replacing Special Master Cohen would "only
complicate and delay these MDL proceedings." Order at 10. That is irrelevant under
§ 455(a). It is also unclear why a new special master could not be appointed for MDL
cases involving the PBMs, given that the PBM bellwethers had not even been set as
of the date of the Order.

and "we must be careful not to rewrite what the judge has said and render unreasonable the clearest and most obvious reading of the language." *United States v. Antar*, 53 F.3d 568, 577 (3d Cir. 1995), *overruled in part on other grounds*, *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001); *see id.* at 573–74 (disqualification required because judge admitted that his "object in this case from day one has always been to get back to the public that which was taken from it as a result of the fraudulent activities of this defendant and others"). A reasonable person reading Special Master Cohen's email would, at the very least, harbor serious doubts about his impartiality as to the PBMs. Under the statute, that requires his disqualification.

## <u>CONCLUSION</u>

The Court should grant the writ and order the District Court to disqualify Special Master Cohen from participating in any pending or future MDL proceedings involving OptumRx or Express Scripts or their parents or affiliates.

October 27, 2023.

 Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203

*/s/ Christopher G. Michel*
Christopher G. Michel
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite
4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com

*Attorneys for Defendant OptumRx, Inc.*

1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
christophermichel@quinnemanuel.com
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Defendant Express Scripts, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains fewer than 7,800 words, excluding the accompanying documents required by Rule 21(a)(2)(C).

This petition complies with the requirements of Fed. R. App. P. 32(c)(2) and Fed. R. App. P. 32(a) because it has been prepared using Microsoft Word 2016 in Times New Roman, 14-point font.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 27, 2023, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system.

I further certify that on October 27, 2023, a copy of the foregoing was served upon the District Court and on Plaintiffs' Counsel by email. A paper copy will be mailed to the District Court on October 30, 2023.

*/s/ Brian D. Boone*
Brian D. Boone

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| R. No. | Description | PageID# |
|---|---|---|
| R. 69 | Appointment Order | 443–454 |
| R. 441 | Case Management Order No. 2: Protective Order | 5799–5836 |
| R. 1848 | Order Denying Plaintiffs Motion for Leave to File Joint Motion for Preliminary Injunctive Relief | 57490–57492 |
| R. 5166 | Minutes and Order Regarding PBM Bellwether Process | 621871–621872 |
| R. 5196 | OptumRx, Inc. and Express Scripts, Inc.'s Motion to Disqualify Special Master Cohen | 623449–623450 |
| R. 5196-1 | OptumRx, Inc. and Express Scripts, Inc.'s Memorandum of Law in Support of Motion to Disqualify Special Master Cohen | 623451–623470 |
| R. 5196-2 | Ex. A (Aug. 28, 2023, 12:50pm email) | 623471–623473 |
| R. 5196-3 | Ex. B (Aug. 28, 2023, 1:12pm email) | 623474–623477 |
| R. 5196-4 | Ex. C (Sept. 7, 2023 email with attached Affidavit) | 623478–623490 |
| R. 5196-5 | Ex. D (Transcript of Aug. 30, 2023 Status Conference Proceedings) | 623491–623541 |
| R. 5196-6 | Ex. E (PBM Status Report for Aug. 30, 2023 Conference, with attachments) | 623542–623551 |
| R. 5196-7 | Ex. F (PEC Status Report for Aug. 30, 2023 Conference) | 623552–623555 |
| R. 5196-8 | Ex. G (Jefferson County-OptumRx Joint Stipulation and Consent Order) | 623556–623562 |
| R. 5196-9 | Ex. H (Jefferson County-Express Scripts Joint Stipulation and Consent Order) | 623563–623566 |
| R. 5196-10 | Ex. I (PBM Status Report for Mar. 22, 2023 Status Conference) | 623567–623577 |
| R. 5196-11 | Ex. J (Aug. 8, 2023 email) | 623578–623581 |
| R. 5196-12 | Ex. K (Nov. 9, 2022 email) | 623582–623584 |
| R. 5196-13 | Ex. L (MDL Opioid Cases Involving OptumRx, Inc., Express Scripts, Inc., and Their Affiliated Entities) | 623585–623590 |

| R. 5196-14 | Proposed Order on Motion to Disqualify | 623591 |
| R. 5198 | Second Affidavit of Special Master Cohen | 623594–623598 |
| R. 5207 | PEC Memorandum in Opposition to Motion to Disqualify Special Master Cohen | 623811–623821 |
| R. 5214 | OptumRx, Inc. and Express Scripts, Inc.'s Reply Supporting their Motion to Disqualify Special Master Cohen | 623867–623880 |
| R. 5214-1 | Ex. A (Sept. 21, 2023 email with attached Second Affidavit) | 623881–623894 |
| R. 5214-2 | Ex. B (*Opioid Special Master Facing Disqualification Motion After Hitting 'Reply All' on Email*, Law.com) | 623895–623898 |
| R. 5217 | Order Denying Motion to Disqualify Special Master Cohen | 623906–623916 |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) | MDL 2804 |
| | ) | |
| | ) | Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | Judge Dan Aaron Polster |
| *PBM Cases* | ) | |
| | ) | **ORDER** |
| | ) | |

Before the Court is Defendant OptumRX, Inc.'s and Defendant Express Scripts, Inc.'s (the

"PBMs") Motion to Disqualify Special Master Cohen. Docket no. 5196. Special Master Cohen

filed an affidavit in response to the PBMs' motion. Docket no. 5198. Plaintiffs filed a response.

Docket no. 5207. The PBMs filed a reply. Docket no. 5214. For the reasons below the PBMs'

motion is **DENIED**.

## Introduction

Special Master Cohen was selected by the Court at the outset of this MDL upon the

recommendation of both Plaintiffs and Defendants. He and his team have done incredible work

over nearly six years in assisting the Court in managing both the litigating and settlement tracks

of what has been called the most complex litigation in history. He has been particularly valuable

as a discovery and privilege special master, and he has been called upon to issue countless legal

rulings. While both Plaintiffs and Defendants have exercised their right to appeal a number of

these rulings to the Court, no party has ever even hinted that Special Master Cohen has been biased

or prejudiced against them. Indeed, all the other major litigating defendants and the PEC agreed just a few days ago that Special Master Cohen should oversee all the global tribal settlements. *See* Motion for Proposed Agreed Order Designating Special Master Pursuant to Global Tribal Opioid Settlement Agreements, docket no. 5211.

## Background

On Monday, August 28, 2023, at 12:50 PM, in response to having received and reviewed emailed status reports, Special Master Cohen inadvertently replied to all recipients with personal notes intended only for himself. Motion Ex. A at 1, docket no. 5196-2. At 1:12 PM (22 minutes later) upon realizing his error, Special Master Cohen attempted to claw back the email containing his mental impressions by requesting that the parties "discard and disregard" the prior email. Motion Ex. B at 1, docket no. 5196-3. On Tuesday, August 29, 2023, at 5:43 PM, counsel for OptumRx, on behalf of both PBM defendants, replied to Special Master Cohen that they "cannot agree to your request to discard or disregard it." Motion Ex. C at 4, docket no. 5196-4.

Instead, during an August 30, 2023 status conference, the PBMs asked the Court to disqualify Special Master Cohen. *See* Motion Ex. D at 37:13–45:25, docket no. 5196-5. During that conference, the Court stated it would not disqualify the Special Master. The Court made clear that the Special Master's email "doesn't in any way, shape, or form indicate that he's biased or prejudice[d against] anything," *id.* at 38:18–20, and that "[i]t's up to Special Master Cohen whether he recuses himself." *Id.* at 41:17–18. On September 7, 2023, in response to a request from the PBMs to voluntarily disqualify himself, Special Master Cohen declined to recuse. Motion Ex. C at 1, docket no. 5196-4. The PBMs then filed the instant motion to disqualify the Special Master.

**The Special Master's Private Thoughts Were Privileged Judicial Deliberations**

Special Master Cohen's email, which consisted entirely of his own mental impressions, personal notes, and private musings about the submitted status reports, was unquestionably a privileged judicial deliberative memorandum to himself. As such, it is an improper basis upon which to even raise an argument about perceived partiality.

In the American legal system, "it is essential that a lawyer work with a certain degree of privacy." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). "It is no exaggeration to say that the integrity of judicial proceedings depends on the inviolability of internal deliberation." U.S. Supreme Court, *Statement of the Court Concerning the Leak Investigation* 1 (Jan. 19, 2023) (*available at* https://www.supremecourt.gov/publicinfo/press/Dobbs_Public_Report_January_19_2023.pdf.). The sacrosanct character of an attorney's personal thoughts and mental impressions is also reflected in our Federal Rules of Evidence and our Federal Rules of Civil Procedure. *See* Fed. R. Evid. 502(b) (non-waiver of privilege when privileged material is inadvertently produced); Fed. R. Civ. P. 26(b)(5)(B) (providing for clawback of inadvertently produced privileged material).

For the judicial system to function, judges must view the arguments presented to them with an appropriate degree of skepticism. If judges were subject to accusations of bias and potential disqualification based solely on private, skeptical thoughts about a party's position, there could be no judges. Therefore, disqualification based on the appearance of partiality under 28 U.S.C. §455(a) must be based on a judge's outward conduct, not his or her private thoughts.[1]

---

[1] The law applicable to judges applies equally to special masters, who serve in a quasi-judicial capacity. *See* Fed. R. Civ. P. 53(a)(2); *see also* Motion at 9 (citing *Guardian Pipeline, LLC v. 950.80 Acres of Land*, 525 F.3d 554, 556 (7th Cir. 2008).

This common-sense premise is illustrated in the cases cited by the PBMs. For example, in

*Ligon v. City of New York*, the Second Circuit reached the following conclusion:

> We emphasize at the outset that we make no findings of misconduct, actual bias, or actual partiality on the part of Judge Scheindlin. Following our review of the record, however, we conclude that her **conduct while on the bench**, which appears to have resulted in these lawsuits being filed and directed to her, in conjunction with her **statements to the media** and the resulting stories published while a decision on the merits was pending and while public interest in the outcome of the litigation was high, might cause a reasonable observer to question her impartiality. For this reason, her disqualification is required by section 455(a).

736 F.3d 118, 124 (2d Cir. 2013) (per curiam), *vacated in part on other grounds*, 743 F.3d 362

(2d Cir. 2014) (emphasis added); *see also In re Nat'l Prescription Opiate Litig.*, 2019 WL

7482137, at *2 (6th Cir. Oct. 10, 2019) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34,

112 (D.C. Cir. 2001)) ("A judge improperly comments on the merits of a case when he **publicly**

**'disclose[s]** his views on the factual and legal matters at the heart of the case[,] . . . the credibility

of witnesses, the validity of legal theories, the culpability of the defendant, the choice of remedy,

and so forth.") (emphasis added).

Here, the PBMs repeatedly and misleadingly attempt to convert the Special Master's

private thoughts into public comments by referring to his email as "remarks." *See, e.g.*, Reply at

5. They were not. Because the PBMs do not and cannot identify any conduct or public statements

by the Special Master that could conceivably appear biased, they rely instead on his private mental

impressions to which they ought not have had access and should have destroyed at Special Master

Cohen's request. *See* CMO-2 at 25, ¶54, docket no. 441 ("If a Party **or non-Party** discovers that it

has produced Privileged Information, it shall promptly notify the Receiving Party of the production

in writing, shall identify the produced Privileged Information by Bates range where possible, and

***may demand that the Receiving Party return or destroy the Privileged Information***.") (emphasis added).[2]

In their reply, the PBMs assert that Special Master Cohen never asserted a claim of privilege over his email. However, the Court finds that by: (1) quickly sending a follow-up email stating that his email was for "[his] own files, and not to counsel," and (2) clearly following a procedure similar to that for inadvertent production of privileged information set forth in this Court's protective order, the Special Master asserted privilege over his email. No magic words were necessary, and the Special Master's follow-up email can only be construed as a claim of privilege and an invocation of the clawback provision of CMO-2. Further, paragraph 54 of the Court's protective order also places a burden on a receiving party. It states: "In the event that a Receiving Party receives information that it believes ***is subject to a good faith claim of privilege*** by the Designating Party, the Receiving Party shall immediately refrain from examining the information and shall promptly notify the Designating Party in writing that the Receiving Party possesses potentially Privileged Information." *Id.* at 25, ¶54. Although the Court's protective order does not expressly apply to the Special Master, it describes a standard of professional conduct in a very closely analogous situation that the PBMs could have and should have followed. The PBMs chose not to.

---

[2] Presumably, the PBMs will, at some point in these proceedings, want to take advantage of this common claw-back provision provided by the Court's protective order. It seems hypocritical, therefore, for the PBMs not to extend a similar courtesy to the Special Master. The Court also notes that, were the email from opposing counsel rather than the Special Master, and the PBMs responded that not only would they not allow counsel to claw back their inadvertent disclosure but intended to use it to attempt to gain some tactical advantage in ligation, such conduct could be the subject of a motion for sanctions.

The PBMs also assert that the Special Master waived the privilege by filing an affidavit on the docket addressing the contents of the email and discussing the issue with a reporter. However, the timeline of events belies their argument. The PBMs, themselves, elected to discuss the emails in a conference on the record—the transcript of which is publicly available—on August 30, 2023, before the Special Master ***privately*** presented the parties with his affidavit on September 7, 2023 and after he attempted to claw the private notes back. The PBMs also excerpted the Special Master's email in their publicly filed motion on September 19, 2023, which occurred before either the September 20, 2023 news article or the Special Master filed his updated affidavit on the public docket on September 21, 2023. Moreover, it does not appear the Special Master "spoke to the press" about the substance of his email, as the PBMs assert in their Reply. *Compare* Reply at 6–9, *with* Reply Ex. B at 2 (explaining that Special Master Cohen "deferred to his affidavit in lieu of commenting" to the press). Regardless, none of these assertions change the fundamental character of the inadvertently emailed private notes from mental impressions to judicial conduct.

### No Reasonable Observer Could Question the Special Master's Impartiality

As this Court stated on the record during the August 30th conference, there is simply no merit to the PBM's allegation of bias: real, implied, or perceived. From the opening phrase of the Special Master's email, "Notes on D's position," it is clear to any but the most unreasonable observer that the email: (1) contained Special Master Cohen's private mental impressions, and (2) were abbreviated notes lacking full context.

In their motion, the PBMs spend a good deal of attention on one passage from the Special Master's email in particular—that the PBMs "knew a lot."[3] Despite the ink dedicated to this passage, the PBMs never explain how a reference to the amount of information they may or may not have about the opioid crisis might be perceived as prejudgment of the merits of any claim or defense in any case before this Court. These conclusory allegations are insufficient to demonstrate even a perception of bias.

The PBMs also imply that the Special Master's use of the word "knew" suggests a specific *mens rea*. *See* Motion at 11 (citing to multiple paragraphs of one of Plaintiffs' complaints that contain *mens rea* language). This tortured construction of Special Master Cohen's five-word parenthetical strains credulity. It takes out of context three words of the Special Master's email that itself lacks context because it was intended as a personal note to himself. "Knowing a lot" and "knowingly behaving in way that could subject a person to liability" are fundamentally different and easily distinguishable, even to a lay reader. Attempts to apply linguistic canons of construction to a person's shorthand notes is a fool's errand. No reasonable observer could possibly construe Special Master Cohen's language as demonstrating a disqualifying bias against the PBMs.

Just as the PBMs read too much into the phrase "knew a lot," they do the same with virtually every other word of the Special Master's email. For example, they take the word "amendment" from the first line ("whether amendment is allowed") and conclude that what the Special Master really means is: "the Court should 'just allow' the PEC to amend thousands of

---

[3] In its response, the PEC alludes to preliminary research, and whether such research is proper. Response at 4. The Court disagrees with this characterization of the Special Master's affidavit. The affidavit makes clear that the only research Special Master Cohen has done into the PBMs is to carefully review cited references contained in status reports submitted earlier to the Court. This does not constitute independent research and is entirely proper. *See* Affidavit ¶13 at 3–4.

complaints without any briefing." Reply at 6 (emphasis added). That is simply not a reasonable interpretation. Courts "must be careful not to rewrite what the judge has said and render unreasonable the clearest and most obvious reading of the language." *United States v. Antar*, 53 F.3d 568, 577 (3d Cir. 1995), *overruled in part on other grounds*, *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001).

The Court has never considered setting thousands of bellwether trials against PBMs, nor amendment of thousands of cases. In fact, the Court has explicitly told the parties it would allow amendments only of the small number of cases eventually selected as bellwethers and would do so because the Sixth Circuit has already ruled on that issue. *See, e.g.*, Motion Ex. D at 6:4–7 ("the Sixth Circuit has clearly said that because of my initial order[, . . .] plaintiffs could amend complaints **if a case is selected as a bellwether**.") (emphasis added) (referring to *In re: Nat'l Prescription Opiate Litig.*, Case No. 21-4051, 2022 WL 20701236, at *2 (6th Cir. Nov. 10, 2022) (MDL docket no. 4747) (holding that, because "[this MDL Court's] scheduling order allowed plaintiffs to amend whenever their case was selected as a bellwether, . . . the scheduling order did not clearly violate Rule 16 because it provided some limit (when a case was selected as a bellwether).")); *see also id.* at 12:24 (the Court stating: "conversely, to say that the plaintiffs should go ahead and amend complaints in hundreds of cases, that doesn't make sense").

Similarly, the PBMs take exception to the Special Master's thoughts on the best number of bellwether cases, insisting his comments show he is trying to "coerce" them into global settlement. Motion at 12; Reply at 6. In fact, the note more probably suggests the opposite: that Special Master Cohen was concerned with premature single-case settlements that would short-circuit the bellwether process. The most obvious interpretation of Special Master Cohen's note—that he

"think[s] we need 4 bellwethers, not 2 [because] it is too easy for Ds to buy off 2 Ps,[4] avoiding any global resolution"—is simply that if there are only two bellwether cases and both settle, the parties will be left with no live cases and insufficient data to meaningfully engage in global settlement discussions. As to "buying off" plaintiffs, it is public knowledge that Defendants that settle bellwethers in this MDL have paid a huge premium (*e.g.*, in the Track 1 bellwether in October 2019, four defendants paid a total of $235.4 million, many multiples of what the bellwether plaintiffs would have received under the subsequent global settlements).

The Special Master's note is not a prejudgment of the merits of any claim and carries no hint of coercion. As the Sixth Circuit held earlier in this case, "[Judge Polster] pushed for settlement not because he had prejudged the case, but because that was the most expedient way to conclude the dispute. Judges in complex litigation are encouraged to pursue and facilitate settlement early in a variety of ways." *In re Nat'l Prescription Opiate Litig.*, Case No. 19-3935, 2019 WL 7482137, at *3 (6th Cir. Oct. 10, 2019) (citing *Bell v. Johnson*, 404 F.3d 997, 1006 (6th Cir. 2005), and Manual on Complex Litigation § 13.1, pp. 167−68 (4th ed. 2004)). As of today, there have been over a dozen global settlements announced, totaling approximately $55 billion.

Ultimately, Special Master Cohen's private notes, when read objectively as a whole, demonstrate his even-handedness. It is notable that the PBMs ignore the Special Master's statements that ***favor*** the PBMs' positions. *See, e.g.*, Motion Ex. A at 1 ("I have some sympathy for the PBMs' argument . . ..");  *id.* ("let PBMs [add third parties] as they wish"); *see also* Affidavit ¶14 at 4. The Sixth Circuit has refused to read a judge's statements stripped of context in that way.

---

[4] Obviously, if the Special Master knew his notes would become the subject of public scrutiny, he might have chosen a more diplomatic phrase than "to buy off," but it is not this Court's role (nor that of the PBMs) to police the manner in which the Special Master makes notes for himself.

*See In re Nat'l Prescription Opiate Litig.*, Case No. 19-3935, 2019 WL 7482137, at *3 (6th Cir. Oct. 10, 2019). ("Read in isolation, Judge Polster's statements to the press and in court might call into question his impartiality. ***But we must take his statements in context.***") (emphasis added). Reading Special Master Cohen's email as a whole, the Court finds it represents an even-handed consideration of the matters before the Court.

Finally, it is not clear what the PBMs hope to gain through this motion. Should Special Master Cohen be disqualified from doing any further work on PBM cases, the Court will suggest to the JPML that it immediately remand all of these cases from the MDL, rather than attempt to proceed without the assistance of a special master. The Court's present intention is to retain jurisdiction over the PBM bellwethers to oversee discovery and dispositive motions, and then to request remand when they are trial ready. This is the procedure the Court has employed for all other bellwethers in this MDL. It saves the parties the enormous time and expense of litigating the same issues in front of four different judges and risking inconsistent rulings. And it spares each of those four busy judges a great deal of extra work. It is only with the assistance of Special Master Cohen and his team that the Court would have the capacity to handle the great burden entailed in managing discovery and motion practice in four very complicated bellwether cases.

The PBMs cursorily offer the possibility of replacing the Special Master. *See* Motion at 3 n.1. However, it would take years for any new master to review and familiarize themselves with the MDL docket, the Court's rulings, the discovery rulings, the procedural history, the parties, the settlements, and many other elements of this mature and extraordinarily complex MDL. Attempting to introduce a new special master, even just to the PBMs' portion of this MDL, would only complicate and delay these MDL proceedings.

**Conclusion**

Accordingly, for the reasons described above, the Court finds that Special Master Cohen's personal notes should have been protected rather than exploited; and regardless, no reasonable observer could question the Special Master's impartiality based on his inadvertently circulated email. The PBMs' motion to disqualify the Special Master is **DENIED**. The PBMs are ordered to discard and disregard the Special Master's email as he requested.

**IT IS SO ORDERED.**

 **/s/ Dan Aaron Polster  October 10, 2023**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**