No. 23-3882

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 14, 2023
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| In re: OPTUMRX, INC., et al., ) | |
| ) | O R D E R |
| Petitioners. ) | |

Before: NORRIS, MOORE, and COLE, Circuit Judges.

Petitioners, Optum Rx, Inc. and Express Scripts, Inc.—the remaining pharmacy benefit managers ("PBMs") in this multidistrict litigation—petition for a writ of mandamus seeking to compel the district court to disqualify Special Master David R. Cohen from all pending and future proceedings that involve Petitioners or their parent companies or affiliates and move to expedite our review. The district court and the Plaintiffs Executive Committee ("PEC") oppose the petition. Petitioners move for leave to reply and tender their reply.

In 2017, the Judicial Panel on Multidistrict Litigation centralized actions filed throughout the country against manufacturers and distributors of prescription opioid medications in the Northern District of Ohio. Immediately following centralization, the district court met with counsel to discuss organizing the parties into categories or tracks overseen by steering committees, the appointment of a special master, and the possibility of early resolution. The district court ultimately appointed three special masters, among them Cohen, who is the only one remaining. Since his appointment, Cohen has been extensively involved in the litigation.

Following the special masters' appointments, the PBMs were named in approximately 80 of the opioid suits. From the outset, it was alleged the PBMs held a wealth of valuable information pertinent to the litigation given their unique position in the distribution chain. Not until late 2022, however, did the PEC seek the creation of a PBM bellwether track. Discussions then ensued on the exchange of information prior to commencing mediation efforts.

Against this backdrop, the current dispute arose.  In November 2022, Cohen asked the parties to provide status reports on the current state of the litigation and settlement discussions, including suggestions for setting bellwether trials involving the PBMs.  During this and two later conferences, the district court explained that there would be two PBM bellwethers and outlined the bellwether selection process.  It directed the PEC and the PBMs to submit status reports to Cohen on August 28 focusing on the bellwether selection and related issues, in contemplation of an August 30 hearing.

The PEC and the PBMs e-mailed their status reports.  The PEC wanted to select four bellwether cases and to amend the complaints in the cases selected as bellwethers.  The PBMs opposed any amendments that would add claims against them, stated the parties had agreed to two bellwethers, sought to confirm what claims the PEC intended to pursue against them and/or their affiliated mail-order pharmacies in the bellwether trials, stated that they may need to add parties depending on what claims the PEC pursued, and proposed another status conference four weeks later.  Less than an hour later, Cohen sent an e-mail to all the recipients of these status reports:

> Notes on D's position:
>
> I disagree that there should be briefing on whether amendment is allowed; just allow it. Let them mandamus you, CTA6 has said that is allowed.
>
> I have some sympathy for PBMs' argument that a briefing track should be in a different case, separate from the litigating cases.  But perhaps there are some truly overreaching threshold issues we should tee up more quickly.  Need to see what Ps are thinking.
>
> I think we need 4 bellwethers, not 2 -- it is too easy for Ds to buy off 2 Ps, avoiding any global resolution.
>
> The Pharmacies also sought to add third parties, like PBMs do here.  PBMs' goal is to complicate and delay (including a request to do nothing and set a status 4 weeks hence). I say let Ps add claims against PBMs as mail-order pharmacies.  Two reasons:  (1) Ps are the master of their own complaint, and (2) claims against PBMs as mail-order pharmacies will show how much PBMs knew (and they knew a lot).  And then let PBMs respond as they wish.  If that complicates the case, so be it.  We are used to that.

Recognizing that he had replied all in error, Cohen e-mailed all the recipients within half an hour:

> Dear Counsel: This email was meant to be to my own files, and not to counsel. Please discard and disregard. I apologize.

The PBMs wrote back that no order or rule required them to disregard his e-mail and that his e-mail raised serious questions about his impartiality. After the district court and Cohen both declined the PBMs' request that Cohen disqualify himself, the PBMs then formally moved for his disqualification. The PBMs asserted that multiple portions of Cohen's e-mail created the appearance of partiality or suggested he had prejudged the merits: his assumption that the PBMs "knew a lot" despite having been only minor participants in the litigation to that point and despite none of the discovery involving their affiliated mail order pharmacies; his promotion of four bellwether trials—based on achieving a global resolution—which was allegedly meant to coerce the PBMs into settlement, and his belief that the PBMs' addition of parties merely sought to complicate and delay resolution. The PEC opposed Cohen's disqualification and, alternatively, suggested that the judicial deliberative privilege precluded using his confidential communications to support disqualification. The district court denied the PBMs' motion. This mandamus petition followed.

First, we address Petitioners' motion for leave to file a reply. Federal Rule of Appellate Procedure 21, which governs original actions in this court, neither permits nor prohibits a reply. *See generally* Fed. R. App. P. 21. We preliminarily invited a response, however, *see* 6 Cir. I.O.P. 21(c), and a reply would have been permissible if we had set a briefing schedule instead, *see* Fed. R. App. P. 21(b)(5). Thus, we will grant leave to file the reply.

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (cleaned up). Consequently, "only exceptional circumstances amounting to a . . . clear abuse of discretion" justify issuance of the writ. *Id.* (cleaned up). "[T]hree conditions must be satisfied before" a writ will issue (1) the

petitioner "[must] have no other adequate means to attain the relief" sought, (2) the "right to issuance of the writ" must be "clear and indisputable," and (3) we must be satisfied that "in the exercise of [our] discretion . . . the writ is appropriate under the circumstances." *Id.* at 380−81 (quoting *Kerr v. U.S. Dist. Ct. for N.D. Cal.*, 426 U.S. 394, 403 (1976)).

The first of these conditions is easily satisfied. "[W]e can and should consider a petition for mandamus following a district court's denial of a motion to disqualify based on . . . [an] appearance of partiality under 28 U.S.C. § 455 . . . ." *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1143 (6th Cir. 1990) (en banc). Section 455 applies to special masters. Fed. R. Civ. P. 53(a)(2) & advisory committee's notes on 2003 amendment ("Masters are subject to the Code of Conduct for United States Judges . . . .").

The remaining conditions, however, are not. We review the denial of a motion to disqualify for an abuse of discretion. *Garrett v. Ohio State Univ.*, 60 F.4th 359, 368 (6th Cir. 2023). A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or if "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(a), (b)(1). "The question is whether, given the facts, an objective reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." *Garrett*, 60 F.4th at 369 (cleaned up); *see United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966) ("The alleged bias . . . must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case."). Because "the standard is an objective one . . . , the judge need not recuse himself based on the subjective view of a party, no matter how strongly that view is held." *Garrett*, 60 F.4th at 369 (cleaned up). Importantly, to "guard against not only actual bias but also the appearance of bias," we review "only the remark that the district judge made," not what he meant by the remark. *United States v. Liggins*, 76 F.4th 500, 507 (6th

No. 23-3882
-5-

Cir. 2023). And, "[w]here the question is close, the judge must recuse himself." *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993).

A judge's remarks that "serve[] no purpose for courtroom administration, but rather constitute[] gratuitous commentary by the district court judge about his opinion of [the party] and his feelings about [the] case," cross the line. *Liggins*, 76 F.4th at 507. So too do a judge's public statements on a case when combined with an invitation to make an argument or raise a claim the judge opines would be successful. *Ligon v. City of New York*, 736 F.3d 118, 125−26 (2d Cir. 2013) (per curiam), *vacated in part on other grounds*, 743 F.3d 362 (2d Cir. 2014) (per curiam); *see also In re Nat'l Prescription Opiate Litig.*, No. 19-3935, 2019 WL 7482137, at *2 (6th Cir. Oct. 10, 2019) (order) (differentiating public comments that require recusal (disclosure of views on the facts or law, the validity of the underlying claims, a party's culpability, or the remedy) from those that do not (general statements or "beliefs about a judge's state of mind")). Recusal is also appropriate when a judge attempts to coerce settlement, such as by threatening to penalize a party that refuses to settle. *Smith v. ABN AMRO Mortg. Grp. Inc.*, 434 F. App'x 454, 462 (6th Cir. 2011).

In contrast, "judicial remarks during the course of a trial "that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Thus, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Further, a judge's remarks on what he is inclined to do in a case do not support recusal. *See Bell v. Johnson*, 404 F.3d 997, 1006 (6th Cir. 2005). Nor must a judge recuse himself because he acknowledged that settlement efforts might not work, recognized the "compelling arguments" on both sides, or placed blame on both parties. *In re Nat'l Prescription Opiate Litig.*, 2019 WL

7482137, at *2−3. Put another way, "[i]mpartiality is not gullibility. . . . If the judge did not form judgments of the actors in those court-house dramas called trial, he could never render decisions." *Liteky*, 510 U.S. at 551 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943)).

Viewed through this lens and placed in their proper context, the district court did not abuse its discretion when it found that Cohen's abbreviated statements do not require his recusal. Although his remarks relate to how he thought the case should proceed and his opinions of the parties, they do not evidence a deep-seated antagonism for any of the parties. While he expressed mild criticism of the PBMs' approach, he accepted that any effort by the PBMs to complicate and delay resolution was an unavoidable consequence of such a wide-ranging multidistrict litigation. Additionally, the record supports Cohen's general statement that the PBMs and their mail order affiliates knew a lot about the underlying claims in the case, given their unique position in the market; regardless, knowledge does not equate to liability. Cohen's preference for four bellwether trials, rather than the PBMs' desire for two, is a general opinion based on the litigation thus far that does not demonstrate bias. Similarly, his statement that additional bellwethers were more likely to continue settlement discussions is not coercive, and it does not reflect that a settlement will result or is the preferred resolution—it merely acknowledges the district court's oft-stated preference to maintain litigation and settlement tracks to resolve the case more efficiently.

The PBMs also challenge the district court's application of the judicial deliberative privilege. We need not reach this issue given that Cohen's remarks do not demonstrate bias or partiality.

No. 23-3882
-7-

Accordingly, the motion for leave to file a reply is **GRANTED**, the petition for a writ of mandamus is **DENIED**, and the motion to expedite is **DENIED AS MOOT**.

ENTERED BY ORDER OF THE COURT

*Kelly L. Stephens*
Kelly L. Stephens, Clerk