UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**OPTUMRX, INC. AND EXPRESS SCRIPTS, INC.'S RESPONSE TO PLAINTIFFS' PROPOSED CASE MANAGEMENT ORDER**

In accordance with the Court's Order Regarding PBM Bellwether Process (Dkt. 5231), OptumRx, Inc. and Express Scripts, Inc. write in response to Plaintiffs' proposed case management order. The parties made substantial progress during multiple conferences, and there are several elements that both sides agree should appear in the final CMO. For areas where the parties disagree, the Court should enter the PBM Defendants' CMO for the first two mutually agreed-on bellwether cases, *City of Rochester v. Purdue Pharma, L.P.*, 1:19-op-45853-DAP and *Lincoln County v. Richard Sackler, M.D.*, No. 1:20-op-45069-DAP. Once entered, the parties agreed to submit a second proposed CMO for the remaining two bellwether cases on a similar schedule, with deadlines staggered approximately 60 days later than the deadlines in the first CMO.

**A.  The parties made progress during the meet-and-confer process, and there are key areas of agreement for the CMO.**

At the outset of the negotiation process, Plaintiffs and the PBM Defendants disagreed on nearly every element of the CMO, from case sequencing to briefing schedules. Plaintiffs initially proposed that the four PBM bellwether cases proceed sequentially, with Plaintiffs

selecting the first case to move forward towards trial, the PBM Defendants selecting the second, and Plaintiffs selecting the third. To avoid duplicative discovery and unnecessary delay, the PBM Defendants proposed that the cases all proceed together at the same time on a schedule allowing for remand of all four cases to the transferor jurisdictions in less than three years.

Following extensive negotiation, the parties agreed to compromise on a two-by-two schedule, with two cases proceeding first, *City of Rochester v. Purdue Pharma, L.P.,* No. 19-op-45853 (selected by Plaintiffs) and *Lincoln County v. Richard Sackler, M.D.,* No. 20-op-45069 (selected by the PBM Defendants), followed shortly thereafter by *City of Independence, Missouri v. Williams*, No. 19-op-45371 (selected by Plaintiffs) and *County of Webb, Texas v. Purdue Pharma, L.P.,* No. 18-op-45175 (selected by the PBM Defendants). The parties agreed that the second track should trail the first by approximately 60 days.

**B.     The PBM Defendants' proposed CMO conforms with the Court's prior rulings and sets a reasonable schedule based on CMOs in other tracks.**

Where the parties disagree, the PBM Defendants' proposed CMO (Exhibit 1) conforms with the Court's prior rulings and sets a reasonable schedule based on CMOs applied in other MDL tracks. By contrast, Plaintiffs' proposed CMO (Exhibit 2) would disadvantage the PBM Defendants at every turn in a way that disregards the Court's prior orders and sets unreasonable deadlines.

1. "Track 12" should consist of *City of Rochester, NY* and *Lincoln County, MO.*

Given the parties' carefully negotiated agreement that the four PBM bellwether cases should proceed in a two-by-two schedule, the Court should adopt the PBM Defendants' proposal that:

2

- Track 12 consists of *City of Rochester v. Purdue Pharma, L.P.*, 1:19-op-45853-DAP and *Lincoln County v. Richard Sackler, M.D.*, No. 1:20-op-45069-DAP, and

- Track 13 consists of *County of Webb, Texas v. Purdue Pharma, L.P.,* No. 18-op-45175 and *City of Independence, Missouri v. Williams*, No. 19-op-45371.

Designating the tracks in this manner more accurately reflects the parties' agreement. That approach is also consistent with several prior bellwether tracks. *See, e.g.*, ECF No. 232 at 6 (identifying three cases in Track One).

2. <u>Plaintiffs should be required to file motions for leave to amend their complaints.</u>

Plaintiffs should be required to file motions for leave to amend as proposed in the PBM Defendants' CMO.

Federal Rule of Civil Procedure 15(a)(2) provides that for amendments to pleadings before trial, but after the initial opportunities to amend as of right have passed, "a party may amend its pleading *only* with the opposing party's written consent or the court's leave" (emphasis supplied). Without a motion for leave to amend and proposed amendment, it is impossible to determine whether Plaintiffs' amendments are permissible. For example, Plaintiffs may attempt to add improper allegations, claims, or parties, which is precisely why Rule 15 sets forth an amendment process.

Additionally, in its initial CMO, the Court made clear that *all* MDL plaintiffs—including the four Plaintiffs designated as PBM bellwether plaintiffs—must file "any amended pleading, including any amendment to add a party to a case" by Friday, May 25, 2018. ECF No. 232 at 9. The Court clarified its order on May 3, 2018, explaining that "if a plaintiff in an MDL case wants to file an amended complaint *without* leave of Court, it must do so by May 25, 2018." ECF No. 371. The Court went on to state that "[i]f a case is later designated as a bellwether for motion practice or trial, a separate CMO will be entered that will provide for

3

another opportunity to amend." *Id.* Nothing in that second provision, however, authorized amendments *without* leave of Court. *See id.*

On July 13, 2018, the Court extended the deadline for MDL plaintiffs to amend "as of right" on July 13, 2018 (ECF No. 739), November 8, 2018 (ECF No. 1106), and January 18, 2019 (ECF No. 1282 at 2). None of those orders provided for later amendments of bellwether cases. The deadline to amend "as of right" expired on March 16, 2019.

When the Court allowed amendments in May 2021 to add Meijer as a defendant without a showing of good cause, Meijer filed a petition for writ of mandamus challenging the Court's order. The Sixth Circuit ultimately denied the petition but recognized that the Court's decision allowing amendments in May 2021 "went right to the edge of the district court's discretion." *In re Meijer*, No. 21-4051, 2022 WL 20701236 (6th Cir. Nov. 10, 2022). Plaintiffs ask the Court to again allow amendments as of right nearly five years after their deadline to do so, but three new factors push the question *beyond* the "edge of the district court's discretion" here.

Moreover, the Court has already stated that for the bellwethers, Plaintiffs should move for leave to amend and that the PBM Defendants will have the right to oppose any proposed new amendments:

> I'm ruling now that if plaintiffs . . . want to amend the complaints[,] . . . I'll grant the **motion for leave to file the amended complaint. And then if the defendants want to object, they make their record**, they make their record, but I'm quite confident that this process is following exactly what the Sixth Circuit has directed.

ECF No. 5168 (Tr. of Aug. 30, 2023 Status Conf.) at 30:2–7 (emphasis added).[1] The PBM Defendants' proposed CMO follows the Court's orders on this issue by providing deadlines

---

[1] *See also* ECF No. 5166 (Aug. 31, 2023 Order Regarding PBM Bellwether Process) at 2 ("The Court ruled the PBM defendants can file objections in the four bellwether cases after the

4

for Plaintiffs' motions for leave to file amended complaints, whereas Plaintiffs' proposed CMO entirely skips the first step of that process and denies the PBM Defendants' the right to make a record on any initial motions for leave to amend.

Beyond that, Plaintiffs' proposal would allow amendments in the four bellwethers without leave of court—including amendments adding brand new defendants and theories—more than a year and a half after the JPML has closed the MDL to new cases. *See* JPML Order Denying Transfer and Vacating Conditional Transfer Order, No. 3:21-cv-246 (J.P.M.L. April 8, 2022). The JPML has concluded that the MDL "has reached the point where the benefits are outweighed by the effects of transferring new cases to this mature litigation." *Id.* Allowing amendments to add new claims against new parties without leave of court would operate as an end-run around the JPML's order.

3. The Court should not award Plaintiffs an unreasonable number of party depositions.

Plaintiffs' request for 50 fact witnesses of Defendants is unreasonable because it does not account for the voluminous deposition record created in substantially similar state court action, *Jefferson County v. Dannie E. Williams. M.D., et al.*, Case No. 20JE-CC00029 (Twenty-Third Judicial Circuit, Missouri) (**Jefferson County**). In Tracks 7 – 11, the Court allowed Plaintiffs to depose 5 fact witnesses per Track 3 Defendant Family, because those defendant families had been involved in a prior bellwether and already subject to depositions. *See* ECF No. 3769 (limiting the Track 7 plaintiff to a maximum of 5 part-defendant fact witnesses per Track 3 defendant family); ECF No. 3818 (same for Track 8); ECF No. 3817 (same for Track 9); ECF No. 3819 (same for Track 10); ECF No. 3820 (same for Track 11). The PBM

---

amended complaints are filed."); ECF No. 5231 (Oct. 27, 2023 Order Confirming PBM Bellwether Process) at 2 ("The CMOs may include deadlines for amendment of complaints.").

5

Defendants have already participated in extensive discovery over the last three years in *Jefferson County*. At the conclusion of discovery, the plaintiff county (represented by many of the same counsel as Plaintiffs, including the Cicala Law Firm, Baron Budd, and Mark Lanier) will have deposed 17 witnesses from Express Scripts and 14 from OptumRx. The transcripts for each completed deposition have been re-produced into the MDL via DR-22 once finalized. Allowing just two Plaintiffs to take 50 additional depositions of the PBM Defendants' witnesses (without even accounting for depositions of the remaining two bellwether Plaintiffs) would be unduly burdensome, unnecessarily duplicative, and entirely inconsistent with the Court's prior practice in this MDL.

Given those flaws, the Court should adopt the PBM Defendants' proposed deposition limits, which allow the Track 12 and Track 13 Plaintiffs to collectively take 10 depositions of each PBM Defendant (on top of the 31 depositions already available from the *Jefferson County* case) and provides a reasonable procedure and limits the potential burden on witnesses that would otherwise be forced to submit to duplicative depositions. This approach is consistent with the Court's prior practice in this MDL to limit depositions for those defendants that have already participated in extensive discovery. *See* ECF Nos. 3769, 3818, 3817, 3819, 3820.

4. <u>Plaintiffs are not entitled to non-reciprocal written discovery limits.</u>

Plaintiffs ask the Court to limit the PBM Defendants (collectively) to 35 interrogatories and 35 requests for production for each Plaintiff. But Plaintiffs propose no limits to the written discovery that they may serve.

The PBM Defendants propose that the Court instead order the following limits on written discovery:

- The PBM Defendants (collectively) may serve up to 35 Requests for Production and up to 35 Interrogatories on each Track 12 and Track 13 Plaintiff (e.g., 35 to

6

- Rochester, 35 to Lincoln County, 35 to Webb County, and 35 to City of Independence).

- The Track 12 and Track 13 Plaintiffs (collectively) may serve up to 35 Requests for Production and up to 35 Interrogatories on each PBM Defendant (e.g., 35 to OptumRx and 35 to Express Scripts).

That is consistent with the Court's CMOs in other tracks. *See, e.g.*, ECF No. 232 at 16.

5. <u>The PBM Defendants' CMO sets reasonable deadlines for discovery.</u>

Discovery deadlines in the PBM Defendants' proposed CMO are efficient and reasonable based on previous tracks in this MDL. Plaintiffs and the PBM Defendants have not been subject to discovery in this MDL, nor have they previously participated in fact or expert discovery. CMO deadlines should reflect that reality.

**Fact discovery.** The PBM Defendants' timeline for fact discovery is more reasonable than Plaintiffs' proposal as a whole and its component parts, starting with data production. Compared to Plaintiffs' proposed CMO, the PBM Defendants' CMO would set earlier deadlines for discussions about data and allow more time to produce data given the complexity, volume, and sensitive health information at issue. *Compare* PBMs' Proposed CMO § E.1 (starting process on Feb. 1, 2024 and producing data on Aug. 6, 204) *with* Plaintiffs' Proposed CMO § F.2 & F.5 (starting process on Mar 1, 2024 and producing data on May 16, 2024). The PBM Defendants' proposal of six months is still aggressive but far more realistic than the two-and-a-half months proposed by Plaintiffs. For example, in *Jefferson County*, the plaintiff requested claims data in May 2021 that the PBM Defendants produced on a rolling basis over 22 months before the close of discovery in March 2023. Even after 22 months, the plaintiff was still requesting additional data several months after the close of discovery.

7

The PBM Defendants' proposed deadlines for data discovery and identification of document custodians are also more efficient than Plaintiffs' proposal. By allowing enough time to properly negotiate the scope of data production and document custodians for all four bellwether cases during the earliest track, the PBM Defendants' proposed CMO will save time and create efficiencies in preparing for the later two bellwethers. *See* PBM Defendants' Proposed CMO §§ E.1, E.3, E.4.

Viewing fact discovery as a whole, the PBM Defendants' proposed CMO is more reasonable and fair. Plaintiffs propose that the parties substantially complete document production in the first two cases by May 24, 2024, just seven months after the Court confirmed the PBM bellwether cases. Such an aggressive timeline is inconsistent with prior case tracks. For example, in Track 7, the Court granted the parties approximately 11 months from selection as a bellwether case to substantially complete document production. ECF No. 3769. The Court further granted 12 months in Track 8, 14 months in Track 9, 17 months in Track 10, and 18 months in Track 11. ECF Nos. 3818, 3817, 3919, 3820. The Court extended the substantial completion deadlines even further for Tracks 8 – 11. ECF No. 4406, 4407, 4617. Plaintiffs' proposal will only waste judicial resources by forcing the parties to return to the Court for necessary—and predictable—extensions. Alternatively, the PBM Defendants propose slightly more than 13 months from selection as a bellwether to substantially complete discovery in the first two cases, which is almost identical to the original schedules entered in Tracks 7 and 8. (ECF Nos. 3769, 3818).

Plaintiffs similarly propose an unworkable fact discovery deadline less than 11 months after selection as a bellwether. That schedule would represent a marked departure from prior case tracks and would undoubtedly lead to requests for extensions and wasteful motion practice. *See* ECF No. 3769 (setting the original close of fact discovery deadline 13.5 months

8

after selection as a bellwether in Track 7); ECF No. 3818 (15 months in Track 8); ECF No. 3817 (16.5 months in Track 9); ECF No. 3819 (19 months in Track 10); ECF No. 3820 (20 months in Track 11). Plaintiffs' proposal also ignores that Plaintiffs have said that they intend to add new parties through their proposed amendments—parties that may not have been subject to discovery in any opioid-related case before.

If CMOs in earlier tracks are any indication, Plaintiffs' proposed deadline for close of fact discovery would almost certainly have to be renegotiated or extended. For example, the 10-month period between motions to dismiss and the close of fact discovery in Track 8 was later extended to 18 months—including a joint request for extension. *See* ECF Nos. 3818, 4814, 5202. The same was true in Track 9: the 11-month period between motions to dismiss and the close of fact discovery was later extended to 23 months. ECF Nos. 3817, 5143. By comparison, the PBM Defendants propose a timeline sufficient to allow the parties to proceed through discovery in an efficient but reasonable manner.

**Expert discovery**. The PBM Defendants' proposed CMO requires disclosure of Plaintiffs' experts on June 16, 2025 and the PBM Defendants' experts on September 29, 2025, with approximately three months to conduct depositions of each set. PBMs' Proposed CMO § G. Plaintiffs' proposal would have the parties disclose experts 8–9 months earlier in October 2024 and January 2024,[2] with only six weeks to conduct depositions and less than one month to file *Daubert* and dispositive motions after expert depositions conclude. *See* Plaintiffs' Proposed CMO § H, I.

---

[2] PBM Defendants assume that Plaintiffs meant to propose January 6, **2025** for disclosure of the PBM Defendants' experts rather than "January 6, 2024," *see* Plaintiffs' Proposed CMO § H.2, but if that assumption is incorrect then Plaintiffs' proposal is even more objectionable.

9

As with their fact discovery deadlines, the Plaintiffs' proposals for expert discovery are unrealistic based on CMOs in earlier tracks. For example, Track 8 allowed nearly 12 months for expert disclosures and depositions between the close of fact discovery and the deadline for *Daubert* motions, whereas Plaintiffs' proposal allows approximately six months—barely half of the time needed in Track 8. ECF Nos. 4814, 5202. Compared to Track 10's CMO that allowed 13 months and three weeks for the same type of expert discovery, Plaintiffs' proposal is even less realistic. ECF Nos. 4408, 5202.

> 6. <u>The Court should consider whether *Daubert* motions and dispositive motions may be heard by the transferor court.</u>

When, as here, a summary judgment motion will "pertain[] to one or few cases" and will "rest[] on application of the transferor court's conflict-of-laws and substantive law rules, the transferor judge may be able to decide the motions most efficiently." Federal Judicial Center, Manual for Complex Litigation § 22.36 (4th ed. 2004) (footnote omitted). As a result, in prior cases in the MDL, the Court has suggested remand before all pretrial proceedings have concluded, including *Daubert* and dispositive motion practice. *See* ECF Nos. 2941 and 3059 (remanding *City and County of San Francisco*, *City of Chicago*, *Cherokee Nation* and the Track Two cases before all pretrial proceedings were complete). In those cases, the Court identified a number of different reasons for remand based on the unique factual circumstances of each case at the time of remand.

In the PBM bellwethers, much remains uncertain. Plaintiffs may try amend their complaints to add new parties or new claims and have not yet sought to sever claims against any other defendants. The PBM Defendants may also join additional parties. In light of those unknown factors, the Court should take the issue under advisement and determine, at the appropriate time, whether these cases should be remanded to the transferor courts for *Daubert*

and dispositive motions. The PBM Defendants respectfully request an opportunity to brief the issue at the appropriate stage of litigation.

  7. <u>The Court should not allow Plaintiffs to transform these PBM cases into additional pharmacy bellwethers.</u>

Although the Court directed that these cases proceed as bellwethers against the PBM Defendants (ECF No. 5231), Plaintiffs propose that the PBM Defendants also be required to produce mail order pharmacy dispensing data. Allowing Plaintiffs to proceed against the PBM Defendants as pharmacies would dramatically increase the size, scope, and complexity of all aspects of these cases, cause unnecessary delay, and ultimately prevent these cases from moving efficiently toward remand and trial. For example, Express Scripts' and OptumRx's affiliated mail order pharmacies have *de minimis* market share with respect to opioid prescriptions in each of the PBM bellwether jurisdictions.[3] Allowing claims against the PBM mail order pharmacies will likely necessitate the addition of dozens of other pharmacies with higher market share as defendants. The Court already designated a new round of pharmacy bellwether cases (*see* ECF No. 3688) and should reject Plaintiffs' attempt to proceed against the PBM Defendants as both pharmacy benefit managers and pharmacies in these *PBM* bellwethers.

  8. <u>The Court should not limit third party discovery.</u>

Likewise, the Court should deny Plaintiffs' request to unnecessarily limit third party discovery. In prior case tracks, the Court has expressly noted that limitations on the number of party depositions did *not* apply to third party depositions. (*See* ECF No. 643, 3769, 3818, 3817, 3819, 3820). Plaintiffs have not offered any basis to limit third party discovery in this manner and the Court should decline to do so.

---

[3] The PBM Defendants object to the notion of market-share liability in any bellwether.

9. <u>Due process forbids the Court from binding the PBMs to all previous "formal" MDL rulings in cases in which the PBMs were not parties.</u>

Through footnote 2 of their proposal, Plaintiffs seek to preclude the PBM Defendants from litigating issues that have been decided vis-a-vis *other* MDL defendants—including "pleadings, dispositive motions, motions to dismiss, pretrial motions, and other submissions." That sweeping proposal would violate the PBM Defendants' due process rights. *See Blonder-Tongue Labs. v. University of Illinois Found.*, 402 U.S. 313, 329 (1971) (due process prohibits a court from estopping litigants that "have never had a chance to present their evidence and arguments"); *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (preclusion is "of course, subject to due process limitations").

The Supreme Court's "decisions emphasize the fundamental nature of the general rule that a litigant is not bound by a judgment to which she was not a party." *Taylor*, 553 U.S. at 898. But that is what Plaintiffs propose in asking the Court to "adhere to all rulings in prior MDL Tracks." Although Plaintiffs' proposal purports to allow the PBM Defendants to *challenge* prior rulings, it improperly places an additional burden on the PBM Defendants to identify decisions and explain why the Court should "depart" from those prior rulings—when the PBM Defendants were not party to any of those decisions. That proposal disadvantages the PBM Defendants because the docket currently consists of over 5200 docket entries and Plaintiffs' years of litigating in the MDL would allow them to wield their preferred prior decisions in a one-sided manner. More importantly, the PBM Defendants cannot even identify the full universe of relevant rulings, given that many rulings are not on the docket, such as email decisions from Special Master Cohen. The PBM Defendants do not have access to these off-docket discovery rulings or, in many cases, even know they exist. Plaintiffs seek to bind the PBM Defendants to rulings they are not aware of, cannot find even through diligent research, and for which they had no opportunity to be heard.

12

Of course, if the parties wish to *cite* prior MDL decisions as persuasive authority in briefing on any motion, they are free to do so. But the Court may not place a greater burden on the PBM Defendants to prove that the Court should "depart" from a prior ruling that the PBM Defendants were not party to. Adopting Plaintiffs' footnote 2 would violate due process and sacrifice constitutional protections for the sake of Plaintiffs' convenience.

Date: November 21, 2023

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Boone* <br> Brian D. Boone <br> **ALSTON & BIRD LLP** <br> Vantage South End <br> 1120 South Tryon Street, Suite 300 <br> Charlotte, NC 28203 <br> Tel: (704) 444-1000 <br> brian.boone@alston.com <br><br> William H. Jordan <br> **ALSTON & BIRD LLP** <br> 1201 West Peachtree Street NW, Suite 4900 <br> Atlanta, GA 30309 <br> Tel.: (404) 881-7000 <br> bill.jordan@alston.com <br><br> *Attorneys for Defendant OptumRx, Inc.* | */s/ Jonathan G. Cooper* <br> Michael J. Lyle <br> Jonathan G. Cooper <br> **QUINN EMANUEL URQUHART & SULLIVAN, LLP** <br> 1300 I St. NW, Suite 900 <br> Washington, DC 20005 <br> Tel: (202) 538-8000 <br> mikelyle@quinnemanuel.com <br> jonathancooper@quinnemanuel.com <br><br> *Attorneys for Defendant Express Scripts, Inc.* |

13