1              IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
2                 EASTERN DIVISION AT CLEVELAND

3       ------------------------------X
        IN RE:                        :   Case No. 1:17-md-2804
4                                     :
        NATIONAL PRESCRIPTION          :   *(Pages 1 - 26)*
5       OPIATE LITIGATION             :
                                      :   *December 1, 2023*
6                                     :
        ------------------------------X
7

8

9           TRANSCRIPT OF <u>TELEPHONIC STATUS CONFERENCE</u>

10        HELD BEFORE THE HONORABLE DAN AARON POLSTER

11            SENIOR UNITED STATES DISTRICT JUDGE

12

13

14    Official Court Reporter:

15                      Donnalee Cotone, RMR, CRR, CRC
                        Realtime Systems Administrator
16                      United States District Court
                        801 West Superior Avenue
17                      Court Reporters 7-189
                        Cleveland, Ohio 44113
18                      216-357-7078
                        donnalee_cotone@ohnd.uscourts.gov
19

20

21

22

23

24    Proceedings recorded by mechanical stenography; transcript

25    produced by computer-aided transcription.

```
1    APPEARANCES:

2


3    For Plaintiffs' Executive Committee (PEC):

4                              PETER H. WEINBERGER, ESQ.
                              Spangenberg, Shibley & Liber LLP
5                              1001 Lakeside Avenue, Suite 1700
                              1900 East Ninth Street
6                              Cleveland, OH 44114
                              216-696-323
7
     For OptumRx, Inc:
8                              BRIAN D. BOONE, ESQ.
                              Alston & Bird LLP
9                              Suite 300
                              Vantage South End
10                             1120 South Tryon Street
                              Charlotte, NC 28203-6818
11                             704-444-1106

12   For Express Scripts:
                              PATRICK J. KING, ESQ.
13                             Quinn, Emanuel, Urquhart &
                              Sullivan LLP
14                             Suite 500
                              711 Louisiana Street
15                             Houston, TX 77002
                              713-221-7222
16

17
     ALSO PRESENT:            David Cohen, Special Master
18

19                               - - - - -

20

21

22

23

24

25
```

1                MORNING SESSION, FRIDAY, DECEMBER 1, 2023

2                  (Proceedings commenced at 8:32 a.m.)

3                              -  -  -

4                THE COURT:  All right.  Good morning.

08:32:16  5        Do we have everyone on that we need?

6                JUDICIAL ASSISTANT:  It's difficult to take

7       attendance because there's so many.  But they will identify

8       themselves before they talk.  And the court reporter is on.

9                THE COURT:  Okay.  All right.  Well, this is a

08:32:32 10      telephonic status conference in the Opioid MDL with the

11      lawyers involved in the four PBM bellwethers.

12          The parties have submitted proposed case management

13      orders.  They agree on some things, disagree on a number of

14      them.  Before I just decide what we're going to do, I

08:32:54 15      thought it would be helpful to have a conversation.  I've

16      got a few questions, and then I'll let people speak.

17          All right.  The first question I have, lawyers for the

18      PBMs had said some time ago they plan to file motions to

19      disqualify some plaintiffs' counsel in these bellwethers.

08:33:24 20          Is that still something under consideration, and if

21      so, I'm going to set a very prompt, you know, schedule to

22      file those and have responses and replies.

23                MR. BOONE:  Your Honor, this is Brian Boone

24      from Alston & Bird for OptumRx.

08:33:39 25          The answer is yes, we still intend to move to

1    disqualify certain counsel and stand ready to do so on your

2    schedule.

3            THE COURT:  All right.  Well, look, Brian,

4    this is -- I strongly suggest -- I don't know, are -- if

08:33:54   5    clients are on.  I think in the future -- if they're not, I

6    think in the future anytime I have a conference or a

7    hearing, we should have client reps from both sides.  This

8    should be a decision your clients make because there will be

9    ramifications if you file this motion -- or these motions,

08:34:18  10    whatever I end up doing.

11        I've been managing this litigation for, I don't know,

12    at least almost six years, and it only works -- we've got

13    the best lawyers in the country.  It only works if the

14    lawyers can at the same time vigorously represent their

08:34:41  15    clients, but also cooperate in moving this litigation

16    forward.  And we've been able to do that.

17        Your clients need to understand if they file these

18    motions, it will be very difficult to maintain that level of

19    professional cooperation, and that will clearly have

08:35:08  20    negative repercussions for your clients.  I don't need to

21    spell it out.  But if they're not listening, you ought to

22    explain to them exactly what I mean.

23            MR. BOONE:  Understood, Your Honor.

24            THE COURT:  We just went through, in my

08:35:25  25    opinion, a needless exercise that just consumed private

1    resources and judicial resources.  So they should think long

2    and hard before filing these motions.  If they do, we'll

3    deal with them.  They're not going to delay this case one

4    iota.  We'll be litigating that alongside of litigating the

08:35:49  5    merits of the case.  And all the lawyers you're seeking to

6    disqualify will be litigating and doing whatever they need

7    to do.  We're not going to delay, you know, how these court

8    case are going to proceed by one minute.  And all it's going

9    to do is make everything that everyone needs to do a lot

08:36:08 10    more difficult and complicated in the months ahead.  But

11    that's your decision to make, so --

12                    MR. KING:  Judge --

13                    THE COURT:  Yes.

14                    MR. KING:  Judge, sorry.  This is Patrick King

08:36:19 15    for Express Scripts.

16         Just for the record, on behalf of Express Scripts, as

17    things currently stand, we don't intend to file any motions

18    for disqualification, but would reserve our right to do so

19    later based upon new information.

20                    THE COURT:  All right.  Well --

21                    MR. BOONE:  And, Judge, this is Brian Boone

22    again for OptumRx.

23         Understood.  I'll pass along your message.  I'm not

24    sure if the client rep is on this morning.

08:36:46 25         And just to give you some sense, we're not intending

1    to move to disqualify the entire PEC.  For instance, we

2    would move to disqualify certain counsel who we think have

3    clear, ethical conflicts.  So -- and we understand that

4    we're going to be litigating apace alongside those motions.

08:37:03  5    THE COURT:  All right.  Well, again, I think,

6    Brian, you should really discuss this with your client,

7    particularly since the other defendant is not joining,

8    whether this is a wise thing to do.

9    All right.  This is what I'm going to do.  If -- only

08:37:19 10    motions to disqualify are to be filed by two weeks from

11    today.  That's the 15th.  I'm not suggesting -- in fact, I'm

12    encouraging you not to, but if you're going to file them,

13    that's the deadline.

14    Given the holiday, I'll give the plaintiffs longer

08:37:42 15    than normal to respond.

16    Why don't -- how's January the 10th to respond?

17    MR. WEINBERGER:  Your Honor, this is

18    Pete Weinberger.

19    That's fine for us.

08:38:07 20    THE COURT:  All right.  And then I'll give ten

21    days for reply, which would be January the 20th.  And, you

22    know, there may need to be discovery, and if so, we'll map

23    that out.  I'll -- I guess that will depend on what the

24    plaintiffs say in their response.  But you should address

08:38:29 25    whether, you know, you think you need discovery and what

1    that would be.  And I typically -- if I think there's any

2    question whether discovery is needed to decide a motion,

3    I'll usually allow it, so . . .

4        Okay.  All right.

08:38:45  5        JUDICIAL ASSISTANT:  Judge, are you expecting

6    these deadlines to be at noon or at the end of the business

7    day?

8        THE COURT:  Yeah, let's make it at noon.

9    That's probably a good idea for everything.

08:39:01  10        All right.  The second thing, it would be helpful for

11   me to know.  I know the plaintiffs are going to -- we need

12   to set a deadline for filing amended complaints.  Whether

13   the -- I don't know if the parties specifically addressed

14   that.

08:39:21  15        When are the plaintiffs planning to file -- I assume

16   you are filing amended complaints.  When do you -- well, it

17   would be a motion for leave to file, all right?

18        I've already said, you know, I'm going to allow the

19   filing of amended complaints.  Whether I'll allow any

08:39:37  20   particular amendments depends on the objections.  I'll have

21   to rule on them.  But we'll do it with formality.

22        When are you going to file your motion for leave to

23   amend and attach the amended complaints?

24        MR. WEINBERGER:  Your Honor, Pete Weinberger,

08:39:51  25   again.

1    December 15th.

2         THE COURT:  Okay.  All right.  I don't know,

3    maybe I'll set the same schedule -- the same schedule for

4    the other -- the other seems as good as anything.  So we'll

08:40:10  5    make it -- unless the PBMs think that's not enough time.

6    You tell me.

7         This would be objecting -- what I want to see is

8    objection to the contents of the amendments.  I guess you

9    can in effect -- the literal fact that they're amending, but

08:40:33 10    in my opinion, the Sixth Circuit has already made clear that

11    amendments are permitted -- some amendments are permitted

12    for bellwethers.

13         MR. BOONE:  This is Brian Boone again,

14    Your Honor, for OptumRx.

08:40:44 15         That makes sense to me, the schedule that you

16    proposed.  So that would mean that our oppositions would be

17    due January the 10th; is that right?

18         THE COURT:  Right.  Right.  If that's okay,

19    we'll be -- it will be easier.  Everyone can remember the

08:40:56 20    same dates.  So noon on December 15th; January 10th the

21    responses; replies, January 20th.  And then I'll work on

22    them.

23         I assume the plaintiffs have a pretty good idea of

24    what cause or cause of action they're going to allege.  It

08:41:19 25    might be helpful if we know that.  If you haven't decided,

1    well, then, we'll wait to see the amended complaints,

2    proposed amended complaints.

3                    MR. WEINBERGER:  Your Honor, we're still in

4    the drafting stage.

08:41:35  5                    THE COURT:  Okay.

6                    MR. WEINBERGER:  And they're working

7    diligently on that.  And so I would hesitate to --

8                    THE COURT:  Okay.  That's fine.

9                    MR. WEINBERGER:  -- to make a presentation.

08:41:45 10                    THE COURT:  All right.  Then it was more a

11    question.

12         Well, the one thing -- the one critical issue that I'm

13    sure we're going to have to address if the -- if the

14    plaintiffs are proposing to add what I'm going to call

08:42:15 15    dispensing, pharmacy dispensing claims, the kind of claims

16    that we had in Track 3 against Walmart, Walgreens, CVS,

17    inadequate suspicious order monitoring systems, that was the

18    heart of the pharmacy bellwether trial.

19         I know these PBMs both operate mail-order pharmacies

08:42:38 20    as part of their business.  The current complaints against

21    them don't allege anything with respect to their mail-order

22    pharmacy business.

23         I really do not want, and never envisioned that these

24    bellwethers against the PBMs would turn into pharmacy -- to

08:43:00 25    replicate the pharmacy trials.

1          I'm concerned that if the plaintiffs add those claims,

2     the defendants are going to want to bring in as third-party

3     defendants all of the pharmacies, the major pharmacies.

4     Those three have already entered into global settlements

08:43:21  5     nationwide, and maybe many others, and the trial is going to

6     be unworkable or unmanageable.

7          So I just want the plaintiffs to think about that.

8     And if you're proposing to do that, you've got to put in

9     your filing why it's essential to do it and how you would

08:43:43 10     propose to manage the trial.  Because I have great -- I

11     really don't think it's -- I think it potentially could make

12     the trials unmanageable.  And that doesn't serve anyone's

13     purpose.  So that's something for the plaintiffs to think

14     about.

08:44:04 15               MR. WEINBERGER:  Your Honor, can I just

16     respond for a second?  This is Pete Weinberger again.

17               THE COURT:  Yes.  Yes.

18               MR. WEINBERGER:  Yes.  We're looking at that

19     issue very seriously, and just to clarify for the record, it

08:44:17 20     has to do with the -- not so much with suspicious

21     monitoring, suspicious order monitoring, which is really a

22     distribution type claim.  But rather, it has to do with

23     their corresponding responsibility under the CSA as a

24     dispenser.

08:44:36 25          And, of course, as the Court is aware, there have been

1    discussions in the past with the Court and with the parties

2    about the issue of a duty.  What is the duty of the PBMs and

3    their knowledge through their dispensing practices of their

4    corresponding responsibility, and what was happening in this

08:45:04  5    country with respect to dispensing issues associated with

6    all the dispensers goes to their -- to their knowledge, and

7    the foreseeability of their conduct as a whole as PBMs.  I

8    don't mean --

9                THE COURT:  Well, that's a separate question.

08:45:23 10    I just want to -- I don't want to interrupt, but

11    that's a separate question, and there would be an ability to

12    conduct discovery pertaining to dispensing practices -- with

13    respect to knowledge learned without actually alleging that

14    the PBMs dispensing practices themselves either were part of

08:45:48 15    a RICO conspiracy or contributed to a public nuisance or

16    whatever other theory the plaintiffs have.  All right?

17    I understand that knowledge obtained through a portion

18    of their -- of their business can go -- you know, knowledge

19    is knowledge, and it can go to other aspects of what they

08:46:10 20    do.  That's different than specifically alleging -- well, as

21    we had in Track 3, that the pharmacies breached their duty

22    of care and their corresponding duty with respect to every

23    time you fill a prescription.  And the pharmacist has a

24    corresponding duty with the medical professional on each and

08:46:35 25    every prescription that's dispensed.  That was the heart of

1    the Track 3.

2        So, again, that's something that you should think

3    about when you're drafting it.  I am just concerned that if

4    there are specific claims, dispensing claims, breach of a

08:46:52  5    corresponding duty when the PBMs dispensed all their

6    millions of prescriptions, we're going to -- this is going

7    to morph back into Track 3, and it potentially would be

8    unworkable.  So that's just something to think about.

9            MR. BOONE:  Your Honor, this is Brian Boone

08:47:13 10    again from Alston Bird for OptumRx.

11        You're right.  And if the plaintiffs want to add

12    dispensing claims against the PBMs mail-order pharmacies, we

13    will want to bring in other pharmacies as defendants.  And

14    that's going to be a whole lot of complication for no

08:47:29 15    payoff.  Because I can tell you -- and I'm speaking for

16    OptumRx here.  I don't have the exact numbers, but we're

17    talking about maybe a .3 percent market share.  Not

18    3 percent, .3 percent.  We're talking about hundreds of

19    prescriptions, not thousands, over the course of a decade.

08:47:44 20    So not the millions that you were envisioning.

21            MR. KING:  And Your Honor, this is Patrick

22    King for Express Scripts.

23        Similarly, we have less than 1 percent market share in

24    each of these bellwether jurisdictions.  And just by way of

08:48:00 25    example, in the city of Rochester, there are dozens of

1    pharmacies with larger market share than the Express

2    Scripts' mail-order pharmacies.

3         So I think the problem here you flagged is that by

4    including dispensing claims, it would dramatically expand

08:48:17  5    the scope of these bellwethers.

6              THE COURT:  Well, and that's -- I envision

7    that, and I'm not sure that's a wise thing to do.  But,

8    again, they -- if they're -- even if we don't have formal

9    dispensing claims in the case, that doesn't mean the

08:48:39  10    plaintiffs can't get discovery as to what the PBMs did as

11    mail-order pharmacies, and what they may have learned while

12    they were doing it, and whether that knowledge bears on

13    other claims.

14         So I see that -- I see this as two distinct issues.

08:48:59  15    One is formal claims in the case, and the second is the

16    scope of discovery.  So that's just --

17              MR. WEINBERGER:  Your Honor, this is

18    Peter Weinberger.

19         Not to prolong this discussion, -- and we certainly

08:49:18  20    will address this for our motion for leave -- I just want to

21    remind the Court that in CT3, in Track 3, as well as in some

22    of the other litigation, we've addressed the fault of

23    nonparties.  If you recall, in CT3, you allowed evidence in

24    about market shares associated with independent pharmacies

08:49:42  25    without bringing them in as defendants.

1              And then the other point I want to make is that --

2       and, you know, I think this is down the road once you make a

3       ruling on the amended complaints -- is that this information

4       that they're providing you about their -- the number of

08:50:05 5      scripts that they actually dispensed and their small market

6       share, I think, is going to have to be the subject of

7       discovery.

8              I mean, I think we're going to be --

9                    THE COURT:  Well, I know.  I --

08:50:17 10                   [Simultaneous crosstalk.]

11                   MR. WEINBERGER:  -- the dispensing data, so

12      that we can sort through that and determine what they're

13      saying about their market share is, in fact, true.

14             But, again, I think that's for another day, but I just

08:50:29 15     wanted to put that on the record.

16                   THE COURT:  Well, understood.

17             And I had -- in Track 3, the three major pharmacies

18      had the ability, had they wished to bring in other

19      defendants, they chose not to.  But the trial would have

08:50:44 20     been a lot of more complicated had they brought them in.  We

21      certainly wouldn't have gotten it done in the six weeks that

22      we did, so . . .

23             All right.

24                   MR. BOONE:  Your Honor, this is Brian Boone

08:50:55 25     for OptumRx.

1          If I can just add one thing.  And I understand that

2      you're saying that there's going to be discovery about the

3      PBMs mail-order pharmacies.  And that's fine.  But it really

4      is going to show that in each of these bellwether

08:51:10  5      jurisdictions, we're talking about a tiny, tiny market

6      share, almost vanishing.

7                    THE COURT:  Well --

8                    MR. WEINBERGER:  And I -- but I think it's

9      important to note, Your Honor -- and, again, this is for

08:51:20 10      down the road -- this goes to the issue of the scope of

11      discovery.  And we've -- which we litigated in front of

12      Special Master Cohen extensively.  And I would suggest to

13      you that it will be our position that since we're talking

14      about knowledge in the first instance and knowledge related

08:51:42 15      to their duties as dispensers under the CSA, our position is

16      we're not going to be limited to the dispensing statistics

17      or data just for bellwethers.  But rather, I think we're

18      going to be -- we should be entitled to see what were their

19      dispensing numbers across the country because that relates,

08:52:04 20      again, to their overall knowledge of how inadequate

21      corresponding responsibility systems can lead to the opioid

22      epidemic.  So --

23                    THE COURT:  Well, that -- look, I'm going

24      to -- we addressed in prior bellwethers, the scope of

08:52:26 25      discovery, and, you know, parties should look at my prior

1    rulings.  There're going to be some issues where discovery

2    is going to be potentially nationwide, and others where it's

3    going to be local to the jurisdictions -- you know, the

4    geographic area of each of these four bellwethers.  And so

08:52:49  5    we'll have to address that.  All right?

6         So we've done that in prior cases, and we'll do that

7    here.  Where there's a good reason to make it broader, it

8    will be broader, and when there is not, it won't be.  And

9    I'll consider, you know, burden and costs as well.

08:53:10  10         So, you know, the parties should be meeting and

11    conferring on that, and ultimately use Special Master

12    Cohen's help.  And if there's a serious dispute, I'll have

13    to decide it.

14         And that leads to another thing.  There was a, you

08:53:27  15    know, back and forth from the parties' proposals about the

16    effect of prior rulings, court rulings in the MDL.

17         The PBMs were not party to any of these, you know --

18    the motions, the briefing, the argument, the decisions.  So

19    they're not technically bound by them.  But on the other

08:53:51  20    hand, they're there.  And I think the fairest thing should

21    be that if the same issue comes up, that the PBMs should

22    make a showing as to why my ruling was wrong, or that the

23    facts with respect to them are different and so the rulings

24    should be different, either to say, you know, they'll get a

08:54:21  25    crack at saying that my ruling was wrong if they didn't get

1   a crack at it the first time.  And I don't think it would be

2   fair for me to say, well, too bad.  They get a crack to show

3   why it was wrong, or to say, you know, whether you were

4   right or wrong, the facts with respect to defendant X or Y

08:54:41  5   is not the same as the facts with us.  And so the ruling

6   with respect to us should be different.  So I think that's

7   the way we'll deal with those.

8        With respect to motions *in limine*, my view is that

9   decisions on motions *in limine* -- because those are trial

08:55:03 10   rulings -- those will be made by the transferor court, not

11   by me.

12        *Daubert* and summary judgment, my inclination now is to

13   keep those and make those.  But since we're more than a year

14   off, I really don't need to make that decision now, and

08:55:23 15   if -- I mean, I -- and for prior bellwethers, I -- you know,

16   I guess for some I didn't and some I did.

17        So my inclination, I think it's -- I think I had more

18   capacity and experience, and it would be a -- certainly

19   relieve the burden on my four colleagues around the country

08:55:44 20   if I do those with my team.  But it's well over a year off,

21   and if I think at that time that it's better to let some or

22   all of them go to the transferor courts, I'll do that.

23             MR. BOONE:  Your Honor, this is Brian Boone

24   again for OptumRx.

08:56:07 25        Could we just go back briefly to your prior rulings?

1    And I heard what you said.  One of the things that we're

2    struggling with is we haven't been part of the MDL, and we

3    don't know what we don't know, and we understand that there

4    are lots of rulings that are not on the docket.

08:56:23  5              THE COURT:  I'm not worried about the

6    discovery rulings, Brian.  I'm worried about, you know,

7    rulings on motions to dismiss, or substantive rulings that

8    are published.  I'm not expecting you to try and pour

9    through transcripts or millions of orders that aren't

08:56:41 10   published, all right?  I can't imagine those are going to be

11   significant.

12              MR. BOONE:  Thank you, Your Honor.

13              THE COURT:  But I'm talking about the, you

14   know, the published rulings that were made after thorough

08:56:53 15   briefing.  Everyone knows what they are.

16        Again, you weren't part of it.  So I don't think it's

17   fair for me to say, well, they apply to you, and that's

18   that.

19        But on the other hand, they're there, and I think if

08:57:08 20   the same issue comes up, then you've got a -- you know, you

21   get a crack at showing me why I was wrong a year or two or

22   three years ago, or, of course, to say, well, the facts with

23   respect to us are different, and here's why, and so the

24   rulings should be different because, you know, it's like

08:57:29 25   distinguishing any case.

1    And, again, you know, Special Master Cohen worked

2    through lots and lots of discovery issues.  And, again, I

3    mean, the reason why I want the PBMs to think long and hard

4    about, you know, motions to disqualify, is that once you

08:57:51  5    start -- I don't know how to put it -- potentially poisoning

6    the professional relationship among counsel, the whole

7    enterprise deteriorates.  And that doesn't benefit anyone.

8    So that's why I want you to think long and hard before

9    going down that road.  Because this enterprise has only gone

08:58:18  10   as well as it has because we've had the best lawyers in the

11   country, and they have 99.9 percent of the time worked very

12   well professionally while still vigorously, very vigorously

13   representing their respective clients.  And that's the only

14   reason this MDL is still standing.  It's not -- you know,

08:58:43  15   yeah, I'll give myself a little credit, and I'll give my

16   team even more credit, but mostly, it's the lawyers.  And so

17   I'm just worried about disrupting that.

18   So those were the things I had.

19   Special Master Cohen, did I leave anything important

08:58:59  20   off that you think we should raise?

21   And then, obviously, if the parties have anything that

22   they want to raise, that's fine.

23        SPECIAL MASTER COHEN:  I had to take myself

24   off mute.

08:59:16  25   No.  I don't think there's anything else.  We may have

1    some other discussions with the parties on some fine

2    details, but I think you got the major points.

3              THE COURT:  I wanted to cover a few major

4    things.

08:59:28  5         So anything from the two PBMs or the plaintiffs that

6    you want to add or put in?

7              MR. WEINBERGER:  Yes.  This is Pete Weinberger

8    on behalf of the plaintiffs.

9         But I'll wait for the PBMs, if you want to step in

08:59:47 10   first?

11             MR. BOONE:  This is Brian Boone for OptumRx.

12        I don't have anything else today, Your Honor.

13        Thanks.

14             THE COURT:  All right.  Thank you, Brian.

08:59:59 15            MR. KING:  Yes.  And this is Patrick King for

16   Express Scripts.

17        I don't believe I have anything else subject to what

18   the plaintiffs may have.

19             THE COURT:  Okay.

09:00:07 20            MR. WEINBERGER:  Then I'm back on the record.

21             THE COURT:  Okay.

22             MR. WEINBERGER:  This is Pete Weinberger,

23   again, for the plaintiffs.

24        A couple of things, Your Honor.  I take it from your

09:00:14 25   discussion that with the schedule that you laid out,

1    particularly with respect to the motion for leave to file

2    the amended complaint, that we'll then have discussions with

3    Special Master Cohen about, you know, fitting into a CMO the

4    usual scheduling of discovery, et cetera, as opposed to

09:00:41  5    entering that now.

6                 THE COURT:  Well, I'm not -- I'm going to --

7    I'm going to -- now that we've had this discussion, Pete,

8    I'm going to sit down with Special Master Cohen and my team

9    and see if we can put -- you know, if it makes sense to put

09:00:58 10    some things together now, or I think some may be able to,

11    but some, candidly, are going to wait to see what exactly

12    you're proposing your claims to be and to wait and see what

13    the -- you know, what the PBMs respond.

14                 MR. WEINBERGER:  Okay.  That's --

09:01:16 15                 THE COURT:  So we're going to -- we're going

16    to start -- we're going to start working and put something

17    together.  And I expect there will be something -- something

18    issued.  But it certainly -- things may change depending

19    on -- I mean, at this point, no one knows what -- what, if

09:01:36 20    any, additional claims are going to be allowed, all right?

21        I think -- we don't know what claims, additional

22    claims or new claims or substituted claims you're going to

23    propose, and then I don't know what the PBMs are going to

24    say in response and what I'm going to rule.

09:01:54 25                 So some of this is still in the air, but I think some

1    things we can probably put in place.

2              MR. WEINBERGER:  Understood.  Again, Pete

3    Weinberger.

4         What we would like to do to sort of move things along

09:02:12  5    and to ripen any disputes that we may have on discovery is

6    to issue an initial set of interrogatories and request for

7    production of documents.

8         Obviously, under the rules, there's, you know, time to

9    respond.  And by the time we get -- you know, we put that

09:02:30 10    together and get it on -- get it over to the defendants, you

11    know, I think we're going to be, you know, well past the

12    time frame for filing a motion for leave and for responses.

13         But we want -- we are working on discovery requests,

14    and we'd like to get them on record so that we can start the

09:02:56 15    process of having the defense look at them, to do a meet and

16    confer with them, and, obviously, some will be subject to

17    how you rule on the amended complaints.  But we'd like to

18    issue that, you know, relatively soon and are interested in

19    your feedback on that.

09:03:19 20              THE COURT:  Well, I'm curious, Pete, how you

21    can file those before you even file your motion for leave to

22    file amended complaint.  Because at the moment -- I mean,

23    the only claims you have are the ones that exist in

24    the complaints that were filed maybe years ago.  I haven't

09:03:41 25    even looked at --

1           MR. WEINBERGER:  Right.

2           THE COURT:  So don't you at least have to

3     file -- I mean, you know, leave to amend with your proposed

4     amended complaints, you can say, look, this is -- these are

09:03:55  5     the claims we're planning to bring -- we want to bring, and

6     maybe then you can propound some discovery.  I don't see how

7     you can propound discovery before those are filed.

8           MR. WEINBERGER:  Well, that -- well, I mean,

9     as we've indicated, that we're going to get those motions on

09:04:10 10     file by December 15th.  And I was -- what I'm suggesting --

11     and maybe I should have been clearer about this -- is that

12     certainly by the end of the year, we can get our basic

13     discovery out.  And --

14           THE COURT:  All right.  Well, I don't have a

09:04:24 15     problem with your -- I mean, unless there's a strong

16     objection, you can propound it, but you've got to, you know,

17     you've got to allow enough time, I mean, because -- you

18     know, it may be that all of the claims you want to bring, I

19     don't allow you to bring.  And that may affect the

09:04:41 20     discovery, so . . .

21       But I think some of it is going to be basic enough

22     that it's clearly going to be -- will clearly be necessary.

23           MR. WEINBERGER:  Yeah --

24           THE COURT:  So I don't have --

25           MR. WEINBERGER:  -- that's what I was

1    thinking.

2                    THE COURT:  So I don't have a -- I don't have

3    a problem with your propounding initial discovery after you

4    file the motion for leave to amend.

09:05:07  5                    MR. WEINBERGER:  Okay.  Thank you.

6         And then one other issue, and it is getting into the

7    weeds a little bit, but as the Court is aware,

8    Special Master Cohen issued discovery ruling 22, and we

9    have been getting documents from Optimum and from Express

09:05:26  10   Scripts per that ruling, principally from litigation that's

11   occurred in Jefferson County, Missouri.

12        We want to remind the defendants on the record that

13   the discovery ruling number 22 is broader than just, you

14   know, private litigation, but encompasses governmental

09:05:51  15   investigations, and specifically, Congressional

16   investigations.

17        And, you know, I think it's public that the PBMs have

18   been subjected to Congressional investigations regarding

19   their practices, and we just want to remind -- and from our

09:06:15  20   review of the documents, we have not been getting any

21   documents associated with those Congressional

22   investigations.

23        I realize that the ruling talks about opioid-related

24   investigations, and -- but the fact is that we believe the

09:06:37  25   investigations that have occurred are broad enough to

1    include opioid -- their conduct vis-à-vis opioid scripts and

2    formularies associated with opioids.  And we just wanted to

3    put on the record to remind the defendants that DR22

4    encompasses that.

09:07:02  5        And that's all I have, Your Honor.

6            Thanks.

7                THE COURT:  All right.  Well, thanks to

8    everyone.  Again, I appreciate all the hard work in the

9    respective filings.  And it's my job to get these four

09:07:16  10   bellwethers moving forward.

11           And my -- they have a dual purpose.  We're getting

12   them ready for trial, so if we need trials, one, two, three,

13   or four, they'll be efficient, productive, and informative.

14   But, of course, I hope that the knowledge that each side

09:07:41  15   gets in the many months ahead might inform the possibility

16   of settlement, which is -- that's why we have these two

17   tracks going simultaneously, litigation and settlement, and

18   it's worked pretty well so far.

19           So I wish everyone a good holiday, and thank you for

09:08:03  20   your input today.

21                MR. WEINBERGER:  Thank you, Judge.

22                MR. BOONE:  Thank you, Your Honor.

23                        - - -

24           (Proceedings adjourned at 9:08 a.m.)

25

1                          **C E R T I F I C A T E**

2

3            I certify that the foregoing is a correct transcript

4      from the record of proceedings in the above-entitled matter.

5

6

7      */s/ Donnalee Cotone            1st of December, 2023*
       DONNALEE COTONE, RMR, CRR, CRC                     DATE
8      Realtime Systems Administrator

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25