UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** ) | MDL 2804 |
| ) | |
| ) | Case No. 1:17-md-2804 |
| **THIS DOCUMENT RELATES TO:** ) | |
| ) | Judge Dan Aaron Polster |
| *PBM Bellwether Cases* ) | |
| ) | **ORDER RESOLVING DISPUTES** |
| ) | **REGARDING PROPOSED CMO** |

On November 21, 2023, the PBMs and the Plaintiffs in the PBM bellwether cases submitted position papers describing various disputes over provisions in their proposed case management orders. On December 1, 2023, the Court met with the parties and resolved some of the top-level disputes. With this Order, the Court resolves several more disputes and provides guidance the parties should use to resolve their remaining differences. The parties are directed to continue to meet and confer, incorporate the directives below, seek assistance from Special Master Cohen, and resubmit a joint case management order for the Court's review (identifying any remaining disputes) by **3:30 p.m. on Thursday, December 21, 2023**.

**Rulings Made During the December 1 Teleconference**

1. If either PBM defendant chooses to file a motion to disqualify plaintiffs' counsel, it must do so no later than **12:00PM on Friday, December 15, 2023**. Plaintiffs shall file a response by **12:00PM on Wednesday, January 10, 2024**. The PBMs may file a reply by **12:00PM on Monday, January 22, 2024**.[1]

---

[1] During the teleconference, the Court inadvertently directed replies to be filed on January 20, 2024, which is a Saturday. The reply may, instead, be filed on the following Monday.

2. Plaintiffs shall: (a) file motions for leave to file their amended complaints in the PBM bellwether cases, and (b) attach their proposed amended complaints to the motions for leave. Plaintiffs shall file their motions no later than **12:00PM on Friday, December 15, 2023**. The PBMs shall file a response by **12:00PM on Wednesday, January 10, 2024**. Plaintiffs may file a reply by **12:00PM on Monday, January 22, 2024**.[2]

3. The Court agreed with the PBM Defendants that they are not bound by prior rulings to which they were not a party. However, the Court intends to rely heavily on its prior rulings. So, if a similar issue comes up, the PBMs shall not simply reassert the same arguments made by prior defendants in this MDL. Instead, PBMs should file a simple statement that they adopt those arguments in order to preserve the record for appeal. If the PBMs have *new* arguments that are meaningfully different from those raised earlier and resolved in prior Court rulings, the PBMs may make them.

The Court also recognized that the PBMs are differently situated than the prior categories of MDL defendant and are entitled to make a showing that the facts the Court relied on in making its prior rulings are sufficiently different with respect to the PBM defendants to warrant a different outcome.

4. The Court is inclined to rule on *Daubert* motions and motions for summary judgment prior to suggesting remand of the bellwether cases to the transferor courts. However, the Court declines to make a definitive decision at this time on which court will rule on those motions.

5. The Court does not intend to rule on motions *in limine*: trial-specific evidentiary rulings should be made by the trial judge. The Court will provide its prior evidentiary rulings to the trial court for that court's adoption or rejection as it deems appropriate. That said, this Court may make

---

[2] *See* footnote 1.

certain evidentiary rulings while addressing other pretrial motions that could control or impact subsequent motions *in limine*.

6. As discussed further below, the parties may and should begin propounding basic discovery after Plaintiffs' motions for leave to file amended complaints are filed on December 15, 2023.

**Case Track Designations**

To prevent confusion and maintain consistency with prior bellwether practice in this MDL, each bellwether case shall have its own track designation number. Plaintiffs have suggested Tracks 12, 13, 14, and 15. The Court thus adopts the following designations suggested by Plaintiffs:

*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 ("Track 12"),

*Lincoln County v. Richard Sackler, M.D.*, No. 20-op-45069 ("Track 13"),

*City of Independence, Missouri v. Williams*, No. 19- op-45371 ("Track 14"), and

*County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 ("Track 15").

Further, the Court concurs with and adopts the parties' agreement to prepare the first two cases for trial simultaneously, followed by the second two cases trailing the first two by 60 days.

**Previous Discovery**

As a general principle, discovery that Plaintiffs may seek in these PBM bellwether cases shall not be limited by discovery conducted in any other action, including the *Jefferson County* case.[3] However, Plaintiffs shall, as always, make best efforts to avoid duplicative discovery,

---

[3] *Jefferson County v. Dannie E. Williams. M.D., et al.*, Case No. 20JE-CC00029 (Twenty-Third Judicial Circuit, Missouri).

whether taken in state or federal court, and the CMO shall contain language reflecting this requirement.

**Timing of Motions to Dismiss**

PBMs must wait for the Court to rule on Plaintiffs' motions for leave to amend their complaints before PBMs can file motions to dismiss. Plaintiffs' proposed amended complaints will be available to the PBMs by noon on December 15, 2023. The PBMs shall have 30 days after the Court issues its ruling on the motions for leave to amend complaints to file their motions to dismiss.

Although they disagree on the precise dates, the parties generally agree that responses should be due 60 days after motions to dismiss are filed and replies should be due 30 days after responses. The Court accepts this briefing schedule.

The Court sees no reason at this time for a separate briefing schedule for jurisdictional motions to dismiss, different from 12(b)(6) motions. As soon as reasonably possible after the Plaintiffs file their proposed amended complaints, the parties should meet and confer regarding whether PBMs expect to file jurisdictional motions to dismiss; and if so, the extent to which jurisdictional discovery may be necessary and its appropriate scope. The parties should use the Court's February 24, 2020 Order Regarding Jurisdictional Discovery of Rite Aid (Docket no. 3180) to guide their discussions. As indicated below, normal fact discovery will continue during the pendency of any motions to dismiss.

**Answers**

The parties agree that answers to the operative complaints shall be filed 30 days after the Court rules on motions to dismiss. *Compare* PBM Proposed CMO (PBM Ex. 1) at 3, ¶D.5., *with* Plaintiffs Objection Chart (Plaintiffs Ex. A) at 3. The Court hereby adopts this agreement.

**Joinder of Third Parties**

PBMs suggest a deadline to join additional parties of 90 days after service of their answers. This is entirely too long. Plaintiffs suggest filing third-party complaints on the same day the PBMs' answers are filed. Although Plaintiffs' position is made more reasonable by their agreement to extend the deadline for filing answers from 10 days to 30 days, it is likely still too short. In the Pharmacy Bellwether Tracks, the CMOs very reasonably specify that "Defendants shall file any third-party complaints within fourteen (14) days after service of their answers." Docket no. 3817 at 4. The Court adopts this compromise position.

**Fact Discovery**

Although the parties will not have a full understanding of the operative allegations until the Court rules on Plaintiffs' motions to amend complaints, the Court does not want the initiation of discovery to wait until its ruling. Accordingly, the Parties may serve "Initial Document Discovery" at any time after the entry of this CMO. Initial Document Discovery shall proceed while motions to dismiss are pending, as follows. In Tracks 12 and 13, the two Plaintiffs collectively may serve up to 45 requests for production and up to 45 interrogatories on each Defendant. In Tracks 12 and 13, Defendants collectively may serve up to 35 requests for production and up to 35 interrogatories on each Plaintiff.[4] The parties may seek leave to propound

---

[4] These numbers are not equivalent based on past practice in prior Tracks, where Plaintiff subdivisions in successive tracks each received leave to propound an additional 35 interrogatories and requests for production on the "same" defendants, while defendants in successive tracks received leave only to propound 35 interrogatories and requests for production on "different" plaintiffs. *See* Case Management Order One at 16, ¶9.l.i–ii (docket no. 232) ("the PEC may serve up to 35 Requests for Production and up to 35 Interrogatories on each Defendant Family in cases in Track One ***and subsequent Case Tracks*** identified pursuant to paragraph 3. . . . Each group of Defendants named in a case (*e.g.*, the Manufacturer Defendants, the Distributor Defendants, and the Retail Pharmacy Defendants) may serve up to 35 Requests for Production and up to 35 Interrogatories on each Plaintiff in cases in Track One and subsequent Case Tracks identified pursuant to paragraph 3.") (emphasis added). Paragraph 3 of CMO-1 contemplated "additional case tracks" that "involve[d] cases from the state and tribal jurisdictions identified in paragraph 2 (which included Ohio, Illinois, West Virginia, Michigan, and Florida).

additional requests for production and interrogatories after the Court rules on the motions to amend complaints.

> The Court also adopts the PBMs' paragraph E.1.i:
>
> **February 1, 2024** – The Parties shall meet and confer regarding the PBM data to be produced for all four PBM Bellwether cases, including data fields and geographic scope.
>
> The Court further adopts Plaintiffs' paragraph F.2:
>
> **March 1, 2024** – Defendants shall provide to Plaintiff a list of data fields included in their claims data, rebate and administrative fee data, and mail order pharmacy dispensing data, along with data dictionaries or other available descriptions of each field.
>
> The parties shall meet and confer regarding the data fields to be produced from each data set. The parties shall work with Special Master Cohen to address any disagreements. Any motions regarding the production of particular data fields shall be submitted to Special Master Cohen by **March 15, 2024**.

The parties' proposals diverge wildly after these initial dates. For example, Plaintiffs suggest about 60 days between: (1) raising any disputes about particular data fields with Special Master Cohen, and (2) PBMs producing claims, rebate, administrative fee, and dispensing data (*i.e.*, March 15 to May 16, 2024). PBMs suggest something closer to 144 days (*i.e.*, March 15 to August 6, 2024). The Court grants 90 days for PBM data production.

Similarly, the PBMs propose Plaintiffs identify prescriptions that allegedly caused their harm within 21 days of the PBMs' data production. Plaintiffs propose approximately 60 days to make that identification. The Court grants Plaintiffs 45 days to identify those prescriptions.[5]

---

[5] The parties are free to negotiate agreement to different data production deadlines. If they cannot do so, however, the deadlines listed above will adhere. To the extent possible, the parties will "roll out" data production, rather than wait and produce it all at once.

The parties agree that March 1, 2024, is an appropriate date to identify document custodians. *Compare* PBM Proposed CMO at 4, ¶E.4 *with* Plaintiffs Proposed CMO at 4, ¶3. Thus, the Court adopts that date for identification of custodians.

Finally, Plaintiffs propose that custodial document production must commence by April 15, 2024. The PBMs' proposed CMO is silent on the commencement of custodial document production. Accordingly, the Court adopts Plaintiffs' paragraph F.4.

**Depositions**

The Court recognizes at the outset that the PBMs are differently situated than the Manufacturer, Distributor, and Pharmacy defendants. The PBMs concede they have a lot of complicated data, as Special Master Cohen recognized. *See* PBMs Position Statement at 7 ("the PBM Defendants' CMO would set earlier deadlines for discussions about data and allow more time to produce data given the ***complexity***, ***volume***, and sensitive health information at issue.") (emphasis added).

Regarding the number of depositions Plaintiffs can take of defense witnesses, in the Pharmacy Bellwether tracks Plaintiffs were given 25 depositions of defense witnesses for "new" defendants (*i.e.*, defendants in those case tracks who had not been in Track Three). Here, the PBMs qualify as new defendants. PBMs provide no rationale for a smaller number of depositions. Accordingly, Track 12 and 13 Plaintiffs collectively may take 25 depositions of each PBM defendant.  The Court will consider motions for leave to take additional depositions for good cause.

Similarly, in Track Eight, upon which PBMs base their proposed CMO, Defendants, collectively, were allowed to take 35 depositions of Plaintiffs. *See* docket no. 3817 at 6, ¶E.3. The PBMs propose taking 30 depositions of each Plaintiff, which is reasonable given this Court's past

7

practice, and is granted.  Again, the Court will consider motions for leave to take additional depositions for good cause.

As stated previously, Plaintiffs are not limited by what discovery took place in other cases. The Court adopts Plaintiffs proposed language in paragraph G.5 of Plaintiffs' proposed CMO that Plaintiffs will make good faith efforts to avoid duplicative depositions and deposition questions.

Regarding 30(b)(6) deponents, the Court agrees that Plaintiffs' rule (paragraph G.3) permitting allocation of the total allotted deposition hours however the deposing party sees fit is appropriate and should apply equally to Plaintiffs and Defendants.

As described above, given the likely complexity of this case, the Court agrees with PBMs that the Court should not limit the number of third-party depositions the parties may take.  This does not prohibit the parties from coming to agreement on a limit, but the Court will not impose one at this time.

**Experts**

The parties should reach agreement on an approximately five-week window within which to depose experts. The parties shall propose at least two deposition dates within the window for each expert, and to the maximum extent possible, should propose three deposition dates.

**Conclusion**

The parties should continue to meet and confer and propose a joint case management order in accordance with the above rulings and suggestions. This proposed order may include provisions where the parties agree to leave certain details unresolved until a future time definite, after initial rounds of motion practice and discovery have occurred. The parties should schedule a teleconference with Special Master Cohen on **December 18, 2023**, to discuss any ongoing

disagreements.  The parties shall resubmit a joint case management order for the Court's review (identifying any remaining disputes) by **3:30 p.m. on Thursday, December 21, 2023**.

    **IT IS SO ORDERED.**

                            <u>/s/ Dan Aaron Polster  December 11, 2023</u>
                            **DAN AARON POLSTER**
                            **UNITED STATES DISTRICT JUDGE**