**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** ) ) ) | **MDL 2804** |
| | **Case No. 1:17-md-2804** |
| **THIS DOCUMENT RELATES TO:** ) ) | |
| | **Judge Dan Aaron Polster** |
| *TPP Bellwether Cases* ) ) ) | |
| | **ORDER RESOLVING DISPUTES REGARDING PROPOSED CMO** |

On November 21, 2023, the Third-Party Payor ("TPP") bellwether Plaintiffs and Defendants submitted position papers describing various disputed provisions of their proposed case management orders. The Court now resolves several disputes and provides guidance the parties should use to attempt to resolve their remaining differences. The parties are directed to continue to meet and confer, incorporate the rulings and guidance below, seek assistance from Special Master Cohen, and resubmit a joint case management order for the Court's review by **3:00 PM on Thursday, December 21, 2023.**

The Court anticipates the TPP bellwether cases will be quite different from the municipality bellwether cases in prior case tracks. In addition to differently situated plaintiffs, the Court expects the alleged harms, the claims, and the relief sought in the TPP bellwether cases may each be different from earlier bellwethers. Prior bellwether rulings and discovery obligations, therefore, while still instructive, may often need to be modified to meet the needs of these TPP bellwether cases, and may not necessarily be the proper basis for decisions about various scheduling timelines and discovery obligations in the TPP bellwether cases going forward.

**Introduction**

The parties' disputes begin in the introductory paragraph. Defendants incorporate factual statements from foreign entities disputing this Court's jurisdiction over them into a footnote defining the term "Defendants." The Court agrees with Plaintiffs that Defendants need not make defendant-specific reservations, nor dispute statements in footnote 2's definition of "Defendants." The final sentence, over which there is no dispute, explicitly reserves rights and jurisdictional defenses for all parties that dispute this Court's jurisdiction over them. *See* both proposed CMOs at 1 n.2 ("By submitting this case management order, the parties agree that all defenses and arguments are reserved and no party has waived any rights, including the right to raise jurisdictional defenses").

**Case Track Designations**

To prevent confusion and maintain consistency with prior bellwether practice in this MDL, each bellwether case shall have its own track designation number. The TPPs have suggested Tracks 16, 17, 18, and 19. The Court thus adopts the following designations suggested by the TPPs:

> *United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania v. Purdue Pharma, LP, et al.*, ("*United Food*"), Case No. 1:17-op-45177 ("Track 16");
>
> *Local No. 25 Sheet Metal Workers Health & Welfare Fund v. Purdue Pharma, LP, et al.*, ("*Sheet Metal*"), Case No. 1:18-op-45002 ("Track 17");
>
> *Louisiana Assessors Insurance Fund a/k/a The Insurance Committee of the Assessors' Insurance Fund v. AmerisourceBergen Drug Corp., et al.*, ("*LAIF*"), Case No. 1:18-op-46223 ("Track 18"); and
>
> *Pioneer Telephone Cooperative Inc. Employee Benefits Plan et al. v. Purdue Pharma, LP, et al.*, ("*Pioneer*"), Case No. 1:18-op-46186 ("Track 19").

Further, the Court concurs with and adopts the parties' agreement that the four cases shall be prepared for trial simultaneously.

**Service on Foreign Defendants**

Plaintiffs' suggested language in paragraph B is consistent with the Court's prior rulings and practice, and is acceptable. *See* November 9, 2018 Minutes Order at 1, docket no. 1108 ("MDL Defendant[s] must accept service for the foreign entity [that is a parent or subsidiary of any corporate defendant in the MDL].").

**Answers**

Defendants want 90 days to answer the TPP bellwether complaints after they are amended on February 1, 2024. Plaintiffs suggest 30 days is appropriate. Defendants may have 60 days after TPP complaints are amended, or 30 days after the Court issues its rulings on motions to dismiss, whichever is later, to file their answers.

**Previous Discovery**

As noted previously, these TPP bellwether cases will be different in important ways. This is particularly true regarding the scope of the parties' discovery obligations. For example, geographic limits make more sense for a county-plaintiff that is essentially defined by its geographic area and location. It is less clear how geographic limits will apply to Third-Party Payor plaintiffs. Similarly, nuisance claims are tied to a right common to a group of people that are usually geographically proximate. RICO allegations, on the other hand, which are tied to the acts of an enterprise, do not necessarily contain similar inherent geographic limitations. Thus, specific geographic limitations, to the extent they are warranted, will have to be decided after the Court

and the parties have a chance to see the precise allegations against these defendants. For now, in order to allow the bellwether cases to proceed as efficiently and expeditiously as possible, the parties shall forgo the geographically limiting language.

Plaintiffs incorporate the language from the Track Eight CMO, nearly verbatim, but with one important change. Plaintiffs replace "non-duplicative of the discovery requests already issued" with "non-duplicative of the discovery productions or responses already served." This removes the burden from Plaintiffs to ensure they are propounding non-duplicative *requests* and places it on Defendants to ensure they are not making duplicative *productions* and responses. The burden of avoiding non-duplicative discovery must apply equally to all parties.

Here, the plaintiffs: (a) are new MDL litigators, propounding discovery for the first time, but (b) have access to all previous MDL discovery, a lot of which has been produced by the same defendant families. Accordingly, the Court: (1) supports use of the Track Eight language on previous discovery, generally, but without the geographical limitations; and (2) rules that the parties shall meet and confer and adopt compromise language that acknowledges the burden to avoid duplicative discovery lies equally on both sides.

**Prior Rulings**

The Court agrees with Defendants. Plaintiffs proposed "mechanism" to address this Court's prior rulings is confusing and unnecessary. The Court accepts Plaintiffs' first sentence reminding the parties that "the Court intends to adhere to all rulings made in prior MDL tracks," TPP Proposed CMO at 3, ¶D. The parties may seek departure from prior rulings, if they so choose, in their motions to dismiss.

That said, the Court intends to rely heavily on its prior rulings. So, if a similar issue comes up, the TPPs shall not simply reassert the same arguments made by prior plaintiffs in this MDL.

Instead, TPPs should file a simple statement that they adopt those arguments in order to preserve the record for appeal. If the TPPs have *new* arguments that are meaningfully different from those raised earlier and resolved in prior Court rulings, the TPPs may make them. The Court also recognizes that the TPPs are differently situated than the prior categories of MDL plaintiff and are entitled to make a showing that the facts the Court relied on in making its prior rulings are sufficiently different with respect to the TPP plaintiffs to warrant a different outcome.

**Motions to Dismiss**

Regarding page limits on motions to dismiss, the Court is not convinced the parties require separate memoranda, responses, and replies in each of the TPP bellwether case tracks. Paragraph D.2.ii of Defendants' proposed CMO states: "Defendant Industry Groups may each file ***a joint memorandum*** of up to 30 pages in length on common issues in support of their motions to dismiss the claims against them." The Court reads this as "a [single] joint memorandum of up to 30 pages in length on common issues in support of [all of] their motions to dismiss the claims against them[, collectively]."

Although this provision could be read, as TPPs do, as twelve joint memoranda of 30 pages (*i.e.*, 3 industry groups times 4 cases, totaling 360 pages), that interpretation does not appear to comport with: (1) Defendants' desire to have a single TPP bellwether track consisting of four cases, or (2) the prior paragraph (Defendants' ¶D.2.i) concerning consolidating briefing, avoiding duplication, and incorporating similar arguments by reference (a paragraph to which both sides agree). If Plaintiffs' interpretation is correct, however, and the Defendants are actually suggesting over 1,300 pages of briefing on their motions, they need to promptly negotiate a briefing method for these TPP bellwether cases that better conserves judicial resources while allowing them to address all the relevant legal issues. If required, the parties may and should work with Special

Master Cohen to assist in these negotiations. Otherwise, the parties shall proceed with the briefing method the Court outlines below.

Plaintiffs suggest three omnibus motions to dismiss (one per industry group) addressing issues common to all four TPP bellwether cases. Based on the parties' briefing, the Court believes this is also what Defendants suggest, although with different page limits. And, assuming the complaints are all amended to contain identical claims, this makes sense. The Court disagrees, however, with Plaintiffs' suggestion that 20 pages will be sufficient for any industry group to brief (1) common issues among the four different plaintiffs; (2) plaintiff-specific issues, should there be any; (3) differences in applicable law, if any; and (4) challenges to this Court's prior rulings, should Defendant elect to make any.[1]

Defendants need to clarify their position on this matter. But assuming the parties are in agreement on there being three industry-group-specific omnibus motions to dismiss across all four case tracks, the only thing left to be resolved is the number of pages for those motions. The Court adopts Defendants' suggestion of 30 pages per industry group to address all issues relevant across all four TPP bellwether cases. The Court will be open to allowing additional pages, upon request and for good cause shown, once the TPP bellwether complaints have been amended – if, for example, the applicable law is more divergent than anticipated.

The Court prefers that deadlines for jurisdictional motions to dismiss be meaningfully offset from 12(b)(6) motions, to even out workflow, but leaves the scheduling details to the parties.

---

[1] Plaintiffs also suggest a separate omnibus brief on differences in applicable law. The Court does not believe the briefing structure needs to be so complicated and also agrees with Defendants that such briefing should not be mandated. One motion to dismiss per industry group with sufficient pages to address the various issues—and combined with proper coordination between defendants—should be plenty to cover all pertinent issues.

**Joinder of Third Parties**

Given the Court's ruling on filing of answers, above, the Court adopts Plaintiffs' proposal of 14 days after service of Defendants' answers.[2]

**Fact Discovery**

As stated above, the Court generally agrees with Plaintiffs that the full scope of discovery will require additional litigative process that will begin in earnest only after TPP bellwether complaints are amended. However, the Court wants discovery to commence as quickly as possible.

Currently, there are 4 weeks between the February 1, 2024 deadline for the TPP plaintiffs to file amended complaints and the March 1, 2024 deadline, at which time the TPP plaintiffs have agreed to begin producing TPP Claims Data. *See* TPP Proposed CMO at 5, ¶F.1. Accordingly, the Court agrees with Defendants that the parties need to commence a meet and confer process as soon as possible—possibly even before complaints are amended—to resolve their dispute over the appropriate scope of TPP Claims Data to be produced. *See* Defendants Proposed CMO at 4, ¶E.1.i. ("[t]he parties shall meet and confer by January 12, 2024, on the format and fields for [TPP bellwether plaintiffs' production of claims data].") The Court also agrees that, to the extent not previously produced in conjunction with TPP Bellwether Plaintiffs' Plaintiff Fact Sheets, TPP Bellwether Plaintiffs shall *[at a minimum]* produce all prescription and medical reimbursement claims data ('TPP Claims Data')." TPP Proposed CMO at 5, ¶F.1.

---

[2] Per agreement, amended complaints are due February 1, 2024. Assuming no motions to dismiss are filed, Defendants' answers are due 60 days later, pursuant to this Order, on Monday, April 1, 2024. Fourteen days later, *i.e.*, April 15, 2024, is well after Defendants' proposed date of March 29, 2024, and should therefore not be objectionable to Defendants.

7

As part of the meet and confer process discussed above, the parties shall also negotiate whether and the extent to which plaintiffs will produce additional data, as well as the format and fields. Disagreements will be raised promptly with Special Master Cohen.

**Document Custodians**

Plaintiffs' deadline to identify proposed document custodians, March 1, 2024, is acceptable. *See* TPP Proposed CMO at 5, ¶F.2.i.

The Court sees no reason to stagger identification of document custodians. It shall be done simultaneously on March 1, 2024, by all parties.

The Court agrees with Plaintiffs that Defendants need to identify their prior document custodians. TPP Proposed CMO at 5–6, ¶F.2.ii.a. Given these are new plaintiffs alleging new claims, there is no presumption that prior document custodians or search terms are appropriate to these TPP bellwether cases. Defendants may not place their proposed limits on new document custodians. Further, the previous search terms are a good *starting point* for searching custodial files but do not presumptively apply.

Given these conclusions, the Court agrees with Defendants that more time to negotiate custodians and search terms is appropriate. Defendants' proposal to bring disagreements to the Special Master's attention by April 29, 2024 is acceptable.

Although the Court generally agrees with Defendants that reviewing all custodial files simultaneously may create some efficiencies, it is the Court's strong desire to get discovery rolling as expeditiously as possible. Thus, the Court concludes that having a deadline in place to begin production of custodial files will force greater progress on the case overall, even at the expense of some efficiency gains. Accordingly, the parties shall include such a deadline in their proposed CMO.

**Depositions**

The Court finds both sides' deposition limits too restrictive. Plaintiffs may depose no more than 7 witnesses per defendant family. Defendants may depose no more than 25 witnesses per TPP and are not limited to those employees or agents with management authority. Again, the Court must balance fundamental fairness with the fact that the defendant families have all been deposed numerous times and the TPP plaintiffs have not.

The Court disagrees with Defendants' proposed language regarding "repetitive depositions." *See* Defendants' Proposed CMO at 6, ¶F.1. No depositions will truly be repetitive because these are differently situated plaintiffs alleging different claims and seeking different relief. There will be repetitive topics, however, and plaintiffs shall endeavor not to unnecessarily address repetitive topics or ask repetitive questions of deponents who have already been deposed in conjunction with this MDL. *Compare* Defendants' proposed language: "***Repetitive depositions*** from prior MDL or related state opioid litigation ***shall also not be allowed*** absent good cause shown" *with* the language Defendants cite in support of their proposal from the Track Eight CMO: "The Parties shall endeavor to ensure that ***deposition questioning*** of any witness (including a 30(b)(6) witness) who was already deposed in any MDL or non-MDL opioid litigation ***will not be repetitive***.").

**Expert Discovery**

The parties' disagreements with respect to expert discovery is a symptom of their broader disagreement about the overall length of time for discovery. The Court prefers the parties to agree wherever possible and expects that the rulings in this order will force the parties closer to

9

agreement on their expert discovery differences. The parties shall, pursuant to this order, continue to meet and confer on expert discovery deadlines and the overall length of discovery more broadly.

**Daubert, Summary Judgment, and Motions in Limine**

The Court is inclined to rule on *Daubert* motions and motions for summary judgment prior to suggesting remand of the bellwether cases to the transferor courts. However, the Court declines to make a definitive decision at this time on which court will rule on those motions.

The Court does not intend to rule on motions *in limine*. Trial-specific evidentiary rulings should be made by the trial judge. The Court will provide its prior evidentiary rulings to the trial court for that court's adoption or rejection as it deems appropriate. That said, this Court may make certain evidentiary rulings while addressing other pretrial motions that could control or impact subsequent motions *in limine*.

**Conclusion**

Accordingly, the parties should continue to meet and confer and propose one or more joint case management orders in accordance with the above rulings and suggestions. This proposed order may include provisions where the parties agree to leave certain details unresolved until a future time definite, after initial rounds of motion practice and discovery have occurred. As stated previously, the Court prefers the parties come to mutual agreement on the various provisions of this case management order wherever possible. So, the parties may include in their proposed CMO provisions that are different from those ordered above, *if* they all agree. The parties should schedule a teleconference with Special Master Cohen on **December 18, 2023**, to discuss any

ongoing disagreements. The parties shall resubmit a joint case management order for the Court's review (identifying any remaining disputes) by **3:00 PM on Thursday, December 21, 2023.**

**IT IS SO ORDERED.**

**/s/ Dan Aaron Polster  December 13, 2023**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**