# Exhibit B

to Declaration of Matthew Hooker

## DEPARTMENT OF THE ATTORNEY GENERAL
## STATE OF HAWAIʻI

IN RE INVESTIGATION OF: | SUBPOENA DUCES TECUM

AG Subpoena No. 2 0 2 1 - 0 5 2

OPTUMRX, INC.

## SUBPOENA DUCES TECUM

TO:  OPTUMRX, INC.
c/o The Corporation Company, Inc.
1136 Union Mall, STE 301
Honolulu, HI 96813

**YOU ARE HEREBY COMMANDED,** pursuant to the laws of the State of Hawaiʻi, including Haw. Rev. Stat. §§ 28-2.5, 480-18, and 661-22, to deliver and turn over to the Department of the Attorney General, State of Hawaiʻi, all documents and information requested in Attachment A in accordance with the instructions and definitions contained therein within thirty (30) days after service of this Subpoena. You may deliver the documents and information to Hawaiʻi Special Deputy Attorney General Linda Singer, Motley Rice LLC, 401 9th Street NW, Suite 1001, Washington, DC 20004.

**TAKE NOTICE** that the Attorney General deems the documents requested by this Subpoena to be relevant and material to an investigation and inquiry undertaken in the public interest.

**TAKE FURTHER NOTICE that you are to continue and/or immediately implement a litigation hold** preserving all documents relating to the subject matter hereof, as set forth in Attachment A, but not limited to the specific documents demanded therein. (Additional subpoenas may follow.)

**TAKE FURTHER NOTICE** that Your disobedience of this Subpoena, by failing to deliver the documents and information requested in the attached Schedule on the date, time, and place stated above or on any agreed upon adjourned date or time, may subject You to penalties and other lawful punishment.

**YOU ARE HEREBY REQUESTED** not to disclose the existence of this Subpoena while this investigation is pending. Disclosure of this Subpoena may impede a confidential investigation being conducted by the Attorney General.

OBEDIENCE to this subpoena may be enforced by the Circuit Court of the First Circuit.

DATED:     Honolulu, Hawaii on the 15th day of October, 2021

[ X ]   If this box is checked, it may not be
        necessary to appear in person. To make
        other arrangements, please call

                                        for   _____
                                                    ATTORNEY GENERAL
                                                    STATE OF HAWAII

Contact Person: Deputy Attorney General David D. Day
Telephone Number: (808) 586-1346

2

RETURN OF SERVICE

Received this subpoena at _____ on _____ and

on _____ at _____,

I served it on the within named by delivering a copy_____.

Dated _____

_____
Signature of Serving Officer

**RECIPIENT'S RIGHTS**

You have been served with an investigative subpoena issued by the Attorney General of the State of Hawaii in accordance with section 28-2.5, Hawaii Revised Statutes, to appear at the time and place specified, to give sworn testimony, and, if indicated, to bring certain materials with you. Attendance is required only in the county in which the subpoena is served or such other place as may be agreed upon by you and the issuing authority. If the subpoena is served in a county other than that in which you reside, are employed or transact business, the Department of the Attorney General shall bear the expense of travel as provided by the rules of the court.

If you disobey this subpoena, the Attorney General may apply to the circuit court in the county in which you reside or are located to compel obedience. Prior to the date on which you are commanded to appear, you may move the circuit court to quash or modify the subpoena if compliance would be unreasonable or oppressive or violate any privilege you may be entitled to exercise in a court proceeding.

3

**ATTACHMENT "A"**

**INSTRUCTIONS**

A.  In each instance in which a document is produced in response to a Request, the current version should be produced together with all earlier versions, or predecessor documents serving the same function during the relevant time period, even though the title of earlier documents may differ from current versions, as well as the time period that each version was used by You.

B.  The Subpoena Duces Tecum calls for all described documents in your possession, custody or control without regard to the person or persons by whom or for whom the documents were prepared (*e.g.*, your company employees, contractors, vendors, distributors, service providers, competitors, or others).

C.  These Requests specifically include production of electronically stored information ("ESI").

1.  <u>General Instructions</u>. A cover letter will accompany each production, identifying each piece of media (hard drive, thumb drive, DVD, CD, or FTP), the production date, production volume, and the Bates range of the production. Data will be produced on hard drive, thumb drive, DVD, CD, or FTP. Label all media with the following:

    a.  Case number
    b.  Production date
    c.  Production volume
    d.  Bates range
    e.  Media volume number (1 of X, 2 of X, etc.), if applicable.

2.  <u>Production Format for Electronically Stored Information</u>. Production of all ESI is requested in either original native file format or as searchable image files, using production numbering as described below. Before being produced, all parent-level email and loose-file (non-email) ESI should be de-duplicated across all custodians and shared network drives based on MD5 hash value. Individual email attachments should not be separately de-duplicated. All ESI should be produced with a metadata field listing all custodians where duplicate documents were found. For ESI production in image format, if any documents cannot be reasonably be converted to readable images, the information should be produced in native format or some other reasonably usable format, and image production should include a placeholder image for each such unconverted or unreadable document setting forth the original filename and extension.

3.  <u>Production of Email</u>. If produced in native format, email should be produced as individual, parent level, HTML files, and attachments to emails should

4

sequentially follow their parent emails and be produced in native format as separate files. If produced in searchable image format, parent emails and their attachments should be produced as separate, contiguous documents.

4. <u>Production of Spreadsheets</u>. Spreadsheets should be produced in native format if stored in that manner, and each native file should be named with a document production number as described below. If a spreadsheet contains privileged information, you may produce it as imaged ESI, with the privileged information redacted, provided that You make reasonable efforts in applying page layout settings to maximize document readability. Images of spreadsheets that contain multiple worksheets should be produced with worksheet names indicated in a header or footer. To the extent that print-outs or images of all or part of a spreadsheet were also maintained in the ordinary course of business in static form (*e.g.*, as a pdf attachment), those documents should be produced as images to the extent such production is not duplicative.

5. <u>Production of Database Information</u>. Relevant information from a database should be produced as a report or data table, either in a static image format or in a popular database application, such as an Microsoft Access database.

6. <u>Production of ESI Commentary and Tracked Changes</u>. Microsoft Word, Microsoft Excel, and similar file formats that provide for comments or tracked changes should be produced in a manner in which all comments and tracked changes are preserved, accessible, and viewable in their original color format. Such production may be in native format.

7. <u>Production of Paper Documents</u>. Scanned paper document production must have natural, logical document breaks and should include, where available, copies of file folders, envelopes, or labels or other identifying marks on the containers in which the documents were maintained. All scanned paper documents should be produced with OCR text in a corresponding TXT file.

8. <u>Image Production Format</u>. Searchable images should be produced as separate documents in either single-page Group IV TIFF format or multi-page PDF format, at least 300 DPI resolution, with corresponding TXT files. Imaged ESI should maintain all color properties, and scanned paper images should provide color when content of the document contains more than one color.

9. <u>Document Production Numbering</u>. Each page of all images produced (whether hard-copy documents or ESI) must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image. Reasonable steps shall be taken to place the Bates number or confidentiality designation at a location that does not obscure any content from the source document. There shall be no other branding placed on the document image, except to identify redactions due to privilege. To the extent possible, documents

5

and ESI shall be Bates numbered consecutively, maintaining all parent/child relationships as well as the order of the parent emails and corresponding attachments.

10. <u>Load Files and Metadata</u>. All native format and searchable image format production must include one or more CSV or Summation load files that associate each document and its Bates number with its corresponding TXT file, and that include the following original and processed metadata fields:

For all imaged documents (ESI and scanned):

> BegDoc
> EndDoc
> ParentID
> AttachmentIDs
> BegAttach
> EndAttach

For all ESI (native and imaged):

> FileName
> Extension
> Author
> DateCreated
> TimeCreated
> DateLastMod
> TimeLastMod
> MD5Hash
> Custodian
> DupCustodians

For all email:

> MailTo
> MailFrom
> CC
> BCC
> Subject
> DateAndTimeSent
> DateAndTimeReceived
> TimeZone
> IntMsgID
> Conversation
> ConversationIndex
> ParentID

6

AttachmentIDs
BegAttach
EndAttach

If production in the requested form is not reasonably available or practical, office personnel at the undersigned law firm are available to discuss compatible alternatives.

11. Production Load Files. Two Load/Unitization files shall accompany all productions. All productions containing images must include an image load file that is in .LOG or .OPT format. For any productions containing native files, the metadata .DAT file should contain a NATIVELINK field that contains the path/link to each native file generated during production. The native files should be named with their corresponding bates numbers. All productions should include a metadata load file (.DAT file) containing all agreed upon metadata production fields and the delimiters should be standard Concordance delimiters:

| | | | |
|---|---|---|---|
| a. | Column Delimiter: | (020) | |
| b. | Field Delimiter: þ | (254) | |
| c. | New Line Delimiter: | ® | (174) |
| d. | Multi-Entry Delimiter: | ; | (059) |

The following ASCII delimiters are also acceptable:

| | | | |
|---|---|---|---|
| e. | Column Delimiter: ^ | (094) | |
| f. | Field Delimiter: \| | (124) | |
| g. | New Line Delimiter: | ~ | (126) |
| h. | Multi-Entry Delimiter: | ; | (059) |

The first line of the .DAT file must contain the field names to each corresponding metadata field. The name of the data load file should mirror the name of the delivery volume and the volume names should be consecutive. If foreign language/Unicode text exists, the .DAT file shall contain the appropriate encoding to enable preservation of the document's original language.

12. Searchable Files. (.TXT). Document level, searchable text files shall be provided for all production documents and be maintained in separate TEXT directories. All text files should be named with their corresponding bates numbers. The metadata .DAT file should contain a TEXTPATH field that contains the path/link to each corresponding text file generated during production. If foreign language/Unicode text exists, the .TXT files shall contain the appropriate encoding to enable preservation of the document's original language.

13. Privileged Documents. If any responsive document is withheld under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document that you have withheld:

7

a. the name of each author, writer, sender, creator, or initiator of such document;

b. the name of each recipient, addressee, or party for whom such document was intended;

c. the date of such document, or an estimate thereof if no date appears on the document;

d. the general subject matter of the document; and

e. the claimed grounds for withholding the document, including—but not limited to—the nature of any claimed privilege and grounds in support.

14. <u>Duty to Preserve Documents.</u>  All documents and/or other data which relate to the subject matter or requests of this Subpoena Duces Tecum must be preserved. Any destruction involving such documents must cease, even if it is your normal or routine course of business to delete or destroy such documents or data and even if you believe such documents or data are privileged or otherwise need not be produced.

15. <u>Duty to Supplement.</u>  All document requests are continuing in nature so as to require the supplementary production if you obtain further responsive documents or information. You are also required to amend your responses to the requests contained within this Subpoena Duces Tecum if you discover that the previous response was incorrect or incomplete.

## **DEFINITIONS**

A. "All" shall be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

B. "Any" shall be construed to mean "any and all."

C. "Benefits Consultant" shall mean any organization providing advisory services pertaining to the pharmacy benefit of a health insurance product or the administration of such a benefit.

D. "Communications" shall mean and refer to any exchange of information by any means of transmissions, sending or receipt of information of any kind by or through any means including, but not limited to, verbal expression, gesture, writings, documents, language (machine, foreign, or otherwise) of any kind, computer electronics, email, SMS, MMS or other "text" messages, messages on "social networking" sites (including, but not limited to, Facebook, Google+, MySpace and Twitter), shared applications from cell phones, "smartphones," netbooks and laptops, sound, radio, or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm or by any other means. It also includes, without limitation, all originals and copies of inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings,

notices, requests, responses, demands, complaints, press, publicity or trade releases and the like that are provided by you or to you by others.

E.    "Document(s)" shall mean any writing or any other tangible thing, whether printed, recorded (in audio, video, electronically or by any other means), reproduced by any process, or written or produced by hand, including, but not limited to, letters, memoranda, notes, opinions, books, reports, studies, agreements, statements, communications (including inter-company and intra-company communications), correspondence, telegrams, email, instant messages, chat logs, SMS, MMS or other "text" messages, posted information, messages, chat logs on "social networking" sites (including, but not limited to, Facebook, Google+, MySpace and Twitter), logs, bookkeeping entries, summaries or records of personal conversations, diaries, calendars, telephone messages and logs, forecasts, photographs, images, tape recordings, models, statistical statements, graphs, laboratory and engineering reports, notebooks, charts, plans, drawings, minutes, bylaws, resolutions, records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, lists of clients or customers or suppliers, reports or summaries of interviews, opinions or reports of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of any document and revisions of drafts of any document, and any other similar paper or record. The terms also include a copy of a document where the copy is not exactly the same as the original. The terms also include emails and other documents made or stored in electronic form, whether kept on computers, computer tapes, disks or drives, including Cloud storage, of any type, or other media upon which information may be recorded.

F.    "Hawai'i state program" includes the Hawaii Employer-Union Health Benefits Trust Fund and Hawaii's Medicaid program, known as Med-QUEST.

G.    "Identify" means:

    1.    When used in connection with a person, provide that person's name, current residential address and telephone number, job title, and current business address and telephone number. (If current information is not available, provide last-known address and telephone number.)

    2.    When used in connection with a Document, provide the nature of the Document, its title, physical description, date, author, its current location, and identification of the current custodian.

    3.    When used in connection with an oral communication, provide the nature of that communication, the parties to it, the date, place and substance of that communication, and the identification of any document concerning it.

H.     "Including" is used merely to emphasize that a request for certain types of documents or information should not be construed as limiting the request in any way.

I.     "Manufacturer(s)" shall mean a manufacturer of prescription drugs.

J.     "Payer(s)" shall mean any organization that pays or insures health or medical expenses on behalf of beneficiaries or recipients including an employer (self-insured), a third-party administrator or administrative-services only health insurer (for themselves or on behalf of their clients), or a health insurance company.

K.     "Payment(s)" shall mean any transfer of money, goods, or services You received directly or indirectly from any Manufacturer. It includes, but is not limited to, statutory rebate payments, supplemental rebate payments, other rebate payments, research and development, administrative fees, distribution fees, service fees (rebate or non-rebate related), procurement fees, data access fees, chargeback fees, promotional payments, cash product discounts, sales volume related payments of any type not described above, and non-sales volume related payments of any type not described above.

L.     "Pharmacy benefit manager(s)" or "PBM(s)" shall mean any organization that administers prescription drug benefits on behalf of a Payer.

M.     "Relating to" shall mean directly or indirectly mentioning or describing, concerning, referring to, regarding, evidencing, setting forth, identifying, memorializing, created in connection with or as a result of, commenting on, embodying, evaluating, analyzing, tracking, reflecting or constituting, in whole or in part, a stated subject matter.

N.     "You" or "Your" refers to the person(s) or business entity(s) to whom this Subpoena Duces Tecum is directed as reflected on the first page. With respect to corporations or other business entities, these terms also shall be deemed to include all owners, officers, agents and employees thereof, and any predecessor, successor, parent, subsidiary, division, d/b/a and affiliated companies or other entities.

## RELEVANT TIME PERIOD

The relevant time period, unless otherwise indicated in a specific request, is from January 1, 2010 to the present. The time limits should not be construed as date limits; for example, if a policy or document in effect during the relevant time period was created before the relevant time period, then documents dating back to the starting date of the policy must be produced.

## REQUESTS FOR DOCUMENTS AND INFORMATION

These requests are limited to documents and information relating to Hawai'i, including, but not limited to, documents and information that may be national or regional in scope that apply to Hawai'i.

10

1.    Produce all Documents sufficient to Identify the ten Manufacturers from which You have directly or indirectly received the largest Payments (as determined by the total dollar amount of Payments) per year from 2010-2021. Per the definitions listed above, the term Payments includes, but is not limited to, statutory rebate payments, supplemental rebate payments, other rebate payments, research and development, administrative fees, distribution fees, service fees (rebate or non-rebate related), procurement fees, data access fees, chargeback fees, promotional payments, cash product discounts, sales volume related payments of any type not described above, and non-sales volume related payments of any type not described above. Include the following in Your response:

      a.    The name of the Manufacturer making Payments; and
      b.    The total amount per year of the Payments.

      *In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

2.    Produce all Documents sufficient to Identify the Payments made by each Manufacturer identified in response to Request 1 per year from 2010-2021. Aggregate payments of the same type per year. For example, all administrative fees for 2010 can be combined as one Payment. Include the following for each Payment in Your response:

      a.    A description of the Payment (*e.g.*, statutory rebate payments, supplemental rebate payments, other rebate payments, research and development, administrative fees, distribution fees, service fees (rebate or non-rebate related), procurement fees, data access fees, chargeback fees, promotional payments, cash product discounts, sales volume related payments of any type not described above, and non-sales volume related payments of any type not described above);
      b.    The amount of each Payment;
      c.    A description of any service You performed relating to the Payment;
      d.    A description of any product or information You sold relating to the Payment (*e.g.*, name of medications and volume purchased);
      e.    The name of the Payer or any other entity or individual with whom You shared any portion of the Payment;
      f.    The amount of the Payment You shared with a Payer or any other entity or individual; and
      g.    The amount of the Payment You retained.

      *In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

3.    For all Hawai'i state programs, produce documents sufficient to Identify the amount of Payments returned to the State or Medicaid managed care organization and the amount of Payments retained by You and a description of the Payments (*e.g.*, rebate, administrative fees).

11

*In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

4. Produce all Documents reflecting or related to the negotiation of the Payments identified in Your response to Request 2 and 3.

5. Produce all Communications with Manufacturers related to formulary coverage for any prescription drug for which You received Payments.

6. Produce all financial and medical analyses related to the inclusion or exclusion of prescription drugs for which You received Payments.

7. Produce all Documents sufficient to Identify the gross amount paid for prescription drugs manufactured by the Manufacturers identified in response to Request 1 per year from 2010-2021 for prescription drugs.

   *In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

8. Produce all Documents sufficient to Identify all direct or indirect Payments (*e.g.*, product based, volume based, or other Payments) You made to any Benefits Consultant working on behalf of a Payer, including:

   a. The name of the Benefits Consultant;
   b. The name of the Payer for whom the Benefits Consultant worked;
   c. The date of the Payment;
   d. The amount of the Payment; and
   e. A description of the Payment (*e.g.*, product based, volume based, or other Payments).

   *In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

9. Produce all Documents reflecting or related to direct or indirect Payments for Humira and every insulin product (including branded and authorized generics).

10. Produce all Documents sufficient to Identify all direct or indirect Payments You received relating to Humira and every insulin product (including branded and authorized generics). Include in Your response, for each Payment:

    a. The date of the Payment;
    b. The time period which the Payment relates to;
    c. The name of the Hawaiʻi state program relating to the claim (if applicable);
    d. The name of the Manufacturer making the Payment;
    e. The amount of the Payment;

f.  A description the Payment (*e.g.*, statutory rebate payments, supplemental rebate payments, other rebate payments, research and development, administrative fees, distribution fees, service fees (rebate or non-rebate related), procurement fees, data access fees, chargeback fees, promotional payments, cash product discounts, sales volume related payments of any type not described above, and non-sales volume related payments of any type not described above);

g.  The name of the prescription drug relating to the Payment;

h.  The list price for the prescription drug relating to the Payment;

i.  The gross amount You paid for the prescription drug;

j.  The number of units of the prescription drug You purchased relating to the Payment;

k.  A description of any service You performed relating to the Payment;

l.  The name of the Payer or any other entity or individual with whom You shared any portion of the Payment;

m.  The amount of the Payment You shared with a Payer or any other entity or individual; and

n.  The amount of the Payment You retained.

o.  Beneficiary cost sharing requirement (fixed copayment, coinsurance)

p.  Amount paid by the beneficiary

q.  Total Amount paid to the pharmacy (including dispensing fee)

r.  Post-purchase price adjustment of the prescription drug sale price

s.  Other price agreements or guarantees related to the prescription drug.

*In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

11.  Produce all price lists, including any maximum allowable cost lists, applicable to the prescription drugs identified in Your response to Request 10 that relate to any Hawai'i state program (*e.g.*, EUTF, Medicaid).

12.  Produce all agreements and Documents reflecting or related to agreements with Manufacturers or any entity or individual affiliated with any Manufacturer related to Payments.

13.  Produce all Documents sufficient to Identify all departments and individuals involved in negotiations or agreement with Manufactures related to the purchase, coverage, promotion or sale of prescription drugs, including, but not limited to, the following:

a.  the name of each department or individual;

b.  the date each department was formed and (if applicable) dissolved;

c.  the title(s) each individual has or had;

d.  the name of the department(s) for which each individual works or worked

e.  the relevant duties and responsibilities each individual has or had;

f.  the dates of employment for each individual; and

13

g.     the last known contact information for each individual who no longer works for You.

*In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

14.    Produce all Documents reflecting or related to Communications relating to negotiations or agreements relating to Payments, including the target level of Payments or the impact of Payment levels on your Profits, or the value of any Payments to Your revenue or profits.

15.    Produce all Documents reflecting or related to Your projections or analyses relating to: (a) the value of Payments; (b) whether and how Payments are passed on to consumers (c) how Payments impact Your profitability; (d) how Payments impact Your bargaining power in negotiations with Manufacturers and/or Payers; (e) the impact or practice of classifying Payments in certain ways (*e.g.*, classifying a Payment as a rebate rather than a fee or vice-versa); and/or (f) the relationship between Payments and list prices.

16.    Produce all Documents reflecting or related to the results of any audit (including both internal and third-party audits) relating to Your practices involving Payments, including, but not limited to, Your classification of any fees or rebates.

17.    Produce all Documents You relied upon when testifying before Congress about the pricing of prescription drugs.

18.    Produce all Documents relating to legislation or proposed legislation that could impact the Payments You receive, including, but not limited to, the proposed elimination of the safe harbor provision in 42 CFR 1001.952(h).

19.    Produce all Documents relating to any research or study You commissioned that examines Payments made to pharmacy benefit managers from Manufacturers.

20.    Produce all Documents reflecting or relating to any complaints or concerns You received relating to Your practices involving Payments, including, but not limited to, any complaints You received from Manufacturers, Payers, whistleblowers, and consumers.

21.    Produce all Documents sufficient to Identify all lawsuits filed against You relating to Your practices involving Payments, including, but not limited to, any lawsuits that allege You overcharged Payers and/or consumers for prescription drugs and/or that there is a relationship between the Payments You receive and the increase in list price of prescription drugs.

*In lieu of providing actual documents, You may provide a narrative response containing the requested information.*

14

22. Produce all Documents produced in any government investigation or any litigation relating to Your practices involving Payments.

23. Produce all settlement agreements or judgments relating to Your practices involving Payments.