# Exhibit L

to Declaration of Matthew Hooker

# CITY OF CHICAGO
# DEPARTMENT OF LAW

IN THE MATTER OF OPTUMRX, INC.

INVESTIGATIVE SUBPOENA

**COPAY CLAWBACKS**

TO: OPTUMRX, INC.
c/o CT Corporation System
208 S LaSalle St., Suite 814
Chicago, IL 60604

GREETINGS:

This INVESTIGATIVE SUBPOENA is issued pursuant to § 2-25-090(e) and § 1-22-050 of the Municipal Code of Chicago ("MCC") because it appears to the Corporation Counsel that certain entities have engaged in, are engaging in, or are about to engage in an act or practice that is in violation of § 2-25-090, which may include, but is not limited to, the following conduct:

Engaging in any act of consumer fraud or deceptive practice while conducting any trade or business in the city relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses, as further defined and described herein, in violation of MCC § 2-25-090(a); and

Engaging in any conduct constituting an unlawful practice under the Illinois Consumer Fraud and Deceptive Business Practices Act relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses, as further defined and described herein, in violation of MCC § 2-25-090(a).

**YOU ARE REQUIRED BY LAW TO PRODUCE** at the City of Chicago Department of Law, Affirmative Litigation Division, 121 North LaSalle Street, Suite 600, Chicago, Illinois 60602, Attention: Jane Elinor Notz, any time prior to December 14, 2018 at 10:00 a.m., all documents and information within your possession or control described in this Investigative Subpoena.

**YOU ARE FURTHER REQUIRED BY LAW** to certify that all of the documentary material required by this Investigative Subpoena and in your possession, custody, or control has been produced and made available to the Corporation Counsel, pursuant to MCC § 1-22-050, and to provide with your production a completed certificate in substantially the form attached as Exhibit "A."

**NOTE: THESE DOCUMENTS ARE OR MAY BE PHYSICAL EVIDENCE**

**NOTE: YOU HAVE A RIGHT TO BE ASSISTED BY COUNSEL**

THE MUNICIPAL CODE OF CHICAGO PROVIDES AS FOLLOWS:

MCC 1-22-050(j)(2) <u>Petition to modify or set aside subpoena</u>.

 (A) Any person who has received a subpoena issued under subsection (a) may file, in the circuit court of any county within which such person resides, is found, or transacts business, and serve upon the corporation counsel a petition for an order of the court to modify or set aside such subpoena. In the case of a petition addressed to an express demand for any product of discovery, a petition to modify or set aside such demand may be brought only in the circuit court of the county in which the proceeding in which such discovery was obtained is or was last pending. Any petition under this subparagraph (A) must be filed:

  (i) within 20 days after the date of service of the subpoena, or at any time before the return date specified in the subpoena, whichever date is earlier, or
  (ii) within such longer period as may be prescribed in writing by the corporation counsel.

 (B) The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the subpoena to comply with the provisions of this section or upon any constitutional or other legal right or privilege of such person. During the pendency of the petition in the court, the court may stay, as it deems proper, the running of the time allowed for compliance with the subpoena, in whole or in part, except that the person filing the petition shall comply with any portion of the subpoena not sought to be modified or set aside.

## INSTRUCTIONS

A. If any document, report, study, memorandum or other written material or information is withheld or not identified under claim of privilege, furnish a list identifying each document or requested information together with the following information (as relevant): date, author, sender, recipient, persons to whom copies were furnished or information provided, together with their job titles, subject matter of the document, the basis for the privilege, and the paragraph or paragraphs of the Request(s) to which the document or information is responsive.

B. In each instance in which a document is produced in response to a Request, the current version should be produced together with all earlier versions, or predecessor documents serving the same function during the relevant time period, even though the title of earlier documents may differ from current versions.

C. The Investigative Subpoena calls for all described documents in your possession, custody or control without regard to the person or persons by whom or for whom the documents

2

were prepared (e.g., your company employees, contractors, vendors, distributors, service providers, competitors, or others).

D. The following procedures shall apply to the production, inspection and copying of documents:

1. You shall produce original, complete documents. Documents shall be produced in the order that the documents are maintained in your files, in original folders, with the folder's original file tabs.

   a. Any documents produced in response to this Investigative Subpoena should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

   b. <u>Document Unitization</u>. Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

   c. <u>Bates Numbering</u>. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically branded onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. To ensure that the Bates Numbers do not obscure portions of the documents, the images may be proportionally reduced to create a larger margin in which the Bates Number may be branded. There shall be no other legend or stamp placed on the document image, except those sections of a document that are redacted to eliminate material protected from disclosure by the attorney-client or work product privileges shall have the legend "REDACTED" placed in the location where the redaction(s) occurred or shall otherwise note the location and/or location of the information for which such protections are claimed.

   d. <u>File Naming Conventions</u>. Each document image file shall be named with the unique Bates Number of the page of the document in the case of

single-page TIFFs, followed by the extension "TIF". Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

e. <u>Production Media</u>. The documents should be produced on CD-ROM, DVD, external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001", "V002"), as well as the volume of the material in that production wave (e.g., "V001", "V002"). For example, if the first production wave comprises document images on three hard drives, you shall label each hard drive in the following manner: "V001-001", "V001-002", "V001-003". Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in response to this Investigative Subpoena, (2) your name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

f. <u>Objective Coding/Extracted Meta Data</u>. You shall produce with each production of documents extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields and type of content set forth in the **<u>SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL</u>** section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

g. <u>Native format for Excel and databases</u>. To the extent that such documents exist in Excel or some other spreadsheet, produce the document in Excel. To the extent that the document constitutes a database, produce the document in Access.

2. All attachments to responsive documents shall be produced attached to the responsive documents.

3. No portion of any documents will be masked and the entire document shall be produced.

4. The documents shall be produced at the location set forth or at such other locations as counsel agree.

5. Documents shall be available on reasonable notice for inspection and copying after initial production throughout the term of the investigation or litigation. The documents shall be maintained in the order in which it was produced.

6. You shall label each group of documents and interrogatories in the following manner: Response to Request No. 1; Response to Request No. 2, etc., and identify the Bates Number range for the corresponding documents that are responsive or written responses.

7. Provide a key to all abbreviations used in the documents, providing a method of identifying all documents requiring use of the key.

8. If you obtain information or documents responsive to any request after you have submitted your written responses or production, you should supplement your responses and/or production with any new and or different information and/or documents that become available to you.

## **DEFINITIONS**

A. "All" shall be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

B. "Any" shall be construed to mean "any and all."

C. "Chicago consumer(s)" shall mean any individual residing in Chicago.

D. "Communications" shall mean and refer to any exchange of information by any means of transmissions, sending or receipt of information of any kind by or through any means including, but not limited to, verbal expression, gesture, writings, documents, language (machine, foreign, or otherwise) of any kind, computer electronics, email, SMS, MMS or other "text" messages, messages on "social networking" sites (including, but not limited to, Facebook, Google+, MySpace and Twitter), shared applications from cell phones, "smartphones," netbooks and laptops, sound, radio, or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm or by any other means. It also includes, without limitation, all originals and copies of inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity or trade releases and the like that are provided by you or to you by others.

E. "Copay clawback" shall mean instances where there is a positive difference between the copay paid by the consumer and the price the relevant third party payor negotiated for a particular prescription that is retained by you or the relevant third party payor.

F. "Document(s)" shall mean any writing or any other tangible thing, whether printed, recorded (in audio, video, electronically or by any other means), reproduced by any process, or written or produced by hand, including, but not limited to, letters, memoranda, notes, opinions, books, reports, studies, agreements, statements, communications (including inter-company and intra-company communications), correspondence, telegrams, email, instant messages, chat logs, SMS, MMS or other

5

"text" messages, posted information, messages, chat logs on "social networking" sites (including, but not limited to, Facebook, Google+, MySpace and Twitter), logs, bookkeeping entries, summaries or records of personal conversations, diaries, calendars, telephone messages and logs, forecasts, photographs, images, tape recordings, models, statistical statements, graphs, laboratory and engineering reports, notebooks, charts, plans, drawings, minutes, bylaws, resolutions, records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, lists of clients or customers or suppliers, reports or summaries of interviews, opinions or reports of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of any document and revisions of drafts of any document, and any other similar paper or record. The terms also include a copy of a document where the copy is not exactly the same as the original. The terms also include emails and other documents made or stored in electronic form, whether kept on computers, computer tapes, disks or drives, including Cloud storage, of any type, or other media upon which information may be recorded.

G. "Employee" includes, but is not limited to, all current or former salaried employees, hourly employees, independent contractors, and individuals performing work as temporary employees.

H. "Gag clauses" shall mean any limitation on pharmacies and/or their employees: (a) telling consumers that prescription drug transactions contain copay clawbacks; (b) informing consumers that they might save money by paying for a prescription drug in cash rather than using insurance; (c) notifying consumers that another cheaper option exists; or (d) posting cash prices.

I. "Including" is used merely to emphasize that a request for certain types of documents or information should not be construed as limiting the request in any way.

J. "Negotiated price" shall mean the price the relevant third party payor negotiated for a particular prescription.

K. "Person" means any natural person or such person's legal representative; any partnership, domestic or foreign corporation, or limited liability company; any company, trust, business entity, or association; and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, or trustee.

L. "Pharmacy benefit manager(s)" or "PBM(s)" shall mean any organization that contracts with third party payors to provide pharmacy benefits or pharmacy administrative services to Chicago consumers.

M. "Pharmacy Reimbursement Overpayment Program" shall mean the Pharmacy Reimbursement Overpayment Program that you referenced in your May 5, 2016 email to reporter Lee Zurik from Fox 8 News in New Orleans, available at http://www.fox8live.com/story/31927914/zurik-unitedoptum-defends-prescription-overpayment-program/.

6

N.  "Relating to" shall mean directly or indirectly mentioning or describing, concerning, referring to, regarding, evidencing, setting forth, identifying, memorializing, created in connection with or as a result of, commenting on, embodying, evaluating, analyzing, tracking, reflecting or constituting, in whole or in part, a stated subject matter.

O.  "Third party payor" shall mean any organization that pays or insures health or medical expenses on behalf of beneficiaries or recipients, such as commercial insurance companies and self-insured employers.

P.  "You" or "your" refers to the person(s) or business entity(s) to whom this Investigative Subpoena is directed as reflected on the first page. With respect to corporations or other business entities, these terms also shall be deemed to include all owners, officers, agents and employees thereof, and any predecessor, successor, parent, subsidiary, division, d/b/a and affiliated companies or other entities. It also includes Catamaran Corporation. To the extent documents for Catamaran Corporation are not in your custody or control, identify the person who does have custody and control of such documents.

## SPECIAL INSTRUCTIONS

Electronic documents should be produced in accordance with the following instructions:

A.  Single page TIFFs at a 300 DPI resolution which are named for the Bates Number of the page. There should NOT be more than 1000 images per folder.

B.  Document level text files containing OCR or extracted text named with the Bates Number of the first page of the document.

C.  Data load file containing all of the metadata fields (both system and application – see list below) from the original Native documents – .dat for Concordance.

D.  The Concordance .dat file of extracted metadata should be delimited with the Concordance default characters – ASCII 020 for the comma character and ASCII 254 for the quote character. The use of commas and quotes as delimiters is not acceptable.

E.  The database field name should be included in the first line of the metadata file listed in the order they appear in the file.

F.  An image load file for Concordance – such as .opt.

G.  For electronic documents created in Excel (spreadsheets) or Access (databases), provide those documents in Native format.

H.  For all documents produced, provide the following:

| Field # | Field Name | Format | Description |
|---|---|---|---|
| | | | |

| Field # | Field Name | Format | Description |
|---|---|---|---|
| 1 | BEGDOCNO | Text | Image key of first page of document |
| 2 | ENDDOCNO | Text | Image key of last page of document |
| 3 | BEGATTACH | Text | For emails/attachments ONLY: Image key of the first page of the parent email.<br><br>Please DO NOT populate these fields for emails with no attachments. |
| 4 | ENDATTACH | Text | For emails/attachments ONLY: Image key of the last page of the last attachment.<br><br>Please DO NOT populate these fields for emails with no attachments. |
| 5 | CUSTODIAN | Text | Custodian from whom documents were collected |
| 6 | AUTHOR | Text | Email "From" data or user/author name from electronic files |
| 7 | RECIPIENT | Text | Email "To" data (semi-colon delimited, if multiple entries) |
| 8 | CC | Text | Email "CC" data (semi-colon delimited, if multiple entries) |
| 9 | BCC | Text | Email "BCC" data (semi-colon delimited, if multiple entries) |
| 10 | MAILSUBJECT | Text | Email subject. This value should be populated down to any children/attachments of the parent email. |
| 11 | MAILDATE | MM/DD/YYYY | Email date sent. This value should be populated down to any children/attachments of the parent email. |
| 12 | MAILTIME | HH:MM:SS | Email time sent, in military time. This value should be populated down to any children/attachments of the parent email. |
| 13 | ATTACHMENTS | Text | Semi-colon delimited list of the **original file names** of any attachments to an email |
| 14 | FILENAME | Text | For emails: Mail subject<br>For attachments and e-files: File name from source media |

8

| Field # | Field Name | Format | Description |
|---|---|---|---|
| 15 | HASH_VALUE | Text | Hash value generated for purposes of de-duplication if performed |

## RELEVANT TIME PERIOD

The relevant time period, unless otherwise indicated in a specific request, is from January 1, 2012 to the present. The time limits should not be construed as date limits; for example, if a policy or document in effect during the relevant time period was created before the relevant time period, then documents dating back to the starting date of the policy must be produced.

## DOCUMENTS AND INFORMATION TO BE PROVIDED

These requests are limited to documents and information relating to transactions involving Chicago consumers, including but not limited to documents and information that may be national or regional in scope that apply to Chicago consumers, among other consumers.

1. Produce all contracts with third party payors whose beneficiaries include Chicago consumers that contain any provision, term, or information relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

2. Produce all communications with third party payors whose beneficiaries include Chicago consumers relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

3. Produce all contracts with Cigna Corporation, Cigna Health and Life Insurance Company, Cigna HealthCare of Illinois, Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, UnitedHealthCare of Illinois, Inc., and any of their relevant parent corporations, subsidiaries, or affiliates relating to the administration or management of pharmacy benefit services for Chicago consumers.

4. Produce all contracts with any pharmacy with which you have contracted to fill prescriptions for Chicago consumers that contain any provision, term, or information relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

5. Produce all communications with any pharmacy with which you have contracted to fill prescriptions for Chicago consumers relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

6. Produce all documents relating to Chicago consumers' obligation to pay a deductible, coinsurance, or copay relating to the prescription drug plans you manage, including, but not limited to, any document that defines those terms and any document relating to the price Chicago consumers are entitled to pay for prescription drugs.

7. Produce all documents provided to Chicago consumers relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

8. Produce all manuals, policies, procedures, or guidelines relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses, including but not limited to any drafts or amendments.

9. Produce all internal and/or external memos, press releases, presentations, talking points, reports, and/or analyses relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

10. Produce all documents relating to your Pharmacy Reimbursement Overpayment Program.

11. Produce all complaints or questions from any person relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses submitted by consumers, pharmacies, or third party payors and any documents relating to how those complaints or questions were addressed.

12. Produce all documents relating to communications with any third party relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses. Third parties include but are not limited to lobbyists, government agencies, consultants, and trade groups, including but not limited to any National, Illinois, or Chicago pharmacy, insurance, and/or PBM associations.

13. Produce all documents and information previously produced in response to any other government investigation relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

14. Produce all deposition transcripts of your current or former employees and agents relating to copay clawbacks, instances where a consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, and/or gag clauses.

15. For all claims relating to Chicago consumers that were subject to a copay clawback or where the consumer's deductible, coinsurance, copay, or any combination thereof would exceed the cash price that a consumer not utilizing insurance would pay for the same prescription, produce either documents sufficient to show or state:

    a. The transaction number or any other number that can identify the specific transaction;
    b. The date the prescription was filled;
    c. The identity of the pharmacy filling the prescription, indicated by National Provider Identifier (NPI);
    d. The name of the drug prescribed, indicated by National Drug Code (NDC);
    e. The quantity filled;
    f. The cash price of the prescription that an uninsured person would pay for the same prescription at the same pharmacy on the same date;
    g. The wholesale acquisition cost (WAC) for the same prescription on the same date;
    h. The average wholesale price (AWP) for the same prescription on the same date;
    i. The maximum allowable cost (MAC) for the same prescription on the same date;
    j. The negotiated price for the prescription on that date;
    k. The amount of any payment paid by the Chicago consumer, and the breakdown of the payment (e.g. amount of copay or coinsurance, deductible, coupon, etc.);
    l. The amount of any payment paid to the third party payor; and
    m. The amount of any payment received from the third party payor.

Dated this 8th day of November, 2018.

                    EDWARD N. SISKEL
                    Corporation Counsel
                    of the City of Chicago

By: /s/ Jane Elinor Notz
                    JANE ELINOR NOTZ
                    Deputy Corporation Counsel
                    ELIE T. ZENNER
                    Assistant Corporation Counsel
                    Affirmative Litigation Division
                    City of Chicago Department of Law
                    121 North LaSalle Street
                    City Hall – Room 600
                    Chicago, Illinois 60602
                    Tel: (312) 744-0200
                    jane.notz@cityofchicago.org

EXHIBIT "A"
**CERTIFICATE OF COMPLIANCE**

| IN THE MATTER OF OPTUMRX, INC. | INVESTIGATIVE SUBPOENA |
|---|---|

NOW COMES _____ *(person having knowledge of the facts and circumstances relating to the production)*, who after first being duly sworn deposes and says:

1. That the deponent is the _____ of _____ and in his or her capacity as _____ has knowledge of the facts and circumstances relating to _____'s production of documentary material.

2. That on the \_\_\_\_ day of the month of _____ of the year 201\_, the deponent was provided the subpoena served on _____ in connection with above-entitled investigation, calling for the production of records of _____.

4. That the deponent certifies that all of the documentary material requested by the subpoena and in the possession, custody, or control of _____ has been produced and made available to the Corporation Counsel.

Executed on: _____       _____
            *(Date)*                        *(Signature of Deponent)*


_____
(Printed Name of Deponent)

**SUBSCRIBED AND SWORN** to before me by _____ this \_\_\_\_ day of _____, 201\_.


_____
**NOTARY PUBLIC** in and for the
County of _____, State of _____