UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>**Case Track 12:** *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853<br><br>**Case Track 13:** *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069<br><br>**Case Track 14:** *City of Independence, Missouri v. Williams*, No. 19-op-45371<br><br>**Case Track 15:** *County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 | **MDL 2804**<br><br>**Case No. 17-md-2804**<br><br>**Hon. Dan Aaron Polster** |

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND SUPPLEMENT COMPLAINTS IN THE PBM BELLWETHER ACTIONS

The Plaintiffs' Executive Committee, together with Plaintiffs City of Rochester; New York; Lincoln County, Missouri; City of Independence, Missouri; and County of Webb, Texas (collectively, the four plaintiffs are referred to as "Plaintiffs"), file this motion under Fed. R. Civ. P. 15 for leave to supplement and amend their complaints in the four PBM bellwether actions. The four proposed supplemental and amended complaints are attached hereto as Exhibits 1 through 4 (the "Proposed Pleadings").[1]

---

[1] As Plaintiffs in previous bellwether tracks have done, Plaintiffs propose to supplement and amend their existing complaints, rather than file superseding amended complaints. The Proposed Pleadings thus expressly adopt and incorporate by reference the allegations in the existing operative pleadings.

## INTRODUCTION

As this MDL has established, the opioid epidemic was created and sustained by a wide array of actors in the opioid supply and payment chain. Prior case tracks have focused on the role of manufacturers, distributors, and chain pharmacies. Until recently, the role of "pharmacy benefit managers" (PBMs) in contributing to the opioid epidemic had been largely concealed from public view. However, it has become increasingly clear that, for at least the last two decades, PBMs have had a central role in facilitating the oversupply of opioids through conduct that had the intended purpose of increasing the prescribing, dispensing, and sales of prescription opioids without regard to (indeed, with actual knowledge of) the dangers of these drugs and the need for limitations on their use. The Court has now established new case tracks 12-15, and selected Plaintiffs as the four bellwethers for these case tracks, to address the liability of these defendants (the "PBM Defendants"). *See* Doc. # 5231.

It is well-established in this MDL that when a case is selected as a "bellwether," the plaintiff will be provided an opportunity to amend and supplement its complaint. *See* CMO 1, Doc # 232 (April 11, 2018); Doc. # 371 (May 3, 2018) (order clarifying CMO 1); Order Regarding Meijer's Motion to Strike, No. 18-op-46326 Doc # 61; *In re Natl. Prescription Opiate Litig.*, No. 21-4051, 2022 WL 20701236 (6th Cir. 2022). This Court expressly provided for this opportunity to amend in its May 3, 2018 order clarifying the deadlines set forth in CMO 1. The Sixth Circuit upheld an amendment pursuant to this provision, adding Meijer, Inc. as a defendant, in CT7. As the Sixth Circuit noted in its *Meijer* mandamus decision, this Court's 2019 scheduling order:

explicitly provided permission for plaintiffs to amend their complaint if their case was selected as a bellwether.  When this case was selected as a bellwether, the plaintiffs exercised their right to amend and added Meijer as a defendant.  Because the district court's scheduling order permitted such amendment from the outset, plaintiffs did not need the district court's leave to amend.

*In re Natl. Prescription Opiate Litig.*, 2022 WL 20701236 at *1.

The Court has already stated that its plan is to "allow the filing of amended complaints" in these bellwether cases but has asked that the Plaintiffs "do it with formality." (Tr. 12/1/23 Status Conference at 7).  More specifically, Plaintiffs understand that the Court intends to address the question of amending the complaints in the context of the specific pleadings Plaintiffs propose to file, and in particular, the effect those pleadings will have on the management and ultimately the trials of these cases.

As explained below, Plaintiffs should be permitted to file the Proposed Pleadings. The Proposed Pleadings will harmonize the four cases, streamlining the litigation of these claims.  They will allow Plaintiffs to preserve their rights by asserting all of the claims they believe are appropriate.  The assertion of the claims in the Proposed Pleadings will not make these cases unwieldy or unmanageable.  Not every claim that Plaintiffs assert will necessarily need to be tried, nor will these claims introduce significant new complexities that are not already inherent in these cases because of the complex and multi-faceted role played by the PBMs in the prescription drug market.  Such complexities as do arise can be addressed through case management orders, as this Court has done in the past.  Moreover, the Proposed Pleadings will ensure that the bellwether cases provide guidance – through rulings on motions to dismiss, through discovery, as

3

well as, potentially, through trial -- for the remainder of the cases in this MDL (and elsewhere) in which PBMs have been named as defendants, which narrower pleadings may not accomplish.   Plaintiffs' motion for leave to file the Proposed Pleadings should be granted in its entirety.

## BACKGROUND

The City of Rochester, New York, filed its complaint against more than 60 defendants in Monroe County Supreme Court on June 5, 2019.  The case was removed to federal court on June 28, 2019, and transferred to this Court on October 2, 2019.  Lincoln County, Missouri filed its petition in Missouri Circuit Court on October 24, 2019; following removal, the case was transferred to this Court on October 31, 2019.  The Lincoln County case included nearly 40 defendants.  The City of Independence, Missouri filed its petition in Missouri Circuit Court in St. Louis City on January 29, 2019; it was removed to federal court and transferred to this Court on February 1, 2019.[2]  The case of which the City of Independence was a part named more than 40 defendants.  Webb County, Texas, filed its initial complaint in the United States District Court for the Southern District of Texas on January 25, 2018; the case was transferred by the JPML to this Court on February 2, 2018.  Its currently operative pleading includes more than 60 defendants.[3]   In all four bellwether cases, the currently operative pleading includes

---

[2] As this Court knows, the City of Independence was one of several plaintiffs in a multi-plaintiff complaint.  Its claims were severed and only the City of Independence has been selected as a bellwether for this PBM track.

[3] The operative pleadings in the Rochester, Independence, and Lincoln County cases are the initial pleadings filed in state court. Webb County previously amended its
(footnote continues on next page)

4

defendants in all four categories identified in this litigation – manufacturers, distributors, chain pharmacies, and PBMs.  Since these cases were first filed, nearly all of the other defendants named in them have either entered into global settlements or filed for bankruptcy.

The Plaintiffs now seek leave to amend the four currently operative complaints to: (a) harmonize the allegations, the parties, and the claims for relief with four substantially identical complaints (except for variations in state law and jurisdiction-specific facts) in order to simplify the litigation going forward; (b) focus specifically on allegations against the PBM defendants, as opposed to allegations pertaining only to the numerous other defendants named in the currently operative complaints;  (c) add factual allegations to clarify the claims that have been asserted and to make use of information that was not available at the time the existing complaints were filed; and (d) assert claims under the federal RICO statute, and claims specific to Defendants' mail-order pharmacy businesses.

As noted above, in their original pleadings, Plaintiffs sued all four categories of defendants.  The original complaints necessarily addressed the roles of all of these actors, and the allegations against non-PBM actors accounted for the bulk of the complaints, with relatively small sections devoted to allegations specific to PBMs.  The Proposed Pleadings now focus more specifically on the role of the PBM Defendants, adding detailed and

---

complaint; its currently operative pleading is its Second Amended Complaint.  Prior to its selection as a bellwether plaintiff, Webb County sought, and obtained from this Court, leave to sever the PBM Defendants and file a Third Amended Complaint.  As the Court and the parties began to address a bellwether selection process for claims against PBM Defendants, Webb County elected not to file an amended complaint outside that process.

extensive allegations about their role in creating the opioid epidemic; much of this information was not available at the time the original complaints were filed.  The Proposed Pleadings include RICO claims,[4] state-law nuisance claims, and other related state-law claims.

As alleged and explained in the Proposed Pleadings, the PBM Defendants sit at the center of prescription drug dispensing in the U.S. because they contract with the manufacturers who make the drugs, the pharmacies who dispense them, and the third-party payors who pay for them. The PBMs thus played several roles in the opioid epidemic.  They colluded and joined with opioid manufacturers to spread fraudulent misrepresentations about the risks and benefits of opioids, in order to increase the number of prescriptions that would be written, because their contracts with the manufacturers provided that they would profit from increased sales.  They further colluded with the opioid manufacturers to limit the formulary options they would offer to their clients, and to omit or reduce other limits on opioid prescribing, again ensuring that opioid prescribing and sales would increase.  They did so based on the profits they would make, without regard to the risks and benefit of the drugs or the health and safety of patients and the public.  In the Proposed Pleadings, Plaintiffs further allege that the

---

[4] Because the Rochester, Independence, and Lincoln County cases were all filed in state court, none of them asserted federal RICO claims when they were commenced. Defendants removed the cases to federal court on the purported basis of "federal officer" removal.  Plaintiffs do not concede that removal was proper in any of the cases and, prior to the selection of their cases as PBM bellwethers, these three Plaintiffs would, at an appropriate time, have sought to have their cases remanded to state court.  The assertion of federal RICO claims in the Proposed Pleadings moots this issue.  (The operative pleading in the Webb County case currently includes a RICO claim.)

PBM Defendants were in possession of such an unprecedented wealth of data about opioid prescriptions that they knew, if not from the very beginning when they first made opioids so widely available then shortly thereafter, that opioids were being over-prescribed and diverted, and that an epidemic of opioid addiction was occurring.  But they intentionally kept the supply of opioids flowing freely, so that they could continue to extract profits from the misery they knew they were inflicting on Plaintiffs' communities.

The Proposed Pleadings also allege conduct by the PBM Defendants that touches on the dispensing of opioids in at least two different ways.  First, through contracts with tens of thousands of pharmacies around the country, the PBM Defendants involve themselves in the dispensing performed by these so-called "in-network" pharmacies.  This involvement includes performance, by the PBMs, of concurrent Drug Utilization Review ("cDUR"), a review of the appropriateness and/or validity of a prescription that is performed at the time the prescription is presented at the pharmacy.   Plaintiffs allege that, although the cDUR process is meant to ensure that inappropriate and/or invalid prescriptions (including potentially fraudulent ones) are not filled, the PBM Defendants instead used the cDURs they conducted to maintain the free flow of opioids.  Second, through their mail-order pharmacies, the PBM Defendants are in many instances the actual dispensers of opioids.  In their role as dispenser, the PBM Defendants are subject to the same obligations under the Controlled Substances Act (CSA) to provide effective controls against diversion as any other dispenser, controls they failed woefully to provide.  Moreover, the fact that the PBM Defendants, as dispensers, are registrants

7

under the CSA informs their obligations with respect to their other activities.  This is all the more true because it appears that the PBM Defendants' marketing activities and their mail-order pharmacy activities were linked, particularly in the context of so-called Patient Assistance Programs ("PAP"), marketing Programs for which Defendants provided mail-order pharmacy services.  Thus, in the Proposed Pleadings, allegations pertaining to dispensing and the CSA implicate Plaintiffs' claims in multiple ways.

For the reasons set forth below, Plaintiffs should be given leave to file their Proposed Pleadings to address all of this conduct.

## ARGUMENT AND AUTHORITIES

### I.    Plaintiffs Readily Meet the Standard for Amendment under Rule 15

Fed. R. Civ. P. 15 provides that courts "should freely give leave when justice so requires."  "In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"  *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir. 1973) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also* 6 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 1484 (3d ed. 2015) (Leave to amend "will normally be granted" as long as, on "examin[ation of] the effect and the timing of the proposed amendments," the court finds no "prejudice [to] the rights of any of the other parties to the suit.").

8

None of the concerns expressed in these authorities are present here.  These cases, along with every other case not previously designated as a bellwether, have been stayed during the course of this MDL while the Court oversaw a series of bellwether case tracks involving other defendants.  Now that they have been selected as bellwethers for claims against the PBM Defendants, consistent with CMO 1 (as clarified) and the prior procedure employed by this Court in other bellwether cases, Plaintiffs should be given leave to amend and supplement their complaints to focus more specifically on the claims against the PBM Defendants that will be tried in these cases.

Nothing in the Proposed Pleadings suggests otherwise.  Rather, the Proposed Pleadings do exactly what was envisioned:  expand the allegations based on Plaintiffs' current knowledge; harmonize the four bellwether complaints to simplify the litigation going forward; and clarify the nature of Plaintiffs' claims against the PBM Defendants, including claims arising from dispensing-related activities, in part by differentiating claims arising from their mail-order pharmacy activities.  The PBM Defendants are not prejudiced by the assertion of any claims in the Proposed Pleadings because they have always known that Plaintiffs would be given an opportunity to amend once PBM bellwether cases were selected.  Further, it has always been clear that such amendments would, of necessity, reflect the greater amount of information available to Plaintiffs at the time of amendment, as compared to when Plaintiffs filed their original pleadings. Indeed, as noted above, in order for these cases to serve their function as bellwethers, the claims asserted should reflect the widest array of claims and conduct that may be asserted

in cases against these Defendants, to provide the greatest information for the parties and the Court about the remainder of the cases against the PBM Defendants.

## II.   The PBM Bellwether Trials of the Claims in the Proposed Pleadings Will Not Be Unworkable or Unmanageable

The Court expressed some concern at the December 1, 2023 status conference that if Plaintiffs' claims against the PBM Defendants include "dispensing"-related claims, those might "replicate the pharmacy trials" (Tr. at 9).  Even if this is, to some extent, true, Plaintiffs should not be precluded from asserting these claims, for at least five reasons.

First, it would be unjust to require these Plaintiffs to forego these claims simply because other plaintiffs litigated claims with similar legal theories against other defendants.  Second, the mere fact that claims are asserted in the Proposed Pleadings does not mean necessarily that they must be tried together with the other claims asserted. While Plaintiffs do not suggest that it would be appropriate to sever any of their claims, they recognize both that the Court has the power to do so and also that the decision as to which claims should be tried, and when, is not one that can or should be made at the pleading stage.

Third, this Court has already presided over the preparation of bellwether cases involving multiple categories of defendants and defendants acting in multiple capacities, and those cases (CT1, in which plaintiffs asserted claims against manufacturers and distributors, and CT3, in which plaintiffs initially proceeded against the chain pharmacies as both distributors and dispensers) did not prove to be unmanageable.  Similarly, courts in New York and San Francisco were able to try a case involving multiple categories of

10

defendants, and the San Francisco trial included claims against several manufacturers, a distributor, and Walgreens in both its roles as a distributor and a dispenser. These cases were tried to conclusion and helped precipitate global settlements.

Fourth, as already noted, this case will involve dispensing conduct whether or not Plaintiffs assert claims against the PBM Defendants involving their mail-order pharmacies. As explained above, the PBM Defendants contract with tens of thousands of pharmacies; Plaintiffs' claims pertain to the dispensing performed by the PBM Defendants' in-network pharmacies as well as to dispensing performed by their mail-order pharmacy divisions. Questions pertaining to the PAPs implicate both marketing and dispensing and thus must be addressed whether or not Plaintiffs are proceeding against the PBM Defendants for their mail-order pharmacy activities. Thus, exclusion of claims against the PBM Defendants based on their mail-order pharmacy activity will not necessarily simplify the case.

Finally, as already noted, assertion of these claims will allow the bellwether cases to provide the greatest guidance to the parties and the Court to aid in resolution of the remaining cases in the MDL.

The Court also mentioned during the status conference that the PBM Defendants might seek to bring third-party claims against various pharmacies in response to any amended pleadings Plaintiffs' might file; indeed, counsel for the PBM Defendants' have previously threatened to do that. While that will undoubtedly be the subject of separate

briefing if, when, and to what extent the PBM Defendants choose to pursue that strategy, Plaintiffs will briefly address the concerns expressed by the Court.[5]

First, because Plaintiffs' claims implicate the PBM Defendants' relationship with their in-network pharmacies, the threat of third-party claims exists whether or not the PBM Defendants' mail-order pharmacies are part of Plaintiffs' claims. Second, each of the states whose law governs the state-law claims in the bellwether cases (Missouri, New York, and Texas) has statutory provisions that preclude a defendant such as the PBM Defendants from asserting contribution claims against a party who has settled with the Plaintiffs.[6] *See, e.g.*, V.A.M.S. § 537.060 (released party is discharged from "all liability for contribution or noncontractual indemnity to any other tortfeasor"); N.Y. Gen. Oblig. Law § 15-108 (release "relieves [the settling party] from liability to any other person for contribution"); Tex. Civ. Prac. & Rem. Code § 33.015(d) ("No defendant has a right of contribution against any settling person.")

Third, even if the PBM Defendants have potential contribution claims against other non-settling parties, those claims need not derail the Plaintiffs' PBM bellwether cases. Plaintiffs would likely move to strike the third-party claims, or alternatively to sever or request that the PBM Defendants' third-party claims be tried separately. *See* Fed. R. Civ. P. 14(a)(4); 42(b). The Court has broad discretion to order "a separate trial of one

---

[5] By commenting on these issues in a preliminary manner, Plaintiffs do not intend for this to be an exhaustive discussion of the propriety of potential third-party practice, and specifically reserve all rights to fully brief that issue at the appropriate time.

[6] The same is true under Ohio law. O.R.C. § 2307.28(B) (a release "discharges the person to whom it is given from all liability for contribution to any other tortfeasor.")

or more separate issues, claims, … or third-party claims" "[f]or convenience, to avoid prejudice, or to expedite and economize."  Fed. R. Civ. P. 42(b).

Ordering separate trials on the PBM Defendants' third-party claims would be especially appropriate in this circumstance, because the PBM Defendants' contribution claims would be contingent upon them being held disproportionately liable in the Plaintiffs' underlying trial.  *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 33.013, 33.015 (defendant only liable for its proportionate share of responsibility unless found to be more than 50% responsible, and has contribution claim against other defendants who do not pay their proportionate share); V.A.M.S. § 537.067 (same); N.Y. C.P.L.R. § 1402 (contribution limited to "the excess paid by [the contribution plaintiff] over and above his equitable share of the judgment recovered by the injured party.").[7]

Moreover, the defendants will not be prejudiced if the Court defers third-party claims.  The third-party provisions of Rule 14 are permissive and not compulsory. *De Vore Brokerage Co. v. Goodyear Tire & Rubber Co.*, 308 F. Supp. 279 (Tenn. M.D. 1969) (citing *Union Paving Co. v. Thomas*, 9 F.R.D. 612, 613 (E.D. Pa. 1949) ("It is clear that . . . Rule 14 confers upon a defendant the right to bring in additional defendants which he may exercise or ignore as he sees fit")). Failure to implead an additional defendant does not bar subsequent suit for contribution or indemnity. *De Vore Brokerage*. Indeed, a third-

---

[7] As with the discussion about third-party practice above, Plaintiffs do not intend for this discussion to be a waiver of their rights with respect to the governing law in any of these PBM bellwether cases regarding joint and several liability or comparative fault. Rather, this discussion is provided merely to address the Court's instruction to Plaintiffs that they discuss how the PBM bellwether cases would proceed in an orderly manner and not become "unworkable."

party claim brought after the original claims have been settled can be dismissed for adjudication in an independent action. *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800 (6th Cir. 2008). Nor are there any statute of limitations concerns as the relevant statutes of limitations on contribution or indemnity claims do not even start to run until there is a entry of judgment or payment of the underlying claim by the party seeking contribution. *Herman v. 36 Gramercy Pk*, 2016 N.Y. Misc. LEXIS 17760 (citing *Bay Ridge Air Rights, Inc. v. State*, 44 NY2d 49, 55-56 (1978) (accruing on payment); R.S. Mo. 516.120 (same); *Simon v. Kansas City Rug Co.*, 460 S.W.2d 596 (Mo. 1970) (same); *Beaumont Coca Cola Bottling Co. v. Cain*, 628 S.W.2d 99 (9th Ct. App. 1981) (accruing on either entry of judgment or payment).

The Court need not determine, now, how it would address any third-party claims that may be asserted. Plaintiffs submit, however, that the Court should not allow the PBM Defendants' threat of complicating this case with third-party claims to deprive Plaintiffs of the opportunity to assert and preserve all of their claims against these defendants and to provide the Court and the MDL a full exploration of the role of the PBMs in the opioid crisis.

## CONCLUSION

For these reasons, the PEC and the PBM Bellwether Plaintiffs respectfully request that the Court grant leave for them to file their Proposed Pleadings.

14

Dated:December 15, 2023

Respectfully submitted,

*Plaintiffs' Co-Lead Counsel*

  /s/ Jayne Conroy
Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR  00907
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Liaison Counsel*

  */s/ Peter Weinberger*
Peter Weinberger
SPANGENBERG SHIBLEY & LIBER, LLP
1001 Lakeside Avenue, E, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

**Counsel for City of Independence, Missouri:**

*/s/ John F. Garvey*
STRANCH, JENNINGS & GARVEY, PLLC
John F. Garvey
Colleen Garvey
Ellen A. Thomas
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

*/s/ Joanne M. Cicala*
THE CICALA LAW FIRM PLLC
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Daniel A. Thomas*
HUMPHREY FARRINGTON MCCLAIN
Daniel A. Thomas
221 W. Lexington Ave. Ste 400
Independence, MO 64050
Tel: (816) 836-5050
DAT@hfmlegal.com

*Counsel for Plaintiff City of Independence, MO*

16

**Counsel for City of Rochester:**

*/s/Hunter J. Shkolnik*
Hunter J. Shkolnik
Paul J. Napoli
NSPR Law Services LLC
1302 Avenida Ponce de Leon
Santurce, Puerto Rico  00907
(833) 271-4502
hunter@nsprlaw.com
pnapoli@nsprlaw.com

Salvatore C. Badala
Shayna E. Sacks
Joseph L. Ciaccio
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY  10017
(212) 397-1000
sbadala@napolilaw.com
ssacks@napolilawcom
jciaccio@napolilaw.com

*Counsel for Plaintiff City of Rochester*

**Counsel for County of Webb, Texas:**

*/s/ Joanne M. Cicala*
**THE CICALA LAW FIRM PLLC**
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

_/s/ Kevin Sharp_
**SANFORD HEISLER SHARP, LLP**
Kevin Sharp
Christine Dunn
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com
cdunn@sanfordheisler.com

_Counsel for Plaintiff Webb County, TX_

**Counsel for Lincoln County, MO:**

_/s/ John F. Garvey_
**STRANCH, JENNINGS & GARVEY, PLLC**
John F. Garvey
Colleen Garvey
Ellen A. Thomas
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

_/s/ Joanne M. Cicala_
**THE CICALA LAW FIRM PLLC**
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

18

/s/ Patrick A. Hamacher
**NIEMEYER, GREBEL & KRUSE, LLC**
Patrick A. Hamacher
Mark R. Niemeyer
211 N. Broadway, Suite 2950
St. Louis, MO  63102
Tel: (314) 241-1919
Fax: (314) 665-3017
hamacher@ngklawfirm.com
Niemeyer@ngklawfirm.com

*Counsel for Plaintiff Lincoln County, MO*


## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

/s/ Peter Weinberger
Peter Weinberger

2910155.1