UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> "PBM Cases" | ) ) ) ) ) ) ) ) ) ) | MDL 2804 <br><br> Case No. 1:17-md-2804 <br><br> Special Master Cohen <br><br> **<u>ORDER REGARDING DISPUTED REDACTIONS</u>** |

The parties have presented to the undersigned disputes over the propriety of redactions to Plaintiffs' proposed amended complaints. The PBMs assert certain paragraphs contain sensitive trade secret information that, if disclosed, would cause a clearly defined and serious competitive injury to their business. Plaintiffs respond that the information in the disputed paragraphs is not a trade secret, and/or is too stale to cause a competitive injury; and, in either case, the PBMs have not overcome the strong presumption in favor of openness.

The Special Master has reviewed carefully the parties' submissions and also received oral argument on January 12, 2024. With one exception, as explained below, the Special Master agrees with Plaintiffs that the redactions sought by the PBMs are not appropriate.[1]  This Order is filed under seal, in case any party objects to these rulings and seeks review by the Court; however, the seal may be lifted, depending on the Court's rulings on any objections.

---

[1] The parties agreed to present their redaction disputes with reference to the amended complaint in *County of Webb, Texas v. Purdue Pharma, L.P.*, case no. 18-op-45175 (Track 15), and then to apply the Court's rulings to parallel allegations in the complaints in the other PBM Track cases.

I.      **Applicable Law.**

> Under Ohio law, a trade secret is defined as "information . . . that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[; and] (2) [i]t is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

*Kondash v. Kia Motors America, Inc.*, 767 F. App'x 635, 638 (6th Cir. 2019) (quoting Ohio Rev. Code § 1333.61(D)(1)-(2)).

> The party seeking to seal records has the heavy burden of overcoming the "strong presumption in favor of openness." To meet this burden, the party must show three things: (1) a compelling interest in sealing the records; (2) that the interest in sealing outweighs the public's interest in accessing the records; and (3) that the request is narrowly tailored. Where a party can show a compelling reason for sealing, the party must then show why those reasons outweigh the public interest in access to those records and that the seal is narrowly tailored to serve that reason. To do so, the party must "analyze in detail, document by document, the propriety of secrecy, providing reasons and legal citations."

*Id.* at 637 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305 (6th Cir. 2016)).

"The fact that a document will reveal 'competitively-sensitive financial and negotiating information' is not an adequate justification for sealing—rather, 'the proponents of closure bear the burden of showing that 'disclosure will work a clearly defined and serious injury.'" *Id.* at 639 (quoting *Shane Grp.*, 825 F.3d at 305). Accordingly, the MDL Court has previously held that "[i]nformation that is considered 'business confidential' but that is not a bona fide trade secret does not qualify for redaction." Docket no. 1719 at 3 n.4.

"While the existence of a trade secret will generally satisfy a party's burden of showing a compelling reason for sealing documents, . . . even if a district court finds that a trade secret exists, it must still determine whether public interest outweighs the moving party's interests in protecting their trade secret." *Kondash*, 767 F. App'x at 638.

The Sixth Circuit Court of Appeals earlier reviewed the MDL Court's rulings on redaction and sealing of documents filed by the parties. It observed that "sealed or redacted pleadings . . . that the parties have filed with the court . . . are the sort of records that would help the public assess for itself the merits of judicial decisions. These documents are therefore subject to the strong presumption in favor of openness, which applies here with extra strength given the paramount importance of the litigation's subject matter." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 939 (6th Cir. 2019) (internal citations omitted).

**II.      Analysis.**

The Special Master's ruling on each proposed redaction is set forth below.

**A.      Graphic following Paragraph 51:**

This graphic is an excerpt from a 2017 Express Scripts PowerPoint entitled "Comprehensive Opioid Solution: What Is Express Scripts Doing to Combat this Epidemic?" The PowerPoint slide shows: (1) the number of opioid overdose deaths in 2015, (2) the amount of money Express Scripts' clients spent on an opioid overdose treatment drug, and (3) the number of Express Scripts' beneficiaries that have the potential to die if Express Scripts does nothing.

Express Scripts does not explain how it might actually or potentially derive independent economic value by keeping secret the seven-year-old information in this graphic. Express Scripts states only that the information "gives competitors a window into Express Scripts' internal strategy for future negotiations." *See* Redaction Submission Chart at C:2.

The information presented in this graphic does not constitute a marketing plan or a new product. Nothing in this graphic implicates internal strategy considerations. This graphic does not contain trade secrets. Accordingly, there is no compelling interest in making this redaction. This graphic may not be redacted.

B.     **Paragraphs 281–282:**

These paragraphs quote language regarding how the PBMs define the term "disadvantage" in their rebate agreements. Courts have held that "documents concerning rebate agreements are highly confidential and contain competitive information." *Warner Chilcott Ltd. v. Express Scripts, Inc.*, 2017 WL 4084045, at *2 (E.D. Mo. Sept. 14, 2017). However, it does not necessarily follow that ***all*** the information in those documents is a trade secret. To be a trade secret, the PBMs must show they derive independent economic value from the information not being known to competitors.

The PBMs' business strategy of foregoing various utilization management controls (*i.e.*, "disadvantaging") for certain drugs over others, in order to negotiate for greater rebates, is a well-known and well-understood industry practice.[2] The existence of the strategy, itself, without detail, is not a trade secret.  These paragraphs contain no specificity regarding whether, when, or the extent to which any particular drug may qualify for rebates, or the amount or percentage of those rebates, and thus does not disclose any trade secret.

The PBMs have not shown that disclosure of these paragraphs will work clearly defined or serious injury. The PBMs have not met their heavy burden of showing their interest in protecting

---

[2] *See, e.g., Washington County v. Eli Lilly and Co.*, case No. 1:23-cv-03081, docket no. 1, ¶¶392-402 (D. Md. Nov. 13, 2023); Charles E. Grassley & Ron Wyden, *Staff Report on Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug*, U.S. Sen. Fin. Comm., at 7, 38–40 (Jan. 2021), *available at* https://www.finance.senate.gov/imo/media/doc/Grassley-Wyden%20Insulin%20Report%20(FINAL%201).pdf .

these paragraphs from disclosure outweighs the public interest in access to court records. These paragraphs may not be redacted.

        C.        **Paragraphs 283, 286–287, 289–290:**

These paragraphs set forth broad-brush descriptions of situations where the PBMs agreed with opioid manufacturers not to disadvantage those manufacturers' opioid products in exchange for rebates. These paragraphs contain slightly more specificity than paragraphs 281 and 282, in that they name specific manufacturers and, in some cases, the particular drug that qualified for a rebate under the rebate agreements. However, as above, these paragraphs contain no specificity regarding whether, when, or the extent to which the particular drug identified may qualify for rebates, or the amount or percentage of those rebates, and thus does not disclose any trade secret. Rather, the primary thrust of these paragraphs is that rebates were contingent upon the PBMs not disadvantaging the manufacturers' products. This is a fact which is widely known in the industry, is not a trade secret, and will not work clearly defined or serious injury. The PBMs have not met their heavy burden of showing their interest in protecting these paragraphs from disclosure outweighs the public interest in access to court records. These paragraphs may not be redacted.

The Special Master also notes that Optum's arguments about these paragraphs is particularly weak. For example, Optum seeks redaction of a paragraph (¶286) where Plaintiff quotes language from a rebate agreement between Optum and Johnson & Johnson regarding the fentanyl drug Nucynta. However, two paragraphs prior (¶284), Plaintiffs quote very similar language from a rebate agreement between an Express Scripts predecessor and Janssen (the same manufacturer) regarding Nucynta (the same drug). Express Scripts does not object to or seek redaction of paragraph 284 regarding its rebate agreement. This severely undercuts Optum's

5

argument it will suffer any competitive injury, since a direct competitor did not consider the disclosure of a virtually identical rebate provision to be potentially injurious.

### D. Last Sentence of Paragraph 292 and Footnote 46:

These portions expressly refer to Express Scripts' margin on the entire class of opioids in 2016. Express Scripts cites *Express Scripts, Inc. v. Lavin,* 2017 WL 2903205, at *6 (E.D. Mo. July 7, 2017), as support for its argument that "pricing and profit margins of Express Scripts' products" constitute trade secrets.

The recitation of this eight-year-old profit margin regarding an entire class of opioid analgesics ***might*** constitute exposure of a trade secret; however, the Sixth Circuit has held that, "even if a district court finds that a trade secret exists, it must still determine whether public interest outweighs the moving party's interests in protecting their trade secret." *Kondash*, 767 F. App'x at 638.

Here, the age of this information, and the aggregate character of Express Scripts' profit margin on the entire class of opioids—rather than any specific product—markedly minimize the potential that Express Scripts derives any economic value, actual or potential, from that information, or that others may obtain economic value from its disclosure or use. Thus, even if it is a trade secret, Express Scripts' interest in protecting this information is minimal. The public interest in this case, on the other hand, remains extremely high. *See In re Opiate Litig.*, 927 F.3d at 939. Because the public interest strongly outweighs Express Scripts' interest in protecting this information, it may not be redacted.

E. **Paragraph 334:**

This paragraph describes a 2006 agreement between Express Scripts and Purdue. The agreement is alleged to have continued until at least 2010. Purdue entered bankruptcy proceedings in 2019. During the hearing on these redactions, counsel for the PBMs indicated they would look into whether these Purdue contracts continue to be active today. *See* Hrg. Tr. at 23:9–16. In email responses to the Special Master, both PBMs represented their rebate contracts with Purdue do remain active. *See* Jan. 18, 2024 Email from Bond to Cohen; Jan. 18, 2024 Email from Plourde-Cole to Cohen.

The PBMs also assert that, "even if there wasn't an active agreement today, publicly disclosing the agreements, the provisions between manufacturers and PBMs, even for contracts that have expired by their terms, it would give competitors an advantage because they could mine those contracts and say, well, in that negotiation, OptumRx was willing to agree to X provision as opposed to Y provision, and that gives the competition – or that give the manufacturers a leg up." *Id.* at 23:17–24:1.

Here, Plaintiffs complaint refers to several very specific contractual provisions that may constitute actual trade secrets. In the paragraphs described above, Plaintiffs' allegations merely disclose that an opioid would not be "Disadvantaged" (a well-known industry practice), but did not disclose whether, when, or the extent to which the drug may qualify for rebates, or the amount or percentage of those rebates. In contrast, paragraph 334 describes precisely what Express Scripts would do and what it would deliver to Purdue in exchange for administrative fees. While paragraph 334 does not describe the amount of fees, the remaining terms are sufficiently particularized that Express Scripts may obtain economic value from its competitors not knowing what actions it might

agree to take in exchange for administrative fees. Accordingly, the paragraph may be redacted as follows:

> 334. In addition, beginning in 2006, Express Scripts and Purdue entered into an ongoing "Participating Manufacturer Agreement" under which, in return for "administrative fees," Express Scripts would  Express Scripts would also ▮▮▮▮ And, Express Scripts agreed it would provide numerous deliverables to Purdue, including ▮▮▮▮ which enabled Purdue to more effectively pull through its drugs' formulary status to physicians. The "administrative fees" Express Scripts received were tied to the number of opioids it sold—i.e., the more opioids it sold, the more it made. This agreement was strictly confidential. Express Scripts and Purdue renewed this agreement on at least three occasions, and it was in place until at least the end of 2010.

**F.     Paragraphs 438–439; 442–443; and 661–662 and Associated Graphics:**

Paragraphs 438, 439, 661, and 662, and graphics associated with those paragraphs, contain allegations about internal discussions alleged to have occurred at Optum. Similarly, paragraphs 442 and 443 contain allegations about internal discussions alleged to have occurred at Express Scripts.

Optum asserts that, because their confidential rebate agreements are trade secrets, and the internal communications tangentially discussed those agreements, the communications should be considered trade secrets as well. Optum does not articulate how disclosure of these email exchanges, which do not reveal any terms of its rebate agreements, will or could cause a clearly defined and serious injury. At best, these paragraphs show only that manufacturer rebates were conditioned upon Optum not implementing various utilization management controls—a fact which is well-known in the industry—and that Optum desired to maintain these rebates—a fact that is so obvious it cannot qualify as a trade secret. These paragraphs and associated graphics may not be redacted.

Turning to paragraphs 441 and 442, Express Scripts asserts these allegations reveal internal discussions and decision-making concerning its Value Assessment Committee, its formulary decision-making strategy, its responses to an RFP, and customer feedback and opinions about Express Scripts' products and services. But these paragraphs do not appear to contain anything like what Express Scripts describes. Paragraph 442 does mention the Value Assessment Committee—in the context of stating that some of Express Scripts' employees did not agree with a decision the Committee made—but there is no discussion of the Committee's decision-making process or how it came to the unpopular decision. Paragraph 443 contains discussions by Express Scripts executives regarding utilization measures not being implemented, but does not appear to contain any customer reviews or opinions regarding any of Express Scripts' products or services.

Express Scripts does not articulate how disclosure of these discussions will or could cause a clearly defined and serious injury. The paragraphs reflect internal discussions about how Express Scripts elected to address the growing societal problem of opioid overutilization. Express Scripts may believe these discussions could cast it in a negative light, but the language does not qualify as commercially sensitive information or trade secrets, and Express Scripts' interest in redacting these paragraphs does not outweigh the public interest. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."). These paragraphs and associated graphics may not be redacted.

G. **Paragraphs 654–656:**

Paragraphs 654–656 contain a discussion about a confidential informant who worked in Express Scripts' Fraud, Waste, and Abuse Department from 2013 to 2019. Express Scripts asserts

the information in these paragraphs is highly sensitive and confidential and should be sealed pursuant to provision II.7 of the *Order Providing Directions Regarding Filing of Briefs Under Seal*. *See* docket no. 1719 at 3 ("Information that *may* be redacted, if there exists an individualized, compelling reason for privacy sufficient to overcome the public interest in disclosure, includes the following: (3) bona fide trade secrets; (4) law enforcement material pertaining to ongoing investigations; (5) law enforcement confidential sources or confidential surveillance methods; (6) information affecting national security; and (7) other material of a similar nature with respect to the need for privacy.") (footnote omitted, emphasis in original).

The information in these paragraphs is not a trade secret, however, and Express Scripts does not assert that it is. The information also does not implicate law enforcement or national security.[3] At best, the recited information *might* be considered confidential business information, which the Court has expressly indicated does not qualify for redaction. *See* docket no. 1719 at 3 n.4 ("Information that is considered 'business confidential' but that is not a bona fide trade secret does not qualify for redaction."). And, even if the language at issue constituted "other materials of a similar nature with respect to the need for privacy," it still cannot be redacted unless Express Scripts shows an "individualized, compelling reason for privacy sufficient to overcome the public interest in disclosure." *Id.* Express Scripts has not made such a showing. Accordingly, these paragraphs may not be redacted.[4]

---

[3] Express Scripts asserts that the paragraphs should be redacted pursuant to provisions II.(4) and (5) of the Court's Order. These provisions relate to "law enforcement material pertaining to ongoing investigations" and "law enforcement confidential sources or confidential surveillance methods." Docket no. 1719 at 3. During the hearing, Mr. Irpino, on behalf of Plaintiffs, represented that "this is not from law enforcement, and this does not implicate any law enforcement issues." Hrg. Tr. at 30:15–17. So, those provisions of the Court's Order do not apply.

[4] Express Scripts also argues Plaintiffs cannot use information supplied by a confidential informant as a sword, while shielding [his] identity. But the character of the information alleged in paragraphs 654–656 is a separate and distinct issue from the confidentiality of Plaintiffs' informant. If Express Scripts believes it or the public has a specific need to know the identity of Plaintiffs' confidential informant, Express Scripts can seek that relief, and the Special Master and/or the Court will evaluate it. But the identity of the informant has no bearing on whether the

### III. Conclusion.

If there is no timely objection to this Order, then Plaintiffs shall make redactions to paragraph 334 in accordance with this ruling and file the redacted complaint on the docket. No other paragraphs, images, or graphics shall be redacted, except where otherwise mutually agreed to by the parties.

If any party wishes to object to the rulings in this Order, it may do so on or before **January 29, 2024,** pursuant to the procedures set forth in the Appointment Order (docket no. 69) and subsequent orders clarifying the process. *See ,e.g.,* docket nos. 1349 (regarding submission of new evidence or argument to the Court not first presented to the Special Master); docket no. 3527 at 2 n.6 (regarding the Special Master's authority to set objection deadlines shorter than 21 days).

**RESPECTFULLY SUBMITTED,**

 /s/ David R. Cohen
**David R. Cohen**
**Special Master**

**Dated: January 22, 2024**

---

information provided is a trade secret that, if disclosed, would cause a clearly defined and serious competitive injury.