**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | **MDL NO. 2804** |
| THIS DOCUMENT RELATES TO: | ) ) ) | **Case No. 1:17-md-2804** |
| *City of Rochester v. Purdue Pharma L.P.*, No. 19-op-45853 (Track 12) | ) ) ) ) | **JUDGE DAN AARON POLSTER** |
| *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13) | ) ) ) | |
| *City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14) | ) ) ) | |
| *County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | ) ) ) ) | |

**PLAINTIFFS' AND PEC'S JOINT MEMORANDUM OF LAW IN**
**OPPOSITION TO OPTUMRX, INC.'S MOTION TO DISQUALIFY MOTLEY RICE**

## TABLE OF CONTENTS

INTRODUCTION .............................................................................................................1

FACTUAL BACKGROUND ............................................................................................3

LEGAL STANDARD .......................................................................................................6

ARGUMENT ....................................................................................................................6

I.      There is No Disadvantage to Optum Because Any Opioid-Related Investigation
        Documents Must Be Reproduced to All Plaintiffs' Counsel Under DR-22. .............6

II.     Optum Also Does Not Satisfy Rule 1.11(c)'s Other Requirements. ........................12

        A.    Optum Does Not Show That Its Documents at Issue are "Confidential Government
              Information" as Rule 1.11(c) Requires. ............................................................12

        B.    Optum Does Not Show *Both* That Motley Rice is a "Public Officer or Employee" in
              Representing its Other Government Clients *and* That the Government Plaintiffs
              Herein are "Private Clients" as Rule 1.11(c) Requires. ......................................14

CONCLUSION ................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

*Allied Realty of St. Paul, Inc. v. Exchange Nat'l Bank of Chicago*,
283 F. Supp. 464 (D. Minn. 1968) .............................................................................12

*Collins v. Wayne Corp.*, 621 F.2d 777 (5th Cir. 1980) ............................................17

*Davis v. Southern Bell Tel. & Tel. Co.*, 149 F.R.D. 666 (S.D. Fla. 1993) ................2, 13

*Doe 1 v. Francis*, 2006 WL 844430 (N.D. Fla. May 8, 2006)..................................13, 16

*General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974) ...............15

*Handelman v. Weiss*, 368 F. Supp. 258 (S.D.N.Y. 1973)..........................................12

*In re Domestic Air Transp. Antitrust Litig.*, 142 F.R.D. 354 (N.D. Ga. 1992)..........13

*In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555
 (N.D. Ohio March 20, 2019) .................................................................................6, 8

*In re Valley-Vulcan Mold Co.*, 237 B.R. 322 (B.A.P. 6th Cir. 1999)......................6

*Kronenberg v. LaRouche*, 2010 WL 1443934 (E.D. Va. April 9, 2010)..................11

*O'Brien v. Brunner*, 2016 WL 1059683 (S.D. Ohio March 17, 2016)....................6

*Rawers v. U.S.*, 488 F. Supp. 3d 1059 (D.N.M. 2020) .............................................17


**Rules**

ABA Model R. Prof'l Conduct 1.11(b) ....................................................................13

Code of Prof'l Responsibility, N.Y. Canon 9 (DR 9-101(b)) ..................................15

Ohio R. Prof'l Conduct 1.11(a) ..............................................................................16

Ohio R. Prof'l Conduct 1.11(c) ...............................................................*passim*

## INTRODUCTION

Recidivist corporate wrongdoers do not get to choose which lawyers can sue them.  Motley Rice's representation of government clients investigating OptumRx's overbilling for insulin and other essential prescription drugs does not disqualify the firm from also representing the government Plaintiffs herein claiming that Optum's unrestrained promotion and dispensing of opioids fueled epidemics of addiction in their communities.

Alone among Defendants, Optum moved to disqualify Motley Rice from representing the bellwether Plaintiffs.  Optum contends that the firm's separate representation of other governments investigating its and other PBMs' (*including Defendant Express Scripts'*) overbilling gave it access to subpoenaed information that may be used to Optum's material disadvantage herein, in purported violation of Ohio Rule of Professional Conduct 1.11(c).  This argument is fundamentally flawed.

Rule 1.11(c) imposes four distinct requirements, each one of which a movant must satisfy before a representation may be prohibited.  The Rule provides that:

> Except as law may otherwise expressly permit, a lawyer [1] having information that the lawyer *knows* is confidential government information about a person [2] acquired when the lawyer was a public officer or employee, may not [3] represent a private client whose interests are adverse to that person [4] in a matter in which the information could be used to the material disadvantage of that person.  As used in this rule, the term 'confidential government information' means information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public.

Ohio R. Prof'l Conduct 1.11(c) (emphasis in original).  Optum does not show that any of these necessary circumstances is present in Motley Rice's representations of other government clients.  However, Optum's inability to satisfy the fourth and final requirement—possible "material disadvantage"—is clear and dispositive, and its motion to disqualify can and should be denied on this ground.

1

Optum cannot show that Motley Rice could use its access to the subpoenaed overbilling information to Optum's material disadvantage in this litigation.  If the subpoenaed information *does not* pertain to Optum's opioid promotion and dispensing, then Motley Rice's access to it is immaterial because the information itself is immaterial.  If the subpoenaed information *does* pertain to Optum's opioid promotion and dispensing, then Optum must reproduce it in this MDL under Discovery Ruling No. 22 ("DR-22") (ECF 2576), which orders Defendants to reproduce all documents they produced in government investigations regarding the marketing, sales, or dispensing of Opioids.  *Id.* At 4.  Since the subpoenaed information either is immaterial or else must be reproduced under DR-22, Motley Rice's access to it cannot disadvantage Optum when every other Plaintiffs' lawyer has the same access and can make the same uses of it.  For this reason alone, the Court should deny the motion to disqualify.

If the Court looks further, Optum also fails to satisfy the Rule's other requirements.  First, the subpoenaed information is not "confidential government information" under Rule 1.11(c) because it is discoverable by Plaintiffs with or without DR-22.  *Davis v. Southern Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 674 (S.D. Fla. 1993) (civil investigative demand materials are "otherwise available" and thus are not "confidential government information").  Second, Optum does not show *both* that Motley Rice was a "public officer or employee" in representing its other government clients *and* that the bellwether government Plaintiffs herein are "private client[s]" under Rule 1.11(c).  Indeed, Optum's experts effectively *admit* that one or both of these requirements are not satisfied.  *See* ECF 5276-18 (Expert Rpt.) at 21 n.20 ("Although [Linda] Singer and Motley Rice *represent public entities* in their private practice, *they are not government actors in that capacity*[.]") (emphasis added).  For any or all of these additional reasons, the Court also may deny Optum's motion to disqualify.

**FACTUAL BACKGROUND**

Optum focuses on three other representations by Motley Rice of state or local government clients—the Hawaiʻi Attorney General; the District of Columbia Attorney General; and the City of Chicago—in matters involving Optum's and other pharmacy benefit management ("PBM") companies' overbilling for prescription drugs.  *See* Optum Memo. (ECF 5276-1) at 4-7.

*In the Hawaiʻi matter*, Motley Rice represents the State Attorney General in what was an investigation and now is litigation of Optum's, Express Scripts', and other PBMs' overbilling for prescription drugs.  ECF 5276-5 (State of Hawaiʻi Agreement) at A1-1; Declaration of Elizabeth Paige Boggs ("Boggs Decl.") (filed herewith), ¶¶ 3, 16-17.  As counsel for Hawaiʻi, Motley Rice served a subpoena on Optum on October 15, 2021, asking that it produce all documents, *inter alia*, identifying the prescription drug manufacturers from which it received the most payments, relating to rebate payments, and/or relating to formulary coverage for any drug for which Optum received payments from a manufacturer.  ECF 5276-6 (Hawaiʻi Subpoena) at 11-15.

Although the Hawaiʻi subpoena was not limited to any specific prescription drug, Optum produced in response only documents and information related to insulin drugs.  Boggs Decl., ¶ 15. Optum produced rebate-related data and consumer transaction level data for insulin prescriptions filled at pharmacies in Hawaiʻi.  *Id.*  Optum also produced documents concerning insulin pricing that it previously had produced to the Minnesota Attorney General.  *Id.*  These insulin pricing documents included Optum's rebate agreements with insulin manufacturers (Novo Nordisk, Sanofi-Aventis, and Eli Lilly), prescription drug formularies that are publicly available, template communications to customers, and internal emails and presentations.  *Id.*

Optum produced these documents as "confidential" pursuant to a confidentiality agreement between Hawaiʻi and Optum (ECF 5276-7).  The confidentiality agreement limits disclosure of

produced documents, but permits Hawaiʻi to share the documents with other law enforcement agencies that agree to be bound by and comply with the agreement.  *Id.*, ¶ 4(c).  Motley Rice has not shared the documents or information with any other government entity.  Boggs Decl., ¶ 18.

The State of Hawaiʻi filed suit against Optum and other PBMs on October 4, 2023, alleging that they engaged in unfair and deceptive acts and practices and unfair methods of competition by artificially inflating drug prices.  Boggs Decl., ¶ 16 and Ex. D (First Am. Compl.).  Optum has not produced any additional documents in discovery in the litigation.  *Id.*, ¶ 17.

*In the District of Columbia ("DC") matter*, Motley Rice represented the DC Attorney General in an investigation of Optum's and other PBMs' possible violations of DC's consumer protection and false claims statutes.  ECF 5276-10 (DC Letter Contract) at 1.  As counsel for DC, Motley Rice served a subpoena on Optum on December 28, 2020, asking that it produce all documents, *inter alia*, identifying the prescription drug manufacturers from which it received the most payments, relating to rebate payments, and/or relating to formulary coverage for any drug for which Optum received payments from a manufacturer.  ECF 5276-11 (DC Subpoena) at 9-12.

Although the DC subpoena was not limited to any specific prescription drug, Optum produced in response mostly documents and information related to insulin drugs.  Boggs Decl., ¶ 10.  Optum produced rebate-related and consumer transaction-level data for insulin prescriptions filled at pharmacies in DC.  *Id.*  Optum also produced a DC-specific list of drug manufacturers with which it contracted, ranking them by rebate value for prescriptions filled at DC pharmacies. *Id.*  Optum also produced the same documents concerning insulin pricing that it previously had produced to the Minnesota Attorney General, *id.*, and later produced to Hawaiʻi, *supra*.  These included Optum's rebate agreements with insulin manufacturers (Novo Nordisk, Sanofi-Aventis,

and Eli Lilly) and prescription drug formularies that are publicly available, template communications to customers, and internal emails and presentations.  Boggs Decl., ¶¶ 10-11, 15.

Optum produced these documents as "confidential" pursuant to a confidentiality agreement between DC and Optum (ECF 5276-12).  The confidentiality agreement limits disclosure of produced documents, but permits DC to share the documents with other law enforcement agencies that agree to be bound by and comply with the agreement.  *Id.*, ¶ 4(c).  Motley Rice did not share the documents or information with any other Government entity.  Boggs Decl., ¶ 13.  The documents Optum produced to Motley Rice for DC were destroyed on August 4, 2022.  *Id.*, ¶ 10.

*In the City of Chicago matter*, Motley Rice represented Chicago in an investigation of "copay clawbacks"—a practice where consumers are charged copayments that exceed a pharmacy's customary price (the "cash price") for a prescription and/or the amount the pharmacy receives for filling the prescription—and of "gag clauses," which prohibit pharmacies from telling consumers about the existence of copay clawbacks and/or that they may save money by paying for a prescription with cash rather than utilizing their insurance.  Boggs Decl., ¶ 6.

Chicago served a subpoena on Optum on November 8, 2018, asking that it produce documents regarding co-pay clawbacks and gag clauses.  ECF 5276-16 (Chicago subpoena) at 9-11.  Chicago's subpoena did not seek documents on rebates or formularies.  *Id.*; Boggs Decl., ¶ 6.

Optum produced in response claims data for prescriptions filled by Chicago residents.  Boggs Decl., ¶ 7.  The Chicago claims data included the amounts of each copayment a pharmacy collected from a consumer for a prescription, the pharmacy's usual and customary price for each prescription, and the amount that Optum reimbursed the pharmacy for each prescription.  *Id.*  Optum further produced just five other documents in response to the Chicago subpoena.  *Id.*

Optum produced these documents subject to a confidentiality agreement with Chicago (ECF 5276-17). The agreement authorized Optum to limit disclosure by designating documents as "confidential." *Id.*, ¶ 4. Optum designated only one of the five non-claims documents—a template pharmacy network agreement—as confidential. Boggs Decl., ¶ 7. Motley Rice has not shared any Optum-Chicago documents or information with any other government entity. *Id.*, ¶ 8.

## LEGAL STANDARD

"'Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555, at *2 (N.D. Ohio March 20, 2019) (quoting *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999) (internal quotation marks and citation omitted). "'The United States Court of Appeals for the Sixth Circuit now looks to the codified Rules of Professional Conduct for guidance in determining whether an attorney should be disqualified from representing a client based on a conflict of interest.'" *Id.* (quoting *O'Brien v. Brunner*, 2016 WL 1059683, at *3 (S.D. Ohio March 17, 2016)). "In other words, a Court should not disqualify a party's chosen counsel absent, at the very least, a showing by the movant that the attorney violated an ethics rule." *Id.*

## ARGUMENT

**I.    There is No Disadvantage to Optum Because Any Opioid-Related Investigation Documents Must Be Reproduced to All Plaintiffs' Counsel Under DR-22.**

Rule 1.11(c) prohibits a representation only where the lawyer's prior access to confidential government information about the opposing party "could be used to the material disadvantage of that person." Ohio R. Prof'l Conduct 1.11(c). Here, there is zero possibility that Motley Rice's access to Optum documents produced in pre-suit investigations by the firm's other government

clients could disadvantage Optum in this litigation when DR-22 requires Optum to reproduce all opioid-related investigation documents to *all* Plaintiffs' counsel in this MDL.

The investigation documents at issue have little or no relevance to Plaintiffs' claims. Plaintiffs allege that Optum colluded with opioid manufacturers to spread fraudulent misrepresentations about the risks and benefits of opioids and to limit clients' formulary options, which increased the number of opioid prescriptions in Plaintiffs' jurisdictions. ECF 5277 (Motion for Leave to Amend) at 6.  Plaintiffs also allege that Optum further facilitated the free flow of opioids into Plaintiffs' jurisdictions by failing to block improper prescriptions in its concurrent Drug Utilization Review of in-network pharmacies' dispensing or to maintain effective controls against diversion in its own mail order pharmacy's dispensing of opioids. *Id.* at 7-8.

The pre-suit investigation documents, however, mostly address billing transactions for other types of drugs in other jurisdictions. *See* Boggs Decl., ¶¶ 6-7 (documents involving "copay clawbacks" and "gag clauses" in Chicago transactions); ¶¶ 10-11 (documents involving rebate payments in DC insulin transactions); ¶ 14 (documents involving rebate payments in Hawaiʻi insulin transactions).  Since these documents and jurisdiction-specific data likely are immaterial to Optum's opioid sales and dispensing in Plaintiffs' New York, Missouri, and Texas jurisdictions, there is no basis to find that Motley Rice could use its prior access to these documents to Optum's "material disadvantage," as Rule 1.11(c) requires for disqualification.

Optum's argument to the contrary fails.  Optum contends that some of the documents it produced in response to the pre-suit subpoenas *do* relate to opioid promotion or sales:

> The materials included rebate agreements with manufacturers, custodial documents concerning Optum Rx's formulary decisions and internal business operations, documents and information relating to OptumRx's development and offering of formulary and clinical products to its clients, and detailed rebate data relating to various drug manufacturers—including multiple opioid manufacturers.  All those materials are confidential and completely sensitive.

7

Motley Rice's liability theories in the bellwether cases focus on many of those same aspects of OptumRx's business.  Take, for example, the complaint in *City of Rochester*.  There, Motley Rice's client alleges that OptumRx colluded with drug manufacturers to flood the market with opioids because drug manufacturers paid rebates to OptumRx in exchange for placing the manufacturers' opioids in favorable positions on OptumRx's formulary offerings.  The other bellwether complaints contain similar allegations.  *The confidential information that OptumRx produced to Motley Rice lawyers in their service as government lawyers provide the firm with a roadmap for litigating against Optum Rx on those aspects of its business.*

Optum Memo. at 17-18 (citations omitted) (emphasis added).[1]

Optum's assessment of these documents appears to be inaccurate.  *Compare* ECF 5276-4 (Declaration of Matthew P. Hooker), ¶ 8 (productions "contained OptumRx's confidential internal or commercially sensitive documents," which "covered formulary development, rebate negotiations with drug manufacturers, and clinical and formulary offerings to clients."); *with* Boggs Decl., ¶ 15 (Optum's productions included "rebate agreements with insulin manufacturers

---

[1] Optum's knowledge of exactly what documents it produced as compelled by subpoenas distinguishes this motion from the Court's 2019 Order disqualifying former U.S. Attorney Carole Rendon and her firm from representing Endo.  Ms. Rendon, as U.S. Attorney, chaired a taskforce on the opioid crisis in Northern Ohio that included local law enforcement personnel in which she received informal *voluntary* disclosures of what truly was *government* information, though of an *indeterminate* nature, from a bellwether plaintiff, and then in private practice represented an MDL defendant against the bellwether plaintiff.  *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555, at *4 ("'Cuyahoga County and Cleveland law enforcement officials shared nonpublic information with Ms. Rendon and her direct reports as a result of the cooperation among federal, state, and local law enforcement agencies in combatting the opioid crisis.  This information was conveyed primarily in meetings (e.g., "sidebars") and communications arising out of the Task Force, and was shared in a spirit of confidence and trust.'") (quoting investigator's findings); *id.* at *5 (Cleveland Police Commander Gary Gingell's statement that "I would not have shared that same information with Ms. Rendon, had it not been for the fact that Ms. Rendon was a member of the U.S. Attorney's Office.").  Here, by contrast, Optum identifies the private documents at issue; was required to produce them in response to subpoenas, which allow sharing with other law enforcement agencies; produced far less information than the subpoenas sought; and (to the extent the subpoenas related to opioid sales) is required to reproduce the documents here to all Plaintiffs' lawyers under DR-22.  The 2019 Order's finding of possible disadvantage, *id.* at *6, thus has no bearing on the strikingly different facts here.

(Novo Nordisk, Inc., Sanofi-Aventis U.S. LLC, and Eli Lilly and Company)," and "OptumRx's prescription drug formularies (which are publicly available at [website].)").  Indeed, information about Optum's collusion with drug manufacturers to provide preferred formulary placements that promote use of their drugs in exchange for hefty rebate payments is widely available, as shown by other public court filings.  *See* Boggs Decl., ¶ 12 and Ex. C (Complaint in *Bd. of Cnty. Comm'rs of Washington Cnty., Md. v. Eli Lilly and Co.*, No. 1:23-cv-03081-JKB (D. Md. Nov. 13, 2023) (ECF 1)), ¶¶ 398, 408, 423-24 ("Sanofi responded with a last-minute bid of a 45% rebate for Tier 2.  OptumRx countered with 45% for Tier 3.").

The Court, however, does not need to review these documents or determine their relevance or confidentiality to decide this motion.  *Even if* Optum is right that the documents are confidential and provide a "roadmap" to its promotion of opioids through formulary placement and rebate extraction, Motley Rice's access to the documents still would not disadvantage Optum.  This is because DR-22 requires Optum to reproduce to *all* Plaintiffs' counsel in this MDL all documents it produced in any government investigation regarding opioid sales, marketing, or dispensing.  Under DR-22,

> Defendants shall produce in discovery in this MDL copies of *all* sworn statements, testimony, video-taped testimony, written responses and discovery, expert reports, and other *documents and discovery that they produce in any* court case, *government investigation*, or government hearing, *regarding the marketing, sales,* distribution, *or dispensing of Opioids or Opioid Products*, including any exhibits referred to in that testimony, on an ongoing basis, for the Track Two Cases[.]

ECF 2576 at 4 (emphasis added).[2]  Since Optum must reproduce all documents it produced in government investigations related to opioids, it cannot be disadvantaged by Motley Rice's access

---

[2] Although first entered in CT-2, DR-22 recognizes that Defendants' production of documents into the MDL repository makes them usable by Plaintiffs in all opioid litigation cases.  *Id.* at 2 ("The hoped-for end result of having all opioid-related discovery produced in this MDL is a *decreased*

to such documents when all other Plaintiffs' counsel have the same access through DR-22 and can make the same uses of them.[3] For this reason alone, the motion to disqualify should be denied.

Optum ignores DR-22 altogether in its motion. It argues for the possibility of material disadvantage, as required by Rule 1.11(c), as follows:

> Through their work as government lawyers, Motley Rice learned confidential, competitively sensitive information about OptumRx's structure, committees, clinical and business processes, data, negotiations with manufacturers, and interactions with clients. Motley Rice could use that knowledge in the opioid bellwethers against OptumRx in any number of ways—including by refining plaintiffs' liability theories and allegations, pressing for additional documents in targeted areas based on earlier learnings, using earlier learnings to seek discovery of additional or different custodians or data, and so on. *Given the overlap between the investigations and this litigation*, the possibilities are endless.

Optum Memo. at 19 (emphasis added). Optum, however, cannot show that this is a disadvantage when DR-22 gives all opioid litigation lawyers the same access as Motley Rice to make the same uses of the documents that Optum says "overlap" with and provide a "roadmap" for this litigation.

Seeming to recognize this, Optum incants Rule 1.11(c)'s "could be used" language in hope that this will relieve it of having to make any factual showing on material disadvantage.[4] DR-22,

---

burden for all parties, including Defendants, who can simply point any future Plaintiffs (including Plaintiffs in additional MDL Track cases, remanded cases, and even State court cases) to the MDL repositories."); *see also* ECF 3333 (Order denying vacature of DR-22, entered in "*All Cases*").

[3] Indeed, other of Plaintiffs' counsel *already* have access to and are making use of the same type of information concerning Optum's drug formulary placement and rebate extraction practices. *Compare* Boggs Decl., Ex. C (Washington Cnty., MD Complaint) at 194-96 (listing of Plaintiffs' counsel firms therein), *with* Optum Memo. at 19-20 and n.7 (listing three of the same firms as PEC members herein who "will continue to represent" the Bellwether Plaintiffs). This further undercuts Optum's contention that Motley Rice's access could in any way cause it disadvantage.

[4] *See* Optum Memo. at 2-3 ("At that point, the ethics rules prohibited Motley Rice from taking on any representation as private lawyers in which they *could* (not *would*) use the confidential information to OptumRx's material disadvantage.") (emphasis in original); *id.* at 3-4 ("[I]t is enough that Motley Rice *could* use the confidential information gained through government service in the separate opioid litigations against OptumRx.") (emphasis in original); *id.* at 10

however, by giving all Plaintiffs' lawyers the same access to these documents, establishes conclusively that Motley Rice *cannot* use its access to Optum's disadvantage.  Whatever uses Motley Rice can make of these documents, DR-22 allows every other Plaintiffs' lawyer to make the same uses of them.  Optum thus cannot show any possible disadvantage as Rule 1.11(c) requires.

Optum's experts—Attorney Montgomery and Law Professor Muchman—also provide nothing helpful, if even admissible, on material disadvantage.  The experts' opinion that "Singer and Motley Rice could use the confidential government information to OptumRx's material disadvantage," ECF 5276-18 at 2, likewise ignores DR-22 and otherwise is an amalgam of impermissible legal analysis[5] and insufficiently informed factual musings outside their stated area of expertise in attorney ethics.[6]  To the extent the Court considers the experts' opinions, it should (with one important exception addressed further below) give them no probative weight.

Since Optum cannot show any possible disadvantage in light of DR-22, the motion to disqualify under Rule 1.11(c) should be denied for this reason alone.

_____

("[T]here is no question that Motley Rice *could* use the confidential government information to OptumRx's material disadvantage in this litigation.") (emphasis in original); *id.* at 13 ("Because the potential for misuse is so acute, the concerns so grave, even the possibility that the government attorney *could use* confidential government information is enough to require disqualification under Ohio Rule 1.11.") (emphasis in original); *id.* at 16 ("Motley Rice now *could* use that confidential information to OptumRx's material disadvantage in the bellwethers.") (emphasis in original).

[5] *See, e.g.*, ECF 5276-18 at 34 ("The standard under the Rule is only that the information *could be used*.  OptumRx need not establish that the information actually has been used by Motley Rice.") (emphasis in original); *see also id.* at 31 ("Courts have also considered confidential information that constitutes a 'roadmap' to require disqualification.") (quoting *Kronenberg v. LaRouche*, 2010 WL 1443934, at *4 (E.D. Va. April 9, 2010)).

[6] *Compare id.* at 16 ("And while some of those documents may not mention opioids specifically, *they provide Motley Rice with a roadmap into OptumRx's inner workings* and are relevant to the allegations against OptumRx in the opioid MDL.") (emphasis added); *with id.* at Appendix C (materials reviewed) (listing only court filings, *and not the Optum documents themselves*).

## II.     Optum Also Does Not Satisfy Rule 1.11(c)'s Other Requirements.

### A.     Optum Does Not Show That its Documents at Issue are "Confidential Government Information" as Rule 1.11(c) Requires.

The "material disadvantage" that Rule 1.11(c) aims to prevent is one that would arise from a government lawyer's access to "confidential government information," defined as follows:

> As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public.

Ohio R. Prof'l Conduct 1.11(c).  The Rule's commentary elaborates on the final requirement.  It explains that the Rule "represents a balancing of interests[,]" aiming to prevent "unfair advantage [that] could accrue to the other client by reason of access to confidential government information about the client's adversary *obtainable only through the lawyer's government service*[,]" while also recognizing that "the rules governing lawyers presently or formerly employed by a government agency should not be so restrictive as to inhibit transfer of employment to and from the government."  Ohio R. Prof'l Conduct 1.11(c), cmt. [4] (emphasis added).[7]

The highlighted comment language is important.  It shows that Optum's own documents, which Motley Rice's other government clients obtained through subpoenas, are not "confidential government information" under the Rule because they are not "obtainable only through the

---

[7] The Rule's requirement that the lawyer have accessed "confidential government information" in order to be disqualified distinguishes this case from authority relied on by Optum.  *See* Memo. of Law at 10-12.  *Allied Realty of St. Paul, Inc. v. Exchange Nat'l Bank of Chicago*, 283 F. Supp. 464 (D. Minn. 1968), involved application of a Minnesota ethics canon (Canon 36) that did not require any prior access to confidential information.  *Id.* at 465; *see also id.* at 468 ("It is true that neither confidentiality nor conflicting interests are here involved.").  In *Handelman v. Weiss*, 368 F. Supp. 258 (S.D.N.Y. 1973), the court held that disqualification was required "[e]ven if the information upon which plaintiffs' suit is based were freely available[.]"  *Id.* at 264.

lawyer's government service." Rather, any party with an active claim in court to which these documents relate can obtain them by making the same requests for production.

The fact that Plaintiffs may obtain Optum's documents at issue with or without DR-22 only underscores that the documents are not confidential government information under Rule 1.11(c). In *Davis v. Southern Bell*, *supra*, the court denied a defendant's motion to disqualify plaintiff class lawyers who also served as government contractor lawyers and thereby accessed the defendant's documents produced in response to a civil investigative demand ("CID") and/or through discovery. 149 F.R.D. at 674. The court held that these documents were not "confidential government information" under ABA Model Rule of Professional Conduct 1.11(b) because they were discoverable by private litigants and thus were otherwise available:

> As part of its investigation, the State issued CIDs to various parties. Southern Bell contends that the responses [to] these CIDs constitute confidential government information and that the contractor attorneys have obtained these responses in violation of rule 1.11(b). However, the affidavit of Anne Bingaman, one of the contractor attorneys, indicates Southern Bell produced these responses pursuant to routine discovery requests. Southern Bell has submitted no counter evidence to rebut Ms. Bingaman's affidavit. *Moreover, CID response[s] have been held to be subject to compulsory discovery.* The Court concludes that the CID materials at issue in the instant case were 'otherwise available' within the meaning of rule 1.11(e) and that the materials therefore do not constitute confidential information for purposes or rule 1.11(b).

149 F.R.D. at 674 (citation omitted) (emphasis added); *see also Doe 1 v. Francis*, 2006 WL 844430, at *10 (N.D. Fla. May 8, 2006) ("[T]he government information allegedly possessed by Plaintiffs' counsel was not 'confidential' government information. . . . [I]t is undisputed that the information available to the government in the forfeiture proceedings was subject to a discovery request by Defendants."); *cf. In re Domestic Air Transp. Antitrust Litig.*, 142 F.R.D. 354, 355-56 (N.D. Ga. 1992) (government CID deposition transcripts possessed by defendants were subject to discovery in civil action).

Since Optum does not show that the documents it produced in response to government subpoenas are otherwise unavailable to Plaintiffs herein—whether through DR-22 or other discovery mechanisms—these Optum documents are not "confidential government information" under Rule 1.11(c). Optum's motion to disqualify thus may be denied for this additional reason.

### B. Optum Does Not Show *Both* That Motley Rice is a "Public Officer or Employee" in Representing its Other Government Clients *and* That the Government Plaintiffs Herein are "Private Clients" as Rule 1.11(c) Requires.

Optum also does not (and seemingly cannot) satisfy Rule 1.11(c)'s dual requirements that Motley Rice be a "public officer or employee" in representing other government clients *and* that the Government Plaintiffs herein be "private clients." These failures independently require that the motion to disqualify be denied.

On its face, the Rule does not apply here because it prohibits a government lawyer only from representing a "private client" whose interests are adverse to the government's adversary. Ohio R. Prof'l Conduct 1.11(c). Since the bellwether Plaintiffs herein all are government entities, they are not private clients to which the Rule applies.

The Rule's commentary does, however, discuss a possibly broader application to other government or public clients where (*unlike here*) the Rule's other requirements are satisfied. The commentary states that:

> This rule represents a balancing of interests. On the one hand, where the successive clients are a government agency and another client, *public or private*, the risk exists that power or discretion vested in that agency might be used for the special benefit of the other client. A lawyer should not be in a position where benefit to the other client might affect performance of the lawyer's professional functions on behalf of the government. . . . *On the other hand*, *the rules* governing lawyers presently or formerly employed by a government agency *should not be so restrictive as to inhibit transfer of employment to and from the government*.

Ohio R. Prof'l Conduct 1.11(c), cmt. [4] (emphasis added). The Rule's text limiting only separate representation of a "private client," and not other public clients, shows that the drafters resolved

14

this "balancing of interests" by imposing no restriction where all clients are government entities, as with Motley Rice here.  Optum's motion to disqualify fails for this additional reason.

Optum does not explain how the bellwether government Plaintiffs could constitute "private clients" under Rule 1.11(c).  Instead, it tries to get past this requirement through naked assertion that is incorrect on its face.  Memo. of Law at 7 ("Motley Rice and its attorneys now represent private plaintiffs suing OptumRx in this MDL, including the four bellwether plaintiffs (*City of Rochester, City of Independence, Webb County, and Lincoln County*).").  Optum also tries to blur the distinction between private and public clients.  *Id.* at 3 ("Motley Rice has turned to litigating opioid and other drug-pricing cases against OptumRx and other PBMs on behalf of various *private and public clients*.  Motley Rice now represents the plaintiffs in the four bellwether cases against PBMs in this MDL.") (emphasis added).  Neither of these misstatements of fact makes the bellwether government Plaintiffs "private clients" under Rule 1.11(c).[8]

Seeming to recognize this, Optum also tries to rewrite the Rule's "private client" requirement into a "private lawyer" requirement.  Optum contends that, upon receipt of the subpoenaed documents for the other government clients, "the ethics rules prohibited Motley Rice from taking on any representation *as private lawyers* in which they *could* (not *would*) use the confidential information to OptumRx's material disadvantage."  Memo. of Law at 2-3 (first

---

[8] Optum's reliance on *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974), to suggest that Rule 1.11(c)'s private client requirement covers the government Plaintiffs herein, Optum Memo. at 12-13, is to no avail.  In *General Motors*, the Second Circuit addressed New York's then-applicable Code of Professional Responsibility, N.Y. Canon 9 (DR 9-101(b)), which required disqualification where a representation constituted "'*private employment* in a matter in which [the lawyer] had substantial responsibility while he was a public employee.'"  501 F.2d at 643-44 (quoting DR 9-101(b)) (emphasis added).  Whether or not a private lawyer's representation of a public entity constitutes "private employment," this does not transform the public entity into a "private client" as Rule 1.11(c) requires.  The comment's reference to a "public or private" client makes this clear.

15

emphasis added; second and third emphases in original). This assertion, too, fails. When the Rule means to address the status or conduct of a lawyer, it does so specifically. *See, e.g.*, Ohio R. Prof'l Conduct 1.11(a) ("A lawyer who has formerly served as a public officer or employee of the government shall comply with both of the following . . . ."). Thus, Rule 1.11(c)'s reference to a "private client" means just that, a client that is a private person or entity, not a government entity.

Moreover, to the extent Optum argues that Motley Rice's status as a private law firm makes the bellwether government Plaintiffs private clients, this necessarily would mean that the firm's *other* government clients also are private clients. This, in turn, would mean that in representing these ostensibly private clients, no Motley Rice lawyer is a "public officer or employee," as Rule 1.11(c) also requires. And, indeed, case law supports this proposition. *See Doe 1 v. Francis*, 2006 WL 8444030, at *10 ("Surely, an attorney in private practice who merely *represents* a government agency does not qualify as a 'public officer.'") (emphasis in original); *id.* ("Moreover, overwhelming authority associates the word 'employee' with 'servant' as in the typical 'master-servant' relationship. . . . Very few attorneys would characterize themselves as 'servants' who are subject to the complete 'control and direction of their clients.'") (citations omitted).

Optum's own experts also opine that a Motley Rice lawyer representing a public entity is not a public officer or employee. While Optum ignores the tension that arises between Rule 1.11(c)'s "public officer or employee" and "private client" requirements when both clients are government entities, its experts recognize this tension and attempt to resolve it as follows:

> Although Singer and Motley Rice represent public entities in their private practice, *they are not government actors in that capacity, nor do they have the authority to wield the power of the government in that role.*

ECF 5276-18 at 21 n.20 (emphasis added). This opinion by Optum's experts that a Motley Rice lawyer representing a public client is not a government actor, and thus not a "public officer or

16

employee" under Rule 1.11(c), is binding on Optum.[9]  Since Optum admits through its experts that this requirement of the Rule is not satisfied, the Court may deny the motion to disqualify on this ground *whether or not* the experts' opinion on this point is correct.

Optum thus does not (and seemingly cannot) satisfy Rule 1.11(c)'s dual requirements that Motley Rice be a "public officer or employee" in representing its other government clients and that the government Plaintiffs herein be "private" clients.  The motion to disqualify thus may be denied for either or both of these additional reasons.

At bottom, Optum's motion is a bait and switch exercise in service of an inapposite and misguided public policy position.  Optum began by nakedly asserting that Motley Rice and other private firms "take the information and insights gained from their government investigations of companies and *weaponize that knowledge* against the same companies[.]"  Optum Memo. at 1 (emphasis added).  But its argument is a full-scale retreat from that position.  *Id.* at 3 ("[I]t is enough that Motley Rice *could* use the confidential information . . . .") (emphasis in original).  And its motion, for the reasons set forth herein, does not deliver even on *that* scaled-back contention. This is because state and local governments' retention of private law firms like Motley Rice *is not* an "abuse[] of government power."  *Id.* at 1.  Just the opposite, it is an appropriate and responsible exercise of a government's duty to protect the public against abusive business practices like those discussed herein.  Retaining private lawyers with subject matter expertise enables a government constrained by scarce public resources to leverage additional resources, under its direction, to more effectively fulfill its duties to enforce the law and protect and restore public health and safety.  That

---

[9] *See, e.g., Rawers v. U.S.*, 488 F. Supp. 3d 1059, 1084 n.29 (D.N.M. 2020) ("[A]n expert employed by a company is that company's agent, and statements by the expert regarding the matter of expertise are admissions of the company[.]") (citing *Collins v. Wayne Corp.*, 621 F.2d 777, 781-82 (5th Cir. 1980)).

is exactly what Optum and those in the echo chamber it joins, *id.* at 1 n.1, are trying to prevent with this type of motion.  Since Optum does not and cannot show any abuse of government authority or any other inappropriate conduct herein, its motion to disqualify should be denied.

## CONCLUSION

For the reasons set forth herein, Optum's motion to disqualify Motley Rice from representing Plaintiffs in the Track 12-15 bellwether cases against it should be denied.

Dated: January 22, 2024

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
1311 Ponce de Leone Ave., Suite 202
San Juan, PR 00907
(304) 654-8281
paul@farrellfuller.com

*MDL Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (fax)
pweinberger@spanglaw.com

*MDL Plaintiffs' Liaison Counsel*

<u>Certificate of Service</u>

I HEREBY CERTIFY that on this 22nd day of January, 2024, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*s/Peter H. Weinberger*

Peter H. Weinberger