UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13)<br><br>*City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14)<br><br>*County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | MDL NO. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**PBM DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND SUPPLEMENT
<u>COMPLAINTS IN THE PBM BELLWETHER ACTIONS</u>**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

    A.    The Court selected four bellwether cases to test claims against PBMs—not pharmacies, consulting firms, or cash-card companies. ......................................... 3

    B.    Plaintiffs' proposed amended complaints dramatically expand the operative complaints years after their filing and nearly two years after the JPML closed the MDL to new cases. ..................................................................................................... 4

    C.    Plaintiffs had multiple earlier opportunities to amend their complaints. ................ 5

LEGAL STANDARDS ........................................................................................................... 6

ARGUMENT ........................................................................................................................... 7

    I.    Plaintiffs' proposed amendments are prejudicial to the PBM Defendants. ............ 7

    II.    Plaintiffs try to avoid the JPML's orders closing the MDL to new cases by proposing new claims against new parties that do not provide PBM services. ..... 11

    III.    If the Court allows Plaintiffs to amend their complaints, the Court should sever and stay all non-PBM claims. ................................................................................ 13

CONCLUSION ...................................................................................................................... 15

# **TABLE OF AUTHORITIES**

## **Cases**

Page(s)

*Benzon v. Morgan Stanley Distributors, Inc.*,
   420 F.3d 598 (6th Cir. 2005) ..................................................................................................6

*Carrizo (Utica) LLC v. City of Girard, Ohio*,
   661 F. App'x 364 (6th Cir. 2016) .........................................................................................11

*In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*,
   835 F.3d 1195 (10th Cir. 2016) ............................................................................................10

*Dubuc v. Green Oak Twp.*,
   312 F.3d 736 (6th Cir. 2002) ..................................................................................................8

*Hilton v. Akron Police Dep't*,
   2023 WL 7299986 (N.D. Ohio Nov. 6, 2023) ........................................................................8

*Korn v. Paul Revere Life Ins. Co.*,
   382 F. App'x 443 (6th Cir. 2010) ........................................................................................6–7

*Leary v. Daeschner*,
   349 F.3d 888 (6th Cir. 2003) ...............................................................................................7, 8

*In re McKinsey & Co.*,
   543 F. Supp. 3d 1377 (J.P.M.L. 2021) ..................................................................................13

*In re Nat'l Prescription Opiate Litig.*,
   2022 U.S. Dist. LEXIS 65760 (J.P.M.L. April 8, 2022) .......................................................13

*In re Nat'l Prescription Opiate Litig.*,
   956 F.3d 838 (6th Cir. 2020) .......................................................................................7, 9, 15

*In re Nat'l Prescription Opiate Litig.*,
   No. 21-4051, 2022 WL 20701236 (6th Cir. Nov. 10, 2022) .............................................7, 12

*Parchman v. SLM Corp.*,
   896 F.3d 728 (6th Cir. 2018) ................................................................................................14

*Pittman v. Experian Info. Sols., Inc.*,
   901 F.3d 619 (6th Cir. 2018) ..................................................................................................8

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
   141 S. Ct. 474 (2020) ..............................................................................................................3

*Springs v. United States Dep't of Treasury*,
    567 F. App'x 438 (6th Cir. 2014) ...................................................................................6

## Statutes / Rules

28 U.S.C. § 1407 ..............................................................................................................15

Fed. R. Civ. Pro. 15 ............................................................................................................6

Fed. R. Civ. Pro. 16 ............................................................................................................7

Fed. R. Civ. Pro. 21 ..........................................................................................................14

## Other Authorities

Manual for Complex Litig. § 22.315 (4th ed. 2022) .......................................................12

**INTRODUCTION**

On December 1, 2023, the Court explained that it never intended to expand the PBM bellwethers to include claims against pharmacies:

> I really do not want, and never envisioned that these bellwethers against the PBMs would turn into pharmacy—to replicate the pharmacy trials. I'm concerned that if the plaintiffs add those claims, the defendants are going to want to bring in as third-party defendants all of the pharmacies, the major pharmacies. Those three have already entered into global settlements nationwide, and maybe many others, and the trial is going to be unworkable or unmanageable.

Dkt. 5265 at 9–10.

Ignoring that direction, Plaintiffs now ask for leave to add the very dispensing claims that the Court understood would make the PBM bellwethers "unworkable." The allegations in the proposed amended complaints mirror those in Track Three, where plaintiffs also alleged that the defendants violated the Controlled Substances Act ("CSA") and its state corollaries by "dispensing controlled substances in violation of their corresponding responsibility . . . each time their mail order pharmacies filled a controlled substance prescription without identifying and resolving those red flags . . . ." ECF No. 5277-1, Proposed Rochester Am. Compl. ¶¶ 579–80.

Plaintiffs also propose sweeping RICO claims against OptumRx and Express Scripts[1] for alleged conspiracies involving numerous manufacturers and payors. And they also seek leave to add new claims against seven new entities from the UnitedHealth Group corporate family (which are neither PBMs nor mail-order pharmacies) to bellwether cases ostensibly designed to test claims

---

[1] OptumRx, Inc., Optum, Inc., UnitedHealth Group Incorporated, Express Scripts, Inc., and Express Scripts Holding Company (n/k/a Evernorth Health, Inc.)—collectively, the "PBM Defendants"—submit this opposition. The other UnitedHealth Group corporate family entities and Express Scripts corporate family entities identified in Plaintiffs' amended complaints have not been served in all four PBM bellwether cases. The PBM Defendants preserve all Rule 12 arguments and defenses, including jurisdictional and statute-of-limitations arguments.

1

against *PBMs*.[2] Allowing those new theories to proceed against new defendants would violate the Federal Rules of Civil Procedure and the JPML's limitations on this MDL.

Plaintiffs' proposed amendments would unduly prejudice OptumRx and Express Scripts and would dramatically increase the scope of the PBM bellwethers, requiring the PBMs to potentially bring in (or take extensive discovery of) other pharmacies, consulting firms, cash-card companies, manufacturers, PBMs, and payors. That enormous burden is even more prejudicial because Plaintiffs have conceded those claims will not "necessarily need to be tried." Dkt. 5277.

The proposed new claims also come far too late: Plaintiffs could have amended their complaints to press their new theories against OptumRx and Express Scripts nearly four years ago but chose not to. By sitting on the sidelines, they forfeited their right to add those claims now in a PBM track. There is a reason that Plaintiffs have for years chosen not to pursue OptumRx or Express Scripts' affiliated mail-order pharmacies for dispensing claims: The ARCOS data that the Drug Enforcement Agency produced years ago show that of the prescription opioids shipped nationwide between 2006 and 2019, OptumRx's mail-order pharmacy received approximately 0.2% and Express Scripts' affiliated mail-order pharmacies received approximately 0.59%.

Plaintiffs' attempt to complicate the proceeding and multiply the discovery burden on the PBM Defendants by adding stale theories and eleven new defendants to years-old cases betrays the weakness of their claims. The Court should deny Plaintiffs' motion.

---

[2] Plaintiffs' proposed amended complaints name for the first time (1) OptumInsight, Inc., (2) OptumInsight Life Sciences, Inc., (3) OptumRx Discount Card Services, LLC, (4) Optum Perks, LLC, (5) OptumHealth Care Solutions, LLC, (6) OptumHealth Holdings, LLC, and (7) Optum Health Networks, Inc.—not as PBMs, but as "health services companies," "data, analytics, and research provider[s]," and cash-card companies. Proposed Rochester Am. Compl. ¶¶ 132, 190–91, 501–06.

## BACKGROUND

**A.     The Court selected four bellwether cases to test claims against PBMs—not pharmacies, consulting firms, or cash-card companies.**

Express Scripts, Inc. and OptumRx, Inc. are pharmacy benefit managers. PBMs differ from the manufacturers, distributors, and pharmacies that have participated in other opioid bellwethers. As the Court has recognized, PBMs "do not manufacture, market, or prescribe opioid medications." Dkt. 1848 at 2. Instead, PBMs provide services to sponsors of health insurance plans offering a prescription-drug benefit. PBMs help their clients—employers, government entities, insurers, unions, and others—manage prescription-drug benefits and contain costs. "When a beneficiary of a prescription-drug plan goes to a pharmacy to fill a prescription, the pharmacy checks with a PBM to determine that person's coverage and copayment information." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S. Ct. 474, 478 (2020). "After the beneficiary leaves with his or her prescription, the PBM reimburses the pharmacy for the prescription, less the amount of the beneficiary's copayment. The prescription-drug plan, in turn, reimburses the PBM." *Id.* Those services are governed by contracts separately negotiated with each client and dictated by the client's needs and preferences. As this Court has explained "plan sponsors decide whether to adopt the programs that the PBM Defendants offer"—the PBMs do not make those decisions for them. Dkt. 1848 at 2.

OptumRx's mail-order pharmacy and Express Scripts' affiliated mail-order pharmacies provide services distinct from the PBMs. Those mail-order pharmacies received shipments of vanishingly small amounts of the total prescription opioids shipped nationwide—0.2% to OptumRx and 0.59% to Express Scripts' affiliated mail-order pharmacies. Those small amounts reflect that prescription opioids are primarily dispensed through retail pharmacies, not mail-order pharmacies.

3

**B. Plaintiffs' proposed amended complaints dramatically expand the operative complaints years after their filing and nearly two years after the JPML closed the MDL to new cases.**

On October 27, 2023, the Court confirmed that four cases would go forward as PBM bellwethers. Dkt. 5231. Each of the four bellwether plaintiffs filed suit more than four years ago, on narrower grounds and against fewer defendants.

*City of Rochester, New York*: On June 5, 2019, City of Rochester filed its complaint in Monroe County, New York. Dkt. 1-1, Case No. 1:19-op-45853 (N.D. Ohio). The Rochester case was removed to federal court in the Western District of New York on June 28, 2019 and transferred to the MDL on October 17, 2019. Rochester Dkt. 1; Rochester Dkt. 65.

*Lincoln County, Missouri*: On October 24, 2019, Lincoln County filed its complaint in Lincoln County, Missouri. Dkt. 1-1, Case No. 1:20-op-45069 (N.D. Ohio). The Lincoln County case was removed to federal court in the Eastern District of Missouri on October 31, 2019 and transferred to the MDL on February 11, 2020. Lincoln Dkt. 1; Lincoln Dkt. 31.

*City of Independence, Missouri*: On January 29, 2019, several Missouri counties and cities filed a complaint in the Twenty-Second Judicial Circuit Court of Missouri. Dkt. 1-2, Case No. 1:19-op-45371 (N.D. Ohio). The Independence case was removed to federal court in the Eastern District of Missouri on January 31, 2019 and transferred to the MDL on June 10, 2019. Independence Dkt. 1; Independence Dkt. 22.

*County of Webb, Texas*: On January 25, 2018, County of Webb, Texas filed its complaint in the Southern District of Texas. Dkt. 1, Case No. 1:18-op-45175 (N.D. Ohio). The Webb County case was transferred to the MDL on February 15, 2018. Webb Dkt. 4.

None of the operative complaints for the four bellwether Plaintiffs contains any allegations about the *seven* new UnitedHealth Group corporate family entities named in the proposed amended complaints: (1) OptumInsight, Inc., (2) OptumInsight Life Sciences, Inc., (3) OptumRx Discount

4

Card Services, LLC, (4) Optum Perks, LLC, (5) OptumHealth Care Solutions, LLC, (6) OptumHealth Holdings, LLC, and (7) Optum Health Networks, Inc. And only one of the operative complaints (Webb County) includes any dispensing allegations against OptumRx, Inc.[3] Likewise, none of the operative complaints contains any allegations about (1) Express Scripts Administrators, LLC, (2) Medco Health Solutions, Inc., (3) ESI Mail Order Processing, Inc., or (4) Express Scripts Specialty Distribution Services, Inc.[4]

C.    **Plaintiffs had multiple earlier opportunities to amend their complaints.**

On November 10, 2018, the Court ordered that all MDL plaintiffs could amend their complaints until March 16, 2019 based on ARCOS data produced by the DEA. Dkt. 1106. The Court further ordered that for all cases later transferred into the MDL, the plaintiffs could amend their complaints without leave of Court by "the later of March 16, 2019, the applicable deadline under Fed. R. Civ. Pro. 15(a)(1), or 90 days following transfer into this MDL." Dkt. 1106 at 3 n.7.

On March 16, 2019, Webb County filed a second amended complaint but did not add any of the *eleven* entities listed above that it now seeks to add four years later to a third amended complaint. Webb Dkt. 73. When City of Rochester, Lincoln County, and City of Independence were later transferred into the MDL, Plaintiffs did not amend their complaints within the 90-day window provided by the Court.

---

[3] Only six complaints in the entire MDL name OptumInsight, Inc. as a defendant, and only *two* (filed in violation of the JPML order closing the MDL) identify OptumInsight Life Sciences, Inc. as a defendant. *See Butler County*, Case No. 1:23-op-45002 (N.D. Ohio); *Strafford County*, Case No. 1:23-op-45006 (N.D. Ohio). No operative complaint in the MDL names as a defendant (1) OptumRx Discount Card Services, LLC, (2) Optum Perks, LLC, (3) OptumHealth Care Solutions, LLC, (4) OptumHealth Holdings, LLC, or (5) Optum Health Networks, Inc.

[4] Only four operative complaints in the MDL name Medco Health Solutions, Inc. as a defendant, and only two operative complaints name Express Scripts Administrators, LLC or Express Scripts Specialty Distribution Services, Inc. as a defendant. Both of those complaints, *Butler County* and *Strafford County*, were filed in violation of the JPML order closing the MDL. No operative complaint in the MDL names ESI Mail Order Processing, Inc. as a defendant.

The PEC also could have included claims against OptumRx or Express Scripts' affiliated mail-order pharmacies in the six previous bellwether tracks devoted to pharmacy dispensing claims. The Court allowed amendment of the complaints in the Track Three cases without leave (*see* Dkt. 3261 at 2 n.3), but those parties chose not to name OptumRx or Express Scripts' affiliated mail-order pharmacies as defendants. And then on April 9, 2021, the Court allowed the plaintiffs in five additional pharmacy bellwether cases to amend without filing a motion for leave. Dkt. 3688 at 1. None of the five additional pharmacy bellwether plaintiffs added OptumRx or Express Scripts' affiliated mail-order pharmacies as defendants, even though the plaintiffs included allegations about mail-order dispensing against other pharmacies in those cases. *See, e.g.*, Dkt. 3787 (Cobb County amended complaint) ¶ 413 (including Walmart's mail-order pharmacy).

## **LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave." Rule 15(a)(2) instructs courts to "freely give leave when justice so requires," but "Rule 15(a) does not give plaintiffs unbridled authority to amend the complaint." *Springs v. United States Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014). Denial of a motion for leave to amend may be appropriate where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility of the amendment. *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005) (affirming denial of motion for leave to amend).

When a motion for leave to amend a complaint is "so late that it [requires] the modification of a Rule 16 scheduling order," "a different standard applies." *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (citing *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003)). Once entered, a "schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To show good cause, a party must demonstrate that "despite

[its] diligence [it] could not meet the original deadline." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 843 (6th Cir. 2020) (quoting *Leary*, 349 F.3d at 907). A party must also show that the opposing party "would not suffer prejudice" from the amendment. *Id.*

## **ARGUMENT**

Plaintiffs claim that they seek leave to amend the complaints in the bellwether cases to "harmonize the four cases" and "streamlin[e] the litigation." Dkt. 5277 at 3. Neither is true. Their proposed amended complaints would instead expand the claims and defendants far beyond any claims in the operative bellwether complaints and would add eleven new parties across five different types of defendants: PBMs, pharmacies, health services providers, data analytics and consulting companies, and cash-card companies.

Rule 16's "good cause" requirement applies because Plaintiffs' deadlines to amend the complaints passed years ago. But even if the Court's prior order that plaintiffs may amend their complaints if selected as a bellwether (Dkt. 371) applies—it should not[5]—under Rule 15's standard, Plaintiffs cannot meet their burden because the proposed amended complaints arrive more than four years after each suit was filed. Beyond that, allowing the proposed amendments would prejudice OptumRx and Express Scripts and render the bellwethers "unworkable." The Court should deny Plaintiffs' motion.

**I.     PLAINTIFFS' PROPOSED AMENDMENTS ARE PREJUDICIAL TO THE PBM DEFENDANTS.**

If the Court permits Plaintiffs' proposed amendments, the PBM Defendants would be severely prejudiced. To determine whether a proposed amendment may be unduly prejudicial,

---

[5] In a previous challenge to belated amendments, the Sixth Circuit held that applying that provision to another defendant on different facts "went right to the edge of the district court's discretion under Rule 16." *See In re Nat'l Prescription Opiate Litig.*, No. 21-4051, 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022) ("*Meijer*").

7

courts consider whether the proposed amendment would require the opponent to expend significant additional resources to complete discovery and prepare for trial or would significantly delay resolving the dispute. *Dubuc v. Green Oak Twp.*, 312 F.3d 736, 752 (6th Cir. 2002); *Hilton v. Akron Police Dep't*, 2023 WL 7299986, at *3 (N.D. Ohio Nov. 6, 2023). The longer the moving party has waited to amend its pleading, "the less will be required of the nonmoving party in terms of a showing of prejudice." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018).

The potential prejudice from Plaintiffs' proposed amendments is clear: Four years after filing suit and after almost a year spent selecting bellwether cases, Plaintiffs' proposed amendments introduce new claims under different legal and regulatory frameworks and add eleven new parties—including mail-order pharmacy, consulting, data analytics, health care services, and cash-card defendants. Those new claims and theories implicate dozens of third parties who may need to be added to the bellwethers as parties. Plaintiffs offer no explanation for their delay in seeking to amend their pleadings. *See Leary*, 349 F.3d at 907 ("Plaintiffs gave the district court no excuse for their considerable delay . . . ."). Nor can they. Far from "streamlin[ing]" and "harmon[izing] the four cases," Plaintiffs ask this Court to dramatically expand the scope of these PBM bellwethers four years after the cases were filed.

*Adding mail-order pharmacy claims would be unfair and prejudicial.* The PBM bellwether cases were selected to test the claims that plaintiffs have pressed against PBMs *as PBMs*. Yet three of the Plaintiffs (Rochester, Independence, and Lincoln County) now seek to add new *dispensing* claims for the first time even though they could have tried to do so years ago and "*chose not to bring them.*" *See In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 843. PBMs—unlike manufacturers, distributors, and pharmacies—are not a part of the closed DEA system for distributing and dispensing prescription opioids. Claims against mail-order pharmacies are

8

fundamentally different than claims against PBMs. For example, Express Scripts' affiliated mail-order pharmacies *are* DEA registrants, but Express Scripts' PBM entities are not. Consistent with those differences, claims against the mail-order pharmacies would involve different legal questions under the CSA and state laws, different discovery (both of the parties and third parties), different witnesses (both fact and expert), and so on. If permitted, those mail-order pharmacy claims would dominate these *PBM* bellwethers. Because of those issues (and others), the Track Three pharmacy cases took more than two years to get to trial (even after voluminous discovery had already been taken of those defendants in Track One). Adding mail-order pharmacy claims would swallow these PBM cases entirely.

Not only that, allowing mail-order pharmacy claims would result in the tail wagging the dog. OptumRx and Express Scripts' affiliated mail-order pharmacies each comprise *less than 1%* of the volume of retail opioid shipments to the bellwether jurisdictions. Dozens of other pharmacies and dispensers have a much larger presence in Plaintiffs' communities. Although some of those pharmacies may already be parties in the MDL, others may need to be joined as third parties. The Court has already recognized as much. *See* Dkt. 5168 at 47 ("[T]he pharmacies ultimately opted not to bring any one in, but they could have. They certainly had the right to. So, sure, either or both the PBMs, you can move to name a third party defendant or defendants."). Accordingly, the Court would spend a disproportionate amount of time addressing pharmacy issues that could have been litigated against OptumRx and Express Scripts' affiliated mail-order pharmacies in earlier tracks (where the PEC could have named them as defendants) and would do so for cases against mail-order pharmacies that handled a negligible volume of prescriptions in each bellwether jurisdiction.

*Adding RICO claims would be unfair and prejudicial*. Plaintiffs propose adding RICO claims alleging that the PBM Defendants conspired with opioid manufacturers through a pattern of supposed criminal activity to perpetrate a fraudulent scheme for profit in violation of federal law. *See, e.g.*, Proposed Rochester Am. Compl. ¶¶ 592, 619. Those expansive allegations, frivolous though they are, may require joining or impleading numerous alleged co-conspirators or voluminous discovery from the alleged co-conspirators. As with the dispensing claims, Plaintiffs' federal RICO claims introduce additional complex legal theories that will require different forms of proof, different witnesses, and different evidence, further compounding the complexity of any potential trial in these PBM bellwether cases.

Plaintiffs shrug off the enormous burden that their proposed amended complaints would place on this litigation by arguing that not all their theories or claims "necessarily need to be tried." Dkt. 5277 at 3. But that only magnifies the prejudice: Plaintiffs should not be allowed to force the PBMs and dozens of other parties through the gauntlet of discovery and motions practice for claims they have no intention of trying.

The purpose of a bellwether is "to enable other litigants to learn from the experience and reassess their tactics and strategy (and, hopefully, settle)." Dkt. 2399 at 2 (quoting *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1208 (10th Cir. 2016)). Instead of providing a meaningful data point for the PBMs and for opioid plaintiffs, Plaintiffs propose turning these cases into a muddle mired in pharmacy-related issues (against mail-order pharmacies that handled a tiny volume of opioid prescriptions) and unforeseen disputes about health services, consulting, or cash-card theories (as discussed further below). That would accomplish none of the Court's objectives and would prejudice OptumRx and Express Scripts. Discovery for so many entities and claims would take years, and the Court's prior scheduling order

10

will necessarily shift. Measured against Plaintiffs' long delay and failure to meet long-expired deadlines to amend their complaints to add these new claims and defendants, Plaintiffs have not satisfied either Rule 15's or Rule 16's standard for amendment.

II. **PLAINTIFFS TRY TO AVOID THE JPML'S ORDERS CLOSING THE MDL TO NEW CASES BY PROPOSING NEW CLAIMS AGAINST NEW PARTIES THAT DO NOT PROVIDE PBM SERVICES.**

The four bellwether Plaintiffs also seek leave to amend their complaints to add new theories of liability against seven new entities from the UnitedHealth Group corporate family—five of which have not previously been named as defendants in *any* case in the MDL—that do not offer PBM *or* mail-order pharmacy services. That belated request flies in the face of the Federal Rules and the JPML's limitations on the scope of this MDL. *See Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 F. App'x 364, 368–69 (6th Cir. 2016) (no good cause because defendant would be prejudiced by new claims for damages "against an entirely new party").

Plaintiffs attempt to press five different types of theories in their proposed amended complaints: (1) PBM services claims, (2) dispensing claims, (3) health services claims, (4) data analytics and consulting claims, and (5) cash-card claims. That is antithetical to the Court's direction that the PBM bellwether track test claims against PBMs and not "replicate the pharmacy trials." Dkt. 5265 at 9–10.

In their motion, Plaintiffs gloss over the scores of allegations that they propose adding about new entities that are unrelated to the PBM services that Plaintiffs allege "sit at the center of prescription drug dispensing in the U.S." Dkt. 5277 at 6. They never once mention, for instance, that their proposed amended complaints include—for the first time in any opioid case—OptumRx Discount Card Services, LLC, a company that Plaintiffs allege "contracts with third-party businesses to administer prescription discount cards," or Optum Perks, LLC, a company that Plaintiffs allege "offers a free pharmacy discount card." Proposed Rochester Am. Compl. ¶¶ 171–

11

77. Nor do they mention that their proposed amended complaints would add OptumHealth Holdings, LLC or Optum Health Networks, Inc., entities that Plaintiffs allege provide "specialty health services," "health banking services," and "ancillary care networks." Proposed Rochester Am. Compl. ¶¶ 182–87. They don't even discuss their claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc., entities that Plaintiffs allege provided consulting services to opioid manufacturers. The proposed claims against those non-PBM entities would not serve any bellwether function because there are no other or few other cases against those entities. *See* Manual for Complex Litig. § 22.315 (4th ed. 2022) (For a "bellwether trial[]" to "produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases.").

Plaintiffs assume that the Sixth Circuit's order in *Meijer* gives them *carte blanche* to add any and all theories or defendants to the existing bellwether cases. That is wrong. In allowing the PEC to add Meijer as a defendant to the Track Three cases based on the particular facts in that case, the Sixth Circuit explained that Meijer had been a defendant in the MDL since 2019. *Meijer*, 2022 WL 20701236, at *1. That is not true for five of the UnitedHealth Group corporate family entities that Plaintiffs seek to add to their amended complaints.

Beyond that, since Meijer was added to the Track Three cases in spring 2021, the JPML has twice limited the scope of this MDL. For starters, the JPML previously declined to transfer actions involving McKinsey & Company to this MDL. Although the allegations against McKinsey related to "work McKinsey performed for Purdue and other MDL No. 2804 defendants" and even though McKinsey previously engaged in third-party discovery in MDL 2804, the JPML ruled that McKinsey would be prejudiced by joining the "three-and-a-half-year-old MDL No. 2804 at this late stage." *In re McKinsey & Co.*, 543 F. Supp. 3d 1377, 1379 (J.P.M.L. 2021). The JPML also

12

held that "[a]dding a relatively unique defendant such as McKinsey to an already exceedingly complex and contentious MDL may hinder the transferee judge's ability to efficiently manage the range of cases now before him." *Id.* The same reasoning applies to the new claims and entities Plaintiffs seek to add here.

That is not all. On April 8, 2022, after more than three years of transferring new cases to the MDL, the JPML concluded that "MDL No. 2804 has reached the point where the benefits are outweighed by the effects of transferring new cases to this mature litigation." *In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2 (J.P.M.L. April 8, 2022). As a result, the JPML concluded that transferring "any future actions in MDL No. 2804 is no longer necessary to achieve the just and efficient conduct of the litigation." *Id.* Since that order, the JPML has not transferred any cases to the MDL. Plaintiffs cannot make an end-run around the JPML's orders by adding new claims and new defendants under the guise of a motion for leave to amend.

### III. IF THE COURT ALLOWS PLAINTIFFS TO AMEND THEIR COMPLAINTS, THE COURT SHOULD SEVER AND STAY ALL NON-PBM CLAIMS.

The Court should deny Plaintiffs' motion, but if it does not, then the Court should exercise its discretion to sever and stay all mail-order pharmacy and other non-PBM claims. Plaintiffs' theory of liability for the mail-order pharmacy claims hinges on the dispensing of opioids, not the provision of pharmacy benefit services, which as set forth above, raise distinct legal and factual issues. In fact, Plaintiffs concede that severance may be appropriate here and that the Court has the power to do so. Dkt. 5277 at 10. This Court has previously severed claims—at the PEC's request—under similar circumstances to simplify bellwether trials in this MDL and should do so again here. Dkt. 2399 (granting the PEC's motions to sever claims in Track One).

Federal Rule of Civil Procedure 21 vests "the district court [with] broad discretion in determining whether or not claims or actions should be severed." *Id.* at *2. Courts consider many

13

factors when determining whether to sever claims, including (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether severance would facilitate settlement or judicial economy; (4) whether severance would avoid prejudice; and (5) whether different witnesses and documentary proof are required for separate claims. Dkt. 2399 at 2 (citing *Parchman v. SLM Corp.*, 896 F.3d 728, 733 (6th Cir. 2018)). Consistent with the Court's findings in Track One, each factor weighs in favor of severing all claims against the mail-order pharmacies in these PBM bellwether cases.

*First*, the core conduct in dispute in Plaintiffs' PBM claims (pharmacy benefit management services) differs from the core conduct in dispute in the mail-order pharmacy claims (dispensing). It also differs from Plaintiffs' new consulting, health care services, or cash-card theories.

*Second*, those new theories implicate numerous new legal frameworks. Resolving those claims would require close scrutiny of those different statutory and regulatory frameworks.

*Third*, the Court has already acknowledged that adding new parties and new claims to the PBM bellwether cases "could make the trials unmanageable" and that "doesn't serve anyone's purpose." Dkt. 5265 at 10:9–13. Further, "[a]bsent severance, there is a risk that the jury will be overwhelmed by the inclusion of the [p]roposed [s]evered [d]efendants," the mail-order pharmacies and other non-PBM entities. ECF No. 2099 at 3; ECF No. 2148 at 2 (collecting cases).

*Fourth*, Plaintiffs would not be prejudiced by severance, and Plaintiffs acknowledge that the Court may exercise its discretion to sever claims in the interest of judicial economy. Indeed, in Track One, the PEC argued that the proposed severed defendants would not be prejudiced because the trial was more than two months away. Here, trials have not even been scheduled and discovery has just begun, so there can be no prejudice to Plaintiffs. On the contrary, narrowing the issues will streamline the cases and ensure they serve as PBM bellwethers.

*Fifth*, there is no need for Plaintiffs to include—or the Court to handle motions and discovery disputes regarding—unrelated claims against eleven new defendants when those claims and defenses will inherently require "different witnesses and documentary proof." *See* Dkt. 2099 at 3; Dkt. 2148 at 3.

Notwithstanding the Court's directive to Plaintiffs to explain "why it is essential" to include dispensing claims in their proposed amended complaints *and* how Plaintiffs would propose the Court could manage a trial of such magnitude (Dkt. 5265 at 10:9–10), Plaintiffs did neither. If the Court allows Plaintiffs to amend their complaints to add those unwieldy new claims, the Court should sever and stay all non-PBM claims. *See, e.g.*, Dkt. 2399; Dkt. 2990 (granting Track Two plaintiffs' motion to sever); Dkt. 3172 (granting NAS Baby Plaintiffs' motion to sever Sackler defendants); Dkt. 2612 (approving stipulation to sever Purdue defendants from Track One); *see also In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 841 ("[A]n MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL."). The PBM bellwethers should focus on PBM claims against PBM entities.

## CONCLUSION

Plaintiffs' motion does not "promote the just and efficient conduct" of the existing claims against OptumRx and Express Scripts (*see* 28 U.S.C. § 1407); instead, Plaintiffs seek to abuse the Court's bellwether-selection process, circumvent the JPML's order closing this MDL, and prejudice both existing and proposed additional defendants. The Court should deny Plaintiffs' motion for leave to amend. If the Court is inclined to grant the motion, the PBM Defendants request that the Court sever and stay all mail-order pharmacy and other non-PBM claims.

15

Date: January 22, 2024

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Jonathan G. Cooper* |
| Brian D. Boone | Michael J. Lyle |
| **ALSTON & BIRD LLP** | Jonathan G. Cooper |
| Vantage South End | **QUINN EMANUEL URQUHART &** |
| 1120 South Tryon Street, Suite 300 | **SULLIVAN, LLP** |
| Charlotte, NC 28203 | 1300 I St. NW, Suite 900 |
| Tel: (704) 444-1000 | Washington, DC 20005 |
| brian.boone@alston.com | Tel: (202) 538-8000 |
| | mikelyle@quinnemanuel.com |
| William H. Jordan | jonathancooper@quinnemanuel.com |
| **ALSTON & BIRD LLP** | |
| 1201 West Peachtree Street NW, Suite 4900 | *Attorneys for Express Scripts, Inc., and Express Scripts Holding Company, n/k/a Evernorth Health, Inc.* |
| Atlanta, GA 30309 | |
| Tel.: (404) 881-7000 | |
| bill.jordan@alston.com | |

*Attorneys for OptumRx, Inc., Optum, Inc., and UnitedHealth Group Incorporated*

16