**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**THIS DOCUMENT RELATES TO**:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13)<br><br>*City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14)<br><br>*County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | MDL NO. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**SUPPLEMENTAL DECLARATION OF MATTHEW P. HOOKER IN SUPPORT OF**
<u>**OPTUMRX, INC.'S MOTION TO DISQUALIFY MOTLEY RICE**</u>

## SUPPLEMENTAL DECLARATION OF MATTHEW P. HOOKER

I, Matthew P. Hooker, declare as follows:

1. I am over eighteen years old, of sound mind, and under no legal disability.

2. I am an associate at Alston & Bird LLP.

3. On December 15, 2023, I executed a declaration in support of OptumRx, Inc.'s Motion to Disqualify Motley Rice in the above-captioned action. *See* Dkt. 5276-4.

4. I now submit this supplemental declaration in further support of OptumRx, Inc.'s Motion to Disqualify Motley Rice and to address certain factual representations made in Plaintiffs' and PEC's Joint Memorandum of Law in Opposition to OptumRx, Inc.'s Motion to Disqualify Motley Rice (*see* Dkt. 5288) and in the January 22, 2024 Declaration of Elizabeth Paige Boggs (*see* Dkt. 5288-6).

5. I have personal knowledge of the facts set forth in this declaration, and if called to testify in person about those facts, could competently do so under oath.

6. Attached as **Exhibit A** is a true and correct copy of the Supplemental Expert Report and Opinion of Sari W. Montgomery and Wendy J. Muchman.

**Background of the Minnesota Documents**

7. As I stated in my December 15 declaration, I have reviewed and am familiar with the documents that OptumRx produced to the Minnesota Attorney General's Office in accordance with a 2017 civil investigative demand that are branded with the Bates-number range Optum-MNAG-0000000001 to Optum-MNAG-0000068310 (the "Minnesota Documents"). *See* Dkt. 5276-4 ¶ 7.

8. The Minnesota Documents consist of approximately 10,885 unredacted documents (approximately 68,310 pages) that OptumRx marked "PROPRIETARY AND CONFIDENTIAL."

2

9. Based on the December 14, 2023 Declaration of Allison J. Caplis (*see* Dkt. 5276-2) as well as OptumRx's production letters dated June 8, 2022 and September 10, 2021 (*see* Dkts. 5276-8, 5276-14), I understand that the Minnesota Documents were produced to (a) Motley Rice for the Hawaii Attorney General on June 8, 2022 and (b) Motley Rice for the District of Columbia Attorney General on September 10, 2021. *See* Dkt. 5276-2 ¶¶ 5, 7, 10, 13; Dkt. 5276-8; Dkt. 5276-14.

**The PEC's and Ms. Boggs' Characterization of the Minnesota Documents**

10. In its opposition brief, the PEC—citing paragraph 8 of my December 15 declaration—states that "Optum's assessment" of the Minnesota Documents "appears to be inaccurate." Dkt. 5288 at 8. It also states that "[t]he pre-suit investigation documents . . . mostly address billing transactions for other types of drugs in other jurisdictions." *Id.* at 7. It also asserts that "Optum produced in response [to the Hawaii subpoena] *only* documents and information related to insulin drugs" (*id.* at 3 (emphasis added)) and that "Optum produced in response [to the D.C. subpoena] *mostly* documents and information related to insulin drugs" (*id.* at 4 (emphasis added)).

11. In her January 22 declaration, Ms. Boggs purports to describe the contents of the Minnesota Documents: "This production includes: rebate agreements with insulin manufacturers (Novo Nordisk, Inc., Sanofi-Aventis U.S. LLC, and Eli Lilly and Company); OptumRx's prescription drug formularies (which are publicly available at https://www.optum.com/business/hcp-resources/formulary-updates.html); template communications to consumers (e.g., letters regarding changes to OptumRx's formulary); and internal emails and presentations." Dkt. 5288-6 ¶ 15.

3

**Summary of the Minnesota Documents and Response to the PEC's and Ms. Boggs's Characterization of Those Documents**

12. The PEC and Ms. Boggs grossly understate and mischaracterize the contents of the Minnesota Documents. The Minnesota Documents do not relate only to insulin drugs, as the PEC and Ms. Boggs assert.

13. Index searches across the Minnesota Documents identify a large volume of materials that reference opioids generally, specific opioid prescription drugs, and opioid manufacturers.

    a. I performed an index search across the Minnesota Documents for ["opioid" OR "opiate"].[1] That search hit on 1,447 documents (13.3% of the documents in the production).

    b. I performed an index search across the Minnesota Documents for [Purdue]. That search hit on 1,375 documents (12.6% of the documents in the production).

    c. I performed an index search across the Minnesota Documents for ["OxyContin" OR "Opana" OR "Nucynta" OR "Duragesic" OR "Subsys" OR "Actiq" OR "Fentora"]. That search hit on 3,835 documents (35.2% of the documents in the production). I selected those terms because they are the brand-name prescription opioids identified in the proposed amended PBM bellwether complaints. *See* Dkt. 5296-2 ¶ 57; Dkt. 5296-3 ¶ 57; Dkt. 5296-4 ¶ 57; Dkt. 5296-5 ¶ 57.

    d. I performed an index search across the Minnesota Documents for ["hydrocodone" OR "oxycodone" OR "fentanyl" OR "hydromorphone" OR

---

[1] For the index searches described in paragraphs 13(a)–(e), the brackets are used to identify the search string and were not included in the searches themselves.

4

        "morphine" OR "methadone" OR "tapentadol" OR "oxymorphone"]. That search hit on 2,403 documents (22.1% of the documents in the production). I selected those terms because they are the generic opioids identified in the proposed amended PBM bellwether complaints. *See* Dkt. 5296-2 ¶ 57; Dkt. 5296-3 ¶ 57; Dkt. 5296-4 ¶ 57; Dkt. 5296-5 ¶ 57.

    e.    I performed an index search across the Minnesota Documents for ["Purdue" OR "Endo" OR "Janssen" OR "Johnson & Johnson" OR "Insys" OR "Teva" OR "Cephalon" OR "Mallinckrodt"]. That search hit on 2,087 documents (19.2% of the documents in the production). I selected those terms because they are the opioid manufacturers identified in the proposed amended PBM bellwether complaints. *See* Dkt. 5296-2 ¶ 57; Dkt. 5296-3 ¶ 57; Dkt. 5296-4 ¶ 57; Dkt. 5296-5 ¶ 57.

14.    A review of documents in the production also demonstrates that the documents are not limited to insulin-related issues. As I explained in my December 15 declaration, the production "contained OptumRx's confidential internal or commercially sensitive documents, *including documents relating to opioid and non-opioid medications*, covering various aspects of OptumRx's business operations. The documents covered formulary development, rebate negotiations with drug manufacturers, and clinical and formulary offerings to clients. They included charters, policies, and other materials from OptumRx's business strategy and formulary placement committees as well as emails from custodians relating to those and other aspects of OptumRx's business." Dkt. 5276-4 ¶ 8 (emphasis added).

15.    Below are several more detailed (non-exhaustive) examples of the types of documents in the Minnesota Documents:

5

    a.        The Minnesota Documents include some of OptumRx's rebate agreements with various prescription drug manufacturers including Eli Lilly, Novo Nordisk, and Sanofi-Aventis (the three major manufacturers of insulin), as well as Bayer, Biogen, Boehringer Ingelheim, Bristol-Myers Squibb, AstraZeneca, Johnson & Johnson, Merck, Novartis, and Teva.[2] Some of the rebate agreements cover multiple drugs across various therapeutic classes. For example, the agreements with Eli Lilly, Novo Nordisk, and Sanofi-Aventis cover some non-insulin drugs in addition to insulin drugs. The agreements with Bayer, Biogen, Boehringer Ingelheim, Bristol-Myers Squibb, AstraZeneca, Johnson & Johnson, Merck, Novartis, and Teva cover non-insulin drugs. When OptumRx re-produced the same agreements in an insulin-related civil litigation naming OptumRx as a defendant, *Mississippi ex rel. Fitch v. Eli Lilly & Co. et al.*, No. 3:21-cv-00674 (S.D. Miss.) (the "Mississippi Insulin Litigation"), it redacted all non-insulin information from the Eli Lilly, Novo Nordisk, and Sanofi-Aventis agreements and withheld the agreements with the other manufacturers as non-responsive. But the rebate agreements are unredacted in the Minnesota Documents and were therefore provided in their unredacted form to Motley Rice as part of its government investigations.

    b.        The Minnesota Documents include slide decks for OptumRx's Business Implementation Committee (BIC) monthly meetings.[3] Among other things, the

---

[2] *E.g.*, Optum-MNAG-0000000001–1901; Optum-MNAG-0000004713–5163.

[3] *E.g.*, Optum-MNAG-0000005229; Optum-MNAG-0000005231; Optum-MNAG-0000005742; Optum-MNAG-0000006217; Optum-MNAG-0000008704; Optum-MNAG-0000014277; Optum-MNAG-0000014590; Optum-MNAG-0000014608; Optum-MNAG-0000014946; Optum-MNAG-0000017924; Optum-MNAG-0000018396; Optum-MNAG-0000019933; Optum-MNAG-0000021111; Optum-MNAG-0000021447; Optum-MNAG-0000021898; Optum-MNAG-0000022028; Optum-MNAG-0000022328; Optum-MNAG-0000023225; Optum-

BIC approves changes to prescription drug lists (also known as formularies). The BIC slide decks walk through the analysis and decisions for numerous drugs, including opioids. Some of the BIC slide decks in the Minnesota Documents do not include or analyze insulin or anti-diabetes drugs. When OptumRx re-produced the same decks in the Mississippi Insulin Litigation, it redacted all slides that did not relate to insulin or anti-diabetes drugs. For some decks, that meant OptumRx redacted the entire slide deck or the vast majority of the deck because it overwhelmingly concerned non-insulin products. But the BIC slide decks are unredacted in the Minnesota Documents. Thus, Motley Rice, as part of its investigations, received the entire unredacted slide decks, including slides related to opioids.

c. The Minnesota Documents include BIC output report grids and related emails.[4] The BIC grids are spreadsheets that contain detailed information about

---

MNAG-0000023331; Optum-MNAG-0000023986; Optum-MNAG-0000024214; Optum-MNAG-0000024604; Optum-MNAG-0000025288; Optum-MNAG-0000025414; Optum-MNAG-0000025438; Optum-MNAG-0000029382; Optum-MNAG-0000029462; Optum-MNAG-0000035242; Optum-MNAG-0000035686; Optum-MNAG-0000035978; Optum-MNAG-0000045531; Optum-MNAG-0000046091.

[4] *E.g.*, Optum-MNAG-0000006365; Optum-MNAG-0000006366; Optum-MNAG-0000006367; Optum-MNAG-0000006368; Optum-MNAG-0000006399; Optum-MNAG-0000006411; Optum-MNAG-0000006631; Optum-MNAG-0000006633; Optum-MNAG-0000013732; Optum-MNAG-0000014278; Optum-MNAG-0000014279; Optum-MNAG-0000014577; Optum-MNAG-0000014599; Optum-MNAG-0000014600; Optum-MNAG-0000014642; Optum-MNAG-0000014643; Optum-MNAG-0000014644; Optum-MNAG-0000014645; Optum-MNAG-0000016225; Optum-MNAG-0000017651; Optum-MNAG-0000017720; Optum-MNAG-0000017920; Optum-MNAG-0000017921; Optum-MNAG-0000018398; Optum-MNAG-0000019451; Optum-MNAG-0000019452; Optum-MNAG-0000019891; Optum-MNAG-0000019901; Optum-MNAG-0000019935; Optum-MNAG-0000019957; Optum-MNAG-0000020917; Optum-MNAG-0000020919; Optum-MNAG-0000021059; Optum-MNAG-0000034598; Optum-MNAG-0000034599; Optum-MNAG-0000034669; Optum-MNAG-0000034676; Optum-MNAG-0000021112; Optum-MNAG-0000021116; Optum-MNAG-0000021455; Optum-MNAG-0000021456; Optum-MNAG-0000021895; Optum-MNAG-0000021896; Optum-MNAG-0000035210; Optum-MNAG-0000035211; Optum-MNAG-0000035243; Optum-MNAG-0000022031; Optum-MNAG-0000022034; Optum-MNAG-0000035244; Optum-MNAG-0000022077; Optum-MNAG-0000022078; Optum-MNAG-0000022304; Optum-MNAG-0000035665; Optum-MNAG-0000035666; Optum-MNAG-0000022329; Optum-MNAG-0000022330; Optum-MNAG-0000035682; Optum-MNAG-0000035683; Optum-MNAG-0000005209; Optum-MNAG-0000005211; Optum-MNAG-0000022920; Optum-MNAG-0000035950; Optum-MNAG-0000035951; Optum-MNAG-0000035972; Optum-MNAG-0000035980; Optum-MNAG-0000023220; Optum-MNAG-0000023229; Optum-MNAG-0000023332; Optum-MNAG-0000039492; Optum-MNAG-

formulary placement for drugs and related internal recommendations and decisions. The grids and related emails reveal OptumRx's internal business strategies for changing and reviewing drug formulary placement. Each grid contains information and analysis about numerous drugs (including opioids), not just one drug per grid. The grids have hundreds of rows, with each row addressing a specific drug. OptumRx re-produced most of the same grids in the Mississippi Insulin Litigation; when it did, it redacted all rows that did not relate to insulin or anti-diabetes drugs. But the BIC grids are unredacted in the Minnesota Documents that were provided to Motley Rice, providing a comprehensive view into decisions and trends across myriad drugs and therapeutic classes.

d.  The Minnesota Documents include slide decks from OptumRx's Industry Relations team containing hundreds of slides analyzing formulary and rebate strategy for numerous drugs including insulins, opioids, and others.[5] The decks

---

0000039493; Optum-MNAG-0000023980; Optum-MNAG-0000023983; Optum-MNAG-0000042851; Optum-MNAG-0000024216; Optum-MNAG-0000024217; Optum-MNAG-0000024498; Optum-MNAG-0000024504; Optum-MNAG-0000005227; Optum-MNAG-0000024605; Optum-MNAG-0000024606; Optum-MNAG-0000025287; Optum-MNAG-0000025289; Optum-MNAG-0000043108; Optum-MNAG-0000043182; Optum-MNAG-0000005743; Optum-MNAG-0000005744; Optum-MNAG-0000029432; Optum-MNAG-0000029433; Optum-MNAG-0000029438; Optum-MNAG-0000029447; Optum-MNAG-0000029448; Optum-MNAG-0000029449; Optum-MNAG-0000029450; Optum-MNAG-0000005228; Optum-MNAG-0000029454; Optum-MNAG-0000029455; Optum-MNAG-0000029456; Optum-MNAG-0000029459; Optum-MNAG-0000029460; Optum-MNAG-0000045084; Optum-MNAG-0000005232; Optum-MNAG-0000029463; Optum-MNAG-0000029464; Optum-MNAG-0000005233; Optum-MNAG-0000045496; Optum-MNAG-0000045516; Optum-MNAG-0000045553; Optum-MNAG-0000045554; Optum-MNAG-0000046013; Optum-MNAG-0000046092; Optum-MNAG-0000046129; Optum-MNAG-0000046159; Optum-MNAG-0000046348; Optum-MNAG-0000049764; Optum-MNAG-0000049767; Optum-MNAG-0000054063; Optum-MNAG-0000054064; Optum-MNAG-0000006220; Optum-MNAG-0000006235.

[5] *E.g.*, Optum-MNAG-0000016959; Optum-MNAG-0000017638; Optum-MNAG-0000033537; Optum-MNAG-0000035253; Optum-MNAG-0000022083; Optum-MNAG-0000042894; Optum-MNAG-0000042896; Optum-MNAG-0000024650; Optum-MNAG-0000031581; Optum-MNAG-0000031582; Optum-MNAG-0000031583; Optum-MNAG-0000031584; Optum-MNAG-0000031585; Optum-MNAG-0000049413; Optum-MNAG-0000053047; Optum-MNAG-0000053893; Optum-MNAG-0000031833; Optum-MNAG-0000031834; Optum-MNAG-0000031835; Optum-MNAG-0000031858; Optum-MNAG-0000067101.

        provide summaries of current formulary and rebate statuses as well as projected financial scenarios, possible changes to future formulary positions, expected developments and changes from prescription drug manufacturers (including new drug launches), and recommendations for future strategy. OptumRx re-produced many of the same decks in the Mississippi Insulin Litigation; when it did, it redacted all slides that did not relate to insulin or anti-diabetes drugs. But the decks are unredacted in the Minnesota Documents and were therefore provided in their unredacted form to Motley Rice as part of its government investigations.

e.    The Minnesota Documents include OptumRx's intelligence sheets about prescription drug manufacturers for OptumRx's in-person meetings with those manufacturers.[6] The sheets contain meeting agendas, analysis of and notes on OptumRx's relationship with the manufacturers, financial information about yearly rebates and the manufacturers' value to OptumRx, potential issues or concerns between OptumRx and the manufacturers, and future opportunities for the business relationships. Intelligence sheets for multiple manufacturers (including opioid manufacturers like Purdue, Johnson & Johnson, and Teva, as well as manufacturers of insulins and other drugs) are grouped in a single file. OptumRx re-produced many of the same files in the Mississippi Insulin Litigation; when it did, it redacted all pages for non-insulin manufacturers or portions of pages for insulin manufacturers that did not relate to insulin or anti-

---

[6] *E.g.*, Optum-MNAG-0000006744; Optum-MNAG-0000014165; Optum-MNAG-0000016344; Optum-MNAG-0000035781; Optum-MNAG-0000024139; Optum-MNAG-0000005936; Optum-MNAG-0000005942; Optum-MNAG-0000053633.

9

        diabetes drugs. But the files are unredacted in the Minnesota Documents and were therefore provided in their unredacted form to Motley Rice as part of its government investigations.

    f.    The Minnesota Documents include other documents and slide decks relating to internal strategies across OptumRx's business. One deck,[7] for instance, outlines a discussion about OptumRx's strategic partnership with one of its clients. That deck walks through the nuts and bolts of OptumRx's business, including the company's rebate philosophy and approach, formulary management models, formulary offering options, utilization management bundles, and its annual timeline to create drug formularies through committee review. Another deck[8] comes from OptumRx's Industry Relations team and details the company's rebate initiatives and client formulary distribution, addresses specific organizational goals and milestones, and analyzes anticipated changes to contracts with manufacturers. Another deck[9] (also from the Industry Relations team) is an internal draft presentation for a client forum addressing OptumRx's approaches to contracting with prescription drug manufacturers, including price protection and lowest net-cost strategies, and other competitively sensitive information.

    g.    The Minnesota Documents include copies of OptumRx's internal formal procedures. One procedure,[10] for instance, governs the clinical evaluation of

---

[7] Optum-MNAG-0000003374.
[8] Optum-MNAG-0000003594.
[9] Optum-MNAG-0000045687.
[10] Optum-MNAG-0000001902.

    drugs for prescription drug list (formulary) review. It is not drug specific and details how OptumRx's internal committees evaluate drugs and how those drugs will be categorized (or designated) for formulary placement purposes.

  h. The Minnesota Documents include slide decks for OptumRx's client and strategic partnership meetings to discuss drug rebates.[11] Those documents walk through the client or partner's drug rebates and utilization on a drug-by-drug basis.

  i. The majority of the Minnesota Documents are custodial emails and attachments that address internal business strategies including but not limited to negotiations with prescription drug manufacturers, formulary placement, and financial analysis.[12]

**Confidentiality Treatment of the Minnesota Documents**

16. The vast majority of the Minnesota Documents—and those types and categories of documents—are highly confidential and commercially sensitive to OptumRx and are not available to the public.

17. The only documents in the Minnesota Documents that I understand to be publicly available as a regular part of OptumRx's business are 41 documents (0.38% of the total production) that constitute some of OptumRx's prescription drug list offerings (also known as formularies).[13]

---

[11] *E.g.*, Optum-MNAG-0000008559; Optum-MNAG-0000008561; Optum-MNAG-0000008600; Optum-MNAG-0000008602; Optum-MNAG-0000009925; Optum-WAAG-0000009926.

[12] Optum-MNAG-0000001902–4589; Optum-MNAG-0000004658–55673; Optum-MNAG-0000057112–68310.

[13] Optum-MNAG-0000055932–57111.

**The Senate Finance Committee Documents**

18. In her January 22 declaration, Ms. Boggs describes the Senate Finance Committee's January 14, 2021 report on insulin drug pricing and the report's appendix, which included 12 documents that OptumRx had produced to the committee during its investigation. *See* Dkt. 5288-6 ¶ 11; *see also* Dkt. 5288-2. Of those 12 documents, 9 contain redactions. Of the 285 total pages across those 12 documents, 113 pages are completely redacted and another 70 pages are partially redacted. *See* Dkt. 5288-2.

19. I commissioned and supervised a team of e-discovery professionals to analyze the 12 OptumRx documents attached to the Senate Finance Committee's report in order to ascertain the overlap—if any—between those documents and the Minnesota Documents. Of those 12 documents, only 2 are also in the Minnesota Documents.

[Signature page follows]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 5th, 2024

_____
Matthew P. Hooker

13