# Exhibit A

to Supplemental Declaration of Matthew Hooker

## ASSIGNMENT

OptumRx, Inc.'s counsel asked Ms. Montgomery and Ms. Muchman to prepare a supplemental report on the application of Rule 1.11(c) to the proceedings against OptumRx in the Opioid MDL and to address certain of Motley Rice's arguments in its opposition to OptumRx's motion to disqualify.[1]

## ADDITIONAL MATERIALS REVIEWED

We reviewed the Plaintiffs' response to OptumRx's Motion to disqualify and additional research as cited in this supplemental opinion.

## SUMMARY OF SUPPLEMENTAL OPINIONS

We have reviewed Plaintiffs' response to OptumRx's Motion to Disqualify Motley Rice and provide the following supplemental opinions. Contrary to Plaintiffs' assertions, it is our opinion that the Information and Documents at Issue are Confidential Government Information because they were obtained using government authority, the information is not otherwise available to the public, are subject to confidentiality agreements that Motley Rice signed as government lawyers, and the government is either prohibited by law from disclosing the information to the public or there is a legal privilege preventing the disclosure. It is also our opinion that the Government Plaintiffs are private clients because they are represented by a private law firm in a private capacity. Finally, it is our opinion that the signed Confidentiality Agreements establish that the information *could* be used to the material disadvantage of OptumRx because it was obtained only through the coercive power of the government and contains sensitive corporate information not otherwise available to the public.

---

[1] Ms. Montgomery and Ms. Muchman's qualifications, prior publications, prior testimony, previous materials reviewed, facts considered, and compensation are set out in their initial report. Dkt. No. 5276-18.

1

## SUPPLEMENTAL OPINIONS

I. **The Information and Documents at Issue are Confidential Government Information.**

As we explained in our original report,[2] Rule 1.11(c) defines confidential government information as "information obtained under government authority and which, at the time this Rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and which is not otherwise available to the public."[3] Broken down, the Rule has three requirements: (1) the information acquired about the person was "obtained under government authority;" (2) *at the time* the lawyer applies Rule 1.11 to the information, it is "not otherwise available to the public;" *and* (3) *either* (a) "the government is prohibited by law from disclosing [the information] to the public," *or* (b) the government "has a legal privilege not to disclose the information."[4] Here, all three requirements are met.

The information that Motley Rice acquired about OptumRx was *obtained under government authority*.[5] They obtained information using the power of "a Special Assistant Corporation Counsel,"[6] with "the authority vested by the Attorney General of D.C.,"[7] and as a Counsel for "State of Hawai'i Department of Attorney General."[8] The Rule applied to Motley Rice *at the time* they undertook the private representation in the opioid litigation against OptumRx,

---

[2] Dkt. No. 5276-18 at 2-3.
[3] OH ST RPC Rule 1.11(c) Cmt. 4.
[4] Simon's New York Rules of Prof. Conduct Annotated § 1.11:31, July 2023 Update, Roy D. Simon Jr.
[5] "Paragraphs (a)(2) and (c) of Rule 1.11 will usually overlap. A lawyer who participated personally and substantially in a matter while in public service will nearly always have confidential government information, and will thus be disqualified under this subparagraph as well as Rule 1.11(a)(2), but this subdivision [(c)] applies even if the lawyer did no work at all on a matter and came across the confidential government information by chance, or over lunch, or by overhearing a conversation involving other government lawyers, or through personal but non-substantial participation in the matter, or in any other way." Simon's New York Rules of Prof. Conduct Annotated § 1.11:27, July 2023 Update, Roy D. Simon Jr.
[6] Dkt. No. 5276-18 at 8.
[7] *Id.* at 10.
[8] *Id.* at 11-12.

2

because the firm had an obligation to ensure that it complied with the Rule's requirements before taking on the representations.[9] Finally, under the Confidentiality Agreements, Motley Rice lawyers—as government lawyers—are *either* (a) prohibited by law from disclosing the information to the public, *or* (b) bound by a legal privilege not to disclose the information.

Plaintiffs' argument about what is "confidential information obtainable only through government service" misapprehends the meaning and purpose of Rule 1.11(c). The rule does not require "confidential government information" to be unavailable from *any* other source. It requires only that the information is not "otherwise available to the public," *and either* (a) "the government is prohibited by law from disclosing [the information] to the public," *or* (b) the government "has a legal privilege not to disclose the information." The information that Motley Rice demanded and received through its government investigations of OptumRx qualifies as "confidential government information" under that definition.

Plaintiffs' reliance on *Davis v. Southern Bell,* 149 F.R.D. 666 (S.D. Fla. 1993) is misplaced. As a threshold matter, that decision was based on Rule 1.11(b) (then titled *Successive Government and Private Employment*), which is not the rule at issue here and which was superseded in 2006.[10] In *Davis,* the Court declined to disqualify the lawyer because the representation was not successive but joint, with the lawyer representing a private party and the government in parallel proceedings. The Court found that the information was produced "pursuant to routine discovery." What is routine discovery is a question of fact and the facts of that case are distinguishable. Importantly,

---

[9] By analogy, Rule OH ST RPC 1.11 requires screening "as soon as practicable after the need for screening becomes apparent." OH ST RPC Rule 1.11, cmt 7.

[10] The case cites a now superseded version of Rule 1.11, but the definition of confidential government information, which moved from former subdivision (e) to subdivision (c), remains the same. In addition, in 2006, along with other amendments, the title of the Rule was changed to Special Conflicts of Interest for Former and Current Government Officers and Employees, a change intended to reflect the content of the rule more accurately. *See*, 2006 Changes to the Florida Rules of Professional Conduct, 31 Nova L.R. 1, 14, Heather Perry Baxter (Fall 2006).

3

in *Davis,* there was no indication that the confidential government information at issue was subject to signed confidentiality agreements. Thus, the case is inapplicable.

Here, unlike in *Davis*, the evidence shows that Motley Rice, acting as government lawyers, signed confidentiality agreements before OptumRx produced the materials to the government and agreed "not to use the Confidential Information in connection with any other matter, and not to disclose any Confidential Information to any party or the public, except as provided by this Agreement."[11] The confidentiality agreements that Motley Rice signed as government attorneys as a condition of OptumRx's production in the multiple government investigations make it clear, as required under Rule 1.11(c), that in this case the government is "legally prohibited from disclosing the information to the public, or has a legal privilege not to disclose and which is not otherwise available *to the public*."[12] Thus, the information produced by OptumRx in response to the governments' subpoenas is, by definition, confidential government information.

## II. The Government Plaintiffs are "Private Clients" Under Rule 1.11(c) Because Here the Government Plaintiffs are Represented by Motley Rice, a Private Law Firm.

Model Rule 1.11(c) applies when a lawyer represents a "private client" and has "information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee."

Plaintiffs argue that OptumRx's motion must fail because OptumRx cannot satisfy the "*dual requirements*" that Motley Rice was a public officer and employee *and* that the Government Plaintiffs are "private clients." Plaintiffs' statement that, "because the Plaintiffs are all government entities, they are not 'private clients'"[13] misapprehends the Rule's requirements as well as the meaning of the term "private client" as used in the Rule.

---

[11] *See, e.g.,* D.C. Confidentiality Agreement. Dkt No. 5276-18.
[12] OH ST RPC Rule 1.11(c).
[13] Opp. at 14.

4

Quoting from our first report, Plaintiffs argue that the Rule does not apply to them because, "although Singer and Motley Rice represent public entities in their private practice, they are not government actors in that capacity, nor do they have the authority to wield the power of the government in that role."[14] Plaintiffs do not understand the requirements of Rule 1.11(c). When Motley Rice issued subpoenas in each of the government investigations, they did so wielding the government's coercive power. They collected information with the power of "a Special Assistant Corporation Counsel,"[15] with "the authority vested by the Attorney General of D.C.,"[16] and as a Counsel for "State of Hawai'i Department of Attorney General."[17] They are now in a position to use that information which is still protected by the Confidentiality Agreements they signed as *government lawyers,* against OptumRx in their roles as private lawyers for other clients.

While representing governments in their private practice, Motley Rice is not acting as a government lawyer. That is the point.[18] Motley Rice gathered information brandishing the government's authority. The Rule applies *precisely because* Motley Rice gathered information exercising the power of a government lawyer and are now abusing that power by using that information to benefit other government entities who are *private* clients of its *private* law firm.

The word "private" in the term "private client" refers to the nature of the lawyer's practice, *not* the identity of the lawyer's client. "Private client," as used in Rule 1.11(c), means *any* client, including a government entity, whom the lawyer represents while practicing law at an entity other

---

[14] Dkt No. 5276-18 at 21, fn. 20.
[15] Dkt. No. 5276-18 at 8.
[16] *Id.* at 10.
[17] *Id.* at 11-12.
[18] Plaintiffs' lack of understanding of Rule 1.11(c)'s operation is clear. They characterize as "an admission" by defendants our statement that, "[a]lthough Singer and Motley Rice represent public entities in their private practice they are not government lawyers in that capacity nor do they have the authority to wield the power of government in that role." Yes. That is the point. Motley Rice now represents the government as private lawyers. They brandished *government* authority as *government* lawyers to issue *government* subpoenas to get information. And they cannot now benefit their private law practice or its clients, *whether public or private entities*, by using the information they obtained using that authority.

5

than the government, such as a law firm.[19] "The purpose of the rule is to prohibit lawyers from transforming government knowledge into private benefit. . ."[20] The history of and policy reasons for the Rule, as well as precedent, clearly establish that any other interpretation of the term "private client" subverts the Rule's purpose, which is to avoid allowing lawyers to obtain information from a person under government authority and then to exploit that authority by using the information against the person to benefit the lawyer and the clients of the lawyer's private law practice, *whether or not* those clients are public or private entities.

The history and development of the Rule clearly establish this concept. ABA Formal Opinion 342 (1975) explains that the term "private employment" in the text of ABA Model Code of Professional Responsibility Disciplinary Rule 9-101(B), the predecessor to Model Rule 1.11(a)'s disqualification provision, "refers to employment as a private practitioner."[21] "If one underlying consideration is to avoid the situation where government lawyers may be tempted to handle assignments so as to encourage their own future employment in regard to those matters, the danger is that a lawyer may attempt to derive undue financial benefit from fees in connection with subsequent employment, and not that he may change from one salaried government position to another."[22] That is exactly what is happening here. Motley Rice, in its capacity as a private-practice law firm, is attempting to derive substantial financial benefit for itself and its private clients, from

---

[19] "Even if the lawyer represents the government agency on a contingent fee arrangement, like the private lawyers who represented various state and local governments in suing tobacco companies or gun manufacturers, the lawyer remains in private practice while representing various private clients, including one or more governments or governmental agencies." Rotunda, Ronald, Legal Ethics: The Lawyer's Deskbook on Professional Responsibility, American Bar Association Center for Professional Responsibility, p. 593 (2023-2024).
[20] Simon's New York Rules of Prof. Conduct Annotated § 1.11:28, July 2023 Update, Roy D. Simon Jr.
[21] *See,* ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 342 (Nov. 24, 1975) issued to interpret DR 9-101(B) after the Model Code was amended to incorporate imputed disqualification. DR 9-101(B) read: "[a] lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."
[22] *Id.* at 2.

6

its work as an appointed government lawyer in a matter where it could use the information it previously acquired in its capacity as a government officer to advance the private litigation.

Courts have held that lawyers may not transition from government service to private practice at a law firm and then represent a government entity while practicing at the law firm. In *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974), discussed in our original opinion, the New York Appellate Court disqualified a former United States Department of Justice lawyer from representing the City of New York when he transitioned from government service to private practice in a law firm. The lawyer, while employed at the Justice Department's Antitrust Division, had substantial responsibility for an antitrust suit against General Motors.[23] The Court, interpreting New York's Code of Professional Responsibility and Canon 9, found that the lawyer was engaged in "private employment" for purposes of DR 9-101(B) because the lawyer was practicing in a private firm even though the client was a government entity.[24] This interpretation is consistent with the intention of the existing Rule, and clarifies that a government entity is, in fact, a "private client" when represented by a private law firm that is not acting under the authority of the government.

Plaintiffs' citation to *Doe 1 v. Francis*, 2006 WL 8444030, at *10 for the proposition that an attorney in private practice who merely represents a government agency does not qualify as a public officer, misapprehends the Rule's meaning as well as the *facts* of their own work for government entities. Because the Rule applies to current and former representations, contrary to Plaintiffs' circular argument, the question is not whether Motley Rice is *still* a public officer/government employee with regard to the current representation of governmental entities. It does not make a difference if Motley Rice's work for the government is ongoing or completed.

---

[23] 501 F.2d 639, 642.
[24] 501 F.2d 639, 644.

7

The reality is that Motley Rice is now acting through its *private* law firm to represent a government entity as its client bringing a *private* lawsuit. The fact that its private client is a government entity does not change the lawyer's duties under the Rule. Plaintiffs' argument that they have destroyed some of the confidential government information they received as government lawyers is not the test. As Courts have held, even a lack of memory does not insulate a lawyer from the reach of 1.11(c) and does not undo the lawyer's actual knowledge.[25]

### III. The Signed Confidentiality Agreements and DR-22 and Its Amendments Establish that the Information Requested *Could Be* Used to the Material Disadvantage of OptumRx.

Plaintiffs' argument that DR-22 requires Defendants to produce documents previously produced pursuant to government subpoena is inaccurate. Although we believe DR-22 does not apply, regardless, confidential government information produced under DR-22 does not lose its status as confidential—that information can be designated as such under the protective orders that govern the MDL.[26] Plaintiffs avoid any meaningful explanation of why the Confidentiality Agreements that Motley Rice signed as government lawyers[27] in all three investigations are not still binding.

As discussed in our original report, the definition of "confidential government information is quite broad, including basically everything except information that is required to be disclosed under the Freedom of Information Act."[28] Further, to the extent that Defendants are required to produce certain confidential government information in response to discovery requests, that does

---

[25] Dkt. No. 5276-18 at 31, fn. 48 & 50; *Kronenberg v. LaRouche* 2010WL 1443934, *4.
[26] ECF No. 441.
[27] Dkt. No. 5276-18, 19.
[28] Op. at p. 25, fn. 36, *Law of Lawyering, Hazard, Hodes, Jarvis and Thompson*, §16.12 (Fourth Edition, 2021-1 Supp. 2014).

8

not transform the confidential nature of the information, as documents produced in discovery are not considered public information and would be covered by protective orders.[29]

The Confidentiality Agreements protect the documents from use in "any other matter," prohibit disclosure "to any party or the public," and provide that Motley Rice agreed "not to rely on Confidential Material in pursuing information or claims in any other matters outside of its representation of the OAG."[30] DR-22 allows for Defendants to raise objections to producing documents, and establishes that the information at issue is neither routine discovery nor information obtainable under the Freedom of Information Act. Because Plaintiffs' theory that OptumRx cannot prove that "the information could be used to [OptumRx's] material disadvantage," ignores the Confidentiality Agreements, is premised on their false statement that DR-22 requires OptumRx's blanket production, and forgets that some of the documents produced related only to non-opioid investigations and are not subject to DR-22, Plaintiffs' argument that Rule 1.11(c) does not apply is meritless.

Because the potential for abuse of information gathered wielding the coercive power of government authority is so grave, the threshold under Rule 1.11(c) is low and only requires that the information *could* be used to OptumRx's material disadvantage.[31] "The rule applies if the information 'could be' used against the person even if the former government lawyer's private law firm does not intend to use it or does not use it in fact. The potential for material harm to the person is enough to trigger the rule."[32] Motley Rice cannot erase the insights they gained from obtaining

---

[29] "If the public cannot obtain the information, then it meets this element. If the public can obtain the information, then it fails this element. Thus, information available on the Internet or in public archives or upon request at a government agency does not satisfy this element and is not confidential government information." Simon's New York Rules of Prof. Conduct Annotated § 1.11:30, July 2023 Update, Roy D. Simon Jr.
[30] *See*, *e.g.*, Dkt. No. 5276-18 at 11, 26.
[31] Ohio R. Prof'l Conduct 1.11(c).
[32] Simon's New York Rules of Prof. Conduct Annotated § 1.11:28, July 2023 Update, Roy D. Simon Jr.; *See also,* Op. at p. 23, fn. 26 & 27; N.Y. State Op. 1169 (Opinion explains that lawyer who wished to run for Town Supervisor but might acquire information through that position would be disqualified from representing a private client in a matter in

the documents in their governmental positions which *could* allow the information to be used to OptumRx's material disadvantage. They cannot simply ignore the Confidentiality Agreements they signed, which shielded the information OptumRx then agreed to produce pursuant to the coercive mandate of government subpoenas. Given the information was produced only under those protections, Plaintiffs' allegations that the documents are subject to "blanket production," and that OptumRx *could* not be materially disadvantaged by their publication, is nonsensical. Given the facts, it is our opinion that Motley Rice is violating Rule 1.11(c). We do not believe that this is a close call.

*Wendy Muchman*
_____
Wendy J. Muchman

*Sari W. Montgomery*
_____
Sari Montgomery

Dated: Feb. 4, 2024

---

which the confidential information can be used to the material disadvantage of the person to whom the confidential information pertains, even if the information was acquired by happenstance. The limitation applies only to confidential government information and doesn't operate regarding information that "merely could be imputed to the lawyer."); N.Y.S. Bar Association Committee on Professional Ethics, Op. 1187, ¶ 8 (05/06/2020); (Lawyer was a Village police officer and wished to represent defendants in traffic court. The opinion explained that when acting as a lawyer the police officer must comply with Rule 1.11(c) so that if the inquirer knows of unfavorable employment reviews or non-public job discipline imposed on a police officer who is a witness in a traffic court matter, if that information "could be used to the material disadvantage" of that person in plea negotiations or impeachment, then the inquirer may not represent a traffic court defendant in that matter.)

10