## DECLARATION OF ELIZABETH PAIGE BOGGS

I, Elizabeth Paige Boggs, declare as follows:

1. I am over eighteen years old, of sound mind, and under no legal disability.

2. I am a Member of Motley Rice, LLC.

3. I represented the City of Chicago and the District of Columbia in separate investigations involving OptumRx, Inc. ("OptumRx"), and I am currently representing the Government of Puerto Rico and the State of Hawai'i in separate litigation against OptumRx and Express Scripts.

4. I submit this declaration in connection with Plaintiffs' Opposition to OptumRx's Motion to Disqualify Motley Rice.

5. I have personal knowledge of the facts set forth in this declaration, and if called to testify in person about those facts, could competently do so under oath.

**City of Chicago's Investigation**

6. The City of Chicago ("Chicago") issued a subpoena to OptumRx on November 8, 2018 in connection with an investigation relating to "copay clawbacks," which refers to a practice where consumers are charged copayments that exceed the pharmacy's usual and customary price (*i.e.*, the "cash price") for a prescription and/or the amount the pharmacy receives for filling the prescription, and "gag clauses," which prohibit pharmacies from, among other things, telling consumers about the existence of copay clawbacks and/or that consumers may save money by paying for a prescription drug with cash rather than utilizing their insurance. *See* ECF No. 5276-6 (Chicago's subpoena to OptumRx) at 1, 12. Chicago's subpoena sought documents and information regarding copay clawbacks and gag clauses. *See id.* at 9-11. The requests contained in the subpoena were "limited to documents and information relating to transactions involving

Chicago consumers, including but not limited to documents and information that may be national or regional in scope that apply to Chicago consumers, among other consumers." *See id*. at 9. The subpoena did not seek any information regarding prescription drug rebates or formularies. *See id*.

7. OptumRx produced claims data for prescriptions filled by Chicago residents. The Chicago-specific data primarily included the amount of the copayment the pharmacy collected from each consumer for each prescription, the pharmacy's usual and customary price for each prescription, and the amount that OptumRx reimbursed the pharmacy for each prescription. In addition to the Chicago-specific data, OptumRx produced five documents. OptumRx only designated one document—a template pharmacy network agreement—as confidential.

8. Pursuant to the terms of the confidentiality agreement between Chicago and OptumRx, *see* ECF No. 5276-17 (confidentiality agreement between Chicago and OptumRx), I only used the confidential documents that OptumRx produced to Chicago in furtherance of Chicago's investigation. I did not use confidential documents for any other purpose or on behalf of any other client. Further, I have not witnessed, nor do I otherwise have knowledge of anyone at Motley Rice using OptumRx's documents for any purpose not connected with the City of Chicago's investigation.

**District of Columbia's Investigation**

9. The District of Columbia (the "District") issued a subpoena to OptumRx on December 28, 2020 to investigate whether OptumRx may have violated one or more of the provisions of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*, in connection with the negotiation of prescription drug rebates and the administration of prescription drug benefits. *See* ECF No. 5276-11 (the District's subpoena to OptumRx) at 1, 13. The District's subpoena sought documents and information regarding prescription drug rebates

and other payments that OptumRx receives from prescription drug manufacturers and OptumRx's practices concerning formulary coverage. *See id*. at 9-11. The requests contained in the subpoena were "limited to documents and information relating to the District of Columbia, including, but not limited to, documents and information that may be national or regional in scope that apply to the District of Columba." *See id*. at 9. The subpoena did not reference any opioid drug by name or opioids generally. *See id*. at 9-11.

10. I no longer have access to the documents OptumRx produced in response to the District's subpoena. The documents were destroyed on August 4, 2022. A true and correct copy of the certificate of destruction is attached as Exhibit A. Nonetheless, to the best of my recollection, OptumRx only agreed to produce documents and information regarding insulin products, plus a District-specific ranked list, by rebate value over time for prescriptions filled at pharmacies in the District of Columbia, of certain drug manufacturers that OptumRx contracts with that Allison J. Caplis identifies in her declaration. OptumRx produced rebate-related data and consumer transaction level data in connection with prescriptions for insulin products filled at pharmacies in the District of Columbia. In addition to this District-specific data, OptumRx also produced documents concerning insulin pricing that it previously produced to the Minnesota Attorney General's Office. To the best of my recollection, OptumRx represented that the documents previously produced to the Minnesota Attorney General's Office were originally collected in or around 2017 for an antitrust investigation conducted by multiple State Attorneys General.

11. In connection with its investigation into the rising cost of insulin products, the United States Senate Finance Committee made public documents and information concerning rebates and formulary coverage for insulin products that are similar to the type of documents and

information that OptumRx produced to the District in its investigation. *See* United States Senate Finance Committee, *Insulin: Examining the Factors Driving the Rising Cost of a Century Old Drug* (Jan. 14, 2021), https://www.finance.senate.gov/imo/media/doc/Grassley-Wyden%20Insulin%20Report%20(FINAL%201).pdf. A true and correct copy of the Senate Finance Committee's report detailing its investigation is attached as Exhibit B.[1] For example, the Senate Finance Committee's report includes a summary of the operations of OptumRx's Formulary Management Committee ("FMC") and excerpts from OptumRx's internal presentation that demonstrates how the FMC considers the financial impact to OptumRx's business, including one presentation from April 26, 2018 that contained a financial evaluation of different insulin products and the annual impact on rebates by moving one insulin product to a different formulary tier. *See* Ex. B at 36-37. The report also stated that an insulin manufacturer offered OptumRx rebates up to 79.75% for one insulin product for preferred formulary placement on their client's commercial formulary, compared to rebates of just 42% in 2015. *See id*. at 67. The Senate Finance Committee's report also contains an appendix with documents OptumRx produced during the investigation, including rebate agreements between OptumRx and Sanofi-Aventis (an insulin manufacturer). *See id*. at 220-374.

12. In addition, a significant amount of information regarding PBMs' agreements with manufacturers is already known throughout the industry and in the public domain. For example, the Board of County Commissioners of Washington County, Maryland recently filed a complaint against CaremarkPCS Health, L.L.C., Express Scripts, OptumRx, and other defendants that

---

[1] I omitted Sections 1-4 and 6 of the Appendix which includes documents produced by Eli Lilly, Sanofi, Novo Nordisk, CVS Caremark, and Express Scripts.

include entire sections on PBMs' agreements with manufacturers. A true and correct copy of the complaint is attached as Exhibit C.

13. Pursuant to the terms of the confidentiality agreement between the District and OptumRx, *see* ECF No. 5276-12 (confidentiality agreement between the District and OptumRx), the District was permitted to share documents with other law enforcement agencies that agreed in writing to be bound by and comply with the confidentiality agreement. *See id*. ¶ 4(c). I only used the confidential documents that OptumRx produced to the District in connection with the District's investigation. I did not use confidential documents for any other purpose or on behalf of any other client. Further, I have not witnessed nor do I otherwise have knowledge of anyone at Motley Rice using OptumRx's confidential documents for any other purpose or on behalf of any other client.

**State of Hawaii's Litigation**

14. The State of Hawaiʻi ("Hawaiʻi") issued a subpoena to OptumRx on October 15, 2021. *See* ECF No. 5276-6 at 1-2. Hawaii's subpoena sought documents and information regarding prescription drug rebates and other payments that OptumRx receives from prescription drug manufacturers and OptumRx's practices concerning formulary coverage. *See id*. at 11-15. The requests contained in the subpoena were "limited to documents and information relating to Hawaiʻi, including, but not limited to, documents and information that may be national or regional in scope that apply to Hawaiʻi." *See id*. at 10. The subpoena did not reference any opioid drug by name or opioids generally. *See id*. at 11-15.

15. Although Hawaii's subpoena was not limited to insulin products, OptumRx only agreed to produce documents and information regarding insulin products. OptumRx produced rebate-related data and consumer transaction level data in connection with prescriptions for insulin products filled at pharmacies in the State of Hawaiʻi. In addition to this Hawaii-specific data,

5

OptumRx also produced documents concerning insulin pricing that it previously produced to the Minnesota Attorney General's Office (and the District of Columbia). This production includes: rebate agreements with insulin manufacturers (Novo Nordisk, Inc., Sanofi-Aventis U.S. LLC, and Eli Lilly and Company); OptumRx's prescription drug formularies (which are publicly available at https://www.optum.com/business/hcp-resources/formulary-updates.html); template communications to consumers (*e.g.*, letters regarding changes to OptumRx's formulary); and internal emails and presentations.

16. On October 4, 2023, Hawaiʻi filed a lawsuit against OptumRx and two other pharmacy benefit managers for engaging in unfair and deceptive acts and practices and unfair methods of competition by artificially inflating drug prices. On November 6, 2023, Hawaiʻi filed its First Amended Complaint. A true and correct copy of Hawaii's First Amended Complaint is attached hereto as Exhibit D.

17. OptumRx has not yet produced discovery in Hawaii's action. Thus, Hawaiʻi only has the documents that OptumRx produced in Hawaii's pre-litigation investigation.

18. Pursuant to the terms of the confidentiality agreement between Hawaiʻi and OptumRx, *see* ECF No. 5276-7 (confidentiality agreement between Hawaiʻi and OptumRx), the confidentiality agreement allows Hawaiʻi to share documents with other law enforcement agencies that agree in writing to be bound and comply with the confidentiality agreement. I only used the confidential documents that OptumRx produced to Hawaiʻi in connection with Hawaii's investigation and the litigation that arose from that investigation. I did not use confidential documents for any other purpose or on behalf of any other client. Further, I have not witnessed nor do I otherwise have knowledge of anyone at Motley Rice using OptumRx's confidential documents for any other purpose or on behalf of any other client.

**Government of Puerto Rico's Litigation**

19. The Government of Puerto Rico ("Puerto Rico") filed a lawsuit against OptumRx in addition to two other pharmacy benefit managers and three insulin manufacturers on January 17, 2023 to redress Defendants' misleading, deceptive and unlawful activity concerning their marketing and sale of insulin products to the residents of Puerto Rico, including, but not limited to artificially inflating the cost of insulin products. On January 24, 2023, Puerto Rico filed its First Amended Complaint. A true and correct copy of Puerto Rico's First Amended Complaint is attached hereto as Exhibit E.

20. Puerto Rico did not serve any pre-litigation subpoena on OptumRx and OptumRx has not yet produced any documents in discovery. Thus, Puerto Rico does not have any of OptumRx's confidential documents.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 5, 2024

*Elizabeth Paige Boggs*
Elizabeth Paige Boggs