UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *PBM Bellwether Cases* | MDL 2804 <br><br> Case No. 1:17-md-2804 <br><br> Judge Dan Aaron Polster <br><br> <u>**ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND AND SUPPLEMENT COMPLAINTS**</u> |

On October 27, 2023, the Court identified four cases to be tried as PBM Bellwether Cases. *See* docket no. 5231. On December 15, 2023, Plaintiffs moved to amend the operative complaints in these PBM Bellwether Cases to: (1) add various allegations, claims, and related PBM family defendants; and (2) streamline and simplify the litigation of the four cases by making the complaints substantially identical. *See* Motion at 3, 5, docket no. 5277. The PBMs opposed any amendment of Plaintiffs' complaints. *See* docket no. 5289. Plaintiffs filed a reply. *See* docket no. 5301. On February 12, 2024, the Court held a hearing on the motion.

Having carefully considered the parties' written and oral arguments, and for the reasons stated below, the Court **GRANTS** Plaintiffs' Motion for Leave to Amend and Supplement Complaints in the PBM Bellwether Actions.

**Timeliness**

The PBMs assert Plaintiffs' motion for leave to amend the PBM Bellwether complaints is untimely. But their assertion ignores the history of this MDL and the Court's repeated explanation that the Sixth Circuit has already endorsed the Court's procedural mechanism of allowing a

plaintiff to amend its complaint if and when its case is selected as a bellwether.[1] *See* CMO-1, docket no. 232 (April 11, 2018); Order Clarifying CMO-1, docket no. 371 (May 3, 2018); Order Denying Meijer's Motion to Strike, Case no. 18-op-46326, docket no. 61 (August 9, 2021); *In re Natl. Prescription Opiate Litig.*, No. 21-4051, 2022 WL 20701236 (6th Cir. Nov. 10, 2022) ("*Meijer*"), docket no. 4747; August 30, 2023 Status Conf. Tr., docket no. 5168; December 1, 2023 Status Conf. Tr., docket no. 5265.

Specifically: Early in this MDL, the Court put a moratorium on substantive filings. *See* docket no. 70 at 2; docket no. 4 at 4; docket no. 130. This moratorium foreclosed any plaintiff, including the four PBM Bellwether Plaintiffs here, from filing any substantive motion—including amending or seeking leave to amend their complaints.

In 2018, after the Court made the DEA's ARCOS data available to MDL plaintiffs, the Court lifted its moratorium for the sole purpose of allowing MDL plaintiffs to amend their complaints based upon the ARCOS data. *See* docket no. 1106. Those amendments were permitted pursuant to the Court's Short Form Complaint Order. Docket no. 1282. Although the Short Form Complaint Order permitted plaintiffs to amend their complaints "for matters both relying on and beyond the ARCOS data," it recognized that the short form complaints were intended to be a one-size-fits-all solution to "streamline the amendment process, reduce the burden on the parties and the Court, and increase judicial efficiency." *Id.* at 3. The Court expressly provided that, "should any of those cases subsequently be set for trial, purported deficiencies with the complaints can be

---

[1] The only deviation from this Court's prior amendment procedures has been in the present PBM Bellwether Cases. Here, in order to permit the PBM Defendants a procedural mechanism to put their objections in the record, the Court directed Plaintiffs to move for leave to amend their complaints rather than simply file amendments, as previously allowed. In all other bellwether cases, additional leave to amend beyond that previously granted by the Court's prior CMOs, was not required.

addressed at that time by subsequent Court order." *Id.* At **all** other times, no MDL plaintiff could amend its complaint without first being selected as a bellwether.[2]

Because the PBM Bellwether Plaintiffs had no earlier opportunity to amend their PBM Bellwether complaints with PBM-specific claims or to add PBM-specific entities, their motion seeking leave to amend the operative PBM Bellwether Complaints is not untimely. To the contrary, the Court specifically provided early in this MDL that amendment would be allowed if the cases were chosen as bellwethers. The Sixth Circuit explicitly rejected a challenge to that mechanism. *See Meijer*, 2022 WL 20701236 at *1 (holding that, because this "district court's scheduling order explicitly provided permission for plaintiffs to amend their complaint if their case was selected as a bellwether," the bellwether plaintiffs "did not need the district court's leave to amend").

**Manageable Trial**

Next, the PBMs assert the amended complaints would make the bellwether cases unworkable and would unduly prejudice the PBM Defendants. This misconstrues a concern the Court has itself voiced several times: that *trials* with many defendants, many theories of liability, and many causes of action will be too long, too complicated, and unintelligible to a jury. *See, e.g.*, December 1, 2023 Status Conf. Tr. at 10:1–6 ("I'm concerned that if the plaintiffs add [dispensing] claims, . . . the *trial* is going to be unworkable or unmanageable.") (emphasis added).

Virtually every case in this MDL contains at least a score of defendants and nearly as many alleged causes of actions. Despite the inherent complexity of these cases, the Court has always managed successfully to tailor representative, meaningful, and triable bellwether cases using its

---

[2] As an example, Webb County, now the Plaintiff in Track 15, moved for leave to amend its complaint ***prior*** to being selected as a bellwether. *See* docket no. 4896. That motion was denied. *See* March 20, 2023 non-document Order.

severance authority under the Federal Rules. In Track Three for example—a case the undersigned tried to a jury verdict—the Court severed all non-pharmacy defendants and non-nuisance claims before trial. *See* docket no. 3315. Similarly, in Track Two—the Cabell County and Huntington, West Virginia case, tried by Judge Faber in the Southern District of West Virginia—this Court used severance to tailor the case for trial, so that the transferor court only tried claims against distributor defendants on remand. *See* docket no. 2990.

When the JPML remanded Track Two back to West Virginia, structured as it was by this Court, it implicitly endorsed this Court's authority to strategically tailor triable cases. *See* docket no. 3079. The MDL statute itself recognizes it may be appropriate to tailor cases to address specific claims. *See* 28 U.S.C. § 1407(a) ("Each action so transferred [to an MDL court] shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated: Provided, however, that the panel may separate any claim, cross-claim, counter-claim, or third-party claim *and remand any of such claims **before** the remainder of the action is remanded.*") (emphasis added).

Even more directly analogous to the present situation are the pharmacy bellwether cases. In Tracks 7–11, before the cases were even identified, the Court directed the parties to select bellwether cases "against pharmacies only" that would "have only one cause of action, presumably either public nuisance or RICO." *See* docket no. 3649 at 1. Upon amending the pharmacy bellwether complaints, the plaintiffs simultaneously moved to sever and stay non-pharmacy defendants and non-nuisance claims. This Court granted plaintiffs' motion to sever over the pharmacy defendants' objection. *See* docket no. 3750.

Accordingly, regardless of which allegations, claims, or defendants the PBM Bellwether Plaintiffs seek to add, and regardless of which or claims, allegations, or third-party defendants the

4

PBM Defendants may themselves seek to implead, this Court can still create a manageable, workable trial. *See* Fed. R. Civ. P. 21 ("The court may at any time, on just terms, add or drop a party. The court may also sever any claims against a party."); Fed. R. Civ. P. 42 ("The court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). Allowing plaintiffs to amend their complaints does not automatically make the bellwether cases irretrievably unworkable, nor cause undue prejudice to the PBM Defendants.

**Burden**

In the pharmacy bellwether cases, the Court recognized the plaintiffs "already have leave to amend their complaints" by virtue of their selection as bellwethers. *See* docket no. 3688 (citing docket no. 371, which recognized that, "if a case is later designated as a bellwether . . . , a separate CMO will be entered that will provide further opportunity to amend."). In Track Seven, plaintiffs amended their complaint to add Meijer as a defendant. Meijer moved to strike those amendments, and when that motion was denied, *see* case no. 18-op-46326, docket no. 61, Meijer sought a writ of mandamus from the Sixth Circuit. In denying mandamus, the Sixth Circuit held that this Court's "scheduling order did not clearly violate Rule 16 because it provided some limit (when a case was selected as a bellwether)." *Meijer*, 2022 WL 20701236, at *1.

The Sixth Circuit noted that "Meijer was added to this case before discovery ever started," and "the only prejudice Meijer identifies is its litigation costs." *Id.* The same is true here. The only prejudice the PBMs note is the expenditure of "significant additional resources to complete discovery and prepare for trial." Response at 8. It is true, of course, that litigation expenditures are a burden on litigants, but the PBMs do not and cannot explain how a related entity being named as a new defendant prior to the commencement of discovery is any more burdensome than it being

5

named in an original complaint. There is no more burden on the PBM Defendants in these bellwether cases than on any other defendant named in any other opioid case.

The PBMs attempt to distinguish these bellwether cases from the *Meijer* decision by asserting that, while Meijer had been in the MDL since at least 2019, many of the PBM subsidiary entities Plaintiffs now seek to add have not been named in any MDL case at all. This distinction, however, cuts *against* the PBMs. Meijer was a completely different entity from all other defendants that were in Track Seven prior to amendment. Here, the PBM subsidiary entities are functional parts of the PBMs' broader umbrella of operations. Furthermore, the Court has already stated that ***some discovery*** would almost certainly be permitted into these related PBM family entities—regardless of whether amendment was permitted—to allow Plaintiffs, and a jury, to understand how the PBMs work.[3] The case for adding these parties to the bellwether cases is much stronger than it was for Meijer, and the litigation burden—which as stated above, was explicitly permitted by the Sixth Circuit—largely exists whether or not the amendments are allowed.

The Court realizes, of course, that in allowing these amendments, it is likely the additional defendants and causes of action may require alterations to the current CMO and/or extensions of time. If that happens, Plaintiffs will have to accept these delays as the price for bringing a more complicated case than what they originally filed.

---

[3] *See* December 1, 2023 Status Conf. Tr. at 13:8–13 ("even if we don't have formal dispensing claims in the case, that doesn't mean the plaintiffs can't get discovery as to what the PBMs did as mail-order pharmacies, and what they may have learned while they were doing it, and whether that knowledge bears on other claims."); *id.* at 11:11–16 ("there would be an ability to conduct discovery pertaining to dispensing practices—with respect to knowledge learned"); August 30, 2023 Status Conf. Tr. at 46:8–9 ("the objective is to learn something from these bellwethers, the discovery process"); *id.* at 41:2 ("in the course of the discovery you get the facts").

**Joint Panel on Multidistrict Litigation**

Finally, the PBMs assert that Plaintiffs are trying to work an end run around the JPML's order closing the MDL to new cases. The JPML concluded that "inclusion of . . . any future actions in MDL No. 2804 is no longer necessary to achieve the just and efficient conduct of the litigation." *In re: National Prescription Opiate Litig.*, MDL No. 2804, docket no. 9586 at 1 (J.P.M.L. Apr. 8, 2022) (citing 28 U.S.C. § 1407(a)). Although some new claims and defendants are being added by amendment to Plaintiffs' complaints, that does not make these new MDL cases. The JPML plainly believed this Court could continue to achieve the just and efficient conduct of the litigation with the cases it already has, using all of the tools available under the Federal Rules of Civil Procedure. That is precisely what this Court is now doing.

**Conclusion**

Accordingly, Plaintiffs' motion for leave to amend the PBM Bellwether complaints is **GRANTED**. At some point during the preparation of these PBM Bellwether cases, they will need to be tailored into a triable case that will be intelligible to a jury. Any party may suggest severance of claims or parties, or other mechanisms, to achieve this result. In the meantime, however, the Court cannot deprive these Plaintiffs of stating potentially viable claims.

        **IT IS SO ORDERED.**

                                         /s/ Dan Aaron Polster    February 20, 2024
                                         **DAN AARON POLSTER**
                                         **UNITED STATES DISTRICT JUDGE**