I, Stephen J. Kane, declare as follows:

1.      I am over eighteen years old, of sound mind, and under no legal disability.

2.      I am the Deputy Corporation Counsel for the Affirmative Litigation Division in the City of Chicago Department of Law.  In this capacity, I have acquired and retain direct personal knowledge of the matters described herein.

3.      In my experience, it is the City's policy and practice to retain and exercise control over civil investigations and litigation assisted by outside counsel to ensure that the interests of the City and its residents were advanced and protected.

4.      Attached as Exhibit A is a copy of the September 6, 2018 contingency fee retainer agreement between the City and Motley Rice for the copay clawbacks and gag clauses investigation (the "Copay Clawbacks Retainer").

5.      The Copay Clawbacks Retainer, on page 1, identifies Motley Rice as being retained as "Special Assistant Corporation Counsel for the City of Chicago."  This designation did not, however, bestow any independent governmental authority upon Motley Rice.  Instead, the Copay Clawbacks Retainer vested control over the investigation and any litigation or resolution with the City by providing that:

> The City will maintain control of the investigation and any litigation and will make all key decisions, including whether and how to proceed with the investigation and any litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation.  Motley Rice will be responsible for carrying out the litigation and for making day-to-day decisions regarding court filings, discovery, court appearances, trial, and any appeal.  Motley Rice will provide regular reports to the City on the status of and any significant developments in the Matter.  The City retains veto power over any decisions made by Motley Rice.

> The City must approve any settlements and must be apprised of any settlement offers made by defendants.

Copay Clawbacks Retainer, ¶¶ 16-17.

6.     Consistent with the Copay Clawbacks Retainer, for the period I became involved in the investigation of copay clawbacks and gag clauses by Optum and other PBMs starting in roughly May 2019, the City made all key decisions. This includes, for example, the City's decision to engage in mediation with OptumRx and ultimately to resolve the matter without litigation.

7.     Motley Rice has no authority to issue pre-investigation subpoenas for the City of Chicago without the City's approval.

8.     The City also retained Motley Rice to represent it in litigation regarding the marketing and distribution of prescription opioid drugs.  Attached as Exhibit B is a copy of the September 13, 2018 contingency fee retainer agreement between the City and Motley Rice for the opioid litigation (the "Opioid Retainer").

9.     The Opioid Retainer likewise vested control over the opioid litigation with the City by providing that:

> The City will maintain control of the litigation and will make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation.  The Law Firms will be responsible for carrying out the litigation and for making day-to-day decisions regarding court filings, discovery, court appearances, trial, and any appeal.  Motley Rice will provide regular reports to the City on the status of and any significant developments in the Matter.
>
> The City must approve any settlements and must be apprised of any settlement offers made by defendants.

Opioid Retainer, ¶¶ 12-13.

10.     Consistent with the Opioid Retainer, for the period since I became responsible for the opioid litigation, the City made all key decisions.

11.     Before the City retained Motley Rice to represent it in opioid litigation, the City had retained the private law firm of Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein"), with which current Motley Rice attorney Linda Singer was then employed, to represent it in a civil

investigation and potential litigation of claims regarding the marketing of opioids. Cohen Milstein's representation of the City in the opioid investigation and litigation was established and, during my involvement, carried out pursuant to similar terms as governed the Motley Rice representations. Attached as Exhibit C is a copy of the April 8, 2013 contingency fee retainer agreement between the City and Cohen Milstein for the opioid investigation and litigation (the "Cohen Milstein Opioid Retainer").

12.     The Cohen Milstein Opioid Retainer, like the Motley Rice Copay Clawbacks Retainer, on page 1 identifies Cohen Milstein as being retained as "Special Assistant Corporation Counsel for the City of Chicago." This designation did not, however, bestow any independent governmental authority upon Cohen Milstein. Instead, the Cohen Milstein Opioid Retainer vested control over the investigation and any litigation or resolution with the City by providing that:

> The City will maintain control of the investigation and litigation and will make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation. Cohen Milstein will be responsible for carrying out the investigation and litigation and for making day-to-day decisions regarding court filings, subpoenae and investigative demands, court appearances, discovery matters, trial, and any appeal. Cohen Milstein will provide regular reports to the City on the status of and any significant developments in the matter.

> The City must approve any settlements and must be apprised of any settlement offers made by defendants.

Cohen Milstein Opioid Retainer, ¶¶ 11-12.

13.     Motley Rice is not a City employee or official.

14.     Based on my experience, the City could not have conducted its opioid investigation and litigation without retaining a highly qualified private law firm to assist it. The City Law Department does not have either the personnel or other resources required for these undertakings and could not have obtained the relief that the investigation, litigation, and settlement agreements

have brought about.  The City's ability to retain highly qualified private law firms like those that have represented it in the opioid investigation and litigation is critical to protecting and restoring the public health and safety in the City of Chicago.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 15, 2024

Stephen J. Kane

4

# EXHIBIT A



DEPARTMENT OF LAW

CITY OF CHICAGO

September 6, 2018

Mimi Liu
Linda Singer
Motley Rice LLC
401 9th Street NW, Suite 1001
Washington, DC 20004

Dear Ms. Liu and Ms. Singer,

The City of Chicago ("City"), by the undersigned, has retained Motley Rice LLC ("Motley Rice") as Special Assistant Corporation Counsel for the City of Chicago to represent it in the investigation and litigation of potential claims regarding unfair and/or deceptive business practices by pharmacy benefit managers ("Matter"). The representation is on the terms and conditions below.

<u>Fees and Costs:</u>

1. Motley Rice will be paid on a contingent fee basis, only upon a recovery in the Matter, as follows:

   - 15% of the net recovery if the Matter is resolved pre complaint;
   - 20% of the net recovery if the Matter is resolved after the filing of a complaint but before a decision on summary judgment; and
   - 25% of the net recovery if the Matter is resolved after a decision on summary judgment.

2. The net recovery is any settlement or judgment amount, not including any court-awarded attorneys' fees and costs, minus the actual costs incurred by Motley Rice.

3. If the City settles the Matter for an amount that would yield a contingent fee that is less than Motley Rice's fees and costs, or if the City otherwise deems appropriate, the City may, but is not required to, arrange for defendant(s) to pay all or a portion of Motley Rice's usual and customary fees and costs, even if this payment would exceed the contingent fee to which Motley Rice is entitled under paragraph 1.

4. Any payment of attorneys' fees will be made as Motley Rice directs within ten (10) business days of receipt by the City of any amounts recovered.

5. Any court-awarded attorneys' fees will be shared equally between the City, on one hand, and Motley Rice, on the other hand unless Motley Rice's contingent fee is less than Motley Rice's usual and customary fees and costs, in which case Motley Rice will be entitled to any court-awarded attorneys' fees until its usual and customary fees and costs are met; any remainder will then be shared equally.

6. The $295 ceiling for hourly fees limits what the City may pay to Motley Rice but does not constitute a determination of a reasonable fee for purposes of a fee petition or payment of attorneys' fees by any defendants. Likewise, the Outside Counsel Guidelines limits what costs the City may be required to reimburse Motley Rice from any recovery but does not limit a determination of reasonable costs for purposes of a fee petition or payment of costs by any defendants.

7. For purposes of any payment of fees in excess of the contingent fee, Motley Rice will maintain contemporaneous time records and will also document its costs.

8. Motley Rice will advance the costs of the investigation and any litigation. The City agrees to reimburse Motley Rice for all reasonable costs out of any recovery before the contingent fee applies so long as those costs comply with the City's Outside Counsel Guidelines. In no event will the combination of the contingent fee and any attorneys' fees award paid to Motley Rice exceed 35% any total net recovery by the City in this action.

9. The City must approve any cost of $25,000 or more in advance.

10. Motley Rice will have no claim against the City for its attorney's fees or costs except as otherwise laid out in this retainer, even if there is no recovery or the recovery is not sufficient to cover its attorney's fees or costs.

Staffing

11. Motley Rice intends to assign Mimi Liu and Paige Boggs to the Matter. Motley Rice will inform the City if additional lawyers or other staff from Motley Rice are added.

Authority and Responsibilities

12. Motley Rice is responsible for providing all legal services required in litigating this matter, including all associated support services.

13. Motley Rice is authorized to retain or associate experts, investigators, and technical and legal assistants, and such additional attorneys as may be needed for the Matter. The costs related to the employment and utilization of third parties will be reimbursed in the manner set forth above. Motley Rice shall provide the City with advance notice and shall receive written approval from the City before engaging any other attorneys to represent the City in the Matter.

14. The City is responsible for providing access to the personnel, information, and documents required to investigate, assess, and prosecute its claims (including any personnel, information, and documents required by court order in discovery). Motley Rice will vigorously oppose the production of any irrelevant information and seek protective orders that limit any defendant's access to evidence that contains confidential information (including attorney-client communications).

15. All non-public information, documents, and other materials furnished by the City to Motley Rice or other such non-public information, documents, or other materials to which Motley Rice has access during its performance pursuant to this retention agreement are deemed confidential and shall remain the property of the City. Motley Rice shall limit access to the confidential information and documents obtained in the course of the Matter from the City or any other source to Mimi Liu and Paige Boggs (and persons retained by Motley Rice pursuant to paragraph 9 above). Motley Rice shall use any confidential information and documents obtained in the course of the Matter only in connection with its representation of the City, and not for any other purpose. (However, if information and documents are produced subject to the terms of a separate confidentiality order or agreement, the terms of that order or agreement shall control.)

16. The City will maintain control of the investigation and any litigation and will make all key decisions, including whether and how to proceed with the investigation and any litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation. Motley Rice will be responsible for carrying out the litigation and for making day-to-day decisions regarding court filings, discovery, court appearances, trial, and any appeal. Motley Rice will provide regular reports to the City on the status of and any significant developments in the Matter. The City retains veto power over any decisions made by Motley Rice.

17. The City must approve any settlements and must be apprised of any settlement offers made by defendants.

18. The City will designate a point of contact who will supervise the litigation and who will be available directly to Motley Rice in this Matter as needed.

Termination

19. When the initial investigation has been completed, the City will determine whether to move forward to litigation. If the City reasonably and in good faith decides that the evidence or size of the potential claims does not make it appropriate to proceed, or that proceeding is not in the public interest, the City will terminate this retainer. In that event, the City will have no obligation to pay Motley Rice's attorney's fees or costs.

20. If the City chooses to move forward, Motley Rice will decide whether it wishes to represent the City in litigation. If Motley Rice decides not to proceed, it will provide all documents and work product related to the investigation to the City, which will be entitled to seek other counsel. If the City litigates this matter with other counsel, Motley Rice will be entitled to recover its reasonable attorney's fees and costs out of any recovery, but attorney's fees shall not exceed the City's guidelines of $295 per hour and costs shall be consistent with the City's Outside Counsel Guidelines. (The $295 ceiling for hourly fees limits what the City may pay to Motley Rice but does not constitute a determination of a reasonable fee for purposes of a fee petition or payment of attorneys' fees by any defendants.)

21. The City has the right to terminate Motley Rice's services upon written notice at any time. If the City terminates its relationship with Motley Rice without good cause (good cause being based on the City's determination that (1) the size or basis for the case is insufficient, (2) the public interest would not be best served by bringing the case, or (3) that Motley Rice has not met its obligations under the retainer or otherwise performed to the City's satisfaction), the City will be responsible for Motley Rice's reasonable attorney's fees and costs, but attorneys' fees shall not exceed the City's guidelines of $295 per hour and costs shall be consistent with the City's Outside Counsel Guidelines.

22. If Motley Rice fails to meet its obligations under this retainer or otherwise perform to the City's satisfaction, it may be terminated for good cause, and the City will have no obligations to pay its attorneys' fees or costs or any portion of a recovery in this matter, even if the City proceeds thereafter to litigate this matter using in-house or other counsel.

23. Following any termination of this retainer, any otherwise non-public information the City has supplied to Motley Rice shall be kept confidential in accordance with applicable rules of professional responsibility or returned to the City.

Conflicts

24. Motley Rice has conducted a conflicts check and has determined that there exist no actual or potential conflicts related to its representation of the City in the Matter.

4

<u>Binding Nature of Agreement; Choice of Law</u>

25. This retention agreement is meant to bind and benefit the heirs and successors of each of the parties to the agreement.  This retention agreement shall be construed in accordance with the laws of the State of Illinois, without regarding to governing conflicts of laws.

Sincerely,

Edward N. Siskel
Corporation Counsel

Accepted by: _____
Mimi Liu
Motley Rice, LLC

Date:   9 / 6 / 18

# **<u>EXHIBIT B</u>**



### DEPARTMENT OF LAW
#### CITY OF CHICAGO

September 13, 2018

Linda Singer
Motley Rice LLC
401 9th St. NW, Suite 1001
Washington, DC 20004

Betsy A. Miller
Victoria S. Nugent
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005

Dear Counsel:

The City of Chicago ("City"), by the undersigned, enters the following retainer with Motley Rice LLC ("Motley Rice"), and memorializes understandings going forward with Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein") and Motley Rice, in light of the lateral departure of Linda Singer and others from Cohen Milstein to Motley Rice in February 2017. The City also acknowledges the role of Wexler Wallace LLP ("Wexler Wallace"), which has and will continue to serve as local outside counsel in the matter. The firms are collectively referred to as "Law Firms."

This retainer supersedes and replaces retainers entered into with Cohen Milstein on April 8, 2013 and September 4, 2013 relating to litigation regarding the marketing and distribution of opioid drugs ("Matter").

<u>Fees and Expenses:</u>

1.  Motley Rice will be paid on a contingent fee basis, only upon a recovery in the Opioid Matter, as follows:

    *   22% of the net recovery if the Matter is resolved pre complaint;
    *   26% of the net recovery if the Matter is resolved after a motion to dismiss but before summary judgment; and
    *   30% of the net recovery if the Matter is resolved after summary judgment.

2. The net recovery is any settlement or judgment amount, not including any award of attorneys' fees and costs, minus the actual costs incurred by the Firms.

3. Any court-awarded attorneys' fees will be shared equally between the City, on one hand, and the Law Firms, on the other hand.

4. Up to the time of the lateral departure from Cohen Milstein of Linda Singer and others in February 2017, Cohen Milstein had advanced reasonable costs and expenses of the litigation, and going forward from the effective date of this retainer, Motley Rice will advance all reasonable costs and expenses of the litigation. The City agrees to reimburse the Law Firms for expenses out of any recovery before the contingent fee applies. Reimbursement of expenses is not considered part of the contingent fee.

5. The City must approve any expense of $25,000 or more in advance.

6. The Law Firms will have no claim against Chicago for its time or expenses except as otherwise laid out in this retainer, even if there is no recovery or the recovery is not sufficient to cover its time or expenses.

7. The Law Firms will have no claim against Chicago for the allocation of any contingency fee, court-awarded attorney's fees, or expenses advanced by the Law Firms in the event of any dispute between or among the Law Firms with respect to any such allocation. Any disputes among the Law Firms regarding any allocation of any contingency fee, court-awarded attorneys' fees, or reimbursement of advanced expenses are strictly among the Law Firms, and shall not involve the City. The Firms shall hold the City harmless in the event of any dispute, disagreement, or litigation that arises between or among the Law Firms with respect to the allocation of any contingency fee, court-awarded attorneys' fees, or expenses advanced by the Law Firms in connection with the Opioid matter. In the event of any recovery in the Opioids matter, the City shall receive its share of the net recovery first, prior to payment to the Law Firms of any contingency fee, court-awarded attorneys' fees, or reimbursement of advanced expenses, and the City's receipt of such recovery shall not be delayed by any dispute between or among Motley Rice, Cohen Milstein, or Wexler Wallace as to the allocation of any contingency fee, court-awarded attorneys' fees, or reimbursement of advanced expenses among the firms.

Authority and Responsibilities

8. Motley Rice, with the assistance of Wexler Wallace and Cohen Milstein[1], as provided below, is responsible for providing all legal services required in litigating this matter, including all associated support services.

9. Motley Rice is authorized to retain or associate experts, investigators, and technical and legal assistants, and such additional counsel from the Law Firms as may be needed for the Matter. The expense related to the employment and utilization of third parties will be

---

[1] Cohen Milstein assisted in the Opioid representation until Chicago was transferred into the multidistrict litigation (*In re National Prescription Opiate Litigation*).

reimbursed in the manner set forth above and subject to approval by the City per paragraphs 5 and 6 above.

10. The City is responsible for providing access to the personnel, information, and documents required to assess and prosecute its claims (including any personnel, information, and documents required by court order or in discovery).

11. The Law Firms shall disclose and use confidential information obtained in the Matter only as permitted by protective orders in the Matter.  The Law Firms shall use any confidential information obtained in the course of the Matter only in connection with its representation of the City, and not for any non-governmental purpose.

12. The City will maintain control of the litigation and will make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation.   The Law Firms will be responsible for carrying out the litigation and for making day-to-day decisions regarding court filings, discovery, court appearances, trial, and any appeal. Motley Rice will provide regular reports to the City on the status of and any significant developments in the Matter.

13. The City must approve any settlements and must be apprised of any settlement offers made by defendants.

14. The City will designate a point of contact who will supervise the litigation and who will be available directly to other parties in this Matter as needed.

15. Motley Rice will serve as lead outside counsel in the Matter and will be responsible for communications with the City.

16. The City has retained Motley Rice as lead counsel in the opioid manufacturers lawsuit.  The contingency fee provided under this agreement shall be split proportionally between Motley Rice and Cohen Milstein, based on lodestar contributed by each firm in connection with the City's investigation and litigation against the opioid manufacturers, from the original date of Cohen Milstein's retention in 2013 until the conclusion of the matter.

Termination

17. If the City terminates its relationship with any of the Law Firms without good cause (good cause being based on the City's determination that a Law Firm has not met its obligations under the retainer or otherwise performed to the City's satisfaction), the City will be responsible only for the Law Firm's reasonable attorney's fees and costs, but attorneys' fees shall not exceed the City's guidelines of $295 per hour.

18. By entering into this retainer, the City has not terminated Cohen Milstein within the meaning of the earlier retainers; rather, the purpose of this retainer is to clarify the terms under which Cohen Milstein may be paid at the conclusion of the Matter.

Sincerely,

Edward Siskel
Corporation Counsel

For the City of Chicago

Accepted by: _Linda Singer_ /AS  9/17/18

For Motley Rice

Accepted by: _____  9/24/2018

For Cohen Milstein                Betsy A. Miller

4

# **<u>EXHIBIT C</u>**



April 8, 2013

### DEPARTMENT OF LAW
### CITY OF CHICAGO

Linda Singer
Cohen Milstein Sellers & Toll, PLLC
1200 New York Avenue, NW
Washington, DC 20005

Dear Ms. Singer,

The City of Chicago ("City" or "Chicago"), by the undersigned, has retained Cohen Milstein Sellers & Toll, PLLC ("Cohen Milstein" or "Firm") as Special Assistant Corporation Counsel for the City of Chicago to represent it in an investigation and litigation of potential claims regarding fraudulent marketing of opioid drugs ("Opiod Matter"). The representation is on the terms and conditions below.

1. <u>Fee and Expenses</u>:

1. Cohen Milstein will be paid on a contingent fee basis, only upon a recovery in the Opiod Matter, as follows:

   - 22% of net recovery if the matter is resolved pre complaint
   - 26% of the net recovery if the matter is resolved after a motion to dismiss but before summary judgment
   - 30% of the net recovery if the matter is resolved after summary judgment

2. The net recovery is any settlement or judgment amount, not including any award of attorneys' fees and costs, minus the actual costs incurred by Cohen Milstein

3. Any court-awarded attorneys' fees will be shared equally between Cohen Milstein and the City of Chicago.

4. A list of all Cohen Milstein attorneys, investigators, and paralegals who are assigned to this matter and their hourly rates is attached. Cohen Milstein will inform the City if additional lawyers or other staff from Cohen Milstein are added.

5. Cohen Milstein will advance all reasonable costs and expenses of the investigation and litigation. The City agrees to reimburse the Firm for such expenses out of any recovery before the contingent fee applies. Reimbursement of expenses is not considered part of Cohen Milstein's contingent fee.

6. The City must approve any expense of $25,000 or more in advance.

1

1710700.4

7. Cohen Milstein will have no claim against Chicago for its time or expenses except as otherwise laid out in this retainer, even if there is no recovery or the recovery is not sufficient to cover its time or expenses.

2. Authority and Responsibilities

8. Cohen Milstein is responsible for providing all legal services required in investigating and litigating this matter, including all associated support services.

9. Cohen Milstein is authorized to retain or associate experts, investigators, and technical and legal assistants, and such additional counsel from Cohen Milstein as may be needed for the matter. The expense related to the employment and utilization of such third parties will be reimbursed in the manner set forth above and subject to approval by the City per paragraphs 5 and 6 above.

10. Chicago is responsible for providing access to the personnel, information, and documents required to assess and prosecute its claims (including any personnel, information, and documents required by court order or in discovery).

11. The City will maintain control of the investigation and litigation and will make all key decisions, including whether and how to proceed with litigation, which claims to advance, which defendants to sue, what relief to seek, and whether and on what terms to settle the litigation. Cohen Milstein will be responsible for carrying out the investigation and litigation and for making day-to-day decisions regarding court filings, subpoenae and investigative demands, court appearances, discovery matters, trial, and any appeal. Cohen Milstein will provide regular reports to the City on the status of and any significant developments in the matter.

12. The City must approve any settlements and must be apprised of any settlement offers made by defendants.

13. The City will designate a point of contact who will supervise the investigation and litigation and who will be available directly to other parties in this matter as needed.

3. Termination

14. When the initial investigation has been completed, the City will determine whether to move forward to litigation. If the City reasonably and in good faith decides that the evidence or size of the potential claims does not make it appropriate to proceed, it will terminate this retainer. In that event, the City will have no obligation to pay Cohen Milstein's fees or expenses.

2

15. If the City chooses to move forward, Cohen Milstein will decide whether it wishes to represent the City in litigation.  If Cohen Milstein decides not to proceed, it will provide all documents and work product related to the investigation to the City, which will be entitled to seek other counsel.  If the City litigates this matter with other counsel, Cohen Milstein will be entitled to recover only its reasonable attorneys' fees and costs out of any recovery, but attorneys' fees shall not exceed City guidelines which is $295 per hour.[1]

16. If the City terminates this retainer without good cause (good cause being either a determination that the size or basis for the case is insufficient or that Cohen Milstein has not meet its obligations under this retainer), it will be responsible only for Cohen Milstein's reasonable attorneys' fees and costs, but attorneys' fees shall not exceed City guidelines which is $295 per hour.

17. If Cohen Milstein fails to meet its obligations under this retainer, it may be terminated for good cause, and the City will have no obligations to pay its time or expenses or any portion of a recovery in this matter, even if the City proceeds thereafter to litigate this matter using in-house or other counsel.

Sincerely,

For the City of Chicago

Accepted by:

For Cohen Milstein Sellers & Toll, PLLC

---

[1] The $295 ceiling for hourly fees limits what the City may pay to Cohen Milstein but does not constitute a determination of a reasonable fee for purposes of a fee petition or payment of attorneys' fees by any defendants.

3

1710700.4