# EXHIBIT 2

# ALSTON & BIRD

Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
704-444-1000 | Fax: 704-444-1111

**Brian D. Boone**  Direct Dial: **704-444-1106**  Email: **brian.boone@alston.com**

February 21, 2024

Paul Farrell, Jr.
Farrell & Fuller
270 Muñoz Rivera Avenue, Suite 201
San Juan, PR 00918
Paul@FarrellFuller.com

Re:  In re: National Prescription Opiate Litigation, MDL-2804 – Discovery Ruling Number 22

Dear Paul:

I write in response to your February 14, 2024 letter claiming that OptumRx has not complied with Discovery Ruling Number 22 (DR-22) because it has not reproduced in the MDL documents previously produced to Motley Rice in three Motley Rice-led government investigations.

The PEC's position on DR-22 is frivolous and a transparent attempt to justify Motley Rice's ethical violations. DR-22 and every order interpreting it confirm that it requires the reproduction only of documents that were first produced in other *opioid-related* lawsuits, investigations, and public hearings. In opposing OptumRx's motion to disqualify Motley Rice, the PEC (including Motley Rice) argued that the Motley Rice investigations were not opioid-related investigations; it cannot now turn around and argue the opposite—which it now seems to be doing not only by your letter but also in its purported sur-reply opposing the disqualification motion (Dkt. 5320 at 7-10). In its initial opposition, the PEC argued that the Motley Rice investigations concerned alleged "overbilling for insulin"—not the "promotion and dispensing of opioids." Dkt. 5288 (Opp. to Motion to DQ Motley Rice) at 1. Motley Rice attorney Paige Boggs even declared under oath that the subpoenas in the three investigations "did not reference any opioid drug by name or opioids generally." Dkt. 5302-1, Boggs Decl. ¶¶ 6, 9, 14. And its new "expert" argues that the "crux of [the] claims" in those investigations was "price fixing." Dkt. 5320-5 at 10-11.

The PEC's new position seems to be that DR-22 applies anytime an opioid document—or a document concerning any aspect of an MDL defendant's business—is produced in *any* case, investigation, or congressional hearing, even if the underlying matter does not concern "the marketing, sales, distribution, or dispensing of [o]pioids." DR-22 (Dkt. 2576); Amendment to DR-22 (Dkt. 2712). That "argument" finds no footing in DR-22's text or in the many orders clarifying its scope. Indeed, it is not an "argument" at all but rather the PEC's latest effort to subvert the judicial process by bending the rules to its will.

Alston & Bird LLP                                                                                                        www.alston.com

Atlanta  |  Beijing  |  Brussels  |  Charlotte  |  Dallas  |  London  |  Los Angeles  |  New York  |  Raleigh  |  San Francisco  |  Silicon Valley  |  Washington, D.C.

In re: National Prescription Opiate Litigation, MDL-2804 – Discovery Ruling Number 22
February 21, 2024
Page 2

The information that OptumRx produced in the Motley Rice investigations is beyond DR-22's reach because those investigations were not about "the marketing, sales, distribution, or dispensing of [o]pioids." The ethical rules, however, don't turn on DR-22's meaning or the drug class that the investigations targeted. Instead, the ethical question is whether Motley Rice obtained confidential government information through the Motley Rice investigations that it could use to OptumRx's material disadvantage here—a different question that turns on the nature of the information Motley Rice received (and has had in its possession for years), not on whether the investigations were about the "the marketing, sales, distribution, or dispensing of [o]pioids." The answer to that ethical question is—unequivocally—yes, Motley Rice could use the information from the investigations to OptumRx's material disadvantage in opioid litigation, which the PEC's new push to obtain the information only confirms. The PEC's post-hoc attempt to use DR-22 as both a sword (to manufacture a discovery violation) and a shield (to try to justify Motley Rice's ethical violations) is not just frivolous; it is proof that the PEC will say anything in service of its goal to immunize Motley Rice from the firm's ongoing ethical violations. The PEC cannot distort and abuse DR-22 to erase Motley Rice's ethical violations.

Although the Motley Rice investigations are not subject to DR-22, some of the documents that OptumRx produced in those investigations may be responsive to the PEC's recent discovery requests. We served our initial responses to those requests just weeks ago (on January 29) and have only just begun discussing them with you. We will separately meet and confer with you about those requests and expect that our client will agree to produce at least some of the materials from the Motley Rice investigations—and would of course do so under the governing protective orders, designating the materials confidential or highly confidential as appropriate.

### 1. DR-22 applies only to "opioid-related" cases, investigations, and hearings.

By its terms, DR-22 applies only to cases, state and federal government investigations, and public government hearings that specifically concern "the marketing, sales, distribution, or dispensing or opioids":

> Defendants shall produce in discovery in this MDL copies of all sworn statements, testimony, video-taped testimony, written responses and discovery, expert reports, and other documents and discovery that they produce in any court case, state government investigation, closed federal government investigation, or public government hearing *regarding the marketing, sales, distribution, or dispensing of Opioids or Opioid Products* . . . .

Oct. 3, 2019 Amendment to DR-22 (Dkt. 2712) at 3 (emphasis added).[1]

Nothing in DR-22 requires defendants to analyze files from *every* litigation, investigation, or hearing to determine whether opioid documents are captured in the production. On the

---

[1] OptumRx was not a party to the briefing that yielded DR-22.

contrary, Special Master Cohen has repeatedly made clear that DR-22 is limited to "opioid-related" investigations or lawsuits in "opioid-related" fora. In the Walmart DR-22 Order that you cite in your letter, for example, Special Master Cohen explained that "[i]f a Defendant produces discovery in another *opioid-related forum*, that Defendant must promptly produce those discovery materials to the MDL Repository." Dkt. 3699 (Walmart Sanctions Order) at 4 (emphasis added). And when he described his order limiting DR-22's application to "closed" investigations, Special Master Cohen wrote that "defendants are obligated to produce to the MDL Repository documents they earlier produced in any *opioid-related* 'closed federal government investigation.'" Dkt. 3291 (emphasis added) at 2. The PEC has itself acknowledged that DR-22 is limited to "opioid-related" matters. At a December 1, 2023 hearing, Pete Weinberger conceded: "I realize that the [DR-22] ruling talks about *opioid-related* investigations" (Dkt. 5265 at 24:23-24 (emphasis added)), even as he asked the Court to abandon those limits. But neither Special Master Cohen nor Judge Polster has ever suggested—let alone held—that DR-22 applies to *any* case or investigation, even those not targeting the marketing, sales, distribution, or dispensing of opioids.

Case Management Order Number 1 (Dkt. 232) and Discovery Ruling Number 2 (Dkt. 693) have no bearing on the issue. Those orders were entered in mid-2018, years before OptumRx was an active defendant in any MDL track. And Discovery Ruling Number 2, on its face, applies only to the "Track One Cases" to which OptumRx has never been a party. Judge Polster has made clear that the PBMs aren't bound by those or other prior orders. *See* Dkt. 5265 (Dec. 1 Hearing Transcript) (Judge Polster: "There was a, you know, back and forth from the parties' proposals about the effect of prior rulings, court rulings in the MDL. The PBMs were not party to any of these. . . the motions, the briefing, the argument, the decisions. So they're not technically bound by them."); Dkt. 5268 at 2 (Polster Order Resolving PBM bellwether disputes) ("The Court agreed with the PBM Defendants that they are not bound by prior rulings to which they were not a party."). For good reason: OptumRx had no chance to object or be heard on those issues. Any argument to the contrary would raise grave due-process concerns. *See Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("A fundamental requirement of due process is the opportunity to be heard." (cleaned up)).

Regardless, those orders do not support the PEC's expansive "reading" of DR-22. The PEC's interpretation would extend DR-22 to *any* case or investigation so long as the party produced information relating to opioids even if the investigation was not about opioids. No defendant has ever been subject to such an expansive standard—which would effectively require defendants to review every document they have ever produced in any legal proceeding to assess their relevance to this case. A contrary approach would violate the Federal Rules of Civil Procedure and due process. It is meritless and nothing more than a naked power grab.

    **2.    The Motley Rice investigations are not "opioid-related investigations" subject to DR-22.**

The Motley Rice investigations are not "opioid-related" investigations under DR-22 because they do not "regard[] the marketing, sales, distribution, or dispensing of Opioids or Opioid Products."

In re: National Prescription Opiate Litigation, MDL-2804 – Discovery Ruling Number 22
February 21, 2024
Page 4

The PEC has confirmed as much. In opposing OptumRx's motion to disqualify Motley Rice, the PEC argued that the Motley Rice investigations concern "OptumRx's [alleged] overbilling for insulin and other essential prescription drugs" while the claims in the MDL are about "Optum's [alleged] unrestrained promotion and dispensing of opioids fueled epidemics of addiction in their communities." Dkt. 5288 at 1. Motley Rice attorney Paige Boggs declared that the investigation subpoenas "do not reference any opioid drug by name or opioids generally." Dkt. 5302-1, Boggs Decl. ¶¶ 6, 9, 14. The PEC represented to the Court that the Motley Rice investigations were not about opioids; it cannot now argue that OptumRx violated DR-22 by not reproducing those documents in the MDL.[2]

Special Master Cohen's past rulings do not support the PEC's contention that DR-22 covers the Motley Rice investigations. In the Walmart DR-22 Order, for example, Special Master Cohen ordered Walmart to reproduce documents first produced "in an *opioid* case pending in Massachusetts State court" (Dkt. 3699 (Cohen Order) at 2 (emphasis added)) and in Delaware state-court shareholder actions alleging corporate misconduct "stemming from the 'lack of legally-required controls designed to flag and stop the diversion of opioid prescriptions.'" (*id.* at 5 (cleaned up)). Special Master Cohen emphasized that "[t]he primary issue" in those shareholder actions was "Walmart's 'potential governance failures and/or potential corporate mismanagement' **regarding the distribution and dispensing of opioids.**" *Id.* at 6-7 (emphasis in original). He observed that the very first sentence in each of those shareholder complaints spoke about "Walmart's role in spreading and worsening America's opioid crisis." *Id.* at 5.

The same cannot be said of the Motley Rice investigations. By the PEC's own admission, the investigations did not concern opioid "marketing, sales, distribution, or dispensing" (Dkt. 2712), and the civil investigative demands served in those investigations "did not reference any opioid drug." Dkt. 5302-1, Boggs Decl. ¶¶ 6, 9, 14.

That information about opioids or other issues raised in the bellwether complaints is captured in a production does not transform an investigation into an "opioid-related investigation" or a lawsuit in an "opioid-related forum." OptumRx provides pharmacy care services across a range of clients and prescription drugs, but that doesn't mean that any investigation in which OptumRx produces information about its business is about the "marketing, sales, distribution, or dispensing" of opioids. What it does mean, however, is that documents that OptumRx produces elsewhere can still be used to OptumRx's material disadvantage in this MDL.

That is what happened with the Motley Rice investigations. Although those investigations were not about "the marketing, sales, distribution, or dispensing of [o]pioids" (Dkt. 2712), the sweeping investigative demands nevertheless swept in documents about opioids as well as "documents that are not specific to any prescription drug but nonetheless provide a wide-ranging view into OptumRx's overall business strategies, including about rebate negotiations, formulary development, clinical programs, and client relationships." Dkt. 5300 at 6. Motley

---

[2] Even though Motley Rice has known about and had the information from the investigations for years, neither Motley Rice nor the PEC ever suggested that the Motley Rice investigations were subject to DR-22 until OptumRx moved to disqualify Motley Rice.

Rice wielded government authority to obtain that confidential information from OptumRx and could use it to OptumRx's material disadvantage in this litigation. Dkt. 5276-1; Dkt. 5300.

But again, that has nothing to do with DR-22.

\* \* \* \* \*

The PEC's position would effectively mean that no case, investigation, or hearing is beyond DR-22's reach. That position is wrong. DR-22 has a limit. It applies only when the underlying investigation is about the "marketing, sales, distribution, or dispensing of [o]pioids." Dkt. 2712. By the PEC's own admission, the Motley Rice investigations do not satisfy that requirement.

The PEC's push for confidential documents that OptumRx produced in the Motley Rice investigations nevertheless demonstrates that those documents could be used to OptumRx's material disadvantage in this litigation. Whether the PEC ultimately gets those documents has no bearing on whether Motley Rice should be disqualified. Motley Rice acquired the confidential government information years ago when, in its capacity as government lawyers, it served coercive investigative subpoenas on OptumRx. Motley Rice may not now represent bellwether plaintiffs in a private civil action where it can use that information against OptumRx. Dkt. 5276-1; Dkt. 5300.

> 3. **OptumRx is willing to meet and confer about reproducing documents produced in the Motley Rice investigations that are responsive to the PEC's discovery requests.**

Setting aside our disagreement about DR-22's scope, we agree that certain documents produced in the Motley Rice investigations may be responsive to certain of the PEC's discovery requests. The productions to Hawaii, Chicago, and the District of Columbia include materials that were first produced to the Minnesota Attorney General's Office in accordance with a 2017 civil investigative demand. Like the Motley Rice investigations, the Minnesota AG's investigation was not about opioid marketing, sales, distribution, or dispensing. Instead, the CID was served in connection with the Minnesota AG's investigation into alleged anticompetitive conduct by insulin and epinephrine manufacturers Sanofi, Novo Nordisk, and Mylan. OptumRx complied with the CID and provided documents that the Minnesota AG asked for.

Given that certain of those documents may fall within the scope of the PEC's document requests, we are willing to meet and confer about reproducing them. Let us know when you are available for a call to continue the conversation. If we cannot reach agreement after meeting and conferring about the PEC's discovery requests, we can discuss a briefing schedule for presenting any PEC motion to the court.

In re: National Prescription Opiate Litigation, MDL-2804 – Discovery Ruling Number 22
February 21, 2024
Page 6

Sincerely,

Brian D. Boone
BDB:

CC: All Counsel of Record