# EXHIBIT 3

Page 1

1          IN THE UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF OHIO
3                  EASTERN DIVISION
4
5   IN RE:  NATIONAL PRESCRIPTION      MDL No. 2804
            OPIATE LITIGATION
6
7   THIS DOCUMENT RELATES TO:
8   TRACK 12.
              _____
9
10
11

      TRANSCRIPT OF STATUS CONFERENCE HELD BEFORE
12            SPECIAL MASTER DAVID COHEN
13
14

            Wednesday, February 14, 2024
15                  2:00 P.M.
16
17

        Taken remotely via teleconference
18
19
20

   REPORTER:  PAMELA S. GREENFIELD, RMR, CRR, RDR
21
22
23
24

   Job No. 6464931
25

Page 2

```
 1   PHONE APPEARANCES OF COUNSEL:
     (INCOMPLETE LIST)
 2
     On behalf of the Plaintiffs and the PEC:
 3
             FARRELL & FULLER LAW
 4           BY:  PAUL T. FARRELL, JR., ESQ.
             422 Ninth Street, Third Floor
 5           Huntington, West Virginia 25701
             Paul@farrellfuller.com
 6
             SPANGENBERG, SHIBLEY & LIBER, LLP
 7           BY:  PETER H. WEINBERGER, ESQ.
             1001 Lakeside Avenue
 8           Suite 1700
             Cleveland, Ohio  44114
 9           PWeinberger@Spanglaw.com
10           THE CICALA LAW FIRM, PLLC
             BY:  JOANNE CICALA, ESQ.
11           BY:  JOHAN CONROD, ESQ.
             101 College Street
12           Dripping Springs, Texas  78620
             Joanne@cicalapllc.com
13           Johan@cicalapllc.com
14           BARON & BUDD, P.C.
             BY:  MARK PIFKO, ESQ.
15           15910 Ventura Boulevard
             Suite 1600
16           Encino, California  91436
             Mpifko@baronbudd.com
17
             MOTLEY RICE, LLC
18           BY:  MICHAEL E. ELSNER, ESQ.
             28 Bridgeside Boulevard
19           Mt. Pleasant, SC  29464
             Melsner@motleyrice.com
20
             LEVIN PAPANTONIO RAFFERTY
21           BY:  PETER MOUGEY, ESQ.
             BY:  LAURA S. DUNNING, ESQ.
22           316 South Baylen Street
             Pensacola, Florida  32502
23           Pmougey@levinlaw.com
24
25
```

```
                                              Page 3

1    PHONE APPEARANCES OF COUNSEL (continued):
     (INCOMPLETE LIST)
2
3    ON BEHALF OF BELLWETHER PLAINTIFF CITY OF
     ROCHESTER:
4
          NAPOLI SHKOLNIK
5         BY:  HUNTER SHKOLNIK, ESQ.
          1302 Avendia Ponce de Leon
6         Santurce, Puerto Rico  00907
          Hunter@nsprlaw.com
7
8    ON BEHALF OF DEFENDANT OPTUMRX, INC.:
9         ALSTON & BIRD
          BY:  BRIAN D. BOONE, ESQ.
10        BY:  EMILY C. McGOWAN, ESQ.
          Vantage South End
11        1120 South Tryon Street
          Suite 300
12        Charlotte, North Carolina  28203-6818
          Brian.boone@alston.com
13        Emily.McGowan@alston.com
14
     On behalf of Defendant Express Scripts:
15
          QUINN EMANUEL URQUHART & SULLIVAN, LLP
16        BY:  OLGA M. VIEIRA, ESQ.
          2601 South Bayshore Drive
17        15th Floor
          Miami, Florida  33131
18        Olgavieira@quinnemanuel.com
          -and-
19        BY:  SAGE R. VANDEN HEUVEL, ESQ.
          (Of counsel)
20        865 S. Figueroa Street
          10th Floor
21        Los Angeles, California  90017
          Sagevandenheuvel@quinnemanuel.com
22        -and-
          BY:  HALEY PLOURDE-COLE, ESQ.
23        (Of counsel)
          51 Madison Avenue, 22nd Floor
24        New York, New York  10010
          Haleyplourdecole@quinnemanuel.com
25
```

```
                                        Page 4
```

1          P R O C E E D I N G S

2

3              SPECIAL MASTER COHEN:   Hello

4       everybody.  This is David Cohen.  I was

5       waiting for the beeps to stop.  It's

6       like popcorn.  I finally turned off the

7       microwave.  So thank you all for getting

8       on the phone.  I'm sure that there are

9       quite a number of folks who are on, and

10      of course for the court reporter, you

11      should make sure that you identify

12      yourself each time before you speak.

13              I'm sure that she's good at

14      differentiating voices, but it will

15      still help her.

16              As I noted, I'm going to record

17      this myself.  I don't know, Pam, if

18      you're doing that, but I'll do it as

19      well and I'll start right now.

20              Okay.  And I also am going to

21      guess that there are maybe many, many

22      attorneys on the phone, probably north

23      of 25; but that at least as to any given

24      issue, there are probably just one or

25      two on each side who will be addressing

Page 5

1      it and so, as I suggested in my emails

2      to you all, I really am doing this at

3      this juncture just to kind of listen in.

4      I want to sensitize myself to what the

5      issues are, get a feeling for what

6      resolutions you've already reached, what

7      resolutions you may be close on but

8      maybe just need a suggestion or two, a

9      little help that I can mediate as I have

10     done really since the beginning of this

11     MDL seven years ago; and then to the

12     extent that we can identify issues where

13     you're just not going to come to

14     agreement, then we can get that teed up

15     one way or another.

16          So with that introduction, I'm

17     really going to try and, as I said, just

18     listen in and, I don't know, I guess

19     that it has mostly been plaintiffs who

20     have been asking for resolution of

21     objections made by defendants to

22     plaintiffs' discovery.

23          My sense is that there will also

24     be defendants who want resolution of

25     plaintiffs' objections to defendants'

Page 6

1        discovery, but that's running a little
2        bit behind just given the timing of
3        production of responses.
4              So having said that, I'm also
5        guessing that it is probably appropriate
6        to ask plaintiffs to begin and identify
7        whatever issues you've already been
8        discussing and go forward with that
9        discussion while I listen in and if
10       there are some that should be directed
11       the other way, then we can get to that,
12       too.
13             I'm guessing maybe that Paul
14       Farrell or Peter Mougey have been at the
15       forefront, or Peter Weinberger, but I'll
16       let you take it from there.
17             MR. FARRELL:   Hi.  Good
18       afternoon.  For the record, this is Paul
19       Farrell.  Can you hear me okay?
20             THE REPORTER:   Yes.
21             SPECIAL MASTER COHEN:   Yes.
22             MR. FARRELL:   Okay.  The genesis
23       of the recent discussions and where we
24       currently are is on December 29th, 2023
25       the PEC served 35 discovery requests

1      upon the two PBM defendants, Optum and

2      ESI, and I'll refer to them collectively

3      with their subsidiaries and we'll get to

4      that issue later.

5            The title of the document is

6      Plaintiffs' Combined Discovery Requests

7      to Defendant Pharmacy Benefit Managers,

8      First Set Relating to Initial Discovery;

9      and just like the previous iterations of

10     this litigation, sometimes it takes a

11     little bit of a nudge to start the

12     dominos to fall and I think that the way

13     that I had attempted to frame it is that

14     the first discussions we've had are on

15     geographic scope and temporal scope, and

16     both issues have been addressed in the

17     past in this litigation through

18     discovery ruling 2, which is docket 693,

19     and discovery ruling 3, which is docket

20     762.

21           We had a discussion yesterday,

22     and I think I'll just start with the

23     easy one, which is geographic scope, and

24     I think that it's fair for me to

25     characterize that the plaintiffs and the

1       PBMs have agreed that properly framed

2       discovery 1 category has a nationwide

3       geographic scope and that those

4       questions that we ask that fall within

5       category 2 would have a smaller

6       geographic scope which is yet to be

7       determined whether it is regional, state

8       or bellwether specific.  We haven't got

9       to those discussions yet.

10              So yesterday we walked through

11      the 35 questions to see where we had

12      agreement and disagreement, and for the

13      most part we have universal agreement on

14      some of the questions being category 1,

15      and then we have universal agreement on

16      most of the remaining questions that

17      have a category 1 and a category 2

18      component and what we have agreed is

19      that to the extent that we eventually

20      see documents, that we can make a better

21      understanding as to whether or not the

22      productions are, should be nationwide or

23      they should be limited to specific

24      geographic areas.

25              By way of example -- let me see

Page 9

1       if I can find a good one.  Question

2       number 28 states:  Please identify all

3       presentations you have given related to

4       the opioid epidemic and/or opioid

5       utilization, abuse and/or diversion and

6       produce a copy of the same.

7               The position that we've taken is

8       that if in fact there are national

9       presentations, if there are documents

10      responsive to this for, on a national

11      scope, obviously we think that's in

12      category 1.

13              The defendants rightfully pointed

14      out that there could be hundreds of

15      presentations performed not with a

16      national scope but on a restrictive

17      geographic area, say for a client in

18      Kansas, and we have agreed to reserve

19      judgment on whether or not those are

20      category 1 or category 2 depending on

21      the scope of document that we receive

22      with question number 28.

23              If question number 28 produces

24      zero results, then we'll go back and

25      have a discussion as to why we've missed

Page 10

```
 1          that or why, you know, there is a
 2          limited subset.  So the geographic scope
 3          I don't think is controversial.
 4               The temporal scope is
 5          controversial and this is where I think
 6          that yesterday we kind of hit a
 7          loggerhead.
 8               What the plaintiffs' position is
 9          is that under discovery ruling 2 and 3
10          that the case against the PBMs is more
11          akin to the allegations against the
12          manufacturers, which this court has
13          determined that temporal scope as a
14          baseline goes to a year before the
15          launch of each product:  So if a
16          manufacturer launched a product in 1996,
17          the temporal scope was a year prior to
18          launch.  If the temporal scope -- if the
19          launch was in 2012, then the temporal
20          scope was a year before that launch.
21               The PBMs argue that there should
22          be a later date on temporal scope, and I
23          don't know that any further discussions
24          between us is going to make a
25          difference; so that's one of the reasons
```

1      why I asked for this meet and confer

2      with, David, you serving as sort of a

3      guide to us that it leads us into the

4      process that we need to engage in to

5      ripen this to bring it to your attention

6      for resolution.

7            I think the only complicating

8      factor to this is that the PBMs argue

9      that until the motion to amend is

10     granted or denied, it impacts their

11     position on temporal scope; so for

12     instance, if this court refuses any

13     amendment to allow a marketing claim

14     despite we allege there are marketing

15     claims, then that may have some impact,

16     and we concede that there's some merit

17     to that.

18           That being said, we believe we've

19     properly pled the complaint and that

20     we've properly brought in allegations of

21     contractual relationships between the

22     PBMs and specifically Purdue Pharma

23     dating back to the launch of OxyContin

24     and so we're asking for a baseline

25     temporal limitation of January 1, 1996.

Page 12

1           And with that, I think I'll leave
2      it to the defendants if they'd like to
3      make any comment.
4           MS. McGOWAN:  This is Emily
5      McGowan for OptumRX.  I have some
6      initial responses to what you just
7      shared, Paul.  And then I think Olga for
8      Express Scripts may have proposed a path
9      forward today but it really does seem
10     that plaintiffs are taking the position
11     that all the prior discovery rulings,
12     and you've mentioned DR 2 and 3, apply
13     to the PBMs and our position is that
14     they don't.
15          The PBMs were not active MDL
16     defendants until recently and they
17     weren't in the tracks where those orders
18     were issued.  I'm looking at DR 2 and 3
19     now and they say on their face this
20     document relates to Track 1 cases.
21          Not only that, just as recently
22     as December Judge Polster recognized
23     twice that the PBMs are not bound by any
24     of those rulings, both orally at the
25     December 1st hearing when he said -- and

Page 13

1          this is a quote -- "they're not

2          technically bound by them" and then in

3          his December 11th order resolving

4          bellwether disputes, the PBM defendants

5          are not bound by prior rulings to which

6          they were not a party.  So just at the

7          outset, those rulings are not binding on

8          the PBMs.

9                   Taking the position that 1996 is

10         the relevant year for discovery as a

11         blanket position is also just

12         inappropriate for the case.  So setting

13         aside the fact that the PBMs weren't in

14         those tracks, if you actually look at

15         the discovery that went back to 1996,

16         it's relatively limited and in fact for

17         most other discovery, the year was 2006

18         and so again we're not hearing

19         justification for any discovery prior to

20         2006.

21                   What we heard yesterday relates

22         to entities that are not in the current

23         cases and we explained that going

24         forward with this meet and confer today,

25         given that issue, was premature but

Page 14

1          that's the only reasoning we've heard
2          for going back to 1996.  And then just
3          speaking for OptumRX now, and I know
4          we've explained this at least in Lincoln
5          County, if not to this team, OptumRX was
6          a very small company before 2015 so
7          there's just a reality that there are
8          not going to be significant materials
9          predating 2010 or 2006 and certainly not
10         back to 1996 and so there's sort of a
11         functional problem as well.
12                 So with those overarching points,
13         Olga, did you have some comments as
14         well?
15                 MS. VIEIRA:  Yes.  So I would
16         just piggyback off that last comment.
17         For Express Scripts we have -- this is
18         Olga Vieira, for the record, and I
19         represent Express Scripts.
20                 So for Express Scripts, we will
21         also have limitations on the documents
22         and data that we have available, what is
23         reasonably accessible and what is not;
24         and so I guess my thought in terms of
25         this meet and confer is sort of setting

Page 15

1          that aside for now and just speaking
2          theoretically on what the date range
3          should be and then we can talk about
4          burden and accessibility of the
5          documents afterwards; but our thinking
6          had been when it comes to the PBM
7          related claims, which is the only claims
8          that are currently in the dispute, we
9          think that it would be appropriate to
10         take the Court's ruling that was
11         implemented in 2018 regarding the
12         distributors and the pharmacies and set
13         a time frame of 2006; and we thought
14         since that was done in 2018 and now
15         we're in 2024, we should push it up to
16         2012 and that would give you the same
17         date range or the same time frame and
18         reduce the burden that would exist for
19         us now going back, six years later going
20         back the additional six years and that's
21         where we came up with the 2012 time
22         frame, and that would be for all of the
23         PBM associated claims.
24                  And then as we discussed
25         yesterday, to the extent that, you know,

1       the complaints are amended and there are

2       certain allegations included in the new,

3       in the amended complaints that are

4       relevant to relationships with the

5       manufacturers, then perhaps we can talk

6       about that as a separate category of

7       documents and which documents would fall

8       into those allegations and what time

9       frame would be appropriate for that.

10              Not necessarily agreeing that

11      1996 would be the right time frame; but

12      just thinking of it as two different

13      sets of documents and as we, we could go

14      through the different requests how we

15      did yesterday with the time frames and

16      say okay, this would clearly be, you

17      know, more PBM related and so the time

18      frame would be a later time frame.  This

19      would be something that would touch on

20      the relationship with manufacturers, so

21      that might be something that we would

22      want an earlier time frame on; and if we

23      could categorize that, the requests that

24      way, then perhaps we can have, like make

25      some progress in the discussions while

1    we await for the Court's ruling on the

2    motion to amend and then speak about

3    time frames once we've decided which

4    categories fall into which.

5             I think, you know, reviewing some

6    of the prior rulings from this court,

7    the Court took, I think quoting, a

8    surgical approach, and I think that's

9    something that we would think would be,

10   would work well here, right?  Is looking

11   at the different categories and the

12   different types of documents and saying

13   okay, this type of document we can

14   probably go back further.  This type of

15   document we can't, and just going on a

16   more case-by-case basis with the

17   categories of documents instead of

18   trying to put in a blanket 1996 or even

19   2006 deadline.

20             SPECIAL MASTER COHEN:   This is

21   David.  Let me just make some comment

22   and a suggestion.

23             First of all, as to prior

24   discovery rulings by me and the Court, I

25   agree with you that the Judge said that

Page 18

```
 1          at least to some extent there are
 2          certain rulings that because the PBMs
 3          weren't involved at the time are not
 4          binding on the PBMs, and my
 5          recollection, which is probably not
 6          entirely clear, is that the Judge was
 7          talking for sure about, for example,
 8          motions in limine.  I'm not sure that
 9          the Judge was talking about discovery
10          motions.  Maybe he was.  But at the very
11          least, any discovery rulings are
12          precedential.  It doesn't mean that
13          they're necessarily binding.  They may
14          be or they may not be, but they're
15          certainly precedential and the parties
16          should look at them as strongly advisory
17          as to what the Court has been thinking
18          including that it intends to be surgical
19          as much as it can.
20               But, for example, there is no
21          question but that DR 22, which is the
22          discovery ruling, applies to the PBMs.
23          It says so by its terms that it applies
24          to all defendants, and subsequent
25          discussions of DR 22 clarifications and
```

Page 19

1        amendments all make it clear that it

2        applies to, quote, "all defendants in

3        the MDL," so I would just observe that

4        taking the position that none of it is

5        binding on PBMs might be a bit too

6        strong.  I'm not saying you're wrong.

7        I'm just also saying that you shouldn't,

8        you know, ignore them out of hand.

9                The other thing I would observe

10       is this:  So I think that the parties

11       agree that depending on what the Judge

12       rules on the motions to amend is going

13       to kind of change the analysis; but so

14       fine.  You know, I have always taken and

15       will continue to take the position that

16       you can roll this out.  You can do it a

17       bit at a time unless it's actually more

18       efficient to wait, and maybe it is.

19       Sometimes it will be, but sometimes it's

20       more efficient to just get going; and so

21       if it is true that the parties simply

22       disagree on those issues that are

23       currently in the case as pled and there

24       is no room for, or the parties don't

25       believe that there is going to be any

Page 20

1          resolution of that comprise, surgical or

2          otherwise, then I want to get position

3          papers, position letters now.

4                    Start writing them and show me,

5          tell me what the issues are and I'll

6          tell you what I think and if you, if any

7          party disagrees with me, they can ask

8          that it be formalized and we'll go

9          through the process we've been going

10         through the last seven years.  But let's

11         get going here.  I mean, that's my

12         function is to get these issues resolved

13         as quickly as possible, so I don't --

14                    MR. BOONE:  Special Master --

15                    SPECIAL MASTER COHEN:  I don't

16         know if you're at a position yet where

17         you can't agree any further; but if you

18         are, then I need to start seeing the

19         issues.

20                    Go ahead, Brian.

21                    MR. BOONE:   Yeah, sorry.  This

22         is Brian Boone for OptumRX.

23                    I just wanted to clarify a couple

24         things:  You are not making any rulings

25         today, correct, about any issues?

Page 21

1            SPECIAL MASTER COHEN:   That is

2       correct.

3            MR. BOONE:   Thank you.

4            SPECIAL MASTER COHEN:   I'm not

5       going to make any rulings on any of this

6       stuff unless it's clear; but, no,

7       generally my practice, Brian, is that

8       I'm not going to rule on anything

9       without receiving some kind of written

10      position -- it might be an email, it

11      might be a formal letter, it might be a

12      formal motion -- so that I can have time

13      to digest it and think about it.

14            MR. BOONE:   Understood.  Thank

15      you.

16            And I know you had just talked,

17      started talking about the process, and I

18      wanted to talk about the process because

19      the PEC invited you to this meeting

20      before the parties had even spoken about

21      the PBMs' objections.  We had a call

22      with Paul and the PEC yesterday.  That

23      was the first time that we had talked

24      since serving our objections, and it

25      lasted about an hour.

Page 22

```
 1              And by the way, Paul made it a
 2         point on that call to explain that he's
 3         not accustomed to losing in this
 4         litigation, so they were essentially
 5         saying we don't need to meet and confer
 6         because we're going to win.  That is
 7         improper.  If they think there's --
 8              SPECIAL MASTER COHEN:  He may
 9         not be accustomed to it, but it's
10         certainly happened and nobody should
11         feel like they win everything or can
12         expect to win anything; so you don't
13         need to worry about that.
14              If there's one thing that I hope
15         you will eventually conclude is that I
16         give everybody a chance to say what they
17         need to say and that I'm fair in the
18         end.
19              MR. MOUGEY:  Yeah.  This is Peter
20         Mougey.  I was going to sit and not say
21         anything.  That was, that comment was
22         totally inappropriate.  That was a
23         comment made in jest during -- there
24         were a lot of jokes made during that
25         meet and confer and that was a comment
```

Page 23

1          that was made about that Paul picks his

2          battles is what the gist of that was and

3          that was inappropriate and uncalled for.

4          And that was, I didn't want to leave

5          this conversation, Special Master, with

6          that being the, that you think that

7          Farrell's pounding his chest and he's

8          never lost and that's why we're not

9          meeting and conferring.  That's totally

10         inappropriate.

11               MR. SHKOLNIK:  If I could just

12         say one thing, Special Master.  This is

13         Hunter Shkolnik.

14               Can I just say one thing --

15               MR. BOONE:   This is Brian Boone.

16         Let me just respond to that.  No one on

17         our side said --

18               MR. SHKOLNIK:   No, Brian, can I

19         just respond to what you said please?

20         And then respond to all of us?

21               As the law firm that has probably

22         more bellwethers than any other firm in

23         this MDL, I can attest to the fact that

24         we do not win everything and to even

25         suggest that is, you know, really just

1          inappropriate here.

2                    And why don't we just stick to

3          the issues here instead of this type

4          of --

5                    SPECIAL MASTER COHEN:   Let's not

6          get sidelined by that.

7                    Brian, I accept your

8          representation that you didn't mean

9          anything by it.  Let's get to the

10         essence and the issues.

11                   And are there any other issues

12         besides geographic that we should be

13         talking about?

14                   MR. BOONE:   If I could just add

15         one thing, Special Master Cohen, that I

16         was going to say before the others

17         interjected.

18                   If they think there's a ripe

19         dispute -- and it sounds like this is

20         what you're saying -- then they can file

21         a motion to compel and we can brief it.

22         That's what Rule 37 requires.

23                   And of course we'll be talking

24         along the way and we're always going to

25         meet and confer in good faith and I'm

Page 25

1     sure you'll come to see that is true of

2     our side.

3            But if they think there's a ripe

4     dispute, they need to file a motion to

5     tee it up and that's not --

6            SPECIAL MASTER COHEN:  Right, and

7     they can file --

8            MR. BOONE:  They invited you to

9     the conversation even before the parties

10    really had a chance to speak about most

11    of it.

12           SPECIAL MASTER COHEN:   And

13    that's why I made clear that I wasn't

14    going to be ruling on anything and that

15    I'm really just mostly listening, you

16    know, making suggestions.

17           To be fair, you know, this is the

18    process, Brian, that over the last seven

19    years we have engaged in:

20           The parties have called and said

21    okay, here's our dispute, and we got to

22    it.  Right?  It started out pretty much

23    with formal written motions and then

24    eventually the parties realized that

25    things were easier, quicker, less

Page 26

1        expensive for their clients to do that

2        via position letters to me.  Still

3        formal, still written, still lengthy,

4        still very thorough, but via letter and

5        as time progressed and everybody got

6        more comfortable with each other, we

7        would sometimes simply get on the phone

8        and say okay, here's the issue.  We

9        pretty much agree that we each could be

10        wrong or right.  What do you think,

11        David?  And I would say it.  And if

12        somebody decided that they weren't

13        satisfied with that, then we'd get to

14        the written stuff and go from there.

15                So I recognize that the PBMs are

16        essentially new to the litigation and

17        that it may take some time for us all to

18        get comfortable with each other; but in

19        any event, there will never be a case

20        where the parties don't get to present

21        their position in writing if they need

22        to or want to and we'll take it from

23        there.  So that's the way it's going to

24        go forward.

25                MS. VIEIRA:   This is Olga Vieira

Page 27

1      for Express Scripts.  I guess it's, the

2      question is to Paul:  Do you want to do

3      with, like we did yesterday?  I think

4      this may be helpful, and perhaps more in

5      your court than in mine, to go through

6      the 35 requests and let us know which of

7      those requests you think would fall into

8      what you would position as the 1996

9      bucket and then what you would position,

10     I think yesterday you called it the

11     transactional, that could be a bigger

12     bucket and just to kind of start setting

13     a framework for what you think you need

14     would be really, really far back and

15     what you think you could live with in a

16     closer time frame, again not making any

17     agreements or concessions but just

18     trying to categorize them in the way

19     that we did yesterday with the

20     geographical scope?

21              MR. FARRELL:   So this is Paul

22     Farrell.

23              Let me start by saying this:

24     With regard to Brian Boone's comment,

25     it's not even worthy of response from

Page 28

1      me.   Number 2 --

2              SPECIAL MASTER COHEN:   Good.

3      Let's get past it.

4              MR.  FARRELL:   Number 2 is I'm not

5      interested in going through the 35

6      requests and parsing out the burden as a

7      factor that goes into the temporal

8      scope.

9              As I explained yesterday, just

10      like with discovery ruling 3, I would

11      like the court to make a declaration as

12      to what the baseline is for the temporal

13      limitation and then from that baseline,

14      if one or more of the defendants have a

15      particular argument about availability

16      or accessibility, then we can have that

17      discussion.

18              The reason it's a little more

19      complex is because, as Optum pointed

20      out, their existence was small at some

21      point in time in the past but they are

22      currently now a result of several

23      mergers and acquisitions over time and

24      so some of our discovery requests are

25      asking for you to identify the history

Page 29

1      of your mergers and acquisitions.

2              The reason being, by way of

3      example, ESI acquired Medco and so we

4      have asked a question about predecessor

5      liability.  If Medco was in a contract

6      with Purdue Pharma in 1996 and engaged

7      in marketing conduct or engaged in

8      conduct that we believe is actionable

9      and ESI acquired Medco including its

10     liabilities, then I think the limitation

11     of ESI's documents is only one factor

12     that goes into it and we would like to

13     know whether or not you have Medco

14     documents.

15             So setting a baseline like we did

16     in discovery ruling 3 allows us to say

17     this is where we begin the assessment

18     and then it allows you to come back in

19     your responses and say:  After a

20     diligent search, we don't have any

21     documents that precede, you know, 2004.

22     And that's exactly what we did with the

23     manufacturing case, that's exactly what

24     we did with the distributor case and

25     it's exactly what we did with the

Page 30

```
 1          pharmacy case.

 2                    By way of example --

 3                    MS. VIEIRA:  It --

 4                    MR. FARRELL:  By way of example,

 5          McKesson, AmerisourceBergen and Cardinal

 6          Health each had transactional data going

 7          back in time to different places and

 8          they put that on the record and they

 9          disclosed what they had and we examined

10          it and we tested it and prodded it and

11          it turned out to be true.

12                    There are other instances where

13          upon prodding and pushing,

14          AmerisourceBergen came up with documents

15          that went back to '98.  So that's why

16          what jumped out of the gate for us was

17          question number 14 that we served which

18          asked the defendants, the PBMs, to

19          identify in chronological order and

20          produce all contractual agreements with

21          the manufacturers of prescription

22          opioids.

23                    Your position that this goes back

24          to 2012 or maybe even to 2006 belies the

25          point that we have through Purdue
```

Page 31

```
 1          discovery a contract between Express
 2          Scripts and Purdue Pharma.  It's Bates
 3          stamped PDD, as in papa delta delta,
 4          1701198993.  So, you know, it's dated
 5          April 17th, 1997 and it's retroactive to
 6          January 1st, 1997 and so we know there's
 7          evidence of direct contracts between
 8          Purdue Pharma and Express Scripts on
 9          OxyContin and we believe the baseline
10          should go back, and I just don't
11          understand -- I don't believe that going
12          through and seeing any other documents
13          without parsing through the 485 pages of
14          objections, why it -- I don't believe
15          it's an efficient use of time to debate,
16          you know, what the temporal limitations
17          should be on a question by question
18          basis.  And that's why we're asking for
19          a baseline.
20                  MS. VIEIRA:  But, Paul --
21                  SPECIAL MASTER COHEN:   Can I ask
22          a question please?  This is David.
23                  So the baseline date, as I
24          recall, was set in connection with a
25          specific, and I'm talking about the
```

1          former cases, Track 2 and Track 3, was

2          set based on the introduction of a

3          specific drug and went from there and

4          when I look at request number 14, which

5          is asking about contractual agreements,

6          that's not related to a drug.

7                    I'm trying to understand if

8          that's the argument that's being made,

9          what you're basing the beginning date

10         off of.  It sounds like it's not the

11         date that a drug was first marketed,

12         it's something else, at least in regard

13         to that question.

14                    MR. FARRELL:   Yeah.  So that's a

15         fair point.  We did not receive any

16         documents from ESI based on question

17         number 14.  What we received was

18         reference to the DR 22 production that

19         was in a different litigation and when

20         we went back and looked at those

21         documents, what we see is that ESI

22         entered into particular contracts with

23         Purdue Pharma on particular drugs; so

24         the documents that I just referenced to

25         you is the rebate and reimbursement

Page 33

1    agreement between Purdue Pharma and ESI

2    specifically related and exclusively

3    related to OxyContin.

4            SPECIAL MASTER COHEN:   Okay.   I

5    see.  So are you suggesting then that

6    the dates should still apply to a

7    specific manufacturer's products as to

8    that manufacturer's contracts for

9    example?

10           MR. FARRELL:   Yes.  The language

11   that we, the contracts that we're

12   interested -- well, no, not necessarily

13   because here's the thing is we also have

14   seen contracts between ESI's former

15   subsidiaries and Purdue Pharma that

16   isn't related to prescription opioids,

17   it's related to letters written to --

18   OxyContin letters written to doctors.

19           We've also seen that they have

20   particular data transfer agreements with

21   Purdue Pharma; and so the question was

22   written broadly enough for us to get our

23   arms around to define what types of

24   relationships ESI and its predecessors

25   had with Purdue Pharma and that's why we

Page 34

1          think that at least looking at question

2          number 14, if we can define the scope of

3          the interrelationship between the

4          prescription opioid manufacturers and

5          ESI, it gives us some better baseline to

6          begin the discovery process.

7                   I'm not suggesting that we need

8          the contracts related to insulin.  I

9          intended number 14 to be agreements with

10         the manufacturers of prescription

11         opioids related to prescription opioids.

12                   MS. VIEIRA:   And, again, this is

13         Olga for Express Scripts.

14                   This is why I suggested, as we

15         did yesterday very successfully, to go

16         through the categories of documents.

17         This is -- you've mentioned one out of

18         35 where you think the date range should

19         go back further and you have your

20         reasons for that.

21                   A lot of that has to do with your

22         proposed amended complaint that has

23         allegations about a conspiracy and RICO

24         and all sorts of things which may or may

25         not even happen in this case; and so

Page 35

1       there are other categories of

2       information such as claims data, for

3       example, which I believe you would

4       consider to be transactional and I don't

5       believe you think it needs to go all the

6       way back to 1996.  I could be wrong; but

7       to the extent your request calls for

8       some of that information that you would

9       agree with me does not need to go back

10      to 1996 off the top, then we can just go

11      through and have some sort of agreement

12      on here we're going to wait until the

13      amended complaint or here we definitely

14      want it.  Here we're okay with, you

15      know, the 2012 or even 2006, something

16      around that range.

17              And I think it just, it was very

18      productive yesterday to do this with

19      geography.  You know, we came to

20      agreements that were different from the

21      position you had originally taken and

22      different from the position that we had

23      originally taken and so that's why I

24      think this is, the meet and confer

25      process is to actually talk through

Page 36

```
 1          these issues, right?  We can cabin 14
 2          for now and start talking about some of
 3          the other categories of information and
 4          maybe there's agreements to be reached.
 5                    MR. FARRELL:   So two things:
 6          Number one is discovery ruling number 3
 7          takes transactional data back to January
 8          1, 1996 but that's not relevant because
 9          in this first set of initial discovery
10          that we served, we're not asking for
11          transactional data.  That is a separate
12          set of discovery that is the domain of
13          Peter Mougey.
14                    When we drafted this initial set
15          of discovery, what we're attempting to
16          do is define the parameters of the
17          relationships between ESI and the
18          manufacturers, the distributors, the
19          dispensers and the plan sponsors, and so
20          it's difficult for us to agree in a
21          vacuum whether or not it's burdensome or
22          convenient for you to go back so far
23          when you haven't even given us your
24          history of acquisitions and mergers,
25          whether or not you have predecessor
```

Page 37

```
 1          liability and what your corporate
 2          structure looks like.
 3                 It's difficult for us to agree to
 4          a temporal limitation when some of your
 5          responses that you are telling us
 6          yesterday on the call are limited to
 7          just a division of your corporation, not
 8          even a subsidiary or a sister
 9          corporation, but you've pigeon-holed
10          your responses into certain divisions
11          and certain services provided by your
12          corporation, so, and then the final
13          piece of it is you're pigeon-holing your
14          responses and arguments based on only
15          one of the defendants that we named.  So
16          perhaps there is some wisdom into
17          waiting for the motion to be granted;
18          but I can tell you that if the motion is
19          granted, we believe the baseline should
20          be January 1, 1996 and I don't see us
21          budging from that position.
22                 MS. VIEIRA:   Well, just to be
23          clear, the transactional deadline was
24          later moved from 1996 to 2006 to be
25          consistent with the ARCOS data, so
```

Page 38

```
 1          that's where I was getting that from;
 2          but, for example, your request, you
 3          request contracts with pharmacies,
 4          contracts with plan members or with
 5          clients.  Those sorts of things are
 6          included in here and I don't hear any
 7          discussion about why that would be
 8          relevant and why that would need to go
 9          back as far as the '90s.
10               I think that that would, those --
11          that's just an example of something that
12          would be related to your I would say
13          PBM, more PBM specific issues and I
14          can't imagine why you would need
15          contracts that would go so far back, so
16          that's kind of what I was trying to get
17          at is that talk through the issues that
18          are more specific here.  That's just one
19          example.  The contracts with pharmacy.
20               The contracts with -- well, I
21          don't think there are any contracts with
22          distributors, but that's another
23          request.
24               MR. FARRELL:   No, but see that's
25          the point.  There are contracts with
```

1      distributors.  It's just not, it's not a

2      particular division of your corporation

3      that you're willing to admit is involved

4      in this litigation.

5                  MS. VIEIRA:   No.  We have one

6      corporate entity, Express Scripts PBM,

7      that does not have contracts with any

8      distributors.  That is an entity, not a

9      division of a company.  That's an

10     entity.

11                 MR. FARRELL:   So Optum has

12     divisions within OptumRX that is the

13     mail-order pharmacy and Optum is

14     refusing to answer questions on behalf

15     of a division of OptumRX.

16                 MS. McGOWAN:  And Paul, I think

17     we -- this is Emily McGowan for OptumRX,

18     and we discussed this yesterday as well.

19     Our position is that the mail-order

20     pharmacy is not in the case until the

21     amendment ruling and so we are

22     responding on behalf of the PBM.

23                 If the complaints are amended and

24     the plaintiffs pursue allegations

25     against the mail-order pharmacy, then we

Page 40

```
 1          would have to consider those discovery
 2          requests in that light.
 3                  MR. BOONE:   And, Paul, this is
 4          Brian Boone for OptumRX.  I think we
 5          even went further than that and we said
 6          assuming that the mail-order pharmacy
 7          gets added, we think there is some
 8          contract between the mail-order pharmacy
 9          and a distributor or maybe multiple
10          distributors over time and we can have
11          that conversation then, so we gave you
12          that information even ahead of the
13          amendment ruling.
14                  MR. FARRELL:   I understand that.
15          I think that makes the point as to why I
16          believe it's relevant that we ask for
17          the contracts dating back to January '96
18          because we believe they're relevant.
19                  Olga on behalf of ESI is taking
20          the position that it's not relevant
21          because it's not in the case yet; so
22          having discussions about theoretical
23          rulings by the Court as the basis for
24          where we're willing to draw the temporal
25          line is just not very effective.
```

Page 41

1          We believe that the January 1,
2     1996 line in the sand is the starting
3     point for us to have these further
4     discussions and that's why -- and you
5     saw the email that I sent -- we cite to
6     numerous paragraphs in our amended
7     complaint that reference it.
8          So as of right now what you're
9     asking me to do is to limit the temporal
10    limitation based upon the old complaint
11    and ignoring the implications of the new
12    complaint as if that for some reason
13    would define the scope of discovery.
14          We don't believe that it does,
15    first of all.  We believe that discovery
16    is broader and allows us to go back and
17    to look at these things and the history
18    of the relationships between your
19    companies and the manufacturers of
20    prescription opioids.
21          SPECIAL MASTER COHEN:  This is
22    David.
23          MS. VIEIRA:  But --
24          SPECIAL MASTER COHEN:  My sense
25    is that you're not -- one second.

Page 42

1          My sense is that you're not going

2      to reach any agreement through, if this

3      is what you're doing, conferring and

4      meeting right now.  It almost sounds a

5      little bit like you're stumping or

6      talking to me, and I get that, but what

7      I'm hearing is that you're not going to

8      resolve this today.

9              MR. FARRELL:  Correct.

10             SPECIAL MASTER COHEN:  And

11     probably not before a motion to amend

12     the complaints is ruled on and maybe not

13     even then, and so I just wonder if

14     there's something else that might be

15     more productive that you could talk and

16     chat about.

17             MR. FARRELL:   Yes.  What I'd

18     like to do is I'd like to talk about the

19     process because Brian Boone has

20     mentioned again a Rule 37 motion and so

21     I circulated earlier today the

22     appointment order with the authority of

23     the Special Master as well as a footnote

24     that described the process that Judge

25     Polster himself wrote as to the process

Page 43

1              that we're accustomed to.
2                     We are in a position, and we have
3              put Optum on notice, that we believe
4              there is a substantial DR 22 violation
5              and we would like to tee that up; and so
6              if it requires a formal motion, I just
7              would like to know whether we need to
8              file it, whether we're going to continue
9              with the process that you have used in
10             the past that Judge Polster has adopted
11             or whether or not it makes more sense
12             for us to just file the motion directly
13             with Judge Polster.
14                    SPECIAL MASTER COHEN:  Well, and
15             what I saw was just filed and it was
16             that.  It was a notice.  I think it
17             makes sense for some time to be allowed
18             for the PBMs to respond which may be
19             anything from acknowledgment and here it
20             is to disagreement that they're required
21             to do that and in any event I would
22             imagine at the very least get an email
23             from them and we can go from there.
24                    Go ahead, Brian.
25                    MR. BOONE:  Yeah.  This is Brian

Page 44

1      Boone for OptumRX.

2              I was just about to say we just

3      got the letter this morning and we're

4      going to work up a response.  I haven't

5      even had a chance to read it all the way

6      through, to be honest with you, so I

7      don't think it's appropriate to talk

8      about it today.  We'll respond.  After

9      that if the parties have a dispute, we

10     can go from there.

11             SPECIAL MASTER COHEN:  Okay.  I

12     get that plaintiffs are anxious at the

13     bit to get going.  That's the nature of

14     plaintiffs and that they want to move

15     the litigation along.  I'm fine with all

16     of that but we have to go through the

17     process and as I've said now several

18     times, the process at the very least is

19     going to include allowing parties to

20     respond in writing informally or

21     formally and present their positions and

22     we'll run it up the flag pole as much as

23     we need to, but I'm certainly not going

24     to receive a letter from one side, get

25     the parties on the phone and then rule

Page 45

1         unless it's, you know, exigent.
2                 MR. FARRELL:   And, David, to be
3         clear, I've never, that's never been the
4         practice nor is that what I'm asking.
5                 What I'd -- when I sent the
6         letter today, the deficiency letter
7         today, what I was expecting was the
8         process that we've been using the past
9         six or seven years with responding back
10        to each other, and then bring -- just
11        like the footnote says, bringing it to
12        you, raising it, you offering insight
13        and then if we don't agree, we letter
14        brief it and then you issue a ruling.
15        Then if the parties want that ruling
16        placed in writing or formalized, then
17        you issue a formal discovery ruling
18        within three days and then it gets
19        appealed to Judge Polster.  That's the
20        process that I thought we were
21        following.
22                What I'm hearing Brian Boone
23        yesterday and today state is that he
24        wants us to formally follow the Rule 37
25        process and file a motion with the Judge

Page 46

1      directly.

2                MR. BOONE:   So Paul, this is

3      Brian Boone again for OptumRX.

4                What you just described as the

5      process is not what you did in this

6      case.  You copied Special Master Cohen

7      on the very first communication about DR

8      22.  So you didn't talk to us separate

9      from Special Master Cohen.  You included

10     him from the very beginning.

11               It seems like you all are trying

12     to shortcut all of these meet and confer

13     obligations and really what the

14     discovery rules require to accelerate

15     disputes without even giving us really a

16     chance to respond.  And I hear you,

17     Special Master Cohen, saying you're not

18     going to allow that.  We're going to

19     have an opportunity to respond.  And we

20     can meet and confer.

21               I'm going to send a letter back

22     to you at some point and then we can

23     talk about whether there's a dispute,

24     but I guess, Paul, I would ask you the

25     question are you saying that Rule 37

1      does not apply in these cases?

2              MR. FARRELL:   No.   What I'm

3      confused about, Brian, is whether or not

4      you intend to follow the process of

5      resolving discovery disputes that we've

6      been using with discovery rulings and

7      mandates from the court for six years or

8      whether or not you believe that this is

9      a process that should not go through

10     Special Master Cohen and instead should

11     be a formal Rule 37 filed directly with

12     Judge Polster.

13             SPECIAL MASTER COHEN:   Well, let

14     me jump in because a couple things that

15     I'll say, Brian.

16             One is, again, this has been

17     something that I think has evolved, and

18     when I say "something," that is that it

19     got to the point where the parties would

20     send letters like Paul just sent to you

21     to me just to keep me apprised of what's

22     going on.  I'm not going to respond to

23     that.  It's one party's position.  I get

24     to read it.  And then the defendants

25     respond.  I get to read it.  I begin to

Page 48

1      see whether there's something brewing or

2      not.

3           If eventually it requires my

4      attention, we would create, we created

5      something called a discovery agenda that

6      in the height of things was going out

7      once a week and it was a listing of

8      every single discovery dispute, every

9      single email and letter that had gone

10     back and forth between the parties that

11     any party wanted to include was attached

12     as an exhibit and once a week I would

13     hold a, have a discussion with the

14     parties and we would work our way

15     through it; and so what I understood

16     Paul's email to me to be was that.  It

17     was, hey, here's an issue, here's our

18     submission.  And my expectation was not

19     that we would have to talk about it at

20     all during this call, but that

21     eventually defendants would respond,

22     probably via email to me, perhaps with a

23     letter, perhaps with just an email,

24     whatever it is, and we go from there.

25           But the process is what it is.

Page 49

1     The process is that.  It's going to
2     happen that way.  If eventually it
3     climbs the ladder from email to position
4     letter to formal Rule 37 motion, then
5     fine, but it doesn't need to start
6     there.
7              And often doesn't need to start
8     there because it gets resolved one way
9     or another before that.  And the whole
10    function of that process is, A, to keep
11    things moving more quickly and, B, to
12    save the parties money, save all of your
13    clients money.  I know what it costs to
14    put together a motion to compel, a
15    response and a reply.  That's a lot of
16    money.
17             MR. BOONE:   Thanks, Special
18    Master Cohen.
19             SPECIAL MASTER COHEN:  Sure.
20             MR. BOONE:  Thanks for your
21    comment.  I guess all that I was saying
22    was, I mean, I'm like I have never had
23    any case in which the opposing party
24    went immediately to the special master
25    without meeting and conferring about an

Page 50

```
 1          issue and it seems like this is the
 2          practice with the PEC which seems out of
 3          bounds to me.
 4                  But in any case, all, I guess the
 5          other thing I'm saying is we can talk
 6          about the process, we can talk about a
 7          briefing schedule, again assuming
 8          there's a dispute at the end of all of
 9          this where we're never going to agree to
10          something less than our client is
11          entitled to under the Federal Rules,
12          including Rule 37, and again that's not
13          saying that we won't participate in the
14          process, and we can talk about the
15          process; but so far the process hasn't
16          played out in the way that Mr. Farrell
17          has suggested it should play out.
18                  SPECIAL MASTER COHEN:   Well, I
19          agree that running to me first early and
20          quickly isn't necessarily always the
21          best way to go and that perhaps more
22          discussion and back and forth between
23          the parties especially in the beginning
24          as they get to know each other, which
25          tends to take a longer period of time
```

Page 51

1    than it does later on when everybody

2    does know each other, might not be a bad

3    idea; but I have, I've described how I'm

4    kind of receiving that information.

5              I still want to get back though

6    to -- we keep getting away from it --

7    any specific discovery requests

8    regarding which you all might be able to

9    discuss something and resolve it.

10   You've made process on geographic.

11   You've staked out your positions on

12   temporal and it sounds like it needs to

13   wait a ruling at the very least before

14   we can get into the details, although

15   there may be some bits that you can talk

16   about.

17              Anything else?

18        MR. FARRELL:   From the

19   plaintiffs' perspective, the substance

20   of the individual responses are subject

21   to extensive deficiency letters that we

22   need to meet and confer with.

23              I don't anticipate those meet and

24   confers to be fruitful until we get

25   resolution of the motion to amend, until

Page 52

```
 1        we get resolution of the temporal
 2        limitation.  I do think that the DR 22
 3        is something that's independent of all
 4        that and it needs to take its own
 5        process.
 6              And, again, I want to make this
 7        as perfectly clear as I can:  I'm not
 8        running to the Special Master because I
 9        never lose and I think I'm going to win.
10        I'm going to the Special Master because
11        I want clarification that we're going to
12        follow the process that we've been using
13        for six years, and that the lawyers for
14        OptumRX have said yesterday and today
15        that they're not, that they are not
16        interested in abiding by the prior
17        procedural rulings and they want to
18        utilize Rule 37.
19              So the reason DR 22 is being
20        mentioned is because it is ripening and
21        the process is going to be either we
22        file a direct motion under Rule 37 or we
23        come and we use the process that has
24        been used for six years in this
25        litigation.
```

Page 53

```
 1              I prefer to use the process, but
 2         if the defendants are going to make the
 3         point that until they're told by Judge
 4         Polster that this is the process that
 5         we're going to use, we will go see Judge
 6         Polster and ask him that question; but
 7         as you can see right off the bat, we're
 8         already manipulating words and taking
 9         strong positions that is disappointing
10         and that what we need is we need some
11         clarity on what the process is and we
12         will abide by it as we always have.
13              SPECIAL MASTER COHEN:  I hear the
14         defendants saying -- this is David.
15              I hear the defendants saying only
16         that they are not giving up their right
17         to file a formal Rule 37 motion and that
18         they're willing to go through the
19         process and this is going to sort itself
20         out as we move forward; so with regard
21         to the, in particular, the DR 22 letter
22         that you just sent, whether they copy me
23         or not, the defendants will respond to
24         you, they'll either say you're right,
25         here's the stuff you want or you're
```

Page 54

1         wrong, we're not going to give it to

2         you.  You can bring it to me and I'll

3         tell you.  Either I'll say look, here's

4         what I think it is.  I'm ruling this.

5         If you, either side objects, tell me to

6         put it in writing and we'll take it to

7         the court and it will be, if necessary,

8         in the form of a motion to compel; but

9         let's, you know, rachet it down, take

10        our time.  It will resolve itself.  It

11        will work out.

12                MR. BOONE:   Thank you, Special

13        Master Cohen.  This is Brian Boone.

14                Just one thing to add, just to be

15        clear, I'm saying that Rule 37 and all

16        the other rules apply to all the

17        parties, not just to us, not just to the

18        plaintiffs, to everybody and that we're

19        all entitled to whatever rights we have

20        under those rules and we're going to

21        preserve those rights.  Again, we're

22        going to talk through the process but we

23        still have those rights just like the

24        plaintiffs do.

25                MR. WEINBERGER:   This is Pete

Page 55

 1          Weinberger.

 2                  I just want to add one other

 3          thing because the impression that I'm

 4          hearing is in terms of how we've used

 5          this for the last six-and-a-half years

 6          is that only the plaintiffs have used

 7          this process to involve Special Master

 8          Cohen, when in fact every one of the

 9          other 15 or so defendants have, in

10          protecting their clients rights,

11          understood the Appointment Order and the

12          scope of the responsibilities and duties

13          and powers of the Special Master to do

14          exactly what it is that we said has been

15          done and what we did in this particular

16          instance, and, you know, we hear Special

17          Master when he says perhaps at this

18          point it was a bit too quick or maybe

19          premature; but any suggestion,

20          Mr. Boone, that this is something that

21          only the plaintiffs initiate or in some

22          ways take advantage of is inappropriate,

23          improper and not true and I would

24          suggest that you contact the many

25          defense counsel who have been in this

Page 56

1          case for six-and-a-half years and ask
2          them whether what I just said is true.
3                    MR. BOONE:    Peter, this is Brian
4          Boone.
5                    I didn't say anything to the
6          contrary of what you just said.  I'm not
7          talking about what other defendants have
8          done or not done in other tracks.  We
9          haven't been in other tracks, which is
10         why, again, Judge Polster said that
11         previous rulings don't technically apply
12         to us and we're going to hash all of
13         that out; but I'm not suggesting, I
14         haven't said that only the plaintiffs
15         have used the process that you and Paul
16         have described.  I don't think I ever
17         even suggested that.
18                   SPECIAL MASTER COHEN:   So I'm
19         not sure there is anything else I can do
20         today to help you all or to educate
21         myself unless somebody else again wants
22         to point to a specific dispute that they
23         think that they can work through.
24                   MR. FARRELL:   And the only thing
25         that I would ask is that, Optum, can you

Page 57

1        give us a time frame in which you expect

2        to respond to our letter of today?

3              MR. BOONE:   We can give some

4        thought to it, Paul, and I'll send an

5        email by the end of today.  Does that

6        work?

7              This is Brian Boone for OptumRX

8        by the way.

9              MR. FARRELL:   Yeah.  It doesn't

10       need to be by the end of the day.  I

11       know I put forth a lot for you to think

12       about.  I just, I don't want this to be

13       an open-ended.  I'd like us to figure

14       out some time frame in which we're

15       either going to figure out a resolution

16       to this or we're going to present formal

17       position papers.

18             MR. BOONE:   Yeah.  Understood.

19       I wasn't saying that we would respond by

20       the end of the day.  I was saying that I

21       could send an email telling you when we

22       would respond, and I would send that

23       email by the end of the day; but

24       understood.

25             MR. FARRELL:   That's fine.

Page 58

1     That's all I have, Special Master Cohen.

2     This is Paul Farrell.

3           SPECIAL MASTER COHEN:  Anybody

4     else?

5           MR. MOUGEY:  Yeah.  This is

6     Peter Mougey.

7           I just would like to give out a

8     couple thoughts on, for everybody to

9     think about on how to proceed.

10           My letter again was attempting to

11     lay out a proposed structure on what I

12     would consider to be a highly likely

13     thought that positions aren't going to

14     be agreed to for all the parties on

15     every single piece and all I would like

16     to do is keep on track and keep on

17     schedule and I'm sure that we all would

18     like to keep on track and keep on

19     schedule with discovery closing and as

20     we get into later in the year with

21     depositions, that production is not

22     coming out right on top of depositions

23     from either side and that we're all

24     sticking to the schedule; and in order

25     to do that, I think we need to get

Page 59

1     started as soon as we can with resolving

2     disputes.

3            I'm not suggesting the time is

4     right now.  I'm not suggesting the time

5     is tomorrow or next week, but I would

6     like to ask that we start looking at

7     schedules to address these issues later

8     in the month and let everything ripen.

9     Let's have the, whether it be, you know,

10    letters, briefs, whatever track or

11    whatever position that we're, or

12    whatever process we're going to adopt,

13    which quite frankly is what's already

14    been laid out by the Court is, makes

15    sense to me.

16           Let's go ahead and set a

17    schedule.  Whether that's today or next

18    week, next week is fine, but I do think

19    we need to start looking at what those

20    schedules need to be so we can hold our

21    dates.  I think it's that simple.  And

22    that's all I'm trying to do with the

23    letter that we laid out is have

24    everybody start to look at what our

25    dates are, hold the dates for, I'm going

Page 60

```
 1        to call them hearings, whether those be
 2        Zoom or in person or whatever, however
 3        we do them, or a combination of the two;
 4        but that we start to hold dates because
 5        if we wait to look at this until late
 6        this month/early March, this is going to
 7        end up spilling over into April when we
 8        get everybody with clear dates.
 9              So all I'm asking to do is we
10        hold some dates, set some things aside.
11        If we need them, great.  If not, that's
12        even better, but a little planning in
13        the short term I think is going to help
14        us all have a much more organized
15        litigation process over the coming year.
16              MR. BOONE:  And I --
17              SPECIAL MASTER COHEN:   I
18        appreciate looking forward -- I'm sorry,
19        Brian.  This is David.
20              I appreciate your making that
21        suggestion.  I think that we will have
22        to address that.  You know, how are we
23        going to deal with the inevitable
24        disputes, how often are we going to
25        meet, where are we going to meet and I
```

Page 61

```
 1          agree that we should all think about

 2          that, and I know I will.

 3                    Let me ask a question:  Do the

 4          plaintiffs think -- since that's what we

 5          seem to be talking about at the moment.

 6                    Do the plaintiffs believe that

 7          there are any disputes that are

 8          intractable and therefore a position

 9          letter is something that they can put

10          together now?  And you know what?  You

11          really don't even have to answer that.

12          If the answer is yes, then do it.  If

13          the answer is no or if you really think

14          that you have to wait for the motion to

15          amend to be ruled on, then fine; but if

16          there are some issues that the belief,

17          the good faith belief is that meeting

18          and conferring will not resolve them and

19          it doesn't need to wait on that ruling,

20          then get your position letter written

21          and let's get going.

22                    MR. BOONE:  Special Master

23          Cohen, this is Brian Boone for OptumRX.

24                    Before you made your comment, I

25          was going to say I think the premise of
```

Page 62

1      Peter's letter, I think he even said it

2      explicitly, was that the meet and confer

3      process had not proven fruitful.

4            We've had exactly one call

5      yesterday about all of this and so I

6      think we should let the meet and confer

7      process play out a little more before we

8      start drawing those hard conclusions

9      about the fruitfulness or

10      ineffectiveness of talking about these

11      issues.

12            SPECIAL MASTER COHEN:  Well, I

13      agree with that.  It certainly needs to

14      be given a chance.

15            MR. MOUGEY:   I think -- this is

16      Pete Mougey.  I think we all agree that

17      it needs to be given a chance but this

18      is the second or third time they've said

19      we've had one meet and confer and I just

20      don't think that -- again, that's not

21      accurate.

22            We've had meet and confers over

23      data which spill over into these same

24      issues on temporal scope, on the global

25      nature and we've had multiple meet and

Page 63

1    confers; so again I'm not saying that
2    that process shouldn't run its course
3    and that we shouldn't continue talking
4    because I think we should continue
5    talking for the next year.  It makes
6    sense.
7           However, this isn't one meet and
8    confer, as Brian suggests; it's not one
9    letter, as Brian suggests.  It's been
10   multiple meet and confers and some of
11   this even spills into we were
12   negotiating the CMO; and some of these
13   conversations go back to pre holidays,
14   early December, and have now, are now
15   two months in and we're getting the same
16   answers and so I disagree this is
17   somehow brand new this week, but do
18   agree that we should continue to talk.
19   And all I'm asking is over the next week
20   or two can we start setting aside some
21   dates to handle the inevitable, the
22   inevitable disagreements over what
23   discovery is for both sides.  And it's
24   that simple.  So this is not something
25   that's just popped up over the last few

Page 64

1      days that we're all of a sudden just
2      unleashing the hounds on having these
3      conversations.
4            These conversations have been
5      going on the same, some of the same
6      themes on the defense side and the
7      plaintiffs side that we're butting heads
8      and it's causing us problems with moving
9      forward.  That spills into the data
10     conversations.  It spilled into -- it
11     came from the CMO conversations on the
12     call we had with you in early, I think
13     it was early to mid December if I
14     remember correctly, so this, these have
15     now going on almost two months old.
16           SPECIAL MASTER COHEN:  Well,
17     look, I appreciate that you will all
18     continue to meet and confer.
19           Until I have something to chew
20     on, and so far I don't.  Until I have
21     positions from both sides and questions
22     that I can ask and understandings of the
23     issue, it feels a little premature to
24     set a date to have a hearing when there
25     is no issue ripe to have a hearing on.

Page 65

1          Now, having said that, of course
2     there will be issues, of course we
3     should think about setting aside time
4     for the issues that will surely arise.
5     I get that.  I agree with it.  But right
6     now I'm just waiting to get my hands on
7     something.  I don't have anything in my
8     hands yet.  So either tee it up or meet
9     and confer so that you can tee it up and
10    then we'll go from there.
11         MR. FARRELL:   This is Paul
12    Farrell.
13         What my plan is is to give ESI
14    some time to respond to the deficiency
15    letter that we sent and then to start
16    having substantive discussions with
17    them.
18         Optum is probably four or five
19    days behind that.  Their deficiency
20    letter just went out yesterday maybe and
21    so they'll probably need a little bit
22    more time to read through what we think
23    the faults are in their responses and so
24    I would imagine that process will
25    probably take at least the rest of this

Page 66

1      this week and next week before we can

2      tee up the substantive issues.

3                The temporal scope I think needs

4      to wait on the motion to amend to be

5      ruled upon and then it will be fairly

6      quick to ripen that up; and so what

7      we'll do is we'll begin building an

8      agenda for you when we believe it's time

9      to start formal position papers; and so

10     what Peter's suggesting is that it's

11     been useful for us in the past to have

12     conversations like this with you, and

13     I'm open to whatever it is the PBMs and

14     Special Master wants to do for further

15     discussions.

16                SPECIAL MASTER COHEN:   Okay.

17     And, you know, as far -- I'll make one

18     last comment and then I think we should

19     all hang up and that is that if there is

20     agreement as to a late temporal

21     limitation as to a certain request.

22     Okay?  I'm just making this up:  Let's

23     say that on request 79 the PBMs both

24     agree that starting in 2006 they should

25     produce documents; going back to 1996 is

Page 67

```
 1          not appropriate and you guys are
 2          ossified about that but it might depend
 3          on a motion to amend, fine.
 4                  What that means is there's
 5          agreement.  There's agreement on 2006
 6          and later.  So do that unless there's a
 7          reason you shouldn't.  Unless it would
 8          be very inefficient to do it for that
 9          period of time and then go back and do
10          it for the earlier period of time if
11          things change.
12                  But there is some level of
13          agreement on that issue, so start
14          producing.  Again, roll stuff out.
15          Start the process, and that goes both
16          ways.  That example was because that's
17          the one in mind.  But same goes for
18          plaintiffs.  To the extent there is an
19          understanding agreement as to what is
20          properly produced, do it.
21                  Okay, everybody, thank you for
22          your time and --
23                  MR. SHKOLNIK:  Special Master,
24          just on that --
25                  SPECIAL MASTER COHEN:  -- I look
```

Page 68

1          to forward --

2                    MR. SHKOLNIK:    Special Master

3          David, this is Hunter.

4                    I just want to point out that I

5          think for at least from the plaintiffs

6          standpoint, we have been rolling out --

7          we're providing, so we're not holding

8          back, we're not fighting with them on

9          this issue.  It really hasn't come up

10         but we'll meet and confer with them if

11         there's issues with what we're

12         producing.  Thank you.

13                   SPECIAL MASTER COHEN:   Okay,

14         everybody, thank you for your time and

15         have a good rest of the day.

16                        -   -   -   -

17     (Proceedings concluded at 3:12 p.m.)

18                        -   -   -   -

19

20

21

22

23

24

25

Page 69

C E R T I F I C A T E

I, Pamela S. Greenfield, a Notary Public
within and for the State of Ohio, do hereby
certify that I attended the foregoing
proceedings in their entirety, that I wrote the
same in stenotypy, and that this is a true and
correct transcript of my stenotype notes.

IN WITNESS WHEREOF, I have hereunto set
my hand and seal of office, at Cleveland, Ohio,
this 15th day of February, 2024.

Pamela S. Greenfield, RPR, RMR, CRR, RDR
Notary Public, State of Ohio
My commission expires July 2, 2028

| & | | |
|---|---|---|
| **&** 2:3,6,14 3:9 3:15 | | |

**0**

**00907** 3:6

**1**

**1** 8:2,14,17 9:12,20 11:25 12:20 36:8 37:20 41:1 69:1
**10** 69:10
**1001** 2:7
**10010** 3:24
**101** 2:11
**10th** 3:20
**11** 69:11
**1120** 3:11
**11th** 13:3
**12** 1:8 69:12
**13** 69:13
**1302** 3:5
**14** 1:14 30:17 32:4,17 34:2,9 36:1 69:14
**15** 55:9
**15910** 2:15
**15th** 3:17 69:13
**16** 69:16
**1600** 2:15
**17** 69:17
**1700** 2:8
**1701198993** 31:4

**17th** 31:5
**18** 69:18
**19** 69:19
**1996** 10:16 11:25 13:9,15 14:2,10 16:11 17:18 27:8 29:6 35:6,10 36:8 37:20,24 41:2 66:25
**1997** 31:5,6
**1st** 12:25 31:6

**2**

**2** 7:18 8:5,17 9:20 10:9 12:12,18 28:1 28:4 32:1 69:2 69:17
**20** 69:20
**2004** 29:21
**2006** 13:17,20 14:9 15:13 17:19 30:24 35:15 37:24 66:24 67:5
**2010** 14:9
**2012** 10:19 15:16,21 30:24 35:15
**2015** 14:6
**2018** 15:11,14
**2023** 6:24
**2024** 1:14 15:15 69:13

**2028** 69:17
**21** 69:21
**22** 18:21,25 32:18 43:4 46:8 52:2,19 53:21 69:22
**22nd** 3:23
**23** 69:23
**24** 69:24
**25** 4:23 69:25
**25701** 2:5
**25705** 69:16
**2601** 3:16
**28** 2:18 9:2,22 9:23
**2804** 1:5
**28203-6818** 3:12
**29464** 2:19
**29th** 6:24
**2:00** 1:15

**3**

**3** 7:19 10:9 12:12,18 28:10 29:16 32:1 36:6 69:3
**300** 3:11
**316** 2:22
**32502** 2:22
**33131** 3:17
**35** 6:25 8:11 27:6 28:5 34:18
**37** 24:22 42:20 45:24 46:25

47:11 49:4 50:12 52:18,22 53:17 54:15
**3:12** 68:17

**4**

**4** 69:4
**422** 2:4
**44114** 2:8
**485** 31:13

**5**

**5** 69:5
**51** 3:23

**6**

**6** 69:6
**6464931** 1:24
**693** 7:18

**7**

**7** 69:7
**762** 7:20
**78620** 2:12
**79** 66:23

**8**

**8** 69:8
**865** 3:20

**9**

**9** 69:9
**90017** 3:21
**90s** 38:9
**91436** 2:16
**96** 40:17
**98** 30:15

[abide - aside]                                                                Page 2

| a | | | |
|---|---|---|---|
| **abide** 53:12 | **admit** 39:3 | **akin** 10:11 | **answers** 63:16 |
| **abiding** 52:16 | **adopt** 59:12 | **allegations** | **anticipate** |
| **able** 51:8 | **adopted** 43:10 | 10:11 11:20 | 51:23 |
| **abuse** 9:5 | **advantage** | 16:2,8 34:23 | **anxious** 44:12 |
| **accelerate** | 55:22 | 39:24 | **anybody** 58:3 |
| 46:14 | **advisory** 18:16 | **allege** 11:14 | **appealed** 45:19 |
| **accept** 24:7 | **afternoon** 6:18 | **allow** 11:13 | **appearances** |
| **accessibility** | **agenda** 48:5 | 46:18 | 2:1 3:1 |
| 15:4 28:16 | 66:8 | **allowed** 43:17 | **applies** 18:22 |
| **accessible** | **ago** 5:11 | **allowing** 44:19 | 18:23 19:2 |
| 14:23 | **agree** 17:25 | **allows** 29:16,18 | **apply** 12:12 |
| **accurate** 62:21 | 19:11 20:17 | 41:16 | 33:6 47:1 |
| **accustomed** | 26:9 35:9 | **alston** 3:9 | 54:16 56:11 |
| 22:3,9 43:1 | 36:20 37:3 | **alston.com** | **appointment** |
| **acknowledg...** | 45:13 50:9,19 | 3:12,13 | 42:22 55:11 |
| 43:19 | 61:1 62:13,16 | **amend** 11:9 | **appreciate** |
| **acquired** 29:3,9 | 63:18 65:5 | 17:2 19:12 | 60:18,20 64:17 |
| **acquisitions** | 66:24 | 42:11 51:25 | **apprised** 47:21 |
| 28:23 29:1 | **agreed** 8:1,18 | 61:15 66:4 | **approach** 17:8 |
| 36:24 | 9:18 58:14 | 67:3 | **appropriate** |
| **actionable** 29:8 | **agreeing** 16:10 | **amended** 16:1 | 6:5 15:9 16:9 |
| **active** 12:15 | **agreement** 5:14 | 16:3 34:22 | 44:7 67:1 |
| **actually** 13:14 | 8:12,13,15 | 35:13 39:23 | **april** 31:5 60:7 |
| 19:17 35:25 | 33:1 35:11 | 41:6 | **arcos** 37:25 |
| **add** 24:14 | 42:2 66:20 | **amendment** | **area** 9:17 |
| 54:14 55:2 | 67:5,5,13,19 | 11:13 39:21 | **areas** 8:24 |
| **added** 40:7 | **agreements** | 40:13 | **argue** 10:21 |
| **additional** | 27:17 30:20 | **amendments** | 11:8 |
| 15:20 | 32:5 33:20 | 19:1 | **argument** |
| **address** 59:7 | 34:9 35:20 | **amerisourceb...** | 28:15 32:8 |
| 60:22 | 36:4 | 30:5,14 | **arguments** |
| **addressed** 7:16 | **ahead** 20:20 | **analysis** 19:13 | 37:14 |
| **addressing** | 40:12 43:24 | **angeles** 3:21 | **arms** 33:23 |
| 4:25 | 59:16 | **answer** 39:14 | **aside** 13:13 |
| | | 61:11,12,13 | 15:1 60:10 |

**[aside - briefs]**

63:20 65:3
asked  11:1 29:4
30:18
asking  5:20
11:24 28:25
31:18 32:5
36:10 41:9
45:4 60:9
63:19
assessment
29:17
associated
15:23
assuming  40:6
50:7
attached  48:11
attempted  7:13
attempting
36:15 58:10
attended  69:7
attention  11:5
48:4
attest  23:23
attorneys  4:22
authority  42:22
availability
28:15
available  14:22
avendia  3:5
avenue  2:7 3:23
await  17:1

**b**

b  49:11
back  9:24
11:23 13:15

14:2,10 15:19
15:20 17:14
27:14 29:18
30:7,15,23
31:10 32:20
34:19 35:6,9
36:7,22 38:9
38:15 40:17
41:16 45:9
46:21 48:10
50:22 51:5
63:13 66:25
67:9 68:8
bad  51:2
baron  2:14
baronbudd.c...
2:16
based  32:2,16
37:14 41:10
baseline  10:14
11:24 28:12,13
29:15 31:9,19
31:23 34:5
37:19
basing  32:9
basis  17:16
31:18 40:23
bat  53:7
bates  31:2
battles  23:2
baylen  2:22
bayshore  3:16
beeps  4:5
beginning  5:10
32:9 46:10

50:23
behalf  2:2 3:3,8
3:14 39:14,22
40:19
belief  61:16,17
belies  30:24
believe  11:18
19:25 29:8
31:9,11,14
35:3,5 37:19
40:16,18 41:1
41:14,15 43:3
47:8 61:6 66:8
bellwether  3:3
8:8 13:4
bellwethers
23:22
benefit  7:7
best  50:21
better  8:20
34:5 60:12
bigger  27:11
binding  13:7
18:4,13 19:5
bird  3:9
bit  6:2 7:11
19:5,17 42:5
44:13 55:18
65:21
bits  51:15
blanket  13:11
17:18
boone  3:9
20:14,21,22
21:3,14 23:15

23:15 24:14
25:8 40:3,4
42:19 43:25
44:1 45:22
46:2,3 49:17
49:20 54:12,13
55:20 56:3,4
57:3,7,18
60:16 61:22,23
boone's  27:24
boulevard  2:15
2:18
bound  12:23
13:2,5
bounds  50:3
brand  63:17
brewing  48:1
brian  3:9 20:20
20:22 21:7
23:15,18 24:7
25:18 27:24
40:4 42:19
43:24,25 45:22
46:3 47:3,15
54:13 56:3
57:7 60:19
61:23 63:8,9
brian.boone
3:12
bridgeside  2:18
brief  24:21
45:14
briefing  50:7
briefs  59:10

**bring** 11:5
  45:10 54:2
**bringing** 45:11
**broader** 41:16
**broadly** 33:22
**brought** 11:20
**bucket** 27:9,12
**budd** 2:14
**budging** 37:21
**building** 66:7
**burden** 15:4,18
  28:6
**burdensome**
  36:21
**butting** 64:7

**c**

**c** 3:10 4:1 69:3
  69:3
**cabin** 36:1
**california** 2:16
  3:21
**call** 21:21 22:2
  37:6 48:20
  60:1 62:4
  64:12
**called** 25:20
  27:10 48:5
**calls** 35:7
**cardinal** 30:5
**carolina** 3:12
**case** 10:10
  13:12 17:16,16
  19:23 26:19
  29:23,24 30:1
  34:25 39:20

40:21 46:6
49:23 50:4
56:1
**cases** 12:20
  13:23 32:1
  47:1
**categories** 17:4
  17:11,17 34:16
  35:1 36:3
**categorize**
  16:23 27:18
**category** 8:2,5
  8:14,17,17
  9:12,20,20
  16:6
**causing** 64:8
**certain** 16:2
  18:2 37:10,11
  66:21
**certainly** 14:9
  18:15 22:10
  44:23 62:13
**certify** 69:7
**chance** 22:16
  25:10 44:5
  46:16 62:14,17
**change** 19:13
  67:11
**characterize**
  7:25
**charlotte** 3:12
**chat** 42:16
**chest** 23:7
**chew** 64:19

**chronological**
  30:19
**cicala** 2:10,10
**cicalapllc.com**
  2:12,13
**circulated**
  42:21
**cite** 41:5
**city** 3:3
**claim** 11:13
**claims** 11:15
  15:7,7,23 35:2
**clarification**
  52:11
**clarifications**
  18:25
**clarify** 20:23
**clarity** 53:11
**clear** 18:6 19:1
  21:6 25:13
  37:23 45:3
  52:7 54:15
  60:8
**clearly** 16:16
**cleveland** 2:8
  69:12
**client** 9:17
  50:10
**clients** 26:1
  38:5 49:13
  55:10
**climbs** 49:3
**close** 5:7
**closer** 27:16

**closing** 58:19
**cmo** 63:12
  64:11
**cohen** 1:12 4:3
  4:4 6:21 17:20
  20:15 21:1,4
  22:8 24:5,15
  25:6,12 28:2
  31:21 33:4
  41:21,24 42:10
  43:14 44:11
  46:6,9,17
  47:10,13 49:18
  49:19 50:18
  53:13 54:13
  55:8 56:18
  58:1,3 60:17
  61:23 62:12
  64:16 66:16
  67:25 68:13
**cole** 3:22
**collectively** 7:2
**college** 2:11
**combination**
  60:3
**combined** 7:6
**come** 5:13 25:1
  29:18 52:23
  68:9
**comes** 15:6
**comfortable**
  26:6,18
**coming** 58:22
  60:15

**[comment - date]**

**comment** 12:3 14:16 17:21 22:21,23,25 27:24 49:21 61:24 66:18

**comments** 14:13

**commission** 69:17

**communication** 46:7

**companies** 41:19

**company** 14:6 39:9

**compel** 24:21 49:14 54:8

**complaint** 11:19 34:22 35:13 41:7,10 41:12

**complaints** 16:1,3 39:23 42:12

**complex** 28:19

**complicating** 11:7

**component** 8:18

**comprise** 20:1

**concede** 11:16

**concessions** 27:17

**conclude** 22:15

**concluded** 68:17

**conclusions** 62:8

**conduct** 29:7,8

**confer** 11:1 13:24 14:25 22:5,25 24:25 35:24 46:12,20 51:22 62:2,6 62:19 63:8 64:18 65:9 68:10

**conference** 1:11

**conferring** 23:9 42:3 49:25 61:18

**confers** 51:24 62:22 63:1,10

**confused** 47:3

**connection** 31:24

**conrod** 2:11

**consider** 35:4 40:1 58:12

**consistent** 37:25

**conspiracy** 34:23

**contact** 55:24

**continue** 19:15 43:8 63:3,4,18 64:18

**continued** 3:1

**contract** 29:5 31:1 40:8

**contracts** 31:7 32:22 33:8,11 33:14 34:8 38:3,4,15,19,20 38:21,25 39:7 40:17

**contractual** 11:21 30:20 32:5

**contrary** 56:6

**controversial** 10:3,5

**convenient** 36:22

**conversation** 23:5 25:9 40:11

**conversations** 63:13 64:3,4 64:10,11 66:12

**copied** 46:6

**copy** 9:6 53:22

**corporate** 37:1 39:6

**corporation** 37:7,9,12 39:2

**correct** 20:25 21:2 42:9 69:10

**correctly** 64:14

**costs** 49:13

**counsel** 2:1 3:1 3:19,23 55:25

**county** 14:5

**couple** 20:23 47:14 58:8

**course** 4:10 24:23 63:2 65:1,2

**court** 1:1 4:10 10:12 11:12 17:6,7,24 18:17 27:5 28:11 40:23 47:7 54:7 59:14

**court's** 15:10 17:1

**create** 48:4

**created** 48:4

**crr** 1:20 69:16

**current** 13:22

**currently** 6:24 15:8 19:23 28:22

**d**

**d** 3:9 4:1

**data** 14:22 30:6 33:20 35:2 36:7,11 37:25 62:23 64:9

**date** 10:22 15:2 15:17 31:23 32:9,11 34:18 64:24

**dated** 31:4
**dates** 33:6
59:21,25,25
60:4,8,10
63:21
**dating** 11:23
40:17
**david** 1:12 4:4
11:2 17:21
26:11 31:22
41:22 45:2
53:14 60:19
68:3
**day** 57:10,20
57:23 68:15
69:13
**days** 45:18 64:1
65:19
**de** 3:5
**deadline** 17:19
37:23
**deal** 60:23
**debate** 31:15
**december** 6:24
12:22,25 13:3
63:14 64:13
**decided** 17:3
26:12
**declaration**
28:11
**defendant** 3:8
3:14 7:7
**defendants**
5:21,24,25 7:1
9:13 12:2,16

13:4 18:24
19:2 28:14
30:18 37:15
47:24 48:21
53:2,14,15,23
55:9 56:7
**defense** 55:25
64:6
**deficiency** 45:6
51:21 65:14,19
**define** 33:23
34:2 36:16
41:13
**definitely** 35:13
**delta** 31:3,3
**denied** 11:10
**depend** 67:2
**depending** 9:20
19:11
**depositions**
58:21,22
**described**
42:24 46:4
51:3 56:16
**despite** 11:14
**details** 51:14
**determined** 8:7
10:13
**difference**
10:25
**different** 16:12
16:14 17:11,12
30:7 32:19
35:20,22

**differentiating**
4:14
**difficult** 36:20
37:3
**digest** 21:13
**diligent** 29:20
**direct** 31:7
52:22
**directed** 6:10
**directly** 43:12
46:1 47:11
**disagree** 19:22
63:16
**disagreement**
8:12 43:20
**disagreements**
63:22
**disagrees** 20:7
**disappointing**
53:9
**disclosed** 30:9
**discovery** 5:22
6:1,25 7:6,8,18
7:19 8:2 10:9
12:11 13:10,15
13:17,19 17:24
18:9,11,22
28:10,24 29:16
31:1 34:6 36:6
36:9,12,15
40:1 41:13,15
45:17 46:14
47:5,6 48:5,8
51:7 58:19
63:23

**discuss** 51:9
**discussed** 15:24
39:18
**discussing** 6:8
**discussion** 6:9
7:21 9:25
28:17 38:7
48:13 50:22
**discussions**
6:23 7:14 8:9
10:23 16:25
18:25 40:22
41:4 65:16
66:15
**dispensers**
36:19
**dispute** 15:8
24:19 25:4,21
44:9 46:23
48:8 50:8
56:22
**disputes** 13:4
46:15 47:5
59:2 60:24
61:7
**distributor**
29:24 40:9
**distributors**
15:12 36:18
38:22 39:1,8
40:10
**district** 1:1,2
**diversion** 9:5
**division** 1:3
37:7 39:2,9,15

**[divisions - express]**

| | e | engaged 25:19 | 60:8 67:21 |
|---|---|---|---|

**divisions** 37:10
　39:12
**docket** 7:18,19
**doctors** 33:18
**document** 1:7
　7:5 9:21 12:20
　17:13,15
**documents**
　8:20 9:9 14:21
　15:5 16:7,7,13
　17:12,17 29:11
　29:14,21 30:14
　31:12 32:16,21
　32:24 34:16
　66:25
**doing** 4:18 5:2
　42:3
**domain** 36:12
**dominos** 7:12
**dr** 12:12,18
　18:21,25 32:18
　43:4 46:7 52:2
　52:19 53:21
**drafted** 36:14
**draw** 40:24
**drawing** 62:8
**dripping** 2:12
**drive** 3:16
**drug** 32:3,6,11
**drugs** 32:23
**dunning** 2:21
**duties** 55:12

**e**

**e** 2:18 4:1,1
　69:3,3
**earlier** 16:22
　42:21 67:10
**early** 50:19
　60:6 63:14
　64:12,13
**easier** 25:25
**eastern** 1:3
**easy** 7:23
**educate** 56:20
**effective** 40:25
**efficient** 19:18
　19:20 31:15
**either** 52:21
　53:24 54:3,5
　57:15 58:23
　65:8
**elsner** 2:18
**email** 21:10
　41:5 43:22
　48:9,16,22,23
　49:3 57:5,21
　57:23
**emails** 5:1
**emanuel** 3:15
**emily** 3:10 12:4
　39:17
**emily.mcgow...**
　3:13
**encino** 2:16
**ended** 57:13
**engage** 11:4

**engaged** 25:19
　29:6,7
**entered** 32:22
**entirely** 18:6
**entirety** 69:8
**entities** 13:22
**entitled** 50:11
　54:19
**entity** 39:6,8,10
**epidemic** 9:4
**esi** 7:2 29:3,9
　32:16,21 33:1
　33:24 34:5
　36:17 40:19
　65:13
**esi's** 29:11
　33:14
**especially**
　50:23
**esq** 2:4,7,10,11
　2:14,18,21,21
　3:5,9,10,16,19
　3:22
**essence** 24:10
**essentially** 22:4
　26:16
**event** 26:19
　43:21
**eventually** 8:19
　22:15 25:24
　48:3,21 49:2
**everybody** 4:4
　22:16 26:5
　51:1 54:18
　58:8 59:24

**e**
60:8 67:21
　68:14
**evidence** 31:7
**evolved** 47:17
**exactly** 29:22
　29:23,25 55:14
　62:4
**examined** 30:9
**example** 8:25
　18:7,20 29:3
　30:2,4 33:9
　35:3 38:2,11
　38:19 67:16
**exclusively**
　33:2
**exhibit** 48:12
**exigent** 45:1
**exist** 15:18
**existence** 28:20
**expect** 22:12
　57:1
**expectation**
　48:18
**expecting** 45:7
**expensive** 26:1
**expires** 69:17
**explain** 22:2
**explained**
　13:23 14:4
　28:9
**explicitly** 62:2
**express** 3:14
　12:8 14:17,19
　14:20 27:1
　31:1,8 34:13

**[express - geographical]**                                    Page 8

39:6

**extensive** 51:21

**extent** 5:12
8:19 15:25
18:1 35:7
67:18

**f**

**f** 69:3

**face** 12:19

**fact** 9:8 13:13
13:16 23:23
55:8

**factor** 11:8
28:7 29:11

**fair** 7:24 22:17
25:17 32:15

**fairly** 66:5

**faith** 24:25
61:17

**fall** 7:12 8:4
16:7 17:4 27:7

**far** 27:14 36:22
38:9,15 50:15
64:20 66:17

**farrell** 2:3,4
6:14,17,19,22
27:21,22 28:4
30:4 32:14
33:10 36:5
38:24 39:11
40:14 42:9,17
45:2 47:2
50:16 51:18
56:24 57:9,25
58:2 65:11,12

**farrell's** 23:7

**farrellfuller.c...**
2:5

**faults** 65:23

**february** 1:14
69:13

**federal** 50:11

**feel** 22:11

**feeling** 5:5

**feels** 64:23

**fighting** 68:8

**figueroa** 3:20

**figure** 57:13,15

**file** 24:20 25:4
25:7 43:8,12
45:25 52:22
53:17

**filed** 43:15
47:11

**final** 37:12

**finally** 4:6

**find** 9:1

**fine** 19:14
44:15 49:5
57:25 59:18
61:15 67:3

**firm** 2:10 23:21
23:22

**first** 7:8,14
17:23 21:23
32:11 36:9
41:15 46:7
50:19

**five** 65:18

**flag** 44:22

**floor** 2:4 3:17
3:20,23

**florida** 2:22
3:17

**folks** 4:9

**follow** 45:24
47:4 52:12

**following** 45:21

**footnote** 42:23
45:11

**forefront** 6:15

**foregoing** 69:7

**form** 54:8

**formal** 21:11
21:12 25:23
26:3 43:6
45:17 47:11
49:4 53:17
57:16 66:9

**formalized**
20:8 45:16

**formally** 44:21
45:24

**former** 32:1
33:14

**forth** 48:10
50:22 57:11

**forward** 6:8
12:9 13:24
26:24 53:20
60:18 64:9
68:1

**four** 65:18

**frame** 7:13
15:13,17,22
16:9,11,18,18
16:22 27:16
57:1,14

**framed** 8:1

**frames** 16:15
17:3

**framework**
27:13

**frankly** 59:13

**fruitful** 51:24
62:3

**fruitfulness**
62:9

**fuller** 2:3

**function** 20:12
49:10

**functional**
14:11

**further** 10:23
17:14 20:17
34:19 40:5
41:3 66:14

**g**

**g** 4:1

**gate** 30:16

**generally** 21:7

**genesis** 6:22

**geographic**
7:15,23 8:3,6
8:24 9:17 10:2
24:12 51:10

**geographical**
27:20

**[geography - imagine]**                                            Page 9

| | | | |
|---|---|---|---|
| **geography** 35:19 | 15:19,19 17:15 19:12,20,25 | **guide** 11:3 | **help** 4:15 5:9 56:20 60:13 |
| **getting** 4:7 38:1 51:6 63:15 | 20:9,11 21:5,8 22:6,20 24:16 | **guys** 67:1 | **helpful** 27:4 |
| **gist** 23:2 | 24:24 25:14 | **h** | **hereunto** 69:11 |
| **give** 15:16 22:16 54:1 57:1,3 58:7 65:13 | 26:23 28:5 30:6 31:11 35:12 42:1,7 43:8 44:4,13 | **h** 2:7 **haley** 3:22 **haleyplourde...** 3:24 | **heuvel** 3:19 **hey** 48:17 **hi** 6:17 **highly** 58:12 |
| **given** 4:23 6:2 9:3 13:25 36:23 62:14,17 | 44:19,23 46:18 46:18,21 47:22 47:22 48:6 | **half** 55:5 56:1 **hand** 19:8 69:12 | **history** 28:25 36:24 41:17 **hit** 10:6 |
| **gives** 34:5 | 49:1 50:9 52:9 | **handle** 63:21 | **hold** 48:13 59:20,25 60:4 |
| **giving** 46:15 53:16 | 52:10,11,21 53:2,5,19 54:1 | **hands** 65:6,8 **hang** 66:19 | 60:10 |
| **global** 62:24 | 54:20,22 56:12 | **happen** 34:25 49:2 | **holding** 68:7 **holed** 37:9 |
| **go** 6:8 9:24 16:13 17:14 | 57:15,16 58:13 59:12,25 60:6 | **happened** 22:10 | **holidays** 63:13 **holing** 37:13 |
| 20:8,20 26:14 26:24 27:5 | 60:13,23,24,25 61:21,25 64:5 | **hard** 62:8 **hash** 56:12 | **honest** 44:6 **hope** 22:14 |
| 31:10 34:15,19 35:5,9,10 | 64:15 66:25 **good** 4:13 6:17 | **heads** 64:7 **health** 30:6 | **hounds** 64:2 **hour** 21:25 |
| 36:22 38:8,15 41:16 43:23,24 | 9:1 24:25 28:2 61:17 68:15 | **hear** 6:19 38:6 46:16 53:13,15 | **hundreds** 9:14 **hunter** 3:5,6 |
| 44:10,16 47:9 48:24 50:21 | **granted** 11:10 37:17,19 | 55:16 **heard** 13:21 | 23:13 68:3 **huntington** 2:5 |
| 53:5,18 59:16 63:13 65:10 | **great** 60:11 **greenfield** 1:20 | 14:1 **hearing** 12:25 | **i** |
| 67:9 | 69:5,16 | 13:18 42:7 45:22 55:4 | **idea** 51:3 **identify** 4:11 |
| **goes** 10:14 28:7 29:12 30:23 | **guess** 4:21 5:18 14:24 27:1 | 64:24,25 **hearings** 60:1 | 5:12 6:6 9:2 28:25 30:19 |
| 67:15,17 | 46:24 49:21 50:4 | **height** 48:6 **held** 1:11 | **ignore** 19:8 **ignoring** 41:11 |
| **going** 4:16,20 5:13,17 10:24 13:23 14:2,8 | **guessing** 6:5,13 | **hello** 4:3 | **imagine** 38:14 43:22 65:24 |

**immediately**
49:24
**impact**  11:15
**impacts**  11:10
**implemented**
15:11
**implications**
41:11
**impression**
55:3
**improper**  22:7
55:23
**inappropriate**
13:12 22:22
23:3,10 24:1
55:22
**include**  44:19
48:11
**included**  16:2
38:6 46:9
**including**  18:18
29:9 50:12
**incomplete**  2:1
3:1
**independent**
52:3
**individual**
51:20
**ineffectiveness**
62:10
**inefficient**  67:8
**inevitable**
60:23 63:21,22
**informally**
44:20

**information**
35:2,8 36:3
40:12 51:4
**initial**  7:8 12:6
36:9,14
**initiate**  55:21
**insight**  45:12
**instance**  11:12
55:16
**instances**  30:12
**insulin**  34:8
**intend**  47:4
**intended**  34:9
**intends**  18:18
**interested**  28:5
33:12 52:16
**interjected**
24:17
**interrelations...**
34:3
**intractable**
61:8
**introduction**
5:16 32:2
**invited**  21:19
25:8
**involve**  55:7
**involved**  18:3
39:3
**issue**  4:24 7:4
13:25 26:8
45:14,17 48:17
50:1 64:23,25
67:13 68:9

**issued**  12:18
**issues**  5:5,12
6:7 7:16 19:22
20:5,12,19,25
24:3,10,11
36:1 38:13,17
59:7 61:16
62:11,24 65:2
65:4 66:2
68:11
**iterations**  7:9

**j**

**january**  11:25
31:6 36:7
37:20 40:17
41:1
**jest**  22:23
**joanne**  2:10,12
**job**  1:24
**johan**  2:11,13
**jokes**  22:24
**jr**  2:4
**judge**  12:22
17:25 18:6,9
19:11 42:24
43:10,13 45:19
45:25 47:12
53:3,5 56:10
**judgment**  9:19
**july**  69:17
**jump**  47:14
**jumped**  30:16
**juncture**  5:3
**justification**
13:19

**k**

**kansas**  9:18
**keep**  47:21
49:10 51:6
58:16,16,18,18
**kind**  5:3 10:6
19:13 21:9
27:12 38:16
51:4
**know**  4:17 5:18
10:1,23 14:3
15:25 16:17
17:5 19:8,14
20:16 21:16
23:25 25:16,17
27:6 29:13,21
31:4,6,16
35:15,19 43:7
45:1 49:13
50:24 51:2
54:9 55:16
57:11 59:9
60:22 61:2,10
66:17

**l**

**ladder**  49:3
**laid**  59:14,23
**lakeside**  2:7
**language**  33:10
**lasted**  21:25
**late**  60:5 66:20
**launch**  10:15
10:18,19,20
11:23

**launched** 10:16
**laura** 2:21
**law** 2:3,10
  23:21
**lawyers** 52:13
**lay** 58:11
**leads** 11:3
**leave** 12:1 23:4
**lengthy** 26:3
**leon** 3:5
**letter** 21:11
  26:4 44:3,24
  45:6,6,13
  46:21 48:9,23
  49:4 53:21
  57:2 58:10
  59:23 61:9,20
  62:1 63:9
  65:15,20
**letters** 20:3
  26:2 33:17,18
  47:20 51:21
  59:10
**level** 67:12
**levin** 2:20
**levinlaw.com**
  2:23
**liabilities** 29:10
**liability** 29:5
  37:1
**liber** 2:6
**light** 40:2
**likely** 58:12
**limine** 18:8

**limit** 41:9
**limitation**
  11:25 28:13
  29:10 37:4
  41:10 52:2
  66:21
**limitations**
  14:21 31:16
**limited** 8:23
  10:2 13:16
  37:6
**lincoln** 14:4
**line** 40:25 41:2
**list** 2:1 3:1
**listen** 5:3,18
  6:9
**listening** 25:15
**listing** 48:7
**litigation** 1:5
  7:10,17 22:4
  26:16 32:19
  39:4 44:15
  52:25 60:15
**little** 5:9 6:1
  7:11 28:18
  42:5 60:12
  62:7 64:23
  65:21
**live** 27:15
**llc** 2:17
**llp** 2:6 3:15
**loggerhead**
  10:7
**longer** 50:25

**look** 13:14
  18:16 32:4
  41:17 54:3
  59:24 60:5
  64:17 67:25
**looked** 32:20
**looking** 12:18
  17:10 34:1
  59:6,19 60:18
**looks** 37:2
**los** 3:21
**lose** 52:9
**losing** 22:3
**lost** 23:8
**lot** 22:24 34:21
  49:15 57:11

**m**

**m** 3:16
**made** 5:21 22:1
  22:23,24 23:1
  25:13 32:8
  51:10 61:24
**madison** 3:23
**mail** 39:13,19
  39:25 40:6,8
**make** 4:11 8:20
  10:24 12:3
  16:24 17:21
  19:1 21:5
  28:11 52:6
  53:2 66:17
**makes** 40:15
  43:11,17 59:14
  63:5

**making** 20:24
  25:16 27:16
  60:20 66:22
**managers** 7:7
**mandates** 47:7
**manipulating**
  53:8
**manufacturer**
  10:16
**manufacturer's**
  33:7,8
**manufacturers**
  10:12 16:5,20
  30:21 34:4,10
  36:18 41:19
**manufacturing**
  29:23
**march** 60:6
**mark** 2:14
**marketed**
  32:11
**marketing**
  11:13,14 29:7
**master** 1:12 4:3
  6:21 17:20
  20:14,15 21:1
  21:4 22:8 23:5
  23:12 24:5,15
  25:6,12 28:2
  31:21 33:4
  41:21,24 42:10
  42:23 43:14
  44:11 46:6,9
  46:17 47:10,13
  49:18,19,24

50:18 52:8,10
53:13 54:13
55:7,13,17
56:18 58:1,3
60:17 61:22
62:12 64:16
66:14,16 67:23
67:25 68:2,13
**materials** 14:8
**mcgowan** 3:10
12:4,5 39:16
39:17
**mckesson** 30:5
**mdl** 1:5 5:11
12:15 19:3
23:23
**mean** 18:12
20:11 24:8
49:22
**means** 67:4
**medco** 29:3,5,9
29:13
**mediate** 5:9
**meet** 11:1
13:24 14:25
22:5,25 24:25
35:24 46:12,20
51:22,23 60:25
60:25 62:2,6
62:19,22,25
63:7,10 64:18
65:8 68:10
**meeting** 21:19
23:9 42:4
49:25 61:17

**melsner** 2:19
**members** 38:4
**mentioned**
12:12 34:17
42:20 52:20
**mergers** 28:23
29:1 36:24
**merit** 11:16
**miami** 3:17
**michael** 2:18
**microwave** 4:7
**mid** 64:13
**mind** 67:17
**mine** 27:5
**missed** 9:25
**moment** 61:5
**money** 49:12
49:13,16
**month** 59:8
60:6
**months** 63:15
64:15
**morning** 44:3
**motion** 11:9
17:2 21:12
24:21 25:4
37:17,18 42:11
42:20 43:6,12
45:25 49:4,14
51:25 52:22
53:17 54:8
61:14 66:4
67:3
**motions** 18:8
18:10 19:12

25:23
**motley** 2:17
**motleyrice.com**
2:19
**mougey** 2:21
6:14 22:19,20
36:13 58:5,6
62:15,16
**move** 44:14
53:20
**moved** 37:24
**moving** 49:11
64:8
**mpifko** 2:16
**mt** 2:19
**multiple** 40:9
62:25 63:10

**n**

**n** 4:1
**named** 37:15
**napoli** 3:4
**national** 1:5
9:8,10,16
**nationwide** 8:2
8:22
**nature** 44:13
62:25
**necessarily**
16:10 18:13
33:12 50:20
**necessary** 54:7
**need** 5:8 11:4
20:18 22:5,13
22:17 25:4
26:21 27:13

34:7 35:9 38:8
38:14 43:7
44:23 49:5,7
51:22 53:10,10
57:10 58:25
59:19,20 60:11
61:19 65:21
**needs** 35:5
51:12 52:4
62:13,17 66:3
**negotiating**
63:12
**never** 23:8
26:19 45:3,3
49:22 50:9
52:9
**new** 3:24,24
16:2 26:16
41:11 63:17
**ninth** 2:4
**north** 3:12 4:22
**northern** 1:2
**notary** 69:5,17
**noted** 4:16
**notes** 69:10
**notice** 43:3,16
**nsprlaw.com**
3:6
**nudge** 7:11
**number** 4:9 9:2
9:22,23 28:1,4
30:17 32:4,17
34:2,9 36:6,6
**numerous** 41:6

| o | | p | party 13:6 20:7 |
| --- | --- | --- | --- |

**o**

**o** 4:1
**objections** 5:21
  5:25 21:21,24
  31:14
**objects** 54:5
**obligations**
  46:13
**observe** 19:3,9
**obviously** 9:11
**offering** 45:12
**office** 69:12
**ohio** 1:2 2:8
  69:6,12,17
**okay** 4:20 6:19
  6:22 16:16
  17:13 25:21
  26:8 33:4
  35:14 44:11
  66:16,22 67:21
  68:13
**old** 41:10 64:15
**olga** 3:16 12:7
  14:13,18 26:25
  34:13 40:19
**olgavieira** 3:18
**once** 17:3 48:7
  48:12
**open** 57:13
  66:13
**opiate** 1:5
**opioid** 9:4,4
  34:4
**opioids** 30:22
  33:16 34:11,11

41:20
**opportunity**
  46:19
**opposing** 49:23
**optum** 7:1
  28:19 39:11,13
  43:3 56:25
  65:18
**optumrx** 3:8
  12:5 14:3,5
  20:22 39:12,15
  39:17 40:4
  44:1 46:3
  52:14 57:7
  61:23
**orally** 12:24
**order** 13:3
  30:19 39:13,19
  39:25 40:6,8
  42:22 55:11
  58:24
**orders** 12:17
**organized**
  60:14
**originally**
  35:21,23
**ossified** 67:2
**outset** 13:7
**overarching**
  14:12
**own** 52:4
**oxycontin**
  11:23 31:9
  33:3,18

**p**

**p** 4:1
**p.c.** 2:14
**p.m.** 1:15 68:17
**pages** 31:13
**pam** 4:17
**pamela** 1:20
  69:5,16
**papa** 31:3
**papantonio**
  2:20
**papers** 20:3
  57:17 66:9
**paragraphs**
  41:6
**parameters**
  36:16
**parsing** 28:6
  31:13
**part** 8:13
**participate**
  50:13
**particular**
  28:15 32:22,23
  33:20 39:2
  53:21 55:15
**parties** 18:15
  19:10,21,24
  21:20 25:9,20
  25:24 26:20
  44:9,19,25
  45:15 47:19
  48:10,14 49:12
  50:23 54:17
  58:14

  48:11 49:23
**party's** 47:23
**past** 7:17 28:3
  28:21 43:10
  45:8 66:11
**path** 12:8
**paul** 2:4,5 6:13
  6:18 12:7
  21:22 22:1
  23:1 27:2,21
  31:20 39:16
  40:3 46:2,24
  47:20 56:15
  57:4 58:2
  65:11
**paul's** 48:16
**pbm** 7:1 13:4
  15:6,23 16:17
  38:13,13 39:6
  39:22
**pbms** 8:1 10:10
  10:21 11:8,22
  12:13,15,23
  13:8,13 18:2,4
  18:22 19:5
  21:21 26:15
  30:18 43:18
  66:13,23
**pdd** 31:3
**pec** 2:2 6:25
  21:19,22 50:2
**pensacola** 2:22
**perfectly** 52:7

**performed** 9:15
**period** 50:25
  67:9,10
**person** 60:2
**perspective**
  51:19
**pete** 54:25
  62:16
**peter** 2:7,21
  6:14,15 22:19
  36:13 56:3
  58:6
**peter's** 62:1
  66:10
**pharma** 11:22
  29:6 31:2,8
  32:23 33:1,15
  33:21,25
**pharmacies**
  15:12 38:3
**pharmacy** 7:7
  30:1 38:19
  39:13,20,25
  40:6,8
**phone** 2:1 3:1
  4:8,22 26:7
  44:25
**picks** 23:1
**piece** 37:13
  58:15
**pifko** 2:14
**pigeon** 37:9,13
**piggyback**
  14:16

**placed** 45:16
**places** 30:7
**plaintiff** 3:3
**plaintiffs** 2:2
  5:19,22,25 6:6
  7:6,25 10:8
  12:10 39:24
  44:12,14 51:19
  54:18,24 55:6
  55:21 56:14
  61:4,6 64:7
  67:18 68:5
**plan** 36:19 38:4
  65:13
**planning** 60:12
**play** 50:17 62:7
**played** 50:16
**pleasant** 2:19
**please** 9:2
  23:19 31:22
**pled** 11:19
  19:23
**pllc** 2:10
**plourde** 3:22
**pmougey** 2:23
**point** 22:2
  28:21 30:25
  32:15 38:25
  40:15 41:3
  46:22 47:19
  53:3 55:18
  56:22 68:4
**pointed** 9:13
  28:19

**points** 14:12
**pole** 44:22
**polster** 12:22
  42:25 43:10,13
  45:19 47:12
  53:4,6 56:10
**ponce** 3:5
**popcorn** 4:6
**popped** 63:25
**position** 9:7
  10:8 11:11
  12:10,13 13:9
  13:11 19:4,15
  20:2,3,16
  21:10 26:2,21
  27:8,9 30:23
  35:21,22 37:21
  39:19 40:20
  43:2 47:23
  49:3 57:17
  59:11 61:8,20
  66:9
**positions** 44:21
  51:11 53:9
  58:13 64:21
**possible** 20:13
**pounding** 23:7
**powers** 55:13
**practice** 21:7
  45:4 50:2
**pre** 63:13
**precede** 29:21
**precedential**
  18:12,15

**predating** 14:9
**predecessor**
  29:4 36:25
**predecessors**
  33:24
**prefer** 53:1
**premature**
  13:25 55:19
  64:23
**premise** 61:25
**prescription**
  1:5 30:21
  33:16 34:4,10
  34:11 41:20
**present** 26:20
  44:21 57:16
**presentations**
  9:3,9,15
**preserve** 54:21
**pretty** 25:22
  26:9
**previous** 7:9
  56:11
**prior** 10:17
  12:11 13:5,19
  17:6,23 52:16
**probably** 4:22
  4:24 6:5 17:14
  18:5 23:21
  42:11 48:22
  65:18,21,25
**problem** 14:11
**problems** 64:8
**procedural**
  52:17

**[proceed - record]**

| | | q | read  44:5 47:24 |
|---|---|---|---|

proceed  58:9
proceedings
68:17 69:8
process  11:4
20:9 21:17,18
25:18 34:6
35:25 42:19,24
42:25 43:9
44:17,18 45:8
45:20,25 46:5
47:4,9 48:25
49:1,10 50:6
50:14,15,15
51:10 52:5,12
52:21,23 53:1
53:4,11,19
54:22 55:7
56:15 59:12
60:15 62:3,7
63:2 65:24
67:15
prodded  30:10
prodding  30:13
produce  9:6
30:20 66:25
produced
67:20
produces  9:23
producing
67:14 68:12
product  10:15
10:16
production  6:3
32:18 58:21

productions
8:22
productive
35:18 42:15
products  33:7
progress  16:25
progressed
26:5
properly  8:1
11:19,20 67:20
proposed  12:8
34:22 58:11
protecting
55:10
proven  62:3
provided  37:11
providing  68:7
public  69:5,17
puerto  3:6
purdue  11:22
29:6 30:25
31:2,8 32:23
33:1,15,21,25
pursue  39:24
push  15:15
pushing  30:13
put  17:18 30:8
43:3 49:14
54:6 57:11
61:9
pweinberger
2:9

**q**

question  9:1,22
9:23 18:21
27:2 29:4
30:17 31:17,17
31:22 32:13,16
33:21 34:1
46:25 53:6
61:3
questions  8:4
8:11,14,16
39:14 64:21
quick  55:18
66:6
quicker  25:25
quickly  20:13
49:11 50:20
quinn  3:15
quinnemanue...
3:18,21,24
quite  4:9 59:13
quote  13:1 19:2
quoting  17:7

**r**

r  3:19 4:1 69:3
rachet  54:9
rafferty  2:20
raising  45:12
range  15:2,17
34:18 35:16
rdr  1:20 69:16
reach  42:2
reached  5:6
36:4

read  44:5 47:24
47:25 65:22
reality  14:7
realized  25:24
really  5:2,10,17
12:9 23:25
25:10,15 27:14
27:14 46:13,15
61:11,13 68:9
reason  28:18
29:2 41:12
52:19 67:7
reasonably
14:23
reasoning  14:1
reasons  10:25
34:20
rebate  32:25
recall  31:24
receive  9:21
32:15 44:24
received  32:17
receiving  21:9
51:4
recent  6:23
recently  12:16
12:21
recognize
26:15
recognized
12:22
recollection
18:5
record  4:16
6:18 14:18

30:8
**reduce** 15:18
**refer** 7:2
**reference** 32:18
41:7
**referenced**
32:24
**refuses** 11:12
**refusing** 39:14
**regard** 27:24
32:12 53:20
**regarding**
15:11 51:8
**regional** 8:7
**reimbursement**
32:25
**related** 9:3 15:7
16:17 32:6
33:2,3,16,17
34:8,11 38:12
**relates** 1:7
12:20 13:21
**relating** 7:8
**relationship**
16:20
**relationships**
11:21 16:4
33:24 36:17
41:18
**relatively** 13:16
**relevant** 13:10
16:4 36:8 38:8
40:16,18,20
**remaining** 8:16

**remember**
64:14
**remotely** 1:17
**reply** 49:15
**reporter** 1:20
4:10 6:20
**represent**
14:19
**representation**
24:8
**request** 32:4
35:7 38:2,3,23
66:21,23
**requests** 6:25
7:6 16:14,23
27:6,7 28:6,24
40:2 51:7
**require** 46:14
**required** 43:20
**requires** 24:22
43:6 48:3
**reserve** 9:18
**resolution** 5:20
5:24 11:6 20:1
51:25 52:1
57:15
**resolutions** 5:6
5:7
**resolve** 42:8
51:9 54:10
61:18
**resolved** 20:12
49:8
**resolving** 13:3
47:5 59:1

**respond** 23:16
23:19,20 43:18
44:8,20 46:16
46:19 47:22,25
48:21 53:23
57:2,19,22
65:14
**responding**
39:22 45:9
**response** 27:25
44:4 49:15
**responses** 6:3
12:6 29:19
37:5,10,14
51:20 65:23
**responsibilities**
55:12
**responsive** 9:10
**rest** 65:25
68:15
**restrictive** 9:16
**result** 28:22
**results** 9:24
**retroactive**
31:5
**reviewing** 17:5
**rice** 2:17
**rico** 3:6 34:23
**right** 4:19
16:11 17:10
25:6,22 26:10
36:1 41:8 42:4
53:7,16,24
58:22 59:4
65:5

**rightfully** 9:13
**rights** 54:19,21
54:23 55:10
**ripe** 24:18 25:3
64:25
**ripen** 11:5 59:8
66:6
**ripening** 52:20
**rmr** 1:20 69:16
**rochester** 3:3
**roll** 19:16
67:14
**rolling** 68:6
**room** 19:24
**rpr** 69:16
**rule** 21:8 24:22
42:20 44:25
45:24 46:25
47:11 49:4
50:12 52:18,22
53:17 54:15
**ruled** 42:12
61:15 66:5
**rules** 19:12
46:14 50:11
54:16,20
**ruling** 7:18,19
10:9 15:10
17:1 18:22
25:14 28:10
29:16 36:6
39:21 40:13
45:14,15,17
51:13 54:4
61:19

**rulings** 12:11
12:24 13:5,7
17:6,24 18:2
18:11 20:24
21:5 40:23
47:6 52:17
56:11
**run** 44:22 63:2
**running** 6:1
50:19 52:8

**s**

**s** 1:20 2:21 3:20
4:1 69:5,16
**sage** 3:19
**sagevandenh...**
3:21
**sand** 41:2
**santure** 3:6
**satisfied** 26:13
**save** 49:12,12
**saw** 41:5 43:15
**saying** 17:12
19:6,7 22:5
24:20 27:23
46:17,25 49:21
50:5,13 53:14
53:15 54:15
57:19,20 63:1
**says** 18:23
45:11 55:17
**sc** 2:19
**schedule** 50:7
58:17,19,24
59:17

**schedules** 59:7
59:20
**scope** 7:15,15
7:23 8:3,6 9:11
9:16,21 10:2,4
10:13,17,18,20
10:22 11:11
27:20 28:8
34:2 41:13
55:12 62:24
66:3
**scripts** 3:14
12:8 14:17,19
14:20 27:1
31:2,8 34:13
39:6
**seal** 69:12
**search** 29:20
**second** 41:25
62:18
**see** 8:11,20,25
25:1 32:21
33:5 37:20
38:24 48:1
53:5,7
**seeing** 20:18
31:12
**seem** 12:9 61:5
**seems** 46:11
50:1,2
**seen** 33:14,19
**send** 46:21
47:20 57:4,21
57:22

**sense** 5:23
41:24 42:1
43:11,17 59:15
63:6
**sensitize** 5:4
**sent** 41:5 45:5
47:20 53:22
65:15
**separate** 16:6
36:11 46:8
**served** 6:25
30:17 36:10
**services** 37:11
**serving** 11:2
21:24
**set** 7:8 15:12
31:24 32:2
36:9,12,14
59:16 60:10
64:24 69:11
**sets** 16:13
**setting** 13:12
14:25 27:12
29:15 63:20
65:3
**seven** 5:11
20:10 25:18
45:9
**several** 28:22
44:17
**shared** 12:7
**shibley** 2:6
**shkolnik** 3:4,5
23:11,13,18
67:23 68:2

**short** 60:13
**shortcut** 46:12
**show** 20:4
**side** 4:25 23:17
25:2 44:24
54:5 58:23
64:6,7
**sidelined** 24:6
**sides** 63:23
64:21
**signature** 69:16
**significant** 14:8
**simple** 59:21
63:24
**simply** 19:21
26:7
**single** 48:8,9
58:15
**sister** 37:8
**sit** 22:20
**six** 15:19,20
45:9 47:7
52:13,24 55:5
56:1
**small** 14:6
28:20
**smaller** 8:5
**somebody**
26:12 56:21
**soon** 59:1
**sorry** 20:21
60:18
**sort** 11:2 14:10
14:25 35:11
53:19

**sorts** 34:24
38:5
**sounds** 24:19
32:10 42:4
51:12
**south** 2:22 3:10
3:11,16
**spangenberg**
2:6
**spanglaw.com**
2:9
**speak** 4:12 17:2
25:10
**speaking** 14:3
15:1
**special** 1:12 4:3
6:21 17:20
20:14,15 21:1
21:4 22:8 23:5
23:12 24:5,15
25:6,12 28:2
31:21 33:4
41:21,24 42:10
42:23 43:14
44:11 46:6,9
46:17 47:10,13
49:17,19,24
50:18 52:8,10
53:13 54:12
55:7,13,16
56:18 58:1,3
60:17 61:22
62:12 64:16
66:14,16 67:23
67:25 68:2,13

**specific** 8:8,23
31:25 32:3
33:7 38:13,18
51:7 56:22
**specifically**
11:22 33:2
**spill** 62:23
**spilled** 64:10
**spilling** 60:7
**spills** 63:11
64:9
**spoken** 21:20
**sponsors** 36:19
**springs** 2:12
**staked** 51:11
**stamped** 31:3
**standpoint**
68:6
**start** 4:19 7:11
7:22 20:4,18
27:12,23 36:2
49:5,7 59:6,19
59:24 60:4
62:8 63:20
65:15 66:9
67:13,15
**started** 21:17
25:22 59:1
**starting** 41:2
66:24
**state** 8:7 45:23
69:6,17
**states** 1:1 9:2
**status** 1:11

**stenotype**
69:10
**stenotypy** 69:9
**stick** 24:2
**sticking** 58:24
**stop** 4:5
**street** 2:4,11,22
3:11,20
**strong** 19:6
53:9
**strongly** 18:16
**structure** 37:2
58:11
**stuff** 21:6 26:14
53:25 67:14
**stumping** 42:5
**subject** 51:20
**submission**
48:18
**subsequent**
18:24
**subset** 10:2
**subsidiaries**
7:3 33:15
**subsidiary** 37:8
**substance**
51:19
**substantial**
43:4
**substantive**
65:16 66:2
**successfully**
34:15
**sudden** 64:1

**suggest** 23:25
55:24
**suggested** 5:1
34:14 50:17
56:17
**suggesting** 33:5
34:7 56:13
59:3,4 66:10
**suggestion** 5:8
17:22 55:19
60:21
**suggestions**
25:16
**suggests** 63:8,9
**suite** 2:8,15
3:11
**sullivan** 3:15
**sure** 4:8,11,13
18:7,8 25:1
49:19 56:19
58:17
**surely** 65:4
**surgical** 17:8
18:18 20:1

**t**

**t** 2:4 69:3,3
**take** 6:16 15:10
19:15 26:17,22
50:25 52:4
54:6,9 55:22
65:25
**taken** 1:17 9:7
19:14 35:21,23
**takes** 7:10 36:7

**[talk - transcript]**

Page 19

talk   15:3 16:5
    21:18 35:25
    38:17 42:15,18
    44:7 46:8,23
    48:19 50:5,6
    50:14 51:15
    54:22 63:18
talked   21:16,23
talking   18:7,9
    21:17 24:13,23
    31:25 36:2
    42:6 56:7 61:5
    62:10 63:3,5
team   14:5
technically
    13:2 56:11
tee   25:5 43:5
    65:8,9 66:2
teed   5:14
teleconference
    1:17
tell   20:5,6
    37:18 54:3,5
telling   37:5
    57:21
temporal   7:15
    10:4,13,17,18
    10:19,22 11:11
    11:25 28:7,12
    31:16 37:4
    40:24 41:9
    51:12 52:1
    62:24 66:3,20
tends   50:25

term   60:13
terms   14:24
    18:23 55:4
tested   30:10
texas   2:12
thank   4:7 21:3
    21:14 54:12
    67:21 68:12,14
thanks   49:17
    49:20
themes   64:6
theoretical
    40:22
theoretically
    15:2
thing   19:9
    22:14 23:12,14
    24:15 33:13
    50:5 54:14
    55:3 56:24
things   20:24
    25:25 34:24
    36:5 38:5
    41:17 47:14
    48:6 49:11
    60:10 67:11
think   7:12,22
    7:24 9:11 10:3
    10:5 11:7 12:1
    12:7 15:9 17:5
    17:7,8,9 19:10
    20:6 21:13
    22:7 23:6
    24:18 25:3
    26:10 27:3,7

27:10,13,15
    29:10 34:1,18
    35:5,17,24
    38:10,21 39:16
    40:4,7,15
    43:16 44:7
    47:17 52:2,9
    54:4 56:16,23
    57:11 58:9,25
    59:18,21 60:13
    60:21 61:1,4
    61:13,25 62:1
    62:6,15,16,20
    63:4 64:12
    65:3,22 66:3
    66:18 68:5
thinking   15:5
    16:12 18:17
third   2:4 62:18
thorough   26:4
thought   14:24
    15:13 45:20
    57:4 58:13
thoughts   58:8
three   45:18
time   4:12 15:13
    15:17,21 16:8
    16:11,15,17,18
    16:22 17:3
    18:3 19:17
    21:12,23 26:5
    26:17 27:16
    28:21,23 30:7
    31:15 40:10
    43:17 50:25

54:10 57:1,14
    59:3,4 62:18
    65:3,14,22
    66:8 67:9,10
    67:22 68:14
times   44:18
timing   6:2
title   7:5
today   12:9
    13:24 20:25
    42:8,21 44:8
    45:6,7,23
    52:14 56:20
    57:2,5 59:17
together   49:14
    61:10
told   53:3
tomorrow   59:5
took   17:7
top   35:10 58:22
totally   22:22
    23:9
touch   16:19
track   1:8 12:20
    32:1,1 58:16
    58:18 59:10
tracks   12:17
    13:14 56:8,9
transactional
    27:11 30:6
    35:4 36:7,11
    37:23
transcript   1:11
    69:10

| | | | |
|---|---|---|---|
| **transfer** 33:20 | 55:11 57:18,24 | 66:4 | **wednesday** |
| **true** 19:21 25:1 | **united** 1:1 | **waiting** 4:5 | 1:14 |
| 30:11 55:23 | **universal** 8:13 | 37:17 65:6 | **week** 48:7,12 |
| 56:2 69:9 | 8:15 | **walked** 8:10 | 59:5,18,18 |
| **try** 5:17 | **unleashing** | **want** 5:4,24 | 63:17,19 66:1 |
| **trying** 17:18 | 64:2 | 16:22 20:2 | 66:1 |
| 27:18 32:7 | **urquhart** 3:15 | 23:4 26:22 | **weinberger** 2:7 |
| 38:16 46:11 | **use** 31:15 52:23 | 27:2 35:14 | 6:15 54:25 |
| 59:22 | 53:1,5 | 44:14 45:15 | 55:1 |
| **tryon** 3:11 | **used** 43:9 52:24 | 51:5 52:6,11 | **went** 13:15 |
| **turned** 4:6 | 55:4,6 56:15 | 52:17 53:25 | 30:15 32:3,20 |
| 30:11 | **useful** 66:11 | 55:2 57:12 | 40:5 49:24 |
| **twice** 12:23 | **using** 45:8 47:6 | 68:4 | 65:20 |
| **two** 4:25 5:8 | 52:12 | **wanted** 20:23 | **west** 2:5 |
| 7:1 16:12 36:5 | **utilization** 9:5 | 21:18 48:11 | **whereof** 69:11 |
| 60:3 63:15,20 | **utilize** 52:18 | **wants** 45:24 | **willing** 39:3 |
| 64:15 | | 56:21 66:14 | 40:24 53:18 |
| **type** 17:13,14 | **v** | **way** 5:15 6:11 | **win** 22:6,11,12 |
| 24:3 | | 7:12 8:25 | 23:24 52:9 |
| **types** 17:12 | **vacuum** 36:21 | 16:24 22:1 | **wisdom** 37:16 |
| 33:23 | **vanden** 3:19 | 24:24 26:23 | **witness** 69:11 |
| | **vantage** 3:10 | 27:18 29:2 | **wonder** 42:13 |
| **u** | **ventura** 2:15 | 30:2,4 35:6 | **words** 53:8 |
| | **vieira** 3:16 | 44:5 48:14 | **work** 17:10 |
| **uncalled** 23:3 | 14:15,18 26:25 | 49:2,8 50:16 | 44:4 48:14 |
| **under** 10:9 | 26:25 30:3 | 50:21 57:8 | 54:11 56:23 |
| 50:11 52:22 | 31:20 34:12 | **ways** 55:22 | 57:6 |
| 54:20 | 37:22 39:5 | 67:16 | **worry** 22:13 |
| **understand** | 41:23 | **we've** 7:14 9:7 | **worthy** 27:25 |
| 31:11 32:7 | **violation** 43:4 | 9:25 11:18,20 | **writing** 20:4 |
| 40:14 | **virginia** 2:5 | 14:1,4 17:3 | 26:21 44:20 |
| **understanding** | **voices** 4:14 | 20:9 33:19 | 45:16 54:6 |
| 8:21 67:19 | | 45:8 47:5 | **written** 21:9 |
| **understandings** | **w** | 52:12 55:4 | 25:23 26:3,14 |
| 64:22 | | 62:4,19,22,25 | 33:17,18,22 |
| **understood** | **wait** 19:18 | | |
| 21:14 48:15 | 35:12 51:13 | | |
| | 60:5 61:14,19 | | |

**[written - zoom]**                                                    Page 21

| | |
|---|---|
| 61:20 | **zoom**   60:2 |
| **wrong**   19:6 | |
| 26:10 35:6 | |
| 54:1 | |
| **wrote**   42:25 | |
| 69:8 | |
| **y** | |
| **yeah**   20:21 | |
| 22:19 32:14 | |
| 43:25 57:9,18 | |
| 58:5 | |
| **year**   10:14,17 | |
| 10:20 13:10,17 | |
| 58:20 60:15 | |
| 63:5 | |
| **years**   5:11 | |
| 15:19,20 20:10 | |
| 25:19 45:9 | |
| 47:7 52:13,24 | |
| 55:5 56:1 | |
| **yesterday**   7:21 | |
| 8:10 10:6 | |
| 13:21 15:25 | |
| 16:15 21:22 | |
| 27:3,10,19 | |
| 28:9 34:15 | |
| 35:18 37:6 | |
| 39:18 45:23 | |
| 52:14 62:5 | |
| 65:20 | |
| **york**   3:24,24 | |
| **z** | |
| **zero**   9:24 | |