UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**THIS DOCUMENT RELATES TO**:<br><br>*PBM Bellwether Cases* | MDL NO. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**OPTUMRX, INC.'S RESPONSE TO
PLAINTIFFS' REQUEST FOR IMMEDIATE STATUS CONFERENCE**

Plaintiffs mischaracterize the discovery record. The parties' communications over the past 45 days demonstrate that *Plaintiffs*, not the PBMs, have abandoned the process for resolving discovery disputes established by the Federal Rules of Civil Procedure, the Local Rules of the Northern District of Ohio, and the Court's prior orders in the MDL.

If the Court holds a status conference, it should confirm what the rules already require: The PBM Defendants are entitled to be heard and to create a record of any discovery dispute. As Plaintiffs acknowledge, it is too early for the Court to "consider the merits of the requests, objections, answers and/or responses" related to any discovery dispute—including whether certain Motley Rice-led investigations fall within the scope of DR-22 (they don't)—because the parties haven't briefed those issues. But if this Court holds a status conference, it should (1) remind Plaintiffs that they are required to meet and confer with the PBMs before presenting disputes to Special Master Cohen or the Court,[1] and (2) reinforce that, after meeting and conferring, the parties must follow the process established by the federal and local rules for raising disputes with the Court so that the parties have the required opportunity to be heard on an issue before any decision.

---

[1] OptumRx has had meet-and-confer calls with other teams within the PEC and expects that those will yield certain compromises. For instance, OptumRx and Plaintiffs have exchanged five letters and held three meet-and-confer calls to discuss the availability of claims and rebate data.

1

I.  **PLAINTIFFS SEEK TO OPERATE OUTSIDE THE CONFINES OF THE FEDERAL RULES OF CIVIL PROCEDURE, THE LOCAL RULES, AND THIS COURT'S ORDERS.**

As Special Master Cohen has recognized, the dispute-resolution process that the Court initially set out in the Special Master Appointment Order "has evolved" over the past seven years (Dkt. 5326-3 at 48)—years when the PBMs were not active MDL defendants or meaningful participants in any MDL discovery. *See* Dkt. 5265 (Dec. 1 Hearing Transcript) (Judge Polster: "The PBMs were not party to any of these . . . the motions, the briefing, the argument, the decisions."); *see also* Dkt. 5268 at 2 (Court Order Resolving PBM Bellwether Disputes ("The Court agreed with the PBM Defendants that they are not bound by prior rulings to which they were not a party.")). But Plaintiffs show no signs that they want to follow any orderly process for resolving discovery disputes.

As the past 45 days have shown, the PEC wants every issue resolved in its favor, immediately, without affording the PBMs a chance to respond. Plaintiffs have taken that approach from the get-go, even trying to manufacture a dispute over Plaintiffs' first set of discovery requests before the PBMs' response deadline. Plaintiffs served their initial set of discovery requests on December 29, 2023. Under Federal Rules 33 and 34, the PBMs had until January 29, 2023 to respond. But instead of waiting for the PBMs' responses, Plaintiffs tried to preemptively declare an impasse and pushed Special Master Cohen to prematurely resolve indefinite discovery questions in Plaintiffs' favor:

- *January 10, 2024*: Nineteen days before the PBMs' deadline to object and respond to Plaintiffs' discovery requests, Plaintiffs asked that the PBMs immediately "respond with ***temporal and geographic objections*** to expedite the meet and confer process." Ex. A at 2 (Jan. 10, 2024 email from P. Farrell).

2

- *January 11, 2024*: The next morning, Plaintiffs' counsel sent an email criticizing OptumRx and Express Scripts for not immediately responding, speculating that the PBMs "deemed [his] emails unworthy of a response." Ex. A at 1 (Jan. 11, 2024 email from P. Farrell). Plaintiffs' counsel went on: "Other defendants in this litigation chose this option in the past. I actually prefer this option because it immediately discharges my obligation to continue with a 'meet and confer' and go directly to the Court (where this issue will be resolved)." *Id.* Although fewer than 24 hours had passed since counsel sent his email, and despite the fact that OptumRx and Express Scripts had eighteen more days to respond to Plaintiffs' requests, Plaintiffs' counsel declared, "I know that you know that I know that you are going to object to the geographic and temporal scope of discovery. . . . I propose we take the matter(s) directly to Special Master Cohen and allow him to resolve the dispute." *Id.* In the same email, Plaintiffs' counsel made several comments about the PEC, including comparing it to "the Rebel Alliance in the Star Wars saga with heroes and heroines aplenty" and remarking that "we have a decent track record."[2]

    Counsel for the PBMs responded that day: "Hi Paul, We are considering your request, which was sent less than 24 hours ago, and will get back to you." Ex. B at 1 (Jan. 11, 2024 email from O. Vieira). Later that day, the PBMs responded again explaining that they had "received Plaintiffs' first set of discovery requests on December 29th," that they had "30 days to respond," and would be "happy to meet and confer with the PEC about any objections after those responses are served." Ex. C at 2–3 (Jan. 11, 2024 email from O. Vieira).

---

[2] In this brief, we don't recount every word of every email exchanged during the discovery process but encourage the Court to review all the cited correspondence.

3

Later that day, Plaintiffs' counsel sent another email pushing for a meet and confer supervised by Special Master Cohen to resolve temporal and geographic scope objections that the PBMs had not yet asserted. Ex. C at 1–2 (Jan. 11, 2024 email from P. Farrell). The PBMs responded for a third time, again reiterating that "[t]he Court has not modified the time permitted under the Rules for us to respond and object to your discovery. Again, we are happy to meet and confer on these issues once we have timely responded and objected to your discovery." Ex. C at 1 (Jan. 11, 2024 email from O. Vieira).

- *January 12, 2024*: Dissatisfied with the PBMs' insistence on following the process established in the Federal Rules, Plaintiffs' counsel then emailed Special Master Cohen on January 12 requesting a meeting with him to begin the meet-and-confer process—seventeen days before the deadline for OptumRx and Express Scripts to respond to Plaintiffs' discovery requests. Ex. D at 2 (Jan. 12, 2024 email from P. Farrell).

    Within an hour, counsel for OptumRx responded for the PBMs:

    Special Master Cohen,

    We have twice informed the PEC that our deadline for responding to and objecting to the PEC's discovery requests is still more than two weeks away and that we will meet and confer with them once those responses and objections have been served.

    It is improper for the PEC to seek the Court's or your involvement before the PBMs have responded to the PEC's discovery requests. The PEC is trying to circumvent the Federal Rules, but as the Sixth Circuit explained earlier in the MDL, "[t]he rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).

    We oppose any effort by the PEC to ask the Court or you to weigh in on discovery issues before our clients have even had a chance to respond (as is their right under the Federal Rules).

4

Ex. D at 1–2 (Jan. 12, 2024 email from B. Springer). Special Master Cohen agreed that "the issues of temporal and geographic scope regarding various species of discovery are not ripe for me to address." Ex. D at 1 (Jan. 12, 2024 email from Special Master Cohen).

- *January 29, 2024*: OptumRx and Express Scripts timely served their objections and responses to Plaintiffs' initial discovery requests. Both PBMs offered to meet and confer with Plaintiffs to resolve any disputes as to the PBMs' objections.

- *February 7, 2024*: At 5:47 pm, Plaintiffs' counsel (for the first time) emailed the PBM Defendants about the January 29 objections and responses. In that email, Plaintiffs' counsel wrote: "Unless you promptly agree to withdraw the improper objections noted below, we intend to immediately forward your responses to Special Master Cohen and request an in-person meeting to discuss" certain discovery issues. Ex. E at 5–7 (Feb. 7, 2024 email from P. Farrell). Plaintiffs' counsel demanded a response by close of business the following day. *Id.*

- *February 8, 2024*: At 5:10 pm on the following day, Plaintiffs' counsel forwarded his own email to Special Master Cohen, asserting, "The PEC believe the dispute with the PBMs regarding geographic scope and temporal limitation is ripe. Further discussion with PBM counsel will not be helpful." Ex. E at 4–5 (Feb. 8. 2024 email from P. Farrell).

The PBM Defendants responded, explaining to Special Master Cohen that "Plaintiffs' outreach to you is improper and premature. There has been no 'discussion' between the parties. Mr. Farrell sent an email late yesterday demanding a response to his demands within 24 hours even though the parties have never even discussed the PBM Defendants' objections and responses to Plaintiffs' initial discovery requests. . . . There is no 'ripe' dispute for the Court to resolve . . . ." Ex. E at 4 (Feb. 8, 2024 email from B.

5

Springer). The PBM Defendants also emailed the PEC, making it clear that the PBM Defendants "are willing to confer about geographic scope and temporal scope with respect to the [initial] discovery requests." Ex. F at 2–3 (Feb. 8, 2024 email from S. Vanden Heuvel). In response, Plaintiffs' counsel wrote, "With all due respect, there is nothing to discuss related to the initial discovery requests." Ex. F at 1–2 (Fe. 8, 2024 email from P. Farrell).

- *February 13, 2024*: The PEC and the PBM Defendants held a meet and confer to discuss the temporal and geographic scope of the Plaintiffs' initial discovery requests. From the beginning, the PEC has tried to short-circuit the process, initially refusing to discuss the particular discovery requests. After the PBMs' counsel continued pressing for the parties to walk through the requests, that conversation yielded potential compromises.

- *February 14, 2024*: At 9:05 am, Plaintiffs' counsel sent OptumRx a "deficiency letter related to DR22," claiming that materials produced by OptumRx in response to certain Motley Rice-led government investigations were subject to DR-22. Although its letter marked a complete about-face from prior briefing (in which the PEC argued that those investigations were *not* opioid-related), Plaintiffs' counsel insisted that OptumRx had breached the order by not re-producing those materials under DR-22. Plaintiffs copied Special Master Cohen on their email to involve him right away, even though the email marked the first time Plaintiffs had raised any issue with OptumRx related to DR-22 compliance. Ex. G at 4–5 (Feb. 14, 2024 email from P. Farrell).

That afternoon, the PEC and the PBM Defendants held a "supervised" meet and confer before Special Master Cohen that was supposed to concern negotiations related to the temporal and geographic scope of discovery. During the conference, counsel for

6

OptumRx expressed concern over Plaintiffs' rush to the Court and refusal to engage in a good-faith meet and confer, including by referencing certain of Mr. Farrell's remarks during the February 13 call. Plaintiffs' counsel criticized OptumRx's counsel for divulging Mr. Farrell's remarks during the meet and confer, acknowledging that he made remarks but claiming that he did so "in jest." *See* Ex. K at 22:1–7, 22:22–23 (Feb. 14, 2024 Tr. of Supervised Meet and Confer Before Special Master Cohen) (excerpts).

During the conference, Plaintiffs also pressed Special Master Cohen to rule on the DR-22 "dispute" first raised in the hours-old letter that Plaintiffs had sent to OptumRx and Special Master Cohen. Special Master Cohen agreed that OptumRx should be given a chance to respond and the parties should try to resolve that dispute. OptumRx agreed to send a response letter by February 21. Ex. H at 1 (Feb. 14, 2024 email from P. Farrell to B. Boone).

- **February 21, 2024**: At 7:17 p.m. on February 21, the day the parties had agreed that OptumRx would respond but before OptumRx responded, Plaintiffs' counsel went straight to Special Master Cohen and asked him to rule without knowing OptumRx's position: "Special Master Cohen, Having received no response from OptumRx, this matter is now ripe for your consideration." Ex. G at 2–3 (Feb. 21, 2024 email from P. Farrell). OptumRx was forced to remind Plaintiffs' counsel that, as the parties had agreed, OptumRx would be responding "before day's end," although that didn't seem to be good enough for Plaintiffs' counsel, who replied: "You live in Charlotte. Your [sic] probably sending this email from home. The day is ended." Ex. G at 1–2 (Feb. 21, 2024 emails from B. Boone and P. Farrell). OptumRx responded before day's end. *See* Pl. Request for Immediate Status Conference, Ex. 2. OptumRx did not copy Special Master Cohen on its email attaching the

7

DR-22 response letter but instead offered to meet and confer with Plaintiffs and present any disputes to Special Master Cohen if the parties could not come to a resolution. In the letter, OptumRx explained that DR-22 aside, it was willing to meet and confer about the PEC's separate discovery requests and would likely be willing to produce certain of the materials after discussing the requests with the PEC and designating the materials confidential or highly confidential under the protective order.

- *February 22, 2024*: The next day, Plaintiffs' counsel responded by email, copying Special Master Cohen, announcing that it would no longer engage in meet and confers with OptumRx: "Dear Mr. Boone, You should send Special Master Cohen your letter brief. You accuse me of taking a frivolous position. I do not think that word means what you think it means. Nonetheless, your continued rhetoric is dangerous. The PEC declines to meet with you on further discovery disputes. We will confer only in writing moving forward. To be clear, the PEC will continue to abide by the Federal Rules of Civil Procedure and the applicable Rules of Professional Responsibility. We will not abide manipulation of the spoken word nor cower to bully tactics. I look forward to learning or teaching a lesson. This matter is ripe and we stand on our position paper previously submitted." Ex. I at 1–2 (Feb. 22, 2024 email from P. Farrell).

- *February 22, 2024*: The same day, OptumRx's counsel responded: "Paul: I sent a letter, not a 'letter brief.' And in the letter, I explained that if the PEC still has a DR-22 dispute with OptumRx after reading our letter, the parties can discuss a briefing schedule for any motion that the PEC intends to file. We will not agree to anything short of what the Federal Rules of Civil Procedure (Rule 37 included) require. As for your other comments, all I can say is that we always stand ready to meet and confer in good faith over any discovery

8

dispute, and I've found that talking through disputes instead of writing letters is more productive." Ex. I at 1 (Feb. 22, 2024 email from B. Boone).

- ***February 23, 2024***: The next day, OptumRx requested a meet and confer to discuss a letter that Plaintiffs sent about OptumRx's objections and responses to written discovery. Plaintiffs' counsel refused: "Mr. Springer, As we informed your colleague, the PEC declines to meet with Optum in an unsupervised, off-the-record teleconference related to Optum's discovery responses. Optum has accused the PEC, and me personally, of taking a 'frivolous' position regarding a discovery dispute in violation of Rule 11. Your firm has misrepresented and manipulated my spoken words during a teleconference with the Special Master. We will confer in writing with your law firm until further notice. Optum needs to respond to our deficiency letter in writing." Ex. J at 1–2 (Feb. 23, 2024 emails from B. Springer and P. Farrell).

The record is clear: Plaintiffs have no interest in participating in a structured discovery process that follows the rules in which disputes are presented in a reasonable manner that allows parties to create a record of their positions. Instead, at every turn, Plaintiffs have sought to jettison the federal rules, local rules, and this Court's orders—seeking preemptive rulings on issues before the PBMs can meaningfully respond, let alone confer with Plaintiffs to identify common ground or reach a negotiated resolution. This Court must confirm that in these litigations, as in all federal litigations, the parties must follow the rules because it is only through following the rules that all parties (Plaintiffs and the PBMs alike) are afforded all rights and remedies.

## II. THE COURT SHOULD REAFFIRM THE FUNDAMENTAL TENET OF DUE PROCESS THAT EVERY PARTY IS ENTITLED TO HAVE ITS POSITIONS HEARD BEFORE THE COURT RULES.

The PEC is attempting to abuse the "informal" discovery procedure to tee up "disputes" for judicial decision before the PBM Defendants can even respond. That is improper, violates the

9

Federal and Local Rules, and offends due process. They have even done the same through their so-called "request for a status conference." The Court should reaffirm that all parties—even the PBMs—have the opportunity to substantively brief any discovery disputes and to ensure that the record is clear.

Federal Rule of Civil Procedure 37 and Local Rule 37.1 provide the guardrails for how discovery disputes must be resolved. Federal Rule of Civil Procedure 37 contemplates that after the moving party has met and conferred (or attempted to meet and confer) about a discovery dispute, it may then seek to compel discovery by filing a motion to compel. *See* Fed. R. Civ. P. 37(a). Northern District of Ohio Local Rule 37.1 provides additional guidance: discovery disputes are referred to the "Judicial Officer" only after counsel certifies that it has made "sincere, good faith efforts" to resolve the dispute. The Judicial Officer can then try to resolve the dispute by telephone, but if that doesn't work, the parties outline their positions by letter and the Judicial Officer again tries to resolve the dispute. If he can't, then the parties may file formal motions to compel. Although Local Rule 37.1 allows for an informal process, ultimately the parties have the right to paper their disputes and be heard. *See Diorio v. TMI Hosp.*, No. 4:15CV1710, 2017 U.S. Dist. LEXIS 86695, at *10 (N.D. Ohio May 19, 2017) (recognizing that after proceeding through the Local Rule 37.1 steps, parties are entitled to "fil[e] a motion to compel and memorandum in opposition to the motion to compel"); *Cleveland Indians Baseball Co. v. United States*, No. 96-CV-2240, 1998 U.S. Dist. LEXIS 1459, at *12, 81 A.F.T.R.2d (RIA) 1998-645 (N.D. Ohio Jan. 28, 1998) (recognizing that when the informal process is ineffective, "it would be more efficient for the Court to rule on a formal, written motion than attempting to resolve the situation through repetitive telephone discussions with the parties where the Court would learn only some of the details necessary to a proper resolution").

And although Local Rule 37.1 allows for a Judicial Officer to establish an alternative procedure for handling discovery disputes, that alternative procedure cannot abridge, limit, or enlarge the rights of the parties under the Federal Rules or the Constitution (including the right to due process and all that it entails). *Drummond v. Kizziah*, 2023 U.S. App. LEXIS 17193, at *3 (6th Cir. July 6, 2023) (under the Rules Enabling Act, local rules cannot "infringe upon a substantive right"); *In re Ming*, 469 F.2d 1352, 1355 (7th Cir. 1972) (a district court's local rules "must meet the essential requirements of due process"); *Bush v.* Godwin, 2018 WL 576850, at *11 (E.D. Tenn. Jan. 26, 2018) (under the Rules Enabling Act, "[t]his Court lacks any authority to suspend or modify the applicability of the Federal Rules of Civil Procedure to these proceedings"); *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (explaining that "[l]ocal district court rules cannot be construed in such a way as to render them inconsistent with the applicable provisions of the Federal Rules of Civil Procedure" and confirming that a local rule inconsistent with a Federal Rule would be "invalid").

Accordingly, the Court should affirm the following process, which is consistent with the Federal Rules and Local Rule 37.1:

(1) When a discovery dispute arises, the parties must first meet and confer in good faith to informally resolve the dispute and certify to the Court that it made sincere, good faith efforts to do so.[3] The parties must be reasonable in their meet-and-confer deadlines, including not demanding arbitrary and unnecessarily accelerated response deadlines on email exchanges between counsel.

(2) If the parties cannot resolve a discovery dispute after engaging in the meet and confer process, the parties may schedule a meeting with Special Master Cohen. That meeting will be an informal "supervised" meet and confer, with a court reporter provided by the parties. At that time, Special Master Cohen will not rule on any disputes.

(3) Only if the parties cannot resolve their discovery dispute after meeting and conferring in good faith, the party from whom discovery is sought can ask the

---

[3] OptumRx would welcome a court reporter at every meet and confer with the PEC.

11

      challenging party to brief a formal motion to compel under Rule 37 or to proceed to letter briefs to Special Master Cohen.

         a. If the non-moving party elects to have the dispute resolved by letter briefing, the moving party's initial letter must be submitted to Special Master Cohen (and filed on the docket) within ten days, and the non-moving party's response letter must be submitted to Special Master Cohen (and filed on the docket) seven days later.

         b. If the non-moving party elects to have the dispute resolved through a formal motion to compel under Rule 37, the parties will follow the default rules for time to file a motion, response brief, and reply brief.

(4) Under either 3(a) or 3(b), Special Master Cohen may hold a hearing on the dispute or may issue a decision on the briefs alone.

(5) Either party may request that Special Master Cohen's ruling be a formal, written ruling under Section II.D of the Appointment Order. Dkt. 69.

(6) In accordance with Section II.D of the Appointment Order, any party may object any formal discovery ruling by Special Master Cohen within 21 calendar days of the date it was filed. Dkt. No. 69. Once an objection is lodged, the opposing party may file its opposition within fourteen calendar days. This Court will decide the motion *de novo*.

This process—which is nothing like the one that has played out so far—is consistent with Local Rule 37.1 and allows the parties to resolve discovery disputes while minimizing the burden on the parties, the Court, and Special Master Cohen. At the same time, the process preserves each party's right to move for or oppose an order compelling discovery under Federal Rule of Civil Procedure 37. That way, all parties maintain their right to preserve their full legal arguments on the record.

**III. IT WOULD BE IMPROPER FOR THE COURT TO ADDRESS THE SUBSTANCE OF ANY DISCOVERY DISPUTE AT THIS JUNCTURE—INCLUDING PLAINTIFFS' (BASELESS) ASSERTION THAT CERTAIN MOTLEY RICE-LED INVESTIGATIONS FALL WITHIN DR-22.**

Plaintiffs improperly ask the Court to resolve unripe discovery disputes, which have not been briefed, under the guise of an "immediate status conference."

### A. There is no ripe dispute about the scope of prior discovery rulings. But the Court has already made it clear (twice) that the PBM Defendants are not "bound" by prior discovery rulings involving other defendants.

Plaintiffs ask this Court to "affirm the precedential value of prior discovery rulings" (Pl. Request for Immediate Status Conference at 1), but the Court should reject that kind of blanket request untethered to any ripe dispute. If the parties have a live dispute that hinges on Plaintiffs' interpretation of a particular order that was entered before the PBMs were involved, the parties can brief the issue. But until then, the Court should refrain from issuing the kind of wholesale, abstract ruling that Plaintiffs seek. Indeed, this Court has now said twice that discovery rulings made before the PBMs were parties do *not* bind them.[4] *See* Dkt. 5265 (Dec. 1 Hearing Transcript) at 15:24-25-16:1; *id.* at 16:14-19 (Judge Polster: "[W]e addressed in prior bellwethers, the scope of discovery, and . . . parties should look at my prior rulings. . . . And that leads to another thing. There was a . . . back and forth from the parties' proposals about the effect of prior rulings, court rulings in the MDL. The PBMs were not party to any of these. . . the motions, the briefing, the argument, the decisions. So they're not technically bound by them."); Dkt. 5268 at 2 (Polster Order Resolving PBM bellwether disputes) ("The Court agreed with the PBM Defendants that they are not bound by prior rulings to which they were not a party."). Any order to the contrary would violate due process. *See Parkland Hosiery Co v. Shore*, 439 U.S. 322, 327 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard.").

---

[4] OptumRx will, of course, analyze the Court's previous rulings as issues arise (and as the rulings are available on the docket). And OptumRx has engaged in several meet and confers with the PEC about data and other issues and will continue to do so in good faith.

### B. Plaintiffs mischaracterize OptumRx's position on DR-22, but that's an issue for another day because there is no ripe dispute.

Plaintiffs distort OptumRx's position on DR-22. The underlying dispute is not about whether DR-22 applies to OptumRx. OptumRx has made no fewer than **fourteen** DR-22 productions since January 2023. Instead, the dispute is about whether the three investigations underlying the Motley Rice disqualification motion fall within DR-22's scope. *See* Pl. Request for Immediate Status Conference, Exs. 1 & 2.

On that score, Plaintiffs' position is frivolous[5] because the PEC already argue to the Court that those investigations concerned alleged "overbilling for insulin"—not the "promotion and dispensing of opioids." Dkt. 5288 (Opp. to Motion to DQ Motley Rice) at 1. Indeed, a Motley Rice attorney declared under oath that the subpoenas in the three investigations "did not reference any opioid drug by name or opioids generally." Dkt. 5302-1, Boggs Decl. ¶¶ 6, 9, 14. And in its sur-reply opposing the Motley Rice disqualification motion, its new expert argues that the "crux of [the] claims" in those investigations was "price fixing." Dkt. 5320-5 at 10–11. The PEC has now turned around and argued the opposite—and has done so only because OptumRx pointed out that even though the Motley Rice investigations were not about opioids, OptumRx produced information relating to opioids and more broadly about wide aspects of its business operations.[6] But as the Court is aware, DR-22 applies only to cases and investigations that "regard[] the marketing, sales, distribution, or dispensing of Opioids or Opioid Products." Dkt. 2712 (Oct. 3, 2019 Amendment to DR-22) at 3.

---

[5] Referring to a party's position as "frivolous" is not, as Plaintiffs suggest, an *ad hominem* attack; nor is moving to disqualify counsel for violating the ethical rules.

[6] The PEC has done an about-face on DR-22 only in an effort to erase Motley Rice's ethical violations.

14

OptumRx has much more to say about that, but the merits of that dispute are not before the Court. Indeed, the issue has not even been briefed—not even to Special Master Cohen, never mind to this Court. Plaintiffs' attempt to use its request for an "immediate status conference" to seek a merits ruling from the Court on a discovery issue that is not ripe and has not been briefed is improper; it circumvents N.D. Ohio Local Rule 37.1 and the Federal Rules of Civil Procedure and would deprive OptumRx's of its rights (both under the Due Process Clause and the Federal Rules) to create a record and be heard on any dispute. It is also indicative of the PEC's "heads we win, tails you lose" approach to this litigation.

## IV. CONCLUSION

This Court should (1) order that Plaintiffs operate within the confines of the Federal Rules of Civil Procedure, the Local Rules, and this Court's Orders; (2) reaffirm that all parties are entitled to be heard before resolving any dispute; and (3) refrain from issuing a merits ruling on a DR-22 issue that is not ripe and has not been briefed.

February 26, 2024

Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel.: (704) 444-1000
brian.boone@alston.com

William H. Jordan
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com

*Attorneys for OptumRx, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on February 26, 2024, a copy of the foregoing was served on all counsel of record by filing the same with the Court's ECF system.

*/s/ Brian D. Boone*
Brian D. Boone
