1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                          EASTERN DIVISION

3
     IN RE:                         ) Case No. 1:17-md-2804
4                                   )
     NATIONAL PRESCRIPTION           )
5    OPIATE LITIGATION,              )
                                    ) Wednesday, February 28, 2024
6                                   )

7

8

9          TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

10              *HELD VIA ZOOM VIDEOCONFERENCE*

11          BEFORE THE HONORABLE DAN AARON POLSTER

12                 UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20   Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
                                United States District Court
21                              801 West Superior Avenue
                                Court Reporters 7-189
22                              Cleveland, Ohio 44113
                                216.357.7036
23                              Gregory_Mizanin@ohnd.uscourts.gov

24

25        Proceedings recorded by mechanical stenography; transcript
             produced with computer-aided transcription.

```
 1      APPEARANCES:

 2
        For the Plaintiffs:
 3

 4          Peter H. Weinberger, Esq.
            SPANGENBERG, SHIBLEY & LIBER, LLP
 5          1001 Lakeside Ave. East, Suite 1700
            Cleveland, OH 44114
 6          216.696.3232

 7

 8          Paul T. Farrell, Jr., Esq.
            FARRELL & FULLER
 9          270 Munoz Rivera Avenue, Suite 201
            San Juan, PR 00918
10          304.654.8281

11

12          Jayne Conroy, Esq.
            SIMMONS HANLY CONROY
13          One Court Street
            Alton, IL 62002
14          618.259.2222

15

16          Joseph F. Rice, Esq.
            MOTLEY RICE
17          28 Bridgeside Blvd.
            Mount Pleasant, SC 29464
18          800.768.4026

19

20          Hunter J. Shkolnik, Esq.
            NAPOLI SHKOLNIK
21          1302 Avenida Ponce de Leon
            Santurce, PR 00907
22          787.493.5088

23

24

25
```

1     APPEARANCES (continued):

2

      For Defendant Express Scripts:

3

4             **Olga M. Vieira, Esq.**
              QUINN EMANUEL URQUHART & SULLIVAN
5             1300 I Street NW, Suite 900
              Washington, DC 20005
6             202.538.8000

7

8     For Defendant OptumRx:

9             **Brian D. Boone, Esq.**
              ALSTON & BIRD
10            1120 South Tryon Street, Suite 300
              Charlotte, NC 28203
11            704.444.1106

12

13    ALSO PRESENT:

14            Carrie Roush, Law Clerk
              Corey McCardle, Courtroom Deputy
15            David Cohen, Special Master
              A. Scott Loge

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | WEDNESDAY, FEBRUARY 28, 2024 |
| 2 | (Proceedings commenced at 1:49 p.m.) |
| 3 | THE COURT:  Okay.  Good afternoon, everyone. |
| 4 | Thank you for being available. |
| 5 | The thing I want to try and accomplish this afternoon |
| 6 | is to sort of reset the tone and dial down the temperature. |
| 7 | I know I said some time ago that I thought OptumRx's filing |
| 8 | the motion to disqualify Motley Rice was a very bad idea, |
| 9 | and that it might create and generate a lot of ill will, |
| 10 | which would make this litigation difficult.  Well, sadly, I |
| 11 | was proven correct.  And it's my job to dial things down. |
| 12 | I had said many times in this MDL that the reason it |
| 13 | succeeded is because we had the best lawyers in the country |
| 14 | and they have known how to zealously represent their |
| 15 | clients, but also cooperate so that the enterprise moved |
| 16 | forward.  And that's why we have accomplished so much over |
| 17 | the last six years.  I mean, each side, each party has been |
| 18 | able to do all the discovery they wanted to develop their |
| 19 | theories of liability and their defenses.  We've had I think |
| 20 | fair trials in federal court, state court; we had |
| 21 | settlements; we've done it all.  You know, we've done it |
| 22 | all. |
| 23 | And my suggestion is that -- Mr. Boone, that you |
| 24 | contact the counterparts, your counterparts for the |
| 25 | manufacturers, distributors, and pharmacies and just talk to |

1      them a bit about how things have gone.

2           And I would suggest that the client reps we have, you

3      know, for OptumRx, Ms. Hasan and Mr. Kokkinen, do the same;

4      call the general counsels for the manufacturers,

5      distributors, pharmacies, and just ask them -- I mean,

6      because, you know, you're coming in late, five, six years

7      down the road, and no one can expect you to know and

8      understand all that.

9           But I would suggest you do that because we've -- you

10     know, I don't want this, you know, to run off the rails.

11     And, you know, we've had a procedure in place that, you

12     know, has worked very well, and it's going to continue here.

13     First, the parties meet and confer on just about everything

14     that -- again, the best lawyers in the country.  And you

15     hopefully will agree on most things.

16          And when you have a disagreement, then you meet with

17     Special Master Cohen, and he gives you some informal

18     guidance, and hopefully that will resolve many of the

19     disagreements.  And the ones that can't, if you need a

20     formal ruling from Special Master Cohen, he will tell you

21     what submissions to make, and he will make his formal

22     written ruling.  And then if either side thinks that he is

23     really, really wrong, then that side can appeal to me and

24     I'll, you know, issue an -- order an opinion.

25          Over the last five, six years, there have been some

1  but not a ton of formal rulings that Special Master Cohen

2  has had to make.  And there have been a handful of appeals,

3  but only a handful.  And, you know, I think that's the way

4  it should be.

5       Request for formal rulings should not be reflexive,

6  and appeals to me certainly shouldn't be.  And if -- you

7  know, if Special Master Cohen is inundated with a lot of

8  unnecessary requests for formal rulings, he'll just start

9  doing one-paragraph rulings.  And, trust me, if I get --

10  start getting a lot of appeals and I think the appeals are

11  just being reflexive, I will just, you know, deny them in

12  marginal entries, won't write a thing.  Any judge would do

13  the same.  I don't want to go down that road, but, I mean,

14  that's -- if I have to, I will.

15       So -- and I really don't need lawyers for either side

16  telling me what my prior rulings mean or had meant.  I know

17  what I meant.  And if there's a question about it, I will

18  reaffirm them or make that -- or make that clear.  And

19  there's some rulings that may have meant something five

20  years ago, but things are -- have evolved.

21       And, again, there have been a lot of rulings in this

22  MDL, and OptumRx and Express Scripts didn't really have to

23  care about most of them over the last five years because you

24  weren't involved in any litigation, all right?  So no one

25  needed your documents, no one was litigating against you.

1     Now when we have these bellwethers, things are different.

2     So the rulings are -- do apply to you, and you got to follow

3     them.

4          Now, again, I made it clear that a ruling that OptumRx

5     or Express Scripts didn't participate in doesn't

6     automatically bind you, but it is the law of the case.  So

7     you've got to demonstrate to me why it shouldn't apply to

8     you, why either the law has changed or what you do or how

9     you do it, it is -- makes it -- makes your situation

10    different, and that I should rule differently, so it

11    presumptively applies.  But you have the opportunity to tell

12    me why it shouldn't or why I should do something different

13    with you vis-à-vis other defendants because your situation

14    is different.  And if you've got a good basis, of course

15    I'll review that.

16         So, you know, again, I want to -- I think I've had a

17    fairly light hand for six years.  Others might disagree --

18    *Wall Street Journal* certainly did -- but I think I had.  I

19    let the lawyers, you know, investigate, discover their case,

20    and, when they had a trial, try their case.  And I want to

21    continue doing that.

22         So that really is most of what I wanted to say.  I

23    mean, again, I have things I can do that I'd rather not do.

24    I mean, right now, for example, all of -- the Special Master

25    and his team, their time is split 50/50 between the

1    plaintiffs and the defendants writ large.  I mean, I can

2    change that.  If I think that either the plaintiffs or a

3    particular defendant is unnecessarily expending resources, I

4    can change that allocation.  I can say that a particular

5    defendant has to pay most or all of the defendant's share.

6    Doesn't have to be spread among all the other defendants.

7    And of course in an extreme case I can order one side or the

8    other to pay the other side's attorney's fees.  I think I've

9    done that maybe once in this MDL.  Again, I don't want to go

10   down that road.

11        So really that was -- that was, you know, the purpose

12   of this call.  I didn't plan to make any rulings or have

13   lawyers argue any motions.  I sensed that things were

14   getting a bit out of control.

15        And I think there was something in one of the PEC's

16   filings that said they're no longer going to meet informally

17   with OptumRx, everything has to be done in writing.  Well,

18   that is unacceptable and untenable.  You can't do it, okay?

19   The MDL couldn't work that way, couldn't have worked with

20   any other defendant.  We would have run aground a long time

21   ago.

22        So lawyers have to be able to do what lawyers do best,

23   which is meet and talk to each other, all right?  You have a

24   disagreement, you know how to work things out.  We're the

25   people in this country who know how to disagree agreeably.

1   The rest of the country darned has forgotten it; but if we

2   forget it, then there's no hope for the rest of the country.

3   We know how to do it.

4        So that really was all I had to say.  Again, I wasn't

5   going to have, you know, argument on what DR-22 means or who

6   has to do what, when or how.

7        So I've finished saying what I wanted to say.

8   Certainly I'm open to hearing from anyone.

9                    MR. BOONE:  Your Honor, this is -- can you

10  hear me?  This is Brian Boone.

11                   THE COURT:  Yes, Brian.

12                   MR. BOONE:  Excuse me.

13       From Alston & Bird for OptumRx.

14       You're right.  We're here today because of the

15  disqualification motion.  We stand by that motion.

16       I'll just add that Motley Rice and the PEC moved to

17  disqualify Endo's counsel, so we haven't done anything

18  differently from what Motley Rice did before.

19                   THE COURT:  Well, Endo was different, okay?

20       Endo -- that was a very unusual situation.  I actually

21  held an evidentiary hearing on that.  You know, whether it

22  was a good idea or not to do it, I don't know.  I didn't --

23  that was a difficult spot for me because it was a lawyer I

24  knew quite well.  But it was a very unusual circumstance.

25  And I made it very clear that I didn't want it to derail the

1    MDL or turn the MDL into armed warfare, and I think the way

2    I handled that prevented that from happening, so...

3        But you're right, it could -- it could have derailed

4    things, Brian, all right?  It had the potential.  And I, you

5    know -- I think we took steps even to try and head it off,

6    but there was -- it couldn't be resolved, so we did it.  And

7    I remember having that hearing, and I didn't want to have

8    that hearing.  But maybe having gone through it once...

9        But anyway, you filed it, all right?  So, fine, but

10   the point is I'm not going to -- I'm not going to let that

11   turn the litigation into -- involving OptumRx into armed

12   warfare.  That isn't going to happen, so...

13       And whatever happens, it's not going to delay the

14   litigation one iota.  If I have to spend all of my waking

15   hours dealing with the PEC and OptumRx, I will do it.  I am

16   not going to delay any of the deadlines.

17       So if anyone's doing anything for -- I'm not saying

18   you are, but I've been around the block a lot in 25 years,

19   and I have known counsel to do certain things because they

20   wanted to delay the case from moving forward.  This case is

21   going to be delayed by anything anyone files.  What have --

22               MR. BOONE:  Your Honor --

23               THE COURT:  Whatever --

24               (Unreportable crosstalk.)

25               MR. BOONE:  I'm sorry.  I didn't mean to

1    interrupt.

2         I can tell you we didn't do it for delay.  That was

3    not our intent.  We did it because --

4                   THE COURT:  Well, I didn't say you did, Brian.

5    But I'm just making it clear to all lawyers and the clients

6    that whatever anyone does or files, it's not going to delay

7    the litigation.

8                   MR. WEINBERGER:  Your Honor, on behalf of the

9    PEC, we very much appreciate your comments, and we take them

10   to heart as we always have throughout the years of

11   litigation.  And we certainly stand ready to meet and confer

12   with Mr. Boone and with Olga and her team.

13        The -- I just want you to know that what prompted the

14   e-mail that we would -- you know, we would no longer meet

15   and confer with Mr. Boone I think has now been addressed by

16   you, and that has to do with the fact that every time we

17   brought up scope of discovery as it relates to prior rulings

18   that you made, we -- the response that we got across the

19   board was "We don't believe those rulings apply."  They

20   would not even admit that they had any precedential value,

21   and so we were left with basically starting from the

22   beginning.

23        And we -- I'm not accusing Mr. Boone or Ms. Vieira of

24   delaying tactics, but when you're faced with the initial

25   phase of discovery being answered with over 400 pages of

1    objections and really no meaningful production, and we are

2    also faced with this continuing theme from Mr. Boone

3    particularly, that somehow we're motivated by the motion --

4    by the motion to disqualify and the positions were taken and

5    that they're unwilling to be -- to recognize the

6    precedential value of your prior rulings, it's a little bit

7    difficult to have a conversation that's meaningful and that

8    moves things forward.

9         That having been said, I think we've demonstrated,

10    Your Honor, over these past six-and-a-half years that we are

11    prepared to sit down with the defendants.  There are

12    oftentimes difficulties in reaching agreement, but we

13    certainly can narrow the scope of our disagreements.  And

14    we -- we intend to continue to act in a professional way as

15    we have for the last six-and-a-half years with respect to

16    discovery, and we are not going to engage in name-calling or

17    suggest that people are taking frivolous positions because

18    that doesn't really accomplish anything.

19         And so you have our -- you have -- if I can speak on

20    behalf of the PEC -- and I know I can -- you have our

21    commitment to acting in a very professional way to bring

22    this litigation forward because that really is what we're

23    trying to do on behalf of our clients.

24              THE COURT:  All right.  Well, thank you, Pete.

25         And, you know, the reason I wanted the client reps on

1    and why I suggested that, you know, you talk to your

2    counterparts is that, as I've said, for six years we have --

3    lawyers on both sides had very vigorously and aggressively

4    pursued their clients' interests, as they're ethically bound

5    to in this very, very important litigation, but they've done

6    it, you know, 99.9 percent of the time in a very

7    professional way.  And they've understood that they can't

8    fight about everything or else everyone loses.  The

9    plaintiffs lose, and all the defendants would go bankrupt.

10   So that doesn't accomplish anything.  And if it leads to

11   settlements, fine.  If it leads to trials, fine.  If trials

12   lead to settlements, fine.  If they don't, they don't.  No

13   one -- no one knew any of the outcomes when we started.

14        So, you know --

15                 MR. FARRELL:  Judge, this is --

16                 THE COURT:  I'm very confident that we can do

17   the same with this bellwether process with OptumRx and

18   Express Scripts, so...

19                 MR. BOONE:  Your Honor, I just wanted to

20   clarify one thing.

21        There is Brian Boone for OptumRx.

22        I know you said earlier you're not making rulings

23   today.  You also said that the previous rulings were law of

24   the case.

25                 THE COURT:  Right.

1           MR. BOONE:  I just want to clarify that you're

2    not -- you're not saying that they technically bind the

3    PBMs, because if you're saying that, we certainly would want

4    to brief that issue, which I think is what you said we can

5    do.

6           THE COURT:  Well, they presumptively -- they

7    presumptively bind you because they are the law of the case.

8    They're the law of this MDL, Mr. Boone, okay?  That's how it

9    is.

10       But you always have the opportunity to -- if you feel

11   that a prior ruling -- for example, if there's a new case, a

12   Sixth Circuit case, Supreme Court case, whatever, that

13   suggests what I did was unlawful, of course you bring it to

14   my attention.  If you think that the facts and the

15   circumstances of the PBMs are significantly different than

16   those that say the ruling was in the context of

17   distributors, then absolutely you have right to point out to

18   me why there should be some change with respect to your

19   client and/or Express Scripts.

20       But the rulings presumptively apply to you, and the

21   procedure that I've set up absolutely applies, and so it's a

22   long way from a dispute to some motion that's filed and that

23   I'm -- you know, I've insisted that everyone follow, and

24   it's worked very, very well.

25           And most of the disputes have been resolved

1     informally.  Special Master Cohen has resolved a lion's

2     share of them just by talking to people, giving some

3     suggestions, maybe some suggestions about he might rule or

4     what he thinks I'm thinking, all right?  And so it's worked

5     very well.  Obviously, if I've got to make a decision, I'm

6     capable of making them.  I have no problem with that, but...

7          So that procedure is the one we followed for six

8     years, and it has documented success.  So we're going to

9     follow it with OptumRx and Express Scripts.

10                    MR. FARRELL:  Judge, this is Paul Farrell.

11                    THE COURT:  Yes, Paul.

12                    MR. FARRELL:  I guess I wanted to kind of --

13    I'm thankful for a reset, and I look forward to resetting

14    with Mr. Boone in particular.  This is not intended to be

15    into the weeds.  This status conference was intended to help

16    us get over two primary obstacles so that we could get into

17    the weeds.  So I -- I intend to have no substantive position

18    on DR-2, DR-3, or DR-22.  Those are weeds that need to be

19    addressed.

20          In order to get to those, there are two primary

21    obstacles.  And number 1 is the precedential value of prior

22    rulings.  And might I suggest that where we're at today with

23    the PBMs is where we were at in docket number 4978, which is

24    CT-7, where Kroger's made the same arguments that Optum and

25    ESI are making, and that is -- and I'll quote you, Judge --

1   relatively new active participants.  And that's what ESI and

2   Optum are, they're relatively new participants in this

3   process.  And in 4978 you addressed what the meaning of the

4   law of the case meant for them.

5       And so what we are -- have been -- the obstacle we

6   have is that there are precedential-weighted arguments that

7   we need to get to, and so question number 1 is whether or

8   not we are going to follow the weight that is provided by

9   you in several prior orders regarding to -- we're not

10  starting over, but we are certainly able and willing to

11  raise new arguments that are new or that the old rulings are

12  inapplicable for some new reason.  We just need to be able

13  to get to that standard, if you will.

14              THE COURT:  Well, we're there.  That's what I

15  just said, Paul.

16              MR. FARRELL:  Yes, sir.

17              THE COURT:  We're --

18              MR. FARRELL:  Thank you, Your Honor.

19       The second problem -- not problem.  The second

20  obstacle is that we attempted to utilize Special Master

21  Cohen to guide us through this process.  And what I -- what

22  we filed this motion for is to basically do what you did

23  today, and that is to affirm the authority and role of the

24  Special Master as identified in docket 69, which is your

25  appointment order, and docket 3527, footnote 12, wherein

1    Walmart challenged the process.

2        And so we would like to be able to utilize the same

3    process that we've been using for six years to go to Special

4    Master Cohen to raise with him the opportunity to informally

5    address issues like DR-2, DR-3, DR-22, and for him to have

6    the standard by which he will apply the rule of the case and

7    the opportunity for Optum and ESI to ask for

8    reconsideration.

9        That's all we're asking for is for --

10            THE COURT:  All right.  Paul, I think I made

11   it clear on both of those, all right, that both the law of

12   the case and the procedures that we've all followed are

13   going to continue.  And they worked well.  The procedures

14   have worked very well.

15       And Special Master Cohen is very good and extremely

16   knowledgeable, and I think he's been extremely helpful in

17   resolving a whole lot of, you know, legitimate

18   disagreements.  I'm not saying that, you know, legitimate

19   disagreements among counsel is the best way to proceed, all

20   right?  He's very effective at suggesting ways to resolve

21   them.  And a vast majority of the disagreements have ended

22   that way.  A small number have required his formal rulings,

23   and that's what we've got.  An even smaller number have led

24   to appeals to me, and that's fine.  I think that's -- it's

25   worked very well for six years, there's no reason why it

1      can't work with OptumRx and Express Scripts, so -- okay --

2                      MR. BOONE:  Your Honor, this is Brian Boone

3      again for OptumRx.

4          It sure sounded like Mr. Farrell was getting into the

5      weeds a little bit, but I guess I want to make sure I

6      understand because you're saying that it's law of the case,

7      but that is different from saying that a ruling is

8      precedential, that it would have some presumptive weight.

9      And I guess I'm asking --

10                     THE COURT:  To me, Brian, it's the same thing,

11     all right?  I mean, law of the case -- I mean, it's --

12                     MR. BOONE:  We were --

13                     THE COURT:  It's a -- it is the law of the

14     case in this MDL.  My ruling, Special Master Cohen's

15     rulings, they all apply.  But a new litigant -- and I

16     classify both of the PBMs here as new litigants -- the fact

17     that you've been technically in the MDL from the beginning,

18     you have not been a litigant until very recent.

19         So as a new litigant, you have the opportunity if you

20     think a prior ruling should not apply to you, either because

21     the law has changed or more likely that the facts, the

22     circumstances, the situation of the PBM is different --

23     fundamentally different from that of a manufacturer,

24     distributor, or pharmacy -- and I think all of my rulings

25     were in the context of one or all of those groups -- well,

1    of course, bring that to our attention.  You may be right, I

2    don't know, but you certainly have the right to bring that.

3                    MR. BOONE:  As --

4                    THE COURT:  But in the absence of that, you've

5    got to follow them.

6                    MR. BOONE:  And, Your Honor, I guess that's

7    what I'm trying to get to because, as you've said, we were

8    not party to any of those proceedings.

9                    THE COURT:  But that doesn't matter.  A lot of

10   people weren't parties.  This is the MDL.  The judicial

11   branch assigned this to me, all right?  I have the authority

12   of the whole branch.  That -- you know, it's different.  The

13   judicial branch gave me the authority to manage this MDL,

14   that's an independent branch of government.  It's not just

15   me.

16       So I've managed it.  I've made rulings.  Those rulings

17   are the law of the case.  You have to accept them.  But

18   because you're a new litigant, you have the opportunity to

19   point out why they shouldn't apply to you, but you cannot

20   disregard them or ignore them.  If you do, I'll have to do

21   what I know how to do.

22                   MR. BOONE:  And, Your Honor, we're not saying

23   that we would ignore your rulings.  What I'm saying, that as

24   a matter of the rules, as a matter of due process, because

25   we weren't party to any of those proceedings, they can't

1    automatically apply to us as a matter of the rules, as a

2    matter of due process.

3                    THE COURT:  Well, I fundamentally disagree,

4    Mr. Boone, so you're stuck with my interpretation, okay?

5         So just -- I respect that you -- you should just

6    follow what I've said.  And if you think that a prior ruling

7    or, you know, an order of Special Master Cohen or a ruling

8    that I made should not apply to your client because you're

9    in a different -- if the facts and circumstances of a PBM is

10   different from that of a manufacturer, distributor, or

11   pharmacy, or some other reason why that order shouldn't

12   apply to you, you have every right to make it, but otherwise

13   it applies to you, and you've got to follow it.

14                   MR. BOONE:  And so, Your Honor, are you

15   amending the case management order today on what you're

16   saying?  Because in the case management order --

17                   THE COURT:  Mr. Boone, I don't want to fight

18   with you.  I've said what I've said, all right?

19        If you don't think it's clear, I suggest you talk to

20   maybe the counsel for Express Scripts, or call your

21   counterparts with some of the other defendants, all right?

22   These are very simple rules.  No one else in this MDL has

23   had any problem following them.

24        If you and your client are, I suggest, you know, you

25   might rethink what you're doing, okay?  But I'm not going

1    to -- I'm not going to quibble any more or say what ruling

2    I've amended.  I don't think I've amended a single thing.

3              MR. BOONE:  Your Honor, our whole point is

4    that we want to follow the rules.  That's all we've been

5    saying all along.

6              THE COURT:  All right.  Well, I appreciate

7    that.  These are the rules.  These two -- these are two

8    clear rules.  One is the precedential value of prior orders

9    and rulings, and the other is that it is a procedural rule

10   of the road as how I want disagreements to be handled.

11   So...

12        Okay.  Anyone else wish to say anything?

13        Sometimes I've been accused of not letting people say

14   enough, and I don't want that to be the case.

15        Any client reps wish to say anything?  Obviously you

16   were here to listen, but absolutely you're free to

17   participate.  I don't think I've met any of you.

18              MS. HASAN:  No.  Thank you, Your Honor.

19              THE COURT:  Okay.

20        All right.  Thanks, everyone.  Have a good day.

21              (Proceedings concluded at 2:18 p.m.)

22

23                    **C E R T I F I C A T E**
          I certify that the foregoing is a correct transcript
24   of the record of proceedings in the above-entitled matter
     prepared from my stenotype notes.
25              */s/ Gregory S. Mizanin*      *February 28, 2024*
              GREGORY S. MIZANIN, RDR, CRR              DATE