# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL NO. 2804** |
| | **Case No. 17-MD-2804** |
| **THIS DOCUMENT RELATES TO**: | **Judge Dan Aaron Polster** |
| *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | |
| *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13) | |
| *City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14) | |
| *County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | |

## SUPPLEMENTAL DECLARATION OF ALLISON J. CAPLIS SUPPORTING OPTUMRX, INC.'S MOTION TO DISQUALIFY MOTLEY RICE

## SUPPLEMENTAL DECLARATION OF ALLISON J. CAPLIS

I, Allison J. Caplis, declare as follows:

1.      I am over eighteen years old, of sound mind, and under no legal disability.

2.      I am counsel at Hogan Lovells US LLP, and I represented OptumRx, Inc. ("OptumRx") in responding to investigative subpoenas that the Attorneys General of Hawaii and the District of Columbia served on OptumRx.

3.      I submit this supplemental declaration in support of OptumRx's Response to Motley Rice's Sur-Reply to OptumRx's Motion to Disqualify Motley Rice.

4.      I have personal knowledge of the facts set forth in this declaration, and if called to testify in person about those facts, could competently do so under oath.

5.      I participated in OptumRx's negotiation and response to the subpoenas that Hawaii and the District of Columbia served on OptumRx. Both subpoenas required that the requested documents be produced to Linda Singer at Motley Rice.

6.      I attended calls with the District of Columbia's Office of the Attorney General. Paige Boggs, an attorney from Motley Rice, joined those calls.

7.      OptumRx raised concerns that Motley Rice attorneys could collect OptumRx's confidential information using governmental power and then turn around and use that same information in private litigation elsewhere against the company.

8.      In response to those concerns, Motley Rice represented that there was a public client group at their firm that was walled off from the firm's private group, which was memorialized in the Confidentiality Agreement. ECF No. 5276–12. Paragraph 4(i) of the Confidentiality Agreement permits disclosure of Confidential Information only to Motley Rice individuals "working on behalf of OAG in connection with the Investigation who agree to be

bound by the terms of this Agreement by signing the Addendum." Paragraph 6 notes that with respect to the disclosures authorized by Paragraph 4(i), "the OAG and OAG outside counsel shall not share, disclose, or discuss Confidential Information with any Motley Rice LLC attorney, paralegal, contractor, or staff *who is not a member of the firm's Public Client practice group, and shall limit access to Confidential Information to members of that practice group*." (emphasis added).

9.      Motley Rice also assured OptumRx that they would not use any of OptumRx's Confidential Information outside of the investigation. That assurance was memorialized in Paragraph 2 of the Confidentiality Agreement, whereby Motley Rice agreed "to use Confidential Information *solely in connection with the Investigation* and any litigation that may arise therefrom, *not to use Confidential Information in connection with any other matter*, and not to disclose any Confidential Information to any party or the public, except as provided by this Agreement provided that the OAG agree with the designation. *OAG outside counsel further agrees not to rely on Confidential Material in pursuing information or claims in any other matters outside of its representation of the OAG.*" ECF No. 5276–12 (emphasis added).

10.     The District of Columbia subpoena did not mention opioids, and neither Motley Rice nor any other government lawyer from the District ever suggested that the investigation was regarding the marketing, sale, promotion, or distribution of opioids.

11.     I also negotiated the Hawaii subpoena. Paige Boggs, an attorney from Motley Rice, joined those calls.

12.     The Hawaii subpoena did not mention opioids, and neither Motley Rice nor any other government lawyer from Hawaii ever suggested that the investigation was regarding the marketing, sale, promotion, or distribution of opioids.

13.     Once again, OptumRx expressed concerns that Motley Rice might use the Confidential Information obtained in the investigation to pursue other cases against OptumRx. OptumRx entered into a Confidentiality Agreement with Hawaii. ECF No. 5276–7. Similar to the agreement with the District of Columbia, the Confidentiality Agreement with Hawaii included a provision, in Paragraph 2, whereby Motley Rice agreed "to use Confidential Information *solely in connection with the Investigation* and any litigation that may arise therefrom, *not to use Confidential Information in connection with any other matter*, and not to disclose any Confidential Information to any party or the public, except as provided by this Agreement, except as required by law or court order. *The State's outside counsel further agrees not to rely on Confidential Information in pursuing information or claims in any other matters outside of its representation of the State.*" (emphasis added). As with the Confidentiality Agreement with the District of Columbia, the Hawaii Confidentiality Agreement, Paragraph 4(i), permits disclosure of Confidential Information only to Motley Rice individuals "working on behalf of the State in connection with the Investigation who agree to be bound by the terms of this Agreement by signing the Addendum." And Paragraph 6 notes that with respect to the disclosures authorized by Paragraph 4(i), "the State and the State's outside counsel shall not share, disclose, or discuss Confidential Information with any Motley Rice LLC attorney, paralegal, contractor, or staff *who is not a member of the firm's Public Client practice group, and shall limit access to Confidential Information to members of that practice group*." (emphasis added).

14.     With the assurances provided in the Confidentiality Agreement with Hawaii, the District of Columbia, and Motley Rice, OptumRx produced documents in response to the subpoenas. The documents and information that OptumRx produced includes information that is

highly confidential and not otherwise available to the public. OptumRx designated those documents "CONFIDENTIAL" and produced them pursuant to the Confidentiality Agreements executed with Hawaii and the District of Columbia.

15.     Those materials included documents and information about OptumRx's business operations. As described in the Declaration of Matthew P. Hooker in Support of OptumRx, Inc.'s Motion to Disqualify Motley Rice [ECF No. 5276–4 at Paragraphs 8-9], the documents included materials related to formulary development, rebate negotiations with drug manufacturers, financial projections and strategies, and clinical and formulary offerings to clients. They also included charters, policies, and other materials from OptumRx's business strategy and formulary placement committees as well as emails from custodians relating to those and other aspects of OptumRx's business. The use of such documents against OptumRx in litigation unrelated to the District of Columbia and Hawaii's investigations, such as in the bellwether cases, is the exact situation my client was concerned about and attempted to avoid through representations from Motley Rice and the executed confidentiality agreements.

16.     I understand that OptumRx does not routinely produce those types of documents and would not have produced those materials without first securing a protective order or entering into a confidentiality agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: March 5 , 2024

*Allison J Caplis*
Allison J. Caplis