# EXHIBIT A



DEPARTMENT OF LAW

CITY OF CHICAGO

November 25, 2013

**CONFIDENTIAL**
*Certified U.S. Mail*

Express Scripts Inc. c/o Illinois Corporation Service Co.
801 Adlai Stevenson Drive
Springfield, IL 62703
Attn: General Counsel's Office

    Re:    *City of Chicago Subpoena: In re Opioid Chronic Therapy Marketing Practices*

Dear Sir/Madam:

    The City of Chicago is serving you with a subpoena to provide documents and information in connection with a confidential, civil investigation into false claims that may have been submitted as a result of certain practices in deceptively marketing opioids. The Corporation Counsel for the City of Chicago (the City of Chicago Department of Law) has appointed Linda Singer, Esq. and Cohen Milstein Sellers & Toll PLLC as Special Assistant Corporation Counsel, and has directed them to serve this subpoena, receive the documents and information, and manage the production.

    If you have any questions concerning the subpoena or would like to discuss a plan for producing documents, please contact Nia Castelly at (202) 408-3751/ncastelly@cohenmilstein.com. If you have any other concerns, you should feel free to contact me at (312) 744-9028 or my colleague Fiona Burke at (312) 744-6929.

                                          Sincerely,

                                          Michael Dolesh
                                          Senior Corporation Counsel
                                          Constitutional and Commercial Litigation Division
                                          City of Chicago Department of Law

Enclosures

cc:    Fiona Burke and Linda Singer

LAW DEPARTMENT

CITY OF CHICAGO

| | |
|---|---|
| IN THE MATTER OF | INVESTIGATIVE SUBPOENA |
| CHRONIC OPIOID THERAPY PRACTICES | |

TO: EXPRESS SCRIPTS
c/o Illinois Corporation Service Co.
801 Adlai Stevenson Drive
Springfield, IL 62703

GREETINGS:

This Investigative Subpoena is issued pursuant to the provisions of the Municipal Code of Chicago ("MCC") § 1-22-050 because it appears to the Corporation Counsel that certain pharmaceutical companies have deceptively represented the safety, efficacy, benefits, and/or risks of opioids in treating chronic non-cancer pain in its marketing, which resulted in false claims being made to and paid by the City's health plan, which covers City employees and retirees, in violation of the Chicago False Claims Act, MCC § 1-22-020, including, but not limited to, MCC § 1-22-020(1).

**YOU ARE REQUIRED BY LAW TO PRODUCE** at Cohen Milstein Sellers & Toll PLLC, 1100 New York Avenue, Suite 500W, Washington, DC 20005, Attention: Linda Singer, Esq., any time prior to December 27, 2013 at 10:00 a.m., all documents and information within your possession or control described in this Investigative Subpoena.

**YOU ARE FURTHER REQUIRED BY LAW** to certify that all of the documentary material required by this Investigative Subpoena and in your possession, custody, or control has been produced and made available to the Corporation Counsel, pursuant to MCC § 1-22-050, and to provide with your production a completed certificate in substantially the form attached as Exhibit "A."

**NOTE: THESE DOCUMENTS ARE OR MAY BE PHYSICAL EVIDENCE**

**NOTE: YOU HAVE A RIGHT TO BE ASSISTED BY COUNSEL**

THE MUNICIPAL CODE OF CHICAGO PROVIDES AS FOLLOWS:

MCC 1-22-050(j)(2) <u>Petition to modify or set aside subpoena.</u>

(A) Any person who has received a subpoena issued under subsection (a) may file, in the circuit court of any county within which such person resides, is found, or transacts business, and serve upon the corporation counsel a petition for an order of the court to modify or set aside such subpoena. In the case of a petition addressed to an express demand for any product of discovery, a petition to modify or set aside such demand may be brought only in the circuit court of the county in which the proceeding in which such discovery was obtained is or was last pending. Any petition under this subparagraph (A) must be filed:

(i) within 20 days after the date of service of the subpoena, or at any time before the return date specified in the subpoena, whichever date is earlier, or

(ii) within such longer period as may be prescribed in writing by the corporation counsel.

(B) The petition shall specify each ground upon which the petitioner relies in seeking relief under subparagraph (A), and may be based upon any failure of the subpoena to comply with the provisions of this section or upon any constitutional or other legal right or privilege of such person. During the pendency of the petition in the court, the court may stay, as it deems proper, the running of the time allowed for compliance with the subpoena, in whole or in part, except that the person filing the petition shall comply with any portion of the subpoena not sought to be modified or set aside.

## **INSTRUCTIONS**

A. If any document, report, study, memorandum or other written material or information is withheld or not identified under claim of privilege, furnish a list identifying each document or requested information together with the following information (as relevant): date,

author, sender, recipient, persons to whom copies were furnished or information provided, together with their job titles, subject matter of the document, the basis for the privilege, and the paragraph or paragraphs of the Request(s) to which the document or information is responsive.

B. In each instance in which a document is produced in response to a Request, the current version should be produced together with all earlier versions, or predecessor documents serving the same function during the relevant time period, even though the title of earlier documents may differ from current versions.

C. The Investigative Subpoena calls for all described documents in your possession, custody or control without regard to the person or persons by whom or for whom the documents were prepared (e.g., your company employees, contractors, vendors, distributors, service providers, competitors, or others).

D. The following procedures shall apply to the production, inspection and copying of documents:

(a) You shall produce original, complete documents. Documents shall be produced in the order that the documents are maintained in your files, in original folders, with the folder's original file tabs.

i. Any documents produced in response to this Investigative Subpoena should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source document would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

ii. Document Unitization. Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and

3

appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

iii. <u>Bates Numbering</u>. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically branded onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. To ensure that the Bates Numbers do not obscure portions of the documents, the images may be proportionally reduced to create a larger margin in which the Bates Number may be branded. There shall be no other legend or stamp placed on the document image, except those sections of a document that are redacted to eliminate material protected from disclosure by the attorney-client or work product privileges shall have the legend "REDACTED" placed in the location where the redaction(s) occurred or shall otherwise note the location and/or location of the information for which such protections are claimed.

iv. <u>File Naming Conventions</u>. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF". Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

v. <u>Production Media</u>. The documents should be produced on CD-ROM, DVD, external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001", "V002"), as well as the volume of the material in that production wave (e.g., "-001", "-002"). For example, if the first production wave comprises document images on three hard drives, you shall label each hard drive in the following manner: "V001-001", "V001-002", "V001-003". Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in response to this Investigative Subpoena, (2) your name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

vi. <u>Objective Coding/Extracted Meta Data</u>. You shall produce with each production of documents extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields and type of content set forth in the **SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL** section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

vii. <u>Native format for Excel and databases</u>. To the extent that such documents exist in Excel or some other spreadsheet, produce the document in Excel. To the extent that the document constitutes a database, produce the document in Access.

(b) All attachments to responsive documents shall be produced attached to the responsive documents.

(c) No portion of any documents will be masked and the entire document shall be produced.

(d) The documents shall be produced at the location set forth or at such other locations as counsel agree.

(e) Documents shall be available on reasonable notice for inspection and copying after initial production throughout the term of the investigation or litigation. The documents shall be maintained in the order in which it was produced.

(f) You shall label each group of documents and interrogatories in the following manner: Response to Request No. 1; Response to Request No. 2, etc., and identify the Bates Number range for the corresponding documents that are responsive or written responses.

(g) Provide a key to all abbreviations used in the documents, providing a method of identifying all documents requiring use of the key.

(h) If you obtain information or documents responsive to any request after you have submitted your written responses or production, you should supplement your responses and/or production with any new and or different information and/or documents that become available to you.

## DEFINITIONS

1. "All" shall be construed to include the collective as well as the singular and shall mean "each," "any," and "every."

2. "Any" shall be construed to mean "any and all."

3. "Chicago" means Chicago, Illinois and the surrounding counties in which the City of Chicago employees reside, including DuPage, Kane, Lake, McHenry, and Will Counties.

4. "Chronic" means ninety (90) or more days, when referring to length of time a patient has suffered from pain or the time period for prescribed Opioid usage.

5. "Communications" and "communicated" shall mean and refer to any exchange of information by any means of transmissions, sending or receipt of information of any kind by or

5

through any means including, but not limited to, verbal expression, gesture, writings, documents, language (machine, foreign, or otherwise) of any kind, computer electronics, email, SMS, MMS or other "text" messages, messages on "social networking" sites (including but not limited to, Facebook, Google+, MySpace and Twitter), shared applications from cell phones, "smartphones," netbooks and laptops, sound, radio, or video signals, telecommunication, telephone, teletype, facsimile, telegram, microfilm or by any other means. "Communications" also shall include, without limitation, all originals and copies of inquiries, discussions, conversations, correspondence, negotiations, agreements, understandings, meetings, notices, requests, responses, demands, complaints, press, publicity or trade releases and the like that are provided by you or to you by others.

6. "Concerning" means directly or indirectly mentioning or describing, relating to, referring to, regarding, evidencing, setting forth, identifying, memorializing, created in connection with or as a result of, commenting on, embodying, evaluating, analyzing, tracking, reflecting or constituting, in whole or in part, a stated subject matter.

7. "CME" means continuing medical education as defined by the Accreditation Council for Continuing Medical Education or any state medical society.

8. "Document," "documents," "documentation," "material" or "materials" mean any writing or any other tangible thing, whether printed, recorded (in audio, video, electronically or by any other means), reproduced by any process, or written or produced by hand, including, but not limited to, letters, memoranda, notes, opinions, books, reports, studies, agreements, statements, communications (including inter-company and intra-company communications), correspondence, telegrams, email, instant messages, chat logs, SMS, MMS or other "text" messages, posted information, messages, chat logs on "social networking" sites (including but

6

not limited to, Facebook, Google+, MySpace and Twitter), logs, bookkeeping entries, summaries or records of personal conversations, diaries, calendars, telephone messages and logs, forecasts, photographs, images, tape recordings, models, statistical statements, graphs, laboratory and engineering reports, notebooks, charts, plans, drawings, minutes, bylaws, resolutions, records of conferences, expressions or statements of policy, lists of persons attending meetings or conferences, lists of clients or customers or suppliers, reports or summaries of interviews, opinions or reports of negotiations, brochures, pamphlets, advertisements, circulars, trade letters, press releases, drafts of any document and revisions of drafts of any document, and any other similar paper or record. The terms also include a copy of a document where the copy is not exactly the same as the original. The terms also include emails and other documents made or stored in electronic form, whether kept on computers, computer tapes, disks or drives, including Cloud storage, of any type, or other media upon which information may be recorded.

9. "Employee" includes, but is not limited to, all current or former salaried employees, hourly employees, independent contractors, and individuals performing work as temporary employees.

10. "Identify" means:

- (a) When used in connection with a person, provide that person's name, current residential address and telephone number, job title, and current business address and telephone number. (If current information is not available, provide last-known address and telephone number.)

- (b) When used in connection with a Document, provide the nature of the Document, its title, physical description, date, author, its current location, and identification of the current custodian.

- (c) When used in connection with an oral communication, provide the nature of that communication, the parties to it, the date, place and substance of that communication, and the identification of any document concerning it.

7

11. "Including" is used merely to emphasize that a request for certain types of documents or information should not be construed as limiting the request in any way.

12. To "Market" or "Marketing" means to advertise, publish, promote or educate, including through continuing medical education, direct mail, email, videos, websites, public relations and social media.

13. "Opioids" or "drugs" means opioids that are used to treat Chronic, non-cancer pain, and applies regardless of indications or limitations for use on the drugs' label.

14. "Person" means any natural person or such person's legal representative; any partnership, domestic or foreign corporation, or limited liability company; any company, trust, business entity, or association; and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, or trustee.

15. "Physicians" refers to doctors, therapists, hospitals, clinics, pharmacists and other medical personnel who write prescriptions or have the authority to direct or advise others to write prescriptions.

16. "You" or "Your" refers to the person(s) or business entity(s) to whom this Investigative Subpoena is directed as reflected on the first page. With respect to corporations or other business entities, these terms also shall be deemed to include all owners, officers, agents and employees thereof, and any predecessor, successor, parent, subsidiary, division, d/b/a and affiliated companies or other entities.

**SPECIAL INSTRUCTIONS**

Electronic documents should be produced in accordance with the following instructions:

A. Single page TIFFs at a 300 DPI resolution which are named for the Bates Number of the page. There should NOT be more than 1000 images per folder.

B. Document level text files containing OCR or extracted text named with the Bates Number of the first page of the document.

C. Data load file containing all of the metadata fields (both system and application – see list below) from the original Native documents – .dat for Concordance.

D. The Concordance .dat file of extracted metadata should be delimited with the Concordance default characters – ASCII 020 for the comma character and ASCII 254 for the quote character. The use of commas and quotes as delimiters is not acceptable.

E. The database field name should be included in the first line of the metadata file listed in the order they appear in the file.

F. An image load file for Concordance – such as .opt.

G. For electronic documents created in Excel (spreadsheets) or Access (databases), provide those documents in Native format.

H. For all documents produced, provide the following:

| Field # | Field Name | Format | Description |
|---|---|---|---|
| 1 | BEGDOCNO | Text | Image key of first page of document |
| 2 | ENDDOCNO | Text | Image key of last page of document |
| 3 | BEGATTACH | Text | For emails/attachments ONLY: Image key of the first page of the parent email. Please DO NOT populate these fields for emails with no attachments. |

9

| Field # | Field Name | Format | Description |
|---|---|---|---|
| 4 | ENDATTACH | Text | For emails/attachments ONLY: Image key of the last page of the last attachment.<br><br>Please DO NOT populate these fields for emails with no attachments. |
| 5 | CUSTODIAN | Text | Custodian from whom documents were collected |
| 6 | AUTHOR | Text | Email "From" data or user/author name from electronic files |
| 7 | RECIPIENT | Text | Email "To" data (semi-colon delimited, if multiple entries) |
| 8 | CC | Text | Email "CC" data (semi-colon delimited, if multiple entries) |
| 9 | BCC | Text | Email "BCC" data (semi-colon delimited, if multiple entries) |
| 10 | MAILSUBJECT | Text | Email subject. This value should be populated down to any children/attachments of the parent email. |
| 11 | MAILDATE | MM/DD/YYYY | Email date sent. This value should be populated down to any children/attachments of the parent email. |
| 12 | MAILTIME | HH:MM:SS | Email time sent, in military time. This value should be populated down to any children/attachments of the parent email. |
| 13 | ATTACHMENTS | Text | Semi-colon delimited list of the **original file names** of any attachments to an email |
| 14 | FILENAME | Text | For emails: Mail subject<br>For attachments and e-files: File name from source media |
| 15 | HASH VALUE | Text | Hash value generated for purposes of de-duplication if performed |

## RELEVANT TIME PERIOD

The relevant time period, unless otherwise indicated in a specific request, is from January 1, 2006 to the present. The time limits should not be construed as date limits; for example, if a policy or document in effect during the relevant time period was created before the relevant time period, then documents dating back to the starting date of the policy must be produced.

## DOCUMENTS AND INFORMATION TO BE PROVIDED

1. All Marketing materials, presentations, and studies concerning Opioids You received from any of the following companies and organizations: Abbott Laboratories, Cephalon, Inc., Teva Pharmaceutical Industries, Janssen Pharmaceuticals, Johnson & Johnson, Eli Lily and Company, Endo Pharmaceuticals, Purdue Pharma, King Pharmaceuticals, Boehringer Ingelheim Pharmaceuticals and Covidien Pharmaceuticals (including any of their subsidiaries and/or divisions), (collectively, "Pharmaceutical Companies"); or the American Pain Foundation, American Academy of Pain Medicine, American Pain Society, American Geriatrics Society, Wisconsin Pain and Policy Study Group, American Chronic Pain Association, Pain Care Forum (or any of its members), Partners Against Pain, C.A.R.E.S. Alliance and the American Society of Pain Educators.

2. Any records or notes of meetings You held with Pharmaceutical Company representatives concerning the use of Opioids to treat chronic, non-cancer pain.

3. All internal communications and communications between You and Pharmaceutical Companies concerning the use of Opioids to treat chronic non-cancer pain, and the associated risks from, benefits of, coverage for, or costs of such usage.

4. All reviews or analyses that You performed or relied upon concerning the use, risks, benefits, coverage, or costs of Opioids.

5. All reviews or analyses that You performed concerning the use or costs of Opioids to treat chronic, non-cancer pain, including the outcomes for patients on Opioids long-term (for three months or more).

6. Any reviews or analyses that You performed concerning rates of misuse, abuse, diversion, addiction, overdose, death or other adverse effects of Opioids.

7. All communications reflecting concerns about the use of Opioids to treat chronic, non-cancer pain.

8. Any reviews, communications, or analyses that You performed concerning Your trends in Opioid prescribing or use, including volume by drug, length or frequency of prescriptions or use, strength of dosages, and/or the types of indications for which Opioids are prescribed.

9. Documents sufficient to describe changes in Your formulary for coverage of Opioids for chronic non-cancer pain, including restrictions on the use of Opioids, including, but not limited to, prior authorization requirements, preferred drugs, and/or limits on number of prescriptions or pills, and communications regarding those changes.

10. Any communications concerning physician guidelines for the use of Opioids to treat chronic, non-cancer pain, including guidelines produced by the American Pain Society, American Academy of Pain Medicine and American Geriatric Society.

11. Any reviews, reports, or communications concerning Chicago doctors or pharmacies with suspicious patterns of opioid prescribing or dispensing.

12. Documents sufficient to describe any agreements for discounts or other price reductions for Opioids entered into between You and a Pharmaceutical Company.

13. Documents sufficient to identify (or a list) of conferences, continuing medical education programs, and other speaking programs attended by any of Your employees that included presentations on Opioids, and all Opioid-related materials obtained at those conferences or programs.

NOTICE     Pursuant to MCC § 1-22-050(j)(1), should you fail to respond as required by this Investigative Subpoena, the Corporation Counsel will request a court order as soon

12

thereafter as possible mandating your appearance and such other relief as allowed in MCC § 1-22-050(j)(1).

Dated this 25th day of November, 2013.

> STEPHEN R. PATTON
> Corporation Counsel for the City of Chicago
>
> By: *[signature]*
> Michael Dolesh
> City of Chicago Department of Law
> Constitutional and Commercial Litigation Division
> 30 N. LaSalle Street, Suite 1230
> Chicago, IL 60602
> Tel: (312) 744-0200
> Michael.Dolesh@cityofchicago.org
> Senior Corporation Counsel

# EXHIBIT "A"
## CERTIFICATE OF COMPLIANCE

IN THE MATTER OF

CHRONIC OPIOID THERAPY PRACTICES

INVESTIGATIVE DEMAND

    NOW COMES _____ *(person having knowledge of the facts and circumstances relating to the production)*, who after first being duly sworn deposes and says:

    1.    That the deponent is the _____ of Express Scripts Inc. and in his or her capacity as _____ has knowledge of the facts and circumstances relating to Express Scripts's production of documentary material.

    2.    That on the \_\_\_\_\_ day of the month of December of the year 2013, the deponent was provided the subpoena served on Express Scripts in connection with above-entitled investigation, calling for the production of records of Express Scripts.

    4.    That the deponent certifies that all of the documentary material requested by the subpoena and in the possession, custody, or control of Express Scripts has been produced and made available to the Corporation Counsel.

Executed on: _____
                          *(Date)*                                                         *(Signature of Deponent)*

                                                                                 _____
                                                                                 *(Printed Name of Deponent)*

**SUBSCRIBED AND SWORN** to before me by _____ this \_\_\_\_\_ day of _____, 2013.

_____

**NOTARY PUBLIC** in and for the County of _____, State of _____

1927229.1

CERTIFIED MAIL

7006 0100 0002 7768 0860

UNITED STATES POSTAGE
$ 06.
02 1M
0004222792    NOV 26
MAILED FROM ZIP CODE