# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

IN RE: NATIONAL PRESCRIPTION
OPIATE LITIGATION

THIS DOCUMENT RELATES TO:

*Track 12: City of Rochester v. Purdue
Pharma, L.P.*, No. 19-op-45853

*Track 13: Lincoln County v. Richard
Sackler, M.D. et al.*, Case No. 20-op-45069

)
)
)
)
)
)
)
)
)
)

MDL 2804

Case No. 1:17-md-2804

Judge Dan Aaron Polster

# MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF PERSONAL JURISDICTION

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

STANDARD OF REVIEW ................................................................................................ 8

ARGUMENT ...................................................................................................................... 10

I.      THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING
        DEFENDANTS. ......................................................................................................... 10

II.     THE COURT LACKS JURISDICTION OVER THE MOVING DEFENDANTS
        UNDER NEW YORK'S LONG-ARM STATUTE. ........................................................ 12

III.    THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING
        DEFENDANTS AS A MATTER OF FEDERAL DUE PROCESS. .............................. 14

CONCLUSION ................................................................................................................... 21

**TABLE OF AUTHORITIES**

**Page(s)**

FEDERAL CASES

*48th Rest. Assocs. LLC v. Avra Hosp. LLC*,
    2022 U.S. Dist. LEXIS 12440 (S.D.N.Y. Jan. 24, 2022) ....................................................... 9

*Bristol-Myers Squibb Co. v. Superior Court*,
    582 U.S. 255 (2017) ................................................................................................................. 9

*C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*,
    2021 U.S. Dist. LEXIS 158736 (E.D. Mo. Aug. 23, 2021) ............................. 4, 6, 10, 16, 21

*Cannella v. Intercontinental Hotels Grp., PLC*,
    2023 U.S. Dist. LEXIS 46840 (S.D.N.Y. Mar. 20, 2023) ...................................................... 5

*Chen v. Dunkin' Brands, Inc.*,
    954 F.3d 492 (2d Cir. 2020) ......................................................................................... 3, 11, 17

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ..................................................................................... 3, 9, 10, 11, 18

*Federated Mut. Ins. Co. v. FedNat Holding Co.*,
    928 F.3d 718 (8th Cir. 2019) .......................................................................................... 14, 15

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Court.*,
    141 S. Ct. 1017 (2021) .................................................................................................... 9, 14

*In re Aegean Marine Petroleum Network, Inc.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) ............................................................. 4, 6, 9, 16, 21

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................................... 15

*Jazini by Jazini v. Nissan Motor Co.*,
    148 F.3d 181 (2d Cir. 1998) ......................................................................................... 1, 13, 16

*Johnson v. Woodcock*,
    444 F.3d 953 (8th Cir. 2006) ................................................................................................... 9

*Khan v. W. Express Inc.*,
    2020 U.S. Dist. LEXIS 144881 (E.D.N.Y. Aug. 12, 2020) ................................................ 18

*L'Europeene de Banque v. La Republica de Venez.*,
    700 F. Supp. 114 (S.D.N.Y. 1988) ............................................................................ 1, 13, 16

*Metro Cas. Ins. Co. v. Combs*,
    2014 U.S. Dist. LEXIS 32594 (E.D. Mo. Mar. 13, 2014) .................................................. 18

ii

*Miss. ex rel. Fitch, Att'y Gen. v. Eli Lilly & Co.*,
   Case No. 21–CV–674–KHJ–MTP (S.D. Miss. Aug. 15, 2022) ........................................... 6

*Morningside Church, Inc. v. Rutledge*,
   9 F.4th 615 (8th Cir. 2021) .................................................................................. 9, 12

*Nat'l Union Fire Ins. Co. of Pitt., Pa. v. UPS Supply Chain Sols, Inc.*,
   74 F.4th 66 (2d Cir. 2023) ....................................................................................... 12

*Plusgrade L.P. v. Endava Inc.*,
   2023 U.S. Dist. LEXIS 39114 (S.D.N.Y. Mar. 8, 2023) ................................. 4, 6, 10, 16, 21

*Sahm v. Avco Corp.*,
   2023 U.S. Dist. LEXIS 114897 (E.D. Mo. July 5, 2023) ................................. 4, 6, 10, 16, 21

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ...................................................................................................... 16

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) .............................................................................. 2, 13, 16

*Walden v. Fiore*,
   571 U.S. 277 (2014) .............................................. 2, 3, 5, 6, 7, 9, 14, 15, 17, 18, 19, 20, 21

**STATE CASES**

*Aybar v. Aybar*,
   27 N.Y.3d 274 (N.Y. 2021) ...................................................................................... 17

*State ex rel. Cedar Crest Apts., LLC v. Grate*,
   577 S.W.3d 490 (Mo. 2019) .............................................................................. 2, 13, 16

*State ex rel. Norfolk S. Ry. v. Dolan*,
   512 S.W.3d 41 (Mo. 2017) .................................................................................. 3, 11, 17

*Williams v. Beemiller, Inc.*,
   33 N.Y.3d 523 (N.Y. 2019) ...................................................................................... 9, 14, 15

**RULES**

CPLR § 302 ........................................................................................................... 8, 12

Fed. R. Civ. P. 12(b)(2) ................................................................................................ 9

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 1

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. XIV ......................................................................... 8, 9, 10, 12, 14

## INTRODUCTION

Defendants UnitedHealth Group Incorporated (**UHG**), Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. (together, the **Moving Defendants**) move to dismiss Plaintiff the City of Rochester's (**Rochester**) and Plaintiff Lincoln County's (**Lincoln County**) (together, **Plaintiffs**) amended complaints (Dkts. 5296–2 and 5296–3) for lack of personal jurisdiction.

As explained in the PBM Defendants' forthcoming brief supporting their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), many of Plaintiffs' claims against all defendants fail because there are no plausible factual allegations supporting them. But the Court doesn't even need to reach those arguments for nine of those entities—UHG, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.—because Plaintiffs' allegations fail to establish that the Court has personal jurisdiction over them.

**UHG and Optum, Inc.**[1] Plaintiffs sued UHG and Optum, Inc. in their capacities as OptumRx's parent companies. But allegations of a parent-subsidiary relationship do not establish jurisdiction over the parent. *See L'Europeene de Banque v. La Republica de Venez.*, 700 F. Supp. 114, 124 (S.D.N.Y. 1988) ("For jurisdictional purposes, a parent-subsidiary relationship . . . is insufficient, standing by itself, to establish personal jurisdiction over the foreign parent."); *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) ("Where, as here, the claim is that

---

[1] UHG and Optum, Inc. are both incorporated in Delaware and have their principal places of business in Minnesota.

the foreign corporation is present in New York state because of the activities there of its subsidiary, the presence of the subsidiary alone does not establish the parent's presence in the state. For New York courts to have personal jurisdiction in that situation, the subsidiary must be either an 'agent' or a 'mere department' of the foreign parent.") (internal citations omitted); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) ("[P]ersonal jurisdiction can be based on the activities of a nonresident corporation's in-state subsidiary. . . only if the parent so controlled and dominated the affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."); *State ex rel. Cedar Crest Apts., LLC v. Grate*, 577 S.W.3d 490, 495 (Mo. 2019) (rejecting personal jurisdiction over subsidiary companies because plaintiff failed to plead facts demonstrating parent companies were agents of subsidiary defendant). The few allegations about UHG's own supposed conduct don't come close to establishing that UHG has engaged in suit-related conduct creating a "substantial connection" with either State. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

**OptumRx Discount Card Services, LLC and Optum Perks, LLC.**[2] Plaintiffs mention those two entities just a handful of times in the 280-plus-page amended complaints. *E.g.*, Rochester Am. Compl. ¶¶ 171–77, 501, 504; Lincoln Am. Compl. ¶¶ 155–60, 173, 485, 488. Most of those allegations concern the location of the entities' principal places of business and agents for service of process. Otherwise, Plaintiffs allege only that "Optum's" (undifferentiated) "cash card service" is "governed by *either* Optum Perks, LLC *or* Optum Discount Card Services, LLC." Rochester Am. Compl. ¶ 501; Lincoln Am. Compl. ¶ 485 (emphasis added). The only jurisdiction-specific

---

[2] OptumRx Discount Card Services, LLC and Optum Perks, LLC are incorporated in Delaware. OptumRx Discount Card Services, LLC's principal place of business is in South Carolina. Optum Perks, LLC's principal places of business in Illinois.

allegation about OptumRx Discount Card Services, LLC is an allegation that it "is registered to do business" in New York and Missouri and "may be served through its registered agent" in those states. Rochester Am. Compl. ¶ 172; Lincoln Am. Compl. ¶ 156. But it is well settled that registration to do business in a state is not enough to establish personal jurisdiction over the defendant in that state. *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020) ("[I]n light of *Daimler*, our own precedent, and the unanimous conclusion of the three New York intermediate courts to have considered the issue, we now hold that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process under BCL § 1301(a)."); *State ex rel. Norfolk S. Ry. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) ("[T]he registration statute does not provide an independent basis for broadening Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present."). As to Optum Perks, LLC, Rochester presses only one allegation that even mentions New York and then only to say that "Optum Perks offers a free pharmacy discount card in New York" with a link to a website that says, "Get your free New York State Hospitality & Tourism Association prescription discount card." Rochester Am. Compl. ¶ 175. That allegation could never be enough to establish *suit-related* conduct creating a substantial connection with the forum State. *Walden*, 571 U.S. at 284. Lincoln County doesn't even say that much. It offers no allegations linking Optum Perks to Missouri, never mind allegations of suit-related conduct creating a substantial connection with the State.

**OptumInsight, Inc. and OptumInsight Life Sciences, Inc.**[3] Plaintiffs refer to the two

---

[3] OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are both incorporated in Delaware. OptumInsight, Inc. has its principal place of business in Minnesota. OptumInsight Life Sciences, Inc. has its principal place of business in Massachusetts.

entities together as "OptumInsight" (*e.g.*, Rochester Am. Compl. ¶ 159; Lincoln Am. Compl. ¶ 142) without pleading which entity allegedly did what. That kind of group pleading isn't enough; the law requires Plaintiffs to allege facts showing that *each* defendant has the required suit-related contacts with the forum. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant."); *Plusgrade L.P. v. Endava Inc.*, 2023 U.S. Dist. LEXIS 39114, at *8, *11 (S.D.N.Y. Mar. 8, 2023) (granting Defendants' motion to dismiss and finding that "group pleading precludes a proper analysis of the personal jurisdiction" issues; "The Court simply cannot assess the jurisdictional argument based on such a non-particularized allegation, and Plaintiff has failed to make an adequate *prima facie* showing of personal jurisdiction with respect to each defendant."); *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 2021 U.S. Dist. LEXIS 158736, at *10 (E.D. Mo. Aug. 23, 2021) (dismissing a defendant for lack of personal jurisdiction because "the bulk of Plaintiffs' allegations involving him are vague and conclusory allegations in which he is simply lumped in with the other defendants"); *Sahm v. Avco Corp.*, 2023 U.S. Dist. LEXIS 114897, at *12 (E.D. Mo. July 5, 2023) ("Without individualized allegations showing that Plaintiffs' claims against each Defendant arose from its contacts with Missouri, the Court cannot find personal jurisdiction over them."). Plaintiffs don't even try to meet that standard.

Plaintiffs mention OptumInsight, Inc. only a few times in the 280-plus-page amended complaints and then only to allege facts about its citizenship and certain business registrations and licenses. Rochester Am. Compl. at p. 1, ¶¶ 155–57, 159, 164, 189; Lincoln Am. Compl. at p. 1, ¶¶ 140–41, 143. Plaintiffs also mention OptumInsight Life Sciences, Inc. only a few times and then only to focus on facts about its corporate citizenship. Rochester Am. Compl. at p. 1, ¶¶ 158–59,

189; Lincoln Am. Compl. at p. 1, ¶¶ 142–43. And while Plaintiffs press *one* substantive allegation about OptumInsight Life Sciences, Inc., it has nothing to do with New York or Missouri. Rochester Am. Compl. ¶ 420 ("In a 2013 email, an OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers. . . ."); Lincoln Am. Compl. ¶ 404 (same).

Even if the Court credited Plaintiffs' group allegations about "OptumInsight" (and it should not), Plaintiffs don't allege that "OptumInsight" had *any* suit-related contacts with New York or Missouri. They allege that "OptumInsight" (undifferentiated) worked with opioid manufacturers to market their opioids and promote the use of opioids to treat pain. *See, e.g.*, Rochester Am. Compl. ¶ 200; Lincoln Am. Compl. ¶ 184. But none of those allegations mentions New York or Missouri or otherwise suggests that "OptumInsight" had *any* connection with those States, let alone suit-related contacts creating a substantial connection with the State. *Walden*, 571 U.S. at 284. The only allegations that even mention New York in the same breath as either "OptumInsight" entity do not change anything. For example, Rochester alleges that an OptumInsight Inc. predecessor changed its name after an alleged reimbursement rate scheme yielded a settlement with New York. Rochester Am. Compl. ¶ 155. Rochester does not even try through its allegations to suggest that the settlement has anything to do with this case. *See Walden*, 571 U.S. at 284 ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). Plaintiffs also press one conclusory allegation that "OptumInsight's" (undifferentiated) alleged conduct "expand[ed] [opioids'] use and availability throughout the country, including" in New York (Rochester Am. Compl. ¶ 161) and Missouri (Lincoln Am. Compl. ¶ 145). That conclusory allegation does not count in the jurisdictional calculus. *See Cannella v. Intercontinental Hotels Grp., PLC*, 2023 U.S. Dist. LEXIS

46840, at *7 (S.D.N.Y. Mar. 20, 2023) (plaintiff's "conclusory non-fact specific jurisdiction allegations" were insufficient to establish a prima facie case of personal jurisdiction) (citing *Jazini*, 148 F.3d at 186); Order granting Mot. for Summ. J., *Miss. ex rel. Fitch, Att'y Gen. v. Eli Lilly & Co.*, Case No. 21–CV–674–KHJ–MTP (S.D. Miss. Aug. 15, 2022), Dkt. 112 at *8–9 ("The State fails to provide facts that any of the alleged 'coordination' or 'advising' took place in Mississippi, that OptumInsight conducted business in Mississippi that was '"continuing and substantial,' or that it tried to 'realize a pecuniary benefit' or 'otherwise accomplish an object' in Mississippi."). It certainly does not qualify as an allegation establishing suit-related conduct creating a substantial connection with either State.

**OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.**[4] Plaintiffs lump those three entities together as "OptumHealth" without pleading which entity allegedly did what. That sort of group pleading is improper. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 135; *Plusgrade L.P.*, 2023 U.S. Dist. LEXIS 39114, at *8, *11; *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12. Plaintiffs again don't even try to allege facts showing that *each* of those defendants has suit-related contacts with the forums, let alone suit-related contacts creating a substantial connection with those forums. *See Walden*, 571 U.S. at 284. Plaintiffs mention OptumHealth Care Solutions, LLC only a handful of times in the 280-plus-page amended complaints and then only to allege facts about its citizenship and its registration to do business in and holding a license in the States. *E.g.*, Rochester Am. Compl. at p. 1, ¶¶ 164, 178–80, 186, 189; Lincoln Am. Compl. at p. 1, ¶¶ 161–63, 170. Plaintiffs mention Optum Health Networks, Inc. only a handful of times and then only to allege facts about its citizenship, that it is registered to do

---

[4] OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. are incorporated in Delaware, and their principal place of business is in Minnesota.

business in New York and Missouri, and that it provides certain "care services." Rochester Am. Compl. at p. 1, ¶¶ 183–86, 189; Lincoln Am. Compl. at p. 1, ¶¶ 166–69, 173. Plaintiffs mention OptumHealth Holdings, LLC only a handful of times and then only to focus on alleged facts about its citizenship. Rochester Am. Compl. at p. 1, ¶¶ 182, 186, 189; Lincoln Am. Compl. at p. 1, ¶ 165. Those allegations could never be enough for personal jurisdiction in either New York or Missouri.

Even if the Court credits Plaintiffs' group allegations about "OptumHealth" (and it should not), Plaintiffs don't allege that "OptumHealth" had *any* contacts with New York or Missouri— never mind suit-related contacts. They allege that "OptumHealth" (undifferentiated) had a supposed partnership with Purdue to educate the medical community about the "undertreatment" of pain and expanding the use of opioids. Rochester Am. Compl. ¶¶ 30, 181, 188, 372–77; Lincoln Am. Compl. at p. 1, ¶¶ 30, 164, 172, 356–61. But none of those allegations mentions New York or Missouri or otherwise suggests that "OptumHealth" had any connection with those States, let alone suit-related contacts creating a substantial connection with New York or Missouri. *See Walden*, 571 U.S. at 284.

Plaintiffs' improper group pleading doesn't stop with "OptumInsight" and "OptumHealth." Plaintiffs also try to mask the absence of specific allegations about the moving entities by shoehorning them (among other defendants) into other labels like "Optum," "Defendants," "the Optum Defendants," and "the PBM Defendants." *E.g.*, Rochester Am. Compl. at p. 1; Lincoln Am. Compl. at p. 1. But again, the law requires Plaintiffs to allege specific *facts* showing that *each* defendant has the required suit-related contacts creating a substantial connection with the forum (*Walden*, 571 U.S. at 284); they cannot just lump them all together. Plaintiffs sue "Optum"—which by their definition includes OptumRx, Optum, Inc., Optum Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Services, LLC, OptumHealth Holdings, LLC, Optum Health

Networks, Inc., and "OptumInsight" (itself a victim of group pleading)—"in its capacities as a: (1) PBM; (2) data, analytics, consulting, and research provider; and (3) mail-order pharmacy." But OptumRx, Inc. is the *only* entity that is a "PBM" and "mail-order pharmacy." Optum, Inc., Optum Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Services, LLC, OptumHealth Holdings, LLC, Optum Health Networks, Inc., provide *none* of those services (in New York, Missouri, or anywhere else), and Plaintiffs do not allege otherwise. OptumInsight, Inc. and OptumInsight Life Sciences, Inc., are not PBMs or mail-order pharmacies, and Plaintiffs do not allege otherwise. Plaintiffs' one-for-all allegations do not support jurisdiction over the Moving Defendants.

## STANDARD OF REVIEW

This Court may not exercise personal jurisdiction over a defendant unless doing so complies with the States' long-arm statutes and federal due process under the Fourteenth Amendment to the U.S. Constitution.

*New York*. To satisfy New York's long-arm statute, Plaintiffs must show that their cause of action arises from defendants': "(1) transact[ing] any business within the state or contract[ing] anywhere to supply goods or services in the state;" "(2) commit[ing] a tortious act within the state"; "(3) commit[ing] a tortious act [outside] the state causing injury to person or property within the state . . . if [they] (i) regularly do[] or solicit[] business, or engage[] in any other persistent course of conduct, or derive[] substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expect[] or should reasonably expect the act to have consequences in the state and derive[] substantial revenue from interstate or international commerce;" or "(4) own[ing], us[ing] or possess[ing] any real property situated within the state." NY CLS CPLR § 302(a)(1). The allegations must also establish that exercising jurisdiction would comport with the Fourteenth

Amendment's Due Process Clause. *See Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528–29 (N.Y. 2019).

*Missouri.* Missouri's long arm-statute reaches the constitutional limit, so the Court "turn[s] immediately to the question whether the assertion of personal jurisdiction would violate the due process clause." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021).

Under the Due Process clause, there are two types of personal jurisdiction: general and specific. General jurisdiction exists only if a business's contacts are so pervasive that it can be "fairly regarded as at home" in the State. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court.*, 141 S. Ct. 1017, 1024–25 (2021). The alleged contacts with the forum State must have been the defendant's own choice and not "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286. The factual allegations must establish that the defendant purposefully "reached out beyond" their home State and into another forum (*id.* at 285) and that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) (emphasis omitted). Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over each defendant. *See 48th Rest. Assocs. LLC v. Avra Hosp. LLC*, 2022 U.S. Dist. LEXIS 12440, at *5 (S.D.N.Y. Jan. 24, 2022) ("A plaintiff opposing a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit.") (internal citations omitted); *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) ("The party asserting personal jurisdiction has the burden of establishing a prima facie case."). Accordingly, *each* defendant's contacts with the forum must be assessed individually. *In re Aegean*

*Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 135; *Plusgrade L.P.*, 2023 U.S. Dist. LEXIS 39114, at *8, *11; *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12.

## ARGUMENT

Plaintiffs do not allege that any of the Moving Defendants is at home in New York or Missouri or otherwise subject to general jurisdiction in either State. And Plaintiffs have not alleged facts establishing that this Court has specific jurisdiction over each of the Moving Defendants under either New York's long-arm statute or the Due Process Clause. Because there are no allegations establishing that any of the Moving Defendants has suit-related contacts creating a substantial connection with New York or Missouri, this Court should dismiss the claims against them for lack of personal jurisdiction.

## I.  THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING DEFENDANTS.

General jurisdiction attaches only if a business "is fairly regarded as at home" in a state. *Daimler*, 571 U.S. at 137. In most cases, a company's "place of incorporation and principal place of business" are the only things that satisfy that requirement. *Daimler*, 571 U.S. at 137.

Plaintiffs allege that UHG, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences,[5] OptumHealth Care Solutions, Inc., OptumHealth Holdings, LLC, and Optum Health Networks, LLC are organized under Delaware law with their principal places of business in Minnesota. Rochester Am. Compl. ¶¶ 143, 150, 155, 158, 178, 182–83; Lincoln Am. Compl. ¶¶ 130, 136, 140, 142, 161, 165–66. Plaintiffs also allege that OptumRx Discount Card Services, LLC, is organized under Delaware law with its principal place of business in South Carolina (Rochester Am. Compl.

---

[5] Although not relevant to this motion, OptumInsight Life Sciences Inc.'s principal place of business is in Massachusetts, not Minnesota.

¶ 171; Lincoln Am. Compl. ¶ 155) and that Optum Perks, LLC is organized under Delaware law with its principal place of business in Michigan (Rochester Am. Compl. ¶ 174; Lincoln Am. Compl. ¶ 158). By Plaintiffs' own allegations, the Moving Defendants are not at home in New York or Missouri.

The amended complaints contain no factual allegations that would render this the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. There are no factual allegations showing that any entity has "affiliations with [New York or Missouri that] are so 'continuous and systematic' as to render them essentially at home" in either State. *Id.* at 127 (quotation omitted). Plaintiffs offer no allegations that any entity's activities constitute substantial or continuous and systematic contacts that approximate a physical presence in New York or Missouri. Inasmuch as Plaintiffs suggest that any of those entities consented to general jurisdiction in either State by registering to do business there (Rochester Am. Compl. ¶¶ 145, 151, 156, 172, 179, 184; Lincoln Am. Compl. ¶¶ 92, 97, 101, 103, 109, 115, 131, 147, 156), the argument is meritless. *Chen*, 954 F.3d at 499 ("[I]n light of *Daimler*, our own precedent, and the unanimous conclusion of the three New York intermediate courts to have considered the issue, we now hold that a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process under BCL § 1301(a)."); *Norfolk S. Ry.*, 512 S.W.3d at 52 ("[T]he registration statute does not provide an independent basis for broadening Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present.").

## II.   THE COURT LACKS JURISDICTION OVER THE MOVING DEFENDANTS UNDER NEW YORK'S LONG-ARM STATUTE.

The Court also lacks specific personal jurisdiction over the Moving Defendants under New York's long-arm statute.[6] Rochester does not allege facts showing any Moving Defendant's involvement in activities enumerated in the statute. Rochester does not even try to allege that its claims arise from the Moving Defendants' (1) transacting business in New York or contracting to supply services in the State (NY CLS CPLR § 302(a)(1)), (2) committing a tortious act in New York (*id.* (a)(2)), or (3) owing, using, or possessing any real property in New York (*id.* (a)(4)). Inasmuch as Rochester tries to suggest that any Moving Defendant committed a tortious out-of-state act that caused in-state injury (*id.* (a)(3)), Rochester's allegations fall short.

Under, Section 302(a)(3), Rochester was required to show that "(1) [t]he [plaintiff stated a colorable claim that the] defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; and (5) the defendant derives substantial revenue from interstate or international commerce." *Nat'l Union Fire Ins. Co. of Pitt., Pa. v. UPS Supply Chain Sols, Inc.*, 74 F.4th 66, 72 (2d Cir. 2023). As explained in detail in an allegation-by-allegation review in Section III below, Rochester has not alleged facts supporting those elements.

*First*, Rochester has not stated a colorable claim that any Moving Defendant committed a tortious act outside the State. The allegations about UHG and Optum, Inc., for example, are primarily parent-subsidiary allegations. *E.g.*, Rochester Am Compl. ¶¶ 13, 148–49, 191, 312, 360, and 400. But a parent-subsidiary relationship, without more, is not enough to establish personal

---

[6] Because Missouri's long-arm statute reaches the constitutional limit, we do not separately address it. Instead, we address personal jurisdiction in Missouri only under the Due Process Clause. *Morningside Church*, 9 F.4th at 619.

jurisdiction over either the parent or the subsidiary, and Rochester doesn't even try to allege facts establishing that UHG or Optum, Inc. and their subsidiaries are alter egos. *See L'Europeene de Banque*, 700 F. Supp. at 124; *Jazini by Jazini*, 148 F.3d at 184; *Viasystems, Inc.*, 646 F.3d at 596; *Cedar Crest Apts., LLC*, 577 S.W.3d at 495. Nor do Rochester's allegations about OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. show that any of those entities committed a tortious act outside the State. Those allegations focus on "OptumInsight's" (undifferentiated) and "OptumHealth's" (undifferentiated) supposed work providing research, data, consulting, and marketing services to certain opioid manufacturers (Rochester Am. Compl. ¶¶ 30, 161, 181, 188, 199–202, 342–44, 356–64, 366–71, 372–77, 400, 420), and OptumRx Discount Card Services, LLC, and Optum Perks, LLC's allegedly overseeing the purchase of prescription drugs through cash cards. Rochester Am. Compl. ¶¶ 501, 504. There is nothing tortious about providing research, data, consulting, marketing, or cash-card services.

*Second*, most of Rochester's allegations about those entities has nothing to do with New York—they appear in parallel opioid cases in at least Missouri and Texas. *See generally* Lincoln County Am. Compl.; Dkt. 5296–5 (Webb County, Texas Am. Compl.). The few allegations that mention New York have nothing to do with these bellwether litigations. As explained in Section III below, for example, Rochester alleges that certain Moving Defendants are registered to do business in New York or hold certain licenses with a New York department. Rochester Am. Compl. ¶¶ 145, 151, 156, 157, 164, 172, 179, and 184. It alleges that OptumInsight Inc. predecessor changed its name after an alleged reimbursement rate scheme yielded a settlement with New York. Rochester Am. Compl. ¶ 155. And it alleges that Optum Perks, LLC "offers a free pharmacy discount card in New York" followed by a link to a website that says, "Get your free

13

New York State Hospitality & Tourism Association prescription discount card." *Id.* ¶ 175. But at no point does Rochester explain what relevance those allegations have to its claims or liability theories.

Because Rochester cannot establish personal jurisdiction over the Moving Defendants under New York's long-arm statute, the analysis ends there. *Williams*, 33 N.Y.3d at 528–29. But Rochester also cannot establish jurisdiction over the Moving Defendants as a matter of federal due process.

## III. THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING DEFENDANTS AS A MATTER OF FEDERAL DUE PROCESS.

The Court also lacks specific personal jurisdiction over the Moving Defendants under the federal constitution. Specific jurisdiction under the Due Process clause exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *see also Ford Motor Co.*, 141 S. Ct. at 1026. The U.S. Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290; *see also Williams*, 33 N.Y.3d at 528–29; *see also Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019) ("Under our five-factor test for assessing the sufficiency of a defendant's contacts, we consider (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.") (citations omitted). "[T]he mere likelihood that a product will find its way into the forum cannot establish the requisite connection between defendant and the forum such that [defendant] should

14

reasonably anticipate being haled into court there." *Williams*, 33 N.Y.3d at 528–29 (quotations and citations omitted); *see also Federated Mut. Ins. Co.*, 928 F.3d at 720. Exercising jurisdiction over the non-resident defendant must comport with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiffs have not come close to alleging that the Moving Defendants engaged in "suit-related conduct . . . creat[ing] a substantial connection with" New York or Missouri. *Walden*, 571 U.S. at 284. Indeed, other than two allegations about certain entities' registering to do business in New York and Missouri—which, as explained above, is insufficient—not a single allegation about those entities even mentions New York or Missouri. There are no factual allegations establishing that that the Moving Defendants engaged in suit-related conduct by which they "purposefully avail[ed] [them]sel[ves] of the privilege of conducting activities within" either State (*Williams*, 33 N.Y.3d at 528–29; *Federated Mut. Ins. Co.*, 928 F.3d at 720).

**The opening paragraph and Rochester Amended Complaint paragraphs 159, 186, and 189.**[7] In those paragraphs, Plaintiffs merely list the defendants and then improperly group them together. For example, the opening paragraph defines "Optum" to include *ten* different entities and "Defendants" or "the PBM Defendants" to include *eighteen* different entities. At paragraph 159, Plaintiffs lump two entities together as "OptumInsight." At paragraph 186, they lump three entities together as "OptumHealth." At paragraph 189, they lump nine entities together as "Optum"—an especially confusing group allegation given that the opening paragraph defines "Optum" to include ten entities. That mismatch demonstrates that even Plaintiffs cannot track which entities they claim did what.

Group pleading defines both amended complaints. Plaintiffs' one-for-all allegations only

---

[7] Lincoln Am. Compl. at p. 1, ¶¶ 143, 170, 173.

muddy the waters and demonstrate that they cannot establish jurisdiction over each defendant individually—as they are required to do. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 135; *Plusgrade L.P.*, 2023 U.S. Dist. LEXIS 39114, at *8, *11; *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12.

**Rochester Amended Complaint paragraphs 13, 148–49, 191, 312, 360, and 400.**[8] In those paragraphs, Plaintiffs try to rope UHG and Optum, Inc. into the litigation based on their status as corporate parents. At paragraphs 13 and 312, for example, Plaintiffs allege that UHG is OptumRx's parent. At paragraph 191, Plaintiffs allege that Optum, Inc. is the parent of three "sectors"—OptumRx, "OptumHealth," (undifferentiated) and "OptumInsight" (undifferentiated). Perhaps recognizing that allegations of a parent-subsidiary relationship are insufficient to establish jurisdiction over the parent (*L'Europeene de Banque*, 700 F. Supp. at 124; *Jazini by Jazini*, 148 F.3d at 184; *Viasystems, Inc.*, 646 F.3d at 596; *Cedar Crest Apts., LLC*, 577 S.W.3d at 495), Plaintiffs also allege that UHG, "through its executives and employees, control the enterprise-wide policies that inform both UHC and Optum's lines of business in order to maximize profits across the corporate family," and that the conduct "had a direct effect in New York." Rochester Am. Compl. ¶¶ 148–49.

Inasmuch as those conclusory allegations represent Plaintiffs' efforts to pierce the corporate distinction among the "Optum" entities, they fall well short of what would be required to allege an alter-ego or other veil-piercing theory. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks and citation omitted).

---

[8] Lincoln Am. Compl. ¶¶ 13, 134–35, 175, 296, 344, 384.

Plaintiffs have not alleged facts coming close to suggesting that any "Optum" entities are alter egos or justifying treating them as one corporate entity.

Finally, Plaintiffs' efforts to establish jurisdiction over UHG based on its own alleged conduct (Rochester Am. Compl. ¶¶ 360, 400; Lincoln Am. Compl. ¶¶ 344, 384) fail. Plaintiffs allege, for example, that UHG once allegedly requested $200,000 from Purdue for a clinical initiative (Rochester Am. Compl. ¶ 360; Lincoln Am. Compl. ¶ 344) and that, on one occasion twenty-three years ago, a UHG executive allegedly told Purdue that Purdue was acting irresponsibly (Rochester Am. Compl. ¶ 400; Lincoln Am. Compl. ¶ 384). Those allegations could never be enough to establish personal jurisdiction. As a threshold matter, the allegations do not mention New York or Missouri, so they don't establish that UHG purposefully availed themselves of the privilege of conducting business in either State, never mind that UHG's (unpleaded) suit-related conduct created a substantial connection with those States. *Walden*, 571 U.S. at 284.

**Rochester Amended Complaint paragraphs 143-47, 150-54, 155-58, 160, 164, 171–80, 182–85, 187, and 310**.[9] In those paragraphs, Plaintiffs provide general background about certain entities, including where they are citizens and certain licenses or registrations they hold. Most of these allegations have nothing to do with New York or Missouri. And those that do don't move the needle. For example, Plaintiffs allege merely that UHG, Optum, Inc., OptumInsight, Inc., Optum Discount Card Services, LLC, OptumHealth Care Solutions, LLC, and Optum Health Networks, Inc. are registered to do business in New York. Rochester Am. Compl. ¶¶ 145, 151, 156, 172, 179, and 184. As explained above, however, allegations about where a company is registered to do business are not enough for general jurisdiction. *Chen*, 954 F.3d at 499; *Aybar v. Aybar*, 27 N.Y.3d 274, 284 (N.Y. 2021); *Norfolk S. Ry.*, 512 S.W.3d at 52. Nor can they establish

---

[9] Lincoln Am. Compl. ¶¶ 130–33, 136–39, 140–42, 144, 155–62, 165–69, 171, 294.

specific jurisdiction because Plaintiffs offer no factual allegations showing that an alleged New York or Missouri registration has anything to do with this case, never mind that it constitutes suit-related conduct creating a substantial connection with either State. *See Walden*, 571 U.S. at 284. Plaintiffs similarly allege that OptumInsight, Inc. and OptumHealth Care Solutions, LLC hold certain licenses with the New York Department of Finance without even trying to tie those licenses to the case. Rochester Am. Compl. ¶¶ 157, 164, and 180. But an entity's holding an in-state license—especially when the license has nothing to do with the case—is not enough to confer jurisdiction. *See Khan v. W. Express Inc.*, 2020 U.S. Dist. LEXIS 144881, at *7 (E.D.N.Y. Aug. 12, 2020) ("As courts have consistently concluded following *Daimler*, a business may . . . not be subject to general jurisdiction in New York merely because it is licensed to do business there."); *Metro Cas. Ins. Co. v. Combs*, 2014 U.S. Dist. LEXIS 32594, at *11-12 (E.D. Mo. Mar. 13, 2014) (concluding that plaintiff failed to make a prima facie showing of personal jurisdiction over defendants despite the allegation that "Metropolitan . . . is licensed to do business and is authorized to execute and deliver insurance policies in the State[] of Missouri").

Plaintiffs' other New York allegations do not change the outcome. In paragraph 155, for example, Plaintiffs allege that an OptumInsight Inc. predecessor changed its name after an alleged reimbursement rate scheme yielded a settlement with New York State. Plaintiffs do not even try to show what that allegation has to do with this case. In paragraph 175, Rochester alleges that Optum Perks, LLC "offers a free pharmacy discount card in New York" and then links to a website that says, "Get your free New York State Hospitality & Tourism Association prescription discount card." Rochester does not even try to show what a "Hospitality & Tourism Association" discount card has to do with the case. And Lincoln County doesn't even try to bring a similar allegation. Plaintiffs have failed to allege facts establishing that their claims arise out of or relate to that

alleged conduct or that the conduct created a substantial connection with either State. *See Walden*, 571 U.S. at 284.

**Rochester Amended Complaint paragraphs 30, 161, 181, 188, 199–202, 342–44, 356–59, 360, 361–64, 366–71, 372–77, 400, and 420.**[10] In those paragraphs, Plaintiffs allege that "OptumInsight" and "OptumHealth" worked with certain opioid manufacturers to reshape the pain treatment market, including by supposedly providing research, data, consulting, and marketing services to the manufacturers. None of the paragraphs says anything about New York or Missouri, let alone establishes suit-related conduct creating a substantial connection with either State. *See Walden*, 571 U.S. at 284

**"OptumHealth."** In the Rochester Amended Complaint, paragraphs 30, 181, 188, 372–77,[11] Plaintiffs make vague references to an alleged "OptumHealth" (undifferentiated) partnership with Purdue—which allegedly started with a family connection between a Purdue employee and an "OptumHealth" (undifferentiated) director—to educate the medical community about the "undertreatment" of pain and expanding the use of opioids.

**"OptumInsight."** In the Rochester Amended Complaint, paragraphs 30, 161, 199–202, 342–44, 356–59, 361–64, 366–71, and 420,[12] Plaintiffs allege that "OptumInsight" (undifferentiated) worked with opioid manufacturers to "convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive." "OptumInsight" (undifferentiated) allegedly met with manufacturers like Purdue and created programs to "re-educate" physicians on using opioids to treat certain types of pain, which allegedly yielded "teleconferences, newsletters, faxes, live meetings, case study

---

[10] Lincoln Am. Compl. ¶¶ 30, 145, 164, 172, 183–86, 326–28, 340–43, 344, 345–48, 350–55, 356–61, 384, 404.
[11] Lincoln Am. Compl. ¶¶ 30, 164, 172, 356–61.
[12] Lincoln Am. Compl. ¶¶ 30, 145, 183–86, 326–28, 340–43, 345–48, 350–55, 404.

monographs, letters, and website and web-based programming directly to physicians." "OptumInsight" (undifferentiated) also allegedly "helped Purdue generate clinical studies, educational materials, and marketing programs to downplay the addictive properties of OxyContin." Plaintiffs also allege that an "OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers and that OptumInsight could do the same."

As a threshold matter, only one of those allegations even mentions New York or Missouri, and then only to say that "OptumInsight's" (undifferentiated) alleged conduct "expanded [opioids'] use and availability throughout the country, including" in New York (Rochester Am. Compl. ¶ 161) and Missouri (Lincoln Am. Compl. ¶ 145). Conclusory allegations like those do not establish that "OptumInsight" (undifferentiated) "purposefully reached out beyond" its home and into New York or Missouri, much less that any supposed contacts created a substantial connection with either State. *Walden*, 571 U.S. at 284-85. And none of the allegations about "OptumHealth" (undifferentiated) so much as mentions New York or Missouri. On the contrary, Plaintiffs' *same* allegations about "OptumInsight" (undifferentiated) and "OptumHealth" (undifferentiated) appear in Plaintiffs' complaints not only in New York (Rochester Am. Compl.) and Missouri (Lincoln County and City of Independence Am. Compls.), but also in Texas (Webb County Am. Compl.).

**Rochester Amended Complaint paragraphs 501 and 504.**[13] In those paragraphs, Plaintiffs allege that "*either* Optum Perks, LLC *or* Optum Discount Card Services, LLC" "govern[s]" "Optum's" (undifferentiated) cash card business and that cash cards "played a significant role in the opioid epidemic." Rochester Am. Compl. ¶ 501 By 2018, "Optum"

---

[13] Lincoln Am. Compl. ¶¶ 485, 488.

(undifferentiated) allegedly served over "3.6 million cash card 'members.'" *Id.* ¶ 504. Plaintiffs' improper group pleading shows that they cannot establish jurisdiction over each defendant individually. *In re Aegean Marine Petroleum Network, Inc.*, 529 F. Supp. 3d at 135; *Plusgrade L.P.*, 2023 U.S. Dist. LEXIS 39114, at *8, 11; *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12. In any event, those allegations don't mention New York or Missouri let alone show that Optum Perks, LLC or Optum Discount Card Services, LLC had suit-related conduct creating a substantial connection with those States. *See Walden*, 571 U.S. at 284.

\* \* \* \* \*

The Amended Complaints fail to establish specific jurisdiction over the Moving Defendants because every allegation about them is either untethered to New York or Missouri, untethered to the claims in this case, or both. Plaintiffs do not allege that the Moving Defendants satisfy New York's long-arm statute or that they engaged in any suit-related conduct creating a "substantial connection" with either State. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Indeed, for nearly every allegation discussed above, Plaintiffs fail to allege *any* connection to New York or Missouri. That is fatal in the jurisdictional analysis.

## CONCLUSION

The Court should dismiss Plaintiffs' amended complaints against UHG, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. for lack of personal jurisdiction.

Dated:  March 21, 2024

Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
Andrew Hatchett
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for OptumRx, Inc., UnitedHealth
Group Incorporated, Optum, Inc., OptumInsight,
Inc., OptumInsight Life Sciences, Inc., OptumRx
Discount Card Services, LLC, Optum Perks,
LLC, OptumHealth Care Solutions, LLC,
OptumHealth Holdings, LLC, and Optum
Health Networks, Inc.*