**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL NO. 2804** |
| **THIS DOCUMENT RELATES TO**: | **Case No. 17-MD-2804** |
| *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | **Judge Dan Aaron Polster** |
| *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13) | |

**DEFENDANTS' PARTIAL MOTION TO DISMISS THE**
**AMENDED COMPLAINTS IN TRACKS 12 AND 13**

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................1

BACKGROUND ..............................................................................................................3

ARGUMENT ...................................................................................................................4

I.    **PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS—AND AT LEAST AGAINST THE NEW DEFENDANTS— BECAUSE THEY ARE TIME-BARRED.**...................................................................5

    A.    **Plaintiffs' RICO claims against all Defendants are time-barred.**.....................5

    B.    **At a minimum, Plaintiffs' RICO claims against the New Defendants are time-barred.** .........................................................................................8

        1.    *The RICO claims against the New Defendants are time-barred on the face of the amended complaints.*...........................................8

        2.    *The RICO claims against the New Defendants do not relate back to the date of the original complaints.*...........................................9

        3.    *Tolling does not apply to the RICO claims against the New Defendants.* ...........................................................................11

II.    **PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY FAIL TO ALLEGE AN INJURY TO BUSINESS OR PROPERTY.**...............................................................................14

    A.    **Plaintiffs' alleged increased expenditures for public services are not an injury to business or property.**...................................................................14

    B.    **Plaintiffs' alleged lost tax revenues do not qualify as an injury to business or property.** ...............................................................................18

    C.    **Plaintiffs fail to plausibly allege that they were harmed in their real property interests.** ..................................................................................18

    D.    **Plaintiffs fail to plausibly allege they were harmed as consumer market participants.**.................................................................................18

III.    **ROCHESTER'S STATE-LAW CLAIMS SHOULD BE DISMISSED AGAINST THE NEW DEFENDANTS BECAUSE THEY ARE TIME- BARRED.**...................................................................................................19

    A.    **Rochester's state-law claims against the New Defendants are untimely.**........20

        1.    *Rochester's public nuisance claim against the New Defendants is untimely.* ..................................................................................20

        2.    *Rochester's negligence and gross negligence claims against the New Defendants are untimely.*..................................................20

i

3.      *Rochester's New York statutory claims against the New Defendants are untimely.* ...........................................................................21

B.     **Equitable tolling does not apply to Rochester's state-law claims against the New Defendants.** ................................................................22

IV.    **ROCHESTER'S STATUTORY STATE-LAW CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY FAIL AS A MATTER OF LAW.** ...................................................................................23

A.     **Rochester fails to state a claim under the GBL because it fails to allege direct injury.** ......................................................................24

B.     **Rochester lacks standing under SSL § 145-b.** ................................27

V.     **THE COURT SHOULD DISMISS THE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS FOR THE ACTS OF THEIR SUBSIDIARIES.** ..........28

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Agency Corp. v. Mallery-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) ................................................................................................5

*Anonymous v. Molik*,
   109 N.E.3d 563 (N.Y. 2018) ...............................................................................28

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ..............................................................................................18

*Avery v. WJM Dev. Corp.*,
   197 A.D.3d 1141 (N.Y. App. Div. 2d Dep't 2021) ..............................................20

*Baltrusaitis v. Int'l Union United Auto., Aerospace & Agric.*
   *Implement Workers of Am.*,
   86 F.4th 1168 (6th Cir. 2023) ...........................................5, 6, 7, 8, 11, 12, 13

*Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*,
   289 F.R.D. 401 (S.D.N.Y. 2013) ........................................................................20

*Berrington v. Wal-Mart Stores Inc.*,
   696 F.3d 604 (6th Cir. 2012) ...............................................................................26

*United States ex rel. Bilotta v. Novartis Pharms. Corp.*,
   50 F. Supp. 3d 497 (S.D.N.Y. 2014) ...................................................................21

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
   501 F.3d 493 (6th Cir. 2007) ...............................................................................11

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   818 N.E.2d 1140 (N.Y. 2004) .......................................................................24, 26

*Brooklyn Union Gas Co. v. Hunter Turbo Corp.*,
   241 A.D.2d 505 (N.Y. App. Div. 2d Dep't 1997) ...............................................20

*Burnett v. N.Y. Cent. R.R. Co.*,
   380 U.S. 424 (1965) ..............................................................................................11

*Burniac v. Wells Fargo Bank, N.A.*,
   810 F.3d 429 (6th Cir. 2016) ...............................................................................26

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ................................................14, 15, 16, 17, 18

*Carter-Jones Lumber Co. v. Dixie Distrib. Co.*,
   166 F.3d 840 (6th Cir. 1999) ........................................................28

*Cataldo v. U.S. Steel Corp.*,
   676 F.3d 542 (6th Cir. 2012) ........................................................5

*Chattanooga Foundry & Pipe Works v. City of Atlanta*,
   203 U.S. 390 (1906) ........................................................15

*City & County of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ........................................ 16, 17, 18

*City of Almaty v. Khrapunov*,
   956 F.3d 1129 (9th Cir. 2020) ........................................................16

*City of Atlanta, Ga. v. Mylan Pharms., Inc.*,
   No. 1:23-cv-01193 (N.D. Ga. Mar. 21, 2023) ........................................13

*City of Middletown v. Purdue Pharma, L.P.*,
   No. 1:19-op-45651 (N.D. Ohio Oct. 15, 2019) ........................................12

*In re City of N.Y.*,
   2004 WL 2590582 (N.Y. Sup. Ct. Nov. 10, 2004) ........................................20

*City of N.Y. v. Smokes-Spirits.Com, Inc.*,
   911 N.E.2d 834 (N.Y. 2009) ........................................................24, 27

*City of Paterson v. Purdue Pharma, L.P.*,
   No. 1:18-op-45371 (N.D. Ohio March 15, 2019) ........................................12

*City of Portsmouth v. Purdue Pharma, L.P.*,
   1:19-op-45856 (N.D. Ohio Dec. 27, 2019) ........................................12

*City of Rochester v. Purdue Pharma, L.P.*,
   No. 1:19-op-45853 (N.D. Ohio June 28, 2019) ........................................4

*City of Springfield v. Purdue Pharma, L.P.*,
   No. 1:18-op-45899 (N.D. Ohio May 30, 2018) ........................................9

*Corp. Trade, Inc. v. Golf Channel*,
   563 F. App'x 841 (2d Cir. 2014) ........................................................22

*Corrigan v. U.S. Steel Corp.*,
   478 F.3d 718 (6th Cir. 2007) ........................................................28

*County of Jefferson v. Purdue Pharma, L.P.*,
   No. 1:19-op-45437 (N.D. Ohio June 12, 2019) ........................................9

*County of Oakland v. City of Detroit,*
    866 F.2d 839 (6th Cir. 1989) ...................................................................15

*County of Webb v. Purdue Pharma, L.P.,*
    No. 1:18-op-45175 (N.D. Ohio Jan. 25, 2018) .......................................9

*Cusimano v. Schnurr,*
    137 A.D.3d 527 (N.Y. App. Div. 1st Dep't 2016).................................22

*DeNigris v. Smithtown Cent. Sch. Dist.,*
    217 A.D.3d 95 (N.Y. App. Div. 2d Dep't 2023) ...................................27

*Diaz v. Gates,*
    420 F.3d 897 (9th Cir. 2005) ...................................................................15

*Egerer v. Woodland Realty, Inc.,*
    556 F.3d 415 (6th Cir. 2009) ...................................................................12

*In re EpiPen Direct Purchaser Litig.,*
    2021 WL 147166 (D. Minn. Jan. 15, 2021)...........................................29

*In re EpiPen Direct Purchaser Litig.,*
    2022 WL 1017770 (D. Minn. Apr. 5, 2022) ..........................................29

*Frintzilas v. DirecTV, LLC,*
    731 F. App'x 71 (2d Cir. 2018) ...............................................................24

*Gaidon v. Guardian Life Ins. Co. of Am.,*
    750 N.E.2d 1078 (N.Y. 2001) .................................................................21

*Goel v. Bunge, Ltd.,*
    820 F.3d 554 (2d Cir. 2016) ....................................................................11

*Gristede's Foods, Inc. v. Unkechauge Nation,*
    532 F. Supp. 2d 439 (E.D.N.Y. 2007).....................................................21

*Hawaii v. Standard Oil Co. of Cal.,*
    405 U.S. 251 (1972) ..........................................................................14, 17

*Hemi Grp., LLC v. City of N.Y.,*
    559 U.S. 1 (2010) .....................................................................................18

*Hoover v. Langston Equip. Assocs., Inc.,*
    958 F.2d 742 (6th Cir. 1992) ...............................................................5, 19

*Isaak v. Trumbull Sav. & Loan Co.,*
    169 F.3d 390 (6th Cir. 1999) .....................................................................6

*Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*,
610 F.3d 382 (7th Cir. 2010) ................................................................................7

*Kellom v. Quinn*,
86 F.4th 288 (6th Cir. 2023) ...........................................................................9, 10

*Kyszenia v. Ricoh USA, Inc.*,
583 F. Supp. 3d 350 (E.D.N.Y. 2022) ...........................................................21, 24

*Lincoln County v. Sackler*,
No. 1:20-op-45069 (N.D. Ohio Oct. 31, 2019) ....................................................4

*Lucker v. Bayside Cemetery*,
114 A.D.3d 162 (N.Y. App. Div. 1st Dep't 2013) ..............................................24

*Mattingly v. R.J. Corman R.R. Grp., LLC*,
90 F.4th 478 (6th Cir. 2024) ..............................................................................28

*New York v. West Side Corp.*,
790 F. Supp. 2d 13 (E.D.N.Y. 2011) ..................................................................20

*Norwich v. Purdue Pharma, L.P.*,
No. 1:19-op-45840 (N.D. Ohio Oct. 30, 2019) ..................................................12

*In re Opioid Litig.*,
2018 WL 3115102 (N.Y. Sup. Ct. Suffolk County June 18, 2018)................26, 27

*In re Opioid Litig.*,
2018 WL 4827862 (N.Y. Sup. Ct., Suffolk County July 17, 2018)................26, 27

*Orange Transp. Servs., Inc. v. Volvo Grp. N. Am., LLC*,
450 F. Supp. 3d 311 (W.D.N.Y. 2020)................................................................22

*United States ex rel. Owsley v. Fazzi Assocs., Inc.*,
16 F.4th 192 (6th Cir. 2021) ..............................................................................19

*Palm Beach County, Fla. v. Mylan Pharms., Inc.*,
No. 9:23-cv-80431 (S.D. Fla. Mar. 17, 2023)....................................................13

*Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*,
2018 WL 851382 (N.D.N.Y. Feb. 12, 2018)......................................................20

*Rotella v. Wood*,
528 U.S. 549 (2000) ........................................................................................5, 6

*People ex rel. Schneiderman v. N. Leasing Sys., Inc.*,
60 Misc. 3d 867 (N.Y. Sup. Ct., New York County 2017) ................................21

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) .......................................................................... 14, 18

*Sims v. Ohio Cas. Ins. Co.*,
    151 F. App'x 433 (6th Cir. 2005) .......................................................... 5

*Smith v. City of Akron*,
    476 F. App'x 67 (6th Cir. 2012) ........................................................... 10

*Super Sulky, Inc. v. U.S. Trotting Ass'n*,
    174 F.3d 733 (6th Cir. 1999) ................................................................ 22

*Torrance Constr., Inc. v. Jacques*,
    127 A.D.3d 1261 (N.Y. App. Div. 3d Dep't 2015) ............................... 22

*Town of Bennington v. Mallinckrodt PLC*,
    No. 1:19-op-45791 (N.D. Ohio Sept. 17, 2019) .................................... 9

*Town of Enfield v. Purdue Pharma, L.P.*,
    No. 1:19-op-45581 (N.D. Ohio Oct. 7, 2019) ...................................... 12

*Town of West Hartford v. Operation Rescue*,
    915 F.2d 92 (2d Cir. 1990) .................................................................. 17

*Town of Wethersfield v. Purdue Pharma, L.P.*,
    No. 1:19-op-45663 (N.D. Ohio Oct. 28, 2019) .................................... 12

*United States v. Bestfoods*,
    524 U.S. 51 (1998) .............................................................................. 28

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
    2023 WL 4029824 (S.D.N.Y. June 14, 2023) ...................................... 25

*Voters for Animal Rights v. D'Artagnan, Inc.*,
    2020 WL 9209257 (E.D.N.Y. July 15, 2020) ................................. 25, 27

*Wall v. Mich. Rental*,
    852 F.3d 492 (6th Cir. 2017) ............................................................... 19

*Welborn v. Bank of N.Y. Mellon Corp.*,
    557 F. App'x 383 (5th Cir. 2014) ................................................... 14, 17

*Williams v. Porter Bancorp, Inc.*,
    41 F. Supp. 3d 676 (W.D. Ky. 2014) ................................................... 28

*Zakora v. Chrisman*,
    44 F.4th 452 (6th Cir. 2022) .......................................................... 10, 19

*Zimmerman v. Poly Prep Country Day Sch.*,
   888 F. Supp. 2d 317 (E.D.N.Y. 2012)....................................................................20

## **Statutes**

18 U.S.C. § 1964(c) .................................................................................................. 14, 15

Gen. Bus. Law § 349................................................................................21, 23, 24, 26, 27

Gen. Bus. Law § 350................................................................................21, 23, 24, 26, 27

N.Y. Social Services Law § 2(7) .................................................................................27

N.Y. Social Services Law § 61 ....................................................................................27

N.Y. Social Services Law § 145-b........................................................... 4, 21, 27, 28

## **Other Authorities**

Fed. R. Civ. P. 9(b) .....................................................................................................19

Fed. R. Civ. P. 12(b)(6).................................................................................................1

Fed. R. Civ. P. 15 ......................................................................................................9, 10

N.Y. C.P.L.R. 214(4) ...................................................................................................20

In accordance with Federal Rule of Civil Procedure 12(b)(6), the Express Scripts Defendant Family and OptumRx Defendant Family (together, **Defendants**) move to partially dismiss the amended complaints in Tracks 12 and 13 for the reasons below.[1]

## INTRODUCTION

Plaintiffs City of Rochester, New York (**Rochester**) and Lincoln County, Missouri (**Lincoln County**) commenced these actions on June 5, 2019, and October 24, 2019, respectively, asserting public nuisance and related claims against a range of defendants, including pharmacy benefit managers (**PBMs**). Four years later, Plaintiffs' cases were selected to proceed as bellwethers to test the asserted claims against PBMs. In December 2023, however, Plaintiffs moved to amend their complaints to add 12 new defendants, including mail-order pharmacies, health-services providers, data analytics and consulting companies, and discount-card companies (the **New Defendants**).[2] Plaintiffs also added new claims based on the same conduct and the same injuries asserted in their original complaints, including federal RICO claims asserting a purportedly decades-long conspiracy involving various participants from different segments of the pharmaceutical industry that interacted with opioids over the years.

---

[1] The Express Scripts Defendant Family comprises Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; ESI Mail Order Processing, Inc.; Express Scripts Specialty Distribution Services, Inc.; Express Scripts Administrators, LLC; and Medco Health Solutions, Inc. The OptumRx Defendant Family comprises UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.

[2] The New Defendants are Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Specialty Distribution Services, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc. In addition, Express Scripts Pharmacy, Inc., is a New Defendant in *Rochester*, but not in *Lincoln County*.

The amended complaints should be dismissed in part for at least five reasons. ***First***, Plaintiffs' RICO claims against all Defendants should be dismissed because they are time-barred. Plaintiffs' own allegations show that they have known of their alleged injuries for *two decades*, long before RICO's four-year statute of limitations began running. At a minimum, the RICO claims against the New Defendants are time-barred because Plaintiffs' *initial complaints alleging the same injuries* were filed more than four years ago, outside the limitations period. Under well-settled Sixth Circuit precedent, claims against newly added defendants do not relate back to the filing of the original complaint. Plaintiffs' own prior allegations thus make clear that their newly added claims are untimely.

***Second***, the RICO claims against all Defendants should be dismissed because Plaintiffs fail to adequately allege the required element of injury to business or property. While Plaintiffs allege that the opioid crisis increased public expenditures and decreased tax revenues, those injuries do not establish RICO standing under the law of any circuit that has decided this issue. Nor do Plaintiffs allege any other cognizable injuries to business or property.

***Third***, Rochester's state-law claims against the New Defendants are time-barred. The applicable statute of limitations for each of the state-law claims is three years. Rochester included the same state-law claims in its original complaint filed more than four years ago against the original defendants. There is thus no question that Rochester had notice of its alleged injuries outside the limitations period. Because Sixth Circuit precedent holds that claims against newly added defendants do not relate back, the Rochester state-law claims against the New Defendants are untimely on their face. In addition, there is no basis to equitably toll the applicable limitations periods under state law. These state-law claims should therefore be dismissed against the New Defendants based on the filing dates of the original and amended complaints alone.

*Fourth*, Rochester's state statutory claims against all Defendants fail for lack of standing. Rochester's claims for deceptive practices and false advertising rest entirely on alleged harms that it suffered secondarily as a result of injuries to consumers who were allegedly misled. But Rochester never claims that Defendants' conduct misled *it*, as is required to state a claim under New York's General Business Law. Separately, Rochester's claim for false statements to obtain public funds fails because only New York State, New York City, or one of New York's counties outside New York City may bring a claim under the statute. Rochester is none of those.

*Fifth*, Plaintiffs' claims against parent companies (the **Parent Company Defendants**[3]) should be dismissed because Plaintiffs do not allege that the Parent Company Defendants themselves engaged in any wrongful conduct. Instead, Plaintiffs merely lump the Parent Company Defendants with their subsidiaries. But parent companies cannot be held liable for the acts of their subsidiaries unless a plaintiff pleads allegations sufficient to pierce the corporate veil, and Plaintiffs have made no such allegations here.

Accordingly, the Court should dismiss (1) Plaintiffs' RICO claims against all Defendants, or at least against the New Defendants; (2) Rochester's state-law claims against the New Defendants; (3) Rochester's state statutory claims against all Defendants; and (4) all claims against the Parent Company Defendants.[4]

## BACKGROUND

*The Original Complaints.* Rochester filed its original complaint in New York state court on June 5, 2019, against Express Scripts Holding Company (n/k/a Evernorth Health, Inc.); Express

---

[3] The Parent Company Defendants are Evernorth Health, Inc., f/k/a Express Scripts Holding Company; UnitedHealth Group Incorporated; and Optum, Inc.

[4] Defendants will seek dismissal of the remainder of Plaintiffs' meritless claims, including public nuisance and negligence, in accordance with the Federal Rules of Civil Procedure.

Scripts, Inc.; United Health Group Incorporated; Optum, Inc.; and OptumRx, Inc. *See Rochester v. Purdue Pharma, L.P.*, No. 1:19-op-45853 (N.D. Ohio June 28, 2019), Dkt. No. 1-5 (**Rochester Orig. Compl.**). Rochester's original complaint included claims for deceptive practices, false advertising, public nuisance, fraud, a violation of New York Social Services Law § 145-b, unjust enrichment, and negligence. *Id.* ¶¶ 1144–1207.

Lincoln County filed its original complaint in Missouri state court on October 24, 2019, against the same defendants as in *Rochester* plus Express Scripts Pharmacy, Inc. *See Lincoln County v. Sackler*, No. 1:20-op-45069 (N.D. Ohio Oct. 31, 2019), Dkt. No. 1-1 (**Lincoln County Orig. Compl.**). Lincoln County's original complaint included claims for public nuisance, negligence per se, negligence, fraud in the omission, fraud, and negligent misrepresentation. *Id.* ¶¶ 695–755.

Both cases were removed to federal court, transferred to this MDL, and selected as PBM bellwether Case Tracks 12 and 13, respectively. *See Rochester*, Dkt. Nos. 1, 65, 103; *Lincoln County*, Dkt. Nos. 1, 31, 36.

***The Amended Complaints.*** On December 15, 2023, Plaintiffs moved the Court for leave to amend their respective complaints. Dkt. No. 5277. Over Defendants' opposition, the Court granted Plaintiffs' request. Dkt. No. 5319. In their amended complaints, Plaintiffs each add new claims and at least twelve new parties. Specifically, Rochester added a new RICO claim and now asserts all causes of action against all Defendants, including the New Defendants. Likewise, Lincoln County added a new RICO claim and a claim for civil conspiracy and now asserts all causes of action against all Defendants, including the New Defendants.

## ARGUMENT

Although Defendants contest all the allegations against them and maintain that all claims are without merit, they focus this motion on five discrete arguments: (i) Plaintiffs' RICO claims

against all Defendants (and at least the New Defendants) should be dismissed because they are time-barred; (ii) Plaintiffs' RICO claims against all Defendants should be dismissed because Plaintiffs fail as a matter of law to assert the required element of injury to business or property; (iii) Rochester's state-law claims against the New Defendants should be dismissed because they are time-barred on the face of the amended complaints; (iv) Rochester's state statutory claims against all Defendants should be dismissed for lack of standing; and (v) Plaintiffs' claims against the Parent Company Defendants should be dismissed because Plaintiffs fail to allege that the Parent Company Defendants can be held liable for the acts of their subsidiaries.

## I.  PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS—AND AT LEAST AGAINST THE NEW DEFENDANTS—BECAUSE THEY ARE TIME-BARRED.

### A.  Plaintiffs' RICO claims against all Defendants are time-barred.

As this Court previously acknowledged, "resolving a motion to dismiss based on statute-of-limitations grounds is appropriate when the undisputed facts conclusively establish the defense as a matter of law." Dkt. No. 1203 at 3; *see also Baltrusaitis v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1178 (6th Cir. 2023) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)) (a court may dismiss civil RICO claim when "the allegations in the complaint affirmatively show that the claim is time-barred"); *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("[T]he [district] court did not err in dismissing the count on grounds that the four year federal statute of limitations for civil RICO actions had expired.").

Federal civil RICO claims are subject to a four-year statute of limitations. *Agency Corp. v. Mallery-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). In *Rotella v. Wood*, the Supreme Court held that, under the injury discovery rule, the four-year period begins "when a plaintiff knew or should have known of his injury." 528 U.S. 549, 553–55 (2000); *see also Sims v. Ohio Cas. Ins.*

*Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella*, 528 U.S. at 549) ("The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation."); Dkt. No. 2568 at 13 (quoting *Rotella*, 528 U.S. at 555) ("The RICO limitations period is triggered by 'discovery of the injury, not discovery of other elements of a claim.'"). "Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999).

Here, the allegations in the amended complaints, which are assumed true, show that the RICO limitations period has long expired. The amended complaints allege not only that there was an "epidemic level" of opioid abuse in Plaintiffs' communities by the mid-2000s, but also that Plaintiffs have been "dealing" with the alleged injury caused by Defendants for twenty years:

> As a direct result of the PBM Defendants' and Purdue's coordinated efforts, opioid use and abuse escalated to ***epidemic levels by the mid-2000s***, devastating communities across the country, including Plaintiff's Community. ***Plaintiff has been dealing with the public health crisis caused by the PBM Defendants' misconduct for the past two decades.***

*Rochester*, Dkt. No. 110 (**Rochester Am. Compl.**) ¶ 33 (emphasis added); *Lincoln County*, Dkt. No. 41 (**Lincoln County Am. Compl.**) ¶ 33 (same). Plaintiffs' allegations leave no doubt that they "knew or should have known of [the] injury" well before 2015. *Rotella*, 528 U.S. at 553. Thus, their RICO claims are barred. *Baltrusaitis*, 86 F.4th at 1178 (affirming dismissal of RICO claim at 12(b)(6) stage where plaintiffs' complaint "reveals when plaintiffs learned of their injuries (almost a decade before they filed)").

Other allegations confirm that Plaintiffs knew or should have known that there was a "public health crisis" or "opioid crisis" both nationwide and in their communities beginning in the 1990s. *See* Rochester Am. Compl. ¶¶ 38, 40, 62, 74, 83, 86; Lincoln County Am. Compl. ¶¶ 38,

40, 61. Plaintiffs allege that one of Defendants' alleged fellow "Formulary and UM Enterprise" racketeers, Purdue Pharma, pled guilty *in 2007* to mismarketing opioids, which should have put Plaintiffs on notice of their potential injury. Rochester Am. Compl. ¶ 40; Lincoln County Am. Compl. ¶ 40. And Plaintiffs' original complaints, incorporated by reference into the amended complaints, allege that the opioid crisis and related mortality was widely known and publicized through investigations, CDC data, news stories, White House announcements, Senate investigations, and legal action against Purdue—all prior to 2015. Rochester Orig. Compl. ¶¶ 351–364; Lincoln County Orig. Compl. ¶¶ 184, 218. Plaintiffs' own allegations thus demonstrate that they knew or should have known about their alleged RICO injuries many years before 2015, thereby barring their claims.

This Court previously rejected a statute-of-limitations argument based on other plaintiffs' allegations that other defendants had fraudulently concealed their unlawful conduct. Dkt. No. 1203 at 3–5. Yet as the Sixth Circuit has since held, fraudulent concealment is not enough by itself to toll the RICO limitations period. "[I]n a RICO case, the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment . . . ." *Baltrusaitis*, 86 F.4th at 1178 (quoting *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388 (7th Cir. 2010)). In other words, Plaintiffs must allege that Defendants had prevented Plaintiffs from *knowing that they had been injured*; concealment of Defendants' alleged actions or pattern of conduct is not enough.

Here, Plaintiffs do not allege that Defendants prevented them from learning of their injury. Instead, Plaintiffs concede that they have "been dealing with the public health crisis caused by the PBM Defendants' misconduct for the past two decades." Rochester Am. Compl. ¶ 33; Lincoln County Am. Compl. ¶ 33. While Plaintiffs later allege that they did not learn until recently the role

that *Defendants* purportedly played in this alleged injury, *see* Rochester Am. Compl. ¶¶ 694–95; Lincoln County Am. Compl. ¶ 703, these allegations do not toll a RICO claim under controlling Sixth Circuit law. "[T]he Supreme Court has rejected the injury-and-pattern discovery rule [and] has made clear that the limitation period begins when plaintiffs' injuries occurred or when they should have known of them." *Baltrusaitis*, 86 F.4th at 1178 (citing *Rotella*, 528 U.S. at 554 & n.2, 555–58). The face of the amended complaints makes clear that Plaintiffs have long known of their alleged injury. Their RICO claims are therefore time-barred and should be dismissed, restoring the focus of these cases to the claims that led to their selection as bellwethers.

## B.  At a minimum, Plaintiffs' RICO claims against the New Defendants are time-barred.

Even assuming that Plaintiffs' RICO claims against all Defendants are not time-barred, Plaintiffs' RICO claims against the New Defendants are indisputably untimely, are not subject to relation back or tolling, and should be dismissed.

### 1.  *The RICO claims against the New Defendants are time-barred on the face of the amended complaints.*

Both Rochester and Lincoln County first sought leave to add federal civil RICO claims against the New Defendants to their amended complaints in December 2023—more than four years after filing their original complaints and thus outside the RICO limitations period. Rochester Am. Compl. ¶¶ 784–817; Lincoln Am. Compl. ¶¶ 779–813. By definition, Plaintiffs discovered those injuries at the very latest in June and October 2019 when they filed their original complaints. At that time, Plaintiffs supplied pages of allegations purporting to detail alleged injuries dating back to the *late 1990s*. *See, e.g.*, Rochester Orig. Compl. ¶¶ 14, 23, 24, 38; Lincoln County Orig. Compl. ¶ 42 ("Defendants, in conspiracy with each other and/or acting in concert through a sophisticated and highly deceptive marketing campaign that began in the late 1990s, deepened around 2006, and continues to the present, set out to, and did, reverse the popular and medical understanding of

opioids."). Plaintiffs now assert those *same alleged injuries* were caused by the New Defendants. *See, e.g.*, Rochester Am. Compl. ¶¶ 291, 330 (alleging that, "[s]tarting in the late 1990s," the PBMs "partnered with Purdue and other opioid manufacturers to spread false information about opioids in order to increase [] sales and expand the market" and began "grant[ing] both brand and generic opioids, including OxyContin, preferred positions on standard formulary offerings[]"); Lincoln County Am. Compl. ¶¶ 275, 314 (same).[5]

Even assuming Plaintiffs were unaware of their injuries until the day they filed their original complaints (which is not the case, *see supra* § I.A.; Rochester Am. Compl. ¶ 33; Lincoln County Am. Compl. ¶ 33), the limitations period for Plaintiffs' RICO claims expired, at the very latest, on June 5, 2023, in *Rochester* and on October 24, 2023, in *Lincoln County*.

> 2. *The RICO claims against the New Defendants do not relate back to the date of the original complaints.*

Plaintiffs' RICO claims against the New Defendants do not relate back to the original complaint. Generally, "when an amended complaint adds claims or parties who weren't previously part of the lawsuit, the lawsuit commence[s] for those claims and parties when they are added." *Kellom v. Quinn*, 86 F.4th 288, 294 (6th Cir. 2023) (cleaned up). If the applicable statutes of limitations have expired for those newly added claims, the court must consider whether the new claims "relate back" to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1). *Id.* If a plaintiff alleges a claim against a new defendant that "arises out of the same

---

[5] Other plaintiffs that filed complaints at similar or earlier times also brought RICO claims against Express Scripts and OptumRx. *See, e.g.*, *County of Webb v. Purdue Pharma, L.P.*, No. 1:18-op-45175 (N.D. Ohio Jan. 25, 2018), Dkt. No. 1, Compl. ¶¶ 417–69 (alleging RICO claims against Express Scripts and OptumRx); *City of Springfield v. Purdue Pharma, L.P.*, No. 1:18-op-45899 (N.D. Ohio May 30, 2018), Dkt. No. 1, Compl. ¶¶ 243–91 (same); *County of Jefferson v. Purdue Pharma, L.P.*, No. 1:19-op-45437 (N.D. Ohio June 12, 2019), Dkt. No. 1, Compl. ¶¶ 721–74 (same); *Town of Bennington v. Mallinckrodt PLC*, No. 1:19-op-45791 (N.D. Ohio Sept. 17, 2019), Dkt. No. 1, Compl. ¶¶ 753–806 (same).

conduct as the original complaint," the amendment "relates back" only if the new defendant "(i) received such notice of the action that it w[ould] not be prejudiced . . . *and* (ii) knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity." *Zakora v. Chrisman*, 44 F.4th 452, 480 (6th Cir. 2022) (emphasis added) (quoting Fed. R. Civ. P. 15(c)(1)(C)).

The Sixth Circuit "interprets the term 'mistake' narrowly to apply only to corrections or misnomers; thus, lack of knowledge of an intended defendant's identity is not a 'mistake' concerning the party's identity under Rule 15(c)." Dkt. No. 739 at 5; *see also Zakora*, 44 F.4th at 482 ("An absence of knowledge about whom to sue is not a misunderstanding and thus is not a mistake for the purposes of Rule 15."). As a result, an amendment to add a new party "creates a new cause of action" that does *not* relate back to the original filing for purposes of the applicable limitations period. *Zakora*, 44 F.4th at 480; *see also* Dkt. No. 739 at 56 (explaining the Sixth Circuit rules governing application of Rule 15(c)). "Otherwise, an untimely plaintiff could avoid a statute of limitations simply by joining [a new defendant to] a preexisting action." *Kellom*, 86 F.4th at 294.

Plaintiffs' failure to sue the New Defendants in 2019 when they filed their original complaints was not due to mistake or a misnomer (and they do not claim otherwise). Relation back is therefore unavailable. Dkt. No. 739 at 5 (plaintiff "'did not make a mistake about which defendant to sue; he simply did not know whom to sue or opted not to find out within the limitations period'") (quoting *Smith v. City of Akron*, 476 F. App'x 67, 69–70 (6th Cir. 2012)). Accordingly, Plaintiffs' federal RICO claims against the New Defendants are time-barred and should be dismissed.

3.     *Tolling does not apply to the RICO claims against the New Defendants.*

Plaintiffs' untimely RICO claims cannot be saved by state statutes or equitable tolling. Lincoln County's amended complaint relies on Missouri Revised Statute § 516.280 to assert that Defendants are equitably estopped from asserting the statute of limitations." *See* Lincoln County Am. Compl. ¶ 704. But a state statute does not toll the statute of limitations for a federal cause of action. *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 433 (1965) ("[T]he period of time within which a[] [federal] action may be commenced is a material element in . . . [a] uniformity of operation which Congress would not wish to be destroyed by the varying provisions of the state statutes of limitation."); *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) ("RICO is a federal law governed by a federal statute of limitations, and that statute of limitations is subject to federal, not state, tolling rules.") (citation omitted).

Rochester invokes the doctrine of equitable tolling, Rochester Am. Compl. ¶ 695, but this does not revive Rochester's claims either. Courts determine the applicability of equitable doctrines "on a case-by-case basis." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519 (6th Cir. 2007); *see also* Dkt. No. 739 at 8 ("The Court will determine whether equitable tolling applies in a particular case if and when that issue becomes ripe."). As this Court previously noted, the "Sixth Circuit cautions that courts should apply equitable tolling sparingly and only for compelling equitable reasons." Dkt. No. 739 at 7. To invoke equitable tolling, a plaintiff must plead, with particularity, that despite its due diligence, it could not have discovered its *injury* during the limitations period due to the defendant's fraudulent concealment. *Baltrusaitis*, 2022 WL 868423, at *9 (equitable tolling did not apply where plaintiffs did not establish an inability to discover their *injury* during the limitations period). Rochester was indisputably aware of its alleged *injuries* when it filed its original complaint on June 5, 2019. Rochester does not dispute this and instead alleges that it could not have discovered Defendants' alleged RICO-related *conduct* during

the limitations period. Rochester Am. Compl. ¶¶ 695–702. That is insufficient under controlling Sixth Circuit law to invoke the tolling exception since discovery of the injury, not the conduct, starts the limitations clock. *Baltrusaitis*, 86 F.4th at 1178–79.[6]

To the extent the Court considers whether the moratorium on substantive filings in this MDL should toll the statute of limitations, it should not. This Court expressly declined to uniformly apply equitable tolling to future amended complaints in this MDL because equitable tolling is the exception, not the rule. Dkt. No. 739 at 7. Instead, this Court advised it would consider equitable tolling on a case-by-case basis. *Id.* at 8.

Critically, Plaintiffs could have amended their complaints—without leave—in 2019 or 2020 but chose not to. After the release of new ARCOS data in 2018, this Court modified Case Management Order No. 1 to permit MDL plaintiffs to amend their complaints before March 16, 2019. Dkt. No. 1106. The Court further provided that subsequent MDL plaintiffs could amend their complaints without seeking leave of court within 90 days of transfer to the MDL. *Id.* at 3 n.7. Many MDL plaintiffs with claims against Express Scripts and OptumRx amended their complaints to add RICO claims before March 16, 2019, or within 90 days of transfer to the MDL.[7] But Rochester

---

[6] Rochester also purports to rely on the doctrine of equitable estoppel. Rochester Am. Compl. ¶ 695. "[E]quitable estoppel applies when plaintiffs are aware of their claims but defendants' conduct prevents plaintiffs from timely filing suit." *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 424 (6th Cir. 2009). Rochester does not allege that it was aware of its RICO injuries, but Defendants prevented it from timely filing suit—nor could it, given that Rochester filed its original lawsuit more than four years ago. Rochester offers no basis in its complaint to apply equitable estoppel to its expired claims.

[7] *See, e.g.*, *City of Paterson v. Purdue Pharma, L.P.*, No. 1:18-op-45371 (N.D. Ohio March 15, 2019), Dkt. No. 45, Am. Compl. (amending complaint before deadline to add RICO claim); *Town of Enfield v. Purdue Pharma, L.P.*, No. 1:19-op-45581 (N.D. Ohio Oct. 7, 2019), Dkt. No. 80, Am. Compl. (amending complaint within 90 days of transfer into the MDL to add RICO claim); *City of Middletown v. Purdue Pharma, L.P.*, No. 1:19-op-45651 (N.D. Ohio Oct. 15, 2019), Dkt. No. 49, Am. Compl. (same); *Norwich v. Purdue Pharma, L.P.*, No. 1:19-op-45840 (N.D. Ohio Oct. 30, 2019), Dkt. No. 74, Am. Compl. (same); *Town of Wethersfield v. Purdue Pharma, L.P.*, No. 1:19-op-45663 (N.D. Ohio Oct. 28, 2019), Dkt. No. 49, Am. Compl. (same); *City of Portsmouth*

and Lincoln County slept on their rights and chose not to amend their complaints after transfer to the MDL on October 17, 2019, and February 11, 2020, respectively.[8]

Alternatively, Plaintiffs could have filed new complaints. Other MDL plaintiffs, like Palm Beach County, Florida, and the City of Atlanta, Georgia (both represented by the same counsel as Rochester) filed new complaints against Express Scripts and OptumRx (and other defendants) rather than seek leave to amend their existing complaints in the MDL. *See Palm Beach County, Fla. v. Mylan Pharms., Inc.*, No. 9:23-cv-80431 (S.D. Fla. Mar. 17, 2023), Dkt. No. 1, Compl.; *City of Atlanta, Ga. v. Mylan Pharms., Inc.*, No. 1:23-cv-01193 (N.D. Ga. Mar. 21, 2023), Dkt. No. 1, Compl.

Instead of diligently pursuing their rights, Plaintiffs, armed with full knowledge of their injuries, took zero action to timely assert their claims against the New Defendants. "Equity favors those who diligently pursue their known rights." *Baltrusaitis*, 86 F.4th at 1178. Plaintiffs cannot be rewarded for their inaction four years later, at the expense and prejudice of the New Defendants.

In short, Plaintiffs' civil RICO claims against the New Defendants are untimely, do not relate back to the original complaint, and do not benefit from any tolling. They should be dismissed.

---

*v. Purdue Pharma, L.P.*, 1:19-op-45856 (N.D. Ohio Dec. 27, 2019), Dkt. No. 54, Am. Compl (same).

[8] Rochester and Lincoln County also never sought leave from the moratorium on substantive filings to move for leave to amend even though other MDL plaintiffs (represented by the same counsel as Lincoln County) took that approach. *See, e.g.*, Dkt. Nos. 4817 (County of Jefferson, New York), 4819 (County of Webb, Texas), 4821 (Town of Bennington, Vermont) and Jan. 25, 2023 Order (granting motions for leave from moratorium on substantive filings).

## II.   PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY FAIL TO ALLEGE AN INJURY TO BUSINESS OR PROPERTY.

Only a "person injured in his business or property by reason of" alleged racketeering may bring a civil RICO suit. 18 U.S.C. § 1964(c). Thus, a civil RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Here, none of Plaintiffs' four categories of alleged injuries satisfies their burden to plead an injury to business or property. For one thing, Plaintiffs cannot rely on quasi-sovereign budgetary injuries such as (1) increased expenditures or (2) reduced tax revenues. Additionally, Plaintiffs fail to allege that they were injured as (3) real property owners or (4) consumer market participants. The RICO claims against all Defendants fail as a matter of law and should be dismissed.

### A.   Plaintiffs' alleged increased expenditures for public services are not an injury to business or property.

In implementing RICO's requirement of injury to business or property, all other circuits that have addressed the issue have held that governmental entities "cannot rely on [public] expenditures" made in their "sovereign and/or quasi-sovereign capacities" to establish RICO standing because such injuries are not injuries to "business or property." *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008) (government costs for "health care services," "criminal justice services," and other public services do not constitute "damages to [] property for purposes of civil RICO standing"); *see also Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 265 (1972) ("[T]he United States was authorized to recover, not for general injury to the national economy or to the Government's ability to carry out its functions, but only for those injuries suffered in its capacity as a consumer of goods and services."); *Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) (quoting *Hawaii*, 405 U.S. at 265) ("When a

government sues under the civil RICO statute, the 'business or property' element requires that the injury 'refer to commercial interests or enterprises.'").

In a thoroughly reasoned opinion, the Ninth Circuit explained that public expenditures do not constitute injury to business or property on considerations of statutory text, logic, and legal context. To start, the Ninth Circuit noted that injury to business or property requires "'a harm to a specific business or property interest'" beyond "financial loss alone." *Canyon County*, 519 F.3d at 975 (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)). Next, the court observed that "the law commonly distinguishes between the status of a governmental entity acting to enforce the laws or promote the general welfare and that of a governmental entity acting as a consumer or other type of market participant." *Canyon County*, 519 F.3d at 976. So "government entities that have been overcharged in commercial transactions and thus deprived of their money can claim injury to their property." *Id.* (first citing *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906); and then citing *County of Oakland v. City of Detroit*, 866 F.2d 839, 847 (6th Cir. 1989)). But "[i]f government expenditures alone sufficed as injury to property, any RICO predicate act that provoked any sort of governmental response would provide the government entity with standing to sue under § 1964(c)." *Canyon County*, 519 F.3d at 976. The Ninth Circuit thought this interpretation of the phrase "business or property" "highly improbable," in part because "public services" "are based on legislative mandates and are intended to further the public interest." *Id.*

At an earlier stage of this litigation, this Court declined to follow the Ninth Circuit's reasoning and held that abnormally high public expenditures may be an injury to "business or property" under RICO. Dkt. No. 1203, at 19. The Court read *Canyon County* to hold only "that governmental entities are not injured in their property based *solely* on the expenditure of money to

act governmentally." *Id.* (emphasis in original). And the Court reasoned that "[u]se of the word 'solely' implies that governmental entities might be able to assert an injury to their property based on the expenditure of money plus something else, perhaps, for example, the assumption of a statutory burden relinquished by a defendant." *Id.* The Court therefore "conclude[d] that while Cities and Counties cannot recover ordinary costs of services provided in their capacity as a sovereign, Cities and Counties should be able to recover costs greatly in excess of the norm." *Id.*

Since then, the Ninth Circuit reaffirmed a broader reading of *Canyon County*, explaining that it "decided that a government's expenditures on healthcare and policing services are not an injury to business or property because the government does not have a property interest in the services it provides to enforce law and promote public welfare." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020). Even more recently, Judge Breyer of the Northern District of California applied the Ninth Circuit's rule to bar municipalities' RICO claims that were, as here, based on increased costs for public services related to opioid misuse. *City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 648 (N.D. Cal. 2020). Judge Breyer considered and rejected this Court's analysis, holding that, "[c]ontrary to the MDL court's analysis, *Canyon County* established that governmental entities **cannot** assert a RICO claim based on expenditures or services provided in their sovereign or quasi-sovereign capacities." *Id.*, at 650 (emphasis in original). Judge Breyer explained that *Canyon County*'s use of the word "solely" was not "an invitation to consider unrelated factors—such as the scope or magnitude of an event—that would cumulatively create a property interest." *Id.* Rather, the Ninth Circuit in *Canyon County* used the word "solely" to mark a transition from considering whether "the expenditure of money" could qualify as a property interest to considering whether "the services themselves" could do so.

*Id.* (emphasis in original) (quoting *Canyon County*, 519 F.3d at 976). The *Canyon County* court went on to hold that "the services themselves" *also* did not qualify. 519 F.3d at 976.

As Judge Breyer further noted, nothing in *Canyon County* supports any distinction between ordinary and extraordinary governmental expenditures for RICO standing purposes. *San Francisco*, 491 F. Supp. 3d at 650. Instead, the kinds of expenditures at issue in *Canyon County*, *San Francisco*, the cases previously before the MDL Court, and these PBM bellwether cases are all "virtually identical," consisting of "law enforcement and health care services" that *Canyon County* held "are 'not recoverable damages under civil RICO.'" *Id.* at 651 (quoting *Canyon County*, 519 F.3d at 980).

The Ninth Circuit is not alone in holding that public expenditures do not confer standing to bring a RICO claim. Of particular relevance to the PBM bellwether plaintiffs, the Second and Fifth Circuits have applied similar rules. *See Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990) (quoting *Hawaii*, 405 U.S. at 264, 265) ("*Hawaii* refers not only to injuries to a governmental entity's 'general economy' but also to its 'ability to carry out its functions' as falling outside the concept of statutory injury to its 'business or property.'"); *Welborn*, 557 F. App'x at 387 ("The injuries alleged . . . are the loss of recording fees and general damage to the integrity of the public records. These injuries do not arise from commercial activity, but rather from the provision of a public service—that is, from a governmental function."). No appellate court has ruled otherwise. Given this widespread agreement, the Court should adopt Judge Breyer's understanding of *Canyon County* and hold that Plaintiffs' alleged increased expenditures are not injuries to business or property for purposes of a RICO claim.

**B.**     **Plaintiffs' alleged lost tax revenues do not qualify as an injury to business or property.**

Increased expenditures and diminished taxes are two sides of the same coin—both are budgetary harms to a municipality in its "quasi-sovereign" capacity rather than in its capacity as a property owner or consumer. *Canyon County*, 519 F.3d at 576; *see also Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 11 (2010) (rejecting RICO claim based on lost tax revenue); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (same). Thus, the Plaintiffs cannot rely on lost tax revenues to allege an injury to business or property.

**C.**     **Plaintiffs fail to plausibly allege that they were harmed in their real property interests.**

Plaintiffs say that opioid abuse led to diminished real property values. Rochester Am. Compl. ¶ 813(k); Lincoln County Am. Compl. ¶ 809(h). But they do not identify any such affected real property, much less property that *they* owned and that opioid abuse allegedly damaged. *Cf. San Francisco*, 491 F. Supp. at 651 (allegations of harm to toilet grinders of main public library satisfied RICO standing requirement). So Plaintiffs wholly fail to allege that Defendants' conduct injured them in this way. *See Sedima*, 473 U.S. at 496.

**D.**     **Plaintiffs fail to plausibly allege they were harmed as consumer market participants.**

Plaintiffs claim that Defendants' conduct fraudulently led them to pay reimbursements for prescription drugs. Rochester Am. Compl. ¶ 813(a); Lincoln County Am. Compl. ¶ 809(h). But, again, public expenditures for "health care services" do not confer RICO standing. *Canyon County*, 519 F.3d at 977. Indeed, in *San Francisco*, Judge Breyer rejected a similar attempt to "blur the distinction between recoverable proprietary harms and unrecoverable governmental harms" by treating municipal purchases of equipment and services as injuries incurred in the municipality's capacity as a consumer market participant. 491 F. Supp. 3d at 652.

In any event, Plaintiffs fail to plead this allegation plausibly, let alone with the particularity required by Federal Rule of Civil Procedure 9(b) for such allegations sounding in fraud. *See, e.g.*, *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (applying Rule 9(b) to RICO claims based on fraud). Plaintiffs identify no specific reimbursements that they paid that they would not have paid but for Defendants' conduct, much less connect the dots from Defendants' allegedly false representations to their payment of any specific claim. *See United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 197 (6th Cir. 2021) (Rule 9(b) requires "particular identified claims" in analogous False Claims Act context). Plaintiffs also lump Defendants together instead of explaining each of their alleged roles in inducing Plaintiffs to pay claims. Such group pleading is insufficient at all times—but especially so when dealing with allegations of fraud. *See Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (affirming dismissal because "plaintiffs had not alleged with specificity who had made particular misrepresentations and when they were made but rather plaintiffs had articulated general averments of fraud attributed to 'the defendants'").

In sum, because Plaintiffs fail as a matter of law to allege a statutorily required element of their RICO claims, those claims should be dismissed.

## III. ROCHESTER'S STATE-LAW CLAIMS SHOULD BE DISMISSED AGAINST THE NEW DEFENDANTS BECAUSE THEY ARE TIME-BARRED.

In its amended complaint, Rochester also asserts state-law claims for public nuisance, negligence, deceptive and unfair trade practices, false advertising, and violation of the Social Services Law against the New Defendants. Rochester Am. Compl. ¶¶ 719–83, 818–40, 841–69. The statutes of limitations for all of these claims have expired and these claims are therefore untimely against the New Defendants. *Zakora*, 44 F.4th at 480 (citation omitted) ("This court has

repeatedly held that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations.").

### A.    <u>Rochester's state-law claims against the New Defendants are untimely.</u>

1.    *Rochester's public nuisance claim against the New Defendants is untimely.*

Under New York law, a three-year limitations period applies to a claim for public nuisance, and the cause of action accrues "on the date of discovery of the injury." *Robert H. Law, Inc. v. Woodbine Bus. Park, Inc.*, 2018 WL 851382, at *26 (N.D.N.Y. Feb. 12, 2018) (citing *New York v. West Side Corp.*, 790 F. Supp. 2d 13, 29–31 (E.D.N.Y. 2011)); *see In re City of N.Y.*, 2004 WL 2590582, at *22 (N.Y. Sup. Ct. Nov. 10, 2004) (three-year statute of limitations). Rochester alleged a claim for public nuisance in its original complaint filed on June 5, 2019, and thus had discovered its alleged injury by then. Rochester's claim for public nuisance against the New Defendants was not filed until more than three years later and is therefore time-barred.

2.    *Rochester's negligence and gross negligence claims against the New Defendants are untimely.*

A three-year limitations period also applies to a claim for negligence or gross negligence. *Avery v. WJM Dev. Corp.*, 197 A.D.3d 1141, 1143 (N.Y. App. Div. 2d Dep't 2021) (citing N.Y. C.P.L.R. 214(4)); *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 289 F.R.D. 401, 405 n.4 (S.D.N.Y. 2013). Negligence causes of actions also accrue "from the date of the injury." *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 337 (E.D.N.Y. 2012) (citing *Brooklyn Union Gas Co. v. Hunter Turbo Corp.*, 241 A.D.2d 505, 660 (N.Y. App. Div. 2d Dep't 1997)). As above, Rochester asserted claims for negligence in its original complaint filed on June 5, 2019, and thus suffered its alleged injury by that date. So Rochester's claims for negligence and gross negligence against the New Defendants are untimely.

3. *Rochester's New York statutory claims against the New Defendants are untimely.*

The statute of limitations for claims under General Business Law (**GBL**) § 349 and § 350 and Social Services Law (**SSL**) § 145-b are also three years. *People ex rel. Schneiderman v. N. Leasing Sys., Inc.*, 60 Misc. 3d 867, 871 (N.Y. Sup. Ct., New York County 2017) (three-year statute of limitations for deceptive and unfair trade practices under GBL § 349); *Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452–53 (E.D.N.Y. 2007) (three-year statute of limitations period for false advertising under GBL § 350); *United States ex rel. Bilotta v. Novartis Pharms. Corp.*, 50 F. Supp. 3d 497, 547–51 (S.D.N.Y. 2014) (three-year statute of limitations for violation of SSL § 145-b). Such claims accrue "when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082–83 (N.Y. 2001) (GBL § 349); *see also Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 359 (E.D.N.Y. 2022) (GBL § 350); *Bilotta*, 50 F. Supp. 3d at 547–51 (SSL § 145-b).

In its original complaint, Rochester alleged that Defendants have "almost exclusive control over the dissemination of opioids"; acted "[i]n concert with drug manufacturers"; conspired with manufacturers to "increase the use of the least expensive" opioids through, among others, formulary placement; "fraudulently hid their financial relationship" with manufacturers from Rochester; "made deceptive representations about using opioids"; and "failed to correct prior misrepresentations about the risks and benefits of opioids." Rochester Orig. Compl. ¶¶ 1082, 1084, 1092, 1100. These same facts serve as the basis for the GBL and SSL claims against the New Defendants in the amended complaint. *See, e.g.*, Rochester Am. Compl. ¶¶ 841–68. Therefore, when Rochester filed its original complaint on June 5, 2019, all of the alleged factual circumstances giving rise to relief under these statutes had already allegedly occurred. These

claims against the New Defendants thus accrued, at the very latest, on June 5, 2019, and are now time-barred.

**B.** **Equitable tolling does not apply to Rochester's state-law claims against the New Defendants.**

Rochester also relies on the New York state-law doctrine of equitable estoppel or tolling to save its state-law claims.[9] New York law does not distinguish between the doctrines of equitable tolling and equitable estoppel and applies the same analysis to both. *Corp. Trade, Inc. v. Golf Channel*, 563 F. App'x 841, 841 (2d Cir. 2014) (citations omitted). Neither doctrine applies where, as here, "the [alleged] misrepresentation or act of concealment underlying the estoppel claim is the same act which forms the basis" of the underlying claim. *Torrance Constr., Inc. v. Jacques*, 127 A.D.3d 1261, 1265 (N.Y. App. Div. 3d Dep't 2015) (quotation omitted); *see also Orange Transp. Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 321 (W.D.N.Y. 2020) ("For equitable tolling to apply, a plaintiff may not rely on the same act that forms the basis for the claim—the later fraudulent misrepresentation must be for the purpose of concealing the former tort."); *Cusimano v. Schnurr*, 137 A.D.3d 527, 532 (N.Y. App. Div. 1st Dep't 2016) ("Where the same alleged wrongdoing that underlines the plaintiffs' equitable estoppel argument is also the basis of their tort claims, equitable estoppel will not lie.").

In support of their equitable arguments, Rochester asserts that Defendants "undertook efforts . . . to purposefully conceal their wrongful conduct" by, among other things, misrepresenting their role in the pharmaceutical market, misrepresenting the "true nature" of their

---

[9] New York's equitable doctrines apply to Rochester's state-law claims. *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) ("A federal court exercising supplemental jurisdiction over state-law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.").

relationships with manufacturers, failing to share information with the public, and "deliberately and fraudulently concealing the truth." Rochester Am. Compl. ¶ 696.

Yet each of these purported misrepresentations also forms the basis for Rochester's substantive claims. *See id.* ¶ 724 (claiming that Defendants' "misrepresent[ations] to the public and the medical community" about opioids helped to "create[] and maintain[] a public nuisance"); ¶ 822 (claiming that Defendants were negligent when they "undertook and assumed [and violated] a duty to create formulary and [utilization management] offerings . . . [and] represented to the public, as well as their clients, that they were structuring formulary and [utilization management] offerings based on the health and safety of the public and the lives their clients insured, when in fact they were doing the exact opposite . . . ."); ¶¶ 843, 856 (alleging that Defendants violated GBL §§ 349 and 350 by "misrepresenting that addiction risk can be managed"); ¶ 865 (alleging that Defendants made "false statement[s] [and] representation[s]" and "deliberate[ly] concealed" material facts "to obtain or obtain payment from public funds").

Under New York law, Rochester cannot rely on the same alleged fraud to support its claims for relief *and* to toll the statute of limitations. Without the benefit of equitable tolling, Rochester's state-law claims against the New Defendants are untimely and should be dismissed.

## IV. ROCHESTER'S STATUTORY STATE-LAW CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY FAIL AS A MATTER OF LAW.

Rochester's statutory state-law claims should also be dismissed because Rochester lacks standing to assert those claims against all Defendants. First, Rochester's deceptive practices and false advertising claims fail because Rochester cannot bring claims for injuries it suffered as a downstream consequence of consumers having allegedly been misled. Second, Rochester cannot bring a claim for false statement to obtain public funds because only the State of New York or a

"local social services district" may bring this claim, and Rochester is not a local social services district under the statutory text.

   A.   **Rochester fails to state a claim under the GBL because it fails to allege direct injury.**

   Rochester's fourth and fifth causes of action assert claims under GBL § 349 (deceptive acts and practices) and GBL § 350 (false advertising). Rochester Am. Compl. ¶¶ 841–52, 853–63. To state a claim under GBL § 349 or § 350, Rochester must allege that Defendants engaged in "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009) (GBL § 349); *see also Lucker v. Bayside Cemetery*, 114 A.D.3d 162, 174 (N.Y. App. Div. 1st Dep't 2013) (GBL § 350). Rochester's GBL claims fail because Rochester alleges that it suffered harm because Defendants misled others, not because Defendants misled Rochester. New York law forecloses this type of derivative claim under the GBL.

   Under New York law, a plaintiff lacks standing to bring a GBL claim where, as here, the plaintiff's loss "arises solely as a result of injuries sustained by another party." *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1145 (N.Y. 2004) (holding that a third party payor lacked standing to bring a GBL claim against tobacco manufacturers because the plaintiff's loss "arose wholly as a result of smoking related illnesses suffered" by its subscribers); *Smokes-Spirits*, 911 N.E.2d at 838–39 (rejecting New York City's claim for lost tax revenue due to consumers who purchased cigarettes over the internet as a result of misleading advertising). "Plaintiffs must 'plead that they have suffered actual injury caused by a materially misleading' act, not that a misleading act led to further steps which eventually harmed them." *Frintzilas v. DirecTV, LLC*, 731 F. App'x 71, 72 (2d Cir. 2018) (quoting *Smokes-Spirits*, 911 N.E.2d at 834); *Kyszenia*, 583 F. Supp. 3d at 363 (rejecting plaintiff's GBL claim where the plaintiff's alleged injury arose

from false statements made to a third party, not the plaintiff); *Unlimited Cellular, Inc. v. Red Points Sols. SL*, 2023 WL 4029824, at *8 (S.D.N.Y. June 14, 2023) (rejecting GBL claim based on allegedly deceptive conduct that "led to further steps . . . that ultimately harmed [p]laintiff").

The Eastern District of New York's decision in *Voters for Animal Rights v. D'Artagnan, Inc.*, 2020 WL 9209257 (E.D.N.Y. July 15, 2020), *report and recommendation adopted*, 2021 WL 1138017 (E.D.N.Y. Mar. 25, 2021) (**VFAR**), illustrates this point. In *VFAR*, the plaintiff advocacy organization alleged that the defendant falsely marketed its foie gras products to consumers and, as a result, the plaintiff incurred expenses on education, outreach, lobbying, and advocacy to counteract the defendant's misrepresentations. 2020 WL 9209257, at *1–2. Applying the decisions of the New York Court of Appeals in *Blue Cross* and *Smokes-Spirits*, the Eastern District of New York held that the plaintiff's injuries were "derivative of the injury to consumers" who were misled by the defendant's false statements. *Id.* at *6. The court concluded that the plaintiff's injury, voluntarily-incurred expenses to respond to the defendant's advertisements, could not support a GBL claim. *Id.* at *7. The court noted that, "[p]laintiff's argument, if adopted, would recognize a cognizable injury to any organization that opts to spend its resources" to respond to the advertisements of another. *Id.*

Similarly, here, Rochester's alleged injuries are wholly derivative of alleged injuries suffered by consumers. Specifically, Rochester alleges that Defendants' conduct (i) "undermined *consumers'* ability to assess the benefits and dangers of prescription opioids and to make informed decisions as to the efficacy and safety of opioid therapy," (ii) that this alleged *consumer* confusion caused or contributed to an opioid epidemic, and (iii) that Rochester was injured as a result of the *consumers'* confusion in the form of increased costs for public services. Rochester Am. Compl.

¶¶ 590, 714, 846 (emphasis added). Because Rochester does not allege it suffered a direct injury from Defendants' conduct, Rochester's claims under GBL §§ 349 and 350 must be dismissed.

Although a New York trial court found that municipalities asserting similar injuries stated a claim against prescription drug manufacturers and distributors under §§ 349 and 350, those decisions are irreconcilable with New York law as articulated by the New York Court of Appeals in *Blue Cross* and *Smokes-Spirits*. *See In re Opioid Litig.*, 2018 WL 4827862, at *9 (N.Y. Sup. Ct., Suffolk County July 17, 2018); *In re Opioid Litig.*, 2018 WL 3115102, at *16–20 (N.Y. Sup. Ct. Suffolk County June 18, 2018).

The New York Court of Appeals explicitly held in *Blue Cross* that a "third party payer of health care costs" lacks standing to pursue a claim based on allegations that consumers who purchased and used a product were deceived. 818 N.E.2d at 1143. In contravention of controlling law, the trial court in Suffolk County found that the plaintiff-municipalities in the state court opioid MDL properly stated GBL claims by alleging that they "paid for brand-name opioid prescriptions . . . for employees covered by county-funded health insurance plans . . . based on material misrepresentations disseminated by the defendants to the public and the health care community." *In re Opioid Litig.*, 2018 WL 4827862, at *9. That holding was wrong; allegations that other third parties were deceived are insufficient to establish standing under the GBL. Indeed, the operative allegation was materially indistinguishable from the theory rejected in *Blue Cross* that an insurer had standing under the GBL to recoup the sums paid for smoking-related illnesses suffered by its insureds as a result of deceptive tobacco marketing. 818 N.E.2d at 1145; *see also Burniac v. Wells Fargo Bank, N.A.*, 810 F.3d 429, 436 (6th Cir. 2016) (federal court applying state law "bound by controlling decisions of the state's highest court") (quoting *Berrington v. Wal-Mart Stores Inc.*, 696 F.3d 604, 607 (6th Cir. 2012)) (cleaned up).

26

The trial court in Suffolk County also found that the plaintiff-municipalities suffered injury due to the allocation of resources to reduce opioid abuse and opioid-related crime. 2018 WL 4827862, at *9; 2018 WL 3115102 at *25. But the New York Court of Appeals already determined that such injuries to the public fisc do not support a GBL claim. *See Smokes-Spirits*, 911 N.E.2d at 838–39. Similarly, voluntary expenditures to "combat" or counteract a defendant's advertising do not confer standing to pursue a claim under GBL § 349 or § 350. *VFAR*, 2020 WL 9209257, at *7.

Under the well-established precedent of New York's Court of Appeals, Rochester fails to state a direct injury suffered as a result of Defendants' alleged conduct. Instead, Rochester's allegations of harm flow exclusively from the alleged deception of and injury suffered by others. Rochester's fourth and fifth claim for relief under GBL §§ 349 and 350 must therefore be dismissed against all Defendants.

### B. Rochester lacks standing under SSL § 145-b.

Rochester's sixth cause of action seeking treble damages under the Social Services Law must also be dismissed against all Defendants for lack of standing.

Rochester broadly alleges that Defendants violated SSL § 145-b, which prohibits making false statements to obtain public funds for services provided under Chapter 55 of the New York SSL. Rochester Am. Compl. ¶¶ 864–69. Rochester also alleges, without factual or statutory support, that it is a "local social services district" authorized to bring a claim under § 145-b. *Id.* § 866.

Not so. The Social Services Law limits the right of action under § 145-b to "the local social services district or the state." Social Services Law § 2(7) and § 61 define "[s]ocial services district" narrowly to include only (1) the City of New York; and (2) each *county* of the state outside New York City. No city besides New York City qualifies. If the New York State Assembly intended to authorize all cities to bring claims under § 145-b, it could have done so. *See DeNigris v. Smithtown*

*Cent. Sch. Dist.*, 217 A.D.3d 95, 100 (N.Y. App. Div. 2d Dep't 2023) ("[W]here a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded."). Because it is neither the State of New York, nor the City of New York, nor a county of the State, the City of Rochester is not authorized to bring a claim under § 145-b. Its § 145-b claim must therefore be dismissed. *See Anonymous v. Molik*, 109 N.E.3d 563, 568 (N.Y. 2018) ("Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.").

## V. THE COURT SHOULD DISMISS THE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS FOR THE ACTS OF THEIR SUBSIDIARIES.

"It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted); *see also Mattingly v. R.J. Corman R.R. Grp., LLC*, 90 F.4th 478, 486 (6th Cir. 2024) (same). Thus a corporate parent may be held liable for the acts of a subsidiary if "the corporate veil is pierced" or if it "actively participated in, and exercised control over, the operations of the" subsidiary. *Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999); *Bestfoods*, 524 U.S. at 64 (requiring that "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management.").

Applying that rule, courts routinely dismiss claims against parent corporations for the alleged acts of subsidiaries absent allegations showing that veil-piercing applies. For example, in *Williams v. Porter Bancorp, Inc.*, the Western District of Kentucky dismissed claims against a corporate parent because the plaintiff did not allege that it directly engaged in wrongful conduct or allege any "grounds for piercing the corporate veil." 41 F. Supp. 3d 676, 682 (W.D. Ky. 2014) (citing *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007)) ("The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on

the parent corporation."). Likewise, the Parent Company Defendants here have been dismissed in other cases brought against them because the complaints only alleged conduct of their PBM subsidiaries. *See, e.g.*, *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *10–12 (D. Minn. Apr. 5, 2022) (dismissing claims against Express Scripts Holding Co., UnitedHealth Group Incorporated, and Optum, Inc., because they are not liable for the alleged acts of their PBM subsidiaries); *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *22 (D. Minn. Jan. 15, 2021) (same).

Here, Plaintiffs fail to plead any facts (1) showing that the Parent Company Defendants were direct participants in the alleged wrongdoing or (2) to justify piercing the corporate veil. First, Plaintiffs offer only conclusory statements that the Parent Company Defendants' conduct had a "direct effect" within Plaintiffs' respective communities. *See* Rochester Am. Compl. ¶¶ 108, 149; Lincoln County Am. Compl. ¶¶ 90, 135. And Plaintiffs merely group together the Parent Company Defendants with their subsidiaries in making allegations throughout both amended complaints.[10] Plaintiffs do not allege that any Parent Company Defendant engaged in any particular actionable conduct independent of their respective subsidiaries. Second, Plaintiffs provide no factual support for their conclusory allegation that the Parent Company Defendants are liable for the acts of their subsidiaries through an alter ego theory. Rochester Am. Compl. ¶ 718; Lincoln County Am. Compl. ¶ 713. As in *Williams* and *EpiPen*, these non-specific and conclusory allegations are insufficient to state a claim against the Parent Company Defendants. Plaintiffs' claims against

---

[10] Throughout their amended complaints, Plaintiffs collectively refer to Evernorth Health, Inc., and each of its wholly owned subsidiaries as "Express Scripts" or "ESI." Rochester Am. Compl. ¶ 131; Lincoln County Am. Compl. ¶ 118. Plaintiffs also collectively refer to Optum, Inc., and each of its wholly owned subsidiaries as "Optum," Rochester Am. Compl. ¶ 189; Lincoln Am. Compl. ¶ 173, and do not include any substantive allegations about UnitedHealth Group Incorporated. And Plaintiffs refer to all Defendants—parent companies and their respective subsidiaries—as "Defendants" or "the PBM Defendants."

Evernorth Health, Inc., f/k/a Express Scripts Holding Company, UnitedHealth Group Incorporated, and Optum, Inc., should therefore be dismissed for failure to state a claim against them.

## CONCLUSION

The Court should dismiss the amended complaints in part for the reasons explained above.

Date: March 21, 2024

Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
Andrew Hatchett
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for OptumRx, Inc., UnitedHealth Group Incorporated, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.*

*/s/ Jonathan D. Cooper*
Michael J. Lyle
Jonathan G. Cooper
Christopher G. Michel
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com
christophermichel@quinnemanuel.com

*Attorneys for Express Scripts Defendant Family*