**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | MDL No. 2804 |
| | Case Nos. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | 1:18-op-45817 |
| *Track 8: Cobb County, Georgia* | Judge Dan Aaron Polster |

---

**DEFENDANT PUBLIX SUPER MARKETS, INC.'S MOTION TO
CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT
AND INCORPORATED MEMORANDUM OF SUPPORTING LAW**

---

Michael P. Kohler
Georgia Bar No. 427727
**MILLER & MARTIN PLLC**
1180 W. Peachtree St., NW, Ste. 2100
Atlanta, GA 30309-3407
Telephone: (404) 962-6100
Facsimile: (404) 962-6303
michael.kohler@millermartin.com

*Counsel for Defendant Publix Super Markets, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

STATEMENT OF THE ISSUE ................................................................................ vi

SUMMARY OF THE ARGUMENT ........................................................................ vii

ARGUMENT ............................................................................................................ 1

The Standard of Law ............................................................................................ 2

The Law and Argument ........................................................................................ 3

    A.   The Proposed Questions Are Case Determinative and Have Never Been Answered by the Georgia Supreme Court. ....................................................................... 3

    B.   Additional Considerations Further Counsel Toward Certification. .............................. 12

    C.   The Court Should Certify These Questions Now, to Streamline the Parties' Summary-Judgment Submissions and Guide the Court's Review. ........................................ 18

The Conclusion ..................................................................................................... 19

# TABLE OF AUTHORITIES

C̲A̲S̲E̲S̲

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 620 F. Supp. 3d 936 (N.D. Cal. 2022) . 15

*City of Bowman v. Gunnells*, 256 S.E.2d 782 (Ga. 1979)............................................................. 13

*City of Douglasville v. Queen*, 514 S.E.2d 195 (Ga. 1999) ............................................................ 6

*City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408 (S.D.W. Va. 2022)

.................................................................................................................................................... 15

*City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, No. 22-1819, 2024 WL 1145974

(4th Cir. Mar. 18, 2024) ........................................................................................................... 14

*Claussen v. Aetna Cas. & Sur. Co.,* 865 F.2d 1217 (11th Cir. 1989), *certified question answered*,

380 S.E.2d 686 (Ga. 1989)....................................................................................................... 14

*Cosper v. Ford Motor Co.*, No. 2:18-CV-189-RWS, 2023 WL 2374246 (N.D. Ga. Feb. 14,

2023), *certified question answered*, 893 S.E.2d 106 (Ga. 2023) ......................................... 2, 18

*Cox v. De Jarnette*, 123 S.E.2d 16 (Ga. Ct. App. 1961)................................................................ 13

*Davis v. State ex rel. Lanham*, 35 S.E.2d 458 (Ga. 1945) ............................................................ 10

*De Vaughn v. Minor*, 1 S.E. 433 (Ga. 1887)................................................................................... 8

*Doe v. St. Joseph's Cath. Church*, 850 S.E.2d 267 (Ga. Ct. App. 2020), *aff'd in part, rev'd in*

*part*, 870 S.E.2d 365 (2022), *and vacated on other grounds*, 878 S.E.2d 575 (2022) .............. 7

*Eiswert v. United States*, 619 F. App'x 483 (6th Cir. 2015)......................................................... 13

*Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271 (11th Cir. 2013), *certified question answered sub*

*nom. Fla. Virtual Sch. v. K12, Inc.*, 148 So. 3d 97 (Fla. 2014) ............................................... 13

*Geib v. Amoco Oil Co.,* 29 F.3d 1050 (6th Cir.1994).................................................................... 2

*Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 399 F.3d 1276 (11th Cir. 2005) 3

*Hortman v. Yarbrough*, 107 S.E.2d 202 (Ga. 1959) ........................................................ 4

*In re ConAgra Peanut Butter Prod. Liab. Litig.*, No. 1:07-MD-1845-TWT, 2012 WL 3779088
(N.D. Ga. Aug. 29, 2012) ............................................................................................... 6

*In re Flyboy Aviation Properties, LLC*, 525 B.R. 510 (Bankr. N.D. Ga. 2015) .......................... 13

*In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455 (6th Cir. 2023), *certified question accepted
sub nom. Nat'l Prescription Opiate Litig. v. Purdue Pharma, L.P.*, 222 N.E.3d 661 (Ohio
2023) ........................................................................................................................... 14

*Johnson v. 3M*, 563 F. Supp. 3d 1253 (N.D. Ga. 2021), *aff'd sub nom. Johnson v. 3M Co.*, 55
F.4th 1304 (11th Cir. 2022) ......................................................................................... 9, 12

*McArthur v. Beech Haven Baptist Church of Athens*, 890 S.E.2d 427 (Ga. Ct. App. 2023).......... 7

*McGhee v. Publix Super Markets, Inc.*, No. A23A1291, 2024 WL 827855 (Ga. Ct. App. Feb. 28,
2024) ............................................................................................................................. 5

*McLendon & Cox v. Roberts*, 398 S.E.2d 579 (Ga. Ct. App. 1990) ............................................ 5

*Miss. Valley Title Ins. Co. v. Thompson*, 754 F.3d 1330 (11th Cir. 2014) ...................... 13, 14, 17

*N. Am. Senior Benefits, LLC v. Wimmer*, 889 S.E.2d 361 (Ga. Ct. App. 2023), *cert. granted* (Dec.
19, 2023) ...................................................................................................................... 16

*NBIS Constr. & Transp. Ins. Servs., Inc. v. Liebherr-Am., Inc.*, 93 F.4th 1304 (11th Cir. 2024) .. 3

*Parris v. 3M Co.*, 595 F. Supp. 3d 1288 (N.D. Ga. 2022) ........................................................... 9

*Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 952 F.2d 1304 (11th Cir. 1992), *certified
question answered*, 423 S.E.2d 659 (Ga. 1992) ............................................................... 15

*Presto v. Sandoz Pharms. Corp.*, 487 S.E.2d 70 (Ga. Ct. App. 1997) ...................................... 5, 6

*Royal Cap. Dev., LLC v. Maryland Cas. Co.*, 659 F.3d 1050 (11th Cir. 2011), *certified question
answered*, 728 S.E.2d 234 (Ga. 2012) ......................................................................... 3, 14

*St. Joseph Hosp. v. Celotex Corp.*, 854 F.2d 426 (11th Cir. 1988), *certified question answered,*
S.E.2d 880 (Ga. 1989) .......................................................................................... 17

*St. Joseph Hosp., Augusta, Ga., Inc. v. Health Mgmt. Assocs., Inc.*, No. CV 107-104, 2011 WL
1225577 (S.D. Ga. Mar. 30, 2011), *aff'd*, 705 F.3d 1289 (11th Cir. 2013) ............................ 12

*St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778 (4th Cir. 1995) .................................. 12

*Star Residential, LLC v. Hernandez*, 860 S.E.2d 726 (Ga. 2021) .................................................. 10

*State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021) ........................... 9, 10, 15

*Steele v. Comm'r of Soc. Sec.*, 51 F.4th 1059 (11th Cir. 2022), *certified question answered*, No.
SC2022-1342, 2024 WL 630219 (Fla. Feb. 15, 2024) ............................................................ 15

*Torres v. Putnam County*, 541 S.E.2d 133 (Ga. Ct. App. 2000) .................................................. 11

*W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227 (N.D. Ala.
2016) .......................................................................................................................... 9

*Walker Cnty. v. Tri-State Crematory*, 643 S.E.2d 324 (Ga. Ct. App. 2007) ......................... 11, 16

*WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240 (11th Cir.
2020), *certified question answered,* 355 So. 3d 841 (Ala. 2021) ............................................ 15

*Zellers v. Theater of the Stars, Inc.*, 319 S.E.2d 553 (Ga. Ct. App. 1984) .................................... 7

STATUTES

O.C.G.A. § 15-2-9 ...................................................................................................... 2

O.C.G.A. § 41-1-1 *et al* ............................................................................................... 3

O.C.G.A. § 41-1-2 ...................................................................................................... 6

O.C.G.A. § 41-1-3 ...................................................................................................... 8

O.C.G.A. § 41-2-1 ...................................................................................................... 8

O.C.G.A. § 43-11-2(e) ................................................................................................. 4

OTHER AUTHORITIES

*City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, Case No. 22-1819, January 25, 2024 Oral Argument, available at ca4.uscourts.gov/OAarchive/mp3/22-1819-20240125.mp3 ........................................................................................................................... 14

Goettsche, Stephen, *Cleaning Up the Opioid Crisis: Emerging Public Nuisance Liability in Opioid Litigation*, 2023 Wis. L. Rev. 2105 ............................................................... 4

CONSTITUTIONAL PROVISIONS

Ga. Const. art. VI, § 6, ¶ IV .......................................................................................... 2

## STATEMENT OF THE ISSUE

The sole issue raised by Defendant Publix Super Markets Inc.'s motion and incorporated memorandum is whether the Court should certify the following questions to the Georgia Supreme Court pursuant to O.C.G.A. § 15-2-9:

1. Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? If so, does such a claim require proof that the provider committed malpractice?

2. Under O.C.G.A. § 41-1-2, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2?

   Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where:

   (i)  the medication has recognized medical benefits, and

   (ii) the pharmacy is alleged to have filled only *some* prescriptions for that medication under suspicion of diversion?

3. What establishes that a nuisance interferes with the *public* health as opposed to merely the *personal* health of some individuals? Is the personal health or sickness of an individual an inherently private right that a local government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?

4. Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?

   a. If the answer is yes, is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?

   b. If the answer is no,

      (i) Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—*e.g.*, emergency, law-enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance? And

      (ii) Does Georgia preclude a local government from recovering monies to treat injuries personal to only some members of the public—*e.g.*, drug addiction, withdrawal, and overdose—as a form of "abatement" of a public nuisance?

## SUMMARY OF THE ARGUMENT

The Court may certify questions to the Georgia Supreme Court. O.C.G.A. § 15-2-9.  It has successfully done so once already in this MDL (*see* Doc. 4799 in Case No. 1:17-md-2804).  It should do so again given the discernable patterns emerging in prescription opioid-related litigation.

First, it is clear courts throughout the country disagree on the viability of state public nuisance law claims predicated on prescription opioid distribution/sales.  Some, often state courts (including the only state supreme court to consider the issue), conclude such claims are not viable. *See, e.g., Hunter v. Johnson & Johnson*, 499 P.3d 719, 727 (Okla. 2021).  Others, typically federal trial courts, reach the opposite conclusion. *See, e.g., City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 620 F. Supp. 3d 936, 1009 (N.D. Cal. 2022).

Second, given the conflicting outcomes and the amorphous nature of state public nuisance law federal appellate courts are uneasy and unwilling to declare the scope of a state's public nuisance law in the prescription opioid context; opting instead to defer to states' highest courts.  Thus, on the trial outcomes appealed to-date, both the 4th and 6th circuit courts have now *sua sponte* certified state prescription opioid public nuisance law questions to West Virginia's and Ohio's highest courts. *See In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 462 (6th Cir. 2023), *certified question accepted sub nom. Nat'l Prescription Opiate Litig. v. Purdue Pharma, L.P.*, 222 N.E.3d 661 (Ohio 2023); *City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, No. 22-1819, 2024 WL 1145974, at *1 (4th Cir. Mar. 18, 2024).

Certification is appropriate and even necessary.  Plaintiff's public-nuisance claim turns solely on interpretations of Georgia public nuisance law and seeks to expand that law in new and novel ways—a request which any federal court sitting in diversity should seek to avoid, let alone

one not sitting in Georgia.  Georgia public nuisance law has never been applied by the Georgia Supreme Court (i) to the sale/distribution of unadulterated, lawful products like prescription opioids, (ii) as a basis to remedy alleged professional malpractice, (iii) to permit a local government to recover payments for free public services as a form of abatement, or (iv) to permit a local government to recover monies to treat injuries in the nature of adverse health effects personal to only some members of the public as a form of abatement of a public nuisance. Publix's proposed questions ask the Georgia Supreme Court to address these issues for the first time.

Moreover, the Georgia Supreme Court is better positioned to apply Georgia public nuisance law in this context.  Courts nationwide cannot agree on the proper application of state public nuisance law to prescription opioids which favors deference to Georgia's Supreme Court. This case implicates important state public policy considerations, such as how best to allocate the costs associated with the opioid use and abuse and which branch of Georgia government should make that decision—public policy issues best addressed by the Georgia Supreme Court rather than a remote federal court. And certification now will be much more efficient than delaying until the case reaches an appeal--it will inform and streamline summary judgment arguments and better position the parties for settlement both as to the bellwether Cobb County case and also other MDL cases pending against Publix and brought by Georgia local governments.

For all the foregoing reasons and as explained more fully in Publix's motion, the Court should grant Publix's motion and certify Publix's proposed questions to the Georgia Supreme Court with the standard proviso that that court is not restricted to considering just the questions certified on this important topic.

# ARGUMENT

Defendant Publix Super Markets, Inc. moves the Court for an order certifying questions to the Georgia Supreme Court under O.C.G.A. § 15-2-9.

Plaintiff seeks to expand Georgia public-nuisance law well beyond its historical contours. Its claim raises significant issues of state law that the Georgia Supreme Court has not yet had occasion to consider but that will impact litigants throughout the State seeking to prosecute or defend public-nuisance actions. This Court can obtain valuable input on these issues by certifying questions to that court—just as it did recently (and successfully) in another opioid MDL case, (*see* Doc. 4799 in Case No. 1:17-md-2804)—thereby increasing the likelihood that its decisions will accurately reflect Georgia law and result in the resolution not only of this case but of other Georgia opioid cases against Publix and others as well. Certification also promotes the Court's immediate goals in this action because the Georgia Supreme Court's answers will streamline the parties' summary-judgment submissions and inform settlement negotiations.

Publix, therefore, asks the Court to certify the following questions to the Georgia Supreme Court:

1. Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? If so, does such a claim require proof that the provider committed malpractice?

2. Under O.C.G.A. § 41-1-2, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2?

   Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where:

   (i)  the medication has recognized medical benefits, and

   (ii) the pharmacy is alleged to have filled only *some* prescriptions for that medication under suspicion of diversion?

- 1 -

3. What establishes that a nuisance interferes with the *public* health as opposed to merely the *personal* health of some individuals? Is the personal health or sickness of an individual an inherently private right that a local government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?

4. Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?

   a. If the answer is <u>yes</u>, is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?

   b. If the answer is <u>no</u>,

      (i) Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—*e.g.*, emergency, law-enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance? And

      (ii) Does Georgia preclude a local government from recovering monies to treat injuries personal to only some members of the public—*e.g.*, drug addiction, withdrawal, and overdose—as a form of "abatement" of a public nuisance?

**<u>The Standard of Law</u>**

Georgia's Supreme Court has "jurisdiction to answer any question of law from any . . . federal district or appellate court." Ga. Const. art. VI, § 6, ¶ IV; *see also* O.C.G.A. § 15-2-9(a) (certification is available any time questions of Georgia state law are "determinative of the case and there are no clear controlling precedents in the decisions of the [Georgia] Supreme Court".); *Geib v. Amoco Oil Co.,* 29 F.3d 1050, 1060 (6th Cir.1994) (certification is appropriate "where an important question of state law has arisen solely in federal court."); *Cosper v. Ford Motor Co.*, No. 2:18-CV-189-RWS, 2023 WL 2374246, at *6 (N.D. Ga. Feb. 14, 2023), *certified question answered*, 893 S.E.2d 106 (Ga. 2023) ("[C]ertification is proper 'when substantial doubt exists about the answer to a material state law question upon which the case turns.'") (quoting *Looney v. Moore*, 861 F.3d 1303, 1314 (11th Cir. 2017)).

"Certification serves interests of federalism and comity and provides [courts] with 'what [they] can be assured are 'correct' answers to state law questions." *NBIS Constr. & Transp. Ins. Servs., Inc. v. Liebherr-Am., Inc.*, 93 F.4th 1304, 1314 (11th Cir. 2024) (citations and internal quotation marks omitted). In deciding whether to certify, courts should consider "the closeness of the question and the existence of sufficient sources of state law to allow a principled rather than conjectural conclusion" as well as "the degree to which considerations of comity are relevant" and "practical limitations of the certification process." *Royal Cap. Dev., LLC v. Maryland Cas. Co.*, 659 F.3d 1050, 1055 (11th Cir. 2011), *certified question answered*, 728 S.E.2d 234 (Ga. 2012) (citations, quotation marks, and alterations omitted). "Where there is doubt in the interpretation of state law however, a federal court *should* certify the question to the state supreme court to avoid making unnecessary Erie guesses and to offer the state court the opportunity to interpret or change existing law." *Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc.*, 399 F.3d 1276, 1279 (11th Cir. 2005) (citations omitted) (emphasis added); *see NBIS Constr. & Transp.*, 93 F.4th at 1314 ("When faced with substantial doubt on a dispositive state law issue, our better option is to certify the question to the state supreme court.") (citations omitted).

### The Law and Argument

### A.     The Proposed Questions Are Case Determinative and Have Never Been Answered by the Georgia Supreme Court.

Georgia state law is determinative. Plaintiff's statutory public-nuisance claim turns entirely on correctly interpreting Georgia's public-nuisance statutes, O.C.G.A. § 41-1-1 *et al.*, necessarily implicating important questions of Georgia law.

Additionally, there is no controlling Georgia Supreme Court precedent answering these questions. As an initial matter, Plaintiff's claim requires the Court to decide questions of Georgia

- 3 -

public-nuisance law in an entirely new context: the dispensing of lawful, unadulterated prescription medications by a licensed pharmacist. In fact, invoking state public-nuisance law to address harms resulting from opioid dispensing and use is widely regarded as a novel attempt to expand the public-nuisance doctrine. *See, e.g.*, Goettsche, Stephen, *Cleaning Up the Opioid Crisis: Emerging Public Nuisance Liability in Opioid Litigation*, 2023 Wis. L. Rev. 2105 (claims "that the opioid industry—manufacturers, distributors, and pharmacies—caused a public nuisance through the oversupply of prescription opioids … are a novel application of public nuisance law"). This is equally true in Georgia where neither the Georgia Supreme Court nor the state's other appellate courts have ever reviewed or addressed, let alone sanctioned, expanding Georgia's public-nuisance law in the manner plaintiff invites. As Publix's proposed questions illustrate, this novel application necessarily asks this Court to resolve several important state-law issues without guidance from the state's highest court.

>    i.  <u>*Question 1*</u>: *Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? If so, does such a claim require proof that the provider committed malpractice?*

Georgia's statutes say acting as a health care provider—but *without the required professional license*—is a public nuisance in some circumstances. *See, e.g.,* O.C.G.A. § 43-11-2(e) (unlicensed dentistry is a public nuisance); *Hortman v. Yarbrough*, 107 S.E.2d 202, 204 (Ga. 1959) ("[T]he legislature has classified all persons engaging in the practice of dentistry without a license as a nuisance dangerous to public health, safety and welfare, and has provided that the Board of Dental Examiners may enjoin them from continuing to practice dentistry without a license without regard to whether there are other remedies which might or might not bring about this result."). But no statute, and no Georgia Supreme Court or other appellate decision, speaks to whether harm caused by a *licensed* health care provider can sustain a public nuisance claim,

and this includes the situation where the claim is premised on the professional licensee providing care below the applicable professional practice standard. Yet, Plaintiff asks the Court to find that individual pharmacists' failure to catch and refrain from filling suspicious prescriptions creates public-nuisance liability for the pharmacy employing them because that failure contributed to greater, downstream harms. Such a finding would require an entirely novel application of Georgia law, and the first of Publix's proposed certified questions therefore asks the Georgia Supreme Court to address this threshold open issue.

If that court answers the first question in the affirmative, Publix raises a related, unanswered question as to the applicable malpractice standard.  Generally, a licensed health care provider's failure to meet the standard of care sounds in malpractice, rather than in nuisance. *Presto v. Sandoz Pharms. Corp.*, 487 S.E.2d 70, 74 (Ga. Ct. App. 1997) ("A suit is a professional malpractice action where it calls into question the conduct of a professional in his area of expertise.") (citations omitted). And where the supporting allegations are based on a professional's failure to satisfy the professional standard of care, Georgia courts have found plaintiffs' bound by the elements and requirements of malpractice—regardless of how they have labeled their labeled claims. *See, e.g.*, *McLendon & Cox v. Roberts*, 398 S.E.2d 579, 579–80 (Ga. Ct. App. 1990) (holding the fact that "appellee's claim against appellant necessarily is based upon an allegation that appellant's work [as a landscape architect] on the adjoining property was professionally deficient . . . clearly categorizes appellee's action against appellant as one for 'damages alleging professional malpractice' . . . rather than one for the creation or maintenance of a nuisance under OCGA § 41–1–4"); *McGhee v. Publix Super Markets, Inc.*, No. A23A1291, 2024 WL 827855, at *4 (Ga. Ct. App. Feb. 28, 2024) (quoting *Sparks v. Kroger Co.*, 407 S.E.2d 105, 106 (Ga. Ct. App. 1991)) (holding Plaintiffs' claims were subject to expert-affidavit

requirement for malpractice actions even though Plaintiff had alleged negligence against Publix and not brought any claims against a Publix pharmacist directly, explaining, "[w]here a vendor of drugs or medicines is a licensed pharmacist and is sued on the basis of allegations that he negligently dispensed the wrong drug in filling a medical prescription, the claim against him clearly is for medical malpractice"); *Presto*, 487 S.E.2d at 74 ("[Plaintiffs'] claims, however labeled, are allegations of professional malpractice on the part of pharmacists or nurses[.]"). Further, Georgia courts have determined pharmacies may not be held liable on certain theories of liability "in the absence of 'negligence amounting to professional malpractice.'" *Presto*, 487 S.E.2d at 74–75 (quoting *Sparks*, 407 S.E.2d at 106) (pharmacist could not be liable on a breach of warranty theory absent showing of malpractice). No Georgia court has ever been called upon to decide whether public nuisance is such a theory. Question 1 is thus well-suited to certification, and its answer would shed light on pertinent claims in this action and in others like it.

> ii. <u>Question 2</u>: What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2? Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where: (i) the medication has recognized medical benefits, and (ii) the pharmacy is alleged to have filled only some prescriptions for that medication under suspicion of diversion?

A public nuisance is "one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2. Georgia's Supreme Court interprets this to mean "a public nuisance must injure all members of the public who come into contact with it." *City of Douglasville v. Queen*, 514 S.E.2d 195, 199 (Ga. 1999) (citations omitted). A Georgia federal court has suggested this requires, in the case of the sale of an *adulterated* product, that all users of the product must have been harmed by it. *In re ConAgra Peanut Butter Prod. Liab. Litig.*, No. 1:07-MD-1845-TWT, 2012 WL 3779088, at *3 (N.D. Ga. Aug. 29, 2012) (Georgia public-nuisance claim would fail because not all users purchased a

contaminated product). Georgia's Supreme Court, however, has not yet addressed how the "all

persons" standard applies in the context of the sale of a lawful, *unadulterated* product by a

licensed health care provider. Publix's second proposed certified questions asks the Georgia

Supreme Court to address that question.

Existing caselaw suggests that operations or products which are not *only and always*

harmful cannot satisfy O.C.G.A. § 41-1-2's requirement, even where multiple individuals were

harmed via contact with the defendant's operations. *See, e.g.*, *McArthur v. Beech Haven Baptist*

*Church of Athens*, 890 S.E.2d 427, 438 (Ga. Ct. App. 2023) (alleged sexual abuse by members of

clergy "even against multiple victims across multiple years, was insufficient to constitute a

public nuisance" because "it did not harm all persons who came into the sphere of church

operations"); *Doe v. St. Joseph's Cath. Church*, 850 S.E.2d 267, 274 (Ga. Ct. App. 2020), *aff'd*

*in part, rev'd in part*, 870 S.E.2d 365 (2022), *and vacated on other grounds*, 878 S.E.2d 575

(2022) ("Doe does not allege that all or even most people who came into contact with the church

experienced this injury. Thus, the alleged molestation itself was not sufficient to constitute a

public nuisance, even if there were multiple victims over multiple years."); *Zellers v. Theater of*

*the Stars, Inc.*, 319 S.E.2d 553, 555 (Ga. Ct. App. 1984) (glass doors of theater center which

broke and injured plaintiff were not a public nuisance where other attendees of event were not

injured by the doors).

Here, Publix operates grocery stores and pharmacies in Cobb County, Georgia. Plaintiff

has not and could not seriously suggest that all who came into contact with Publix's Cobb

County stores, or even just its pharmacies, are always injured by that contact. And Plaintiff faces

unique challenges of proof depending on whether it is required to establish that Publix's alleged

lack of sufficient policies to prevent diversion of opioids damaged, *e.g.*, all customers of Publix,

all persons who had a prescription filled by a Publix pharmacist, or even just those (but also all) persons who had an opioid prescription filled by Publix. And the Georgia Supreme Court's answer to this question likely would, as a practical matter, foreclose Plaintiff's public nuisance claim if the "sphere of operation" is different than Plaintiff has assumed it to be. If an unadulterated medication with recognized medical benefits—such as prescription opioid medications—can never "damag[e] all persons who come within the sphere of its operation," then Plaintiff's claim must fail. Because these issues require interpretation of Georgia law that will be dispositive of this case and also impactful to many existing and future public-nuisance cases, the Court should certify Question 2.

> iii. *Question 3: What establishes that a nuisance interferes with the public health as opposed to merely the personal health of some individuals? Is the personal health or sickness of an individual an inherently private right which a local government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?*

Even if a public nuisance exists, Georgia law limits which parties may assert claims for which types of harms. For example, Georgia law bars public-nuisance claims by individuals for interference with a public right absent special damages. *See* O.C.G.A. § 41-1-3. And for a public nuisance to be subject to abatement it must "ten[d] to the immediate annoyance of the public in general, [be] manifestly injurious to the public health or safety, or ten[d] to greatly corrupt the manners and morals of the public." O.C.G.A. § 41-2-1. But the Georgia Supreme Court has explained "[a]ll injury to health is special, and necessarily limited in its effect to the individual affected[.]" *De Vaughn v. Minor*, 1 S.E. 433, 436 (Ga. 1887). Georgia federal courts applying this concept in the public-nuisance context have held, "the public cannot be said to enjoy health or suffer sickness. . . . Whatever affects his health affects him specially, and him alone. Such damage is special damage within the meaning of the Code, and the fact that other citizens suffer similar special damages does not convert his injury into the nature of public damages."). *Parris*

- 8 -

*v. 3M Co.*, 595 F. Supp. 3d 1288, 1340 (N.D. Ga. 2022) (quoting *Savannah, F. & W. Ry. Co. v. Parish*, 45 S.E. 280, 280 (Ga. 1903)); *see also id.* (noting that, in *Parish*, "the Georgia Supreme Court distinguished personal injury and property damage from general public injury on the basis that the former, 'in the very nature of things . . . can only be predicated of the individual'"); *Johnson v. 3M*, 563 F. Supp. 3d 1253, 1340–41 (N.D. Ga. 2021), *aff'd sub nom. Johnson v. 3M Co.*, 55 F.4th 1304 (11th Cir. 2022) (differentiating between "the general public harm" of interference with the use and enjoyment of rivers and the provision of safe drinking water based on defendants' contamination of those waters and the special private harms of having to pay to remove the pollutants from their own properties); *see also id.* (favorably citing *W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1234 (N.D. Ala. 2016), which found "paying to remove PFAS from one's property is 'different in kind' than being exposed to PFAS alongside members of the general public who may drink the water, or are otherwise prevented from using or enjoying the contaminated waters"). This question asks the Georgia Supreme Court to delineate the boundaries and the proof required to show that a nuisance harms *public* health—and is therefore subject to abatement in an action by a local government—as distinct from *private* health that may be addressed through a public nuisance lawsuit only by the specific individuals, no matter how numerous, who have suffered that harm.

The answer to the question is case determinative, as illustrated by the decisions of other state supreme courts faced with opioid public-nuisance claims by local governments. *See State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 727 (Okla. 2021). In *Hunter*, the State of Oklahoma sought to hold the defendant liable in nuisance for the manufacture, marketing, and sale of prescription opioids in Oklahoma, characterizing its suit "as an interference with the public right of health." *Id.* The Oklahoma Supreme Court rejected the State's characterization:

> This case does not involve a comparable incident to those in which we have anticipated that an injury to the public health would occur, e.g., diseased animals, pollution in drinking water, or the discharge of sewer on property. Such property-related conditions have no beneficial use and only cause annoyance, injury, or endangerment. In this case, the lawful products, prescription opioids, have a beneficial use in treating pain.

*Id.* (citations omitted); *see also id.* at 726 ("A public nuisance involves a violation of a public right; a public right is more than an aggregate of private rights by a large number of injured persons.") (citations omitted). If the Georgia Supreme Court finds, consistent with the Oklahoma Supreme Court and other recent federal courts interpreting Georgia law, that an interference with public health requires more than Plaintiff has alleged, Plaintiff's claim cannot succeed.

> iv.  *Questions 4 and 4(a): Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction? If the answer is yes, is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?*

Georgia Supreme Court precedent addressing the scope of a § 41-2-2 claim to abate a public nuisance indicates that "an action in abatement involves temporary and permanent injunctive relief to halt activity that is causing [the] nuisance." *Star Residential, LLC v. Hernandez*, 860 S.E.2d 726, 729 (Ga. 2021) (citations omitted); *see also Davis v. State ex rel. Lanham*, 35 S.E.2d 458, 460 (Ga. 1945) ("The Code, § 72–202, so far as it provides for a suit in equity . . . to abate a public nuisance, does not contemplate an abatement otherwise than by injunction.").[1] This fourth question asks the Georgia Supreme Court to clarify whether this line of cases forecloses any non-injunctive relief in public-nuisance cases. The related question asks the Georgia Supreme Court to clarify how narrowly tailored an abatement injunction must be to the conduct/level of control of a defendant alleged to have contributed to the nuisance.

---

[1] Section 72-202 is the predecessor to O.C.G.A. § 41-2-2.

If Georgia law is more limited than Plaintiff has presumed it to be, much of Plaintiff's

case becomes irrelevant and issues in this case become simpler and more streamlined, and the

answers to these questions, and the related questions in 4(b)(i) and (ii), have great potential to

focus and facilitate settlement negotiations between the parties and between Publix and the

Plaintiffs Executive Committee more generally as to the portfolio of cases currently pending

against Publix in this MDL.

> v.    *Question 4(b): Does Georgia law nevertheless preclude a local government*
> *from recovering monies to pay for the provision of free public services—e.g.,*
> *emergency, law-enforcement, criminal-justice, foster-care, and other like*
> *services—as a form of "abatement" of a public nuisance and/or to treat*
> *injuries personal to only some members of the public—e.g., drug addiction,*
> *withdrawal, and overdose—as a form of "abatement" of a public nuisance?*

Consistent with the limited scope of abatement recovery, Georgia's appellate courts have

not allowed a county to obtain monies to pay for public services under the guise of abating a

public nuisance, citing Georgia's free public services doctrine. *Walker Cnty. v. Tri-State*

*Crematory*, 643 S.E.2d 324, 328 (Ga. Ct. App. 2007) (rejecting county's "argument that there

should be an exception to the free public services doctrine when the [county's] costs are incurred

as part of the abatement of a public nuisance" and dismissing the county's public-nuisance

claim); *see also Torres v. Putnam County*, 541 S.E.2d 133, 136–37 (Ga. Ct. App. 2000) (finding

county could not recover tort damages against business operators for expenses incurred by the

county in sending in the building inspector and sheriff out to the business' property because

county could not recover costs to enforce its laws and protect its citizens). The Georgia Supreme

Court, however, has not addressed application of Georgia's free-public-services doctrine in the

context of public nuisance. Yet Plaintiff seeks to recover for these types of services, claiming

they form part of the abatement remedy contemplated by O.C.G.A. § 41-2-1.

- 11 -

Likewise consistent with the limited scope of recovery for public nuisance, while Georgia may permit the harmed *individual(s)* to pursue monies to pay to treat personal injuries caused by a public nuisance, no Georgia Supreme Court decision permits a county to do likewise on behalf of its citizens as part of a public-nuisance claim. *See Johnson*, 563 F. Supp. 3d at 1340 (citing *Parrish*, 45 S.E. at 280–81) (distinguishing individual health impacts as being always special harm and never abatable as public harm). Should that court answer Publix's fifth question in the negative, these related questions ask the court to confirm whether Georgia's free-public-services doctrine applies to public-service costs incurred in response to a public nuisance and whether a *county* (as opposed to an *individual*) can recover monies that will be used to treat injuries of some members of the public as an "abatement" remedy.

Because Plaintiff's claim is rooted entirely in Georgia law and raises important state-law questions for which there is no controlling Georgia Supreme Court precedent, this Court should invite the Georgia Supreme Court's input by certifying Publix's proposed questions.

### B.    Additional Considerations Further Counsel Toward Certification.

Other factors suggest certification is not just appropriate but necessary. For example, federal courts (especially distant federal courts) sitting in diversity should not seek to expand state law. *St. Paul Fire & Marine Ins. Co. v. Jacobson*, 48 F.3d 778, 783 (4th Cir. 1995) (explaining that federal courts "rule upon state law as it exists and do not surmise or suggest its expansion"); *St. Joseph Hosp., Augusta, Ga., Inc. v. Health Mgmt. Assocs., Inc.*, No. CV 107-104, 2011 WL 1225577, at *14 (S.D. Ga. Mar. 30, 2011), *aff'd*, 705 F.3d 1289 (11th Cir. 2013) ("Federal courts must 'apply state law' and decline invitations to 'participate in an effort to change it.'") (citations omitted). Here, Plaintiff seeks to expand public-nuisance law in Georgia to encompass, for the first time, both (i) the sale of unadulterated, lawful products by a licensed pharmacy through licensed pharmacists on the basis that the pharmacists improperly filled some

of the pharmacy customers' prescriptions in violation of the applicable professional standard of care, and (ii) monetary relief to cover costs for otherwise free public services to be incurred in abating the public nuisance as well as medical treatment costs to address health effects experienced personally by only some of its citizens.

Further, "certification is most appropriate when the question is new and state law is unsettled." *Eiswert v. United States*, 619 F. App'x 483, 486 (6th Cir. 2015) (citations and internal quotation marks omitted); *see also Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1274 (11th Cir. 2013), *certified question answered sub nom. Fla. Virtual Sch. v. K12, Inc.*, 148 So. 3d 97 (Fla. 2014) (certifying question and explaining "[t]his case, in our view, presents a state law issue of first impression with reasonable arguments on both sides"); *Miss. Valley Title Ins. Co. v. Thompson*, 754 F.3d 1330, 1334 (11th Cir. 2014) (certifying question to Alabama Supreme Court where both parties raised plausible arguments and no Alabama Supreme Court or appellate case had construed the relevant statutory terms or directly spoken to the pertinent issue). Not only is Plaintiff's claim new and untested in Georgia, but Georgia's public-nuisance law, as a general matter, is inherently unsettled because public nuisance is an amorphous concept originating in the State's common law. *See In re Flyboy Aviation Properties, LLC*, 525 B.R. 510, 527 (Bankr. N.D. Ga. 2015) ("As applied in the case law, nuisance is a somewhat nebulous concept."); *City of Bowman v. Gunnells,* 256 S.E.2d 782, 784 (Ga. 1979) (equating nuisance to pornography in that "it cannot be defined but you know it when you see it"); *Cox v. De Jarnette*, 123 S.E.2d 16, 24 (Ga. Ct. App. 1961) ("There is perhaps no more impenetrable jungle in the entire law than that which surrounds the word 'nuisance.' It has meant all things to all men, and has been applied indiscriminately to everything from an alarming advertisement to a cockroach baked in a pie. There is general agreement that it is incapable of any exact or comprehensive

definition.") (citations omitted). The unsettled nature of Georgia public-nuisance law strongly favors certification in this case. *See Royal Cap. Dev.*, 659 F.3d at 1055 ("[W]e think certification is appropriate. Georgia law is unsettled on this narrow but important question, and an authoritative statement from its own supreme court is much better than a conjectural statement from this one."); *Miss. Valley*, 754 F.3d at 1334 ("Only a state supreme court can provide what we can be assured are 'correct' answers to state law questions, because a state's highest court is the one true and final arbiter of state law." (internal quotation marks omitted)). Federal appellate courts reviewing prescription-opioid questions related to this MDL likewise agree that certification of questions concerning state public-nuisance law to the state's highest court is logical and preferred. *See In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 462 (6th Cir. 2023), *certified question accepted sub nom. Nat'l Prescription Opiate Litig. v. Purdue Pharma, L.P.*, 222 N.E.3d 661 (Ohio 2023) (sua sponte certifying state-law public-nuisance question); *City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, No. 22-1819, 2024 WL 1145974, at *1 (4th Cir. Mar. 18, 2024) (same); *see also City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*, Case No. 22-1819, January 25, 2024 Oral Argument, available at ca4.uscourts.gov/OAarchive/mp3/22-1819-20240125.mp3 (panel asking counsel three times why the court should not certify questions to the Supreme Court of Appeals of West Virginia).

Certification is further favored where, as here, there is no controlling precedent in the state's highest courts *and* other courts across the country have reached different outcomes analyzing similar issues. *See Claussen v. Aetna Cas. & Sur. Co.,* 865 F.2d 1217, 1217 (11th Cir. 1989), *certified question answered*, 380 S.E.2d 686 (Ga. 1989) ("Because this case involves interpretation of an insurance contract provision, peculiarly a question of state law, and because similar provisions have received varied interpretations in other jurisdictions throughout the

country, we believe that the issue is one appropriate for resolution by the Supreme Court of Georgia."); *compare, e.g., Hunter*, 499 P.3d 719 (no public-nuisance liability based on manufacture, marketing, and distribution of opioid medications), *and City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 472 (S.D.W. Va. 2022) ("The extension of the law of nuisance to cover the marketing and sale of opioids is inconsistent with the history and traditional notions of nuisance."), *with City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 620 F. Supp. 3d 936, 1009 (N.D. Cal. 2022) (finding pharmacy chain liable for opioid-related public-nuisance claims under California law).

Additionally, federalism and comity considerations weigh in favor of certification. "[A]s a matter of federalism and comity, dispositive issues of [Georgia] law should be first presented to the [Georgia] Supreme Court to decide." *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 972 F.3d 1240, 1251 (11th Cir. 2020), *certified question answered,* 355 So. 3d 841 (Ala. 2021) (citations omitted). "Indeed, certification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism." *Steele v. Comm'r of Soc. Sec.*, 51 F.4th 1059, 1065 (11th Cir. 2022), *certified question answered*, No. SC2022-1342, 2024 WL 630219 (Fla. Feb. 15, 2024) (citations and internal quotation marks omitted).

No one disputes this case raises issues of great public importance likely which have substantial implications for corporate entities, municipalities, and individuals living and operating in Georgia. *Polston v. Boomershine Pontiac-GMC Truck, Inc.*, 952 F.2d 1304, 1306 (11th Cir. 1992), *certified question answered*, 423 S.E.2d 659 (Ga. 1992) ("Because this issue implicates substantial public policy concerns, we defer our decision in this case pending certification of this question to the Supreme Court of Georgia[.]"); *WM Mobile Bay*, 972 F.3d at 1251 (explaining, in deciding to certify question to Alabama Supreme Court, that, "[a]lthough

the facts of this case involve a single judgment creditor, the legal principles involved may have broad effects on the citizens of Alabama, their public corporations, and the companies that do business with them"). And Georgia courts have expressed a preference that matters, such as this, which implicate the allocation of societal costs should be handled by the Georgia legislature. *See Tri-State Crematory*, 643 S.E.2d at 327 ("[A]ny decision over whether to reallocate how [public-service-related] costs are spread necessarily implicates fiscal policy, a matter best left to the legislature and its public deliberative processes, rather than the court.") (citations omitted); *see also N. Am. Senior Benefits, LLC v. Wimmer*, 889 S.E.2d 361, 366 (Ga. Ct. App. 2023), *cert. granted* (Dec. 19, 2023) ("It is fundamental that matters of public policy are entrusted to the General Assembly, and not this court. It is equally fundamental that it is not for this [c]ourt to expand or contract the scope of the General Assembly's legislative enactments, unless the policy choices it makes by enacting statutes exceed its constitutional authority.") (citations omitted). Georgia's Supreme Court is best positioned to determine how Georgia should allocate the societal costs associated with overdose and addiction, including whether the matter is best left to Georgia's legislature.

Decisions in this case and resolution of the identified questions also will have significant implications on Georgia Court dockets. Expanding Georgia public-nuisance law beyond existing contours is likely to result in an influx of tort litigation by cities and counties across Georgia, not only in the opioid context (though the volume of those cases is surely likely to increase), but also in public-nuisance actions generally. For example, if recovery of the "abatement" funds Plaintiff seeks from Publix is allowed, many other municipal entities may well file nuisance claims against Publix and other pharmacies across the state. And, if the Court decides for the first time that Plaintiff can vindicate private injuries and/or professional malpractice claims through an

O.C.G.A. § 41-2-2 public-nuisance-abatement action, nothing will prevent local governments in the future from pursuing such actions against Georgia citizens on much more expansive grounds than have been previously recognized.[2] Because the implications for Georgia law are so significant, the highest Georgia court should be afforded input on these issues before inviting substantial new litigation in Georgia courts. *See Miss. Valley*, 754 F.3d at 1334 ("Because we find that the resolution of this appeal turns on a material, unsettled state-law question, we believe that the best course of action is to wait until the final arbiter of Alabama law has spoken.").

Further, a great many cases from this MDL will be remanded to Georgia courts and courts applying Georgia law. (There are at least 15 Georgia cases pending against Publix alone.) These cases will directly and immediately benefit from the answers to these certified questions from the Georgia Supreme Court which can speak finally and decisively on these issues, with Georgia policy considerations in mind. Certification will therefore streamline not only the resolution of this bellwether case but also all of the other pending Georgia cases as well. *See St. Joseph Hosp. v. Celotex Corp.*, 854 F.2d 426, 427 (11th Cir. 1988), *certified question answered,* S.E.2d 880 (Ga. 1989) ("Because of the importance of this issue of Georgia law to the resolution of several pending lawsuits, we believe that the Georgia Supreme Court should have the opportunity to address the issue.").

And finally, the sheer amount of money Plaintiff seeks to recoup—and that similarly situated plaintiffs seek to recoup from Publix and others—favors certification. *Id.* at 429 ("As we

---

[2] This outcome would likely lead to a significant increase in federal forum shopping, which certification would prevent.  *See Firestone v. Galbreath*, 25 F.3d 323, 325 n.3 (6th Cir. 1994) ("[T]he acceptance of certification not only provides the most reliable authoritative source for resolving the issues in question but also inhibits federal court forum shopping."); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 224 (2d Cir. 2021) ("Certification in diversity cases 'discourages forum shopping and affirm[s] that it is the state's High Court that is entitled to have the final say on any issue of state law.'") (citations omitted).

noted in our previous opinion, these cases involve considerable amounts of money, and this court has a strong interest in faithfully applying Georgia law with scrupulous accuracy."). This is particularly true in this case where Plaintiff is seeking not only to hold Publix liable under entirely new public-nuisance theories but also for unprecedented public-nuisance remedies, which, if allowed, will certainly be replicated in suits by local governments across Georgia. Certification will afford Publix and other defendants a conclusive answer before they are called upon to defend and/or negotiate the settlement of such actions.

### C. The Court Should Certify These Questions Now, to Streamline the Parties' Summary-Judgment Submissions and Guide the Court's Review.

Rather than causing undue delay, certification will aid in the timely resolution of this case. As the U.S. District Court for the Northern District of Georgia recently reasoned,

> [c]hoosing to proceed without resolution of these issues will likely unduly delay the ultimate conclusion of this case. If the Court proceeds without review, the verdict is likely to proceed through a review process requiring consideration by the Eleventh Circuit and through certification therefrom to the Supreme Court of Georgia. Certification remedies this problem because it will cut out "the middleman" and prevent lengthy post-trial appeals.

*Cosper v. Ford Motor Co.*, No. 2:18-CV-189-RWS, 2023 WL 2374246, at *6–7 (N.D. Ga. Feb. 14, 2023), *certified question answered,* 893 S.E.2d 106 (Ga. 2023). The timely resolution of these issues is particularly important in this context, where related cases will look to the decisions in this action as defining the standard for public-nuisance claims by municipalities against pharmacies across the State of Georgia—a decision from Georgia Supreme Court will offer important guidance for the many existing cases which eventually will be prosecuted in Georgia federal and state courts upon eventual remand from the MDL and which would otherwise need to apply nuisance principles in the absence of Georgia precedent. A definitive ruling now will streamline the pathway for all these other cases as well. And because these issues

will arise at summary judgment in this action, it would be most efficient to certify these questions now so the Court and the parties may have the benefit of a final answer from the Georgia Supreme Court in crafting and ruling on summary-judgment arguments.

### The Conclusion

The questions Publix identifies require analysis of yet-unsettled Georgia law, and the answers to those questions will resolve threshold and otherwise critical issues in this case. Under these circumstances, certification is justified and practical. This Court should allow the Georgia Supreme Court an opportunity to definitively speak on these matters of Georgia law before it is required to guess what that court would decide. For these reasons, Publix respectfully requests that the Court grant its motion to certify.

This 3rd day of April, 2024.

**MILLER & MARTIN PLLC**

By: */s/ Michael P. Kohler*
     Michael P. Kohler
     Georgia Bar No. 427727

1180 West Peachtree Street, N.W., Suite 2100
Atlanta, Georgia 30309-3407
Telephone: (404) 962-6403
Facsimile: (404) 962-6303
Email:  michael.kohler@millermartin.com
***Attorney for Publix Super Markets, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the below date the foregoing document was

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to counsel of record.

This 3rd day of April, 2024

**MILLER & MARTIN PLLC**

By: */s/ Michael P. Kohler* 
Michael P. Kohler
Georgia Bar No. 427727