# EXHIBIT 1
# (excerpt)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**THIS DOCUMENT RELATES TO**:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13)<br><br>*City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14)<br><br>*County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | **MDL NO. 2804**<br><br>**Case No. 17-MD-2804**<br><br>**Judge Dan Aaron Polster** |

## DECLARATION

I, Al DeCarlo, declare as follows:

1. I am over the age of 18. This declaration is based upon my personal knowledge, and I could testify competently regarding the matters stated herein.

2. I am currently Vice President, Market Analytics & Intelligence, at Evernorth Health Services.

3. I am familiar with the systems that host paid claims, rebate, and administrative fee data for Express Scripts, Inc. (**ESI**) from January 1, 2014 to the present. I am also familiar with the databases and legacy systems where pre-2014 data is retained by ESI.

1

**Paid Claims Data**

4. I understand that ESI acquired Medco Health Solutions, Inc. (**Medco**) in 2012, and there was a systems integration period in which both entities' systems were migrated onto a new system. The systems integration was not completed until the end of 2013.

5. The Electronic Data Warehouse (**EDW**) was the database that maintained ESI paid claims data before the systems integration. At the end of 2013, ESI completed a system-wide migration to the Information Warehouse (**IW**), the current, active database that maintains paid claims data. Historical paid claims data that was not migrated was either archived and stored electronically (2008-2013) or placed on floppy disks in storage (2006-2007).

6. To collect paid claims data from January 1, 2006 to December 31, 2007, ESI must locate the relevant floppy disks from a storage warehouse. The data on those disks would be from two cold storage databases—Historical IW and LDM—that are no longer in use. The data can only be accessed if restored – i.e., loaded to a database that must be created in order to ingest and analyze the data, as described in greater detail below.

7. Collecting, restoring, and producing paid claims data from January 1, 2006 to December 31, 2007 would occur in four phases.

8. <u>Phase One: Scoping</u> will require estimating the size of the archived data in both databases. This will require identifying the number of members covered in the relevant geographic area and the number of claims by those members. The archived data is compressed, meaning that the employees assigned to the collection are only able to run basic queries. To run more complex queries for the subsets of data we are looking for, it will need to be uncompressed. Once they have an estimate of the size of the compressed data, they will need to work with IT to determine the size of the expanded data. After both estimates are complete, employees assigned to the collection and

IT will work together to identify the best method for extracting the data and procuring any additional storage or computing power from a database vendor. This would either entail adding processing power to the archive database or purchasing a new database. Scoping would take approximately three weeks to complete, assuming that the relevant geographic area is defined as the bellwether jurisdictions and the contiguous counties. If the relevant geographic area is expanded, it will likely take more time to complete this phase.

9. <u>Phase Two: Preliminary Data Extraction and Setting Up the Archive</u> will require extracting the data from archived storage, consolidating the data, and setting up a production database. First, all data associated with the requested data fields will need to be exported. However, certain data fields from before January 1, 2008, are no longer available because they were not archived with the data during the data migration. For example, member address information is missing for a significant portion of data. In addition, the clients and client members may have different identification numbers across the various databases. ESI would need to query billions of rows of data to facilitate the extraction of data for production. When querying and pulling data from this time period, ESI must crosswalk the data to be consistent across databases, de-duplicate the data, and manually review for completeness and accuracy. Employees assigned to the collection must undertake this process because (a) the data sets may have differences in naming conventions – for example, one spreadsheet may contain a field called "a client member ID" and another spreadsheet may contain an analogous field called the "client number"; (b) the data sets may also have different layouts – for example, the fields are arranged in different orders; and (c) the data sets may also have other differences – for example, one dataset may contain a field of data that is altogether missing from another spreadsheet. To my knowledge, there is no current ESI employee who is familiar with the data fields that were used in the Historical IW and LDM

3

databases and there is no data dictionary for those fields. So, ESI's current employees would have to review some of the data fields individually to try to determine the corresponding fields in the current database and/or create descriptions for the fields from scratch. Once the data is merged, the data must be uncompressed and loaded into a production database. This extraction phase will take approximately four to six additional weeks after the completion of Phase One for data associated with the 43 data fields proposed by ESI in its January 16 correspondence to Plaintiffs. I understand that Plaintiffs are currently requesting data associated with over 400 data fields. If data associated with over 400 data fields is required to be exported, it will take more time to complete this phase.

10. **Phase Three: Data Analysis** will require employees assigned to the collection to analyze the data to identify matches with the parameters for production. First, employees assigned to the collection will need to create a dataset consisting of the full claims history for pharmacies in the relevant geographic area. This will entail: (a) creating a database table with pharmacy identifiers; (b) identifying pharmacies located in the relevant geographic area; and (c) creating a claims history table consisting of all claims associated with those pharmacies. Second, employees assigned to the collection will run a query of opioid National Drug Codes (**NDCs**) to identify all opioid claims in the pharmacy dataset and create a separate dataset consisting of just opioid claims. Third, employees assigned to the collection will run a query of NDCs for muscle relaxants and benzodiazepines to identify all claims for those drugs in the pharmacy dataset and create a separate dataset consisting of just claims for muscle relaxants and benzodiazepines. Fourth, employees assigned to the collection will run a query across the two narrower datasets to identify muscle relaxant or benzodiazepine claims dispensed within 14 days of an opioid claim. This will be accomplished through the creation of a complex matching algorithm that can run a multi-table

database row level query. The results of this query will be stored into a new table and then combined into a dataset with the dataset of opioid claims. This extraction phase will take approximately four to six additional weeks after the completion of Phases One and Two, depending on the relevant geographic area and drug scope. If the relevant geographic area is expanded and/or the list of NDCs is increased, it will take more time to complete this phase.

11. Phase Four: External Transfer will require extracting the final claims dataset onto a text file on a separate server and transferring the text file to the recipient via a secure electronic method. This external transfer phase will take approximately one additional week after the completion of Phases One, Two, and Three.

12. In sum, my best estimate is that it will take approximately twelve to sixteen weeks to collect, restore, and produce paid claims data from January 1, 2006 to December 31, 2007, assuming that the relevant geographic and drug scopes are not expanded.

13. Because only select employees can carry out these activities, querying and collecting paid claims data from before January 1, 2008 would divert resources from normal business operations and responses to urgent requests from clients about their prescription benefits and their members' access to prescription drugs. Therefore, the time to complete this process will depend on the number of employees dedicated to the collection process and the extent to which collection and processing of data for the litigation takes priority over requests by ESI's customers and requests by ESI's employees in connection with the company's business activities.

5

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 15, 2024.

*Al DeCarlo*
Al DeCarlo