# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*PBM Bellwether Cases* | MDL NO. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

### DECLARATION OF KEVIN HOSKINS

I, Kevin Hoskins, declare as follows:

1.  I am the Director of Business Analytics at OptumRx, Inc. I am familiar with the facts set forth in this declaration based on my personal knowledge.

2.  As Director of Business Analytics, my responsibilities include, among other things, managing inputs and outputs from OptumRx's Integrated Data Warehouse (IDW). I own the IDW development changes and governance functions for claims flowing into IDW. I have worked for OptumRx for more than 16 years.

3.  I understand that the Plaintiffs have requested more than 4,300 data fields from more than 120 different data tables for all in-scope opioid prescriptions processed by OptumRx for three states: New York, Texas, and Missouri.

4.  The volume of data that the Plaintiffs seek is significantly larger than any data pull that my team has ever conducted. Based on my experience and familiarity with the systems involved, I estimate that the process for extracting, compiling, and transferring the requested data from the IDW to OptumRx's external data consultants would take at least seven months. That estimate does not account for significant additional time that those external consultants would have to spend in preparing the data files for production.

5. OptumRx's claims data is not stored, searchable, or capable of production in a simple Excel file. Instead, OptumRx's current claims data (i.e., 2015 to present) is stored in its IDW, a relational database that contains voluminous information that is unrelated to the adjudication of any claim and which is partitioned into data tables with different functions:

- **Fact tables** store information such as transactional claims data. They are the center of a relational environment to which other tables may link.

- **Dimensional tables** store descriptions and further details on specific elements maintained in a fact table. For example, instead of storing all demographic information associated with a member in a fact table, a dimensional member table would contain the information and a member identifier or key would be stored in the fact table to allow the relational tables to be joined.

- **Look-up or reference tables** store descriptions related to specific elements that are used in other tables. For example, a data system may have a look-up table for State instead of coding the State name (e.g., Alabama = 01, Alaska = 02). Look-up tables store information that is standardized and rarely requires updates or additions whereas dimensional tables are frequently updated (*e.g.*, adding information for a new member).

- **Aggregate tables** are created by the business for specific operations to organize and analyze data for a specific use case.

6. I understand that the Plaintiffs seek data across 18 fact tables, 5 aggregate tables, 54 dimensional tables, and 47 look-up tables. Many of those tables contain duplicative information, and the vast majority of that data is not related to the adjudication of any prescription claim.

7. To begin the process of pulling the requested data, my team would need at least three data analysts with expertise in OptumRx's IDW system who could dedicate themselves to this project full time. Those analysts are not currently available, so embarking on the requested pull would likely require (conservatively) at least two months to either hire and train new data analysts or to transition team members who are currently dedicated to critical business operations and transfer them to the project. In either case, that process would impose a significant cost on OptumRx and could disrupt critical business operations.

8. After that two-month period, the data pull from IDW itself would take—at a minimum—four months. Several of the tables the Plaintiffs have requested contain *billions* of records and terabytes of data. Querying data from a single table containing terabytes of data takes significant processing time. That processing time increases exponentially when data is queried across multiple tables.

9. Additionally, the processing time required for an extract of this size will have a direct impact on OptumRx's business operations. The IDW is not a system set aside for litigation purposes; it is a critical data environment queried for a wide range of business purposes. Adding stress to the system by running large, process-intensive queries will slow down OptumRx's ability to conduct other analyses in IDW. To attempt to avoid these issues, OptumRx will likely have to run the proposed data queries in off-hours, which will also contribute to the length of time the extraction could take.

10. After pulling the data, it must be transferred to OptumRx's external data consultants to prepare for production. Given the volume of data, the requested production would have to be produced in the structure that it is maintained in IDW—in tables. To break the data down into a file size small enough to allow for transfer, that process would require breaking the data down into

3

hundreds, if not thousands, of files. Based on prior efforts to transfer fields from just *one* table and a handful of lookup tables, the transfer of those files from OptumRx to its data consultants could easily take a month or more.

11. In addition to the roughly seven-month period (or more) that it would take for my team to pull the requested data and transfer it to OptumRx's data consultants, I understand that OptumRx's data consultants will then require a significant amount of time to prepare the files for production.

12. As noted above, Plaintiffs seek data for all in-scope opioid prescriptions processed by OptumRx for three states: New York, Texas, and Missouri. The time estimates included in this declaration relate to the data fields and tables Plaintiffs have requested for the bellwether jurisdictions themselves. In my experience, querying and extracting data for a larger geographic region (such as an entire state) will increase the complexity of the data pull and increase the time associated with completing the pull.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 8, 2024.

*Kevin Hoskins*

Kevin Hoskins

4