UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*Lincoln County v. Richard Sackler, M.D.*, No. 20-op-45069 (Track 13)<br><br>*City of Independence, Missouri v. Williams*, No. 1:19-op-45371 (Track 14)<br><br>*County of Webb v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | Case No.: 17-MD-2804<br><br>Judge: Dan Aaron Polster<br><br>**PBM DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO SERVE ADDITIONAL DISCOVERY** |

On April 2, 2024, the PEC filed a "Motion to Serve Additional Discovery" in which the PEC sought leave to serve additional discovery and requested that the Court "order the PBMs to respond immediately." Dkt. 5383 at 2. On April 4, 2024, the Court issued an order stating in part that "the Court construes the PEC's submission as a motion to compel production of certain prioritized subsets of documents responsive to its initial discovery requests. Defendant PBMs are hereby instructed to submit a response by April 9, [2024], agreeing to respond fully to the discovery requests posed in docket no. 5383-2, or explaining why they should not be ordered to do so." Dkt. 5387 at 2. The Court further ordered that all parties—Plaintiffs and Defendants—may not provide written discovery responses that contain "only" objections, but must make "good faith substantive responses" as well. *Id*. at 2–3 (quoting *In re: Hair Relaxer Marketing, Sales Practices, & Prods. Liab. Litig.*, case no. 23-CV-818, docket no. 416 (N.D. Ill. Jan. 25, 2024)).

The OptumRx and Express Scripts Defendants (**PBM Defendants**) oppose Plaintiffs' Motion. The requests set forth in Exhibit 2 to the Motion fall into one of two categories: a) subsets

of previously served discovery, or b) entirely new discovery. As to subsets of previously served discovery, the PBM Defendants have responded to those prior requests, are meeting and conferring with Plaintiffs, and are working with Plaintiffs to discuss their priorities.  As to any new requests, they should count against the limits set forth in the Case Management Orders (**CMOs**), which the PEC has already exceeded for Requests for Production. Finally, the PBM Defendants oppose the PEC's request that the PBM Defendants be "ordered to respond immediately." The PEC's motion, as recast by the Court's April 4 order, should be denied.

*First*, contrary to the PEC's assertions, the PBM Defendants have responded to the PEC's initial set of document requests served on December 29, 2023—including through amended objections and responses that the PEC did not include in its motion—and are in the midst of good-faith negotiations with the PEC over search terms and custodians to identify and produce responsive documents pursuant to the CMO deadlines. Moreover, each of the PBM Defendants have already produced tens of thousands of documents responsive to the initial requests through their DR-22 productions from the *Jefferson County* litigation. This includes thousands of communications with manufacturers in response to Initial Request No. 15. The Court discussed Initial Request No. 15 in its April 4 order and suggested that the PBM Defendants have produced only "ten documents" in response to it. Dkt. 5387 at 1. In fact, they have already produced thousands of documents responsive to this request, and they will produce more as search terms and custodians are ironed out, a process which is ongoing, *see* Dkt. 5386 at 1–2. Simply put, the PBM Defendants have produced and are continuing to produce documents responsive to Plaintiffs' discovery requests, so there is no reason to grant the PEC's motion to serve extra discovery.

*Second*, as the Court recognized, most of the supplemental discovery requests in Exhibit 2 to the PEC's motion duplicate prior discovery requests. It would be unduly burdensome and a

waste of resources to require the PBM Defendants to prepare new written responses and objections to these duplicative requests. Instead—to the extent they have not already—the PBM Defendants will respond fully to initial discovery requests after the ongoing meet and confer process is complete by indicating that (1) there are no responsive documents, (2) responsive documents are being withheld based on privilege or objections, or (3) responsive documents are being produced. *See* Dkt. 5387 at 3. The PBM Defendants will continue to work with the PEC to discuss the materials that they wish to prioritize.

*Third*, some of the supplemental discovery requests in Exhibit 2 to the PEC's motion are brand new requests not covered by prior discovery requests, particularly Request No. 3 and its dozens of subparts. The Court should not grant leave to serve these new requests because the PEC has already met or exceeded its allotment of document requests set forth in the Case Management Orders, and they have not shown good cause to exceed those limits. The PEC used all of its document requests within the first six weeks of document discovery, often in requests seeking materials and documents that the PBM Defendants had already produced through DR-22. The Court should decline the motion, or at least demand that the PEC show good cause for any truly new requests. At a minimum, if the Court grants the PEC's motion to serve them, the PBM Defendants are entitled under the Federal Rules of Civil Procedure to have 30 days to object and respond to such requests after they are served.

Finally, if the Court grants the PEC's motion to serve additional discovery, the PBM Defendants request that (i) the PEC be ordered to reissue the supplemental requests as either requests for production or interrogatories pursuant to Rules 33 and 34 and the CMOs, rather than "combined" requests; (ii) the PEC be ordered to identify which initial discovery request, if any,

each supplemental request is intended to clarify; and (iii) the PBM Defendants' be given 30 days under Rules 33 and 34 to provide written responses and objections to the newly served requests.

## BACKGROUND

On December 29, 2023, the PEC served their first set of "Combined Discovery Requests" on behalf of the plaintiffs in Tracks 12, 13, 14, and 15 (Dkt. 5383-1) (the "**Initial Requests**"). While the Case Management Order set a limit on the number of requests for production ("**RFPs**") and interrogatories that the PEC may issue, the PEC made no effort to identify which of the Initial Requests were RFPs, which were interrogatories, and which contained elements of both. The PBM Defendants conferred with the PEC, and the parties agreed that 34 of the 35 Initial Requests (asking the PBM Defendants to "produce" documents) were RFPs, and 20 of the 35 Initial Requests (asking the PBM Defendants to "identify" information) were interrogatories. The PBM Defendants provided their initial responses and objections on January 29, 2023.[1] While the PEC later complained that no documents were produced, the PBM Defendants had already reproduced via DR-22 over one hundred thousand documents responsive to the requests from the *Jefferson County* litigation, and often referenced those documents in their responses. For example, the PBM Defendants have already produced hundreds of contracts with opioid manufacturers as well as thousands of communications with manufacturers. In addition, as part of their initial discovery responses, the PBM Defendants agreed to meet and confer about the scope of the requests, and they have since engaged in these good faith negotiations to select custodians and develop search terms designed to identify additional documents responsive to their requests.

---

[1] The Court's April 2, 2024 order indicates that the Court has reviewed the PBM Defendants' initial objections that were served on January 29. Those objections do not appear to have been filed on the docket or otherwise submitted to the Court, so it is unclear what the Court reviewed. In any event, the Court does not have the full record, as the PBM Defendants have served amended and supplemental discovery responses since January 29 or will do so soon.

In February and March 2024, the parties engaged in numerous meet and confers to discuss the requests, resolve objections, and negotiate search terms and custodians. The PBM Defendants have now made several document productions responsive to the Initial Requests, and intend to begin rolling out custodial document productions by the April 15, 2024 deadline for all parties to begin custodial productions.

On February 6, 2024, the PEC served Geographic Specific Data Requests (containing five RFPs and two interrogatories) on behalf of the plaintiffs in Tracks 12, 13, 14, and 15. The PEC also served National Data Requests (containing six RFPs and three interrogatories) on behalf of the plaintiffs in Tracks 12 and 13. The PBM Defendants responded to these requests on March 7, 2024, and March 21, 2024. Combined with the Initial Requests, these data requests meant that the PEC had served the following totals as of April 1, 2024:

- Track 12 and 13 Plaintiffs have served 45 requests for production and 25 interrogatories
- Track 14 and 15 Plaintiffs have served 39 requests for production and 22 interrogatories

In other words, all four bellwether plaintiffs have already met or exceeded the limits for RFPs set forth in the CMOs. *See* Dkt. 5282 at 5 ("[Track 12 and 13] Plaintiffs collectively may serve up to 45 requests for production"); Dkt. 5295 at 3 ("The Track 14 and 15 plaintiffs may collectively serve up to 35 requests for production").

On February 20, 2024, the Court granted Plaintiffs' motion for leave to amend their complaints. Dkt. 5319. After service of the newly-added defendants, the PBM Defendants served amended responses to the Initial Requests. The Express Scripts Defendants served amended RFP responses on March 18, 2024, in which they agreed to produce documents in response to nearly every request. The Express Scripts Defendants served further amended responses on April 5, 2024, which was 30 days after the newly-added Express Scripts Defendants were served the amended complaints. The newly-added OptumRx Defendants responded to the Initial Requests on March

5

22 (30 days after the Court's February 20 order). Since then, the PBM Defendants have continued to work with Plaintiffs to negotiate custodians and search terms designed to identify documents that are responsive to Plaintiffs' requests. As part of these negotiations, OptumRx has agreed to supplement its responses to Plaintiffs' Initial Discovery in the near future.

As a result of these productive discussions between the parties, the PEC and the PBM Defendants negotiated certain amendments to the Case Management Order relating to search terms and custodians. Dkt. 5386. The Court entered an order amending the Case Management Order on April 4, 2024. Dkt. 5389.

On April 2, 2024, the PEC filed a "Motion to Serve Additional Discovery" in which the PEC sought leave to serve additional discovery and requested that the Court "order the PBMs to respond immediately." Dkt. 5389 at 2. The PEC had not shared these requests with the PBM Defendants beforehand, nor made any attempt to resolve this issue without court intervention. In their motion, the PEC asked that the new requests "should not be separately counted against the number of requests which the Plaintiffs are permitted to serve under the applicable CMOs." *Id.*

On April 3, 2024, the PBM Defendants filed a Notice of Intent to Oppose Plaintiffs' Motion, stating that they intended to file their opposition on April 9. Dkt. 5385. On April 4, 2024, the Court issued an order stating that "proposed supplemental discovery is simply seeking more precise subsets of what the PEC originally requested." Dkt. 5387 at 2. The Court continued that it "construes the PEC's submission as a motion to compel production of certain prioritized subsets of documents responsive to its initial discovery requests. Defendant PBMs are hereby instructed to submit a response by April 9, [2024], agreeing to respond fully to the discovery requests posed in docket no. 5383-2, or explaining why they should not be ordered to do so." Dkt. 5387 at 2.

The PBM Defendants have timely submitted this response.

6

**ARGUMENT**

The PBM Defendants oppose the relief sought by the PEC. *First*, since receiving the Initial Requests on December 29, 2023, the PBM Defendants have (i) met and conferred with the PEC in good faith to clarify the requests and resolve objections; (ii) served (or will soon serve) amended or supplemental responses in which they agree to produce additional documents responsive to the Initial Requests—beyond the tens of thousands they have already produced—or clearly state the basis for not producing documents; (iii) continued to negotiate custodians and search terms in advance of the April 15, 2024 deadline to begin custodial document productions; and (iv) made several additional document productions. Even before the PEC served its Initial Requests, the PBM Defendants had produced tens of thousands of responsive documents through DR-22, including thousands of manufacturer communications responsive to Initial Request No. 15. The PEC's statements that the PBM Defendants "refuse to comply with basic discovery requests" and that "numerous meet and confers have taken place yielding very little in substantive answers and/or responsive documents" are not consistent with the facts.

*Second*, while the Court construed the PEC's motion as a "motion to compel production of certain prioritized subsets of documents responsive to [the PEC's] initial discovery requests," the PEC was not seeking a motion to compel, and such a motion would violate Rules 34 and 37. For those requests that are truly "subsets" of the PEC's Initial Requests, the PBM Defendants have already begun producing additional responsive documents, and are actively negotiating custodians and search terms in order to produce more responsive documents over the next several months. The PBM Defendants should not be compelled to prepare new written responses to discovery that the PEC and the Court agree is duplicative and cumulative. The Court should deny the PEC's motion and instruct the parties to bring a motion to compel only after an impasse is reached following a good faith meet and confer process, as required by Rule 37(a)(1).

*Third*, the PBM Defendants disagree that the supplemental requests in Exhibit 2 are merely a more precise subset of the Initial Requests. Several of the requests, such as 2e ("all communications (including newsletters and mailings) with physicians regarding the placement of *OxyContin* on your national formulary and/or changes made thereto") and 2f ("all public announcements regarding the placement of *OxyContin* on your national formulary and/or changes made thereto) are new. And some of the new requests are incredibly burdensome. For example, Request No. 3 states as follows:

> 3. To clarify the PEC Initial Discovery Requests and prioritize your responses thereto, with respect to each of the following Committees, Teams, or Groups, please (i) identify all members or persons involved therein and the time period of their involvement, (ii) produce all charters, policies, procedures and/or protocols including prior versions and/or revisions, (iii) produce all documents **related to prescription opioids** including but not limited to, materials relied upon, intra-committee/group/team communications, inter-committee/group/team communications (with other committees), communications with prescription opioid manufacturers, emails (internal and external), minutes (or other summary documents), agendas, Committee/group/team work product and/or reports generated therefrom, and (iv) produce all documents related to OxyContin.
>
> > 3a. Pharmacy & Therapeutics Committee ("P&T" Committee)
> >
> > 3b. Therapeutic Assessment Committee ("TAC")
> >
> > 3c. Value Assessment Committee ("VAC")
> >
> > 3d. Clinical Integrity Council ("CIC")
> >
> > 3e. Trade Relations Group ("TRG")
> >
> > 3f. Fraud, Waste and Abuse ("FWA")
> >
> > 3g. Committees, groups, or teams responsible for Concurrent and/or Retrospective Drug Utilization Review ("CDUR" and "RDUR")
> >
> > 3h. Clinical Programs Subcommittee ("CPS")
> >
> > 3i. Business Implementation Committee ("BIC")
> >
> > 3j. Drug Intelligence Team ("DIT")
> >
> > 3k. Formulary Management Committee ("FMC")

3l. Industry Relations Group ("IRG")

3m. Office of Clinical Evaluation and Policy ("OCEP")

3n. Drug Evaluation Unit ("DEU")

While subpart (ii) of Request No. 3 (seeking charters, policies, and procedures) is a subset of Initial Request No. 6 (which also sought policies and procedures), and the PEC had previously sought certain communications with the formulary committees listed in 3a, 3b, and 3c, the remainder of Request No. 3 seeks materials and information that the PEC did not request in Initial Requests. Due to its numerous parts and subparts, Request No. 3 effectively calls for ***dozens*** of categories of documents, nearly matching the total number of document requests that Court allotted to Plaintiffs. *See e.g.*, Dkt. 5282 at 5 ("[Track 12 and 13] Plaintiffs collectively may serve up to 45 requests for production").

As the PEC recognizes, service of the newly-propounded requests will exceed Plaintiffs' "allotted number of . . . requests for production of documents." Prior to the filing of their motion, the Track 12 and 13 PBM bellwether plaintiffs had served 45 requests for production on each of the PBM Defendants—the limit for those tracks set forth in the applicable CMO. Dkt. 5282. The Track 14 and 15 PBM bellwether plaintiffs have already served 39 requests for production— exceeding the limits set forth in the applicable CMO. Dkt. 5295. The PEC's motion does not attempt to establish good cause to exceed these limits, and good cause does not exist. The PEC used their allotted document requests by issuing many irrelevant or duplicative requests, and now seeks to exceed the limits in the Case Management Orders. The Court should decline the motion, or at least demand that the PEC show good cause for any truly new requests.

Moreover, a number of the supplemental requests in Exhibit 2 seek new written responses, rather than documents. These would need to be served as interrogatories under Rule 33 rather than requests for production under Rule 34. *See, e.g.*, Supplemental Request No. 3 (requesting PBM

9

Defendants "identify all members or persons involved" in certain committees). Rule 33 requires that interrogatories be served, and it grants the responding party 30 days to object or respond to interrogatories once served. There is no simply no basis to compel the PBM Defendants to answer interrogatories that have never been served on them, and that they have never had any opportunity—let alone 30 days—to object and respond to. Indeed, in its April 4 order, the Court treated the PEC's motion as seeking to compel "production of certain prioritized subsets of documents responsive to its initial discovery requests," not to compel answers to interrogatories that have never been served. Thus, if the Court grants any relief, it should be limited to document requests, not interrogatories.

*Finally*, if the Court grants the PEC's motion, the PEC should be ordered to (i) reissue the supplemental requests as either requests for production or interrogatories pursuant to Rules 33 and 34, rather than "combined" requests; (ii) clearly identify which initial discovery request, if any, each supplemental request is intended to clarify, and (iii) properly serve the new requests on the PBM Defendants, thus triggering the 30-day period under Rules 33 and 34 to provide written responses and objections. The PBM Defendants will respond to any newly served requests consistent with the Court's instructions, while reserving the right to assert appropriate objections and to withhold documents or information based on properly asserted objections or privilege. Dkt. 5387 at 3.

## CONCLUSION

The Court should deny the PEC's motion for leave to serve additional discovery.

Dated: April 9, 2024

/s/ Brian D. Boone
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com

Kimberly K. Chemerinsky
**ALSTON & BIRD LLP**
333 South Hope Street, 16th Floor
Los Angeles, CA 90071-1410
Tel: (213) 576-1000
kim.chemerinsky@alston.com

*Attorneys for OptumRx Defendants*

/s/ Jonathan G. Cooper
Mike Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St. Floor 10
Los Angeles, CA 90017
Tel: (213) 443-3000
sagevandenheuvel@quinnemanuel.com

*Attorneys for Express Scripts Defendants*