# EXHIBIT 4

# *Purdue Pharma L.P.*

100 CONNECTICUT AVENUE, NORWALK, CONNECTICUT 06850-3590 • (203) 853-0123 FAX (203) 838-1576

AGREEMENT dated April 17, 1997 between Express Scripts, 14000 Riverport Drive, Maryland Heights, MO 63043 ("PBM"), a Pharmacy Benefit Management Organization and Purdue Pharma L.P., 100 Connecticut Avenue, Norwalk, Connecticut 06850-3590 ("PPLP").

PBM and PPLP agree as follows:

1. <u>Definitions:</u>
    1.1. "Member" means any individual who is eligible for coverage of prescribed pharmaceutical products under a Plan.
    1.2. "Plan" means any group or individual plan issued or administered by PBM, where PBM has contracted to provide such Plan with exclusive formulary management and pharmacy benefit management services to the Plan and its Members. Plans shall include independent practice associations, preferred provider organizations, insurers, and self-funded employers or employer groups. Plans shall not include (1) staff model health maintenance organizations, (2) programs or entities for which PBM only provides claims processing only services, (3) programs or entities which maintain no eligibility criteria, (4) consumer card programs, (5) unfunded cash clients, or (6) other programs or entities for which Members are required to pay 100% of the cost of Products dispensed by Pharmacies without subsequent reimbursement of a substantial portion of the cost of the Product and which are not associated with a plan or policy of health care coverage. PPLP reserves the right to determine whether a program or an entity associated with PBM satisfies this definition of "Plan".
    1.3. "Pharmacy" means a duly licensed retail or mail order pharmacy that has entered into a contractual agreement with PBM to provide pharmaceuticals and

1

DEDICATED TO PHYSICIAN AND PATIENT

7003642543
PDD1701198993

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

services to Members pursuant to the requirements of a Plan and pursuant to any State laws.

1.4. "Product" means any pharmaceutical product manufactured, distributed, or marketed by PPLP and listed in Exhibit A-1 and/or Exhibit A-2.

1.5. "Closed Formulary" means a formulary where a product may be written by a Member's physician and dispensed by a Pharmacy to a Member if the product is listed in the formulary book; and the Member must either pay a higher co-pay for a non-formulary product, pay the entire cost of the non-formulary product, or pay the difference between the prescription cost of the non-formulary product and a product listed in the formulary in the same therapeutic class as the class to which the non-formulary product belongs. PPLP reserves the right to determine whether a formulary of PBM satisfies this definition of "Closed Formulary".

1.6. "Preferred Formulary List" means a list of products which are given preferred status over other products in the same therapeutic category. Compliance mechanisms are in place to promote compliance with the Preferred Formulary List.

2. <u>Plan Lists and Eligibility</u>

2.1. Upon execution of this Agreement, PBM shall submit a list of Plans to PPLP, which shall be made Exhibit B to this Agreement. The list shall contain the following information for each Plan:

2.1.1. Plan name and address;

2.1.2. Type of Plan (i.e., IPA, PPO, employer group, etc.);

2.1.3. Type of benefit (including whether mail, retail or both) and/or formulary management services provided;

2.1.4. Number of eligible lives per Plan and overall total eligible lives for PBM;

2.1.5. Start date of eligibility;

2.1.6. Termination date of eligibility of Plan (if applicable);

2.1.7. Claims processor for each type of benefit offered;

2

7003642544
PDD1701198994
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

  2.1.8. PBM and/or claims processor for each type of benefit managed or processed outside of PBM if PBM contracts out formulary management for one or more of the benefits offered;

  2.1.9. Description of formulary used -- open vs. closed, PBM's formulary or Plan-specific formulary, whether non-formulary products are subject to a different co-pay than formulary products or not covered at all, etc.; and

  2.1.10. Edits/messages displayed for Products and for competitive products during claims adjudication.

2.2. Each calendar quarter, PBM shall submit to PPLP an updated Plan list and the quarterly report as described in Section 4.5 below. PBM may submit the Plan list in hard copy written format or on a diskette in ASCII or Excel format.

2.3. Notwithstanding Section 2.2, PPLP reserves the right to approve any new Plans to be added to this Agreement. PBM shall give PPLP thirty days prior written notice of any Plan it wishes to add to this Agreement, including all the information listed in Section 2.1 above and confirmation that PBM is contractually authorized by each new Plan to intervene and collect rebates on behalf of the new Plan in exchange for exclusive formulary management services. Eligibility of the new Plan will be subject to PPLP's written approval, which approval shall not be unreasonably withheld. The eligibility date of the new Plan, if approved, will be the eligibility date listed by the PBM on the notice.

3. <u>Provision of Formularies to PPLP</u>

3.1. Upon execution of this Agreement, PBM will provide PPLP a copy of its Preferred Formulary List, its current formulary or formularies, and any Plan-specific formularies. PBM will also provide a copy of the Preferred Formulary List, formulary, or formulary updates to PPLP at any time changes or revisions to any formulary or the Preferred Formulary List are made that pertain to Products or to the therapeutic categories in which Products are included.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

7003642545
PDD1701198995

4. <u>Reimbursement</u>
   4.1. PPLP will pay rebates to PBM for Products dispensed to Members by Pharmacies in accordance with the terms and conditions set forth below.
   4.2. PBM acknowledges that PPLP's payment of rebates is intended to make the prices of Products competitive with those of other pharmaceutical manufacturers or suppliers. PBM represents that it has solicited and received from such other pharmaceutical manufacturers or suppliers similar offers for rebates on their products.
   4.3. PBM further represents that it shall request rebates from PPLP solely for Products dispensed to Members where all the terms and conditions of this Agreement have been met. PBM shall request, and PPLP shall pay, rebates only for Products which are on an applicable PBM national formulary, the Plan-specific formulary, or the Preferred Formulary list, if applicable. In the event PBM or its Plans have multiple formularies, PBM shall request, and PPLP shall pay, rebates only for Products dispensed to Members covered by a formulary which contains the Product dispensed. In addition, no rebate shall be payable by PPLP or billed by PBM, for any products dispensed to any member for which PBM, Plan, Member, Pharmacy or any other entity received or seeks a discount/rebate from PPLP under a separate contractual agreement.
   4.4. Products that are added to PBM's national or a Plan-specific formulary or formularies during the term of the Agreement will be eligible for rebate for prescriptions dispensed to Members covered by such formulary or formularies on the date that PBM's P&T committee, or similar authority, approves the Products to be added to the formulary or formularies.
   4.5. PBM shall provide PPLP, within sixty (60) days of the conclusion of each calendar quarter, separate quarterly reports for rebates requested under Exhibit A-1 and Exhibit A-2 as defined in section 4.8 which shall include:
      4.5.1. The brand name, description and NDC number for each Product dispensed;
      4.5.2. Name, address and NABP number of Pharmacy which dispensed the Product;

4

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

7003642546
PDD1701198996

- 4.5.3. Date dispensed;
- 4.5.4. Prescription number;
- 4.5.5. Pharmacy cost or AWP of product dispensed;
- 4.5.6. The quantity per claim (i.e. Total number of tablets, milliliters or ounces dispensed);
- 4.5.7. Total quantity summarized by Product strength;
- 4.5.8. Total amount to be rebated summarized by Product strength.
- 4.5.9. Total amount to be rebated and total quantity of units summarized by Plan and by NDC number.
- 4.5.10. A listing of any Plans or Products excluded from the rebate submission due to the provisions of Section 1 and Section 4.2, and the reason for the exclusion (i.e., Product 'A' is not on formulary at Plan 'B', plan 'C' is not eligible due to it being a consumer card plan, etc.)

In addition to the summaries requested in 4.5.8 and 4.5.9 for the separate quarterly reports for each Exhibit, PBM shall also provide overall total amounts and quantities to be rebated summarized by NDC number. To protect patient confidentiality, PBM shall not disclose to PPLP the names of Members.

4.6. PBM may submit the quarterly reports described in Section 4.5 above in hard copy, written format or in electronic format in an ASCII file on either 1) diskettes; 2) CD-ROM; 3) 4 millimeter dat tapes; or 4) 8 millimeter dat tapes. Data submitted in electronic format should be accompanied by a written hard copy summary of items 4.5.8, 4.5.9, 4.5.10, and 4.5.11 above and by a hard copy of the file layout.

4.7. PPLP shall pay rebates to PBM quarterly for Products dispensed to Members as follows:
- 4.7.1. Within forty-five (45) days of PPLP's receipt of PBM's quarterly reports where the total rebate due is less than $100,000; and
- 4.7.2. Within sixty (60) days of PPLP's receipt of PBM's quarterly reports where the total rebate due is $100,000 or more.

5

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

7003642547
PDD1701198997

The amount of rebates due shall be equal to the quantity of Products dispensed times the rebate amount for each such Product. PPLP, however, has no obligation to pay any rebate to PBM on sales of Products set forth in a quarterly report where such report fails to comply with Section 4.5 above, including the requirement that it be provided to PPLP within sixty (60) days of the conclusion of the applicable calendar quarter.

4.8. Each Product, its current AWP and its rebate amount is set forth in Exhibit A-1, Exhibit A-2, and Exhibit A-3. Exhibit A-1 contains the rebate amounts for Products dispensed to Members of Plans with open formularies. Exhibit A-2 contains the rebate amounts for Products dispensed to Members of Plans with Closed Formularies. Exhibit A-3 contains the rebate amounts for Products on the Preferred Formulary List.

4.9. If a Product's current AWP as set forth in Exhibit A-1, A-2, or A-3 should increase during the term of this Agreement, the rebate amount shall be increased proportionately effective the first of the month of the first calendar quarter to follow the increase. For example, if the AWP of a Product increases by $0.01 per unit, and if the current rebate amount is ten percent (10%) of the AWP, the rebate amount shall increase by ten percent of $0.01 per unit, or $0.001 per unit.

4.10. In the event a question arises at any time as to a certain Plan's eligibility for a rebate under this Agreement, PPLP, upon notice to PBM, will deduct the rebate amount in question (whether paid in a prior period or due per the current quarterly submission) from the next payment to PBM and hold that amount until the matter is resolved by the parties. PPLP and PBM will each seek in good faith to amicably resolve that question. In the event the parties determine that the amount in question is due, PPLP shall pay such amount either within thirty (30) days or as part of the next payment to PBM, whichever PBM requests.

7003642548
PDD1701198998
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

5. **Records and Audits**

   5.1. PBM shall maintain, and shall obligate Pharmacies to maintain, complete and accurate records relating to the prescribing, dispensing and sale of Products to Members.

   5.2. PBM shall also maintain rebate grand total reports, rebate summary reports, rebate Pharmacy detail reports, detail prescriptions claims data (with Member identifiers masked), enrollment data, Plan contracts authorizing formulary management services, formulary information, records of intervention programs and the claims adjudication process to the extent reasonably necessary to verify that both (i) Pharmacies dispense Products to Members, and (ii) the amounts of rebates were determined, in accordance with the terms and conditions of this Agreement.

   5.3. Upon written request from PPLP, PBM shall make the records, reports, data and documents referred to in Sections 5.1 and 5.2 above available for inspection through PBM or Pharmacies (as appropriate) by PPLP or its auditors during regular business hours and at a mutually agreeable date and time. PBM shall not disclose the names and identities of the Members. PPLP and its auditors will have the right, at its sole cost and expense, to examine such records, reports, data and documents. The parties agree that any such examination shall be subject to the requirements of any applicable state and federal laws regarding the confidentiality of medical and prescription records. PPLP may make such examinations no more than once per year.

   5.4. In the event it shall be determined as a result of PPLP's examinations, or otherwise, that any rebate that PPLP paid was not required, PBM shall refund to PPLP such overpayment within thirty (30) days of receipt of notice by PPLP or, at PPLP's option, such overpayment shall be credited against rebates subsequently due PBM.

7

7003642549
PDD1701198999

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

6. <u>Quarterly Review Meetings</u>

    6.1. PBM shall, upon PPLP's request, meet every quarter with PPLP's Account Executive to review, among other things: 1)formulary listings; 2) communications since the last meeting; 3) new Plans; 4) non-compliant Plans; 5) market share of Products; 5) utilization trends for Products; 7) contract exclusions; 8) Product information; 9) new PPLP programs, products, or literature; and 10) any other issues or concerns of PPLP or PBM as appropriate. At this quarterly review, strategies or programs to increase compliance of non-compliant Plans may be developed. Either PPLP or PBM may request additional meetings as desired and mutually agreed upon.

7. <u>Term and Termination</u>

    7.1. This Agreement shall be from January 1, 1997 through December 31, 1998, unless terminated earlier pursuant to Section 7.2 below.

    7.2. This Agreement may be terminated by either party:

        7.2.1. With cause, effective after ten (10) days written notice to the other party, if:

            7.2.1.1. the other party has committed a breach of a material term of this Agreement and such breach has not been cured within sixty(60) days of receipt of a written notice of such breach; or

            7.2.1.2. the other party becomes insolvent, is dissolved or liquidated, makes a general assignment for the benefit of its creditors, files, or has filed against it a petition in bankruptcy, or has receiver appointed for a substantial part of its assets;

        7.2.2. Without cause, upon thirty (30) days prior written notice; or

8. <u>Confidentiality</u>

    8.1. PBM agrees that all information concerning the pricing or amount of rebate of Products and the terms and conditions of this Agreement shall, for a period of two (2) years from the date of disclosure or the end of the term of this Agreement, whichever is later, be kept by PBM in confidence and not revealed to anyone except PBM's employees (or Plan administrators), provided PBM guarantees their

7003642550
PDD1701199000
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

compliance with the confidentiality and use restrictions set forth in this section, and then only to the extent such employees or Plan administrators need to know such information and are bound to the same obligations of confidentiality and non-use. PBM agrees that PBM will use such information solely for the purpose of evaluating whether to utilize the Products and complying with the terms hereof. PBM further agrees not to directly or indirectly make use of or aid any third party to make use of such information without PPLP's express written consent. Upon PPLP's written request, PBM will promptly return to PPLP all such information, including any copies thereof. The above restrictions on disclosure and use shall not apply with respect to information that is now generally known to the public in writing or later becomes so through no fault of PBM.

8.2. PPLP agrees that all information obtained by it as a result of the audits described in Section 5.3 above shall, for a period of two years from the date of the audit or the end of the term of this Agreement, whichever is later, shall be kept by PPLP in confidence and not revealed to anyone except PPLP's employees or auditors, provided PPLP guarantees their compliance with the confidentiality and use restrictions set forth in this section, and then only to the extent that such employees or auditors need to know such information and are bound to the same obligations of confidentiality and non-use. PPLP agrees that PPLP will use such information solely for the purpose of determining compliance with the terms of this Agreement.

9. Miscellaneous

9.1. Any notice required or permitted to be given by either party to the other shall be given by Federal Express or sent by first class mail, postage prepaid, addressed to the other party at its last designated address. Notice shall be deemed given upon sending or mailing.

9.2. Noncompliance with the above obligations due to force majeure such as an act of God, laws or regulations of any government, war, civil commotion, destruction of production facilities and materials, fire, earthquake, or storm,

9

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

labor disturbances, shortages of materials, failure of public utilities or common carriers, and any other causes beyond the reasonable control of the parties, shall not constitute a breach of this Agreement.

9.3. Neither party shall have the right to assign this Agreement to a third party without the prior written consent of the other party which consent shall not be unreasonably withheld. Notwithstanding the above, PPLP may, upon ten (10) days written notice to PBM, assign this Agreement to an associated entity. Any permitted assignee shall assume all obligations of its assignor under this Agreement. No assignment shall relieve any party of responsibility for the performance of any obligations which have already accrued. This Agreement shall inure to the benefit of and be binding upon each party, its respective successors and permitted assigns.

9.4. If any provision of this Agreement is declared or found to be illegal or unenforceable, both parties shall be relieved of all obligations arising under such provision, but if capable of performance, the remainder of this Agreement shall not be affected by such declaration or finding.

9.5. This Agreement does not become effective until executed by both parties. Any subsequent amendment or modification of this Agreement shall be in writing and signed by the parties or signed by the party against whom enforcement of such amendment or modification is sought.

9.6. If this Agreement is not signed and returned within 60 days from date of our proposal, it becomes null and void.

9.7. The signatories represent and warrant that they have the right and are authorized to enter into this Agreement on behalf of their respective party.

Purdue Pharma L.P.

Ernest A. Marino
Executive Director

_____
Date

Express Scripts

Donald L. Hagen, R. Ph., M.B.A.
Director, Pharmaceutical Trade Relations

May 2, 1997
Date

10

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

7003642552
PDD1701199002

**Exhibit A-1**

## Purdue Pharma L.P. Agreement
### Rebate Agreement with Express Scripts
### Pricing for Plans with Open Formularies only

| NDC (Last Six Digits Only) | Brand Name | Current Published Average Wholesale Price* (12/2/96) | AWP Unit package basis | Units per package | Current Published Average Wholesale Price Per Unit | Rebate Amount Per Unit |
|---|---|---|---|---|---|---|
| 59011- | | | | | | |
| 100-XX | OxyContin® 10 mg Tablets | $110.38 | 100's (tablets) | 100 | $1.10 | $0.09 |
| 103-XX | OxyContin 20 mg Tablets | $211.25 | 100's (tablets) | 100 | $2.11 | $0.19 |
| 105-XX | OxyContin 40 mg Tablets | $374.83 | 100's (tablets) | 100 | $3.75 | $0.38 |
| 107-XX | OxyContin 80 mg Tablets | $691.44 | 100's (tablets) | 100 | $6.91 | $0.77 |
| 201-XX | OxyIR® 5 mg Capsules | $26.99 | 100s (capsules) | 100 | $0.27 | $0.02 |

\* Suggested AWP pricing schedule dated December 2, 1996
  Package size of 100's or smaller for tablets

\*\* The middle four digits in the NDC number represent the
  product, while the last two digits (represented above as "XX")
  in the NDC number denote package size. All sizes of the above
  Purdue Pharma L.P. products are covered in this Agreement.

Any agreements made with The Purdue Frederick Company regarding discounts offered at the time of the OxyContin launch will remain in effect per the original agreement unless modified specifically in writing.

7003642553
PDD1701199003

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Exhibit A-2**

## Purdue Pharma L.P. Agreement
### Rebate Agreement with Express Scripts
### Pricing for Plans with Closed Formularies only

| NDC (Last Six Digits Only) | Brand Name | Current Published Average Wholesale Price* (12/2/96) | AWP Unit package basis | Units per package | Current Published Average Wholesale Price Per Unit | Rebate Amount Per Unit |
|---|---|---|---|---|---|---|
| 59011- | | | | | | |
| 100-XX | OxyContin® 10 mg Tablets | $110.38 | 100's (tablets) | 100 | $1.10 | $0.19 |
| 103-XX | OxyContin 20 mg Tablets | $211.25 | 100's (tablets) | 100 | $2.11 | $0.38 |
| 105-XX | OxyContin 40 mg Tablets | $374.83 | 100's (tablets) | 100 | $3.75 | $0.72 |
| 107-XX | OxyContin 80 mg Tablets | $691.44 | 100's (tablets) | 100 | $6.91 | $1.40 |
| 201-XX | OxyIR® 5 mg Capsules | $26.99 | 100s (capsules) | 100 | $0.27 | $0.04 |

\* Suggested AWP pricing schedule dated December 2, 1996
  Package size of 100's or smaller for tablets
\*\* The middle four digits in the NDC number represent the
  product, while the last two digits (represented above as "XX")
  in the NDC number denote package size. All sizes of the above
  Purdue Pharma L.P. products are covered in this Agreement.

Any agreements made with The Purdue Frederick Company regarding discounts offered at the time of the OxyContin launch will remain in effect per the original agreement unless modified specifically in writing.

7003642554
PDD1701199004
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Exhibit A-3

## Purdue Pharma L.P. Agreement
### Rebate Agreement with Express Scripts
### Pricing for Plans using Preferred Formulary List for those Products on the Preferred Formulary List

| NDC (Last Six Digits Only) | Brand Name | Current Published Average Wholesale Price* (12/2/96) | AWP Unit package basis | Units per package | Current Published Average Wholesale Price Per Unit | Rebate Amount Per Unit |
|---|---|---|---|---|---|---|
| 59011- | | | | | | |
| 100-XX | OxyContin® 10 mg Tablets | $110.38 | 100's (tablets) | 100 | $1.10 | $0.19 |
| 103-XX | OxyContin 20 mg Tablets | $211.25 | 100's (tablets) | 100 | $2.11 | $0.38 |
| 105-XX | OxyContin 40 mg Tablets | $374.83 | 100's (tablets) | 100 | $3.75 | $0.72 |
| 107-XX | OxyContin 80 mg Tablets | $691.44 | 100's (tablets) | 100 | $6.91 | $1.40 |

\* Suggested AWP pricing schedule dated December 2, 1996
  Package size of 100's or smaller for tablets
\*\* The middle four digits in the NDC number represent the
  product, while the last two digits (represented above as "XX")
  in the NDC number denote package size. All sizes of the above
  Purdue Pharma L.P. products are covered in this Agreement.

Any agreements made with The Purdue Frederick Company regarding discounts offered at the time of the OxyContin launch will remain in effect per the original agreement unless modified specifically in writing.

13

7003642555
PDD1701199005
CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**Exhibit B**

# Plan List

# To be provided by Express Scripts upon execution of this Agreement

14

7003642556
PDD1701199006

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER