# EXHIBIT A

| | |
|---|---|
| **From:** | owner-pbm@listserv.motleyrice.com on behalf of Jeff Gaddy <jgaddy@levinlaw.com> |
| **Sent:** | Monday, March 11, 2024 4:08 PM |
| **To:** | david@specialmaster.law |
| **Cc:** | pbm@listserv.motleyrice.com; ESI-Opioids; Optum Opioid Team |
| **Subject:** | MDL 2804 - Dispute re Scope of PBM Defendants' Data to be Produced |
| **Attachments:** | Attachments to Mar 11, 2024 Letter to Cohen.zip |

**CAUTION:** This email message is **EXTERNAL.**

Special Master Cohen,

Plaintiffs write to seek your assistance in resolving ripe disputes between Plaintiffs and the PBM Defendants regarding the scope of data covered by the CMO required data disclosures (i.e. claims, rebate, administrative fee, and mail order dispensing data) that must be produced by the PBMs.  The disputes relate to the temporal and geographic scope of this data to be produced, OptumRx mail order data fields, and the scope of opioid drugs to be produced. (Please note that the Plaintiffs have also served additional data requests covering additional data sets.  Disputes regarding these additional data sets are not yet ripe.  It is only the CMO data on which Plaintiffs seek a ruling at this time.)

Plaintiffs Position:
- <u>Temporal Scope:</u>  Consistent with the historical rulings of this MDL, including DR-2, PBM Defendants must produce claims, rebate, administrative fee, and mail order dispensing data, to the extent it exists, back to 2006.
- <u>Geographic Scope:</u>  Consistent with the historical rulings of this MDL, including DR-2 and Dkt. 3371, PBM Defendants must produce claims, rebate, administrative fee, and mail order dispensing data on a statewide basis for bellwether states.
- <u>OptumRx Mail Order Pharmacy Dispensing Data Fields:</u>  OptumRx must provide information regarding its mail order pharmacy dispensing data fields. (Note: ESI has already provided information regarding its Mail Order data fields.)
- <u>Scope of Drugs:</u>  The portion of Dkt. 3106 that relates to the scope of opioid drugs for which data must be produced should be slightly modified for the PBM Defendants to address circumstances unique to the PBM Defendants, namely their internal documents acknowledging certain additional opioids should trigger red flags in certain circumstances.  (This dispute will be ripe once Plaintiffs reply to the PBM Defendant's latest letter, which Plaintiffs intend to do by March 18).

<u>Temporal Scope</u>
In DR-2, the Manufacturer and Distributor Defendants were ordered to produce transactional data and Suspicious Order Reports back to January 1, 1996.  In Dkt. 3055, Judge Polster ordered the Pharmacy Defendants to produce transactional dispensing data from 2006 forward.  No order has ever been entered for a shorter time period.  The data at issue here is either the same as the data covered by prior orders (such as the mail order dispensing data), or the substantial equivalent (claims, rebate, and administrative fee data).  Neither ESI or OptumRx have articulated any legitimate reason that the prior orders should not apply to them.

ESI has agreed to produce claims data back to 2008, but refuses to produce data from 2006-2007.  ESI has claimed that there is a burden associated with producing the 2006-2007 data, but has offered no evidence to substantiate any such argument.  ESI's latest correspondence on this issue inexplicably spends paragraphs explaining an alleged burden associated with producing pre-2014 data (which they have already agreed to produce), but just a mere sentence on the 2006-2007.  In that one sentence ESI states that the 2006-2007 data is located on back up tapes, and admits they have not even attempted to access the data.

From the meet and confer process with ESI, Plaintiff understands that ESI may not have data back to 2006 for all categories of data that must be produced.  ESI obviously cannot produce data it does not have.  However, ESI should be ordered to comply with the prior orders of this MDL and, to the extent it exists, produce all data back to 2006.

OptumRx has agreed to produce claims and rebate data back to 2010, but OptumRx is in possession of at least rebate data back to 2008.  Like ESI, OptumRx should be ordered to produce all data, to the extent it exists, back to 2006.

Relevant Correspondence:
- 2024.01.16 OptumRx Letter to Plaintiffs Counsel Regarding Data Fields
- 2024.02.09 OptumRx Third Letter to Plaintiffs' Counsel Regarding Data
- 2024.03.06 OptumRx Fifth Letter to Plaintiffs
- 2024.02.14 Letter to Plaintiffs re Data Fields
- 02-26-24 – Letter from O. Vieira to J. Gaddy re Data Fields
- 2024-03-04 – Letter from O. Vieira to J. Gaddy re Data Fields
- 2024-03-07 – Letter to J. Gaddy re Burden
- 2024-01-29 JRG Letter to Optum RE Data Fields Production
- 2024-02-15 JRG Letter to Optum RE MC Follow Up and Addtl Data Fields Production
- 2024-03-10 JRG Letter to Optum RE Data Fields
- 2024-02-20 Gaddy Letter to ESI RE Meet and Confer Follow Up on Data Fields
- 2024-03-04 Gaddy Letter to ESI RE Data Fields Production
- 2024-03-10 Gaddy Letter to ESI RE Data Fields

Geographic Scope
The data at issue here is Category 2 Discovery.  In DR-2, Category 2 Discovery was ordered to be produced on a regional basis to include the bellwether state and surrounding states.  In DR-3, this ruling was narrowed to cover just the litigating counties.  In CT1B, after having the benefit of several years of litigation, the Court again addressed the appropriate geographic scope of data productions.  In the context of the Pharmacy Defendants, production of dispensing data was originally ordered to occur on a national basis.  The Pharmacy Defendants petitioned the Sixth Circuit for a writ of mandamus, and the Sixth Circuit granted a limited stay directing the pharmacies to produce only statewide dispensing data.  (*See* Dkt. 3341).  When the PEC subsequently reiterated its request for nationwide dispensing data in CT3, Judge Polster denied the motion and reiterated the Sixth Circuit's conclusion that statewide data was appropriate.  (*Id*.)

In CT3, the Pharmacy Defendants again raised the issue of geographic scope of Category Two Discovery.  Special Master Cohen referenced and re-stated Judge Polster's ruling and held that dispensing data must be produced on a statewide basis. (Dkt. 3371 at 6).  This ruling has been followed repeatedly in all tracks that followed, mandating statewide data productions in Ohio, Georgia, Texas, North Carolina, and New Mexico.  (e.g., Dkt. 3818, 3817, and 3819).

ESI has objected to producing statewide data for New York and Texas, and has agreed to produce statewide data for Missouri only because it contains two bellwethers.  ESI calls its position a "compromise", but in fact it is simply an attempt to avoid the Court's prior orders with the lack of any justification.  ESI's proposal, to only produce data for the bellwether county and contiguous counties is insufficient.  Statewide data is relevant, has been utilized by Plaintiffs, and ESI has offered no reason it should not be bound by the prior orders.

OptumRx agrees to produce mail order dispensing data on a statewide basis, but objects for all other data.  Statewide data is relevant, and OptumRx has likewise shown no reason that it should not be bound by the prior orders.

Relevant Correspondence:
- Gaddy March 1 Email to OptumRx re Geographic Scope
- Gaddy March 1 Email to ESI re Geographic Scope
- 2024-03-04 – Letter from O. Vieira to J. Gaddy re Data Fields

- 2024.03.06 OptumRx Fifth Letter to Plaintiffs
- 2024-03-10 JRG Letter to Optum RE Data Fields
- 2024-03-10 Gaddy Letter to ESI RE Data Fields

OptumRx Mail Order Dispensing Data Fields:
Despite being ordered to identify for Plaintiffs its mail order dispensing data fields, OptumRx has failed to do so.  The best OptumRx has done is identify fields it "believe[s] exist."  OptumRx must immediately provide a complete list of mail order dispensing data fields so that Plaintiffs can identify which ones must be produced.

Relevant Correspondence:
- 2024.02.09 OptumRx Third Letter to Plaintiffs' Counsel Regarding Data
- 2024.03.06 OptumRx Fifth Letter to Plaintiffs
- 2024-03-10 JRG Letter to Optum RE Data Fields

Scope of Drugs:
In DR-2 it was ruled that the scope of drugs on which discovery must be produced was all opioid products that are or ever were classified as Schedule II.  Plaintiffs here seek to slightly expand that order to require the PBM Defendants to also produce discovery related to Tramadol, and to produce data related to Codeine and Buprenorphine in circumstances wherein PBM Defendants own documents identify such prescriptions as red flags.

In the context of CT3, Special Master Cohen entered Dkt. 3106 which governed, among other items, the scope of drugs for which dispensing data was to be produced.  As to the opioids to be produced, the Order referenced certain opioids Walgreens and Walmart agreed to produce in the context of the *distribution* case.  Plaintiffs explain in their February 7, 2024 correspondence, referenced below, why the scope of drugs should be expanded for the PBM Defendants.

Plaintiffs originally were requesting that the PBM Defendants produce data for all of tramadol, codeine, and buprenorphine.  After the meet and confer process, Plaintiffs are willing to narrow their request to the following:  a) all tramadol; b) codeine only in circumstances in which it overlaps (plus or minus 14 days) with soma; and c) buprenorphine only in circumstances in which patients are receiving Suboxone and an opioid pain medication concurrently during a six month time period.  Plaintiffs will provide more detail within its March 18 reply to Mr. Wasserman's letter referenced below.

Relevant Correspondence:
- 2024-02-07 Gaddy Letter to PBM's RE Scope of Drugs
- 2024.02.19 Letter From J. Cooper
- 2024-03-01 JRG Letter to ESI and Optum re Scope of Drugs.2
- 2024.03.04 Letter from M. Wasserman
- **Plaintiffs intend to reply to Wasserman's March 4 Letter, and will do so by March 18.**

Orders and correspondence referenced herein are included within the attached zip file.

Thank you,
Jeff

**Jeff Gaddy**
*Shareholder*
Levin, Papantonio, Rafferty, Proctor,
Buchanan, O'Brien, Barr, & Mougey P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
850.435.7054 (office)
850.436.6054 (fax)
jgaddy@levinlaw.com