**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| *Track Eight: Cobb County, Georgia*<br>*Case No. 1:18-op-45817-DAP* | |
| COBB COUNTY, | |
| *Plaintiff,* | |
| v. | |
| PURDUE PHARMA, L.P., et al., | |
| *Defendants.* | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO PUBLIX SUPER MARKETS, INC.'S MOTION TO CERTIFY**
**QUESTIONS TO THE GEORGIA SUPREME COURT**

April 18, 2024

## INTRODUCTION

Plaintiff Cobb County, Georgia ("Plaintiff") submits this Memorandum in Opposition to Defendant Publix Super Markets, Inc.'s ("Publix's") Motion to Certify Questions to the Georgia Supreme Court. Dkt. 5388 (1:17-md-2804). Publix asks the Court to certify four multi-part questions regarding Georgia's public nuisance law. The request should be denied. The issues raised by Publix are not novel, and existing Georgia law provides ample guidance for this Court to continue to make clear and principled decisions regarding Plaintiff's public nuisance claim. More significantly, Publix's request ignores the "final judgment" rule and the federal courts' clear policy disfavoring piecemeal appeals. Publix could not obtain immediate appellate review on an issue of federal law; there is no reason it should be able to circumvent the "final judgment" rule simply because some of the issues decided by this Court are matters of state law. On the contrary, federal courts sitting in diversity routinely decide cases based on state law. Review of those decisions, whether in the federal Courts of Appeals or, in unusual circumstances not present here, by certification to a state's highest court, occurs at the end of the case. Publix provides no basis for this Court to deviate from this rule.

The opioid crisis affecting communities all over the country is unprecedented, and this litigation has endeavored to address that crisis with existing legal tools. This Court and numerous other federal and state courts have navigated those waters just fine. There is thus no basis for certification to the Georgia Supreme Court because the questions of Georgia law Publix identifies are not unsettled in the manner Publix suggests. Publix's attempt to relitigate arguments that this Court previously rejected and to seek a ruling in the Georgia courts where none is needed (and to create a back-door interlocutory appeal) is a distraction and delay tactic that should be rejected.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

A description of Publix's conduct giving rise to Plaintiff's claim has been detailed in prior briefing. *See, e.g.,* Dkt. 3977 (1:17-md-2804).  Plaintiff alleges, *inter alia*, that Publix violated its obligations under the federal Controlled Substances Act and its Georgia analogue to "maintain effective controls against diversion" both as a distributor and dispenser of opioids, and that conduct caused or contributed to the creation of a public nuisance in Cobb County.

Publix moved to dismiss Plaintiff's claims arguing, in part, that Georgia law does not recognize a public nuisance claim for violation of a regulatory scheme where the Georgia legislature has not specifically articulated such a basis Dkt. 3906. Publix contended "if there are allegations that a pharmacy's unlawful distribution and dispensing operations are harming the public at large, the government's remedy is an action through the Board of Pharmacy or as otherwise authorized in the applicable regulatory scheme, not a public nuisance suit by a county government." Dkt. 3906-1 at 3, 4.

The Court denied that motion. Dkt. 4071. The Court explained that Georgia law is clear:  common law public nuisance claims are not displaced by regulatory statutes.[1] Dkt. 4071 at 11. "[T]he fact that misdemeanor penalties may be imposed for violations of the PPA does not shield Publix from equitable nuisance liability…." *Id*. Further, "the County's public nuisance pleading goes well beyond simply claiming an infraction of [the PPA], and alleges facts sufficient to state a cognizable claim pursuant to the Georgia nuisance statute." *Id*.

---

[1] As discussed in more detail below, while public nuisance is a statutory claim under Georgia law, the statute merely codified the common law, and Georgia courts routinely cite and refer to the RESTATEMENT (SECOND) OF TORTS § 821B in evaluating public nuisance claims.

2

Attempting to take a second bite at the proverbial apple, Publix asked the Court at that time to reconsider its denial of the motion to dismiss, or alternatively certify the following question to the Georgia Supreme Court: "Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 et seq., and for which the legislature has already enumerated civil and criminal remedies?"  Dkt. 4208 at 10, 13. The Court denied that motion as well.  Dkt. 56 (1:18-op-45817).  Now, Publix attempts to take a *third* bite at the proverbial apple, yet again requesting that the Court certify questions to the Georgia Supreme Court. Dkt. 5388. Just as with Publix's earlier attempt to relitigate what the Court already decided, this attempt should also be rejected.[2]

## LEGAL STANDARD

Georgia law provides that a federal district court confronted with issues of Georgia law "which are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of [Georgia] … *may* certify the questions of the laws of [Georgia] to the Supreme Court of [Georgia] for answers to the questions of state law…." Ga. Code Ann. § 15-2-9 (emphasis added); *see also* Ga. R. S. Ct. 46. The Georgia Supreme Court, in its discretion, may decline to answer the questions.  Ga. R. S. Ct. 46.

"The decision whether or not to utilize a certification procedure lies within the sound discretion of the district court." *Pennington v. State Farm Mut. Auto. Ins. Co*, 553 F.3d 447, 449–50 (6th Cir. 2009)(quoting *Transam. Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370,

---

[2] In a blatant attempt to forum shop, Publix also filed a state court case in Georgia challenging the validity of Cobb County's suit – a claim it certainly could have asserted in the MDL. Cobb County filed a motion to dismiss that case, which is fully briefed and awaiting a decision. Discovery is stayed in that case while Cobb County's motion to dismiss is pending.

372 (6th Cir. 1995)).[3] Certification is only appropriate when the law is unsettled and the question is new. *Id*. at 450. Moreover, "federal courts generally 'will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks. When we see a reasonably clear and principled course, we will seek to follow it ourselves.'" *Id*. (quoting *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir.2007)); *see also Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 933 (6th Cir. 2020) (analyzing similar certification statute from Tennessee) ("But the mere fact that ceding our discretion would be easier, and perhaps even more expedient, is not an adequate reason for us to shirk from our judicial obligations.")(cleaned up). And even when a case presents a legal issue of first impression, certification is unnecessary if relevant case law provides "sufficient guidance to allow [the court] to make a clear and principled decision." *Id*.

Also relevant here, 28 U.S.C. § 1291 limits the jurisdiction of the federal Courts of Appeals to appeals from "final decisions." Although certification to a state court does not involve the jurisdiction of the federal Courts of Appeals, when invoked after a decision from the trial court, but before final judgment, it implicates the important federal policy against piecemeal appeals that underlies that the "final judgment" rule. *See Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 64 F.4th 731, 734 (6th Cir. 2023)(finality required by § 1291 "guards against piecemeal appeals that permit litigants to second-

---

[3] Publix cites to Eleventh Circuit law in its explanation of the applicable legal standard. Dkt. 5388 at 2-3. However, this Court primarily looks to Sixth Circuit law when determining whether a question should be certified to a state court. *See, e.g., Town of Smyrna, Tenn. v. Mun. Gas Auth. of Georgia,* 723 F.3d 640, 649 (6th Cir. 2013)(citing Sixth Circuit law when determining whether to certify a question to the Georgia Supreme Court).

guess the district court at each turn, harming the district court's ability to control the litigation in front of it and consuming finite appellate court resources along the way.").[4]

## ARGUMENT

### I.  BECAUSE GEORGIA LAW IS SUFFICIENTLY CLEAR, PUBLIX FAILS TO PRESENT A QUESTION WORTHY OF CERTIFICATION

Publix has not presented a question worthy of certification to the Georgia Supreme Court. When a federal court sees "a reasonably clear and principled course" to decide the question, the federal court "will seek to follow it [itself]" and not certify the question, particularly when, as here, "well-established principles exist to govern a decision." *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d at 607-08.

The fact that Georgia has never squarely addressed the specific issue of a public nuisance claim in the context of the opioid epidemic is not enough to warrant certification. Nor does the fact it may be a matter of first impression necessarily mean that is an "expansion" of state law. Factors such as comity, cooperative federalism, and judicial economy may be considered, but the Court must exercise its "discretion wisely after considering the unique circumstances and considerations that may be present in a given case." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 919 F.3d 992, 993 (6th Cir. 2019) (Clay, J., concurring). Even when a question may be eligible for certification, certification is still

---

[4] Publix could, without violating the "final judgment" rule, have sought certification to the Georgia Supreme Court *before* this Court ruled on its motion to dismiss.  This procedure has been approved by the Sixth Circuit, which has expressed "forum shopping" concerns about the use of certification *after* a ruling from the district court. *See In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 607 (6th Cir. 2017)(noting that if a litigant waits to seek certification until after the district court rules, "the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision.'" Having chosen to take its chances in the first instance in this Court, Publix is now both too late and too early to seek review of that decision In the Georgia courts.

not an absolute. *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 932 (6th Cir. 2020).

As Judge Clay noted in his concurring opinion in *Lindenberg*:

> Federal courts have jurisdiction to decide matters of state law in diversity cases, a power that emanates from Article III and which Congress has codified in 28 U.S.C. § 1332…. Federal courts have a virtually unflagging obligation … to exercise the jurisdiction given them, and have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. Thus, when diversity jurisdiction is properly invoked, federal courts have a duty … to decide questions of state law whenever necessary to the rendition of a judgment. And it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State….
>
> When this Court sits in diversity, we apply state law, and therefore act as only another court of the State. When required to do so, we predict state law, but we do not devise it. In many instances, federal courts are more than capable of correctly deciding state law issues without certifying them to the state's highest court. In those cases, certification would serve little purpose other than to needlessly delay resolution of the ultimate issues in the case…. [W]e should not create a mechanical rule that would require us to certify issues in circumstances where our sound discretion and judicial experience would not direct us to seek certification.

*Lindenberg*, 919 at 993–94 (Clay, J., concurring)(cleaned up).

The Court did exactly what *Lindenberg* describes when it decided Publix's prior motions and found that "a long line of Georgia Supreme Court cases recognizes a county attorney's authority to: (i) bring a public nuisance action; and (ii) maintain such an action where 'the plaintiff has alleged a state of facts which amounts in law to a public nuisance.' Dkt. 56 at 3 (1:18-op-45817) (quoting *Boykin v. Ball Inv. Co.*, 12 S.E.2d 574, 578 (Ga. 1940)). In fact, the Court's original order denying Publix's motion to dismiss included a detailed analysis of Georgia public nuisance law using decisions from primarily from Georgia's Supreme Court.  Dkt. 4071 at 7-13 (1:17-md-2804). Those decisions and the others cited by the Court provide "a reasonably clear and principled course" that will allow the Court to fulfill its Article III duties.

## II.  VARIATIONS AMONG OTHER JURISDICTIONS HAVE NO BEARING ON WHETHER CERTIFICATION IS APPROPRIATE IN THIS CASE

Disregarding the absence of a need for clarification of Georgia law, Publix contends that certification is appropriate because courts across the country "disagree on the viability of state public nuisance law claims predicated on prescription opioid distribution/sales." Dkt. 5388 at 8. This is wrong for two reasons. First, it is a gross mischaracterization of the state of the law. While there may be some variability in the way various states apply their own statutory and common law with respect to public nuisance claims, the overwhelming majority of courts across the country have recognized that public nuisance is an appropriate and viable cause of action to address the opioid epidemic.[5]

But even if Publix's characterization of the "patterns emerging in prescription opioid-related litigation" (Dkt. 5388 at vii) were true, differences in public nuisance laws

---

[5] *See, e.g., Alabama v. Purdue Pharma L.P.,* 03-CV-2019-901174.00, slip op. at 11-12 (Ala. Cir. Ct. Nov. 13, 2019); *Alaska v. McKesson Corp.,* No. 3AN-18-10023CI, slip op. at 7 (Alaska Super. Ct. Aug. 28, 2019); *City of Surprise v. Allergan PLC,* No. CV2019-003439, slip op. at 35-36 (Ariz. Super. Ct. Oct. 28, 2020); *Arkansas v. Purdue Pharma L.P.,* 2019 WL 1590064 (Ark. Cir. Ct. Apr. 5, 2019); *City and Cnty. of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610, 669 (N.D. Cal. Sept. 30, 2020); *In re Nat'l Prescr. Opiate Litig.* (West Boca Med. Ctr.), 452 F. Supp. 3d 745 (N.D. Ohio 2020); *Kentucky ex rel. Beshear v. Walgreens Boots Alliance, Inc.,* No. 18-CI-00846, slip op. (Ky. Cir. Ct. July 18, 2019); *City of Boston v. Purdue Pharma, LP,* 2020 WL 416406 (Mass. Super. Ct. Jan. 3, 2020); *Michigan ex rel. Kessel v. Cardinal Health, Inc.,* No. 19016896- NZ, slip op., at 2 (Mich. Cir. Ct. Mar. 24, 2021), *reversing on reconsid.* slip. op. (Mich. Cir. Ct. Nov. 17, 2020); *Mississippi v. Cardinal Health, Inc.,* No. 25Cll:18-cv00692, slip op. (Miss. Cir. Ct. Apr. 5, 2021); *Missouri ex rel. Schmitt v. Purdue Pharma, L.P.,* No. 1722-CC10626, slip op., *7-8 (Mo. Cir. Ct. Apr. 6, 2020); *Nevada v. McKesson Corp.,* No. A-19-796755-B, slip order (Nev. Dist. Ct. Jan. 3, 2020); *New Hampshire v. Purdue Pharma Inc.,* 2018 WL 4566129 (N.H. Super. Ct. Sept. 18, 2018); *New Mexico ex rel. Balderas v. Purdue Pharma L.P.,* No. D-101-CV-2017- 02541 slip op. (N.M. Dist. Ct. Dec. 17, 2020); slip op. (Dist. Ct. Sept. 10, 2019); *In re Opioid Litig.,* slip op. 2018 WL 3115102, *28 (N.Y. Sup. Ct. June 18, 2018); *County of Delaware v. Purdue Pharma, L.P.,* CV- 2017008095, slip ops. (Pa. Ct. C.P., March 13, 2020, Dec. 4, 2019, and Oct. 25, 2019); *Rhode Island ex rel. Neronha v. Purdue Pharma L.P.,* 2019 WL 3991963, *9 (R.I. Super. Ct. Aug. 19, 2019); *South Carolina v. Purdue Pharma L.P.,* No. 2017-CP40-04872, slip order (S.C. Ct. C.P. Apr. 12, 2018); *Tennessee ex rel. Slatery v. Purdue Pharma L.P.,* 2019 WL 2331282, *5 (Tenn. Cir. Ct. Feb. 22, 2019); *In re Texas Opioid Litig.* (Cnty. of Dallas), No. 2018- 77098, slip op. (Tex. Dist. Ct. June 9, 2019); *Vermont v. Cardinal Health, Inc.,* No. 279-3-19 Cncv, slip op. (Vt. Super. Ct. May 12, 2020); *Washington v. Purdue Pharma L.P.,* 2018 WL 7892618 (Wash. Super. Ct. May 14, 2018).

7

across jurisdictions have no bearing on whether it is appropriate *in this case* to certify questions to the Georgia Supreme Court. Sixth Circuit precedent simply considers whether: (1) the court is confronted with issues which are determinative of the case and (2) there are no clear controlling Georgia precedents. Here, as discussed above, Georgia law is sufficiently clear that, regardless of the laws of any other jurisdictions, there is no need for certification to the Georgia Supreme Court.

That the Fourth and Sixth Circuits elected to certify questions to the West Virginia and Ohio Supreme Courts, respectively, also has no bearing on whether certification is appropriate here. First, in both Ohio and West Virginia, the law was less clear and the questions more novel than those at issue here. The Sixth Circuit described the issue in the CT3 case as "a novel and unsettled question relating to claims brought by Ohio counties resting at the intersection of Ohio statutory interpretation and Ohio tort law: to what extent did the 2005 and 2007 amendments to [Ohio's product liability statutes] abrogate common law public nuisance claims?" *In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 461–62 (6th Cir.). The Sixth Circuit determined that there was no controlling Ohio precedent and no "'reasonably clear and principled course' to follow in lieu of certification," so it elected to submit a certified question to the Ohio Supreme Court. *Id*. at 462.

The Fourth Circuit's certification to the West Virginia Supreme Court of Appeals involves a direct conflict between the federal district court's holding and various state court rulings on precisely the same issue. Following a bench trial, the federal district court held that "West Virginia's common law of public nuisance did not cover the plaintiffs' claims [arising from the opioid epidemic]." *City of Huntington, W. Virginia v. AmerisourceBergen Drug Corp.*, 96 F.4th 642, 645 (4th Cir. 2024). But as the Fourth Circuit

8

noted, that decision was in conflict with multiple decisions by West Virginia state courts *asserting virtually identical claims also arising from the opioid epidemic.* Moreover, the West Virginia Mass Litigation Panel specifically disagreed with the district court's interpretation of West Virginia law. *Id*. at 649-50. Under those unusual circumstances, the Fourth Circuit determined certification was also appropriate. *Id*. at 644. Here, by contrast, Georgia law provides sufficient guidance for the Court to make clear and principled decisions regarding Plaintiff's public nuisance claim. That certification was proper in Ohio and West Virginia thus in no way demonstrates that it would be appropriate here.

This is especially true because in both of those cases, it was the Court of Appeals that certified to the state court in connection with an appeal from a final judgment. Thus, neither of those certifications undermines the "final judgment" rule or raises concerns about piecemeal appeals.

## III.  PUBLIX'S PROPOSED CERTIFIED QUESTIONS ATTEMPT TO RAISE QUESTIONS THAT THIS COURT AND OTHERS HAVE PREVIOUSLY ADDRESSED WITHOUT COMPLICATION

All of the issues raised in Publix's list of proposed questions have previously been addressed without difficulty by this and other courts. Rather than supporting its arguments for why the questions at issue should be certified, Publix's arguments undermine its request because they demonstrate that this Court, sitting in diversity, is perfectly capable of deciding them.

**Question 1. Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2?  If so, does such a claim require proof that the provider committed malpractice?**

This is essentially a re-worded version of the question Publix asked this Court to certify in its motion for reconsideration.  When Publix moved to dismiss Plaintiff's public nuisance claim, it argued that Georgia law does not recognize a public nuisance claim for

violation of a regulatory scheme where the Georgia legislature has not specifically said so. Dkt. 3906. The Court's order denying the motion to dismiss correctly observed that the Georgia statute defining public nuisance was not intended to alter or displace the common law claim. Dkt. 4071 at 8 (citing *State ex rel Boykin v. Ball Inv. Co.*, 12 S.E.2d 574, 578 (Ga. 1940)). And, Publix again attempts to limit Plaintiff's public nuisance claim to one based on statutory standards when the conduct at issue is far broader in scope. This question is not determinative of the case and, therefore, not appropriate for certification.

Further, Publix's almost two-page discussion of Question 1 lists numerous cases it contends are controlling precedent that supports its position. Dkt. 5388 at 5-6. Plaintiff obviously disagrees, but this opposition is not the correct vehicle for responding to the merits of Publix's arguments. Publix is free to seek summary judgment on this issue in this Court, and this Court can decide that issue based on the appropriate law. If, as Publix contends, the law on this point is clear, there is no need to certify the question.

**Question 2: What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2? Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where: (i) the medication has recognized medical benefits, and (ii) the pharmacy is alleged to have filled only some prescriptions for that medication under suspicion of diversion?**

Question 2 essentially raises the same argument asserted by numerous other defendants in this litigation that the opioid crisis isn't a public nuisance because it doesn't interfere with "everyone." Numerous courts have also rejected this argument about the "scope" of the nuisance interference, primarily based on the reasoning articulated in RESTATEMENT (SECOND) OF TORTS § 821B cmt. g:

> It is not, however, necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large. The obstruction of a public highway is a public nuisance, although no one is travelling upon the highway or wishes

to travel on it at the time. In many cases the interests of the entire community may be affected by a danger to even one individual. Thus the threat of communication of smallpox to a single person may be enough to constitute a public nuisance because of the possibility of an epidemic; and a fire hazard to one adjoining landowner may be a public nuisance because of the danger of a conflagration.

Moreover, as with Question 1, Publix cites a multitude of Georgia cases that it believes establishes that "an unadulterated medication with recognized medical benefits—such as prescription opioid medications—can never 'damag[e] all persons who come within the sphere of its operation.'" Dkt. 5388 at 8. Publix then argues that "[b]ecause these issues require interpretation of Georgia law that will be dispositive of this case and also impactful to many existing and future public-nuisance cases, the Court should certify Question 2." *Id*. But that same statement could be made in *every* federal case where the court sits in diversity: federal courts routinely interpret state law that is potentially dispositive. If federal courts certified a question every time an interpretation of state law was required, state supreme courts would be flooded with certified questions, which is clearly not the intended purpose of the certification process, nor is it consistent with the Article III and congressional powers conferred on the federal courts.

**Question 3. What establishes that a nuisance interferes with the public health as opposed to merely the personal health of some individuals? Is the personal health or sickness of an individual an inherently private right which a local government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?**

This is yet another example of Publix attempting to argue a point that has been raised and resolved numerous times in this litigation: defendants' argument that the plaintiffs' claims are not really a public nuisance but rather are "derivative" of the harm suffered by individuals who suffer from opioid use disorder. The Court resolved this question in CT1. *In re Nat'l Prescription Opiate Litig*., No. 1:17-MD-2804, 2018 WL 6628898, at *6 (N.D. Ohio Dec. 19, 2018)("Plaintiffs have alleged a plausible claim that their injuries are the direct result of Defendants' creation of an illicit opioid market within their

communities. Plaintiffs' asserted economic injuries are borne by them and not passed-on by any intermediate party standing less removed from Defendants' actions."). And other courts have reached the same conclusion. *See, e.g., State v. Purdue Pharma Inc.*, No. 217-2017-CV-00402, 2018 WL 4566129, at *11 (N.H. Super. Sep. 18, 2018 (finding claims "not necessarily derivative of harm suffered by third parties" where state sought abatement and damages)*; In re Opioid Litig.*, 2018 WL 4827862, at *7-9, *17 (N.Y. Sup. Ct. July 17, 2018) (same for counties); *see also Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 768 N.E.2d 1136, 1147-48 (Ohio 2002)(harm suffered by city from guns not derivative). This conclusion follows directly from the nature of public nuisance. The interferences with public rights that define nuisance are always suffered by individual members of the community, but the core aspect of the claim is that when harm is suffered by a sufficient portion of a community, it becomes a harm to the community itself. Georgia courts, like those elsewhere, recognize that harms suffered by the community at large constitute a public nuisance for which the State or its subdivisions may seek relief. *See Burgess v. Johnson*, 223 Ga. 427, 427, 156 S.E.2d 78, 79 (1967)("A public nuisance is one which damages all persons who come within the sphere of its operation. . . ").

As with the other proposed questions, Publix's "support" for certifying Question 3 reads more like an argument in a motion for summary judgment. Publix cites numerous cases discussing nuisance as an interference with public or private health but fails to articulate any conflicting case law or genuinely open question. Instead, Publix seeks to ask the Georgia Supreme Court to "*delineate the boundaries and the proof required* to show that a nuisance harms public health...." Dkt. 5388 at 9 (emphasis added). Such a request is not a proper basis for certification.

Publix further cites *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 727 (Okla. 2021) in support of Question 3, arguing that "[i]f the Georgia Supreme Court finds, consistent with [*Hunter*] and other recent federal courts interpreting Georgia law, that an interference with public health requires more than Plaintiff has alleged, Plaintiff's claim cannot succeed." Dkt. 5388 at 10. However, this Court has already considered and rejected that argument. As noted in the Court's order denying Publix's motion for reconsideration or certification, in *Hunter*, "the Oklahoma Supreme court examined 'legal interpretation of **Oklahoma's** nuisance statutes,' which are clearly different from Georgia's statutes, and Publix undertakes no comparison of the two legislative schemes. *Hunter*… do[es] not give the Court reason to reconsider its earlier decision, or to certify to the Georgia Supreme Court a question regarding the viability of the County's public nuisance claim." Dkt. 56 at 7 (1:18-op-45817) (emphasis in original).

**Questions 4 and 4(a): Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?  If the answer is yes, is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?**

**Question 4(b): Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—e.g., emergency, law-enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance and/or to treat injuries personal to only some members of the public—e.g., drug addiction, withdrawal, and overdose—as a form of "abatement" of a public nuisance?**

These proposed questions also involve issues this Court and others have considered: (1) is injunctive relief in the form of an "abatement fund" an appropriate remedy? and (2) does the "free public services" doctrine (sometimes called the "municipal cost recovery rule") preclude Plaintiff's public nuisance claim? *See, e.g.*, Dkt. 1406, Brief of Plaintiffs' Executive Committee Concerning Survey of State Nuisance Law,

13

at pp. 11-12 (discussion of available remedies), and 14-15 (discussion of the municipal cost recovery rule).

Publix does not articulate a single reason why this Court is incapable of deciding the very same matters in this case that it has in ten other Case Tracks. While Georgia jurisprudence may not speak *specifically* to Publix's questions *in the opioid context*, **no** state's law did prior to this litigation. Publix's own motion demonstrates that, as with the other issues it raises, existing Georgia case law provides a clear and principled course for this Court to apply to the facts, just as it has in the other cases.

## IV. PUBLIX'S ATTEMPT TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT IS UNTIMELY

As noted above, Publix has received two adverse rulings in response to its motion to dismiss and its motion for reconsideration. This Court found that Plaintiff sufficiently pled allegations that support a claim for public nuisance under Georgia law. *See* Dkt. 4071 at 12-13. Publix's motion to certify is nothing more than a response to the gamble it lost by seeking dismissal prior to certification. *See In re Amazon.com, Inc.*, 852 F.3d at 607. The proper time to request certification of a state-law issue "is before, not after, the district court has resolved [it]." *Id.*

In the case of *City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 654 (6th Cir. 2012), the plaintiff "requested certification as part of their cross-motion for summary judgment, after the district court had resolved the[] questions during review of the defendants' motion to dismiss." The Sixth Circuit pointed out that the appropriate time to seek certification was *before* the district court resolved the issue, not after an unfavorable ruling. *Id.* (citing similar views in the Eighth, Ninth and Tenth Circuits). Because the plaintiff in *City of Columbus* waited to request certification until after the district court had already made a number of decisions, including decisions unfavorable

14

to the plaintiff, the district court did not abuse its discretion in declining to certify this issue to the Ohio Supreme Court. *Id.*; *see also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2021 WL 168423, at *3 (N.D. Ohio Jan. 19, 2021) (denying certification where Defendants sought to certify question after the Court declined to apply the economic loss doctrine and dismiss plaintiff's claims).

Publix's argument that certification would promote judicial efficiency is also unavailing. Rather than promote it, granting certification now would actually *cause* unreasonable delay and ultimately increase the costs of already expensive litigation. "Shuttling the parties between state and federal tribunals is a sure way of defeating the ends of justice." *Clay v. Sun Ins. Office, Ltd.*, 363 U.S. 207, 228 (1960) (Douglas, J., dissenting). The prejudice to Plaintiff alone presents good reason not to allow Publix to "'seek refuge' in state court only after an unfavorable ruling." *In re Amazon.com, Inc.*, 852 F.3d at 607-08 (citations omitted); *see also Pennington*, 553 F.3d at 450 (denying certification where federal courts had already "expended considerable time and resources addressing the question"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 5923704, at *1 (N.D. Ohio Nov. 13, 2018)("The Distributor Defendants could have moved to have these questions certified to the Ohio Supreme Court at any point during the intervening five months, but instead waited until after this Court had invested enormous amounts of judicial resources into reviewing Defendants' Motions to Dismiss.").

## CONCLUSION

For the foregoing reasons, this Court should deny Publix's Motion to Certify Questions to the Georgia Supreme Court.

Dated:  April 18, 2024

Respectfully submitted,

*/s/ Jayne Conroy*
Jayne Conroy
Thomas I. Sheridan, III
Sarah Burns
Laura Fitzpatrick
Jo Anna Pollock
Sanford Smokler
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, NY 10016
(212) 784-6401
jconroy@simmonsfirm.com
tsheridan@simmonsfirm.com
sburns@simmonsfirm.com
lfitzpatrick@simmonsfirm.com
jpollock@simmonsfirm.com
ssmokler@simmonsfirm.com

*/s/ Erin K. Dickinson*
Erin K. Dickinson
Charles J. Crueger
**CRUEGER DICKINSON LLC**
4532 N Oakland Avenue
Whitefish Bay, WI 53211
(414) 210-3868
cjc@cruegerdickinson.com
ekd@cruegerdickinson.com

Cobb County Attorney's Office

*/s/ H. William Rowling, Jr.*
H. William Rowling, Jr.
County Attorney
H.William.Rowling@cobbcounty.org
Lauren S. Bruce
Assistant County Attorney
Lauren.Bruce@cobbcounty.org

100 Cherokee Street, Suite 350
Marietta, Georgia, 30090
Tel. No.:  (770) 528-4000
Fax. No.:  (770) 528-4010

*Counsel for Cobb County, GA*

16

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2024, I caused the foregoing to be served via electronic mail on Defendants via Tracks6to10Defendants@bbhps.com.

*/s/ Jayne Conroy*
Jayne Conroy