UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | MDL 2804 |
| THIS DOCUMENT RELATES TO: | ) ) ) | Case No. 1:17-md-2804 |
| *Track Eight* | ) ) ) ) ) ) ) | Judge Dan Aaron Polster  <br><br>**ORDER DENYING PUBLIX'S MOTION TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT** |

On April 4, 2024, Publix filed a Motion asking this Court to certify four Questions to the Georgia Supreme Court. Docket no. 5388. Each of the proposed four Questions contains at least one follow-up question; multiple Questions have sub-parts; and one Question has sub-sub-parts. In fact, within Publix's four proposed Questions, there are at least ten different possible questions.[1]

---

1      Publix's four proposed questions are:

1. [**1**] Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? [**2**] If so, does such a claim require proof that the provider committed malpractice?

2. Under O.C.G.A. § 41-1-2, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." [**3**] What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2? [**4**] Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where: (i) the medication has recognized medical benefits, and (ii) the pharmacy is alleged to have filled only some prescriptions for that medication under suspicion of diversion?

3. [**5**] What establishes that a nuisance interferes with the public health as opposed to merely the personal health of some individuals? [**6**] Is the personal health or sickness of an individual an inherently private right that a local government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?

4. [**7**] Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?

   a. If the answer is yes, [**8**] is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?

   b. If the answer is no, (i) [**9**] Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—*e.g.*, emergency, law enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance? And (ii) [**10**] Does Georgia preclude a local government from recovering monies to treat injuries personal to only some members

*footnote continued on next page*

Plaintiff filed a Response. Docket no. 5405. Publix filed a Reply. Docket no. 5415. Having carefully considered Publix's proposed Questions and the parties' briefs and arguments, Publix's Motion is **DENIED,** for the reasons stated below.

The following summary of the applicable procedural history provides necessary context. On August 8, 2021, Publix filed a motion to dismiss Plaintiff Cobb County's Complaint. Docket no. 3906. In its motion to dismiss, Publix asserted Georgia law does not recognize a public nuisance claim for "the actions of a business engaged in a heavily regulated industry." Docket no. 3906-1 at 2. Publix's theory was, "if the Georgia legislature has not characterized the violation of a regulatory scheme (such as the [Georgia Pharmacy Practice Act ("PPA"), O.C.G.A § 26-4-1 *et seq.*,]) to be a public nuisance, 'then a court of equity has no power to declare it one,' and remedies under the PPA and authorization to pursue them are limited to those expressly set forth in the statute." *In re Nat'l Prescription Opiate Litig.*, 2021 WL 4952468, at *5 (N.D. Ohio Oct. 25, 2021) (quoting Publix's motion to dismiss) (Docket no. 4071).

Relying on Georgia Supreme Court precedent, this Court denied Publix's motion to dismiss. The Court found that: (1) Georgia law "explicitly recognizes a public nuisance claim *could* be brought, even though a statute addresses the same conduct," *id.* at *6 (emphasis in original); and (2) "nothing in the provisions of the PPA expresses or implies an intent by the Georgia legislature to displace the common law or immunize violations of its provisions from public nuisance liability under Georgia law." *Id.* at *7. The Court concluded that "Publix fail[ed] to demonstrate that Georgia law does not recognize a public nuisance claim." *Id.*

---

of the public—*e.g.*, drug addiction, withdrawal, and overdose—as a form of "abatement" of a public nuisance?

Publix responded with a motion asking this Court to reconsider its ruling or, alternatively, to "certify a [single] question to the Georgia Supreme Court regarding whether the County has asserted an actionable claim of public nuisance."[2] Docket no. 4208 at 10. The Court denied both requests. *In re Nat'l Prescription Opiate Litig.*, 2022 WL 228150 (N.D. Ohio Jan. 26, 2022) (Docket no. 4245). Regarding the certification request, the Court held that Publix's petition was untimely, coming after the Court had already analyzed and decided the legal questions raised in the motion to dismiss: "the appropriate time to request certification of a state law issue 'is before, not after, the district court has resolved [it].'" *Id.* at *3 (quoting *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 607–608 (6th Cir. 2017)).[3]

Unhappy with this ruling, Publix petitioned the Sixth Circuit for a writ of mandamus, seeking to compel this Court to certify Publix's question to the Georgia Supreme Court. *See* docket no. 4291. The Sixth Circuit denied Publix's petition, finding that Publix had "adequate alternative means to obtain the relief it seeks" and did not "show a 'clear and indisputable' right to mandamus in this case." *See* docket no. 4465 at 2.

Now, Publix asks this Court yet again to certify questions to the Georgia Supreme Court, this time laying out a prolix proposal of four multi-part and multi-sub-part questions. This request has even less merit than Publix's first request.

---

[2] Specifically, the single question Publix sought to have certified was: "Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 *et seq.*, and for which the legislature has already enumerated civil and criminal remedies?" Docket no. 4208 at 13.

[3] The Court further noted that: (1) Georgia law "provides sufficient guidance to allow [the Court] to make clear and principled decisions," *id.* at *4 (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009)); and (2) public nuisance rulings from other jurisdictions "do not give the Court reason to reconsider its earlier decision, or to certify to the Georgia Supreme Court a question regarding the viability of the County's public nuisance claims." *Id.*

3

The main reason Publix's current request has even less merit is that it is even more untimely. If Publix's first request for certification, made in 2021, was tendered too late—and the Court concluded it was—then Publix's second request is obviously only more so. And as the Sixth Circuit clearly stated, "Publix can raise the district court's denial of its motion to certify the question in an appeal from the judgment." Docket no. 4465 at 2.

Equally dispositive, however, is that Georgia Code § 15-2-9 permits certification only of "questions of the laws of [Georgia] which are determinative of the case . . . ." O.C.G.A. § 15-2-9. The single question Publix proposed in its first certification request may have met that standard (were it not untimely), but the multiple questions Publix now proposes certainly do not. As written, Publix's questions are convoluted and confusing and not outcome-determinative. For example, Publix's Question 2 would ask the Georgia Supreme Court to define the scope of Plaintiff's alleged nuisance **based on Publix's framing of Plaintiff's allegations**. As this Court discovered when drafting jury instructions for the Track Three trial, however, a precise definition of the public nuisance at issue is hotly contested by the parties.

Specifically, in Track Three—relying on the Restatement (Second) of Torts[4]—this Court carefully analyzed when *conduct, itself*, is found to be a nuisance, as compared to when conduct *creates a condition* that is found to be a nuisance. *See In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 739, 781 (N.D. Ohio 2022) (docket no. 4296) ("the conduct itself (*i.e.*, the human activity) may, but need not necessarily, be the interference. Per the Restatement, the physical condition resulting from the activity can also be the interference."). Publix's Question 2 assumes away any *condition* that might be found by a jury to be a public nuisance and instead focuses only

---

[4] This Court has ruled that Georgia also follows the Restatement (Second) or Torts. *See In re Opiate*, 2022 WL 228150 at *4 (docket no. 4071) (collecting cases).

4

on Publix's specific *conduct* ("the distribution and/or dispensing of prescription medications without proper controls against diversion"). If this Court asked the Georgia Supreme Court to rule on Question 2, Plaintiffs would certainly contest Publix's framing, thus rendering the question largely meaningless for resolving this case. In other words, resolution of Question 2 by the Georgia Supreme Court would not certainly determine the outcome of this case, so the Question is inappropriate for certification.[5]

In sum, as compared with Publix's first, denied request to certify a question to the Georgia Supreme Court, Publix's current request proposes questions that are even less appropriate and even more late. Accordingly, Publix's Motion to Certify Questions to the Georgia Supreme Court is **DENIED**.

        **IT IS SO ORDERED.**

        /s/ Dan Aaron Polster  May 2, 2024
        **DAN AARON POLSTER**
        **UNITED STATES DISTRICT JUDGE**

---

[5] Publix's Question 4 is even more unfit. Publix asserts that its Question 4 could (if decided in its favor) simplify and streamline the case and "have great potential to focus and facilitate settlement negotiations between the parties." Motion at 11. Publix thus concedes that an answer from the Georgia Supreme Court to Question 4 would simply provide helpful guidance—it is not "determinative of the case."