## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  May 07, 2024

Mr. Brian D. Boone
Alston & Bird
1120 S. Tryon Street
Suite 300
Charlotte, NC 28203-6818

Mr. William Herman Jordan
Alston & Bird
1201 W. Peachtree Street, N.E.
Suite 4900
Atlanta, GA 30309

Re:  Case No. 24-3396, *In re: OptumRx, Inc.*
Originating Case No. 1:17-md-02804

Dear Counsel,

The petition for writ of mandamus or prohibition has been docketed as case number **24-3396** with the caption listed above.  If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

Counsel for petitioner must file an Appearance of Counsel form and, if not admitted, apply for admission to the 6th Circuit Bar by **May 21, 2024**.  The forms are available on the court's website.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Jill E Colyer for Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

**RECEIVED**

05/07/2024

KELLY L. STEPHENS, Clerk

**CASE NO.** ___24-3396___

---

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**
--------------------

In re OptumRx, Inc.
*Petitioner-Defendant*

--------------------

From the United States District Court
Northern District of Ohio, Eastern Division, Case No. 17-MD-2804

--------------------

**PETITION FOR WRIT OF MANDAMUS**

---

Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
Tel.: (704) 444-1000
brian.boone@alston.com

William H. Jordan
D. Andrew Hatchett
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street NW
Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for Petitioner-Defendant OptumRx, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: _____          Case Name: In re OptumRx, Inc. _____

Name of counsel:  Alston & Bird LLP _____

Pursuant to 6th Cir. R. 26.1, OptumRx, Inc. _____
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
      identity of the parent corporation or affiliate and the relationship between it and the named
      party:

> Yes. UnitedHealth Group Incorporated is the ultimate parent of OptumRx, Inc. UnitedHealth
> Group Incorporated is a publicly traded corporation.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
      in the outcome?  If yes, list the identity of such corporation and the nature of the financial
      interest:

> Yes. UnitedHealth Group Incorporated is the ultimate parent of OptumRx, Inc. UnitedHealth
> Group Incorporated is a publicly traded corporation.

---

CERTIFICATE OF SERVICE

I certify that on _____ May 7, 2024 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Brian D. Boone _____
Alston & Bird LLP _____
_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed.**

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ iii

PETITION ...................................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT .......................1

ISSUE PRESENTED ...................................................................................9

STATEMENT ...............................................................................................9

STANDARD OF REVIEW .......................................................................17

REASONS THE WRIT SHOULD ISSUE ..............................................19

    I.    OPTUMRX HAS NO OTHER MEANS FOR OBTAINING
           RELIEF FROM THE DISTRICT COURT'S EGREGIOUSLY
           WRONG DECISION. ........................................................20

    II.    OPTUMRX'S RIGHT TO THE WRIT IS CLEAR AND
           INDISPUTABLE. ...............................................................21

          A.    The District Court nullified Rule 1.11(c)..................21

               1.    Through its government investigations, Motley
                      Rice received confidential government information
                      about OptumRx................................................22

               2.    Motley Rice could use the information to
                      OptumRx's material disadvantage. ................28

               3.    Even the District Court suggested that without its
                      erroneous "discovery" exception to Rule 1.11(c),
                      Motley Rice should be disqualified. ...............29

          B.    The District Court's ruling bears other marks of an abuse
               of discretion.................................................................30

    III.    THE WRIT IS VITAL TO PRESERVING A
           LONGSTANDING CHECK ON THE ABUSE OF
           GOVERNMENT POWER..................................................32

CONCLUSION ................................................................................................34

CERTIFICATE OF COMPLIANCE .......................................................................36

CERTIFICATE OF SERVICE .............................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allied Realty of St. Paul, Inc. v. Exchange National Bank of Chicago*,
283 F. Supp. 464 (D. Minn. 1968) ......................................................................30

*Cheney v. United States Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ..........................................................................17, 21, 32

*Courier-Journal v. Marshall*,
828 F.2d 361 (6th Cir. 1987) ..............................................................................25

*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*,
900 F.2d 882 (6th Cir. 1990) ..............................................................................18

*Davis v. S. Bell Tel. & Tel. Co.*,
149 F.R.D. 666 (S.D. Fla. 1993) .........................................................................30

*Firestone Tire & Rubber Co. v. Risjord*,
449 U.S. 368 (1981) ............................................................................................20

*Gen. Mill Supply Co. v. SCA Servs., Inc.*,
697 F.2d 704 (6th Cir. 1982) ........................................................................17, 18

*General Motors Corp. v. City of New York*,
501 F.2d 639 (2d Cir. 1974) ....................................................................30, 33, 34

*Gordon v. Dadante*,
2009 WL 2732827 (N.D. Ohio Aug. 26, 2009) ..............................................7, 18

*Hilo Metals Co. v. Learner Co.*,
258 F. Supp. 23 (D. Haw. 1966) .........................................................................30

*In re Am. Airlines, Inc.*,
972 F.2d 605 (5th Cir. 1992) ........................................................................18, 19

*In re Am. Cable Publ'ns, Inc.*,
768 F.2d 1194 (10th Cir. 1985) .....................................................................18, 19

*In re Dresser Indus., Inc.*,
972 F.2d 540 (5th Cir. 1992) ..............................................................................18

*In re Mechem*,
880 F.2d 872 (6th Cir. 1989) ...............................................................................18

*In re Nat'l Prescription Opiate Litig.*,
2019 WL 1274555 (N.D. Ohio Mar. 20, 2019).............................................5, 27

*In re Nat'l Prescription Opiate Litig.*,
2019 WL 7482137 (6th Cir. Oct. 10, 2019) .........................................................3

*In re Nat'l Prescription Opiate Litig.*,
956 F.3d 838 (6th Cir. 2020) ...........................................................................2, 3

*In re United States*,
32 F.4th 584 (6th Cir. 2022) ...............................................................................32

*Kronberg v. LaRouche*,
2010 WL 1443934 (E.D. Va. Apr. 9, 2010) ........................................................26

*Richardson-Merrell, Inc. v. Koller*,
472 U.S. 424 (1985)..............................................................................................18

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)................................................................................................25

*United States v. Bertoli*,
994 F.2d 1002 (3d Cir. 1993) ..............................................................................33

*United States v. Villaspring Health Care Ctr., Inc.*,
2011 WL 5330790 (E.D. Ky. Nov. 7, 2011) .................................................24, 26

**RULES**

Federal Rule of Appellate Procedure 21(a) ................................................................1

Ohio Rule of Professional Conduct 1.11(c).......................................................passim

**STATUTES AND REGULATIONS**

5 U.S.C. § 552 ..........................................................................................................25

5 C.F.R. § 2635.703(b) ..............................................................................................24

28 U.S.C. § 1651 .........................................................................................................1

5 Ill. Comp. Stat. 140/7(g) ................................................................22

D.C. Code § 2-534(a)(1) ...................................................................22

Haw. Rev. Stat. § 480-18(j) ...............................................................22

**OTHER AUTHORITIES**

ABA Comm. on Ethics & Prof'l Resp., Formal Op. 509 (Feb. 28, 2024) .......passim

Alison Frankel, *Opioids Judge Won't Oust Motley Rice But Casts Cloud Over 'Public Client' Business*, Reuters (Mar. 19, 2024) .................................33

Editorial Board, *Double Dipping in Opioid Lawsuits*, Wall St. J. (Jan. 1, 2024) .........................................................................8

Editorial Board, *The Tort Bar's Legal Double Dipping*, Wall St. J. (Dec. 9, 2022) ........................................................................2

N.Y. State Bar Ass'n Comm. on Prof'l Ethics Op. 1169 (2019) ............................26

N.Y. State Bar Ass'n Comm. on Prof'l Ethics Op. 1187 (2020) ............................26

Neb. Ethics Advisory Op. for Lawyers No. 22-01 ...................................................26

O.H. Skinner, *States Hiring Outside Lawyers Need to Ask Who Else They Represent*, Bloomberg Law (Jan. 23, 2024) ........................................................8

*Public Client Litigation Area*, Motley Rice, https://www.motleyrice.com/public-client (last visited Apr. 10, 2024) ............33

Shalina Chatlani, *Taxpayers Were Overcharged for Patient Meds. Then Came the Lawyers.*, N.Y. Times (Mar. 21, 2024) ................................................8

## PETITION

OptumRx, Inc. petitions under 28 U.S.C. § 1651 and Federal Rule of Appellate Procedure 21(a) for a writ of mandamus ordering the District Court to disqualify Motley Rice LLC and its attorneys from all pending and future lawsuits against OptumRx in *In re National Prescription Opiate Litigation*, No. 17-MD-2804 (N.D. Ohio).

## INTRODUCTION AND SUMMARY OF ARGUMENT

With increasing regularity, State Attorneys General and local governments are deputizing private lawyers as Special Assistant Attorneys General to investigate businesses. The arrangement allows state and local governments to transfer litigation risk to private lawyers while preserving those governments' ability to seek damages in cases they would not otherwise pursue. The private lawyers, in turn, get to cloak themselves in government power, which allows them to secure pre-litigation discovery and pursue claims on a contingency-fee basis without facing the corresponding limits on personal financial benefits that normally apply to full-time government prosecutors.

Some private lawyers go further. They take the information gained from their government investigations and use it in separate *private* contingency-fee litigation for their and their clients' financial benefit. That represents a grave abuse of

government power. The Rules of Professional Conduct—here, Ohio Rule of Professional Conduct 1.11(c)—prohibit the practice:

> A lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person.

And yet despite that longstanding ethical prohibition, there has been a rise in what the Wall Street Journal dubbed "unholy alliance[s]" between private lawyers and state prosecutors.[1]

In the proceedings below, the District Court acknowledged those ethical concerns but ultimately nullified Rule 1.11(c) to cleanse plaintiffs' firm Motley Rice from its ongoing violations of the Rule. In doing so, it distorted and disregarded the law.

Not long ago, this Court granted mandamus relief to other defendants in the opioid MDL because the District Court disregarded the Federal Rules' requirements. In granting that relief, the Court emphasized that "[t]he rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). "Within

---

[1] Editorial Board, *The Tort Bar's Legal Double Dipping*, Wall St. J. (Dec. 9, 2022), https://www.wsj.com/articles/the-tort-bars-legal-double-dipping-illinois-insulin-attorney-general-plaintiff-attorneys-11669127620.

the limits of those rules, of course, an MDL court has broad discretion," but "[w]hat an MDL court may not do . . . is distort or disregard the rules of law applicable to each of those cases." *Id.*[2]

For years, OptumRx watched the opioid MDL from the sidelines; it was not an active litigant in the MDL. But then in December 2022, the District Court "turned its focus to resolving claims made against the PBMs." R.5362, PageID #633140. The court designated four bellwether cases against pharmacy benefits managers (PBMs) OptumRx and Express Scripts and other non-PBM companies from the same corporate families. Of the more-than 3,000 cases in the MDL, OptumRx and Express Scripts are defendants in only 84.

Motley Rice has represented plaintiffs in opioid lawsuits against *other defendants* since the beginning of the MDL, but it did not begin representing plaintiffs in opioid litigation against OptumRx until late 2022/early 2023. Those representations violated Rule 1.11(c) from the start because Motley Rice previously investigated OptumRx as government lawyers for Hawaii, the District of Columbia, and the City of Chicago. Through that government service, Motley Rice obtained confidential information about OptumRx that the firm could use to OptumRx's

---

[2] That was not the first time that the Court expressed concern about proceedings in the opioid MDL. *See In re Nat'l Prescription Opiate Litig.*, 2019 WL 7482137 (6th Cir. Oct. 10, 2019).

material disadvantage in opioid litigation. That violates Rule 1.11(c), so OptumRx moved to disqualify Motley Rice from the MDL cases against OptumRx.

The District Court acknowledged that Motley Rice was a "public officer" in those government investigations because the firm "served government subpoenas" on OptumRx and "gained access to information pursuant to governmental authority." R.5362, PageID #633142. It also agreed that Motley Rice was representing "private client[s]" in the MDL. *Id.* at PageID #633142–633143. The court also recognized that Motley Rice's conduct "pose[d] a serious 'risk that power or discretion vested in [Motley Rice] might be used for the special benefit of [their private] client,' or create a conflict of interest." *Id.* at PageID #633159. The District Court agreed that Motley Rice "needs to adhere to all the same rules to which government lawyers are subject" and warned "Motley Rice and all other law firms [to] carefully take this into account going forward." *Id.* at PageID #633144. The court even said that it "frown[ed] on" Motley Rice's actions. *Id.* at PageID #633159.

Yet despite those findings and warnings, the District Court gave Motley Rice a pass, concluding that the firm had not *technically* violated Rule 1.11(c) based on the purportedly "unique facts of this case." *Id.* at PageID #633143 (n.9). In reaching that conclusion, the court (i) disregarded Rule 1.11(c)'s language and years of authority interpreting the Rule, (ii) abandoned the court's own earlier decision applying the Rule to disqualify a defense lawyer in the MDL on far less egregious

4

facts,[3] (iii) purported to remedy Motley Rice's ethical violations by ordering OptumRx to produce into the MDL the documents that it had produced in the Motley Rice-led government investigations, and (iv) distorted the record about the timing of OptumRx's motion.

The District Court also hollowed out Rule 1.11(c)'s definition of "confidential government information," ruling that *any* information subject to civil discovery cannot be "confidential government information." *Id.* at PageID #633146. The District Court did so in the face of a recent ABA opinion and numerous precedents concluding otherwise. The court then purported to cleanse Motley Rice of its ethical violations by ordering OptumRx to produce into the MDL all the documents that OptumRx had produced in the Motley Rice-led government investigations. *Id.* at PageID #633149; *see also id.* at PageID #633159 ("[W]ere it not for the standing Repository obligations . . . , the Court's discussion and analysis in this Order might have been different."). To our knowledge, no other court has tried to cleanse a law firm's ethical violations by ordering a party to produce discovery.

In ruling as it did, the court did not just create a "Motley Rice" exception to the ethics rules. Virtually any information or document that a government investigator can gather with a subpoena—even a grand jury subpoena—is subject to

---

[3] *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555 (N.D. Ohio Mar. 20, 2019).

civil discovery in private litigation. As a result, the District Court's approach to Rule 1.11(c) would make the Rule a dead letter: The Rule would almost never prevent government lawyers armed with information obtained through government service from entering private practice and suing the targets of their government investigations.[4]

This Court should issue a writ of mandamus to undo the District Court's decision. The circumstances satisfy all three requirements for a writ:

*First*, OptumRx has no other means for attaining relief. Waiting until after final judgment to appeal would subject OptumRx to the ongoing prejudice of Motley Rice's involvement throughout the proceedings.

*Second*, the District Court's ruling is egregiously wrong and a clear abuse of discretion. According to OptumRx's experts below, including a member of the ABA ethics committee that issued the recent ABA opinion, Motley Rice's ethical violations are not a "close call." R.5300-2, PageID #628141; *see also* R.5341-2, PageID #630306 ("There can be no more obvious violation of Rule 1.11(c) . . . ."). Although the District Court purported to cabin its ruling to the "unique facts of this

---

[4] The District Court also justified its decision on the grounds that disqualifying Motley Rice would "deprive all litigants that are suing PBMs of Motley Rice's considerable experience with complex litigation generally and this MDL specifically." *Id.* at PageID #633158. But Motley Rice is only one of more than a dozen firms representing plaintiffs in MDL opioid cases against OptumRx, most or all of whom have been involved in the opioid MDL alongside Motley Rice for years.

case" (*id.* at PageID #633143 (n.9)), the legal principle that it adopted would nullify the Rule across all cases.

*Third*, the issue is of great public importance. "'Although a party's right to counsel of her choice is important, it is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct.'" *Gordon v. Dadante*, 2009 WL 2732827, at *6 (N.D. Ohio Aug. 26, 2009) (collecting cases) (citation omitted). "The paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar." *Id.* For that reason, a court should "not weigh the circumstances with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety . . . resolve all doubts in favor of disqualification." *Id.* If left to continue, Motley Rice's and other law firms' abuse of their partnerships with state and local governments will undermine public confidence in both government investigations and the judicial system. The District Court "frown[ed]" on that business model but did nothing to stop it. R.5362, PageID #633159.

OptumRx's petition comes at a moment when others have begun sounding the same alarm. The Wall Street Journal recently again decried the practice, explaining that "[t]his double dipping would break the rules of professional conduct in nearly

any industry, but it's an open scandal in the tort business."[5] Earlier this year, a former Arizona Solicitor General used this case to highlight "the problem that arises when government lawyers outsource enforcement to outside trial lawyers: ethics and conflicts of interest."[6] And in March, the New York Times published an investigation detailing ethical concerns about "powerful private lawyers who used their political connections to go after millions of dollars in contingency fees" on behalf of governments.[7]

*    *    *

Instead of resolving its doubts in favor of disqualification, the District Court crafted an exception to Rule 1.11(c) that gives Motley Rice and other firms license to continue practices long understood to violate the ethics rules. Worse, the District Court's order will encourage the very behavior that Rule 1.11(c) was designed to prohibit—using government power for private gain. This Court should correct the District Court's manifest abuse of discretion and should confirm that government

---

[5] Editorial Board, *Double Dipping in Opioid Lawsuits*, Wall St. J. (Jan. 1, 2024), https://www.wsj.com/articles/double-dipping-in-opioid-lawsuits-optumrx-motley-rice-6dab5dcb.

[6] O.H. Skinner, *States Hiring Outside Lawyers Need to Ask Who Else They Represent*, Bloomberg Law (Jan. 23, 2024), https://news.bloomberglaw.com/us-law-week/states-hiring-outside-lawyers-need-to-ask-who-else-they-represent.

[7] Shalina Chatlani, *Taxpayers Were Overcharged for Patient Meds. Then Came the Lawyers.*, N.Y. Times (Mar. 21, 2024), https://www.nytimes.com/2024/03/21/us/centene-health-care-fraud.html.

lawyers may not use what they learn from government service to benefit themselves or their private clients.

## ISSUE PRESENTED

Whether the Court should issue a writ of mandamus ordering the District Court to disqualify Motley Rice and its attorneys from representing plaintiffs suing OptumRx in the opioid MDL.

## STATEMENT

OptumRx is a PBM. PBMs contract with health plans and third-party payers to administer prescription drug benefits. PBMs were not involved in the first opioid lawsuits that led to the formation of this MDL in December 2017. But in 2018 and 2019, some plaintiffs (not represented by Motley Rice) filed or amended complaints to allege claims against certain PBMs, including OptumRx.

In September 2018, Motley Rice (which had not yet sued OptumRx in opioid litigation) began representing Chicago as "Special Assistant Corporation Counsel" to investigate OptumRx relating to copay clawbacks. R.5320-4, PageID #629111. As part of that investigation, Chicago issued an investigative subpoena to OptumRx in November 2018, demanding information about various aspects of OptumRx's business, including contracts with pharmacies and certain clients. R.5276-16. Under a confidentiality agreement—executed by Mimi Liu of Motley Rice as Chicago's

Special Assistant Corporation Counsel (R.5276-17)—OptumRx produced confidential material to Motley Rice. R.5276-3.

In December 2020, the District of Columbia appointed Motley Rice's Linda Singer to lead "the investigation of and possible litigation against" OptumRx for possible violations of consumer protection laws and the False Claims Act. R.5276-10. Motley Rice served an investigative subpoena on OptumRx regarding "the negotiation of prescription drug rebates and the administration of prescription drug benefits," directing OptumRx to produce its confidential documents to Linda Singer at Motley Rice. R.5276-11, PageID #625685. OptumRx again negotiated a confidentiality agreement preventing Motley Rice from using the confidential information that its lawyers obtained through the D.C. subpoena outside of the firm's work for D.C. R.5276-12, PageID #625700–625701 (¶ 2). OptumRx produced to Motley Rice more than 68,000 pages of unredacted, commercially sensitive documents and data. R.5276-13; R.5276-14; R.5276-15; R.5276-2, PageID #625580–625581 (¶¶ 12–15); R.5276-4, PageID #625587 (¶¶ 7–9). Those productions contained confidential documents covering wide swaths of OptumRx's business operations, including charters, policies, and other materials from OptumRx's business strategy and formulary placement committees as well as emails relating to those and other aspects of OptumRx's business. R.5276-2, PageID #625579 (¶ 7); R.5276-4, PageID #625587 (¶¶ 7–8). They also included certain of

OptumRx's rebate-related and transaction data. R.5276-13; R.5276-15; R.5276-2, PageID #625580 (¶¶ 12, 14). Most of the information that OptumRx produced is not available to the public and is among OptumRx's most commercially sensitive material. R.5276-2, PageID #625581 (¶ 15); R.5276-4, PageID #625587 (¶ 9).

Then in April 2021, Motley Rice (which still did not represent any plaintiff in an opioid lawsuit against OptumRx) accepted an appointment from the Hawaii Attorney General to serve as a Special Deputy Attorney General. R.5276-5. Linda Singer and Joe Rice signed the engagement agreement on Motley Rice's behalf. *Id.* In October 2021, the Hawaii Attorney General issued an investigative subpoena to OptumRx demanding documents and communications relating to various aspects of OptumRx's business, including formulary development, rebate negotiations with pharmaceutical manufacturers, and financial information relating to OptumRx's contractual relationships with pharmaceutical manufacturers. R.5276-6. The subpoena directed OptumRx to deliver the documents to "Special Deputy Attorney General Linda Singer, Motley Rice LLC." *Id.* at PageID #625627.

OptumRx again negotiated a confidentiality agreement prohibiting Motley Rice from relying "on Confidential Material in pursuing information or claims in any other matters outside of its representation of the [Hawaii] OAG." R.5276-7, PageID #625643–625644 (¶ 2). Relying on that agreement, OptumRx produced to Motley Rice the 68,000 pages of unredacted, commercially sensitive documents that

11

it had produced to D.C., along with commercially sensitive data. R.5276-8; R.5276-9; R.5276-2, PageID #625579–625580 (¶¶ 7–9); R.5276-4, PageID #625587 (¶¶ 7–9).

Until December 2022, Motley Rice had never sued OptumRx in opioid litigation. But when it became clear that Motley Rice was representing opioid plaintiffs in litigation against OptumRx, OptumRx promptly notified the District Court that it intended to move to disqualify Motley Rice. R.5362, PageID #633137. At a status conference in March 2023, the court agreed with OptumRx that any disqualification motion should wait for a specific bellwether case. *Id.*

In October 2023, the District Court identified four bellwether cases against the PBMs, and Motley Rice and several other firms confirmed that they would lead those representations. The theories that Motley Rice now presses against OptumRx relate to many of the same aspects of OptumRx's business that the firm investigated as government lawyers. For instance, the City of Rochester alleges that the formularies and clinical programs that OptumRx offered its clients should have included additional limits on opioid prescriptions and that the PBMs have been "colluding with Purdue Pharma and other opioid manufacturers to increase opioid sales through favorable placement on national formularies in exchange for rebates and fees." R.5346-1, PageID #630364–630365 (¶ 3); *see also, e.g.*, *id.* at PageID #630365–630366, 630377, 630441 (¶¶ 4, 36, 252). The information that Motley

12

Rice obtained through its government investigations into OptumRx relates to, among other things, OptumRx's rebate negotiations with manufacturers and formulary offerings to its clients.

Consistent with the District Court's scheduling order (R.5268), OptumRx moved in December 2023 to disqualify Motley Rice from representing the bellwether plaintiffs against OptumRx under Ohio Rule of Professional Conduct 1.11(c):

> Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. As used in this rule, the term "confidential government information" means information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public.

The District Court held a hearing in February 2024. At the hearing, the court expressed skepticism about Motley Rice's arguments, particularly its arguments that it had not served as public officers in the investigations and are not representing private clients in the opioid MDL. *E.g.*, R.5312, PageID #628212 (18:6–11) ("I can't understand why you [Motley Rice] don't see that there is a difference between . . . your firm's work for these three entities and your work for all of your other clients,

and particularly the . . . four bellwether clients that you're representing."), PageID #628200–628201 (6:25–7:1) ("no question that they [Motley Rice attorneys] were performing public functions"), PageID #628210–628211 (16:11–13, 17:20–22) (recognizing that Motley Rice served as a "public lawyer" for Hawaii and engaged in a "standard private representation" in the bellwether litigations). After the hearing, the court granted Motley Rice leave to file a sur-reply, which rehashed Motley Rice's earlier arguments. R.5320, R.5320-1.

Shortly afterwards, the American Bar Association's Standing Committee on Ethics and Professional Responsibility issued Formal Opinion 509 discussing Model Rule of Professional Conduct 1.11(c), which is largely identical to Ohio's Rule 1.11(c). *See* ABA Comm. on Ethics & Prof'l Resp., Formal Op. 509 (Feb. 28, 2024).[8] In the opinion, the ABA Committee explained that private-practice attorneys qualify as public officials when they accept "special" government appointments and that public entities like the bellwether plaintiffs qualify as "private clients" when a law firm represents them in private practice. *Id.* at 9–10. The Committee also reiterated that information obtained by governments that "the government is legally prohibited from disclosing to the public" qualifies as "confidential government information" under the Rule:

---

[8] *See* R.5338-1; also available at https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ethics-opinions/aba-formal-opinion-509.pdf.

14

> Rule 1.11(c) does not apply to all information obtained under government authority, but only to information that, at the time the Rule is applied, the government is legally prohibited from disclosing to the public or has a legal privilege not to disclose if the information is not otherwise publicly available. Whether government information is publicly available—e.g., whether it can be obtained through routine discovery—will be a question of fact. So is the question of whether the information "could be used to [the person's] material disadvantage."

*Id.* at 5 (footnotes omitted). As the Committee made clear in the opinion, whether information "can be obtained through routine discovery" is about whether information can be obtained by the public *from the government*, not from private parties in civil litigation.

Motley Rice filed a notice of supplemental authority, mischaracterizing the language "can be obtained through routine discovery" to argue that the investigation documents that OptumRx produced were not confidential government information because Motley Rice could get them through civil discovery. R.5338, PageID #630255. In response, OptumRx and its experts explained that the ABA's opinion confirms that the "routine discovery" language does not apply to information produced under a protective order or confidentiality agreement. The experts (including a member of the ABA Committee that issued the opinion) explained that Motley Rice's "interpretation would render the Rule meaningless" and that "[r]outine discovery does *not* include information subject to a protective order, such as proprietary or trade secret information, nor does it include information produced

pursuant to Confidentiality Agreements signed by government lawyers." R.5341-2, PageID #630310. They highlighted the many precedents favorably cited in the ABA opinion in which courts disqualified lawyers even though the information obtained as government lawyers could have been later obtained through civil discovery. *Id.* at PageID #630310–630311.

The District Court denied OptumRx's motion.[9] R.5362. In its order, the court confirmed that Motley Rice acted as a public officer when it investigated OptumRx on behalf of Hawaii, D.C., and Chicago and that the firm gained access to information about OptumRx using government authority. The court also agreed that Motley Rice is now representing the MDL bellwether plaintiffs as "private clients" under the Rule. *Id.* at PageID #633141–633144. The District Court claimed to be "very uncomfortable with the malleability of this quasi-government-employment configuration" under which "Motley Rice attempts to act simultaneously as a public employee and not a public employee, as fits its need." *Id.* at PageID #633144.

And yet despite all that, the District Court spared Motley Rice from disqualification. Distorting the procedural history, the court faulted OptumRx for not raising disqualification years ago—even though Motley Rice wasn't representing any opioid plaintiff against OptumRx until December 2022 at the

---

[9] OptumRx's co-defendant Express Scripts joined OptumRx's motion to disqualify, but the District Court concluded that Express Scripts had joined too late. R.5351; R.5362, Page ID #633131 n.1.

earliest and even though no party had raised the timing of OptumRx's motion in more than 100 pages of briefing or at the hearing. The court then misconstrued ABA Formal Opinion 509 to conclude that the documents that OptumRx produced to Motley Rice in the government investigations did not constitute "confidential government information" under Rule 1.11(c) because they could be obtained through "routine discovery" and should have been produced to all plaintiffs' counsel under two previous MDL discovery rulings—"DR-22" and "DR-2." *Id.* at PageID #633148–633149.

## **STANDARD OF REVIEW**

The Court "may exercise its power to issue [a] writ" if it finds that the District Court committed a "clear abuse of discretion." *Cheney v. United States Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 383 (1953)). To obtain a writ, a party must satisfy three conditions: (1) the party "[must] have no other adequate means to attain the relief he desires," (2) the party must show "that [his] right to issuance of the writ is 'clear and indisputable,'" and (3) the issuing court "must be satisfied that the writ is appropriate under the circumstances." *Id.* at 380–81 (brackets in original) (citations omitted).

Although disqualification motions are reviewed generally for an abuse of discretion, this Court reviews *de novo* a district court's interpretation of an ethical rule. *Gen. Mill Supply Co. v. SCA Servs., Inc.*, 697 F.2d 704, 711 (6th Cir. 1982)

17

(holding in disqualification case that it is "appropriate to attack the ethical problem *de novo* rather than as review of a discretionary decision"); *accord In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). It reviews the district court's findings of fact for clear error. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). Because "[t]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar," a court should "not weigh the circumstances with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety . . . resolve all doubts in favor of disqualification." *Gordon*, 2009 WL 2732827, at *6.

The Supreme Court has confirmed that a party may seek relief from an erroneous ruling on a motion to disqualify counsel through a writ of mandamus. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 435 (1985) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 378 n.13 (1981)). Circuit courts agree that *Koller* "recognize[d] that a writ of mandamus . . . remains a proper means to consider an attorney disqualification order on an interlocutory basis." *In re Am. Cable Publ'ns, Inc.*, 768 F.2d 1194, 1195 (10th Cir. 1985); *accord In re Mechem*, 880 F.2d 872, 874 (6th Cir. 1989); *In re Am. Airlines, Inc.*, 972 F.2d 605, 608 (5th Cir. 1992).

18

*In re American Airlines* illustrates the principle. There, the Fifth Circuit issued a writ of mandamus requiring disqualification of counsel on less egregious facts than exist here. The appellate court agreed that the petitioner had "demonstrated the absence of an adequate alternative to mandamus review." 972 F.2d at 609. The court explained that "the nature and size of this litigation would seem to preclude effective appellate review upon final judgment." *Id.* The court also agreed that the dispute "raise[d] several questions pertaining to the proper interpretation of ethical standards in disqualification cases" and that "attorneys and clients throughout [the state] need the benefit of this Court's guidance on this issue of grave importance." *Id.* The court also reasoned that review was appropriate because the disqualification issue "was not a mere discretionary one but rather turns on legal questions appropriate for appellate review." *Id.* (citation omitted). The court held that the petitioner's right to reversal was clear and indisputable and "therefore issue[d] a writ of mandamus directing the district court to vacate its order." *Id.* at 628; *see also In re Am. Cable*, 768 F.2d at 1195 (granting mandamus writ to disqualify counsel).

## REASONS THE WRIT SHOULD ISSUE

This Court should issue a writ of mandamus because the District Court's order refusing to disqualify Motley Rice renders Rule 1.11(c) a nullity and encourages government lawyers to exploit their government service to benefit themselves and their private clients.

## I.  OPTUMRX HAS NO OTHER MEANS FOR OBTAINING RELIEF FROM THE DISTRICT COURT'S EGREGIOUSLY WRONG DECISION.

Unless this Court grants the writ now, OptumRx's "opportunity for meaningful review will perish." *Firestone Tire*, 449 U.S. at 377. For years, Motley Rice has had access to confidential information about OptumRx that the firm collected through its government service. If Motley Rice continues representing opioid plaintiffs against OptumRx in the MDL, it can drive the litigation strategy against OptumRx with that confidential information as a roadmap. And the cases have only just begun. The District Court selected the PBM bellwethers in October 2023. Motions to dismiss are pending, and discovery is in its early stages. With most of the litigation still to come, the specter of Motley Rice's continued unethical conduct looms large.

If this Court does not grant relief *now*, it will be *never*. OptumRx will have no meaningful remedy after a final appeal because the only way to cleanse the proceedings of Motley Rice's involvement would be to order the parties to start the litigation over from the beginning. But in such a sprawling case, a do-over would be virtually impossible.

## II. OPTUMRX'S RIGHT TO THE WRIT IS CLEAR AND INDISPUTABLE.

In denying OptumRx's motion, the District Court crafted an exception to Rule 1.11(c) that undermines the Rule—all to avoid disqualifying Motley Rice. OptumRx's right to the writ is "clear and indisputable." *Cheney*, 542 U.S. at 381.

### A. The District Court nullified Rule 1.11(c).

The District Court correctly held that Motley Rice was a "public officer" under Rule 1.11(c) when it investigated OptumRx on behalf of Hawaii, D.C., and Chicago and that the bellwether plaintiffs in this MDL are Motley Rice's "private clients" under Rule 1.11(c). R.5362, PageID #633141–633144. But it erred when it concluded that the documents that OptumRx produced to Motley Rice in the government investigations did not qualify as "confidential government information" because they could be obtained through "routine discovery" in the MDL. *Id.* at PageID #633148–633149. The court also erred when it concluded that Motley Rice could not use the information to OptumRx's material disadvantage in the MDL because—under the court's rewriting of its previous discovery orders—OptumRx should have produced those documents to all plaintiffs' counsel immediately after producing them to Motley Rice in the investigations. *Id.* at PageID #633149. Those holdings create an exception that swallows Rule 1.11(c) and flies in the face of the Rule's text and purpose—preventing government lawyers from using confidential

21

information gained through their government service for their or their private clients' gain.

    **1.**    **Through its government investigations, Motley Rice received confidential government information about OptumRx.**

Rule 1.11(c) defines "confidential government information" as "information that has been obtained under governmental authority and that, at the time this rule is applied, the government is prohibited by law from disclosing to the public or has a legal privilege not to disclose and that is not otherwise available to the public." The information that Motley Rice gathered by investigating OptumRx is confidential government information under Rule 1.11(c) because each "government is prohibited by law from disclosing [it] to the public" and the information "is not otherwise available to the public."[10] Ohio R. Prof'l Conduct 1.11(c).

*First*, each jurisdiction is prohibited by law and confidentiality agreements from disclosing to the public the information and documents OptumRx produced in the Motley Rice investigations. *E.g.*, Haw. Rev. Stat. § 480-18(j); D.C. Code § 2-534(a)(1); 5 Ill. Comp. Stat. 140/7(g). For example, the Hawaii confidentiality agreement limits Motley Rice's disclosure of confidential information to certain state and Motley Rice employees (R.5276-7, PageID #625644–625646 (¶ 4)) and

---

[10] As the District Court acknowledged, the information was also obtained "*pursuant to governmental authority*." R.5362, PageID #633142; *see* Ohio R. Prof'l Conduct 1.11(c).

requires that they use that information "solely in connection with the Investigation and any litigation that may arise therefrom" (*id.* at PageID #625643–625644 (¶ 2)). It also prohibits the use of the information "in connection with any other matter" and the disclosure of the information "to any party or the public." *Id.* Motley Rice also agreed "not to rely on Confidential Information in pursuing information or claims in any other matters outside of its representation of the State." *Id.* The D.C. and Chicago agreements include similar language. R.5276-12, PageID #625701–625703, 625704–625705 (¶¶ 4, 8–10); R.5276-17, PageID #625735–625737, 625738–625739 (¶¶ 3–4, 9, 11).

*Second*, the documents and information produced are not "otherwise available to the public." Ohio R. Prof'l Conduct 1.11(c). In response to various government subpoenas, OptumRx produced—directly to Motley Rice—a wide range of proprietary and competitively sensitive information that is not publicly available, including information about its formulary development, business strategies, negotiations, and rebate agreements with pharmaceutical manufacturers, and closely guarded financial data. The documents that OptumRx produced are "confidential internal or commercially sensitive documents" that "cover[] various aspect of OptumRx's business operations." R.5300-1, PageID #628122 (¶ 14). They are "highly confidential and commercially sensitive to OptumRx and are not available to the public." *Id.* at PageID #628128 (¶ 16). That is precisely the kind of information

23

that Rule 1.11(c) covers. *E.g.*, R.5276-18, PageID #625767–625775; *United States v. Villaspring Health Care Ctr., Inc.*, 2011 WL 5330790, at *6 (E.D. Ky. Nov. 7, 2011) (disqualifying lawyer under Kentucky's identical Rule 1.11(c) because "strategic insights, such as [the disqualified lawyer's] knowledge of the strengths and weaknesses of the evidence compiled against [the investigated company]," constituted confidential government information).

Ignoring Rule 1.11(c)'s text and those facts, the District Court turned ABA Formal Opinion 509 on its head to absolve Motley Rice from its continuing ethical violations. In that opinion, the ABA explained that "[w]hether government information is publicly available—e.g., whether it can be obtained through routine discovery—will be a question of fact." ABA Formal Op. 509 at 4. Cherry-picking two words ("routine discovery"), the District Court ruled that any information subject to civil discovery does not qualify as confidential government information. That was clear error. The ABA was referring to whether information can be obtained by the public *from the government*, not from private parties in civil litigation.

In its opinion, the ABA explained that the "conceptualization of 'confidential government information' [in Rule 1.11(c)] is analogous to the definition of 'nonpublic information' in 5 C.F.R. § 2635.703(b)," which "defines 'nonpublic information' as information that an employee obtains due to Federal employment and that he knows or reasonably should know: '(1) Is routinely exempt from

disclosure under 5 U.S.C. 552 [FOIA] or is protected from disclosure by statute, Executive order or regulation; (2) Is designated as confidential by an agency; or (3) has not actually been disseminated to the general public and is not authorized to be made available to the public on request.'" ABA Formal Op. at 4 n.13. It is undisputed that the information that OptumRx produced to Motley Rice is exempt from FOIA disclosure and that the confidentiality agreements prohibit Motley Rice from making the information public.

Beyond that, the word "routine" does not encompass documents produced under a protective order or confidentiality agreement. Rather, it means generally available to the public and not subject to confidential treatment.[11] Under the District Court's reading, "routine discovery" would encompass everything—save perhaps the nuclear codes—and the District Court never explained what would qualify as "non-routine" discovery. Since *everything* would be "available to the public" under the District Court's reading of Rule 1.11(c), *nothing* would be confidential government information. Government attorneys (and not just specially appointed ones) could investigate any party they choose and later sue those parties on behalf

---

[11] Of course, documents are not "public" simply because they are produced in civil discovery. *See, e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (materials obtained through civil discovery are not "a traditionally public source of information"); *Courier-Journal v. Marshall*, 828 F.2d 361, 364 (6th Cir. 1987) ("pretrial discovery . . . ordinarily proceeds as a private interchange between the parties, the fruits of which are not presumptively public").

of private clients. They could cite the District Court's opinion to argue that there is no Rule 1.11(c) violation because all the information they received while working for the government—and the legal strategies they developed with that information in hand—is subject to "routine discovery" in civil litigation.

That is not what Rule 1.11(c) or Formal Opinion 509 says. The Rule contains no "civil discovery" exception, and in its opinion, the ABA cited to numerous cases in which courts have disqualified counsel for having access to information that parties could obtain through discovery. *E.g.*, *id.* at 4 n.8–9, 5 n.11–12, 5 n.14, 6 n.15, 7 n.25, 9 n.27; *see Villaspring*, 2011 WL 5330790, at *6 ("strategic insights" from "interviewing [the] facility's former employees"); *Kronberg v. LaRouche*, 2010 WL 1443934, at *4 (E.D. Va. Apr. 9, 2010) ("structure" of the business and "the role of other individuals" who worked for the business); N.Y. State Bar Ass'n Comm. on Prof'l Ethics Op. 1187 (2020) ("information [a lawyer, also a police officer,] acquired that was non-public employment reviews of non-public discipline of police officers"); N.Y. State Bar Ass'n Comm. on Prof'l Ethics Op. 1169 (2019) ("information [a government lawyer] acquired as a Town Supervisor"); Neb. Ethics Advisory Op. for Lawyers No. 22-01 ("information [a government lawyer acquired] from a state-run database with information about individuals' financial status and past earnings"). Indeed, earlier in the MDL, the District Court disqualified a defendant's lawyer who, in former government service, had access to "information

concern[ing] the inadequate staffing levels, funding deficiencies, strategies, initiatives, operations, and allocation of resources"—all information that would have been obtainable through civil discovery. *In re Nat'l Prescription Opiate Litig.*, 2019 WL 1274555, at *4–5.

As OptumRx's experts explained, the District Court's approach to Rule 1.11(c)—urged by Motley Rice below—"would render the Rule meaningless" because "recipients of investigatory subpoenas would have no protection from that sort of government overreach if government lawyers could simply avoid Rule 1.11(c) altogether by merely requesting the information through discovery in a later case." R.5341-2, PageID #630312. In plain terms, the legal principle that the District Court adopted—that information obtained by government lawyers does not satisfy Rule 1.11(c) if it could later be (re)obtained in civil discovery—would eliminate a longstanding safeguard against abuse of government power.[12]

---

[12] The District Court also ignored other confidential information about OptumRx that Motley Rice gathered, focusing only on specific documents that OptumRx had produced. OptumRx wasn't the only subpoena recipient in those investigations. R.5288, PageID #626066; R.5288-4, PageID #626673 (¶ 18). Any other confidential information about OptumRx that Motley Rice obtained or created during its investigations qualifies as confidential government information under the Rule. The District Court said nothing about any of that.

### 2. Motley Rice could use the information to OptumRx's material disadvantage.

Motley Rice did what few government lawyers would consider doing: It began representing private plaintiffs in lawsuits against the very parties it had investigated using government power—and on related issues. Under Rule 1.11(c), the question is whether the information that Motley Rice obtained as government lawyers "*could* be used to the material disadvantage of [OptumRx]." Given the overlap between the bellwether plaintiffs' claims and the confidential government information that Motley Rice received, the answer is yes—and obviously so.

The produced information includes thousands of documents that describe OptumRx's work relating to opioids and opioid manufacturers, such as rebate agreements with manufacturers, documents relating to OptumRx's formulary development, and detailed rebate data relating to opioid manufacturers. R.5300-1, PageID #628121–628122 (¶ 13); R.5276-2, PageID #625579–625581 (¶¶ 7–9, 12–15); R.5276-3, PageID #625583 (¶¶ 7–8); R.5276-4, PageID #625587 (¶¶ 7–9). It also includes a wide range of documents (not specific to a particular drug) that provide insight into how OptumRx's business operates, such as emails from OptumRx employees' rebate negotiations with drug manufacturers, slide decks analyzing OptumRx's rebate initiatives and organization goals, and documents outlining OptumRx's pricing strategies and approach to contracting with manufacturers. R.5300-1, PageID #628122–628128 (¶ 15).

28

Those documents gave Motley Rice special access to information about the very aspects of OptumRx's business that Motley Rice now challenges for the bellwether plaintiffs. They allege that OptumRx colluded with drug manufacturers to "flood the market" with opioids because drug manufacturers paid rebates to OptumRx in exchange for favorable placement of their opioids on OptumRx's formularies. Armed with OptumRx's confidential information, Motley Rice can litigate those theories with a roadmap that the firm would not have *but for* its role in investigating OptumRx as government attorneys. Motley Rice can develop legal theories, craft search terms, shape discovery requests, identify custodians and witnesses, and drive expert strategy.

**3. Even the District Court suggested that without its erroneous "discovery" exception to Rule 1.11(c), Motley Rice should be disqualified.**

The District Court acknowledged that but for its decision to require OptumRx to produce into the MDL the documents it produced in the Motley Rice-led government investigations, it might have reached a different outcome: "[W]ere it not for the standing Repository obligations . . . , the Court's discussion and analysis in this Order might have been different." R.5362, PageID #633159. That proves the court's abuse of discretion. Rule 1.11(c) has never turned on what future discovery in civil litigation might look like. In concluding otherwise, the District Court jettisoned the Rule.

29

**B.    The District Court's ruling bears other marks of an abuse of discretion.**

Other aspects of the District Court's order confirm the court's abuse of discretion.

*First*, the court ignored the long-standing body of case law showing that Motley Rice's conduct violates Rule 1.11(c) and instead seized on an unpublished, rarely cited, and easily distinguishable opinion from the Southern District of Florida. R.5362, PageID #633147 (citing *Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 674 (S.D. Fla. 1993)). The court did not discuss or even mention *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d Cir. 1974), *Allied Realty of St. Paul, Inc. v. Exchange National Bank of Chicago*, 283 F. Supp. 464 (D. Minn. 1968), or *Hilo Metals Co. v. Learner Co.*, 258 F. Supp. 23 (D. Haw. 1966)—all of which explain the ethical problems that arise when government lawyers attempt to leverage their knowledge in related private litigation.

*Second*, the District Court improperly "weigh[ed]" the timing of OptumRx's motion, suggesting that OptumRx should have raised its disqualification motion as early as 2018. R.5362, PageID #633138–633140. But Motley Rice did not make that argument in briefing or at oral argument. And for good reason: It did not represent any MDL plaintiff suing OptumRx until December 2022 at the earliest. Before then, there was no case in which OptumRx could have sought Motley Rice's disqualification. For all OptumRx knew, Motley Rice intended to comply with its

30

ethical obligations and the confidentiality agreements that it signed. When it became clear that Motley Rice intended to litigate against OptumRx in the opioid MDL (notwithstanding Rule 1.11(c) and the signed confidentiality agreements), OptumRx promptly raised the ethical issue to the District Court. The District Court clearly abused its discretion by considering a supposed timing concern that no party raised and that had no factual basis in the record.

*Third*, the District Court improperly considered yet another irrelevant issue—OptumRx's document production obligations in the MDL. In concluding that OptumRx could not be materially disadvantaged by Motley Rice's continued representation of opioid plaintiffs in the MDL, the District Court cited its own "broad" discovery rulings, which it explained were "important procedures to promote the coordination and consolidation of the[] knotty cases" in the MDL— suggesting an "MDL exception" to the ethics rules. *Id.* at PageID #633149–633153. But those earlier discovery rulings—which are highly irregular even on their own terms—require reproduction into the MDL only of documents previously produced in any "government investigation . . . *regarding the marketing, sales, distribution or dispensing of Opioids*." R.2576, PageID #412971 (emphasis added). In other words, the obligation covers only documents produced in "opioid-related" investigations (R.3291, PageID #493105) or in an "opioid-related forum" (R.3699, PageID #510922). Motley Rice conceded that the Hawaii, D.C., and Chicago investigations

were not opioid related even as OptumRx produced information about opioids, insulin, and other drugs. R.5300, PageID #628109–628110; R.5341, PageID #630291–630293. The District Court nevertheless retroactively expanded its rulings to cover all opioid-related materials no matter how untethered the underlying proceeding or investigation is to opioids. R.5362, PageID #633149–633155. That the District Court saved Motley Rice by forcing OptumRx to produce discovery in the MDL is remarkable. No court has ever done that before.[13]

## III. THE WRIT IS VITAL TO PRESERVING A LONGSTANDING CHECK ON THE ABUSE OF GOVERNMENT POWER.

A writ of mandamus requiring disqualification of Motley Rice is not merely "appropriate under the circumstances." *Cheney*, 542 U.S. at 381. It is crucial to preserving the continued vitality of a longstanding ethical rule that protects litigants from exploitation by government lawyers.

Mandamus relief is appropriate "for questions of unusual importance necessary to the economical and efficient administration of justice or important issues of first impression." *In re United States*, 32 F.4th 584, 597 (6th Cir. 2022) (citation omitted). It is difficult to imagine a question of more "unusual importance"

---

[13] OptumRx was not in active litigation in the MDL until late 2022 and was not party to the proceedings that yielded the discovery rulings in question. But even if it had been, Motley Rice received confidential government information from OptumRx before OptumRx could have ever produced the same information in the MDL. The District Court ignored that reality.

to the administration of justice than whether the ethical rules permit Motley Rice's conduct.

Motley Rice's violation of Rule 1.11(c) is not a mere foot fault; it is central to the firm's business model. Motley Rice's website touts the firm's role as both an investigator and private plaintiff, advertising that its "Public Client practice is dedicated to supporting public entities in investigations and litigation" and has "the resources and experience in complex litigation and resolutions to assist government lawyers."[14] In the wake of the District Court's holding that Motley Rice is a "public officer" when appointed by state attorneys general but represents "private clients" in its private practice, Joe Rice commented that Motley Rice would "have to make adjustments" to its practice and "discuss it with [its] ethics advisers and . . . with AGs."[15]

Mandamus is also appropriate "to further supervisory and instructional goals, and where issues are unsettled and important." *United States v. Bertoli*, 994 F.2d 1002, 1014 (3d Cir. 1993). Guidance like the Second Circuit provided years ago in *General Motors* is needed here. There, the Second Circuit reversed a district court

---

[14] *Public Client Litigation Area*, Motley Rice, https://www.motleyrice.com/public-client (last visited Apr. 10, 2024).

[15] Alison Frankel, *Opioids Judge Won't Oust Motley Rice But Casts Cloud Over 'Public Client' Business*, Reuters (Mar. 19, 2024), https://www.reuters.com/legal/government/column-opioids-judge-wont-oust-motley-rice-casts-cloud-over-public-client-2024-03-19/.

and disqualified a plaintiffs' lawyer in a contingency-fee antitrust suit by the City of New York against General Motors because the lawyer had previously investigated GM in similar matters as a DOJ attorney. 501 F.2d at 648–52. Writing for the court, Judge Kaufman rejected the argument that disqualification was unnecessary because the lawyer remained on the same side of the matter: "[T]here lurks great potential for lucrative returns in following into private practice the course already charted with the aid of governmental resources." *Id.* at 650.

Judge Kaufman's wisdom applies with the same force today as it did fifty years ago. Indeed, it underpins Rule 1.11(c). The District Court's decision would confine that wisdom to the dustbin of history. This Court should prevent that result.

## **CONCLUSION**

The Court should grant the writ and order the District Court to disqualify Motley Rice and its attorneys from participating in any pending or future MDL opioid cases involving OptumRx.

May 7, 2024.

Respectfully submitted,

 */s/ Brian D. Boone*
Brian D. Boone
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel.: (704) 444-1000
brian.boone@alston.com

William H. Jordan
D. Andrew Hatchett
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for Petitioner-Defendant*
*OptumRx, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This petition complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because it contains fewer than 7,800 words, excluding the accompanying documents required by Rule 21(a)(2)(C).

This petition complies with the requirements of Fed. R. App. P. 32(c)(2) and Fed. R. App. P. 32(a) because it has been prepared using Microsoft Word for Microsoft 365 in Times New Roman, 14-point font.

*/s/ Brian D. Boone*
Brian D. Boone

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 7, 2024, the foregoing was filed electronically with the Clerk of Court using the Court's CM/ECF system.

I further certify that on May 7, 2024, a copy of the foregoing was served upon the District Court and on Plaintiffs' Counsel by email. A paper copy will be mailed to the District Court on May 7, 2024.

 */s/ Brian D. Boone*
Brian D. Boone