**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>All Cases | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

## PEC'S CONSOLIDATED REPLY IN FURTHER SUPPORT OF MOTION TO LIFT MORATORIUM ON SUBSTANTIVE FILINGS TO PERMIT PLAINTIFFS TO FILE MOTIONS FOR LEAVE TO AMEND TO ADD DEFENDANTS

The PEC submits this Reply in support of its Motion to Lift the Moratorium to address Defendants' misapprehension of the PEC's motion, and to propose a manageable approach to addressing plaintiffs' motions to amend for good cause shown, should the Court lift the stay at this important juncture. Various groups of defendants have filed three responses to the PEC's motion: (1) the PBMs take no position on lifting the moratorium, but request an abbreviated briefing schedule; (2) certain other defendants ("Opposing Defendants") oppose the lifting of the moratorium; and (3) yet a third group of Defendants ("Settling Defendants") submit that they have reached global settlements of the claims against them so the motion is moot as to them. The PEC here responds to the PBMs and the Opposing Defendants.[1] Both groups of Defendants badly misunderstand the PEC's motion, as both assume (the Opposing Defendants explicitly and the PBMs implicitly) that the PEC seeks to file a single omnibus motion for leave to amend complaints. But the PEC's motion is styled as one to permit plaintiff*s* (plural) to file motion*s*

---

[1] The PEC does not agree that the motion is moot as to the Settling Defendants. The terms of the settlements that have been announced are still being negotiated. At this juncture, motions for leave to amend that would seek to add, *inter alia*, the Settling Defendants, to cases in which they are not currently named are not beyond the scope of relief contemplated here.

(plural) – it was never envisioned the Court could grant leave to all plaintiffs based on a single omnibus motion.  For this reason, and as discussed in more detail below, the PBM's proposed briefing schedule is unworkable.  As described below, the PEC provides an alternative proposal more suited to balance the need for efficient case management with the requirements for individualized determinations.

Opposing Defendants also argue that the moratorium should not be lifted at all and that only bellwether plaintiffs should (apparently ever) be permitted to amend their pleadings.  But this position is inconsistent with the Federal Rules, with Sixth Circuit precedent, with this Court's Case Management Orders, and with the need for orderly sequenced resolution of these cases.  Now that most of the Defendants in the first eleven case tracks have entered into settlements, it is entirely appropriate for this Court to turn to global resolution (whether by litigation or settlement) of claims against the remaining defendants.  To that end, it is precisely now that any plaintiff that can meet the "good cause" standard established by the Federal Rules and the Sixth Circuit for amending a complaint should be given the opportunity to do so.  The motion to lift the moratorium should be granted and the Court should establish a sequenced briefing procedure as described below in order to allow plaintiffs to make the requisite showing why they should be granted leave to amend their complaints.

**I.    THE COURT SHOULD LIFT THE MORATORIUM TO ALLOW PLAINTIFFS TO SEEK LEAVE TO AMEND**

The Opposing Defendants offer two arguments why leave to amend should not be granted; neither has merit.

First, the Opposing Defendants argue that the CMOs in this case limit amendments to bellwether cases only and that because no CMO provides for later amendment, such amendment is precluded.  This argument ignores both the language of Rule 16 and the holding of the Sixth

Circuit in *In re Nat'l Prescription Opiate Litig*. (*In re: Meijer, Inc.*), No. 21-4051, 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022).  Rule 16 provides that the court must issue a scheduling order and that the order must "limit the time to join other parties, [and] amend the pleadings. . . ." Fed. R. Civ. P. 16(b)(1), (b)(3).  The rule further provides that "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  In this case, the Court's scheduling order set different deadlines for different categories of cases:  (1) a defined deadline for cases that were already in the MDL at the time the scheduling order was issued; (2) a relative deadline for cases subsequently transferred into the MDL based on the date of transfer; and (3) an opportunity to amend when and if a case was selected as a bellwether.  Amendments within any of these time frames are within the scheduling order and do not require modification of the schedule.  Thus, in *Meijer*, the Sixth Circuit recognized that a plaintiff need not show good cause to amend its complaint upon its selection as a bellwether, because in that circumstance it is amending *within,* not beyond, the time set in the CMO.  *Meijer*, 2022 WL 20701236, at *1 ("because the district court's scheduling order permitted such amendment from the outset, plaintiffs did not need the district court's leave to amend.").

Only when a plaintiff seeks to amend beyond the date set in the CMO does Rule 16 require leave of court upon a showing of good cause.  *In re Nat'l Prescription Opiate Litig*., 956 F.3d 838, 843 (6th Cir. 2020) (requiring a showing of good cause to amend because the deadline in the CMO had passed).  Thus, the deadlines in CMO1 do not preclude, but rather are the predicate for, plaintiffs' motions for leave to amend upon a showing of good cause.  It is because plaintiffs are seeking a modification of the scheduling order that they are asking for the opportunity to show

3

good cause.[2]  Nothing in the scheduling order overrides – or could override – Rule 16's instruction as to how a plaintiff may seek to modify a scheduling order.  Although Opposing Defendants spend much ink insisting that a showing of good cause must be made in a specific case, they ignore that the Court may no more make a generic decision that *no* plaintiff can ever show good cause to amend than it could make a generic, MDL-wide decision that all plaintiffs may amend.  It is for this reason that the PEC asks the Court to lift the moratorium so that the Court may consider the question in the context of specific cases.

Second, the Opposing Defendants argue that at this point in the proceedings, this MDL should be narrowed, not expanded.  Opposing Defendants are wrong; indeed, they have it exactly backwards.  In order to manage this MDL, this Court, of necessity, sequenced discovery and bellwether trials, focusing first on the manufacturers and distributors that had been sued by the largest numbers of plaintiffs, then on the largest chain pharmacies.  During that time, all other cases, including cases in which PBMs and Tier 2 and Tier 3 defendants were sued, were stayed to allow the parties (and the Court) to focus on the earlier case tracks.  Without such sequencing, this MDL – which involves not only multiple defendants, but multiple *categories* of defendants – could never have been managed and would not have led to the resolutions with so many defendants.

Once those cases were resolved, the Court turned its attention to the remainder of the cases in the MDL, in particular cases against PBMs and Tier 2 and Tier 3 defendants.  *Now* is precisely the time for claims against those defendants (as well as against other non-settling defendants such as Publix and Albertsons) to be addressed.  Indeed, if not now, when?  Previously, the Court and the PEC were occupied with other cases in the MDL and surely Opposing Defendants do not

---

[2] The PEC notes that, without the moratorium, plaintiffs could simply file their motions for leave and make their good cause showing, as envisioned in Rule 16.

suggest that some later time will be more appropriate.  In order for the Court to address the claims against these remaining defendants, however, the parties must be able to assess the universe of cases that exist against them.  Without knowing how many such cases there are, no resolution will actually put the claims against the remaining defendants to rest.  This is especially true because of another unusual feature of this MDL: because the nuisance over which the governmental plaintiffs are suing continues, new claims brought by most plaintiffs are not time-barred.  Plaintiffs who are precluded from amending their complaints in this MDL are not precluded from filing new lawsuits against these defendants in other fora.  If the Court does not at least consider the possibility of these new claims being brought into this MDL, many of those claims will simply be brought elsewhere, thus defeating the purpose of the centralized and coordinated management that is the hallmark efficiency of an MDL.  Thus, to the extent that allowing plaintiffs who meet the standards of Rule 16 to amend their complaints and add new defendants will expand the MDL, such expansion will serve to aid in final resolution by assisting the parties and the Court in understanding the scope of the remaining claims.  On the other hand, pretending that the claims not yet asserted in these proceedings do not exist will not help the parties or the Court bring the opioid litigation to a close.

**II.    THE COURT SHOULD SET A SEQUENCED SCHEDULE FOR THE EFFICIENT MANAGEMENT OF MOTIONS FOR LEAVE TO AMEND**

The PBMs propose that the PEC be required to "file its motion. . . within 30 days after the Court's order granting the PEC's motion to lift the moratorium."  As the Opposing Defendants point out, however, a single motion by the PEC is not an appropriate mechanism for determining whether any of the plaintiffs in this MDL may amend their pleadings at this time.  Indeed, the PEC's motion specifically noted that "many plaintiffs can meet the requirements of Rule 15 and 16" and asked that they be given an opportunity to do so; the PEC clearly asked for leave to allow

5

multiple plaintiffs to file multiple motions.  The Opposing Defendants' argument that a single omnibus motion would be improper is thus irrelevant, as the face of the PEC's motion shows that is not what the PEC has asked for.

The PBMs' proposal is predicated on the same misreading of the motion as the Opposing Defendants and is not feasible or practical.  The PBM Defendants assume that the PEC will file a single omnibus motion and that this single motion can and should be prepared and filed within 30 days.  But it may be that hundreds of plaintiffs will wish to amend their pleadings.  To require all of these plaintiffs to file in such a short time-frame – many governmental entities are subject to time-consuming approval procedures before a lawsuit can be authorized – is not feasible.  Nor would it be practical or consistent with efficient case management for this Court to consider simultaneously motions from every plaintiff who may wish to seek leave to amend.  Rather, as described below, a phased approach will be more efficient and manageable for the Court.

This is so because, although leave must be granted in a particular case based on the circumstances of that case, it is also true that many of the plaintiffs in this MDL are similarly situated.  Once the Court has made individualized findings with respect to a small number of plaintiffs, it may be possible for other plaintiffs to make more streamlined showings that one or more of the prior rulings applies with equal force to them.  That is to say that while a single omnibus motion is not appropriate, a categorical approach most likely will be.  This Court need not rule on the identical facts 500 times, although the PEC recognizes that plaintiffs will need to demonstrate that the facts of their situation are sufficiently similar to (or distinct from) facts that the Court has already addressed.

For this reason, the PEC proposes a phased approach to the filing of motions for leave to amend.  In the first phase, ten plaintiffs would file motions for leave to amend within 60 days of

6

the Court's lifting of the moratorium. After the Court has ruled on these ten, the parties and the Court will be in a position to address the second phase, in which additional plaintiffs will be given the opportunity individually to demonstrate why the prior rulings do or do not compel the same result in their cases. The Court's rulings themselves will help identify the discrete categories, or particular fact-patterns, for which leave to amend is or is not appropriate, and what those categories are. To the extent that the initial rulings demonstrate fact-patterns where good cause to amend will not be found, plaintiffs can be guided by those rulings so that there may be fewer filings in phase two than would be the case if all plaintiffs had to file their motions at the same time. But all plaintiffs with meritorious arguments for leave to amend will have the opportunity to demonstrate good cause, either in the first phase, or in the more streamlined second phase, guided by the Court's initial rulings. In this way, the burden on the Court and the parties will be limited and manageable.

## CONCLUSION

For the foregoing reasons, this Court should lift the moratorium on filings to allow plaintiffs to file motions for leave to amend in order to add additional defendants (from among those already named in other cases in the MDL) to their actions. The Court should lift the moratorium in two phases, first allowing ten plaintiffs to seek leave to amend within 60 days of the Court's order lifting the moratorium, with a second phase to follow, the contours of and deadlines for which will be determined following the Court's rulings on the first ten motions.

Dated: May 13, 2024            Respectfully submitted,

                                                   Jayne Conroy
                                                   SIMMONS HANLY CONROY
                                                   112 Madison Avenue, 7th Floor
                                                   New York, NY 10016
                                                   (212) 784-6400
                                                   (212) 213-5949 (Fax)
                                                   jconroy@simmonsfirm.com

        Joseph F. Rice
        MOTLEY RICE LLC
        28 Bridgeside Blvd.
        Mt. Pleasant, SC 29464
        (843) 216-9000
        (843) 216-9290 (Fax)
        jrice@motleyrice.com

        Paul T. Farrell, Jr., Esq.
        FARRELL & FULLER LLC
        270 Munoz Rivera Avenue, Suite 201
        San Juan, PR  00918
        (304) 654-8281
        paul@farrellfuller.com

        *Plaintiffs' Co-Lead Counsel*


        */s/Peter H. Weinberger*
        Peter H. Weinberger (0022076)
        SPANGENBERG SHIBLEY &LIBER
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH 44114
        (216) 696-3232
        (216) 696-3924 (Fax)
        pweinberger@spanglaw.com

        *Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on May 13, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

        */s/Peter H. Weinberger*
        Peter H. Weinberger