# EXHIBIT 3

```
 1              IN THE UNITED STATES DISTRICT COURT

 2               FOR THE NORTHERN DISTRICT OF OHIO

 3                        EASTERN DIVISION

 4                           - - -

 5   IN RE: NATIONAL PRESCRIPTION : MDL NO. 2804
     OPIATE LITIGATION           :
 6   ─────────────────────────────:
                                  :
 7   THIS DOCUMENT RELATES TO:    : Case No. 17-md-2804
                                  : Judge Dan A. Polster
 8   Case Track 8                 :
                                  :
 9   ─────────────────────────────:

10              Friday, December 2, 2022

11                HIGHLY CONFIDENTIAL
        SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
12

13            Remote videotaped deposition of

14   KATHERINE S. LEONARD, commencing at 9:05 a.m., on the

15   above date, before Carol A. Kirk, Registered Merit

16   Reporter, Certified Shorthand Reporter, and Notary

17   Public.

18

19

20

21

22

23            GOLKOW LITIGATION SERVICES
          877.370.3377 ph | 917.591.5672 fax
24                 deps@golkow.com
```

```
 1          R E M O T E   A P P E A R A N C E S

 2                      - - -

 3   On behalf of the Plaintiffs:

 4          SIMMONS HANLY CONROY
            BY:  SARAH BURNS, ESQUIRE
 5               sburns@simmonsfirm.com
            One Court Street
 6          Alton, Illinois  62002
            618-693-3104
 7
            SIMMONS HANLY CONROY
 8          BY:  ELLYN HURD, ESQUIRE
                 ehurd@simmonsfirm.com
 9          112 Madison Avenue, 7th Floor
            New York, New York  10016
10          212-257-8482

11
     On behalf of Defendant Publix Super Markets, Inc.:
12
            BARNES & THORNBURG LLP
13          BY:  MEREDITH THORNBURGH WHITE, ESQUIRE
                 meredith.white@btlaw.com
14          11 South Meridian Street
            Indianapolis, Indiana  46204
15          317-231-6417

16

17

18   ALSO PRESENT:

19          Brannen Wilson, Publix
            Bill Geigert, Videographer
20          Gina Veldman, Trial Tech

21

22

23

24
```

```
 1                  INDEX TO EXAMINATION

 2   WITNESS                                      PAGE

 3   KATHERINE S. LEONARD

 4        CROSS-EXAMINATION BY MS. BURNS              7

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

INDEX TO EXHIBITS

| LEONARD | DESCRIPTION | PAGE |
| --- | --- | --- |
| Exhibit 1 | LinkedIn Profile for Kathy Leonard | 23 |
| Exhibit 2 | Personnel file for Katherine Leonard, PUBLIX-MDLT8-00149314 through 149648 | 55 |
| Exhibit 3 | E-mail to D. Santaniello from K. Leonard, dated 5/29/2019, with attachment Bates-stamped PUBLIX-MDLT8-00132823 through 132863 | 80 |
| Exhibit 4 | Article from Comprehensive Review Pain titled "Rates of opioid misuse, abuse, and addiction in chronic pain:  a systematic review and data synthesis" | 131 |
| Exhibit 5 | E-mail string ending with an e-mail to K. Leonard from K. Leonard, dated 3/26/2021, with attachment, Bates-stamped PUBLIX-MDLT8-00115817 through 115821 | 151 |
| Exhibit 6 | E-mail to C. Madill to Pharmacy Stores, dated 4/7/2021, Bates-stamped PUBLIX-MDLT8-00115907 through 115914 | 172 |
| Exhibit 7 | E-mail string ending with an e-mail to K. Leonard from E. Phillips, dated 4/13/2021, Bates-stamped PUBLIX-MDLT8-00083964 through 83967 | 189 |
| Exhibit 8 | E-mail to D. Rusk and K. Petti from K. Leonard, dated 3/31/2021, Bates-stamped PUBLIX-MDLT8-00116136 | 194 |

```
 1                    INDEX TO EXHIBITS (CONT'D)

 2      LEONARD            DESCRIPTION                       PAGE

 3      Exhibit 9          E-mail to C. Madill and others    199
                           from K. Skatzes, dated
 4                         4/15/2021, Bates-stamped
                           PUBLIX-MDLT8-00115835 and
 5                         115836

 6      Exhibit 10         PowerPoint titled "Publix         208
                           Opioid Task Force,"
 7                         Bates-stamped P-PUB-0728

 8      Exhibit 11         Video Hour Invite podcast,        245
                           Episode 4, featuring Dr. Kathy
 9                         Leonard of Publix

10      Exhibit 12         NSU College of Pharmacy video     250

11      Exhibit 13         E-mail string ending with an      252
                           e-mail to S. Klicker and
12                         others, dated 4/28/2019, with
                           attachment, Bates-stamped
13                         P-PUB-0729, PUBLIX-MDLT8-
                           00115771
14
        Exhibit 14         Dain Rusk video                   257
15

16

17

18

19

20

21

22

23

24
```

```
 1                    - - -

 2              P R O C E E D I N G S

 3                    - - -

 4          THE VIDEOGRAPHER:  Good morning.

 5      We are now on the record.  My name is

 6      Bill Geigert.  I'm a videographer for

 7      Golkow Litigation Services.

 8              Today's date is December 2, 2022,

 9      and the time is 9:05 a.m.  This remote

10      video deposition is being held in the

11      matter of National Prescription Opiate

12      Litigation for the United States

13      District Court for the Northern District

14      of Ohio, Eastern Division.

15              The deponent is Kathy Leonard.

16              All parties to this deposition are

17      appearing remotely and have agreed to

18      the witness being sworn in remotely.

19              Due to the nature of remote

20      reporting, please pause briefly before

21      speaking to ensure all parties are heard

22      completely.

23              All counsel will be noted on the

24      stenographic record.
```

```
 1                  The court reporter is Carol Kirk,

 2            and she will now swear in the witness.

 3                  - - -

 4                  KATHERINE S. LEONARD

 5    being by me first duly sworn, as hereinafter

 6    certified, deposes and says as follows:

 7                  CROSS-EXAMINATION

 8    BY MS. BURNS:

 9         Q.    Good morning, Ms. Leonard.  My

10    name is Sarah Burns.  We met briefly off the

11    record before this deposition.  I represent

12    plaintiff, Cobb County, and other plaintiffs

13    around the country in this litigation.

14                  May I -- would you please state

15    your full name and spell your full name for the

16    record.

17         A.    Sure.  My full name is Katherine,

18    K-a-t-h-e-r-i-n-e, middle name is Schroder,

19    S-c-h-r-o-d-e-r, and my last name is Leonard,

20    L-e-o-n-a-r-d.

21         Q.    Have you gone by any other names

22    during the course of your career at Publix?

23         A.    Yes, I have gone by other names in

24    the course of my career at Publix.
```

1          A.      Yeah, Publix has opened more

2    stores since 2019.  In the time that this

3    PowerPoint was presented, that was the number of

4    Publix pharmacies which differs from the number

5    of Publix stores.

6          Q.      And about how many Publix

7    pharmacies does Publix operate currently?

8          A.      Currently, I would say 1,200

9    and -- maybe 1,232.

10          Q.      And earlier you testified that

11    during your time as a pharmacy supervisor, that

12    each pharmacy employed two -- usually employed

13    two pharmacists.

14                  Is that the case today?

15          A.      It's still the standard for the

16    pharmacy business, depending on individual

17    business at a location.  If volume is higher,

18    they may earn additional overlap pharmacist

19    hours or an additional pharmacist at their

20    location.  As business grows, more labor is put

21    into those stores.

22          Q.      But the standard is two

23    pharmacists per store, correct?

24          A.      It's based off of business.  So

1  had paper or something, but I'm not certain.

2       Q.    Where would you look to determine

3  if you have notes of this meeting?

4       A.    I would look in my e-mail.

5       Q.    And were there subsequent meetings

6  after this one of the opioid task force?

7       A.    Not that I recall.

8       Q.    So this was the first and only

9  meeting of the opioid task force?

10      A.    That is my recollection.  Yes.

11      Q.    Did Marlena Kelley or Patrick

12  Cashman (inaudible) at this meeting?

13      A.    You broke up, Sarah.  Can you

14  repeat that?

15      Q.    Did Marlena Kelley or

16  Patrick Cashman speak during the opioid task

17  force portion of this meeting?

18      A.    I think the meeting was a

19  discussion.  I think Kim kind of took the lead

20  on expressing her thoughts like she had done

21  previously at the advocacy meeting, and I think

22  it was a discussion from that that all of the

23  attendees, to some degree, would have

24  participated.  I don't remember specifics.

1                    Marlena and Patrick don't stand

2    out to me as much in my memory as Kim, but that

3    may just be because it was her initial feedback

4    as well.  But I don't have full recollection of

5    that meeting and who presented what or the

6    extent of time that they took up in that

7    two-hour time slot.

8          Q.    Were there any action items

9    created as a result of the opioid task force

10   portion of this meeting?

11         A.    I don't recall specific action

12   items that came out as a result.

13         Q.    Were there any follow-up items

14   developed as a result of the opioid task force

15   portion of this meeting?

16         A.    I don't recall any specific

17   follow-up action items.

18         Q.    Were there any projects planned as

19   a result of the opioid task force portion of

20   this meeting?

21         A.    I don't recall.

22         Q.    Were there any materials presented

23   during the course of the opioid task force

24   portion of this meeting?

1          A.     I recall this as being a

2     discussion led by Kim, and then open discussion

3     amongst a group of pharmacists.

4          Q.     You do not recall any materials

5     being presented as a part of the opioid task

6     force portion of this meeting?

7          A.     I do not have documents.  I

8     remember it being a discussion that was led by

9     Kim, and then a discussion with -- I'm sorry --

10    with a group of attendees that at all levels are

11    pharmacists.

12               So when I say a group of

13    pharmacists having the discussion, I'm not just

14    referring to Kim, Marlena, and Patrick.  It was

15    a discussion for that whole group of

16    pharmacists.

17         Q.     Yeah, I'm not asking if you have

18    any documents pertaining to this meeting.  I'm

19    asking you if you recall any documents being

20    shown or distributed at this meeting.

21         A.     I do not.

22         Q.     Do you recall if Kim Barnard,

23    Marlena Kelley, or Patrick Cashman ever gave any

24    other presentations or discussions as part of

1    their roles as members of the Publix opioid task

2    force?

3           A.    I'm not aware of any.

4           Q.    Did you assign them to give any

5    presentations or participate in any discussions

6    as members of Publix opioid task force?

7           A.    I did not give them that direction

8    or any assignment to present any further.

9           Q.    Are you aware of them giving any

10   presentations or participating in any

11   discussions as members of Publix opioid task

12   force?

13          A.    I feel like that's the same

14   question.  Did I miss something in that?  Can

15   you repeat that?  That's not the same question

16   you just asked me?

17          Q.    No.  The question I asked you

18   previously was whether you assigned them to give

19   any discussions or presentations.

20                I'm asking you if you are aware of

21   any discussions or presentations.

22          A.    I'm not.

23          Q.    Okay.  Do you know if there's a

24   different Publix opioid task force anywhere

1    other than the one that first met on May 5,

2    2021?

3           A.    I am not aware of anything beyond

4    this team that I put together, I named, to give

5    them a platform for collaboration as

6    pharmacists.

7           Q.    Is Kim Barnard still with Publix?

8           A.    Yes.  Kim Barnard is still with

9    Publix.

10          Q.    Is Marlena Kelley still with

11   Publix?

12          A.    She is still with Publix.

13          Q.    Is Patrick Cashman still with

14   Publix?

15          A.    Yeah, Patrick Cashman is still

16   with Publix.

17          Q.    Is there an official date that the

18   Publix opioid task force disbanded.

19          A.    I don't know that it was that

20   formal for me to know I needed to disband

21   something.  I think I named it something that

22   would seem important to the members that are on

23   it.  So I thought that had a strong -- it was a

24   strong title.

1          But to me, it was taking feedback

2     from one, giving her the opportunity to

3     collaborate with other pharmacists and present

4     to me where she felt any additional information

5     is needed on top of what we already do.

6          And in that presentation, felt

7     more like it was trying to create a new role for

8     Kim or for one individual based on what was

9     presented.  In my opinion, we have more

10    resources across our company that are focused on

11    that.

12         Kim just doesn't have the same

13    range of view because she's in one store.  So I

14    didn't -- I didn't feel the need to continue it

15    based on the feedback that I -- that was

16    presented in that meeting.

17         Q.    Did you consider continuing the

18    opioid task force but not including Kim Barnard

19    as part of the task force?

20         A.    No.  That was never a

21    consideration.  There just -- I didn't see the

22    need to continue.

23         Q.    You didn't see a need to continue

24    the opioid task force?

1          A.    Yeah.  Based on what was

2    presented, there were things that we were

3    already doing in our stores on a bigger scale

4    than what was presented.  So I didn't think that

5    that was the right direction to go, to single it

6    out to Kim.  I felt like we had strong resources

7    across, you know, our states with our

8    supervisors that are pharmacists.

9                    - - -

10       (Leonard Deposition Exhibit 10 marked.)

11                   - - -

12   BY MS. BURNS:

13         Q.    Okay.  Let's take a look at

14   P-PUB-728.

15              Does this document look familiar

16   to you?

17              MS. WHITE:  Hold on one second.

18         I'm just getting -- moving it over here.

19         I didn't want to open anything that I

20         wasn't supposed to open.

21              Okay.  I'm good.

22         A.    This I feel like I saw as part

23   of -- I've seen it.  Yes, I've seen this.

24         Q.    You've seen this.  And did you see

1    someone else.  You're a licensed professional

2    who can make that decision.

3                   I think she's implying that when

4    that conversation is a difficult conversation to

5    have or maybe a refusal to fill, that you have

6    that support, and I believe our teams do.

7                   Q.    And then let's look at the end

8    goal here.  "The pharmacist dispensing the

9    at-risk medications (or to the at-risk patient)

10   should document the interactions so well that

11   anyone coming behind them will not have any

12   reason to question their decision.  This would

13   include other pharmacists, supervisors, DEA

14   agents, or state inspectors."

15                   Do you agree with that statement?

16                   A.    I'm not opposed to documentation,

17   but how things are documented and in what way

18   can be equally as damaging, if it's not conveyed

19   in the right way, or could prevent care for a

20   patient that hasn't been well thought out.

21                   So additional feedback in a note

22   by one pharmacist, I don't want that to be

23   automatically applied and affect the judgment of

24   the next pharmacist because that pharmacist

1   claims X, Y, or Z about a patient.  I want it to

2   be the individual judgment of a pharmacist.

3              So I am not opposed to

4   documentation.  It's not a requirement.  I still

5   emphasize the fact that a trained professional

6   pharmacist has the ability to have a

7   conversation with the patient and arrive at

8   those decisions and without a requirement of

9   documenting every detail of that conversation

10  that led them to their decision to fill or not.

11                   - - -

12     (Leonard Deposition Exhibit 11 marked.)

13                   - - -

14  BY MS. BURNS:

15         Q.    Okay.  We can finish with this

16  document.

17              We are going to move -- we are

18  going to completely change what we're doing here

19  and Gina is going to put up P-PUB-732, which is

20  not in your box or in front of you because it's

21  a video.  So it's like in school when all the

22  kids get really excited because the AV part

23  rolls in.

24              So quickly I'm just going to ask

```
1    video?

2            A.     I did not help him put together

3    the video.

4            Q.     Have you seen the video?

5            A.     I have seen the video.

6                          - - -

7        (Leonard Deposition Exhibit 14 marked.)

8                          - - -

9                MS. BURNS:  Okay.  Let's watch the

10               video.

11                   (The following video clip was

12               played.)

13                   "Dain Rusk:  Good morning or

14               afternoon for those of you that are

15               attending the afternoon managers

16               meetings.

17                   "It's been about six months since

18               I last had the opportunity to talk to

19               you prior to our last managers meeting,

20               but I really wanted to take some time to

21               really talk about all the great things

22               that we've accomplished in 2018 and even

23               in the past six months.

24                   "And first and foremost, what I
```

1          would tell you is that what I'm so proud

2          of and the greatest accomplishment that

3          I think that we've had is we ended 2018

4          with Publix pharmacy being the number

5          one pharmacy chain in the industry.

6              "That's an amazing accomplishment

7          and congratulations to each one of you

8          as well as your teams for achieving

9          something that probably never felt like

10         could be achieved in the first place.

11             "And I would tell you we've become

12         the envy of our competition.  Publix

13         pharmacy was the number one performing

14         pharmacy in terms of sales and

15         prescriptions for all of 2018."

16             (Video stopped.)

17    BY MS. BURNS:

18         Q.    Ms. Leonard, is that Dain Rusk on

19    the screen in front of us?

20         A.    That is Dain Rusk on the screen in

21    front of us.

22         Q.    And is Mr. Rusk currently the vice

23    president of pharmacy at Publix?

24         A.    Yes, he is currently the vice

1    president.

2          Q.    And was he the vice president of

3    Publix at the time this video was shown to

4    pharmacy managers back in the second quarter of

5    2019?

6                MS. WHITE:  Object to form.

7          A.    He was the vice president of

8    pharmacy, not of Publix, but Publix pharmacy.

9                But this also isn't the video that

10   I was thinking.  This was not, I don't believe,

11   his introductory video.  And he referenced that

12   almost like this was a second video.  So my year

13   of his first introduction -- this doesn't sound

14   like the first introductory video that he did.

15   So this may be the second one.

16                So my -- when he started may be

17   off by a year, because I feel like he did that

18   when he first started.  It was well received, so

19   I think this is him doing it again when we

20   asked.

21          Q.    Have you seen this second video

22   before?

23          A.    I have seen this video.

24          Q.    And do you happen to know where if

1      with hard work and effort on each one of

2      you.

3          "As you recall from our last

4      meeting, we talked about how we were

5      going to narrow our focus and really

6      focus on those things that matter the

7      most so we could drive our business to

8      be more successful, to be more

9      foundationally sound is what I would

10     say.

11         "And it's a testament to you and

12     your teams that we did exactly that.  We

13     had the best performing year of Publix's

14     pharmacy in 2018.  We ended 2018 at

15     $3.6 billion.  That's the most

16     successful year that we've ever had at

17     Publix pharmacy.

18         "And, again, that's because of the

19     effort that each one of you and your

20     teams put forth to just make sure that

21     we were taking care of our customers and

22     our patients each and every day.

23         "You know, fast-forward, that

24     momentum carried us into 2019.  And,