# EXHIBIT 10

Confidential:  Subject to Protective Order

# UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br>Case No. 1:18-op-45817-DAP<br><br>COBB COUNTY,<br><br>Plaintiff,<br><br>vs.<br><br>PURDUE PHARMACY, L.P., et al.,<br><br>Defendants. | **MDL No. 2804**<br><br>**Case No. 17-md-2804**<br><br>**Judge Dan Aaron Polster** |

## PUBLIX SUPER MARKETS, INC. SUPPLEMENTAL OBJECTIONS AND RESPONSES TO PLAINTIFF'S INTERROGATORIES TO CHAIN PHARMACY DEFENDANTS

COMES now the Defendant, Publix Super Markets, Inc. ("Publix"), by counsel, and submits the following supplemental objections and responses to Plaintiff's Interrogatories to Chain Pharmacy Defendants pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure. These responses are made subject to the General Objections as set forth in Publix's original responses unless otherwise stated herein.

## Supplemental Answers and Objections to Interrogatories

1.      Identify each distribution center or facility You owned or operated from 1996 to the present which delivered Opioids and Cocktail Drugs to pharmacies and/or other customers in Georgia, include the name and address for each distribution center or facility and, state:

1

Confidential:  Subject to Protective Order

(a) the registration number, controlled substance license number and/or any permit numbers issued by the DEA, state of Georgia, Georgia Board of Pharmacy and by the state where the facility is located;

(b) by year the total number of Opioids each such distribution center or facility delivered in Cobb County from 1996 through the present;

(c) by year the total numbers of Cocktail Drugs each such distribution center or facility delivered in Cobb County from 1996 through the present;

(d) the name, address and DEA and/or Georgia Board of Pharmacy registration number for each pharmacy and entity in Cobb County that received Opioids and Cocktail Drugs from Your distribution centers from 1996 through the present;

(e) by year the actual number of Opioids You distributed to each pharmacy and entity identified in (d) by of your distribution center or facility you owned or operated from 1996 to the present;

(f) by year the actual number of Cocktail Drugs You distributed to each pharmacy and entity identified in (d) by of your distribution center or facility you owned or operated from 1996 to the present;

(g) by year the actual number of controlled substances You distributed to each pharmacy or entity identified in (d) by each of Your distribution centers;[1]

(h) by year the actual number of non-controlled substances You distributed to each pharmacy or entity identified in (d) by each such distribution center; and

(i) the names, addresses and years worked at each such distribution center of all individuals who worked in the Controlled Substances cage as a picker, packer and/or checker.

**Response**: In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that this Interrogatory is comprised of multiple discrete subparts.  Publix objects to the term "distribution center or facility" as vague and ambiguous.  Publix also objects that the Interrogatory's request for information about "distribution" is unduly burdensome and not proportional to the needs of, and not related to any

---

[1] In Plaintiffs' Interrogatories to Chain Pharmacy Defendants, there are two sub-categories letter "f".  In responding to the Interrogatories, Publix has corrected the numbering.  The subcategories are now correctly letters "g" through "i".

Confidential:  Subject to Protective Order

claims or defenses in, the litigation.  Publix objects that the definitions of Opioids and Cocktail

Drugs differ from, and exceed, those contained within discovery rulings concerning dispensing

data as set out by Special Master Order.  Dkt. No. 3106, Special Master Cohen's "Discovery

Ruling Regarding Pharmacy Data Production" dated January 27, 2020 (the "Dispensing Data

Order").  Further, Publix objects to the timeframe "1996 to the present" as overly broad and

unduly burdensome and not proportional to the needs of the litigation.  Publix objects to the

terms "total number of Opioids" and "total number of Cocktail Drugs" as vague and ambiguous.

Publix objects to the requests for information regarding "distribution" and delivery of various

prescription medications and the identity of employees over a fifteen-year period as unduly

burdensome.

Publix further objects as the Interrogatory is, in part, a Request for Production[2] of

Documents phrased inappropriately as an Interrogatory, and that it is duplicative of Plaintiff's

Requests for Production 4 and 10.  Publix further objects to this Interrogatory to the extent it

seeks information that is equally available to Plaintiff, is publicly available, or is available from

other sources that are less burdensome and more convenient.  Publix objects to providing

information regarding the distribution of all controlled substances (subpart (g)) and distribution

of non-controlled substances (subpart (h)) as not relevant to any claim or defense. Publix also

objects to the terms "picker, packer, and checker" as undefined and vague, and that such request

is unduly burdensome and not proportional to the needs of, and not related to any claims or

---

[2] Plaintiff separately served Publix with two sets of requests for production, "Plaintiffs' Request for
Production to New Chain Pharmacy Defendants That Have Not Participated in Prior MDL Cases,"
served on November 10, 2021 ("RFP Set No. 1") and "Plaintiffs' Second Set of Requests
For Production To All Chain Pharmacy Defendants," served on November 10, 2021 ("RFP Set
No. 2").  Unless otherwise specified, reference to specific Requests for Production refers to Set
No. 1.

Confidential: Subject to Protective Order

defenses in, the litigation. Publix further objects that the Interrogatory seeks personal

"addresses" which are irrelevant to any claims or defenses in the litigation. Publix further

objects that the Interrogatory is not limited to information regarding Cobb County.

Subject to and without waiving the foregoing and its General Objections, Publix refers

Plaintiff to its Objections and Responses to Requests for Production 4 and 10. Publix further

states as follows: Publix did not, and does not, distribute to any third party any Opioid or

Cocktail Drugs. From on or about September 2, 2005 to present, Publix Super Markets, Inc. has

operated a central pharmacy warehouse at two successive locations in Orlando, FL. Prescription

drugs are moved via intra-company transfer from the warehouse to Publix's retail pharmacies.

Prior to October 4, 2016, Publix did not warehouse any Schedule II controlled substances, but

Publix did warehouse Schedule III controlled substances since in/about December 2005, and

therefore Publix warehoused certain prescription hydrocodone combination products then

identified as Schedule III controlled substances before they were reclassified from Schedule III

to Schedule II controlled substances in or about October 2014. From in or about October 2014

through October 2016, Publix did not warehouse any Schedule II hydrocodone products.

(a) Publix states the following in regard to its central pharmacy warehouse:

| DEA Registration Number | Address | Florida Dept. of Prof. Regulation Distributor License No. | Georgia Dept. of Community Health License No. | Initial Operation Date | Final Operation Date |
|---|---|---|---|---|---|
| RP0500391 | 10400 Rocket Court, Orlando, FL 32827 | 2220241 | PHWH004035 | On or about 10/4/16 | Ongoing |
| RP0331924 | 1950 Sand Lake Road, Orlando, FL 32809 | 221471 | PHWH002174 | On or about 9/2/2005 | 10/4/16 |

4

Confidential:  Subject to Protective Order

(b)– (c) Publix objects to providing the information requested for the reasons set forth above.  Publix refers Plaintiff to its Objections and Responses to Requests for Production 4 and 10, and further refers Plaintiff to the DEA's ARCOS data, which Plaintiff already have in their possession.

(d)       Publix refers Plaintiff to the Store Listing included with its October 19, 2021 Dispensing Data, PUBLIX-MDLT8-00000001 to PUBLIX-MDLT8-00000004, which contains duplicative, responsive information, as set forth below. Publix's investigation concerning the subject matter of subsection (d) continues and Publix will supplement its response if non-privileged responsive information is located as a result of its investigation.

| Store Name / Number | Address | DEA Registration Number |
|---|---|---|
| 0033 | 3605 Sandy Plains Rd. Ste. 200 Marietta, GA 30066 | BP3387619 |
| 0086 | 4401 Shallowford Road Roswell, GA 30075 | BP7985798 |

| Store Name / Number | Address | DEA Registration Number |
|---|---|---|
| 0122 | 1750 Powder Springs Rd. SW Marietta, GA 30064 | BP3449142 |
| 0146 | 4430 Wade Green Rd NW, Ste 100 Kennesaw, GA 30144 | BP3852503 |
| 0155 | 1100 Johnson Ferry Rd. Marietta, GA 30068 | BP3746914 |
| 0280 | 1050 E. Piedmont Rd., Ste 130 Marietta, GA 30062 | BP3836004 |
| 0464 | 5015 Floyd Rd. SW Mableton, GA 30126 | BP3872783 |
| 0496 | 5100 Dallas Hwy. Powder Springs, GA 30127 | BP4186739 |
| 0536 | 2451 Cumberland Pkwy. Atlanta, GA 30339 | BP4712611 |
| 0548 | 50 Barrett Parkway Suite 1000 Marietta, GA 30066 | BP4625301 |
| 0559 | 2774 N. Cobb Pkwy., Ste 201 Kennesaw, GA 30152 | BP4737548 |

Confidential:  Subject to Protective Order

| Store Name / Number | Address | DEA Registration Number |
|---|---|---|
| 0561 | 2500 Dallas Hghwy SW Suite 300<br>Marietta, GA 30064 | BP4742260 |
| 0566 | 1727 Mars Hill Rd. NW<br>Acworth, GA 30101 | BP4878243 |
| 0580 (closed) | 2148 South Cobb Drive SE<br>Smyrna, GA 30080 | BP5126001 |
| 0593 | 3507 Baker Road N. W. Suite #300<br>Acworth, GA 30101 | BP5727271 |
| 0670 | 3721 New Macland Road Ste 300<br>Powder Springs, GA 30127 | BP6259495 |
| 0672 | 1860 Sandy Plains Road<br>Marietta, GA 30066 | BP6259483 |
| 0725 | 2900 Delk Road SE Suite 1150<br>Marietta, GA 30067 | BP6517342 |
| 0753 | 4480 S Cobb Dr. SE<br>Smyrna, GA 30080 | BP7039008 |
| 0764 | 4290 Bells Ferry Road NW<br>Kennesaw, GA 30144 | BP7157286 |
| 0769 | 1635 Old 41 Highway N.W.<br>Kennesaw, GA 30152 | BP7201306 |
| 1077 | 2090 Baker Road, N.W.<br>Kennesaw, GA 30144 | BP8761416 |
| 1096 | 6110 Cedarcrest Road, N.W.<br>Acworth, GA 30101 | BP9050802 |
| **Store Name / Number** | **Address** | **DEA Registration Number** |
| 1112 | 1025 Veterans Memorial Hwy S.E. Ste. 400<br>Mableton, GA 30126 | BP9017751 |
| 1250 | 2955 Atlanta Rd. SE<br>Smyrna, GA 30080 | FP6457382 |
| 1745 | 4269 Roswell Rd Bldg 100<br>Marietta, GA 30062 | FP0850784 |

(e) – (h).  Publix objects to providing the information requested for the reasons set forth above.  Publix further refers Plaintiff to the DEA's ARCOS data, which Plaintiff already has in its possession.

Confidential:  Subject to Protective Order

(i)   Publix objects to providing the information requested for the reasons set forth above.

**SUPPLEMENTAL RESPONSE**: Subject to and without waiving the foregoing objections and statements, Publix clarifies its original response and states that prior to October 4, 2016, Publix did not warehouse any Schedule II controlled substances, but Publix did warehouse Schedule III controlled substances since in/about December 2005, and therefore Publix warehoused certain prescription drugs, such as hydrocodone combination products, then identified as Schedule III controlled substances even if they were subsequently reclassified from Schedule III to Schedule II controlled substances.  From in or about October 2014 through October 2016, Publix did not warehouse any Schedule II hydrocodone products.

Publix further states that in accordance with FRCP 33(d) that the information in Publix's possession that is responsive to subparts (b), (c), (e), and (f) is contained and/or identifiable in Publix's intra-company transfer data produced at PUBLIX-MDLT8-00058349.

Regarding subparts (g) and (h), the request for all "controlled substances" and "non-controlled substances", is beyond the scope of relevant information discoverable in this case.  Publix produced intra-company transfer data for the prescription drugs requested by Plaintiff.  Publix objects to producing anything beyond that, including to the vague request for "controlled substances" and "non-controlled substances".

Regarding subpart (i), the request is overly burdensome and not proportional to the needs of the case by seeking all personnel employed in such a position without any time limitation or transaction(s) of interest.  Further, the positions requested are not of the type that would provide any such person with information regarding Publix's overall practices for performing intra company transfers of controlled substances from its distribution center to Publix stores in Cobb County.  Publix has provided warehouse organization charts and agreed upon custodians in this matter including multiple warehouse personnel.

Confidential:  Subject to Protective Order

The records therefore will provide sufficient information regarding the receipt and transfer of controlled substances from the Orlando warehouse and the roles of relevant personnel.

2.      Please provide the number of dosage units that was distributed to Your pharmacies in the Georgia for each year between 1996 and 2020 for drugs oxycodone and hydrocodone and for each drug provide (1) the product name; (2) the NDC Code(s) for that drug; and (3) the NDC Code(s) holder for that drug.

**Response:** In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects to the terms "dosage units" and "distributed" as vague and ambiguous.  Publix further objects to the timeframe of the Interrogatory.  Publix objects that the Interrogatory is more properly a request for production of documents, and is duplicative of Plaintiff's document requests in this matter.  *See, e.g.,* Request for Production, No. 4.  Publix further objects to the Interrogatory as it is not limited to documents regarding Cobb County.

**SUPPLEMENTAL RESPONSE**: Subject to and without waiving the foregoing objections and statements, Publix states in accordance with FRCP 33(d) that the information in Publix's possession that is responsive to Interrogatory No. 2 was produced in Publix's data at PUBLIX-MDLT8-00058349.

3.      Please identify each Opioid order you performed Due Diligence on.  After each entry, identify the Bates ranges which corresponds to the Due Diligence performed.

**Response:**      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited in time or scope.   Publix objects to the extent it seeks information concerning orders for prescription opioid medications originating outside of Cobb County, Georgia. Publix objects as well to the term "opioids" as defined by plaintiff as different from, and in excess of, that contained within discovery rulings concerning

Confidential:  Subject to Protective Order

dispensing data, *See, e.g.*, Dkt. No. 3106, Special Master Cohen's "Discovery Ruling Regarding Pharmacy Data Production" dated January 27, 2020 (the "Dispensing Data Order").  Publix objects to the request for identification of Bates numbers as overly burdensome.  Publix also objects to the undefined term "order" as vague and ambiguous.  Publix objects to the requests for information regarding orders and "due diligence" concerning such orders as duplicative of document discovery served in this action.  To the extent that this Interrogatory seeks information concerning dispensing, such data has previously been produced to plaintiff, and Publix objects to this Interrogatory to the extent it is inconsistent with the Case Management Order.

Subject to and without waiving the foregoing and its General Objections, Publix states that it will produce business records concerning Cobb County, Georgia that were investigated under Publix's suspicious order monitoring program sufficient to show prescription medication orders consistent with the requirements of the Dispensing Data Order, Dkt. No 3106.

**SUPPLEMENTAL RESPONSE:** Publix objects to the use of the term "due diligence" in this Interrogatory, as this term is defined and used by Plaintiff under the incorrect assumption that the undertaking of "due diligence" somehow requires documentation by Publix in any or all circumstances, which it does not. As such, this Interrogatory as written and employing the term as defined by Plaintiff cannot be answered. Despite this flaw in the Interrogatory as written, Publix provides the following response.

Subject to and without waiving the foregoing objections and statements, Publix states that it will produce responsive records within the relevant geographic and temporal scope demonstrating or relating to "due diligence" or investigation into opioid orders placed from or shipped to relevant Cobb County area stores.  Specifically, pursuant to Rule 33(d), the answer to Interrogatory No. 3 may be derived by examining records that have been and will be produced by Publix, including, but not limited to, (1) intra-

Confidential:  Subject to Protective Order

company transfer data produced at PUBLIX-MDLT8-00058349; (2) Suspicious Order Monitoring reports, records and/or communications that Publix will produce; (3) "items of interest" reports, records, and/or communications that Publix will produce; (4) records from or involving diversion analysts regarding items of interest or orders of interest; and (5) communications, reports, and investigative documents to/from pharmacy supervisors, CSOS administrators, and/or loss prevention personnel regarding items of interest or orders of interest.

4.      Please identify each Opioid and/or Cocktail Drug order you reported to any regulatory body, including the DEA, the Georgia Board of Pharmacy and/or any other law enforcement entity, arising out of Cobb County and Georgia. After each entry, please identify the Bates range which corresponds to each order to enable a jury to correlate each order in your written answer to each document produced. For each Order You identify:

      (a)  state the date of each such Order;

      (b)  state the date You reported each such Order;

      (c)  state to whom each such Order was reported;

      (d)  state the date you discovered each Order;

      (e)  state how you discovered each Order;

      (f)  identify the Opioid or Cocktail Drugs involved in each Order;

      (g)  state whether you filled the order and/or delivered the Opioid or Cocktail Drugs which were the subject of each Order;

      (h)  identify the Bates number and/or Bates range of each such Order to enable a jury to correlate the Order in your written answers concerning the Document produced;

      (i)  state in detail all Due Diligence You performed concerning each such Order before and after delivery of the controlled substances in Cobb County;

      (j)  state in detail all efforts made by You to confirm the legitimacy of each such Order prior to filling the order; and

Confidential:  Subject to Protective Order

(k) state in detail all analysis You conducted prior to the filling of each Order to determine whether the controlled substances were likely to be diverted from legitimate channels.

**Response:**       In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory's request for information about "orders" related to distribution that is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation as Publix does not "distribute" prescription drugs to third parties, but moves prescription drugs via inter-company transfer from its central pharmacy warehouse to its retail pharmacies.  Publix objects that this Interrogatory contains multiple discrete subparts. Publix objects to the request for identification of Bates numbers as overly burdensome.  Publix also objects to the undefined terms "order", "third party" and "analysis" as vague and ambiguous.  Publix objects to the request for information regarding opioid medications and/or "cocktail drugs" beyond those ordered by the Court in the Dispensing Data Order, Dkt. No 3106. Publix also objects that the Interrogatory is not limited to the relevant timeframe.  Publix objects that the Interrogatory calls for information that may not be maintained in the ordinary course of business.  Publix also objects that the phrase "to enable a jury to correlate" would require Publix to try to determine what each member of a "jury" might need to understand data.  Publix also objects to the Interrogatory as it is more properly a request for production of documents and that it is duplicative of document requests served in this action.  *See, e.g.*, Request for Production, Nos. 17 and 22.

Subject to and without waiving the foregoing and its General Objections, Publix states that it employs a suspicious order monitoring program and adheres to requirements for reporting to authorities, as required by law.  Publix's investigation concerning the subject matter of this Interrogatory continues and Publix will supplement its response if non-privileged responsive information is located as a result of its investigation.

11

Confidential:  Subject to Protective Order

5.      Please identify each Cobb County Pharmacy store visit performed by You, or any third-party related to potential diversion, suspicious orders, and/or the maintenance of and dispensing of controlled substances. Identify the following regarding each visit:

> (a)  the date of the visit;
>
> (b)  the pharmacy name, address and store number;
>
> (c)  the name and title of the Person conducting the visit;
>
> (d)  the finding(s) of the visit; and
>
> (e)  identify all Documents by Bates ranges containing the information in (a) through (d).

**Response:**      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein**,** Publix objects that the phrase "maintenance of and dispensing of controlled substances" is vague and overbroad, and the term "store visit" is undefined and, therefore, vague, potentially implicating every virtual or physical "visit" to a Publix pharmacy in Cobb County, Georgia, even by employees of that pharmacy, given that the "maintenance of and dispensing of controlled substances" is an activity that occurs in the ordinary daily course of business for every Publix pharmacy. Publix also objects that "third-party" is undefined and vague.  Publix also objects that the Interrogatory is not limited to the relevant timeframe. Publix also objects that as the Interrogatory is overly broad and unduly burdensome.

Subject to and without waiving the foregoing and its General Objections, Publix's investigation concerning the subject matter of this investigation continues and Publix will supplement its answer if non-privileged, responsive information regarding potential diversion of relevant opioid medications is located as a result of its investigation.

Confidential:  Subject to Protective Order

**SUPPLEMENTAL RESPONSE**: Subject to and without waiving the foregoing objections and statements, Publix states that, in accordance with Rule 33(d), it will produce records, if any are located in its possession, custody, or control, which are responsive to this Interrogatory as follows:  Publix is still investigating whether it has any lists of store visits specifically relating to and made with the purpose of addressing controlled substance diversion, suspicious orders, or issues relating to dispensing outside of routine training or store visits and will provide the same if it is located. Publix will additionally provide communications and documents containing information responsive to Interrogatory No. 5, if any, that are located in its review of custodial documents or which are maintained by the loss prevention department.

6.      Identify any algorithm, program or system used by You to identify prescribers, pharmacies, pharmacists and/or patients using or prescribing or dispensing opioids for a non-legitimate medical purpose and/or engaged in conduct suspicious of diversion. Please identify by year for each algorithm, program or system its:

(a) name;

(b) the Date(s) it was in use by You;

(c) an explanation of why it was created and how it has been used by You;

(d) the individuals employed by You and any third party companies and individuals that designed, developed and supervised its operation;

(e) the specific data points and information it uses to operate;

(f) how those data points or that information is compiled and calculated;

(g) the individuals employed by You and/or any third-party companies that run, monitor and oversee its operation;

(h) the names of all reports or data outputs and the frequency in which those reports or updates are generated and reviewed; and

(i) a list of all individuals and their titles that review those reports or the information generated by its operation.

Confidential:  Subject to Protective Order

**Response:**        In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that this Interrogatory is compound and contains multiple, discrete subparts, and, as phrased, is incomprehensible. Publix further objects that the Interrogatory is not limited in time nor to documents regarding Cobb County. Publix objects that the term "algorithm" is undefined and therefore vague.  Publix objects that this Interrogatory presupposes that an "algorithm, program or system" can identify the prescriptions dispensed for a "non-legitimate medical purpose" or suspicious of diversion. Publix further objects that the Interrogatory is duplicative in part of document requests. *See, e.g.*, Request for Production, No. 15.

Subject to and without waiving the foregoing and its General Objections, Publix states that to the extent this Interrogatory requests information regarding Publix's suspicious order monitoring system, Publix has monitored its inter-company transfer of prescription opioid medications from its central pharmacy warehouse to its retail pharmacies through certain systems, including Order Insight, E-Supply Link, and PIMS, which have changed over time.  In response to (i), Publix refers Plaintiff to its objections and responses to Interrogatory No. 10 below.  Publix further states that, to the extent this Interrogatory requests information regarding the dispensing of opioids, all of its pharmacists rely upon their professional judgment and training, as well as Publix's dispensing systems, including Enterprise RX and PDX, and the Georgia Prescription Drug Monitoring Program (PDMP).  Publix's investigation concerning the subject matter of this Interrogatory continues and Publix will supplement its answer if additional, non-privileged and relevant information is located as a result of its investigation.

**SUPPLEMENTAL RESPONSE**: Subject to and without waiving the foregoing objections and statements, Publix states:

Confidential:  Subject to Protective Order

(a) Publix has utilized Publix Inventory Management System ("PIMS"); E-Supply Link ("ESL"); and OrderInsite ("OI") as part of its suspicious order monitoring program. Additionally, Publix provides pharmacists with access the Georgia PDMP as well as Publix's dispensing systems, including Enterprise RX and PDX, as tools to utilize within the exercise of their professional judgment and training in the dispensing of opioids. Further, Publix's Pharmacy Reference and Procedure Guide, produced to Plaintiff at PUBLIX-MDLT8-00000012 - PUBLIX-MDLT8-00056774, provides Publix's policies and procedures related to identification of prescribers, pharmacies, pharmacists and/or patients using or prescribing or dispensing opioids for a non-legitimate medical purpose and/or engaged in conduct suspicious of diversion.  Further, Publix employees may generate, consult, or review CII "pull reports" providing an overview of dispensing activities and tabulations for CII dispensing and/or inventory build reports providing an overview of inventory at specific stores generated from internal data repositories from time to time.  In accordance with Rule 33(d), Publix will produce any responsive reports such as these relating to the 34 Cobb County area stores for the relevant time period that it is able to locate.

(b) Publix used PIMS to identify potentially suspicious orders of controlled substances going from its own warehouse to stores from approximately 2012-2016; Publix used ESL to identify potentially suspicious orders of controlled substances going from its own warehouse to stores from approximately 2016-2019; Publix has used and continues to use OI to identify potentially suspicious orders of controlled substances going from its own warehouse to stores since approximately 2019. Publix used PDX from at least 2006 until 2010 when it transitioned to Enterprise RX, which is still in operation, to assist pharmacists in the tracking, filling, and monitoring of the dispensing of prescriptions including opioids. The Georgia PDMP was first launched by the state of Georgia in 2018, and Publix has made that resource available to

Confidential:  Subject to Protective Order

pharmacists since that year. Publix's Pharmacy Reference and Procedure Guide has been in place since at least 2005, and remains in place at the present time.

(c) PIMS was built in house by a team of IT personnel. ESL was a software acquired from vendor e-SupplyLink, Inc. OI is a software acquired from vendor OrderInsite, LLC. Each of PIMS, ESL and OI was/is used to monitor order information for orders outside of criteria set by Publix and/or the software system vendor and to allow Publix to monitor such orders and evaluate whether the same should be approved or rejected. PDX was a software acquired from vendor PDX, Inc., and Enterprise RX is a software acquired from vendor McKesson Pharmacy Systems, LLC. Both of PDX and Enterprise RX have been used by Publix to assist pharmacists in the tracking, filling, and monitoring of the dispensing of prescriptions including opioids. The Georgia PDMP is made available to assist pharmacists in the tracking and monitoring of the dispensing of opioids. The Pharmacy Reference and Procedure Guide is used communicate Publix's policies and procedures related to identification of prescribers, pharmacies, pharmacists and/or patients using or prescribing or dispensing opioids for a non-legitimate medical purpose and/or engaged in conduct suspicious of diversion as well as a reference guide to the applicable laws and regulations.

(d) Publix employees that designed, developed and supervised the operation of PIMS, ESL, and OI include Jason Bamberger, Chris Hewell, Jillanne Smith, Jennifer Warren, and Jonathan Thacker. Publix employees that supervised the operation of PDX and Enterprise RX include Andy Shaw, Jillanne Smith, Kathy Leonard, Toan Do, Chad Madill, Rodney "Mike" King and all Pharmacy Supervisors. Publix employees that oversee and update the Pharmacy Reference and Procedure Guide include Jillanne Smith, Rachel Stewart, and Ashley Greathouse.

Confidential: Subject to Protective Order

(e) PIMS, ESL, and OI interacted with various systems to monitor orders including Enterprise RX and its predecessor PDX. Enterprise RX, PDX, and the Georgia PDMP utilize various data points from prescriptions including prescriber, amount of prescription, and date of prescription. The Pharmacy Reference and Procedure Guide includes information on updates to various relevant laws and regulations, and Publix relies upon these updates as well as its own assessment of the efficacy of policies or need for new policies and procedure.

(f) Each of PIMS, ESL, and OI flagged orders further evaluation by Publix personnel including Chris Hewell, Jennifer Warren, other subordinate employees including Pharmacy Supervisors, and as of 2019, Diversion Analysts. The data within Enterprise RX and PDX is input or otherwise verified by pharmacists pursuant to the exercise of their professional judgment and training. The Georgia PDMP is managed by the State of Georgia. The information in the Pharmacy Reference and Procedure Guide is examined, tracked, and updated regularly by Publix employees including Jillanne Smith, Rachel Stewart, and Ashley Greathouse.

(g) Publix employees that run, monitor and oversee the operation of PIMS, ESL, and OI include Chris Hewell, Jillanne Smith, Jennifer Warren, Danielle Diciolla, Yondaney Serrano, and Sabrina Kelley. Aside from Publix's I/S and Technology associates responsible for technical aspects of the system, Publix employees that run, monitor and oversee the operation of PDX and Enterprise RX include Jillanne Smith, all Pharmacy Supervisors, and all pharmacists. Publix does not run, monitor or oversee the operation of the Georgia PDMP. Publix employees that run, monitor and oversee the Pharmacy Reference and Procedure Guide include Jillanne Smith, Rachel Stewart, and Ashley Greathouse.

(h) the names of all reports or data outputs and the frequency with which those reports or updates are generated and reviewed for the 34 stores agreed upon by the parties and during the

Confidential:  Subject to Protective Order

relevant time period (beginning 1/1/2006) can be determined from the suspicious order

monitoring documents and data to be produced; and the dispensing data previously produced to

Plaintiff at PUBLIX-MDLT8-00000001-PUBLIX-MDLT8-00000004, as "the burden of deriving

or ascertaining the answer [from such documents] will be substantially the same for either party."

Fed. R. Civ. P. 33(d).  The frequency at which pharmacists utilized other resources such as the

PDMP is not regular or documented and so there is no way for Publix to respond to this subpart

as to that; and

(i) Publix employees who review reports and information generated by PIMS, ESL, and

OI include Chris Hewell, Jillanne Smith, Jennifer Warren, Danielle Diciolla, Yondaney Serrano,

and Sabrina Kelley, all Pharmacy Supervisors, and potentially Pharmacists. Publix employees

who review reports and information generated by Enterprise RX and PDX include Jillanne

Smith, all Pharmacy Supervisors, and all pharmacists. The Georgia PDMP is not maintained by

Publix, but pharmacists may review reports and information generated by the same in the

exercise of their professional judgment. The Pharmacy Reference and Procedure Guide does not

generate reports or information as those terms are used by Plaintiff in this Interrogatory, but the

Guide is available to all Publix Pharmacy employees.

Additional information responsive to this interrogatory can be determined from the

suspicious order monitoring, loss prevention and custodial documents and data to be produced as

well as the dispensing data previously produced to Plaintiff at PUBLIX-MDLT8-00000001-

PUBLIX-MDLT8-00000004 and the Pharmacy Reference and Procedure Guide documents,

produced to Plaintiff at PUBLIX-MDLT8-00000012 - PUBLIX-MDLT8-00056774, as "the

burden of deriving or ascertaining the answer [from such documents] will be substantially the

same for either party." Fed. R. Civ. P. 33(d).

Confidential:  Subject to Protective Order

7.      Please identify each of Your prescriptions in Georgia which: (i) presented with Red Flags, (ii) is suspicious, (iii) which you completed Due Diligence on, and (iv) which should not have been filled. For each prescription, identify the reason and the criteria used to identify the prescription and all dispensing data fields contained in "Exhibit A – List of Data Fields the Pharmacy Defendants Must Produce" to MDL 2804 Document 3106, Special Master Cohen's "Discovery Ruling Regarding Pharmacy Data Production" dated January 27, 2020 (the "Dispensing Data Order").

**Response:**      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that this Interrogatory is unduly burdensome, in that it purports to require Publix to engage in an analysis of prescriptions it has filled and to make and report a determination to Plaintiff concerning various ill-defined criteria and/or definitions such as "suspicious" and "should not have been filled".  Publix further objects that the Interrogatory implies that Publix filled prescriptions that "should have not been filled," which, *inter alia,* is both the province of expert testimony and an implication Publix rejects. Further, Publix objects to the Interrogatory as unduly burdensome to the extent it would require Publix to have compiled and maintained data on prescriptions its pharmacists rejected over an unspecified period of time.  Publix also objects that the Interrogatory is not limited to the relevant timeframe or to documents regarding Cobb County.  Publix further objects to this Interrogatory to the extent it seeks information additional to that required by the Track Eight Case Management Order, paragraph D1 (MDL Docket No. 3818) and Special Master David Cohen's October 28, 2021 ruling.

**SUPPLEMENTAL RESPONSE:** Publix objects to the use of the terms "Red Flag" and "due diligence" in this Interrogatory, as these terms are used by Plaintiff under the incorrect

Confidential:  Subject to Protective Order

assumption that the identification of a "red flag" and the undertaking of "due diligence" somehow requires documentation by Publix in all circumstances, which they do not.  Further, Publix is not aware of the use of the term "due diligence" as relating to the dispensing of prescriptions.  As such, this Interrogatory as written and employing the terms as defined by Plaintiff cannot be answered. Despite this flaw in the Interrogatory as written, Publix provides the following response:

Subject to and without waiving the foregoing objections and statements, Publix states that pharmacists, when presented with prescriptions, are required to use professional judgment to assess the prescription for any indicia that it might be presented for any improper purpose.  In doing so, a pharmacist may or may not consult the Publix electronic dispensing data, the Georgia PDMP, other pharmacists, or any available information.  And, in exercising this judgment, a pharmacist may or may not document such analysis or investigation.  Absent such documentation in either electronic notes in the ERX system or on hard copy prescriptions, there would not be a written record of such analysis or any "investigation".  Because pharmacists are presented with many, many prescriptions, in the absence of documentation it is impossible to use their memories to recall each instance in which they identified any indicia that a prescription might be made for an improper purpose and what analysis was done to clear those indicia prior to dispensing, or conversely if the prescription was rejected and for what specific reason.

Subject to these statements, Publix will produce information which may be responsive pursuant to Rule 33(d) including, but not limited to, (1) dispensing data at PUBLIX-MDLT8-00000001 to PUBLIX-MDLT8-00000004 which shows certain prescriptions that Publix has declined to fill as indicated in the "Status" field as "C" or "canceled." Publix notes that a prescription may be cancelled for many reasons, which may or may not be related to potentially

Confidential:  Subject to Protective Order

fraudulent prescriptions; and (2) custodial emails and files containing notes or information

regarding the identification of "red flags" or indicia that a prescription may not have been for a

legitimate purpose.

Further, as Plaintiff is aware, the parties have agreed on and the Court has ordered a

compromise regarding the production of "notes" for a random sample of the prescriptions that

Plaintiff has identified as "red flagged".  In complying with its obligations under that order and

subject to Publix's objections to Plaintiff's use of the terms "Red Flag" and "due diligence",

Publix will produce information in documentary form reflecting the application of professional

judgment by Publix pharmacists, if any, in its possession, custody or control for the 1,450

prescriptions in the Red Flag sample from Plaintiff.

8.      Please identify which, if any, of the "Red Flag" prescriptions identified by

Plaintiffs' Counsel pursuant to the Track 8 CMO, D.2. are in fact Red Flag prescriptions.

**Response:**      In addition to its General Objections and its Objections to Definitions and

Instructions, which are incorporated herein, Publix objects as the Interrogatory would require

Publix to provide opinion on work product prepared and presented by Plaintiff's counsel.  Such

opinion is the province of expert testimony and is thus premature.  Publix objects to the term

"Red Flag prescriptions" as vague and ambiguous.  Publix further objects to the extent the "Red

Flag prescriptions" plaintiff identified are not limited to the Relevant Opioids—or to the relevant

timeframe or to documents regarding Cobb County.

**SUPPLEMENTAL RESPONSE:** Publix objects to the use of the terms "Red Flag" and

"due diligence" in this Interrogatory, as these terms are used by Plaintiff under the incorrect

assumption that the identification of a "red flag" and the undertaking of "due diligence" requires

documentation by Publix, which it does not.  Specifically, "red flag" is defined as indicia that an

Confidential:  Subject to Protective Order

Opioid should not be dispensed in the absence of creating documentation of "due diligence" efforts.  Because Publix is not aware of any such requirement, its response to the Interrogatory as written is none – there are no red flag prescriptions identified by Plaintiffs' counsel that required documentation before dispensing.

Subject to and without waiving the foregoing objections and statements, Publix will produce notes which may reflect efforts by pharmacists to use or document their professional judgment when presented with a prescription that had indicia of not being made for a legitimate purposes for prescriptions within the random sample of 1,450 prescriptions generated by Plaintiff in response to the Court's order on same.

9.      Please identify each of Your Opioid and Cocktail Drug prescriptions in Georgia that You refused to fill.

**Response:**      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein**,** Publix objects that the Interrogatory is not limited to the relevant timeframe.  Publix objects that this Interrogatory applies a broader definition of "opioid" and "cocktail drug" than provided for by the governing dispensing data production order (MDL Dkt. No. 3106).  Publix further objects to identifying individual prescriptions via Interrogatory is unduly burdensome, and objects that this Interrogatory is more properly a request for production of documents.  Publix also objects that this Interrogatory is duplicative of Plaintiff's document requests in this matter and of documents and data produced pursuant to the Track Eight Case Management (MDL Dkt. No. 3818).  Publix further objects that this Interrogatory seeks information that may not exist, or may not exist in the format requested.  Publix also objects that the Interrogatory is not limited to documents regarding Cobb County.

Confidential:  Subject to Protective Order

Subject to and without waiving the foregoing and its General Objections, Publix states that potentially relevant responsive information may be contained in the Enterprise RX "dispensing data," previously produced to plaintiff at PUBLIX-MDLT8-00000001 to PUBLIXMDLT8-00000004, as indicated in the "Status" field as "C" or "canceled", however the reason for each such cancelled prescription is not likely identifiable from the data.  Publix further states that identifying all individual prescriptions refused by pharmacists in the exercise of their professional judgment is not be possible because prescriptions can be and likely were refused prior to any documentation or being input into Publix's Enterprise RX dispensing system.  Publix's investigation concerning the subject matter of this Interrogatory continues and Publix will supplement its answer if additional, non-privileged and relevant information is located as a result of its investigation.  *See, e.g.,* Request for Production, Nos. 14, 24 and 35.

10.     Please identify the name and title of each of Your employees, by year, who had compliance responsibilities and/or were responsible for conducting Due Diligence on opioid orders shipped to Georgia from 2006 to present.

**<u>Response:</u>**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein**,** Publix objects that the terms "compliance responsibilities" and "Due Diligence" are vague and ambiguous. Publix also objects that the Interrogatory is not limited to the relevant timeframe or to documents regarding Cobb County.

Subject to and without waiving the foregoing and its General Objections, Publix states that all Publix associates have "compliance responsibilities."  Publix further identifies the following current Publix associates who have or had specific responsibilities for suspicious order monitoring, who may be contacted only through undersigned counsel: Chris Hewell, Manager of

Confidential:  Subject to Protective Order

Procurement (2007-2018), Sr. Manager of Procurement and Technology (2018-2021); Jennifer Warren, Supervisor Controlled Substance Compliance (2019 –2020), Manager of Controlled Substance Compliance (2020 - present); Jillanne Smith, Sr. Manager Pharmacy Compliance (2018 - 2021), Jonathan Thacker, Sr. Pharmacy Compliance Program Manager (2021 – present), Yondaney Serrano, Diversion Analyst (2020-present), Danielle Diciolla, Diversion Analyst (2020-present), and Sabrina Kelley (2021-present).  Publix's investigation concerning the subject matter of this Interrogatory continues, and its answer will be supplemented if any non-privileged responsive information is located as a result of that investigation.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the foregoing objections and statements, Publix first clarifies that Publix is providing additional information regarding both the original individuals identified in response to Interrogatory No. 10, and additional Publix employees who may be considered to have now or have had in the past "compliance responsibilities" relating to controlled substances. This information is provided despite Publix already clarifying that all Publix associates have "compliance responsibilities" to the extent Publix understands what Plaintiff means by that term, which is vague and undefined.

Further Publix is providing additional information as follows:

**Procurement and Pharmacy Operations:**

- Jillanne Smith (Sr. Manager Pharmacy Compliance and Regulatory Affairs 2018-2021; Manager, Pharmacy Recruiting, Training and Development 2005-2018)

    o Smith's current position is a new position. Previously, she performed much of the same work she does now while she had the title "Manager, Pharmacy Recruiting, Training, and Development".

    - Reports to Dain Rusk.

    o Smith previously worked with Chris Hewell on Suspicious Order Monitoring, including with systems known as E-Supply Link ("ESL") and OrderInsight ("OI").

24

Confidential:  Subject to Protective Order

- o Transitioned oversight of Suspicious Order Monitoring from herself to Thacker in or about March 2021.

- o Among Jillanne's direct reports are the following:

- o Two (2) Pharmacy Training Developers who may be considered to support "compliance" related areas because the job involves work on and dissemination of information in the Pharmacy Reference & Procedure Guide as well as other training regarding dispensing of controlled substances.

  - Rachel Stewart – Pharmacy Training Developer since 2007

  - Ashley Greathouse – Pharmacy Training Developer since 2017

- o Stephanie Negron (Manager, Safety, Inspections, and Licensing 2020- present; Regulatory Compliance Analyst 2017-2020) also reports to Jillanne Smith

  - Has reported to Jillanne Smith since 2017.

  - She monitors and oversees some aspects of retail associate training and licensing.

  - Also monitors changes in regulatory landscape and proposed changes to R&P guide, particularly the chapter on patient safety.

- Chris Hewell (Director of Procurement and Technology 2020 – present; Director of Procurement 2018-2020; Manager of Procurement 2007-2018)

  - o Hewell's current position as the Director of Procurement and Technology is a new position.

  - o Hewell currently reports to Katie (Petti) Scanlon, and Katie (Petti) Scanlon currently reports to Dain Rusk.

  - o Has had responsibility for and worked with several Suspicious Order Monitoring systems since 2007 including ESL and OI.

- Jonathan Thacker (Sr. Pharmacy Compliance Program Manager 2019-present)

  - o Thacker's current position as the Sr. Pharmacy Compliance Program Manager is a new position. Between 2019 and 2021, he took on compliance responsibilities previously performed primarily by Jillanne Smith, Jennifer Warren, and Chris Hewell.

  - o Worked with Hewell on Suspicious Order Monitoring including transition from ESL to OI.

- Jennifer Warren (Manager of Controlled Substance Compliance), Carlin St. Louise (Compliance Specialist) and Stephen Woolery (Compliance Pharmacy Analyst) directly report to Thacker.

Confidential:  Subject to Protective Order

o Woolery now responds to/manages communications to and from the following mailbox, which Jillanne Smith previously set up to handle controlled substances due diligence inquiries from manufacturers or the Publix warehouse: pharmacycsduediligence@publix.com

o Warren's team responds to/manages communication to and from the following mailbox set up to handle controlled substance inquiries from Publix stores: pharmacycscomplaince@publix.com

- Jennifer Warren (Manager of Controlled Substance Compliance 2020-present; Supervisor Controlled Substance Compliance 2019-2020; Compliance Analyst 2017-2019)

o Warren's current position as the Manager of Controlled Substance Compliance is a new position. The most similar previous role was her own role, Supervisor of Controlled Substance Compliance (2019-2020).

o Currently responsible for Risk Evaluation and Mitigation Strategies ("REMS") reporting to FDA.

o Currently reports to Jonathan Thacker (since April 2021); previously reported to Jillanne Smith from 2014-2021.

o Has had role in Suspicious Order Monitoring since at least 2017.

o Prior to her involvement with Suspicious Order Monitoring, her responsibilities would have rested primarily with Chris Hewell.

o Jennifer has 3 direct reports who are Controlled Substance Diversion Analysts (there was no one with that title prior to these individuals):

- Yondaney Serrano (Controlled Substance Diversion Analyst 2020-2022) REMS reporting

- Danielle Diciolla (Controlled Substance Diversion Analyst 2020-present) REMS reporting

- Sabrina Kelley (Controlled Substance Diversion Analyst 2021-present) REMS reporting

**Pharmacy Warehouse:**

- Laura Slone (Department Manager for Pharmacy Warehouse 2017-present; Assistant Manager, Pharmacy Compliance and Regulatory 2013-2017; Manager Pharmacy Regulatory Compliance 2011-2013; Pharmacy Quality Assurance and Inventory Specialist 2011; Inventory Control Coordinator 2007-2011)

o Has reported to Mark Shaia (currently the Superintendent over the Pharmacy Warehouse) since 2011.

Confidential:  Subject to Protective Order

- o  Involved with most aspects of compliance in the Warehouse from 2007-present, working with Chris Hewell on Suspicious Order Monitoring, including with both ESL and OI systems.

- o  In addition, has roles that may be considered "compliance" relating to warehouse security and operations, license applications, ARCOS reporting, and vendors selection.

11.    For each pharmacy or entity You owned or operated in Georgia from 1996 through the present:

> (a)  state the name including its former names, and address of each such pharmacy or entity You own or operated;

> (b)  identify the DEA Registration number and Georgia Board of Pharmacy Registration Number;

> (c)  state the Dates You have owned or operated each pharmacy;

> (d)  if You purchased or acquired the pharmacy, please state who You acquired the pharmacy from and the date of acquisition; and

> (e)  identify each regional pharmacy manager, district leader, and pharmacy manager for each pharmacy by year.

**Response:**    In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that this Interrogatory is compound. Publix also objects that the Interrogatory is not limited to the relevant timeframe or in geographic scope to Cobb County.  Publix further objects to the terms "regional pharmacy manager," "district leader," "pharmacy manager" and "acquired" as undefined and therefore vague and ambiguous.   Publix objects to the extent the Interrogatory calls for the disclosure of attorney opinion work product and/or privileged documents.

Subject to and without waiving the foregoing and its General Objections, Publix refers Plaintiff to its response to Interrogatory No. 1 with respect to subparts (a) – (d), as well as Publix's previous production of the Store Listing included with its October 19, 2021 Dispensing Data, PUBLIX-MDLT8-00000001 to PUBLIX-MDLT8-00000004, which contains duplicative,

Confidential:  Subject to Protective Order

responsive information.  In further response to (d) Publix further states that it did not acquire any

pharmacies in Cobb County during the relevant time period, but, upon information and belief,

Publix did acquire electronic dispensing records from Kmart Pharmacy #3996 in or about

September 2017.   In response to subpart (e), Publix identifies the following current employees

who may be contacted only through undersigned counsel: Chad Madill (Pharmacy Operations

Manager, Atlanta division, 2017-present); Rodney "Mike" King (Pharmacy Operations Manager,

Atlanta division, 2004 - 2017); LeighAnne Jacobson (Pharmacy Supervisor, 2016-present); and

Mike Chavez (Pharmacy Supervisor, 2008-present).

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the foregoing objections and

statements, Publix states that Publix is providing additional information regarding both the original

individuals identified in response to Interrogatory No. 11, and additional Publix employees who may be

considered to have now or have had in the past responsibilities over the pharmacies in Cobb County.

**Retail Pharmacy:**

- Kathy Leonard (Director of Retail Pharmacy Operations 2020-present)

    - Her current position was previously held by Toan Do from 2017-2020 and Andy Shaw from 2013-2017. Shaw was the first to hold this position in 2013.

    - Since beginning in this position, she has reported directly to Dain Rusk.

    - Has a number of direct reports, including all divisional Pharmacy Operations Managers.

    - Her roles that may be considered "compliance" responsibilities include oversight of training and compliance with federal and state regulations undertaken by the Pharmacy Operations Managers.

    - She also collaborates with Jillanne Smith to develop the training curricula for new pharmacists and technicians.

- Chad Madill (Pharmacy Operations Manager, Atlanta division, 2017-2021)

    - Role was previously held by Rodney "Mike" King who originated the position in 2004 and held it through the end of his tenure in 2017.

Confidential:  Subject to Protective Order

- o As Pharmacy Operations Manager, reported to Kathy Leonard (2020-2021); previously Toan Do (2017-2020).

- o Direct reports as Pharmacy Operations Manager included Pharmacy Supervisors Mike Chavez and Leigh Anne Jacobson with responsibility for Cobb County Publix pharmacies.

- o Responsibilities as Pharmacy Operations Manager included oversight of Pharmacy Supervisors who are generally responsible for investigation of potential violations of the law or Publix's policies at the store level. Madill would only get involved with this process if the Supervisor had questions.

- Leigh Anne Jacobson (Pharmacy Supervisor, NW quadrant of Atlanta Division, 2016-present)

  - o Currently reports to Lindsay Burckhalter. Reported to Chad Madill (2017-2021); previously Mike King (2016-2017).

  - o Her role was previously held by Jennifer Layton.

  - o This geographic area includes around 40 stores including roughly 15 in Cobb County.

  - o Her current responsibilities include oversight of Pharmacy Managers and floaters, including training, and assessment of relevant trends and monthly Schedule II pull reports from Jennifer Warren.

  - o She also previously has attended on a rotating basis meetings of the Georgia Board of Pharmacies.

12.    Please identify, define and explain by year any criteria or "Red Flags" You advised Your pharmacists to monitor for and the specific steps that You advised Your pharmacists to take, if any, before dispensing each Opioid or Cocktail Drug. (By way of example, if You included "Cocktail Drugs" in Your "Red Flag" criteria, explain the specific drugs that make up Your definition of "Cocktail Drug" by year).

**Response:**    In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe.  Publix further objects this Interrogatory is not geographically limited to Cobb County. Publix also objects in that the defined term "Cocktail Drugs" is vague and

Confidential: Subject to Protective Order

ambiguous and is different from the definition set by the Court. Publix further objects that "Red

Flag criteria" is vague and ambiguous. Publix objects to this Interrogatory as unduly

burdensome in requesting Publix to detail in an Interrogatory response, all definitions, criteria,

and advice provided to pharmacists on a year-by-year basis.

Subject to and without waiving the foregoing and its General Objections, Publix states

that it will produce business records containing Publix's policies and procedures regarding

identifying invalid controlled substances prescriptions, including examples of suspicious activity

set forth in its "Pharmacy Reference and Procedure Guide." pursuant to Federal Rule of Civil

Procedure 33 (d). Publix further refers plaintiff to its Response to Request for Production, Nos.

18 and 30.

**SUPPLEMENTAL RESPONSE**: Publix objects to the use of the terms "Red Flag" and "due

diligence" in this Interrogatory, as these terms are used by Plaintiff under the incorrect assumption that

the identification of a "red flag" and the undertaking of "due diligence" requires documentation by

Publix, which it does not. Specifically, "red flag" is defined as indicia that an Opioid should not be

dispensed in the absence of creating documentation of "due diligence" efforts. Because Publix is not

aware of any such requirement, its response to the Interrogatory as written is none – there are no red flag

prescriptions identified by Plaintiffs' counsel that required documentation before dispensing.

Subject to and without waiving the foregoing objections and statements, Publix states that

pharmacists are required to use their professional judgment to identify "red flags" or indicia that a

prescription is made for an improper purpose. Further, Publix refers to the following documents in

accordance with Rule 33(d): Chapter 7 of the Pharmacy Reference & Procedure Guide dated 4/1/2005

produced to Plaintiff at PUBLIX-MDLT8-00028155 - PUBLIX-MDLT8-00028172 and Chapter 8 of the

Pharmacy Reference & Procedure Guide dated 1/13/2021 produced to Plaintiff at PUBLIX-MDLT8-

Confidential:  Subject to Protective Order

00042479 - PUBLIX-MDLT8-00042572 for the versions of the Pharmacy Reference and Procedure

Guide in effect on 1/1/2006 and 5/19/2021, respectively.  Further, Publix will provide additional

business records which may contain information responsive to this Interrogatory and from which

Plaintiff may obtain such relevant information in accordance with Federal Rule of Civil Procedure 33(d),

including, but not limited to, any training offered or made available to Publix employees regarding "red

flags".

13.      List all employees and third parties who have discoverable information related to

the dispensing of opioids from your pharmacies in Georgia, including any investigations and Due

Diligence of suspicious opioid and Cocktail Drug prescriptions in Cobb County or Georgia.

Include their name, title(s), address, and subject matter of the information possessed by that

Person.

**Response**:      In addition to its General Objections and its Objections to Definitions and

Instructions, which are incorporated herein**,** Publix objects that the Interrogatory is not limited to

the relevant timeframe.  Publix further objects that the Interrogatory is unduly burdensome and

overbroad in that it would conceivably require Publix to obtain information from anyone –

including non-parties --at any time that they might have sought such information from or about

Publix, as well as from all its associates over a lengthy period of time.  This could include,

among others, the following entities or categories of entities The United States Drug

Enforcement Administration; The Georgia Board of Pharmacy; Georgia Law Enforcement;

Doctors, medical providers, hospitals and their representatives; and Patients who have been

prescribed opioids.  Publix further objects that the Interrogatory seeks personal "addresses"

which are irrelevant to any claims or defenses in the litigation.  Publix also objects that the

Interrogatory asks Publix to identify "the subject matter of the information possessed" to the

Confidential:  Subject to Protective Order

extent that can be interpreted to mean anything beyond "the dispensing of opioids."  Publix

further objects that the terms "suspicious opioid" and "cocktail drug prescriptions" are vague.

Publix also objects that the Interrogatory is not limited to documents regarding Cobb County.

Subject to and without waiving the foregoing and its General Objections, pursuant to

Federal Rule of Civil Procedure 33(d), Publix will produce business records, to the extent they

exist, sufficient to identify pharmacists employed by Publix in Cobb County, Georgia from

January 1, 2006 to the present.  Publix also refers Plaintiff to the persons identified in its answer

to Interrogatories Nos 10 and 11.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the foregoing

objections and statements, Publix states:

Current and former Directors of Retail Pharmacy Operations:

- Kathy Leonard
- Toan Do
- Andy Shaw

Former Pharmacy Operations Managers, Atlanta Division:

- Chad Madill
- Rodney "Mike" King

Current and former Pharmacy Supervisors:

- Leigh Anne Jacobson
- Jennifer Layton
- Mike Chavez

Publix further states that the list of all current and former store-level employees from the 34 relevant

Georgia stores over the approximately 15 years relevant to the claims at issue in this case would be

overbroad for the claims at issue in this litigation. Subject to the foregoing, Publix provides the

following list of current Pharmacy Managers assigned to the relevant Georgia stores:

Confidential:  Subject to Protective Order

| Name | Store No. |
| --- | --- |
| Ashley Love | 1064 |
| Thomas Brown | 548 |
| Liz Goodroe | 672 |
| Sabrina Fincher | 670 |
| Elizabeth Welborn | 1250 |
| Philip Mayotte | 559 |
| Dannell Gillespie | 753 |
| Jennifer Bennett | 86 |
| Aniome Braimah | 145 |
| Erika Owens | 146 |
| Sarah Samuel | 769 |
| Catherine Boaich | 496 |
| Katie Moore | 764 |
| Lindsey Edwards | 1019 |
| David Williams | 556 |
| Valerie Shearman | 122 |
| Shannon Johnson | 624 |
| Sayeed Mia | 1043 |
| Shannon Brice | 1096 |
| Gretchen Shirley | 33 |
| Dexter Jack | 464 |
| Karrah Milcheck | 725 |
| Michele Gettens | 694 |
| Steven Valdes | 593 |
| Mary Ellen Bell | 1077 |
| Vittorio Paradisco | 280 |
| Lauren Brown | 711 |
| Margaret Brand | 155 |
| Darci Turner | 536 |
| Robin Minhinnett | 566 |
| Brittany Smith | 561 |
| Mansi Sutaria | 1112 |
| Heather Barry | 1745 |

14.     Please identify each Person, other than a Person intended to be called as an expert witness at trial, who likely has discoverable information that tends to support a position or defense that You have taken or intend to take in this action. Include their name, title(s), address, and subject matter of the information possessed by that Person.

Confidential:  Subject to Protective Order

**Response:**      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that this Interrogatory's request for the identification of witnesses with knowledge that "tends to support a position or defense that You have taken or intend to take in this action" because it inappropriately seeks the disclosure of attorney opinion work product and/or the premature identification of witnesses to be called at trial. Publix objects that this Interrogatory is premature at this stage of litigation.

Subject to and without waiving the foregoing and its general objections, Publix states that its investigation of the matters raised by Plaintiff's complaint continues, and that the response to this Interrogatory may be supplemented. Publix further refers Plaintiff to its response to Interrogatories Nos 10 through 13, *supra.*

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving the foregoing objections and statements, Publix states:

Publix refers Plaintiff to its responses and supplemental responses to Interrogatories Nos. 6, 10, 11, and 13, as well as the final list of 20 custodians agreed upon by the parties. In addition, Publix refers Plaintiff to the organizational charts produced by Publix as well any additional documents located through the discovery already produced and to be produced by Publix from which Plaintiff may obtain such relevant information in accordance with Federal Rule of Civil Procedure 33(d).

15.      Describe in detail which of Your entities, subsidiaries and/or divisions that have, or had, any role in the marketing, sale, distribution and/or dispensing of Opioids or Opioid Products from January 1, 1996 to present.

**Response:**      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects to this Interrogatory as compound and overly broad in time and scope beyond what is required by the Discovery Rules.  Publix also

Confidential: Subject to Protective Order

objects that the Interrogatory's request for information about "distribution" is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation as Publix did not distribute opioids to any third parties. Publix further objects that "division" and "subsidiaries" are vague and undefined. Publix also objects that this Interrogatory seeks information beyond documents regarding Cobb County, Georgia.

Subject to and without waiving the foregoing and its General Objections, Publix states: Publix has no role in the marketing of opioids or opioid products. Publix Super Markets, Inc., moves via inter-office transfer some prescription medications to Publix pharmacies in Cobb County, Georgia. Publix Super Markets, Inc., does not have a separate pharmacy "subsidiary" or "division" entity in Georgia or Florida. Publix employs the pharmacists responsible for dispensing all prescription medications at Publix pharmacies in Cobb County, Georgia.

**SUPPLEMENTAL RESPONSE**: Subject to and without waiving the foregoing objections and statements, Publix states:

Publix Super Markets, Inc. is the only Publix entity that had any role in the marketing, sale, distribution and/or dispensing of Opioids in the 34 relevant stores from January 1, 2006 to the present. There is no additional corporate entity within the Publix umbrella from which Plaintiff could be seeking discovery relating to the allegations in this lawsuit.

16. Please identify each administrative action taken by the DEA and/or the Georgia Board of Pharmacy against You related to the distribution or dispensing of prescription opioids.

**Response:** In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe. Publix further objects this Interrogatory is not geographically limited to Cobb County. Publix further objects to the Interrogatory in that it is compound, requesting

Confidential:  Subject to Protective Order

information about two distinct entities. Publix also objects that the term "administrative action" is vague and unclear.  Publix also objects that the Interrogatory's request for information about "distribution" is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation.

Subject to and without waiving the foregoing and its General Objections, Publix responds that its investigation concerning the subject matter of this Interrogatory continues, and its answer will be supplemented if any relevant non-privileged responsive information is located as a result of that investigation.

17.    Please provide the total number of pills and the total number of prescriptions dispensed by each of Your pharmacies in the County for each year between 1996 and 2020 for drugs oxycodone and hydrocodone.

**<u>Response:</u>**    In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe.  Publix further objects that this Interrogatory is not specifically geographically limited to Cobb County. Publix further objects that the term "pills" and "prescriptions" is undefined and vague.  Publix also objects that the information requested by this Interrogatory is equally available to Plaintiff as it was already the subject of dispensing data discovery  pursuant to the Track Eight Case Management, D.2 (MDL Dkt. No. 3818), previously produced at PUBLIX-MDLT8-00000001 to PUBLIX-MDLT8-00000004.

18.    Please describe whether you relied upon the U.S. Government Quotas for Opioids in your distribution and/or dispensing Due Diligence. If so, please describe how you relied upon that information and identify documents demonstrating that reliance.

Confidential:  Subject to Protective Order

**Response:**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix also objects that the Interrogatory is not limited to the relevant timeframe.  Publix further objects that this Interrogatory is not geographically limited to Cobb County. Publix objects to the term "Due Diligence" as defined by Plaintiff and the undefined term "U.S. Government Quotas for Opioids" as vague and ambiguous.  Publix further objects that the terms "relied upon" and "demonstrating that reliance" are undefined and vague.  Publix also objects that the Interrogatory is compound as it asks for two distinct types of information, "distribution" and "dispensing".  Publix further objects that the Interrogatory's request for information about "distribution" is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation.  Subject to and without waiving the foregoing and its General Objections, Publix responds that during the relevant time period, Publix has complied with laws and requirements related to suspicious order monitoring and dispensing of controlled substances.  As this Interrogatory is phrased, Publix is unaware of any responsive, relevant, and non-privileged information.

**SUPPLEMENTAL RESPONSE:** Publix objects to the use of the term "due diligence" in this Interrogatory, as this term is used by Plaintiff under the incorrect assumption that the undertaking of "due diligence" somehow requires documentation by Publix when performing any assessment of "red flags" during dispensing activities, which it does not. Further, the term of "due diligence" is a concept more properly used when discussing orders from Publix stores to its Orlando warehouse for intra-company transfers of controlled substances.

Subject to and without waiving the foregoing objections, Publix does not employ, calculate, or factor in any U.S. Government Quotes for Opioids directly into its operations as it is not aware of any requirement or mechanism to do so.  Publix complies with legal and regulatory

Confidential:  Subject to Protective Order

obligations on it to report data and information regarding its orders for and dispensing of controlled substances.  Whether and how Publix's suppliers of controlled substances factor in or assess U.S. Government Quotas when selling or delivering controlled substances to Publix is not known to Publix.

19.     Identify every continuing medical education course from 1996 to present created, sponsored or delivered by a manufacturer of opioids to You and Your employees, including date, location and the title of the conference.

**Response:**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe.  Publix further objects that the Interrogatory is not limited in scope to documents regarding Cobb County.  Publix further objects that the information sought by this Interrogatory is not relevant to any claim or defense.  Publix also objects as the term "continuing medical education course" and "employees" are undefined and vague.  Further, Publix objects that this Interrogatory is unduly burdensome as it would require Publix to track all courses taken by each of its associates, and therefore assumes that Publix is required to do so.  Publix further objects that this Interrogatory seeks information outside of Publix's custody, possession or control.

Subject to and without waiving the foregoing and its General Objections, Publix responds that it is not aware of responsive information as individual pharmacists are responsible for maintaining their licensure, including all required training.  Publix further responds that it has contracted with the Therapeutic Resource Center and Drugstore News to provide its associates access to continuing education courses, but it is the choice of individual pharmacy associates

Confidential:  Subject to Protective Order

whether to attend courses available through those platforms, or to fulfill their requirements elsewhere.

20.     Identify by name, address and DEA numbers each physician that you refused to fill prescriptions for in Georgia, prescribers identified in "do not fill" lists, "refusal to fill" lists, "blanket refusal to fill lists" and/or each prescription you determined was doubtful, questionable, of suspicious origin, potentially related to diversion, and/or not issued for a legitimate medical purpose in Georgia.

**Response:**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe.  Publix further objects that the terms "do not fill" lists, "refusal to fill" lists, "blanket refusal to fill lists," "each prescription you determined was doubtful, questionable, of suspicious origin, potentially related to diversion, and/or not issued for a legitimate medical purpose" are undefined and vague, and therefore susceptible to multiple interpretations. Publix also objects that the Interrogatory is compound in that it includes two separate interrogatories. Publix further objects that this Interrogatory is duplicative of Interrogatories 7 and 9 above. Publix further objects that the Interrogatory is unduly burdensome to the extent it would require Publix to go to each of its pharmacies, or each of its pharmacy associates, to obtain the requested information.  Publix also objects that the Interrogatory is not limited to documents regarding Cobb County.

Subject to and without waiving the foregoing and its General Objections, Publix refers plaintiff to its Response and Objections to Interrogatories 7 and 9, above, and to its Response and Objections to Requests for Production Number 19, and its previous production of dispensing

Confidential: Subject to Protective Order

data. Publix also states that its investigation concerning the subject matter of this Interrogatory continues, and its answer will be supplemented if any non-privileged responsive information is located as a result of that investigation.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving its foregoing objections and statements, Publix states that it does not, in the regular course of business, maintain "do not fill" lists, "refusal to fill" lists, or "blanket refusal to fill lists." Further, Publix clarifies that there likely is not a complete record, and therefore not any comprehensive preserved corporate knowledge, of "each prescription" that any Publix employee determined was doubtful, questionable, of suspicious origin, potentially related to diversion, and/or not issued for a legitimate medical purpose in Georgia. A Publix employee could have turned away a prescription at many points in the process for such reasons and not created any record. Without a record, the burden of attempting to scour the memories of employees for such instances is too high and disproportionate to the needs of the case.

Publix further states that information that may be responsive to this request is located within the Enterprise RX "dispensing data," previously produced to plaintiff at PUBLIX-MDLT8-00000001 to PUBLIX-MDLT8-00000004, as indicated in the "Status" field as "C" or "canceled" as well as the "PRES_FIRST_NAME" and "PRES_LAST_NAME" fields showing the names of the prescribers. However, a prescription can be cancelled for many reasons and does not necessarily indicate any "red flags" or determination by a pharmacist that it was improper to dispense it. Additionally, Publix refers Plaintiff to custodial emails and files as well as loss prevention data and documents which may reflect investigations and/or reports to law enforcement regarding such prescriptions, which documents will produced to Plaintiff in response to Plaintiff's Requests for Production from which Plaintiff may obtain such relevant information in accordance with Federal Rule of Civil Procedure 33(d).

Confidential:  Subject to Protective Order

21.    Identify by name, title, store number and home address any of Your pharmacists in Georgia that have been investigated for theft, potential diversion, and/or inappropriate dispensing of controlled substances.

**Response:**    In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe.  Further, Publix objects as the Interrogatory is not limited to documents regarding Cobb County or to documents regarding The Relevant Opioids.  Publix also objects that the terms "potential diversion" and "inappropriate dispensing of controlled substances" are undefined and vague. Publix further objects that the Interrogatory seeks "home addresses" which are irrelevant to any claims or defenses in the litigation.  Publix also objects as the Interrogatory is duplicative of Requests for Production.  *See, e.g.*, Request for Production, No. 21, which is a more appropriate and less burdensome format for this information.

**SUPPLEMENTAL RESPONSE:**  Publix further objects that the term "investigated" is vague and ambiguous.  Subject to and without waiving the foregoing objections, Publix states that it is reviewing Human Resources and Loss Prevention information to determine if any pharmacist in Georgia was, investigated, terminated, or disciplined by Publix relating to theft, allegations of diversion, or inappropriate dispensing of controlled substances.  To date, to following instances have been identified:

- Julie A Shell, Assistant Pharmacy Manager at store 769 was discharged on February 20, 2009 for violation of Federal, State and Publix policy with regards to the dispensing of controlled substances and the incident was reported to the Georgia Drugs and Narcotics Agency which intended to conduct a full investigation;

- Pharmacy Assistant Manager Jacinta Jackson at store 548 was investigated beginning on August 16, 2021 for allegations of theft of controlled substances, but after the investigation no further action was taken;

- Monica Roach, Pharmacy Tech at store 580 was discharged on April 12, 2010 for theft of controlled substances, and the State of Georgia Board Investigator was notified of the incident but decided not to pursue prosecution;

Confidential: Subject to Protective Order

- Lara Ryan Parodi, Pharmacy Tech at store 769, was discharged on October 16, 2008 for theft of controlled substances and was later arrested by the Cobb County Sheriff's Office;

- Donna Reed, Pharmacy Tech at store 672, was discharged on April 17, 2008 for theft of controlled substances;

- Audreia Harris, Pharmacy Tech at store 753, was discharged on April 3, 2008 for theft of controlled substances;

- Shannon Godwin, Pharmacy Tech at store 464, was investigated beginning on March 30, 2007, but she quit and refused to cooperate with Publix's investigation prior to Publix completing its investigation, Publix notified the Cobb County Sheriff's Office who stated a detective would be sent to investigate.

22.     Please identify the manner in which Your pharmacists were to conduct Due Diligence on prescriptions that presented with Red Flags and describe where the resolution of Red Flags were to be documented by year from 2006 to the present. Such information should specify whether the Due Diligence was to be contained on physical documents and/or specific data fields in any system You maintained. For each data field, by year, state where such Due Diligence may be stored.

**Response:**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects as the Interrogatory is not limited to documents regarding Cobb County or to documents regarding The Relevant Opioids, nor is it limited to the timeframe appropriate for Publix in the litigation. Publix also objects to the terms "Due Diligence" and "Red Flags" as defined by Plaintiff are vague, overly broad and unduly burdensome. Publix also objects to the phrase "resolution of Red Flags were to be documented" as vague and undefined. Publix objects that this Interrogatory is duplicative of Interrogatory Nos. 6 and 12, and of Request for Production, No. 18. Publix further objects to the Interrogatory to the extent it purports to incorporate and apply obligations imposed on Publix by any law or regulation and misstates or misapplies any such obligation.

Confidential:  Subject to Protective Order

Subject to and without waiving the foregoing and its General Objections, Publix refers plaintiff to its Objections and Responses to Interrogatories Nos. 6 and 12 above, and the references cited therein, as well as Publix's Responses and Objections to Request for Production, No. 18.

**SUPPLEMENTAL RESPONSE:** Publix objects to the use of the term "due diligence" in this Interrogatory, as this term is used by Plaintiff under the incorrect assumption that the undertaking of "due diligence" somehow requires documentation by Publix when performing any assessment of "red flags" during dispensing activities, which it does not. Further, the term of "due diligence" is a concept more properly used when discussing orders from Publix stores to its Orlando warehouse for intra-company transfers of controlled substances.

Subject to and without waiving its foregoing objections and statements, Publix identifies the following R&P Guide documents produced by Publix: PUBLIX-MDLT8-00000012 - PUBLIX-MDLT8-00056774. More specifically, Publix refers Plaintiff to Chapter 7 of the Pharmacy Reference & Procedure Guide dated 4/1/2005 produced to Plaintiff at PUBLIX-MDLT8-00028155 - PUBLIX-MDLT8-00028172, Chapter 8 of the Pharmacy Reference & Procedure Guide dated 7/25/2012 produced to Plaintiff at PUBLIX-MDLT8-00027405 - PUBLIX-MDLT8-00027449, Chapter 8 of the Pharmacy Reference & Procedure Guide dated 9/4/2013 produced to Plaintiff at PUBLIX-MDLT8-00031379 - PUBLIX-MDLT8-00031426, Chapter 8 of the Pharmacy Reference & Procedure Guide dated 2/24/2016 produced to Plaintiff at PUBLIX-MDLT8-00005092 - PUBLIX-MDLT8-00005151, and Chapter 8 of the Pharmacy Reference & Procedure Guide dated 8/11/2021 produced to Plaintiff at PUBLIX-MDLT8-00056044 - PUBLIX-MDLT8-00056142 from which Plaintiff may obtain such relevant information in accordance with Federal Rule of Civil Procedure 33(d).  To be clear, Publix pharmacists were to assess,

Confidential:  Subject to Protective Order

review, and fill (where necessary) prescriptions in accordance with (1) their professional training and judgment; (2) Federal and Georgia state laws; and (3) the Publix R&P Guide.

Regarding the documentation of any "due diligence" activities (and preserving Publix's objection to the use of that term as it is not properly used to refer to dispensing activities), some documentation exists of analysis performed or efforts made by Publix pharmacists to investigate or understand indicia that a prescription may be presented for not legitimate purposes.  For instance, the dispensing data produced by Publix would reflect prescriptions that were not filled or "cancelled" as stated above.  Further, as Plaintiff is aware and in accordance with the Parties' understanding and the orders from the Court, Publix is investigating the existence of prescription notes for the random sample of 1,450 prescriptions generated by Plaintiffs from Publix's dispensing data.  The electronic notes and any scanned hard copy notes will provide examples of such documentation.

23.     Please identify the names of all regions You used internally for purposes of distribution, sales and/or internal organization that encompass Cobb County from 1996 to present and, to the extent the region's name and/or geographic scope has changed during that time, identify the dates for each change and the nature of the change.

**<u>Response</u>:**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects as the Interrogatory is not limited to the timeframe appropriate for Publix in the litigation. Publix further objects to the terms "distribution, sales and/or internal organization" as undefined and vague.  Publix also objects that the Interrogatory's request for information about "distribution" is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation.

Subject to, and without waiving the foregoing and its General Objections, and to the

Confidential:  Subject to Protective Order

extent Publix understands Plaintiff's request, Publix states that it refers to  the division encompassing Cobb County as the "Atlanta division" and is not aware of any other "names" used by Publix responsive to this Interrogatory.

24.    For each of Your pharmacies located in or providing services or any drug to Cobb County, please identify the following:

(a) All DEA Registration Number(s) held by each such pharmacy,

(b) The identity of the corporate entity that holds each DEA Registration Number(s) identified pursuant to the above,

(c) The corporate entity who manages or operates the pharmacies identified above,

(d) The corporate entity who owns the physical pharmacy and building,

(e) The corporate entity who employs the pharmacy staff at each physical pharmacy identified above.

To the extent there have been changes over time, identify the date that a change occurred and identify the nature of the change(s) by providing complete chronological information from 1996 to present.

**Response**:      In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the timeframe appropriate for Publix in the litigation.  Publix further objects to the Interrogatory to the extent it seeks information on "any drug," which is in excess of the information required about the Relevant Opioids. Publix further objects to the Interrogatory to the extent it seeks information on "providing services," which is not defined and is therefore vague. Publix further objects to this Interrogatory to the extent it seeks information duplicative of Interrogatory No. 1 above, as well as Publix's previously produced dispensing data which included a Store List of

Confidential:  Subject to Protective Order

Publix pharmacies.  Publix further objects to sub-section (d) as not relevant and not related to any claims or defenses in this litigation.

Subject to and without waiving the foregoing and its General Objections, Publix states that Publix Super Markets, Inc. operates its retail pharmacies in Cobb County, Georgia and employs the pharmacy staff.  Publix refers Plaintiff to its response to Interrogatory No. 1 above, as well as its October 19, 2021 production of its dispensing data, which includes the pharmacy store information requested.

**SUPPLEMENTAL RESPONSE:** Subject to the foregoing objections and incorporating the information already cited and provided, Publix states that it Publix provided the responsive information in response to Interrogatory No. 1 (store numbers, DEA registration numbers, addresses) answering subpart (a).  Further, Publix responded to subparts (c) and (e) previously.  This leaves only:

> (b)      The identity of the corporate entity that holds each DEA Registration Number(s) identified pursuant to the above; and
> (d)      The corporate entity who owns the physical pharmacy and building,

Publix Super Markets, Inc. holds the DEA registration number for each of the Cobb County stores.  Regarding the entity that owns the real estate, Publix objects that this request is overbroad and not seeking discoverable or relevant information for purposes of the claims made in this case.

25.      For each distribution center who provides any distribution into Cobb County, please identify the following:

> (a) All DEA Registration Number(s) held by each such distribution center,

> (b) The identity that holds each DEA Registration Number(s) identified pursuant to the above,

> (c) The corporate entity who manages or operates the distribution center,

> (d) The corporate entity who owns the physical distribution center and building, and

(e) The corporate entity who employs the distribution center staff working at the respective distribution center.

To the extent there have been changes over time, identify the date that a change occurred and identify the nature of the change(s) by providing complete chronological information from 1996 to present.

**Response:**     In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to the relevant timeframe.  Publix also objects to the Interrogatory to the extent it seeks information about "any distribution into Cobb County" and is therefore not limited to documents regarding the Relevant Opioids or even to Publix "distribution center."  As stated in this request, the Interrogatory could refer to distribution of non-parties and/or third-parties.  Publix also objects that the Interrogatory's request for information about "distribution" is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation. Publix objects that this Interrogatory is duplicative of Interrogatory No. 1 above.

Subject to and without waiving the foregoing and its General Objections, Publix refers Plaintiff to its objections and responses to Interrogatory No. 1 above, and further states that Publix Super Markets, Inc. owns and operates its pharmacy warehouse.

26.     For any council, committee, task force or working group of any industry trade group or association responsive to Plaintiffs' Request for Production to Chain Pharmacy Defendants In Prior MDL Cases, Requests 38 and 39, or responsive to Plaintiffs' Request for Production to New Chain Pharmacy Defendants That Have Not Participated in Prior MDL Cases, Requests 40 and 41, please list all employees who served on any such council, committee, task force or working group along with the position(s) held by such employee and the associated dates of service.

Confidential:  Subject to Protective Order

**Response**:        In addition to its General Objections and its Objections to Definitions and Instructions, which are incorporated herein, Publix objects that the Interrogatory is not limited to documents regarding The Relevant Opioids, is not limited to the timeframe appropriate for Publix in the litigation, and seeks information not relevant to any party's claims or defenses. Publix further objects that the terms "council, committee, task force or working group of any industry trade group or association" are undefined and vague.  Further, Publix objects to the Interrogatory to the extent is seeks information about "all employees," which is unduly burdensome and not relevant to any party's claims or defenses.  Publix objects that this Interrogatory is unduly burdensome and not proportional to the needs of, and not related to any claims or defenses in, the litigation.  Subject to and without waiving the foregoing and its General Objections, Publix refers plaintiff to its objections to Request for Production, Nos. 40 and 41.

**SUPPLEMENTAL RESPONSE:** Subject to and without waiving its general and specific objections to this Interrogatory, Publix supplements its response as follows:

On June 2, 2022 the parties met and conferred about narrowing the scope of this request in order to enable Publix to conduct a reasonable investigation and respond in line with the relevant topic of this litigation – opioids, and Plaintiff agreed to provide a more narrow list of organizations that it would like Publix to look into its employee's involvement with.  Publix will supplement this response after the parties reach agreement on a reasonable approach to narrowing Interrogatory No. 26.

Dated: June 16, 2021                                     Respectfully submitted,

                                                         */s/ Meredith Thornburgh White*
                                                         Meredith Thornburgh White (IN 28094-49)
                                                         Kara M. Kapke (IN 25906-49)

Confidential:  Subject to Protective Order

BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
Facsimile:   (317) 231-7433
mwhite@btlaw.com
kkapke@btlaw.com

*Attorneys for Defendant Publix Super Markets, Inc.*

**Confidential:  Subject to Protective Order**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2022, I caused the foregoing to be served via electronic mail on counsel of record in this case to the following:

For Plaintiffs: mdl2804discovery@motleyrice.com

For Defendants: tracks6to10defendants@bbhps.com

*/s/ Meredith Thornburgh White*
Meredith Thornburgh White