# EXHIBIT 21

```
 1                 UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF OHIO

 3                      EASTERN DIVISION

 4       *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

 5    IN RE:  NATIONAL PRESCRIPTION OPIATE LITIGATION

 6    This Document relates to:

 7    Case Track 8                    MDL No. 2804
                                      Case No. 17-md-2804
 8
         *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
 9
                         HIGHLY CONFIDENTIAL
10
            SUBJECT TO FURTHER CONFIDENTIALITY REVIEW
11

12    REMOTE VIDEOTAPED DEPOSITION OF LINDSAY BURCKHALTER

13
                         August 11, 2023
14                  10:06 a.m. to 2:28 p.m.


15             REPORTED BY ANITA KORNBURGER
               REGISTERED PROFESSIONAL REPORTER
16

17


18
         *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
19

20


21


22


23


24
```

```
 1                    A P P E A R A N C E S

 2    SIMMONS HANLY CONROY, LLC, by
      Ms. Jayne Conroy
 3    Ms. Mildred Conroy
      Ms. Sarah Burns
 4    Ms. Ellyn Hurd
      Ms. Laura Fitzpatrick
 5    112 Madison Avenue
      New York, NY  10016
 6    618-259-2222
      JConroy@simmonsfirm.com
 7    Appearing by videoconference on behalf of the
      Plaintiff.
 8
      BARNES & THORNBURG LLP, by
 9    Mr. JT Larson, Jr.
      Mr. James Madicka
10    Ms. Monica Brownewell
      Mr. Ryan Moore
11    Mr. Frank Mattingly
      11 South Meridian Street
12    Indianapolis, Indiana 46204
      317-231-7205
13    jtlarson@btlaw.com
      Appearing by videoconference on behalf of the
14    Defendant, Publix.

15    NAPOLI SHKOLNIK & ASSOCIATES, PLLC, by
      Mr. Salvatore C. Badala
16    360 Lexington Ave., Suite 1101
      New York, NY 10017
17    212-397-0000
      salvatore@nsprlaw.com
18    Appearing by videoconference on behalf of the
      Defendant, Kroger.
19

20    ALSO PRESENT:  Brannen Wilson, Publix
                     Bill Hammond, Publix
21                   Jonathan Jaffe

22


23


24
```

```
 1                    I N D E X

 2
     Examination by                              Page
 3
     Ms. Conroy. . . . . . . . . . . . . . . . . . 5
 4

 5
                        E X H I B I T S
 6
                                                 Page
 7   Exhibit No.   Description                 Identified

 8      1          Notice. . . . . . . . . . . . . . 48

 9      2          Deposition notes. . . . . . . . . 49

10      3          Chapter 8, Regulations and
                   Associated Publix Policies. . . . 75
11
        4          Pharmacy advocacy meetings. . . .112
12
        5          Publix Opioid Task Force
13                 PowerPoint. . . . . . . . . . . .123

14      6          P-PUB 507. . . . . . . . . . . . 130

15      7          E-mail from Kimberly Bone. . . . 140

16

17     (Original exhibits attached to original transcript.
             Copies provided to all counsel.)
18

19

20
                         R E Q U E S T S
21

22
              (There were no requests made.)
23

24
```

```
 1                TRANSCRIPT OF PROCEEDINGS
 2                THE VIDEOGRAPHER:  Good morning.  We are
 3   now on the record.  My name is Bill Geigert.  I'm
 4   the videographer for Golkow Litigation Services.
 5                Today's date is August 11, 2023,
 6   and the time is 10:06 a.m.
 7                This remote video deposition is
 8   being held in the matter of the National
 9   Prescription Opiate Litigation, in the United
10   States District Court, Northern District of Ohio,
11   Eastern Division.
12                The deponent is Lindsay
13   Burckhalter.
14                All parties to this deposition are
15   appearing remotely and have agreed to the witness
16   being sworn in remotely.  Due to the nature of
17   remote reporting, please pause briefly before
18   speaking to ensure all parties are heard
19   completely.
20                All counsel will be noted on the
21   stenographic record.
22                The court reporter is Anita
23   Kornburger, and she will now swear in the witness.
24                LINDSAY BURCKHALTER, called as a
```

1  witness herein, having been first duly sworn on

2  oath, was examined and testified as follows:

3              E X A M I N A T I O N

4  BY MS. CONROY:

5     Q.   Good morning, Ms. Burckhalter.  My name

6  is Jayne Conroy, and I'm from Simmons Hanly Conroy,

7  and I represent plaintiffs in this case.  And in

8  this case it's Cobb County.

9          Have you ever been deposed before?

10    A.   No, ma'am.

11    Q.   Okay.  Do you know what a plaintiff is

12 versus a defendant?

13    A.   The person asking the questions

14 representing the person doing the lawsuit?

15    Q.   That would be the -- the lawyer.  But the

16 plaintiff is the -- is the entity that's bringing

17 the lawsuit.  And --

18    A.   Correct.

19    Q.   -- in this case, Publix is the defendant,

20 okay?

21    A.   Okay.

22    Q.   And I'm going to ask questions, and

23 it's -- thank you for being on a Zoom today.  It

24 makes it a little bit easier for all of us.

```
 1         Q.    Correct.

 2         A.    So my -- I don't know that I have the

 3   same definition of diversion that you're referring

 4   to.  So -- what do you mean?

 5         Q.    What's your def -- what do you believe

 6   diversion of opioids is?

 7         A.    So I use that more as, you know, theft.

 8         Q.    And who taught you that?

 9         A.    I don't know that anybody taught me that.

10   That's just how I've always understood diversion

11   to -- what I've always understood it to mean.

12         Q.    So you would not identify an opioid that

13   was going to an individual who, for example, forged

14   a prescription, you would not identify that as

15   diversion?

16               MR. LARSON:  Object to form.  Go ahead,

17   Lindsay.

18               THE WITNESS:  I would not identify that

19   necessarily as diversion in my terms of the

20   definition.

21   BY MS. CONROY:

22         Q.    To you, diversion of an opioid is -- is

23   strictly if it's stolen out of a pharmacy or a

24   truck or something like that?
```

 1      A.    That's how I interpret diversion.

 2      Q.    So when you take a look back up on the

 3   screen of the red flag, the prescriber's practice

 4   is not near where the patient resides.  Why is a

 5   pharmacist concerned about that?

 6      A.    Well, I think a pharmacist would have to,

 7   again, do some extra research on that.  That could

 8   be totally normal.  That could be that it's a

 9   specialized treatment place.  That could be that

10   this patient that they know and have treated for a

11   long time has moved, you know, 25 miles away, but

12   has such a strong relationship with the pharmacy

13   team that they want to fill their prescriptions

14   there still.

15            That could mean nothing, or it could

16   mean that, you know, this person is driving too far

17   to get a prescription, and they've passed other

18   pharmacies.  And we just need to dig into that

19   and -- and figure it out.

20      Q.    I understand the reasons why it could be

21   a good prescription.  I'm trying to understand why

22   someone who passed a lot of other pharmacies on

23   their way to Publix, why that might be a suspicious

24   prescription.

1     Q.   Okay.  That's not -- all I'm getting at,

2  is that doesn't come within your responsibilities.

3  You would be --

4     A.   Right.

5     Q.   -- told if it was going to happen?  You

6  wouldn't be making the decision?

7     A.   That's -- that's correct.

8     Q.   Do you know if -- well, let -- you see

9  the checklist?  It's a little bit easier to

10  read -- sorry, going back to Exhibit 623.  It's

11  the -- right there.  There we go.

12               Do you know if Publix has anything

13  like this available for their pharmacists?

14          MR. LARSON:  Object to form.  Go ahead.

15          THE WITNESS:  I'm not aware of a

16  dispensing good faith checklist.

17  BY MS. CONROY:

18     Q.   Are you aware of anything that allows you

19  to check off, for example, like this first bullet

20  point, that a valid government photo ID was copied

21  and attached that -- and that, if available in your

22  state, the PDMP has been reviewed, anything like

23  that that's not called a good faith dispensing

24  checklist but allows pharmacists to check off as

```
 1  they go through certain activities?
 2       A.   Of dispensing a controlled substance
 3  prescription?
 4       Q.   Correct.
 5       A.   I'm not aware of a document, a checklist
 6  document.
 7       Q.   Okay.  Thank you.  Now I'd like to talk a
 8  little bit about time, and what happens in a
 9  pharmacy.  And let's talk a little bit about the
10  pharmacies in Georgia.  You have 77-hour pharmacies
11  and 70-hour pharmacies; is that correct?
12       A.   Yes, ma'am.
13       Q.   Okay.  And can you explain what
14  those -- what that means?  What's a 77-hour
15  pharmacy?
16       A.   The hours of the pharmacy are nine to
17  nine, Monday through Friday, nine to seven on
18  Saturday, and eleven to six on Sunday.  If you add
19  all that up over two weeks, it totals 77 hours.
20       Q.   Okay. And the pharmacists in a 77-hour
21  pharmacy work twelve-hour shifts; is that correct?
22       A.   They work twelve-hour shifts Monday
23  through Friday, ten-hour shifts on Saturday, and
24  seven-hour shifts on Sunday.
```

1      Q.   Okay.  Let me just ask a series of
2   questions, and I'm talking right now as of today,
3   August 11th of 2023.
4           Publix, with respect to their pharmacy
5   and their pharmacist, has no checklist to check
6   off -- or let me start again.
7           As of August 11th of 2023, Publix has
8   no written red flag checklist for their pharmacists
9   to complete?
10     A.   Are you referencing the list similar to
11  the Walgreens list?
12     Q.   Well, that's -- you could think about
13  that, but it could look like something else too.
14     A.   Publix does not have a checklist for red
15  flag analysis, if that's your question.
16     Q.   That's as of today; right?
17     A.   Not that I'm aware of as of today.
18     Q.   And as of today, August 11, 2023, Publix
19  does not track refusals to fill controlled
20  substance prescriptions, including opioid
21  prescriptions?
22          MR. LARSON:  Object to form.  Go ahead,
23  Lindsay.
24          THE WITNESS:  Publix does not have a

 1   spreadsheet tracking refusals to fill as of today.

 2   BY MS. CONROY:

 3       Q.   You just confused me with "spreadsheet."

 4   So is there some other way that Publix is tracking

 5   refusals to fill as of today?

 6       A.   If a pharmacist has made a note in

 7   Enterprise on a patient's profile, the note would

 8   remain there.  But no other way of tracking

 9   refusals to fill.

10       Q.   And as of today, does Publix track a note

11   that might be in Enterprise?  Is that something

12   that's tracked, a refusal to fill that's noted in

13   Enterprise?

14       A.   When you say "track," what do you mean by

15   that?

16       Q.   Followed. Collected. Analyzed, that

17   sort of thing.  I appreciate that the note might be

18   there, but is Publix as a corporation looking and,

19   for example, doing a query and saying tell me how

20   many notes there are related to a refusal to fill?

21       A.   Not that I'm aware of.

22       Q.   Okay.  And as of today, August 11th of

23   2023, Publix does not document due diligence

24   related to the clearance of red flags?

```
 1              MR. LARSON:  Object to form.  Go ahead.
 2              THE WITNESS:  Publix does not -- so
 3   re -- can you restate that sentence for me?  Publix
 4   does not --
 5   BY MS. CONROY:
 6       Q.   Document due diligence related to
 7   clearing red flags.
 8              MR. LARSON:  Same objection.  Go ahead.
 9              THE WITNESS:  There's not documentation
10   related to clearing red flags.  However, if a
11   pharmacist feels -- fills a prescription, then they
12   have cleared those red flags.
13   BY MS. CONROY:
14       Q.   Okay.  And just very similar to that last
15   question, Publix doesn't require the documentation
16   of due diligence related to clearing red flags?
17   That's true as well; correct?
18              MR. LARSON:  Object to form.  Go ahead,
19   Lindsay.
20              THE WITNESS:  Publix does not require
21   documentation of clearing red flags.
22   BY MS. CONROY:
23       Q.   And as of today, August 11th of 2023,
24   Publix does not block prescribers from having their
```

 1  prescriptions filled by their patients; is that

 2  correct?

 3          MR. LARSON: Object to form. Go ahead,

 4  Lindsay.

 5          THE WITNESS: If that prescriber has,

 6  like, a DEA that's inactive, they will be blocked,

 7  but --

 8  BY MS. CONROY:

 9      Q.  I'm talking about -- so they would be

10  blocked when the pharmacist attempts to fill the

11  prescription; correct?

12      A.  If they do not have a DEA, that's

13  correct.

14      Q.  Right. But does -- does Publix as an

15  entity block particular prescribers, for whatever

16  reason, that is then communicated to Publix

17  pharmacists?

18          MR. LARSON: Object to form. Go ahead.

19          THE WITNESS: Publix does not communicate

20  information about prescribers. Is that what you're

21  asking me?

22  BY MS. CONROY:

23      Q.  I'm asking whether -- I understand that

24  if the DEA number is not correct, you cannot fill

1  the prescription.

2      A.   Right.

3      Q.   What I'm asking about is something a

4  little bit different.

5      A.   Okay.

6      Q.   That Publix -- does Publix block -- a

7  wholesale block of a prescriber and say we will not

8  allow any Publix pharmacy to fill a prescription

9  for, for example, Dr. Smith?

10          MR. LARSON:  Same objection.  I'm sorry.

11  Go ahead.

12          THE WITNESS:  No, that -- that would be

13  considered practicing pharmacy.  So no, Publix does

14  not do that.

15  BY MS. CONROY:

16      Q.   Okay.  And as of today, August 11th of

17  2023, controlled substances, including opioids, are

18  included in your bonus calculations for pharmacists

19  and other Publix employees above them; is that

20  true?

21          MR. LARSON:  Object to form.  Go ahead,

22  Lindsay.

23          THE WITNESS:  Publix employees above

24  them?

```
 1   BY MS. CONROY:
 2        Q.   Right.  For example, like yourself.
 3        A.   You're saying that I get bonused for
 4   their prescription filling?
 5        Q.   Well, if you are -- well, let me ask it
 6   this way.
 7             When we were looking at the bonus
 8   structure, the supervisor that's in that chain
 9   would also get a bonus, correct, based on the
10   profitability of -- of his or her stores that she's
11   monitoring and the number of scripts using the
12   calculation?
13        A.   No.
14        Q.   So the only -- the only individuals
15   getting bonused are the pharmacists?
16        A.   For the quarterly retail bonuses, yes.
17        Q.   Okay.  So let me change the question
18   then.
19             So as of today, August 11th of 2023,
20   controlled substances, including opioids, are
21   included in Publix's bonus calculations for
22   pharmacists?
23        A.   All prescriptions are included in the
24   bonus calculations.
```