# EXHIBIT 45

**Confidential – Subject to Protective Order**

**IN RE: OPIOID LITIGATION**
**Civil Action No. 17-md-2804 PHARM**
**In the Circuit Court of Cobb County, Georgia**

**Pharmacy Expert Specific Opinion of**
**Carmen A. Catizone, MS, RPh, DPh**

## Summary

This supplemental report provides the opinions I intend to offer at trial, and the reasons and bases for those opinions regarding: (1) the minimum standards of pharmacy in Georgia, (2) the Drug Utilization Review ("DUR") requirements of Georgia, (3) Georgia's Prescription Drug Monitoring Program ("PDMP"), (4) analysis of certain prescribers whose prescriptions were filled in Cobb County, (5) analysis and review of hard copy prescriptions and notes fields produced by Defendants for a sample of the red flag prescriptions dispensed in Cobb County, and (5) the pharmacy practices of the Defendants as determined by my review of discovery in the MDL litigation and based on a search of publicly available documents. This report refers to Kroger and Publix collectively as "Defendants" or the "Chain Pharmacies."

## Corporate Oversight and Georgia Regulations in the Practice of Pharmacy

Pharmacies are registrants under the Controlled Substances Act and licensed to dispense controlled substances and other medications so long as they comply with important responsibilities and duties in the practice of pharmacy. Chain Pharmacies are subject to several legal obligations. The requirements in Georgia are similar to the legal requirements across states.[1] Some of the minimum standards for a pharmacy under the Rules of Georgia Board of Pharmacy include:[2]

### Rule 480-5-.03(c) Code of Professional Conduct

(c)      Error or Uncertain Prescriptions. No pharmacist or pharmacy intern/extern shall compound or dispense any prescription, which, in his/her professional opinion, contains any error omission, irregularity or ambiguity. Upon receipt of such prescription, the pharmacist, pharmacy intern/extern shall contact the prescriber and confer with him/her before dispensing the

---

[1] *See* Georgia Board of Pharmacy Rule 480-10-.01-.21. The GCSA is based on the Uniform Controlled Substances Act (1970, 1990, and 1994 Acts) ("UCSA"), which was "drafted to maintain uniformity between the laws of the several States and those of the federal government." Unif. Controlled Substances Act (amended 1994), 9 U.L.A. 5, Pt. II.

[2] Georgia Pharmacy Practice Act, Ga. Code Ann., § 26-4-111(d) ("The board shall specify by rule minimum standards for responsibility of any person or pharmacy that has employees or personnel engaged in the practice of pharmacy, manufacture, distribution, production, sale, or use of drugs or devices in the conduct of their business. If the licensed person is a pharmacy located in this state, that portion of the facility to which such license applies shall be operated only under the direct supervision of a pharmacist licensed to practice in this state.").

1


PLAINTIFF TRIAL
EXHIBIT
P-01354

Confidential – Subject to Protective Order

prescription. No pharmacist or intern/extern shall dispense any medication by virtue of a prescription if said pharmacist or intern has any doubt existing in his mind that such prescription is not legitimate.

### Rule 480-10-.01 Controlled Substances and Dangerous Drugs: Inspection, Retention of Records and Security

(1) Every retail pharmacy, possessing or having possessed any controlled substances and/or dangerous drugs, within a period of two years, and/or possessing any record related to the same, which is required to be kept by O.C.G.A. T. Ch. 16-13, shall exercise diligent care in protecting such controlled substances and/or dangerous drugs and/or records related to the same from loss or theft.

(a) Every licensed retail pharmacy shall ensure that all controlled substances and/or dangerous drugs are purchased from and/or returned to firms holding a current permit issued by the Georgia State Board of Pharmacy (Board). This requirement can be met by a pharmacy maintaining a copy of such firms' current Georgia Board permit.

(2) All controlled substances and/or dangerous drugs shall be kept in the prescription department, accessible only to an authorized person, except where contained in a collection receptacle compliant with state and federal law and regulation.

(3) The Georgia Drugs and Narcotics Agency (GDNA) shall have the authority to conduct inspections of any place or premises used by any such licensed retail pharmacy in relation to such controlled substances and/or dangerous drugs and/or any records pertaining to their acquisition, dispensing, disposal, or loss.

(4) The GDNA shall have the authority to examine, copy, or remove all such records, and to examine, copy, remove, or inventory all such controlled substances and/or dangerous drugs.

(a) It shall be the responsibility to such person possessing such controlled substances and/or dangerous drugs and/or records to make the same available for such inspection, copying, examination, or inventorying by said GDNA.

(b) At the conclusion of an inspection, the GDNA personnel examining said drugs and/or records shall have the responsibility of providing to such retail pharmacy a copy of an inspection report on which any deficiencies or violations are made along with any recommendations, if any, concerning the satisfactory storage, keeping, handling and security of controlled substances and/or dangerous drugs.

(5) Any person possessing controlled substances and/or dangerous drugs and/or records may request that such an inspection be made, and upon receipt of such

2

Confidential – Subject to Protective Order

written request, the GDNA Director shall make, or cause to be made, without reasonable delay, an inspection in compliance with said request.

**Rule 480-10-.03 Location of Dangerous Drugs (Legend Drugs), Controlled Substances, and Poisons**

    (1)    All drugs or devices which bear, or are required to bear, upon the package, the words "Caution, Federal Law Prohibits Dispensing Without Prescription", "Rx Only", or words of like import, shall be stored within the prescription department of the pharmacy possessing such drugs or devices; and

    (2)    All dangerous drugs (legend drugs), controlled substances, or poisons shall be kept in the prescription department, and shall be kept from the public in a secure manner.

**Rule 480-10-.07 Sanitation**

No Pharmacy shall operate a prescription department which is under unclean, unsanitary, overcrowded, or unhealthy conditions, or under any condition which endangers the health, safety or welfare of the public.

Furthermore, like the CSA, the GCSA imposes a corresponding duty on pharmacists: "The responsibility for the proper prescribing of controlled substances is upon the prescribing practitioner, but the pharmacist is responsible for the proper filling of the prescription drug order." GA. COMP. R. & REGS. 480-22-.02(1) ).

Likewise, Georgia Code requires that "Prescription drugs shall be dispensed only pursuant to a valid prescription drug order.   A pharmacist shall not dispense a prescription which the pharmacist knows or should know is not a valid prescription.   A pharmacist shall have the same corresponding liability for prescriptions as an issuing practitioner as set forth in 21 C.F.R. Part 1304 as such regulation exists on January 1, 2013.   Valid prescription drug orders shall include those issued by a physician, dentist, podiatrist, veterinarian, or other person licensed, registered, or otherwise authorized under the laws of this state, or of any state or territory of the United States, to prescribe dangerous drugs or controlled substances or both." GA Code Ann. Section 26-4-80(b).

In addition to these basic minimum standards for the practice of pharmacy, it is pharmacy standard of care and a best practice, as well as a regulatory requirement in Georgia to conduct Drug Utilization Reviews ("DUR").

**DUR Process**

The Omnibus Budget Reconciliation Act of 1990 ("OBRA '90") laid out responsibilities for pharmacies to ensure that prescriptions were appropriate for and understood by, Medicaid beneficiaries.  OBRA '90 had several major components: 1) Prospective Drug Use Review, 2)

P-01354_3

Confidential – Subject to Protective Order

Retrospective Drug Use Review, 3) Assessment of Drug Use Data, and 4) Educational Outreach Programs.[3]

The DUR process is a foundational component of the practice of pharmacy and is defined by state practice acts and rules.  It is also a key tenet of the standards of care for the practice of pharmacy.  The DUR process has been a component of the legal and standard of care requirements for pharmacy practice since before the enactment of OBRA '90.  The Georgia Pharmacy Practice Act in 1998 required the following for Prospective Drug Utilization Review:

1.  A pharmacist shall review the patient record and each Prescription presented for Dispensing for purposes of promoting therapeutic appropriateness by identifying:

    (i)     over-utilization or under-utilization;
    (ii)    therapeutic duplications;
    (iii)   drug-disease contraindications;
    (iv)   Drug-Drug interactions;
    (v)    incorrect Drug dosage or duration of Drug treatment;
    (vi)   Drug-allergy interactions;
    (vii)  clinical abuse/misuse.

2.  Upon recognizing any of the above, the Pharmacist shall take appropriate steps to avoid or resolve the problem which shall, if necessary, include consultation with the Practitioner.

Ga. Code Ann., § 26-4-84.

The DUR process is especially important for the assessment of the appropriateness of prescribed controlled substances, such as opioids, which have a high propensity for abuse and addiction.  Such an assessment should examine over-utilization, inappropriate duration of treatment, drug interactions, and therapeutic duplication in order to provide appropriate care and identify abuse and misuse of these dangerous drugs.  Communities where opioids were readily available and prescribed liberally were the first areas to experience markedly increased opioid abuse.

**Prescription Drug Monitoring Program in Georgia**

The majority of PDMP programs were established in the states to help combat the growing opioid epidemic.  PDMPs may provide valuable information to aid dispensing decisions.  Georgia implemented its PDMP after the Georgia House of Representatives and Georgia Senate signed the necessary legislation in 2011.[4]

---

[3] Vivian, J.C., & Fink III, Joseph, *OBRA '90 at Sweet Sixteen: A Retrospective Review,* U.S. Pharmacist, March 20, 2008.

[4] Georgia 151st General Assembly, Senate Bill 36, July 1, 2011  ("[T]he board shall, in consultation with members of the Georgia Composite Medical Board, establish and maintain a program to electronically record into an electronic data base prescription information resulting from the dispensing of Schedule II, III, IV, or V controlled substances and to electronically review such prescription information that has been entered into such data base.").

4

Confidential – Subject to Protective Order

Georgia's PDMP is a statewide electronic database which contains dispensing information on scheduled controlled substances, as well as any non-controlled substances for which the Georgia Board of Pharmacy requires information to be submitted.[5] Georgia PMP AWARxE ("AWARxE") is the software user interface Bamboo Health developed and deployed for Georgia PDMP access.[6] Pharmacies submit prescription information into AWARxE when a controlled substance is dispensed.[7]  As authorized users at the time AWARxE was established, pharmacists could access this database before dispensing as a screening tool to assist in decision making by consulting the patient's prescription history in AWARxE. The Georgia Department of Public Health created a training guide to demonstrate how AWARxE may be accessed and used.[8]

The CDC recognizes that PDMPs improve patient safety by allowing clinicians to:

> 1) Identify patients who are obtaining opioids from multiple providers.
> 2) Calculate the total amount of opioids prescribed per day (in MME/day).
> 3) Identify patients who are being prescribed other substances that may increase risk of opioids—such as benzodiazepines.
> 4) Information in PDMPs is potentially life-saving and allows pharmacists to identify patients who may be misusing prescription opioids or at risk for overdose. [9]

Georgia's PDMP law provides that:

> A.  For purposes of the PDMP, each dispenser shall submit to the department by electronic means information regarding each prescription dispensed for a Schedule II, III, IV, or V controlled substance. The information submitted for each prescription shall include at a minimum, but shall not be limited to:
>
> 1. DEA permit number or approved dispenser facility controlled substance identification number;
> 2. Date the prescription was dispensed;
> 3. Prescription serial number;
> 4. If the prescription is new or a refill;
> 5. National Drug Code (NDC) for drug dispensed;
> 6. Quantity and strength dispensed;
> 7. Number of days supply of the drug;

---

[5] Ga. Code Ann., § 16-13-59(a) ("For purposes of the program established pursuant to Code Section 16-13-57, each dispenser shall submit to the board by electronic means information regarding each prescription for which a Schedule II, III, IV, or V controlled substance was dispensed.")

[6] https://dph.georgia.gov/faqs.

[7] Id.

[8] Georgia Department of Public Health, *Data Submission Dispenser Guide Georgia Prescription Drug Monitoring Program*, (July 2017),

https://dph.georgia.gov/sites/dph.georgia.gov/files/GA%20PDMP%20Dispenser%20Guidev1.2.pdf.

[9]  CDC, Prescription Drug Monitoring Programs (PDMPs): What Healthcare Providers Need to Know, https://www.cdc.gov/opioids/healthcare-professionals/pdmps.html.

5

Confidential – Subject to Protective Order

8.  Patient's name;
9.  Patient's address;
10. Patient's date of birth;
11. Patient gender;
12. Method of payment;
13. Approved prescriber identification number or prescriber's DEA permit number;
14. Date the prescription was issued by the prescriber; and
15. Other data elements consistent with standards established by the American Society for Automation in Pharmacy, if designated by regulations of the department.

B.  Each dispenser shall submit the prescription information required in subsection (a) of this Code section in accordance with transmission methods established by the department at least every 24 hours. If a dispenser is temporarily unable to comply with this subsection due to an equipment failure or other circumstances, such dispenser shall immediately notify the board and department.[10]

The DUR process and state PDMPs are key instruments for pharmacies to identify and prevent diversion.  As rates of PDMP participation increase, measures of doctor shopping and prescribing of certain controlled substances decline.  Reliable data suggest that PDMP utilization helps to promote medically warranted prescribing and dispensing, and assists in detecting possible controlled substance misuse and diversion.[11]

As the opioid epidemic continued to rise, regulations on the utilization of checking AWARxE simultaneously increased. Pharmacy Defendants should have been encouraging their pharmacists to check the PDMP more often.  Even after PDMP became accessible to pharmacists, Kroger and Publix had no way to ensure that pharmacists were actually checking it.[12] In fact, Publix does not even require its pharmacists to check PDMPs prior to dispensing controlled substances unless the state where they are practicing mandates it.[13] Publix has known for some time that it "is not the norm" for their pharmacists in Georgia to check the PDMP for controlled substance prescriptions.[14] Additionally, while a state PDMP is important, in states like Georgia where the PDMP was implemented relatively late, pharmacies should have been all the more utilizing and reviewing their own dispensing data to detect red flags and prevent diversion. Having pharmacies in states other than Georgia, Publix was aware of the value of utilizing PDMP data and identifying red flags and should have created programs to likewise utilize their own data. In fact, as late as November of 2018, Publix wrote that it was their "responsibility to monitor the dispensing patterns associated with controlled substances," but also noted that this effort was "in it's infancy."[15]

---

[10] Ga. Code Ann., §16-13-59.
[11] PDMP Center of Excellence, *Mandating PDMP participation by medical providers: current status and experience in selected states*, at 3, Brandeis University (Feb. 2014).
[12] Aug. 25, 2022, Estete Getachew-Smith Deposition, 122:13-123:7.
[13] Nov. 15, 2022, Jillanne Smith Deposition (hereafter "Smith Dep."), 369.
[14] PUBLIX-MDLT8-000743321.
[15] PUBLIX-MDLT8-00079714

6

Confidential – Subject to Protective Order

## Georgia Drug and Narcotics Agency Inspections

Based on my experience with the National Association of the Board of Pharmacy, I am familiar with the types of inspections performed by State Boards of Pharmacy around the country including in Georgia.  The Georgia Board of Pharmacy has authority over the control and regulation of the practice of pharmacy including the licensing and regulation of pharmacies and pharmacists.[16] The Georgia Drugs and Narcotics Agency("GDNA") is the enforcement arm of the Georgia Board of Pharmacy and it is the GDNA that is charged with enforcing Georgia laws and rules pertaining to manufactured or compounded drugs and to ensure only licensed facilities or persons dispensed or distributed pharmaceuticals.[17]  As such, the GDNA has two primary functions: conducting inspections and conducting investigations.[18]  In this role, the GDNA is responsible for the enforcement and oversight of roughly 3,700 in-state pharmacy facility licenses conducting both initial and routine inspections of these facilities.[19]  GDNA inspections do not guarantee that a particular pharmacy is adequately controlling and dispensing controlled substances. These are merely point in time assessments that looked at a large range of requirements in a very short period of time.[20] As part of their routine inspections, GDNA agents visit each store roughly once every year and a half to two years at best and the duration of such inspections varies from one and a half to four hours.[21]  The frequency and random selection of pharmacies for inspection as well as the testimony of Agents Durham and Kaptain suggests the GDNA did not systematically or specifically examine pharmacies to determine if excessive or inappropriate dispensing was occurring.

GDNA agents' inspection topics were devoted mainly to ensuring pharmacies were aware of their compliance obligations with state and federal laws and responding to complaints. The Board's inspection reports for some Chain Pharmacy Defendants further confirm its primarily complaints-driven and administrative oversight role.  The reports, which agents complete through a series of interview questions, are largely devoted to determining a pharmacy's licensing and recordkeeping compliance.  Other topics covered in the inspections ask about the cleanliness of the pharmacy or whether the pharmacy maintains a library of Georgia drug laws.  Some questions focus on the vaccine protocols, asking if liability insurance is available for each pharmacist as well as a vaccination agreement.  Other questions in the inspection look at proper temperature controls and security.

The limited nature of the inspection is reflected by the possible answers to questions, which are either "yes" or "no," with an opportunity to record comments and recommendations.[22]  Out of the

---

[16] Georgia Pharmacy Practice Act, Ga. Code Ann., § 26-4-28.
[17] Sept. 14, 2023, Dennis Troughton, GDNA 30(b)(6), Deposition (hereafter "Troughton Dep."); Troughton Exhibit 6.
[18] Troughton Dep. at 173:3-19.
[19] Troughton Dep. at 177:25-178:7.
[20] *See generally* Troughton Dep. 82:13-20; 138:23-139:12; 171:4-14; 183:19-185:12; 220:2-5. *See also* Aug. 30, 2023, Kimberly Kaptain Deposition (hereafter "Kaptain Dep."), 131:22-136:11; 156:8-19 and Aug. 25, 2023, Eric Durham Deposition (hereafter "Durham Dep."), 143:20-146:16.
[21] Kaptain Dep. at 127:22- 128:7; Durham Dep. at 142:25-143:11; Troughton Dep. at 179:18-180:20. *See also* Durham Depo at 134:19-135:3.
[22] PUBLIX-MDLT8-00121623 at 00121625-26.

Confidential – Subject to Protective Order

forty questions in the inspection report, only a few directly address diversion or inappropriate dispensing. For example, criteria numbers four and five inquire into the satisfactory dispensing of "Dangerous Drug Rxs" and "Schedule II Rxs."[23] Inspections are not designed to review prescriptions for identification and resolution of red flags beyond an instant snapshot of activity in the pharmacy.[24]

In my review of the GDNA inspections, the offenses relate to such issues as: DEA permits being posted, proper supervision of pharmacy technicians, drug distribution records, exemption documentation reports, Scheduled prescriptions, dangerous drugs, pharmacists licenses being posted, signing and verifying the CII-CIII log, DEA biennial inventory, counseling, and having the proper equipment.[25]

Of note, Publix store 280 in Marietta, Georgia, was inspected on 8/5/2019, and the inspector found that there was a CIII medication by a Nurse Practitioner that did not contain information for the delegating physician.[26] Publix store 496 in Powder Springs was inspected on 6/29/2017, and the inspector noted that they were not satisfactory for certain Scheduled prescriptions. The inspector commented that all prescriptions must meet the minimum requirements for a prescription, citing two prescriptions that did not have a practitioner's signature. The inspection also notes that a controlled substance that is printed out or faxed by the practitioner must be manually signed.[27] Publix store 548 in Marietta was inspected on 11/20/2019 and had similar concerns for Schedule II prescriptions, noting that multiple CII prescriptions were electronically signed and not manually signed or not signed by the delegating physician.[28] On 3/31/2017, Publix store 672 in Marietta was inspected, and the inspector noted multiple concerns with Controlled Substance dispensing, including the pharmacist physically signing Schedule II prescriptions, Controlled Substance prescriptions that are faxed or printed out must be manually singed by the practitioner, and the delegating physician must be on drug orders. In fact, the inspector notes that this is a second notice of concern related to the Publix Pharmacy filling CS prescriptions that are not manually signed by the practitioner.[29] Other Publix pharmacies in Cobb County with Controlled Substance related inspection concerns are noted in the footnote.[30]

---

[23] Id. at 00121625.
[24] Troughton Dep. 82:13-20; 138:23-139:12; 171:4-14; 183:19-185:12; 220:2-5. *See also* Kaptain Dep. at 131:22-136:11; 156:8-19 and Durham Dep. at 143:20-146:16.
[25] GDNA00002042, GDNA00005467, GDNA00005596, GDNA00005740, GDNA00005893, GDNA00006013, GDNA00006132, GDNA00001121, GDNA00004378, GDNA00004478, GDNA00004580, GDNA00004689
[26] GDNA00005740 at 5743
[27] GDNA00005740 at 5816
[28] GDNA00005740 at 5837
[29] GDNA00006013 at 6027
[30] GDNA00005740 at 5785, GDNA00005740 at 5791, GDNA00005740 at 5806, GDNA00005740 at 5858, GDNA00005740 at 5861, GDNA00005740 at 5863, GDNA00005893 at 5894, GDNA00005893 at 5898, GDNA00005893 at 5948, GDNA00005893 at 5953, GDNA00005893 at 5971, GDNA00005893 at 5973, GDNA00005893 at 5989, GDNA00005893 at 5991, GDNA00005893 at 5992, GDNA00005893 at 5996, GDNA00006013 at 6025, GDNA00006013 at 6029, GDNA00006013 at 6045, GDNA00006013 at 6068, GDNA00006132 at 6137, GDNA00006132 at 6159, GDNA00006132 at 6162, GDNA00006132 at 6169, GDNA00005467 at 5508, GDNA00005740 at 5793, GDNA00005467 at 5530, GDNA00005596 at 5721

Confidential – Subject to Protective Order

Another finding of concern that stems from GDNA inspections was that Publix had no way to verify or validate prescriber information required for dispensing controlled substances, such as prescriber DEA numbers.[31] The GDNA records from inspections of Publix stores in Cobb County contain multiple instances of Publix being found unsatisfactory in their dispensing of scheduled drugs. Publix had multiple citations for filling Schedule II prescriptions that were written by nurse practitioners. [32] In Georgia, nurse practitioners are not authorized to write schedule II prescriptions.[33]

Likewise, Kroger pharmacies in Cobb County were also inspected and had concerns about Controlled Substances identified on various occasions throughout the years of inspections. On 3/9/2009, Kroger pharmacy 454 in Marietta was inspected, and the inspector notes that the pharmacist must sign CII prescriptions when dispensed.[34] Kroger pharmacy 6053 in Marietta was inspected on 4/4/1990, and the inspector noted that the pharmacy was not satisfactory with their Schedule II file and that they cannot fill "for office use" prescriptions from physicians.[35] Like Publix, Kroger had inspections concerns related to CS prescriptions that are printed or faxed by the practitioner and how they must be manually signed as well as the delegating physician being on the drug order. These concerns resulted in Kroger store 335 in Marietta receiving a not satisfactory mark for the Scheduled prescriptions on an inspection from 5/25/2017.[36] Kroger also received second notices at inspections about Controlled Substance prescriptions that are faxed or printed that manually have to be signed by prescribers.[37] This happened to Kroger 657 in Marietta after an inspection on 5/15/2017. Other inspections of Kroger note signs of diversion.[38] An inspection of Kroger 464 in Mableton from 10/20/2008 noted that when filling emergency CII prescriptions the pharmacist must follow federal and state laws and procedures regarding documentation and quantity dispensed.[39] Other Kroger pharmacies in Cobb County with Controlled Substance related inspection concerns are noted in the footnote.[40]

The GDNA inspectors also informed Publix, Kroger, and other pharmacies on an ad hoc basis about red flags. For instance, on 3/18/2014 at an inspection of Publix Store 580 in Smyrna, GA, the inspector notes that at a Publix inspection they discussed "red flags that a person may be seeking CS's for non-legitimate purpose." These included out of state patients, patients arriving in

---

[31] PUBLIX-MDLT8-00079714 at 00079705
[32] GDNA00005740 at 5837; GDNA00006132 at 6158.
[33] https://rules.sos.state.ga.us/GAC/480-22-.12
[34] GDNA00004378 at 4387
[35] GDNA00004378 at 4473
[36] GDNA00004478 at 4484
[37] GDNA00004580 at 4676
[38] GDNA00004689 at 4714
[39] GDNA00004689 at 4743
[40] GDNA00004378 at 4413, GDNA00004378 at 4419, GDNA00004378 at 4452, GDNA00004478 at 4508, GDNA00004478 at 4532, GDNA00004478 at 4539, GDNA00004478 at 4564, GDNA00004580 at 4584, GDNA00004580 at 4585, GDNA00004580 at 4609, GDNA00004580 at 4620, GDNA00004580 at 4637, GDNA00004580 at 4639, GDNA00004580 at 4671, GDNA00004580 at 4673, GDNA00004580 at 4674, GDNA00004580 at 4678, GDNA00004580 at 4680, GDNA00004689 at 4692, GDNA00004689 at 4694, GDNA00004689 at 4699, GDNA00004689 at 4710, GDNA00004689 at 4713, GDNA00004689 at 4721, GDNA00004689 at 4754

P-01354_9

Confidential – Subject to Protective Order

groups, cash payments, physicians writing the same CS prescriptions, and physicians with no specialized training.[41] The same information was discussed at some Kroger inspections.[42]

## Growth of Dispensed Opioids

Pharmacies, specifically chain pharmacies, are in a unique position to monitor the volume of opioids being dispensed in their pharmacies relative to the size of the communities they serve. It has long been recognized that as the supply of opioids increases, so does the incidence of overdose and death. As a result, pharmacies should have been monitoring and investigating instances in which the number of opioids ordered and dispensed exceeded the legitimate medical needs for the communities they served. According to SLCG's calculation of the ARCOS data, between 2006 and 2019, Buyers in Cobb County received 329.5 million Dosage Units or 7.5 billion MME of opioids. Given the county's 714,564 average population during this same time period,[43] Dispensers received enough opioids for every resident in Cobb County to consume 33 Dosage Units or 754 MME every year from 2006 to 2019. [44]

## Simultaneous Rise in Drug Overdoses and Abuse

Georgia recognized that the opioid epidemic began in the 1990s with an increase in prescription opioids.[45] The Substance Abuse Research Alliance (SARA) collaborated with the Georgia State Senate in 2016 to conduct research to assist the Georgia State Senate Study Committee. The study found that "Georgia ranks among [the] top 11 states with most prescription opioid OD deaths."[46] "Prescription opioid overdose deaths in Georgia increased tenfold to 549 deaths, or a rate of 5.5 per 100,000 age-adjusted deaths, between 1999 and 2014."[47] Additionally, the Atlanta-Carolinas High Intensity Drug Trafficking Area (HIDTA), which includes Cobb County, has gathered intelligence on drug usage in Georgia, including prescription drug abuse and diversion. In a 2017 Threat Assessment, HIDTA writes that "prescription drug abuse and diversion continues to be a major challenge for law enforcement in the metropolitan Atlanta Area…Pharmaceutical abusers are still primarily attempting to acquire opioids, including hydrocodone, oxycodone, and Roxicodone."[48] They also note that the abuse of controlled prescription drugs is particularly alarming because of the amount of overdose deaths that occur from such abuse, citing to the CDC's statistic that approximately 62 people in the U.S. die every day from overdosing on prescription painkillers.[49] Georgia's HIDTA is also concerned with the increase in the use of prescriptions drugs creating a market for heroin as addicts can switch to heroin because it is cheaper and easier to obtain.[50] In Cobb County specifically, the Medical Examiner's Office reported that out of a total

---

[41] GDNA00002042 at 2192
[42] GDNA00004478 at 4535
[43] United States Census Bureau, https://www.census.gov/
[44] Expert Report of Craig McCann, January 24, 2024, at page 7.
[45] Georgia Department of Publix Health, Understanding the Opioid Epidemic, https://dph.georgia.gov/stopopioidaddiction (Feb. 22, 2023).
[46] Substance Abuse Research Alliance, Prescription Opioid and Heroin Epidemic in Georgia, at 3, https://www.senate.ga.gov/sro/documents/studycommrpts/opioidsappendix.pdf
[47] *Id*. at 5.
[48] ACHIDTA_0652 at 660
[49] ACHIDTA_0652 at 694
[50] ACHIDTA_0050 at 55; Sept. 8, 2022, Daniel Salter Deposition, 223.

Confidential – Subject to Protective Order

of 102 drug related deaths in 2013, 49 deaths were solely attributed to prescription drugs and 39 deaths were attributed to prescription drugs combined with illicit drugs or alcohol.[51] In 2016, the GBI Medical Examiner's Office found that 46 percent of the drug-related deaths encompassed a prescription drug.[52]



State and local media published articles highlighting the prescription opioid epidemic.[53] One article questioned "Is Georgia overdosing?" after data showed that there were 7.8 million opioid prescriptions in 2015.[54] Further, research shows that there is an opioid epidemic in Cobb County. In 2017, Cobb County was in the top ten counties in the state for opioid-involved deaths.[55]

---

[51] ACHIDTA_0050 at 128
[52] ACHIDTA_0652 at 698
[53] The Atlanta Journal Constitution, 7.8 Million Opioid Prescriptions Last Year: Is Georgia overdosing? (P-PUB-0468) (Jacobson Ex. 9); Marietta Daily Journal, Prescription Drug Abuse Epidemic in Cobb, Georgia (P-PUB-0471) (Jacobson Ex. 8).
[54] The Atlanta Journal Constitution, 7.8 Million Opioid Prescriptions Last Year: Is Georgia overdosing? (P-PUB-0468) (Jacobson Ex. 9).
[55] GA DPH, Opioid Overdose Surveillance 2017, at 19, https://dph.georgia.gov/epidemiology/drug-surveillance-\ (2017).

11

Confidential – Subject to Protective Order

| Rank | No. deaths County of residence | No. deaths County of injury | Death rate County of residence | No. ED visits and hospitalizations County of residence | ED visit and hospitalization rate County of residence |
|------|-------------------------------|------------------------------|--------------------------------|-------------------------------------------------------|-------------------------------------------------------|
| 1 | Cobb (118) | Cobb (126) | Banks (29.7) | Fulton (691) | Atkinson (232.2) |
| 2 | Fulton (103) | Fulton (125) | Gilmer (28.4) | Cobb (643) | Bartow (167.1) |
| 3 | Gwinnett (71) | Gwinnett (64) | Lumpkin (27.4) | Gwinnett (511) | Echols (165.7) |
| 4 | DeKalb (48) | DeKalb (61) | Pickens (21.3) | DeKalb (393) | Talbot (159.1) |
| 5 | Cherokee (33) | Cherokee (34) | Bartow (20.6) | Hall (290) | Polk (157.1) |
| 6 | Richmond (28) | Carroll (22) | Tattnall (20.5) | Richmond (287) | Lumpkin (152.5) |
| 7 | Chatham (26) | Chatham (20) | Carroll (19.1) | Paulding (241) | Paulding (150.7) |
| 8 | Forsyth (24) | Hall (16) | Bryan (15.8) | Cherokee (240) | Dawson (149.9) |
| 9 | Hall (24) | Richmond (15) | Cobb (15.1) | Chatham (199) | Banks (148.4) |
| 10 | Henry (23) | Bibb (14) | Glynn (14.5) | Bartow (193) | White (144.3) |

*Table title: Counties with the Highest Number or Rate of Any Opioid-Involved Overdose Deaths, Emergency Depart (ED) Visits and Inpatient Hospitalizations — Georgia, 2017. Number, and age-adjusted rate per 100,000 population. Note: rates could not be calculated for some counties due to the low number of any opioid-involved overdose ED visits, hospitalizations, and deaths, only counties with >15 were included in the top 10 rate ranking*

The Georgia Department of Public Health analyzed the data received by the state's PDMP system in 2016 to determine the frequency of opioid prescriptions.[56] One of the indicators measured is the percentage of patients with overlapping days of opioid prescriptions and the percentage of patients with overlapping days of opioid and benzodiazepine prescriptions.[57] The combination of opioids and benzodiazepines puts patient health at risk. Indeed, "the simultaneous use of opioid and benzodiazepine prescriptions can increase the risk of prescription drug misuse and overdose."[58]

**Disciplined Prescribers**

Askari

Nevorn Askari had been disciplined by the Georgia Medical Board starting in 2002.[59] In 2016, an interim consent order was put in place as Askari had been indicted in the Northern District of Georgia for drug conspiracy, maintaining a place for drug distribution, money laundering conspiracy, and bankruptcy fraud in 2013. Askari was indicted in January of 2013 for the charges mentioned above. The indictment mentions that Askari would pre-sign prescriptions and provide prescriptions without ever seeing patients in person.[60] Askari pleaded guilty to her involvement in this drug trafficking conspiracy, and she and others were sentenced in 2017 for their respective roles in operating pill mills.[61] In 2017, Askari voluntarily surrendered her medical license.[62]

In May of 2010, Purdue employees were investigating a pain clinic in Peachtree City, GA called AMARC Medical Clinic.[63] The Purdue employees noted that there was nowhere to sit or stand in

---

[56] GA DPH, PDMP 2016-2017 County Level Data,  https://dph.georgia.gov/epidemiology/drug-surveillance-
[57] *Id*. at 7.
[58] DPH Epidemiology Section, Prescription Drug Monitoring Program Georgia Report 2016-2017, at 5, https://dph.georgia.gov/epidemiology/drug-surveillance-
[59] https://gcmb.mylicense.com/verification/Search.aspx, search for Nevorn Askari. Medical license and disciplinary information about Georgia physicians is publicly available on the website of the Georgia Composite Medical Board.
[60] Northern District of Georgia, case 1:12-cr-00276, document 36, First Superseding Indictment, filed on 1/8/2013.
[61] https://www.justice.gov/usao-ndga/pr/two-doctors-and-clinic-owners-sentenced-operating-pill-mills-metro-atlanta
[62] https://gcmb.mylicense.com/verification/Search.aspx, search for Nevorn Askari and select public documents.
[63] PPLPC034000443430

Confidential – Subject to Protective Order

the waiting room, there were video cameras in the waiting room, and people in the waiting room looked nervous, anxious, and suspicious in nature.[64] They also noted that Askari was the Medical Director at the clinic. To further investigate, the Purdue employees went to three local pharmacies, including a Publix Store 892 in Tyrone, GA. The Publix pharmacy technician stated that she knew of the AMARC practice and advised that she was advised by the pharmacy manager to not fill prescriptions from this practice and that none of the other pharmacies in the area filled prescriptions for that practice.[65] However, Publix dispensing data shows that the Publix store in Tyrone, GA filled eight opioid prescriptions for Askari after 2010, including one oxycodone prescription on January 8, 2013,[66] which is incidentally the exact day on which Askari was indicted. Publix pharmacists in Cobb County and across Georgia continued to fill controlled substance prescriptions written by Dr. Askari well after the date that Publix had notice that Dr. Askari was a suspicious prescriber. In part, this was because Publix does not have anti-diversion programs, which would have allowed them to identify, monitor, and block doctors like Askari. To this day, Publix does not have a prescriber monitoring program, and they do not have a centralized way to notify their pharmacists of suspicious prescribers like Askari. Additionally, Publix does not have a standard process in place receiving information about suspicious doctors from federal and local law enforcement or even their own local pharmacists.[67]

In fact, Publix pharmacies in Georgia filled 81 prescriptions for Askari after she was indicted, including some opioid prescriptions. The Publix store in Tyrone, GA had no way of sharing their concerns about Askari with the other Publix stores in the State, alerting them to her inappropriate controlled substance prescribing and ultimate criminal action.

Below is a chart of Publix's fills for Askari opioid prescriptions that triggered one or more red flags.[68]

**Total and Percent of Askari, Nevom Opioid Prescriptions**
**Triggering One Or More Red Flags**
**(Defendant Dispensing Data: Askari, Nevom, Publix, 2006 - 2019)**

| Flag Volume | Cobb, GA | | Georgia | |
|---|---|---|---|---|
| | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags |
| 1 Or More Flags | 70 | 90% | 556 | 83% |
| 2 Or More Flags | 63 | 81% | 420 | 64% |
| 3 Or More Flags | 60 | 77% | 341 | 52% |
| 4 Or More Flags | 57 | 73% | 268 | 41% |
| 5 Or More Flags | 52 | 67% | 195 | 30% |
| 6 Or More Flags | 41 | 53% | 129 | 20% |
| 7 Or More Flags | 30 | 38% | 88 | 13% |
| 8 Or More Flags | 7 | 9% | 39 | 6% |
| 9 Or More Flags | 0 | 0% | 3 | 0% |
| 10 Or More Flags | 0 | 0% | 0 | 0% |
| 11 Or More Flags | 0 | 0% | 0 | 0% |
| 12 Or More Flags | 0 | 0% | 0 | 0% |
| **Total** | **78** | | **657** | |

As noted above, Publix does not allow for corporate blocks for suspicious prescribers like Dr. Askari, even if the doctor has been disciplined by the State Medical Board or has had their DEA

---

[64] Id at 034000443431.
[65] Id at 034000443432.
[66] Expert Report of Craig McCann, January 24, 2024, Appendix 10M Statewide Prescriptions of Selected Prescribers – Publix, Askari, Nevorn.
[67] Aug. 3, 2023, Shannon Brice Deposition (hereafter "Brice Dep."), 334, 335; PUBLIX-MDLT8-00078435. In 2014, GDNA Director Rick Allen made efforts to alert Publix and other retail pharmacies of suspicious or suspended prescribers in and around Georgia. *See generally* WAGMDL02448561.
[68] Expert Report of Craig McCann, January 24, 2024, Appendix 10J Selected Prescribers Red Flags Summary, Publix, Askari, Nevorn.

P-01354_13

Confidential – Subject to Protective Order

license revoked.[69] Publix failed to identify Dr. Askari as a suspicious prescriber at a corporate level, but even if they had, Publix had no centralized way to inform their pharmacists about these types of prescribers.[70] This is in line with the testimony of Cobb Pharmacy Supervisor Leigh Anne Jacobson who testified that even when Publix was made aware of a prescriber issuing illegitimate prescriptions, it made no effort to alert its pharmacists on a broad scale: "As far as Publix pharmacy issuing a statement on a physician, I have not seen that occur."[71] The lack of a prescriber monitoring system and lack of effective controls related to suspicious prescribers is something that was a common theme in Publix pharmacist testimony.[72]

Also of note, Askari is one of the excluded prescribers that Kroger filled prescriptions for and made payments to under a Federal Health Care program.[73] Like Publix, Kroger did not put any blocks in place against Askari, and so their stores continued to fill this doctor's prescriptions. Kroger pharmacies in Georgia filled 18 eighteen prescriptions for Askari after she was indicted on 1/8/2013. Twelve of those prescriptions were for opioids. Kroger continued to fill opioid prescriptions written by Askari until October of 2013.[74]

Below is a chart of Kroger's fills for Askari red flag opioid prescriptions that triggered one or more red flags.[75]

**Total and Percent of Askari, Nevom Opioid Prescriptions**
**Triggering One Or More Red Flags**
**(Defendant Dispensing Data: Askari, Nevom, Kroger, 2008 - 2018)**

| Flag Volume | Cobb, GA | | Georgia | |
|---|---|---|---|---|
| | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags |
| 1 Or More Flags | 90 | 88% | 1,356 | 89% |
| 2 Or More Flags | 81 | 79% | 1,197 | 78% |
| 3 Or More Flags | 73 | 72% | 1,000 | 65% |
| 4 Or More Flags | 63 | 62% | 753 | 49% |
| 5 Or More Flags | 56 | 55% | 490 | 32% |
| 6 Or More Flags | 46 | 45% | 307 | 20% |
| 7 Or More Flags | 34 | 33% | 174 | 11% |
| 8 Or More Flags | 13 | 13% | 66 | 4% |
| 9 Or More Flags | 2 | 2% | 30 | 2% |
| 10 Or More Flags | 0 | 0% | 9 | 1% |
| 11 Or More Flags | 0 | 0% | 0 | 0% |
| 12 Or More Flags | 0 | 0% | 0 | 0% |
| **Total** | **102** | | **1,528** | |

## Richardson

William Richardson is another prescriber associated with the AMARC practice. In January 2013, along with Askari, Richardson was indicted for drug conspiracy, maintaining a place for drug distribution, money laundering conspiracy, and bankruptcy fraud. The indictment states that Dr. Richardson would prescribe controlled substances after performing inadequate medical evaluations of the patient and would continue to write additional prescriptions without further

---

[69] Aug. 11, 2023, Lindsay Burckhalter, 30(b)(6), Deposition (hereafter "Burckhalter Dep."), 175; *see also* Brice Dep. at 334, 335

[70] PPLPC024000447374; Troughton Ex. 29 and Ex. 30; Publix continued to fill prescriptions written by Dr. Cynthia Sadler, who worked at Kennesaw's Pain Express, a well-known pill mill which was owned by the George Brothers. *See also* Brice Dep.

[71] Nov. 8, 2022, Leigh Anne Jacobson Deposition (hereafter "Jacobson Dep."), 312-314.

[72] Jul. 31, 2023, Deanna Bunch Deposition (hereafter "Bunch Dep."), 239; Brice Dep. at 335-336.

[73] https://oig.hhs.gov/fraud/enforcement/kroger-co-center-agreed-to-pay-215-million-for-allegedly-violating-the-civil-monetary-penalties-law-by-employing-excluded-individuals/; Kroger-MDL00244270

[74] Expert Report of Craig McCann, January 24, 2024, Appendix 10L Statewide Prescriptions of Selected Prescribers – Kroger, Askari, Nevorn.

[75] Expert Report of Craig McCann, January 24, 2024, Appendix 10J Selected Prescribers Red Flags Summary, Kroger, Askari, Nevorn.

14

Confidential – Subject to Protective Order

medical evaluation.[76] The DEA learned that Askari and Richardson prescribed oxycodone and other opiates to addicts and distributors, including patients from counties throughout Georgia and other states, including Alabama and Ohio. Other red flags associated with Richardson's opioid prescriptions included that customers would wait for hours at the clinic, paid in cash to receive prescriptions, and received prescriptions for opioid drug combinations, including the so-called "holy trinity."[77] Multiple articles note that Askari and Richardson wrote prescriptions in lethal doses and lethal combinations.[78] In 2014, Richardson pled guilty and was sentenced to four years in prison for his role in operating the AMARC pill mills. In 2017, Richardson surrendered his Georgia medical license.[79]

As in the case of Askari, Publix and Kroger took no actions against Richardson. In fact, a Publix pharmacist working at store number 1112 in Mableton, GA (Cobb County) filled a hydrocodone prescription written by Richardson on January 14, 2013[80], which is after Richardson was indicted and arrested for drug distribution. Publix was not monitoring publicly available sources, such as DOJ press releases and local news, which would have alerted them to Richardson's criminal action. A Publix pharmacy in a different part of Georgia filled a hydrocodone prescription written by Richardson as late as August of 2013.

Below is a chart of Publix's fills for Richardson opioid prescriptions that triggered one or more red flags.[81]

**Total and Percent of Richardson, William Opioid Prescriptions Triggering One Or More Red Flags**
**(Defendant Dispensing Data: Richardson, William, Publix, 2006 - 2019)**

| Flag Volume | Cobb, GA | | Georgia | |
|---|---|---|---|---|
| | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags |
| 1 Or More Flags | 65 | 88% | 176 | 91% |
| 2 Or More Flags | 60 | 81% | 146 | 75% |
| 3 Or More Flags | 54 | 73% | 124 | 64% |
| 4 Or More Flags | 46 | 62% | 98 | 51% |
| 5 Or More Flags | 35 | 47% | 70 | 36% |
| 6 Or More Flags | 25 | 34% | 55 | 28% |
| 7 Or More Flags | 19 | 26% | 37 | 19% |
| 8 Or More Flags | 6 | 8% | 18 | 9% |
| 9 Or More Flags | 0 | 0% | 3 | 1% |
| 10 Or More Flags | 0 | 0% | 0 | 0% |
| 11 Or More Flags | 0 | 0% | 0 | 0% |
| 12 Or More Flags | 0 | 0% | 0 | 0% |
| **Total** | **74** | | **194** | |

Below is a chart of Kroger's fills for Richardson red flag opioid prescriptions that triggered one or more red flags.[82]

---

[76] Northern District of Georgia, case 1:12-cr-00276, document 36, First Superseding Indictment, filed on 1/8/2013.
[77] https://www.justice.gov/usao-ndga/pr/two-doctors-and-clinic-owners-sentenced-operating-pill-mills-metro-atlanta
[78] https://www.ajc.com/news/local/drug-traffickers-dressed-white-lab-coats-jailed-for-pill-mills/0R3ExZWozFHGdW3jLaGCKO/
[79] https://gcmb.mylicense.com/verification/Search.aspx, search for William Richardson
[80] Expert Report of Craig McCann, January 24, 2024, Appendix 10M Statewide Prescriptions of Selected Prescribers – Publix, Richardson, William.
[81] Expert Report of Craig McCann, January 24, 2024, Appendix 10J Selected Prescribers Red Flags Summary, Publix, Richardson, William.
[82] Expert Report of Craig McCann, January 24, 2024, Appendix 10J Selected Prescribers Red Flags Summary, Kroger, Richardson, William.

P-01354_15

Confidential – Subject to Protective Order

Total and Percent of Richardson, William Opioid Prescriptions
Triggering One Or More Red Flags
(Defendant Dispensing Data: Richardson, William, Kroger, 2008 - 2018)

| | Cobb, GA | | Georgia | |
|---|---|---|---|---|
| Flag Volume | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags |
| 1 Or More Flags | 99 | 90% | 393 | 91% |
| 2 Or More Flags | 88 | 80% | 344 | 80% |
| 3 Or More Flags | 76 | 69% | 294 | 68% |
| 4 Or More Flags | 60 | 55% | 214 | 50% |
| 5 Or More Flags | 50 | 45% | 167 | 39% |
| 6 Or More Flags | 36 | 33% | 101 | 23% |
| 7 Or More Flags | 23 | 21% | 69 | 16% |
| 8 Or More Flags | 12 | 11% | 30 | 7% |
| 9 Or More Flags | 0 | 0% | 7 | 2% |
| 10 Or More Flags | 0 | 0% | 3 | 1% |
| 11 Or More Flags | 0 | 0% | 2 | 0% |
| 12 Or More Flags | 0 | 0% | 0 | 0% |
| **Total** | **110** | | **430** | |

Nagareddy

Narendra Nagareddy is a Georgia psychiatrist who was arrested on January 14, 2016 and charged with unlawful prescribing. The charges relate to actions from 2014 when Nagareddy prescribed controlled substances not for legitimate medical purposes, which resulted in a patient's death. On the same date as his arrest, Nagareddy voluntarily surrendered his Controlled Substance Privileges.[83] In February of 2016, The Georgia Medical Board suspended Nagareddy's medical license until the criminal charges were resolved. Other articles note that Nagareddy was arrested after thirty-six of his patients had died—twelve from prescription overdoses.[84] For this, Nagareddy was dubbed "Dr. Death."[85] Nagareddy was accused of running a pill mill and overprescribing opiates and benzodiazepines for several years.

Kroger used the news article about Nagareddy's arrest in a compliance PowerPoint in 2019;[86] however, there was no indication in Kroger's documents that they ever investigated or blocked this prescriber. In fact, Kroger pharmacies in Georgia continued to fill prescriptions written by Nagareddy until the end of January in 2016[87], despite his arrest on January 14th. These prescriptions included benzodiazepines, which are Schedule IV Controlled Substances. As noted, Kroger filled these Controlled Substances written by Nagareddy until the end of 2016, even though he had which is in direct contradiction to Nagareddy surrendering his Controlled Substance Privileges on January 14, 2016th.[88]

Below is a chart of Kroger's fills for Nagareddy red flag opioid prescriptions that triggered one or more red flags.[89]

---

[83] https://gcmb.mylicense.com/verification/Search.aspx, search for Narendra Nagareddy.
[84] https://www.al.com/news/2016/01/georgia_psychiatrist_arrested.html.
[85] https://www.cbsnews.com/news/alleged-dr-death-indicted-on-felony-murder-counts/
[86] Kroger-MDL00135668
[87] Expert Report of Craig McCann, January 24, 2024, Appendix 10L Statewide Prescriptions of Selected Prescribers – Kroger, Narendra Nagareddy.
[88] https://gcmb.mylicense.com/verification/Search.aspx, search for Narendra Nagareddy
[89] Expert Report of Craig McCann, January 24, 2024, Appendix 10J Selected Prescribers Red Flags Summary, Kroger, Nagareddy, Narendra.

P-01354_16

Confidential – Subject to Protective Order

**Total and Percent of Nagareddy, Narendra Opioid Prescriptions**
**Triggering One Or More Red Flags**
**(Defendant Dispensing Data: Nagareddy, Narendra, Kroger, 2008 - 2018)**

| Flag Volume | Cobb, GA | | Georgia | |
| --- | --- | --- | --- | --- |
| | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags |
| 1 Or More Flags | 44 | 94% | 1,186 | 91% |
| 2 Or More Flags | 41 | 87% | 944 | 72% |
| 3 Or More Flags | 28 | 60% | 509 | 39% |
| 4 Or More Flags | 18 | 38% | 217 | 17% |
| 5 Or More Flags | 3 | 6% | 81 | 6% |
| 6 Or More Flags | 0 | 0% | 22 | 2% |
| 7 Or More Flags | 0 | 0% | 10 | 1% |
| 8 Or More Flags | 0 | 0% | 3 | 0% |
| 9 Or More Flags | 0 | 0% | 0 | 0% |
| 10 Or More Flags | 0 | 0% | 0 | 0% |
| 11 Or More Flags | 0 | 0% | 0 | 0% |
| 12 Or More Flags | 0 | 0% | 0 | 0% |
| Total | 47 | | 1,309 | |

While Publix did not have its own prescriber monitoring program, it was on multiple occasions sent lists of prescribers with actions taken against them that Purdue compiled from media reports. In February of 2016, Publix received one such list, which includes an entry for Nagareddy and provides a link to an article about his charges and arrest.[90]

Publix store 536 in Cobb County filled an alprazolam prescription written by Nagareddy in February of 2016,[91] a month after the doctor was arrested and surrendered his Controlled Substance Privileges. Alprazolam, a benzodiazepine, is a Schedule IV Controlled Substance. This trend holds true in Publix's larger statewide dispensing data. Publix pharmacies in the state of Georgia filled 63 benzodiazepine and muscle relaxer prescriptions for Nagareddy after his arrest on January 14, 2016. Benzodiazepines and certain muscle relaxers like carisoprodol and diazepam are Controlled Substances. Even though Nagareddy had voluntarily surrendered his Controlled Substance Privileges regarding Schedule II-V controlled substances on January 14, 2016—a matter of public record posted on the Georgia Composite Medical Board website[92]—because Publix had no system in place, it could not prevent its pharmacists from filling Controlled Substance prescriptions for this prescriber. Because Publix had no corporate system in place, Publix pharmacists took to making notes in the prescriber name fields. Starting in May of 2016, Publix pharmacists changed Nagareddy's name in their dispensing system to "NARENDRA-NOT ACTIVE-ARRESTED."[93] And yet, even with this naming convention, Publix pharmacies in Georgia continued to fill Controlled Substance prescriptions for this prescriber until August of 2016.

Below is a chart of Publix's fills for Nagareddy opioid prescriptions that triggered one or more red flags.[94]

---

[90] PUBLIX-MDLT8-00140222 and PUBLIX-MDLT8-00140223
[91] Expert Report of Craig McCann, January 24, 2024, Appendix 10M Statewide Prescriptions of Selected Prescribers – Publix, Nagareddy, Narendra.
[92] https://gcmb.mylicense.com/verification/Search.aspx, search for Narendra Nagareddy
[93] Expert Report of Craig McCann, January 24, 2024, Appendix 10M Statewide Prescriptions of Selected Prescribers – Publix, Nagareddy, Narendra.
[94] Expert Report of Craig McCann, January 24, 2024, Appendix 10J Selected Prescribers Red Flags Summary, Publix, Nagareddy, Narendra.

Confidential – Subject to Protective Order

Total and Percent of Nagareddy, Narendra Opioid Prescriptions
Triggering One Or More Red Flags
(Defendant Dispensing Data: Nagareddy, Narenadra, Publix, 2006 - 2019)

| | Cobb, GA | | Georgia | |
|---|---|---|---|---|
| Flag Volume | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags | Prescriptions Triggering One Or More Red Flags | % Prescriptions Triggering One Or More Red Flags |
| 1 Or More Flags | 21 | 75% | 489 | 89% |
| 2 Or More Flags | 15 | 54% | 372 | 68% |
| 3 Or More Flags | 7 | 25% | 201 | 37% |
| 4 Or More Flags | 0 | 0% | 52 | 9% |
| 5 Or More Flags | 0 | 0% | 26 | 5% |
| 6 Or More Flags | 0 | 0% | 5 | 1% |
| 7 Or More Flags | 0 | 0% | 1 | 0% |
| 8 Or More Flags | 0 | 0% | 0 | 0% |
| 9 Or More Flags | 0 | 0% | 0 | 0% |
| 10 Or More Flags | 0 | 0% | 0 | 0% |
| 11 Or More Flags | 0 | 0% | 0 | 0% |
| 12 Or More Flags | 0 | 0% | 0 | 0% |
| **Total** | **28** | | **550** | |

## Review of Hard Copy Prescriptions and Electronic Due Diligence Notes

I reviewed the electronic information and hard copy sample prescriptions produced by Defendants Kroger and Publix. It is my understanding that each Defendant was ordered to produce information for 400 sample opioid prescriptions randomly chosen from those prescriptions that contained one or more red flags.[95] As described in my general report, I identified red flag prescriptions in the Defendant dispensing data through the help of Plaintiff Expert Dr. Craig McCann using known red flags, such as doctor shopping and excessive volume. In addition to the sample opioid prescriptions, Defendants had to produce the associated prescriptions from the 400 sample prescriptions if one of the sample prescriptions flagged because of another prescription, such as an opioid prescription that was flagged for being filled at the same time as a benzodiazepine. I reserve the right to supplement this report if Defendants produces new information.

To conduct my review, I consulted excel spreadsheets that Dr. McCann and SLCG prepared at my direction. Dr. McCann provided me with a spreadsheet for each Defendant's sample dataset that contained the previously produced Defendant dispensing data, the recently produced Defendant electronic notes-related information, red flag information, and the file names and directory links to the produced hard copy prescriptions. These spreadsheets had tabs for the original sample prescriptions, the associated prescriptions, and additional patient history.

I would expect that given the dangerous nature of these drugs and the presentation of well-known red flags that only a small percentage of prescriptions would be dispensed with unresolved or unresolvable red flags. My review of the hard copy prescriptions, notes, and data fields for the sample set of red flagged prescriptions provided by Defendants demonstrates that Defendants did not have effective systems and programs in place to identify, resolve, and document red flag prescriptions.

I have set forth the criteria and guiding elements for conducting due diligence in my general report on pages 56-58. I evaluated the Defendants' due diligence data and prescriptions for evidence of these shared, general elements of due diligence and documentation. My review found that Publix consistently failed to satisfy all four elements of required due diligence. In the limited instances in which due diligence was undertaken, it was incomplete and did not provide adequate information on the identified red flags and efforts to resolve the red flags in order to justify dispensing the

---

[95] For descriptions of the red flags, see my general report starting at page 27.

18

Confidential – Subject to Protective Order

prescriptions. Overall, my review of the due diligence data and prescriptions together showed that Publix failed to provide the justification and documentation required to validate the legitimacy of the prescriptions and allow for dispensing in conformance with CSA requirements.

I previously addressed the importance of recordkeeping under the CSA and its requirements to "maintain, on a current basis, a complete and accurate record…."[96]  The recordkeeping requirements apply to Defendants' Pharmacies' due diligence obligations when dispensing controlled substances.  Similar to my earlier findings that the Defendants' dispensing records contain incomplete and inaccurate information, the electronic information capturing due diligence and copies of prescriptions related to the sample populations are also largely incomplete and non-specific.  In the vast majority of circumstances, Defendants did not identify, resolve, and document the resolution of the red flag or flags associated with each prescription.  Most of the prescriptions and notes fields did not contain any due diligence information.  When comments or information are present, it usually merely states "called doctor," "checked PMP," or "consulted patient."  While these comments suggest some additional steps were taken, they do not meet the requirement to fully document how the specific red flag was resolved prior to dispensing the medication.  Pharmacy practice standards of care, state board of pharmacy requirements, and the DEA guidelines provide that each prescription triggering a red flag must be resolved before the prescription is dispensed.  Further, the resolution of that flag must be documented in order that in the future, any person examining the prescription will know how the pharmacist resolved that red flag and why the medication was dispensed. Both Defendants were aware of the importance of documentation and stressed it in their own policies and trainings.[97]

The consistent failure of Defendants Publix and Kroger to adequately resolve and document the numerous red flags in the sample set of prescriptions is concerning and indicates to me that effective due diligence was not performed on the overwhelming number, greater than 90% and approaching 95%, of the sample prescriptions reviewed and ultimately dispensed by the Defendants.

### Kroger

Kroger provided a sample set of 400 opioid prescriptions to review hard copy and electronic notes. Based on my review of the Kroger sample prescriptions and data produced with each prescription, the pharmacy failed in most instances to document the identification and resolution of each red flag in the sample dataset. Overall, Kroger did not identify and adequately document each of the red flags associated with the sample opioid prescriptions.

### Electronic Notes Review:

Kroger's electronic records allow pharmacists to document important and relevant information. From the electronic records produced, there were seven fields that permitted the Kroger's pharmacists to enter information about their findings and judgments in free form text notes.

---

[96] Carmen Catizone, General Expert Report, p. 57 (January 24, 2024). Like the CSA, the GCSA requires registrants to "keep a complete and accurate record of all controlled substances on hand, received, manufactured, sold, dispensed, or otherwise disposed of and shall maintain such records and inventories in conformance with the record-keeping and inventory requirements of federal law." GA. CODE ANN. § 16-13-39.

[97] P-PUB-0728 at slide 19; FM 00028878; Carmen Catizone, General Expert Report, pp. 58-63 (January 24, 2024).

P-01354_19

Confidential – Subject to Protective Order

- ANNOTATION_TEXT
- RX_NOTE_TEXT
- RX_FILL_NOTE
- COUNSELING_NOTE
- COUNSELING_RESOLUTION_TEXT
- DUR_NOTE
- NOTE_TEXT

A review of these fields indicates:

- Of the 400 sample prescriptions, 399 prescriptions contain no information in the "ANNOTATION_TEXT" field. The one note in this field was "{"Text":{"txt":"LD71746 11/25/2016 11:58 AM\nNOTE SUPERVISING RX","x":226,"y":469,"rotat":0}}."[98] This does not appear to be related to red flags or due diligence.

- Of the 400 sample prescriptions, 393 prescriptions contain no information in the "RX_NOTE_TEXT_1" field. For the prescriptions that did have information in this field, it included comments about price matching, talking with doctors, pick up and filling information, and insurance. Notes of interest include:

  o DIFFERENT DR...FOR DIFFERENT REASON[99]

- Of the 400 sample prescriptions, all 400 prescriptions contain no information in the "RX_NOTE_TEXT_2" field.

- Of the 400 sample prescriptions, all 400 prescriptions contain no information in the "RX_NOTE_TEXT_3" field.

- Of the 400 sample prescriptions, 255 prescriptions contain no information in the "RX_FILL_NOTE_1" field. For prescriptions that did have information in this field, many of the notes appeared to be automated messages about bin location and declination messages (Declined from Adjudication, Declined from PreVerification, etc). Other notes were about patients waiting, patient ID and other information, insurance, prescriptions being out of stock, and prescription status.

- Of the 400 sample prescriptions, 358 prescriptions contain no information in the "RX_FILL_NOTE_2" field. Like the other RX_FILL_NOTE, most of the notes in this field were automated messages about bin location and declination messages. Other notes were about filling, insurance, prescription status, and refilling too soon.

---

[98] See ANNOTATION_TEXT field at index 347203
[99] See RX_NOTE_TEXT_1 at index 236203

P-01354_20

Confidential – Subject to Protective Order

- Of the 400 sample prescriptions, 392 prescriptions contain no information in the "RX_FILL_NOTE_3" field. The prescriptions that did have notes in this field were automated messages about bin location and declination messages.

- Of the 400 sample prescriptions, 397 prescriptions contain no information in the "RX_FILL_NOTE_4" field. The prescriptions that did have notes in this field were automated messages about bin location and declination messages.

- Of the 400 sample prescriptions, 389 prescriptions contain no information in the "COUNSELING_NOTE_1" field. For prescriptions that did have information in this field, notes included variations of ok, patient allergy information, comments that patient had no questions, and information about side effects of drugs. Notes of interest include:

  o THIS MED IS DESIGNED TO LAST 72 HOURS BUT PT HAS INSTRUCTIONS TO CHANGE EVERY 48 HRS...PLEASE MAKE HIM AWARE[100]

- Of the 400 sample prescriptions, all 400 prescriptions contain no information in the "COUNSELING_RESOLUTION_TEXT_1" field.

- Of the 400 sample prescriptions, 397 prescriptions contain no information in the "COUNSELING_NOTE_2" field. For prescriptions that did have information in this field, notes included yes, information on manufacturers, and notes about patient being aware of dosage information.

- Of the 400 sample prescriptions, all 400 prescriptions contain no information in the "COUNSELING_RESOLUTION_TEXT_2" field.

- Of the 400 sample prescriptions, 398 prescriptions contain no information in the "DUR_NOTE_1" field. For the two prescriptions that do have notes in this field, they are "REFILL"[101] and "OXYCONTIN DOSE INCREASE."[102]

- Of the 400 sample prescriptions, 292 prescriptions contain no information in the "NOTE_TEXT" field. It appears that the Note_Text field is a compilation of historical patient notes from various dates and is not specific to the prescription in the sample. I was told that Dr. McCann only included electronic notes that were from the date of the sample prescription or from before the date of the sample prescription to mimic what a pharmacist

---

[100] See COUNSELING_NOTE_1 at index 198699
[101] See DUR_NOTE_1 at index 277758
[102] See DUR_NOTE_1 at index 352309

21

Confidential – Subject to Protective Order

would see at the time of fill. The prescriptions that did contain information in the NOTE_TEXT field had comments about who could pick up prescriptions, diagnoses, allergies, patient preferences on the type of prescription bottle cap used as well as drug brands and generics, counting pills, insurance information, discount cards, information from prescribers, etc. Notes of interest include:

- o **HAS OPIOID TOLERANCE** (MEDICAL AUTH IMAGE SCANNED IN UNDER PRIVACY MGT...MEDICAL AUTH[103]
- o **PT KNOWS AND DR AWARE OF OXY/VERAPAMIL DRU INTERAX**[104]
- o **PATIENT GETS TRAMADOL PRESCRIPTIONS FROM MULTIPLE DOCTORS MULTIPLE TIMES A WEEK USING MULTIPLE STORIES**, DOCTOR CALLED LAST WEEK TO INFORM US TO LET ALL DOCTORS KNOW THIS BEFORE WE FILL ANY TRAMADOL PRESCRIPTIONS FOR THIS PATIENT!!!! DR WINSTON LEE HAS **RED-FLAGGED** HER FOR **DRUG SEEKING**!!! **DO NOT FILL RX'S FOR HER** (DR.S PHONE NUMBER 770-479-8654) **MULTIPLE DRS AND MULTIPLE PHARMACIES** 7/13/11 **VERIFY ALL PAIN MEDICATIONS, SHE IS GOING TO MULTIPLE DOCTORS AND MULTIPLE PHARMACIES**! DO NOT FILL ANY RX'S FROM DR CORRINE WALKER - FORGERIES!!! **VERIFY ALL CONTROLS AND MULTIPLE DR AND MULTIPLE PHARMACIES**[105]
- o **DO NOT FILL CONTROLS. CLAIMS SHE GETS SHORTED. VERIFY ALL NARCOTICS**[106]
- o USE CAUTION - **ALSO GETS CONTROLS FROM WALGREENS** 678-556-0673 ######## requested a change in Easy Open Cap preference: Do Not Use Easy Open Cap. I PUT METHADONE ON DISC CARD ON 8-25. MD WRITES FOR 180 PER 30 DAYS AND INSURANCE WILL ONLY PAY FOR 120 PER 30 DAYS AND WE BILLED 180 FOR 60 IN JULY SO THIS FIXED IT. PUT NOTE ON HARD COPY SO DELETE THIS IN OCT/NOV[107]
- o **TRIES TO FILL CONTROLS TOO SOON**........ DO NOT FILL UNTIL THE DAY ALLOWED. **PAYS CASH SO BEWARE**![108]
- o ***ASK FOR PATIENT'S ID. IF IT'S EXPIRED, WE CAN'T FILL CONTROLS!!!!!!!!! GAVE A FLOATER AN EXPIRED LICENSE 11/25 AND SAID HE HAS A GOOD ONE AT HOME, DOUBT IT**. NORCO GOES THRU MEDICAID[109]

---

[103] See NOTE_TEXT field at index 376990
[104] See NOTE_TEXT field at index 148969
[105] See NOTE_TEXT field at index 170378
[106] See NOTE_TEXT field at index 143782
[107] See NOTE_TEXT field at index 387632
[108] See NOTE_TEXT field at index 384623
[109] See NOTE_TEXT field at index 327884

22

Confidential – Subject to Protective Order

The quality and quantity of Kroger's electronic notes did not progress when expanding from just the sample to the sample and associated prescriptions.

| Electronic Notes Field | # Blank in the 400 Script Sample | % Blank | # Blank in the 1,350 Sample and Associated Scripts | % Blank |
|---|---|---|---|---|
| ANNOTATION_TEXT | 399 | 99.75% | 1,348 | 99.85% |
| RX_NOTE_TEXT_1 | 393 | 98.25% | 1,320 | 97.78% |
| RX_NOTE_TEXT_2 | 400 | 100.00% | 1,345 | 99.63% |
| RX_NOTE_TEXT_3 | 400 | 100.00% | 1,349 | 99.93% |
| RX_FILL_NOTE_1 | 255 | 63.75% | 1,053 | 78.00% |
| RX_FILL_NOTE_2 | 358 | 89.50% | 1,284 | 95.11% |
| RX_FILL_NOTE_3 | 392 | 98.00% | 1,332 | 98.67% |
| RX_FILL_NOTE_4 | 397 | 99.25% | 1,345 | 99.63% |
| COUNSELING_NOTE_1 | 389 | 97.25% | 1,328 | 98.37% |
| COUNSELING_RESOLUTION_TEXT_1 | 400 | 100.00% | 1,349 | 99.93% |
| COUNSELING_NOTE_2 | 397 | 99.25% | 1,346 | 99.70% |
| COUNSELING_RESOLUTION_TEXT_2 | 400 | 100.00% | 1,350 | 100.00% |
| DUR_NOTE_1 | 398 | 99.50% | 1,348 | 99.85% |
| NOTE_TEXT | 292 | 73.00% | 999 | 74.00% |

There were two patient notes related to cancer, though these notes about diagnosis do not resolve the red flags of the specific prescription in the sample and are also notes from previous dates.[110] For instance, the note "Untranslated Disease:CANCER(ms:020000)" was created on 2/10/2009, and the sample prescription that it was associated with was from 8/24/2013.[111] Likewise, the patient note "ALLERGIC TO ULTRAM!!!<BR>ONLY GIVE PURPAC LORAZEPAM<BR>HAS BREAST CANCER 5-3-01" was created on 5/18/2004, and the prescription from the sample for this patient was filled on 3/28/2017.[112]

---

[110] See NOTE_TEXT at indices 215544 and 370516
[111] See NOTE_TEXT at index 215544
[112] See NOTE_TEXT at index 370516

23

Confidential – Subject to Protective Order

### Hard Copy Prescription Notes Review:

Based on Dr. McCann's work linking hard copy prescriptions to the dispensing data sample, I have found that Kroger produced 260 hard copy prescriptions for their sample. A review of the hard copy prescriptions Kroger provided reveals a vast majority of the hard copy prescriptions contained no handwritten notes. If there was handwriting, it was often the scribbles of a pharmacist name or initials. Prescriptions that did contain handwritten notes outside of signatures include the following. I did not see any Kroger Controlled Substance Documentation forms as I had seen for Kroger notes productions in other jurisdictions.

- o Talked to Dr. Sending new signed Rx via mail today is 6/25/15 received 6/30/15[113]
- o Filled 6/9/16 … RPH 14465 PMP checkmark[114]

### Red Flag Review:

One Kroger prescription particularly exemplifies Kroger's lack of identification and documentation of red flags. The sample contains an oxycodone prescription that was filled on August 13, 2010 and was written by prescriber Jay Bender.[115] This prescription triggered five red flags and had no electronic notes recorded in any of the fields.[116] Likewise, the hard copy prescription does not contain any handwritten notes.[117] In addition to the red flags, this prescription should have triggered extra caution from Kroger pharmacists because Dr. Bender had been reprimanded by the Georgia Medical Board less than a year before the prescription was dispensed at Kroger.[118] In 2009, Bender was reprimanded for illegally prescribing controlled substance prescriptions using only a phone consultation without physically examining patients.

There are also a number of Kroger sample prescriptions that were written by notoriously disciplined prescribers. There are two oxycodone prescriptions in the sample written by Larry Mabine.[119] One was filled on 8/19/2010 and triggered red flag 13 and the other was filled on 1/1/2018 and triggered red flags 5 and 7.[120] Other than an electronic note about bin location, these prescriptions do not have any electronic notes and no hard copy prescriptions were provided. In June of 2020, Mabine voluntarily surrendered his Georgia medical license.[121] Also in June of 2020,

---

[113] Kroger-MDL00050843

[114] Kroger-MDL00051036

[115] See Kroger sample patient history tool at index 52945.

[116] 1. An opioid was dispensed to a patient who traveled more than 25 miles to visit the pharmacy. The distance here is calculated from the center of the patient's zip code to the center of the pharmacy's zip code. 2. An opioid was dispensed to a patient who traveled more than 25 miles to visit their prescriber. The distance here is calculated from the center of the patient's zip code to the center of prescriber's zip code. 9. Patient was dispensed two short-acting (or immediate release) opioid drugs on the same day. 10. Patient was dispensed an opioid prescription of over 200 MME per day before 2018 or over 90 MME per day after January 1, 2018. 13. A patient was dispensed more than 210 "days of supply" of all opioids combined in a 6-month period.

[117] Kroger-MDL00050772

[118] https://gcmb.mylicense.com/verification/Search.aspx, search for Jay Bender

[119] See prescriptions at index 72262 and 394115

[120] 5. Patient was dispensed an opioid, a benzodiazepine, and a muscle relaxer for overlapping days of supply. 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 13. A patient was dispensed more than 210 "days of supply" of all opioids combined in a 6-month period.

[121] https://gcmb.mylicense.com/verification/Search.aspx, search for Larry Mabine

P-01354_24

Confidential – Subject to Protective Order

Mabine was arrested on charges of trafficking fentanyl and charged with multiple felonies related to possession of schedule I and II controlled substances in Cherokee County Criminal Court.[122]

Kroger's sample also contains an oxycodone prescription written by prescriber Nevorn Askari and filled on 12/7/2011.[123] This prescription was for 135 daily MME and triggered red flag 7, 9, and 14.[124] This prescription has a single electronic note about declining from preverification, but there are no relevant electronic notes. The prescription does have a hard copy prescription, but there are no handwritten notes on the hard copy.[125] The prescription pad does note that Askari works for a family practice, which should have concerned Kroger pharmacists given the red flags, drug combinations, and high MME. As described earlier in my report, Askari had been disciplined on multiple occasions by the Georgia Medical Board, ultimately resulting in a voluntary surrender of her license, and was indicted and later sentenced in the Northern District of Georgia for drug conspiracy, maintaining a place for drug distribution, money laundering conspiracy, and bankruptcy fraud in 2013.

The Kroger sample also contains an oxycodone prescription written by Yong Liu and filled on 11/21/2011.[126] This prescription triggered red flags 1, 2, 9, and 14.[127] This prescription had no electronic notes. There was a hard copy prescription provided, but it did not contain any relevant handwritten notes. There does appear to be a note about "2RX/12pm," which potentially indicates a pickup time, but nothing to identify or resolve red flags prior to filling.[128] Liu was disciplined by Georgia's Medical Board as early as 2007 and was put on probation for 2 years and had restrictions put on his Schedule II drug prescribing. Liu treated a patient for numerous pain complaints and had the patient on long term opioid drug combinations of oxycontin, Xanax, and alprazolam. The patient died of multiple drug toxicity.[129] The disciplinary actions from 2007 note additional issues such as no documentation in medical records or testing to justify diagnoses related to opiates. In 2009, Liu surrendered his California medical license.[130] In 2020, Liu was disciplined again by the Georgia Board of Medicine related to information from 2016 from the Georgia narcotics agency related to Liu's prescribing on opiates.

---

[122] https://www.fox5atlanta.com/news/cobb-county-doctor-arrested-on-charges-of-trafficking-fentanyl
[123] See prescription at index 112790
[124] 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 9. Patient was dispensed two short-acting (or immediate release) opioid drugs on the same day. 14. A patient was dispensed an opioid and paid in cash.
[125] Kroger-MDL00051066
[126] See prescription at index 113176
[127] 1. An opioid was dispensed to a patient who traveled more than 25 miles to visit the pharmacy. The distance here is calculated from the center of the patient's zip code to the center of the pharmacy's zip code. 2. An opioid was dispensed to a patient who traveled more than 25 miles to visit their prescriber. The distance here is calculated from the center of the patient's zip code to the center of prescriber's zip code. 9. Patient was dispensed two short-acting (or immediate release) opioid drugs on the same day. 14. A patient was dispensed an opioid and paid in cash.
[128] Kroger-MDL00051070
[129] https://gcmb.mylicense.com/verification/Search.aspx, search for Yong Liu
[130] https://www2.mbc.ca.gov/BreezePDL/document.aspx?path=%5cDIDOCS%5c20091019%5cDMRAAABI2%5c&did=AAABI091019224019281.DID

P-01354_25

Confidential – Subject to Protective Order

### Publix

Publix provided a sample set of 400 opioid prescriptions to review hard copy and electronic notes. Upon review, Dr. McCann informed me that Publix produced a field in their dispensing data called REJECTIONINDICATOR. This field contained values for sold, cancel, return, and ready. Of the 400 sample prescriptions, 391 were marked as sold or did not have a value in that field. These were the prescriptions that I focused on for the bulk of my review. For completeness however, I also looked at the prescriptions that were marked as canceled. These prescriptions had very few notes associated with them, and the notes that were included appeared to be from patients or prescribers previous prescriptions and did not correspond with the date of the specific sample opioid prescription. There were certainly no notes that detailed why the prescription was canceled. It is also concerning that Publix's canceled or refused prescriptions were included in their dispensing data as opposed to a system specific to recording and documenting refusals to fill. Returning to the sample prescriptions that were filled and dispensed, based on my review of the Publix sample prescriptions and data produced with each prescription, the pharmacy failed in most instances to document the identification and resolution of each red flag in the sample dataset.

#### Electronic Notes Review:

Publix's electronic records allow pharmacists to document important and relevant information concerning counseling, prescriptions, patients, transactions, and prescribers. Below are the electronic notes fields that allow Publix pharmacists to enter information about their findings and judgments in the form of free text notes.

- COUNSELING_NOTE
- PATIENT_NOTE
- PRESCRIBER_NOTE
- RX_NOTE
- TRANSACTION_NOTE[131]

Like Kroger, it appears that Publix produced electronic notes from multiple dates for their notes fields and did not limit the notes to the date the sample prescription was filled. Particularly for the PATIENT_NOTE and PRESCRIBER_NOTE fields, there are compilations of notes from various dates. For example, there's a morphine prescription that was filled on 5/25/2014.[132] This prescription has a patient note that says "PT TAKING BOTH XANAX AND KLONOPIN PER ALEXIS AT MD OFFICE." The patient note is from 2/24/2014, which is three months before the sample prescription was filled. Likewise, this sample prescription has the prescriber note that says, "FAX FAX RF** MARIETTA ADULT MED NO FAXES- REFILL OPT 5 NO FAXES-REFILL OPTION #5 NPI YES NO FAXES    PRESS 5 PRACTICING NOW AT PRIMARY CARE CENTER..." These notes are all from 2010, four years before the sample prescription was filled. I was told that Dr. McCann only included electronic notes that were from the date of the sample

---

[131] In Publix's dispensing system, EnterpriseRx, prescription notes are associated with an entire prescription, including prescription refills. Transaction notes are just for a specific transaction. See Oct. 7, 2022, Chris Hewell, 30(b)(6), Deposition (hereafter "Hewell II Dep."), 302:18-303:18.

[132] See prescription at index 344488

P-01354_26

Confidential – Subject to Protective Order

prescription or from before the date of the sample prescription to mimic what a pharmacist would see at the time of fill.

A review of these fields indicates:

- Of the 391 sample prescriptions that were sold, 390 prescriptions contain no information in the "COUNSELING_NOTE" field. The one prescription from the sample that did contain a note in this field simply stated "REPLACING HYDROCODONE?," which is not relevant to due diligence or red flags.[133] Despite Georgia Board of Pharmacy's requirement that pharmacists offer counseling to patients and Publix's own policy that requires their pharmacists to adhere to state specific counseling rules, Publix pharmacists have very little information recorded in the counseling notes fields.[134]

- Of the 391 sample prescriptions, 207 prescriptions contain no information in the "PATIENT_NOTE" field. The prescriptions that did contain notes in this field included information about pill counts, patient preference for prescription bottle and drug brands, allergies, who can pick up prescriptions, autofill and refill information, diagnoses, patient contact information, dosage information, insurance and coupon cards, etc. There were many notes that indicated pharmacists were aware of suspicious and red flag behavior and even instances of diversion and yet filled prescriptions anyway. Such notes include:

  o CHECK PDMP. **SHE FILLS AT MULTIPLE PHARMACIES FROM MULTIPLE DOCTORS**. PAIN MANAGEMENT PATIENTS CAN ONLY FILL AT ONE PHARMACY CHECKED PDMP PT HAS HAD HYDRO/APAP BEFORE WITH NO ISSUES IN REGARDS TO OPIOID ALLERGY!![135]
  o GA REDACTED - DRIVER'S LICENSE NUMBER **TOLD HER LAST TIME I WOULD FILL CONTROLLEDS - FIND ANOTHER PHARMACY**[136]
  o FILLED THIS TIME, BUT TOLD HER THIS ITEM WAS ON BACKORDER, SO MAY NOT HAVE IN STOCK NEXT FILL, ASKED QUESTIONS ...NOT SURE ABOUT HER PTS GA # REDACTED - DRIVER'S LICENSE NUMBER EXP: REDACTED - DRIVER'S LICENSE EXPIRATION **SHADY. I WOULDN'T FILL. ONE OF HER DRUG DEALING FRIENDS CALLED TO TATTLE ON HER. MUST BE CUTTING INTO HER PROFITS**. WE FILLED HERE AT 1291, BECAUSE SHE HAS FILLED WITH US BEFOER AND IT WENT THROUGH ON MEDICAID, **BUT SHE SEEMS SHADY AS SHE WANTED TO KNOW THE CASH PRICE AFTER SHE LEFT FOR THIS TYPE OF MEDICATION**.[137]

---

[133] See COUNSELING_NOTE field at index 524914
[134] https://gbp.georgia.gov/patient-counseling-information; Ga. Code Ann. § 26-4-85; PUBLIX-MDLT8-00063835
[135] See PATIENT_NOTE field at index 303172
[136] See PATIENT_NOTE field at index 609187
[137] See PATIENT_NOTE field at index 444083

P-01354_27

Confidential – Subject to Protective Order

- o **TOLD HER LAST TIME I WOULD FILL CONTROLLEDS - FIND ANOTHER PHARMACY**[138]
- o **CHECK PDMP FOR MULTIPLE CONTROLS FILLED AT DIFFERENT PHARMACYS AND BY DIFFERENT MD'S**!!!!! DL REDACTED - DRIVER'S LICENSE NUMBER DOB REDACTED - DOB REDACTED - LICENSE EXPIRATION DL REDACTED - DRIVER'S LICENSE NUMBER EXP REDACTED - LICENSE EXPIRATION DL-REDACTED - DRIVER'S LICENSE DL REDACTED - DRIVER'S LICENSE NUMBER DOB REDACTED - DOB EXP REDACTED - LICENSE EXPIRATION REFUND $79.17 ON 3/12/08 JMD[139]
- o 4/16/07 md denied early refill - pt notified -  ..mht **CAUTION, PATIENT TRIES TO FILL CONTROLS EARLY MUST TAKE CONTROLS ON SCHED**[140]
- o 10-3-08 tried to contact Dr. Van Schuyver for refill on ALLG TO PERCODAN & CODEINE  USE ALT TP(TPS) FOR WORK COMP NEED PHONE# 10/08OMP OR REG phenergan, but md said that she is no longer their pt, need pt's new phone # **WATCH CONTROLS**[141]
- o **VERIFY CONTROLS**!! PER DR. GRIFFITH[142]
- o I CALL DR LEFT MESSAGE 4 TIMES HAND FAXED 4 TIMES DR . NOT CALLING AS BACK AND CALL PT. LEFT MESSAGE 08/27/09 **WATCH HIM. ALWAYS HAS REASON FOR NEEDING PAIN MEDICATION EARLY.** THIS RX IS FOR 30 DAYS SUPPLY.[143]
- o **WATCH EARLY REFILLS**[144]
- o PT HAD NO ISSUE WITH KEFLEX **WATCH CONTROLS**[145]
- o ALLERGIC TO BETA-LACTAMS AND AMPRENAVIR LEGACY SYSTEM ALLERGY:SULFA DRUGS(SULFONAMIDES) **PLEASE PLEASE DO NOT LOAN PATIENT ANY PILLS, SHE TAKES ADVANTAGE OF FLOATERS** SHE WANTS ALL RXS FAXED TO COSTCO 770 794 4627 BECAUSE SHE DOES NOT HAVE INS RIGHT NOW DO NOT FILL_ IT WILL PENALIZE THEM![146]
- o **VERIFY ALL NARCOTICS PER DR PEREZ** 11/07/07[147]
- o BRAND COUMADIN! HEART DR DOES NOT WANT HIM ON ANY GENERIC COUMADIN **DOUBLE COUNT MEDS, ESPECIALLY CONTROLS** DR HUDEC CALLED IN ENOUGH PAIN MED TODAY TO

---

[138] See PATIENT_NOTE field at index 176750
[139] See PATIENT_NOTE field at index 285366
[140] See PATIENT_NOTE field at index 693520
[141] See PATIENT_NOTE field at index 425113
[142] See PATIENT_NOTE field at index 245753
[143] See PATIENT_NOTE field at index 433089
[144] See PATIENT_NOTE field at index 641225
[145] See PATIENT_NOTE field at index 185956
[146] See PATIENT_NOTE field at index 175708
[147] See PATIENT_NOTE field at index 464117

P-01354_28

Confidential – Subject to Protective Order

GET STAN THRU UNTIL HIS PAIN MANGMT APPT 8/8 OR 8/11. PT CAN GET REFILLS AT SET DATES OR LATER, BUT NO EARLIER**. NO OTHER PAIN MEDS UNTIL SEEN BY PAIN MGT**. IF QUESTIONS, SPEAK WITH KIMBERLY (DR HUDEC'S NURSE) AT 770-592-3084 **recovering alcoholic, careful with addictive meds**[148]

- o carol at dr mihalovits office said it was ok to fill Xanax early this one time only 1/11/06 – bmc **WATCH EARLY REFILLS!** XANAX ON PBX DC[149]
- o **NO EARLY REFILLS EVER**!!![150]
- o AGAIN - SAID HE WAS SHORTED 2 ALPRAZOLAM - TRIPLE COUNT ALL HIS RX'S!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! CUSTOMER BROUGHT IN RX FOR METHADONE ON 3/6/16 --- I GAVE HIM RX BACK - **IN THE PAST, HE HAS ACCUSED ME AND THIS PHARMACY OF STEALING HIS MEDICATIONS - I DO NOT FEEL COMFORTABLE FILLING HIS MEDICATIONS - IN THE PAST, I HAVE EVEN COUNTED THE PRESCRIPTIONS IN FRONT OF HIM - AND THERE ARE STILL ISSUES** PRICE-MATCH COSTCO $9.12 PRAVASTATIN #30 TABS **PT SAID WE SHORTED HIM 10 TABS OF HYDROCOD/APAP 10/325 --- OUR ON-HANDS ARE CORRECT AND THE RX WAS TRIPLE COUNTED BEFORE HE PICKED UP** --------------- ***************TRIPLE COUNT ALL RX'S!!!!!!!!!!!!!!!*************** MAYBE EVEN IN FRONT OF HIM**[151]
- o **DO NOT FILL CONTROL/PT GOES TO DIFFERENT DOCTOR**[152]
- o CHECK PDMP ON CONTROLS east west connector to check for controls GA DL # REDACTED - DRIVER'S LICENSE NUMBER **OXYCODONE TOO SOON.** PLEASE FILL ON 11/16/17 **PER DR. LEON MARTIN CAN NOT FILL CONTROLS EARLY** SEE NOTE SPOKE TO COLLEEN AT NEW PAIN PAIN MANAGEMENT; TOLD PATIENT WE COULD FILL NEW RX'S AFTER LABOR DAY[153]

- Of the 391 sample prescriptions, 144 prescriptions contain no information in the "PRESCRIBER_NOTE" field. For the prescriptions that do contain information in this field, the notes include information on prescriber's practice, prescriber specialty, prescriber DEA and NPI numbers, fax information, other contact information and prescriber preferences on contact methods, refill information, as well as comments about verifying controls and forgeries. Notes that demonstrate Publix's awareness of prescriber red flags while continuing to fill include:

---

[148] See PATIENT_NOTE field at index 396873
[149] See PATIENT_NOTE field at index 241678
[150] See PATIENT_NOTE field at index 933180
[151] See PATIENT_NOTE field at index 269348
[152] See PATIENT_NOTE field at index 474770
[153] See PATIENT_NOTE field at index 540733

P-01354_29

Confidential – Subject to Protective Order

- o ***NO FAXES OR CALLS ON REFILLS **FORGERY ALERT**; 4/27/07-forgery by a "Tyler Holcomb" @1077-md wants the poli; to be called-was for oxycontin 40mg ~$45 OUT OF POCKET VISIT DRUG ALLEGY SEE RPH **FORGED OXYCONTIN'S** 9/07 PHONE # 678-492-4093 **IS BOGUS HAD FORGERY WRITTEN UNDER HIS NAME** HYOX MEDICAL TREATMENT CNTR KENNESAW URGERT CARE KENNESTONE URGENT CARE CELL 770-656-7474 NPI YES **OXYCONTIN FORGERY** PATIENTS MUST COME TO OFFICE PER DR. ROBERT CARLSON PT IS ALLERGIC TO CLAV PART OF AUGMENTIN SHE SHOULD BE FINE WITH AMOX RX WAS ORIGINALLY FILLED AT PUBLIX 1077 BUT REFILLS WERE LEFT OUT SO I GENERATED IT AGAIN. SHE IS PICKING UP ONE TODAY WITH ONE ADDN REFILL **WATCH FOR EARLY REFILLS**[154]

- o **WATCH OUT FOR FORGERIES** BG5406598 CAN FAX ON REFILLS COULD NOT WRITE IF HE HAD TO FAX REFILLS NON SURG ORTHO & SPINE CTR NPI YES PRESS 2 FOR REFILL REFILL OPTION 3[155]

- o #6 FOR REFILLS 10/14/5 **WATCH FOR FORGERIES** AH9810486 FAX REFILLS FAX RX NPI YES GA PAIN CLINIC NORTHSIDE PAIN CNTR. NPI YES OPTION 6 ON RF **OXYCODONE FORGERY** PAIN SOLNS TX CNTR PAIN SOLUTION TX CENTER PAIN SOLUTIONS TREATMENT CENTER PAINS SOLUTIONS TREATMENT CTR **VERIFY ALL CONTROLS VERIFY ALL CONTROLS - MD SAID TO CALL ON ALL CONTROLS VERIFY ALL OXYCONTIN PRESCRIPTIONS VERIFY CIIS 10/05 VERIFY CONTROLS!!!!! VERITY CII PER MD VICTIM OF FORGERY**.CONFIRM[156]

- o ANESTHESIOLOGIST ANESTHESIOLOGIST /PAIN MANAGEMENT FAX REFILLS! FAX RF **FORGERIES GOING AROUND!!!! FORGERIES!!** SEE NOTE; **verify all narcotic rxs and get patients id # if possible; dr. dave has had many forgeries using her name.  some of the; individuals have become violent when approached so verify an; d call local authorities if need be** - 5-27-05 **OXYCONTIN FORGERIES**!! PAIN MANAGEMENT CENTER PAIN MGNT CENTER GWINNETT CLINIC PAIN MGT VERIFY RX'S PAD STOLEN 4/05[157]

- o BV2422171?? BV4639348 **MD DOES HAVE SEVERAL DEA #'S**[158]

- o 12/22/00: Beeper # (alledgely) 4-303-8665 CAPITAL CITY ORTHOPAEDIC & SPORTS MEDICINE FAX AVAIL FAX REFILLS*** HAVE NPI ORTHOPAEDIC SURGERY **WATCH FOR STOLEN BLANKS**!!!![159]

---

[154] See PRESCRIBER_NOTE at index 739215
[155] See PRESCRIBER_NOTE at index 355721
[156] See PRESCRIBER_NOTE at index 691511
[157] See PRESCRIBER_NOTE at index 434205
[158] See PRESCRIBER_NOTE at index 524426
[159] See PRESCRIBER_NOTE at index 175708

P-01354_30

Confidential – Subject to Protective Order

- AS2170796 GA REDACTED - DRIVER'S LICENSE ON 03/22/38 N.GA. PAIN CLN REFILL-2 NPI YES NPI YES  NO FXES **RX PADS STOLEN FROM OFFICE-VERIFY CONTROLS**[160]
- **O.D.**[161]
- (7-945-3460/DACULA BACK OFF (7-945-3460/DACULA BACK OFF; office mgr is Scott Gunther, cell 404 822 5634 02/10 **WATCH FORGERIES** CALLED IN BY LAURIE CONTACT MARGARET BROSH OF GDNA, **DR JACKSON HAS TRIED TO WRITE FOR HIGH DOSE METHADONE FOR ADDICTION TREATMENT FAX-FORGED RXS**-CALL DR OPTION #23 REFILLS *857 **RX PAD STOLEN** 10/06 RX PAD WAS STOLEN FROM THE MD OFFICE. **DO NOT FILL ANY CONTROLS WITHOUT CALLING TO VERIFY!**[162]
- AS2170796 GA REDACTED - DRIVER'S LICENSE ON 03/22/17 N.GA. PAIN CLN REFILL-2 NPI YES NPI YES  NO FXES **RX PADS STOLEN FROM OFFICE-VERIFY CONTROLS**[163]
- 1ST PHONE # IS CELL ANSWERS ON PHONE???!!!; **Has board order against him on medical board website.; Cannot write for schedule 2 drugs until further notice.**; Control rx must be in triplicate, numbers rx's blanks.... ANSWERS ON PHONE???!!!; **Has board order against him on medical board website.; Cannot write for schedlue 2 drugs until further notice.**; Control rx must be in triplicate, numbers rx's blanks....; **VERIFY ALL CONTROLS!!!!!!!!!!! CANNOT PRESCRIBE C-II'S PER BOARD- ON PROBATION** 10-19-07 DO NOT FILL RXS WRITER!! HAS BOARD ORDER SEE OTHER FILE COMMENTS MD CELL PHONE 678-714-6918 MD ONLY WRITES RXS!!!! WATCH!!! YONG'S MEDICAL CT CELL 678-458-0455 YOUNGS MED CTR YOUNG'S MEDICAL CENTER YOUNG'S MEDICAL CT[164]
- **THIS DR. HAS CERTAINLY PRACTICED AT A LOT OF LOCATIONS-HAVE ONLY SEEN PAIN MEDS(I.E. OXYCODONE**) THAT HE HAS WRITTEN FOR.[165]
- COMPREHENSIVE PAIN CARE FAX 7704219566 FAX REFILL FAX REFILLS GREAT FOR ADDICTION...PER DR. BARRY STRAUS NPI YES PA DENIED 8/15/12 PAIN CARE **SOMEONE HAS BEEN CALLING IN FAKE NORCO RX'S UNDER THIS MD...BE CAREFUL**[166]
- ALSO WORKS AT BLAIRSVILLE ALT NPI# 1356427850 CAN FAX CENTER FOR PAIN MANAGEMENT CENTER FOR PAIN MANAGEMENT PREFERRED ANESTHESIA SERVICES CENTER FOR PAIN MNGMT CK

---

[160] See PRESCRIBER_NOTE at index 437154
[161] See PRESCRIBER_NOTE at index 182798
[162] See PRESCRIBER_NOTE at index 922129
[163] See PRESCRIBER_NOTE at index 241678
[164] See PRESCRIBER_NOTE at index 52043
[165] See PRESCRIBER_NOTE at index 933180
[166] See PRESCRIBER_NOTE at index 269348

P-01354_31

**Confidential – Subject to Protective Order**

STE# CTR FOR PAIN MANAGEMENT FAX FAX REFILLS FAX REFILLS RF 225 HEALTHSOUTH SURGERY CENTER OF ATLANTA PRESS 229 REFILL EXT 225 SEND FAXES **WATCH OUT-BEING INVESTIGATED WATCH OUT-BEING INVESTIGATED**   KING OF SCRIBBLE **WATCH XANAX FORGERIES** X221 FOR REFILLS X225 FOR REFILLS[167]

- o  ALT FAX # IS 6783849409 FAX RF HER NAME ***MUST*** BE STEPHANIE DELGAUDIO-RIEMANN OR YOU ***WILL*** GET THAT ***EXTREMELY ANNOYING*** NPI MISMATCH REJECT! STOP CHANGING HER NAME!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!![168]

- o  ***DONT FAX REFILLS** *NO FAXES  5-11-06 2 PHONE 3S!!!!! 5/05: **CII FORGERIES**; 5/05: Call MD if you get any CII scripts -- **speak to MD; directly, RNs may be part of a conspiracy** 770-319-6330 ASK FOR PHILLIP FOR BEAL REFILS.. ATL. NEUROPSYCHIATRY/NEURO BEHAVIORAL CARE CAN FAX ON REFILLS DO NOT ACCEPT FAXES DO NOT FAX ANYMORE!!!!! DO NOT FAX REFILLS DO NOT TAKE FAXES HAVWE NPI/NO FAXES 9-07 MULTIPLE OFFICES NEUROLOGY & PSYCHIATRY NEW #644-1131 NEW #644-1131  NO FAX! NO FAXES!!! 1033282017 NO FAXES, PT. MUST CALL DR. NO REFILL REQUESTS FROM PHARMACY NPI YES PAULETTE EXT 124 PSYCHIATRY/NEUROLOGY REFILLS ONLY IN EMERGENCY!! RF 6-NO FAX 10/05 VC2S-**VERIFY ALL C2'S** RIDGEVIEW SUBOXONE VERIFIED MD SUBOXONE VERIFIED MD XK2022034 TX: XK2022034 **VERIFY ALL CIIS -FORGERIES VERIFY ALL CONTROLS** 5/01/05 **VERIFY CONTROLS** ESP. CII!   DO NOT ACCEPT FAXES. VERIFY RX..**RXS BEING CALLED IN/WRITTEN FORGED VERIFY RX'S**[169]

- o  FAX REFILLS NO FAXES!! NPI YES REFILL 0 RESURGEONS ORTHO **VERIFY CONTROLLED, STOLEN BLANKS**  7/13/01[170]

- o  MARIETTA EYE CLINIC OPHTHAMOLOGIST **VERIFY ALL CONTROLS FROM THIS DR'S OFFICE**. PHONE NUMBER DISCONNECTED, **2 FAKE RXS HAVE BEEN DISCOVERED SO FAR.** RXS TYPED NEATLY.[171]

- -  Of the 391 sample prescriptions, 371 prescriptions contain no information in the "RX_NOTE" field. The prescriptions that did contain information in this field included comments about insurance, patient driver's license, brand preferences, verifying information, and ok'ing prescription with prescriber. Notes of interest include:

---

[167] See PRESCRIBER_NOTE at index 668495
[168] See PRESCRIBER_NOTE at index 130556
[169] See PRESCRIBER_NOTE at index 925515
[170] See PRESCRIBER_NOTE at index 238286
[171] See PRESCRIBER_NOTE at index 918767

P-01354_32

Confidential – Subject to Protective Order

- o SOFT REJECT - PAYER ALLOWS DUR PPS CODE OVERRIDE. --- **HIGH DOSE O/R** - MD CONSULTED - FILLED WITH DR EATON APPROVAL[172]
- o **CHECKED PDMP. 1 MD 1 PHARMACY**[173]
- o PATIENT REQUESTED TO **PAY CASH** FOR PRESCRIPTION 6/20/2014[174]
- o **VERIFIED PER DR. KLOPPER** 6/29/13[175]


- Of the 391 sample prescriptions, 182 prescriptions contain no information in the "TRANSACTION_NOTE" field. This field appeared to contain a combination of automated or drop down messages as well as free-form text. Some of the automated messages included: Declined from Adjudication, Declined from Fill on Arrival, Declined from Drug Utilization Review, Canceled from Data Entry, Declined from Verification, RefillTooSoon, and Autosplit Partial Fill. These automated or drop down messages are followed by pharmacist initials. This field also contains some free form text, including comments about prescription dosage changes, prescription instructions, insurance and identification information, refill and pickup information, allergies, etc. Notes of interest include:
  - o **CASH PAYMENT** ON THE QTY 128 Declined from Adjudication by RAAE6<br>Edit Data Entry<br> MEDICAID PAYS FOR QTY 61[176]
  - o DUR ADDITIONAL TEXT (570-NS): **240.000 MG MORPHINE EQUIVALENT PER DAY EXCEEDS PLAN THRESHOLD** OF 100 M[177]
  - o *****DO NOT TAKE WITH OXYCODONE**/APAP TABS*****[178]
  - o **DO NOT TAKE WITH HYDROCONE** (LORTAB) Profiled from Adjudication by RWBP50<br>[179]
  - o **CHECK ID**[180]
  - o DUR ADDITIONAL TEXT (570-NS): **240.000 MG MORPHINE EQUIVALENT PER DAY EXCEEDS PLAN THRESHOLD** OF 100 M[181]


The quality and quantity of Publix's electronic notes did not progress when expanding from just the sample to the sample and associated prescriptions.

---

[172] See RX_NOTE field at index 452978
[173] See RX_NOTE field at index 267879
[174] See RX_NOTE field at index 323802
[175] See RX_NOTE field at index 925515
[176] See TRANSACTION_NOTE field at index 444083
[177] See TRANSACTION_NOTE field at index 12478
[178] See TRANSACTION_NOTE field at index 694023
[179] See TRANSACTION_NOTE field at index 702492
[180] See TRANSACTION_NOTE field at index 831690
[181] See TRANSACTION_NOTE field at index 12478

33

Confidential – Subject to Protective Order

| Electronic Notes Field | # Blank in the 391 Script Sample | % Blank | # Blank in the 1,438 Sample and Associated Scripts | % Blank |
|---|---|---|---|---|
| COUNSELING_NOTE | 390 | 99.74% | 1436 | 99.86% |
| PATIENT_NOTE | 207 | 52.94% | 584 | 40.61% |
| PRESCRIBER_NOTE | 144 | 36.83% | 395 | 27.47% |
| RX_NOTE | 371 | 94.88% | 1376 | 95.69% |
| TRANSACTION_NOTE | 182 | 46.55% | 633 | 44.02% |

There were four prescriber notes related to cancer or oncology, though these notes about diagnosis do not resolve the red flags of the specific prescription in the sample and are also notes from previous dates. In most cases, the notes about cancer or oncology were created years before the sample prescription was filled.[182]

**Contradictions to Publix Electronic Notes**

While Publix's electronic notes appear to identify signs of red flags and diversions, the notes largely fail to explain why the medication is being dispensed anyways and how the flag was resolved. Instead, the notes read as though the pharmacist is making an exception, overlooking the red flag and warning the patient that he or she will not fill prescriptions if presented in this way in the future. It is also clear, in reviewing the dispensing data that the red flag warnings are not consistently read or followed by other pharmacists, because Publix continued to fill prescriptions with the same red flags for the same patient in the future. It does not appear as though Publix's dispensing systems were always transparent between stores. Publix's PDX system was not visible between stores unless pharmacists explicitly pulled from a Pharmacy Host System.[183] Because of such failures, a Publix pharmacist at one store would have no idea about possible red flags already identified and documented by a pharmacist at another store when there was patient or prescriber overlap. Publix's later dispensing system, EnterpriseRx, did appear to fix this problem and allow Publix stores to view notes from other Publix stores.[184] That

---

[182] See PRESCRIBER_NOTE at indices 780197, 352785, 471137, 232018
[183] PUBLIX-MDLT8-00036800; Hewell II Dep., 229:10-13
[184] Hewell II Dep., 247:18-248:1

P-01354_34

Confidential – Subject to Protective Order

being said, Publix's electronic notes produced in this litigation demonstrate that even when Publix upgraded their dispensing system, they did not have a policy and structure in place to educate pharmacists in the importance of notes and documentation as the examples below will demonstrate that notes were frequently overlooked and red flags neither resolved nor documented.

For example, there is a patient note from the Publix sample that says, "CHECK PDMP. SHE FILLS AT MULTIPLE PHARMACIES FROM MULTIPLE DOCTORS. PAIN MANAGEMENT PATIENTS CAN ONLY FILL AT ONE PHARMACY CHECKED PDMP PT HAS HAD HYDRO/APAP BEFORE WITH NO ISSUES IN REGARDS TO OPIOID ALLERGY!!."[185] The doctor and pharmacy shopping note was created on 10/12/2015.[186] Despite this note, Publix pharmacies in Cobb County filled 39 opioid prescriptions for this patient from 2017 to 2019.[187] There is only one additional note about checking the PDMP in accordance with the note from 2015. This note, "CHECKED PDMP," was created on 10/16/2018 and copied onto only 9 of the patient's opioid prescriptions in 2018 and 2019 with no additional details or edits, such as the date the PDMP was checked or the findings.[188] The patient's other patient notes are about diagnosis and allergies. Despite multiple red flags being identified, Publix did not adequately document resolutions to the red flags and instead continued to fill for the patient.

Likewise, there is a patient note from Publix's sample that says "CHECK PDMP FOR MULTIPLE CONTROLS FILLED AT DIFFERENT PHARMACYS AND BY DIFFERENT MD'S!!!!! DL REDACTED - DRIVER'S LICENSE NUMBER DOB REDACTED - DOB REDACTED - LICENSE EXPIRATION DL REDACTED - DRIVER'S LICENSE NUMBER EXP REDACTED - LICENSE EXPIRATION DL-REDACTED - DRIVER'S LICENSE DL REDACTED - DRIVER'S LICENSE NUMBER DOB REDACTED - DOB EXP REDACTED - LICENSE EXPIRATION REFUND $79.17 ON 3/12/08 JMD."[189] The check PDMP and pharmacy and doctor shopping notes were created on 12/28/2015. Looking at this patient's dispensing history, Publix pharmacies in Cobb County filled 322 opioid, muscle relaxer, and benzodiazepine prescriptions for this patient, of which 170 were opioid prescriptions.[190] Publix filled for this patient from 2007 to 2019. Publix pharmacies in Cobb County filled 89 prescriptions for this patient after the date of the pharmacy and doctor shopping note was created, including 35 opioid prescriptions and 28 prescriptions that triggered red flag 5 (which is a version of the holy trinity flag).[191] While there were additional patient notes written for the prescriptions filled after 2015, they were all about drivers license checks. There were no notes to indicate the Publix pharmacists ever checked the PDMP prior to dispensing this patient more opioids despite the note highlighting the need to check the PDMP.[192] Despite significant

---

[185] See PATIENT_NOTE at index 303172
[186] PUBLIX-MDLT8-00145543
[187] See Sample Patient History for Patient ID 19103102
[188] PUBLIX-MDLT8-00145543, See Sample Patient History for Patient ID 19103102
[189] See PATIENT_NOTE at index 285366
[190] See Sample Patient History at Patient ID 4720804
[191] Expert Report of Craig McCann, January 24, 2024, Appendix 10K Selected Patient Prescriptions, Patient_4720804
[192] PUBLIX-MDLT8-00145543

P-01354_35

Confidential – Subject to Protective Order

concerns identified, Publix did not document any resolution to the concerns and instead continued to fill dangerous prescriptions for this patient.

There is an electronic note in the patient notes that was created on 1/18/2009 that says "DO NOT FILL CONTROL/PT GOES TO DIFFERENT DOCTOR."[193] This note is attached to a sample prescription for oxycodone that was filled on 3/2/2018. Looking at the patient's dispensing history, Publix pharmacies in Cobb County filled 9 opioid prescriptions and 6 benzodiazepine prescriptions for this patient in 2017 and 2018, all of which are Controlled Substances. [194] There is no additional patient note or other electronic note of any kind to clarify why Publix is filling controlled substance prescriptions again for this patient even though there is a note from 2009 that says to no longer fill controls. Also of note, one of the prescribers that this patient saw for benzodiazepines in 2018 was Uvienome Sakor, a Nurse Practitioner who pled guilty to a felony relating to controlled substances in 2010 and lost the ability to apply for or renew her DEA license in 2021.[195]

Another example of Publix pharmacies ignoring their own patient notes comes from a sample patient note that says, "VERIFY ALL NARCOTICS PER DR PEREZ 11/07/07."[196] Looking at this patient's dispensing history, Publix pharmacies in Cobb County filled 9 opioid prescriptions for this patient from 2007 to 2010, and there are no additional patient notes or other electronic notes that indicate that the pharmacists verified any of the opioid prescriptions prior to filling.[197] As stated in my general report, opioids are inherently dangerous drugs. They are controlled substances that pose a significant risk to the public and require the pharmacy practice to pay close attention, yet there are no electronic notes to indicate that Publix adhered to their own guidance in this instance.[198]

Likewise, there is a patient note from the sample that says, "FILLED THIS TIME, BUT TOLD HER THIS ITEM WAS ON BACKORDER, SO MAY NOT HAVE IN STOCK NEXT FILL, ASKED QUESTIONS ...NOT SURE ABOUT HER PTS GA # REDACTED - DRIVER'S LICENSE NUMBER EXP: REDACTED - DRIVER'S LICENSE EXPIRATION SHADY. I WOULDN'T FILL. ONE OF HER DRUG DEALING FRIENDS CALLED TO TATTLE ON HER. MUST BE CUTTING INTO HER PROFITS. WE FILLED HERE AT 1291, BECAUSE SHE HAS FILLED WITH US BEFOER AND IT WENT THROUGH ON MEDICAID, BUT SHE SEEMS SHADY AS SHE WANTED TO KNOW THE CASH PRICE AFTER SHE LEFT FOR THIS TYPE OF MEDICATION."[199] This patient note is a compilation of many notes from various dates that indicate the Publix pharmacists did not feel comfortable filling controlled substances, specifically methadone, for this patient.  Nevertheless, they continued to fill these prescriptions.  The note "not sure about her" note was created on 7/25/2012 for a methadone prescription, the "shady and drug dealing friends" note was created on 8/16/2012 for another

[193] See PATIENT_NOTE at index 474770
[194] See Sample Patient History for Patient ID 7330431
[195] https://www.federalregister.gov/documents/2021/09/07/2021-19194/uvienome-linda-sakor-np-decision-and-order
[196] See PAITENT_NOTE at index 464117
[197] See Sample Patient History for Patient ID 5436012
[198] Carmen Catizone, General Expert Report, p. 15 (January 24, 2024).
[199] See PATIENT_NOTE at index 444083

P-01354_36

Confidential – Subject to Protective Order

methadone prescription, and the "shady and cash price" note was created on 5/2/2012 for yet another methadone prescription.[200] Despite the number of concerning notes identifying likely diversion and a clear indication that Publix pharmacists were uncomfortable filling these prescriptions, Publix pharmacies in Cobb County still filled four opioid prescriptions for the patient in 2013, after the patient notes were written. These opioid prescriptions were for high dosage units, including two scripts for 189 pills, and extremely high daily MME. The prescriptions ranged from 270 daily MME to 305 daily MME.[201] Publix pharmacies outside of Cobb County also continued to fill opioid prescriptions for this patient after the shady drug dealing notes were written. Publix pharmacies in Lee, Bartow, Tift, and Lowndes Counties filled an additional 9 opioid prescriptions for this patient in 2013.[202] It appears as though Publix finally stopped filling for this patient in May of 2013: "NO LONGER FILLING FOR REDACTED - PATIENT NAME. SHE IS HAVING MULTIPLE PEOPLE CALL FOR HER TO SEE IF WE HAVE HER MEDICATION. TOLD HER THAT WE DIDN'T HAVE IT AND IT HAS BEEN ON BACKORDER FOR QUITE SOME TIME." This note was created on 5/4/2013.[203] There is also no indication that Publix ever reported this patient to law enforcement.  This was not a one-time occurrence.

In 2016, Publix pharmacists raised concerns about a patient's behavior indicating potential abuse and misuse of opioids.  Once again, the pharmacists detailed their concerns but did not document any resolutions to their concerns prior to filling the medications. There is no indication in the notes that their concerns were resolved, and Publix continued to subsequently fill controlled substance prescriptions for this patient. The sample patient note says, "AGAIN - SAID HE WAS SHORTED 2 ALPRAZOLAM - TRIPLE COUNT ALL HIS RX'S!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! CUSTOMER BROUGHT IN RX FOR METHADONE ON 3/6/16 --- I GAVE HIM RX BACK - IN THE PAST, HE HAS ACCUSED ME AND THIS PHARMACY OF STEALING HIS MEDICATIONS - I DO NOT FEEL COMFORTABLE FILLING HIS MEDICATIONS - IN THE PAST, I HAVE EVEN COUNTED THE PRESCRIPTIONS IN FRONT OF HIM - AND THERE ARE STILL ISSUES PRICE-MATCH COSTCO $9.12 PRAVASTATIN #30 TABS PT SAID WE SHORTED HIM 10 TABS OF HYDROCOD/APAP 10/325 --- OUR ON-HANDS ARE CORRECT AND THE RX WAS TRIPLE COUNTED BEFORE HE PICKED UP -------------- ***************TRIPLE COUNT ALL RX'S!!!!!!!!!!!!!!!!************** MAYBE EVEN IN FRONT OF HIM."[204] The note about giving the patient the prescription back and not feeling comfortable filling his medications was created on 3/6/2016 for a methadone prescription.[205] Looking at the patient's dispensing history, Publix pharmacies in Cobb County filled 113 prescriptions for this patient from 2011 to 2019, most of which were opioids.[206] There were 45 prescriptions filled after the

---

[200] PUBLIX-MDLT8-00145543
[201] See Sample Patient History for Patient ID 4566287
[202] Expert Report of Craig McCann, January 24, 2024, Appendix 10K Selected Patient Prescriptions, Patient_4566287_GA
[203] PUBLIX-MDLT8-00145543
[204] See PATIENT_NOTE at index 269348
[205] PUBLIX-MDLT8-00145543
[206] See Sample Patient History at Patient ID 22947516

Confidential – Subject to Protective Order

date of the note about not feeling comfortable filling the patient's prescriptions and no additional notes after the one from 2016 to indicate why Publix pharmacies continued to fill these prescriptions.

Another patient note that stood out was "BRAND COUMADIN! HEART DR DOES NOT WANT HIM ON ANY GENERIC COUMADIN DOUBLE COUNT MEDS, ESPECIALLY CONTROLS DR HUDEC CALLED IN ENOUGH PAIN MED TODAY TO GET STAN THRU UNTIL HIS PAIN MANGMT APPT 8/8 OR 8/11. PT CAN GET REFILLS AT SET DATES OR LATER, BUT NO EARLIER. NO OTHER PAIN MEDS UNTIL SEEN BY PAIN MGT. IF QUESTIONS, SPEAK WITH KIMBERLY (DR HUDEC'S NURSE) AT 770-592-3084 recovering alcoholic, careful with addictive meds."[207] While there are many red flags in this description, including having to double count controls, multiple doctors, and early refills, the note that stood out to me was that the patient was a recovering alcoholic and to be careful with addictive meds. This note was created on 8/13/2008.[208] Despite this note, Publix pharmacies in Cobb County filled 112 opioid and benzodiazepine prescriptions for this patient from 2010 to 2016.[209]

Not only did Publix continue to fill prescriptions for patients that had notes in the system warning pharmacists not to fill their prescriptions, but Publix also filled prescriptions for prescribers that pharmacists had identified as problematic and created notes to not fill their prescriptions.  There is a hydrocodone prescription in Publix's sample that was filled on 6/21/2011 and written by Yong Liu.[210] This prescription has the prescriber note, "1ST PHONE # IS CELL ANSWERS ON PHONE???!!!; Has board order against him on medical board website.; Cannot write for schedule 2 drugs until further notice.; Control rx must be in triplicate, numbers rx's blanks.... ANSWERS ON PHONE???!!!; Has board order against him on medical board website.; Cannot write for schedlue 2 drugs until further notice.; Control rx must be in triplicate, numbers rx's blanks....; VERIFY ALL CONTROLS!!!!!!!!!! CANNOT PRESCRIBE C-II'S PER BOARD- ON PROBATION 10-19-07 DO NOT FILL RXS WRITER!! HAS BOARD ORDER SEE OTHER FILE COMMENTS MD CELL PHONE 678-714-6918 MD ONLY WRITES RXS!!!! WATCH!!! YONG'S MEDICAL CT CELL 678-458-0455 YOUNGS MED CTR YOUNG'S MEDICAL CENTER YOUNG'S MEDICAL CT."[211] These notes reflect multiple red flags, including that Liu has a board action against him that restricts his Schedule II prescribing. One of these notes is dated with "10-19-07." The Georgia Medical Board entered into an order with Liu on October 5, 2007 that put him on probation for 2 years and restricted his Controlled Substance privileges. The order says, "Respondent shall not prescribe administer, order or dispense any Schedule II controlled substances."[212] This restriction was lifted on November 6, 2008. Publix pharmacies in Cobb County did not fill any Schedule II prescriptions written by Liu during this two year probation period, but they continued to fill Schedule III

---

[207] See PATIENT_NOTE at index 396873
[208] PUBLIX-MDLT8-00145543
[209] See Sample Patient History for Patient ID 3442229
[210] See prescription at index 52043
[211] See PRESCRIBER_NOTE at index 52043
[212] See https://gcmb.mylicense.com/verification/SearchResults.aspx, Disciplinary Actions, search for Yong Liu

P-01354_38

Confidential – Subject to Protective Order

prescriptions written by this prescriber, such as hydrocodone combination products, which were also highly abused opioids.[213] After the probation period, Publix pharmacies in Cobb County resumed filling prescriptions, including Schedule II opioid prescriptions, for Liu until September of 2018 even with the excessive red flags and concerns identified in the prescriber notes.

Likewise, there is a Publix sample prescription for 150 dosage units of oxycodone that was written by prescriber Kamal Kabakibou.[214] This prescription has the prescriber note "ALSO WORKS AT BLAIRSVILLE ALT NPI# 1356427850 CAN FAX CENTER FOR PAIN MANAGEMENT CENTER FOR PAIN MANAGEMENT PREFERRED ANESTHESIA SERVICES CENTER FOR PAIN MNGMT CK STE# CTR FOR PAIN MANAGEMENT FAX FAX REFILLS FAX REFILLS RF 225 HEALTHSOUTH SURGERY CENTER OF ATLANTA PRESS 229 REFILL EXT 225 SEND FAXES WATCH OUT-BEING INVESTIGATED WATCH OUT-BEING INVESTIGATED   KING OF SCRIBBLE WATCH XANAX FORGERIES X221 FOR REFILLS X225 FOR REFILLS."[215] The "watch out being investigated" note was created on 1/27/2009 and was updated on 5/18/2009.[216] Despite these notes, Publix pharmacies in Cobb County filled thousands of opioid prescriptions written by Kabakibou, including thousands of scripts that postdate the investigation note. Publix pharmacies in Cobb County filled prescriptions for this prescriber from 2007 to 2019. Other large pharmacies equivalent to Publix became aware of Kabakikou's concerning prescribing behavior, and yet because Publix had no prescriber monitoring or blocking system in place, they could not aid their pharmacists in identifying and stopping problematic doctors. CVS investigated Kabakibou on ten different occasions for various reasons, including numerous patients who live outside the area, large monthly quantities, writing pain cocktails, writing only controls, concerns from pharmacists, concerns from other chain pharmacies, and requests from the United States Attorney's Office in the North District of Georgia for Kabakibou prescriptions.[217] Additionally, Walmart centrally blocked this prescriber on 5/2/2017.[218] There is no indication that Publix ever identified or investigated this doctor, let alone put a block on him to stop their pharmacists from filling his prescriptions, even though their pharmacists were aware that he was being investigated as early as 2009.

There were also many electronic notes that included variations about watching a patient for early fills. For example, there is a compilation patient note in the Publix's sample that says, "01/18/09 claims we shorted her #12 caps of fiorinal. Our 1/5/07 MD would not authorize Fiorinal rx till 1/23 per count was perfect. Tamara WANTS FIORINAL. NOT FIORICET, IF NURSE CALLS IN FIORICET, PLEASE CALL OFFICE AND CHANGE TO CORRECT. **WATCH EARLY REFILLS!!!!!!**."[219] The watch early refills note was created on 12/19/2008 for a codeine

---

[213] Expert Report of Craig McCann, January 24, 2024, Appendix 10I Prescriptions of Selected Prescribers – Publix, Liu, Yong.
[214] See prescription at index 668495
[215] See PRESCRIBER_NOTE at index 668495
[216] PUBLIX-MDLT8-00145543
[217] CVS-MDLT3-000121335
[218] WMT_MDL_001004191
[219] See PATIENT_NOTE at index 680743

Confidential – Subject to Protective Order

combination product prescription.[220] Despite this note, Publix pharmacies in Cobb County filled two opioid prescriptions at least five days early, triggering red flag 12, for this patient after the date of the patient note to watch early fills, which demonstrates that they did not document any adherence to previous notes and warning in addition to failing to document any justification for additional early refills on opioid prescriptions.[221]

Likewise, there's a patient note from the sample that says, "4/16/07 md denied early refill - pt notified -  ..mht CAUTION, PATIENT TRIES TO FILL CONTROLS EARLY MUST TAKE CONTROLS ON SCHED."[222] All three of these notes are about a patient trying to fill prescriptions early and are associated with oxycodone prescriptions. The note about the doctor denying early fill and the note about taking controls on schedule were both created on 12/11/2008. The caution note was created on 4/21/2012.[223] Despite the notes from 2008, Publix Store 280 in Marietta filled a hydrocodone prescription for this patient at least 5 days early, triggering red flag 12, in February of 2010.[224] Despite documentation that early refills for opioids are a problem with this patient, Publix failed to provide any additional documentation on why early refills for opioids were dispensed despite known concerns.

There is also a patient note from the sample that says, "I CALL DR LEFT MESSAGE 4 TIMES HAND FAXED 4 TIMES DR . NOT CALLING AS BACK AND CALL PT. LEFT MESSAGE 08/27/09 WATCH HIM. ALWAYS HAS REASON FOR NEEDING PAIN MEDICATION EARLY. THIS RX IS FOR 30 DAYS SUPPLY."[225] The note about watching the patient and always having a reason for needing pain medication early was created on 9/15/2010.[226] However, a month later on October 25, 2010, Publix store 155 in Marietta filled a hydrocodone prescription for this patient at least 5 days early, triggering red flag 12.[227]

Publix's internal compliance team and pharmacy leaders in Cobb County were also aware that their pharmacists were overlooking and failing to document resolutions to important electronic notes about opioid prescriptions and other controlled substance prescriptions. Publix had knowledge that the opioids they were dispensing were in some cases being diverted in the form of forged and fraudulent prescriptions. In January of 2020, one of Publix's pharmacy supervisors received notice of a fraudulent prescription at Publix store 536 in Cobb County.[228] Upon additional investigation, Publix's compliance team found eight more fraudulent prescriptions all written by the same prescriber and all filled and sold at Publix stores in Cobb County.[229] The

---

[220] PUBLIX-MDLT8-00145543
[221] See dispensing data for patient 4036271, Expert Report of Craig McCann, January 24, 2024, Appendix 10K Selected Patient Prescriptions, Patient_4036271.
[222] See PATIENT_NOTE at index 693520
[223] PUBLIX-MDLT8-00145543
[224] See dispensing data for patient 4039470, Expert Report of Craig McCann, January 24, 2024, Appendix 10K Selected Patient Prescriptions, Patient_4039470.
[225] See PATIENT_NOTE at index 433089
[226] PUBLIX-MDLT8-00145543
[227] See dispensing data for patient 8880030, Expert Report of Craig McCann, January 24, 2024, Appendix 10K Selected Patient Prescriptions, Patient_8880030.
[228] PUBLIX-MDLT8-00077925
[229] PUBLIX-MDLT8-00077925

Confidential – Subject to Protective Order

Compliance team learned that there were patient notes from 2019 and 2020 that warned of the patient trying to fill fraudulent prescriptions, and yet Publix stores continued to fill prescriptions written by the same doctor for the same patient at issue. The pharmacy supervisor at this store noted in his deposition testimony, "it would have been nice if they'd looked at that note, because they would have never filled it if they saw that note."[230]

These examples show that pharmacists at Publix were aware of some red flags and were documenting the existence of those flags.  In the face of those flags, however, Publix pharmacists filled each of these prescriptions without explaining how they resolved the red flags. The notes indicate that the red flags were never resolved because they frequently contain comments warning future pharmacists not to fill controlled substance prescriptions for the patient or from certain prescribers or not to fill opioid prescriptions early, among many other examples. A review of future dispensing for those patients or prescribers at Publix indicates that the note was either never reviewed or ignored because controlled substances prescriptions were subsequently filled despite the prior warnings.

### Hard Copy Prescription Notes Review:

Based on Dr. McCann's work linking hard copy prescriptions to the dispensing data sample, I have determined that Publix produced 388 hard copy prescriptions for their sample. The vast majority of their hardcopy prescriptions did not contain any handwritten notes related to red flags or due diligence. For the prescriptions that did have relevant handwritten notes, like their electronic notes, Publix hardcopy notes contained vague variations of "ok per doctor",[231] "Rx verified",[232] and "PDMP checked".[233] A Publix prescription for Norco has a handwritten note that says "RPh miscount… got 5 extra tablets" with a frowny face next to it.[234]

A handwritten note relating to a prescription written by Dr. Shawn Cable for multiple drugs, including Norco, promethazine, Senokot, and milk of magnesia says, "Note to Steve: do not fill * m of mag. Please make copy of my prescriptions for me. Thanks Michael."[235] Cable's prescriptions for multiple drugs appear to cause Publix pharmacists concern on multiple occasions. Another Cable script for multiple drugs, this time Flexeril, Klonopin, and Norco, has a handwritten note that says "* hold please – do not fill" next to the Flexeril prescription.[236] A Cable prescription for Ativan, Norco, and Senokot has a handwritten note "* hold and do not fill" next to the Senokot.[237] Another Cable script that was for Flexeril, Klonopin, Norco, and Senokot had handwritten notes "X HOLD – DO NOT FILL" next to the Flexeril and Senokot scripts.[238] Another Cable script for Norco and Senokot had the handwritten note "* DO NOT FIL" next to the Senokot prescription

---

[230] Dec. 14, 2022, Michael Chavez Deposition, 320-21.
[231] For example, see PUBLIX-MDLT8-00135595, PUBLIX-MDLT8-00137012
[232] For example, see PUBLIX-MDLT8-00135961
[233] For example, see PUBLIX-MDLT8-00137116
[234] PUBLIX-MDLT8-00137185
[235] PUBLIX-MDLT8-00137177
[236] PUBLIX-MDLT8-00137199
[237] PUBLIX-MDLT8-00137203
[238] PUBLIX-MDLT8-00137135

P-01354_41

Confidential – Subject to Protective Order

as well as "Dr. Cable Publix Rx Pricing Other – Reg."[239] These prescriptions were all written for patient 11241451 and were for prescriptions that were filled in 2012 and 2013. Publix pharmacies in Cobb County filled 451 opioid, muscle relaxer, and benzodiazepine prescriptions for this patient, and almost 300 of the prescriptions were written by Shawn Cable.[240] Publix pharmacies in Cobb County continued to fill opioid prescriptions along with muscle relaxer and benzodiazepine prescriptions for this patient and written by Cable until 2018 despite concern from 2012 and 2013. There is no evidence that Publix identified or documented in their electronic notes or hard copy prescriptions any resolutions to concerns about Dr. Cabel and this patient.

### Red Flag Review:

One of Publix's red flag prescriptions that stood out was an oxycodone prescription that was filled on April 6, 2013 and written by prescriber Jay Bender.[241] As mentioned above, Dr. Bender was disciplined by the Georgia Medical Board in 2009 for illegally writing controlled substance prescriptions through phone consultations without physically examining patients. This Publix sample prescription had four red flags.[242] The prescription did have electronic notes; however, the electronic notes suggest that the Publix pharmacists knew that the prescription had red flags and that the prescriber exhibited suspicious behavior. For instance, in the patient note field, "NO EARLY REFILLS EVER!!!"[243] This note was from 8/10/2009. The prescriber note states "THIS DR. HAS CERTAINLY PRACTICED AT A LOT OF LOCATIONS-HAVE ONLY SEEN PAIN MEDS(I.E. OXYCODONE) THAT HE HAS WRITTEN FOR,"[244] and was created on 8/21/2012. Despite concerns as early as 2012, Publix pharmacies in Cobb County continued to fill a significant number of prescriptions written by Bender, including opioids, until May of 2019, which is the end of the range of dispensing data they provided for this litigation.[245] Going back to the Bender prescription from the sample, while the hard copy prescription does appear to have a scribbled pharmacist signature on it, there are no additional handwritten notes on it.[246]

Another example of a red flag prescription from the Publix's sample shows how Publix pharmacists ignored red flags as well as ignoring patient notes. An oxycodone prescription filled on 7/13/2018 and written by Patricia Glenn[247] was for 135 daily MME and triggered red flags 5

---

[239] PUBLIX-MDLT8-00137160
[240] See Sample Patient History for Patient ID 11241451
[241] See Publix sample patient history tool at index 933180.
[242] 3. Patient was dispensed opioid prescriptions with overlapping days of supply that were written by two or more prescribers 5. Patient was dispensed an opioid, a benzodiazepine, and a muscle relaxer for overlapping days of supply. 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 13. A patient was dispensed more than 210 "days of supply" of all opioids combined in a 6-month period.
[243] See PATIENT_NOTE at index 933180.
[244] See PRESCRIBER_NOTE at index 933180.
[245] Expert Report of Craig McCann, January 24, 2024, Appendix 10I Prescriptions of Selected Prescribers – Publix, Bender, Jay.
[246] PUBLIX-MDLT8-00136193, PUBLIX-MDLT8-00138057, and PUBLIX-MDLT8-00138203
[247] See prescription at index 609187

P-01354_42

Confidential – Subject to Protective Order

through 9 and 13.[248] Of note, this prescription triggered red flag 6, which is the holy trinity flag. As discussed in my general report, the holy trinity is a combination of an opioid, benzodiazepine, and muscle relaxer. These drugs combined produce mimic the effects of heroin and intensify the risk of overdose and death, and there is no legitimate medical purpose for prescribing these medications together.[249] This sample prescription has multiple electronic notes associated with it, though many are not from the date of the sample prescription and as such are considered historical patient or prescriber notes. The patient note says, "GA REDACTED - DRIVER'S LICENSE NUMBER TOLD HER LAST TIME I WOULD FILL CONTROLLEDS - FIND ANOTHER PHARMACY."[250] The driver's license note was from 10/16/2017 and the "find another pharmacy" note was from 12/19/2016. The prescriber note says, "BG0313091 FAX FAX 404-523-8040 VOICE MAIL SAYS THEY ACCEPT ELECTRONIC COMMUNICATION, FAXES DONT SEEM TO GET ANY RESPONSE."[251] These notes are from 2007, 2009, 2010, and 2014. All of the prescriber notes appear to have been deleted in 2015, according to the electronic notes data provided by Publix, which is before the sample prescription from 2018. The RX note, which is from the date of the sample prescription, says "REDACTED - PATIENT NAME GA DL# REDACTED - DRIVER'S LICENSE." Also from the date of the sample prescription, the transaction note says, "Declined from Drug Utilization Review by P1150604<br>Edit Data Entry<br> NONFORMULARY;FOR DISCOUNT,USE AUTH320955 Profiled from Ready by RLMC81<br> PT DOES NOT WANT $$$$."[252] The sample prescription also has three hard copy prescriptions linked to it;[253] however, none of them contain handwritten notes.

The patient note in this case was particularly surprising because it was from 2016 and said that the pharmacist would no longer fill controls and that the patient had to find a new pharmacy; however, in 2018, the time of the sample prescription, Publix was still filling controlled substance prescriptions with significant red flags for this patient, which is yet another example of Publix pharmacies overlooking its own electronic notes and failing to document any resolution to documented concerns prior to filling additional opioid prescriptions. Upon further look, examining the sample patient's history, Publix patient 24424488 filled 210 prescriptions at Publix pharmacies in Cobb County. Of these, 111 were opioid prescriptions, 54 were benzodiazepines, and 45 were muscle relaxers. Of the 210 prescriptions, 164 of them triggered the holy trinity flag (red flag 6). That means that 78% of this patient's prescriptions were for the holy trinity. The bulk of these prescriptions were written by Patricia Glenn, who is an internal medicine specialist in Atlanta. Glenn was investigated by CVS in 2016 and 2017 for writing cocktail prescriptions,[254] and

---

[248] 5. Patient was dispensed an opioid, a benzodiazepine, and a muscle relaxer for overlapping days of supply. 6. Patient was dispensed an opioid, a benzodiazepine, and a muscle relaxer on the same day, and all the prescriptions were written by the same prescriber. 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 8. Patient was dispensed an opioid and a benzodiazepine on the same day, and both prescriptions were written by the same prescriber. 9. Patient was dispensed two short-acting (or immediate release) opioid drugs on the same day. 13. A patient was dispensed more than 210 "days of supply" of all opioids combined in a 6-month period.
[249] Carmen Catizone, General Expert Report, p. 32 (January 24, 2024).
[250] See PATIENT_NOTE at index 609187
[251] See PRESCRIBER_NOTE at index 609187
[252] See TRANSACTION_NOTE at index 609187
[253] PUBLIX-MDLT8-00136958, PUBLIX-MDLT8-00137339, PUBLIX-MDLT8-00137391
[254] CVS-MDLT3-000121335

P-01354_43

Confidential – Subject to Protective Order

Walmart blocked Glenn in August of 2018.[255] As stated earlier in my report, Publix did not have a prescriber monitoring system like other chain pharmacies and did not have the ability to identify, track, or notify their pharmacists about suspicious prescribing behavior.

The "find another pharmacy" note was written on 12/19/2016 when the patient was picking up a cocktail of prescriptions at Publix store 672 in Marietta, GA. Notably, on 12/19/2016, patient 24424488 filled four prescriptions all written by Glenn and filled at Publix store 672 in Marietta. They were for alprazolam (a benzodiazepine), carisoprodol (a muscle relaxer), oxycodone, and hydrocodone. After this date, the patient still had 57 opioid prescriptions along with a combination of cocktail drugs filled at CT8 Publix pharmacies. The prescriptions that were filled after 12/19/2016 were filled at Publix store 280 in Marietta, where the pharmacists evidently overlooked the note written by a pharmacist at store 672 or failed to document their resolution of the previously documented red flags.

Publix also filled prescriptions for notorious disciplined prescribers, which are represented in their sample as well. There are two oxycodone prescriptions in Publix's sample written by Larry Mabine.[256] One prescription was filled on 9/13/2010, had a daily MME of over 185, and triggered red flags 7 and 8.[257] The other was filled on 2/4/2015 and triggered red flag 7 and 13.[258] The prescription from 2010 has no electronic notes, and the prescription from 2015 only has a transaction note with various declination messages. There are hard copy prescriptions linked to both of the Mabine prescriptions, but they do not contain any handwritten notes.[259] As noted in the Kroger section, in June of 2020, Mabine voluntarily surrendered his medical license and was arrested on charges of trafficking fentanyl.[260] Upon his arrest, police officers found 16.2 grams of fentanyl, 10 vials of ketamine hydrochloride, two one-ounce containers of THC wax, and Oxycodone pills. Police also found a large amount of cash in small denominations.[261]

Publix's sample also has a hydrocodone prescription that was written by Yong Liu and filled on 6/21/2011.[262] This prescription triggered red flags 2, 5, 6, 7, and 8, which includes the holy trinity red flag.[263] This prescription contains multiple prescriber notes from 2007-2010, but none of these

---

[255] WMT_MDL_001302872

[256] See prescriptions at indices 417043 and 32585.

[257] 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 8. Patient was dispensed an opioid and a benzodiazepine on the same day, and both prescriptions were written by the same prescriber.

[258] 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 13. A patient was dispensed more than 210 "days of supply" of all opioids combined in a 6-month period.

[259] PUBLIX-MDLT8-00135731, PUBLIX-MDLT8-00138298, PUBLIX-MDLT8-00138354, PUBLIX-MDLT8-00136862, PUBLIX-MDLT8-00138728

[260] https://www.fox5atlanta.com/news/cobb-county-doctor-arrested-on-charges-of-trafficking-fentanyl; https://gcmb.mylicense.com/verification/, search for Larry Mabine.

[261] https://www.fox5atlanta.com/news/cobb-county-doctor-arrested-on-charges-of-trafficking-fentanyl

[262] See prescription at index 52043

[263] 2. An opioid was dispensed to a patient who traveled more than 25 miles to visit their prescriber. The distance here is calculated from the center of the patient's zip code to the center of prescriber's zip code. 5. Patient was dispensed an opioid, a benzodiazepine, and a muscle relaxer for overlapping days of supply. 6. Patient was dispensed an opioid, a benzodiazepine, and a muscle relaxer on the same day, and all the prescriptions were written by the same prescriber. 7. Patient was dispensed an opioid and a benzodiazepine within 30 days of one another. 8. Patient was dispensed an opioid and a benzodiazepine on the same day, and both prescriptions were written by the same prescriber.

P-01354_44

Confidential – Subject to Protective Order

notes are from 2011, which is the year the sample prescription was filled. The prescriber notes indicate that Publix pharmacists were aware of the board actions against Liu and that he could not write CII prescriptions for a period of time: "1ST PHONE # IS CELL ANSWERS ON PHONE???!!!; **Has board order against him on medical board website.; Cannot write for schedlue 2 drugs until further notice.;** Control rx must be in triplicate, numbers rx's blanks.... ANSWERS ON PHONE???!!!; **Has board order against him on medical board website.; Cannot write for schedlue 2 drugs until further notice.**; Control rx must be in triplicate, numbers rx's blanks....; **VERIFY ALL CONTROLS!!!!!!!!!! CANNOT PRESCRIBE C-II'S PER BOARD- ON PROBATION** 10-19-07 **DO NOT FILL RXS WRITER**!! HAS BOARD ORDER** SEE OTHER FILE COMMENTS MD CELL PHONE 678-714-6918 MD ONLY WRITES RXS!!!! **WATCH!!!** YONG'S MEDICAL CT CELL 678-458-0455 YOUNGS MED CTR YOUNG'S MEDICAL CENTER YOUNG'S MEDICAL CT."[264] These notes show that Publix pharmacists were aware of red flags related to this prescriber but continued to fill his prescriptions, even prescriptions that were for the holy trinity, without clearing the red flags. The sample prescription did not have any additional electronic notes, such as patient or counseling notes, and there were no electronic notes from the date the sample prescription, with clear red flags, was dispensed. The Liu sample prescription does contain hard copies; however, they do not have any handwritten notes that identify or resolve any of the numerous red flags.[265]

### Notes and Due Diligence Summary

Based on my review of the hard copy prescriptions and the electronic notes produced for those prescriptions in the sample set, I conclude that Kroger and Publix failed to identify, investigate, and document each red flag associated with the prescriptions in the sample. Additionally, and most significantly, Publix failed to document resolutions to red flags prior to filling prescriptions, even prescriptions where red flags and concerns were noted. When notes were located in the records, they too often provided only cursory comments about some action such as "checked PMP" or "called doctor."  The consistent failure of Defendants to adequately resolve and document the resolution of each red flag leads me to conclude that effective due diligence was not performed on the overwhelming number of prescriptions. As Publix itself said, "Document Document Document. If you don't document, then there is no proof the conversation, the consultation, or the clearing of red flags took place."[266]

### Summary

Based upon my years of experience, my review of DEA cases, documents produced in the litigation, deposition transcripts, the expert report of Craig McCann, Defendants' dispensing data, the sample of hard copy red flag prescriptions and associated electronic data fields produced by the Defendants, as well as, all of the other materials described in my reliance list, it is my opinion

---

[264] See PRESCRIBER_NOTE at index 52043
[265] PUBLIX-MDLT8-00135859, PUBLIX-MDLT8-00138952, PUBLIX-MDLT8-00138953, PUBLIX-MDLT8-00138954
[266] PUBLIX-MDLT8-00149649.

P-01354_45

Confidential – Subject to Protective Order

that the Defendant pharmacies in Cobb County dispensed hundreds of thousands of opioid prescriptions which contained red flags that were indicative of potential diversion; that the Defendants largely failed to identify the red flags presented with those prescriptions, investigate those red flags, and document the resolution of those red flags before dispensing the medications; and that this failure greatly increased the risk of diversion in Cobb County given the dangerous nature of these medications and the threat they pose to the community.

Defendants also failed to provide their pharmacists with the data and tools necessary to fulfill their corresponding responsibility duties, including but not limited to, providing their pharmacists with access to dispensing data as well as the analysis of that data as it relates to red flags of diversion. The failure to provide such data resulted in significant quantities of controlled substances, particularly opioids, being dispersed outside of the closed distribution and dispensing system.

In addition, Defendant pharmacies dispensed thousands of prescriptions for controlled substances for prescribers and patients that were engaged in diversion in Cobb County.  A number of prescribers whose opioid prescriptions were filled in Defendants' pharmacies in Cobb County had their licenses suspended or revoked as a result of their dispensing practices.  In some cases, patients of these prescribers and the Defendant pharmacies overdosed as a result of medications they were dispensed.  Thousands of prescriptions written by these prescribers and dispensed from Defendant pharmacies contained red flags.  Had the Defendants set up adequate systems and programs in place, these red flagged prescriptions would have been investigated and diversion could have been prevented.

 The Defendant pharmacies should have been analyzing their dispensing data to identify these prescribers of concern and provide information and warnings to its pharmacists in Cobb County. Unfortunately, Defendants corporate offices failed to appropriately investigate these prescribers. The failure to properly investigate these prescribers and their red flagged prescriptions and to dispense these medications into the community contributed to the opioid epidemic in Cobb County.

Instead of providing its pharmacists with the tools and information to exercise their corresponding responsibility, Defendants implemented and enforced employment evaluation policies and performance metrics that impeded their pharmacists' efforts to comply with laws and regulations and meet standards of care.  The Defendants' actions and failure to meet their corresponding responsibilities caused Defendants' pharmacies to fill prescriptions presenting significant red flags without evidence of resolving those red flags prior to dispensing and causing a failure to maintain effective controls to guard against diversion which resulted in significant public harm and injury.

Confidential – Subject to Protective Order

Respectfully submitted,

Carmen Catizone

Executed on January 24, 2024

P-01354_47