UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| This document relates to: | **Case No. 17-md-2804** |
| *City of Rochester v. Purdue Pharma L.P.*, No. 19-op-45853 (Track 12) | **Judge Dan Aaron Polster** |
| *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13) | |
| *City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14) | |
| *County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | |

### PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S APRIL 22, 2024 ORDER

This Court has infrequently used its authority under Rule 37 to issue discovery sanctions over the six plus years of MDL 2804. The intransigence of the PBMs warrants the issuance of sanctions.

The procedural history of this dispute is well known to the Court. The PEC served initial discovery to which the PBMs provided insufficient responses. The PEC extensively met and conferred with the PBMs regarding the deficiencies and raised them with the Special Master. When, after months of delay, the PBMs still failed to provide sufficient responses, the PEC sought the Court's intervention (Doc. 5383), asking that the PBMs be ordered to respond to a set of additional requests which narrowly targeted and prioritized issues raised by the initial requests. The Court ordered the PBM Defendants to either "agree to respond fully to Plaintiffs' additional

requests or explain why they should not be ordered to do so." Doc. 5387 at 2. The PBMs defiantly responded (Doc. 5397), which resulted in the Court finding that "***the PBM Defendants' responses must be treated as a failure to respond***"[1] and compelling the PBM defendants to "***fully respond to Plaintiffs' additional requests***" and to **"*roll out responses as soon as reasonably possible (that is, PBM Defendants should not wait until the deadline to begin producing responsive documents)*."** Doc. 5412 at 4-5. (emphasis added).

No responses were "roll[ed] out" in advance of the deadline.[2] Both PBMs stubbornly cite to the thousands of DR-22 documents produced, and then sometimes re-produced with an MDL bates stamp, as evidence of good faith. This argument was rejected by the Court (Doc. 5412) as wholly insufficient in terms of the scope, depth and width of necessary MDL discovery. Moreover, the PBMs' responses *again* "never state they have fully responded or attempted to fully respond to any of Plaintiffs' requests," and *again* consist of "non-substantive responses in which they [indicate they will] produce responsive documents at some point in the future." Doc 5412 at 2. The PBMs failed to "fully respond" to the Plaintiffs' requests and openly defied the Court's mandate.

**I.      PBMs' Noncompliance Meets the Legal Standard for Imposing Sanctions**

The PBMs' willful failures to comply with this Court's April 22, 2024 Order warrant sanctions. The Federal Rules of Civil Procedure set forth the discovery obligations of parties and their attorneys and authorize federal courts to impose sanctions on those who fail to meet these

---

[1] The Court noted that "it is long past the time within which the PBM Defendants should have begun rolling out meaningful productions responsive to Plaintiffs' MDL bellwether requests." (Doc #: 5412) (p. 3 of 5).

[2] Defendant Express Scripts served its response at 10:43 pm eastern on the last day of the impending deadline (attached as Exhibits 1 and 2). Defendant Optum served its response at 11:04 pm eastern on the last day of the impending deadline (attached as Exhibits 3 and 4). Defendants designate Exhibits 1, 3, 4, and 5 as confidential and are therefore not attached but transmitted to the Court via email.

2

obligations, including the failure to comply with a Court Order. *See* Rule 37(b). Rule 37(a)(4) provides that, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." "In Order to impose sanctions under Rule 37, there must be an order compelling discovery, a willful violation of that order, and prejudice to the other party."[3]

The sanctions requested by the PEC are appropriate because they "flow from and specifically relate to the discovery at issue."[4] The PBMs have been ordered to fully respond and willfully refuse. The prejudice created by PBMs' refusal to provide basic documents and information after five months is self-evident. These remedies are appropriate under the three-part test previously applied by this Court: (1) the Court issued an Order compelling discovery; (2) the PBMs willfully violated the Order; and (3) Plaintiffs have been prejudiced as a result.[5]

## II. PBMs' Global Failures to Comply with the April 22nd Order

The Court previously found it "especially noteworthy that the PBM Defendants never state they have fully responded or attempted to fully respond to any of Plaintiffs' requests." Doc 5412 at 2. Unfortunately, that has not changed.

---

[3] Special Master Cohen Order Granting Motions to Compel and For Sanctions Against Walmart, Doc. 3700 at 10-11 (April 19, 2021) (quoting *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999)); *see also Doe v. Lexington-Fayette Urban Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (including a fourth factor in cases where the sanction sought is dismissal); *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1343 (Fed. Cir. 2013) ("For less severe sanctions, however, including deeming certain facts established for purposes of the litigation, the Fifth Circuit applies a less-rigorous standard, requiring only that the sanction be '[j]ust and [f]air,' that it have a 'substantial relationship' to the facts sought to be established by the discovery, and that it meet Rule 37's goals of punishment and deterrence.") (citations om.)).

[4] *See* Doc. No. 1574 at 3-4 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)) (a "sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery")).

[5] Doc. 3700 at 10-11.

3

***Failure to Complete Searches and Productions***: Instead of producing the responsive documents or substantively responding to the interrogatories, the PBMs indicate that they have ***yet to search or are still in the process of searching*** for the responsive documents and information. Nearly all of ESI's response state ESI "***will*** produce" documents located "***after*** a reasonable search." *See* Exhs. 1 and 2. Similarly, the UHG/Optum Defendants (hereinafter "Optum") state in response to many of the requests that "investigations are ongoing," and that Optum is "in the process of collecting and reviewing" potentially responsive documents or has "not identified responsive documents through … investigations to date." *See* Exhs. 3 and 4.  Neither PBM certifies that any searches are complete. In response to the PEC's notification that it intended to move for sanctions, ESI's counsel sent an email stating that "[c]ertainly, the Court did not envision that every conceivable document responsive to the PEC's discovery requests would be produced by May 13." *See* Exh. 5, O. Viera 5/16/2024 email. As shown here, not only have PBMs failed to produce all responsive documents and information; they have not even tried.[6] As this Court's Order makes clear, the search for and disclosure of responsive documents should have been completed long ago.

***Specious Excuses Based on Ongoing Custodial Negotiations:*** Both PBMs cite ongoing custodian reviews in their responses, and in an email to the PEC and the Special Master on May 16th, just after receiving notice of the PEC's intent to file this Motion, ESI blamed its minimal responses and incomplete document production on recently completed search terms negotiations and ongoing custodian selection.[7] *See* Exh. 5, O. Viera 5/16/2024 Email. Such excuses ring hollow.

---

[6] PBMs do not indicate, and have not confirmed that they have, let alone will, search archived electronic or paper records or back-up tapes or servers.  Indeed, the PBMs have refused to provide any detail on the nature or extent of the efforts they have undertaken to identify and produce the information they claim still to be investigating.  It is long past time to either produce the documents or certify that they cannot be located after an appropriately diligent search.

[7]  The CMO does not require completion of individual custodial production until July 14, 2024. Doc. 5282 at 8.

4

Many of the requests seek noncustodial documents, such as contracts, reports, minutes, agendas, educational programs, marketing materials, studies, etc., and/or seek identification of basic information which is not dependent on individual custodial review. Further, search term negotiations and custodian selections are simply additional methods for the plaintiffs to be assured that the defendants' responses are complete.[8] These issues have been outstanding since service of the initial requests in December 2023. These defendants have had five months to produce complete and meaningful responses to the discovery propounded by the plaintiffs and have chosen not to do so.

*Failure to Specifically Respond*: With few exceptions, PBMs make no efforts to specifically respond to the requests. For example, Request 2 comprises a targeted list of separately enumerated requests regarding the PBMs' relationships with Purdue Pharma, many of which are interrogatories. In response, ESI largely lumps the items together, stating it has "already produced thousands of responsive documents" and pointing to a 14 page, three column table of Bates numbers without differentiation between items which on its face is temporally incomplete. *See* Exh 1, at 10 (citing documents from 2008-2019). Worse, throughout its responses, Optum cites to the Jefferson County litigation production, in its entirety, or generally to entire MDL production volumes. *See* Exh. 4. Review of the cited volumes reveals very few documents potentially

---

[8] A custodial search using search terms makes up only *one part* of the PBM Defendants' discovery/production obligations. *See Raine Grp. v. Reign Capital*, 2022 WL 538336, *1 (S.D.N.Y. Feb. 22, 2022) ("In sum, an ESI protocol and search terms work in tandem with the parties' obligations under the Federal Rules and do not replace a party's independent obligation to produce electronic (or paper) documents that are reasonably accessible, relevant, and responsive within the meaning of Rule 34."). Searches for documents outside of individual custodian documents (*i.e.* documents from shared drives/folders, archived media, storage sites, etc.) are **separate from and in addition to** any individual custodial searches. Further, the importance of noncustodial document production is magnified here due to the PBM Defendants' apparent inability to produce most documents (or identify individual custodians with documents) from the 1996-2005 time-period.

5

responsive to the requests.[9]  The PBMs' deficient responses stand in stark contrast to ESI's response to Request 1 in which ESI provides a descriptive and organized (though incomplete) list of documents which are specifically responsive to that request. The PBMs know how to clearly respond but have willfully refused to provide complete responses.

*Continued General Objections*: Despite being ordered to "fully respond" to Plaintiffs' requests, the PBMs continue to interpose objections. For example, ESI filters all of its responses through objections that the ordered discovery is "not proportional to the needs of the case," is "unduly burdensome," and that the requests do not "comply with FRCP 33 or FRCP 34" and are "vague and ambiguous." *See* Exh. 1 and 2.  Optum raises overruled objections as to temporal and geographic scope and has refused to produce contracts and agreements with Purdue outside of those specific to opioids and the specific drugs ordered to be produced in response to data requests. *See generally* Exh. 3 at pgs. 1-4, 11-12, and Exh. 4 pgs. 1-4, 7-27.  Such objections, which are wholly improper in the face of this Court's Order, indicate there are aspects of the ordered production and information the PBMs wrongly seek to withhold.

*Improper Privilege Objections*: Express Scripts objects to certain requests with a generalized privilege claim and affirmatively states it will not produce documents, while at the same time stating (without any apparent complete search) it "does not have materials responsive" to those requests. *See, e.g.*, Exh. 2 at pp. 5-6, 8. Optum's responses state that, with respect to its communications *with Purdue Pharma*, it will produce "non-privileged communications" if identified.  *See* Ex. 3 at p. 8.  It is unclear how the PBMs make privilege claims over documents

---

[9] For example, in response to discovery requests 2b and 2q, Optum cites to production volume OPTUMRX_MDL_021, but review of these documents reveals, at best, less than 5 documents potentially responsive to request 2b and fewer than 15 documents responsive to request 2q. *See* Exh. 4 at pgs. 9-10 and pg. 26.

6

which they have not seen and/or over communications with third parties. Moreover, neither of the PBMs have produced a privilege log for their MDL (non-DR-22) productions.

**II.      Specific Glaring Examples Illustrate the Bad Faith Nature of the PBMs' Responses**

The PBMs' responses are replete with examples of their noncompliance. The PEC offers the following nonexclusive examples for illustrative purposes.

      **A.      Examples of ESI's Noncompliance**

ESI's response to Request 1, which seeks identification of all contracts with Purdue Pharma, is its most fulsome response. However, it is still not only deficient in temporal scope (omitting known pre-1999 contracts), but also does not even attempt to identify contracts between Purdue Pharma and Defendant Medco (ESI's pre-merger predecessor), contracts with ESI subsidiaries (*e.g.*, Phoenix Marketing Group), and many other contracts the PEC knows exist (*e.g.* Reimbursement Agreements with Purdue Pharma).

In addition to omitting the Purdue Reimbursement Agreements from its Request 1 response, ESI also fails to produce the reports referenced in those contracts which the Court ordered be produced in response to Request 2(r). These reports, for which Purdue paid ESI, include numerous summary data reports, production of which might alleviate other discovery disputes related to data production pending before the Special Master.

Incredibly, ESI's response to requests 2(k) and 2(l) which seek identification of Purdue and ESI marketing and educational programs, ESI claims it is "currently unaware" of the existence of any such programs ***even though those programs (and Purdue documents regarding them) are specifically discussed in Plaintiffs' complaints***. *See e.g.* Rochester Complaint (Doc. 5296) at ¶¶ 332, 335- 337, 350.

7

Especially egregious are ESI's responses for four of the ESI defendant family entities,[10] including the entities responsible for helping Purdue ensure indigent patients received a steady supply of OxyContin. In these responses, ESI ***does not identify a single bates number or provide a single fact***. Rather, ESI largely dodges the requests, incorrectly claiming the majority only apply to other ESI entities or frequently stating (without affirmation of a search) it is "not aware" of having responsive documents from these entities. *See* Exh. 2.

Further, despite the known temporal and substantive limitations of the DR-22 productions and those productions' attendant failures to satisfy Plaintiffs' requests, ESI still relies almost entirely on DR-22 productions in its responses. ESI's few references to specific bates numbers in its responses are composed almost entirely of DR-22 productions, with ESI citing more than 2,000 Jefferson County documents in its responses but only 173 documents newly produced in the MDL. *See* Exh. 1. Such continued DR-22 reliance raises significant questions about what actions, if any, ESI has taken in the last five months to locate additional responsive documents.

### B. Examples of Optum's Noncompliance

Optum's response to Request 1 (identification of all contracts with Purdue Pharma) is similarly deficient. Responding on behalf of OptumRx, Optum only listed contracts previously produced in the *Jefferson County* litigation and only those from 2009 to 2013. The Optum Defendants also unilaterally limited their response to "in-scope drugs," despite the clear and unambiguous language of the request which seeks all contracts. *See* Exh.3 pgs. 4-6; Exh. 4 pgs 3-6.

---

[10] Express Scripts Pharmacy, Inc., ESI Mail Pharmacy Service, Inc., ESI Mail Order Processing, Inc., and Express Scripts Specialty Distribution Services, Inc.

Similarly, in response to requests 2(u) and 2(v), which seek documents related to specific studies performed on behalf of Purdue, including the Ingenix[11] authored "Chronic Pain" study proposing the now infamous concept of pseudoaddiction to Purdue, responding on behalf of OptumInsight, Inc. and Optum Life Sciences, Inc., Optum claims that it has not identified responsive documents in its search of **"*currently-loaded*"** sources.[12] *See* Exh. 4 pgs. 27-28. Despite being provided examples of responsive studies by the PEC in discovery hearings with the Special Master, Optum appears to have cabined its search for documents responsive to this targeted request to only a very narrow universe of potential sources.

Optum's response to request 2(q), which seeks "production of all documents related to the negotiation of rebates and/or administrative fees with Purdue Pharma," is a carbon copy of numerous other responses to the Plaintiffs' requests. Optum failed to provide any substantive information or specifically identify responsive documents. Instead, Optum directed the PEC to the Jefferson County litigation production, in its entirety, and a single volume of custodial production, even though responsive documents are more likely to be found in non-custodial files.  In fact, a search of the documents in the cited production volume reveals only eighteen documents with the words "Purdue" and "rebate" in them.[13]  It cannot be that a company receiving rebates from Purdue for decades as such a small universe of new documents to produce.  Further, in response to numerous requests, Optum declined to produce documents or information for specific entities

---

[11] Ingenix is the predecessor to OptumInsight, Inc.

[12] The PEC understands the "currently loaded" sources to be the very limited OptumInsight custodial documents of, at best, *three* custodians and *three* shared drives that Optum has loaded onto its discovery platform.

[13] In response to discovery request 2(b), which seeks production of "all communications with Purdue Pharma leading up to the initial placement of *Oxycontin* on [Optum's] national formulary," Optum again points to the Jefferson County production and the same singular volume of custodial documents, which upon review, reveal less than 5 documents responsive to Plaintiffs' request. *See* Exh. 4 pgs. 9-10.

based on a "business function" objection. There is no indication of whether counsel has actually searched to determine whether any responsive contracts exist or whether counsel made this assumption based on their understanding of the specific business function of the entity.

### III. Requested Relief

The PEC requests this Court sanction the PBMs for their flagrant failure to comply with this Court's April 22, 2024 Order, by further ordering as follows:

- PBMs must supplement their responses within 14 days. Such supplemental responses shall include, without limitation, the following:
  - A complete response to Request 1 which includes, in the same or similar format as the May 13, 2024 response from Express Scripts, all responsive contracts for all PBM defendant entities, subsidiaries, and predecessors in interest, and which encompasses the entire temporal scope as previously determined by the Court. Doc. 5408.
  - Complete responses to Requests 2, 3 and 4, which provide specific responses to each subpart, including in the same or similar format as described above (where applicable), and which encompass the entire temporal scope. Doc. 5408.
  - For each response provide: a) a specific statement that all documents within the possession, custody and/or control of the respective PBM have been produced to Plaintiffs, and identify those documents by Bates number or Bates range; and b) confirmation that the respective PBM does not have possession of and is not aware of the existence of any other responsive documents.
- PBMs must certify production is complete within 17 days.

- Within that period, each PBM must also set forth in a sworn statement from a corporate designee the scope of its search for responsive documents, with specificity, and produce a deponent for 30b6 examination. This statement shall include efforts made to identify custodial and non-custodial discovery material for each category of responsive documents, as well as to identify, restore, and search paper and electronic archives of materials. These depositions will not count against any 30b6 limits set out in the CMOs and must occur no later than June 7, 2024.
- PBM defendants shall provide the Special Master a weekly report, due by 8pm EST every Friday, which identifies: (a) the number of documents produced pursuant to DR-22 broken down by the year in which the document was created; and (b) the number of documents produced unique to the MDL (excluding re-productions of downgraded DR-22 documents and slip sheets) broken down by the year in which the document was created. This report is intended to illustrate the temporal scope of documents produced pursuant to DR-22 as compared to the documents produced unique to the MDL Repository.
- PBMs shall serve their respective privilege logs within fifteen (15) days of a production that substantially completes production for a particular custodian or non-custodial source.

These sanctions are supported by precedent. As noted above, sanctions under Rule 37 should "have a substantial relationship to the facts sought to be established by the discovery [such that they] meet Rule 37's goals of punishment and deterrence." *Alexsam,* 715 F.3d at 1343 (internal quotations omitted). Sanctions, like the ones requested in this motion, merely require defendant to take steps to assure the opposing parties and the Court that the offending party has or will comply with the Court's discovery orders. Under these circumstances, it is appropriate that the Defendants explain under oath their efforts:

> The court agrees that defendant's efforts to search for documents responsive to plaintiff's production requests are highly suspect. However, rather than conduct an independent inquiry, the court will authorize plaintiff to conduct a Rule 30(b)(6) deposition of [defendant] to develop facts and information concerning defendant's efforts to locate responsive documents. The cost of that deposition, including attorney fees, shall be assessed against defendant.[14]

Similarly, requiring defendants to confirm that they have fully complied with orders requiring production is an appropriate sanction. For example, one court in this circuit ordered relief similar to that requested in this motion:

> Defendants will supplement or amend their responses to specifically state that the only contract within Defendants' possession and control has been provided to Plaintiff and to identify that contract. Furthermore, Defendants will supplement or amend their responses to specifically state that Defendants are not aware of the existence of any other contracts and that Defendants do not have possession of any other contracts that may exist.[15]

Granting the requested sanctions will foster the resolution of these cases on the merits based on all the facts – not just the facts the Defendants choose to disclose. The extra effort required by these sanctions will also provide appropriate punishment for the Defendants' violations of this Court's orders and will (hopefully deter) future violations.

Dated: May 18, 2024

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
(212) 213-5949 (fax)
jconroy@simmonsfirm.com

---

[14] *Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 U.S. Dist. LEXIS 98174, at *5-7 (D. Kan. Oct. 31, 2006); *see also Ball v. Commuter R.R.,* 2024 U.S. Dist. LEXIS 47825, at *15 (S.D.N.Y. Mar. 13, 2024) (compelling defendant to "either provide a sworn statement from, or allow Plaintiff to depose, a witness with personal knowledge as to the efforts made to search for the tags and MNR's understanding as to why the tags are no longer available.").

[15] *Holman Auto. Grp. v. Cappo Mgmt. XVII*, No. 05-CV-72620-DT, 2006 U.S. Dist. LEXIS 15803, at *4 (E.D. Mich. Apr. 4, 2006).

12

        Joseph F. Rice
        MOTLEY RICE LLC
        28 Bridgeside Blvd.
        Mt. Pleasant, SC 29464
        (843) 216-9000
        (843) 216-9290 (fax)
        jrice@motleyrice.com

        Paul T. Farrell, Jr., Esq.
        FARRELL & FULLER LLC
        270 Munoz Rivera Avenue, Suite 201
        San Juan, PR  00918
        (304) 654-8281
        paul@farrellfuller.com

        *MDL Plaintiffs' Co-Lead Counsel*

        */s/ Peter H. Weinberger*
        Peter H. Weinberger (0022076)
        SPANGENBERG SHIBLEY & LIBER
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH 44114
        (216) 696-3232
        (216) 696-3924 (fax)
        pweinberger@spanglaw.com

        *MDL Plaintiffs' Liaison Counsel*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on May 18, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

        */s/Peter H. Weinberger*
        Peter H. Weinberger