**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 1:17-md-2804 |
| *Track 14: City of Independence v. Williams,  et al.*, Case No. 19-op-45371 | Judge Dan Aaron Polster |
| *Track 15: County of Webb v. Purdue Pharma L.P., et al.*, Case No. 18-op-45175 | |


**MEMORANDUM IN SUPPORT OF CERTAIN DEFENDANTS' MOTION TO DISMISS**
**<u>FOR LACK OF PERSONAL JURISDICTION</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD.......................................................................................................... 7

ARGUMENT ....................................................................................................................... 9

    I.    THE COURT LACKS GENERAL JURISDICTION OVER THE
MOVING DEFENDANTS.................................................................................... 9

    II.   THE COURT LACKS SPECIFIC JURISDICTION OVER THE
MOVING DEFENDANTS AS A MATTER OF FEDERAL DUE
PROCESS. ........................................................................................................... 11

    III.  PLAINTIFFS' RICO CLAIM DOES NOT CURE THE AMENDED
COMPLAINTS' JURISDICTIONAL DEFECTS................................................ 18

CONCLUSION................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
18 F.4th 783 (5th Cir. 2021) ...........................................................................................12

*Anthony v. Over*,
No. 3:22-cv-416, 2023 U.S. Dist. LEXIS 176603 (E.D. Tenn. Sep. 27, 2023).......................19

*Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*,
958 F.3d 26 (1st Cir. 2020)..............................................................................................19

*Bristol-Myers Squibb Co. v. Super. Ct.*,
582 U.S. 255 (2017).........................................................................................................8

*C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*,
No. 4:20-cv-01444-MTS, 2021 U.S. Dist. LEXIS 158736 (E.D. Mo. Aug. 23, 2021)... *passim*

*Canady v. Anthem Co.*,
9 F.4th 392 (6th Cir. 2021) ..............................................................................................19

*Daimler AG v. Bauman*,
571 U.S. 117 (2014).................................................................................................7, 9, 10

*Diagnostic Affiliates of Ne. Hou, LLC v. United Health Grp., Inc.*,
No. 2:21-CV-00131, 2022 U.S. Dist. LEXIS 14130 (S.D. Tex. Jan. 18, 2022).................2, 13

*Federated Mut. Ins. Co. v. FedNat Holding Co.*,
928 F.3d 718 (8th Cir. 2019) ......................................................................................11, 12

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
592 U.S. 351, 141 S. Ct. 1017 (2021)...................................................................................8

*Hardin v. United Airlines*,
No. H-20-3893, 2021 U.S. Dist. LEXIS 162520 (S.D. Tex. July 15, 2021) ............................8

*HHS Gov't Servs., LLC v. Acepex Mgmt. Corp.*,
No. 1:23-cv-00988-DAE, 2024 U.S. Dist. LEXIS 1095 (W.D. Tex. Jan. 2, 2024)..................7

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945).........................................................................................................11

*Johnson v. Freedman*,
No. SA-23-CV-00551, 2023 U.S. Dist. LEXIS 183822 (W.D. Tex. Oct. 11, 2023)....... *passim*

*Johnson v. Woodcock*,
444 F.3d 953 (8th Cir. 2006) ..............................................................................................8

*Leonard v. USA Petroleum Corp.*,
   829 F. Supp. 882 (S.D. Tex. 1993) ...............................................................................10, 14

*McGinnis v. Nationwide Life & Annuity Ins. Co.*,
   No. 3:21-CV-1988-E, 2023 U.S. Dist. LEXIS 112160 (N.D. Tex. June 29, 2023) .................5

*Metro Cas. Ins. Co. v. Combs*,
   No. 4:13-CV-1813 CAS, 2014 U.S. Dist. LEXIS 32594 (E.D. Mo. Mar. 13, 2014) .............15

*Miller v. Nippon Carbon Co.*,
   528 F.3d 1087 (8th Cir. 2008) ............................................................................................5

*Miss. ex rel. Fitch, Att'y Gen. v. Eli Lilly & Co.*,
   No. 21-CV-674-KHJ-MTP (S.D. Miss. Aug. 15, 2022)........................................................5

*MJ Connections, Inc. v. Pincus Law Grp., PLLC*,
   No. 3:23-CV-1616-D, 2023 U.S. Dist. LEXIS 188815 (N.D. Tex. Oct. 20, 2023)...................3

*Monkton Ins. Servs. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ..............................................................................................8

*Morningside Church, Inc. v. Rutledge*,
   9 F.4th 615 (8th Cir. 2021) .................................................................................................8

*Niemann v. Carlsen*,
   No. 4:22-cv-01110-AGF, 2023 U.S. Dist. LEXIS 110089 (E.D. Mo. June 27, 2023).............8

*Sahm v. Avco Corp.*,
   No. 4:23-cv-00200-AGF, 2023 U.S. Dist. LEXIS 114897 (E.D. Mo. July 5, 2023) ...... *passim*

*State ex rel. Cedar Crest Apts., LLC v. Grate*,
   577 S.W.3d 490 (Mo. 2019) ..........................................................................................2, 13

*State ex rel. Norfolk S. Ry. Co. v. Dolan*,
   512 S.W.3d 41 (Mo. 2017) ........................................................................................3, 10, 14

*United States v. Bestfoods*,
   524 U.S. 51 (1998)............................................................................................................13

*United States v. Botefuhr*,
   309 F.3d 1263 (10th Cir. 2002) .........................................................................................20

*USIO, Inc. v. Kauder*,
   No. SA-23-CV-00840-XR, 2023 U.S. Dist. LEXIS 219728 (W.D. Tex. Dec. 8, 2023) ...........8

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) ..........................................................................................1, 13

*Walden v. Fiore*,
    571 U.S. 277 (2014) .............................................................................................. *passim*

*Wenche Siemer v. Learjet Acquisition Corp.*,
    966 F.2d 179 (5th Cir. 1992) ..................................................................................3

*World Depot Corp. v. Onofri*,
    No. 16-12439, 2017 U.S. Dist. LEXIS 198814 (D. Mass. Dec. 4, 2017) .............................18

*Zoch v. Magna Seating (Germany) GmbH*,
    810 F. App'x 285 (5th Cir. 2020) ..........................................................................11

## RULES

Federal Rule of Civil Procedure 12(b)(2) ....................................................................1

## STATUTES

18 U.S.C. § 1965(b) ...............................................................................................18

## INTRODUCTION

Defendants UnitedHealth Group Incorporated (**UHG**), Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. (together, the **Moving Defendants**) move to dismiss Plaintiff the City of Independence's (**Independence**) and Plaintiff Webb County's (**Webb**) (together, **Plaintiffs**) amended complaints (Dkts. 5296-4 and 5296-5) under Federal Rule of Civil procedure 12(b)(2) for lack of personal jurisdiction.

As explained in the PBM Defendants' forthcoming brief supporting their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), many of Plaintiffs' claims against all defendants fail because there are no plausible factual allegations supporting them. But the Court doesn't even need to reach those arguments for nine of those entities—UHG, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.—because Plaintiffs' allegations fail to establish that the Court has personal jurisdiction over them.

**UHG and Optum, Inc.**[1] Plaintiffs sued UHG and Optum, Inc. in their capacities as OptumRx's parent companies. But allegations of a parent-subsidiary relationship do not establish jurisdiction over the parent. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) ("[P]ersonal jurisdiction can be based on the activities of a nonresident corporation's in-state subsidiary. . . only if the parent so controlled and dominated the

---

[1] UHG and Optum, Inc. are both incorporated in Delaware and have their principal places of business in Minnesota.

1

affairs of the subsidiary that the latter's corporate existence was disregarded so as to cause the residential corporation to act as the nonresidential corporate defendant's alter ego."); *State ex rel. Cedar Crest Apts., LLC v. Grate*, 577 S.W.3d 490, 495 (Mo. 2019) (rejecting personal jurisdiction over subsidiary companies because plaintiff failed to plead facts demonstrating parent companies were agents of subsidiary defendant); *Diagnostic Affiliates of Ne. Hou, LLC v. United Health Grp., Inc.*, No. 2:21-CV-00131, 2022 U.S. Dist. LEXIS 14130, at *9 (S.D. Tex. Jan. 18, 2022) (dismissing UHG for lack of personal jurisdiction: "Generally, a subsidiary's contacts with a forum cannot serve as the basis for holding a parent corporation amenable to personal jurisdiction in that forum."); *id.* at *10 (plaintiff must establish that "parent corporation is merely the alter ego of its subsidiary" before a court can "impute to the parent its subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction"). The few allegations about UHG's and Optum, Inc.'s own supposed conduct do not establish that either engaged in suit-related conduct creating a "substantial connection" with either State. *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

**OptumRx Discount Card Services, LLC and Optum Perks, LLC.**[2] Plaintiffs mention those two entities just a handful of times in the 280-plus-page amended complaints. *E.g.*, Independence Am. Compl. ¶¶ 157–66, 175, 487, and 490; Webb Am. Compl. ¶¶ 157–62, 163, 174, 486, and 489. Most of those allegations concern the entities' principal places of business, states if incorporation, registration to business and agents for service of process. Otherwise, Plaintiffs allege only that "Optum's" (undifferentiated) "cash card service" is "governed by *either* Optum Perks, LLC *or* Optum Discount Card Services, LLC." Independence Am. Compl. ¶ 487; Webb Am. Compl. ¶ 486 (emphasis added). The only jurisdiction-specific allegation about either entity

---

[2] OptumRx Discount Card Services, LLC and Optum Perks, LLC are incorporated in Delaware. OptumRx Discount Card Services, LLC's principal place of business is in South Carolina. Optum Perks, LLC's principal place of business is in Illinois.

is that they are "registered to do business" in Missouri and Texas and "may be served through [a] registered agent" in those states. Independence Am. Compl. ¶¶ 158, 160; Webb Am. Compl. ¶¶ 158, 161. But it is well settled that registration to do business in a state is not enough to establish personal jurisdiction over the defendant in that State. *State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 52 (Mo. 2017) ("[T]he registration statute does not provide an independent basis for broadening Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present."); *MJ Connections, Inc. v. Pincus Law Grp., PLLC*, Civil Action No. 3:23-CV-1616-D, 2023 U.S. Dist. LEXIS 188815, at *9 (N.D. Tex. Oct. 20, 2023) ("Further, registering a business carries 'no special weight,' and having a 'registered agent . . . hardly amounts to the general business presence' needed to sustain a finding of general jurisdiction.") (citing *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181–83 (5th Cir. 1992)).

**OptumInsight, Inc. and OptumInsight Life Sciences, Inc.**[3] Plaintiffs refer to the two entities together as "OptumInsight" (*e.g.*, Independence Am. Compl. ¶ 145; Webb Am. Compl. ¶ 145) without pleading which entity allegedly did what. That kind of group pleading isn't enough; Plaintiffs must allege facts showing that *each* defendant has the required suit-related contacts with the forum. *C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, No. 4:20-cv-01444-MTS, 2021 U.S. Dist. LEXIS 158736, at *10 (E.D. Mo. Aug. 23, 2021) (dismissing a defendant for lack of personal jurisdiction because "the bulk of Plaintiffs' allegations involving him are vague and conclusory allegations in which he is simply lumped in with the other defendants"); *Sahm v. Avco Corp.*, No. 4:23-cv-00200-AGF, 2023 U.S. Dist. LEXIS 114897, at *12 (E.D. Mo. July 5, 2023)

---

[3] OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are both incorporated in Delaware. OptumInsight, Inc. has its principal place of business in Minnesota. OptumInsight Life Sciences, Inc. has its principal place of business in Massachusetts.

("Without individualized allegations showing that Plaintiffs' claims against each Defendant arose from its contacts with Missouri, the Court cannot find personal jurisdiction over them."); *Johnson v. Freedman*, No. SA-23-CV-00551-XR, 2023 U.S. Dist. LEXIS 183822, at *8 (W.D. Tex. Oct. 11, 2023) (the Court has a "constitutional obligation to analyze its personal jurisdiction over each defendant . . . individually"). Plaintiffs don't even try to meet that standard.

Plaintiffs mention OptumInsight, Inc. only a few times in the 280-plus-page amended complaints and then only to allege facts about its citizenship and certain business registrations and licenses. Independence Am. Compl. at p. 1, ¶¶ 142–43, 145; Webb Am. Compl. at p. 1, ¶¶ 141–43, 145. Plaintiffs also mention OptumInsight Life Sciences, Inc. only a few times, alleging facts only about its corporate citizenship. Independence Am. Compl. at p. 1, ¶¶ 144–45, 406; Webb Am. Compl. at p. 1, ¶¶ 144–45, 405. And while Plaintiffs press *one* substantive allegation about OptumInsight Life Sciences, Inc., it has nothing to do with Missouri or Texas. Independence Am. Compl. ¶ 406 ("In a 2013 email, an OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers. . . ."); Webb Am. Compl. ¶ 405 (same).

Even if the Court credited Plaintiffs' group allegations about "OptumInsight" (and it should not), Plaintiffs do not allege that "OptumInsight" had *any* suit-related contacts with Missouri or Texas. They allege that "OptumInsight" (undifferentiated) worked with opioid manufacturers to market their opioids and promote the use of opioids to treat pain. *See, e.g.*, Independence Am. Compl. ¶ 188; Webb Am. Compl. ¶ 187. But none of those allegations mentions Missouri or Texas, or otherwise suggests that "OptumInsight" had *any* connection with those States, let alone suit-related contacts creating a substantial connection with them. *Walden*, 571 U.S. at 284. Plaintiffs press one conclusory allegation that "OptumInsight's" (undifferentiated) alleged conduct

"expand[ed] [opioids'] use and availability throughout the country, including" in Missouri (Indepedence Am. Compl. ¶ 147) and Texas (Webb Am. Compl. ¶ 147). But conclusory allegations do not count in the jurisdictional calculus. *See Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1092 (8th Cir. 2008) (holding a "conclusory allegation is not enough to establish personal jurisdiction" and that the plaintiff had "the burden of proving facts supporting personal jurisdiction, not by the pleadings alone, but by the affidavits and exhibits") (internal quotation marks and citation omitted); *McGinnis v. Nationwide Life & Annuity Ins. Co.*, No. 3:21-CV-1988-E, 2023 U.S. Dist. LEXIS 112160, at *7 (N.D. Tex. June 29, 2023) ("However, courts need not credit conclusory allegations, even if uncontroverted, in ruling on a motion to dismiss for lack of personal jurisdiction."); Order granting Mot. to Dismiss, *Miss. ex rel. Fitch, Att'y Gen. v. Eli Lilly & Co.*, No. 21-CV-674-KHJ-MTP (S.D. Miss. Aug. 15, 2022), Dkt. 112 at *8–9 ("The State fails to provide facts that any of the alleged 'coordination' or 'advising' took place in Mississippi, that OptumInsight conducted business in Mississippi that was '"continuing and substantial,' or that it tried to 'realize a pecuniary benefit' or 'otherwise accomplish an object' in Mississippi."). It certainly does not qualify as an allegation establishing suit-related conduct creating a substantial connection with either State.

**OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.**[4] Plaintiffs lump those three entities together as "OptumHealth" without pleading which entity allegedly did what. That sort of group pleading is improper. *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12; *Freedman*, 2023 U.S. Dist. LEXIS 183822, at *8. Again, Plaintiffs do not even try to allege

---

[4] OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. are incorporated in Delaware, and their principal place of business is in Minnesota.

facts showing that *each* of those Defendants has suit-related contacts with the fora, let alone suit-related contacts creating a substantial connection with the fora. *See Walden*, 571 U.S. at 284. Plaintiffs mention OptumHealth Care Solutions, LLC only a handful of times in the 280-plus-page amended complaints and then only to allege facts about its citizenship and its registration to do business in and holding a license in the States. *E.g.*, Independence Am. Compl. at p. 1, ¶¶ 163–66, 172, 175; Webb Am. Compl. at p. 1, ¶¶ 164–66, 171, 174. Plaintiffs mention Optum Health Networks, Inc. only to allege facts about its citizenship, that it is registered to do business in Missouri (Webb is silent about registration), and that it provides certain "care services." Independence Am. Compl. at p. 1, ¶¶ 168–71, 175; Webb Am. Compl. at p. 1, ¶¶ 169–70, 174. Plaintiffs mention OptumHealth Holdings, LLC only to allege facts about its citizenship. Independence Am. Compl. at p. 1, ¶¶ 167, 175; Webb Am. Compl. at p. 1, ¶¶ 168, 174. Those allegations could never subject these companies to personal jurisdiction in Missouri and Texas.

Even if the Court credits Plaintiffs' group allegations about "OptumHealth" (and it should not), Plaintiffs do not allege that "OptumHealth" had *any* contacts with Missouri or Texas—never mind suit-related contacts. They allege that "OptumHealth" (undifferentiated) had a supposed partnership with Purdue to educate the medical community about the "undertreatment" of pain and expanding the use of opioids. Independence Am. Compl. ¶¶ 30, 173–74, 358–59; Webb Am. Compl. at p. 1, ¶¶ 30, 173, 357–58. But none of those allegations mentions Missouri or Texas, or otherwise suggests that "OptumHealth" had any connection with those States, let alone suit-related contacts creating a substantial connection with the States. *See Walden*, 571 U.S. at 284.

Plaintiffs' improper group pleading does not end with "OptumInsight" and "OptumHealth." Plaintiffs also try to mask the absence of specific allegations about the moving entities by shoehorning them (among other defendants) into labels like "Optum," "Defendants,"

"the Optum Defendants," and "the PBM Defendants." *E.g.*, Independence Am. Compl. at p. 1; Webb Am. Compl. at p. 1. But again, Plaintiffs must allege specific *facts* showing that *each* defendant has the required suit-related contacts creating a substantial connection with the forum (*Walden*, 571 U.S. at 284); they cannot just lump them all together. Plaintiffs sue "Optum"—which by their definition includes OptumRx, Optum, Inc., Optum Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Services, LLC, OptumHealth Holdings, LLC, Optum Health Networks, Inc., and "OptumInsight" (itself a victim of group pleading)—"in its capacities as a: (1) PBM; (2) data, analytics, consulting, and research provider; and (3) mail-order pharmacy." Independence Am. Compl. ¶ 176; Webb Am. Compl. ¶ 175. But OptumRx, Inc. is the *only* entity that is a "PBM" and "mail-order pharmacy." Optum, Inc., Optum Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Services, LLC, OptumHealth Holdings, LLC, Optum Health Networks, Inc., provide *none* of those services (in Missouri, Texas, or anywhere else), and Plaintiffs do not allege otherwise. OptumInsight, Inc. and OptumInsight Life Sciences, Inc., are not PBMs or mail-order pharmacies, and Plaintiffs do not allege otherwise. Plaintiffs' one-for-all allegations do not support jurisdiction over the Moving Defendants.

## LEGAL STANDARD

This Court may not exercise personal jurisdiction over a defendant unless doing so complies with the States' long-arm statutes and federal due process under the Fourteenth Amendment to the U.S. Constitution.

Missouri and Texas law, and the Due Process clause, recognize two types of personal jurisdiction: general and specific. General jurisdiction exists only if a business's contacts are so pervasive that it can be "fairly regarded as at home" in the State. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *7; *HHS Gov't Servs., LLC v. Acepex*

*Mgmt. Corp.*, No. 1:23-cv-00988-DAE, 2024 U.S. Dist. LEXIS 1095, at *5 (W.D. Tex. Jan. 2, 2024). Specific jurisdiction exists only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284; *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 141 S. Ct. 1017, 1024–25 (2021); *see also Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (Missouri's long arm-statute reaches the constitutional limit, so courts "turn immediately to the question whether the assertion of personal jurisdiction would violate the due process clause."); *Hardin v. United Airlines*, Civil Action No. H-20-3893, 2021 U.S. Dist. LEXIS 162520, at *3 (S.D. Tex. July 15, 2021) ("The Texas long-arm statute has been interpreted as extending to the limits of due process.")

The alleged contacts with the forum State must have been the defendant's own choice and not "random, fortuitous, or attenuated." *Walden*, 571 U.S. at 286. The factual allegations must establish that the defendant purposefully "reached out beyond" their home State and into another forum (*id.* at 285) and that the plaintiff's claims "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017). Plaintiffs bear the burden of establishing that the Court has personal jurisdiction over each defendant. *See Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) ("The party asserting personal jurisdiction has the burden of establishing a prima facie case."); *Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (similar). Accordingly, *each* defendant's contacts with the forum must be assessed individually. *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12; *Freedman,* 2023 U.S. Dist. LEXIS 183822, at *8. And specific personal jurisdiction must be established for each claim separately. *See Niemann v. Carlsen*, No. 4:22-cv-01110-AGF, 2023 U.S. Dist. LEXIS 110089, at *25 (E.D. Mo. June 27, 2023) ("Because analysis of personal jurisdiction 'depends on the relationship between the claims

and contacts, [courts] generally evaluate specific jurisdiction on a claim-by-claim basis.'") (citation omitted); *USIO, Inc. v. Kauder,* No. SA-23-CV-00840-XR, 2023 U.S. Dist. LEXIS 219728, at *8 (W.D. Tex. Dec. 8, 2023),

## ARGUMENT

Plaintiffs do not allege that any of the Moving Defendants is at home in Missouri or Texas or otherwise subject to general jurisdiction in either State. And Plaintiffs have not alleged facts establishing that this Court has specific jurisdiction over each of the Moving Defendants under the Due Process Clause. Finally, the Court lacks RICO jurisdiction over Moving Defendants and, therefore, pendent jurisdiction over the City's state-law claim because there are no factual allegations tying Moving Defendants to the alleged RICO enterprise. Because there are no allegations establishing that any of the Moving Defendants has suit-related contacts creating a substantial connection with Missouri or Texas or is subject to RICO jurisdiction, this Court should dismiss the claims against them for lack of personal jurisdiction.

## I.     THE COURT LACKS GENERAL JURISDICTION OVER THE MOVING DEFENDANTS.

General jurisdiction attaches only if a business "is fairly regarded as at home" in a state. *Daimler*, 571 U.S. at 137. In most cases, a company's "place of incorporation and principal place of business" are the only things that satisfy that requirement. *Id*.

By Plaintiffs' own allegations, the Moving Defendants are not at home in Missouri or Texas. Plaintiffs allege that UHG, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences,[5] OptumHealth Care Solutions, Inc., OptumHealth Holdings, LLC, and Optum Health Networks, LLC are organized under Delaware law with their principal places of business in Minnesota.

---

[5] Although not relevant to this motion, OptumInsight Life Sciences Inc.'s principal place of business is in Massachusetts, not Minnesota.

Independence Am. Compl. ¶¶ 132, 138, 142, 144, 163, 167–68; Webb Am. Compl. ¶¶ 130, 137, 141, 144, 164, 168–69. And Plaintiffs allege that OptumRx Discount Card Services, LLC, is organized under Delaware law with its principal place of business in South Carolina (Independence Am. Compl. ¶ 157; Webb Am. Compl. ¶ 157) and that Optum Perks, LLC is organized under Delaware law with its principal place of business in Michigan (Independence Am. Compl. ¶ 160; Webb Am. Compl. ¶ 160).

Further, the Amended Complaints contain no factual allegations that would render this the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business [are] so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. There are no factual allegations showing that any entity has "affiliations with [Missouri or Texas that] are so 'continuous and systematic' as to render them essentially at home" in either State. *Id.* at 127 (internal quotation marks omitted). Plaintiffs do not allege that any Moving Defendant's activities constitute substantial or continuous and systematic contacts that approximate a physical presence in Missouri or Texas.

Finally, inasmuch as Plaintiffs suggest that any of these entities consented to general jurisdiction in either State by registering to do business there (Independence Am. Compl. ¶¶ 143, 158, 160, 164, 169; Webb Am. Compl. ¶¶ 142, 158, 161, 165), the argument is meritless. *See Norfolk S. Ry.*, 512 S.W.3d at 52 ("[T]he registration statute does not provide an independent basis for broadening Missouri's personal jurisdiction to include suits unrelated to the corporation's forum activities when the usual bases for general jurisdiction are not present."); *Leonard v. USA Petroleum Corp.*, 829 F. Supp. 882, 889 (S.D. Tex. 1993) ("[R]egistration to do business and appointment of an agent for service of process, especially when done to fulfill state law

requirements . . . do not constitute a general business presence or consent to suit in Texas courts on every matter . . . . Mere registration to do business or appointment of an agent for service of process is not availment . . . .").

## II. THE COURT LACKS SPECIFIC JURISDICTION OVER THE MOVING DEFENDANTS AS A MATTER OF FEDERAL DUE PROCESS.

The Court also lacks specific personal jurisdiction over the Moving Defendants under the Fourteenth Amendment to the U.S. Constitution. Specific jurisdiction exists under the Due Process clause only when "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 571 U.S. at 284. The U.S. Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 290; *see also Federated Mut. Ins. Co. v. FedNat Holding Co.*, 928 F.3d 718, 720 (8th Cir. 2019) ("Under our five-factor test for assessing the sufficiency of a defendant's contacts, we consider (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.") (citations omitted); *Zoch v. Magna Seating (Germany) GmbH*, 810 F. App'x 285, 289 (5th Cir. 2020) ("[T]his Court applies the following three-factor test: '(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'"). Exercising

jurisdiction over the non-resident defendant must comport with "fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Plaintiffs have not alleged facts showing that the Moving Defendants engaged in "suit-related conduct . . . creat[ing] a substantial connection with" Missouri or Texas. *Walden*, 571 U.S. at 284. Indeed, other than allegations that certain entities registered to do business or have licenses in Missouri and Texas—which, as explained above, is insufficient—not a single allegation about the Moving Defendants even mentions those States. There are no factual allegations establishing that that the Moving Defendants "purposefully avail[ed] [them]sel[ves] of the privilege of conducting activities within" either State. *Federated Mut. Ins. Co.*, 928 F.3d at 720; *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021).

**The opening paragraph and Independence Amended Complaint paragraphs 145, 172, and 175.**[6] Here, Plaintiffs merely list the Defendants and then improperly group them together. For example, the opening paragraph defines "Optum" to include *ten* different entities and "Defendants" or "the PBM Defendants" to include *eighteen* different entities. Paragraph 145 lumps two entities together as "OptumInsight," and paragraph 172 lumps three entities together as "OptumHealth." Finally, paragraph 175 lumps nine entities together as "Optum"—an especially confusing group allegation given that the opening paragraph defines "Optum" to include ten entities. That mismatch demonstrates that even Plaintiffs cannot track which entities they claim did what.

Group pleading defines both Amended Complaints. Plaintiffs' one-for-all allegations only

---

[6] Identical allegations appear in the Webb County Amended Complaint. *See, e.g.*, Webb Am. Compl. at p. 1, ¶¶ 145, 171, 174. For clarity and brevity, we reference only the Independence Amended Complaint above the line.

muddy the waters and demonstrate that they cannot establish jurisdiction over each defendant individually—as they are required to do. *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12; *Freedman*, 2023 U.S. Dist. LEXIS 183822, at *8.

**Independence Amended Complaint paragraphs 13, 135–37, 177, 298, 345–46, and 386.**[7] In those paragraphs, Plaintiffs try to rope UHG and Optum, Inc. into the litigation based on their status as corporate parents. At paragraphs 13 and 298, for example, Plaintiffs allege that UHG is OptumRx's parent. At paragraph 177, Plaintiffs allege that Optum, Inc. is the parent of three "sectors"—OptumRx, "OptumHealth," (undifferentiated) and "OptumInsight" (undifferentiated). Perhaps recognizing that allegations of a parent-subsidiary relationship are insufficient to establish jurisdiction over the parent (*Viasystems, Inc.*, 646 F.3d at 596; *Grate*, 577 S.W.3d at 495 *Diagnostic Affiliates of Ne. Hou, LLC*, 2022 U.S. Dist. LEXIS 14130, at *9–10), Plaintiffs also allege that UHG, "through its executives and employees, control the enterprise-wide policies that inform both UHC and Optum's lines of business in order to maximize profits across the corporate family," and that the conduct "had a direct effect in Missouri." Independence Am. Compl. ¶¶ 135–37.

Inasmuch as those conclusory allegations are intended to pierce the corporate distinction among the "Optum" entities, they fall well short of what Plaintiffs must allege to assert an alter-ego or other veil-piercing theory. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (internal quotation marks omitted). Plaintiffs have not

---

[7] Webb Am. Compl. ¶¶ 13, 134–36, 176, 297, 344–45, and 385.

alleged facts coming close to suggesting that the "Optum" entities are alter egos or should be treated as one corporate entity.

Finally, Plaintiffs' attempts to establish jurisdiction over UHG based on its own alleged conduct fail. Plaintiffs allege, for example, that UHG once requested $200,000 from Purdue for a clinical initiative (Independence Am. Compl. ¶ 346; Webb Am. Compl. ¶ 345) and that, on another occasion twenty-three years ago, a UHG executive told Purdue that Purdue was acting irresponsibly. Independence Am. Compl. ¶ 386; Webb Am. Compl. ¶ 385. Those allegations do not mention Missouri or Texas, so they don't establish that UHG purposefully availed itself of the privilege of conducting business in either State, never mind that UHG's (unpleaded) suit-related conduct creates a substantial connection with those States. *Walden*, 571 U.S. at 284.

**Independence Amended Complaint paragraphs 132–35, 138–46, 157–65, 167–71, 173, and 296.**[8] In those paragraphs, Plaintiffs provide general background about certain entities, including their citizenship and licenses or registrations they hold. Most of these allegations have nothing to do with Missouri or Texas. And those that do still fail to establish any suit-related contacts between the Moving Defendants and the fora. For example, Plaintiffs allege merely that OptumInsight, Inc., Optum Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, and Optum Health Networks, Inc. are registered to do business in Missouri. Independence Am. Compl. ¶¶ 143, 158, 160, 164, 169. As explained above, however, allegations about where a company is registered to do business are not enough for general jurisdiction. *See Norfolk S. Ry.*, 512 S.W.3d at 52; *Leonard*, 829 F. Supp. at 889. Nor do those allegations establish specific jurisdiction: Plaintiffs offer no factual allegations showing that an alleged Missouri or Texas registration has anything to do with this case, never mind that it constitutes suit-

---

[8] Webb Am. Compl. ¶¶ 130–34, 137–45, 157–66, 168–70, 172, and 295.

related conduct creating a substantial connection with either State. *See Walden*, 571 U.S. at 284.

Plaintiffs similarly allege that OptumInsight, Inc. and OptumHealth Care Solutions, LLC hold certain licenses with the Missouri Department of Insurance without even trying to tie those licenses to the case. Independence Am. Compl. ¶¶ 143 and 165. Holding an in-state license—especially when the license has nothing to do with the case—is not enough to confer jurisdiction over a company. *See Walden*, 571 U.S. at 284; *see also Metro Cas. Ins. Co. v. Combs*, No. 4:13-CV-1813 CAS, 2014 U.S. Dist. LEXIS 32594, at *11–12 (E.D. Mo. Mar. 13, 2014) (concluding that plaintiff failed to make a prima facie showing of personal jurisdiction over defendants despite the allegation that "Metropolitan . . . is licensed to do business and is authorized to execute and deliver insurance policies in the State[] of Missouri"); .

**Independence Amended Complaint paragraphs 30, 147, 166, 174, 185–188, 328–30, 342–50, 352–63, and 406**.[9] In those paragraphs, Plaintiffs allege that "OptumInsight" and "OptumHealth" worked with certain opioid manufacturers to reshape the pain treatment market, including by supposedly providing research, data, consulting, and marketing services to the manufacturers. None of the paragraphs contain factual allegations describing suit-related conduct that could create a substantial connection between the Moving Defendants and either State. *See Walden*, 571 U.S. at 284

**"OptumHealth."** In the Independence Amended Complaint, paragraphs 30, 166, 174, 358–63,[10] Plaintiffs make vague references to an alleged "OptumHealth" (undifferentiated) partnership with Purdue—which allegedly started with a family connection between a Purdue

---

[9] Webb Am. Compl. ¶¶ 30, 147, 167, 173, 184–187, 327–29, 341–49, 351–62, and 405.
[10] Webb Am. Compl. ¶¶ 30, 167, 173, 357–62.

employee and an "OptumHealth" (undifferentiated) director—to educate the medical community about the "undertreatment" of pain and expanding the use of opioids.

**"OptumInsight."** In the Independence Amended Complaint, paragraphs 30, 147, 185–188, 328–30, 342–46, 347–50, 352–57, and 406,[11] Plaintiffs allege that "OptumInsight" (undifferentiated) worked with opioid manufacturers to "convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive." Independence Am. Compl. ¶ 186. "OptumInsight" (undifferentiated) allegedly met with manufacturers like Purdue and created programs to "re-educate" physicians on using opioids to treat certain types of pain, which allegedly yielded "teleconferences, newsletters, faxes, live meetings, case study monographs, letters, and website and web-based programming directly to physicians." *Id.* ¶¶ 328–30. "OptumInsight" (undifferentiated) also allegedly "helped Purdue generate clinical studies, educational materials, and marketing programs to downplay the addictive properties of OxyContin." *Id.* ¶ 342. Plaintiffs further claim that an "OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers and that OptumInsight could do the same." *Id.* ¶ 406.

As a threshold matter, only one of those allegations even mentions Missouri and Texas, and then only to say that "OptumInsight's" (undifferentiated) alleged conduct "expanded [opioids'] use and availability throughout the country, including" in Missouri (Independence Am. Compl. ¶ 147) and Missouri (Webb Am. Compl. ¶ 147). Conclusory allegations like those do not establish that "OptumInsight" (undifferentiated) "purposefully reached out beyond" its home and into Missouri or Texas, much less that any supposed contacts created a substantial connection with those States. *Walden*, 571 U.S. at 284–85. And none of the allegations about "OptumHealth"

---

[11] Webb Am. Compl. ¶¶ 30, 147, 184–187, 327–29, 341–49, 351–56, and 405.

(undifferentiated) even mentions Missouri or Texas. That's not surprising: the *same* allegations about "OptumInsight" (undifferentiated) and "OptumHealth" (undifferentiated) appear in Plaintiffs' complaints in New York (Rochester Am. Compl.), Missouri (Lincoln County and City of Independence Am. Compls.), and Texas (Webb County Am. Compl.).

**Independence Amended Complaint paragraphs 487 and 490.**[12] In those paragraphs, Plaintiffs allege that "*either* Optum Perks, LLC *or* Optum Discount Card Services, LLC" "govern[s]" "Optum's" (undifferentiated) cash card business and that cash cards "played a significant role in the opioid epidemic." Independence Am. Compl. ¶ 487. By 2018, "Optum" (undifferentiated) allegedly served over "3.6 million cash card 'members.'" *Id.* ¶ 490. Plaintiffs' improper group pleading shows that they cannot establish jurisdiction over each defendant individually. *C. Pepper Logistics, LLC*, 2021 U.S. Dist. LEXIS 158736, at *10; *Sahm*, 2023 U.S. Dist. LEXIS 114897, at *12; *Freedman*, 2023 U.S. Dist. LEXIS 183822, at *8.  In any event, those allegations don't mention Missouri or Texas, let alone show that Optum Perks, LLC or Optum Discount Card Services, LLC had suit-related conduct creating a substantial connection with those States. *See Walden*, 571 U.S. at 284.

*  *  *  *  *

The Amended Complaints fail to establish specific jurisdiction over the Moving Defendants because every allegation about them is either untethered to Missouri or Texas, untethered to the claims in this case, or both. Plaintiffs do not allege that the Moving Defendants engaged in any suit-related conduct creating a "substantial connection" with either State. *Walden*, 571 U.S. at 284. Indeed, for nearly every allegation discussed above, Plaintiffs fail to allege *any* connection to Missouri or Texas. That is fatal in the jurisdictional analysis.

---

[12] Webb Am. Compl. ¶¶ 486, 489.

### III. PLAINTIFFS' RICO CLAIM DOES NOT CURE THE AMENDED COMPLAINTS' JURISDICTIONAL DEFECTS.

Recognizing these jurisdiction problems, Plaintiffs allege that "in the alternative, the Court has personal jurisdiction over all Defendants under 18 U.S.C. § 1965(b) as to Plaintiff's RICO claims and pendant [sic] personal jurisdiction over all Defendants as to Plaintiff's other claims, all of which arise out of a common nucleus of operative facts." Independence Am. Compl. ¶ 80; Webb Am. Compl. ¶ 79. As one federal court has warned, however, "[b]ecause of the broad jurisdictional reach of the RICO statute, the courts should be particularly vigilant not to permit a plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants . . . ." *World Depot Corp. v. Onofri*, No. 16-12439, 2017 U.S. Dist. LEXIS 198814, at *14–15 (D. Mass. Dec. 4, 2017). That describes this case perfectly. Plaintiffs' RICO claims against the Moving Defendants are not merely "spurious," they are nonexistent.

According to Plaintiffs, "Defendants" (undifferentiated) participated in a "Formulary & UM [RICO] Enterprise" through "discussions of formulary placement, prior authorization limits, step edits, preferred formulary status and their impact on opioid prescribing and dispensing and, relatedly, rebates and other fees" with drug manufacturers. Independence Am. Compl. ¶ 680; Webb Am. Compl. ¶ 674. Although Plaintiffs seek to assert a RICO claim against all Defendants, they do not allege that any of the Moving Defendants "dispensed massive amounts of . . . opioids without performing the requisite due diligence" (Independence Am. Compl. ¶ 674; Webb Am. Compl. ¶ 668), offered opioid manufacturers "preferred formulary placement" (Independence Am. Compl. ¶ 681; Webb Am. Compl. ¶ 675), received "rebates and [administrative] fees" from manufacturers (Independence Am. Compl. ¶ 683; Webb Am. Compl. ¶ 677), or "provid[ed] unfettered formulary access without meaningful UM measures on their standard formulary offerings." Independence Am. Compl. ¶ 686; Webb Am. Compl. ¶ 680. Of the UHG and Optum

Defendants, only OptumRx negotiated rebates, developed formulary offerings, and operated a mail-order pharmacy. Without offering even a single factual allegation that the Moving Defendants joined the purported "Formulary & UM Enterprise" or participated in the conduct underlying the purported RICO claim in any way, Plaintiffs cannot invoke RICO's personal jurisdiction provision. *See Anthony v. Over*, No. 3:22-cv-416, 2023 U.S. Dist. LEXIS 176603, at *14–15 (E.D. Tenn. Sep. 27, 2023) ("in the entirety of their 191 page Amended Complaint, Plaintiffs never specifically allege any single act of racketeering engaged in by Unleashed" so "it is difficult to understand . . . how exercising personal jurisdiction over Defendant Unleashed under the RICO SOP is required by the 'ends of justice'").

Nor can pendent jurisdiction save Plaintiffs' state-law claims. As a threshold matter, the Sixth Circuit has not authorized the exercise of pendent personal jurisdiction. *Canady v. Anthem Co.*, 9 F.4th 392, 401 (6th Cir. 2021) ("[O]ur court has never recognized this exception to these due-process limitations" and "[w]e see no good reason to do so now."). As the Sixth Circuit explained in *Canady*, "no federal statute or rule authorizes pendent . . . claim personal jurisdiction"—*i.e.*, the doctrine that "a court's exercise of personal jurisdiction over one defendant as to one claim allows it to exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence." *Id.* at 402. Indeed, "[n]o such law exists—not in 28 U.S.C. § 1367, the supplemental jurisdiction statute, not in the Federal Rules of Civil Procedure." *Id.*

Even if the Sixth Circuit had authorized pendent claim personal jurisdiction, that would not save Plaintiffs' state law claims. First, if the RICO claim does not survive as to Moving Defendants, then there is no federal anchor claim to which Plaintiffs' other claims can "append." *See generally*, Mem. Supporting Mot. to Dismiss (explaining that RICO claim fails); *Canady*, 9

F.4th at 402 (explaining that where recognized, pendent claim jurisdiction requires a viable federal anchor claim); *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 37 (1st Cir. 2020) ("[W]hen the federal-law claims [anchoring pendent jurisdiction] have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002) (finding that the district court abused its discretion by retaining pendent jurisdiction over claims after the anchor claim was dismissed).

Second, a district court has discretion to exercise pendent claim personal jurisdiction over a claim for which it otherwise lacks personal jurisdiction only when that claim "arises out of the same nucleus of operative fact" with the federal anchor claim. *Botefuhr*, 309 F.3d at 1272. Plaintiffs' RICO claims rest on entirely different alleged facts than their state-law claims against the Moving Defendants, so even if the RICO claim survives, pendent jurisdiction would not attach to Plaintiffs' state-law claims. For instance, Plaintiffs allege that the RICO enterprise arises from alleged negotiations between PBMs and drug manufacturers for rebates and favorable formulary placement, as well as the dispensing of opioids. *See, e.g.*, Independence Am. Compl. ¶ 680; Webb Am. Compl. ¶ 674. By contrast, Plaintiffs' claims against UHG rely on its alleged relationship with its corporate subsidiaries. *See, e.g.*, Independence Am. Compl. ¶¶ 13, 135–37, 177, 298, 345–46, and 386; Webb Am. Compl. ¶¶ 13, 134–36, 176, 297, 344–45, and 385. As for OptumInsight, Inc. and OptumInsight Life Sciences, Inc., Plaintiffs allege that they contributed to the flow of opioids into Plaintiff city and county allegedly by performing studies, research, or data analysis for opioid manufacturers. Independence Am. Compl. ¶¶ 30, 147, 185–188, 328–30, 342–46, 347–50, 352–57, and 406; Webb Am. Compl. ¶¶ 30, 147, 184–187, 327–29, 341–49, 351–56, and 405. Likewise, Plaintiffs allege that OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum

Health Networks, Inc. contributed to the crisis allegedly by working with manufacturers to educate physicians about the undertreatment of pain. Independence ¶¶ 30, 166, 174, 358–63; Webb Am. Compl. at p. 1, ¶¶ 30, 173, 357–58. Finally, Plaintiffs allege that Optum Perks, LLC and Optum Discount Card Services, LLC provided cash card services, which Plaintiffs themselves allege "do not have to adhere to formularies, nor do they have traditional utilization management controls." Independence Am. Compl. ¶ 487; Webb Am. Compl. ¶ 486. By Plaintiffs' own allegations, those services are not part of the alleged "Formulary & UM enterprise."

In sum, the RICO claims against Moving Defendants rest on entirely separate—not common—factual allegations.  Pendent claim personal jurisdiction therefore does not apply.

## CONCLUSION

The Court should dismiss Plaintiffs' amended complaints against UHG, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. for lack of personal jurisdiction.

Dated:  May 20, 2024

Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
Emily C. McGowan
Brandon C.E. Springer
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan

21

D. Andrew Hatchett
Bradley Harder
Caroline R. Strumph
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com
bradley.harder@alston.com
caroline.strumph@alston.com

*Attorneys for OptumRx, Inc., UnitedHealth Group Incorporated, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.*