# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL NO. 2804** |
| **THIS DOCUMENT RELATES TO**: | **Case No. 17-MD-2804** |
| *City of Independence, Missouri v. Williams*, No. 19-op-45371 ("Track 14") | **Judge Dan Aaron Polster** |
| *County of Webb, Texas v. Purdue Pharma, L.P.,* No. 18-op-45175 ("Track 15") | |

## DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINTS IN TRACKS 14 AND 15

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................3

ARGUMENT ................................................................................................................4

I.     PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS—AND AT LEAST AGAINST THE NEW DEFENDANTS— BECAUSE THEY ARE TIME-BARRED. .........................................................................5

     A.    Plaintiffs' RICO claims against all Defendants are time-barred ............................5

     B.    At a minimum, Plaintiffs' RICO claims against the New Defendants are time-barred. ....................................................................................................8

          1.    *The RICO claims against the New Defendants are time-barred on the face of the amended complaints.* ...............................................8

          2.    *The RICO claims against the New Defendants do not relate back to the date of the original complaints.* ...............................................9

          3.    *Tolling does not apply to the RICO claims against the New Defendants.* ......................................................................................11

II.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY FAIL TO ALLEGE AN INJURY TO BUSINESS OR PROPERTY. ...........................................................................................14

     A.    Plaintiffs' alleged increased expenditures for public services are not an injury to business or property. ...........................................................................15

     B.    Plaintiffs' alleged lost tax revenues do not qualify as an injury to business or property. .............................................................................................18

     C.    Plaintiffs fail to plausibly allege that they were harmed in their real property interests .......................................................................................19

     D.    Plaintiffs fail to plausibly allege they were harmed as consumer market participants. ..............................................................................................19

III.   THE COURT SHOULD DISMISS THE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS FOR THE ALLEGED ACTS OF THEIR SUBSIDIARIES. ..............................................................................................20

CONCLUSION ................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Agency Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) ...................................................................................................5

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) .................................................................................................19

*Baltrusaitis v. Int'l Union United Auto., Aerospace & Agric. Implement Workers
   of Am.*, 2022 WL 868423 (E.D. Mich. Mar. 23, 2022) ..........................................12

*Baltrusaitis v. Int'l Union United Auto., Aerospace & Agric. Implement Workers
   of Am.*, 86 F.4th 1168 (6th Cir. 2023) ................................................. 5, 6, 7, 12, 14

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
   501 F.3d 493 (6th Cir. 2007) ...................................................................................11

*Burnett v. N.Y. Cent. R.R. Co.*,
   380 U.S. 424 (1965) .................................................................................................11

*Canyon County v. Syngenta Seeds, Inc.*,
   519 F.3d 969 (9th Cir. 2008) ................................................15, 16, 17, 18, 19

*Carter-Jones Lumber Co. v. Dixie Distrib. Co.*,
   166 F.3d 840 (6th Cir. 1999) ...................................................................................20

*Cataldo v. U.S. Steel Corp.*,
   676 F.3d 542 (6th Cir. 2012) .....................................................................................5

*Chattanooga Foundry & Pipe Works v. City of Atlanta*,
   203 U.S. 390 (1906) .................................................................................................16

*City & County of San Francisco v. Purdue Pharma L.P.*,
   491 F. Supp. 3d 610 (N.D. Cal. 2020) ................................................. 17, 18, 19

*City of Almaty v. Khrapunov*,
   956 F.3d 1129 (9th Cir. 2020) .................................................................................17

*Corrigan v. U.S. Steel Corp.*,
   478 F.3d 718 (6th Cir. 2007) ...................................................................................21

*County of Oakland v. City of Detroit*,
   866 F.2d 839 (6th Cir. 1989) ...................................................................................16

*Diaz v. Gates*,
    420 F.3d 897 (9th Cir. 2005) (en banc) ............................................................... 16

*Engel v. Davenport*,
    271 U.S. 33 (1926) ............................................................................................... 11

*In re EpiPen Direct Purchaser Litig.*,
    2021 WL 147166 (D. Minn. Jan. 15, 2021) ........................................................ 21

*In re EpiPen Direct Purchaser Litig.*,
    2022 WL 1017770 (D. Minn. Apr. 5, 2022) ....................................................... 21

*Hawaii v. Standard Oil Co. of Cal.*,
    405 U.S. 251 (1972) ...................................................................................... 15, 18

*Hemi Grp., LLC v. City of N.Y.*,
    559 U.S. 1 (2010) ................................................................................................. 19

*Hoover v. Langston Equip. Assocs., Inc.*,
    958 F.2d 742 (6th Cir. 1992) ........................................................................... 5, 20

*Isaak v. Trumbull Sav. & Loan Co.*,
    169 F.3d 390 (6th Cir. 1999) ................................................................................ 5

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
    610 F.3d 382 (7th Cir. 2010) ................................................................................ 7

*Kellom v. Quinn*,
    86 F.4th 288 (6th Cir. 2023) ............................................................................... 10

*Mattingly v. R.J. Corman R.R. Grp., LLC*,
    90 F.4th 478 (6th Cir. 2024) ............................................................................... 20

*Nice v. City of Akron*,
    2023 WL 1766116 (N.D. Ohio Feb. 3, 2023) ...................................................... 8

*United States ex rel. Owsley v. Fazzi Assocs., Inc.*,
    16 F.4th 192 (6th Cir. 2021) ............................................................................... 20

*Rotella v. Wood*
    528 U.S. 549 (2000) ...................................................................................... 5, 6, 7

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) ...................................................................................... 14, 19

*Sims v. Ohio Cas. Ins. Co.*,
    151 F. App'x 433 (6th Cir. 2005) ........................................................................ 5

*Smith v. City of Akron*,
   476 F. App'x 67 (6th Cir. 2012) ................................................................................11

*Taylor Group v. ANR Storage Co.*,
   24 F. App'x 319 (6th Cir. 2001) .................................................................................7

*Town of W. Hartford v. Operation Rescue*,
   915 F.2d 92 (2d Cir. 1990) ......................................................................................18

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ..................................................................................................20

*Wall v. Mich. Rental*,
   852 F.3d 492 (6th Cir. 2017) ...................................................................................19

*Welborn v. Bank of N.Y. Mellon Corp.*,
   557 F. App'x 383 (5th Cir. 2014) ......................................................................15, 18

*Williams v. Porter Bancorp, Inc.*,
   41 F. Supp. 3d 676, 682 (W.D. Ky. 2014) ..............................................................20

*Zakora v. Chrisman*,
   44 F.4th 452 (6th Cir. 2022) ...................................................................................10

## Rules/Statutes

18 U.S.C. § 1964(c) .......................................................................................................14

Federal Rule of Civil Procedure 3 ..................................................................................10

Federal Rule of Civil Procedure 9(b) ..............................................................................19

Federal Rule of Civil Procedure 15..................................................................................10

Texas Civil Practice and Remedies Code § 16.061 ..........................................................11

In accordance with Federal Rule of Civil Procedure 12(b)(6), the Express Scripts Defendant Family and OptumRx Defendant Family (together, **Defendants**) move to partially dismiss the amended complaints in Tracks 14 and 15 for the reasons below.[1]

## INTRODUCTION

Plaintiffs City of Independence, Missouri (**Independence**) and County of Webb, Texas (**Webb County**) commenced these actions on January 29, 2019, and January 25, 2018, respectively, asserting public nuisance and related claims against a range of defendants, including pharmacy benefit managers (**PBMs**). More than four years later, Plaintiffs' cases were selected to proceed as bellwethers to test the asserted claims against PBMs. In December 2023, however, Plaintiffs moved to amend their complaints to add eleven new defendants, including mail-order pharmacies, health-services providers, data analytics and consulting companies, and discount-card companies (the **New Defendants**).[2] Independence also added a federal RICO claim asserting a purportedly decades-long conspiracy involving various participants from different segments of the pharmaceutical industry that interacted with opioids over the years.

---

[1] The Express Scripts Defendant Family comprises Express Scripts, Inc.; Express Scripts Holding Company, n/k/a Evernorth Health, Inc.; Express Scripts Pharmacy, Inc.; ESI Mail Pharmacy Service, Inc.; ESI Mail Order Processing, Inc.; Express Scripts Specialty Distribution Services, Inc.; Express Scripts Administrators, LLC; and Medco Health Solutions, Inc. The OptumRx Defendant Family comprises UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.

[2] The New Defendants are Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; Express Scripts Specialty Distribution Services, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc. In addition, ESI Mail Pharmacy Service, Inc., is a New Defendant in *Independence*, but not in *Webb County*.

The amended complaints should be dismissed in part for at least three reasons. **First**, Plaintiffs' RICO claims against all Defendants should be dismissed because they are time-barred. Plaintiffs' own allegations show that they have known of their alleged injuries for *two decades*, such that the four-year RICO statute of limitations expired long before Plaintiffs filed their initial complaints. At a minimum, the RICO claims against the New Defendants are time-barred because Plaintiffs' initial complaints *alleging the same injuries*—and in *Webb County*, the same *claim*— were filed more than four years ago, outside the limitations period. Under well-settled Sixth Circuit precedent, claims against newly added defendants do not relate back to the filing of the original complaint. Plaintiffs' own prior allegations thus make clear that the claims against the New Defendants are untimely.

**Second**, the RICO claims against all Defendants should be dismissed because Plaintiffs fail to adequately allege the required element of injury to business or property. While Plaintiffs allege that the opioid crisis increased public expenditures and decreased tax revenues, those injuries do not establish RICO standing under the law of any circuit that has decided this issue. Nor do Plaintiffs allege any other cognizable injuries to business or property.

**Third**, Plaintiffs' claims against parent companies (the **Parent Company Defendants**[3] should be dismissed because Plaintiffs do not allege that the Parent Company Defendants themselves engaged in any wrongful conduct. Instead, Plaintiffs merely lump the Parent Company Defendants with their subsidiaries. But parent companies cannot be held liable for the acts of their subsidiaries unless a plaintiff pleads allegations sufficient to pierce the corporate veil, and Plaintiffs have made no such allegations here.

---

[3] The Parent Company Defendants are Evernorth Health, Inc., f/k/a Express Scripts Holding Company; UnitedHealth Group Incorporated; and Optum, Inc.

Accordingly, the Court should dismiss (1) Plaintiffs' RICO claims against all Defendants, or at least against the New Defendants, as untimely; or (2) Plaintiffs' RICO claims against all Defendants for failure to allege a cognizable injury; and (3) all claims against the Parent Company Defendants.[4]

## BACKGROUND

***The Original Complaints.*** Independence filed its original complaint in Missouri state court on January 29, 2019, against Express Scripts Holding Company (n/k/a Evernorth Health, Inc.); Express Scripts Pharmacy, Inc.; Express Scripts, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. *See Jefferson County v. Williams*, No. 1:19-op-45371 (N.D. Ohio Jan. 31, 2019), Dkt. No. 1-2 (**Independence Orig. Compl.**). Independence's original complaint included claims for public nuisance, negligence per se, negligence, fraud, fraud in the omission, and negligent misrepresentation. *Id.* ¶¶ 748–803.

Webb County filed its original complaint in the United States District Court for the Southern District of Texas on January 25, 2018, against Express Scripts, Inc.; Express Scripts Holding Company (n/k/a Evernorth Health, Inc.); UnitedHealth Group Incorporated; Optum, Inc.; and OptumRx, Inc. *See County of Webb v. Purdue Pharma, L.P.*, No. 1:18-op-45175 (N.D. Ohio Jan. 31, 2019), Dkt. No. 1 (**Webb County Orig. Compl.**). Webb County amended its complaint on May 25, 2018 and again on March 16, 2019. *Webb County*, Dkt. Nos. 46, 73. In its Second Amended Complaint (Dkt. No. 73; **Webb County SAC**), Webb County asserted claims against the same defendants named by Independence and ESI Mail Pharmacy Service, Inc., for public nuisance, negligence per se, negligence, gross negligence, fraud against the manufacturers, civil

---

[4] Defendants will seek dismissal of the remainder of Plaintiffs' meritless claims, including public nuisance and negligence, in accordance with the Federal Rules of Civil Procedure.

conspiracy, violation of Texas's Deceptive Trade Practices—Consumer Protection Act against the manufacturers, unjust enrichment, and RICO violations. *See generally* Webb County SAC.

The defendants removed *Independence* to federal court, and both *Independence* and *Webb County* were transferred to this MDL and selected as PBM bellwether Case Tracks 14 and 15, respectively. *See Independence*, Dkt. Nos. 1, 20, 37; *Webb County*, Dkt. Nos. 1, 4, 105.

***The Recently Amended and Supplemental Complaints.*** On December 15, 2023, Plaintiffs moved the Court for leave to amend their respective complaints. Dkt. No. 5277. Over Defendants' opposition, the Court granted Plaintiffs' request. Dkt. No. 5319. In their amended and supplemental complaints, Plaintiffs each add at least eleven new parties. Independence added a RICO claim; Webb County withdrew its unjust enrichment claim. Both Plaintiffs assert all new causes of action against all Defendants, including the New Defendants.

## ARGUMENT

Although Defendants contest all the allegations against them and maintain that all claims are without merit, they focus this motion on three discrete arguments: (i) Plaintiffs' RICO claims against all Defendants (and at least the New Defendants) should be dismissed because they are time-barred; (ii) Plaintiffs' RICO claims against all Defendants should be dismissed because Plaintiffs fail as a matter of law to assert the required element of injury to business or property; and (iii) Plaintiffs' claims against the Parent Company Defendants should be dismissed because Plaintiffs fail to allege that the Parent Company Defendants can be held liable for the acts of their subsidiaries.

I.   **PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS—AND AT LEAST AGAINST THE NEW DEFENDANTS—BECAUSE THEY ARE TIME-BARRED.**

A.   **<u>Plaintiffs' RICO claims against all Defendants are time-barred.</u>**

As this Court previously acknowledged, "resolving a motion to dismiss based on statute-of-limitations grounds is appropriate when the undisputed facts conclusively establish the defense as a matter of law." Dkt. No. 1203 at 3 (internal quotation marks omitted); *see also Baltrusaitis v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1178 (6th Cir. 2023) (quoting *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)) (a court may dismiss a civil RICO claim when "the allegations in the complaint affirmatively show that the claim is time-barred"); *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) ("[T]he [district] court did not err in dismissing the count on grounds that the four year federal statute of limitations for civil RICO actions had expired.").

Federal civil RICO claims are subject to a four-year statute of limitations. *Agency Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). In *Rotella v. Wood*, the Supreme Court held that, under the injury discovery rule, the four-year period begins "when a plaintiff knew or should have known of his injury." 528 U.S. 549, 553–55 (2000); *see also Sims v. Ohio Cas. Ins. Co.*, 151 F. App'x 433, 435 (6th Cir. 2005) (citing *Rotella*, 528 U.S. at 553–55) ("The four-year period begins to run when a party knew, or through exercise of reasonable diligence should have discovered, that the party was injured by a RICO violation."); Dkt. No. 2568 at 13 (quoting *Rotella*, 528 U.S. at 555) ("The RICO limitations period is triggered by 'discovery of the injury, not discovery of other elements of a claim.'"). "Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning." *Isaak v. Trumbull Sav. & Loan Co*., 169 F.3d 390, 399 (6th Cir. 1999).

Plaintiffs filed their initial complaints in 2019 (*Independence*) and 2018 (*Webb*). Thus, any RICO claim accruing before 2014 would be untimely for both cases. Plaintiffs' allegations, which are assumed true, show that the RICO limitations period expired long ago. Plaintiffs allege not only that there was an "epidemic level" of opioid abuse in their communities by the mid-2000s, but also that Plaintiffs have been "dealing" with the alleged injury caused by Defendants for twenty years:

> As a direct result of the PBM Defendants' and Purdue's coordinated efforts, opioid use and abuse escalated to ***epidemic levels by the mid-2000s***, devastating communities across the country, including Plaintiff's Community. ***Plaintiff has been dealing with the public health crisis caused by the PBM Defendants' misconduct for the past two decades.***

*Independence*, Dkt. No. 42 (**Independence Am. Compl.**) ¶ 33 (emphasis added); *see also Webb County*, Dkt. No. 110 (**Webb County Am. Compl.**) ¶ 33 (same except substituting "Webb County" for "Plaintiff's Community"). Plaintiffs' allegations leave no doubt that they "knew or should have known of [the] injury" well before 2014. *Rotella*, 528 U.S. at 553. Thus, their RICO claims are barred. *Baltrusaitis*, 86 F.4th at 1178 (affirming dismissal of RICO claim at 12(b)(6) stage where plaintiffs' complaint "reveals when plaintiffs learned of their injuries (almost a decade before they filed)").

Other allegations confirm that Plaintiffs knew or should have known that there was a "public health crisis" or "opioid crisis" both nationwide and in their communities beginning in the 1990s. *See* Independence Am. Compl. ¶¶ 38, 40, 61; Webb County Am. Compl. ¶¶ 38, 40, 61. Plaintiffs allege that one of Defendants' alleged fellow "Formulary and UM Enterprise" racketeers, Purdue Pharma, pled guilty *in 2007* to mismarketing opioids, which should have put Plaintiffs on notice of their potential injury. Independence Am. Compl. ¶ 40; Webb County Am. Compl. ¶ 40. And Plaintiffs' previous complaints, incorporated by reference into the amended complaints, allege that the opioid crisis and related mortality was widely known and publicized through CDC data,

news stories, congressional and law enforcement investigations, and legal action against Purdue—all prior to 2014. Independence Orig. Compl. ¶¶ 79, 168, 214, 255, 622; Webb County SAC ¶¶ 346, 350, 386. Plaintiffs' own allegations thus demonstrate that they knew or should have known about their alleged RICO injuries many years before 2014, thereby barring their claims.

This Court previously rejected a statute-of-limitations argument based on other plaintiffs' allegations that other defendants had fraudulently concealed their unlawful conduct. Dkt. No. 1203 at 3–5. Yet as the Sixth Circuit has since held, fraudulent concealment is not enough by itself to toll the RICO limitations period. "[I]n a RICO case, the plaintiff must . . .  use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment . . . ." *Baltrusaitis*, 86 F.4th at 1178 (alteration in original) (quoting *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 388 (7th Cir. 2010)). In other words, Plaintiffs must allege that Defendants had prevented Plaintiffs from *knowing that they had been injured*; concealment of Defendants' alleged actions or pattern of conduct is not enough.

Previously, the Sixth Circuit applied the "injury and pattern discovery rule"—meaning a party had to discover its injury *and* the "pattern" of corrupt activity that caused it—to determine the accrual date for civil RICO claims. *Taylor Group v. ANR Storage Co.*, 24 F. App'x 319, 325 n.1 (6th Cir. 2001). In *Rotella*, the Supreme Court "'eliminate[d]' the injury and pattern discovery rule as 'unsound,' and instead applied the injury-discovery rule." *Baltrusaitis*, 86 F.4th at 1177 (alteration in original) (quoting *Rotella*, 528 U.S. at 554–55). Thus, "the limitation period begins when plaintiffs' injuries occurred or when they should have known of them." *Id.* at 1178 (citing *Rotella*, 528 U.S. at 554 & n.2).

Here, Plaintiffs do not allege that Defendants prevented them from learning of their injury. Instead, Plaintiffs concede that they knew of and have "been dealing with the public health crisis

caused by the PBM Defendants' misconduct for the past two decades." Independence Am. Compl.
¶ 33; Webb County Am. Compl. ¶ 33. While Plaintiffs later allege that they did not learn until
recently the role that *Defendants* purportedly played in this alleged injury, *see* Independence Am.
Compl. ¶ 695; Webb County Am. Compl. ¶ 692, these allegations do not toll a RICO claim under
controlling Sixth Circuit law. *See Nice v. City of Akron*, 2023 WL 1766116, at *10 (N.D. Ohio Feb.
3, 2023) (finding that although "plaintiffs ask this Court to apply a more elaborate legal test for
accrual of a RICO claim – *i.e.*, the date on which a plaintiff not only learns of his injury but also
learns the source or villain that caused the injury" such a rule is "inconsistent with the Supreme
Court's approach in *Rotella* and the Sixth Circuit's holdings"). The face of the amended complaints
makes clear that Plaintiffs have known of their alleged injury for *decades*. Their RICO claims are
therefore time-barred and should be dismissed.

**B.      At a minimum, Plaintiffs' RICO claims against the New Defendants are time-barred.**

Even assuming that Plaintiffs' RICO claims against all Defendants are not time-barred,
Plaintiffs' RICO claims against the New Defendants are indisputably untimely, are not subject to
relation back or tolling, and should be dismissed.

1.      *The RICO claims against the New Defendants are time-barred on the face of the amended complaints.*

Both Independence and Webb County first sought leave to assert their federal civil RICO
claims against the New Defendants in their amended complaints in December 2023—more than
four years after filing their original complaints and thus outside the RICO limitations period.
Independence Am. Compl. ¶¶ 771–805; Webb County Am. Compl. ¶¶ 807–40. By definition,
Plaintiffs discovered those injuries at the very latest in January 2018 and January 2019 when they
filed their original complaints. At that time, Plaintiffs supplied pages of allegations purporting to
detail alleged injuries dating back to the *late 1990s. See, e.g.*, Independence Orig. Compl. ¶ 72

("Defendants, in conspiracy with each other and/or acting in concert through a sophisticated and highly deceptive marketing campaign that began in the late 1990s, deepened around 2006, and continues to the present, set out to, and did, reverse the popular and medical understanding of opioids."); *id.* at ¶¶ 65, 79, 179; Webb County Orig. Compl. ¶ 182–83, 239, 241–42, 314. Plaintiffs now assert those *same alleged injuries* were caused by the New Defendants. *See, e.g.*, Independence Am. Compl. ¶¶ 277, 316 (alleging that, "[s]tarting in the late 1990s," the PBMs "partnered with Purdue and other opioid manufacturers to spread false information about opioids in order to increase [] sales and expand the market" and began "grant[ing] both brand and generic opioids, including OxyContin, preferred positions on [] standard formulary offerings"); Webb County Am. Compl. ¶¶ 276, 315 (same).[5]

Even assuming Plaintiffs were unaware of their injuries until the day they filed their original complaints (which is not the case, *see supra* § I.A.; Independence Am. Compl. ¶ 33; Webb County Am. Compl. ¶ 33), the limitations period for Plaintiffs' RICO claims against the New Defendants expired, at the very latest, on January 29, 2023, in *Independence* and on January 25, 2022, in *Webb County*.

2.    *The RICO claims against the New Defendants do not relate back to the date of the original complaints.*

Plaintiffs' RICO claims against the New Defendants do not relate back to the original complaint. "Generally, when an amended complaint adds claims or parties who weren't previously

---

[5] Other plaintiffs that filed complaints at similar or earlier times also brought RICO claims against Express Scripts and OptumRx. *See City of Springfield v. Purdue Pharma, L.P.*, No. 1:18-op-45899 (N.D. Ohio May 30, 2018), Dkt. No. 1, Compl. ¶¶ 243–91 (alleging RICO claims against Express Scripts and OptumRx); *County of Jefferson v. Purdue Pharma, L.P.*, No. 1:19-op-45437 (N.D. Ohio June 12, 2019), Dkt. No. 1, Compl. ¶¶ 721–74 (same); *Town of Bennington v. Mallinckrodt PLC*, No. 1:19-op-45791 (N.D. Ohio Sept. 17, 2019), Dkt. No. 1, Compl. ¶¶ 753–806 (same).

part of the lawsuit, the lawsuit 'commence[s]' for those claims and parties when they are added." *Kellom v. Quinn*, 86 F.4th 288, 294 (6th Cir. 2023) (alteration in original) (quoting Fed. R. Civ. P. 3). If the applicable statutes of limitations have expired for those newly added claims, the court must consider whether the new claims "relate back" to the date of the original complaint under Federal Rule of Civil Procedure 15(c)(1). *Id.* If a plaintiff alleges a claim against a new defendant that "arises out of the same conduct as the original complaint," the amendment "'relates back'" only if the new defendant "'(i) received such notice of the action that it w[ould] not be prejudiced . . . *and* (ii) knew or should have known that the action would have been brought against it, but for a *mistake* concerning the proper party's identity.'" *Zakora v. Chrisman*, 44 F.4th 452, 480 (6th Cir. 2022) (emphasis added) (quoting Fed. R. Civ. P. 15(c)(1)(C)).

The Sixth Circuit "interprets the term 'mistake' narrowly, applying only to corrections or misnomers; thus, lack of knowledge of an intended defendant's identity is not a 'mistake' concerning the party's identity under Rule 15(c)." Dkt. No. 739 at 5; *see also Zakora*, 44 F.4th at 482 ("An absence of knowledge about whom to sue is not a misunderstanding and thus is not a mistake for the purposes of Rule 15."). As a result, an amendment to add a new party "creates a new cause of action" that does *not* relate back to the original filing for purposes of the applicable limitations period. *Zakora*, 44 F.4th at 480; *see also* Dkt. No. 739 at 56 (explaining the Sixth Circuit rules governing application of Rule 15(c)). "Otherwise, an untimely plaintiff could avoid a statute of limitations simply by joining [a new defendant to] a preexisting action." *Kellom*, 86 F.4th at 294.

Plaintiffs' failure to sue the New Defendants in 2018 or 2019 when they filed their original complaints was not due to mistake or a misnomer (and they do not claim otherwise). Relation back is therefore unavailable. Dkt. No. 739 at 5 ("plaintiff 'did not make a mistake about which

10

defendant to sue; he simply did not know whom to sue or opted not to find out within the limitations period'") (quoting *Smith v. City of Akron*, 476 F. App'x 67, 69–70 (6th Cir. 2012)). Accordingly, Plaintiffs' federal RICO claims against the New Defendants are time-barred and should be dismissed.

3.    *Tolling does not apply to the RICO claims against the New Defendants.*

Plaintiffs' untimely RICO claims cannot be saved by state statutes or equitable tolling. Independence's amended complaint relies on Missouri Revised Statute § 516.280 to assert that Defendants are equitably estopped from asserting the statute of limitations. *See* Independence Am. Compl. ¶ 696. Webb County similarly asserts that it is not subject to "any applicable statute of limitations" pursuant to Texas Civil Practice and Remedies Code § 16.061. Webb County Am. Compl. ¶ 688. However, § 16.061 applies only to a specific list of enumerated Texas statutes of limitations, and, in any event, a state statute does not toll or suspend the statute of limitations for a federal cause of action. *See Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 433 (1965) ("'[T]he period of time within which a[] [federal] action may be commenced is a material element in . . . [a] uniformity of operation' which Congress would not wish 'to be destroyed by the varying provisions of the state statutes of limitation.'" (alterations in original) (quoting *Engel v. Davenport*, 271 U.S. 33, 39 (1926))).

Webb County also invokes the doctrine of equitable tolling, Webb County Am. Compl. ¶¶ 690–97, but this does not revive its claims either. Courts determine the applicability of equitable doctrines "on a case-by-case basis." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519 (6th Cir. 2007); *see also* Dkt. No. 739 at 8 ("The Court will determine whether equitable tolling applies in a particular case if and when that issue becomes ripe."). As this Court previously noted, the "Sixth Circuit cautions that courts should apply equitable tolling sparingly and only for compelling equitable reasons." Dkt. No. 739 at 7. To invoke equitable tolling, a

plaintiff must plead, with particularity, that despite its due diligence, it could not have discovered its *injury* during the limitations period due to the defendant's fraudulent concealment. *Baltrusaitis v. Int'l Union United Auto., Aerospace & Agric. Implement Workers of Am*., 2022 WL 868423, at *9 (E.D. Mich. Mar. 23, 2022), *aff'd*, 86 F.4th 1168 (6th Cir. 2023) (equitable tolling did not apply where plaintiffs did not establish an inability to discover their *injury* during the limitations period). Webb County was indisputably aware of its alleged *injuries* when it filed its original complaint on January 25, 2018 and asserted a RICO claim. Webb County does not dispute this and instead alleges that it could not have discovered Defendants' alleged RICO-related *conduct* during the limitations period. Webb County Am. Compl. ¶¶ 690–97. This assertion is belied by the simple fact that Webb County filed suit alleging RICO-related conduct by Express Scripts Holding Company, Express Scripts, Inc., UnitedHealth Group Incorporated, Optum, Inc., and OptumRx, Inc. in 2018. *See generally* Webb County Orig. Compl. Webb County even amended its complaint on March 16, 2019 to add Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc., as defendants and assert RICO claims against them, thereby further confirming that Webb County was well aware of any alleged RICO-related injuries more than four years before filing its amended complaint on December 15, 2023. *See generally* Webb County SAC. In any event, failure to discover a party's *conduct* is insufficient under controlling Sixth Circuit law to invoke the tolling exception since discovery of the injury, not the conduct, starts the limitations clock. *Baltrusaitis*, 86 F.4th at 1178–79.

To the extent the Court considers whether the moratorium on substantive filings in this MDL should toll the statute of limitations, it should not. This Court expressly declined to uniformly apply equitable tolling to future amended complaints in this MDL because equitable tolling is the

exception, not the rule. Dkt. No. 739 at 7–8. Instead, this Court advised it would consider equitable tolling on a case-by-case basis. *Id.* at 8.

Critically, Independence could have amended its complaint—without leave—in 2019 but chose not to. And Webb County did amend its complaint, and even added new members of the Express Scripts Defendant Family, but chose not to include the New Defendants. *See generally* Webb County SAC. After the release of new ARCOS data in 2018, this Court modified Case Management Order No. 1 to permit MDL plaintiffs to amend their complaints before March 16, 2019. Dkt. No. 1106. The Court further provided that subsequent MDL plaintiffs could amend their complaints without seeking leave of court within 90 days of transfer to the MDL. *Id.* at 3 n.7. Many MDL plaintiffs with claims against Express Scripts and OptumRx, including Webb County, amended their complaints to add RICO claims or new parties before March 16, 2019, or within 90 days of transfer to the MDL.[6] But Independence and Webb County slept on their rights and chose not to add the New Defendants in 2019.[7]

Alternatively, Plaintiffs could have filed new complaints. Other MDL plaintiffs, like Palm Beach County, Florida, and the City of Atlanta, Georgia, filed new complaints against Express

---

[6] *See, e.g.*, *City of Paterson v. Purdue Pharma, L.P.*, No. 1:18-op-45371 (N.D. Ohio March 15, 2019), Dkt. No. 45, Am. Compl. (amending complaint before deadline to add RICO claim); *Town of Enfield v. Purdue Pharma, L.P.*, No. 1:19-op-45581 (N.D. Ohio Oct. 7, 2019), Dkt. No. 80, Am. Compl. (amending complaint within 90 days of transfer into the MDL to add RICO claim); *City of Middletown v. Purdue Pharma, L.P.*, No. 1:19-op-45651 (N.D. Ohio Oct. 15, 2019), Dkt. No. 49, Am. Compl. (same); *Norwich v. Purdue Pharma, L.P.*, No. 1:19-op-45840 (N.D. Ohio Oct. 30, 2019), Dkt. No. 74, Am. Compl. (same); *Town of Wethersfield v. Purdue Pharma, L.P.*, No. 1:19-op-45663 (N.D. Ohio Oct. 28, 2019), Dkt. No. 49, Am. Compl. (same); *City of Portsmouth v. Purdue Pharma, L.P.*, 1:19-op-45856 (N.D. Ohio Dec. 27, 2019), Dkt. No. 54, Am. Compl (same).

[7] Independence also never sought leave from the moratorium on substantive filings to move for leave to amend even though other MDL plaintiffs (represented by the same counsel), including Webb County, took that approach. *See, e.g.*, Dkt. Nos. 4817 (County of Jefferson, New York), 4819 (Webb County), 4821 (Town of Bennington, Vermont) and Jan. 25, 2023 Order (granting motions for leave from moratorium on substantive filings).

Scripts and OptumRx (and other defendants) rather than seek leave to amend their existing complaints in the MDL. *See Palm Beach County, Fla. v. Mylan Pharms., Inc.*, No. 9:23-cv-80431 (S.D. Fla. Mar. 17, 2023), Dkt. No. 1, Compl.; *City of Atlanta, Ga. v. Mylan Pharms., Inc.*, No. 1:23-cv-01193 (N.D. Ga. Mar. 21, 2023), Dkt. No. 1, Compl.

Instead of diligently pursuing their rights, Plaintiffs, armed with full knowledge of their injuries, took zero action to timely assert their claims against the New Defendants. "Equity favors those who diligently pursue their known rights." *Baltrusaitis*, 86 F.4th at 1179. Plaintiffs cannot be rewarded for their inaction four years later, at the expense and prejudice of the New Defendants.

In short, Plaintiffs' civil RICO claims against the New Defendants are untimely, do not relate back to the original complaint, and do not benefit from any tolling. They should be dismissed.

## II.  PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED AGAINST ALL DEFENDANTS BECAUSE THEY FAIL TO ALLEGE AN INJURY TO BUSINESS OR PROPERTY.

Only a "person injured in his business or property by reason of" alleged racketeering may bring a civil RICO suit. 18 U.S.C. § 1964(c). Thus, a civil RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). Here, none of Plaintiffs' four categories of alleged injuries satisfies their burden to plead an injury to business or property. For one thing, Plaintiffs cannot rely on quasi-sovereign budgetary injuries such as (1) increased expenditures or (2) reduced tax revenues. Additionally, Plaintiffs fail to allege

that they were injured as (3) real property owners or (4) consumer market participants. The RICO

claims against all Defendants fail as a matter of law and should be dismissed.[8]

### A.    <u>Plaintiffs' alleged increased expenditures for public services are not an injury to business or property.</u>

In implementing RICO's requirement of injury to business or property, all other circuits

that have addressed the issue—including the Fifth Circuit—have held that governmental entities

"cannot rely on [public] expenditures" made in their "sovereign and/or quasi-sovereign capacities"

to establish RICO standing because such injuries are not injuries to "business or property." *Canyon*

*County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008) (government costs for

"health care services," "criminal justice services," and other public services do not constitute

"damages to [] property for purposes of civil RICO standing"); *see also Hawaii v. Standard Oil*

*Co. of Cal.*, 405 U.S. 251, 265 (1972) ("[T]he United States was authorized to recover, not for

general injury to the national economy or to the Government's ability to carry out its functions,

but only for those injuries suffered in its capacity as a consumer of goods and services."); *Welborn*

*v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) ("When a government sues

under the civil RICO statute, the 'business or property' element requires that the injury 'refer to

commercial interests or enterprises.'" (quoting *Hawaii*, 405 U.S. at 265)).

---

[8] Because Plaintiffs have failed to plausibly allege a RICO claim against any Defendant, they cannot rely on RICO's nationwide service of process provision, 18 U.S.C. § 1965(b), to obtain personal jurisdiction over Defendants. Independence Am. Compl. ¶ 80; Webb Am. Compl. ¶ 70; *see Anthony v. Over*, 2023 U.S. Dist. LEXIS 176603, at *16 (E.D. Tenn. Sep. 27, 2023) ("An inadequately pleaded RICO claim against an out-of-district Defendant cannot support a finding that the 'ends of justice' require exercising personal jurisdiction."); *see also E&M Props. v. RazorGator*, Inc., 2008 U.S. Dist. LEXIS 33384, at *20 (E.D. Mich. Apr. 23, 2008) ("To assert personal jurisdiction over [defendant] . . . based on inadequately pleaded RICO claims, would not serve 'the ends of justice.'").

15

In a thoroughly reasoned opinion, the Ninth Circuit explained that public expenditures do not constitute injury to business or property based on considerations of statutory text, logic, and legal context. To start, the Ninth Circuit noted that injury to business or property requires "'a harm to a specific business or property interest'" beyond "[f]inancial loss alone." *Canyon County*, 519 F.3d at 975 (quoting *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc)). Next, the court observed that "the law commonly distinguishes between the status of a governmental entity acting to enforce the laws or promote the general welfare and that of a governmental entity acting as a consumer or other type of market participant." *Id.* at 976. So "government entities that have been overcharged in commercial transactions and thus deprived of their money can claim injury to their property." *Id.* (first citing *Chattanooga Foundry & Pipe Works v. City of Atlanta*, 203 U.S. 390, 396 (1906); and then citing *County of Oakland v. City of Detroit*, 866 F.2d 839, 847 (6th Cir. 1989)). But "[i]f government expenditures alone sufficed as injury to property, any RICO predicate act that provoked any sort of governmental response would provide the government entity with standing to sue under § 1964(c)." *Id.* The Ninth Circuit thought this interpretation of the phrase "business or property" "highly improbable," in part because "public services" "are based on legislative mandates and are intended to further the public interest." *Id.*

At an earlier stage of this litigation, this Court declined to follow the Ninth Circuit's reasoning and held that abnormally high public expenditures may be an injury to "business or property" under RICO. Dkt. No. 1203, at 19. The Court read *Canyon County* to hold only "that governmental entities are not injured in their property based *solely* on the expenditure of money to act governmentally." *Id.* at 18 (emphasis in original). And the Court reasoned that "[u]se of the word 'solely' implies that governmental entities might be able to assert an injury to their property based on the expenditure of money plus something else, perhaps, for example, the assumption of

16

a statutory burden relinquished by a defendant." *Id.* The Court therefore "conclude[d] that while Cities and Counties cannot recover ordinary costs of services provided in their capacity as a sovereign, Cities and Counties should be able to recover costs greatly in excess of the norm." *Id.*

Since then, the Ninth Circuit reaffirmed a broader reading of *Canyon County*, explaining that it "decided that a government's expenditures on healthcare and policing services are not an injury to business or property because the government does not have a property interest in the services it provides to enforce law and promote public welfare." *City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020). Even more recently, Judge Breyer of the Northern District of California applied the Ninth Circuit's rule to bar municipalities' RICO claims that were, as here, based on increased costs for public services related to opioid misuse. *City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 648 (N.D. Cal. 2020). Judge Breyer considered and rejected this Court's analysis, holding that, "[c]ontrary to the MDL court's analysis, *Canyon County* established that governmental entities ***cannot*** assert a RICO claim based on expenditures or services provided in their sovereign or quasi-sovereign capacities." *Id.* at 650 (emphasis in original). Judge Breyer explained that *Canyon County*'s use of the word "solely" was not "an invitation to consider unrelated factors—such as the scope or magnitude of an event—that would cumulatively create a property interest." *Id.* Rather, the Ninth Circuit in *Canyon County* used the word "solely" to mark a transition from considering whether "the expenditure of money" could qualify as a property interest to considering whether "the services ***themselves***" could do so. *Id.* (emphasis in original) (quoting *Canyon County*, 519 F.3d at 976). The *Canyon County* court went on to hold that "the services themselves" *also* did not qualify. 519 F.3d at 976.

As Judge Breyer further noted, nothing in *Canyon County* supports any distinction between ordinary and extraordinary governmental expenditures for RICO standing purposes. *San*

*Francisco*, 491 F. Supp. 3d at 651. Instead, the kinds of expenditures at issue in *Canyon County*, *San Francisco*, the cases previously before the MDL Court, and these PBM bellwether cases are all "virtually identical," consisting of "'law enforcement and health care services'" that *Canyon County* held "are 'not recoverable damages under civil RICO.'" *Id.* (quoting *Canyon County*, 519 F.3d at 980).

The Ninth Circuit is not alone in holding that public expenditures do not confer standing to bring a RICO claim. Of particular relevance to *Webb County*, the Fifth Circuit in *Welborn v. Bank of N.Y. Mellon Corp.* similarly confirmed that "[a] government cannot claim damages [under RICO] for general injury to the economy or 'to the Government's ability to carry out its functions.'" 557 F. App'x at 387 (quoting *Hawaii*, 405 U.S. at 265) (affirming dismissal under Rule 12(b)(6) because loss from the "provision of a public service" is not injury from a commercial activity as required to state a cognizable RICO claim); *see also Town of W. Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990) ("*Hawaii* refers not only to injuries to a governmental entity's 'general economy' but also to its 'ability to carry out its functions' as falling outside the concept of statutory injury to its 'business or property.'" (citations omitted) (quoting *Hawaii*, 405 U.S. at 264, 265)). No appellate court has ruled otherwise. Given this widespread agreement, the Court should adopt Judge Breyer's understanding of *Canyon County* and the Fifth Circuit's decision in *Welborn* and hold that Plaintiffs' alleged increased expenditures are not injuries to business or property for purposes of a RICO claim.

 **B.**   <u>Plaintiffs' alleged lost tax revenues do not qualify as an injury to business or property.</u>

Increased expenditures and diminished taxes are two sides of the same coin—both are budgetary harms to a municipality in its "quasi-sovereign" capacity rather than in its capacity as a property owner or consumer. *Canyon County*, 519 F.3d at 976; *see Welborn*, 557 F. App'x at 386–

88 (rejecting RICO claim based on lost recording fees revenue); *see also Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 11 (2010) (rejecting RICO claim based on lost tax revenue); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (same). Thus, the Plaintiffs cannot rely on lost tax revenues to allege an injury to business or property.

### C.  Plaintiffs fail to plausibly allege that they were harmed in their real property interests.

Plaintiffs say that opioid abuse led to diminished real property values. Independence Am. Compl. ¶ 801(h)–(i); Webb County Am. Compl. ¶ 836(m)–(n). But they do not identify any such affected real property, much less property that *they* owned and that opioid abuse allegedly damaged. *Cf. San Francisco*, 491 F. Supp. at 651 (allegations of harm to toilet grinders of main public library satisfied RICO standing requirement). So Plaintiffs wholly fail to allege that Defendants' conduct injured them in this way. *See Sedima*, 473 U.S. at 496.

### D.  Plaintiffs fail to plausibly allege they were harmed as consumer market participants.

Plaintiffs claim that Defendants' conduct fraudulently led them to pay reimbursements for prescription drugs. Independence Am. Compl. ¶ 801(a); Webb County Am. Compl. ¶ 836(a). But, again, public expenditures for "health care services" do not confer RICO standing. *Canyon County*, 519 F.3d at 977. Indeed, in *San Francisco*, Judge Breyer rejected a similar attempt to "blur the distinction between recoverable proprietary harms and unrecoverable governmental harms" by treating municipal purchases of equipment and services as injuries incurred in the municipality's capacity as a consumer market participant. 491 F. Supp. 3d at 652.

In any event, Plaintiffs fail to plead this allegation plausibly, let alone with the particularity required by Federal Rule of Civil Procedure 9(b) for such allegations sounding in fraud. *See, e.g.*, *Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (applying Rule 9(b) to RICO claims based on fraud). Plaintiffs identify no specific reimbursements that they paid that they would not have

paid but for Defendants' conduct, much less connect the dots from Defendants' allegedly false representations to their payment of any specific claim. *See United States ex rel. Owsley v. Fazzi Assocs., Inc.*, 16 F.4th 192, 197 (6th Cir. 2021) (stating Rule 9(b) requires "particular identified claims" in analogous False Claims Act context). Plaintiffs also lump Defendants together instead of explaining each of their alleged roles in inducing Plaintiffs to pay claims. Such group pleading is insufficient at all times—but especially so when dealing with allegations of fraud. *See Hoover*, 958 F.2d at 745 (affirming dismissal because "plaintiffs had not alleged with specificity who had made particular misrepresentations and when they were made but rather plaintiffs had articulated general averments of fraud attributed to 'the defendants'").

In sum, because Plaintiffs fail as a matter of law to allege a statutorily required element of their RICO claims, those claims should be dismissed.

## III. THE COURT SHOULD DISMISS THE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS FOR THE ALLEGED ACTS OF THEIR SUBSIDIARIES.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted); *see also Mattingly v. R.J. Corman R.R. Grp., LLC*, 90 F.4th 478, 486 (6th Cir. 2024) (same). Thus, a corporate parent may be held liable for the acts of a subsidiary if "the corporate veil is pierced" or if it "actively participated in, and exercised control over, the operations of the" subsidiary. *Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999); *Bestfoods*, 524 U.S. at 64 (requiring that "the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management").

Applying that rule, courts routinely dismiss claims against parent corporations for the alleged acts of subsidiaries absent allegations showing that veil-piercing applies. For example, in *Williams v. Porter Bancorp, Inc.*, the Western District of Kentucky dismissed claims against a

corporate parent because the plaintiff did not allege that it directly engaged in wrongful conduct or allege any "grounds for piercing the corporate veil." 41 F. Supp. 3d 676, 682 (W.D. Ky. 2014) (citing *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6th Cir. 2007) ("The burden of proof to demonstrate grounds for piercing the corporate veil is on the party seeking to impose liability on the parent corporation.")). Likewise, the Parent Company Defendants here have been dismissed in other cases brought against them because the complaints only alleged conduct of their PBM subsidiaries. *See, e.g.*, *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *10–12 (D. Minn. Apr. 5, 2022) (dismissing claims against Express Scripts Holding Co., UnitedHealth Group Incorporated, and Optum, Inc., because they are not liable for the alleged acts of their PBM subsidiaries); *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *22 (D. Minn. Jan. 15, 2021) (same).

Here, Plaintiffs fail to plead any facts (1) showing that the Parent Company Defendants were direct participants in the alleged wrongdoing or (2) to justify piercing the corporate veil. First, Plaintiffs offer only conclusory statements that the Parent Company Defendants' conduct had a "direct effect" within Plaintiffs' respective communities. *See* Independence Am. Compl. ¶¶ 92, 137; Webb County Am. Compl. ¶¶ 90, 136. And Plaintiffs merely group together the Parent Company Defendants with their subsidiaries in making allegations throughout both amended complaints.[9] Plaintiffs do not allege that any Parent Company Defendant engaged in any particular actionable conduct independent of their respective subsidiaries. Second, Plaintiffs provide no

---

[9] Throughout their amended complaints, Plaintiffs collectively refer to Evernorth Health, Inc., and each of its wholly owned subsidiaries as "Express Scripts" or "ESI." Independence Am. Compl. ¶ 120; Webb County Am. Compl. ¶ 118. Plaintiffs also collectively refer to Optum, Inc., and each of its wholly owned subsidiaries as "Optum," Independence Am. Compl. ¶ 175; Webb County Am. Compl. ¶ 174, and do not include any substantive allegations about UnitedHealth Group Incorporated. And Plaintiffs refer to all Defendants—parent companies and their respective subsidiaries—as "Defendants" or "the PBM Defendants."

factual support for their conclusory allegation that the Parent Company Defendants are liable for the acts of their subsidiaries through an alter ego theory. Independence Am. Compl. ¶ 705; Webb County Am. Compl. ¶ 699. As in *Williams* and *EpiPen*, these non-specific and conclusory allegations are insufficient to state a claim against the Parent Company Defendants. Plaintiffs' claims against Evernorth Health, Inc., f/k/a Express Scripts Holding Company, UnitedHealth Group Incorporated, and Optum, Inc., should therefore be dismissed for failure to state a claim against them.

## CONCLUSION

The Court should dismiss the amended complaints in part for the reasons explained above.

Date: May 20, 2024

Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
William H. Jordan
Andrew Hatchett
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for OptumRx, Inc., UnitedHealth
Group Incorporated, Optum, Inc.,
OptumInsight, Inc., OptumInsight Life Sciences,
Inc., OptumRx Discount Card Services, LLC,
Optum Perks, LLC, OptumHealth Care
Solutions, LLC, OptumHealth Holdings, LLC,
and Optum Health Networks, Inc.*

*/s/ Jonathan G. Cooper*
Michael J. Lyle
Jonathan G. Cooper
Christopher G. Michel
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com
christophermichel@quinnemanuel.com

*Attorneys for Express Scripts Defendant Family*