# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| *City of Rochester v. Purdue Pharma, L.P.,* No. 19-op-45853 (Track 12) | |
| *Lincoln County v. Richard S. Sackler, M.D.,* No. 20-op-45069 (Track 13) | |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINTS IN TRACKS 12 AND 13 (DKT. #5370) AND MEMORANDUM OF LAW IN SUPPORT

May 20, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. *i*

ARGUMENT ...................................................................................................................... 1

I.   DISMISSAL OF PLAINTIFFS' RICO CLAIMS IS NOT WARRANTED. ..................................... 2

   A.   Plaintiffs' RICO Claims Are Not Time-Barred. ........................................... 2

     *1. Plaintiffs' RICO claims seeking equitable relief are not time-barred.* ............................. 2

     *2. Plaintiffs' RICO claims for damages resulting from predicate acts that took place within the limitations period are not time-barred.* ......................................................... 2

     *3. Plaintiffs sufficiently allege that the injury-discovery rule applies.* .................................. 5

     *4. Plaintiffs sufficiently allege that the fraudulent concealment doctrine applies.* ................. 6

     *5. Plaintiffs' RICO claims against the New Defendants are not time-barred.* ....................... 7

   B.   Plaintiffs Sufficiently Allege Injuries to Business or Property. ................................... 9

     *1. This Court previously recognized that extraordinary costs of public services and costs for purchasing Naloxone are cognizable RICO injuries.* ......................................... 9

     *2. The other out-of-circuit cases cited by Defendants do not compel a different result.* ....... 11

     *3. Plaintiffs also allege cognizable injuries to real property.* ............................................. 13

     *4. Lost tax revenues are also a cognizable injury to business or property.* .......................... 14

II.   DISMISSAL OF ROCHESTER'S STATE-LAW CLAIMS IS NOT WARRANTED. ...................... 14

   A.   Rochester's State-Law Claims Against the New Defendants Are Not Time-Barred.…... ................................................................................................... 14

     *1. Rochester's public nuisance claim for equitable relief is not time-barred.* ...................... 15

     *2. Rochester's state-law claims for damages against the New Defendants are timely under New York's continuing wrong doctrine.* ........................................................... 15

     *3. Rochester's state-law claims for damages against the New Defendants also relate back to its Original Complaint.* .................................................................................. 16

     *4. Rochester plausibly alleges that equitable tolling applies to its state-law claims against the New Defendants.* ............................................................................................ 19

   B.   Rochester Sufficiently Alleges Direct Injuries Arising from Its GBL Claims. ......... 20

**III.** **PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS.** ................................................................................................ 25

**A.** **Plaintiffs Sufficiently Allege the Direct Liability of the Parent Company Defendants.**.. ................................................................................................ 25

**B.** **Plaintiffs Sufficiently Allege Alter Ego Theories of Liability for the Parent Company Defendants.** ................................................................................................ 29

**CONCLUSION** ................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*1050 Tenants Corp. v. Lapidus,*
    735 N.Y.S.2d 47 (N.Y. App. Div. 1st Dept. 2001)................................................................15

*461 Broadway, LLC v. Village of Monticello,*
    42 N.Y.S.3d 419 (N.Y. App. Div. 3d Dept. 2016) ..............................................................16

*A.O.A. v. Rennert,*
    350 F. Supp. 3d 818 (E.D. Mo. 2018)...............................................................................29

*Abdell v. City of New York,*
    759 F. Supp. 2d 450 (S.D.N.Y. 2010)..................................................................................8

*Am. Premier Underwriters, Inc. v. Nat'l RR Passenger Corp.,*
    839 F.2d 458 (6th Cir. 2016) .......................................................................................1, 6

*Amaya v. Garden City Irrigation, Inc.,*
    645 F. Supp. 2d 116 (E.D.N.Y. 2009) ..........................................................................17, 18

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006)....................................................................................................14

*ArmorSource LLC v. Kapah,*
    No. 2:18-CV-905, 2019 WL 1118023 (S.D. Ohio Mar. 11, 2019)...................................3, 4, 5

*Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.,*
    268 F.3d 103 (2d Cir. 2001)..........................................................................................13

*Baltrusaitis v. Intl. Union, United Automobile, Aerospace and Agric. Implement Workers of Am.,*
    86 F.4th 1168 (6th Cir. 2023) ............................................................................ *passim*

*Bayerische Landesbank v. Aladdin Capital Mgt. LLC,*
    289 F.R.D. 401 (S.D.N.Y. 2013) ...................................................................................19

*Beck v. Prupis,*
    529 U.S. 494 (2000)......................................................................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................................1

*Beneke v. Town of Santa Clara,*
    846 N.Y.S.2d 681 (N.Y. App. Div. 3d Dept. 2007) .............................................................15

iii

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007) ..............................................................................8

*Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    818 N.E.2d 1140 (N.Y. 2004) ......................................................................22, 23

*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*,
    655 Fed. Appx. 9 (2d Cir. 2016) .....................................................................29

*Buran v. Coupal*,
    661 N.E.2d 978 (N.Y. 1995) ...........................................................................19

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ..................................................................*passim*

*Capruso v. Village of Kings Point*,
    16 N.E.3d 527 (N.Y. 2014) .............................................................................15

*In re Cardizem CD Antitrust Litig.*,
    332 F.3d 896 (6th Cir. 2003) .....................................................................12, 13

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ...........................................................................7

*Chiropractic Co-op. Ass'n of Michigan v. Am. Med. Ass'n*,
    867 F.2d 270 (6th Cir. 1989) ...........................................................................4

*Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*,
    No. 1:22-CV-08842 (JLR), 2024 WL 398094 (S.D.N.Y. Feb. 2, 2024) ...............................29

*City & County of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ......................................................11, 12, 13

*City of Almaty v. Khrapunov*,
    956 F.3d 1129 (9th Cir. 2020) .....................................................................11, 12

*City of Almaty v. Sater*,
    503 F. Supp. 3d 51 (S.D.N.Y. 2020) ................................................................20

*City of New York v. Gordon*,
    1 F. Supp. 3d 94 (S.D.N.Y. 2013) ...................................................................14

*City of New York v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008).......................................................................13, 14

*City of New York v. Smokes-Spirits.Com, Inc.*,
    911 N.E.2d 834 (N.Y. 2009)........................................................................22, 23

*In re Cnty, Green Ltd. P'ship*,
    604 F.2d 289 (4th Cir. 1979) ........................................................................30

*Covington v. Walker*,
    819 N.E.2d 1025 (N.Y. 2004) .....................................................................15

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) .........................................................................6

*Dimond Rigging Co., LLC v. BDP Intl., Inc.*,
    914 F.3d 435 (6th Cir. 2019) .........................................................................2

*Donovan v. All-Weld Products Corp.*,
    824 N.Y.S.2d 44 (N.Y. App. Div. 1st Dept. 2006)......................................18

*Erie Indem. Co. v. Keurig, Inc.*,
    No. 1:10-CV-02899, 2011 WL 2893013 (N.D. Ohio July 15, 2011) ...........8

*Estevez v. SLG 100 Park LLC*,
    189 N.Y.S.3d 53 (N.Y. App. Div. 1st Dept. 2023).....................................18

*European Community v. RJR Nabisco, Inc.*,
    150 F. Supp. 2d 456 (E.D.N.Y. 2001) ........................................................14

*Frintzilas v. DirecTV, LLC*,
    731 Fed. Appx. 71 (2d Cir. 2018) (unpublished).........................................25

*Grover v. BMW of N.A., LLC*,
    434 F. Supp. 3d 617 (N.D. Ohio 2020).....................................................2, 3

*Hall v. Warden, Lebanon Corr. Inst.*,
    662 F.3d 745 (6th Cir. 2011) .........................................................................8

*Harvey v. Metro. Life Ins. Co.*,
    827 N.Y.S.2d 6 (N.Y. App. Div. 1st Dept. 2006)......................................16

*Hemi Grp., LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010)...................................................................................13, 14

*James v. McCoy*,
    56 F. Supp. 2d 919 (S.D. Ohio 1998), *aff'd,* 181 F.3d 101 (6th Cir. 1999) ..............................3

*Johnson & Johnson Health Care Sys. Inc. v. Save On SP, LLC*,
    No. CV 22-2632, 2023 WL 415092 (D.N.J. Jan. 25, 2023) .....................23

*In re JUUL Labs, Inc., Mktg., Sales Practices, and Products Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) .................................21, 22, 23, 24

*Kearney v. A. Cement Co.*,
    306 N.Y.S.2d 45 (N.Y. App. Div. 3d Dept. 1969) ...............................................................15

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)....................................................................................................................3

*Knapp v. City of Columbus*,
    93 Fed. Appx. 718 (6th Cir. 2004) (unpublished)......................................................................8

*Krupski v. Costa Crociere S. p. A.*,
    560 U.S. 538 (2010)....................................................................................................................8

*Kyszenia v. Ricoh USA, Inc.*,
    583 F. Supp. 3d 350 (E.D.N.Y. 2022) ....................................................................................25

*Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.*,
    14 F. Supp. 3d 488 (S.D.N.Y. 2014)........................................................................................29

*Laya v. Erin homes Inc.*,
    352 S.E.2d 93 (W. Va. 1986) ....................................................................................................30

*Leo v. General Elec. Co.*,
    No. 210181985, 1991 WL 11764393 (N.Y. Sup. Ct. Nov. 22, 1991) .....................................15

*Lopez v. Roethel*,
    No. 2:18-CV-107, 2019 WL 13212616 (W.D. Mich. Sept. 23, 2019) ....................................17

*Lucchesi v. Perfetto*,
    899 N.Y.S.2d 341 (N.Y. App. Div. 2d Dept. 2010) ...............................................................15

*Lutz v. Chesapeake Appalachia, L.L.C.*,
    717 F.3d 459 (6th Cir. 2013) ......................................................................................................1

*Masuda v. Mazzei*,
    72 Misc. 3d 1209(A), 149 N.Y.S.3d 890 (N.Y. Sup. Ct. 2021).............................................15

*Mattingly v. R.J. Corman R.R. Grp., LLC*,
    90 F.4th 478 (6th Cir. 2024) ....................................................................................................29

*Microsoft Corp. v. Motorola, Inc.*,
    854 F. Supp. 2d 993 (W.D. Wash. 2012).................................................................................29

*N. State Autobahn, Inc. v. Progressive Ins. Group Co.*,
    953 N.Y.S.2d 96 (N.Y. App. Div. 2d Dept. 2012) .................................................................21

*Nemeth v. K-Tooling*,
    224 N.E.3d 513 (N.Y. 2023)........................................................................................17, 18, 19

*New York v. W. Side Corp.*,
   790 F. Supp. 2d 13 (E.D.N.Y. 2011) ...................................................................................15

*In re Opioid Litigation*,
   No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018)..............................21, 23

*In re Opioid Litigation*,
   No. 400000/2017, 2019 WL 2996570 (N.Y. Sup. Ct. June 21, 2019)........................15, 16, 21

*In re Opioid Litigation*,
   No. 4000002017, 2018 WL 4827862 (N.Y. Sup. Ct. July 17, 2018) ...............................16, 21

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
   286 F. Supp. 3d 430 (E.D.N.Y. 2017) ..................................................................................30

*Palmeri v. Willkie Farr & Gallagher LLP*,
   69 N.Y.S.3d 267 (N.Y. App. Div. 1st Dept. 2017)................................................................16

*People by James v. JUUL Labs, Inc.*,
   181 N.Y.S.3d 537 (N.Y. App. Div. 1st Dept. 2023)..............................................................16

*In re Polyurethane Foam Antitrust Litig.*,
   152 F. Supp. 3d 968 (N.D. Ohio 2015)..................................................................................6

*Potomac Elec. Power Co. v. Electric Motor & Supply, Inc.*,
   262 F.3d 260 (4th Cir. 2001) ...............................................................................................14

*Putter v. N. Shore U. Hosp.*,
   858 N.E.2d 1140 (N.Y. 2006)........................................................................................19, 20

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)..............................................................................................................14

*Renwick v. Morris*,
   1842 WL 4382 (N.Y. Sup. Ct. 1842), *aff'd,* 1844 WL 4558 (N.Y. Sup. Ct. 1844) ................15

*Rotella v. Wood*,
   528 U.S. 549 (2000)................................................................................................................5

*Salinas v. U.S.*,
   522 U.S. 52 (1997)..................................................................................................................4

*Schechter v. Banque Commerciale Privee*,
   No. 90 CIV. 6051, 1991 WL 105217 (S.D.N.Y. June 11, 1991)............................................29

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985)..............................................................................................................10

*Serio v. Ardra Ins. Co., Ltd.*,
    761 N.Y.S.2d 1 (N.Y. App. Div. 1st Dept. 2003)...................................................................29

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984)............................................................................................13, 14

*Smith v. FirstEnergy Corp.*,
    518 F. Supp. 3d 1118 (S.D. Ohio 2021) ..............................................................................2

*Smith v. U.S.*,
    568 U.S. 106 (2013).............................................................................................................4

*Solidstrip Inc. v. U.S. Tech. Corp.*,
    No. 5:21-CV-0731, 2024 WL 1177968 (N.D. Ohio Mar. 18, 2024) ...........................3, 4, 5, 6

*Sova v. Glasier*,
    596 N.Y.S.2d 228 (N.Y. App. Div. 4th Dept. 1993) .........................................................15

*Stanton v. Town of Southold*,
    698 N.Y.S.2d 258 (N.Y. App. Div. 2d Dept. 1999) .......................................................14, 15

*The People of the State of New York v. Fischman*,
    No. 452353/2018, 2023 WL 5288081 (N.Y. Sup. Ct. Aug. 03, 2023) ...............................16

*Tobia v. Loveland*,
    No. 5:16CV187, 2017 WL 2113752 (N.D.W. Va. May 15, 2017)......................................30

*Town of West Hartford v. Operation Rescue*,
    915 F.2d 92 (2d Cir. 1990)..............................................................................................12, 13

*Trollinger v. Tyson Foods, Inc.*,
    No. 4:02-CV-23, 2006 WL 319022 (E.D. Tenn. Feb. 8, 2006)...........................................4, 5

*Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*,
    No. 09-2533-JWL, 2010 WL 3735757 (D. Kan. Sept. 20, 2010)..........................................29

*U.S. v. Corrado*,
    286 F.3d 934 (6th Cir. 2002) ..............................................................................................4

*U.S. v. Saadey*,
    393 F.3d 669 (6th Cir. 2005) ..............................................................................................4

*United States v. Bestfoods*,
    524 U.S. 51 (1998)............................................................................................................30

*United States v. Jones*,
    27 F.3d 50 (2d Cir. 1994)...................................................................................................27

*United States v. Rios*,
   830 F.3d 403 (6th Cir. 2016) ....................................................................27

*Unlimited Cellular, Inc. v. Red Points Sols. SL*,
   677 F. Supp. 3d 186 (S.D.N.Y. 2023).......................................................25

*Voters for Animal Rts. v. D'Artagnan, Inc.*,
   No. 19-CV-6158 (MKB), 2020 WL 9209257 (E.D.N.Y. July 15, 2020), *report and
   recommendation adopted,* No. 19-CV-6158 (MKB), 2021 WL 1138017 (E.D.N.Y.
   Mar. 25, 2021)....................................................................................24, 25

*Wahl v. Gen. Elec. Co.*,
   786 F.3d 491 (6th Cir. 2015) ....................................................................29

*Walker v. Nash*,
   No. 2:13-CV-3408-RMG, 2014 WL 1278599 (D.S.C. Mar. 27, 2014) .................................30

*Welborn v. Bank of N.Y. Mellon Corp.*,
   557 Fed. Appx. 383 (5th Cir. 2014).....................................................12, 13

*Zakora v. Chrisman*,
   44 F.4th 452 (6th Cir. 2022) ....................................................................7, 16

### STATUTES

MO. REV. STAT. ANN. § 516.280................................................................8

N.Y. GENERAL BUSINESS LAW § 349....................................................21, 22, 23

N.Y. GENERAL BUSINESS LAW § 350............................................................21

N.Y. SOCIAL SECURITY LAW § 145-b ...........................................................1

### OTHER AUTHORITIES

FED. R. CIV. P. 12....................................................................................1

FED. R. CIV. P. 15...............................................................................8, 16

FED. R. CIV. P. 15, Adv. Comm. Notes, 1991 Amendment....................................16, 17

Model State Pharmacy Act and Model Rules of the National Association of Boards of
   Pharmacy (August 2023), *available at* https://nabp.pharmacy/members/board-
   resources/model-pharmacy-act-rules/ ......................................................26

NABP Report of the Task Force on the Regulation of Pharmacy Benefit Managers,
   *available at* https://nabp.pharmacy/wp-content/uploads/2016/07/PBM_TF_Report.pdf........26

N.Y. C.P.L.R. 201.....................................................................................17

N.Y. C.P.L.R. 203 .................................................................................................................17

N.Y. C.P.L.R. 214 .................................................................................................................17

In their Motion, Defendants seek dismissal of only some of Plaintiffs' claims on a few limited grounds.[1]  Curiously, they do not raise numerous grounds on which they have consistently filed motions to dismiss in state court opioid cases around the country (*e.g.*, ERISA preemption, lack of duty and/or causation, etc.).  Plaintiffs can only assume this was a deliberate strategy to attempt to prevent this Court from deciding those issues in these cases.  Regardless, the grounds Defendants do raise in their Motion are without merit and should be rejected.  Plaintiffs' RICO claims are timely and sufficiently allege cognizable injuries to Plaintiffs' business and property.  Similarly, Rochester's state-law claims against the New Defendants[2] are timely and Rochester sufficiently alleges a direct injury for its GBL claims.[3]  Finally, Plaintiffs sufficiently allege that the Parent Company Defendants are (i) directly liable for their own conduct, and/or (ii) liable under an alter ego theory.  For these reasons, Defendants' Motion should be denied.

## ARGUMENT

Dismissal under Rule 12(b)(6) is not warranted where the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must "construe the complaint in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor."  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).  A Rule 12(b)(6) motion is typically considered "an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations."  *Id.* (citation omitted).[4]  Dismissal is warranted only if the allegations

---

[1]  Defendants do not seek dismissal of any of Lincoln County's state-law claims against the non-Parent Company Defendants or Rochester's public nuisance, negligence, or gross negligence claims against Express Scripts, Inc. and OptumRx, Inc.

[2]  Unless otherwise indicated, capitalized terms are defined the same as in Defendants' Motion.

[3]  Defendants also argue Rochester lacks standing to assert its SSL § 145-b claim.  Without conceding such argument has merit, Rochester agrees to withdraw its SSL § 145-b claim.

[4]  *See also Am. Premier Underwriters, Inc. v. Nat'l RR Passenger Corp.*, 839 F.2d 458, 464 (6th Cir. 2016); Dkt. #1203 (CT1 MTD Order) at 5; Dkt. #2568 (CT1 SOL MSJ Order) at 3.

"affirmatively show that the plaintiff can prove *no* set of facts that would entitle him to relief." *Dimond Rigging Co., LLC v. BDP Intl., Inc.*, 914 F.3d 435, 441 (6th Cir. 2019) (cleaned up).[5]

## I. DISMISSAL OF PLAINTIFFS' RICO CLAIMS IS NOT WARRANTED.

### A. Plaintiffs' RICO Claims Are Not Time-Barred.

Defendants argue that Plaintiffs' RICO claims against all Defendants, or, at a minimum, those against the New Defendants, are time-barred. Mot. at 5-13. Not so. First, Plaintiffs' RICO claims seeking equitable relief are exempt from the limitations period. Additionally, Plaintiffs' RICO claims for damages based on injuries resulting from predicate acts by any member of the Formulary & UM Enterprise (the "Enterprise") that occurred within the applicable limitations period are timely under the separate-accrual rule. Finally, Plaintiffs' complaints contain a litany of disputed facts related to their injuries, when they occurred, and when Plaintiffs discovered or should have discovered them. Thus, Defendants cannot demonstrate as a matter of law that the statute of limitations was not tolled under the injury-discovery rule, the fraudulent concealment doctrine, and/or the equitable tolling doctrine. Under these circumstances, as this Court has previously held, dismissal on statute of limitations grounds is inappropriate. *Supra* at 1-2.

### 1. *Plaintiffs' RICO claims seeking equitable relief are not time-barred.*

Plaintiffs seek *both* legal and equitable relief for their RICO claims against all Defendants. *Lincoln* Dkt. #41 (Lincoln Amended Complaint, herein "Lincoln") ¶ 813; *Rochester* Dkt. #112 (Rochester Amended Complaint, herein "Roch.") ¶ 817. As this Court has previously held, "RICO claims for equitable relief . . . are exempt from the operation of a limitations period." Dkt. #2568 (CT1 SOL MSJ Order) at 9-11.[6] Thus, Plaintiffs' RICO claims for equitable relief are timely.

### 2. *Plaintiffs' RICO claims for damages resulting from predicate acts that took place*

---

[5] *See also* Dkt. #3177 (*Cleveland Bakers* MTD Order) at 11; *Grover v. BMW of N.A., LLC*, 434 F. Supp. 3d 617, 630 (N.D. Ohio 2020).

[6] In support of this Court's prior ruling, Plaintiffs incorporate by reference the arguments made by the *Track One* plaintiffs on this issue. Dkt. 2179 (CT1 Ps' Opp. to SOL MSJ) at 23. *See also Smith v. FirstEnergy Corp.*, 518 F. Supp. 3d 1118, 1126 (S.D. Ohio 2021).

**within the limitations period are not time-barred.**

To the extent any predicate acts of Enterprise members took place within the applicable limitations period[7] and caused Plaintiffs additional harms, Plaintiffs' RICO claims seeking damages for such harms are timely under the separate-accrual rule. Under this rule, "the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). Courts in this Circuit have applied the separate-accrual rule to civil RICO claims.[8] Although the Sixth Circuit has yet to explicitly adopt the rule in the civil RICO context, it has applied the rule to claims under the Clayton Act,[9] and courts look to Clayton Act cases when deciding civil RICO limitations questions. *Klehr*, 521 U.S. at 189.[10]

---

[7] Rochester and Lincoln filed their Original Complaints on June 5, 2019, and Oct. 24, 2019, respectively, naming as defendants: Express Scripts Holding Company n/k/a Evernorth Health, Inc. ("Evernorth"); Express Scripts, Inc.; UnitedHealth Group Inc. ("UHG"); Optum, Inc.; OptumRx, Inc.; and, in the *Lincoln* case only, Express Scripts Pharmacy, Inc. *See Rochester* Dkt. #1-5 (Rochester Original Complaint); *Lincoln* Dkt. #1-1 (Lincoln Original Complaint). Plaintiffs added the New Defendants as parties when they filed their Amended Complaints on Dec. 15, 2023. *See* Roch.; Lincoln. Thus, as to the original PBM defendants, the four-year limitation period began no later than June 5, 2015, for Rochester, and Oct. 24, 2015, for Lincoln. As to the New Defendants, the four-year limitations period began no later than Dec. 15, 2019.

[8] *See, e.g., James v. McCoy*, 56 F. Supp. 2d 919, 933–34 (S.D. Ohio 1998) (where plaintiff alleged certain racketeering activities took place within the four-year limitations period, RICO claim based on those activities not time-barred), *aff'd*, 181 F.3d 101 (6th Cir. 1999); *Solidstrip Inc. v. U.S. Tech. Corp.*, No. 5:21-CV-0731, 2024 WL 1177968, at *5 & n.4 (N.D. Ohio Mar. 18, 2024) ("Following persuasive district court opinions in this circuit, this Court applies the [separate-accrual rule] to civil RICO claims."); *ArmorSource LLC v. Kapah*, No. 2:18-CV-905, 2019 WL 1118023, at *9–10 (S.D. Ohio Mar. 11, 2019); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2006 WL 319022, at *6 (E.D. Tenn. Feb. 8, 2006) (applying rule in civil RICO context, noting "[a] majority of the Circuit Courts of Appeal" have done so and the "Sixth Circuit has applied the separate accrual rule in the analogous antitrust context").

[9] *See Baltrusaitis v. Intl. Union, United Automobile, Aerospace and Agric. Implement Workers of Am.*, 86 F.4th 1168, 1178 & n.2 (6th Cir. 2023) (declining to decide whether rule applies in civil RICO context because plaintiffs failed to allege they sustained any new damages during limitations period).

[10] *See also Solidstrip*, 2024 WL 1177968, at *5 n.4 (applying separate-accrual rule in civil RICO context "aligns with the general trend of courts analyzing civil RICO claims similarly to civil antitrust claims"); *Trollinger*, 2006 WL 319022, at *3.

Here, Plaintiffs have plausibly alleged that Defendants and other members of the Enterprise committed predicate acts within the limitations period that caused Plaintiffs additional harm.[11] With respect to any such predicate acts committed by Defendants themselves, Plaintiffs' RICO claims against those Defendants seeking damages for additional harms are timely. Additionally, Plaintiffs' RICO claims against Defendants are timely to the extent they seek damages for Plaintiffs' additional harms caused by the predicate acts of other Enterprise members in furtherance of their conspiracy that took place within the limitations period.

Typically, a RICO conspiracy "is presumed to exist until there has been an affirmative showing that it has been terminated" or that "the purposes of the conspiracy have either been accomplished or abandoned." *U.S. v. Saadey*, 393 F.3d 669, 677-78 (6th Cir. 2005) (citations omitted). Moreover, the conspirators remain in the conspiracy—and remain liable for the actions of the conspiracy[12]—until they affirmatively withdraw.[13] Here, Plaintiffs plausibly allege (and Defendants do not dispute in their Motion) that Defendants were participants in a continuing RICO conspiracy with other Enterprise members when they committed predicate acts within the

---

[11] *See, e.g.,* Roch. ¶¶ 2, 49-52, 61-94, 104-105, 142, 167-168, 190, 193-196, 200, 208, 244, 283-285, 288, 291, 304-309, 314, 322, 325, 328-330, 351-352, 364, 371 n.116, 382, 385, 390, 392, 423, 433-434, 440, 446-447, 453-469, 472, 475-479, 481-485, 488-506, 509, 543-544, 549-564, 573, 579-584, 587-606, 638-692, 784-817; Lincoln ¶¶ 2, 49-52, 61-76, 86-87, 129, 151-152, 174, 177-180, 184, 192, 228, 267-269, 272, 275, 288-293, 298, 306, 309, 312-314, 335-336, 348, 366, 369, 374, 376, 407, 417-418, 424, 430-431, 437-453, 456, 459-463, 465-469, 472-491, 494, 528-529, 534-549, 558, 564-569, 572-577, 579-616, 648-702, 779-813.

[12] *See, e.g., Smith v. U.S.*, 568 U.S. 106, 111 (2013); *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000) ("[A] plaintiff c[an], through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962(d)."); *U.S. v. Corrado*, 286 F.3d 934, 937 (6th Cir. 2002) ("[S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators.") (quoting *Salinas v. U.S.*, 522 U.S. 52, 64 (1997)); *ArmorSource*, 2019 WL 1118023, at *9.

[13] *See, e.g., Smith*, 568 U.S. at 107, 112-13 (RICO conspirator's "membership in the ongoing unlawful scheme continues until he withdraws" through an affirmative act "to disavow or defeat the purpose' of the conspiracy") (citation omitted); *Saadey*, 393 F.3d at 678; *cf. Chiropractic Co-op. Ass'n of Michigan v. Am. Med. Ass'n*, 867 F.2d 270, 274–75 (6th Cir. 1989) (applying similar concepts in civil antitrust case).

limitations period that caused Plaintiffs additional harm.[14]  Moreover, Defendants offer no evidence or argument in their Motion that the RICO conspiracy terminated, or that they abandoned or withdrew from the conspiracy, more than four years prior to Plaintiffs filing their complaints.

Thus, at a minimum, Plaintiffs' RICO claims seeking damages for their additional harms caused by the predicate acts committed by any Enterprise members within the four-year limitations period are not time-barred and should not be dismissed.[15]

### 3. *Plaintiffs sufficiently allege that the injury-discovery rule applies.*

Plaintiffs' RICO claims against the original PBM defendants (*supra* fn.7) are also tolled under the discovery rule.  Under this rule, Plaintiffs' RICO claims for damages "accrued when they 'knew or should have known of [the] injury.'"  *Baltrusaitis*, 86 F.4th at 1177 (quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000)).  This determination depends on the facts and circumstances of the particular case.  Dkt. #2568 (CT1 SOL MSJ Order) at 13.  Defendants point to various allegations in the complaints they contend "leave no doubt that [Plaintiffs] 'knew or should have known of [the] injury' well before 2015."  Mot. at 6-7.  But that is only if Plaintiffs' allegations are construed in *Defendants'* favor.  Plaintiffs specifically allege that they could not have reasonably discovered their injuries until recently because "documents revealing those facts" had not yet been produced in discovery in the opioid litigation and were not publicly or otherwise

---

[14] *See, e.g.,* Roch. ¶¶ 199, 201-202, 204-207, 221-227, 242, 252, 270-272, 274-276, 278, 289, 293-296, 298, 323, 354, 378, 391, 422, 473, 568-570, 575-576, 607-674, 707-716; Lincoln ¶¶ 183, 185-186, 188-191, 205-211, 226, 236, 254-256, 258-260, 262, 273, 277-280, 282, 307, 338, 362, 375, 406, 457, 553-555, 560-561, 617-684, 840-852; *supra* fn.11.

[15] *See, e.g., Solidstrip*, 2024 WL 1177968, at *10 (denying summary judgment on RICO claims based on predicate acts occurring within limitations period pursuant to the separate accrual rule); *ArmorSource*, 2019 WL 1118023, at *9–10 (denying defendant's motion to dismiss RICO conspiracy claim where complaint allegations were "sufficient to plausibly raise an inference that [the defendant's] misconduct continued through 2017, well within the four-year limitations period); *Trollinger*, 2006 WL 319022, at *7–8 ("Plaintiffs meet the requirements of the separate accrual test that each illegal hiring constitutes a new and independent act that inflicted new and accumulating injury on the Plaintiffs. . . .  Therefore, the Court holds that [plaintiffs' civil RICO] claims for injury from illegal hirings occurring four years prior to the filing of the complaint are not time-barred.").

available. Lincoln ¶ 703; Roch. ¶ 694. Plaintiffs further allege they could not have discovered the scope and magnitude of their injuries earlier through reasonable diligence. Lincoln ¶ 709; Roch. ¶ 701. Taking these allegations as true, this Court cannot conclude at this time that Plaintiffs *should* have known of their injuries prior to the expiration of the applicable limitations period.[16]

### 4. *Plaintiffs sufficiently allege that the fraudulent concealment doctrine applies.*

Plaintiffs' RICO claims against Defendants are also tolled under the fraudulent concealment doctrine. *See Solidstrip*, 2024 WL 1177968, at *5 ("The RICO statute of limitations is tolled if the plaintiff properly invokes the fraudulent concealment exception."). In the Sixth Circuit, fraudulent concealment applies in a RICO action where the plaintiff demonstrates: "(1) defendants' wrongful concealment of their actions; (2) failure of the plaintiff to discover operative facts that are the basis of his cause of action; and (3) the plaintiff exercised due diligence in seeking out facts supporting a cause of action." *Id.; see also Dayco Corp. v. Goodyear Tire & Rubber Co*., 523 F.2d 389, 394 (6th Cir. 1975). Moreover, "where proof demonstrates a conspiracy, '[f]raudulent concealment ... may be established through the acts of co-conspirators.'" Dkt. #2568 (CT1 SOL MSJ Order) at 21 (quoting *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 980 (N.D. Ohio 2015)). Whether fraudulent concealment applies is a factual issue that generally should not be resolved on a motion to dismiss. *See Am. Premier*, 839 F.3d at 464.

The complaints allege at length how, despite Plaintiffs' due diligence, Defendants wrongfully prevented Plaintiffs from learning of Defendants' misconduct, Plaintiffs' injuries, and the related pattern of racketeering activity. *See, e.g.,* Lincoln ¶¶ 73, 648, 691, 694, 703-711, 776, 779, 781-782; Roch. ¶¶ 91, 638, 694-706, 741, 781, 784. This Court has consistently declined to dismiss claims on limitations grounds where plaintiffs asserted similar facts. *See, e.g.,* Dkt. #1203

---

[16] This case is therefore distinguishable from *Baltrusaitis* where the plaintiffs admittedly learned of their injuries nine years before filing suit and offered no explanation for the delay. 86 F.4th at 1178-79.

(CT1 MTD Order) at 4; Dkt. #2568 (CT1 SOL MSJ Order) at 22; Dkt. #3177 (*Cleveland Bakers* MTD Order) at 11-13.

Defendants argue fraudulent concealment is not itself enough to toll the RICO limitations period; rather, Plaintiffs must also allege "that Defendants had prevented Plaintiffs from *knowing that they had been injured*." Mot. at 7 (citing *Baltrusaitis*, 86 F.4th at 1178). They are wrong. In *Baltrusaitis*, the Sixth Circuit said that, in order to invoke equitable tolling, "the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment." 86 F.3d at 1178. Nothing in *Baltrusaitis* suggests that a plaintiff that knows it has been injured, but, despite due diligence, is unable to identify one or more of the parties responsible because of a defendant's wrongful concealment of its role, is precluded from invoking fraudulent concealment to extend that limitations period.[17] Moreover, "in evaluating the due-diligence element, the court should evaluate [the defendant's] acts of active concealment as a factor in determining whether the plaintiff's investigation was reasonable under the circumstances." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 447 (6th Cir. 2012). Thus, Plaintiffs sufficiently allege fraudulent concealment such that this Court cannot, at this time, conclude as a matter of law that their RICO claims are time-barred.

### 5. *Plaintiffs' RICO claims against the New Defendants are not time-barred.*

Contrary to Defendants' assertions, Plaintiffs' RICO claims against the New Defendants are not time-barred. In addition to the reasons discussed in § I.A.1-2 & 4 above, equitable tolling applies to preclude dismissal of these claims.[18] This doctrine applies if Plaintiffs can demonstrate

---

[17] In *Baltrusaitis* itself, the plaintiff learned of its injury nine years before filing suit, learned of the bribery scheme underpinning its claims *six years later*, and filed suit three years after that; plaintiff offered "no explanation for the delay." 86 F.3d at 1178. Nor did the Court in *Baltrusaitis* suggest that its discussion of equitable tolling was meant to modify in any way its prior holdings on fraudulent concealment.

[18] Defendants also argue that Plaintiffs' RICO claims against the New Defendants do not relate back to their Original Complaints under Federal Rule of Civil Procedure 15(c)(1)(C), relying on Sixth Circuit precedent and a prior ruling from this Court in this MDL. Mot. at 9-10 (citing *Zakora v. Chrisman*, 44 F.4th 452, 480, 482 (6th Cir. 2022) and Dkt. #739 (Order re: Ps' Mot.

(i) they pursued their rights diligently, and (ii) "some extraordinary circumstance stood in [their] way and prevented timely filing." Dkt. #2568 (CT1 SOL MSJ Order) at 18 (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011)). The applicability of equitable tolling depends on the circumstances of the particular case. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519 (6th Cir. 2007).

Here, equitable tolling applies to Plaintiffs' RICO claims against the New Defendants.[19] Plaintiffs pursued their rights as diligently as could be expected given Defendants' fraudulent concealment of the New Defendants' roles in the RICO Enterprise. Roch. ¶¶ 694-706; Lincoln ¶¶ 703-711. *Compare Baltrusaitis*, 86 F.4th at 1178-79 (RICO claims untimely where plaintiffs did not explain why they waited almost a decade to file their complaint). Moreover, extraordinary circumstances—in the form of a multi-year moratorium imposed by this Court—prevented Plaintiffs from filing their Amended Complaints and naming the New Defendants until after they were selected as PBM Bellwether Plaintiffs on October 27, 2023.[20] Before that, Plaintiffs were allowed to amend their complaints *only* to add or subtract Defendants based on ARCOS data,

---

to Modify CMO-1) at 5-6)). Plaintiffs understand this Court is bound by current Sixth Circuit precedent and, thus, do not seek to re-litigate this issue in this Opposition. However, Plaintiffs do not waive and expressly preserve their right to argue on appeal that the Sixth Circuit's narrow interpretation of Rule 15(c)(1)(C) is incorrect and inconsistent with the United States Supreme Court's opinion in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). *See, e.g., Erie Indem. Co. v. Keurig, Inc.*, No. 1:10-CV-02899, 2011 WL 2893013, at *3 (N.D. Ohio July 15, 2011); *Abdell v. City of New York*, 759 F. Supp. 2d 450, 456-57 (S.D.N.Y. 2010).

[19] Defendants appear to imply that Lincoln County has not invoked the federal doctrine of equitable tolling because it only references a state tolling statute (MO. REV. STAT. ANN. § 516.280) in its Amended Complaint. Mot. at 11. But Defendants ignore Lincoln County's allegations as a whole, which clearly plead plausible facts to support equitable tolling of its claims. Lincoln ¶¶ 702-711. It is these factual allegations that determine whether Lincoln County has plausibly pled that its claims should be equitably tolled. *See Knapp v. City of Columbus*, 93 Fed. Appx. 718, 720 (6th Cir. 2004) (unpublished) ("The court's duty is to look to the facts and grant the necessary relief as justice requires—not to demand that certain citations or phrases are used.").

[20] *See* Dkt. #5319 (Order on M to Amend) at 2-3 (noting PBM Bellwether Plaintiffs' December 2023 motion seeking leave to amend the operative PBM Bellwether Complaints was not untimely "[b]ecause the "PBM Bellwether Plaintiffs had no earlier opportunity to amend their PBM Bellwether complaints with PBM-specific claims or to add PBM-specific entities"").

which was not applicable to the New Defendants.  *Id*. at 2.  Once Plaintiffs received critical documents from various entities and following their selection as PBM Bellwether Plaintiffs, they promptly moved to amend their complaints.  Accordingly, in these unique circumstances, the facts suggest that equitable tolling might apply such that the Court, at this stage of proceedings, should not dismiss Plaintiffs' RICO claims against the New Defendants as time-barred.

### B.  Plaintiffs Sufficiently Allege Injuries to Business or Property.

Plaintiffs allege that Defendants' wrongdoing in creating the opioid epidemic has injured them in their business and property because Plaintiffs have: (1) borne extraordinary costs to provide additional public services; (2) been forced to purchase naloxone; (3) suffered diminished property values; and (4) lost tax revenue.  Each of these constitutes a cognizable injury to "business or property" within the meaning of RICO.  This Court has already held as much for the first two injuries in a nearly identical context.  Similar reasoning applies to the latter two injuries. Defendants identify no change in binding authority that would support a different result.

#### 1.  *This Court previously recognized that extraordinary costs of public services and costs for purchasing Naloxone are cognizable RICO injuries.*

Defendants, relying almost exclusively on *Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969 (9th Cir. 2008), contend that Plaintiffs' increased expenditures for public services are not injuries to "business or property."  Mot. at 14-17.  As explained below, however, this Court has already rejected that argument.  And Defendants make no argument that the law or circumstances in this Circuit have changed such that this Court should now revisit that ruling.[21]

In the *Track One* cases, this Court found the Ninth Circuit's holding in *Canyon* to be inapplicable to the governmental plaintiffs' RICO claims based on their extraordinary costs to abate the opioid crisis because "neither the Sixth Circuit nor the Supreme Court have adopted [its]

---

[21]  Indeed, Defendants seemingly ignore this Court's stated "inten[t] to adhere to all formal rulings made in the prior MDL tracks" and its warning that parties should only make "***new*** arguments that are meaningfully different from those raised earlier and resolved in prior Court rulings." Dkt. #5282 (PBM CMO) at 3 (emphasis in original).

holding." Dkt. #1203 (CT1 MTD Order) at 17-20. That fact has not changed. Defendants may wish this case were being litigated in the Ninth Circuit, but no amount of out-of-circuit arguments can make that so. The law governing this Court has not changed since *Track One*, and neither should the outcome of this identical issue. This alone should end the inquiry.

This Court also rejected the argument that *Canyon* endorsed "a bright line rule" that "governmental entities are barred from seeking RICO claims for [any] services provided in their sovereign or quasi-sovereign capacities." *Id.* at 19. Instead, this Court more narrowly interpreted *Canyon's* statement "that governmental entities are not injured in their property based *solely* on the expenditure of money to act governmentally," to mean that "governmental entities might be able to assert an injury to their property based on the expenditure of money plus something else, perhaps, for example, the assumption of a statutory burden relinquished by a defendant." *Id.* Because the *Track One* plaintiffs alleged that "Defendants have forced Plaintiffs to go far beyond what a governmental entity might ordinarily be expected to pay to enforce the laws or promote the general welfare," this Court held they alleged a cognizable RICO injury even under *Canyon*. *Id.*[22] This Court further observed that *Canyon* permits government plaintiffs to bring RICO claims based on "costs associated with doing business in the marketplace" and that the *Track One* plaintiffs' costs in "purchasing naloxone to prevent future fatal overdoses" qualified as such a RICO injury. Dkt. #1203 (CT1 MTD Order) at 19-20.[23]

Plaintiffs here allege the same injuries to "business or property" held to be cognizable injuries in *Track One*. Plaintiffs allege they have incurred extraordinary expenditures for public services to abate the opioid crisis. Roch. ¶¶ 83-86, 104-105, 588-591, 813(c)-(d), (f)-(i); Lincoln ¶¶ 65-68, 86-87, 599-601, 809(c), (e)-(f). Plaintiffs also allege that, because of Defendants'

---

[22] This Court's decision is consistent with decades of Supreme Court precedent recognizing that "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497-98 (1985).

[23] This Court has consistently adhered to its *Track One* ruling throughout this MDL. *See, e.g.,* Dkt. #3285 (*Monroe* MTD Order) at 27-29; Dkt. #3274 (*Broward* MTD Order) at 13; Dkt. #3253 (*West Boca* MTD Order) at 25; Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 22-23.

conduct and the resulting opioid crisis, they have been forced to buy naloxone to respond to opioid overdoses.  Roch. ¶ 813(e); Lincoln ¶ 809(d).  The cost of purchasing naloxone to revive residents suffering otherwise life-ending opioid overdoses is not an ordinary government expenditure; absent the opioid crisis that was the known consequence of the RICO scheme, it would not have been made.  In other words, prior to the opioid epidemic, naloxone was not a line item in a typical city budget.  The forced expenditure of naloxone is therefore an independent injury sufficient to support Plaintiffs' RICO claims.

Because this Court already recognized these exact injuries as cognizable RICO injuries under Sixth Circuit (and even Ninth Circuit) law, it should deny Defendants' motion to dismiss Plaintiffs' RICO claims.

### 2.    The other out-of-circuit cases cited by Defendants do not compel a different result.

Defendants urge this Court to revisit its analysis of what constitutes a "business or property" injury in light of two recent opinions: *City & County of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610 (N.D. Cal. 2020), and *City of Almaty v. Khrapunov*, 956 F.3d 1129 (9th Cir. 2020).  Mot. at 16-17.  But neither of those authorities is binding on this Court.  In any event, neither decision counsels a different result here.

In *San Francisco*, Judge Breyer addressed whether public entities can state a RICO claim based on extraordinary expenditures for public services necessitated by the opioid epidemic, and concluded they cannot, based in part on *Canyon*.  491 F. Supp. 3d at 648-650.  Of course, he was bound by Ninth Circuit law.  *Id*. at 649 (distinguishing *Track One* decision as being based on Sixth Circuit law).  Regardless, Defendants' gloss on Judge Breyer's interpretation of *Canyon*, and its implications for this case, is incomplete.  As Judge Breyer recognized, this Court read *Canyon's* statement that "'a governmental body . . . cannot claim to have been injured in its . . . property for RICO purposes based *solely* on the fact that it has spent money in order to act governmentally'" to mean that "governmental entities *could* assert a cognizable injury to their property based on expenditures and 'something else.'"  *Id*. at 650 (cleaned up) (quoting Dkt. #1203 (CT1 MTD

Order) at 18-19 (quoting *Canyon*, 519 F.3d at 976)). In contrast, Judge Breyer's contrary conclusion turned on *Canyon's* use of the word "solely" in a different sentence, in which "solely" differentiated between government expenditures for services and the government services themselves, and whether the latter could serve as an alternate basis for a property interest. *Id.* ("As the County cannot satisfy the requirement of injury to a 'specific property interest' based *solely* on its expenditure of money to provide public services, we must examine whether the County can claim a property interest in the services *themselves*.") (citing *Canyon*, 519 F.3d at 977). Judge Breyer did not provide an alternate interpretation of the language this Court relied upon. *Id.*

Defendants highlight (at 17) Judge Breyer's observation that "nothing" in *Canyon* "suggests that the Ninth Circuit distinguished between 'extraordinary costs' and 'ordinary costs[.]'" 491 F. Supp. 3d at 651. But this Court did not hold that extraordinary expenses, by themselves, were sufficient to allege a RICO injury. Rather, it concluded that *Canyon* permitted a RICO injury based on extraordinary government expenditures for services that *would not have been provided in the absence of defendants' wrongdoing*. Dkt. #1203 (CT1 MTD Order) at 19. No subsequent opinion has refuted or otherwise addressed that important distinction. Moreover, Defendants' broad interpretation of *Canyon* mistakenly relies on *Almaty*. Mot. at 16. But in *Almaty* the Ninth Circuit specifically declined to rule whether plaintiff lacked RICO standing based on "injuries sustained in its sovereign capacity" because the defendant waived the argument. 956 F.3d at 1134. Instead, the *Almaty* ruling turned on lack of proximate cause. *Id.* at 1130, 1133. In short, *San Francisco* and *Almaty* cast no doubt on this Court's previous conclusion that, as a matter of Sixth Circuit (or Ninth Circuit) law, extraordinary government expenditures can be cognizable RICO injuries.

Defendants' reliance on Second and Fifth Circuit cases fares no better. Mot. at 17 (citing *Town of West Hartford v. Operation Rescue*, 915 F.2d 92 (2d Cir. 1990) and *Welborn v. Bank of N.Y. Mellon Corp.*, 557 Fed. Appx. 383 (5th Cir. 2014)). This Court is bound by Sixth Circuit law

when construing federal law.[24]  But even if Second Circuit precedent were somehow applicable in the Rochester case, that Circuit has clarified that the relevant language in *Hartford* (found at 915 F.2d at 103–04), is merely *dicta*.[25]  Moreover, neither *Hartford* nor *Welborn* addressed whether a public entity's *extraordinary* costs, like those borne by Plaintiffs here, could qualify as an injury to property for RICO purposes.

Finally, Defendants rely on *San Francisco* to suggest that Plaintiffs' alleged costs for Naloxone or in purchasing or reimbursing prescription opioids are not cognizable costs of doing business in the marketplace within the meaning of *Canyon*.  Mot. at 18.  But costs for purchasing or reimbursing prescription opioids were not at issue in *San Francisco*, and, as explained above, this Court already rejected a broad reading of *Canyon* that would exclude costs made by a government entity as a consumer in the marketplace.  Dkt. #1203 (CT1 MTD Order) at 20.

### 3.  Plaintiffs also allege cognizable injuries to real property.

Plaintiffs also allege they suffered injury to real property, in particular diminished real property values.  *See, e.g.*, Roch. ¶¶ 606, 691, 765, 769, 802, 808, 812, 813(k), 813(l) (diminished property values); Lincoln ¶¶ 616, 701, 797, 760, 808, 809(h), 809(i) (diminished property values). Defendants do not argue that diminished real property values are not a cognizable RICO injury. Instead, they argue only that Plaintiffs have not identified specific real property that lost value. Mot. at 18.  But at this stage in the proceedings Plaintiffs are not required to do so, just as they

---

[24]  *See, e.g., In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 (6th Cir. 2003) (in MDL proceeding, transferee court applies the substantive federal law of the circuit in which it is located); Dkt. #1499 (*Muscogee* R&R) at 21 n.15 (applying rule in RICO context), *adopted in relevant part*, Dkt. #1680 (*Muscogee* MTD Order) at 22-23.

[25]  *See Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 132 n.40 (2d Cir. 2001); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008) ("*Smokes-Spirits I*") ("We see no reason to import an additional standing requirement on municipalities for RICO claims, and thus expressly reject our dicta to the contrary in *Town of West Hartford*."), *rev'd and remanded on other grounds sub nom. Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010).

would not be required at this stage to allege the specific amounts of their damages.[26]  It is sufficient that Plaintiffs have identified a specific injury in the form of diminished property values.

### 4.  *Lost tax revenues are also a cognizable injury to business or property.*

Plaintiffs also allege loss of tax revenue due to the opioid crisis in their communities. Roch. ¶ 813(j)-(l); Lincoln ¶ 809(g)-(i).  These costs constitute RICO injuries to business or property.  Dkt. #1025 (CT1 R&R) at 13-15; *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("Money, of course, is a form of property."); *European Community v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 492-93 (E.D.N.Y. 2001) ("[I]njuries in the form of lost tax revenues . . . are at bottom, claims for lost money."); *City of New York v. Gordon*, 1 F. Supp. 3d 94, 113 (S.D.N.Y. 2013) (city's complaint alleging lost tax revenue "easily satisfies [RICO's injury to business or property] element"); *Smokes-Spirits I*, 541 F.3d at 445 ("lost taxes can constitute injury to 'business or property' for purposes of RICO").[27]

In sum, Plaintiffs allege cognizable injuries to business and property under Sixth Circuit law such that this Court should deny Defendants' motion to dismiss the RICO claims.

## II.  DISMISSAL OF ROCHESTER'S STATE-LAW CLAIMS IS NOT WARRANTED.

### A.  Rochester's State-Law Claims Against the New Defendants Are Not Time-Barred.

Rochester's state-law claims against the New Defendants are timely because (i) no statute of limitations bars its public nuisance claim for equitable relief, (ii) its state-law claims for damages are based on continuing wrongs and relate back to Rochester's Original Complaint, and (iii) it plausibly alleges that equitable tolling applies.

---

[26] *See, e.g.*, *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791-92 (3d Cir. 1984) (plaintiff need not allege specific evidentiary details needed to prove his claim at trial to satisfy Rule 9(b)); *Potomac Elec. Power Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260, 265-66 (4th Cir. 2001) (RICO plaintiff need not allege quantity of damages).

[27] Defendants' cited authorities (at 18) are not to the contrary.  *See Hemi Grp.*, 559 U.S. at 8 (dismissing RICO claim for lack of proximate cause, but declining to decide "whether the City's allegations of lost tax revenue constitute an injury to its 'business or property'"); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (same).

### 1. *Rochester's public nuisance claim for equitable relief is not time-barred.*

Under New York law, a claim seeking equitable relief based on a continuing public nuisance "accrues anew each day" and "is not time-barred." *Stanton v. Town of Southold*, 698 N.Y.S.2d 258, 259–60 (N.Y. App. Div. 2d Dept. 1999) (citation omitted).[28] Here, Rochester alleges the New Defendants created and/or contributed to a continuing public nuisance and seeks the prospective equitable remedies of abatement and injunctive relief.[29] Thus, dismissal of Rochester's public nuisance claim against the New Defendants is not warranted.

### 2. *Rochester's state-law claims for damages against the New Defendants are timely under New York's continuing wrong doctrine.*

Rochester's state-law claims for damages against the New Defendants are also timely because they are based on continuing wrongs.

New York courts apply the continuing wrong doctrine in nuisance actions

> "where the harm sustained by the complaining party is not exclusively traced to the day when the original objectionable act was committed. The rule is based on the principles that continuous injuries create separate causes of action barred only by the running of the statute of limitations against each successive trespass. The repeated offenses are treated as separate rights of action and the limitations period begins to run as to each upon its commission."

*Capruso v. Village of Kings Point*, 16 N.E.3d 527, 531 (N.Y. 2014) (quoting *Covington v. Walker*, 819 N.E.2d 1025, 1027–28 (N.Y. 2004)). Thus, a plaintiff's right to seek damages for nuisance "continues as long at the nuisance exists." *In re Opioid Litigation*, No. 400000/2017, 2019 WL 2996570, at *6 (N.Y. Sup. Ct. June 21, 2019) ("*Opioid III*").[30] "That such a nuisance may have

---

[28] *See also, e.g., Sova v. Glasier*, 596 N.Y.S.2d 228, 230 (N.Y. App. Div. 4th Dept. 1993); *Kearney v. A. Cement Co.*, 306 N.Y.S.2d 45, 47 (N.Y. App. Div. 3d Dept. 1969); *Renwick v. Morris*, 1842 WL 4382 (N.Y. Sup. Ct. 1842), *aff'd*, 1844 WL 4558 (N.Y. Sup. Ct. 1844); *New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 27, 29-30 (E.D.N.Y. 2011).

[29] *See, e.g.,* Roch. ¶¶ 33, 58, 60-88, 105, 585-590, 692-693, 724-725, 727, 753, 755, 762, 767, 770-773, 775, 783.

[30] *See also Lucchesi v. Perfetto*, 899 N.Y.S.2d 341, 343 (N.Y. App. Div. 2d Dept. 2010); *Beneke v. Town of Santa Clara*, 846 N.Y.S.2d 681, 682 (N.Y. App. Div. 3d Dept. 2007); *1050 Tenants Corp. v. Lapidus*, 735 N.Y.S.2d 47, 49 (N.Y. App. Div. 1st Dept. 2001); *Masuda v. Mazzei*, 72 Misc. 3d 1209(A), 149 N.Y.S.3d 890, at *7 (N.Y. Sup. Ct. 2021); *Leo v. General Elec. Co.*,

existed for more than three years, then, does not bar the cause of action"; rather, it affects only the *amount* of past damages that may be recovered. *Opioid III*, 2019 WL 2996570, at *6.

New York courts also apply the continuing wrong doctrine to negligence and statutory claims.[31] "Where there is a series of continuing wrongs, the continuing wrong doctrine tolls the limitation period until the date of the commission of the last wrongful act[.]" *Palmeri v. Willkie Farr & Gallagher LLP*, 69 N.Y.S.3d 267, 271 (N.Y. App. Div. 1st Dept. 2017). *See also Harvey*, 827 N.Y.S.2d at 6–7; *Fischman*, 2023 WL 5288081, at *21.

Rochester alleges that the New Defendants' wrongful conduct (i) continues to this day, (ii) continues to injure Rochester to this day, and (iii) created and/or contributed to a public nuisance in Rochester that continues to this day. *See, e.g.,* Roch. ¶¶ 2, 8, 56-57, 194, 205, 232, 270, 274, 276, 394, 579, 753, 835; *supra* fn.29. Thus, under the continuing wrong doctrine, Rochester's state-law claims against the New Defendants are not time-barred. *See, e.g., People by James v. JUUL Labs, Inc.*, 181 N.Y.S.3d 537, 540–41 (N.Y. App. Div. 1st Dept. 2023); *Opioid III*, 2019 WL 2996570, at *6; *Opioid II*, 2018 WL 4827862, at *14.

### 3. *Rochester's state-law claims for damages against the New Defendants also relate back to its Original Complaint.*

Contrary to Defendants' assertions (Mot. at 19-20), Rochester's state-law claims against the New Defendants relate back to its Original Complaint. Defendants rely on *Zakora*, but in that case the court addressed whether federal claims asserted against new defendants related back under Rule 15(c)(1)(C). 44 F.4th at 460, 480-82. Under Rule 15(c)(1)(A), however, "[a]n amendment to a pleading relates back to the date of the original pleading when: (A) the law that provides the applicable statute of limitations allows relation back[.]" FED. R. CIV. P. 15(c)(1)(A). This

---

No. 210181985, 1991 WL 11764393 (N.Y. Sup. Ct. Nov. 22, 1991).

[31] *See, e.g., 461 Broadway, LLC v. Village of Monticello*, 42 N.Y.S.3d 419, 421 (N.Y. App. Div. 3d Dept. 2016); *Harvey v. Metro. Life Ins. Co.*, 827 N.Y.S.2d 6, 6–7 (N.Y. App. Div. 1st Dept. 2006); *The People of the State of New York v. Fischman*, No. 452353/2018, 2023 WL 5288081, at *21 (N.Y. Sup. Ct. Aug. 03, 2023); *In re Opioid Litigation*, No. 4000002017, 2018 WL 4827862, at *14 (N.Y. Sup. Ct. July 17, 2018) ("*Opioid II*").

provision makes clear that Rule 15 "does not apply to preclude any relation back that may be permitted under the applicable limitations law." FED. R. CIV. P. 15, Adv. Comm. Notes, 1991 Amendment. Thus, "[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim." *Id.*[32]

The "law that provides the applicable statute of limitations" for each of Rochester's state-law claims is Article 2 of New York's Civil Practice Law and Rules ("CPLR"). *See* N.Y. C.P.L.R. 201, 214(2), (4). Article 2 also includes provisions for when relation back is allowed. *Id.* at 203(c), (f); *Nemeth v. K-Tooling*, 224 N.E.3d 513, 518 (N.Y. 2023) ("Section 203 of the CPLR codifies the relation back doctrine[.]"). Claims against new parties relate back under CPLR 203(c) when

> (1) the claims arise out of the same conduct, transaction or occurrence; (2) the new party is "united in interest" with an original defendant and thus can be charged with such notice of the commencement of the action such that a court concludes that the party will not be prejudiced in defending against the action; and (3) the new party knew or should have known that, but for a mistaken omission, they would have been named in the initial pleading.

*Nemeth*, 224 N.E.3d at 516.

Here, Rochester's state-law claims against the New Defendants arise out of the same conduct, transaction, or occurrence as the claims in the Original Complaint. In its Original Complaint, Rochester alleged that the misconduct of various opioid supply chain participants, including PBMs and pharmacies, created and/or contributed to an opioid epidemic that has harmed, and continues to harm, Rochester and its community. *See, e.g.,* Roch. Original Comp. ¶¶ 1-59, 244-251, 279, 386-443, 471-1104. This misconduct includes, *inter alia*, (i) colluding with opioid manufacturers to deceptively market, and otherwise facilitating the oversupply of, prescription opioids, and (ii) failing to prevent diversion of prescription opioids when dispensing those drugs. *Id.* In its Amended Complaint, Rochester alleges that this same misconduct by the New Defendants created and/or contributed to the same opioid epidemic in its community. *See* Roch.

---

[32] *See also Lopez v. Roethel*, No. 2:18-CV-107, 2019 WL 13212616, at *3 (W.D. Mich. Sept. 23, 2019); *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 121 (E.D.N.Y. 2009).

Each New Defendant is also "united in interest" with one or more Original PBM Defendants[33] such that it can be charged with notice of the commencement of the original action and will not be prejudiced in defending against the action.  Courts "look to whether the parties' interest 'in the subject-matter is such that they stand or fall together and that judgment against one will similarly affect the other[.]'"  *Nemeth*, 224 N.E.3d at 521 (citation omitted).[34]  This test is satisfied here.  Each New Defendant is a subsidiary and/or affiliate of at least one Original PBM Defendant, and many of them share a principal place of business with an Original PBM Defendant.  Roch. ¶¶ 106-107, 109-110, 112, 115, 117, 119-120, 122, 129, 134-137, 143, 146-147, 150, 155, 158, 160, 164-165, 169-170, 173, 176-178, 182-183, 186, 191.  Original PBM Defendants Evernorth and UHG also control the enterprise-wide policies that inform all of their respective subsidiaries' businesses (including the New Defendants), and Rochester includes other veil-piercing allegations in its Amended Complaint.  *Id*. at ¶¶ 107, 146-148, 152, 717-718.  And each New Defendant is represented by the same counsel as its related Original PBM Defendants.  Mot. at 30.  New York courts have held such circumstances sufficient to show unity in interest.[35]

Finally, the New Defendants knew or should have known that, but for Rochester's inadvertent omission, they would have been named in the Original Complaint.  Under New York law, relation back is permissible when the new defendant was not included in the original complaint because of either a "simple oversight or a mistake of law (i.e., that the amending party

---

[33] The "Original PBM Defendants" in *Rochester* are: Evernorth; Express Scripts, Inc.; UHG; Optum, Inc.; and OptumRx, Inc.

[34] The New York Court of Appeals recently confirmed that vicarious liability is not a prerequisite to satisfying the "united in interest" test.  *Id.* at 521–22.

[35] *See, e.g., Nemeth*, 224 N.E.3d at 521 (unity of interest found where, *inter alia*, the same attorney represented new and original defendants throughout litigation); *Estevez v. SLG 100 Park LLC*, 189 N.Y.S.3d 53, 56–57 (N.Y. App. Div. 1st Dept. 2023) (unity of interest found where new and original defendants "were closely interrelated, centrally controlled, and represented to the public as a single organization"); *Donovan v. All-Weld Products Corp.*, 824 N.Y.S.2d 44, 45 (N.Y. App. Div. 1st Dept. 2006) (finding unity of interest between parent company and wholly owned subsidiary); *Amaya*, 645 F. Supp. 2d at 123 (veil-piercing allegations create "a unity of interest between [new and original defendants] because, if proven, [new defendant] will be personally liable for their obligations").

failed to recognize the other party as a legally necessary party)[.]" *Nemeth*, 224 N.E.3d at 519. The mistake need not be excusable. *Id.* at 519-20; *Buran v. Coupal*, 661 N.E.2d 978, 980, 983 (N.Y. 1995). The omission of the New Defendants in the Original Complaint was not a deliberate choice of Rochester or motivated by gamesmanship. Rather, at that time, Rochester simply failed to recognize the New Defendants as legally necessary parties because it was unaware of and/or misunderstood the specific roles they played that would subject them to potential liability. Roch. ¶¶ 2, 252, 694, 701-706.[36] But the New Defendants certainly knew and understood their own roles with respect to prescription opioids. *Id.* at ¶¶ 697, 705. And the Original Complaint makes clear that Rochester intended to sue those responsible for flooding its community with those drugs. *See* Roch. Original Comp. Thus, the New Defendants knew or should have known that, but for this inadvertent omission, they would have been named in the Original Complaint.[37]

For these reasons, Rochester's state-law claims against the New Defendants relate back to its Original Complaint. As Defendants do not argue that the state-law claims asserted in the Original Complaint are time-barred, they similarly have failed to demonstrate that the state-law claims asserted against the New Defendants are time-barred.

### 4. *Rochester plausibly alleges that equitable tolling applies to its state-law claims against the New Defendants.*

Even assuming, *arguendo*, that its state-law claims were untimely, Rochester has plausibly alleged that equitable tolling applies. Under New York law, equitable tolling precludes "a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing which produced the long delay between the accrual of the cause of action and the

---

[36] This is unsurprising, as Defendants took steps to conceal this information for as long as possible; only after the New Defendants' roles in facilitating the oversupply and diversion of prescription opioids was made public through discovery in other opioid litigation, did Rochester become aware of their potential liability in this case. *Id.* at ¶¶ 252, 694, 696-697, 700, 702-706.

[37] *Cf. Bayerische Landesbank v. Aladdin Capital Mgt. LLC*, 289 F.R.D. 401, 406-07 (S.D.N.Y. 2013) (claim related back under Rule 15(c)(1)(C) where new defendant should have known that, but for plaintiff's misunderstanding of new defendant's role in the conduct giving rise to plaintiff's claims, it would have been sued alongside its subsidiary in the original complaint).

institution of the legal proceeding." *Putter v. N. Shore U. Hosp.*, 858 N.E.2d 1140, 1142 (N.Y. 2006) (cleaned up).  The plaintiff "may not rely on the same act that forms the basis for the claim[,]" but instead "must point to distinct acts designed to conceal the prior wrongdoing." *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 66-68 (S.D.N.Y. 2020) (citation omitted).  Whether equitable tolling applies is typically a question of fact.  *See Putter*, 858 N.E.2d at 1143.

Defendants argue that Rochester fails to plausibly allege its entitlement to equitable tolling because it relies on all the same deceptive and fraudulent conduct that forms the basis of its substantive claims.  Mot. at 22-23.  Not so.  Rochester alleges certain distinct affirmative misconduct of Defendants that does not form the basis of its state-law claims, but that prevented it from bringing suit against the New Defendants earlier.[38]  Thus, because it is plausible that equitable tolling applies, dismissal of Rochester's state-law claims against the New Defendants on statute of limitation grounds is inappropriate.  *See, e.g., Sater*, 503 F. Supp. 3d at 64 ("[B]ecause it is not clear on the face of the complaint that equitable estoppel does not toll the statute of limitations, the Court declines to hold, in this posture, that any of the claims are untimely.").

**B.  Rochester Sufficiently Alleges Direct Injuries Arising from Its GBL Claims.**

Defendants argue Rochester's GBL claims must be dismissed because its "alleged injuries are wholly derivative of alleged injuries suffered by consumers."  Mot. at 24-27.  This argument is without merit and should be rejected.

Rochester's injuries are its own.  Rochester alleges that Defendants' conduct foreseeably and purposefully led to the oversupply and diversion of opioids in Rochester's communities, increasing crime, decreasing public safety, and straining its law enforcement services.  *See, e.g.,*

---

[38]  *See, e.g.,* Roch. ¶ 696 ("Defendants undertook efforts . . . to purposefully conceal their wrongful conduct by: . . . (5) failing to make public or otherwise produce nonpublic information, over which Defendants had exclusive possession, dominion, and control, that would have revealed the truth; (6) entering into broad confidentiality agreements with any entity in the supply chain with whom they contracted; (7) suing governmental and other entities to block the release of details in their agreements with the Opioid Manufacturers and pharmacies . . ."), ¶ 700 ("The PBM Defendants and their mail order pharmacies hid from . . . Plaintiff . . . the true nature of the association between each member of each PBM Enterprise."), ¶¶ 701-706.

Roch. ¶¶ 83, 590-591, 714, 728, 751, 768, 774, 813(e)-(f), 813(i), 816, 844, 857.[39]  The opioid abuse and addiction crisis as a whole has put a substantial strain on Rochester's ability to provide essential governmental services and programs and has forced it to expend and divert city resources to address the crisis.  *See, e.g.,* Roch. ¶¶ 83-84, 100, 104-105, 588-591, 714, 728, 766, 768-769, 774-775, 813(b), 813(d)-(f), 813(i)-(l), 816.  These are distinct injuries suffered by Rochester. Similarly, Rochester's allegations that it purchased prescription opioids that it would not have purchased but for Defendants' misconduct, asserts an injury of Rochester's that occurred regardless of whether the individual patient receiving the prescription opioids was personally injured or not.  *Id.* at ¶¶ 590, 774, 813(a), 816.

Notably, a New York trial court held in another opioid action that nearly identical allegations by county plaintiffs against opioid manufacturers and distributors were sufficient to satisfy the direct injury element under GBL §§ 349 & 350.  *See In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *19 (N.Y. Sup. Ct. June 18, 2018) ("*Opioid I*"); *Opioid II*, 2018 WL 4827862, at *9; *see also Opioid III*, 2019 WL 2996570, at *8.  Similar allegations were also held to be sufficient to overcome a motion to dismiss GBL §§ 349 and 350 claims in *In re JUUL Labs, Inc., Mktg., Sales Practices, and Products Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020).  In *Juul*, a school district brought GBL claims against an e-cigarette device manufacturer, alleging the manufacturer deceptively marketed the device to students, creating a youth e-cigarette crisis to which the school district was compelled to respond.  *Id.* at 577–78, 666. Specifically, the school district "spent significant and unexpected levels of time and resources to address the pervasiveness of youth e-cigarette use and had to divert resources and deploy new ones to combat the problem."  *Id.* at 577–78.  The court held the plaintiff sufficiently alleged it sustained

---

[39]  *Cf. N. State Autobahn, Inc. v. Progressive Ins. Group Co.*, 953 N.Y.S.2d 96, 105 (N.Y. App. Div. 2d Dept. 2012) (§ 349 injury element satisfied where plaintiffs' alleged injury "was sustained when customers were unfairly induced into taking their vehicles from the plaintiffs' shop to a DRP shop regardless of whether the customers ultimately ever suffered pecuniary injury as a result of the Progressive defendants' deception").

non-derivative damages.  *Id.* at 668.[40]  Notably, the court rejected the defendant's argument "that if the students had not been deceived into using JUUL products, then [the school district] would not have to incur any of the alleged costs in responding to the students' rampant use of JUUL products[,]" reasoning that "[t]he deception of the students is a harm that occurred independent of the harm suffered by [the school district]."  *Id.* at 668-69.

Defendants argue that the New York trial court's *Opioid* holdings are "irreconcilable with New York law as articulated by the New York Court of Appeals in *Blue Cross* and *Smokes-Spirits*."  Mot. at 26-27 (citing *Blue Cross and Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140 (N.Y. 2004) and *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834 (N.Y. 2009) ("*Smokes-Spirits II*")).  That simply is not true.  In *Blue Cross*, a health insurer brought a GBL § 349 action against tobacco companies, alleging they "engaged in deceptive practices designed to mislead the public regarding the harmful and addictive properties of cigarette smoking" and, "as a consequence [of such conduct], medical costs increased, resulting in actual damages to plaintiff insurers who bore such costs."  818 N.E.2d at 1142-43.  The court held that "claims by a third party payer of health care costs seeking to recover costs of services provided to subscribers as a result of those subscribers being harmed by a defendant's or defendants' violation of [GBL] § 349 [were] too remote to permit suit under that statute[.]"  *Id.* at 1143.  The court reasoned that, under New York law, "an insurer or other third-party payer of medical expenditures may not recover derivatively for injuries suffered by its insured[;]" rather, its "sole remedy is in equitable subrogation."  *Id.* at 1144.  Thus, although the plaintiff "actually paid the costs incurred by its subscribers, its claims are nonetheless indirect because the losses it experienced arose *wholly* as a result of smoking related illnesses suffered by those subscribers."  *Id.* at 1145 (emphasis

---

[40]  The court stated: "These injuries do not rely upon injuries sustained by any other individual, such as the damages or injuries suffered by student users of JUUL.  The alleged injuries were incurred in fulfilling independent duties as educators and caretakers.  Three Village claims that it was compelled to respond to the crisis by, for instance, diverting limited resources, devising educational campaigns, spending funds on monitoring systems, and incurring costs to alter the health curriculum."  *Id*.

added).  The present case is distinguishable because, as discussed above, Rochester alleges its own

injuries.  *Supra* at 21.  Unlike in *Blue Cross*, Rochester is "not simply seeking to recoup medical

and drug costs incurred by their employees and Medicaid beneficiaries[.]"  *Opioid I*, 2018 WL

3115102, at *19.[41]

       *Smokes-Spirits II* is also distinguishable.  In that case, the City of New York sued various

out-of-state sellers of cigarettes for their allegedly illegal marketing and shipment of cigarettes into

New York.  911 N.E.2d at 836.  The defendants marketed the cigarettes as tax-free, deceiving New

York residents into purchasing them under the belief they would not have to pay New York taxes

on them.  *Id.* at 836-37.  The city claimed the defendants' misconduct deprived it of tax revenues

(*i.e.*, the amount of tax each New York purchaser would have paid to the city but for the deception).

*Id.*  The court held that the city's "claimed injury, the form of lost tax revenue, [wa]s *entirely*

derivative of injuries that it alleges were suffered by misled consumers who purchased defendants'

cigarettes over the Internet."  *Id.* at 838-39 (emphasis added).  In other words, if a New York

consumer, although deceived by the defendants' conduct, had simply elected not to purchase the

cigarettes, the city would have suffered no injury because the consumer would owe no taxes.  *Id.*

at 838.  Contrary to Defendants' assertions, the court did not hold that injuries to the public fisc

can never support a GBL claim.  Indeed, the court recognized that a city "may be able to avail

itself of a remedy pursuant to [GBL § 349(h)]" "[i]n a proper case[.]"  *Id.*  But in the case before

it, the city's injuries were *entirely* derivative of the injuries suffered by the deceived consumers.

*Id.* at 838-39.  Here, however, Rochester alleges direct injuries.  *Supra* at 21; *see, e.g., JUUL*, 497

F. Supp. 3d at 668 (distinguishing *Smokes-Spirits II* because plaintiff's injuries were not "solely

dependent on any transaction between JLI and JUUL users").

---

[41]  *See also, e.g., JUUL*, 497 F. Supp. 3d at 668 (distinguishing *Blue Cross* because plaintiff was
"not seeking to recoup the costs incurred by JUUL users"); *Johnson & Johnson Health Care
Sys. Inc. v. Save On SP, LLC*, No. CV 22-2632, 2023 WL 415092, at *6–7 (D.N.J. Jan. 25,
2023) (finding direct injury under GBL where defendant's deceptive conduct "cause[d] Plaintiff
to pay more money from [its prescription payment assistance program] than it otherwise would
have to do" which is "an independent harm separate from the injuries that Plaintiff alleges
consumers will incur from [defendant's conduct]").

Defendants further argue that it is not enough for Rochester to plead that Defendants' misleading acts led to further steps which eventually harmed it. Mot. at 24-25. Notably, they cite no New York Court of Appeals case that supports this proposition; rather, they rely on a handful of federal cases. In particular, Defendants point to *Voters for Animal Rts. v. D'Artagnan, Inc.*, No. 19-CV-6158 (MKB), 2020 WL 9209257 (E.D.N.Y. July 15, 2020) ("*VFAR*"), *report and recommendation adopted,* No. 19-CV-6158 (MKB), 2021 WL 1138017 (E.D.N.Y. Mar. 25, 2021). But *VFAR* is factually distinguishable. The plaintiff in that case was a non-profit organization that voluntarily expended its own resources to educate the public on the cruelty of foie gras production in an effort to counteract a foie gras distributor's deceptive marketing. *Id.* at *1-2. The plaintiff argued it was directly injured by the defendants' conduct, regardless of whether any consumers acted on the misinformation by purchasing the defendants' foie gras, because support for its work decreased as soon as consumers were misled. *Id.* at *6. The court disagreed, holding the plaintiff's injury was derivative of the injury to consumers because, were the defendants "not reaching any consumers with its advertising, then [the plaintiff] would not feel compelled to 'expend resources' attempting to dissuade those consumers from purchasing foie gras." *Id.*

The circumstances in the present case are entirely different. Rochester is a *governmental* entity that provides essential government services and programs to its citizens. *See, e.g.,* Roch. ¶¶ 83-84, 99-101, 104-105. The oversupply and diversion of prescription drugs caused by Defendants' deceptive conduct directly injured Rochester by, *inter alia*, straining its ability to provide essential governmental services and forcing it to expend and divert its own city resources to address the opioid epidemic. *Supra* at 21. These are distinct injuries from any personal injuries suffered by deceived prescription opioid consumers. Indeed, the *VFAR* court itself recognized this distinction, acknowledging "the stark factual dissimilarities between the [New York *Opioid*] case and the case at bar" and noting the former "involved a host of injuries to the plaintiff counties[.]" 2020 WL 9209257, at *8. *VFAR* is thus inapposite, as are the other federal cases on which

24

Defendants rely.[42]

As Rochester has plausibly alleged direct injuries caused by Defendants' GBL violations, the Court should deny Defendants' motion to dismiss Rochester's GBL claims on this ground.

## III. PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS.

Defendants move to dismiss the Parent Company Defendants, arguing Plaintiffs failed to plead facts "(1) showing that the Parent Company Defendants were direct participants in the alleged wrongdoing or (2) to justify piercing the corporate veil." Mot. at 29.  Both arguments fail.

### A.  Plaintiffs Sufficiently Allege the Direct Liability of the Parent Company Defendants.

Defendants' entire argument concerning the direct liability of the Parent Company Defendants is a conclusory one-sentence statement arguing that Plaintiffs have pled "no facts" to support such liability.  Mot. at 29.[43]  This is false.  As summarized in ¶ 3 of both Amended

---

[42]  *See Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 203–04 (S.D.N.Y. 2023) (dismissing reseller's GBL claim against brand protection services company for reporting to e-commerce website that reseller's product listings were for counterfeit items, resulting in the listings' removal; "Plaintiff's injury relies on the alleged deception of [defendants'] consumers regarding the ability of their software to differentiate between authentic and counterfeit products.  'Unless and until consumers are misled by Defendants' conduct, there is no injury to Plaintiff.'") (citation omitted); *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 362-63 (E.D.N.Y. 2022) (plaintiff who received defective camera as a gift lacked standing to bring GBL claims against camera manufacturer; "[Plaintiff] does not allege that she suffered any pecuniary losses because of the defendant's conduct, or that the product caused her some other harm.  Rather, her claim is derivative—that the person who gave her the camera would not have purchased it 'but for Defendant's materially misleading consumer-oriented conduct.'") (citation omitted); *Frintzilas v. DirecTV, LLC*, 731 Fed. Appx. 71 (2d Cir. 2018) (unpublished) (non-precedential summary order; landlords lacked standing to bring § 349 claim against cable companies for deceiving their tenants into consenting to the installation of the companies' equipment in the landlords' buildings because their alleged injuries were "'purely contingent on harm to third parties': the harm to the tenant-subscriber by being presented the allegedly materially misleading form") (citation omitted).

[43]  Defendants also briefly state in their introduction that "Plaintiffs merely lump the Parent Company Defendants with their subsidiaries . . ."  *Id*. at 3.  To the extent this statement is an objection to "group pleading," it is not meritorious.  This Court rejected a similar argument raised by manufacturer defendants previously in this MDL. Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 4-5.

Complaints, the Parent Company Defendants (and all PBM Defendants)[44] colluded with Purdue Pharma, and other manufacturers, to: fraudulently and deceptively market opioids; "increase opioids sales through favorable formulary placement . . . in exchange for rebates and fees"; and "eliminate or limit utilization management measures on national formularies that would have restricted opioids prescribing."  Roch. ¶ 3; Lincoln ¶ 3.  They also: deliberately failed to implement effective drug utilization review; elected not to act on the vast stores of information they had about the epidemic to limit the flood of opioids into communities across the United States; and dispensed "huge quantities of prescription opioids through their mail-order pharmacies without proper controls against diversion."  *Id.*  Notably, through much of this misconduct, they (and their subsidiaries) were directing and/or engaging in the practice of pharmacy in a manner that interfered with public health.[45]

Plaintiffs proceed to plead, through many well-grounded, fact-specific paragraphs, the existence of an association-in-fact "Formulary & UM [utilization management]" RICO Enterprise in which opioid manufacturers and PBM Defendants, including the Parent Company Defendants, participated.  *See, e.g.,* Roch. ¶¶ 90, 592-691; Lincoln ¶¶ 72, 602-701.  The Enterprise's common purpose was "to profit from the increased and unrestricted prescribing, dispensing, and sale of prescription opioids without regard for public safety."  Roch. ¶ 90; Lincoln ¶ 72.  Plaintiffs further plead that Defendants, including the Parent Company Defendants, have "committed, conspired to commit, and/or aided and abetted in the commission" of acts in furtherance of the Enterprise.  Roch. ¶ 791; Lincoln ¶ 786.[46]  The fraudulent scheme that furthered the RICO Enterprise relied on

---

[44]  Each Parent Company Defendant is included within the definition of "PBM Defendants" as that term is used in the Amended Complaints.  Roch. at 1; Lincoln at 1.

[45]  *See, e.g.,* Model State Pharmacy Act and Model Rules of the National Association of Boards of Pharmacy ("NABP") (August 2023) at Art. I, §§ 102-104 & 105(74), *available at* https://nabp.pharmacy/members/board-resources/model-pharmacy-act-rules/; NABP Report of the Task Force on the Regulation of Pharmacy Benefit Managers, *available at* https://nabp.pharmacy/wp-content/uploads/2016/07/PBM_TF_Report.pdf.

[46]  Plaintiffs' RICO conspiracy claim "does not require proof that the defendant committed any predicate acts[;]" rather, "it suffices that he adopt the goal of furthering or facilitating the

false claims from each PBM Defendant, including the Parent Company Defendants. They falsely represented that they were structuring formularies and engaging in utilization management to benefit clients and patients, and to ensure that opioids were prescribed and dispensed solely for safe and legitimate reasons. *See, e.g.,* Roch. ¶ 638; Lincoln ¶ 648. Additional allegations specific to each Parent Company Defendant are summarized below.

**UHG.** UHG's knowledge of, and participation in, the RICO enterprise dates back to the early 2000s.[47] In 2001, a UHG executive wrote to Purdue stating, "I believe Purdue has acted irresponsibly in over-promoting the use of oxycodone…the activity has resulted in the overuse of morphine, an increase in the abuse of this narcotic, unnecessary and significant increases in pharmacy trend, and most importantly, an increase in patient morbidity and mortality." Roch. ¶ 400; Lincoln ¶ 384. Nonetheless, in 2002, UHG worked directly with Purdue in promoting misinformation regarding opioid products and requested $200,000 to launch a "chronic pain management" study and education series of teleconferences to providers in the UHG/UHC network. Roch. ¶¶ 359–360; Lincoln ¶¶ 343–344.[48] UHG also falsely depicted itself in public statements to shareholders and others as "improving quality and safety, increasing compliance and adherence, and reducing fraud and waste." Roch. ¶¶ 310, 312; Lincoln ¶¶ 294, 296.

**Evernorth f/k/a Express Scripts Holding Company.** Plaintiffs similarly demonstrated Express Scripts' (including Evernorth's)[49] knowledge of the danger of opioids, and the fraudulent

---

criminal endeavor." *United States v. Rios*, 830 F.3d 403, 424 (6th Cir. 2016) (citation omitted). *See also supra* at 4.

[47] The fact that the Parent Company Defendants engaged in some acts in furtherance of the conspiracy over two decades ago is of no concern. "Unless a conspirator produces affirmative evidence of withdrawal*, his participation in a conspiracy is presumed to continue* until the last overt act by any of the conspirators." *United States v. Jones,* 27 F.3d 50, 51 (2d Cir. 1994) (internal alterations omitted, emphasis added). *See also supra* at 4.

[48] UHG's "education" program included the theme that "'[m]ost specialists in pain medicine and addiction agree that patients with prolong opioid therapy . . . do not usually develop addictive behavior' and to convince the providers that '[o]pioids are effective, have a low addiction potential, and may have fewer long-term side effects than other pain treatments.'" *Id.*

[49] In the Amended Complaints, references to "Express Scripts" and "ESI" include Evernorth.

chasm between its public statements purporting to address that danger and its internal conduct that fully embraced profits over health. Express Scripts' 2013 external, client-facing marketing documents "recognized that opioid abuse was 'deadlier than cocaine and heroin combined' but also recognized the pivotal role that Express Scripts plays in 'collaborating to end the epidemic.'"[50] In 2014, Express Scripts was preparing the press releases and sales communications for its "'Nation in Pain' report" to "highlight the power of Express Scripts data and clinical experience, and [its] commitment to identifying ways to make the use of prescription opiates safer and more effective" while at the same time aggressively pushing Purdue for higher rebate amounts in exchange for preferred formulary placement of OxyContin—a win worth $20 million in incremental revenue. Roch. ¶¶ 281–282 (quotations omitted); Lincoln ¶¶ 265–266 (quotations omitted).

**Optum, Inc.** Optum, Inc. was similarly involved in promoting the expansion of the opioid market as well as the Formulary and UM Enterprise. Plaintiffs allege Optum provides cover for the Enterprise through its false public statements.[51] "In its 2008 Annual Report, Optum represented 'Beyond the data and technology, and beyond the numbers and networks, our businesses are made up of people who strive, every day, to fulfill our mission by helping people live healthier lives.'" Roch. ¶ 310; Lincoln ¶ 294. Optum, Inc. knew these representations were a façade, however, since its subsidiary and sister entities had spent years working to expand the market for opioids—and, in turn, to increase the profits of the Enterprise.[52]

---

Roch. ¶ 131; Lincoln ¶ 118.

[50] Roch. ¶ 413; Lincoln ¶ 397. The document included the parent company's trademark and a proprietary and confidentiality designation. *Id.*

[51] Roch. ¶ 657 ("Optum submitted its opioid use/risk management plan for consideration by the National Alliance of Healthcare Purchaser Coalitions, claiming that its program focuses on preventing misuse by educating care providers and consumers, minimizing early exposure, and promoting alternative treatments for pain while advancing best practices and made multiple representations about itself and its programs during the presentation."); Lincoln ¶ 667 (same). An Optum published white paper made similar claims. *Id.*

[52] *See, e.g.,* Roch. ¶¶ 343–45, 501–506; Lincoln ¶¶ 327–29, 485–491.

Accordingly, Plaintiffs' allegations are more than sufficient to support a claim for the direct liability of the Parent Company Defendants.

### B. Plaintiffs Sufficiently Allege Alter Ego Theories of Liability for the Parent Company Defendants.

The Court should also reject Defendants' argument that Plaintiffs' alter ego or corporate veil-piercing theories against the Parent Company Defendants are insufficient. Mot. at 28-30. "State law dictates whether circumstances exist warranting piercing the corporate veil." *Mattingly v. R.J. Corman R.R. Grp., LLC*, 90 F.4th 478, 488 (6th Cir. 2024). Yet, Defendants fail to evaluate threshold choice-of-law issues regarding which state law applies to their arguments concerning alter ego/veil piercing.[53] "[C]hoice-of-law determinations are fact-intensive inquiries that would be premature to resolve at the motion-to-dismiss stage." *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.,* 655 Fed. Appx. 9, 13 (2d Cir. 2016) (reversing dismissal where choice of law inquiry was necessary to determine which state law governed). Defendants' failure to address choice of law renders their Motion deficient and should preclude its consideration.[54]

Even if the Court were to tackle Defendants' incomplete analysis, the Court should decline to grant the Motion. Both Evernorth and UHG, through their respective "executives and employees, control[] the enterprise-wide policies that inform all of [their respective] lines of

---

[53] To evaluate alter ego liability theories, an MDL court sitting in diversity jurisdiction should first apply the choice-of-law rules of the transferor forum. *See Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 494 (6th Cir. 2015). Here, the Court would apply the New York choice-of-law rules for Rochester and the Missouri choice-of-law rules for Lincoln County. Although a common approach is to apply the law of the state of incorporation of the subsidiary, New York courts have found that "the state of incorporation is not always dispositive under New York choice-of-law rules in veil-piercing matters." *Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 1:22-CV-08842 (JLR), 2024 WL 398094 at *10 (S.D.N.Y. Feb. 2, 2024); *Serio v. Ardra Ins. Co., Ltd.*, 761 N.Y.S.2d 1, 1–2 (N.Y. App. Div. 1st Dept. 2003). Likewise in Missouri. *See A.O.A. v. Rennert,* 350 F. Supp. 3d 818, 835–56 (E.D. Mo. 2018).

[54] *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1000–1001 (W.D. Wash. 2012); *Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-2533-JWL, 2010 WL 3735757 at *10 (D. Kan. Sept. 20, 2010); *Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 500 (S.D.N.Y. 2014); *Schechter v. Banque Commerciale Privee*, No. 90 CIV. 6051, 1991 WL 105217 at *16 (S.D.N.Y. June 11, 1991).

business in order to maximize profits across the corporate family." Roch. ¶¶ 107, 148; Lincoln ¶¶ 89, 134. Moreover, many members of the Express Scripts and Optum corporate families share a principal place of business with their respective parents.[55] And as discussed earlier, the Parent Company Defendants were all materially involved in the development and ownership of the fraudulent external marketing message that predominated throughout their respective corporate families: that the PBM Defendant families were *ostensibly* managing opioid prescribing and utilization in a manner designed for safety and deterrence of fraud.[56] "[T]he corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (citation omitted). This Court, among others, has appropriately denied motions seeking dismissal of veil-piercing issues as too fact intensive to decide at that early stage.[57] Defendants' Motion should be similarly denied here.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

---

[55] Roch. ¶¶ 106, 109, 112, 119, 122, 129, 143, 150, 155, 158, 178, 182-183; Lincoln ¶¶ 88, 91, 96, 105, 108, 114, 130, 136, 140, 142, 161, 165-166.

[56] Roch. ¶¶ 281-82, 310-13, 342-343, 359-361, 400, 413, 638; Lincoln ¶¶ 265-66, 294-297, 326-327, 343-345, 384, 397, 648.

[57] *See, e.g.,* Dkt. #2131 (CT1 Order on Jurisdictional MTDs) at 8; *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440–41 (E.D.N.Y. 2017); *Walker v. Nash*, No. 2:13-CV-3408, 2014 WL 1278599 (D.S.C. Mar. 27, 2014) (citing *In re Cnty, Green Ltd. P'ship*, 604 F.2d 289, 292 (4th Cir. 1979)); *Tobia v. Loveland*, No. 5:16CV187, 2017 WL 2113752 (N.D. W. Va. May 15, 2017) (citing *Laya v. Erin homes Inc.*, 352 S.E.2d 93, 201 (W. Va. 1986)).

Dated: May 20, 2024

Respectfully submitted,

*Plaintiffs' Co-Lead Counsel*

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue
San Juan, PR  00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Liaison Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
pweinberger@spanglaw.com

*Counsel for City of Rochester*

*/s/ Hunter J. Shkolnik*
Hunter J. Shkolnik
Paul J. Napoli
NSPR LAW SERVICES LLC
1302 Avenida Ponce de Leon
Santurce, Puerto Rico 00907
(833) 271-4502
hunter@nsprlaw.com
pnapoli@nsprlaw.com

31

Salvatore C. Badala
Shayna E. Sacks
Joseph L. Ciaccio
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
(212) 397-1000
sbadala@napolilaw.com
ssacks@napolilaw.com
jciaccio@napolilaw.com


*Counsel for Lincoln County, MO*

*/s/ John F. Garvey*
John F. Garvey
Colleen Garvey
Ellen A. Thomas
STRANCH, JENNINGS & GARVEY, PLLC
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

*/s/ Joanne M. Cicala*
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
(512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Patrick A. Hamacher*
Patrick A. Hamacher
Mark R. Niemeyer
NIEMEYER, GREBEL & KRUSE, LLC
211 N. Broadway, Suite 2950
St. Louis, MO 63102
(314) 241-1919
hamacher@ngklawfirm.com
Niemeyer@ngklawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger