# EXHIBIT C

# Smith, Elizabeth

| | |
|---|---|
| **From:** | owner-pec_optum@listserv.motleyrice.com on behalf of Ackerman, David <dackerman@motleyrice.com> |
| **Sent:** | Thursday, April 11, 2024 4:19 PM |
| **To:** | Hatchett, Andrew; Gay, Josh |
| **Cc:** | Optum Opioid Team; PEC_Optum; PEC-ESI-TEAM; ESI-Opioids; 2804 Discovery, MDL; Metcalf, Will |
| **Subject:** | RE: Draft Discovery Agenda |

Josh – please include this as well:

Andrew,

Thank you for taking the time to speak with us yesterday. As we discussed, we do not believe the Defendants' claim that they asserted a "facial" challenge to personal jurisdiction forecloses jurisdictional discovery in this matter. *See, e.g., Gundaker/Jordan Am. Holdings, Inc. v. Clark*, 2008 WL 4585462, at *2 (E.D. Ky. Oct. 14, 2008) ("Courts do not distinguish between facial and factual challenges in personal jurisdiction disputes"). Rather, that distinction appears to apply only to other types of challenges, such as subject-matter jurisdiction. We encouraged Defendants to provide any authority to the contrary, but you offered none on the call.

With respect to actual discovery, you advised that Defendants may be willing to respond to jurisdictional discovery but expressed concern because Defendants purportedly were responding to merits discovery on behalf of the entities challenging jurisdiction. While this may be true, it is not clear to what extent such documents have been produced given Defendants' meager productions to date, and when I asked you to identify custodians you had designated specifically from those entities, you were unable to do so.

You also expressed concern that you could not commit to whether your clients would respond to jurisdictional discovery without knowing more specifics about the discovery we are seeking. To that end, we discussed a framework whereby Defendants would respond expeditiously concerning whether they consider general topics appropriate for jurisdictional discovery in order to move any dispute to SM Cohen expeditiously, if necessary. You were amenable to that idea and stated that if Defendants received requests or more specific descriptions, you could advise promptly if you believed any were not appropriate for jurisdictional discovery. I have listed a set of topics below, and we intend to serve the actual discovery within the next day or two in order to get the clock running. We believe it would be helpful to at least have a preliminary conversation tomorrow or Monday on this topic. Please provide your availability:

Likely topics for jurisdictional discovery:

1. Identification of all employees at any of the PJ entities (all of the companies in our letter that have moved to dismiss for lack of PJ) who concurrently hold or have held positions at other Optum entities.
2. Identification of all inter-company work groups, committees, or task forces regarding or including inter-company strategies or coordination, opioids or the treatment of pain, drug formularies, utilization management, rebates and other fees or revenue from manufacturers, use of member data, clinical studies of prescription drugs, drug marketing, or medical education
3. Production of marketing materials that describe the collaboration, coordination, or integration between various PJ entities as part of UHG
4. Production of documents reflecting or relating to the sharing of data between UHG and Optum entities or the use of UHG data by the Optum entities or promoting Optum entities' access to UHG data

1

5. Identification of all members of the Optum opioid task force (with titles/affiliation/timeframe)
6. Production of documents describing or referencing the UHG "enterprise"
7. Production of documents reflecting or relating to meetings between UHG or PJ entities with any opioid manufacturer regarding opioids or rebates or other fees or revenue from manufacturers
8. Production of presentations, proposals to or agreements with opioid manufacturers related to opioids.
9. Production of documents reflecting communications between the PJ entities and (i) the bellwether jurisdictions; (ii) state agencies for the states in which the bellwether jurisdictions are located; or (iii) providers, pharmacies, payors, plan sponsors or medical-related trade organizations located within those states

These topics – as discussed on yesterday's call – are far from the "fishing expedition" described in your inapplicable caselaw below.

David



**David Ackerman** (he / him)
Attorney at Law

401 9th St. NW, Suite 630, Washington, DC 20004
**o.** 202.849.4962 **c.** 202.997.1217
dackerman@motleyrice.com

---

**From:** Hatchett, Andrew <Andrew.Hatchett@alston.com>
**Sent:** Thursday, April 11, 2024 4:09 PM
**To:** Ackerman, David <dackerman@motleyrice.com>; Gay, Josh <jgay@levinlaw.com>
**Cc:** Optum Opioid Team <Optum.Opioid.Team@alston.com>; PEC_Optum <PEC_OPTUM@listserv.motleyrice.com>; PEC-ESI-TEAM <PEC-ESI-TEAM@simmonsfirm.com>; ESI-Opioids <esi-opioids@quinnemanuel.com>; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; Metcalf, Will <Will.Metcalf@alston.com>
**Subject:** RE: Draft Discovery Agenda

CAUTION:EXTERNAL

David,

You said you would get back to us with examples of "jurisdictional discovery" that you are seeking. Do you have any? It would be nice to know what we are going to be arguing about.

Josh, if this remains on the agenda, this email exchange—including everything below—should be included. The following is almost verbatim what transpired on the call (it's as close as our notetaker could get given the speed of the conversation). I want to be very clear, I would normally not try to include an informal meet and confer transcript as part of a discovery agenda item. And I hope this is not something I ever have to do again. But am left with no choice if we are going to be forced to contend with this issue without (i) clarity as to what the PEC is seeking; and (ii) a chance to offer a written response. I will likely follow up with additional points, and caselaw, that should also be included since we have had no opportunity to create a written record on this.

As you look through the notes below, you will see that we repeatedly asked for examples of what "jurisdictional discovery" the PEC is seeking. You said you would get back to us. We are still waiting.

**April 10, 2024 – Meet and Confer Re: Jurisdictional Discovery**

<u>OptumRx Attendees</u>: Andrew Hatchett, Brandon Springer, Sheena Hilton

<u>Plaintiffs Attendees</u>: David Ackerman, Mike Elsner, Dan Goetz, Chris Mansour, Johan Conrod, Maria Fleming, Josh Wackerly, Devin Williams

AH:

> I'll kick us off because I'm really not sure we have a dispute. But obviously want to hear from you all and see where things are.  But if you'll give me just a minute, I want to set the stage on where things are from our perspective so you can evaluate whether there is actually any gaps between us and if so whether we can close them.
>
> The question that I understand is on the table is whether we are willing to engage in "jurisdictional discovery" for the 8 or 9 UHG/Optum Defendants for which we've moved to dismiss based on a lack of personal jurisdiction.
>
> So for starters, I think there is a threshold question about what plaintiffs mean by "jurisdictional discovery."
>
> I know we went back and forth on email a bit, but all of these entities are now engaging in discovery. We worked with plaintiffs to negotiate that stipulation. We filed it. The Court entered it. They've responded to discovery requests. We are negotiating custodians for them. They are going to produce documents. They have responded to written discovery.
>
> In your email the other day you said that the defendants are refusing and you pointed to our response to request 1 on the PEC's first combined set of discovery. In that first response that we served in January, we objected for UHG and Optum, Inc. because of the jurisdictional issues. But that was before the stipulation. Given the stipulation, those entities are no longer standing on that objection. These entities have responded.
>
> So I think the question is what other discovery do you plan to seek. Obviously, a lot of discovery that would go to jurisdictional discovery is going to be tethered to regular discovery. We've challenged whether OptumInsight is subject to specific personal jurisdiction in Rochester New York. We've said plaintiffs haven't alleged that OptumInsight engaged in suit-related conduct in the forum. Given our stipulation, there is nothing that would prevent plaintiffs from serving discovery as to whether OptumInsight engaged in the challenged conduct in Rochester county.
>
> If by "jurisdictional discovery" you are contemplating some universe of discovery that is relevant only to jurisdiction, but not to the underlying merits of the case, I guess I don't know what that is. We might have an objection to that, but I just don't know because I don't know what you are seeking.
>
> So I think the first question for plaintiffs is simply to be more precise as to what exactly it is that you are seeking.
>
> And then if those are materials that do not fall within the scope of the discovery that we are already engaging in, we would want to understand why discovery of those materials would be relevant or helpful to the legal issues raised in our Rule 12(b)(2) motion to dismiss.

DA: There very well may be some overlap but there may be areas specific to bellwether jurisdictions - there may be custodians, topics specific to those jurisdictions as opposed to nationwide.

AH: Do you have any specific examples?

DA: No, not as I sit here now. There could be studies tied to the jurisdictions—

AH: Opioids studies?

DA: Please let me finish before you ask questions…it would depend on the discovery, it would depend on questions. Most likely opioids yes. Looking at purposeful availment – could include opioid specific or arise or relate out of contacts even if not opioid specific. It's going to be jurisdiction specific. The question that we have is whether you will object wholesale to concept of jurisdictional discovery or if it may depend on the specific discovery requests we serve.

AH: As I sit here today, it's hard to say without knowing what the requests are. Obviously if there are studies about opioids in Rochester, that's the sort of thing you can seek in normal discovery. We might have objections related to how requests are worded, but you can obviously pursue that sort of discovery. We aren't standing on objections and that would lead us to wholesale refuse producing that type of discovery. If you would like to include a study on acne medications, we might object on relevance grounds. I'd need you to explain to me how that is relevant to jurisdiction. The argument that we've made is that the plaintiffs have not alleged facts showing that defendants engaged in suit-related conduct in the forum. But suit-related conduct is the sort of thing you can get through normal discovery.

DA: Second point first. I looked this afternoon, and I couldn't find anything that said if the defendant raises a facial challenge to personal jurisdiction then it doesn't have to respond to jurisdictional discovery. And I've got one case in 6th circuit that says the opposite. If you have a case send it to me. I don't think whether you made a facial challenge is relevant. Standard for getting jurisdictional discovery is a different one. There are different standards across circuits, but I'm not aware of a single case that says no jurisdictional discovery if defendant presents facial challenge to personal jurisdiction.

DA: On second point - type of discovery. If you're saying serve discovery and then we will decide, that's fine, but when you are responding have you designated custodians from the 8 or 9 entities? We are getting at conduct of these specific entities, not broader discovery requests. So we need to know whether you have been responding with respect to those entities.

AH: Taking points one at a time - Honestly I haven't done a deep dive on case law on this. I know in subject matter jurisdiction there's a distinction between a factual and facial challenge. There are analogous there as subject matter jurisdiction looks at diversity of citizenship and so a form of forum contacts. I don't know that I have full repertoire on case law for personal jurisdiction. I'm happy to look at the case you have if you want to send it. But the bigger point here is that the nature of personal jurisdiction argument that we are making is focused on suit-related conduct. So as a result, discovery on the merits of the claims (which is ongoing) would also be relevant to personal jurisdiction. As it relates to custodians, not sure if you are on that team, but the PEC has sent us over a 100 names and we have already agreed to some custodians from at least some of the entities, don't have list in front of me. If you are wondering if an Optum defendant has a custodian in Rochester we could talk about that, but I don't know. We can certainly talk about whether there is someone who might know about Rochester.

DA: Suit-related conduct point – every personal jurisdiction challenge says that, but more recent Supreme Court cases say—

AH: Well—

DA: Please let me finish. With respect to the other point, my question for you is not custodians, question isn't whether someone is in Rochester. Question is when you are responding to discovery, are you searching files from the 8 or 9 entities, and if so, what files?

AH: Yes, we are searching noncustodial files for the entities and custodial files of individuals selected—we have agreed to search for those things, and we are searching.

BS: Can I jump in on one question? From my read of cases that involve jurisdictional discovery – the reason for the discovery is to assist the court in evaluating motion because otherwise the entity isn't subject to discovery. Here we entered into a stipulation and so we aren't holding back discovery responses—we are actively responding on behalf of those entities. We have gone back and forth about potential custodians... so not tracking the reason why you need other discovery at high level, and at a narrow level, what does it have to do with jurisdictional discovery if otherwise responsive?

DA: We do have I assume, questions about these specific entities. What I hear from you is that if we serve discovery requests on the 8 or 9 entities that object to personal jurisdiction, then you will respond?

4

AH: Yes, but you have already served discovery, and they are already responding. The CMO obviously places limits on discovery, and you served requests and they are responding. If you serve additional requests we will review, and respond.

BS: Yes – I don't have it in front of me, but stipulation wasn't specific to discovery that had been served to that point. The entities will respond subject to limits set in CMO.

DA: The CMO also says we will meet and confer –

BS: …

DA: Let me finish. What I want to know is, is it your position that the other limits on discovery in CMO would encompass jurisdictional discovery. We see it as a separate category than other substantive discovery requests that have already been served.

AH: If you could explain what jurisdictional discovery exists that's separate from substantive discovery… So if you serve us 20 jurisdictional discovery requests that look the same as normal discovery but call them jurisdictional discovery to get around other limits, then we'll likely have objections. But you haven't explained it, if you explain it to me that would help. If plaintiffs are just planning to serve a bunch of merits discovery and call it "jurisdictional discovery," we're not going to be okay with that. I hope you can understand why we might be concerned that Plaintiffs are trying to get around discovery limits—I'm not saying you are trying to do that, but we aren't going to agree to give you license to serve additional fact discovery beyond the limits under the guise of "jurisdictional discovery."

DA: That's fair. What if we serve jurisdictional interrogatory that says identify all employees for one of entities that was located in NY?

AH: I'd have to take it back, but we would consider.

DA: That's why we are asking those questions.

AH: That is helpful, that's not something I'd thought about. I'd be willing to not force you to serve them officially and then have to wait 30 days to find out if we object. If you give me categories like that, we can think more about it.

DA: To be clear, don't want to send you something on Monday, then you take 2 weeks to consider, then I serve and then you get 30 days to respond… I don't want unnecessary delays here.

BS: I'm not sure we will agree to accelerated procedure under the federal rules. If questions are narrow, we might not want to draw the process.

AH: Right now you are asking us to take a blanket position which is hard to do. We are not asserting a steadfast position; in my mind the issues that would be relevant to personal jurisdiction analysis are the same sorts of information that would be covered by merits discovery. So like for every employee in the state of NY question, are you trying to make an argument that Optum Health is subject to general jurisdiction? That's different than the question being litigated. Obviously large number of employees doesn't equal purposeful availment.

DA: I understand. Let me ask you this, I get your point Brandon that you aren't going to do expedited process, but what about just for objections could you let us know within 7 days – this is something we'll probably respond to, this is something we'll object to on grounds that you are trying to get second bite at the apple…

AH: How about this, if you send us list of the sorts of things, I don't know how long the list is, but on a shorter time frame - under 7 days - we can let you know quickly whether it will be possible to take a preliminary position or try to determine if we are headed towards a dispute.

DA: But I don't want to send you an email with topics and then its 7 days, and then it's another 7 days to meet and confer and then it goes to SMC and the point is that there's been no official discovery request… Why not serve discovery request, and then we can have preliminary discussion as to whether its jurisdictional discovery.

AH: If you want to serve official discovery requests, we'll respond in the official time. If you want to do it informally we can respond on shortened time frame. If you want to serve official, I don't want to commit to shortened time frame.

DA: I understand. Let me talk to the team. We may have a way forward. We'll get back to you pretty quickly.

**End Meeting**

D. Andrew Hatchett
**ALSTON & BIRD**
(404) 881-4826 (O)
(601) 955-6002 (M)
www.alston.com

---

**From:** Ackerman, David <dackerman@motleyrice.com>
**Sent:** Thursday, April 11, 2024 3:35 PM
**To:** Gay, Josh <jgay@levinlaw.com>; Hatchett, Andrew <Andrew.Hatchett@alston.com>
**Cc:** Optum Opioid Team <Optum.Opioid.Team@alston.com>; PEC_Optum <PEC_OPTUM@listserv.motleyrice.com>; PEC-ESI-TEAM <PEC-ESI-TEAM@simmonsfirm.com>; ESI-Opioids <esi-opioids@quinnemanuel.com>; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; Metcalf, Will <Will.Metcalf@alston.com>
**Subject:** RE: Draft Discovery Agenda

**EXTERNAL SENDER – Proceed with caution**

---

The PEC does not agree to remove this item. This email is a gross mischaracterization of what was an otherwise amicable meet and confer, and we do not consider this issue in any way resolved.

David



**David Ackerman**  (he / him)
Attorney at Law

401 9th St. NW, Suite 630, Washington, DC 20004
**o.** 202.849.4962 **c.** 202.997.1217
dackerman@motleyrice.com

---

**From:** owner-pec_optum@listserv.motleyrice.com <owner-pec_optum@listserv.motleyrice.com> **On Behalf Of** Josh Gay
**Sent:** Thursday, April 11, 2024 3:32 PM
**To:** Hatchett, Andrew <Andrew.Hatchett@alston.com>
**Cc:** Optum Opioid Team <Optum.Opioid.Team@alston.com>; PEC_Optum <PEC_OPTUM@listserv.motleyrice.com>; PEC-ESI-TEAM <PEC-ESI-TEAM@simmonsfirm.com>; ESI-Opioids <esi-opioids@quinnemanuel.com>; 2804 Discovery, MDL <mdl2804discovery@motleyrice.com>; Metcalf, Will <Will.Metcalf@alston.com>
**Subject:** Re: Draft Discovery Agenda

CAUTION:EXTERNAL

Do the plaintiffs agree to remove it?

If not, Andrew, I can update the notes to reflect your position. Do you have specific language (other than the below) that you'd like me to use? At a minimum, I can include your email in the documents.

Josh Gay
*Legal Investigator*
*Opioid Department*
Levin, Papantonio, Rafferty, Proctor, Buchanan, O'Brien, Barr, and Mougey P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
850.435.7193 (office)
850.723.4032 (cell)
850.436.6193 (fax)
jgay@levinlaw.com

 Please consider the environment before printing this e-mail

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.

On Apr 11, 2024, at 2:26 PM, Hatchett, Andrew <Andrew.Hatchett@alston.com> wrote:

**CAUTION:** This email message is **EXTERNAL.**

Josh,

Item 351 should be removed from the discovery agenda. We had an hour-long meet and confer call yesterday where it became very clear that there is no dispute—or at least not a dispute the PEC can describe. We asked the PEC repeatedly to identify examples of "jurisdictional discovery" that is different and unique from the discovery that is already open and that the UHG and Optum Defendants are already engaging in. The PEC, over the course of nearly an hour, was unable to identify a single example. From where we are sitting, it looked more like the PEC is angling to serve new merits discovery requests in hopes that branding those requests as "jurisdictional discovery" will allow them to circumvent the discovery limits in the CMO. We expressed that concern, and the PEC said it understood our concern. The call ended with the ball in the PEC's court to identify if there is in fact any "jurisdictional discovery" that is not already subsumed by fact discovery. If the PEC is able to identify anything, we said we would promptly discuss to determine if there was any disagreement about whether we would be willing to respond.

We are waiting for the PEC to get back to us, but this cannot be put before SM Cohen until the PEC actually tells us what it wants in terms of "jurisdictional discovery" and we can assess whether that is something we would be willing to agree to (we have not taken a position on anything because the PEC has not yet identified what it is seeking). And as a more procedural point, this is all building on a letter

the PEC sent us on late Friday, demanding a Monday response. We responded Monday and asked to meet and confer. But this has not even close to run its course – again, as I sit here today, I genuinely have no idea what it is that the PEC is seeking. And given the lack of clarity, we have not had an opportunity to respond in writing to create a record to put before the Special Master.

The item should be removed.


D. Andrew Hatchett
**ALSTON & BIRD**
(404) 881-4826 (O)
(601) 955-6002 (M)
www.alston.com

**From:** Josh Gay <jgay@levinlaw.com>
**Sent:** Thursday, April 11, 2024 1:52 PM
**To:** Optum Opioid Team <Optum.Opioid.Team@alston.com>; PEC_Optum <PEC_OPTUM@listserv.motleyrice.com>; PEC-ESI-TEAM <PEC-ESI-TEAM@simmonsfirm.com>; ESI-Opioids <esi-opioids@quinnemanuel.com>; MDL 2804 Discovery <mdl2804discovery@motleyrice.com>
**Cc:** Metcalf, Will <Will.Metcalf@alston.com>
**Subject:** Draft Discovery Agenda

**EXTERNAL SENDER – Proceed with caution**


All:

I have attached the draft discovery agenda, please review and let me know if there are any changes ASAP (preferably by 5p eastern tonight). Please note that I am awaiting a submission from the defendants on item number 353.

I have also included the late submissions from both sides on agenda item 348, in order to provide a complete and accurate record. If there are any issues with that, please let me know and I am happy to make any changes that are needed.

I will circulate the full agenda with all documents once I have the final submission in hand for item 353, as compiling the documents is fairly time consuming.

I would like to submit the final agenda to Special Master Cohen later this evening, if there are no other changes.

Josh Gay
*Legal Investigator*
*Opioid Department*
Levin, Papantonio, Rafferty, Proctor, Buchanan,
O'Brien, Barr, and Mougey, P.A.
316 S. Baylen Street, Suite 600
Pensacola, FL 32502-5996
850.435.7193 (office)

8

850.723.4032 (cell)
850.436.6193 (fax)
jgay@levinlaw.com

 Please consider the environment before printing this e-mail

THE INFORMATION CONTAINED IN THIS TRANSMISSION IS PRIVILEGED AND
CONFIDENTIAL INFORMATION INTENDED ONLY FOR USE OF THE INDIVIDUAL OR ENTITY
NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE
HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF
THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION
IN ERROR, DO NOT READ IT. PLEASE IMMEDIATELY REPLY TO THE SENDER THAT YOU HAVE
RECEIVED THIS COMMUNICATION IN ERROR. THEN DELETE IT. THANK YOU.

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.

To unsubscribe from the PEC_OPTUM list, click the following link:
https://LISTSERV.MOTLEYRICE.COM/scripts/wa-MOTLEYRICE.exe?SUBED1=PEC_OPTUM&A=1

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

Confidential & Privileged

Unless otherwise indicated or obvious from its nature, the information contained in this communication is attorney-client privileged and confidential information/work product. This communication is intended for the use of the individual or entity named above. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error or are not sure whether it is privileged, please immediately notify us by return e-mail and destroy any copies--electronic, paper or otherwise--which you may have of this communication.

To unsubscribe from the PEC_OPTUM list, click the following link:
https://LISTSERV.MOTLEYRICE.COM/scripts/wa-MOTLEYRICE.exe?SUBED1=PEC_OPTUM&A=1