IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL | ) | Judge Polster |
| PRESCRIPTION | ) | Cleveland, Ohio |
| OPIATE LITIGATION, | ) | |
| | ) | |
| | ) | Civil Action |
| | ) | Number 1:17MD02804 |
| | ) | |
| | ) | |
| | ) | **(Pages 1 - 21)** |

- - - - -

TRANSCRIPT OF PROCEEDINGS HAD BEFORE

THE HONORABLE DAN AARON POLSTER

JUDGE OF SAID COURT,

ON WEDNESDAY, MAY 22, 2024

- - - - -

Official Court Reporter:          Shirle M. Perkins, RDR, CRR
                                  U.S. District Court
                                  801 West Superior, #7-189
                                  Cleveland, OH 44113-1829
                                  (216) 357-7106

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.

```
 1    APPEARANCES:

 2

 3      For the Plaintiffs:              PETER WEINBERGER, ESQ.,
                                         Spangenberg, Shibley &
 4                                       Liber
                                         Suite 1700
 5                                       1001 Lakeside Avenue, E
                                         Cleveland, OH 44114
 6                                       (216) 696-3232

 7

 8
        For the Defendants:             BRIAN BOONE, ESQ.,
 9                                       Alston & Bird - Charlotte
                                         Ste. 300
10                                       Vantage South End
                                         1120 South Tryon Street
11                                       Charlotte, NC 28203-6818
                                         (704) 444-1106
12
                                         GRETCHEN N. MILLER
13                                       Greenberg Traurig - Chicago
                                         Ste. 3100
14                                       77 West Wacker Drive
                                         Chicago, IL 60601
15                                       (312) 456-6583

16                                       JONATHAN G. COOPER
                                         Quinn Emanuel Urquhart &
17                                       Sullivan
                                         Ste. 900
18                                       1300 I Street NW
                                         Washington, DC 20005
19                                       (202) 538-8000

20                                       JOHN P. MCDONALD, ESQ.,
                                         Locke Lord - Dallas
21                                       Suite 2800
                                         2200 Ross Avenue
22                                       Dallas, TX 75201
                                         (214) 740-8758

23

24

25
```

1        WEDNESDAY SESSION, MAY 22, 2024, AT 1:55 P.M.

2                JUDICIAL ASSISTANT:  Judge, this is Helen.  I

3    have the team on.  I have everybody required on.  I'll let

4    people in as they're straggling.

14:03:33 5                THE COURT:  Do we have the Court Reporter?

6                JUDICIAL ASSISTANT:  We do have a Court

7    Reporter, yes.  We have a Court Reporter, Judge.

8                THE COURT:  All right.

9                JUDICIAL ASSISTANT:  Hey, Judge.  You're

14:04:03 10   breaking up a little.  I think I'll kick you out and bring

11   you back in.

12                THE COURT:  All right.

13                JUDICIAL ASSISTANT:  I'm just going to knock

14   you off, remove you, and you have to rejoin.

14:04:11 15                THE COURT:  All right.

16        (Pause.)

17                THE COURT:  Well, can everyone hear me?  Can

18   the Court Reporter?

19                COURT REPORTER:  Yes.

14:05:38 20                THE COURT:  All right.  Do we have everyone?

21        I'd like to have the client representatives identify

22   yourselves because I probably have not met you.  All right?

23        Who do we have from the -- what law directors do we

24   have?  If you could identify yourself and what city and

14:05:58 25   county.

1          MR. BEATH:  Judge, this is Patrick Beath,

2     corporation counsel for the City of Rochester, New York.

3               THE COURT:  All right.  Welcome, Patrick.

4               MR. CAMPOLIETO:  Your Honor, John Campolieto,

14:06:17  5     also from the City of Rochester.

6               THE COURT:  All right.

7          Who do we have for the subdivisions?

8               MR. COVER:  Jeremy Cover.  I'm the City

9     attorney for the City of Independence, Missouri.

14:06:37 10               THE COURT:  All right.  Good afternoon,

11     Jeremy.

12               MR. COVER:  Good afternoon.  Thank you.

13               MR. GARVEY:  Judge, this is Jack Garvey, the

14     attorney for Lincoln County, and I'm waiting for their

14:06:50 15     county counsel to get on line.

16               THE COURT:  You broke up.  What -- what

17     subdivision?

18               MR. GARVEY:  Lincoln County, Missouri.

19               THE COURT:  Okay.  All right.  That's three.

14:07:05 20          Who's the fourth?

21               MR. BRATTON:  Judge, this is Nathan Bratton

22     with Webb County.  I'm general counsel.

23               THE COURT:  Okay.  Good.  All right.

24          And then who do we have for OptumRx?

14:07:28 25               MR. BOONE:  Judge Polster, this is Brian Boone

| | |
|---|---|
| 1 | for OptumRx and United.  We have Kate Mihalevich, who is the |
| 2 | General Counsel -- |
| 3 | THE COURT:  You're breaking up. |
| 4 | MR. BOONE:  Sorry. |
| 14:07:38 5 | THE COURT:  Who's that? |
| 6 | MR. BOONE:  Can everybody else hear me? |
| 7 | THE COURT:  Yeah, now. |
| 8 | Who's the General Counsel? |
| 9 | MR. BOONE:  Kate Mihalevich. |
| 14:07:53 10 | MS. MIHALEVICH:  Good afternoon, Judge.  This |
| 11 | is Kate Mihalevich.  Can you hear me okay? |
| 12 | THE COURT:  Yes, yes. |
| 13 | MS. MIHALEVICH:  My apologies.  My camera's |
| 14 | not working. |
| 14:08:03 15 | THE COURT:  That's okay. |
| 16 | MR. BOONE:  And also John -- I'm sorry.  John |
| 17 | Kokkinen, Senior Associate for OptumRx. |
| 18 | THE COURT:  All right.  Welcome, John.  All |
| 19 | right. |
| 14:08:14 20 | And who do we have for Express Scripts? |
| 21 | MR. COOPER:  Your Honor, for Express |
| 22 | Scripts -- and I'll have them introduce themselves as well |
| 23 | -- we have Urmila Baumann, who's the Chief Counsel for |
| 24 | Legal, as well as Ashley Rothe, who helps oversee this |
| 14:08:30 25 | matter. |

1          MS. BAUMANN:  Good afternoon, your Honor.

2          THE COURT:  Who is the first person?  I didn't

3     get the last name?

4          MS. BAUMANN:  Your Honor, my last name is

14:08:41  5     Baumann, B-A-U-M-A-N-N.

6          THE COURT:  All right.  Thank you.  Okay.

7          I had -- I requested that we get together because what

8     I feared happening a few months ago has happened.  And this

9     litigation between the subdivisions and the PBMs is starting

14:09:12  10    to degenerate into a hockey ball rather than a professional

11    litigation.  And that's different than the way things have

12    gone in this MDL for six plus years.

13         And I had warned the parties I didn't think this was a

14    good road to go down, this motion to, you know, recuse or

14:09:38  15    disqualify Motley Rice.  I said if the Defendants OptumRx

16    persisted in this, things will degenerate.  That seems to

17    have happened.  So it's my job to change the paradigm, and

18    I'm changing it right now.

19         So I make it clear I do not want to be spending my

14:10:05  20    time and the time of my valuable team dealing with motions

21    for protective orders, motions for sanctions, all these

22    motions to dismiss individual Defendants.  All right?  If

23    the parties insist that I do, and I determine that anyone

24    has, you know, needlessly complicated, protracted, whatever

14:10:34  25    this MDL, I will impose very hefty sanctions on the lawyers

1    involved and the clients involved, both.  And, you know,

2    it's -- but if it's required, I've got as hard an edge as

3    anyone and I know how to use it, and I will do it.  I don't

4    want to.  But I don't want there to be any question in

14:10:58 5    anyone's mind about my ability and willingness to use it.

6         We're also going to start having regular conferences,

7    and this one would have been in person but there was no way

8    to do it quickly in person.  We will be meeting about once a

9    month, and it will be in person in Cleveland, and I'm doing

14:11:20 10    this for a number of reasons.

11         It's very easy to demonize people and weaponize things

12    on Zoom.  It's a lot harder when you're in person when you

13    know each other.  So I want the lawyers to get to know each

14    other and, more importantly, I want the clients to get to

14:11:36 15    know each other.

16         Clients think that the lawyers aren't proceeding in

17    this litigation the way they want them to, although later

18    they tell the lawyers to do things differently or make the

19    change, that's how it works.  The clients are driving the

14:11:51 20    train.  And I want the clients to get to know each other.

21         So we're going to start off with what should be simple

22    in this -- you know, is where we just ended the last

23    conference on.  All right?

24         I had -- we have this motion.  I think it's primarily

14:12:13 25    OptumRx.  I don't know, eight or ten different OptumRx

1  entities that have been named, and OptumRx filed a motion to

2  dismiss some.

3      All right.  There's some background so put yourself on

4  mute, someone or everyone if you're not talking.

14:12:37  5      I asked Special Master Cohen to work with parties to

6  just work this out.  I didn't want to be spending my time.

7      For some reason, this didn't -- file -- involved

8  Walgreen's, Wal-Mart, CVS.  The Plaintiffs had sued a bunch

9  of entities for each of those.  I said look, no one's going

14:13:02  10  to be dealing with all these separate entities in the trial.

11  It's all things Wal-Mart, CVS.  You work it out.  All right?

12      They worked it out and the simple way to work it out

13  is, I guess, either a number of those entities will dismiss,

14  dismiss without prejudice, with the simple agreement that if

14:13:19  15  there was a judgment, it would get paid.  That's all the

16  Plaintiffs care about.  If they win, they get their judgment

17  paid.  If they lose, one entity or 20 entities for a given

18  Defendant, they lose.

19      So no one's going to spend any time and I -- so I

14:13:37  20  assume that if we have a trial for any of these four cases,

21  we're not going to have the lawyers for the Plaintiffs or

22  the Defendants spending the first half an hour or an hour of

23  their opening statement trying to explain to the jury all of

24  these and how the entities should --

14:14:04  25          MR. WEINBERGER:  I'm sorry to interrupt.

1        MR. BOONE:  This is Brian -- you keep cutting

2    out for me.  I can't hear what you're saying, your Honor.

3        THE COURT:  Well, all right.  I'll stop and

4    reconvene tomorrow in Cleveland.  All right?

14:14:22  5        DEPUTY CLERK:  Your Honor, this is Corey.  I

6    can't -- he's -- it's hard for me, too.

7        THE COURT:  Well, Helen, can you fix this?

8        JUDICIAL ASSISTANT:  All I can do is -- hang

9    on, hang on.

14:14:34 10        It's Helen.  This is Helen, the assistant.  Judge,

11    please let me talk for one minute.

12        THE COURT:  Yes.

13        JUDICIAL ASSISTANT:  It's your computer.  Your

14    signal is a little low, I think.  I'm going to kick you out

14:14:46 15    again and have you rejoin.

16        I know it's a pain.  It's about all I can do from

17    here.  So here we go.

18        THE COURT:  Get IT on.  They can help.

19        SPECIAL MASTER:  Judge, let me suggest

14:15:02 20    something.

21        Judge, if you turn your video off, it will often help

22    the connection because it's just a bandwidth issue and

23    everyone will still be able to hear what you say.

24        DEPUTY CLERK:  Can we also ask anyone who's

14:15:15 25    not planning on speaking to mute their video?  That's the

1    point, David.  That will help.

2        If you're NOT planning on speaking, and you don't

3    mind, please turn your video off as well so we can lessen

4    the blow here.

14:15:37 5            JUDICIAL ASSISTANT:  Judge had actually

6    dropped off and that wasn't me.  He did it all on his own.

7    So when he does that, we can tell him to turn off his video.

8                SPECIAL MASTER:  Thank you, Helen.

9                JUDICIAL ASSISTANT:  Judge, this is Helen.

14:15:58 10   Can you hear me?

11               THE COURT:  Yeah, I can hear you.  I have a

12   problem.  Can people hear me?

13               JUDICIAL ASSISTANT:  Judge, turn off your

14   video if that if that helps.  Let's see if that helps.

14:16:14 15              THE COURT:  Okay.  Just --

16               JUDICIAL ASSISTANT:  You got it, Judge.  Try

17   talking.

18               THE COURT:  All right.

19               JUDICIAL ASSISTANT:  Okay.

14:16:25 20              THE COURT:  Can people hear me now?

21               SPECIAL MASTER:  Judge, it's a little choppy,

22   but I think you should go ahead.

23               THE COURT:  Well, folks -- we'll have to

24   reconvene in person or somewhere else.

14:16:44 25       Helen, could someone in the office, can they get IT to

```
 1    help with this?
 2                JUDICIAL ASSISTANT:  We can try, Judge.  I
 3    just don't think that anyone --
 4                THE COURT:  Who on my staff is in the office
 5    here?
 6                SPECIAL MASTER:  Judge, this is David.  I can
 7    help this way.
 8         If you hang up, I will call you, and you can run it
 9    through my cellphone and that will work.  Obviously you
10    won't have video but it will work.
11                THE COURT:  I don't.
12                SPECIAL MASTER:  So --
13                THE COURT:  I'd rather see people but all
14    right.
15                SPECIAL MASTER:  Okay.
16         You can even leave it running, Judge, but if you run
17    it through -- you can leave your Zoom running and see
18    people, and I'll call you on your phone, your cellphone, and
19    you can run it that way.
20                JUDICIAL ASSISTANT:  That's a great idea,
21    David.  Thank you.
22                THE COURT:  All right.
23                JUDICIAL ASSISTANT:  Judge, you can turn your
24    camera on if you want and I can mute you.
25                THE COURT:  Well, it says you disabled my
```

1    video, so.

2                        JUDICIAL ASSISTANT:  Okay.  That was --

3                        DEPUTY CLERK:  That was me, not Helen, Judge.

4    I can hear you fine now.

14:18:05  5                        THE COURT:  All right.

6                        SPECIAL MASTER:  Can you hear me?

7                        THE COURT:  Yes.  The question is whether I

8    should turn the sound off on my computer.

9                        SPECIAL MASTER:  You should.  Turn it off on

14:18:19 10   your computer.

11                        THE COURT:  All right.

12                        JUDICIAL ASSISTANT:  David, we cannot hear the

13   Judge.

14                        SPECIAL MASTER:  Parties, can you hold just a

14:18:48 15   moment?  I'm going to give the phone number to call.

16                        JUDICIAL ASSISTANT:  David, can you tell him

17   I'll fax him a phone number to call?

18                        MR. FARRELL:  This is Paul Farrell.

19        If he's on a laptop or fixed station, he might be able

14:19:18 20   to move where he has better reception.

21                        JUDICIAL ASSISTANT:  Yeah.  I just don't know

22   if he knows where that is in his house but he always works

23   from where he is right now.  So I don't know if it will get

24   better anywhere else.

14:19:50 25                        THE COURT:  All right.  I just did it.  Can

1    people -- well, I'm just going to go ahead.  If not, we'll

2    do these in person.

3         So we were talking about all these various entities.

4    Okay.  I mean we -- everyone knows that there is a trial.

14:20:24  5    We're not going to be worrying about all these different

6    entities for OptumRx and Express Scripts.  It's going to be

7    OptumRx or OptumRx RX and Express group.  And that's how the

8    witnesses will refer to the corporation, that's how the

9    Judge will, that's how the lawyers will, and the jury

14:20:41  10    instructions, and the verdict forms.  All right?

11         And so why -- we worked this out very easily in Track

12    3.  Why are we still wasting time on this now?  Can someone

13    explain to me?

14              MR. WEINBERGER:  Well, your Honor, I'll be

14:21:09  15    happy -- on behalf of the Plaintiffs, in response to the --

16    in response to our motion, jurisdictional motion to dismiss,

17    the very last exhibit, which I think is Exhibit F, contains

18    our proposed stipulations and I think would have solved this

19    issue entirely.  And we put that proposal --

14:21:37  20              THE COURT:  What is -- what is the proposed

21    stipulation?

22              MR. WEINBERGER:  So it's -- actually we filed

23    it as a separate supplemental pleading shortly after our

24    response to file the motion to -- response to motion to

14:21:57  25    dismiss.

1       So it's on the docket.  We don't have a docket number

2   for it but --

3               THE COURT:  Well, all right.

4               MR. WEINBERGER:  -- I filed.

5       But the fact is we proposed a stipulation that does

6   exactly what it is that you want, and what it is that we

7   need, and it's been out there for about three weeks or more.

8       The Defendants said they intended to respond to it but

9   they haven't.

10              THE COURT:  All right.  Well why haven't the

11  Defendants responded?

12              MR. COOPER:  Judge Polster, this is Jonathan

13  Cooper for the Express Scripts Defendants.

14      We have a counter proposal we've been vetting with our

15  client and expect to be able to send it this week.  There

16  are certain issues about why certain Express Scripts

17  entities cannot be collapsed into one another.  A key one,

18  just as an example -- there are others, but just as an

19  example, there are certain Express Scripts entities that are

20  dispensers and subject to the Controlled Substances Act and

21  there are others that are not.

22      So if they were all to be collapsed into a single

23  company, that would be subjecting certain entities to legal

24  duties that they don't actually have.  So there are certain

25  things need to work out in the proposal and will be

1    following up with the Plaintiffs about that this week.

2                    THE COURT:  Well, we can -- again, the issue

3    is satisfying any judgment, all right, or any written

4    injunctive relief.  All right?  That's all we're talking

14:23:36  5    about.  I mean that's the Plaintiffs' concern.  We just --

6                    MR. COOPER:  That may be the Plaintiffs'

7    concern -- sorry.  I didn't mean to speak over you, sir.

8                    THE COURT:  But so -- all right.  There's ways

9    to work this out.  So all right.  What about --

14:23:53 10                    MR. WEINBERGER:  Your Honor, the document

11    filed was Document 5450.  It has the proposed stipulation.

12                    THE COURT:  4540?  All right.  Fine.

13                    MR. WEINBERGER:  5450.

14                    THE COURT:  5450.  All right fine.

14:24:09 15        Is OptumRx going to respond to the response?

16                    MR. BOONE:  Your Honor, this is Brian Boone

17    for OptumRx and United.

18        And we're working on a counter proposal.

19                    THE COURT:  All right.

14:24:24 20        Well I want this done or else the Court's going to do

21    it.  Okay?  And you may not know -- no one may be happy how

22    I do it.  But trust me, no one is going to be -- it's hard

23    enough for a jury to understand they have to figure out four

24    or five different identities and four or five separate

14:24:44 25    Express groups identities, they won't get beyond that.

1    They'll be bald at the opening statement and it will get

2    worse, and we have enough smart people who know this.

3        So again, you know, if the lawyers can't solve it,

4    then I want the clients to solve it.  And if no one will

14:25:02  5    solve it, the Court will get it done.  All right?

6        So I'm not going to spend any more time on, you know,

7    motion to dismiss various entities.  Okay?

8            MR. BOONE:  Judge Polster, this is Brian Boone

9    again.

14:25:16 10            THE COURT:  You can't resolve it, there would

11    have to be a whole lot of expensive discovery on each and

12    every one of these entities before you can ultimately

13    determine factually what the evidence is against any of

14    them.

14:25:31 15        Again, this is going to be done.  All right?  So the

16    clients understand you're to get it done.  If the lawyers

17    can't, you're to get it done or else I'm going to get it

18    done and no one may be happy how I'll get it done.

19            MR. BOONE:  Judge Polster, this is Brian Boone

14:25:47 20    again for OptumRx and United.

21        I just want to make sure I understand you.  When you

22    say get it done, what do you mean by that?  Do you mean the

23    dismissal of the non-entities?

24            THE COURT:  Why don't you -- why don't you

14:25:59 25    talk to everyone else on the Zoom afterwards.  Okay?  When a

1    Federal Judge says the parties don't do it, the Court will

2    do it, that should be clear.  All right?  If it's not, well

3    I suggest you ask someone else because my guess is every

4    single person on this Zoom besides you understands what I

14:26:25 5    just said.  All right?

6        Now I also don't want to be, you know, spending a lot

7    of time, you know -- I was very clear in April what I said

8    the Defendants had to do in their discovery obligations.

9    All right?  They're to do it.

14:26:51 10        It's also clear the CMO said that there were -- each

11    side got a certain amount of interrogatory requests for

12    depositions, whatever.  All right?

13        If a given party feels that that wasn't sufficient,

14    and you think you need more, you try and work it out with

14:27:07 15    the other side.  And if you think the other side's being

16    unreasonable, all right, then you got to ask the Court

17    permission to exceed the limits.  Everyone understands that.

18        So I'm going to put a pause on this briefing on the

19    motion for sanctions and motions for protective orders and

14:27:29 20    direct the lawyers to sit down as professionals.  If you

21    can't do it by Zoom, go to some city together and work it

22    out like good lawyers do.  All right?

23        And if the lawyers can't, then I want -- we got the

24    clients on here.  I want them to take control.  I want this

14:27:51 25    litigation to start running professionally.

1    There are -- there's some substantive motions to

2 dismiss, based on -- well, I guess limitation and whether

3 there's not -- there's a monetary loss, whatever, I'll have

4 to deal with those in the briefs.  But this other stuff, you

14:28:22 5 all know how to work things through, and I'm going to give

6 you one more chance to do it because I have to start doing

7 it.  It's going to end up being very expensive for some of

8 the lawyers and some clients.  I will, of course, have to do

9 it if I'm given no choice but no one's going to be happy

14:28:47 10 with the outcome.

11    So, you know, again, I want your clients to start

12 having, you know, skin in the game.  And so, you know,

13 you're taking your time and your money to travel to

14 Cleveland but more importantly, I want people to start

14:29:05 15 getting to know each other.  And if you've got something to

16 say or some problem, then you sit down and you work it

17 through.  Okay?

18    We used to do it that way.  Obviously, everyone knows

19 the most important things that ever happen in a court

14:29:23 20 hearing or conference or whatever is not what happens in

21 with the Judge.  It's before and afterward, 90 percent of

22 what needs to get done, and that's when it gets done.  When

23 you see each other, you talk to people.  All right?

24    And we've lost that with Zoom.  So now that we can get

14:29:39 25 back together again, we're going to do it.  And it's clear

1    we need it with this litigation.  So we're going to start

2    doing this.

3         So I'm proposing, you know, about a month from now,

4    Tuesday, June 25th, at 3:00 P.M., and then I want a joint

14:29:58  5    status court Monday June the 24th at noon.  And you don't

6    need to file the report on the public docket.  You just

7    e-mail it to the Court.  And I think that's --

8              MR. WEINBERGER:  Your Honor, the -- your

9    Honor, the 25th is -- just checking the calendar.

14:30:27 10              THE COURT:  Tuesday, the 25th.

11              MR. WEINBERGER:  Okay.

12              THE COURT:  About a month from now.

13              MR. WEINBERGER:  Yeah, okay.

14              THE COURT:  At 3:00 P.M. and spend an hour or

14:30:38 15    two working through whatever we've got.  And mainly, I think

16    some personal face-to-face contact will be beneficial for

17    everyone in this litigation.  And I want to get this back on

18    an even keel.  All right?

19         I mean I had monthly meetings in this MDL at the

14:31:01 20    beginning, and they were helpful, helpful to the Court.  And

21    I think everyone got to know each other.  We obviously four

22    years ago put a pause on all sorts of public meetings.  And

23    I haven't felt the need to resume them until now.  But we'll

24    do it, litigation with the PBMs.  All right.

14:31:29 25         That's really pretty much what I had to say.  But the

1   floor is now open for anyone from the Plaintiffs' side or

2   from OptumRx or Express Scripts.  Any of the clients want to

3   say anything?

4            MR. COVER:  Judge, this is Jeremy Cover with

14:32:04 5   the City of Missouri.  Can you please clarify who you would

6   expect to see on the 25th at 3:00 P.M.?

7            THE COURT:  The people we've got on -- the

8   people we have now.

9        These are -- you know, I've got lead counsel of each

14:32:24 10  of the four subdivisions, I mean four bellwethers.  I've got

11  some representation from PEC.  I've got the -- I think I

12  asked for the chief legal officer from each of the

13  subdivisions and the general counsel or some equivalent for

14  the two corporate Defendants.  I figured, you know, I count

14:32:45 15  them as the clients.  I could have gotten CEO's, mayors, or

16  county executives, but I don't need -- you know, I want the

17  people who are, who I believe are, from the clients'

18  standpoint, are overseeing the litigation.

19       If I was wrong with that, I mean I'm assuming the law

14:33:05 20  director or chief legal officer of the city or county is the

21  right person and, you know, the corporate representatives, I

22  assume I've got the right people.  If I've got the wrong

23  people, then you've got to figure -- you know, let me know

24  and send the right people.

14:33:23 25           MR. COVER:  Thank you, sir.

1          THE COURT:  Okay.

2          Any -- I don't want to be accused of, you know, not

3     letting anyone speak.  I mean I want everyone to hear from

4     me, but I want everyone to have the opportunity to address

5     anything they want with me or anyone else.  Okay.

6          Thank you very much and have a good afternoon.

7          (Proceedings adjourned at 2:34 p.m.)

8                    C E R T I F I C A T E

9          I certify that the foregoing is a correct

10    transcript from the record of proceedings in the

11    above-entitled matter.

12

13

14

15    s/Shirle Perkins
      Shirle M. Perkins, RDR, CRR
16    U.S. District Court - Room 7-189
      801 West Superior Avenue
17    Cleveland, Ohio 44113
      (216) 357-7106
18

19

20

21

22

23

24

25