```
 1                    IN THE DISTRICT COURT OF THE UNITED STATES
                       FOR THE NORTHERN DISTRICT OF OHIO
 2                            EASTERN DIVISION

 3
        IN RE: NATIONAL              )    Judge Polster
 4      PRESCRIPTION                 )    Cleveland, Ohio
        OPIATE LITIGATION,          )
 5                                   )
        APPLIES TO ALL CASES        )    Civil Action
 6                                   )    Number 1:17MD02804
                                     )
 7                                   )
                                     )    (Pages 1 - 32)
 8

 9

10                             - - - - -

11            TRANSCRIPT OF PROCEEDINGS HAD BEFORE

12           THE HONORABLE DAN AARON POLSTER

13                  JUDGE OF SAID COURT,

14            ON WEDNESDAY, MAY 22, 2024
                             - - - - -
15

16

17

18
        Official Court Reporter:        Shirle M. Perkins, RDR, CRR
19                                       U.S. District Court
                                         801 West Superior, #7-189
20                                       Cleveland, OH 44113-1829
                                         (216) 357-7106
21

22

23

24

25      Proceedings recorded by mechanical stenography; transcript
        produced by computer-aided transcription.
```

```
1    APPEARANCES:

2

3       For the Plaintiffs:              PETER WEINBERGER, ESQ.,
                                         Spangenberg, Shibley &
4                                        Liber
                                         Suite 1700
5                                        1001 Lakeside Avenue, E
                                         Cleveland, OH 44114
6                                        (216) 696-3232

7                                        STEVEN J. SKIKOS, ESQ.,
                                         Skikos Crawford Skikos &
8                                        Joseph - San Francisco
                                         Ste. 2830
9                                        1 Sansome Street
                                         San Francisco, CA 94104
10                                       (415) 546-7300

11                                       JAYNE CONROY
                                         Simmons Hanly Conroy -
12                                       Illinois
                                         One Court Street
13                                       Alton, IL 62002
                                         (618) 259-2222
14
                                         JOSEPH F. RICE, ESQ.,
15                                       PAUL FARRELL, ESQ.,
                                         Motley Rice - Mount
16                                       Pleasant
                                         17th Floor
17                                       28 Bridgeside Blvd.
                                         Mount Pleasant, SC 29464
18                                       (843) 216-9000

19

20

21

22

23

24

25
```

```
 1    For Defendants:                    BRIAN BOONE, ESQ.,
                                         Alston & Bird - Charlotte
 2                                       Ste. 300
                                         Vantage South End
 3                                       1120 South Tryon Street
                                         Charlotte, NC 28203-6818
 4                                       (704) 444-1106

 5                                       GRETCHEN N. MILLER
                                         Greenberg Traurig - Chicago
 6                                       Ste. 3100
                                         77 West Wacker Drive
 7                                       Chicago, IL 60601
                                         (312) 456-6583
 8
                                         JONATHAN G. COOPER
 9                                       Quinn Emanuel Urquhart &
                                         Sullivan
10                                       Ste. 900
                                         1300 I Street NW
11                                       Washington, DC 20005
                                         (202) 538-8000
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          WEDNESDAY SESSION, MAY 22, 2024, AT 12:51 P.M.

2                    JUDICIAL ASSISTANT:  Hi, Judge.  This is

3      Helen.

4          You are on with your team.  Shirle Perkins is the

5      Court Reporter today.

6                    THE COURT:  Okay.  Thanks.  All right.

7          Good afternoon, everyone.  Thanks for being available.

8          I've, you know, reviewed the Plaintiffs' motion to

9      file amended complaints and the various options or comments

10     filed by the Defendants, and I've given this a lot of

11     thought.  I have a proposal but I want to hear everyone,

12     anyone who wants to react to it, and then take that into

13     consideration.

14         I'm prepared to allow the Plaintiffs to file these

15     motions.  I want it to be done in an orderly way, and my

16     intent is this is the last time we'll do this in the MDL.

17         And I think the way to do it is to have the PEC file a

18     motion for each Defendant for which it wants to amend

19     complaints, listing all the cases for that Defendant that

20     they want to add.  And they'll have to show, you know,

21     particularized need in each case, show good cause for adding

22     Defendant X to each of the cases for which it proposes to

23     add Defendant X.

24         So just say it's Milan.  All right.  There will be one

25     motion for Milan listing all defenses for which the PEC

1    wants to add Milan and then the reason or reasons for each

2    case.  And if it's the same reason for all or most of them,

3    you can say for Cases 1 through 30, this is the reason.  And

4    I would expect that the most cited reason will be the new

13:06:50  5    ARCOS data because everyone knows that the original data was

6    cut off years ago.  And it doesn't make sense to be

7    litigating in 2004 based on ten-year-old ARCOS data but

8    there may be other reasons.

9         And I would also hope that while there are motions to

13:07:09 10    add Defendants, there -- that motion should include cases

11    where the Plaintiffs are dismissing particular Defendants.

12    Again, based on the new ARCOS data which shows that that

13    Defendant has minimum or zero presence in a jurisdiction,

14    well, they shouldn't be named.  And I don't want any motions

13:07:35 15    filed against Defendants who have settled or settled in

16    principle.  There's no reason to do that.

17         There are settlements.  And so I'm thinking there

18    should be, you know -- and there are many Defendants who

19    are, you know, -- whose assets are minimal.  Their conduct

13:07:55 20    is probably minimal, quite frankly, they should be

21    dismissed.

22         So I'm thinking, you know, I'm thinking we may have

23    ten to 15, certainly no more than 15 motions.  And then I'll

24    give the Defendants 30 days.  Each Defendant will only have

13:08:15 25    to respond to the motion naming it.  And then, you know, ten

1    days or so for reply.

2        And one thing I'm making clear, any subdivision that

3    is proposing to add a given Defendant may only do so if

4    they're prepared to litigate against that Defendant.  This

13:08:37  5    isn't a little, you know, a show or a purpose pitch because

6    what's likely to result is any Defendant who doesn't settle,

7    I'm going to have to key up some bellwethers.  And if a case

8    is picked and then the Plaintiff says, "Oh, well we really

9    didn't mean it.  We want to dismiss this case," either I'm

13:08:58 10    not going to let, you know, I'm not going to let the

11    Plaintiff dismiss the case or if I do, I'm going to impose

12    very heavy sanctions on the lawyer and the subdivision for

13    really acting in bad faith.

14        So you only add someone, add a Defendant if, you know,

13:09:17 15    that -- that lawyer and that client is prepared to litigate

16    if necessary.

17        So that's -- that's my thought.  And, you know, I

18    would just add that PEC to tell me when they're -- when

19    they're prepared to file those and that will be the date,

13:09:38 20    and I'll give the Defendants a month or so to respond and

21    then about ten days to reply.  And then my team and I will

22    sort through it and make our rulings.

23        So -- but I'm, you know -- obviously, I didn't want

24    to -- I think I've had a pretty firm policy in this MDL not

13:10:00 25    to make an important decision without at least seeking input

1    from all the fine lawyers on both sides. So that's what I'm

2    doing now. So the door is open.

3           MR. WEINBERGER: Your Honor, on behalf of PEC,

4    this is Pete Weinberger. Sorry. I'm in a somewhat public

13:10:18  5    place because of logistical issues that I've had to deal

6    with but I hope you can hear me.

7           THE COURT: Yes.

8           MR. WEINBERGER: So I think fundamentally --

9    obviously, I am speaking on behalf of the PEC, and we

13:10:35 10    haven't had a chance to digest what you've just said. But,

11    you know, we have been thinking a lot about how we would

12    approach this in the event that you were going to let them

13    lift the moratorium.

14       So I think fundamentally, this works for us. I would

13:11:00 15    suggest that we have about 60 days to file the motion for

16    leave. I -- there are several reasons for that time frame.

17       Number 1, obviously each of the Plaintiffs' counsel

18    has to have a conversation with their subdivision clients

19    without this matter. And secondly, we are in communications

13:11:38 20    with both the manufacturer and distributor pharmacy

21    defendants who are in the Tier 2, Tier 3 bucket. And I'd

22    like to have the opportunity to spend some time with them to

23    see how serious they are about potential resolution of their

24    cases. So I think -- I think 60 days would permit us to do

13:12:15 25    all of that.

1     I think with respect to some Defendants, we're

2     probably quicker than 60 days in terms of filing a motion

3     for leave.  But if we have an outside limit of say 60 days,

4     I think that works for us.

13:12:33  5     Now, so let me just stop there and --

6          THE COURT:  All right.

7     Well I, you know, I was thinking somewhere along

8     there.  I mean Defendants are, you know -- you say we must

9     have these sooner.  So 60 days seems okay to me.

13:12:53 10          MR. WEINBERGER:  And let me just stop and ask

11    any of my colleagues if they have any reaction to what I've

12    said.  I have no concerns about your contradicting anything

13    that I've said, but I may not have thought this through

14    completely.  So if anybody else has any input, please

13:13:15 15    provide it.

16          MR. SKIKOS:  I'm good.

17          MR. CONROY:  I'm good as well with 60 days.

18    It's James Conroy.  Sorry.

19          THE COURT:  I think that was Steve Skikos who

13:13:29 20    said -- I think Steve said okay.  All right.

21     Any of the other Plaintiffs want to weigh in?  So

22    60 days, we're talking about somewhere around July 22nd.

23          MR. MOUGEY:  Your Honor, this is Peter Mougey.

24     Our group represents about 750 cities and counties,

13:13:47 25    and the only caveat I have, I think 60 days is reasonable

1    but over the summer, a lot of cities and counties cancel

2    board and council meetings, and just with the caveat that I

3    think Pete is right, 60 days is sufficient, with the caveat

4    that a lot of cities and counties go dark over the summer.

13:14:08  5    And I just want to give that, like I said, a caveat

6    out there in the event --

7                 THE COURT:  All right.

8          Well, look.  What you can do, I mean if -- Peter, if

9    you have a situation like that, say we come to July 20th and

13:14:27 10    a given subdivision doesn't have any meetings until August,

11    just say, you can include them in the motion and say that,

12    you know, that the officials want to add Defendant X.  And

13    so you're adding to the list.  But this has to be formally

14    done at the council meeting or whatever in August.  So I

13:14:50 15    mean I think that's the way to do it.

16                 MR. MOUGEY:  Yes, sir.

17                 THE COURT:  Okay.

18          Any of the Defendants want to weigh in?

19                 MS. MILLER:  Judge, this is Gretchen Miller.

13:15:13 20    The only comment, and I would encourage -- obviously,

21    I haven't had an opportunity to confer with any other

22    Defendants.  So if anyone on the Defendants' side has

23    comments, please speak up.

24          But the only comment that I wanted to offer was, you

13:15:27 25    know, you mentioned -- and you've mentioned several times

1    Defendants who have minimal to zero presence in a particular

2    jurisdiction should not be in the case; that, you know, we

3    remained -- there are a number of Defendants in,

4    particularly I know in the Tier 3 group who remain de

13:15:47 5    minimis to zero market share, and I guess I don't have any

6    specific requests, other than I hope that we can come to a

7    process that does resolve those cases.  I think that that

8    would help the parties move forward a lot more quickly.

9          MR. WEINBERGER:  So if I can respond to that,

13:16:04 10   your Honor.  This is Pete Weinberger.

11         Gretchen, thanks for bringing that up.  We have -- we

12    have a situation where we have the experience of the C23

13    trial where market share of one of the Defendants who ended

14    up with a jury verdict against them, and a judgment against

13:16:29 15   them was in the 2.3 percent range.

16         So to the extent that any Defendant is relying on, you

17    know, that 5 percent rule, because of some prior discussions

18    by the Court, prior to that verdict, they should be

19    dissuaded of that notion.

13:16:54 20        Now, that is not to say that the PEC is not cognizant,

21    and Plaintiffs' counsel in general, is not cognizant of the

22    fact that we have to look very carefully at any case or any

23    subdivision, let's say, where the Defendant has not done any

24    business or has not either distributed or dispensed opioids

13:17:28 25   into that particular jurisdiction.

1    Now that -- that's not a hard and fast rule either

2    because there are situations where you have adjoining

3    counties or cities within counties where they may not have a

4    particular door.  They may not have been a distribution

5    specifically into that jurisdiction where, nonetheless,

6    there's a good reason to pursue the case.

7    So it's not a hard and fast rule but, Judge Polster,

8    you have our commitment that we will look at this history

9    very carefully, and we will follow the lead that you've set

10   in this hearing and that you've set throughout this case to

11   make sure we're not including Defendants that do not belong

12   in the case.

13   THE COURT:  Thanks, Pete.

14   And again, I mean what I said is -- it also goes to

15   that.  Any Plaintiff and their firm that's going to add it,

16   put a Defendant in the case, has to be prepared to litigate

17   because if there's a bellwether process, those cases are

18   open to be picked, and I don't want to have problems

19   afterwards.  So okay.

20   Any other Defendant wants to weigh in?  So again, each

21   Defendant would only -- you have one motion, and it would

22   list all the cases where the Plaintiffs are seeking to add

23   that Defendant and also hopefully some would be dropped.

24   You wouldn't oppose that.  And I just need to respond to the

25   motion, that one motion.

1        MR. COOPER:  Judge Polster, this is Jonathan

2    Cooper for the Express Scripts Group Defendants.

3        We just received this proposal and need to consider it

4    more, but I will say that we have at least some initial

13:19:22  5    concerns with this proposal.

6        One is that as, you know, the Sixth Circuit has said

7    you're supposed to grant motions for leave to amend based on

8    the record and individual case.  And so a single motion

9    covering Express Scripts in more than one case, and my

13:19:39 10    understanding is there probably will be more than one case

11    covered by the motion you're contemplating, we don't think

12    it would comply with that.

13        THE COURT:  Well, I'm saying that they have

14    got a reason for each case.  All right?  And, you know, the

13:19:53 15    reason is all right, the new ARCOS data shows, you know,

16    market share of 10 percent, then you know, Subdivision A,

17    12 percent, Subdivision B, et cetera.  They'll have to put

18    that in for each case.  So I'm dealing with that.  They

19    can't just say, you know, here's 50 cases, we want to add

13:20:17 20    Express Scripts and just cite generally ARCOS data.  And

21    that isn't going to cut it.

22        MR. COOPER:  That is one concern and then the

23    second concern would be more practical.

24        Depending on the volume of cases that is covered by

13:20:32 25    the motion, there may be lots of different reasons why a

1   given case, there shouldn't be an amendment.  And those are

2   going to be case specific.  There may be different laws

3   applicable, different facts that apply to a given case.  And

4   addressing all of these different cases in a single motion,

13:20:49  5   from our perspective, a single opposition brief I think

6   would be very complicated and challenging.  Probably

7   significant time --

8              THE COURT:  Well, I can give the 60 days --

9   you know, I've given Plaintiffs 60 days to respond.  I can

13:21:04 10   give you 60 days to answer.  And if -- and if a given

11   Defendant needs more, you know, that's fine.

12        So you say all right, we need -- we need additional

13   time to respond, then I can, you know, grant additional

14   time.  I can start with 60 days.  It doesn't make sense,

13:21:29 15   just say Plaintiffs want to add Express Scripts to 100

16   cases, just put it out there.  It seems crazy to file a

17   hundred separate motions.  File one motion for Express

18   Scripts, and they list each case, and each has to say all

19   right, why are we proposing to add Express Scripts and

13:21:52 20   County 1, City 3, and give a reason or reasons.  And then

21   Express Scripts can file one response, and they address, you

22   know -- they may decide, you know, some of the cases that

23   there was good reason.

24        So we say all right, we're not opposing here, and in

13:22:08 25   this 75, we're opposing and here are our reasons.  So I'll

1     propose giving the Defendants 60 days to respond.

2                    MR. BOONE:  This is Brian Boone from Alston

3     and Bird.

4         I agree with everything Mr. Cooper just said.  We

5     object to the proposal.  What you're suggesting, I think,

6     would violate the rules and the Sixth Circuit precedent.  It

7     would collapse the distinctions across the cases.

8              Each case, as Mr. Cooper said, is an individual case.

9     Each Plaintiff should file its own motion.  And we would

10    have the right for each Plaintiff to oppose based on the

11    unique facts of that Plaintiff --

12                   THE COURT:  Well, you know you have --

13    Mr. Boone, you do have the opportunity.  All right?  You

14    can just say, all right, the Plaintiffs are, you know,

15    filing a motion.  They want to add OptumRx to 100 cases.

16    You can have a hundred oppositions and one -- you can oppose

17    each and every one.  But you've got to give a reason why

18    you're opposing.  You can't just say we oppose them all.

19         Since they have to give specific reasons why they're

20    adding OptumRx in Cases 1 through 100, specific cities and

21    counties, all right, they're going to give a reason for

22    County A and City B and County C, et cetera, et cetera.  All

23    right?  And you can -- you want to oppose all 100, you can

24    oppose all 100, and you just give your specific reasons.

25    City and County, by City and County.  And then they'll give

1    their reply, City and County and then I'll make my decision.

2    And my decision will be for each Defendant.  I'll have a

3    ruling for each contested, each contested City Or County.

4         There's no opposition, then I don't have to decide.

13:24:10  5    But if you want to -- they're seeking to add OptumRx to 100

6    and you're opposing all 100, I'll have to make a hundred

7    separate rulings with respect to OptumRx.

8                   MR. BOONE:  Judge Polster --

9                   THE COURT:  I'm not proposing like, you know,

13:24:26 10    not doing that.

11         So I'm just saying you don't need a hundred separate

12    -- you don't need a separate motion for each City and

13    County.  We've got a PEC.  All right?  And the advantage of

14    that is they can coordinate it.  And so they can file one

13:24:41 15    motion for each Defendant, listing each and every case that

16    they're -- any of the lawyers are seeking to add that

17    Defendant and give them the reason for each and every case.

18         So I believe I'm completely complying with the Civil

19    Rules and whatever the Sixth Circuit has said.

13:25:01 20                   MR. BOONE:  So, Judge Polster, I just want to

21    make sure I understand what you're suggesting.

22         Are you suggesting they will file one motion, say for

23    OptumRx, and then we would have to file 100 separate

24    oppositions?

13:25:12 25                   THE COURT:  No, no.  You file -- no.

1          You file one motion, one response.  Okay?  But it will

2      be, you know, case -- one response addressing all 100 cases.

3      And for each case, you know, if you say no opposition, fine.

4      Then we move on.  And if you say, you know, Case 1, no

13:25:31  5      opposition, Case 2 -- obviously it will be a number, it will

6      be a subdivision with a case number.

7          We'll say City of Rochester, we oppose, you know, and

8      here's why.  Okay.  And then City 3.  And that will be your

9      response.  And then they'll need to file a reply for any of

13:25:50  10      the ones where you've opposed.  And then I'll make a

11      decision and I'll make a ruling for OptumRx and I will

12      address my ruling case by case, any case for which they're

13      seeking to add you and you're opposing.  And I'll have a

14      specific ruling for each and every one of those cases.

13:26:12  15              MR. BOONE:  I'm trying to understand what

16      you're suggesting because it sounds like -- so through your

17      proposal, this will be much easier for the PEC, which is not

18      a Plaintiff.  They represent Plaintiffs in their individual

19      cases.  They are not a Plaintiff.

13:26:26  20          And so we would -- it would cut short our right to

21      oppose, based on the unique facts of each case.  If we have

22      to put all of that in a single opposition responding to the

23      PEC's single motion --

24              THE COURT:  Well, the case will be filed --

13:26:41  25      hold it.

1        MR. BOONE:  -- six months to work this out in

2    the context of a single motion.  And we're still objecting

3    because I think this violates the rules.

4        THE COURT:  Mr. Boone, with all due respect,

13:26:53 5    you're just objecting to everything.

6        MR. BOONE:  I'm not.  I'm stating my opinion.

7        THE COURT:  You can respectfully disagree.

8        MR. BOONE:  I do.  I'll respectfully disagree.

9        THE COURT:  Fine.  We disagree with each

13:27:07 10   other.  Not the first time.

11       So I'm not -- you have a right to object to each and

12   every one.  You don't have to file a hundred separate pieces

13   of paper.  You can do it in one motion.

14       If you think 60 days is, you know -- I'm giving you

13:27:25 15   60 days.  When you see what they've got, you say we need

16   longer, I'll give you an extension.  I'm not going to give

17   you six years but all right.

18       So there's no reason for them to have -- and their

19   motion, it won't be just PEC.  It will be by any -- include

13:27:45 20   any of the lawyers who are lead counsel for any of those

21   subdivisions.

22       I don't know how many, you know, how many of those

23   lawyers are.  This may be the same lawyers who have 30

24   cases.  I don't know, but it would be by all those lawyers.

13:27:58 25   All right?  And they will have to make a case-by-case, you

1     know, good cause shown.  So for each case, they'll have to

2     say specifically why we're proposing to add OptumRx now.

3     And then you'll be able to respond.  All right?

4         So start out with 60 days but if it turns out you need

5     more time, all you have to do is -- if you can't work out an

6     agreement with the Plaintiffs for more time, just file a

7     one-paragraph motion saying why you need more time and I --

8     if it's a reasonable request, I'll grant it.

9         But the Sixth Circuit didn't say you had to have 100

10     different motions.  They certainly didn't say you can't, you

11     know, ask for more than one thing in a motion.  You filed a

12     lot of motions where you've asked for more than one thing or

13     covered more than one case.  Okay?  Do it all the time.

14         MR. BOONE:  Respectfully, your Honor, the

15     Sixth Circuit did say that you have to decide any motion in

16     an individual case, based on the record in that case.  And

17     what I'm saying is that if you put it all in one motion and

18     everything in one opposition, you're going to cut short our

19     opportunity, our ability to oppose based on the unique facts

20     of each case.

21         THE COURT:  Mr. Boone, that makes no sense.

22     You can say the same -- you can say the same thing

23     about five cases in one pleading that you would say in five

24     individual pleadings.  The one pleading will be longer

25     because it will contain everything you were going to say in

1    five other ones, but you can say exactly the same thing.

2    It's just longer because you have -- let's say one page.  I

3    mean it would be a 100-page pleading.  You could have one

4    page for each plea if you want or a half page, whatever.

13:30:09  5              MR. BOONE:  And what I'm suggesting, your

6    Honor, is that --

7                   THE COURT:  You just --

8                   MR. BOONE:  -- it's probably going to take

9    more than one page for each Plaintiff --

13:30:16 10             THE COURT:  Well, that's --

11                  MR. BOONE: -- more than one page for each

12   Plaintiff.  And by forcing us into this box, it will cut

13   short our right to oppose the way that the Rules allow us to

14   oppose.

13:30:28 15        Your proposed amendment sounds like this is all in

16   name of efficiency, but the Sixth Circuit has made sure the

17   Rules don't bend in efficiency in an MDL.

18                  THE COURT:  All right.

19        Mr. Boone, I don't want to be argumentive.  I think

13:30:44 20  you're just -- either I'm sick or you're just making an

21   argument for the sake of making an argument.

22        Can you please tell me what you would say differently

23   in your single response than you would say in a hundred

24   separate responses with respect to Subdivision A?  All

13:31:08 25  right?

1          What would you say differently in your single response

2     with respect to Subdivision A that you couldn't and wouldn't

3     be able to say in a single response that covers a hundred

4     subdivisions?

13:31:24 5          MR. BOONE:  So are you saying we would have

6     the same amount of space briefing-wise for each Plaintiff as

7     if they had filed a separate motion?

8          THE COURT:  I'm not giving you any page

9     limits.  Okay.  I have no idea how many cases you've got.

13:31:38 10   Okay?

11         Obviously if they're asking -- their motion is going

12    to be pretty long with respect to OptumRx if they're going

13    to add in a hundred cases because they're going to have to,

14    you know, take a considerable period to explain each and

13:31:56 15   every case.  All right?

16         And you're going to be able to respond to each and

17    every case.  I don't care how long the thing is, I just

18    think it's a lot easier to keep track of one file from

19    OptumRx rather than hypothetically a hundred, and one

13:32:16 20   response for OptumRx rather than hypothetically a hundred.

21         MR. COOPER:  Sorry.  I didn't mean to cut you

22    off, sir.  This is Jonathan Cooper for Express Scripts

23    again.

24         One further question about this proposal.  Are you

13:32:33 25   contemplating the PEC motion will include proposed amended

1  complaints for each separate case?  Because I guess one

2  question I have is how are we going to know what the new

3  alleged facts and the new claims being proposed against --

4  THE COURT:  Well, I'm assuming the claims are

13:32:48  5  the same.  Essentially the claims are the same as the ones

6  in the existing complaint that --

7  MR. COOPER:  No new claims are allowed to be

8  added?

9  THE COURT:  We have this public nuisance in

13:33:07  10  RICO.  All right?  I think that's what we're talking about.

11  Am I right from the PEC standpoint, public nuisance and/or

12  RICO, that's it?

13  MR. WEINBERGER:  That's pretty much the case,

14  your Honor, but I want to address something Mr. Cooper asked

13:33:21  15  about.

16  So I would anticipate that one of the grounds for our

17  motion for leave to amend will be that discovery in the

18  bellwether cases have revealed new information that we

19  didn't previously have which --

13:33:42  20  THE COURT:  All right.  Tell us what that

21  information is.

22  MR. WEINBERGER:  We absolutely intend to do

23  that.  And as you know, amended complaints to conform to the

24  evidence are routinely allowed as part of the motion for

13:33:56  25  leave.

1      So while I don't believe that the legal claims are

2   going to be any different than what we've pled in the

3   bellwether compliance, it is quite possible that we are

4   going to allege additional facts which we didn't previously

5   know and the subdivisions were not aware of as the grounds

6   for motion to leave.  So I don't --

7                  THE COURT:  You're alleging the facts but I'm

8   just saying this.

9      The only claims that are going to be brought are RICO

10  and public nuisance.  I'm just going to leave at that.  We

11  don't need anything else.  All right?

12     So I'll just say we're talking about RICO and public

13  nuisance, which we're talking about the PBMs.  Those are the

14  only claims in the existing bellwethers.  All right?

15                 MR. COOPER:  Your Honor, respectfully, that's

16  not correct.  The bellwether complaint added various State

17  Court claims that are not public nuisance.  So that's the

18  only reason I'm asking this because the four PBM

19  bellwethers, the amended complaints that were filed last

20  year included a bunch of claims that are state-specific or

21  jurisdiction-specific and there may be jurisdiction-specific

22  defenses to them.

23                 MR. WEINBERGER:  So Mr. Cooper is correct.

24     And to the extent that there are additional states

25  that we didn't previously have, the state law may be

1      implicated with respect to the state law claims.  You know,

2      we will --

3                 THE COURT:  All right.

4         I guess you're going to have -- you know, the

13:35:39 5    Plaintiffs' motions are going to have to be identified by

6      subdivision.  All right?  What claim or claims you're

7      proposing to bring against the entity that you're adding.

8      All right?

9         So just say if we've got, you know, in the OptumRx

13:36:04 10   motion, for each and every subdivision you're going to have

11     to say what claim or claims that subdivision is proposing to

12     bring against OptumRx and what is your basis for adding, you

13     know, for filing those claims now against OptumRx.  ARCOS

14     data, discovery that's revealed the following facts,

13:36:34 15   whatever you've got, put it in there, and then OptumRx will

16     respond.

17                 MR. BOONE:  Judge Polster, again, this is

18      Brian Boone for OptumRx and United.

19         Are you saying that they don't have to file with their

13:36:54 20   motion for leave the proposed amended complaint for each

21     Plaintiff; they can just do this in the bodies of the

22     motions, say either the claims we're going to bring for this

23     county as opposed to -- because we would be entitled to see

24     the proposed amendment and base our opposition on what

13:37:10 25   they're proposing to amend in the way of the complaint that

24

1     they want to grant.

2               MR. WEINBERGER:  Your Honor, may I address

3     that?

4          There are -- there's no hard and fast rule that I'm

13:37:29  5     aware of that requires that we attach to the motion for

6     leave a copy of the actual amended complaint which we intend

7     to file.

8          Sometimes that occurs and sometimes it doesn't, but we

9     hear you loud and clear that with respect to the claims that

13:37:47 10     we intend to assert on behalf of the subdivisions, we will

11     be -- we will make it clear in our motion what it is that we

12     intend to allege.

13               THE COURT:  All right.

14          In this case, because there's been so much litigation,

13:38:07 15     everyone sees and knows what the claims look like.  All

16     right?  We've got plenty of public nuisance claims, we've

17     got plenty of RICO claims.  They want to make -- all right,

18     if there's a specific state law claim and, you know, I would

19     say you should -- I mean, quite frankly, it may already be

13:38:30 20     in the existing complaint because remember, this is amending

21     existing complaints that have already named other

22     defendants.

23          So you've got allegations.  So if you just -- you

24     know, say all right, we're keeping the same allegation,

13:38:45 25     we're adding OptumRx, and see what it is.  I don't need to

1    have the complaints filed.  But you've got to -- there has

2    to be enough specificity so the Defendant knows exactly what

3    you are proposing to allege what they did or didn't do that

4    violated the law.

5        So, you know, there's no page limit on -- I'm not

6    putting a page limit on the Plaintiffs' motion and I'm not

7    putting any page limit on the Defendants' motion because I

8    have no idea how many cases are included and how much -- how

9    long it's going to take you, how much detail you're going to

10   include on each case.  Obviously, it should include a lot of

11   details so the Defendants can see it and make the best

12   showing you can.  So there's no page limits either way.

13            MR. BOONE:  Again, this is Brian Boone for

14   OptumRX and United.

15       I can tell you from my experience, I don't think I've

16   ever opposed an amended complaint without seeing the

17   proposed amended complaint.  And it sounds like they don't

18   have to file proposed amended complaints so long as their

19   motion -- that's highly irregular in my --

20            THE COURT:  That's fine.  I'm not going to --

21   I mean I want this to move forward.  Okay?  So you,

22   Mr. Boone, you know -- you know very well what a RICO

23   complaint against OptumRX looks like.  You know very well

24   what a public nuisance claim against OptumRX looks like.

25   You've got them in the four bellwethers.  Okay?

1      Any one they're proposing to say would say pretty much

2   of the same thing but it will include specific evidence or

3   allegations.  And that's what they're going to have to

4   include in their motion as to why they're now in 2024

13:40:36  5   seeking to add OptumRx to any given case.  So that's the

6   key, is the reason -- is the reason to, at this point, 2024

7   as opposed to say just 2019 when the original case was

8   filed.

9      So that's the focus on this.  It's not, you know, the

13:40:59 10   specific allegations in the complaint.  We're not addressing

11   a motion to dismiss any particular complaint or a defect in

12   any particular complaint.  We're addressing what is the good

13   cause for adding a given Defendant in 2024 when the case has

14   been pending for four or five or six or more years.  That's

13:41:18 15   the focus that I have to decide, and that's what we don't

16   need, to see the exact wording of the complaint.

17      So I'll -- if we're going 60 days -- just want to make

18   sure I'm not using a Saturday or a Sunday.  Monday,

19   July 22nd is two months from today.  So how about that for

13:41:50 20   the Plaintiffs' motion, motions?  Monday, July 22nd?

21      And then 60 days for the Defendants, we're talking

22   about the latter part of September.  Let's see.  Well, why

23   don't we just say Monday, September 23rd, for the

24   Defendants, Defendants' response.

13:42:34 25      And, Pete, what do you want for the replies?

1    MR. WEINBERGER:  I would say 30 days, your

2  Honor.

3    THE COURT:  Well, I'm thinking 30.  All right?

4  So --

13:42:50  5    MR. BOONE:  So, Judge Polster, this is Brian

6  Boone again for OptumRx and United.

7    THE COURT:  Let me just finish this.

8    So we'll say Monday, October 21st, for the Plaintiffs'

9  replies.  So July 22nd, September 23rd, October 21st and

13:43:04 10  let's just say -- let's just say 4:00 P.M. We don't need to

11  have things, you know, people working until midnight.

12  4:00 P.M.

13    Yes, Mr. Boone?

14    MR. BOONE:  This is Brian Boone again for

13:43:18 15  OptumRX and United.

16    We have ten different Defendant entities in the case.

17  Is this going to be the deadline for each of those

18  Defendants to respond?

19    THE COURT:  Well, I'm going to be addressing

13:43:31 20  that in the next conference.  All right.

21    It's time to end all that with all these different

22  entities per Defendant.  All right.  So I'm proposing to end

23  that.  We're going to have -- I mean I'm going to address

24  that in the next conference but this is a big waste of time

13:43:53 25  to have multiple entities for any Defendant.  We've got one

1    Defendant.  All right.  We did this in the Track 2 trial.

2         There are all sorts of Walgreen's entities and

3    Wal-Mart entities and CVS entities.  Guess what?  Every

4    reference to a Defendant in that trial by any lawyer on

13:44:13  5    either side, by the Court, in the jury instructions, in the

6    verdict forms, it was simply Walgreen's, Wal-Mart, CVS.  All

7    right?  We did that.  And so we're going to do that with

8    everyone else.

9         So it's OptumRx.  All right?  It's Tru-Value.  It's

13:44:38 10    Costco.  All right?  It's Pfizer.  All right.  Let's just

11    save a lot of time and effort.  Okay?

12         So it's one corporate entity.  That's what we're

13    talking about.  So we'll just -- I think we got good

14    lawyers.  You all know how to deal with that.  If you don't,

13:44:58 15    trust me, I will just start doing it myself.  All right?

16    And we'll leave it at that.  Okay.

17         Anything from anyone else?

18              MR. McDONALD:  This is John McDonald for Henry

19    Schein.  I just have a quick question.

13:45:16 20         Does this process for the Plaintiff apply to all

21    Plaintiffs in the MDL or just the political subdivisions?

22              THE COURT:  Well, I don't think we're going to

23    be having motions to amend by TPTs and hospitals, are we?

24         I'm not proposing that.  I think we've been there and

13:45:37 25    done that.

1      MR. McDONALD:  I don't know.  That's why I'm

2  asking.

3      THE COURT:  I'm just saying this.  This is

4  just the subdivisions.

13:45:45  5      MS. CABRASER:  Your Honor, Elizabeth Cabraser

6  in this case for Tribes and Third Party Payors.

7      That may be mostly right.  However, neither the Third

8  Party Payors or the Tribes have had the opportunity to amend

9  complaints or to seek to amend complaints, I apologize,

13:46:06 10  against Defendants such as the PBMs, and they wish to do so

11  and --

12      THE COURT:  Well, they haven't filed the

13  motion.  So we're not -- we're only dealing with the

14  subdivisions.

13:46:15 15      The Tribes have settled.  Okay.  I'm not proposing

16  opening this up again.  So I think we're just dealing with

17  the subdivisions at this point.  All right?

18      MR. SKIKOS:  Judge, if I could.  This is Steve

19  Skikos on the Tribes.

13:46:34 20      The Tribes are part of the negotiations and

21  settlements that are ongoing with the remaining

22  manufacturers, and the remaining distributors and

23  pharmacies, regional.

24      There is no real reason to exclude the Tribes from the

13:46:55 25  amendment process because they're part of the litigation

1    efforts with respect to these other companies. So the

2    Tribes should be -- the Tribes are like the subdivisions in

3    that they have lawyers. They're just part of the process,

4    and they shouldn't be excluded from these remaining

13:47:12   5    manufacturers, distributors, PBMs from potentially being

6    part of any settlement there as well.

7              So we would like them to be included in the deadline.

8                    THE COURT: Well, all right.

9         Well, look. One can be a single motion per Defendant.

13:47:24  10   All right? And that will include any Plaintiff in this MDL

11   who wants to add a given Defendant to any case. All right?

12   This is the last time I'm doing this so it's not going to

13   happen again. Anyone goes later, they're going to -- I'm

14   just going to simply set it denied and leave to amend.

13:47:46  15        So if someone wants to add Henry Schein to a case,

16   whether they're a city, a county, a tribe, a hospital, a

17   TPT, it's got to be in that motion.

18                   MS. CABRASER: Thank you, your Honor. We

19   appreciate that.

13:48:08  20                   MR. BOONE: Judge Polster --

21                   THE COURT: We have to get specific --

22   specific reasons, it's going to have to give its specific

23   reason for adding. All right?

24                   MR. BOONE: This is Brian Boone again for

13:48:20  25   OptumRX and United.

1      Just back to your comment about the ten different

2 entities, just to put this on the record, we're opposing any

3 effort to collapse the distinction across those different

4 companies --

13:48:29 5              THE COURT:  Mr. Boone, Mr. Boone.  I've said

6 what I've said.  Okay?

7              MR. BOONE:  I just want to create a record.

8              THE COURT:  You can create whatever record you

9 want, sir.  I've said what I've said.

13:48:42 10     Those entities will be collapsed.  If the parties

11 can't agree to do it, the Court will do it.  Okay?

12             MR. BOONE:  Based on what, your Honor?

13             THE COURT:  I've said what I've said, sir.

14 Okay.

13:49:00 15     Anything further?

16             MS. MILLER:  Your Honor, just one

17 clarification.

18     I think that you had commented that each Plaintiff

19 will need to be -- the counsel for each Plaintiff will need

13:49:10 20 to sign the pleadings.  Is that --

21             THE COURT:  Yes.

22             MS. MILLER:  Okay.

23             THE COURT:  That's right because you're

24 signing -- by signing, you're certifying you're prepared to

13:49:20 25 litigate that case.  If you're not, you don't do it because

1    if that case gets picked for bellwether and then you want to

2    say, "Oh, I didn't mean it.  I want TO dismiss this case,"

3    either I'll deny the motion to dismiss or impose heavy

4    sanctions on the lawyer and the subdivision who did that.

13:49:40   5    This is not just an exercise.  Okay.

6            Anything further?  Okay.

7            That's July 22nd, September 23rd, and October 21st.

8    And if anyone feels that based on what's filed, they need

9    more time, I'll be reasonable in granting extensions.  All

13:50:10  10    right.

11            Thank you, everyone.

12                COUNSEL:  Thanks, Judge.

13            (Proceedings adjourned at 1:50 p.m.)

14                C E R T I F I C A T E

15            I certify that the foregoing is a correct

16    transcript from the record of proceedings in the

17    above-entitled matter.

18

19

20

21    s/Shirle Perkins
     Shirle M. Perkins, RDR, CRR
22    U.S. District Court - Room 7-189
     801 West Superior Avenue
23    Cleveland, Ohio 44113
     (216) 357-7106
24

25