**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Kelly L. Stephens
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 06, 2024

Mr. Michael P. Kohler
Miller & Martin
1180 W. Peachtree Street, N.W.
Suite 2100 Regions Plaza
Atlanta, GA 30309

Mr. Robert Foust Parsley
Miller & Martin
832 Georgia Avenue
Suite 1200
Chattanooga, TN 37402

Re: Case No. 24-3486, *In re: Publix Super Markets, Inc.*
    Originating Case No. 1:17-md-02804

Dear Counsel,

The petition for writ of mandamus or prohibition has been docketed as case number **24-3486** with the caption listed above. If you have not already done so, you must mail a copy of the petition to the lower court judge and counsel for all the other parties.

The filing fee for the petition is $600, which is payable to the Clerk, Sixth Circuit Court of Appeals. If you wish to seek a waiver of the filing fee, a motion for pauper status with a completed financial affidavit is due by **June 20, 2024**. The financial affidavit is available at www.ca6.uscourts.gov.

The district court judge to whom this petition refers has been served with this letter.

Sincerely yours,

s/Jill E Colyer for Amy E. Gigliotti
Case Management Specialist
Direct Dial No. 513-564-7012

cc:  Ms. Sandy Opacich

RECEIVED
06/05/2024
KELLY L. STEPHENS, Clerk

No. _____

In the

# United States Court of Appeals
# for the Sixth Circuit

———————————

IN RE PUBLIX SUPER MARKETS, INC.,

*Defendant–Petitioner*

———————————

From the United States District Court for the
Northern District of Ohio, No. 1:17-md-2804,
Hon. Dan A. Polster

---

## PETITION FOR WRIT OF MANDAMUS

---

Michael P. Kohler
MILLER & MARTIN PLLC
Regions Plaza Suite 2100
1180 West Peachtree Street, NW
Atlanta, Georgia 30309-3407
Telephone: (404) 962-6403
michael.kohler@millermartin.com

Robert F. Parsley
Jordan B. Scott
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Telephone: (423) 785-8211
bob.parsley@millermartin.com
jordan.scott@millermartin.com

*Counsel for Defendant–Petitioner
Publix Super Markets, Inc.*

Dated: June 5, 2024

## DISCLOSURE OF CORPORATE AFFILIATIONS AND FINANCIAL INTEREST

**Sixth Circuit**
**Case Number:** _____

**Case Name:** *In re Publix Super Markets, Inc.*

**Name of Counsel:** Michael P. Kohler, Miller & Martin PLLC

Under Fed. R. App. P. 26.1 and 6th Cir. R. 26.1, Defendant–Petitioner **Publix Super Markets, Inc.** makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   **No.**

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   **No.**

# TABLE OF CONTENTS

Disclosure of Corporate Affiliations and Financial Interest .....................i

Table of Authorities...............................................................................iv

I. Introduction...................................................................................1

II. Jurisdictional Statement ...............................................................4

III. Relief Sought ...............................................................................4

IV. Issue Presented ............................................................................6

V. Facts Necessary to Understand the Issue Presented.....................7

    A. Cobb County's lawsuit against Publix and others is part of the Nationwide Prescription Opiate Multi-District Litigation.............................................................................8

    B. This case involves novel public-nuisance claims under Georgia law..................................................................9

    C. Publix's prior request to certify a question to the Georgia Supreme Court was denied as untimely because it followed entry of an order deciding the same issue. ...........10

    D. The district court denied Publix's current motion to certify four other unsettled, merits-related questions to the Georgia Supreme Court. ...............................................12

VI. Reasons Why the Writ Should Issue ...........................................23

    A. Standards for issuing a writ of mandamus. .........................23

    B. Standards for certifying a question of law to the Georgia Supreme Court. ...................................................25

    C. There is no other adequate means of relief. ........................26

    D. Publix has a clear and indisputable right to mandamus relief..................................................................30

    E. Other factors support issuing a writ of mandamus. ...........34

VII. Conclusion .................................................................................37

Certificate of Compliance.....................................................................39

Certificate of Service ............................................................................40

ii

Addendum One: Designation of Relevant Lower Court Documents.. A1-1

Addendum Two: District Court's Order Dated May 2, 2024............. A2-1

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Booksellers Found. for Free Expression v. Strickland*,
 560 F.3d 443 (6th Cir. 2009) ............................................................... 36

*Carringer v. Rodgers*,
 276 Ga. 359, 578 S.E.2d 841 (2003) ..................................................... 32

*Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*,
 542 U.S. 367 (2004) .............................................................................. 24

*Cherokee Nation v. Mckesson Corp.*,
 No. CIV-18-056-RAW, 2021 WL 1200093
 (E.D. Okla. Mar. 29, 2021) .................................................................. 29

*City of Bowman v. Gunnells*,
 243 Ga. 809, 256 S.E.2d 782 (1979) ..................................................... 13

*City of Coll. Park v. 2600 Camp Creek, LLC*,
 293 Ga. App. 207, 666 S.E.2d 607 (2008)............................................. 19

*City of Huntington, W. Va. v. AmerisourceBergen Drug Corp.*,
 96 F.4th 642 (4th Cir. 2024)........................................................... 17, 30

*Combs v. Int'l Ins. Co.*,
 354 F.3d 568 (6th Cir. 2004) ............................................................... 28

*Cosper v. Ford Motor Co.*,
 No. 2:18-CV-189-RWS, 2023 WL 2374246
 (N.D. Ga. Feb. 14, 2023)...................................................................... 27

*Croce v. New York Times Co.*,
 930 F.3d 787 (6th Cir. 2019) ............................................................... 36

*E.E.O.C. v. K-Mart Corp.,*
  694 F.2d 1055 (6th Cir. 1982) ........................................................... 4, 5

*Geib v. Amoco Oil Co.,*
  29 F.3d 1050 (6th Cir. 1994) ................................................................ 26

*Gen. Elec. Co. v. Lowe's Home Ctrs.,*
  279 Ga. 77, 608 S.E.2d 636 (2005) ................................................. 23, 32

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.,*
  572 U.S. 559 (2014) ......................................................................... 31, 35

*In re Allied-Signal, Inc.,*
  915 F.2d 190 (6th Cir. 1990) ............................................................... 34

*In re Amazon.com, Inc.,*
  942 F.3d 297 (6th Cir. 2019) ............................................................... 25

*In re Ford,*
  987 F.2d 334 (6th Cir. 1992) ................................................... 24, 31, 35

*In re King's Daughters Health Sys., Inc.,*
  31 F.4th 520 (6th Cir. 2022)..................................................... 24, 26, 34

*In re Mt. Hawley Ins. Co.,*
  736 F. App'x 392 (4th Cir. 2018) ........................................................ 36

*In re Nat'l Prescription Opiate Litig.,*
  956 F.3d 838 (6th Cir. 2020) ............................................................... 24

*In re Nat'l Prescription Opiate Litig.,*
  82 F.4th 455 (6th Cir. 2023)....................................... 27, 29, 30, 32, 36

*In re Nat'l Prescription Opiate Litig.,*
  No. 1:17-MD-2804, 2019 WL 4043938 (N.D. Ohio Aug. 26, 2019) ...... 29

*In re Nat'l Prescription Opiate Litig.,*
  458 F. Supp. 3d 665 (N.D. Ohio 2020) ............................................... 15

*In re Nat'l Prescription Opiate Litig.*,
No. 17-MD-02804, 2021 WL 4952468 (N.D. Ohio Oct. 25, 2021) ........ 11

*In re Nat'l Prescription Opiate Litig.*,
No. 1:17-MD-2804, 2022 WL 228150 (N.D. Ohio Jan. 26, 2022)... 11, 12

*In re Nat'l Prescription Opiate Litig.*,
589 F. Supp. 3d 739 (N.D. Ohio 2022) ................................................ 33

*In re Nat'l Prescription Opiate Litig.*,
589 F. Supp. 3d 790 (N.D. Ohio 2022) .......................................... 15, 29

*In re Professionals Direct Ins. Co.*,
578 F.3d 432 (6th Cir. 2009) ............................................ 25, 26, 34, 35

*In re Univ. of Mich.*,
936 F.3d 460 (6th Cir. 2019) .............................................................. 28

*Jerkins v. Lincoln Elec. Co.*,
No. 1:04-CV-18810, 2010 WL 4922508 (N.D. Ohio Aug. 6, 2010) ....... 35

*John B. v. Goetz,*
531 F.3d 448 (6th Cir. 2008) .............................................................. 25

*Kerr v. U.S. Dist. Ct.*,
426 U.S. 394 (1976) ........................................................................... 24

*LeBeau v. Lembo Corp.*,
No. 5:06-CV-00502, 2008 WL 4317835 (N.D. Ohio Sept. 15, 2008) .... 35

*Lehman Bros. v. Schein,*
416 U.S. 386 (1974) ........................................................................... 25

*McLendon & Cox v. Roberts,*
197 Ga. App. 478, 398 S.E.2d 579 (1990) ...................................... 14, 15

*Moreland v. Cheney,*
267 Ga. 469, 479 S.E.2d 745 (1997) ............................................. 16, 17

*RadioShack Corp. v. Cascade Crossing II, LLC*,
282 Ga. 841, 653 S.E.2d 680 (2007) ...................................................... 32

*Reese v. CSX Transp., Inc.*,
No. CV 118-215, 2020 WL 5740253 (S.D. Ga. Sept. 24, 2020) ........... 13

*Roberts v. Quick Rx Drugs, Inc.*,
343 Ga. App. 556, 807 S.E.2d 476 (2017).............................................. 13

*Spooner v. City of Camilla*,
256 Ga. App. 179, 568 S.E.2d 109 (2002).............................................. 18

*State Auto Prop. & Cas. Ins. Co. v. Hargis*,
785 F.3d 189 (6th Cir. 2015) ......................................................... 34, 36

*State ex rel. Boykin v. Ball Inv. Co.*,
191 Ga. 382, 12 S.E.2d 574 (1940) ................................................. 10, 11

*State ex rel. Hunter v. Johnson & Johnson*,
2021 OK 54, 499 P.3d 719 ...................................................................... 29

*State ex rel. Jennings v. Purdue Pharma L.P.*,
No. CVN18C01223, 2019 WL 446382
(Del. Super. Ct. Feb. 4, 2019) ............................................................... 29

*Town of Castle Rock, Colorado v. Gonzales*,
545 U.S. 748 (2005) ................................................................................ 30

*W. & A.R. Co. v. City of Atlanta*,
113 Ga. 537, 38 S.E. 996 (1901) ............................................................ 19

*Walker County v. Tri-State Crematory*,
284 Ga. App. 34, 643 S.E.2d 324 (2007).......................................... 22, 23

**Statutes**

28 U.S.C. § 1331 ........................................................................................ 4

28 U.S.C. § 1332 .................................................................................4

28 U.S.C. § 1407 .................................................................................4

28 U.S.C. § 1441 .................................................................................4

28 U.S.C. § 1651 .............................................................................4, 23

Ga. Const. art. VI, § 6, ¶ IV.............................................................25

O.C.G.A. § 9-3-71 ............................................................................15

O.C.G.A. § 9-11-9.1 ....................................................................14, 15

O.C.G.A. § 15-2-9.....................................................................5, 23, 38

O.C.G.A. § 15-2-9(a)...................................................................25, 31

O.C.G.A. §§ 26-4-1, et seq.................................................................11

O.C.G.A. § 41-1-1 ........................................................................7, 26

O.C.G.A. § 41-1-2 ..............................................5, 6, 7, 13, 15, 16

O.C.G.A. § 41-2-1 ............................................................................19

O.C.G.A. § 41-2-2 ......................................................6, 11, 18, 20, 22

O.C.G.A. § 41-2-2(a)...................................................................20, 21

## Court Rules

Fed. R. App. P. 21................................................................................4

Fed. R. App. P. 21(a)(1) ...................................................................40

**Other Authorities**

*Abatement*, BLACK'S LAW DICTIONARY (11th ed. 2019) ............................. 5

15 CYC. OF FEDERAL PROC. § 84:48 (3d ed. May 2024) ............................. 5

John L. Watkins, *Erie Denied: How Federal Courts Decide Insurance Coverage Cases Differently and What to Do About It,* 21 CONN. INS. L.J. 455 (2015) ............................................................. 28

Restatement (Second) of Torts § 821B(2)(a) .......................................... 19

# I.    INTRODUCTION

This is a bellwether case in the nationwide multidistrict opioid lit-igation. A county in the State of Georgia alleges that Publix Super Mar-kets, Inc. has created a public nuisance by filling prescriptions for opi-oid medications through its in-store pharmacies. The county alleges this has caused it to incur increased costs in providing public services. As part of seeking "abatement" of the nuisance, the county seeks restitu-tion of its increased costs along with funding to maintain treatment pro-grams for affected citizens. Unsurprisingly, this attempt to turn a claim for abating a public nuisance into a governmental tort claim against businesses for damages asks the Ohio multidistrict litigation court to expand Georgia's public-nuisance law into new territory. The county's claims against Publix unavoidably raise novel and complex issues of Georgia law.

For this reason, Publix has asked the Ohio MDL court to certify several of these issues to the Georgia Supreme Court. Publix previously sought certification of the narrow question whether the county could even assert a public-nuisance claim at all when filling prescriptions is heavily regulated by the State of Georgia. Having been raised only after

the Ohio MDL court had decided this question adversely to Publix, the request was denied. But Publix's current motion prospectively raises different questions of Georgia law. These questions were not raised or decided at the motion-to-dismiss stage and will be central on summary judgment and (potentially) at trial.

The Ohio MDL court denied Publix's current motion on two grounds, each of which is legally erroneous and so an abuse of discretion. The Ohio MDL court said Publix's motion was filed too late, even though there is no deadline for moving to certify, and the questions posed have yet to be decided in this case (or elsewhere). And the Ohio MDL court said that Publix's issues are not dispositive, when they will decide issues concerning the merits of the county's claim.

Publix thus petitions for a writ of mandamus. Publix asks this Court to require the currently posed questions of Georgia law to be certified to the Georgia Supreme Court. There is no good reason not to do so here. Each question is novel, complex, and undecided by the Georgia Supreme Court. Each question addresses the fundamental viability of the county's claims. And how each question is decided not only will affect Publix but will also influence all other pending and to-be-filed

opioid cases in which a governmental entity pursues public-nuisance claims under Georgia law. In rejecting certification, the Ohio MDL court has in effect reserved to itself the task of fashioning a nationwide law of public nuisance for opioid cases. This contravenes principles of federalism and comity, will increase the costs and duration of opioid litigation based on Georgia public-nuisance theories, and will yield confusion rather than clarity.

The Court should hold that the Ohio MDL court's denial of certification lacks any valid rationale and thus constitutes an abuse of discretion. The Court should hold that, under the circumstances of this case and this petition, only certification to the Georgia Supreme Court can ensure the proper, consistent, and fair application of Georgia law. The Court should hold that federalism, comity, efficiency, and fairness all militate in favor of certification to the Georgia Supreme Court. The Court should hold that, to the extent certification to a state supreme court can ever amount to a right, Publix has such a right here. And the Court should grant the petition.

## II. JURISDICTIONAL STATEMENT

This petition arises from an order issued by the Honorable Dan A. Polster in the multidistrict opioid litigation styled *In re National Prescription Opiate Litigation*, Case No. 1:17-md-2804-DAP in the United States District Court for the Northern District of Ohio. *See* Order, RE 5425, Page ID # 635572–76 (copy filed in Addendum Two). The underlying case against Defendant–Petitioner Publix Super Markets, Inc. was filed in the United States District Court for the Northern District of Georgia and is now styled *Cobb County v. Purdue Pharma L.P., et al.*, Case No. 1:18-op-45817-DAP, United States District Court for the Northern District of Ohio in the multi-district opioid litigation.

The multi-district litigation court in Ohio has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1332, 1407, and 1441.

This Court has appellate jurisdiction under the All Writs Act, 28 U.S.C. § 1651, and Federal Rule of Appellate Procedure 21.

This petition is timely because it has been filed within a reasonable time following the entry, on May 2, 2024, of the order Publix seeks to appeal. *See* Order, RE 5425, Page ID # 635572–76; *E.E.O.C. v. K-*

*Mart Corp.*, 694 F.2d 1055, 1060–61 (6th Cir. 1982); 15 Cyc. of Federal

Proc. § 84:48 (3d ed. May 2024).

## III.  Relief Sought

Publix asks the Court to issue a writ of mandamus that, under

O.C.G.A. § 15-2-9, orders certification to the Georgia Supreme Court of

the following questions of Georgia law:

1. Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? If so, does such a claim require proof that the provider committed malpractice?

2. Under O.C.G.A. § 41-1-2, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2?

   Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damag[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where:

   (a)  the medication has recognized medical benefits, and

   (b)  the pharmacy is alleged to have filled only *some* prescriptions for that medication under suspicion of diversion?

3. What establishes that a nuisance interferes with the *public* health as opposed to merely the *personal* health of some individuals? Is the personal health or sickness of an individual an inherently private right that a local

5

government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?

4. Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?

   (a) If the answer is <u>yes</u>, is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?

   (b) If the answer is <u>no</u>,

      (i) Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—*e.g.*, emergency, law-enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance? And

      (ii) Does Georgia preclude a local government from recovering monies to treat injuries personal to only some members of the public—*e.g.*, drug addiction, withdrawal, and overdose—as a form of "abatement" of a public nuisance?

## IV.  ISSUE PRESENTED

The issue presented is whether the district court abused its discretion by refusing to certify questions of Georgia law to the Georgia Supreme Court and a writ of mandamus should be entered requiring certification.

## V.    FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

Under Georgia law, a nuisance is "anything that causes hurt, in-convenience, or damage to another and the fact that the act done may otherwise be lawful shall not keep it from being a nuisance." O.C.G.A. § 41-1-1. "The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man." *Id.* Georgia law further defines a public nuisance as "one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." O.C.G.A. § 41-1-2.

The case against Publix involves an attempt by Plaintiff Cobb County, Georgia, to wield Georgia public-nuisance law in an unprece-dented way. Cobb County asks the Ohio MDL court not just to apply Georgia law but to reformulate it to create a new opioid-specific cause of action for governmental entities. And it seeks not just to abate an al-leged public nuisance, but also, in effect, to recover monetary damages. Monetary damages are not presently recoverable under Georgia public-nuisance law absent a showing of special, individual harm. If accepted

by courts, Cobb County's novel theories would extend the reach of Georgia public-nuisance law far beyond its traditional boundaries.

### A. Cobb County's lawsuit against Publix and others is part of the Nationwide Prescription Opiate Multi-District Litigation.

In 2018, Cobb County sued various pharmaceutical companies, retail pharmacies, and others in the Northern District of Georgia. *See* Compl., Case No. 1:18-op-45817 (N.D. Ohio), Doc. 1, Page ID # 270–71. Cobb County alleges, among other things, that the defendants have created a public nuisance by marketing, distributing, and dispensing opioid medications. *See generally id.*

As one of many similar lawsuits across the country, the Cobb County case was soon transferred to the Northern District of Ohio and folded into the Nationwide Prescription Opiate Multi-District Litigation. *See* Conditional Transfer Order, Case No. 1:18-cv-02865 (J.P.M.L.), Doc. 4. As the docket shows, this multi-district litigation has multiple "tracks," in which similar cases are grouped together based in part on the parties' relationships. This case is the bellwether case for Track Eight, which with some other tracks groups together cases involving claims asserted by governmental entities against pharmacy chains. *See* Order, RE 3688, Page ID # 510844; Order, Case No. 1:18-op-45817

8

(N.D. Ohio), Doc. 22, Page ID # 897–904. The Ohio district judge presiding over the multi-district litigation, Judge Polster, is responsible for making numerous *Erie* guesses about unsettled areas of state law. As the multi-district litigation has progressed, Judge Polster's determinations of one state's law in one track have often affected rulings on other states' laws on the same or similar issues in other tracks.

### B. This case involves novel public-nuisance claims under Georgia law.

Following transfer, Cobb County filed an amended complaint asserting a public-nuisance claim against Publix under Georgia law. *See* Suppl. & Am. Compl., Case No. 1:18-op-45817 (N.D. Ohio), Doc. 22, Page ID # 664. Cobb County contends that Publix, like other pharmacy defendants, has contributed to a public nuisance by operating in-store pharmacies that fill prescriptions for opioid medications. *Id.*, Page ID # 792–801.

Though it styles its claim as one for abatement of a public nuisance, Cobb County seeks more than injunctive relief. Cobb County wants Publix to *reimburse* it for its own increased costs resulting from the opioid crisis and to fund treatment and prevention programs for some of its private residents. *Id.*, Page ID # 872–80, 883–88; *see, e.g.*,

9

Compl., Case No. 18-op-45817 (N.D. Ohio), Doc. 1, Page ID # 271; Br., RE 5405, Page ID # 635375–78; Br., RE 1406, Page ID # 38816–17 (seeking both legal and equitable remedies and claiming that no jurisdiction has categorically rejected such remedies for public-nuisance claims).

C. **Publix's prior request to certify a question to the Georgia Supreme Court was denied as untimely because it followed entry of an order deciding the same issue.**

Publix moved to dismiss the Georgia public-nuisance claims. Br., RE 3906-1, Page ID # 534995–5006.

Publix argued, among other things, that Cobb County could not assert a public-nuisance claim because the subject-matter was already governed by state pharmacy regulations.

In *State ex rel. Boykin v. Ball Investment Co.*, the Georgia Supreme Court held that when, as here, conduct is governed extensively by statute, a public-nuisance claim cannot be based on a statutory violation unless the statute itself provides that such violation constitutes a nuisance. 191 Ga. 382, 395, 12 S.E.2d 574, 581 (1940). Relying on *Boykin*, Publix contended that Cobb County's claim for public nuisance fails as a matter of law because Publix's filling of prescriptions is

10

regulated comprehensively by the Georgia Pharmacy Practice Act, O.C.G.A. §§ 26-4-1, et seq., and state regulations, which do not declare violations to be public nuisances. *See* Br., RE 3906-1, Page ID # 534996–99; *see also, e.g.*, Ga. Comp. R. & Regs. 480.

Distinguishing *Boykin*, the Ohio MDL court denied the motion. In doing so, it took its first step in carrying Georgia's public-nuisance law into new territory. According to the Ohio MDL court, Georgia counties may sue to abate a public nuisance, and seek related monetary relief, even when the defendant is engaging in state-regulated conduct. *See In re Nat'l Prescription Opiate Litig.*, No. 17-MD-02804, 2021 WL 4952468 (N.D. Ohio Oct. 25, 2021). The Ohio MDL court took this step without clear and principled support from the Georgia legislature or the Georgia Supreme Court.

In seeking reconsideration, Publix alternatively requested an order certifying the following question to the Georgia Supreme Court:

> Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act …, O.C.G.A. § 26-4-1 et seq., and for which the legislature has already enumerated civil and criminal remedies?

Mot., RE 4208, Page ID # 557962–75. The district court denied the request. *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2022

11

WL 228150, at *3 (N.D. Ohio Jan. 26, 2022). This Court declined to is-
sue a writ of mandamus to require the district court to certify that ques-
tion. *See* Appeal Remark, RE 4291, Page ID # 572047; Order, Appeal
No. 22-3157 (6th Cir.), Doc. 7-2. Both the district court and this Court
concluded that Publix should have raised that certification question
with its motion to dismiss, rather than doing so only after the motion
had been denied. *See In re Nat'l Prescription Opiate Litig.*, 2022 WL
228150, at *3–4; Order, Appeal No. 22-3157 (6th Cir.), Doc. 7-2, at 2.

**D.  The district court denied Publix's current motion to
certify four other unsettled, merits-related questions
to the Georgia Supreme Court.**

Anticipating arguments that will likely be made on summary
judgment or at trial (or both), in April 2024 Publix moved to certify to
the Georgia Supreme Court several additional—and entirely different—
questions concerning Georgia public-nuisance law. Mot., RE 5388, Page
ID # 634101–29. The motion posed four questions, with subparts, con-
cerning Cobb County's ability to maintain a claim against Publix for
public nuisance. *Id.*, Page ID # 634110–11. These issues had not been
presented to, and thus had not been decided by, the Ohio MDL court at
the motion-to-dismiss stage (or otherwise). As explained below, each

12

question presents an issue of first impression for the Georgia Supreme Court. *Id.*, Page ID # 634108–09, 634114–15, 634120, 634123.

**Question One.** The first proposed question inquires whether a single course of conduct can support both a public-nuisance claim *and* a pharmacy-malpractice claim under Georgia law, and, if so, what evidence is required:

> 1. Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? If so, does such a claim require proof that the provider committed malpractice?

*Id.*, Page ID # 634110.

This question arises from the unsettled interplay between professional standards governing the conduct of licensed pharmacists, which apply in malpractice actions, s*ee, e.g.*, *Roberts v. Quick Rx Drugs, Inc.*, 343 Ga. App. 556, 559, 807 S.E.2d 476, 480 (2017), and the more "amorphous" standards for determining what constitutes a public nuisance, *see, e.g.*, *Reese v. CSX Transp., Inc.*, No. CV 118-215, 2020 WL 5740253, at *26 (S.D. Ga. Sept. 24, 2020) (applying Georgia law); *City of Bowman v. Gunnells*, 243 Ga. 809, 810–11, 256 S.E.2d 782, 784 (1979).

This question does not concern whether Georgia pharmacy regulations "preempt" a public-nuisance claim, as was at issue in Publix's

13

prior question that the Ohio MDL court declined to certify. *See supra* 10–11. That question asked whether a Georgia county can ever bring a public-nuisance claim relating to the filling of prescriptions for controlled substances when such conduct is heavily regulated by the State of Georgia. The different question posed here seeks guidance concerning *what kind of proof* Georgia requires to support a public-nuisance claim based on the filling of prescriptions for controlled substances. No court has answered this question.

This question also concerns the potential application of two Georgia statutes to claims for professional misconduct. The Georgia General Assembly has imposed a special affidavit requirement for pleading a professional malpractice claim. *See* O.C.G.A. § 9-11-9.1 (requiring plaintiffs, when suing for malpractice, to attach to the complaint an expert affidavit opining that the defendant had committed a professionally negligent act or omission). In *McLendon & Cox v. Roberts*, the Georgia Court of Appeals applied § 9-11-9.1's pre-suit affidavit requirement to a claim styled as a nuisance claim, but which the court construed as, in substance, a claim for professional malpractice because it was "necessarily … based upon an allegation that [defendant's] work … was

14

professionally deficient." 197 Ga. App. 478, 478, 398 S.E.2d 579, 579–80 (1990). It is unclear whether or to what extent *McLendon & Cox* compels concluding that Cobb County's public-nuisance claims are subject to O.C.G.A. § 9-11-9.1. This unresolved question further implicates the related, two-year limitation period and five-year repose period of O.C.G.A. § 9-3-71.

In other MDL tracks involving the laws of other states, the Ohio MDL court has already tended to hold that similar pre-suit malpractice affidavits, and related limitation periods, do not apply to nuisance claims against pharmacies based on their dispensing of opioids. *See, e.g., In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 825 (N.D. Ohio 2022) (statutory limitation period); *In re Nat'l Prescription Opiate Litig.*, 458 F. Supp. 3d 665, 686 (N.D. Ohio 2020) (pre-suit affidavit). But this does not justify concluding that Georgia would necessarily follow suit.

**Question Two.** The second proposed question involves interpreting a portion of Georgia's public-nuisance statute:

> 2. Under O.C.G.A. § 41-1-2, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals."

15

> What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2?
>
> Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where:
>
> (a)  the medication has recognized medical benefits, and
>
> (b)  the pharmacy is alleged to have filled only *some* prescriptions for that medication under suspicion of diversion?

Mot., RE 5388, Page ID # 634110–11. These interrelated questions seek guidance on what kind and scale of harm a product, action, or condition must cause for it to qualify as a public nuisance under Georgia law. This question is acute especially when, as here, the product, action, or condition has been shown to *benefit* some persons.

These interrelated questions of first impression for the Georgia Supreme Court purely concern statutory interpretation. That court has said O.C.G.A. § 41-1-2's "sphere of operation" phrase "is not used in the sense that every person in the area must have been actually hurt or injured in order to show a public nuisance." *Moreland v. Cheney*, 267 Ga. 469, 469, 479 S.E.2d 745, 745 (1997) (citations omitted). Rather, the Georgia Supreme Court has opined, "[i]t is sufficient if it injures those

16

of the public who may actually come in contact with it." *Id.* But no Georgia state appellate court has explained how to determine what kind of "contact" is required.

The viability of Cobb County's public-nuisance claim depends in part on answering this question for the first time in novel circumstances. Here, the products at issue have medical *benefits* and can appropriately be prescribed and dispensed to treat pain. The Georgia Supreme Court has not decided whether "contact" with such a product—by which some persons are harmed, other are helped—can support a public-nuisance claim based on generalized harm to the public health.[1]

Moreover, Publix's distribution activity involves transporting medications from its pharmacy warehouse in Florida to its retail pharmacies in Cobb County, Georgia. Can "contact" with such a course of conduct amount to a public nuisance under Georgia law? Is there even any "contact" as contemplated by Georgia's public-nuisance statutes?

Answering these questions will, in turn, partially determine whether issues of fact can, or cannot, preclude a grant of summary

---

[1] The Fourth Circuit recently certified a similar question to the West Virginia Supreme Court. *See City of Huntington, W. Va. v. Amerisource-Bergen Drug Corp.*, 96 F.4th 642, 651 (4th Cir. 2024).

17

judgment in this case. "Although the existence of a nuisance is gener-ally a question of fact, under some scenarios, a court can determine as a matter of law that no nuisance exists." *Spooner v. City of Camilla*, 256 Ga. App. 179, 183, 568 S.E.2d 109, 112 (2002). Only the Georgia Su-preme Court can definitively answer these questions or even decide whether they are framed in a manner consistent with Georgia law.

**Question Three.** The third proposed question similarly concerns whether a governmental entity can abate a "nuisance" claimed to have caused individualized health problems arising from the use of prescrip-tion medications:

> 3. What establishes that a nuisance interferes with the *pub-lic* health as opposed to merely the *personal* health of some individuals? Is the personal health or sickness of an individual an inherently private right that a local govern-ment may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?

Mot., RE 5388, Page ID # 634111. The viability of Cobb County's public-nuisance claim depends on this question, too.

The Georgia Code provides that, "[u]pon [the] filing of a petition as provided in Code Section 41-2-2, any nuisance which tends to the imme-diate annoyance of the public in general, is manifestly injurious to the *public* health or safety, or tends to greatly corrupt the manners and

18

morals of the public may be abated by an order of a judge of the superior court of the county in which venue is proper." O.C.G.A. § 41-2-1 (emphasis added). The Georgia Supreme Court has yet to decide whether personal injuries resulting from individuals' use of prescription medications can amount to a manifest injury to "public health."

It is well-established in Georgia that a public nuisance requires interference with a public right. "[A] public nuisance requires some act or omission which obstructs or causes inconvenience to the public in the exercise of rights common to all." *City of Coll. Park v. 2600 Camp Creek, LLC*, 293 Ga. App. 207, 209, 666 S.E.2d 607, 608–09 (2008). And "[s]ignificant interference with 'the public health, the public safety, the public peace, the public comfort or the public convenience' may support a finding of public nuisance." *Id.* (quoting Restatement (Second) of Torts § 821B(2)(a)). For example, "[i]t is a public nuisance for one who is infected with an infectious or contagious disease to expose himself in a public place." *W. & A.R. Co. v. City of Atlanta*, 113 Ga. 537, 38 S.E. 996, 1002 (1901).

But Georgia has not provided a clear test for distinguishing between interference with public health (which may give rise to a claim

19

for abatement of public nuisance) and interference with private health (which may entitle a plaintiff to special damages, *see* O.C.G.A. § 41-2-2(a), but which does not establish harm to the general public). Recognizing a public nuisance based on aggregating multiple, distinct private harms would expand Georgia law.

**Question Four.** Finally, the fourth proposed question concerns the nature of relief available for "abating" public-nuisance claims under Georgia law:

4. Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?

   (a) If the answer is <u>yes</u>, is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?

   (b) If the answer is <u>no</u>,

      (i) Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—*e.g.*, emergency, law-enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance? And

      (ii) Does Georgia preclude a local government from recovering monies to treat injuries personal to only some members of the public—*e.g.*, drug addiction,

20

> withdrawal, and overdose—as a form of "abate-
> ment" of a public nuisance?

Mot., RE 5388, Page ID # 634111.

When it comes to remedying a *public* nuisance, the Georgia Code only contemplates "abating" it, i.e., causing it to cease. *See* O.C.G.A. § 41-2-2(a). "Abatement" is the "act of eliminating or nullifying" some situation or thing. *See Abatement*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Cobb County, however, seeks to recover "costs" from Publix as part of its desired "abatement" remedy. *See, e.g.*, Compl., Case No. 18-op-45817 (N.D. Ohio), Doc. 1, Page ID # 271; Supp. & Am. Compl., Case No. 1:18-op-45817 (N.D. Ohio), Doc. 22, Page ID # 872–80, 883–88; Br., RE 1406, Page ID # 38816–17; Br., RE 5405, Page ID # 635375–78. It alleges that, due to the actions of Publix and other pharmacies, it has generally incurred "[i]ncreased costs and expenses . . . relating to healthcare services, law enforcement, the criminal justice system, social services, and education systems." Supp. & Am. Compl., Case No. 1:18-op-45817 (N.D. Ohio), Doc. 22, Page ID # 886.  In effect, Cobb County asks the district court to create a compensatory, tort-like monetary damages remedy for public nuisance.

21

A governmental entity's attempt to use O.C.G.A. § 41-2-2 to obtain equitable "restitution" of its increased costs in providing public services or to fund treatment programs lacks supporting precedent. The Georgia Supreme Court has not decided whether a county may seek restitution this way.

One Georgia Court of Appeals opinion suggests that the Georgia Supreme Court would not adopt such a theory. In *Walker County v. Tri-State Crematory*, the court held that, "absent specific statutory authorization or damage to government-owned property, a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for the services." 284 Ga. App. 34, 37, 643 S.E.2d 324, 327 (2007) (collecting cases). The court reasoned that carving out a public-nuisance exception to Georgia's free-public-service doctrine would upend that doctrine:

> We likewise reject Walker County's argument that there should be an exception to the free public services doctrine when the costs are incurred as part of the abatement of a public nuisance. If such an exception were recognized, it would be the exception that swallows the rule, since many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance. We decline to adopt such a "murky" exception that "could give rise to substantial litigation."

22

*Id.* at 39 (quoting *Gen. Elec. Co. v. Lowe's Home Ctrs.,* 279 Ga. 77, 80, 608 S.E.2d 636 (2005)).

On May 2, 2024, the Ohio MDL court issued an order denying Publix's motion to certify these questions to the Georgia Supreme Court. Order, RE 5425, Page ID # 635572–76. The district court denied the motion for two reasons. First, without citing any standard for timeliness, the district court held that Publix had filed it too late. *Id.*, Page ID # 635576–77. Second, without attempting to analyze Georgia law, the Ohio MDL court said that the proposed questions—each of which concerns the viability of Cobb County's public-nuisance theories of recovery—would not be "dispositive." *Id.* (quoting O.C.G.A. § 15-2-9).

## VI.  Reasons Why the Writ Should Issue

The Court should grant a writ of mandamus because the district court, in denying Publix's request for certification of issues to the Georgia Supreme Court, abused its discretion. Under the circumstances of this case and petition, certification is required.

### A.  Standards for issuing a writ of mandamus.

The All Writs Act, 28 U.S.C. § 1651, empowers this Court to issue a writ of mandamus "to confine an inferior court to a lawful exercise of

its authority when it is its duty to do so." *In re Ford*, 987 F.2d 334, 341 (6th Cir. 1992) (quoting *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976)). Although mandamus is an extraordinary remedy, it is proper "where the trial court's actions amount to a clear abuse of discretion." *Id.*; *see In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 842 (6th Cir. 2020).

In deciding whether there has been an abuse of discretion and a writ should issue, the Court considers the following. *In re King's Daughters Health Sys., Inc.,* 31 F.4th 520, 525 (6th Cir. 2022).

First, the petitioner should "have no other adequate means to attain the relief it desires." *Id.* (quoting *Cheney v. U.S. Dist. Ct. for the Dist. of Columbia*, 542 U.S. 367, 380 (2004)).

Second, the petitioner should "show a 'clear and indisputable' right to the relief sought." *Id.* (quoting *Cheney*, 542 U.S. at 380).

Third, the petitioner should "show that the issuing writ is otherwise appropriate under the circumstances." *Id.* (citations and internal quotation marks omitted). This involves weighing multiple factors, including whether there is prejudice to the petitioner, whether the lower court made clearly erroneous rulings or disregarded the rules, and whether the matter involves "new and important problems, or legal

issues of first impression." *In re Professionals Direct Ins. Co.*, 578 F.3d 432, 437 (6th Cir. 2009) (quoting *John B. v. Goetz,* 531 F.3d 448, 457 (6th Cir. 2008)) (noting that "[n]ot every factor need apply").

**B.**   **Standards for certifying a question of law to the Georgia Supreme Court.**

Georgia's Supreme Court has "jurisdiction to answer any question of law from any . . . federal district or appellate court," Ga. Const. art. VI, § 6, ¶ IV, when the "questions of the laws of this state … are determinative of the case and there are no clear controlling precedents in the decisions of the Supreme Court of this state …." O.C.G.A. § 15-2-9(a).

Deciding whether to certify a question of law to the Georgia Supreme Court is a matter of judicial discretion. *In re Amazon.com, Inc.*, 942 F.3d 297, 300 (6th Cir. 2019), *certified question answered*, 255 A.3d 191 (Pa. 2021). Federal courts "generally will not trouble [their] sister state courts every time an arguably unsettled question of state law comes across [their] desks." *Id*. In appropriate cases, however, certification "save[s] time, energy, and resources and helps build a cooperative judicial federalism." *Id*. (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). "Resort to the certification procedure is most appropriate when," as here, "the question is new and state law is unsettled." *Id*.

25

(citation omitted); *accord Geib v. Amoco Oil Co.,* 29 F.3d 1050, 1060 (6th Cir. 1994).

## C.    There is no other adequate means of relief.

This Court should "exercise its mandamus jurisdiction" because there is "danger of harm that cannot be adequately corrected on appeal" and there is "no other adequate means of relief" absent certification of the public-nuisance questions to the Georgia Supreme Court. *In re King's Daughters Health Sys.*, 31 F.4th at 525; *In re Professionals Direct Ins.*, 578 F.3d at 437.

As this Court pointed out in denying Publix's prior certification motion, Publix could potentially raise the denial of its certification motions on direct appeal from a final judgment. *See* Order, Appeal No. 22-3157, Doc. 7-2, at 2. But given the risk of prejudice to Publix and other opioid litigants, that should not end the inquiry here.

The district court's *Erie* guesses about Georgia public-nuisance law tread heavily on undecided matters of Georgia public policy. Georgia's law of public nuisance is governed by statute. *See* O.C.G.A. § 41-1-1 *et seq.* Cobb County's claims against Publix ask for unprecedented applications of Georgia's public-nuisance statutes. Defining the proper

26

scope of public-nuisance liability should be defined with the benefit of intimate knowledge and understanding of Georgia public policy.

Certifying to the Georgia Supreme Court such delicate, policy-laden questions concerning the scope of Georgia public-nuisance law is necessary here, "not only [to] preserve[ ] our time, energy, and re-sources, but also [to] further[ ] cooperative judicial federalism." *See In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 461 (6th Cir. 2023), *certi-fied question accepted sub nom. Nat'l Prescription Opiate Litig. v. Pur-due Pharma, L.P.*, 2023-Ohio-4259, 172 Ohio St. 3d 1417, 222 N.E.3d 661 (citations and internal quotation marks omitted). "Choosing to pro-ceed without resolution of these issues [via certification] will likely un-duly delay the ultimate conclusion of this case." *Cosper v. Ford Motor Co.*, No. 2:18-CV-189-RWS, 2023 WL 2374246, at *6 (N.D. Ga. Feb. 14, 2023), *certified question answered*, 317 Ga. 356, 893 S.E.2d 106 (2023). "If the Court proceeds without review, the verdict is [very] likely to pro-ceed through a review process requiring consideration by the [Sixth] Circuit and through certification therefrom to the Supreme Court of Georgia." *Id.*

Moreover, delaying certification of the public-nuisance questions would negatively affect Publix and others. This is a bellwether case in the nationwide multi-district opioid litigation. The district court's *Erie* guesses about Georgia's statutory public-nuisance law will influence numerous other pending and to-be-filed opioid cases involving public-nuisance claims under Georgia law. Such rulings "become[ ] persuasive precedent, [and they are] likely to be applied multiple times until the state's highest court issues a contrary ruling." John L. Watkins, *Erie Denied: How Federal Courts Decide Insurance Coverage Cases Differently and What to Do About It*, 21 CONN. INS. L.J. 455, 474 (2015). "Accordingly, a single mistake may be repeated again and again." *Id.*

A federal court "forced to make an *Erie* guess should pause before reinterpreting a state statute if the state law is one," as here, "that is better modified legislatively." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 588 (6th Cir. 2004). "Mandamus is . . . appropriate to prevent 'intrusion by the federal judiciary on a delicate area of federal-state relations . . . .'" *In re Univ. of Mich.*, 936 F.3d 460, 466 (6th Cir. 2019) (citation omitted).

It has been widely recognized (including at times by the Ohio MDL court itself) that public-nuisance claims in the nationwide opioid

28

litigation present novel and varying issues of states' laws. *See, e.g.*, *Nat'l Prescription Opiate Litig.*, 82 F.4th at 461; *Cherokee Nation v. Mckesson Corp.*, No. CIV-18-056-RAW, 2021 WL 1200093, at *6 (E.D. Okla. Mar. 29, 2021); *State ex rel. Hunter v. Johnson & Johnson*, 2021 OK 54, ¶ 38, 499 P.3d 719, 731; *State ex rel. Jennings v. Purdue Pharma L.P.*, No. CVN18C01223, 2019 WL 446382, at *11–12 (Del. Super. Ct. Feb. 4, 2019); *see also, e.g.*, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4043938, at *2 (N.D. Ohio Aug. 26, 2019) (Polster, J.).

Yet in this multi-district litigation, the Ohio MDL court has reserved many unsettled questions of state law to itself, seemingly fashioning a "national" public-nuisance law to adjudicate claims across MDL tracks. The Ohio MDL court frequently cross-cites its own prior decisions in other tracks, for example, applying its state-law rulings across jurisdictions. *See, e.g.*, Order, RE 5425, Page ID # 635575–76 (relying on Ohio decision in applying Georgia law); *Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d at 825 (relying on Montana law to deciding statute-of-limitation issue under Ohio law). While crafting its own standards for common questions of state law might be efficient for the

Ohio MDL court, it contradicts federalism and comity and intrudes on state sovereignty. Here, even more than in a run-of-the-mill case, "federal-state comity, … judicial efficiency, [and] the [need] to settle correctly a recurring[, novel] issue of state law" demand certification. *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 778 (2005).

It is not mere speculation to think that, sooner or later, a court will certify to the Georgia Supreme Court the questions of Georgia public-nuisance law posed here. In opioid cases, this Court and the Fourth Circuit have even *sua sponte* certified questions of state public-nuisance law after trial. *See Nat'l Prescription Opiate Litig.*, 82 F.4th at 461; *City of Huntington*, 96 F.4th at 651. Certification now, at an earlier stage in this bellwether case, offers the most appropriate and efficient vehicle for deciding these questions. Awaiting certification in some other case, or even on direct appeal from a final judgment in this case, would yield widespread costs, burdens, uncertainty, and inconsistencies that could be avoided only by granting the petition.

## D. Publix has a clear and indisputable right to mandamus relief.

One of the district court's two grounds for denying Publix's motion to certify was its conclusion that Publix's proposed questions are not

30

"determinative of the case." *See* Order, RE 5425, Page ID # 635575–76. This is legal error. And a "district court … necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law …." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 n.2 (2014).

As set out above, each of the questions Publix posed concerns the fundamental viability of Cobb County's novel interpretation of Georgia's law of public nuisance. *Supra* 12–23. The district court's reasons for holding otherwise are legally erroneous and reflect an abuse of discretion, which can warrant issuing a writ of mandamus. *See In re Ford*, 987 F.2d at 341.

First, the Ohio MDL court erred and abused its discretion by concluding that the questions of Georgia law posed here are not "determinative" as required by O.C.G.A. § 15-2-9(a). Order, RE 5425, Page ID # 635575–76. The Georgia Supreme Court may accept questions certified to it when they are "determinative of the case" and "there are not clear controlling precedents." O.C.G.A. § 15-2-9(a). But a question need not dispose of an *entire* case for it to be "determinative." So long as answering a certified question would determine the outcome of a substantive

31

issue of Georgia law, the Georgia Supreme Court may accept it. *See,*

*e.g.*, *Gen. Elec. Co.*, 279 Ga. at 77, 608 S.E.2d at 637 (2005) (answering

certified question pertaining to availability of lost-profits damages); *Ra-*

*dioShack Corp. v. Cascade Crossing II, LLC*, 282 Ga. 841, 841, 653

S.E.2d 680, 682 (2007) (answering certified question concerning applica-

tion of statutory attorneys' fees cap); *Carringer v. Rodgers*, 276 Ga. 359,

360, 578 S.E.2d 841, 842 (2003) (answering certified questions concern-

ing whether cause of action existed under the circumstances and, if so,

which categories of damages were available). The questions posed here

will, when answered, determine the viability of Cobb County's public-

nuisance claim. They are case-determinative.

Second, the Ohio MDL court similarly erred and abused its discre-

tion insofar as it ruled that Publix's questions are not "determinative"

or properly certifiable simply because Cobb County might disagree with

how Publix has framed its questions. Order, RE 5425, Page ID #

635575. When questions are certified by federal courts, it is done with

the understanding that state courts might reframe the questions based

on their better and controlling understanding of state law. *See, e.g.*,

*Nat'l Prescription Opiate Litig.*, 82 F.4th at 463 ("Our phrasing of the

32

question is not intended to restrict the Ohio Supreme Court's considera-
tion of the issues involved."). The manner in which Publix has framed
its questions and any dispute over it cannot render the questions non-
dispositive or otherwise improper for certification.

Third, the Ohio MDL court erred and abused its discretion insofar
as it suggests that Publix's questions are invalid because, in another
track of the opioid multi-district litigation, the district court has already
generally addressed the scope of public-nuisance law. Order, RE 5425,
Page ID # 635575–76 & n.4. This ruling contravenes federalism and
comity.

The Ohio MDL court decided its prior, cross-referenced ruling in
the context of assessing the validity of jury instructions under Ohio law.
*See In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 739, 781 (N.D.
Ohio 2022) (deciding motion for new trial involving nuisance claims un-
der Ohio law). The Ohio MDL court discounts differences between Ohio
and Georgia nuisance law by pointing to the Restatement (Second) of
Torts: "This Court has ruled that Georgia follows the Restatement (Sec-
ond) of Torts." *Id.*, Page ID # 635575 n.4. But Georgia has not adopted
the Restatement (Second) of Torts wholesale. When the Ohio MDL court

33

defines Georgia public-nuisance law in accord with its Restatement-based "national" law of public nuisance for opioid cases, without genuinely grappling with Georgia's law, the Ohio MDL court steps outside the bounds of its limited federal jurisdiction. *See In re Allied-Signal, Inc.*, 915 F.2d 190, 193 (6th Cir. 1990).

The Court should hold that, under the unique circumstances of this case and this petition, Publix has a clear and indisputable right to a writ of mandamus, which requires certification to the Georgia Supreme Court. *In re King's Daughters Health Sys.*, 31 F.4th at 525.

### E.    Other factors support issuing a writ of mandamus.

First, it has been shown above, without plausible contradiction, that the proposed questions pose "new and important problems" and "legal issues of first impression." *In re Professionals Direct Ins.*, 578 F.3d at 437; *see supra* 12–23. This is not a case where a "reasonably clear and principled course" of Georgia-specific law is available to the Ohio MDL court to follow. *See State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 194 (6th Cir. 2015) (citation omitted). This weighs in favor of granting the writ.

Second, it has also been shown that the district court clearly erred in refusing to certify the questions by characterizing them as not

34

"determinative." *Supra* 31–33. This also weighs in favor of granting the writ. *See In re Professionals Direct Ins.*, 578 F.3d at 437 (listing as a factor the "lower court's clearly erroneous rulings").

Third, the district court's second ground for denying the motion for certification—that the motion was supposedly untimely—is also clearly erroneous and amounts to an abuse of discretion. *See id.*; *see also Highmark*, 572 U.S. at 564 n.2; *In re Ford*, 987 F.2d at 341. The district court held that Publix's motion to certify was "even more untimely" and "even more late" than its prior motion. *See* Order, RE 5425, Page ID # 635575–76. This ruling lacks any cognizable legal foundation.

There is no applicable rule—federal or state—that restricts motions to certify a question to a state supreme court to any particular procedural stage of litigation. District courts routinely certify questions in the summary judgment context and can do so even after trial. *See, e.g.*, *Jerkins v. Lincoln Elec. Co.*, No. 1:04-CV-18810, 2010 WL 4922508, at \*5 (N.D. Ohio Aug. 6, 2010) (granting certification post-trial), *certified question answered*, 103 So. 3d 1 (Ala. 2011); *LeBeau v. Lembo Corp.*, No. 5:06-CV-00502, 2008 WL 4317835, at \*1 (N.D. Ohio Sept. 15, 2008) (staying summary judgment while Ohio Supreme Court

35

addressed certified questions); *cf. also In re Mt. Hawley Ins. Co.*, 736 F. App'x 392 (4th Cir. 2018) (certifying question concerning exception to attorney–client privilege on petition for mandamus after grant of motion to compel discovery), *certified question answered*, 829 S.E.2d 707 (S.C. 2019). This Court will certify questions for the first time on appeal, sometimes sua sponte. *See, e.g.*, *Nat'l Prescription Opiate Litig.*, 82 F.4th at 465; *Am. Booksellers Found. for Free Expression v. Strickland*, 560 F.3d 443, 444 (6th Cir. 2009), *certified question answered sub nom. Am. Booksellers Found. for Free Expression v. Cordray*, 922 N.E.2d 192 (Ohio 2010).

When it comes to timing, moving to certify a question is disfavored only "when it is sought … after the district court has entered an adverse judgment" on *that issue. Croce v. New York Times Co.*, 930 F.3d 787, 797 (6th Cir. 2019); *accord State Auto Prop. & Cas. Ins.*, 785 F.3d at 194. That was so with Publix's prior motion to certify, which it filed only after the district court had already decided the question subsequently proposed for certification. *Supra* 10–11. But it's not so for the new and different questions proposed here.

The district court's reasoning supporting its holding that Publix filed its motion too late is erroneous and an abuse of discretion. It misinterpreted this Court's denial of the prior petition for a writ of mandamus as somehow barring any future requests to certify other questions to the Georgia Supreme Court. *See* Order, RE 5425, Page ID # 635575. It also incorrectly suggests that Publix, viewed as "unhappy with [the district court's] ruling" denying its prior motion for certification, is merely trying to resurrect its prior failed motion. *Id.*, Page ID # 635574. As explained above, Publix poses different questions.

In sum, the district court provided no valid reason for denying Publix's motion to certify the questions posed here.

## VII. CONCLUSION

In this bellwether case in the national opioid litigation, the Court should grant the petition and order that the questions of Georgia law shall be certified to the Georgia Supreme Court. Only that court can properly answer the novel and complex questions posed here. The circumstances of this case and petition require this outcome. The denial of certification was based entirely on legal errors that amount to an abuse of discretion.

37

Alternatively, this Court should exercise its inherent discretion to require Publix's proposed questions to be certified to the Georgia Supreme Court under O.C.G.A. § 15-2-9.

Dated: June 5, 2024

Respectfully submitted,

/s/ Michael P. Kohler

Michael P. Kohler
MILLER & MARTIN PLLC
1180 West Peachtree Street, N.W.,
Suite 2100
Atlanta, Georgia 30309-3407
Telephone: (404) 962-6403
Email: michael.kohler@millermartin.com

/s/ Robert F. Parsley

Robert F. Parsley
Jordan B. Scott
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Telephone: (423) 785-8211
Email: bob.parsley@millermartin.com
Email: jordan.scott@millermartin.com

*Attorneys for Defendant–Petitioner Publix Super Markets, Inc.*

## CERTIFICATE OF COMPLIANCE

This document complies with the type–volume limit set forth in

Fed. R. App. P. 21(d)(1): This petition contains 7,502 words.

Dated: June 5, 2024

/s/ Robert F. Parsley

Michael P. Kohler
MILLER & MARTIN PLLC
1180 West Peachtree Street, N.W.,
Suite 2100
Atlanta, Georgia 30309-3407
Telephone: (404) 962-6403
Email: michael.kohler@millermartin.com

Robert F. Parsley
Jordan B. Scott
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
Telephone: (423) 785-8211
Email: bob.parsley@millermartin.com
Email: jordan.scott@millermartin.com

*Attorneys for Defendant–Petitioner Publix
Super Markets, Inc.*

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Per Federal Rule of Appellate Procedure 21(a)(1), the undersigned certifies that the foregoing document has also been served on all parties to the proceeding in the district court, and provided to the district judge, by electronically filing a copy of this petition in the district court. Notice of that filing will be sent by operation of the district court's electronic filing system to all parties indicated on the electronic filing receipt.

Dated: June 5, 2024.

<u>/s/ Robert F. Parsley</u>

Michael P. Kohler
MILLER & MARTIN PLLC
1180 West Peachtree Street, N.W.,
Suite 2100
Atlanta, Georgia 30309-3407
Telephone: (404) 962-6403
Email: michael.kohler@millermartin.com

Robert F. Parsley
Jordan B. Scott
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200

Chattanooga, TN 37402
Telephone: (423) 785-8211
Email: bob.parsley@millermartin.com
Email: jordan.scott@millermartin.com

*Attorneys for Defendant–Petitioner Publix
Super Markets, Inc.*

## ADDENDUM ONE: DESIGNATION OF RELEVANT LOWER COURT DOCUMENTS

| Documents in Case No. 1:17-md-2804 (N.D. Ohio) | | | |
|---|---|---|---|
| **Date** | **Description** | **Record Entry** | **Page ID # Range** |
| 03/01/2019 | Brief of Plaintiffs' Executive Committee Concerning Survey of State Nuisance Law | 1406 | 38806–38829 |
| 04/09/2021 | Order Setting Five Cases for Trial | 3688 | 510844–510845 |
| 08/27/2021 | Defendant Publix Super Markets, Inc.'s Memorandum of Law in Support of Motion to Dismiss Plaintiff Cobb County's Complaint | 3906-1 | 534995–535006 |
| 12/22/2021 | Defendant Publix Super Markets, Inc.'s Motion for Reconsideration and/or Certification to Georgia Supreme Court | 4208 | 557962–557975 |
| 03/01/2022 | Appeal Remark from USCA for the Sixth Circuit | 4291 | 572006–572049 |
| 04/04/2024 | Defendant Publix Super Markets, Inc.'s Motion to Certify Questions to the Georgia Supreme Court and Incorporated Memorandum of Supporting Law | 5388 | 634101–634129 |
| 04/18/2024 | Plaintiff's Memorandum in Opposition to Publix Super Markets, Inc.'s Motion to Certify | 5405 | 635364–635381 |

| Documents in Case No. 1:17-md-2804 (N.D. Ohio) | | | |
|---|---|---|---|
| *Date* | *Description* | *Record Entry* | *Page ID # Range* |
| | Questions to the Georgia Supreme Court | | |
| 05/02/2024 | Order Denying Publix's Motion to Certify Questions to the Georgia Supreme Court | 5425 | 635572–635576 |

| Documents in Case No. 1:18-op-45817 (N.D. Ohio) | | | |
|---|---|---|---|
| *Date* | *Description* | *Record Entry* | *Page ID # Range* |
| 06/12/2018 | Complaint | 1 | 1–280 |
| 07/14/2021 | Plaintiff Cobb County's Supplemental and Amended Allegations to Be Added to "Short Form for Supplementing Complaint and Amending Defendants and Jury Demand" | 22 | 658–890 |
| 8/10/2021 | Track Eight Case Management Order for Cobb County, Georgia | 26 | 897–904 |

| Documents in Case No. 1:18-cv-02865 (J.P.M.L.) | | | |
|---|---|---|---|
| *Date* | *Description* | *Doc. #* | *Page Range* |
| 07/09/2018 | Conditional Transfer Order (CTO–42) | 4 | 1–4 |

ADDENDUM TWO: DISTRICT COURT'S ORDER
DATED MAY 2, 2024

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | **MDL 2804** |
| | ) | **Case No. 1:17-md-2804** |
| THIS DOCUMENT RELATES TO: | ) ) | |
| | ) | **Judge Dan Aaron Polster** |
| *Track Eight* | ) ) | |
| | ) ) ) ) | **ORDER DENYING PUBLIX'S MOTION TO CERTIFY QUESTIONS TO THE GEORGIA SUPREME COURT** |

On April 4, 2024, Publix filed a Motion asking this Court to certify four Questions to the Georgia Supreme Court. Docket no. 5388. Each of the proposed four Questions contains at least one follow-up question; multiple Questions have sub-parts; and one Question has sub-sub-parts. In fact, within Publix's four proposed Questions, there are at least ten different possible questions.[1]

---

[1]     Publix's four proposed questions are:

1. **[1]** Under Georgia law, can a licensed health care provider's failure to satisfy a statutory professional practice standard constitute a public nuisance under O.C.G.A. § 41-1-2? **[2]** If so, does such a claim require proof that the provider committed malpractice?

2. Under O.C.G.A. § 41-1-2, "[a] public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals." **[3]** What constitutes the "sphere of operation" of a public nuisance for purposes of § 41-1-2? **[4]** Can the distribution and/or dispensing of prescription medications without proper controls against diversion "damage[e] all persons who come within the sphere of its operation" within the meaning of O.C.G.A. § 41-1-2 where: (i) the medication has recognized medical benefits, and (ii) the pharmacy is alleged to have filled only some prescriptions for that medication under suspicion of diversion?

3. **[5]** What establishes that a nuisance interferes with the public health as opposed to merely the personal health of some individuals? **[6]** Is the personal health or sickness of an individual an inherently private right that a local government may not seek to vindicate via public-nuisance action under O.C.G.A. § 41-2-2?

4. **[7]** Does a public-nuisance claim filed under O.C.G.A. § 41-2-2 allow recovery of only injunctive relief and the direct costs associated with complying with the injunction?

    a. If the answer is yes, **[8]** is a claimant pursuing abatement of a public nuisance under O.C.G.A. § 41-2-2 required to show that an injunction enjoining the defendant's conduct would actually result in the abatement of the nuisance?

    b. If the answer is no, (i) **[9]** Does Georgia law nevertheless preclude a local government from recovering monies to pay for the provision of free public services—*e.g.*, emergency, law enforcement, criminal-justice, foster-care, and other like services—as a form of "abatement" of a public nuisance? And (ii) **[10]** Does Georgia preclude a local government from recovering monies to treat injuries personal to only some members

*footnote continued on next page*

A2-2

Plaintiff filed a Response. Docket no. 5405. Publix filed a Reply. Docket no. 5415. Having carefully considered Publix's proposed Questions and the parties' briefs and arguments, Publix's Motion is **DENIED,** for the reasons stated below.

The following summary of the applicable procedural history provides necessary context. On August 8, 2021, Publix filed a motion to dismiss Plaintiff Cobb County's Complaint. Docket no. 3906. In its motion to dismiss, Publix asserted Georgia law does not recognize a public nuisance claim for "the actions of a business engaged in a heavily regulated industry." Docket no. 3906-1 at 2. Publix's theory was, "if the Georgia legislature has not characterized the violation of a regulatory scheme (such as the [Georgia Pharmacy Practice Act ("PPA"), O.C.G.A § 26-4-1 *et seq.*,]) to be a public nuisance, 'then a court of equity has no power to declare it one,' and remedies under the PPA and authorization to pursue them are limited to those expressly set forth in the statute." *In re Nat'l Prescription Opiate Litig.*, 2021 WL 4952468, at *5 (N.D. Ohio Oct. 25, 2021) (quoting Publix's motion to dismiss) (Docket no. 4071).

Relying on Georgia Supreme Court precedent, this Court denied Publix's motion to dismiss. The Court found that: (1) Georgia law "explicitly recognizes a public nuisance claim *could* be brought, even though a statute addresses the same conduct," *id.* at *6 (emphasis in original); and (2) "nothing in the provisions of the PPA expresses or implies an intent by the Georgia legislature to displace the common law or immunize violations of its provisions from public nuisance liability under Georgia law." *Id.* at *7. The Court concluded that "Publix fail[ed] to demonstrate that Georgia law does not recognize a public nuisance claim." *Id.*

---

of the public—*e.g.*, drug addiction, withdrawal, and overdose—as a form of "abatement" of a public nuisance?

2

A2-3

Publix responded with a motion asking this Court to reconsider its ruling or, alternatively, to "certify a [single] question to the Georgia Supreme Court regarding whether the County has asserted an actionable claim of public nuisance."[2] Docket no. 4208 at 10. The Court denied both requests. *In re Nat'l Prescription Opiate Litig.*, 2022 WL 228150 (N.D. Ohio Jan. 26, 2022) (Docket no. 4245). Regarding the certification request, the Court held that Publix's petition was untimely, coming after the Court had already analyzed and decided the legal questions raised in the motion to dismiss: "the appropriate time to request certification of a state law issue 'is before, not after, the district court has resolved [it].'" *Id.* at *3 (quoting *In re Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, 852 F.3d 601, 607–608 (6th Cir. 2017)).[3]

Unhappy with this ruling, Publix petitioned the Sixth Circuit for a writ of mandamus, seeking to compel this Court to certify Publix's question to the Georgia Supreme Court. *See* docket no. 4291. The Sixth Circuit denied Publix's petition, finding that Publix had "adequate alternative means to obtain the relief it seeks" and did not "show a 'clear and indisputable' right to mandamus in this case." *See* docket no. 4465 at 2.

Now, Publix asks this Court yet again to certify questions to the Georgia Supreme Court, this time laying out a prolix proposal of four multi-part and multi-sub-part questions. This request has even less merit than Publix's first request.

---

[2]    Specifically, the single question Publix sought to have certified was: "Does Georgia law recognize a public nuisance claim, actionable under O.C.G.A. § 41-2-2, for conduct which allegedly violates the Georgia Pharmacy Practice Act ("PPA"), O.C.G.A. § 26-4-1 *et seq.*, and for which the legislature has already enumerated civil and criminal remedies?" Docket no. 4208 at 13.

[3]    The Court further noted that: (1) Georgia law "provides sufficient guidance to allow [the Court] to make clear and principled decisions," *id.* at *4 (quoting *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 449–50 (6th Cir. 2009)); and (2) public nuisance rulings from other jurisdictions "do not give the Court reason to reconsider its earlier decision, or to certify to the Georgia Supreme Court a question regarding the viability of the County's public nuisance claims." *Id.*

The main reason Publix's current request has even less merit is that it is even more untimely. If Publix's first request for certification, made in 2021, was tendered too late—and the Court concluded it was—then Publix's second request is obviously only more so. And as the Sixth Circuit clearly stated, "Publix can raise the district court's denial of its motion to certify the question in an appeal from the judgment." Docket no. 4465 at 2.

Equally dispositive, however, is that Georgia Code § 15-2-9 permits certification only of "questions of the laws of [Georgia] which are determinative of the case . . . ." O.C.G.A. § 15-2-9. The single question Publix proposed in its first certification request may have met that standard (were it not untimely), but the multiple questions Publix now proposes certainly do not. As written, Publix's questions are convoluted and confusing and not outcome-determinative. For example, Publix's Question 2 would ask the Georgia Supreme Court to define the scope of Plaintiff's alleged nuisance ***based on Publix's framing of Plaintiff's allegations***. As this Court discovered when drafting jury instructions for the Track Three trial, however, a precise definition of the public nuisance at issue is hotly contested by the parties.

Specifically, in Track Three—relying on the Restatement (Second) of Torts[4]—this Court carefully analyzed when ***conduct, itself***, is found to be a nuisance, as compared to when conduct ***creates a condition*** that is found to be a nuisance. *See In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 739, 781 (N.D. Ohio 2022) (docket no. 4296) ("the conduct itself (*i.e.*, the human activity) may, but need not necessarily, be the interference. Per the Restatement, the physical condition resulting from the activity can also be the interference."). Publix's Question 2 assumes away any ***condition*** that might be found by a jury to be a public nuisance and instead focuses only

---

[4]      This Court has ruled that Georgia also follows the Restatement (Second) or Torts. *See In re Opiate*, 2022 WL 228150 at *4 (docket no. 4071) (collecting cases).

on Publix's specific **conduct** ("the distribution and/or dispensing of prescription medications without proper controls against diversion"). If this Court asked the Georgia Supreme Court to rule on Question 2, Plaintiffs would certainly contest Publix's framing, thus rendering the question largely meaningless for resolving this case. In other words, resolution of Question 2 by the Georgia Supreme Court would not certainly determine the outcome of this case, so the Question is inappropriate for certification.[5]

In sum, as compared with Publix's first, denied request to certify a question to the Georgia Supreme Court, Publix's current request proposes questions that are even less appropriate and even more late. Accordingly, Publix's Motion to Certify Questions to the Georgia Supreme Court is **DENIED**.

**IT IS SO ORDERED.**

 **/s/ Dan Aaron Polster  May 2, 2024**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

---

[5]     Publix's Question 4 is even more unfit. Publix asserts that its Question 4 could (if decided in its favor) simplify and streamline the case and "have great potential to focus and facilitate settlement negotiations between the parties." Motion at 11. Publix thus concedes that an answer from the Georgia Supreme Court to Question 4 would simply provide helpful guidance—it is not "determinative of the case."