# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL NO. 2804 |
| | Case No. 17-MD-2804 |
| THIS DOCUMENT RELATES TO: | Judge Dan Aaron Polster |
| *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | |
| *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13) | |

## PBM DEFENDANTS' REPLY IN FURTHER SUPPORT OF PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINTS IN TRACKS 12 AND 13

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... II

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.  PLAINTIFFS' RICO CLAIMS ARE TIME-BARRED. ............................................... 2

    A.  Plaintiffs' claims are not rendered timely by the "separate accrual" rule. .............. 2

    B.  Plaintiffs' claims are not rendered timely by the discovery rule. .......................... 4

    C.  Plaintiffs do not sufficiently allege fraudulent concealment. ............................... 5

    D.  The RICO claims against the New Defendants are not timely. .............................. 6

    E.  The statute of limitations applies to equitable RICO claims. ............................... 7

II.  PLAINTIFFS DO NOT ALLEGE DAMAGE TO BUSINESS OR PROPERTY. ........... 8

III.  ROCHESTER'S NEW YORK LAW CLAIMS AGAINST THE NEW
    DEFENDANTS ARE TIME-BARRED. ...................................................................... 10

    A.  The continuing wrong doctrine does not save Rochester's state-law claims. ....... 10

    B.  Rochester's state law claims against the New Defendants do not relate
        back. ................................................................................................................ 11

    C.  Equitable tolling does not apply. ..................................................................... 12

IV.  ROCHESTER'S GENERAL BUSINESS LAW CLAIMS FAIL BECAUSE
    ROCHESTER'S INJURIES ARE DERIVATIVE OF INJURIES TO OTHERS. ........... 13

V.  THE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS
    SHOULD BE DISMISSED. ....................................................................................... 14

CONCLUSION ...................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page**

### Cases

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
    483 U.S. 143 (1987) ..................................................................................................8

*Am. Annuity Grp. v. Guar. Reassurance Corp. Liquidating Tr.*,
    55 F. App'x 255 (6th Cir. 2003) ...........................................................................11

*Amaya v. Garden City Irrigation, Inc.*,
    645 F. Supp. 2d 116 (E.D.N.Y. 2009)...................................................................12

*ArmorSource LLC v. Kapah*,
    2019 WL 1118023 (S.D. Ohio Mar. 11, 2019)........................................................4

*Asher v. Unarco Material Handling, Inc.*,
    596 F.3d 313 (6th Cir. 2010) .............................................................................4, 11

*Baltrusaitis v. Int'l Union, United Auto., Aerospace & Ag. Imp. Workers of Am.*,
    86 F.4th 1168 (6th Cir. 2023) ..................................................................... 2, 3, 4, 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................9

*Blanks v. Fluor Corp.*,
    450 S.W.3d 308 (Mo. Ct. App. 2014) ...................................................................15

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    818 N.E.2d 1140 (N.Y. 2004) ...............................................................................13

*Burniac v. Wells Fargo Bank, N.A.*,
    810 F.3d 429 (6th Cir. 2016) .................................................................................13

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ...................................................................................8

*Carter v. Medtronic, Inc.*,
    2020 WL 2319729 (S.D. Ohio May 11, 2020) ........................................................5

*City & County of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020).................................................................8, 9

*City of Almaty v. Khrapunov*,
    956 F.3d 1129 (9th Cir. 2020) .................................................................................9

*City of N.Y. v. Smokes-Spirits.Com, Inc.*,
    911 N.E.2d 834 (N.Y. 2009) ................................................................. 13

*Conley v. Gibson*,
    355 U.S. 41 (1957) ................................................................................ 9

*Corsello v. Verizon N.Y., Inc.*,
    967 N.E.2d 1177 (N.Y. 2012) .............................................................. 13

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ................................................................. 5

*Donovan v. All-Weld Prods. Corp.*,
    34 A.D.3d 257 (N.Y. App. Div. 1st Dept. 2006) ................................. 12

*Egerer v. Woodland Realty, Inc.*,
    556 F.3d 415 (6th Cir. 2009) ................................................................. 7

*Engleson v. Unum Life Ins. Co. of Am.*,
    723 F.3d 611 (6th Cir. 2013) ................................................................. 7

*In re EpiPen Direct Purchaser Litig.*,
    2022 WL 1017770 (D. Minn. Apr. 5, 2022) ........................................ 14

*In re Fredeman Litig.*,
    843 F.2d 821 (5th Cir. 1988) ................................................................. 7

*Fricke v. Beauchamp Gardens Owners Corp.*,
    222 A.D.3d 718 (N.Y. App. Div. 2d Dep't 2023) .............................. 11

*Friedman v. Estate of Presser*,
    929 F.2d 1151 (6th Cir. 1991) ............................................................... 5

*Ganey v. Raffone*,
    1996 WL 382278 (6th Cir. July 5, 1996) .............................................. 8

*Hall v. Warden, Lebanon Corr. Inst.*,
    662 F.3d 745 (6th Cir. 2011) ................................................................. 6

*Hengle v. Treppa*,
    19 F.4th 324 (4th Cir. 2021) .................................................................. 7

*Hoover v. Langston Equip. Assocs., Inc.*,
    958 F.2d 742 (6th Cir. 1992) ........................................................ 14, 15

*Hunter v. Gates*,
    68 F. App'x 69 (9th Cir. 2003) .............................................................. 6

*John John, LLC v. Exit Dev't, LLC,*
    35 A.D.3d 540 (N.Y. App. Div. 2d Dep't 2006) ................................................................15

*Kearney v. Atl. Cement Co.,*
    33 A.D.2d 848 (N.Y. App. Div. 3d Dep't 1969) ................................................................11

*Klehr v. A.O. Smith Corp.,*
    521 U.S. 179 (1997) ........................................................................................................2, 3

*Mann v. United States,*
    2023 WL 3479402 (6th Cir. May 16, 2023) ......................................................................7

*Mondello v. N.Y. Blood Ctr.-Greater N.Y. Blood Program,*
    604 N.E.2d 81 (N.Y. 1992) ..............................................................................................12

*Nemeth v. K-Tooling,*
    224 N.E.3d (N.Y. 2023) ...................................................................................................12

*Nemkov v. O'Hare Chicago Corp.,*
    592 F.2d 351 (7th Cir. 1979) ..............................................................................................8

*Noland v. Chua,*
    816 F. App'x 202 (9th Cir. 2020) ......................................................................................4

*Patrick v. Comprehensive Med. Supply, LLC,*
    225 A.D.3d 777 (N.Y. App. Div. 2d Dep't 2024) ............................................................12

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.,*
    262 F.3d 260 (4th Cir. 2001) ..............................................................................................9

*Religious Tech. Ctr. v. Wollersheim,*
    796 F.2d 1076 (9th Cir. 1986) ............................................................................................8

*Rotella v. Wood,*
    528 U.S. 549 (2000) ............................................................................................................8

*Ruth v. Unifund CCR Partners,*
    604 F.3d 908 (6th Cir. 2010) ..............................................................................................7

*Simmons v. S. Cent. Skyworker's, Inc.,*
    936 F.2d 268 (6th Cir. 1991) ............................................................................................11

*Simpson v. Putnam Cnty. Nat'l Bank of Carmel,*
    20 F. Supp. 2d 630 (S.D.N.Y. 1998) ..................................................................................6

*Solidstrip Inc. v. U.S. Tech. Corp.,*
    2024 WL 1177968 (N.D. Ohio Mar. 18, 2024) ................................................................4

*Stewart Coach Indus, Inc. v. Moore*,
  512 F. Supp. 879 (S.D. Ohio 1981)........................................................................4

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
  2022 WL 17996011 (E.D. La. Dec. 29, 2022)........................................................4

*Webster Golf Club, Inc. v. Monroe Cnty. Water Auth.*,
  219 A.D.3d 1136 (N.Y. App. Div. 4th Dep't 2023)..............................................10

*Zumpano v. Quinn*,
  849 N.E.2d 926 (N.Y. 2006)..................................................................................13

## Rules / Statutes

15 U.S.C. § 15b.........................................................................................................8

Clayton Act...............................................................................................................8

Controlled Substances Act ......................................................................................12

Fed. R. Civ. P. 9(b) ...........................................................................................5, 6, 9

NY CPLR 203(c) .....................................................................................................11

RICO ................................................................................... 1, 2, 4, 5, 6, 7, 8, 9, 15

Rule 15(c)(1)(A) .....................................................................................................11

Rule 8 .........................................................................................................................9

## INTRODUCTION

After Plaintiffs' cases were selected as bellwethers to test claims by local governments against PBMs under public-nuisance theories and related state laws, Plaintiffs overhauled their complaints to add federal RICO claims and to name numerous new defendants. The Court should dismiss those efforts to transform Plaintiffs' cases—and change the focus of this MDL—because their new claims are untimely or otherwise legally foreclosed.

*First*, Plaintiffs' RICO claims are time-barred. Plaintiffs do not seriously dispute that the asserted injuries underlying their RICO claims occurred well outside the limitations period. They instead invoke various doctrines to try to avoid the straightforward application of the statute of limitations, but none is legally sufficient to survive a motion to dismiss. At a minimum, the claims against the New Defendants should be dismissed because they are untimely on the face of Plaintiffs' own pleadings under directly applicable Sixth Circuit precedent.

*Second*, Plaintiffs' RICO claims should be dismissed against all Defendants because Plaintiffs failed to plead a cognizable injury to business or property. All federal courts of appeals to have addressed the issue—along with the only other district court that has addressed it in the context of opioid-related claims—agree that governmental expenditures and costs of public services do not support a civil RICO claim. This Court should follow that unanimous position, dismiss the RICO claims, and restore the focus of these cases to the public-nuisance claims.

*Third*, Rochester's additional state-law claims are legally deficient. Rochester does not dispute that the statutes of limitations expired for its state-law claims against the New Defendants, and Rochester fails to invoke any applicable tolling doctrine. Rochester likewise fails to refute the legal flaws in its statutory state-law claims against all Defendants (and it expressly withdraws one of its claims), so those ancillary claims should also be dismissed.

*Finally*, Plaintiffs' claims against the Parent Company Defendants should be dismissed because Plaintiffs have not plausibly pleaded direct or alter ego liability.

## ARGUMENT

### I.      PLAINTIFFS' RICO CLAIMS ARE TIME-BARRED.

Plaintiffs do not seriously dispute that the injuries underlying their RICO claims occurred well outside the four-year statute of limitations—in many cases, decades ago. *See* Dkt. No. 5370 (**Mot**.) at 6–7. Plaintiffs instead offer five reasons that their RICO claims are nevertheless purportedly timely. Those reasons lack legal merit. The Court should dismiss Plaintiffs' RICO claims against all Defendants or, at the very least, against the New Defendants.

#### A.      **Plaintiffs' claims are not rendered timely by the "separate accrual" rule.**

Plaintiffs attempt to render their expired RICO claims timely by invoking the "separate accrual" rule, which has been applied in different statutory contexts to allow recovery for additional damage caused by the "commission of a separable, new predicate act" within the four-year limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). But neither the Supreme Court nor the Sixth Circuit has never applied the separate accrual rule in the RICO context. *See Baltrusaitis v. Int'l Union, United Auto., Aerospace & Ag. Imp. Workers of Am.*, 86 F.4th 1168, 1178 (6th Cir. 2023). And Plaintiffs offer no compelling basis to do so here.

Even if the separate accrual rule could apply, it would not save Plaintiffs' RICO claims. The separate accrual rule permits recovery only for additional damages caused a "separable, new predicate act" committed within the four-year limitations period. *Klehr*, 521 U.S. at 190. But here, Plaintiffs do not allege new, independent predicate acts; they merely rehash decades-old conduct that has allegedly continued into the limitations period. For example, Plaintiffs rely on paragraph 382 of Rochester's amended complaint as evidence of a separate predicate act. Dkt. No. 5448 (**Opp'n**) at 4 n.11. But that paragraph describes conduct that allegedly occurred over two decades

and "[a]t all times since the 1990s." Rochester Am. Compl. ¶ 382. Indeed, Plaintiffs cite a litany of allegations that supposedly illustrate "predicate acts within the limitations period" but that actually refer to decades-old conduct. *E.g.*, *id.* ¶ 392 (alleging that the PBM Defendants have had access to data "[f]or as long as they have been PBMs"); ¶ 423 (alleging that the PBM Defendants "have been on notice for decades that they needed to and had the ability to address the overutilization of prescription opioids"); Lincoln County Am. Compl. ¶¶ 366, 369, 376, 407, 534 (similar). The mere repetition of earlier predicate acts within the limitations period is not enough to revive Plaintiffs' expired claims; Plaintiffs must allege *new* predicate acts. They have not.

In any event, a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr*, 521 U.S. at 190. Plaintiffs must identify new, separate predicate acts that caused additional injury "*over and above* the harm that the earlier acts caused." *Id.* (emphasis added); *see also Baltrusaitis*, 86 F.4th at 1178. They fail to do so. In fact, Plaintiffs make no attempt to identify any "additional harm" or to explain how any "additional harm" would differ from all other harm alleged—*i.e.*, the oversupply of opioids and the alleged injury flowing therefrom.

Both the Supreme Court and the Sixth Circuit have rejected attempts to revive claims in similar circumstances. In *Klehr*, the plaintiffs alleged a decades-long conspiracy through the limitations period, but the Supreme Court held that any new acts in the limitations period did not permit recovery for injuries caused by conduct outside the limitations period, and any continued wrongful conduct did not create any new or different harm. 521 U.S. at 190. The plaintiffs in *Baltrusaitis* similarly alleged that the defendants "failed to fix" the injuries sustained by pre-limitations-period conduct, but did not identify new injuries sustained during the limitations period. Without adopting the separate-accrual rule, the Sixth Circuit held that "[r]egardless, the

3

rule d[id] not apply" because the alleged injuries "didn't create 'harm over and above the harm that the earlier acts caused.'" 86 F.4th at 1178 (citation omitted).

Likewise here, Plaintiffs plead, at most, that the alleged conspiracy continued through the limitations period and that Defendants failed to take remedial action before and during the limitations period. Opp'n at 4 n.11 (citing Rochester Am Compl. ¶ 291 (alleging conduct from the 1990s to 2018); ¶ 325 (alleging a conspiracy with Purdue "[f]or more than two decades"); Lincoln County Am. Compl. ¶¶ 275, 309 (same)). But Plaintiffs' cited authorities confirm that the separate accrual rule applies only where plaintiffs have identified discrete predicate acts during the limitations period that caused them *new* injuries. *See Solidstrip Inc. v. U.S. Tech. Corp.*, 2024 WL 1177968, at *9 (N.D. Ohio Mar. 18, 2024) (new fraudulent contracts); *ArmorSource LLC v. Kapah*, 2019 WL 1118023, at *9 (S.D. Ohio Mar. 11, 2019) (new fraudulent deposits). Plaintiffs' allegations fall short of this standard, so their RICO claims remain time-barred. *See also Noland v. Chua*, 816 F. App'x 202, 203 (9th Cir. 2020) (conduct that "merely reaffirm[ed]" plaintiff's initial exclusion from business did not inflict separate and independent injury).

### B. Plaintiffs' claims are not rendered timely by the discovery rule.

Plaintiffs agree that their RICO claims accrued when they knew or should have known of their injuries, which occurred decades ago. Opp'n at 5. They attempt to side-step this glaring pleading flaw with non-specific allegations that they only recently became aware of their RICO-related injuries. *Id.* at 5–6. But "the plaintiff who seeks to rely on the 'discovery rule' [must] affirmatively and particularly plead the date of discovery." *Stewart Coach Indus, Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981). Plaintiffs do not even attempt to meet this requirement.

In any event, "the discovery rule only applie[s] to cases involving latent injuries," not "open and obvious" ones. *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2022 WL 17996011, at *1 (E.D. La. Dec. 29, 2022); *see also Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 321

(6th Cir. 2010); *Carter v. Medtronic, Inc.*, 2020 WL 2319729, at *4–5 (S.D. Ohio May 11, 2020). Plaintiffs' discovery-rule assertion is incompatible with the open and obvious injuries that they allege: (1) Plaintiffs have been "dealing with the public health crisis" allegedly caused by Defendants for "the past two decades" (Rochester Am. Compl. ¶ 33; Lincoln County Am. Compl. ¶ 33); and (2) the public health crisis in Plaintiffs' communities began in the 1990s (Rochester Am. Compl. ¶¶ 38, 40, 62; Lincoln County Am. Compl. ¶¶ 38, 40, 61). Crediting inconvenient facts is not "constru[ing]" them "in Defendants' favor." Opp'n at 5 (emphasis omitted). Plaintiffs cannot use the standard of review to rewrite their amended complaints.

C.      **Plaintiffs do not sufficiently allege fraudulent concealment.**

Plaintiffs' fraudulent concealment argument also fails. Fraudulent concealment requires that a plaintiff show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). "In a RICO case, the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment, and diligently endeavor to sue within the statutory limitations period or as soon thereafter as feasible." *Baltrusaitis*, 86 F.4th at 1178 (citation and alteration omitted). A plaintiff must also plead fraudulent concealment "with particularity." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 n.11 (6th Cir. 1991) (citing Fed. R. Civ. P. 9(b)).

Plaintiffs offer only an unadorned mass string cite to their amended complaints. *See* Opp'n at 6. But their conclusory allegations merely recite a series of general legal formulas without any supporting facts. *See, e.g.*, Rochester Am. Compl. ¶ 706 ("Due in large part to their deceptive, intentional, and fraudulent conduct, the full scope of Defendants' wrongful conduct and their central role in the opioid epidemic has not yet come to light."). Nowhere do Plaintiffs' amended

complaints (or opposition brief) explain—as required by Rule 9(b)—what specific conduct Defendants concealed, how Plaintiffs exercised diligence, or how Plaintiffs were prevented from learning that they had a cause of action. *See Simpson v. Putnam Cnty. Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 634 (S.D.N.Y. 1998) (dismissing time-barred RICO claims because complaint included only conclusory allegations of concealment and due diligence); *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003) (affirming dismissal when complaint generally alleged concealment).

Because Plaintiffs failed to plead any specific facts to support their fraudulent-concealment allegation, this Court's prior decisions declining to dismiss claims on limitations grounds are distinguishable and inapplicable. *See* Dkt. No. 1203 at 4 (plaintiffs alleged lack of cooperation with law enforcement and specific misrepresentations); Dkt. No. 3177 at 12–13 (similar); Dkt No. 2568 at 21–22 (plaintiffs alleged defendants destroyed documents, avoided submitting certain documents to eliminate evidence, and designed systems to avoid recording wrongdoing).

### D.     The RICO claims against the New Defendants are not timely.

Plaintiffs do not dispute that Sixth Circuit case law forecloses relation back of their claims against the New Defendants. *See* Opp'n at 7 n.18. Instead, they argue that the Court's moratorium on new filings supports equitable tolling. *Id.* at 7. Not so. Equitable tolling is a narrow exception that is "sparingly" granted; a plaintiff must show both (1) "that he has been pursuing his rights diligently," and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citation omitted). Plaintiffs make no such showing. The Court's moratorium is not an exceptional circumstance; moratoriums on filings and other pre-motion requirements are common case management features of complex litigation. *E.g.*, Manual for Complex Litigation (Fourth) §§ 11.11, 11.212, 11.32 (2004). Nor did the Court's moratorium make amendments "impossible." *Mann v. United States*, 2023 WL 3479402, at *2 (6th Cir. May 16, 2023). Plaintiffs could have added claims against the

New Defendants in 2019, within 90 days of transfer to the MDL, by filing new complaints, or by seeking leave from the moratorium—all paths traveled by many other plaintiffs.[1] *See* Mot. at 12–13 n.7; *id.* at 13 n.8 (citing docket entries in other cases). Plaintiffs pursued none of those options and should not be permitted to bring untimely claims against the New Defendants. *See Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 623 (6th Cir. 2013) (finding no basis to toll the statute of limitations because the plaintiff failed to diligently pursue the claim); *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (similar); *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009) (similar).

Moreover, if a court-imposed moratorium alone could justify the extraordinary remedy of equitable tolling, any court would have the power to indefinitely suspend a statute of limitations. Under this construction, a court's administrative case management order could relieve a plaintiff of its legislatively-imposed obligation to diligently pursue its claims. That is not the law.

### E.   The statute of limitations applies to equitable RICO claims.

Defendants acknowledge that this Court previously held that equitable RICO claims are not subject to any statute of limitations. *See* Dkt. No. 2568 at 9–11. Since then, however, the Fourth Circuit joined the Fifth and Ninth Circuits in holding that RICO does *not* provide equitable relief to private plaintiffs. *Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021); *In re Fredeman Litig.*,

---

[1] Plaintiffs claim that before they were selected as bellwethers, they "were allowed to amend their complaints *only* to add or subtract Defendants based on ARCOS data, which was not applicable to the New Defendants." Opp'n at 8–9. That is false. *See* Dkt. No. 1282 at 2 ("The Court did not intend for its order to be read so narrowly. . . . Of course, stating that MDL plaintiffs ***may*** use the report to amend their complaints should not and does not imply . . . that they ***may*** use only the ARCOS data to amend their pleadings. Therefore, the Court hereby clarifies that MDL plaintiffs . . . have been granted an extension until March 16, 2019 to amend their pleadings ***as of right for matters both relying on and beyond the ARCOS data***." (last emphasis added)).

843 F.2d 821, 830 (5th Cir. 1988); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986); *see also Ganey v. Raffone*, 1996 WL 382278, at *4 n.6 (6th Cir. July 5, 1996).

But even if RICO did provide equitable relief to private plaintiffs, that relief would still be governed by the same four-year statute of limitations as a RICO claim for damages. *See Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 355 (7th Cir. 1979).[2] And even assuming any cognizable equitable RICO claims were immune from the statute of limitations, Plaintiffs' RICO claims for damages remain expired.

## II.  PLAINTIFFS DO NOT ALLEGE DAMAGE TO BUSINESS OR PROPERTY.

Plaintiffs' RICO claims fail for the additional reason that they do not adequately allege an injury to business or property. As every court of appeals to address the issue has held, costs to provide additional public services are not harms to business or property that a governmental unit can assert to support RICO standing. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008). Indeed, since this Court previously disagreed with that near-consensus rule, Judge Breyer of the Northern District of California applied the rule in a case just like this one to dismiss opioid-related RICO claims. *City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 648 (N.D. Cal. 2020). Plaintiffs provide no persuasive reason that this Court should not follow that well-trodden path here.

Plaintiffs argue that *Canyon*'s use of the word "solely" left room for the possibility that expenditures for social services plus "something else" can support a RICO claim even if

---

[2] Indeed, in adopting the Clayton Act's statute of limitations for RICO claims, the Supreme Court did not distinguish between *types* of civil RICO actions. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) ("[T]he selection of the 4-year statute of limitations for Clayton Act actions, 15 U.S.C. § 15b, [is] the most appropriate limitations period *for RICO actions*." (emphasis added)); *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (*Agency Holding* "established a 4-year limitations period *for civil RICO claims*" (emphasis added)).

8

expenditures alone cannot. *See* Opp'n at 11–12. But as Judge Breyer noted, that is not the case. *San Francisco*, 491 F. Supp. 3d at 650 ("Contrary to the MDL court's analysis, *Canyon County* established that governmental entities *cannot* assert a RICO claim based on expenditures or services provided in their sovereign or quasi-sovereign capacities."). The Ninth Circuit recently confirmed as much. *Id.*; *see City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020)).

Aside from alleged increased expenditures (or concomitant lost tax revenues), Plaintiffs allege they suffered diminished property values. But they cannot identify what properties, or even what types of properties, are suffering. Plaintiffs thus fail to plead an injury that rises "above the speculative level" as required by Rule 8, let alone with sufficient particularity to satisfy the heightened standards of Rule 9(b). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs argue that they are not required to identify specific properties, just as they are not required at this stage to allege specific amounts of damages. Opp'n at 13–14. But "[t]he best reading of § 1964(c)'s injury to business or property requirement is that it refers to the fact of injury and not the amount." *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001); *see* Opp'n at 14 n.26 (citing *Potomac*). Identification of injured property goes to "the fact" of injury, not the amount. *Potomac*, 262 F.3d at 265. Without knowing what property is allegedly harmed, Defendants lack "notice of what the . . . claim is and the grounds upon which it rests" to mount a defense. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

In any event, even if Plaintiffs have sufficiently alleged this particular injury, the Court should limit Plaintiffs' RICO claims to the amount of reduced value of their real property, and nothing more. *See San Francisco*, 491 F. Supp. 3d at 653 (rejecting on causation grounds only the City's RICO claim based on damage to public bathrooms from needles).

9

## III.    ROCHESTER'S   NEW   YORK   LAW   CLAIMS   AGAINST   THE   NEW DEFENDANTS ARE TIME-BARRED.

Rochester does not dispute that the three-year statute of limitations for each of its state-law claims against the New Defendants expired, at the very latest, on June 5, 2022—three years after Rochester filed its original complaint. But it attempts to salvage its expired claims with the doctrines of continuing wrong, relation back, and equitable tolling. None of these doctrines applies.

### A.    The continuing wrong doctrine does not save Rochester's state-law claims.

The continuing wrong doctrine is inapplicable here. The doctrine "may only be predicated on continuing unlawful acts and not on the continuing *effects* of earlier unlawful conduct." *Webster Golf Club, Inc. v. Monroe Cnty. Water Auth.*, 219 A.D.3d 1136, 1141 (N.Y. App. Div. 4th Dep't 2023) (citation omitted; emphasis added). "The distinction is between a single wrong that has continuing effects and a series of independent, distinct wrongs." *Id.* (citation and quotation marks omitted).

Rochester does not allege any distinct wrongs or conduct by the New Defendants within the three years preceding the filing of the amended complaint. Rochester points only to conclusory allegations that suggest, without any facts, that wrongful conduct occurred over time and continued to the present or that Rochester's injury continues to the present. *E.g.*, Rochester Am. Compl. ¶ 8 ("over the last two decades"); ¶ 57 ("From 1999 through the present"); ¶ 194 ("throughout the opioid epidemic"); ¶ 232 ("At all times"). Where Rochester does plead specific facts, it alleges discrete conduct that allegedly occurred years or decades before it filed its amended complaint. *E.g.*, *id.* ¶ 198 ("From 2006 to 2014, Optum's mail order pharmacy bought over 4.5 billion MMEs of opioids spread over 252 million opioid dosage units"), ¶ 281 ("In 2014, Express Scripts reached out to Purdue requesting a higher rebate rate for OxyContin to maintain its preferred position"); ¶ 384 ("The report reviewed 36 million pharmacy claims from 2009 to 2013"). Because

Rochester's alleged continuing injuries rely on alleged opioid-related policies and conduct occurring more than three years before filing its amended complaint, the continuing wrong doctrine does not save its claims. *See Fricke v. Beauchamp Gardens Owners Corp.*, 222 A.D.3d 718, 720 (N.Y. App. Div. 2d Dep't 2023) (rejecting continuing wrong doctrine when claims stemmed from enactment of policies and discrete conduct before the limitations period).[3]

**B.     Rochester's state law claims against the New Defendants do not relate back.**

The Sixth Circuit has made clear "that an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Asher*, 596 F.3d at 318 (citation omitted). Rochester ignores this rule and argues that New York procedural rules should govern the relation-back analysis. That is wrong. Relation back of an amended pleading is a question of federal procedural law, regardless of the source of substantive law. *Simmons v. S. Cent. Skyworker's, Inc.*, 936 F.2d 268, 270 (6th Cir. 1991) ("[T]he question of whether an amendment relates back to the date of the original complaint is a question of federal procedure not controlled by state law even in a diversity case."). Were the Court to interpret Rule 15(c)(1)(A) as Rochester suggests, the Federal Rules would never govern relation back of an amended pleading for state-law claims—an outcome rejected by the Sixth Circuit. *See Am. Annuity Grp. v. Guar. Reassurance Corp. Liquidating Tr.*, 55 F. App'x 255, 256 (6th Cir. 2003).

Even under New York procedural law, Rochester fails to carry its burden to establish relation back of its claims against the New Defendants. Claims against new parties relate back under NY CPLR 203(c) when:

---

[3] If the Court finds the doctrine applicable, Rochester may recover at most damages sustained since December 15, 2020. *Kearney v. Atl. Cement Co.*, 33 A.D.2d 848, 849 (N.Y. App. Div. 3d Dep't 1969) (damages for a continuing nuisance "are recoverable only to the extent that they were sustained during the three years immediately prior to the commencement of the respective actions").

> (1) both claims arose out of the same conduct, transaction or occurrence; (2) the new party is united in interest with the original defendant, and by reason of that relationship can be charged with such notice of the institution of the action that the new party will not be prejudiced . . . ; and (3) the new party knew or should have known that, but for an excusable mistake by the plaintiff in originally failing to identify all the proper parties, the action would have been brought against the additional party united in interest as well.

*Mondello v. N.Y. Blood Ctr.-Greater N.Y. Blood Program*, 604 N.E.2d 81, 85 (N.Y. 1992). Rochester cannot meet this test.

The New Defendants are not united in interest with the original PBM Defendants because the New Defendants "could have a defense different from that of the original party." *Patrick v. Comprehensive Med. Supply, LLC*, 225 A.D.3d 777, 779 (N.Y. App. Div. 2d Dep't 2024) (citation omitted); *see also Mondello*, 604 N.E.2d at 85 (N.Y. 1992) (parties not united in interest where one could not be held liable for the other's actions). The New Defendants—especially the mail order pharmacy defendants, the data-analytics and consulting companies, and the discount-card companies—face different theories of liability for different conduct (*e.g.*, dispensing theories under the Controlled Substances Act) and have different legal and factual defenses than the original PBM Defendants.[4] Thus, even under New York procedural law—which does not apply—Rochester's claims against the New Defendants do not relate back to the original complaint.

### C. Equitable tolling does not apply.

Equitable tolling cannot revive Rochester's state-law claims either. Rochester agrees that equitable tolling does not apply where the alleged concealment also serves as the basis for the

---

[4] Rochester's cited authority does not compel a different result. *See Donovan v. All-Weld Prods. Corp.*, 34 A.D.3d 257, 257 (N.Y. App. Div. 1st Dept. 2006) (finding unity of interest between a parent company and its subsidiary because the two companies "often blurred the distinction between them" and "necessarily have the same defenses"); *Amaya v. Garden City Irrigation, Inc.*, 645 F. Supp. 2d 116, 122–23 (E.D.N.Y. 2009) (addressing unity of interest between a corporation and its individual owners); *Nemeth v. K-Tooling*, 224 N.E.3d, 513, 521 (N.Y. 2023) (finding unity of interest only when there was "no contention that different defenses are available to [the new respondent] than the [original] respondents").

underlying claim. Opp'n at 20. Nevertheless, Rochester seeks the benefit of the equitable doctrine by pointing to innocuous, nonspecific, and non-deceptive conduct, such as failing to make information public (without pleading any specific obligation to do so), entering into lawful contracts, or enforcing their rights against government entities. *See* Opp'n at 20 n.38; Rochester Am. Compl. ¶ 696. Rochester does not identify any acts of *fraud, deception, or misconduct*, separate from the allegations underpinning its substantive claims, that "somehow kept them from timely bringing suit" against the New Defendants. *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006); *see also Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1184 (N.Y. 2012) ("Plaintiffs here have not alleged an act of deception, *separate from the ones for which they sue*, on which an equitable estoppel could be based." (emphasis added)). Equitable tolling therefore does not apply.

## IV. ROCHESTER'S GENERAL BUSINESS LAW CLAIMS FAIL BECAUSE ROCHESTER'S INJURIES ARE DERIVATIVE OF INJURIES TO OTHERS.

Even if they could be considered timely, Rochester's statutory state-law claims are legally deficient and should be dismissed. As an initial matter, Rochester agreed to withdraw its statutory claim under the Social Services Law, *see* Opp'n at 1 n.3, so the Court should dismiss that claim with prejudice. And Rochester's GBL injuries are entirely derivative, so they should be dismissed as well. *See Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1145 (N.Y. 2004) (dismissing claims based on injuries that "arose wholly as a result of smoking related illnesses" suffered by others who were misled); *City of N.Y. v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009) ("The City's claimed injury here is just as indirect as the insurer's was in *Blue Cross*.").[5] All Rochester alleges is that it suffered harm because Defendants misled *others*, not *Rochester*. Its GBL claims therefore fail.

---

[5] To the extent Rochester relies on trial court decisions to the contrary, those decisions have not been reviewed by New York appellate courts and are incompatible with New York law as articulated by the New York Court of Appeals in *Blue Cross* and *Smokes-Spirits*. *See Burniac v. Wells*

Rochester's attempt to distinguish these cases falls short. Rochester cannot point to a single alleged injury stemming from any alleged deception *of Rochester*. Instead, the amended complaint pleads the opposite: "The materially deceptive acts and practices alleged herein undermined *consumers'* ability to assess the benefits and dangers of prescription opioids and to make informed decisions as to the efficacy and safety of opioid therapy . . . ." Rochester Am. Compl. ¶¶ 846, 858 (emphasis added); *see also id.* ¶ 859 ("Defendants' false advertising dramatically increased *consumer* demand for and consumption of prescription opioids, and that [*sic*] it created *public* misperception about the safety and efficacy of such prescription drugs." (emphasis added)). Rochester claims it suffered harm as a result of alleged deception of *consumers* and the *public*. Nowhere does Rochester claim any injury resulting from any deceptive effect on Rochester itself.[6]

## V.  THE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS SHOULD BE DISMISSED.

Plaintiffs attempt to save their claims against the Parent Company Defendants with general, conclusory allegations against *all* Defendants, ignoring ample case law rejecting this approach. *E.g.*, *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 745 (6th Cir. 1992) (complaint that contained "general averments of fraud attributed to 'the defendants'" and "allege[d] misrepresentations without sufficiently identifying which defendants made them" failed to state a claim); *In re EpiPen Direct Purchaser Litig.*, 2022 WL 1017770, at *12 (D. Minn. Apr. 5, 2022) (rejecting argument that "pleading standards are lower for allegations against multiple related corporate defendants"). Plaintiffs further claim this Court previously upheld similarly general allegations but the complaint at issue then included distinct allegations about each group of

---

*Fargo Bank, N.A.*, 810 F.3d 429, 436 (6th Cir. 2016) (a federal court applying state law is "bound by controlling decisions of the state's highest court" (cleaned up)).

[6] Contrary to the implication in its opposition, Rochester does not plead that its alleged injuries with respect to its employee healthcare plans resulted from deception of Rochester, rather than of its employees. *See* Rochester Am. Compl. ¶ 590.

defendants—unlike Plaintiffs' amended complaints. *See* Dkt. Nos. 1499 at 26–27; 1680. Plaintiffs here fail to plead any distinct or specific direct conduct of the Parent Company Defendants. *Hoover*, 958 F.2d at 745.

Plaintiffs then pivot to an incomplete choice of law analysis. But their allegations do not satisfy any potentially applicable legal standard. The amended complaints offer no allegations about inadequate capitalization, commingling of assets, absence of separation between the Parent Company Defendants and their subsidiaries, or use of the corporate form for an improper purpose—the hallmarks of alter ego status under any relevant law. *E.g., John John, LLC v. Exit Dev't, LLC*, 35 A.D.3d 540, 541 (N.Y. App. Div. 2d Dep't 2006); *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 380 (Mo. Ct. App. 2014). Absent allegations of direct liability or alter ego status, Plaintiffs' claims against the Parent Company Defendants should be dismissed.

## CONCLUSION

For the reasons explained above and in Defendants' motion to dismiss, the Court should dismiss (1) Plaintiff's RICO claims against all Defendants, or at least against the New Defendants; (2) Rochester's state-law claims against the New Defendants; (3) Rochester's GBL statutory claims against all Defendants; and (4) all claims against the Parent Company Defendants.

Date: June 20, 2024

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Jonathan G. Cooper* |
| Brian D. Boone | Michael J. Lyle |
| **ALSTON & BIRD LLP** | Jonathan G. Cooper |
| Vantage South End | Christopher G. Michel |
| 1120 South Tryon Street, Suite 300 | **QUINN EMANUEL URQUHART &** |
| Charlotte, NC 28203 | **SULLIVAN, LLP** |
| Tel: (704) 444-1000 | 1300 I St. NW, Suite 900 |
| brian.boone@alston.com | Washington, DC 20005 |
| | Tel: (202) 538-8000 |
| William H. Jordan | mikelyle@quinnemanuel.com |
| Andrew Hatchett | jonathancooper@quinnemanuel.com |
| **ALSTON & BIRD LLP** | christophermichel@quinnemanuel.com |
| 1201 West Peachtree Street NW, Suite 4900 | |
| Atlanta, GA 30309 | *Attorneys for Express Scripts Defendant Family* |
| Tel.: (404) 881-7000 | |
| bill.jordan@alston.com | |
| andrew.hatchett@alston.com | |

*Attorneys for OptumRx, Inc., UnitedHealth
Group Incorporated, Optum, Inc.,
OptumInsight, Inc., OptumInsight Life Sciences,
Inc., OptumRx Discount Card Services, LLC,
Optum Perks, LLC, OptumHealth Care
Solutions, LLC, OptumHealth Holdings, LLC,
and Optum Health Networks, Inc.*