UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**THIS DOCUMENT RELATES TO**:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13)<br><br>*City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14)<br><br>*County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | MDL NO. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

PBM DEFENDANTS' POSITION PAPER REGARDING
BELLWETHER PLAINTIFFS' SPOLIATION OF EVIDENCE

## INTRODUCTION

Three of the four PBM bellwether plaintiffs—Lincoln County, Webb County, and City of Independence—failed to implement legal holds and preserve evidence since filing their lawsuits *years* ago. These plaintiffs failed to take the most basic step to comply with their duty to preserve relevant evidence when they first investigated their potential claims, when they first sued the PBM Defendants in 2018 and 2019, when their lawsuits were selected as bellwethers in October 2023, and even when discovery opened in December 2023. Instead, Lincoln County first implemented a legal hold on February 29, 2024, nearly *four and a half years* after filing its complaint in October 2019. Webb County first implemented its hold on May 17, 2024, more than *six years* after it filed suit in January 2018. And the City of Independence, while admitting that it failed to timely institute a legal hold, has yet to confirm that it *ever* issued a hold or that it even has one in place today.

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including [electronically stored information (ESI)], when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). That duty requires parties to "put in place a litigation hold to ensure the preservation of relevant documents" from "the moment that litigation is reasonably anticipated." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998–99 (N.D. Ohio 2016) (citations omitted). The bellwether plaintiffs' dereliction of those most basic litigation duties, destruction of relevant evidence, and attempts to obscure the truth must be addressed.

These were not harmless errors. "Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (2007). Although the PBM Defendants do not know the full scope of the bellwether plaintiffs' spoliation, the PBM Defendants have already confirmed that

1

plaintiffs have permanently destroyed critical evidence. For example, Lincoln County confirmed that, since it began investigating claims against the PBM Defendants in October 2018, it has deleted the custodial email files of at least *sixteen* relevant former employees. And the City of Independence destroyed *all* pre-2014 emails at some point in 2020 or later, despite being under an obligation to preserve relevant evidence since at least 2019.

If that were not bad enough, the bellwether plaintiffs engaged in a coverup, attempting for months to hide their misconduct, downplay the significance of any potentially impacted information, and characterize the PBM Defendants' questions about potential spoliation as inappropriate or unreasonable. For example, when the PBM Defendants pressed Lincoln County to answer why it lacked historical documents for certain custodians, Lincoln County tried to steer the PBM Defendants away from those custodians without revealing that the County had in fact destroyed their documents. Similarly, the City of Independence initially claimed that it had no pre-2014 emails because of a server change, then claimed it was the result of a ransomware attack, and only weeks later admitted that pre-2014 emails were destroyed after the ransomware attack under a destruction policy that had not been suspended during the litigation. And on May 24, 2024, Webb County called the PBM Defendants' requests for basic legal hold information "inappropriate and unwarranted"—even though Webb County knew (but had yet to disclose) that it had first implemented a legal hold only one week earlier, well over six years after commencing its lawsuit. Beyond that, the bellwether plaintiffs moved for (and received) an order setting the temporal scope of discovery back to 1996, all the while hiding the fact that three of the four bellwethers had failed to take basic steps to preserve evidence.

Instead of addressing these serious failures, the PEC proposes to sweep them under the rug. In its June 20 email confirming for the first time that all three of these plaintiffs failed to implement

legal holds when they should have, the PEC offered to "voluntarily sever" the two bellwethers with the most serious document destruction issues known to date—Lincoln County and the City of Independence—because the PEC "do[es] not believe any cure will satisfy the PBMs." Ex. 1. The PEC does not explain how severance is an appropriate sanction for these plaintiffs' admitted failures, much less a cure for the extreme prejudice to the PBM Defendants—because it isn't one. Instead, it is clear the PEC wants to bury the cases it doesn't like and accelerate those that it does. But the purpose of setting bellwether cases is to "enable the parties and the court to determine the nature and strength of the claims." Manual for Complex Lit. § 22.315 (4th ed. 2023). As an initial step, the PBM Defendants should be allowed to explore the extent to which these three bellwethers' claims have been compromised by spoliation. Failing to do so would not only reward the PEC for these plaintiffs' blatant misconduct; it would prejudice the PBM Defendants and undermine the entire bellwether process. That is especially true where, as here, the document preservation issues in these bellwethers are likely endemic: 79% of the 84 existing MDL cases against the PBM Defendants were filed by the same lawyers who brought the Lincoln County, Webb County, and City of Independence cases.

Accordingly, the Court should not permit the PEC to prejudice the PBM Defendants by allowing it to "sever" the Lincoln County and City of Independence cases.[1] Instead, the Court should provide at least the following relief to the PBM Defendants:

1.    Allow Rule 30(b)(6) depositions of Lincoln County, Webb County, and the City of Independence that do not count against existing deposition limits and can cover any topic

---

[1] The PBM Defendants would not seek sanction against Lincoln County, Webb County, or the City of Independence if those parties instead dismissed their claims against the PBM Defendants with prejudice.

reasonably related to document retention, preservation, or spoliation, as well as any concealment of the same;

2.      Set a briefing schedule for sanctions motions with respect to Lincoln County, Webb County, and the City of Independence that begins three weeks after completion of the Rule 30(b)(6) depositions of each plaintiff;

3.      Order every plaintiff in each of the 84 cases pending against the PBM Defendants in the MDL to confirm in writing within two weeks of the Court's order on this issue (a) whether it implemented a legal hold, (b) if so, the date that legal hold was implemented, and (c) whether there are any document preservation issues;

4.      Order each plaintiff that seeks to amend its complaint to add claims against the PBM Defendants to confirm in writing within one week of filing a motion for leave to amend (a) whether it implemented a legal hold, (b) if so, the date that legal hold was implemented, and (c) whether there are any document preservation issues; and

5.      Modify the discovery deadlines in all four PBM bellwether tracks (Tracks 12–15) to allow time for spoliation issues to be resolved and to align the schedules of all four cases.

## BACKGROUND

**A.      Three of the four PBM bellwether plaintiffs failed to timely implement legal holds.**

### 1.      Lincoln County, Missouri

Lincoln County filed its complaint on October 24, 2019, and the case was removed to federal court in the Eastern District of Missouri on October 31, 2019, and transferred to the MDL on February 11, 2020. Lincoln Dkt. 1; Lincoln Dkt. 31. The PBM Defendants identified Lincoln County as one of their four potential bellwether selections on October 11, 2023. Dkt. 5218. When the PEC exercised its strikes on other potential bellwether cases, the Court confirmed that Lincoln County would go forward as a PBM bellwether case on October 27, 2023. Dkt. 5231.

Lincoln County failed to implement a legal hold until February 29, 2024. Ex. 2. That is more than five years after it began investigating its claims in October 2018 (Ex. 3 at 9), more than four years after filing its lawsuit (*see* Lincoln Dkt. 1-1), more than four months after this case was confirmed as a bellwether (*see* MDL Dkt. 5231), and three days *after* it answered the PBM Defendants' first sets of discovery requests (Ex. 4). In the time that lapsed, Lincoln County deleted the documents of at least sixteen employees relevant to this action who would serve as key document custodians if their documents had been retained. Ex. 3 at 1–2.

Lincoln County concealed those facts from the PBM Defendants and this Court for months, only revealing its late-issued legal hold on May 10, 2024, after repeated questions from the PBM Defendants. Ex. 2 at 8–9. Despite seeking relief for alleged conduct dating back to 1996, the County's March 1 initial list of proposed custodians suspiciously included only current employees. Ex. 5. Beginning in March, the PBM Defendants spent weeks pressing Lincoln County to identify custodians who might have documents for earlier time periods and to provide details about how far back in time the County had available electronic documents; Lincoln County repeatedly dragged its feet in response. *See, e.g.*, Ex. 6 (PBM Defendants' March 12 letter seeking more information); Ex. 7 (Lincoln County's March 13 letter listing only current employees as potential custodians); Ex. 8 (PBM Defendants' March 15 notice of dispute); Ex. 9 (PBM Defendants' April 25 letter).

Despite the lack of information about potentially relevant custodians, the PBM Defendants identified its first set of current and former County employees to be custodians on March 26. Ex. 10. The County rejected one custodian on that list—John Cottle, the County Sheriff from 2013 through 2020. When the PBM Defendants asked the County to explain the reason for its rejection, the County stonewalled. On April 10, the County claimed that "any relevant files from former

Sheriff Cottle are in the custody and control of the current Sheriff . . . or are otherwise available via non-custodial sources." Ex. 11. After further inquiry from the PBM Defendants, the County backtracked and stated that it was "still trying to locate" Sheriff Cottle's files as of April 30. Ex. 12.

The parties next met on May 3, 2024. When the PBM Defendants again raised questions about the document retention for former employees, Lincoln County disclosed *for the first time* that it had deleted custodial emails of former employees, including Sheriff Cottle. Ex. 13. The County attempted to describe a nebulous carve-out to this deletion practice for certain "shared" email accounts. *See id.* But the County could not identify the accounts or positions that fell into this carve-out. *Id.* This explanation amplified the PBM Defendants' confusion and concern about the County's deletion of relevant custodial documents. During that same meeting, the County informed Defendants (again, for the first time) that most emails prior to 2014, including those of current employees, were lost when the County switched email servers that year. *Id.* Frustrated with the lack of clarity, the PBM Defendants asked when the County implemented a litigation hold in this case. *Id.* The County did not respond but agreed to follow up. *Id.*

One week later, on May 10, 2024, the County finally admitted that it first instituted a legal hold on February 29, 2024, purportedly after incorrectly "believing" that a legal hold was implemented at the initiation of this lawsuit. Ex. 2. The County also confirmed that it had deleted custodial email files of former employees who left the County after this lawsuit was filed, including Sheriff Cottle and (at least) eight other individuals believed to have information relevant to this lawsuit. *Id.* A month later, after additional letters and meetings where the PBM Defendants continued to push for information, the County admitted that the number of relevant impacted

employees was (at least) 16, nearly double the number it stated just the month before.[2] Ex. 3. The PBM Defendants do not yet know the full extent of Lincoln County's destruction of relevant evidence.

### 2.      City of Independence, Missouri

Several Missouri counties and cities, including the City of Independence, filed a complaint in Missouri state court on January 29, 2019. Independence Dkt. 1. The case was removed to federal court in the Eastern District of Missouri on January 31, 2019, and transferred to the MDL on June 10, 2019. Independence Dkt. 1; Independence Dkt. 22. The PEC identified the City of Independence as one of its four potential bellwether selections on October 11, 2023. Dkt. 5219. On October 27, 2023, the Court confirmed that the City of Independence would go forward as a PBM bellwether case. Dkt. 5231.

Defendants spent the first several months of discovery attempting to elicit basic information from the City to aid in custodian selection and fact development, including the identity of individuals with knowledge of the City's allegations and the timeframe for which the City has emails for those individuals and other responsive documents. *See, e.g.*, Ex. 14 (PBM Defendants' March 6 Letter); Ex. 15 (PBM Defendants' March 12 Letter); Ex. 16 (PBM Defendants' April 16 Letter); Ex. 17 (PBM Defendants' May 2 Letter). After exhausting efforts to obtain this information through meetings with the City, on May 8 the PBM Defendants asked Special Master Cohen to intervene. *See* Ex. 18.

---

[2] Those individuals include, among others: Sheriff Cottle, a former undersheriff, a former presiding commissioner, a former county clerk, four former deputy coroners, two former emergency management directors, a former emergency services (911) director, and two former narcotics detectives.

The very next day, years after filing suit and months after discovery opened, the City first informed the PBM Defendants that it *no longer had emails for any employee before an unspecified date in 2014*, but it did not explain why. *See* Ex. 19. During a May 10 meet-and-confer, the PBM Defendants pressed for more information, but the City provided no further details other than a vague reference to a 2014 "server switch" and a promise to provide an update at a later date. *See* Ex. 20.

On May 15, following the revelation that Lincoln County failed to timely implement a legal hold and the new revelations about Independence's lost pre-2014 emails, the PBM Defendants asked the City two straightforward questions: (1) did the City issue a legal hold for this litigation, and (2) if so, when was the legal hold issued. Ex. 21, May 15, 2024 Letter to City of Independence. Instead of responding to those questions, on May 20, 2024, the City revealed for the first time that *all back-up files of custodial emails before 2014 were "lost because of a ransomware attack in 2020."* Ex. 22 at 5. The PBM Defendants promptly asked the City several questions about the ransomware attack and its effects, including why the City waited more than four years to disclose the attack and how it lost all pre-2014 custodial emails (but not all post-2014 emails) as a result of a ransomware attack. Ex. 23. The PBM Defendants also asked the City to provide details about what data were impacted, whether the City hired consultants to respond to the attack, and whether a ransom was paid. *Id.*

Instead of answering those questions, on May 23 the City promised to share a comprehensive report about the ransomware attack. Ex. 24. But the City walked back that promise two weeks later (still without answering the PBM Defendants' questions). Ex. 25. Instead, the City told the PBM Defendants that it "has learned that no such [report on the ransomware attack] exists"

and simply asserted that pre-2014 custodial backup emails were lost because of the ransomware attack. *Id.*

In advance of a June 12 hearing before Special Master Cohen, the PBM Defendants explained that "it is important to know if a legal hold was in place at the time of the ransomware attack, such that the City appreciated the need to recover pre-2014 emails." Ex. 26. The City again side-stepped the request, calling the PBM Defendants' request for legal hold information "inappropriate and unwarranted" and asserting that "a litigation hold cannot prevent the destruction of documents by a third party's criminal act." Ex. 27. On June 10, the City admitted that it did not pay the ransom to recover data from the attack. *See* Ex. 28.

At the June 12 conference, the City represented it would provide "full answers to the outstanding ransomware questions by the end of [that] week." Dkt. 5487 at 15:13–16; *see also id.* at 15:8–12 ("We will make full disclosures, and afterwards we fully expect the Defendants to raise the issues with the Court."). On June 17, the City answered some (but not many) of the PBM Defendants' questions. Ex. 29. In its letter, the City admitted for the first time that it "does not have a record of what happened to the drive" but "believes" that it "destroyed" the encrypted drive holding pre-2014 emails while this litigation was pending because it was "consistent with the City's standard operating procedure to destroy unusable electronics." Ex. 29. In other words, *the City*—not a third-party criminal—destroyed those documents. That would not have happened if the City had a litigation hold in place and had adhered to it.

On June 20, 2024, the City then admitted for the first time that it did not implement a legal hold "at the commencement of these proceedings." The PBM Defendants do not yet know the full extent of the City's destruction of evidence, and the City has still refused to answer if it has a legal hold in place today and (if so) the date that hold went into effect.

3.     **County of Webb, Texas**

Webb County filed its complaint in the Southern District of Texas on January 25, 2018. Dkt. 1, Case No. 1:18-op-45175 (N.D. Ohio). The case was transferred to the MDL on February 15, 2018. Webb Dkt. 4. The PBM Defendants identified Webb County as one of its four potential bellwether selections on October 11, 2023. Dkt. 5218. When the PEC exercised its strikes on other potential bellwether cases, the Court confirmed that Webb County would go forward as a PBM bellwether case on October 27, 2023. Dkt. 5231.

On May 14 (four days after Lincoln County confirmed it did not issue a legal hold) the PBM Defendants held a meet and confer with Webb County. During that meet and confer, the PBM Defendants asked if the County had issued a legal hold. In response, the County indicated that it generally believed emails and documents from current and former County employees were preserved but would not confirm whether a hold existed. *See* Ex. 30. The next day, the PBM Defendants asked the County two simple questions: (1) did Webb County issue a legal hold, and (2) if so, when. Ex. 31. The County, without notifying the PBM Defendants or the Court, implemented its first hold two days later, on May 17, 2024. *See* Ex. 1.

Webb County refused to answer the PBM Defendants' straightforward questions and stated that it would not "provide further information regarding its litigation hold" because the "request is inappropriate and unwarranted." Ex. 32. On May 30, the PBM Defendants requested additional information about the availability of custodial information. Ex. 33. In its June 14 response, Webb County admitted that there were "gaps between the commencement of several individuals' employment and their earliest email," that it was "investigating the potential cause of this discrepancy," and that it would "provide an update when available." Ex. 34.

10

On June 20, 2024, the PEC revealed (for the first time) that a legal hold was not issued in this case until May 17, 2024. Ex. 1. The PEC further represented that Webb County was "subject to state document retention laws" and did not offer to sever Webb's claims from the case. *Id.* The PBM Defendants do not yet know the full extent of Webb County's potential spoliation.

**B.      Non-bellwether MDL cases also likely failed to timely implement legal holds.**

Each of the three PBM bellwethers discussed above—*City of Independence*, *Lincoln County*, and *Webb County*—was filed by the same law firm: the Cicala Law Firm. The Cicala Law Firm is responsible for filing 63 of 84 of the existing cases in the MDL with claims against the PBM Defendants. Two of the PBM bellwethers—*City of Independence* and *Lincoln County*—were also represented by Mr. Jack Garvey, who represents plaintiffs in three additional cases.[3] All told, 79% of PBM cases in the MDL (66 of 84) were filed by the Cicala Law Firm or Mr. Garvey.

On May 16, the PBM Defendants asked Ms. Cicala to answer, for each of her cases, whether a legal hold is in place and, if so, when that hold was instituted. Ex. 35. The PBM Defendants sent a similar letter to Mr. Garvey on June 21. Ex. 36. Tellingly, neither Ms. Cicala nor Mr. Garvey has responded to those letters.

The PBM Defendants now file this position statement at the direction of Special Master Cohen in response to the PEC's June 20 proposal to "voluntarily sever" the two bellwethers with the most serious document destruction issues known to date.[4]

---

[3] Although Mr. Garvey is counsel in only 5 MDL cases against the PBM Defendants (including bellwethers), he and his firm represent at least 24 different MDL plaintiffs because the case *Jefferson County, et. al. v. Dannie E. Williams*, Case No. 1:19-op-45371 (N.D. Ohio) was filed on behalf of 18 different plaintiff-municipalities. Each such plaintiff-municipality should have instituted a litigation hold at least by the time that case was filed.

[4] Last month, Special Master Cohen ordered Lincoln County to provide by July 28 a "fulsome report" on the impact of the County's failure to implement a legal hold. Ex. 37. At that time, Special Master Cohen also set an initial deadline of July 3 for the PBM Defendants to move for sanctions against Lincoln County after receiving that report. *Id.* The PBM Defendants asked that

## PBM DEFENDANTS' POSITIONS

### I.  THREE BELLWETHER PLAINTIFFS HAVE VIOLATED BASIC DUTIES.

Since the PBM bellwethers were selected in October 2023, the PBM Defendants have spent thousands of hours and millions of dollars litigating the cases brought by Lincoln County, Webb County, and the City of Independence. Only after months of discovery and persistent questioning did each of these plaintiffs finally admit that they failed to implement litigation holds for *years* after they filed suit, resulting in the destruction of relevant evidence.

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information, including ESI, when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). That duty to preserve evidence arises "from the moment that litigation is reasonably anticipated." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016) (citation omitted). "Once the duty to preserve attaches, a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Id.* at 999 (citation omitted). "[L]itigation hold notices have been and continue to be a crucial and necessary tool for ensuring that clients preserve ESI consistent with their discovery obligations." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 930 (N.D. Ill. 2021).

---

the July 3 deadline be extended to allow time for discovery into, and efficient resolution of, these issues. Ex. 38; Ex. 39. After the PEC's June 20 email (Ex. 1), the Court requested that the PBM Defendants set out their position on the "bellwether issue(s)" by noon on July 1, and Special Master Cohen later confirmed that the previous "July 3 deadline is superseded entirely" by the new July 1 deadline. Ex. 40; Ex. 41. The PBM Defendants never received any report from Lincoln County (or any other plaintiff) about the bellwether plaintiffs' destruction of evidence.

Lincoln County, Webb County, and the City of Independence each had a basic legal duty to implement a legal hold as soon as litigation was reasonably anticipated—certainly before filing their respective lawsuits in 2018 and 2019. Yet they instead waited years to do so. Ex. 1.

Plaintiffs' failure to timely implement litigation holds has led to the spoliation of critical evidence. "Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Crown Battery*, 185 F. Supp. 3d at 994–95 (citation omitted). At least two of the bellwether plaintiffs admit that they destroyed or otherwise failed to preserve relevant evidence they were under a duty to preserve. Ex. 1. And while the full extent of the spoliation is not yet known, it includes custodial files of at least 16 relevant employees at Lincoln County and all pre-2014 emails at the City of Independence. Ex. 3; Ex. 29. There can be no doubt that the PBM Defendants will be grossly prejudiced by this spoliation. "Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (2007).

Worse, counsel for the bellwether plaintiffs actively concealed for months (if not longer) their breaches of the duty to preserve evidence. Plaintiffs have not explained why they did not comply with their basic duties to implement a timely litigation hold. But there is no legitimate explanation for why plaintiffs' counsel did not raise these preservation issues before now—including when their cases were identified as potential bellwethers in October 2023, when discovery opened in December 2023, in response to the PBM Defendants' initial discovery requests served in January 2024, during the parties' initial custodian discussions and selections earlier this year, or during the parties' dispute over the temporal scope of discovery. Instead, Plaintiffs' counsel waited until May 10, 2024, to disclose Lincoln County's lack of a timely

litigation hold and until June 20, 2024, to disclose the lack of timely litigation holds for City of Independence and Webb County. That is inexcusable.

By concealing these critical facts when selecting these cases as bellwethers in October 2023 and then zealously litigating them for over half a year, plaintiffs' counsel induced the PBM Defendants to spend thousands of hours and millions of dollars litigating these cases, caused the Court and the Special Master to expend significant amounts of time and public resources on these cases, and created burdens for several third parties (such as those that were subpoenaed because they have information relevant to these particular bellwethers).

Plaintiffs should have to answer for their serious misconduct here.

## II.  SEVERANCE IS IMPROPER AND WOULD PREJUDICE THE PBM DEFENDANTS.

Instead of owning their serious misconduct, the PEC proposes to sweep the issues under the rug. As part of the June 20 email disclosing that Webb County and City of Independence also failed to timely implement legal holds, the PEC suggested that the parties simply agree to "sever" Lincoln County and City of Independence from the bellwether process. That contradicts the purpose of the bellwether process and would unfairly prejudice the PBM Defendants.

Bellwether cases are designed to "enable the parties and the court to determine the nature and strength of the claims" at issue in the MDL. Manual Complex Lit. § 22.315 (4th ed. 2023). Three of the four bellwethers have admitted they failed to implement timely legal holds—two (Lincoln County and City of Independence) have admitted they failed to preserve evidence, and a third (Webb County) is still investigating whether it properly preserved evidence.

Simply put, three quarters of the PBM bellwethers have serious document preservation issues. That alone implies that document preservation issues are widespread in the MDL—the odds are vanishingly small that the only three cases with preservation issues are the ones that happened

to be chosen as bellwethers. But there is more. The lawyers who filed each of the bellwethers with acknowledged document preservation issues—the Cicala Law Firm, and Mr. Garvey—are responsible for filing 79% (66 of 84) of the existing cases in the MDL with claims against the PBM Defendants. The PBM Defendants have asked both the Cicala Law Firm and Mr. Garvey to confirm whether and when they implemented litigation holds in each of their other MDL cases. Ex. 35; Ex. 36. They have refused to respond. That silence speaks volumes. It is highly likely that the preservation issues demonstrated in three of the four PBM bellwethers are endemic among the MDL cases pending against the PBM Defendants.

If the failure to preserve evidence ultimately leads to sanctions against the bellwether plaintiffs, those sanctions would serve as an important barometer for evaluating other cases pending against the PBM Defendants, particularly given that these preservation issues almost certainly extend far beyond the current bellwethers (a notion that the PEC has not challenged). Severing any of the bellwether cases, by contrast, would simply let the plaintiffs off the hook for their wrongdoing and prevent the PBM Defendants from testing the strength of the PBM Defendants' arguments and defenses.

Severance would also force the PBM Defendants to bear the burden of plaintiffs' misdeeds. The PBM Defendants have spent an incredible amount of time and effort defending these cases, including millions of dollars in fees and costs. Those costs include (at least) time spent working on the bellwether selection process, negotiation of case management orders, motions to dismiss, written discovery, third-party discovery, document review and analysis, bellwether-specific data collection, and discovery disputes. On the other hand, severing two of the bellwether cases would result in a strategic windfall for the PEC. The PEC would retain full access to months of discovery into the PBM Defendants' businesses, while the PBM Defendants would forfeit all of the gains

15

made in discovery with respect to these bellwether plaintiffs. Adopting the PEC's proposal would also signal that the PEC can simply change course any time one of its bellwether cases runs into unfavorable facts—with no penalty.

In short, the PEC's severance proposal is a "heads I win, tails you lose" proposition. The revelation that three of the four bellwether plaintiffs failed to take the most basic step in preserving relevant evidence and then attempted to conceal it is deeply concerning. Severance would undermine the integrity of the proceedings and would be grossly unfair to the PBM Defendants. The Court should not let plaintiffs off the hook for their serious discovery violations.

## III.   THE PBM DEFENDANTS ARE ENTITLED TO ADDITIONAL DISCOVERY AND OTHER RELIEF.

Instead, given the seriousness of the spoliation at issue here and the millions of dollars that the PBM Defendants have spent so far litigating the existing bellwethers, the Court should provide the PBM Defendants with at least the following five steps of relief.

*First*, the PBM Defendants should receive the opportunity to explore the extent of and facts behind each plaintiff's spoliation of evidence through Rule 30(b)(6) depositions of Lincoln County, Webb County, and the City of Independence. Those depositions should not count against the limits on depositions set forth in the governing case management orders. Dkt. 5282; Dkt. 5295.

As of today, the PBM Defendants cannot know the full extent to which Lincoln County, Webb County, or the City of Independence spoliated evidence. Nor have the PBM Defendants been permitted to discover the extent to which any of those plaintiffs "acted with the intent to deprive [the PBM Defendants] of the information's use in the litigation." *See* Fed. R. Civ. P. 37(e)(2). Beyond that, what little information the PBM Defendants have received to date has been limited to (sometimes conflicting) attorney representations. Because any sanction would depend on the extent of missing evidence, the importance of that missing evidence, and the intent of the

party who destroyed it, the PBM Defendants should be granted time to discover those facts and prepare any resulting sanctions motions.

Specifically, the PBM Defendants should have three weeks from the Court's ruling on this issue to take Rule 30(b)(6) depositions of Lincoln County, Webb County, and the City of Independence on any topics reasonably related to each plaintiff's document retention, preservation, and spoliation, as well as any concealment of the same. It is common for courts to order Rule 30(b)(6) depositions in this type of situation. *See, e.g.*, *Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 939–40 (S.D. Ohio 2015) (ordering production of Rule 30(b)(6) witnesses to address spoliation issues); *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019) ("Rule 30(b)(6) depositions about retention policies and procedures, as well as the litigation holds placed in a case, are permitted when there is a potential issue of spoliation."); *Thomas v. Cricket Wireless, LLC*, 2020 U.S. Dist. Lexis 234644 at *5–6 (N.D. Cal. Dec. 14, 2020) (allowing Rule 30(b)(6) deposition to gather information on defendant's litigation holds after defendant admitted certain information from class period was not retained).

**Second**, the Court should set a reasonable briefing schedule for any sanctions motions to be filed related to the spoliation of evidence by Lincoln County, Webb County, and the City of Independence. Specifically, the PBM Defendants should have three weeks from the last Rule 30(b)(6) deposition to file a motion for sanctions, plaintiffs should have two weeks to respond, and the PBM Defendants should have one week to file a reply.

**Third**, the Court should enter an order compelling every plaintiff in each of the 84 cases pending against the PBM Defendants in the MDL to confirm in writing, within two weeks of the Court's order on this issue (a) whether it implemented a legal hold, (b) if so, the date that legal hold was implemented, and (c) whether there are any document preservation issues.

Three of the four PBM bellwether plaintiffs failed to timely implement a legal hold, and two of those plaintiffs have admitted that they destroyed relevant documents since the date these cases were filed (while the third is still investigating its document retention). That raises alarm bells about whether the remaining plaintiffs in the MDL likewise failed to preserve relevant evidence. The concern is heightened here, where the same lawyers that filed the Lincoln County, Webb County, and City of Independence complaints—the Cicala Law Firm and Mr. Garvey—are responsible for filing 79% of the PBM cases in the MDL and have refused to state whether and when their other clients instituted litigation holds.[5] It is highly likely that the problems seen in Lincoln County, Webb County, and the City of Independence are widespread. If they are, that information is vital to any future litigation or settlement of the non-bellwether cases and to the integrity of any future proceedings against the PBM Defendants in the MDL.

*Fourth*, the Court should enter an order compelling any plaintiff that seeks leave to amend its complaint to add claims against the PBM Defendants to confirm in writing, within one week of filing a motion for leave to amend, (a) whether it implemented a legal hold, (b) if so, the date that legal hold was implemented, and (c) whether there are any document preservation issues.

When the Court lifted the moratorium to allow plaintiffs to file motions for leave to amend, the Court emphasized that any plaintiff that does so must be ready to be "chosen as a bellwether"

---

[5] At the June 12 discovery conference, the PBM Defendants expressed a concern that the City of Independence and Webb County may not have implemented a legal hold, given that they were also represented by the same counsel: "And I think there is reason to believe that these concerns may be more sweeping, and that this case [Lincoln County] may actually be representative of virtually all of the eligible bellwethers that could be brought against these PBMs at this stage." Dkt. 5487 at 91:15–19. Plaintiffs' counsel responded by describing the PBM Defendants' concerns as "unfortunate and unnecessary slights" and "speculation." Dkt. 5487 at 92:15–18. Of course, that claimed "speculation" turned out to be anything but: Eight days later, Webb County and the City of Independence admitted that they also had failed to implement legal holds before filing suit. Ex. 1.

and "prepared to spend the time and money necessary to litigate the case against each defendant." Dkt. No. 5455 at 2. An essential part of serving as a bellwether is being able to produce relevant evidence. The PBM Defendants will respond fully to any motion for leave to amend in accordance with the Court's scheduling order, but a major problem with entertaining amendments of cases many years after the original complaint was filed is the failure to preserve relevant documents, especially in cases that were stayed for years and not actively producing documents.

The information revealed by the PEC on June 20, 2024 proves that some bellwether plaintiffs were not ready to litigate against the PBM Defendants—even when they were selected by the PEC.[6]

*Fifth*, the Court should modify the discovery deadlines in all four PBM bellwether tracks (Tracks 12–15) to allow time for the spoliation issues to be resolved and to align the schedules of all four cases.

The PBM bellwether process was designed to allow PEC-chosen and PBM-chosen bellwethers to proceed simultaneously. *See* Dkt. No. 5231. As it stands, the only bellwether plaintiff with no presently-known document preservation issues is the City of Rochester, which the PEC selected. It would severely distort and undermine the bellwether process for a PEC-chosen bellwether to proceed ahead of all other bellwether cases, especially given that the failure to preserve relevant documents in the other bellwether cases is the plaintiffs' own doing. Given the present uncertainty, the current schedules for Tracks 12, 13, 14, and 15 should be made uniform, and they can be further revisited in the future once any sanctions motions are resolved.

---

[6] The PBM Defendants reserve the right to oppose any plaintiff's motion for leave to amend for failing to preserve evidence—or for any other reason.

## CONCLUSION

The PBM Defendants respectfully request that the Court deny plaintiffs' proposal to "voluntarily sever" the Lincoln County and City of Independence cases and instead provide the PBM Defendants the relief set forth above.

July 1, 2024.

Respectfully submitted,

*/s/ Brian D. Boone*
Brian D. Boone
Emily C. McGowan
Brandon C.E. Springer
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan
D. Andrew Hatchett
Bradley Harder
Caroline R. Strumph
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com
bradley.harder@alston.com
caroline.strumph@alston.com

*Attorneys for OptumRx, Inc., Optum, Inc.,*
*UnitedHealth Group Incorporated,*
*OptumInsight, Inc., OptumInsight Life Sciences,*
*Inc., OptumRx Discount Card Services, LLC,*
*Optum Perks, LLC, OptumHealth Care*

*/s/ Jonathan G. Cooper*
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART &**
**SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Express Scripts Defendants*

20

*Solutions, LLC, OptumHealth Holdings, LLC,*
*and Optum Health Networks, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 1, 2024, a copy of the foregoing was served on all counsel of record by filing the same with the Court's ECF system.

<div align="center" style="margin-left:50%">

*/s/ Brian D. Boone*
Brian D. Boone

</div>