# EXHIBIT 13

**quinn emanuel** trial lawyers | miami

2601 S. Bayshore Drive, Suite 1550, Miami, Florida 33133-5417 | TEL (305) 402-4880 FAX (305) 901-2975

WRITER'S DIRECT DIAL NO.
**(786) 850-3615**

WRITER'S EMAIL ADDRESS
**olgavieira@quinnemanuel.com**

May 7, 2024

joanne@cicalapllc.com
shelbi@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
jgarvey@stranchlaw.com
PBM@listserv.motleyrice.com
Mdl2804discovery@motleyrice.com

Re:   *In re: National Prescription Opiate Litigation*, MDL No. 2804  *Lincoln County v. Richard Sackler, M.D.*, No. 20-op-45067 (Track 13) Letter Memorializing May 3, 2024 Meet and Confer

Counsel:

We write to follow up on our meet-and-confer call on Friday, May 3, 2024 with Lincoln County (**Plaintiff** or **the County**) regarding the County's supplemental responses and objections to PBM Defendants' First Set of Interrogatories (**Interrogatories**), First Requests for Production (**Requests**), and Custodians, including those questions posed by the PBM Defendants via email on April 29.

The purpose of the meet-and-confer was to discuss deficiencies identified by the PBM Defendants in the County's supplemental responses and objections to the PBM Defendants Requests and Interrogatories.  Additionally, on April 29, the PBM Defendants sent a list of questions via email to Plaintiff's counsel that included questions posed by the PBM Defendants. The purpose of the email was to allow the PBM Defendants to gain additional information with which to select custodians.

### April 29 Email to Plaintiff

Question No. 1: The first question posed by the PBM Defendants asked the County to name individuals dating back to 1996 for 6 positions in the County. The County stated that it would provide those names for individuals who held the positions of Coroner, Auditor, Treasurer, and Sheriff dating back to 1996, but that it was still searching for those who held the positions for Chief

quinn emanuel urquhart & sullivan, llp

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON |

Administrator of the Ambulance District and the Treatment Court Coordinator. The County also stated that it would provide a link to the County's "Bluebook" which lists every county official.

The County further provided that it would amend its custodian list to include these officials on or before May 10. The PBM Defendants requested that the updated chart also include date ranges for which the County has documents for each individual.

The County noted that it does not have custodial email files for former employees. The County does retain former employees' shared drives, desktop files and folders, but individual emails for former employees are not retained. The County indicated that it is searching for backups of former employees' emails but is not optimistic and would provide an update on or before May 10.

The PBM Defendants expressed surprise to hear that former employee emails are not retained for the first time nearly two months after the County's initial Responses and Objections were served. The PBM Defendants inquired whether individual files were retained if an employee changed positions. The County stated that for internal changes within the same department, the County has the emails from the former position. The County also stated it retained files for shared emails (such as sheriff@county.org). If an individual switched departments, however, the County did not retain the emails. The PBM Defendants requested that the County identify which former employees it still maintains emails for (based on change in positions) in the supplemental custodian chart and to identify which emails were stagnant. The County agreed.

Question No. 3: This Question asked the County to identify the dates that Amy Tippett was the records custodian for the jail division of the Sheriff's Office. Ms. Tippett was identified as a potential custodian in the County's proposed custodian chart. The County indicated that it interviewed Ms. Tippett, who did not recall the exact dates she was the records custodian for the jail division. The County stated that it would provide a rough range in its May 3 letter and would further attempt to verify the dates based on HR records.

Question No. 4: The PBM Defendants asked the County to identify who ran the day-to-day operations of the County and its departments. The PBM Defendants asked that the question identify the individual back to 1996. The County stated that the County Commission was responsible for the day-to-day operations of the County and that the County did not employ a County Administrator or County Manager. The County further stated that the County Clerk's office was responsible for compiling notes and information for the Commission, taking minutes at the County Commission meetings, and collecting documents for the Commission. They identified Kenny Schulte as the deputy clerk primarily responsible for these tasks. The County indicated that it would provide historical information on the County Clerk position and attempt to search for historical information on deputy county clerks.

The County also indicated that the County operates according to statute as a Class 2 county. The County further indicated that not all county departments and offices perform duties traditionally associated with the names of the department. The PBM Defendants raised that this was inconsistent with the County's prior position when the PBM Defendants asked the County to supplement the "knowledge" of each individual potential custodian identified by the County. The

County at that point indicated that the knowledge was "self-evident" based on the title the individual held within the County. The County indicated that the PBM Defendants could ask about any role and clarify the roles and responsibilities. The PBM Defendants stated that it should not be the PBM Defendants' responsibility to guess at which positions may or may not have the roles typically assigned to that office and instead the County should identify the roles and responsibilities for each department. The County stated that on or before May 10, it would identify any position that has a role or responsibility not self-evident by the title, or a role unique to the County.

<u>Question No. 6:</u>  The PBM Defendants inquired as to the role of the County Coroner and if the County had an independent medical examiner. The County responded that it did not believe there was a medical examiner, but there may be a third party examiner for autopsies. The County stated it would provide this information on or before May 10.

<u>Questions Nos. 2, 5, 7, 8, 9, 10, and 11:</u>  For these questions, the County indicated it would follow-up with a letter addressing these questions. The PBM Defendants received this letter on May 3 and are evaluating if it alleviates the deficiencies.

Specifically as to Question 7, which asked the County to provide organizational charts for 12 County departments, the County indicated it did not maintain organizational charts. The PBM Defendants stated that if no organizational charts are maintained, the County should provide detailed responses as to how the County functions and operates.

For Questions Nos. 9 & 10, the County stated that it had provided all minutes from 2011 to present and that the County would not conduct a responsiveness review because the burden would be the same between the County and PBM Defendants. The County further stated that meeting minutes would be provided dating back to 1996 once they had been electronically scanned. Additionally, the County stated that it is a fully-funded insurance program and does not independently negotiate with PBMs. It stated that a more fulsome response would be included in its May 3 letter.

For Question No. 11, the County stated partial responses would be included in its May 3 letter pertaining to the MIH Program. As to the other programs, the County stated it would provide fulsome responses on or before May 10.

## **Paper Files**

The County indicated in its custodian chart that it maintained certain paper files for some proposed custodians. The PBM Defendants asked the County's plan for producing the paper files. The County indicated that it would electronically scan all paper files, run search terms, and produce those files that were not privileged and hit on the specific search terms.

## **Litigation Hold for This Case**

After the County informed the PBM Defendants that it had not retained email files for former employees, the PBM Defendants inquired as to the County's litigation hold for this case. The County stated it was not sure at what point a formal litigation hold was put in place for this

3

case. The County stated it would look into this and provide a fulsome response on or before May 10. Generally, the County stated retention of emails and files depended on the system that was being used by the County at any given time. For example, the County explained that the Sheriff's office has all files dating back to 1996.

In 2014, however, the County began using its current email system. As a result, most emails prior to 2014 have been lost and any emails retained are dependent on if an employee at the time of the transfer saved emails. The dates provided in the County's custodian chart are reflective of the dates for which the County has the earliest emails for that proposed custodian. This retention of documents, however, only applies to emails. The County stated it maintained documents separately for shared drives and on an individuals' desktop. The County stated it would attempt to provide a more fulsome response on or before May 10.

### Requests for Production

The parties briefly discussed the outstanding Requests for Production to the County. The County stated that it did not intend to produce hit counts on search terms and instead would produce whatever the Rochester bellwether team agreed to produce after their search terms were finalized—with the note that jurisdictional specific terms would be those terms applicable to Lincoln County instead of City of Rochester. The County further confirmed that it would not withhold documents that hit on those terms that it objected to in the definitions of Illicit Drugs or Defendant. In other words, if a document only hit on "marijuana," the County would not withhold that document because of an objection to the Illicit Drugs term.

Request No. 13:  The County confirmed that it would run the search terms agreed to with respect to this Request but stated that it did not maintain a database.

Request No. 14:  The County stated it would produce a spreadsheet on or before May 10 that included data on all closed arrests dating back to 1996 and a description of the documents typically contained in or removed from an arrest record and/or a single closed arrest file. After the PBM Defendants reviewed that information, the County agreed to discuss a protocol for sampling closed arrest records. It proposed that the PBM Defendants review the files and data and discuss if the PBM Defendants required additional files or information. The PBM Defendants agreed to review the materials provided but noted that they were not agreeing that a sampling was proper and reserved their rights to request all files, additional files, or participation in selecting a sampling of files.

As to open investigations, the County maintains its investigative privilege objection. . The PBM Defendants asked if the County would produce a similar spreadsheet to closed arrests for open arrests. The County stated it would consider this proposal and respond on or before May 10.

### Formal Supplement

The County stated that while it has been supplementing its Responses informally in the interest of efficiency, it would formally supplement its Interrogatories with sworn responses.

\*   \*   \*

The parties meet-and-confer lasted an hour at which point the parties agreed to continue their conferral efforts the week of May 6.

Nothing in this letter is intended to limit or waive any of the PBM Defendants' objections, rights, or remedies.  PBM Defendants reserve the right to discover information and documents responsive to all of their Requests, Interrogatories, and information required by the Plaintiff Fact Sheets.

Sincerely,


/s/ Olga M. Vieira
Olga Vieira