# EXHIBIT 26

| | |
|---|---|
| **From:** | Annie Kapnick <anniekapnick@quinnemanuel.com> |
| **Sent:** | Wednesday, June 5, 2024 1:53 PM |
| **To:** | David R. Cohen (David@SpecialMaster.Law) |
| **Cc:** | MOTLEYRICE LISTSERV Server (17.0); Optum Opioid Team; ESI-Opioids |
| **Subject:** | PBM Summary of Current Disputes - City of Independence (Track 14) |
| **Attachments:** | Ransomware Attack.zip; Data Fields.zip; Documents Production.zip; Litigation Hold.zip; Custodians.zip |

**EXTERNAL SENDER – Proceed with caution**

Dear Special Master Cohen,

The PBM Defendants write regarding certain issues related to Plaintiff City of Independence (Track 14) that are inhibiting the PBM Defendants' ability to identify additional custodians and delaying meaningful fact discovery. The issues revolve around five main disputes: First, the City's failure to provide concrete answers surrounding a ransomware attack that caused the spoliation of all pre-2014 emails in 2020. Second, the City's unwillingness to state definitively the dates range for which it maintains documents for individuals it currently and formerly employed. Third, the City's refusal to provide details regarding its litigation hold in this case. Fourth, the City's meager rate of rolling production. Fifth, significant gaps in the City's data fields production.

1. New Agenda Item – City of Independence's Failure to Provide Answers Surrounding a Ransomware Attack

On May 9, after years of litigation and months of discovery negotiations, the City first informed the PBM Defendants that it no longer had emails for any employee before some unspecified time in 2014. Then, by letter dated May 20, the City first informed the PBM Defendants that the reason for the spoliation was that it had switched servers in 2014 and all "backup files were lost because of a ransomware attack in 2020." Given the serious spoliation issues, and the Court's previous remarks regarding Lincoln's potential spoliation of evidence, on May 22, the PBM Defendants asked the City several straight-forward questions concerning the scope and circumstances surrounding the ransomware attack in order to determine the scope of available custodians and discovery. The City responded that it would supply a comprehensive report that provided details regarding the ransomware attack and that this report would answer the PBM Defendants' questions.

Two weeks later, the City has neither served the report or answered the PBM Defendants' questions. Indeed, the City has walked back its promise to provide the comprehensive report on the ransomware attack. Contrary to its prior representation, in a June 4 email, the City has now stated that no report exists and directed the PBM Defendants to a brief local news story about the attack, which contains virtually no new information. *See* Jessica McMaster, *Ransomware attack causes utility billing issues in Independence*, KSHB (Dec. 14, 2020), https://www.kshb.com/news/local-news/investigations/ransomware-attack-causes-utility-billing-issues-in-independence. Also contrary to its prior representations, it appears possible that the City *may have pre-2014 emails* but that those emails may still be encrypted because the City chose not to pay the threat actor to decrypt them despite this pending litigation. We do not know if this is true because the City has refused to provide answers to the PBM Defendants' questions. This has caused a delay in the PBM Defendants' ability to select custodians because the existence or non-existence of pre-2014 emails is obviously a key consideration.

Accordingly, the PBM Defendants ask that the Special Master order the City to produce all non-privileged reports, memoranda, and analyses and answer the following questions regarding the ransomware attack:

1

1. On what date did the ransomware attack occur?
2. On what date was the ransomware attack discovered?
3. How was the attack carried out?
    1. Who was the threat actor?
4. What data were affected by the attack, including types of data and employees and departments affected?
5. Did the impacted data contain health or medical information?  If so, what kind?
6. What timeframe did the data impacted by the attack cover?
7. To whom was the ransomware attack reported, including federal and state agencies?
8. Were current and/or former employees affected by the attack notified?
    1. If so, which employees?
9. Other than employees, were any other subjects of the impacted data notified?  If so, who?
10. How much did the threat actor demand in ransom?
11. Was a ransom paid?
    1. If so, how much was paid?
    2. If so, what files, if any were returned to the City?
    3. If not, why not?
12. What data were lost as a result of the attack, including by employee, department, type, and timeframe?
13. Does any of the effected data remain in the City's custody or control but in an encrypted state?
    1. If so, what attempts has the City taken to unencrypt the data?
14. Did the City hire any consultants to investigate or respond to the attack?
    1. If so, who?
15. Were any reports concerning the attack prepared?
16. Was there litigation as a result of the attack?
    1. If so, was a litigation hold put in place for that litigation?
17. What other action did the City take to otherwise preserve data compromised in the attack?
18. Did the City make any official announcements or reports about the ransomware attack?
    1. If so, please produce those.
    2. If not, why not?

2. New Agenda Item –  PBM Defendants' Inability to Identify Custodians and Complete Fact Discovery Based on City of Independence's Discovery Responses

Beyond the potential availability of pre-2014 emails, several key questions regarding the City's possession of documents remain outstanding and the City is unwilling or unable to answer. This lack of candor is interfering with the PBM Defendants' selection of appropriate custodians and attempts to move this case forward.

First, the City has yet to identify the date before which it no longer has readily-accessible custodial emails. Although the City has stated that its "initial search" showed that the City has emails for some employees as early as February 19, 2014, the City has not stated when its investigation will be completed so it could provide a definitive date. Nor has the City explained if the February 19 date applies to all City employees or custodians the PBM Defendants have already selected.

Second, the City has stated that it only has data from employees personal drives dating back to 2012. The City, however, has provided no information as to why it lacks data from personal drives prior to 2012, the extent to which the City requires employees to save information or data to personal drives (e.g., retention protocols), and if emails are saved to personal drives.

Third, the City has stated that it is "in the process of collecting meeting minutes," but has provided no context on when this collection will be complete and the documents produced. The PBM Defendants expect meeting minutes to meaningfully inform their custodial selection as official records of the City.

Fourth, the City has refused to provide the names and date range for all individuals serving on the City's "Stay Well Committee." This is preventing the PBM Defendants from selecting custodians regarding the Committee.

Fifth, the City has stated that "[a] few of the staff members in the Disease Prevention Division worked on the initial PDMP plan," but has not identified these individuals. The City has also not identified the period during which these individuals worked on the initial PDMP plan or clarified if it is referring to the statewide PDMP or the St. Louis PDMP.

Sixth, the City has not identified historical members of the Independence Mental Health Task Force. It should be required to do so.

3. New Agenda Item – Implementation of Litigation Holds by Bellwether Plaintiffs, Including the City of Independence

Despite Court's directive that the parties should work together to resolve outstanding issues, and the Special Master's order that Lincoln County provide fulsome responses to the questions posed by the PBM Defendants regarding litigation holds, the City has yet to substantively respond to the PBM Defendants' inquiry about the existence and timing of a litigation hold in this case. Instead, the City only objected to the PBM Defendants' straightforward questions and asserted that it was not required to provide responses because it believed there are no present issues of spoilation. This litigation hold information is critical for the PBM Defendants' ability to assess potential spoliation in this case given the 2020 ransomware attack. For example, it is important to know if a litigation hold was in place at the time of the ransomware attack, such that the City appreciated the need to recover pre-2014 emails.  Accordingly, the PBM Defendants ask that the Court require the City to identify when it issued litigation holds in this case.

4. New Agenda Item: City of Independence's Failure to Produce Relevant Non-Custodial Documents

More than four months after the PBM Defendants' request for production of documents, there are significant gaps in the City's document production.

*First*, the City has not produced any documents responsive to the PBM Defendants' Request Nos. 9 and 10.

- Request 9 asks the City to produce "[a]ll Documents relating to insurance coverage of Prescription Opioids in any health plan or pharmacy benefit plan You provided, offered, or sponsored during the Discovery Time Period, including benefits, coverage, formularies, rebates, restrictions, utilization management, and clinical programs relating to Prescription Opioids."
- Request 10 asks the City to produce "[d]ata (at the transactional level where available) reflecting every Prescription Opioid dispensed to a member or beneficiary of any health plan or pharmacy benefit plan You provided, offered, or sponsored during the Discovery Time Period and reflecting all rebates, fees, or other monies You received in connection with those Prescription Opioids."

To date, the City has not produced any documents that capture any formularies, utilization management criteria, rebates data or administrative fees relating to the City's own sponsored health plans.  These documents do not require a selection of individual custodians or a settlement on search terms for production.

*Second*, the City has produced only a meagre amount of non-custodial documents.  Of the only 657 documents produced to date, the City has failed to produce the following documents:
- Comprehensive Annual Financial Report for 2013;
- The City's Employee Benefits Guide prior to 2021;
- StayWell Health Care Plan for the years 1996 to 2007 (inclusive) and 2009 to 2024 (inclusive);
- Relevant minutes of meetings for the City Council, Emergency Medical Services, and the Advisory Board of Health;
- COMBAT Prevention Plan for the years prior to 2024;
- Relevant Annual Reports for the City's Fire Department for the years 1996, 1997, and 2023;
- Annual Reports for the City's Police Department for the years 1996, 1997, 2010, 2011, 2012, 2017, and 2023;
- Annual Reports for the Police Department's Drug Enforcement Unit for years prior to 2012, for 2013, 2019, and after 2020;
- Annual Reports for the Police Department's Detention Unit for the years 1996 to 2014 (inclusive), and 2023;

3

- Annual Reports for the Police Department's Records Unit for years prior to 2013, and for 2023;
- Annual Reports of the Crime Lab for years prior to 2012, and after 2014;
- Jail Medical Reports prior to 2007;
- Annual or Year-End Reports for the Criminal Investigations Unit prior to 2012, and for 2019, 2021, 2022, and 2023.
- Poisoning Overdose Reports for years prior to 2018.

We have relayed these and other issues to the City. If these issues remain unresolved by June 12, the PBM Defendants ask that the Special Master impose deadlines on the City to provide these documents.

5. New Agenda Item – City of Independence's Failure to Identify and Produce Relevant Data Fields

*Per* the CMO, the City was required to provide to the PBM Defendants, on a rolling basis, a list of data fields included in claims data, dispensing or prescription data, and financial data that the City received, or have access to, by February 2, 2024, and to complete production of the data fields by April 1, 2024.  However, to date, significant issues and gaps remain as follows:

**Claims Data and Rebate Data**
- On April 1, 2024, the City represented that it had received rebate data from Cigna since 2014.  As yet, none of this data has been produced.
- The City also represented that its Third-Party Administrator ("TPA"), CBIZ Inc., has access to Innovu, a platform that contains some of the City's claims data, and that the City was determining the earliest year for which Innovu has data.  The City has not provided the results of this investigation or advised when it will begin producing the data.
- In its April 1, and April 19, 2024 letters, the City stated that it was trying to determine if claims and rebate data were available to its prior Workers' Compensation TPA (Canon Cochrane Management Services, Inc.).  The City has not provided the results of this investigation or advised when the City will begin producing the data.

**Dispensing or Prescription Data**

- The City has not produced a list of dispensing or prescription data that it has received or has access to in its capacity as a City, particularly those that it receives or has access to through any government agencies, including through the Jackson County Drug Task Force, the City's own Drug Enforcement Unit, partnerships with the DEA, Jackson County's COMBAT, and the St. Louis County and/or Missouri statewide Prescription Drug Monitoring Program.

**Financial Data**
- On February 2, 2024, the City sent the PBM Defendants a spreadsheet detailing the City's operating and expense budgets field from 2016 to the present.  The City has not provided similar information for the years prior to 2016.
- On February 2, 2024, the City also provided a list of fields that it tracks for expenditures to vendors from 2019 to the present.  The City has not provided similar information for the years prior to 2019.
- On February 2, 2024, the City advised that it is in the process of obtaining data fields for specific line items expenditures, data fields for financial data prior to 2016, fund descriptions, and any relevant data dictionaries.  Although the City provided data fields for some financial data, other data fields for the specific line items expenditures, fund descriptions, and relevant data dictionaries are missing.
- On February 19, 2024, the City provided a supplemental list of available fields for all Funds, Organizational Codes, Object Codes, Project Codes, Department Codes, and subdepartment Codes in the City's financial data from 2006 to the present, and corresponding descriptions.  The City has not provided similar information for the years prior to 2006.

We have relayed these deficiencies to the City. If these issues remain unresolved by June 12, the PBM Defendants ask that the Special Master impose deadlines on the City to provide this information.

Relevant correspondence on these issues is attached.

Thank you for your attention.



Sincerely,


**Annie Kapnick**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202.538.8126 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
anniekapnick@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.