IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE:                              Case No. 1:17-md-2804
NATIONAL PRESCRIPTION               Cleveland, Ohio
OPIATE LITIGATION
                                    July 9, 2024
                                    11:28 a.m.


- - - - -


TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

BEFORE THE HONORABLE DAN A. POLSTER,

UNITED STATES DISTRICT JUDGE.



- - - - -

Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
                         7-189 U.S. Court House
                         801 West Superior Avenue
                         Cleveland, Ohio  44113
                         216-357-7087
                         Susan_Trischan@ohnd.uscourts.gov

1   APPEARANCES:

2   For the Plaintiffs:        Peter H. Weinberger, Esq.
                               Hunter J. Shkolnik, Esq.
3                              Linda J. Singer, Esq.
                               Jayne Conroy, Esq.
4                              Maria Fleming, Esq.
                               Joanne Cicala, Esq.
5                              Frank L. Gallucci, III, Esq.
                               Jonathan Tepe, Esq.
6                              Tracy Doudt, Esq.
                               Kevin Sharp, Esq.

7
    For Defendants OptumRX:     Bradley M. Smyer, Esq.
8                               Brian Boone, Esq.

9
    For Defendants Express
10  Scripts:                    Jonathan G. Cooper, Esq.

11
    ALSO PRESENT:               Special Master David Cohen
12                              Andrew Rivera
                                Scott Loge
13                              Michael Borden

14

15

16

17

18

19
    Proceedings recorded by mechanical stenography;
20  transcript produced by computer-aided transcription.

21

22

23

24

25

<u>TUESDAY, JULY 9, 2024, 11:28 A.M.</u>

THE COURT:  All right.  Good morning, everyone.

I wanted to have a short conference on discovery issues in two of the cases, Lincoln County and Independence.

Before I start in on that, what exactly is the situation with Webb County, Texas?  I understand that a litigation hold was not put in place by counsel -- by counsel, but that state law seems to require it.

Have you determined whether Webb County followed state law and preserved all the documents?

MR. WEINBERGER:  Judge, this is Pete Weinberger.

And we have counsel for Webb County on, but let me just address it generally.

Each, each of the states actually has statutes that cover litigation -- that cover document retention and litigation holds, and we have -- we have, in our responses, covered that, and our responses do reflect that in part.

But -- and that is true with respect to Webb County, and I think the other thing that you need to know is that Webb County --

THE COURT:  Okay.  Pete, let's -- I've got

1     to make this simple.

2               The documents have been preserved in Webb

3     County, yes or no?

4               MS. CICALA:  Your Honor, this is Joanne

11:31:07  5     Cicala for Webb County.

6               And the answer to your question is yes,

7     Your Honor, both the departmental documents, meaning

8     noncustodial documents from all relevant departments, and

9     the e-mails have been preserved, Your Honor.

11:31:22 10               That is our current understanding, and we

11    have had teams working on this on the ground and

12    virtually.  We have no spoliation concerns as to Webb

13    County.

14               THE COURT:  All right.  Well, the

11:31:35 15     issue here --

16               MR. COOPER:  Your Honor, this is -- Your

17    Honor, this is Jonathan Cooper for Express Scripts.

18               And respectfully, we disagree with that,

19    Your Honor.

11:31:42 20               We are not aware of any spoliation at this

21    point, but the county has to date refused to answer many

22    of our questions about what e-mails are available.

23               And we have significant concerns in the

24    lack of litigation hold that documents were destroyed.

11:31:59 25    And prior Bellwethers have previously told us documents

1      were destroyed, and then when we pressed it came out in

2      fact they were.

3                    And retention statutes wouldn't solve the

4      issue.  They require documents to be maintained for a

11:32:11  5      certain period of time, but then documents, after that

6      time expired, those documents get deleted.  So all those

7      documents are not preserved under state document

8      retention statutes.

9                    So we have significant unanswered questions

11:32:26  10      about this and suspect there likely will be spoliation

11      once we get to the bottom of it.

12                    THE COURT:  All right.  Look, I'm concerned

13      about getting completely sidetracked.

14                    All right.  None of this, I mean none of

11:32:46  15      this time and money is shedding any light on whether the

16      PBMs did anything wrong, the nefarious things that the

17      plaintiffs are alleging.

18                    All right?  That's what I'm concerned

19      about, you know, and whether the plaintiffs can prove the

11:33:02  20      allegations so we can either have meaningful trials or we

21      have enough information that we can settle these cases.

22                    And before --

23                    MR. WEINBERGER:  Your Honor, can I --

24                    THE COURT:  Before we can figure out what

11:33:22  25      should be done, I think, I think it's important to know,

1    all right, what has taken place with the other 80

2    potential Bellwether cases.

3             The plaintiffs have proposed swapping out

4    Independence and Lincoln County for two other cases.  All

11:33:41 5    right, well, that can be done, but only if we don't have

6    the problems in the other cases.  If we've got similar

7    problems with litigation holds weren't put in place in

8    the other cases, well, then, that can't be done.

9             So I think -- I think the first thing to

11:34:01 10   do -- and the PBMs asked this question May 16th and I

11   don't think there's been a response -- I want the

12   plaintiffs to specifically answer for each of these, what

13   the 80 other cases, all right, was a litigation hold

14   imposed and, if so, when.

11:34:23 15            All right.  If the answer is no, obviously

16   the "when" is meaningless, but if the answer is yes,

17   when.

18             So for each of the other 80 cases -- I'm

19   using 80 as a round number -- so approximately 80 cases

11:34:42 20  where the PBM has been named.  So how long will it take?

21   It seems to me it shouldn't take that long to get an

22   answer to that.

23             Is ten days reasonable?

24             MR. WEINBERGER:  Your Honor, this is Pete

11:34:49 25  Weinberger.

1          I think, I think that two weeks is a

2    reasonable time, but can I just address something that

3    you said earlier?  If you don't mind, Your Honor.

4               THE COURT:  All right.

5               MR. WEINBERGER:  So I'm sure the Court has

6    read our response that we e-mailed yesterday, and I would

7    just like the Court to have some context here.

8               So obviously we've been through a lot of

9    Bellwether cases managed by the Court, and we have spent,

10   on behalf of Bellwethers, millions of dollars in each of

11   the cases responding to offensive discovery issued

12   against us since I've been involved in CT-1 and tried

13   CT-3.

14              The context I'm asking you to consider,

15   Your Honor, is the fact that after producing millions of

16   documents and spending millions of dollars, none or very

17   few of the documents, if any, found their way into expert

18   reports or into the trial of these cases.

19              And so we understand our obligation, but

20   Rule 37 specifically requires that -- it doesn't require

21   a litigation hold.  It requires that the defendants

22   demonstrate that there is prejudice from any loss of

23   information that may have occurred.

24              And in order to issue -- for the Court to

25   issue any sanction against --

1          THE COURT:  I'm not issuing a sanction

2     against the plaintiffs.  All right.

3          MR. WEINBERGER:  I understand that.  I

4     understand that, Your Honor, all right, but the point is

11:36:54  5     that this whole notion of litigation holds and making 80

6     plaintiffs answer this question is, I believe,

7     distracting and getting off on a tangent that has nothing

8     to do with working --

9          THE COURT:  All right.  Well, I

11:37:12 10     respectfully disagree.

11          MR. WEINBERGER:  -- working up this case.

12          THE COURT:  I'm issuing an order because

13     you proposed swapping out these two cases and picking

14     other Bellwethers, and I'm considering that, all right?

11:37:24 15          This is a big distraction and I, you know,

16     if they have cases where documents, important documents

17     aren't available, it isn't fair to either side.  And to

18     have a spoliation instruction, if I give one, there isn't

19     a chance in hell that the plaintiffs can win the case.

11:37:41 20     And that makes it a meaningless Bellwether.  Okay?

21          MR. WEINBERGER:  But that assumes -- that

22     assumes --

23          THE COURT:  No, I'm issuing the order.  All

24     right.  You've got two weeks.

11:37:55 25          All right.  For the other 80 cases, simple

1    question:  Was a litigation hold imposed; and, if so,

2    when.

3                    All right.  So two weeks from today is the

4    23rd at 4:00 p.m.  Okay?

5                    Okay.  And then, you know, now my

6    question -- question, and this is to everyone, does it

7    make sense to suspend what I'm calling plaintiff-specific

8    discovery on Lincoln County and Independence and maybe

9    Webb until we, you know, confirm whether we're going to

10   keep these cases as Bellwethers?

11                   Because if not --

12                   MS. CICALA:  Your Honor, respectfully, Your

13   Honor, there is no record whatsoever to suggest that Webb

14   needs to be suspended.  It's moving along at a very quick

15   pace, and frankly -- apologies.

16                   Joanne Cicala speaking for Webb.

17                   I'm endeavoring to distinguish it from

18   Lincoln and Independence.

19                   THE COURT:  Let's start with Lincoln and

20   Independence.

21                   MS. CICALA:  Thank you.

22                   THE COURT:  If it makes sense to suspend

23   what I'm terming case-specific discovery, that would be

24   primarily discovery imposed and interposed by the

25   defendant to get particular facts relevant to those

1    entities.

2                    MR. WEINBERGER:  Your Honor, this is Pete,

3    this is Pete Weinberger.

4                    I mean, obviously you've seen that we've

5    offered to sever those two, and --

6                    THE COURT:  All right.  Pete, I don't know

7    what "sever" means.

8                    MR. WEINBERGER:  Remove them, remove them

9    as Bellwethers.

10                   THE COURT:  I understand that, but we

11   haven't done it.  All right?

12                   MR. WEINBERGER:  And so let me just add --

13   again this is Pete Weinberger -- under the CMO we are not

14   at the point where we've begun depositions under the

15   schedule.

16                   And obviously documents have already been

17   produced, and I'll let Lincoln and Independence address

18   where they believe they are in terms of percentage of

19   documents that have been produced.

20                   But, you know, if, if the Court were

21   inclined to not retain them as Bellwethers, you know, I

22   don't think that, you know, further document production

23   should occur.

24                   THE COURT:  All right.  I'm just saying

25   that it makes sense to suspend it.

1           I didn't say, you know -- I don't want -- I

2      don't want -- look, I don't want these defendants to

3      propound any more case-specific discovery to Lincoln

4      County and Independence.

5                    All right?

6                    That doesn't make sense.

7                    MR. WEINBERGER:  Well, Your Honor --

8                    THE COURT:  The discovery that has been

9      propounded and you're in the middle of production, you

10     know, I'm asking you, does it make sense to just not

11     spend any more; to pause, pause the production?

12                   MR. WEINBERGER:  We're prepared, we're

13     prepared, with respect to Lincoln and Independence, to

14     continue to produce documents in response to

15     interrogatories requests that have been made.

16                   Now, this is Pete Weinberger speaking.

17                   I'm happy to defer to Joanne and her team

18     if they believe otherwise, but we're -- I think we're

19     prepared to continue on.

20                   MS. CICALA:  Thank you, Pete.

21                   This is Joanne Cicala.

22                   Lincoln County, which is, you know, one of

23     the first of the two tracks, all right, Lincoln and

24     Rochester are moving ahead at a quicker pace than

25     Independence and Webb.

1          Lincoln is on track to make its ninth

2     production of documents this week, and then also to

3     process the custodial productions consistent with the

4     deadlines in the current CMO.

11:42:41  5          So we would be substantially complete with

6     our custodial e-mail productions this week, with the

7     exception of two custodians who are among those for whom

8     we're missing e-mails.

9          So we're fully prepared to continue, Your

11:42:59 10    Honor.

11          THE COURT:  All right.  If plaintiffs want

12    to continue, then just continue.

13          All right.  We'll have the plaintiffs'

14    response by July 23rd at 4:00 p.m.

11:43:11 15          Obviously I'm going to -- plaintiffs are

16    going to make a more -- you know, file something Friday

17    and then the defendants can reply, and then I'll have to

18    figure out, you know, figure out what to do.

19          But I'll collect the data.  That's why I

11:43:30 20    need the data from the July 23rd response because it may

21    make the most sense to just drop Lincoln County and

22    Independence as Bellwethers, if it turns out that there

23    are a lot of other cases that we can choose as

24    Bellwethers.

11:43:51 25          If it turns out there aren't, then that

1   option isn't a very good one.

2                    That's why I need that data.

3                    MR. WEINBERGER:  Your Honor, this is Pete

4   Weinberger.

11:44:01  5                    I just also want to put on the record that,

6   look, we are prepared, if that's the route that the

7   defendants want to take, to litigate the issue, the

8   issues under Rule 37, to address the issue of whether or

9   not there is any prejudice from documents that --

11:44:29 10                    THE COURT:  Well, the point is we're not

11  going to be able to litigate that now really.

12                    All right.  We're not going to be able to

13  decide prejudice until we get to trial.

14                    MR. WEINBERGER:  Well, that's where I

11:44:42 15  respectfully disagree, Your Honor, because we have a

16  track record of seven years of litigation with respect to

17  Bellwether documents as to whether or not any of them

18  ultimately became important or relevant to any defense in

19  this case.

11:45:00 20                    And I think the answer is they haven't.

21  And, you know, these, these Bellwethers are truly no

22  different.  They're actually, in many respects, smaller

23  in size.

24                    THE COURT:  All right, Pete, I --

11:45:17 25                    MR. WEINBERGER:  And --

1          MR. COOPER:  Your Honor, this is

2     Jonathan --

3          THE COURT:  Look, I don't want to get into

4     this now.

11:45:22   5          I've made my -- I've made my order and

6     we'll see what -- we'll see what the answers show and

7     I'll read everyone's responses.  And again, my concern is

8     getting sidetracked.

9          All right?

11:45:34  10          Now, what are we doing about -- I mean, the

11     plaintiffs, plaintiffs believe that there's not a problem

12     in Webb County.  The defendants say there is.

13          You know, I'm not going to deal in

14     theoreticals.  If the defendants can show important

11:45:52  15     documents were missing --

16          MR. WEINBERGER:  Your Honor, we are

17     fully --

18          THE COURT:  -- then there is a problem.

19          MR. WEINBERGER:  Your Honor, this is Pete

11:46:02  20     Weinberger again.

21          We have a response due on the 12th, and we

22     will fully respond to the issues raised in the PBMs'

23     position statement at that time.

24          We will address all the concerns that are

11:46:18  25     raised in the PBMs' position statement, and you'll have

1    them in front of you to consider.

2                    And that's, as you said, that's due on

3    Friday.

4                    THE COURT:  All right.  Now, the other

11:46:35 5    thing the PBMs have raised is, you know, PEC is certainly

6    going to propose to add the PBMs to some number of

7    existing complaints.

8                    The question is whether -- whether my

9    decision as to whether -- ultimately whether or not to

11:47:04 10    allow those amendments should -- one of the factors

11    before me is whether or not a litigation hold is in

12    place, was put in place back when the case was filed in

13    2018, '19, '20, whenever it was filed.

14                    So I guess I'd like to hear from the

11:47:24 15    plaintiffs whether that, you know, that should be a

16    relevant consideration.  And if so, I'll need to get that

17    information.

18                    MR. WEINBERGER:  This is Pete Weinberger

19    again.

11:47:36 20                    I don't believe it is and for the very

21    reason that we put in our e-mail response yesterday.

22                    You know, I think -- I think it is getting

23    off into an unnecessary and inappropriate tangent in an

24    attempt to, frankly, to scare off subdivisions who have

11:48:01 25    legitimate claims, because I don't believe the question

1   of litigation holds and when and whether they were in

2   place is of any relevance to a motion for leave to amend

3   to add a new party defendant.

4               And ultimately, if it has to be litigated,

5   it will be under Rule 37 once the case, you know,

6   proceeds through discovery.

7               But to require that as a condition

8   precedent to demonstrate whether or not a litigation hold

9   is in place in order to amend the complaint to add a new

10  party defendant is just -- I think it's unprecedented,

11  Your Honor.

12              MR. COOPER:  Your Honor, this is Jonathan

13  Cooper.

14              THE COURT:  They have asked for it.  I'd

15  like to hear from them.

16              Yes.

17              MR. COOPER:  Yeah, Your Honor.  This is

18  Jonathan Cooper for Express Scripts.

19              We respectfully disagree with that for a

20  few reasons.

21              First, requiring this information to be

22  provided is fully authorized.  Rule 37 has nothing to do

23  with it.  Our requests for this information is not made

24  under Rule 37.

25              Rather, this is akin to requiring parties

1    to fill out fact sheets as Your Honor has done for all

2    parties.  It's akin to issuing a Lone Pine order, which

3    this Court is authorized to do.

4            And the information is highly relevant here

5    for a couple of reasons.

6            First, in the motion for leave to amend

7    context, there are various requirements, including each

8    plaintiff must show good cause; there must not be undue

9    delay or prejudice to the defendants.

10           Whether or not each plaintiff who is

11   seeking leave to amend has satisfied their duty -- and it

12   is a duty under Sixth Circuit law -- to have implemented

13   a litigation hold and preserve relevant evidence is

14   highly relevant to whether they have good cause to amend

15   and is highly relevant to whether there is prejudice,

16   undue delay, things of that sort.

17           Undue delay is especially likely here given

18   that these amendments are often being filed in cases that

19   are five, six or more years old where these cases have

20   been stayed and haven't engaged in any meaningful

21   discovery or document collection, and there's a great

22   chance that the litigation hold wasn't put in place, then

23   documents were destroyed as we've already seen in Lincoln

24   County and City of Independence and possibly in Webb

25   County as well.

1          So these are fully appropriate and

2    authorized steps here.

3          MR. BOONE:  Your Honor, this is Brian Boone

4    for OptumRX.

11:50:44  5          I agree with everything Mr. Cooper just

6    said.  I'm not going to repeat it.

7          THE COURT:  Okay.  All right.

8          A MALE VOICE:  And I absolutely join.

9          MR. COOPER:  And, Judge Polster, one other

10   item I'd just like to make, since Mr. Weinberger said a

11   few times -- my apologies.  This is Jonathan Cooper again

12   for Express Scripts.

13         One other point I'd like to make in

14   response to Mr. Weinberger who said a few times that the

11:51:10 15  defendants may not need evidence because, I guess, other

16   defendants in other cases didn't use evidence to the

17   extent Mr. Weinberger believes was appropriate.

18         Whatever other defendants might have done,

19   the situation is very different here.  Among other

11:51:26 20  things, I will note that the claims against PBMs, many of

21   them have to do with formularies.  And unlike in other

22   cases involving manufacturers or distributors where the

23   plaintiffs don't themselves manufacture and distribute,

24   plaintiffs in all these cases sponsor their own health

11:51:46 25  plans and make formulary decisions.

1          So documents and evidence about the plans

2     that were sponsored or about the claims for prescription

3     opioids that they approved or accepted are all highly

4     relevant to their allegations and the defenses in these

11:52:01  5     cases, and make these cases very different for that

6     reason alone but others as well on all the cases that

7     have proceeded.

8          And so having failed to preserve documents

9     is going to be very prejudicial and detrimental to the

11:52:14 10     PBMs.

11          MR. WEINBERGER:  Your Honor, this is Pete

12     Weinberger.

13          There is not a scintilla of evidence in the

14     documents that have been produced and where we've

11:52:24 15     represented e-mails do not exist that have anything to do

16     with decisions made on what -- on what drugs should be on

17     formularies.

18          Particularly or specifically, Your Honor,

19     it should be noted that what goes on a formulary is

11:52:45 20     primarily as a result of recommendations made by a PBM.

21          But that's, you know, I don't want to

22     litigate that, that issue today.

23          THE COURT:  All right.  I'm going to take

24     this under advisement because if I -- if I impose this

11:53:02 25     obligation, I don't think it should be, I mean, it should

1      be just for cases where plaintiffs want to add the PBM.

2                     The issue, if it's -- if it's relevant to

3      my decision whether or not to allow a motion to amend to

4      add one or more defendants to any given case, it's

11:53:30  5    relevant regardless of which defendant the plaintiffs are

6      seeking to add.

7                     And if it's not relevant, it's not relevant

8      to the PBMs, it's not relevant to, you know, any other

9      defendant.

11:53:41 10                     So I've got to -- I think I've got to

11     figure out whether I want to impose that obligation on

12     all entities, all cities and counties that are seeking to

13     add one or more defendants to their existing complaint,

14     whether I require them to state, you know, that

11:54:07 15    they've -- that there was a timely litigation hold in

16     place back when the case was filed.

17                     So I've got to figure -- you know, give

18     that some thought.

19                     So I'm going to hold off.

11:54:17 20                     So the only thing I'm ordering now is the

21     information on these 80, and I'll see that and I'll read

22     everyone's filings and decide what to do.

23                     MR. SMYER:  Your Honor, this is Brad Smyer

24     with Alston & Bird for OptumRX.

11:54:35 25                     On that point I just wanted to add two

1    pieces.

2                One is the PEC's e-mail yesterday about

3    this issue specifically as it pertains to the amended

4    plaintiffs, they said that in a request for amendment it

11:54:53   5    implicitly requires that the plaintiffs possess the

6    documents.

7                So it can't be too much additional work, if

8    any, for them to do what they said they are implicitly

9    going to do.

11:55:04  10                And the second piece I wanted to raise for

11    the Court is the timing of the responses for the lit

12    holds for the 80-plus who have current claims against the

13    PBM is actually after the hearing we have scheduled.  The

14    same day, but later.

11:55:21  15                So to the extent that this is going to

16    become an issue, I wanted to raise that for the Court

17    because we won't have that information by the time of the

18    hearing.

19                THE COURT:  Oh, that's a good point.

11:55:42  20                That's a very good point.

21                We are meeting on the 23rd, that was the

22    one we postponed from June, so I think I need the

23    plaintiffs' response.

24                Let's get it -- I'll make it noon on the

11:56:26  25    22nd so we'll all have that.

1              Thank you for bringing that to my attention

2    because we have our conference at 2:00 o'clock on the

3    23rd in person, so --

4              MR. SMYER:  Thank you, Your Honor.

11:56:50  5              THE COURT:  All right.  Thank you.

6              All right.  Anything else that anyone wants

7    to bring up?

8              MR. WEINBERGER:  Your Honor, this is Pete

9    Weinberger.

11:57:00 10              I just want to address what counsel for

11   Optum just discussed.

12              And I know that I've repeated myself

13   several times, but I think it is important to note that

14   under Rule 37, only if a party acted with intent to

11:57:27 15   deprive another party of information can the Court enter

16   sanctions or for that matter dismiss an action or enter a

17   default judgment.

18              And so, you know, we will address the issue

19   that is raised on the issue of litigation hold in our

11:57:51 20   motion for leave to amend, but Rule 37 is entirely

21   relevant to that issue because the notion that we don't

22   have -- we can't prove good cause if there are documents

23   missing simply does not hold water under Rule 37,

24   unless --

11:58:13 25              THE COURT:  I'm not proposing any sanctions

1    now.

2                     What I'm trying to figure out is if

3    it -- is if it makes -- if it makes more sense to scrap

4    these two as Bellwethers and substitute two others.

11:58:29  5                     All right?

6                     MR. WEINBERGER:  Right, but the

7    question --

8                     THE COURT:  The plaintiffs have proposed

9    that, all right?

11:58:35 10                     MR. WEINBERGER:  But you've also addressed

11    it with respect to our motion for leave to amend to add

12    PBMs in other cases, and that's my concern, Your Honor.

13                     THE COURT:  Well, I -- I mean, I'm trying

14    to determine if -- simply whether this additional fact is

11:58:58 15    relevant to my decision whether or not to grant leave to

16    amend in any particular case.

17                     If I determine it's not relevant, I'm not

18    going to require it.

19                     If I determine it is relevant, I will

11:59:12 20    require it.  And it just seems to me that if it's

21    relevant, it's not just relevant to adding PBMs.  It

22    would be relevant to adding any other defendant.

23                     So it doesn't make sense to have a special

24    rule for PBMs.  That's all.  So I've got to think about

11:59:35 25    whether I'm going to, you know, direct it for everyone.

1           MR. WEINBERGER:  All right.  We'll -- this

2    is Pete Weinberger.

3               We will address it in the motion for leave.

4               Thank you, Your Honor.

5               THE COURT:  Okay.  All right.

6               Thank you, everyone.  Have a good day.

7               (Proceedings concluded at 11:59 a.m.)

8                         -  -  -  -

9               C E R T I F I C A T E

10              I certify that the foregoing is a correct

11   transcript from the record of proceedings in the

12   above-entitled matter.

13

14

15

16   **/s/Susan Trischan**
     /S/ Susan Trischan, Official Court Reporter
17   Certified Realtime Reporter

18   7-189 U.S. Court House
     801 West Superior Avenue
19   Cleveland, Ohio 44113
     (216) 357-7087
20

21

22

23

24

25