# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | **MDL No. 2804** |
| **THIS DOCUMENT RELATES TO**: | **Case No. 17-MD-2804** |
| *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | **Judge Dan Aaron Polster** |
| *Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13) | |
| *City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14) | |
| *County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | |

## PEC'S POSITION PAPER REGARDING
## BELLWETHER SPOLIATION ISSUE

## INTRODUCTION

The PEC submits this position statement at the Court's invitation, and to refocus the PBM litigation from Defendants' diversion over spoliation of a subset of defensive discovery documents in two bellwether cases, toward adjudication of the cases on their merits.  Consistent with Federal Rule of Civil Procedure 37(e), the core inquiry is whether, and to what extent, Defendants have been prejudiced by a loss of information.  The parties have not yet determined the scope of any electronically stored information ("ESI") that cannot be replaced.  But the parties do know, from experience, that any information that may have been lost from the ESI at issue—government employees' email messages—will be of little or no importance as these cases progress to trial.

The PBM Defendants request remedial measures that run far afield from what Rule 37(e) contemplates on the facts presented here.  Defendants raise ESI preservation issues in three of the bellwether cases: Lincoln County; City of Independence; and Webb County.  In Webb County, there is no evidence of spoliation and no remedy whatsoever is warranted.  In Lincoln County and City of Independence, there is evidence of loss of certain custodial email files, for which each Plaintiff has identified substantial replacements that provide the same information from other employees' emails, while their efforts at restoration are ongoing.  On these facts, if any measure were needed, it would simply be discovery to confirm the extent of any loss and the corresponding replacement and restoration.  Rule 37(e) requires nothing more.

Where, as here, a party loses ESI without intending to deprive its adversary of the information's use in the case, the Court may, only if it finds prejudice to the adversary after attempts at replacement or restoration are exhausted, "order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).  In Lincoln County and City of Independence, the Plaintiffs' efforts to replace or restore the lost custodial emails are ongoing.  The PEC does not

oppose the PBMs' request to take additional Rule 30(b)(6) depositions only of Plaintiffs Lincoln County and City of Independence.   But absent any basis for finding prejudice to Defendants or intent to deprive by Plaintiffs, no further action is warranted as to these two Plaintiffs.

Nor may the Court order *any* remedial action as to Webb County.  Since there is no evidence that Webb County has lost any ESI while under a duty to preserve for this litigation, Rule 37 affords Defendants no basis for seeking any spoliation-related remedy.

For the same reason, the Court should reject Defendants' request to modify the discovery deadlines in both the Webb County and the City of Rochester cases.  Defendants ask that the Court "modify the discovery deadlines in all four PBM bellwether tracks (Tracks 12-15)," but admit that Rochester has "no presently-known document preservation issues."  Position Paper at 19.  Since neither Rochester nor Webb County presents any spoliation question, neither of their cases should be subject to discovery deadline extensions based solely on other parties' actions in other cases.

Finally, and for largely the same reason, the Court should reconsider, with the benefit of this scheduled written submission, its grant of Defendants' over-expansive requests to compel preservation discovery by all other Plaintiffs in all other current cases against them and to connect amendment by any Plaintiff in any case to these disclosures.  Rules 8, 16 and 37 do not permit this relief, and Sixth Circuit authority expressly prohibits it.  Rule 37 (e) sets its own boundary: where "*a party* failed to take reasonable steps to preserve [ESI]" and another party is prejudiced, a court "may order measures *no greater than necessary to cure the prejudice*."  Fed. R. Civ. P. 37(e)(1) (emphasis added).  Any possible prejudice Defendants might be found to have suffered from Lincoln County and City of Independence's ESI loss cannot possibly be cured by forced disclosures from *other parties in other cases*.  As the Sixth Circuit held in reversing this Court's decision permitting amendment in a bellwether case based upon efficiency interests in other MDL

cases, "a district court's decision whether to grant a motion to amend in an individual case *depends on the record in that case and not others*."  *In re Nat'l Prescription Opiate Litig.: In re CVS Pharmacy, Inc.*, 956 F.3d 838, 845 (6th Cir. 2020) (emphasis added).  What the PBMs seek here with respect to Complaint amendment is *CVS* in reverse—an unauthorized condition on amendment by all MDL Plaintiffs to ostensibly cure alleged prejudice from a loss—likely temporary—of tangential information by two Plaintiffs in two bellwether cases.  The Court cannot order these remedies against non-litigating Plaintiffs based on no case-specific record whatsoever.

However, the PEC does not object to the Court's consideration of litigation holds—after amendment is decided—as a factor in selecting future bellwether cases among existing or amended cases, which may help to avoid distracting defensive discovery issues going forward.

## FACTUAL BACKGROUND

Plaintiffs Lincoln County and City of Independence are committed to their role as Bellwether Plaintiffs and have been engaged in vigorous diligence to address their acknowledged (though limited) ESI issues since they were discovered.  Any inconsistencies in messaging regarding the availability of complete custodial files resulted from Plaintiffs' good-faith efforts to identify and report the scope of what they did and did not have available over the past months.  The results of these efforts to date are set forth below.

Defendants ascribe ill motive to Counsel.  There is none.  Counsel have endeavored to relay the best available information at all times in a highly dynamic environment involving clients whose cases were filed, stayed for years, and then just recently animated.

### A.     Lincoln County, Missouri

Upon bellwether counsel's discovery that no litigation hold had previously been issued, Plaintiff Lincoln County (the "County") implemented one on February 29, 2024.  The County has continued its investigation as to the scope of available ESI for potentially relevant witnesses and

for non-custodial materials.  This includes review of servers and file trees and evaluation of .pst files for dozen of current and former employees.  The County also is, as set forth below, producing key non-custodial documents for all potentially relevant department dating to 1996.

### 1.    Documents Lost

The County has identified 16 potentially relevant employees who left County employment between October 22, 2018 (first retention of outside counsel for this matter) and February 29, 2024 (institution of litigation hold) and for whom the County no longer has complete email files:

1. Michael Pirtle, Emergency Services (911) Director (2005-2019)
2. Kelly Walters, Coroner (2015-2019)
3. Deputy Coroner, James Johnson (2015-2021)
4. Deputy Coroner, Brandon Phelps (2021-2023)
5. Deputy Coroner, Brian Reed (2014-2019)
6. Deputy Coroner, Kevin Schell (2021)
7. Crystal Hall, County Clerk (2011-2022)
8. Ann Irvin, Payroll Clerk, County Clerk's Office (2001-2019)
9. Daniel Colbert, Presiding Commissioner (2011-2018)
10. Jay Gourley, Project Coordinator (2015-2019)
11. John Cottle, Sheriff (2013-2020)
12. Michael Lang, Undersheriff (1996-2020)
13. Mason McNail, Narcotics Detective (2011-2020)
14. Bradley Beeman, Narcotics Detective (2015-2021)
15. James Sharp, Emergency Management Services Director (2018-2021)
16. Adam Stanek, Emergency Management Services Director (2018-2023)

For each of the above, the County has been able to collect partial ESI files by searching .psts from the following departments:  Ambulance District; Fire Protection District; Health Department;[1] Project Coordinator; Emergency Management Agency; Clerk's Office; 911 District; Auditor; Coroner; Resource Board; Sheriff's Office; and Public Administrator.[2]

---

[1] The Health Department is the only relevant department that has emails for both current and former employees.  The other relevant departments only have emails for current employees.

[2] The County believes that the Emergency Management Agency ("EMA") will not have responsive materials based on its initial investigation regarding the scope of EMA's work.  In addition, the County believes that the Public Administrator is not an appropriate custodian.  The Public Administrator is responsible for handling the assets of County residents who die without family or

The results of that restoration are described below in detail.  The bottom line is that the County has collected 144,000 emails associated with the 16 former employees.  The County also has prioritized the review of former Sheriff Cottle's and Clerk Hall's emails (total 63,028 emails) and has invited Defendants to request other prioritizations.

Defendants asked for a list of all employees for whom the County no longer has email files (regardless of their relevancy).  On June 9, the County provided a list of job titles (and corresponding departments) for which it no longer has emails and said it would meet and confer to the extent Defendants thought any job titles other than the titles held by the sixteen individuals the County identified were relevant.  Defendants have not responded.

### 2.     Importance of Documents Lost in Light of All Information Sources

The County has determined through its investigation that, in many cases, the County departments themselves—not the individual employees listed above—possess the most relevant and responsive documents to this case.  For example, arrest records from 1996 to the present are maintained by the Sheriff's Office, not the individual Sheriff, and the County is producing these records.  The same is true of County Coroner records, which the County has and is producing. with the same is true for the County's financial statements, third-party audits, and budgets.  These financial records exist in electronic and hard-copy format dating to 1996 and the County is producing them.  So, too, with County Commissioner meeting minutes and records.  The County has these in electronic and hard-copy format dating to 1996 and is producing them.

In short, each department for which the former employees worked possesses relevant non-email electronic documents stored on a common drive (*e.g.*, SharePoint) and paper documents,

---

a last will.  It also acts as guardian for mentally ill or developmentally disabled adults.  As such, even if it had any relevant documents, they likely would be privileged.  Nonetheless, in the interest of transparency, the County will conduct a reasonable search and produce any responsive, non-privileged documents of EMA and the Public Administrator's Office.

often back to 1996, which the County is reviewing and producing.  In addition, even as to the former employees themselves, the County is able to partially collect email files as described below and for many has identified hard drive or user files on County servers now being reviewed.

The County also has offered, and Defendants have selected, custodians from each of the Department for which the former employees worked, sometimes (as with the County Clerk) multiple custodians.  Lincoln County's current preservation summary is attached as Exhibit A.

### 3.    Replacement and/or Restoration of the Deleted Emails

The County has engaged in substantial efforts to restore the deleted email files for these 16 former employees or, critically, to replace the information the emails likely contained through alternate discovery.  Counsel for the County have sent a team of attorneys and paralegals to Lincoln County for onsite investigation of alternative production sources.  The County has interviewed employees from every relevant department and had extensive conversations with the County's IT vendor.  It also has performed comprehensive reviews of the County's electronic and paper files. While onsite, the County's team collected over 30 boxes of hard copy documents that are currently being scanned and uploaded for review.  The County further has identified the personal computer ("PC") user files of former Sheriff John Cottle and former EMA Director James Sharp, as well as the hard drive used by Adam Stanek.[3]  The County also is reviewing the servers that contain user files for every other former employee who is missing emails (former Sheriff Cottle and the EMA directors appear not to have user files on these servers).  The County also is reviewing non-custodial files for any relevant information from or regarding any of these 16 persons.

---

[3] Defendants are correct that the County was reluctant to advance former Sheriff Cottle as a key witness or custodian during an April 2024 meet and confer.  This was not because of any particular or unique knowledge he may have, but because of the former Sheriff's extraordinary and unfortunate personal circumstance, which is a matter of public record.

To date, the County's efforts have resulted in the restoration of email files in the following quantities (please note that 3 of the 16 former employees shared the "Deputy Coroner" address):

| Email | Collected Emails |
|---|---|
| chall@lcclerk.com | 18,601 |
| chall@lincolncountymoclerk.gov | 19,701 |
| MPirtle@lcsomo.com | 3,388 |
| mpirtle@lincolncounty911.com | 4,154 |
| MMcNail@lcsomo.com | 1,229 |
| bbeeman@lcsomo.com | 1,754 |
| jgourley@lcclerk.com | 3,000 |
| dcolbert@lcclerk.com | 19,265 |
| jsharp@lcmoema.com | 21,884 |
| deputycoroner@lincolncountycoroner.com | 281 |
| astanek@lcmoema.com | 15,348 |
| JCottle@lcsomo.com | 24,726 |
| mlang@lcsomo.com | 6,207 |
| airvin@lcclerk.com | 3,394 |
| kwalters@lincolncountycoroner.com | 1,572 |
| **Total** | **144,504** |

## B.     City of Independence, Missouri

Plaintiff City of Independence (the "City") implemented a litigation hold on May 3, 2024. Before this, the City's customary document retention practice was to retain the emails of current and former employees indefinitely and to retain records saved to network drives indefinitely.

In December 2020, the City was victimized by a publicly-disclosed ransomware attack.[4] The attackers demanded payment of $1,000,000, which was later negotiated down to $400,000. It is by no means certain that payment of the ransom would have secured the release of files. In consultation with outside counsel that specializes in representing organizations facing data privacy events and the City's insurance company, the City Council voted not to pay the ransom. The City

---

[4] City of Independence Provides Notice to Individuals Potentially Impacted by Cyber Incident (July 16, 2021) (available at https://www.prnewswire.com/news-releases/city-of-indpendence-provides-notice-to-individuals-potentially-impacted-by-cyber-incident-301335790.html).

believes that it later destroyed the encrypted drives, as it was the City's standard practice to destroy old or unusable electronics. The City has one hard drive that appears to have Groupwise emails for former City Councilmembers and City managers. The City cannot confirm this, however, because the drive is encrypted. The City does not keep records of electronics destructions.

### 1. Documents Lost

The City's pre-2014 legacy server ("Groupwise") emails were on a hard drive that was encrypted in the December 2020 ransomware attack and since was destroyed. However, thousands of other pre-2014 custodial emails were not lost.[5]

In addition, the City cannot locate the email files for former Sheriff Thomas Dailey, a custodian in this case who worked for the City from 2008 to 2016. In addition, in investigating a replacement for these files, the City identified another individual whose email files are missing: former Deputy Sheriff Travis Forbes (1992 to Sept. 2014). Deputy Sheriff Forbes had not been identified as a potential custodian by either the City or Defendants.

### 2. Importance of Documents Lost in Light of All Information Sources

As with Lincoln County, the City has determined from its investigation that in many cases it is the City departments themselves—not the individual employees—that possess the most relevant and responsive documents in this case. As examples of the information that still is available: arrest records, fire department records, City Council records, emergency calls for service, and the City's financial records, all from 1996 to present; and all of the City's network drives storing documents. In addition, the City's network drives were not affected, and the

---

[5] The City has identified emails from before November 1, 2013 that were imported from Groupwise into Office 365 and have been retained. Those emails will be searched for production, but we do not yet know the nature of these emails.

documents stored therein remain available for production.

### 3. Replacement and/or Restoration of the Deleted Emails

Although it no longer has the drive with the subset of Groupwise pre-2014 legacy emails, the City recently located a hard drive that contains some encrypted files for certain employees. The City cannot yet confirm whether this drive contains Groupwise emails, as the folders all are encrypted. However, the drive's main folder is labeled "Groupwise Archive" and the subfolders are named for employees, two of whom are custodians: Eileen Weir and Zachary Walker.

Although it also does not have the mailboxes for custodian former Sheriff Thomas Dailey, the City has searched in their place for all emails from or to, including copied and blind copied to, former Sheriff Dailey that exist in preserved mailboxes. Through this search, the City has identified 379,140 emails that former Sheriff Dailey sent or received.[6] The City also is able to collect emails for Dailey's former executive assistant, Shari Rector, and Dailey's former Chief Deputy, Brad Halsey, through whom he often sent communications.

### C. Webb County, Texas

The PBM Defendants do not identify any spoliation by Webb County and, notwithstanding the absence of a formal litigation hold until recently, there indeed appears to be no spoliation given the County's standard document and data retention practices. By the end of this week, Webb County will have produced nearly 300,000 pages of discovery documents to Defendants. These materials span the liability period of 1996 to the present. Documents, including emails, are available for every custodian selected by PBM Defendants.

---

[6] To provide context for these recovered emails, Express Scripts has produced a total of 22,390 custodial documents dated before 2014 across all of its custodians and Optum has produced 41,873 custodial documents from the same period, despite these companies' far larger size.

Webb County has preserved and commenced production of Commissioners Court meeting minutes and agendas, court records, budgets, and Auditors' Reports, all dating to 1996. Defendants have selected sixteen custodians, many with emails dating to the mid-2000s. Webb County will begin producing responsive documents from these custodians in the coming weeks.

Webb County also has identified the earliest available email dates for 49 additional potential custodians. The County has noted that for some employees and officials, there is a gap between the start date of employment and the first available email. For example, Sheriff Martin Cuellar has served Webb County since 2009, but the County has been able to locate his emails dating from 2011 forward. The County is investigating what Defendants have called these "gaps."[7] Any gap periods for these potential Webb County custodians are from years before the commencement of Webb County's case against Defendants in 2018.

Moreover, as Webb County has informed Defendants, it is in the process of converting backup tapes that appear to contain older .pst files to a usable format. Once the County determines the availability of the .pst files from these tapes, it will provide an update to Defendants.

## LEGAL STANDARDS

The availability of remedies and/or sanctions for the loss of ESI is governed by Federal Rule of Civil Procedure 37(e), which provides as follows:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

---

[7] Similar "gaps" also exist on Defendants' side—for example, for ESI employees Andy Behm, Glen Stettin, Ed Adamcik, Eileen Biddell, Susan Peppers, Al De Carlo, and Rochelle Henderson.

> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Under Rule 37(e), when ESI is lost due to a party's failure to take reasonable steps to preserve it, "the initial focus should be on whether the lost information can be restored or replaced through additional discovery.  Nothing in the rule limits the court's powers under Rules 16 and 26 to order additional discovery."  Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment of Rule 37(e) ("R. 37 Adv. Comm. Note").  Under Rule 26, "efforts to restore or replace lost information through discovery should be proportional to the apparent importance of the lost information to claims or defenses in the litigation.  For example, substantial measures should not be employed to restore or replace information that is marginally relevant or duplicative."  *Id.*

Indeed, the advisory committee note emphasizes that, under Rule 37(e)(1), any "evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation."  *Id.*  The Rule "does not place a burden of proving or disproving prejudice on one party or the other," but rather "leaves judges with discretion to determine how best to assess prejudice in particular cases."  *Id.*  In some cases, "the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties.  Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations."  *Id.*

Rule 37(e)(2) does permit more severe measures, "but only on finding that the party that lost the information acted with the intent to deprive another party of the information's use in the litigation."  *Id.*  The 2015 amendment rejects the punitive approach of prior cases that imposed

11

severe measures based only on "negligence or gross negligence," in favor of the goal of restoring or providing equivalents for essential lost evidence.  *Id.*  As the Advisory Committee explains:

> Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.  The better rule for the negligent or grossly negligent loss of [ESI] is to preserve a broad range of measures to cure prejudice caused by its loss, but to limit the most severe measures to instances of intentional loss or destruction.

*Id.*

## PEC'S POSITIONS

I.     **The Evidence Shows at Most That Two Bellwether Plaintiffs—Lincoln County and City of Independence—Lost Non-Essential ESI Due to Negligent Failure to Preserve.**

Two of the Bellwether Plaintiffs—Lincoln County and City of Independence—have lost ESI consisting of certain custodial email files that are of little or no importance to Plaintiffs' cases and Defendants' defenses.  Neither Webb County nor any other MDL Plaintiff targeted by Defendants' expansive remedies is shown to have lost any ESI through spoliation.

A.     **Lincoln County and City of Independence**

Lincoln County lost the email files of 16 employees with potentially relevant information who left their employment with the County between October 2018 and February 2019.  These employees worked in the County Sheriff's, Coroner's, and Emergency Services Offices.  Despite the loss of these email files, the County retains arrest records, Coroner records, budget records, and County Commissioner meeting records dating back to 1996.  The County also has located over 140,000 of the emails sent or received by the employees at issue through the preserved email files of other County employees.  The County also has retrieved backup email files containing over 17,000 emails for two of the employees at issue and is reviewing hard drives from the computers used by two other of these employees.

The City of Independence lost some email messages from before February 2014 in a ransomware attack in December 2020 plus those of former Sheriff Thomas Dailey 2014-2016. Despite the loss of these email files, the City retains arrest records from the Sheriff's Office, fire department records, City Council records, emergency calls for service, and the City's financial records, all from 1996 to the present; and all of the City's network drives storing documents.  The City also has located over 379,000 emails sent or received by Sheriff Dailey through preserved email files of other City employees.

To the extent that any former County or City employee emails will remain missing, they are unlikely to contain important information that is unavailable from the preserved records.  For example, the County's and City's claimed damages in support of their RICO, negligence, and conspiracy claims based on government department expenditures devoted to opioid epidemic harms will be proven or disproven through available County and City budget records, not employee emails.  So, too, will the County's and City's claimed public nuisance abatement costs be supported or unsupported by available records of measures undertaken and costs incurred, and not through employee emails.  Indeed, in the bellwether trials to date, county and city plaintiff employee emails have not been featured meaningfully, if at all.[8]

Moreover, even if any loss of the employee emails at issue somehow were prejudicial (which Defendants have not shown), Defendants would have voluntarily accepted this prejudice. Three weeks ago, recognizing the distraction being created by defensive discovery issues in these cases, the PEC proposed to sever these two bellwethers and offered selection of two new

---

[8] In the CT3 trial, Defendants moved into evidence just *one* exhibit from the two county bellwethers.  The PBMs' counsel suggested that these cases are different because certain county or city employees may play a role in prescription drug formulary determinations.  None of the sheriff's office, coroner's office, or emergency services employees whose emails are at issue is even remotely likely to be involved in formulary matters.  The PBMs do not show otherwise.

bellwethers in their place to allow the parties and the Court to focus on efficiently moving the PBM litigation forward.  Preferring instead to foster a sideshow relating to the loss of certain ESI, Defendants rejected this proposal and instead ask the Court for further discovery and sanctions regarding these bellwethers.[9]  The PEC believes that Defendants will face no prejudice in going forward with these cases.  In any event, any disadvantage would be of their own choosing.

Finally, if any material information remained missing after Plaintiffs' replacement and restoration efforts are completed, this loss would be due, at worst, to negligence in initially failing to implement a litigation hold, and not to an intent to deprive Defendants of particular information.  *See, e.g., Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 296 (D. Md. 2023) ("In general, courts have treated a failure to implement a litigation hold as constituting gross negligence."); *cf. Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 774 (E.D. Mich. 2019) (inferring defendant's intent to deprive plaintiff of material information from its selective preservation of interior video footage and destruction of exterior video footage of the same incident).  There is no evidence that the County or City intended to deprive Defendants of information in any of the email files that may not be replaced or restored.  Moreover, the destruction of certain ESI by a criminal attack on the City would not have been prevented by a litigation hold, and the refusal to pay ransom to a criminal organization that seized control of certain of the City's records, after consultation with specialized counsel, does not constitute improper conduct.  Nor is there any evidence that paying a ransom would have ensured access to these records.

### B.    Webb County

Webb County has not lost any ESI.  By the end of this week, it will have produced to Defendants nearly 300,000 pages of discovery documents that span the liability period of 1996 to

---

[9] To the extent Defendants complain of the loss of a Missouri bellwether, the PEC notes that there is active litigation against these Defendants in Jefferson County, Missouri.

the present.  Webb County has preserved and commenced producing Commissioners Court meeting minutes and agendas, court records, budgets, and Auditors' Reports, all dating to 1996. Defendants recently selected 16 custodians with available emails dating to the mid-2000s, from which Webb County expects to begin producing responsive documents in the coming weeks.

Webb County also has identified the earliest available email dates for 49 other potential custodians.  For some of these, the County notes a gap between the custodian's employment start date and the first available email.  All such gap periods long predate the County's commencement of litigation against Defendants.  Moreover, even with respect to the gap-period emails, Webb County is in the process of converting backup tapes that appear to contain older .pst files to a usable format, which may or may not provide access to these non-spoliated gap-period emails.

There is no evidence that Webb County has lost any ESI while it has been under a duty to preserve for this litigation.

**C.      City of Rochester and Other MDL Plaintiffs Covered by the PBM Defendants' Proposed Remedies**

As with Webb County, there is no evidence that Bellwether Plaintiff City of Rochester or any non-Bellwether Plaintiff has lost any relevant ESI.  Defendants admit this with respect to Rochester.  Position Paper at 19 ("As it stands, the only [*sic*] Bellwether plaintiff with no presently-known document preservation issues is the City of Rochester[.]").  As to the other non-Bellwether Plaintiffs who either have clams or may seek to amend to add claims against the PBMs, there likewise is no evidence that any of these Plaintiffs has lost any relevant ESI.

Defendants argue that "non-bellwether MDL cases also likely failed to timely implement legal holds."  Position Paper at 11.  Their sole basis for this assertion is that many, though not all, of the non-Bellwether Plaintiffs with claims against them are represented by one or both of the

15

same law firms that represent Lincoln County, City of Independence, and/or Webb County.[10] This is not evidence of spoliation or a risk of spoliation in every non-bellwether MDL case for two reasons. First, this lawyer-focused argument is overinclusive because it does not apply to any of the current or future-amended MDL cases in which neither of the two named law firms is Plaintiffs' counsel. Second, even as to the two named law firms, the Cicala Law Firm is counsel for Webb County, for which there is no evidence of spoliation. Thus, Defendants' attempted inference of spoliation from counsel to client fails even on its own terms. There simply is no evidence of even a Rule 37 question in any of these non-Bellwether cases.

In sum, there are only two MDL cases—Lincoln County and City of Independence—that are shown to present possible questions of Rule 37 remedies, to which the PEC now turns.

## II. The Only Rule 37 Remedy As-Yet Warranted is Additional Discovery From Plaintiffs Lincoln County and City of Independence.

The PEC does not oppose Defendants' request to take additional Rule 30(b)(6) depositions of Plaintiffs Lincoln County and City of Independence. Given the evidence of ESI loss in these two cases, these depositions may aid the parties in determining the precise contours of what information was lost and how both Plaintiffs should proceed with their ongoing replacement and restoration efforts. *See* R. 37 Adv. Comm. Note ("Nothing in [Rule 37] limits the court's powers to authorize additional discovery."). These additional depositions are proportionate in light of the likely modest importance of any unique information contained in lost emails in these cases where the Plaintiffs' most probative evidence is of government expenditures on official actions documented in preserved public records. *See id.* ("[S]ubstantial measures should not be employed

---

[10] *See id.* ("Each of the three PBM bellwethers discussed above—*City of Independence, Lincoln County,* and *Webb County*—was filed by the same law firm: the Cicala Law Firm. The Cicala Law Firm is responsible for filing 63 of 84 of the existing cases in the MDL with claims against the PBM Defendants. Two of the PBM bellwethers—*City of Independence* and *Lincoln County*—were also represented by Mr. Jack Garvey, who represents Plaintiffs in three additional cases.").

to restore or replace information that is marginally relevant or duplicative.").  No other remedial measures under Rule 37(e) or otherwise are needed or warranted.

No additional Rule 30(b)(6) deposition nor any other measure should be ordered against Plaintiff Webb County.  There is no evidence that Webb County has caused loss of any "[ESI] that should have been preserved in the anticipation or conduct of litigation . . . because a party failed to take reasonable steps to preserve it."  Fed. R. Civ. P. 37(e).  Thus, there is no basis for the Court to order any remedial measure or sanction proposed by Defendants as against Webb County.  *See* R. 37 Adv. Comm. Note (Rule 37(e)(1) "applies only if information should have been preserved in the anticipation or conduct of litigation, a party failed to take reasonable steps to preserve the information, *information was lost as a result*, and the information could not be restored or replaced by additional discovery.").  Since Webb County did not lose any ESI that should have been preserved for this litigation, no Rule 37 remedy may be ordered.

While the foregoing demonstrates that no remedy beyond Rule 30(b)(6) depositions of Lincoln County and City of Independence is warranted, the PEC addresses below each of the additional remedies that Defendants erroneously claim are warranted.

***Briefing schedule for sanctions motions:***  No motion for "sanctions," Position Paper at 17-18, is warranted as to any Plaintiff.  Rule 37(e)(1) does not provide for sanctions.  It is purely remedial, authorizing a court only to "order measures no greater than necessary to cure the prejudice[,]" Fed. R. Civ. P. 37(e)(1), where ESI has been lost due to spoliation and has not been restored or replaced through additional discovery.  Here, any motion for Rule 37(e)(1) remedial measures against Plaintiffs Lincoln County and City of Independence would be premature because discovery on spoliation, restoration, and replacement is ongoing, including the Rule 30(b)(6) depositions Defendants requested and the PEC consents to as to these two Plaintiffs.  Any motion

for Rule 37(e)(1) remedial measures as against Webb County or any other MDL Plaintiff would be baseless, as there is no evidence that any of these Plaintiffs caused any spoliation.

Rule 37(e)(2) *does* provide for sanctions, but does not apply to any Plaintiff's conduct here. Although Rule 37(e)(2) does not require any showing of prejudice, it requires that a party have "acted with the intent to deprive another party of the [lost] information's use in the litigation[.]" Fed. R. Civ. P. 37(e)(2). Here, the Bellwether Plaintiffs' failures to implement litigation holds do not constitute intentional misconduct under the Rule. *See Jennings*, 679 F. Supp. 3d at 296 ("The conduct at issue, then, concerns defendants' failure to implement a proper litigation hold, rather than intentional destruction of evidence. In general, courts have treated a failure to implement a litigation hold as constituting gross negligence. . . . Thus, plaintiff has not carried his burden to demonstrate an 'intent to deprive,' pursuant to Rule 37(e)(2).").  There is thus no basis for "sanctions motions" against the Bellwether Plaintiffs or any other Plaintiff.

**Compelled preservation discovery by non-Bellwether Plaintiffs:** The Court does not have authority under Rules 8, 16 or 37 to compel non-Bellwether Plaintiffs to provide discovery on preservation as a condition of maintaining or amending their Complaints, Position Paper at 4, 17-19, absent any record of preservation failures *by them in their cases*. The Court should reconsider its rulings on these points, particularly with respect to linking consideration of other Plaintiffs' right to amend. However, as stated above, the PEC does not object to the Court's consideration of litigation holds after amendment is decided as a factor in selecting future bellwether cases.

Rule 8 requires that a pleading contain a "short and plain statement of the grounds for the court's jurisdiction," a "short and plain statement of the claim showing that the pleader is entitled to relief," and a "demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). It does not require that a pleading contain or be accompanied by statements addressing preservation of evidence.

Rule 16 requires that a party seeking to amend a pleading outside the time limit set forth in the scheduling order show "good cause," Fed. R. Civ. P. 16(b)(4), which means that "despite their diligence they could not meet the original deadline." *Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003). It does not require that a motion for leave to amend or an amended pleading also contain or be accompanied by statements addressing preservation of evidence.

Rule 37 provides that a court "may order measures no greater than necessary to cure the prejudice," Fed. R. Civ. P. 37(e)(1), where ESI has been lost due to spoliation and has not been restored or replaced through additional discovery. It does not authorize a court to order preservation-related disclosures by other parties in other cases, which cannot conceivably be necessary to cure prejudice from spoliation in a single separate case.

The fact that this is a multidistrict litigation does not legitimize the PBMs' proposed cross-cases orders tying a Plaintiff's right to maintain or amend its Complaint to its provision of discovery on preservation *as a remedy for another Plaintiff's alleged preservation failure in another case*. As the Sixth Circuit recognized in *In re CVS*, "the cases within an MDL 'retain their separate identities.'" 956 F.3d at 845 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015)). "That means a district court's decision whether to grant a motion to amend in an individual case depends on the record *in that case and not others.*" *Id.* (emphasis added). The PBMs' request to order dozens to hundreds of other Plaintiffs in other MDL cases to provide preservation discovery, including as a condition to amend their Complaints, as a remedy for two Bellwether Plaintiffs' alleged preservation failures flies in the face of and is prohibited by *In re CVS*. The Court may only order an MDL Plaintiff to provide or perform a Rule 37 remedial measure where it is supported by the record "in that [Plaintiff's] case and not others." To the extent the Court has ordered other Plaintiffs in other cases with no record of spoliation to provide

preservation discovery, and particularly to do so as a condition for amendment, the Court should reconsider these rulings.

***Modify discovery deadlines in all four PBM bellwether tracks (CT12-15):*** There is no basis to modify discovery deadlines in all four PBM bellwether tracks, Position Paper at 4, 19. This cross-cases remedial measure likewise is not supported by Rule 37 or otherwise. Defendants admit that there are "no presently-known document preservation issues [with] the City of Rochester." Position Paper at 19. Nor is there any evidence of document preservation issues with Webb County. There is thus no preservation-related basis for modifying the discovery deadlines in Rochester and Webb County's cases (CT12 and CT15).

As to Lincoln County and City of Independence's cases (CT13 and CT14), discovery pertaining to retention, replacement, and restoration is ongoing. This includes Defendants' requested additional Rule 30(b)(6) depositions of these Plaintiffs, to which the PEC consents. Since these efforts are ongoing, the request to modify the discovery deadlines in these two cases is premature. The parties and the Court should address this question after the Rule 30(b)(6) depositions of these two Plaintiffs and any related discovery are completed.

<u>**CONCLUSION**</u>

The PEC has offered a path forward that allows the case to proceed efficiently, with a focus on the merits, by—severing the two bellwethers with preservation issues and focusing on affirmative discovery and defensive discovery of the remaining two bellwethers selected by Plaintiffs and Defendants. If the Court elects to continue with Lincoln County and the City of Independence, the PEC respectfully requests that the Court order no remedial measure other than the proposed Rule 30(b)(6) depositions of Plaintiffs Lincoln County and City of Independence.

Dated: July 12, 2024               Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR  00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

**Counsel for City of Independence, Missouri:**

*/s/ John F. Garvey*
STRANCH, JENNINGS & GARVEY, PLLC
John F. Garvey
Colleen Garvey
Ellen A. Thomas
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

*/s/ Joanne M. Cicala*
THE CICALA LAW FIRM PLLC
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Daniel A. Thomas*
HUMPHREY FARRINGTON MCCLAIN
Daniel A. Thomas
221 W. Lexington Ave. Ste 400
Independence, MO 64050
Tel: (816) 836-5050
DAT@hfmlegal.com

**Counsel for City of Rochester:**

*/s/Hunter J. Shkolnik*
Hunter J. Shkolnik
Paul J. Napoli
NSPR Law Services LLC
1302 Avenida Ponce de Leon
Santurce, Puerto Rico  00907
(833) 271-4502
hunter@nsprlaw.com
pnapoli@nsprlaw.com

Salvatore C. Badala
Shayna E. Sacks
Joseph L. Ciaccio
Napoli Shkolnik PLLC
360 Lexington Avenue, 11th Floor
New York, NY  10017
(212) 397-1000
sbadala@napolilaw.com
ssacks@napolilawcom
jciaccio@napolilaw.com

**Counsel for County of Webb, Texas:**

*/s/ Joanne M. Cicala*
**THE CICALA LAW FIRM PLLC**
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Kevin Sharp*
**SANFORD HEISLER SHARP, LLP**
Kevin Sharp
Christine Dunn
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
Tel: (615) 434-7000
Fax: (615) 434-7020
ksharp@sanfordheisler.com
cdunn@sanfordheisler.com

**Counsel for Lincoln County, MO:**

*/s/ John F. Garvey*
**STRANCH, JENNINGS & GARVEY, PLLC**
John F. Garvey
Colleen Garvey
Ellen A. Thomas
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
Tel: (314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

*/s/ Joanne M. Cicala*
**THE CICALA LAW FIRM PLLC**
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
101 College Street
Dripping Springs, TX 78620
Tel: (512) 275-6550
Fax: (512) 858-1801
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

/s/ *Patrick A. Hamacher*
**NIEMEYER, GREBEL & KRUSE, LLC**
Patrick A. Hamacher
Mark R. Niemeyer
211 N. Broadway, Suite 2950
St. Louis, MO  63102
Tel: (314) 241-1919
Fax: (314) 665-3017
hamacher@ngklawfirm.com
Niemeyer@ngklawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

 */s/ Peter Weinberger*
Peter Weinberger