# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| *City of Independence, Missouri v. Williams,* No. 19-op-45371 (Track 14) | |
| *County of Webb, Texas v. Purdue Pharma, L.P.,* No. 18-op-45175 (Track 15) | |

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINTS IN TRACKS 14 AND 15 (DKT. #5447) AND MEMORANDUM OF LAW IN SUPPORT

July 19, 2024

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ................................................................................................................... 2

I.   DISMISSAL OF PLAINTIFFS' RICO CLAIMS IS NOT WARRANTED. ...................................... 3

  A.   **Plaintiffs' RICO Claims Are Not Time-Barred.** .................................................. 3

     1.   Plaintiffs' RICO claims seeking equitable relief are not time-barred............................ 3

     2.   Plaintiffs' RICO claims for damages resulting from predicate acts that took place within the limitations period are not time-barred. ......................................... 4

     3.   Plaintiffs sufficiently allege that the injury-discovery rule applies. ............................. 7

     4.   Plaintiffs sufficiently allege that the fraudulent concealment doctrine applies. ............ 8

     5.   Plaintiffs' RICO claims against the New Defendants are not time-barred. .................. 10

  B.   **Plaintiffs Sufficiently Allege Injuries to Business or Property.** .................................. 13

     1.   This Court previously recognized that extraordinary costs of public services and costs for purchasing Naloxone are cognizable RICO injuries. ................................ 13

     2.   The other out-of-circuit cases cited by Defendants do not compel a different result. ... 15

     3.   Plaintiffs also allege cognizable injuries to real property. ..................................... 18

     4.   Lost tax revenues are also a cognizable injury to business or property. ....................... 18

     5.   Plaintiffs adequately alleged they were harmed as consumer market participants. ....... 19

II.   PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS. ................................................................................................................ 24

  A.   **Plaintiffs Sufficiently Allege the Direct Liability of the Parent Company Defendants**….. ....................................................................................................... 25

  B.   **Plaintiffs Sufficiently Allege Alter Ego Theories of Liability for the Parent Company Defendants.** ........................................................................................... 28

  CONCLUSION ........................................................................................................... 30

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.O.A. v. Rennert*,
    350 F. Supp. 3d 818 (E.D. Mo. 2018)........................................................................29

*Abdell v. City of New York*,
    759 F. Supp. 2d 450 (S.D.N.Y. 2010)......................................................................10

*Am. Premier Underwriters, Inc. v. Nat'l RR Passenger Corp.*,
    839 F.2d 458 (6th Cir. 2016) ...............................................................................2, 8

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006).............................................................................................19

*ArmorSource LLC v. Kapah*,
    No. 2:18-CV-905, 2019 WL 1118023 (S.D. Ohio Mar. 11, 2019)...................5, 6, 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................22

*Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*,
    268 F.3d 103 (2d Cir. 2001).................................................................................17

*Baltrusaitis v. Intl. Union, United Automobile, Aerospace and Agric. Implement*
    *Workers of Am.*,
    86 F.4th 1168 (6th Cir. 2023) ...................................................................... *passim*

*BCBSM, Inc. v. Walgreen Co.*,
    512 F. Supp. 3d 837 (N.D. Ill. 2021) ...............................................................24, 29

*Beck v. Prupis*,
    529 U.S. 494 (2000)..............................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................2

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007) ...............................................................................10

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams*
    *Sys., LLC*,
    566 B.R. 815 (W.D. Tex. 2017)............................................................................20

*Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.*,
    655 Fed. Appx. 9 (2d Cir. 2016) ......................................................................28, 29

ii

*Canyon County v. Syngenta Seeds, Inc.*,
    519 F.3d 969 (9th Cir. 2008) ...............................................................13, 14, 16, 17

*In re Cardizem CD Antitrust Litig.*,
    332 F.3d 896 (6th Cir. 2003) ...............................................................17

*Carrier Corp. v. Outokumpu Oyj*,
    673 F.3d 430 (6th Cir. 2012) ...............................................................9

*Chiropractic Co-op. Ass'n of Michigan v. Am. Med. Ass'n*,
    867 F.2d 270 (6th Cir. 1989) ...............................................................6

*City & County of San Francisco v. Purdue Pharma L.P.*,
    491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................. *passim*

*City of Almaty v. Khrapunov*,
    956 F.3d 1129 (9th Cir. 2020) ...............................................................15, 16, 17

*City of New York v. FedEx Ground Package System, Inc.*,
    91 F. Supp. 3d 512 (S.D.N.Y. 2015) ...............................................................19

*City of New York v. Gordon*,
    1 F. Supp. 3d 94 (S.D.N.Y. 2013) ...............................................................19

*City of New York v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008) ...............................................................17, 18

*Clarke v. Amazon.com Services LLC*,
    No. CV 2:23-114-DCR, 2023 WL 7003220 (E.D. Ky. Oct. 24, 2023) ...................................4

*In re Cnty, Green Ltd. P'ship*,
    604 F.2d 289 (4th Cir. 1979) ...............................................................30

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ...............................................................8

*Dimond Rigging Co., LLC v. BDP Intl., Inc.*,
    914 F.3d 435 (6th Cir. 2019) ...............................................................2

*Doe v. The Ohio State U.*,
    136 F. Supp. 3d 854 (S.D. Ohio 2016) ...............................................................22

*Duff v. Centene Corp.*,
    565 F. Supp. 3d 1004 (S.D. Ohio 2021) ...............................................................18, 29

*Egerer v. Woodland Realty, Inc.*,
    556 F.3d 415 (6th Cir. 2009) ...............................................................11

*In re EpiPen Direct Purchaser Litig.*,
  No. 20-CV-0827, 2021 WL 147166 (D. Minn. Jan. 15, 2021)...............................................25

*In re EpiPen Direct Purchaser Litig.*,
  No. 20-CV-0827, 2022 WL 1017770 (D. Minn. Apr. 5, 2022)............................................25

*Erie Indem. Co. v. Keurig, Inc.*,
  No. 1:10-CV-02899, 2011 WL 2893013 (N.D. Ohio July 15, 2011) ....................................10

*European Community v. RJR Nabisco, Inc.*,
  150 F. Supp. 2d 456 (E.D.N.Y. 2001) .................................................................................19

*Farmer v. Home Depot USA, Inc.*,
  No. A-10-CA-591-SS, 2011 WL 13324391 (W.D. Tex. May 16, 2011) ..............................11

*Friedmann v. Campbell*,
  202 F.3d 268 (6th Cir. 1999) ...............................................................................................12

*Greathouse v. Capital Plus Fin. LLC*,
  690 F. Supp. 3d 610 (N.D. Tex. 2023) ....................................................................................4

*Grover v. BMW of N.A., LLC*,
  434 F. Supp. 3d 617 (N.D. Ohio 2020)....................................................................................2

*Hall v. Warden, Lebanon Corr. Inst.*,
  662 F.3d 745 (6th Cir. 2011) ...............................................................................................10

*Hawaii v. Stand. Oil Co. of Cal.*,
  405 U.S. 251 (1972)........................................................................................................13, 19

*Heath v. Highlift Equip., Ltd.*,
  No. 1:19-CV-134, 2020 WL 5506572 (S.D. Ohio Sept. 11, 2020) ...............................8, 9, 20

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010)...........................................................................................................17, 19

*Hitachi Med. Sys. Am., Inc. v. Horizon Med. Group*,
  No. 5:07CV02035, 2008 WL 11380212 (N.D. Ohio Feb. 8, 2008) ......................................20

*Hoover v. Langston Equip. Associates, Inc.*,
  958 F.2d 742 (6th Cir. 1992) ...............................................................................................23

*Illinois Dept. of Revenue v. Phillips*,
  771 F.2d 312 (7th Cir. 1985) .....................................................................................13, 18, 19

*J. v. Nelson*,
  No. 3:19-CV-185, 2019 WL 6971371 (E.D. Tenn. Dec. 19, 2019) ......................................20

iv

*James v. McCoy*,
  56 F. Supp. 2d 919 (S.D. Ohio 1998), *aff'd,* 181 F.3d 101 (6th Cir. 1999) ............................5

*Josephs v. Alberto Jose Marzan and Press Media Group, Inc.*,
  No. CV 21-0749, 2022 WL 45041 (D. Minn. Jan. 5, 2022) ......................................................4

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997) ..................................................................................................................5

*Knapp v. City of Columbus*,
  93 Fed. Appx. 718 (6th Cir. 2004) (unpublished) ...................................................................11

*Krupski v. Costa Crociere S. p. A.*,
  560 U.S. 538 (2010) ................................................................................................................10

*Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.*,
  14 F. Supp. 3d 488 (S.D.N.Y. 2014) .......................................................................................29

*Laya v. Erin homes Inc.*,
  352 S.E.2d 93 (W. Va. 1986) ...................................................................................................30

*Lutz v. Chesapeake Appalachia, L.L.C.*,
  717 F.3d 459 (6th Cir. 2013) .....................................................................................................2

*Mattingly v. R.J. Corman R.R. Grp., LLC*,
  90 F.4th 478 (6th Cir. 2024) ....................................................................................................28

*McLaughlin v. Anderson*,
  962 F.2d 187 (2d Cir. 1992) .....................................................................................................20

*Microsoft Corp. v. Motorola, Inc.*,
  854 F. Supp. 2d 993 (W.D. Wash. 2012) .................................................................................29

*Nice v. City of Akron*,
  No. 5:21-CV-1887, 2023 WL 1766116 (N.D. Ohio Feb. 3, 2023) ..........................................10

*Northgate Lincoln-Mercury Inc. v. Ford Motor Co.*,
  507 F. Supp. 3d 940 (S.D. Ohio 2020) ...................................................................................22

*Novo Nordisk A/S v. Caraco Pharm. Laboratories, Ltd.*,
  450 F. Supp. 2d 757 (E.D. Mich. 2006) ..................................................................................29

*U.S. ex rel. Owsley v. Fazzi Associates, Inc.*,
  16 F.4th 192 (6th Cir. 2021) ....................................................................................................21

*Paguirigan v. Prompt Nursing Emp. Agency LLC*,
  286 F. Supp. 3d 430 (E.D.N.Y. 2017) .....................................................................................30

*In re Polyurethane Foam Antitrust Litig.*,
    152 F. Supp. 3d 968 (N.D. Ohio 2015) ........................................................................8

*Potomac Elec. Power Co. v. Electric Motor & Supply, Inc.*,
    262 F.3d 260 (4th Cir. 2001) ....................................................................................18

*Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc.*,
    No. 05-0951 PAM/RLE, 2005 WL 3526581 (D. Minn. Dec. 22, 2005) ..............................20

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979) ................................................................................................18

*Rotella v. Wood*,
    528 U.S. 549 (2000) ..................................................................................................7

*Salinas v. U.S.*,
    522 U.S. 52 (1997) ....................................................................................................6

*Schechter v. Banque Commerciale Privee*,
    No. 90 CIV. 6051, 1991 WL 105217 (S.D.N.Y. June 11, 1991) ...................................29

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
    473 U.S. 479 (1985) ..........................................................................................14, 18

*Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*,
    742 F.2d 786 (3d Cir. 1984) ....................................................................................18

*Shoultz v. Derrick*,
    369 F. Supp. 3d 1120 (D. Or. 2019) ........................................................................20

*Smith v. FirstEnergy Corp.*,
    518 F. Supp. 3d 1118 (S.D. Ohio 2021) ....................................................................4

*Smith v. U.S.*,
    568 U.S. 106 (2013) ..................................................................................................6

*Solidstrip Inc. v. U.S. Tech. Corp.*,
    No. 5:21-CV-0731, 2024 WL 1177968 (N.D. Ohio Mar. 18, 2024) ..........................5, 7, 8

*U.S. ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*,
    No. 18-CV-673-GKF-FHM, 2019 WL 1086363 (N.D. Okla. Mar. 7, 2019) .....................24

*In re Sumitomo Copper Litig.*,
    995 F. Supp. 451 (S.D.N.Y. 1998) ............................................................................21

*Tobia v. Loveland*,
    No. 5:16CV187, 2017 WL 2113752 (N.D. W. Va. May 15, 2017) ..................................30

*Town of West Hartford v. Operation Rescue*,
    915 F.2d 92 (2d Cir. 1990)......................................................................................17

*Trollinger v. Tyson Foods, Inc.*,
    No. 4:02-CV-23, 2006 WL 319022 (E.D. Tenn. Feb. 8, 2006)............................5, 7

*Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*,
    No. 09-2533-JWL, 2010 WL 3735757 (D. Kan. Sept. 20, 2010)...........................29

*U.S. v. Corrado*,
    286 F.3d 934 (6th Cir. 2002) ...................................................................................6

*U.S. v. Saadey*,
    393 F.3d 669 (6th Cir. 2005) ...................................................................................6

*U.S. v. Supervalu, Inc.*,
    218 F. Supp. 3d 767 (C.D. Ill. 2016) .....................................................................24

*Uebelacker v. Paula Allen Holdings, Inc.*,
    464 F. Supp. 2d 791 (W.D. Wis. 2006) ..................................................................30

*United States v. Bestfoods*,
    524 U.S. 51 (1998)..................................................................................................30

*United States v. Jones*,
    27 F.3d 50 (2d Cir. 1994)........................................................................................26

*United States v. Rios*,
    830 F.3d 403 (6th Cir. 2016) .................................................................................26

*Unitedhealthcare Services, Inc. v. Team Health Holdings, Inc.*,
    No. 321CV00364DCLCJEM, 2022 WL 1481171 (E.D. Tenn. May 10, 2022) .......8

*Wahl v. Gen. Elec. Co.*,
    786 F.3d 491 (6th Cir. 2015) ...........................................................................28, 29

*Walker v. Nash*,
    No. 2:13-CV-3408, 2014 WL 1278599 (D.S.C. Mar. 27, 2014) ...........................30

*Wall v. Michigan Rental*,
    852 F.3d 492 (6th Cir. 2017) .................................................................................20

*Welborn v. Bank of N.Y. Mellon Corp.*,
    557 Fed. Appx. 383 (5th Cir. 2014) (unpublished).........................................17, 19

*Williams v. Duke Energy Intern., Inc.*,
    681 F.3d 788 (6th Cir. 2012) .................................................................................22

*Williams v. Porter Bancorp, Inc.*,
    41 F. Supp. 3d 676 (W.D. Ky. 2014) ...................................................................24, 25

*Zakora v. Chrisman*,
    44 F.4th 452 (6th Cir. 2022) ...........................................................................................10

*Zelaya v. Hammer*,
    No. 3:19-CV-62, 2022 WL 16757083 (E.D. Tenn. Jan. 26, 2022) .........................11

**STATUTES**

18 U.S.C. § 1961 ..............................................................................................................20

18 U.S.C. § 1962 ..............................................................................................................21

MO. REV. STAT. ANN. § 516.280 ....................................................................................11

TEX. BUS. ORGS. CODE § 1.104 ......................................................................................29

**OTHER AUTHORITIES**

FED. R. CIV. P. 9 ........................................................................................................ *passim*

FED. R. CIV. P. 12 ...............................................................................................................2

FED. R. CIV. P. 15 ....................................................................................................8, 9, 10

Model State Pharmacy Act and Model Rules of the National Association of
    Boards of Pharmacy, *available at* https://nabp.pharmacy/members/board-
    resources/model-pharmacy-act-rules/ ............................................................................25

NABP Report of the Task Force on the Regulation of Pharmacy Benefit
    Managers, *available at* https://nabp.pharmacy/wp-
    content/uploads/2016/07/PBM_TF_Report.pdf..........................................................26

In their Motion, Defendants seek dismissal of only some of Plaintiffs' claims on a few limited grounds.[1]  Curiously, they do not raise numerous grounds on which they have consistently filed motions to dismiss in state court opioid cases around the country (*e.g.*, ERISA preemption, lack of duty and/or causation, etc.).  Plaintiffs can only assume this was a deliberate strategy to attempt to prevent this Court from deciding those issues in these cases.  Regardless, the grounds Defendants do raise in their Motion are without merit and should be rejected.  Plaintiffs' RICO claims are timely and sufficiently allege cognizable injuries to Plaintiffs' business and property.  Plaintiffs also sufficiently allege that the Parent Company Defendants[2] are (i) directly liable for their own conduct, and/or (ii) liable under an alter ego theory.  For these reasons, Defendants' Motion should be denied.

For purposes of having a complete record, Plaintiffs' Opposition addresses all the arguments raised in Defendants' Motion.  However, Plaintiffs and Defendants recently entered into stipulations through which most Defendants will be dismissed from these cases without prejudice,[3] and the only remaining Defendants will be Express Scripts, Inc., ESI Mail Pharmacy Service, Inc., OptumRx, Inc., OptumInsight, Inc., and OptumInsight Life Sciences, Inc. (the "Remaining Defendants").  Once these dismissals are entered, it will be unnecessary for the Court to resolve some of the issues raised in the Motion at this time.  Specifically, Defendants' arguments regarding the Parent Company Defendants' liability will be rendered entirely moot, as those defendants (Evernorth; UHG; Optum, Inc.) will be dismissed pursuant to the stipulations.

---

[1]  Defendants do not seek dismissal of any of Plaintiffs' state-law claims against the non-Parent Company Defendants.

[2]  Unless otherwise indicated, capitalized terms are defined the same as in Defendants' Motion.

[3]  The "Dismissed Defendants" are: (i) Evernorth Health, Inc. f/k/a Express Scripts Holding Co. ("Evernorth"), ESI Mail Order Processing, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc., Express Scripts Administrators, LLC, and Medco Health Solutions, Inc. (the "Dismissed ESI Defendants"); and (ii) UnitedHealth Group Incorporated ("UHG"), Optum, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. (the "Dismissed Optum Defendants").

Additionally, the Court need not address the RICO statute of limitations arguments against the Dismissed Optum Defendants.[4]

## ARGUMENT

Dismissal under Rule 12(b)(6) is not warranted where the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "construe the complaint in a light most favorable to plaintiffs, accept all plausible well-pled factual allegations as true, and draw all reasonable inferences in plaintiffs' favor." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013). A Rule 12(b)(6) motion is typically considered "an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Id.* (citation omitted). *See also Am. Premier Underwriters, Inc. v. Nat'l RR Passenger Corp.*, 839 F.2d 458, 464 (6th Cir. 2016); Dkt. #1203 (CT1 MTD Order) at 5; Dkt. #2568 (CT1 SOL MSJ Order) at 3; Dkt. #3177 (*Cleveland Bakers* MTD Opinion) at 11 ("The defense is more appropriately addressed in the context of a summary judgment motion or trial if disputed issues of fact exist relating, for example, to accrual dates, fraudulent concealment, continuing unlawful conduct, or whether information possessed by a plaintiff sufficed to provide notice of the claim."). Dismissal is warranted only if the allegations "affirmatively show that the plaintiff can prove *no* set of facts that would entitle him to relief." *Dimond Rigging Co., LLC v. BDP Intl., Inc.*, 914 F.3d 435, 441 (6th Cir. 2019) (cleaned up). *See also* Dkt. #3177 (*Cleveland Bakers* MTD Order) at 11 ("Motions to dismiss based on statute-of-limitation grounds should only be granted where undisputed facts conclusively establish the defense as a matter of law") (cleaned up); *Grover v. BMW of N.A., LLC*, 434 F. Supp. 3d 617, 630 (N.D. Ohio 2020).

---

[4]  Pursuant to Plaintiffs' stipulation with the ESI Defendants, the Remaining ESI Defendants (Express Scripts, Inc. and ESI Mail Pharmacy Service, Inc.) will stand in the shoes of the Dismissed ESI Defendants (excluding Evernorth) and can assert any defenses that could have been asserted by the dismissed entities. Accordingly, it is still necessary for the Court to resolve the RICO statute of limitations arguments with respect to all ESI Defendants except Evernorth.

# I.   DISMISSAL OF PLAINTIFFS' RICO CLAIMS IS NOT WARRANTED.[5]

## A.   Plaintiffs' RICO Claims Are Not Time-Barred.

Defendants argue that Plaintiffs' RICO claims against all Defendants, or, at a minimum, those against the New Defendants, are time-barred.  Mot. at 5-14.[6]  Not so.  First, Plaintiffs' RICO claims seeking equitable relief are exempt from the limitations period.  Additionally, Plaintiffs' RICO claims for damages based on injuries resulting from predicate acts by any member of the Formulary & UM Enterprise (the "Enterprise") that occurred within the applicable limitations period are timely under the separate-accrual rule.  Finally, Plaintiffs' complaints contain a litany of disputed facts related to their injuries, when they occurred, and when Plaintiffs discovered or should have discovered them.  Thus, Defendants cannot demonstrate as a matter of law that the statute of limitations was not tolled under the injury-discovery rule, the fraudulent concealment doctrine, and/or the equitable tolling doctrine.  Under these circumstances, as this Court has previously held, dismissal on statute of limitations grounds is inappropriate.  *Supra* at 2.

### 1.   *Plaintiffs' RICO claims seeking equitable relief are not time-barred.*

Plaintiffs seek *both* legal and equitable relief for their RICO claims against all Defendants.[7] As this Court has previously held, "RICO claims for equitable relief . . . are exempt from the

---

[5]  Because, for the reasons set forth below, Plaintiffs have sufficiently alleged RICO claims against Defendants, the Court should reject Defendants' argument that Plaintiffs "cannot rely on RICO's nationwide service of process provision . . . to obtain personal jurisdiction over Defendants" because "Plaintiffs have failed to plausibly allege a RICO claim against any Defendant."  Mot. at 15 n.8.  Plaintiffs' detailed response to Defendants' jurisdictional arguments are set forth in their Opposition to Certain Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, filed contemporaneously herewith.

[6]  As previously noted (*supra* at 2), once dismissals are entered against the Dismissed Defendants, it will be unnecessary for the Court to decide at this time the RICO statute of limitations arguments with respect to Evernorth or the Dismissed Optum Defendants.

[7]  *See* Plaintiff City of Independence, Missouri's Supplemental and Amended Allegations To Be Added To the Complaint (herein "Independence"), *Jefferson County v. Williams, et al.,* No. 1:19-op-45371 ("*Independence* Dkt.") at Dkt. #44, ¶ 805; Plaintiff Webb County, Texas' Supplemental and Amended Allegations To Be Added To the Second Amended Complaint (herein "Webb" and collectively with Independence, the "Amended Complaints"), *County of Webb v. Purdue Pharma, L.P., et al.,* No. 1:18-op-45175 ("*Webb* Dkt.") at Dkt. #112, ¶ 840.

operation of a limitations period." Dkt. #2568 (CT1 SOL MSJ Order) at 9-11.[8]  Thus, Plaintiffs'

RICO claims for equitable relief are timely and Defendants' motion to dismiss Plaintiffs' RICO

claims as time-barred should be denied in its entirety.  *See, e.g., Clarke v. Amazon.com Services

LLC*, No. CV 2:23-114-DCR, 2023 WL 7003220, at *5 (E.D. Ky. Oct. 24, 2023) (dismissal under

Rule 12(b)(6) not warranted if complaint sufficiently alleges claim for which some relief can be

granted); *Greathouse v. Capital Plus Fin. LLC*, 690 F. Supp. 3d 610 (N.D. Tex. 2023) ("Whether

a claim for relief should be dismissed under Rule 12(b)(6) turns not on whether all of the relief

asked for can be granted, but whether the plaintiff is entitled to any relief.") (cleaned up).

### 2.  *Plaintiffs' RICO claims for damages resulting from predicate acts that took place within the limitations period are not time-barred.*

To the extent any predicate acts of Enterprise members took place within the applicable

limitations period[9] and caused Plaintiffs additional harms, Plaintiffs' RICO claims seeking

---

[8]  In support of this Court's prior ruling, Plaintiffs incorporate by reference the arguments made by the *Track One* plaintiffs on this issue.  Dkt. 2179 (CT1 Ps' Opp. to SOL MSJ) at 23.  *See also Smith v. FirstEnergy Corp.*, 518 F. Supp. 3d 1118, 1126 (S.D. Ohio 2021) (noting that the "weight of authority . . . shows that equitable relief is available" for civil RICO claims); *Josephs v. Alberto Jose Marzan and Press Media Group, Inc.*, No. CV 21-0749 (JRT/DTS), 2022 WL 45041, at *7-11 (D. Minn. Jan. 5, 2022) (explaining at length its rationale for holding that "RICO allows private plaintiffs to obtain equitable relief").

[9]  Independence filed its Original Complaint on January 29, 2019, naming as defendants: Evernorth; Express Scripts Pharmacy, Inc.; Express Scripts, Inc.; UHG; Optum, Inc.; and OptumRx, Inc.  *Independence* Dkt. #1-2 ("Independence Orig. Comp.").  Thus, the four-year limitation period began no later than: (i) **January 29, 2015**, for Independence's RICO claims against these original defendants, and (ii) **December 15, 2019**, for Independence's RICO claims against the New Defendants.  Webb filed its Original Complaint on January 25, 2018, naming as defendants: Evernorth; Express Scripts, Inc.; UHG; Optum, Inc.; and OptumRx, Inc.  *Webb* Dkt. #1 ("Webb Orig. Comp.").  Webb County amended its complaint on May 25, 2018, and again on March 16, 2019.  *Webb* Dkt. #32 ("Webb Am. Comp."); *Webb* Dkt. #73 ("Webb SAC").  In its Second Amended Complaint, Webb County added ESI Mail Pharmacy Service, Inc. and Express Scripts Pharmacy, Inc. as defendants.  Webb SAC at 1.  Thus, the four-year limitation period began no later than: (i) **January 25, 2014**, for Webb's RICO claims against Evernorth, Express Scripts, Inc., UHG, Optum, Inc., and OptumRx, Inc.; (ii) **March 16, 2015**, for Webb's RICO claims against ESI Mail Pharmacy Service, Inc. and Express Scripts Pharmacy, Inc.; and (iii) **December 15, 2019**, for Webb's RICO claims against the New Defendants.

damages for such harms are timely under the separate-accrual rule. Under this rule, "the commission of a separable, new predicate act within a 4-year limitations period permits a plaintiff to recover for the additional damages caused by that act." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). Courts in this Circuit have applied the separate-accrual rule to civil RICO claims.[10] Although the Sixth Circuit has yet to explicitly adopt the rule in the civil RICO context, it has applied the rule to claims under the Clayton Act,[11] and courts look to Clayton Act cases when deciding civil RICO limitations questions. *Klehr*, 521 U.S. at 189.[12]

Here, taking their allegations as true and construing all reasonable inferences in their favor, as this Court must (*supra* at 2), Plaintiffs have plausibly alleged that Defendants and other members of the Enterprise committed predicate acts within the limitations period that caused Plaintiffs additional harm.[13] With respect to any such predicate acts committed by Defendants

---

[10] *See, e.g., James v. McCoy*, 56 F. Supp. 2d 919, 933–34 (S.D. Ohio 1998) (where plaintiff alleged certain racketeering activities took place within the four-year limitations period, RICO claim based on those activities not time-barred), *aff'd*, 181 F.3d 101 (6th Cir. 1999); *Solidstrip Inc. v. U.S. Tech. Corp.*, No. 5:21-CV-0731, 2024 WL 1177968, at *5 & n.4 (N.D. Ohio Mar. 18, 2024) ("Following persuasive district court opinions in this circuit, this Court applies the [separate-accrual rule] to civil RICO claims."); *ArmorSource LLC v. Kapah*, No. 2:18-CV-905, 2019 WL 1118023, at *9–10 (S.D. Ohio Mar. 11, 2019); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2006 WL 319022, at *6 (E.D. Tenn. Feb. 8, 2006) (applying rule in civil RICO context, noting "[a] majority of the Circuit Courts of Appeal" have done so and the "Sixth Circuit has applied the separate accrual rule in the analogous antitrust context").

[11] *See Baltrusaitis v. Intl. Union, United Automobile, Aerospace and Agric. Implement Workers of Am.*, 86 F.4th 1168, 1178 & n.2 (6th Cir. 2023) (declining to decide whether rule applies in civil RICO context because plaintiffs failed to allege they sustained any new damages during limitations period).

[12] *See also Solidstrip*, 2024 WL 1177968, at *5 n.4 (applying separate-accrual rule in civil RICO context "aligns with the general trend of courts analyzing civil RICO claims similarly to civil antitrust claims"); *Trollinger*, 2006 WL 319022, at *3.

[13] *See, e.g.,* Independence ¶¶ 2, 49-52, 61-77, 88-89, 131, 153-154, 176, 179-182, 186, 194, 230, 269-271, 274, 277, 290-295, 300, 311, 314-315, 337-338, 350, 368, 371, 376, 378, 409, 419-420, 426, 432-433, 439-455, 458, 461-465, 467-471, 474-493, 496, 530-531, 536-551, 560, 566-571, 574-608, 620-694, 771-805; Webb ¶¶ 2, 49-52, 61-76, 86-87, 129, 153-154, 175, 178-181, 185, 193, 229, 266-270, 272-273, 276 & n.35, 283, 289-294, 299, 310, 313-314, 336-337, 349, 356 n.83, 367, 370, 375, 377, 397, 399, 408, 418-419, 425, 431-432, 438-454, 457, 460-464, 466-470, 473-491, 494, 528-529, 534-549, 558-569, 572-602, 614-687, 691, 807-840.

themselves, Plaintiffs' RICO claims against those Defendants seeking damages for additional harms are timely.  Additionally, Plaintiffs' RICO claims against Defendants are timely to the extent they seek damages for Plaintiffs' additional harms caused by the predicate acts of other Enterprise members in furtherance of their conspiracy that took place within the limitations period.

Typically, a RICO conspiracy "is presumed to exist until there has been an affirmative showing that it has been terminated" or that "the purposes of the conspiracy have either been accomplished or abandoned."  *U.S. v. Saadey*, 393 F.3d 669, 677-78 (6th Cir. 2005) (citations omitted).  Moreover, the conspirators remain in the conspiracy—and remain liable for the actions of the conspiracy[14]—until they affirmatively withdraw.[15]  Here, Plaintiffs plausibly allege (and Defendants do not dispute in their Motion) that Defendants were participants in a continuing RICO conspiracy with other Enterprise members when they committed predicate acts within the limitations period that caused Plaintiffs additional harm.[16]  Moreover, Defendants offer no evidence or argument in their Motion that the RICO conspiracy terminated, or that they abandoned or withdrew from the conspiracy, more than four years prior to Plaintiffs filing their complaints.

Thus, at a minimum, Plaintiffs' RICO claims seeking damages for their additional harms caused by the predicate acts committed by any Enterprise members within the four-year limitations

---

[14] *See, e.g., Smith v. U.S.*, 568 U.S. 106, 111 (2013); *Beck v. Prupis*, 529 U.S. 494, 506–07 (2000) ("[A] plaintiff c[an], through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962(d)."); *U.S. v. Corrado*, 286 F.3d 934, 937 (6th Cir. 2002) ("[S]o long as they share a common purpose, conspirators are liable for the acts of their co-conspirators.") (quoting *Salinas v. U.S.*, 522 U.S. 52, 64 (1997)); *ArmorSource*, 2019 WL 1118023, at *9.

[15] *See, e.g., Smith*, 568 U.S. at 107, 112-13 (RICO conspirator's "membership in the ongoing unlawful scheme continues until he withdraws" through an affirmative act "to disavow or defeat the purpose' of the conspiracy") (citation omitted); *Saadey*, 393 F.3d at 678; *cf. Chiropractic Co-op. Ass'n of Michigan v. Am. Med. Ass'n*, 867 F.2d 270, 274–75 (6th Cir. 1989) (applying similar concepts in civil antitrust case).

[16] *See, e.g.,* Independence ¶¶ 185-188, 190-193, 207-213, 228, 238, 256-258, 260-262, 264, 275, 279-282, 284, 309, 340, 364, 377, 408, 459, 555-557, 562-563, 609-676, 832-844; Webb ¶¶ 184, 186-187, 189-192, 206-212, 227, 237, 255-257, 259-261, 263, 274, 278-281, 283, 308, 339, 363, 376, 407, 458, 553-555, 560-561, 603-670, 814, 862-872; *supra* fn.13.

period are not time-barred and should not be dismissed.[17]

### 3. *Plaintiffs sufficiently allege that the injury-discovery rule applies.*

Plaintiffs' RICO claims against the original PBM defendants (*supra* fn.9) are also tolled under the discovery rule. Under this rule, Plaintiffs' RICO claims for damages "accrued when they 'knew or should have known of [the] injury.'" *Baltrusaitis*, 86 F.4th at 1177 (quoting *Rotella v. Wood*, 528 U.S. 549, 553 (2000)). This determination depends on the facts and circumstances of the particular case. Dkt. #2568 (CT1 SOL MSJ Order) at 13. Defendants point to various allegations in the complaints they contend "leave no doubt that [Plaintiffs] 'knew or should have known of [the] injury' well before 2014." Mot. at 6-7. But that is only if Plaintiffs' allegations are construed in *Defendants'* favor. Plaintiffs allege that they could not have reasonably discovered their injuries until recently because "documents revealing those facts" had not yet been produced in discovery in the opioid litigation and were not publicly or otherwise available. Independence ¶ 695; Webb ¶ 692. Plaintiffs could not have discovered the scope and magnitude of their injuries earlier through reasonable diligence. Independence ¶¶ 695-703; Webb ¶¶ 692-697, 807; Webb SAC ¶¶ 685-698.[18] Taking these allegations as true, this Court cannot conclude

---

[17] *See, e.g., Solidstrip*, 2024 WL 1177968, at *10 (denying summary judgment on RICO claims based on predicate acts occurring within limitations period pursuant to the separate accrual rule); *ArmorSource*, 2019 WL 1118023, at *9–10 (denying defendant's motion to dismiss RICO conspiracy claim where complaint allegations were "sufficient to plausibly raise an inference that [the defendant's] misconduct continued through 2017, well within the four-year limitations period); *Trollinger*, 2006 WL 319022, at *7–8 ("Plaintiffs meet the requirements of the separate accrual test that each illegal hiring constitutes a new and independent act that inflicted new and accumulating injury on the Plaintiffs. . . . Therefore, the Court holds that [plaintiffs' civil RICO] claims for injury from illegal hirings occurring four years prior to the filing of the complaint are not time-barred.").

[18] Although the Webb complaint does not expressly state that Webb "could not have discovered their injuries earlier through reasonable diligence," this fact can be reasonably inferred from Webb's allegations. Webb ¶ 692 (alleging that the information needed to make that determination was not public or otherwise available to Webb until discovery occurred in other opioid litigation), ¶¶ 693-697 (alleging Defendants fraudulently concealed such information); *see also id.* at ¶ 807; Webb SAC ¶¶ 685-698. To the extent the Court is not inclined to agree, however, Webb requests leave to amend its complaint to add this allegation. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."); *Heath*

---

7

at this time that Plaintiffs *should* have known of their injuries prior to the expiration of the applicable limitations period. *Cf.* Dkt. #2568 (CT1 SOL MSJ Order) at 15-18 (fact issues as to the accrual dates of plaintiffs' RICO claims precluded summary judgment).[19]

### 4. *Plaintiffs sufficiently allege that the fraudulent concealment doctrine applies.*

Plaintiffs' RICO claims against Defendants are also tolled under the fraudulent concealment doctrine. *See Solidstrip*, 2024 WL 1177968, at *5 ("The RICO statute of limitations is tolled if the plaintiff properly invokes the fraudulent concealment exception."). In the Sixth Circuit, fraudulent concealment applies in a RICO action where the plaintiff demonstrates: "(1) defendants' wrongful concealment of their actions; (2) failure of the plaintiff to discover operative facts that are the basis of his cause of action; and (3) the plaintiff exercised due diligence in seeking out facts supporting a cause of action." *Id.; see also Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). Moreover, "where proof demonstrates a conspiracy, '[f]raudulent concealment ... may be established through the acts of co-conspirators.'" Dkt. #2568 (CT1 SOL MSJ Order) at 21 (quoting *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 980 (N.D. Ohio 2015)). Whether fraudulent concealment applies is a factual issue that generally should not be resolved on a motion to dismiss. *See Am. Premier*, 839 F.3d at 464.[20]

The complaints allege at length how, despite Plaintiffs' due diligence, Defendants wrongfully prevented Plaintiffs from learning of Defendants' misconduct, Plaintiffs' injuries, and

---

*v. Highlift Equip., Ltd.*, No. 1:19-CV-134, 2020 WL 5506572, at *1 (S.D. Ohio Sept. 11, 2020) ("The thrust of Rule 15 is that cases should be tried on their merits rather than the technicalities of pleadings.") (cleaned up).

[19] This case is therefore distinguishable from *Baltrusaitis* where the plaintiffs admittedly learned of their injuries nine years before filing suit and offered no explanation for the delay. 86 F.4th at 1178-79.

[20] *See also, e.g., Unitedhealthcare Services, Inc. v. Team Health Holdings, Inc.*, No. 321CV00364DCLCJEM, 2022 WL 1481171, at *5 (E.D. Tenn. May 10, 2022) (denying motion to dismiss because it was "not possible—at this stage—to determine when the statute of limitations expired because United has alleged that TeamHealth engaged in a cover-up that prevented it from discovering TeamHealth's scheme . . .").

the related pattern of racketeering activity.  *See, e.g.,* Independence ¶¶ 74, 640, 683, 686, 695-703, 768, 771, 773-774; Webb ¶¶ 73, 634, 692-697, 770, 745, 807; Webb SAC ¶¶ 685-698.[21]  This Court has consistently declined to dismiss claims on limitations grounds where plaintiffs asserted similar facts.  *See, e.g.,* Dkt. #1203 (CT1 MTD Order) at 4; Dkt. #2568 (CT1 SOL MSJ Order) at 22; Dkt. #3177 (*Cleveland Bakers* MTD Order) at 11-13; Dkt. #1499 (*Muscogee* R&R) at 15, *adopted in relevant part*, Dkt. #1680 (*Muscogee* MTD Order) at 2.

Defendants argue fraudulent concealment is not itself enough to toll the RICO limitations period; rather, Plaintiffs must also allege "that Defendants had prevented Plaintiffs from *knowing that they had been injured*."  Mot. at 7 (citing *Baltrusaitis*, 86 F.4th at 1178).  They are wrong.  In *Baltrusaitis*, the Sixth Circuit said that, in order to invoke equitable tolling, "the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment."  86 F.4th at 1178.  Nothing in *Baltrusaitis* suggests that a plaintiff that knows it has been injured, but, despite due diligence, is unable to identify one or more of the parties responsible because of a defendant's wrongful concealment of its role, is precluded from invoking fraudulent concealment to extend that limitations period.[22]  Moreover, "in evaluating the due-diligence element, the court should evaluate [the defendant's] acts of active concealment as a factor in determining whether the plaintiff's investigation was reasonable under the circumstances."  *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 447 (6th Cir. 2012).  Thus,

---

[21]  Plaintiffs contend these allegations are more than sufficient to preclude dismissal on statute of limitations grounds at this time.  However, to the extent the Court disagrees, Plaintiffs respectfully request leave to amend to add more detailed allegations.  *See* FED. R. CIV. P. 15(a)(2); *Heath*, 2020 WL 5506572, at *1.

[22]  In *Baltrusaitis* itself, the plaintiff learned of its injury nine years before filing suit, learned of the bribery scheme underpinning its claims *six years later*, and filed suit three years after that; plaintiff offered "no explanation for the delay."  86 F.4th at 1178.  Nor did the Court in *Baltrusaitis* suggest that its discussion of equitable tolling was meant to modify in any way its prior holdings on fraudulent concealment.

Plaintiffs sufficiently allege fraudulent concealment such that this Court cannot, at this time, conclude as a matter of law that their RICO claims are time-barred.[23]

### 5. *Plaintiffs' RICO claims against the New Defendants are not time-barred.*

Contrary to Defendants' assertions, Plaintiffs' RICO claims against the New Defendants are not time-barred. In addition to the reasons discussed in § I.A.1-2 & 4 above, equitable tolling applies to preclude dismissal of these claims.[24] This doctrine applies if Plaintiffs can demonstrate (i) they pursued their rights diligently, and (ii) "some extraordinary circumstance stood in [their] way and prevented timely filing." Dkt. #2568 (CT1 SOL MSJ Order) at 18 (citing *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011)). The applicability of equitable tolling depends on the circumstances of the particular case. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 519 (6th Cir. 2007).

---

[23] Defendants' citation (at 8) to *Nice v. City of Akron*, No. 5:21-CV-1887, 2023 WL 1766116 (N.D. Ohio Feb. 3, 2023), is inapposite. The quoted language discusses the legal test for determining the accrual date of a RICO cause of action. *Id*. at *10. But when a cause of action accrues is a different question than whether the applicable limitations period should be tolled under the fraudulent concealment or equitable tolling doctrines. *Nice* does not stand for the proposition that the limitations period cannot be tolled under these doctrines when the plaintiff lacks knowledge of a particular defendant's role in the wrongful conduct. *Nice* is also factually distinguishable, as the plaintiffs in that case were aware of the defendants' roles in the wrongdoing more than four years prior to bringing suit and they alleged no facts in their complaint "that ma[d]e out a discovery rule, equitable tolling, concealment, or any other basis to deem the Complaint timely." *Id.* at *11-12.

[24] Defendants also argue that Plaintiffs' RICO claims against the New Defendants do not relate back to their Original Complaints under Federal Rule of Civil Procedure 15(c)(1)(C), relying on Sixth Circuit precedent and a prior ruling from this Court in this MDL. Mot. at 10-11 (citing *Zakora v. Chrisman*, 44 F.4th 452, 480, 482 (6th Cir. 2022) and Dkt. #739 (Order re: Ps' Mot. to Modify CMO-1) at 5-6)). Plaintiffs understand this Court is bound by current Sixth Circuit precedent and, thus, do not seek to re-litigate this issue in this Opposition. However, Plaintiffs do not waive and expressly preserve their right to argue on appeal that the Sixth Circuit's narrow interpretation of Rule 15(c)(1)(C) is incorrect and inconsistent with the United States Supreme Court's opinion in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010). *See, e.g., Erie Indem. Co. v. Keurig, Inc.*, No. 1:10-CV-02899, 2011 WL 2893013, at *3 (N.D. Ohio July 15, 2011); *Abdell v. City of New York*, 759 F. Supp. 2d 450, 456-57 (S.D.N.Y. 2010).

10

Here, equitable tolling applies to Plaintiffs' RICO claims against the New Defendants.[25] Plaintiffs pursued their rights as diligently as could be expected given Defendants' fraudulent concealment of the New Defendants' roles in the RICO Enterprise. Independence ¶¶ 695-703; Webb ¶¶ 692-697, 807; Webb SAC ¶¶ 685-698. Defendants argue that equitable tolling applies only if their fraudulent concealment prevented Plaintiffs from discovering their *injuries* during the limitation period. Not so. *See supra* at 9; *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009) ("In order to establish equitable tolling by the doctrine of fraudulent concealment, the plaintiffs must allege and establish that: 1) defendants concealed *the conduct* that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering *the cause of action* within the limitations period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about *the cause of action*.") (emphasis added); *Zelaya v. Hammer*, No. 3:19-CV-62, 2022 WL 16757083, at *7 (E.D. Tenn. Jan. 26, 2022) ("The [equitable tolling] doctrine's application is appropriate 'when the plaintiff knows he was injured yet was unable to learn the wrongdoer's identity, despite all reasonable diligence.").[26] Moreover, equitable tolling may apply even when the defendant took no action whatsoever to prevent the plaintiff's discovery of its

---

[25] Defendants imply that Independence has not invoked the federal doctrine of equitable tolling because it only references a state tolling statute (MO. REV. STAT. ANN. § 516.280) in its Amended Complaint. Mot. at 11. But they ignore Independence's allegations as a whole, which clearly plead plausible facts to support equitable tolling of its claims. Independence ¶¶ 694-703. It is these factual allegations that determine whether Independence has plausibly pled that its claims should be equitably tolled. *See Knapp v. City of Columbus*, 93 Fed. Appx. 718, 720 (6th Cir. 2004) (unpublished) ("The court's duty is to look to the facts and grant the necessary relief as justice requires—not to demand that certain citations or phrases are used.").

[26] *See also, e.g., Farmer v. Home Depot USA, Inc.*, No. A-10-CA-591-SS, 2011 WL 13324391, at *4 (W.D. Tex. May 16, 2011) (equitable tolling applied "because it is not in the interest of justice to allow a defendant to obscure the identities of other possible defendants, either deliberately or inadvertently, when a plaintiff would have no independent knowledge of those defendants"); *compare Baltrusaitis*, 86 F.4th at 1178-79 (plaintiffs RICO claims not subject to equitable tolling where they "learned of their injuries as early as 2011 *and learned of the bribery allegations in July 2017* but waited until October 2020 to file their complaint, with no explanation for the delay") (emphasis added).

action.[27]

Here, extraordinary circumstances—in the form of a multi-year moratorium imposed by this Court—prevented Plaintiffs from filing their Amended Complaints and naming the New Defendants until after they were selected as PBM Bellwether Plaintiffs on October 27, 2023.[28] Before that, Plaintiffs were allowed to amend their complaints by March 16, 2019, to add or subtract Defendants based on ARCOS data, which was not applicable to the New Defendants. *Id.* at 2; Dkt. #1282 (Order on Short Form Complaints) at 2. "At *all* other times, no MDL plaintiff could amend its complaint without first being selected as a bellwether." Dkt. #5319 (Order on M to Amend) at 2-3 (emphasis in original). Plaintiffs did not learn about the New Defendants' roles in the wrongful conduct until after they received critical documents from various entities in opioid litigation discovery. For example, the discovery produced in the *Jefferson County v. Williams, et al.*, case provided extensive information about the New Defendants' roles, but that discovery did not begin until *after* that case was remanded to Missouri state court by this Court on July 24, 2019. Dkt. #1987 (Order of Remand). Plaintiffs promptly moved to amend their complaints as soon as they were selected as PBM bellwether cases. In fact, Webb had previously sought leave to amend its complaint to add several of the New Defendants more than eight months prior to its case being selected as a bellwether. *Webb* Dkt. #103 & 103-1.[29] This Court denied that motion on March 20,

---

[27] *See Friedmann v. Campbell*, 202 F.3d 268, at *2 (6th Cir. 1999) ("The doctrine of equitable tolling permits a plaintiff to sue after the statute of limitations has expired if, through no fault or lack of diligence on his part, he was unable to sue before, even though the defendant took no active steps to prevent him from suing. This doctrine is applied appropriately when the plaintiff knows he was injured yet was unable to learn the wrongdoer's identity, despite all reasonable diligence.") (internal citation omitted).

[28] *See* Dkt. #5319 (Order on M to Amend) at 2-3 (noting PBM Bellwether Plaintiffs' December 2023 motion seeking leave to amend the operative PBM Bellwether Complaints was not untimely "[b]ecause the "PBM Bellwether Plaintiffs had no earlier opportunity to amend their PBM Bellwether complaints with PBM-specific claims or to add PBM-specific entities").

[29] Webb's proposed Third Amended Complaint would have added the following New Defendants: OptumInsight Life Sciences, Inc.; OptumInsight, Inc.; Express Scripts Administrators, LLC; Express Scripts Specialty Distribution Services, Inc.; and Medco Health Solutions, Inc. *Webb* Dkt. #103-1 at ¶¶ 62, 66, 85, 103, 106.

2023.  Dkt. #5319 (Order on M to Amend) at 3 n.2 (citing 3/20/23 non-document Order (denying similar motion without prejudice and noting that the plaintiff "can raise this issue again, if appropriate, after the PBM bellwether cases are chosen").

Accordingly, in these unique circumstances, the facts suggest that equitable tolling might apply such that the Court, at this stage of proceedings, should not dismiss Plaintiffs' RICO claims against the New Defendants as time-barred.

### B.   Plaintiffs Sufficiently Allege Injuries to Business or Property.

Plaintiffs allege that Defendants' wrongdoing in creating the opioid epidemic has injured them in their business and property because Plaintiffs have: (1) borne extraordinary costs to provide additional public services; (2) been forced to purchase naloxone; (3) suffered diminished property values; and (4) lost tax revenue.  Each of these constitutes a cognizable injury to "business or property" within the meaning of RICO.  This Court has already held as much for the first two injuries in a nearly identical context.  Similar reasoning applies to the latter two injuries.  Defendants identify no change in binding authority that would support a different result.

#### 1.   *This Court previously recognized that extraordinary costs of public services and costs for purchasing Naloxone are cognizable RICO injuries.*

Defendants, relying almost exclusively on *Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969 (9th Cir. 2008), contend that Plaintiffs' increased expenditures for public services are not injuries to "business or property."  Mot. at 15-18.[30]  As explained below, however, this Court has

---

[30]  Defendants also cite to *Hawaii v. Stand. Oil Co. of Cal.*, 405 U.S. 251 (1972).  But in *Hawaii*, the Supreme Court addressed what constituted an "injury to business or property" under the *Clayton Act* and held that only injuries to commercial interests or enterprises were cognizable under *that statute*.  *Id*. at 252-53, 264.  This Court has previously rejected the argument that *Hawaii* precludes the types of RICO injuries alleged in the present case.  Dkt. #1025 (CT1 R&R) at 16-17, *adopted in relevant part*, Dkt. #1203 (CT1 MTD Order) at 17-20.  *See also Illinois Dept. of Revenue v. Phillips*, 771 F.2d 312, 314 (7th Cir. 1985) ("While the Supreme Court held that the 'business and property' phrase in the Clayton Act refers only to commercial interests and competitive injuries, this is not the case under RICO[.]") (internal citation omitted).

already rejected that argument.  And Defendants make no argument that the law or circumstances in this Circuit have changed such that this Court should now revisit that ruling.[31]

In the *Track One* cases, this Court found the Ninth Circuit's holding in *Canyon* to be inapplicable to the governmental plaintiffs' RICO claims based on their extraordinary costs to abate the opioid crisis because "neither the Sixth Circuit nor the Supreme Court have adopted [its] holding."  Dkt. #1203 (CT1 MTD Order) at 17-20.  That fact has not changed.  Defendants may wish this case were being litigated in the Ninth Circuit, but no amount of out-of-circuit arguments can make that so.  The law governing this Court has not changed since *Track One*, and neither should the outcome of this identical issue.  This alone should end the inquiry.

This Court also rejected the argument that *Canyon* endorsed "a bright line rule" that "governmental entities are barred from seeking RICO claims for [any] services provided in their sovereign or quasi-sovereign capacities."  *Id*. at 19.  Instead, this Court more narrowly interpreted *Canyon's* statement "that governmental entities are not injured in their property based *solely* on the expenditure of money to act governmentally," to mean that "governmental entities might be able to assert an injury to their property based on the expenditure of money plus something else, perhaps, for example, the assumption of a statutory burden relinquished by a defendant."  *Id*.  Because the *Track One* plaintiffs alleged that "Defendants have forced Plaintiffs to go far beyond what a governmental entity might ordinarily be expected to pay to enforce the laws or promote the general welfare," this Court held they alleged a cognizable RICO injury even under *Canyon*.  *Id*.[32]  This Court further observed that *Canyon* permits government plaintiffs to bring RICO claims based on "costs associated with doing business in the marketplace" and that the *Track One* plaintiffs'

---

[31] Indeed, Defendants seemingly ignore this Court's stated "inten[t] to adhere to all formal rulings made in the prior MDL tracks" and its warning that parties should only make "***new*** arguments that are meaningfully different from those raised earlier and resolved in prior Court rulings." Dkt. #5282 (PBM CMO) at 3 (emphasis in original).

[32] This Court's decision is consistent with decades of Supreme Court precedent recognizing that "RICO is to be read broadly" and "liberally construed to effectuate its remedial purposes." *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 497-98 (1985).

costs in "purchasing naloxone to prevent future fatal overdoses" qualified as such a RICO injury. Dkt. #1203 (CT1 MTD Order) at 19-20.[33]

Plaintiffs here allege the same injuries to "business or property" held to be cognizable injuries in *Track One*. Plaintiffs allege they have incurred extraordinary expenditures for public services to abate the opioid crisis. Independence ¶¶ 66-69, 88-89, 591-593, 801(c), (e)-(f); Webb ¶¶ 65-68, 86-87, 581-587, 836(c)-(d), (f)-(k). Plaintiffs also allege that, because of Defendants' conduct and the resulting opioid crisis, they have been forced to buy naloxone to respond to opioid overdoses. Independence ¶ 801(d); Webb ¶ 836(e). The cost of purchasing naloxone to revive residents suffering otherwise life-ending opioid overdoses is not an ordinary government expenditure; absent the opioid crisis that was the known consequence of the RICO scheme, it would not have been made. In other words, prior to the opioid epidemic, naloxone was not a line item in a typical city budget. The forced expenditure of naloxone is therefore an independent injury sufficient to support Plaintiffs' RICO claims.

Because this Court already recognized these exact injuries as cognizable RICO injuries under Sixth Circuit (and even Ninth Circuit) law, it should deny Defendants' motion to dismiss Plaintiffs' RICO claims.

### 2.   *The other out-of-circuit cases cited by Defendants do not compel a different result.*

Defendants urge this Court to revisit its analysis of what constitutes a "business or property" injury in light of two recent opinions: *City & County of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610 (N.D. Cal. 2020), and *City of Almaty v. Khrapunov*, 956 F.3d 1129 (9th Cir. 2020). Mot. at 17-18. But neither of those authorities is binding on this Court. In any event, neither decision counsels a different result here.

In *San Francisco*, Judge Breyer addressed whether public entities can state a RICO claim

---

[33] This Court has consistently adhered to its *Track One* ruling throughout this MDL. *See, e.g.,* Dkt. #3285 (*Monroe* MTD Order) at 27-29; Dkt. #3274 (*Broward* MTD Order) at 13; Dkt. #3253 (*West Boca* MTD Order) at 25; Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 22-23.

based on extraordinary expenditures for public services necessitated by the opioid epidemic, and concluded they cannot, based in part on *Canyon*.  491 F. Supp. 3d at 648-650.  Of course, he was bound by Ninth Circuit law.  *Id*. at 649 (distinguishing *Track One* decision as being based on Sixth Circuit law).  Regardless, Defendants' gloss on Judge Breyer's interpretation of *Canyon*, and its implications for this case, is incomplete.  As Judge Breyer recognized, this Court read *Canyon's* statement that "'a governmental body . . . cannot claim to have been injured in its . . . property for RICO purposes based *solely* on the fact that it has spent money in order to act governmentally'" to mean that "governmental entities *could* assert a cognizable injury to their property based on expenditures and 'something else.'"  *Id*. at 650 (cleaned up) (quoting Dkt. #1203 (CT1 MTD Order) at 18-19 (quoting *Canyon*, 519 F.3d at 976)).  In contrast, Judge Breyer's contrary conclusion turned on *Canyon's* use of the word "solely" in a different sentence, in which "solely" differentiated between government expenditures for services and the government services themselves, and whether the latter could serve as an alternate basis for a property interest.  *Id*. ("As the County cannot satisfy the requirement of injury to a 'specific property interest' based *solely* on its expenditure of money to provide public services, we must examine whether the County can claim a property interest in the services *themselves*.") (citing *Canyon*, 519 F.3d at 977). Judge Breyer did not provide an alternate interpretation of the language this Court relied upon.  *Id*.

Defendants highlight (at 17-18) Judge Breyer's observation that "nothing" in *Canyon* "suggests that the Ninth Circuit distinguished between 'extraordinary costs' and 'ordinary costs[.]'" 491 F. Supp. 3d at 651.  But this Court did not hold that extraordinary expenses, by themselves, were sufficient to allege a RICO injury.  Rather, it concluded that *Canyon* permitted a RICO injury based on extraordinary government expenditures for services that *would not have been provided in the absence of defendants' wrongdoing*.  Dkt. #1203 (CT1 MTD Order) at 19. No subsequent opinion has refuted or otherwise addressed that important distinction.  Moreover, Defendants' broad interpretation of *Canyon* mistakenly relies on *Almaty*.  Mot. at 17.  But in *Almaty* the Ninth Circuit specifically declined to rule whether the plaintiff lacked RICO standing based on "injuries sustained in its sovereign capacity" because the defendant waived the argument.

956 F.3d at 1134. Instead, the *Almaty* ruling turned on lack of proximate cause. *Id.* at 1130, 1133. In short, *San Francisco* and *Almaty* cast no doubt on this Court's previous conclusion that, as a matter of Sixth Circuit (or Ninth Circuit) law, extraordinary government expenditures can be cognizable RICO injuries.

Defendants' reliance on Fifth and Second Circuit cases fares no better. Mot. at 18 (citing *Welborn v. Bank of N.Y. Mellon Corp.*, 557 Fed. Appx. 383 (5th Cir. 2014) (unpublished) and *Town of West Hartford v. Operation Rescue*, 915 F.2d 92 (2d Cir. 1990)). This Court is bound by Sixth Circuit law when construing federal law.[34] But even if Fifth Circuit precedent were somehow applicable in the *Webb* case, *Welborn* (an unpublished, non-precedential case) did not address whether a public entity's *extraordinary* costs, like those borne by Plaintiffs here, could qualify as an injury to property for RICO purposes. 557 Fed. Appx. at 385-88 & n.*. Nor did *Hartford*. 915 F.2d at 103-04. Moreover, the Second Circuit has since clarified that the relevant language in *Hartford* (found at 915 F.2d at 103–04), is merely *dicta*.[35]

Finally, Defendants rely on *San Francisco* to suggest that Plaintiffs' alleged costs for Naloxone or in purchasing or reimbursing prescription opioids are not cognizable costs of doing business in the marketplace within the meaning of *Canyon*. Mot. at 19. But costs for purchasing or reimbursing prescription opioids were not at issue in *San Francisco*, and, as explained above, this Court already rejected a broad reading of *Canyon* that would exclude costs made by a government entity as a consumer in the marketplace. Dkt. #1203 (CT1 MTD Order) at 20.

---

[34] *See, e.g., In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 (6th Cir. 2003) (in MDL proceeding, transferee court applies the substantive federal law of the circuit in which it is located); Dkt. #1499 (*Muscogee* R&R) at 21 n.15 (applying rule in RICO context), *adopted in relevant part*, Dkt. #1680 (*Muscogee* MTD Order) at 22-23.

[35] *See Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 132 n.40 (2d Cir. 2001); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 445 (2d Cir. 2008) ("We see no reason to import an additional standing requirement on municipalities for RICO claims, and thus expressly reject our dicta to the contrary in *Town of West Hartford*."), *rev'd and remanded on other grounds sub nom. Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010).

### 3.  Plaintiffs also allege cognizable injuries to real property.

Plaintiffs also allege they suffered injury to real property, in particular diminished real property values.  *See, e.g.*, Independence ¶¶ 608, 693, 752, 789, 800, 801(h)-(i) (diminished property values); Webb ¶¶ 602, 687, 731, 792, 825, 831, 835, 836(m)-(n) (diminished property values).  Defendants do not argue that diminished real property values are not a cognizable RICO injury.  Instead, they argue only that Plaintiffs have not identified specific real property that lost value.  Mot. at 19.  But at this stage in the proceedings Plaintiffs are not required to do so, just as they would not be required at this stage to allege the specific amounts of their damages.[36]  It is sufficient that Plaintiffs have identified a specific injury in the form of diminished property values.  Plaintiffs are not required to plead their injuries with particularity under Rule 9(b).  *See infra* at 20-21.  And Defendants notably cite no legal authority supporting the proposition that Plaintiffs are required to identify specific real property in order to "plausibly" allege injuries to their real property interests.[37]

### 4.  Lost tax revenues are also a cognizable injury to business or property.

Plaintiffs also allege loss of tax revenue due to the opioid crisis in their communities.  Independence ¶ 801(g)-(i); Webb ¶ 836(l)-(n).  These costs constitute RICO injuries to business or property.  Dkt. #1025 (CT1 R&R) at 13-15.[38]

---

[36]  *See, e.g.*, *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1020 (S.D. Ohio 2021) ("Plaintiffs need not quantify or prove their damages at [the motion to dismiss stage of] the litigation."); *Potomac Elec. Power Co. v. Electric Motor & Supply, Inc.*, 262 F.3d 260, 265-66 (4th Cir. 2001) (RICO plaintiff need not allege quantity of damages); *cf. Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791-92 (3d Cir. 1984) (plaintiff need not allege specific evidentiary details needed to prove his claim at trial to satisfy Rule 9(b)).

[37]  *Sedima* did not address the pleading standards governing real property injuries under RICO. 473 U.S. at 484, 495-500.  And in *San Francisco*, Judge Breyer simply held that the plaintiff's allegation that it had "suffered '[i]ncreased costs associated with the destruction of city property and public infrastructure' related to improper needle and syringe disposal" alleged a cognizable RICO injury.  491 F. Supp. 3d at 651.

[38]  *See also Reiter v. Sonotone Corp.*, 442 U.S. 330, 338 (1979) ("Money, of course, is a form of property."); *Smokes-Spirits*, 541 F.3d at 445 ("lost taxes can constitute injury to 'business or property' for purposes of RICO"); *Illinois Dept. of Revenue*, 771 F.2d at 314 ("In this case, the

Defendants' cited authorities (at 18-19) are not to the contrary.  In *Hemi*, the Supreme Court upheld the dismissal of a city's RICO claim based on the lack of proximate cause, expressly declining to decide "whether the City's allegations of lost tax revenue constitute[d] an injury to its 'business or property.'"  559 U.S. at 8.  *Anza v. Ideal Steel Supply Corp.* did not involve a governmental plaintiff at all, but rather a RICO claim brought by one business competitor against another.  547 U.S. 451, 453-54, 457-58 (2006) (plaintiff alleged it was harmed when defendants defrauded the state by not charging their customers sales tax, which in turn allowed defendants to charge lower prices leading to plaintiff's loss of sales).  And, as in *Hemi*, the RICO claim in *Anza* was ultimately dismissed for lack of proximate cause.  *Id*. at 461.  Indeed, the Supreme Court noted that the state, not the plaintiff, was the direct victim of the defendants' wrongful conduct.  *Id*. at 458 ("It was the State that was being defrauded and the State that lost tax revenue as a result."), 460.  Finally, *Welborn* is unpublished, non-precedential, and improperly relies on the Supreme Court's determination in *Hawaii* that an injury to business or property *under the Clayton Act* "requires that the injury 'refer to commercial interests or enterprises.'"  557 Fed. Appx. at 387 (quoting *Hawaii*, 405 U.S. at 264)).  As previously noted, this Court has already rejected *Hawaii's* applicability to RICO injuries such as those alleged in this case.  *Supra* at fn.30.

### 5.  *Plaintiffs adequately alleged they were harmed as consumer market participants.*

Defendants argue that the allegations that Plaintiffs were injured as consumer market participants were not pled "plausibly, let alone with the particularity required by Federal Rule of Civil Procedure 9(b) for such allegations sounding in fraud."  Mot. at 19-20.  Not so.

As a preliminary matter, not all of Plaintiffs' RICO claims are based on fraud.  Plaintiffs

---

Illinois Department of Revenue has been injured in its property to the extent it has been defrauded out of $14,500 in unpaid taxes."); *City of New York v. FedEx Ground Package System, Inc.*, 91 F. Supp. 3d 512, 524–25 (S.D.N.Y. 2015) (lost tax revenue is cognizable injury to business or property under RICO); *City of New York v. Gordon*, 1 F. Supp. 3d 94, 113 (S.D.N.Y. 2013) (city's complaint alleging lost tax revenue "easily satisfies [RICO's injury to business or property] element"); *European Community v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 492-93 (E.D.N.Y. 2001) ("[I]njuries in the form of lost tax revenues . . . are at bottom, claims for lost money.").

also allege RICO claims based on Defendants' violations of the Controlled Substances Act (CSA). Independence ¶¶ 779-782, 783(c); Webb ¶¶ 815-818, 819(c); *see also* 18 U.S.C. § 1961(1)(A), (D).  Such claims need not be pled with particularity under Rule 9(b).  *See J. v. Nelson*, No. 3:19-CV-185, 2019 WL 6971371, at *1 (E.D. Tenn. Dec. 19, 2019) ("Rule 9(b)'s heightened pleading standard applies to RICO claims that involve allegations of fraud, but Rule 8 notice pleading remains the standard for non-fraud RICO predicate offenses."); *Shoultz v. Derrick*, 369 F. Supp. 3d 1120, 1126 n.2 (D. Or. 2019) ("Plaintiffs satisfy the pleading standard based on their allegations regarding the predicate crimes of violations of the [CSA].  The Court notes, however, that allegations of money laundering may constitute a predicate act involving fraud, in which case the heightened standard of Rule 9(b) would apply.").[39]

And even with respect to Plaintiffs' RICO claims based on mail and wire fraud, Rule 9(b) requires only that "the circumstances constituting fraud" be pled with particularity.  Fᴇᴅ. R. Cɪᴠ. P. 9(b).  Plaintiffs are not required to plead their *injuries* with particularity.  *See, e.g., Heath*, 2020 WL 5506572, at *2 ("[T]he heightened pleading standard of Rule 9(b) does not apply to damages."); *Hitachi Med. Sys. Am., Inc. v. Horizon Med. Group*, No. 5:07CV02035, 2008 WL 11380212, at *4 & n.5 (N.D. Ohio Feb. 8, 2008) ("Under Rule 9(b), however, Plaintiff is not required to allege damages with particularity in the complaint.").[40]

---

[39] *See also, e.g., McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (court erred in "applying the stringent pleading requirements of rule 9(b)" to predicate act of attempted extortion); *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815, 846 (W.D. Tex. 2017) ("When the predicate acts of a RICO claim do not involve fraud, however, Rule 9(b) does not apply."); *Progressive N. Ins. Co. v. Alivio Chiropractic Clinic, Inc.*, No. 05-0951 PAM/RLE, 2005 WL 3526581, at *3 (D. Minn. Dec. 22, 2005) ("Plaintiffs have alleged at least two non-fraudulent predicate acts by [the defendant]: acts of witness tampering.  These acts need not be pled with particularity under Rule 9(b)[.]").

[40] Defendants cite *Wall v. Michigan Rental*, 852 F.3d 492 (6th Cir. 2017), to support their argument (Mot. at 19), but that case does not stand for the proposition that RICO *injuries* must be pled with particularity.  Rather, the court dismissed the plaintiff's RICO claim in *Wall*, which was based on predicate acts of wire, mail, and bank fraud, because the plaintiff failed to allege (1) any misrepresentation, and (2) a plausible fraudulent scheme.  *Id.* at 496-97.

Defendants rely on *U.S. ex rel. Owsley v. Fazzi Associates, Inc.*, 16 F.4th 192 (6th Cir. 2021), for the proposition that Plaintiffs are required to (i) identify "specific reimbursements that they paid that they would not have paid but for Defendants' conduct" and (ii) "connect the dots from Defendants' allegedly false representations to their payment of . . . specific claim[s]." Mot. at 19-20. But *Owsley* addressed claims under the False Claims Act (FCA), not RICO. 16 F.4th at 194. Contrary to Defendants' assertions, FCA claims are not "analogous" to RICO claims. The FCA imposes liability on defendants who knowingly present, or cause to be presented, a false or fraudulent claim for payment or approval to the federal government. *Id*. at 196. Liability attaches "not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment." *Id*. (citation omitted). Thus, some courts have held that, for an FCA claim to satisfy Rule 9(b), the complaint must identify at least one false claim with specificity. *Id*.

Unlike FCA liability, RICO liability is not dependent on a false claim for payment. Under 18 U.S.C. § 1962(c), RICO liability attaches when a defendant conducts or participates in the conduct of an enterprise's affairs through a pattern of racketeering activity. When the alleged racketeering activity involves mail or wire fraud, Rule 9(b) may be satisfied when the plaintiff alleges "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications[.]" Dkt. #1025 (CT1 R&R) at 40-41 (quoting *In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (noting that in "complex civil RICO actions involving multiple defendants" "Rule 9(b) requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme")). Here, Plaintiffs plead extensive details regarding the Formulary & UM Enterprise's fraudulent scheme, Defendants' roles in that scheme, and how the use of mail and/or wire communications furthered that scheme. *See, e.g.,* Independence ¶¶ 1-77, 90-493, 594-693; Webb ¶¶ 1-76, 88-491, 588-687.

Defendants also claim in passing that Plaintiffs do not even "plausibly" allege their injuries as consumer market participants. Mot. at 19. They offer no argument or explanation in support

of this conclusory statement and, thus, the argument should be deemed waived.[41]  But even assuming, *arguendo*, that this argument was adequately briefed, it is without merit.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Here, Plaintiffs specifically allege that Defendants' racketeering activities caused their injuries, including: (1) "[l]osses caused by purchasing and/or paying reimbursements for the Formulary & UM Enterprise Defendants' prescription opioids, that Plaintiff would not have paid for or purchased but for the Formulary & UM Enterprise Defendants' conduct;" and (2) "[c]osts associated with providing police officers, firefighters, and emergency and/or first responders with naloxone, an opioid antagonist used to block the deadly effects of opioids in the context of overdose[.]"  Independence ¶¶ 799-800, 801(a), (d), 802-803; Webb ¶¶ 835, 836(a), (e), 837-838.

Finally, Defendants argue that Plaintiffs improperly "lump Defendants together instead of explaining each of their alleged roles in inducing Plaintiffs to pay claims" and that "[s]uch group pleading is insufficient at all times—but especially so when dealing with allegations of fraud." Mot. at 20.  Again, not all of Plaintiffs' RICO claims are predicated on fraud.  But even as to those that are, Plaintiffs plead each Defendant's role in the fraudulent scheme with sufficient particularity.  *See, e.g.,* Independence ¶¶ 1-77, 90-493, 594-693; Webb ¶¶ 1-76, 88-491, 588-687. As the Sixth Circuit has noted, "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim."  *Williams v. Duke Energy Intern., Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) ("[T]his court has held that '[i]t is a principle of basic fairness that a plaintiff should have

---

[41]  *See, e.g.,* Dkt. #2565 (CT1 Preemption MSJ Order) at 20 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."; "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted); *Northgate Lincoln-Mercury Inc. v. Ford Motor Co.*, 507 F. Supp. 3d 940, 947 (S.D. Ohio 2020) (same); *Doe v. The Ohio State U.*, 136 F. Supp. 3d 854, 867 (S.D. Ohio 2016) (same).

an opportunity to flesh out her claim through evidence unturned in discovery.'") (citation omitted). *See also* Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 4 (same); Dkt. #1025 (CT1 R&R) at 42 ("Plaintiffs cannot be expected to plead the minutiae of their case without the benefit of discovery."). Moreover, this Court has previously noted that "[t]he sufficiency of a fraud pleading tends to vary with the complexity of the transaction in question in the litigation" and "[w]hen the issues are complicated or the transactions cover a long period of time, a number of federal courts have required less of the pleader." Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 3 (citation omitted). *See also* Dkt. #1025 (CT1 R&R) at 39.

*Hoover v. Langston Equip. Associates, Inc.*, cited by Defendants (at 20), is distinguishable. 958 F.2d 742 (6th Cir. 1992). In *Hoover*, the court dismissed federal *securities fraud* claims brought against "an array of limited partnerships, general partnerships, corporations, corporate officers, individuals who are partners in general partnerships, and a law firm that issued tax opinions" *on limitations grounds*. *Id*. at 743-45. The court further noted, *in dicta*, that the plaintiffs failed to allege "with specificity who had made particular misrepresentations and when they were made but rather . . . articulated general averments of fraud attributed to 'the defendants.'" *Id*. at 745 ("The complaint identifies relationships between various of the defendants but it alleges misrepresentations without sufficiently identifying which defendants made them. The complaint does not enable a particular defendant to determine with what it is charged.").[42]

This Court has previously indicated its disinclination to apply the group pleading doctrine outside the securities litigation context. Dkt. #1680 (*Muscogee/Blackfeet* MTD Order) at 4-5. And it has also rejected the argument that Plaintiffs are required to separately reiterate their allegations against each defendant that has participated in the same wrongful conduct. *Id.* at 5 (adopting Dkt. #1499 (*Muscogee* R&R) at 25-26 ("Those decisions [cited by Defendants] do not stand for

---

[42] Although the court also dismissed the plaintiffs' civil RICO claims, it did so solely on limitation grounds. *Id*. The defendants argued that the plaintiffs failed "to allege with specificity the enterprise and the pattern of racketeering pursuant to Rule 9(b)" but the court expressly declined to address that issue. *Id*. ("We need not address this issue since the count is time-barred.").

the proposition that where [all of the] multiple defendants are alleged to have engaged in the same pattern of conduct or conspired in a fraudulent scheme, that a plaintiff must reiterate its allegations against each defendant individually. Such a finding would exponentially increase the length of the pleadings while adding no substantive value.")). Judge Breyer held the same in *San Francisco*. 491 F. Supp. 3d at 646-47 ("There is no flaw in a pleading . . . where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct.") (citation omitted).[43]

In sum, Plaintiffs adequately allege cognizable injuries to business and property under Sixth Circuit law such that this Court should deny Defendants' motion to dismiss the RICO claims.

## II. PLAINTIFFS SUFFICIENTLY ALLEGE CLAIMS AGAINST THE PARENT COMPANY DEFENDANTS.[44]

Defendants move to dismiss the Parent Company Defendants, arguing Plaintiffs failed to plead facts "(1) showing that the Parent Company Defendants were direct participants in the alleged wrongdoing or (2) to justify piercing the corporate veil." Mot. at 21. As explained below, both arguments fail.[45]

---

[43] *See also, e.g., BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 853–54 (N.D. Ill. 2021) (rejecting argument that "pleadings [we]re deficient because Plaintiffs 'lumped together' the parties"; "Here, Walgreens consists of a company and its parent corporation. Other courts have uniformly denied similar arguments."); *U.S. v. Supervalu, Inc.*, 218 F. Supp. 3d 767, 771–72 (C.D. Ill. 2016) (rejecting defendants' argument that the plaintiffs "improperly clustered" defendants by failing to allege specific claims against each defendant; plaintiffs' "allegations of a uniform, nationwide and fraudulent scheme facilitated through a shared centralized ARx pharmacy transaction system . . . provide the Defendants with fair notice of the claims to the extent required by Rule 9(b)"); *U.S. ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, No. 18-CV-673-GKF-FHM, 2019 WL 1086363, at *15–16 (N.D. Okla. Mar. 7, 2019) (rejecting argument that plaintiff failed to satisfy Rule 9(b) by grouping defendants together where plaintiff alleged "a uniform, chainwide scheme facilitated through a shared centralized pharmacy transaction system").

[44] As previously noted (*supra* at 1), once dismissals are entered against the Dismissed Defendants, it will be unnecessary for the Court to decide this issue at this time.

[45] Defendants' cited cases are therefore distinguishable. *See Williams v. Porter Bancorp, Inc.*, 41 F. Supp. 3d 676, 681–82 & n.4 (W.D. Ky. 2014) (dismissing negligence claim against parent

**A.   Plaintiffs Sufficiently Allege the Direct Liability of the Parent Company Defendants.**

Defendants' entire argument concerning the direct liability of the Parent Company Defendants is a conclusory one-sentence statement arguing that Plaintiffs have pled "no facts" to support such liability.  Mot. at 21.[46]  This is false.  As summarized in ¶ 3 of both Amended Complaints, the Parent Company Defendants (and all PBM Defendants)[47] colluded with Purdue Pharma, and other manufacturers, to: fraudulently and deceptively market opioids; "increase opioids sales through favorable formulary placement . . . in exchange for rebates and fees"; and "eliminate or limit utilization management measures on national formularies that would have restricted opioids prescribing."  Independence ¶ 3; Webb ¶ 3.  They also: deliberately failed to implement effective drug utilization review; elected not to act on the vast stores of information they had about the epidemic to limit the flood of opioids into communities across the United States; and dispensed "huge quantities of prescription opioids through their mail-order pharmacies without proper controls against diversion."  *Id*.  Notably, through much of this misconduct, they (and their subsidiaries) were directing and/or engaging in the practice of pharmacy in a manner that interfered with public health.[48]

---

company where plaintiffs did "not argue any ground for piercing the corporate veil" and alleged only that the parent committed the wrongful conduct through an executive of its subsidiary; the court noted, however: "The Court dismisses the negligence claim against [the parent] with the understanding that [the executive] was an employee of [a subsidiary], not [the parent].  If this understanding is incorrect, Plaintiffs may allege the relationship between [the executive] and [the parent company] more specifically.");  *In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/JFD), 2022 WL 1017770, at *2, *10-12 (D. Minn. Apr. 5, 2022) (dismissing parent company defendants where plaintiffs failed to allege a plausible basis for holding them liable);  *In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/TNL), 2021 WL 147166, at *1, *22 (D. Minn. Jan. 15, 2021) (same).

[46]  Defendants also briefly state in their introduction that "Plaintiffs merely lump the Parent Company Defendants with their subsidiaries . . ."  *Id*. at 2.  To the extent this statement is an objection to "group pleading," it is both inadequately briefed (*supra* at fn.41) and substantively without merit (*supra* at 22-24).

[47]  Each Parent Company Defendant is included within the definition of "PBM Defendants" as that term is used in the Amended Complaints.  Independence at 1; Webb at 1.

[48]  *See, e.g.,* Model State Pharmacy Act and Model Rules of the National Association of Boards of Pharmacy ("NABP") (August 2023) at Art. I, §§ 102-104 & 105(74), *available at*

Plaintiffs proceed to plead, through many well-grounded, fact-specific paragraphs, the existence of an association-in-fact "Formulary & UM [utilization management]" RICO Enterprise in which opioid manufacturers and PBM Defendants, including the Parent Company Defendants, participated. *See, e.g.,* Independence ¶¶ 73, 594-693; Webb ¶¶ 72, 588-687. The Enterprise's common purpose was "to profit from the increased and unrestricted prescribing, dispensing, and sale of prescription opioids without regard for public safety." Independence ¶ 73; Webb ¶ 72. Plaintiffs further plead that Defendants, including the Parent Company Defendants, have "committed, conspired to commit, and/or aided and abetted in the commission" of acts in furtherance of the Enterprise. Independence ¶ 778; Webb ¶ 814.[49] The fraudulent scheme that furthered the RICO Enterprise relied on false claims from each PBM Defendant, including the Parent Company Defendants. They falsely represented that they were structuring formularies and engaging in utilization management to benefit clients and patients, and to ensure that opioids were prescribed and dispensed solely for safe and legitimate reasons. *See, e.g.,* Independence ¶ 640; Webb ¶ 634. Additional allegations specific to each Parent Company Defendant are summarized below.

**UHG.** UHG's knowledge of, and participation in, the RICO enterprise dates back to the early 2000s.[50] In 2001, a UHG executive wrote to Purdue stating, "I believe Purdue has acted irresponsibly in over-promoting the use of oxycodone…the activity has resulted in the overuse of

---

https://nabp.pharmacy/members/board-resources/model-pharmacy-act-rules/; NABP Report of the Task Force on the Regulation of Pharmacy Benefit Managers, *available at* https://nabp.pharmacy/wp-content/uploads/2016/07/PBM_TF_Report.pdf.

[49] Plaintiffs' RICO conspiracy claim "does not require proof that the defendant committed any predicate acts[;]" rather, "it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *United States v. Rios*, 830 F.3d 403, 424 (6th Cir. 2016) (citation omitted). *See also supra* at 6.

[50] The fact that the Parent Company Defendants engaged in some acts in furtherance of the conspiracy over two decades ago is of no concern. "Unless a conspirator produces affirmative evidence of withdrawal*, his participation in a conspiracy is presumed to continue* until the last overt act by any of the conspirators." *United States v. Jones,* 27 F.3d 50, 51 (2d Cir. 1994) (internal alterations omitted, emphasis added). *See also supra* at 6.

morphine, an increase in the abuse of this narcotic, unnecessary and significant increases in pharmacy trend, and most importantly, an increase in patient morbidity and mortality." Independence ¶ 386; Webb ¶ 385. Nonetheless, in 2002, UHG worked directly with Purdue in promoting misinformation regarding opioid products and requested $200,000 to launch a "chronic pain management" study and education series of teleconferences to providers in the UHG/UHC network. Independence ¶¶ 345-346; Webb ¶¶ 344-345.[51] UHG also falsely depicted itself in public statements to shareholders and others as "improving quality and safety, increasing compliance and adherence, and reducing fraud and waste." Independence ¶¶ 296, 298; Webb ¶¶ 295, 297.

**Evernorth f/k/a Express Scripts Holding Company.** Plaintiffs similarly demonstrated Express Scripts' (including Evernorth's)[52] knowledge of the danger of opioids, and the fraudulent chasm between its public statements purporting to address that danger and its internal conduct that fully embraced profits over health. Express Scripts' 2013 external, client-facing marketing documents "recognized that opioid abuse was 'deadlier than cocaine and heroin combined' but also recognized the pivotal role that Express Scripts plays in 'collaborating to end the epidemic.'"[53] In 2014, Express Scripts was preparing the press releases and sales communications for its "'Nation in Pain' report" to "highlight the power of Express Scripts data and clinical experience, and [its] commitment to identifying ways to make the use of prescription opiates safer and more effective" while at the same time aggressively pushing Purdue for higher rebate amounts in exchange for preferred formulary placement of OxyContin—a win worth $20 million in

---

[51] UHG's "education" program included the theme that "'[m]ost specialists in pain medicine and addiction agree that patients with prolong opioid therapy . . . do not usually develop addictive behavior' and to convince the providers that '[o]pioids are effective, have a low addiction potential, and may have fewer long-term side effects than other pain treatments.'" *Id*.

[52] In the Amended Complaints, references to "Express Scripts" and "ESI" include Evernorth. Independence ¶ 120; Webb ¶ 118.

[53] Independence ¶ 399; Webb ¶ 398. The document included the parent company's trademark and a proprietary and confidentiality designation. *Id*.

incremental revenue.    Independence ¶¶ 267-268 (quotations omitted); Webb ¶¶ 266-267 (quotations omitted).

**Optum, Inc.**  Optum, Inc. was similarly involved in promoting the expansion of the opioid market as well as the Formulary and UM Enterprise.  Plaintiffs allege Optum provides cover for the Enterprise through its false public statements.[54]   "In its 2008 Annual Report, Optum represented 'Beyond the data and technology, and beyond the numbers and networks, our businesses are made up of people who strive, every day, to fulfill our mission by helping people live healthier lives.'"  Independence ¶ 296; Webb ¶ 295.  Optum, Inc. knew these representations were a façade, however, since its subsidiary and sister entities had spent years working to expand the market for opioids—and, in turn, to increase the profits of the Enterprise.[55]

Accordingly, Plaintiffs' allegations are more than sufficient to support a claim for the direct liability of the Parent Company Defendants.

### B.  Plaintiffs Sufficiently Allege Alter Ego Theories of Liability for the Parent Company Defendants.

The Court should also reject Defendants' argument that Plaintiffs' alter ego or corporate veil-piercing theories against the Parent Company Defendants are insufficient.  Mot. at 20-22.  "State law dictates whether circumstances exist warranting piercing the corporate veil."  *Mattingly v. R.J. Corman R.R. Grp., LLC*, 90 F.4th 478, 488 (6th Cir. 2024).  Yet, Defendants fail to evaluate threshold choice-of-law issues regarding which state law applies to their arguments concerning alter ego/veil piercing.[56]   "[C]hoice-of-law determinations are fact-intensive inquiries that would

---

[54]  Independence ¶ 659 ("Optum submitted its opioid use/risk management plan for consideration by the National Alliance of Healthcare Purchaser Coalitions, claiming that its program focuses on preventing misuse by educating care providers and consumers, minimizing early exposure, and promoting alternative treatments for pain while advancing best practices and made multiple representations about itself and its programs during the presentation."); Webb ¶ 653 (same).  An Optum published white paper made similar claims.  *Id.*

[55]  *See, e.g.,* Independence ¶¶ 329-331, 487-493; Webb ¶¶ 328-330, 486-490.

[56]  To evaluate alter ego liability theories, an MDL court sitting in diversity jurisdiction should first apply the choice-of-law rules of the transferor forum.  *See Wahl v. Gen. Elec. Co.*, 786 F.3d

be premature to resolve at the motion-to-dismiss stage." *Bristol-Myers Squibb Co. v. Matrix Labs. Ltd.,* 655 Fed. Appx. 9, 13 (2d Cir. 2016) (reversing dismissal where choice of law inquiry was necessary to determine which state law governed). Defendants' failure to address choice of law renders their Motion deficient and should preclude its consideration.[57]

Even if the Court were to tackle Defendants' incomplete analysis, the Court should decline to grant the Motion. Both Evernorth and UHG, through their respective "executives and employees, control[] the enterprise-wide policies that inform all of [their respective] lines of business in order to maximize profits across the corporate family." Independence ¶¶ 91, 136; Webb ¶¶ 89, 135.[58] Plaintiffs also allege that the Express Scripts corporate family and the Optum corporate family are each "vertically integrated colossuses." Independence ¶ 12; Webb ¶ 12.[59] Moreover, many members of the Express Scripts and Optum corporate families share a principal

---

491, 494 (6th Cir. 2015). Here, the Court would apply the Texas choice-of-law rules for Webb County and the Missouri choice-of-law rules for City of Independence. Texas courts apply the law of the state of incorporation of the subsidiary. TEX. BUS. ORGS. CODE § 1.104. However, this is not always the case in Missouri. *See A.O.A. v. Rennert,* 350 F. Supp. 3d 818, 835–56 (E.D. Mo. 2018).

[57] *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1000–1001 (W.D. Wash. 2012); *Turney v. Dz Bank AG Deutsche Zentral Genossenschaftsbank*, No. 09-2533-JWL, 2010 WL 3735757 at *10 (D. Kan. Sept. 20, 2010); *Landesbank Baden-Wurttemberg v. RBS Holdings USA Inc.*, 14 F. Supp. 3d 488, 500 (S.D.N.Y. 2014); *Schechter v. Banque Commerciale Privee*, No. 90 CIV. 6051, 1991 WL 105217 at *16 (S.D.N.Y. June 11, 1991).

[58] *See, e.g., Duff*, 565 F. Supp. 3d at 1018–19 (plaintiffs sufficiently pled parent company was a proper defendant "under an alter ego, veil-piercing, or agency theory" where they alleged the parent oversaw and controlled the operations of its wholly-owned subsidiary defendants, used its subsidiaries to implement its insurance plans, and managed its subsidiaries with a centralized infrastructure of support functions); *Novo Nordisk A/S v. Caraco Pharm. Laboratories, Ltd.*, 450 F. Supp. 2d 757, 761 (E.D. Mich. 2006) (holding plaintiffs sufficiently alleged facts supporting veil-piercing: "Plaintiffs have made allegations that Sun effectively controls the actions of its subsidiary, Caraco, and directed Caraco to submit the ANDA. These allegations have given Defendants fair notice of Plaintiffs' 'piercing the corporate veil' agency theory. Whether this alleged controlling parent-subsidiary relationship exists in actuality is a matter better left up to the discovery process.").

[59] *See, e.g., BCBSM*, 512 F. Supp. 3d at 862 (denying motion to dismiss parent company defendant because "dismissal is not warranted where the parent and subsidiary corporation are integrated entities").

place of business with their respective parents. Independence ¶¶ 90, 93, 98, 107, 110, 116, 132, 138, 142, 144, 163, 167-168; Webb ¶¶ 88, 91, 96, 105, 108, 114, 130, 137, 141, 144, 164, 168-169.[60] And as discussed earlier, the Parent Company Defendants were all materially involved in the development and ownership of the fraudulent external marketing message that predominated throughout their respective corporate families: that the PBM Defendant families were *ostensibly* managing opioid prescribing and utilization in a manner designed for safety and deterrence of fraud. Independence ¶¶ 267-268, 296-299, 328-329, 345-347, 386, 399, 640; Webb ¶¶ 266-267, 295-298, 327-328, 344-346, 385, 398, 634. "[T]he corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *United States v. Bestfoods*, 524 U.S. 51, 62 (1998) (citation omitted). *See also* Independence ¶ 705; Webb ¶ 699. This Court, among others, has appropriately denied motions seeking dismissal of veil-piercing issues as too fact intensive to decide at this early stage.[61] Defendants' Motion should be similarly denied here.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied.

---

[60] *See, e.g., Uebelacker v. Paula Allen Holdings, Inc.*, 464 F. Supp. 2d 791, 799 (W.D. Wis. 2006) ("At this stage of the proceeding, dismissal is appropriate only if it is clear beyond doubt that plaintiff can prove no set of facts to warrant piercing of the corporate veil that shields defendants Workstream USA, Inc. and Workstream Inc. from liability for the actions of their subsidiary, defendant Allen and Associates. At the very least, plaintiff's allegations [that Allen and Associates is a wholly-owned subsidiary of Workstream USA, Inc., that all rights to the Allen and Associates website are owned and copyrighted by Workstream Inc., and that all three defendants share the same address] illustrate a link among defendants, from which it is reasonable to infer that the parent corporations may exert some control over their subsidiary. Plaintiff should be afforded an opportunity to determine the extent of this control through discovery.").

[61] *See, e.g.,* Dkt. #2131 (CT1 Order on Jurisdictional MTDs) at 8; *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 440–41 (E.D.N.Y. 2017); *Walker v. Nash*, No. 2:13-CV-3408, 2014 WL 1278599 (D.S.C. Mar. 27, 2014) (citing *In re Cnty, Green Ltd. P'ship*, 604 F.2d 289, 292 (4th Cir. 1979)); *Tobia v. Loveland*, No. 5:16CV187, 2017 WL 2113752 (N.D. W. Va. May 15, 2017) (citing *Laya v. Erin homes Inc.*, 352 S.E.2d 93, 201 (W. Va. 1986)).

Dated: July 19, 2024

Respectfully submitted,

*Plaintiffs' Co-Lead Counsel*

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue
San Juan, PR  00918
(304) 654-8281
paul@farrellfuller.com


*Plaintiffs' Liaison Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
(216) 696-3232
pweinberger@spanglaw.com

*Counsel for City of Independence, MO*

*/s/ John F. Garvey*
John F. Garvey
Colleen Garvey
Ellen A. Thomas
STRANCH, JENNINGS & GARVEY, PLLC
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

*/s/ Joanne M. Cicala*
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
(512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Daniel A. Thomas*
Daniel A. Thomas
HUMPHREY FARRINGTON MCCLAIN
221 W. Lexington Ave. Ste 400
Independence, MO 64050
(816) 836-5050
DAT@hfmlegal.com

*Counsel for County of Webb, TX*

*/s/ Joanne M. Cicala*

Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
(512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Kevin Sharp*

Kevin Sharp
Christine Dunn
SANFORD HEISLER SHARP, LLC
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
(615) 434-7000
ksharp@sanfordheisler.com
cdunn@sanfordheisler.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*

Peter H. Weinberger