# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**THIS DOCUMENT RELATES TO**:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12)<br><br>*Lincoln County v. Richard S. Sackler, M.D.*, No. 20-op-45069 (Track 13)<br><br>*City of Independence, Missouri v. Williams*, No. 19-op-45371 (Track 14)<br><br>*County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | **MDL NO. 2804**<br><br>**Case No. 17-MD-2804**<br><br>**Judge Dan Aaron Polster** |

## PBM DEFENDANTS' REPLY REGARDING BELLWETHER PLAINTIFFS' SPOLIATION OF EVIDENCE

**INTRODUCTION**

Three of four bellwether plaintiffs—Lincoln County, Webb County, and City of Independence—failed for many years to implement any legal hold and destroyed key evidence. Then they concealed those facts from the PBM Defendants and the Court.

Recognizing the gravity of the situation, the Court ordered the parties to submit position papers. Rather than use its paper to provide a full account of plaintiffs' document destruction—which remains unclear—the PEC instead tries to brush aside the spoliation of evidence as a "sideshow" and "diversion." It is not. Plaintiffs' abject failure to comply with their legal duty to preserve relevant evidence fundamentally impairs the PBM Defendants' ability to fairly defend against the bellwether plaintiffs' claims and calls into question the integrity of the bellwether process. And Plaintiffs' monthslong effort to conceal their preservation failings, rather than come clean immediately, implies that the destruction of evidence may have been intentional, rather than inadvertent. Either way, it has prejudiced the PBM Defendants by destroying reams of relevant evidence.

Instead of owning up to Plaintiffs' mistakes, the PEC argues that the PBM Defendants have no legitimate basis for complaint. They argue that, "from experience," the emails the bellwether plaintiffs' spoliated "will be of little or no importance as these cases progress to trial." Dkt. 5521 at 1. And they try to argue that their discovery failings do not justify the most severe Rule 37 sanctions. Those arguments are wrong. Whatever prior bellwether defendants may have done in other cases, the PBM Defendants anticipate that Plaintiffs' communications will be highly relevant to their defenses. As one example, each Plaintiff city and county offers health plans to its employees, made decisions about covering prescription opioids, had access to information about prescription opioid utilization of its plan members, and likely received rebates from prescription

1

opioid manufacturers—the same actions that the PEC now argues constitute wrongdoing by the PBM Defendants. As a second example, the PBM Defendants have statute-of-limitations defenses against many of Plaintiffs' claims that are impacted by Plaintiffs' communications revealing when Plaintiffs learned of their alleged injuries. Plaintiffs' spoliation of these communications (among other documents) has thus fundamentally impacted the PBM Defendants' defenses.

But those are issues for a later day because the parties are not at this time litigating a Rule 37 spoliation motion. The question today is what impact the Plaintiffs' discovery violations and lack of candor will have on bellwether litigation and what immediate steps are appropriate so that the Court and the parties can ascertain the extent of the problem and decide how to proceed.

On that score, the PEC proposes a "solution," which is really an escape hatch. The PEC proposes severing Lincoln County and the City of Independence and proceeding full steam ahead with the City of Rochester and Webb County. The PEC's severance "solution" runs contrary to the Federal Rules, basic fairness, and the purpose of bellwether cases in an MDL. At this point, it is likely that the spoliation issues affecting 75% of the bellwethers also infects the vast majority of cases naming the PBMs (which were all brought by the same counsel). For the bellwethers to serve their purpose, the spoliation issues affecting Lincoln County, Webb County, and the City of Independence must be resolved so that the parties can understand how similar issues might impact other cases.

The Court has already ordered that non-bellwether plaintiffs provide information about whether and when they implemented litigation holds. Dkt. 5517. In addition, the Court should (i) allow the PBM Defendants to take Rule 30(b)(6) depositions of the three bellwether plaintiffs that failed to timely implement litigation holds (the PEC has consented to that for Lincoln County and the City of Independence); (ii) set a briefing schedule for any sanctions motion following

2

discovery into Plaintiffs' document preservation and destruction issues; and (iii) align discovery deadlines in Tracks 12–15 to allow time for spoliation issues to be resolved. *See* Dkt. 5503 at 16–19. It would be both unfair and inefficient for the City of Rochester case—chosen by Plaintiffs—to proceed in isolation.

These steps will allow the Court and the parties to gain the necessary information to chart a path forward for the PBM bellwethers.

## BACKGROUND

In their July 1 spoliation position paper, the PBM Defendants proposed five steps to take:

1. Allow Rule 30(b)(6) depositions of Lincoln County, Webb County, and the City of Independence that do not count against existing deposition limits and can cover any topic reasonably related to document retention, preservation, or spoliation, as well as any concealment of the same;

2. Set a briefing schedule for sanctions motions with respect to Lincoln County, Webb County, and the City of Independence that begins three weeks after completion of the Rule 30(b)(6) depositions of each plaintiff;

3. Order every plaintiff in each of the 84 cases pending against the PBM Defendants in the MDL to confirm in writing within two weeks of the Court's order on this issue (a) whether it implemented a legal hold, (b) if so, the date that legal hold was implemented, and (c) whether there are any document preservation issues;

4. Order each plaintiff that seeks to amend its complaint to add claims against the PBM Defendants to confirm in writing within one week of filing a motion for leave to amend (a) whether it implemented a legal hold, (b) if so, the date that legal hold was implemented, and (c) whether there are any document preservation issues; and

5. Modify the discovery deadlines in all four PBM bellwether tracks (Tracks 12–15) to allow time for spoliation issues to be resolved and to align the schedules of all four cases.

Dkt. 5503 at 3–4.

Hours after the PBM Defendants filed their position paper, the Court asked the PEC for an expedited response by July 8 to the PBM Defendants' third and fourth requests and set a conference

3

for July 9. Ex. 1 at 3. On July 8, the PEC provided its position on those two requests in writing. *Id.* at 1–2. The conference was held on July 9. Dkt. 5516.

The next day, the Court granted in part the PBM Defendants' third and fourth requests, ordering the PEC to (i) "file a single, joint notice" by July 22, "indicating, for each MDL case where a PBM defendant is named: (1) whether a litigation hold was implemented, and (2) if so, when," and (ii) file a similar notice by September 9 with the same information for each plaintiff that seeks leave to amend its complaint. Dkt. 5517 at 1–2.

On July 12, 2024, the PEC filed its responsive position paper. Dkt. 5521. The PEC agreed that the PBM Defendants could take Rule 30(b)(6) depositions of Lincoln County and City of Independence (but not Webb County) and objected to all other steps proposed by the PBM Defendants (including the already-granted request that the PEC provide litigation hold information for parties who seek leave to amend). The PEC's position paper also includes several important spoliation facts not previously disclosed, despite weeks of requests, plus some notable omissions:

1. **City of Independence, Missouri**

The City of Independence now admits for the first time that it failed to implement a legal hold until May 3, 2024, more than five years after it first filed suit against the PBM Defendants on January 29, 2019. *See* Dkt. 5521 at 7. The City also admits for the first time that it provided notice of the ransomware attack to the FBI, multiple state attorneys general, and thousands of individuals. But the City conveniently did *not* provide the same notice to the Court or the PBM Defendants. *Id*.

The City also continues to mislead the Court about the facts surrounding the ransomware attack and the associated loss of data. The City states that the ransomware demand to unlock its pre-2014 emails was "negotiated down [from $1,000,000] to $400,000" (Dkt. 5521 at 7), implying

4

that the City would be forced to pay $400,000 to secure the affected files. But the City fails to advise the Court that after applying insurance, its out-of-pocket costs would have been just $25,000. *See* Ex. 2 at 12. The City ultimately chose not to pay $25,000 to recover all of its pre-2014 emails, and the City refuses to say whether it considered its preservation duties or the impact on this litigation when it made that decision.

2. **Lincoln County, Missouri**

Lincoln County admits that its failure to timely implement a litigation hold led to the deletion of custodial email files for more than 100 former employees—including at least 16 employees that the County has identified as relevant to this litigation. Dkt. 5521 at 4–5. As a result of that spoliation, the County has no custodial communications outside the past few years for certain critical employees, including the Sherriff (emails available from 2021–present), Coroner (emails available from 2019–present), County Clerk (emails available from late 2022–present), and Emergency Services Director (emails available from late 2019–present). *See* Dkt. 5221-1.

Contrary to the PEC's assertions, those spoliated communications cannot be replaced by searching other employees' inboxes or non-custodial sources. The PEC's efforts to search other inboxes can only capture emails between the impacted custodians and current County employees, outside of the Health Department. Second, the PEC's search *cannot* recover communications the impacted custodians had with external recipients. The shortcomings of the PEC's recovery efforts are borne out by the data in its position paper. While the PEC boasts its restoration of 144,504 emails, several of the most critical employees with the longest tenures have the fewest emails. For example, in its June 14 letter, the County indicated that Ann Irvin, the Payroll Clerk, "typically handles administrative responsibilities relating to the County's Health Plan." Ex. 3 at 2. Ann Irvin

5

was the Payroll Clerk for nearly two decades (2001–2019), yet the County was only able to produce 3,394 emails. Dkt. 5521 at 7.

### 3. County of Webb, Texas

Webb County admits that it did not issue a legal hold until May 17, 2024, years after this litigation commenced. Webb County asserts that "there is no evidence of spoliation." That is misleading. After months of failing to fully respond to the PBM Defendants' questions about which custodians it possesses emails for, Webb County revealed for the first time in a letter on July 16, 2024, that it indexed "over 3,000 back-up tapes" to try to determine what responsive custodial documents it still possesses. Ex. 4 at 1. Back-up tapes typically are maintained for purposes of disaster recovery, and information on them—especially information from years ago—often is inaccessible. *See Automated Solutions Corp. v. Paragon Data Systems*, 756 F.3d 504, 514–15 (6th Cir. 2014). That Webb County is resorting to back-up tapes strongly suggests that it has likely destroyed emails and other documents. The County says it "is in the process of determining how and when these tapes can be restored in a usable form and will provide a further update by July 26, 2024." Ex. 4 at 1. Even if those tapes can be fully restored (which is uncertain), that does not answer the question of what documents and data Webb County destroyed and whether everything destroyed would be captured by the back-up tapes or whether some or all of it is gone for good.

Webb County's failure to answer questions about the scope of its destruction of documents is part of a monthslong saga. On May 30, the PBM Defendants requested the date of the earliest available emails for 30 potential custodians. In a June 14 response, the County did not provide this information for the 30 previously-identified individuals. Dkt. 5503-34. Instead, the County provided available email ranges for other County employees but conceded that there were "gaps"

6

in available documents and information for these individuals. *Id.* Although the PBM Defendants have repeatedly raised questions about the cause and scope of these "gaps," Webb County's responses have been delayed, piecemeal, and confusing. On June 14, the County stated that it "is investigating the potential cause of this discrepancy and will provide an update when available." *Id.* No update came. Instead, the County asserted on June 27 that it had already "provided available email date ranges for all requested potential custodians," even though it had not. Ex. 5 at 1. The County then changed tack again, indicating it was reviewing and promised to "provide an update on this review by July 15, 2024." Ex. 6 at 1. That led to the County's latest letter on July 16, in which the County stated that it was trying to restore back-up tapes and would provide a further update by July 26. Ex. 4. In other words, despite claiming that there is no evidence of spoliation, the County does not yet know what documents are actually available, which is why it is reviewing backup tapes for emails and other documents that have likely been destroyed.

## PBM DEFENDANTS' POSITIONS

### I.    SEVERANCE IS IMPROPER.

Facing serious spoliation issues in at least two (and likely three) of the four bellwethers, the PEC seeks a lifeline: voluntary severance of the two bellwether cases with the most serious document destruction issues known to date—Lincoln County and City of Independence. As the PBM Defendants explained, that proposal would benefit the wrongdoers and prejudice the PBM Defendants. *See* Dkt. 5503 at 14–16. It would also be premature.

Tellingly, the PEC does not respond to the PBM Defendants' arguments regarding prejudice and fairness. Instead, the PEC attempts to create a false dichotomy: either let these bellwether plaintiffs off scot-free through severance or waive any relief for their failure to meet the most basic discovery obligations. *See* Dkt. 5521 at 14 (claiming that somehow any prejudice to the PBM Defendants from the bellwether plaintiffs' discovery violations would be of the PBM

7

Defendants' "choosing"). That catch-22 has no basis in law or fact. The bellwether plaintiffs chose to file suit against the PBM Defendants, failed to institute legal holds, destroyed relevant documents over the past six years while their cases were pending, and hid their spoliation for months after being selected as bellwethers. The PBM Defendants are entitled to discover the extent and intent of that spoliation and seek sanctions in those cases.

The Court should not allow the PEC to bury cases it fears it may not win without providing a remedy to the PBM Defendants for the millions of dollars the PBM Defendants have spent litigating those bellwether cases to date. *See, e.g.*, Dkt. 5503 at 14–16. Severing those cases and sweeping Plaintiffs' misconduct under the rug without further sanctions would be manifestly unjust. It would also be premature given that neither the parties nor the Court know whether the same type of issues are representative of other cases against the PBM Defendants.[1]

## II. THERE IS NO RIPE RULE 37 QUESTION FOR THE COURT—YET.

A large portion of the PEC's response reads like an opposition to a Rule 37 sanctions motion, including arguments that the bellwethers did not intentionally destroy evidence and self-serving assertions that the destroyed evidence is "of little or no importance" to the cases. The PEC's arguments are wrong. But more importantly, at the current juncture, they are irrelevant.

The PBM Defendants have not yet moved for Rule 37 sanctions. And the Court has made clear that the current briefing is not about sanctions. Dkt. 5516 at 8:1–2, 22:25–23:1. This makes sense—among other things, the PEC admits the "parties have not yet determined the scope of any electronically stored information ('ESI') that cannot be replaced" (Dkt. 5521 at 1), so it is too early to determine what sanction may be appropriate.

---

[1] If these cases are no longer bellwethers for any reason (including any decision to dismiss the cases), the PBM Defendants should have the right to select replacement bellwether cases that the PEC cannot strike. The PEC has already suggested as much. Dkt. 5521 at 13–14.

8

What the parties can see at this point is that the bellwether plaintiffs' discovery failings are widespread and have severely jeopardized the litigation. It is also clear that the discovery failings appear to extend beyond the cases selected as bellwethers and may impair any future litigation against the PBM Defendants.

Given the seriousness and severity of those concerns, the narrow task for now is to take steps to fully understand the scope of the problem so that the parties and the Court can best determine how to proceed. The PBM Defendants are not required to simply accept the Plaintiffs' self-serving statements about their discovery failings and the evidence that has been destroyed, particularly given the lengths Plaintiffs have gone to conceal the problems. The PBM Defendants are entitled to investigate the scope of the spoliation through the adversarial discovery process so that they can fully understand how the spoliated evidence prejudices the PBM Defendants' defenses and formulate an appropriate remedy.

### III. THE PBM DEFENDANTS ARE ENTITLED TO DISCOVERY INTO THE BELLWETHER PLAINTIFFS' PRESERVATION FAILURES.

As part of their effort to understand the scope of the bellwether spoliation, the PBM Defendants requested permission to take Rule 30(b)(6) depositions of Lincoln County, Webb County, and the City of Independence on issues related to document preservation. The PEC now agrees to 30(b)(6) depositions for Lincoln County and City of Independence, but it opposes such a deposition for Webb County. Dkt. 5521 at 1–2. The PEC's opposition to discovery into Webb County's potential spoliation is without merit.

The PBM Defendants have good reason to question Webb County's preservation of relevant evidence. Webb County is represented by the same counsel who represents Lincoln County and the City of Independence. And Webb County has finally admitted that, like Lincoln County and the City of Independence, it did not institute a legal hold until two months ago, more

9

than *six years* after filing its original complaint. For months, Webb County concealed that information, refusing to confirm whether a hold existed while characterizing the PBM Defendants' concerns as "unfortunate and unnecessary slights" borne out of "speculation." Dkt. 5487 at 92:16–18.

Since then, the County has stalled for weeks in providing basic information regarding the availability of custodial data. And the information that is slowly leaking out indicates the problems are broader than the PEC suggests. The PEC acknowledges that it is still assessing so-called "non-spoliated gap-period emails." Dkt. 5521 at 15. And just days ago, Webb County informed the PBMs that it is "reviewing its archive of back-up tapes for any potentially responsive documents" for key custodians, suggesting that documents are not available in ordinary-course storage and were likely destroyed. Ex. 4 at 1. In short, a Rule 30(b)(6) deposition is the only means by which the PBM Defendants may elicit timely and direct answers from Webb County.

Finally, Webb County's assurance that it purportedly abided by "standard document and data retention practices" is insufficient, even if true. Dkt. 5521 at 9. Webb County has not produced policies outlining its document and data retention practices referenced in the PEC's position paper, but it is common for such practices to involve the destruction of information after a designated period of time. A legal hold, on the other hand, would prevent routine destruction. The duty to preserve evidence requires that a party "suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998, 999 (N.D. Ohio 2016) (citation omitted). Reliance on "routine" document practices (even assuming they were followed) is not a suitable replacement for timely issuing a legal hold, especially in a case of this magnitude.

10

District courts routinely grant discovery to assist an aggrieved party in investigating document preservation efforts and evaluating whether a motion for sanctions is appropriate. *See, e.g.*, *Hocking Water Assn., Inc. v. E.I.s Du Pont de Nemours & Co.*, 2013 U.S. Dist. LEXIS 41453, at *40 (S.D. Ohio Mar. 25, 2013) ("Absent additional information about the maintenance and degradation or destruction of these records [the defendant] cannot determine whether sanctions are appropriate."); *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2008 U.S. Dist. LEXIS 96356, at *5 (D. Minn. Nov. 26, 2008) (granting motion to compel Rule 30(b)(6) in similar context); *Konica Minolta Bus. Sols., U.S.A., Inc. v. Lowery Corp.*, 2016 U.S. Dist. LEXIS 117120, at *17 (E.D. Mich. Aug. 31, 2016) (granting discovery into failure to preserve documents). This Court should similarly authorize 30(b)(6) depositions for the three bellwethers with preservation issues.

**IV.    THE COURT SHOULD NOT RECONSIDER ITS ORDER REQUIRING AMENDING PLAINTIFFS TO DISCLOSE LEGAL HOLD INFORMATION.**

The Court has already ordered the PEC to file a notice by September 9 indicating whether and when each plaintiff who seeks to amend its complaint instituted a litigation hold. Dkt. 5517 at 1–2. The PEC now asks the Court to reconsider this ruling. The PEC's arguments are without merit and should be rejected for several reasons.

First, the PEC has not carried its burden for seeking reconsideration. As this Court has explained, "[m]otions for reconsideration are disfavored, and a motion for reconsideration is unfounded unless it either calls . . . attention to an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *In re Nat'l Prescription Opiate Litig.*, 2020 U.S. Dist. LEXIS 173997, at *1 (N.D. Ohio Sept. 22, 2020) (internal citations omitted).

11

The PEC has already presented its arguments in writing and at a hearing, and the Court rejected them. The PEC offers no controlling authority that the Court overlooked. Nor has it demonstrated that the Court's order is manifest error. To the contrary, as explained below, the Court's ruling was correct. There is no basis for the Court to reconsider its ruling. *See, e.g.*, *Miller v. Norfolk S. Rwy. Co.*, 208 F. Supp. 2d 851, 854 (N.D. Ohio 2002) ("Where a motion for reconsideration simply repeats the movant's earlier arguments, without showing that something material was overlooked or disregarded, presenting previously unavailable evidence or argument, or pointing to substantial error of fact or law, such motion is frivolous.").

Second, the Court should not reconsider its decision because it was correct. The PEC argues that requiring parties seeking leave to amend to disclose whether they have been preserving evidence is not an appropriate "sanction" under Rule 37. But, as already explained, these position papers are not a Rule 37 motion, and the steps that the PBM Defendants have proposed are not Rule 37 sanctions. Instead, as the PBM Defendants explained at the July 9 hearing, information about whether a party has been preserving documents is relevant to whether they can establish good cause to amend their complaints. *See* Fed. R. Civ. P. 16(b)(4).

Despite the significant spoliation already found in the current bellwether PBM cases, the PEC is now inviting other plaintiffs—those who filed suit six and seven years ago against other defendant groups and who have repeatedly declined to press claims against the PBM Defendants—to reignite their dormant cases to assert claims against the PBM Defendants. Each of those plaintiffs must satisfy Rule 16's heightened "good cause" standard before being granted leave to amend. Given the known preservation issues, the Court correctly determined that "defendant[s] may want to address the topic in response to a motion to amend." Dkt. 5517 at 2.

The Court's order is no different than countless other orders in the MDL requiring individual parties to participate in limited discovery for the sake of efficiency. For example, the Court has required both plaintiffs and defendants across the MDL to provide "fact sheets" containing certain jurisdiction-specific discovery information. *See* Dkt. 638. Although that requirement extends beyond active bellwether plaintiffs and defendants, it does not undermine the individual character of each case. It reinforces it. Each case is unique, and the Court has required that the parties each put forward relevant information that may bear on the claims and defenses in each case. Likewise, in the context of a motion for leave to amend, the Sixth Circuit has made clear that each case in an MDL "retains its individual character." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).

The Court's order is also consistent with Rule 16(c)(2)(L), which gives the Court the authority to "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). In that regard, the Court's order is akin to a *Lone Pine* order—a discovery order that serves to "eliminat[e] frivolous claims, manag[e] complex issues, and lessen[] the burdens of complex litigation upon both the parties and the court." *Mod. Holdings, LLC v. Corning, Inc.*, 2015 U.S. Dist. Lexis 202184, at *8 (W.D. Ky. Sept. 28, 2015). The Third Circuit has aptly noted: "Cases centralized in an MDL retain their separate identities," but MDL courts may "impose preliminary discovery requirements . . . with the goal of winnowing non-compliant cases from the MDL." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61, 66 (3d Cir. 2023) (internal citations omitted).

In the end, the PEC concedes that the Court is allowed to authorize the disclosure; it just does not like the *timing* of the order. The PEC claims it would not object to the Court's

13

consideration of litigation holds "after amendment is decided as a factor in selecting future bellwether cases." Dkt. 5521 at 18. But this Court has said from the start that it is not going to allow amendment in any case where a plaintiff is not ready and willing to litigate. *See* Dkt. 5503 at 2. Through its severance "solution," the PEC has implicitly admitted that a party that fails to preserve evidence is not qualified to litigate. But regardless, the PEC's proposal to delay consideration of these facts would be inefficient. It would prevent the Court and the PBM Defendants from considering this "important and relevant" information at the critical amendment stage and would waste more time and money assessing cases that may be flawed from the outset. In contrast, the Court's decision to order the disclosure during the amendment briefing is appropriate to promote "the just and efficient conduct" of cases in the MDL. 28 U.S.C. § 1407(a).

V. **THE COURT SHOULD SET A BRIEFING SCHEDULE AND ADJUST THE DISCOVERY SCHEDULE.**

The PBM Defendants and the Court have spent considerable time and energy focused on Plaintiffs' spoliation and late-issued legal holds. To help resolve these issues expeditiously, the PBM Defendants requested this Court set a briefing schedule giving (1) the PBM Defendants three weeks from the last 30(b)(6) deposition to file a motion for sanctions, (2) the Plaintiffs two weeks to respond, and (3) PBM Defendants one week to file a reply. The PEC opposes this request because it claims a motion for "sanctions" is not "warranted" under these circumstances. Dkt. 5521 at 17. But the PEC's argument is premature. Whether sanctions are warranted under Rule 37 will be the subject of the PBM Defendants' motion for sanctions *after* additional discovery into the scope of and intent behind plaintiffs' spoliation is obtained.[2]

---

[2] The PEC's argument is also incorrect. Although the PEC suggests that Rule 37(e)(1) is "purely remedial" and cannot be the basis for "sanctions," *see* Dkt. 5521 at 17, courts in this Circuit have not drawn any such distinction—"lesser sanctions" are available under Rule 37(e)(1) when the moving party demonstrates prejudice. *Drips Holdings, LLC v. Teledrip, LLC*, 2022 U.S. Dist. LEXIS 178233, at *5 (N.D. Ohio Sept. 29, 2022); *see Elman v. Wright State Univ.*, 2023 U.S. Dist.

14

The PBM Defendants also request that the Court modify discovery deadlines in all four PBM bellwether tracks (Tracks 12–15) because doing so would allow time to investigate and hopefully resolve the pressing spoliation issues. *See* Dkt. 5503 at 19. The PEC opposes this request claiming it would be premature to move discovery deadlines in Lincoln and Independence while "discovery pertaining to retention, replacement, and restoration is ongoing" and because there are no "preservation-related bas[es]" for modifying the discovery schedule in City of Rochester or Webb County. Dkt. 5521 at 20. The practical effect of the PEC's suggestion would be that Rochester would proceed ahead of all the other bellwether cases. Allowing a PEC-selected bellwether to progress, while the fate of the other bellwethers hangs in limbo, undermines the bellwether process and would further penalize the PBM Defendants for Plaintiffs' wrongdoing.

## CONCLUSION

The PBM Defendants respectfully request that the Court order the steps set forth above. Adopting the PEC's "solution" of severance at this stage, without any consequences for Plaintiffs' misconduct, and before either the Court or the parties know how pervasive these issues are among other pending or potential future cases, would be grossly unfair and improper.

July 19, 2024.

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Jonathan G. Cooper* |
| Brian D. Boone | Michael J. Lyle |
| Emily C. McGowan | Jonathan G. Cooper |
| Brandon C.E. Springer | **QUINN EMANUEL URQUHART &** |
| **ALSTON & BIRD LLP** | **SULLIVAN, LLP** |
| Vantage South End | 1300 I St. NW, Suite 900 |

---

LEXIS 129798 (S.D. Ohio Jul. 25, 2023) (precluding defendant from submitting certain items of evidence and ordering spoliating party to pay for fees for motion for sanctions under Rule 37(e)(1)); *DriveTime Car Sales Co., LLC v. Pettigrew*, 2019 U.S. Dist. LEXIS 66339, at *12 (S.D. Ohio Apr. 18, 2019) (issuing permissive adverse inference under Rule 37(e)(1)).

1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan
D. Andrew Hatchett
Bradley Harder
Caroline R. Strumph
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com
bradley.harder@alston.com
caroline.strumph@alston.com

Bradley M. Smyer
**ALSTON & BIRD LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Tel.: (214) 922-3400
brad.smyer@alston.com

*Attorneys for OptumRx, Inc., Optum, Inc., UnitedHealth Group Incorporated, OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc.*

Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Express Scripts Defendants*

## CERTIFICATE OF SERVICE

I certify that on July 19, 2024, a copy of the foregoing was served on all counsel of record by filing the same with the Court's ECF system.

                                                    */s/ Brian D. Boone*
                                                    Brian D. Boone