# EXHIBIT 2



401 9th St. NW, Suite 630
Washington, DC 20004
**o.** 202.232.5504 **f.** 202.232.5513

**E. Paige Boggs**
*Licensed in DC, IL, IN*
direct: 202.386.9629
pboggs@motleyrice.com

www.motleyrice.com

"I will stand for my client's rights.
I am a trial lawyer."
–Ron Motley (1944–2013)

July 16, 2024

**VIA EMAIL**
esi-opioids@quinnemanuel.com
Optum.opioid.team@alston.com

Re:   *In re: National Prescription Opiate Litigation,* MDL No. 2804 (N.D. Ohio), *City of Independence, Missouri v. Williams*, No. 19-op-45371 ("Track 14"); Discovery Letter

Counsel,

I write on behalf of Plaintiff City of Independence (the "City") to provide responses and updates concerning outstanding discovery issues that the Express Scripts and Optum Defendants ("Defendants") have raised.

### Questions from Defendants' May 24, 2024 Email Regarding Custodians

- **Please provide the names and date range for all individuals serving on the City Manager's Stay Well Committee.  Please also provide the exact date range that Cindy Culp served as chair of the Stay Well Committee.**

The City addressed the first question in its June 10, 2024 letter:

The Secretary of the Stay Well Committee maintains the minutes.  It has been the practice for the Secretary to send those minutes to the City Clerk.  The City collected the Stay Well Committee minutes in the possession of the City Clerk.  The earliest meeting minutes from the City Clerk are from 2009 then jump to 2015 and continue through 2022.  The City produced these meeting minutes on June 7th in INDOMO_004.  The City is continuing to look for additional minutes that are in the City's possession, custody, or control.  However, as stated in the City's May 17, 2024 letter, the representatives on the Stay Well Committee are union representatives and their union documents are not in the City's possession, custody, or control.  At this time, the City cannot determine the exact dates that Cindy Culp served on the Stay Well Committee.  The City will continue to conduct a reasonable search for this information.

Based on the meeting minutes produced in INDMO_004, the City believes the following individuals served on the Stay Well Committee during the following periods:



July 16, 2024
Page 2

| Name | Jan-09 | Jul-15 | Dec-15 | Mar-16 | Mar-17 | Jul-17 | Nov-17 | May-18 |
|---|---|---|---|---|---|---|---|---|
| Aaron Casebolt | | | | | | | | |
| Alicia Nelson | | | alternate | alternate | | | | |
| Anna Leuty | | | | | | | | |
| Anna Leuty | | | | | | | | |
| Bill Trotters | | yes | | | | | | |
| Chris Rohrs | | yes | yes | yes | yes | yes | yes | yes |
| Cindy Culp | yes | yes | yes | yes | yes | yes | yes | yes |
| Darlene Dieckmann | yes | yes | | | | | | |
| Ike Guinn | yes | | | | | | | |
| Jack Taylor | | | yes | yes | yes | yes | yes | yes |
| Jamie Franklin | | yes | yes | yes | yes | yes | yes | yes |
| Jane Smitka | yes | | | | | | | |
| Jeff Hayes | | | | | | | | |
| Jeff Reynolds | | | | | | | | |
| Jeff Seevers | yes | | | | | | | |
| Jim Nail | | | yes | yes | yes | yes | yes | yes |
| Juston Smith | | yes | yes | yes | yes | yes | | |
| Katie Taylor | | yes | yes | yes | yes | yes | yes | yes |
| Kay Burrus | yes | | | | | | | |
| Kay Burrus | | | alternate | | | | | |
| Michael Veit | | yes | yes | yes | yes | yes | yes | yes |
| Mike Laber | yes | yes | yes | yes | yes | yes | yes | yes |
| Nate Newlon | | | alternate | alternate | | | | |
| Norm Martin | | | | | yes | yes | yes | yes |
| Pat Bounds | yes | | | | | | | |
| Phil Camerlynck | yes | | | | | | | |
| Regina Moore | | | | | | | | |
| Ron Leeson | | | | alternate | | | | yes |
| Russ Brink | yes | | | | | | | |
| Stephanie Fitzpatrick | | | | | | | | |



July 16, 2024
Page 3

| Name | Jan-09 | Jul-15 | Dec-15 | Mar-16 | Mar-17 | Jul-17 | Nov-17 | May-18 |
|---|---|---|---|---|---|---|---|---|
| Tammy Lindsey | | | | | | | | |
| Terri Covington | yes | | | | | | | |
| Terry Dorman | | | | | | | | |
| Tom Gebken | | | | | | | | |

| Name | Mar-19 | Oct-19 | Dec-20 | Dec-20 | Jun-21 | Mar-22 | Sep-22 |
|---|---|---|---|---|---|---|---|
| Aaron Casebolt | | | | | | | yes |
| Alicia Nelson | | | | | | | |
| Anna Leuty | | | | | | yes | yes |
| Anna Leuty | | | | | | | yes |
| Bill Trotters | | | | | | | |
| Chris Rohrs | yes | yes | | | | | |
| Cindy Culp | yes | yes | yes | yes | yes | yes | yes |
| Darlene Dieckmann | | | | | | | |
| Ike Guinn | | | | | | | |
| Jack Taylor | | | | | | | |
| Jamie Franklin | yes | yes | yes | yes | | | |
| Jane Smitka | | | | | | | |
| Jeff Hayes | yes | yes | yes | yes | | | |
| Jeff Reynolds | | | | | | yes | |
| Jeff Seevers | | | | | | | |
| Jim Nail | yes | yes | | | | | |
| Juston Smith | | | | | | | |
| Katie Taylor | | | | | | | |
| Kay Burrus | | | | | | | |
| Kay Burrus | | | | | | | |
| Michael Veit | yes | yes | yes | yes | yes | yes | yes |
| Mike Laber | yes | yes | yes | | yes | | |
| Nate Newlon | | yes | | | yes | | |
| Norm Martin | yes | | | | | | |



July 16, 2024
Page 4

| Name | Mar-19 | Oct-19 | Dec-20 | Dec-20 | Jun-21 | Mar-22 | Sep-22 |
|---|---|---|---|---|---|---|---|
| Pat Bounds | | | | | | | |
| Phil Camerlynck | | | | | | | |
| Regina Moore | | | | | | yes | |
| Ron Leeson | yes | | | | yes | | |
| Russ Brink | | | | | | | |
| Stephanie Fitzpatrick | | | | yes | yes | yes | yes |
| Tammy Lindsey | | | yes | yes | yes | yes | yes |
| Terri Covington | | | | | | | |
| Terry Dorman | | | | | | yes | yes |
| Tom Gebken | | | yes | yes | yes | yes | yes |

**July 16, 2024 Update:**

  The Benefits Administrator from the Human Resources Department also attends the Stay Well Committee meetings. The City found paper documents in the Benefits Administrator's office dating back to at least 1996. These documents are currently being scanned and uploaded for review.

  The City has not been able to determine the exact dates that Cindy Culp served on the Stay Well Committee.

    **Questions from Defendants' May 27, 2024 Email Regarding Custodians**

- **Please advise if the City has any hard-copy or other documents for the following individuals:**

  The City provided the following answer in its June 10, 2024 letter:

| Name | Position | Dates of Employment | Answer |
|---|---|---|---|
| | | | |



July 16, 2024
Page 5

| Larry Hodge | Chief of Fire | 1995-2004 | Hard copy binders of Chief Hodge's correspondence covering this entire period exist. The City has also found an electronic folder where Chief Hodge's executive assistant saved correspondence, memos, and information, largely on personnel matters |
| --- | --- | --- | --- |
| Mark Widner | Emergency Preparedness Division – Fire Department, Manager | 2004-2011 | The City has identified a server that may contain documents from the 2009-2011 time period belonging to Manager Widner. |
| Garry George | Police Chief, Police Department | 1997-2001 | The City does not have hard copy documents for former Chief George. |
| Frederick Mills | Police Chief, Police Department | 2001-2008 | The City does not have hard copy documents for former Chief Mills. |

**Questions from Defendants' June 3, 2024 Email Regarding Custodians**

- **Does the February 19, 2014 email cut-off date apply to all City employees? Does it apply to the custodians the PBM Defendants have already selected to the extent they were employed at that time?**

The City switched its email server to Microsoft 365 in 2014, but it does not know the precise month or date. The City cannot determine the specific cut-off date for all City employees. For some employees, the City has emails that pre-date 2014 for reasons unknown to the City. If Defendants want the date range of any specific employee's email file, the City will provide it.

- **Why are the contents of employees' personal drives unavailable prior to 2012? Are all City employees required to save documents to their personal drives or is such saving undertaken on an ad hoc basis? Are emails saved to such personal drives?**

The City provided the following answer in its June 10, 2024 letter:



July 16, 2024
Page 6

The City upgraded their file servers several times, and it appears that a new creation date was created each time for documents in the drives.  City employees are not required to save documents to specific drives. There is no policy or practice of saving emails to personal drives.

- **When will the City produce additional City Council meeting minutes?**

The City provided the following answer in its June 10, 2024 letter:

The City produced an initial batch of City Council meeting minutes on June 7, 2024 (*see* INDOMO_004).  The remainder was produced in INDOMO_005 on June 11, 2024.

- **Who from Health Disease Prevention Division worked on the initial PDMP plan? What time period did they work on the initial PDMP plan? For clarification, please also confirm whether you are referring to the Missouri statewide PDMP or a different PDMP.**

The City provided the following answer in its June 10, 2024 letter:

To date, the City has identified two individuals who it believes worked on a PDMP plan, Alicia Nelson, a Public Health Manager in 2015-2017, and Andrew Warlen, the former Health Director. We believe additional information will be found as the City continues to review and produce materials from the Health Department.  The City does not yet know whether the PDMP plan on which these individuals worked was the Missouri statewide PDMP or a different PDMP.

**July 16, 2024 Update:**

The City learned that the individuals identified above both worked on a potential local PDMP in collaboration with Jackson County, the City of Independence, and Kansas City.  A review of custodial files is needed to find dates that individuals worked on this project, which is underway.

- **Please identify historical members of the Independence Mental Health Task Force. When will it do so?**

The City provided the following answer in its June 10, 2024 letter:

This information is contained in the meeting minutes from the Independence Health Department Community Health Improvement Plan: Mental Health Workgroup.  The City is collecting these minutes from the Health Department's shared drive and will produce all



July 16, 2024
Page 7

responsive, non-privileged meeting minutes that hit on the agreed upon search terms. In addition, the City states the following:

According to the Workgroup's August 16, 2016 meeting minutes, the following individuals attended the workgroup meeting on that date:

- Gina Armitage – Comprehensive Mental Health Services (CMHS)
- Joy Copeland – Comprehensive Mental Health Services (CMHS)
- Paul Rada – Truman Medical Center (TMC)
- Lori Halsey – Independence School District (ISD)
- Rev. Sarah Wimberley – Independence Ministerial Alliance (IMA)
- Christina Heinen – Independence Health Department (IHD)

The City is collecting and will produce additional minutes that are responsive and non-privileged.

**Questions from Defendants' June 5, 2024 Letter Regarding the City's Document Productions**

- **Provide a data dictionary and/or description of the ARCH program spreadsheets and the data fields within them (*see* INDMO001067; INDMO0012070).**

The City provided the following answer in its June 10, 2024 letter:

The City conducted a reasonable search for database dictionaries and believes none exist. The City asked Defendants to identify the specific fields about which Defendants have questions and indicated the City would make best efforts to answer them. The City has yet to receive any follow up.

Also, INDMO001067 appears to be a CDC report on dispensing rates—not an ARCH program spreadsheet. If Defendants intended to refer to a different document, please provide a corrected Bates Number.

- **Confirm that the City's produced budget for 2018-2019 is the City's final, approved and adopted budget for 2018-2019.**

The City has not been able to confirm whether the produced budget for 2018-2019 is the City's final, approved and adopted budget for 2018-2019.

Case: 1:17-md-02804-DAP  Doc #: 5532-2  Filed: 07/19/24  9 of 14.  PageID #: 639971



July 16, 2024
Page 8

- **With respect to the City's Jail Medical Overdose report (INDMO0040798), provide a data dictionary and/or description of the data fields within the spreadsheet.**

As the City indicated in its June 10, 2024 letter, the City conducted a reasonable search for a database dictionary and does not believe one exists.

**July 16, 2024 Update:**

The City has located manuals for dispatchers coding emergency calls. The City will produce these manuals in its next production, INDMO_008.

### Questions from Defendants' June 5, 2024 Letter Regarding the City's Data-Related Productions

- **Defendants raised various issues and questions regarding the City's production of claims/rebate data, dispensing/prescription data, and financial data.**

**July 16, 2024 Update:**

The claims/rebate, dispensing and prescription data is managed by third parties and thus not within the City's possession, custody, or control. To the extent that any of this data appears in custodial files or shared electronic files on the City servers, the City will produce it.

For financial data, the City will produce reports from 1999-2023. The reports will show line-item expenditures and income for those years. The data dictionary provided on February 19th applies to these reports. The City is not withholding any data fields in its data production.

### Questions from Defendants' June 13, 2024 Email

- **Please identify for the Relevant Time Period, each person designated as Senior Health Coordinator or equivalent role/position with the responsibility for providing education about and support for prescription drug plan options**.

The "Senior Health Coordinator" role was held by Susan Laitner, a Public Health Nurse in the Department of Health. Ms. Laitner worked for the City from 1997-2009. This position was created to assist "seniors" in the community with their plans/options.

- **Please confirm the City will produce all documents relating to the suspected "Pill Laboratory" (*see* INDMO0003979) investigation and any other investigation into suspected pill laboratories or pill mills in the City of Independence.**



July 16, 2024
Page 9

The City will conduct a reasonable search for and produce any responsive, non-privileged documents that are in its possession, custody, or control relating to pill mills.

- **Please confirm the City will produce all responsive documents and communications concerning its partnerships with the Independence School District regarding a "Talk, They Hear You" campaign, the Independence Youth Court Office, Jackson County Drug Task Force, Jackson County Department of Emergency Preparedness, Jackson County COMBAT, and others.**

The City will conduct a reasonable search for and produce any responsive, non-privileged document and communications that are in its possession, custody, or control relating to its relevant partnerships.

- **With respect to RFP No. 18, documents also show the City has a Drug Abuse Resistance Education (now Students Transitioning Exceptionally Prepared – STEP) program. Please confirm that You will produce all responsive documents and communications about this program.**

The City will conduct a reasonable search for and produce any responsive, non-privileged documents in its possession, custody, or control relating to the Drug Abuse Resistance Education (now Students Transitioning Exceptionally Prepared – STEP) program.

**Questions Regarding Ransomware Attack from Defendants' May 22, 2024 Email**

1. **On what date did the ransomware attack occur?**

The threat actors took the City's system down on December 4, 2020. In addition, through the City's investigation, it was able to determine that certain employee email accounts may have been accessed without authorization between September 7, 2020, and December 1, 2020.

2. **On what date was the ransomware attack discovered?**

On December 4, 2020, the City noticed suspicious activity and learned the City's system was infected with "egregor" and access could only be regained through a threat actor.

3. **How was the attack carried out?**

It was a ransomware attack with an egregor ransomware variant.



July 16, 2024
Page 10

        a.   Who was the threat actor?

The threat actor was Egregor.

**4.**    **What data were affected by the attack, including types of data and employees and departments affected?**

The attacker claimed it took 15 gigabytes of compressed data, which included access to personal identifiable information of the City's employees and constituents, including social security numbers and driver's license information. The impacted data came from 170 city servers, including servers containing the City's legacy email system and restaurant inspection software, in addition to servers serving Independence Power & Light and Independence Water Department.

**5.**    **Did the impacted data contain health or medical information?  If so, what kind?**

Yes, the ransomware attack impacted health insurance and medical information for some City employees.

**6.**    **What timeframe did the data impacted by the attack cover?**

The City has not been able to determine the timeframe of the data impacted by the ransomware attack.

**7.**    **To whom was the ransomware attack reported, including federal and state agencies?**

The City reported the ransomware attack to the FBI. Pursuant to various state laws, the City also provided notice of the attack to the State Attorney General of the following states: Indiana, Louisiana, Maine, Missouri, Montana, North Carolina, Nebraska, New York, and Virginia.

**8.**    **Were current and/or former employees affected by the attack notified?**

Yes.

        a.   If so, which employees?

The City provided notice of the ransomware attack to over 3,000 affected current and former employees.



July 16, 2024
Page 11

9. **Other than employees, were any other subjects of the impacted data notified? If so, who?**

The ransomware attack also impacted residents of the City of Independence. The City notified the affected individuals by mail and through a press release. *See* City of Independence, *City of Independence Provides Notice to Individuals Potentially Impacted by Cyber Incident*, (July 16, 2020), https://www.prnewswire.com/news-releases/city-of-independence-provides-notice-to-individuals-potentially-impacted-by-cyber-incident-301335790.html.

10. **How much did the threat actor demand in ransom?**

The threat actor initially demanded one million dollars, but the City's counsel negotiated the ransom down to $400,000. It is far from certain that payment of the ransom would have resulted in the City gaining access to its pre-2014 emails.

11. **Was a ransom paid?**

No.

    a. **If so, how much was paid?**
    b. **If so, what files, if any were returned to the City?**
    c. **If not, why not?**

The City objects to this question because it calls for information protected by attorney-client information and/or attorney work product.

12. **What data were lost as a result of the attack, including by employee, department, type, and timeframe?**

The City was able to rebuild the impacted servers and/or restore the information contained on the servers except for the server containing the pre-2014 legacy email system.

13. **Did the City hire any consultants to investigate or respond to the attack?**

Yes.

    a. **If so, who?**



July 16, 2024
Page 12


The City hired the law firms Mullen Coughlin LLC and Charles River Associates.  In addition, the City hired Experian to handle inquiries relating to the incident and provide credit monitoring services to affected individuals.

**14.     Were any reports concerning the attack prepared?**

The City did not prepare a report concerning the attack; however, the City did report the incident to the FBI as noted in response to Question 7 above.

**15.     Was there litigation as a result of the attack?**

No.

**a.  If so, was a litigation hold put in place for that litigation**?

Yes, Mullen Coughlin sent the City a litigation hold and document preservation order the day they were retained on December 5, 2020.

**Questions Regarding Ransomware Attack from Defendants' July 5, 2024 Letter**

- **how much ransom was demanded?**

The threat actor initially demanded one million dollars, but the City's counsel negotiated the ransom down to $400,000.

- **how much it would have cost the City to gain access to the pre-2014 emails (accounting for any insurance coverage)?**

If the City had decided to pay the ransom, the City's out-of-pocket payment would have been $25,000.  It is far from certain that payment of the ransom would have resulted in the City gaining access to its pre-2014 emails.

- **why the City decided not to pay the ransom?**

The City objects to this question because it calls for information protected by the attorney-client, attorney work product, and deliberative process privileges.

- **the persons involved in making that decision?**

The City Manager and the City Council made the decision.



July 16, 2024
Page 13

- **Please also produce the policy pursuant to which you allege the pre-2014 emails were destroyed.**

    The City will produce the relevant policy.

                                            Sincerely,

                                            */s/ Paige Boggs*
                                            Paige Boggs

cc:     PBM@listserv.motleyrice.com
        CT12-15_PBM_PLAINTIFFS_DD_TEAM@LISTSERV.MOTLEYRICE.COM