# EXHIBIT 4



**Sanford Heisler Sharp, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, DC 20003
Telephone: (202) 499-5200
Fax: (202) 499-5199
www.sanfordheisler.com

*James Hannaway,* Senior Litigation Counsel
(202) 499-5203
jhannaway@sanfordheisler.com        New York | Washington, DC | San Francisco | Palo Alto | Baltimore | Nashville | San Diego

July 16, 2024

**VIA [Email]**
esi-opioids@quinnemanuel.com
Optum.opioid.team@alston.com

>   Re:    *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio)
>          *Webb County v. Purdue Pharma, L.P. et al.*, Case No. 1:18-op-45175-DAP
>          (Track 15) Discovery Letter

Counsel:

I write on behalf of Plaintiff Webb County, Texas (the "County") in response to the PBM Defendants' July 10, 2024 letter.

### I.    Custodian Selection and Available ESI

Your letter contains numerous inaccuracies. Webb County has not "unilaterally removed" any potential custodians. As we explained in our July 5 letter, there are a number of former Webb employees or former elected officials about whom the PBMs have inquired and for whom our IT review is ongoing. The County is reviewing its archive of back-up tapes for any potentially responsive documents or emails belonging to these individuals. In this process, the County has dedicated considerable time, money, and effort indexing over 3,000 back-up tapes. The County has identified at least 22 back-up tapes that appear to include .pst files from 2008 through 2017. The County is in the process of determining how and when these tapes can be restored in a usable form and will provide a further update by July 26, 2024. To be clear, the chart circulated on July 5, 2024 provided a comprehensive picture of any individuals for whom the County could currently confirm the availability of emails and the earliest date on which emails are available. The chart included 49 individuals, many of whom with available emails dating back to the mid-2000s. The PBM Defendants have ample information from which to make further custodial selections.

Second, Webb County has emails for all individuals in the July 5 chart, from the identified earliest available date to the present **or** the last day of their employment with the County, whichever is later.

Third, the "gaps" to which we refer in our letter are gaps between the commencement date of several individuals' employment and their earliest email." Similar gaps exist on the PBM side, for example, for ESI employees Andy Behm, Glen Stettin, Ed Adamcik, Eileen Biddell, Susan Peppers, Al De Carlo, and Rochelle Henderson. The ongoing tape review described may identify additional emails for these individuals.

esi-opioids@quinnemanuel.com
Optum.opioid.team@alston.com
July 16, 2024
Page 2 of 3

We have no objections to the inclusion of the custodians you have identified. We do need to correct one item in the Personnel Chart circulated on June 14, 2024. We inadvertently identified Mr. Victor Vasquez as an administrator for **Mr. Miguel Villareal**, who serves as a Webb County Constable (and who you have selected as a custodian). In fact, Mr. Vasquez is the administrator for **Judge Victor Villareal**, who runs the Webb County DWI Court and Juvenile Drug Treatment Court. Please let us know if you have any questions regarding this correction.

## II. Search Terms

The County has provided its TPAs and insurance consultants for the majority of the relevant period. Any missing information will be provided no later than July 22, 2024. There is no reason to adjust our agreed- upon search terms, which track the search terms applied in the City of Rochester's case.

## III. Questions Regarding County Government Responsibilities

In response to your first follow-up grant oriented questions, James Flores generally works to write grant applications to fund Webb County programs and Victor Vasquez assists in writing grant applications related to the Drug and DWI Courts. Other departments also have the ability identify grants that are relevant for the department, which can then be submitted through the Commissioners' Court for approval. Those requests are typically submitted by the head of any given department. We are currently unaware of particular individuals whose work primarily involves the identification or allocation of grant funding beyond the individuals we previously identified. Relevant information about the amount, allocation, type, and department involved in a grant opportunity are identified in Commissioners' Court agendas and minutes.

As for your questions about individuals with knowledge about Mexican cartels and border crossings involving opioid sales, our responses to other questions about illegal trafficking identify the relevant individuals of whom we are currently aware.

## IV. The County's Objections to Requests for Production Nos. 12, 13, and 15 Based On 42 C.F.R. 2.64

The protections set forth in Part 2 are "strong …, not to be lightly set aside, and mere relevance to a potential defense is not enough. The statute itself gives an example of the type of good cause which would justify abrogation of the privilege, and it is obvious that there is no 'need to avert a substantial risk of death or serious bodily harm.'" *Mosier v. Am. Home Patient, Inc.*, 170 F. Supp. 2d 1211, 1214 (N.D. Fla. 2001). Part 2 precludes disclosure of, among other things, "any record reflecting a diagnosis identifying a patient as having or having had a substance use disorder which is initially prepared by a part 2 provider in connection with the treatment or referral for treatment of a patient with a substance use disorder." 42 C.F.R. 2.12(e)(4). Violations of the Part 2 regulations subject the offending party to criminal penalties. 42 C.F.R. 2.3. Importantly, and contrary to your assertion, any court order authorizing disclosure of Part 2 records, must, among

esi-opioids@quinnemanuel.com
Optum.opioid.team@alston.com
July 16, 2024
Page 3 of 3

other things, afford both the patient and record holder "adequate notice" of the potential disclosure and "an opportunity to file a written response to the application, or to appear in person." 42 C.F.R. 2.64(b).

The Court has acknowledged that Part 2 protects production of patient-identifying information (notwithstanding the existence of CMO-2) on several occasions in previous tracks. See, e.g., Dkt. 1147 (requiring production of de-identified claims data subject to Part 2); Dkt. 1421 (same).

Treatment records are, by their very nature, Part 2 protected records. Merely redacting names or birthdates would not be sufficient to de-identify such information. Information concerning prescriptions, drug use or other information could be traced back to arrest records, prescription records or other sources and used to re-identify the individuals, thus constituting a Part 2 violation. The records would have to be de-identified consistent with section 164.514(b)(2) of the HIPAA Privacy Rule, which would leave very little by way of useful information and therefore is not proportional to the needs of the case. If there are particular designations or redactions that PBM Defendants dispute, the parties can meet and confer at that time.

V. County Arrest Records

The County intends to produce a summary spreadsheet reflecting narcotics-related offenses by July 26, 2024.

Sincerely,

James Hannaway

Encl.
cc:   PBM@listserv.motleyrice.com
      CT12-15_PBM_PLAINTIFFS_DD_TEAM@LISTSERV.MOTLEYRICE.COM
      WebbCountyLitigationTeam@sanfordheisler.com