## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION | MDL 2804 |
| OPIATE LITIGATION | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| *City of Independence, Missouri v. Williams,* No. 19-op-45371 (Track 14) | |
| *County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | |

## PLAINTIFFS' OPPOSITION TO CERTAIN DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (DOC. 5446) AND MEMORANDUM OF LAW IN SUPPORT

July 19, 2024

## TABLE OF CONTENTS

LEGAL STANDARD..................................................................................................... 2

ARGUMENT ................................................................................................................ 3

I.   THE RICO STATUTE PROVIDES A BASIS FOR THIS COURT TO EXERCISE
PERSONAL JURISDICTION OVER THE MOVING DEFENDANTS. .................................. 3

    A.   RICO Authorizes Personal Jurisdiction Over Additional RICO Defendants So Long As
The Court Otherwise Has Personal Jurisdiction Over At Least One Defendant. ...................... 4

    B.   This Court Has Personal Jurisdiction Over OptumRx, Inc................................................. 5

    C.   Waivers Of Service Have Been Filed For All Of The Moving Defendants. ...................... 7

    D.   The Ends Of Justice Compel This Court To Exercise Personal Jurisdiction Over All
Defendants. ........................................................................................................................... 8

        1.   The Ends Of Justice Are Served By Trying All RICO Defendants Together. ............. 10

        2.   Dismissing The Moving Defendants Would Cause Substantial Delay. ...................... 16

        3.   Moving Defendants Face Little Burden Litigating In This Court. .............................. 16

    E.   The Court Also Has Pendent Jurisdiction Over Plaintiffs' State Law Claims. ................ 17

II.   IN THE ALTERNATIVE, PLAINTIFFS RESPECTFULLY REQUEST THAT THIS
MOTION BE HELD IN ABEYANCE UNTIL JURISDICTIONAL DISCOVERY IS
COMPLETE. ............................................................................................................... 19

CONCLUSION............................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
    368 F.3d 1174 (9th Cir. 2004) ...............................................................................19

*Anthony v. Van Over*,
    No. 3:22-cv-416, 2023 WL 6307960 (E.D. Tenn. Sept. 27, 2023)................................8, 10, 16

*Anwar v. Dow Chem. Co.*,
    876 F.3d 841 (6th Cir. 2017) ....................................................................................3

*Brewer v. All. Coal, LLC*,
    No. CV 20-41-DLB-EBA, 2021 WL 3057380 (E.D. Ky. July 20, 2021) ..............................19

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) .....................................................................................9

*C.B. Fleet Co., Inc. v. Colony Specialty Ins. Co.*,
    No. 1:11–CV–0375, 2011 WL 13131001 (N.D. Ohio. May 10, 2011) ..................................19

*Canaday v. Anthem Co., Inc.*,
    9 F.4th 392 (6th Cir. 2021) .......................................................................................18

*Cory v. Aztec Steel Bldg., Inc.*,
    468 F.3d 1226 (10th Cir. 2006) .................................................................................8, 9

*Doe v. Varsity Brands, LLC*,
    No. 1:22-cv-02139, 2023 WL 4935933 (N.D. Ohio Aug. 2, 2023)........................8, 10, 16, 17

*Drexel Chem. Co. v. SGS Depauw & Stokoe*,
    59 F.3d 170 (6th Cir. 1995) ......................................................................................19

*Enginetec Corp. v. Boutin*,
    2008 WL 11380215 (N.D. Ohio Dec. 5, 2008) ...............................................................9

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    592 U.S. 351 (2021)...............................................................................................6, 7

*Gundaker/Jordan Am. Holdings, Inc. v. Clark*,
    No. 04–226–JBC, 2008 WL 4585462 (E.D. Ky. Oct. 13, 2008)...........................................19

*Hall v. Trivest Partners, L.P.*,
    No. 22-12743, 2023 WL 5941729 (E.D. Mich. Sept. 12, 2023)........................................8, 9

*Hall v. Trivest Partners, L.P.*,
    No. 22-12743, 2024 WL 660172 (E.D. Mich. Feb. 16, 2024)................................................9

*High Adventure Ministries, Inc. v. Tayloe*,
    309 F. Supp. 3d 461 (W.D. Ky. 2018).........................................................................9

*In re Cardizem CD Antitrust Litig.*,
    332 F.3d 896 (6th Cir. 2003) .....................................................................................2

**TABLE OF AUTHORITIES**
(continued)

*In re Nat'l Century Fin. Enterprises, Inc.*,
    846 F. Supp. 2d 828 (S.D. Ohio 2012) .................................................................2

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-md-2804 (N.D. Ohio Apr. 3, 2019) .....................................................19

*Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*,
    23 F. Supp. 2d 796 (N.D. Ohio 1998)...........................................................10, 18

*IUE AFL-CIO Pension Fund v. Herrmann*,
    9 F.3d 1049 (2d Cir. 1993)................................................................................19

*J.M. Smucker Co. v. Promotion in Motion, Inc.*,
    420 F. Supp. 3d 646 (N.D. Ohio 2019)....................................................4, 17, 18

*Jonna v. GIBF GP, Inc.*,
    617 F. Supp. 3d 789 (E.D. Mich. 2022)..............................................................18

*Keller v. Keller*,
    No. 03-21-00309-CV, 2023 WL 2169490 (Tex. App. Feb. 23, 2023) ....................6

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
    106 F.3d 147 (6th Cir. 1997) ...............................................................................3

*M11 Motors, LLC v UP Trading, LLC*,
    2017 WL 6624509 (N.D. Ohio Dec. 28, 2017) .....................................................9

*Malone v. Stanley Black & Decker, Inc.*,
    965 F.3d 499 (6th Cir. 2020) ...........................................................................3, 7

*Oetiker v. Jurid Werke, G.m.b.H.*,
    181 U.S. App. D.C. 124, 556 F.2d 1 (D.C. Cir. 1977) .......................................19

*Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*,
    40 F.4th 432 (6th Cir. 2022) ..................................................................... *passim*

*Preferred RX, Inc. v. Am. Prescription Plan, Inc.*,
    46 F.3d 535 (6th Cir. 1995) .................................................................................5

*Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*,
    No. 3:09-cv-1584, 2010 WL 819063 (N.D. Ohio Mar. 9, 2010).................... *passim*

*Robinson v. Penn Central Co.*,
    484 F.2d 553 (3d Cir. 1973)...............................................................................19

*Schneider v. Hardesty*,
    669 F.3d 693 (6th Cir. 2012) ...............................................................................2

*Smith v. Swaffer*,
    No. 1:21-CV-2095, 2023 WL 35151 (N.D. Ohio Jan. 4, 2023) ...........................18

*Suarez Corp. Indus. v. McGraw*,
    71 F. Supp. 2d 769 (N.D. Ohio 1999)......................................................10, 16, 17

## TABLE OF AUTHORITIES
### (continued)

*Sullivan v. LG Chem, Ltd.*,
    79 F.4th 651 (6th Cir. 2023) ........................................................................................2

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) ...............................................................................3, 19

*Travis v. Anthes Imperial Ltd.*,
    473 F.2d 515 (8th Cir. 1973) .....................................................................................19

*Wuliger v. Positive Living Resources*,
    410 F. Supp. 2d 701 (N.D. Ohio 2006).......................................................................3

**Statutes**

Mo. Rev. Stat. § 506.500 ...................................................................................................6

RICO, 18 U.S.C. § 1965 ...........................................................................................*passim*

Tex. Civ. Prac. & Rem. Code § 17.042 ............................................................................6

**Court Rules**

Federal Rule of Civil Procedure 4(k)(1) .................................................................3, 4, 7, 8

Federal Rule of Civil Procedure 12(b)...........................................................................1, 5

Federal Rule of Civil Procedure 12(h)(1) .........................................................................1

**Other Authorities**

*MMIT PBM Profile OptumRx*, MMIT, 19-21 (September 2023),
    https://info.mmitnetwork.com/hubfs/Marketing%20Content/Infographics/PB
    M%20Profile%20Sample.pdf ....................................................................................6

Certain Optum defendants (the Moving Defendants)[1] bring this joint motion pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss for lack of personal jurisdiction in both the CT14 (*City of Independence, Missouri*) and CT15 (*County of Webb, Texas*) bellwether cases against pharmacy benefit manager (PBM) Defendants.  Doc. 5446.  The Moving Defendants' motion should either be denied outright or held in abeyance pending the completion of jurisdictional discovery.[2]

The Moving Defendants contend that this Court lacks personal jurisdiction over them because they lack minimum contacts with Missouri (CT14) and with Texas (CT15), the two transferor jurisdictions.  This Court need not reach that question because it has personal jurisdiction over each of the Moving Defendants pursuant to § 1965(b) of the RICO statute, as alleged in Plaintiffs' complaints.  Doc. 5296-4 (Independence Am. Compl.) at ¶ 80; Doc. 5296-5 (Webb Am. Compl.) at ¶ 79.  RICO § 1965(b) provides that so long as a court has personal jurisdiction over one RICO defendant, it can also exercise jurisdiction over any other RICO defendants nationwide

---

[1] The Moving Defendants are UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc., which were joined to the case as part of the amendment process based on the revelation of information demonstrating the myriad ways in which these entities were involved in the RICO enterprise alleged and other malfeasance which form the bases of Plaintiffs' claims.  Neither OptumRx, Inc., the parent company of several of the Optum entities, nor the Express Scripts ("ESI") Defendants have challenged the Court's personal jurisdiction over them and instead have moved to dismiss under FRCP 12(b)(6) (Doc. 5447), thereby waiving any personal jurisdiction defense.  FRCP 12(h)(1).

[2] Since the time the Moving Defendants filed this motion, the parties have reached a stipulation that would dismiss all of the Optum defendants from Tracks 12 through 15 except OptumRx, Inc., OptumInsight, Inc. and OptumInsight Life Sciences, Inc.  The stipulation has yet to be effectuated and no dismissals have been filed as of the date of this submission.  But even assuming that such dismissals will eventually be filed, the stipulation will not moot the jurisdictional challenges brought by OptumInsight Inc. and OptumInsight Life Sciences, Inc., which are not being dismissed.  Moreover, Plaintiffs' primary argument—that because the Court has jurisdiction over OptumRx, Inc., the RICO statute confers personal jurisdiction over the remaining Optum defendants—applies with equal force to all of the Moving Defendants; it does not require separate analysis for each of them.  The stipulation thus does not affect the need to address the question of RICO personal jurisdiction raised by this motion.

if the ends of justice require it. 18 U.S.C. § 1965(b). Moreover, under the principles of pendent jurisdiction, this Court can also exercise personal jurisdiction over Plaintiffs' state-law claims because those claims arise from the same nucleus of facts as the RICO claims. Thus, § 1965(b) provides sufficient basis for this Court to deny the Moving Defendants' motion outright without regard to the forum contacts of any of them.

Alternatively, the Court should hold the motion in abeyance until jurisdictional discovery has been completed. While Plaintiffs contend that this motion may be denied on its face, Plaintiffs, seeking to avoid unnecessary further delay, served written jurisdictional discovery on April 17, 2024. Defendants have refused to respond substantively to these requests. There is a reasonable basis to expect that discovery will confirm that the Moving Defendants (or those that remain in the case) have sufficient contacts with the transferor forum states to provide an alternative basis for personal jurisdiction over them. If the Court has any doubt that Moving Defendants' motion should be denied at this time, the Court should hold resolution of the motion in abeyance until this discovery is complete.

## LEGAL STANDARD

A plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012).[3] Where the complaint makes out a *prima facie* case of personal jurisdiction, however, the burden shifts to the defendant and "[t]he defendant's motion to dismiss must be supported by evidence." *Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 437 (6th Cir. 2022); *accord Sullivan v. LG Chem, Ltd*., 79 F.4th 651, 660 (6th Cir. 2023). If the defendant meets that burden and supports its motion with evidence, the burden shifts back to the plaintiff who "must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Sullivan*, 79 F.4th at 660; *Peters*, 40 F.4th at 437-38. Here, the Moving

---

[3] "For issues of federal law, a transferee court receiving a case from the Judicial Panel on Multidistrict Litigation applies the law of the circuit in which it is located." *In re Nat'l Century Fin. Enterprises, Inc.*, 846 F. Supp. 2d 828, 849 (S.D. Ohio 2012) (citing *In re Cardizem CD Antitrust Litig.*, 332 F.3d 896, 912 n.17 (6th Cir. 2003)).

Defendants have failed to submit evidence of any kind.  Accordingly, Plaintiffs are not required to submit any evidence and need only show that their pleadings make out a *prima facie* case for personal jurisdiction.  *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017).[4]

In this context, the plaintiff's burden is slight.  *See id.*; *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504-05 (6th Cir. 2020) ("'relatively slight' burden of a *prima facie* showing"); *Wuliger v. Positive Living Resources*, 410 F. Supp. 2d 701, 704 (N.D. Ohio 2006) (standard "is minimal").  Moreover, in assessing whether a plaintiff has met this burden, the district court must read the pleadings in the light most favorable to plaintiff.  *Peters,* 40 F.3th at 438; *Theunissen,* 935 F.2d at 1459.  "Dismissal [without an evidentiary hearing] is proper only if *all* the specific facts which the plaintiff . . . alleges collectively fail to state a *prima facie* case for jurisdiction."  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (emphasis in original).

## ARGUMENT

## I.    The RICO Statute Provides A Basis For This Court To Exercise Personal Jurisdiction Over The Moving Defendants.

"Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute."  Fed. R. Civ. P. 4(k)(1)(C).  And once personal jurisdiction is established over at least one defendant, the federal RICO statute provides for nationwide service of process over additional defendants where "the ends of justice require" it.  18 U.S.C. § 1965(b).  Construing Rule 4 and § 1965 together , the Sixth Circuit has explained that, if the Court has personal jurisdiction over at least one RICO defendant under Rule 4, "[t]hen

---

[4] Where a defendant does meet its burden to present evidence in support of its motion, the Court "has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions . . . .  The court has discretion to select which method it will follow, and will only be reversed for abuse of that discretion." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  Here, as noted above, there are not factual issues to resolve because the Moving Defendants have failed to meet their burden to controvert the allegations of the pleadings with evidence.  Nonetheless, as discussed below, should the Court find the pleadings insufficient to establish jurisdiction at this juncture, Plaintiffs should be given the opportunity to complete jurisdictional discovery in order to establish the jurisdictional facts.

§ 1965(b) extends personal jurisdiction through nationwide service of process over 'other parties residing in any other district,' as long as . . . the 'ends of justice' require it." *Peters*, 40 F.4th at 440. And, a court that has personal jurisdiction over one claim may also generally exercise personal jurisdiction over related state-law claims arising from the same nucleus of facts under the doctrine of pendent personal jurisdiction. *J.M. Smucker Co. v. Promotion in Motion, Inc.*, 420 F. Supp. 3d 646, 658-59 (N.D. Ohio 2019).

As discussed below, in this case, the requirements for state law jurisdiction (including the requirements of due process) are met with respect to at least one Defendant and the requirements of § 1965(b) for personal jurisdiction over all the other Defendants are satisfied. No more is required.

A.  **RICO Authorizes Personal Jurisdiction Over Additional RICO Defendants So Long As The Court Otherwise Has Personal Jurisdiction Over At Least One Defendant.**

Federal Rule of Civil Procedure 4(k)(1) provides that either serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant "when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). "Congress can authorize nationwide service of process in a regulatory statute permitting claimants to sue a defendant in any of the federal district courts in the country." *Peters,* 40 F.4th at 438. In *Peters,* the Sixth Circuit held that 18 U.S.C. § 1965(b) provides that authorization for "nationwide jurisdiction" so long as "at least one defendant has minimum contacts with the forum state." *Id*. at 439-440 (a civil RICO action may be brought "in a district court where personal jurisdiction based on minimum contacts is established as to at least one defendant"). Once jurisdiction under the state's long-arm statute is established over one initial RICO defendant, § 1965(b) extends personal jurisdiction through nationwide service of process over other defendants residing in *any* other district, as long as venue over the initial defendant is proper under § 1965(a) and the assertion of personal jurisdiction comports with the "ends of justice." *Id*. at 440. Consequently, "[w]hen a plaintiff brings a civil RICO action in a district court

where personal jurisdiction can be established over at least one defendant, nationwide summonses can be served on other defendants if required by the ends of justice." *Id*.

**B.** **This Court Has Personal Jurisdiction Over OptumRx, Inc.**

As admitted by the Moving Defendants, OptumRx, Inc. ("OptumRx") "has not challenged whether this Court has personal jurisdiction over it."  Doc. 5494 (Mot.) at 1; *accord id.* at 4 ("OptumRx . . . has not challenged the Court's jurisdiction.").  OptumRx did file a motion to dismiss for failure to state a claim (jointly with the Moving Defendants and others) (Doc. 5447 at 1 n.1), but did not join the Moving Defendants' motion to dismiss for lack of personal jurisdiction. By omitting any personal jurisdiction argument from its motion to dismiss, OptumRx has waived any objection to this Court's exercise of personal jurisdiction over it.  *See, e.g.*, *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 550 (6th Cir. 1995) ("The defense of lack of personal jurisdiction is waived if omitted from a motion to dismiss under Fed. R. Civ. P. 12 . . . .").

Given OptumRx's waiver of any challenge to personal jurisdiction, OptumRx can serve as the initial defendant for § 1965, and the Court can then exercise personal jurisdiction over the Moving Defendants so long as such jurisdiction comports with the ends of justice.[5]

Even if Optum Rx had not conceded that jurisdiction exists, Plaintiffs' complaints plead a *prima facie* case of personal jurisdiction over OptumRx.  The complaints allege that OptumRx is registered and licensed to do business in Missouri and Texas, provides PBM and mail-order dispensing services in both states, processed claims for opioids in both states pursuant to Optum's national formularies and utilization management guidelines, and directly dispensed opioids in both states through its mail-order pharmacy.  *See* Doc. 5296-4 (Independence) at ¶¶ 80, 149-50, 153-54, 179-80, 182; Doc. 5296-5 (Webb) at ¶¶ 79, 149-50, 153-54, 178-79, 181.

OptumRx's connection with the transferor forum states is significant.  In Missouri, as of 2023, OptumRx covered over 900,000 lives and provided pharmacy benefit and mail order

---

[5] The Express Scripts Defendants have also waived any personal jurisdiction defense by filing a motion to dismiss under Rule 12(b)(6) but not Rule 12(b)(2), and thus they too can serve as initial defendants for purposes of RICO § 1965.  Doc. 5447.

5

pharmacy services to these Missouri residents.[6]  Texas is OptumRx's second-largest market with over 3.8 million lives covered (7.5% of OptumRx's total covered customers).[7]

These allegations are more than sufficient to make a *prima facie* showing of personal jurisdiction over OptumRx based on the applicable long-arm statutes.[8]  Missouri's long-arm statute provides that a court can exercise personal jurisdiction over any non-domiciliary who transacts business in Missouri, contracts in Missouri, and/or commits a tortious act within Missouri as to "any cause of action arising from the doing of any such acts."  Mo. Rev. Stat. § 506.500.  The Texas long-arm statute authorizes personal jurisdiction over nonresidents "doing business" in Texas, "commit[ting] a tort in whole or in part" in Texas, or if there are sufficient minimum contacts for federal due process.  *Keller v. Keller*, No. 03-21-00309-CV, 2023 WL 2169490, at *2 (Tex. App. Feb. 23, 2023) (quoting Tex. Civ. Prac. & Rem. Code § 17.042, and affirming personal jurisdiction based on nonresident's communications to an individual in Texas).  The factual allegations detailed above meet the requirements of these two long-arm statutes.

In addition to satisfying the long-arm statutes, personal jurisdiction comports with due process if the claims "arise out of or relate to the defendant's contacts with the forum."  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 359 (2021) (citations omitted).  A defendant's "contacts" are "some action by which it purposefully avails itself of the privilege of conducting activities within the forum state."  *Id.*  The factual allegations in the amended

---

[6]  *MMIT  PBM  Profile  OptumRx*, MMIT, 19-21 (September  2023), https://info.mmitnetwork.com/hubfs/Marketing%20Content/Infographics/PBM%20Profile%20Sample.pdf.

[7] *Id.* at 4.

[8] These significant contacts with the forum states also demonstrate that venue is proper (which OptumRx has not challenged) under 18 U.S.C. § 1965(a), which permits RICO actions to be "instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."  *See Peters*, 40 F.4th at 441 (assessing § 1965(a) venue based on "traditional forum state contacts").

6

complaints noted above also satisfy the constitutional requirements for asserting personal jurisdiction.

Again, Plaintiffs' burden here is not substantial. In *Malone v. Stanley Black & Decker, Inc.*, the Sixth Circuit, faced with factual allegations that were "sparse on detail," reversed the district court's personal jurisdiction dismissal: "Taken together with the rest of the complaint, and in a light most favorable to the Malones, these allegations are enough to satisfy the relatively slight burden of a *prima facie* showing." 965 F.3d 499, 504-05 (6th Cir. 2020) (internal quotation omitted). The allegations against OptumRx in this case are much more robust and easily are sufficient to meet the Plaintiffs' slight burden.[9]

As Plaintiffs have met their *prima faci*e burden with respect to OptumRx (and the Express Scripts Defendants), the burden now shifts to the Moving Defendants "whose motion to dismiss must be properly supported with evidence." *Malone*, 965 F.3d at 504. The Moving Defendants fail to meet that burden because they have not challenged Plaintiffs' claims of personal jurisdiction over OptumRx (or the Express Scripts Defendants) with evidence (or otherwise).

Accordingly, OptumRx qualifies as an "initial defendant" for purposes of 18 U.S.C. § 1965(b), as do the Express Scripts Defendants. *Peters*, 40 F.4th at 440.

### C. Waivers Of Service Have Been Filed For All Of The Moving Defendants.

As the Sixth Circuit has recognized, Federal Rule of Civil Procedure 4(k)(1)(C) provides that: "[s]erving a summons *or* filing a waiver of service will establish personal jurisdiction over a defendant . . . when authorized by federal statute." *Peters*, 40 F.4th at 438 (emphasis added); *see*

---

[9] Notably, the same is true of the ESI Defendants, none of which have challenged personal jurisdiction. The ESI Defendants are part of the same RICO enterprise as the Optum Defendants. *See, e.g.*, Doc. 5296-4 (Independence) at ¶¶ 14-15, 24-28, 72-73, 261-271, 774; Doc. 5296-5 (Webb) at ¶¶ 14-15, 24-28, 71-72, 260-270, 810. As is the case with OptumRx, the complaints also allege sufficient facts to allow the Court to conclude that Plaintiffs have made a *prima facie* case of personal jurisdiction over the ESI Defendants. Doc. 5296-4 (Independence) at ¶¶ 80, 90-131; Doc. 5296-5 (Webb) at ¶¶ 79, 88-129. Thus, any of the ESI Defendants could also serve as a proper "initial defendant" for purposes of 18 U.S.C. § 1965(b).

*also Doe v. Varsity Brands, LLC*, No. 1:22-cv-02139, 2023 WL 4935933, at *12 (N.D. Ohio Aug. 2, 2023). Here, all of the Moving Defendants have executed waivers of service. *See* Doc. 49, Case No. 1:19-op-45371-DAP (waivers for Independence); Doc. 123, Case No. 1:18-op-45175-DAP (waivers for Webb). Thus, pursuant to Rule 4(k)(1)(C), those waivers and § 1965(b) authorize the exercise of this Court's personal jurisdiction over the non-resident Moving Defendants, so long as the ends of justice require it.

       **D.**      **The Ends Of Justice Compel This Court To Exercise Personal Jurisdiction Over All Defendants.**

When a RICO action has been properly instituted in a district court over an "initial defendant"—as is the case here—that court may exercise jurisdiction over the other non-resident enterprise member defendants if the ends of justice so require. 18 U.S.C. § 1965(b). The "ends of justice" require this Court to exercise personal jurisdiction over the Moving Defendants in this RICO action because: (1) Plaintiffs' RICO claims should be tried against all RICO Defendants in one forum; (2) transfer to another forum would result in delay; and (3) the Moving Defendants— all of whom are corporate entities related to OptumRx and share the same counsel—will not be meaningfully burdened or inconvenienced by litigating in this Court (or in Missouri or Texas, after eventual remand).

Although the Sixth Circuit has not articulated precisely what is required to demonstrate the "ends of justice" for establishing personal jurisdiction over nonresident defendants pursuant to section 1965(b), *Peters,* 40 F.4th at 440 n.4, a number of district courts in this circuit (and elsewhere) have adopted the test set by the Tenth Circuit in *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226 (10th Cir. 2006). *See, e.g.*, *Rexam Healthcare Packaging, Inc. v. Osiris Med., Inc.*, No. 3:09-cv-1584, 2010 WL 819063, at *5 (N.D. Ohio Mar. 9, 2010); *Doe*, 2023 WL 4935933, at *16; *Anthony v. Van Over*, No. 3:22-cv-416, 2023 WL 6307960, at *3-4 (E.D. Tenn. Sept. 27, 2023); *Hall v. Trivest Partners, L.P.*, No. 22-12743, 2023 WL 5941729, at *8 (E.D. Mich. Sept. 12, 2023).

Under *Cory,* "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." 468 F.3d at 1232. "RICO was intended as a means to eradicate organized crime," and

8

such purpose would be constrained if nationwide service of process were disallowed.  *Id.* at 1232. Such a limit would "mean that some RICO violations would go unpunished whenever organized criminals operate within the same locale and cause harm in a distant state."  *Id.*  *Cory* further observed that such a limit would also be contrary to antitrust law, which incorporates a similar "ends of justice" analysis, and for which "[t]he Supreme Court has rejected the notion that a confluence of defendants within a single judicial district" is controlling.[10]  *Id.*

In determining whether the Tenth Circuit's flexible interpretation of the "ends of justice" is satisfied, courts within the Sixth Circuit look to:  (1) the preference for having the entire action

---

[10] In *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, the Ninth Circuit adopted a narrow interpretation of the "ends of justice" test requiring a RICO plaintiff to "show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." 788 F.2d 535, 539 (9th Cir. 1986).  The district court in *Rexam* persuasively characterized the *Butcher's Union* rule as "arbitrary," noting that the Ninth Circuit "did not explain . . . this crabbed and inflexible interpretation."  *Rexam*, 2010 WL 819063, at *4.  Some cases decided by courts in this Circuit (all decided prior to the Sixth Circuit's ruling in *Peters*) have cited *Butcher's Union. See High Adventure Ministries, Inc. v. Tayloe,* 309 F. Supp. 3d 461 (W.D. Ky. 2018) (finding "'the ends of justice' do not warrant utilizing the RICO jurisdictional provision to hale two individual defendants across the country to a venue already deemed improper under the traditional specific jurisdiction analysis, . . . especially considering the fact that venue would presumably be proper for both Defendants elsewhere"); *M11 Motors, LLC v UP Trading, LLC*, 2017 WL 6624509 (N.D. Ohio Dec. 28, 2017) (citing *Butchers Union* in dicta without considering the Tenth Circuit's approach after holding RICO defendant, over which the court lacked traditional personal jurisdiction, was not a participant in the same RICO conspiracy as the defendant for whom personal jurisdiction existed); *Enginetec Corp. v. Boutin*, 2008 WL 11380215 (N.D. Ohio Dec. 5, 2008) (citing *Butcher's Union* rule in dicta after refusing to find jurisdiction proper under section 1965(b) because argument raised for first time in motion for reconsideration was deemed untimely).  Thus, the cases citing *Butcher's Union* are all distinguishable on the facts and all pre-date the Sixth Circuit's recognition of the availability of national service of process pursuant to section 1965(b) in *Peters* in 2022.  The Court in *Hall, supra*, however, granted a motion to certify the question of whether the ends of justice test in § 1965(b) requires that there be no other jurisdiction where all of the defendants are subject to personal jurisdiction under the traditional minimum contacts test. *Hall v. Trivest Partners, L.P.*, No. 22-12743, 2024 WL 660172, at *1 (E.D. Mich. Feb. 16, 2024). The Sixth Circuit has not decided whether to accept the interlocutory appeal in *Hall*.  Resolution of this legal issue will not be dispositive, however, because as noted in note 13 *infra* and the accompanying text, there does not appear to be a jurisdiction where all of the RICO defendants (both Optum and ESI defendants) are subject to personal jurisdiction.  Defendants do not contend otherwise.

litigated in one court; (2) the cost of delay in transferring the case to another forum; and (3) the balance of hardships between plaintiffs and defendants.  *See Rexam*, 2010 WL 819063, at *5; *Anthony*, 2023 WL 6307960, at *4.  Here, each of these factors counsels in favor of exercising personal jurisdiction over the Moving Defendants.

### 1. The Ends Of Justice Are Served By Trying All RICO Defendants Together.

First, this Court should exercise personal jurisdiction over the nonresident Moving Defendants so that Plaintiff's RICO claims can be litigated against all RICO defendants in one court.  That is an important factor here, given that all of the Defendants are alleged to have conducted or participated in the conduct of the affairs of a single nationwide RICO enterprise.  *See, e.g.*, Doc. 5296-4 (Independence) at ¶¶ 72-73, 594-95, 641, 774 (describing conduct committed by all "PBM Defendants" including "Express Scripts and Optum"); Doc. 5296-5 (Webb) at ¶¶ 71-72, 588-89, 635, 810 (same); *see also Iron Workers Local Union No. 17 Ins. Fund v. Philip Morris Inc.*, 23 F. Supp. 2d 796, 803 (N.D. Ohio 1998) (Congress intended the "ends of justice" language to provide a means for plaintiffs to bring all RICO defendants before the court in a single trial).  Thus, "[i]t would not serve the ends of justice to require separate trials in different fora against parties who . . . have close involvement in the events underlying the plaintiff's case."  *Suarez Corp. Indus. v. McGraw*, 71 F. Supp. 2d 769, 778 (N.D. Ohio 1999); *Doe*, 2023 WL 4935933, at *16 ("[r]equiring the plaintiff to file multiple identical actions against" nonresident defendants in different courts "in addition to maintaining the instant action, does not serve the ends of justice").

To understand why justice is served by allowing Plaintiffs to litigate their claims against all RICO Defendants in the same court, it is important to recognize the scope of the racketeering conduct committed by the RICO Defendants (including the Moving Defendants) in furtherance of the alleged RICO enterprise's purposes.  Plaintiffs allege the PBM entities "colluded" with each other and the manufacturers to "spread[] fraudulent misrepresentations" that "induced doctors to write more opioid prescriptions, and then they made sure it would be easy for patients to fill those prescriptions, thus ensuring an unfettered flow of opioids to communities across America,"

including Plaintiffs' communities.  Doc. 5296-4 (Independence) at ¶ 15; Doc. 5296-5 (Webb) at
¶ 15.   In other words, Plaintiffs allege that the Defendants' RICO enterprise engaged in a
multipronged national campaign to increase the number of opioid prescriptions *both* by expanding
the opioid market through deceptive marketing and miseducation (to "increase the flow of water
at the source") *and* by easing prescription access through formulary positions, failure to impose
appropriate utilization management (UM) rules, and more (to "open the floodgates").  Doc. 5296-
4 (Independence) at ¶ 26; Doc. 5296-5 (Webb) at ¶ 26.  Plaintiffs allege that all of this racketeering
conduct—including marketing and formulary placements—was part of the same "Formulary &
UM Enterprise," as all served "the common purpose of illegally and fraudulently profiting from
an expansion of the market for prescription opioids, and increased prescribing, dispensing, and
sales of those drugs."  Doc. 5296-4 (Independence) at ¶ 640; Doc. 5296-5 (Webb) at ¶ 634.

Plaintiffs' complaints make the scope of the alleged RICO enterprise clear, even if the
shorthand title given to the enterprise by the complaints incorporates some but not all of the tools
through which the RICO Defendants accomplished the enterprise's purpose of increasing opioid
sales.  *See, e.g.*, Doc. 5296-4 (Independence) at ¶¶ 613 (evidence "of the existence of the
Formulary and UM Enterprise can be found in the PBM Defendants' . . . work together on
disseminating the Opioid Enterprise Manufacturers' marketing messages about prescription
opioids"), 683-84 (PBMs' "uniform conduct"—including giving manufacturers "unfettered
formulary access," "the dissemination of their marketing messages," and providing them "with
PBM data so that they could pull through the formulary 'wins' and drive increased prescribing"—
all "[c]ollectively . . . constitute a pattern of racketeering activity"), 689 (listing how PBMs used
mail and wire facilities "to perpetrate the fraudulent scheme of the Formulary & UM Enterprise,"
including through "[m]arketing materials . . . disseminated by the PBM Defendants" and the
provision of "PBM prescribing data"), 774 ("Evidence of the existence of the Formulary & UM
Enterprise can be found in the way each PBM Defendant," *inter alia*, took formulary actions *and*
supported manufacturers with research, pull-through marketing, and data); Doc. 5296-5 (Webb) at
¶¶ 607, 677-78, 683, 810 (same).   Indeed, the complaints' introductory definitions of the

"Formulary & UM Enterprise" state that the "PBM Defendants conducted, and participated in the conduct of, the Formulary & UM Enterprise by," *inter alia*, "taking formulary action" *and* "working together with opioid manufacturers to disseminate the false marketing and to support their detailing of prescription opioids to prescribers."  Doc. 5296-4 (Independence) at ¶ 73; Doc. 5296-5 (Webb) at ¶ 73.  "All of this conduct furthered the underlying fraudulent scheme of the Formulary & UM Enterprise . . . ."  *Id.*

The complaints also explain how the Moving Defendants played integral roles in *both* the formulary *and* marketing prongs of the racketeering conduct—which were intertwined and interdependent.  The key link between the two was the massive data collection and analytics provided by OptumInsight, "Optum's data, research, and consulting arm" which "collects, processes, sells and profits from the vast data" on millions of patients and prescribers.[11]  Doc. 5296-4 (Independence) at ¶ 185; Doc. 5296-5 (Webb) at ¶ 184.  OptumInsight used its data and analysis to help opioid manufacturers "target the highest opioid prescribers with pull-through marketing" promoting the preferred formulary status Optum granted to opioids, enabling the manufacturers to transform their formulary positioning into sales "wins."  Doc. 5296-4 (Independence) at ¶¶ 332-33; Doc. 5296-5 (Webb) at ¶¶ 331-32.  The formulary manipulation and data-driven marketing provided by the PBMs to the manufacturers worked synergistically to generate profits for all the RICO Defendants, as alleged in the complaints:

> Documents confirm these facts and evidence that unrestricted formulary access was a boon for each Opioid Enterprise Manufacturers marketing efforts and that "pull through" efforts were undertaken after each formulary announcement "win" in order to drive the Opioid Enterprise Manufacturers' profitability.  The PBM

---

[11] "OptumInsight is the Optum group that engages in data analytics," and "emerged from a collection of entities acquired by the UnitedHealth Group over the years," including "QualityMetric," the former name of OptumInsight Life Sciences, Inc.  Doc. 5296-4 (Independence) at ¶¶ 144-46; Doc. 5296-5 (Webb) at ¶¶ 144-46.  In Optum's words, "From many distinct and powerful brands," including QualityMetric/OptumInsight Life Sciences, "emerges one company that spans the evidence lifecycle"—OptumInsight.  *Id.*  Therefore, as in the complaints, this brief uses "OptumInsight" to refer to both OptumInsight, Inc. and OptumInsight Life Sciences, Inc.  These two entities that comprise "OptumInsight" are the two Moving Defendants who would remain in the case after the dismissals agreed in the parties' stipulation.  *See* note 3, *supra*.

> Defendants were not only aware of this pull through marketing, they actively joined in efforts with the Opioid Enterprise Manufacturers by creating reports about the "value proposition" of unrestricted use of prescription opioids . . . .

Doc. 5296-4 (Independence) at ¶ 681; Doc. 5296-5 (Webb) at ¶ 675; *see also id.* (Independence) at ¶¶ 683 (summarizing joint formulary/marketing data scheme), 654 ("Documents produced" by RICO Defendants "are replete with examples" of using "PBM Defendants' data to maximize" "pull-through initiatives touting the beneficial formulary placement of Opioid Enterprise Manufacturers' drugs"), 679 (wire fraud for Formulary & UM Enterprise included "transmission of large volumes of data" "between the PBM Defendants and the Opioid Enterprise Manufacturers" for "pull-through marketing"); *id.* (Webb) at ¶¶ 677, 648, 673 (same).  As further evidence of OptumInsight's key role providing the data that helped monetize manufacturers' formulary status, "OptumInsight was paid tens of millions of dollars by the opioid manufacturers during the relevant time period for its work to expand the opioid market."  Doc. 5296-4 (Independence) at ¶ 188; Doc. 5296-5 (Webb) at ¶ 187.

OptumInsight's racketeering activity in furtherance of the Formulary & UM Enterprise's purposes also included deceptive marketing independent of opioids' formulary status. OptumInsight provided the data that manufacturers needed to precisely target and track prescribers for drug detailing (the practice of sending pharmaceutical representatives to persuade prescribers to use their product).  Doc. 5296-4 (Independence) at ¶¶ 650-53 ("The nexus between data and detailing helped drive the formation of the common purpose of the Formulary & UM Enterprise."); Doc. 5296-5 (Webb) at ¶¶ 644-47 (same); *see also id.* (Independence) at ¶¶ 332-33 (OptumInsight provided manufacturers lists of pain clients and prescribers); *id.* (Webb) at ¶¶ 331-32 (same); *id.* (Independence) at ¶ 343 ("OptumInsight was paid by Purdue to . . . create algorithms to identify potential pain patients to suggest OxyContin prescriptions"); *id.* (Webb) at ¶ 342 (same).  And Moving Defendants did not merely provide data—"OptumInsight worked directly with opioid manufacturers to convince patients, prescribers, payors and the public that long term opioid use was appropriate for the treatment of chronic pain and that opioids were not addictive."  Doc. 5296-

4 (Independence) at ¶ 186; Doc. 5296-5 (Webb) at ¶ 185; *see also id.* (Independence) at ¶¶ 606, 613, 649 (Optum's racketeering activity included facilitating dissemination of manufacturers' deceptive marketing); *id.* (Webb) at ¶¶ 600, 607, 643 (same).  For example, OptumInsight contracted with Purdue for decades to "reverse engineer studies" and "create large-scale marketing plans to convince payors that long-term opioid usage was not only useful for many types of pain and did not lead to serious addiction for long-term opioid users."  Doc. 5296-4 (Independence) at ¶ 343; Doc. 5296-5 (Webb) at ¶ 342.  OptumInsight also created and presented physician "education" programs targeted at increasing OxyContin prescriptions.  Doc. 5296-4 (Independence) at ¶¶ 327-33, 343-58; Doc. 5296-5 (Webb) at ¶¶ 326-32, 342-57.[12]

Moving Defendants incorrectly argue that Plaintiffs' alleged RICO enterprise–related racketeering activity is limited to negotiating rebates, managing formularies, and dispensing pills,

---

[12] The two OptumInsight entities are the only Moving Defendants who would not be dismissed by the parties' stipulation.  *See* note 3, *supra*.  For completeness, Plaintiffs also note the role of the other Moving Defendants in the racketeering activity supporting the RICO enterprise:

- OptumHealth is a healthcare service provider that provides, among other things, "education and information services to both individuals and health care professionals."  Doc. 5296-4 (Independence) at ¶¶ 173; Doc. 5296-5 (Webb) at ¶ 172.  As in the complaints, this brief uses "OptumHealth" to refer to OptumHealth Care Solutions, LLC, Optum Health Holdings, LLC, and OptumHealth Networks, Inc., collectively.  OptumHealth "worked hand-in-hand with Purdue and the other opioid manufacturers for decades to reshape the pain treatment market," including through "education programs" aimed at increasing opioid sales for chronic pain.  Doc. 5296-4 (Independence) at ¶¶ 30, 166, 174, 359-63; Doc. 5296-5 (Webb) at ¶¶ 30, 167, 173, 358-62.

- Optum's cash card entities (Optum Discount Card Services, LLC and Optum Perks, LLC) provided an avenue for patients to more easily pay for opioids while avoiding opioid-specific restrictions put in place to ensure safe and appropriate prescribing and dispensing.  Doc. 5296-4 (Independence) at ¶¶ 487-93; Doc. 5296-5 (Webb) at ¶¶ 486-91.

- UnitedHealth Group, Inc. ("UHG") and/or its PBM business unit, Optum, Inc., the parent companies of the other Optum defendants, "control the enterprise-wide policies that inform both UHC [UHG's healthcare unit] and Optum's lines of business to maximize profits across the corporate family."  Doc. 5296-4 (Independence) at ¶ 136; Doc. 5296-5 (Webb) at ¶ 135.  UHG also participated directly in at least one of the studies OptumInsight organized with Purdue to misrepresent opioids' addictiveness and effectiveness.  Doc. 5296-4 (Independence) at ¶¶ 345-46; Doc. 5296-5 (Webb) at ¶¶ 344-45.

which Moving Defendants argue only OptumRx did.  Doc. 5446-1 (Mot.) at 18-19.  This is doubly incorrect.  First, Plaintiffs allege that the Moving Defendants directly supported the formulary scheme with data that enabled pull-through marketing touting opioids' beneficial formulary placement.  *See supra* at 12-13; *see also* Doc. 5296-4 (Independence) at ¶¶ 365-67, 371-78, 406-08 (describing Optum's unique vantage point in the opioid ecosystem, which allowed Moving Defendants to track every prescription claim in real-time); Doc. 5296-5 (Webb) at ¶¶ 364-66, 370-77, 405-07 (same).  Second, as explained above, deceptive marketing is also part of the alleged racketeering conduct that furthered the Formulary & UM Enterprise's purpose of increasing opioid sales.  *See supra* at 10-13; *see also, e.g.*, Doc. 5296-4 (Independence) at ¶¶ 147, 328-34 (additional allegations of Moving Defendants' deceptive marketing); Doc. 5296-5 (Webb) at ¶¶ 147, 327-333 (same).  Plaintiffs' complaints clearly allege that the Moving Defendants participated in the racketeering activity that served the RICO enterprise.

The interconnected roles of the Moving Defendants and other RICO Defendants in the alleged racketeering activity demonstrate the importance of trying them before the same Court.  If personal jurisdiction is not exercised over the Moving Defendants, Plaintiffs could only proceed in this Court against OptumRx and the ESI defendants; the Moving Defendants would be dismissed, and Plaintiffs would have to pursue their RICO claims against two sets of defendants split between at least two different forums.  *See Rexam*, 2010 WL 819063, at *5 (dismissal "would potentially require the claims in this action to be simultaneously litigated in both Texas and this Court, to the great expense and inconvenience of both parties").  Indeed, given the numerous states where the Moving Defendants, OptumRx, and the ESI Defendants reside, it is possible there might not be any district where all the RICO defendants are subject to personal jurisdiction under the traditional minimum contacts test.[13]  "It would not serve the ends of justice to require separate

---

[13] The RICO Defendants are alleged to be located in at least six different states:  Missouri, New Jersey, Minnesota, California, South Carolina, Michigan.  Missouri Defendants:  Evernorth Health, Inc. (f/k/a Express Scripts Holding Company), Express Scripts, Inc., Express Scripts Administrators, LLC, ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express

trials in different fora against parties who . . . have close involvement in the events underlying the plaintiff's case." *Suarez*, 71 F. Supp. 2d at 778; *Doe*, 2023 WL 4935933, at *16 ("[r]equiring the plaintiff to file multiple identical actions against" nonresident defendants in different forums "in addition to maintaining the instant action, does not serve the ends of justice"); *cf. Anthony*, 2023 WL 6307960, at *5 (where nonresident defendant was *not* alleged to be part of the RICO scheme, "ends of justice" did not require exercise of personal jurisdiction).

### 2. *Dismissing The Moving Defendants Would Cause Substantial Delay.*

Second, in the event this Court dismissed the Moving Defendants, Plaintiffs could refile their RICO claims in the districts where the Moving Defendants are residents, but starting such actions anew would result in substantial delay. Such delay weighs in favor of this Court extending personal jurisdiction over the Moving Defendants. *Rexam*, 2010 WL 819063, at *5; *Doe*, 2023 WL 4935933, at *17.

### 3. *Moving Defendants Face Little Burden Litigating In This Court.*

Finally, requiring the Moving Defendants to defend these actions in this Court (and eventually in Missouri and Texas) imposes a minimal burden. The Moving Defendants are all corporate entities related to OptumRx, which is subject to personal jurisdiction, and all share the same counsel. *See Rexam*, 2010 WL 819063, *6 (finding balance of hardships favored jurisdiction under § 1965(b) where nonresident defendants were resident defendant's alter ego and wife); *Doe*, 2023 WL 4935933, at *17 (finding balance of hardships weighed in favor of jurisdiction where

---

Scripts Specialty Distribution Services, Inc.  Doc. 5296-4 (Independence) at ¶¶ 90, 93, 98, 107, 110, 116; Doc. 5296-5 (Webb) at ¶¶ 88, 91, 96, 105, 108, 114.  New Jersey Defendant: Medco Health Solutions, Inc.  Doc. 5296-4 (Independence) at ¶ 102; Doc. 5296-5 (Webb) at ¶ 100. Minnesota Defendants: UnitedHealth Group, Inc., Optum, Inc., OptumInsight, Inc. (f/k/a Ingenix, Inc.), OptumInsight Life Sciences, Inc. (f/k/a QualityMetric, Inc.), OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, Optum Health Networks, Inc.  Doc. 5296-4 (Independence) at ¶¶ 132, 138, 142, 144, 163, 167, 168; Doc. 5296-5 (Webb) at ¶¶ 130, 137, 141, 144, 164, 168, 169.  California Defendant: OptumRx, Inc. Doc. 5296-4 (Independence) at ¶ 148; Doc. 5296-5 (Webb) at ¶ 148.  South Carolina Defendant: OptumRx Discount Card Services, LLC. Doc. 5296-4 (Independence) at ¶ 157; Doc. 5296-5 (Webb) at ¶ 157.  Michigan Defendant: Optum Perks, LLC.  Doc. 5296-4 (Independence) at ¶ 160; Doc. 5296-5 (Webb) at ¶ 160.

nonresident defendants "have retained competent local counsel and can easily conduct most of their litigation via electronic means"). "The burden is on the defendants to show that asserting jurisdiction in this forum will make litigation 'so gravely difficult and inconvenient' that they are unfairly at a 'severe disadvantage' in comparison to [plaintiff]." *Suarez*, 71 F. Supp. 2d at 778. The Moving Defendants do not attempt to satisfy this standard, making no argument that litigating in this forum would be either inconvenient or burdensome. Thus, this Court should conclude that the "ends of justice" require it to exercise personal jurisdiction over the Moving Defendants.

### E. The Court Also Has Pendent Jurisdiction Over Plaintiffs' State Law Claims.

Because this Court has jurisdiction over Defendants with respect to Plaintiffs' RICO claim, it also may exercise jurisdiction over Plaintiffs' state-law claims under the doctrine of pendent personal jurisdiction. "Pendent personal jurisdiction is a common law doctrine that recognizes the inherent fairness of exercising personal jurisdiction over claims asserted against a Defendant over whom the Court already has personal jurisdiction with respect to another claim or claims arising out of the same nucleus of operative facts." *J.M. Smucker*, 420 F. Supp. 3d at 658. "Under those circumstances, it makes little sense to dismiss or transfer such claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims arising out of a common nucleus of operative facts to be tried in different jurisdictions." *Id*. at 659.

Plaintiffs' state law claims arise out of the same common nucleus of operative facts as Plaintiffs' RICO claims. Doc. 5296-4 (Independence) at ¶ 80; Doc. 5296-5 (Webb) at ¶ 79. Moving Defendants' contention otherwise is based on their misunderstanding of the alleged RICO enterprise discussed above. *See supra* at 15. Moving Defendants' incorrectly assert that Plaintiffs' RICO claims are based only on negotiations with manufacturers, formulary management, and dispensing. Doc. 5446-1 (Mot.) at 20. As explained *supra* at 10-15, the alleged RICO-related racketeering activity encompasses all Moving Defendants' activities that increased opioid prescriptions, including their (mis)education campaigns, consulting work with manufacturers, and

discount card practices (all of which Defendants acknowledge but incorrectly argue are not related to the alleged enterprise). *Id.* at 20-21. Because Plaintiffs' state law claims are based on the very same conduct by the Moving Defendants that constitutes key elements of the RICO claims, they arise from the same common nucleus of operative facts.

The Sixth Circuit has recognized that pendent jurisdiction has been applied by courts in circumstances like these, where "the underlying federal statute . . . authorized nationwide service of process and the plaintiff filed [state law] claims related to the federal anchor claim." *Canaday v. Anthem Co., Inc.*, 9 F.4th 392, 401 (6th Cir. 2021). And district courts within this Circuit exercising personal jurisdiction over a federal claim have routinely exercised pendent personal jurisdiction over related state claims arising from the same nucleus of facts. *See, e.g.*, *J.M. Smucker,* 420 F. Supp. 3d at 658-59 (citing cases); *Smith v. Swaffer*, No. 1:21-CV-2095, 2023 WL 35151, at *3 (N.D. Ohio Jan. 4, 2023); *Iron Workers*, 23 F. Supp. 2d at 804-06 (applying pendent personal jurisdiction in case with RICO claims); *Jonna v. GIBF GP, Inc.*, 617 F. Supp. 3d 789, 799 (E.D. Mich. 2022). Because the requirements for pendent personal jurisdiction are met, this Court should exercise jurisdiction over Plaintiffs' state law claims.[14]

---

[14] In *Canaday,* the Sixth Circuit observed that it "has never recognized" pendent personal jurisdiction and declined to recognize the doctrine in the case before it based on the particular circumstances of that case. 9 F.4th at 401. The court did acknowledge, however, that pendent personal jurisdiction was usually applied in cases involving a nationwide service of process provision, *such as RICO*, whereas the claims in *Canaday* were under the Fair Labor Standards Act, which did not include such a provision. *Id.* at 399 ("[t]hat silence rings loudly when juxtaposed with the many other instances in which Congress included nationwide service of process provisions"). In addition, *Canaday* involved nonresident plaintiffs who were seeking to opt in to a collective action, and the court held it did not have jurisdiction over them under the pendent *party* personal jurisdiction doctrine (as opposed to the pendent *claim* personal jurisdiction doctrine Plaintiffs raise here). *Id.* at 401. Other circuit courts have expressly recognized pendent personal jurisdiction when a federal statute authorizes nationwide service of process and the federal and state claims derive from a common nucleus of operative facts. *See Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993); *Oetiker v. Jurid Werke, G.m.b.H.*, 181 U.S. App. D.C. 124, 556 F.2d 1, 4-5 (D.C. Cir. 1977); *Robinson v. Penn Central Co.*, 484 F.2d 553, 555-56 (3d Cir. 1973); *Travis v. Anthes Imperial Ltd.*, 473 F.2d 515, 528 (8th Cir. 1973).

## II.    In The Alternative, Plaintiffs Respectfully Request That This Motion Be Held In Abeyance Until Jurisdictional Discovery Is Complete.

If the Court is hesitant to deny the Moving Defendants' motion outright, the Court should hold this motion in abeyance while personal jurisdiction discovery proceeds, consistent with this Court's prior rulings and Sixth Circuit precedent. *See* Doc. 1512, Ruling Regarding Jurisdictional Discovery on Defendants Allergan, Teva, and Mallinckrodt, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Apr. 3, 2019); Doc. 3180, Order Regarding Jurisdictional Discovery of Rite Aid Corp., *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Feb. 24, 2020); *Theunissen*, 935 F.2d at 1459; *Drexel Chem. Co. v. SGS Depauw & Stokoe*, 59 F.3d 170 (6th Cir. 1995) (unpublished; remanding to district court for jurisdictional discovery or evidentiary hearing); *Brewer v. All. Coal, LLC*, No. CV 20-41-DLB-EBA, 2021 WL 3057380, at *2 (E.D. Ky. July 20, 2021) (courts should allow jurisdictional discovery unless the plaintiff's claim is clearly frivolous); *C.B. Fleet Co., Inc. v. Colony Specialty Ins. Co.*, No. 1:11–CV–0375, 2011 WL 13131001, at *2 (N.D. Ohio. May 10, 2011) (limited jurisdictional discovery should be allowed when evidence relevant to jurisdiction is unclear); *Gundaker/Jordan Am. Holdings, Inc. v. Clark*, No. 04–226–JBC, 2008 WL 4585462, at *2 (E.D. Ky. Oct. 13, 2008) ("Courts do not distinguish between facial and factual challenges in personal jurisdiction disputes.").

There is ample basis to expect that discovery would further demonstrate the Moving Defendants' connections to Missouri and Texas. The complaints allege the Moving Defendants' collusion in a *nationwide* campaign "to reshape the pain treatment market" by deceiving patients, prescribers, and payors about opioids' safety and effectiveness. Doc. 5296-4 (Independence) at ¶ 30; Doc. 5296-5 (Webb) at ¶ 30. The Moving Defendants sought to impact and profit from this scheme in Missouri and Texas along with other states. As alleged, "OptumInsight partnered with various opioid manufacturers to create studies, marketing, educational programs, and even identifying algorithms to simultaneously downplaying opioids' addictive properties and expand its use and availability throughout the country, including in Missouri." Doc. 5296-4

(Independence) at ¶ 147; Doc. 5296-5 (Webb) at ¶ 147 (same for Texas).[15] Jurisdictional discovery could be expected to show, for example, educational programs or marketing held in or distributed to the forum states.[16]

Plaintiffs attempted to reach agreement with the Moving Defendants to develop an efficient process to conduct jurisdictional discovery. On April 2, 2024, the parties met and conferred to discuss personal jurisdictional issues, pursuant to Special Master Cohen's directive during the March 28, 2024, discovery conference. Ex. A. Defendants asserted during the call, as they had asserted in a previous meet and confer, that jurisdictional discovery was not warranted because their motion raises a facial challenge to personal jurisdiction. Ex. B. On April 5, 2024, Plaintiffs sent the Moving Defendants a letter outlining the legal and factual support for jurisdictional discovery. Ex. A. The parties met and conferred again on April 10, 2024. Defendants contended during this conference that ongoing merits discovery (which the Moving Defendants have agreed to participate in) would be relevant to personal jurisdiction, and questioned whether Plaintiffs needed or were entitled to separate jurisdictional discovery. Ex. C. Merits discovery, however,

---

[15] As noted in note 3 *supra*, the parties have agreed to dismiss other Moving Defendants, but for completeness Plaintiffs note that jurisdictional discovery would also be expected to uncover substantial contacts between all Moving Defendants and the forum states. For example, "Optum was fully aware its cash cards were being used to abuse, divert, and misuse opioids at that time, including in Missouri," and jurisdictional discovery would be expected to show the levels of Optum cash card use for opioid prescriptions in the forum states. Doc. 5296-4 (Independence Am. Compl.) at ¶ 492; *see also* Doc. 5296-5 (Webb) at ¶ 491.

[16] Defendants' argument about group pleading provides no basis to grant Defendants' motion or to reject Plaintiffs' request for jurisdictional discovery. This Court previously rejected an argument about group pleading raised by manufacturer defendants in this MDL. Doc. 1680 (*Muscogee/Blackfeet* MTD Order) at 4-5. In that instance, the manufacturer defendants argued for dismissal of the complaint for failure to state a claim because, they contended, the plaintiffs had failed sufficiently to differentiate among the defendants. The Court found the allegations sufficient to state a claim against each defendant. If the same kind of allegations were sufficient to state a claim, they are more than sufficient to warrant the jurisdictional discovery that will allow Plaintiffs to state with more specificity the minimum contacts with the forum state for each defendant (assuming any such analysis is required).

20

does not close until December 23, 2024, and Moving Defendants have yet to produce jurisdiction-specific discovery (or advise Plaintiffs that they have produced any such documents).

On April 17, 2024, Plaintiffs served the Optum Defendant family with limited jurisdictional discovery requests, consisting of five Interrogatories and eleven Requests for Production, including requests such as "Identify all Optum entity offices, employees, physicians, medical directors, and/or case managers in the bellwether states during the relevant time period and describe any work that these office/employees engaged in related to opioids." Exs. D1, D2.

Defendants' responses to these requests were due on May 17, 2024.  Late that evening, the Moving Defendants served their "Objections and Responses [sic] to Plaintiffs' So-Called "Jurisdictional Discovery Requests." Exs. E1, E2.  As is typical for the Optum Defendants, (*see* Plaintiffs' Motion for Sanctions, Doc. 5443), in their 34-pages of "objections and [so called] responses," the Moving Defendants objected to every interrogatory and document production request without providing *any* substantive response or producing a single document.[17]  *Id.*  Two months later, the Moving Defendants have still produced no documents responsive to Plaintiffs' jurisdictional discovery requests (or, if they have done so through merits discovery, they have not told Plaintiffs about such documents or where to find them).

Defendants' refusal to respond to Plaintiffs' narrowly tailored personal jurisdiction requests is further justification for the Court to hold Defendants' motion in abeyance while Plaintiffs meet and confer with Defendants and, if necessary, move to compel responses to these (and other) requests related to personal jurisdiction.  Thus, Plaintiffs respectfully request that, if

---

[17] Their response to each request propounds objections and states:

> Subject to and without waiving any objections, the Moving Defendants decline to answer this interrogatory [decline to produce documents].  The Moving Defendants are, however, willing to meet and confer to discuss their objections and to understand (1) why Plaintiffs believe this Request seeks information that is relevant to the Moving Defendants' personal jurisdiction challenge and (2) why Plaintiffs do not believe this request constitutes improper merits discovery.

*See, e.g.*, E1 at 7.

the Court does not deny the Moving Defendants' motion on the grounds discussed in Section I above, it hold the motion in abeyance until jurisdictional discovery is completed.

## CONCLUSION

For the foregoing reasons, the Moving Defendants' motion should be denied in its entirety.

Dated: July 19, 2024

Respectfully submitted,

*Plaintiffs' Co-Lead Counsel*

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue
San Juan, PR 00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Liaison Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
pweinberger@spanglaw.com

22

*Counsel for City of Independence, MO*

*/s/ John F. Garvey*
John F. Garvey
Colleen Garvey
Ellen A. Thomas
STRANCH, JENNINGS & GARVEY, PLLC
Peabody Plaza
701 Market Street, Suite 1510
St. Louis, MO 63101
(314) 390-6750
jgarvey@stranchlaw.com
cgarvey@stranchlaw.com
ethomas@stranchlaw.com

*/s/ Joanne M. Cicala*
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
(512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Daniel A. Thomas*
Daniel A. Thomas
HUMPHREY FARRINGTON MCCLAIN
221 W. Lexington Ave. Ste 400
Independence, MO 64050
(816) 836-5050
DAT@hfmlegal.com

*Counsel for County of Webb, TX*

*/s/ Joanne M. Cicala*
Joanne M. Cicala
Joshua Wackerly
R. Johan Conrod
Shelbi Flood
THE CICALA LAW FIRM PLLC
101 College Street
Dripping Springs, TX 78620
(512) 275-6550
joanne@cicalapllc.com
josh@cicalapllc.com
johan@cicalapllc.com
shelbi@cicalapllc.com

*/s/ Kevin Sharp*
Kevin Sharp
Christine Dunn
SANFORD HEISLER SHARP, LLC
611 Commerce Street, Suite 3100
Nashville, Tennessee 37203
(615) 434-7000
ksharp@sanfordheisler.com
cdunn@sanfordheisler.

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/Peter H. Weinberger*
Peter H. Weinberger