# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| See cases listed in Exhibit A | |

# OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD OPTUM DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT

3069424.1

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

FACTUAL BACKGROUND ........................................................................................................... 3

LEGAL STANDARD ...................................................................................................................... 7

ARGUMENT .................................................................................................................................... 7

    I.     THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE
          SCHEDULING ORDER ........................................................................................... 7

          A.     Despite Their Diligence, the Amending Plaintiffs Could Not
                  Have Met the Original Deadline........................................................... 7

          B.     The Optum Defendants Will Suffer No Undue Prejudice If
                  Plaintiffs Are Permitted to Amend..................................................... 14

    II.    AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15 ........................... 16

CONCLUSION ............................................................................................................................... 17

CERTIFICATE OF SERVICE ..................................................................................................... 19

### TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Brumbalough v. Camelot Care Ctrs., Inc.*,
    427 F.3d 996 (6th Cir. 2005) ................................................................17

*Duggins v. Steak 'N Shake, Inc.*,
    195 F.3d 828 (6th Cir. 1999) ................................................................15

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*,
    No. 2:17-cv-195, 2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) ....................................7, 11

*Fraker v. Marysville Exempted Vill. Sch.*,
    696 F. Supp. 2d 887 (S.D. Ohio 2010) ................................................................15

*Hammock v. Rogers*,
    No. 1:17-cv-1939, 2018 WL 8414482 (N.D. Ohio Dec. 17, 2018) ....................................14

*In re Nat'l Prescription Opiate Litig.*,
    MDL 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) ................................................16

*J&R Passmore, LLC v. Rice Drilling D, LLC*,
    No. 2:18-cv-1587, 2024 WL 111661 (S.D. Ohio January 10, 2024) .....................11, 13, 17

*Joseph v. Joseph*,
    No. 1:16-cv-465, 2017 WL 5953119 (S.D. Ohio Jan. 10, 2017)....................................8, 11

*Landstar Ranger, Inc. v. City of Delaware, Ohio*,
    No. 2:22-CV-02008, 2022 WL 7322274 (S.D. Ohio Oct. 13, 2022) ....................................17

*Leary v. Daeschner*,
    349 F.3d 888 (6th Cir. 2003) ................................................................11

*O'Neal v. Denn-Ohio, LLC*,
    No. 3:19-cv-280, 2020 WL 210801 (N.D. Ohio Jan. 14, 2020) ....................................13, 14

*Ousley v. CG Consulting, LLC*,
    339 F.R.D. 455 (S.D. Ohio 2021)................................................................13

*Phelps v. McClellan*,
    30 F.3d 658 (6th Cir. 1994) ................................................................14

*Rapp v. Forest City Techs., Inc.*,
    No. 1:20-cv-2059, 2021 WL 4713394 (N.D. Ohio June 17, 2021) ................................7, 11

# TABLE OF AUTHORITIES
## (CONTINUED)

**Cases**                                                                    **Page(s)**

*York v. Lucas Cnty., Ohio,*
    No. 3:13 cv 1335, 2015 WL 2384096 (N.D. Ohio May 19, 2015)......................................14

**Statutes**

28 U.S.C. § 1407 ...........................................................................................................16

**Court Rules**

Fed. R. Civ. P. 15................................................................................................1, 3, 16, 17

Fed. R. Civ. P. 15(a)(2) ...........................................................................................17

Fed. R. Civ. P. 16.................................................................................................. *passim*

## INTRODUCTION

In accordance with this Court's Order dated May 23, 2024, Doc. #5455, the Plaintiffs listed in Exhibit A ("Amending Plaintiffs") hereby move for leave to amend their operative complaints pursuant to Federal Rules of Civil Procedure 15 and 16 to add the Optum Defendants[1] beyond the deadline for amendment of pleadings set forth in this Court's case management orders, and submit this omnibus Memorandum of Law in support thereof.  The allegations and claims for relief with which the Amending Plaintiffs seek to supplement their operative pleadings would be substantially identical to those set forth in the Supplemental and Amended Allegations to Be Added to the Verified Complaint and Jury Demand filed in *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 ("Rochester Amended Pleading").

Leave should be granted because new information, not available to any of the Amending Plaintiffs until long after the deadline for amendment had passed,[2] is central to the allegations against the Optum Defendants in this MDL.  This new information was provided by OptumRx, Inc. ("OptumRx") in discovery in *Jefferson County v. Dannie E. Williams, M.D., et al.,* (the "JeffCo Action"), litigated in state court in Missouri.  The vast

---

[1] The Optum Defendants are:  UnitedHealth Group, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; Optum Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.

[2] The CMO deadline was the later of March 16, 2019, or 90 days from the date a case was transferred into the MDL.  As discussed in the text, the specific operative date for plaintiffs with deadlines after March 16, 2019, is irrelevant: the JPML stopped transferring cases into the MDL in April 2022 and the new information that gives rise to this motion was not made available in the MDL until January 2023 at the earliest.

1

majority of document production in that case was made in 2022 and 2023, but was not produced in the MDL until January 2023.

As shown in the Rochester Amended Pleading, and as described below, the documents produced in discovery in the JeffCo Action provide key information that is central to the claims the Amending Plaintiffs seek to add.  This information includes details about the wealth of data the Optum Defendants have at their disposal; the use they actually made of that data; details of their rebate agreements that show how manufacturer rebates were conditioned on the Optum Defendants ensuring unfettered access to prescription opioids; how changes in the formulary restrictions and utilization management tools that the Optum Defendants did not offer until mid-2017 and 2018 were in fact effective in limiting the supply of opioids and could have been implemented long before; and how the Optum Defendants delayed implementing those restrictions specifically for the purpose of maintaining high rebate payments from opioid manufacturers.

With the exception of Amending Plaintiffs represented by the same counsel as the plaintiff in the JeffCo Action, none of the Amending Plaintiffs had access to this information until the Optum Defendants' DR-22 production in this litigation, which did not begin until January 2023.[3]  Because the Amending Plaintiffs could not, even with due diligence, have met the deadline to amend their complaints to add claims against the

---

[3] As explained below, even counsel for the plaintiff in the JeffCo Action did not have the relevant discovery information in time for the MDL plaintiffs it represents to amend their pleadings by the applicable deadlines.

Optum Defendants, and because, as discussed below, the Optum Defendants will not be prejudiced by these amendments, this Court should find that the Amending Plaintiffs have shown "good cause" within the meaning of Rule 16, that amendment is proper under Rule 15, and should grant the motions to amend for each of the Amending Plaintiffs.

## FACTUAL BACKGROUND

The facts pertaining generally to the procedural history of these cases and the deadlines set by the Court for the amendment of pleadings are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs here incorporate by reference and to which the Court is respectfully referred.

On July 24, 2019, the JeffCo Action was remanded to the Circuit Court of Jefferson County, Missouri. *See* Declaration of Johan Conrod at ¶ 4. OptumRx was one among 44 defendants named in the JeffCo Action. *Id.* at ¶ 5. The parties, including OptumRx, engaged in discovery. OptumRx began producing documents in February 2021, but in all of that year produced less than 1,000 documents. *Id.* at ¶ 7. It was not until 2022 and 2023 that OptumRX provided significant discovery in the JeffCo Action, producing some 60,000 documents in 2022 and approximately 16,000 documents in 2023. *Id.* at ¶ 9. By the fall of 2023, claims against all the defendants in the JeffCo Action other than OptumRx and Express Scripts, Inc. had been resolved through settlement, bankruptcy filings, or other action. *Id.* at ¶ 18.

The documents that OptumRx produced in the JeffCo Action were subject to a protective order in that action and were not shared with counsel who did not appear in

3

the JeffCo Action.  *Id.* at ¶ 10.  The documents were, however, also subject to this Court's DR-22 Order, requiring production in this MDL of documents pertaining to opioids produced in other litigations or in response to investigations.  On January 20, 2023, OptumRx began making DR-22 productions in this MDL, making available to MDL plaintiffs the documents it had produced in the JeffCo Action for the first time.  Thus, Amending Plaintiffs, other than those represented by the same counsel as the plaintiff in the JeffCo Action, had no access to the OptumRx documents produced in the JeffCo Action until the beginning of 2023 at the earliest; even those Amending Plaintiffs that are represented by the JeffCo Action lawyers did not have access to that information until well into 2022 and even 2023.[4]

On October 27, 2023, this Court selected four cases as bellwethers for claims against the pharmacy benefit manager ("PBM") defendants, which included the Optum Defendants and Express Scripts, Inc.  With the benefit of the documents from the JeffCo Action, newly available in the MDL, the four PBM bellwether plaintiffs set about preparing amended complaints.  The bellwether amended complaints included claims

---

[4] As set forth in the Declaration of Johan Conrod, the last case to be transferred into the MDL among the cases brought by the same counsel as the JeffCo Action plaintiff was transferred on June 8, 2021.  Conrod Dec. ¶ 19.  The deadline for amendment of that pleading was September 6, 2021.  Thus, even the Amending Plaintiffs that are represented by counsel in the JeffCo Action did not have the fruits of the JeffCo discovery in time to meet their deadline to amend.  Notably, counsel for the JeffCo Action plaintiff did seek leave to amend with respect to three cases in order to incorporate information learned in the discovery in Missouri.  On March 20, 2023, this Court denied the motion filed by plaintiff the City of Roanoke, Virginia; the Court never ruled on the others.  *See In Re: National Prescription Opiate Litigation*, MDL 2804, Docket Text (N.D. Ohio Mar. 20, 2023); *see also* Doc. #4896.

3069424.1

against all of the Optum Defendants.  They included claims for relief not previously pleaded by the bellwether plaintiffs.  Most significantly, they included numerous new factual allegations drawn from the documents and testimony produced in the JeffCo Action.  These new factual allegations are now at the core of the claims against the Optum Defendants.

The extent of the role of this new information in the bellwether amended complaints can be seen, in the first instance, by the number of times the JeffCo documents are cited in amended complaints.  For example, in the Rochester Amended Pleading, documents from OptumRx's JeffCo Action production are quoted 57 times.[5]

But the number of times OptumRx's documents are *quoted* understates the extent to which documents and information learned in the JeffCo Action form the basis for allegations in the Rochester Amended Pleading.  This is so because the filed Rochester Amended Pleading provides evidentiary sources only for direct quotations.  As set forth in the Declaration of Johan Conrod, the true number of times that documents and information from the JeffCo Action form the basis of allegations against the PBMs in the Rochester Amended Pleading is 180.  Conrod Dec. ¶ 22.

These allegations were not peripheral, unimportant details.  Rather, the allegations sourced to the JeffCo Action OptumRx production include that:

- OptumRx's rebate agreements with opioid manufacturers did not merely provide for rebates on opioids dispensed to OptumRx covered

---

[5] Citations for quotations are provided in the footnotes in the Rochester Amended Pleading.  Documents produced by OptumRx are identified by production numbers beginning with OPTUMRX_JEFFCO or OPTUM_JEFFCO.  The 57 instances of quotations from OptumRx documents include "*id.*" citations.

5

lives, but specifically included provisions that prevented OptumRx from imposing utilization management tools ("UM") or prior authorization restrictions ("PA") on prescription opioids and precluded OptumRx from doing anything to "disadvantage" opioids as compared to other drugs—if OptumRx did restrict or disadvantage opioids, the manufacturer was not required to pay the rebates. Indeed, OptumRx specifically identified the avoidance of PA restrictions as a selling point for which it could charge opioid manufacturers.[6]

- The Optum Defendants had far more information available to it than was previously understood. They (and their predecessors) have long been able to track how many opioids their millions of members were receiving, including the quantity of pills, the dosing strengths, the combination of drugs being dispensed, and the travel distance of members to acquire prescription opioids. Additionally, OptumRx has access to clinical information for millions of patients, which includes clinical files and over 4.5 billion text notes from a member's clinical records.[7]

- The Optum Defendants knew that the data they had gave them the ability to stop inappropriate opioid use. But they delayed implementing formulary, UM, and other restrictions because of the rebates they were receiving from opioid manufacturers. Even when Optum Rx finally began implementing some such measures, it delayed implementation of others because of the rebates they received from Purdue.[8]

- As late as March 2019, OptumRx considered removing OxyContin from its formularies, but hesitated because of the volume of rebates it was receiving.[9]

On May 24, 2024, this Court granted the PEC's motion to lift the moratorium on motion practice to allow non-bellwether MDL plaintiffs to seek leave to amend their pleadings in order to add defendants they had not previously named. The Amending Plaintiffs now seek leave to amend to add claims against the Optum Defendants based

---

[6] *See* Conrod Dec. ¶ 21.

[7] *Id.*

[8] *Id.*

[9] *Id.*

on the allegations in the Rochester Amended Pleading and the other PBM bellwether pleadings.

As described below, none of these plaintiffs could have met the applicable deadline for amendment with respect to the Optum Defendants because the information on which they seek to base their claims was not available at that time, or indeed at any time prior to 2022 or even, with respect to most MDL plaintiffs, 2023. As further discussed below, amendment of these cases to include the Optum Defendants will not prejudice those defendants because the Amending Plaintiffs' actions have all been stayed.

## LEGAL STANDARD

The legal standards applicable to this motion are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs here incorporate by reference and to which the Court is respectfully referred.

## ARGUMENT

**I.     THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER**

   **A.     Despite Their Diligence, the Amending Plaintiffs Could Not Have Met the Original Deadline**

The Amending Plaintiffs readily meet the diligence test for amending the scheduling order to permit amended pleadings: the information on which they seek to base their amended pleadings was simply not available until the applicable deadline for amendment had passed. *See Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 4713394, at *3–4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence."); *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*,

7

No. 2:17-cv-195, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018) ("New information can constitute good cause under Rule 16(b)."); *Joseph v. Joseph*, No. 1:16-cv-465, 2017 WL 5953119, at *2 (S.D. Ohio Jan. 10, 2017) (finding good cause existed when "the documents upon which the proposed amendment [was] largely based were not produced until more than two months after the . . . motion to amend deadline.").  This was so because discovery from OptumRx in the JeffCo Action revealed a wealth of information not previously available.  This new information was not peripheral—it permeates the Rochester Amended Pleading, providing the basis for scores of factual allegations.  The new evidence was critical in demonstrating the role of the Optum Defendants in creating, contributing to, and maintaining the opioid crisis.  Although *some* information about the Optum Defendants' role was, of course, previously available, the extent to which the Optum Defendants colluded with Purdue to maintain free availability of prescription opioids without regard to the interest of OptumRx's clients, the lives covered by those clients, or the public was not known or understood (and even now may not be fully understood).  Similarly, the extent of the data and knowledge that the Optum Defendants had was also not known.[10]

---

[10] Indeed, in the Rochester Amended Pleading, Plaintiff alleges: "Plaintiff did not learn that it had been injured by Defendants' actions, the source of those injuries, or that those injuries were part of a pattern of conduct until only recently, until documents revealing those facts were produced in discovery by various entities in *In re: National Prescription Opiate Litigation*, Case No. 1:17-md-2804-DAP (N.D. Ohio) and other opioids litigation, including the documents cited, quoted, and relied on throughout this complaint.  These documents—and the facts they contain—have never before been made public, nor have they ever before been in Plaintiff's possession, and not otherwise available to Plaintiff before being produced in discovery."  Rochester Amended Pleading ¶ 694.  The Amending Plaintiffs had no greater access to this information than the City of Rochester.

Critically, information regarding the ways in which OptumRx's rebate contracts with opioid manufacturers prevented the implementation of restrictions on opioids (at the pain of loss of rebates) was not available until the JeffCo Action production. As revealed in the contractual documents produced by OptumRx in that case, and in the deposition of OptumRx's corporate representative designated on the topic of opioid manufacturer contracts, imposing utilization management protocols such as quantity limits on opioids like OxyContin would have resulted in a loss of rebates—a concern that continued to animate OptumRx's behavior into 2017 and later. Conrod Dec. ¶¶ 15, 21.

Even the federal government recognizes the opacity of PBM business practices. As set forth in a July 2024 report of the Federal Trade Commission, "PBMs oversee critical decisions about access to and affordability of medications without transparency or accountability to the public. Indeed, *PBM business practices and their effects remain extraordinarily opaque*." *See Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies,* FTC Interim Staff Report at 1 (July 2024) (emphasis added).[11]

In addition, as alleged in the Rochester Amended Pleading, the Optum Defendants misrepresented that they used their market power to create formularies and UM programs based on the health and safety of the public and of the lives covered by the

---

[11] As noted in the FTC report, in order to learn how the PBMs operate, in 2022 the FTC issued an order to the six largest PBMs, including the Optum Defendants, requesting data and documents about their businesses and business practices. *Id.* at 1-2. Thus, even the FTC was not able to understand fully the business practices of PBMs, including the Optum Defendants, without resort to what would amount, in the litigation context, to pre-complaint discovery not available to plaintiffs in the MDL.

benefit plans that were their clients.  They repeatedly represented that they were working to ensure that opioids were prescribed and dispensed only for safe and legitimate reasons.  *See* Rochester Amended Pleading ¶ 699.  This made it particularly difficult for the Amending Plaintiffs to learn the facts underlying the pleadings they now propose to file until the Optum Defendants provided the material in discovery in the JeffCo Action and/or provided it in the MDL pursuant to DR-22.

For Amending Plaintiffs not represented by counsel in the JeffCo Action, the information was not available until 2023; this was approximately *four years* after the deadline to amend for plaintiffs whose cases were already in the MDL at that time.  Even among Amending Plaintiffs whose cases were transferred later, the last case transferred into the MDL where plaintiff was not represented by counsel for the JeffCo Action was transferred in April 2022; accordingly, the last deadline to amend among those plaintiffs was in July 2022, approximately six months before the JeffCo Action discovery was produced in the MDL pursuant to DR-22.  Nor did the Amending Plaintiffs who are represented by the same counsel as the JeffCo Action plaintiff have the necessary information in time to meet their amendment deadlines.  The last of their cases was transferred into the MDL on June 8, 2021, *see* Conrod Dec. ¶ 19; the last deadline for any of them to amend was, accordingly, September 6, 2021, by which time document production in the JeffCo Action had barely begun.

The fact that the information on which the proposed amended pleading will be based was not available until months or years after the amendment deadlines shows that the Amending Plaintiffs could not, even with the exercise of diligence, have met the

original deadline in 2019. This is sufficient to meet the "diligence" prong of the "good cause" analysis. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see also J&R Passmore, LLC v. Rice Drilling D, LLC,* No. 2:18-cv-1587, 2024 WL 111661, *2 (S.D. Ohio January 10, 2024) ("Diligence can be established when the information supporting an amendment is not disclosed until after the amendment deadline set in the scheduling order."); *Rapp* 2021 WL 4713394, at *3–4; *Fijalkowski*, 2018 WL 1835444, at *2; *Joseph*, 2017 WL 5953119, at *2.[12]

That other entities, including the PBM bellwether plaintiffs and the plaintiff in the

---

[12] The PEC moved this Court to lift the moratorium on motion practice to allow MDL plaintiffs to seek leave to amend on April 22, 2024. *See* Doc. #5411. That the Amending Plaintiffs did not seek leave to amend before that time does not indicate a lack of diligence, for three reasons. First, as described above, a showing of "good cause" under Rule 16 requires is an explanation of why the party could not, even with the exercise of diligence, have met the original deadline. The passage of additional time after that is relevant to the question of prejudice to the opposing party, *see* Point I-B, *infra*, but not to the reason the Amending Plaintiffs could not have met the March 16, 2019, deadline in the first place. Second, during much of 2023, this Court, the PEC, and the Optum Defendants were engaged in the process of selecting bellwether plaintiffs. It was reasonable for other parties to wait to see how that process would conclude; indeed, this Court *rejected* a request that the bellwether pool be expanded to include other MDL plaintiffs that had not yet named any of the PBM defendants in their complaints, *see* Doc. #5206; *In re Nat'l Prescription Opiate Litig.*, MDL 2804, Docket Text (N.D. Ohio Oct. 4, 2023), an indication that a request for leave to amend to add the Optum Defendants would have been futile prior to selection of the PBM bellwether plaintiffs. Moreover, the Court denied a motion by the City of Roanoke, Virginia, for leave to file an amended complaint based on new information learned in the JeffCo Action, stating that the issue could be raised again "if appropriate, after the PBM bellwether cases are chosen." *See In re Nat'l Prescription Opiate Litig.*, MDL 2804, Docket Text (N.D. Ohio Mar. 20, 2023). No concept of reasonable "diligence" could possibly require each plaintiff to file its own motion once the Court had denied the very same motion. Indeed, it was for this reason that, following the selection of bellwether cases and the amendment of the pleadings in those cases, the PEC moved to lift the moratorium for all plaintiffs before any plaintiff filed its motion for leave to amend.

11

JeffCo Action, had previously sued OptumRx and certain other Optum entities does not demonstrate a lack of diligence on the part of the Amending Plaintiffs.[13]  The actions filed by the bellwether plaintiffs (and by Jefferson County) named dozens of defendants and were focused primarily on the activities of manufacturers, distributors, and dispensers. Allegations pertaining to OptumRx in those early complaints were of necessity somewhat scant and did not include any of the important information that later became available in the JeffCo Action.  The legal theories set forth in those complaints were tailored to the claims against other defendants; the applicability of those theories to OptumRx was not fully articulated.  Indeed, it was for that reason that, once they were designated, all four PBM bellwethers sought to amend their pleadings pursuant to the scheduling order.  The allegations concerning the Optum Defendants in the amended pleadings they ultimately filed were quite different from those in their original complaints.

In this regard, it is notable that, in the JeffCo Action, counsel for OptumRx contended that the claims against his client lacked sufficient basis to meet the requirements of Rule 11 and demanded that Jefferson County withdraw its claims.  *See* Conrod Dec. ¶ 11.  The Amending Plaintiffs do not, of course, agree that Jefferson County (or the bellwether plaintiffs) lacked a sufficient basis to include OptumRx as a defendant in its action.  But the position taken by the Optum Defendants' lawyers suggests that, without the information revealed in the JeffCo Action, the viability of the claims against OptumRx was not evident to everyone; in this circumstance, even a diligent plaintiff

---

[13] The Amending Plaintiffs also seek to add Optum entities that were not named in the JeffCo Action or in the original bellwether actions.

could reasonably have declined to proceed based on the limited information available at the time. The diligence required to meet the "good cause" standard of Rule 16 does not require a plaintiff to include every allegation or every defendant that could conceivably meet the Rule 11 threshold to avoid sanctions. Having contended that by filing the JeffCo Action the County and its counsel had "likely committed sanctionable conduct," OptumRx cannot now contend that the Amending Plaintiffs' failure to sue them at the same time and based on the same limited information then available constituted a lack of diligence.

As courts have recognized, a party need not be *perfectly* diligent to meet the Rule 16 test; rather, the Court need only determine that the party has been diligent *enough*. *J&R Passmore*, 2024 WL 111661, *2 (although plaintiffs had not been perfectly diligent, they had been diligent enough to satisfy Rule 16); *see also Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 460 (S.D. Ohio 2021) ("While the parties dispute when Plaintiff discovered the information underlying her Third Amended Complaint, the timeline shows that Plaintiff was diligent enough."); *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 WL 210801, at *2 (N.D. Ohio Jan. 14, 2020) ("The due diligence requirement does not impose on a plaintiff the burden to exhaust all avenues to discover information that may serve as the basis of a claim.").

Moreover, this Court has held that a diligent plaintiff may reasonably wait for the fruits of discovery to identify additional defendants. *O'Neal*, 2020 WL 210801, *2; *Hammock v. Rogers*, No. 1:17-cv-1939, 2018 WL 8414482, at *6 (N.D. Ohio Dec. 17, 2018) (good cause shown where plaintiff's "ability to name new parties was somewhat

hamstrung by the amount of time it took to get the names of the proposed additional defendants through discovery"); *York v. Lucas Cnty., Ohio*, No. 3:13 cv 1335, 2015 WL 2384096, at *4 (N.D. Ohio May 19, 2015) (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later"). Given the sparse nature of information about the Optum Defendants in the pleadings filed by other parties prior to the deadline in CMO1, none of the Amending Plaintiffs lacked diligence in waiting to seek leave to amend until the facts demonstrating the full basis of claims against them became available.

### B. The Optum Defendants Will Suffer No Undue Prejudice If Plaintiffs Are Permitted to Amend

It should be readily apparent that the Optum Defendants will suffer no prejudice from the filing of the amended complaints at issue here. That is because each of Plaintiffs' cases has been stayed since the original deadline for the filing of amended pleadings. There has been no discovery, no motion practice, no litigation of any kind. The Optum Defendants will be in the exact same position, with respect to each of Plaintiffs' cases, that they would have been in had the cases been stayed with the Optum Defendants already in them. *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (among the factors considered in assessing prejudice from a delayed amended pleading are "whether the assertion of the new claim or defense would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute . . . ."); *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (where discovery and dispositive motion deadlines had

3069424.1

passed, and a motion for summary judgment had been filed, amendment to add a different claim would create significant prejudice to defendants); *Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, 893 (S.D. Ohio 2010) (plaintiff could not amend to add new defendants after close of discovery and briefing of motion for summary judgment; new defendants would be "severely prejudiced if they were added at this late juncture, having been deprived of their right to conduct discovery and file dispositive motions").

This is especially true because the Optum Defendants have known since the formation of this MDL that they were defendants in some cases before this Court. Nor could the Optum Defendants rely on the relatively small number of cases in this MDL in which they were named defendants to estimate the likely scope of their liability. That is so because the statute of limitations has not run on claims against them. The Optum Defendants have always known that governmental entities—whether plaintiffs in this MDL or not—could file new cases against them. Indeed, several such cases have been filed within the past year. *See, e.g.*, *State of Alaska v. Express Scripts, Inc.*, No. 3:23-cv-00233-JMK (D. Alaska); *Anne Arundel County v. Express Scripts,* No. 1:24-cv-00090-MJM (D. Md.); *People v. Express Scripts, Inc.*, Case No.: 23STCV20886 (Ca. Super. L.A. County). Moreover, if leave to amend is not granted, the Amending Plaintiffs can simply file their claims against the Optum Defendants in new stand-alone cases. In that circumstance, the Optum Defendants will have to simultaneously litigate multiple cases in multiple forums across the country. The Optum Defendants cannot demonstrate that they will be prejudiced by having the claims against them coordinated in these proceedings rather

3069424.1

than scattered around the country.  *See* 28 U.S.C. § 1407 (actions may be transferred and coordinated upon determination such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"); *In re Nat'l Prescription Opiate Litig.*, MDL 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) (finding that centralization and coordination of opioid cases "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation").[14]

## II.    AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15

Under Rule 15, "the court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Because the Rule 16 standard is recognized to be more "stringent," *see Landstar Ranger, Inc. v. City of Delaware, Ohio*, No. 2:22-CV-02008, 2022 WL 7322274, at *4 (S.D. Ohio Oct. 13, 2022), and to set a "higher threshold," *see J&R Passmore*,

---

[14] On July 11, 2024, this Court issued an order regarding litigation holds.  The Court noted that "implementation of a litigation hold is not a strict precondition for allowing amendment," but that "a defendant may want to address the topic in response to a motion to amend."  Doc. #5517 at 2.  The PEC recognizes that document preservation may be a serious issue and is taking steps to answer the Court's questions about the status of litigation holds by the Amending Plaintiffs.  But this question should play no role on these motions to amend.  In particular, the prejudice that is relevant to Rule 16 is prejudice that arises from allowing amendment past the original CMO deadline.  Other than the brief window allowing amendments noted above, these cases have been stayed.  Thus, the status of document preservation is the same now as it would have been if the Optum Defendants had been added as defendants in March 2019.  Any prejudice that would arise from a failure properly to preserve documents during the time the cases have been stayed (even assuming there were any such failure) thus does not arise from the timing of the amended complaint, but rather from the fact that a stay was in place both before and after the amendment deadline.  Thus, while the PEC recognizes the concerns of the Court on this issue as they pertain to the bellwether process, it does not believe that the failure to issue a litigation hold can be a proper factor in the denial of leave to amend under Rule 16 or Rule 15.

2024 WL 111661, at *1, a party that can establish diligence and lack of prejudice under Rule 16 can generally satisfy the broader, more liberal standard of Rule 15.  In this case, leave to amend should be granted in the interests of justice.

Only two of the Rule 15 factors—bad faith and futility of amendment—are not subsumed within the Rule 16 "good cause" analysis.  *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (identifying "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" as factors to be considered under Rule 15).[15]  Neither is applicable here. The Optum Defendants' motions to dismiss the bellwether plaintiffs' pleadings are pending before this Court, but those motions do not seek dismissal of all claims against all parties.  The Optum Defendants thus cannot show that permitting amendment here will be futile.  Nor is there any suggestion of bad faith with respect to any of the Amending Plaintiffs.  Because the Amending Plaintiffs have shown good cause under Rule 16 and because it is in the interest of justice to permit them to amend their pleadings in order to add the Optum Defendants, the requirements of Rule 15 are also satisfied.

## CONCLUSION

For the foregoing reasons, this Court should grant leave to all of the Amending

---

[15] A finding of sufficient diligence will satisfy the requirement that there was no undue delay; lack of notice and undue prejudice both fall within the prejudice analysis of Rule 16.  Finally, repeated failures to cure deficiencies would presumably negate good cause, but in any event is entirely inapplicable here, as the Amending Plaintiffs have not previously attempted to cure deficiencies, nor have any deficiencies in their pleadings been identified.

Plaintiffs to amend their complaints in order to add the Optum Defendants.

Dated: July 29, 2024                    Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR 00918
(304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

19

3069424.1