UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>See cases listed in Exhibit A to Mot. for Leave to Amend to Add Optum Defendants | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

DECLARATION OF J. CONROD IN SUPPORT OF THE
OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD
OPTUM DEFENDANTS

DECLARATION

1. My name is R. Johan Conrod, Jr., and I have personal knowledge of the matters set forth in this Declaration.

2. I am currently a partner with The Cicala Law Firm PLLC. I have served, with others, as counsel of record for plaintiff Jefferson County, Missouri in its opioid litigation *Jefferson County, MO v. Dannie E. Williams, M.D., et al*, Case No. 20-JE-CC00029 (Jefferson Cnty. Cir. Ct., Mo.) ("JeffCo Action") against OptumRx, Inc. ("OptumRx") and Express Scripts, Inc., among other defendants, since May 18, 2020.

3. I am familiar with the docket and discovery proceedings in the JeffCo Action.

4. The JeffCo Action was remanded to Missouri state court by order of this Court dated July 24, 2019 (Dkt. 1987).

5. At the time of remand and thereafter, the JeffCo Action included 44 defendants: opioid manufacturers, distributors, pharmacies, physicians, and PBMs, including OptumRx. The majority of the allegations in the First and Second Amended Petitions filed in the JeffCo Action focused on the activities of the non-PBM defendants. For example, the first 198 pages of the 254 page Second Amended Petition focuses primarily on the activities of the manufacturer defendants and general background of the opioid epidemic.

6. Motions to dismiss were filed in the JeffCo Action by virtually all defendants, including the PBMs. The motions were briefed, argued and, with one exception, ultimately denied by orders entered on July 8, 2020 (as to First Amended Complaint) and December 3, 2020 (as to Second Amended Complaint). The exception involved a common law claim of fraud against the PBM Defendants, which was dismissed without prejudice (over the PBM Defendants' objection that the count should have been dismissed with prejudice). *See* Dec. 3, 2020 Order as to Pharmacy Benefit Manager Defendants' Motion to Dismiss Plaintiff's Second Amended Petition.

7. OptumRx began producing documents in the JeffCo Action in February of 2021; however, in total OptumRx produced less than 1,000 documents in 2021.

8. The vast majority of documents were produced in 2022 or later.

9. Specifically, in 2022 OptumRx produced 60,715 documents. In 2023, OptumRx produced 16,344 documents (which included reproduction of some documents with revisions to redaction overlays and clawbacks).

10. Documents produced by OptumRx in the JeffCo Action were subject to a Protective Order entered in that case and were not shared with counsel who did not appear in the JeffCo Action.

11. On May 18, 2021, counsel for OptumRx sent a letter to Joanne Cicala, which is attached as **Exhibit 1** ("May 18 Letter"). In part, the May 18 Letter states, "Missouri law required the County to have an evidentiary basis prior to filing the allegations in its Second Amended Petition (Mo. Sup. Ct. R. 55.03(c)), but it is clear that the County had no evidentiary basis for suing OptumRx, much less for alleging that OptumRx helped 'flood the market' in Jefferson County with prescription opioids." (*See* Ex. 1, May 18 Letter, p. 2). The letter further stated, "By filing a petition with no discernible evidentiary basis, both you and the County have likely committed sanctionable conduct; OptumRx reserves its right to seek sanctions against both you and the County." *Id.* at 3.

12. The first deposition of an OptumRx witness in the JeffCo Action was conducted on March 29, 2023 (Jenna Gilbertson). Depositions continued through the fall of 2023.

13. OptumRx's corporate representative on issues related to opioid manufacturer rebate agreements, Jamey Millar, was deposed on October 18, 2023.

14. During his deposition, Millar testified regarding the provisions in the rebate contracts providing that if opioids were restricted, such as by imposing quantity limits, the manufacturer would not pay rebates.

15. For example, Millar testified as follows:

> Q: … Let's go down to the same rebate criteria, but we're going to go down to where that section bleeds onto the top of page 21, and go to part 3 there at the top of 21, that begins with the words: … "If OxyContin is subject to a quantity limit that limits the quantity prescribed to less than 4 tablets per day, such quantity limit shall cause OxyContin to be considered restricted on the formulary." Do you see that?
>
> A: I do.
>
> Q: Okay. And so if it's restricted on the formulary, then the rebates don't pay, correct?
>
> A: That's right. It would violate 1.2 of the rebate criteria that we reviewed.
> …
>
> Q: … And so what this contract is telling us is that if there is a quantity limit that restricts Oxycontin to less than 480 morphine milligram equivalents per day, then it is going to be considered restrictive, correct, that's what the document says?
> [Objection omitted]
>
> A: That makes sense, what you're describing.

(Millar Dep. 69:21–70:10, 72:10–72:20).

16. OptumRx's corporate representative on issues related to "the programs that OptumRx has developed and offered with respect to opioid utilization over the years," Dr. Sumit Dutta, was deposed in his individual and corporate representative capacities on June 1 and 2, 2023, respectively.

17. Dr. Dutta testified extensively in his corporate capacity as to OptumRx's opioid risk management program first introduced in 2017 and then enhanced in 2018 and its efficacy in addressing opioid utilization. (*See, e.g.*, Dutta Dep. 195-258).

18. As of the fall of 2023, claims against all the defendants in the JeffCo Action other than OptumRx and Express Scripts, Inc. had been resolved through settlement, bankruptcy filings, or other action.

19. Our firm also serves as counsel for other plaintiff counties and cities in opioid litigation whose cases have been transferred to this MDL. The last such case to be so transferred to the MDL was for plaintiff Arlington County, Virginia. That transfer occurred on June 8, 2021, after the Fourth Circuit Court of Appeals held that removal from state court by certain PBM-related defendants was proper under federal officer removal jurisdiction.

20. The Webb County (CT15) and Rochester (CT12) Amended Pleadings (Webb Dkt. 110 and Rochester Dkt. 110) directly rely upon documents and information from OptumRx's JeffCo Action production in key allegations.

21. For example, the Amended Pleadings include the following allegations that are based on information in JeffCo Action documents or depositions:

    a. As discussed in Millar's corporate representative deposition, quoted above, OptumRx's rebate agreements with opioid manufacturers were specifically structured such that the manufacturers would only be required to pay rebates if opioids were not restricted by utilization management tools ("UM") or prior authorization restrictions ("PA") and only so long as opioids were not "disadvantaged" as compared to other drugs. Indeed, OptumRx specifically identified the avoidance of PA restrictions as a selling point for which it could charge opioid manufacturers. Rochester Amended Pleading ¶¶ 299, 301, 306, 601.[1]

---

[1] The JeffCo Action material supporting these allegations includes:
OPTUMRX_JEFFCO_0000535494; OPTUMRX_JEFFCO_0000473712;

    b.    Optum and its predecessors have long been able to track how many opioids its millions of members were receiving, including the quantity of pills, the dosing strengths, the combination of drugs being dispensed, and the travel distance of members to acquire prescription opioids. Additionally, OptumRx has access to clinical information for millions of patients, which includes clinical files and over 4.5 billion text notes from members' clinical records. *See* Rochester Amended Pleading ¶ 385.[2]

    c.    The Optum Defendants knew that the data they had gave them the ability to stop inappropriate opioid use. But they delayed implementing formulary, UM, and other restrictions because of the rebates they were receiving from opioid manufacturers. Even when Optum Rx finally began implementing some such measures, it delayed implementing others because of the rebates it received from Purdue. Rochester Amended Pleading ¶¶ 50, 361, 422-23, 443-456, 476-479, 485-86, 499-500.[3]

    d.    As late as March 2019, OptumRx considered removing OxyContin from its formularies, but hesitated because of the volume of rebates it was receiving. Rochester Amended Pleading ¶ 669.[4]

22. Even where documents from the JeffCo Action are not specifically cited, information learned from discovery in the JeffCo Action forms the basis for certain allegations in the Amended Pleadings. Upon review of the Amended Pleadings, at least

---

OPTUMRX_JEFFCO_0000006804; OPTUMRX_JEFFCO_0000473712; OPTUMRX_JEFFCO_0000140266; OPTUM_JEFFCO_0000011106.

[2] The JeffCo Action material supporting this allegation includes: OPTUMRX_JEFFCO_0000041763; OPTUMRX_JEFFCO_0000390555.

[3] The JeffCo Action material supporting these allegations includes: OPTUMRX_JEFFCO_0603451; OPTUMRX_JEFFCO_0000014268; OPTUMRX_JEFFCO_0000184961; OPTUMRX_JEFFCO_0000360057; OPTUMRX_JEFFCO_0000107098

[4] The JeffCo Action material supporting this allegation includes: OPTUMRX_JEFFCO_0000506200.

180 allegations regarding the conduct of OptumRx and Express Scripts, Inc. are based either expressly or implicitly on documents and information from the JeffCo Action.

I declare that the foregoing is true and accurate to the best of my knowledge and understanding under penalty of perjury of the laws of the United States of America.

Dated: July 29, 2024

By: _____
R. Johan Conrod, Jr.

# EXHIBIT 1

**In Support of**

**Declaration of J. Conrod in Support of Motion for
Leave to Amend to Add Optum Defendants**

# ALSTON & BIRD

One South at The Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
704-444-1000 | Fax: 704-444-1111

May 18, 2021

BY EMAIL

Joanne Cicala
The Cicala Law Firm PLLC
101 College Street
Dripping Springs, TX 78620

Re:   *Jefferson County v. Dannie E. Williams, et al.*, No. 20JE-CC00029

Dear Joanne:

I write on OptumRx, Inc.'s behalf to address the County's refusal to identify the opioid prescriptions (and by extension, the health-plan formularies) that it claims caused the harm for which it seeks relief from OptumRx. Over the past six months, we have asked the County for that information no fewer than thirteen times,[1] and the County has either (1) not responded, (2) pointed to the *entire* ARCOS database, or (3) argued that OptumRx can somehow tell from its own data which prescriptions and plan formularies the County challenges.[2] None of those is a proper response to OptumRx's discovery requests.

---

[1] OptumRx's October 30, 2020 Interrogatories Nos. 11 & 12 to Jefferson County; K. Chemerinsky October 26, 2020 letter to J. Lowe and J. Garvey at Ex. A; K. Chemerinsky December 4, 2020 letter to J. Cicala at Ex. A; E. McGowan March 6, 2021 letter to J. Cicala at 2, 3; K. Chemerinsky March 17, 2021 letter to J. Cicala at 1, 8–9; E. McGowan March 18, 2021 letter to J. Cicala at 2; E. McGowan March 26, 2021 letter to J. Cicala at 1; E. McGowan April 6, 2021 letter to J. Cicala at 2; December 15, 2020 meet & confer; February 8, 2021 meet & confer; March 1, 2021 meet & confer; April 7, 2021 meet & confer; April 8, 2021 meet & confer.

[2] *See* Jefferson County's January 29, 2021 Supplemental Responses to OptumRx's Interrogatories Nos. 11 (citing to ARCOS database for Jefferson County, contiguous states, and nationwide) & 12 (failing to provide a substantive response); March 31, 2021 J. Cicala letter to E. McGowan at 4; December 15, 2020 meet & confer; February 8, 2021 meet & confer; March 1, 2021 meet & confer; April 7, 2021 meet & confer; April

Alston & Bird LLP                                                                                                    www.alston.com

Atlanta  |  Beijing  |  Brussels  |  Charlotte  |  Dallas  |  Fort Worth  |  London  |  Los Angeles  |  New York  |  Raleigh  |  San Francisco  |  Silicon Valley  |  Washington, D.C.

Jefferson County v. Dannie E. Williams, et al., No. 20JE-CC00029
May 18, 2021
Page 2

The County alleges that PBMs were the "gatekeepers" of prescription opioids and "[g]uaranteed" that prescription opioids "[f]looded the [m]arket." Second Amended Petition ¶ 665; *id.* at p. 219. The County also alleges that OptumRx offered clients formulary products that "allowed for the dispensing and reimbursement of [prescription] opioids in Missouri." *Id.* at ¶ 682. Yet the County has not identified a single opioid prescription that it claims caused the harm for which it seeks relief from OptumRx. Nor has the County identified the clients for whom OptumRx provided the services that allegedly harmed the County.

Missouri law required the County to have an evidentiary basis before filing the allegations in its Second Amended Petition (Mo. Sup. Ct. R. 55.03(c)),[3] but it is clear that the County had no evidentiary basis for suing OptumRx, much less for alleging that OptumRx helped "flood the market" in Jefferson County with prescription opioids. If OptumRx's alleged conduct (offering formulary products to its health-plan clients) caused a "flood" of prescription opioids in Jefferson County, and if that alleged flood of prescriptions included prescriptions that the County claims caused its alleged harm, then the County should be able to identify those prescriptions, the formulary associated with each prescription, and the health plan that reimbursed the prescription. At a minimum, it should have identified at least *one* prescription before suing OptumRx. Yet to this day, the County has not identified even one prescription that it claims caused the harm for which it seeks relief from OptumRx or even one health plan that adopted a formulary that the County faults in hindsight.

Nor can the County do so. As the County conceded in its May 7 letter, it has not identified any specific prescriptions that it challenges and in fact has *no information* about specific prescriptions, let alone information showing that particular prescriptions caused the alleged harm for which the County seeks relief from OptumRx. May 7, 2021 J. Cicala letter to E. McGowan at 3 ("To the extent that OptumRx requests that the County provide information on specific plans and/or prescriptions, naturally, you and the other PBM Defendants and the Pharmacy Defendants are in superior position to

---

8, 2021 meet & confer; April 16, 2021 J. Cicala letter to K. Chemerinsky at 4–5; May 7, 2021 J. Cicala letter to E. McGowan at 3.

[3] *See also, e.g.*, *Moore v. Suntrust Bank,* No.: 1816-cv00570, 2018 Mo. Cir. LEXIS 2698, at *1 (Mo. Cir. Ct. Nov. 19, 2018) ("[T]he Court finds that substantially all of SunTrust's attorney's fees incurred in regard to this matter were the result of Plaintiffs, and Plaintiffs counsel's, violation of Rule 55.03, as no factual contentions asserted by Plaintiff against SunTrust in the Complaint or First Amended Complaint in this case had evidentiary support."); *Carlson v. Carlson*, 275 S.W.3d 356, 361 (Mo. App. W.D. 2008) (affirming sanctions award where "evidence at trial established the lack of a factual basis for the challenged allegations of Father's Counter-Petition. . . .").

Jefferson County v. Dannie E. Williams, et al., No. 20JE-CC00029
May 18, 2021
Page 3

the County to produce reimbursement and dispensing level detail. *Jefferson County does not-in the absence of discovery from you and the other identified defendants- yet have access to the specific prescriptions processed by you pursuant to your formularies.*") (emphasis added). By filing a petition with no discernible evidentiary basis, both you and the County have likely committed sanctionable conduct; OptumRx reserves its right to seek sanctions against both you and the County.

In the meantime, the County must identify the opioid prescriptions (and the related health-plan formularies) for which it seeks relief from OptumRx. If it cannot or will not do so, it must dismiss its claims against OptumRx. *See City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 113, 115, 116 (Mo. banc 2007); *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 243–44, 247 (Mo. banc 1984).

The County has said during various telephone conferences that this case isn't about local prescriptions but rather about OptumRx's "national" policy decisions that "dr[o]ve utilization." *E.g.*, February 8, 2021 meet & confer; April 8, 2021 meet & confer (suggesting that its alleged harm occurred at the "national level"). But the causes of action that the County presses against OptumRx have elements, and those elements require proof of, among other things, causation. The County must prove that OptumRx's alleged conduct (whether the County describes it as local or "national") caused harm to the County *in Jefferson County*: "[T]he [County's] claims are like those of any plaintiff seeking particularized damages allegedly resulting from a public nuisance. The [County], therefore, must meet the same causation standard as must other nuisance claimants and must show specific and particularized harm from the [alleged] public nuisance. . . ." *Benjamin Moore*, 226 S.W.3d at 116; *see also id.* ("*Zafft*'s product identification requirement applies with equal force to public nuisance cases brought by governmental entities for monetary damages accrued as an alleged result of the public nuisance.").

The law couldn't be otherwise. In its Second Amended Petition and on our meet-and-confer calls, the County has conceded—as it must—that prescription opioids are medically appropriate and necessary in a variety of circumstances. To give just two examples, physicians often prescribe opioids for terminal cancer patients and individuals recovering from significant surgical procedures.[4] Given that reality, the County has confirmed that it is not seeking to recover from OptumRx for every opioid prescription reimbursed by a Jefferson County health plan that adopted an OptumRx formulary offering.

---

[4] As OptumRx has also explained on those calls, the decision to prescribe an opioid rests with the doctor treating the patient, not with OptumRx.

Jefferson County v. Dannie E. Williams, et al., No. 20JE-CC00029
May 18, 2021
Page 4

The upshot? The County cannot possibly seek recovery from OptumRx without first identifying, among other things, the specific prescriptions that the County claims caused the harm for which it seeks relief from OptumRx. The federal MDL court has required plaintiffs to do as much. *See, e.g.*, *In re: Nat'l Prescription Opiate Litig.*, 1:17–md–2804, Dkt. 3329, at *3 (N.D. Ohio) (Special Master Cohen) ("Plaintiffs shall identify for Defendants [] the prescriptions they (and their experts) conclude caused them the harm for which they seek relief . . . ."). OptumRx is entitled to know the prescriptions at issue so that it can investigate those prescriptions and defend itself.

And for those prescriptions identified, the County must identify the plan formularies that the County contends were somehow faulty. As we have explained, PBMs contract with clients to offer various administrative services, and through those service agreements, PBMs often offer formulary products to clients. It is up to the client to accept, reject, or customize an offered formulary or to create its own formulary. No formulary becomes part of a client's prescription-drug benefit design unless the client adopts it.

The County cannot avoid its obligation to identify the specific prescriptions and plan formularies for which it seeks recovery from OptumRx by arguing that OptumRx provides PBM services to a certain share of the covered lives in Jefferson County. There is no market-share liability in Missouri:

> Even assuming that the [County] could prove—via marketing evidence or something else short of product identification—that a particular defendant held a certain share of the [opioid] market in the [County] at the relevant time or even if it could prove that because of that defendant's market share there was a statistical probability that [it adjudicated] . . . a certain percentage of the [opioid prescriptions] at issue—that would not establish that the particular defendant actually caused the problem. Absent product identification evidence, the [County] simply cannot prove actual causation.

*Benjamin Moore*, 226 S.W.3d at 116.

OptumRx is entitled to the information that it seeks even apart from *Benjamin Moore*'s requirements. The information is relevant not only to the County's claims but also to OptumRx's claims or defenses. Mo. R. Sup. Ct. 56.01(b). OptumRx has served discovery asking the County to identify the opioid prescriptions for which the County seeks to hold OptumRx liable, (OptumRx's Interrogatories 11 & 12 to Jefferson County), and the County has refused to answer, claiming that the requested information doesn't fit the County's liability theory against OptumRx. Jefferson County's Supplemental Response to OptumRx Interrogatory Nos. 11 & 12 ("Plaintiff

. . . objects on the grounds that the Interrogator[ies] misconstrue[] what is relevant in this case and Plaintiff's claims."). As sparing as the County's allegations about PBMs are, OptumRx has not misconstrued the County's liability theory. But in any case, the County cannot withhold information simply because it disagrees with OptumRx over what the facts might show; information about the prescriptions that the County claims caused the harm for which it seeks relief is relevant both to the County's liability theory and to OptumRx's claims or defenses in the litigation.

Nor can the County sidestep its discovery obligations by claiming that OptumRx already knows from its own data which prescriptions the County challenges. *See* April 16, 2021 J. Cicala letter to K. Chemerinsky at 4 ("[Y]our client and the other PBM Defendants have- on their own databases- the very detail you are seeking here, i.e. prescription level claims data for every OptumRx, Express Scripts or Caremark covered life. Your client has at all times known which of its covered lives received opioids scripts, in what amounts, for what diagnoses, and from what doctor."); May 7, 2021 J. Cicala letter to E. McGowan at 3 ("To the extent that OptumRx requests that the County provide information on specific plans and/or prescriptions, naturally, you and the other PBM Defendants and the Pharmacy Defendants are in superior position to the County to produce reimbursement and dispensing level detail."); Jefferson County's Supplemental Response to OptumRx's Interrogatories 11 & 12 (objecting because "the Interrogator[ies] seek[] . . . information . . . already in Defendant's possession"). That is not a valid response under Missouri law. *See* Mo. Sup. Ct. R. 58.01(a)(1); Mo. Sup. Ct. 56.01(b).

It is also nonsensical. OptumRx cannot tell from its own data which opioid prescriptions the County claims caused the alleged harm for which it seeks to recover from OptumRx or which health plans adopted formularies that the County claims were somehow faulty. To take only one aspect of the analysis, evaluating the medical basis or diagnosis underlying a challenged prescription would require investigating the individual circumstances that prompted the physician to prescribe an opioid. And as for the alleged harm to the County, OptumRx's data do not show (1) what happened to a patient after they ingested an opioid prescribed for medical care and treatment or (2) how that use resulted in the alleged harm for which the County seeks relief from OptumRx.

Those are only a few aspects of the multi-faceted, individualized inquiry needed to understand the circumstances surrounding any given prescription. There are plenty of other issues, too—such as the nature of the patient's prescription drug coverage and the nature of the health plan's contractual relationship with OptumRx (including whether the health plan chose to adopt an OptumRx formulary offering or customized one of their own). The County bears the burden of showing that particular prescriptions caused the alleged harm for which it seeks relief from OptumRx, and

Jefferson County v. Dannie E. Williams, et al., No. 20JE-CC00029
May 18, 2021
Page 6

OptumRx is entitled to rebut any evidence that the County puts forward with evidence of its own.

Please let us know by May 24 whether you will agree to identify the prescriptions and plan formularies for which you seek relief from OptumRx. If you do not agree to do so, we will take the issue to the Special Master.

Thank you,

Brian D. Boone

cc:
    Bill Jordan, Esq.
    Emily C. McGowan, Esq.
    Caroline Strumph, Esq.
    Ethan Bond, Esq.
    Bradley J. Schlozman, Esq.
    Jeffrey J. Lowe, Esq.
    John F. Garvey, Esq.