# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| See cases listed in Exhibit A | |

# OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD EXPRESS SCRIPTS DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Factual Background ............................................................................................................... 3

Legal Standard ...................................................................................................................... 7

Argument .............................................................................................................................. 7

    I.    The Amending Plaintiffs Have "Good Cause" to Amend the
        Scheduling Order ........................................................................................... 7

        A.    Despite Their Diligence, the Amending Plaintiffs Could Not Have
              Met the Original Deadline .................................................................... 7

        B.    The Express Scripts Defendants Will Suffer No Undue Prejudice If
              Plaintiffs Are Permitted to Amend ..................................................... 13

    II.    Amendment of the Pleadings Is Proper Under Rule 15 .......................... 15

Conclusion .......................................................................................................................... 17

3069501.1

TABLE OF AUTHORITIES

<u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brumbalough v. Camelot Care Ctrs., Inc.,*
    427 F.3d 996 (6th Cir. 2005) ................................................................................16

*Duggins v. Steak 'N Shake, Inc.,*
    195 F.3d 828 (6th Cir. 1999) ................................................................................13

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs,*
    No. 2:17-cv-195, 2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) ....................7, 10

*Fraker v. Marysville Exempted Vill. Sch.,*
    696 F. Supp. 2d 887 (S.D. Ohio 2010) ................................................................14

*Hammock v. Rogers,*
    No. 1:17-cv-1939, 2018 WL 8414482 (N.D. Ohio Dec. 17, 2018) .....................12

*J&R Passmore, LLC v. Rice Drilling D, LLC,*
    No. 2:18-cv-1587, 2024 WL 111661 (S.D. Ohio January 10, 2024) .......10, 12, 15

*Joseph v. Joseph,*
    No. 1:16-cv-465, 2017 WL 5953119 (S.D. Ohio Jan. 10, 2017)......................7, 10

*Landstar Ranger, Inc. v. City of Delaware, Ohio,*
    No. 2:22-CV-02008, 2022 WL 7322274 (S.D. Ohio Oct. 13, 2022) ...................15

*Leary v. Daeschner,*
    349 F.3d 888 (6th Cir. 2003) ................................................................................10

*In re Nat'l Prescription Opiate Litig.,*
    MDL No. 2804, Transfer Order (J.P.M.L. Dec. 5, 2017)....................................15

*O'Neal v. Denn-Ohio, LLC,*
    No. 3:19-cv-280, 2020 WL 210801 (N.D. Ohio Jan. 14, 2020) .........................12

*Ousley v. CG Consulting, LLC,*
    339 F.R.D. 455 (S.D. Ohio 2021)........................................................................12

*Phelps v. McClellan,*
    30 F.3d 658 (6th Cir. 1994) ................................................................................13

*Rapp v. Forest City Techs., Inc.,*
    No. 1:20-cv-2059, 2021 WL 4713394 (N.D. Ohio June 17, 2021) ................7, 10

*York v. Lucas Cnty., Ohio,*
    No. 3:13 cv 1335, 2015 WL 2384096 (N.D. Ohio May 19, 2015)......................13

**Statutes**

28 U.S.C. § 1407 ...................................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 15......................................................................................................1, 3, 15, 16

Fed. R. Civ. P. 15(a)(2) ...................................................................................................15

Fed. R. Civ. P. 16........................................................................................................ *passim*

Fed. R. Civ. P. 16(b)..........................................................................................................7

## INTRODUCTION

In accordance with this Court's Order dated May 23, 2024, Doc. #5455, the Plaintiffs listed in Exhibit A ("Amending Plaintiffs") hereby move for leave to amend their operative complaints pursuant to Rules 15 and 16 to add the Express Scripts Defendants[1] beyond the deadline for amendment of pleadings set forth in this Court's case management orders, and submit this omnibus Memorandum of Law in support thereof.  The allegations and claims for relief with which the Amending Plaintiffs seek to supplement their operative pleadings would be substantially identical to those set forth in the Supplemental and Amended Allegations to Be Added to the Verified Complaint and Jury Demand filed in *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 ("Rochester Amended Pleading").

Leave should be granted because new information, not available to any of the Amending Plaintiffs until long after the deadline for amendment had passed,[2] is central to the allegations against the Express Scripts Defendants in this MDL.  This new information was provided by Express Scripts, Inc. ("ESI") in discovery in *Jefferson County v. Dannie E. Williams, M.D., et al.,* (the "JeffCo Action"), litigated in state court in Missouri.

---

[1]The Express Scripts Defendants are:  Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Evernorth Health, Inc. (formerly Express Scripts Holding Company), and Express Scripts Specialty Distribution Services, Inc.

[2] The CMO deadline was the later of March 16, 2019, or 90 days from the date a case was transferred into the MDL.  As discussed in the text, the specific operative date for plaintiffs with deadlines after March 16, 2019, is irrelevant:  the JPML stopped transferring cases into the MDL in April 2022 and the new information that gives rise to this motion was not made available in the MDL until January of 2023 at the earliest.

1

The vast majority of document production in that case was made in 2022 and 2023, but was not produced in the MDL until January, 2023.

As shown in the Rochester Amended Pleading, and as described below, the documents produced in discovery in the JeffCo Action provide key information that is central to the claims the Amending Plaintiffs seek to add. This information includes details about the wealth of data the Express Scripts Defendants have at their disposal; the use they actually made of that data; the fact that the Express Scripts Defendants knew at least by 2007 that prior authorization ("PA") was one of the (if not the) most effective ways to reduce inappropriate opioid use, but did not offer plans with PA for opioids until 2017; details of their rebate agreements that show how the Express Scripts Defendants were paid to ensure unfettered access to prescription opioids; how changes in the formulary restrictions and utilization management tools that the Express Scripts Defendants offered were in fact effective in limiting the supply of opioids; and how the Express Scripts Defendants delayed implementing those restrictions specifically for the purpose of maintaining high rebate payments from opioid manufacturers.

With the exception of Amending Plaintiffs represented by the same counsel as the plaintiff in the JeffCo Action, none of the Amending Plaintiffs had access to this information until the Express Scripts Defendants' DR-22 production in this litigation, which did not begin until January 2023.[3] Because the Amending Plaintiffs could not, even

---

[3] As explained below, even counsel for the plaintiff in the JeffCo Action did not have the relevant discovery information in time for the MDL plaintiffs it represents to amend their pleadings by the applicable deadlines.

with due diligence, have met the deadline to amend their complaints to add claims against the Express Scripts Defendants, and because, as discussed below, the Express Scripts Defendants will not be prejudiced by these amendments, this Court should find that the Amending Plaintiffs have shown "good cause" within the meaning of Rule 16, and that amendment is proper under Rule 15,  and should grant the motions to amend for each of the Amending Plaintiffs.

## FACTUAL BACKGROUND

The facts pertaining generally to the procedural history of these cases and the deadlines set by the Court for the amendment of pleadings are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which the Amending Plaintiffs here incorporate by reference and to which the Court is respectfully referred.

On July 24, 2019, the JeffCo Action was remanded to the Circuit Court of Jefferson County, Missouri.  *See* Declaration of Johan Conrod at ¶ 4.  ESI was one among 44 defendants named in the JeffCo Action. *Id.* at ¶ 5. The parties, including ESI, engaged in discovery.   ESI began producing documents in February, 2021, but in all of that year produced less than 1,000 documents.  *Id.* at ¶ 7. It was not until 2022 and 2023 that ESI provided significant discovery in the JeffCo Action, producing some 64,000 documents in 2022 and approximately 8,400 documents in 2023.  *Id.* at ¶¶ 8-9.  By the fall of 2023, claims against all the defendants in the JeffCo Action other than ESI and OptumRx had been resolved through settlement, bankruptcy filings, or other action *Id.* at ¶ 13.

The documents that ESI produced in the JeffCo Action were subject to a protective order in that action and were not shared with other counsel who did not appear in the

JeffCo Action. *Id.* at ¶ 10.  The documents were, however, also subject to this Court's DR-22 Order, requiring production in this MDL of documents pertaining to opioids produced in other litigations or in response to investigations.  On January 27, 2023, ESI began making DR-22 productions in this MDL, making available to MDL plaintiffs the documents it had produced in the JeffCo Action for the first time.  Thus, Amending Plaintiffs, other than those represented by the same counsel as the plaintiff in the JeffCo Action, had no access to the ESI documents produced in the JeffCo Action until the beginning of 2023 at the earliest; even those Amending Plaintiffs that are represented by the JeffCo Action lawyers did not have access to that information until well into 2022 and even 2023.[4]

On October 27, 2023, this Court selected four cases as bellwethers for claims against the pharmacy benefit manager ("PBM") defendants, which included certain Express Scripts Defendants, along with OptumRx and related entities. With the benefit of the documents from the JeffCo Action, newly available in the MDL, the four PBM bellwether plaintiffs set about preparing amended complaints.  The bellwether amended

---

[4] As set forth in the Declaration of Johan Conrod, the last case to be transferred into the MDL among the cases brought by the same counsel as the JeffCo Action plaintiff was transferred on June 8, 2021. Conrod Dec. ¶ 14.  The deadline for amendment of that pleading was September 6, 2021.  Thus, even the Amending Plaintiffs that are represented by counsel in the JeffCo Action did not have the fruits of the JeffCo discovery in time to meet their deadline to amend. Notably, counsel for the JeffCo Action plaintiff did seek leave to amend with respect to three cases in order to incorporate information learned in the discovery in Missouri. On March 20, 2023, this Court denied the motion filed by plaintiff the City of Roanoke, Virginia; the Court never ruled on the others.  *See In Re: National Prescription Opiate Litigation*, MDL 2804, Docket Text (N.D. Ohio Mar. 20, 2023); *see also* Doc. #4896.

complaints included claims against all of the Express Scripts Defendants. They included claims for relief not previously pleaded by the bellwether plaintiffs.  Most significantly, they included numerous new factual allegations drawn from the documents and testimony produced in the JeffCo Action.  These new factual allegations are now at the core of the claims against the Express Scripts Defendants.

The extent of the role of this new information in the bellwether amended complaints can be seen, in the first instance, by the number of times the JeffCo Action documents ae cited in the amended complaints.  For example, in the Rochester Amended Pleading, documents from ESI's JeffCo Action production are quoted 30 times.[5] Testimony and/or exhibits from the depositions of ESI witnesses from the JeffCo Action are quoted 14 times.

But the number of times ESI's JeffCo Action documents and depositions are *quoted* understates the extent to which documents and information learned in the JeffCo Action form the basis for allegations in the Rochester Amended Pleading.  This is so because the filed Rochester Amended Pleading provides evidentiary sources only for direct quotations.  As set forth in the Declaration of Johan Conrod, the true number of times that the ESI documents from the JeffCo Action form the basis of allegations against the PBMs in the Rochester Amended Pleading is 180. Conrod Dec. ¶¶ 16-17.

These allegations were not peripheral, unimportant details. Rather, the allegations

---

[5] Citations for quotations are provided in the footnotes in the Rochester Amended Pleading.  Documents produced by ESI are identified by production numbers beginning with ESI_JEFFCO.  The 30 instances of quotations from ESI documents include "*id.*" citations.

sourced to the JeffCo Action ESI discovery include that:

- Express Scripts contracts not only provided for rebates from drug manufacturers, but more specifically, provided that Express Scripts would not receive rebates, or would receive lower rebates, if access to opioids were restricted by such measures as prior authorization requirements, co-pay differentials, or reduced (that is, not preferred) formulary status;[6]

- The Express Scripts Defendants recognized no later than 2008 that they needed to do something about OxyContin abuse, but failed to act for another decade, in order to protect the rebates they earned from opioid prescribing;[7]

- Express Scripts worked with Purdue to spread misinformation about the safety and efficacy of opioids;[8]

- The Express Scripts Defendants had vast amounts of data that allowed them to identify problems of prescription abuse that they did nothing to address. [9]

On May 24, 2024, this Court granted the PEC's motion to lift the moratorium on motion practice to allow non-bellwether MDL plaintiffs to seek leave to amend their pleadings in order to add defendants they had not previously named. The Amending Plaintiffs now seek leave to amend to add claims against the Express Scripts Defendants based on the allegations in the Rochester Amended Pleading and the other PBM bellwether pleadings.

As described below, none of these plaintiffs could have met the applicable deadline for amendment with respect to the Express Scripts Defendants because the

---

[6] *See* Conrod Dec. ¶ 16.

[7] *See id.*

[8] *See id.*

[9] *See id..*

information on which they seek to base their claims was not available at that time, or indeed at any time prior to 2022 or even, with respect to most MDL plaintiffs, 2023. As further discussed below, amendment of these cases to include the Express Scripts Defendants will not prejudice those defendants because the Amending Plaintiffs' actions have all been stayed.

## LEGAL STANDARD

The legal standards applicable to this motion are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs here incorporate by reference and to which the Court is respectfully referred.

## ARGUMENT

I. THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER

A. **Despite Their Diligence, the Amending Plaintiffs Could Not Have Met the Original Deadline**

The Amending Plaintiffs readily meet the diligence test for amending the scheduling order to permit amended pleadings:  the information on which they seek to base their amended pleadings was simply not available until the applicable deadline for amendment had passed.  *See Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 4713394, at *3–4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence."); *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, No. 2:17-cv-195, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018) ("New information can constitute good cause under Rule 16(b)."); *Joseph v. Joseph*, No. 1:16-cv-465, 2017 WL 5953119, at *2 (S.D. Ohio Jan. 10, 2017) (finding good cause existed when "the documents

7

upon which the proposed amendment [was] largely based were not produced until more than two months after the . . . motion to amend deadline."). This was so because discovery from Express Scripts in the JeffCo Action revealed a wealth of information not previously available. This new information was not peripheral - it permeates the Rochester Amended Pleading, providing the basis for scores of factual allegations. The new evidence was critical in demonstrating the role of the Express Scripts Defendants in creating, contributing to, and maintaining the opioid crisis. Although *some* information about the Express Scripts Defendants' role was, of course, previously available, the extent to which the rebate contracts with opioid manufacturers prevented the implementation of restrictions on opioids (at the pain of loss of rebates) was not available until the JeffCo Action production. Similarly, that Express Scripts Defendants colluded with Purdue to maintain free availability of prescription opioids without regard to the interest of Express Scripts' clients, the lives covered by those clients, or the public was not known or understood (and even now may not be fully understood). Nor was the extent of the data and knowledge that the Express Scripts Defendants had known.[10] Conrod Dec. ¶ 16.

---

[10] Indeed, in the Rochester Amended Pleading, Plaintiff alleges: "Plaintiff did not learn that it had been injured by Defendants' actions, the source of those injuries, or that those injuries were part of a pattern of conduct until only recently, until documents revealing those facts were produced in discovery by various entities in *In re: National Prescription Opiate Litigation*, Case No. 1:17- md-2804-DAP (N.D. Ohio) and other opioids litigation, including the documents cited, quoted, and relied on throughout this complaint. These documents—and the facts they contain—have never before been made public, nor have they ever before been in Plaintiff's possession, and not otherwise available to Plaintiff before being produced in discovery." Rochester Amended Pleading ¶ 694. The Amending Plaintiffs had no greater access to this information than the City of Rochester.

Even the federal government recognizes the opacity of PBM business practices. As set forth in a July 2024 report of the Federal Trade Commission, "PBMs oversee critical decisions about access to and affordability of medications without transparency or accountability to the public. Indeed, *PBM business practices and their effects remain extraordinarily opaque.*" *See Pharmacy Benefit Managers: The Powerful Middlemen Inflating Drug Costs and Squeezing Main Street Pharmacies,* FTC Interim Staff Report at 1 (July 2024) (emphasis added).[11]

In addition, as alleged in the Rochester Amended Pleading, the Express Scripts Defendants misrepresented that they used their market power to create formularies and UM programs based on the health and safety of the public and of the lives covered by the benefit plans that were their clients. They repeatedly represented that they were working to ensure that opioids were prescribed and dispensed only for safe and legitimate reasons. *See* Rochester Amended Pleading ¶ 699. This made it particularly difficult for the Amending Plaintiffs to learn the facts underlying the pleadings they now propose to file until the Express Scripts Defendants produced the material in discovery in the JeffCo Action and/or provided it in the MDL pursuant to DR-22.

For Amending Plaintiffs not represented by counsel in the JeffCo Action, the information was not available until 2023; this was approximately *four years* after the

---

[11] As noted in the FTC report, in order to learn how the PBMs operate, in 2022 the FTC issued an order to the six largest PBMs, including the Express Scripts Defendants, requesting data and documents about their businesses and business practices. *Id.* at 1-2. Thus, even the FTC was not able to understand fully the business practices of PBMs, including the Express Scripts Defendants, without resort to what would amount, in the litigation context, to pre-complaint discovery not available to plaintiffs in the MDL.

deadline to amend for plaintiffs whose cases were already in the MDL at that time.  Even among Amending Plaintiffs whose cases were transferred later, the last case transferred into the MDL where plaintiff was not represented by counsel for the JeffCo Action was transferred in April 2022; accordingly, the last deadline to amend among those plaintiffs was in July, 2022, approximately six months before the JeffCo Action discovery was produced in the MDL pursuant to DR-22.  Nor did the Amending Plaintiffs who are represented by the same counsel as the JeffCo Action plaintiff have the necessary information in time to meet their amendment deadlines. The last of their cases was transferred into the MDL on June 8, 2021, *see* Conrod Dec. ¶ 14; the last deadline for any of them to amend was, accordingly, September 6, 2021, by which time document production in the JeffCo Action had barely begun.

The fact that the information on which the proposed amended pleading will be based was not available until months or years after the amendment deadlines shows that the Amending Plaintiffs could not, even with the exercise of diligence, have met the original deadline in 2019.  This is sufficient to meet the "diligence" prong of the "good cause" analysis.  *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see also J&R Passmore, LLC v. Rice Drilling D, LLC,* No. 2:18-cv-1587, 2024 WL 111661, *2 (S.D. Ohio January 10, 2024) ("Diligence can be established when the information supporting an amendment is not disclosed until after the amendment deadline set in the scheduling order."); *Rapp*, 2021 WL 4713394, at *3–4; *Fijalkowski*, 2018 WL 1835444, at *2; *Joseph*, 2017

10

WL 5953119, at *2.[12]

That other entities, including the PBM bellwether plaintiffs and the plaintiff in the JeffCo Action, had previously sued ESI and certain other Express Scripts entities does not demonstrate a lack of diligence on the part of the Amending Plaintiffs.[13]  The actions filed by the bellwether plaintiffs (and by Jefferson County) named dozens of defendants and were focused primarily on the activities of manufacturers, distributors and dispensers. Allegations pertaining to the ESI in those early complaints were of necessity somewhat

---

[12] The PEC moved this Court to lift the moratorium on motion practice to allow MDL plaintiffs to seek leave to amend on April 22, 2024. *See* Doc. #5411. That the Amending Plaintiffs did not seek leave to amend before that time does not indicate a lack of diligence, for three reasons.  First, as described above, a showing of "good cause" under Rule 16 requires is an explanation of why the party could not, even with the exercise of diligence, have met the original deadline.  The passage of additional time after that is relevant to the question of prejudice to the opposing party, *see* Point I-B, *infra*, but not to the reason the Amending Plaintiffs could not have met the March 16, 2019, deadline in the first place.  Second, during much of 2023, this Court, the PEC, and the Express Scripts Defendants were engaged in the process of selecting bellwether plaintiffs. It was reasonable for other parties to wait to see how that process would conclude; indeed, this Court *rejected* a request that the bellwether pool be expanded to include other MDL plaintiffs that had not yet named any of the PBM defendants in their complaints, *see* Doc. #5206; *In re Nat'l Prescription Opiate Litig.*, MDL 2804, Docket Text (N.D. Ohio Oct. 4, 2023), an indication that a request for leave to amend to add the Express Scripts Defendants would have been futile prior to selection of the PBM bellwether plaintiffs.  Moreover, the Court denied a motion by the City of Roanoke, Virginia, for leave to file an amended complaint based on new information learned in the JeffCo Action, stating that the issue could be raised again "if appropriate, after the PBM bellwether cases are chosen."  *See In re Nat'l Prescription Opiate Litig.*, MDL 2804, Docket Text (N.D. Ohio Mar. 20, 2023).  No concept of reasonable "diligence" could possibly require each plaintiff to file its own motion once the Court had denied the very same motion. Indeed, it was for this reason that, following the selection of bellwether cases and the amendment of the pleadings in those cases, the PEC moved to lift the moratorium for all plaintiffs before any plaintiff filed its motion for leave to amend.

[13] The Amending Plaintiffs also seek to add Express Scripts entities that were not named in the JeffCo Action or in the original bellwether actions.

scant and did not include any of the important information that later became available in the JeffCo Action. The legal theories set forth in those complaints were tailored to the claims against other defendants; the applicability of those theories to ESI was not fully articulated. Indeed, it was for that reason that, once they were designated, all four PBM bellwethers sought to amend their pleadings pursuant to the scheduling order. The allegations concerning the ESI Defendants in the amended pleadings they ultimately filed were quite different from those in their original complaints.

As courts have recognized, a party need not be *perfectly* diligent to meet the Rule 16 test; rather, the Court need only determine that the party has been diligent *enough*. *J&R Passmore*, 2024 WL 111661, *2 (although plaintiffs had not been perfectly diligent, they had been diligent enough to satisfy Rule 16); *see also Ousley v. CG Consulting, LLC*, 339 F.R.D. 455, 460 (S.D. Ohio 2021) ("While the parties dispute when Plaintiff discovered the information underlying her Third Amended Complaint, the timeline shows that Plaintiff was diligent enough."); *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 WL 210801, at *2 (N.D. Ohio Jan. 14, 2020) ("The due diligence requirement does not impose on a plaintiff the burden to exhaust all avenues to discover information that may serve as the basis of a claim.").

Moreover, this Court has held that a diligent plaintiff may reasonably wait for the fruits of discovery to identify additional defendants. *O'Neal*, 2020 WL 210801, *2; *Hammock v. Rogers*, No. 1:17-cv-1939, 2018 WL 8414482, at *6 (N.D. Ohio Dec. 17, 2018) (good cause shown where plaintiff's "ability to name new parties was somewhat hamstrung by the amount of time it took to get the names of the proposed additional

12

defendants through discovery"); *York v. Lucas Cnty., Ohio*, No. 3:13 cv 1335, 2015 WL 2384096, at *4 (N.D. Ohio May 19, 2015) (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later"). Given the sparse nature of information about the Express Scripts Defendants in the pleadings filed by other parties prior to the deadline in CMO1, none of the Amending Plaintiffs lacked diligence in waiting to seek leave to amend until the facts demonstrating the full basis of claims against them became available.

**B.     The Express Scripts Defendants Will Suffer No Undue Prejudice If Plaintiffs Are Permitted to Amend**

It should be readily apparent that the Express Scripts Defendants will suffer no prejudice from the filing of the amended complaints at issue here. That is because each of Plaintiffs' cases has been stayed since the original deadline for the filing of amended pleadings. There has been no discovery, no motion practice, no litigation of any kind. The Express Scripts Defendants will be in the exact same position, with respect to each of Plaintiffs' cases, that they would have been in had the cases been stayed with the Express Scripts Defendants already in them. *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (among the factors considered in assessing prejudice from a delayed amended pleading are "whether the assertion of the new claim or defense would. . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute. . . ."). *Cf. Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (where discovery and dispositive motion deadlines had passed, and a motion for summary judgment had been filed, amendment to add a

13

different claim would create significant prejudice to defendants); *Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, 893 (S.D. Ohio 2010) (plaintiff could not amend to add new defendants after close of discovery and briefing of motion for summary judgment; new defendants would be "severely prejudiced if they were added at this late juncture, having been deprived of their right to conduct discovery and file dispositive motions").

This is especially true because the Express Scripts Defendants have known since the formation of this MDL that they were defendants in some cases before this Court. Nor could the Express Scripts Defendants rely on the relatively small number of cases in this MDL in which they were named defendants to estimate the likely scope of their liability. That is so because the statute of limitations has not run on claims against them. The Express Scripts Defendants have always known that governmental entities – whether plaintiffs in this MDL or not – could file new cases against them. Indeed, several such cases have been filed within the past year. *See, e.g., State of Alaska v. Express Scripts, Inc.*, No. 3:23-cv-00233-JMK (D. Alaska); *Anne Arundel County v. Express Scripts,* No. 1:24-cv-00090-MJM (D. Md.); *People v. Express Scripts, Inc.*, No.: 23STCV20886 (Ca. Super. L.A. County). Moreover, if leave to amend is not granted, the Amending Plaintiffs can simply file their claims against the Express Scripts Defendants in new stand-alone cases. In that circumstance, the Express Scripts Defendants will have to simultaneously litigate multiple cases in multiple forums across the country. The Express Scripts Defendants cannot demonstrate that they will be prejudiced by having the claims against them coordinated in these proceedings rather than scattered around the country. *See* 28 U.S.C.

14

§ 1407 (actions may be transferred and coordinated upon determination such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."); *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) (finding that centralization and coordination of opioid cases "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").[14]

## II. AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15

Under Rule 15, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because the Rule 16 standard is recognized to be more "stringent," *see Landstar Ranger, Inc. v. City of Delaware, Ohio*, No. 2:22-CV-02008, 2022 WL 7322274, at *4 (S.D. Ohio Oct. 13, 2022), and to set a "higher threshold," *see J&R Passmore*,

---

[14] On July 11, 2024, this Court issued an order regarding litigation holds. The Court noted that "implementation of a litigation hold is not a strict precondition for allowing amendment," but that "a defendant may want to address the topic in response to a motion to amend." Doc. #5517 at 2. The PEC recognizes that document preservation may be a serious issue and is taking steps to answer the Court's questions about the status of litigation holds by the Amending Plaintiffs. But this question should play no role on these motions to amend. In particular, the prejudice that is relevant to Rule 16 is prejudice that arises from allowing amendment past the original CMO deadline. Other than the brief window allowing amendments noted above, these cases have been stayed. Thus, the status of document preservation is the same now as it would have been if the Express Scripts Defendants had been added as defendants in March 2019. Any prejudice that would arise from a failure properly to preserve documents during the time the cases have been stayed (even if there were any such failure) thus does not arise from the timing of the amended complaint, but rather from the fact that a stay was in place both before and after the amendment deadline. Thus, while the PEC recognizes the concerns of the Court on this issue as they pertain to the bellwether process, it does not believe that the failure to issue a litigation hold can be a proper factor in the denial of leave to amend under Rule 16 or Rule 15.

2024 WL 111661, at *1, a party that can establish diligence and lack of prejudice under Rule 16 can generally satisfy the broader, more liberal standard of Rule 15.  In this case, leave to amend should be granted in the interests of justice.

Only two of the Rule 15 factors – bad faith and futility of amendment -- are not subsumed within the Rule 16 "good cause" analysis.  *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (identifying "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" as factors to be considered under Rule 15).[15]  Neither is applicable here.  The Express Scripts Defendants' motions to dismiss the bellwether plaintiffs' pleadings are pending before this Court, but those motions do not seek dismissal of all claims against all parties.  The Express Scripts Defendants thus cannot show that permitting amendment here will be futile. Nor is there any suggestion of bad faith with respect to any of the Amending Plaintiffs.  Because the Amending Plaintiffs have shown good cause under Rule 16 and because it is in the interest of justice to permit them to amend their pleadings in order to add the Express Scripts Defendants, the requirements of Rule 15 are also satisfied.

---

[15] A finding of sufficient diligence will satisfy the requirement that there was no undue delay; lack of notice and undue prejudice both fall within the prejudice analysis of Rule 16. Finally, repeated failures to cure deficiencies would presumably negate good cause, but in any event is entirely inapplicable here, as the Amending Plaintiffs have not previously attempted to cure deficiencies, nor have any deficiencies in their pleadings been identified.

## CONCLUSION

For the foregoing, reasons, this Court should grant leave to all of the Amending

Plaintiffs to amend their complaints in order to add the Express Scripts Defendants.

Dated:  July 29, 2024                           Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR  00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

17

### CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

18