# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>See cases listed in Exhibit A | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

# OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD DISCOUNT DRUG MART, INC. AND MEMORANDUM OF LAW IN SUPPORT

3065901.7

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... I

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................................... 2

    Facts Pertaining to DDM ............................................................................................ 3

    The Current Motion .................................................................................................... 5

LEGAL STANDARD ................................................................................................................ 6

ARGUMENT ........................................................................................................................... 6

I.    THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER TO ADD DDM AS A DEFENDANT. ................................................................. 6

    A.    Despite Their Diligence, the Amending Plaintiffs Could Not Meet the Original Deadline with Respect to DDM. ........................................................ 6

    B.    DDM Will Not Suffer Any Undue Prejudice If Plaintiffs Are Permitted to Amend. ................................................................................................... 10

II.    AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15 ....................................... 13

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Brumbalough v. Camelot Care Ctrs., Inc.*,
    427 F.3d 996 (6th Cir. 2005) .................................................................................................13

*Duggins v. Steak 'N Shake, Inc.*,
    195 F.3d 828 (6th Cir. 1999) .................................................................................................11

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*,
    No. 2:17-cv-195, 2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) ...................................7, 8, 9

*Fraker v. Marysville Exempted Vill. Sch.*,
    696 F. Supp. 2d 887 (S.D. Ohio 2010) ..................................................................................11

*Hammock v. Rogers*,
    2018 WL 8414482 .................................................................................................................10

*In re Nat'l Prescription Opiate Litig.*,
    2022 WL 20701236 (6th Cir. Nov. 10, 2022) .......................................................................11

*In re Nat'l Prescription Opiate Litig.*,
    589 F. Supp. 3d 790 (N.D. Ohio 2022) ..................................................................................12

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) .................................................................................................11

*In re Nat'l Prescription Opiate Litig.*,
    MDL No. 2804, Transfer Order (J.P.M.L. Dec. 5, 2017) .....................................................12

*J&R Passmore, LLC v. Rice Drilling D, LLC*,
    No. 2:18-cv-1587, 2024 WL 111661 (S.D. Ohio January 10, 2024) ................................9, 13

*Joseph v. Joseph*,
    No. 1:16-cv-465, 2017 WL 5953119 (S.D. Ohio Jan. 10, 2017) ....................................7, 8, 9

*Landstar Ranger, Inc. v. City of Delaware, Ohio*,
    No. 2:22-CV-02008, 2022 WL 7322274 (S.D. Ohio Oct. 13, 2022) ....................................13

*Leary v. Daeschner*,
    349 F.3d 888 (6th Cir. 2003) ...................................................................................................9

3065901.7

*Phelps v. McClellan*,
 30 F.3d 658 (6th Cir. 1994) ....................................................................................................10

*Rapp v. Forest City Techs., Inc.*,
 No. 1:20-cv-2059, 2021 WL 4713394 (N.D. Ohio June 17, 2021) ................................7, 8, 9

*Salerno v. Fam. Heritage Life Ins. Co. of Am.*,
 2024 WL 2235772 (N.D. Ohio May 17, 2024) .......................................................................8

**Statutes**

28 U.S.C. § 1407 ............................................................................................................................12

**Court Rules**

Fed. R. Civ. P. 12..........................................................................................................................14

Fed. R. Civ. P. 15..................................................................................................................2, 13, 14

Fed. R. Civ. P. 15(a)(2) .................................................................................................................13

Fed. R. Civ. P. 16................................................................................................................2, 9, 13, 14

## INTRODUCTION

In accordance with this Court's Order dated May 23, 2024, Doc. #5455, the Plaintiffs listed in Exhibit A ("Amending Plaintiffs") hereby move for leave to amend their operative complaints pursuant to Federal Rules of Civil Procedure 15 and 16 to add Discount Drug Mart, Inc. ("DDM") beyond the deadline for amendment of pleadings set forth in this Court's case management orders and submit this Memorandum of Law in support thereof.  If permitted to amend, Plaintiffs here would supplement their existing pleadings with claims substantially similar to those asserted against chain pharmacies in the first amended CT8 bellwether complaint in *Cobb County v. Purdue Pharma, LP, et al*, No. 1:18-op-45817-DAP, Doc. #3787 July 14, 2021) (adjusted for the law of their particular jurisdiction), and add additional defendant specific facts, including those detailed herein. None of the Amending Plaintiffs have sued DDM in their currently operative pleadings.

Leave should be granted for two reasons.  First, more fully described below, the most recent ARCOS data obtained from the federal Drug Enforcement Administration (DEA) shows that, in the period 2006-2019, DDM had a dispensing market share of 5% or more in each of the Amending Plaintiff's jurisdictions.  ARCOS information on volume and market share for dispensers in *any* year was not available to the Amending Plaintiffs with respect to DDM prior to May 7, 2019 when expanded reports containing dispensing market share information created from the 2006 – 2014 ARCOS data were made available to MDL Plaintiffs who signed a protective order.  Doc. #1612.  This disclosure was well after the deadline for virtually all of the Amending Plaintiffs to amend their pleadings

1

3065901.7

under the applicable case management orders in this MDL.[1]  Second, prior to the CMO deadline for amendment, sufficient information about the improper dispensing practices of the chain pharmacies like DDM, was not known, since discovery into the dispensing practices of chain pharmacies had not been undertaken.  These two grounds independently establish that, even with the exercise of due diligence, the Amending Plaintiffs could not have met the deadline for adding DDM because the information on which they are basing their claims was not available to them.

Because they could not, even with due diligence, have met the deadline to amend their complaints to add these claims against DDM, and because, as discussed below, DDM will not be prejudiced by these amendments, this Court should find that each of the Amending Plaintiffs has shown "good cause" within the meaning of Rule 16, and that amendment is proper under Rule 15, and should grant their motions to amend their pleadings to add DDM.

## FACTUAL BACKGROUND

The facts pertaining generally to the procedural history of these cases and the deadlines set by the Court for the amendment of pleadings, as well as the development of the dispensing case over the course of the litigation, are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs incorporate by reference herein and to which the Court is respectfully referred.

---

[1] As discussed below, MDL plaintiffs were required to amend their pleadings by the later of:  (1) March 16, 2019 or (2) 90 days after transfer into the MDL.

2

*Facts Pertaining to DDM*

If permitted to amend, the Amending Plaintiffs would allege as follows: DDM is a privately owned pharmacy chain based in Ohio that currently operates 77 retail stores in 20 Ohio counties and has operated stores Kentucky and Missouri.  DDM operates as a licensed pharmacy distributor and as a licensed dispenser.

Most of DDM's opioids business was as a dispenser from its pharmacies.  From 2006 to 2019, DDM dispensed more than 235 million opioid dosage units (DUs) and more than 4.3 billion morphine milligram equivalents (MMEs) to customers.  Although DDM's opioid dispensing peaked in 2014, the recently acquired ARCOS data shows that DDM continued dispensing at high levels through 2019—dispensing more than 10 million DUs per year (on average nearly 15 million DUs per year) and more than 300 million MMEs per year (on average more than 340 million MMEs per year) every year from 2015 to 2019. In other words, while others in the opioids market were limiting their opioids sales in response to the opioid crisis, DDM effectively decided to more or less continue steadily in terms of MME dispensing, as reflected in the following chart:



3

3065901.7

In addition to its dispensing business, DDM acted as an opioid distributor, distributing Schedule III-V controlled substances from DDM's distribution center in Medina, Ohio to its Ohio pharmacies.  From 2006-2019 DDM distributed more than 75.6 million DUs of opioid products and almost 491 million MMEs to its pharmacies.  From 2006 to 2014, hydrocodone accounted for the vast majority of DDM's distribution business, until hydrocodone was reassigned as a Schedule II opioid in 2014.  Although DDM's distribution by DUs dropped significantly after 2014, its MMEs distributed shot up in 2018 and peaked in 2019, as DDM sold more than 680,000 DUs and more than 152 million MMEs of buprenorphine in those years.  The following chart reflects this trend, which was unknown to Amending Plaintiffs prior to the recent availability of the 2015-2019 ARCOS data:



In total, as reflected in the ARCOS data about dispensers/pharmacies like DDM first revealed to plaintiffs in September 2023, DDM's opioid dispensing in each of the Amending Plaintiffs' particular counties reflects at least 5% market share for at least three

4

years for at least one opioid.  *See* Ex. A.

*The Current Motion*

On May 24, 2024, this Court granted the PEC's motion to lift the moratorium on motion practice to allow non-bellwether MDL plaintiffs to seek leave to amend their pleadings in order to add defendants they had not previously named.  The Amending Plaintiffs—none of whom previously sued DDM—now seek leave to amend to add claims against DDM based on two grounds.

First, Amending Plaintiffs whose amendment deadline expired before the PEC's release of ARCOS data in 2019 seek to amend based on data that is now available to them about the extent of DDM's dispensing in their jurisdiction.

Second, all Amending Plaintiffs seek leave to bring dispensing claims against DDM based upon the discovery of new facts regarding the improper dispensing practices of the chain pharmacies like DDM, which was not previously known prior to the discovery and proceedings in CT3, CT4, and in the case brought by the State of New Mexico.  *See* Corrected Roadmap Br. at 18-22.  Sufficient information was not available to bring pharmacy dispensing claims until after the last deadline to amend for any of the Amending Plaintiffs adding DDM, which was in mid-2019, long before the basis for the dispensing claims was developed.

Each Amending Plaintiff is a jurisdiction in which DDM had a 5% or greater market share as a dispenser (dosage unit or MME) over the entire ARCOS period of 2006-2019.  The jurisdiction-specific facts pertaining to each Amending Plaintiff's jurisdiction claims are shown on Exhibit A.  The Amending Plaintiffs seek to assert the same causes

5

of action against DDM arising out of its role as a dispenser of controlled substances that they asserted against the same category of defendants – chain pharmacies – in their currently operative complaints, adding dispensing allegations from the currently operative CT8 complaint as set forth above.

As described below, none of the Amending Plaintiffs could have met the existing deadline for amendment with respect to DDM because information on which they seek to base their claims was not available by the applicable deadline to amend. Moreover, as discussed below, amendment of these cases to include DDM will not prejudice those defendants because the Amending Plaintiffs' actions have all been stayed since the CMO amendment deadline passed.

## LEGAL STANDARD

The legal standards applicable to this motion are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs incorporate by reference herein and to which the Court is respectfully referred.

## ARGUMENT

I. **THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER TO ADD DDM AS A DEFENDANT.**

   A. **Despite Their Diligence, the Amending Plaintiffs Could Not Meet the Original Deadline with Respect to DDM.**

The Amending Plaintiffs meet the diligence test for amending the scheduling order to permit amended pleadings: the information on which they seek to base their amended pleadings was not available until after the deadline for plaintiffs to amend had passed. *See Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 4713394, at *3–4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp

6

until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence."); *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, No. 2:17-cv-195, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018) ("New information can constitute good cause under Rule 16(b)."); *Joseph v. Joseph*, No. 1:16-cv-465, 2017 WL 5953119, at *2 (S.D. Ohio Jan. 10, 2017) (finding good cause existed when "the documents upon which the proposed amendment [was] largely based were not produced until more than two months after the . . . motion to amend deadline.").

For amending Plaintiffs with an amendment deadline before May 7, 2019, there was no data whatsoever available about DDM's market share as a dispenser of opioids. That is because ARCOS data does not contain dispensing information. Thus even after the DEA began producing that data in 2018, expert analysis was required to determine, form the distribution data that was provided, what a particular pharmacy's dispensing market share was. See Corrected Roadmap Br. at 21-22; Mougey Dec. at ¶ 14. But the PEC was originally not permitted to disclose the results of this analysis. Rather, prior to May 7, 2019, the Amending Plaintiffs were provided only with the identity of the pharmacies who dispensed any amount of opioids in their jurisdiction; the PEC was precluded from providing plaintiffs with the amounts of opioids sent to pharmacies by other distributors. *See* Doc. #1106. As a result, Amending Plaintiffs were unable to determine the extent of Winn-Dixie's dispensing activities in their jurisdictions at any time prior to May 7, 2019, when the PEC made available for the first time dispensing

7

market share information for the period 2006-2014.² Doc. 1612. Updated information, showing the extent of Winn-Dixie's dispensing in each jurisdiction through 2019 did not become available until 2023.

These facts support a finding of "good cause" for each Amending Plaintiff with an amendment deadline prior to release of ARCOS market share data in 2019 to amend its complaint to add DDM. *See Salerno v. Fam. Heritage Life Ins. Co. of Am.*, 2024 WL 2235772, at *2 (N.D. Ohio May 17, 2024) ("Sixth Circuit courts regularly grant leave for a party to amend its pleadings when discovery 'apparently confirmed [the party's] suspicions so that the company could assert [additional] claims.'"); *see also Rapp*, 2021 WL 4713394, at *3–4 ; *Fijalkowski*, 2018 WL 1835444, at *2 ; *Joseph*, 2017 WL 5953119, at *2).

While the ARCOS data made available in 2019 is by itself sufficient to constitute good cause, the development of the cases against pharmacy dispensers in the previous pharmacy bellwethers provides an additional basis to allow the amendments for all Amending Plaintiffs. Prior to CT1B/CT3, MDL plaintiffs did not pursue dispensing claims – indeed, the lead bellwether plaintiffs in CT1 expressly disclaimed them. No discovery was undertaken on dispensing claims against chain pharmacies until the after the CT3 amendments. Without this discovery, especially the dispensing data disclosing "red flag" prescriptions produced and analyzed in those cases, Amending Plaintiffs had

---

² In the case of three of the Amending Plaintiffs, the reports provide by the PEC showed that Winn Dixie met the 5% test with respect to its self-distribution of opioids to its stores in the Amending Plaintiffs' jurisdictions. Of course, these distributor reports did not include substantial quantities of opioids received from other distributors and *dispensed* by Winn Dixie.

8

no reason to undertake the considerable time and expense of prosecuting dispensing claims against large corporations, such as DDM. Once liability based on the dispensing theories was confirmed by both the CT3 jury verdict and further discovery and by verdicts in the other bellwether pharmacy cases in jurisdictions across the county, Amending Plaintiffs possessed the necessary information to bring the dispensing claims against DDM.

The fact that the information on which the proposed amended pleading will be based was not available until months or years after the amendment deadlines shows that the Amending Plaintiffs could not, even with the exercise of diligence, have met the original CMO deadlines. This is sufficient to meet the "diligence" prong of the "good cause" analysis. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see also J&R Passmore, LLC v. Rice Drilling D, LLC,* No. 2:18-cv-1587, 2024 WL 111661, *2 (S.D. Ohio January 10, 2024) ("Diligence can be established when the information supporting an amendment is not disclosed until after the amendment deadline set in the scheduling order."); *Rapp* 2021 WL 4713394, at *3–4; *Fijalkowski*, 2018 WL 1835444, at *2; *Joseph*, 2017 WL 5953119, at *2.[3]

This Court has held that a diligent plaintiff may reasonably wait for the fruits of

---

[3] The PEC moved this Court to lift the moratorium on motion practice to allow MDL plaintiffs to seek leave to amend on April 22, 2024. *See* Doc. #5411. That the Amending Plaintiffs did not seek leave to amend before that time does not indicate a lack of diligence because, as described above, all a showing of "good cause" under Rule 16 requires is an explanation of why the party could not, even with the exercise of diligence, have met the original deadline. The passage of additional time after that is relevant to the question of prejudice to the opposing party, *see* Point I-B, *infra*, but not to the reason the Amending Plaintiffs could not have met the March 16, 2019, deadline in the first place.

9

discovery to identify additional defendants.  *O'Neal*, 2020 WL 210801, *2; *Hammock v. Rogers*, 2018 WL 8414482, at *6 (good cause shown where plaintiff's "ability to name new parties was somewhat hamstrung by the amount of time it took to get the names of the proposed additional defendants through discovery"); *York*, 2015 WL 2384096, at *4 (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later").  Given the limited nature of information concerning the chain pharmacies' market share and dispensing practices prior to the deadline in CMO1, none of the Amending Plaintiffs lacked diligence in waiting to seek leave to amend until the facts demonstrating the full basis of claims against them became available.

    **B.**    **DDM Will Not Suffer Any Undue Prejudice If Plaintiffs Are Permitted to Amend.**

It is clear that DDM will not suffer any prejudice from the filing of the amended complaints at issue here.  That is because each of the Amending Plaintiffs' cases has been stayed since the original deadline for the filing of amended pleadings.  There has been no discovery, no motion practice, no litigation of any kind.  DDM will be in the exact same position, with respect to each of the Amending Plaintiffs' cases, that it would have been in had the cases been stayed with DDM already in them.  *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (among the factors considered in assessing prejudice from a delayed amended pleading are "whether the assertion of the new claim or defense would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute. . . ."). *Cf. Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (where discovery and

10

dispositive motion deadlines had passed, and a motion for summary judgment had been filed, amendment to add a different claim would create significant prejudice to defendants); *Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, 893 (S.D. Ohio 2010) (plaintiff could not amend to add new defendants after close of discovery and briefing of motion for summary judgment; new defendants would be "severely prejudiced if they were added at this late juncture, having been deprived of their right to conduct discovery and file dispositive motions").[4]

This is especially true because DDM has known since the formation of the MDL that it was a defendant in some cases before this Court. In that circumstance, the need to defend additional cases does not constitute undue prejudice. *See In re Nat'l Prescription Opiate Litig.*, 2022 WL 20701236 (6th Cir. Nov. 10, 2022) (litigation costs of being named in additional cases not undue prejudice because defendants knew that they could face these costs from the time they were added to the MDL.") Nor could DDM rely on the number of cases in this MDL in which it was named to estimate the likely scope of its liability. In most instances, for governmental plaintiffs, the primary claim is for abatement of a public nuisance, and the underlying nuisance of the opioid epidemic is an ongoing condition such that, with respect to most jurisdictions, the statute of limitations does not bar the claim.[5] Consequently, DDM has always known that governmental

---

[4] *Cf. In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020) (precluding amendment of scheduling order where defendants had been subject to discovery and briefing on substantive motions, and where plaintiffs had previously disavowed claims they later sought to add).

[5] *See, e.g., In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 825-26 (N.D. Ohio 2022) (holding under Ohio law that "absolute and statutory public nuisance claims are exempt

11

entities—whether plaintiffs in this MDL or not—could file new cases against it.

Indeed, if leave to amend is not granted, the Amending Plaintiffs can simply file their claims against DDM in new stand-alone cases. Thus, the question is not *whether* the new claims against DDM will be brought; the question is *where* these claims will be brought. The issue, then, is whether these claims arising from the same opioid crisis are coordinated for discovery and management with other claims against the same defendant and/or the same category of defendant. In this context, Rule 1's command that the Federal Rules be construed and administered to secure the "just, speedy, and inexpensive determination of every action and proceeding" counsels in favor of permitting the addition of DDM. In any event, DDM cannot demonstrate that it will be prejudiced by having the claims against it coordinated in these proceedings rather than scattered around the country. *See* 28 U.S.C. § 1407 (actions may be transferred and coordinated upon determination such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."); *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) (finding that centralization and coordination of opioid cases "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

Because the Amending Plaintiffs have shown both diligence and lack of prejudice, this Court should find "good cause" under Rule 16 to amend the scheduling order to permit the filing of amending pleadings against DDM.

---

from a statute of limitations," and that defendants may remain "subject to liability for abatement of any ongoing consequential effects of the nuisance").

12

3065901.7

## II.  AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15

The requirements of Rule 15 are also satisfied.  Under Rule 15, "the court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Because the Rule 16 standard is recognized to be more "stringent," *see Landstar Ranger, Inc. v. City of Delaware, Ohio*, No. 2:22-CV-02008, 2022 WL 7322274, at *4 (S.D. Ohio Oct. 13, 2022), and to set a "higher threshold," *see J&R Passmore*, 2024 WL 111661, at *1, a party that can establish diligence and lack of prejudice under Rule 16 can generally satisfy the broader, more liberal standard of Rule 15.  In this case, leave to amend should be granted in the interests of justice.

Only two of the Rule 15 factors—bad faith and futility of amendment—are not subsumed within the Rule 16 "good cause" analysis.  *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (identifying "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" as factors to be considered under Rule 15).[6]  Neither is applicable here.  As noted above, the Amending Plaintiffs seek to add claims against DDM similar to those they have asserted against other manufacturers—and similar to claims this Court previously found sufficiently stated to preclude dismissal under Rule 12.  Nor is there,

---

[6] A finding of sufficient diligence will satisfy the requirement that there was no undue delay; lack of notice and undue prejudice both fall within the prejudice analysis of Rule 16. Repeated failures to cure deficiencies would presumably negate good cause, but in any event is entirely inapplicable here, as the Amending Plaintiffs have not previously attempted to cure deficiencies, nor have any deficiencies in their pleadings been identified.

13

nor could there be, any suggestion of bad faith with respect to any of the Amending Plaintiffs.  Because the Amending Plaintiffs have shown good cause under Rule 16 and because it is in the interest of justice to permit them to amend their pleadings in order to add DDM, the requirements of Rule 15 are also satisfied.

## Conclusion

For the foregoing, reasons, this Court should grant leave to all of the Amending Plaintiffs to amend their complaints in order to add Discount Drug Mart, Inc.

Dated:  July 30, 2024				Respectfully submitted,

>	Jayne Conroy
>	Simmons Hanly Conroy
>	112 Madison Avenue, 7th Floor
>	New York, NY 10016
>	(212) 784-6400
>	jconroy@simmonsfirm.com
>
>	Joseph F. Rice
>	Motley Rice LLC
>	28 Bridgeside Blvd.
>	Mt. Pleasant, SC 29464
>	(843) 216-9000
>	(843) 216-9290 (Fax)
>	jrice@motleyrice.com
>
>	Paul T. Farrell, Jr., Esq.
>	Farrell & Fuller LLC
>	270 Munoz Rivera Avenue, Suite 201
>	San Juan, PR  00918
>	(304)654-8281
>	paul@farrellfuller.com
>
>	*Plaintiffs' Co-Lead Counsel*
>
>	*/s/ Peter H. Weinberger*
>	Peter H. Weinberger (0022076)
>	Spangenberg Shibley &Liber

14

3065901.7

1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

### CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

3065901.7