# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF OHIO

# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br><br>See cases listed in Exhibit A | MDL 2804<br><br>Case No. 17-md-2804<br><br>Hon. Dan Aaron Polster |

# OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD WINN-DIXIE DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT

3070146.4

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................................ 3

LEGAL STANDARD ..................................................................................................................... 5

ARGUMENT ................................................................................................................................. 5

    I.    THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER TO ADD WINN-DIXIE AS A DEFENDANT. ............................................................ 5

        A.    Despite Their Diligence, the Amending Plaintiffs Could Not Meet the Original Deadline with Respect to Winn-Dixie. ............................................... 5

        B.    Winn-Dixie Will Not Suffer Any Undue Prejudice If Plaintiffs Are Permitted to Amend. ........................................................................................ 10

    II.    AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15 ....................................... 12

CONCLUSION ............................................................................................................................ 14

3070146.4

# TABLE OF AUTHORITIES

Page

**Cases**

*Brumbalough v. Camelot Care Ctrs., Inc.*,
  427 F.3d 996 (6th Cir. 2005) ..................................................................................................13

*Duggins v. Steak 'N Shake, Inc.*,
  195 F.3d 828 (6th Cir. 1999) ..................................................................................................10

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*,
  No. 2:17-cv-195, 2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) ....................................6, 7, 8

*Fraker v. Marysville Exempted Vill. Sch.*,
  696 F. Supp. 2d 887 (S.D. Ohio 2010) ...................................................................................10

*Hammock v. Rogers*,
  No. 1:17-cv-1939, 2018 WL 8414482 (N.D. Ohio Dec. 17, 2018) ..........................................9

*J&R Passmore, LLC v. Rice Drilling D, LLC*,
  No. 2:18-cv-1587, 2024 WL 111661 (S.D. Ohio January 10, 2024) .................................8, 13

*Joseph v. Joseph*,
  No. 1:16-cv-465, 2017 WL 5953119 (S.D. Ohio Jan. 10, 2017) .....................................6, 7, 8

*Landstar Ranger, Inc. v. City of Delaware, Ohio*,
  No. 2:22-CV-02008, 2022 WL 7322274 (S.D. Ohio Oct. 13, 2022) .....................................13

*Leary v. Daeschner*,
  349 F.3d 888 (6th Cir. 2003) ....................................................................................................8

*In re Nat'l Prescription Opiate Litig.*,
  2022 WL 20701236 (6th Cir. Nov. 10, 2022) ........................................................................11

*In re Nat'l Prescription Opiate Litig.*,
  589 F. Supp. 3d 790 (N.D. Ohio 2022) ..................................................................................11

*In re Nat'l Prescription Opiate Litig.*,
  956 F.3d 838 (6th Cir. 2020) ..................................................................................................11

*In re Nat'l Prescription Opiate Litig.*,
  MDL No. 2804, Transfer Order (J.P.M.L. Dec. 5, 2017) ......................................................12

*O'Neal v. Denn-Ohio, LLC*,
  No. 3:19-cv-280, 2020 WL 210801 (N.D. Ohio Jan. 14, 2020) ..............................................9

*Phelps v. McClellan*,
  30 F.3d 658 (6th Cir. 1994) ....................................................................................................10

*Rapp v. Forest City Techs., Inc.*,
  No. 1:20-cv-2059, 2021 WL 4713394 (N.D. Ohio June 17, 2021) ................................5, 7, 8

*Salerno v. Fam. Heritage Life Ins. Co. of Am.*,
 No. 1:23-cv-01419, 2024 WL 2235772 (N.D. Ohio May 17, 2024) ...................................7

*York v. Lucas Cnty., Ohio*,
 No. 3:13 cv 1335, 2015 WL 2384096 (N.D. Ohio May 19, 2015).......................................9

**Statutes**

28 U.S.C. § 1407 ...........................................................................................................................12

**Court Rules**

Fed. R. Civ. P. 15(a)(2) .................................................................................................................12

Fed. R. Civ. P. 16............................................................................................................................1

## INTRODUCTION

In accordance with this Court's Order dated May 23, 2024, Doc. #5455, the Plaintiffs listed in Exhibit A ("Amending Plaintiffs") hereby move for leave to amend their operative complaints pursuant to Federal Rules of Civil Procedure 15 and 16 to add the Winn Dixie Defendants[1] beyond the deadline for amendment of pleadings set forth in this Court's case management orders and submit this Memorandum of Law in support thereof.  If permitted to amend, Plaintiffs here would supplement their existing pleadings with claims substantially similar to those asserted against chain pharmacies in the first amended CT8 bellwether complaint in *Cobb County v. Purdue Pharma, LP, et al*, No. 1:18-op-45817-DAP, Doc. #3787 July 14, 2021) (adjusted for the law of their particular jurisdiction), and add additional defendant specific facts, including those detailed herein. None of the Amending Plaintiffs have sued Winn Dixie in their currently operative pleadings.

Leave should be granted for two reasons.  First, more fully described below, the most recent ARCOS data obtained from the federal Drug Enforcement Administration (DEA) shows that, in the period 2006-2019, Winn Dixie had a dispensing market share of

---

[1] The Winn-Dixie Defendants are: Winn-Dixie Stores, Inc.; Southeastern Grocers, Inc.; and Winn-Dixie Logistics, LLC (f/k/a Winn-Dixie Logistics, Inc.).  Winn-Dixie Stores, Inc. is a wholly owned subsidiary of Southeastern Grocers, Inc.  Winn-Dixie operates as a licensed pharmacy distributor under the name Winn-Dixie Logistics, LLC (f/k/a Winn-Dixie Logistics, Inc.). This motion refers to these three Defendants collectively as "Winn-Dixie" or the Winn-Dixie Defendants.

1

5% or more in each of the Amending Plaintiff's jurisdictions.  ARCOS information on volume and market share for dispensers in *any* year was not available to the Amending Plaintiffs with respect to Winn Dixie prior to May 7, 2019, when expanded reports containing dispensing market share information created from the 2006 – 2014 ARCOS data were made available to MDL Plaintiffs who signed a protective order.  Doc. 1612.  This disclosure was well after the deadline for many of these plaintiffs to amend their pleadings under the applicable case management orders in this MDL.[2]  Second, prior to the CMO deadline for amendment, sufficient information about the improper dispensing practices of the chain pharmacies like Winn Dixie, was not known, since discovery into the dispensing practices of chain pharmacies had not been undertaken.  These two grounds independently establish that, even with the exercise of due diligence, the Amending Plaintiffs could not have met the deadline for adding Winn-Dixie because the information on which they are basing their claims was not available to them.

Because they could not, even with due diligence, have met the deadline to amend their complaints to add these claims against Winn-Dixie, and because, as discussed below, Winn Dixie will not be prejudiced by these amendments, this Court should find that each of the Amending Plaintiffs has shown "good cause" within the meaning of Rule 16, and that amendment is proper under Rule 15, and should grant their motions to

---

[2] As discussed below, MDL plaintiffs were required to amend their pleadings by the later of:  (1) March 16, 2019 or (2) 90 days after transfer into the MDL.

2

amend their pleadings to add Winn-Dixie.

## FACTUAL BACKGROUND

The facts pertaining generally to the procedural history of these cases and the deadlines set by the Court for the amendment of pleadings, as well as the development of the dispensing case over the course of the litigation, are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs incorporate by reference herein and to which the Court is respectfully referred.

*Facts Pertaining to the Winn-Dixie Defendants*

If granted leave to amend, the Amending Plaintiffs would plead the facts that follow, among others. Winn-Dixie Stores, Inc. is a Florida corporation headquartered in Jacksonville, Florida that has operated more than 546 grocery stores in 8 states—Alabama, Georgia, Florida, Louisiana, Mississippi, North Carolina, South Carolina and Tennessee—under the banners Winn-Dixie, Harveys Supermarket, BI-LO and Fresco y Mas. Winn-Dixie dispensed over 925 billion DUs and 15 billion MME of opioid products from 2006 to 2019 from these pharmacies. Of that total, 257,008,725 DUs and more than 4.87 billion MME of opioids were dispensed in the years 2015 – 2019.

Winn-Dixie has not been named in a bellwether case, or to the best of counsel's knowledge, been a defendant in an opioid case in state court. Consequently, no discovery has been undertaken with respect to Amending Plaintiffs' dispensing claims.

*The Current Motion*

On May 24, 2024, this Court granted the PEC's motion to lift the moratorium on

3

motion practice to allow non-bellwether MDL plaintiffs to seek leave to amend their pleadings in order to add defendants they had not previously named.  The Amending Plaintiffs—none of whom previously sued Winn-Dixie—now seek leave to amend to add claims against Winn-Dixie based on two grounds.

First, Amending Plaintiffs whose amendment deadline expired before the PEC's release of ARCOS data in 2019 seek to amend based on data that is now available to them about the extent of Winn-Dixie's dispensing in their jurisdiction.  Second, all Amending Plaintiffs seek leave to amend based on the discovery of new facts regarding the improper dispensing practices of the chain pharmacies like Winn Dixie, which  was not previously known prior to the discovery and proceedings in CT3, CT4, and in the case brought by the State of New Mexico.  *See* Corrected Roadmap Br. at 18-22.  Sufficient information was not available to bring pharmacy dispensing claims until after the last deadline to amend for any of the Amending Plaintiffs adding DDM, which was in mid-2019, long before the basis for the dispensing claims was developed.

Each Amending Plaintiff is a jurisdiction in which Winn-Dixie has a 5% or greater market share as a dispenser (dosage unit or MME) over the entire ARCOS period of 2006-2019.  The jurisdiction-specific facts pertaining to each Amending Plaintiff's jurisdiction claims are shown on Exhibit A.  The Amending Plaintiffs seek to assert the same causes of action against Winn Dixie arising out of its role as a dispenser of controlled substances that they asserted against the same category of defendants – chain pharmacies – in their

4

3070146.4

currently operative complaints, adding dispensing allegations from the currently operative CT8 complaint as set forth above.

As described below, none of the Amending Plaintiffs could have met the existing deadline for amendment with respect to Winn-Dixie because the information on which they seek to base their claims was not available by the applicable deadline to amend. Moreover, as discussed below, amendment of these cases to include Winn Dixie will not prejudice those defendants because the Amending Plaintiffs' actions have all been stayed since the CMO amendment deadline passed.

## LEGAL STANDARD

The legal standards applicable to this motion are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend, which Amending Plaintiffs incorporate by reference herein and to which the Court is respectfully referred.

## ARGUMENT

I. **THE AMENDING PLAINTIFFS HAVE "GOOD CAUSE" TO AMEND THE SCHEDULING ORDER TO ADD WINN-DIXIE AS A DEFENDANT.**

   A. **Despite Their Diligence, the Amending Plaintiffs Could Not Meet the Original Deadline with Respect to Winn-Dixie.**

The Amending Plaintiffs meet the diligence test for amending the scheduling order to permit amended pleadings: the information on which they seek to base their amended pleadings was not available until after the deadline for plaintiffs to amend had passed. *See Rapp v. Forest City Techs., Inc.*, No. 1:20-cv-2059, 2021 WL 4713394, at *3–4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp

5

until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence."); *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, No. 2:17-cv-195, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018) ("New information can constitute good cause under Rule 16(b)."); *Joseph v. Joseph*, No. 1:16-cv-465, 2017 WL 5953119, at *2 (S.D. Ohio Jan. 10, 2017) (finding good cause existed when "the documents upon which the proposed amendment [was] largely based were not produced until more than two months after the . . . motion to amend deadline").

For Amending Plaintiffs with an amendment deadline before May 7, 2019, there was no data whatsoever available about Winn-Dixie's market share as a dispenser of opioids.  That is because ARCOS data does not contain dispensing information. Thus even after the DEA began producing that data in 2018, expert analysis was required to determine, from the distribution data that was provided, what a particular pharmacy's dispensing market share was. *See* Corrected Roadmap Br. at 21-22; Mougey Dec. at ¶ 14.  But the PEC was originally not permitted to disclose the results of this analysis. Rather, prior to May 7, 2019, the Amending Plaintiffs were provided only with the identity of the pharmacies who dispensed *any* amount of opioids in their jurisdiction; the PEC was precluded from providing plaintiffs with the amounts of opioids sent to pharmacies by other distributors.  *See* Doc. 1106.  As a result, Amending Plaintiffs were unable to determine the extent of Winn-Dixie's dispensing activities in their jurisdictions at any time prior to May 7, 2019, when the PEC made available for the first time

6

3070146.4

dispensing market share information for the period 2006-2014.³  Doc. 1612.  Updated information, showing the extent of Winn-Dixie's dispensing in each jurisdiction through 2019 did not become available until 2023.

These facts support a finding of "good cause" for each Amending Plaintiff with an amendment deadline prior to release of ARCOS market share data in 2019 to amend its complaint to add Winn-Dixie.  *See Salerno v. Fam. Heritage Life Ins. Co. of Am.*, No. 1:23-cv-01419, 2024 WL 2235772, at *2 (N.D. Ohio May 17, 2024) ("Sixth Circuit courts regularly grant leave for a party to amend its pleadings when discovery 'apparently confirmed [the party's] suspicions so that the company could assert [additional] claims.'"); *see also Rapp*, 2021 WL 4713394, at *3–4 ; *Fijalkowski*, 2018 WL 1835444, at *2 ; *Joseph*, 2017 WL 5953119, at *2).

While the ARCOS data made available in 2019 is by itself sufficient to constitute good cause, the development of the cases against pharmacy dispensers in the previous pharmacy bellwethers provides an additional basis to allow the amendments for all Amending Plaintiffs.  Prior to CT1B/CT3, MDL plaintiffs did not pursue dispensing claims – indeed, the lead bellwether plaintiffs in CT1 expressly disclaimed them.  No

---

³ In the case of three of the Amending Plaintiffs, the reports provide by the PEC showed that Winn Dixie met the 5% test with respect to its self-distribution of opioids to its stores in the Amending Plaintiffs' jurisdictions.  Of course, these distributor reports did not include substantial quantities of opioids received from other distributors and *dispensed* by Winn Dixie.

7

discovery was undertaken on dispensing claims against chain pharmacies until the after the CT3 amendments. Without this discovery, especially the dispensing data disclosing "red flag" prescriptions produced and analyzed in those cases, Amending Plaintiffs had no reason to undertake the considerable time and expense of prosecuting dispensing claims against large corporations, such as Winn Dixie. Once liability based on the dispensing theories was confirmed by both the CT3 jury verdict and further discovery and by verdicts in the other bellwether pharmacy cases in jurisdictions across the county, Amending Plaintiffs possessed the necessary information to bring the dispensing claims against Winn Dixie.

The fact that the information on which the proposed amended pleading will be based was not available until months or years after the amendment deadlines shows that the Amending Plaintiffs could not, even with the exercise of diligence, have met the original CMO deadlines. This is sufficient to meet the "diligence" prong of the "good cause" analysis. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see also J&R Passmore, LLC v. Rice Drilling D, LLC,* No. 2:18-cv-1587, 2024 WL 111661, *2 (S.D. Ohio January 10, 2024) ("Diligence can be established when the information supporting an amendment is not disclosed until after the amendment deadline set in the scheduling order."); *Rapp* 2021 WL 4713394, at *3–4; *Fijalkowski*, 2018 WL 1835444, at *2; *Joseph*, 2017

8

3070146.4

WL 5953119, at *2.[4]

This Court has held that a diligent plaintiff may reasonably wait for the fruits of discovery to identify additional defendants.  *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 WL 210801, at *2 (N.D. Ohio Jan. 14, 2020); *Hammock v. Rogers*, No. 1:17-cv-1939, 2018 WL 8414482, at *6 (N.D. Ohio Dec. 17, 2018) (good cause shown where plaintiff's "ability to name new parties was somewhat hamstrung by the amount of time it took to get the names of the proposed additional defendants through discovery"); *York v. Lucas Cnty., Ohio*, No. 3:13 cv 1335, 2015 WL 2384096, at *4 (N.D. Ohio May 19, 2015)  (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later"). Given the limited nature of information concerning the chain pharmacies' market share and dispensing practices prior to the deadline in CMO1, none of the Amending Plaintiffs lacked diligence in waiting to seek leave to amend until the facts demonstrating the full basis of claims against them became available.

---

[4] The PEC moved this Court to lift the moratorium on motion practice to allow MDL plaintiffs to seek leave to amend on April 22, 2024. *See* Doc. #5411. That the Amending Plaintiffs did not seek leave to amend before that time does not indicate a lack of diligence because, as described above, all a showing of "good cause" under Rule 16 requires is an explanation of why the party could not, even with the exercise of diligence, have met the original deadline.  The passage of additional time after that is relevant to the question of prejudice to the opposing party, *see* Point I-B, *infra*, but not to the reason the Amending Plaintiffs could not have met the March 16, 2019, deadline in the first place.

### B. Winn-Dixie Will Not Suffer Any Undue Prejudice If Plaintiffs Are Permitted to Amend.

It is clear that Winn-Dixie will not suffer any prejudice from the filing of the amended complaints at issue here. That is because each of the Amending Plaintiffs' cases has been stayed since the original deadline for the filing of amended pleadings. There has been no discovery, no motion practice, no litigation of any kind. Winn-Dixie will be in the exact same position, with respect to each of the Amending Plaintiffs' cases, that it would have been in had the cases been stayed with Winn-Dixie already in them. *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (among the factors considered in assessing prejudice from a delayed amended pleading are "whether the assertion of the new claim or defense would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute. . . ."). *Cf. Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (where discovery and dispositive motion deadlines had passed, and a motion for summary judgment had been filed, amendment to add a different claim would create significant prejudice to defendants); *Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, 893 (S.D. Ohio 2010) (plaintiff could not amend to add new defendants after close of discovery and briefing of motion for summary judgment; new defendants would be "severely prejudiced if they were added at this late juncture, having been deprived of

their right to conduct discovery and file dispositive motions").[5]

This is especially true because Winn-Dixie has known for years that it was a defendant in some cases before this Court.  In that circumstance, the need to defend additional cases does not constitute undue prejudice.  *See In re Nat'l Prescription Opiate Litig.*, 2022 WL 20701236 (6th Cir. Nov. 10, 2022) (litigation costs of being named in additional cases not undue prejudice because defendants knew that they could face these costs from the time they were added to the MDL.")  Nor could Winn-Dixie rely on the number of cases in this MDL in which it was named to estimate the likely scope of its liability.  In most instances, for governmental plaintiffs, the primary claim is for abatement of a public nuisance, and the underlying nuisance of the opioid epidemic is an ongoing condition such that, with respect to most jurisdictions, the statute of limitations does not bar the claim.[6] Consequently, Winn-Dixie has always known that governmental entities—whether plaintiffs in this MDL or not—could file new cases against it.

Indeed, if leave to amend is not granted, the Amending Plaintiffs can simply file their claims against Winn-Dixie in new stand-alone cases.  Thus, the question is not

---

[5] *Cf. In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020) (precluding amendment of scheduling order where defendants had been subject to discovery and briefing on substantive motions, and where plaintiffs had previously disavowed claims they later sought to add).

[6] *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 825-26 (N.D. Ohio 2022) (holding under Ohio law that "absolute and statutory public nuisance claims are exempt from a statute of limitations," and that defendants may remain "subject to liability for abatement of any ongoing consequential effects of the nuisance").

11

*whether* the new claims against Winn-Dixie will be brought; the question is *where* these claims will be brought. The issue, then, is whether these claims arising from the same opioid crisis are coordinated for discovery and management with other claims against the same defendant and/or the same category of defendant. In this context, Rule 1's command that the Federal Rules be construed and administered to secure the "just, speedy, and inexpensive determination of every action and proceeding" counsels in favor of permitting the addition of Winn-Dixie. In any event, Winn-Dixie cannot demonstrate that it will be prejudiced by having the claims against it coordinated in these proceedings rather than scattered around the country. *See* 28 U.S.C. § 1407 (actions may be transferred and coordinated upon determination such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."); *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) (finding that centralization and coordination of opioid cases "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

Because the Amending Plaintiffs have shown both diligence and lack of prejudice, this Court should find "good cause" under Rule 16 to amend the scheduling order to permit the filing of amending pleadings against Winn-Dixie.

## II.   AMENDMENT OF THE PLEADINGS IS PROPER UNDER RULE 15

The requirements of Rule 15 are also satisfied. Under Rule 15, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because

12

3070146.4

the Rule 16 standard is recognized to be more "stringent," *see Landstar Ranger, Inc. v. City of Delaware, Ohio*, No. 2:22-CV-02008, 2022 WL 7322274, at *4 (S.D. Ohio Oct. 13, 2022), and to set a "higher threshold," *see J&R Passmore*, 2024 WL 111661, at *1, a party that can establish diligence and lack of prejudice under Rule 16 can generally satisfy the broader, more liberal standard of Rule 15.  In this case, leave to amend should be granted in the interests of justice.

Only two of the Rule 15 factors—bad faith and futility of amendment—are not subsumed within the Rule 16 "good cause" analysis.  *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (identifying "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" as factors to be considered under Rule 15).[7]  Neither is applicable here.  As noted above, the Amending Plaintiffs seek to add claims against Winn-Dixie similar to those they have asserted against other manufacturers—and similar to claims this Court previously found sufficiently stated to preclude dismissal under Rule 12.  Nor is there, nor could there be, any suggestion of bad faith with respect to any of the Amending

---

[7] A finding of sufficient diligence will satisfy the requirement that there was no undue delay; lack of notice and undue prejudice both fall within the prejudice analysis of Rule 16. Repeated failures to cure deficiencies would presumably negate good cause, but in any event is entirely inapplicable here, as the Amending Plaintiffs have not previously attempted to cure deficiencies, nor have any deficiencies in their pleadings been identified.

13

Plaintiffs.  Because the Amending Plaintiffs have shown good cause under Rule 16 and because it is in the interest of justice to permit them to amend their pleadings in order to add Winn-Dixie, the requirements of Rule 15 are also satisfied.

## CONCLUSION

For the foregoing, reasons, this Court should grant leave to all of the Amending Plaintiffs to amend their complaints in order to add the Winn-Dixie Defendants.

Dated:  July 30, 2024                                    Respectfully submitted,

>Jayne Conroy
>SIMMONS HANLY CONROY
>112 Madison Avenue, 7th Floor
>New York, NY 10016
>(212) 784-6400
>jconroy@simmonsfirm.com
>
>Joseph F. Rice
>MOTLEY RICE LLC
>28 Bridgeside Blvd.
>Mt. Pleasant, SC 29464
>(843) 216-9000
>(843) 216-9290 (Fax)
>jrice@motleyrice.com
>
>Paul T. Farrell, Jr., Esq.
>FARRELL & FULLER LLC
>270 Munoz Rivera Avenue, Suite 201
>San Juan, PR  00918
>(304)654-8281
>paul@farrellfuller.com
>
>*Plaintiffs' Co-Lead Counsel*
>
>*/s/ Peter H. Weinberger*

        Peter H. Weinberger (0022076)
        SPANGENBERG SHIBLEY &LIBER
        1001 Lakeside Avenue East, Suite 1700
        Cleveland, OH 44114
        (216) 696-3232
        (216) 696-3924 (Fax)
        pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## C<span></span>ERTIFICATE OF S<span></span>ERVICE

      I hereby certify that on July 30, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

                                    */s/ Peter H. Weinberger*
                                     Peter H. Weinberger

3070146.4