UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| | Case No. 17-md-2804 |
| *This document relates to:* | Hon. Dan Aaron Polster |
| See cases listed in Exhibit A | |

## CORRECTED OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD PUBLIX SUPER MARKETS, INC. AND MEMORANDUM OF LAW IN SUPPORT

3070087.8

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 3

LEGAL STANDARD ................................................................................................... 9

ARGUMENT ............................................................................................................... 10

I.     The Amending Plaintiffs Have "Good Cause" to Amend the Scheduling Order to Add Publix as a Defendant ......................................................... 10

     A.    Despite Their Diligence, the Amending Plaintiffs Could Not Meet the Original Deadline with Respect to Publix ............................................ 10

     B.    Publix Will Not Suffer Any Undue Prejudice If Plaintiffs Are Permitted to Amend ........................................................................ 14

II.    Amendment of the Pleadings Is Proper Under Rule 15 .......................................... 16

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

## Cases

*Brumbalough v. Camelot Care Ctrs., Inc.,*
    427 F.3d 996 (6th Cir. 2005) .................................................................................17

*City of Huntington v. AmerisourceBergen Drug Corp.,*
    609 F.Supp.3d 408 (S. D. W. Va. 2022) ...............................................................15

*Duggins v. Steak 'N Shake, Inc.,*
    195 F.3d 828 (6th Cir. 1999) .................................................................................14

*Fijalkowski v. Belmont Cnty. Bd. of Comm'rs,*
    2018 WL 1835444 (S.D. Ohio Apr. 18, 2018) ...............................................12, 13

*Fraker v. Marysville Exempted Vill. Sch.,*
    696 F. Supp. 2d 887 (S.D. Ohio 2010) ................................................................14

*Hammock v. Rogers,*
    1:17-cv-1939, 2018 WL 8414482 (N.D. Ohio Dec. 17, 2018)...............................13

*J&R Passmore, LLC v. Rice Drilling D, LLC,*
    No. 2:18-cv-1587, 2024 WL 111661 (S.D. Ohio January 10, 2024) ...........13, 17

*Joseph v. Joseph,*
    2017 WL 5953119 (S.D. Ohio Jan. 10, 2017)................................................12, 13

*Landstar Ranger, Inc. v. City of Delaware, Ohio,*
    No. 2:22-CV-02008, 2022 WL 7322274 (S.D. Ohio Oct. 13, 2022) ...................17

*Leary v. Daeschner,*
    349 F.3d 888 (6th Cir. 2003) .................................................................................13

*In re Nat'l Prescription Opiate Litig.,*
    2019 WL 3737023 (N.D. Ohio June 13, 2019) ....................................................15

*In re Nat'l Prescription Opiate Litig.,*
    No. 1:17-CV-02804, 2019 WL 2477416 (N.D. Ohio Apr. 1, 2019) ...................15

*In re Nat'l Prescription Opiate Litig.,*
    589 F.Supp.3d 790 (N.D. Ohio 2022)...................................................................15

*In re Nat'l Prescription Opiate Litig.,*
    956 F.3d 838 (6th Cir. 2020) .................................................................................15

*In re Nat'l Prescription Opiate Litig.,*
    No. 21-4051, 2022 WL 20701236 (6th Cir. Nov. 10, 2022)................................15

*In re National Prescription Opiate Litigation,*
    MDL No. 2804, Transfer Order (J.P.M.L. Dec. 5, 2017)....................................16

## TABLE OF AUTHORITIES
### (continued)

Page

*O'Neal v. Denn-Ohio, LLC,*
   No. 3:19-cv-280, 2020 WL 210801 (N.D. Ohio Jan. 14, 2020) ...........................................13

*In re Opioid Litigation,*
   No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) ...............................15

*Phelps v. McClellan,*
   30 F.3d 658 (6th Cir. 1994) ...................................................................................................14

*Rapp v. Forest City Techs., Inc.,*
   2021 WL 4713394 (N.D. Ohio June 17, 2021) .............................................................11, 13

*Salerno v. Fam. Heritage Life Ins. Co. of Am.,*
   2024 WL 2235772 (N.D. Ohio May 17, 2024) ...................................................................11

*Shane v. Bunzl Distrib. USA, Inc.,*
   275 F. App'x 535 (6th Cir. 2008)..........................................................................................17

*York v. Lucas Cnty.,*
   Ohio, 2015 WL 2384096 (N.D. Ohio May 19, 2015) ........................................................13

**Statutes**

28 U.S.C. § 1407 .............................................................................................................................16

**Court Rules**

Fed. R. Civ. P. 1.............................................................................................................................16

Fed. R. Civ. P. 15(a)(2) .................................................................................................................17

Fed. R. Civ. P. 16...........................................................................................................................17

## INTRODUCTION

Pursuant to this Court's Order dated May 23, 2024, Doc. #5455, the PEC submits this omnibus memorandum in support of the motions of those Plaintiffs listed in Exhibit A ("Amending Plaintiffs") pursuant to Rules 15 and 16 for leave to amend their operative complaints to add Publix Super Markets, Inc. ("Publix") beyond the deadline for amendment of pleadings set forth in this Court's case management orders.  If permitted to amend, Plaintiffs would seek to supplement their existing pleadings with substantially similar claims to those pleaded in the CT8 bellwether supplemental and amended complaint, *Cobb County v. Purdue Pharma LP, et al.*, 1:18-op-45817-DAP (Doc. #3787) (July 14, 2021) (adjusted for the law of their particular jurisdiction), and additional defendant specific facts, including those detailed herein.  None of the Amending Plaintiffs have sued Publix in their currently operative pleadings.

Leave should be granted for four reasons.  First, as more fully described below the most recent ARCOS data obtained from the federal Drug Enforcement Administration shows that, for the period of 2006-2019, Publix had a *dispensing* market share of 5% or more in each of the Amending Plaintiff's jurisdictions.  ARCOS information on volume and market share for dispensers in *any* year was not available to the Amending Plaintiffs with respect to Publix prior to May 7, 2019, when expanded reports containing dispensing market share information created from the 2006-2014 ARCOS data were made available to MDL Plaintiffs who signed a protective order.  Doc. #1612.  This disclosure was well after the deadline for many of these plaintiffs to amend their pleadings under

the applicable case management orders in this MDL.[1]  Second, prior to the CMO deadline for amendment, sufficient information about the improper dispensing practices of the chain pharmacies like Publix was not known, since discovery into the dispensing practices of chain pharmacies had not been undertaken.

Third, the most recent ARCOS data also shows that Publix dramatically increased its opioid *distribution* at the same time its competitors were implementing anti-diversion measures that scaled back their own opioid distribution, information that also was not available to Amending Plaintiffs prior to the amendment deadline.   And fourth, discovery in the CT8/Cobb County case has uncovered information about Publix's conduct that was not publicly available until very recently.  The information about Publix's distribution and dispensing practices was not available to the Amending Plaintiffs until Cobb County filed its motion for partial summary judgment on the public docket on May 13, 2024 (Doc. #5437).  These grounds establish that, even with the exercise of due diligence, the Amending Plaintiffs could not have met the deadline for adding Publix because the information on which they are basing their claims was not available to them.

Because they could not, even with due diligence, have met the deadline to amend their complaints to add these claims against Publix, and because, as discussed below, Publix will not be prejudiced by these amendments, this Court should find that each of the Amending Plaintiffs has shown "good cause" within the meaning of Rule 16 – and

---

[1] As discussed below, MDL plaintiffs were required to amend their pleadings by the later of:  (1) March 16, 2019 or (2) 90 days after transfer into the MDL.

has met the standards of Rule 15 – and should grant their motions to amend their pleadings to add Publix.

## FACTUAL BACKGROUND

The facts pertaining generally to the procedural history of these cases and the deadlines set by the Court for the amendment of pleadings, as well as the development of the dispensing case over the course of this litigation, are set forth in the PEC's Roadmap Overview for Motions for Leave to Amend ("Corrected Roadmap Br."), which Amending Plaintiffs incorporate herein and to which the Court is respectfully referred.

*Facts Pertaining to Publix*

If given leave to amend, the Amending Plaintiffs would plead the facts that follow, among others.  Publix is a privately owned corporation based in Lakeland, Florida.  It is the third largest privately owned corporation in the United States, with annual revenues in excess of $50 billion, and employs approximately 250,000 people.  Publix operates stores in Alabama (90 stores), Florida (873), Georgia (212), Kentucky (1), North Carolina (54), South Carolina (69), Tennessee (58), and Virginia (20).

Not all Publix stores have a pharmacy, but the vast majority of them do. According to Dain Rusk, Publix's Vice President of Pharmacy, by the end of 2018, Publix had become "the number one performing pharmacy in terms of sales and prescriptions for all of 2018" and he described Publix as "the number one pharmacy chain in the industry."  Publix pharmacies generated $3.6 billion dollars in revenue in 2018.

Publix has operated a central pharmacy warehouse since 2005 at two successive locations in Florida from which it distributed Schedule III through V controlled

3

substances to its pharmacies.  That included certain hydrocodone combination products (HCPs) that were classified as Schedule III drugs until 2014, when they were reclassified to Schedule II.  Starting in *October 2016*, Publix began to distribute Schedule II controlled substances to its pharmacies. At that time, it moved to a new, larger pharmacy warehouse, in part because the controlled substance cage at the existing warehouse lacked the necessary capacity for the increased volume of drugs Publix was distributing.

It is perhaps not a coincidence that Publix opted to go into the Schedule II distribution business in late 2016.  After all, it was in April of 2016 that Congress passed the so-called "Ensuring Patient Access and Effective Drug Enforcement Act," more commonly known as the Marino Bill, which dramatically restricted the DEA's authority to meaningfully investigate and police violations of the CSA.  That statute was passed after years of lobbying by the drug industry, which spent more than $100 million on lobbying efforts from 2014 to 2016.

The timing of that increase in distribution volume is significant for another reason. While other distributors (including chain pharmacies) were implementing diversion control practices to comply with their obligations under the CSA – or discontinuing distribution of prescription opioids entirely – Publix substantially *increased* its distribution. The following graph illustrates how Publix filled the void left by other distributors who had scaled back or ceased their opioid distribution (Source: ARCOS 2006-2019):



The above graph and the ARCOS data from which it was prepared demonstrate a key reason why Plaintiffs should be granted leave to amend their complaints to add Publix as a distributing and dispensing defendant. Until the Court ordered that the ARCOS data be supplemented with information from 2015-2019, it was impossible for Plaintiffs to know just how dramatically Publix ramped up its opioid distribution efforts while its chain pharmacy competitors were scaling back their distribution activities.

Moreover, Publix's dereliction of its CSA duties only became known during discovery in the CT8/Cobb County bellwether case. That discovery has revealed numerous and pervasive failures by Publix to comply with its CSA duties both as a distributor and as a dispenser of opioids. The facts regarding Publix's conduct are detailed in *Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment that Publix Super Markets, Inc. Breached its Duties Under the Controlled Substances Act and the*

*Georgia Controlled Substances Act*, which is incorporated herein.  *See* Doc. #5437-2 (May 13, 2024).  In sum, discovery in the CT8/Cobb County case has revealed the following:

### *As a distributor of opioids*:

- Publix acknowledged internally that the system it now claims it used for suspicious order monitoring prior to 2019 "d[id] not work."

- The systems Publix claimed to use to monitor for suspicious orders did not examine deviations in pattern or frequency prior to 2019.

- When Publix changed the settings in its system to look for deviations in pattern in 2018, so many orders were flagged that Publix changed the settings back and ignored them.

- Even orders of unusual size were not meaningfully addressed, and instead were routinely approved without any investigation.

- Publix had no diversion analysts and no compliance department prior to 2019.

- When Publix decided to transition to a new system in 2020, it opted to go with a "startup" company rather than an established system, which it acknowledged "ha[d] a low likelihood for success."

### *As a dispenser of opioids*:

- Publix did not train its pharmacists to identify red flag prescriptions and document due diligence efforts.

- In fact, Publix did not have a written controlled substance dispensing policy until 2012 (after CVS and Walgreens had immediate suspension orders entered against them), and a senior pharmacist and pharmacy manager testified in 2023 that she had never seen the policy until shortly before her deposition.

- Publix did not provide its pharmacists with adequate anti-diversion analytical tools or implement a prescriber monitoring program.

- Unlike its chain pharmacy competitors, Publix still has not removed controlled substances from script count, volume, or store profitability measures for the purposes of pharmacist bonus calculations.

None of this was known before discovery was conducted in the CT8/Cobb County case, which was selected as a bellwether case in 2021.[2]  And none of this was available to plaintiffs other than Cobb County until Cobb County filed its motion for partial summary judgment on May 13, 2024.

Additionally, as other bellwether case tracks have progressed in this litigation, it has been typical for those tracks to result in settlements with the key defendants.  Most of those settlements have been "global" in nature, meaning that the settlements cover not only the specific bellwether plaintiff, but also the other hundreds or thousands of subdivisions with claims against the settling defendant.  This Court has previously recognized these ongoing negotiations resulted in numerous orders extending the CT8 CMO deadlines.[3]  All of these extensions of the CT8/Cobb County pretrial deadlines were done – at least in part – to facilitate ongoing settlement discussions.

While those discussions have necessarily been confidential, after more than a year of extensive settlement discussions with Publix, those discussions are now at an impasse. The moving plaintiffs have reasonably waited to see if those settlement discussions would bear fruit.

---

[2] Publix produced dispensing data for CT8 in October 2021, its custodial productions in June 2022, document production was substantially complete in approximately October 2022, and fact depositions of Publix witnesses were taken between October 2022 and August 2023.

[3] Doc. #4814 at 1 (1/20/23); Minute Entry (1/26/23); Doc. #4932 (3/6/23); Doc. #5202 (9/22/23); Doc. #5230 (10/25/23); Doc. #5280 (12/26/23) Doc.  #5329 (2/23/24).

3070087.8

*The Current Motion*

On May 24, 2024, this Court granted the PEC's motion to lift the moratorium on motion practice to allow non-bellwether MDL plaintiffs to seek leave to amend their pleadings in order to add defendants they had not previously named.  The Amending Plaintiffs – none of whom previously sued Publix – now seek leave to amend to add claims against Publix on four grounds.

First, Amending Plaintiffs whose amendment deadline expired before the PEC's release of ARCOS data in 2019 seek to amend based on data that is now available to them about the extent of Publix's dispensing in their jurisdiction.  Second, all Amending Plaintiffs seek leave to amend based on the discovery of new facts regarding the improper dispensing practices of the chain pharmacies like Publix, which  was not previously known prior to the discovery and proceedings in CT3, CT4, and in the case brought by the State of New Mexico.  *See* Corrected Roadmap Br. at 16-21.   Sufficient information was not available to bring pharmacy dispensing claims until after the last deadline to amend the plaintiffs adding Publix.

Third, the most recent ARCOS data shows that Publix dramatically increased its self-distribution of opioids starting in 2016, at a time when its chain pharmacy competitors were either scaling back their distribution or ceasing to distribute opioids entirely as they implemented more robust suspicious order monitoring and other anti-diversion programs.  And fourth, as described above, discovery in the CT8 case has revealed just how deficient Publix's conduct was with respect to its CSA duties, both as a dispenser and as a distributor.

Each Amending Plaintiff is a jurisdiction in which Publix has a 5% or greater market share with respect to opioids during the period covered by the ARCOS data available to Plaintiffs.  The jurisdiction-specific facts pertaining to each Amending Plaintiff's jurisdiction claims are shown on Exhibit A.  The Amending Plaintiffs seek to assert the same causes of action against Publix that they asserted against the same category of defendants – chain pharmacies – in their currently operative complaints, adding distribution and dispensing allegations from the currently operative CT8 complaint (Doc. #3787).

As described below, none of the Amending Plaintiffs could have met the CMO deadline for amendment with respect to Publix because the information on which they seek to base their claims was not available by the applicable deadline to amend.  Moreover, Publix's post-2016 increase in distribution volume was not known until 2023, when the updated ARCOS data was produced, and the specific information about Publix's distribution and dispensing practices exposed in CT8 discovery was not publicly available until only recently.  Finally, as further discussed below, amendment of these cases to include Publix will not prejudice those defendants because the Amending Plaintiffs' actions have all been stayed since the CMO amendment deadline passed.

## LEGAL STANDARD

The legal standards applicable to this motion are set forth in the PEC's Roadmap Brief, which Amending Plaintiffs incorporate herein and to which the Court is respectfully referred.

## ARGUMENT

I.   **The Amending Plaintiffs Have "Good Cause" to Amend the Scheduling Order to Add Publix as a Defendant**

   A.   **Despite Their Diligence, the Amending Plaintiffs Could Not Meet the Original Deadline with Respect to Publix**

The Amending Plaintiffs meet the diligence test for amending the scheduling order to permit amended pleadings:  the information on which they seek to based their amended pleadings was not available until after the deadline for plaintiffs to amend had passed.  *See Rapp v. Forest City Techs., Inc.*, 2021 WL 4713394, at *3–4 (N.D. Ohio June 17, 2021) ("Because this evidence was not reasonably available to Rapp until well after the deadline date passed, Rapp could not reasonably have met the deadline despite due diligence."); *Fijalkowski v. Belmont Cnty. Bd. of Comm'rs*, 2018 WL 1835444, at *2 (S.D. Ohio Apr. 18, 2018) ("New information can constitute good cause under Rule 16(b)."); *Joseph v. Joseph*, 2017 WL 5953119, at *2 (S.D. Ohio Jan. 10, 2017) (finding good cause existed when "the documents upon which the proposed amendment [was] largely based were not produced until more than two months after the . . . motion to amend deadline.").For Amending Plaintiffs with an amendment deadline before May 7, 2019, there was no data whatsoever available about Publix's market share as a dispenser of opioids.  That is because ARCOS data does not contain dispensing information.  Thus even after the DEA began producing that data in 2018, expert analysis was required to determine, from the distribution data that was provided, what a particular pharmacy's dispensing market share was. *See* Corrected Roadmap Br. at 20-21; Mougey Dec. at ¶ 14.  But the PEC was originally not permitted to disclose the results of this analysis.  Rather, prior to May 7,

10

2019, the Amending Plaintiffs were provided only with the identity of the pharmacies who dispensed *any* amount of opioids in their jurisdiction; the PEC was precluded from providing plaintiffs with the amounts of opioids sent to pharmacies by other distributors. *See* Doc. #1106.  As a result, Amending Plaintiffs were unable to determine the extent of Publix's dispensing activities in their jurisdictions at any time prior to May 7, 2019, when the PEC made available for the first time dispensing market share information for the period 2006-2014.[4]  Doc. #1612.  Updated information, showing the extent of Publix's dispensing in each jurisdiction through 2019 did not become available until 2023.  And, the more recent information provided in the updated ARCOS data, showing Publix's massive increase in opioid distribution post-2016, was not available to the Amending Plaintiffs until long after the expiration of the amendment deadline.  These facts support a finding of "good cause" for each Amending Plaintiff with an amendment deadline prior to release of ARCOS market share data in 2019 to amend its complaint to add Publix.  *See Salerno v. Fam. Heritage Life Ins. Co. of Am.*, 2024 WL 2235772, at *2 (N.D. Ohio May 17, 2024) ("Sixth Circuit courts regularly grant leave for a party to amend its pleadings when discovery 'apparently confirmed [the party's] suspicions so that the company could assert [additional] claims.'"); *see also Rapp* 2021 WL 4713394, at *3–4; *Fijalkowski*, 2018 WL 1835444, at *2; *Joseph*, 2017 WL 5953119, at *2.

---

[4] In the case of twelve of the Amending Plaintiffs, the reports provide by the PEC showed that Publix met the 5% test with respect to its self-distribution of opioids to its stores in the Amending Plaintiffs' jurisdictions.  Of course, these distributor reports did not include substantial quantities of opioids received from other distributors and *dispensed* by Publix.

11

While the ARCOS data made available in 2019 is by itself sufficient to constitute good cause, the development of the cases against pharmacy dispensers in the previous pharmacy bellwethers provides an additional basis to allow the amendments for all Amending Plaintiffs. Prior to CT1B/CT3, MDL plaintiffs did not pursue dispensing claims – indeed, the lead bellwether plaintiffs in CT1 expressly disclaimed them. No discovery was undertaken on dispensing claims against chain pharmacies until the after the CT3 amendments. Without this discovery, especially the dispensing data disclosing "red flag" prescriptions produced and analyzed in the CT3 and CT4 cases, Amending Plaintiffs had no reason to undertake the considerable time and expense of prosecuting dispensing claims against large corporations such as Publix. Once liability based on the dispensing theories was confirmed by both the CT3 jury verdict and further discovery and by verdicts in other bellwether pharmacy cases in jurisdictions across the country, Amending Plaintiffs possessed the necessary information to bring the dispensing claims against Publix.

The fact that the information on which the proposed amended pleading will be based was not available until months or years after the amendment deadlines shows that the Amending Plaintiffs could not, even with the exercise of diligence, have met the original CMO deadlines. This is sufficient to meet the "diligence" prong of the "good cause" analysis. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see also J&R Passmore, LLC v. Rice Drilling D, LLC,* No. 2:18-cv-1587, 2024 WL 111661, *2 (S.D. Ohio January 10, 2024) ("Diligence can be established when the information supporting an amendment is not disclosed until after the amendment deadline set in the scheduling

order."); *Rapp* 2021 WL 4713394, at \*3–4; *Fijalkowski*, 2018 WL 1835444, at \*2; *Joseph*, 2017 WL 5953119, at \*2.[5]

This Court has held that a diligent plaintiff may reasonably wait for the fruits of discovery to identify additional defendants. *O'Neal v. Denn-Ohio, LLC*, No. 3:19-cv-280, 2020 WL 210801, at \*2 (N.D. Ohio Jan. 14, 2020); *Hammock v. Rogers*, 1:17-cv-1939, 2018 WL 8414482, at \*6 (N.D. Ohio Dec. 17, 2018) (good cause shown where plaintiff's "ability to name new parties was somewhat hamstrung by the amount of time it took to get the names of the proposed additional defendants through discovery"); *York v. Lucas Cnty., Ohio*, 2015 WL 2384096, at \*4 (N.D. Ohio May 19, 2015) (plaintiff was sufficiently diligent in waiting to obtain the names of new defendants in discovery "rather than to take a shotgun approach and seek dismissal of unnecessary parties later"). Given the limited nature of information concerning the chain pharmacies' market share and dispensing practices prior to the deadline in CMO1, none of the Amending Plaintiffs lacked diligence in waiting to seek leave to amend until the facts demonstrating the full basis of claims against them became available.

---

[5] The PEC moved this Court to lift the moratorium on motion practice to allow MDL plaintiffs to seek leave to amend on April 22, 2024. *See* Doc. #5411. That the Amending Plaintiffs did not seek leave to amend before that time does not indicate a lack of diligence because, as described above, all a showing of "good cause" under Rule 16 requires is an explanation of why the party could not, even with the exercise of diligence, have met the original deadline. The passage of additional time after that is relevant to the question of prejudice to the opposing party, *see* Point I-B, *infra*, but not to the reason the Amending Plaintiffs could not have met the March 16, 2019, deadline in the first place.

**B.** **Publix Will Not Suffer Any Undue Prejudice If Plaintiffs Are Permitted to Amend**

It is clear that Publix will not suffer any prejudice from the filing of the amended complaints at issue here. That is because each of the Amending Plaintiffs' cases has been stayed since the original deadline for the filing of amended pleadings. There has been no discovery, no motion practice, no litigation of any kind. Publix will be in the exact same position, with respect to each of the Amending Plaintiffs' cases, that they would have been in had the cases been stayed with Publix already in them. *See Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (among the factors considered in assessing prejudice from a delayed amended pleading are "whether the assertion of the new claim or defense would . . . require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] significantly delay the resolution of the dispute . . . ."). *Cf. Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (where discovery and dispositive motion deadlines had passed, and a motion for summary judgment had been filed, amendment to add a different claim would create significant prejudice to defendants); *Fraker v. Marysville Exempted Vill. Sch.*, 696 F. Supp. 2d 887, 893 (S.D. Ohio 2010) (plaintiff could not amend to add new defendants after close of discovery and briefing of motion for summary judgment; new defendants would be "severely prejudiced if they were added at this late juncture, having been deprived of their right to conduct discovery and file dispositive motions").[6]

---

[6] *Cf. In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838 (6th Cir. 2020) (precluding amendment of scheduling order where defendants had been subject to discovery and

This is especially true because Publix has known for years that it was a defendant in some cases before this Court. In that circumstance, the need to defend additional cases does not constitute undue prejudice. *See In re Nat'l Prescription Opiate Litig.*, No. 21-4051, 2022 WL 20701236 (6th Cir. Nov. 10, 2022) (litigation costs of being named in additional cases not undue prejudice because defendants knew that they could face these costs from the time they were added to the MDL). Nor could Publix rely on the number of cases in this MDL in which it was named to estimate the likely scope of its liability. In most instances, for governmental plaintiffs, the primary claim is for abatement of a public nuisance, and the underlying nuisance of the opioid epidemic is an ongoing condition such that, with respect to most jurisdictions, the statute of limitations does not bar the claim.[7] Consequently, Publix has always known that governmental entities – whether plaintiffs in this MDL or not – could file new cases against it.

---

briefing on substantive motions, and where plaintiffs had previously disavowed claims they later sought to add).

[7] *See, e.g., In re Nat'l Prescription Opiate Litig.*, 589 F.Supp.3d 790, 826 (N.D. Ohio 2022) ("absolute and statutory public nuisance claims are exempt from a statute of limitations") (applying Ohio law); *see also In re Nat'l Prescription Opiate Litig.*, No. 1:17-CV-02804, 2019 WL 2477416, at *4 (N.D. Ohio Apr. 1, 2019), report and recommendation adopted in part, 2019 WL 3737023 (N.D. Ohio June 13, 2019) (same, applying Montana law); *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F.Supp.3d 408, 471 (S. D. W. Va. 2022) ("until the harm is abated, the public nuisance is continuing and the statute of limitations does not accrue") (applying West Virginia law); *In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *12 (N.Y. Sup. Ct. June 18, 2018) ("The rule with respect to nuisance or other continuing wrong is that the action accrues anew on each day of the wrong, so that the right to maintain the cause of action continues as long as the nuisance exits") (applying New York law).

Indeed, if leave to amend is not granted, the Amending Plaintiffs can simply file their claims against Publix in new stand-alone cases. Thus, the question is not *whether* the new claims against Publix will be brought; the question is *where* these claims will be brought. The issue, then, is whether these claims arising from the same opioid crisis are coordinated for discovery and management with other claims against the same defendant and/or the same category of defendant. In this context, Rule 1's command that the Federal Rules be construed and administered to secure the "just, speedy, and inexpensive determination of every action and proceeding" counsels in favor of permitting the addition of Publix. Fed. R. Civ. P. 1. In any event, Publix cannot demonstrate that it will be prejudiced by having the claims against it coordinated in these proceedings rather than scattered around the country. *See* 28 U.S.C. § 1407 (actions may be transferred and coordinated upon determination such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."); *In re National Prescription Opiate Litigation*, MDL No. 2804, Transfer Order at 3 (J.P.M.L. Dec. 5, 2017) (finding that centralization and coordination of opioid cases "will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.").

Because the Amending Plaintiffs have shown both diligence and lack of prejudice, this Court should find "good cause" under Rule 16 to amend the scheduling order to permit the filing of amending pleadings against Publix.

## II.    Amendment of the Pleadings Is Proper Under Rule 15

The requirements of Rule 15 are also satisfied. Under Rule 15, "the court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Because

the Rule 16 standard is recognized to be more "stringent," *see Landstar Ranger, Inc. v. City of Delaware, Ohio*, No. 2:22-CV-02008, 2022 WL 7322274, at *4 (S.D. Ohio Oct. 13, 2022), and to set a "higher threshold," *J&R Passmore*, 2024 WL 111661, at *1 (quoting *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008)), a party that can establish diligence and lack of prejudice under Rule 16 can generally satisfy the broader, more liberal standard of Rule 15.  In this case, leave to amend should be granted in the interests of justice.

Only two of the Rule 15 factors – bad faith and futility of amendment -- are not subsumed within the Rule 16 "good cause" analysis.  *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1001 (6th Cir. 2005) (identifying "undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment" as factors to be considered under Rule 15).[8]  Neither is applicable here.  As noted above, the Amending Plaintiffs seek to add claims against Publix similar to those they have asserted against other chain pharmacies – and similar to claims this Court previously found sufficiently stated to preclude dismissal under Rule 12.  Nor is there – or could there be – any suggestion of bad faith with respect to any of the Amending Plaintiffs.  Because the Amending Plaintiffs have shown good cause under Rule 16 and

---

[8] A finding of sufficient diligence will satisfy the requirement that there was no undue delay; lack of notice and undue prejudice both fall within the prejudice analysis of Rule 16. Repeated failures to cure deficiencies would presumably negate good cause, but in any event is entirely inapplicable here, as the Amending Plaintiffs have not previously attempted to cure deficiencies, nor have any deficiencies in their pleadings been identified.

because it is in the interest of justice to permit them to amend their pleadings in order to

add Publix, the requirements of Rule 15 are also satisfied.

## CONCLUSION

For the foregoing reasons, this Court should grant leave to all of the Amending

Plaintiffs to amend their complaints in order to add Publix.

Dated:  August 1, 2024                    Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr.
FARRELL & FULLER LLC
270 Munoz Rivera Avenue, Suite 201
San Juan, PR  00918
(304) 654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

*/s/ Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232

(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

19

3070087.8