UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>Masiowski, Michael<br>On behalf of himself and all others similarly situated,<br>Plaintiff<br>v.<br><br>Amerisourcebergen Drug Corporation et al,<br><br>Defendants. | Member Case #: 1:18-op-45985-DAP<br><br>Judge Dan Aaron Polster<br>(MDL 2804)<br>Lead case: 1:17-md-02804-DAP |

## **PLAINTIFF MASIOWSKI'S CORRECTED MOTION FOR LEAVE TO AMEND**

Plaintiff Michael Masiowski, M.D., hereby seeks leave to Amend his proposed First Amended Complaint[1][2] to add Aphena Pharma Solutions and Smith Drug Company, which were included in Plaintiff Masiowski's Motion for Leave to Amend (1:18-op-45985-DAP Doc #: 33 Filed: 07/29/24) but were erroneously omitted in Plaintiff Michael Masiowski's Proposed First Amended Class Action Complaint – Exhibit B (1:18-op-45985-DAP Doc #: 33-2 Filed: 07/29/24).  **All** defendants Plaintiff Masiowski seeks to add are detailed herein, including Aphena Pharma Solutions and Smith Drug Company.  Plaintiff has shown good cause pursuant to the Court's July 15 Order (ECF 5522) and July 19 Order (ECF 5537). Plaintiff Masiowski seeks to add these defendants based upon specific and discrete factual allegations that are both

---

[1] Mr. Rothstein's Declaration attesting to his willingness to litigate against these proposed defendants is attached as Exhibit A.
[2] A Proposed Corrected First Amended Complaint is hereto attached as Exhibit B.

Plaintiff and Jurisdictionally specific and are further corroborated by ARCOS data gathered by the Plaintiffs Executive Committee ("PEC").

I. **Background**

On July 26, 2018, Plaintiff Masiowski filed his operative Complaint in the Charleston Division of the South Carolina District Court. On August 20, 2018, *Masiowski v. Amerisourcebergen Drug Corporation et al* (1:18-op-45985-DAP) was transferred to this Court as part of the MDL.

On April 11, 2018, this Court entered CMO1, establishing a moratorium on case amendments whereby plaintiffs in cases other than those selected as bellwethers would have until May 25, 2018 to amend their complaints, after which date subsequent amendments would require leave of Court or stipulation of the parties; and plaintiffs in cases transferred to the MDL after the date of CMO1 could amend their pleadings within 60 days of transfer.

On April 22, 2024, the PEC moved this Court to lift the moratorium on substantive filings to permit plaintiffs to file motions for leave to amend to add additional defendants ("Motion to Lift Moratorium") (ECF 5411). On May 23, 2024, this Court issued an Order granting the PEC's motion to lift said moratorium finding that "[f]or each defendant the PEC wishes to add to any case, the PEC shall file a single motion to amend the complaints of all plaintiffs who wish to add that defendant." ECF 5455 at 1. The Court set July 22, 2024, as the deadline for Plaintiffs' motions to amend complaints to add defendants. Id. at 2.

On June 28, 2024, the PEC provided all Plaintiffs "Authorization Forms" detailing which selected defendants the PEC suggested, based upon available ARCOS data, each Plaintiff pursue.

On July 2, 2024, the PEC moved this Court to Extend the Time to Permit Plaintiffs to File Motions for Leave to Amend to Add Defendants Related to Purdue Pharma, L.P. (ECF 5455). The Court subsequently granted Plaintiffs' motion.

On July 2, 2024, Plaintiff Masiowski, by and through his Attorney and on behalf of a putative national class of Independent Emergency Room Physicians, contacted the PEC with respect to the amendment process along with potential concerns regarding prospective defendants to be added. On July 3, 2024, the PEC advised Plaintiff Masiowski to file a stand-alone motion. Other than the Government Subdivisions, it is Plaintiff's understanding that only he has been requested to file a stand-alone motion separate from the PEC.

On July 16, 2024, Michael Masiowski, M.D., moved for an extension of time from the deadlines set in this Court's Order lifting the moratorium on substantive filings to permit all plaintiffs one, final opportunity to amend complaints in this MDL. On July 19, 2024, this Court denied Plaintiff Masiowski's motion (ECF 5537) and Ordered "Motions to amend complaints for all plaintiffs remain due **July 29, 2024, at 4:00 PM** pursuant to the Court's July 15 Order (docket no. 5522)."

## II.  Argument

Under Federal Rule of Civil Procedure 15, leave to amend "shall be freely given when justice so requires." Foman v. Davis, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)). Accordingly, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, [it] ought to be afforded an opportunity to test his claim on the merits." Id. The grant or denial of leave to amend is within this Court's discretion, and:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by

> virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

Id. The Rules are to be construed "to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, and Federal Rule of Civil Procedure 42 allows the Court to order a separate trial of one or more claims, or to issue "other orders to avoid unnecessary cost and delay." Fed. R. Civ. P. 42(a) & (b). Additionally, this Court has inherent authority to "manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Dietz v. Bouldin, 136 S. Ct. 1885, 1891–92 (2016).

Plaintiffs have until now been precluded from seeking to leave to amend by CMO1[3], entered by this Court on April 11, 2018. In relevant part, CMO1 provided: (1) plaintiffs in cases other than those selected as bellwethers would have until May 25, 2018 to amend their complaints, after which date subsequent amendments would require leave of Court or stipulation of the parties; (2) plaintiffs in cases transferred to the MDL after the date of CMO1 could amend their pleadings within 60 days of transfer; and (3) no party could file any motion not expressly authorized by CMO1 absent further Order of this Court or express agreement of the parties.

Consequently, Defendants are incapable of demonstrating dilatory motive, bad faith, undue delay, or repeated failure to cure deficiencies by amendments previously allowed. Therefore, granting leave to amend would result in no prejudice to Defendants, and is appropriate to address the evolving circumstances in these complex cases. See Empire Title Services, Inc. v. Fifth Third Mortg. Co., 298 F.R.D. 528, 531 (N.D. Ohio 2014) ("[I]n order to deny leave to amend for undue delay, Defendants must show prejudice. . . . Since Defendants do not demonstrate prejudice, the delay in filing the amendment is not a proper ground for denial of

---

[3] Plaintiff Masiowski has long anticipated an opportunity to Amend his complaint to add Defendants considering the developments of the various Bellwether trials, and information gathered over the course of the litigation in the MDL.

leave to amend."); Morataya v. Metro RTA, 5:17-CV-1133, 2017 WL 5495123, at *2 (N.D. Ohio Nov. 16, 2017) ("In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.") (internal quotation marks omitted).

Moreover, Plaintiff has identified good cause below to add the below listed Defendants; consequently, there does not exist sufficient reason to oppose, nor deny, Plaintiff's motion for leave to Amend.

### III. Pharmacy/Distributer Defendants to be Added[4][5]

1. Aphena Pharma Solutions

| County, State | Percentage Market Share from 2006 - 2019 (ARCOS) |
|---|---|
| Charleson County. SC | 10.67% |

Aphena Pharma Solutions is a contract pharmaceutical manufacturing and packaging company that serves the pharmaceutical industry from two distinct operations in the United States — a solid-dose division in Tennessee and a liquid manufacturing and packaging campus in Maryland — both of which are both DEA licensed and FDA registered. Aphena Pharma Solutions was originally formed by established contract pharmaceutical companies: PrePak,

---

[4] Plaintiff Michael Masiowski, M.D., has practiced as an Independent Emergency Room Physician in the below listed counties at various times from 2006 through 2019.
[5] Plaintiff Masiowski, as advised by the PEC, is only pursing Pharmaceutical and Distributor Defendants that enjoyed more than a 5% Market Share from 2006 through 2019 in jurisdictions in which Plaintiff Masiowski practiced as an Independent Emergency Room Physician.

TestPak, Celeste, and Integrated Pharmaceutical Packaging.  Their alliance is now called Aphena Pharma Solutions.

Aphena Pharma Solutions maintained a Pharmaceutical/Distributor Market Share of 10.67% Charleston County S.C., from 2006 through 2019. Plaintiff Masiowski practiced as an Emergency Room Physician in Charleston County S.C. intermittently during this period.

2. Smith Drug Company

| County, State | Percentage Market Share from 2006 - 2019 (ARCOS) |
|---|---|
| Allendale County, SC | 13.61% |
| Aiken County, SC | 7.44% |
| Orangeburg, County, SC | 7.44% |
| Burke County, Georgia | 16.17% |
| Douglas, Georgia | 9.89% |

Smith Drug Company is a full-line wholesale pharmacy distribution company serving independent community and long-term care pharmacies.  It is based in Spartanburg, SC.  Smith Drug Company utilizes electronic ordering and signing (CSOS) for ordering controlled substances. Their systems allow pharmacies to order and sign electronically, while complying with DEA guidelines. Smith Drug Company maintained a Pharmaceutical/Distributor Market Share of 5% or greater in Allendale County S.C., Aiken County S.C., Orangeburg County, S.C., Douglas County GA., Burke County GA., from 2006 through 2019. Plaintiff Masiowski practiced as an Emergency Room Physician in all of these counties intermittently during this period.

3. CVS/CVS Health Corporation

| County, State | Percentage Market Share from 2006 - 2019 (ARCOS) |
|---|---|
| Dorchester County, SC | 11.95% |
| Berkley County, SC | 8.40% |
| Aiken County, SC | 7.85% |
| Orangeburg County, SC | 7.85% |
| Richland County, SC | 8.36% |
| Shelby County, Ohio | 13.33% |
| Douglas County, Georgia | 6.60% |
| Burke County, Georgia | 10.23% |

Defendant CVS Health Corporation ("CVS") is a Delaware corporation with its principal place of business in Rhode Island. At all times relevant to this Complaint, CVS distributed prescription opioids throughout the United States, including S. Carolina. CVS maintained a Pharmaceutical/Distributor Market Share of 5% or greater in Dorchester County, S.C., Berkley County S.C., Aiken County S.C., Orangeburg County, S.C., Richland County S.C., Shelby County OH., Douglas County GA., Burke County GA., from 2006 through 2019. Plaintiff Masiowski practiced as an Emergency Room Physician in all of these counties intermittently during this period.

4. Wal-Mart Stores, Inc. ("Wal-Mart")

| County, State | Percentage Market Share from 2006 - 2019 (ARCOS) |
|---|---|
| Dorchester County, SC | 6.85% |
| Berkley County, SC | 11.90% |
| Aiken County, SC | 6.85% |

| | |
|---|---|
| Orangeburg County, SC | 6.85% |
| Richland County, SC | 6.13% |
| Shelby County, Ohio | 17.65% |
| Burke County, Georgia | 25.50% |

Defendant Wal-Mart Inc., formerly known as Wal-Mart Stores, Inc. ("Wal-Mart"), is a Delaware corporation with its principal place of business in Arkansas. At all times relevant to this Complaint, Wal-Mart distributed prescription opioids throughout the United States, including S. Carolina. Wal-Mart maintained a Pharmaceutical/Distributor Market Share of 5% or greater in Dorchester County, S.C., Berkley County S.C., Aiken County S.C., Orangeburg County, S.C., Richland County S.C., Shelby County OH., Burke County GA., from 2006 through 2019. Plaintiff Masiowski practiced as an Emergency Room Physician in all of these counties intermittently during this period.

5. Walgreen Co. ("Walgreens")

| County, State | Percentage Market Share from 2006 - 2019 (ARCOS) |
|---|---|
| Berkley County, SC | 7.59% |
| Orangeburg County, SC | 4.95% |
| Richland County, SC | 6.13% |
| Shelby County, Ohio | 8.84% |
| Burke County, Georgia | 9.22% |

Defendant Walgreens Boots Alliance, Inc., also known as Walgreen Co. ("Walgreens") is a Delaware corporation with its principal place of business in Illinois. At all times relevant to this Complaint, Walgreens distributed prescription opioids throughout the United States, including S. Carolina. Defendant Walgreens maintained a Pharmaceutical/Distributor Market Share of 5% or greater in Berley County, S.C., Orangeburg County S.C., Richland County S.C., Shelby County OH., Burke County GA., from 2006 through 2019. Plaintiff Masiowski practiced as an Emergency Room Physician in all of these counties intermittently during this period.

6. The Kroger Co. ("Kroger)

| County, State | Percentage Market Share from 2006 - 2019 (ARCOS) |
|---|---|
| Shelby County, Ohio | 5.53% |

Defendant The Kroger Co. ("Kroger) is an Ohio corporation with headquarters in Cincinnati, OH. Kroger operates more than 2,000 pharmacies in the United States, including in Ohio. At all times relevant to this Complaint, Kroger distributed prescription opioids throughout the United States, including in Shelby County, Ohio, a County where Plaintiff Masiowski practiced as an Independent Emergency Room Physician. From 2006 through 2019, Kroger maintained a 5.53% Market Share.

**IV.  PBM Defendants to be Added**

7. OptumRx and Express Scripts

In addition to including the above defendants, Plaintiff Masiowski is adding Pharmacy Benefit Manager (PBM) defendants Express Scripts and OptumRx and their affiliates.[6] Together Express Scripts and Optum are referred to herein as "Defendants" or "the PBM Defendants." [7] Plaintiffs are adding said defendants for the following reasons:

  i. During the early years of the epidemic, the PBM defendants conspired with the opioid manufacturers expand the opioid market and increase opioid utilization.

  ii. The PBM defendants had access to real-time data regarding drug utilization which gave them a unique vantage point into the opioid epidemic.

  iii. Two decades after they knew opioids were causing a public health crisis, Express Scripts and Optum finally implemented protocols to address the opioid epidemic.

  iv. Even after implementing it Opioid Risk Management Program, Optum continued promoting uncontrolled Opioid sales through its cash card and discount card business.

  v. As mail order pharmacies, Express Scripts and Optum dispensed opioids in violation of the Controlled Substances Act.

  vi. PBM defendants and opioid manufacturers colluded to ensure virtually unfettered access to opioids.

---

[6] The newly added PBM defendants are: Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Express Scripts Specialty Distribution Services, Inc., Optum Insight, Inc., Optum Insight Life Sciences, Inc., Optum Discount Card Services, LLC; Optum Perks, LLC; Optum Health Care Solutions, LLC; Optum Health Holdings, LLC; and Optum Health Networks, Inc. Additionally, Defendant Express Scripts Holding Company is now known as Evernorth Health, Inc.

[7] In its Order Concerning the PBM Bellwether Process, dated October 27, 2023 (MDL Doc. No. 5231), the Court ordered that four bellwether cases would proceed only against the Optum and Express Scripts Defendant Families. Accordingly, Plaintiff addresses these supplemental and amended allegations only to those defendants.

    vii.    The PBM defendants had access to real-time data regarding drug utilization which gave them a unique vantage point into the opioid epidemic; yet, failed to timely undertake actions to address the opioid epidemic that they helped to create.

    viii.    PBM Defendants chose not to use their claims data and their formulary and UM offerings to address overprescribing, abuse, and diversion.

    ix.    PBM Defendants chose not to use their "Drug Utilization Review" tools to address overprescribing, abuse, and diversion.

    x.    PBM Defendants did not use their vast stores of data, their formulary and UM offerings, as well as their DURs to provide effective controls against diversion or to prevent the diversion and abuse of opioids.

## V.    Conclusion

Plaintiff Masiowski has demonstrated good cause to seek leave to amend his Proposed Corrected First Amended Complaint to add the above listed defendants, including Aphena Pharma and Smith Drug Company, which were erroneously omitted in the Proposed First Amended Complaint attached to the Plaintiff's Motion for Leave to Amend previously filed (1:18-op-45985-DAP Doc #: 33-2 Filed: 07/29/24). Additionally, Plaintiff Masiowski's motion does not prejudice defendants, or cause undue delay. This Court should Grant Plaintiff's corrected motion for leave to amend.

Dated: August 8th, 2024.

                                                                                           Respectfully submitted,

/s/ Paul S. Rothstein
Attorney Paul S. Rothstein
Florida Bar Number: 310123
Attorney Paul S. Rothstein, P.A.
626 N.E. 1st Street
Gainesville, FL 32601
(352) 376-7650
(352) 374-7133
E-Mail:  psr@rothsteinforjustice.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 8th, 2024, I electronically filed the foregoing PLAINTIFF MASIOWSKI'S CORRECTED MOTION FOR LEAVE TO AMEND, DECLARATION OF PAUL S. ROTHSTEIN IN SUPPORT OF PLAINTIFF MICHAEL MASIOWSKI'S CORRECTED MOTION FOR LEAVE TO AMEND, and PLAINTIFF'S PROPOSED CORRECTED FIRSTAMENDED COMPLAINT with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

/s/ Paul S. Rothstein
Paul S. Rothstein