**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| **This document relates to:** *Track 9*<br>**Case No. 1:18-op-45274-DAP** | Case No. 17-md-2804 |
| TARRANT COUNTY, TEXAS, | Judge Dan Aaron Polster |
| Plaintiff, | |
| v. | |
| PURDUE PHARMA, et al., | |
| Defendants. | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF THE ALBERTSONS DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 1

STATEMENT OF MATERIAL FACTS TO WHICH THERE CAN BE NO GENUINE
DISPUTE ................................................................................................................... 3

    I.       The Albertsons Defendants. ..................................................................... 3

           A.      Albertsons' Operations in Tarrant County, Texas. ..................... 3

    II.      Plaintiff Tarrant County. ....................................................................... 4

LEGAL STANDARD ................................................................................................... 5

ARGUMENT .............................................................................................................. 5

    I.       Tarrant County Lacks Standing to Bring This Case. ............................... 5
    II.      The Texas Regulatory Consistency Act Preempts Plaintiff's Public Nuisance
           Claim. ................................................................................................... 8
    III.     The Distribution and Dispensing of a Lawful Prescription Drug Cannot Constitute
           a Public Nuisance Under Texas Law. .................................................... 10

           A.      Texas Only Recognizes Public Nuisance Claims in Limited Circumstances
                Relating to Property Interests and Violations of Statutory Law. .............. 10
           B.      Finding the Distribution and Dispensing of a Lawful Prescription Drug to
                be a "Public Nuisance" is Inconsistent with Texas Law and Other Court
                Decisions. ................................................................................. 13

    IV.     Plaintiff Has Not Established a Public Nuisance Claim Premised on a Negligence
           Theory Under Texas Law. ..................................................................... 15

CONCLUSION .......................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1707 N.Y. Ave., LLC v. City of Arlington*,
 2015 WL 6457569 (Tex. App. Oct. 22, 2015)........................................................................11

*BIC Pen Corp. v. Carter*,
 251 S.W.3d 500 (Tex. 2008)..................................................................................................9

*Boyd v. Schreiner*,
 116 S.W. 100 (Tex. App. 1909)..............................................................................................11

*Cipollone v. Liggett Grp.*,
 505 U.S. 504 (1992)................................................................................................................9

*City of Beaumont v. Como*,
 381 S.W.3d 538 (Tex. 2012)..................................................................................................11

*City of Chicago v. Beretta U.S.A. Corp.*,
 821 N.E.2d 1099 (Ill. 2004)..................................................................................................15

*City of Garland v. White*,
 368 S.W.2d 12 (Tex. Civ. App. 1963)...................................................................................12

*City of Huntington v. AmerisourceBergen Drug Corp.*,
 609 F. Supp. 3d 408 (S.D.W. Va. 2022)...............................................................................15

*City of Laredo v. Webb Cty.*,
 220 S.W.3d 571 (Tex. App. 2007)...........................................................................................6

*City of Webster v. Signad, Inc.*,
 682 S.W.2d 644 (Tex. App. 1984)...........................................................................................8

*County of Dallas v. Purdue Pharma, L.P. et al.*,
 Nos. 2018-77098, 2018-63587 (Tex. Dist. Ct. Harris Cnty.) .................................................10

*Crosstex N. Texas Pipeline, L.P. v. Gardiner*,
 505 S.W.3d 580 (Tex. 2016)............................................................................................15, 16

*El Paso Cnty., Texas v. Trump*,
 982 F.3d 332 (5th Cir. 2020) .............................................................................................7, 16

*Harrington v. Purdue Pharma, L.P.*,
 144 S.Ct. 2071 (2024)...............................................................................................................5

*State ex rel. Hunter v. Johnson & Johnson*,
 499 P.3d 719 (Okla. 2021)......................................................................................................13

*Jamail v. Stoneledge Condo. Owners Ass'n*,
 970 S.W.2d 673 (Tex. App. 1998).......................................................................................7, 11

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555 (1992)...................................................................................................................5

*Martinez v. Walgreen Co.*,
    No. 7:17-CV-309, 2018 WL 3241228 (S.D. Tex. July 3, 2018), *aff'd*, 935 F.3d
    396 (5th Cir. 2019)...............................................................................................................12, 16

*McQueen v. Burkhart*,
    290 S.W.2d 577 (Tex. App. 1956).......................................................................................11

*In re Nat'l Prescription Opiate Litig.*,
    477 F. Supp. 3d 613 (N.D. Ohio 2020), *clarified on denial of reconsideration*,
    No. 1:17-MD-2804, 2020 WL 5642173 (N.D. Ohio Sept. 22, 2020)...................................10

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-MD-2804, 2019 WL 3917575 (N.D. Ohio Aug. 19, 2019).....................................5

*Parker v. City of Fort Worth*,
    281 S.W.2d 721 (Tex. Civ. App. 1955).................................................................................12

*Quanah Acme & P. Ry. Co. v. Swearingen*,
    4 S.W.2d 136 (Tex. App. 1927)...........................................................................................11

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)...............................................................................................................9

*Riley v. Angelle*,
    2022 WL 3092892 (Tex. App. 2022).....................................................................................11

*State of Alaska v. Walgreen Co. et al.*,
    Case No. 3AN-22-06675 CI (Mar. 1, 2024) .........................................................................14

*State v. Cook United, Inc.*,
    464 S.W.2d 105 (Tex. 1971).................................................................................................12

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008).......................................................................................................15

*State v. Spartan's Indus., Inc.*,
    447 S.W.2d 407 (Tex. 1969).................................................................................................12

*State ex rel. Stenehjem v. Purdue Pharma L.P.*,
    2019 WL 2245743 (N.D. Dist. May 10, 2019).......................................................................15

*Stockwell v. State*,
    221 S.W. 932 (Tex. 1920).....................................................................................................12

*Stoughton v. City of Fort Worth*,
    277 S.W.2d 150 (Tex. Civ. App. 1955).................................................................................12

*Tex. Dep't of Transp. v. Barber*,
    111 S.W.3d 86 (Tex. 2003)...................................................................................................11

*Texas Cent. Partners, LLC v. Grimes Cty.*,
    580 S.W.3d 824 (Tex. App. 2019).........................................................................................11

*Tuma v. Kerr Cnty.*,
    336 S.W.3d 277 (Tex. App. 2010)......................................................................................6, 16

*United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*,
    2016 WL 6277370 (Tex. App. Oct. 27, 2016) ........................................................................11

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ...................................................................................................................9

**Statutes**

Tex. Health & Safety Code § 343.011 ........................................................................................7, 12

Tex. Local Gov. Code § 51.001 .......................................................................................................12

Tex. Occ. Code § 1.004 .................................................................................................................8, 9

Tex. Occ. Code § 551 *et seq.* ............................................................................................................8

Tex. Occ. Code § 554.051(a) ............................................................................................................8

**Other Authorities**

22 Tex. Admin. Code § 291.29(a) .....................................................................................................8

Fed. R. Civ. P. 56 ..............................................................................................................................5

Fed. R. Evid. 702 ..............................................................................................................................1

Tex. R. Civ. P. 91a ..........................................................................................................................10

U.S. Const. art. III, § 1 ......................................................................................................................5

## INTRODUCTION

Defendants Albertsons, Inc., Albertsons, LLC, Safeway, Inc., Randall's Food & Drug, and United Supermarkets, LLC (collectively, the "Albertsons Defendants" or "Albertsons") respectfully move this Court for an order granting summary judgment on the only two claims brought by Plaintiff Tarrant County against Albertsons in this litigation: intentional and negligent creation of a public nuisance. (*See* Supp. & Am. Compl., ¶¶ 681-782 (ECF No. 3739) ("Compl.").)

In short, Plaintiff's claims are based on allegations that Albertsons, through its pharmacies, caused a public nuisance in Tarrant County by self-distributing and dispensing prescription opioids that were not issued pursuant to a legitimate medical purpose. (Compl., ¶¶ 425-453.) Plaintiff pursues these claims, however, without identifying a single order of prescription opioids that Albertsons distributed improperly or any prescription that Albertsons dispensed that was not issued for a legitimate medical purpose.[1] Aside from these glaring factual deficiencies, however, Plaintiff's two public nuisance claims face insurmountable legal barriers and have no basis in Texas law, for at least three reasons.

*First*, Tarrant County lacks standing to bring this case as-pleaded. Texas does not delegate sovereign *parens patriae* power to counties to sue to abate an alleged public nuisance suffered by the *citizens* of Tarrant County, and so Tarrant County only has standing to sue for injuries suffered

---

[1] This Court has previously denied arguments made by other defendants in this MDL that Plaintiffs' claims fail because they cannot establish causation to support a claim for public nuisance absent evidence of specific orders that were improperly distributed or specific prescriptions that were improperly dispensed.  In light of this Court's CT7 Order Regarding Previously Decided Issues (ECF No. 4978) adopting all prior rulings from prior MDL case tracks as effective in subsequent case tracks, Albertsons will not repeat those arguments or other dispositive issues, including prior Rule 702 rulings and expressly preserves those arguments. (*See* ECF No. 4978, at fn. 2 ("Whether any party likes it or not, the Court's prior rulings and Orders apply to Case Track 7 and all future trials, absent changed circumstances or appellate reversal.").  Albertsons believes that Plaintiff cannot establish causation in this case as well, and reserves its right to raise this argument, as well as other arguments previously rejected by the Court, as appropriate.

by Tarrant County as an *entity*. Unless delegated, that power is reserved to the State of Texas. Because the vast majority of the conduct alleged in the Complaint, even if true, involves injury to the population of Tarrant County, Plaintiff lacks standing to bring this lawsuit.

*Second*, Plaintiff's public nuisance claims are precluded by the recently enacted Texas Regulatory Consistency Act. In enacting the Texas Regulatory Consistency Act, the Texas Legislature completely preempted the field of pharmacy distribution and dispensing, rendering Tarrant County's attempt to impose impermissible local regulations via tort litigation void and unenforceable, warranting summary judgment.

*Third,* the distribution and dispensing of a lawful prescription drug cannot, as a matter of law, create a public nuisance in Texas. Texas has consistently imposed a limited, traditional formulation of the tort of public nuisance, only recognizing as a public nuisance conduct that has either: (1) a nexus to public property rights—the most traditional formulation of public nuisance; or (2) has legislatively been deemed to be a public nuisance by either the State of Texas or one of its municipalities. This is consistent with a variety of decisions from other jurisdictions sharing Texas's formulation of public nuisance, and the Court should make a similar finding here.

Finally, even if the Court were to find that none of these legal barriers is insurmountable, Plaintiff is unable to establish a public nuisance claim based on allegations of negligence absent any Texas authority establishing a legal duty. The Court should grant summary judgment because Albertsons has neither intentionally nor negligently created a public nuisance in Tarrant County.

## STATEMENT OF MATERIAL FACTS
## TO WHICH THERE CAN BE NO GENUINE DISPUTE

**I.      The Albertsons Defendants.**

**A.      Albertsons' Operations in Tarrant County, Texas.**

The Albertsons Defendants own and operate retail grocery stores in various states throughout the United States, some of which also contain pharmacies. (Compl., ¶ 79.) Albertsons pharmacies dispensed prescription drugs, including controlled substances, throughout the operative period alleged in the Complaint, 2006-2019.[2] (*Id.*) Pharmacies in stores affiliated with the Albertsons Defendants comprised 51 of the 594 pharmacies that did business in Tarrant County from 2006-2019, although openings and closings of stores have occurred over time. (Declaration of Francis A. Citera, Ex. 1 (McCann Rep.) at Appendix 6, Section 6.8.[3]) Plaintiff alleges that Albertsons-affiliated pharmacies dispensed just 6.4% of the dosage units of opioid medications which were dispensed in Tarrant County. (Compl., ¶ 429.)

In addition to dispensing prescription medications, Albertsons also distributed Schedule III-V controlled substance prescription medications to Tarrant County from a distribution facility in Oklahoma from 2006-2008 and then distributed Schedule II-V controlled substance prescription medications from August 2013 to June 2016. (Ex. 2 (Beck Dep.) at 20:21-25; 21:1-25; 22:1-25, 26:15-25; 27:1-25: 28:1-8; 208:1-8.) Regarding opioid prescription medications specifically, Albertsons primarily distributed generic opioids to its stores, rather than the name-brand

---

[2] Albertsons understands the Court is very familiar with the general systems of pharmacy distribution and dispensing.  Albertsons further acknowledges and that the Court is well-aware that the specific systems are individualized and detailed for each pharmacy and distributor. Accordingly, Albertsons has endeavored to describe its systems at a high level to the extent possible and appropriate but reserves the right to include additional facts which may be relevant upon reviewing Plaintiff's response.

[3] All references to an exhibit are, unless otherwise noted, exhibits to the Declaration of Francis A. Citera ("Citera Decl.") which is filed concurrently herewith.

medications. (Ex. 3 (Defendant Albertsons Objections and Answers to Plaintiff's Combined Interrogatories to Chain Pharmacy Defendants, Obj. No. 14.)) Plaintiff alleges that, during the period of 2006-2019, Albertsons self-distributed just 1.2% of the dosage units of the total opioid medications that were distributed to Tarrant County (a smaller percentage than Albertsons dispensed amounts due both to Albertsons' short period of self-distribution and the fact that Albertsons primarily distributed only generics). (Ex. 1 (McCann Rep.) at 37.)

## II.    **Plaintiff Tarrant County.**

Tarrant County is the location of the City of Fort Worth and is the third largest county in Texas, with a population of approximately 2.1 million. (Compl., ¶ 7.) Texas has consistently been one of the states with the lowest rates of opioid dispensing, with Plaintiff's own expert ranking Texas 49 out of 51 U.S. jurisdictions in annual morphine milligram equivalents ("MMEs") per capita from 2006-2019. (Ex. 1 (McCann Rep.) at Table 9.)

Plaintiff Tarrant County's witnesses consistently are unable to link any described issues with prescription opioid medications to Albertsons. In its testimony, Plaintiff Tarrant County was unable to link Albertsons to any specific misconduct concerning prescription opioid medications. (Ex. 4 (Maenius Dep.) at 21:24-25; 22:1-16.) Specifically, Plaintiff was unable to link Albertsons to any issue involving "prescription opioid sources, supply, [diversion], use or abuse, and addiction in the geographic area of Tarrant County." (*Id.* at 14:24-25; 15:1-4; 20:6-24.) Tarrant County was unaware of any investigation of any Albertsons pharmacist in Tarrant County in connection with prescription opioids. (*Id.* at 187:14-25; 188:1) Similarly, the Texas Board of Pharmacy's representative was unaware of a single violation of Texas Board of Pharmacy rules by Albertsons or its pharmacists. (Ex. 5 (Hotchkiss Dep.) at 57:18-24; 165:1-25;166:1-4.) The record is devoid of evidence linking any conduct of the Albertsons Defendants to opioid issues in Tarrant County, Texas.

4

Instead, Plaintiff has brought suit against Albertsons and others[4] seeking to abate an alleged public nuisance resulting in alleged harm to the citizens of Tarrant County, which Plaintiff alleged was caused in the aggregate by Albertsons' self-distribution of generic prescription opioids to its pharmacies from 2006-2006 and 2013-2016, and by Albertsons pharmacists' dispensing of prescription opioids that were allegedly not prescribed for a legitimate medical purpose. (Compl., ¶¶ 425-453.) For the reasons outlined herein, Plaintiff's claims are legally flawed under Texas law and should be summarily dismissed.

## LEGAL STANDARD

The Court has previously articulated the legal standards applicable to motions for summary judgment brought under Fed. R. Civ. P. 56. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3917575, at *1 (N.D. Ohio Aug. 19, 2019).

## ARGUMENT

### I. Tarrant County Lacks Standing to Bring This Case.

It is axiomatic that the Constitution limits "[t]he judicial Power" to "cases" and "controversies," U.S. Const. Art. III, § 1, and "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III[.]" *Lujan v. Defs. of Wildlife*,

---

[4] On June 3, 2021 this Court granted Plaintiffs' Motion to bifurcate the bellwether claims for separate trials in five bellwether cases, including Tarrant County. The order stayed Plaintiffs' remaining bifurcated claims against other defendants, including Purdue Pharma and members of the Sackler family. (ECF No. 3750.) The order does not set forth a mechanism for the resolution of the remaining bifurcated claims. In light to the Supreme Court's recent decision in *Harrington v. Purdue Pharma*, 144 S. Ct. 2071 (2024) the status of Tarrant County's claims against Purdue and members of the Sackler family remain unclear. As the Supreme Court recognized, Purdue "sits at the center" of what it described as "one of the largest public health crises in this nation's history." Proceeding against Albertsons while the County's claims against Purdue and the Sacklers remain bifurcated and now unresolved raises multiple questions about the allocation of fault and is prejudicial to Albertsons. Albertsons expressly reserves all rights with regard to any non-settling defendants, including Purdue Pharma and members of the Sackler family.

504 U.S. 555, 560 (1992). Standing requires an "injury in fact" suffered by *the Plaintiff* that can be remedied by a favorable order from this Court. *See id.* That requirement is not met here.

The expansive claims in the 230-page Complaint broadly encompass the entirety of the opioid epidemic in Tarrant County. Plaintiff is not suing merely for damages Tarrant County—*as an entity*—has sustained, but instead is suing based upon an alleged public nuisance to the public at large. (*See, e.g.,* Compl. ¶ 771 (alleging the Pharmacy Defendants are liable not only for the funds the County expended but also more generally for "creating the opioid epidemic"); ¶ 765 ("The Pharmacy Defendants' conduct has affected and continues to affect a considerable number of people within Tarrant County and is likely to continue to cause significant harm to patients who take opioids, their families, and the community at large."); ¶ 755 ("[E]ach Pharmacy Defendant should have known that . . . diversion and the associated harms and resulting interference with public health, safety, and welfare would occur.").) But Texas law does not permit Tarrant County to sue on behalf of its citizens, because Tarrant County is not a sovereign with *parens patriae* authority nor has Texas delegated that power to Tarrant County. *See Tuma v. Kerr Cnty.*, 336 S.W.3d 277, 281–82 (Tex. App. 2010) (counties cannot rely on the doctrine of *parens patriae*).

Although the Complaint states that Tarrant County "is a political subdivision of the State of Texas which may sue and plead in its own name", no citation is provided for that statement because Tarrant County lacks authority to bring this case as-pleaded. (Compl., ¶ 33.) In Texas, counties "may exercise only those powers expressly conferred by either the legislature or the Texas Constitution." *City of Laredo v. Webb Cty.*, 220 S.W.3d 571, 576 (Tex. App. 2007). While the Texas Legislature has explicitly authorized Texas counties to bring suits to abate certain public nuisances—specifically, public nuisances caused by places of prostitution or gambling, criminal gang activity, or refuse in unincorporated areas of a county—Texas has not delegated to counties generalized authority to bring suit to abate anything they might try to call a nuisance. *See* Tex.

Health & Safety Code § 343.011 (giving counties authority to abate *only* enumerated nuisances and *only* those located in "the unincorporated area of a county").

Further, Tarrant County's standing is limited in the same way as that of any other litigant, and "to establish Article III standing, [Tarrant] County must show that the county *itself* has suffered an injury." *El Paso Cnty., Texas v. Trump,* 982 F.3d 332, 338 (5th Cir. 2020) (emphasis added). While the Complaint is replete with references to Tarrant County's "proprietary interests," Compl., ¶ 773, and that Tarrant County "has suffered, and will continue to suffer, unique harms as described in this Complaint, which are of a different kind and degree than those suffered by Texas and Tarrant County citizens at large," *id.*, ¶ 776, Plaintiff's claims reach further by seeking to abate the alleged public nuisance based on alleged harms *to the people of Tarrant County.* (*Id.*, ¶ 770.)

The Fifth Circuit rejected a similar incidental harm argument in *El Paso County*. In that case, "El Paso County asserts that the economy of the county at large will be harmed, resulting in a reduction in general tax revenues for the county." 982 F.3d at 340. The Fifth Circuit held that "incidental economic impact" on counties resulting from the actions of other parties do not suffice to create Article III standing where the *actual* claim as-pleaded is an attempt to "assert the economic injuries of its citizens on their behalf as *parens patriae*." *Id.* at 338.

Here, Tarrant County is making a similar attempt to assert claims beyond alleged damages incurred to the County itself to extend to a variety of incidental impacts stemming from the opioid epidemic on behalf of its entire citizenry. Any argument that Tarrant County has suffered particular and direct harm sufficient to create Article III standing would run contrary to the argument Plaintiff must make to maintain its public nuisance claim: that Tarrant County is suing because it is attempting to abate a right that has been infringed which is "'common to the *general public*.'" *See Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App. 1998) (quoting Restatement (Second) of Torts §821(B)(1)(a)-(c)(1979)). Because Texas has not conferred on

7

Tarrant County legal authority to sue to abate a public nuisance allegedly caused by the dispensing of prescription opioids to the citizens of Tarrant County, Plaintiff's claims are legally improper under Texas law and Albertsons is entitled to summary judgment on Tarrant County's claims.

## II.      The Texas Regulatory Consistency Act Preempts Plaintiff's Public Nuisance Claim.

The Texas Regulatory Consistency Act ("TRCA"), which went into effect on September 1, 2023, was passed "to provide regulatory consistency across [Texas] and return the historic exclusive regulatory powers to the state where those powers belong." Tex. H.B. 2127; Tex. S.B. 814.[5] The TRCA achieved this legislative fiat by enacting sweeping field preemption provisions throughout Texas's statutory codes, which "preclude municipalities or counties from adopting or enforcing an ordinance, order, rule, or policy in a field occupied by a provision of this code unless explicitly authorized by statute[.]" Tex. Occ. Code § 1.004. Indeed, any attempt by a county to do so by "ordinance, order, rule, or policy" is "*void, unenforceable and inconsistent with* [the] *code*." *Id.* (emphasis added); *see also City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 648 (Tex. App. 1984) (granting summary judgment where "legal basis" for action was "unsound" and "void and unenforceable" under Texas law).

Pharmacies and their purchase of pharmaceutical products from pharmacy distributors are regulated by the Texas Pharmacy Act, found in the Texas Occupations Code. *See* Tex. Occ. Code § 551 *et seq.* The professional practice of pharmacy itself—including pharmacists' professional duties in dispensing prescription pharmaceuticals—is also regulated by the Texas Pharmacy Act and by its implementing regulations. *See* Tex. Occ. Code § 554.051(a); 22 Tex. Admin. Code § 291.29(a).

---

[5] The TRCA's constitutionality under the Texas Constitution has been challenged, but it remains in force and has full effect pending appeal.

It is indisputable that—once the TRCA took effect—Plaintiff Tarrant County could not pass a county-specific "ordinance, order, rule, or policy" regulating Albertsons' pharmacies or pharmacists, either in Albertsons' role as purchaser of prescription pharmaceuticals or as dispenser of the same, and that any preexisting enactments would be "void, [and] unenforceable." *See* Tex. Occ. Code § 1.004. The State of Texas *itself* regulates this entire field, and Tarrant County may— by virtue of the TRCA—no longer pass a purported "Tarrant County Pharmacy Act" or the like.

Instead, Tarrant County is trying to do with litigation what it cannot do with regulation. Plaintiff Tarrant County admittedly has no authority to enforce the Texas Pharmacy Act or the CSA or any of the numerous statutes cited in the Complaint; if that were so, Plaintiff would be suing for violation of those statutes and not for the amorphous common law tort of "public nuisance." But courts have long held that the application of tort law is *itself* a form of regulation. Indeed, specifically in the prescription drug context, the federal government appears to view state tort law as a "complementary" form of drug regulation. *Wyeth v. Levine*, 555 U.S. 555, 578 (2009). Tort claims commonly trigger preemption clauses in statutes, precisely because they are a form of regulation. *See, e.g.*, *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 322-323 (2008) ("[State] tort duties constitute 'requirements'" triggering express preemption clause); *Cipollone v. Liggett Grp.*, 505 U.S. 504, 521 (1992) (rejecting the argument that a preemption clause "does not pre-empt *common-law* actions" because the language of the relevant preemption statute "sweeps broadly" and can "easily encompass obligations that take the form of common-law rules") (citation omitted); *BIC Pen Corp. v. Carter*, 251 S.W.3d 500, 509 (Tex. 2008) (holding that plaintiff's design defect claim was impliedly preempted and agreeing with the *Riegel* court that "a common-law tort claim could impose duties that conflict with the federal regulatory scheme"). Tarrant County's attempt to regulate-via-litigation runs headlong into the preemption clause the Texas

Legislature inserted into the Texas Occupations Code, and its claims are accordingly "void, [and] unenforceable." Tex. Occ. Code § 1.004.

## III.    The Distribution and Dispensing of a Lawful Prescription Drug Cannot Constitute a Public Nuisance Under Texas Law.

Although this Court has addressed the viability of public nuisance claims in the opioid sale and distribution context under the laws of other states (such as Ohio), the Court has not addressed the viability of public nuisance claims under Texas law. *See, e.g. In re Nat'l Prescription Opiate Litig.*, 477 F. Supp. 3d 613 (N.D. Ohio 2020), *clarified on denial of reconsideration*, No. 1:17-MD-2804, 2020 WL 5642173 (N.D. Ohio Sept. 22, 2020).

Texas law is not Ohio law, nor is it the law of any other state. Texas courts and legislators have made clear that public nuisance in Texas is a narrow cause of action.  And, in contrast to this Court's prior rulings on nuisance law in other states, there is no authority for the proposition that Texas recognizes the tort of public nuisance in the context of selling a lawful product, let alone the lawful distribution and dispensing of a prescription medication.

### A.    Texas Only Recognizes Public Nuisance Claims in Limited Circumstances Relating to Property Interests and Violations of Statutory Law.

Texas courts have never expanded the tort of public nuisance beyond two narrow and traditional categories: (1) conduct which offends a property interest, most typically interference with public property; and (2) conduct which the State of Texas or one of its municipalities has legislatively deemed to constitute a nuisance.[6] No Texas appellate court has ever recognized a

---

[6] In *County of Dallas v. Purdue Pharma, L.P. et al.*, Nos. 2018-77098, 2018-63587 (Tex. Dist. Ct. Harris Cnty.), a variety of pharmacy defendants made similar arguments in motions to dismiss brought pursuant to Rule 91a of the Texas Rules of Civil Procedure.   But these motions were brought under a different procedural posture, applied a different standard, and were denied without opinion or reasoning provided, and therefore do not have any bearing on this Court's decision in this case.

public nuisance claim premised on the lawful distribution and sale of a product at all, let alone a useful federally regulated pharmaceutical. This Court should likewise not expand Texas law.

In Texas, a public nuisance is "a condition that amounts to 'an unreasonable interference with a right common to the general public.'" *Jamail*, 970 S.W.2d at 676 (quoting Restatement (Second) of Torts §821(B)(1)(1979)). Texas courts have traditionally limited the application of these principles to an invasion of a public property interest. *See, e.g.*, *City of Beaumont v. Como*, 381 S.W.3d 538, 539 (Tex. 2012) (owner's refusal to remedy a "vacant, neglected, deteriorated, and dilapidated" property was deemed a public nuisance); *Riley v. Angelle*, 2022 WL 3092892, at *5 (Tex. App. 2022) (driveway interferes with plaintiff's access to public street); *Texas Cent. Partners, LLC v. Grimes Cty.*, 580 S.W.3d 824, 825 (Tex. App. 2019) (asserting claim based on railroad company's survey of property which caused damage to public roadways); *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 2016 WL 6277370, at *8 (Tex. App. Oct. 27, 2016) (protestors interfered with public "thoroughfares" in attempting to block customers from traveling to and from stores); *1707 N.Y. Ave., LLC v. City of Arlington*, 2015 WL 6457569 (Tex. App. Oct. 22, 2015) ("dangerous, substandard structures"); *Jamail*, 970 S.W.2d at 676 (locked gate on a public right of way); *McQueen v. Burkhart*, 290 S.W.2d 577, 579 (Tex. App. 1956) (defendants' fence obstructed major portion of public street constituting a public nuisance) (citation omitted); *Quanah Acme & P. Ry. Co. v. Swearingen*, 4 S.W.2d 136, 139 (Tex. App. 1927) (railroad's construction of platform across alleyway previously dedicated for public access is a public nuisance); *Boyd v. Schreiner*, 116 S.W. 100, 103 (Tex. App. 1909) (dam causing water to give off offensive odors and cause sickness in neighborhood is a public nuisance).

The Texas Legislature and Texas municipalities have also affirmatively—through the legislative process—deemed specific narrow conduct to be a public nuisance. *See, e.g.*, *Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 100 (Tex. 2003) (statute declaring non-compliant billboards

on roadways a public nuisance); *State v. Cook United, Inc.*, 464 S.W.2d 105, 107 (Tex. 1971) (statute prohibiting sales of certain goods on consecutive days of Saturdays and Sundays as a public nuisance); *State v. Spartan's Indus., Inc.*, 447 S.W.2d 407, 413 (Tex. 1969) (same); *Stoughton v. City of Fort Worth*, 277 S.W.2d 150, 154 (Tex. Civ. App. 1955) (municipal ordinance prohibiting fireworks within 5,000 feet of city); *Parker v. City of Fort Worth*, 281 S.W.2d 721, 725 (Tex. Civ. App. 1955) (same); *City of Garland v. White*, 368 S.W.2d 12, 16 (Tex. Civ. App. 1963) (city ordinance addressing roaming dogs); Tex. Health & Safety Code § 343.011 (declaring certain conduct or conditions involving trash, property, and drainage to be a public nuisance in an unincorporated area of a county).

This makes sense. Property-based public nuisance claims sound in common law. Texas or Texas municipalities have also occasionally determined that limited, legislatively deemed categories of specific conduct are also public nuisances despite not sounding in a public property right. *See Stockwell v. State*, 221 S.W. 932, 934 (Tex. 1920) ("The State, in the exercise of its public power, may denominate certain things to be public nuisances, and because of their having that character provide for their summary abatement."); s*ee* Tex. Local Gov. Code § 51.001 (delegating this power to Texas cities). There is no authority in Texas law for any further expansion of a narrow public nuisance doctrine, and this Court sitting in Ohio should not second-guess the Texas Legislature and create new law. *See also Martinez v. Walgreen Co.,* No. 7:17-CV-309, 2018 WL 3241228, at *3 (S.D. Tex. July 3, 2018), *aff'd*, 935 F.3d 396 (5th Cir. 2019) (declining to extend Texas law on another topic, noting the "Texas Supreme Court has never held that such a duty exists, and thus, this Court, *Erie*-bound cannot so find now").

12

B.      **Finding the Distribution and Dispensing of a Lawful Prescription Drug to be a "Public Nuisance" is Inconsistent with Texas Law and Other Court Decisions.**

Plaintiff's broad theory of public nuisance is inconsistent with Texas's limited formulation of the doctrine. Plaintiff's theory has also been rejected by several other courts which have public nuisance formulations similar to—or even broader than—those of Texas, including Texas's neighboring state, Oklahoma.

Oklahoma's Supreme Court rejected very similar claims, finding that broad public health-based opioid claims "do not fit" within Oklahoma's statutory formulation of the traditional public nuisance doctrine, which is broader than Texas public nuisance law. *See State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 725 (Okla. 2021) (Oklahoma's statute—by contrast to Texas law—explicitly permits claims based on "endanger[ing] . . . health, or safety of others"). Surveying "the past 100 years" of Oklahoma cases concerning public nuisances, and thoroughly considering the common law origins of public nuisance over centuries, the Supreme Court of Oklahoma concluded that liability under public nuisance has been limited "to defendants (1) committing crimes constituting a nuisance, or (2) causing physical injury to property or participating in an offensive activity that rendered the property uninhabitable." 499 P.3d at 723-24. The court explained that the law of public nuisance "covered conduct[] performed in a location within the actor's control," and that "[a] public entity that proceeds against one in control of the nuisance may only seek to abate, at the expense of the one in control of the nuisance." *Id.* at 724.

It is within this context that the Supreme Court of Oklahoma concluded that the sale of lawful products like prescription medications "do not fit" within the bounds of public nuisance law. *Id.* at 725. The court noted, for example, that "[t]here is no common law tort duty to monitor how a consumer uses or misuses a product after it is sold," which renders a seller or distributor of prescription opioid medications unable to "abate the alleged nuisance" which is the only remedy

13

traditionally available for nuisance. *Id*. at 728-29; *see id.* at 724. The Supreme Court of Oklahoma explained that businesses would have no way to know whether they "might face nuisance liability for manufacturing, marketing, or selling products." *Id.* at 731. As the court opined, the cascade of liability for an unfettered public nuisance claim is potentially endless: "will a sugar manufacturer or the fast-food industry be liable for obesity, will an alcohol manufacturer be liable for psychological harms, or will a car manufacturer be liable for health hazards from lung disease to dementia or for air pollution." *Id.*

The Superior Court for the State of Alaska at Anchorage recently dismissed similar claims, finding that "Plaintiff's claims of public nuisance are not supported by Alaska law." (Ex. 6 (Order Granting Motion to Dismiss, *State of Alaska v. Walgreen Co. et al.*, Case No. 3AN-22-06675 CI (Mar. 1, 2024)) at 12.) Notably, Alaska formulates public nuisance law identically to Texas: "an unreasonable interference with a right common to the general public." (*Id.* at 4 (citing Restatement 2d of Torts, § 821B (1979)).) The Court found that, generally, "categories of 'public rights' include land, air, and water"—all traditional property interests. (*Id.* at 4.) As in Texas, the court noted that public nuisance claims may also sound in violations of "statewide public nuisance statutes and local laws." (*Id.*) Within that framework, the court rejected Alaska's claims, because "no state statute defines any action similar to the distribution of a lawful substance as a nuisance" and because "the Plaintiff has not properly identified a public right that has been violated." (*Id.* at 4, 6.) The court was constrained, as this Court should be, and declined "to liberally expand on a legal definition of public nuisance without some inkling of precedent from the Alaska Supreme Court or the state legislature[,]" calling Alaska's argument "a bridge too far." (*Id.* at 6, 8.)

Other courts have similarly declined to "liberally expand" the doctrine of public nuisance to situations involving the sale of prescription opioid medications and other products for similar reasons, all consistent with Texas's traditional and limited understanding of public nuisance law.

*See, e.g.*, *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 472 (S.D.W. Va. 2022) ("The extension of the law of nuisance to cover the marketing and sale of opioids is inconsistent with the history and traditional notions of nuisance. The original legal character of nuisance was a wrongful disturbance of the enjoyment of real property[.]"); *State ex rel. Stenehjem v. Purdue Pharma L.P.*, 2019 WL 2245743, at *13 (N.D. Dist. May 10, 2019) (declining to "extend[] the public nuisance statutes to cases involving the sale of goods"); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 456 (R.I. 2008) ("The law of public nuisance never before has been applied to products, however harmful," because "allowing such a lawsuit would circumvent the basic requirements of products liability law."); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1118 (Ill. 2004) (rejecting "public nuisance claim, based on the alleged effects of defendants' lawful manufacture and sale of firearms outside the city and the county, [that] would extend public nuisance liability further than it has been applied in the past").

## IV.    Plaintiff Has Not Established a Public Nuisance Claim Premised on a Negligence Theory Under Texas Law.

Texas requires more than simply the creation of a nuisance in order for liability to attach. The Supreme Court of Texas concluded that "the term 'nuisance' refers not to a cause of action or to a defendant's conduct but to "the legal injury that the conduct causes and that gives rise to the cause of action." *Crosstex N. Texas Pipeline*, *L.P. v. Gardiner*, 505 S.W.3d 580, 604 (Tex. 2016) (citing Restatement (Second) of Torts). Thus, "the authorities are consistently clear that there must be some level of culpability on behalf of the defendant; nuisance cannot be premised on a mere accidental interference." *Id.* In Texas, a plaintiff must demonstrate it can meet the definitional elements of nuisance—an unreasonable interference with a public right—and must also plead one of three levels of culpable conduct on the part of the Defendant. *Id.* Here, Plaintiff has pleaded both intentional and negligent creation of the nuisance. (Compl., ¶¶ 681-782.)

Although, as noted above, Albertsons contests that Plaintiff has established any factual foundation to allege that Albertsons intentionally or negligently created a public nuisance, Plaintiff has also legally failed to establish a claim for negligent public nuisance under Texas law. To demonstrate liability for a negligent public nuisance under Texas law, Plaintiff Tarrant County is required to demonstrate the ordinary elements of a negligence claim: "'the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.'" *Crosstex N. Texas Pipeline,* 505 S.W.3d at 607 (quoting *IHS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

Under Texas law, as noted above, Tarrant County may only sue on the basis that "the county itself has suffered an injury." *El Paso Cnty., Tex.*, 982 F.3d at 338. While Albertsons owed *its patients* a duty, Tarrant County—a non-sovereign—cannot sue in a sovereign capacity to recover on a theory that Albertsons breached a duty to Tarrant County residents. *See Tuma*, 336 S.W.3d at 281–82.

Tarrant County cannot demonstrate that Albertsons owed Tarrant County—as a county— any duty separate from the duty it owed to its patients. There is no authority for the proposition that Texas recognizes a common-law duty for healthcare providers towards third parties for injuries that may be the result of the provider's alleged negligence to the patient. In fact, Texas courts have expressly declined to find a duty under such circumstances. *See*, *e.g.*, *Martinez,* 2018 WL 3241228 at * 3(rejecting third-party liability and holding, "[u]nder these circumstances, in order to find a duty to Plaintiffs, the Court would have to find that a pharmacist has a general duty to the public for negligent provision of medication. *The Texas Supreme Court has never held that such a duty exists, and thus, this Court,* Erie-*bound cannot so find now*") (emphasis added). Without a duty, there can be no breach of duty, and Plaintiff's negligent creation of a public nuisance count must fail.

## CONCLUSION

Plaintiff's claims face many unsurmountable legal bars under Texas law as discussed above.  This Court should grant Albertsons' Motion for Summary Judgment on both of Plaintiff's claims.

Dated: August 9, 2024

Respectfully Submitted,

By: */s/ Francis A. Citera*
One of Defendants' Attorneys

Francis A. Citera, citeraf@gtlaw.com
Gretchen N. Miller, millerg@gtlaw.com
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL  60601
Tel: (312) 456-8400
Fax: (312) 456-8435

*Counsel for Defendants Albertsons, Inc.,*
*Albertsons, LLC, Safeway, Inc., Randall's*
*Food & Drug, LP, and United*
*Supermarkets, LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 9, 2024, a true and correct copy of this Memorandum in Support of the Albertsons' Defendants' Motion for Summary Judgment was served upon the parties of record using the CM/ECF system.

*/s/ Francis A. Citera*
Francis A. Citera
