UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br>THIS DOCUMENT RELATES TO:<br><br>*Track 14: City of Independence, Missouri v. Williams*, No. 19-op-45371<br><br>*Track 15: County of Webb, Texas v. Purdue Pharma, L.P.*, No. 18-op-45175 | MDL 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**REPLY MEMORANDUM IN SUPPORT OF OPTUMINSIGHT, INC'S AND OPTUMINSIGHT LIFE SCIENCES, INC.'S MOTION TO DISMISS <u>FOR LACK OF PERSONAL JURISDICTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    THE COURT LACKS RICO JURISDICTION OVER OPTUMINSIGHT, INC. AND OPTUMINSIGHT LIFE SCIENCES, INC. ........................................... 3

    II.    THE COURT LACKS PENDENT JURISDICTION OVER PLAINTIFFS' STATE-LAW CLAIMS. ................................................................ 8

    III.    THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY. ..................................................................... 10

CONCLUSION ............................................................................................................................. 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anthony v. Van Over*,
  No. 22-cv-416, 2023 U.S. Dist. LEXIS 176603 (E.D. Tenn. Sept. 27, 2023) ....................... 3, 7

*Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*,
  958 F.3d 26 (1st Cir. 2020) ........................................................................................................ 9

*C.H. v. United States*,
  818 F. App'x 481 (6th Cir. 2020) ............................................................................................ 10

*Canaday v. Anthem Cos.*,
  9 F.4th 392 (6th Cir. 2021) ........................................................................................................ 8

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................................ 11

*Doe v. Varsity Brands, LLC*,
  No. 22-CV-02139, 2023 U.S. Dist. LEXIS 134515 (N.D. Ohio Aug. 2, 2023) ........................ 8

*Graham Med. Techs., LLC v. Vilex in Tenn., Inc.*,
  No. 15-13372, 2016 U.S. Dist. LEXIS 71084 (E.D. Mich. June 1, 2016) .............................. 12

*Integrity Express Logistics, LLC v. Borstelmann*,
  No. 1:23-cv-166, 2023 U.S. Dist. LEXIS 188094 (S.D. Ohio Oct. 19, 2023) ........................ 10

*McLean v. U.S. Conf. of Catholic Bishops*,
  No. 18-cv-3175, 2019 U.S. Dist. LEXIS 76617 (D. Minn. May 7, 2019) .............................. 11

*Miller Indus. Towing Equip. v. NRC Indus.*,
  No. 1:19-CV-00095, 2020 U.S. Dist. LEXIS 67365 (E.D. Tenn. Apr. 16, 2020) ................... 12

*Nottingham-Spirk Design Assocs. v. HALO Innovations, Inc.*,
  603 F. Supp. 3d 561 (N.D. Ohio 2022) ................................................................................... 10

*United States v. Botefuhr*,
  309 F.3d 1263 (10th Cir. 2002) ................................................................................................. 9

## INTRODUCTION

Plaintiffs do not—and cannot—argue that OptumInsight, Inc. or OptumInsight Life Sciences, Inc.[1] is at home in Missouri or Texas or that either is otherwise subject to general jurisdiction in either State. Nor do Plaintiffs argue they have alleged specific jurisdiction over OptumInsight, Inc. or OptumInsight Life Sciences, Inc. consistent with the States' long-arm statutes or the Fourteenth Amendment's Due Process Clause. Instead, eschewing traditional methods of establishing personal jurisdiction, Plaintiffs try to smuggle their claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. through a back door. Plaintiffs argue that the Court has personal jurisdiction over their RICO claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. because the RICO statute authorizes nationwide service of process. And then, because they claim the Court has personal jurisdiction over their RICO claim, Plaintiffs ask the Court to exercise pendent personal jurisdiction over their various state law-claims. Both arguments are wrong.

Plaintiffs' reliance on RICO's nationwide-service-of-process provision fails because they do not include a single allegation plausibly connecting OptumInsight, Inc. and OptumInsight Life Sciences, Inc. to the alleged RICO enterprise, let alone allegations showing that they operated or managed a criminal enterprise or engaged in a pattern of racketeering. On the contrary, Plaintiffs' RICO allegations focus exclusively on formulary, utilization management, and dispensing activities that have nothing to do with OptumInsight, Inc. and OptumInsight Life Sciences, Inc. Of the Optum defendants, only OptumRx offers formulary services or operates a mail-order

---

[1] UnitedHealth Group Incorporated (**UHG**), Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. (**Moving Defendants**) moved to dismiss the Plaintiffs' claims for lack of personal jurisdiction. *See* ECF No. 5446. On July 19, 2024, Plaintiffs voluntarily dismissed every Moving Defendant except for OptumInsight, Inc. and OptumInsight Life Sciences, Inc. *See* ECF No. 5535. OptumInsight, Inc. and OptumInsight Life Sciences, Inc. continue to challenge whether this Court has jurisdiction over them.

pharmacy. OptumRx has not challenged whether this Court has personal jurisdiction over it. As for OptumInsight, Inc. and OptumInsight Life Sciences, Inc., Plaintiffs offer nothing to justify applying RICO's nationwide-service-of-process provision to them.

Plaintiffs' reliance on pendent-personal jurisdiction for its state-law claims also fails for multiple reasons. The Sixth Circuit did not mince words when it recently explained that it has never authorized the exercise of pendent jurisdiction. But even if the Sixth Circuit recognized the doctrine, pendent jurisdiction would not cover Plaintiffs' state-law claims because the RICO claim fails and does not share a common nucleus of operative fact with their state-law claims against OptumInsight, Inc. or OptumInsight Life Sciences, Inc.

Recognizing the flaws in its first two arguments, Plaintiffs close by asking the Court for "jurisdictional discovery." But Plaintiffs offer no good reason why they should be allowed to fish for a basis to exercise jurisdiction over OptumInsight, Inc. and OptumInsight Life Sciences, Inc. Plaintiffs' own briefing shows that they are relying exclusively on RICO's nationwide-service-of-process provision, which has nothing to do the outcome of any supposed "jurisdictional" discovery. The Court can resolve (and reject) that argument as a matter of law; additional discovery will not change the analysis. Otherwise, Plaintiffs offer nothing to explain how jurisdictional discovery will help the Court assess whether exercising jurisdiction comports with traditional notions of due process.

Because there are no factual allegations showing that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. has suit-related contacts creating a substantial connection with Missouri or Texas, this Court should deny Plaintiffs' request for jurisdictional discovery and dismiss the claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. for lack of personal jurisdiction.

## ARGUMENT

OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are not subject to RICO jurisdiction because Plaintiffs do not allege that they participated in the alleged "Formulary & UM Enterprise" central to their RICO claim. Without that anchor, Plaintiffs' request that the Court exercise pendent jurisdiction—a judge-made doctrine that the Sixth Circuit has never authorized—also fails. Finally, Plaintiffs' speculation that they might identify evidence proving jurisdiction through discovery is not enough to justify a fishing expedition—especially given that both OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are already participating in full-blown merits discovery. Plaintiffs needed to present facts suggesting that discovery might reveal suit-related contacts with Missouri and Texas that would satisfy due process requirements. They haven't done so.

### I. THE COURT LACKS RICO JURISDICTION OVER OPTUMINSIGHT, INC. AND OPTUMINSIGHT LIFE SCIENCES, INC.

Plaintiffs do not even try to defend their (nonexistent) jurisdictional allegations under the traditional minimum-contacts framework. Instead, Plaintiffs rely exclusively on RICO's nationwide-service-of-process provision, a theory that Plaintiffs originally pleaded only "[i]n the alternative." *See* Independence Am. Compl ¶ 80 ("In the alternative, the Court has personal jurisdiction over all Defendants under 18 U.S.C. § 1965(b) as to Plaintiff's RICO claims and pendant personal jurisdiction over all Defendants as to Plaintiff's other claims, all of which arise out of a common nucleus of operative facts."); Webb Am. Compl. ¶ 79 (same). But to meet their burden under that "alternative" theory, Plaintiffs must show that "'the ends of justice' require an exercise of personal jurisdiction." *Anthony v. Van Over*, No. 22-cv-416, 2023 U.S. Dist. LEXIS 176603, at *10 (E.D. Tenn. Sept. 27, 2023). "An inadequately pleaded RICO claim against an out-of-district Defendant cannot support a finding that the 'ends of justice' require exercising personal

3

jurisdiction." *Id.* Here, Plaintiffs' RICO allegations are inadequate to justify the exercise of jurisdiction over OptumInsight, Inc. or OptumInsight Life Sciences, Inc.

Plaintiffs argue that despite the name—the "Formulary & UM Enterprise"—the alleged RICO enterprise is not limited to formulary and utilization management. Plaintiffs claim that the alleged enterprise also includes a "marketing prong" that includes OptumInsight and OptumInsight Life Sciences' alleged work for opioid manufacturers. *See* Opp. at 10–12 ("the Defendants' RICO enterprise engaged in a multipronged national campaign to increase the number of opioid prescriptions *both* by expanding the opioid market through deceptive marketing and miseducation" and "by easing prescription access through formulary positions, failure to impose appropriate utilization management (UM) rules, and more"). That argument appears only in Plaintiffs' brief; it appears nowhere in the factual allegations in the Complaints. The allegations about a so-called "Formulary & UM Enterprise" focus only on alleged formulary-related conduct by OptumRx, which has not challenged the Court's jurisdiction.

Plaintiffs allege that the conduct underpinning the Formulary & UM Enterprise included negotiating and contracting for rebates from opioid manufacturers, giving manufacturers' products favorable placement on formularies, foregoing utilization management controls limiting how opioids are used by plan members, assisting manufacturers' formulary-related pull-through marketing efforts, and dispensing opioids through mail-order pharmacies without investigating potentially fraudulent claims. *See* Independence Am. Compl. ¶ 640; Webb Am. Compl ¶ 634. Plaintiffs further allege that the racketeering activity included communicating about formulary placement and status, exchanging rebates, and negotiating contracts, all by U.S. Mail and interstate wire (*see* Independence Am. Compl. ¶ 689; Webb Am. Compl. ¶¶ 683), and violating the controlled substances act through their mail order pharmacies. *See* Independence Am. Compl. ¶

4

691; Webb Am. Compl. ¶ 686. But of the UHG and Optum Defendants, only OptumRx negotiates for rebates from manufacturers. Only OptumRx offers formularies to its clients. And only OptumRx dispenses opioids through its mail-order pharmacy. Plaintiffs do not allege that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. engaged in any of that conduct. By contrast, Plaintiffs allege that "OptumInsight" (undifferentiated) "partnered with various opioid manufacturers to create studies, marketing, educational programs, and even identifying algorithms to simultaneously downplay[] opioids' addictive properties and expands its use and availability throughout the Country[.]" Independence Am. Compl. ¶ 147; Webb Am. Compl. ¶ 147. Plaintiffs' own allegations—including the allegations they cite in their opposition brief—confirm that neither defendant engaged in the alleged activities underpinning the so-called "Formulary & UM Enterprise."

Plaintiffs do not specifically mention any of OptumInsight, Inc.'s or OptumInsight Life Sciences, Inc.'s alleged work for manufacturers in their RICO count. Nevertheless, Plaintiffs argue that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are members in the Formulary & UM Enterprise because the "key link between" the formulary and marketing prongs of the alleged enterprise "was the massive data collection and analytics provided by OptumInsight[.]'" Opp. at 12. But Plaintiffs' arguments do not match their allegations. The complaints do not mention "prongs" of the alleged Formulary & UM Enterprise. And the only marketing specifically mentioned in Plaintiffs RICO counts are opioid manufacturers' alleged formulary-related "pull-through" efforts. Plaintiffs do not define pull-through marketing, but context confirms that it has nothing to do with OptumInsight, Inc. or OptumInsight Life Sciences, Inc. Plaintiffs allege that the "Formulary & UM Enterprise" supported manufacturers' pull-through efforts by providing "data and unfettered formulary placement" in exchange for "higher rebates and other fees" from

5

opioid manufacturers. Independence Am. Compl. ¶ 653; *see also id.* ¶ 654 ("After the Opioid Enterprise Manufacturers' obtained the . . . . data and formulary placement, [their] sales personnel immediately began to analyze their managed care or PBM data in order to 'pull through' the formulary placement in order to drive increased sales."); Webb Am. Compl. ¶ 648–49 (same). There are no allegations that OptumInsight, Inc. exchanged data for higher rebates and other fees. For good reason: OptumInsight, Inc. does not offer formularies or negotiate for rebates. And Plaintiffs do not allege otherwise.

Plaintiffs also argue that "OptumInsight" (undifferentiated) is integral to the Formulary & UM Enterprise because it "used its data and analysis to help opioid manufacturers 'target the highest opioid prescribers with pull-through marketing' promoting the preferred formulary status Optum granted to opioids, enabling manufacturers to transform their formulary positioning into sales 'wins.'" Opp. at 12. Here again, Plaintiffs' allegations do not support their argument. In the paragraphs Plaintiffs cite—which are not in Plaintiffs' RICO counts—Plaintiffs allege that "Express Scripts and *Optum* have for years provided multiple opioid manufacturers with lists of all *their* plan clients as well as the names of physicians who were participating in the plan's provider networks," information which "manufacturers [allegedly] used . . . to target the highest opioid prescribers with pull-through marketing." Independence Am. Compl. ¶ 332 (emphasis added); Webb Am. Compl. ¶ 331 (same). Those allegations have nothing to do with OptumInsight, Inc. or OptumInsight Life Sciences, Inc. Plaintiffs do not allege that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. had "plan clients" for whom they administered pharmacy benefits. *Id.* Of the Optum defendants, only OptumRx provides those services.

Plaintiffs' arguments about OptumInsight, Inc.'s and OptumInsight Life Sciences, Inc.'s alleged research for opioid manufacturers is even less persuasive. *See* Opp. at 13–14. Plaintiffs

6

point to allegations that "OptumInsight" (undifferentiated) contracted with Purdue to perform studies and physician education programs, arguing they confirm that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. participated in the "Formulary & UM Enterprise." *Id.* at 14. But Plaintiffs do not allege that OptumInsight, Inc. conducted any research for manufacturers on behalf of the "Formulary & UM Enterprise," never mind any research creating a substantial connection with Texas or Missouri. Nor do they allege any predicate act of racketeering activity related to research. *See* Independence Am. Compl. ¶¶ 689, 692 (listing alleged RICO predicates); Webb Am. Compl. ¶¶ 683, 686 (same). Plaintiffs do not specifically mention the studies and research that "OptumInsight" allegedly performed for drug manufacturers in their RICO count. That silence speaks volumes.

\* \* \* \* \*

Other than grouping all defendants together under a single "PBM Defendant" label and alleging that the "PBM Defendants formed . . . the Formulary & UM Enterprise," there is no connection between OptumInsight, Inc. or OptumInsight Life Sciences, Inc. and the alleged RICO enterprise. But grouping Defendants together under a single label does not establish RICO jurisdiction over each of them individually. To hold otherwise would jettison due process and the limits on this Court's exercise of jurisdiction. Because Plaintiffs fail to allege any facts showing that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. were members in the "Formulary & UM Enterprise" or participated in the conduct and pattern of racketeering activity underlying the purported RICO claim, Plaintiffs cannot invoke RICO's personal jurisdiction provision. *See Anthony*, 2023 U.S. Dist. LEXIS 176603, at \*14–15 ("[I]n the entirety of their 191 page Amended Complaint, Plaintiffs never specifically allege any single act of racketeering engaged in by [Defendant]" so "it is difficult to understand . . . how exercising personal jurisdiction over

7

Defendant [] under the RICO SOP is required by the 'ends of justice.'").

## II. THE COURT LACKS PENDENT JURISDICTION OVER PLAINTIFFS' STATE-LAW CLAIMS.

Plaintiffs' suggestion that the Court should exercise pendent-personal jurisdiction over their state-law claims also fails.

The Sixth Circuit has never authorized the exercise of pendent personal jurisdiction: "[O]ur court has never recognized this exception to these due-process limitations" and "[w]e see no good reason to do so now." *Canaday v. Anthem Cos.*, 9 F.4th 392, 401 (6th Cir. 2021). As the Court observed in *Canaday*, "[n]o federal statute or rule authorizes pendent claim or pendent party personal jurisdiction." *Id.* at 402. Indeed, "[n]o such law exists—not in 28 U.S.C. § 1367, not in the supplemental-jurisdiction statute, not in the Federal Rules of Civil Procedure." *Id.*

Plaintiffs argue that in *Canaday*, the Sixth Circuit "did acknowledge, however, that pendent personal jurisdiction was usually applied in cases involving a nationwide service of process provision, such as RICO." Opp. at 18 n.14 (emphasis omitted). But the Court's comment about situations where *other* courts have recognized the doctrine is not an endorsement of the practice. On the contrary, although "[s]everal Circuit Courts of Appeals, as well as district courts, have adopted th[e] doctrine" of pendent jurisdiction and applied it in cases involving federal laws with nationwide-service-of-process provisions, "[t]he Sixth Circuit" simply "is not one of them." *Doe v. Varsity Brands, LLC*, No. 22-CV-02139, 2023 U.S. Dist. LEXIS 134515, at *50 (N.D. Ohio Aug. 2, 2023). Pendent jurisdiction does not exist in the Sixth Circuit.

Second, even if the Sixth Circuit had authorized pendent-personal jurisdiction, that would not save Plaintiffs' state-law claims. If Plaintiffs' RICO claim fails (*see generally*, Mem. Supporting Mot. to Dismiss (ECF No. 5447)) or the Court finds that Plaintiffs have not alleged facts sufficient to justify nationwide service of process (*see* Argument Section I, above), then there

8

is no federal anchor to which Plaintiffs' other claims can "append." *See Canaday*, 9 F.4th at 402 (explaining that where recognized, pendent-claim jurisdiction requires a viable federal anchor claim); *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 37 (1st Cir. 2020) ("[W]hen the federal-law claims [anchoring pendent jurisdiction] have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"); *United States v. Botefuhr*, 309 F.3d 1263, 1274 (10th Cir. 2002) (finding that the district court abused its discretion by retaining pendent jurisdiction over claims after the anchor claim was dismissed).

Third, where the doctrine is recognized outside of the Sixth Circuit, district courts have discretion not to apply it when the pendent claim turns on different facts. *Botefuhr*, 309 F.3d at 1272. Plaintiffs' state-law claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. and their RICO claim against OptumRx rest on entirely separate—not common—factual allegations. As discussed above, Plaintiffs' alleged RICO enterprise concerns PBM-related activities, including rebate negotiations with drug manufacturers and formulary tiering decisions. *See, e.g.*, Independence Am. Compl. ¶ 640; Webb Am. Compl ¶ 634. Plaintiffs do not allege that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. is a PBM. They do not allege that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. negotiated rebates with opioid manufacturers. They do not allege that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. offered formularies that included opioids. Plaintiffs' claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. focus on alleged studies or educational programs that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. supposedly conducted for opioid manufacturers. By Plaintiffs' own allegations, those services are not part of the alleged "Formulary & UM Enterprise." Even if Plaintiffs' RICO claim survives, pendent jurisdiction would not attach

9

to their state-law claims against OptumInsight, Inc. or OptumInsight Life Sciences, Inc.

### III. THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY.

Plaintiffs also ask the Court to "hold this motion in abeyance while personal jurisdiction discovery proceeds[.]" Opp. at 19. They do so even as OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are already participating in merits discovery. Plaintiffs' request is meritless.

A plaintiff does not get jurisdictional discovery simply because they ask for it. The Sixth Circuit has made clear that "[a] plaintiff is not entitled to discovery if [it] cannot, at a minimum, offer any factual basis for [its] allegations and give the district court a reasonable basis to expect that discovery would reveal evidence that supports the claimed jurisdiction." *C.H. v. United States*, 818 F. App'x 481, 484 (6th Cir. 2020) (cleaned up) (collecting cases); *see also Nottingham-Spirk Design Assocs. v. HALO Innovations, Inc.*, 603 F. Supp. 3d 561, 571 (N.D. Ohio 2022) (applying *C.H. v. United States* to a request for personal jurisdiction-related discovery and denying request for jurisdictional discovery where "Plaintiff has not identified with any specificity how discovery might support a finding of personal jurisdiction"). Here, Plaintiffs don't even try to argue that their allegations establish a substantial connection between OptumInsight, Inc. and OptumInsight Life Sciences, Inc. and the forum states or otherwise satisfy traditional due-process requirements. Instead, Plaintiffs rely solely on their alternative RICO and pendent-jurisdiction theories—theories that are not affected by jurisdictional discovery. Plaintiffs offer this Court no reason to believe jurisdictional discovery will change the jurisdictional analysis in any way.

A review of the "jurisdictional discovery" requests that Plaintiffs are contemplating confirms that they cannot identify a need for discovery that is reasonably tailored to the jurisdictional issues raised in OptumInsight, Inc. and OptumInsight Life Sciences, Inc.'s motion. *See Integrity Express Logistics, LLC v. Borstelmann*, No. 1:23-cv-166, 2023 U.S. Dist. LEXIS

10

188094, at *6 (S.D. Ohio Oct. 19, 2023) ("a plaintiff may not engage in a fishing expedition untethered from the legal claims at issue"; instead "jurisdictional discovery requests must relate to jurisdictional questions"); *McLean v. U.S. Conf. of Catholic Bishops*, No. 18-cv-3175, 2019 U.S. Dist. LEXIS 76617, at *11–12 (D. Minn. May 7, 2019) (denying jurisdictional discovery where plaintiffs' requests were not "specific, focused and tailored to their assertions concerning general and specific personal jurisdiction," and instead demonstrated that plaintiffs were "simply casting about for contacts with Minnesota"). Many of the requests seek to establish *any* connection with the forum, regardless how small or whether that connection relates in any way to the underlying claims. For example, Plaintiffs propose asking OptumInsight, Inc. and OptumInsight Life Sciences, Inc. to identify all "offices, employees, physicians, medical directors and/or case managers in the bellwether states." Opp, Ex. D-1, Interrogatory No. 2 & 5. But Plaintiffs have never argued that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. is "at home" in Missouri or Texas or otherwise subject to general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (in most cases, a company's "place of incorporation or principal place of business" are the only things that satisfy general jurisdiction). They aren't. *See* Independence Am. Compl. ¶¶ 142, 144; Webb Am. Compl. ¶¶ 141, 144. And the fact that one of them might have a single employee (or even many employees) in the state is irrelevant to whether they have contacts with the State that give rise to the opioid-related public-nuisance claims.

  Inasmuch as Plaintiffs are trying to establish suit-related contacts with the forum, they have not explained why additional discovery might reveal that OptumInsight, Inc. or OptumInsight Life Sciences, Inc. is subject to specific jurisdiction. At best, Plaintiffs speculate that "discovery will confirm that [OptumInsight, Inc. and OptumInsight Life Sciences, Inc.] have sufficient contacts with the transferor forum states to provide a[] . . . basis for jurisdiction over them." Opp. at 2. "But

11

it is well within the Court's discretion to deny a plaintiff's request for jurisdictional discovery where . . . the plaintiff makes only speculative allegations," or argument, about contacts with the forum. *Miller Indus. Towing Equip. v. NRC Indus.*, No. 1:19-CV-00095, 2020 U.S. Dist. LEXIS 67365, at *15 (E.D. Tenn. Apr. 16, 2020). Here, Plaintiffs offer no allegations suggesting possible suit-related contacts between OptumInsight, Inc. and OptumInsight Life Sciences, Inc. and the transferor states. Because Plaintiffs' argument that discovery might reveal such contacts is pure speculation disconnected to any plausible allegations, the request for jurisdictional discovery should be denied. *See Graham Med. Techs., LLC v. Vilex in Tenn., Inc.*, No. 15-13372, 2016 U.S. Dist. LEXIS 71084, at *5-6 (E.D. Mich. June 1, 2016) ("Plaintiff's contention that discovery may reveal a basis for jurisdiction is mere speculation and falls short of the showing required.").

Even if the Court is inclined to overlook that threshold failure, Plaintiffs do not need jurisdictional discovery to investigate suit-related contacts. The parties are already engaged in full-on merits discovery. The few requests that seek "suit-related" information are subsumed by ongoing merits discovery—which OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are participating in under the protection of a court-ordered stipulation ensuring that they do not waive their jurisdictional arguments by doing so. *See* ECF No. 5364. Jurisdictional discovery is a tool that allows limited discovery from a party that is not otherwise participating in discovery. That is not the case here. There is no other discovery the Court could require that OptumInsight, Inc. and OptumInsight Life Sciences, Inc. are not already engaged in.

There is no need to hold the jurisdictional motions in abeyance. Plaintiffs' own briefing confirms that they have not made a threshold showing that any of OptumInsight, Inc. and OptumInsight Life Sciences, Inc. may have contacts with Missouri or Texas that could give rise to

the Plaintiffs' claims. The claims against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. should be dismissed.

## CONCLUSION

The Court should dismiss Plaintiffs' amended complaints against OptumInsight, Inc. and OptumInsight Life Sciences, Inc. for lack of personal jurisdiction.

Dated:  August 19, 2024

                                              Respectfully submitted,

/s/ Brian D. Boone
Brian D. Boone
Emily C. McGowan
Brandon C.E. Springer
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan
D. Andrew Hatchett
Bradley Harder
Caroline R. Strumph
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com
bradley.harder@alston.com
caroline.strumph@alston.com

*Attorneys for OptumInsight, Inc. and OptumInsight Life Sciences, Inc.*

13