# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**THIS DOCUMENT RELATES TO**:<br><br>*County of Webb v. Purdue Pharma, L.P.*, No. 18-op-45175 (Track 15) | **MDL NO. 2804**<br><br>**Case No. 17-MD-2804**<br><br>**Judge Dan Aaron Polster** |

**PBM DEFENDANTS' REPLY IN FURTHER SUPPORT OF PARTIAL MOTION TO DISMISS THE AMENDED COMPLAINT IN TRACK 15**

**TABLE OF CONTENTS**

<u>**Page**</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

I. WEBB COUNTY'S RICO CLAIMS ARE TIME-BARRED. ...........................................2

    A. Webb County's claims are not rendered timely by the "separate accrual" rule. ...................................................................................................................2

    B. Webb County's claims are not rendered timely by the discovery rule. ..................5

    C. Webb County does not sufficiently allege fraudulent concealment. .......................6

    D. The RICO claim against the New Defendants is not timely. ..................................7

    E. The statute of limitations applies to equitable RICO claims. ................................9

II. WEBB COUNTY DOES NOT ALLEGE DAMAGE TO BUSINESS OR PROPERTY. ....................................................................................................................10

    A. Costs for public services and lost tax revenues are not injuries to business or property. ........................................................................................................10

    B. Webb County does not plausibly allege injury to real property. ..........................12

    C. Webb County does not plausibly allege harm as a market participant. ................12

CONCLUSION .....................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
 483 U.S. 143 (1987)................................................................................................................10

*ArmorSource LLC v. Kapah*,
 2019 WL 1118023 (S.D. Ohio Mar. 11, 2019).........................................................................4

*Asher v. Unarco Material Handling, Inc.*,
 596 F.3d 313 (6th Cir. 2010) ....................................................................................................5

*Baltrusaitis v. Int'l Union, United Auto., Aerospace & Ag. Imp. Workers of Am.*,
 86 F.4th 1168 (6th Cir. 2023) .......................................................................................3, 4, 6, 8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)................................................................................................................12

*Canyon County v. Syngenta Seeds, Inc.*,
 519 F.3d 969 (9th Cir. 2008) ..................................................................................................11

*Carter v. Medtronic, Inc.*,
 2020 WL 2319729 (S.D. Ohio May 11, 2020) .........................................................................5

*City & County of San Francisco v. Purdue Pharma L.P.*,
 491 F. Supp. 3d 610 (N.D. Cal. 2020) .......................................................................11, 12, 14

*City of Almaty v. Khrapunov*,
 956 F.3d 1129 (9th Cir. 2020) ................................................................................................11

*Conley v. Gibson*,
 355 U.S. 41 (1957)..................................................................................................................12

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
 523 F.2d 389 (6th Cir. 1975) ....................................................................................................6

*Egerer v. Woodland Realty, Inc.*,
 556 F.3d 415 (6th Cir. 2009) ....................................................................................................9

*Engleson v. Unum Life Ins. Co. of Am.*,
 723 F.3d 611 (6th Cir. 2013) ....................................................................................................9

*In re Fredeman Litig.*,
 843 F.2d 821 (5th Cir. 1988) ....................................................................................................9

*Friedman v. Estate of Presser*,
 929 F.2d 1151 (6th Cir. 1991) ................................................................................................6

*Ganey v. Raffone*,
 1996 WL 382278 (6th Cir. July 5, 1996)...............................................................................10

*Hall v. Warden, Lebanon Corr. Inst.*,
 662 F.3d 745 (6th Cir. 2011) ..................................................................................................7

*Hawaii v. Standard Oil Co.*,
 405 U.S. 251 (1972)..............................................................................................................11

*Heath v. Highlift Equip., Ltd.*,
 2020 WL 5506572 (S.D. Ohio Sept. 11, 2020) ....................................................................14

*Hengle v. Treppa*,
 19 F.4th 324 (4th Cir. 2021) ..................................................................................................9

*Hitachi Med. Sys. Am., Inc. v. Horizon Med. Grp.*,
 2008 WL 11380212 (N.D. Ohio Feb. 8, 2008).....................................................................14

*Holmes v. SIPC*,
 503 U.S. 258 (1992)..............................................................................................................11

*Hunter v. Gates*,
 68 F. App'x 69 (9th Cir. 2003) ..............................................................................................7

*Klehr v. A.O. Smith Corp.*,
 521 U.S. 179 (1997).......................................................................................................2, 3, 4

*Mann v. United States*,
 2023 WL 3479402 (6th Cir. May 16, 2023) ..........................................................................8

*In re Nat'l Prescription Opiate Litig.*,
 956 F.3d 838 (6th Cir. 2020) .............................................................................................5, 7

*Nemkov v. O'Hare Chicago Corp.*,
 592 F.2d 351 (7th Cir. 1979) ................................................................................................10

*Noland v. Chua*,
 816 F. App'x 202 (9th Cir. 2020) ..........................................................................................5

*Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
 262 F.3d 260 (4th Cir. 2001) ................................................................................................12

*Religious Tech. Ctr. v. Wollersheim*,
 796 F.2d 1076 (9th Cir. 1986) ..............................................................................................10

iii

*Rotella v. Wood*,
    528 U.S. 549 (2000) .........................................................................................................8, 10

*Ruth v. Unifund CCR Partners*,
    604 F.3d 908 (6th Cir. 2010) .................................................................................................9

*Simpson v. Putnam County Nat'l Bank of Carmel*,
    20 F. Supp. 2d 630 (S.D.N.Y. 1998) .....................................................................................7

*Solidstrip Inc. v. U.S. Tech. Corp.*,
    2024 WL 1177968 (N.D. Ohio Mar. 18, 2024) .....................................................................4

*Stewart Coach Indus, Inc. v. Moore*,
    512 F. Supp. 879 (S.D. Ohio 1981) .......................................................................................5

*In re Taxotere (Docetaxel) Prod. Liab. Litig.*,
    2022 WL 17996011 (E.D. La. Dec. 29, 2022) ......................................................................5

*Wall v. Mich. Rental*,
    852 F.3d 492 (6th Cir. 2017) ...............................................................................................13

*Welborn v. Bank of N.Y. Mellon Corp.*,
    557 F. App'x 383 (5th Cir. 2014) ........................................................................................11

## Other Authorities

Federal Rule of Civil Procedure 8 ......................................................................................12, 13, 14

Federal Rule of Civil Procedure 9(b) ................................................................................6, 7, 12, 13

## INTRODUCTION[1]

After this case was selected as a bellwether to test claims by local governments against PBMs under public-nuisance theories and various state laws, Plaintiff County of Webb, Texas (**Webb County**) overhauled its complaint to name numerous New Defendants.[2] The Court should dismiss Webb County's RICO claim against Defendants, including the New Defendants, because it is untimely and legally foreclosed.

*First*, Webb County's RICO claim is time-barred. Webb County does not seriously dispute that the asserted injuries underlying its RICO claim occurred well outside the limitations period. It instead invokes various doctrines to try to avoid the straightforward application of the statute of limitations, but none helps it survive a motion to dismiss. At a minimum, Webb County's RICO

---

[1] On July 23, 2024, the Court determined that *City of Independence, Missouri v. Williams*, 1:19-op-45371 (Track 14) would no longer serve as a PBM bellwether. *See* Dkt. No. 5540 at 20:18–20. As such, this reply does not address arguments related to *City of Independence.* Defendants reserve the right to submit a reply in further support of their motion to dismiss the amended complaint in *City of Independence* if the case is later revived and/or actively litigated.

[2] The New Defendants are Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; Express Scripts Specialty Distribution Services, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc. *See* Dkt. No. 5447 (**Mot.**) at 1 n.2. After Defendants filed their motion to dismiss, the parties jointly agreed by stipulation to narrow the list of defendant entities and dismissed all entities other than Express Scripts, Inc.; ESI Mail Pharmacy Service, Inc.; OptumRx, Inc.; OptumInsight, Inc.; and OptumInsight Life Sciences, Inc. Dkt. Nos. 5535, 5536. Under the Express Scripts Family Defendants' stipulation, however, Webb County can still pursue liability against the continuing Express Scripts Family Defendants based on the conduct of certain of the dismissed Express Scripts Family Defendants, and those continuing Defendants can assert defenses that would have been available to certain of those dismissed Defendants. *See* Joint Stipulation between the Bellwether Plaintiffs and the Express Scripts Family Defendants, dated June 21, 2024. Thus, the effect of granting this motion to dismiss as to the "New Defendants" listed above would be to foreclose Webb County from seeking liability against the continuing Express Scripts Family Defendants based on the dismissed Express Scripts Family Defendants' conduct.

1

claim against the New Defendants should be dismissed because it is untimely on the face of Webb County's own pleadings under binding Sixth Circuit precedent.

*Second*, Webb County's RICO claim should be dismissed against all Defendants because Webb County failed to plead a cognizable injury to business or property. All federal courts of appeals to have addressed the issue—along with the only other district court that has addressed it in the context of opioid-related claims—agree that governmental expenditures and costs of public services do not support a civil RICO claim. This Court should follow that unanimous position and dismiss the RICO claim.[3]

## ARGUMENT

**I.  WEBB COUNTY'S RICO CLAIMS ARE TIME-BARRED.**

Webb County does not seriously dispute that the injuries underlying its RICO claims occurred well outside the four-year statute of limitations—in many cases, decades ago. *See* Mot. at 6–7. Webb County instead offers five reasons that its RICO claims are nevertheless purportedly timely. Each is meritless. The Court should dismiss Webb County's RICO claims against all Defendants or, at the very least, against the New Defendants.

**A.   Webb County's claims are not rendered timely by the "separate accrual" rule.**

Webb County attempts to render its expired RICO claims timely by invoking the "separate accrual" rule, which has been applied in different statutory contexts to allow recovery for additional damage caused by the "commission of a separable, new predicate act" within the four-year limitations period. *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997). But neither the

---

[3] Defendants agree with Webb County that this Court no longer need decide whether Webb County has sufficiently alleged liability of the Parent Company Defendants because after the filing of the motion to dismiss, the parties stipulated to the voluntary dismissal of the Parent Company Defendants. *See* Dkt. No. 5531 (**Opp'n**), at 1, 1 n.3; Dkt. Nos. 5535, 5536.

2

Supreme Court nor the Sixth Circuit has ever applied the separate accrual rule in the RICO context. *See Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1178 (6th Cir. 2023). And Webb County offers no compelling basis to do so here.

Even if the separate accrual rule could apply, it would not save Webb County's RICO claim. The separate accrual rule permits recovery only for additional damages caused by a "separable, new predicate act" committed within the four-year limitations period. *Klehr*, 521 U.S. at 190. But here, Webb County does not allege new, independent predicate acts; it merely cites a litany of allegations that refer to decades-old conduct that has allegedly continued into the limitations period. Opp'n at 5 n.13 (citing *County of Webb v. Purdue Pharma, L.P.*, 1:18-op-45175, Dkt. No. 110 (**Webb County 3d Am. Compl.**) ¶ 367 (describing conduct that allegedly occurred over two decades and "[a]t all times since the 1990s"); ¶ 377 (alleging that the PBM Defendants have had access to data "[f]or as long as they have been PBMs"); ¶ 408 (alleging that the PBM Defendants "have been on notice for decades that they needed to and had the ability to address the overutilization of prescription opioids")). To be clear, not a *single* paragraph in Webb County's extensive string cite addresses Defendants' conduct *within the limitation period*.[4] Thus, Webb County fails to allege any *new* predicate acts.

---

[4] *See, e.g.*, Webb County 3d Am. Compl. ¶¶ 49–52 (conduct in 2017); ¶¶ 61–76 (alleging injury in early 2000s); ¶ 229 (conduct in 2017 and 2018); ¶¶ 266–70 (2014 conduct); ¶¶ 272–73 (conduct in 2015 and 2016); ¶ 276 & n.35 (late 1990s through 2018); ¶ 283 (conduct in 2002, 2009, 2014, 2016); ¶¶ 289–294 (conduct in 2015 to 2017); ¶ 310 (conduct "from the mid-1990s through 2017"); ¶¶ 336–37 (conduct in 2013, 2016, and 2017); ¶ 349 (conduct "[f]rom 2011 through at least 2015"); ¶ 356 n.83 (conduct in 2012); ¶ 367 ("[f]or the past two decades"); ¶ 370 (conduct "before 2011"); ¶ 377 ("[f]or as long as they have been PBMs"); ¶ 397 ("well aware for years now"); ¶ 399 (conduct in 2014); ¶ 408 ("on notice for decades"); ¶¶ 418–19 ("[p]rior to 2017"); ¶ 425 ("prior to 2017"); ¶¶ 431–32 (conduct in late 2017 and January 2018); ¶¶ 438–54 (conduct from 2017 through 2019); ¶ 457 ("[f]or years"); ¶¶ 460–64 (conduct in 2016 and 2017); ¶¶ 466–70 (conduct in 2017 and earlier); ¶¶ 473–91 (conduct from 2015 to 2019); ¶¶ 528–29 (no PBM conduct alleged); ¶¶ 534–49 (conduct from 2017 and 2018); ¶¶ 558–69 ("during the 2006 to 2014 time period"); ¶¶ 807–40 (restating RICO claim).

3

In any event, a "plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr*, 521 U.S. at 190. Webb County must identify new, separate predicate acts that caused additional injury "*over and above* the harm that the earlier acts caused." *Id.* (emphasis added); *see also Baltrusaitis*, 86 F.4th at 1178. It fails to do so. In fact, Webb County makes no attempt to identify any "additional harm" or to explain how it would differ from all other harm alleged—*i.e.*, the oversupply of opioids and the alleged injury flowing therefrom.

Both the Supreme Court and the Sixth Circuit have rejected attempts to revive claims in similar circumstances. In *Klehr*, the plaintiffs alleged a decades-long conspiracy through the limitations period, but the Supreme Court held that any new acts in the limitations period did not permit recovery for injuries caused by conduct outside the limitations period and any continued wrongful conduct did not create any new or different harm. 521 U.S. at 190. The plaintiffs in *Baltrusaitis* similarly alleged that the defendants "failed to fix" the injuries sustained by pre-limitations-period conduct, but did not identify new injuries sustained during the limitations period. Without adopting the separate-accrual rule, the Sixth Circuit held that "[r]egardless, the rule d[id] not apply" because the alleged injuries "didn't create 'harm over and above the harm that the earlier acts caused.'" 86 F.4th at 1178 (citation omitted).

Webb County's cited authorities confirm that the separate accrual rule applies only where plaintiffs have identified discrete predicate acts during the limitations period that caused them *new* injuries. *See Solidstrip Inc. v. U.S. Tech. Corp.*, 2024 WL 1177968, at *9 (N.D. Ohio Mar. 18, 2024) (new fraudulent contracts); *ArmorSource LLC v. Kapah*, 2019 WL 1118023, at *9 (S.D. Ohio Mar. 11, 2019) (new fraudulent deposits). But Webb County pleads, at most, that the alleged conspiracy continued through the limitations period, and that Defendants failed to take remedial

4

action both before and during the limitations period. Webb County's allegations thus fall short of the standard articulated by the Supreme Court and Sixth Circuit, so their RICO claims remain time-barred. *See also Noland v. Chua*, 816 F. App'x 202, 203 (9th Cir. 2020) (conduct that "merely reaffirm[ed]" plaintiff's initial exclusion from business did not inflict separate and independent injury).

B. **Webb County's claims are not rendered timely by the discovery rule.**

Webb County agrees that its RICO claim accrued when it knew or should have known of its injuries, which occurred decades ago. Opp'n at 7. Webb County also concedes that it failed to plead that it could not have discovered its injuries earlier through reasonable diligence. *Id.* at n.18. Webb County attempts to side-step those fatal pleading flaws with non-specific allegations that it only recently became aware of "the scope and magnitude" of its RICO-related injuries. *Id.* at 7–8. But "the plaintiff who seeks to rely on the 'discovery rule' [must] affirmatively and particularly plead the date of discovery." *Stewart Coach Indus, Inc. v. Moore*, 512 F. Supp. 879, 886 (S.D. Ohio 1981). Webb County does not even attempt to meet that requirement. And to the extent Webb County seeks leave to further amend its complaint for a *fourth time* to address this issue, leave should be denied. The Court cannot grant leave to amend after the deadline set forth in the scheduling order in the absence of good cause, *see In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020), which Webb County does not attempt to—and cannot—demonstrate here.

In any event, "the discovery rule only applie[s] to cases involving latent injuries," not "open and obvious" ones. *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2022 WL 17996011, at *1 (E.D. La. Dec. 29, 2022); *see also Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313, 321 (6th Cir. 2010); *Carter v. Medtronic, Inc.*, 2020 WL 2319729, at *4–5 (S.D. Ohio May 11, 2020). Webb County's discovery-rule assertion is incompatible with the open and obvious injuries that it

5

alleges. *See, e.g.*, Webb County 3d Am. Compl. ¶ 33 (alleging Webb County has been "dealing with the public health crisis" allegedly caused by Defendants for "the past two decades"); ¶¶ 38, 40 (alleging the public health crisis in Webb County began in the 1990s). Rather, Webb County alleges it suffered open and obvious injuries *for decades* before filing suit. Its RICO claim is therefore time-barred on the face of the amended complaint.

### C. Webb County does not sufficiently allege fraudulent concealment.

Webb County cannot remedy its untimely claims by alleging Defendants fraudulently concealed their conduct. Fraudulent concealment requires that a plaintiff show "(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). "In a RICO case, the plaintiff must both use due diligence to discover that he has been injured and by whom even if the defendant is engaged in fraudulent concealment, and diligently endeavor to sue within the statutory limitations period or as soon thereafter as feasible." *Baltrusaitis*, 86 F.4th at 1178 (citation and alteration omitted). Under Federal Rule of Civil Procedure 9(b), a plaintiff must also plead fraudulent concealment "with particularity." *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 n.11 (6th Cir. 1991). Webb County fails to meet these standards.

The most Webb County offers in support of its fraudulent concealment argument is a mass string cite to its amended complaint. *See* Opp'n at 8–9. But the amended complaint presents a series of formulaic allegations without any supporting facts. *See, e.g.*, Webb County 3d Am. Compl. ¶ 697 ("Due in large part to their deceptive, intentional, and fraudulent conduct, the full scope of Defendants' wrongful conduct and their central role in the opioid epidemic has not yet come to light."). Such conclusory allegations of fraudulent concealment are not enough. Nowhere

6

does Webb County's amended complaint (or opposition brief) explain—as required by Rule 9(b)—what specific conduct Defendants concealed, how Webb County exercised diligence, or how Webb County was prevented from learning that it had a cause of action. *See Simpson v. Putnam County Nat'l Bank of Carmel*, 20 F. Supp. 2d 630, 634 (S.D.N.Y. 1998) (dismissing time-barred RICO claims because complaint included only conclusory allegations of concealment and due diligence); *Hunter v. Gates*, 68 F. App'x 69, 71 (9th Cir. 2003) (affirming dismissal when complaint generally alleged concealment). To the extent Webb County seeks leave to amend its complaint further to address fraudulent concealment, this request should also be denied for lack of good cause. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 844.

Because Webb County failed to plead any specific facts to support fraudulent concealment, this Court's prior decisions declining to dismiss claims on limitations grounds are distinguishable and inapplicable. *See* Dkt. No. 1203 at 4 (plaintiffs alleged lack of cooperation with law enforcement and specific misrepresentations); Dkt. No. 3177 at 12–13 (similar); Dkt. No. 2568 at 21–22 (plaintiffs alleged defendants destroyed documents, avoided submitting certain documents to eliminate evidence, and designed systems to avoid recording wrongdoing).

### D. The RICO claim against the New Defendants is not timely.

Webb County does not dispute that Sixth Circuit precedent forecloses relation back of its claim against the New Defendants. *See* Opp'n at 10 n.24. Instead, it argues that Defendants' alleged fraudulent concealment of their conduct and the Court's moratorium on new filings supports equitable tolling. *Id.* at 12. Not so. Equitable tolling is a narrow exception "sparingly" granted; a plaintiff must show both (1) "that he has been pursuing his rights diligently," and (2) "that some extraordinary circumstance stood in his way and prevented timely filing." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citation omitted). Webb County makes no such showing.

7

The Sixth Circuit has explained that while equitable tolling "might be available when a RICO pattern involves fraud," equitable tolling is "'the exception, not the rule.'" *Baltrusaitis*, 86 F.4th at 1178 (quoting *Rotella v. Wood*, 528 U.S. 549, 561 (2000)). When, as here, a RICO plaintiff knew of its injuries for years but failed to diligently pursue its rights, equitable tolling is not available. *Id.* Webb County offers no facts to support its request for this exceptional relief and vaguely alleges only that Defendants concealed their conduct (Webb County 3d Am. Compl. ¶¶ 692–97) and Webb County did not learn of Defendants' identities until recently (*id.* at ¶ 692). But these conclusory assertions do not bear on whether *Webb County* diligently pursued its claims. It did not.

Furthermore, the Court's moratorium is not an exceptional circumstance; moratoriums on filings and other pre-motion requirements are common case management features of complex litigation. *E.g.*, Manual for Complex Litigation (Fourth) §§ 11.11, 11.212, 11.32 (2004). Nor did the Court's moratorium make amendments "impossible." *Mann v. United States*, 2023 WL 3479402, at *2 (6th Cir. May 16, 2023). Webb County claims that before it was selected as a bellwether, it was "allowed to amend [its complaint] by March 16, 2019, to add or subtract Defendants based on ARCOS data, which was not applicable to the New Defendants." Opp'n at 12. But Webb County was not limited to adding new defendants based only on ARCOS data. *See* Dkt. No. 1282 at 2 ("The Court did not intend for its order to be read so narrowly. . . . Of course, stating that MDL plaintiffs *may* use the report to amend their complaints should not and does not imply . . . that they *may* use only the ARCOS data to amend their pleadings. Therefore, the Court hereby clarifies that MDL plaintiffs . . . have been granted an extension until March 16, 2019 to amend their pleadings *as of right for matters both relying on and beyond the ARCOS data*." (last emphasis added)). The PEC recently admitted as much, directly undermining Webb County's

8

argument here. *See* Dkt. No. 5565 at 11 n.6 ("Although the original impetus for extending the deadline was the availability of ARCOS data . . . , this Court specifically held that the extension of the deadline to amend pleadings was not limited to amendments relating to ARCOS data, but rather included matters 'both relying on and beyond ARCOS data.'" (quoting Dkt. No. 1282 at 2)). Indeed, Webb County amended its complaint on March 16, 2019, and could have added claims against the New Defendants, but, unlike many other plaintiffs (*see* Mot. at 13 n.6), Webb County declined to do so. *See generally County of Webb*, Dkt. No. 73 (**Webb County SAC**). Similarly, Webb County could have filed a new complaint asserting claims against the New Defendants—a path traveled by many other plaintiffs. *See* Mot. at 15 n.8 (citing docket entries in other cases). But Webb County did not do that either. Accordingly, Webb County should not be permitted to bring untimely claims against the New Defendants now, four years later. *See Engleson v. Unum Life Ins. Co. of Am.*, 723 F.3d 611, 623 (6th Cir. 2013) (finding no basis to toll the statute of limitations because the plaintiff failed to diligently pursue the claim); *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (similar); *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009) (similar).

Moreover, if a court-imposed moratorium alone could justify the extraordinary remedy of equitable tolling, any court would have the power to indefinitely suspend a statute of limitations. Under this construction, a court's administrative case management order could relieve a plaintiff of its legislatively-imposed obligation to diligently pursue its claims. That is not the law.

### E. The statute of limitations applies to equitable RICO claims.

Defendants acknowledge that this Court previously held that equitable RICO claims are not subject to any statute of limitations. *See* Dkt. No. 2568 at 9–11. Since then, however, the Fourth Circuit joined the Fifth and Ninth Circuits in holding that RICO does *not* provide equitable relief to private plaintiffs. *Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021); *In re Fredeman Litig.*,

9

843 F.2d 821, 830 (5th Cir. 1988); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986); *see also Ganey v. Raffone*, 1996 WL 382278, at *4 n.6 (6th Cir. July 5, 1996).

But even if RICO could provide equitable relief to private plaintiffs, that relief would still be governed by the same four-year statute of limitations as a RICO claim for damages. *See Nemkov v. O'Hare Chicago Corp.*, 592 F.2d 351, 355 (7th Cir. 1979).[5] And even assuming any cognizable equitable RICO claims were immune from the statute of limitations, Webb County's RICO claims for damages remain expired.

## II.  WEBB COUNTY DOES NOT ALLEGE DAMAGE TO BUSINESS OR PROPERTY.

Webb County's RICO claim fails for the additional reason that it does not adequately allege an injury to business or property. *See* Mot. at 14–20. In its opposition, Webb County contends that it alleged such an injury based on (1) extraordinary costs for public services and lost tax revenue (Opp'n at 13–17), (2) diminished real property values (*id.* at 18), and (3) losses due to purchasing or paying reimbursement for prescription opioids and naloxone as a market participant (*id.* at 19–22). None of those contentions, however, is supported by the allegations in the amended complaint or applicable law.

### A.  <u>Costs for public services and lost tax revenues are not injuries to business or property.</u>

As every court of appeals to address the issue has held, costs to provide additional public services and concomitant lost tax revenues are not harms to business or property that a

---

[5] Indeed, in adopting the Clayton Act's statute of limitations for RICO claims, the Supreme Court did not distinguish between *types* of civil RICO actions. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) ("[T]he selection of the 4-year statute of limitations for Clayton Act actions, 15 U.S.C. § 15b, [is] the most appropriate limitations period *for RICO actions*." (emphasis added)); *see also Rotella*, 528 U.S. at 552 (*Agency Holding* "established a 4-year limitations period *for civil RICO claims*" (emphasis added)).

10

governmental unit can assert to support RICO standing. *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 979 (9th Cir. 2008); *see* Mot. at 15, 18–19 (collecting cases). Indeed, since this Court previously disagreed with that near-consensus rule, Judge Breyer of the Northern District of California applied the rule in a case just like this one to dismiss opioid-related RICO claims. *City & County of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 648 (N.D. Cal. 2020). Webb County provides no persuasive reason that this Court should not follow that well-trodden path here.

Webb County argues that *Canyon*'s use of the word "solely" left room for the possibility that expenditures for social services plus "something else" can support a RICO claim even if expenditures alone cannot. *See* Opp'n at 14–15. But as Judge Breyer explained, that is not the case. *San Francisco*, 491 F. Supp. 3d at 650 ("Contrary to the MDL court's analysis, *Canyon County* established that governmental entities *cannot* assert a RICO claim based on expenditures or services provided in their sovereign or quasi-sovereign capacities."). The Ninth Circuit recently confirmed as much. *Id.*; *see City of Almaty v. Khrapunov*, 956 F.3d 1129, 1133 (9th Cir. 2020); *see also Welborn v. Bank of N.Y. Mellon Corp.*, 557 F. App'x 383, 387 (5th Cir. 2014) ("A government cannot claim damages for general injury to the economy or 'to the Government's ability to carry out its functions.'" (quoting *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 264 (1972))).[6]

Moreover, Webb County's assertion that its "extraordinary" costs qualify as injury to property for RICO purposes is unavailing. Opp'n at 13. "[N]othing in *Canyon County* suggests

---

[6] The *Welborn* court acknowledged that *Hawaii* is a Sherman Act case but explained that "the phrase 'business or property' is interpreted coextensively in the antitrust and RICO contexts." *Id.* at 387 n.3 (citing *Holmes v. SIPC,* 503 U.S. 258, 268 (1992)).

11

that the Ninth Circuit distinguished between 'extraordinary costs' and 'ordinary costs.'" *San Francisco*, 491 F. Supp. 3d at 651.

B. <u>**Webb County does not plausibly allege injury to real property.**</u>

Aside from alleged increased public expenditures and lost tax revenues, Webb County alleges it suffered diminished property values. *E.g.*, Webb County 3d Am. Compl. ¶ 836(m)–(n). But Webb County does not identify what properties, or even what types of properties, are suffering. *See id.* Webb County thus fails to plead an injury that rises "above the speculative level" as required by Rule 8, let alone with sufficient particularity to satisfy the heightened standards of Rule 9(b). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Webb County argues that it is not required to identify specific properties, just as it is not required at this stage to allege specific amounts of damages. Opp'n at 18. But "[t]he best reading of § 1964(c)'s injury to business or property requirement is that it refers to the fact of injury and not the amount." *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*, 262 F.3d 260, 265 (4th Cir. 2001); *see* Opp'n at 18 n.36 (citing *Potomac*). Identification of injured property goes to "the fact" of injury, not the amount. *Potomac*, 262 F.3d at 265. Without knowing what property is allegedly harmed, Defendants lack "notice of what the . . . claim is and the grounds upon which it rests" to mount a defense. *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

In any event, even if Webb County has sufficiently alleged concrete financial loss—it has not—the Court should limit Webb County's RICO claim to the amount of reduced value of its real property, and nothing more. *See San Francisco*, 491 F. Supp. 3d at 651–53 (limiting the City's cognizable RICO injuries to its damaged public restrooms and commercial businesses).

C. <u>**Webb County does not plausibly allege harm as a market participant.**</u>

Finally, Webb County contends that it satisfies the statutory requirement of injury to business or property because it suffered losses in its capacity as a market participant as a result of

12

Defendants' conduct. For example, Webb County contends that it was injured as a market participant "by purchasing and/or paying reimbursements for the Formulary & UM Enterprise Defendants' prescription opioids" which it says it "would not have paid for or purchased but for [Defendants'] conduct." Webb County 3d Am. Compl. ¶ 836(a). Webb County does not, however, identify a single purchase of or payment for a prescription opioid. Webb County also does not plead (or identify in its opposition) any specific facts demonstrating how Defendants' conduct allegedly induced it to make any purchase or payment for prescription opioids. Likewise, Webb County alleges that it was injured as a market participant by incurring the costs of equipping its police and emergency personnel with naloxone to address opioid overdoses. *Id.* at ¶ 836(e). Setting aside the fact that the provision of naloxone is a government function and therefore does not constitute injury to business or property, *see supra* Part II.A and Mot. at 15–18, Webb County does not provide any allegations about a single purchase of naloxone, the cost thereof, when it was purchased, why it was purchased, or any other particular facts to demonstrate that any such purchase was necessitated by Defendants' alleged conduct. The allegations do not pass muster under basic Rule 8 pleading standards.

Inasmuch as Webb County contends that those purchases and reimbursements of prescription opioids or naloxone were made as a result of Defendants' alleged "scheme of deception," Webb County's amended complaint fails to satisfy Rule 9(b) because it does not plead with particularity how any allegedly fraudulent conduct of any specific Defendant caused it harm as a consumer market participant. *See Wall v. Mich. Rental*, 852 F.3d 492, 496 (6th Cir. 2017) (affirming dismissal of RICO claim because complaint did not specifically plead any misrepresentation that caused the alleged harm). And while Webb County contends that it does not have to plead an amount of *damages* with particularity, Opp'n at 20, it does not dispute that it

13

has to allege the *circumstances of fraud* with particularity to the extent that its allegations turn on fraud—as most of Webb County's RICO allegations do. *See, e.g.*, Webb County 3d Am. Compl. ¶¶ 591–94, 596, 598, 609, 634, 636–48, 654, 657–58, 671–85, 687, 834. Webb County's pleading omissions make this case materially distinct from the two cases Webb County relies on in its opposition. *See Hitachi Med. Sys. Am., Inc. v. Horizon Med. Grp.*, 2008 WL 11380212, at *4 (N.D. Ohio Feb. 8, 2008) (plaintiff pleaded injury as a result of a specific misrepresentation related to a specific contract); *Heath v. Highlift Equip., Ltd.*, 2020 WL 5506572, at *2 (S.D. Ohio Sept. 11, 2020) (plaintiff alleged it leased certain equipment based on specific instructions related to operation of the equipment).

Webb County contends that its RICO claim is based in part on alleged violations of the Controlled Substances Act (**CSA**) that do not entirely sound in fraud and thus need not comply with Rule 9(b) (Opp'n at 20), but this argument only limits Webb County's alleged injury and available remedy. That is, even assuming Webb County could sufficiently state a narrow RICO claim under Rule 8 for the costs of prescription opioids or naloxone it paid as a result of Defendants' alleged violations of the CSA (and it cannot, *see supra*), Webb County could only recover for that limited subset of alleged injuries. *Cf. San Francisco*, 491 F. Supp. 3d at 651–53 (limiting the City's RICO claim to the City's real property and commercial business interests).

## CONCLUSION

For the reasons explained above and in Defendants' motion to dismiss, the Court should dismiss Webb County's RICO claim against Defendants.

14

Date: August 19, 2024

Respectfully submitted,

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Jonathan G. Cooper* |
| Brian D. Boone | Michael J. Lyle |
| **ALSTON & BIRD LLP** | Jonathan G. Cooper |
| Vantage South End | Christopher G. Michel |
| 1120 South Tryon Street, Suite 300 | **QUINN EMANUEL URQUHART &** |
| Charlotte, NC 28203 | **SULLIVAN, LLP** |
| Tel: (704) 444-1000 | 1300 I St. NW, Suite 900 |
| brian.boone@alston.com | Washington, DC 20005 |
| | Tel: (202) 538-8000 |
| William H. Jordan | mikelyle@quinnemanuel.com |
| Andrew Hatchett | jonathancooper@quinnemanuel.com |
| **ALSTON & BIRD LLP** | christophermichel@quinnemanuel.com |
| 1201 West Peachtree Street NW, Suite 4900 | |
| Atlanta, GA 30309 | *Attorneys for Express Scripts, Inc., and* |
| Tel: (404) 881-7000 | *Express Scripts Mail Pharmacy Service, Inc.* |
| bill.jordan@alston.com | |
| andrew.hatchett@alston.com | |

*Attorneys for OptumRx, Inc., OptumInsight, Inc., and OptumInsight Life Sciences, Inc.*