# GROUP EXHIBIT A

<pre>
 1                  UNITED STATES OF AMERICA
                FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION

 3                        - - - - -

 4    IN RE:  NATIONAL PRESCRIPTION     )
      OPIATE LITIGATION                 )
 5                                      )    Case No.
                                        )
 6    THIS DOCUMENT RELATES TO:         )    1:17MD2804
                                        )
 7    Case Track 3                      )    Hon. Dan A. Polster
                                        )
 8

 9                        - - - - -

10        TRANSCRIPT OF TELECONFERENCE STATUS BEFORE

11      HONORABLE JUDGE DAN A. POSTER, JUDGE OF SAID

12        COURT, ON WEDNESDAY, MARCH 10TH, 2021,

13           COMMENCING AT 1:30 O'CLOCK P.M.

14                        - - - - -

15

16    Court Reporter:          GEORGE J. STAIDUHAR
                               801 W. SUPERIOR AVE.,
17                             SUITE 7-184
                               CLEVELAND, OHIO 44113
18                             (216) 357-7128

19                        - - - - -

20

21

22

23

24

25
</pre>

```
 1                    P R O C E E D I N G S
 2                    THE COURT:  Okay.  We have got the court
 3       reporter?
 4                    COURT REPORTER:  Yes, Judge.  It's George.
 5                    THE COURT:  Okay.  Hi, George.  All right.
 6                    Well, this is our monthly status call in
 7       Track 3.  I appreciate the status report.  This one is
 8       not going to be pro forma like some of the more recent
 9       calls because I want to -- that's why I required the
10       party representatives.
11                    The first thing is that the Track 3 trial
12       that is now scheduled for October, my intent is it is
13       going forward.  Our Court is resuming jury trials
14       beginning of May.
15                    For May and June, we are keeping the
16       conditions we had last fall, trials no more than five
17       days, and no significant COVID objections, but I don't
18       expect those limitations.
19                    We will be continuing, and Judge Gaughan
20       knows that I have this case scheduled for October, and
21       she has okayed it.  And if by some chance -- you know, by
22       then, anyone who wants a shot will have been able to get
23       them, and if by some chance the pandemic takes a really
24       bad turn, we can always do this trial virtually.
25                    But my intent would be to pick the jury in
```

1    person, and they will probably deliberate in person, but
2    if we have got to do the testimony by zoom, so be it.
3    So everyone should make plans, if we have to try it, we
4    will try it in October as scheduled.
5         And Robert Pitts from our Clerk's Office
6    will be courtroom deputy for the trial, and James Jones
7    from our IT department will be handling all the IT work,
8    so people can coordinate with them.
9         The second thing is, I need to discuss
10   really the balance of the MDL, which is now in my view
11   primarily with the pharmacy Defendants.  Everyone knows
12   because they have been reading in the paper that over the
13   last year-and-a-half the PEC and the AGs have been
14   negotiating to try and put together a global deal with
15   the three big distributors and J & J.  That almost
16   happened a year ago.  Everyone knows what the dollar
17   amounts are because that has been in the paper, too.
18        I expect that that's going to happen.  There
19   is enough pressure because of imminent trials that I
20   think it is going to happen soon.  A couple of
21   manufacturers, there are various discussions going on
22   there.  That leads to the pharmacies.  There are five
23   Defendants in this case.
24        Giant Eagle is pretty local.  The other four
25   are national.  The only pharmacy Defendant in Judge

1    Breyer's case in San Francisco, I believe, is Walgreens.

2    The other three are not in there, and while the

3    pharmacies are included as Defendants in the state case

4    in New York, it has just been moved from March to June.

5    And I am sure will go forward, my understanding is that

6    they only have distribution claims, not dispensing

7    claims.

8         So it is not the full set of claims.  I had

9    urged the parties a year ago to engage in some serious

10   settlement discussions.  The pharmacies didn't want me

11   doing it.  I said okay.  Then, you need to do it

12   privately.  Pick a mediator.  Everyone picked Judge

13   Gandhi.  He had a number of meetings.

14        He has not communicated with me, but I have

15   been told that he has ended his mediation efforts, and

16   that there are no discussions going on now.

17        Is that correct, that there are no ongoing

18   discussions with Jay Gandhi?

19        MS. TABACCHI:  Tina Tabacchi from Jones Day,

20   your Honor.  That is correct, that the mediation has been

21   terminated before Judge Gandhi.

22        THE COURT:  All right.  Well, again, he

23   didn't communicate that with me, but I had learned that.

24   So I don't know what happened over the last year.  I

25   think a whole year was wasted.

1        You know, I don't know -- I know that the

2   PEC and the AGs are willing to seriously discuss global

3   settlement because they have done it with other

4   Defendants.  So I don't know if the impediment was that

5   the pharmacies were not interested in global resolution,

6   or while both sides were interested, they were so far

7   apart that Judge Gandhi felt he couldn't do anything

8   further.

9        But as I've said many times, I think

10  settlement would be harder, not easier, after we conclude

11  this October trial, and if there needs to be a bench

12  proceeding afterward after that, if the Defendants win,

13  the Defendants are going to say "at least we said there

14  is no liability.  We are not going to pay anything."

15       If the Plaintiffs win, then, every county in

16  the country is going to say, "you know, our case is just

17  as strong as Trumbull and Lake Counties, and we want that

18  much if not more" and be impossible to resolve.

19       So unless someone has any better

20  suggestions, I see no alternative but to tee up some

21  number of additional cases for trial, and the number we

22  will discuss now.  The number needs to be number of cases

23  that are tried to verdict.

24       Both sides will feel we have a good sense of

25  how this is going to shake out, and we will use it to

1  resolve the balance, and what number it is, we can

2  discuss that. I have some idea, but my thought is that I

3  would keep these cases for discovery because it is going

4  to be far more efficient for me along with Special Master

5  Cohen to manage them and keep them coordinated and moving

6  forward than to have a bunch of different judges doing

7  it. Obviously, if the cases need trial, they will need

8  to be remanded to those Districts.

9        Whether or not I keep them also for

10  dispositive motions and Daubert motions, that's something

11  I would probably discuss with Judge Caldwell who chairs

12  the JPML. I can decide that down the proceed.

13        So unless, you know, -- my preference of

14  course, is to have the PEC and the AGs and these

15  Defendants engage in significant settlement discussions,

16  but of course, I can't order that or mandate that. If it

17  is not -- there is no willingness on both sides to do it

18  now, then I have just got to proceed with this other

19  approach.

20        And my thought is these additional trials

21  should be streamlined and focused like this one involve

22  only the pharmacies. And I don't think they need Giant

23  Eagle. My guess is Giant Eagle, they told me they only

24  operate in Ohio.

25        So there is no -- they wouldn't be involved

1  in the other cases around the country, and it probably
2  makes sense to just have public nuisance just like this.
3           There will be -- public nuisance is
4  different in each state.  I don't know if there is some
5  compelling to have RICO, but I think it complicates
6  things, but I will leave that to the parties to structure
7  and streamline these cases, so they can be tried in a
8  reasonable time, and everyone can look at the results.
9           So I guess my question is -- and it is
10  probably -- well, both sides, but I will start with the
11  Defendants, how many verdicts do you think will be
12  necessary to give you a sense of whether these cases
13  overall should be settled?  How many additional -- in
14  addition to the one we will get here in my case, how many
15  additional?
16           MR. STOFFELMAYR:  Judge, its Caspar
17  Stoffelmayr.  If I could say a couple things.  I don't
18  have an answer to your question, what's the right number,
19  but --
20           THE COURT:  We are going to come up with it
21  today, Kaspar.
22           MR. STOFFELMAYR:  But I did want to comment
23  on something you did say earlier because I think it makes
24  this -- I don't want to make it more complicated, but
25  there is something else going on here when you put it

1    like that.

2              First, the point, a factual clarification,

3    as far as federal cases that are currently going forward,

4    of course, there is also the Cherokee Nation case and

5    some of the pharmacies --

6              THE COURT:  I understand that, but there is

7    no trial set, Kaspar.  So I have no idea -- the

8    pharmacies are in there and eventually, but it is not --

9    I don't control the timing or anything.

10              MR. STOFFELMAYR:  The other thing I think we

11    need to keep in mind that, you know, you made a point

12    about Giant Eagle being in this case, not being in other

13    cases, but in every case -- or I shouldn't say every

14    case -- in virtually every case, there is a Giant Eagle.

15              There are very significant local players who

16    are sometimes part of the litigation, sometimes not.  It

17    might not be Giant Eagle.  It could be a different

18    supermarket chain.  It could be a major regional drug

19    chain.

20              At one point Discount DrugMart was in the

21    Track 1 cases.  And so if the way you structure it is to

22    say we are only working for a nuisance case and we are

23    only working for a case involving these four chains,

24    there are other chains that are not maybe as big as

25    Walgreens or CVS but certainly approaching in size, a

1   Rite Aid or a Wal-Mart, you are already sort of

2   gerrymandering the universe of cases that are available

3   for consideration.

4           I mean, you would have to find Plaintiffs

5   who are willing to say, you know, forget about the major

6   local players.  We are happy to litigate only against

7   these four and also Plaintiffs who are willing to say we

8   will dispense with all but our nuisance claims.

9           Surely such Plaintiffs exist, but you are

10  giving Plaintiffs, you know, sort of complete control

11  over which are going to be the cases that are candidates,

12  and maybe that's okay, but we should all understand, if

13  you are asking us how many cases would we have to try to

14  feel like we understand what the board really looks like,

15  that's not going to happen, at least not very easily if

16  the only cases that are tried are cases in which the

17  parties and the claims have been sort of gerrymandered in

18  a way that makes them seem very unrepresentative.

19          And there are effectively cases hand

20  selected by Plaintiffs because we have given them veto

21  power to exclude cases simply by saying, you know what?

22  I don't want to give up my RICO claims.  I don't want to

23  give up my claim against Supermarket Chain X.

24          THE COURT:  Well, I was going to assume that

25  both sides are going to work together.  I was going to

1          request Plaintiffs, the parties to work together, and see

2          how many you can agree on, and if you can't, you know,

3          the Plaintiffs can suggest X and the defense can suggest

4          X, and I will probably pick some from each of the list.

5                    I mean, I have done that in the prior MDL.

6          So again, you all have to figure this out.  I mean, my

7          preference is we have meaningful settlement discussions

8          now.  I think candidly everyone knows the dollar amounts

9          that the distributors and J & J are paying.  All right.

10          That's there.  It seems to me that's the benchmark.

11                    Now, I am sure these Defendants will say we

12          are going to pay far less.  The Plaintiffs probably

13          should say, well, you should pay far more, but it is

14          there.  But if you need multiple verdicts, then we got to

15          start moving toward that.

16                    And the question is, how many?  And you

17          know, I don't know what to do about these local players

18          candidly.  You all have to figure this out.  The question

19          is, how many trials do we need?  So that's a question to

20          the Plaintiffs and the Defendants.

21                    If the Plaintiffs have a suggestion as to

22          the number -- I mean, I understand how expensive this is

23          for both the Plaintiffs and -- everyone knows the

24          Plaintiffs' lawyers are laying out all this time and

25          money on the if-come.  It is a staggering amount so far,

1    but I understand that.  They will do it.

2            Defendants all have tons of money.  Clearly,

3    I can't imagine that the Defendants' strategy is to try

4    hundreds of these.  I mean, if that happens, the only one

5    left will be Wal-Mart.  There will be a monopolist.  I

6    can see why they want it, but I don't see why the others

7    would.

8            So I am assuming that there is some number

9    we need.  So I would like to hear from both sides as to

10   what you think, what number you think that is, and we

11   will start the process.

12           MR. DELINSKY:  Your Honor, this is Eric

13   Delinsky for CVS.  It is a fair question.

14           The factor that we have to consider in

15   answering that are the trials that are set in state cases

16   because they bear on the exact same question, and they

17   inform the analysis in the same way that another federal

18   trial would.

19           In other words, we currently have a trial

20   date in a West Virginia state bellwether case for

21   November.  That date may or may not remain in that case,

22   may or may not include dispensing claims as opposed to

23   only distribution claims or in them.

24           There is a date in a Florida AG suite for

25   the spring of the 2022 that includes two of us.  There is

1    another date in the spring of 2022 that includes another

2    state AG case, that includes three of us, and the list

3    goes on.

4              My only point in speaking up is to raise

5    the fact that there are these other state suits out

6    there that will provide the benchmarking that you are

7    raising.

8              THE COURT:  It may or may not.  If they go

9    forward, I have zero control over any of those cases,

10   what those judges do, what claims are in, what Defendants

11   if they ever go forward, so all I can do is the ones I am

12   in charge of, which is all the federal ones, so I agree

13   you may get some input.

14             If some of these go to trial, you can factor

15   that in.  The question is -- but I have got to make sure

16   that regardless in case none of those cases go to trial,

17   we will have a meaningful number of federal verdicts if

18   that's what the Defendants want and what they need.

19             Are you telling me you need those before

20   you can meaningfully get down and try to resolve

21   this?

22             MR. DELINSKY:  At this point in time, your

23   Honor, we do not -- and speaking only for CVS --  need

24   additional federal bellwethers.  We feel as though we

25   have a sufficient number of bellwethers as currently

1    structured.

2             THE COURT:  Except we don't know, Eric, if

3    any these are going to happen, and they don't -- I don't

4    know if they include dispensing claims, distributor

5    claims, whatever though --

6             MR. DELINSKY:  Your Honor, I understand your

7    concerns and your questions.  I am hearing them.  I would

8    just like to go back to something that Mr. Soffelmayr

9    said.

10            Speaking for CVS, I would predict, speaking

11   for the other pharmacies -- and I know it is not what you

12   had envisioned for today -- I do think it would be

13   helpful if we could have a few days at least or a week to

14   go back, look at the trial schedules, put in a submission

15   to you setting forth when they are, where they are, what

16   kinds of claims they may or may not have included.  It is

17   a puzzle piece, it is.  And it requires some thought, at

18   least on my part.

19            THE COURT:  Any of the other Defendants want

20   to say anything?

21            Do the Plaintiffs want to say anything as to

22   what they think I should set?

23            MR. RICE:  From past experience, I think you

24   should set five cases for trial for -- to work them up

25   geographically disbursed.  I know that you -- I think you

1  take senior status -- I think I read that -- so I know in

2  some MDLs, the judges that have taken senior status will

3  actually go to another jurisdiction through the proper

4  channels.

5  THE COURT:  I am not planning to do that,

6  Joe.  These will go to different judges.  They will go to

7  five different judges in those districts.  I am not going

8  to be doing that.

9  MR. RICE:  Well, we think you should take

10  five cases and work them up, that in conjunction with

11  what may or may not take place in state court, but over

12  two thirds of the cases are in your courthouse and maybe

13  more than that, a higher percentage than that.

14  So I don't think five federal cases is too

15  many at all, and we should be able to get to know where

16  everybody is at the conclusion of those.

17  THE COURT:  All right.  Well, I was actually

18  thinking of five.  All right.  Plus I have got this one,

19  and that would give six, plus whatever you get out of the

20  state court, you know, whatever happens there.

21  So I think that's what I am inclined to do,

22  just direct the parties to come up with these cases.  And

23  again, I don't want to do this.  It is a huge amount of

24  work for me and Special Master Cohen.  Everyone is paying

25  him.  This results in a huge amount of work for those

| | |
|---|---|
| 1 | five judges.  Don't blame me, but I will take that peak. |
| 2 | Again, if the Defendants -- if Defendants |
| 3 | say they need -- you know, they are not willing to |
| 4 | seriously explore resolution now, then, I have no other |
| 5 | choice, and I can't get any, you know, I can't make the |
| 6 | Defendants to talk to me privately.  They have chosen not |
| 7 | to. |
| 8 | I just have to go with what I see and what I |
| 9 | know from my experience, and if the Defendants are |
| 10 | willing to talk to me privately, I am happy to have those |
| 11 | discussions, but in the absence of that, I see no other |
| 12 | alternative. |
| 13 | So I will direct -- I am going to direct the |
| 14 | parties to come up with five cases, and hopefully, you |
| 15 | can agree on some or all of them. |
| 16 | MR. STOFFELMAYR:  Judge, it is Kaspar.  May |
| 17 | I offer a few thoughts before you issue a final order or |
| 18 | put something in writing? |
| 19 | THE COURT:  Yes. |
| 20 | MR. STOFFELMAYR:  One, is because some of us |
| 21 | have a much heavier state court trial schedule than |
| 22 | others, we may propose anyway that these five cases not |
| 23 | all necessarily be five cases that involve all four |
| 24 | Defendants because some of us will end next year with |
| 25 | three or four verdicts and some with one or two, and so |

1  that calculus will -- may be a little different depending

2  on the Defendant.

3        The other thing I would ask you to consider

4  is that we not lock ourselves into trying to try cases

5  that are simultaneously supposed to be representative and

6  only public nuisance cases only involving a small subset

7  of Defendants.

8        And I don't just mean that in the abstract,

9  but on the public nuisance cause of action, you know, we

10  already know, for example from the state court

11  litigation, that numerous state judges have rejected

12  those claims.

13        They said there can't be a public nuisance

14  claim like that under the laws of their case, and in some

15  states, that has conflicted with orders in the MDL Court

16  under the same state law.  And even so, unless you are in

17  a state where the law is very clear and there are only a

18  handful of those, anyone is going to know that a public

19  nuisance verdict is going to be very vulnerable on appeal

20  just on the question whether a public nuisance claim even

21  exists here.

22        So I would suggest we, at least, have the

23  option of thinking about whether there are instances

24  where the, quote unquote, representative case we should

25  be trying to make it actually representative isn't

1     exclusively a public nuisance case.

2           THE COURT:  I really don't care.  If you

3     want to forget public nuisance, you want to go with RICO

4     all around the country, RICO is the same everywhere,

5     federal law.  That's fine.  You want to forget public

6     nuisance and just go RICO, all right, fine.

7           MR. STOFFELMAYR:  And I hope you are not

8     misunderstanding me.  I am not saying, telling anyone is

9     saying we want to forget public nuisance.  I was just

10    asking the Court not to enter an order saying we are

11    absolutely limited on all sides to public nuisance.

12          THE COURT:  Well, but I think they have got

13    to include all the national Defendants.  The idea of

14    having two or three -- everyone should be in.  If you

15    want to include a bunch of regional people -- I don't

16    think you should be cluttering these trials up with too

17    many Defendants.

18          MS. MOORE:  Your Honor, this is Kelly Moore

19    for Rite Aid.  I would just point out that Rite Aid has

20    never been a national chain.  At its biggest, it was in

21    30 states, and currently, it is in 18.  So I don't know

22    it is in the same category.

23          THE COURT:  Well, look, I can't -- you know,

24    you all are going to have to work this out.  This is why

25    -- I don't want to do any of these other trials, but

1    again, the pharmacists aren't giving me a lot of choice.

2    The pharmacies are not giving me much choice.  That's why

3    I have got the clients on here.  All right.  The clients

4    have to decide what they want to do.

5              They want to hemorrhage money trying these

6    cases all over the country in state and federal court

7    forever, they have a legal right to do it until they

8    drop, go bankrupt, or win them all, the Plaintiffs might

9    quit.  But no other -- I can say categorically no other

10   Defendants in this MDL is operating that way.

11             They have all been willing to, at least

12   seriously, explore resolution.  Some have gone into

13   bankruptcy because that was their only option, but I

14   believe every other Defendant expects a willingness to

15   explore resolution, but if the pharmacies choose not to,

16   that's their right.

17             Okay.  But, then they are going to be

18   litigating all over the country.  That's the only thing I

19   can do.  So you all figure this out.  You get me the

20   cases.  If you don't get them, I will pick them myself.

21   All right.  So --

22             MS. MOORE:  Your Honor, once again, Kelly

23   Moore --

24             THE COURT:  -- if you figure out something

25   better and you want to engage in some significant

1    settlement discussions and you want my help, everyone

2    knows how to reach me.

3              Yes, Kelly?

4              MS. MOORE:  Once again, for Rite Aid, your

5    Honor, I don't think it is a fair assumption to say the

6    Defendants have not been willing to engage in serious

7    settlement negotiations.  I know your Honor is not fully

8    aware of the negotiations and discussions with

9    Judge Gandhi, but from my standpoint, I would not say

10   that's an accurate or fair characterization.

11             THE COURT:  Well, I meant to say, it is

12   either that or the parties are so far apart in the way

13   they see things that there wasn't anything to do, and

14   that they need verdicts.  So I said it is one of the two.

15             But again, since, you know -- I would only

16   know if I were involved I can only guess, speculate.

17   That's put me at a real disadvantage, but they need to

18   understand that they are the ones who put me at the

19   disadvantage because I have to operate without knowledge,

20   so you can't complain that I don't have knowledge, full

21   knowledge.  That's on you.

22             I got to do the best I can.  I have this

23   Herculean task that the judicial branch has given me;

24   didn't ask for it, but I will do it the best I can.  So I

25   am thinking that we need five federal cases.  I am hoping

1    that over the next few weeks the parties will sit down

2    and figure out which are the best ones and what -- you

3    know, again, maybe some are public nuisance, and some are

4    RICO.  Maybe they are all public nuisance.  Maybe they

5    are all RICO.  I don't think it should be both public

6    nuisance and RICO.  I think that makes the case too

7    complicated.  You only get one set of damages anyway.

8               So I was going to suggest to give the

9    parties until March 31st.  That's about three weeks to

10   get me -- to work together to try and get me five cases,

11   and you know who the Plaintiffs are going to be, who the

12   Defendants are going to be and what causes of action, and

13   if you agree on all five, that's fine.

14               If you agree on two, then I will need

15   Plaintiffs' list of three and Defendants' list of three,

16   and I will need enough data in there, so I know what you

17   are talking about and why you think that's a good case so

18   I can decide, you know, fill up the other three.

19               If you agree on only one, then it is four

20   and four.  If you agree on none, then you each give me

21   your five, and I will pick them.

22               And again -- what I thought is, we will have

23   our next status call I am thinking April 7th, Wednesday,

24   April 7th, at noon.  That will give me a week to study

25   it, and I may have some questions at that time if there

1    are follow-up questions to help me decide, and then, at

2    that conference or shortly thereafter, we will finalize

3    the list of five, and then, I will direct the parties to

4    come up with a litigating schedule.

5            And off you will go.  Again, I really don't

6    want to do this, but unless someone has a better idea, I

7    don't see any other thing I can do.  Again, I am mindful

8    of the tremendous expense on both sides that this will

9    entail, and from where I sit, I don't think -- I think

10   everyone knows enough to seriously, at least, try to

11   settle these cases, but that's me, and I respect the fact

12   that one side or the other thinks they need a lot more

13   data, this is the way to get it.

14           And so I know there was a motion that the

15   Plaintiffs filed about adjusting time for expert

16   depositions.  I don't care.  I mean, when you figure out

17   -- you know, we figure out these extra trials, there is

18   five additional trials, you know, the parties should

19   confer.  The point the Plaintiffs are making I agree

20   with.  It is wasteful, wasteful time and money to depose

21   the same expert multiple times on the same testimony.

22           If there is generic testimony that applies

23   to all five of these trials, well, you should only depose

24   the expert once on that.  And if there is case specific

25   things for a particular county, obviously, that has to be

1    probed for each time.

2              I think that's the thrust of the Plaintiffs'

3    motion, but I am not sure what they propose as the way to

4    do it, and I will just leave that to the parties to work

5    out.  If you can't and you need Special Master Cohen's

6    help, he can do it, but I am not going to change anything

7    at the moment.

8              All right.  Anything else that anyone wanted

9    to bring up?

10             MR. STOFFELMAYR:  Not today for the

11   Defendants.  Thank you, Judge.  Caspar Stoffelmayr

12   speaking.

13             THE COURT:  All right.  Anything from the

14   Plaintiffs' side.

15             MR. WEINBERGER:  This is Pete, your Honor.

16   No, nothing more from the Plaintiffs.

17             THE COURT:  All right.  And again, if the

18   Defendants choose to reconsider my offer to engage

19   everyone -- and by everyone I mean both the PEC and the

20   attorneys general because, again, there is no way to do

21   -- every time in this MDL over the last four years anyone

22   has tried to do something piecemeal, it has run aground,

23   and it always will.

24             So if the Defendants want my help trying to

25   bring everyone together, you know, it is always

1    available.  I am available.  So you know how to reach me.

2              Okay.  Thanks, everyone.  Stay safe.  We are

3    adjourned.

4              (Hearing concluded at 2:08 p.m.)

5              - - - - -

6

7              C E R T I F I C A T E

8              I, George J. Staiduhar, Official Court

9    Reporter in and for the United States District Court,

10   for the Northern District of Ohio, Eastern Division,

11   do hereby certify that the foregoing is a true

12   and correct transcript of the proceedings herein.

13

14

15

16              s/George J. Staiduhar
                George J. Staiduhar,
17              Official Court Reporter

18              U.S. District Court
                801 W. Superior Ave., Suite 7-184
19              Cleveland, Ohio 44113
                (216) 357-7128

20

21

22

23

24

25

```
 1                 IN THE DISTRICT COURT OF THE UNITED STATES
                     FOR THE NORTHERN DISTRICT OF OHIO
 2                             EASTERN DIVISION


 3
         IN RE:                        Case No. 1:17MD2804
 4       NATIONAL PRESCRIPTION         Cleveland, Ohio
         OPIATE LITIGATION
 5                                     April 7, 2021
                                       12:03 p.m.
 6

 7

 8                          - - - - -

 9


10          TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

11            BEFORE THE HONORABLE DAN A. POLSTER,

12             UNITED STATES DISTRICT JUDGE.

13

14                          - - - - -

15

16

17

18

19   Official Court Reporter: Susan Trischan,RMR,CRR,FCRR,CRC
                              7-189 U.S. Court House
20                            801 West Superior Avenue
                              Cleveland, Ohio  44113
21                            216-357-7087
                              Susan_Trischan@ohnd.uscourts.gov
22

23

24

25
```

APPEARANCES:


For the Plaintiffs:            Peter H. Weinberger, Esq.
                              Hunter J. Shkolnik, Esq.
                              Steven J. Skikos, Esq.
                              Troy Rafferty, Esq.
                              W. Mark Lanier, Esq.
                              Paul Farrell, Esq.
                              Salvatore C. Badala, Esq.
                              Joseph Rice, Esq.
                              Jayne Conroy, Esq.




For Walgreen Defendants:      Kaspar J. Stoffelmayr, Esq.
                              Kate Swift, Esq.


For CVS Defendants:           Eric R. Delinsky, Esq.
                              Sasha Miller, Esq.
                              Graeme Bush, Esq.

For HBC/Giant Eagle
Defendants:                   Robert M. Barnes, Esq.
                              Josh Kobrin, Esq.
                              Scott D. Livingston, Esq.


For Rite Aid Defendants:      Kelly A. Moore, Esq.
                              John Lavelle, Esq.


For Walmart Defendants:       John Majoras, Esq.
                              Tina M. Tabacchi, Esq.
                              Tara Fumerton, Esq.



ALSO PRESENT:                 Special Master David Cohen


Proceedings recorded by mechanical stenography;
transcript produced by computer-aided transcription.

1    <u>WEDNESDAY, APRIL 7, 2021, 12:03 P.M.</u>

2                    THE COURT:  All right.  Dan Polster calling

3    in.

4                    We're all set?

12:03:43  5         THE CLERK:  We are all set, Judge.

6                    I've made sure that your team is on and Sue

7    Trischan is on, and I've gone through the list.  I'll

8    e-mail it to you when you're done to save you time.

9                    THE COURT:  Okay.  Thanks.

12:03:53 10         All right.  Well, good afternoon, everyone.

11                   This is our monthly Track Three status

12   call.  I hope everyone had a good holiday.

13                   There are a number of things I want to

14   cover.

12:04:07 15         First, in the -- in the course of

16   identifying the potential cases for the five Bellwethers,

17   I learned for the first time that there are a number of

18   cases in the MDL including pharmacies when they have a

19   zero percent market share, and I thought that, you know,

12:04:32 20  I had issued prior orders to clean up the docket to take

21   care of this.

22                   It obviously hasn't happened.

23                   I planned to raise this independent of the

24   defendants' motion, so I guess I'd like to hear from the

12:04:48 25  plaintiffs why do we still have all these cases pending

1    against pharmacies when they have zero market share in

2    jurisdictions?

3                    MR. RICE:  This is Joe.

4                    THE COURT:  Joe, you're breaking up.  I

12:05:14  5    can't hear you.

6                    MR. RICE:  There are firms that we got

7    information from, and most of the information we got back

8    was related to the -- basically, the blue highway

9    migration of pill, those kind of theories.

12:05:31 10                    Frankly, when that mediation ended, that

11    investigation ended.

12                    We do think it's an appropriate thing for

13    us to try to pick back up.  Rite Aid's given us the

14    information that allows us to contact the law firms.

12:05:48 15                    We'd like to talk with Rite Aid about

16    getting some type of affidavit or document about the

17    states they were in and when they were there, so that we

18    can attach that to a letter that we would send out to law

19    firms telling them that the Court's made this inquiry,

12:06:07 20    and see what explanations we get or maybe what success we

21    have in resolving the issue.

22                    If not, it may be a situation where the

23    Court has to consider some type of a show cause process.

24                    THE COURT:  Well, I can do that.

25                    MR. RICE:  As to the pharmacies, it appears

1    to be --

2                    THE COURT:  I can do that, Joe, but it

3    isn't just Rite Aid.

4                    MR. RICE:  -- a much smaller volume, but we

12:06:32  5    don't have the information to know who to reach out to.

6                    So if they would give us additional

7    information that allows us to contact the counsel, then

8    we're certainly prepared to look into that for them as

9    well.

12:06:47  10                    THE COURT:  Well, it goes beyond Rite Aid,

11    Joe, because there was one case which the defendants

12    designated and the national pharmacies all had zero and

13    then the plaintiffs dismissed that case, and then the

14    defendants put another one like that on their list where

12:07:04  15    they are all zero, so it isn't just Rite Aid.

16                    There are apparently cases in this MDL

17    where none of the -- none of the national pharmacies have

18    any market share and they are still named, so I --

19                    MR. RICE:  We do not know who the counsel

12:07:19  20    are for the -- Rite Aid gave us the counsel list in their

21    chart.  The other defendants have just given us case

22    numbers.  So we just need to work with them to get the

23    data that they know to identify the counsel for the case

24    so we can reach out.

12:07:34  25                    We understand it's all defendants; it's not

1    just Rite Aid.

2              THE COURT:  Well, I want it -- I want to

3    right now get a process to quickly get, get this cleaned

4    up, and if I have to do it by show cause order, I'll do

12:07:51 5   it, but that's cumbersome and expensive.

6              So I'm going to direct that counsel work

7    together.  Apparently defendants all know these cases

8    where they have zero market share.  Identify those for

9    the plaintiff, and I -- and in my view it shouldn't just

12:08:16 10  be dismissal without prejudice.  If the defendants have

11   no market share, they shouldn't be in the case, period.

12             If they've got no pharmacies, no jury's

13   going to find them responsible under RICO or public

14   nuisance if they have no pharmacies in the jurisdiction.

12:08:32 15            So it's April, April the 7th.  I'm going to

16   direct that this be done by the end of the month, or else

17   if it's not, I'm going to have to just issue a show cause

18   order and make each one of these lawyers come into court

19   and say why their case should be maintained against these

12:08:55 20  pharmacies.

21             So I'm going to just direct by noon on

22   Friday, April 30th, that this be done and that the

23   parties, you know, submit some report.

24             MR. RICE:  Judge, we're certainly going to

12:09:12 25  start on it.

```
          1              Part of the timing is when we get the data

          2    from the defendants as to who the counsel is, where the

          3    case is filed.

          4              We can start on the Rite Aid immediately

12:09:32  5    because they gave us that.

          6              THE REPORTER:  I'm sorry, who was that just

          7    talking?

          8              MR. RICE:  I'm sorry.

          9              Joe Rice.

12:09:34 10              THE COURT:  All right.  Well, Rite Aid is

         11    in only about 18 states.

         12              So I want to make sure -- good point -- so

         13    Sue can get the names, when someone speaks, they should

         14    identify themselves.

12:09:44 15              So far it's just been me and Joe Rice.

         16              Okay.  So I want the defendants to promptly

         17    submit to the PEC the case names and who the plaintiffs'

         18    lawyers are.

         19              And then the PEC is going to go back and

12:10:03 20    contact these lawyers and, you know, I guess I'll want

         21    some sort of a report by April 30th as to how this is

         22    going.

         23              And if it's not going anywhere, I'm going

         24    to have to issue a bunch of show cause orders, but I'd

12:10:20 25    rather not do that.
```

1    Okay.

2    MR. RICE:  And, Judge, to follow that, I'm

3  not certain they gave us the Court for all of the cases,

4  but if they did, then most times -- some of these, I

12:10:33  5  don't know if these are all federal-filed cases or some

6  of them are state-filed cases.

7    So we need that as well.

8    THE COURT:  All right.  Well, the

9  state-filed cases -- well, you know, I don't have control

12:10:43  10  over them, but we might as well get those cleaned up as

11  well.

12    MR. RICE:  We'll include the State Court

13  filings.

14    THE COURT:  So we'll just do that.

12:10:53  15    All right.  So selection of the five cases,

16  you know, my plan was to take, you know, at least two

17  from the plaintiffs and two from the defendants and then

18  figure out some, some way to get the fifth because that

19  seemed to be the fairest.

12:11:10  20    And that was Special Master Cohen's idea to

21  ask each side which -- I guess which were the two cases

22  they disliked the least, and I want five, and I could use

23  that for four.

24    The plaintiffs did that, and they

12:11:31  25  identified which of the two defendants' cases they

1   disliked the least, so I'm going to pick those.  And that

2   was Cobb County, Georgia and Durham County, North

3   Carolina.

4           And in picking these cases, I mean, one of

12:11:49  5   the things I'm trying to do is get as many different

6   circuits as possible.

7           And, you know, I want to clarify something:

8   You know, in the pharmacies' motion to reconsider, there

9   was a suggestion that I was somehow punishing them or

12:12:04  10   penalizing them because they didn't want to settle these

11   cases now.

12           And I'm not doing that at all.  It's, you

13   know, each pharmacy has the right to decide when or if

14   they ever wish to engage in settlement discussions, but

12:12:22  15   in the meantime I'm electing to provide a meaningful

16   number of opportunities for the plaintiffs to test their

17   theories and facts supporting liability, and the

18   pharmacies to test their defenses.

19           And if the pharmacies win all these trials,

12:12:40  20   presumably the plaintiffs will give up.  If not, these

21   verdicts should both serve to give both sides sufficient

22   data to engage in meaningful settlement discussions, and

23   they will also give a number of Courts of Appeal the

24   opportunity to address the important legal issues that

12:12:54  25   these cases raise under the Controlled Substances Act.

1        So that's why I'm trying to get cases that

2   involve many different circuit courts, so if need be,

3   they can all weigh in on these legal issues.

4        So obviously Cobb County is the Eleventh

12:13:15  5   Circuit; Durham County, North Carolina is the Fourth.  So

6   then I need three other cases.

7        And then I thought I would -- I would take

8   from the plaintiffs' list Santa Fe, New Mexico, that gets

9   the Tenth Circuit, and Tarrant, I think it's Tarrant

12:13:37 10   County, Texas which gets the Fifth Circuit.

11        Now, you know, and there are a couple of

12   these, one or two of these cases that Rite Aid is not in.

13   Well, that's okay.  Rite Aid, you know, is only in 18

14   states so you wouldn't expect them to be in all of the

12:14:04 15   Bellwethers, so that isn't a problem.

16        That leaves a fifth case.  And I have been

17   thinking that if either side identified a case in the

18   Southern District of Ohio, I would strongly consider that

19   case because that may be the least expensive to work up

12:14:26 20   because, of course, all dispensing data for the State of

21   Ohio has already been produced in Track Three.  So if we

22   have another Ohio case, it's all there.

23        The plaintiffs suggested Montgomery County,

24   Ohio, so I think I'm going to take that for the fifth

12:14:42 25   case.

1          So that gives us -- that gives us the five.

2             Now, I'm going to ask the parties to

3  generate litigating schedules, and some of these cases

4  involve where the plaintiffs in those cases have named

12:15:08  5  pharmacies beyond the, you know, the four national chains

6  plus Rite Aid, beyond what I'll call the Big Five.  And

7  that's okay.  Those pharmacies are in.  I think Kroger's

8  are in some and Albert sons may be in others, one or two

9  others.

12:15:25 10        So it's up to the lawyers if they want to

11  keep those pharmacies in the case or not; if they want to

12  dismiss them, settle, whatever.  But obviously when

13  you're generating litigating schedules, if those

14  pharmacies are in, you're going to have to involve

12:15:39 15  lawyers for those to work them up.

16         And I would think that the schedules for

17  four, the non-Ohio cases, should be the same.  It may be

18  it seems to me you can have a shorter period of discovery

19  for the Montgomery, Ohio case because, candidly, there

12:16:00 20  shouldn't be much more discovery the plaintiffs need from

21  the defendants.  The defendants, of course, will need

22  county-specific discovery from the plaintiffs.

23         And, you know, build in dispositive

24  motions, summary judgment and *Daubert*.

12:16:19 25         I -- my plan is to keep these cases, at

1    least through discovery.  I think it's more efficient

2    that way.  I will discuss with Judge Caldwell, who shares

3    the JPML, her preference on whether I keep the cases all

4    the way through dispositive motions.

12:16:38   5            I know that my five colleagues around the

6    country would prefer that.  It's a lot more work for me,

7    but I'll, you know, I'll see what Judge Caldwell says.

8            Now, of course, I need to give the

9    defendants the opportunity to file whatever motions to

12:16:54  10    dismiss they want to file on these five Bellwethers, but

11    I want to work out a process to streamline these.

12            We don't need to waste time and money

13    filing the same -- the same grounds that were filed in

14    Track Three.  We should be able to work out a stipulation

12:17:15  15    that any, any arguments on motions to dismiss the

16    pharmacies made in Track Three, presumably they would

17    make in all five of these Bellwethers.  And those

18    arguments would be preserved because the Court -- the

19    defendants -- the plaintiffs, I'm sorry, would make the

12:17:34  20    same responses and the Court would make the same ruling.

21            So I'm going to ask the parties to, you

22    know, generate a stipulation for that.

23            Obviously the defendants are free to make

24    any new arguments on motions to dismiss that they want,

12:17:47  25    and I'll entertain those after they're fully briefed.

1          And again, if the plaintiffs -- if the

2     plaintiffs choose to dismiss or settle or whatever with

3     the pharmacies that have been named in these cases

4     outside of the main five, that's up to them.  Otherwise,

12:18:11    5     they're -- they're in there.

6          And I have strongly suggested that for

7     these five cases that plaintiffs elect one theory of

8     liability, RICO or public nuisance, but not both.  And I

9     think that's still my directive.  I think the idea is to

12:18:29   10     make these as straightforward as possible.

11          So what do you think is a reasonable time

12     frame for producing the litigating schedule?  Obviously

13     if the parties disagree, you can point out where you

14     disagree and I'll set it, but hopefully you can agree.

12:18:59   15          MR. RICE:  Judge, this is Joe again.

16          I think we'd like to have a few days to

17     talk with the local counsel on each of these cases and

18     the clients in the cases, and then to get some feel for

19     the timing, explaining to them what will be involved, and

12:19:18   20     then we should be able to talk the first of the week with

21     the defendants.

22          THE COURT:  Well, I was going to give at

23     least two weeks for that, two to three weeks.

24          Does that, you know -- I was thinking,

12:19:32   25     like, two weeks or maybe three weeks to do this.

Case 1:17-cv-02804-DAP Doc #: 365-1 Filed: 04/08/24 39 of 43. PageID #: 10849

1        I want to give enough time so you try and

2    work things out.  And if you can't, then you each

3    propose -- you know, point out where you disagree and

4    then I'll obviously pick it.  You know, we have -- my

12:19:51  5    recollection is that Track Three, there were a couple

6    differences, but largely you agreed.

7        So I mean, two weeks would be April 21st.

8    Three weeks, April 28th.  I -- you know, given that there

9    are a lot of individual counsel, you know, how is three

12:20:14 10    weeks, April 28th?  Does that seem reasonable for all

11    sides?

12        MR. STOFFELMAYR:  Judge, it's Kaspar

13    Stoffelmayr for defendants.

14        Yeah, I think three weeks is probably

12:20:25 15    better than two weeks if we need to involve some

16    additional parties and lawyers on our side as well, and

17    these are the kinds of issues that I think we typically

18    had pretty good success working with Special Master Cohen

19    on.

12:20:37 20        We haven't agreed on everything, but we've

21    been able to narrow areas of disagreement pretty

22    successfully so what the Court has to decide is, you

23    know, contained.

24        THE COURT:  Okay.  All right.  Well, that's

12:20:48 25    fine, Kaspar.  I appreciate that.  And that's been the

1    practice in the past.

2              There were a couple areas where there were

3    a couple months' difference, and I think I ended up

4    splitting them is what I did, largely.

12:21:01  5              So why don't we just say by noon on April

6    the 28th, why don't you -- you know, hopefully you can

7    file your proposed schedules and where you disagree,

8    point out where you disagree.  And again, it strikes me

9    that the Southern District of Ohio case, you may need

12:21:24 10   less time for discovery.

11             So but, you know, you can discuss that.

12             And obviously work with Special Master

13   Cohen, if that will help.

14             I will be issuing my ruling soon, hopefully

12:21:48 15  this week, on the two objections to Special Master

16   Cohen's discovery order.  That's fully briefed, and I

17   will get out a ruling shortly.

18             I think that's the only item pending in

19   Track Three.  So I'll get that out shortly.

12:22:12 20             And I think that was all I had on my list,

21   other than set next month's conference.  And I'm

22   proposing -- I know we've been generally doing these on

23   Wednesday.

24             The first Wednesday of the month would be

12:22:33 25  May the 5th.  I am going to be in trial that day so it's

1    not a good day for me to do it, so I'm proposing 1:00

2    o'clock on Friday, May the 7th.

3             After this May, we'll probably go back to

4    Wednesdays, but unless I'm in trial.

5             So how is Friday, May the 7th at 1:00

6    o'clock?  And then if we do that, we'd have a joint

7    status report noon on Thursday, the 6th.

8             MR. FARRELL:  Thank you, Judge.  Judge,

9    this is Paul Farrell.

10            I start a trial on May 3rd so I may have to

11    beg leave to miss the next status conference.

12            THE COURT:  Yeah, that's fine.

13            I mean, you know, if people are in trial,

14    they're in trial.  I know that case is set to go that

15    week and I expect -- is the Judge going all days or just

16    some days?

17            MR. FARRELL:  My understanding is we go

18    Monday through Thursday and then half days on Fridays.

19            THE COURT:  Okay.  All right.  If you're in

20    trial, that's fine.  Anyone in trial, you don't need my

21    permission to be excused.  That's pretty obvious.

22            All right.  So I know that that case is

23    going forward, and I guess the New York case is set to go

24    forward in June if that Judge gets permission to try his

25    case, June 8th, or whenever -- whenever he gets

1    permission.

2             I know Judge Garguilo has been very eager

3    to start that trial.

4             MS. CONROY:  Jayne Conroy.

12:24:26  5             That's correct, Your Honor.

6             THE COURT:  And a number of pharmacies are

7    in that.

8             All right.  I think that was -- that was

9    everything I wanted to cover.

12:24:34 10             Does anyone else have anything they want to

11   bring up?

12             MR. STOFFELMAYR:  Judge, it's Kaspar.

13             Not from our end.

14             Thank you.

12:24:51 15             MR. WEINBERGER:  Nothing further.  Nothing

16   further.

17             Pete Weinberger.

18             THE COURT:  All right.  And again, the

19   Court is always available to assist in any settlement

12:25:01 20   discussions, if both sides want me to do it.

21             So everyone knows how to reach me.  But I'm

22   not going to, you know, I'm not going to push it.  It's

23   up to -- up to each side when and if there's a resolution

24   in the discussions with the Big Three distributors and

12:25:23 25   Johnson & Johnson, and when and if.  And if there is,

1    people will see what structure those four defendants are

2    using with the plaintiffs, and so people will see it and

3    they can look at it.

4              Until that happens, obviously no one can

12:25:41  5    see any structure or know any details.  It's all

6    confidential.  So that's just the reality.

7              All right.  Stay safe, everyone.

8              Everyone who hasn't gotten their vaccine,

9    it's my strong recommendation you do.  I think it's a

12:25:57 10    public service announcement, but in my view we are all

11    safer the more people who get vaccinated, so I'm using my

12    bully pulpit to encourage that.

13              Okay.  Thanks, everyone.

14              And I'll talk to you next month.

12:26:14 15              (Proceedings concluded at 12:26 p.m.)

16                        -  -  -  -

17              C E R T I F I C A T E

18              I certify that the foregoing is a correct
     transcript from the record of proceedings in the
19    above-entitled matter.

20

21    **/s/Susan Trischan**
     /S/ Susan Trischan, Official Court Reporter
22    Certified Realtime Reporter

23    7-189 U.S. Court House
     801 West Superior Avenue
24    Cleveland, Ohio 44113
     (216) 357-7087

25