# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| In re National Prescription Opiate Litigation | MDL No. 2804 |
| THIS DOCUMENT RELATES TO: | Case No. 17-md-2804 |
| *Case Track 12: City of Rochester v. Purdue Pharma, L.P., No. 19-op-45853* | Judge Dan Aaron Polster |
| | (Jury Trial Demanded) |

## ANSWER BY DEFENDANTS EXPRESS SCRIPTS, INC., AND ESI MAIL PHARMACY SERVICE, INC.

Defendants Express Scripts, Inc. (**Express Scripts**), and ESI Mail Pharmacy Service, Inc. (**ESI Mail Pharmacy**) (together, the **Express Scripts Entities**), hereby answer the Original Complaint (**OC**) (Rochester Dkt. No. 1-5) and the Supplemental Amended Complaint (**SAC**) (Rochester Dkt. No. 110) of Plaintiff City of Rochester (the **City**) as follows:

## INTRODUCTION

1.      Express Scripts is a leading pharmacy benefit manager. Its mission is to help its clients—employers, labor unions, government agencies, and health plans—provide their plan members with access to safe and effective medications at affordable prices.

2.      Contrary to the City's allegations, Express Scripts did not cause a prescription opioid epidemic and did not collude with Purdue or other prescription opioid manufacturers to increase the supply of prescription opioids. And the City's assertions that Express Scripts took no actions as new information came to light about prescription opioids is belied by the facts. As Judge Polster concluded over five years ago (MDL Dkt. No. 1848 at 1–2):

> As part of their nationwide offerings available to all commercial clients, each PBM Defendant [including Express Scripts] offers programs or utilization-management criteria to its clients that are intended to help combat opioid abuse and addiction, and to encourage safe prescribing practices in alignment with the CDC Guideline. . . . These limitations, adopted voluntarily at various times by each PBM Defendant, are a contribution to our national effort to help address risks related to opioid abuse.

> The Court deeply appreciates the actions taken by the PBM Defendants to offer these limitations to their clients and appreciates Plaintiffs' willingness to discuss the issues with the Court. The Court understands that the PBM Defendants do not manufacture, market, or prescribe opioid medications. It also understands that plan sponsors decide whether to adopt the programs that the PBM Defendants offer. The Court encourages plan sponsors—as part of their own efforts to combat opioid abuse—to consider and adopt for their members, where appropriate, the opioid programs that the PBM Defendants offer.

3.      For decades, Express Scripts has properly performed its role, including by publishing information to raise awareness about prescription opioids and by offering its clients clinically sound formularies and utilization management options with respect to prescription opioids. In 2003, for instance, Express Scripts made a presentation to plan sponsors at its annual client conference on the value of implementing a prior authorization policy on OxyContin. Purdue was livid. Yet Express Scripts offered that same prior authorization policy to its clients—which Express Scripts would not have done if (as the City falsely alleges) Express Scripts was colluding with Purdue to promote OxyContin use. Through steps like this—and many more Express Scripts has taken over the past two decades, including its award-winning Advanced Opioid Management

1

program—Express Scripts appropriately responded to the risks posed by prescription opioids as they became known over time.

### The Role of a PBM

4.      A PBM's role, however, is limited. Express Scripts does not manufacture, market, distribute, dispense, prescribe, sell, or ever come into possession of prescription opioids or any other medications. Unlike manufacturers, distributors, and pharmacies, PBMs are outside the closed system established by the Controlled Substances Act (**CSA**) and regulated by the U.S. Drug Enforcement Agency (**DEA**) for disseminating prescription opioids and other controlled substances. Unlike doctors, PBMs do not diagnose or examine patients and do not prescribe medications. And unlike retail pharmacies, PBMs never see the patient or person picking up the medication and rarely know why they were prescribed it. Instead, the PBM only electronically "sees" that the patient has a valid prescription and "adjudicates" whether that prescription is covered by the patient's health plan.

5.      What PBMs do is help their clients administer prescription-drug benefits for their members. Express Scripts does not control those benefits. Express Scripts implements the various plan designs set by its clients, who control the parameters of the prescription drug coverage offered. Client choice is central to Express Scripts' business. Express Scripts offers options to assist its clients with management of prescription-drug benefits, but it is up to plan sponsors to choose what benefits to provide their plan beneficiaries and how to manage those benefits. Plan sponsors choose which medications their plans will cover (*i.e.*, which medications are on formulary), under what circumstances (*i.e.*, what utilization management and clinical programs, if any, are in place), and what the members' cost-share will be for any given prescription (*i.e.*, flat copay, coinsurance, deductible, etc.).

### Opioids are Clinically Necessary for Formularies

6.      Despite the City's rhetoric in its complaint, prescription opioids are clinically necessary on a formulary—indeed, the City itself includes prescription opioids on the formulary it sponsors for its employees. The U.S. Food & Drug Administration (**FDA**) has approved prescription opioids as safe and effective medications for the treatment of pain—and they remain so approved today. For many individuals suffering pain, prescription opioids are the best therapeutic option currently available on the market. That is why federal laws, such as Medicare Part D and the Affordable Care Act, require prescription opioids to be included on formularies for

plans governed by those laws. It is also presumably why the State of New York includes prescription opioids on its Medicaid formulary and the City of Rochester includes prescription opioids on the formulary for its employees. Indeed, every formulary Express Scripts is aware of—whether developed by PBMs, plan sponsors such as the City of Rochester, or government officials—includes prescription opioids.

7.     Consistent with these broadly accepted and government-mandated medical standards, the standard formularies that Express Scripts offers to its clients include prescription opioids because the independent doctors and pharmacists on its National Pharmacy and Therapeutics Committee (**P&T Committee**) determined, based purely on clinical considerations, that it is appropriate to include prescription opioids on the formulary. Three principles guide formulary development at Express Scripts: (1) clinical appropriateness of the drug, not cost, is the foremost consideration; (2) the prescribing physician always makes the final decision regarding an individual patient's medications; and (3) Express Scripts develops clinically sound formularies based on evaluations of independent physicians. The primary decisionmaker in formulary development at Express Scripts is the P&T Committee, which is composed of independent, actively practicing physicians and pharmacists who are not employed by Express Scripts. The P&T Committee makes its formulary decisions from a purely clinical perspective. It does not have access to, nor does it consider, any information regarding manufacturer rebates. And it does not use price, in any way, in making formulary placement decisions. Instead, the P&T Committee focuses solely on what medications are clinically appropriate for a formulary.

### Express Scripts Has Long Offered Its Clients Utilization Management and Clinical Tools to Restrict Prescription Opioids

8.     Although prescription opioids belong on a formulary, Express Scripts clients can implement utilization management tools and clinical tools to restrict the utilization of prescription opioids where clinically appropriate. For over two decades, Express Scripts offered its clients various standard utilization management tools for prescription opioids. Those offerings, which have evolved over time as the understanding of prescription opioids has evolved, include quantity limits, step edits, prior authorizations, and drug utilization review. For example, starting in the 1990s, Express Scripts offered its clients an Addictive Substance program, which would notify prescribers when patients exhibited potential signs of opioid abuse. In 2002, even before the FDA warned Purdue about mis-marketing the safety profile of OxyContin, Express Scripts began

offering its clients a prior authorization policy that would require strict clinical criteria to be met—such as a cancer diagnosis—before OxyContin could be authorized beyond an initial quantity limit.

9.     Clients can also develop their own custom restrictions on prescription opioids. For example, Express Scripts worked with its client Blue Cross Blue Shield of Massachusetts to implement a custom program for prescription opioids, including custom utilization management rules, that took effect in July 2012. A 2016 study by the Centers for Disease Control and Prevention (**CDC**) found "a 6%–9% annual decline in the percentage of members on short-acting and long-acting opioid prescriptions and in opioid prescribing rates after implementation" of the program.[1]

10.     In addition to the tools already mentioned, Express Scripts also established numerous other programs that addressed the risks posed by prescription opioids. For example, since the 1990s, Express Scripts has offered its clients concurrent drug utilization review (**CDUR**), which sends dispensing pharmacists real-time alerts of safety concerns with a medication. Alerts for prescription opioids include adverse drug-drug interactions, high dosage, maximum quantity per day, opiate naïve,[2] and therapy duplication. Of course, it is ultimately up to a patient's doctor and pharmacist what medication is prescribed and dispensed. Express Scripts can and does flag for the pharmacist any benefit claim that exceeds plan limits or that triggers CDUR alerts. But pharmacists can override PBM warnings, and even when the PBM rejects coverage, retail pharmacists can still fill a prescription if the patient pays in cash.

11.     As yet another example, Express Scripts has long operated a fraud, waste, and abuse program (**FWA**). FWA uses analytics to monitor and, when appropriate, to investigate pharmacies to detect potentially improper dispensing, fraudulent billing, or "pill-mills." Clients may also choose to enroll in an enhanced fraud, waste, and abuse program (**eFWA**), which uses analytics to monitor prescribers and members for patterns of abnormal utilization or prescribing and to take steps to prevent patients from doctor-shopping, such as by allowing clients to "lock" members into a single pharmacist and/or physician. Express Scripts also offers RationalMed, a retroactive drug utilization review program which evaluates medical, pharmacy, and laboratory data to detect

---

[1] *See* Macarena C. García et al., *Declines in Opioid Prescribing After a Private Insurer Policy Change—Massachusetts, 2011–2015*, 65 Morbidity & Mortality Wkly. Rep. 1125, 1127 (Oct. 21, 2016), https://www.cdc.gov/mmwr/volumes/65/wr/pdfs/mm6541a1.pdf.

[2] "Opiate naïve" generally means someone who has not used, or filled a prescription for, opioids within a certain period of time.

critical patient health and safety issues, which are then addressed through timely notification to physicians, pharmacies, patients, and case managers.

12. Despite this decades-long record, the City erroneously claims that it was only *after* the opioid crisis reached its peak, and *after* the U.S. Senate and state governments allegedly began to investigate the Express Scripts Entities' alleged role, that the Express Scripts Entities launched tools to restrict prescription opioid utilization. That is demonstrably false.

13. In 2017, Express Scripts combined many of its opioid-related offerings into a one-stop program, Advanced Opioid Management (**AOM**).[3] AOM was the first solution of its kind offered by a PBM to try to influence behavior at every touchpoint—at the doctor's office, the pharmacy, and with the patient. The three-pronged approach includes holistic initiatives such as utilization management tools, case management services, and data analytics to identify and intervene in cases of potential opioid misuse. With more than 17.4 million members enrolled by 2019, clients using Express Scripts' AOM program have seen significant outcomes. The Pharmacy Benefit Management Institute recognized the success of Express Scripts' AOM program with the Excellence Award for Opioid Management Strategies in both 2018 and 2020.

### Rebates Are Not a Cause of the Alleged Opioid Epidemic

14. Rebates are not the problem that the City misrepresents them to be, let alone a cause of the alleged opioid epidemic. As part of its mission to make prescription medications more affordable for plan members, Express Scripts negotiates with pharmaceutical manufacturers for rebates on branded prescription medications to lower the net cost of medications included on its clients' formularies.[4] The value of rebates to make brand medications more affordable is widely recognized. Indeed, many plan sponsors contract directly with manufacturers (including opioid manufacturers) for rebates. Moreover, the federal government and all fifty states—including the State of New York—receive manufacturer rebates under the Medicaid Drug Rebate Program. Most plan sponsors prefer to have their PBMs handle rebate negotiations. That way, instead of hundreds of thousands of health plans individually negotiating rebates with manufacturers, PBMs can wield their aggregate purchasing power to negotiate greater rebates than the health plans could negotiate individually.

---

[3] *See* Evernorth Health Services, *Advanced Opioid Management*, https://www.evernorth.com/our-solutions/advanced-opioid-management.

[4] *See* Evernorth Health Services, *The Reality of Rebates*, https://www.evernorth.com/esfacts/key-topics/the-reality-of-rebates.

15.     Under Express Scripts' rebate agreements, manufacturers pay rebates to Express Scripts, and Express Scripts then shares the rebates with its clients. In 2022, Express Scripts shared with its clients over 95% of the rebates it received. Plan sponsors can then use those rebates to lower premiums, expand benefits, or otherwise make medications more affordable for plan participants. Each client determines what percentage of rebates it wants passed through from Express Scripts and how much (if any) it wants the PBM to retain as payment for services. Many clients elect to receive 100% of rebates. Others opt for less than 100%, in exchange for not paying fees to Express Scripts for its services, or in exchange for other benefits.

16.     Rebate agreements simply provide that *if* a health plan puts a certain medication on its formulary, there will be rebates *if* the medication is prescribed and purchased by a plan member in accordance with the conditions set by the manufacturer. Contrary to the City's claims, Express Scripts does not control how or when a doctor prescribes a rebate-eligible medication, and Express Scripts never requires that rebate-eligible medications be included on clients' formularies. In fact, 99% of all generic drugs are included on Express Scripts' standard formularies, and generic drugs typically are not rebated. As courts have recognized, a PBM rebate agreement with a manufacturer "does not require the PBM or health plan to make specific formulary decisions. Instead, only if and when a coverage option is selected by a PBM's client (the health plan) is the manufacturer obligated to provide the agreed-upon level of price concessions. This preserves flexibility for a PBM's client to, for example, receive the rebate for covering a drug that is otherwise excluded on the PBM's national formulary." *In re EpiPen*, 44 F. 4th 959, 965, 967–68 (10th Cir. 2022).

17.     Moreover, over 94% of opioid medications prescribed and dispensed are generic medications, which do not receive any rebates. Contrary to the City's allegations that rebates drive formulary placement, generic medications receive the most preferred placement on the formularies administered by Express Scripts. This is because generic medications are more affordable and reduce overall health care costs for plan sponsors and their members.

***Spread Pricing Is Not A Cause of the Alleged Opioid Epidemic***

18.     The City similarly misrepresents the role of spread pricing.[5] How clients pay for prescription medications is yet another customizable option Express Scripts offers to its clients. Some clients choose a traditional pricing model known as spread pricing. Under this model,

---

[5]     *See* Evernorth Health Services, *The Skinny on Spread Pricing*, https://www.evernorth.com/esfacts/key-topics/skinny-on-spread-pricings.

Express Scripts and the client agree to a guaranteed discount for prescriptions. If Express Scripts cannot negotiate with pharmacies for a better discount, then Express Scripts is on the hook for any losses. This means that clients are protected from uncertainty around prescription costs. Other clients choose a pass-through model. Under this model, the client agrees to pay the prescription rates that Express Scripts pays to pharmacies. Contrary to the City's claims, spread pricing is never a factor in Express Scripts' formulary development and never the basis for Express Scripts to encourage the use of a particular drug.

### *ESI Mail Pharmacy is Not A Cause of the Alleged Opioid Epidemic*

19.     Separate from Express Scripts the PBM is ESI Mail Pharmacy. ESI Mail Pharmacy is a mail order pharmacy that delivers prescription medications to the homes of individuals who require those medications on a long-term basis. Doctors send a prescription to the ESI Mail Pharmacy electronically or by fax, and pharmacists then fill the prescription as written and send the medication to the patient using a delivery service like UPS or FedEx.

20.     The City wrongly alleges that ESI Mail Pharmacy played a substantial role in the supply of prescription opioids dispensed in the City of Rochester. In fact, less than 0.4% of the prescription opioids dispensed in Rochester from 2009–2019 came from ESI Mail Pharmacy.

21.     ESI Mail Pharmacy works proactively to ensure that opioid prescriptions end up in the right hands and for the right reasons. Opioid prescriptions are processed by specially trained pharmacists who closely review each prescription to ensure validity. Before the ESI Mail Pharmacy dispenses prescription opioids, it reviews "red flag" warnings that are triggered according to state-specific and federal regulations. No prescription can be sent for delivery until the pharmacist reviews and "clears" each of these red flags.

22.     ESI Mail Pharmacy works proactively to ensure that opioid prescriptions it fills end up in the right hands and for the right reasons. Opioid prescriptions dispensed by ESI Mail Pharmacy are processed by specially trained pharmacists who closely review each prescription to ensure validity. ESI Mail Pharmacy has developed Standard Operating Procedures (**SOPs**) that govern the dispensing of prescription opioids. ESI Mail Pharmacy regularly updates these SOPs, which are aligned with federal and state laws and regulations. ESI Mail Pharmacy provides extensive training to its pharmacists on the SOPs. The SOPs require pharmacists to (among other things) inquire about a patient's history where the patient is prescribed a combination of medications identified by the DEA as indicating potential abuse or diversion or where an opioid

therapy contains a certain amount of morphine milligram equivalents (MME). ESI Mail Pharmacy pharmacists also receive training on identifying "red flag" warnings, such as quantity alterations. ESI Mail Pharmacy pharmacists review and resolve all red flags before dispensing any prescription opioids. ESI Mail Pharmacy's compliance staff performs regular audits to assess whether pharmacists have adequately counseled patients, supervised pharmacy technicians, inspected prescriptions before dispensing, and logged controlled substances, among other metrics.

### The Real Causes of Any Prescription Opioid Public Nuisance

23.     The City, like many cities and counties across the United States, suffers from a substance abuse crisis well beyond any alleged prescription opioid misuse or abuse. The City's alleged damages are instead attributable to this wider substance abuse crisis, which results from drug overdose and drug poisoning from illicit drugs such as cocaine, heroin, crack, marijuana, carfentanil, methamphetamine, and synthetic (non-pharmaceutical) opioids; illegally obtained substances such as fentanyl and its analogs, benzodiazepines, and morphine; and alcohol abuse. As a PBM, Express Scripts does not offer formulary products or adjudicate claims for illicit drugs or alcohol on behalf of health plan sponsors. Separately, as a mail order pharmacy, ESI Mail Pharmacy does not dispense illicit drugs or alcohol. ESI Mail Pharmacy does not control the distribution of drugs that may have been illegally obtained from friends, family, drug dealers, and pill mills.

24.     The cause of any prescription opioid public nuisance in the City of Rochester is not the Express Scripts Entities but rather government agencies that were slow to act in the face of widespread opioid abuse, manufacturers that misled doctors and the public about the risks of prescription opioids, doctors that overprescribed opioids, and criminal distributors, pill mills, and drug traffickers that inundated the City with opioids, including illicit opioids such as heroin and fentanyl.

### Government Agencies

25.     First, prescription opioid use has spread because state and federal governments, along with the medical community, encouraged the use of prescription opioids to treat chronic and severe pain. When the medical community recommended in the 1990s that pain be considered the "fifth vital sign" to treat pain like other significant symptoms, state medical boards and state legislatures promoted more permissive use of prescription opioids outside of cancer or end-of-life care. In 2001, 21 health organizations and the DEA issued a joint statement saying that

undertreatment of pain is a serious problem in the United States and that for many patients, prescription opioids are the most effective way to treat their pain and often the only treatment option that provides significant relief. In line with this directive, from 2003 to 2013, the DEA, which sets an annual production quota for each prescription opioid in the United States, raised the production quotas for prescription opioids by significant amounts. In conjunction with these rising quotas, the sale of prescription opioids increased by 300% from roughly 1999 to its peak in 2010.

### *Prescription Opioid Manufacturers*

26.     Second, prescription opioid manufacturers, in particular Purdue, took advantage of changing medical standards to misleadingly market and sell prescription opioids. The City's Supplemental Amended Complaint acknowledges Purdue's reckless disregard for safety. Purdue introduced OxyContin in the mid-1990s and began a campaign to fraudulently portray it as safe and effective for a variety of conditions while downplaying the risks of addiction or abuse. For example, in 1995, when the FDA approved OxyContin, Purdue had conducted no clinical studies on how addictive or prone to abuse the drug might be. Nevertheless, Purdue requested a package insert announcing that the drug "is believed to reduce the abuse liability," which the FDA approved. Purdue's false marketing led to the FDA issuing a series of warning letters about OxyContin to Purdue. The first of these, in 2003, claimed that Purdue's "journal advertisements are misleading because they make prominent claims of effectiveness for pain relief, but omit from the body of the advertisements crucial facts related to the serious, potentially fatal safety risks associated with the use of OxyContin, the potential for OxyContin to be abused, and the limitations on its appropriate indicated use."

27.     The FDA also criticized Purdue for "promoting OxyContin for a much broader range of patients with pain than are appropriate for the drug" and concluded that Purdue's advertising was "especially egregious and alarming in its potential impact on the public health." These rebukes did not stop Purdue from actively pushing OxyContin to a wider market though. Over the next decade, Purdue would compile a database of thousands of OxyContin prescribers, not to alert law enforcement or to ensure safer prescribing practices, but rather to target the "highest prescribers for opioids across the country" and increase sales. Ultimately, Purdue pleaded guilty to federal charges of criminal misbranding with respect to OxyContin and paid a $635 million fine among other sanctions.

28.     Far from working on behalf of the manufacturers, as the City alleges, Express Scripts *did* alert its clients of concerns regarding the rising trends in opioid prescriptions. Express Scripts consistently discussed publicly the risks of prescription opioids and has aligned its formularies, utilization management tools, and clinical programs with guidance from CMS, the CDC, and the FDA and with clinical best practices, all of which have evolved over time and continue to evolve today.

### Distributors

29.     Third, distributors did not comply with legal obligations to report suspicious orders of prescription opioids. One such distributor was Rochester Drug Co-Operative (**RDC**). RDC was headquartered and operated in the City for one hundred and fifteen years, from 1905 until 2020, when it filed for bankruptcy due to its criminal exposure related to controlled substances distribution. RDC lacked a functional system to comply with its legal obligations to report suspicious orders and repeatedly shipped to known pill-mills. When questioned by DEA agents in 2017, the RDC's CEO acknowledged that there was no program in place to notify the DEA of suspicious orders. That same CEO, Laurence F. Doud III, is serving a jail sentence for his role in the crisis.

### Doctors

30.     Fourth, prescription medications cannot be dispensed at licensed pharmacies without doctors' prescriptions. While most doctors sought to follow the standard of care in treating pain, the standard evolved over the years as the risks of opioid abuse have become better understood. In retrospect, it appears that some doctors—following the standard of care at the time—may have prescribed opioid medications too frequently or at quantities that were too large. It should be noted, however, that the most problematic prescriptions came from unscrupulous doctors who did not follow any standards. Some doctors, including those in and around the City, disregarded patient safety. Instead, these doctors chased profits, including lucrative speaking and consulting fees from opioid manufacturers. In many instances, doctors received bigger bonuses in exchange for writing additional opioid prescriptions. The City is no stranger to doctors who chose profits over patients. For example, federal prosecutors sent Dr. John Maye, a former physician in the City, to prison. Maye issued opioid prescriptions to 12,000 patients, receiving $1,100,000 in exchange, without ever conducting an in-person examination. Doctors across the City and State

have failed patients, thereby fueling the crisis. The City itself has named dozens of New York prescribers who it claims flooded Rochester with opioids.

31.     Unlike doctors, Express Scripts does not receive critical information to determine the medical appropriateness of a prescription. Doctors physically examine patients, discuss their medical history, and apply their medical expertise to determine the best course of treatment. Doctors can ask a patient about the patient's symptoms and how long the patient has had these symptoms. Doctors can order tests, such as blood tests, x-rays, and MRIs, to determine a patient's individual needs.

32.     In contrast, when a patient comes to a retail pharmacy with a prescription for opioids, Express Scripts sees only that the prescription is written by a licensed doctor. Specifically, at the retail level, Express Scripts' computers see an electronic "claim" submitted by a pharmacy for "adjudication"—*i.e.*, to determine whether a particular prescription is covered by the patient's insurance; what the copay, if any, is that the pharmacy must collect from the patient; and what the pharmacy is going to be reimbursed for filling the prescription. This adjudication happens electronically and is near instantaneous. It happens millions of times a day at pharmacies all over this country and is an invaluable part of getting patients the medicines they need safely and effectively.

33.     Equally important is what Express Scripts does not see and does not know. Express Scripts does not know if the person has just been diagnosed with cancer and undergone surgery to remove a tumor. It is ultimately up to the doctor to decide which medications to prescribe, and Express Scripts does not know why the doctor prescribed the medication, only that the patient has a valid prescription that they have presented at a pharmacy to fill. It is unreasonable and contrary to accepted medical practice for the City to suggest that Express Scripts knows what is better for a patient than the doctor examining them and that Express Scripts should interfere in the doctor-patient relationship.

34.     The vast majority of prescription opioids dispensed in the City came from ordinary retail pharmacies, including Wegmans, Saratoga Pharmacy, CVS, Walgreens, and Rite Aid. ESI Mail Pharmacy, by contrast, dispensed ***less than 0.4%*** of all prescription opioids in the City during 2009–2019. The City has alleged that the Express Scripts Entities contributed to the opioid crisis by ignoring certain "red flags" in adjudicating prescription opioid claims and in filling opioid prescriptions. The Express Scripts Entities dispute the City's red flag theory as an invalid and

11

misleading methodology. But to the extent it has any validity, it applies with even more force to the actual pharmacies on the ground in Rochester, such as Wegmans, Saratoga Pharmacy, CVS, Walgreens, Rite Aid, and others, who dispensed the vast majority of prescription opioids.

### *Criminal Actors*

35.     Finally, the opioid crisis has been driven in large part by criminal activity rather than legitimate opioid prescriptions. For decades, drug dealers in New York have preyed upon individuals suffering from substance use disorder. These drug dealers used fraud and theft to divert opioid medications for illicit use, while also selling illegal street drugs such as heroin, methamphetamine, and cocaine. As the medical community and the government placed greater restrictions on opioid medications, drug dealers continued selling illegal drugs such as counterfeit pills, and heroin. In fact, even as opioid prescriptions fell after 2012, overdoses increased due to the rise in exceedingly dangerous illicit drugs manufactured and sold by drug dealers and criminal cartels. Recent data suggests that over 90% of opioid-related deaths in the state of New York involve illegal fentanyl.

36.     Express Scripts, in contrast, saw only a small fraction of the prescription opioids dispensed—those dispensed through retail pharmacies, pursuant to a prescription, and covered by insurance. These types of valid and legitimate prescription fills for prescription opioids—as opposed to the pill mills and other aspects of illicit trade—are simply not what caused the alleged opioid epidemic.

*       *       *

37.     In summary, any public nuisance created by a prescription opioid crisis in the City was not caused by the Express Scripts Entities. The Express Scripts Entities have fully complied with their legal obligations and taken proactive steps for decades to prevent the misuse and abuse of prescription opioids. The City is not entitled to any of the relief it seeks from the Express Scripts Entities in this lawsuit, and judgment should be entered for the Express Scripts Entities.

**SPECIFIC RESPONSES TO THE CITY'S ORIGINAL COMPLAINT**

I.      **INTRODUCTION[6]**

1–2.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

3.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 3.

4.      Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

5.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 5.

6.      Denied, except that the Express Scripts Entities admit that addiction "is a spectrum of substance use disorders" from which affected individuals generally suffer negative consequences.

7.      Denied, except that the Express Scripts Entities admit that prescription opioids can be effective treatment for individuals suffering from various kinds of pain, and that prescription opioids can be addictive for some individuals. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

8.      Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

9.      Denied, except that the Express Scripts Entities admit that the pain mitigation effectiveness of prescription opioids can wane for certain individuals after prolonged use, and that prescription opioids can be addictive for some individuals. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

10.     Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

---

[6] This Answer includes the headings in the City's Original Complaint solely by way of reference. To the extent these headings contain any allegations to which the Express Scripts Entities must respond, the Express Scripts Entities deny each allegation.

11.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.

12.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12, except that the Express Scripts Entities admit that prescription opioids are narcotic drugs subject to federal regulations governing controlled substances, and that prescription opioids are addictive for some individuals.

13–18. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

19.     The first sentence of paragraph 19 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities object to the remainder of paragraph 19 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in the remainder of paragraph 19.

20.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20.

21–22. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

23.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of paragraph 23. The Express Scripts Entities object to the third and fourth sentences of paragraph 23 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in the third and fourth sentences of paragraph 23.

24.     The Express Scripts Entities object to paragraph 24 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 24.

25.     The first sentence of paragraph 25 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 25.

26–31. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 26–31.

32.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 32, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals.

33.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 33.

34.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of paragraph 34. The third and fourth sentences of paragraph 34 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

35–36. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

37.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 37.

38.     The first sentence of paragraph 38 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second and third sentences of paragraph 38.

39.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 39, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals.

40.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 40. The second and third sentences of paragraph 40 are denied, except that the Express Scripts Entities lack knowledge or

information sufficient to form a belief about the truth of the allegations concerning other Defendants.

41.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

42.     Denied, except that certain prescription opioid manufacturers expanded the prescription opioid market through misrepresentations and fraud and certain prescription opioid distributors lacked functional systems to comply with their legal obligations to report suspicious orders and repeatedly shipped to known pill mills. Also denied because the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

43–46. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

47.     Denied, except that the Express Scripts Entities admit that Express Scripts negotiates with certain pharmaceutical drug manufacturers for rebates and administrative fees that its clients can use to lower their costs, and it develops formulary offerings that its clients can accept, reject, or modify. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

48.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

49.     Denied, except that the Express Scripts Entities admit that Express Scripts negotiates with pharmaceutical drug manufacturers for rebates that its clients can use to lower their costs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

50.     The first sentence of paragraph 50 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 50.

51–52. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

53.     Denied, except that the Express Scripts Entities admit that Express Scripts develops formulary offerings that its clients can accept, reject, or modify. The Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

54–58. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

59.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## II.     JURISDICTION AND VENUE

60–62. Paragraphs 60–62 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 60–62 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## III.    PARTIES

### A.     Plaintiff.

63.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 63.

### B.     Defendants.

64–243.     The allegations in paragraphs 64–243 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 64–243.

244.    Denied, except that the Express Scripts Entities admit that Express Scripts negotiates with certain pharmaceutical drug manufacturers for rebates and administrative fees that its clients can use to lower their costs, and it develops formulary offerings that its clients can accept, reject, or modify. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBM Defendants.

245.    The allegations in paragraph 245 are directed at Express Scripts Holding Company (now known as Evernorth Health, Inc.), which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 245, except that Express Scripts Holding Company was incorporated in Delaware with its principal place of business in St. Louis, Missouri.

246.    Admitted.

17

247. Paragraph 247 does not make any allegations and therefore does not require a response. To the extent the City purports to refer to Express Scripts Holding Company (now known as Evernorth Health, Inc.) as "Express Scripts," the Express Scripts Entities note that the claims against Express Scripts Holding Company were dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so the Express Scripts Entities treat the references to "Express Scripts" in the City's Original Complaint as referring only to Express Scripts, Inc.

248. Denied, except that the Express Scripts Entities admit that on April 2, 2012, Express Scripts consummated a merger with Medco Health Solutions, Inc., and that both became wholly-owned subsidiaries of Express Scripts Holding Company.

249. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 249.

250. Denied.

251. Denied, except that Express Scripts operates in New York.

252–278. The allegations in paragraphs 252–278 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 252–278.

279. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBM Defendants.

280–474. The allegations in paragraphs 280–474 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 280–474.

## IV. FACTS RELEVANT TO ALL CAUSES OF ACTION

### A. Background on Pain Medicine.

#### 1. Safe and Effective Treatment of Chronic Pain Centers on Informed Risk Management.

475–478. The allegations in paragraphs 475–478 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 475–478.

### 2. Opioid Use Is Associated with Known and Substantial Risks.

479–480.    The allegations in paragraphs 479–480 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 479–480.

481.    Denied, except that certain prescription opioid manufacturers expanded the prescription opioid market through misrepresentations and fraud, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

482–502.    The allegations in paragraphs 482–502 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 482–502.

503.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 3. Long-Term Opioid Use Benefits Are Unproven and Contradicted.

504.    The allegations in paragraph 504 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 504.

505.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

506–514.    The allegations in paragraphs 506–514 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 506–514.

### 4. Defendants' Impact on the Perception and Prescribing of Opioids.

515.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

516–519.    The allegations in paragraphs 516–519 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 516–519.

520.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**B.    Defendants Promoted Their Branded Products Through Direct
Marketing to Prescribers and Consumers.**

521.    The allegations in paragraph 521 are not directed against the Express Scripts
Entities, so no response is required. To the extent a response is required, the Express Scripts
Entities deny the allegations in paragraph 521, except that the Express Scripts Entities lack
knowledge or information sufficient to form a belief about the truth of the allegations concerning
other Defendants.

**1.    Defendants Relied Upon Branded Advertisements.**

522–523.    The allegations in paragraphs 522–523 are not directed against the Express
Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts
Entities deny the allegations in paragraphs 522–523, except that the Express Scripts Entities lack
knowledge or information sufficient to form a belief about the truth of the allegations concerning
other Defendants.

**2.    Defendants Relied Upon Their Sales Forces and
Recruited Physician Speakers.**

524–534.    The allegations in paragraphs 524–534 are not directed against the Express
Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts
Entities deny the allegations in paragraphs 524–534, except that the Express Scripts Entities lack
knowledge or information sufficient to form a belief about the truth of the allegations concerning
other Defendants.

**3.    Defendants Directed These Promotional Efforts
Through Detailed Marketing Plans.**

535.    The allegations in paragraph 535 are not directed against the Express Scripts
Entities, so no response is required. To the extent a response is required, the Express Scripts
Entities deny the allegations in paragraph 535, except that the Express Scripts Entities lack
knowledge or information sufficient to form a belief about the truth of the allegations concerning
other Defendants.

**a.    Targeting categories of prescribers**

536–539.    The allegations in paragraphs 536–539 are not directed against the Express
Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts
Entities deny the allegations in paragraphs 536–539, except that the Express Scripts Entities lack
knowledge or information sufficient to form a belief about the truth of the allegations concerning
other Defendants.

**b.      Increasing "direct to consumer" marketing**

540–541.      The allegations in paragraphs 540–541 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 540–541, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**c.      Differentiating each brand**

542–543.      The allegations in paragraphs 542–543 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 542–543, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**d.      Moving beyond office visits**

544.      The allegations in paragraph 544 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 544, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**4.      Defendants Marketed Opioids in the City of Rochester
Using the Same Strategies and Messages They
Employed Nationwide.**

545–548.      The allegations in paragraphs 545–548 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 545–548, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**C.      Defendants Used "Unbranded" Marketing to Evade Regulations and
Consumer Protection Laws.**

549–550.      The allegations in paragraphs 549–550 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 549–550, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

      **1.**      **Regulations Governing Branded Promotion Require
that it Be Truthful, Balanced, and Supported by
Substantial Evidence.**

551–554.      The allegations in paragraphs 551–554 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 551–554, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

      **2.**      **Defendants Deployed Front Groups and Doctors to
Disseminate Unbranded Information on Their Behalf.**

555–564.      The allegations in paragraphs 555–564 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 555–564, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

      **a.**      **Defendants' Use of KOLs**

565–580.      The allegations in paragraphs 565–580 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 565–580, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

      **b.**      **"Research" That Lacked Supporting Evidence**

581–587.      The allegations in paragraphs 581–587 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 581–587, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

      **c.**      **Treatment Guidelines**

588.      The allegations in paragraph 588 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 588, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.   FSMB

589–595.   The allegations in paragraphs 589–595 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 589–595, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.   AAPM/APS Guidelines

596–600.   The allegations in paragraphs 596–600 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 596–600, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii.   American Geriatrics Society

601–603.   The allegations in paragraphs 601–603 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 601–603, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iv.   Guidelines That Did Not Receive Defendants' Support

604–606.   The allegations in paragraphs 604–606 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 604–606, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### d.   Continuing Medical Education

607–613.   The allegations in paragraphs 607–613 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 607–613, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### e. Unbranded Patient Education

614–615. The allegations in paragraphs 614–615 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 614–615, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### f. Defendants' Use of Front Groups

616–617. The allegations in paragraphs 616–617 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 616–617, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i. American Pain Foundation

618–627. The allegations in paragraphs 618–627 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 618–627, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii. The American Academy of Pain Medicine

### 3. Defendants Acted in Concert with KOLs and Front Groups in the Creation, Promotion, and Control of Unbranded Marketing.

628–632. The allegations in paragraphs 628–632 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 628–632, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

633–634. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

635–637. The allegations in paragraphs 635–637 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 635–637, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 4. Defendants Targeted Vulnerable and Lucrative Populations.

#### a. The Elderly

638–640.     The allegations in paragraphs 638–640 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 638–640, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

#### b. Veterans

641–648.     The allegations in paragraphs 641–648 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 641–648, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### D. Why Defendants' Marketing Messages Are Misleading and Unfair.

649.     Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

650–652.     The allegations in paragraphs 650–652 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 650–652, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

653.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 1. Defendants and Their Third-Party Allies Misrepresented that Opioids Improve Function.

654–657.     The allegations in paragraphs 654–657 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 654–657, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 2. Defendants and Their Third-Party Allies Concealed the Truth About the Risk of Addiction from Long-Term Opioid Use.

658–669.    The allegations in paragraphs 658–669 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 658–669, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 3. Defendants and Their Third-Party Allies Misrepresented that Addiction Risk Can Be Avoided or Managed.

670.    Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

671–674.    The allegations in paragraphs 671–674 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 671–674, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 4. Defendants and Their Third-Party Allies Created Confusion By Promoting the Misleading Term "Pseudoaddiction."

675–676.    The allegations in paragraphs 675–676 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 675–676, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 5. Defendants and Their Third-Party Allies Claimed Withdrawal is Simply Managed.

677–680.    The allegations in paragraphs 677–680 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 677–680, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 6. Defendants and Their Third-Party Allies Misrepresented that Increased Doses Pose No Significant Additional Risks.

681–684.     The allegations in paragraphs 681–684 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 681–684, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 7. Defendants and Their Third-Party Allies Deceptively Omitted or Minimized Adverse Effects of Opioids and Overstated the Risks of Alternative Forms of Pain Treatment.

685–688.     The allegations in paragraphs 685–688 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 685–688, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 8. Purdue Misleadingly Promoted OxyContin as Providing 12 Hours of Relief.

689–695.     The allegations in paragraphs 689–695 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 689–695, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### E. Each Defendant Engaged in Deceptive Marketing, Both Branded and Unbranded, that Targeted and Reached City prescribers.

696.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

697–698.     The allegations in paragraphs 697–698 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 697–698, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1. **Actavis.**

   a. **Actavis' Deceptive Direct Marketing**

   699–704.     The allegations in paragraphs 699–704 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 699–704, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

   i. **Actavis' Deceptive Sales Training**

   705–717.     The allegations in paragraphs 705–717 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 705–717, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

   ii. **Actavis' Deceptive Speaking Training**

   718–723.     The allegations in paragraphs 718–723 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 718–723, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

   b. **Actavis's Deceptive Statements to Prescribers and Patients in the City of Rochester**

   724–726.     The allegations in paragraphs 724–726 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 724–726, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

2. **Cephalon.**

   727–729.     The allegations in paragraphs 727–729 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 727–729, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a.  Cephalon's Deceptive Direct Marketing

730.    The allegations in paragraph 730 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 730, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.  Cephalon's Fraudulent Off-Label Marketing of Actiq and Fentora

731.    The allegations in paragraph 731 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 731, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a)  Cephalon launched its fraudulent marketing scheme for Actiq

732–737.    The allegations in paragraphs 732–737 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 732–737, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b)  October 1, 2006 – Cephalon fraudulently marked Actiq's successor drug, Fentora

738–742.    The allegations in paragraphs 738–742 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 738–742, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c)  September 2007 – Reports of death and serious side effects led the FDA to issue a public health warning for Fentora

743–745.    The allegations in paragraphs 743–745 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 743–745, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**d)      May 6, 2008 – The FDA rejected Cephalon's request for expanded approval of Fentora**

746–747.      The allegations in paragraphs 746–747 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 746–747, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**e)      March 26, 2009 – the FDA's Division of Drug Marketing, Advertising and Communications ("DDMAC") warned Cephalon about its misleading advertising of Fentora**

748–749.      The allegations in paragraphs 748–749 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 748–749, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**f)      Cephalon continues to knowingly, deceptively, and illegally promote Fentora for off-label uses**

750–754.      The allegations in paragraphs 750–754 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 750–754, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**ii.      Cephalon's Misrepresentation of the Risks Associated with the Use of Opioids for the Long-Term Treatment of Chronic Pain**

755–762.      The allegations in paragraphs 755–762 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 755–762, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**b.      Cephalon's Deceptive Third-Party Statements**

763–764.      The allegations in paragraphs 763–764 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts

30

Entities deny the allegations in paragraphs 763–764, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.       FSMB – Responsible Opioid Prescribing

765–768.       The allegations in paragraphs 765–768 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 765–768, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.       APF – Treatment Options: A Guide for People Living with Pain

769–779.       The allegations in paragraphs 769–779 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 769–779, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii.       Key Opinion Leaders and Misleading Science

780–783.       The allegations in paragraphs 780–783 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 780–783, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iv.       Misleading Continuing Medical Education

784–794.       The allegations in paragraphs 784–794 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 784–794, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c.       Cephalon's Deceptive Third-Party Statements to City prescribers and Patients

795–799.       The allegations in paragraphs 795–799 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 795–799, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**3. Endo.**

800–802. The allegations in paragraphs 800–802 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 800–802, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**a. Endo's Deceptive Direct Marketing**

803. The allegations in paragraph 803 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 803, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**i. Endo's Sales Force and Deceptive Sales Training**

804–813. The allegations in paragraphs 804–813 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 804–813, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**a) Endo's Sales Force Deceptively Minimized the Risks of Addiction Associated with Chronic Opioid Therapy.**

814–821. The allegations in paragraphs 814–821 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 814–821, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**b) Endo's Sales Force Deceptively Implied that Chronic Opioid Therapy Would Improve Patients' Ability to Function.**

822–827. The allegations in paragraphs 822–827 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 822–827, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c) Endo's Sales Force Deceptively presented the Risks and Benefits of Opioids to Make Them Appear Safer Than Other Analgesics

828–829.     The allegations in paragraphs 828–829 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 828–829, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.     Endo's Speakers Bureau Programs Deceptively Minimized the Risks of Addiction Associated with Chronic Opioid Therapy

830–836.     The allegations in paragraphs 830–836 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 830–836, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii.     Endo's Misleading Journal Supplement

837.     The allegations in paragraph 837 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 837, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iv.     Endo's Deceptive Unbranded Advertising

838.     The allegations in paragraph 838 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 838, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b.     Endo's Deceptive Third-Party Statements

839–842.     The allegations in paragraphs 839–842 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 839–842, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.      APF

843–852.      The allegations in paragraphs 843–852 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 843–852, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a)      Misleading Medical Education

853–855.      The allegations in paragraphs 853–855 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 853–855, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b)      Painknowledge.com

856–859.      The allegations in paragraphs 856–859 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 856–859, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c)      Exit Wounds

860–865.      The allegations in paragraphs 860–865 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 860–865, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.      Other Front Groups: FSMB, AAPM, and AGS

866–872.      The allegations in paragraphs 866–872 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 866–872, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii. Key Opinion Leaders and Misleading Science

873–885.     The allegations in paragraphs 873–885 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 873–885, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c. Endo's Deceptive Statements to City prescribers and Patients

886–890.     The allegations in paragraphs 886–890 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 886–890, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 4. Janssen.

891–893.     The allegations in paragraphs 891–893 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 891–893, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a. Janssen's Deceptive Direct Marketing

894–895.     The allegations in paragraphs 894–895 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 894–895, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i. Janssen's Deceptive Sales Training

896–903.     The allegations in paragraphs 896–903 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 896–903, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.      Janssen's Deceptive Speakers Bureau Programs

904–907.      The allegations in paragraphs 904–907 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 904–907, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii.      Janssen's Deceptive Unbranded Advertising

908–909.      The allegations in paragraphs 908–909 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 908–909, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b.      Janssen's Deceptive Third-Party Statements

910.      The allegations in paragraph 910 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 910, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.      AAPM and AGS – Finding Relief: Pain Management for Older Adults

911–919.      The allegations in paragraphs 911–919 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 911–919, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.      AGS – Misleading Medical Education

920.      The allegations in paragraph 920 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 920, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii.　APF

921–922.　　The allegations in paragraphs 921–922 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 921–922, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a)　Let's Talk Pain

923–935.　　The allegations in paragraphs 923–935 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 923–935, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b)　Exit Wounds

936–937.　　The allegations in paragraphs 936–937 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 936–937, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c.　Janssen's Deceptive Statements to Prescribers and Patients in the City of Rochester

938.　The allegations in paragraph 938 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 938, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.　Janssen's Deceptive Medical Education Programs in the City of Rochester

939.　The allegations in paragraph 939 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 939, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

ii.    **Janssen's Deceptive Detailing Practices in the City of Rochester**

940.    The allegations in paragraph 940 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 940, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

5.    **Purdue.**

941–942.    The allegations in paragraphs 941–942 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 941–942, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

a.    **Purdue's Deceptive Direct Marketing**

943–962.    The allegations in paragraphs 943–962 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 943–962, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

b.    **Purdue's Deceptive Third-Party Statements**

963.    The allegations in paragraph 963 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 963, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

i.    **APF**

a)    **Purdue's Control of APF**

964–979.    The allegations in paragraphs 964–979 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 964–979, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b) A Policymaker's Guide

980–986.     The allegations in paragraphs 980–986 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 980–986, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c) Treatment Options: A Guide for People Living with Pain

987–992.     The allegations in paragraphs 987–992 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 987–992, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii. Purdue's Work with Other Third Party Front Groups and KOLs

993.     The allegations in paragraph 993 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 993, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a) FSMB – Responsible Opioid Prescribing

994–995.     The allegations in paragraphs 994–995 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 994–995, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b) AGS – Pharmacological Management of Persistent Pain in Older Persons

996–998.     The allegations in paragraphs 996–998 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 996–998, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### c) Chronic Pain Management and Opioid Use: Easing Fears, Managing Risks, and Improving Outcomes

999.  The allegations in paragraph 999 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 999, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### d) Managing Patient's Opioid Use: Balancing the Need and Risk

1000.  The allegations in paragraph 1000 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 1000, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### e) Path of the Patient, Managing Chronic Pain in Younger Adults at Risk for Abuse

1001–1003.  The allegations in paragraphs 1001–1003 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 1001–1003, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### f) Overview of Management Options

1004.  The allegations in paragraph 1004 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 1004, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### iii. Purdue's Misleading Science

1005.  The allegations in paragraph 1005 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 1005, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a) Purdue's Deceptive Statements to Prescribers and Patients in the City of Rochester

1006–1012.   The allegations in paragraphs 1006–1012 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 1006–1012, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 6. Insys.

1013–1035.   The allegations in paragraphs 1013–1035 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 1013–1035, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## F. The Result of Defendants' Fraudulent Scheme.

1036–1037.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 1. Defendants' Fraudulent and Deceptive Marketing of Opioids Directly Caused Harm to the City of Rochester.

1038–1040.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### a. Increase in Opioid Prescribing Nationally

1041.   The first sentence of paragraph 1041 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 1041.

1042–1043.   The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 1042–1043.

1044–1045.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1046.  The allegations in paragraph 1046 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 1046, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### b.  The City's Increased Spending on Opioids

1047.  Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### i.  Defendants' Misrepresentations Were Material

1048–1049.  Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1050.  The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 1050. The remainder of paragraph 1050 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### ii.  The City's Increased Costs Correlate with Defendants' Promotion

1051–1052.  Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 2.  Defendants' Fraudulent and Deceptive Marketing of Opioids Directly Caused Harm to Consumers in the City of Rochester.

### a.  Increased Opioid Use Has Led to an Increase in Opioid Abuse, Addiction, and Death

1053.  The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1053, except that prescription opioids can be addictive for some individuals.

1054.  The first sentence of paragraph 1054 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 1054.

1055–1056.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1055–1056.

1057.   The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1057, except that prescription opioids can be addictive for some individuals.

1058.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

> **b.    Increased Opioid Use Has Increased Costs Related to Addiction Treatment**

1059–1060.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1059–1060.

> **c.    Increased Opioid Use Has Fueled An Illegal Secondary Market for Narcotics and the Criminals Who Support It**

1061.   The first and second sentences of paragraph 1061 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1061.

1062.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1063.   The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1063.

1064.   The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1064, except that prescription opioids can be addictive for some individuals.

> **3.    Defendants' Fraudulent Marketing Has Led to Record Profits.**

1065.   The first sentence of paragraph 1065 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1065.

1066.   The first sentence of paragraph 1066 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations

concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1066.

    **4.    Defendants Fraudulently Concealed Their Misrepresentations.**

1067–1072.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**G.    Defendants Entered into and Engaged in a Civil Conspiracy.**

1073–1074.   Paragraphs 1073–1074 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1073–1074 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1075–1077.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1078.   Paragraph 1078 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 1078 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**H.    PBMs Ensured that Opioids Were Regularly Prescribed and Flooded the Market.**

1079.   Denied, except that the Express Scripts Entities admit that PBMs work with payers, pharmaceutical drug manufacturers, and retail pharmacies, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

1080.   The first, second, and fifth sentences of paragraph 1080 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1080.

1081.   The first sentence of paragraph 1081 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations

concerning other PBMs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1081.

1082.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

1083.   The first sentence of paragraph 1083 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1083.

1084–1086.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1087.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

1088.   The first sentence of paragraph 1088 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1088.

1089.   The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1089.

1090.   The first sentence of paragraph 1090 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs. The remainder of the allegations in paragraph 1090 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in the remainder of paragraph 1090.

1091.   The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 1091.

1092.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBM Defendants.

1093.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1094–1100.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBM Defendants.

1101.   The first and fifth sentences of paragraph 1101 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 1101.

1102–1103.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBM Defendants.

1104.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

**I.       Defendants Flooded Plaintiff the City of Rochester with Suspiciously Large Amounts of Opioids.**

1105–1107.    The allegations in paragraphs 1105–1107 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 1105–1107, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1108.   Paragraph 1108 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 1108 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1109–1110.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1111–1112.    Paragraphs 1111–1112 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1111–1112 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1113.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1114–1116.    Paragraphs 1114–1116 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1114–1116 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1117.   Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1118–1143.    The allegations in paragraphs 1118–1143 are not directed against the Express Scripts Entities, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 1118–1143, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1144.   Paragraph 1144 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 1144 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**FIRST CAUSE OF ACTION**

**DECEPTIVE ACTS AND PRACTICES**
**NEW YORK GENERAL BUSINESS LAW § 349**
**(AGAINST ALL DEFENDANTS)**

1145–1152.    Paragraphs 1145–1152 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1145–1152 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**SECOND CAUSE OF ACTION**

**FALSE ADVERTISING**
**NEW YORK GENERAL BUSINESS LAW § 350**
**(AGAINST ALL DEFENDANTS)**

1153–1160.    Paragraphs 1153–1160 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1153–1160 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## THIRD CAUSE OF ACTION

### PUBLIC NUISANCE
### (AGAINST ALL DEFENDANTS)

1161–1169.    Paragraphs 1161–1169 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1161–1169 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## FOURTH CAUSE OF ACTION

### VIOLATION OF NEW YORK SOCIAL SERVICES LAW § 145-B
### (AGAINST ALL DEFENDANTS)

1170–1175.    Paragraphs 1170–1175 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1170–1175 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## FIFTH CAUSE OF ACTION

### FRAUD
### (AGAINST ALL DEFENDANTS)

1176–1184.    Paragraphs 1176–1184 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1176–1184 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## SIXTH CAUSE OF ACTION

### UNJUST ENRICHMENT
### (AGAINST ALL DEFENDANTS)

1185–1191.    Paragraphs 1185–1191 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1185–1191 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## SEVENTH CAUSE OF ACTION

### NEGLIGENCE
### (AGAINST ALL DEFENDANTS)

1192–1207.    Paragraphs 1192–1207 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 1192–1207 are denied, except that the

Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**SPECIFIC RESPONSES TO THE CITY'S SUPPLEMENTAL AND AMENDED
ALLEGATIONS TO THE VERIFIED COMPLAINT**

**I.      INTRODUCTION[7]**

1–2.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

3.      Denied, except that the Express Scripts contracts with various types of entities to provide PBM services, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

4.      Paragraph 4 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 4 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

5.      Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

6.      Denied, except that the Express Scripts Entities admit that the quoted language appears in the document cited in footnote 3, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

7.      Denied, except that the Express Scripts Entities admit that the quoted language appears in the document cited in footnote 4, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

8.      With respect to the first sentence of paragraph 8, the Express Scripts Entities admit that PBMs provide services to prescription drug benefit plans sponsored by health insurers, self-insured employers, and state and federal government agencies. The remainder of paragraph 8 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

9.      Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

---

[7] This Answer includes the headings in the City's Supplemental Amended Complaint solely by way of reference. To the extent these headings contain any allegations to which the Express Scripts Entities must respond, the Express Scripts Entities deny each allegation.

10.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the second through sixth sentences of paragraph 10, except that formularies are lists of drugs covered by a pharmacy benefit plan. The first and last sentences are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

11.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the second sentence of paragraph 11, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

12.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12.

13.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13, except that all interests in the Express Scripts Entities are held by The Cigna Group, a publicly traded company.

14–16. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

17.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17, except that the Express Scripts Entities admit that Purdue Pharma introduced OxyContin in 1996. The Express Scripts Entities also admit that Purdue Pharma pleaded guilty to misbranding of OxyContin in 2007.

18.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.

19.     The Express Scripts Entities object to paragraph 19 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, The Express Scripts Entities deny the allegations in paragraph 19.

20–22. The Express Scripts Entities object to paragraphs 20–22 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of these specific allegations. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 20–22, except that the Express

Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

23.     The Express Scripts Entities object to paragraph 23 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 23.

24.     The Express Scripts Entities object to paragraph 24 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 24, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

25.     The Express Scripts Entities object to paragraph 25 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 25, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

26.     The Express Scripts Entities object to paragraph 26 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 26.

27.     The Express Scripts Entities object to paragraph 27 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 27, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

28.     The Express Scripts Entities object to paragraph 28 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient

to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 28.

29–30. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 29–30.

31.     Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

32–36. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

37.     The Express Scripts Entities object to paragraph 37 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 37 and refer to the source of the quoted language for its contents, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

38–39. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

40.     The Express Scripts Entities admit that Purdue pleaded guilty to misbranding OxyContin in 2007, agreed to pay a $635 million fine, and entered into a Corporate Integrity Agreement. The remainder of paragraph 40 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

41–43. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

44.     Denied, except that the Express Scripts Entities admit that prescription opioids are regulated as controlled substances, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

45.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45.

46. The first sentence of paragraph 46 is admitted. The remainder of paragraph 46 asserts legal conclusions that do not require a response. To the extent a response is required, the remainder of paragraph 46 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

47–50. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

51–52. Denied.

53. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

54. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54.

55–58. The Express Scripts Entities object to paragraphs 55–58 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, Express Scripts Entities deny the allegations in paragraphs 55–58.

59–72. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 59–72.

73. The Express Scripts Entities object to paragraph 73 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 73.

74–81. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 74–81.

82. The Express Scripts Entities object to paragraph 82 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 82.

83–84. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

85–86. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 85–86.

87–90. Paragraphs 87–90 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 87–90 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

91–94. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## II.      JURISDICTION AND VENUE

95–98. Paragraphs 95–98 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 95–98 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## III.     PARTIES

## A.     Plaintiff.

99–102.          The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 99–102.

103–104.          Paragraphs 103–104 asserts legal conclusions that do not require a response. To the extent a response is required, paragraphs 103–104 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

105.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## B.     Defendants.

### 1.      The Express Scripts Defendants.

106–108.          The allegations in paragraphs 106–108 are directed at Evernorth Health, Inc. (formerly known as Express Scripts Holding Company), which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 106–108, except that Evernorth Health, Inc., is a Delaware corporation.

109.     Admitted.

110.    Paragraph 110 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 110 is denied.

111.    Denied, except that Express Scripts provides PBM services.

112–114.    The allegations in paragraphs 112–114 are directed at Express Scripts Administrators LLC, which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 112–114.

115–116.    The allegations in paragraphs 115–116 are directed at Medco Health Solutions, Inc., which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 115–116, except that Medco Health Solutions, Inc., is a Delaware corporation.

117–118.    The allegations in paragraphs 117–118 are directed at ESI Mail Order Processing, Inc., which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 117–118, except that ESI Mail Order Processing, Inc., is a Delaware corporation.

119.    Admitted.

120.    Admitted.

121.    Paragraph 121 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 121 is denied, except that ESI Mail Pharmacy Service, Inc., operates in New York.

122–125.    The allegations in paragraphs 122–125 are directed at Express Scripts Pharmacy, Inc., which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 122–125, except that Express Scripts Pharmacy, Inc., is a Delaware corporation.

126.    Paragraph 126 does not make any allegations and therefore does not require a response. To the extent the City purports to refer to Express Scripts Pharmacy, Inc., as "Express Scripts Mail Order Pharmacy," the Express Scripts Entities note that the claims against Express Scripts Pharmacy, Inc., were dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so the Express Scripts Entities treat the references to "Express Scripts Mail Order Pharmacy" in the City's Supplemental Amended Complaint as referring only to ESI Mail Pharmacy Service, Inc.

127–128.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 127–128.

129–130.      The allegations in paragraphs 129–130 are directed at Express Scripts Specialty Distribution Services, Inc., which was dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so no response is required. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 129–130, except that Express Scripts Specialty Distribution Services, Inc., is a Delaware corporation.

131.      Paragraph 131 does not make any allegations and therefore does not require a response. To the extent the City purports to refer to Evernorth Health, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., Express Scripts Pharmacy, Inc., and/or Express Scripts Specialty Distribution Services., Inc., as "Express Scripts" or "ESI," the Express Scripts Entities note that the claims against those entities were dismissed on July 19, 2024, *see* Rochester Dkt. No. 142, so the Express Scripts Entities treat the references to "Express Scripts" or "ESI" in the City's Supplemental Amended Complaint as referring only to Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc.

132.      Denied.

133.      Denied, except that the Express Scripts Entities admit that on December 20, 2018, Cigna acquired Express Scripts.

134.      Denied, except that the Express Scripts Entities admit that on April 2, 2012, Express Scripts consummated a merger with Medco Health Solutions, Inc., and that both became wholly-owned subsidiaries of Express Scripts Holding Company.

135–136.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 135–136.

137.      Denied.

138.      The Express Scripts Entities object to paragraph 138 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 138.

139.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the first sentence of paragraph 139. The second sentence is denied.

140.     Denied, except that the Express Scripts Entities admit that Express Scripts develops formulary offerings, such as the National Preferred Formulary, that its clients can choose to accept, reject, or modify.

141–142.     Denied.

**2.     The Optum Defendants.**

143–202.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 143–202.

## IV.     THE ROLE OF PBMS IN PRESCRIPTION DRUG TRANSACTIONS

**A.     PBMs Operate on All Sides of Prescription Drug Transactions.**

203.     Express Scripts admits that it provides PBM services to its clients, which include various entities from different business sectors and the government. Express Scripts admits that it offers its clients formulary and utilization management products (including retrospective drug utilization review products) that its clients can accept, reject, or customize. Express Scripts admits that it receives limited data from pharmacies as part of adjudicating prescription claims following its clients' benefit designs. The remainder of paragraph 203 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

204.     Denied, except that Express Scripts contracts with certain drug manufacturers, certain pharmacies, and certain third-party payors, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

205.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants.

206.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 206.

207–208.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**B.      PBMs Use Their Formularies as Leverage to Negotiate with Drug Manufacturers.**

209.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 209, except that a formulary is a list of medications that an insurer or health plan covers.

210.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 210. The remainder of paragraph 210 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

211.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

212.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 212.

213–214.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

215.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 215.

216–217.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

218.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants.

219.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

220.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 220.

221–223.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

224.    Denied, except that some manufacturers pay Express Scripts administrative fees for certain administrative services it provides, and that the Express Scripts Entities lack knowledge or

information sufficient to form a belief about the truth of the allegations concerning other Defendants.

225.    The Express Scripts Entities object to paragraph 225 because the document in footnote 41 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 225.

226.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

227.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

228.    The Express Scripts Entities object to paragraph 228 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 228, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs.

**1.    Express Scripts' Formularies.**

229.    Denied, except that Express Scripts utilizes the Therapeutic Assessment Committee, P&T Committee, and the Value Assessment Committee to develop formularies.

230.    Admitted.

231–232.    Denied.

**2.    Optum's Formularies.**

233–237.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 233–237.

**C.    PBMs' Drug UM Programs.**

238.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants.

239–243.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

244. Denied, except that Express Scripts admits that it offers an Advanced Opioid Management program, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**D.  PBMs Contract with Pharmacies.**

245. Express Scripts admits that it contracts with retail pharmacies where health plan members can fill their prescriptions. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants.

246. Denied.

247. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 247.

248. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 248, except that both customers and PBMs pay pharmacies for some prescriptions.

249. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

250. The Express Scripts Entities object to paragraph 250 because the source is not identified with sufficient specificity, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 250, except that Express Scripts offers its clients drug utilization review.

251. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 251.

**V.  THE PBM DEFENDANTS' ROLE IN CAUSING THE OPIOID CRISIS**

**A.  The PBM Defendants and the Opioid Manufacturers Colluded to Ensure Virtually Unfettered Access to Opioids.**

**1.  The PBM Defendants Negotiated with the Opioid Manufacturers to Give Opioids Favorable Placement on National Formularies in Exchange for Rebates and Other Fees.**

252. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

253. The first sentence of paragraph 253 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations

concerning other Defendants. With respect to the second sentence of paragraph 253, the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in this sentence.

254–255.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 254–255.

256.    With respect to the first two sentences of paragraph 256, the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in these sentences. The third sentence of paragraph 256 is denied.

257.    The Express Scripts Entities object to paragraph 257 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 257.

258–264.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 258–264.

265.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

266.    Denied.

267.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 267.

268.    Denied.

269.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

270.    Denied, except that the Express Scripts Entities admit that Express Scripts negotiates with certain pharmaceutical drug manufacturers for rebates and administrative fees that its clients can use to lower their costs, and it develops formulary offerings that its clients can accept, reject, or modify, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph concerning other Defendants.

271–278.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

279. The Express Scripts Entities object to paragraph 279 because the document in footnote 62 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 279 and refer to the source of the quoted language for its contents.

280. Denied.

281. The Express Scripts Entities object to paragraph 281 because the document in footnote 64 is misquoted and the source of the quoted language in the fourth sentence is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 281 and refer to the sources of the quoted language for their contents.

282. The Express Scripts Entities object to paragraph 282 because the source of the quoted language in the second sentence is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 282 and refer to the source of the quoted language for its contents.

283. Denied.

284–288. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 284–288.

289. The Express Scripts Entities object to paragraph 289 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 289, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

290–291. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**2.    The PBM Defendants and the Opioid Manufacturers
Used Parity to Limit the Use of Utilization Management
Measures for Opioids.**

292–295.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

296.    The Express Scripts Entities object to paragraph 296 because the document in footnote 69 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 296, including that the Express Scripts Entities have "standard rebate agreements," and refers to the source of the quoted language for its contents.

297.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 297.

298.    The Express Scripts Entities object to paragraph 298 because the source of the quoted language in the second and third sentences is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 298 and refer to the sources of the quoted language for its contents.

299–300.    Denied.

301–305.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 301–305.

306.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

307.    Denied, except that the quoted language appears in the documents cited in footnotes 78 and 79.

308.    Paragraph 308 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 308 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**3.    The PBM Defendants Misrepresented that They Were
Using Their Formularies to Promote Safe Use and
Appropriate Prescribing of Opioids.**

309.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

310.    The Express Scripts Entities object to paragraph 310 because the source of the quoted language in several bullets is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 310 and refer to the sources of the quoted language for its contents, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

311.    Denied, except that the Express Scripts Entities admit that the quoted language appears in a letter dated September 4, 2013, from David Dederichs, Senior Director of Government Affairs at Express Scripts, Inc., to the Pennsylvania House of Representatives Committee on Health. The Express Scripts Entities refer to the document cited in footnote 80 for its contents.

312.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 312.

313.    The Express Scripts Entities object to paragraph 313 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 313 and refer to the source of the quoted language for its contents.

314.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**B.**    **During the Early Years of the Epidemic, the PBM Defendants Conspired with the Opioid Manufacturers to Expand the Opioid Market and Increase Opioid Utilization.**

315.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

316–317.    Denied.

318.    The Express Scripts Entities object to paragraph 318 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 318 and refer to the source of the quoted language for its contents.

319.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 319.

320.    The Express Scripts Entities object to paragraph 320 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 320, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

321.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**C.  For Two Decades after the PBM Defendants Knew the Opioid Epidemic Was Occurring, the PBM Defendants Continued to Conspire with the Opioid Manufacturers in the Deceptive Marketing of Opioids.**

322.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 322.

323.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

324.    Denied, except that Express Scripts Specialty Distribution Service contracted with certain pharmaceutical drug manufacturers to administer all or part of their Patient Assistance Programs.

325–326.    Denied.

327–329.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**1.  The PBM Defendants Disseminated the Opioid Manufacturers' Deceptive Propaganda.**

330.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

331.    The Express Scripts Entities object to paragraph 331 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 331.

66

332. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 332.

333. The Express Scripts Entities object to paragraph 333 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 333.

334–335. Denied.

336. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 336.

337. Denied.

338. The Express Scripts Entities object to paragraph 338 because the document in footnote 92 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 338 and refer to the source of the quoted language for its contents.

339. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 339.

340. Denied.

341. The Express Scripts Entities object to paragraph 341 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 341.

342–345. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 342–345.

346. The Express Scripts Entities object to paragraph 346 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 346, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

347–348. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 347–348.

349.    The Express Scripts Entities object to paragraph 349 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 349.

350–351.    Denied.

352–353.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 352–353.

**2.    The PBM Defendants' Affiliated Entities Provided Research, Data, and Consulting to the Opioid Manufacturers to Expand the Opioid Market.**

354.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

355.    Denied.

356–377.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 356–377.

378.    Denied, except that the quoted language appears in the document cited in footnote 124, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph concerning other Defendants.

**D.    The PBM Defendants Had Access to Real-Time Data Regarding Drug Utilization Which Gave Them a Unique Vantage Point into the Opioid Epidemic**

379.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**1.    The PBM Defendants track every prescription claim they process across all the health plans they service which provided them with uniquely granular and comprehensive data.**

380.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

381.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

382–384.    Denied.

385–389.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 385–389.

390.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

391.    The first sentence of paragraph 391 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 391.

392.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**2.    The PBM Defendants had knowledge about the opioid epidemic and about abuse and diversion.**

393–395.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 393–395.

396.    Denied, except that the chart in paragraph 396 appears in the document cited in footnote 134.

397.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 397.

398–399.    Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

400–401.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

402.    The Express Scripts Entities object to paragraph 402 because the document in footnote 138 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 402 and refer to the source of the quoted language for its contents.

403.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

404–405.    Denied.

406.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph

406, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

407.    Denied, except that the image in paragraph 407 appears in the document cited in footnote 145.

408.    Denied, except that the quoted language and image in paragraph 408 appear in the document cited in footnote 146.

409.    Denied, except that the quoted language and image in paragraph 409 appear in the document cited in footnote 147.

410.    The Express Scripts Entities object to paragraph 410 because the document in footnote 148 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 410 and refer to the sources of the quoted language for their contents.

411.    The Express Scripts Entities object to paragraph 411 because the document in footnote 150 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 411 and refer to the sources of the quoted language for their contents.

412.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

413.    The Express Scripts Entities object to paragraph 413 because the source of the image is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 413 and refer to the source of the image for its contents.

414.    Denied, except that the quoted language in paragraph 414 appears in the documents cited in footnotes 152 and 153.

415.    Denied, except that the quoted language in paragraph 415 appears in the documents cited in footnotes 154, 155, and 156.

416.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 416.

417.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**3. The PBM Defendants Failed to Timely Undertake Actions to Address the Opioid Epidemic that They Helped Create.**

418. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

419–421. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 419–421.

**a. The PBM Defendants chose not to use their claims data and their formulary and UM offerings to address overprescribing, abuse, and diversion.**

422–423. Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

424. Denied.

425. The Express Scripts Entities object to paragraph 425 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 425 and refer to the source of the quoted language for its contents.

426. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 426.

427. Denied, except that the quoted language in paragraph 427 appears in the document cited in footnote 165.

428. Denied.

429. The Express Scripts Entities object to paragraph 429 because the document in footnote 169 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 429 and refer to the source of the quoted language for its contents.

430. Denied.

431–432. The Express Scripts Entities object to paragraphs 431–432 because the document in footnote 170–171 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 431–432 and refer to the source of the quoted language for its contents.

433. Denied.

71

434.    The Express Scripts Entities object to paragraph 434 because the document in footnote 172 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 434 and refer to the source of the quoted language for its contents.

435.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 435.

436.    The Express Scripts Entities object to paragraph 436 because the document in footnote 173 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 436 and refer to the source of the quoted language for its contents.

437–439.        Denied.

440.    Denied, except that the quoted language in paragraph 440 appears in the document cited in footnote 174.

441.    The Express Scripts Entities object to paragraph 441 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 441.

442.    Denied.

443–447.        The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 443–447.

448.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

449–451.        The Express Scripts Entities object to paragraphs 449–451 because the source is not identified with sufficient specificity, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 449–451, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

452.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

453.    The first sentence of paragraph 453 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations

concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 453.

454–456.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 454–456.

457.    The Express Scripts Entities object to paragraph 457 because the document in footnote 190 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 457 and refers to the source of the quoted language for its contents.

458.    Denied, except that the quoted language in paragraph 458 appears in the documents cited in footnotes 191, 192, and 193.

459–460.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

461.    Denied, except that the Express Scripts Entities admit that the quoted language appears in the testimony of Snezana Mahon (who was at the time the Vice President of Clinical Product Development of Express Scripts) in February 2018 before the Senate Committee on Health, Education, Labor and Pensions.

462–468.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 462–468.

469.    Denied, except that the quoted language in paragraph 469 appears in the documents cited in footnotes 201 and 202, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**b.    The PBM Defendants chose not to use their "Drug Utilization Review" tools to address overprescribing, abuse and diversion**

470.    Denied, except that Express Scripts admits that it offers retrospective and concurrent drug utilization review programs for its clients (RDUR and CDUR), and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

471.    The Express Scripts Entities object to paragraph 471 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 471.

472–473.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

474.    Denied, except that the quoted language in paragraph 474 appears in the document cited in footnotes 203 and 204.

475.    The Express Scripts Entities object to paragraph 475 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 475.

476–479.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 476–479.

> **c.     The PBM Defendants failed to use their vast stores of data, their formulary and UM offerings, and their DURs to provide effective controls against diversion and/or to prevent the diversion and abuse of opioids**

480.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

481–482.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 481–482.

483.    Denied, except that the Express Scripts Entities admit that Express Scripts, Inc., provides PBM services and that ESI Mail Pharmacy Service, Inc., provides mail order pharmacy services.

**E.     Two Decades After They Knew Opioids Were Causing a Public Health Crisis, Express Scripts and Optum Finally Implemented Protocols to Address the Opioid Epidemic.**

484.    Denied, except that Express Scripts admits that it offers an Advanced Opioid Management program, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

485.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

486.    Denied, except that the quoted language in paragraph 486 appears in the document cited in footnote 209, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

487.    The Express Scripts Entities object to paragraph 487 because the source of the image is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 487 and refer to the source of the image for its contents.

488.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

489.    Denied, except that Express Scripts launched its Advanced Opioid Management program on September 1, 2017.

490.    Denied.

491.    The Express Scripts Entities object to paragraph 491 because the document in footnote 211 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 491 and refer to the source of the quoted language for its contents.

492–493.      Denied.

494.    Express Scripts admits that by 2020 more than 17.4 million members enrolled in Express Scripts' Advanced Opioid Management program.

495–498.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 495–498.

499.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the second sentence of paragraph 499, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

500.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**F.      Even After Implementing its Opioid Risk Management Program, Optum Continued Promoting Uncontrolled Opioid Sales Through Its Cash Card and Discount Card Businesses.**

501–506.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 501–506.

VI.   **AS MAIL ORDER PHARMACIES, EXPRESS SCRIPTS AND OPTUM DISPENSED OPIOIDS IN VIOLATION OF THE CONTROLLED SUBSTANCES ACT**

A.   **The Applicable Statutes.**

507–508.      The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 507–508.

509.      Paragraph 509 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 509 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

1.   **The Controlled Substances Act.**

510–518.      Paragraphs 510–518 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 510–518 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

519.      With respect to the first sentence of paragraph 519, ESI Mail Pharmacy admits that its mail order pharmacy is registered with the DEA. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in this sentence concerning other Defendants. The second sentence of paragraph 519 asserts legal conclusions that do not require a response. To the extent a response is required, the second sentence of paragraph 519 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

520.      The first sentence is denied, except that Express Scripts Pharmacy, Inc., and ESI Mail Pharmacy Service, Inc., are registered with the DEA. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the second sentence of paragraph 520.

521–527.      Paragraphs 521–527 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 521–527 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

528–533.      Paragraphs 528–533 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 528–533 are denied, except that the Express

Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 2. Pharmacies Are Obligated Not to Fill Prescriptions Until All Red Flags Are Resolved.

534–537.    Paragraphs 534–537 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 534–537 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### 3. The CSA Applies to All Persons Who Dispense Controlled Substances.

538–541.    Paragraphs 538–541 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 538–541 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

542.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## B. Defendants Violated the Controlled Substances Act.

543.    Paragraph 543 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 543 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

544.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 544.

545–548.    Paragraphs 545–548 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 545–548 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

549–550.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

551.    The first sentence of paragraph 551 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations

concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 551.

552–557.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

558–563.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 558–563.

564.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

565.    Denied, except that the Express Scripts Entities refer to the document cited in footnote 271 for its contents.

566.    Denied, except that ESI Mail Pharmacy developed a Controlled Substances Security Compliance Plan in or around 2012.

567.    Denied, except that Express Scripts Specialty Distribution Service contracted with certain pharmaceutical drug manufacturers to administer all or part of their Patient Assistance Programs.

568–570.    Denied.

571.    Denied, except that the quoted language appears in the document cited in footnote 272.

572.    Denied, except that Medco entered a settlement agreement with the United States concerning Medco's mail order pharmacies in 2006.

573.    The first sentence of paragraph 573 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 573.

574.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 574.

575–576.    The Express Scripts Entities object to paragraphs 575–576 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 575–576.

577–578.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 577–578.

579–580.     Paragraphs 579–580 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 579–580 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

581–583.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## VII.    EXPRESS SCRIPTS AND OPTUM CONTRIBUTED TO THE PUBLIC HEALTH CRISIS IN PLAINTIFF'S COMMUNITY

584.     Paragraph 584 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 584 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

585.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 585, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals.

586–587.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 586–587.

588–590.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

591.     The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 591.

## VIII.    FACTS PERTAINING TO THE FORMULARY & UM ENTERPRISE

592–595.     Paragraphs 592–595 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 592–595 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

596.     Denied, except that the Express Scripts Entities admit that prescription opioids can be addictive for some individuals, and that the Express Scripts Entities lack knowledge or

information sufficient to form a belief about the truth of the allegations concerning other Defendants.

597.     Paragraph 597 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 597 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

598.     Denied, except that the Express Scripts Entities admit that they are committed to the health and safety of their customers, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

599.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

600.     Paragraph 600 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 600 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

601–606.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**A.     Formation of the Formulary & UM Enterprise.**

607.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

608.     Paragraph 608 asserts a legal conclusion that does not require a response. To the extent a response is required, paragraph 608 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

609.     Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

610.     Denied, except that the Express Scripts Entities admit that Express Scripts negotiates with certain pharmaceutical drug manufacturers for rebates and administrative fees that its clients can use to lower their costs, and that the Express Scripts Entities lack knowledge or

information sufficient to form a belief about the truth of the allegations concerning other Defendants.

611.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

612.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants.

613–614.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

615–616.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 615–616.

617.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

618.    Denied, except that the Express Scripts is a member of the Pharmaceutical Care Management Association (**PCMA**) and Express Scripts President Adam Kautzner, Pharm.D., is a PCMA board member, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

619.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 619.

620.    The first sentence of paragraph 620 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. With respect to the second and third sentences of paragraph 620, the Express Scripts Entities admit that former Express Scripts President Amy Bricker was formerly the Chair of the PCMA Board of Directors. With respect to the fourth sentence of paragraph 620, the Express Scripts Entities admit that the PCMA appointed Mr. Kautzner as Chair of the PCMA Board of Directors on February 3, 2023.

621.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 621.

622.    Denied, except that the Express Scripts Entities admit that representatives of Express Scripts attend some PCMA conferences, and that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

623–624.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 623–624.

625.    Denied, except that the Express Scripts Entities admit that representatives of Express Scripts attended some PCMA conferences and met with other representatives in the healthcare industry, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

626.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 626.

627–628.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

629.    The first, second, and third sentences of paragraph 629 are denied, except that the Express Scripts Entities admit that representatives of Express Scripts attended some PCMA events and met with other representatives in the healthcare industry, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the remainder of paragraph 629.

630–631.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 630–631.

632–633.    The Express Scripts Entities object to paragraphs 632–633 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 632–633.

634.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

635.    The Express Scripts Entities object to paragraph 635 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient

to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 635.

636.    The first and second sentences of paragraph 636 are denied, except that the Express Scripts Entities admit that representatives of Express Scripts attended some PCMA events and met with other representatives in the healthcare industry, and that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants. The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the third sentence of paragraph 636.

637.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**B.     The Common Purpose and Fraudulent Scheme of the Formulary & UM Enterprise.**

638–639.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

640–646.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 640–646, except that certain opioid manufacturers, including Purdue, expanded the opioid market through misrepresentations and fraud.

647.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in the first and second sentences of paragraph 647, except that certain opioid manufacturers, including Purdue, expanded the opioid market through misrepresentations and fraud. The third and fourth sentences of paragraph 647 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

648–650.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 648–650, except that certain opioid manufacturers, including Purdue, expanded the opioid market through misrepresentations and fraud.

651–652.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

653.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other PBMs and other Defendants.

654.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 654.

655–656.       Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

657.    The Express Scripts Entities object to paragraph 657 because the document in footnote 304 is misquoted. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 657 and refer to the source of the quoted language for its contents. Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

658.    The Express Scripts Entities object to paragraph 658 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 658.

659.    The Express Scripts Entities object to paragraph 659 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 659.

660.    The Express Scripts Entities object to paragraph 660 because the source of the quoted language is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 660.

661.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

662.    The Express Scripts Entities object to paragraph 662 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 662.

663.    The Express Scripts Entities object to paragraph 663 because the source is not identified, and the Express Scripts Entities are thus without knowledge or information sufficient to form a belief as to the truth of this specific allegation. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraph 663.

664.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

665–666.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 665–666.

667.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

668–670.    The Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 668–670.

671.    Denied.

672.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

673.    Paragraph 673 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 673 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

674.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

**C.      Conduct and Participation of the Formulary & UM Enterprise
Through a Pattern of Racketeering Activity.**

675–676.    Paragraphs 675–676 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 675–676 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

677–681.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

682.    Paragraph 682 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 682 is denied, except that the Express Scripts Entities lack

knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

683–684.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

685–686.    Paragraphs 685–686 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 685–686 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

687–688.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

689–691.    Paragraphs 689–691 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 689–691 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## IX.    PLAINTIFF'S CLAIMS ARE TIMELY

692.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

693–694.    Paragraphs 693–694 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 693–604 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

695.    Paragraph 695 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 695 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

696–702.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

703.    Paragraph 703 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 703 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

704.    Paragraph 704 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 704 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

705–706.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## X.    DEFENDANTS ENTERED INTO AND ENGAGED IN A CIVIL CONSPIRACY

707–708.    Paragraphs 707–708 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 707–708 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

709.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

710.    Paragraph 710 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 710 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

711.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

712.    Paragraph 712 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 712 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

713.    Denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

714.    Paragraph 714 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 714 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

715.    Paragraph 715 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 715 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

716.    Paragraph 716 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 716 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## XI.    SUCCESSOR LIABILITY

717.    Paragraph 717 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 717 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## XII.    ALTER EGO LIABILITY

718.    Paragraph 718 asserts legal conclusions that do not require a response. To the extent a response is required, paragraph 718 is denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

## XIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF—CREATION OF A PUBLIC NUISANCE
**(Brought by Plaintiff against All Defendants)**

719–783.    Paragraphs 719–783 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 719–783 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### SECOND CLAIM FOR RELIEF—VIOLATION OF FEDERAL CIVIL RICO, 18 U.S.C. 1961, *ET SEQ.*; 1964(c)
#### (Brought by Plaintiff against All Defendants)

784–817.        Paragraphs 784–817 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 784–817 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### THIRD CLAIM FOR RELIEF—NEGLIGENCE AND GROSS NEGLIGENCE
#### (Brought by Plaintiff against All Defendants)

818–840.        Paragraphs 818–840 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 818–840 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### FOURTH CLAIM FOR RELIEF—DECEPTIVE ACTS AND PRACTICES: NEW YORK GENERAL BUSINESS LAW §349
#### (Brought by Plaintiff against All Defendants)

841–852.        Paragraphs 841–852 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 841–852 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### FIFTH CLAIM FOR RELIEF—FALSE ADVERTISING: NEW YORK GENERAL BUSINESS LAW §350
#### (Brought by Plaintiff against All Defendants)

853–863.        Paragraphs 853–863 assert legal conclusions that do not require a response. To the extent a response is required, paragraphs 853–863 are denied, except that the Express Scripts Entities lack knowledge or information sufficient to form a belief about the truth of the allegations concerning other Defendants.

### SIXTH CLAIM FOR RELIEF—VIOLATION OF NEW YORK SOCIAL SERVICES LAW § 145-B
#### (Brought by Plaintiff against All Defendants)

864–869.        Paragraphs 864–869 claim relief based on Social Services Law § 145-b, a claim that the City voluntarily withdrew on May 20, 2024. Rochester Dkt. No. 136 at 1 n.3. To the extent a response is required, the Express Scripts Entities deny the allegations in paragraphs 864–869.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof that it would not otherwise bear, the Express Scripts Entities assert the following affirmative and other defenses to the allegations and claims in the Original Complaint and Supplemental Amended Complaint (together, **Complaints**). The Express Scripts Entities deny wrongdoing or liability of any kind; no defense constitutes an admission that the Express Scripts Entities are liable to the City, that the City has been or will be injured or damaged, or that the City is entitled to relief from the Express Scripts Entities.

## FIRST DEFENSE

1.      The City's claims are barred or limited by the applicable statutes of limitations:

   a.      First, the City's negligence, N.Y. Gen. Bus. Law §§ 349–50, and public nuisance claims are subject to a three-year limitations period. NY CPLR §§ 214, 214-c. However, the alleged wrongful acts underpinning these claims occurred more than three years before the City filed suit on June 5, 2019. *See generally* NY CPLR § 214. To the extent the City claims the value of certain properties within the City decreased because of the alleged opioid crisis, the City discovered, or with the exercise of reasonable diligence should have discovered, any alleged injury underpinning this claim more than three years before the filing of this suit on June 5, 2019. *See* NY CPLR § 214-c; SAC ¶¶ 328, 461, 465, 657, 658, 691, 765.

   b.      Second, the City's fraud claim is subject to a six-year limitations period. NY CPLR § 213. However, the City discovered, or with the exercise of reasonable diligence should have discovered, any alleged fraud more than six years before the City filed suit on June 5, 2019. *See* OC ¶¶ 1092, 1176–1184.

   c.      Third, the City's unjust enrichment claim is also subject to a six-year limitations period. NY CPLR § 213. However, the alleged wrongful acts underpinning this claim occurred more than six years before the City filed suit on June 5, 2019. *See* OC ¶¶ 350, 1185–1191.

   d.      Finally, the City's RICO claim is subject to a four-year limitations period. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 152 (1987). However, the City knew, or with the exercise of reasonable

diligence should have known, facts sufficient to trigger this claim more than four years before the City filed suit on June 5, 2019.

e.  The City's own allegations confirm that all of its claims are time-barred. *See, e.g.*, SAC ¶¶ 17, 18, 29, 30, 32, 33, 38, 41, 50, 62, 265, 276, 277, 284, 286, 287, 290, 291, 301, 303, 310, 330, 342, 352, 353, 356, 358–362, 385, 400, 405, 419, 445, 579, 612.

## SECOND DEFENSE

2.  The City's claims are barred or limited by the equitable doctrine of laches. Based on the City's own allegations and ongoing discovery responses, its alleged injuries began in the late 1990s. *See, e.g.*, SAC ¶¶ 32, 33, 57, 254, 255, 291, 330, 393, 585. Yet, the City waited decades to sue the Express Scripts Entities. The City's unreasonable delay in filing suit has prejudiced the Express Scripts Entities and therefore the suit is barred by laches.

## THIRD DEFENSE

3.  The City's claims are barred or limited by the equitable doctrines of estoppel, unclean hands, and *in pari delicto*.

a.  The City's delay and failure to engage in protective measures bar its claims under the equitable doctrines of estoppel, unclean hands, and *in pari delicto*. The City claims its injuries began in the late 1990s, *see, e.g.*, SAC ¶¶ 32, 33, 57, 254, 255, 291, 330, 393, 585, but failed to take adequate reasonable measures to address opioid abuse, rejected proposed programs aimed at reducing opioid utilization, and failed to effectively enforce the law and prosecute violations thereof.

b.  Those equitable doctrines also bar the City from arguing that the placement of prescription opioids on a formulary somehow contributed to its injuries. Health-plan sponsors—including the City—chose and/or controlled formularies that included prescription opioids.

c.  Those equitable doctrines further bar the City from pursuing its claims in this lawsuit because the City provided loans to local pharmacies to purchase drug inventory from Rochester Drug Co-Operative, Inc., an organization which the City knew, or reasonably should have known, unlawfully

distributed opioids to pharmacy customers that were being sold and used illicitly.

d.    Those equitable doctrines further bar the City from pursuing its claims in this lawsuit because despite the City's knowledge of the Purdue guilty plea relating to the marketing of OxyContin in 2007, the addictive nature of Oxycontin, and the alleged "harms" of OxyContin, the City of Rochester had OxyContin on its own chosen and controlled Commercial and Medicare Part D Formularies at least until 2022. The City's Medicare Part D Formulary, for example, allows the dispensing and adjudication of claims for 90 tabs of OxyContin for 30 days and has no prior authorization.

### FOURTH DEFENSE

4.    The City's claims are barred or limited because the City lacks standing. The City lacks a concrete, particularized injury. The City's alleged injuries are not fairly traceable to the Express Scripts Entities. And the City's alleged injuries are not judicially redressable.

### FIFTH DEFENSE

5.    The City's claims are barred or limited because they intrude on and overlap with claims that the State of New York pressed in a separate litigation. In August 2018, the State of New York brought a *parens patriae* action asserting substantially similar claims on behalf of both the State and its citizens and political subdivisions. *See State of New York, ex rel. Letitia James v. Purdue Pharma, L.P., et al.,* Index No. 400016/2018 (Sup. Ct. Suffolk Cnty).

### SIXTH DEFENSE

6.    The City's claims are barred or limited by the political-question and separation-of-powers doctrines. The City's claims are non-justiciable because they would require the Court to make non-legal policy-based determinations about prescription opioids that are the province of the legislative and executive branches. Furthermore, there is no reliable judicial method for adjudicating the relief the City seeks, including for abatement of the alleged nuisance.

### SEVENTH DEFENSE

7.    The City's claims are barred or limited by the First Amendment to the United States Constitution and Article I, Section 8 of the New York State Constitution. The City's claims implicate the First Amendment and the New York State Constitution because the City attempts to impose liability based on the Express Scripts Entities' speech regarding prescription medications, including prescription opioids. *See, e.g.*, SAC ¶¶ 323, 327–341, 346–351, 354–355, 597, 604, 611–

652, 677–687, 723–724, 733–734, 738, 757, 781. Further, the City impermissibly seeks to impose a prior restraint on the Express Scripts Entities future speech through injunctive relief. *See, e.g.*, SAC ¶¶ 773, 817.

**EIGHTH DEFENSE**

8.      The City's claims are barred or limited because they are preempted by the Medicare Act, 42 U.S.C. §§ 1395 *et seq.* and the Medicaid Act, 42 U.S.C. §§ 1396 *et seq.*:

      a.      Under the Medicare Act, "the standards established under this part shall supersede any State law or regulation . . . with respect to [Part D prescription drug] plans which are offered by [Part D sponsors] under this part." 42 U.S.C. § 1395w–26(b)(3); *see also* 42 C.F.R. § 422.402 (2005) (same). When implementing the Medicare Act, the Centers for Medicare & Medicaid Services (**CMS**) established standards governing Part D formularies. *See, e.g.*, 42 C.F.R. § 423.120(b)(2)(ii)–(iv). Those federal standards preempt the City's claims that relate to Medicare plans, Medicare Part D formularies, or other aspects of Medicare.

      b.      Under the Medicaid Act, state laws and regulations are preempted to the extent there is a conflict between state and federal law. Federal law provides the basis for regulations, guidance, and policy related to pharmacy benefits and manufacturer requirements under Medicaid. *See, e.g.*, Medicaid Drug Policy—Laws, Regulations, and Federal Register Notices, https://www.medicaid.gov/medicaid/prescription-drugs/medicaid-drug-policy-laws-regulations-and-federal-register-notices/index.html.

      c.      The City's claims implicate Medicare Part D and Medicaid plans, Medicare Part D and Medicaid formularies, Medicare Part D standards, and Medicaid drug policy. *See, e.g.*, SAC ¶¶ 353, 426, 427, 429, 448–59. The City's claims are preempted because they attempt to impose liability in conflict with Medicare Part D standards and Medicaid policy, including by seeking to impose liability based on the placement of prescription drugs on Medicare Part D formularies approved by CMS and on Medicaid formularies.

### NINTH DEFENSE

9.    The City's claims are barred or limited because they are preempted by the Employee Retirement Income Security Act (**ERISA**). 29 U.S.C. § 1144.

a.    ERISA preempts "any and all State laws" that "relate to [an] employee benefit plan." 29 U.S.C. § 1144(a); 29 U.S.C. § 1002(1). The U.S. Supreme Court has identified "two categories of state laws that ERISA pre-empts." *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016).

b.    ERISA preempts the City's claims because they relate to employer-sponsored health plans and because they seek to force ERISA plans to adopt different prescription drug benefits for prescription opioids and other medications. *See, e.g.*, SAC ¶¶ 8, 195, 203, 275, 284–86, 332, 339, 414, 572, 615, 728

### TENTH DEFENSE

10.    The City's claims are barred or limited because they are preempted by the Patient Protection and Affordable Care Act (**ACA**). *See, e.g.*, 42 U.S.C. § 18000 *et seq.*, 42 U.S.C. § 300gg.

a.    The ACA requires that all insurance plans offered to individuals and small groups must include an "essential health benefits package." *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 949 (9th Cir. 2020), quoting 42 U.S.C. § 300gg-6(a); *see also* 45 C.F.R. § 147.150(a).

b.    The U.S. Department of Health and Human Services has issued a series of regulations specifying the requirements for "essential health benefits." *See* 45 C.F.R. § 156.100 *et seq.* These regulations require each state to select a benchmark plan that covers a minimum set of essential health benefits (**EHB benchmark plan**). *See id.* §§ 156.100, 156.110, 156.115, 156.122. Those regulations state that a "health plan does not provide essential health benefits unless it . . . covers at least the greater of: (i) one drug in every United State Pharmacopeia (USP) category and class; or (ii) the same number of prescription drugs in each category and class as the EHB-benchmark plan[.]" *Id.* § 156.122(a).

c.      New York's EHB benchmark plan contains multiple long-acting and short-acting opioid medications. As a result, every individual or small group plan administered by Express Scripts in New York is required to cover at least as many prescription opioids in each category and class as New York's EHB benchmark plan.

d.      The City seeks to impose liability on Express Scripts based on the placement of prescription opioids on formularies. *See, e.g.*, SAC ¶¶ 10, 11, 276, 278, 281, 283, 290, 291, 309, 638, 678–681, 724, 733, 773, 817, 845. The ACA preempts the City's claims because the City seeks to impose liability based on actions required by the ACA and its implementing regulations.

### ELEVENTH DEFENSE

11.     The City's claims are barred or limited because they are preempted by TRICARE.

a.      The TRICARE program, administered by the Department of Defense (**DoD**), provides medical and dental care for military members and their families. 10 U.S.C. § 1071. The DoD is required by law to enter into contracts to provide healthcare services to TRICARE members. *See* 10 U.S.C. § 1073a. The DoD is also statutorily required to establish an "effective, efficient, integrated pharmacy benefits program" for TRICARE. 10 U.S.C. § 1074g. DoD established "a uniform formulary" that encompasses "the complete range of therapeutic classes." 10 U.S.C. § 1074g(a)(1)–(2).

b.      To satisfy these statutory mandates, DOD contracted with Express Scripts to provide pharmacy benefits and to administer the TRICARE Home Delivery/Mail Order Pharmacy (**TMOP**) for members of TRICARE across the country, including in New York. The TRICARE statute expressly preempts any state law claims that relate to TRICARE contracts. 10 U.S.C. § 1103(a); 32 C.F.R. § 199.21(o)(2).

c.      The contract between the Express Scripts Entities and the DoD, as well as the relevant related statutes and regulations, establish specific standards for the administration of TRICARE pharmacy benefit management and mail

order pharmacy services. The Express Scripts Entities adhere to those standards in performing services under the contract. State law claims, such as those here, that attempt to dictate or alter the terms of this arrangement would interfere with nationally uniform TRICARE plan administration and therefore are expressly preempted.

## TWELFTH DEFENSE

12.     The City's claims are barred or limited because they are preempted by the Federal Employee Health Benefits Act (**FEHBA**). 5 U.S.C. § 8901, *et seq.*

a.      FEHBA "authorize[s] the Office of Personnel Management (**OPM**) to contract with private carriers for federal employees' health insurance." *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 90 (2017). FEHBA's express preemption clause provides that the terms of a contract entered into under FEHBA "relate[d] to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1).

b.      OPM's contracts with insurance carriers for health benefit plans authorized by FEHBA establish specific standards for PBM arrangements. State law claims, such as those here, that attempt to dictate the terms of such arrangements would interfere with nationally uniform FEHBA plan administration and are expressly preempted. *See, e.g.*, SAC ¶¶ 8 , 203, 332, 339, 414, 572, 615, 728. As one such provider, the Express Scripts Entities are subject to OPM's requirements, oversight, and control in administering and supporting FEHBA plans, including specific regulations OPM established to govern PBM providers, *see* 48 C.F.R. §§ 1602.l 70-16(a), 1604.720l(a), 1652.204-74(a), 1652.204-70, and 1652.246-70, and specific guidelines OPM issued to govern pharmacy benefits, including guidelines on formulary management, utilization management, and prescription opioids, among other topics. *See, e.g.*, FEHB Program Carrier Letter 2019-10,                      https://www.opm.gov/healthcare-

insurance/healthcare/carriers/2019/2019-10.pdf. The formularies used by a PBM are also subject to OPM reporting requirements. *See* Federal Employees Health Benefits Program Standard Contract for Experience-Rated Health Maintenance Organization Carriers (2019) ("Standard Contract") at 1-17, § 1.28(a)(5), https://www.opm.gov/healthcare-insurance/healthcare/carriers/ experience-rated.doc.

### THIRTEENTH DEFENSE

13.     The City's claims are barred or limited because they are preempted by the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 355(b)(1), (d), (j)(2)(A)(v), (j)(4)(G), and its implementing regulations, 21 C.F.R. §§ 314.94(a)(8), 314.127(a)(7). The Express Scripts Entities have no authority to alter the labels of prescription opioids, which are designed by the manufacturers and approved by the FDA. In addition, the Express Scripts Entities were entitled to reasonably rely on the FDA's determinations, including, among others, (a) that there was "no physiological or pharmacological basis upon which to differentiate the treatment of chronic pain in a cancer setting or patient from the treatment of chronic pain in the absence of cancer"; and (b) "to specify or recommend a maximum daily dose or duration for any opioid." *See* FDA Response to Petition by Physicians for Responsible Opioid Prescribing (**PROP**), Sept. 10, 2013, http://www.supportprop.org/wp-content/uploads/2014/12/FDA_CDER_Response_to_Physicians_for_Responsible_Opioid_Prescribing_Partial_Petition_Approval_and_Denial.pdf.

### FOURTEENTH DEFENSE

14.     The City's claims are barred or limited by the learned-intermediary doctrine. The Express Scripts Entities do not examine patients, diagnose patients, nor write opioid prescriptions. Here, various physicians' decisions to prescribe opioids based on clinical assessments of medical appropriateness and necessity sever any link between the Express Scripts Entities' alleged conduct and the City's alleged injuries. Further, the prescribers themselves had independent knowledge of the benefits and risks of prescription opioids, and any alleged act or omission by the Express Scripts Entities are not the but-for or proximate cause of any patient's alleged injury. *See, e.g.*, SAC ¶ 419. Nowhere does the City allege that any physician chose to prescribe opioids that the physician believed were not medically appropriate because the medications appeared on a particular formulary (or were less expensive than alternative medications).

## FIFTEENTH DEFENSE

15.     The City's claims are barred or limited by the sophisticated user doctrine. Because of their training and expertise, prescribers who prescribed opioid medications knew or should have known of the potential risks. Moreover, the City had personnel trained in benefit management and also hired brokers and third-party administrators to help manage the City's health plans. Under the sophisticated user doctrine, the Express Scripts Entities had no duty to warn the City of the risks and complications of which members of the medical community and/or other trained professionals knew or should have known.

## SIXTEENTH DEFENSE

16.     The City's claims are barred or limited by Dillon's Rule. Under Dillon's Rule, without legislative authorization, local governments cannot recover in tort costs for providing emergency and public services. The City seeks to recover its alleged increased costs for medical care, law enforcement, and other public services in response to a long-standing social condition. The City also asserts that those alleged costs were or will be incurred as part of the abatement of a claimed public nuisance. For example, the City seeks injuries for "the handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations, arrests, adjudications, and incarcerations, treating opioid-dependent newborns in neonatal intensive care units, burying the dead, and placing thousands of children in foster care placement, among others." *See* SAC ¶ 83; *see also id.* ¶¶ 768, 773, 813. The New York General Assembly has not authorized the City to sue to recover those costs, so Dillon's Rule bars the City's claims.

## SEVENTEENTH DEFENSE

17.     The City's claims are barred or limited by the municipal-cost-recovery rule (otherwise known as the free-public-services doctrine). Under the municipal-cost-recovery rule, a political subdivision cannot recover its costs for responding to an alleged tortfeasor's conduct—including for police and emergency response services. The City seeks to recover costs associated with municipal services that the City is duty-bound to provide, including "increased costs of police, emergency, health, prosecution, corrections, rehabilitation, and other services." *See* SAC ¶ 768; *see also id.* ¶¶ 83, 773, 813. The New York General Assembly has not authorized the City to recover for municipal costs through a tort action.

## EIGHTEENTH DEFENSE

18.     The City's claims are barred or limited by the economic-loss doctrine. The economic-loss doctrine "prohibits recovery in tort for purely economic losses" and is intended to

"maintain the fundamental distinction between tort law and contract law." 1 Minzer, et. al., INJURIES IN TORT ACTIONS § 1.02 (Matthew Bender 1986). The economic-loss doctrine bars the City's claims because the City seeks economic injuries for emergency, social, medical, and police services. *See, e.g.*, SAC ¶¶ 83, 768, 773, 813.

### NINETEENTH DEFENSE

19.     The City's claims are barred or limited by the voluntary-payment doctrine. The City seeks to recover injuries for voluntary payments made without contractual or other legal obligation.

### TWENTIETH DEFENSE

20.     The City's claims are barred or limited by the Due Process Clauses of the U.S. and New York Constitutions. Imposing liability for a local government's police expenditures under the guise of "abatement" injuries, *see, e.g.*, SAC ¶¶ 83, 768, 773, 813, violates due process because there was no prior legal notice that these costs could be recovered in a tort action, nor was there prior notice or opportunity for the Express Scripts Entities to abate the alleged nuisance.

### TWENTY-FIRST DEFENSE

21.     The City's claims are barred or limited inasmuch as they violate the Ex Post Facto clauses of the U.S. and New York Constitutions.

### TWENTY-SECOND DEFENSE

22.     The City's claims are barred or limited by the derivative-injury rule and the remoteness doctrine. The City cannot recover payments that it allegedly made on behalf of its residents to reimburse any expenses for health care, pharmaceutical care, and/or other public services. *See, e.g.*, SAC ¶¶ 83, 768, 773, 813. Moreover, the City does not have a cognizable property or commercial interest either in the public monies that it expends for legally required public services or in the public services themselves.

### TWENTY-THIRD DEFENSE

23.     The City's claims are barred or limited due to the City's failure to exercise reasonable care and diligence to avoid loss and mitigate injuries. Among other things, the City failed to timely implement programs targeted at reducing opioid utilization, failed to notify the Express Scripts Entities that their practices were allegedly contributing to a public nuisance, and delayed for years in bringing a lawsuit.

## TWENTY-FOURTH DEFENSE

24.      The City's claims are barred or limited by the doctrines of contributory or comparative negligence and comparative fault. NY CPLR § 1411. The City, by its own negligence or conduct, contributed directly and proximately to any alleged injuries or public nuisance, including but not limited to through the following ways:

a.    Despite alleged concerns over opioid abuse and misuse, the City failed to implement programs targeted at reducing opioid abuse or misuse, including for its own employees under the health care plan the City sponsored.

b.    Despite the fact that various states and counties had already acted, the City failed to notify the Express Scripts Entities or any other PBMs or pharmacies that any of their practices were allegedly contributing to an alleged injury to the City and delayed for years in bringing a lawsuit.

c.    Despite knowledge of Purdue's guilty plea in 2007 for criminal conspiracy and improper marketing of OxyContin, the City failed to act to curb the oversupply of prescription opioids in the City.

d.    Despite knowledge of the utilization rate of prescription opioids within the City's own sponsored health plan, the City failed to act to limit the use of prescription opioids.

e.    Despite the availability of public information about the addictive nature of prescription opioids, including Express Scripts' 2014 "A Nation in Pain" publication, the City failed to act to limit the supply, distribution, prescribing, or dispensing of prescription opioids.

f.    Despite knowledge that Rochester Drug Co-Operative, Inc. was violating narcotics laws through its distribution of controlled substances that the company knew were being sold and used illicitly, the City failed to investigate, prosecute, sue, or otherwise take action against Rochester Drug Co-Operative, Inc.

g.    These are illustrative examples only. Discovery or other facts may demonstrate other bases for the City's culpability.

**TWENTY-FIFTH DEFENSE**

25.     Any verdict or judgment that the City might recover must be reduced under NY CPLR § 1402 by amounts that the City has or will receive as indemnification for any past or future claims for economic loss.

**TWENTY-SIXTH DEFENSE**

26.     Any monetary relief claimed by the City must be reduced by the amount of funding received, or to be received, for healthcare and other services from the federal government or other non-City sources.

**TWENTY-SEVENTH DEFENSE**

27.     Any monetary relief claimed by the City must be reduced to the extent that the City is seeking relief for alleged injuries or expenses related to the same user(s) of the subject drugs, or injuries recovered or recoverable by other actual or potential plaintiffs.

**TWENTY-EIGHTH DEFENSE**

28.     The City's claims are barred or limited by NY CPLR § 1411 because responsibility for 50% or more of the City's alleged injuries lies with the City itself and/or with third parties over whom the Express Scripts Entities have no control.

**TWENTY-NINTH DEFENSE**

29.     The City's claims for punitive or exemplary injuries or other civil penalties are barred or limited by applicable laws. Alternatively, the City's claims for those injuries are unconstitutional insofar as they violate the due process protections afforded by the U.S. Constitution, the excessive fines cause of the Eighth Amendment of the U.S. Constitution; the Full Faith and Credit Clause of the U.S. Constitution; and Article I, Section 6 of the New York Constitution.

**THIRTIETH DEFENSE**

30.     The City's claims are barred or limited because its claims do not arise from the same transaction or occurrences as its claims against other defendants, as required for joinder of parties. In the alternative, the City's claims are barred or limited because the City failed to join all necessary and indispensable parties, including drug manufacturers, health care providers, prescribers, patients, and other third parties who the City alleges engaged in the unauthorized or illicit prescription, dispensing, diversion, marketing, or use of prescription opioid products. *See* NY CPLR § 1001. For example, the Complaints include allegations about unnamed physicians, pill mill operators, and drug dealers, but those physicians, entities, and individuals are not named

as defendants. *See, e.g.*, SAC ¶¶ 422, 478, 584 (discussing overprescribing), ¶ 751 (discussing the "black market" and availability of heroin and synthetic opioids); ¶ 813(i) (discussing street-level drug dealers); *see also* Plaintiff's Responses to Defendants' Interrogatory No. 14 (identifying several "prescribers, pharmacies, pharmacists, and drug dealers who have engaged in inappropriate, unnecessary, or illicit prescribing, dispensing, diversion, or use of Prescription Opioids in the state of New York").

### THIRTY-FIRST DEFENSE

31.     The City's claims are barred or limited by the doctrines of waiver and ratification. Inasmuch as the City alleges that including prescription opioids on formularies contributed to its injuries, the City included prescription opioids on its own formularies.

### THIRTY-SECOND DEFENSE

32.     The City's claims fail to state a claim upon which relief can be granted.

### THIRTY-THIRD DEFENSE

34.     The City's claims are barred or limited inasmuch as the prescription medications in question were misused, modified, altered, or changed from the condition in which they were sold.

### THIRTY-FOUR DEFENSE

35.     The City's claims for equitable relief are barred or limited because it has adequate remedies at law.

### THIRTY-FIFTH DEFENSE

36.     The City's claims are barred or limited to the extent that the Express Scripts Entities are entitled to a credit or setoff for any and all sums the City has received in the way of any and all settlements or from any other entity to abate the alleged nuisance, including if the City settled with one or more tortfeasors, then the Express Scripts Entities are entitled to a monetary offset against the amount of any verdict or judgment that the City may recover against them pursuant to New York Gen. Oblig. L. § 15-108; specifically, the verdict or judgment must be reduced by the highest of the amount stipulated in the release, the consideration paid for the release, or the settling tortfeasor's equitable share of the injuries as found by the jury or trier of fact.

### THIRTY-SIXTH DEFENSE

37.     The City's claims are barred or limited because New York law requires apportionment of liability on Plaintiff's claims based on fault. The Express Scripts Entities are entitled to apportion fault to the following entities, including but not limited to:

a. CVS Health, which operates CVS Caremark (**Caremark**), a major PBM that manages prescription drug benefits for numerous health plans and persons in the City. To the extent the Express Scripts Entities can be held liable on plaintiffs' theories, they apply with equal force to Caremark. *See* OC ¶¶ 252–260.

b. Opioid manufacturers who improperly marketed and sold prescription opioids must also bear an equitable share of fault.

c. Endo International plc (**Endo**) is a generics and specialty branded pharmaceutical manufacturer. Endo and several of its affiliates, including Endo Health Solutions Inc. (**EHSI**), filed for bankruptcy in 2022. In February 2024, EHSI agreed to resolve criminal and civil investigations related to the company's sales and marketing of the opioid drug Opana ER with INTAC (**Opana ER**). Under the criminal resolution, EHSI agreed to plead guilty to violating the Federal Food, Drug and Cosmetic Act by introducing misbranded drugs into interstate commerce, pay a criminal fine of $1.086 billion, and pay an additional $450 million in criminal forfeiture. Under the civil resolution, EHSI agreed to pay $475.6 million to resolve its liability under the False Claims Act. Over 33 million opioid units manufactured by Endo were sold into the City during 2006–2019. *See* OC ¶¶ 74, 81–83, 167, 526, 533, 543, 800–890; *see also* SAC ¶¶ 57, 92, 347.

d. Insys Therapeutics (**Insys**) was a predominantly generics-focused pharmaceutical manufacturer that also made Subsys, a sublingual liquid form of fentanyl. Insys filed for bankruptcy in 2019. The following year, Insys's founder and former Chairman of the Board, John Kapoor, was sentenced to 66 months in prison for orchestrating a scheme to bribe practitioners to prescribe Subsys. According to the City, Insys played a substantial role in the City's alleged opioid crisis. *See* OC ¶¶ 1013–1035; *see also* SAC ¶ 57.

e. Mallinckrodt Pharmaceuticals (**Mallinckrodt**) is a generics and specialty branded pharmaceutical manufacturer. Mallinckrodt filed for bankruptcy in 2020 and agreed to pay $1.7 billion to settle approximately 3,000 lawsuits

alleging it used deceptive marketing tactics to boost opioid sales. Over 144 million opioid units manufactured by Mallinckrodt and its subsidiaries were sold into the City during 2006–2019. *See* OC ¶¶ 168–170; *see also* SAC ¶ 57.

f.   Purdue Pharma (**Purdue**), a pharmaceutical manufacturer, introduced OxyContin in the mid-1990s and began a campaign to fraudulently portray it as safe and effective for a variety of conditions, including chronic pain calling for long-term use. Purdue's false marketing led to the FDA issuing a series of warning letters about OxyContin to Purdue in the early-2000s. Ultimately, Purdue pled guilty to misbranding OxyContin in 2007, agreed to pay a $635 million fine, and entered into a Corporate Integrity Agreement. Over 22 million opioid units manufactured by Purdue were sold into the City during 2006–2019. *See* OC ¶¶ 533, 689–695, 941–1012; *see also* SAC ¶¶ 17, 57, 92, 254–255.

g.   Hikma Pharmaceuticals (**Hikma**) is a generics pharmaceutical manufacturer. In February 2024, Hikma agreed to pay up to $115 million in cash and $35 million in donations of Hikma's naloxone, an opioid antagonist used to reverse the effects of opioid overdose, to resolve the majority of opioid related cases brought against the company by U.S. states, their subdivisions, and tribal nations. Over 12 million opioid units manufactured by Hikma were sold into the City during 2006–2019. *See* OC ¶ 173.

h.   Allergan/Watson/Actavis (**Allergan**) is a branded pharmaceuticals manufacturer that formerly made generics as well. Allergan agreed to pay $2.37 billion to resolve more than 2,500 opioid-related lawsuits brought by states, local governments, and tribes alleging that Allergan deceptively marketed prescription opioids by downplaying the risk of addiction, overstating their benefits, and encouraging doctors to treat patients showing signs of addiction by prescribing them more opioids, as well as failing to maintain effective controls to prevent diversion of prescription opioids. Over 24 million opioid units manufactured by Allergan were sold into the

City during 2006–2019. *See* OC ¶¶ 84–85, 524, 533, 539, 541, 543, 699–726.

i.      Janssen Pharmaceuticals, Inc. (**Janssen**), is a subsidiary of Johnson & Johnson and a manufacturer of generic and branded pharmaceuticals. Janssen and Johnson & Johnson have agreed to pay billions of dollars, including a $5 billion nationwide settlement, to settle certain lawsuits based on the companies' role in the opioid crisis. Over 1.5 million opioid units manufactured by Janssen and Johnson & Johnson were sold into the City during 2006–2019. *See* OC ¶¶ 77-80, 533, 541, 543, 891–940; *see also* SAC ¶¶ 57, 92.

k.      Teva Pharmaceuticals and its subsidiary, Cephalon, Inc. (together, **Teva**), is a pharmaceutical manufacturer focusing primarily on generic drugs. Teva settled with all fifty states, agreeing to pay over $4.25 billion, for litigation stemming from its role in the opioid crisis. Over 2 million opioid units manufactured by Teva were sold into the City during 2006–2019. *See* OC ¶¶ 69–76, 181, 203, 533, 571 727–799; *see also* SAC ¶¶ 57, 92, 291 n.68.

l.      Amneal Pharmaceuticals, Inc. (**Amneal**), is a generics and specialty pharmaceutical manufacturer. Amneal agreed to pay $272.5 million to settle approximately 900 lawsuits brought by state, local and Native American jurisdictions claiming that the company fueled the opioid crisis by failing to act on suspicious opioid orders. Over 16 million opioid units manufactured by Amneal were sold into the City during 2006–2019. *See* OC ¶ 174.

m.      Assertio Therapeutics, Inc. (formerly and f/k/a Depomed, Inc.) (**Depomed**), is a branded pharmaceutical manufacturer. Doctors have settled claims brought by the Justice Department asserting that they prescribed Depomed's primary opioid, Nucynta, to Medicare beneficiaries in exchange, at least in part, for receiving paid speaking and consulting work from Depomed. According to the City, Depomed played a substantial role in the City's alleged opioid crisis. *See* OC ¶ 80 n.32.

n.      Mylan Pharmaceuticals (**Mylan**) was a generic and specialty pharmaceuticals manufacturer that merged with a Pfizer Inc. entity, the

Upjohn Company, to form Viatris Inc. in 2020. Mylan has settled certain opioid lawsuits and has been the subject of subpoenas, including one from the Department of Justice, regarding the manufacture, marketing, and sale of prescription opioids. Over 2 million opioid units manufactured by Mylan were sold into the City during 2006–2019. *See* OC ¶ 171.

o. Sandoz, Inc. (**Sandoz**), is a generic pharmaceuticals manufacturer. In 2023, Sandoz agreed to pay almost $100 million to settle various lawsuits stemming from Sandoz's role in the opioid crisis. Over 250,000 opioid units manufactured by Sandoz were sold into the City during 2006–2019. *See* OC ¶ 172.

p. Distributors who sold prescription opioids to retailers also played a role. Distributors contributed to Plaintiff's alleged harm by failing to prevent diversion, detect pill mills, and prevent an alleged oversupply of prescription opioids in the City.

q. Rochester Drug Cooperative, Inc. (**RDC**), headquartered in the City since 1905, lacked a functional system to report suspicious orders and repeatedly shipped to known pill mills. Due to its criminal exposure, RDC shut down operations and its former CEO is serving a 27-month prison sentence for conspiring to unlawfully distribute controlled substances and defraud the DEA. RDC distributed over 12 million opioid units into the City. *See* OC ¶¶ 144–148.

r. McKesson, Inc. (**McKesson**), partners with pharmacies, hospitals, and medical practices to distribute prescription drugs, including prescription opioids sold and shipped into the City without the appropriate controls. In 2022, McKesson agreed to pay $7.4 billion to settle claims related to prescription opioids. McKesson distributed over 134 million opioid units into the City. *See* OC ¶¶ 88–94, 138–143, 1118–1121, 1142.

s. AmerisourceBergen Drug, Inc. (**AmerisourceBergen**), distributed prescription medication to health systems, community practices, independent pharmacies, and alternative care settings. In 2022, AmerisourceBergen agreed to pay $6.1 billion to settle claims related to

prescription opioids. AmerisourceBergen distributed over 10 million opioid units into the City. *See* OC ¶¶ 100–116, 1124, 1142.

t. Cardinal Health, Inc. (**Cardinal**), distributed prescription opioids to the City, thereby contributing to the alleged oversupply of prescription opioids. In 2022, Cardinal agreed to pay $6 billion to settle claims related to prescription opioids. Cardinal distributed over 80 million opioid units into the City. *See* OC ¶¶ 95–99, 132–137, 208–210, 241, 1122–1123, 1138, 1142.

u. Retail pharmacies and hospitals who dispensed prescription opioids in-person to patients must also be considered. These pharmacies include, but are not limited to:

v. Wegmans Food Markets, Inc. (**Wegmans**), which operates several large pharmacies in the City and dispenses more prescription opioids than any other pharmacy in the City. Wegmans pharmacies purchased over 82 million opioid units in the City during 2006–2019, which is more than any other pharmacy in the City.

w. Saratoga Pharmacy (**Saratoga**), a community pharmacy operating in the City, which purchased over 1 million opioid units during 2006–2019.

x. CVS Health operates CVS Pharmacy, which operates 26 retail pharmacies in the Rochester area. CVS Health agreed to pay approximately $5 billion to settle claims related to prescription opioids. CVS pharmacies purchased over 38 million opioid units in the City during 2006–2019. *See* OC ¶¶ 225–226, 280, 386–458, 471–74.

y. Walgreens Pharmacy (**Walgreens**), which operates at least 13 retail pharmacies in the City and dispenses a substantial amount of prescription opioids. In 2023, Walgreens settled claims related to prescription opioids for $5.7 billion. Walgreens pharmacies purchased over 18 million opioid units in the City during 2006–2019. *See* OC ¶¶ 231–234, 386–443, 459–467, 471–474, 1142.

z. Rite Aid Pharmacy (**Rite Aid**), which operates at least 3 retail pharmacies in the City and dispenses a substantial amount of prescription opioids. In

2022, Rite Aid paid approximately $30 million to resolve a lawsuit alleging that it contributed to an oversupply of prescription opioids. Rite Aid pharmacies purchased over 25 million opioid units in the City during 2006–2019. *See* OC ¶¶ 227–230, 280, 386–443, 468–474.

aa.   Drug cartels, drug dealers, and drug traffickers—as ongoing discovery will reveal—played and continue to play a substantial role in diverting, importing, and distributing legal and illegal opioids into the City. Each must bear its equitable share of fault. *See* OC ¶ 402; *see also* SAC ¶ 813.

bb.   Pill mills, rogue pain clinics, and the doctors and other health professionals who work there—as ongoing discovery will reveal—played and continue to play a substantial role in the alleged inappropriate prescribing and misuse of prescription opioids in the City. Each must bear its equitable share of fault. *See* OC ¶¶ 440, 463, 472, 578.

cc.   State and federal government agencies, such as the DEA, FDA, CDC, New York State Department of Health, New York State Department of Education, among others, that failed to curb prescription opioid abuse—as ongoing discovery will reveal—played and continue to play a substantial role in the alleged oversupply, inappropriate prescribing, and misuse of prescription opioids in the City. Each must bear its equitable share of fault.

dd.   The American Pain Society must also bear its equitable share of fault. The American Pain Society represented to the medical community, including prescribers, pharmacies, and PBMs, that addiction to prescription opioids was rare and low. The City alleges that American Pain Society and similar professional medical organizations were in fact Purdue-funded "front groups" that were paid to publish misinformation about prescription opioids. SAC ¶¶ 338, 340, 419, 643-646. Any such relationships were unknown to the broader medical community, including the FDA, CDC, and the Express Scripts Entities. In fact, as recently as 2016 and 2022, the CDC relied upon studies published by the American Pain Society in its practice guidelines for the use of opioids. To the extent any medical organizations or medical societies such as American Pain Society intentionally misled

108

Express Scripts and the medical community regarding the risks and benefits of prescription opioids, those entities should bear an equitable share of fault. In initial discovery responses, the City itself has recognized the role that the American Pain Society played in the crisis. *See also* OC ¶¶ 575, 596, 598, 599, 617, 636, 717, 791, 835, 840, 872, 944.

ee.  Finally, the City, in its August 9, 2024 discovery responses to Express Scripts Entities' Second Set of Interrogatories, provided a list of all prescribers, pharmacies, pharmacists, and drug dealers who have allegedly engaged in illicit prescribing, dispensing, diversion, and use of prescription opioids in the state of New York and a list of all persons, companies, groups, organizations, and government entities who contributed to the alleged public nuisance. Each must bear its equitable share of fault.

ff.  The Express Scripts Entities explicitly reserve the right to amend this Defense to identify additional parties who should be apportioned their equitable share of fault based upon developments in discovery.

## THIRTY-SEVENTH DEFENSE

38.  The City's claims are barred or limited to the extent it seeks to recover multiple times for the same harm, as the New York legislature has developed statutes to avoid double recovery.

## THIRTY-EIGHTH DEFENSE

39.  The City's claims are barred or limited by the principles of informed consent and assumption of the risk, whether primary, express, or implied. For example, the City assumed any risk by agreeing to coverage of prescription opioids under a specific formulary. The City knew the risks and dangers necessarily incident to prescribing opioids, and assumed all the ordinary risks, hazards and dangers involved. Any injuries sustained by the City were the result of hazards, risks or dangers ordinarily assumed by the City, and were well known to the City. Additionally, the City's claims are barred or limited by patients' provision of informed consent.

## THIRTY-NINTH DEFENSE

40.  The City's claims are barred or limited because the City lacks a private right of action to enforce the federal Controlled Substances Act or applicable New York law.

## FORTIETH DEFENSE

41.     The City's claims against ESI Mail Pharmacy are barred or limited as preempted by New York law, which regulates pharmacies and their dispensing of prescription opioids. New York-licensed pharmacies are subject to oversight and regulation by the New York State Board of Pharmacy, NY Educ. L. § 6804, the New York State Education Department through its Office of the Professions, NY Educ. L. § 6808, and the New York Department of Health, NY Pub. Health L. Article 33. The City cannot usurp authority granted by the state legislature to regulatory agencies.

## FORTY-FIRST DEFENSE

42.     The City's claims are barred or limited by indemnity provisions or limitation-of-liability provisions in contracts relating to the City's health plan(s). According to the Complaints, the City's claims are based on conduct from as early as the 1990s. In the intervening decades, the City has participated in several healthcare plans. Inasmuch as the City alleges that any services provided under agreements with the City caused its alleged injuries, the City's claims are barred or limited by provisions in those agreements.

## RESERVATION OF RIGHTS

The Express Scripts Entities assert all applicable defenses under NY CPLR § 3018, as investigation and discovery proceed. Additional facts that support additional defenses may come to light through discovery or further investigation. The Express Scripts Entities reserve the right to assert new affirmative or other defenses in the future based on discovery or further investigation. The Express Scripts Entities also reserve the right to add additional defenses as they learn more about the City's liability and remedial theories or as the City's liability or remedial theories change.

## DEMAND FOR JURY TRIAL

The Express Scripts Entities hereby demand a jury trial as to all issues or claims for which a jury trial is allowed.

## DEMAND FOR RELIEF

The Express Scripts Entities pray that (a) judgment be entered dismissing Plaintiff's Complaints with prejudice, and (b) this Court grant the Express Scripts Entities such other relief as it deems just and appropriate, including costs and reasonable attorneys' fees.

Dated: October 7, 2024

QUINN EMANUEL URQUHART
& SULLIVAN, LLP

By: ___/s/ Jonathan G. Cooper_____
Michael Lyle (*pro hac vice*)
Jonathan G. Cooper (*pro hac vice*)
Eric C. Lyttle (*pro hac vice*)
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com
ericlyttle@quinnemanuel.com

*Attorneys for Defendants Express Scripts, Inc.,*
*and ESI Mail Pharmacy Service, Inc.*