# Exhibit A

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8146**

WRITER'S EMAIL ADDRESS
**jonathancooper@quinnemanuel.com**

September 20, 2024

<u>BY EMAIL</u>

Honorable Dan Aaron Polster
United States District Court Northern District of Ohio
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 18B
Cleveland, Ohio 44113-1837

Special Master David R. Cohen
david@specialmaster.law

Re:   PBM Defendants' Status Report for September 23, 2024 Conference, MDL No. 2804 (Tracks 12, 15)

Dear Judge Polster,

Express Scripts, Inc. and OptumRx, Inc. write jointly to provide a status report regarding Webb County in advance of the status conference scheduled for September 23, 2024.

Based on the information learned before and during the Rule 30(b)(6) deposition, and based on the standard the Court applied at the hearing on July 23, 2024, it does not appear that there is a practical way for this bellwether to move forward. The County has now confirmed that, after filing this lawsuit, it destroyed hundreds of *boxes* of documents with information relevant to this litigation and cannot account for all post-2017 emails with certainty.

Equally troubling, it is now clear that the County has demonstrated a lack of candor and transparency throughout this process regarding the status of its available documents. For months, the County has claimed that there are no spoliation concerns because it has retained all relevant documents. Those claims were false. On September 13 (just days before the Rule 30(b)(6) deposition), the County produced to the PBMs copies of *certain* disposition logs showing that the County destroyed hundreds of boxes of hard copy documents across many relevant County departments and agencies while this suit has been pending. At the deposition, it became clear that the disposition logs produced reflect only a portion of the documents destroyed since the beginning of this lawsuit. Following up on those questions, just hours ago the County produced new disposition logs that reveal over 370 *additional* boxes of documents from relevant departments

quinn emanuel urquhart & sullivan, llp

ATLANTA | AUSTIN | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON |
LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY |
SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | ZURICH

that the County destroyed while litigating this action.[1] Given the timing the production, the PBMs have not been able to ask the County about these documents.

The disposition logs—all of them—should have been disclosed months ago, and the County's delay in providing the information underscores why the PBMs have serious concerns with keeping the County as a bellwether.

> I. **The Court ordered Webb County to participate in a Rule 30(b)(6) deposition after the County failed to implement a litigation hold for many years after filing its complaint. That deposition confirmed that the County has spoliated evidence.**

During the July 23 hearing, the Court stated that "if [Webb County] didn't [retain documents], for whatever reason, I think they should be out."[2] The County's counsel did not disagree.[3]

Since the July 23 hearing, the County has conceded that it destroyed relevant documents during this litigation. For example, on September 13, the County revealed for the first time that it has destroyed hundreds of boxes of documents from relevant departments since filing its complaint in 2018, and further confirmed it destroyed more than 100 boxes of documents relevant to this litigation during that period. And during the Rule 30(b)(6) deposition on September 19, the County admitted that, in accordance with its document retention policies, it continued its regular document shredding practices every year since this case was filed and up through this year[4]—presumably until the County finally issued its litigation hold in May 2024.

The County admitted during the Rule 30(b)(6) deposition that it destroyed all boxes listed in the disposition logs[5] it produced.[6] The County thus admits that it has destroyed at least the following evidence that is likely to be responsive and relevant: (i) information pertaining to grants and grant applications from the County Auditor's office; (ii) client files relating to referrals for health-related issues, potentially including drug treatment;[7] (iii) applications for funding from

---

[1] These disposition logs are attached to the cover email.

[2] Dkt. 5540 at 25:25–26:3; 32:6–1 (The Court: "either you're confident that they did what they were supposed to do and OptumRX and Express Scripts are going to be able to get the documents that they need to get to defend themselves, then we should go forward. And if there's doubt about that, and then we shouldn't, we shouldn't go forward with them. And I want the plaintiffs to look at it that way.").

[3] *Id.* at 26:2–5.

[4] *See* Rough Tr. 115:21–117:2;120:17–121:9.

[5] Disposition logs are the forms submitted by County departments to the Records Management Department which itemize the boxes that the department has approved for destruction. The disposition logs produced by the County prior to the deposition were identified as Exhibit 4 to the Rule 30(b)(6) deposition and are attached to this correspondence. According to the County, all boxes noted in these logs were destroyed. *See* Rough Tr. 42:12–15.

[6] *See* Rough Tr. 42:12–15 ("Q: The boxes that are identified in Exhibit 4 . . . They've all been destroyed, correct? A: I assume so, yes.").

[7] *See, e.g.,* Rough Tr. 55:3–7 ("Q And do you know whether the destroyed client files could contain information about referrals for other types of drug addiction? A: I wouldn't be aware.").

2

third-party entities, potentially relating to opioid and drug-related efforts in the County;[8] (iv) client files and applications from the County's Public Health department pertaining to payment assistance for medical and health related services, potentially including drug treatment;[9] (v) various records from the Sheriff's Office relating to messages sent to other law enforcement agencies potentially relevant to drug distribution and case reports relating to drug offenses;[10] and (vi) medical charts, records, and assessments for inmates at the County jail who may be experiencing withdrawal or other drug-related concerns.[11]

During the deposition, the County also admitted that it does not know precisely what materials were destroyed. Despite being shown the disposition logs, the County's Rule 30(b)(6) deponent repeatedly stated that he was unaware of the details of what was contained in the boxes, did not know what the boxes' labels referred to specifically, and could not determine with certainty what sort of information was contained in the destroyed documents. This lack of knowledge applied to documents that were destroyed across departments. The deponent could not answer basic questions about what was contained in boxes from the Auditor's Office relating to grants,[12] boxes from the Sheriff's Office regarding booking files and medical records,[13] a box of unidentified messages distributed within the Sherriff's Office,[14] boxes from the Community Action Agency relating to client files,[15] or boxes of funding applications from the Economic Development Department,[16] among others. Further, the County made clear that it was not certain that the disposition logs it has produced actually encompass every disposition log that has been

---

[8] *See, e.g.,* Rough Tr. 63:1–4 ("Q: And that could include for funding for opiate treatment for example? A: It could be many reasons, yes."); 67:12-17 ("Q: Those third party funding applications could they have been for opiate treatment for example? A: Depends on the organization who submits it.").

[9] *See, e.g.,* Rough Tr. 70:1–4 ("Q: And that could include medical bills for opiates? A: I cannot tell you.").

[10] *See, e.g.,* Rough Tr. 82:17–83:5; 95:13–96:15.

[11] *See, e.g.,* Rough Tr. 90: 13–16 ("Q: [C]ould that chart potentially relate to symptoms associated with drug use or withdrawal? A: I cannot tell you with certainty.").

[12] *See* Rough Dep. Tr. 46:5–14 ("Q: Do you know . . . what type of grants that's referring to? A: I personally don't . . . Q: Do you know what kind of information was in those documents pertaining to grants? A: I couldn't tell you with certainty.").

[13] *See* Rough Dep. Tr. 87:12–15 ("Q: [W]hen we look at pages 28 and 29, what's contained in these booking files? A: I wouldn't be able to tell you with certainty); 89:21-90:2 ("Q: And by my count I count on pages 28 and 29 [12]c boxes of medical charts that were destroyed that are listed there. I also see boxes labeled medical assessments on pages 28 and 29. Are . . . the contents of those boxes the same or would they be different? A: I wouldn't be able to tell you.").

[14] *See* Rough Dep. Tr. 85:9–16 ("Q: [O]n page 27 of Exhibit 4, there's a label of a box mixed messages . . . Do you know what . . . was in that destroyed box? A: No I do not. Q: And you don't know whether the County kept copies of what was in that box? A: I wouldn't be able to tell you.").

[15] *See* Rough Dep. Tr. 53:2–7 ("Q: Would the client files contain information about why the person was applying to the community action agency for assistance? A: I wouldn't be able to give you an answer on that. I don't have enough details. I don't have enough knowledge on the process.").

[16] *See, e.g.,* Rough Tr. 64:2–5 ("Q: [T]hose boxes just contained applications or do they contain other documents too? A: I wouldn't be able to answer you with certainty.").

3

created since the County filed suit.[17] Indeed, at the deposition, neither the County nor its counsel could not explain why the County's productions excluded disposition logs from a publicly filed case that showed an additional 108 boxes of Sheriff's Office records from 2011-2019 had been destroyed while this action has been pending.[18] It was not until today that the County produced 31 pages of new disposition logs which the County claims were previously unavailable due to "inadvertent mis-labeling."

For the destruction logs the PBMs were able to address at the deposition, the County was unable to confirm whether the materials that were destroyed can be captured by other documents. While the PEC made representations in previous correspondence that the County could re-create the information it destroyed, the County could not confirm the truth of those statements at the deposition. The County's representative revealed several times that he had no way of confirming whether the destroyed information was similar to other documents that the County retained.[19] The deposition also revealed that—contrary to the PEC's prior representations to this Court—the County cannot be sure that it preserved emails.[20] The County's Rule 30(b)(6) witness was not adequately prepared to answer dozens of questions that were necessary to understand the nature and extent of the County's document destruction, and in the event the County's case proceeds as a bellwether, follow-on depositions will be necessary to determine the full scope of destruction.

The deposition further revealed that the County has failed to account for all possible destruction of documents. While the County has previously contended that all document destruction would be reflected in disposition logs, the deposition revealed that County departments are free to destroy documents on their own and that they are not required to create disposition logs

---

[17] *See, e.g.,* Rough Tr. 185:24–186:1("Q: And you don't know if there are other [disposition logs] that potentially haven't been produced to us, correct? A: Potentially correct.").

[18] *See* Rough Tr. 184:15—185:20 (Q: They have not been - - had not been produced to us. Mr. Ackerman: We will have to look into that if that's your representation we haven't . . . done that analysis).

[19] *See, e.g.,* Rough Tr. 48:10–14 ("Q: Is it the same information that was destroyed as shown in the destruction logs or different? . . . A: I cannot make that determination."); 50:4–10 ("Q: But is it the same document that [was] destroyed? . . . A: I cannot answer with certainty yes or no."); 82:11–16 ("Q: [I]t's possible that there was information in the clear wanted subject boxes that were destroyed that isn't on the county system; is that right? A: I cannot give you a straight answer on that."); 87:3–11 (Q: [I]s . . .what's entered into the Odyssey system the same files that we see on pages 28 and 29? A: I couldn't be able to tell you with certainty. Q: So there may be information in the booking files on 28 and 29 that is not maintained in the county's Odyssey system; is that correct? A: There could be, there couldn't be. . . I couldn't be able to tell you yes or no."); 91:19–92:18 (After stating that the only known replacement for medical files was information on a pharmacy systems that documents prescriptions given to inmates: "Q: And do you know if the pharmacy system contains all the information that would have been in the destroyed medical charts an[d] medical assessment boxes? A: I wouldn't know.").

[20] *See, e.g.,* Rough Tr. 150:9–21 ("Q: And so if an employee, county employee lets say in 2018 . . . [w]ho had a county issued email account deleted an email . . . [d]uring the day . . . [w]ould that be backed up on the backup tape run that night? A: Not on the backup tape . . . if it was received and removed the same day, it would not be backed up.").

4

or otherwise note such destruction.[21] The County added that while disposition logs are the appropriate avenue for destroying documents already being stored by the County's Records Management department, there was a separate process by which County departments could simply request that their own boxes and documents be shredded, which resulted in the systematic shredding of documents through May 2024.[22] The County's representative explained that he did not ask all of the relevant departments whether they destroyed documents in this fashion, highlighting that the County has no legitimate grasp of what documents it has destroyed and that other disposition logs may exist that were not produced.[23]

## II. The County's destruction of information and inaccurate representations about its document preservation efforts has delayed this matter and caused further serious prejudice to the PBM defendants.

The County did not provide information regarding the widespread destruction of relevant documents until after the PBM Defendants inquired specifically about the County's use of disposition logs and demanded production of them. Based on the timeline of events, it appears the County had no intention of disclosing its destruction of relevant evidence that resulted from its failure to implement a litigation hold. That the PBMs identified a separate lawsuit in which the County admitted that it failed to issue a litigation hold and conceded that it spoliated evidence in 2022, underscores that the County has a systemic issue with preserving documents.[24] The County's disclosure of additional disposition logs today only confirms this.

The Webb County case was one of the PBMs' two bellwether selections; if it is removed as a bellwether, the PBMs will be left without either of their two bellwether picks, and only one PEC-chosen bellwether will remain. This Court established four different PBM tracks so that one PBM case and one PEC case would go forward at the same time with the other PBM and PEC cases followed shortly thereafter (also on parallel tracks). The bellwether plaintiffs' spoliation of evidence has upended the existing structure.

---

[21] *See, e.g.,* Rough Tr. 115:21–117:2 ("Q: Now, the departments we've been talking about, they can also destroy documents on their own correct? They don't have to send them to records management department for destruction? A: [Y]eah. . . . Q: And do you know whether those departments keep logs of documents that they destroy on their own? . . . A: I can't I'm sorry I cannot answer." Q: And do you know if they have continued to destroy documents into 2024? A: I do not know . . . Q: Do you know if any of those departments were informed to stop destroying documents in 2024? A: I do not recall.").
[22] *See* Rough Tr. 120:20–121:9.
[23] The County stated that the Records Management Department keeps a database of all the documents that it stores, and that it maintains all disposition logs. *See* Rough Tr. 34:8-25. The County should produce all disposition logs and records relating to its preservation and destruction of boxes.
[24] *See Nuncio v. Webb County*, 5:20-cv-92 (S.D. Tex. Dec. 21, 2022) (Dkt. 174 – Plaintiff's Motion for Spoliation Sanctions; Dkt. 180 – Defendants' Response to Plaintiff's Motion for Spoliation Sanctions).

5

      The PEC's litigation-hold disclosures show that the overwhelming majority of plaintiffs in the PBM cases failed to institute a litigation hold. And we were told for months that Webb County was a case without spoliation problems, but that has now been proven false.

      The PBMs are continuing to evaluate the information revealed through the deposition and will be prepared to have further discussions on Monday about the best path forward.

Sincerely,

| | |
|---|---|
| /s/   *Jonathan G. Cooper* | /s/   *Brian D. Boone* |
| Jonathan G. Cooper | Brian D. Boone |
| QUINN EMANUEL URQUHART & SULLIVAN LLP | ALSTON & BIRD LLP |
| 1300 I St. NW, Suite 900 | 1120 South Tryon Street |
| Washington, DC 20005 | Suite 300 |
| Tel: (202) 538-8000 | Charlotte, NC 28203 |
| jonathancooper@quinnemanuel.com | Tel: (704) 444-1000 |
| | brian.boone@alston.com |
| *Counsel for Express Scripts, Inc. and ESI Mail Order Pharmacy Services, Inc* | *Counsel for OptumRx, Inc.* |

Cc:    Counsel from the Plaintiffs' Executive Committee