## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>**THIS DOCUMENT RELATES TO**:<br><br>Optum and Express Scripts cases listed in ECF Nos. 5546-1, 5547-1, 5548-1, 5565-1 | **MDL NO. 2804**<br><br>**Case No. 17-MD-2804**<br><br>**Judge Dan Aaron Polster** |

### PBM DEFENDANTS' MOTION TO STRIKE PLAINTIFFS THAT FAILED TO TIMELY IMPLEMENT LITIGATION HOLDS FROM PLAINTIFFS' AND THE PEC'S OMNIBUS MOTIONS FOR LEAVE TO AMEND, MOTION FOR ADDITIONAL RELIEF, AND MEMORANDUM OF LAW IN SUPPORT

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.    PRESERVATION ISSUES DISQUALIFIED THREE PBM BELLWETHERS...........................................................................................2

    II.    MOST PLAINTIFFS SEEKING LEAVE TO AMEND FAILED TO TIMELY IMPLEMENT HOLDS...........................................................4

ARGUMENT.........................................................................................................................6

    I.    THE COURT SHOULD STRIKE FROM THE MOTIONS FOR LEAVE TO AMEND EACH PLAINTIFF THAT DID NOT TIMELY IMPLEMENT A HOLD........................................................................7

        A.    The widespread failure to implement litigation holds fundamentally prejudices the PBM Defendants.........................................8

        B.    The Court should strike from the PEC's omnibus motions all plaintiffs that did not timely implement a litigation hold. .........................9

        C.    No lesser relief suffices. ...........................................................................12

    II.    THE PBM DEFENDANTS ARE ENTITLED TO DISCOVERY AND OTHER EXPEDITED RELIEF.........................................................12

CONCLUSION....................................................................................................................15

Express Scripts, Inc., OptumRx, Inc., and their affiliates move to strike all plaintiffs that failed to timely implement a litigation hold from the PEC's omnibus motions for leave to amend and related appendices. ECF Nos. 5546, 5546-1, 5546-2, 5547, 5547-1, 5547-2, 5548, 5548-1, 5548-2, 5565, 5565-1, 5565-2.

### **INTRODUCTION**

This Court directed the PEC that no plaintiff should seek leave to amend to add claims against the PBMs unless those plaintiffs are "prepared . . . to litigate." ECF No. 5455 at 2. In defiance of that directive, the PEC seeks to amend the complaints of more than 1,400 plaintiffs that violated their fundamental duty to implement timely litigation holds.[1] As we have come to learn over the past year, plaintiffs that failed to implement litigation holds almost assuredly destroyed evidence. And as this Court has recognized, those plaintiffs are not prepared to litigate. Indeed, three of the four plaintiffs in the PBM bellwether cases failed to implement timely litigation holds and are no longer bellwethers because they destroyed relevant documents.

Against this backdrop, the PEC wishes to amend more than one thousand additional cases with similar document preservation issues to add claims against the PBM Defendants and their affiliates. That encompasses *more than 75%* of the plaintiffs seeking leave to amend to add the PBM Defendants and their affiliates. A list of those cases is included as Appendix A. The blatant violation of litigation duties and the Court's directive calls for sanctions, not the opportunity to seek leave to amend. The PBM Defendants should not bear the burden of responding to a motion seeking leave to amend to add complaints by more than 1,400 plaintiffs that have not complied with basic, fundamental litigation duties and are objectively unprepared to litigate. The Court

---

[1] For the purposes of this motion only, the PBM Defendants deem a litigation hold timely if it was implemented by a plaintiff on or before the date that the plaintiff filed suit.

should strike those plaintiffs from the PEC's omnibus motions for leave to amend, which is consistent with the Court's orders allowing amendment only by plaintiffs prepared to litigate.

Due to the PEC's months of misrepresentations regarding spoliation, the PBM Defendants seek additional relief. The PBM Defendants request that the Court: (1) for each of the 1,431 plaintiffs that failed to implement a timely litigation hold that the Court does not strike from the Motions for Leave to Amend, grant the PBM Defendants the opportunity to take a Rule 30(b)(6) deposition of that plaintiff; (2) require the 401 plaintiffs that claim that they timely implemented a litigation hold and are now seeking leave to amend to complete the attached Litigation Hold Fact Sheet within two weeks of the Court's order; and (3) extend the deadline for oppositions to the PEC's omnibus motions for leave to amend by an additional 90 days until March 6, 2025.[2]

**BACKGROUND**

**I.    PRESERVATION ISSUES DISQUALIFIED THREE PBM BELLWETHERS.**

The PBM Defendants have spent millions of dollars litigating four bellwether cases that were carefully negotiated by the parties. Now, because three of the bellwether plaintiffs spoliated evidence, only one bellwether case remains. In hindsight, it is clear that plaintiffs never intended to disclose their failure to preserve relevant evidence, which has now proven widespread throughout the MDL. In each of the now-discarded bellwethers, the plaintiff disregarded and opposed multiple requests by the PBM Defendants for information regarding the widespread destruction of relevant documents and did not even provide basic information regarding the implementation of litigation holds until ordered to do so by the Court multiple times.

---

[2] The PBM Defendants reserve the right to oppose plaintiffs' motions for leave to amend for failing to preserve evidence and for any other reason. The PBM Defendants also reserve the right to seek additional relief regarding these document preservation failures.

2

Lincoln County, Missouri filed suit in 2019 but did not institute a litigation hold until February 29, 2024. *See* ECF No. 5503-2. In earlier filings, the PBM Defendants have provided a detailed accounting of their efforts to obtain information regarding the litigation hold in Lincoln County. *See* ECF Nos. 5503; 5532. The bottom line: After avoiding the PBM Defendants' basic questions regarding document retention for months, the County admitted that it did not implement a litigation hold until earlier this year. *See* ECF No. 5503-2 at 9. The County later revealed that it had deleted custodial email files of former employees, including sixteen desired custodians with information relevant to Lincoln County's claims. ECF No. 5503-3 at 2–3. Further details regarding the scope of document destruction by Lincoln County remain unknown, as the Court severed the case on July 23, 2024, thus removing it as a bellwether.

The City of Independence, Missouri likewise filed suit in 2019 but failed to implement a litigation hold until May 3, 2024. *See* ECF Nos. 5532; 5521 at 7. For a history of the PBM Defendants' efforts to obtain information regarding the City's spoliation of evidence, see docket entries 5503 and 5532. The short of it: The PBM Defendants learned through discovery that the City had allowed relevant custodial files to be destroyed in a 2020 ransomware attack and, although it had reported this attack to law enforcement, it never notified the Court or parties in this lawsuit. *See generally* ECF Nos. 5503; 5521 at 7–8. The Court severed the City's case—thus removing it as a bellwether—before the City provided a full accounting of the magnitude of its spoliation of evidence.

Webb County, Texas did not implement a litigation hold until May 2024, later than any other bellwether and days after the PBM Defendants asked the County to provide this information. But despite that, over the past four months, counsel for the County and the PEC repeatedly told the Court that there were no document preservations issues. *See* ECF No. 5487 (June 12, 2024

3

Hearing Tr.) 81:20–22; ECF No. 5516 (July 9, 2024 Hearing Tr.) 4:6–13 ("We have no spoliation concerns as to Webb County."); Exhibit 1 (Sept. 17, 2024 Hearing Tr.) 57:24-25 ("We don't think there's anything amounting to spoliation of documents [in Webb]."). Those statements were false.

Ultimately, the Court ordered a Rule 30(b)(6) deposition of Webb County. At that deposition, the PBM Defendants uncovered widespread document destruction, including several hundred boxes of hard-copy documents destroyed during this litigation, more than one hundred of which contained relevant information, and deletion of other relevant documents the County could not even quantify or describe. *See* ECF No. 5673-1 (PBM Defendants' Sept. 20, 2024 Joint Status Report). On September 23, 2024, the Court also severed this matter as a bellwether. ECF No. 5648 (Sept. 23, 2024 Hearing Tr.) at 16–18.

## II. MOST PLAINTIFFS SEEKING LEAVE TO AMEND FAILED TO TIMELY IMPLEMENT HOLDS.

Over the past several months, the PBM Defendants have learned that failure to timely implement litigation holds is rampant among plaintiffs with existing cases against the PBMs, as more than 70% of the 124 MDL plaintiffs in existing PBM cases failed to timely implement a litigation hold. ECF No. 5589, 5589-1. It has become clear that most of these plaintiffs never intended to actually litigate their cases.

On May 23, 2024, the Court granted all MDL plaintiffs another opportunity to amend their complaints. ECF No. 5455. The Court required that plaintiffs and the PEC supply "good cause for the proposed amendments, stating with particularity the reasons amendment should be permitted in *each individual* case." *Id.* at 1–2 (emphasis in original).

Due to the widespread failure of plaintiffs in the PBM cases to timely implement litigation holds, the PBM Defendants requested that the Court order all plaintiffs seeking leave to amend to

4

state whether, and if so when, they implemented a litigation hold, and whether they have any document preservation issues. ECF No. 5503 at 18–19.

On July 10, the Court issued an order requiring the PEC to "coordinate with each plaintiff that seeks leave to amend" and "file a single notice for all such cases, indicating whether a litigation hold was implemented in each case and, if so, when." ECF No. 5517 at 2. The Court explained that information about whether and when a litigation hold was implemented "is important and relevant to the question of which cases may eventually be chosen as bellwether cases. Although implementation of a litigation hold is not a strict precondition for allowing amendment, a defendant may want to address the topic in response to a motion to amend." *Id.* at 1–2. During a hearing on this issue, the PEC represented on the record: "[W]e are confident that the litigation hold issues do not exist" in "most" of the cases seeking leave to amend (*i.e.*, those filed by PEC law firms). ECF No. 5540 (July 23, 2024 Hearing Tr.) at 21:23–22:2.

On July 29, the PEC filed its omnibus motions seeking leave to amend. ECF Nos. 5546; 5547; 5548. Nearly 200 plaintiffs later withdrew from the motion. Exhibit 2. As it stands, 1,833 plaintiffs in 1,562 cases seek leave to add the PBMs and their affiliates as defendants. ECF Nos. 5546-1; 5547-1; 5548-1; 5565-1; 5682; Exhibit 2. On September 30, 2024, the PEC served a notice purporting to state whether and when these plaintiffs implemented litigation holds. ECF No. 5673-3. **The notice reveals that, contrary to the PEC's prior representations, 1,431 plaintiffs— *more than 75%* of those seeking leave to amend—did not implement a litigation hold before filing their complaints**.[3] The PBM Defendants' opposition to the PEC's motions for leave to amend are due December 6, 2024. *See* Aug. 30, 2024 Non-Document Order.

---

[3] Of these 1,431 plaintiffs, 857 have still not implemented a litigation hold even today. *See* Appendix A. An additional 197 did not implement a litigation hold until the last three months. *Id*. On October 15, 2024, the Court granted Cleveland County, North Carolina's motion to join the

5

## ARGUMENT

The PBM Defendants face an unprecedented situation: 1,431 plaintiffs that failed to timely implement litigation holds now seek to add the PBM Defendants to their long-pending lawsuits. *See* Appendix A. MDL courts have recognized that "[a]lthough one of the purposes of MDL consolidation is to allow for more efficient pretrial management of cases with common issues of law and fact," the MDL process has also evolved to provide "an alternative dispute resolution forum for global settlements." *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, 2016 WL 4705807 at *1 (M.D. Ga. Sept. 7, 2016).[4] But when an MDL court has reason for concern about docket integrity, it "may need to consider approaches that weed out non-meritorious cases early, efficiently, and justly." *Id.* at *2.

This Court has likewise warned that it will not consider granting leave to amend to any plaintiff that is not "prepared to litigate." *See* ECF No. 5471 (May 22, 2024 Hearing Tr.) at 6:2–4 ("[A]ny subdivision that is proposing to add a given Defendant may only do so if they're prepared to litigate against that Defendant."); ECF No. 5455 at 2 ("The PEC is also ordered to review every case carefully and dismiss any defendant that plaintiffs' counsel does not intend to zealously pursue in litigation."). Any plaintiff that failed to timely implement a litigation hold is not prepared to litigate and should not be allowed to seek leave to amend. The PBM Defendants and the Court have already spent considerable time and energy on bellwether plaintiffs' spoliation and late-issued litigation holds—misconduct that has proven pervasive throughout this MDL—all of which

---

PEC's omnibus motions to amend to add the PBM Defendants and their affiliates. *See* ECF No. 5682. The PEC has not provided litigation-hold information for Cleveland County, and the PBM Defendants reserve all rights as to Cleveland County.

[4] The PBM Defendants see no path to resolution of cases with plaintiffs that failed to preserve relevant documents—the scope and nature of document destruction varying by plaintiff—based on bellwether trials against plaintiffs that claim to have properly preserved documents.

6

distracts from the ultimate issues of liability, prejudices the PBM Defendants, and benefits the PEC and plaintiffs by burying the PBM Defendants under what could prove to be never-ending spoliation discovery.

I. **THE COURT SHOULD STRIKE FROM THE MOTIONS FOR LEAVE TO AMEND EACH PLAINTIFF THAT DID NOT TIMELY IMPLEMENT A HOLD.**

"As a general matter, it is beyond question that a party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008). That duty to preserve evidence arises "from the moment that litigation is reasonably anticipated." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016) (citation omitted). "Once the duty to preserve attaches, a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Id.* at 999 (citation omitted). "[L]itigation hold notices have been and continue to be a crucial and necessary tool for ensuring that clients preserve [electronically stored information] ESI consistent with their discovery obligations." *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 930 (N.D. Ill. 2021). Accordingly, implementing a litigation hold in every case is not just a formality but a critical component of legal proceedings that preserves the integrity and availability of evidence and upholds the fairness and efficacy of the legal process.

This MDL is now in uncharted waters—more than 75% of current and potential plaintiffs against the PBM Defendants violated their basic duty to timely implement litigation holds. Hundreds failed to implement until *years* after filing their lawsuits—and over 850 still have not implemented a hold to date. Spoliation is a near certainty in each of those cases. The PBM

7

Defendants have no way to assess the scope of plaintiffs' spoliation without undertaking extensive case-specific discovery into document preservation efforts.

> A. **The widespread failure to implement litigation holds fundamentally prejudices the PBM Defendants.**

Plaintiffs' widespread failure to timely implement litigation holds fundamentally prejudices the PBM Defendants' ability to defend themselves, as this Court has acknowledged.[5] "Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence." *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 258 (2007). To guard against that threat, each party is "solemnly bound to preserve potentially relevant evidence." *Id.* at 259. Litigation holds, therefore, play a vital role in safeguarding the integrity of the legal process by ensuring parties fulfill their obligations to preserve documents in accordance with discovery requirements. *DR Distributors*, 513 F. Supp. 3d at 930. Although the PBM Defendants do not know the full scope of spoliation by the plaintiffs that failed to timely implement litigation holds, there is little doubt that relevant documents were destroyed. Courts have recognized that this is "precisely the problem raised" by the "failure to implement litigation holds . . . . The Parties and the Court are left to speculate on the contents of the despoiled evidence and the degree of prejudice suffered by the party seeking the evidence." *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *16 (S.D. Cal. June 16, 2014).[6]

---

[5] ECF No. 5540 (July 23, 2024 Hearing Tr.) at 32:6–12 ("[E]ither you're confident that they did what they were supposed to do and OptumRX and Express Scripts are going to be able to get the documents that they need to get to defend themselves, then we should go forward. And if there's doubt about that . . . we shouldn't go forward with them."); ECF No. 5515 (July 9, 2024 Hearing Tr.) at 8:16–17 ("[I]f . . . important documents aren't available, it isn't fair to either side.").

[6] The PBM Defendants agree with this Court's earlier statements that no litigation hold is perfect. Implementing a litigation hold at the appropriate time is no guarantee that a party will preserve every relevant document or piece of evidence, and the rules do not demand that sort of perfection. But here, more than 75% of plaintiffs did not even take the basic step of implementing a litigation hold at the appropriate time. That is likely unprecedented in MDL litigation.

Plaintiffs' documents are relevant to every aspect of plaintiffs' claims and many aspects of the PBM Defendants' defenses. They relate to, among other things, (1) whether plaintiffs have been harmed or suffered damages; (2) who (if anyone) caused the harm, and the extent to which that person/entity is the cause; (3) what remedy (if any) is needed to abate any nuisance and remediate any damages; (4) whether Plaintiffs or third parties are responsible for the alleged harm; and (5) the PBM Defendants' affirmative defenses, such as statute-of-limitations defenses and preemption defenses. For example, in Track 12, the City of Rochester has produced documents showing its knowledge of and control over the placement of prescription opioids on formularies for its own employee health plans and its decisions regarding utilization management.[7] Denying the PBMs Defendants this core discovery would thus unquestionably prejudice their defenses.

### B. The Court should strike from the PEC's omnibus motions all plaintiffs that did not timely implement a litigation hold.

The Court should strike these plaintiffs from the omnibus motions for leave to amend based on its inherent authority to manage the MDL docket. Under Federal Rules of Civil Procedure 16, 37, and 41, "[d]istrict courts have an inherent power to control their dockets." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) (observing that district courts must have the power to manage their dockets "without being subject to endless non-compliance with case management orders") (citation omitted); *see also Lehmann v. Ohr Pharm., Inc.*, 2021 WL 5986761, at *1 (2d Cir. Dec. 16, 2021) (preventing filing of motion to amend based on court's inherent authority to manage its docket).[8] Given the systemic failures to

---

[7] *See*, *e.g.*, ROC000762148 (regarding placement of opioids on formulary); ROC000706237 (regarding utilization management options for opioids); ROC000699846 (regarding rebates).

[8] In this Circuit, the failure to implement a litigation hold also justifies the imposition of case-specific sanctions under Rule 37. *See, e.g.*, *Pollard v. City of Columbus, Ohio,* 2013 WL 5334028, at *5 (S.D. Ohio Sept. 23, 2013) (awarding sanctions where there was no litigation hold or instruction to preserve key evidence).

9

prepare for litigation, the appropriate remedy is for the Court to strike the PEC's motions for leave to amend as to any plaintiff that failed to implement a timely litigation hold.

This Court has warned that it will not consider a motion for leave to amend by any plaintiff that is not ready and willing to litigate. For example, in its May 23 order setting the amendment briefing process, the Court wrote:

> Lead counsel for each plaintiff seeking amendment of any listed complaint shall sign the motion to indicate that—should any of the listed cases be chosen as a bellwether—both counsel and plaintiff-client are prepared to spend the time and money necessary to litigate the case against each defendant. The Court will consider strong sanctions against any counsel and/or plaintiff that seeks to dismiss their case, or their claims against a named defendant, if or when it is chosen as a bellwether.

ECF No. 5455 at 2; *see also* ECF No. 5471 (May 22, 2024 Hearing Tr.) at 6:2-4.

Plaintiffs and their counsel have shown they are not ready and willing to litigate by ignoring their duty to preserve relevant documents, by failing to timely implement litigation holds, and by concealing these violations. More than six years ago, in Case Management Order No. 1, the Court warned "parties and their counsel . . . of their duty, consistent with the Federal Rules of Civil Procedure, to take reasonable measures to preserve documents, electronically stored information ('ESI'), and things that are potentially relevant." ECF No. 232 ¶ 8. As noted above, that duty requires that "a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Crown Battery*, 185 F. Supp. 3d at 999. Yet despite the clear law obligating plaintiffs to timely implement litigation holds and preserve relevant evidence, *see, e.g.*, *id.* at 989-99; *John B.*, 531 F.3d at 459, and despite this Court's orders in the same vein, *see, e.g.*, ECF No. 232 ¶ 8, at least 1,431 plaintiffs failed to timely implement a litigation hold to preserve relevant evidence, *see* Appendix A. Such a massive dereliction of duty is contumacious conduct that this Court cannot condone.

10

Both this Court and other MDL courts have *dismissed* cases—a much harsher sanction than striking part of a motion for leave to amend, which is all that the PBM Defendants seek here—for discovery violations less egregious than a violation of the duty to implement litigation holds and preserve relevant evidence. For instance, this Court has dismissed cases by plaintiffs that fail to timely serve complete fact sheets. *See e.g.*, ECF Nos. 4985 (Order Regarding Failures to Submit Plaintiff Fact Sheets); 5340 (Order Regarding Hospital Fact Sheets). Likewise, in *In re Zostavax (Zoster Vaccine Live) Prods. Liability Litigation*, the court dismissed 1,189 plaintiffs for failing to comply with a Lone Pine order requiring evidence of causation. 711 F. Supp. 3d 317, 322–23 (E.D. Penn. 2022). And in *In re Deepwater Horizon*, the Fifth Circuit affirmed dismissal of more than 100 plaintiffs for failing to meet a signature deadline. 907 F.3d 232, 235–37 (5th Cir. 2018).

The Court's prior statement that "implementation of a litigation hold is not a strict precondition for allowing amendment," ECF 5517 at 2, pre-dated the revelation that over 1,400 plaintiffs failed to timely implement litigation holds. This is not a situation where a small number of plaintiffs inadvertently failed to implement a litigation hold. Instead, there has been a systemic violation by hundreds upon hundreds of plaintiffs of the basic duty to preserve evidence, which reveals that these plaintiffs and their counsel are not ready and willing to litigate. The amount of time and resources that would be required to explore spoliation by 1,431 plaintiffs, if the Court does not strike them, would be so burdensome to the PBM Defendants as to prejudice their defense.

The Court should therefore strike from the PEC's omnibus motions for leave to amend all plaintiffs that failed to timely implement litigation holds. The PBM Defendants should not be compelled to expend additional time and resources opposing these plaintiffs' motions. Given the number of plaintiffs seeking leave to amend, and the particularity of their claims, the PBM Defendants anticipate that the opposition briefing will already require hundreds of pages. The

11

PBM Defendants should be permitted to focus their arguments and efforts on opposing leave to amend on plaintiffs that are ready to litigate without admitted document preservation issues.

C.   **No lesser relief suffices.**

This unprecedented and extraordinary situation demands a solution tailored to addressing the enormous prejudice to the PBM Defendants. Striking the motions of plaintiffs that failed to implement timely litigation holds is both appropriate and consistent with MDL case management principles. It is the only way to avoid months-to-years of spoliation discovery followed by motion practice to determine an appropriate sanction for more than 1,400 plaintiffs.

If the Court does not strike these plaintiffs from the omnibus motions for leave to amend, the burden on the PBM Defendants will be enormous. The PBM Defendants will be required to conduct months' long discovery into each plaintiff's potential spoliation to properly respond to the motion for leave to amend—a question essential to whether plaintiffs seeking leave to amend can demonstrate good cause.

II.  **THE PBM DEFENDANTS ARE ENTITLED TO DISCOVERY AND OTHER EXPEDITED RELIEF.**

In addition to striking all plaintiffs with untimely litigation holds, and given the seriousness and scope of the potential spoliation, the plaintiffs' prior misrepresentations to the Court regarding spoliation, and the millions of dollars that the PBM Defendants spent litigating the three now-discarded bellwethers, the Court should also grant the PBM Defendants limited discovery for the plaintiffs seeking leave to amend that claim to have timely implemented a litigation hold. The PBM Defendants request the following relief.

*First*, for any plaintiff that failed to implement a timely litigation hold that the Court does not strike from the PEC's Motions for Leave to Amend, the PBM Defendants should receive the opportunity to explore the scope of document retention and potential spoliation through a Rule

12

30(b)(6) deposition.⁹ As of today, the PBM Defendants do not know any facts surrounding the extent to which of those plaintiffs spoliated evidence. That information is essential to determine the extent of the potential burden the PBM Defendants will face if the Court allows amendment by any plaintiff that did not implement a litigation hold prior to filing suit. Moreover, the PBM Defendants will need to understand the potential scope of spoliation in these cases to determine whether a representative sample of bellwether cases can be selected.

It is common for courts to order Rule 30(b)(6) depositions in this type of situation, just as this Court did when it authorized the PBM Defendants to take a 30(b)(6) of Webb County after it admitted that it failed to timely implement a litigation hold. *See* ECF No. 5540 (July 23, 2024 Hearing Tr.) at 31:8-9; *see also Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 939–40 (S.D. Ohio 2015) (ordering Rule 30(b)(6) witnesses to address spoliation issues); *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019) ("Rule 30(b)(6) depositions about retention policies and procedures, as well as the litigation holds placed in a case, are permitted when there is a potential issue of spoliation."); *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742 at *2–3 (N.D. Cal. Dec. 14, 2020) (allowing Rule 30(b)(6) deposition to gather information on defendant's litigation holds after defendant admitted certain information from class period was not retained).

*Second*, the Court should order the 401 plaintiffs that claim they timely implemented a litigation hold and are now seeking leave to amend to, within two weeks of the Court's order, file a completed Litigation Hold Fact Sheet using the form attached as Appendix B.¹⁰ Any plaintiff

---

⁹ This request applies equally to any plaintiff that claims to have implemented a timely litigation hold to the extent that the Litigation Hold Fact Sheet or litigation hold notice reveals they did not.
¹⁰ If the Court declines to strike the plaintiffs that did not timely implement a litigation hold from the motions for leave to amend, this relief should apply to all plaintiffs seeking leave to amend.

13

that fails to comply with the Court's directive regarding the fact sheet should have its case dismissed with prejudice.

The PEC's prior misrepresentations on this issue call into doubt their representations now. The PEC claims that 401 of the 1,833 plaintiffs seeking leave to amend to add the PBM Defendants and their affiliates timely "implemented" a litigation hold. ECF No. 5673-3. But the PEC's litigation-hold submission contains only a single column of information: "date implemented." Moreover, in an October 4, 2024 email regarding the pending PBM MDL cases, the PEC stated "[w]e are unwilling and unable to certify whether litigation holds were properly implemented in cases represented by non-PEC members. We respectfully submit that such a certification requires a factual inquiry which should come from counsel of record." Exhibit 3. That raises alarm bells about whether the PEC has adequately vetted its response to the Court's order. Indeed, the correspondence to which the PEC's litigation hold data is attached is suspiciously vague—the PEC states it "is providing the attached list which contains information." ECF No. 5673-3. The PEC has provided no assurance that these litigation holds were properly implemented, or that they were sufficient to cover documents relevant to the PBM Defendants given that the PBM Defendants were not named as defendants when the holds were drafted and implemented.

Ordering plaintiffs to complete a Litigation Hold Fact Sheet and provide the actual litigation hold notice is the only way to efficiently certify that each of the claimed litigation holds are adequate. The information provided in the Fact Sheets—*i.e.*, date the litigation started, the scope of any litigation holds, and detail regarding municipal email and document retention practices—would provide insight into the credibility of the PEC's assertions and is essential to evaluate whether "good cause" can be shown for these delayed amendments. And the hold notice will indicate the scope of the hold as communicated to relevant individuals. Such an order is well

14

within the Court's power under Rule 16(c)(2)(L) and is similar to prior orders in this MDL and other MDLs. *See e.g.*, ECF Nos. 4985 (Order Regarding Plaintiff Fact Sheets); 5340 (Order Regarding Hospital Fact Sheets); *see also In re Deepwater Horizon*, 907 F.3d at 235–37; *In re Zostavax*, 711 F. Supp. 3d at 322–23.

*Third*, because assessing the state of plaintiffs' document retention will be time-consuming and will implicate whether the plaintiffs seeking to amend can demonstrate good cause, briefing on the motions to amend should be extended by another 90 days, to March 6, 2025. Plaintiffs moved for leave to amend on July 29, 2024. They repeatedly asserted that there would be no litigation-hold issues for the plaintiffs seeking leave to amend, before ultimately disclosing *two months later* that the vast majority of plaintiffs have the same issues as the three removed bellwethers. The PBM Defendants need additional time to explore the burden of potentially litigating against hundreds of plaintiffs that filed to timely implement a litigation hold.

## **CONCLUSION**

The PBM Defendants respectfully request that the Court strike those plaintiffs that failed to timely implement litigation holds from the motions for leave to amend (listed in Appendix A). In addition, the PBM Defendants request that the Court: (1) grant PBM Defendants the opportunity to explore the extent of potential spoliation through Rule 30(b)(6) depositions each plaintiff that failed to implement a timely litigation hold if the Court does not strike the plaintiff as requested; (2) order the 401 plaintiffs that claim they timely implemented a litigation hold to submit a complete Litigation Hold Fact Sheet within two weeks of the Court's order; and (3) extend the deadline for the opposition to the motions for leave to amend to March 6, 2025.

15

October 15, 2024.

Respectfully submitted,

 /s/ Brian D. Boone
Brian D. Boone
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com

William H. Jordan
D. Andrew Hatchett
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for OptumRx, Inc*

 /s/ Jonathan G. Cooper
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Express Scripts Defendants*

16