UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | **MDL 2804** |
| | ) | **Case No. 1:17-md-2804** |
| **THIS DOCUMENT RELATES TO:** | ) ) ) | **Judge Dan Aaron Polster** |
| *ALL THIRD PARTY PAYOR ACTIONS* | ) ) | |

**THIRD PARTY PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, EXPENSES, AND
SERVICE AWARDS**

Third Party Payor ("TPP") Plaintiffs Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; Flint Plumbing and Pipefitting Industry Health Care Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund, on behalf of themselves and the proposed Settlement Class[1] they represent, respectfully move this Court to enter an Order:

---

[1]  Unless otherwise noted, capitalized terms herein have the definitions set forth in the Settlement Agreement.

•     Granting final approval of the class action settlement between TPPs and Settling Distributors under Rule 23(e)(2) of the Federal Rules of Civil Procedure;

•     Confirming the appointment of Paul Geller and Mark Dearman of Robbins Geller Rudman & Dowd, LLP and Elizabeth Cabraser and Eric Fastiff of Lieff Cabraser Heimann & Bernstein, LLP, as Settlement Class Counsel, confirming the designation of Mr. Geller and Ms. Cabraser as Co-Lead Settlement Class Counsel, and further appointing James Dugan, II of The Dugan Law Firm, APLC as Settlement Class Counsel and designating Mr. Dugan as Co-Lead Settlement Class Counsel;

•     Confirming the appointment of Settlement Class Representatives Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; and Flint Plumbing and Pipefitting Industry Health Care Fund; and further appointing United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania and Sheet Metal Workers Local No. 25 Health & Welfare Fund; Louisiana Assessors' Insurance Fund as additional Settlement Class Representatives;

•     Awarding Settlement Class Counsel's requested attorneys' fees and expenses under Fed. R. Civ. P. 23(h);

•     Awarding Settlement Class Counsel's requested Settlement Class Representative service awards;

•     Entering judgment dismissing the TPP Actions by Settlement Class Members, coordinated under MDL No. 2804, with prejudice as to the Settling Distributors and directing Settlement Class Members to promptly dismiss the other Actions not coordinated under MDL No.

2804 with prejudice as to the Settling Distributors, in both instances without costs, except as provided in the Settlement Agreement;

• Discharging and releasing the Released Entities from all Released Claims;

• Permanently enjoining the institution and prosecution by Settlement Class Members and Releasors of any other action against the Released Entities in any forum asserting Claims in any way related to the Released Claims;

• Discharging and releasing Settlement Class Representatives, Settlement Class Members, and their counsel of the claims provided in Section IX.L of the Settlement Agreement; and

• Reserving and continuing exclusive jurisdiction over the Settlement, including the Escrow Account, the Escrow Agent, Settlement Class Counsel as the Escrow Account's tax administrator, and all future proceedings concerning the administration, consummation, and enforcement of this Settlement Agreement.

Plaintiffs' [Proposed] Order Granting Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards is separately submitted with this motion.  The Settling Distributors do not oppose entry of the Final Approval Order.

This motion is supported by the following Memorandum of Points and Authorities and the accompanying Joint Declaration of Paul J. Geller and Elizabeth J. Cabraser in Support of TPP Plaintiffs' Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards ("Joint Declaration" or "Joint Decl.") and the Exhibits thereto.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1

I.      INTRODUCTION .................................................................................................................1

II.     SETTLEMENT NOTICE AND ADMINISTRATION TO DATE.....................................2

III.    ARGUMENT .........................................................................................................................2

        A.     The Court Should Certify the TPP Settlement Class Under Rule 23(e)(2) ............2

                1.     The Settlement Class Meets the Requirements of Rule 23(a) ....................3

                2.     The Settlement Class Meets the Requirements of Rule 23(b)(3) ...............5

        B.     The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)...............7

                1.     Settlement Class Representatives and Interim Settlement Class
                       Counsel Have Adequately Represented the Class Under Rule
                       23(e)(2)(A)..................................................................................................7

                2.     The Settlement Is the Product of Good Faith, Informed, Arm's-
                       Length Negotiations Under Rule 23(e)(2)(B)...............................................8

                  3.     The Relief Provided to the Settlement Class is Adequate Under
                       Rule 23(e)(2)(C)..........................................................................................9

                  4.     The Settlement Treats Class Members Equitably Relative to Each
                       Other Under Rule 23(e)(2)(D) ..................................................................12

        C.     The Court Should Appoint Settlement Class Counsel Under Rule 23(g)(1) .........13

        D.     The Court Should Approve Counsel's Requested Fees and Expenses
             Under Rule 23(h), as Well as the Requested Settlement Class
             Representative Service Awards .............................................................................14

                  1.     The Requested Attorneys' Fees Are Reasonable Under Rule 23(h)..........14

                  2.     The Requested Expenses Are Reasonable Under Rule 23(h)....................19

                  3.     The Settlement Class Representative Service Awards Are
                       Reasonable ..................................................................................................19

IV.    CONCLUSION....................................................................................................................20

[TABLE OF AUTHORITIES]

**Cases**                                                                                                        **Page**

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ....................................................................................................4

*Brent v. Midland Funding, LLC*,
   2011 WL 3862363 (N.D. Ohio Sept. 1, 2011).........................................................................15

*Does 1-2 v. Déjà Vu Servs., Inc.*,
   925 F.3d 886 (6th Cir. 2019) ..................................................................................................14

*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) ....................................................................................................9

*Harsh v. Kalida Mfg., Inc.*,
   2021 WL 4145720 (N.D. Ohio Sept. 13, 2021)......................................................................12

*In re Cardizem CD Antitrust Litig.*,
   218 F.R.D. 508 (E.D. Mich. 2003) .........................................................................................16

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) .........................................................................................18

*In re E. Palestine Train Derailment*,
   2024 WL 4370003 (N.D. Ohio Sept. 27, 2024)............................................................ *passim*

*In re McKinsey & Co., Inc. Nat'l Prescription Opiate Consultant Litig.*
   MDL 2996 (N.D. Cal.)...............................................................................................12, 15, 18

*In re Nat'l Prescription Opiate Litig.*,
   2021 WL 320754 (N.D. Ohio Feb. 1, 2021)..............................................................................3

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen.
Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) .................................................................................................7, 8

*McKnight v. Erico Int'l Corp.*,
   655 F. Supp. 3d 645 (N.D. Ohio 2023)......................................................................... *passim*

*Pfaff v. Whole Foods Mkt. Grp. Inc.*,
   2010 WL 3834240 (N.D. Ohio Sept. 29, 2010)......................................................................5, 6

*Ramey v. Cincinnati Enquirer, Inc.*,
   508 F.2d 1188 (6th Cir. 1974) ....................................................................................... *passim*

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
   2010 WL 2490989 (N.D. Ohio June 15, 2010)..........................................................................3

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ..................................................................6

*Snelling v. ATC Healthcare Servs. Inc.*,
  2012 WL 6042839 (S.D. Ohio Dec. 4, 2012) ...........................................3

*Stanley v. U.S. Steel Co.*,
  2009 WL 4646647 (E.D. Mich. 2009) ....................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)..................................................................................5

*Waggoner v. U.S. Bancorp*,
  2016 WL 7474408 (N.D. Ohio Dec. 29, 2016) .........................................9

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ..............................................................5, 6

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 12 ......................................................................................................7
  Rule 23 ........................................................................................3, 6, 12
  Rule 23(a) ..............................................................................3, 4, 5, 7
  Rule 23(b)(3) ................................................................................3, 5, 6
  Rule 23(e) ................................................................................2, 10, 20
  Rule 23(e)(2) ................................................................................ *passim*
  Rule 23(e)(3) ...........................................................................................9, 11
  Rule 23(g)(2) ..........................................................................................13
  Rule 23(g)(3) .................................................................................11, 13
  Rule 23(h) ................................................................................13, 18, 19

## SECONDARY AUTHORITIES

4 *Herbert B. Newberg & William B. Rubenstein on Class Actions* § 13:49
  (6th ed. 2022) ...................................................................................7, 9

4 *Herbert B. Newberg & William B. Rubenstein on Class Actions* § 13:50 ..................................8

4 *Herbert B. Newberg & William B. Rubenstein on Class Actions* § 13:56 .................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; Flint Plumbing and Pipefitting Industry Health Care Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund[2] (collectively, "Settlement Class Representatives," "TPP Plaintiffs," or "Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards between the TPP Plaintiffs and the Settling Distributors, and request entry of the [Proposed] Order Granting TPP Plaintiffs' Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards ("Final Approval Order").

## I.    INTRODUCTION

This Settlement resolves claims by TPP Plaintiffs and Settlement Class Members against Settling Distributors for their alleged role in the nationwide opioid crisis, for which Settling Distributors will pay $300 million, inclusive of any and all fees, expenses, and service awards ("Settlement Amount").  The Settlement compensates TPP Settlement Class Members for their claims of opioid-related economic loss, such as costs incurred to pay for treatment of individuals with substance use disorder, opioid use disorder ("OUD"), or other opioid-related conditions.  The Settlement Amount shall not be subject to reduction, and, upon the occurrence of the Effective

---

[2]    The Court has not yet appointed United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania or Sheet Metal Workers Local No. 25 Health & Welfare Fund as Settlement Class Representatives, but TPP Plaintiffs seek their appointment herein.

Date, no funds will revert to the Settling Distributors. Settlement Class Members' claims will be paid pursuant to the Plan of Allocation described in the Expert Report of Professor Meredith Rosenthal Regarding Allocation of Settlement Proceeds (ECF 5614-7). Under the Plan of Allocation, any Settlement Class Member filing a valid claim prior to the end of the claims period will be paid its net allocative share, after the Court's final approval of the Settlement and absent any pending appeals.

## II.     SETTLEMENT NOTICE AND ADMINISTRATION TO DATE

Pursuant to the Order Granting TPP Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Direction of Notice Under Federal Rule of Civil Procedure 23(e) ("Preliminary Approval Order") (ECF 5616), Interim Settlement Class Counsel on October 1, 2024, filed with the Court proof of dissemination of the Notice to TPPs (ECF 5662). As detailed in the Declaration of Eric J. Miller Regarding Dissemination of Notice (ECF 5662, 5662-1), A.B. Data mailed the Postcard Notice to 42,005 entities in its TPP Database, sent 1,041 emails to TPPs and their representatives with available email addresses, caused digital banner ads to appear on certain websites, disseminated a press release version of the Notice via *PR Newswire*, opened the settlement website (www.TPPOpioidSettlement.com), and opened a case-specific, toll-free telephone number with an interactive voice response system and live operators. *See* ECF 5662-1. Initial responses from TPPs have been positive and encouraging, with no objections, and just two non-litigating opt-outs received ahead of the objection and opt-out deadline on November 4, 2024. Joint Decl. ¶11.

## III.    ARGUMENT

### A.    The Court Should Certify the TPP Settlement Class Under Rule 23(e)(2)

The Court has already found that "it will likely be able to certify, under Rule 23(e)(2), the proposed Settlement Class as defined . . ., for settlement purposes only, because the Class and its

representatives likely meet all relevant requirements of [Rules 23(a) and 23(b)(3)]."  Preliminary Approval Order (ECF No. 5616) at 4-5.[3]  TPP Plaintiffs analyzed these requirements in their Motion for Preliminary Approval (ECF 5614) and briefly summarize them again below.

### 1.    The Settlement Class Meets the Requirements of Rule 23(a)

Rule 23(a) requires numerosity, commonality, typicality, and adequacy.  The Sixth Circuit has also adopted an implicit ascertainability requirement for classes certified under Rule 23(b)(3). *See In re Nat'l Prescription Opiate Litig.*, 2021 WL 320754, at *3 (N.D. Ohio Feb. 1, 2021) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)).

Rule 23(a)(1): Numerosity requires that the class be "so numerous that joinder of all members is impracticable[.]"  Fed. R. Civ. P. 23(a)(1).  Here the Settlement Class contains over 40,000 TPPs, easily satisfying numerosity.  *See, e.g.*, *Snelling v. ATC Healthcare Servs. Inc.*, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (a class of 40 or more is generally sufficiently numerous); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010) (1,800-member class easily satisfied numerosity).

Rule 23(a)(2): Commonality requires that class members share common questions of law or fact.  To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "in one stroke."  *McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 656-57 (N.D. Ohio 2023) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).  Here, TPPs' claims are rooted in a core set of common questions about Settling Distributors' alleged conduct.  These questions are the same across the TPP Settlement Class because they relate to each Settling Distributor's knowledge and actions.  They are thus questions that can be fairly resolved for all Settlement Class Members at once.

---

[3]    Unless otherwise noted, all emphasis is added and citations are omitted.

Rule 23(a)(3): Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3).  A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).  Here, typicality is again satisfied because TPPs' claims arise from Settling Distributors' same alleged conduct and legal duties to prevent diversion within the prescription opioid supply chain, creating a clear nexus between TPP Plaintiffs' claims and those of the TPP Settlement Class Members.

Rule 23(a)(4): Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In the Sixth Circuit, there are two criteria for determining adequacy: "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."  *McKnight*, 655 F. Supp. 3d at 657 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976)).

The six appointed Settlement Class Representatives and two new proposed Settlement Class Representatives, which include named Plaintiffs in actions centralized in this MDL, and six of which are TPP bellwether Plaintiffs, have no interests antagonistic to Settlement Class Members and will continue to protect the Class's interests in overseeing administration of the settlement and through any appeals.  The Representatives understand their duties, have agreed to consider the interests of absent Settlement Class Members, and reviewed and uniformly endorsed the Settlement terms.  The Representatives have further demonstrated their adequacy by participating actively in the case, and each Representative has expressed continued willingness to protect the Settlement Class until the Settlement is approved and its administration completed.  Joint Decl.

¶¶25-26.  Moreover, as demonstrated throughout this litigation, Interim Settlement Class Counsel have undertaken the ongoing pleading, briefing, investigation, discovery work, effort, and expense of the TPP cases in this MDL.  Over the course of the more than six years since filing their clients' complaints, Interim Settlement Class Counsel have demonstrated their willingness to devote whatever resources are necessary to reach a successful outcome.  They, too, satisfy Rule 23(a)(4). *Id.* ¶¶14-16.

### 2.  The Settlement Class Meets the Requirements of Rule 23(b)(3)

Predominance: "To meet the predominance requirement [under Rule 23(b)(3)], a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof."  *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 544 (6th Cir. 2012).  The TPP Settlement Class can be maintained under Rule 23(b)(3) because questions that turn on generalized proof predominate over questions that affect only individual TPPs.  TPPs' claims depend, first and foremost, on common questions regarding Settling Distributors' alleged conduct.  TPP Plaintiffs also allege a common, unifying injury that, like every TPP Settlement Class Member's injury, allegedly arises from the inordinate increase in opioid sales and diversion nationwide that began with the 1996 launch of OxyContin.  These questions, capable of resolution with the same evidence for all TPPs, are the type of questions perfectly suitable for class-wide adjudication.  *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  And, while the extent of individual Settlement Class Members' damages may vary in degree, that variance does not defeat a finding of predominance for the Settlement Class as a whole.  *See McKnight*, 655 F. Supp. 3d at 658 (citing *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020)).

Superiority: The Rule 23(b)(3) superiority requirement concerns whether a class action is a better method than individual litigation for adjudication of a claim.  *See Pfaff v. Whole Foods*

*Mkt. Grp. Inc.*, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010).  From an efficiency standpoint, class treatment here is far superior to the litigation of thousands of individual TPP cases, each of which would have to prove the same wrongful conduct to establish Settling Distributors' wrongful conduct and would offer the same or similar evidence.  Given that TPP Settlement Class Members number in the tens of thousands, a class-wide settlement avoids the possibility of just as many lawsuits with potentially inconsistent rulings and results.  Moreover, because some TPPs are quite small, their damages would likely pale against the costs of litigating cases against the three largest pharmaceutical distributors in the United States.  Thus, class-wide resolution of TPP Settlement Class Members' claims is plainly favorable as compared to other means of adjudication.

Ascertainability: Rule 23(b)(3) classes in the Sixth Circuit must also meet an implied ascertainability requirement, *see Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017), and must include a class definition that is "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member [of the proposed class,]" *Young*, 693 F.3d at 538.  Here, Settlement Class Members can be identified based on their status as TPPs that provide healthcare and pharmacy benefits to eligible plan participants and beneficiaries, and that paid for prescription drugs and OUD treatment for beneficiaries of their plans in the Class Period.  The TPP settlement classes with which Interim Settlement Class Counsel are experienced have demonstrated that TPP classes are readily ascertainable.

For the reasons set forth above, the Court should find that the TPP Settlement Class and its Representatives meet all relevant requirements of Rule 23(a) and (b)(3).

**B.      The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2)**

A court may approve a proposed class settlement only "after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2); *see also McKnight*, 655 F. Supp. 3d at 661.  The TPP-Distributors Settlement satisfies all four of these factors.  In the Sixth Circuit, additional considerations guide the Rule 23(e)(2) inquiry: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."  *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").  However, while the *UAW* factors "might have relevance on any particular set of facts[,] [w]here they do not, there is no occasion to consider them."  *McKnight*, 655 F. Supp. 3d at 661.  Thus, while all of the *UAW* factors may not be relevant to the facts of the settlement at issue here, TPP Plaintiffs note that the settlement does nonetheless satisfy both the *UAW* and the Rule 23(e)(2) factors.

**1.      Settlement Class Representatives and Interim Settlement Class Counsel Have Adequately Represented the Class Under Rule 23(e)(2)(A)**

Rule 23(e)(2)(A) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)[.]"  4 William B. Rubinstein et al., *Newberg & Rubenstein on Class Actions* §13:49 (6th ed. 2022).  Here, Interim Settlement Class Counsel have prosecuted this action and its fair resolution with vigor and dedication, and have fought hard to protect the interests of the Settlement Class as evidenced by the significant compensation available through the settlement.  To achieve this outcome, Interim Settlement Class Counsel undertook significant efforts to uncover the facts at issue and engaged

in robust Rule 12 motion practice, submitting thorough and successful opposition briefs to Settling Distributors' motion to dismiss and certify the Order for appeal in the *Cleveland Bakers* case. Likewise, the TPP Settlement Class Representatives played an integral role in the litigation by closely consulting with counsel throughout the process. The Settlement Class Representatives who serve as TPP Bellwether Plaintiffs or briefing bellwethers have also further amended their complaints to conform with the best new evidence in the MDL, briefed important issues related to the Court's management of these cases, served numerous subpoenas, and negotiated production of claims data with third parties and Defendants. Moreover, the six appointed and two newly proposed TPP Settlement Class Representatives have each worked with counsel to review and evaluate the terms of the proposed Settlement Agreement, and each believes that the settlement is fair, reasonable, and adequate for the many reasons explained herein. Each Settlement Class Representative has also expressed its continued willingness to protect the Settlement Class until settlement administration is completed. *See* Joint Decl. ¶¶14-16, 25-26. Accordingly, both Settlement Class Representatives and Interim Settlement Class Counsel satisfy Rule 23(e)(2)(A).

> **2. The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Under Rule 23(e)(2)(B)**

Rule 23(e)(2)(B) requires that the parties negotiate the settlement at arm's length, which inquiry "aims to root out . . . 'collusive settlements.'" *Newberg* §13:50; *UAW*, 497 F.3d at 631. Here, resolution was achieved by way of good faith, informed, and arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions. Joint Decl. ¶7. Prior to settling, the parties exchanged briefing across several cases, including the *Cleveland Bakers* case, other TPP bellwether cases, and the numerous case tracks in this MDL (as well as in state courts), which has informed the parties' understanding of their strengths and weaknesses. Settlement Class Representatives who are TPP Bellwether

Plaintiffs have already produced some, and are also actively working to obtain and produce additional, claims data.  Where so much information has already been exchanged, "a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." *Newberg* §13:49.

Settlements such as this, resulting from formal mediations conducted by experienced mediators, indicate the absence of fraud or collusion.  *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016); *Waggoner v. U.S. Bancorp*, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016).  The parties' two mediations, one with the Honorable Layn Phillips and one with Mr. Fouad Kurdi, were separated by almost two years of active litigation, and the 2024 mediation proved successful only after hard-fought negotiations that began months prior to the day of the in-person mediation and continued after the day of the in-person mediation.  Joint Decl. ¶7. The proposed Settlement further does not include any indication of collusive negotiations, such as a clear sailing provision, and no portion of the Settlement Funds would revert to Settling Distributors even if this Court were to award no attorneys' fees.

### 3. The Relief Provided to the Settlement Class is Adequate Under Rule 23(e)(2)(C)

In assessing whether the relief provided to the Settlement Class is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]"  Fed. R. Civ. P. 23(e)(2)(C).

Costs, risks, and delay of trial: First, the $300 million Settlement is substantial in light of "the costs, risks, and delay of trial and appeal[.]"  Fed. R. Civ. P. 23(e)(2)(C)(i).  This Settlement not only avoids the clear obstacles present in litigating and trying individual TPP cases but assures that TPP Plaintiffs timely receive compensation only a short time after the Court turned once again to long-stayed claims by the TPPs.  Even if individual TPP Plaintiffs achieved successful judgments, the years of delay in achieving that result, on top of the years the TPP Plaintiffs have been stayed from litigating their claims, would only further injure TPP Plaintiffs and Settlement Class Members.  Settlement is the more prudent and expeditious route.  Moreover, the Settlement serves the public interest in resolving a nationwide class action to benefit TPPs and conserve the Court's resources by properly avoiding trial and appeals in this already long-standing MDL.

Effectiveness of the proposed method of distributing relief to the Class: The next factor considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]"  Fed. R. Civ. P. 23(e)(2)(C)(ii).  This consideration requires the Court to ensure, *inter alia*, that claims processing: (1) facilitates filing legitimate claims; and (2) is not unduly demanding.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  Under this factor, Settlement Class Members must also be treated equitably relative to each other.  This is accomplished through Dr. Rosenthal's Plan of Allocation (ECF 5614-7), which is based on neutral, objective criteria, is the product of extensive and informed investigation and analysis, and will ensure a fair distribution of the Settlement Funds.  Dr. Rosenthal is a preeminent TPP testifying economic expert, and she is thoroughly familiar with the operation of the healthcare industry and the TPPs' role and costs in the delivery of healthcare to their beneficiaries.

- 10 -

With respect to the method of processing class member claims, A.B. Data is a highly qualified Notice and Claims Administrator.  A.B. Data has demonstrated success in administering numerous national TPP settlements and will undoubtedly be an effective Notice and Claims Administrator in this action.  Thus far, A.B. Data has successfully disseminated Notice (*see* ECF 5662), with no objections and just two opt-outs received to date.  Joint Decl. ¶¶10-11.  And, even so, there will be no reversions of the Settlement Funds to Settling Distributors because all Settlement Funds money, net of fees, expenses, and service awards, shall be distributed to the Settlement Class.

Terms of attorney's fees: As discussed further below in Section D.1, the Settlement is also fair, reasonable, and adequate with respect to the "terms of any proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii).  Interim Settlement Class Counsel has requested 20% of the Settlement Funds, which is modest in comparison to other percentage-of-the-fund requests both in this Circuit and nationwide.  And the Court's ultimate decision as to whether to award attorneys' fees, expenses, and Settlement Class Representative service awards does not impact or terminate the underlying Settlement Agreement.  The terms of Interim Settlement Class Counsel's fee request thus satisfy Rule 23(e)(2)(C)(iii) and should be approved.

Absence of side agreements: The fairness, reasonableness, and adequacy of a settlement must also consider "any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv).  Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Here, where the only such agreement is the Settlement itself, there is no risk that "related undertakings . . . may have influenced the terms of the settlement[,]" and this sub-factor supports the adequacy of relief.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment.

- 11 -

### 4. The Settlement Treats Class Members Equitably Relative to Each Other Under Rule 23(e)(2)(D)

This factor "ensure[s] that similarly situated class members are treated similarly[.]" *Newberg* §13:56. In evaluating the fairness of a class settlement, Ohio district courts also ensure that the distribution of settlement proceeds is equitable. "Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate." *Harsh v. Kalida Mfg., Inc.*, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021). Here, similarly to *Harsh*, each qualified claimant's share of the Settlement is "based upon their calculated damages," *id.*, turning on actual claims data and ARCOS data. No Settlement Class Member receives preferential treatment under the Settlement because each Settlement Class Member is entitled to a *pro rata* portion of the Settlement Funds based on the Plan of Allocation, which provides that any Class Member that files a valid claim prior to the end of the claims period, after final approval by the Court and absent pending appeals, will be paid its net allocative share.

Attached as Exhibit A to the Joint Declaration is the Declaration of Professor William B. Rubenstein, which further supports the relative equitable treatment of Class Members by providing additional information on allocation approaches in opioid settlements, generally, and in this settlement specifically. Professor Rubenstein, a Professor at Harvard Law School and leading national expert on class action law, describes the MDL 2804 allocation formula, its use in the *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, MDL 2996 (N.D. Cal.) political subdivision class action settlement, and its data-driven parallels with the *McKinsey* TPP class action settlement and this MDL 2804 TPP class action Settlement. *See* Joint Decl. ¶9; Joint Decl. Ex. A (Rubenstein Decl.) ¶¶1-34. Professor Rubenstein explains how the prior MDL 2804 settlements informed the *McKinsey* TPP settlement and the instant Settlement and offers further support for the legitimacy of the proposed allocation formula. Ex. A ¶¶35-47. In sum,

Professor Rubenstein finds that "the proposed allocation formula is data driven, uses similar data for all class members, ensures that recovery levels correspond to harm levels, raises no Rule 23 red flags," and he notes that "Judge Breyer explicitly blessed it, too, in granting final approval to the McKinsey TPP settlement." *Id.* ¶49.

The Settlement thus satisfies Rule 23(e)(2)(D).

**C.     The Court Should Appoint Settlement Class Counsel Under Rule 23(g)(1)**

Under Rule 23(g)(2), a court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)."  In appointing Interim Settlement Class Counsel under Rule 23(g)(3), as well as Interim Co-Lead Settlement Class Counsel, the Court considered the time, effort, and resources that Mr. Geller, Ms. Cabraser, Mr. Dugan, Mr. Dearman, Mr. Fastiff, and their three firms have expended in representing the Settlement Class, as well as their cumulative many decades of experience in litigating and settling class actions on behalf of both other plaintiffs in this MDL and TPP plaintiffs in a variety of other cases.  Moreover, Interim Co-Lead Settlement Class Counsel Paul Geller and Elizabeth Cabraser, and James Dugan, are Court-appointed members of the Plaintiffs' Executive Committee, and Mr. Geller and Ms. Cabraser are Court-appointed members of the Settlement Negotiating Committee.  Joint Decl. ¶¶5, 14-15.  The Court concluded that Interim Settlement Class Counsel would fairly and adequately represent the interests of the Settlement Class.  It should now confirm Mr. Geller, Ms. Cabraser, Mr. Dearman, and Mr. Fastiff and appoint Mr. Dugan as Settlement Class Counsel and designate Ms. Cabraser, Mr. Geller, and Mr. Dugan as Co-Lead Settlement Class Counsel.

D.   **The Court Should Approve Counsel's Requested Fees and Expenses Under Rule 23(h), as Well as the Requested Settlement Class Representative Service Awards**

1.   **The Requested Attorneys' Fees Are Reasonable Under Rule 23(h)**

Rule 23(h) governs the award of "reasonable" attorneys' fees and nontaxable costs in class actions.  Where, as here, "litigation leads to the creation of a common fund, district courts apply a two-part analysis to assess the reasonableness of an attorneys' fee request."  *In re E. Palestine Train Derailment*, 2024 WL 4370003, at *5 (N.D. Ohio Sept. 27, 2024) (citing *Harsh*, 2021 WL 4145720, at *8).  The Court first exercises "discretion" in selecting "the appropriate method to calculate the fees, using either the percentage-of-the-fund approach or the lodestar approach."  *Id.*  The Court must then "consider six factors, known as the *Ramey* factors, to assess the reasonableness of the fee."  *Id.* (citing *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011)).  The *Ramey* factors are:

> (a) the value of the benefits rendered to the class; (b) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (c) whether the services were undertaken on a contingent fee basis; (d) the value of the services on an hourly basis; (e) the complexity of the litigation; and (f) the professional skill and standing of all counsel.

*Id.* (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194-97 (6th Cir. 1974)).  Courts at their discretion may, and often do, consider other factors, such as fees awarded in other common fund cases, although none of these factors is alone dispositive.  *See id.*

Interim Settlement Class Counsel are applying for attorneys' fees of up to 20% of the $300 million Settlement Funds (that is, fees of up to $60 million), with this application inclusive of the common benefit assessment due under the Court's Ongoing Common Benefit Order (ECF 4428), plus all reimbursable expenses and service awards.  "It is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award."  *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019).  The requested fee award is thus at the lower end of the range of

attorneys' fees regularly deemed reasonable by the Sixth Circuit; *see also*, *e.g.*, *McKnight*, 655 F. Supp. 3d at 663 (approving attorneys' fees at 32.6% of settlement fund); *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *19 (N.D. Ohio Sept. 1, 2011) (approving attorneys' fees at 29% of settlement amount and collecting cases).  Moreover, around the country, "the most common percentages awarded by federal district courts nationwide using the percentage method were 25%, 30%, and 33%, with nearly two-thirds of awards between 25% and 35%, and with a mean award of 25.4% and a median award of 25%."  *E. Palestine*, 2024 WL 4370003, at *13 (citing Brian Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010)).  Settlement Class Counsel's requested 20% fee is, thus, well below the national average of percentages awarded in percentage-method cases.

Next, as analyzed below, Settlement Class Counsel's requested attorneys' fee award satisfies the six *Ramey* factors.

(1) Value of the Benefits Rendered to the Class: This, the first *Ramey* factor, is "widely regarded as the most important factor" and concerns "the number of individuals affected by the underlying allegations and the total settlement reached."  *E. Palestine*, 2024 WL 4370003, at *9 (cleaned up).  Here, the Settlement Class comprises tens of thousands of TPPs across the country, and Settlement Class Members will receive equitable, *pro rata* distributions in direct relation to the harms they incurred as a result of Settling Distributors' alleged conduct.  The $300 million Settlement Funds are an excellent value for the Settlement Class.  This amount reflects compensation between one group of the MDL 2804 plaintiffs (TPPs) and one group of MDL 2804 defendants (the Settling Distributors), and, given this scope, the settlement's value is proportional to other settlements reached in this MDL 2804 as well as to the TPP settlement in *McKinsey*.

(2) Society's Stake in Rewarding the Attorneys Who Achieved These Benefits: This *Ramey* factor also weighs in favor of Settlement Class Counsel's requested fee award. "Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions like this case benefits society." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003). This MDL 2804 is one of the largest and most complex MDLs yet encountered by a federal district court; under the leadership of this Court, numerous proceedings, trials, and settlements have progressed and benefitted countless individuals, organizations, governments, and, now, TPPs, all of which have felt the effects of the unprecedented public health crisis that has been the opioid epidemic. This gargantuan effort depended upon the efforts of many counsel, and public policy thus strongly supports the requested attorneys' fees. Not only have Settlement Class Counsel in this case undertaken significant risk, time, and effort in prosecuting this litigation, but Settlement Class Counsel have been involved in the larger MDL 2804 for many years. "Attorneys who agree to champion large and complex class actions like this one 'serve a benefit to society and the judicial process by enabling . . . claimants to pool their claims and resources' to 'achieve a result they could not obtain alone.'" *E. Palestine*, 2024 WL 4370003, at *11 (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)). Settlement Class Counsel's fee request – again, at the lower end of the range of percentage-of-the-fund fees typically awarded in common-fund cases in this Circuit – will ensure that adequate incentives exist for lawyers such as Settlement Class Counsel to continue to take on and prosecute complex cases like this one. *See id.*

(3) Whether Settlement Class Counsel's Services Were Rendered on a Contingency Fee Basis: The third *Ramey* factor is "an important factor in determining the fee award" and is satisfied here. *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. 2009). Settlement Class Counsel prosecuted this action on a contingent-fee basis from the beginning of this action, and

throughout the progression of the TPP cases, there has been a risk that Settlement Class Counsel would not recover for the extensive time and resources they have devoted. Indeed, this risk persists as to other Defendants who are not Settling Distributors. Thus, this factor weighs strongly in favor of granting Settlement Class Counsel's fee request.

(4) The Value of Settlement Class Counsel's Services on an Hourly Basis: "Given the preference in the Sixth Circuit for using the percentage-of-the-fund method to evaluate attorneys' fees . . . , consideration of this fourth [*Ramey*] factor—which courts sometimes refer to as a 'lodestar crosscheck'—is not required." *E. Palestine*, 2024 WL 4370003, at *11 (collecting cases). Nevertheless, courts may consider "summaries of Class Counsel's hourly billing records . . . to determine the reasonableness of the percentage award." *Id.* As the Court is aware, the undersigned Settlement Class Counsel and their firms have spearheaded the litigation of TPP claims in MDL 2804 since its inception seven years ago. Throughout the course of this MDL, they have advanced substantial TPP costs and invested thousands of hours in TPP-specific work, including the drafting, amendment, and defense of the TPP briefing bellwether complaint; TPP discovery; commencing and completing the TPP bellwether selection process; designing the TPP bellwether case tracks; negotiating, mediating, and settling the instant case with the three large Settling Distributors and their sophisticated counsel; and preserving the TPPs' class allegations. This time, together with additional time incurred by TPP liaison counsel, other counsel to the TPP bellwether plaintiffs, counsel who performed duly authorized work specifically for the TPPs in connection with law, briefing, and settlement, and others, is reasonable given the complexity and novelty of this case – the first settlement by TPP plaintiffs in MDL 2804.

(5) The Complexity of the Litigation: The TPP cases, situated within the larger MDL 2804, are very factually and legally complex, and this settlement involves, on one side, a Settlement

Class of likely tens of thousands of TPPs and, on the other, the three largest pharmaceutical distributors in the country.  Moreover, as detailed above and in the Motion for Preliminary Approval (ECF 5614), this settlement is the result of two mediations and follows years of initial investigation and briefing, as well as ongoing discovery.  The TPP Distributors settlement is a complex piece of an even more complex whole, which further weighs in favor of granting Settlement Class Counsel's attorneys' fee request.

(6)  <u>The Professional Skill and Standing of All Counsel</u>: Interim Settlement Class Counsel without doubt satisfy this last *Ramey* factor.  They have diligently investigated and litigated this case (as well as numerous other case tracks in MDL 2804), and they have further extensive experience in litigating and settling TPP class actions in other cases across the country, most recently *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, MDL No. 2996.  Courts also consider the "quality of opposing counsel" in this *Ramey* factor, *In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008); they, too, have demonstrated high-quality and zealous representation of the Settling Distributors.  The ability of both sets of equally matched counsel to negotiate a favorable result for the class speaks to the competence and professionalism of everyone involved.

Lastly, several additional considerations weigh in favor of the reasonableness of the attorneys' fee request.  Any attorneys' fees and expenses awarded by the Court will be paid from the Settlement Funds only after the Court grants Final Approval and the judgment becomes final. The common benefit portion of any fees awarded shall be allocated by the existing Fee Panel among applicant firms that it determines did work that inured to the common benefit of the TPPs. The remaining amount awarded shall be allocated by Co-Lead Settlement Class Counsel among firms actively litigating on behalf of the TPP Settlement Class, with any appeals to such allocation

going to Special Master Cohen – an approach commonly permitted in this Circuit. *See, e.g.*, *E. Palestine*, 2024 WL 4370003, at *13 (finding that "Co-Lead Class Counsel, 'who are most familiar with the work done by each firm and each firm's overall contribution to the litigation,' are best suited to apportion these fees among the firms involved" (quoting *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008))).

For all of the reasons above, the Court should award Interim Settlement Class Counsel's requested attorneys' fees.

### 2. The Requested Expenses Are Reasonable Under Rule 23(h)

With respect to expenses, "'awards are customary when litigants have created a common settlement fund for the benefit of a class.'" *Id.* (quoting *Delphi*, 248 F.R.D. at 504). "In determining whether requested expenses are compensable in this common fund, the Court should consider 'whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases.'" *Id.* (quoting *Cardizem*, 218 F.R.D. at 535).

Here, Interim Settlement Class Counsel's expense award is comprised of routine expenses billed by attorneys in similar cases. Counsel advanced these expenses without reimbursement or any guarantee of reimbursement. In total, Interim Settlement Class Counsel and counsel working for the benefit of TPPs in this MDL have incurred, or expect to incur shortly, expenses in the amount of $750,000.00 while prosecuting this case on behalf of the TPP Settlement Class. These expenses have included, for example, filing fees, telephone and messenger charges, expert costs, eDiscovery database hosting, data vendor costs, and online legal research. Joint Decl. ¶23.

### 3. The Settlement Class Representative Service Awards Are Reasonable

"[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."

*E. Palestine*, 2024 WL 4370003, at *6 (quoting *Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *6 (E.D. Mich. July 3, 2019)).  In determining whether to grant service awards, Courts consider factors such as a class representative's "actions to protect the class, the degree to which the class has benefitted, . . . the ultimate recovery to the class, and the sums awarded in similar cases." *Id.* (citing 5 William B. Rubinstein et al., *Newberg on Class Actions* §17:13 (5th ed. 2019)).

Interim Settlement Class Counsel request service awards of $10,000 for each of the eight Settlement Class Representatives.  The eight Settlement Representatives undertook considerable time and effort in assisting the prosecution of this litigation, and their efforts have significantly advanced the protections afforded to and benefits that will be received by all other TPP Settlement Class Members.  The total service award amount of $80,000 is a small fraction (0.026%) of the total $300 million Settlement Funds.  And the per-representative amount of $10,000 is well below service awards approved in other large common fund cases.  *See, e.g.*, *E. Palestine*, 2024 WL 4370003, at *15 (collecting cases where courts approved service awards of $15,000, $25,000, and $35,000, and approving service awards of $15,000).  The requested service awards are thus reasonable compensation for Settlement Class Representatives' time and effort.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that final approval of the Settlement be granted, pursuant to the criteria and procedures of Fed. R. Civ. P. 23(e), and in accordance with the terms set forth herein.

## Certificate of Compliance with Local Rule 7.1(f)

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that the Memorandum in Support of Third Party Payor Plaintiffs' Motion for Final Approval of Class Action Settlement and for Attorneys' Fees and Expenses and Service Awards complies with the page limitations (30) established for complex track cases.

DATED:  October 18, 2024

Respectfully submitted

*/s/ Paul J. Geller*

Paul J. Geller
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750 3000
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com

*Interim Settlement Class Counsel; Counsel for Cleveland Bakers and Teamsters Health and Welfare Fund, and Pipe Fitters Local Union No. 120 Insurance Fund*

*/s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser
Eric B. Fastiff
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
efastiff@lchb.com

*Interim Settlement Class Counsel; Counsel for Pioneer Telephone Cooperative, Inc. Employee Benefits Plan, and American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan*

/s/ James R. Dugan, II

James R. Dugan, II
**THE DUGAN LAW FIRM, PC**
One Canal Place, Suite 1000
New Orleans, LA 70130

*Third Party Payor PEC Representative; Counsel for
United Food and Commercial Workers Health and
Welfare Fund of Northeastern Pennsylvania, and
Sheet Metal Workers Local No. 25 Health and
Welfare Fund*

Jayne Conroy
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
**MOTLEY RICE**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
**FARRELL & FULLER LLC**
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918
Telephone: (304) 654-8281
paul@farrelfuller.com

*Plaintiffs' Co-Lead Counsel*

/s/ Peter Weinberger

Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER**
1001 Lakeside Ave. East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 18, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

*/s/ Peter Weinberger*
Peter H. Weinberger