UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All PBM Cases | MDL No. 2804<br><br>Case No. 1:17-md-02804-DAP<br><br>Judge Dan Aaron Polster |

### PBM DEFENDANTS' STATEMENT REGARDING BELLWETHER SELECTION

Plaintiffs have made it impossible for the PBM Defendants to select a representative bellwether. Simply put, through their failure to implement timely litigation holds in most PBM cases and their dismissal of other seemingly viable cases, such as City of Paterson, Plaintiffs have improperly gerrymandered the pool of available bellwether cases to a handful of cases that would serve no bellwether value whatsoever. Apparently, Plaintiffs seek an unfair litigation advantage that would see the one current bellwether that they selected rush ahead in discovery while the PBM Defendants would be left with no worthwhile bellwether options.

When the year began, this Court determined that four cases were essential to a fair and meaningful bellwether process. The Court established a process that led to the selection of the required four PBM bellwethers. ECF No. 5231. During discovery, the PBM Defendants learned that three of the four bellwethers had failed to timely implement litigation holds and had destroyed relevant evidence. The Court discontinued those cases as bellwethers and set a process for selecting a replacement bellwether. Choosing a replacement was always going to be challenging, given Plaintiffs' systemic failure to implement litigation holds.

Previously, the Court had directed the PEC to file a notice identifying if and when a litigation hold was implemented in each PBM case. ECF No. 5517; ECF No. 5540 at 39:6–41:17.

On August 13, 2024, the PEC revealed for the first time that more than 70% of plaintiffs—86 of the 121 plaintiffs in 80 cases with pending claims against the PBMs[1]—failed to implement a litigation hold on or before the date they filed their complaint. ECF No. 5589-1. Dozens of those plaintiffs failed to *ever* implement a litigation hold, while many others waited months or years to implement one. *Id*.

Nonetheless, there were a handful of cases with no known preservation issues that the PBM Defendants believed could serve as useful bellwethers that they planned to pick. But Plaintiffs have now made that impossible. Last week, Plaintiffs dismissed or revealed spoliation issues in the few remaining PBM cases that were representative candidates for bellwether selection.

To avoid potential preservation issues in a replacement bellwether, the Court directed the PEC to "certify" which PBM cases "had litigation holds properly implemented at the time the underlying complaints were filed." ECF No. 5646. The Court further directed that the PBM Defendants select two potential replacement PBM bellwethers from that pool of existing cases against the PBM Defendants where a litigation hold was properly implemented. *Id.* at 1; ECF No. 5648 at 17:3–6, 13–19. The PEC would then strike one of the PBM Defendants' selections, thereby selecting one replacement bellwether case to proceed. ECF No. 5646 at 2.

Instead of publicly filing the court-ordered certification, the PEC sent an email to the Court and the PBM Defendants on October 7, 2024, that identified only *four* cases they contend do not have any document retention or destruction issues and could serve as a replacement PBM

---

[1] Plaintiffs' counsel also provided information for one non-MDL case pending in Missouri state court, *Franklin County v. Williams*, 20AB-CC00006 (Franklin County Cir. Ct.), and another plaintiff, Clark County, NV. Clark County is not currently a PBM case as the County dismissed with prejudice its claims against the Express Scripts Defendants five years ago. *Clark County v. Purdue Pharma, L.P.*, 1:19-op-46168-DAP, ECF No. 6 (Sept. 13, 2019). Clark County did not assert claims against the OptumRx Defendants. *See Clark County*, 1:19-op-46168-DAP, ECF No. 1-3 (original complaint); ECF No. 49 (amended complaint).

bellwether. ECF No. 5673-2. Only two of those four cases implemented a litigation hold before suing the PBM Defendants. *Id.*² The PEC also represented that six other cases filed by Scott & Scott "have declined to act as a bellwether." *Id.*

The PBM Defendants had previously nominated one of those Scott & Scott cases—City of Paterson, NJ—as a potential bellwether during the first round of bellwether selection. ECF No. 5218. At that time, the PEC made no objection. Instead, the PEC exercised one of its strikes against City of Paterson, so it did not become a bellwether. ECF No. 5229.

On October 17, 2024, just ten days after attempting to exclude their cases from bellwether selection, Scott & Scott filed a "Notice of Amended Certification" on behalf of City of Paterson in which Scott & Scott certified:

> After reconsidering the resources available for litigation, Paterson amends its October 7, 2024 certification as follows: Paterson is committed to being a bellwether and will devote all necessary resources to the endeavor, subject to further vetting of its candidacy by the Court and the parties.

ECF No. 5690.

At the status conference on October 17, the Court addressed Scott & Scott's position on its other five PBM cases, explaining that "[a] subdivision doesn't have the option to decline to be a bellwether. You file the case. If you are picked, you are picked." ECF No. 5695 at 2:21–23. The Court directed Scott & Scott to either certify the other cases as prepared to litigate or to dismiss them. *Id.* at 2:24–25, 4:17–5:1, 5:5–14. The Court directed the PEC to file an updated certification by October 23; the PBM Defendants to file their two picks by October 30; and the PEC to file its strike by November 6. *Id.* at 7:9–10, 7:24–8:25.

---

² Arlington County, Virginia, did not implement a litigation hold until 14 months after filing suit. Fairfax County, Virginia, did not implement a litigation hold until 2 months after filing suit.

3

On October 22, Scott & Scott dismissed all six of its cases as to the PBM Defendants—including City of Paterson, despite the amended certification five days earlier stating that City of Paterson was "committed to being a bellwether." *Compare* ECF No. 5700 *with* ECF No. 5690. On October 23, Napoli Shkolnik provided updated certifications for its Second Circuit and Ohio cases and stated that it would also be dismissing cases for seven plaintiffs. *See* Exhibit 1.

Given those developments, the PBM Defendants are left with no existing PBM case in the MDL that could serve as a useful bellwether, one that supplies new and representative information that would aid the parties in resolving PBM cases. For example, one of the few plaintiffs to represent it timely implemented a litigation hold just admitted last week, for the first time, that it has preservation issues despite its litigation hold. ECF No. 5701 at 1–2 (discussing *Henrico County, VA v. Mallinckrodt PLC*, 1:20-op-4517 (N.D. Ohio)). Selecting that case would require the same kind of spoliation discovery this Court has eschewed in bellwethers. Other cases are in New York, where there is an ongoing PBM bellwether, or Ohio, where the Court has already held a bellwether, and legal issues arising from that bellwether are pending on appeal before the Sixth Circuit and the Supreme Court of Ohio. The PBM Defendants will not pick cases from those jurisdictions and in any event would rightly place no value in any bellwether selected from the remaining gerrymandered pool.

The PEC is no doubt content to allow the sole remaining bellwether (the City of Rochester—a PEC pick) to race ahead to a trial without any PBM-selected bellwether. It has proposed that the Court delay further bellwether selection until resolution of the pending motion by various plaintiffs seeking leave to amend to add claims against the PBM Defendants. That motion should be denied for multiple reasons, as the PBM Defendants will explain in their upcoming briefing on the motion. But even if some plaintiffs were granted leave to add claims

4

against the PBM Defendants, it is unlikely that would yield any new viable bellwether because, as the PEC has acknowledged, more than 75% of the plaintiffs seeking leave to amend also failed to timely implement litigation holds.

Given that only a handful of existing cases with no disclosed spoliation issues remain, the most efficient path to resolution would be to remand all the PBM cases to their respective federal district courts.

Alternatively, the Court should require all plaintiffs that have pending claims against the PBM Defendants or that are seeking leave to amend to add claims against the PBM Defendants complete the proposed Second Supplemental Government Plaintiff Fact Sheet (ECF No. 5687-2). That would allow the Court and the parties to start ascertaining the full extent of the preservation issues in those cases.

Date: October 30, 2024

Respectfully submitted,

 /s/ Brian D. Boone
Brian D. Boone
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com

William H. Jordan
D. Andrew Hatchett
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for OptumRx, Inc.*

 /s/ Jonathan G. Cooper
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
T: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

*Attorneys for Express Scripts, Inc.*