# EXHIBIT 4

| | |
|---|---|
| From: | Price, Nikki <Nikki.Price@albertsons.com> |
| Sent: | Monday, July 08, 2013 3:22 PM |
| To: | Berggren, Lynette; Riley, Bobbie |
| Subject: | Appropriate Dispensing of Controlled Substances clean 7-8-13.docx |

Attached is the clean version of all of our comments incorporated. Thanks so much!



Appropriate Dispensing of C...





1

CONFIDENTIAL

ALB-NM00015258

## Appropriate Dispensing of Controlled Substances

The federal Controlled Substances Act assigns pharmacists and prescribers corresponding responsibility to appropriately dispense controlled substances. This means pharmacists must use professional judgment in determining if a prescription was prescribed for a legitimate medical purpose by a prescriber acting in the ordinary course of his/her professional practice. Below are examples of red flags that may warn a pharmacist that additional research is warranted, using the appropriate tools and resources available:

- ☑ Patients that pay cash for controlled substance prescriptions or upon rejection by a third party plan, requests to pay cash for a controlled substance prescription
- ☑ Pattern prescribing, i.e. many patients receiving same combo/cocktail of prescriptions (opioid/benzodiazepine/muscle relaxer)
- ☑ A common prescriber writing prescriptions for the same drug, same quantity and same strength for multiple patients
- ☑ Patients residing outside locale of store and prescriber
- ☑ Prescriber is not associated with a pain management practice (pediatrician, gynecologist, etc.) or the prescription is otherwise outside the scope of the prescriber's practice
- ☑ Patients requesting brand name products
- ☑ Shared addresses by patients presenting the same or similar prescriptions from the same prescriber
- ☑ When reviewing the patient profile, there is evidence that the patient has been prescribed controlled substances by multiple prescribers.
- ☑ Patients receiving large quantities of controlled substances
- ☑ Patients commonly presenting prescriptions on weekends or late in the day
- ☑ New patients who have been turned away from other pharmacies

If one or more red flags exist, the pharmacist must exercise professional judgment in deciding whether to dispense the prescription and use available resources, as necessary and appropriate, including the following:

- Refer to the state's Prescription Monitoring Program (PMP)
    - Practitioners, including pharmacists, have to register as an individual. Links to available PMPs are listed on the pharmacy portal on the front page of the myAlbertsons.com portal under "Nationwide Links."
    - All pharmacists should register for access if applicable.
    - Check new or unknown patients for CIIs and CIIIs.
    - Review prescriptions for oxycodone 15 or 30mg.
    - Document the PMP check in the patient profile with the date, initials, and resultant action taken (i.e. *6/27/13, NMP, checked PMP, dispensed oxycodone*). If the resultant action is not to dispense the prescription, document the same in

   the patient profile. In the situation the patient is a new patient to the pharmacy, create a patient profile so the note can be documented.
    - The PMP is only to be used as an additional resource in filling a prescription, and not to be used as an investigative tool
- Request ID from a new or unknown patient
    - If not already required by state law, document the type of identification verified in the pharmacy system as follows: "Verified ID-Driver's license." Unless required by law, do not record any identification numbers in the note or the patient profile.
- Verify the prescriber's DEA registration number, office address, and telephone number
    - Don't call the telephone number on the prescription. Instead, independently verify the phone number using the computer or local telephone directory.
- Verify the intended dosage with the prescriber
    - Document any discussions with a prescriber regarding the intended dosage on the hard copy of the prescription and rescan it into the pharmacy system.
    - When speaking with the prescriber, the conversation should remain friendly and professional.
        - For example, "Hello, this is Jane Doe, pharmacist at SavOn pharmacy. I am calling regarding a prescription for Mrs. Smith. I wanted to verify I have appropriately interpreted the doctor's instructions in regards to the dose. Could I please verify this with the prescriber?"

If, after careful review, the pharmacist decides that filling the prescription is not in the best interest of the patient, the pharmacist should convey this to the patient in a professional and patient friendly manner. The patient is still a patient of our store, and should be treated as such. For example, "I am sorry Mrs. Smith, after reviewing the prescription and speaking with your physician, I don't believe filling this prescription is in your best interest." Unless the prescription was determined to be forged or otherwise fraudulent, the prescription should be returned to the patient.

Additional information and resources on the appropriate dispensing of controlled substances may be found at:

*www.deadiversion.usdoj.gov*

In addition, a continuing education program has been placed on the Pharmacy Education portal page titled, *"Drug Store News: Pharmacists' responsibility in appropriately dispensing controlled substances"*.

HIGHLY CONFIDENTIAL

ALB-NM00015260