# EXHIBIT 5

EXHIBIT: 6
WITNESS: 30b6-Covaci
3/2/22
TUCKER&ASSOCIATES




# Retail Pharmacy

# Policies and Procedures

*INTRODUCTION*

*These Policies and Procedures govern the retail pharmacy operations of Albertsons Companies, as adopted and approved by the Pharmacy Compliance Committee. They are expected to be read or reviewed at least annually, understood, and consistently followed by the pharmacy and other employees to whom they apply. Except when determined to conflict with obligations under the National Labor Relations Act or an applicable collective bargaining agreement, any failure to follow or otherwise comply with these policies and procedures, as well as any applicable corporate or division policies, may result in corrective action that takes into consideration the nature, severity, and actual or potential consequence of the current infraction and any history of other infractions. Corrective action includes immediate termination in certain situations. They are effective as of the date indicated and may be modified or amended at any time upon Pharmacy Compliance Committee approval.*

*Suspected or confirmed violations of these or other company policies must be timely reported to appropriate company management personnel or to the Employee Hotline at (855) 673-1084 (may be made anonymously). Failure to report known violations may result in corrective action against the employee who observed or otherwise had knowledge of, and failed to report, the action or conduct. Employees are protected from retaliation, by law and by company policy, for reports made in good faith.*

Live Healthy. Be You.



EXHIBIT
23
Catizone 5/23/24



# RETAIL PHARMACY POLICIES AND PROCEDURES

## Table of Contents


Chapter I. Pharmacy Team Members ... 1

Section A. Credentialing ... 1

1. Legal Eligibility ... 1
2. Eligibility Tracking ... 1
3. Credential Posting ... 2
4. Credential Renewals ... 2

Section B. Pharmacists ... 2

1. Training ... 2
2. Scheduling ... 2
3. Change in Pharmacist-in-Charge (aka "PIC Change") ... 3
4. Services ... 4
5. Liability Coverage ... 4

Section C. Technicians ... 4

1. Training ... 4
2. Utilization ... 4

Section D. Non-credentialed Ancillary Personnel (Clerks/Cashiers) ... 5

Section E. Pharmacy Learning and Development ... 6

1. Pharmacy Training ... 6
2. Continuing Education ... 6

Section F. Meeting Our Team Standards ... 6

1. Professional Ethics and Conduct Standards ... 6
2. Personal Appearance and Cleanliness Standards ... 9
3. Personal Belongings in the Pharmacy ... 10
4. Personal Use of Prescription Medication ... 11
5. Employee Purchases ... 12
6. Misappropriation, Theft, or Unauthorized Use of Company Property or Resources ... 12
7. Ownership and Protection of Proprietary Property ... 12
8. Media Inquiries and Public Relations ... 13




Live Healthy. Be You.




Pharmacy



# RETAIL PHARMACY POLICIES AND PROCEDURES


Chapter II. Pharmacy Facility Standards ..... 14

Section A. Facility Management ..... 14

1. Pharmacy Credentialing ..... 14
2. Pharmacy Equipment ..... 14
3. Pharmacy "Grand Opening Look Daily" ("GOLD") Standards ..... 15
4. Reference Materials ..... 15
5. Workflow Design ..... 15
6. Pharmacy Opening and Closing Procedures ..... 16
7. Pharmacist Meal and Rest Breaks ..... 17
8. Pharmacy Security ..... 18
9. Pharmacy Disaster Preparedness and Recovery Plan ..... 20

Section B. Records Management ..... 23

1. Controlled Substances ..... 23
2. Credit Card Information Storage and Payment Card Industry ("PCI") Compliance ..... 24
3. Patient Records Release ..... 26
4. Pharmacy Records Retention, Storage, and Disposal ..... 30
5. Pharmacy Trash ..... 31

Section C. Audits and Inspections ..... 31

1. Company Visits ..... 31
2. Outside Entities ..... 31

Chapter III. Product Management ..... 33

Section A. Procurement and Distribution ..... 33

1. Approved Drug Product Sources ..... 33
2. Emergency and Special Orders ..... 34
3. Controlled Substance Orders ..... 35
4. Product Distribution ..... 36

Section B. Inventory Management ..... 37

1. Receiving/Order Detailing Procedures ..... 37
2. Storage and Handling ..... 40
3. Short-dated or Expired Product ..... 44




Live Healthy. Be You.





# RETAIL PHARMACY POLICIES AND PROCEDURES


4. Recalls ..... 45
5. Returns ..... 47
6. Pharmacy Hazardous Waste Management ..... 48

Section C. Controlled Substance Inventory Accounting ..... 48

1. Inventories ..... 48
2. Controlled Substance Inventory Report ..... 49
3. Audits ..... 49
4. Inventory Shrink ..... 50
5. Controlled Substance Returns ..... 51

Chapter IV. Serving Our Patients ..... 52

Section A. Patient Care Standards ..... 52

1. The "WELL" Experience ..... 52
2. Managing Conscientious Objections ..... 57
3. Managing Patient Concerns ..... 58
4. Prescription Accuracy and Appropriate Dispensing Standards ..... 65

Section B. Pharmacy Systems ..... 71

1. Interactive Voice Response System ..... 71
2. Automated Dispensing Systems ..... 71
3. Pharmacy System Login or Biometric Identification ..... 81
4. "Return-to-Stock" ("RTS") Processing ..... 81
5. PDX Classic - Failed Credit Reconciliation Procedures ..... 82
6. Pharmacy System Downtime Procedures ..... 82

Section C. EPS - Pharmacy Workflow Standards ..... 83

1. EPS Order Entry (In-Window Processing) ..... 83
2. RPh Verification ..... 92
3. Fill Station Processing ..... 94
4. Product Verification ..... 95
5. Will Call ..... 96
6. Out-Window Dispensing ..... 96
7. Partial Filling of Prescriptions ..... 101








Jewel Osco | Amigos | VONS | Randalls | Albertsons | SAFEWAY | Tom Thumb | PAVILIONS | shaw's | Albertsons market | ACME | star market | CARRS | Market Street | United supermarkets | Super Saver | Haggen | United Express | Lucky

# RETAIL PHARMACY POLICIES AND PROCEDURES


8. Prescribed OTC Dispensing ....102
9. Prescription Cancellation ....102

Section D. PDX Classic - Pharmacy Workflow Standards ....102

1. In-Window Processing ....102
2. Fill Station Processing ....111
3. RPh Verification ....112
4. Out-Window Dispensing ....114
5. Partial Filling of Prescriptions ....119
6. Prescribed OTC Dispensing ....120

Section E. Specialized Services ....120

1. Central Fill Pharmacy Services ....120
2. Compliance Packaging ....122
3. Compounding ....124
4. Durable Medical Equipment Prosthetics, Orthotics, and Supplies ("DMEPOS") Expanded Services ....131
5. Long Term Care Facility ("LTCF") Services ....152
6. Mail Order Services ....157
7. Patient Care Services ....159
8. Pharmacy Promotional Programs ....165
9. Prescription Delivery ....166

Chapter V. It's the Law ....167

Section A. Compliance Management and Governance ....167

1. Compliance Framework ....167
2. Communicating Our Standards ....168
3. Monitoring Compliance ....169
4. Reinforcing Compliance ....169

Section B. Conflicts of Interest ....170

1. Conflict of Interest Defined ....170
2. Pharmacy Provider Conflict of Interest Policy ....170
3. Gifts, Favors, Job Opportunities, and Entertainment ....170




Live Healthy. Be You.




Pharmacy



# RETAIL PHARMACY POLICIES AND PROCEDURES


Section C. Fraud, Waste, and Abuse of Government Funds....170

1. Fraud, Waste, and Abuse Defined....171
2. Fraud, Waste, and Abuse Violations....171
3. Reporting Fraud, Waste, and Abuse....174
4. Fraud, Waste, and Abuse Enforcement....174

Section D. HIPAA....174

1. HIPAA Training....174
2. Notice of Privacy Practices ("NPP")....175
3. Uses and Disclosures of PHI....178
4. HIPAA-Granted Patient Rights....185
5. HIPAA Compliance Complaints and Questions....192

Section E. Inspections, Investigations, and Enforcement....193

1. Governmental Oversight Agencies....193
2. Law Enforcement Agencies....194

Section F. Risk Mitigation Program Compliance....195

1. Risk Evaluation and Mitigation Strategy ("REMS") Access Program....195
2. iPLEDGE....195

Chapter VI. State-Specific Policies....196

Section A. Arizona....196

1. Mechanical Counting Devices....196

Section B. California....196

1. California Compounding Procedures....196
2. California Quality Improvement Reviews....208
3. California Theft Diversion or Self-Use of Dangerous Drugs (B&P 4104)....210
4. Translation Services....211

Section C. Florida....211

1. Compounding....211
2. Controlled Substance Diversion....211
3. Florida Continuous Quality Improvement Reviews....211






Jewel Osco Amigos VONS Randalls Albertsons SAFEWAY Tom Thumb PAVILIONS shaw's Albertsons market ACME star market CARRS Market Street United supermarkets Super Saver Haggen UE United Express Lucky

# RETAIL PHARMACY POLICIES AND PROCEDURES

Section D. Illinois ....... 213

1. Controlled Substance Dispensing ....... 213

Section E. Iowa ....... 214

1. Iowa Continuous Quality Improvement Program ....... 214

Section F. Maryland ....... 216

1. Maryland Ongoing Quality Assurance Program ....... 216

Section G. Massachusetts ....... 218

1. Massachusetts Continuous Quality Improvement Reviews ....... 218
2. Controlled Substance Loss Documentation ....... 220

Section H. New Jersey ....... 220

1. Prescription Drug and Chemical Temperature Monitoring ....... 220
2. Fraud, Waste, and Abuse ....... 221

Section I. New Mexico ....... 221

1. Compounding Procedures ....... 221
2. Controlled Substance Dispensing ....... 221
3. Error Prevention and Incident Reporting ....... 222

Section J. New York ....... 222

1. Translation Services ....... 222

Section K. Oregon ....... 223

1. Drug Product and Vaccine Temperature Monitoring ....... 223
2. Drug Utilization Review ....... 223
3. Quality Assurance Plan ....... 224
4. Theft Reporting ....... 224

Section L. Washington ....... 224

1. Compounding Procedures ....... 224
2. Fraud, Waste, and Abuse ....... 225

Chapter VII. Glossary of Terms ....... 226



Live Healthy. Be You.




Pharmacy





- **Share information.** Briefly share information about the company's policies and procedures. Sharing information will help the patient understand what you are authorized to do. Offer alternatives that allow you to stay within the boundaries of the company's policies. If you cannot resolve the problem, refer it to a supervisor or manager.
- **Agree on a solution.** After you and the patient have discussed the problem and alternatives for solving it, agree on a course of action. Whenever possible, attempt to solve the problem at store level (within legal limitations).
- **Follow up.** If the situation requires follow up, be sure to do so. Otherwise, your satisfied patient will, once again, become an angry patient. Before ending the patient interaction, try to say something that makes him/her feel important, valued, and appreciated.
- **Take preventive measures.** Take appropriate steps to ensure that the same or similar problem/incident does not occur again.

ii. <u>Protect Privacy and Reduce Patient Service Disruption</u>

Whenever possible, patient complaints should be handled in an area away from other patients for purposes of privacy and to allow full attention to be paid to resolving the situation. Isolation from observers may also help to keep matters calm and under control. While responding to a complaining patient:

iii. <u>Refer Unresolved Complaints to Management</u>

A higher level of management should be asked to intervene whenever an employee is unable to resolve a patient's complaint.

iv. <u>Grievance Procedures</u>

Customers are also entitled to file a grievance as described in the company's Notice of Nondiscrimination if they believe that we have not provided a required accommodation or have otherwise discriminated against them on the basis of race, color, national origin, age, disability, or gender. Pharmacy employees are required to assist individuals with filing a grievance upon request. Grievances may be submitted by mail to Albertsons Companies, Attn: Chief Compliance Officer, 250 Parkcenter Blvd., Boise, ID 83706; by telephone to 877-276-9637 (toll free); by fax to 208-395-4656; or by email to ethics.compliance@albertsons.com. The Notice of Nondiscrimination must be conspicuously posted at each pharmacy location at all times.

b. <u>Diversion, Abuse, and Misuse of Medications</u>

Federal law assigns pharmacists and prescribers corresponding responsibility to recognize and prevent diversion and abuse of controlled substances. Similarly, the law assigns pharmacists the obligation to exercise professional judgment in filling prescriptions only in situations that a bona fide prescriber-patient relationship exists and to otherwise comply with the law as it applies to each prescription. The company encourages the use of available resources and tools that aid these determinations. Further, the company supports a pharmacist's right to decline to provide any product or service in situations where available resources have been utilized and the pharmacist has formed a professional judgment in good faith that the product or service is not intended to be used for a









legitimate medical purpose. All measures taken to determine the legitimacy of a prescription must be documented and retained.

i. Prescriber DEA Numbers

A prescription for a controlled substance that does not include a valid, active DEA number is not a legally-issued prescription and should not be filled. The company provides various resources and system tools for validating DEA numbers. Failure to use the resources and tools to validate the legal authority of the prescriber and the validity of a prescription, including a failure to ensure that the DEA number in the prescriber profile selected exactly matches the DEA number on the prescription hard copy, may result in corrective action.

ii. Suspected Prescription Fraud or Forgery

Fraudulent and forged prescriptions are, by their very nature, invalid. Examples of methods used to create fraudulent or forged prescriptions include, but are not limited to:

- Alterations to an otherwise valid prescription.
- Prescription pads printed using a legitimate prescriber's name, but with a different telephone number that is answered by an accomplice who verifies the prescription.
- Individuals, posing as a prescriber, call in their own prescriptions and use their own telephone number as the prescriber's office number for verification.
- Prescriptions written on stolen prescription pads.
- Prescriptions written using fictitious patient names and addresses.
- Copying a valid prescription for later duplication.

The following are indicators that a prescription may be forged:

- The prescription looks "too good." The prescriber's handwriting is too legible.
- Quantities, directions, or dosages differ from usual medical usage.
- The prescription does not comply with the acceptable standard abbreviations or appears to be textbook presentations.
- The prescription appears to be photocopied.
- The directions are written in full with no abbreviations.
- The prescription is written in different color inks or written in different handwriting.

The following are indicators that a prescription may not have been issued for a legitimate medical purpose:

- The prescriber writes significantly more prescriptions (or in larger quantities) compared to other practitioners in the area.
- The patient appears to be returning too frequently. A prescription which should last for a month is being refilled on a biweekly, weekly, or even a daily basis.
- The prescriber writes prescriptions for antagonistic drugs, such as depressants and stimulants, at the same time.









- The patient presents prescriptions written in the names of other people.
- A number of people appear simultaneously, or within a short period of time, all bearing similar prescriptions from the same physician.
- People who are not regular patrons or residents of the community show up with prescriptions from the same physician.

If any reasonable suspicion of prescription fraud or forgery exists, the prescription must not be filled until its legitimacy is confirmed. Suspected prescription forgeries must be handled as follows:

- The **actual prescriber must be contacted** and the authenticity of the prescription confirmed directly and personally by the prescriber.
- Prescription forgeries are a crime committed against the prescriber and should be reported to law enforcement by the prescriber upon discovery. In certain circumstances, it may be appropriate or required by law for a pharmacy employee to initiate the law enforcement report. In these circumstances, PPSD should be contacted for guidance prior to making the report. In every instance, pharmacy employees should cooperate with a law enforcement investigation of a prescription forgery.
- Employees must never attempt to detain anyone suspected of passing a fraudulent prescription. If law enforcement intends to detain or arrest an individual suspected of a prescription forgery on store premises, the DPM or another member of senior pharmacy management must be notified.
- Any effort to fraudulently obtain prescription drugs, particularly controlled substances, through use of telephone, forged, or altered prescriptions must be documented in the notes field in the pharmacy system and on the prescription hard copy.
- All information pertaining to a forgery investigation is highly confidential and must not be divulged to anyone other than appropriate authorities, the DPM, and PPSD.
- Any information provided to law enforcement as part of a forgery investigation must be copied or otherwise duplicated and also sent to PPSD within 48 hours of release.

If this protocol does not appear to fit the unique circumstances of a given situation, PPSD must be contacted for guidance before taking further action.

**iii. Non-Prescription Controlled Substance Sales**

When transacting the sale of a controlled substance that does not require a prescription, the pharmacist must know and abide by applicable state law and, in addition, the pharmacist must:

- ✓ Determine if the customer has made any other purchases of controlled substances that exceed state or federal[12] limits in the prior 48 hours.
- ✓ Determine that the purchaser is at least 18 years of age.
- ✓ Record the following in a legible manner in the bound Exempt Narcotic Register:
  - The customer's name and complete address (including the city, state, and zip);

[12] 21 CFR 1306.26(b)














- The product name and quantity; and
- The date and time (including the a.m./p.m. designation) of purchase.

✓ Collect the customer's signature on the log book.
✓ Compare the customer's signature and the address provided against the identification provided.
✓ Also sign the register.

c. <u>Pharmacy System "Notes" (Free Form Text) Fields – Inappropriate Use</u>

The notes and other free form text fields in the pharmacy system must be used only for the purpose of noting health-related information that facilitates the provision of better patient care. Information of a personal or business nature, which does not directly relate to the provision of pharmacy health care services, is inappropriate and must not be included in the patient's record. Examples of inappropriate notes, abbreviations, and comments include:

- Credit or other payment card numbers and related information;
- Derogatory comments about patients or family members;
- Insufficient funds ("NSF") notations;
- Possible walk out ("P.W.O.");
- "Walk patient to front check stand";
- Any reference to ethnicity, religious affiliation, sexual orientation, or physical appearance.

**d. <u>Prescription Billing</u>**

**i. <u>Medicaid Copayments</u>**

Federal law prohibits the denial of service to Medicaid patients based on the patient's representation of an inability to pay a copayment. However an unpaid copayment is considered a debt, and pharmacies may pursue collection of individual and cumulative copayments as an outstanding obligation of that patient until the debt is satisfied.

**ii. <u>Third-Party Plans</u>**

***a) Managing Third-Party Issues***

If an issue with a third-party plan occurs, every effort should be made to resolve the issue promptly. For example, if the patient presents an incorrect card for the plan under which the patient believes he/she has coverage, process an eligibility transaction or call the insurance company for coverage verification. If unable to verify, manage the situation in one of the following ways:

- Dispense the prescription at the full cash price. Let the patient know that if they return with a valid card within the timeframe permitted by their plan for reprocessing of the claim (usually within 10-14 days), the difference between the cash price paid and the copay amount will be refunded.
- Dispense a day's supply of the product to the patient at no charge and prepare the remainder of the prescription for dispensing the following day if the patient returns with a valid card.







# RETAIL PHARMACY POLICIES AND PROCEDURES

*b) Credit Returns*

Prescriptions that are not picked up must be credit returned in the pharmacy system and the product must be returned to stock, following approved procedures, on the 10th day after dispensing.

e. Prescription Returns-Refunds

If, for any reason, a patient cannot use a properly-dispensed prescription drug, the pharmacist should do everything reasonable to rectify the situation to the patient's satisfaction, including refunding money, as appropriate. **This does not, however, include physically accepting the drug(s) back into our pharmacy.** Except as noted below, at no time should any pharmacy employee accept patient returns of previously dispensed prescription medication. The customer must keep the product, but may be offered recommendations for proper disposal or destruction, if known. It should be politely explained that company policy and state and federal laws prohibit the return of properly dispensed prescription medication.

**i. Refunds**

Refunds may be issued in the form of coupons, cash, or credit on future prescriptions. It should be recorded on the hard copy of the prescription and in the computer record that a refund was paid; the form of refund (cash, credit, or coupon); the reason for the refund (allergy, medication, ineffective, etc.); the date of refund; and the name of the employee handling the refund transaction. Only a PIC or pharmacist-on-duty may approve a refund. Cash register override keys, manager codes, and manager passwords must be in the custody of the PIC or pharmacist-on-duty at all times and used only under his or her direct supervision and approval. Reserve cash register override keys, manager codes, or manager passwords must be securely locked in the narcotic cabinet or safe for use only by undistributed or float pharmacists. Technicians, technicians-in-training, and pharmacy clerks are not authorized to possess cash register override keys, manager codes, or manager passwords or approve refunds.

**ii. Exceptions**

In situations where a prescription was dispensed incorrectly or is the subject of a recall, the prescription should be accepted for return, and PPSD should be contacted and will provide instruction on the disposition of that medication (if not provided in a Drug Recall Bulletin or official notice).

The only other approved exceptions to this policy are when a prescription written for a generic is returned for a branded drug or vice versa or when one drug is returned and another is prescribed in its place. Allowing the patient to retain the drug in this circumstance would provide the patient twice the amount of the original order. This is not intended by this policy and should not be allowed to occur. **Therefore, whenever a drug is returned and a therapeutic substitute is requested, an exchange must occur.** Documentation of the exchange should be recorded on the back of the voided prescription, including the quantity returned, any refund required, the reason for the exchange, and the date requested.

In these instances, **THE RETURNED PRODUCT MUST NOT BE REUSED**, and under no circumstances should these products be placed back into pharmacy stock. The product must be segregated from normal inventory and managed appropriately as hazardous waste. (*See* the Pharmacy Hazardous Waste Management – Operational





Implementation Guide on the Pharmacy Compliance portal/Daily Dose/Uconnect.) It should be explained that pharmacies are prohibited by law from reusing returned product so the patient understands that he/she will never receive medication that has been previously dispensed when having a prescription filled by a company pharmacy.

## 4. Prescription Accuracy and Appropriate Dispensing Standards

Pharmacists have a professional duty to ensure that prescriptions are filled accurately and dispensed appropriately in compliance with all applicable laws. The company recommends operational workflow processes and provides technological tools to assist pharmacists in fulfilling this duty including, but not limited to, procedures and tools for prescriber verification, drug utilization review, electronic patient record ("EPR"), scan verify, Out-Window scanning, and biometric verification, depending on which pharmacy system is being utilized. The company expects all pharmacy employees to be knowledgeable about, and to use appropriately, the workflow processes and technological tools provided. However, following recommended procedures or reliance on technological tools or ancillary personnel does not displace a pharmacist's ultimate professional responsibility for ensuring that prescriptions are filled and dispensed accurately and in compliance with the law.

### a. Prescription Accuracy

Filling prescriptions accurately and dispensing them appropriately are highly essential elements of quality pharmacy practice. The company expects that the standards for prescription accuracy and appropriate dispensing outlined herein will be met consistently for all prescriptions, including those for compounded medications.

An accurate prescription is one that is prepared and dispensed exactly as ordered by the prescriber or with variations permitted by state law[13] and consists of the following:

- ✓ Correct patient;
- ✓ Correct prescriber;
- ✓ Correct strength and quantity;
- ✓ Correct medication and formulation; and
- ✓ Correct directions, as ordered.

### b. Addressing Patient Accuracy Concerns

Situations in which prescription accuracy is questioned require a pharmacist's full attention. Whether or not a prescription error is confirmed, an attitude must be conveyed that illustrates that the health and safety of the patient is the pharmacist's first priority.

[13] Product substitutions and dispensed quantity variations are permitted when in conformance with state law.













c. Incident Management

i. What is a Reportable Incident?

*a) Prescription Incidents*

A dispensed prescription that is not in conformance with the prescription accuracy standards in any manner is considered a reportable incident, regardless of whether harm or damage will likely result or whether or not the medication has been ingested or used. Similarly, an inappropriately dispensed prescription is also a reportable incident if an individual was given the medication or PHI of another individual in error or if harm is otherwise likely to result from the dispensing (including therapeutic errors – e.g., overridden allergy indication, drug interaction, etc.). An incorrectly filled prescription that is discovered and corrected prior to dispensing is not considered a reportable incident.

***b) Other Incidents***

Other examples of less typical reportable incidents include, but are not limited to:

- A DUR-related issue.
- An exposure (e.g., needlestick) incident.
- An allergic or other adverse drug or vaccine reaction.
- Any threat to employee or patient personal safety.
- Customer service complaints in which legal action is threatened, compensation is requested, or in which a HIPAA violation is claimed.

**ii. Mitigation**

Appropriate steps must be taken to mitigate any actual or potential harm immediately upon the discovery of an incident which may include, but are not limited to, those described herein.

***a) Prescription Misfill or Wrong Patient Dispensing***

Immediate action must be taken to protect against any threat to the health or safety of the person in possession of an incorrectly filled or dispensed prescription or to whom an incorrect medication or vaccine was administered, which may include some or all of the following:

- Technicians or other ancillary personnel must immediately notify a pharmacist of a discovered error.
- The prescriber must be notified and any instructions provided must be followed. If the prescriber is unavailable and ingestion or use has occurred, the patient must be directed to seek emergency medical treatment.
- Unless already aware, the person or caregiver in possession of an incorrectly filled or dispensed prescription must be promptly contacted by a pharmacist.
- A pharmacist must explain to the patient or caregiver the actions necessary to correct the problem and minimize any actual or potential harm.









*b) PHI Breach*

Whenever possible, the person who receives PHI in error, whether in relation to a misfilled prescription or otherwise, must be contacted and every effort must be made to obtain and document satisfactory assurance (written and/or signed by the recipient of the PHI, if possible) of one or more of the following:

- That the information will not be further used or disclosed.
- That the information was not retained (was returned to or picked up by the pharmacy and not copied).
- That the information was destroyed (and no copies were retained).

If reasonable under the circumstances, an offer should be made to have the PHI retrieved by a pharmacy employee. All mitigation efforts must be documented on the *HIPAA – PHI Breach Reporting and Assessment Form*, which must be completed as directed and submitted to PPSD as soon as possible. (*See also*, "PHI Breach Reporting.")

*c) Exposure Incident*

For all needlestick and other exposure incidents, the *Exposure Incident Procedures* on the pharmacy portal/Daily Dose/Uconnect must be followed.

**iii. Correcting the Transaction**

All interactions with individuals relating to incidents must be handled professionally, courteously, and with appropriate regard for patient well-being and inconvenience. In most instances, inaccurately prepared prescriptions should be reversed in the system, reprocessed and filled correctly, and replaced without charge. If appropriate, offer to have the corrected prescription delivered to the patient's home. Store credits or adjustments should be transacted in accordance with the location's refund policies.

Other claims asserted by a patient or family member related to an inappropriately dispensed prescription must be referred to the Risk Management Department for handling. Pharmacy employees are prohibited from handling these types of claims or engaging under any circumstances in discussions relating to monetary compensation or any related claim settlements that go beyond explaining the location's refund policy. Statements that implicate one or more individuals or that assume legal or financial obligation on behalf of the company must be avoided.

If possible, the incorrectly dispensed product or PHI must be retrieved. Once retrieved, product must be:

- Counted or measured, and the remaining quantity must be documented,
- Placed in a zipper-lock plastic bag,
- Labeled with the date and patient's last name,
- Preserved in a designated area for at least 90 days unless otherwise instructed by PPSD or Risk Management, and
- Processed as hazardous waste, if a non-controlled substance, or if a controlled substance, processed along with other returns after obtaining PPSD or Risk Management approval.







# RETAIL PHARMACY POLICIES AND PROCEDURES

If not possible to retrieve the product or PHI, a pharmacist must attempt to obtain a satisfactory assurance from the patient or caregiver that the product or PHI has been destroyed and will not be inappropriately used. This assurance must be appropriately documented on the *HIPAA – PHI Breach Reporting and Assessment Form*.

iv. Incident Reporting

*a) Preliminary Reporting*

PPSD and the DPM should be contacted at the earliest opportunity, after any required mitigation steps have been taken, and provided a preliminary report of all known information.

*b) Risk Management Reporting*

All conversations, facts, and other information pertaining to the incident must be documented, gathered, and verified to enable an accurate and thorough completion of the required risk management report. All incidents must be reported within 48 hours of discovery, whether or not the investigation is completed. **Any incident resulting in death must be reported as soon as possible and always within 24 hours.**

*i) Electronic Reporting (Preferred)*

Reporting should be completed via the Prescription Error/Risk Management Incident Reporting System which may be accessed via the "Pharmacy Links" on the *Pharmacy Compliance* portal (or by telephone as indicated below, where permitted), via the Incident Reporting form found on SourceRx, or via the Incident Reporting form found on Uconnect, as applicable to your location.

*ii) Telephone Reporting*

To report by telephone, complete and print a Prescription Error/*Risk Management Incident Reporting Worksheet*. Call the Risk Management Call Center to submit the report. (Note: This option is not available for pharmacies on the Safeway network.)

*c) Report Retention*

If your state requires that you maintain the incident report on file for quality assurance or other purposes, print and retain a completed copy as required. Otherwise, the reporting worksheet should be shredded or electronically deleted after successfully submitting the report and should not be retained on file.

*d) Evidence Preservation*

Retrieved product and other documentary evidence or testimony must be preserved as directed herein and must not be provided or surrendered to anyone outside of the company without first obtaining the approval of PPSD, Risk Management, or the Legal Department.











d. Adverse Event Reporting

i. OTC Products

The law requires distributors of dietary supplements or monographed OTC drugs to report any adverse or serious adverse events linked to their products. Patient reports of adverse events related to OTC products must be reported within two (2) business days using the Rx Customer Regulatory Issue form.

ii. Prescription Drug Products

The company similarly has obligation to appropriately report adverse events resulting from use of prescription drugs and injectable medications. Any observed or patient-reported adverse events related to these products must be reported in the same manner as a prescription incident.

iii. Vaccine Allergic or Other Adverse Reactions

All allergic or other adverse reactions to vaccines must be reported and otherwise handled as indicated in the *Immunization Manual* on the pharmacy portal/Daily Dose/Uconnect, including reporting to VAERS when required.

e. Quality Assurance/Improvement Reviews

As part of the company's comprehensive Pharmacy Quality Assurance Program, a quality assurance review must be performed for every prescription incident. This review must include a root cause analysis that considers both the cause and also contributing factors such as system or process failures. Many states mandate completion of a quality assurance or quality improvement review in a specified manner.[14] Other states require review, but allow some discretion.

f. Appropriate Dispensing

An appropriately dispensed prescription is one which:

- The pharmacist believes in good faith was issued for a legitimate medical purpose;
- Resulted from a bona-fide prescriber-patient relationship;
- Satisfactorily passed a comprehensive drug utilization review by a pharmacist;
- Counseling was offered and, unless refused, provided effectively by a pharmacist;
- The prescription was accurately and responsibly billed; and
- Was dispensed to the correct patient or an authorized patient representative along with any required paper documents that correspond to that patient or that prescription.

i. Identifying Red Flags

In determining whether or not a prescription for a controlled substance is appropriate for dispensing, the following red flags must be considered individually and in any combination and in consideration of the overall facts and circumstances.

- The patient is aged 16 to 45.

[14] *See* State Addendum for CA, FL, IA, MD, MA, & OR.









- The controlled substance is at high risk for diversion and/or abuse.
- The patient asks for drugs using slang or street terms.
- The patient pays cash or uses a discount card.
- The patient has reported lost or stolen medication more than once in the past year.
- The patient has had two or more prescribers for controlled substances in the past six (6) months.
- The prescriber's practice is out of state.
- The patient has presented more than two (2) requests for early refills in the past six (6) months.
- The patient is new to the pharmacy.
- The prescription is for an opioid, benzodiazepine, muscle relaxant combination.
- The patient has a double count or cautionary note in the patient profile.
- The patient is unwilling to accept a generic (or specifies what manufacturer he/she wants).
- The prescriber's DEA registration has expired or been revoked.
- Multiple patients are presenting, or have presented, prescriptions for the same drugs in the same quantities and from the same prescriber without any kind of variability or customization for the differing patients that indicates that the prescriber may be issuing prescriptions in a production line manner.
- The prescription is for a dosage above or on the high end of the therapeutic guidelines for that controlled substance.
- The nature of the dosage, instructions, or other aspects of the prescription are unusual or not otherwise consistent with legitimate medical use.
- Multiple patients using the same home address present prescriptions for the same or similar drugs on the same day.

**ii. <u>Responding to Red Flags</u>**

All pharmacists must register or otherwise be approved to access the prescription drug monitoring program (PDMP) for the state or states in which he/she is dispensing prescriptions. When red flags are present or the totality of circumstances raise concerns about a risk of abuse or diversion, the pharmacist must seek additional information to verify the legitimacy of the prescription and exercise professional judgment in determining whether the prescription may be lawfully dispensed. For controlled substance prescriptions, the pharmacist must check the PDMP when circumstances exist that cause the pharmacist to question the validity or appropriateness of the prescription. Additional steps a pharmacist may consider include, but are not limited to:

- Talk with the patient (or his/her representative).
- Talk with the prescriber (or his/her agent).
- Check the patient's dispensing history.
- Verify the prescriber's DEA registration, office address, and telephone number.

All inquiries that result in the pharmacist's decision to fill a prescription, despite the existence of red flags, must be documented.









