# EXHIBIT 31

| | |
|---|---|
| **From:** | Scott.Jardine |
| **Sent:** | Tuesday, February 25, 2014 6:04 PM |
| **To:** | Tim Mills 8720 |
| **Subject:** | RE: Pharmacy suspicious quantities |
| **Follow Up Flag:** | Follow up |

Tomorrow I will reach out to him

---

**From:** Tim Mills 8720
**Sent:** Tuesday, February 25, 2014 5:00 PM
**To:** Scott.Jardine
**Subject:** RE: Pharmacy suspicious quantities

Not yet.  I have added the outs column to the report.  If a store is one the exception report it will list the number of orders that they tried to order an item but we were out of stock.  This was a suggestion from the compliance group last week.  May help in understanding why a store is a little heavier on their order.

Thanks,
Tim

---

**From:** Scott.Jardine
**Sent:** Tuesday, February 25, 2014 2:47 PM
**To:** Tim Mills 8720
**Subject:** FW: Pharmacy suspicious quantities

Did Jack discuss this with you?

---

**From:** Scott.Jardine
**Sent:** Sunday, February 23, 2014 10:19 AM
**To:** Jack Gagnon; Berggren, Lynette
**Cc:** Brian D. Rood; Rick Bunnell
**Subject:** Pharmacy suspicious quantities

Jack
I had a productive session with Lynette on Friday afternoon and gave Rick and Brian an update on this also. Observations are that the report is way too big, and not practical to review. It needs to be "right sized" to provide meaningful information that can be acted on.

Here is what I think we need to do as a next steps process:
1. Create a new report that is meaningful and meets the test of compliance with DEA regulations.
2. The reports should be sorted by control code with the schedule 2's first, then 3's etc.
3. The no set average per store should be modified and shortened to fewer orders to minimize how many stores hit this category. Would suggest 4, but we will need to test this and see what the right number is to support a quality result.
4. The rounding function appears to be problematic. We have a fractional average order quantity due to the fact we divide the bottles orders by a fixed amount of deliveries. We do not ship in partial bottles, so my read is we should round up to full bottle quantities.
5. The 20% guideline seems to be an industry norm, but is this a correct approach to all of the drugs that are required to be looked at. Could we have a higher guideline than 20% on the higher classification drugs? If this is reasonable, it would again cause the report to be smaller, and easier to take action on the outstanding items.

EXHIBIT
MILLS EX. 2

CONFIDENTIAL                                                                                                              ALB-NM00014412

6. Should quantity of pills in a bottle be a part of this? Example, if someone is 5 bottles over on a 100 count, versus 5 bottles over on a 500 count, it seems there would be more of a problem with the larger quantity bottles.
7. Do we focus on bottles over or on percentage with regards to follow up , and what will be the threshold for when we believe a call needs to be made. This will need to be reduced to writing, and whatever we decide is correct, will need to be addressed every time, with necessary documentation kept on file to support that we did in fact address the potential problem with the right person at the store, or retail management.
8. How do we take into account areas where we are seeing significant sales increases. For example, you have to believe the pharmacies at Jewel are seeing the same type of increases that the stores are. How can this be addressed so that the stores orders do not hit the suspicious quantity list just because they are naturally doing more business?
9. Stores that show up as "no set average" will still need to be included in the suspicious order quantity info and acted upon if the order looks unusual.
10. Processes that are compliant with DEA regulations will need to be put in place for order quantities that are determined to be "suspicious". Jim indicated on the call that we had that you have the authority to hold or cut a shipment based on a store not being available to be contacted timely to comment on a suspicious order. How do you do this and remain compliant? Should a stores entire order be held and shipped on the next available air shipment once the suspicious issue is addressed?
11. Stores that are not ordering weekly due to the challenges of the C-222 system need to be addressed. If they are only ordering every four weeks because the process is a pain to work through, this creates problems with the methodology of the suspicious order identification process. A solution for this also will need to be developed.
12. I'm sure you have some other concerns that are not addressed here, so they also need to be added to the evaluation.

We need to get this modified and put into place quickly. I believe Lynette and legal, as well as Jim the retail division leadership team need to be involved in the quantity to call on, and potentially hold orders on decision. You will need partners to support you on this.

Also, as a side note, Lynette told me there is a new drug that is going to be released that will be a substitute for Hydrocodone. It is going to be released as a schedule 3, so she suspects that it will become a replacement for the schedule 2 hydrocodone products. This will need to be included in the thoughts we have on control, and also when we address storage requirement based on the direction we heard regarding increasing your inventory levels. She also indicated that she believes this drug will eventually be reclassified as a schedule 2 once the movement on it increases.

I am available to help as needed if you would like assistance in getting through challenges or roadblocks we run in to. Would suggest we save one of the daily files to be the test file, and as we make modifications we can then chart the impact against the original file and gauge the impact.

Scott

CONFIDENTIAL

ALB-NM00014413