# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| In re: National Prescription Opiate Litigation | Case No. 1:17-md-2804 |
| | MDL Docket No. 2804 |
| This Document Relates to: *All Third Party Payor Actions* | Judge Dan Aaron Polster |

## OBJECTION TO THIRD PARTY PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

BACKGROUND..................................................................................................................3

ARGUMENT.......................................................................................................................6

I.      United has standing to object to the Settlement .......................................................6

II.     The Settlement is unfair, unreasonable, and inadequate ......................................8

        A.     The newly proposed Settlement Class is not ascertainable........................9

        B.     The representative parties failed to protect the interests of absent class members and agreed to an inequitable settlement....................................12

        C.     Class Counsel violated their fiduciary duties to the class ......................15

               1.     The circumstances of the settlement negotiations are suspicious and indicative of collusion.............................................................15

               2.     Conflicts of interest have precluded adequate representation......17

        D.     The Settlement does not provide adequate relief to the class.................18

CONCLUSION..................................................................................................................21

i

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................................................16

*American Federation of State, County and Municipal Employees District Council*
  *37 Health & Security Plan v. Purdue Pharma L.P. et al.,*
  Case No. 18-op-45013 (N.D. Ohio) .........................................................................8

*Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.,*
  238 F.R.D. 679, 689-91 (S.D. Fla. 2006), aff'd sub nom. *Boca Raton*
  *Community Hosp., Inc. v Tenet Health Care Corp.,* 582 F3d 1227 (11th Cir.
  2009) .......................................................................................................................10

*Choquette v. City of New York,*
  839 F. Supp. 2d 692 (S.D.N.Y. 2012)........................................................................8

*City of Amsterdam v. Purdue Pharma, L.P.,*
  Case No. 1:19-op-46162-DAP, ECF No. 103 (N.D. Ohio) .....................................17

*City of Auburn v. Purdue Pharma, L.P.,*
  Case No. 1:19-op-45843-DAP, ECF No. 85 (N.D. Ohio) .......................................17

*City of Ogdensburg v. Purdue Pharma, L.P,*
  Case No. 1:19-op-45852-DAP, ECF No. 115) (N.D. Ohio) ....................................17

*Daigle v. Shell Oil Co.,*
  133 F.R.D. 600 (D. Colo. 1990) ..............................................................................10

*DeFries v. Union Pac. R.R. Co.,*
  104 F.4th 1091 (9th Cir. 2024)..................................................................................7

*Duffin v. Exelon Corp.,*
  No. CIV A 06 C 1382, 2007 WL 845336 (N.D. Ill. Mar. 19, 2007) ......................10

*Elsea v. Jackson County,*
  No. 10-0620-CV-W-ODS, 2010 WL 4386538 (W.D. Mo. Oct. 28, 2010),
  *abrogated on other grounds by Hood v. Gilster-Mary Lee Corp.,* 785 F.3d 263
  (8th Cir. 2015)..........................................................................................................10

*Gbarbe v. Chevron Corp.,*
  2017 WL 956628 (N.D. Cal. Mar. 13, 2017)...........................................................10

*Haralson v. U.S. Aviation Servs. Corp.*,
    383 F. Supp. 3d 959 (N.D. Cal. 2019) ................................................................19

*In re Drymax Pampers Litig.*,
    724 F.3d 713 (6th Cir. 2013) ...................................................................12, 15, 16

*In re Global Crossing Securities and Erisa Litigation*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ..........................................................................18

*In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..................................................................................15

*In re Mallinckrodt PLC*,
    Case No. 20-12522 (Bankr. D. Del. 2022) ............................................................5

*In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*,
    No. 21-md-02996-CRB (Dec 6, 2021 N.D. Cal.), ECF. No. 299 ..............5, 6, 21

*In re Nat'l Prescription Opiate Litig.*,
    976 F.3d 664 (6th Cir. 2020) ..........................................................................2, 18

*In re New Jersey Tax Sales Certificates Antitrust Litig.*,
    750 F. App'x 73 (3d Cir. 2018) ..............................................................................9

*In re Polyurethane Foam Antitrust Litig.*,
    168 F. Supp. 3d 985 (N.D. Ohio 2016) ................................................................19

*In re Traffic Executive Ass'n − E. Railroads*,
    627 F.2d 631 (2d Cir. 1980) ................................................................................18

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen.
    Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .................................................................................9

*Karth v. Keryx Biopharmaceuticals, Inc.*,
    334 F.R.D. 7 (D. Mass. 2019) ...............................................................................9

*Kemblesville HHMO Ctr., LLC v. Landhope Realty Co.*,
    Civ. A. No. 08-2405, 2011 WL 3240779 (E.D. Pa. July 28, 2011) .....................10

*Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma, LP et
    al.*,
    Case No. 18-op-45001 (N.D. Ohio) ......................................................................8

*Local No. 25 Sheet Metal Workers Health & Welfare Fund v. Purdue Pharma, LP et al.*,
    Case No. 18-op-45002 (N.D. Ohio) .......................................................................8

*Lyngaas v. Curaden A.G.*,
    2020 WL 917004 (E.D. Mich. 2020) .....................................................................9

*Martin v. Cargill, Inc.*,
    295 F.R.D. 380, 86 Fed. R. Serv. 3d 1593 (D. Minn. 2013).................................19

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ...........................................................................15

*MSPA Claims 1, LLC et al v. Purdue Pharma L.P. et al.*,
    Case No. 18-op-45057 (N.D. Ohio) .......................................................................8

*Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*,
    880 F. Supp. 292 (M.D. Pa. 1995) .......................................................................14

*Rahman v. Vilsack*,
    673 F. Supp. 2d 15 (D.D.C. 2009) .........................................................................6

*Rutherford v. City of Cleveland*,
    137 F.3d 905, 909 (6th Cir. 1998) .......................................................................17

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...............................................................................15

*Steimel v. Wernert*,
    823 F.3d 902 (7th Cir. 2016) .................................................................................9

*United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania v. Purdue Pharma, LP et al.*,
    Case No. 17-op-45177 (N.D. Ohio) .......................................................................8

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) .................................................................................9

*Vassalle v. Midland Funding LLC*,
    708 F.3d 747 (6th Cir. 2013) .................................................................................9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir.1982) ......................................................................................9

*Young v. Nationwide Mut. Ins. Co.*,
    693 F.3d 532 (6th Cir. 2012) ............................................................................9, 10

*Zink v. First Niagara Bank, N.A.*,
   155 F. Supp. 3d 297 (W.D.N.Y. 2016) ................................................................................18

**Rules**

Fed. R. Civ. P.
   23 ............................................................................................................................6, 8, 12
   23(a)(4) ...........................................................................................................................12
   23(b)(3) .............................................................................................................................9
   23(e) .............................................................................................................................9, 16
   23(e)(2)(D) ..........................................................................................................13, 14, 16

**Other Authorities**

Wright & Miller, 7A Federal Practice & Procedure (4th ed.) .........................................17, 18

Newberg and Rubenstein on Class Actions (6th ed.) ......................................................14, 15

# INTRODUCTION

United HealthCare Services, Inc. ("United") files this objection to the Third Party Payors' Class Action Settlement with McKesson Corp.; Cencora, Inc., and Cardinal Health, Inc. (collectively the "Distributor Defendants" or "Defendants").[1] United is an absent class member in the third-party payor ("TPP") class actions brought against opioid manufacturers and distributors and consolidated in this District beginning in 2017, and is a member of the Settlement Class.[2]

United is the largest TPP in the country and, like many insurers, operates multiple lines of business. Those include the sponsorship of Medicare Part C and Part D plans, the administration of managed Medicaid plans, the administration of employer self-funded commercial plans, and the offering of fully insured commercial healthcare plans. The settlement reached between TPP Class Counsel and the Distributor Defendants (the "TPP Settlement" or "Settlement") inequitably targets one of United's lines of business—the fully insured commercial business—and excludes it from the Settlement, along with the fully insured commercial plans of Aetna, Inc.; CIGNA; Elevance Health; and Humana, Inc. (collectively the "Other Excluded Fully Insured Commercial Health Plans"). Collectively, United's fully insured line of business and that of the Other Excluded Fully Insured Health Plans represents approximately 7% of the overall TPP healthcare market, and thus the total class as originally pled.[3]

United and the Other Excluded Fully Insured Commercial Health Plans (and the tens of thousands of self-funded health plans that they administer) had

---

[1] United objects to the Settlement and its Plan of Allocation, and its objections apply to the entire Class.

[2] *See* Exs. A, B; *see also* Ex. C, Declaration of Alan D. Halperin ("Halperin Decl.") at ¶¶ 4-10; see also *Infra* Argument Section I regarding United's standing to object to the Settlement.

[3] *See* Ex. D, Declaration of Clarence Carlton King ("King Decl.") at ¶ 15.

no opportunity until now to provide input or voice concerns regarding the Settlement. Class Counsel and the Distributor Defendants excluded counsel for United and the Other Excluded Fully Insured Commercial Health Plans from settlement negotiations, and this Court preliminarily approved the Settlement the very next business day after Class Counsel filed their preliminary approval papers, affording no chance for briefing or argument. This is troubling because, as the Sixth Circuit has already expressed in connection with this very MDL, settlement participants must have the most information available to them about a potential recovery before being required to participate. *See In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 675 (6th Cir. 2020) ("[T]he district court's approach would do the opposite of increasing individual control and involvement by requiring class action participants to commit to the negotiation class without knowing the issue parameters or the amount or prospect of any potential recovery.")

United feels compelled to file this objection because the Settlement suffers from significant deficiencies. In addition to the fact that it treats United and the Other Excluded Fully Insured Commercial Health Plans inequitably relative to other class members by arbitrarily excluding their (and only their) fully insured commercial health plans from the Settlement, the Settlement provides woefully inadequate relief to the Class. TPPs suffered unprecedented damages because of the opioid epidemic.[4] According to Class Counsel's own expert, Dr. Rosenthal,

---

[4] *See* Davenport, Stoddard, Alexandra Weaver, and Matt Caverly. "Economic Impact of Non-Medical Opioid Use in the United States, Annual Estimates and Projections for 2015 through 2019." Report prepared for the Society of Actuaries (October 2019) at 4, *available at* https://www.soa.org/globalassets/assets/files/resources/research-report/2019/econ-impact-non-medical-opioid-use.pdf ("Nearly one-third ($205 billion) of the estimated economic burden of the opioid crisis is attributable to excess health care spending for individuals with OUD, infants born with neonatal abstinence syndrome (NAS) or neonatal opioid withdrawal syndrome (NOWS), and for family members of those with diagnosed OUD."

the estimated medical cost to a TPP for treating opioid use disorder ("OUD") is "approximately $19,118" per patient for one year.[5] This does not include the costs for prescription drugs, which Dr. Rosenthal separately tabulated.[6] In 2016 alone, approximately 2.1 million people were diagnosed with OUD.[7] Taking the Settlement amount into account, and deducting the $60 million in fees with which Class Counsel seek to abscond, the remaining settlement funds would merely permit TPPs to cover the medical costs associated with 12,553 members and for only a single year. In other words, the Settlement would only cover 0.5% of the costs TPPs incur in just one year to treat individuals with OUD, and it would do nothing to compensate TPPs for the costs incurred during the other 27 years of the class period. And, not incidentally, there can be no serious question as to whether this Settlement will help abate the opioid crisis – it will not.

For all the reasons set forth herein, United respectfully urges the Court to deny Plaintiffs' Motion for Final Approval of the Settlement.

## BACKGROUND

Non-governmental health plans provide medical coverage to approximately 85% of the insured U.S. populace.[8] That populace includes

---

[5] ECF 5614-7, Rosenthal Report at 9.

[6] *Id.*

[7] Substance Abuse and Mental Health Services Administration, U.S. Department of Health and Human Services, "Key Substance Use and Mental Health Indicators in the United States: Results from the 2016 National Survey on Drug Use and Health" available at https://www.samhsa.gov/data/sites/default/files/NSDUH-FFR1-2016/NSDUH-FFR1-2016.htm#:~:text=In%202016%2C%20approximately%2020.1%20million,facility%20in%20the%20past%20year.

[8] *See* Health Insurance Coverage in the United States: 2022, United States Census Bureau, (available online at https://www.census.gov/library/publications/2023/demo/p60-281.html) (stating that employer-based, direct purchase, and ACA marketplace insurance provides coverage to 62% of the US population, while Medicare and Medicaid cover an additional 36%; Medicare Advantage in 2024: Enrollment Update and Key Trends, M. Fried, et al., (available online at https://www.kff.org/medicare/issue-brief/medicare-advantage-in-2024-enrollment-update-and-key-trends/) (stating that in 2024, 54% of Medicare recipients received coverage through private Medicare Advantage plans); A Closer Look at the Five Largest Publicly Traded

participants in the individual private insurance market, as well as members of Federal Employee Health Benefit ("FEHBA") plans, Medicare Part C and D plans, and managed Medicaid plans. It also includes participants in group employer plans, which together provide healthcare coverage for more than half of those with private insurance. Group employer plans are in turn categorized by funding type: either fully insured or self-insured (also referred to as self-funded).[9] Fully insured plans pay premiums to health insurers like United, which in turn "bears the risk" of any cost associated with treating a member of the employer group.[10] Self-insured plans, by contrast, bear the risk themselves by paying wholly or partially out-of-pocket for any expenses associated with their members' medical care.[11] Self-funded plans pay an insurer a fee to help administer their plan under an "administrative-services-only" contract. When serving in that capacity, the health insurer is a third-party administrator or "TPA," and the self-insured plan is an "ASO." FEHBA plans, Medicare Advantage plans, managed Medicaid plans, private health insurers, and the ASOs they administer, are all TPPs, both as a general matter and under the class definition in the Settlement.

The role of a health insurer in the day-to-day administration of plan benefits is largely the same across group health plans, regardless of funding type.

---

Companies Operating Medicaid Managed Care Plans, E. Hinton and J. Raphael (available online at https://www.kff.org/medicaid/issue-brief/a-closer-look-at-the-five-largest-publicly-traded-companies-operating-medicaid-managed-care-plans/#:~:text=The%20latest%20national%20Medicaid%20managed,or%20more%20than%20%20%24376%20billion) (stating that in 2023, 72% of Medicaid recipients receive coverage through private managed Medicaid plans)

[9] *See* Report to Congress: Annual Report on Self-Insured Group Health Plans, M. Walsh, Secretary of Labor, March 2023 at 3 (Available online at https://www.dol.gov/sites/dolgov/files/EBSA/researchers/statistics/retirement-bulletins/annual-report-on-self-insured-group-health-plans-2023.pdf).

[10] *Id.*

[11] *Id.*

Along with ministerial functions such as assistance with claims adjudication and payment, access to preferred provider networks, and utilization review, that role can also extend to evaluating affirmative recovery opportunities and asserting claims on behalf of the individual ASOs. Here, it is expected that a large portion of class members will be self-funded ASOs managed by insurers like the United and the Other Excluded Fully Insured Commercial Health Plans in their capacity as TPAs. In instances like these, TPAs frequently submit aggregated claims on behalf of their ASOs. A recent example specific to the opioid crisis is the Mallinckrodt bankruptcy.[12] In *Mallinckrodt*, United and other TPAs collectively filed claims to the opioid TPP Trust on behalf of approximately 79,000 individual ASOs.[13]

United and the Other Excluded Fully Insured Commercial Health Plans were members of the TPP class as originally pled in these cases.[14] In fact, consistent with their previous experience with Class Counsel in settling the TPP class claims in the *McKinsey* opioid case,[15] United and the Other Excluded Fully Insured Commercial Health Plans had every reason to expect that Class Counsel in this action would protect their interests as absent class members.[16] *McKinsey* involved the same Class Counsel, similar allegations of misconduct related to the

---

[12] *In re Mallinckrodt PLC*, Case No. 20-12522 (Bankr. D. Del. 2022).

[13] *See* Halperin Decl. at ¶ 8.

[14] *See, e.g., American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan* Complaint at Para. 63 (defining the class, without exclusions, as "[a]ll health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third-party payors and any other health benefit providers, in the United States of America and its territories.")

[15] *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation*, No. 21-md-02996-CRB (Dec 6, 2021 N.D. Cal.), ECF. No. 299 ¶ 539 ("The class is defined as: All health insurance companies, health maintenance organizations, self-funded health and welfare benefit plans, third-party payors and other health benefit providers, in the United States of America and its territories, who have since June 1, 2009 (a) paid or incurred costs for prescription Opioid drugs…")

[16] *See McKinsey*, No. 21-md-02996-CRB, ECF. No. 299 (Dec 6, 2021 N.D. Cal.) at ¶ 539.

opioid crisis, and resulted in a settlement that did not exclude any TPPs or discrete business lines thereof.[17] Class Counsel's decision to preclude United, Aetna, CIGNA, Elevance, and Humana from recovering for the damages incurred by their fully insured commercial plans in this case defies understanding. Class Counsel purported to represent these five insurers for more than seven years. Then, at the eleventh hour, Class Counsel sold out these five unnamed class members' interests—and Rule 23—for the benefit of themselves, Defendants, and other class members.

## ARGUMENT

### I.  United has standing to object to the Settlement

United has standing to object to this Settlement.

First, the Medicare Parts C and D plans and Medicaid plans offered by United are included in the Settlement class definition. The class definition explicitly allows claims for "(c) managed Medicaid plans, [and] (d) plans operating under Medicare Part C and/or D."[18] United operates these types of plans for which it is at-risk and, under the class definition, is included in the Settlement.[19]

Second, even assuming for the sake of argument that United were entirely excluded from the Settlement Class, United would still have standing to object. Courts allow non-class-members to object where a proposed settlement threatens them with plain legal prejudice, such as "when the settlement strips the party of a legal claim or cause of action." *Rahman v. Vilsack*, 673 F. Supp. 2d 15 (D.D.C. 2009). This is in line with the primary purpose of the class action mechanism: to enable class members to rely on class counsel and the district court to represent

---

[17] *See id* at ECF No. 706-2 at 16.
[18] ECF No. 5614-2 at 10.
[19] King Decl. at ¶ 3.

their interests. *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091 (9th Cir. 2024).

United's fully insured commercial plans paid for "(i) opioid prescription drugs manufactured, marketed, sold, distributed, or dispensed by any of the Defendants and/or Opioid Supply Chain Members for purposes other than resale, and/or (ii) paid or incurred costs for treatment related to the misuse, addiction, and/or overdose of opioid drugs, on behalf of individual beneficiaries, insureds, and/or members, during the time period from January 1, 1996 to the date of entry of the Preliminary Approval Order."[20] United is therefore prejudiced because, but for the Settlement's arbitrary exclusion, it would otherwise be eligible to participate in the Settlement for its fully insured commercial business and receive a portion of the settlement funds, as it has done in dozens of other pharmaceutical settlements, including opioids matters. United, along with the Other Excluded Fully Insured Health Plans, are the only TPPs who sponsor Medicare plans and offer managed Medicaid plans who are prohibited from additionally recovering on behalf of their fully insured commercial business.

The exclusion will result in other prejudice to United. The opioids litigation is a unique and sprawling multi-district litigation that encompasses multiple groups of plaintiffs litigating against dozens of defendants. The first TPP cases were filed in 2017. If not included in the Settlement, United (and possibly other excluded plans) will now have to file a series of new cases from scratch, even though those cases would involve the same legal and factual questions purportedly resolved in the Settlement and that have already been litigated for more than seven years. Indeed, filing of new cases may be imminent, because final approval of the Settlement could trigger the end of tolling of

---

[20] Preliminary Approval Order, ECF No. 5616 at 3.

United's claims. *See Choquette v. City of New York*, 839 F. Supp. 2d 692, 700 (S.D.N.Y. 2012) (class certification "triggered an end to American Pipe tolling"). These new cases will burden this Court for the next several years, further prolonging this already-mature MDL proceeding.

All of this can and should be avoided. The class complaints filed in this MDL unambiguously include United's fully insured commercial plans and the Other Excluded Fully Insured Commercial Health Plans within their class definitions.[21] Class counsel has also acknowledged before this Court that those TPPs that have not filed claims are relying on already-filed class cases to toll and preserve their claims.[22] Indeed, that is the purpose of Rule 23 and the class-action mechanism. But that is exactly what Class Counsel threatens to destroy by its eleventh-hour abandonment of United's fully insured commercial plans and the Other Excluded Fully Insured Commercial Health Plans.

## II.  The Settlement is unfair, unreasonable, and inadequate

The Court's task at the final approval stage is to determine, guided by Rule 23, whether the Settlement taken as a whole is "fair, reasonable, and adequate."

---

[21] *See, e.g, American Federation of State, County and Municipal Employees District 37 Health & Security Plan v. Purdue, et al*, 1:17-cv-2585, ECF. 1 (N.D. Ohio December 12, 2017) "DC 37 Complaint" at ¶63 (class defined as "All health insurance companies, third-party administrators, health maintenance organizations, self-funded health and welfare benefit plans, third-party payors and any other health benefit providers, in the United States of America and its territories"); *American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan v. Purdue Pharma L.P. et al.*, Case No. 18-op-45013 (N.D. Ohio) (defining class to include, among others, "All health insurance companies"); *Local 404 Teamsters Health Service and Insurance Plan v. Purdue Pharma, LP et al.*, Case No. 18-op-45001 (N.D. Ohio) (defining class to include, among others, "All health insurance companies"); *Local No. 25 Sheet Metal Workers Health & Welfare Fund v. Purdue Pharma, LP et al.*, Case No. 18-op-45002 (N.D. Ohio) (defining class to include, among others, "All health insurance companies"); *MSPA Claims 1, LLC et al v. Purdue Pharma L.P. et al.*, Case No. 18-op-45057 (N.D. Ohio) (defining class to include "All health insurance plans and other third-party payors"); *United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania v. Purdue Pharma, LP et al.*, Case No. 17-op-45177 (N.D. Ohio) (defining class to include "All health insurance companies")
[22] July 31, 2024 TPP Status Conference.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); see also Fed. R. Civ. P. 23(e). The decision to approve or reject a settlement proposal is committed to the sound discretion of the district court. *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th Cir. 2013); *see also In re New Jersey Tax Sales Certificates Antitrust Litig.*, 750 F. App'x 73, 76 (3d Cir. 2018). When a class has not been certified prior to settlement, greater scrutiny of the fairness of the settlement is warranted. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.1982) (reviewing courts must employ "even more than the usual care"); see also Manual for Complex Litig. § 21.612 (4th ed. 2004).

### A. The newly proposed Settlement Class is not ascertainable

Rule 23(b)(3) has an implied "ascertainability" requirement– that the class members must be identifiable by *objective* criteria and in an administratively feasible manner. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). Not every class member must be identified, but the class must be sufficiently ascertainable to permit the court to "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment." *Karth v. Keryx Biopharmaceuticals, Inc.*, 334 F.R.D. 7, 14–15 (D. Mass. 2019).[23] Due process requires that defendants have notice of and be able to determine who is in or out of the class and entitled to recovery. *Lyngaas v. Curaden A.G.*, 2020 WL 917004, *2–3 (E.D. Mich. 2020). Even more critical here, clarity is required so that the rights of class members themselves are not violated and so they can decide whether to participate or opt-out of a settlement. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

---

[23] S*ee also Steimel v. Wernert*, 823 F.3d 902, 918 (7th Cir. 2016) ("Avoiding vagueness is important 'because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment.'").

The Sixth Circuit has held that "[f]or a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to *objective* criteria." *Young*, 693 F.3d at 538 (emphasis added). Class definitions that fail to include a substantial number of persons with claims similar to class members are "questionable." *See* Manual for Complex Litigation (Fourth) § 21.222. For this reason, arbitrary class definitions can render class action treatment improper for failure to draw a coherent scope of a class. *See Boca Raton Community Hospital, Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 689-91 (S.D. Fla. 2006), aff'd sub nom. *Boca Raton Community Hosp., Inc. v Tenet Health Care Corp.*, 582 F3d 1227 (11th Cir. 2009) (denying class certification in part because class definition was "arbitrary and unfair in that there [was] no legal or factual basis for using [a specific threshold] to distinguish between hospitals that are in the class and those that are not."). Numerous courts have agreed that the scope of the class should be "defined by the activities of the defendants." *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602 (D. Colo. 1990).[24]

Absent from the Settlement Agreement, Class Counsel's preliminary

---

[24] *See, e.g., Gbarbe v. Chevron Corp.*, 2017 WL 956628, at *30, *36-37 (N.D. Cal. Mar. 13, 2017) (class treatment is inappropriate because the class definition is arbitrary and untethered to any evidence of harm); *Kemblesville HHMO Ctr., LLC v. Landhope Realty Co.*, Civ. A. No. 08-2405, 2011 WL 3240779, at *6 (E.D. Pa. July 28, 2011) (finding class definition improper because it was "arbitrary and not reasonably related to evidence of record concerning MTBE contamination"); *Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *4 (N.D. Ill. Mar. 19, 2007) (denying class certification because "[t]here is simply no correlation between plaintiffs' evidence concerning the location of contaminated air and groundwater, and the 'arbitrarily drawn lines on a map' constituting plaintiffs' proposed class"); *Elsea v. Jackson County*, No. 10-0620-CV-W-ODS, 2010 WL 4386538, at *3 n.3 (W.D. Mo. Oct. 28, 2010), *abrogated on other grounds by Hood v. Gilster-Mary Lee Corp.*, 785 F.3d 263 (8th Cir. 2015) (criticizing a class definition "that excludes ... people who are indistinguishable from the class members — except that they are not currently citizens of Missouri and would thus create diversity of citizenship," concluding that a manufactured definition "when employed solely to preserve the class or for other litigation advantage, are generally unworthy of certification").

approval papers, and Class Counsel's final approval papers and notice is any explanation as to why discrete business lines of five specific absent class members were singled out for exclusion. In fact, Class Counsel's final approval papers omit any reference to United and the Other Excluded Fully Insured Commercial Health Plans whatsoever. There has been no ruling from the Court in this case justifying their exclusion from the settlement class. Nor is their exclusion in any way defined by the misconduct of the Defendants. To the contrary, United's fully insured commercial plans and the Other Excluded Fully Insured Commercial Health Plans have suffered exactly the same types of harm as a result of such misconduct as the other class members. There is no geographic basis for their disparate treatment, nor can the fact that they are relatively "big" justify their exclusion. Centene and HCSC, for example, are "big" too—each has larger overall enrollment than Humana—yet they have not been excluded from the Settlement Class. Indeed, Humana is not even a top-ten operator of fully insured commercial health plans.[25]

PBM affiliation cannot explain the exclusion of these five insurers, since the class definition expressly provides that "entities that own an interest, including a controlling interest, in a PBM, are not excluded from the Class."[26] Indeed, many class members own interests in PBMs. Kaiser Permanente owns its own in-house PBM,[27] while several Blue Cross plans have an ownership interest in Prime Therapeutics, the fourth largest PBM in the country.[28]

The class definition as written highlights the arbitrary nature of the

---

[25] https://www.insurancebusinessmag.com/us/news/life-insurance/revealed--10-largest-health-insurance-providers-in-the-us-419929.aspx.

[26] Preliminary Approval Order, ECF No. 5616 at 4.

[27] https://www.mmitnetwork.com/aishealth/spotlight-on-market-access/mmit-payer-portrait-kaiser-permanente/.

[28] https://www.primetherapeutics.com/w/prime/magellan-rx-s-advocate-elevates-specialty-pharmacy-experience-simplifies-health-care-journey

Settlement. As described above, the Class purports to carve out United and the Other Excluded Fully Insured Commercial Health Plans in exclusion (e). But it specifically includes Medicare Part C and D and Medicaid plans, which United and the Other Excluded Fully Insured Commercial Health Plans each provide. When counsel for United and the Other Excluded Fully Insured Commercial Health Plans addressed this glaring inconsistency with Class Counsel, Class Counsel confirmed that the Medicare and Medicaid plans offered by United and the Other Excluded Fully Insured Commercial Health Plans are in the class.

The class definition also includes "(b) plans for self-insured local governmental entities that have not settled claims in MDL No. 2804." But nothing in the Settlement materials on the settlement website provide any information for how a TPP can determine which local government entities have already settled claims and which have not. The parties have created a convoluted, arbitrary settlement class definition that cannot satisfy the requirements under Rule 23.

### B. The representative parties failed to protect the interests of absent class members and agreed to an inequitable settlement

Class Counsel have purported to represent the interests of United and the Other Excluded Fully Insured Commercial Health Plans in this litigation and settlement negotiations when they, in fact, did not. In a class action, "the representative parties [are required to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he need for the adequacy of representation finding is particularly acute in settlement class situations[.]" *In re Drymax Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013). Courts examine adequacy based upon two factors: "1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through

12

qualified counsel." *Id.* Treating similarly situated class members differently is a recurring abuse in class action settlements of which judges should be wary. Manual for Complex Litigation (Fourth) § 21.61 at n.956 and accompanying text (2004). Indeed, in determining whether a proposed class settlement is "fair, reasonable, and adequate" a court must consider whether it "treats members equally relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

The 2017 DC Complaint, filed by Class Counsel as a class action against the Defendants by one of the proposed class representatives, defined the class as "[a]ll health insurance companies, third-party administrators, health maintenance organizations."[29] This unambiguously included United's fully insured commercial plans and the Other Excluded Fully Insured Commercial Health Plans in the class definition. The class representative and its counsel were required to protect the interests of United and the Other Excluded Fully Insured Commercial Health Plans throughout this litigation. Yet, they inexplicably abandoned their obligations by agreeing to carve out from the Settlement certain fully insured plans for no apparent reason, resulting in a Settlement that fails to treat class members equally. Indeed, United and the Other Excluded Fully Insured Commercial Health Plans are the only TPPs within the class that are prohibited from recovering across all lines of their business.

This disparate treatment is particularly acute, and nonsensical, when considering the scope of the release afforded by the Settlement. While United and the Other Excluded Fully Insured Commercial Health Plans are members of the class with respect to their Medicare and managed Medicaid lines of business, unlike all other class members, they are excluded from the class with respect to their fully insured commercial line of business. Yet, the "Released Claims" under

---

[29] DC 37 Complaint at ¶ 63.

13

the terms of the Settlement purports to include "all Claims."[30] Certainly, that could not have been the intent of the settling parties, and if it were, it would be fundamentally unfair and unreasonable. *See Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 299, (M.D. Pa. 1995) (The "disparate treatment of class members has not been justified by the settlement proponents, and is sufficient reason in and of itself to disapprove the proposed settlement").

In sum, United, Aetna, CIGNA, Elevance, and Humana are class members. They paid for "(i) opioid prescription drugs manufactured, marketed, sold, distributed, or dispensed by any of the Defendants and/or Opioid Supply Chain Members for purposes other than resale, and/or (ii) paid or incurred costs for treatment related to the misuse, addiction, and/or overdose of opioid drugs, on behalf of individual beneficiaries, insureds, and/or members, during the time period from January 1, 1996 to the date of entry of the Preliminary Approval Order" just like any other class member. But unlike every other class member, they are only allowed to participate in the Settlement as to their Medicare and Medicaid plans, not as to their fully insured commercial plans. No other class members are subject to this arbitrary and disparate restriction. The Settlement plainly fails to treat similarly situated class members similarly, and therefore violates the intra-class equity requirement of Rule 23(e)(2)(D).[31]

In addition, by arbitrarily carving out the fully insured commercial health plans of five large class members, Class Counsel failed to protect the interests of the rest of the Class. By being willing to carve out the interests of certain class members, Class Counsel diluted the entire class's leverage and bargaining power, thus resulting in a lower recovery for all class members.[32]

---

[30] *See* ECF No. 5614-2 at 9.
[31] *See* Newberg §13:56 (in scrutinizing proposed settlements, "the court's goal is to ensure that similarly situated class members are treated similarly").
[32] The arbitrary carveout of United's fully insured commercial plans and the Other Excluded

### C. Class Counsel violated their fiduciary duties to the class

#### 1. The circumstances of the settlement negotiations are suspicious and indicative of collusion

Class Counsel have a fiduciary duty to protect the interests of *all* class members; counsel cannot place their own interests or the interests of named class members above unnamed class members. *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013); *see also In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir. 1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."); *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) ("class counsel ultimately owe their fiduciary responsibility to the class as a whole and are therefore not bound by the views of the named plaintiffs regarding any settlement"). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." Newberg §13:56. As the Sixth Circuit has observed, while "most class counsel are honorable, . . . settlement classes create especially lucrative opportunities for putative class attorneys to generate fees for

---

Fully Insured Commercial Health Plans from the class definition is problematic because it leaves numerous class members in the single class and represented by the same counsel who is indicating (via exclusions) that representation of those plans creates some sort of a conflict. The Manual for Complex Litigation instructs that "[i]f the class definition includes people with similar claims but divergent interests or positions, subclasses with separate class representatives and counsel might suffice." Manual for Complex Litigation § 21.222. If Class Counsel truly believed that United's fully insured commercial plans and the Other Excluded Fully Insured Commercial Health Plans had some divergence of interest from the rest of the class, the appropriate path forward would have been to create a subclass. *See Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 459 n.9 (E.D. Pa. 2008) (noting that relevant factors to consider in determining whether a proposed settlement is fair, adequate, and reasonable include "the existence and probable outcome of claims by other classes and subclasses" and "the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved -- or likely to be achieved -- for other claimants"). They chose instead to leave those plans by the wayside.

themselves without any effective monitoring." *In re Dry Max Pampers Litig.*, 724 F.3d at 718. The Rule 23(e) inquiry, therefore, "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks omitted).

As set forth in Class Counsel's supporting papers, the Settlement here was the product of a secret mediation. Indeed, despite knowing the active role that counsel for United and the Other Excluded Fully Insured Health Plans played in all other opioid matters to date, United and the Other Excluded Fully Insured Health Plans were unaware of the mediation, let alone parties to it. And while it is unknown precisely what was communicated *during the course of* the mediation, it is clear that Class Counsel *went to* that mediation representing the interests of all TPPs, including United and the Other Excluded Fully Insured Health Plans. Indeed, at the time of the mediation, not one of the many class actions pending in this MDL excluded a subset of TPPs; they uniformly included "all payors." Yet, at some point during the mediation process, Class Counsel abandoned its duties to the entire class and agreed to a settlement that carved out a single line of business for five specific payors. Class Counsel apparently saw an opportunity to generate fees for themselves by unjustly and unfairly colluding with Defendants to strip United's fully insured commercial plans and the Other Excluded Fully Insured Commercial Health Plans from the proposed settlement class. In doing so, Class Counsel breached their fiduciary duties. And because of the resulting disparate treatment, the Settlement should be rejected. *See* Fed. R. Civ. P. 23(e)(2)(D).

### 2. Conflicts of interest have precluded adequate representation.

Class Counsel and the Class Representatives in this action have a clear conflict of interest with unnamed class members, which manifested itself in September 2024. Since 2017, Class Counsel have purported to sue opioid manufacturers and distributors on behalf of a class of all TPPs. This TPP class includes, inter alia, United, Cigna and Aetna. United, Cigna and Aetna each have as corporate affiliates prominent pharmacy benefit managers—OptumRx in the case of United, Express Scripts in the case of Cigna, and CVS Caremark in the case of Aetna. In September 2024, Class Counsel abruptly, and without notice,[33] amended one of the class complaints in this MDL to name OptumRx (as well as United's corporate parent UnitedHealth Group, Inc.), Express Scripts and CVS Caremark as defendants.[34]

"It is axiomatic that a putative representative cannot adequately protect the class if the representative's interests are antagonistic to or in conflict with the objectives of those being represented." *Rutherford v. City of Cleveland*, 137 F.3d 905, 909 (6th Cir. 1998) (quoting Wright & Miller, 7A Federal Practice & Procedure § 1768 (4th ed.)). "It is fairly clear that if the class members themselves have conflicting rights in the subject matter of the litigation so that respective priorities among the class members must be determined in the action, then

---

[33] While there was discussion at the July 31, 2024 TPP Status Conference about amending class allegations, there was no discussion about adding additional parties, particularly those who pose conflicts with the interests of existing class members.

[34] It is also noteworthy that one of the firms acting as Class Counsel, Robbins Geller Rudman & Dowd LLP, is also counsel of record on behalf of plaintiffs in multiple opioid-related actions which name United's parent company (UnitedHealth Group) and affiliate (OptumRx) as defendants. *See, e.g., City of Auburn v. Purdue Pharma, L.P.,* Case No. 1:19-op-45843-DAP, ECF No. 85 (N.D. Ohio) (September 21, 2023 Notice of Appearance); *City of Ogdensburg v. Purdue Pharma, L.P,* Case No. 1:19-op-45852-DAP, ECF No. 115) (N.D. Ohio) (September 21, 2023 Notice of Appearance); *City of Amsterdam v. Purdue Pharma, L.P.,* Case No. 1:19-op-46162-DAP, ECF No. 103 (N.D. Ohio) (September 21, 2023 Notice of Appearance). Incredibly, after entering such appearances adverse to United, Class Counsel attended a mediation purporting to represent the interests of United.

claims of a right to represent the class often will be found to be improper."
Wright & Miller, 7A Federal Practice & Procedure § 1768 (4th ed.).

Needless to say, United's interests are contrary to suing its corporate
parent UnitedHealth Group, Inc. and corporate affiliate OptumRx, and Cigna's
and Aetna's interests are likewise contrary to suing their corporate affiliates
Express Scripts and CVS Caremark. Yet as unnamed class members in this
action, they find themselves purportedly represented by Class Counsel and Class
Representatives that are simultaneously trying to file baseless claims that are
adverse to their corporate affiliates. Such a blatant conflict-of-interest is, at best,
disqualifying.

### D. The Settlement does not provide adequate relief to the class

As noted above, concerning this very MDL, the Sixth Circuit has already
expressed its concerns that settlement participants must have the most
information available to them about a potential recovery before being required to
participate. *See In re National Prescription Opiate Litig.*, 976 F.3d 664, 675 (6th Cir.
2020) ("[T]he district court's approach would do the opposite of increasing
individual control and involvement by requiring class action participants to
commit to the negotiation class without knowing the issue parameters or the
amount or prospect of any potential recovery."). That is because in class actions,
"the most significant factor for the district judge is the strength of plaintiffs' case
balanced against the settlement offer.... [The court] is required to explore the facts
sufficiently to make an intelligent comparison between the amount of the
compromise and the probable recovery." *Zink v. First Niagara Bank, N.A.*, 155 F.
Supp. 3d 297, 312 (W.D.N.Y. 2016) (quoting *Traffic Executive Assoc.*, 627 F.2d at
633).[35] Therefore, "the Court must ... insist that the parties present evidence that

---

[35] *See also Global Crossing Securities*, 225 F.R.D. at 455 (the court's "primary concern [is] with the
substantive terms of the settlement ... and how they compare to the likely result of a trial");

would enable possible outcomes to be estimated, so that it can at least come up with a ballpark valuation." *Id.* To determine whether a settlement falls within the range of possible approval, a court must focus on "both: (1) the size of the amount relative to the best possible recovery, and (2) the likelihood of non-recovery or reduced recovery." *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016).

Courts have "more than once denied motions for approval where the plaintiffs 'provide[d] no information about the maximum amount that the putative class members could have recovered if they ultimately prevailed on the merits of their claims.'" *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 969–70 (N.D. Cal. 2019). This is because "any fraction has a denominator, and without knowing what it is the Court cannot balance plaintiffs' expected recovery against the proposed settlement amount." *Id.* (citation omitted)).

Nowhere in their preliminary or final approval filings does Class Counsel inform the Court as to the class members' potential range of recovery from this litigation. They only baldly assert, without any support whatsoever, that the Settlement is "impressive."[36] But the fact that there is no concrete range of recovery is telling, and raises the very concerns the Sixth Circuit voiced when reversing the establishment of a negotiation class because it runs contrary to established precedent around class actions.[37]

TPPs are at the front line of the opioid epidemic, and as a result have borne the brunt of the expenses. As Class Counsel's own expert, Dr. Meredith Rosenthal explains, these expenses have taken the form of both increased

---

*Martin*, 295 F.R.D. at 384 ("The most important consideration is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement").

[36] Preliminary Approval Brief, ECF No. 5614 at 24.

[37] While Professor Rubenstein's report describes the development of the negotiation class at-length, he ultimately acknowledges its reversal by the Sixth Circuit.

prescription drug spending and increased spending on members that have been diagnosed with OUD and require years of treatment.[38] Both types of spending across the health insurance industry amount to billions of dollars per year. In fact, by 2006, spending on prescription opioids alone was almost $7 billion, with that number increasing in subsequent years.[39]

     As already noted, Dr. Rosenthal's own estimates demand a much higher Settlement. She estimates "the medical cost of OUD (excluding prescription drugs, which are separately tabulated as described) [is] approximately $19,118" per patient for one year.[40] Taking the settlement amount into account, after subtracting the $60 million in fees that Class Counsel demands, the settlement funds would cover the excess spending for approximately 12,553 patients for one year. But in 2016 alone, approximately 2.1 million people were diagnosed with OUD.[41] At $19,118 per patient per year, this is an annual cost of over $40 Billion. This Settlement would therefore compensate the TPP class for 0.5% of their excess OUD spending for that one year. It does not even address the excess OUD spending in the other twenty-seven years that comprise the class period and it does nothing to account for the TPPs' excess spending on opioids themselves, which is billions more dollars per year. By Dr. Rosenthal's own calculations, the amount of this Settlement does not even begin to compensate TPPs for the

---

[38] ECF 5614-7, Expert Report of Dr. Meredith Rosenthal Regarding Allocation of Settlement Proceeds ("Rosenthal Report") at 7 ("TPPs were (and continue to be) affected by the alleged misconduct as they pay for pharmaceuticals for their enrollees, including opioids and other prescription drugs, and medical care, including treatments for opioid use disorder and its complications.").

[39] DC 37 Complaint at ¶104.

[40] ECF 5614-7, Rosenthal Report at 9.

[41] Substance Abuse and Mental Health Services Administration, U.S. Department of Health and Human Services, "Key Substance Use and Mental Health Indicators in the United States: Results from the 2016 National Survey on Drug Use and Health" available at https://www.samhsa.gov/data/sites/default/files/NSDUH-FFR1-2016/NSDUH-FFR1-2016.htm#:~:text=In%202016%2C%20approximately%2020.1%20million,facility%20in%20the%20past%20year.

damages caused by the distributors' part in the opioid epidemic. In fact, using the Mallinckrodt experience as a proxy for how that sum will be allocated here, it can be expected that ASO groups will receive roughly 22.57% of that total,[42] or $54.2M. Taking that aggregate ASO recovery and allocating it across roughly 79,000 ASOs (similar to the number who proved claims in Mallinckrodt) yields an average recovery of $686.07 for each ASO. Simply put, the Settlement will do absolutely nothing to help abate the opioid crisis.

## CONCLUSION

For the foregoing reasons, the Proposed Settlement should be rejected and Class Counsel should be disqualified. United will appear at the final approval hearing through the undersigned counsel. United submits to the jurisdiction of the Court and agree to follow all Court decisions, including about these objections, request to be heard, and the Settlement, without waiver of any right to appeal.

Dated: November 11, 2024          Respectfully submitted,

  /s/ Thomas C. Mahlum
Thomas C. Mahlum
Eric P. Barstad
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone:  (612) 349-8500
TMahlum@RobinsKaplan.com
EBarstad@RobinsKaplan.com

*Attorneys for United HealthCare Services, Inc.*

---

[42] *McKinsey*, ECF No. 656-2 at 3, n.3 ("In Mallinckrodt, ASO groups will receive 22.57% of the settlement").

**CERTIFICATE OF SERVICE**

I hereby certify that on November 11, 2024, a copy of the foregoing was served on all counsel of record by filing the same with the Court's CM/ECF System.


*/s/ Thomas C. Mahlum*
Thomas C. Mahlum