UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All PBM Cases | MDL No. 2804<br><br>Case No. 1:17-md-02804-DAP<br><br>Judge Dan Aaron Polster |

### PBM DEFENDANTS' STATEMENT REGARDING REPLACEMENT BELLWETHER SELECTION

The PEC has "derail[ed] the MDL litigation." *See* ECF No. 5737 at 2. Plaintiffs' rampant spoliation of evidence and the PEC's gerrymandering of the limited number of remaining PBM cases leave the PBM Defendants with just a handful of cases to choose from that are willing to litigate and are not plagued by preservation issues. The PBM Defendants object to this process because it has stacked the deck in favor of the PEC's preferred venues.

The Court has nonetheless ordered the PBM Defendants to choose two potential replacement bellwethers from these slim pickings. ECF No. 5738. Accordingly, the PBM Defendants select (1) *Allegany County, NY*, No. 1:19-op-46151 (N.D. Ohio) and (2) *City of Ogdensburg, NY*, No. 1:19-op-45852 (N.D. Ohio).

### BACKGROUND

When the Court first turned its attention to cases against the PBM Defendants last year, there was a pool of more than 80 cases from which the parties could select bellwether cases. In accordance with the Court's directives, the parties identified eight cases (four plaintiff selections and four PBM selections) from that pool as bellwether candidates. ECF No. 5218; ECF No. 5219. Following each sides' exercise of two strikes, the Court confirmed four cases to serve as PBM bellwethers. ECF No. 5231.

A year later, only a handful of cases remain. Discovery revealed that three of the four original bellwether plaintiffs failed to implement litigation holds when they filed their cases years ago and that each spoliated evidence. In response, the Court removed those three cases as bellwethers. The Court has since ordered the PEC no fewer than *five* times to identify whether each of the remaining plaintiffs in PBM cases (1) has implemented a litigation hold, and (2) if so, when. ECF No. 5517 (July 10, 2024); ECF No. 5540 (July 23, 2024); ECF No. 5648 at 7 (September 23, 2024); ECF No. 5695 (October 17, 2024); ECF No. 5738 (November 5, 2024). The PEC changed its answer each time.

Defying the Court's first order, the PEC sidestepped the question of whether a litigation hold was implemented for every single PBM case altogether and instead provided a date by which counsel executed a "fee contract" with certain plaintiffs that may have included language informing plaintiffs of an obligation to preserve documents. ECF No. 5538; ECF No. 5538-1. Even that deficient filing revealed that counsel neglected its most basic duty to even *inform* 23 plaintiffs of a duty to preserve relevant evidence. *Id.*

After the Court's second order, on July 23, the PEC submitted a table that revealed that the overwhelming majority of plaintiffs with cases against the PBM Defendants failed to implement a timely litigation hold, that 30 plaintiffs had no litigation hold in place as of that filing, and that counsel had still not even advised 22 plaintiffs to implement a litigation hold at all. ECF No. 5589; ECF No. 5589-1.

When the Court removed *County of Webb* as a bellwether on September 23, it for a third time ordered the PEC to "double-check and then certify which of the remaining original PBM cases won't have any document retention [or] destruction issues." ECF No. 5648 at 7:7–9; *see also* ECF No. 5646 at 2 ("The PEC shall file a document certifying which of the previously identified

2

PBM defendant cases had litigation holds properly implemented at the time the underlying complaints were filed."). In response, the PEC emailed (not filed as ordered by the Court) a submission on October 7, identifying only four cases (all in Virginia) that they contended did not have any document retention or destruction issues and that could serve as a replacement PBM bellwether. ECF No. 5673-2. Only two of those four cases—Henrico County and Giles County— implemented a litigation hold before suing the PBM Defendants. *Id.* The PEC also explained that six plaintiffs represented by Scott + Scott "have declined to act as a bellwether." *Id.*

On October 17, the Court ordered the PEC to file an updated certification by October 23 and ordered Scott + Scott to either certify that those six plaintiffs would be prepared to litigate or else dismiss their claims against the PBM Defendants. ECF No. 5695. The Court emphasized that a plaintiff "doesn't have the option to decline to be a bellwether. You file the case. If you are picked, you are picked." *Id.* at 2:21–23; *see also id.* at 4:20–23 ("I mean, if you are not prepared to litigate a case, you shouldn't file it, or if you file it and you later learn the client is not prepared to litigate, then you dismiss the case.").

Plaintiffs responded by gerrymandering the bellwether pool. They first certified that at least one of Scott + Scott's cases was prepared to proceed (City of Paterson, New Jersey, a case that the PBM Defendants had previously selected as a bellwether, ECF No. 5218), but Plaintiffs then reversed course and dismissed all the Scott + Scott cases. ECF Nos. 5690; 5700. Then they disclosed for the first time that one of the few plaintiffs to represent that it timely implemented a litigation hold (Henrico County, Virginia) also had document preservation issues. ECF No. 5701. In the end, the PEC left the PBM Defendants with no existing PBM case in the MDL that could serve as a useful bellwether. *See* ECF No. 5724.

On November 5, the Court ordered the PEC for a *fifth* time to

3

>file a single, up-to-date document listing all MDL cases that have already named PBM defendants regarding which: (1) plaintiffs' counsel certifies that: (a) they timely notified the plaintiff of the requirement to implement a litigation hold; (b) to the best of counsel's knowledge, the plaintiff received the notice and took action to implement a litigation hold at the time the underlying complaint was filed; (c) the plaintiff is committed to being a bellwether if chosen; and (2) the plaintiff, plaintiffs' counsel, and the PEC are each prepared and committed to litigate the case.

ECF No. 5738 at 2–3.

The PEC filed its revised case list on November 8—now listing a total of twenty-four plaintiffs across just six pending cases that it contends meet the Court's criteria. ECF Nos. 5742; 5742-1. But that list is misleading. In that filing, the PEC dropped without explanation four cases that were previously certified as prepared to litigate: Butler County, Ohio; Henrico County, Virginia; Arlington County, Virginia; and Fairfax County, Virginia. *Compare* ECF No. 5742-1 (omitting those four cases), *with* ECF No. 5701 (certifying Henrico County, Arlington County, and Fairfax County) *and* ECF No. 5705 (certifying Butler County). The PEC also stated that it is not "prepared and committed to litigate" two of the remaining cases: Giles County, Virginia, and Strafford County, New Hampshire. And the PEC included 20 plaintiffs across 3 cases that are not properly in the MDL because they were directly filed in the MDL after the JPML closed the MDL to new transfers.[1] *See In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2 (J.P.M.L. Apr. 8, 2022) ("Multidistrict litigation, however, 'is not static.' . . . We are of the view that MDL No. 2804 has reached the point where the benefits are outweighed by the effects of transferring new cases to this mature litigation." (citation omitted)); *see also* ECF No. 232

---

[1] Those cases and plaintiffs are: No. 1:23-op-45001 (County of Summit, OH), No. 1:23-op-45006 (Strafford County, NH), and No. 1:23-op-45003 (Broadview Heights, OH; County of Cuyahoga, OH; Dayton, OH; Euclid, OH; Findlay City, OH; Garfield Heights, OH; Lorain County, OH; North Ridgeville, OH; North Olmstead, OH; Olmstead Falls, OH; Parma, OH; Painsville Township, OH; Parma Heights, OH; Sandusky, OH; Seven Hills, OH; Strongsville, OH; Toledo, OH; and Warren, OH).

4

(allowing only those plaintiffs "whose case would be subject to transfer to these MDL proceedings" to file directly in the MDL).

That leaves at most four cases for the PBM Defendants to choose from: Allegany County, NY, No. 1:19-op-46151 (N.D. Ohio); City of Auburn, NY, No. 1:19-op-45843 (N.D. Ohio); City of Ogdensburg, NY, No. 1:19-op-45852 (N.D. Ohio); and Giles County, VA, No. 1:19-op-45236 (N.D. Ohio). In its certification, the PEC refused to commit to litigating Giles County despite plaintiff's counsel's willingness to do so—proving that the PEC believes that it controls this process. In any event, consistent with this Court's previous order, it should dismiss any case (including Giles County) that plaintiff's counsel and the PEC have refused to commit to litigating.

## **STATEMENT**

Over the past four months, the PEC has repeatedly failed to provide basic information about the plaintiffs' document preservation and has engaged in blatant gamesmanship to force the PBM Defendants into a world where they have no meaningful bellwether options. The PEC's conduct works a manifest injustice by rewarding plaintiffs for violating their legal obligations. And by their latest submission, the PEC effectively asks the Court for full and unilateral control over the bellwether process.

*First*, the PEC omitted without explanation four cases that it previously certified were prepared to serve as bellwethers (Butler County, Ohio; Henrico County, Virginia; Arlington County, Virginia; and Fairfax County, Virginia). It is clear that the PEC is trying to game the system by eliminating cases that it does not like. Those cases—and all others that have failed to certify that they are prepared to serve as bellwethers—must be dismissed for failure to prosecute,

just as Scott + Scott's cases were.[2] The Court made it clear that if a plaintiff or counsel are "not prepared to litigate a case, [they] shouldn't file it, or if [they] file it and [they] later learn that the client is not prepared to litigate, then [they] must dismiss the case." ECF No. 5695 at 4:20–23. Exhibit A includes a list of all cases that should be dismissed on that basis.

*Second*, the PEC certified that Giles County, Virginia, and Strafford County, New Hampshire timely implemented litigation holds, are prepared to litigate, and that the counties' counsel are prepared and committed to litigate but that *the PEC* is not "prepared and committed to litigate" on behalf of those plaintiffs. ECF No. 5742-1. The PEC's attempt to excuse itself from litigating *Strafford County, NH*, only further demonstrates its intent to manipulate the bellwether process because the PEC affirmatively selected *Strafford County* as one of its bellwether picks just last year. ECF No. 5219. There is no legal basis for the PEC—which promised the Court that its members would "commit their personal energy and the energies and resources of their firms for the benefit of the Opiate MDL Plaintiffs" (ECF No. 34-1)—to simply choose to not litigate an otherwise eligible case. The PEC cannot further narrow the bellwether pool just because it does not like certain cases.

*Third*, the PEC included 20 Ohio or New Hampshire plaintiffs that improperly filed their lawsuits directly into the MDL after the JPML closed the MDL to new transfers. *See* No. 1:23-op-45001; No. 1:23-op-45003; No. 1:23-op-45006. Those cases were improperly filed in the MDL, and the PBM Defendants reserve all rights to seek dismissal of those cases for improper venue.

That leaves three cases for the PBM Defendants to pick from: (1) *Allegany County, NY*, (2) *City of Auburn, NY*, and (3) *City of Ogdensburg, NY*.

---

[2] This includes all cases for which plaintiffs represented they "plan to dismiss their actions against the PBM defendants." *See* ECF No. 5724-1. The PEC did not provide the required certification for those cases and they must be promptly dismissed.

6

For the reasons outlined above and in the PBM Defendants' October 30 submission (ECF No. 5724), the bellwether selection process has deteriorated to the point of no return, and the most appropriate step at this point is to remand all remaining PBM cases to their home forums.

The PBM Defendants nevertheless select the following cases:

- *Allegany County, NY*, No. 1:19-op-46151 (N.D. Ohio), and

- *City of Ogdensburg, NY*, No. 1:19-op-45852 (N.D. Ohio).


Date: November 12, 2024


Respectfully submitted,

| | |
|---|---|
| /s/ Brian D. Boone | /s/ Jonathan G. Cooper |
| Brian D. Boone | Michael J. Lyle |
| **ALSTON & BIRD LLP** | Jonathan G. Cooper |
| 1120 South Tryon Street, Suite 300 | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| Charlotte, NC 28203 | 1300 I St. NW, Suite 900 |
| T: (704) 444-1000 | Washington, DC 20005 |
| brian.boone@alston.com | T: (202) 538-8000 |
| | mikelyle@quinnemanuel.com |
| William H. Jordan | jonathancooper@quinnemanuel.com |
| D. Andrew Hatchett | |
| **ALSTON & BIRD LLP** | *Attorneys for Express Scripts, Inc.* |
| 1201 W. Peachtree St. NW, Suite 4900 | |
| Atlanta, GA 30309 | |
| T: (404) 881-7000 | |
| bill.jordan@alston.com | |
| andrew.hatchett@alston.com | |

*Attorneys for OptumRx, Inc.*