**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| **This document relates to:** *Track 9* **Case No. 1:18-op-45274-DAP** | Case No. 17-md-2804 |
| | Judge Dan Aaron Polster |
| TARRANT COUNTY, TEXAS, | |
| Plaintiff, | |
| v. | |
| PURDUE PHARMA, et al., | |
| Defendants. | |

## ALBERTSONS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE ALBERTSONS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

LEGAL ARGUMENT .......................................................................................................... 3

    I.     TEXAS LAW DOES NOT AUTHORIZE TARRANT COUNTY TO BRING ITS COMMON LAW PUBLIC NUISANCE CLAIM ................................................. 3

        A.  Plaintiff Tarrant County Admits It Has No Express Statutory Authority To Bring Its Claims; It Also Lacks Any "Implied" Statutory Authority To Sue Albertsons ........................................................................................................ 3

            1.  Texas Law Does Not Grant Tarrant County Express Statutory Authority to Bring This Lawsuit .................................................. 4

            2.  Texas Law Does Not Grant Tarrant County Implied Authority to Bring This Lawsuit ................................................................... 8

            3.  The *Tuma* Case Bars Any Assertion of *Parens Patriae* Common Law Authority to Sue Because Tarrant County is Not a Sovereign ......... 10

        B.  The Texas Regulatory Consistency Act Bars Plaintiff's Public Nuisance Claim ............................................................................................................... 12

    II.    TARRANT COUNTY HAS NO ARTICLE III STANDING TO PURSUE ITS CLAIM ............................................................................................................... 14

    III.   THERE IS NO HISTORICAL PRECEDENT FOR A COMMON LAW NUISANCE CLAIM AGAINST THE SALE OF A LEGAL PRODUCT NOT STATUTORILY ENUMERATED AS A "PUBLIC NUISANCE" .................... 15

    IV.   TARRANT COUNTY'S ARGUMENT THAT ALBERTSONS HAS A LEGAL DUTY TO THE COUNTY LIKEWISE FAILS .................................................. 17

        A.  Tarrant County Seeks to Impose a Common Law Duty Unrecognized in Texas ............................................................................................................... 17

        B.  Any Duty That May Exist is Not Owed to Tarrant County ................................ 19

CONCLUSION .................................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Wood*,
  152 S.W.2d 1084 (Tex. 1941)......................................................................................8

*Barnett Bank of Marion County v. Nelson*,
  517 U.S. 25 (1996)......................................................................................................14

*Callier v. MultiPlan, Inc.*,
  No. EP-20-CV-00318-FM, 2021 WL 8053527 (W.D. Tex. Aug. 26, 2021)............16

*In re Caridzem CD Antitrust Litig.*,
  332 F.3d 896 (6th Circ. 2003)...................................................................................15

*Cash America Int'l v. Bennet*,
  35 S.W.3d 12 (Tex. 2000)..........................................................................................13

*City of San Antonio v. City of Boerne*,
  111 S.W.3d 22 (Tex. 2003).............................................................................4, 6, 9, 11

*City of Webster v. Signad, Inc.*,
  682 S.W.2d 644 (Tex. App. — Houston 1984) ..........................................................13

*Crosstex N. Texas Pipeline, L.P. v. Gardiner*,
  505 S.W.3d 580 (Tex. 2016).......................................................................................13

*El Chico Corp. v. Poole*,
  S.W.2d 306, 311, 312 (Tex. 1987).............................................................................17

*El Paso Cnty., Texas v. Trump*,
  982 F.3d 332 (5th Cir. 2020) .....................................................................................15

*El Paso Cnty. v. El Paso County Emerg. Services Dist. No. 1*,
  622 S.W.3d 25 (Tex. App.—El Paso 2020)..................................................................5

*Farmers Grp., Inc. v. Lubin*,
  222 S.W.3d 417 (Tex. 2007)..................................................................................11, 12

*Foster v. City of Waco*,
  255 S.W. 1104 (Tex 1923)............................................................................................9

*Guynes v. Galveston*,
  861 S.W.2d (Tex. 1993)........................................................................................5, 8, 9

*Imperial Irrigation Co. v. Jayne*,
  138 S.W. 575 (1911) .................................................................................... 8

*Jamail v. Stoneledge Condo Owners Ass'n*,
  970 S.W.2d 673 (Tex. App. — Austin 1998) .................................................... 14, 16

*Lake Travis Indep. Sch. Dist. v. Lovelace*,
  243 S.W.3d 244 (Tex. App. — Austin 2007) .................................................... 16

*Longhorn Creed Ltd. v. Gardens of Connemara Ltd*,
  686 S.W.3d 418(Tex. App. — Dallas 2024) .................................................... 13, 14

*Martinez v. Walgreen Co.*,
  935 F.3d 396 (5th Cir. 2019) ................................................................. 17, 18, 19, 20

*Ocwen Loan Servicing, L.L.C. v. Berry*,
  852 F.3d 469 (5th Cir. 2017) ........................................................................ 12

*Prantil v. Arkema Inc.*,
  986 F.3d 570 (5th Cir. 2021) ........................................................................ 16

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ....................................................................................... 14

*State v. Hollins*,
  620 S.W.3d 400 (Tex. 2020) ........................................................................... 9

*State v. Spartan's Industries, Inc.*,
  447 S.W.2d 407 (Tex. 1969) ........................................................................... 17

*State v. Terrell*,
  588 S.W.2d 784 (Tex. 1979) ............................................................................ 8

*Texas Cent. Partners, LLC v. Grimes Cnty.*,
  580 S.W.3d 824 (Tex. App. — Houston 2019, no pet.) ......................................... 16

*Tuma v. Kerr County*,
  336 S.W.3d 277 (Tex. App. — San Antonio 2010) .......................................... 10, 11

*United Services Auto Ass'n v. Brite*,
  215 S.W.3d 400 (Tex. 2007) ............................................................................ 7

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ...................................................................................... 12

*West v. Conrail*,
  481 U.S. 35 (1987) ........................................................................................ 12

iii

**Statutes**

22 Tex. Admin Code § 291.29 .................................................................................................18

Tex. Const. art. XI, § 1 ...........................................................................................................4

Texas Health & Safety Code Ann. § 121.003(a) ...............................................................5, 6, 7

Texas Health & Safety Code Ann. §§ 343.021 to 343.025..................................................7

Texas Health & Safety Code Ann. § 343.022(c)(5), (e) ....................................................8

Texas Health & Safety Code Ann. § 483.042 ....................................................................19

Texas Local Gov't. Code Ann. § 71.001 ............................................................................4

Texas Occ. Code Ann. § 1.004 ...........................................................................................12

Texas Pharmacy Act, Tex. Occ. Code Ann. § 551 *et seq.* ................................................13, 14, 17

**Other Authorities**

Tex. Atty. Gen. Op. DM-183 (1992) ...................................................................................5

Tex. Atty. Gen. Op. No. AC-0003 (August 16, 2023)........................................................6

Tex. Reg., Vol. 43, Num. 36................................................................................................18

Texas Constitution ...........................................................................................................3, 4, 5, 9

Albertsons, Inc., Albertsons, LLC, Safeway, Inc., Randall's Food & Drug, LP, and United Supermarkets, LLC (collectively, "Albertsons") file this Reply Memorandum of Law in Further Support of the Albertsons Defendants' Motion for Summary Judgment ("Motion") in connection with the Track 9 Bellwether Case.

## **INTRODUCTION**

Lacking any legal basis for its lawsuit against Albertsons, Plaintiff Tarrant County ("Plaintiff" or "Tarrant County") deflects with irrelevant factual assertions to try to create a triable issue of fact.[1]  But the basis for Albertsons' Motion for Summary Judgment does not relate to any

---

[1] In addition to being irrelevant to the issues in Albertson's motion, Tarrant County fails to proffer a threshold issue of fact.  Referring to the work of its statistician, Dr. Craig McCann, it argues that "[a] significant portion of [Albertsons'] prescriptions presented one or more red flags indicative of diversion."  (Opp. at 5.)  However, neither Dr. McCann nor any other expert offered any statistical interpretation or application of his "red flag" computations to show that Albertsons' prescribing activities had any statistically discernable impact in Tarrant County.  The record is devoid of such proof.  Dr. McCann testified that he did not have the subject matter expertise to interpret or provide meaning to the computations he performed.  (Ex. 32 to Opp. (McCann Dep. Tr.) at 22:10–23:7.)  He testified that he did not have the subject matter expertise to test whether there was adequate supervision of prescription opioid orders at Albertsons pharmacies.  (*Id*. at 61:4–62:7.)  He testified that he did not have the subject matter expertise to demonstrate that there was illicit opioid use by chain pharmacy patients.  (*Id*. at 71:17–72:5; 76:9–14.)  He testified that he did not test any hypotheses known to him by computing his "suspicious order monitoring system" or "red-flag" algorithms.  (*Id*. at 61:4–6.)  He testified that he drew no conclusions from the "suspicious order monitoring system" algorithms he computed.  (*Id*. at 28:5–13.)  He testified that he drew no conclusions from the "red-flag" algorithms he computed.  (*Id*. at 29:21–30:12.)  He testified that he did not use the "suspicious order monitoring system" algorithms to detect suspicious transactions.  (*Id*. at 50:15–51:7.)  He testified that his "suspicious order monitoring system" algorithms do not demonstrate that there was illicit opioid use by chain pharmacy patients.  (*Id*. at 71:17–21.)  And he testified that his "red-flag" algorithms also do not demonstrate that there was illicit opioid use by chain pharmacy patients.  (*Id*. at 76:9–14.)  Nowhere in the record is there any evidence showing that Dr. McCann's computations statistically demonstrate diversion.

fact; Albertsons instead argues that Tarrant County lacks the legal authority to bring this lawsuit and that its claims are legally non-cognizable.  This is true for several reasons.

*First*, Tarrant County is not authorized to bring this case.  Texas law requires it to have statutory authorization from the Texas Legislature before bringing a lawsuit, but the Texas Legislature has never authorized Tarrant County to bring a lawsuit against Albertsons to abate an alleged public nuisance stemming from the sale of prescription opioids.  Further, Tarrant County lacks independent, sovereign authority to bring the case, because it is not the State but instead is a political subdivision of the State, unauthorized to sue in its own sovereign capacity.  Finally, as designed by the Texas Legislature, the Texas Regulatory Consistency Act completely preempts any claim Tarrant County may have had.

*Second*, Tarrant County lacks Article III standing to bring this case.  The Fifth Circuit has emphasized that Texas counties cannot sue for injuries to their citizens.  Because Tarrant County's claims substantively rest on conduct which allegedly harmed Tarrant County citizens, but not the County itself in a substantial and concrete way, it lacks standing to sue.

*Third*, Texas law does not recognize public nuisance claims as pleaded by Tarrant County. There is not a single case in which a Texas court recognizes a public nuisance claim that is not a traditional property claim or a statutory nuisance claim created by a Texas or municipal legislature. Tarrant County's weak analogies and vague suggestions that the Court has already decided this issue is wrong.  This Court has not decided that Texas recognizes public nuisance claims arising from the sale of prescription opioids and this Court, sitting in Ohio, should not expand Texas law

to create a cause of action never recognized by an authoritative Texas court or created by one of its legislatures.

*Fourth*, and finally, even if Tarrant County had authority to bring the case, had standing, and if Texas recognized public nuisance claims in the opioid context—none of which is the case—Tarrant County's negligence claim must be dismissed because, under Texas law, Albertsons did not owe Tarrant County a duty separate from a duty owed to Tarrant County citizens, which are not a party to this litigation.

Tarrant County's case is subject to summary judgment and should be dismissed in its entirety.

## LEGAL ARGUMENT

## I. TEXAS LAW DOES NOT AUTHORIZE TARRANT COUNTY TO BRING ITS COMMON LAW PUBLIC NUISANCE CLAIM.

### A. Plaintiff Tarrant County Admits It Has No Express Statutory Authority To Bring Its Claims; It Also Lacks Any "Implied" Statutory Authority To Sue Albertsons.

Texas counties are subdivisions of the state, lacking inherent sovereign authority, and they may only bring a lawsuit with express or implied statutory authorization from the Texas Legislature.  After many irrelevant factual assertions, Plaintiff Tarrant County finally concedes that *at best* it has implied authority to sue the Albertsons Defendants.  But Texas law does not provide an "implied authority" to bring this lawsuit.  (Opp. at 14.)  To the contrary, the Texas Legislature has tightly constrained Tarrant County's power to sue, and this case does not fit within those limited circumstances.

The Supreme Court of Texas has repeatedly affirmed a core concept in describing the division of powers and duties between the State itself and the State's counties, established in the Texas Constitution: Texas counties are limited to exercising powers granted by the State itself,

3

either by the Texas Constitution or the Texas Legislature.  In *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 27 (Tex. 2003), the Court articulated that county commissioners courts—the legislature for Texas counties—are creatures of the Texas Constitution, but that they are "subject to the [State] Legislature's regulation."  *Id*.  The Court noted that "***a commissioners court may exercise only those powers expressly given by either the Texas Constitution or the Legislature***" and cautioned that apart from powers *necessarily* implied from the same, courts should not view county authority in an "expansive" fashion.  *Id.* at 27, 29; *see also id.* at 31 ("[c]ommissioners courts have limited authority").

Here, as in *San Antonio v. Boerne*, Tarrant County lacks statutory or any other authority to bring this lawsuit.  Indeed, Plaintiff's Opposition appears to concede that no statute expressly authorizes this lawsuit, instead using the phrase "implied authority" four times before arguing that it can bring the lawsuit because "there is no statute expressly *excluding* counties from being able to bring common law public nuisance claims under these circumstances."  (Opp. at 12, 14-15 (emphasis added).)  But that is not Texas law, as the Supreme Court of Texas explained in *San Antonio v. Boerne*.  Grasping at straws, Plaintiff looks for authority for its lawsuit in inapplicable or overly general statutes and the argument that Texas law grants Tarrant County the "implied" power to bring this suit, but both arguments fail.

      **1.   Texas Law Does Not Grant Tarrant County Express Statutory Authority to Bring This Lawsuit.**

Tarrant County's attempt to find authority for this suit in vague or general statutory language instead helps highlight the lack of statutory authority for this lawsuit.  Plaintiff's recitation of the unremarkable fact that a County is a legal subdivision and "corporate and political body" (Opp. at 11) pursuant to Tex. Const. art. XI, § 1; Tex. Local Gov't. Code Ann. § 71.001 does not create in Tarrant County the express and requisite authority to bring this public nuisance

lawsuit against Albertsons.[2]  This is not authority to sue.  Although Tarrant County "may exercise broad discretion in conducting county business, the legal basis for any action taken *must be grounded ultimately in the constitution or statutes*."  *Guynes v. Galveston*, 861 S.W.2d, 861, 863 (Tex. 1993).[3]

Similarly, Tarrant County's reliance on section 121.003(a) of the Texas Health & Safety Code for the proposition that it has express legislative authority to bring suit is inapposite.  Tarrant County argues that its lawsuit is authorized because the Texas Legislature has "expressly stated that 'the commissioner's court of a county may enforce any law that is reasonably necessary to protect public health.'"  (Opp. at 12.)  Tarrant County claims that the Office of the Texas Attorney General "has repeatedly affirmed this authority" (Opp. at 12 n. 37) (citing Tex. Atty. Gen. Op. GA-0507 (2007) ("Counties are charged generally with providing for the health and welfare of persons within the county.") (citing Tex. Health & Safety Code  §§ 121.003(a), 122.001; Tex. Atty. Gen. Op. DM-183 (1992)) ("[T]he counties of this state have general authority to provide for the health and welfare of persons within the county.  State law authorizes the county commissioners court to exercise control over health . . . matters concerning the county and its residents.").  Tarrant County cites no law, however, that can rewrite limited statutory authority for the provision of public health services and expand Tarrant County's authority to prosecute a

---

[2] Plaintiff also cherry-picks quotes from *El Paso Cnty. v. El Paso County Emerg. Services Dist. No. 1*, 622 S.W.3d 25, 33 (Tex. App.—El Paso 2020).  Plaintiff quotes the case for the proposition that "[c]ounty commissioner courts in the state of Texas have broad powers and duties to govern their respective county in a multitude of 'legislative, executive, administrative, and judicial functions'" (Opp. at 11. n. 4.)  But Plaintiff fails to include the next sentence: "Although created by the Texas Constitution, [county commissioners] are subject to directives enumerated by the legislature and *may undertake only that authority explicitly granted either by the Texas constitution or the legislature*." *El Paso*, 622 S.W.3d at 33 (emphasis added).

[3] Plaintiff cites *Guynes v. Galveston*, 861 S.W.2d, 861, 863 (Tex. 1993) to argue that the County has "broad discretion" to initiate a lawsuit. (Opp. at 12.)  *Guynes* states that a county must have express or implied authority to bring a lawsuit.  Tarrant County fails to make this showing here.

5

common law public nuisance action against Albertsons.  There is simply no statutory authority or case law giving Tarrant County the power to sue Albertsons under a public nuisance theory, especially one not recognized by a court or created by a legislature, and courts have rejected similar arguments.  *See City of Boerne*, 111 S.W.3d at 29 (rejecting the argument that a generic grant of authority over "roads" extended to property annexation and declining to "read the Legislature's grant of *general control* to be more expansive than the type of powers set forth [in statute]".) (emphasis added).

Accordingly, Plaintiff's argument must turn on a strained interpretation of the words "enforce" and "any law" to include bringing a common law public nuisance claim, but Plaintiff cites no authority for such an expansive interpretation.  To the contrary, the Office of the Texas Attorney General, in interpreting section 121.003(a) of the Texas Health & Safety Code, stated that to "enforce" means to execute an existing law, not create a new one:

> Texas courts examining the term 'enforce' confine it to mean executing, effectuating, or compelling obedience to an existing law.  *See, e.g., San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 625 (Tex 2020) (quoting the American Heritage Dictionary for the proposition that enforce means to "compel observance of or obedience to"); *Sheppard v. Thomas*, 101 S.W.3d 577, 582 (Tex. App.—Houston [1st Dis.] 2003, *pet. denied*) (quoting Black's Law Dictionary for the proposition that "'enforce' means 'to give force or effect to (a law, etc.); to compel obedience to'").  *See also PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd.,* 146 S.W.3d 79, 84 (Tex. 2004*)* (noting that "[a] statute's silence can be significant" and that an analysis begins with the presumption that the Legislature knows how to enact what it intends).

Opinion No. AC-0003 (August 16, 2023).

In that case, the Texas county argued that it had authority to enact a moratorium on commercial solar projects under the purportedly broad powers granted to Texas counties, but the Texas Attorney General disagreed, finding that actions that do "not seek to enforce *a specific, preexisting public health law*" would likely be found "invalid and unenforceable" by a court.  *Id.*

at 5 (emphasis added).  The Texas Attorney General rejected the argument that section 121.003(a) of the Texas Health & Safety Code grants counties broad police power authority to act.  Section 121.003(a) does not authorize Tarrant County to bring a common law claim for public nuisance— which as noted below is not recognized in Texas for the dispensing of prescription opioids— it only authorizes Tarrant County to enforce a "specific, preexisting public health law."  *Id.*

Consequently, Tarrant County simply ignores Albertsons' argument that nothing in Texas Health & Safety Code Chapter 343—Abatement on Public Nuisances—authorizes Tarrant County to bring this lawsuit.  That statute gives specific authority to abate public nuisances in certain limited circumstances such as "maintaining premises in a manner that creates an unsanitary condition likely to attract or harbor mosquitos, rodents, vermin, or other disease-carrying pests," or "maintaining a flea market in a manner that constitutes a fire hazard," as examples.  Abating a purported public nuisance related to alleged diversion of prescription opioids is absent from the statutory scheme.  In interpreting statutes like this, Texas courts apply the canon of statutory construction *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of another.  *See e.g. United Services Auto Ass'n v. Brite*, 215 S.W.3d 400, 403 (Tex. 2007) (applying the doctrine to construe unambiguous jurisdictional statute).  Because the Texas Legislature has expressly stated in the Texas Health and Safety Code that Texas counties have the authority to abate *certain* defined premises and property-related public nuisance scenarios—which do not include Tarrant County's expanded public nuisance theory—Texas courts would find that such authority does not exist in Texas law.  *Id*.  Moreover, even if Tarrant County had a right to sue to abate the opioid epidemic as a public nuisance, this statute requires that Tarrant County do so in a particular manner which does not include this lawsuit.  *See, e.g.*, Tex. Health & Safety Code §§

343.021 to 343.025; Tex. Health & Safety Code § 343.022(c)(5), (e) (abatement procedures include a notice requirement and hearing if requested).

## 2. Texas Law Does Not Grant Tarrant County Implied Authority to Bring This Lawsuit.

Because Tarrant County lacks express statutory authority to bring this lawsuit, it argues that it has *implied* authority to bring such a suit consistent with *Guynes*, but any such implied authority is limited in Texas law and inapplicable here. The notion that Tarrant County retains "implied powers to control litigation and choose its legal remedies" does not expand its powers outside its limited, "legitimate directives." 861 S.W.2d. at 863.[4] This case is not, like *Guynes*, a case about whether a Texas county can employ attorneys to provide it legal advice. In *Guynes*, a taxpayer challenged Galveston County's use of staff attorneys as an unauthorized, illegal expenditure of county funds. 861 S.W.2d. at 863. The Supreme Court of Texas agreed that the County had properly exercised its implied powers to retain counsel and choose the method of compensation, and the Galveston County Legal Department was simply helping carry out that function. Contrary to Plaintiff's assertions, *Guynes* stands for the unremarkable proposition that, where Texas counties are granted a power by the Texas Legislature like the power to seek legal advice regarding civil matters, Texas counties have an implied power to devote funds and staffing to accomplish that purpose.

---

[4] Plaintiff cites to *Anderson v. Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941) for the proposition that "Tarrant County has the implied authority to exercise any powers necessary to accomplish their duties" (Opp. at 14), but in fact, *Anderson* does not in fact stand for that proposition. Rather, the *Anderson* court specifically states: "Where a right is conferred or obligation imposed on said court, it has implied authority to exercise a broad discretion to **accomplish the purposes intended**." *Id.* (emphasis added). Indeed, a fundamental rule of statutory construction is to ascertain and give effect to the Legislature's intent. *State v. Terrell*, 588 S.W.2d 784, 786 (Tex. 1979); *Imperial Irrigation Co. v. Jayne*, 138 S.W. 575, 581 (1911). As shown here, the Texas Legislature did not intend that the County have the authority to bring a common law nuisance claim as part of its "enforcement powers" under the Texas Public Health & Safety Code.

Unlike in *Guynes*, the Texas Legislature has not granted Tarrant County the authority to declare the filling of prescription opioids a public nuisance or to abate the same.  To the contrary, the Texas Legislature and Supreme Court of Texas have tightly controlled the powers of Texas counties.  *See*, *e.g.*, *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) (rejecting a county's petition to annex a portion of a road from a municipality because it would be an unlawful "expansion" of general powers over roads); *State v. Hollins*, 620 S.W.3d 400, 409 (Tex. 2020) (concluding that implied powers are "not simply convenient" but must be "indispensable" in determining the Texas Election Code did not permit a county clerk to send applications to voters who did not affirmatively request one).

This has been the law for more than a century.  For example, in *Foster v. City of Waco*, 255 S.W. 1104 (Tex 1923), the Texas Supreme Court held that implied powers were those that are "necessarily or fairly implied in or incident[] to the powers expressly granted" or "those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable."  *Id*. at 1105-1106.  The *Foster* court then held that "[a]ny fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."  *Id.*  Because the great weight of authority, and certainly all recent authority, holds that the "implied" authority granted to Texas counties is limited and that any doubt must be resolved *against* an exercise of authority. Here, Tarrant County has no reasonable argument that a lawsuit to abate a public nuisance stemming from the filling of prescription opioids is even ancillary to, let alone a necessary implication, of any "legitimate directive[]" granted to the County by the Texas Constitution or Texas Legislature.  *Guynes*, 861 S.W.2d. at 863.  Accordingly, the Court should find that Texas law does not permit Tarrant County

to bring this lawsuit.[5]

### 3. The *Tuma* Case Bars Any Assertion of *Parens Patriae* Common Law Authority to Sue Because Tarrant County is Not a Sovereign.

Lacking express or implied statutory authority to sue Albertsons, Tarrant County then appears to argue that—even in the absence of authority—it can sue Albertsons citing irrelevant distinctions between the facts of *Tuma v. Kerr County*, 336 S.W.3d 277, 282 (Tex. App. — San Antonio 2010) and this matter.  (Opp. at 14-15.)  Specifically, Plaintiff claims that *Tuma*'s central holding does not apply because (1) *Tuma* involved a statutory claim, not common-law claims; (2) Albertsons' alleged conduct supposedly threatened the public health, interfering with Tarrant County's duties; (3) an incorrect assertion that Tarrant County has statutory authority for its claims; (4) Tarrant County was "directly harmed" by Albertsons' alleged conduct; and (5) "there is no statute expressly excluding counties from being able to bring common law public nuisance claims under these circumstances."  (*Id.*)

These distinctions are either irrelevant or incorrect, and it does not change *Tuma*'s central holding: counties in Texas, *as a matter of law*, have no power to sue on behalf of their citizens to protect their rights because a County's rights are "derivative not sovereign."  336 S.W. at 282. The factual distinctions cited by Tarrant County do not compel a different result.  Specifically:

- Tarrant County does not explain why it would have sovereign *parens patriae* authority to bring a common law claim but not a statutory claim and it fails to provide authority for this

---

[5] Tarrant County argues in its Opposition that in the Texas state court opioid litigation, the trial court "rejected similar arguments that the county plaintiffs lacked authority to bring public nuisance claims against opioid manufacturers distributors and pharmacies" (Opp. at 14).  But this is a trial court which issued no opinion, offered no reasoning, and denied a motion to dismiss equivalent against a different set of defendants under different circumstances.  This Court is bound to follow Texas appellate precedent on these issues and that single order has no bearing on this matter.

proposition or purported distinction.

- Contrary to Plaintiff's assertions, the facts of *Tuma* did involve a public health issue: the registration requirements found in Texas law for owners of dangerous animals.

- While Tarrant County appears to plead limited funding-related injuries in the Complaint for alleged damage to the County as an entity, the central claim it is making relates to damages allegedly suffered by the citizens of Tarrant County.[6]

- Plaintiff's assertion of statutory authority is incorrect as noted above, and Plaintiff's assertion that it is free to sue because "no statute expressly exclud[es]" the suit is likewise incorrect—Texas law requires that Texas counties have express or implied authority for any action they take. *See City of Boerne*, 111 S.W.3d at 27.

The Supreme Court of Texas rejected a similar argument in *Farmers Grp., Inc. v. Lubin*, 222 S.W.3d 417 (Tex. 2007) (a case cited by the *Tuma* court). There, the Attorney General argued it had standing under the *parens patriae* doctrine to bring a class action under the Texas Insurance Code. But the Supreme Court of Texas rejected the State's argument, explaining that "[w]hile individual insureds may not have the resources of an attorney general, they are certainly capable of bringing class actions themselves as the Intervenors here vigorously demonstrate." *Id.* at 423-24. The *Farmers* Court reiterated that even *state*-level entities need express authorization from the Texas Legislature to sue for the injuries of Texas citizens:

> . . . [T]he doctrine [of Parens Patriae] has been invoked in other states to authorize government suits against makers and sellers of tobacco, lead paint, and guns. *See*

---

[6] *See, e.g.*, Compl. ¶ 771 (alleging the Pharmacy Defendants are liable not only for the funds the County expended but also more generally for "creating the opioid epidemic"); ¶ 765 ("The Pharmacy Defendants' conduct has affected and continues to affect a considerable number of people within Tarrant County and is likely to continue to cause significant harm to patients who take opioids, their families, and the community at large."); ¶ 755 ("[E]ach Pharmacy Defendant should have known that . . . diversion and the associated harms and resulting interference with public health, safety, and welfare would occur.").)

*Perry v. Del Rio,* 67 S.W.3d 85, 92 (Tex. 2001). ("[T]he Attorney General can only act within the limits of the Texas Constitution and statutes, and courts cannot enlarge the Attorney General's powers."). The Legislature has shown a high interest in policing such suits by government entities. We cannot authorize a broader role for the attorneys general than the Legislature has.

*Id.* at 424.

Texas courts are unwilling to allow *parens patriae* actions to proceed absent express authority from the Legislature, and so this Court should likewise not create a "broader role for the [County] than the Texas Legislature has." *Id.* This Court should reject any assertion that Plaintiff has a right to sue as *parens patriae* under Texas law.[7]

**B.    The Texas Regulatory Consistency Act Bars Plaintiff's Public Nuisance Claim.**

Plaintiff's argument that the Texas Regulatory Consistency Act ("TRCA")—a preemption law, expressly designed to constrain the actions of local government entities like Plaintiff—does not apply to its claim is both incorrect and circular in reasoning.

Tarrant County's argument is incorrect because, if accepted, it would render the TRCA meaningless when its express purpose is to remove authority from local governments like Tarrant County. The Texas Legislature passed the TRCA to "return the historic exclusive regulatory powers to the state where those powers belong." Tex. H.B. 2127; Tex. S.B. 814. Clear on the statute's purpose, the chosen method is simple: sweeping field preemption provisions, which "preclude municipalities or counties from adopting or enforcing an ordinance, order, rule, or policy in a field occupied by a provision of this code unless explicitly authorized by statute[.]" Tex. Occ. Code § 1.004. Plaintiff admits that pharmacies are regulated

---

[7] Under the *Erie* doctrine, it is Texas's formulation of the *parens patriae* doctrine that matters, not that of any other state or any formulation found in federal law. The Court must "apply Texas law," including its law regarding statutes of limitations. *Ocwen Loan Servicing, L.L.C. v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987); *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980).

by this code (Opp. at 19), so any attempt by Tarrant County to further regulate Albertsons by "ordinance, order, rule, or policy" in a manner that goes beyond the Texas Pharmacy Act[8] is "void and unenforceable." *Id*; *see also City of Webster v. Signad, Inc.*, 682 S.W.2d 644, 648 (Tex. App. — Houston 1984) (granting summary judgment where the "legal basis" for the action was "unsound" and "void and enforceable" under Texas law).

Tarrant County's argument is circular because it depends on the argument that Plaintiff "is not seeking to . . . '*enforce*' . . . an ordinance, order or rule regulating conduct" apart from those contained in the Texas Pharmacy Act. (Opp. at 20 (quoting Tex. Occ. Code § 1.004) (emphasis added).) But the entire purported authority for Tarrant County to sue in the first place is that its lawsuit is an attempt to "*enforce* laws necessary to protect the public health" which have nothing to do with the requirements found in the Texas Pharmacy Act. (Opp. at 15 (emphasis added); *see* Opp. at 12.) To try to create express authority for its lawsuit, Tarrant County argues for a broad definition of "enforce" in one context, but to avoid TCRA preemption, it argues for a narrow definition of the same term.

Tarrant County's cited authority does not change this result. It cites a series of cases that purportedly stand for the proposition that the common law should not be abrogated here. *See*, *e.g.*, *Cash America Int'l v. Bennet*, 35 S.W.3d 12, 15 (Tex. 2000); *Longhorn Creed Ltd. v. Gardens of Connemara Ltd*, 686 S.W.3d 418, 429(Tex. App. — Dallas 2024). *Cash America* did not interpret the TRCA, which did not exist in 2000, and merely stands for the notion that preemption provisions

---

[8] While Tarrant County's claims in the Complaint are styled as common law nuisance claims, Plaintiff admits this is inappropriate because in Texas, nuisance is not the underlying claim but is a legal injury. (Opp. at 24); *see also Crosstex N. Texas Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 599 (Tex. 2016). Plaintiff's claims are grounded in Albertsons' distribution and dispensing of prescription opioids, which are actions taken because of Albertsons' regulation by the authority of the Texas Pharmacy Act in the Occupations Code. *See* Tex. Occ. Code § 551 *et seq*.

must be clearly applicable to be enforced. *Longhorn Creed* similarly explains that statutes which directly conflict with common law claims preempt the common law claim—which is the case here, as there is a direct conflict between a common law nuisance claim and the TRCA which limits Tarrant County's ability to enforce any law beyond the Texas Pharmacy Act. The TRCA goes beyond conflict preemption into field preemption, that is when a common law cause of action "may stand as an obstacle to the accomplishment and execution of the full purpose and objectives" of a statute. *See Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31 (1996). Plaintiff's claims are preempted and should be dismissed.

## II. TARRANT COUNTY HAS NO ARTICLE III STANDING TO PURSUE ITS CLAIM.

Tarrant County lacks statutory authority to bring its claim, and even if it did, Tarrant County's claims are barred by the TRCA. But Plaintiff has also failed to show how it suffered an injury in a "personal and individual way" to create Article III standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) ("For an injury to be particularized, it must affect the plaintiff in a personal and individual way.") (quotation omitted).

Tarrant County's Opposition fails to articulate how it, as an entity, has suffered particular and direct harm to confer Article III standing when at the same time it is suing because it is attempting to enforce a right that has been infringed on which is "common to the general public.'" *See Jamail v. Stoneledge Condo Owners Ass'n*, 970 S.W.2d 673, 676 (Tex. App. — Austin 1998) (quoting Restatement (Second) of Torts § 821(B)(1)(a)-(c)(1979)). Plaintiff argues that the "strains on Plaintiff's resources and its ability to provide necessary governmental services to its residents are injuries distinct to Plaintiff." (Opp. at 17). But the bulk of allegations in the Complaint go far beyond any such incidental injuries, seeking to recover for a purported opioid epidemic in Tarrant County. (*See, e.g.*, Compl. ¶ 771 (defendants liable for "creating the opioid

epidemic"); ¶ 765 (defendants' conduct affected "a considerable number of people within Tarrant County"); ¶ 755 (alleging harm to "public health, safety, and welfare").)

However, Tarrant County cannot ignore that the leading precedent in the Fifth Circuit[9], *El Paso Cnty., Texas v. Trump*, 982 F.3d 332 (5th Cir. 2020) has rejected a similar argument to that made by Tarrant County.  Here, as in *El Paso*, Tarrant County's actual claim as pleaded is an attempt to "assert the economic injuries of its citizens on their behalf as *parens patriae*."  *Id*. at 338.  Tarrant County's limited allegations of direct harm is precisely the sort of "incidental economic impact" on counties resulting from the actions of other parties which do not suffice to create Article III standing.  *Id.* at 338.  Tarrant County's Complaint seeks to recover for an economic injury suffered by its citizens because of a purported opioid epidemic, which it is not permitted to do, and it does not have Article III standing to bring its own claim as pleaded.

## III.  THERE IS NO HISTORICAL PRECEDENT FOR A COMMON LAW NUISANCE CLAIM AGAINST THE SALE OF A LEGAL PRODUCT NOT STATUTORILY ENUMERATED AS A "PUBLIC NUISANCE."

Tarrant County claims that Texas has historically deemed the sale of certain goods a public nuisance, and yet it has not identified a single case where Texas has recognized a non-property-based nuisance that was not ***already*** expressly declared a nuisance by the Texas legislature or a local municipality.  None of Plaintiff's cited cases in its Opposition stand for the idea that Texas has ever recognized the type of public nuisance claim at issue, a nuisance claim that is being brought without any authority from the Texas Legislature or its municipal legislatures.

---

[9] Plaintiff does not appear to contest that Fifth Circuit law ultimately governs the question of standing.  To the extent circuit laws differ, it would be an absurd result for this Court to find that standing exists under Sixth Circuit precedent, only to have the case dismissed under Fifth Circuit precedent upon return to the transferor court.  *See In re Caridzem CD Antitrust Litig*., 332 F.3d 896, 918, n. 17 (6th Circ. 2003) ("[I]t is not clear that precedent 'unique' to a particular circuit" should be applied to claims arising in other circuits in an MDL context).

Tarrant County does not contest the fact that, in Texas, a public nuisance is "a condition that amounts to 'an unreasonable interference with a right common to the general public.'" *Jamail*, 970 S.W.2d at 676 (quoting Restatement (Second) of Torts § 821(B)(1)(1979)). But Plaintiff argues that "Texas courts consistently define 'public nuisance' in much broader terms." (Opp. at 25.) However, the authority Tarrant County cites negates the contention that Texas courts take an expansive view of public nuisance. For example, the County cites *Lake Travis Indep. Sch. Dist. v. Lovelace*, 243 S.W.3d 244 (Tex. App. — Austin 2007) for this point, but the *Lovelace* court found as a matter of law that the school district was precluded from bringing the lawsuit and ultimately dismissed the case.

The County likewise cites *Texas Cent. Partners, LLC v. Grimes Cnty.*, 580 S.W.3d 824, 830 (Tex. App. — Houston 2019, no pet.) but this case is inapposite as there the County sued a railroad for purportedly damaging four county roads but only sought injunctive relief, not damages. Nor was there any dispute over whether the County had standing to sue over injury to the roads it owned—a traditional property-based nuisance claim. The County's citation to *Jamail*, S.W.2d at 676 is also inapt as that case involved a property dispute between private parties and did not involve whether a government entity had standing to bring a common law nuisance claim involving the sale of prescription opioids. The cases Tarrant County cites otherwise do not address whether the County has the right to bring a public nuisance action of this kind and scope under Texas law, nor do they show that Texas courts have recognized a broadened view of public nuisance claims.[10]

---

[10] *See, e.g., Prantil v. Arkema Inc.*, 986 F.3d 570, 577 n.30 (5th Cir. 2021)(involving dispute between private property owners and chemical plant); *Callier v. MultiPlan, Inc.,* No. EP-20-CV-00318-FM, 2021 WL 8053527, at *9 (W.D. Tex. Aug. 26, 2021)(a dispute between private parties which noted that the injury to Plaintiff's privacy interest has a "historical analogue" in public

Although Tarrant County cites a number of cases, ostensibly in support of its positions, none of these cases address the argument raised by Albertsons in its opening brief: the doctrine of public nuisance is a narrow doctrine in Texas and Plaintiff cannot cite any case when a party brought a public nuisance claim untethered to a traditional property context or a specific statute declaring the sale of something—*e.g.,* fireworks—to be a public nuisance.

## IV.   TARRANT COUNTY'S ARGUMENT THAT ALBERTSONS HAS A LEGAL DUTY TO THE COUNTY LIKEWISE FAILS.

### A.   Tarrant County Seeks to Impose a Common Law Duty Unrecognized in Texas.

Tarrant County argues that this Court should impose a common law duty of care on Albertsons based on its obligations under the Controlled Substances Act ("CSA") and the Texas Pharmacy Act regarding the dispensing and distribution of prescription opioids, even though no case in Texas stands for the proposition that such a duty exists.  (Opp. at 31.)  Plaintiff, citing Texas case law, also acknowledges that the touchstone of imposing a duty on an actor is whether that duty is foreseeable.[11] (Opp. at 29-30.)  Here, the duties Tarrant County wants to impose were not foreseeable to Albertsons under Texas law.

---

nuisance"); *State v. Spartan's Industries*, Inc., 447 S.W.2d 407, 413 (Tex. 1969) (private-party constitutional challenge to Sunday closing laws).

[11] Plaintiff asserts that in *El Chico Corp. v. Poole*, S.W.2d 306, 311, 312 (Tex. 1987) the court imposed a common law duty on alcohol providers to third parties resulting from a patron's intoxication. (*See* Opp. at 29 n. 60.)  Plaintiff notes that the duty was superseded by the Texas Legislature's enactment of the Dram Shop Act, which provides for the exclusive basis for civil liability against alcohol providers.  Plaintiff asserts there is "no similar statute precluding Plaintiff's common law claims here."  (*Id*.)  But as the Fifth Circuit just explained in *Martinez v. Walgreen Co*. "the Texas legislature enacted the Dram Shop Act to supplant judicially created liability with a statutory remedy, limiting liability for alcoholic beverage providers in the process." 935 F.3d at 401.  This demonstrates that "liability between providers of potentially dangerous substances and injured third parties involves delicate policy determinations" for the Legislature, not courts, to make.  *Id.*  Here any liability imposed on pharmacies—which has state-wide and national implications like the distribution of prescription opiates—is something the Legislature should decide.  Second, as *Martinez* points out and is relevant here, "this case presents different public policy considerations from where a licensee provides alcohol to an already intoxicated person: the social value of pharmacy work is higher than the social value of dram shops, and the

During the relevant time period, Texas only required that (1) a pharmacist "exercise sound professional judgment with respect to the accuracy and authenticity" of prescription medications, and it must "verify the order with the practitioner prior to dispensing" if the pharmacist questioned the "accuracy or authenticity" of the prescription drug order; and (2) a pharmacist make "every reasonable effort" to ensure that prescription medications are issued for a "legitimate medical purpose" by a provider.  22 Tex. Admin Code § 291.29.  But during almost all of the relevant period, there was no specific statutory or regulatory definition setting forth a pharmacist's duties in determining the "exercise" of "sound professional judgment" by a pharmacist with respect to the "accuracy and authenticity" of a prescription drug order.  In 2018—after most of the relevant period alleged in the Complaint had passed—Texas added as subsection (f) a list of nineteen "red flag" factors "relevant to preventing non-therapeutic dispensing of controlled substances to be considered by a pharmacist in evaluating the totality of the circumstances before dispensing a controlled substance prescription."  *See* Tex. Reg., Vol. 43, Num. 36, pp. 5719-5874 (September 7, 2018).  This requirement was imposed in late 2018 — the very end of the relevant period — and only required that pharmacists consider the red flag factors as part of the "totality of the circumstances."  And yet, the bulk of Plaintiff's claims against Albertsons relate to the idea that Albertsons purportedly failed to identify, investigate, and document red flags and thus turned a blind eye to evidence of illegitimate opioid prescriptions being filled by its pharmacies.  (Opp. at 3-4.)  However, these stringent duties Tarrant County seek to impose—requiring that Albertsons refuse a prescription with the existence of one red flag alone—do not exist under current Texas

---

foreseeability of the harm that occurred in this case pales in comparison to the foreseeable harm caused by serving alcohol to intoxicated bar patrons who will then drive."  *Id.*

law, which only requires a "totality of the circumstances" review and did not exist in any form under Texas law for almost all of the relevant time period.

**B.    Any Duty That May Exist is Not Owed to Tarrant County.**

Tarrant County simply fails to address the argument that no Texas precedent demonstrates that Albertsons owed Tarrant County—as an entity—any duty separate from the duty it owed to Tarrant County citizens, who as noted above are not represented by Tarrant County in any sovereign capacity.

Plaintiff argues that the circumstances that led the Fifth Circuit in *Martinez v. Walgreen Co.*, 935 F.3d 396 (5th Cir. 2019) not to recognize a duty in that case are "distinguishable."  (*See* Opp. at 33.)  But, at base level, the similar facts of *Martinez* led to legal principles that apply with equal force here.  *Martinez* addressed whether a pharmacy owes a duty to a third party— here, Tarrant County—for harms resulting from allegedly improper prescription medication dispensing.[12] Plaintiff's attempts to distinguish *Martinez* do not pass muster.  In *Martinez*, as here, the plaintiff alleged that a violation of a pharmacy's statutory duty to not incorrectly dispense medication led to harm.  *Martinez*, 935 F.3d at 398 (noting the negligence per se argument, which was based on alleged violation of Tex. Health & Safety Code § 483.042).  In *Martinez*, as here, the plaintiff alleged that incorrect prescription dispensing led to foreseeable harm to an identifiable third party, in that case, people who might be injured by the person ingesting the medication.  *Id.*  Despite these similarities, the *Martinez* court noted the Supreme Court of Texas's reluctance to recognize new duties even in the context of statutory violations, in light of the substantial regulatory system

---

[12] Albertsons vigorously disputes Plaintiff's inappropriate and incorrect factual characterizations, although they are simply irrelevant to the Court's disposition of Albertsons' motion for summary judgment which rests entirely on legal, rather than factual, grounds.

for pharmacies.  In particular, the *Martinez* court's conclusion that any duty imposed on the pharmacy would conflict with Texas's elaborate legislative scheme is particularly relevant:

> . . . [T]he Texas legislature has shown itself to be both willing and able to undertake the public policy balancing inherent in extensive regulation of pharmacies' treatment of prescription drugs. For example, Texas law allows pharmacies to dispense dangerous drugs—including any drug that requires a prescription, such as glyburide metformin—only to those with valid prescriptions. It sets forth extensive labeling requirements, including that the label be easily readable and include the name of the patient and the drug's brand name or generic name. Further, it imposes criminal liability on pharmacists who dispense dangerous drugs without prescriptions or fail to comply with labeling requirements, and imposes civil penalties on those who unlawfully engage in the practice of pharmacy.  That is, the legislature has detailed other protections against the risk, and a tort duty to third parties would be in tension with this extensive regulatory scheme. This bolsters our conclusion that the Texas Supreme Court would not recognize a duty of care owed by Walgreens to the plaintiffs in this case.

*Id.* at 404.

Plaintiff's reading of this case is simply wrong.  The same extensive regulatory scheme the *Martinez* court discussed relating to dispensing of "dangerous" drugs, is the regulatory scheme here.  The conclusion the *Martinez* court draws that recognizing a third-party tort duty would be "in tension" with this regulatory scheme applies here.  *Id.*  There is no reason why the Court should be dissuaded from applying *Martinez* in reaching its decision about whether Texas courts would impose a duty on Albertsons to the County.  As in *Martinez*, Tarrant County is not a foreseeably injured party as a result of allegedly improper opioid dispensing, and Albertsons owed it no duty under Texas law.

## **CONCLUSION**

For all these reasons, and the reasons set forth in the Motion, Albertsons requests that this Court grant its Motion.

Dated:  November 12, 2024                    Respectfully submitted,
                                             By:  */s/  Francis A. Citera*
                                             One of Defendants' Attorneys

Francis A. Citera, citeraf@gtlaw.com
Gretchen N. Miller, millerg@gtlaw.com
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL  60601
Tel: (312) 456-8400
Fax: (312) 456-8435

*Counsel for Defendants Albertsons, Inc.,
Albertsons, LLC, Safeway, Inc., Randall's
Food & Drug, LP, and United Supermarkets,
LLC*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on November 12, 2024 a true and correct copy of the

Albertsons Defendants' Reply Memorandum in Further Support of Motion for Summary Judgment

was served on the parties of record using the CM/ECF system.

*/s/ Francis A. Citera*

Francis A. Citera
