# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF OHIO

### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL 2804 |
| *This document relates to:* | Case No. 17-md-2804 |
| Optum and Express Scripts cases listed in ECF Nos. 5546-1, 5547-1, 5548-1, 5565-1 | Hon. Dan Aaron Polster |

## PEC'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STRIKE CERTAIN PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ II

INTRODUCTION ..................................................................................................................... 1

APPLICABLE LEGAL STANDARDS ........................................................................................... 2

ARGUMENT .......................................................................................................................... 6

    1.    NONE OF THE PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND SHOULD BE
        STRUCK ...................................................................................................... 6

        A.    Neither Rule 37(e) Nor the Court's Inherent Power Provides Legal
            Authority for the Relief Defendants Seek ............................................ 6

            1.    *Defendants Have Not Shown that Sanctions Are Warranted* ....... 6

            2.    *The Mere Absence of a Litigation Hold Letter Cannot be the Basis*
               *of Sanctions* ................................................................................ 12

        B.    The Bellwether Process Is and Should Remain Distinct from the
            Motions for Leave to Amend ............................................................ 14

    II.    DEFENDANTS ARE NOT ENTITLED TO DISCOVERY ............................................. 18

CONCLUSION ..................................................................................................................... 23

CERTIFICATE OF SERVICE .................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Adamczyk v. Sch. Dist.*,
667 F. Supp. 3d 534 (E.D. Mich. 2023) ................................................................5

*Adkins v. Wolever*,
554 F.3d 650 (6th Cir. 2009) ..................................................................2, 3, 11

*Applebaum v. Target Corp.*,
831 F.3d 740 (6th Cir. 2016) ......................................................................6, 11

*Arch Ins. Co. v. Broan-NuTone, LLC*,
509 F. App'x 453 (6th Cir. 2012) ....................................................................11

*Automated Sols. Corp. v. Paragon Data Sys., Inc.*,
756 F.3d 504 (6th Cir. 2014) ............................................................................14

*Bailey v. Michigan Dept. of Corrections*,
342 F.R.D. 420 (E.D. Mich. 2022) ....................................................................9

*Beaven v. U.S. Dep't of Justice*,
622 F.3d 540 (6th Cir. 2010) ..................................................................3, 4, 7, 11

*Beil v. Lakewood Eng'g and Mfg. Co.*,
15 F.3d 546 (6th Cir. 1994) ..............................................................................12

*In re Chevron U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997) ..........................................................................15

*Chin v. Port Auth. of N.Y. & N.J.*,
685 F.3d 135 (2nd Cir. 2012) ..........................................................................13

*Crown Battery Mfg. Co. v. Club Car, Inc.*,
185 F. Supp. 3d 987 (N.D. Ohio 2016) .............................................................7

*Davis S R Aviation, LLC v. Rolls–Royce Deutschland Ltd. & Co. KG*,
2012 WL 175966 (W.D. Tex. Jan. 20, 2012) ..................................................13

*In re Deepwater Horizon*,
907 F.3d 232 (5th Cir. 2018) ....................................................................11, 21

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
770 F. Supp. 2d 1299 (N.D. Ga. 2011) ...........................................................10

*Dombrowski v. Lumpkin Cnty.*,
2013 WL 2099137 (N.D. Ga. Mar. 21, 2013).................................................12

*Downing v. Abbott Labs.*,
2017 WL 11812654 (N.D. Ill. Nov. 2, 2017).............................................19, 20

3132703.1

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  513 F. Supp. 3d 839 (N.D. Ill. 2021) ................................................................7

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
  54 F.4th 912 (6th Cir. 2022), *cert. denied*, 144 S. Ct. 16 (2023) ...........................16

*Ed Schmidt Pontiac-GMC Truck, Inc. v. Chrysler Motors Co., LLC*,
  575 F. Supp. 2d 837 (N.D. Ohio 2008) ...........................................................12

*Edwards v. Scripps Media, Inc.*,
  331 F.R.D. 116 (E.D. Mich. 2019) .................................................................20

*In re Ethicon, Inc. Pelvic Repair Sys. Product Liab. Litig.*,
  299 F.R.D. 502 (S.D.W. Va. 2014) .................................................................10

*Goodale v. Elavon, Inc.*,
  No. 23-5013, 2023 WL 9111441 (6th Cir. Dec. 12, 2023) .......................................3

*Herrmann v. Rain Link, Inc.*,
  No. 11-1123-RDR, 2013 WL 4028759 (D. Kan. Aug. 7, 2013) ...............................13

*Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.*,
  528 U.S. 458 (2000) ....................................................................................6

*Kean v. Brinker Int'l, Inc.*,
  2024 WL 1815346 (M.D. Tenn. Apr. 25, 2024) ..................................................5

*Kemper Mortg., Inc. v. Russell*,
  2006 WL 2319858 (S.D. Ohio Apr. 18, 2006) ....................................................14

*Kostic v. Texas A & M Univ. at Commerce*,
  3:10-CV-2265-M, 2013 WL 3356263 (N.D. Tex. July 3, 2013) ...............................13

*Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*,
  94 F. Supp. 3d 893 (S.D. Ohio 2015) ........................................................4, 9, 20

*McCarty v. Covol Fuels No. 2, LLC*,
  644 F. App'x 372 (6th Cir. 2016) ...............................................................4, 11

*Mooradian v. FCA US, LLC*,
  286 F. Supp. 3d 865 (N.D. Ohio 2017) ...........................................................7

*Mosley v. Marriot Int'l, Inc.*,
  2024 WL 1224241 (E.D. Mich. Mar. 21, 2024) .................................................10

*Nat'l Labor Relations Bd. v. Bannum, Inc.*,
  93 F.4th 973 (6th Cir. 2024) .........................................................................3

*Point Blank Sols., Inc. v. Toyobo Am., Inc.*,
  2011 WL 1456029 (S.D. Fla. Apr. 5, 2011) ......................................................10

*Pollard v. City of Columbus, Ohio*,
  2013 WL 5334028 (S.D. Ohio Sept. 23, 2013) ...................................................7

iii

*Radiologix, Inc. v. Radiology & Nuclear Med., LLC,*
    2019 WL 354972 (D. Kan. Jan. 29, 2019) ......................................................14

*Rahman v. The Smith & Wollensky Restaurant Grp., Inc.,*
    2009 WL 773344 (S.D.N.Y. Mar. 18, 2009) ..................................................13

*Ross v. Am. Red Cross,*
    567 F. App'x 296 (6th Cir. 2014) ....................................................................3

*School-Link Techs., Inc. v. Applied Res., Inc.,*
    2007 WL 677647 (D. Kan. Feb. 28, 2007) ....................................................13

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.,*
    No. 22-MD-03047-YGR (PHK), 2024 WL 3498235 (N.D. Cal. July 19,
    2024) ..............................................................................................................23

*Steuben Foods, Inc. v. Country Gourmet Foods, LLC,*
    2011 WL 1549450 (W.D.N.Y. Apr. 21, 2011) .........................................19, 20

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.,*
    2009 WL 690603 (S.D. Ohio Mar. 12, 2009) ...........................................5, 12

*Thomas v. Cricket Wireless, LLC,*
    2020 WL 7344742 (N.D. Cal. Dec. 14, 2020) ..............................................20

*Town of Westport v. Monsanto Co.,*
    2015 WL 13685384 (D. Mass. Nov. 5, 2015) ...............................................19

*Town of Westport v. Monsanto Co.,*
    No. 14-12041, 2015 WL 13685105 (D. Mass. Nov. 5, 2015)..........................10

*United States v. Copeland,*
    321 F.3d 582 (6th Cir. 2003) ..........................................................................3

*USI Ins. Servs. LLC v. Bentz,*
    2020 WL 7753690 (D.N.D. Dec. 29, 2020) ..................................................12

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC,*
    2014 WL 6851607 (S.D. Cal. June 16, 2014) .................................................7

*In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.,*
    711 F. Supp. 3d 317 (E.D. Penn. 2022) .........................................................11

*In re Zostavax,*
    711 F. Supp. 3d at 322–23 .............................................................................21

*Zubulake v. UBS Warburg LLC,*
    220 F.R.D. 212 (S.D.N.Y. 2003).................................................................3, 14

**Court Rules**

Fed. R. Civ. P. 26......................................................................................................9

Fed. R. Civ. P. 26(b)(1) ..........................................................................................22

Fed. R. Civ. P. 30(b)(6) ..................................................................20, 21

Fed. R. Civ. P. 37.............................................................................. *passim*

Fed. R. Civ. P. 37(e) .......................................................................... *passim*

Fed. R. Civ. P. 37(e)(2) ...........................................................................12

Fed. R. Civ. P. 41(b) ...............................................................................11

**Other Authorities**

Fallon, Eldon, Graybill, Jeremy, Wynne, Robert, *Bellwether Trials in
Multidistrict Litigation*, 82 TULANE LAW REVIEW 2323 ....................16

*Guide for Transferee Judges* at 22-29 ......................................................18

Hon. Craig B. Shaffer, *Deconstructing "Discovery About Discovery,"* 19
SEDONA CONF. J. 215 (2018) ...............................................................19

*Manual for Complex Lit.* § 22.315 (4th ed.) ...............................................15

*Manual For Complex Litigation* § 33.27 (3d ed.1995) .............................15

Sedona Conference, *The Sedona Conference Commentary on Legal Holds: The
Trigger & the Process* ("*Sedona Commentary on Legal Holds*"), 11 Sedona
Conf. J. 265, 278 (2010) ........................................................................9

Sedona Conference, *The Sedona Principles, Third Edition: Best Practices,
Recommendations & Principles for Addressing Electronic Document
Production A Project of the Sedona Conference Working Group on Electronic
Document Retention and Production*, 19 SEDONA CONF. J. 1, 123-25, cmt.
6.b. (2018)..............................................................................................19

Whitney, Melissa, *Bellwether Trials in MDL Proceedings: A Guide for
Transferee Judges* (Fed. Juc. Ctr. and JPML 2019).........................15, 16

v

## INTRODUCTION

Defendants' motion to strike hundreds of plaintiffs from the motions for leave to amend fails to identify any authority for the Court to grant the relief they seek and grossly distorts and misstates the law regarding the preservation of documents. The motion follows a months-long campaign of harassment of bellwether and potential bellwether plaintiffs about their litigation hold letters, none of it grounded in any recognizable legal doctrine. Contrary to Defendants' argument, the mere failure timely to send a litigation hold letter does not constitute "spoliation" and cannot be the basis for any type of spoliation sanction, much less the extraordinary one they seek. Moreover, even when sanctions are appropriate, only the most egregious intentional spoliation (of which there is not a scintilla of evidence here) will result in the outright loss of the right to pursue a claim.

Untethered to the legal rules governing spoliation of evidence, Defendants' motion fails to establish any basis for the Court to address plaintiffs' preservation efforts or to impose any sanction whatsoever. Defendants compound these shortcomings by conflating the requirements for bellwether plaintiffs with those pertaining to the amendment of pleadings; the issues are entirely distinct. It is not, and ought not to be, a prerequisite to asserting a claim that the plaintiff must also be suitable as a bellwether. Defendants have confused this Court's concerns about gamesmanship in the bellwether process, which focused on a plaintiff's *willingness* to serve as a bellwether, with a blanket requirement that a plaintiff must be a suitable bellwether even to seek leave to add claims against the PBMs. If Defendants believe that the circumstances surrounding a litigation

1

hold render a particular plaintiff or group of plaintiffs unsuitable to serve as bellwethers, they are free not to select those plaintiffs – although the PEC notes that the plaintiffs who have sought leave to amend and who are the subject of this motion are not even eligible to become bellwethers at this time. What Defendants may not do is deprive a plaintiff of an opportunity to bring its claims in the first place as a purported sanction for spoliation they cannot show occurred.

Perhaps aware of how far they fall short of establishing any basis for sanctions, Defendants also seek massive discovery from these plaintiffs concerning their document retention practices. This request, too, should be denied. As with the portion of their motion seeking sanctions, Defendants fail to meet the legal requirements for the "discovery on discovery" relief they seek. Moreover, as already noted, the status of document preservation has nothing to do with whether a plaintiff should be given leave to amend its complaint. And, once the motions for leave are decided, *every one of these cases will be stayed whether leave to add the PBMs is granted or not.* That is because none of these cases is a bellwether case or even under consideration to become bellwether cases. The discovery Defendants seek thus can serve no purpose whatsoever other than to harass the plaintiffs and derail the ongoing work of this MDL.

The motion should be denied in its entirety.

## APPLICABLE LEGAL STANDARDS

### The Court's Inherent Power and the Common Law of Spoliation

Federal courts have traditionally addressed the spoliation of evidence through the Court's "inherent power to control the judicial process." *Adkins v. Wolever*, 554 F.3d 650,

3132703.1

652 (6th Cir. 2009).[1]  In this context, "[s]poliation is 'the *intentional* destruction of evidence that is presumed to be unfavorable to the party responsible for its destruction.'" *Ross v. Am. Red Cross*, 567 F. App'x 296, 301–02 (6th Cir. 2014) (quoting *United States v. Copeland*, 321 F.3d 582, 597 (6th Cir. 2003) (emphasis added)).

The Sixth Circuit has explained the standard for determining whether a spoliation sanction is appropriate as requiring the party seeking such a sanction to establish: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *See Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (internal quotation marks and citation omitted); *see also Goodale v. Elavon, Inc.*, No. 23-5013, 2023 WL 9111441, at *4 (6th Cir. Dec. 12, 2023). This test is "conjunctive." *Adkins*, 692 F.3d at 504.

Implicit in spoliation is the requirement that the evidence be actually lost or destroyed. *Nat'l Labor Relations Bd. v. Bannum, Inc.*, 93 F.4th 973, 983 (6th Cir. 2024).  With

---

[1] Even before the adoption of Rule 37(e), specifying sanctions for the loss of electronically stored information ("ESI"), some courts cited Rule 37 as a source of authority with respect to spoliation sanctions.  *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 & n.12 (S.D.N.Y. 2003).  Outside the context of the destruction of evidence already the subject of an order compelling production, however, older cases citing Rule 37 generally did not identify a specific applicable provision of that rule, nor did they not suggest that Rule 37 addressed any conduct that could not be addressed through the jurisprudence of the court's inherent power and traditional common law doctrines of spoliation.  Defendants suggest that the failure timely to send a litigation hold letter in this MDL may have been a violation of CMO 1, *See* Def. Mem. at 10, but the PEC notes that CMO 1 simply "reminded" the parties of their preexisting preservation obligations; it did not order any party to do anything.

respect to the relevance element of spoliation, "the party seeking a spoliation sanction must 'ma[ke] some showing indicating that the destroyed evidence would have been relevant to the contested issue.'" *McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 379 (6th Cir. 2016) (quoting *Beaven*, 622 F.3d at 554) (some internal quotation marks omitted). What a party was obliged to preserve is limited by both proportionality and reasonableness; it is not an absolute, blanket obligation. *See Little Hocking Water Assn., Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 918 (S.D. Ohio 2015) and *infra* at Point III-A. Finally, a party's "culpable state of mind" may be established "by a showing that the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently." *Beaven*, 622 F.3d at 554.  Without satisfaction of all four elements -- actual destruction, an obligation to preserve, a culpable state of mind, and relevance – there is no spoliation and no basis to invoke the Court's inherent power for a sanction of any kind.

**Rule 37(e)**

Rule 37(e) provides authority for the Court to address the loss of electronically stored information ("ESI"), but it applies only in limited circumstances.  The rule provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it

4

may or must presume the information was unfavorable to the party; or
(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Before the court even considers sanctions, a party bringing a motion under Rule 37(e) must show—as a threshold matter—that "(1) electronically stored information that should have been preserved 'in the anticipation or conduct of litigation' was lost; (2) the party who had a duty to preserve the information 'failed to take reasonable steps to preserve' it; and (3) the information 'cannot be restored or replaced through additional discovery.'" *Kean v. Brinker Int'l, Inc.*, 2024 WL 1815346, at *8 (M.D. Tenn. Apr. 25, 2024) (quoting *Adamczyk v. Sch. Dist.*, 667 F. Supp. 3d 534, 556 (E.D. Mich. 2023)).  Actual loss of information that cannot be replaced or restored is required. Rule 37(e) and Advisory Committee Note (2015) (new Rule 37(e) "applies only when [electronically-stored] information is lost"); *see also Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 2009 WL 690603 (S.D. Ohio Mar. 12, 2009).  Moreover, as the Advisory Committee explained in connection with the adoption of Rule 37(e), the "rule recognizes that 'reasonable steps' to preserve suffice; it does not call for perfection." Fed. R. Civ. P. 37, Advisory Committee Notes (2015).  Thus, Rule 37(e) "is inapplicable when the loss of information occurs despite the party's reasonable steps to preserve." *Id.*

In addition to these threshold requirements, Rule 37(e) sanctions are authorized only where there is a finding of prejudice to the other side *or* a finding that "the party acted with the intent to deprive another party of the information's use in the litigation." No sanctions are authorized by the rule in the absence of at least one of these findings.

Moreover, the most severe spoliation sanctions are appropriate only if there is a finding of intent; "[a] showing of negligence or even gross negligence will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016).

**ARGUMENT**

**1.   NONE OF THE PLAINTIFFS' MOTIONS FOR LEAVE TO AMEND SHOULD BE STRUCK**

**A.     Neither Rule 37(e) Nor the Court's Inherent Power Provides Legal Authority for the Relief Defendants Seek**

*1.     Defendants Have Not Shown that Sanctions Are Warranted*

Defendants devote much ink to preservation obligations, but none whatsoever to the requirements for spoliation sanctions.[2]  Defendants' failure to identify the legal rules that could authorize the relief they seek is fatal to their motion.  The PEC has identified only two sources of law that address the issue of the loss (inadvertent or intentional) of evidence.  These are Rule 37(e) of the Federal Rules of Civil Procedure and the federal common law doctrine regarding a federal court's inherent powers to address spoliation of evidence.  Outside these two sources of authority, there is no basis for the Court to take any steps at all in connection with any plaintiff's document retention practices. And neither Rule 37(e) nor the common law pertaining to spoliation supports the relief Defendants seek. On the contrary, the law of spoliation is clear:  (1) under either the

---

[2] That Defendants do not style their motion as one for sanctions does not help them. *See* Mot. at 1, 9 n.8 (calling for "sanctions").  They seek to deprive plaintiffs of the opportunity to assert claims against them as a consequence of what they contend are discovery failures.  That is a sanction, whether labelled as one or not.  *See Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.*, 528 U.S. 458, 464 (2000).  Indeed, Defendants appear to recognize as much, given that they use the word "sanction" multiple times in their brief, *see* ECF #5687 at 1, 9, 11, even as avoid labelling their motion that way, or discussing the legal standards they must meet in order to obtain the relief they seek.

6

common-law or under Rule 37, there must be an actual, irretrievable loss of relevant evidence as to which there was a preservation obligation; (2) the loss or destruction must have been intentional, except that in the context of electronic evidence, actual prejudice to the other side may trigger very limited sanctions even without a showing of intentional conduct; and (3) there is no free-standing obligation to send a litigation hold letter and the mere failure to do so is not sanctionable in any way. Defendants' argument that the Court can sanction plaintiffs for the failure to send such letters on the date Defendants believe they ought to have been sent is entirely unsupported.[3]

As movants seeking sanctions for spoliation, Defendant bear the burden of establishing each of the elements necessary to support the sanction they seek. *See Beavan*, 622 F.3d at 553; *Mooradian v. FCA US, LLC*, 286 F. Supp. 3d 865, 868 (N.D. Ohio 2017). Defendants can satisfy none of the requirements for sanctions.

To begin with, Defendants have not established that any evidence has been lost. Indeed, the PBMs admit they have no evidence that any document was lost by any plaintiff seeking leave to amend, *see* Mot. at 13 ("PBM Defendants do not know any facts surrounding the extent to which of those plaintiffs spoliated evidence.")—a failure that

---

[3] The opinions the PBMs cite involving discovery sanctions all arose in completely different circumstances: after proven loss of evidence central to the case. *See Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016) (failure to preserve product alleged to be defective); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 930 (N.D. Ill. 2021) (years of relevant ESI destroyed after suit was filed, with extensive pattern of lies on the part of party and counsel); *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *16 (S.D. Cal. June 16, 2014) (undisputed destruction of relevant emails); *Pollard v. City of Columbus, Ohio*, 2013 WL 5334028, at *5 (S.D. Ohio Sept. 23, 2013) (adverse inference ordered after defendant allowed destruction of car involved in police chase at issue).

is immediately fatal to their request for discovery sanctions.   The Court can deny their motion on that basis alone.   Defendants speculate that the certain plaintiffs' inability to identify a litigation hold letter that was sent on a date Defendants deem acceptable *must* have resulted in the loss of evidence, but offer nothing beyond that speculation.   That is insufficient to meet the requirements for spoliation.   *See infra* at Point I-A-2.

Indeed, for the 372 plaintiffs who attested that they "retained documents and information based on an existing document retention policy,"[4] Defendants impermissibly ask this Court to assume that the information provided was false and that these plaintiffs did not in fact retain documents as they said they did.[5]

Even if there were evidence that was irretrievably lost (which has not been shown), Defendants have not established (and cannot establish) that such information was

---

[4] The PEC offered all plaintiffs the option to check a box to indicate that "Plaintiff has retained documents and information based on an existing document retention policy, whether regulatory or otherwise, as opposed to a litigation hold letter issued on a particular date." If Plaintiffs' counsel selected this checkbox, an asterisk was placed in the information provided to the Court and the Defendants. In the email to SM Cohen and the PBMs transmitting the data, the PEC defined the asterisk using the exact same language provided to plaintiffs' counsel to define the checkbox.  Thus, the 372 plaintiffs for whom an asterisk appeared in the information transmitted all attested that they had preserved documents based on an existing document retention policy.

[5] The PBMs' failure to acknowledge the hundreds of asterisks is but one of many ways they misrepresent the Plaintiffs' litigation hold data.   Many amending Plaintiffs implemented  litigation holds many years ago, hundreds within six months of filing their lawsuits). The PEC does not agree that the data means what Defendants say it means or that all the plaintiffs identified in the PBMs' chart were remiss in sending litigation hold letters, but for the purposes of the motion, the point is moot because, as discussed in the text, Defendants would not be entitled to any of the relief they seek even if their data about litigation hold letters were correct.

relevant[6] or that the plaintiff in question had an obligation to preserve it. These are not identical inquiries. Even information that may be relevant may in this case lie outside the scope of a plaintiff's preservation obligations. This is so because the scope of a party's preservation obligation is limited by the proportionality element of Rule 26. To the extent that the cost of preserving certain evidence is disproportionate to the claim or to the value of the evidence, the failure to preserve it may not be considered "unreasonable" within the meaning of Rule 37. *See* Fed. R. Civ. P. 37, Advisory Committee Note (2015) ("Another factor in evaluating the reasonableness of preservation efforts is proportionality. The court should be sensitive to party resources; aggressive preservation efforts can be extremely costly, and parties (including governmental parties) may have limited staff and resources to devote to those efforts. A party may act reasonably by choosing a less costly form of information preservation, if it is substantially as effective as more costly forms."); *see also* The Sedona Conference, *The Sedona Conference Commentary on Legal Holds: The Trigger & the Process* ("*Sedona Commentary on Legal Holds*"), 11 Sedona Conf. J. 265, 278 (2010) ("There is a growing consensus that the proportionality principle" of Rule 26 "must be applied in assessing preservation issues."); *Bailey v. Michigan Dept. of Corrections*, 342 F.R.D. 420, 425 (E.D. Mich. 2022) ("The scope of a party's duty to preserve is the same as the scope of discovery articulated in [Federal Rule of Civil Procedure] 26(b)(1)") (modifications in original) (quotation marks and citation omitted); *Little Hocking Water Assn.*, 94 F. Supp. 3d at 918 (S.D. Ohio 2015) ("[T]he scope of the duty to preserve is a

---

[6] The PEC notes that defendants in prior case tracks took extensive discovery of the plaintiffs and used almost *none* of it at trial.

highly fact-bound inquiry that involves considerations of proportionality and reasonableness.") (quotation marks and citation omitted).  Because Defendants have not identified any information that was lost, it is impossible to determine whether, under the circumstances, any plaintiff failed to meet its preservation obligations. [7]

Nor have the PBMs established that any loss of information was the result of a failure to take reasonable steps to preserve it, a requirement for sanctions under Rule 37(e).  As discussed below, the mere failure to send a litigation hold letter is insufficient to establish a basis for sanctions.  Similarly, Defendants have not shown, and cannot show, that any loss, if it occurred, was intentional or that the Defendants have been prejudiced.

Finally, even if Defendants could establish each of the above elements necessary to warrant sanctions, they still could not show that the severe sanction they seek – denial

---

[7] It is further unclear that plaintiffs' owed any preservation obligation at all to the PBMs, year before they thought of suing them, or that these Defendants have standing to enforce preservation obligations owed to others. *See, e.g., Mosley v. Marriot Int'l, Inc.*, 2024 WL 1224241, at *2 (E.D. Mich. Mar. 21, 2024) ("The duty to preserve evidence runs to an identifiable opposing party…."); *Town of Westport v. Monsanto Co.*, No. 14-12041, 2015 WL 13685105, at *4 (D. Mass. Nov. 5, 2015) (same); *In re Ethicon, Inc. Pelvic Repair Sys. Product Liab. Litig.*, 299 F.R.D. 502, 516 (S.D.W. Va. 2014) (same); *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, 2011 WL 1456029, at *1 (S.D. Fla. Apr. 5, 2011) ("[T]he alleged destruction of evidence arose primarily when Defendants were under a duty to others . . . but not necessarily these Plaintiffs . . . . The Court is reluctant to create a new legal precedent which would establish some type of free-floating or shifting duty which other parties could latch onto in order to seek the sanctions which the parties with standing choose not to pursue."); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1308 (N.D. Ga. 2011) ("[U]pon receipt of the CID, Delta had a duty to the DOJ to preserve and produce all relevant documents.  However, the Court has difficulty accepting the notion that at that time, as a matter of law Delta immediately owed the same duty to Plaintiffs…").

of the opportunity even to assert claims against the Defendants -- is warranted. The loss of evidence "fall[s] along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality" and the severity of the sanction must correspond to the level of fault. *Adkins*, 554 F.3d at 652-53; *accord Beaven*, 622 F.3d at 553-54. As noted above, Rule 37 specifically states that "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may the Court . . . dismiss the action or enter a default judgment. . . ." In cases where such intention is lacking, the Court may only "order measures no greater than necessary to cure the prejudice" arising from the missing evidence. Fed. R. Civ. P. 37(e).

The common law of spoliation is the same: only where there is actual intent (not mere negligent destruction) may the Court impose severe sanctions. *See Applebaum*, 831 F.3d at 745.[8] Even then, the requirements for sanctions barring claims are onerous. *See Arch Ins. Co. v. Broan-NuTone, LLC*, 509 F. App'x 453, 458 (6th Cir. 2012) (dismissal as a sanction for spoliation appropriate only "[u]nder certain extreme circumstances, as when spoliation denies a defendant access to the only evidence from which it could develop its defenses adequately."); *McCarty v. Covol Fuels No. 2, LLC*, 644 F. App'x 372, 380 (6th Cir.

---

[8] Given how far short the law and facts here fall from supporting a sanction barring claims, it is no surprise there is no precedent for the PBMs' position, and the orders they cite are not remotely similar to the circumstances here. *See* ECF No. 4985 (threatened dismissal for want of prosecution under Rule 41(b)); ECF No. 5340 (parties agreed to dismiss claims); *In re Zostavax (Zoster Vaccine Live) Prods. Liab. Litig.*, 711 F. Supp. 3d 317, 322–23 (E.D. Penn. 2022) (dismissal for lack of evidence akin to summary judgment, not failure to preserve); *In re Deepwater Horizon*, 907 F.3d 232, 235–37 (5th Cir. 2018) (dismissal after settlement when attorneys could not reach plaintiffs for signature after multiple extensions).

11

2016) (dismissal inappropriate when evidence was spoliated but "while potentially important, is not so vital as to preclude Plaintiffs from putting on a case in its absence"); *Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994) (barring claims is "the sanction of last resort."). Defendants do not come close to meeting these requirements.

> 2. *The Mere Absence of a Litigation Hold Letter Cannot be the Basis of Sanctions*

As discussed above, Defendants do not even attempt to establish the elements of spoliation. Instead, they base their motion entirely on the absence of identifiable litigation hold letters for many of the plaintiffs seeking leave to amend. But the mere failure to issue a litigation hold is insufficient to warrant sanctions under the Court's inherent power or under Rule 37. *Ed Schmidt Pontiac-GMC Truck, Inc. v. Chrysler Motors Co., LLC*, 575 F. Supp. 2d 837, 841 (N.D. Ohio 2008) ("failure to implement a litigation hold," on its own, does not prove spoliation); *Superior Prod. P'ship*, 2009 WL 690603, at *3 (absence of litigation hold insufficient to impose spoliation sanctions); *Dombrowski v. Lumpkin Cnty.*, 2013 WL 2099137, at *16 (N.D. Ga. Mar. 21, 2013) (where plaintiff failed to show bad faith and prove that critical or crucial evidence was destroyed, "Defendants' failure to issue a litigation hold does not justify imposing sanctions"), *report and recommendation adopted*, 2013 WL 2096658 (N.D. Ga. May 13, 2013); *USI Ins. Servs. LLC v. Bentz*, 2020 WL 7753690, at *8 (D.N.D. Dec. 29, 2020) ("Because they have failed to show that any evidence was lost, let alone destroyed, Defendants do not achieve the showing of intentional destruction required for dismissal of the case or an adverse jury instruction contemplated in Rule 37(e)(2). Even if this Court is wrong and Murray's failure to send out a litigation hold did result in lost evidence, there is not a shred of evidence to indicate

that his failure was intentional."), *aff'd*, 2021 WL 9666616 (D.N.D. Feb. 4, 2021); *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2013 WL 4028759, at *3 n.14 (D. Kan. Aug. 7, 2013) ("sanctions are not appropriate for [an] alleged general failure to implement a proper litigation hold, absent a showing of prejudice"); *Rahman v. The Smith & Wollensky Restaurant Grp., Inc.*, 2009 WL 773344, at *6 (S.D.N.Y. Mar. 18, 2009) ("even assuming there was, in fact, no litigation hold" until late in the litigation, plaintiff had failed to establish that there was "any gap" in production "attributable to the failure to institute [a] litigation hold at an earlier date."); *School-Link Techs., Inc. v. Applied Res., Inc.*, 2007 WL 677647, at *4 (D. Kan. Feb. 28, 2007) (declining to impose sanctions for defendant's failure to implement a litigation hold because plaintiff never identified any relevant documents or information that were destroyed); "*Kostic v. Texas A & M Univ. at Commerce*, 3:10-CV-2265-M, 2013 WL 3356263, at *2 (N.D. Tex. July 3, 2013) ("failure to send a written litigation hold' memo is largely irrelevant in the actual spoliation analysis, because—litigation hold or not—to show spoliation one must still demonstrate the loss or destruction of evidence") (*quoting Davis S R Aviation, LLC v. Rolls–Royce Deutschland Ltd. & Co. KG*, 2012 WL 175966, at *3 n. 3 (W.D. Tex. Jan. 20, 2012)); *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2nd Cir. 2012) (although defendant failed to issue a litigation hold with respect to relevant evidence, district court did not abuse its discretion in declining to give an "adverse inference" instruction, "reject[ing] the notion that a failure to institute a 'litigation hold' constitutes gross negligence *per se*")).

This is especially true because there is no requirement that a party use a litigation hold as the means of preserving evidence.  Rather, a party's obligation is to "preserve

what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Kemper Mortg., Inc. v. Russell*, 2006 WL 2319858, at *2 (S.D. Ohio Apr. 18, 2006). "Because there are many ways to manage electronic data, litigants are free to choose how [the task of preservation] is accomplished. . . ." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003); *see also* Rule 37(e) (requiring a showing that evidence was lost "because a party failed to take reasonable steps to preserve it."). Thus, "where all potentially relevant information is already secured" a legal hold notice "will not be necessary." *Radiologix, Inc. v. Radiology & Nuclear Med., LLC*, 2019 WL 354972, at *10 (D. Kan. Jan. 29, 2019) (quoting *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 104, 103–08 cmt. 5.d. (2018). This approach is consistent with the Sixth Circuit's rejection of any "bright line" rule for spoliation sanctions, in favor of a case-by-case determination grounded in the specific facts of each case, with particular focus on a party's degree of fault with respect to any evidence that was not preserved. *See Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 516 (6th Cir. 2014).

### B. The Bellwether Process Is and Should Remain Distinct from the Motions for Leave to Amend

Defendants rely heavily on the suggestion that cases in which there are questions about document preservation are not suitable bellwethers in this MDL. The PEC believes this proposition is fundamentally wrong and that nothing in the Court's remarks concerning bellwether selection or document preservation supports Defendants' view.

14

But for the purposes of *this* motion, the point is moot: the suitability of a case to be a bellwether has nothing whatsoever to do with whether a plaintiff should be permitted to bring the case in the first place. Defendants have interpreted certain statements of the Court that were designed to avoid gamesmanship in the selection of bellwethers as supporting the view that only plaintiffs who may properly serve as bellwethers should be permitted to amend their pleadings, but the PEC believes that the Defendants have misconstrued the Court's statements. In this context, the bellwether process is and should remain distinct from the question of whether any particular plaintiff may amend its complaint.

> As the Fifth Circuit has explained:

> The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar. References to bellwether trials have long been included in the Manual for Complex Litigation. See *Manual For Complex Litigation* § 33.27-.28 (3d ed.1995). The reasons for acceptance by bench and bar are apparent. If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of the cases as reflected by the jury verdicts. Common issues or even general liability may also be resolved in a bellwether context in appropriate cases.

*In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). The value of bellwether cases thus depends on their representative nature. *See Manual for Complex Lit.* § 22.315 (4th ed.) ("If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases."); Whitney, Melissa, *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* at 22 (Fed. Jud. Ctr. and JPML 2019)

["*Guide for Transferee Judges*"] ("In order to provide reliable information about the strengths and limitations of claims or defenses or global settlement value, bellwether cases must be representative of the range of cases included in the MDL proceeding."); *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 939-40 (6th Cir. 2022) (Batchelder, J., concurring in part), *cert. denied,* 144 S. Ct. 16 (2023) (noting importance of representativeness for bellwether cases).

For this reason, not every case is suitable as a bellwether.  Cases with unusual, outlier issues may not serve the purpose of providing the parties the information they need to assess the value of the larger pool of untried cases.  *See, e.g.*, Fallon, Eldon, Graybill, Jeremy, Wynne, Robert, *Bellwether Trials in Multidistrict Litigation*, 82 TULANE LAW REVIEW 2323, 2365 (noting the need for procedures to eliminate unrepresentative outlier cases); *Guide for Transferee Judges* at 6 ("If not managed effectively, the bellwether process could instead showcase extreme cases on both sides that do not reflect reasonable settlement values nor the merits more generally.").

But the concerns of typicality inherent in the bellwether selection process have nothing whatsoever to do with the right of a party to pursue viable claims, even grossly unrepresentative ones.  MDLs typically do include cases not suitable to be bellwethers. *See* Guide for Transferee Judges at 19 ("The court should anticipate that some cases will drop out [of the bellwether pool] or will be deemed unrepresentative after case-specific discovery is completed."). To limit the claims in an MDL only to representative cases suitable as bellwethers would be greatly to reduce the value of the MDL in coordinating cases and providing a platform for potential global resolution.   For this reason, the legal

standards governing a motion for leave to amend simply do not and cannot include whether a case, once amended, would be a suitable choice as a bellwether.[9]

Defendants point to the requirement imposed by the Court that every plaintiff seeking leave to amend commit to a willingness to serve as a bellwether case as evidence that suitability as a bellwether is a prerequisite to obtaining leave to amend.  They are wrong.  By "prepared to litigate," the Court always specified it meant willing to spend the money and time to serve as a bellwether if chosen; it never suggested this would be or was meant to be a guarantee of suitability.  *See* ECF No. 5455 at 2 (lead counsel must attest that "should any of the listed cases be chosen as a bellwether—both counsel and plaintiff-client are prepared to spend the time and money necessary to litigate"); ECF No. 5465 (May 22, 2024 Hearing Tr.) at 6:2-16 (Plaintiffs adding Defendants must "be prepared to litigate because if there's a bellwether process, those cases are open to be picked").  The Court was quite clear, in imposing this requirement, that it was seeking to avoid the possibility of gamesmanship on the part of plaintiffs and/or the PEC, whereby a plaintiff with a weak case selected as a bellwether would simply dismiss its case, thereby ensuring that only cases in which plaintiff has a strong likelihood of prevailing

---

[9] To the extent that Defendants have arguments as to why any particular plaintiff should not be granted leave to amend, those arguments should be presented in their opposition to the motions for leave.  Defendants' attempt to avoid having to respond to those motions, by striking them in the first instance, is cognizable – if at all – only as a discovery sanction, although as described herein, Defendants fail to satisfy *any* of the requirements for such *any* sanction, much less the drastic one they seek here.

3132703.1

would proceed as bellwethers. *See* ECF 5465 at 6:2-16, 11:15-19, 31:20-32:2.[10] But ensuring that plaintiffs do not engage in gamesmanship in the selection of bellwether cases is not the same thing as requiring every case in the MDL to be sufficiently representative that it could serve as a bellwether in order to be granted leave to amend. Defendants' attempt to turn a limited procedure for avoiding gamesmanship into a general principle that only representative cases can be brought at all in this MDL should be rejected (even assuming, of course, that Defendants could show that the cases they seek to strike are, in fact, unrepresentative or otherwise unsuited to serve as bellwethers). For this reason, the Court should not require that a plaintiff have sent a litigation hold at any particular time in order to seek leave to amend its complaint; it is sufficient that, in any future bellwether selection process, the parties (and the Court) will have information about the status of the litigation holds so they can make informed selections.

## II.  DEFENDANTS ARE NOT ENTITLED TO DISCOVERY

That Defendants cannot establish a basis for sanctions in no way suggests that they are entitled to take discovery on the document preservation efforts of hundreds of plaintiffs in this MDL. Discovery into a plaintiff's preservation practices is not a prerequisite to the right to assert claims and can serve no legitimate basis here where the

---

[10] This corrective did nothing to avoid bellwether gamesmanship on the part of various *defendants* in this MDL, given that in at least one instance an inappropriately unrepresentative case was selected by a defendant. The PEC respectfully suggests that precluding plaintiffs from dismissing their cases once they have been selected as bellwethers may more effectively prevent gamesmanship when parameters ensuring typicality are applied at the outset, so that grossly unrepresentative cases are not chosen in the first place. *See Guide for Transferee Judges* at 22-29 (describing strategies to ensure representative selections).

stay applicable to plaintiffs' cases has been lifted solely for the purpose of allowing them to seek leave to amend. Even for cases in active litigation, such discovery is not permitted absent a preliminary showing of spoliation that Defendants cannot make. In this circumstance, the "discovery on discovery" Defendants seek is even more improper and should not be permitted.

Numerous cases recognize that a factual basis demonstrating actual destruction of evidence must exist before burdensome discovery into a party's preservation efforts (so-called "discovery on discovery" or "meta-discovery") is permitted. *See Steuben Foods, Inc. v. Country Gourmet Foods, LLC*, 2011 WL 1549450, at *6 (W.D.N.Y. Apr. 21, 2011) (discovery into document preservation not appropriate where, despite fact that no written litigation hold letter was sent, opposing party failed to demonstrate that relevant evidence had been lost"); *Town of Westport v. Monsanto Co.*, 2015 WL 13685384, at *3 (D. Mass. Nov. 5, 2015) ("[W]ithout some evidence of spoliation, the Court finds that requests regarding preservation efforts seek irrelevant information."); *Downing v. Abbott Labs.*, 2017 WL 11812654 (N.D. Ill. Nov. 2, 2017) (no discovery on document retention and preservation where plaintiff failed to show that the timing and scope of the litigation hold resulted in relevant documents being discarded); *see also* The Sedona Conference, *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production A Project of the Sedona Conference Working Group on Electronic Document Retention and Production*, 19 SEDONA CONF. J. 1, 123–25, cmt. 6.b. (2018) (no discovery on discovery without specific tangible evidence – as opposed to speculation -- of spoliation); Hon. Craig B. Shaffer, *Deconstructing "Discovery About Discovery*," 19

19

SEDONA CONF. J. 215, 243–48 (2018) (parties seeking to "compel process-directed discovery should be prepared to substantiate their claims of relevance and proportionality with factual support."). Because evidence of actual spoliation is required, the mere absence of a written litigation hold letter at a specific time is insufficient to meet the threshold requirement for meta-discovery. *Steuben*, 2011 WL 1549450; *Downing*, 2017 WL 11812654.

Far from being able to make the requisite preliminary showing to justify the onerous discovery they seek, Defendants admit that they "do not know any facts surrounding the extent to which of those plaintiffs spoliated evidence." Mot. at 13 (emphasis added). Mere speculation about plaintiffs' preservation efforts, or unsubstantiated conjecture about purportedly missing documents or information, are insufficient to open the door into the discovery Defendants seek.

The cases relied on by Defendants only underscore the showing that is required for the discovery Defendants seek. For example, in *Little Hocking Water Association, Inc. v. E.I. du Pont de Nemours & Co.*, 94 F. Supp. 3d 893, 898, 921 (S.D. Ohio 2015), the court ordered a Rule 30(b)(6) deposition to address spoliation issues only after finding that relevant documents and information had been lost—including that "some data from 2002 forward [was] missing" and that "DuPont was unable to locate and produce only six months' worth of data from 2002 through most of 2003." Similarly, in *Thomas v. Cricket Wireless, LLC*, 2020 WL 7344742, at *2-3 (N.D. Cal. Dec. 14, 2020), the court found that there had been a "preliminary showing of spoliation" given defendant's "admission that certain information from the class period was not retained." And in *Edwards v. Scripps*

*Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019), although the court acknowledged that Rule 30(b)(6) depositions about retention policies and procedures or litigation holds may be permitted when there is "a potential issue of spoliation," in that case the court declined to order such discovery, notwithstanding the plaintiff's showing that (1) defendant had failed to preserve a witness's phone and (2) there had been "a folder that an employee [of defendant's] testified she threw away." *Id.* The plaintiff in that case provided more than the sheer speculation offered by the Defendants here, yet the district court still found that "more [was] necessary" to allow discovery into the defendant's record-retention policies and litigation hold process. *Id.* Defendants do not cite any order requiring parties to produce fact sheets about document preservation or litigation holds, nor any order requiring fact sheets before litigation between those parties began.[11]

Here, in addition to Defendants' failure to establish a basis for meta-discovery, the procedural posture of these cases makes any such discovery especially inappropriate. Preservation purity is not a prerequisite to the assertion of a claim; even plaintiffs who have lost documents are permitted to pursue their claims subject to the power of the Court to address any prejudice that has occurred. For this reason, the status of plaintiffs' preservation efforts is irrelevant to the question whether they should be granted leave to amend their complaints to assert claims against the PBM defendants. Nor is such discovery relevant to any other issue. Defendants attempt to tie the issue of preservation

---

[11] Besides citing the discovery fact sheets in this case, the PBMs' only other citations are, oddly, to two other MDL orders that do not mention or relate to fact sheets at all. *See In re Deepwater Horizon*, 907 F.3d at 235–37; *In re Zostavax*, 711 F. Supp. 3d at 322–23.

21

to the bellwether process, but as already noted, at this time, *none of these plaintiffs is a potential bellwether case*.  Moreover, the Court's recent bellwether orders suggest it may not seek additional PBM bellwethers from cases that amend, making bellwether-related issues even less relevant to the motion for leave to amend.  *See, e.g.,* ECF No. 5738 at 1. All of the amending plaintiffs' cases are stayed except to the extent they have been granted leave to seek leave to amend.  Even if Defendants could show the required predicate for it, exactly what issue in these stayed cases would the discovery Defendants seek be relevant to?

*If* the Court grants any of the motions for leave to amend and permits any plaintiff to add PBM defendants, and *if*, at some point in the future, the Court were to create a bellwether process for which plaintiffs with newly-added claims were eligible, and *if* at that point Defendants could show a basis to pursue discovery with respect to a limited group of plaintiffs being considered as potential bellwethers, and *if* Defendants could establish a preexisting preservation obligation running to them, the Court could at that time consider whether any "discovery on discovery" would be appropriate.  In the current posture of these cases, however, the discovery Defendants seek is both irrelevant and improper.

The discovery Defendants are seeking from hundreds of parties (that have not yet sued them) would not only be an enormous delay, distraction, and cost, but it would not advance the merits *or* the resolution of the motion to amend (which does not depend on discovery preservation issues).  It would thus be wildly disproportional.  *See* Fed. R. Civ. P. 26(b)(1) (All discovery must be "proportional to the needs of the case,

3132703.1

considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit"); *see also* ECF No. 5540 (July 23, 2024 Hearing Tr.) at 10:22-25, 11:9-13 (The Court: "Going through a whole lot of discovery and then briefing on the motion for sanctions, this is all, in my view, wasted time by both parties and the Court ," because "it doesn't get us closer to any knowledge" of the merits). *See also In re Soc. Media Adolescent Addiction/Pers. Inj. Prod. Liab. Litig.*, No. 22-MD-03047-YGR (PHK), 2024 WL 3498235, at *7 (N.D. Cal. July 19, 2024) (court "admonishes the Parties not to waste time and resources arguing over potential or merely suspected spoliation of immaterial documents."). The request for discovery should be denied.

## Conclusion

For the foregoing reasons, Defendants' motion to strike certain plaintiffs' motions for leave to amend and for discovery should be denied in its entirety.

Dated:  November 14, 2024

Respectfully submitted,

Jayne Conroy
Simmons Hanly Conroy
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918 (304)654-8281
paul@farrellfuller.com

*Plaintiffs' Co-Lead Counsel*

/s/ Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY &LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*/s/ Peter H. Weinberger*
Peter H. Weinberger

3132703.1