```
1                      UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF OHIO
2                            EASTERN DIVISION

3

4      IN RE:                        ) Case No. 1:17-md-2804
                                     )
5      NATIONAL PRESCRIPTION         )
       OPIATE LITIGATION             ) Friday, November 22, 2024
6                                    ) 11:02 a.m.

7

8                                  - - -

9

10              TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

11                    HELD VIA ZOOM VIDEOCONFERENCE

12              BEFORE THE HONORABLE DAN AARON POLSTER

13                    UNITED STATES DISTRICT JUDGE

14
                                   - - -
15

16

17

18

19

20    Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
                                 United States District Court
21                               801 West Superior Avenue
                                 Court Reporters 7-189
22                               Cleveland, Ohio 44113
                                 216.357.7036
23                               Gregory_Mizanin@ohnd.uscourts.gov

24

25      Proceedings recorded by mechanical stenography; transcript
              produced with computer-aided transcription.
```

```
 1      APPEARANCES:

 2
        For the Plaintiffs:
 3

 4           Peter H. Weinberger, Esq.
             SPANGENBERG, SHIBLEY & LIBER, LLP
 5           1001 Lakeside Ave. East
             Suite 1700
 6           Cleveland, OH 44114
             216.696.3232
 7

 8
             Jayne Conroy, Esq.
 9           SIMMONS HANLY CONROY
             One Court Street
10           Alton, IL 62002
             618.259.2222
11

12
             Paul T. Farrell, Jr., Esq.
13           FARRELL & FULLER
             270 Munoz Rivera Avenue
14           Suite 201
             San Juan, PR 00918
15           304.654.8281

16

17           Peter J. Mougey, Esq.
             LEVIN PAPANTONIO THOMAS MITCHELL RAFFERTY & PROCTOR
18           316 South Baylen Street
             Suite 600
19           Pensacola, FL 32502
             850.435.7068
20

21
             Hunter J. Shkolnik, Esq.
22           NAPOLI SHKOLNIK
             1302 Avenida Ponce de Leon
23           Santurce, PR 00907
             787.493.5088
24

25
```

```
 1     APPEARANCES (continued):

 2
       For Defendant OptumRx:
 3
            **Brian D. Boone, Esq.**
 4          ALSTON & BIRD
            1120 South Tryon Street
 5          Suite 300
            Charlotte, NC 28203
 6          704.444.1106

 7

 8     For Defendant Express Scripts:

 9          **Jonathan G. Cooper, Esq.**
            **Matthew K. Wasserman, Esq.**
10          QUINN EMANUEL URQUHART & SULLIVAN
            1300 I Street NW
11          Suite 900
            Washington, DC 20005
12          202.538.8000

13          **Olga M. Vieira, Esq.**
            QUINN EMANUEL URQUHART & SULLIVAN
14          2601 South Bayshore Drive
            Suite 1550
15          Miami, FL 33133
            305.496.2988

16

17
       ALSO PRESENT:
18
            Helen Norton
19          Carrie Roush
            Corey McCardle
20          Andrew Rivera
            A. Scott Loge
21

22

23

24

25
```

```
1                    FRIDAY, NOVEMBER 22, 2024
2                              - - -
3                (Proceedings commenced at 11:02 a.m.)
4                              - - -
5              THE COURT:  All right.
6         Good morning, everyone.
7         This is a Zoom conference in the MDL with two PBMs,
8    Express Scripts, OptumRx, and PEC and the plaintiffs'
9    lawyers litigating those cases.
10        I've reviewed everyone's status reports.  The parties
11   have selected Ogdensburg, New York, as the second
12   bellwether.  The proposed CMO is due on December 5th, and
13   people can start working on that case.
14        I thought I talked briefly -- there's a matter that is
15   on the bottom of the second page of the PBMs' status report.
16        Looks like the PEC requested deposition dates for four
17   ESI fact witnesses.  According to the report, ESI refused to
18   confirm the dates unless the PEC agrees not to seek to
19   reopen the depositions based on later-produced documents.
20        Is that the case?  I'll deal with that now.  I'm...
21        Yeah.  Go ahead.
22             MR. COOPER:  Your Honor, this is Jonathan
23   Cooper for Express Scripts.
24        That's not the case.  It's a bit of an overstatement
25   in short, and we've had separate conversations with the PEC
```

1  about this.  We're hoping to resolve it.  But the issue,
2  from our perspective, is there are upcoming productions that
3  everyone knows are coming, the parties have agreed on, there
4  are set deadlines.
5       For example, we have productions coming in December --
6  due by December 6th and by December 20th, and our point to
7  the PEC was some of these documents may relate to the
8  witnesses you have requested, and so if you want to depose
9  them, you need to be aware there may be additional documents
10 coming related to them.  And we don't think that if -- if
11 you're going to depose them now, you should be allowed to
12 redepose them based on documents you know are about to be
13 produced.  That was our concern.  It wasn't a blanket "You
14 can never seek to reopen if you think you have good cause";
15 it was "We all know there are these documents coming."
16             MR. WEINBERGER:  So, Judge -- this is Pete
17 Weinberger -- and I'm going to defer if necessary to others
18 that were directly involved in the communication.  But the
19 witnesses that we've requested are witnesses who ESI has
20 represented have -- they have completed the custodial
21 document production with respect to those witnesses.  And so
22 the documents that Mr. Cooper is talking about relates to
23 what we have been referring to as noncustodial file
24 documents, and primarily those documents are due on
25 December 6th.

1    Now, having told the defendants who we'd like to
2    depose, hopefully in December, to the extent that there are
3    additional documents in this noncustodial production that
4    relate to those witnesses, they should be prioritizing those
5    if they're concerned.
6    But let's assume that we move forward on the
7    representation that their custodial files have been
8    completely produced as part of the reason why we selected
9    these particular witnesses. If in fact we take the
10    deposition and there is a tranche of documents that get
11    produced in January or February that we believe are
12    specifically relevant to these witnesses, you know, we'll
13    follow what the precedent that we've -- that has been
14    established for seven years and come to Special Master Cohen
15    or you and say, "Look, we have good cause for reopening the
16    deposition." That has rarely happened, but, you know, I
17    think...
18    So that's where we are. I mean, we're happy to
19    discuss this more, but we were taken aback by their initial
20    position.
21              MR. COOPER: Well, I...
22    And, Pete, if I may just add one additional point
23    here.
24    So you're correct that from our perspective these
25    particular witnesses' custodial documents are complete. The

1    issue is there are noncustodial documents that may relate to
2    them.  And, in addition, because we just selected a new
3    bellwether, our -- we haven't heard from the PEC yet about
4    it, obviously it just got selected, but we anticipate you
5    might request documents about the new bellwether and, in
6    particular, new noncustodial documents.
7         And to give one very concrete example, one of the
8    witnesses you ask about helps run the fraud, waste, and
9    abuse investigations at Express Scripts.  And we haven't
10   produced fraud, waste, and abuse investigations for the new
11   bellwether because it was only just selected yesterday.
12   Those documents, there's no schedule for production yet.  We
13   haven't tried to collect them yet.  I don't know exactly
14   when those will be collected and produced, but if those do
15   end up getting produced, that's something that everyone can
16   reasonably anticipate now, and we don't want our witnesses
17   to have to sit twice.
18         So if you're okay proceeding without, you know -- on
19   that understanding, that's what we've -- we've been talking
20   about here.  Our concern is not about some documents being
21   produced down the line that nobody anticipates; it's we all
22   know these documents are coming, and we don't want
23   witnesses -- current or especially former witnesses -- to
24   have to sit two separate times.
25             THE COURT:  I have a question.  What exact --

1     when you use the term "noncustodial documents," what is a
2     noncustodial document?
3                    MR. COOPER:  A noncustodial document, Your
4     Honor, can mean different things, but generally speaking, it
5     means documents that aren't stored in the -- in a particular
6     individual's e-mail files --
7                    (Unreportable speech from unidentified
8                    participant.)
9                    THE COURT:  If someone could mute themself,
10    please.
11                   MR. COOPER:  So examples could be things like
12    contracts or, you know, investigative reports, things that
13    aren't necessarily stored at a given custodian but the
14    company maintains in some location that we are searching,
15    collecting, and producing from.
16                   THE COURT:  All right.
17         Well --
18                   MR. WEINBERGER:  So, Your Honor --
19                   THE COURT:  All right.
20         Now, look, all I'm going to say is this.  Ideally
21    people are only deposed once.  Sometimes it's necessary to
22    reopen a deposition if -- if relevant documents get produced
23    later and you need to ask that witness just about those new
24    documents.  It doesn't make sense to depose a witness on
25    December 1st if you know on December 6th a significant

1    number of documents are going to be produced that you're
2    going to want to ask that witness about.
3            So, I mean, you ought to be able to figure this out.
4    You know, you don't want to delay things indefinitely, but
5    you need to be efficient.  So I think you ought to -- you
6    ought to be able to work this out.  I'm not going to --
7    there really isn't anything before me.  I just -- I didn't
8    think that -- that the issue was exactly how it was
9    described on page 3 because everyone knows that you can
10   always seek leave of court to redepose a witness based on
11   something that's produced after the deposition.  So just
12   try -- try and be as efficient as possible, but you don't
13   want to delay this discovery indefinitely.
14           All right.  Trying to think when it makes sense to
15   have another Zoom.  I'm thinking roughly 60 days.  Given the
16   holidays, 30 days is -- you know, doesn't make sense, so
17   I -- I'm suggesting 60 days.  Does anyone think that's too
18   soon?
19           All right.  Well, seems about right to me, so I'm
20   suggesting -- I've got a couple other ones on Wednesday,
21   January 29th.
22           So how's 9:15 on Wednesday, January 29?
23                   MR. BOONE:  This is Brian Boone for OptumRx.
24       That would work for us, Your Honor.
25                   THE COURT:  Thank you, Brian.

1             MR. COOPER:  This is Jon Cooper for Express
2    Scripts.
3         That would also be fine with us.
4             THE COURT:  All right.
5         And then I guess we can get status reports -- why
6    don't we just say noon on Monday, the 27th.
7             MR. COOPER:  Your Honor, would it be possible
8    to do it by 3 PM?
9             THE COURT:  Yeah, that's fine.  That's fine,
10   Jonathan.  We'll make it 3 PM on the 27th.
11        All right.
12            MR. RICE:  Judge --
13            THE COURT:  I didn't have anything else.
14            MR. RICE:  -- we have Costco set at 10:00 on
15   the 29th.
16            THE COURT:  I'm sorry.  What on the 29th?
17            MR. RICE:  I have a Costco status conference.
18            THE COURT:  Yeah, on -- yeah, on the -- that's
19   right.  I've got a -- there are a couple others on the 29th.
20   This one's at 9:15.  I think 45 minutes should certainly be
21   ample.
22        All right.  At the risk of opening up Pandora's box,
23   but if there's something that either side wants to raise, I
24   want to keep -- keep this litigation moving forward, the
25   floor is open.

1  Okay.  There wasn't anything else that came up other
2  than I continue to maintain that it makes sense to -- for
3  each side to look -- look hard at opportunities to try and
4  resolve this.  I mean, we now have two bellwethers, we'll be
5  plowing away, we may need one or two trials, even if we have
6  them.  Of course that doesn't have to end anything, so I...
7  I want the parties to remain focused on, you know --
8  on the issues that the PEC correctly outlined on page 1 of
9  their report.  Those are their primary allegations.  The
10  question is whether the documents and the testimony support
11  those allegations.  I know the PEC has vigorously denied all
12  three of them, so -- I want the parties to focus on those
13  issues and, you know, see what the evidence shows and
14  keep -- you know, keep your eye open on the -- on the end of
15  this, okay?  And that's what I'm focusing on.
16  All right.  Have a good Thanksgiving, and I'll talk to
17  everyone at the end of January; and good holidays, too, at
18  the end of December.
19  (Proceedings concluded at 11:14 a.m.)

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter prepared from my stenotype notes.

*/s/ Gregory S. Mizanin*     *November 25, 2024*
GREGORY S. MIZANIN, RDR, CRR                    DATE