UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | Case No.: 17-MD-2804 |
| This document relates to: | Judge: Dan Aaron Polster |
| *City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | |

**EXPRESS SCRIPTS' OBJECTION TO DISCOVERY RULING NO. 14, PART 33
REGARDING EXPRESS SCRIPTS' PRIVILEGE CLAIMS; MOTION FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ..........................................................................................................................1

BACKGROUND ..........................................................................................................................2

LEGAL STANDARD....................................................................................................................3

ARGUMENT ...............................................................................................................................4

I.       THE RULING ERRED IN HOLDING THAT REGULATORY COMPLIANCE
IS NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE ......................................4

II.     THE PRIVILEGED DOCUMENTS HAVE A PRIMARILY LEGAL PURPOSE...........9

III.    IF THE COURT AFFIRMS THE SPECIAL MASTER'S PRIVILEGE RULING,
IT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL
UNDER 28 U.S.C. § 1292(B)........................................................................................11

          A.      The Court's Order Involves A Controlling Question Of Law ...............................12

          B.      There Is Substantial Ground For Difference Of Opinion ......................................13

          C.      An Immediate Appeal May Materially Advance The Ultimate Termination
Of The Litigation ..................................................................................................14

CONCLUSION.........................................................................................................................15

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Aetna Inc. v. Mednax, Inc.*,
2019 WL 6467349 (E.D. Pa. Dec. 2, 2019)...................................................................6, 8

*Alomari v. Ohio Dep't of Pub. Safety*,
626 F. App'x 558 (6th Cir. 2015) ....................................................3, 4, 5, 11, 14

*Arabian Motors Grp. W.L.L. v. Ford Motor Co.*,
2017 WL 2222552 (E.D. Mich. May 22, 2017).........................................................13

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*,
326 F.R.D. 176 (N.D. Ill. 2018)...................................................................................7

*Black & Decker (US), Inc. v. Smith*,
2008 WL 3850825 (W.D. Tenn. Aug. 13, 2008)...............................................14, 15

*Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*,
331 F.R.D. 218 (E.D.N.Y. 2019) ..............................................................................6

*In re Cnty. of Erie*,
473 F.3d 413 (2d Cir. 2007)........................................................................................5

*In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*,
293 F.3d 289 (6th Cir. 2002) ...................................................................................12

*Cooey v. Strickland*,
269 F.R.D. 643 (S.D. Ohio 2010)..............................................................................5

*Deutsche Bank Nat. Trust Co. v. Wickert*,
638 F. Supp. 2d 826 (N.D. Ohio 2009)....................................................................13

*Drummond Co., Inc. v. Conrad & Scherer, LLP*,
885 F.3d 1324 (11th Cir. 2018) ...............................................................................12

*Eagan v. CSX Transp., Inc.*,
294 F. Supp. 2d 911 (E.D. Mich. 2003)....................................................................13

*Edwards v. Scripps Media, Inc.*,
2019 WL 2448654 (E.D. Mich. June 10, 2019)...................................................6, 14

*Federal Trade Commission v. Abbvie, Inc.*,
2015 WL 8623076 (E.D. Pa. Dec. 14, 2015)..........................................................7, 8

*Flint v. Ky. Dept. of Corrections*,
    270 F.3d 340 (6th Cir. 2000) ................................................................13

*Garner v. Wolfinbarger*,
    430 F.2d 1093 (5th Cir. 1970) ..............................................................15

*In re Gen. Motors LLC Ignition Switch Litig.*,
    80 F. Supp. 3d 521 (S.D.N.Y. 2015).......................................................6

*Graff v. Haverhill N. Coke Co.*,
    2012 WL 5495514 (S.D. Ohio Nov. 13, 2012)...................................5, 10

*In re Grand Jury*,
    143 S. Ct. 543 (2023)...........................................................................14

*In re Grand Jury*,
    143 S. Ct. 80 (2022).............................................................................14

*In re Grand Jury Subpoenas*,
    454 F.3d 511 (6th Cir. 2006) ..................................................................5

*Hale v. Johnson*,
    2016 WL 8673579 (E.D. Tenn. Feb. 2, 2016) ........................................14

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) (Kavanaugh, J.)...........................3, 4, 6, 7, 8, 10, 11

*League of Women Voters of Ohio v. Blackwell*,
    2006 WL 1580032 (N.D. Ohio Feb. 10, 2006)........................................14

*Lee v. EUSA Pharma US LLC*,
    2024 WL 250064 (E.D. Mich. Jan. 23, 2024).............................3, 4, 6, 14

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)....................................................................11, 12, 13

*Myers v. City of Centerville*,
    2023 WL 195427 (S.D. Ohio Jan. 17, 2023) ............................3, 5, 6, 14

*Newsome v. Young Supply Co.*,
    873 F. Supp. 2d 872 (E.D. Mich. 2012)...........................................12, 13

*Rafoth v. Nat'l Union Fire Ins. Co.*,
    954 F.2d 1169 (6th Cir. 1992) ..............................................................13

*Ramb v. Paramatma*,
    2021 WL 5038756 (N.D. Ga. Sept. 22, 2021) ..........................................6

*Reed v. Baxter*,
    134 F.3d 351 (6th Cir. 1998) ............................................................................3, 13

*In re Seroquel Prod. Liab. Litig.*,
    2008 WL 1995058 (M.D. Fla. May 7, 2008).....................................................8

*In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*,
    2019 WL 2330863 (D. Md. May 31, 2019)........................................................6

*Smith-Brown v. Ulta Beauty, Inc.*,
    2019 WL 2644243 (N.D. Ill. June 27, 2019) ....................................................6

*Swint v. Chambers Cty. Com'n*,
    514 U.S. 35 (1995).......................................................................................11, 12

*Tennenbaum v. Deloitte & Touche*,
    77 F.3d 337 (9th Cir. 1996) ............................................................................12

*In re Trump*,
    874 F.3d 948 (6th Cir. 2017) ..........................................................................12

*United States v. Micro Cap KY Ins. Co., Inc.*,
    2017 WL 1745626 (E.D. Ky. Feb. 8, 2017) ...................................................5, 6

*Upjohn v. United States*,
    449 U.S. 383 (1981).........................................................................1, 4, 5, 10

*Vitols v. Citizens Banking Co.*,
    984 F.2d 168 (6th Cir. 1993) ..........................................................................12

*Winnett v. Caterpillar, Inc.*,
    2007 WL 2123905 (M.D. Tenn. July 20, 2007) ...............................................13

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................2, 11, 12, 13, 15

**Other Authorities**

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    3930 (3d ed. 2002) .............................................................................11, 12, 15

Fed. R. Civ. P. 53 .............................................................................................1, 3

## **INTRODUCTION**

In Discovery Ruling No. 14, Part 33 (Dkt. No. 5767) (the "**Ruling**"), the Special Master determined that fourteen documents prepared by and under the direction of the Express Scripts Legal Department pursuant to internal investigations are not privileged, even though the purpose of the documents—as acknowledged by the Special Master—is to provide or obtain legal advice regarding compliance with federal and state laws and regulations. In accordance with Federal Rule of Civil Procedure 53 and the Appointment Order (Dkt. No. 69), Defendants Express Scripts, Inc. and ESI Mail Pharmacy Service, Inc. (collectively, "**Express Scripts**" or "**ESI**") object to the Ruling, which is erroneous and should be overruled.[1]

The Ruling disregards nearly forty years of Supreme Court precedent upholding as privileged legal advice documents concerning compliance with laws and regulations. The preeminent case on attorney-client privilege in the corporate context, *Upjohn Co. v. United States*, affirmed a claim of attorney-client privilege over an internal investigation "concerning *compliance* with securities and tax laws, foreign laws, currency regulations, duties to shareholders, and potential litigation in each of these areas." 449 U.S. 383, 394 (1981) (emphasis added). As the Supreme Court noted, in the face of a "vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law . . . particularly since compliance with the law in this area is hardly an instinctive matter." *Id.* at 392 (cleaned up). The Ruling directly contradicts this authority by holding that advice from a lawyer regarding "how to structure business operations to

---

[1] The Appointment Order provides that "any party may file an objection to an order, finding, report, ruling, or recommendation by the Special Masters" within 21 calendar days. Appointment Order at 4. Here, the Special Master ruled that objections to his November 16, 2024 order be made by November 26, 2024. ECF No. 5767. This objection is therefore timely.

ensure compliance with regulatory requirements" is "business advice" and therefore "not protected by attorney-client privilege." Ruling at 6–7. But the only "business" purpose identified by the Special Master is in fact a legal one: compliance with statutes and regulations. If counsel cannot provide privileged advice to a business or corporation to assess compliance with law, then the attorney-client privilege is eviscerated in the corporate context; after all, it is hard to imagine a more quintessentially legal purpose than advising a client on how to comply with the law. The Court should sustain this objection and hold that the documents at issue are protected by the attorney-client privilege.

In the alternative, if the Court affirms the Ruling, Express Scripts respectfully requests that the Court immediately certify its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## **BACKGROUND**

The fourteen documents at issue (the "**Privileged Documents**") are records of Express Scripts' internal investigations and audits undertaken by ESI's Pharmacy Compliance Organization under the direction and control of the Express Scripts' Legal Department. Ruling at 6; *see, e.g.*, MDL_WITHHELD_001435.[2] As the Ruling acknowledges, "[m]ost or all of the audits were performed by a team that included ESI in-house attorney Therese Twomey, who is ESI's Senior Pharmacy Compliance Manager" and state on their face that they were "Prepared by the Legal Department" or "Privileged Legal Communication." *Id.*; *see, e.g.*, MDL_WITHHELD_002843. The scope of the audits was to assess compliance with "Federal and State Controlled Substance

---

[2]  Express Scripts submitted the fourteen Privileged Documents *in camera* to the Special Master and they are therefore part of the record for the Court's review. The Special Master confirmed via email on November 26, 2024, that he would provide "all of the underlying documents and related submissions to the court," including the Privileged Documents, for the Court's *in camera* review. A fifteenth document, MDL_WITHHELD_001433, is not asserted to be privileged but was submitted to the Special Master to provide context for its attachments, MDL_WITHHELD_001434 and MDL_WITHHELD_001435.

Laws and Regulations," including the federal Controlled Substances Act and state equivalents, as well as a Controlled Substances Security Compliance Plan entered into between Express Scripts and the Department of Justice. *See, e.g.*, MDL_WITHHELD_001434; MDL_WITHHELD_002843 at p.2; MDL_WITHHELD_001576 at p. 2; Ruling at 6. No third party contractors or consultants conducted the audits, and the documents were maintained in strict confidentiality. *See, e.g.*, MDL_WITHHELD_001576; MDL_WITHHELD_004965.

Following a privilege challenge by the PEC, Express Scripts submitted the Privileged Documents *in camera* to the Special Master on October 21, 2024. The Special Master issued the Ruling on November 16, 2024.

## **LEGAL STANDARD**

The Court reviews the Special Master's conclusions of fact and law *de novo*. Fed. R. Civ. P. 53(f)(3)–(4); *see also* Appointment Order at 5. "The question of whether the attorney-client privilege applies is a mixed question of law and fact, subject to de novo review." *Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998).

"The attorney-client privilege applies 'where legal advice of any kind is sought.'" *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *Reed*, 134 F.3d at 355. "Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. When a communication involves both legal and non-legal matters, we consider whether the predominant purpose of the communication is to render or solicit legal advice." *Id*. (cleaned up).

"It is well-established that 'the attorney-client privilege protects confidential employee communications made during a business's internal investigation led by company lawyers.'" *Myers v. City of Centerville*, 2023 WL 195427, at *4 (S.D. Ohio Jan. 17, 2023) (quoting *In re Kellogg Brown & Root, Inc*., 756 F.3d 754, 756 (D.C. Cir. 2014) (Kavanaugh, J.)). "So long as obtaining

or providing legal advice was one of the significant purposes of the internal investigation, the attorney privilege applies, even if there were also other purposes for the investigation." *Lee v. EUSA Pharma US LLC*, 2024 WL 250064, at *4 (E.D. Mich. Jan. 23, 2024) (quoting *Kellogg*, 756 F.3d at 758–59) (internal quotation marks omitted).

## ARGUMENT

The Special Master incorrectly ruled that the primary purpose of the Privileged Documents is "business advice," and therefore the documents are not protected by the attorney-client privilege. Ruling at 6–7. This decision erred for two reasons. *First*, the Ruling's holding that "compliance with regulations is usually a business matter, not a legal one" (Ruling at 5, 6), is wrong as a matter of law and contrary to decisions from the Supreme Court and the Sixth Circuit. *See Upjohn*, 449 U.S. at 394; *Alomari*, 626 F. App'x at 570. *Second*, even assuming that the Privileged Documents contain a mix of business and legal advice—which they do not—the legal advice predominates and the documents should be protected by the attorney-client privilege.

## I.   THE RULING ERRED IN HOLDING THAT REGULATORY COMPLIANCE IS NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

The Ruling's determination that regulatory compliance is primarily a business matter, not a legal matter, should be overruled. None of the authorities cited by the Ruling supports such a conclusion. And the Supreme Court has held that advice from counsel intended to ensure compliance with laws and regulations falls squarely within the attorney-client privilege.

In *Upjohn*, the Supreme Court determined that an internal investigation "concerning compliance with securities and tax laws, foreign laws, currency regulations, duties to shareholders, and potential litigation in each of these areas" was privileged. 449 U.S. at 394. The Court rejected the "narrow scope given the attorney-client privilege by the court below" because doing so "threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with

the law." *Id.* at 392. Here, the Ruling's narrow application of attorney-client privilege would discourage corporations from engaging in rigorous internal investigations and audits out of fear that such reports will be disclosed to their adversaries.

The Sixth Circuit has taken a similarly broad view of attorney-client privilege, applying it to communications "where legal advice of *any kind* is sought.'" *Alomari*, 626 F. App'x at 570 (emphasis added) (citations omitted). The Sixth Circuit defined "legal advice" as involving "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Id*. (quoting *In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007)). Regulatory compliance communications, such as the audits described in the Privileged Documents, are designed to fulfill such a legal purpose by "guid[ing] future conduct [and] assess[ing] past conduct." *Id*. (quoting *Erie*, 473 F.3d at 419). The Ruling's mistaken conclusion that internal legal investigations relating to regulatory and statutory compliance are nonprivileged "business" communications undermines the "purpose of attorney-client privilege [which] is to ensure free and open communications between a client and his attorney." *In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006).

Other courts in this circuit have concluded that attorney-client communications concerning regulatory advice and internal investigations are privileged. *See, e.g.*, *Cooey v. Strickland*, 269 F.R.D. 643, 650 (S.D. Ohio 2010) ("[W]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice.") (quoting *Erie*, 473 F.3d at 422); *Graff v. Haverhill N. Coke Co*., 2012 WL 5495514, at *9 (S.D. Ohio Nov. 13, 2012) (documents concerning in-house audit to assess company's compliance with regulatory requirements are privileged attorney-client communications); *United States v. Micro Cap KY Ins. Co., Inc*., 2017 WL 1745626, at *1 (E.D.

Ky. Feb. 8, 2017) (documents concerning "maintenance of legal and regulatory compliance" properly withheld as privileged); *Myers*, 2023 WL 195427, at \*4 ("It is well-established that 'the attorney-client privilege protects confidential employee communications made during a business's internal investigation led by company lawyers.'") (citation omitted); *Lee*, 2024 WL 250064, at \*4 ("So long as obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney privilege applies, even if there were also other purposes for the investigation.") (citation omitted); *Edwards v. Scripps Media, Inc*., 2019 WL 2448654, at \*1 (E.D. Mich. June 10, 2019) (same).

In *Kellogg*—which applied the same "primary purpose" test as the Sixth Circuit—the D.C. Circuit granted a writ of mandamus and vacated the district court's narrow application of privilege to documents concerning an internal investigation.[3] There, the district court held that documents relating to an internal investigation were not privileged because "'the primary purpose of' the internal investigation 'was to comply with federal defense contractor regulations, not to secure legal advice.'" 756 F.3d at 759. The district court reasoned that because defense contractors were required by regulations to maintain compliance programs and conduct internal investigations, the primary purpose of the investigation was to comply with those regulations rather than to seek legal advice. *Id*. at 758. In vacating the district court's decision, the D.C. Circuit concluded that the

---

[3] Several district courts both within and outside of the Sixth Circuit have adopted *Kellogg*'s reasoning. *See, e.g.*, *Myers*, 2023 WL 195427, at \*4; *Edwards v. Scripps Media, Inc.*, 2019 WL 2448654, at \*1; *Lee*, 2024 WL 250064, at \*4; *In re Gen. Motors LLC Ignition Switch Litig.*, 80 F. Supp. 3d 521, 530 (S.D.N.Y. 2015) ("[T]he D.C. Circuit's holding is consistent with—if not compelled by—the Supreme Court's logic in *Upjohn*."); *Smith-Brown v. Ulta Beauty, Inc.*, 2019 WL 2644243, at \*3 (N.D. Ill. June 27, 2019) ("The Court finds [*Kellogg*'s] analysis persuasive."); *Ramb v. Paramatma*, 2021 WL 5038756, at \*3 (N.D. Ga. Sept. 22, 2021); *Aetna Inc. v. Mednax, Inc.*, 2019 WL 6467349, at \*1 (E.D. Pa. Dec. 2, 2019); *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 231 (E.D.N.Y. 2019); *In re Smith & Nephew Birmingham Hip Resurfacing Hip Implant Prods. Liab. Litig.*, 2019 WL 2330863, at \*2–4 (D. Md. May 31, 2019).

district court's decision "rested on a false dichotomy," was "legally erroneous," and "would eradicate the attorney-client privilege for internal investigations conducted by businesses that are required by law to maintain compliance programs, which is now the case in a significant swath of American industry." *Id*. at 757–59. The proper application of the primary purpose test, the D.C. Circuit explained, asks whether "obtaining or providing legal advice [was] *a* primary purpose of the communication, meaning one of the significant purposes of the communication." *Id*. at 760. The Ruling's contrary reasoning is erroneous and should be overruled.

At best, the cases cited by the Ruling support the proposition that "where business and legal advice are intertwined, the legal advice must predominate for the communication to be protected." Ruling at 3 (quoting *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc*., 326 F.R.D. 176, 181 (N.D. Ill. 2018)). As an initial matter, "trying to find *the* one primary"—or predominant— "purpose for a communication motivated by two sometimes overlapping purposes (one legal and one business, for example) can be an inherently impossible task." *Kellogg*, 756 F.3d at 759. "It is often not useful or even feasible to try to determine whether the purpose was A or B when the purpose was A and B. It is thus not correct for a court to presume that a communication can have only one primary"—or predominant—"purpose." *Id.* But even if the predominant purpose formulation were correct, none of the cited decisions support the Ruling's conclusion that "compliance with regulations is usually a business matter, not a legal one." Ruling at 5.

The Ruling cites *Federal Trade Commission v. Abbvie, Inc*., 2015 WL 8623076, at *9 (E.D. Pa. Dec. 14, 2015) for the proposition that "attorney-client privilege does not apply . . . if the client seeks regulatory advice for a business purpose." Ruling at 4. But *Abbvie* does not hold that *all* regulatory advice is by definition business-related and therefore not privileged. Such a holding would contradict the Supreme Court and Sixth Circuit decisions cited above. Instead, *Abbvie*

simply holds that if the primary purpose of a communication is a business one, then the communication is not privileged.[4]

In *Zigler v. Allstate Ins. Co.*, also cited by the Ruling, the district court held that the disputed documents were "properly shielded from discovery by the attorney-client privilege." 2007 WL 1087607, at *4 (N.D. Ohio Apr. 9, 2007). The court noted that documents prepared for the purpose of obtaining or rendering legal advice are protected even if the documents also reflect or include business issues. *Id*. at *1.

The Ruling also cites the *Seroquel* MDL court for the proposition that "'[t]he fact of extensive or pervasive regulation does not make the everyday business activities legally privileged from discovery.'" Ruling at 3 (quoting *In re Seroquel Prod. Liab. Litig.*, 2008 WL 1995058, at *7 (M.D. Fla. May 7, 2008). This statement is not particularly controversial, but it is also inapplicable to the Privilege Documents at issue here. The *Seroquel* MDL court did not confront documents concerning internal investigations regarding legal compliance. Instead, the *Seroquel* MDL court reviewed "technological, science, public relations, or marketing" documents and held that these business-related documents were not privileged simply because attorneys had received them. *Seroquel*, 2008 WL 1995058, at *7. *Seroquel* does not support the Ruling.

In sum, the Ruling's conclusion that attorney-client communications concerning regulatory compliance are primarily for a business purpose—and therefore not privileged—is wrong as a matter of law and should be vacated.

---

[4] In addition, a subsequent decision from the same court explained that "[b]usiness and legal matters are often difficult to distinguish" and "[i]f getting or receiving legal advice 'was one of the significant purposes of the [communication]' the privilege should apply, even if there were additional purposes." *Aetna*, 2019 WL 6467349, at *1 (quoting *Kellogg*, 756 F.3d at 758–759).

## II.  THE PRIVILEGED DOCUMENTS HAVE A PRIMARILY LEGAL PURPOSE

The Ruling also erroneously concludes that "although ESI's documents may well contain advice from a lawyer, the advice concerns how to structure business operations to ensure compliance with regulatory requirements. It is business advice. It is not protected by attorney-client privilege." Ruling at 6–7. This error is inextricably tied up with the Ruling's legal error, discussed above, concluding that regulatory compliance serves a business function, not a legal function. But as a factual matter, the Ruling's conclusion is not supported by the documents.

Here, the Privileged Documents are, on their face, primarily designed to provide legal advice. As the Ruling recognizes, the documents represent that their scope is to assess compliance with state and federal laws and regulations. Ruling at 6. The documents rarely, if ever, reference business considerations. These documents were created by or at the direction of in-house attorneys, including primarily in-house counsel Therese Twomey. On their face, the Privileged Documents satisfy the tests set forth by the Supreme Court and the Sixth Circuit, as their primary purpose is to provide legal advice.

The Privileged Documents are described on their face as conducted "under the direction of the Legal Department." *See e.g.*, MDL_WITHHELD_001435 at 2. The memoranda of findings are marked as "Prepared by the Legal Department," and as a "Privileged Legal Communication." *See, e.g.*, MDL_WITHHELD_001576, every page 2–9; MDL_WITHHELD_001646, every page 2–9; MDL_WITHHELD_001803, every page 2–7; MDL_WITHHELD_002843, every page 2–29; MDL_WITHHELD_004632, every page; MDL_WITHHELD_004964, every page; MDL_WITHHELD_004965, every page 2–21; MDL_WITHHELD_004993 (similar, "Privileged Legal Communication / Attorney Work Product," every page); MDL_WITHHELD_004827 (similar, "Attorney Client and Work Product privileges," every page). The findings are provided to ESI's attorneys to inform their legal advice. *See* MDL_WITHHELD_001433.

The Ruling observes that, in addition to lawyers, a number of non-lawyers also received the documents. Ruling at 6. Yet the Ruling does not cite any cases indicating that the number of non-lawyer recipients waives privilege or is otherwise relevant to a privilege analysis. In fact, such a conclusion is contrary to *Upjohn*, where the Supreme Court rejected the "control group" test that unduly limited privilege to a small set of individuals within a corporation. The Supreme Court held that artificially limiting who the attorney-client privilege applies to in the corporate context "makes it more difficult to convey full and frank legal advice to the employees who will put into effect the client corporation's policy." *Upjohn*, 449 U.S. at 392. The case cited by the Ruling, *Graff*, stands for the unremarkable proposition that an "otherwise business-related memo" does not become privileged just because "in-house counsel appears as one of many recipients." 2012 WL 5495514, at *21 (citation omitted). This proposition is applicable only if the communication at issue is primarily business-related. It is not applicable here, where reports of internal investigations conducted by in-house counsel regarding compliance with laws and regulations are circulated to individuals responsible for implementing that same legal advice.

Moreover, the participation of non-lawyers in an internal investigation does not deprive that communication of privilege. When an investigation is "conducted at the direction of the attorneys in [Express Scripts'] Law Department," it is protected even if the person conducting the audit is not personally a lawyer or sitting in the Express Scripts Legal Department. *See Kellogg*, 756 F.3d at 758. Given that "communications made by and to *non-attorneys* serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege," it is even more evident that communications to and from *in-house attorneys* serving as agents of other attorneys in the Express Scripts legal department are protected. *Id.* (emphasis added).

With respect to the Privileged Documents, the investigative findings are generally presented by: (i) stating the laws or regulations at issue, (ii) providing the impressions of the investigating attorney (or person directed by in-house attorneys) in their investigation, and (iii) identifying any suggested steps Express Scripts should take for legal compliance. This is "[f]undamentally, legal advice," because it "involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Alomari*, 626 F. App'x at 570 (cleaned up). And "[s]o long as obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney privilege applies, *even if there were also other purposes for the investigation* and even if the investigation was mandated by regulation rather than simply an exercise of company discretion." *Kellogg*, 756 F.3d at 758–59 (emphasis added). The Ruling's conclusion to the contrary is wrong as a matter of law and should be overruled.

## III. IF THE COURT AFFIRMS THE SPECIAL MASTER'S PRIVILEGE RULING, IT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B)

If the Court overrules this objection and affirms the Ruling, Express Scripts respectfully requests that the Court certify its order for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b). A party "confronted with a particularly injurious or novel privilege ruling . . . may ask the district court to certify, and the court of appeals to accept, an interlocutory appeal pursuant to 28 U.S.C. § 1292(b)." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110 (2009). Certification under Section 1292(b) is appropriate where (i) an order "involves a controlling question of law," (ii) on which "there is a substantial ground for difference of opinion," and (iii) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Those "three factors . . . should be treated as *guiding criteria* rather than *jurisdictional* requisites." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3930 (3d ed. 2002)); *see also Swint v. Chambers County Com'n*,

514 U.S. 35, 47 (1995) (Congress "chose to confer on district courts first line discretion to allow interlocutory appeals.").

These criteria are satisfied here. The Supreme Court has held that § 1292(b) review is particularly appropriate in the case of privilege rulings:

> The preconditions for § 1292(b) review—"a controlling question of law," the prompt resolution of which "may materially advance the ultimate termination of the litigation"—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases.

*Mohawk*, 558 U.S. at 110–11; *see* Wright & Miller, *Federal Practice and Procedure, supra* § 3930 (explaining that it is "highly desirable to hold § 1292(b) available" for significant privilege rulings). Several courts of appeals, including the Sixth Circuit, have granted interlocutory appeal pursuant to § 1292(b) in cases involving privilege. *See In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 293 (6th Cir. 2002) (interlocutory appeal under § 1292(b) regarding whether privilege and work production protection were waived); *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1328 (11th Cir. 2018) (interlocutory appeal under § 1292(b) to determine application of the crime-fraud exception to privilege); *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 339 (9th Cir. 1996) (granting review under § 1292(b) to determine scope of privilege waiver).

## A.    The Court's Order Involves A Controlling Question Of Law

The first § 1292(b) factor is met when an order involves (i) a question of law and (ii) that question is controlling. *See Vitols v. Citizens Banking Co.*, 984 F.2d 168, 170 (6th Cir. 1993). A suitable question of law is one that the "court of appeals could decide quickly and cleanly without having to study the record." *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 2017 WL 2222552, at *3 (E.D. Mich. May 22, 2017). Thus, in appropriate cases, "[m]ixed questions of fact and law are treated as questions of law for purposes of an interlocutory appeal." *Newsome v. Young Supply*

12

*Co*., 873 F. Supp. 2d 872, 875 (E.D. Mich. 2012) (quoting *Flint v. Ky. Dept. of Corrections*, 270 F.3d 340, 346 (6th Cir. 2000)).

For purposes of § 1292(b), "[t]he Sixth Circuit has . . . set a low bar for a determination that a question of law is 'controlling.'" *Newsome*, 873 F. Supp. 2d at 875–76. "All that must be shown . . . is that resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 915 (E.D. Mich. 2003) (citing *Rafoth v. Nat'l Union Fire Ins. Co*., 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)) (quotations omitted). The question here meets that test. The Sixth Circuit has held that "[t]he question of whether the attorney-client privilege applies is a mixed question of law and fact, subject to de novo review." *Reed*, 134 F.3d at 355; *see also Mohawk*, 558 U.S. at 110–11 (a privilege ruling involves a controlling question of law where it involves "a new legal question or is of special consequence"). The court's order—determining whether the Ruling correctly applied the law of privilege as to the Privileged Documents—involves a question of law that could materially affect this litigation and therefore is ripe for appellate review.

### B.    There Is Substantial Ground For Difference Of Opinion

The Court's order on this objection will involve a question of law for which there is a substantial ground for difference of opinion. A substantial ground for difference of opinion exists when "(1) the issue is difficult and of first impression; (2) a difference of opinion exists within the controlling circuit; or (3) the circuits are split on the issue." *Deutsche Bank Nat. Trust Co. v. Wickert*, 638 F. Supp. 2d 826, 831 (N.D. Ohio 2009) (quotation omitted). It also "may exist where the Sixth Circuit has not rendered a decision on the matter, and the relevant authorities are susceptible to competing interpretations." *Winnett v. Caterpillar, Inc*., 2007 WL 2123905, at *4 (M.D. Tenn. July 20, 2007) (quotations marks omitted).

Several of those guideposts are present here. District courts in the Sixth Circuit have differed regarding the appropriate test to apply when determining whether communications involving mixed legal and business purposes satisfy the Sixth Circuit's primary purpose test. *Compare* Dkt. No. 5053 at 7 (declining to follow *Kellogg*) with *Myers*, 2023 WL 195427, at *4 (citing *Kellogg* approvingly); *Edwards*, 2019 WL 2448654, at *1 (same); *Lee*, 2024 WL 250064, at *4 (same). The circuits have indicated some potential disagreement on the question as well, which recently led the Supreme Court to grant certiorari on the issue. *See In re Grand Jury*, 143 S. Ct. 80 (2022).[5] And while the Sixth Circuit has endorsed the primary purpose test, *Alomari*, 626 F. App'x at 570, it has not weighed in on whether communications concerning regulatory compliance should be treated as primarily business-related.

### C. An Immediate Appeal May Materially Advance The Ultimate Termination Of The Litigation

The third and final factor is met when "appellate review could appreciably shorten the time, effort and expense exhausted between the filing of a lawsuit and its termination." *League of Women Voters of Ohio v. Blackwell*, 2006 WL 1580032, at *2 (N.D. Ohio Feb. 10, 2006) (citation and internal quotation marks omitted). This requirement "overlaps" with the requirement that the order must present a controlling question of law. *See Hale v. Johnson*, 2016 WL 8673579, at *8 (E.D. Tenn. Feb. 2, 2016).

This factor is satisfied for two reasons. *First*, if the Court's order affirming the Ruling is reversed after trial, the Sixth Circuit could order a new trial excluding the Privileged Documents and other evidence resulting from their disclosure. This result would delay the ultimate termination of the litigation. *See Black & Decker (US), Inc. v. Smith*, 2008 WL 3850825, at *4 (W.D. Tenn.

---

[5] The Supreme Court did not resolve the conflict because it later dismissed the case as improvidently granted. *In re Grand Jury*, 143 S. Ct. 543 (2023).

Aug. 13, 2008) (appeal likely to materially advance ultimate termination of the litigation where interlocutory appeal "might prevent this case from having to be tried twice"). *Second*, the Court's decision as to the applicability and scope of the attorney-client privilege could materially affect which evidence is presented at summary judgment and trial, and therefore may advance the ultimate disposition of the case. *See Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970) ("Review under § 1292(b) is available where decision on an issue would affect the scope of the evidence in a complex case, even short of requiring complete dismissal."); *see also* Wright & Miller, *supra* § 3930 ("Review of [privilege] orders may be rested on the ground that reversal and subsequent denial of production may make it possible to dispose of the case quickly for lack of evidence, or at least expedite discovery and trial.").

## <u>CONCLUSION</u>

This Court should sustain Express Scripts' objection to the Ruling and affirm that the Privileged Documents are protected by the attorney-client privilege. If the Court chooses to affirm the Ruling, it should certify its order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: November 26, 2024

*/s/ Jonathan G. Cooper*
Michael J. Lyle
Jonathan G. Cooper
Matthew K. Wasserman
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com
matthewwasserman@quinnemanuel.com


Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
sagevandenheuvel@quinnemanuel.com


*Attorneys for Express Scripts, Inc. and ESI
Mail Pharmacy Service, Inc.*