# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** | ) **MDL 2804** |
| | ) |
| | ) **Case No. 1:17-md-2804** |
| | ) |
| **THIS DOCUMENT RELATES TO:** | ) **Judge Dan Aaron Polster** |
| | ) |
| *ALL THIRD PARTY PAYOR ACTIONS* | ) |

**THIRD PARTY PAYOR PLAINTIFFS' REPLY
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS
AND RESPONSE TO OBJECTION BY UNITED HEALTHCARE SERVICES, INC.**

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.      POSITIVE RESPONSE FROM TPP SETTLEMENT CLASS MEMBERS.....................1

II.     CLASS REPRESENTATIVE SERVICE AWARDS...........................................................3

III.    ATTORNEYS' FEES AND EXPENSES.............................................................................4

IV.     UPDATED HOURS AND LITIGATION COSTS. ............................................................4

V.      THE COURT SHOULD OVERRULE UNITED HEALTHCARE'S SINGULAR
        AND SELF-SERVING OBJECTION ................................................................................5

        A.      United's Fully Insured Commercial Plans and PBM Are Unaffected by the
                Settlement and Suffer No Prejudice....................................................................6

        B.      The Settlement is Fair, Reasonable, and Adequate.................................................9

                1.      The TPP Settlement Class Is Ascertainable.................................................9

                2.      Interim Settlement Class Counsel Protected the Interests of the
                        TPP Settlement Class.................................................................................12

                3.      The Settlement Was Not the Product of Collusion ....................................15

                4.      TPP Settlement Class Counsel and Class Representatives Have
                        Adequately Represented the TPP Settlement Class...................................18

                5.      The Settlement Provides Substantial Relief Balanced Against the
                        Risks of Continued Litigation....................................................................19

VI.     CONCLUSION................................................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Agretti v. ANR Freight Sys., Inc.*,
  982 F.2d 242 (7th Cir. 1992) ...................................................................................6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...............................................................................................14

*Ball v. Dewine*,
  2021 WL 4047032 (6th Cir. June 30, 2021) ............................................................7

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
  238 F.R.D. 679 (S.D. Fla. 2006)............................................................................10

*Chambers v. Cont'l Secret Serv. Bureau, Inc.*,
  2024 WL 4363161 (N.D. Ohio Sept. 30, 2024)..............................................15, 19

*Compound Prop. Mgmt. LLC v. Build Realty, Inc.*,
  343 F.R.D. 378 (S.D. Ohio 2023) ..........................................................................18

*Does 1-2 v. Déjà Vu Servs., Inc.*,
  925 F.3d 886 (6th Cir. 2019) ...........................................................................17, 20

*Espinoza v. Galardi S. Enters., Inc.*,
  2016 WL 127586 (S.D. Fla. Jan. 11, 2016) ...........................................................10

*Gooch v. Life Invs. Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) ..................................................................................19

*Gresky v. Checker Notions Co.*,
  2022 WL 3700739 (N.D. Ohio Aug. 26, 2022)........................................................2

*Haralson v. U.S. Aviation Servs. Corp.*,
  383 F. Supp. 3d 959 (N.D. Cal. 2019) ...................................................................21

*Hicks v. State Farm Fire & Cas. Co.*,
  965 F.3d 452 (6th Cir. 2020) ...................................................................................8

*In re Cardinal Health, Inc. ERISA Litig.*,
  225 F.R.D. 552 (S.D. Ohio 2005)...........................................................................18

*In re E. Palestine Train Derailment*,
  2024 WL 4367524 (N.D. Ohio Sept. 27, 2024).................................................2, 20

*In re E. Palestine Train Derailment*,
  2024 WL 4370003 (N.D. Ohio Sept. 27, 2024).......................................................17

*In re Flint Water Cases*,
  583 F. Supp. 3d 911 (E.D. Mich. 2022)....................................................................17

*In re Oil Spill by Oil Rig Deepwater Horizon*,
  295 F.R.D. 112 (E.D. La. 2013)................................................................................6

*In re Polyurethane Foam Antitrust Litig.*,
  2015 WL 1639269 (N.D. Ohio Feb. 26, 2015)........................................................17

*In re Polyurethane Foam Antitrust Litigation*,
  168 F. Supp. 3d 985 (N.D. Ohio 2016)....................................................................21

*In re Roundup Prods. Liab. Litig.*,
  666 F. Supp. 3d 1011 (N.D. Cal. 2023), *aff'd*, 2024 WL 2745210 (9th Cir. May 29, 2024)..13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
  2018 WL 6267840 (N.D. Cal. Sept. 24, 2018) ..........................................................2

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................................................2

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  302 F.R.D. 448 (N.D. Ohio 2014) .............................................................................8

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ..........................................................................15

*Mirfasihi v. Fleet Mortg. Corp.*
  356 F.3d 781 (7th Cir. 2004) ...................................................................................13

*Murray v. Grocery Delivery E-Servs. USA Inc.*,
  55 F. 4th 340 (1st Cir. 2022)...................................................................................13

*Olden v. LaFarge Corp.*,
  472 F. Supp. 2d 922 (E.D. Mich. 2007).........................................................8, 19, 20

*Rahman v. Vilsack*,
  673 F. Supp. 2d 15 (D.D.C. 2009) .............................................................................6

*Rikos v. Procter & Gamble Co.*,
  799 F.3d 497 (6th Cir. 2015) ...................................................................................11

*Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*,
  825 F.3d 299 (6th Cir. 2016) ...................................................................................19

*Speerly v. Gen. Motors, LLC*,
  115 F.4th 680 (6th Cir. 2024) ....................................................................................7

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*,
  262 F.3d 559 (6th Cir. 2001) .....................................................................................5

*Treviso v. Nat'l Football Museum, Inc.*, 2024 WL 753560 (N.D. Ohio Feb. 12, 2024),
  *report and recommendation adopted*, 2024 WL 724530 (N.D. Ohio Feb. 22, 2024) ............12

*United HealthCare Servs., Inc. v. Insys Therapeutics, Inc.*,
  No. 1:19-OP-45731 (N.D. Ohio) .........................................................................................12

*UnitedHealthcare Ins. Co. v. Becerra*,
  16 F.4th 867 (D.C. Cir. 2021).............................................................................................12

*Wilson v. Columbia Gas Transmission, LLC*,
  2015 WL 422843 (S.D. Ohio Feb. 2, 2015)........................................................................18

*Yates v. Applied Performance Techs., Inc.*,
  209 F.R.D. 143 (S.D. Ohio 2002) .......................................................................................18

*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2012) ...................................................................................9, 10, 11

*Zink v. First Niagara Bank, N.A.*,
  155 F. Supp. 3d 297 (W.D.N.Y. 2016) ............................................................................... 21

## STATUTES, RULES, AND REGULATIONS

Federal Rules of Civil Procedure
  Rule 23(b)(3)........................................................................................................................7
  Rule 23(e)............................................................................................................................5
  Rule 23(e)(1)......................................................................................................................15
  Rule 23(e)(2)..................................................................................................................8, 15
  Rule 23(e)(2)(C)(i).............................................................................................................19
  Rule 23(e)(2)(D)...........................................................................................................12, 13
  Rule 23(g)..........................................................................................................................16

## SECONDARY AUTHORITIES

Charles Alan Wright & Arthur R. Miller, 7A Fed. Prac. & Proc. Civ. §1751 (4th ed. 2020).......11

Manual for Complex Litigation (Fourth) §21.222 ......................................................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

Third-Party Payor ("TPP") Plaintiffs[1] respectfully submit this Reply Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards ("Motion") (ECF 5694) and Response to Objection by United HealthCare Services, Inc. ("Objection") (ECF 5746).

## I.  POSITIVE RESPONSE FROM TPP SETTLEMENT CLASS MEMBERS

November 11, 2024, was the deadline for TPP Settlement Class members to request exclusion from or object to the Settlement.  Of the approximately 42,000 Class members who received notice, less than 0.17% submitted timely exclusion requests.  *See* Exclusion Report, ECF 5775.[2]  Beyond the statistically insignificant number of opt outs, there was only one objection. United's[3] subsidiary, United HealthCare Services, Inc. ("United HealthCare" or "Objector") takes the paradoxical stance of demanding that United's fully insured commercial plans be included in the Settlement while simultaneously condemning the Settlement and Class Counsel as inadequate. Significantly, despite United HealthCare's attempt to obscure this contradiction, no objections

---

[1]    Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; Flint Plumbing and Pipefitting Industry Health Care Fund; United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania; and Sheet Metal Workers Local No. 25 Health & Welfare Fund (collectively, "Settlement Class Representatives," "TPP Plaintiffs," or "Plaintiffs").  All capitalized terms herein shall have the same definitions as set forth in the Motion.

[2]    As the court is aware, some exclusion requests sent by one law firm were not received by the deadline because the email address was misspelled.  The parties are continuing to address these opt outs requests with that firm and will submit an Amended Exclusion Report as appropriate.  The calculation of "0.17%" includes these possible opt outs and, therefore, represents the ***maximum*** possible exclusion rate.

[3]    Herein, "United" shall have the same meaning as "UnitedHealth" in the Settlement Agreement. SA at I.AAA. and Ex. G.

were filed by the four other Excluded Insurers or any of the over 40,000 members of the TPP Settlement Class.

This very low exclusion rate and the singular objection are persuasive evidence that TPP Settlement Class members favor the proposed settlement; take no issue with the fairness and adequacy of the proposed settlement; and approve of Interim Settlement Class Counsel's requests for reasonable attorneys' fees, expenses, and Class Representative service awards. *See, e.g.*, *In re E. Palestine Train Derailment*, 2024 WL 4367524, at *2 (N.D. Ohio Sept. 27, 2024) (granting final approval to class settlement where .083% opted out and only 84 individuals objected out of class of 463,271); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *3 (N.D. Cal. May 10, 2019) ("The small number of objections and opt outs supports that the settlement and plan of allocation are fair, reasonable, and adequate."); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2018 WL 6267840, at *4 (N.D. Cal. Sept. 24, 2018) (noting that low objection and opt-out rates may "alone suggest[] that the settlements are fair"). The "inclusion rate of over 99% is exceptional." *Gresky v. Checker Notions Co.*, 2022 WL 3700739, at *6 (N.D. Ohio Aug. 26, 2022).

That United HealthCare is the ***only*** objector is telling, particularly given its misleading attempts to speak for others. Repeatedly throughout its brief, United HealthCare insinuates that it argues on behalf of not only itself, but the "Other Excluded Fully Insured Commercial Health Plans," and, most egregiously, the self-funded plans they all administer. *See, e.g.*, Objection at 1-2 ("United and the Other Excluded Fully Insured Commercial Health Plans (and the tens of thousands of self-funded health plans that they administer) had no opportunity until now to provide input or voice concerns regarding the Settlement."). This claim rings hollow. Each of the other Excluded Insurers – Aetna, Elevance Health (f/k/a Anthem), Cigna, and Humana – are

sophisticated entities with their own legal counsel who have had ample opportunity to evaluate the Settlement, and self-funded plans are independent legal entities with their own due process rights. Moreover, none of the other Excluded Insurers objected to the Settlement or the exclusions.[4] Aetna did not object. Elevance Health (f/k/a Anthem) did not object. Cigna did not object. Humana did not object. More importantly, even if United had the legal right to opt-out all of the self-funded plans it administers *en masse* (it assuredly does not), it has not attempted to do so. Indeed, the majority of the over one hundred TPPs that actually filed lawsuits against the Settling Distributors – something United has never done despite protestations of playing an "active" role in this MDL (another falsehood, outside of UnitedHealth Group and Optum's role as a PBM defendant) – have decided to remain in the Class. Less than 0.17% of TPP Settlement Class members have opted out, and United HealthCare stands alone in objecting. This isolation underscores United HealthCare's atypicality against a Class of relatively small TPPs and suggests its objection is motivated by self-interest rather than legitimate concern for the Class.

## II. CLASS REPRESENTATIVE SERVICE AWARDS

Interim Settlement Class Counsel has requested that each of the now eight proposed Settlement Class Representatives be granted an award of $10,000, each, in recognition of their service and activities as bellwethers, named plaintiffs, and Class Representatives on behalf of TPPs in this MDL. There has been no objection to such awards.

---

[4]   In this regard, the Declaration of Clarence Carleton King (Exhibit D to the Objection) only seeks to further United HealthCare's misrepresentations. Most of the Declaration discusses the number of fully insured covered lives of each of the Excluded Insurers and computes a total percentage of the TPP healthcare market.

## III.    ATTORNEYS' FEES AND EXPENSES

Interim Settlement Class Counsel has requested that the Court award attorneys' fees of up to 20% of the $300 million Settlement Funds (that is, fees of up to $60 million), with this application inclusive of the common benefit assessment due under the Court's common benefit-related Orders, which shall be allocated by the Fee Panel, plus all reimbursable expenses and service awards.  The fee award net of the common benefit assessment shall be allocated by Co-Lead Settlement Class Counsel firms actively litigating on behalf of the TPP Settlement Class, with any appeals to such allocation going to Special Master Cohen.

There has been no objection to such award or allocation, other than United HealthCare's maligning suggestion that Class Counsel intend to "abscond" with the fees.  Objection at 3.  This is, of course, nothing but inflammatory rhetoric, and we address it further below.[5]

## IV.    UPDATED HOURS AND LITIGATION COSTS.

Interim Settlement Class Counsel request reimbursement of out-of-pocket TPP-related expenses that have been advanced and incurred, without reimbursement to date, by Class Counsel, TPP bellwether counsel, and counsel working for the benefit of TPPs in this MDL.  As explained in the Motion, Interim Settlement Class Counsel and counsel working for the benefit of TPPs in this MDL incurred, or expect to incur, shortly, expenses not to exceed $750,000.00 while prosecuting this case on behalf of the TPP Settlement Class.  These expenses include, for example, filing fees, telephone and messenger charges, expert costs, e-discovery database hosting, data vendor costs, and online legal research.

---

[5]    As the Court is well aware, inflammatory rhetoric and ad hominem attacks in place of straightforward legal arguments are par for the course for United and its PBM, Optum.

## V.     THE COURT SHOULD OVERRULE UNITED HEALTHCARE'S SINGULAR AND SELF-SERVING OBJECTION

United HealthCare's objection presents an irreconcilable contradiction: it simultaneously demands inclusion in the Settlement while declaring that same Settlement insufficient to remedy its harms or, more shockingly, to abate an epidemic that its parent and United's own PBM are alleged to have caused!   This position defies logic – if United HealthCare truly believes the Settlement amount is inadequate, it should embrace its exclusion from the Class, which preserves its right to pursue compensation for the fully insured commercial plans through individual litigation.  *See Declaration of Professor William B. Rubenstein in Response to Objection*, Ex. A ("Rubenstein Decl.") ¶18 ("[T]he Objection alleges that the Objector's damages are large – far greater than the return achieved by the class – hence it has every incentive to litigate on its own."). It also could have submitted exclusion requests on behalf of the Medicare Part C and D plans and Medicaid plans it administers (it did not).   United HealthCare's true motivation is transparent: it seeks to avoid judicial scrutiny of its claims, knowing that in a courtroom it would be compelled to confront its substantial role in fueling the opioid epidemic and address the formidable, distinct legal barriers it faces in pursuing claims against the Settling Distributors.

The Court should overrule United HealthCare's objections.[6]

---

[6]    United HealthCare purportedly submitted the Declaration of Alan D. Halperin (Exhibit C to the Objection) in support of its objection.  However, the Declaration adds nothing to its arguments. Mr. Halperin, as Trustee of the Mallinckrodt Bankruptcy TPP Trust, merely recites the definition of TPP claims in that bankruptcy and describes the claims made by TPP claimants, including those of the Excluded Insurers.  Similarly, the fact that United HealthCare Services filed a claim in the Mallinckrodt Bankruptcy (Exhibit B to the Objection) is of no moment.

**A.  United's Fully Insured Commercial Plans and PBM Are Unaffected by the Settlement and Suffer No Prejudice**

It is black-letter law that only those whose legal rights are at issue can object to a proposed class settlement – *e.g.*, class members.  *See Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 566 (6th Cir. 2001) ("under Rule 23(e), non-class members have no standing to object").  Here, by design and definition, United's legal rights for itself and its fully insured commercial plans are not at issue.  United comprises over 2,000 entities, including Medicare Part C and D plans, Medicaid plans, fully insured commercial plans, and the Optum PBM.  Settlement Agreement ("SA") at §I.AAA. and Ex. G.  It also provides administrative services to separate, self-funded plans, commonly called Administrative Services Only plans ("ASOs").  Under the Class definition, the Medicare Part C and D plans, Medicaid plans, and ASOs are governed by this Settlement, but United, its PBM, and its fully insured commercial plans are excluded.  *See* SA at §III.A.1.a.

As United HealthCare's own authority notes, a *sine qua non* of the standing analysis is whether the proposed settlement will prejudice the objecting party.  *Rahman v. Vilsack*, 673 F. Supp. 2d 15 (D.D.C. 2009).  "Prejudice in this context means plain legal prejudice, as when the settlement strips the party of a legal claim or cause of action."  *Id.* (quoting *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 247 (7th Cir. 1992)) (cleaned up); *see also In re Oil Spill by Oil Rig Deepwater Horizon*, 295 F.R.D. 112, 154 (E.D. La. 2013) (entities objecting to exclusions did not have standing because "they retain[ed] any claims they might have against [defendant], and their interests are not affected by the [s]ettlement [a]greement").

Like in *Rahman*, United's legal rights against Settling Distributors with respect to the fully insured commercial plans are unaffected by this Settlement.  "Releasors" is defined under the Settlement Agreement as "the Class, and each of their past, present, and future direct or indirect

- 6 -

parents, subsidiaries, divisions, sister companies, affiliates, joint ventures, predecessors, assigns, related entities, [and] holding companies." SA at §I.TT. But the Agreement clearly provides that "any entity excluded from being a Class Member under Section III.A.1.b. is excluded from the definition of Releasor." *Id.* United's Medicare Part C and D and Medicaid plans – unique entities within the healthcare space that are administered by private insurers but are funded in large part by governmental contributions and are subject to federal and state regulations – are Class members and Releasors under the Agreement. However, United retains all legal rights on behalf of its fully insured commercial plans and for its PBM, and it is free to sue relating to those businesses. United HealthCare itself concedes this point. *See* Objection at 7 ("If not included in the Settlement, United . . . will now have to file a series of new cases from scratch, even though those cases would involve the same legal and factual questions purportedly resolved in the Settlement[.]").[7] And the Settling Distributors do not disagree. Settling Distributors' Response to United Objection to TPP Plaintiffs' Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards ("Settling Distributors' Response") at 4-5.

Curiously, United HealthCare next argues that it is prejudiced, ***not because it has been stripped of legal claims or rights***, but because as a non-settling party, it would be required to litigate those claims itself. That is not prejudice. *See Ball v. Dewine*, 2021 WL 4047032, at *3 (6th Cir. June 30, 2021) (non-settling parties not prejudiced from settlement that may force second suit against dismissed parties). And its argument displays a fundamental misunderstanding of the class action mechanism. Rule 23(b)(3) preserves individual due process rights – including the freedom to make one's own decision regarding whether to stay in a proposed class or to sue, and

---

[7] United HealthCare's attempt elsewhere in its brief to suggest that all of its claims might be released, Objection at 13-14, is just another of several inconsistencies within the Objection.

a putative class may offer tolling. But putative Rule 23 classes do not guarantee freedom from ever having to sue, as evidenced by the fact that class definitions are often modified after certification or at settlement. *See Speerly v. Gen. Motors, LLC*, 115 F.4th 680, 711 (6th Cir. 2024) ("'[T]he district court has the power to amend the class definition *at any time* before judgment.'") (emphasis in original) (quoting *Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 462 (6th Cir. 2020)); *see, e.g.*, *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 302 F.R.D. 448, 460 (N.D. Ohio 2014) (modifying class definition post-certification "to better reflect new evidence"); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 934 (E.D. Mich. 2007) (expanding class definition at settlement "to include more people than the class as originally certified").

Prior to the September 2024 filing of a TPP placeholder class complaint, there was no single, consolidated class case in the MDL with an operative (putative) class definition, and the proposed Settlement Class represents the first certified TPP class in this litigation. Thus, United HealthCare's repeated reliance on an "originally pled" class definition, *see, e.g.*, Objection at 1, is belied by the record. Also, United HealthCare points to no legal authority for the remarkable proposition that an absent class member holds absolute veto power over putative class definitions in multiple cases filed across the MDL and in state courts (no such right exists). *See* Rubenstein Decl. ¶16 (analyzing Holocaust Victims litigation where Second Circuit denied intervention to excluded putative class members, affirming that broad class allegations included in the original complaint do not create vested rights and finding no prejudice despite claimed litigation obstacles in bringing their own lawsuit).

If United is prejudiced in having to now decide whether to file suit for claims and damages on behalf of the fully insured commercial plans, it is no more prejudiced than any other plaintiff

making that same decision.  In fact, United's sophistication and proven ability to litigate put it in far better stead than most.

### B.      The Settlement is Fair, Reasonable, and Adequate

The Court has already found that it will likely be able to certify the proposed Settlement Class under Rule 23(e)(2) because, *inter alia*, the Class is ascertainable and the Settlement is fair, reasonable, and adequate. ECF 5616 at 4-5.  United HealthCare presents a series of contradictory arguments that should not persuade the Court to disrupt its prior conclusions.

### 1.      The TPP Settlement Class Is Ascertainable

United HealthCare's ascertainability argument collapses under the weight of its own internal contradiction: it simultaneously claims the Class is not ascertainable while demonstrating its perfect understanding of what is included in, and excluded from, the Class.  This contradiction is particularly stark given United HealthCare's expressed desire for its fully insured commercial plans to be included in the very Settlement Class it claims is unascertainable.

The Settlement Class membership is readily determinable through "reference to objective criteria." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012).  Class members must have paid for the specific drugs or treatment at issue in MDL 2804 TPP cases, on behalf of beneficiaries, and must have done so during a specific time period.  SA at §III.A.1.a.  The Class specifically includes Medicare Part C and D and Medicaid plans and self-funded plans, including those administered by Excluded Insurers, and it excludes the five specific entities, PBMs, and MDL 2804 defendants.  Thus, as stated by Professor Rubenstein: "Membership in the class is easily ascertained; indeed, the class definition even clearly specifies the identities of the five excluded, atypical TPPs." Rubenstein Decl. ¶11. In fact, United HealthCare itself accurately ascertains the meaning of these exclusions: it may file settlement fund claims on behalf of the Medicare/Medicaid plans, but United may not file settlement fund claims for its PBM or the fully

- 9 -

insured commercial plans.  *See* Objection at 10-11.  There is simply no dispute between the parties on this point.

Next, the fact that United may file claims on behalf of the Medicaid and Medicare Part C and D plans for settlement funds related to payment for prescription opioids or medical care, while United is excluded as a provider of fully insured commercial plans and as a PBM (and defendant), is not a matter of arbitrary and capricious line drawing.  Rather it reflects legitimate factual and legal considerations, such as those that commonly shape class definitions.  These considerations include: (1) avoiding determinative legal issues, *see Young*, 693 F.3d at 538 (discussing fail-safe class) and (2) managing divergent business interests, *see* Manual for Complex Litigation (Fourth) §21.222 (stating that separate subclasses may be appropriate where class members have divergent interests).  The five Excluded Insurers are much larger than the typical TPPs who comprise the Class.  They also played a significant role in the opioid supply chain, both as benefit designers and pharmacy benefit managers, which provided them with greater insight into opioid prescribing than many other parties in the supply chain.  Settling Distributors' Response at 4.  Perhaps unsurprisingly given these facts, United's PBM is a defendant in the MDL, meaning Settling Distributors may have different cross-claims and defenses against United than they would against other TPPs.  *Id.* at 2.

United HealthCare's reliance on *Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679 (S.D. Fla. 2006), is misplaced.  Objection at 10.  *Tenet Healthcare* addressed a fundamentally different concern – whether using a specific numerical threshold could fairly distinguish between hospitals that engaged in alleged misconduct and those that did not.  *Id.* at 689-91.  The court found the threshold line there was arbitrary because hospitals with cost ratios just barely above the line would be included in the class and receive damages, while those just

barely below would be excluded, despite engaging in similar conduct.  *Id.* at 690; *but see Espinoza v. Galardi S. Enters., Inc.*, 2016 WL 127586, at *6 (S.D. Fla. Jan. 11, 2016) (holding that, under principles of *res judicata*, potential plaintiffs who opted in to prior federal class settlement were **not** arbitrarily excluded from analogous state claim class definition).  Here, by contrast, the exclusion of the five large TPPs is not based on an arbitrary numerical threshold.  Rather, as explained above, substantive, non-hypothetical factors create meaningful distinctions that justify the exclusions.  *See also* Rubenstein Decl. ¶12 (noting Class is not arbitrary but "would be arbitrary if, say, every 15th TPP on a list were randomly excluded and/or every TPP with a name beginning with 'N' were excluded.").

United HealthCare's secondary criticism of the inclusion of "plans for self-insured local governmental entities" because Class members may need to cross-reference other settlements, also fails.  Objection at 12.  The Sixth Circuit has recognized that identifying class members may require "additional, even substantial" review of records.  *See Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015) (citing *Young*, 693 F.3d at 539).  This does not render the definition arbitrary or difficult to ascertain; indeed, the *McKinsey* TPP class settlement followed a nationwide subdivision settlement without issue.

United HealthCare's true complaint, couched under the guise of ascertainability, is that it believes it "deserves" more – more plans included and more money – without pursuing its own claims.  But that is not the function of Rule 23.  *See* Charles Alan Wright & Arthur R. Miller, 7A Fed. Prac. & Proc. Civ. §1751 (4th ed. 2020) ("The class action was an invention of equity . . . mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs."); *Young*, 693 F.3d at 540 ("It is often the case

- 11 -

that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people.").  Indeed, if the Settlement is so bad and they think they can do better, they can file their own lawsuit and seek a better recovery.  United is a large, sophisticated actor that has sued on its own behalf many times in the past.  *See, e.g.*, *UnitedHealthcare Ins. Co. v. Becerra*, 16 F.4th 867 (D.C. Cir. 2021); *United HealthCare Servs., Inc. v. Insys Therapeutics, Inc.*, No. 1:19-OP-45731 (N.D. Ohio) (Polster, J.).

Obviously, that none of the Excluded Insurers ever filed suit against the Settling Distributors is most telling (and they still can, other than for released Medicare Part C and D and Medicaid plans).  United HealthCare says that "filing of new cases may be imminent" because United's claims tolling will end on final approval.  Objection at 7.  But that's the entire point.  If its views on the Settlement are made in good faith (they are not) and if it honestly believes "the Settlement would only cover 0.5% of the costs TPPs incur in just one year to treat individuals with OUD" and "would do nothing to compensate TPPs for the costs incurred during the other 27 years of the class period," then there is nothing stopping United from suing the Settling Distributors.  Objection at 3.  So why hasn't it?  Could it be it has unclean hands?  Or that it cares about its own enrichment, more than – or even at the expense of – a Settlement that benefits tens of thousands of TPPs?  Could it be that Settling Distributors have potential cross-claims?  And if Settling Distributors believed there was real risk United would sue, would they have unequivocally refused to allow settlement monies to go directly to United?

### 2.  Interim Settlement Class Counsel Protected the Interests of the TPP Settlement Class

In granting final approval to a proposed class settlement, the Court must consider whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Treviso v. Nat'l Football Museum, Inc.*, 2024 WL 753560, at *5 (N.D. Ohio Feb. 12, 2024), *report and recommendation adopted*, 2024 WL 724530 (N.D. Ohio Feb. 22, 2024) (quoting Fed. R. Civ. P. 23(e)(2)(D) advisory committee's notes (2018)).  This Settlement and its plan of allocation are designed to do just that: take into account differences between Class members' legal claims and defenses and the economic harms they suffered as a result of the alleged conduct.

  ***First***, as explained above, the Settlement preserves, rather than prejudices, the rights of Excluded Insurers for the fully insured commercial plans by expressly carving them out of the definitions for the Settlement Class and Releasors.  Unlike the settlement rejected in *Mirfasihi v. Fleet Mortg. Corp.*, where class members were expected to receive nothing while being forced to surrender their claims, the excluded plans here retain their right to pursue claims against Settling Distributors.  356 F.3d 781, 785 (7th Cir. 2004).  As Professor Rubenstein explains, "Co-Lead Class Counsel's actions have not prejudiced the interests of this large, atypical TPP" because "the Objector's claims against the Defendant remain unfettered by a final judgment in the class action." Rubenstein Decl. ¶18.  Indeed, United HealthCare's arguments that the Settlement "strips [it] of a legal claim or cause of action" and "preclude [it] from recovering . . . damages," Objection at 6, are "both inaccurate." Rubenstein Decl. ¶18.  Having preserved all of its rights to pursue claims for the fully insured commercial plans independently, those plans stand outside the Settlement and thus outside the Court's equity analysis under Rule 23(e)(2)(D).

  ***Second***, the Settlement structure appropriately reflects significant differences in claim strength and defenses between TPPs.  *See Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F. 4th 340, 346 (1st Cir. 2022) (recognizing "[s]ignificant differences in contested claims or defenses

- 13 -

have the potential to cause significant differences in claim value, which should be reflected in any fair settlement"); *In re Roundup Prods. Liab. Litig.*, 666 F. Supp. 3d 1011, 1019 (N.D. Cal. 2023) (rejecting challenge to settlement where objectors failed to demonstrate their claims were substantially different from other class members, and distinguishing *Murray* which required separate representation only where meaningful differences existed between class members' claims), *aff'd*, 2024 WL 2745210 (9th Cir. May 29, 2024).  United faces sizeable, unique defenses vis-à-vis the Settling Distributors and its own liability for the opioid epidemic.  In fact, Settling Distributors were crystal clear – they believe United may be subject to cross-claims and affirmative defenses if these cases proceed to trial, and they steadfastly refused to include United and similarly situated, fully insured plans in *any* TPP settlement.  Settling Distributors' Response at 2-3.

Excluding United's PBM and the fully insured commercial plans from both the plan of allocation (as non-Class members) and the release is not unfair treatment; it is a pragmatic recognition of United's fundamentally different position from TPP Settlement Class members. Rubenstein Decl. ¶¶4-6, 8.  Indeed, even if Settling Distributors were willing to include United (they were not), rather than force United to accept a purportedly inadequate recovery, as they argue, the Settlement provides United complete autonomy to pursue the total value of its claims for fully insured commercial plans – precisely the path this sophisticated entity has chosen before. *See* Rubenstein Decl. ¶18.

**Third**, Settling Distributors' refusal to include United, while agreeing to pay a substantial recovery to tens of thousands of Class members, did not create a conflict for Class Counsel. Rather, Class Counsel protected the interests of the Class by entering into the Settlement.  As Professor Rubenstein observes, "for Co-Lead Counsel to have walked away from $300 million, and risked a trial, simply to serve the interests of a single, atypical TPP . . . would have struck me

as reckless folly."  Rubenstein Decl. ¶8.  This approach aligns perfectly with Rule 23's core purpose.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("The Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.") (cleaned up).

The contrast between United HealthCare and the Class members it seeks to derail could not be starker.  Allowing United – the fourth largest public corporation in the United States – to bully its way into this Settlement or block the Settlement for its own gain would be inequitable and could deny recovery to the very TPP Class members that Rule 23 was designed to protect.

### 3.    The Settlement Was Not the Product of Collusion

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary." *Chambers v. Cont'l Secret Serv. Bureau, Inc.*, 2024 WL 4363161, at *6 (N.D. Ohio Sept. 30, 2024) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)).  United HealthCare and its lawyers at Robins Kaplan LLP clearly presume the opposite.  It makes fantastical claims – unsupported by evidence or law – and begs the Court to rewrite history.  United HealthCare is simply wrong.

***First***, there was no "secret mediation."  Objection at 16.  Three members of the Court-appointed Negotiating Committee and one Co-Lead counsel attended the 2024 mediation – like so many prior mediations in this MDL – to attempt to reach a global resolution on behalf of a group of plaintiffs.  Proposed Co-Lead Settlement Class Counsel and the PEC member appointed to focus exclusively on TPP litigation, James Dugan, was informed of the mediation and supports the Settlement.  That United HealthCare's counsel was not invited to attend the mediation does not render it "secret" and "suspicious."  There is no requirement under Rule 23 to invite absent class members (nor "non" class members) or their counsel to mediations and no other basis for doing so in an MDL where United's counsel is not appointed to the PEC (let alone the Negotiating

Committee).  Rule 23(e)(1) requires only that notice be given to all class members who would be bound by a proposed settlement after the court determines it will likely be able to approve the proposal under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal.  That is precisely what was done here.  Court-approved notice is the method of communicating a settlement with absent class members; inviting 42,000 Class members to mediation is not.

**Second**, United HealthCare claims that its counsel played an "active role" in "all other opioid matters to date."  Objection at 16.  But Class Counsel – who have been among the most active lawyers participating in this MDL – are unaware of any such role on behalf of plaintiffs.  United HealthCare's counsel is not appointed to the PEC.  No United entity has filed litigation against the Settling Distributors or any active defendants in Tracks 16-19.  United's filing of claims on behalf of itself and the self-insured plans that it administers in bankruptcy proceedings or in the *McKinsey* TPP class settlement claims process does not equate to an "active role" in the litigation and settlement of opioids cases.

**Third**, while Class Counsel intended to secure the most complete resolution possible, Settling Distributors would not negotiate a settlement and full release for the Excluded Insurers' primary commercial business for the reasons noted above regarding potential cross-claims and defenses.  Settling Distributors' Response at 2.  The decision to exclude was solely the result of Settling Distributors' insistence.  *Id.*  Class Counsel are duty-bound under Rule 23(g) to act in the best interest of **the entire Class** rather than the personal interests of five Excluded Insurers.  Rubenstein Decl. ¶6.  When faced with a choice to move forward with a settlement that carved out the five Excluded Insurers' fully insured commercial plans but provided relief to over 40,000 TPPs, or walk away and leave the Class without recourse, Class Counsel honored their "primary obligation" to the Class.  *See id.* ("Appointment as class counsel means that the primary obligation

- 16 -

of counsel is to the class rather than to any individual members of it." (quoting Fed. R. Civ. P. 23 advisory committee's notes (2003)).)

**Fourth**, United HealthCare's assertion that Class Counsel's decision to move forward with a settlement on behalf of over 40,000 TPPs, while excluding the fully insured business of five of the largest companies in the pharmaceutical space (four of whom have not objected) was motivated by fees, is entirely backwards. Class Counsel have requested that only 20% of the recovery be awarded as fees. Clearly, if the settlement fund were larger as a result of the inclusion of the excluded entities, the requested fee might have been larger – which would be in the best pecuniary interest of Class Counsel. And Class Counsel's request for 20% of the common fund is well below what courts in the Sixth Circuit regularly approve. *Does 1-2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 898 (6th Cir. 2019) ("It is not abnormal for negotiated attorneys' fee awards to comprise 20% to 30% of the total award."); *see, e.g.*, *In re E. Palestine Train Derailment*, 2024 WL 4370003, at *15 (N.D. Ohio Sept. 27, 2024) (awarding fees of 27% of a $162 million fund); *In re Flint Water Cases*, 583 F. Supp. 3d 911, 939 (E.D. Mich. 2022) (awarding fees of just under 31.33% of a $626.25 million fund); *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of a $147.8 million fund). Here, unlike in ordinary class cases, Class Counsel must pay a common benefit assessment to the Court Common Benefit Fund, and Class Counsel must allocate the remaining amount fairly among the many lawyers litigating the over 100 actual cases filed against the Settling Distributors. Class Counsel themselves will retain only a portion of the fees awarded – fees that compensate them for the thousands of hours they've spent litigating the briefing- and trial-bellwether cases and negotiating and securing this Settlement. By contrast, United HealthCare's outside counsel has done no work in the MDL on behalf of litigating TPPs – let alone the Class, has no legitimate claim for a common benefit award (though they have

- 17 -

certainly caused common detriment), and is, demonstrably here, only concerned with United's recovery.

### 4.    TPP Settlement Class Counsel and Class Representatives Have Adequately Represented the TPP Settlement Class

A class by its aggregate nature may consist of absent class members that class counsel may be suing; there is nothing inherently wrong with this.  *See* Rubenstein Decl. n.12; *see also Wilson v. Columbia Gas Transmission, LLC*, 2015 WL 422843, at *2 (S.D. Ohio Feb. 2, 2015) (unnamed members of the class ordinarily are not considered clients of class counsel).  Here, though, while United may file claims related to the Medicare/Medicaid plans, the Class exclusions are designed to minimize exactly the conflict about which the Objector complains.  The Settlement excludes not just United's fully insured commercial plans but *all* MDL 2804 defendants and *all* PBMs.

Still, United HealthCare wrongly asserts that Settlement Class Counsel have a "clear conflict of interest" in representing *any* of the 2,000 United entities because they are adverse to United's PBM-related entities in other litigations.  Objection at 17.  Disqualifying conflicts of interest must be of the kind that impair an attorney's or class representative's ability to adequately represent the class.  *See, e.g.*, *Yates v. Applied Performance Techs., Inc.*, 209 F.R.D. 143, 152-53 (S.D. Ohio 2002) (court disqualified counsel from representing putative class due to a conflict of interest arising from dual representation of the putative class in wage litigation and a former executive added as third-party defendant, when counsel allegedly refused to settle class litigation without settlement of related suits against executive); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557 (S.D. Ohio 2005) (Counsel could not "represent different classes of plaintiffs with conflicting claims who are seeking recovery from a common pool of assets" because "if the amount sought by each proposed class . . . exceeded the total assets of the defendants, then competing claims may impair counsel's ability to vigorously pursue the interest of both classes.")

- 18 -

(cleaned up).  Minimal conflicts do not preclude an attorney from serving as class counsel, *Compound Prop. Mgmt. LLC v. Build Realty, Inc.*, 343 F.R.D. 378, 404-05 (S.D. Ohio 2023), nor a plaintiff from serving as class representative, *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012).  Here, United HealthCare fails to list a single way in which this supposed conflict impaired Class Counsel's ability to secure a fair deal for the Class or impinged upon United's rights.  It cannot.

As explained above, the exclusions were neither nefarious nor a manifestation of conflict. Class Counsel's duty was not to the total satisfaction of one – but to the adequate representation of the many, and both the exclusions and Rule 23 preserve United's legal rights to sue for fuller recovery if it wishes.[8]

### 5. The Settlement Provides Substantial Relief Balanced Against the Risks of Continued Litigation

By United HealthCare's logic, no settlement short of several billion dollars would be sufficient to compensate the Class for its damages.  While TPP Plaintiffs agree that the economic costs of the opioid epidemic to the healthcare industry have been enormous, United HealthCare ignores the very real costs, risks, and delay of continued litigation against the Settling Distributors. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).  Any settlement requires compromise, and when balanced against the risk raised by the legal disputes described in TPP Plaintiffs' motions for preliminary and final approval, ECF 5614 and ECF 5694, "[t]he tradeoff embodied in the settlement is fair[.]" *Chambers*, 2024 WL 4363161, at *6 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 309 (6th Cir. 2016)).

---

[8]    If the United Medicare/Medicaid plans wanted to opt out, they received notice and were given plenty of time to do so.  They didn't, and in fact United's primary complaint is that Class Counsel prejudiced it by not including all of its plans in the purportedly inadequate Settlement.

"The amount of the proposed settlement and the nature of the claims released certainly are factors to consider in assessing fairness and adequacy." *Olden*, 472 F. Supp. 2d at 933.  But the amount of settlement alone is not decisive in the fairness determination.  *Id.*  As such, objections to the amount of class settlement are quite often overruled.  *See, e.g.*, *E. Palestine Train Derailment*, 2024 WL 4367524, at *2 (granting final approval and overruling objections that the settlement did not adequately compensate class members for their damages); *Olden*, 472 F. Supp. 2d at 933 ("The fact that the settlement amount may equal but a fraction of potential recovery does not render the settlement inadequate.  Dollar amounts are judged not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.").  Simply put, it's easy to object and demand more; it's much harder to litigate and prove liability and damages – especially to prove proximate causation under a largely untested RICO theory for past economic harms.

The Objector invokes the Sixth's Circuit's reversal of this Court's negotiation class certification to argue that Class Counsel flouted established precedent by not offering a concrete range of possible full recovery in litigation.  *See* Objection at 18-19.  This is baseless fearmongering.  "In evaluating settlements, courts are not required to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," including concrete damage amounts where modeling cannot yet be completed.  *Déjà Vu Servs.*, 925 F.3d at 895-96 (cleaned up).  With the negotiation class, class members did not have the ability to review the terms of a proposed settlement prior to deciding whether to exclude themselves from the class.  ***That*** was the issue with which the Sixth Circuit expressed concern.  Here, all Class members were notified of the precise terms of an actual

- 20 -

settlement on September 17, 2024.  They have had three months to analyze the settlement terms and the plan of allocation, to ask questions, and to seek counsel, and, again, of the over 42,000 Class members who received notice, less than 0.17% of entities requested exclusion.

United HealthCare's other authority is equally unpersuasive.  Unlike here, the damages in *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297 (W.D.N.Y. 2016), were easily calculable where plaintiff already had all necessary data to calculate a concrete maximum based on fixed civil penalties.  The TPP cases in MDL 2804 were stayed for years, and discovery targeted to the TPP bellwether cases, including for economic damages, is still ongoing.  In both *Zink* and *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 974 (N.D. Cal. 2019), plaintiff failed to offer any risks or rationale to explain a settlement for less than the maximum that would allow the courts to weigh the reasonableness of the settlement amount.  The Court here is uniquely qualified to weigh the value of this Settlement, having overseen this MDL for seven years, analyzing and ruling on motions to dismiss in the Cleveland Bakers case and managing and proceeding over other case tracks against Settling Distributors.  *In re Polyurethane Foam Antitrust Litigation* actually supports granting final approval.  168 F. Supp. 3d 985 (N.D. Ohio 2016).  There, the court **struck down objections** to the settlement amount, noting, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 1001.  In doing so, the court correctly observed that "armchair-quarterbacking and wishing-for-more does not provide valid grounds to disapprove the settlements." *Id.*  We agree!

Last, United HealthCare's assertion that the Settlement is insufficient to abate the opioid epidemic is ironic – and inapt.  It is ironic because United HealthCare's parent and United's PBM are alleged to have contributed to that epidemic.  It is inapt because abatement is a nuisance

- 21 -

remedy; Case Tracks 16-19, and most of the TPP cases filed in the MDL seek past economic damages under RICO, consumer protection statutes, and the common law.  Of course, proposed Class Counsel here were active, driving forces on the PEC that reached over $50 billion in abatement funds to remediate the opioid epidemic (including $21 billion from the Settling Distributors).[9]

## VI.  CONCLUSION

For the reasons stated above and in their Motion, TPP Plaintiffs ask the Court to approve this proposed class action settlement, including the requested attorneys' fees, expenses and costs, and settlement class representative service awards, and to overrule United HealthCare's objections.

---

[9]  Class Counsel represented many governmental subdivisions in that nuisance-focused litigation, invested significant costs and loadstar, successfully tried a case on behalf of The People of the State of California (San Francisco), and were instrumental in helping to secure not only the global settlement with distributors but tens of billions of dollars more in settlements with manufacturers and pharmacies.  United HealthCare has not filed suit against Settling Distributors seeking abatement – *or* damages, and its outside counsel has not yet secured a dollar in relief.  And United's PBM, Optum, is alleged to have contributed to the same epidemic for which United HealthCare's wholly uninvolved lawyer now argues about inadequate abatement funds (in a damages case).

**Certificate of Compliance with Local Rule 7.1(f)**

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that Third Party Payor Plaintiffs' Reply Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement and for Attorneys' Fees, Expenses, and Service Awards and Response to Objection by United HealthCare Services, Inc., complies with the page limitations established for briefs in complex track cases.

DATED:  December 9, 2024

Respectfully submitted

By: */s/ Mark J. Dearman*

Paul J. Geller
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750 3000
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com

*Interim Co-Lead Settlement Class Counsel;*
*Counsel for Cleveland Bakers and Teamsters*
*Health and Welfare Fund, and Pipe Fitters Local*
*Union No. 120 Insurance Fund*

By: */s/ Elizabeth J. Cabraser*

Elizabeth J. Cabraser
Eric B. Fastiff
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
efastiff@lchb.com

*Interim Co-Lead Settlement Class Counsel;*
*Counsel for Pioneer Telephone Cooperative, Inc.*
*Employee Benefits Plan, and American*
*Federation of State, County and Municipal*
*Employees District Council 37 Health & Security*
*Plan*

- 23 -

By: */s/ James R. Dugan*
James R. Dugan, II
**THE DUGAN LAW FIRM, PC**
One Canal Place, Suite 1000
New Orleans, LA 70130

*Proposed Co-Lead Settlement Class Counsel;*
*Third Party Payor PEC Representative; Counsel*
*for United Food and Commercial Workers Health*
*and Welfare Fund of Northeastern Pennsylvania,*
*and Sheet Metal Workers Local No. 25 Health*
*and Welfare Fund*

Jayne Conroy
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
Telephone: (212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
**MOTLEY RICE**
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
**FARRELL & FULLER LLC**
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918
Telephone: (304) 654-8281
paul@farrelfuller.com

*Plaintiffs' Co-Lead Counsel*

Peter H. Weinberger (0022076)
**SPANGENBERG SHIBLEY & LIBER**
1001 Lakeside Ave. East, Suite 1700
Cleveland, OH 44114
Telephone: (216) 696-3232
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

- 24 -

## CERTIFICATE OF SERVICE

I hereby certify that, on December 9, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

*/s/ Mark J. Dearman*
MARK J. DEARMAN

3131531.1