# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | **MDL No. 2804** |
| **THIS DOCUMENT RELATES TO:** | **Case No. 1:17-md-2804** |
| *City of Rochester v. Purdue Pharma, L.P., No. 19-op-45853 (Track 12)* | **Judge Dan Aaron Polster** |

## PBM DEFENDANTS' OBJECTION TO THE SPECIAL MASTER'S ORDER REGARDING THE PRODUCTION OF PERSONNEL FILES

In accordance with the Appointment Order (Dkt. No. 69), the Express Scripts Defendants[1] and OptumRx, Inc. and its affiliates[2] (collectively, the **PBM Defendants**), object to the Special Master's December 6 oral ruling requiring the production of personnel files for every deponent without a formal discovery request, never mind a showing of relevance or proportionality.[3]

The Special Master's ruling must be overturned for at least three reasons. First, the City of Rochester never served a written discovery request under Rule 34 seeking the personnel files of the PBM Defendants' witnesses. That should end the inquiry. Second, the City failed to

---

[1] The Express Scripts Defendants are Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc.

[2] In accordance a stipulation between the parties, Defendants OptumInsight, Inc. and OptumInsight Life Sciences, Inc., as well as Non-Parties UnitedHealth Group Incorporated, Optum, Inc., OptumInsight, Inc., OptumInsight Life Sciences, Inc., OptumRx Discount Card Services, LLC, Optum Perks, LLC, OptumHealth Care Solutions, LLC, OptumHealth Holdings, LLC, and Optum Health Networks, Inc. are participating in discovery without waiving any jurisdictional defenses. Those parties accordingly join this objection.

[3] The Appointment Order provides that "any party may file an objection to an order, finding, report, ruling, or recommendation by the Special Masters," including "any formal order, finding, report, ruling, or recommendation on the record before a court reporter," within 21 calendar days. Appointment Order at 4. Here, Special Master Cohen ordered that objections to his orders made on the record at the December 6, 2024 discovery conference be filed within one business day, by 5pm on December 9, 2024. *See* Ex. A, December 6, 2024 Hearing Transcript at 52:9–10. On December 9, the Special Master extended that deadline by one day, to 5pm on December 10. This objection is therefore timely.

demonstrate the relevance of personnel files for the three witnesses discussed during the December 6 conference—let alone make the "compelling showing" required under Sixth Circuit law. And third, the Special Master could not have evaluated the relevance of personnel files for witnesses other than the three discussed in the conference because those witnesses have not yet been identified. The Special Master erred in entering a blanket order requiring production of personnel files for every witness deposed in this litigation regardless of whether the witness's file is likely to contain information relevant to any claim or defense.

## BACKGROUND

On November 13, 2024, the City sent an email to OptumRx's counsel in the course of scheduling a deposition of a former OptumHealth employee: "Please produce ███████ personnel file." Ex. B. On December 4, 2024, the City emailed Express Scripts' counsel seeking for the first time production of the "personnel file and associated materials" for a former employee who was scheduled to be deposed the following week on December 11, 2024. Ex. C.

Those emails were not accompanied by any formal discovery requests under Rule 34. Nor could the City have served a request for personnel files at this stage of the litigation. As Special Master Cohen recently confirmed in the context of a different dispute, both the City of Rochester and the PBM Defendants have now exhausted the written discovery requests allotted under the Case Management Order (Dkt. No. 5268) and must seek leave of court to serve any additional requests. Ex. D (Nov. 29, 2024 email from David Cohen).

OptumRx responded to the City's email explaining that the City has "not served a request for production for these documents" and that "there is no relevance to ███████ personnel files to this litigation." Ex. B (Dec. 4, 2024 email from E. McGowan). OptumRx's counsel further explained that "[c]ourts in the Sixth Circuit have consistently recognized the important privacy

interests non-parties like ███████ have in these records." *Id.* (citing *Dahmer v. W. Ky. Univ.*, 2019 WL 1781770 (W.D. Ky. April 22, 2019); *Miller v. Uchendu*, 2016 U.S. Dist. LEXIS 205281 (W.D. Tenn. Mar. 21, 2016)). Express Scripts similarly responded to the City that it had not received a discovery request for personnel files, and if "a formal discovery request were to be made, [Express Scripts] would oppose it, for privacy, relevancy, and timeliness grounds." Ex. C.

Instead of responding to those objections, the City copied the Special Master into its email chain with OptumRx, stated that the parties were at an impasse regarding the production of personnel files, and asserted that the PBM Defendants should produce personnel files because defendants in other tracks had done so. Ex. B (Dec. 4, 2024 email from M. Elsner). In support, the City pointed to (1) a November 2018 stipulation in Track 1 that required the production of limited categories of documents from personnel files (such as documents reflecting "opioid-related" bonus and incentive compensation) from a limited class of witnesses (sales and marketing employees), and (2) an off-docket email order from February 2021 that purportedly "expanded" the scope of that stipulation for the Track 3 pharmacy defendants. *Id.*

On December 6, the Special Master held a conference to address the City's email request. The Special Master commented that he was "bothered by – a little bit, not a lot, just a little bit, by the lack of a formal request" for any personnel files. Ex. A at 26:20–23. The Special Master also "remind[ed] the plaintiff of the fact that . . . the PBMs have a right to raise issues that they think don't apply." *Id.* at 13:14–14:5. He observed that the three PBM Defendant witnesses discussed at the hearing are not "people who were sales – in sales or marketing and might have had their compensation based on, you know, the amount of opioids that were dispensed or the amount of opioids that were sold or anything like that." *Id.* at 14:6–16. Despite those observations, the Special Master nonetheless held that the PBM Defendants were required to produce personnel files—

including all compensation-related information even if completely unrelated to opioids or any work with opioid manufacturers—for every current and former employee deposed in the litigation. *Id.* at 27:10–13. The Special Master made clear that the documents must be produced wholesale— "not restricted by if they're talking about opioids." *Id.* at 27:19–24; *see also id.* at 29:20–30:2 (OptumRx counsel: "But the order that you're making is that we're not allowed to review those to assess whether or not any of his reviews related to opioid-related issues, but that we have to produce all performance reviews that he ever received during his 20-year tenure at the company, and that's true for all employees? SPECIAL MASTER COHEN: Correct.").

## ARGUMENT

The Special Master's discovery ruling violates the Federal Rules of Civil Procedure by compelling the production of documents (1)  that were never sought in a formal discovery request, and (2) with no showing of relevance. The Special Master's order also ignores precedent from sister courts in this Circuit recognizing the important privacy interests that non-party witnesses have in their personnel files and limiting their disclosure to only those circumstances where there is a "compelling" need for the information. ███████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████ The Court should reverse the Special Master's ruling.

I.   **THE SPECIAL MASTER ERRED IN COMPELLING THE PRODUCTION OF DOCUMENTS THAT WERE NEVER SOUGHT UNDER FEDERAL RULE 34.**

The City failed to request the production of personnel files for the PBM Defendants' witnesses using one of its many document requests under Rule 34.[4] That should end the inquiry.

"The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 845 (6th Cir. 2020). This includes "the Federal Rules of Civil Procedure" which "are binding upon court and parties alike, with fully the force of law." *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 671 (6th Cir. 2020) (quoting 956 F.3d at 844).

The Federal Rules of Civil Procedure establish a uniform process for document discovery. *See* Fed. R. Civ. P. 34. Under those Rules, a party may move for an order compelling production "only if [defendant] failed to produce documents 'requested under Rule 34.'" *McDermott v. Cont'l Airlines, Inc.*, 339 F. App'x 552, 560 (6th Cir. 2009) (quoting Fed R. Civ. P. 37(a)(3)(B); additional citations omitted); *see also* Fed. R. Civ. P. 37(a)(3)(A)(iii) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to produce documents . . . as requested under Rule 34."). While a party is free to request documents informally, a party seeking documents "ha[s] the burden of making appropriate formal requests when informal requests are unavailing." *Dowling v. Cleveland Clinic Found.*, 593 F.3d 472, 480 (6th Cir. 2010). The Rules do not require production of documents that have not been formally requested under Rule 34. *See, e.g.*, *Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 454 (S.D. Ohio 2012) ("Before moving the Court for an order directing [defendant] to produce any

---

[4] The Case Management Order initially allotted the City 45 requests for production. *See* Dkt. No. 5268. The PBM Defendants have now responded to more than 80 requests for production in Track 12.

discovery, [plaintiff] must first serve [defendant] with a request for discovery."); *Nilavar v. Mercy Health Sys. W. Ohio*, 210 F.R.D. 597, 610 (S.D. Ohio 2002) ("Rule 34 is the formal mechanism by which documents are to be requested, and Plaintiff's Motion to Compel Discovery is only viable as to documents requested by that method.").

Plaintiffs in Track 1, for example, served a written request for limited information from personnel files for a limited class of employees. *See* Ex. E (Nov. 7, 2018 Request for Production to Track 1 Defendants) (seeking things like "[a]ll reviews, evaluations, or assessments of the Witness's job performance *related specifically to Opioid marketing and sales . . .* " and "awards recognitions, or honors *related to the sale, marketing, or distribution of Opioids* bestowed on the witness . . . ."). Here, in contrast, the City never served a written request for witness personnel files—let alone one that was tailored to discoverable information relevant to the City's claims. The Special Master recognized as much. Ex. A at 26:20–23. That should be the end of the matter.

Because the City did not formally seek discovery of this information, the Court cannot order production. *See, e.g.*, *Garrison v. Dutcher*, 2008 WL 938159, at *1 (W.D. Mich. Apr. 7, 2008) (holding that even where certain documents "may be relevant and discoverable under the liberal discovery provisions of Fed. R. Civ. P. 26," a "court has no basis to compel [a party] to produce [documents] in the absence of an outstanding request to produce the records"). Neither the City nor the Special Master cited any rule of procedure or case authority which would authorize the Court to compel production of personnel files in the absence of an outstanding formal request.

At the discovery conference, the City argued that it believed former proceedings in this MDL negated the requirement to issue formal discovery requests for personnel files. That is wrong. *First*, a party's "course of dealings" cannot alleviate its "duty to serve formal discovery requests." *Nayyar v. Mount Carmel Health Sys.*, 2012 WL 203418, at *3 (S.D. Ohio Jan. 24, 2012). That

6

should apply with even more force here where those dealings were with different defendants in different cases and discussed in non-public proceedings that the PBM Defendants were not privy to. As this Court has made clear, the PBM Defendants are "not bound by prior rulings to which they were not a party." Dkt. No. 5268 at 2.

*Second*, the City's reliance on a November 2018 stipulation, Dkt. No. 1163, and a February 2021 email ruling by the Special Master, Ex. G (Feb. 2021 email ruling from the Special Master on Track 3 personnel files), as justification for its failure to issue formal discovery requests for personnel files is misplaced. Neither the November 2018 stipulation nor the February 2021 email ruling stated that for every case in the MDL a deponent's personnel records, including compensation and bonus information, must be produced prior to their deposition, even absent a formal discovery request. The Special Master confirmed that the City's understanding of the "status quo" was incorrect. Ex. A at 13:1–14:5. Indeed, the November 2018 stipulation applied only to Track One cases where formal discovery requests were served, and was limited to opioid-related information in the personnel files for employees and former employees whose primary responsibilities involved sales, marketing, or compliance. Dkt. No. 1163. The February 2021 email ruling—which the PBM Defendants were not a party to and had no notice of—applied only to Track Three cases and included similar limitations, such as requiring the production of a witness's disciplinary records only if they "related to dispensing and/or alleged violations of the Controlled Substances Act." Ex. F. at 3 (Lanier's letter seeking this limitation); Ex. G (Special Master's email order adopting limitation "on page 3 of Lanier's letter").

Accordingly, the Court lacks authority under the Federal Rules of Civil Procedure to compel production of complete personnel files, including compensation and bonus information because they were not formally requested by the City.

## II.    THE CITY FAILED TO MEET ITS BURDEN OF SHOWING RELEVANCE OVER DEPONENT PERSONNEL FILES, AND THE CITY CERTAINLY DID NOT SHOW A "COMPELLING" NEED.

Even if the City had served a timely request for witness personnel files, the City failed to show the relevance of those files for the three PBM witnesses discussed at the hearing—let alone for every PBM witness who may be deposed in this case.

Under the Federal Rules, a party may take discovery only of information that is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). When the information sought is information from the personnel file of a witness who is not a party to the litigation, the party seeking disclosure must show an individualized compelling need for the information that outweighs the witness's significant privacy interests.

The Sixth Circuit has held that parties have "a valid interest in the privacy of nonparty personnel files." *Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999). "[S]trong public policy exists against disclosure of the personnel records, because it would invade the employees' privacy." *Nelson v. Tenn. Coll. of Applied Tech.*, 2024 U.S. Dist. LEXIS 44306, at *3 (W.D. Tenn. Mar. 13, 2024) (cleaned up). Because of the privacy interests involved, personnel files "should not be ordered produced except upon a *compelling showing* of relevance" by the requesting party. *Johnson v. Guardsmark LLC*, 2008 WL 11380093, at *2 (N.D. Ohio Jan. 14, 2008) (emphasis added) (citing *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999)); *see also Uchendu*, 2016 U.S. Dist. LEXIS 205281, at *7 (collecting cases). As numerous district courts in this Circuit have recognized, "[t]o be compelling, the requesting party must demonstrate that the value of the information outweighs the privacy interests of the affected parties." *Nelson*, 2024 U.S. Dist. LEXIS 44306, at *3 (citation omitted); *see also, e.g.*, *Fed. Express Corp.*, 186 F.R.D. at 384

("Personnel records, because of the privacy interests involved, should not be ordered produced except upon a compelling showing of relevance." (citation omitted)).[5]

The City didn't even attempt to make a showing of relevance. Instead, after the PBMs declined the City's informal request to produce personnel files, the City emailed Special Master Cohen and asked him to compel production based on stipulations with other parties in other tracks and off-the-record rulings in proceedings to which the PBM Defendants were not parties. But the PBM Defendants are differently situated from prior defendants—both procedurally and substantively. Indeed, in establishing the PBM Bellwether tracks, "[t]he Court agreed with the PBM Defendants that they are not bound by prior rulings to which they were not a party." Dkt. No. 5268 at 2.

In Track 1, for example, the PEC served a formal written document request seeking a discrete list of items from personnel files, including "[a]ll reviews, evaluations, or assessments of the Witness's job performance *related specifically to Opioid marketing and sales*," "records of any admonition or other discipline . . . *to the extent the discipline related to . . . Opioid sales and marketing*," and documents concerning "awards, recognitions, or honors *relating to the sale, marketing, or distribution of Opioids.*" Ex. E (Nov. 7, 2018 Request for Production to Track 1 Defendants) (emphasis added). In that track, the PEC claimed that manufacturers intentionally increased the volume of opioids and rewarded its sales and marketing employees for doing so. Given those allegations, the manufacturers agreed to a protocol (for the "Track One Cases" only)

---

[5] For production requests that failed this balance, many of these courts either granted a motion to quash the subpoena or denied a motion to compel. *See Uchendu*, 2016 U.S. Dist. LEXIS 205281, at *16–*17; *Dahmer*, 2019 U.S. Dist. LEXIS 68638, at *26; *Fritz v. Charter Twp. of Comstock*, No. 1:07-CV-1254, 2010 U.S. Dist. LEXIS 45260, at *8 (W.D. Mich. May 10, 2010); *Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. 1:07-CV-258, 2008 U.S. Dist. LEXIS 73884, at *19 (E.D. Tenn. Sep. 25, 2008); *Compuware Corp. v. Moody's Inv'rs Servs.*, 222 F.R.D. 124, 134 (E.D. Mich. 2004); *Fed. Express Corp.*, 186 F.R.D. at 385.

requiring manufacturers to search personnel files "for the employees or former employees whose primary responsibility involved sales, marketing, and/or compliance" and to produce certain limited information from those files, including things like "*Opioid-related* bonus or Opioid-related incentive compensation information," "*Opioid-related* performance reviews . . . or awards related to opioid sales, Opioid marketing, or legal and regulatory compliance with Opioid-related laws or rules," and "[d]iscipline records *concerning Opioids* or compliance with federal or state laws or regulations *governing the sale, marketing, or distribution of Opioids*." Dkt. No. 1163 (emphasis added).[6]

In Track 3, the PEC sought to expand the production of personnel files to apply to certain witnesses who were not involved in opioid sales and marketing. In briefing to the Special Master, the PEC argued that compensation and personnel-file information was also relevant for certain employees of the retail pharmacies because the "Chain Pharmacies awarded bonuses to pharmacists based on a series of metrics including, among others, the number of prescriptions filled." Ex. F, Jan. 28, 2021 Letter from Lanier Law Firm at 2. In other words, in Track 3, the PEC at least attempted to establish the relevance of the information they were seeking and how it might relate to their theory of the case.

They have not done so here. The City has not served a discovery request for personnel files, nor has it offered a single piece of evidence suggesting that the deponents noticed to date would have received any financial benefit from the sale or dispensing of opioids or for any business dealings with Purdue. For example, the first deponent scheduled is ███████████ As OptumRx's counsel explained at the December 6 hearing, ██████ was ███████████ for

---

[6] In negotiating the CMO for Track 12, the parties did not incorporate that protocol, which applied only to manufacturer defendants. *See* Dkt. No. 5282.

OptumHealth, an organization that employs a variety of medical professionals, including case managers, nurse practitioners, and doctors. Ex. A at 5:8–6:2. In that role, ████ evaluated continuing medical education and training programs for OptumHealth clinicians. *Id.* at 6:2–10. ████ was not involved in opioid sales or marketing, and no part of his compensation was related to opioids or his evaluation of training materials related to pain management. Indeed, since the Special Master issued his ruling, OptumRx's counsel has reviewed ████ personnel file related to his 20 years of service at the company and confirmed that *there is not a single reference to "opioid," "pain," or "Purdue."* The information the City would obtain if the Special Master's order is upheld concerns purely private personnel information of a former employee that does not relate to the Plaintiffs' claims.[7]

When asked about the relevance of ████ personnel file, the City's counsel had no good answer. The City noted that ████ talked to Purdue (just like he talked to many other companies) when evaluating "continuing medical education programming for those [within] Optum network of physicians." Ex. A at 9:9–14.[8] But after offering that limited observation, and without further explanation, the City stated "so we are interested in this personnel file, as we would [be] with all of the employees." *Id.* In other words, the City's position is that it is entitled to the full personnel file of every company employee that ever spoke to Purdue or interacted with opioid-related issues during their tenure—without otherwise explaining why the file itself is relevant. That is not the law.

---

[7] We also note that OptumHealth is an entity that the City agreed by stipulation to dismiss from this litigation. *See* Dkt. No. 5535.

[8] The City's counsel called ████ a "key opinion leader" for Purdue. Ex. A at 9:8–9. There is no factual basis for that assertion.

As for compensation information in the personnel file, all counsel could muster was that "compensation affects bias," while admitting that he "d[id]n't know if there was any kind of incentive programming" for the witnesses discussed at the hearing. *Id.* at 25:25–26:4. Those are not "compelling" arguments establishing the relevance of personnel files. As the Special Master observed, "we're not talking about people who were sales – in sales or marketing and might have had their compensation based on, you know, the amount of opioids that were dispensed or the amount of opioids that were sold or anything like that." Ex. A at 14:6–13. Instead, the Special Master's order seems based on some misperception that compensation-related information is automatically relevant. But, as cited above, the law in this Circuit clearly recognizes a personal privacy interest in that information for deponents who are not parties to the litigation.

Moreover, the Special Master's order allows for the discovery of information related to scores of unnamed deponents, regardless of their positions, responsibilities, and relevance to the issues in this case.  Other MDL courts have confirmed that a request for personnel files requires "an *individualized* showing of relevancy, proportionality, and particularity," and that a "broadly sketched" theory of relevance and "the ever-present search for evidence of witness bias" are insufficient to compel disclosure of complete personnel files for all deponents across the board. *In re: Xarelto Prods. Liab. Litig.*, 312 F.R.D. 32, 36–38 (E.D. La. 2016) (emphasis added); *see also In re: Zoloft Prods. Liab. Litig.*, 12-md-02342, slip op. at 2, Dkt. No. 1148 (E.D. Pa. Feb. 18, 2015) (denying motion to compel personnel files because plaintiff failed to make "an individualized showing of the circumstances related to the particular employees or ex-employees and of the issues to which the facts of their employment relate"). Because the Special Master's order requires the production of personnel files without any reference to the individual whose files are at issue, and without any individualized showing as to how that individual's files may be relevant to the issues

in the case, it is objectively overbroad and runs afoul of Rule 26(b)'s limits on the scope of discovery.

*     *     *

The City's failure to serve a formal request for personnel records should have ended the inquiry. But even if a request had been served, the City's failure to make an individualized "compelling showing" of relevance over the personnel records should have led the Special Master to deny the City's request. *Miller*, 2016 U.S. Dist. LEXIS 205281, at *7. It does not matter that other defendants in other tracks with different types of witnesses produced certain documents from personnel files for certain witnesses. "[A]s the Supreme Court has made clear, every case in an MDL (other than cases for which there is a consolidated complaint) retains its individual character," and the "determination of the parties' rights in an individual case" must be based on legal principles "applied to the record in that case alone." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). There is no record in Track 12 that supports the Special Master's order, so the order should be reversed.

## III.     IF THE COURT COMPELS PRODUCTION OF PERSONNEL FILES, THE COURT SHOULD IMPOSE ADDITIONAL PROTECTIONS OVER THE INFORMATION.

The Special Master's overbroad order also presents serious risks to non-parties whose information must be disclosed. ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ That interest is even greater in this litigation that has captured the media's attention.

The Court should deny the City's unsupported demand for personnel files. But if the Court is inclined to uphold the Special Master's ruling, it should impose stringent controls, including: (1) permitting the PBM Defendants to designate all personnel files with the highest level of

confidentiality available in this MDL; and (2) ordering that the files not be placed in the MDL repository—where they can be accessed by an untold number of individuals both inside and outside the MDL.

## CONCLUSION

The Court should reverse the Special Master's ruling.

Dated: December 10, 2024

*/s/ Brian D. Boone*
Brian D. Boone
Emily McGowan
Brandon C.E. Springer
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan
D. Andrew Hatchett
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

*Attorneys for Defendants OptumRx, Inc.,
OptumInsight, Inc., and OptumInsight Life
Sciences, Inc.*

*Attorneys for Non-Parties UnitedHealth
Group Incorporated; Optum, Inc.;
OptumInsight, Inc.; OptumInsight Life
Sciences, Inc.; OptumRx Discount Card
Services, LLC; Optum Perks, LLC;
OptumHealth Care Solutions, LLC;
OptumHealth Holdings, LLC; and Optum
Health Networks, Inc.*

*/s/ Jonathan G. Cooper*
Jonathan G. Cooper
Michael J. Lyle
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
jonathancooper@quinnemanuel.com
mikelyle@quinnemanuel.com

*Attorneys for Express Scripts, Inc., and ESI
Mail Pharmacy Service, Inc.*