**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL No. 2804 ) |
| | ) Case No, 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) |
| | ) Judge Dan Aaron Polster |
| *City of Rochester v. Purdue Pharma, L.P.* *No. 1:19-op-45853 (Track 12)* | ) ) |

**PLAINTIFF CITY OF ROCHESTER'S OPPOSITION TO PBM DEFENDANTS'
OBJECTION TO THE SPECIAL MASTER'S ORDER REGARDING
THE PRODUCTION OF PERSONNEL FILES**

3148303.7

Special Master Cohen correctly ruled that the PBM Defendants must produce their personnel files for any current or former employee whom Plaintiff deposes in this action.  This ruling comports with the Federal Rules of Civil Procedure and carries forward prior discovery rulings creating and amending a protocol for deposition productions in this MDL.  The Court should deny the PBMs' objection and affirm and adopt the Special Master's discovery ruling as an Order.

## BACKGROUND

In Case Track 1, the Plaintiffs and certain Defendants, with significant assistance from Special Master Cohen, negotiated an agreement concerning the parties' production of personnel files for current and former employees who were being deposed as fact witnesses.  In conducting a tele-conference with the parties, Special Master Cohen observed that, "[a]s a general matter, it is clear, the case law makes clear and it seems obvious to me, that personnel files are relevant, really, of virtually every deponent."  Ex. 1 (Tr. of 11/15/2018 Teleconf.) at 43:10-13.

When the CT1 Plaintiffs and most Defendants agreed to a protocol on this issue, Defendant Discount Drug Mart ("DDM"), opposed the protocol and objected to it.  Special Master Cohen overruled DDM's objection and adopted the Protocol as a Discovery Ruling on November 30, 2018.  *See* Discovery Ruling Regarding Personnel Files (Dkt. 1163).  The Protocol in the Discovery Ruling provided that, in advance of the deposition of employees with particular responsibilities, the parties would produce portions of the deponent's personnel file (including information about compensation and opioid-related bonuses).  *Id.* at 1-2.  The limited scope of the protocol (both as to the scope of employees covered and the type of information from the personnel file to be produced) reflected the fact that, although the protocol became a formal discovery order, it was originally the product of a stipulation among the plaintiffs and most of the defendants; that is, plaintiffs in CT1 did not ultimately seek a ruling requiring production of all of the information

3148303.7

from personnel files that might have been relevant or discoverable, but only those portions of the personnel files from a subset of employees that most of the defendants were willing to produce voluntarily.

In Case Track 3, the Plaintiffs sought to amend the Protocol based on the addition of pharmacy dispensing claims and the aggressive use of "relevance" redactions by certain Defendants.  *See* Ex. 2 (11/4/2020 Ltr. of Michael Elsner).  With respect to compensation information, the CT3 Plaintiffs requested discovery of all forms of the deponent's compensation, including base salary, bonus and/or stock compensation, and compensation from any of the defendant corporate entities.  Defs' Ex. F (1/28/2021 Ltr. of W. Mark Lanier) at 1.  With respect to personnel files generally, the CT3 Plaintiffs sought production of complete personnel files 72 hours before each deposition; the CT3 Defendants opposed this request, offering to produce only limited portions of the personnel files and reserving the right to redact information they deemed irrelevant. *Id.* at 3.

On February 10, 2021, Special Master Cohen issued rulings by email granting the CT3 Plaintiffs' request in significant part, thereby amending the Protocol.  The rulings provided that Defendants would be required to produce from a deponent's personnel file (a) 12 categories of information, including a list of all the positions the deponent held; job descriptions; performance reviews, disciplinary records, and employment contracts or separation agreements; and (b) compensation information to the extent it was contained in the personnel file, but not from documentary sources other than the personnel file (except to the extent otherwise discoverable pursuant to general discovery requests or 30(b)(6) obligations).  Defs' Ex. G (2/10/2021 email of discovery rulings by Special Master Cohen).

3148303.7

In Case Track 12, consistent with the Amended Protocol, after noticing the depositions of certain of the PBM Defendants' employees and former employees, Plaintiff requested that Defendants produce each deponent's personnel file. Defs' Ex. B (11/13 and 12/4/2024 emails of Michael Elsner) (Optum); Defs' Ex. C (12/4/2024 email of Laura Dunning) (ESI). Defendants responded on December 4, 2024, objecting to Plaintiff's request on grounds of failure to make a formal written request, privacy, lack of relevance, and untimeliness. Defs' Ex. B (12/4/2024 email of Emily McGowan) (Optum); Defs' Ex. C (12/4/2024 email of Haley Lourde-Cole) (ESI). Plaintiff renewed its request, providing Defendants with the prior discovery rulings creating protocols on this issue, and copied Special Master Cohen. Defs' Ex. B (12/4/2024 email of Michael Elsner).

The PBMs reiterated their objection based on lack of a formal written request, lack of relevancy, and privacy, and stating that "the PBM Defendants are not bound by orders in other tracks that our clients were not party to." Ex. 3 at 4-5 (12/4/2024 email of Andrew Hatchett). Plaintiff thereupon notified Special Master Cohen that the parties were at impasse. *Id.* (12/5/2024 email of Michael Elsner). Special Master Cohen requested information on the named deponents and set a teleconference on the issue for December 6, 2024. *Id.* (12/6/2024 email of Special Master Cohen).

On the teleconference, Special Master Cohen requested information about the three named deponents. As to ▮▮▮▮▮▮▮▮, Optum's counsel explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Defs' Ex. A (Tr. of 12/6/2024 Teleconf.) at 4:21-7:15. Based on information already produced by Optum, Plaintiff's counsel added that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 10:7-

- 3 -

14. As to ▮▮▮▮▮, Optum's counsel explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 7:16-8:5.  Based on information already produced by Optum, Plaintiff's counsel added that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 9:16-10:8. Optum's counsel ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 10:18-11:16.  As to ▮▮▮▮▮, ESI's counsel explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 11:17-12:8.  Based on information already produced by ESI, Plaintiff's counsel added that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* at 12:11-19.

Special Master Cohen noted possible distinctions between the roles performed by these deponents and those in the prior case tracks, *id.* at 14:6-24, but found that the same types of personnel file information covered by the Amended Protocol were also relevant in a PBM case:

> [M]y tentative ruling, where I'm landing is that is for employees and former employees the kind of documents that are listed in what has been referred to as page 3 of the [1/28/2021] Lanier letter have to be produced three days before the deposition. . . .
>
> [T]he documents listed in the – in that letter, those bullet points include things like performance evaluations, commendations, salary history, job descriptions, things like that.  And this goes both ways, right?  So this doesn't apply only to the defendants' employees and former employees.  It applies to the plaintiffs' employees and former employees.

*Id.* at 15:4-16:4.[1] When ESI's counsel questioned whether the required production would include compensation information, Special Master Cohen clarified that it would. *Id.* at 32:3-5 ("The short answer, Mr. Wasserman, is yes, compensation information has to be reproduced."). He also clarified, consistent with the 2021 ruling, that redaction would be permitted for personal identification and health information, but not on relevance grounds. *Id.* at 15:15-20 ("There will be no redaction for relevance. There will be redaction, though, of Social Security numbers, things like that. The protective order is going to apply to those. So that addresses the privacy concerns.").

Defendants filed an Objection to the discovery ruling on December 10, 2024.

### ARGUMENT

**This Court Should Confirm the Special Master's Ruling Adopting the Amended Protocol in These Cases**

As Special Master Cohen and countless federal court judges before him have recognized, a party employee deponent's personnel file is a source of discoverable and relevant evidence. In arguing to the contrary and for blanket preclusion of discovery of this evidence, the PBMs contend that: (1) Plaintiff has not shown that the discovery is relevant; (2) the discovery is prohibited because Plaintiff did not serve a formal written request; and (3) the PBMs' and/or their current and former employees' privacy interests preclude discovery or else require special PBM-specific accommodations. Each of these arguments is incorrect.

---

[1] *See also id.* at 27:10-13 ("I remain of the opinion that this kind of information in personnel files is not only discoverable but relevant and needs to be produced."); *id.* at 27:19-28:2 ("And so I'm ordering that the bullet points on Lanier page 3, those sorts of documents, not with reference to opioids, in other words, not restricted by if they're talking about opioids, as was mentioned in an email, have to be produced. And, again, that is something the plaintiffs also have to produce even though defendants haven't asked for it formally either.").

A.      The Information in the Personal Files Is Relevant and Otherwise Discoverable

The PBMs' primary argument is that Plaintiff's request for deponents' personnel files runs afoul of Rule 26 because it calls for information that has not been shown to be relevant. Objection at 8. In so arguing, however, the PBMs call for application of a "compelling need" standard for discovery of documents that is nowhere found in Rule 26 or Sixth Circuit case law. When the proper standard is applied, Plaintiff readily satisfies the requirements of Rule 26.

1.      Plaintiff Need Not Demonstrate a "Compelling Need" for the Personnel Files

Defendants contend that, "[w]hen the information sought is information from the personnel file of a witness who is not a party to the litigation, the party seeking disclosure must show an individualized compelling need for the information that outweighs the witness's significant privacy interests." Objection at 8. Defendants rely on three district court cases for this proposition but cite no Sixth Circuit law supporting a "compelling need" standard.

In general, a party need only show that the information it seeks is relevant and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). As the Sixth Circuit has explained, "district courts have significant discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce" and "the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Goldblum v. Univ. of Cincinnati*, 62 F.4th 244, 256 (6th Cir. 2023).

No bright line rule limits the court's discretion in the context of personnel files and no authority supports the "compelling need" test offered by Defendants here. On the contrary, the Sixth Circuit has repeatedly held that personnel files should be produced, with no special showing of compelling need. *See, e.g., Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999) (affirming order providing access to employee personnel files to plaintiff's counsel but not to plaintiff himself);

*Jones v. Johnson*, 801 F. App'x 338, 349 (6th Cir. 2020) ("district court abused its discretion in denying access to the disciplinary and evaluative material in the personnel files"); *Davis v. Runyon*, 142 F.3d 433 (6th Cir. 1998) (district court abused its discretion in denying motion for additional discovery, including personal files of seventeen employees that may have enable plaintiff to prove his case); *Parrish v. Ford Motor Co.*, 953 F.2d 1384 (6th Cir. 1992) (failure to permit discovery of relevant personnel files was an abuse of discretion and "strongly suggest[ing] that the district court permit discovery of the personnel files of all grade 12 or 13 Ford employees who were promoted or transferred within the entire 300-day limitations period "); *see also Nat'l Credit Union Admin. Bd. v. Basconi*, 2017 WL 749187, at *6 (N.D. Ohio Feb. 27, 2017) ("Further, production of the requested personnel files is not against public policy as there is a protective order in place in this case, and personnel files are already routinely disclosed in litigation."); *Lisy v. Cuyahoga Cnty. Ohio*, 2021 WL 2665748, at *2 n.1 (N.D. Ohio June 29, 2021) ("However, if defendants have not submitted the personnel files and payroll records of UDF team members who served in the same position as plaintiff, these records are clearly relevant and must be produced."); *Buckosh v. Bonded Filter Co., LLC*, 2021 WL 6071178, at *2 (N.D. Ohio Dec. 23, 2021) ("Plaintiff seeks the personnel files of Plaintiff and other employees (No. 3); the job descriptions of Plaintiff and other employees (No. 6); job performance evaluations of Plaintiff and other employees (No. 7); employment contracts, salary, wage, commission, job title(s), job duty(s), severance or fringe benefit(s) for Plaintiff and other employees (No. 15); and the commission paid to Plaintiff and other employees (No. 16). These documents are relevant and discoverable under Rule 26. Defendant Bonded is therefore required to produce these documents.").

The cases relied on by Defendants for the purported "compelling need" standard not only are outliers but pertain to a particular context not relevant here. In *Onwuka v. Fed. Express Corp.*,

178 F.R.D. 508 (D. Minn. 1997), plaintiff alleged that he was discriminated against on the basis of race and national origin. He sought *nationwide* discovery about disciplinary action taken against other company employees over a ten-year period. The court noted that in discrimination cases, discovery of information concerning other employees "should be limited to employees who are similarly situated to the Plaintiff." 178 F.R.D at 516-517. This might include limits in time or geography. It was in this context that the court stated that the plaintiff was required to show a "compelling need" for the breadth of discovery he was seeking. *Id.* The court did order the production of disciplinary records, but not as broadly as plaintiff was seeking.

Two years later, in another discrimination case against the same defendant, the district court in *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 387 (W.D. Tenn. 1999) repeated the "compelling need" language from *Onwuka* in assessing which of the personnel files plaintiff had requested should be produced. Thereafter, the court in *Johnson v. Guardsmark LLC*, No. 4:04 CV 2447, 2008 WL 11380093, at *1 (N.D. Ohio Jan. 14, 2008) cited the *Miller* and *Onwuka* cases in discussing the *Johnson* plaintiff's request for copies of personality tests administered to all employees who worked at the defendant's Youngstown, Ohio, office. These cases all involve blanket requests for categories of personnel files or similar information (such as the personality tests at issue in *Johnson*), without regard to the employees' relevance to the case.

Indeed, even where district courts within the Sixth Circuit have noted a higher standard for discovery of personnel files, they have found the standard satisfied based on a showing of relevance through a connection to the issues in the case. *See, e.g., Grays v. Mayorkas*, 2022 WL 386020, at *5 (E.D. Mich. Feb. 8, 2022) ("Plaintiff has alleged that each of the individuals listed above in some way participated in harassment, discrimination, or retaliation against him. Given their critical roles in Plaintiff's claims, the court will grant limited discovery to the sought

personnel files[.]"); *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999) (citing out-of-Circuit district court opinion for "compelling showing of relevance" standard); *id.* at 385 (finding standard satisfied to require production of portions of personnel files of other employees who engaged in the type of conduct at issue in the plaintiff's claims). Here, as discussed below, Plaintiff has limited its request for personnel files to those employees who have been selected for deposition. Cases expressing reservations about overly-broad, blanket requests for personnel files for large swaths of employees who may have no connection whatsoever to the case at hand are neither applicable nor helpful in this context.

    2.    Information in the Personnel Files of Employees and Former Employees that Plaintiff Has Selected for Deposition Are Highly Relevant and Should Be Produced

Because there is no public policy prohibiting or restricting discovery of personnel files and since a protective order like that already entered in this MDL (Dkt. 441) suffices to protect asserted privacy interests, the Court should assess the PBMs' objection under the generally applicable standard for discovery under Rule 26(b)(1).

As in *Knoll*, *Parrish*, *Basconi*, *Grays*, *Miller*, and countless other cases, the deponents here are PBM current and former employees whose work, by definition, touches upon the subject matter of this litigation—the promotion, prescribing, and/or dispensing of opioids. *See, e.g.*, Defs' Ex. A (Tr. of 12/6/2024 Teleconf.) at 4:21-12:19. Indeed, each of the deponents is sufficiently central to Defendants' practices, and Plaintiff's claims, that he or she has been selected not merely as a document custodian, but as a deponent. *None* of the witnesses are peripheral to the claims in this case. For multiple reasons, their personnel files are relevant.

To begin with, these deponents' personnel files are not part of the documents to which Plaintiff's general discovery search terms are applied, even though they are highly likely to contain material information on the same subjects. For example, performance evaluations typically

- 9 -

3148303.7

contain detailed discussions of what work an employee has performed during each year and how the company responded to it, which for designated deponents is likely to be highly relevant subject matter. *See In re: 3M Combat Arms Earplug Prods. Liab. Litig.*, 2019 WL 5787747, at *2, 4 (N.D. Fla. Nov. 6, 2019) ("The Court is persuaded that the employees' performance reviews and self-assessments will likely provide relevant insight into their various roles in the design, sale, and marketing of the 3M Combat Arms Earplugs that is not otherwise available at their depositions due to the passage of time."). In this case, Plaintiff's complaint contains multiple allegations that various employees of the defendants were aware of, and pointed out, problems with their employer's policies with respect to opioids. *See, e.g.* Rochester Complaint ¶¶ 393-414. In addition to showing what each of the deponents did during the year, their performance reviews may reveal, among other things, which actions and points of view with respect to opioids were rewarded and which were discouraged, information that is not only highly relevant, but unlikely to be found anywhere else.

This is equally or more true with respect to employee compensation. Although Defendants assert that the deponents are not sales people whose compensation depends on the volume of opioids sold, the role that the volume of opioid sales (or rebates or administrative fees computed as a function of opioids sold) may have played in their compensation is not determinable without review of the employee's personnel file information setting forth the basis of her compensation. *See, e.g., In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, MDL No. 2385, 3:12-md-02385 (S.D. Ill. April 26, 2013) (Ex. 4) at 5 ("Clearly, performance reviews 'related to Pradaxa' are relevant to the instant litigation. The requested compensation and bonus information is also relevant. *This information speaks to the plaintiffs' contention that Pradaxa was prematurely rushed or otherwise improperly placed on the market.*") (emphasis added); *id.* ("The plaintiffs also

contend that *all compensation and bonus information for the subject employees – not just that related to Pradaxa – is necessary to provide a complete picture regarding the subject employees' incentives, motivation, and/or bias*.  The Court agrees.") (emphasis added).  As in *Pradaxa*, the metrics that determined each deponent employee's compensation each year will tell Plaintiff what behavior the PBMs rewarded, punished, valued, or was trying to accomplish, what the employees' target goals were, and the extent to which the company viewed them as having succeeded.

Other courts addressing discovery of personnel files in mass litigation involving harms caused by pharmaceutical products have agreed with Special Master Cohen's conclusions in ordering this discovery.  In *In re: Benicar (Olmesartan) Prods. Liab. Litig.*, Master Dkt. No. 15-2606 (D.N.J. March 24, 2016) (Ex. 5), Magistrate Judge Schneider explained as follows:

> [T]argeted deposition questions may reveal what is contained in the deponents' performance evaluations.  However, production of the evaluations will lead to more efficient and focused questioning.  If plaintiffs are armed with detailed background information, plaintiffs can focus their questions on relevant areas rather than wasting time on irrelevant probing questions.  One of the Court's goals in managing discovery is to assure the parties' discovery focuses on relevant rather than tangential issues.  The deponents' performance evaluations enable plaintiffs to get to the "heart of the matter" without wasting time.

*Id.* at 3-4; *see also In re 3M*, 2019 WL 5787747, at *2 ("[T]he employees' performance reviews and self-assessments will likely provide relevant insight into their various roles in the design, sale, and marketing of the 3M Combat Arms Earplugs that is not otherwise available at their depositions due to the passage of time.  Moreover, bonus and incentive information is relevant to determining the employees' motivation or bias, both mow and at the time of the allegations at issue in this case.").

Because Plaintiff readily satisfies the general relevancy standard of Rule 26 and/or any heightened standard that courts have considered, the Court should overrule the PBMs' objection

3148303.7

and should affirm and adopt the Special Master's ruling requiring the parties to produce personnel files for depositions of current or former employees.

B. **Plaintiff Has Complied with Applicable Requirements for a Written Request or Else is Prepared to Expeditiously Do So.**

The PBMs argue that Plaintiff's failure to serve a written request for production under Rule 34 precludes the Court from requiring them to produce any deponent's personnel file. Objection at 5 ("The Rules do not require production of documents that have not been formally requested under Rule 34."); *see also id.* at 2 (stating that "the City of Rochester and the PBM Defendants have now exhausted the written discovery requests" allowed under Rule 34 and the CMO). This argument fails for several reasons.

First, Rule 30 separately authorizes a party to request production of documents from a party in connection with a deposition. *See* Fed. R. Civ. P. 30(b)(2). Here, Plaintiff served written requests for the PBMs' personnel files for the deponents in connection with giving notice of their depositions. *See* Defs' Ex. B (11/13 and 12/4/2024 emails of Michael Elsner) (Optum); Defs' Ex. C (12/4/2024 email of Laura Dunning) (ESI). The PBMs recognize this. Objection at 2 ("On November 13, 2024, the City sent an email to OptumRx's counsel in the course of scheduling a deposition of a former OptumHealth employee: 'Please produce ▬▬▬▬▬ personnel file.' . . . Those emails were not accompanied by any formal discovery requests under Rule 34."). The PBMs do not argue what information a "formal discovery request" would have given them that the written requests Plaintiff made did not. Since Plaintiff gave the PBMs written requests for their personnel files for the deponents, Plaintiff has done all that Rules 30 or 34 require.[2]

---

[2] To the extent the PBMs rely on the parties' exhaustion of the number of requests for production allowed under the CMO, *see* Objection at 2, Defendants concede as they must that Plaintiff may seek leave to serve additional requests. *Id.*; *see also* CMO (Dkt. 5268) at 5-6 ("The parties may seek leave to propound additional requests for production . . . ."). The PBMs have no argument for why Special Master Cohen's ruling does not *at least* constitute a grant of leave under the CMO.

The PBMs' suggestion that Plaintiff has "exhausted" its ability to serve formal written requests for each deponent employee's personnel file because of its prior service of requests for production of documents, *see* Objection at 2, makes no sense.  Requests for production of documents give a party essential information for determining who are potential fact witnesses to be deposed.  Requiring a party to limit its requests for production of documents in order to preserve an as-yet unknown number of requests for an as-yet unknown number of deponents' personnel files needlessly constrains the discovery process.  The Special Master ruled correctly both in this action and in the prior case tracks in establishing separate protocols for the production of deponent documents.

Finally, to the extent the Court finds that additional formal written requests are required, Plaintiff can and will provide such written requests for the three depositions under immediate discussion (*all of which have been postponed into the new year due to the pendency of this matter*) and all others going forward.  The Court should grant Plaintiffs leave to do so in overruling the PBMs' objection and affirming and adopting the Special Master's ruling.

**C.  Defendants' Privacy Concerns Are Unfounded**

1. Six Years' Experience with the Prior Discovery Rulings Demonstrates that Production of Personnel Files Is Consistent with the Protection of Employee Privacy

The Special Master's adoption of the CT3 Amended Protocol for producing deponent employees' personnel files is appropriate and should be affirmed.  The PBMs' primary substantive concern with the Special Master's ruling is that it purportedly threatens the privacy interests of their employees. Objection at 4, 8-9, 12, 13-14.  The PBMs, however, do not point to even a single instance during the past six years that the CT1 Protocol and CT3 Amended Protocol have been in place in this MDL in which a Defendant (or Plaintiff) employee's personnel file information has been inappropriately released or otherwise used to cause an employee harm.

- 13 -

3148303.7

This is unsurprising. The Court entered a thoroughgoing protective order at the outset of the MDL. *See* CMO No. 2: Protective Order (Dkt. 441) at 1, ¶ 1 ("Disclosure and discovery activity in this proceeding may involve production of confidential, proprietary, and/or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation would be warranted."). Special Master Cohen recognized in ordering Plaintiff and the PBMs to produce deponent employee personnel files that the Protective Order would address any party or deponent's privacy concerns. Defs' Ex. A (Tr. of 12/6/2024 Teleconf.) at 16-20. He is hardly the first to do so, as the Sixth Circuit and this Court have found exactly the same in ordering parties to produce personnel files of deponent employees. *See, e.g., Knoll*, 176 F.3d at 365 (affirming protective order providing access to employee personnel files to plaintiff's counsel but not to plaintiff himself: "Such protective orders are commonly granted . . . as a means of protecting the privacy interests of nonparties while yet serving the needs of litigation."); *Basconi*, 2017 WL 749187, at *6 ("Further, production of the requested personnel files is not against public policy as there is a protective order in place in this case, and personnel files are already routinely disclosed in litigation.").

Because six years' experience in this MDL with protocols for producing deponent employees' personnel files demonstrate that these productions can be provided efficiently without the need for repetitive motion practice and without jeopardizing any party or employee's privacy interests, the Court should overrule the PBMs' Objection and should affirm and adopt the Special Master's ruling.

2. The Court Also Should Reject the PBMs' Alternative Request for Special Protections as Unwarranted on the Current Record.

The PBMs close by asking the Court, in the event it overrules their Objection as it should, to "impose stringent controls, including: (1) permitting the PBM Defendants to designate all

- 14 -

3148303.7

personnel files with the highest level of confidentiality available in this MDL; and (2) ordering that the files not be placed in the MDL repository—where they can be accessed by an untold number of individuals both inside and outside the MDL." Objection at 13-14.  The Court should deny these requests.

First, the Court has no authority under the Protective Order to *pre-approve* a party's designations without even seeing the material being designated.  It is the *producing party's* responsibility to designate discovery materials as Confidential or Highly Confidential based on its own good faith assessment.  CMO No. 2: Protective Order (Dkt. 441) at 4, ¶ I.10 ("In designating discovery materials as Confidential Information, *the Producing Party shall do so* in good faith consistent with the provisions of this Protective Order and rulings of the Court.") (emphasis added); *id.* at 4-5, ¶ I.11 ("In designating discovery materials as Highly Confidential Information, *the Producing Party shall do so* in good faith consistent with the provisions of this Protective Order and rulings of the Court.").  Indeed, the Court has no involvement in this process *unless and until* (a) a party designates discovery material as Confidential or Highly Confidential; and (b) another party maintains a challenge to that designation after engaging in a meet-and-confer process.  *See id.* at 24, ¶ VII.52 ("If a Receiving Party elects to press a challenge to a confidentiality designation after considering the justification offered by the Producing Party, it shall notify the Producing Party and the Receiving Party shall have seven (7) days from such notification to challenge the designation by commencing a discovery dispute under the procedures set forth in Section 9(o) of Case Management Order One.").  The Court thus under no circumstance can or should "permit" the PBMs to make particular designations of materials that neither the Court nor Plaintiff has ever seen.

3148303.7

Second, the Court likewise should not permit the PBMs to produce the deponents' personnel files without placing these materials in the MDL Repository.  From the outset of this MDL, the Court has required the parties to produce relevant information to be made available to participating parties in all opioid litigation cases in all federal and state courts.  *See* CMO 1 (Dkt. 232) at 15, ¶ 9.k.ii ("[A]ll Defendants shall review documents previously produced pursuant to an civil investigation, litigation, and/or administrative action by federal (including Congressional), state, or local government entities involving the marketing or distribution of opioids and shall produce to the PEC non-privileged documents relevant o the claims in this MDL proceeding."); Discovery Ruling No. 22 (Dkt. 2576) at 1 ("During the telephonic conference itself, the Court stated that: (1) it agreed with the general principal that the MDL should serve as a central repository for all opioid-related discovery; (2) the requested documents appeared to be generally discoverable and probably relevant; and (3) granting the request would serve to advance coordination between Federal and State court litigation[.]"); *id.* at 2 ("Moreover, the hoped-for end result of having all opioid-related discovery produced in this MDL is a *decreased* burden for all parties, including Defendants, who can simply point any future Plaintiffs (including Plaintiffs in additional MDL Track cases, remanded cases, and even State Court cases) to the MDL repositories.").  The PBMs' request for an exemption from this process—essentially creating a gated community for information about higher-level current and former employees of the PBMs *and only the PBMs*— would undercut and could delegitimize the Court's longstanding goal of providing equal access by all participating opioid litigation parties to *all* opioid litigation discovery.  Plaintiff respectfully request that the Court *not* abandon this laudable and important goal of ensuring equal access to justice for parties impacted by the opioid epidemic in the face of the PBM Defendants' plea for special treatment.

3148303.7

Finally, Defendants attempt to use the recent murder of a non-party UHC executive to justify their position, but that horrific event in no way indicates that greater privacy protections are needed than have already been in place in this litigation. As already noted, not once in the course of six years has there been an unauthorized disclosure of personal and private information designated by a party as confidential. There is no reason to believe there would be one now. Moreover, the salaries of executives of major public corporations are a matter of public record (as are the biographies of each of the deponents in question). There is not the slightest suggestion that a litigation leak, from this or any other lawsuit, played any role whatsoever in disclosing the compensation of the murdered executive. Defendants' effort to exploit this tragedy to bolster their litigation position should be rejected.

## CONCLUSION

For all of the reasons set forth, the Court should deny the PBM Defendants' Objection and should affirm and adopt the Special Master's ruling requiring production of personnel files for all deponents as an Order of the Court.

Dated: December 16, 2024

Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
jrice@motleyrice.com

Paul T. Farrell Jr., Esq.
FARRELL & FULLER
270 Munoz Rivera Ave., Suite 201
San Juan, PR 00918
(304) 654-8281

*Plaintiffs' Co-Lead Counsel*

/s/Peter H. Weinberger
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of December, 2024, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger
