UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | Case No.: 17-MD-2804<br><br>Judge: Dan Aaron Polster |

**EXPRESS SCRIPTS' REPLY IN SUPPORT OF OBJECTION TO DISCOVERY RULING NO. 14, PART 33 AND MOTION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

I. THE SPECIAL MASTER ERRED IN RULING THAT THE PRIVILEGED DOCUMENTS ARE NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE ...................................................................................................................3

II. THE PRIVILEGED DOCUMENTS HAVE A PRIMARILY LEGAL PURPOSE............5

III. CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) IS WARRANTED IF THE COURT AFFIRMS THE RULING ......................10

CONCLUSION..............................................................................................................................12

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Alomari v. Ohio Dep't of Pub. Safety*,
   626 F. App'x 558 (6th Cir. 2015) ...................................................................................3, 4, 7, 11

*Baxter Travenol Lab'ys, Inc. v. LeMay*,
   514 F. Supp. 1156 (S.D. Ohio 1981) .........................................................................................12

*Ciccio v. SmileDirectClub, LLC*,
   2022 WL 2182301 (M.D. Tenn. June 16, 2022).........................................................................9

*In re Cnty. of Erie*,
   473 F.3d 413 (2d Cir. 2007)....................................................................................................4, 7

*CSC Recovery Corp. v. Daido Steel Co.*,
   1997 WL 661122 (S.D.N.Y. Oct. 22, 1997) ...............................................................................8

*In re FirstEnergy Corp. Sec. Litig.*,
   2024 WL 3384864 (S.D. Ohio July 12, 2024)..........................................................................11

*In re Grand Jury Subpoenas*,
   454 F.3d 511 (6th Cir. 2006) ......................................................................................................4

*Int'l Bhd. of Elec. Workers Loc. 212 v. Am. Laundry Mach., Inc.*,
   2009 WL 81114 (S.D. Ohio Jan. 9, 2009) ..................................................................................9

*In re Kellogg Brown & Root, Inc.*,
   756 F.3d 754 (D.C. Cir. 2014) ........................................................................................ passim

*Marquette Transportation Co., LLC v. M/V CENTURY DREAM*,
   2016 WL 11686640 (E.D. La. Dec. 13, 2016)............................................................................9

*Mohawk Indus., Inc. v. Carpenter*,
   558 U.S. 100 (2009)..................................................................................................................10

*In re Nat'l Prescription Opiate Litig.*,
   956 F.3d 838 (6th Cir. 2020) ......................................................................................................5

*Newsome v. Young Supply Co.*,
   873 F. Supp. 2d 872 (E.D. Mich. 2012)....................................................................................11

*Rowe v. E.I. duPont de Nemours & Co.*,
   2008 WL 4514092 (D.N.J. Sept. 30, 2008) ..............................................................................10

*Sherwood v. BNSF Ry. Co.*,
  325 F.R.D. 652 (D. Idaho 2018) (D. Idaho May 15, 2018) ........................................................9

*United States v. Eaton Corp.*,
  2012 WL 3486910 (N.D. Ohio Aug. 15, 2012) ........................................................................8

*United States v. Roberts*,
  84 F.4th 659 (6th Cir. 2023) ................................................................................................3, 4, 11

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ........................................................................................................2, 3, 4, 8

**<u>Statutes</u>**

29 U.S.C. § 1292(b) ...........................................................................................................2, 10, 12

**<u>Other Authorities</u>**

Local Rule 7.1 ..................................................................................................................................1

Wright & Miller, *Federal Practice and Procedure* § 3930 ...........................................................12

**PRELIMINARY STATEMENT**

Discovery Ruling No. 14, Part 33 (Dkt. No. 5767) is inconsistent with Supreme Court and Sixth Circuit precedent and should be overruled. The Ruling acknowledges that the fourteen Privileged Documents at issue were prepared by the Express Scripts Legal Department and/or in-house counsel at Express Scripts, that their purpose was typically to "assess 'compliance with: (1) Pharmacy Practice rules and regulations of the state of Ohio; (2) Controlled Substance regulations of Ohio; (3) Enterprise Policies; and (4) the federal Controlled Substance Act,'" and that the documents provided findings and recommendations regarding any issues relating to regulatory or statutory compliance. Ruling at 6 (quoting MDL_WITHHELD_001466). In other words, the Ruling demonstrates—even without disclosing the substance of the communications—that the Privileged Documents have a primarily *legal* purpose. Yet only by turning privilege on its head, and asserting that "compliance with regulations is usually a business matter, not a legal one," does the Ruling determine that the Privileged Documents contain nonprivileged "business advice" rather than legal advice. *Id*. at 6–7. The Ruling fails to properly apply the law governing attorney-client privilege, and Express Scripts' objection should be sustained.

Plaintiff's response brief makes two principal arguments in support of the Ruling, neither of which is persuasive.[1] *First*, Plaintiff argues that Express Scripts is seeking to substitute the D.C. Circuit's "significant purpose" test for the Sixth Circuit's "predominant purpose" test. Resp. at 1–2, 6–7. This is a strawman argument. Express Scripts repeatedly cites the Sixth Circuit's predominant purpose test as controlling law (Obj. at 3, 4, 6, 14), and simply cites to the D.C.

---

[1] Express Scripts observes that Plaintiff's brief, at 18 pages, exceeds the 15-page limit set by this Court and Local Rule 7.1. *See* Dkt. No. 232 at 4–5 ("The Court will strictly enforce provisions regarding length of memoranda filed in support of motions; and the Court will apply limitations applicable to complex cases. *See* Local Rule 7.1.").

Circuit's decision in *Kellogg* as the appropriate application of that test to circumstances similar to those present here (Obj. at 6, 7, 11).[2] Regardless of the test applied, the Privileged Documents merit protection under the attorney-client privilege because the primary purpose of the documents is quintessentially legal: interpreting the law, determining whether Express Scripts was complying with the law, and providing advice on any changes needed to ensure future compliance with the law.

*Second*, Plaintiff argues that Express Scripts failed to meet its burden of proving that the Privileged Documents have a primarily legal purpose. Resp. at 8–12. As the Ruling acknowledges, however, the stated purpose of these internal investigations was to assess compliance with federal and state laws and regulations relating to pharmacy practice and controlled substances. Ruling at 6. Thus, the Privileged Documents themselves—submitted *in camera* to the Special Master and this Court—prove this primarily legal purpose on their face. Moreover, Plaintiff's own exhibits support this conclusion, showing that these internal investigations were overseen by "the Office of the General Counsel" and were intended to assess compliance with statutes and regulations. Resp. Ex. A at pp. 2–3; Resp. Ex. B at 3, 6–9, 19. The Ruling does not cite any countervailing "business" purposes; instead, it simply concludes that regulatory compliance in the heavily regulated prescription drug industry serves a primarily business function. This conclusion contradicts *Upjohn* and should be overruled. Express Scripts has met its burden of establishing that the Privileged Documents are in fact privileged.

Finally, Plaintiff opposes Express Scripts' motion to certify any affirmance of the Ruling for interlocutory appeal under 29 U.S.C. § 1292(b). Resp. at 12–18. Contrary to Plaintiff's view,

---

[2] As the D.C. Circuit recognized, "the primary purpose test, sensibly and properly applied, cannot and does not draw a rigid distinction between a legal purpose on the one hand and a business purpose on the other." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759 (D.C. Cir. 2014).

2

however, the elements for certification are satisfied here. The Court's order would involve a controlling question of law on which there is a substantial ground for difference of opinion, and an immediate appeal may materially advance the ultimate termination of the litigation. The Court should immediately certify its order for interlocutory appeal if it decides to affirm the Ruling.

**I.       THE SPECIAL MASTER ERRED IN RULING THAT THE PRIVILEGED DOCUMENTS ARE NOT PROTECTED BY ATTORNEY-CLIENT PRIVILEGE**

The Ruling errs in concluding that "compliance with regulations is usually a business matter, not a legal one." Ruling at 5, 6. By defining legal advice pertaining to regulatory compliance as "business advice," the Ruling denies attorney-client privilege to a wide swath of legal advice provided by counsel to clients in heavily-regulated industries such as the prescription drug industry. Neither the Supreme Court nor the Sixth Circuit support such a conclusion. As the Supreme Court observed in *Upjohn*, "[i]n light of the vast and complicated array of regulatory legislation confronting the modern corporation, corporations, unlike most individuals, constantly go to lawyers to find out how to obey the law, particularly since compliance with the law in this area is hardly an instinctive matter." *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981) (cleaned up). The Sixth Circuit, likewise, has held that attorney client privilege applies "[w]here legal advice of any kind is sought." *United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023) (citation omitted); *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (same). Thus, legal advice regarding statutory and regulatory compliance qualifies for the privilege, as Plaintiff ultimately concedes. Resp. at 11.

Rather than justify the Ruling's conclusion that regulatory compliance "is usually a business matter," Plaintiff focuses on a presumed distinction between the D.C. Circuit's "significant purpose" test in *Kellogg* and the Sixth Circuit's "predominant purpose" test. Resp. at 6–8. While Plaintiff argues that Express Scripts is asking this Cour to "depart" from the Sixth

3

Circuit test, Express Scripts has done no such thing. Instead, Express Scripts argues in its Objection that the "predominant purpose" test applies, that *Kellogg* provides persuasive authority for how the test should be applied consistent with *Upjohn*—as district courts in this Circuit and other Circuits have recognized—and that regardless of the test used the Privileged Documents qualify for the attorney-client privilege. Obj. at 3–7.

In any event, the Sixth Circuit's decisions in *Roberts* and *Alomari* are consistent with *Kellogg*. The Second Circuit decision in *Erie*, quoted approvingly by the Sixth Circuit in *Roberts* and *Alomari*, held that "[w]hen a lawyer has been asked to assess compliance with a legal obligation, the lawyer's recommendation of a policy that complies (or better complies) with the legal obligation—or that advocates and promotes compliance, or oversees implementation of compliance measures—is legal advice." *In re Cnty. of Erie,* 473 F.3d 413, 423 (2d Cir. 2007). There is no reason to believe that the Sixth Circuit would reach a conclusion contrary to *Kellogg* and *Erie* if presented with a case involving similar circumstances.

Stated simply, Express Scripts is not asking this Court to ignore controlling Sixth Circuit precedent. Instead, Express Scripts is asking this Court to faithfully apply that precedent in a manner that protects the attorney-client privilege in the corporate context. *See Upjohn*, 449 U.S. at 392–94 (rejecting the "narrow scope given the attorney-client privilege by the court below" because doing so "threatens to limit the valuable efforts of corporate counsel to ensure their client's compliance with the law"). As the Sixth Circuit has recognized, "legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Alomari*, 626 F. App'x at 570 (quoting *Erie,* 473 F.3d at 419); *see also In re Grand Jury Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) ("The purpose of attorney-client privilege is to ensure free and open communications between a client and his attorney."). The audits and internal

4

investigations reflected in the Privileged Materials satisfy the Sixth Circuit's predominant purpose test and should be protected by attorney-client privilege.

Plaintiff also argues that Express Scripts must establish "good cause" to persuade this Court to depart from its prior opinion applying the Sixth Circuit's "primary or predominant purpose" test. Resp. at 7 (citing Dkt. Nos. 4978, 5053). This argument is misplaced for several reasons. First, as stated above, Express Scripts is not asking this Court to disregard the Sixth Circuit test. Second, Express Scripts was not a party to the prior dispute between MDL plaintiffs and Kroger, and the Express Scripts documents at issue in this privilege dispute are different from the Kroger documents. The Court need not conclude that its earlier ruling was incorrect—even the portion of the prior ruling declining to adopt *Kellogg*'s reasoning for the Kroger documents—in order to sustain this Objection. Third, "an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020). Express Scripts is well within its rights to ask the Court to make an individualized determination as to whether the Privileged Documents qualify for the attorney-client privilege.

## II. THE PRIVILEGED DOCUMENTS HAVE A PRIMARILY LEGAL PURPOSE

The Ruling holds that "compliance with regulations is usually a business matter, not a legal one." Ruling at 5, 6. In light of this legal conclusion, the Ruling determines that advice from attorneys in the Privileged Documents regarding "how to structure business operations to ensure compliance with regulatory requirements" is "business advice" and "not protected by attorney-client privilege." Ruling at 5–6.[3] The Ruling errs as to both fact and law, and should be overruled.

---

[3] Plaintiff initially argues that the Ruling's determination that "compliance with regulations is usually a business matter, not a legal one" is a "factual assertion" rather than a legal ruling, Resp. at 2, even though this holding was contained in the Ruling's "Legal Standards" (footnote continued)

5

Plaintiff argues that Express Scripts has failed to prove that the primary purpose of the Privileged Documents was to provide or solicit legal advice. Resp. at 8–12. Plaintiff has not seen the Privileged Documents, which have been submitted *in camera* to the Court, and therefore its speculation about what the documents do or do not prove should be disregarded. The Privileged Documents demonstrate on their face that they are primarily designed to provide legal advice. The documents were created by or at the direction of in-house attorneys, and the investigations were often conducted by in-house counsel. Ruling at 6; *see also* MDL_WITHHELD_001433 (circulating the findings to attorneys). The internal investigations reflected in the audits were "carried out at the direction of [Express Scripts]'s Legal Department." Ruling at 6; *see also* MDL_WITHHELD_001435, MDL_WITHHELD_001576; MDL_WITHHELD_001646; MDL_WITHHELD_001803; MDL_WITHHELD_002843; MDL_WITHHELD_004632; MDL_WITHHELD_004964. The documents typically indicate that their scope was to assess compliance with state and federal laws, including, for example, "Pharmacy Practice rules and regulations of the state of Ohio," "Controlled Substance regulations of Ohio," and "the federal Controlled Substance Act." Ruling at 6. In addition, the Ruling recognizes that the Privileged Documents "contain advice from a lawyer [regarding] how to structure business operations to ensure compliance with regulatory requirements." *Id*. at 6–7. And as the Ruling describes it:

> Most of the documents follow a structure where the author lays out, for numerous topics, the compliance issue addressed, the regulatory or other provision controlling the issue, the findings of the audit, and a recommendation for addressing any deficiencies, if needed.

---

section, Ruling at 5. Plaintiff later recognizes its error, and argues that this legal determination has been "affirmed" by this Court and "is supported by cases within the Sixth Circuit and throughout the country." Resp. at 9.

6

*Id*. at 6. The "regulatory or other provision controlling the issue" is invariably a state or federal law or regulation applicable to pharmacy practice and handling of controlled substances. In other words, the predominant purpose of the Privileged Documents is to provide legal advice, because the audits involve "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *Alomari*, 626 F. App'x at 570; *see also Erie,* 473 F.3d at 423.

Plaintiff's exhibits support this conclusion. Exhibit A, which is a client-facing description of Express Scripts' audit procedures, states that "[t]he Pharmacy Audit group reports into the Office of the General Counsel, not to any operational group." Resp. Ex. A at *2. It further states that the Pharmacy Compliance Audit group "regularly assesses pharmacy operations compliance with … Pharmacy laws and rules of the state in which our pharmacy is located [and] Non-resident pharmacy laws." *Id*. at *3. Exhibit B, which is a high level presentation regarding the Pharmacy Compliance audit process, states at the outset that "Express Scripts is committed to conducting business ethically, with integrity, *and in accordance with all applicable laws, rules and regulations*." Resp. Ex. B at 3 (emphasis added). The presentation lists dozens of categories that are investigated to ensure compliance with laws and regulations governing pharmacy practice and controlled substances. *Id*. at 6–9. Completion of the audit requires the auditor to "[a]ssess your facilities['] compliance on the statute/regulation/policy listed in the 'Topic' column." *Id*. at 19. Plaintiff does not identify any non-legal "business" purpose for the audits, and certainly none that transform the legal purpose into not being the dominant purpose.

Plaintiff offers three arguments as to why the documents should be treated as primarily business-related rather than legal. None are persuasive. First, Plaintiff argues that "the audits were in fact routinely performed as part of ESI's ordinary business." Resp. at 8–11. But most if not all corporations have in-house counsel who provide legal advice in order to maintain compliance with

7

law and avoid litigation. Eliminating attorney-client privilege simply because legal advice is "routinely" provided "would eradicate the attorney-client privilege for internal investigations conducted by businesses that are required by law to maintain compliance programs, which is now the case in a significant swath of American industry." *Kellogg*, 756 F.3d at 759.

Second, Plaintiff argues that "ESI has not shown which advice was provided by its in-house counsel as opposed to its compliance personnel." Resp. at 8. But a party claiming privilege is not required to disclose the resulting legal advice to carry its burden. *See, e.g.*, *United States v. Eaton Corp.*, 2012 WL 3486910, at *6, *9 (N.D. Ohio Aug. 15, 2012) (parties must describe the nature of the document "without revealing information itself privileged or protected"); *CSC Recovery Corp. v. Daido Steel Co.*, 1997 WL 661122, at * 5 (S.D.N.Y. Oct. 22, 1997) (finding that the defendant "was not required to reveal its attorney's advice" to assert the attorney-client privilege). In any event, as the Ruling recognizes and the documents themselves show, the majority of the audits were conducted by in-house counsel, and all were at the direction of the Express Scripts Legal Department. *See, e.g.*, Ruling at 6. Moreover, "communications made by and to non-attorneys serving as agents of attorneys in internal investigations are routinely protected by the attorney-client privilege." *Kellogg*, 756 F.3d at 758–59; *see also Upjohn*, 449 U.S. at 384 (attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice").

Third, Plaintiff asserts that "ESI has not proven whether and how its in-house counsel provided legal advice in their role as attorney as opposed to business/regulatory advice in their role as compliance personnel." Resp. at 8–9, 11–12. Plaintiff improperly presumes that "regulatory" advice provided by in-house counsel is "business" advice, an error also reflected in the Ruling.

8

This is inconsistent with Supreme Court precedent, for the reasons stated above and in the Objection. In addition, as stated earlier, Express Scripts is not required to disclose the advice provided by counsel to its adversary in order to prove that attorney-client privilege applies. The documents provided *in camera* for the Court's review demonstrate that the predominant purpose of the audits was to provide legal advice, or to provide information to obtain legal advice, regarding compliance with federal and state laws and regulations.

Plaintiff also cites, in a footnote, five cases that it asserts supports the Ruling's conclusion that "compliance with regulations is usually a business matter, not a legal one." Resp. at 9 n.33. Yet none of these cases actually support that proposition, despite Plaintiff's misleading parentheticals. *See Ciccio v. SmileDirectClub, LLC*, 2022 WL 2182301 at *5 (M.D. Tenn. June 16, 2022) (citing this MDL court and noting that "regulatory compliance … has been held to fall outside of the scope of attorney-client privilege" but that "there may be authority to suggest otherwise"); *Int'l Bhd. of Elec. Workers Loc. 212 v. Am. Laundry Mach., Inc.*, 2009 WL 81114, at *2 (S.D. Ohio Jan. 9, 2009) (holding that "the attorney-client privilege does not apply to communications made to secure or provide environmental advice from [an environmental consulting firm]"); *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 662 (D. Idaho 2018) (D. Idaho May 15, 2018) ("blanket assertion" that incident investigation policies and procedures are privileged "goes too far" but "[t]here remains, nonetheless, the potential that a particular document (or documents) is privileged"); *id*. at 665 (determining that an incident report is not privileged, in part because "[n]othing in the form indicates that its purpose is to seek legal advice or that any attorney was involved in filling it out"); *Marquette Transportation Co., LLC v. M/V CENTURY DREAM*, 2016 WL 11686640, at *2 (E.D. La. Dec. 13, 2016) (stating in dicta that "regulatory compliance" is a "non-protected purpose" but then ordering that the documents be provided for *in*

9

*camera* review); *Rowe v. E.I. duPont de Nemours & Co.*, 2008 WL 4514092, at *9–11 (D.N.J. Sept. 30, 2008) (concluding that an email concerning regulatory strategy in response to a news article is not privileged, but that two emails containing statutory interpretation and legal advice provided to non-lawyers are privileged).

### III. CERTIFICATION FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(B) IS WARRANTED IF THE COURT AFFIRMS THE RULING

Plaintiff argues that if the Court affirms the Ruling, it should deny Express Scripts' motion to certify the order for interlocutory appellate review pursuant to 28 U.S.C. § 1292(b). Resp. at 12–18. But for the reasons stated in the Objection, any order affirming the Ruling would be appropriate for interlocutory appeal. Obj. at 11–15.

First, Plaintiff argues that the Ruling did not involve a "controlling question of law" because privilege is "a mixed question of law and fact." Resp. at 13–14. The Supreme Court has disagreed, stating in *Mohawk* that "[t]he preconditions for § 1292(b) review—'a controlling question of law,' the prompt resolution of which 'may materially advance the ultimate termination of the litigation'—are most likely to be satisfied when a privilege ruling involves a new legal question or is of special consequence, and district courts should not hesitate to certify an interlocutory appeal in such cases." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009); *see also* Obj. at 12 (citing cases granting interlocutory appeal over privilege rulings pursuant to § 1292(b)). Plaintiff seeks to distinguish this authority by arguing that this dispute involves a "run of the mill privilege determination" driven by a "factual analysis." Resp. at 13–14. But the Ruling represents a novel departure from *Upjohn* and a misapplication of the Sixth Circuit's primary purpose test, and is therefore anything but a "run of the mill privilege determination." The Ruling's central legal conclusion—that "compliance with regulations is usually a business matter, not a legal one" (Ruling at 5, 6)—raises a controlling question of law

10

that meets the "low bar" set by the Sixth Circuit for determining whether a question of law is "controlling." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875–76 (E.D. Mich. 2012).

Second, Plaintiff argues that there is no substantial ground for difference of opinion because the Sixth Circuit has already set forth the "predominant purpose" test for communications involving a mix of legal advice and business advice. Resp. at 14–16 (citing *Roberts*, 84 F.4th at 670; *Alomari*, 626 F. App'x at 570). But the Sixth Circuit has not addressed whether regulatory compliance is a business matter rather than a legal matter when applying the predominant purpose test. Neither *Roberts* nor *Alomari* involved regulatory compliance. *See Roberts*, 84 F.4th at 670 (criminal appeal concerning incriminating statements made to an attorney); *Alomari*, 626 F. App'x at 570 (communications to employer's attorney in the context of an employment dispute). In addition, the Sixth Circuit has not addressed whether it would join the D.C. Circuit's view that, under the predominant purpose test, attorney-client privilege applies "[s]o long as obtaining or providing legal advice was one of the significant purposes of the internal investigation … even if there were also other purposes for the investigation and even if the investigation was mandated by regulation rather than simply an exercise of company discretion." *Kellogg*, 756 F.3d at 758–59. As to both of these questions, there is "an actual difference of opinion within the controlling circuit" and "a circuit split," either of which is sufficient to justify an interlocutory appeal. *See In re FirstEnergy Corp. Sec. Litig.*, 2024 WL 3384864, at *3 (S.D. Ohio July 12, 2024); *see also* Obj. at 13–14. And while Plaintiff relies on the denial of certification in *FirstEnergy*, that case did not involve regulatory compliance or an adequate evidentiary record. *Id.* at *10 (denying FirstEnergy's request to certify privilege question for interlocutory appeal in part because "FirstEnergy did not present this Court with any evidence to support its contention that the internal

11

investigations were predominantly for legal advice," including "no privilege log, nor any request for *in camera* review").

Finally, Plaintiff argues that an immediate appeal will not advance the ultimate termination of the litigation. Resp. at 17–18. Plaintiff posits that retrial following a post-judgment appeal is "unlikely" and that it is "hard to imagine that the fourteen documents … will lengthen the proceedings (summary judgment or trial) in any material manner in this complex case." *Id*. at 17. Plaintiff's speculation aside, even a small possibility that this costly and complex litigation is extended as a result of an erroneous privilege ruling justifies an immediate appeal. *See Baxter Travenol Lab'ys, Inc. v. LeMay*, 514 F. Supp. 1156, 1159 (S.D. Ohio 1981) (certifying privilege question for interlocutory appeal based "not only an assessment of the probability that the Court's decision is in error (*i.e.*, the probability that, without immediate appeal, a time-consuming retrial will be required), but, also, consideration of the extent to which additional time and expense may be saved by avoiding a retrial (*i.e.*, the complexity of the case)"); *see also* Wright & Miller, *Federal Practice and Procedure* § 3930 ("Review of [privilege] orders may be rested on the ground that reversal and subsequent denial of production may make it possible to dispose of the case quickly for lack of evidence, or at least expedite discovery and trial.").

## **CONCLUSION**

For the reasons stated herein and in the Objection, this Court should sustain Express Scripts' objection to the Ruling and affirm that the Privileged Documents are protected by the attorney-client privilege. If the Court decides to affirm the Ruling, it should certify its order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: December 17, 2024

*/s/ Jonathan G. Cooper*
Michael J. Lyle
Jonathan G. Cooper
Matthew K. Wasserman
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com
matthewwasserman@quinnemanuel.com

Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000
sagevandenheuvel@quinnemanuel.com

*Attorneys for Express Scripts Defendants*