UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*City of Rochester v. Purdue Pharma, L.P.*, No. 19-op-45853 (Track 12) | MDL No. 2804<br><br>Case No. 1:17-md-2804<br><br>Judge Dan Aaron Polster |

**PBM DEFENDANTS' REPLY SUPPORTING THEIR OBJECTION TO THE SPECIAL MASTER'S ORDER REGARDING THE PRODUCTION OF PERSONNEL FILES**

The City's response supporting the Special Master's blanket order compelling the production of personnel files for every deponent in the litigation fails for three reasons. First, the City skates over the fact that it *never* issued a formal discovery request for *any* personnel files. Rule 34 requires a formal document request before a court can compel production. Second, the City misstates the legal standard and relies on inapposite employment cases that undermine the Special Master's blanket order requiring the production of personnel files of every deponent. And third, regardless of what standard applies, the City has not shown the relevance of personnel files for the noticed deponents—including files without any connection to opioids—let alone established the relevance of those documents for deponents who have not yet been identified.

**I.     THE CITY'S FAILURE TO SERVE A RULE 34 REQUEST FOR PERSONNEL FILES IS DISPOSITIVE.**

The City does not dispute that it never formally requested the production of personnel files. *See* Dkt. No. 5823 at 12–13. That ends the inquiry: A party may move for an order compelling production "only if [the defendant] failed to produce documents 'requested under Rule 34.'" *McDermott v. Cont'l Airlines, Inc.*, 339 F. App'x 552, 560 (6th Cir. 2009) (quoting Fed R. Civ. P. 37(a)(3)(B)); *see also Nilavar v. Mercy Health Sys. W. Ohio*, 210 F.R.D. 597, 610 (S.D.

Ohio 2002) ("Rule 34 is the formal mechanism by which documents are to be requested, and Plaintiff's Motion to Compel Discovery is only viable as to documents requested by that method.").

Despite its failure to issue a formal request, the City nonetheless argues that it "complied with applicable requirements" by sending informal email requests for personnel files days before the depositions were set to occur. Dkt. No. 5823 at 12 (emphasis omitted). The City seeks to circumvent Rule 34's requirements by claiming that those emails satisfy Rule 30(b)(2), which, according to the City, "separately authorizes a party to request production of documents from a party in connection with a deposition." *Id.* (emphasis added). That is incorrect: Rule 30(b)(2) provides that "[i]f a subpoena duces tecum is to be served on the *deponent*, the materials designated for production, as set out in the subpoena, must be listed in the notice or in an attachment. The notice to a party deponent *may be accompanied by a request under Rule 34* to produce documents and tangible things at the deposition." Fed. R. Civ. P. 30(b)(2) (emphases added). In other words, Rule 30(b)(2) contemplates two methods for obtaining documents: (1) a subpoena duces tecum specifically identifying the documents sought (if the deponent is a non-party), or (2) a Rule 34 formal document request (if the deponent is a party). The City has not attempted to comply with either method.

Beyond that, the City cannot circumvent Rule 34's requirements by smuggling new discovery requests to the PBM Defendants into deposition notices to non-parties. "The leading treatises agree that . . . resort to [subpoenas] should not be allowed when it circumvents the requirements and protections of Rule 34 for the production of documents belonging to a party." *Stokes v. Xerox Corp.*, 2006 WL 6686584, at *3 (E.D. Mich. Oct. 5, 2006) (quoting 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2204 at 365 (2nd ed. 1994) ("If documents

2

are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness.")). A subpoena "should not be used to obtain pretrial production of documents or things, or inspection of premises, from a party in circumvention of discovery rules." 7 *Moore's Federal Practice - Civil* § 34.02[e]; *see also Chaney v. Dollar Gen. Partners*, 2024 WL 1251329, at *1 (E.D. Ky. Mar. 21, 2024) ("Rule 30(b)(2) states that any request for documents to a party must be made via Rule 34, not a subpoena."). The City's attempt to acquire Defendants' documents blatantly circumvents Rule 34's protections and must be denied. *See Stokes*, 2006 WL 6686584, at *3 (quashing subpoena duces tecum to nonparty employee of defendant as an improper attempt to subpoena records of a party); *Kean v. Van Dyken*, 2006 WL 374502, at *6 (W.D. Mich. Feb. 16, 2006) (denying motion to compel production of personnel files directed to parties because plaintiff failed to comply with Rule 34).

Even if the City could rely on Rule 30(b)(2), its "reference to Rule 34 triggers the procedural requirements of Rule 34," *Nozinich v. Johnson & Johnson, Inc.*, 2011 WL 13124086, at *2 (W.D. Tenn. Apr. 4, 2011), which, the City—by its own admission—has not observed. The City dismisses these procedural safeguards, arguing their informal email requests are "all that Rules 30 or 34 require." Dkt. No. 5823 at 12. But disregarding the requirements of Rule 34 and "treat[ing] correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery." *Est. of Eng. v. Curry*, 2019 WL 177941, at *3 (W.D. Ky. Jan. 11, 2019) (citation omitted).

As a fallback, the City claims that the Special Master implicitly granted it leave to request more documents. Dkt. No. 5823 at 12 n.2. That's wrong. Neither in emails to the Special Master when the dispute arose, nor at the hearing, did the City ever request leave to file additional Rule 34 requests. Instead, the Special Master made it clear shortly before the conference that "[n]o party

3

is permitted to serve any additional discovery requests without leave of Court." Dkt. No. 5807-4. To date, the City still has not served a request for personnel files. This Court cannot compel the production of materials that have not been properly requested.

> II. **THE SIXTH CIRCUIT AND LOWER COURTS IN THIS CIRCUIT REQUIRE A HEIGHTENED DEMONSTRATION OF RELEVANCE BEFORE PERSONNEL FILES MUST BE PRODUCED.**

Even if the City had served a formal discovery request for personnel files, it would still need to make a "compelling showing" that the information sought is relevant before the Court can compel production. *See* Dkt. No. 5807 at 8–9 (collecting cases). The City disputes the "compelling showing" requirement, going so far as to claim that "no authority supports the 'compelling need' test." Dkt. No. 5823 at 6. That is nonsense. Even the City is forced to acknowledge that "district courts within the Sixth Circuit have noted a higher standard for discovery of personnel files." *Id.* at 8. Time and again, courts in this Circuit have required parties seeking personnel files to demonstrate a compelling need before those materials are produced. *See, e.g.*, *Nelson v. Tenn. Coll. of Applied Tech.*, 2024 WL 1097201, at *1 (W.D. Tenn. Mar. 13, 2024) ("To be compelling, the requesting party must demonstrate that the value of the information outweighs the privacy interests of the affected parties." (internal quotation marks and citation omitted)); *Johnson v. Guardsmark LLC*, 2008 WL 11380093, at *2 (N.D. Ohio Jan. 14, 2008) (explaining that personnel files "should not be ordered produced except upon a compelling showing of relevance" (internal quotation marks and citation omitted)); *Miller v. Fed. Express Corp.*, 186 F.R.D. 376, 384 (W.D. Tenn. 1999) ("Personnel records, because of the privacy interests involved, should not be ordered produced except upon a compelling showing of relevance."). Those decisions flow directly from

4

the Sixth Circuit's recognition that parties possess "a valid interest in the privacy of nonparty personnel files." *Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999).[1]

The cases that the City cites do not suggest a lower standard, nor do they support a blanket order compelling the production of personnel files for every person noticed for a deposition. Instead, most involve situations where the information in *certain* employee personnel files was essential to proving an element of the plaintiff's claim for workplace discrimination. In *Parrish v. Ford Motor Co.*, for example, the plaintiff brought a claim for age discrimination. 953 F.2d 1384 (unpublished case table), 1992 WL 20305, at *1 (6th Cir. Feb. 7, 1992) (unpublished slip opinion). Given the underlying claim, the Sixth Circuit concluded that "access to the [sought] personnel files of . . . eight individuals promoted during the limitations period, in order to discover at a minimum their ages and qualifications, [was] clearly necessary for [plaintiff] to establish a prima facie case of discrimination within the limitations period." *Id.* at *6.

Similarly, in *Jones v. Johnson*, a sex discrimination case, the Sixth Circuit concluded that the district court abused its discretion by denying access to personnel files for potential comparators where the only disputed element of the prima facie case was whether a valid comparator existed. 801 F. App'x 338, 346–349 (6th Cir. 2020). And in *Davis v. Runyon*, a race and gender discrimination case, the Sixth Circuit held that the district court erred in granting summary judgment for failure to show a valid comparator where the district court had also denied a discovery extension to permit the requested production of seventeen employee personnel files that "may have enabled [plaintiff] to establish that he was treated less favorably than similarly situated employees." 142 F.3d 433 (unpublished case table), 1998 WL 96558, at *1, *3 (6th Cir.

---

[1] Given the clear statement from the Sixth Circuit and the many cases cited above, it is shocking that the City would claim that "there is no public policy prohibiting or restricting discovery of personnel files." Dkt. 5823 at 9.

Feb. 23, 1998) (unpublished slip opinion). Most of the cited district court cases are the same. *See, e.g.*, *Buckosh v. Bonded Filter Co.,* 2021 WL 6071178, at *1–2 (N.D. Ohio Dec. 23, 2021) ("sex-based employment discrimination" case); *Lisy v. Cuyahoga Cnty.*, 2021 WL 2665748, at *2 n.1 (N.D. Ohio June 29, 2021) (employment discrimination and retaliation case); *Grays v. Mayorkas*, 2022 WL 386020, at *5–6 (E.D. Mich. Feb. 8, 2022) (granting "*limited discovery* to the sought personnel files" of individuals who plaintiff "alleged . . . in some way participated in harassment, discrimination, or retaliation against him" (emphasis added)).

In other words, in each of those cases, the plaintiff demonstrated a compelling need for *certain* personnel files for *certain* employees because the files were central to the claims and allegations in the case. The Special Master failed to conduct that analysis here. Instead, he entered an order compelling the production of personnel files—even those wholly unrelated to opioids for every single deponent without any demonstration of baseline relevance—let alone a showing of a compelling need. *See Grays*, 2022 WL 386020, at *5 n.3 (prohibiting any personnel file information discovery as to another employee because plaintiff failed to show that individual "took any meaningful part in the alleged mistreatment," and "[w]ithout a more *compelling showing* of relevance," the court concluded the information wasn't discoverable (emphasis added)).

### III.  THE CITY HAS NOT SHOWN ANY RELEVANCE FOR THE PERSONNEL FILES OF THE NOTICED DEPONENTS, LET ALONE MADE A "COMPELLING SHOWING" OF RELEVANCE FOR ALL DEPONENTS.

Even under an ordinary relevance inquiry, the City falls far short of meeting its burden. For the witnesses identified during the discovery conference, the City argues that each has a "connection" to the issues in the case. But the question is whether those witnesses' *files* have any relevance to the case; not whether those witnesses may have relevant knowledge. The City ignores that requirement, claiming that relevance flows simply from the fact that the selected deponents

6

are or were Defendants' employees: "[E]ach of the deponents is sufficiently central to Defendants' practices, and Plaintiff's claims, that he or she has been selected not merely as a document custodian, but as a deponent." Dkt. No. 5823 at 9. That's not what the law requires. If that were the standard, then litigants would be entitled to personnel files unrelated to the issues in the case for every deponent in every litigation.

The City has not made any showing of relevance with respect to each witness's personnel files. None of the identified deponents held jobs focused on opioids. Contrary to the City's suggestion, none of the identified deponents was involved in "the promotion, prescribing, and/or dispensing of opioids." *See id.* And as the Special Master observed, none "had their compensation based on . . . the amount of opioids that were dispensed" by any pharmacy or sold by any manufacturer. Dkt. No. 5807-1 at 14:6–16. As OptumRx previously explained, it has searched the personnel file of the first noticed deponent and has not identified *anything* bearing on the issues of this case. Dkt No. 5812 at 11. If the PBM Defendants must produce the personnel files without conducting a relevance review—as Special Master Cohen ordered—then production of the personnel files can be used only to harass the witness.

Moreover, even if the Court compels production of the personnel files for witnesses discussed to date, there is no basis for the Special Master's sweeping, limitless order that all files—even those unrelated to opioids—must be produced for all future witnesses. The City relies on cases that prove that relevance must be evaluated in light of the specific individual files sought. *See, e.g.*, *Parrish*, 1992 WL 20305, at *6; *Grays*, 2022 WL 386020, at *5–6. Holding otherwise, and compelling wholesale production of personnel files without a showing of relevance, would violate the Federal Rules and the law of this Circuit.

7

Finally, the cases cited by the City overwhelmingly recognize that compelling production of personnel files implicates the privacy interests of both the employee and the employer. *Knoll*, 176 F.3d at 365; *Grays*, 2022 WL 386020, at *5. Given those privacy interests, this Court has authority to institute protective measures designed to reduce the risk of inadvertent disclosure unless a party can establish that such measures "would substantially harm his ability to collect the evidence necessary for prosecution of his case." *Knoll*, 176 F.3d at 365. The City does not even attempt to meet that standard, and the Court should, at a minimum, permit Defendants to designate all personnel files with the highest level of confidentiality and order that they not be placed in the repository.

## CONCLUSION

The Special Master's order should be overruled.

Dated: December 20, 2024

 /s/ Brian D. Boone
Brian D. Boone
Emily McGowan
Brandon C.E. Springer
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
Tel: (704) 444-1000
brian.boone@alston.com
emily.mcgowan@alston.com
brandon.springer@alston.com

William H. Jordan
D. Andrew Hatchett
**ALSTON & BIRD LLP**
1201 West Peachtree Street NW, Suite 4900
Atlanta, GA 30309
Tel.: (404) 881-7000
bill.jordan@alston.com
andrew.hatchett@alston.com

 /s/ Jonathan G. Cooper
Jonathan G. Cooper
Michael J. Lyle
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
Tel: (202) 538-8000
jonathancooper@quinnemanuel.com
mikelyle@quinnemanuel.com

*Attorneys for Express Scripts, Inc., and ESI Mail Pharmacy Service, Inc.*

8

*Attorneys for Defendants OptumRx, Inc., OptumInsight, Inc., and OptumInsight Life Sciences, Inc.*

*Attorneys for Non-Parties UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.*