## REPLY MEMORANDUM IN SUPPORT

**I.      INTRODUCTION**

At the outset, it appears that MDL Plaintiffs and Settling Distributors (collectively, "**Opponents**") do not oppose the opt outs by 59 of the 65 opt outs listed in Exhibit "A" to the Motion for Leave. Although MDL Plaintiffs' "Final Opt Out Report" (ECF 5828) indicated that they "deem these 59 opt-out requests as timely", they added the vague phrase "subject to Court approval" in relation to a further statement that "[s]ome of these entities may not be class members and/or have released their claims in prior settlements." *Id*. at 2.[1] As a result, and because no substantive basis is provided for not finding "excusable neglect" as to the 59 opt outs,[2] an Order of this Court is required to approve these opt-outs without reservation or objection. Since the only bases for MDL Plaintiffs' "reservation of rights" do not relate to the propriety of the opt out decision,[3] this Court should approve the 59 opt outs to make clear that these 59 opt outs are not bound by the TPP settlement class.

---

[1] In a footnote, MDL Plaintiffs further wrote, "[t]he determination of whether these opt-out requests are properly excluded based on timeliness and/or other grounds is a matter for Court determination." ECF 5828-1 at 1, n.1. Similarly, Settling Distributors state "it is false that Settling Distributors do not object to the 62 opt-outs. Settling Distributors and Interim Settlement Class Counsel have only agreed that they would not challenge those 62 opt-outs on the basis of timeliness, but they reserved all other rights with respect to these opt-outs." ECF 5830 at 5.

[2] Neither MDL Plaintiffs or Settling Distributors have ever provided any reason for why they "agreed to deem" the late opt out filed by Plumbers Local 690 "a timely and complete opt out despite the typographical error" in their November 19, 2024 Supplemental Opt Out Report (ECF 5775) but refuse to do the same as to the 59 other Opt Outs which employed the exact same "typographical error". A typo is a typo, not an opportunity to seize some strategic advantage. To the extent Opponents oppose Court approval as to any of the 59 opt outs, movants respectfully seek the opportunity to take appropriate discovery and to present evidence at a hearing.

[3] Since MDL Plaintiffs fail to develop their arguments that "[s]ome", but not all, of the 59 opt-outs should not be approved this Court, this Court is not required to rule on such undeveloped objection(s) as to any one of the 59 opt-outs. *E.g., In re Nat'l Prescription Opiate Litig.*, 2019 U.S. Dist. LEXIS 149641 * 28 (N.D.Ohio Sept. 3, 2019) ("The Court deems these []

The argument that "some" of the 59 opt-outs "may not be class members and/or may have released their claims in prior settlements" is not an appropriate objection. First, if *any* of the opt-outs are *not class members*, this Court lacks jurisdiction over them and they have no obligation to opt out of the TPP settlement class. Second, if they *are class members*, but somehow released their claims through prior settlements, then the supposed release excludes them from the settlement class.[4] Again, the Court lacks jurisdiction and there is nothing to opt out of.  The Court also lacks jurisdiction over the nature and scope of any prior release as the releases issued in the "Wave 1" distributor settlements with the states are governed by individual state settlement agreements over which the state courts have exclusive jurisdiction.  *See, e.g.*, https://nationalopioidsettlement.com/distributor-janssen-settlement-documents/[5]; https://www.paopioidtrust.org/ (addressing Pennsylvania Wave I settlements).

Accordingly, the Motion for Leave is properly focused only on the 3 admittedly late opt out requests filed by OPCMIA 526, IBEW 126 and Big Spring School District. All 3 Late TPP Opt Outs have demonstrated their excusable neglect for requesting the right to opt out beyond the Court-imposed (and extended) deadlines. Their late opt outs should be approved.

---

undeveloped arguments waived"); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

[4] *See, e.g.*, Settlement Agreement, Section III, Class Definition (ECF 5614-2 at 10) (defining Settlement Class and excluding "all [] entities whose claims have been released by a prior settlement"); *see also*, Order Granting Preliminary Approval, ECF 5616, at 3 (same).

[5] Final Distributor Agreement at pp.35-36 (the Settling Distributors "consent to the jurisdiction of the court in which each Settling State files it Consent Judgment…".. For dispute resolution, "all disputes shall be resolved in [] the court that entered the relevant Consent Judgment…"); *see also*, Exhibit K, Subdivision Settlement Participation Form, at ¶ 6 ("The Governmental Entity submits to the jurisdiction of the court in the Governmental Entity's state where the Consent Judgment is filed for … resolving disputes…".)

## II. SUMMARY OF ARGUMENT

MDL Plaintiffs and Settling Distributors both oppose the Motion for Leave on the following three (3) grounds:

1. The opt out requests are late, *i.e.*, they were submitted after the opt-out deadline;

2. The opt out requests allegedly fail to comply "with the Court-ordered opt-out procedures" (ECF 5831 at 1); and

3. The neglect is "inexcusable" due to the 3 Late Opt Outs' supposed "awareness" and "constructive notice" of the TPP Settlement and opt out deadline by reason of their supposed membership in the DVHCC and representation by undersigned counsel (ECF 5831 at 2, ECF 5830 at 2).

The lateness of the 3 Late Opt Outs is not an issue. It is conceded by movants as it is *the reason* for the Motion for Leave, not reason to deny the request for leave. There would be no need for Court-ordered relief if the requests were timely. The remaining two objections proffered by Opponents are unsupported and unsupportable and should be rejected by the Court.

First, the Late TPP Opt Outs complied with the Court's opt out procedures in every respect, their tardiness notwithstanding. All 3 Late TPP Opt Outs filled out the requisite Opt Out Forms containing all the required information. These forms were exactly the same as the 62 other opt-outs accepted by TPP Claims Administrator. MDL Plaintiffs concede as much in their Final Opt Out Report wherein they list all 3 Late TPP Opt Outs as having provided all "required information", just like the 62 other opt outs. ECF 5828-1 at 1-3.

Settling Distributors argue separately that OPCMIA 526 and IBEW 126 – but not Big Spring -- failed to *email* their Opt Out Forms to the TPP Claims Administrator, and that such failure to email constitutes a failure to comply with Court procedures. ECF 5830 at 3. This is

wrong. Defendants cite no basis for their claim that email is required. That is likely because this Court did not proscribe that the Opt Out Forms must be sent to the Notice Administrator **by email**. Quite to the contrary, the requirement is that the Forms **be mailed** to a post office box in Milwaukee, Wisconsin.[6] In this case, the Claims Administrator *received* all 3 Opt Out Forms *by mail*, as required. MDL Plaintiffs admit the same in their filings. ECF 5831 at 2 ("The Notice Administrator received the mailed forms on December 6, 2024."); ECF 5828-1 at 1-3 (reflecting Notice Administrator's receipt of 3 TPP Opt Out Forms via U.S. Mail on December 6, 2024). Accordingly, there is no failure to comply with Court procedures, as argued.

Second, Opponents argue that the neglect is "inexcusable". They raise concerns, discussed below. However, nowhere to do they argue – let alone prove – that any of the 3 Late TPP Opt Outs actually received notice of the class action settlement from the MDL, as required. This is a threshold problem for Opponents. In their Motion for Leave, Movant state that they "did not receive or read any postcard or email from the TPP Settlement Claims Administrator." ECF 5824-1 at 4. This is unrebutted. Instead, Opponents seek to excuse their lack of notice by blaming movants' counsel for somehow failing to act. This argument should be rejected as a matter of fact and law. As set forth in the Declaration of Donald E. Haviland, Jr. Esquire ("**Haviland Decl**.")(**Exhibit "A"** hereto) counsel did not represent the 3 Late Opt Outs until *after* the opt out deadline passed. Haviland Decl. at ¶ 4.

---

[6] *See* Preliminary Approval Order, ECF 5616, at 7-8 (adopting the "procedure for Opt-Outs set forth in Section V.G. of the Settlement Agreement); Settlement Agreement, ECF 5614-2, Section V.G.1, at 19 ("Any entity within the Class that wishes to opt out of the Class and Settlement must submit a written and signed statement entitled, 'Opt-Out Form' to the Notice and Claims Administrator and email it to Settling Distributors and Class Counsel *as set forth in the Notice*.") The Notice dictates that "[s]igned exclusion requests must be received … at the following address…: P.O. Box. 173001, Milwaukee, WI 53217." TPP Long form Notice available at https://tppopioidsettlement.com/long-form-noticefaqs/ Nowhere does this Court require *email*.

## III.     ARGUMENT

The parties agree that this district court has discretion under Federal Rule of Civil Procedure 6(b) to allow a class member to opt out of a proposed settlement after the deadline to do so. Fed. R. Civ. P. 6(b)(1)(B) ("the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect"); *see also, In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209, 356 U.S. App. D.C. 70 (D.C. Cir. 2003) (cited by movants); Settling Distributors' Brief, ECF 5830 at 4-5 (citing cases).[7] The question is whether "the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). "In cases that have not been heard on the merits, the determination of whether neglect is excusable takes into account the length and reasons for the delay, the impact on the case and judicial proceedings, and whether the movant requesting relief has acted in good faith." *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2006).

The Supreme Court has held the factors relevant to this question include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of

---

[7] While the Settling Distributors concede this Court has discretion, they ask this Court to exercise its discretion to *deny* the late opt outs. ECF 5830 at 4. Their rationale is that "other courts faced with similar failures to comply with the required deadlines and procedures for opting out" have denied late opt out requests. *Id*. These "other courts" are just two: courts in the *Volkswagen* and asbestos cases. In contrast to this case, in *Volkswagen*, the late opt request was made by a *litigating* plaintiff who was *fully aware* of the opt out deadline but failed to mail her request in time. "The court held [she] had actual notice of the correct procedure to exclude herself from the class" but failed to do so. *In re Volkswagen "Clean Diesel" Mktg. Sales Pracs. & Prods. Liab. Litig.*, 895 F.3d 597, 618 (9th Cir. 2018). Similarly, in the *Georgine* asbestos case, unlike here, the district court issued an injunction and a second opt out requirement as to the thousands of litigating asbestos claimants. *See generally Georgine v. Amchem Prods.*, 1995 U.S. Dist. LEXIS 13802 (E.D.Pa. Sept. 19, 1995). Here, none of the 3 Late Opt Outs sued, they are not litigating, and they had no notice from the MDL about the settlement prior to the opt-out deadline.

the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).

There are two threshold steps to the "excusable neglect" determination by this Court. First, there must be neglect. Second, assuming neglect, the Court must then decide if such neglect is excusable under the circumstances. The relevant circumstances include: (1) whether the movants had notice, (2) the length of the delay, (3) the reasons for the delay, (4) whether the delay was within the reasonable control of the movants, (5) the impact of the delay on the case and judicial proceedings, and (6) whether the movants acted in good faith. *Pioneer*, 507 U.S. at 395; *Burrell*, 343 F.3d at 832. These factors weigh in favor of finding "excusable neglect."

## A.     The Actions of the 3 Late Opt Outs Were <u>Not</u> Neglectful.

The actions taken by the 3 Late Opt Outs were not neglectful in any respect, outside of the fact their opt outs were sent late. They missed the opt out deadline because they received no prior notice from the MDL about such deadline. Opponents do not argue otherwise. The fact that an opt out request is late does not itself constitute "neglect". To the contrary, the issue of neglect is informed by the movant's good faith in acting, once they were aware of their late circumstance. As discussed, the 3 Late Opt Outs each acted swiftly, and in good faith, as soon as they learned of the MDL class action settlement. For this reason, any neglect should be deemed excusable under the circumstances.

## B.     Any "Neglect" by the 3 Late TPP Opt Outs Should Be Deemed "Excusable"

The determination of "what sorts of neglect will be considered 'excusable' …. is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395; *see also, Pate v. Huntingdon Nat'l Bank*, 2013 U.S. Dist. LEXIS 195879 *4 (Jan. 11. 2013 N.D. Ohio) ("it is clear that 'excusable neglect' under Rule

6(b) is a somewhat elastic concept and is not strictly limited to omissions caused beyond the

control of the movant.") (citing *Pioneer*). Opponents do not counter these legal precepts. Instead,

Opponents provide this Court with inapposite authority.[8]

### 1. Movants did not receive notice of the MDL class action settlement.

If the forum State wishes to bind an absent class member concerning a claim for money

damages or similar relief at law, it must provide minimal procedural due process protection. The

member must receive notice plus an opportunity to be heard and participate in the litigation,

whether in person or through counsel, or to opt out. The notice must be the best practicable,

"reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

of the action and afford them an opportunity to present their objections." *Mullane v. Central*

*Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652 (1950); *cf. Eisen v.*

*Carlisle & Jacquelin,* 417 U.S. 156, 174-175, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974).

This Court preliminarily approved the notice plan proposed by the settling parties. ECF

5616 at 5. The Court directed the parties to file proof of distribution of notice within 14 days of

such dissemination.  *Id*. On October 1, 2024, Interim Settlement Class Counsel filed a

Declaration of Eric J. Miller of A.B. Data Ltd.  ECF 5661. Mr. Miller attested that A.B. Data

---

[8] MDL Plaintiffs cite authority for the unremarkable proposition that "[t]he opt-out decision is an inherently individual one." ECF 5831 (citations omitted). The unrebutted record demonstrates the opt out decision was made, individually, by each of the 3 Late Opt Outs. The Opt Out Forms were signed by the 3 TPPs individually, "[u]nder penalty of perjury" by a "legally authorized representative" for the TPP.  *See* ECF 5824-6 (Big Spring Opt Out Form, wet-signed by Solicitor Thomas W. King III, Esquire); *see also*, **Exhibit "B"** hereto (presenting the similar Opt Out Forms signed by IBEW 126 and OPCMIA 526). The veiled suggestion that this was some sort of impermissible "group opt-out effort" is erroneous and unsupported.

Settling Distributors argue, erroneously, that the 3 Late Opt Outs seek to opt out and object. ECF 5830 at 6. Movants only seek to opt out. If their opt outs are rejected, they seek leave to object on grounds related to their belated opt out decisions. It is Defendants who seek to "do both" by forcing Movants' inclusion in the settlement class and denying them the right to object on any ground.

mailed a "postcard notice via USPS First-Class Mail to 42,005 entities in A.B. Data's TPP

Database.  ECF 5662-1 at ¶ 4. "In addition, A.B. Data sent 1,041 emails to TPPs and their

representatives where email addresses were available and know to be deliverable." *Id*. at ¶ 5. The

notice plan also included "banner ads" on three websites "that reach insurance agents/brokers

and related TPP professionals", a settlement website and toll-free helpline. *Id*. at ¶¶ 6-9.

Movants state they did not receive notice from the MDL at any time. ECF 5824-1 at 4;

*see also*, Haviland Decl. at ¶ 7. Since A.B. Data provided no lists of notice recipients, there is no

contrary evidence in the record. Opponents' claim that "some" TPP opt outs "may not be Class

members".  In so arguing, Opponents raise a disputed issue of fact as to whether A.B. Data sent

any post card or email notice to any of the 3 Late Opt Outs. This is especially true as to Big

Spring School District. Opponents claim that schools released their claims in prior settlements;

therefore, schools are not TPP class members under the class definition. Thus, it is highly

doubtful A.B. Data sent *any* mailed notice to *any* schools, including Big Spring. Whether schools

are included within the TPP Settlement Class definition must be finally resolved by this Court. If

they are "in", they are entitled to first class mail notice of the TPP settlement. The absence of

such notice undermines the veracity of the final class judgment due to the lack of due process.[9]

Opponents state they "believe that the Three Late Opt-Outs had, at a minimum,

constructive notice."  ECF 5830 at 2, n.1 (*citing In re Milk Antitrust Litig*., 2012 WL 5050865, at

---

[9] In a class action settlement, a district court must pay "undiluted, even heightened, attention" to the class definition to protect absentees. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also*, *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). The TPP settlement class approved by this Court does not explicitly include school districts. Instead, it defines the settlement class as a class of TPPs as "plans for self-insured local governmental entities that have not settled claims in MDL No. 2804." Order at ECF 5616, p.3. The Court-approved settlement class then confusingly excludes "all state and local governmental entities whose claims have been released by a prior settlement with the Settling Distributors." *Id*.

*2 (E.D. Tenn. June 6, 2012)). None of the Opponents argue the *actual* notice was ever received. Instead, Settling Distributors argue "constructive notice" can be sufficient. However, in the cited *Milk* case, unlike here, the movant received mail notice, albeit late due to a wrong address. Here, there is no evidence mail notice was ever sent. As a result, because the addresses of all 3 Late Opt Out could be "ascertained by reasonable effort", reliance on the internet-based "publication" notice alone is insufficient to deprive the 3 Late Opt Outs of their due process rights. *E.g., Milk*, 2012, U.S. Dist. LEXIS 79272 at *15 (*citing In re Prudential Inc. Co. of Am. Sales Practices*, 177 F.R.D. 216, 232 (D.N.J. 1997)).

Opponents seek to blame undersigned counsel for *their* failure to give notice. They argue the 3 "offer no explanation as to why Moving Counsel did not apprise them of the deadline or why that failure to do so is inexcusable." ECF 5830 at 2. This is a red herring. Contrary to the *ipse dixit* claim, undersigned counsel were not retained to represent the 3 Late Opt Outs until *after* the initial opt out deadline had passed. *See* Haviland Decl. at ¶ 4. As a result, the claim that "Moving Counsel had ample reason to be aware of these issues" does not undermine the *bona fides* of the excusable neglect of the 3 Late Opt Outs. ECF 5830 at 3.

"The Court in *Pioneer* purposefully fashioned a flexible rule which, by its nature, counsels against the imposition of a *per se* rule on attorney neglect." *Vitamins,* 327 F.3d at 1209. As the *Pioneer* Court admonished, "[a]lthough inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' … is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer*, 507 U.S. at 392.

Certainly, the circumstances by which the 3 Late Opt Outs came to seek leave to file late opt outs was "beyond the control of the movant." Undersigned counsel did not even know of the

desire of the 3 Late Opt Outs to opt out late until after the opt out deadline had passed. Haviland
Decl. at ¶¶ 4-5. Contrary to Settling Distributors' unsupported claim, the 2 TPPs (OPCMIA 526
and IBEW 126) did not receive any notice from the DVHCC. Haviland Decl. at ¶ 7. Big Spring
was notified but had no reason to believe they were included in the settlement class until they
consulted with their new Solicitor, Thomas King. Haviland Decl. at ¶¶ 11-12. All 3 took
appropriate steps to make the opt out decision and communicate the same to undersigned
counsel, then submit their opt outs and finally directing counsel to file the Motion for Leave.
Haviland Decl. at ¶¶ 10-14. Under the applicable flexible rule, the circumstances of this matter
warrant a finding of excusable neglect.

### 2. The length of delay from actual receipt of notice and notifying Opponents was minimal.

Opponents do not argue that the length of delay was unreasonable. That is likely because
undersigned counsel for Movants timely alerted them as to the issues of lack of notice and late
opt outs within 15 days of the opt out deadline. *See* ECF 5824-3 (email alerting MDL Plaintiffs).
Indeed, undersigned counsel sent MDL Plaintiffs the OPCMIA 526 and IBEW 126 Opt Out
Forms in direct response to their request for the same.  *Id*. at 6 (and attachments). MDL Plaintiffs
stated that they would put these opt outs in their "December 2 report". *Id*. There was no such
report. Instead, MDL Plaintiffs undertook a lengthy meet and confer process that extended well
into December.  *See* ECF 5824-3, 5824-4, 5824-5, 5824-7, 5824-8. Fifteen days is not an
unreasonable length of time, especially given that no deadlines were otherwise impacted.

### 3. The reasons for the delay in seeking relief are reasonable.

The reasons for the delay were explained in the same conversations with MDL Plaintiffs
prior to Thanksgiving. Movants' counsel asked, "let us know as soon as you can if we need to do
anything further to ensure these opt outs are honored. … If we need to file with the Court, we

will." ECF 5824-3 at 5-6. On December 2, 2024, Movants' counsel pressed: "I haven't heard from you as to the request for consent." *Id*. at 1. It was not until 4:00 p.m. est on December 2 that MDL Plaintiffs stated, "we do not believe they should be considered as having opted out", and asked, "[f]or the payors that you claim did not receive class notice please provide the names of those entities and we will check with the claims administrator."  ECF 5824-4 at 1.  At no point did MDL Plaintiffs ever respond as to their "check with the claims administrator" stating whether notice was ever sent. More than a week passed while movants awaited word as to whether MDL Plaintiffs would oppose a Motion for Leave. In the interim, on December 4, 2024, Movants mailed their Opt Out Forms to the Claims Administrator, as required.  ECF 5824-7. Movants' counsel emailed the Claims Administrator, copying all counsel, and asking that a copy of the letter be shared with this Court, which it was. ECF 5824-8. Movants acted promptly to ensure that the Opt Out Forms were disseminated, and reasonably awaited response to their meet and confer as to whether the settling parties would oppose a late opt out request.

**4.  The delay was not within the reasonable control of the Movants.**

As set forth above, the delay in filing the Motion for Leave on December 16, 2024 was occasioned by an extensive meet and confer about the opt out issues. Nothing more. That meet and confer process at least led to the concession that 59 opt outs were timely. Movants prudently waited until it was clear Opponents would oppose their opt out request before filing their Motion.

**5.  The impact of the delay on the case and judicial proceedings is minimal.**

Opponents do not argue that the delay has materially impacted this case, nor could they do so in good faith in light of the course of proceedings. By the time Opponents learned of the 3 Late Opt Outs in November, no deadline had passed. MDL Plaintiffs' Reply in Support of their settlement had not been filed. Defendants' deadline to "walk away" had not passed. This Court

11

had not held a hearing on final approval. The case was not delayed in any way, and the impact on the proceedings has been minimal. Opponents do not argue otherwise.

### 6.  The movants acted in good faith.

As set forth in the Motion for Leave, and this Reply, Movants have acted in good faith since learning about the MDL Class Settlement. Opponents do not argue a lack of good faith.

As set forth in the moving papers, and the Haviland Declaration, Movants immediately took appropriate steps to determine if they were included within the settlement class definition, and therefore needed to make a decision whether to stay or opt out. They undertook appropriate discussions with relevant stakeholders (including executives, attorneys and Boards) to determine if opting out was a prudent decision. They then retained outside counsel to assist them in exercising their respective opt-out rights. The 3 Late Opt Outs were unable to meet the November 11, 2024 opt out deadline because (1) they did not receive notice of the class action settlement from the MDL, (2) only received notice *after* the initial opt-out deadline had passed, and (3) had to take time-intensive steps to consider, discuss, decide and approve an opt out decision, including convening appropriate (and required) meetings of their respective boards of trustees (in the case of OPCMIA 562 and IBEW 126) and a public school board (in the case of Big Spring). It was simply not possible for all of these actions to be completed by even the extended opt out deadline of November 11, 2024. The opt-out decisions were not delayed; they were taken with all due haste, realizing the deadline had passed. This is good faith. *See* Haviland Decl. at ¶¶ 4-14.

### C.    All 3 Late TPP Opt Outs Acted with Reasonable Diligence

Settling Distributors argue there was a lack of diligence. But such argument is unsupported in and belied by the record.

In their Motion for Leave, the 3 Late Opt Outs state as follows:

[T]hrough no fault of their own, [they] were unable to provide notice of [their opt out decisions] by the November 11, 2024 deadline. The lack of notice was not within [their] reasonable control … as they were unaware of the pending settlements until they learned through alternate means.

[A]s soon as [they] were alerted to the pending settlements, they acted in good faith and with due diligence to ensure that the opt out decision was communicated to the TPP Settlement Claims Administrator and counsel for the parties.

Motion for Leave at ¶¶ 36-27 (ECF 5824). In other words, the 3 Late Opt Outs acted diligently.

As set forth in Haviland Declaration, each of the 3 Late Opt Outs acted with all due haste upon learning about the class action settlement and the deadline to make an opt out decision. The decision to opt out involved decisions by Boards of Trustees of the two health and welfare funds, in consultation with fund counsel. These Boards had fiduciary duties to their respective funds to make decisions in the best interests of the funds. Similarly, the public school board which governs Big Spring School District, whose School Board members were each elected by the public and each have obligations to proceed in accordance with the laws of the Commonwealth of Pennsylvania, had a fiduciary duty to act in the public interest. Each of these decisions by these Boards took time. Each Late Opt Out took only the time needed to make the decision, prior to authorizing counsel for file the Motion for Leave. *See generally*, Haviland Decl. at ___.

**D.      There Is No Prejudice to the Non-Moving Parties.**

The Supreme Court has held that the "danger of prejudice" to the opposing party is a factor relevant to the determination of excusable neglect. *Pioneer,* 507 U.S. at 397. There is no imminent "danger of prejudice" to the Settling Distributors, or any other interested party, by the TPP Opt Outs coming within weeks of the opt out deadline. *See, e.g., Vitamins,* 327 F.3d at 1209 (affirming allowance of late opt out where "length of delay was short and would not impact judicial proceedings"); *Snyder v. Ocwen Local Servicing, LLC*, 2019 U.S.Dist. LEXIS 80926 *

33-35 (allowing 178 late opt out requests because "they were submitted near enough" to the Court's opt out deadline "to make any neglect in their submission excusable"); "); *see also City of Maple Heights v. Netflix, Inc.*, No. 1:20-cv-01872, 2021 U.S. Dist. LEXIS 10163, at *4 (N.D. Ohio Jan. 20, 2021)(finding excusable neglect where remaining deadlines "still months away" and even "a month-and-a-half delay" would have no impact on the litigation); *Century Indem. Co. v. Begley Co.*, 323 F.R.D. 237, 242 (E.D. Ky. 2018) (finding that a two-month delay was "short" and the movant acted "in good faith"); *Mosholder v. Lowe's Home Ctrs., LLC*, No. 5:18-cv-1325, 2020 U.S. Dist. LEXIS 41902, at *4 (N.D. Ohio Mar. 11, 2020) ("there is no indication that this case would have proceeded any differently if the answer had been timely filed").

Curiously absent from Opponents' briefs is any mention of "prejudice." That is because there is no basis to claim prejudice where no deadline had passed by the time the Opponents learned of the 3 Late Opt Outs. In the absence of any showing of prejudice – let alone argument that there was prejudice – this Court should find there is no prejudice in allowing the late opt outs.

## IV.  CONCLUSION

For all these reasons, Movants respectfully request that this Honorable Court Order:

1.  The 59 opt outs subject to MDL Plaintiffs' "reservation of rights" (ECF 5828 at 2) are approved as opt-outs by this Court; and

2.  The 3 Late TPP Opt Outs are approved as opt outs by this Court, the Court finding "excusable neglect" has been shown.

Respectfully submitted,

December 27, 2024

_____

Donald E. Haviland, Jr., Esq
William H. Platt II
**HAVILAND HUGHES**

14

124 S. Maple Way, Suite 220
Ambler, PA 19002
Ph:   (215) 609-4661
Fax: (215) 392-4400
*haviland@havilandhughes.com*
*platt@havilandhughes.com*

And

/s/Angela M. Lavin
Angela M. Lavin (0069604)
Wegman Hessler Valore
6055 Rockside Woods Blvd., #200
Cleveland, Ohio 44131
Ph: 216-642-3342
Fax: 216-642-8826
amlavin@wegmanlaw.com

*Attorneys for certain members of the TPP
Settlement Class*

15