UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) ) Case No. 1:17-md-2804 ) |
| THIS DOCUMENT RELATES TO: | ) Judge Dan Aaron Polster ) |
| *ALL THIRD PARTY PAYOR ACTIONS* | ) ) |

PLAINTIFFS' SUBMISSION IN SUPPORT OF PROPOSED AWARD AND
ALLOCATION OF FEES AND COSTS IN THIRD PARTY PAYORS/ DISTRIBUTORS
SETTLEMENT

Although Co-Lead Settlement Class Counsel do not believe the United Healthcare Motion for Leave to File a Reply Memorandum [Doc. # 5853 et seq.], filed at day's end the Friday before a Monday hearing, is timely or proper, nor should any of the relief it requests be granted, we respectfully file this submission to respond and address the fees-related issues raised, and to provide the Court with details of the fee allocation proposal pursuant to Rule 23(e)(2)(C)(3)(iii) and 23(e)(3).

As set forth in earlier filings in support of the proposed $300 million TPP/Distributors class settlement, Co-Lead Settlement Class Counsel respectfully request an award of attorneys' fees under Rule 23(h) of 20% of the $300 million settlement: $60 million. As described in those filings, that requested fee will be reduced by payment of this Court's 7.5% common benefit assessment ($22.5 million) into the Common Benefit Fund, for allocation by the Fee Panel. The net fee of $37.5 million will be allocated among (1) Counsel representing and working for the benefit of the class and/or the litigating TPP Plaintiffs (including bellwethers); and (2) Counsel representing individual class member TPPs, with any disputes resolved by internal appeal to the Special Master.

3162743.3

We respectfully submit this clarification of, and additional detail on, the mathematics, methodology, and equitable purpose of the proposed allocation described below in support of its Court approval.

I. **THE REQUESTED AWARD IS FAIR, REASONABLE, AND PROPOTIONAL.**

As Judge Pearson of this Court recently noted in her approval of the class settlement in *In re East Palestine Train Derailment*, Case No. 4:23-cv-0242, 2024 WL 4370003 (N.D. Ohio Sept. 27, 2024), courts in the Sixth Circuit may use the percentage of recovery method of awarding class fees to incentivize counsel to take on challenging cases like this one, and award a reasonable percentage fee by taking into account the nature, quality, and extent of the work done; the results obtained; whether the services were undertaken on a contingent basis; the particular circumstances and difficulties of the case; "society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others"; and by comparing how the requested fee lines up with awards in other cases. *Id.* at ** 5, 6-9, citing cases, including the Sixth Circuit's "*Ramey*" factors; (*see Ramey v. Cincinnati Enquirer*, 508 F. 2d 1188, 1194-97 (6th Cir. 1974)), and noting the court's "wide discretion in assessing their weight and applicability." *Id.* at *5, citing *Granada Invests. Inc. v. DWG Corp.*, 962 F. 3d 1203, 1205-06 (6th Cir. 1992).

In the *East Palestine* settlement, which essentially resolved the entire litigation 18 months after the derailment itself, Judge Pearson awarded class counsel the requested 27% fee of a $600 million settlement, noting a range of percentage awards, in the Sixth Circuit and elsewhere, of 20% to 50% of the fund. Here, the fee application is at the low end of this range, to compensate counsel (class counsel and others, as described below) who have achieved 100% settlement participation by Plaintiffs in all 114 of the pending TPP MDL cases against one of three major Defendant groups, in litigation that has been ongoing in this MDL for seven years. We respectfully submit that 20% of the $300 million settlement fund is a fair and reasonable percentage award, based on

the Court's intimate, indeed unique, familiarity with the challenges and complexities of Opioids litigation in general, and the TPP claims in particular.

## II.     ALLOCATION OF THE REQUESTED FEE

Out of the $60 million fee award, 7.5% of the total settlement of $300 million, or $22.5 million, will go to the common benefit fund, pursuant to this Court's earlier common benefit Orders, for allocation by the Fee Panel.  To be clear, while $22.5 million is calculated as 7.5% of the total settlement amount, that $22.5 million does not come off the top of the $300 million.  Pursuant to this Court's earlier common benefit Orders, it is deducted from the attorneys' fee portion of the settlement.

We respectfully request authorization, in line with common practice, for the Co-Lead Settlement Class Counsel to allocate the remaining amount ($37.5 million) among the firms representing and litigating on behalf of the TPPs, whose efforts brought about this settlement, with any appeals to such allocation going to Special Master Cohen, with further detail as to the methodology we propose with respect to individual TPP counsel set forth below.  As noted in *East Palestine* and other cases in the Sixth Circuit and elsewhere, *see Bowling v. Pfizer*, 102 F.3d 777, 781 (6th Cir 1996); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 515, 533 n.15 (3d Cir. 2004)), it is accepted practice to authorize co-lead class counsel to allocate fees, because such counsel "who are most familiar with the work done by each firm and each firm's overall contribution to the litigation are best suited to a portion these fees among the firms involved." *East Palestine*, 2024 WL 437003 at *13 ( citing cases).  As Judge Zouhary of this Court ordered in MDL 2196, in *In re Polyurethane Foam Antitrust Litig.*, 2015 WL 1639269 at *8, in connection with a 30% award from an approximately $148 million settlement, "This Court grants Co-Lead Counsel authority to distribute the fees in a manner that, in the judgment of Co-Lead Counsel, fairly compensates each firm for its contribution to the prosecution of Plaintiff's claims".

3

While the Co-Lead Settlement Class Counsel are thus entrusted with internal fees allocation, Rule 23(e)(2)(D) directs courts to consider whether the settlement's mechanisms—including fee structures—serve to treat "class members equitably relative to each other."  Rule 23(e)(2)(C)(iii) lists "the terms of any proposed award of attorney's fees, including timing of payment" for consideration as well. The Advisory Committee Notes to these sections advise examination of attorney fee provisions for fairness and proportionality.  Here, as to timing, fee distribution would take place upon settlement finality. As to proportionality, whether the fees are proportional to what is actually delivered to the class, this is a non-reversionary settlement: the entire net settlement fund will be distributed to class member claimants.  In compliance with contemporary practice, when the claims administration process is completed,  Co-Lead Class Counsel will file a final report and accounting to this Court.

To break down the allocation of the requested fee, and articulate its Rule 23(e) rationale:

- We propose the following allocation of the requested 20% fee.  From the $60 million (20% of $300 million), 7.5% of the entire settlement—7.5% of $300 million—or $22.5 million—is taken off the top as a common benefit assessment under this Court's prior Orders.  The Fee Panel would allocate this amount, with the process under Court supervision.
- The fee remaining after the common benefit assessment would be $37.5 million.
- Of that $37.5 million amount, 40%, or $15 million, would be allocated to counsel with existing private TPP fee agreements.  This 60/40 allocation is similar to the fee allocation model used in the previous national Opioids settlements with which this Court is familiar, and serves a similar function: it enables the substantial percentage of TPP class members represented by individual counsel to participate

in the settlement, free of the concerns that due to their contingent fee agreements they will net less than unrepresented class members, or their counsel will go uncompensated. This approach was key to ensuring sufficient participation to enable the success of these "Global" settlements, and is just as important here.

- The remaining $25.5 million would be allocated by Co-Lead Settlement Class Counsel not only to class counsel, but to counsel doing work for actively litigating TPPs, such as TPP bellwether counsel and those working on the TPP bellwether briefing, case management and discovery projects, on settlement, and on settlement implementation and administration. Any challenge to this allocation would be resolved by the Special Master.

The allocation of 40% of the $37.5 million net settlement fund is important to address precisely the issues noted by the Advisory Committee. It is a hallmark of opioids litigation that, unlike in some class actions, a significant portion of the TPPs included as class members in this settlement are individually represented for purposes of litigation and/or claims assistance. The goal of the allocation outlined above is to maximize participation by treating both individually represented and unrepresented class members equitably, relative to each other, by enabling them all to receive the same percentage recovery of their allocations under Dr. Rosenthal's methodology, by utilizing the requested $60 million class award as essentially a fund for all class members' fees.

After preliminary approval and near the close of the extended opt-out period, an agreement negotiated through the settlement mediator was reached, taking a cue from the success of the Global settlements, and based on a similar level of individual representation of TPPs, that provides for the above-described allocation of 40% of the court-awarded fee, net of the common benefit

assessment, to be paid to counsel in recognition of these individual fee agreements, such that all class members would be able to receive the same net percentage recoveries on their claims, regardless of individual representation.

The proposed allocation to address individual TPP counsel contingent fees is thus intended to address and satisfy the Rule 23(e)(2)(D) factor that the settlement "treats class members equitably relative to each other" by ensuring that individually represented class members are not double-billed.

As with the 60/40 fee fund split in the Global settlements, this was negotiated with counsel who claim to represent the vast majority of individually represented TPPs, but it isn't exclusive. As in the Global, it is an alternative to charging the client, and it does not fully pay all contingent fees (because of the deduction of the common benefit assessment off the top).  It is also simpler (for example, there are no "backstops").  As to the Common Benefit allocation and the "class" fee fund, which each provide compensation for TPP-related common benefit work, we expect actively litigating counsel, such as class counsel, TPP settlement counsel, and TPP bellwether counsel, to be paid first from the "class" portion of the fee.  In terms of the Co-Lead Settlement Class Counsel's allocation to specific counsel, the guardrail in that process is an internal appeal to the Special Master.  As this Court is well aware, the common benefit allocation process also ensures recognition of common benefit work, which would now include TPP common benefit work and contributions, while guarding against "double-dipping."

In addition to the above fees and allocation requests, we respectfully request $750,000 in costs, as described in our submissions to the Court; and $10,000 in service awards to each of the eight settlement class representatives, which are in line with recent service awards in this circuit. *See East Palestine*, 2024 WL 4370003 at *14.

### III. CONCLUSION

We respectfully request the Court's approval of the foregoing fees and costs award and allocation proposals.

Dated: January 13, 2025

Respectfully submitted,

*/s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser
Eric B. Fastiff
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
efastiff@lchb.com

*Interim Settlement Class Counsel; Counsel for Pioneer Telephone Cooperative, Inc. Employee Benefits Plan, and American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan*

*/s/ Paul J. Geller*
Paul J. Geller
Mark J. Dearman
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: (561) 750 3000
pgeller@rgrdlaw.com
mdearman@rgrdlaw.com

*Interim Settlement Class Counsel; Counsel for Cleveland Bakers and Teamsters Health and Welfare Fund, and Pipe Fitters Local Union No. 120 Insurance Fund*

*/s/ James R. Dugan, II*
James R. Dugan, II
**THE DUGAN LAW FIRM, PC**
One Canal Place, Suite 1000
New Orleans, LA 70130

*Interim Settlement Class Counsel; Third Party Payor PEC Representative; Counsel for United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania, and Sheet Metal Workers Local No. 25 Health and Welfare Fund*

>Jayne Conroy
>**SIMMONS HANLY CONROY**
>112 Madison Avenue, 7th Floor
>New York, NY 10016
>Telephone: (212) 784-6400
>jconroy@simmonsfirm.com
>
>Joseph F. Rice
>**MOTLEY RICE**
>28 Bridgeside Blvd.
>Mt. Pleasant, SC 29464
>Telephone: (843) 216-9000
>jrice@motleyrice.com
>
>Paul T. Farrell, Jr., Esq.
>**FARRELL & FULLER LLC**
>270 Munoz Rivera Ave., Suite 201
>San Juan, PR 00918
>Telephone: (304) 654-8281
>paul@farrelfuller.com
>
>*Plaintiffs' Co-Lead Counsel*
>
>*/s/ Peter Weinberger*
>Peter H. Weinberger (0022076)
>**SPANGENBERG SHIBLEY & LIBER**
>1001 Lakeside Ave. East, Suite 1700
>Cleveland, OH 44114
>Telephone: (216) 696-3232
>pweinberger@spanglaw.com
>
>*Plaintiffs' Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 13, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. Copies will be served upon counsel of record by and may be obtained through, the Court's CM/ECF system.

>*/s/ Elizabeth Cabraser*
>Elizabeth Cabraser

3162743.3