# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**<br><br>This document relates to:<br><br>*City of Rochester v. Purdue Pharma, L.P.,*<br>*No. 19-op-45853 (Track 12)* | **Case No. 1:17-MD-2804**<br><br>**Hon. Dan A. Polster** |

### PLAINTIFF'S RESPONSE TO EXPRESS SCRIPTS' OBJECTION TO DISCOVERY RULING NO. 14, PART 33; MOTION FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)

#### Introduction

In DR 14-33 Special Master Cohen ruled that 14 ESI internal audit documents (which he reviewed *in camera*) are not covered by the attorney-client privilege. Applying previous rulings of this Court and binding Sixth Circuit precedent, Special Master Cohen correctly found that the "primary or predominant purpose" of these documents – which were drafted as part of regular business assessment – was to provide business, not legal, advice and that, accordingly, the documents are not privileged. ESI now objects to this ruling, Doc. #5795 ("Objection"), arguing that the documents should be found privileged because they pertain to regulatory compliance and because company lawyers were on the teams that prepared the documents and/or copied on the emails distributing them. The objection should be overruled in its entirety.

As a legal matter, ESI seeks to substitute the outlier, out-of-circuit "significant purpose test"[1] for the Sixth Circuit's "primary or predominant purpose" test, pursuant to which the proponent of the privilege must prove that the primary/predominant purpose of the withheld

---

[1] *See* Objection at 6–7 (citation omitted).

material was to solicit or render *legal* advice.[2]  ESI ignores, however, that this Court squarely rejected the same attempt (made last year by Kroger), to substitute "significant" purpose as the legal standard and held, instead, that the Sixth Circuit's "primary or predominant purpose" test governs.[3] ESI provides no basis for this Court to depart from its recent prior ruling, much less the "good cause" required for such departure in this MDL.

Factually, ESI argues that, applying the "significant purpose" test, the documents are privileged because the presence of lawyers on the teams and the nature of the documents as compliance audits means that legal advice about regulatory compliance was a significant purpose of these audits.  But the documents that ESI has already produced show that the compliance audits are routine, conducted by a team consisting primarily of non-attorneys, and part of ESI's ordinary business operations.  They are thus not privileged under either the primary or the significant purpose test.

ESI also takes issues with the statement by the Special Master (and, previously, by this Court) – which it characterizes as a "legal" ruling -- that regulatory compliance is usually a business, not a legal, matter.  That statement, however, is a factual assertion about the business purposes of compliance in the ordinary course.  Had ESI demonstrated that *these* compliance audit materials served a different – and primarily legal – purpose, nothing in the Special Master's recognition that this is not typically the case would have precluded the Special Master from finding the documents privileged.  Put another way, it was the Special Master's factual determination that these documents reflect the business purposes of compliance, rather than a blanket principle that compliance never involves legal issues, that led to the ruling that the documents are not privileged.

---

[2] *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (citing *In re Cnty. of Erie*, 473 F.3d 413, 420–21 (2d Cir.2007)).

[3] *See* Order regarding DR 14-32, Doc. #5053 at 7 (citation omitted).

ESI goes on to argue that if the Court rejects its objection, it should certify the question for interlocutory appeal under 28 U.S.C. § 1292(b). But ESI does not and cannot meet the standard for such an extraordinary appeal.

Because the objection and certification request run counter to binding Sixth Circuit precedent and this Court's previous decisions, this Court should overrule the objection, confirm Special Master Cohen's ruling, and deny the certification request.

<u>**Factual Background**</u>

The materials at issue are reports of audits conducted by Express Scripts' Internal Audit and/or Pharmacy Compliance teams. As set forth in ESI's pattern answers to potential customers about internal audits, ESI's "Internal Audit reviews all aspects of [ESI's] operational processes, including clinical and dispensing; and [ESI's] financial and information systems environments."[4] Further, "Internal Audit reports its findings, making recommendations to the appropriate managers, who are responsible for implementing related action plans. With respect to pharmacy compliance audits, ESI acknowledges that "[r]eports of the audit results are prepared by the Pharmacy Compliance Audit group and discussed with management of all pharmacies. Pharmacy management is responsible for taking corrective action for all matters requiring attention that are identit1ed through these audits."[5]

A 2014 Express Scripts PowerPoint presentation sets forth details about ESI's Pharmacy Compliance Organization as well as its audit processes and purposes.[6] The head of this organization/team conducting the compliance audits is Douglas Lang (a non-attorney), and

---

[4] *See* Ex. A at 2.

[5] *Id*. at 3.

[6] *See* Ex. B.

multiple senior managers report to him – all of whom have *business* roles and titles.[7]  According to ESI, the purposes of the pharmacy compliance audits include routine monitoring, verifying compliance, and resolution as well as remediation of compliance deficiencies.[8]  The standardized categories of the audits involve, among other things, "Pharmacy Practice" matters such as "Patient profiling/DUR/Counseling"; "Controlled Substances" matters such as "Handling/dispensing processes"; and "Distribution Practice" matters such as "Policy and Procedures".[9]

As the Special Master found: "Most or all of the audits were performed by a team that included ESI in-house attorney Therese Twomey, who is ESI's Senior Pharmacy Compliance Manager".[10]  The audit reports can be and in fact are drafted or co-drafted by non-attorneys.[11]  The process for these ESI pharmacy compliance audits involves receiving feedback from pharmacy management, including the ability to dispute findings and present a "plan of remediation".[12]   In fact, the pharmacy compliance audits were such a routine part of ESI's business operations that, when conducted, they eliminated the need for pharmacies to perform self-assessment audits.[13]  To the extent ESI's Pharmacy Compliance team (which consists mostly of non-attorneys) provided advice through their audit reports, it was part of ESI's routine business operations.

## Legal Standards

---

[7] *Id*. at 2.

[8] *Id*. at 4.

[9] *Id*. at 6–9.

[10] *See* DR 14-33 at p. 6.

[11]   *See, e.g.*,  MDL_WITHHELD_001433  &  1434,  MDL_WITHHELD_001834, MDL_WITHHELD_001891,  MDL_WITHHELD_002843,  MDL_WITHHELD_004632, MDL_WITHHELD_004827, etc.; *See also*, ESI's 10/21/2024 letter brief at pp. 5, 7–9.

[12] *See, e.g.,* MDL_WITHHELD_001433, Ex. B at 12–13.

[13] *See* Ex. C (2019 email from D. Lang, VP of ESI Pharmacy Compliance).

"The burden of establishing the existence of the privilege rests with the person asserting it."[14]  "[W]here the party claiming the privilege fails to meet its burden . . . the party should be denied the protection of the privilege."[15]  Further, "[c]laims of attorney-client privilege are 'narrowly construed because [the privilege] reduces the amount of information discoverable during the course of a lawsuit.'"[16]  As such, the attorney-client privilege "applies only where necessary to achieve its purpose and protects only those communications necessary to obtain *legal* advice."[17]

A "'communication is not privileged simply because it is made by or to a person who happens to be an attorney.  To be privileged, the communication must have the *primary* purpose of soliciting (or providing) legal, rather than business, advice.'"[18]  Indeed, Sixth Circuit precedent follows the predominant or primary purpose test for mixed-purpose documents:

> When a communication involves both legal and non-legal matters, [the Sixth Circuit] "consider[s] whether the predominant purpose of the communication is to render or solicit legal advice." This predominant purpose "should be assessed dynamically and in light of the advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer."[19]

---

[14] *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir.2000).

[15] *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381–82 (6th Cir.2009).

[16] *In Re Columbia/HCA Healthcare Corporate Billing Practices*, 293 F.3d 289, 294 (6th Cir. 2002) (quoting *United States v. Collis*, 128 F.3d 313, 320 (6th Cir. 1997)).  *See also*, *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) ("[T]estimonial exclusionary rules and privileges contravene the fundamental principle that the public...has a right to every man's evidence, any such privilege must be strictly construed.").

[17] *In re Antitrust Grand Jury*, 805 F.2d 155, 162 (6th Cir. 1986) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1975)) (emphasis added).

[18] 1/31/2019 Discovery Ruling ("DR") 14-1 (Doc. No. 1321) at 2-3 (quoting *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607 at *1 (N.D. Ohio Apr. 9, 2007) (emphasis in original).

[19] *Alomari v. Ohio Dep't of Pub. Safety*, 626 F. App'x 558, 570 (6th Cir. 2015) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420–21 (2d Cir.2007)); *see also United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 867, 218 L. Ed. 2d 55 (2024) ("When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.").

Finally, interlocutory review of a non-final order is granted only in exceptional circumstances upon a finding by the district court that "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation."[20]

## <u>Argument</u>

ESI has not carried its burden of proving that the documents at issue are entitled to privileged treatment.  Most notably, ESI has not proven that the primary (or even the significant) purpose of the audits was to provide legal advice as opposed to business/regulatory advice.  ESI's objection to DR 14-33 is based on supplanting the Sixth Circuit's legal standard with an out-of-Circuit standard, and supplanting Special Master's factual findings with its own preferred version of the facts underpinning the disputed documents.  ESI's objections should be overruled.

Likewise, ESI's motion for interlocutory appeal fails to meet the statutory standard required to warrant such extraordinary relief.  Because the Special Master's discovery ruling did not decide a controlling question of law, there is no substantial ground for difference of opinion, and immediate appeal will delay rather than advance the ultimate termination of the litigation, ESI's motion for certification under § 1292(b) lacks merit.

## I.    ESI's Objections to DR 14-33 Are Meritless

## A.    ESI Provides No Basis for This Court to Depart from the "Primary or Predominant Purpose" Test

ESI urges the Court to apply the "significant purpose" test discussed by the D.C. Circuit in *Kellogg Brown & Root* for determination whether a mixed purpose document is privileged.[21]  But

---

[20] *E.g.*, *West Tenn. Chapter of Associated Builders & Contractors, Inc. v. City of Memphis (In re City of Memphis)*, 293 F.3d 345, 350 (6th Cir. 2002).

[21] *See In re Kellogg Brown & Root*, 756 F.3d 754, 759 (D.C. Cir. 2014).

that standard is inconsistent with that one required by the Sixth Circuit and previously applied in this MDL - that the proponent of the privilege carries the burden of proving that the "primary" or "predominant" purpose of the communication is to seek or convey legal advice.[22]  Moreover, this Court previously rejected, in this same context, the *Kellogg* "significant" purpose standard. Specifically, this Court held that *Kellogg*, "does not displace relevant, binding Sixth Circuit precedent which follows the predominant or primary purpose test for mixed-purpose documents."[23]  The Court went on to state that "even if this Court was not bound by controlling precedent from its own circuit, it is not persuaded by the *Kellogg* court's definition of the word 'primary.'"[24]

This Court has previously held that, in this MDL, prior rulings are presumptively applicable unless a party demonstrates "good cause" for departure or revision.[25]  The Court further explained:

> "Good cause" generally requires changed circumstances. At the risk of sanction, a party should NOT file a motion—with this Court, or the transferor court on remand—simply asserting this Court's earlier ruling, conclusion, or Order was incorrect. There is no reason for such a motion, as all prior arguments and objections are preserved. Similarly, no party should file a motion offering a frivolous basis for re-examination of a decided issue. Whether a party likes it or not, the Court's prior rulings and Orders apply to Case Track 8 and all future trials, absent changed circumstances or appellate reversal.[26]

ESI does not even attempt to establish good cause for this Court to depart from its previous rulings with respect to the "primary or predominant purpose" standard.  The Court should affirm the Special Master's use of that standard, rather than the *Kellogg* standard urged by ESI.

---

[22] *See, e.g., Alomari*, 626 F. App'x at 570.

[23] *See* Order regarding DR 14-32, Doc. #5053, at 7 (citing *Alomari*, 626 F. App'x at 570).

[24] *Id.*

[25] *See* Doc. #5783 at 1-2.

[26] *Id.*; *See also* Or. Regarding Previously Decided Issues, CT7, MDL Doc. #4978 at n.2.

### B.    Express Scripts Fails to Meet Its Burden of Proving that Legal Advice was the Primary (or even a Significant) Purpose of the Audits.

Under binding Sixth Circuit precedent, Express Scripts is required to prove that the primary or predominant purpose of the pharmacy compliance audits was for counsel to provide *legal* advice.[27] ESI has failed to do so.

To begin with, ESI's own documents show that the audits were in fact routinely performed as part of ESI's ordinary business.[28]  Additionally, ESI has not shown which advice was provided by its in-house counsel as opposed to its compliance personnel.  Moreover, ESI has not proven whether and how its in-house counsel provided *legal* advice in their role as attorney as opposed to business/regulatory advice in their role as compliance personnel.  These deficiencies are particularly fatal to ESI's privilege claims since the advice at issue – regulatory compliance – can be provided by non-attorneys.

The facts here bear this out.  Indeed, the evidence shows not only that the pharmacy compliance audit work was performed primarily by non-attorneys, but also that most of the audit reports were either drafted or co-drafted by non-attorneys.[29]  Importantly, as the Sixth Circuit has emphasized, the "predominant purpose should be assessed dynamically and in light of the advice being sought or rendered, *as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a non-lawyer*."[30]  That ESI could have received the same reports and audits, with or without lawyers, cuts against ESI's assertion of

---

[27] *Alomari*, 626 F. App'x at 570.  *See also Zigler*, 2007 WL 1087607 at *1.

[28] *See* Factual Background, *supra*.

[29] *See, e.g.,* Factual Background, *supra*; ESI's 10/21/2024 letter brief at 5, 7–9.

[30] *Alomari*, 626 F. App'x at 570 (emphasis added, citation and internal quotation marks omitted).

privilege—irrespective of whether attorneys were actually involved or not.  Applying this precedent, it is clear that ESI has failed to carry its burden of proof.

ESI's Objection asserts that Special Master Cohen misapplied the law of privilege by finding that "compliance with regulations is usually a business matter, not a legal one".[31]  ESI is incorrect. This Court has already affirmed that ongoing assessment of "compliance with regulations is usually a business matter, not a legal one."[32]  This is supported by cases within the Sixth Circuit and throughout the country.[33]

ESI references a number of cases which found that investigations directed and/or led by attorneys were privileged.[34]  But these cases in no way undermine the conclusion that routine compliance work is not a legal matter.  Rather, the cases cited by ESI are distinguishable because they do not involve routine and ongoing audits performed by compliance personnel as part of day-to-day business operations.  Rather, they involve attorney-led investigations in response to specific

---

[31] *See, e.g.*, ESI Obj. at 4 (quoting DR 14-33 at 5–6).

[32] *See* Order regarding DR 14-32 at 7 (docket no. 5053) (citations omitted).

[33] *See, e.g., Ciccio v. SmileDirectClub, LLC*, 2022 WL 2182301 at *5 (M.D. Tenn June 16, 2022) (citing this MDL Court and upholding the special master's ruling that documents were not privileged because "they involved regulatory, and not legal, advice");  *Intl. Brotherhood of Elec. Workers Loc. 212 v. American Laundry Machinery, Inc.*, No. 07–cv–324, 2009 WL 81114, at *3 (S.D. Ohio Jan.9, 2009) (The privilege does not extend to "communications made to secure or provide [regulatory] advice" when such is a necessary part of conducting the business.); *Sherwood v. BNSF Ry. Co.*, 325 F.R.D. 652, 662 & 665 (D. Idaho 2018) (privileged denied where "there are also readily-apparent business needs related to operational safety and, in some circumstances, regulatory requirements"); *Marquette Transportation Company, LLC v. M/V Century Dream*, 2016 WL 11686640 at *2 (E.D. La. Dec. 13, 2016) (documents not proven to be privileged "as opposed to some other non-protected purposes, such as regulatory compliance, safety enhancement or other ordinary course of business function;"); *Rowe v. E.I. duPont de Nemours and Co.*, 2008 WL 4514092, at *9 (D. N.J. Sept. 30, 2008) ("The Court concludes that [the document] does not reflect the exercise of a predominantly legal function as opposed to business advice in a regulatory industry, and thus is not protected from disclosure by the attorney-client privilege.").

[34] *See* Objection at 4-6.

9

allegations and/or lawsuits.[35]  ESI's reliance on *Upjohn Co. v. United States*[36] is similarly misplaced.  The question in *Upjohn* was whether the "scope of attorney-client privilege in the corporate context" extended to communications between lower-level employees and corporate counsel.[37] The Court specifically "decline[d] to lay down a broad rule or series of rules to govern all conceivable future questions in this area", and instead ruled only on the facts in front of it.[38] Those facts did not involve routine audits performed by compliance personnel as part of ordinary business operations; rather, like the other cases relied on by ESI, they involved a special investigation, in particular, in *Upjohn,* into allegations that a company subsidiary had "made payments to or for the benefit of foreign government officials in order to secure government business", which led the General Counsel to conduct a targeted inquiry into the scope of the improper conduct.[39] The Court held that "[t]he communications at issue were made by Upjohn employees to counsel for Upjohn *acting as such*, at the direction of corporate superiors in order *to secure legal advice from counsel*" and were privileged.[40]  That communications between lower-level employees and corporate counsel *may*, in some contexts, be privileged in no way suggests

---

[35] *See, e.g., Lee v. EUSA Pharma US LLC*, 2024 WL 250064, at *4 (E.D. Mich. Jan. 23, 2024) (finding that "Defendant's retention and engagement of Jackson Lewis, an outside law firm, to conduct an impartial workplace investigation concerning allegations [of racial discrimination] was done in anticipation of litigation"); *Myers v. City of Centerville*, 2023 WL 195427, at *2 (S.D. Ohio Jan. 17, 2023) (rejecting Plaintiff's motion to compel two co-defendant city workers "to testify about what they told an outside attorney . . . who Defendant City hired to investigate Plaintiff's allegations against the former Police Chief"); *Edwards v. Scripps Media, Inc.*, 2019 WL 2448654, at *1 (E.D. Mich. June 10, 2019) (rejecting plaintiff's argument "that Defendant's invocation of the Attorney-Client Privilege and the Work Product Doctrine does not apply to sexual harassment investigations").

[36] 449 U.S. 383 (1981).

[37] *Id.* at 386.

[38] *Id*.

[39] *Id.* at 387.

[40] *Id.* at 394 (emphasis added).

that they always are, particularly in the context of in-house lawyers who routinely perform both business and legal functions.   Nothing in *Upjohn* undermines the conclusion that routine compliance work is usually a business, rather than a legal, function.

Moreover, DR 14-33 was not based on a bright line determination that investigations can never be privileged or that regulatory advice cannot be legal advice.  Rather, after *in camera* review of the 14 documents (plus an additional document for which the privilege claim was withdrawn) and consideration of the evidence presented, the Special Master found that ESI failed to carry its burden of proving the privilege *for these documents*.

ESI's Objection also asserts that DR 14-33 erred because with respect to the audit reports, the legal advice predominates.[41]  The Objection admits that "[t]his error is inextricably tied up with the Ruling's" finding that that regulatory compliance serves a business function.[42]  In other words, the alleged factual error – that the primary purpose of the audit reports was legal advice – is reliant on a conclusory determination that regulatory compliance advice equates to legal advice. However, this is not the standard.

As this Court has noted, "simply saying a document contains legal advice—and not simply regulatory advice for a business purpose—is insufficient; it is [the company's] burden to show how and explain *why* this is true."[43]  Thus, ESI had the burden "to produce some evidence of the [legal] advice being sought or rendered, as well as the relationship between advice that can be rendered only by consulting the legal authorities and advice that can be given by a nonlawyer."[44] ESI has not done so.  Rather, the facts show that the pharmacy compliance audits: are routine, are

---

[41] *See* ESI Obj. at 4.

[42] *Id*. at 9.

[43] *Id*. at 8 (emphasis in original, citation omitted).

[44] *Id*. (citing *Alomari*, 626 F. App'x at 570).

conducted by a compliance team led by a non-attorney and made up of mostly non-attorneys, are part of ESI's ordinary business operations, result in reports that are drafted or co-drafted by non-attorneys, and involve receiving feedback from pharmacy management (including disputing findings and presenting a remediation plan).[45]  Thus, the evidence in this record *disproves* ESI's claim that the audits served the primary purpose of providing *legal* advice.  Indeed, the evidence is sufficient for the Court to conclude that the communications do not meet even *Kellogg's* significant purpose test.  Either way, the conclusion that the documents are not privileged was correct.

## II.    CERTIFICATION FOR INTERLOCUTORY APPEAL IS NOT APPROPRIATE UNDER 28 U.S.C. § 1292(B)

This Court should reject ESI's pursuit of an interlocutory appeal under § 1292(b) of any order affirming the Special Master's discovery ruling because ESI cannot satisfy the statute's required criteria.  Sixth Circuit precedent is clear that certification is appropriate under only where "(1) the order involves a controlling question of law; (2) a substantial ground for difference of opinion exists regarding the correctness of the decision; and (3) an immediate appeal may materially advance the ultimate termination of the litigation."[46]  None of these elements are present here.

---

[45] *See* Factual Background, *supra*.

[46] *In re City of Memphis*, 293 F.3d at 350.

### A.  The Court's Order Did Not Involve a Controlling Question of Law.

When the Special Master rejected ESI's privilege designations, he did not decide a controlling legal issue—one that "could materially affect the outcome of the litigation in the district court."[47]  Rather, the Court issued a discovery ruling on a mixed question of law and fact.[48]

Mixed questions of law and fact are rarely appropriate for certification under [§ 1292(b)].[49] That is especially true where, as here, a ruling related to attorney-client privilege "involve[d] the routine application of settled legal principles[]" to "factual determinations for which appellate deference is the norm."[50]  ESI faults the Special Master for finding, after a factual analysis *in camera*, that the business purpose of the documents predominated any legal purpose.[51]  But a discovery ruling made after a careful review of the challenged documents is not "[a] legal question of the type envisioned in § 1292(b)."[52]  Indeed, the dicta cited by *ESI from Mohawk Indus. v.*

---

[47] *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992); *In re Am. Reliable Ins. Co.*, 2023 U.S. App. LEXIS 11691, at *8 (6th Cir. May 11, 2023) ("Jurisdiction is the quintessential example of a controlling issue[.]").

[48] *United States v. Roberts*, 84 F.4th 659, 669 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 867, ("The application of attorney-client privilege is a mixed question of law and fact that this court reviews de novo.").

[49] *Cf. Energy Mich., Inc. v. Scripps*, 2022 U.S. Dist. LEXIS 56973, at *4–5 (E.D. Mich. Mar. 28, 2022) (finding "interlocutory appeals should not be certified for the purpose of inflicting upon courts of appeals an unaccustomed and ill-suited role as factfinders" and distinguishing *Flint v. Ky. Dep't. of Corrections*, 270 F.3d 340, 346 (6th Cir. 2001) as a qualified immunity case, noting § 1292(b) does not apply to such cases) (citation and internal quotation marks omitted); ESI Obj. at 12–13 (citing *Flint*).

[50] *Mohawk*, 558 U.S. at 110.

[51] ESI Obj. at 9; *see also Id.* at 7 (complaining about the Special Master's statement that "compliance with regulations is usually a business matter, not a legal one[]") (quoting Ruling at 5).

[52] *In re Memphis*, 293 F.3d at 351 (quoting *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994)); *Holt-Orsted v. City of Dickson*, 641 F.3d 230, 236 (6th Cir. 2011) (quoting *John B. V. Goetz*, 531 F.3d 448, 458 (6th Cir. 2008)) (noting "discovery orders . . . are generally not immediately appealable under the final judgment rule or the collateral order doctrine").

*Carpenter*, a case involving 28 U.S.C. § 1291 not § 1292, was limited to when "a privilege ruling involves a new legal question or is of special consequence,"[53] which is not the case here in this run of the mill privilege determination.

For example, in *In re Firstenergy Corp. Sec. Litig.*, the Southern District of Ohio denied a certification request on the scope of attorney-client privilege for dual-purpose communications—indistinguishable from the question Defendant seeks to certify here.[54]  There, the Court reasoned that a question of law "predicated on an evidentiary conclusion contrary to the one reached by the Special Master and this Court" by definition "is not relevant to [the merits of] this litigation, and therefore is not controlling."[55]  Other courts in the Sixth Circuit have routinely held the same.[56] The cases cited by ESI are distinguishable.[57]

### B.  There Is Not Substantial Ground for Difference of Opinion.

Because the Special Master's discovery ruling did not decide a controlling question of law, any disagreement with the Special Master is insignificant for purposes of certifying an

---

[53] 558 U.S. 100, 111, 130 S. Ct. 599, 607 (2009).

[54] 2024 U.S. Dist. LEXIS 122936 (S.D. Ohio July 12, 2024) (affirming the Special Master's privilege determination during discovery and rejecting the request to certify the question).

[55] *Id.* at *32–33.

[56] *See e.g.*, *William Powell Co. v. Nat'l Indem. Co.*, 2017 U.S. Dist. LEXIS 126065, at *6 (S.D. Ohio Aug. 9, 2017) (finding the privilege dispute would not materially impact the case and was not novel or of special consequence); *Baxter Travenol Lab. v. Le May*, 1982 U.S. App. LEXIS 11526, at *4 (6th Cir. Nov. 3, 1982) (dismissing as improvidently granted a similar certified question granted leave to appeal).

[57] *Eagan v. CSX Transp., Inc.*, 294 F. Supp. 2d 911, 915 (E.D. Mich. 2003) (order granting a mistrial); *Rafoth v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 (6th Cir. 1992) (question of whether bankruptcy courts may conduct jury trials); *Newsome v. Young Supply Case*, 873 F. Supp. 2d 872, 875 (E.D. Mich. 2012) (order denying motion for summary judgment);  *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 346 (6th Cir. 2001) (review of order denying qualified immunity under 28 U.S.C. § 1291); *Reed v. Baxter*, 134 F.3d 351, 353 (6th Cir. 1998) (review of privilege determination made after final judgment not in an interlocutory appeal).

interlocutory appeal.[58] Defendant admits "the Sixth Circuit has endorsed the primary purpose test,"[59] and there is no dispute the Special Master applied that test here.

Nonetheless, ESI seeks a special carve out from that test for "communications concerning regulatory compliance[,]" citing cases differing on the application of *In re Kellogg Brown & Root, Inc.*,[60] along with the Supreme Court's dismissal of *In re Grand Jury*,[61] as improvidently granted, for support. But that authority proves Plaintiff's point. *Kellogg* was a writ of mandamus case not a case brought under § 1292(b), and the Supreme Court's dismissal of the writ in *In re Grand Jury* leaves the primary purpose test in place for "most, if not all" federal courts.[62] Moreover, ESI's reworking of the primary purpose test, for regulatory compliance exclusively, insulates "highly regulated industry . . . [from] the basic principle that privileges should be construed narrowly."[63]

A faithful application of the longstanding test for attorney-client privilege of dual-purpose communications does not create, as a matter of law, substantial ground for difference of opinion that warrants immediate appellate review. Again, *In re Firstenergy*, provides a helpful illustration. It is not whether a different factfinder may find the fourteen documents privileged; it is whether there is substantial ground for difference of opinion, "regarding the predominate purpose test." [64]

---

[58] *Deutsche Bank Nat. Trust Co. v. Wickert*, 638 F. Supp. 2d 826, 831 (N.D. Ohio 2009).

[59] ESI Obj. at 15.

[60] 756 F.3d 754 (2014) (holding privilege exists where "solicitation of legal advice was one of the material purposes of the communication").

[61] 143 S. Ct. 543 (2023).

[62] *In re Grand Jury*, 13 F.4th 710, 716 (9th Cir. 2021). Notably, cert was denied in this year after the Sixth Circuit adopted the predominant purpose in *United States v. Roberts. See* 144 S. Ct. 867, 218 L. Ed. 2d 55 (2024).

[63] *Shahbabian v. TriHealth, Inc.*, 2019 U.S. Dist. LEXIS 206939, at *11 (S.D. Ohio Dec. 2, 2019) (rejecting "[s]uch a broad reading" of *Graff v. Haverhill North Coke Co.*, 2012 WL 5495514 at **9–10 (S.D. Ohio Nov. 13, 2012)).

[64] 2024 U.S. Dist. LEXIS 122936, at *33.

There is not.  "There is no reason to ask the Sixth Circuit whether an internal investigation's predominant purpose must be legal for the attorney-client privilege to apply; it has already told us."[65]  The answer is a resounding yes.[66]

ESI's other authorities are not persuasive.  None of ESI's Sixth Circuit district court opinions cite *Alomari* or *Roberts* let alone distinguish them.[67]  Notably, the Court in *FirstEnergy* rejected the argument that ESI makes here, that the Sixth Circuit has not decided the issue:

> FirstEnergy pivots to asserting that "the Sixth Circuit has not weighed in on" the circuit conflict regarding use of the phrase "predominant purpose" or "significant purpose" in a published opinion. (ECF No. 671 at 11 n.3). But it has. *See United States v. Roberts*, 84 F.4th 659, 670 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 867, 218 L. Ed. 2d 55 (2024) ("When a communication involves both legal and non-legal matters, we 'consider whether the predominant purpose of the communication is to render or solicit legal advice.").[68]

Finally, ESI argues that the Sixth Circuit has not weighed in on whether communications concerning regulatory compliance should be treated as primarily business-related,[69] but that framing misses the point – the Special Master did not hold that all communications concerning regulatory compliance should be treated as primarily business-related, only that these particular communications were not privileged.[70]

---

[65] *Id.* at *34 (citing *Roberts*, 84 F.4th at 670).

[66] *Roberts*, 84 F.4th at 670; *Alomari v. Ohio Dep't of Pub. Safety*, 626 Fed. Appx. 558, 570 (6th Cir. Sept. 9, 2015).

[67] ESI Obj. at 14.

[68] *In re Firstenergy Corp. Sec. Litig.*, N2024 U.S. Dist. LEXIS 122936, at *33-34.

[69] ESI Obj. at 14.

[70] DR 14-33 at 5–6.

## C.  An Immediate Appeal Will Not Materially Advance the Ultimate Termination of the Litigation.

Regardless of the ultimate determination of the issues raised by the Special Master's discovery ruling, litigation in this case will continue in much the same way and at much the same pace, so any "appeal cannot be said to materially advance the ultimate termination of the litigation."[71]  This is not an instance where if ESI is successful on appeal, "Plaintiffs' suits would end on the spot."[72]  Undeterred, ESI speculates that interlocutory appeal could prevent retrial or alter "which evidence is presented at summary judgment and trial, and therefore may advance the ultimate disposition of the case."[73] But, in practice, "[i]nterlocutory review would forestall little here."[74]

A retrial following a post-final judgment appeal is a risk with every interlocutory ruling. Here, reversal of a final judgment based on the fact bound application of the primary purpose test is unlikely.[75]  And, ESI's attempts to apply the D.C. Circuit's significant purpose test will run afoul of overwhelming precedent to the contrary (some of which will be binding on a Sixth Circuit panel).[76] While Plaintiff has not yet been made privy to the challenged discovery, it is hard to imagine that the fourteen documents the Special Master ordered produced will lengthen the proceedings (summary judgment or trial) in any material manner in this complex case.  And all of

---

[71] *In re Memphis*, 293 F.3d at 351 (quoting *White*, 43 F.3d at 378–379).

[72] *In re Am. Reliable Ins. Co.*, LEXIS 11691, at *9.

[73] ESI Obj. at 14–15 (citing *Black & Decker (US), Inc. v. Smith,* 2008 WL 3850825, at *4 (W.D. Tenn. Aug. 13, 2008) and *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970)).

[74] *In re Somberg*, 31 F.4th at 1008.

[75] *Mohawk*, 558 U.S. at 110 (finding discretionary discovery orders "are unlikely to be reversed on appeal") (citing *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 434 (1985) ("Most pretrial orders of district judges are ultimately affirmed by appellate courts")).

[76] *See infra,* Part IB.

this presupposes that Plaintiff will seek to admit these documents – a decision that is far away. Rather than advance resolution, interlocutory appeal here will just cause further delay and add unnecessary proceedings.

* * * * *

"Congress intended that section 1292(b) should be sparingly applied" and "used only in exceptional circumstances."[77]  ESI has failed show that the challenged ruling constitutes an exceptional circumstance.  Accordingly, this Court should refuse Defendant's request to certify for appeal any order affirming the ruling.

## <u>CONCLUSION</u>

Based on the foregoing, Express Scripts' objection to DR 14-33 should be overruled and its motion for § 1292(b) certification should be denied.

Dated: December 10, 2024                Respectfully submitted,

Jayne Conroy
SIMMONS HANLY CONROY
112 Madison Avenue, 7th Floor
New York, NY  10016
(212) 784-6400
jconroy@simmonsfirm.com

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
(843) 216-9000
jrice@motleyrice.com

---

[77] *Kraus v. Board of Cnty. Comm'rs*, 364 F.2d 919, 922 (1966) (finding § 1292(b) "is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation"); *Mohawk*, 558 U.S. at 112 (citing Wright & Miller § 3914.23, at 123 ("Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process")).

Paul T. Farrell Jr., Esq.
FARRELL & FULLER
270 Munoz Rivera Ave., Suite 201
San Juan, PR  00918
(304) 654-8281

*Plaintiffs' Co-Lead Counsel*

*/s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com

*Plaintiffs' Liaison Counsel*

*/s/ Paul J. Napoli*
Paul J. Napoli
Napoli Shkolnik
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
Tele: (833) 271-4502
PNapoli@NSPRLaw.com

*/s/ Hunter J. Shkolnik*
Hunter J. Shkolnik
Napoli Shkolnik
1302 Avenida Ponce de León
Santurce, Puerto Rico 00907
Tele: (833) 271-4502
PNapoli@NSPRLaw.com
Hunter@NSPRLaw.com

*/s/ Salvatore C. Badala*
Salvatore C. Badala
Shayna E. Sacks
Joseph L. Ciaccio
Napoli Shkolnik PLLC
400 Broadhollow Road, Suite 305
Melville, New York 11747
Phone: (212) 397-1000
Facsimile: (646) 843-7603
sbadala@napolilaw.com
ssacks@napolilaw.com

jciaccio@napolilaw.com

*/s/ Frank Gallucci*
Plevin & Gallucci Company, L.P.A.
55 Public Square
Suite 2222
Cleveland, Ohio 44113
p: 216.861.0804
f:  216.861.5322
*Attorneys for Plaintiff City of Rochester*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of December, 2024, I have electronically filed the foregoing with the Clerk of Court using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF System.

*/s/Peter H. Weinberger*
Peter H. Weinberger