UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) Judge Dan Aaron Polster ) |
| *ALL THIRD PARTY PAYOR ACTIONS* | ) |

**FINAL ORDER AND JUDGMENT
GRANTING THIRD PARTY PAYOR PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND AWARD OF
ATTORNEYS' FEES AND EXPENSES AND SETTLEMENT CLASS
REPRESENTATIVE SERVICE AWARDS**

Third Party Payor ("TPP") Plaintiffs' Motion for Final Approval of Class Action Settlement, and Award of Attorneys' Fees and Expenses and Settlement Class Representative Service Awards, was heard by this Court on January 13, 2025. The background, procedural history, and Settlement terms were summarized in the Court's Order Granting Third Party Payor Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Direction of Notice Under Federal Rule of Civil Procedure 23(e). *See* ECF 5616 ("Preliminary Approval Order"). In brief, the Settlement between Interim Settlement Class Counsel for Third Party Payor Plaintiffs,

1

3163029.4

on behalf of a proposed Settlement Class of TPPs, and Settling Distributors[1] provides $300 million to compensate the Settlement Class for harms allegedly incurred as part of the ongoing, nationwide opioid crisis.

## I. CLASS CERTIFICATION AND SETTLEMENT APPROVAL

When presented with a motion for final approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Rule 23(a)-(b) of the Federal Rules of Civil Procedure. Rule 23(a) provides that a class action is proper only if four requirements are met: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)-(4). As relevant here, certification of a Rule 23(b)(3) settlement class action requires that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members"; and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In its Preliminary Approval Order, the Court concluded that the Settlement Class, as defined therein, and its Settlement Class Representatives were likely to satisfy these requirements and that Interim Settlement Class Counsel met the requirements of Rule 23(g). *See* ECF 5616. The Court finds no reason to disturb its earlier conclusions, as the requirements of Rule 23(a), (b)(3), and (g) were satisfied then, and they remain satisfied now. Accordingly, the Court concludes that certification of the Settlement Class is appropriate.

After finding that the Settlement Class satisfies Rule 23(a) and (b)(3), the Court must determine whether the Settlement is fundamentally "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court is familiar with the standards applicable to certification of a settlement

---

[1] Cencora, Inc. (f/k/a AmerisourceBergen Corporation), Cardinal Health, Inc., and McKesson Corporation (collectively, "Settling Distributors").

2

class, having applied these standards in the Preliminary Approval Order to conclude that the Settlement appeared to be "fair, reasonable, and adequate[.]" ECF 5616; *see also Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016) (analyzing the seven factors that govern the "fair, reasonable, and adequate" inquiry in the Sixth Circuit); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992) (noting that district courts enjoy broad discretion when applying the Rule 23(e)(2) factors).

Now, in granting final approval of the Settlement, the Court has considered each of the Rule 23(e) factors and finds that the Settlement Class Representatives and Interim Settlement Class Counsel have adequately represented the Settlement Class; the Settlement Agreement was negotiated at arm's length and was in no way the product of collusion; the relief provided for the Settlement Class is adequate; and the Plan of Allocation treats Settlement Class Members equitably relative to one another. *See* Fed. R. Civ. P. 23(e)(2).

These conclusions are bolstered by the Settlement Class Members' favorable reaction to the Settlement. There was a single objection to the Settlement, by United HealthCare Services, Inc., one of the entities expressly excluded from the Settlement Class. In addition, out of over 40,000 potential Settlement Class Members that were notified, only 69 entities that claim to be TPPs (less than 0.2%) excluded themselves from the Settlement. It is also relevant that none of the TPPs selected as bellwether plaintiffs or any of the other over 100 TPPs currently litigating in the MDL objected or opted-out. The Settlement Class's overwhelmingly positive reaction to the Settlement is a factor supporting final approval. *See Whitlock*, 843 F.3d at 1093 (considering as part of the Rule 23(e)(2) seven-factor analysis "the reaction of absent class members").

### A. The Settlement Is Fair, Reasonable, and Adequate Under Rule 23(e)(2).

A court may approve a proposed class settlement only "after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2); *see also McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 661 (N.D. Ohio 2023). The TPP-Distributors Settlement satisfies all four of these factors. In the Sixth Circuit, additional considerations guide the Rule 23(e)(2) inquiry: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"). However, although the *UAW* factors "might have relevance on any particular set of facts[,] [w]here they do not, there is no occasion to consider them." *McKnight*, 655 F. Supp. 3d at 661. Thus, while all of the *UAW* factors may not be relevant to the facts of the Settlement at issue here, the Settlement does nonetheless satisfy both the *UAW* and the Rule 23(e)(2) factors.

### B. Settlement Class Representatives and Interim Settlement Class Counsel Have Adequately Represented the Class Under Rule 23(e)(2)(A).

Rule 23(e)(2)(A) is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)[.]" 4 William B. Rubenstein et al., *Newberg & Rubenstein on Class Actions* §13:49 (6th ed. 2022). Here, Interim Settlement Class Counsel have prosecuted this action and its fair resolution with vigor and dedication, and have fought hard to protect the interests of the Settlement Class as evidenced by the significant compensation available through the Settlement.

4

To achieve this outcome, Interim Settlement Class Counsel undertook significant efforts to uncover the facts at issue and engaged in robust Rule 12 motion practice, submitting thorough and successful opposition briefs to Settling Distributors' motions to dismiss and to certify this Court's February 21, 2020 Order (ECF 3177) for appeal in the *Cleveland Bakers* case.

Likewise, the TPP Settlement Class Representatives played an integral role in the litigation by closely consulting with counsel throughout the process. The Settlement Class Representatives who serve as TPP Bellwether Plaintiffs or briefing bellwethers have also further amended their complaints to conform with the best new evidence in the MDL, briefed important issues related to the Court's management of these cases, served numerous subpoenas, and negotiated production of claims data with third parties and defendants. Moreover, the six appointed and two newly proposed TPP Settlement Class Representatives have each worked with counsel to review and evaluate the terms of the proposed Settlement Agreement, and each believes that the Settlement is fair, reasonable, and adequate for the many reasons explained herein. Each Settlement Class Representative has also expressed its continued willingness to protect the Settlement Class until settlement administration is completed. *See* Joint Decl. ¶¶14-16, 25-26 (ECF 5694-1). Accordingly, both Settlement Class Representatives and Interim Settlement Class Counsel satisfy Rule 23(e)(2)(A).

### C. The Settlement Is the Product of Good Faith, Informed, Arm's-Length Negotiations Under Rule 23(e)(2)(B).

Rule 23(e)(2)(B) requires that the parties negotiate the settlement at arm's length, which inquiry "aims to root out . . . 'collusive settlements.'" *Newberg* §13:50; *UAW*, 497 F.3d at 631. Here, resolution was achieved by way of good faith, informed, and arm's-length negotiations between experienced counsel, and overseen by the Honorable Layn Phillips and Mr. Fouad Kurdi, experienced mediators (and, in particular, mediators with successful and repeated experience helping

5

various parties achieve other Opioid MDL settlements) with an understanding of the strengths and weaknesses of the parties' respective positions. Joint Decl. ¶7. Prior to settling, the parties exchanged briefing across several cases, including the *Cleveland Bakers* case, and the numerous case tracks in this MDL (as well as in state courts), which have informed the parties' understanding of the strengths and weaknesses of their claims and defenses. Settlement Class Representatives who are TPP Bellwether Plaintiffs have already produced some claims data. Where so much information has already been exchanged, "a court may assume that the parties have a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information." *Newberg* §13:49. Settlements such as this, resulting from formal mediations conducted by experienced mediators, indicate the absence of fraud or collusion. *See Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 277 (6th Cir. 2016); *Waggoner v. U.S. Bancorp*, 2016 WL 7474408, at *3 (N.D. Ohio Dec. 29, 2016). The parties' two mediations, one with Judge Phillips and one with Mr. Kurdi, were separated by almost two years of active litigation, and the 2024 mediation proved successful only after hard-fought negotiations that began months prior to the day of the in-person mediation and continued thereafter. Joint Decl. ¶7. The Settlement further does not include any indication of collusive negotiations, such as a clear sailing provision, and no portion of the Settlement Funds would revert to Settling Distributors even if this Court were to award no attorneys' fees. After conducting a hearing *in camera*, the Court finds no credible evidence to support any allegations of collusion; and finds every other aspect of the objection filed by United Healthcare Services to be without merit.

## D. The Relief Provided to the Settlement Class is Adequate Under Rule 23(e)(2)(C).

In assessing whether the relief provided to the Settlement Class is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C).

Costs, risks, and delay of trial: First, the $300 million Settlement is substantial in light of "the costs, risks, and delay of trial and appeal[.]" Fed. R. Civ. P. 23(e)(2)(C)(i). This Settlement not only avoids the clear obstacles present in litigating and trying individual TPP cases, but also assures that TPP Plaintiffs receive timely compensation not long after the Court activated the TPP bellwether cases. Even if individual TPP Plaintiffs achieved successful judgments, the years of delay in achieving that result, on top of the years since these lawsuits were filed, would only further injure TPP Plaintiffs and Settlement Class Members. Settlement is the more prudent and expeditious route. Moreover, the Settlement serves the public interest in resolving a nationwide class action to benefit TPPs and conserve the Court's resources by properly avoiding trial and appeals in this already long-standing MDL.

Effectiveness of the proposed method of distributing relief to the Class: The next factor considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). This consideration requires the Court to ensure, *inter alia*, that claims processing: (1) facilitates filing legitimate claims; and (2) is not unduly demanding. *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. Under this factor, Settlement Class Members must also be treated

7

equitably relative to each other. This is accomplished through Dr. Rosenthal's Plan of Allocation (ECF 5614-7), which is based on neutral, objective criteria, is the product of extensive and informed investigation and analysis, and will ensure a fair distribution of the Settlement Funds. Dr. Rosenthal is a preeminent TPP testifying economic expert, and she is thoroughly familiar with the operation of the healthcare industry and the TPPs' role and costs in the delivery of healthcare to their beneficiaries.

With respect to the method of processing class member claims, A.B. Data is a highly qualified Notice and Claims Administrator. A.B. Data has demonstrated success in administering numerous national TPP settlements and will be an effective Notice and Claims Administrator in this action. Thus far, A.B. Data has successfully disseminated Notice (*see* ECF 5662), with one objection and 69 opt-outs received. Joint Decl. ¶¶10-11. And, even so, there will be no reversions of the Settlement Funds to Settling Distributors because all Settlement Funds money, net of fees, expenses, and service awards, will be distributed to the Settlement Class.

Terms of attorney's fees: As discussed further, the Settlement is also fair, reasonable, and adequate with respect to the "terms of any proposed award of attorney's fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Interim Settlement Class Counsel has requested 20% of the Settlement Funds, which is modest in comparison to other percentage-of-the-fund requests both in this Circuit and nationwide. And the Court's ultimate decision as to whether to award attorneys' fees, expenses, and Settlement Class Representative service awards does not impact the underlying Settlement Agreement. The terms of Interim Settlement Class Counsel's fee request thus satisfy Rule 23(e)(2)(C)(iii) and are approved.

Absence of side agreements: The fairness, reasonableness, and adequacy of a settlement must also consider "any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ.

P. 23(e)(2)(C)(iv). Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The Court has inquired into the proposed attorney fee allocation and reviewed the TPPs' submission regarding fees at ECF 5857, and is satisfied with Co-Lead Settlement Class Counsel's filed submission and answers to the Court's questions at the hearing.

### E. The Settlement Treats Class Members Equitably Relative to Each Other Under Rule 23(e)(2)(D).

This factor "ensure[s] that similarly situated class members are treated similarly[.]" *Newberg* §13:56. In evaluating the fairness of a class settlement, Ohio district courts also ensure that the distribution of settlement proceeds is equitable. "Equity does not dictate that the proceeds must be shared on a pro-rata basis, so long as the ultimate distribution is fair, reasonable, and adequate." *Harsh v. Kalida Mfg., Inc.*, 2021 WL 4145720, at *7 (N.D. Ohio Sept. 13, 2021). Here, similarly to *Harsh*, each qualified claimant's share of the Settlement is "based upon their calculated damages," *id.*, turning on actual claims data and ARCOS data. No Settlement Class Member receives preferential treatment under the Settlement because each Settlement Class Member is entitled to a *pro rata* portion of the Settlement Funds based on the Plan of Allocation, which provides that any Class Member that files a valid claim prior to the end of the claims period, after final approval by the Court and absent pending appeals, will be paid its net allocative share. The Settlement thus satisfies Rule 23(e)(2)(D).

### F. The Notice Was Adequate

In addition, the Court finds that the Court-approved notice provided to the Settlement Class pursuant to the Settlement Agreement and the Preliminary Approval Order fully complied in all respects with the requirements of Fed. R. Civ. P. 23 and due process, and the notice was reasonably calculated under the circumstances to apprise the Settlement Class Members of the pendency of

9

this Action, their right to object to or exclude themselves from the Settlement, and their right to appear at the Fairness Hearing.

The Court also finds that the Settling Distributors have complied with the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, 1711-1715, and its notice requirements by providing appropriate federal and state officials with information about the Settlement Agreement.

### G. The Court will Certify the Settlement Class and Appoint Settlement Class Counsel

Based on the foregoing and the Plaintiffs' preliminary and final approval motion papers, the Court grants the motion to certify the following Settlement Class:

"Class" or "Settlement Class" includes:

All entities that paid and/or were reimbursed for (i) opioid prescription drugs manufactured, marketed, sold, distributed, or dispensed by any of the Defendants and/or Opioid Supply Chain Members for purposes other than resale, and/or (ii) paid or incurred costs for treatment related to the misuse, addiction, and/or overdose of opioid drugs, on behalf of individual beneficiaries, insureds, and/or members, during the time period from January 1, 1996 to the date of entry of the Preliminary Approval Order. For clarity, the Settlement Class includes but is not limited to: (a) private contractors of Federal Health Employee Benefits plans, (b) plans for self-insured local governmental entities that have not settled claims in MDL No. 2804, (c) managed Medicaid plans, (d) plans operating under Medicare Part C and/or D, and (e) Taft-Hartley plans. For the avoidance of doubt, all Plaintiffs identified in Exhibit B are included in the Class. Exhibit B is a non-exhaustive list and does not purport to identify all members of the Class.

Excluded from the Class are:

1. (a) all federal governmental entities and all state and local governmental entities whose claims have been released by a prior settlement with the Settling Distributors, (b) Pharmacy

Benefit Managers ("PBMs"), (c) consumers, (d) fully insured plan sponsors, and (e) Excluded Insurers, including the related entities as listed in the definition of Excluded Insurers. For the avoidance of doubt, (i) entities that are administered or operated, but not owned, by an Excluded Insurer and (ii) entities that own an interest, even a controlling interest, in a PBM, are not excluded from the Class, unless they are an Excluded Insurer or are otherwise excluded; and

2. (a) the Settling Distributors and their subsidiaries, affiliates, and controlled persons; (b) officers, directors, agents, servants, or employees of any Settling Distributor, and the immediate family members of any such persons; and (c) persons and entities named as Defendants in any of the Actions coordinated under or parallel to MDL No. 2804.

Paul J. Geller, Elizabeth J. Cabraser, James R. Dugan II, Mark J. Dearman, and Eric B. Fastiff are hereby appointed as Settlement Class Counsel, and Paul J. Geller, Elizabeth J. Cabraser, and James R. Dugan II are also hereby appointed as Co-Lead Settlement Class Counsel, under Rule 23(g)(3) of the Federal Rules of Civil Procedure. Co-Lead Settlement Class Counsel and Settling Distributors are authorized to take, without further Court approval, all necessary and appropriate steps to implement the Settlement.

## II. REQUESTED ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARDS

"The determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *United Slate, Tile & Composition Roofer, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984); *see also Feiertag v. DDP Holdings, LLC*, 2016 WL 4721208, at *6 (S.D. Ohio Sept. 9, 2016) (applying factors to determine a reasonable

11

3163029.4

attorneys' fee). Attorneys' fees may be properly awarded as a "percentage of the fund method." *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

Interim Co-Lead Settlement Class Counsel request a fee award of 20% of the Settlement Funds, plus all reimbursable costs and service awards (*see* ECF 5694). The fee amount includes the common benefit obligations due under the Court's common benefit-related Orders (*see* ECF 4428, May 9, 2022 Ongoing Common Benefit Order).

### III. CONCLUSION

Accordingly, the Court hereby orders, adjudges, finds, and decrees as follows:

After hearing from counsel for United HealthCare Services, Inc., and from Plaintiffs' class counsel, the Court **OVERRULES** United HealthCare Services, Inc.'s objection to the Settlement for the reasons stated on the record during the Fairness Hearing held on January 13, 2025, and also the well-taken reasons stated by TPPs and Settling Distributors in their briefs in response to the objection and exhibits thereto (ECF 5802 & 5803). The Court considered United HealthCare Services, Inc.'s allegations, determined them to be without merit, and denies the relief United HealthCare Services Inc.'s requested in its sur-reply submission (ECF 5854).

The Court **DISMISSES** the Actions coordinated under MDL No. 2804 and all claims contained therein, as well as all of the Released Claims with prejudice as to the Released Entities only. The Parties are to bear their own costs, except as otherwise provided in the Settlement Agreement.

Only those entities listed in the Final Opt-Out Report (attached hereto as Exhibit A) that submitted valid requests to opt out of the Settlement Class are not bound by this Order. Those entities are not entitled to any recovery from the Settlement.

The Court **GRANTS** class certification for settlement purposes only.

The Court **CONFIRMS** the appointment of Interim Settlement Class Counsel Paul J. Geller, Elizabeth J. Cabraser, Mark J. Dearman, and Eric B. Fastiff as Settlement Class Counsel and further appoints James R. Dugan, II of The Dugan Law Firm, APLC as Settlement Class Counsel. The Court also **CONFIRMS** the appointment of Interim Co-Lead Settlement Class Counsel Paul J. Geller and Elizabeth J. Cabraser as Co-Lead Settlement Class Counsel and additionally appoints James R. Dugan as Co-Lead Settlement Class Counsel.

The Court **CONFIRMS** the appointment of Settlement Class Representatives Cleveland Bakers and Teamsters Health and Welfare Fund; Pipe Fitters Local Union No. 120 Insurance Fund; Pioneer Telephone Cooperative, Inc. Employee Benefits Plan; American Federation of State, County and Municipal Employees District Council 37 Health & Security Plan; Louisiana Assessors' Insurance Fund; and Flint Plumbing and Pipefitting Industry Health Care Fund, and further appoints United Food and Commercial Workers Health and Welfare Fund of Northeastern Pennsylvania and Sheet Metal Workers Local No. 25 Health & Welfare Fund as additional Settlement Class Representatives.

The Court **GRANTS** Co-Lead Settlement Class Counsel's request for attorneys' fees of $60 million and costs of $750,000, subject to the Court's common benefit-related Orders. The Court hereby **AWARDS**: notice and administration costs, expert costs, and Settlement Class Counsel expenses; attorneys' fees of 20% of the Settlement Funds; and the below service awards. The attorneys' fee award includes the common benefit obligations due under the Court's common benefit-related Orders, which shall be allocated by the existing Fee Panel among qualified applicant firms that that the Panel determines did work that inured to the common benefit of the TPPs. The fee award net of the common benefit assessment shall be allocated by Co-Lead

3163029.4

Settlement Class Counsel firms actively litigating on behalf of the TPP Class, with any appeals to such allocation going to Special Master David R. Cohen.

The Court **GRANTS** Settlement Class Counsel's request for service awards of $10,000 to each of the Settlement Class Representatives.

The Court hereby discharges and releases the Released Claims as to the Released Entities, as those terms are used and defined in the Settlement Agreement.

The Court hereby permanently bars and enjoins the institution and prosecution by any Settlement Class Representative, Settlement Class Member, Releasor, and anyone claiming through or on behalf of any of them, of any other action against the Released Entities in any court or other forum asserting any of the Released Claims, or any claim related in any way to the Released Claims, as those terms are used and defined in the Settlement Agreement.

All Settlement Class Members, Releasors, and anyone claiming through or on behalf of any of them, shall cooperate with the Settling Distributors to promptly dismiss with prejudice as to any of the Released Entities the Actions listed on Exhibit A to the Settlement Agreement that are not coordinated under MDL No. 2804 and all other pending litigation asserting any Released Claims against any of the Released Entities.

The Court hereby discharges and releases all Settlement Class Representatives, Settlement Class Members, and their counsel of the claims provided in Section IX.L. of the Settlement Agreement.

Neither the Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim or of any wrongdoing or liability of the Settling Distributors or Released Entities; or (ii) is or may be deemed to be or may be used as an

admission of, or evidence of, any fault or omission of any of the Settling Distributors or Released Entities in any civil, criminal, or administrative proceeding in any court or other forum. Notwithstanding the foregoing, the Settling Distributors and/or the Released Entities may file the Settlement Agreement and/or this Final Judgment in any other action that may be brought against them to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar, or any theory of claim preclusion or issue preclusion or similar defense.

Therefore, pursuant to, and in accordance with, Fed. R. Civ. P. Rule 23, the Court hereby fully and finally approves the Settlement Agreement in its entirety and finds that the Settlement Agreement is fair, reasonable, and adequate. The Court also finds that the Settlement Agreement is in the best interests of the Settlement Class Representatives and all Settlement Class Members, and is consistent and in compliance with all applicable laws and rules. The Court further finds that the Settlement Agreement is the product of intensive, thorough, serious, informed, and non-collusive negotiations overseen by the mediators. The Court further finds that the Parties have evidenced full compliance with the Preliminary Approval Order.

Without further approval from the Court, and without the express written consent of Settlement Class Counsel and Settling Distributors, the Settlement is not subject to any material modification.

The terms of the Settlement and of this Final Order and Judgment are forever binding on the Settling Parties and Settlement Class Members, as well as their respective heirs, executors, administrators, predecessors, successors, affiliates, and assigns. Settlement Class Members include all entities within the Class definition in Section III.A.1.(a). of the Settlement Agreement that did

not submit a timely and valid Opt-Out in accordance with the procedures in the Settlement Agreement and the Preliminary Approval Order.

The Court finds that the Settlement is a good-faith settlement that bars any Claim by any Non-Released Entity against any Released Entities for contribution, indemnification, or otherwise seeking to recover all or a portion of any amounts paid by or awarded against that Non-Released Entity to any Settlement Class Member or Releasor by way of settlement, judgment, or otherwise on any Claim that would be a Released Claim were such Non-Released Entity a Settling Distributor, to the extent that a good-faith settlement (or release thereunder) has such an effect under applicable law, including, without limitation, O.H. Code § 2307.28 and similar laws in other states or jurisdictions.

The Court further reserves and retains exclusive and continuing jurisdiction over the Settlement, including the Escrow Account, the Escrow Agent as its administrator, and all future proceedings concerning the administration and enforcement of the Settlement Agreement and to effectuate its terms.

In the event that, for any reason, the Effective Date does not occur in accordance with the terms of the Settlement Agreement then: (i) this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement and shall be vacated; (ii) all Orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Settlement Agreement; and (iii) the Settlement Funds shall be returned to Settling Distributors in accordance with the Settlement Agreement.

The Court finds, pursuant to Fed. R. Civ. P. 54(b), that there is no just reason for delay,

16

3163029.4

and directs immediate entry of this Final Judgment by the Clerk of the Court.

**IT IS SO ORDERED.**

DATED: January 15, 2025

*/s/ Dan Aaron Polster*
THE HONORABLE DAN A. POLSTER
UNITED STATES DISTRICT JUDGE

3163029.4