# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*THIS DOCUMENT RELATES TO*<br><br>CASE NOS.    1:18–OP–45899–DAP<br>                  1:18–OP–45393–DAP<br>                  1:18–OP–45001–DAP<br>                  1:18–OP–45013–DAP<br>                  1:18–OP–45240–DAP | MDL 2804<br><br>CASE NO. 1:17–MD–2804–DAP<br><br>HON. DAN AARON POLSTER |

**DISCOUNT DRUG MART, INC.'S MEMORANDUM IN OPPOSITION TO CORRECTED OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD DISCOUNT DRUG MART, INC. AND MEMORANDUM OF LAW IN SUPPORT**

## I.   PRELIMINARY STATEMENT.

In response to the Corrected Omnibus Motion for Leave to Amend to Add Discount Drug Mart, Inc. ("***DDM***") and Memorandum of Law in Support,[1] DDM has filed the following:

- A Memorandum in Opposition to Corrected Omnibus Motion for Leave to Amend to Add DDM and Memorandum of Law in Support (the "***Main Opposition***"); and

- This Memorandum in Opposition to Corrected Omnibus Motion for Leave to Amend to Add DDM and Memorandum of Law in Support (the "***Out–of–State Opposition***").

---

[1] *In re National Prescription Opiate Litigation*, No. 1:17-md-2804-DAP, Pls.' Corrected Omnibus Mot. for Leave to Am. to Add DDM and Mem. in Supp., ECF No. 5569 (N.D. Ohio Aug. 1, 2024) (the "***Motion***").

The arguments set forth in the Main Opposition are hereby incorporated by reference into this Out–of–State Opposition.

Finally, DDM responds to the City of Lakewood's motion for leave to amend in *City of Lakewood v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45240–DAP (N.D. Ohio) in this Out–of–State Opposition and separately through a Motion to Dismiss with Prejudice for Failure of Service of Process, which is incorporated herein by reference.

## II.  INTRODUCTION.

Since 2019, the record has reflected that DDM does not conduct business outside of the State of Ohio.[2] Despite DDM's purposeful decision to not transact business outside the State of Ohio, certain Plaintiffs (collectively, the "***Out–of–State Plaintiffs***") now seek leave to amend their complaints to join and assert claims against DDM in cases which were filed over six (6) years ago in federal district courts located in Missouri, Kentucky, and Massachusetts (collectively, the "***Out–of–State Cases***"):

- *City of Springfield v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45899–DAP (N.D. Ohio May 30, 2018);[3]

- *Fiscal Court of Elliott County v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18–op–45393–DAP (N.D. Ohio Mar. 22, 2018);[4] and

---

[2] *See In re National Prescription Opiate Litigation*, No. 1:17–md–2804–DAP, Keith Miller Decl. in Supp. of Pharmacy Defs.' Mot. for Recons. of the Ct.'s Order Regarding Scope of Track One–B and Supp. Mem., Ex. 6, ¶¶ 2–3, ECF No. 3029.

[3] This case was originally filed in the Western District of Missouri as *City of Springfield v. Purdue Pharma, L.P., et al.*, No. 6:18–cv–03167 (W.D. Mo. May 30, 2018).

[4] This case was originally filed in the Eastern District of Kentucky as *Fiscal Court of Elliott County*

- *Teamsters Health Servs. & Ins. Plan Local 404 v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45001–DAP (N.D. Ohio Nov. 28, 2017).[5] [6]

Further, the following Plaintiff (the "***New York Plaintiff***", and with the Out–of–State Plaintiffs, the "***Amending Plaintiffs***") seeks leave to amend its complaint to join and assert claims against DDM in a case which was filed in this Court (the "***New York Case***") over seven (7) years ago by a non–profit health and welfare benefit plan from New York City whose membership is limited to New York City employees, retirees, and their families:

- *American Federation of State, County, and Municipal Employees District Council 37 Health & Security Plan, et al. v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45013–DAP (N.D. Ohio Dec. 12, 2017).[7]

The U.S. Supreme Court has established that for a state to exercise jurisdiction over a nonresident defendant, the defendant must have "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See Walden v. Fiore*, 571 U.S. 277, 283 (citing *International Shoe Co.* v. *Washington*, 326 U. S. 310, 316 (1945)).

As discussed herein, DDM never owned any stores or conducted any business

---

*v. AmerisourceBergen Drug Corporation, et al.*, No. 0:18–cv–00036–GFVT (E.D. Ky. Mar. 22, 2018).

[5] This case was originally filed in the District Court of Massachusetts as *Teamsters Health Servs. & Ins. Plan Local 404 v. Purdue Pharma, L.P., et al.*, No. 3:17–cv–12342–MGM (D. Mass. Nov. 28, 2017).

[6] *See* Motion at Ex. A.

[7] *Id.*

outside the State of Ohio, meaning it lacks the necessary minimum contacts to be subject to personal jurisdiction in any state other than Ohio. Thus, ordering DDM to appear in federal courts in states where it never conducted business would violate DDM's due process rights under the Fourteenth Amendment of the United States Constitution. *See Walden*, 571 U.S. 277.

Since DDM has never conducted business outside of Ohio, it is not subject to personal jurisdiction in other states. Allowing the Amending Plaintiffs' leave to join and assert claims against DDM in the Out–of–State Cases and New York Case would materially prejudice DDM's substantive rights, as DDM would be forced to defend itself in jurisdictions with which it has no connection, which violates the principles of due process and runs afoul of black–letter law.

Finally, the City of Lakewood ("***Lakewood***") seeks leave to amend its complaint to join and assert claims against DDM in the case styled *City of Lakewood v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45240–DAP (N.D. Ohio). As explained in DDM's Motion to Dismiss with Prejudice for Failure of Service of Process, which is incorporated herein by reference, Lakewood's request for leave to "add DDM as a party" should be stricken; and the Court should dismiss Lakewood's claims against DDM for failing to comply with this Court's April 6, 2023 Order wherein the Court ordered that service be made on DDM on or before May 22, 2023; and emphasized that "failure to comply [with that deadline] . . . ***will result in dismissal with prejudice*** pursuant to Federal Rule of Civil Procedure 41(b)

for failure to prosecute."[8]

For these reasons and the reasons set forth herein, DDM respectfully submits that the Amending Plaintiffs' Motion and the City of Lakewood's Motion should be denied.

## III.   LAW AND ARGUMENT.

### A.   The Out–of–State Plaintiffs' Motion Should be Denied Because the Amended Complaints Cannot Withstand a Motion to Dismiss.

Assuming *arguendo*, the Out–of–State Plaintiffs somehow establish good cause to amend their complaints, the Out–of–State Plaintiffs' Motion should be denied on futility grounds, as their amended complaints cannot withstand a motion to dismiss because the district courts in the Out–of–State Cases lack personal jurisdiction over DDM. *See Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 961 (internal citations omitted) (denying a motion to amend because the amended complaint would not survive a motion to dismiss for lack of personal jurisdiction); *see also Stenger v. Marriott Int'l Corp. Headquarters*, No. 1:15–CV–30, 2016 U.S. Dist. LEXIS 5957, at *2 (S.D. Ohio Jan. 19, 2016) (denying plaintiff's motion for leave to amend, holding the amendment would be futile because the Court's exercise of personal jurisdiction over the defendant would not comport with the Due Process Clause of the Fourteenth Amendment to the United States Constitution).

As explained below, the Out–of–State Plaintiffs have failed to meet their burden of establishing that the federal district courts have personal jurisdiction over DDM in the

---

[8] *See In re National Prescription Opiate Litigation*, No. 1:17-md-2804-DAP, Order Regarding Service of Process at 5, ECF No. 4986 (N.D. Ohio Apr. 6, 2023).

Out–of–State Cases. As such, the Out–of–State Plaintiffs' Motion should be denied as futile because any claims against DDM by the Out–of–State Plaintiffs in the Out–of–State Cases are subject to dismissal under Fed.R.Civ.P. 12(b)(2).

**B.    The Out–of–State Plaintiffs' Motion Should be Denied Because District Courts in Missouri, Kentucky, and Massachusetts Lack Personal Jurisdiction Over DDM.**

In all cases, a court's exercise of personal jurisdiction must comply with Constitutional due process requirements. *Bristol–Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 263 (2017); *Community Trust Bancorp, Inc. v. Community Trust Fin. Corp.*, 692 F.3d 469, 471 (6th Cir. 2012). The constitutionally permissible exercise of personal jurisdiction may involve either "'general' (sometimes called 'all–purpose') jurisdiction" or "'specific' (sometimes called 'caselinked') jurisdiction." *Bristol–Myers Squibb*, 582 U.S. at 262. Plaintiffs bear the burden of proving personal jurisdiction where it is challenged. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887–88 (6th Cir. 2002). As explained below, there is neither general nor specific personal jurisdiction over DDM outside of Ohio.

**1.    DDM is Not Subject to General Jurisdiction in the Out–of–State Cases.**

General jurisdiction, as its name implies, extends to "any and all claims" brought against a defendant for events and conduct which occurs anywhere in the world. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 358 (2021) (internal citations omitted). The "paradigm" forums where a court may exercise general jurisdiction over a

corporation is the corporation's "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). To be subject to general personal jurisdiction in a state, an out–of–state defendant's affiliations with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Only in an "exceptional" case will a corporation be subject to general jurisdiction in a state other than its state of incorporation and state where its principal place of business is located. *Id.* at 139 n.19.

DDM is incorporated in Ohio and has its principal place of business in Ohio. (*See* Thomas McConnell Decl. ("**McConnell Decl.**") ¶ 6, attached hereto as **Ex. "A"**). Therefore, DDM is "at home" in Ohio for purposes of general jurisdiction. *See Daimler*, 571 U.S. at 137. That is the beginning and the end of the inquiry. The Out–of–State Plaintiffs have alleged no facts to support a finding that this is an "exceptional" case where general jurisdiction would nevertheless be proper in federal courts in Missouri, Kentucky, and Massachusetts. As such, the Out–of–State Plaintiffs have not met their burden of establishing that any of their respective jurisdictions have general jurisdiction over DDM.

## 2. DDM is Not Subject to Specific Jurisdiction in the Out–of–State Cases.

Specific jurisdiction requires a close nexus between the defendant's activities, the forum state, and the plaintiff's claims. *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005). The Sixth Circuit has adopted "a three–prong test" that requires a court to find

(1) that the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state," (2) that the plaintiff's cause of action "arise[s] from the defendant's activities" in the forum state, and (3) that the defendant's conduct has "a substantial enough connection" with the forum state to make the exercise of jurisdiction over the defendant "reasonable." *Id.* (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Here, there is no conceivable basis for the exercise of specific personal jurisdiction over DDM in the Out–of–State Cases. **Critically, DDM has never owned any stores or conducted any business outside the State of Ohio.** (*See* McConnell Decl. ¶ 6; Jason Briscoe's Dep., 87:5–16, pertinent portions attached hereto as **Ex. "B"**; s*ee also* Thomas McConnell Dep., 19:9–15, pertinent portions attached hereto as **Ex. "C"**) (testifying that all of DDM's stores are located in Ohio; explaining that while DDM explored expanding its business out of state 10 to 15 years ago, it made the conscious decision to limit its operations to Ohio for a variety of business reasons).

If sworn testimony from DDM's corporate representatives was not enough, the fact that DDM has never owned or operated any stores outside of Ohio should have been clear to the Out–of–State Plaintiffs before they sought leave to amend their complaints.

> **a.    The City of Springfield Knew or Should Have Known DDM is Not Subject to Specific Jurisdiction in Missouri.**

The fact that DDM has never owned or operated any stores in Missouri should have been clear to the amending plaintiff (the "***City of Springfield***") in *City of Springfield v.*

*Purdue Pharma, L.P., et al*., No. 1:18–op–45899–DAP (N.D. Ohio May 30, 2018) before it sought leave to amend its complaint because the City of Springfield knew or should have known that a pharmacy in its town called "***Dan's Discount Drug Mart***" was an entirely different company.[9]

Specifically, on February 8, 1997, Mr. Daniel Drewry incorporated TYBG, Inc. for the purpose of "engaging in all types of retail and wholesale activity, primarily but not limited to pharmaceutics, including the manufacture and sale of pharmaceuticals and other related products" by filing Articles of Incorporation with the Missouri Secretary of State's Office. (*See* Articles of Incorporation, attached hereto as **Ex. "D"**). On July 24, 1998, TYBG, Inc. registered the name "Dan's Discount Drug Mart" by filing a Registration of Fictitious Name with the Missouri Secretary of State's Office, which expired on October 17, 2009. (*See* Application for Fictious Name Registration, attached hereto as **Ex. "E"**; *see also* Fictitious Name Expiration, attached hereto as **Ex. "F"**).[10] On or about March 2000, TYBG, Inc. acquired the property where Dan's Discount Drug Mart operated – which is located at 2625 N. Kansas Expressway in Springfield, Missouri – and has used the name "Dan's Discount Drug" to identify the parcel with the Greene County, Missouri,

---

[9] *See* McConnell Decl. ¶ 9 (attesting Dan's Discount Drug Mart has no affiliation with DDM).

[10] "Dan's Discount Drug Mart" was registered to Show–Me Pharmacy, Inc., from April 7, 2010, through June 10, 2015. (*See* Application for Fictitious Name, attached hereto as **Ex. "G"**; *see also* Fictitious Name Expiration, attached hereto as **Ex. "H"**).

Assessor's Office. (*See* Assessor's Property Card, attached hereto as **Ex. "I"**). DDM's authorized representative reviewed these public filings and confirmed that they were not filed by or on DDM's behalf.[11] Finally, "Dan's Discount Drug Mart" used an entirely different logo in connection with its business.[12]



*The logo affixed to the outside of Dan's Discount Drug Mart at 2625 N. Kansas Expressway in Springfield, Missouri.*



---

[11] *See* McConnell Decl. ¶ 9.

[12] *Dan's Discount Drug Mart*, Google Earth, https://earth.google.com/web/search/2625+North+Kansas+Expressway,+Springfield,+MO/@37.2453985,–93.31111581,388.10193871a,0d,59.99999998y,271.11464566h,82.26490046t,0r/data=CiwiJgokCRmAUcsh00NAEUS_WsJQ0kNAGXwEDy_w4VTAIYzj–foD41TAQgIIASIaChZFZ1hrN1dmbVExbGJOcldzS0I2UnlBEAIyKQonCiUKITE2eWJrVjI2c2VoTUx2ZWVyRlJycTZ0MVhyV3laMkpLcyABOgMKATBCAggASggIxeL_qAUQAQ (last visited Dec. 26, 2024).

*DDM's Logo as shown on* https://discount–drugmart.com/. *DDM is the registered holder of the above service mark through a registration issued by United States Patent and Trademark Office (Discount Drug Mart – Food Market, Registration No. 6435467, U.S. Patent & Trademark Office)*[13]

And used a completely different website, dansdiscountdrugmart.com, than DDM, discount–drugmart.com;[14] and maintained a unique online presence in connection with its business, including Yelp [15] and MapQuest.[16]

Based upon the foregoing, the City of Springfield knew or should have known DDM is not subject to specific jurisdiction in Missouri when it filed its Motion. For this reason, and the reasons set forth above, the City of Springfield's Motion should be denied.

> **b.      Elliott County Knew or Should Have Known DDM is not Subject to Specific Jurisdiction in Kentucky.**

The fact that DDM has never owned or operated any stores in Kentucky should have been clear to the amending plaintiff ("***Elliott County***") in *Fiscal Court of Elliott County v. AmerisourceBergen Drug Corporation, et al.*, No. 1:18–op–45393–DAP (N.D. Ohio Mar. 22, 2018) before it sought leave to amend its complaint because Elliott County knew or should have known that a pharmacy called "***Discount Drug Mart, Inc.***" ("***Local Drug***

---

[13] *See* McConnell Decl. ¶ 7.

[14] *See id.* ¶ 9.

[15] *Dan's Discount Drug Mart–Springfield, MO,* Yelp, https://www.yelp.com/biz/dans–discount–drug–mart–springfield (last visited Dec. 26, 2024); *see also* McConnell Decl. ¶ 9.

[16] *Dan's Discount Drug Mart,* MapQuest, https://www.mapquest.com/us/missouri/discount–drug–mart–405801356 (last visited Dec. 26, 2024); *see also* McConnell Decl. ¶ 9.

*Mart*") which was operating in Sandy Hook, Elliott County, Kentucky was an entirely different company.[17]

Specifically, Local Drug Mart was incorporated in Kentucky on June 1, 1987. (*See* Articles of Incorporation, attached hereto as **Ex. "J"**). From 2006 through 2024, the Local Drug Mart filed annual reports with the Kentucky Secretary of State, all which list "Deborah Brewer of Sandy Hook, Kentucky" as its sole officer and registered agent. (*See* Local Drug Mart Annual Reports 2006-2024, attached collectively hereto as **Ex. "K").** DDM's authorized representative reviewed these public filings and confirmed that they were not filed by or on DDM's behalf.[18] The Local Drug Mart uses an entirely different logo in connection with its business.[19]

---

[17] *See* McConnell Decl. ¶ 10 (attesting Local Drug Mart has no affiliation with DDM).

[18] *See* McConnell Decl. ¶ 10.

[19]*Discount Drug Mart*, Google Earth, https://earth.google.com/web/search/Discount+Drug+Mart,+Inc.,+Kentucky+7,+Sandy+Hook,+KY/@38.08656339,−83.12603874,234.81303678a,0d,60y,45.03184601h,81.46761153t,0r/data=CqMBGnUSbwolMHg4ODQ0NDcwZjYyNGZkMTg1OjB4ODM5OTYwNWJmZmRjY2FlMxlaFTzgFQtDQCFj1uZaD8hUwCo0RGlzY291bnQgRHJ1ZyBNYXJ0LCBJbmMuLCBLZW50dWNreSA3LCBTYW5keSBIb29rLCBLWRgBIAEiJgokCZfFgS41oEJAEQRs01SjnkJAGXQnRlLpU1fAIZ5D6QNOVFfAQgIIASIaChZfeTV0VVc5eC1fSlcxQzFFUWRLaFlBEAI6AwoBMEICCABKDQj_____8BEAA_____(last visited Dec. 26, 2024).

12



*The logo affixed to the outside of the Local Drug Mart at 28 State Hwy 556 in Sandy Hook, Elliott County, Kentucky.*

And maintained a unique online presence in connection with its business, including Yelp[20] and Facebook.[21]

Based upon the foregoing, Elliott County knew or should have known DDM is not subject to specific jurisdiction in Kentucky when it filed its Motion. For this reason, and the reasons set forth above, Elliott County's Motion should be denied.

> c.  **DDM is Not Subject to Specific Jurisdiction in Massachusetts.**

The amending plaintiff (the "***Local 404 Teamsters***") in *Teamsters Health Servs. & Ins. Plan Local 404 v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45001–DAP (N.D. Ohio

---

[20] *Discount Drug Mart, Sandy Hook, KY*, Yelp, https://www.yelp.com/biz/discount–drug–mart–sandy–hook (last visited Dec. 26, 2024); *see also* McConnell Decl. ¶ 10.

[21] *Discount Drug Mart, Inc.*, Facebook, https://www.facebook.com/people/Discount–Drug–Mart–Inc/100054614672842/ (last visited Dec. 26, 2024); *see also* McConnell Decl. ¶ 10.

Nov. 28, 2017) describes itself as a "multi–employer employee welfare benefit plan,[22] within the meaning of the Employee Retirement Income Security Act, 29 U.S.C. § 1001(2), and § 1002(37). The Local 404 Teamsters seek to hold DDM liable for payments or reimbursements it made to its **members** for "some or the entire purchase price for prescription opioids which were manufactured, marketed, promoted, sold, and/or distributed by the Defendants." (*Teamsters Health Servs. & Ins. Plan Local 404 v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45001–DAP (N.D. Ohio Nov. 28, 2017), Compl. ¶¶ 1, 27)). Critically, Local 404 Teamsters members consist of employees of employers in **western Massachusetts**[23] who have signed a collective bargaining agreement with the Local 404 Teamsters Union, and certain of their immediate family members. (*See Teamsters Local Plan Health Services & Insurance Plan v. King Pharmaceuticals, Inc., et al.*, New York Supreme

---

[22] A recent collective bargaining agreement between CS–MA, LLC d/b/a Construction Service and the Local 404 Teamsters is illustrative of how an employee becomes a member of the Local 404 Teamsters and becomes entitled to participate in the Local 404 Teamsters health insurance plan. ("[t]he Employer agrees to make payments to the Teamsters Health Services and Insurance Plan of Local Union No. 404 for each and every employee covered by this Agreement, whether such employee is a regular or probationary employee, irrespective of his status as a member or non–member of the Union from the first hour of employment subject to this Agreement"). *See Collective Bargaining Agreement by and between General Teamsters, Chauffeurs, Warehousemen and Helpers, Building Materials, Heavy and Highway Construction Employees Local Union No. 404 and CS–MA, LLC d/b/a Construction Service May 1, 2021 to April 30, 2025,* https://www.mass.gov/doc/teamsters–local–404–redi–mix–04–30–2025/download (Apr. 20, 2021) (last visited Dec. 26, 2024).

[23] As of November 2024, Local 4040 Teamsters represented 1,300 workers and their families throughout **western Massachusetts**. *See American Medical Response Teamsters in Massachusetts Unanimously Authorize Strike,* International Brotherhood of Teamsters (2024), https://teamster.org/2024/11/american–medical–response–teamsters–in–massachusetts–unanimously–authorize–strike/ (last visited Dec. 26, 2024).

Court No. 154315/2015, Compl., Ex. A, ¶ 11; *see also* Return of Organization Exempt from Income Tax (Form 990), at p. 2, attached hereto as **Exhibit "L").**

Rather than comply with this Court's mandate that the Amending Plaintiffs include plaintiff–and–jurisdiction–specific factual allegations and claims establishing good cause for leave to amend *in each individual case*, Local 404 Teamsters baldly states that it is "asserting national, class-wide RICO claims against [DDM] based on its participation in a RICO enterprise through an ongoing pattern of violative acts, evidenced by a number of factors *including a greater than 5% market share in a multiplicity of jurisdictions*." (Motion, Exhibit "A" at n.1).  While Local 404 Teamsters make a conclusory statement that DDM was involved in a RICO enterprise through an ongoing pattern of violative acts, at no point does Local 404 Teamsters allege that DDM conducted any business in Massachusetts, that DDM sold a single opioid to one of its members, or that the Local 404 Teamsters paid for or reimbursed one of its members for an opioid pill that DDM sold, nor could it because DDM has never done any business in Massachusetts.

Finally, in its Motion, the Out–of–State Plaintiffs state: "[i]f permitted to amend, Plaintiffs here would supplement their existing pleadings with claims substantially similar to those asserted against chain pharmacies in the first amended CT8 bellwether complaint (*Cobb County v. Purdue Pharma, L.P., et al*, No. 1:18–op–45817–DAP, Am. Compl., ECF No. 22 (N.D. Ohio July 14, 2021) (adjusted for the law of their particular

jurisdiction) and add additional defendant specific facts, including those detailed herein." (Motion at 1, 5-6). Importantly, no RICO claims have been asserted against the chain pharmacies, which makes it unclear what – if any – claims that the Local 404 Teamsters will assert against DDM if this Court were to grant the Local 404 Teamsters leave to amend its complaint. For the reasons set forth above, the Local 404 Teamsters Motion should be denied.

### C. The New York Plaintiff's Motion Should be Denied Because the Amended Complaint Cannot Withstand a Motion to Dismiss.[24]

The amending plaintiff (the "***New York Plaintiff***") in *American Federation of State, County, and Municipal Employees District Council 37 Health & Security Plan, et al. v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45013–DAP (N.D. Ohio Dec. 12, 2017) describes itself as a "non–profit health, self–funded, and welfare benefit plan" which provides supplemental health benefits, including purchasing and reimbursing its members for prescription drugs, including opioids. (*See American Federation of State, County, and*

---

[24] The New York Plaintiff knew or should have known that seven (7) cities from the State of New York had previously filed lawsuits against DDM in this MDL, and in each case, the City/Plaintiff voluntarily dismissed DDM because they recognized and understood that DDM is not subject to personal jurisdiction in the State of New York because it did not transact any business in the State of New York. *See City of Amsterdam v. Purdue Pharma LP, et al.*, No. 1:19–cv–00896–MAD–CFH (N.D.N.Y.); *City of Auburn v. Purdue Pharma LP, et al.*, No. 1:19–op–45843–DAP (N.D. Ohio); *City of Buffalo v. Purdue Pharma LP, et al.*, No. 1:19–op–46104–DAP (N.D. Ohio); *City of Ogdensburg v. Purdue Pharma LP, et al.*, No. 1:19–op–45852–DAP (N.D. Ohio); *City of Poughkeepsie v. Purdue Pharma LP, et al.*, No. 1:19–cv–06800–VM (S.D.N.Y.); *City of Rochester v. Purdue Pharma LP, et al.*, No. 1:19–op–45853–DAP (N.D. Ohio); and *City of Saratoga Springs v. Purdue Pharma LP, et al.*, No. 1:19–op–458357–DAP (N.D. Ohio).

*Municipal Employees District Council 37 Health & Security Plan, et al. v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45013–DAP, Compl. ¶ 15, ECF No. 1 (N.D. Ohio Dec. 12, 2017)). New York City's largest public employee union, the New York Plaintiff's benefit plans cover approximately 125,000 active union members as well as 50,000 retirees and their families—totaling over 300,000 lives. (*See id.*).

Critically, its union members consist of "[a]ll AFSCME local unions whose members are employed by New York City, New York and its departments, agencies, authorities, and cultural institutions, and AFSCME local unions whose members are employed by the Judicial Conference in the City of New York, except those whose members are employed in State Negotiating Unit #87."[25] Despite the fact that the ***New York Plaintiff only represents the interests of New York City employees and retirees***, the New York Plaintiff seeks to hold DDM liable for payments or reimbursements it made to its ***members*** for "some or the entire purchase price for prescription opioids which were manufactured, marketed, promoted, sold, and/or distributed by the Defendants." (*See American Federation of State, County, and Municipal Employees District Council 37 Health & Security Plan, et al. v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45013–DAP, Compl. at 1, ECF No. 1 (N.D. Ohio Dec. 12, 2017)).  Thus, the New York Plaintiff is attempting to pursue

---

[25] *See Constitution for New York City District Council of AFSCME Municipal Local Unions, Number 37*, https://www.dc37.net/wp–content/uploads/about/graphics/pdf/dc37constitution.pdf (last visited Dec. 26, 2024).

the same approach as the Local 404 Teamsters, which is to hold DDM responsible for selling opioids that it did not sell.[26]

Again, while the New York Plaintiff makes a conclusory statement that DDM was involved in a RICO enterprise through an ongoing pattern of violative acts, at no point does the New York Plaintiff allege that DDM conducted any business in New York City, that DDM sold a single opioid to one of its members, or that the New York Plaintiff paid for or reimbursed one of its members for an opioid pill that DDM sold, nor could it because DDM has never done any business in New York City.

**D.     The Local 404 Teamsters and New York Plaintiff's Motions Should be Denied Because These Plaintiffs Lack Standing to Pursue Claims Against DDM.**

As this Court has recognized, in order to establish standing, the Amending Plaintiffs must "plausibly plead an injury in fact that is fairly traceable to the actions of [DDM]." *See In re Nat'l Prescription Opiate Litig.*, 589 F. Supp. 3d 790, 823–824 (internal citations omitted); *see also Krueger v. Experian Info. Sols., Inc.*, 6th Dist. No. 20–2060, 2021 U.S. App. LEXIS 27699 at *2 (Sept. 13, 2021) ("[a] plaintiff has standing if he suffered an injury in fact, fairly traceable to the defendant's alleged misconduct, which the relief he seeks would likely redress.") (*citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As explained above, the Local 404 Teamsters and New York Plaintiff have no

---

[26] For brevity, the arguments set forth in ¶¶ 2–3 of Section III(B)(2)(c), *supra*, are hereby incorporated by reference.

evidence that: 1) DDM conducted any business in their respective jurisdictions; 2) DDM sold a single opioid to one of its members; or 3) that the Local 404 Teamsters and New York Plaintiff paid for or reimbursed one of its members for an opioid pill that DDM sold. As such, these amending plaintiffs have not – and cannot – plausibly plead an injury in fact that is fairly traceable to DDM, which is fatal to their claims. Accordingly, the Local 404 Teamsters and New York Plaintiff's Motion should be denied.

> ### E. The City of Lakewood's Motion Should be Stricken and its Claims against DDM Dismissed with Prejudice.

Finally, the City of Lakewood ("*Lakewood*") seeks leave to amend its complaint to join and assert claims against DDM in the case styled *City of Lakewood v. Purdue Pharma, L.P., et al.*, No. 1:18–op–45240–DAP (N.D. Ohio). As explained in DDM's Motion to Dismiss Lakewood's Action with prejudice for Failure of Service of Process, which is incorporated herein by reference, either through oversight or an attempt to disguise its failure to abide by this Court's Order Regarding Service of Process,[27] Lakewood has improperly joined in the Amending Plaintiffs' Motion. Since Lakewood has already sought leave to join DDM in its action, its efforts to amend its Complaint to "add DDM as a party" should be stricken, and the Court should dismiss Lakewood's claims against DDM because – as this Court has already ruled – the consequence for failing to comply with the Court's April 6, 2023 Order is dismissal with prejudice.

---

[27] *See In re National Prescription Opiate Litigation*, No. 1:17-md-2804-DAP, Order Regarding Service of Process at 5, ECF No. 4986 (N.D. Ohio Apr. 6, 2023).

IV.    C̲O̲N̲C̲L̲U̲S̲I̲O̲N̲.̲

Without any operations or employees outside of Ohio, DDM has not personally availed itself to general jurisdiction, far less conducted activities outside of Ohio that relate to the Amending Plaintiffs' claims regarding the distribution and sale of prescription opioids. Under these circumstances, the exercise of personal jurisdiction over DDM in these cases would be patently unreasonable. Further, Lakewood's Motion should be stricken, and its claims against DDM should be dismissed with prejudice for the reasons set forth in DDM's Motion to Dismiss. As such, the Court should deny the Amending Plaintiffs and the City of Lakewood's Motions.

Respectfully submitted,

/s/ Gregory E. O'Brien
Gregory E. O'Brien (0037073)
Derek P. Hartman (0104987)
CAVITCH FAMILO & DURKIN CO., L.P.A.
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114
Telephone    (216) 621–7860
Facsimile    (216) 621–3415
gobrien@cavitch.com
dhartman@cavitch.com
*One of the Attorneys for Defendant*
*Discount Drug Mart, Inc.*

## CERTIFICATE OF SERVICE

A copy of the foregoing **DISCOUNT DRUG MART, INC.'S MEMORANDUM IN OPPOSITION TO CORRECTED OMNIBUS MOTION FOR LEAVE TO AMEND TO ADD DISCOUNT DRUG MART, INC. AND MEMORANDUM OF LAW IN SUPPORT** was filed and served this 16th day of January, 2025 via the Court's ECF system.

/s/ Gregory E. O'Brien
*One of the Attorneys for Defendant*
*Discount Drug Mart, Inc.*