**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | MDL No. 2804 |
| | Case No. 1:17-md-02804-DAP |
| THIS DOCUMENT RELATES TO: | |
| | Judge Dan Aaron Polster |
| OptumRx and Express Scripts cases listed in ECF Nos. 5546-1; 5547-1; 5548-1; 5565-1 | |

**THE PBMS' JOINT OPPOSITION**
**TO PLAINTIFFS' OMNIBUS MOTIONS FOR LEAVE TO AMEND**

[PART I]

Brian D. Boone
Brandon C.E. Springer
Matthew P. Hooker
William W. Metcalf
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com
brandon.springer@alston.com
matthew.hooker@alston.com
will.metcalf@alston.com

Andrew Hatchett
Grace Assaye
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com

*Attorneys for UnitedHealth Group
Incorporated; Optum, Inc.; OptumInsight,
Inc.; OptumInsight Life Sciences, Inc.;
OptumRx, Inc.; OptumRx Discount Card
Services, LLC; Optum Perks, LLC;
OptumHealth Care Solutions, LLC;
OptumHealth Holdings, LLC; and Optum
Health Networks, Inc.*

Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
T: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
T: (213) 443-3000
sagevandenheuvel@quinnemanuel.com

Tara MacNeill
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
T: (305) 402-4880
taramacneill@quinnemanuel.com

*Attorneys for Express Scripts, Inc.; Express
Scripts Administrators, LLC; Medco Health
Solutions, Inc.; ESI Mail Order Processing,
Inc.; ESI Mail Pharmacy Service, Inc.;
Express Scripts Pharmacy, Inc.; Evernorth
Health, Inc. (formerly Express Scripts
Holding Company); and Express Scripts
Specialty Distribution Services, Inc.*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. iv

INTRODUCTION ............................................................................................... 1

BACKGROUND .................................................................................................. 8

LEGAL STANDARD ........................................................................................ 13

ARGUMENT ..................................................................................................... 15

I.      THE OMNIBUS MOTIONS DO NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE, SIXTH CIRCUIT PRECEDENT, OR THE COURT'S FINAL AMENDMENT ORDER. ............................................... 15

      A.      The Moving Plaintiffs do not identify the claims and allegations they seek to pursue in each individual case. ............................................... 16

      B.      The Moving Plaintiffs do not state with particularity the reasons why good cause for leave to amend exists in each individual case. .......... 20

II.     THE MOVING PLAINTIFFS FAIL TO SHOW GOOD CAUSE UNDER RULE 16. ....................................................................................................... 22

      A.      The Moving Plaintiffs were not diligent in seeking leave to amend. ........ 22

              1.      Many plaintiffs pursued claims against the PBMs years before the *Jefferson County* productions. ....................................... 24

              2.      The *Jefferson County* productions did not provide "new" information....................................................................................... 29

              3.      The City of Rochester's amended complaint relies overwhelmingly on documents that were produced in the early stages of this MDL, long before the amendment deadline or any discovery in *Jefferson County*. ............................ 38

              4.      The *Jefferson County* productions cannot provide good cause to add claims against the OptumRx and Express Scripts affiliates that were not defendants and did not produce documents in *Jefferson County*. ....................................... 46

              5.      Even if the Moving Plaintiffs received "new" information in the *Jefferson County* productions, they still were not diligent in seeking amendment nearly a year and a half after receiving those documents............................................................. 50

i

B.    The proposed amendments are highly prejudicial to the PBMs. ...............51

    1.    The Moving Plaintiffs' extreme delay is inherently prejudicial. ....................................................................52

    2.    The PBMs would be prejudiced by the dramatic expansion of the MDL. .....................................................55

    3.    The amendment process prejudices the PBMs. ............................57

C.    Settlement leverage is an improper basis for leave to amend. ...................58

III.    INDIVIDUAL PLAINTIFFS FAIL TO SHOW GOOD CAUSE UNDER RULE 16 AND FAIL TO SATISFY RULE 15'S STANDARD FOR LEAVE TO AMEND. ..............................................59

A.    Case-specific reasons bar a finding of good cause in many cases. ............60

    1.    Many Moving Plaintiffs are represented by counsel who were not diligent in seeking leave to amend. ................................60

    2.    Many Moving Plaintiffs are in jurisdictions where Defendants have zero percent market share or negligible market share. ...................................................................61

    3.    Many Moving Plaintiffs have contractual relationships with the PBMs that bar or affect their ability to seek leave to amend. ....................................................................62

    4.    Many Moving Plaintiffs did not timely implement a litigation hold. .................................................................63

    5.    Many Moving Plaintiffs failed to comply with the Court's orders regarding Plaintiff Fact Sheets. ...........................................65

    6.    The PBMs are prejudiced in their ability to argue allocation of fault and third-party liability....................................66

B.    Case-specific reasons render amendment futile in many cases. ................70

    1.    Many Moving Plaintiffs fail to state a claim for relief. ................70

    2.    Many Moving Plaintiffs' claims are procedurally improper. ........72

    3.    Many Moving Plaintiffs' claims for public nuisance are futile under controlling state law. ...................................74

    4.    Many Moving Plaintiffs' RICO claims are time-barred. ...............78

5. Many Moving Plaintiffs' public nuisance claims are time-barred. ........................................................................82

6. Many Moving Plaintiffs lack standing to assert New York statutory claims. ..........................................................87

C. Each individual Moving Plaintiff should be denied leave to amend. ........88

CONCLUSION……………………………………………………………………..6597

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Ex parte Abbott Labs.*,
   342 So. 3d 186 (Ala. 2021) ....................................................................................82, 83

*Acevedo-Villalobos v. Hernandez*,
   22 F.3d 384 (1st Cir. 1994) ...................................................................... *passim*

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
   483 U.S. 143 (1987) ..........................................................................................78

*Alaska v. Express Scripts, Inc. et al.*,
   No. 3:23-cv-00233 (D. Alaska) .........................................................................57

*Albany County v. Express Scripts, Inc. et al.*,
   No. 1:24-cv-00777 (N.D.N.Y.) ..........................................................................57

*Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*,
   764 F.3d 1268 (10th Cir. 2014) .........................................................................79

*Allegany County, New York v. Purdue Pharma L.P., et al.*,
   No. 1:19-op-46151, ECF No. 1-5 (Aug. 27, 2019) ...........................................10, 60

*Alleghany County, Virginia v. Purdue Pharma L.P., et al.*,
   No. 1:19-op-45700, ECF No. 43 (Oct. 29, 2019) ....................................................9

*Amherst County, Virginia v. Mallinckrodt PLC et al.*,
   No. 1:20-op-45046, ECF No. 1-2 (Nov. 13, 2019) ...........................................10, 11

*Anne Arundel County v. Express Scripts, Inc. et al.*,
   No. 1:24-cv-00090 (D. Md.) ..............................................................................57

*Armatas v. Haws*,
   2021 WL 5356028 (6th Cir. Nov. 17, 2021) .......................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..........................................................................................15

*Averette v. Bayer Healthcare Pharms. Inc.*,
   2014 WL 1246851 (E.D. La. Mar. 25, 2014) ......................................................84

*Baker v. Hickman*,
   969 So. 2d 441 (Fla. Dist. Ct. App. 2007) ..........................................................84

*Ballreich Bros. v. Criblez*,
   2010 WL 2735733 (Ohio Ct. App. 2010) ...............................................................69

*Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168 (6th Cir. 2023) ...............................................................79, 81

*Barrett v. Dresser, LLC*,
   2021 WL 53658 (W.D. La. Jan. 6, 2021) ...............................................................84

*Bd. of the City of Chi., School Dist. No. 299 v. Cephalon, Inc., et al.*,
   No. 1:19-op-46042, ECF No. 6-1 (N.D. Ohio Oct. 26, 2020) ...............................73

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................15, 70

*Best W. Int'l, Inc. v. Melbourne Hotel Invs., LLC*,
   2008 WL 2945513 (D. Ariz. July 28, 2008) ...........................................................59

*Bey v. WalkerHealthCareIT, LLC*,
   2017 WL 10992207 (S.D. Ohio July 25, 2017)..................................................16, 71

*Beydoun v. Sessions*,
   871 F.3d 459 (6th Cir. 2017) ...........................................................................16, 17

*Board of Supervisors, Prince William County, Virginia v. Purdue Pharma L.P., et al.*,
   No. 1:19-op-45687, ECF No. 42 (Oct. 29, 2019) ....................................................9

*Botetourt County, Virginia v. Mallinckrodt PLC et al.*,
   No. 1:20-op-45064, ECF No. 1-3 (Nov. 13, 2019)......................................10, 11, 60

*Brass Reminders Co. v. RT Eng'g Corp.*,
   844 F. App'x 813 (6th Cir. 2021) ...........................................................................62

*Buchanan County, Virginia v. Purdue Pharma, L.P, et al.*,
   No. 1:19-op-45253, ECF No. 1-1 (Dec. 13, 2018) ......................................10, 11, 28

*Bucks County v. Express Scripts, Inc. et al.*,
   No. 2024-06016 (Pa. Ct. Common Pleas).................................................................58

*Cabell County Comm'n v. AmerisourceBergen Drug Corp.*,
   No. 1:17-op-45053, ECF No. 190 (Sept. 10, 2019)....................................................9

*Carpenter v. Texaco, Inc.*,
   646 N.E.2d 398 (Mass. 1995) ..................................................................................85

*Charlotte County, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45851, ECF No. 34 (Dec. 20, 2019)......................................................9

*Church Joint Venture, L.P. v. Blasingame*,
   947 F.3d 925 (6th Cir. 2020) ..................................................................51, 52

*City of Alexandria, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45246, ECF No. 69 (July 3, 2019) ..................................9, 25

*City of Allentown v. Express Scripts, Inc. et al.*,
   No. 2024-C-2397 (Pa. Ct. Common Pleas)..............................................57

*City of Atlanta et al. v. Mylan Pharms., et al.*,
   No. 1:23-cv-01193 (N.D. Ga.) .................................................................57

*City of Auburn v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45843, ECF No. 1-4 (June 28, 2019) .............................10, 60

*City of Boston et al. v. Express Scripts, Inc. et al.*,
   No. 1:24-cv-10525 (D. Mass.) ..................................................................57

*City of Bristol, Virginia v. Purdue Pharma L.P., et al.*,
   No. 1:19-op-45719, ECF No. 45 (Oct. 29, 2019) ......................................9

*City of Chesapeake, Virginia v. Purdue Pharma L.P., et al.*,
   No. 1:19-op-45712, ECF No. 38 (Oct. 29, 2019) ......................................9

*City of Emporia, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-46850, ECF No. 24 (Dec. 20, 2019).....................................9

*City of Fredericksburg, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45898, ECF No. 33 (Dec. 20, 2019)...................................8, 9

*City of Galax, Virginia v. Purdue Pharma, L.P, et al.*,
   No. 1:19-op-45243, ECF No. 70 (July 3, 2019) ..................................9, 25

*City of Huntington v. AmerisourceBergen Drug Corp.*,
   96 F.4th 642 (4th Cir. 2024) ....................................................................77

*City of Huntington v. AmerisourceBergen Drug Corp.*,
   No. 1:17-op-45054, ECF No. 76 (Sept. 10, 2019)......................................9

*City of Lock Haven v. Express Scripts, Inc. et al.*,
   No. 625-2024 (Pa. Ct. Common Pleas).....................................................58

*City of Martinsville v. Purdue Pharma, L.P., et al.*,
   No. CL18000240-00 (Va. Cir. Ct.)...........................................................57

*City of Norton v. Purdue Pharma L.P.*,
   No. 1:19-op-45249...................................................................................25

*City of Norwich v. Purdue Pharma, L.P. et al.*,
No. 1:19-op-45840, ECF No. 74 (Oct. 30, 2019) ...................................................9

*City of Roanoke, Virginia v. Purdue Pharma L.P., et al.*,
No. 1:19-op-45696, ECF No. 48 (Oct. 29, 2019) ...................................................9

*City of Rochester v. Purdue Pharma, L.P. et al.*,
No. 1:19-op-45853-DAP, ECF No. 110 (N.D. Ohio Mar. 6, 2024) ........................26

*City of Salem, Virginia v. Purdue Pharma L.P., et al.*,
No. 1:19-op-45697, ECF No. 41 (Oct. 29, 2019) ...................................................9

*City of Springfield, Missouri v. Purdue Pharma, L.P. et al.*,
No. 1:18-op-45899, ECF No. 1 (May 30, 2018)..................................10, 11, 25, 28, 71, 72, 79

*CJ Consultants, LLC v. Window World, Inc.*,
2022 WL 4354265 (W.D. Mich. Sept. 20, 2022) ...........................................1445

*Clark County v. Purdue Pharma, L.P., et al.*,
1:19-op-46168 (N.D. Ohio Sept. 12, 2019), ECF No. 1-3....................................79

*Clark v. Viacom Int'l Inc.*,
617 F. App'x 495 (6th Cir. 2015) .......................................................................80

*Clinton County v. Express Scripts, Inc. et al.*,
No. 624-2024 (Pa. Ct. Common Pleas)...............................................................58

*Kentucky ex rel. Coleman v. Express Scripts, Inc. et al.*,
No. 5:24-cv-00303 (E.D. Ky.) ............................................................................58

*Condon v. A.H. Robins Co.*,
349 N.W.2d 622 (Neb. 1984)..............................................................................86

*Cook v. Lankford*,
17 F. App'x 351 (6th Cir. 2001) ...............................................................74, 90, 1375

*County Board of Arlington County, Virginia v. Purdue Pharma, LP, et al.*,
No. 1:21-op-45078, ECF Nos. 1-3–1-7 (Nov. 11, 2019)......................................10

*County of Walker v. Purdue Pharma, L.P., et al.*,
No. 1929076 (Tex. Dist. Ct.) ..............................................................................57

*County of Webb v. Purdue Pharma et al.*,
No. 1:18-op-45175 (N.D. Ohio Mar. 16, 2019), ECF No. 73................................49

*Crigler v. Salac*,
438 So.2d 1375 (Ala. 1983) ...............................................................................67

*Crown Battery Mfg. Co. v. Club Car, Inc.*,
   185 F. Supp. 3d 987 (N.D. Ohio 2016) ................................................................. 63

*Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*,
   310 F. App'x 858 (6th Cir. 2009) ..................................................................... 21, 23

*Crutcher v. Ct. Psychiatric Clinic*,
   2017 WL 5514812 (6th Cir. Apr. 28, 2017) ......................................................... 72

*Culpeper County, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45849, ECF No. 36 (Dec. 20, 2019) ................................................. 9

*C&S Outdoor Power Equip., Inc. v. Odes Indus. LLC*,
   2019 WL 4197608 (W.D. Tenn. Sept. 4, 2019) ............................................... 21, 24

*In re Customs & Tax Admin. of Kingdom of Den. Tax Refund Litig.*,
   2021 WL 4993536 (S.D.N.Y. Oct. 26, 2021) ....................................................... 67

*Delaware County v. Express Scripts, Inc. et al.*,
   No. CV-2024-010658 (Pa. Ct. Common Pleas) ................................................... 58

*Demmons v. ND OTM LLC*,
   2023 WL 5936671 (D. Me. Sept. 12, 2023) ......................................................... 75

*Dickenson County v. Purdue Pharma, L.P.*,
   No. 1:19-op-45252 ................................................................................................. 25

*DiMiceli v. Town of Cheshire*,
   131 A.3d 771 (Conn. App. Ct. 2016) ................................................................... 83

*Dodge City Implement, Inc. v. Bd. of County Commrs.*,
   205 P.3d 1265 (Kan. 2009) ................................................................................... 68

*Doe v. Carson*,
   2020 WL 2611189 (6th Cir. May 6, 2020) ........................................................... 18

*DRDistributors, LLC v. 21 Century Smoking, Inc.*,
   513 F. Supp. 3d 839 (N.D. Ill. 2021) ............................................................... 54, 63

*Dubuc v. Green Oak Township*,
   312 F.3d 736 (6th Cir. 2002) ................................................................... 15, 51, 56

*Duggins v. Steak 'N Shake, Inc.*,
   195 F.3d 828 (6th Cir. 1999) ......................................................................... *passim*

*E. Me. Med. Ctr. v. Teva Pharms.*,
   No. BCD-23-73 (Me.) ........................................................................................... 76

*Eastern Maine Medical Center v. Teva Pharmaceuticals USA Inc*,
   2023 WL 2161256 (Me. Bus. Ct. Feb. 13, 2023) ........................................................... *passim*

*EEOC v. Waffle House, Inc.*,
   534 U.S. 279 (2002)....................................................................................................73

*Egerer v. Woodland Realty, Inc.*,
   556 F.3d 415 (6th Cir. 2009) ..............................................................................80

*EJS Properties, LLC v. Toledo*,
   522 F. Supp. 2d 936 (N.D. Ohio 2007)..................................................................82

*Emery v. Hussey Seating Co.*,
   697 A.2d 1284 (Me. 1997)...........................................................................68

*Endresen v. Scheels Hardware & Sports Shop*,
   560 N.W.2d 225 (N.D. 1997) .........................................................................69

*Est. of Powell v. Montange*,
   765 N.W.2d 496 (Neb. 2009)..........................................................................69

*Evans v. Pearson Enterprises*,
   434 F.3d 839 (6th Cir. 2006) .........................................................................21

*Fairfax County Board of Supervisors, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45766, ECF No. 32 (Oct. 29, 2019) .......................................................9

*Fauquier County, Virginia v. Purdue Pharma L.P., et al.*,
   No. 1:19-op-45686, ECF No. 49 (Oct. 29, 2019) .......................................................9

*FDIC v. Clark*,
   978 F.2d 1541 (10th Cir. 1992) ..............................................................................67

*FDIC v. Loudermilk*,
   826 S.E.2d 116 (Ga. 2019)...............................................................................68

*In re Ferro Corp. Derivative Litig.*,
   511 F.3d 611 (6th Cir. 2008) ...................................................................... *passim*

*Firestone Laser & Mfg. LLC v. Bristow*,
   __ F. Supp. 3d __, 2024 WL 3819623 (N.D. Ohio Aug. 14, 2024).......................................73

*Fisher v. GE Med. Sys.*,
   276 F. Supp. 2d 891 (M.D. Tenn. 2003)...........................................................1445

*Floyd County, Virginia v. Purdue Pharma, L.P., et al.*,
   No. 1:19-op-45698, ECF No. 26 (Oct. 29, 2019) .....................................................9

*Foley v. H.F Farnham Co.*,
    188 A. 708 (Me. 1936) ................................................................................75

*Foman v. Davis*,
    371 U.S. 178 (1962) ...................................................................................14

*Franklin County v. Williams*,
    No. 20AB-CC00006 (Mo. Cir. Ct.) .......................................................23, 57

*Franklin County, Virginia v. Purdue Pharma L.P., et al.*,
    No. 1:19-op-45701, ECF No. 47 (Oct. 29, 2019) ......................................9

*Franklin Wharf Co. v. City of Portland*,
    67 Me. 46 (Me. 1877) ................................................................................76

*Gale v. Charter Twp. of Filer Bd. of Trustees*,
    142 F. Supp. 3d 549 (W.D. Mich. 2015) ...........................................91, 1375

*Gallant v. Holdren*,
    2020 WL 9349975 (6th Cir. June 2, 2020) .................................... *passim*

*Ganey v. Raffone*,
    1996 WL 382278 (6th Cir. July 5, 1996) ...................................................78

*Garza v. Lansing Sch. Dist.*,
    972 F.3d 853 (6th Cir. 2020) ...................................................... *passim*

*Gelboim v. Bank of Am. Corp.*,
    574 U.S. 405 (2015) ...................................................................................20

*Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*,
    360 S.E.2d 342 (Va. 1987) ........................................................................70

*Giles County v. Purdue Pharma, L.P.*,
    No. 1:19-op-45236 (N.D. Ohio Aug. 27, 2018), ECF No. 36 .................28

*Giles County, Virginia v. Purdue Pharma, L.P, et al.*,
    No. 1:19-op-45236, ECF No. 71 (July 3, 2019) ...............................9, 25

*Glazer v. Chase Home Fin. LLC*,
    704 F.3d 453 (6th Cir. 2013), *abrogated on other grounds by Obduskey v.*
    *McCarthy & Holthus LLP*, 586 U.S. 466 (2019) ........................... *passim*

*Glenn v. Frenchko*,
    642 F. Supp. 3d 633 (N.D. Ohio 2022) .....................................................72

*Glick v. Farm Credit Servs. of Mid-America, FLCA*,
    2010 WL 3118673 (N.D. Ohio Aug. 6, 2010) ...........................................20

*Gramex Corp. v. Green Supply*,
  89 S.W.3d 432 (Mo. 2002) ..................................................................................68

*Greensville County, Virginia v. Purdue Pharma, L.P., et al.*,
  No. 1:19-op-45848, ECF No. 22 (Dec. 20, 2019) ..................................................8

*Arkansas ex rel. Griffin v. Optum, Inc. et al.*,
  No. 4:24-cv-00701 (E.D. Ark.) ...........................................................................57

*Grimes v. Mazda N. Am. Operations*,
  355 F.3d 566 (6th Cir. 2004) ..............................................................................68

*Grimmett v. Brown*,
  75 F.3d 506 (9th Cir. 1996) ................................................................................79

*Halifax County, Virginia v. Purdue Pharma, L.P., et al.*,
  No. 1:19-op-45692, ECF No. 40 (Oct. 29, 2019) ..................................................9

*Hamer v. LivaNova Deutschland GmbH*,
  994 F.3d 173 (3d Cir. 2021).................................................................................21

*Hammock v. Rogers*,
  2018 WL 8414482 (N.D. Ohio Dec. 17, 2018) ....................................................46

*Hance v. BNSF Ry. Co.*,
  645 F. App'x. 356 (6th Cir. 2016) .......................................................................52

*Hansen v. Scott*,
  645 N.W.2d 223 (N.D. 2002) ..............................................................................69

*Harris v. Davidson County Sheriff*,
  2019 WL 7573883 (6th Cir. Dec. 11, 2019) .........................................................18

*People ex rel. Harrison v. Express Scripts, Inc., et al.*,
  No. 23STCV20886 (Cal. Super. Ct.) ....................................................................57

*Head v. Jellico Hous. Auth.*,
  870 F.2d 1117 (6th Cir. 1989) .............................................................................14

*Helena Agri-Enterprises, LLC v. AAA Turf, Inc.*,
  2023 WL 4842838 (6th Cir. July 28, 2023)....................................................51, 52

*Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*,
  988 F.3d 260 (6th Cir. 2021) ..............................................................................14

*Hengle v. Treppa*,
  19 F.4th 324 (4th Cir. 2021) ...............................................................................78

*Henry County v. Purdue Pharma, L.P.*,
    No. 1:19-op-45245 ................................................................................................25

*Hickey v. Smith*,
    2024 WL 912041 (S.D.N.Y. Mar. 4, 2024) ....................................................2123

*Higgins v. Huhtamaki, Inc*,
    2022 WL 2274876 (D. Me. June 23, 2022) ........................................................75

*Higgins v. Huhtamaki, Inc.*,
    2024 WL 4008257 (D. Me. Aug. 30, 2024)........................................................75

*Hill v. U.S. Dep't of Lab.*,
    65 F.3d 1331 (6th Cir. 1995) .............................................................................81

*Hiller v. HSBC Fin. Corp.*,
    589 F. App'x 320 (6th Cir. 2015) ......................................................................52

*Hogg v. Chevron USA, Inc.*,
    45 So. 3d 991 (La. 2010) ...................................................................................84

*Commonwealth ex rel. Holihan et al. v. Express Scripts Holding Co. et al.*,
    No. 585-MD-2023 (Pa. Commnw. Ct.) .............................................................57

*Estate of Hunter v. Gen. Motors Corp.*,
    729 So.2d 1264 (Miss. 1999) ............................................................................68

*State ex rel. Hunter v. Johnson & Johnson*,
    499 P.3d 719 (Okla. 2021) ...................................................................6, 74, 75

*Int'l Union v. Cummins, Inc.*,
    434 F.3d 478 (6th Cir. 2006) ..........................................................................2123

*Isaak v. Trumbull Sav. & Loan Co.*,
    169 F.3d 390 (6th Cir. 1999) .............................................................................78

*Jefferson County v. Williams*,
    No. 1:19-op-45371 (N.D. Ohio.) .......................................................................23

*Jefferson County v. Williams*,
    No. 1922-CC00203 (Mo. Cir. Ct.)......................................................................23

*Jefferson County v. Williams*,
    No. 20JE-CC00029 (Mo. Cir. Ct.)................................................................23, 48

*Jefferson County v. Williams*,
    No. 4:23-cv-01539 (E.D. Mo.), *appeal docketed*, No. 24-1550 (8th Cir. Mar.
    18, 2024) .......................................................................................................23, 57

*John B. v. Goetz*,
531 F.3d 448 (6th Cir. 2008) ..................................................................54

*Johnson v. U.S. Postal Servs.*,
2017 WL 3977848 (E.D. Mich. Sept. 11, 2017) ....................................80

*Johnson v. Whitten*,
384 A.2d 698 (Me. 1978) ........................................................................75

*Johnstone v. CrossCountry Mortg., LLC*,
2024 WL 1530803 (N.D. Ohio Apr. 9, 2024) ........................................50

*Joliffe v. Enterprise Rent-a-Car*,
1994 WL 823557 (W.D. Mich. Aug. 10, 1994) ....................................374

*Kellom v. Quinn*,
86 F.4th 288 (6th Cir. 2023) ............................................................1, 83

*King County v. Express Scripts, Inc. et al.*,
No. 2:24-cv-00049 (W.D. Wash.) ...........................................................57

*Kinney v. Anderson Lumber Co.*,
2018 WL 343908 (E.D. Tenn. Jan. 9, 2018), *aff'd*, 2018 WL 7317203 (6th
Cir. Sept. 13, 2018) ................................................................................53

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ................................................................................81

*Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*,
930 F.3d 775 (6th Cir. 2019) ..................................................................56

*In re Korean Air Lines Co., Ltd.*,
642 F.3d 685 (9th Cir. 2011) ..................................................................18

*Korn v. Paul Revere Life Ins. Co.*,
382 F. App'x 443 (6th Cir. 2010) ............................................................63

*Kostyu v. Ford Motor Co.*,
1986 WL 16190 (6th Cir. July 28, 1986) ................................................18

*Kovalchuk v. City of Decherd*,
95 F.4th 1035 (6th Cir. 2024) ................................................................70

*Estate of Kriefall v. Sizzler U.S. Franchise, Inc.*,
816 N.W.2d 853 (Wis. 2012) ..................................................................70

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014) ................................................2, 4, 17, 18

*Lake v. Arnold*,
    232 F.3d 360 (3d Cir. 2000)....................................................19

*Larson v. New England Tel. & Tel. Co.*,
    44 A.2d 1 (Me. 1945)........................................................75

*Le'Gall v. Lewis County*,
    923 P.2d 427 (Idaho 1996)...................................................68

*Leary v. Daeschner*,
    349 F.3d 888 (6th Cir. 2003) ........................................ *passim*

*Lee County, Alabama Comm'n v. CreekWood Res. LLC*,
    2022 WL 450810 (M.D. Ala. Feb. 14, 2022) ............................ *passim*

*Lee County, Virginia v. Purdue Pharma, L.P, et al.*,
    No. 1:19-op-45251, ECF No. 75 (July 3, 2019) .........................9, 25

*Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*,
    616 F.3d 612 (6th Cir. 2010) ...............................................74

*Litz v. Md. Dep't of the Env't*,
    76 A.3d 1076 (Md. 2013) ...................................................85

*Loudoun County, Virginia v. Purdue Pharma, L.P., et al.*,
    No. 1:19-op-45842, ECF No. 28 (Dec. 20, 2019)........................8, 9

*Louisa County, Virginia v. Purdue Pharma, L.P., et al.*,
    No. 1:19-op-45720, ECF No. 27 (Oct. 29, 2019) ...........................9

*Love v. Does 1–9*,
    2021 WL 2134940 (D.N.J. May 26, 2021) ...................................53

*Maddan v. Okaloosa County*,
    358 So. 3d 834 (Fla. Dist. Ct. App. 2023) ...............................83

*Madison v. Wood*,
    410 F.2d 564 (6th Cir. 1969) ...............................................78

*Marion County Board of Education et al. v. Cephalon, Inc. et al.*,
    1:22-op-45028-DAP, ECF No. 1 (July 1, 2022)..............................23

*Massart v. Radisson Blue Moa*,
    2022 Minn. Dist. LEXIS 10884 (Minn. Dist. Ct. Mar. 16, 2022) .........68

*In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*,
    543 F. Supp. 3d 1377 (J.P.M.L. 2021).....................................55

*Metyk v. KeyCorp*,
    560 F. App'x 540 (6th Cir. Mar. 26, 2014) ................................................................22

*Nessel ex rel. Michigan v. Express Scripts, Inc. et al.*,
    No. 4:24-cv-13185 (E.D. Mich.) .........................................................................58

*Mississippi v. Optum, Inc. et al.*,
    No. 3:24-cv-00718 (S.D. Miss.) ..........................................................................58

*Montgomery County v. Purdue Pharma, L.P.*,
    No. 1:19-op-45234 ....................................................................................25, 28

*Morrison Enters., LLC v. Dravo Corp.*,
    2009 WL 4325749 (D. Neb. Nov. 24, 2009) ......................................................85, 86

*In re Motor Fuel Temp. Sales Pracs. Litig.*,
    261 F.R.D. 577 (D. Kan. 2009) ...........................................................................58

*MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co.*,
    2023 WL 6795420 (S.D. Ohio Oct. 13, 2023) .........................................................50

*Murillo v. Conagra Brands*,
    2024 WL 4544327 (N.D. Ohio Oct. 22, 2024) .........................................................81

*In re Nat'l Prescription Opiate Litig.*,
    --- N.E.3d ----, 2024 WL 5049302 (Ohio Dec. 10, 2024) .......................................6, 75

*In re Nat'l Prescription Opiate Litig.*,
    2022 U.S. Dist. LEXIS 65760 (J.P.M.L. Apr. 8, 2022) ..................................10, 55, 67

*In re Nat'l Prescription Opiate Litig.*,
    927 F.3d 919 (6th Cir. 2019) .............................................................................59

*In re Nat'l Prescription Opiate Litig. (In re CVS)*,
    956 F.3d 838 (6th Cir. 2020) ..................................................................... *passim*

*In re Nat'l Prescription Opiate Litig. (In re Meijer)*,
    2022 WL 20701236 (6th Cir. Nov. 10, 2022) .................................................11, 56

*In re Nat'l Prescription Opiate Litig.*,
    MDL No. 2804, ECF No. 9617 (J.P.M.L. Mar. 21, 2024) ......................................55

*Nevada v. Optum, Inc. et al.*,
    No. 2:24-cv-00493 (D. Nev.) .............................................................................57

*Northumberland County, Virginia v. Purdue Pharma L.P., et al.*,
    No. 1:19-op-45688, ECF No. 61 (Oct. 29, 2019) .....................................................9

*Oakley v. Citizens Bank of Logan*,
2016 WL 1117596 (S.D. Ohio Mar. 21, 2016) .............................................................. *passim*

*Ocasio v. Fed. Express Corp.*,
33 A.3d 1139 (N.H. 2011) ...........................................................................................69

*Ohio County Comm'n et al. v. Express Scripts, Inc. et al.*,
No. 5:24-cv-00142 (N.D. W. Va.) ...............................................................................57

*Ohio Sec. Ins. Co. v. Brakefire, Inc.*,
2024 WL 2816024 (N.D. Ohio, June 3, 2024)...........................................................19

*Oltman v. Parde*,
5 N.W.3d 197 (Neb. Ct. App. 2024) ...........................................................................86

*Osborn v. Griffin*,
50 F. Supp. 3d 772 (E.D. Ky. 2014) ......................................................................80, 81

*Otis Elevator Co. v. F.W. Cunningham & Sons*,
454 A.2d 335 (Me. 1983)..............................................................................................68

*Pac. Sound Res. v. B.N.S.F. Ry.*,
125 P.3d 981 (Wash. Ct. App. 2005) ...........................................................................86

*Page County, Virginia v. Purdue Pharma, L.P, et al.*,
No. 1:19-op-45275, ECF No. 80 (July 3, 2019) ....................................................9, 25

*Pagenkopf v. Chatham Elec., Inc.*,
165 P.3d 634 (Alaska 2007)..........................................................................................67

*Palm Beach County et al. v. Mylan Pharms., et al.*,
No. 9:23-cv-80431 (S.D. Fla.) ......................................................................................57

*Parker v. Exterior Restorations, Inc.*,
2022 WL 17094765 (S.D. Ala. Nov. 21, 2022)...........................................................67

*Peek v. Manchester Mem'l Hosp.*,
269 A.3d 24 (Conn. 2022) ............................................................................................83

*Peralta v. Accept Acceptance, LLC*,
2009 WL 723910 (W.D. Mich. Mar. 10, 2009)...........................................................80

*Pethtel v. Tenn. Dep't of Child. Servs.*,
2020 WL 6827791 (E.D. Tenn. Nov. 20, 2020) ...................................................... *passim*

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
460 F.3d 1217 (9th Cir. 2006) .....................................................................................20

*Pittsylvania County, Virginia v. Purdue Pharma, L.P, et al.*,
No. 1:19-op-45247, ECF No. 79 (July 3, 2019) ....................................................9, 25

*In re Polyurethane Foam Antitrust Litig.*,
998 F. Supp. 2d 625 (N.D. Ohio 2014)..........................................................................21 23

*Prince George County, Virginia v. Purdue Pharma, L.P., et al.*,
No. 1:19-op-45929, ECF No. 25 (Dec. 20, 2019).........................................................8, 9

*Profitt v. Highlands Hosp. Corp.*,
2024 WL 3622448 (6th Cir. Aug. 1, 2024)................................................. *passim*

*Range v. Eagan*,
2017 WL 9477693 (E.D. Mich. Dec. 6, 2017) ........................................... *passim*

*Reese v. AMF-Whitely*,
420 F. Supp. 985 (D. Neb. 1987)........................................................................69

*Reese v. ICF Emergency Mgmt. Servs., LLC*,
684 F. Supp. 2d 793 (M.D. La. 2009)..................................................................84

*Reinke Mfg. Co. v. Hayes*,
590 N.W.2d 380 (Neb. 1999)..............................................................................86

*Religious Tech. Ctr. v. Wollersheim*,
796 F.2d 1076 (9th Cir. 1986) ...........................................................................78

*Roanoke County, Virginia v. Purdue Pharma L.P., et al.*,
No. 1:19-op-45695, ECF No. 44 (Oct. 29, 2019) .................................................9

*Robinson v. Triple S*,
629 F. Supp. 3d 4 (D. Mass. 2022) .....................................................................85

*Rose v. Dole*,
945 F.2d 1331 (6th Cir. 1991) ............................................................................80

*Roskam Baking Co. v. Lanham Machinery Co.*,
288 F.3d 895 (6th Cir. 2002) ..............................................................................16

*Ross v. Am. Red Cross*,
567 F. App'x 296 (6th Cir. 2014) ........................................................................52

*Ross v. Houston Indep. Sch. Dist.*,
699 F.2d 218 (5th Cir. 1983) ..............................................................................57

*Rotella v. Wood*,
528 U.S. 549 (2000)............................................................................ *passim*

xvii

*Royal Indem. Co. v. Aetna Cas. & Sur. Co.*,
    229 N.W.2d 183 (Neb. 1975)..................................................................................69

*Shane v. Bunzl Distribution USA, Inc.*,
    275 F. App'x 535 (6th Cir. 2008) ........................................................................52

*Sherman v. Winco Fireworks, Inc.*,
    532 F.3d 709 (8th Cir. 2008) ...............................................................................13

*Smith v. Aegon Companies Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) ...........................................................................2124

*Smith v. BAC Home Loans Servicing, LP*,
    552 F. App'x 473 (6th Cir. 2014) ........................................................................62

*Southcentral Found. v. Alaska Native Tribal Health Consortium*,
    983 F.3d 411 (9th Cir. 2020) ...........................................................................3432

*St. Clair County v. Evernorth Health, Inc., et al.*,
    No. 3:24-cv-00189 (S.D. Ill.).............................................................................57

*Staab v. Diocese of St. Cloud*,
    813 N.W.2d 68 (Minn. 2012)..............................................................................68

*Stanley v. W. Mich. Univ.*,
    105 F.4th 856 (6th Cir. 2024) ...........................................................14, 15, 70, 78

*State v. Express Scripts, Inc. et al.*,
    No. 240500576 (Utah Dist. Ct.).........................................................................58

*Stripling v. Ingram Barge Co., LLC*,
    2023 WL 5120238 (M.D. Tenn. Aug. 9, 2023) .......................255, 875, 1242, 1254

*Stuebing Automatic Mach. Co. v. Gavronsky*,
    2016 WL 7365093 (S.D. Ohio Dec. 19, 2016), *report and recommendation*
    *adopted*, 2017 WL 999247 (S.D. Ohio Mar. 15, 2017).....................................1395

*Taylor v. United States Gov't*,
    21 F. App'x 264 (6th Cir. 2001) .............................................................215, 1498

*Tew v. MCML Ltd.*,
    --- F. Supp. 3d. ---, 2024 WL 4333681 (E.D. Ky. Sept. 27, 2024).......................79

*Thurmond v. Bayer Healthcare Pharms., Inc.*,
    649 F. App'x 1003 (11th Cir. 2016) ......................................................... *passim*

*Tioga County v. Express Scripts, Inc. et al.*,
    No. 695-CV-2024 (Pa. Ct. Common Pleas)........................................................58

*Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*,
    598 F.3d 257 (6th Cir. 2010) ........................................................22

*Troxel Mfg. Co. v. Schwinn Bicycle Co.*,
    489 F.2d 968 (6th Cir. 1973) ........................................................57

*United States v. Midwest Suspension & Brake*,
    49 F.3d 1197 (6th Cir. 1995) ........................................................14

*Univ. of Pittsburgh v. Townsend*,
    2007 WL 2263079 (E.D. Tenn. Aug. 3, 2007), *aff'd*, 542 F.3d 513 (6th Cir.
    2008) ........................................................81

*Waad v. Farmers Ins. Exch.*,
    762 F. App'x 256 (6th Cir. 2019) ........................................................72

*Wallace v. Lewis County*,
    137 P.3d 101 (Wash. Ct. App. 2006) ........................................................86

*Wampanoag Grp. v. Iacoi*,
    68 A.3d 519 (R.I. 2013) ........................................................69

*Warfield v. AlliedSignal TBS Holdings, Inc.*,
    267 F.3d 538 (6th Cir. 2001) ........................................................215, 1498

*Warminster Township v. Express Scripts, Inc. et al.*,
    No. 2024-C-04909 (Pa. Ct. Common Pleas) ........................................................57

*Warrington Township v. Express Scripts, Inc. et al.*,
    No. 2024-05162 (Pa. Ct. Common Pleas) ........................................................58

*Washington County v. Purdue Pharma, L.P.*,
    No. 1:19-op-45254 (N.D. Ohio Dec. 13, 2018), ECF No. 1-1 ........................................................28

*Washington County, Virginia v. Purdue Pharma, L.P, et al.*,
    No. 1:19-op-45254, ECF No. 72 (July 3, 2019) ........................................................9, 25

*In re WellNx Mktg. & Sales Pracs. Litig.*,
    2010 WL 3652457 (D. Mass. Sept. 15, 2010) ........................................................67

*Wong v. PartyGaming Ltd.*,
    589 F.3d 821 (6th Cir. 2009) ........................................................2124

*Zakora v. Chrisman*,
    44 F.4th 452 (6th Cir. 2022) ........................................................ *passim*

*Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*,
    2014 WL 6851607 (S.D. Cal. June 16, 2014) ........................................................54, 64

## **Rules / Statutes**

28 U.S.C. § 1407 .................................................................................................................2

42 Pa. Cons. Stat. § 7102(a.1)(1) ........................................................................................69

42 Pa. Cons. Stat. § 7102(a.2) .............................................................................................69

42 Pa. Cons. Stat. § 7102(d) ................................................................................................69

42 Pa. Cons. Stat. § 8324(a) ................................................................................................69

Ala. Code § 11-3A-2(a)(5) ...................................................................................................78

Ala. Code § 45-41-170.01 ....................................................................................................77

Ala. Code § 6-5-121 .............................................................................................................77

Ala. Code § 6-5-123 .............................................................................................................77

Ala. Code § 45-41-170.04(b) ...............................................................................................77

Alaska Stat. § 09.17.080(a) ..................................................................................................67

Alaska Stat. § 09.17.080(d) ..................................................................................................67

Ariz. Rev. Stat. § 12-2501(G) ..............................................................................................67

Ariz. Rev. Stat. § 12-2506(A) ..............................................................................................67

Ariz. Rev. Stat. § 12-2506(B) ..............................................................................................67

Colo. Rev. Stat. § 13-21-111.5(1) ........................................................................................67

Colo. Rev. Stat. § 13-21-111.5(3)(b) ...................................................................................67

Colo. Rev. Stat. § 13-21-111.5(4) ........................................................................................67

Conn. Gen. Stat. § 52-572h(c) .............................................................................................67

Conn. Gen. Stat. § 52-572h(d) .............................................................................................67

Conn. Gen. Stat. § 52-572h(h)(1) ........................................................................................67

Conn. Gen. Stat. § 52-577 ....................................................................................................83

Conn. Gen. Stat. § 52-584 ....................................................................................................83

Fed. R. Civ. P. 12(b)(6) ...................................................................................................15, 72

Fed. R. Civ. P. 15 .................................................................................................... *passim*

Fed. R. Civ. P. 16 .................................................................................................... *passim*

Fed. R. Civ. P. 41(b) ........................................................................................................65

Fed. R. Civ. P. 7 ..............................................................................................................21

Fed. R. Civ. P. 7(b) ...................................................................................................21, 22

Fla. Stat. § 768.81(3) .......................................................................................................67

Fla. Stat. § 768.81(3)(b) ..................................................................................................67

Fla. Stat. § 95.031(1) .......................................................................................................84

Fla. Stat. § 95.11(3)(f) .....................................................................................................84

Fla. Stat. § 95.11(3)(o) ....................................................................................................84

Ga. Code § 51-12-33(b) ...................................................................................................68

Ga. Code § 51-12-33(c) ...................................................................................................68

Haw. Rev. Stat. § 663-12(a) ............................................................................................68

Haw. Rev. Stat. § 663-12(d) ............................................................................................68

Haw. Rev. Stat. § 663-17(a) ............................................................................................68

Idaho Code § 6-803(3) .....................................................................................................68

Ill. Comp. Stat. 100/2(a) ..................................................................................................68

Ill. Comp. Stat. 100/2(b) ..................................................................................................68

Ill. Comp. Stat. 100/3 ......................................................................................................68

Ind. Code § 34-51-2-14 ...................................................................................................68

Ind. Code § 34-51-2-7(b)(1) ............................................................................................68

Ind. Code § 34-51-2-8(b)(1) ............................................................................................68

Iowa Code § 668.3(2) ......................................................................................................68

Iowa Code § 668.3(4) ......................................................................................................68

Iowa Code § 668.4 ...........................................................................................................68

Iowa Code § 668.5(1) ....................................................................................................68

Kan. Stat. § 60-258a(c) ...............................................................................................68

Kan. Stat. § 60-258a(d) ..............................................................................................68

Ky. Rev. Stat. § 411.182(1) ........................................................................................68

Ky. Rev. Stat. § 411.182(3) ........................................................................................68

Ky. Rev. Stat. § 411.182(4) ........................................................................................68

La. Civ. Code Ann. art. 2323(A) .................................................................................68

La. Civ. Code Ann. art. 2324(B) .................................................................................68

La. Civ. Code art. 3492 ...............................................................................................84

Mass. Gen. Laws ch. 231B, § 1(a) .............................................................................68

Mass. Gen. Laws ch. 260, § 2A ..................................................................................85

Md. Code Ann., Cts. & Jud. Proc. § 3-1402(a) ..........................................................68

Md. Code Ann., Cts. & Jud. Proc. § 5-101 .................................................................85

Me. Stat. tit. 17, § 2701 ..............................................................................................75

Me. Stat. tit. 17, § 2802 ..............................................................................................75

Mich. Comp. Laws § 600.2925a(1) .............................................................................68

Mich. Comp. Laws § 600.6304(1) ..............................................................................68

Mich. Comp. Laws § 600.6304(4) ..............................................................................68

Minn. Stat. § 604.02(1) ..............................................................................................68

Miss. Code § 85-5-7(2) ...............................................................................................68

Miss. Code § 85-5-7(4) ...............................................................................................68

Miss. Code § 85-5-7(5) ...............................................................................................68

Mo. Rev. Stat. § 537.060 ............................................................................................68

N.C. Gen. Stat. § 1B-1(a) ...........................................................................................69

N.C. Gen. Stat. § 1B-3 ................................................................................................69

N.D. Cent. Code § 32-03.2-02 ...................................................................69

N.H. Rev. Stat. § 507:7-e(I) .....................................................................69

N.H. Rev. Stat. § 507:7-f(I) ......................................................................69

N.J. Stat. § 2A:15-5.2(a) ...........................................................................69

N.J. Stat. § 2A:15-5.3(c) ...........................................................................69

N.J. Stat. § 2A:15-5.3(e) ...........................................................................69

N.M. Stat. § 41-3-2(A) ..............................................................................69

N.M. Stat. § 41-3-2(D) ..............................................................................69

N.M. Stat. § 41-3A-1(A) ............................................................................69

N.M. Stat. § 41-3A-1(B) ............................................................................69

N.Y. C.P.L.R. § 1401 .................................................................................69

N.Y. C.P.L.R. § 1402 .................................................................................69

N.Y. Gen. Bus. Law § 349 .........................................................................87

N.Y. Gen. Bus. Law § 350 .........................................................................87

N.Y. Soc. Serv. Law (**SSL**) § 145-B .....................................................87

N.Y. Gen. Oblig. Law § 15-108(a) .............................................................69

Neb. Rev. Stat. § 25-207 ............................................................................85

Nev. Rev. Stat. § 17.225(1) ........................................................................69

Nev. Rev. Stat. § 17.225(2) ........................................................................69

Nev. Rev. Stat. § 41.141(4) ........................................................................69

Ohio Rev. Code §§ 2307.71 *et seq.*(**OPLA**)........................................75

Ohio Rev. Code § 2307.22(A) ....................................................................69

Ohio Rev. Code § 2307.23 ..........................................................................69

Ohio Rev. Code § 2307.25(A) ....................................................................69

Ohio Rev. Code § 2307.25(F) .....................................................................69

Okla. Stat. tit. 12, § 832 (A) ........................................................................................69

Or. Rev. Stat. § 31.600(2) .............................................................................................69

Or. Rev. Stat. § 31.610 (a) ............................................................................................69

Or. Rev. Stat. § 31.800(1) .............................................................................................69

Or. Rev. Stat. § 31.805(1) .............................................................................................69

R.I. Gen. Laws § 10-6-3 ...............................................................................................69

Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*
   (**RICO**) ...........................................................................78, 79, 80, 81, 82

S.C. Code § 15-38-15 (D) .............................................................................................70

S.C. Code § 15-38-15(A) ..............................................................................................70

S.C. Code § 15-38-20 ...................................................................................................70

S.D. Codified Laws § 15-8-12 ......................................................................................70

S.D. Codified Laws § 15-8-15 ......................................................................................70

S.D. Codified Laws § 15-8-15.1 ...................................................................................70

S.D. Codified Laws § 15-8-15.2 ...................................................................................70

Tenn. Code § 29-11-104(b) ...........................................................................................70

Tenn. Code § 29-11-107(a) ...........................................................................................70

Tenn. Code § 29-11-107(d) ...........................................................................................70

Tex. Civ. Prac. & Rem. Code § 33.003(a) ....................................................................70

Tex. Civ. Prac. & Rem. Code § 33.004 .........................................................................70

Tex. Civ. Prac. & Rem. Code § 33.013(a) ....................................................................70

Tex. Civ. Prac. & Rem. Code § 33.015(a) ....................................................................70

Utah Code § 78B-5-820(1) ...........................................................................................70

Utah Code § 78B-5-821(1) ...........................................................................................70

Va. Code § 8.01-34 .......................................................................................................70

W. Va. Code § 55-7-13c(a) ...........................................................................................70

W. Va. Code § 55-7-13d(a)(1) ........................................................................................70

Wash. Rev. Code § 4.22.060(2) ......................................................................................70

Wash. Rev. Code § 4.22.070(1) ......................................................................................70

Wash. Rev. Code § 4.22.070(2) ......................................................................................70

Wis. Stat. § 895.045(1) ..................................................................................................70

## Other Authorities

6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
1485 (3d ed.) ..........................................................................................................17

Restatement (Second) of Torts § 821B ...........................................................................75

One thousand, eight hundred thirty-three plaintiffs (the **Moving Plaintiffs**) seek leave to add OptumRx, Inc., Express Scripts, Inc., and sixteen other affiliated entities as defendants (ECF Nos. 5546; 5547; 5548; 5565). All eighteen of those entities (which we will refer to collectively as the "**PBMs**," even though most are not pharmacy benefit managers)[1] jointly oppose the omnibus motions for leave to amend. The PBMs preserve all defenses, including jurisdictional defenses. *See Kellom v. Quinn*, 86 F.4th 288, 291–92 (6th Cir. 2023) ("[A] party doesn't forfeit a defense by failing to oppose a motion for leave to amend.").

## <u>INTRODUCTION</u>

Federal Rule of Civil Procedure 16 requires a district court to issue a scheduling order that "must limit the time to," among other things, "join other parties" or "amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). Once set, a court can modify the schedule "only for good cause." Fed. R. Civ. P. 16(b)(4). As the Sixth Circuit has emphasized in this MDL, those limitations "ensure that at some point both the parties and the pleadings will be fixed." *In re Nat'l Prescription Opiate Litig.* (*In re CVS*), 956 F.3d 838, 843 (6th Cir. 2020) (cleaned up). This Court previously acknowledged those limitations in the PBM litigation, explaining that the Court would not allow "amendment of thousands of cases" against the PBMs, but instead "would allow amendments only of the small number of cases eventually selected as bellwethers . . . because the Sixth Circuit has already ruled on that issue." ECF No. 5217 at 8.

---

[1] The eighteen entities are OptumRx, Inc.; UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC (which is inaccurately identified in the omnibus motions as "Optum Discount Card Services, LLC"); Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc.; and Express Scripts Specialty Distribution Services, Inc.

Nevertheless, seven years into this opioid MDL, more than five years after the March 16, 2019 deadline set forth in the Case Management Order (ECF No. 1106) for amended complaints, and nearly three years after the Judicial Panel on Multidistrict Litigation closed this MDL to new actions, 1,833 Moving Plaintiffs seek to add eighteen separate OptumRx and Express Scripts entities as defendants in 1,564 cases in this MDL. None of the Moving Plaintiffs can establish the good cause required under Rule 16 to support that extraordinary and unprecedented relief.

"The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case." *In re CVS*, 956 F.3d at 841. The Sixth Circuit has made clear that "the requirements of the Federal Rules of Civil Procedure in an MDL case—indeed, the requirements for granting 'a motion to amend' in particular—'are the same as those for ordinary litigation on an ordinary docket.'" *Id.* at 844 (citation omitted). In an "ordinary litigation on an ordinary docket," *id.*, "a party seeking an amendment should attach a copy of the amended complaint." *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014). That process—which is standard across all federal courts—has played out many times before in this MDL. *See, e.g.*, ECF No. 2894; ECF No. 3547; ECF No. 5277. And after that, the "district court's decision whether to grant a motion to amend in an individual case depends on the record *in that case* and not others." *In re CVS*, 956 F.3d at 845 (emphasis added).

Despite the Sixth Circuit's guidance, this Court adopted an amendment process that improperly minimizes the individual character of hundreds of MDL cases. The Court directed the 1,833 different Moving Plaintiffs (including cities, counties, hospitals, individuals, libraries, unions, and more) that are pursuing different claims under the different laws of dozens of states to file a single omnibus motion (one per defendant) for leave to file hundreds of different amended complaints, as if this were a motion for class certification. Although "an MDL court has broad

discretion to create efficiencies and avoid duplication" across MDL cases, it may not "distort or disregard the rules of law applicable to each of those cases." *In re CVS*, 956 F.3d at 841. The Court's only concession to the individual character of the hundreds of MDL cases was its instruction that the Moving Plaintiffs must include in their omnibus motions "any plaintiff-specific factual allegations," "any jurisdiction-specific claims," and "the reasons amendment should be permitted in *each individual* case." ECF No. 5455 (**Final Amendment Order**) at 2. But the Moving Plaintiffs ignored that instruction, filing omnibus motions lacking *any* plaintiff-specific factual allegations, claims, or arguments. And those perfunctory motions do not even attempt to address individually each of the eighteen OptumRx and Express Scripts entities that Moving Plaintiffs seek to add.

The process that this Court adopted is improper. It ignores the Federal Rules of Civil Procedure and Sixth Circuit precedent in the name of efficiency. Yet resolving the omnibus motions requires a case-by-case assessment of the individual records in each of the 1,564 cases that the Moving Plaintiffs seek to amend. *In re CVS*, 956 F.3d at 845. A review of those individual records shows that the omnibus motions should be denied for each Moving Plaintiff for four main reasons.

*First*, none of the Moving Plaintiffs complied with the Court's orders, the Federal Rules, or Sixth Circuit precedent. The Court ordered that any motion for leave to amend "must supply," among other things, "any plaintiff-specific factual allegations," "any jurisdiction-specific claims," and "the reasons amendment should be permitted in *each individual* case." Final Amendment Order at 2 (emphasis in original). The omnibus motions do none of those things. They do not supply *any* plaintiff-specific allegations, jurisdiction-specific claims, or case-specific reasons for amendment. A motion for leave to amend must notify the proposed defendants of the proposed

allegations and claims against them. That is why "[n]ormally, a party seeking an amendment should attach a copy of the amended complaint." *Kuyat*, 747 F.3d at 444.

Yet *none* of the Moving Plaintiffs filed a proposed amended complaint. And *none* identified in the omnibus motions what specific claims or allegations they seek to pursue against the PBMs. That lack of notice is deliberate. The Moving Plaintiffs have said out loud that they plan to identify the claims and allegations they are pursuing only *after* the Court grants leave to amend. ECF No. 5565 at 3 ("With respect to the jurisdiction-specific claims to be asserted by each plaintiff, the PEC proposes that any plaintiff granted leave to amend will . . . file supplemental and amended allegations" in the future.). In other words, the Moving Plaintiffs ask this Court to write them a blank check to amend their complaints in the future to add whatever claims and allegations against the PBMs they want without first subjecting those claims and allegations to the process required by Rules 15 and 16. That is impermissible.

*Second*, the Moving Plaintiffs cannot show the diligence needed for good cause under Rule 16. When, as here, a plaintiff seeks to amend its complaint "long after the deadline set by the court's scheduling order," that plaintiff must show that "despite [its] diligence [it] could not meet the original deadline." *In re CVS*, 956 F.3d at 843 (citation omitted). The Moving Plaintiffs contend that they could not meet the original amendment deadline because they first learned of their claims against the PBMs in 2023, when they received supposedly "new" information from documents reproduced in the MDL. But the supposedly "new" information—consisting of only a few dozen documents—is not new. It has been available from public sources or other defendants' productions for years. For example, much of the purportedly "new" information consists of rebate contracts produced by opioid manufacturers, including Purdue, back in 2018 and 2019. That the Moving Plaintiffs have long had the necessary information is confirmed by the fact that scores of other

MDL plaintiffs filed claims against the PBMs in 2018 and 2019. Indeed, in early 2018, counsel for one plaintiff filed a letter on the public MDL docket notifying the Court and all parties that it was "nam[ing] a *critical defendant group*—pharmacy benefit managers ('PBMs')." ECF No. 108. And the *PEC itself* filed an amended complaint against the PBMs in 2019 in the Track Two case. ECF No. 2582. "[A] party cannot show diligence when it is 'aware of the basis of [a] claim for many months' and fails to pursue that claim." *Profitt v. Highlands Hosp. Corp*., 2024 WL 3622448, at *4 (6th Cir. Aug. 1, 2024) (citation omitted). Here, the Moving Plaintiffs were aware of the basis of their claims against the PBMs for *years* before filing their omnibus motions, so they cannot establish diligence.

*Third*, the Moving Plaintiffs also lack good cause under Rule 16 because allowing any plaintiff—let alone 1,833 plaintiffs—to amend its complaint seven years into the MDL would severely prejudice the PBMs. *See Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) ("Another important consideration for a district court deciding whether Rule 16's 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment."). Given the passage of years, it is highly likely that the Moving Plaintiffs have lost or spoliated evidence. That risk would exist in any case when a plaintiff seeks leave to amend seven years into the litigation. But the risk is amplified here because *hundreds* of Moving Plaintiffs failed to implement timely litigation holds, which all but ensures that they have not preserved relevant evidence. Indeed, the PEC has admitted that a remarkable 857 of the 1,833 Moving Plaintiffs *never* implemented a litigation hold, despite filing their cases many years ago. And hundreds of others waited too long to implement a litigation hold. Failures to implement litigation holds already led this Court to discontinue three of the four original PBM bellwethers. No plaintiff that failed to timely institute a litigation hold can show good cause to amend.

*Fourth*, there are many case-specific reasons why leave to amend should be denied for individual Moving Plaintiffs. Although the amendment process the Court has adopted makes it impossible to identify or analyze the full range of issues that may affect each of the 1,833 Moving Plaintiffs, many defects are readily apparent. For example, some Moving Plaintiffs previously had their cases dismissed with prejudice for failure to prosecute. Others previously dismissed their cases, or have had their cases remanded to state court, so there is nothing to amend in this Court. Many Moving Plaintiffs are in states, such as Ohio and Oklahoma, that do not permit public nuisance claims in this context. *In re Nat'l Prescription Opiate Litig.*, --- N.E.3d ----, 2024 WL 5049302 (Ohio Dec. 10, 2024); *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021). Still others are in places where the PBMs have "zero-percent market share," which this Court has declared is grounds for "dismissal . . . with prejudice," not amendment. ECF No. 3688 at 2. Those are just examples; many more individual issues (including, for example, issues related to document preservation) are discussed below in the section addressing each individual Moving Plaintiff. But one thing is clear: The PEC ignored the individual facts of each Moving Plaintiff's case and improperly asks the Court to do the same, contrary to the Sixth Circuit's command that "a district court's decision whether to grant a motion to amend in an individual case depends on the record in that case and not others." *In re CVS*, 956 F.3d at 845.

In sum, the Moving Plaintiffs' motions do not comply with the Federal Rules of Civil Procedure, Sixth Circuit precedent, or this Court's directives. The Moving Plaintiffs were not diligent in pursuing their claims, their proposed amendments are highly prejudicial, none of the Moving Plaintiffs has good cause for leave to amend, and many of the Moving Plaintiffs seek to

add futile claims.[2] Any of those reasons alone would support denying leave to amend; taken together, they compel that result. The Court should keep this MDL on track and reject the Moving Plaintiffs' attempt to derail it.

*    *    *

This brief proceeds as follows. It begins by setting out the background and the legal standard. Then, in Argument Sections I and II, it presents global arguments as to why leave to amend should be denied for all Moving Plaintiffs. In Argument Sections III.A and III.B, it presents arguments for denying leave to amend that apply to some but not all the Moving Plaintiffs. Finally, in Argument Section III.C, it goes case-by-case in presenting arguments for why each of the 1,833 Moving Plaintiffs should be denied leave to amend. When possible, Section III.C incorporates arguments from Sections II, III.A, and III.B. But because of the unique facts and circumstances for each individual Moving Plaintiff and because each case must be evaluated based "on the record in that case and not others," *In re CVS*, 956 F.3d at 845, Section III.C ultimately spans 6,383 pages (about 3.5 pages per Moving Plaintiff). Although lengthy, that is consistent with this Court's order that page limits are "waived." Final Amendment Order at 3. It is also a necessary consequence of the Court's amendment process, which resulted in 1,833 Moving Plaintiffs crammed into a single motion, when each one requires an individualized assessment. And ultimately, it represents only a fraction of the arguments that the PBMs might have raised had Moving Plaintiffs even *attempted* to meet their burden to show good cause on a case-by-case basis. Because of its length, this brief

---

[2] The Moving Plaintiffs' failures are exacerbated by the PEC's confessed motive for seeking leave to amend—settlement leverage. The PEC has stated explicitly that it seeks these amendments to exert pressure on defendants to extract settlements. *See* ECF No. 5411 at 2 n.1 ("The PEC notes that several defendants have expressed reticence to reach broader settlements because only limited numbers of cases are pending against them in the MDL.").

7

is being filed in two parts. Section III.C, containing the arguments for each individual plaintiff, is in Part II.

## BACKGROUND

Over the last seven years, the Court has provided the MDL plaintiffs many opportunities to amend their complaints to add the PBMs. In Case Management Order One (**CMO-1**), the Court set an initial deadline of May 25, 2018 for all plaintiffs (except for certain specifically identified plaintiffs) to "file any amended pleading, including any amendment to add a party to a case." ECF No. 232 at 9. Although the Court stayed all cases not selected as bellwethers, it later clarified that all plaintiffs (not just those selected as bellwethers) "*retain the right to move* to file further amended pleadings if deemed appropriate." ECF No. 371 at 1 (emphasis added).

The PEC later asked the Court to stay the May 25, 2018 amendment deadline so it could complete its review of ARCOS data. ECF No. 487. The Court extended the amendment deadline to November 16, 2018. ECF No. 739 at 4. The PEC asked for another extension to March 16, 2019, which the Court granted. ECF No. 1106. As for cases not yet transferred to or filed in the MDL, the Court ordered that "any amended complaints to be filed without seeking leave of Court must be filed [by] the later of March 16, 2019, the applicable deadline under Fed. R. Civ. Pro. 15(a)(1), or 90 days following transfer into this MDL." *Id.* at 3 n.7. The Court later clarified that its extension permitted MDL plaintiffs wide latitude to amend their complaints by March 16, 2019 "as of right for matters *both relying on and beyond the ARCOS data*." ECF No. 1282 at 2 (emphasis added).

In response to the Court's orders, plaintiffs in 44 cases amended their complaints in 2019 to add claims against the PBMs.[3] Among them were the Track Two plaintiffs, Cabell County and

---

[3] *See Loudoun County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45842, ECF No. 28 (Dec. 20, 2019); *City of Fredericksburg, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45898, ECF No. 33 (Dec. 20, 2019); *Greensville County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45848, ECF No. 22 (Dec. 20, 2019); *Prince George County, Virginia v. Purdue*

*Pharma, L.P., et al.*, No. 1:19-op-45929, ECF No. 25 (Dec. 20, 2019); *Charlotte County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45851, ECF No. 34 (Dec. 20, 2019); *Culpeper County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45849, ECF No. 36 (Dec. 20, 2019); *City of Emporia, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-46850, ECF No. 24 (Dec. 20, 2019); *City of Norwich v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45840, ECF No. 74 (Oct. 30, 2019); *Roanoke County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45695, ECF No. 44 (Oct. 29, 2019); *City of Roanoke, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45696, ECF No. 48 (Oct. 29, 2019); *City of Bristol, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45719, ECF No. 45 (Oct. 29, 2019); *City of Salem, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45697, ECF No. 41 (Oct. 29, 2019); *Alleghany County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45700, ECF No. 43 (Oct. 29, 2019); *Fauquier County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45686, ECF No. 49 (Oct. 29, 2019); *Board of Supervisors, Prince William County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45687, ECF No. 42 (Oct. 29, 2019); *Accomack County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45715, ECF No. 33 (Oct. 29, 2019); *City of Chesapeake, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45712, ECF No. 38 (Oct. 29, 2019); *Northumberland County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45688, ECF No. 61 (Oct. 29, 2019); *Franklin County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45701, ECF No. 47 (Oct. 29, 2019); *City of Lexington, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-45693, ECF No. 47 (Oct. 29, 2019); *Rockbridge County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45694, ECF No. 38 (Oct. 29, 2019); *Halifax County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45692, ECF No. 40 (Oct. 29, 2019); *Fairfax County Board of Supervisors, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45766, ECF No. 32 (Oct. 29, 2019); *Louisa County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45720, ECF No. 27 (Oct. 29, 2019); *Madison County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45702, ECF No. 28 (Oct. 29, 2019); *City of Covington, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45799, ECF No. 25 (Oct. 29, 2019); *Floyd County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45698, ECF No. 26 (Oct. 29, 2019); *City of Middletown v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45651, ECF No. 49 (Oct. 15, 2019); *Cabell County Comm'n v. AmerisourceBergen Drug Corp.*, No. 1:17-op-45053, ECF No. 190 (Sept. 10, 2019); *City of Huntington v. AmerisourceBergen Drug Corp.*, No. 1:17-op-45054, ECF No. 76 (Sept. 10, 2019); *City of Alexandria, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45246, ECF No. 69 (July 3, 2019); *Dickenson County, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45252, ECF No. 61 (July 3, 2019); *Washington County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45254, ECF No. 72 (July 3, 2019); *City of Galax, Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45243, ECF No. 70 (July 3, 2019); *Giles County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45236, ECF No. 71 (July 3, 2019); *Page County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45275, ECF No. 80 (July 3, 2019); *Pittsylvania County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45247, ECF No. 79 (July 3, 2019); *Henry County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45245, ECF No. 79 (July 3, 2019); *Lee County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45251, ECF No. 75 (July 3, 2019); *City of Norton, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45249, ECF No. 71 (July 3, 2019); *Montgomery County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45234, ECF No. 70 (July 3, 2019); *City of Paterson v. Purdue Pharma, L.P., et al.*, No. 1:18-op-45371, ECF No. 45 (Mar. 15, 2019); *Town of Wethersfield v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45663, ECF No. 49 (Oct. 28, 2019); *Town of Enfield v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45581, ECF No. 80 (Oct. 7, 2019).

City of Huntington, West Virginia, which filed an amended complaint in 2019 that was signed by the PEC. ECF No. 2582.

In April 2022, the Judicial Panel on Multidistrict Litigation (**JPML**) closed the MDL to new cases. *In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2–3 (J.P.M.L. Apr. 8, 2022). The JPML observed that the MDL had largely completed common discovery, prepared several bellwether cases, and established a bellwether remand process. *Id.* at *2. Upon finding that the MDL court had "complete[d] its primary tasks," the JPML determined that "the benefits are outweighed by the effects of transferring new cases to this mature litigation." *Id.* By July 2022—90 days after the last case was transferred into the MDL—at least 82 plaintiffs had filed complaints in MDL cases asserting claims against the PBMs.[4]

---

[4] *See* cases cited in footnote 3 above; *see also Allegany County, New York v. Purdue Pharma L.P., et al.*, No. 1:19-op-46151, ECF No. 1-5 (Aug. 27, 2019); *Amherst County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45046, ECF No. 1-2 (Nov. 13, 2019); *Botetourt County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45064, ECF No. 1-3 (Nov. 13, 2019); *Buchanan County, Virginia v. Purdue Pharma, L.P, et al.*, No. 1:19-op-45253, ECF No. 1-1 (Dec. 13, 2018); *Camden County v. Dannie E. Williams MD, et al.*, No. 1:20-op-45068, ECF No. 1-1 (Oct. 28, 2019); *Chesterfield County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45173, ECF No. 1-2 (Feb. 3, 2020); *City of Amsterdam v. Purdue Pharma, L.P., et al.*, No. 1:19-op- 46162, ECF No. 1-3 (July 23, 2019); *City of Auburn v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45843, ECF No. 1-4 (June 28, 2019); *City of Buena Vista, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45159, ECF No. 1-2 (Jan. 21, 2020); *City of Fairfax, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45177, ECF No. 1-2 (Feb. 27, 2020); *City of Ogdensburg v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45852, ECF No. 1-4 (July 1, 2019); *City of Orlando, Florida v. CVS Health Corporation et al.*, No. 1:20-op-45223, ECF No. 1-1 (April 28, 2020); *City of Portsmouth v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45856, ECF No. 1-2 (June 24, 2019); *City of Radford, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-46154, ECF No. 1-1 (July 24, 2019); *City of Saratoga Springs v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45857, ECF No. 1-4 (July 1, 2019); *City of Springfield, Missouri v. Purdue Pharma, L.P. et al.*, No. 1:18-op-45899, ECF No. 1 (May 30, 2018); *City of Waynesboro, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-46152, ECF No. 1-3 (Aug. 16, 2019); *City of Winchester, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45176, ECF No. 1 (Feb. 25, 2020); *County Board of Arlington County, Virginia v. Purdue Pharma, LP, et al.*, No. 1:21-op-45078, ECF Nos. 1-3 to 1-7 (Nov. 11, 2019); *County of Jefferson, NY v. Purdue Pharma, L.P., et al.*, No. 1:19-op-45347, ECF No. 1 (June 12, 2019); *Cumberland County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-46153, ECF No. 1-1 (Aug. 15, 2019); *Dinwiddie County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:20-op-45291, ECF No. 1 (Aug. 6, 2020); *Employer-Teamsters Local Nos. 175 &*

Until recently, this Court repeatedly reaffirmed the finality of the deadlines in CMO-1, which, by that point, permitted amendments only for cases selected as bellwethers. During a hearing discussing PBM bellwether selection, the Court stated that it would not let "plaintiffs amend every case" because "the Sixth Circuit's not going to allow that." ECF No. 5168 at 14:3–6. The Court later explained it "has never considered setting thousands of bellwether trials against PBMs, nor amendment of thousands of cases" and "has explicitly told the parties it would allow amendments *only of the small number of cases eventually selected as bellwethers* and would do so because the Sixth Circuit has already ruled on that issue." ECF No. 5217 at 8 (emphasis added). The Court cited the Sixth Circuit's decision stating that CMO-1's amendment deadline "did not clearly violate Rule 16 because it provided some limit (when a case was selected as a bellwether), although the order went right to the edge of the district court's discretion under Rule 16." *In re Nat'l Prescription Opiate Litig.* (*In re Meijer*), 2022 WL 20701236, at *1 (6th Cir. Nov. 10, 2022).

This Court reversed course in May 2024, granting the PEC's motion to allow all MDL plaintiffs yet another opportunity to seek leave to amend their complaints. *See* Final Amendment

---

*505 Health & Welfare Fund et al. v. Purdue Pharma, L.P. et al.*, No. 1:18-op-45446, ECF No. 1 (Apr. 17, 2018); *Frederick County, Virginia et al. v Mallinckrodt PLC et al.*, No. 1:20-op-45233, ECF No. 1-2 (May 19, 2020); *Goochland County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45175 , ECF No. 1 (Jan. 29, 2020); *Henrico County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45172, ECF No. 1 (Feb. 7, 2020); *Isle of Wight County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45145, ECF No. 1-2 (Jan. 21, 2020); *Jefferson County, Missouri, et al. v. Williams, et al.*, No. 1:19-op-45371, ECF No. 1-2 at 75 (Jan. 31, 2019); *King and Queen County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45138, ECF No. 1-2 (Jan. 21, 2020); *Lincoln County v. Richard Sackler, M.D. et al.*, No. 1:20-op-45069, ECF No. 1-1 (Oct. 31, 2019); *Mecklenburg County, Virginia v. Purdue Pharma, L.P.*, et al., No. 1:20-op-45174, ECF No. 1 (Mar. 11, 2020); *Northampton County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45144, ECF No. 1-2 (Jan. 21, 2020); *Patrick County Virginia v. Purdue Pharma, L.P., et al.*, No. 1:19-op-46149, ECF No. 1-1 (July 25, 2019); *Shenandoah County, Virginia v. Purdue Pharma L.P., et al.*, No. 1:19-op-46150, ECF No. 1-3 (Aug. 14, 2019); *St. Francois County v. Dannie E. Williams MD, et al.*, No. 1:19-op-45847, ECF No. 1-3 (June 19, 2019); *Stafford County, Virginia v. Mallinckrodt PLC et al.*, No. 1:20-op-45178, ECF No. 1-2 (Mar. 6, 2020); *Town of Bennington, Vermont v. Mallinckrodt PLC, et al.*, No. 1:19-op-45791, ECF No. 1 (Sept. 17, 2019).

Order at 1–3. Although the PBMs insisted that every plaintiff seeking leave to amend should file its own motion establishing good cause, along with a copy of any proposed amended pleading, ECF No. 5439; ECF No. 5471 at 12:3–12, 12:22–13:7, 14:2–11, 16:15–23, 20:21–21:3, 23:17–24:1, 25:13–19, the Court overruled those objections and directed "all plaintiffs who wish to add [a given] defendant" to collectively "file a *single* motion to amend" as to each defendant, without needing to serve proposed amended complaints. Final Amendment Order at 1–2; ECF No. 5471 at 12–24.[5] Instead, the Court ordered that the "PEC must supply" "any plaintiff-specific factual allegations pertinent to each individual case," "any jurisdiction-specific claims the plaintiff seeks to add to (or dismiss from) each individual case," and "good cause for the proposed amendments." Final Amendment Order at 2.

Yet the Moving Plaintiffs' motions do not meet even that low burden. On July 29, 2024, the Moving Plaintiffs filed omnibus motions on behalf of more than 2,000 plaintiffs seeking to add claims against the PBMs, without any specific factual allegations, jurisdiction-specific claims, or individualized showing of good cause. ECF Nos. 5547; 5548. Two days later, on August 1, 2024, the Moving Plaintiffs filed a "Corrected Roadmap Overview for Motions for Leave to Amend" and attached a new "chart" purporting to add *even more* plaintiffs to its omnibus motions against the PBMs, again without any attempt to establish good cause with particularized facts. ECF Nos.

---

[5] The Court justified excusing the Moving Plaintiffs from filing any proposed amended complaint on the grounds that, "because there's been so much litigation, everyone sees and knows what the claims look like." ECF No. 5471 at 24:14–15; *see also id.* at 25:15–25 (OptumRx counsel: "I can tell you from my experience, I don't think I've ever opposed an amended complaint without seeing the proposed amended complaint. And it sounds like they don't have to file proposed amended complaints so long as their motion – that's highly irregular in my -- THE COURT: That's fine. I'm not going to -- I mean I want this to move forward. Okay? So you, Mr. Boone, you know -- you know very well what a RICO complaint against OptumRX looks like. You know very well what a public nuisance claim against OptumRX looks like. You've got them in the four bellwethers. Okay?").

5565; 5565-1. More than a month later, the Moving Plaintiffs served, but did not file, yet a third iteration of its Moving Plaintiffs chart, removing numerous plaintiffs from its omnibus motions. *See* Exhibit A. Another plaintiff (Cleveland County, NC) belatedly moved to join the omnibus motions against the PBMs, which the Court granted over the PBMs' objections. ECF Nos. 5655; 5682. As it stands, 1,833 plaintiffs in 1,564 cases (some cases have multiple Moving Plaintiffs) seek leave in two omnibus motions to add the PBMs as defendants. *See* Exhibit A.

## **LEGAL STANDARD**

The Moving Plaintiffs filed their omnibus motions for leave to amend nearly five-and-a-half years after CMO-1's final amendment deadline. *See* ECF No. 1106. Because the motions come well past the scheduling order's deadline for amendments, the Moving Plaintiffs must (as they acknowledge) satisfy both Federal Rules of Civil Procedure 15 *and* 16. *See* ECF No. 5565 at 5–10; *Leary*, 349 F.3d at 909 ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."). "[T]he moving party must meet a 'higher threshold' in showing good cause under Rule 16 than it would under Rule 15." *Armatas v. Haws*, 2021 WL 5356028, at *3 (6th Cir. Nov. 17, 2021) (citation omitted).

**Rule 16.** Rule 16 provides that "the district judge . . . must issue a scheduling order" that, among other things, "must limit the time" in which the parties may "join other parties" or "amend the pleadings." Fed. R. Civ. P. 16(b)(1), (3)(A). After that deadline, a party can amend the pleadings only if it shows "good cause." Fed. R. Civ. P. 16(b)(4). "[T]he application of Rule 16(b)'s good-cause standard is not optional." *In re CVS*, 956 F.3d at 843 (quoting *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008)). Indeed, "when it comes to motions that can spell the life or death of a case, such as . . . a motion to amend pleadings, it is important for the district court to . . . apply the traditional standards governing such motions." *Id.* at 845 (citation omitted).

"The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 272 (6th Cir. 2021) (citation omitted). The moving party must "demonstrate[] that 'despite their diligence they could not meet the original deadline.'" *In re CVS*, 956 F.3d at 843 (citation omitted). "[A] party cannot show diligence when it is 'aware of the basis of a claim for many months' and fails to pursue that claim." *Profitt*, 2024 WL 3622448, at *4 (quoting *Leary*, 349 F.3d at 908). "Another important consideration" is "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906. "The longer the delay, the less prejudice the opposing party will be required to show." *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 880 (6th Cir. 2020) (citation omitted).

**Rule 15.** If a plaintiff shows good cause under Rule 16, the court then "will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909. Under Rule 15, a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "There are circumstances, however, where justice counsels against amendment, 'such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted" under Rule 15(a). *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989) (citation omitted). Rule 15(a) also requires an amending plaintiff to "act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995) (affirming, on grounds of undue delay

and prejudice, denial of motion for leave to amend filed two years after filing of complaint). As with Rule 16, "[t]he longer the delay, the less prejudice the opposing party will be required to show" under Rule 15. *Dubuc v. Green Oak Township*, 312 F.3d 736, 752 (6th Cir. 2002).

Finally, proposed amendments cannot be "futile." *Stanley*, 105 F.4th at 867. A proposed amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss. *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. THE OMNIBUS MOTIONS DO NOT COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE, SIXTH CIRCUIT PRECEDENT, OR THE COURT'S FINAL AMENDMENT ORDER.

An MDL court evaluating a party's motion for leave to amend must decide the motion "on the record in that case and not others." *In re CVS*, 956 F.3d at 845. In a nod to that standard, the Court ordered the Moving Plaintiffs to file motions for leave to amend that set out "plaintiff-specific" allegations, claims, and arguments for "each individual case":

> For each defendant the PEC wishes to add to any case, the PEC shall file a ***single*** motion to amend the complaints of ***all*** plaintiffs who wish to add that defendant. Each defendant-specific motion may be broken into two parts . . . . In the second part of each of these defendant-specific, omnibus motions, the PEC must supply: (1) a list of ***all*** cases seeking to add that defendant; (2) any plaintiff-specific factual allegations pertinent to ***each individual*** case; (3) any jurisdiction-specific claims the plaintiff seeks to add to (or dismiss from) ***each individual*** case; and (4) good cause for the proposed amendments, stating with particularity the reasons amendment should be permitted in ***each individual*** case.

Final Amendment Order at 1–2 (emphasis in original). In the hearing leading up to that order, the Court explained that the Moving Plaintiffs must state "for each and every subdivision . . . what claim or claims that subdivision is proposing to bring" against each entity proposed to be added.

15

ECF No. 5471 at 23:10–12. The Court also ordered the Moving Plaintiffs "to give specific reasons why they're adding [a PBM Defendant] in Cases 1 through 100," and to "give a reason for County A and City B and County C, et cetera, et cetera." *Id.* at 14:19–22. The Court emphasized that "each and every subdivision" must identify its "basis for adding [or] filing those claims now against [each entity]," including identifying, for example, "ARCOS data, discovery that's revealed the following facts, whatever you've got, put it in there." *Id.* at 23:10–16; *see also id.* at 18:1–2 ("So for each case, they'll have to say specifically why we're proposing to add OptumRx now."). The Moving Plaintiffs have violated both the Court's orders and the Federal Rules in at least two ways.

### A. The Moving Plaintiffs do not identify the claims and allegations they seek to pursue in each individual case.

The Moving Plaintiffs fail to specify the claims or allegations they seek to pursue against the PBMs in each individual case. The Federal Rules governing amendments require that "the court must have before it the substance of the proposed amendment." *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Roskam Baking Co. v. Lanham Machinery Co.*, 288 F.3d 895, 906 (6th Cir. 2002)). After all, "both the Court and Defendants have the right to know the allegations in [the] case." *Bey v. WalkerHealthCareIT, LLC*, 2017 WL 10992207, at *2 (S.D. Ohio July 25, 2017). And although the PBMs object to the amendment process that this Court created, the Court at least ordered the Moving Plaintiffs to "supply" in the omnibus motions "any plaintiff-specific factual allegations pertinent to *each individual* case" as well as "any jurisdiction-specific claims the plaintiff seeks to add to (or dismiss from) *each individual* case." Final Amendment Order at 2; *see also* ECF No. 5471 at 23:10–16 (requiring "each and every" Moving Plaintiff to identify "what claim or claims that subdivision is proposing to bring").

Yet the omnibus motions and supporting declarations are devoid of plaintiff- and jurisdiction-specific claims and allegations. *See* ECF Nos. 5547; 5547-2; 5548; 5548-2. The

Moving Plaintiffs' filings do not provide any detail about the claims that each plaintiff intends to assert, the specific entities the claims will be asserted against, or the jurisdiction-specific facts that will support those claims. Nor did the Moving Plaintiffs disclose the relief they intend to seek, the state-law authority purportedly giving each Moving Plaintiff the right to assert its claims, when each Moving Plaintiff learned of its claimed injury for limitations-period purposes, or even when those injuries first occurred. Instead, the only case-specific information that each Moving Plaintiff provided in the omnibus motions is the plaintiff's name, case number, docket number, and state where the plaintiff is located. *See* ECF Nos. 5565 at 2–3; 5547-1; 5548-1. That is not remotely enough to supply the "substance of the proposed amendment." *Beydoun*, 871 F.3d at 469.

The Moving Plaintiffs acknowledge those failures, explaining that they will identify the claims they are pursuing against the PBMs in each individual case only *after* the Court grants leave to amend. ECF No. 5565 at 3 ("With respect to the jurisdiction-specific claims to be asserted by each plaintiff, the PEC proposes that any plaintiff granted leave to amend will . . . file supplemental and amended allegations" in the future.). But that is not what this Court ordered, let alone what Sixth Circuit law requires. This Court's "decision whether to grant a motion to amend in an individual case depends on the record *in that case* and not others." *In re CVS*, 956 F.3d at 845. The Court cannot possibly issue a ruling based on the record of more than one thousand individual cases when the Moving Plaintiffs have not presented *any* case-specific allegations, claims, or arguments.

Those failings are amplified by the Moving Plaintiffs' failure to include any proposed amended complaints. The Sixth Circuit has explained that "a party seeking an amendment should attach a copy of the amended complaint." *Kuyat*, 747 F.3d at 444; *see also* 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1485 (3d ed.) ("[A] copy of the amendment

should be submitted with the motion so that the court and the adverse party know the precise nature of the pleading changes being proposed."). In "an ordinary litigation on an ordinary docket," *In re CVS*, 956 F.3d at 844, the failure to supply a proposed amended complaint is, by itself, grounds to deny leave for amend. *See Doe v. Carson*, 2020 WL 2611189, at *1 (6th Cir. May 6, 2020) (affirming denial of leave to amend because plaintiff failed to submit proposed amended complaint); *Harris v. Davidson County Sheriff*, 2019 WL 7573883, at *4 (6th Cir. Dec. 11, 2019) (same); *Kostyu v. Ford Motor Co.*, 1986 WL 16190, at *2 (6th Cir. July 28, 1986) (same). The Court's decision, over the PBMs' objections, to allow motions for leave without accompanying proposed amended complaints was error given the Sixth Circuit's directives. *Kuyat*, 747 F.3d at 444 ("[A] party seeking an amendment should attach a copy of the amended complaint"); *In re CVS*, 956 F.3d at 844 (the rules in an MDL are the same as "ordinary litigation on an ordinary docket"); *see also In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) ("[T]he basic ground rules for assessing motions for leave to amend . . . may not be tossed out the window in an MDL case. . . . [I]t is important for the district court to articulate and apply the traditional standards governing such motions."). But even with the flawed process, the Moving Plaintiffs' failure to provide adequate notice of their claims—as the Court expressly ordered them to do—should sound the death knell for their motions.

The Moving Plaintiffs cannot satisfy their notice obligation by asserting that all 1,833 plaintiffs will assert claims "substantially identical" to those in the complaint filed in the *City of Rochester* bellwether. ECF Nos. 5547 at 2; 5548 at 2. The claims and allegations in *City of Rochester* relate to the City of Rochester, New York; they do not reveal what claims and allegations any other Moving Plaintiff may pursue. 1,686 of the 1,833 Moving Plaintiffs are not located in New York, so they cannot pursue the same New York law claims or the same New York conduct

alleged by the City of Rochester. 298 of the Moving Plaintiffs also are not cities or counties, but instead are individuals, hospitals, unions, or other non-municipal entities that cannot pursue the same kinds of claims and injuries as the City of Rochester. Nor does the *City of Rochester* complaint answer jurisdiction-specific questions, such as how each proposed PBM defendant allegedly caused harm to any particular Moving Plaintiff other than the City of Rochester.

The operative complaints in the Moving Plaintiffs' respective cases likewise fail to provide the required notice. Those complaints contain allegations against only non-PBM defendants—such as manufacturers, distributors, and prescribers—which differ in kind from PBMs. *See* ECF No. 1848 at 2 ("The Court understands that the PBM Defendants do not manufacture, market, or prescribe opioid medications."). They do not provide fair notice as to what claims or allegations a given Moving Plaintiff seeks to assert against the PBMs.

Without a proposed amended complaint or any equivalent form of notice for each individual case, this Court cannot evaluate the merits of the omnibus motions. *See Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000) ("Obviously, without this draft complaint, the District Court cannot evaluate the merits of a plaintiff's request."). In this opposition, the PBMs have used the limited information available to establish why the motions are defective and should be denied. But the PBMs cannot truly test—and this Court cannot fairly consider—the Moving Plaintiffs' requests for relief without the specific claims and allegations for each individual case.

Because the Moving Plaintiffs have failed to provide the requisite notice of their claims and allegations against the PBMs, the omnibus motions should be denied. *See Ohio Sec. Ins. Co. v. Brakefire, Inc.*, 2024 WL 2816024, at *9 (N.D. Ohio, June 3, 2024) (denying leave to amend because plaintiff failed to provide "a copy of a proposed amended complaint, or otherwise

19

adequately inform the Court of the nature of its proposed amendment"); *Glick v. Farm Credit Servs. of Mid-America, FLCA*, 2010 WL 3118673, at *1 (N.D. Ohio Aug. 6, 2010) (same).

      **B.**    **The Moving Plaintiffs do not state with particularity the reasons why good cause for leave to amend exists in each individual case.**

The Moving Plaintiffs also fail to "stat[e] with particularity the reasons amendment should be permitted in ***each individual*** case." Final Amendment Order at 2. The Court directed "each and every" plaintiff seeking leave to amend to "give *specific reasons* why they're adding [a PBM Defendant]" to their individual case, reiterating that they must "give a reason for County A and City B and County C, et cetera, et cetera." ECF No. 5471 at 14:19–22. The Moving Plaintiffs do not even try to comply with the Court's instruction (and the Federal Rules' requirement) to show good cause on a *case-by-case* basis. They do not offer a single case- or plaintiff-specific reason to add the PBMs to any individual case—let alone state those reasons with the particularity that the Court ordered. Instead, they lump together all 1,833 plaintiffs and summarily assert that all Moving "Plaintiffs have 'good cause' to amend," that the PBMs "will suffer no undue prejudice" in any case, and that the PBMs "cannot show that permitting amendment here will be futile." ECF No. 5547 at 7–17 (title case omitted); ECF No. 5548 at 7–16.

The Sixth Circuit has held in this MDL that any decision whether to grant a motion to amend in a particular case "depends on the record in that case and not others" and that the individual MDL cases must "retain their separate identities." *In re CVS*, 956 F.3d at 845 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015)). When reviewing this Court's decision to grant the Track 1-B plaintiffs leave to amend their complaints, the Sixth Circuit held that although MDL courts have "broad discretion to create efficiencies," that discretion does not permit the court to disregard the Federal Rules, "[n]or can a party's rights in one case be impinged to create efficiencies in the MDL generally." *Id.* at 841, 845; *see also In re Phenylpropanolamine*

*(PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006) ("[D]ue process and fundamental fairness may not be sacrificed to provide assembly-line justice."); *Hamer v. LivaNova Deutschland GmbH*, 994 F.3d 173, 177 (3d Cir. 2021) ("[T]he fact that a proceeding occurred in a MDL setting does not alter the substantive rights of the litigants."). This Court cannot disregard the individual nature of each case "in favor of enhancing the efficiency of the MDL as a whole." *In re CVS*, 956 F.3d at 844.

Notwithstanding the Sixth Circuit's directives, the Moving Plaintiffs filed two class-action-like motions on behalf of more than 1,800 plaintiffs and did not justify *any* particular amendment. The Moving Plaintiffs have made it impossible for the PBMs to respond fully to the motions for each individual case and for this Court to evaluate the merits of the motions or determine whether good cause exists in each case based on the record in that case. Unique facts, procedural history, and governing state laws make that analysis different for every Moving Plaintiff. A blanket finding of good cause—as the Moving Plaintiffs seek—is incompatible with the well-established rule that "an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, *as applied to the record in that case alone*." *In re CVS*, 956 F.3d at 841 (emphasis added).

The failure to state with particularity the grounds for amendment in each individual case also violates Federal Rules of Civil Procedure 7 and 15. "Requesting leave to amend under Fed. R. Civ. P. 15(a) is governed by Fed. R. Civ. P. 7(b), which requires that a motion 'shall state with particularity the grounds therefor . . . .'" *Evans v. Pearson Enterprises*, 434 F.3d 839, 853 (6th Cir. 2006) (quoting Fed. R. Civ. P. 7(b) (2006)).[6] Because the Moving Plaintiffs do not state with

---

[6] Rule 7(b) was amended in 2007, though the amendment was stylistic, not substantive. It now provides that a motion must "state with particularity the grounds for seeking the order." Fed. R.

particularity the reasons why good cause for leave to amend exists in each individual case, their omnibus motions should be denied.[7]

In short, the Moving Plaintiffs' disregard for the Federal Rules of Civil Procedure, binding precedent, and the Final Amendment Order, is extraordinary. The PBMs have searched for any instance in which a court allowed amendments for hundreds of plaintiffs this far after the deadline based on omnibus motions without individualized showings of good cause. There is none.

## II.   THE MOVING PLAINTIFFS FAIL TO SHOW GOOD CAUSE UNDER RULE 16.

The Moving Plaintiffs filed their omnibus motions more than five years after CMO-1's March 16, 2019 deadline for amending complaints. As a result, they must affirmatively show that they have good cause to amend. *See* Fed. R. Civ. P. 16(b)(4); *In re CVS*, 956 F.3d at 843. To demonstrate good cause, the Moving Plaintiffs must show that they were diligent—that is, that they could not have sought leave to amend before the deadline or any earlier than they did. *See In re CVS*, 956 F.3d at 843; *Leary*, 349 F.3d at 907. If—and only if—the Moving Plaintiffs establish diligence, then the Court must also consider whether the amendments would prejudice the PBMs. *See Leary*, 349 F.3d at 909. The Moving Plaintiffs fail to satisfy either requirement (let alone both).

### A.   The Moving Plaintiffs were not diligent in seeking leave to amend.

The Moving Plaintiffs contend that they have good cause to amend the scheduling order because they "could not have met the original deadline" for amendments. ECF Nos. 5547 at 7–12; 5548 at 7–12 (capitalization altered). Without considering any individual plaintiff's actual deadline

---

Civ. P. 7(b); *see also Metyk v. KeyCorp*, 560 F. App'x 540, 543 (6th Cir. Mar. 26, 2014) (applying amended version of Rule 7(b) to motion for leave to amend under Rule 15).

[7] The Moving Plaintiffs' failure to provide notice or establish good cause on a case-by-case basis cannot be rectified in their reply brief because any new arguments are waived. *See* ECF No. 3102 at 4 n.2 (declining to "address arguments raised for the first time in a reply brief"); *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.*, 598 F.3d 257, 275 (6th Cir. 2010) ("Arguments raised only in reply, and not in the original pleadings, are not properly raised before the district court[.]").

to amend its complaint under CMO-1, the Moving Plaintiffs instead argue that none of them could have amended before July 2022, approximately 90 days after the JPML stopped transferring cases to the MDL.[8] The Moving Plaintiffs argue that they could not have moved to amend earlier because they only recently identified "new information, not available to any of the Amending Plaintiffs until long after the deadline for amendment had passed." ECF No. 5547 at 1; 5548 at 1. That purportedly "key information" was supposedly identified through documents produced by the PBMs in the *Jefferson County* state-court litigation[9] and reproduced in the MDL in early 2023. *See* ECF Nos. 5547 at 3–4; 5548 at 3–4. To support that assertion, the Moving Plaintiffs cite to just thirteen documents produced by OptumRx, Inc., and eighteen documents produced by Express Scripts, Inc. *See* ECF Nos. 5547-2 ¶¶ 20–21; 5548-2 ¶¶ 15–16.

The "allegations sourced to" the allegedly "new" information found in the *Jefferson County* documents fall into two main categories:

(1) **Allegations about rebate agreements.** The Moving Plaintiffs seek to allege that the PBMs' rebate agreements with opioid manufacturers prevented or discouraged them from imposing utilization management tools, such as prior authorization

---

[8] That collective argument underscores the Moving Plaintiffs' disregard of the individualized nature of each case—Moving Plaintiffs in several cases filed their original complaints on or after July 1, 2022. *See Marion County Board of Education et al. v. Cephalon, Inc. et al.*, 1:22-op-45028-DAP, ECF No. 1 (July 1, 2022); *Susanville Elementary School District et al. v. Cephalon, Inc. et al.*, 1:22-op-45031-DAP, ECF No. 1 (Oct. 4, 2022); *Lee County, AL et al. v. Mylan Pharmaceuticals Inc. et al.*, 1:23-op-45010-DAP, ECF No. 1 (Nov. 8, 2023).

[9] The *Jefferson County* case started in Missouri state court as a case brought by eighteen Missouri cities and counties. *See Jefferson County v. Williams*, No. 1922-CC00203 (Mo. Cir. Ct.). It was removed to federal court and transferred to this MDL. *See Jefferson County v. Williams*, No. 1:19-op-45371 (N.D. Ohio). In July 2019, this Court severed the claims of two plaintiffs—Jefferson County and Franklin County—and remanded those parties and claims back to state court. ECF No. 1987. There, they proceeded as two separate cases. *See Jefferson County v. Williams*, No. 20JE-CC00029 (Mo. Cir. Ct.); *Franklin County v. Williams*, No. 20AB-CC00006 (Mo. Cir. Ct.). *Jefferson County* has since been removed again to federal court. *See Jefferson County v. Williams*, No. 4:23-cv-01539 (E.D. Mo.), *appeal docketed*, No. 24-1550 (8th Cir. Mar. 18, 2024).

restrictions, or from making formulary changes to restrict access to prescription opioids. ECF Nos. 5547 at 5–6; 5548 at 6.

(2) **Allegations about prescribing data.** The Moving Plaintiffs seek to allege that the PBMs had access to data concerning opioid utilization but failed to act on that information to quell the opioid crisis. ECF Nos. 5547 at 6; 5548 at 6.

The notion that the Moving Plaintiffs could not have made those allegations before receiving the *Jefferson County* productions is wrong and not credible for at least five reasons. *First*, dozens of plaintiffs (including some of the Moving Plaintiffs) asserted the same allegations against the PBMs years ago (as far back as 2018) without the *Jefferson County* documents. *Second*, none of the cited *Jefferson County* documents contains "new" information. Indeed, documents containing the same information were available in the MDL at least as early as August 2018. *Third*, the *City of Rochester* amended complaint (which the Moving Plaintiffs cite as the model for their own planned amendments) relies largely on documents produced by other MDL defendants in 2018. *Fourth*, the *Jefferson County* documents do not even apply to 16 of the 18 OptumRx and Express Scripts entities against which the Moving Plaintiffs now seek to add claims. *Fifth*, even assuming the cited *Jefferson County* documents did contain "new" information (they do not), the Moving Plaintiffs still unreasonably delayed by waiting more than a year before seeking leave to amend.

### 1. Many plaintiffs pursued claims against the PBMs years before the *Jefferson County* productions.

After seven years of litigation and tens of millions of documents produced by other defendants including manufacturers, distributors, and pharmacies, the Moving Plaintiffs claim that they did not identify "key information" to support adding claims against the PBMs until sometime in 2023. *See* ECF Nos. 5547 at 2; 5548 at 2. That argument is both wrong and not credible.

24

Many plaintiffs, including some of the Moving Plaintiffs, asserted virtually identical claims against some of the PBMs years ago—long before any document was produced in *Jefferson County*. Indeed, *dozens* of the Moving Plaintiffs named OptumRx, Inc., Express Scripts, Inc., and several of their affiliates in their original complaints, including 12 complaints filed on public dockets in 2018.[10]

Webb County, Texas (represented by the same counsel that now moves on behalf of many of the Moving Plaintiffs) filed the first opioid case against the PBMs in January 2018. *See County of Webb v. Purdue Pharma et al.*, No. 1:18-op-45175 (N.D. Ohio Jan. 25, 2018), ECF No. 1 (**Webb County Compl.**). Webb County alleged that PBMs negotiated for "rebates or other financial incentives" to "place[] opioids in a preferred place on a formulary or otherwise ma[k]e opioids available for improper use." *Id*. ¶ 424. And Webb County alleged that PBMs "refused" to limit access to opioids because of those rebate payments. *Id*. ¶ 255; *see also id*. ¶¶ 17–21, 63, 253. Webb County also alleged that "Manufacturer Defendants and their PBM allies had access to scientific studies, detailed prescription data, and reports of adverse events, including reports of addiction, hospitalization, and deaths—all of which made clear the harms from long-term opioid use." *Id*. ¶ 234; *see also id*. ¶ 317 ("Defendants had in their possession and control . . . data suggesting or proving that large amounts of opioids were being diverted from legitimate, legal channels and used for medical treatment.").

---

[10] *See City of Springfield v. Purdue Pharma, L.P.*, No. 1:18-op-45899; *Montgomery County v. Purdue Pharma, L.P.*, No. 1:19-op-45234; *Giles County v. Purdue Pharma, L.P.*, No. 1:19-op-45236; *City of Galax v. Purdue Pharma, L.P.*, No. 1:19-op-45243; *Henry County v. Purdue Pharma, L.P.*, No. 1:19-op-45245; *City of Alexandria v. Purdue Pharma, L.P.*, No. 1:19-op-45246; *Pittsylvania County v. Purdue Pharma, L.P.*, No. 1:19-op-45247; *City of Norton v. Purdue Pharma L.P.*, No. 1:19-op-45249; *Lee County v. Purdue Pharma, L.P.*, No. 1:19-op-45251; *Dickenson County v. Purdue Pharma, L.P.*, No. 1:19-op-45252; *Washington County v. Purdue Pharma, L.P.*, No. 1:19-op-45254; *Page County v. Purdue Pharma, L.P.*, No. 1:19-op-45275.

The Moving Plaintiffs now seek leave to add those same allegations, pointing to the Rochester Amended Complaint as a model for what they would assert in their own amended complaints. *See City of Rochester v. Purdue Pharma, L.P. et al.*, No. 1:19-op-45853, ECF No. 110 (N.D. Ohio Mar. 6, 2024) (**Rochester Am. Compl.**) ¶ 276 ("Since at least 2000, opioid manufacturers have paid rebates and other fees to Express Scripts and Optum in exchange for preferred formulary placement for their opioid products."); *id.* ¶ 733(b) (alleging that the PBMs "facilitate[d] the increased use of opioids by giving opioids unwarranted preferred formulary status in standard offerings in exchange for profiting from payments from the opioid manufacturers"); *id.* ¶ 295 ("Throughout their confidential negotiations with the opioid manufacturers, in exchange for rebates and other fees, the PBM Defendants have agreed that they would not 'disadvantage' their opioid drugs, nor would they place UM restrictions on their use within their standard offerings."); *id.* ¶ 309 (alleging that the PBMs "constructed standard formularies that garnered significant rebates and other fees in exchange for often unfettered access for 'preferred' opioids"); *id.* ¶ 472 ("[The PBMs] refused to use [concurrent drug utilization review] to control opioid misuse because doing so would have impacted their revenue, including receipt of rebates, income generated from opioid dispensing, and other fees."); *id.* ¶ 379 ("[The PBMs] were made aware of opioid epidemic through the vast amount of data they have had, the knowledge gained through their clients, manufacturers, and other entities in the health care arena, and through clinical evaluations for things such as formulary placement."); *id.* ¶ 415 ("The PBM Defendants knew about the epidemic not only from their own data, but from other sources as well. One of these sources was almost surely their own P&T committees.").

Yet Webb County relied on publicly available documents to make those same allegations six years ago. *See, e.g.*, Webb County Compl. ¶ 16 n.8 (citing 2017 article in Pharmacy Times);[11] *id*. ¶ 20 n.9 (citing 2017 article in Forbes);[12] *id*. ¶ 63 & n.25 (quoting 2016 article from Psychology Today asserting that opioid manufacturers, "[t]o undermine the policy of requiring prior authorization, . . . offered lucrative rebates to middlemen such as Merck Medco [now Express Scripts, a defendant herein] and other pharmacy benefit managers, on condition that they eased availability of the drug and lowered co-pays");[13] *id*. ¶ 118 n.29 (citing 2017 article in Health Affairs titled "On behalf of payers, pharmacy benefit managers negotiate rebates from drug makers in exchange for preferred formulary placement");[14] *id*. ¶ 253 n.100 (same); *id*. ¶ 255 & n.103 (quoting 2016 article in STAT).[15] One of those sources relied on by Webb County, a 2016 article published by STAT, claimed that "the rebates paid to pharmacy benefit managers were used to guarantee favorable status for OxyContin on their listings of approved drugs." *See* Armstrong, *supra* n.15.

Webb County's complaint was no secret. Quite the opposite: Webb County's attorneys filed two letters to the Court on the MDL docket in early 2018 notifying the Court and all parties of its new lawsuit "nam[ing] a *critical defendant group*—pharmacy benefit managers ('PBMs')." ECF

---

[11] Brittany Hoffman-Eubanks, *The Role of Pharmacy Benefit Managers in American Health Care: Pharmacy Concerns and Perspectives: Part 1*, Pharm. Times (Nov. 14, 2017), https://www.pharmacytimes.com/view/the-role-of-pharmacy-benefit-mangers-in-american-health-care-pharmacy-concerns-and-perspectives-part-1.

[12] Wayne Winegarden, *To Improve Pharmaceutical Pricing, Reform PBMs And Fix Health Care's Systemic Problems*, Forbes (Apr. 5, 2017), https://www.forbes.com/sites/econostats/2017/04/04/to-improve-pharmaceutical-pricing-reform-pbms-and-fix-health-cares-systemic-problems/.

[13] Christopher Lane, *America's Opioid Epidemic*, Psych. Today (Oct. 28, 2016), https://www.psychologytoday.com/us/blog/side-effects/201610/americas-opioid-epidemic.

[14] Cole Werble, *Health Policy Brief: Pharmacy Benefit Managers*, Health Affs. (Sept. 14, 2014),https://www.healthaffairs.org/do/10.1377/hpb20171409.000178/collectionitem/healthpolicybrief_178.pdf.

[15] David Armstrong, *Drug maker thwarted plan to limit OxyContin prescriptions at dawn of opioid epidemic*, STAT (Oct. 26, 2016), https://www.statnews.com/2016/10/26/oxycontin-maker-thwarted-limits/.

Nos. 108 (emphasis added); 168. The letters further explained Webb County's core allegations that PBMs (1) impact the supply of opioids through formulary placement, and (2) possess valuable data on which drugs were dispensed to plaintiffs' communities. *Id.* On January 26, 2018, Webb County's attorneys also wrote separately *to PEC leadership* alerting them of Webb County's complaint and specifically requesting the creation of a PBM track. ECF No. 978-6.[16] And the Track Two plaintiffs (represented by the PEC) added claims against the PBMs in 2019. ECF No. 2582.

Although most of the Moving Plaintiffs did nothing in response to Webb County's complaint, dozens responded by asserting similar claims against the PBMs. Like Webb County, those plaintiffs alleged that (i) opioid manufacturers paid rebates to the PBMs to obtain favorable formulary placement and discourage utilization controls; and (ii) the PBMs have access to large amounts of prescription claim data that they could have used to identify abuse and diversion but chose not to use their data to stem the flow of opioids for financial gain.[17] Also like Webb County, those plaintiffs relied on publicly available documents to make their allegations.[18]

---

[16] Webb County's attorneys also urged the PEC to consider that "the Court's ameliorative objective – *and the plaintiffs' settlement leverage* – would both be well served if all responsible parties are named outright as defendants." ECF No. 978-6 at 2 (emphasis added).

[17] *See, e.g.*, *Montgomery County v. Purdue Pharma, L.P.*, No. 1:19-op-45234 (N.D. Ohio) (Dec. 6, 2018), ECF Nos. 1-1, 1-2 ¶¶ 261, 349, 354, 372; *City of Springfield v. Purdue Pharma, L.P.*, No. 1:18-op-45899 (N.D. Ohio May 30, 2018) ECF No. 1 ¶¶ 18, 215–16, 226 (**Springfield Compl.**); *Giles County v. Purdue Pharma, L.P.*, No. 1:19-op-45236 (N.D. Ohio Aug. 27, 2018), ECF No. 36 ¶¶ 18, 247, 344, 357–59 (**Giles County Compl.**); *Buchanan County v. Purdue Pharma, L.P.*, No. 1:19-op-45253 (N.D. Ohio Sept. 6, 2018), ECF No. 1-1 ¶ 53; *Washington County v. Purdue Pharma, L.P.*, No. 1:19-op-45254 (N.D. Ohio Dec. 13, 2018), ECF No. 1-1 ¶¶ 18, 48, 330, 403–05 (**Washington County Compl.**).

[18] *See, e.g.*, Springfield Compl. ¶ 226 (quoting 2017 article by Johns Hopkins Bloomberg School of Public Health & The Clinton Foundation); Giles County Compl. ¶ 18 (citing 2017 article from The Hill); Washington County Compl. ¶¶ 403–05 (citing Express Scripts, *Saver Plan Express Scripts Medicare (PDP) 2018 Formulary*, https://www.expressscriptsmedicare.com/pdf/medicare/medicare-part-d-2018-formulary-saver.pdf; Express Scripts, *Value Plan Express Scripts Medicare (PDP) 2018 Formulary*, https://www.expressscriptsmedicare.com/pdf/medicare/medicare-part-d-2018-formulary-value.pdf; Express Scripts, *Choice Plan Express Scripts Medicare (PDP) 2018 Formulary*, https://www.express-scriptsmedicare.com/pdf/medicare/medicare-part-d-2018-

The Moving Plaintiffs fail to explain why they did not assert similar claims based on the same public information in 2018 or why they chose not to assert similar claims after Webb County publicly filed its complaint when many others did. They therefore cannot show the diligence needed for good cause under Rule 16. *See Profitt*, 2024 WL 3622448, at *4 (affirming denial of leave to amend because plaintiff had access to documents regarding the proposed new defendant's role before the scheduling order deadline); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459 (6th Cir. 2013) (affirming denial of leave to amend because plaintiff "simply waited too long to seek leave to amend" and "should have sought leave as soon as he learned of [the] new fact"), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466 (2019); *see also Thurmond v. Bayer Healthcare Pharms., Inc.*, 649 F. App'x 1003, 1006 (11th Cir. 2016) (affirming denial for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

### 2. The *Jefferson County* productions did not provide "new" information.

The Moving Plaintiffs base their diligence argument on just thirteen OptumRx documents (*see* Declaration of Johan Conrad, ECF No. 5547-2) and eighteen Express Scripts documents (*see* Declaration of Johan Conrad, ECF No. 5548-2) produced in *Jefferson County*. The Moving Plaintiffs generally assert that the *Jefferson County* productions provided "new" information about the PBMs' rebate agreements with opioid manufacturers, the impact rebates had on opioid utilization management (such as prior authorizations), and PBMs' access to and use of data. ECF Nos. 5547-2 ¶ 21; 5548-2 ¶ 16. But none of those documents provide "new" facts to support the

---

formulary-choice.pdf); *id*. ¶¶ 412–14 (citing OptumRx, *Formulary and Drug Lists*, https://professionals.optumrx.com/resources/formulary-drug-lists.html; OptumRx, *2018 Generic Centric Formulary* (July 1, 2018), https://professionals.optumrx.com/content/dam/optum3/professional-optumrx/resources/forms/Generic-Centric%20Formulary.pdf).

Moving Plaintiffs' proposed new claims. On the contrary, the documents contain information that has long been publicly available or that appears in the millions of documents produced in the MDL many years ago. *See* Declaration of Jonathan G. Cooper, dated January 16, 2025 ¶¶ 2, 4 (**Cooper Decl.**); Declaration of Andrew Hatchett, dated January 16, 2025 ¶¶ 2–4 (**Hatchett Decl.**).

For example, the Moving Plaintiffs insist that a rebate agreement produced in *Jefferson County* shed essential new light on Express Scripts' rebate agreements with manufacturers. ECF No. 5548-2 ¶ 16 & n.1 (citing ESI_JEFFCOMO_000250248; Rochester Am. Compl. ¶ 296). Yet Teva produced that *exact* rebate contract in this MDL—stamped TEVA_MDL_A_03461863— back in October 2018. *See* Cooper Decl. ¶ 4. In another example, the Moving Plaintiffs cite as "new" evidence a *public* report that Express Scripts published in *December 2014* to raise awareness about the risks of prescription opioid utilization. *Compare* ECF No. 5548-2 ¶ 16 & n.2 (citing ESI_JEFFCOMO_000003092, *A Nation in Pain*, to demonstrate Express Scripts' awareness of OxyContin abuse), *with A Nation in Pain: Focusing on U.S. Opioid Trends for Treatment of Short-Term and Longer-FTerm Pain, An Express Scripts Report* (Dec. 2014);[19] *see also Many Americans on Long-Term Painkillers Take Potentially Fatal Drug Combinations*, PR Newswire (Dec. 9, 2014) (Express Scripts press release about *A Nation in Pain*).[20]

These two examples highlight the absurdity of Moving Plaintiffs' claim that "none of [them] had access to this information until the [PBMs'] DR-22 production in this litigation." *See* ECF Nos. 5547 at 2; 5548 at 2. As is made clear below, each of the *Jefferson County* documents identified in the Conrod declarations, ECF Nos. 5547-2; 5548-2, contains information available to

[19] *Available at* https://web.archive.org/web/20141231001809/http://lab.express-scripts.com/publications/%7E/media/d48ef3ee579848e7bf3f14af536d7548.ashx.

[20] *Available at* https://www.prnewswire.com/news-releases/many-americans-on-long-term-painkillers-take-potentially-fatal-drug-combinations-300006675.html.

the Moving Plaintiffs long before the amendment deadline, either by way of publicly available articles or documents produced earlier in the MDL.

**OptumRx Rebate Contracts.** The Moving Plaintiffs assert that "information regarding the ways in which OptumRx's rebate contracts with opioid manufacturers prevented the implementation of restrictions on opioids (at the pain of loss of rebates) was not available until the JeffCo Action production." ECF No. 5547 at 9. In support of that assertion, the Moving Plaintiffs cite to rebate contracts first produced in *Jefferson County* containing provisions that granted rebates for drugs that were not "disadvantaged." ECF No. 5547-2 ¶ 21a (citing OPTUMRX_ JEFFCO_0000006804 (2011 rebate agreement with Johnson & Johnson); OPTUMRX_JEFFCO_ 0000473712 (similar agreement with Reckitt Benckiser); OPTUMRX_JEFFCO_0000011106 (2016 rebate agreement with Depomed).

The Moving Plaintiffs' assertion that "information regarding" those contract provisions was not available until the recent *Jefferson County* productions is demonstrably false. The Moving Plaintiffs had access to dozens of rebate contracts produced by opioid manufacturers in the early days of the MDL, including many contracts that contained the same or similar provisions that Moving Plaintiffs claim to have only recently discovered. Indeed, Purdue Pharma alone produced *at least 30 documents* into the MDL repository between 2018 and early 2019 reflecting rebate agreements with OptumRx and its predecessors.[21] For example, by February 2019, Purdue Pharma

---

[21] *See, e.g.*, PKY180310826 (loaded to the MDL repository in August 2018); PKY180455001 (same); PKY180455003 (same); PKY180454999 (same); PKY180315847 (same); PPLPC012000415578 (loaded to the MDL repository in October 2018); PPLPC012000415563 (same); PPLPC012000415571 (same); PPLPC012000421500 (same); PPLPC012000489455 (same); PPLPC028000383134 (loaded to the MDL repository in November 2018); PPLPC029000511306 (same); PPLPC030000759804 (same); PPLPC035000085350 (loaded to the MDL repository in December 2018); PPLPC035000085896 (same); PPLPC035000086602 (same); PPLPC035000086668 (same); PPLPC035000086712 (same); PPLPC035000169563 (same); PPLPC035000209735 (same); PPLPC036000033286 (same); PPLPC036000033367

had produced a document containing its original Medicare Part D Rebate Agreement with OptumRx and eight separate amendments spanning from August 2009 to January 2017. *See* PPLPC051000330460 (cited at Hatchett Decl. ¶ 4). The original 2009 base agreement with OptumRx and each amendment specified the conditions under which Purdue Pharma would pay rebates (discounts) on its opioid products, including conditions relating to utilization management (prior authorization, step therapy, and clinical edits). *See, e.g.*, *id.* at -495, -505, -542. The contracts also included other conditions for the payment of rebates of the sort that the Moving Plaintiffs now claim are "new" information. *See e.g.*, *id.* at -466, -526, -542 (discussing activities that would "not be considered" "disadvantageous" to Purdue Pharma's products); *see also* PPLPC036000156527 (base rebate agreement between Purdue Pharma and Prescription Solutions, Inc., OptumRx's predecessor, and later amendments spanning from July 2009 to January 2011, containing same rebate criteria); PPLP004482616 (base rebate agreement between Purdue Pharma and OptumRx and later amendments spanning from January 2013 to January 2019, containing same rebate criteria); Hatchett Decl. ¶ 4 (PPLPC036000156527 produced by Purdue by December 2018; PPLP004482616 produced by Purdue by February 2019).[22] Those provisions from the dozens of long-ago produced Purdue contracts reflect the same concepts and provisions that the Moving Plaintiffs now claim to have learned about last year. The Moving Plaintiffs cannot credibly contend

---

(same); PPLPC036000086347 (same); PPLPC036000147695 (same); PPLPC036000150648 (same); PPLPC036000153796 (same); PPLPC036000156527 (same); PPLPC036000197965 (same); PPLPC051000330460 (loaded to the MDL repository in February 2019); PPLPC051000331579 (same); PPLP004482860 (same); PPLP004482964 (same); PPLP004482616 (same).

[22] Rebate contracts do not require OptumRx or its clients to place a drug in any particular formulary position or to adopt (or not) any particular utilization-management edit. Instead, the contracts provide for the payment of rebates on certain conditions that the PBM or its clients can choose to meet or not to lower prescription costs. *See, e.g.*, PLPC051000330460 at -525 (Section 3.1.2); PPLPC036000156527 at -543 (Section 3.1.2); PPLPC004482616 at -720 (Section 3.1.2).

that information about OptumRx's contractual relationships with opioid manufacturers was unavailable until recently.

And it is not just Purdue Pharma that produced contracts that should have put the Moving Plaintiffs on notice of rebate-related allegations and theories. Nearly identical language appears in agreements produced by other opioid manufacturers in the MDL *in 2018*. *See, e.g.*, INSYS-MDL-001066990; INSYS-MDL-001073450; INSYS-MDL-001073492; ALLERGAN_MDL_ 01271919; ALLERGAN_MDL_01275087; ALLERGAN_MDL_00127509; *see also* Hatchett Decl. ¶ 4 (all six documents produced by August 2018). The list could go on and on. In short, all the contractual details that Moving Plaintiffs claim to have "newly" learned in Jefferson County have been at their fingertips for at least seven years. Their failure to diligently review that information and pursue any claims precludes them from seeking leave to amend now, years later.

**Express Scripts Rebate Contracts.** Opioid manufacturers likewise produced dozens of rebate agreements with Express Scripts years ago.[23] Several of the documents produced by Purdue compile years' worth of rebate agreements and amendments. *See, e.g.*, PPLP004479733 (rebate agreement and amendments spanning 2006 to 2013); PPLP004479908 (rebate agreement and amendments spanning 2011 to 2018); PPLPC034001154264 (rebate agreement and amendments spanning 2014 to 2017). The manufacturers produced most of these rebate agreements in the MDL in 2018, and all of them by February 2019. *See* Cooper Decl. ¶ 4.

---

[23] *See, e.g.*, MNK-T1_0000727982; MNK-T1_0008130064; MNK-T1_0000481492; PDD1701198993; PDD1701198989; PPLPC026000116684; PPLPC034001154264; PPLPC036000130265; PPLPC036000181080; PPLPC036000181261; PPLPC036000187350; PPLPC036000188706; PPLPC036000194775; PPLP004478870; PPLP004478872; PPLP004478933; PPLP004478949; PPLP004479289; PPLP004479587; PPLP004479733; PPLP004479908; PPLP004480181; TEVA_MDL_A_03451488; TEVA_MDL_A_03461688; TEVA_MDL_A_03461863.

And Express Scripts *itself* produced many of its rebate agreements with Purdue in response to a subpoena from the City of Chicago.[24] The PEC has elsewhere acknowledged that these rebate agreements were reproduced into the MDL in June 2018. *See* ECF No. 5360 at 2 ("[T]he City of Chicago produced the subpoenaed Express Scripts documents into the MDL repository as CHI_002327367 – CHI_002328321 on June 8, 2018."); ECF No. 5361-1. The Moving Plaintiffs thus had access to the rebate agreements long before the March 2019 amendment deadline.

**Effect of Rebates.** The Moving Plaintiffs cite to OPTUMRX_JEFFCO_0603451, OPTUMRX_JEFFCO_0000014268, OPTUMRX_JEFFCO_0000184961, OPTUMRX_ JEFFCO_0000360057, OPTUMRX_JEFFCO_0000535494 and OPTUMRX_JEFFCO_ 0000107098 in support of their allegation that OptumRx "delayed implementing formulary, UM, and other restrictions because of the rebates they were receiving from opioid manufacturers." ECF No. 5547-2 ¶ 21a, c. And they cite to OPTUMRX_JEFFCO_0000506200  as an example of an email exchange showing that "OptumRx considered removing OxyContin from its formularies but hesitated because of the volume of rebates it was receiving." ECF No. 5547-2 ¶ 21d. These allegations are not "new information." Rather, the *City of Rochester* amended complaint also cites to documents produced by Purdue as early as November 2018 to support similar allegations. *See* Rochester Am. Compl. ¶¶ 28–29 (citing PPLPC029000040033 as support of an allegation that OptumRx "initially excluded OxyContin from its formularies, but it reversed course and by the mid-2000s it was receiving $70 million per year in rebates from Purdue in exchange for preferring

---

[24] *See, e.g.*, CHI_002328140; CHI_002328143; CHI_002328149; CHI_002328174; CHI_002328183; CHI_002328191; CHI_002328197; CHI_002328201, CHI_002328210; CHI_002328215; CHI_002328221; CHI_002328225; CHI_002328240; CHI_002328266; CHI_002328274; CHI_002328314; CHI_002328319.

OxyContin on its commercial formularies"); *see also* Hatchett Decl. ¶ 4 (PPLPC029000040033 produced by Purdue by November 2018).

Similarly, the Moving Plaintiffs cite to ESI_JEFFCOMO_000029922 and ESI_ JEFFCOMO_000178613 as purportedly "new" information that Express Scripts "failed to act . . . in order to protect the rebates they earned from opioid prescribing." ECF No. 5548-2 ¶ 16 & n.2. Yet the *City of Rochester* amended complaint cites to documents produced by Purdue in 2018 in support of a similar allegation that Express Scripts acted to protect its rebates. *See* Rochester Am. Compl. ¶ 281 (citing PPLPC012000475266 and PPLPC035000217128 as support for an allegation that Express Scripts was "pushing Purdue for more rebate dollars in exchange for granting Oxycontin preferred positions on standard formularies"); Cooper Decl. ¶ 4 (Purdue produced those documents by December 2018).

Even before these productions, public sources had long reported that rebate agreements with opioid manufacturers included conditions relating to utilization management. *See*, *e.g.*, Christopher Lane, *America's Opioid Epidemic*, Psychology Today (Oct. 28, 2016), https://www.psychologytoday.com/blog/side-effects/201610/america-s-opioid-epidemic ("To undermine the policy of requiring prior authorization, [opioid manufacturers] offered lucrative rebates to middlemen such as Merck Medco and other pharmacy benefits managers, on condition that they eased availability of the drug and lowered co-pays.") (cited in Webb County Compl. ¶ 63); David Armstrong, *Drug Maker Thwarted Plan to Limit OxyContin Prescriptions at Dawn of Opioid Epidemic*, STAT (Oct. 26, 2016), https://www.statnews.com/2016/10/26/oxycontin-maker-thwarted-limits ("The payments were in the form of 'rebates' paid by Purdue to the companies. In return, the pharmacy benefit managers agreed to make the drug available without prior authorization and with low copayments.") (cited in Webb County Compl. ¶ 255).

**Oxycontin Abuse.** The Moving Plaintiffs contend that ESI_JEFFCOMO_000265250, ESI_JEFFCOMO_000278190, ESI_JEFFCOMO_000278192, ESI_MDL_000001125, ESI_MDL_000492597, and ESI_JEFFCOMO_000259907 (cited in Rochester Am. Compl. ¶¶ 279, 409–10, 434) provide new information about Express Scripts' awareness of the abuse potential for OxyContin. ECF No. 5548-2 ¶ 16 & n.2. But the City of Rochester also alleged that Express Scripts and Medco were aware of the abuse potential for OxyContin based on documents Purdue produced in the MDL in 2018. *See* Rochester Am. Compl. ¶ 280 (describing Purdue meeting notes with Express Scripts/Medco representatives regarding OxyContin use) (citing PPLPC012000373022); *id.* ¶ 400 ("[B]oth Medco and Prescription Solutions informed Purdue that they had concerns about the potential for abuse in OxyContin right out of the gate in 1997.") (citing PKY181977016); *id.* ¶ 404 (describing 2003 presentation by Express Scripts employee allegedly claiming that OxyContin has a "potential for serious injury or even death") (citing PPLPC012000061345); Cooper Decl. ¶ 4 (Purdue produced those documents by October 2018).

The Moving Plaintiffs also point to ESI_JEFFCOMO_000273681 (cited in Rochester Am. Compl. ¶ 408) as allegedly new information that Express Scripts knew of the need to do something about the diversion of Oxycontin. ECF No. 5548-2 ¶ 16 & n.2. But the City of Rochester also alleges that Express Scripts was aware of diversion issues in the early 2000s, based on documents Purdue produced in 2018. *See* Rochester Am. Compl. ¶¶ 401–02 (describing "internal Purdue emails," PPLPC029000063491 and E01_00004716, regarding "an overview of the abuse and diversion issue surrounding OxyContin"); Cooper Decl. ¶ 4 (Purdue produced those documents by November 2018).

**Allegedly Spreading Misinformation.** The Moving Plaintiffs also assert that *Jefferson County* documents revealed that "Express Scripts worked with Purdue to spread misinformation

about the safety and efficacy of opioids." ECF No. 5548-2 ¶ 16 & n.3 (citing Rochester Am. Compl. ¶¶ 351, 378; ESI_JEFFCOMO_000012632; ESI_JEFFCOMO_000032900). Yet the City of Rochester made the same allegations based on documents Purdue produced in 2018. *See* Rochester Am. Compl. ¶ 335 (citing PPLPC012000064369, PPLPC029000020703, PPLPC009000021694, PPLPC009000021695, PPLPC029000040033, and PPLPC029000040028, for the allegation that Express Scripts worked on programs to disseminate "educational materials" advocating opioids that "contained false information" downplaying "the risk of addiction"); *id.* ¶ 338 (citing PPLPC028000031679 for the allegation that Express Scripts sent 15,000 mailings that contained "misinformation about OxyContin risks"); *id.* ¶ 350 (citing PPLPC012000368690 and PPLPC012000368687 for the allegation that "Express Scripts and Purdue collaborated on false and misleading guidelines . . . to promote 'safe and effective chronic opioid therapy'"); Cooper Decl. ¶ 4 (Purdue produced those documents by December 2018).

**Access to Data.** Finally, the Moving Plaintiffs cite to *Jefferson County* documents as purportedly revealing new information that PBMs had data that allowed them to identify problems of prescription abuse. *See* ECF No. 5548-2 ¶ 16 & n.4 (citing Rochester Am. Compl. ¶¶ 440–41; ESI_MDL_000492391; ESI_JEFFCOMO_000135448; ESI_JEFFCOMO_000203517; ESI_JEFFCOMO_000203553); OPTUMRX_JEFFCO_0000041763 (2007 presentation from OptumRx's predecessor Prescription Solutions mentioning the use of utilization data for internal studies); OPTUMRX_JEFFCO_0000390555 (same). But the *City of Rochester* amended complaint makes indistinguishable allegations regarding the PBMs' access to data based on documents that other MDL defendants produced as early as 2018. *See* Rochester Am. Compl. ¶ 353 ("OptumRx affiliates also marketed their data analytics capabilities to Purdue for research projects related to opioids, proposing, for example, to sell medical and pharmacy claims data . . . to

Purdue.") (citing PPLPC018000829180, produced by October 2018, *see* Hatchett Decl. ¶ 4); *id.* ¶ 358 (alleging that an affiliate of OptumRx had access to UHC claims data) (citing PPLPC028000016640, produced by November 2018, *see* Hatchett Decl. ¶ 4); *id.* ¶ 340 ("Purdue's and Express Scripts' joint efforts to expand the opioid market continued in the summer of 2001, when they used an Express Scripts 'proprietary database' to identify the top 1,900 physicians with high prescribing rates for Schedule 2 narcotics . . . .") (citing PDD8801134968; PPLPC036000005057; PPLPC036000005058; PPLPC029000045118; PPLPC021000012726); Cooper Decl. ¶ 4 (Purdue produced those documents by December 2018). Moreover, Express Scripts offered public testimony in the U.S. Senate in February 2018 about its data capabilities in connection with prescription opioids.[25] And, of course, Webb County's counsel trumpeted in a public letter to the Court in March 2018 that PBMs "possess the data the Court and plaintiffs are seeking – at the NDC level – regarding whose drugs were dispensed into which community." ECF No. 168.

In short, the Moving Plaintiffs cannot show that they were diligent in pursuing their claims when the same facts offered in support of their "new" theories appear in documents available to them six or seven years ago.

3.     **The City of Rochester's amended complaint relies overwhelmingly on documents that were produced in the early stages of this MDL, long before the amendment deadline or any discovery in *Jefferson County*.**

The Moving Plaintiffs seek leave to allege that the PBMs worked hand-in-hand with opioid manufacturers to increase opioid dispensing across the country and state that "at least 180

---

[25] *See The Opioid Crisis: The Role of Technology and Data in Preventing and Treating Addiction: Hearing of the Comm. on Health, Educ., Lab., & Pensions*, 115th Cong. 5–12 (2018) (statement of Snezana Mahon, Pharm.D., Vice President, Clinical Product Development, Express Scripts, Inc.), https://www.govinfo.gov/content/pkg/CHRG-115shrg28855/pdf/CHRG-115shrg28855.pdf.

allegations regarding the conduct of OptumRx and Express Scripts are based either expressly or implicitly on documents and information from the JeffCo Action." ECF Nos. 5547-2 ¶ 22; 5548-2 ¶ 17. But the City of Rochester's amended complaint, the template for the Moving Plaintiffs' proposed amendments, relies overwhelmingly on pre-2019 productions by opioid manufacturers to support those allegations against the PBMs, citing non-PBM document productions at least 113 times. The Moving Plaintiffs offer no basis for the Court to conclude they were diligent in pursuing these allegations when those documents were first produced in the MDL years ago.

The tables below provide examples of documents produced in the MDL in 2018 and 2019—*see* Cooper Decl. ¶ 4; Hatchett Decl. ¶ 4—that the City of Rochester relies on to support the same allegations against the PBMs that the Moving Defendants now seek to assert more than five years later.

| Table 1 Allegations regarding the PBMs' relationships with opioid manufacturers, including rebate negotiations (*see* ECF Nos. 5547-2 ¶ 21(a), (d); 5548-2 ¶ 16). | | | |
|---|---|---|---|
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository[26]** |
| ¶ 261 & n.52 | "'I also believe that a lot of what [Purdue's Managed Care Account Executives] hear from their accounts is with the intention of softening them up before the [managed health care] asks for more aggressive rebates. They are told "I am going to drop you from the formulary" for several months and then one day they are told if you give me higher rebate you can keep OxyContin in the formulary.'" | E513_00006452 | October 2018 |

---

[26] Documents are loaded to the MDL Repository after they are produced. Cooper Decl. ¶ 3.

| | Table 1 | | |
|---|---|---|---|
| | **Allegations regarding the PBMs' relationships with opioid manufacturers, including rebate negotiations (*see* ECF Nos. 5547-2 ¶ 21(a), (d); 5548-2 ¶ 16).** | | |
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository[26]** |
| ¶ 263 & n.54 | "Purdue's own data shows the impact that a major payor (such as Medco) moving OxyContin from a preferred formulary tier to an excluded product has on utilization." | PPLPC030000773368 | November 2018 |
| ¶ 277 & nn.59–61 | "The opioid manufacturers early on recognized that Express Scripts and Optum would provide unrestricted formulary status on their standard formularies in exchange for rebates and other fees." | PPLPC024000012498 | November 2018 |
| ¶ 281 & n.64 | "After the merger (and years after it knew OxyContin was a heavily abused drug), Express Scripts was still pushing Purdue for more rebate dollars in exchange for granting OxyContin preferred positions on its standard formularies." | PPLPC012000475266<br><br>PPLPC035000217128 | October 2018<br><br>December 2018 |
| ¶ 300 & n.72 | "Likewise, in 2012 negotiations between Express Scripts and Endo the parties agreed that 'Endo Products are "not disadvantaged to any other brand name pharmaceutical product in the same [competitive product category]"' and that this disadvantaged language meant any UM restrictions must apply to all products in the competitive class." | ENDO-OPIOID_MDL-07228036 | February 2021 |
| ¶ 317 & n.83 | "For example, a 2002 email reveals Medco and Purdue working together to prevent the implementation of a prior authorization (PA) that would have reduced the supply of opioids." | PPLPC029000064034 | November 2018 |

| Table 1 Allegations regarding the PBMs' relationships with opioid manufacturers, including rebate negotiations (*see* ECF Nos. 5547-2 ¶ 21(a), (d); 5548-2 ¶ 16). | | | |
|---|---|---|---|
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository[26]** |
| ¶ 348 & n.97 | "In another example, after Endo had negotiated a favorable Tier 2 formulary deal with Optum in 2010, sales representatives were told to 'present the great information' to prescribers and take advantage of the Opana ER 'opportunity' for 'pull through' sales." | ENDO-OPIOID_MDL-00719759 | July 2018 |
| ¶ 653 & n.300 | "These documents make clear that the formulary placement was viewed as a 'win' and an opportunity to make the rebate agreements profitable by pulling through sales. Sophisticated presentations outlining the exact steps a sales representative should take were often included in the sales training materials. The impact of these agreements and the ability to pull-through increased sales using the PBM data was dramatic." | ENDO-CHI_LIT-00046379 | September 2019 |

| Table 2 Allegations regarding PBMs' access to and use of data (*see* ECF No. 5547-2 ¶ 21(b)–(c); ECF No. 5548-2 ¶ 16). | | | |
|---|---|---|---|
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository** |
| ¶ 340 & n.94 | "Purdue's and Express Scripts' joint efforts to expand the opioid market continued in the summer of 2001, when they used an Express Scripts 'proprietary database' to identify the top 1,900 physicians with high prescribing rates for Schedule 2 narcotics . . . ." | PDD8801134968<br><br>PPLPC0360000050 57<br><br>PPLPC0360000050 58<br><br>PPLPC0290000451 18<br><br>PPLPC0210000127 26 | August 2018<br><br>December 2018<br><br>December 2018<br><br>November 2018<br><br>October 2018 |
| ¶ 353 & n.101 | "OptumRx affiliates also marketed their data analytics capabilities to Purdue for research projects related to opioids, proposing, for example, to sell medical and pharmacy claims data . . . to Purdue." | PPLPC0180008291 80 | October 2018 |
| ¶ 355 & n.102 | "For example, in the late 1990s and early 2000s, Express Scripts' affiliate research entity, Practice Patterns Sciences, Inc. ("PPS"), and Medco's Institute for Effectiveness Research provided research and studies for Purdue in to aid its efforts to expand the opioid market." | PDD8801105525 | August 2018 |
| ¶ 358 & nn.103– 05 | "For example, in 2000 and 2001, OptumInsight (then known as Ingenix) worked with Purdue to develop algorithms and studies to identify chronic pain patients. One was an algorithm that would mine UHC's claims data called 'the chronic pain patient identification algorithm.'" | PPLPC0280000166 40<br><br>PKY181047060 | November 2018<br><br>August 2018 |

| Table 2 — Allegations regarding PBMs' access to and use of data (*see* ECF No. 5547-2 ¶ 21(b)–(c); ECF No. 5548-2 ¶ 16). | | | |
|---|---|---|---|
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository** |
| ¶ 359 & n.106 | "In October of 2002, OptumInsight proposed a 'Chronic Pain Management' study and education initiative to present a series of teleconferences to providers in the UHG/UHC network. The purpose of this educational initiative was to 'optimize patient care in the treatment of chronic pain.'" | PPLPC0360000147 73 | December 2018 |
| ¶ 372 & n.117 | "Alongside the studies OptumInsight was producing for Purdue to further legitimize the proliferation of opioids without adequate controls throughout the United States, OptumHealth, a subsidiary of UnitedHealth Care ("UHC"), began an 'educational partnership' campaign in the early 2000s to educate nurses and case managers throughout the country on the undertreatment of pain." | PPLPC0210000668 76<br><br>PPLPC0220000598 01 | October 2018<br><br>October 2018 |
| ¶ 403 & n.139 | "In 2003, Medco's largest client, UHC, expressed concerns that 'there were patients taking 960-1000 tabs of OxyContin per month' and stated that it wanted to take action 'to reduce the abuse and diversion issues.' Following this, Medco and Purdue worked together to compile research and data to provide to this client to alleviate these concerns." | PPLPC0280000784 92<br><br>PPLPC0120000570 93<br><br>PPLPC0120000570 95<br><br>PPLPC0290000873 72<br><br>PPLPC0120000643 69 | November 2018<br><br>October 2018<br><br>October 2018<br><br>November 2018<br><br>October 2018 |

| Table 2 — Allegations regarding PBMs' access to and use of data (*see* ECF No. 5547-2 ¶ 21(b)–(c); ECF No. 5548-2 ¶ 16). | | | |
|---|---|---|---|
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository** |
| ¶ 404 & n.142 | "Following a study of opioid use in a private plan that revealed this pattern, Express Scripts conducted an internal study and 'found that similar patterns were occurring . . . across ESI's book of business.'" | PPLPC0120000613 45<br><br>PPLPC0120006134 8 | October 2018<br><br><br>October 2018 |
| ¶ 405 & nn.143–44 | "The PBM Defendants also knew or had reason to know that opioids were being improperly marketed." | PPLPC0120000613 45<br><br>PPLPC0120006134 8 | October 2018<br><br><br>October 2018 |
| ¶ 420 & n.162 | "In a 2013 email, an OptumInsight Life Sciences consultant forwarded an article to opioid manufacturer Endo indicating that CVS was cutting opioid access for 'risky' prescribers and that OptumInsight could do the same: 'Within our data, we can track the physicians, their # of prescriptions within the Optum database, their patients comorbidities and conditions (e.g. do their patients have pain issues?) . . . We can also track the pharmacies as well.'" | ENDO-OPIOID_MDL-02875114 | September 2018 |
| ¶¶ 427–28 & nn.165–66 | "'[W]e looked at the outcomes and in this case we examined pain related emergency room visits. Now understandably this is not the best way to assess a pain outcome, but we had limited data, we had to do a retrospective analysis.'" | PPLPC0120000613 48 | October 2018 |

| Table 2 Allegations regarding PBMs' access to and use of data (*see* ECF No. 5547-2 ¶ 21(b)–(c); ECF No. 5548-2 ¶ 16). | | | |
|---|---|---|---|
| **City of Rochester Amended Complaint Paragraph** | **City of Rochester Amended Complaint Allegation** | **Document(s) Relied On** | **Date Publicly Available or Loaded to MDL Repository** |
| ¶ 571 & n.272 | "For example, in 2010, Purdue audited Express Scripts' administration of this program and found numerous failures by Express Scripts to properly vet PAP applicants, including failing to verify patient-doctor relationship, failing to notice obvious inconsistencies in applications, and failing to process IRS information to determine accuracy and legitimacy of the information." | PPLPC0340003838 00 | December 2018 |

Those documents have been available to the Moving Plaintiffs for more than five years. The Moving Plaintiffs could have made the same allegations as the City of Rochester (and the scores of other plaintiffs that brought claims against the PBMs) *years ago* but chose not to do so. The Moving Plaintiffs offer no good cause for the Court to save them from their failure to diligently pursue these claims. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (affirming denial of leave to amend because "plaintiff was obviously aware of the basis of the claim for many months").

\*     \*     \*

As the Moving Plaintiffs admit, "information about the [PBMs'] role was, of course, previously available." ECF Nos. 5547 at 8; 5548 at 8. Yet they argue that they did not know the "extent" of the PBMs' relationships with opioid manufacturers or the "extent of the data and knowledge" that the PBMs had until the *Jefferson County* productions. ECF Nos. 5547 at 8; 5548

at 8. A party, however, may establish good cause to amend based on new discovery only when its previous suspicions would not have allowed it to plead a claim in good faith; if it had enough information to plausibly plead the claim but did not, then it lacks good cause to add it later. *See Profitt*, 2024 WL 3622448, at *4 (rejecting plaintiff's argument that it could not be certain of a newly named defendant's role until after discovery). The Moving Plaintiffs' own cited case law (*see* ECF Nos. 5547 at 13–14; 5548 at 12–13) explains that waiting for discovery to confirm the "extent" of facts *already known* does not constitute diligence. *See, e.g.*, *Hammock v. Rogers*, 2018 WL 8414482, at *5–6 (N.D. Ohio Dec. 17, 2018) (discussing incarcerated plaintiff's difficulty obtaining the identities of John Doe police officers, learned for the first time in document discovery). The Moving Plaintiffs had more than enough information to put them on notice of potential claims in 2018 and 2019, so they cannot show good cause now.

4. **The *Jefferson County* productions cannot provide good cause to add claims against the OptumRx and Express Scripts affiliates that were not defendants and did not produce documents in *Jefferson County*.**

The *Jefferson County* productions do not support asserting new claims against any OptumRx- or Express Scripts-related entity, but they do not even apply to most of the entities grouped under the "PBM Defendant" label. Only three of the eighteen OptumRx and Express Scripts entities—OptumRx, Inc., Express Scripts, Inc., and Evernorth Health, Inc. (formerly, Express Scripts Holding Company)—were parties to discovery in *Jefferson County*.[27] The Moving Plaintiffs make no attempt to explain how documents produced by OptumRx, Inc., Express Scripts, Inc., and Evernorth Health, Inc., show good cause for their untimely motions to amend to add claims against fifteen other companies: UnitedHealth Group Incorporated; Optum, Inc.;

---

[27] Jefferson County initially asserted claims against OptumRx, Inc.'s corporate parents but dismissed those entities before discovery. Jefferson County also initially named Express Scripts Pharmacy, Inc., as a defendant, but the County later voluntarily dismissed those claims.

OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Specialty Distribution Services, Inc.

Each of the corporate entities lumped together under the "PBM Defendant" moniker performs distinct functions, many of which are unrelated to the central claims in the Moving Plaintiffs' cases. The Moving Plaintiffs' motions should be denied as to each of the entities for which they do not even attempt to establish good cause.

### (a)    The OptumRx-Related Entities.

The Moving Plaintiffs seek leave to add claims against ten distinct entities in OptumRx's corporate family (UnitedHealth Group Incorporated; Optum, Inc.; OptumRx, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; Optum Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.). But only one of those entities (OptumRx, Inc.) provides PBM services. And OptumRx is also the only entity in that group that was a defendant during discovery in *Jefferson County*. The other nine entities are not PBMs and did not produce documents in *Jefferson County*. Instead, they fall into various categories, including ultimate parents, holding companies, or discrete corporate entities that provide other non-PBM services (everything from issuing discount cards to providing health education) that have nothing to do with Moving Plaintiffs' core allegations. The Moving Plaintiffs fail to offer any reason why the *Jefferson County* productions support adding claims against those non-PBM entities. Indeed, they do not even mention those other nine non-PBM entities anywhere in the body of their brief and fail to point to a single document from the *Jefferson County* productions that says anything about any other OptumRx entity besides OptumRx, Inc.

On the contrary, all thirteen of the *Jefferson County* documents cited by the Moving Plaintiffs concern OptumRx, Inc.'s or one of its predecessors' (like Prescription Solutions or Catamaran) provision of PBM services.[28] Because the Moving Plaintiffs' motions rely exclusively on the *Jefferson County* productions as the justification for their five-year delay in bringing claims, the motions must be denied as to entities and parties not covered by those documents.

The *Jefferson County* productions are also irrelevant as to certain types of claims that the Moving Plaintiffs apparently seek to assert against even OptumRx, Inc. In *Jefferson County*, for example, the County stipulated that it would not press dispensing claims based on the activities of OptumRx's home-delivery pharmacy. *See* Joint Stipulation and Consent Order, *Jefferson County v. Williams*, No. 20JE-CC00029 (Mo. Cir. Ct. July 11, 2022). As a result, OptumRx did not produce documents concerning its home-delivery pharmacy. And yet, if the Moving Plaintiffs intend to assert all claims in the City of Rochester's amended complaint, then they now intend to assert dispensing claims involving OptumRx's home-delivery pharmacy. The Court should deny any effort to add dispensing claims because the Moving Plaintiffs offer no justification whatsoever for their failure to raise those claims earlier, nor have they identified any new information from the *Jefferson County* productions that would support those new theories.

---

[28] *See, e.g.*, OPTUMRX_JEFFCO_0000011106 (rebate agreement from OptumRx); OPTUMRX_JEFFCO_0000014268 (internal OptumRx email); OPTUMRX_JEFFCO_0000107098 (internal OptumRx email); OPTUMRX_JEFFCO_0000140266 (internal OptumRx email); OPTUMRX_JEFFCO_0000360057 (internal OptumRx email); OPTUMRX_JEFFCO_0000506200 (internal OptumRx email); OPTUMRX_JEFFCO_0000535494 (Excel spreadsheet of OptumRx utilization management programs and options); OPTUMRX_JEFFCO_0000006804 (rebate agreement from Prescription Solutions); OPTUMRX_JEFFCO_0000041763 (PowerPoint presentation by Prescription Solutions); OPTUMRX_JEFFCO_0000390555 (PowerPoint presentation by Prescription Solutions); OPTUMRX_JEFFCO_0000473712 (rebate agreement from Catamaran).

**(b)      The Express Scripts Entities.**

Similarly, the Moving Plaintiffs do not explain how any discovery from *Jefferson County* provides good cause for their belated attempt to add claims against the four Express Scripts entities that provide mail-order pharmacy services: ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and Express Scripts Specialty Distribution Services, Inc. *None* of the alleged "new" information produced in *Jefferson County* relates to those mail-order pharmacy entities. The mail-order pharmacies are not PBMs; they do not offer formularies, propose utilization-management measures, or negotiate rebates with manufacturers.

The Moving Plaintiffs' only offered basis for finding good cause—the assertion that the information on which they seek to amend their pleadings was not available until the *Jefferson County* productions—cannot apply to the mail-order pharmacy entities. The Moving Plaintiffs do not identify a single factual allegation in the *City of Rochester* amended complaint against the Express Scripts mail-order pharmacies that is allegedly based on information revealed during discovery in *Jefferson County*, and the Moving Plaintiffs do not offer any other basis for the Court to conclude they could not have added claims against the mail-order pharmacy entities years ago, as other plaintiffs did. *See, e.g.*, *County of Webb v. Purdue Pharma et al.*, No. 1:18-op-45175 (N.D. Ohio Mar. 16, 2019), ECF No. 73 (amended complaint alleging claims against ESI Mail Pharmacy Service, Inc., and Express Scripts Pharmacy, Inc.). The Moving Plaintiffs cannot demonstrate any good cause to add the mail-order pharmacy entities to their complaints seven years after this MDL began. *See* Final Amendment Order at 1–2 (requiring plaintiffs to demonstrate good cause to add "each defendant" in "each individual" case).

**5.** **Even if the Moving Plaintiffs received "new" information in the *Jefferson County* productions, they still were not diligent in seeking amendment nearly a year and a half after receiving those documents.**

Even if the *Jefferson County* productions contained "new" information (which they did not), the Moving Plaintiffs waited nearly a year and a half after receiving those productions to seek leave to amend. The Moving Plaintiffs argue that this delay does not affect the good-cause analysis because the "passage of additional time after [the original deadline to amend] is relevant to the question of prejudice . . . but not to the reason the [Moving] Plaintiffs could not have met the March 16, 2019, deadline in the first place." ECF Nos. 5547 at 11 n.12; 5548 at 11 n.12. That is wrong. The diligence inquiry asks *both* whether the moving plaintiff could have met the original deadline to amend *and* whether the plaintiff was diligent in bringing its motion to amend within a certain period of time after discovering the purportedly new information. *See Glazer*, 704 F.3d at 458–59 (affirming denial of leave to amend when plaintiff filed motion "four months after discovery of the 'new' evidence" because granting amendment would "encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint"); *Johnstone v. CrossCountry Mortg., LLC*, 2024 WL 1530803, at *5–6 (N.D. Ohio Apr. 9, 2024) (denying leave to amend for lack of diligence where the "key facts" were known at least eight months before filing the motion for leave to amend); *MSP Recovery Claims, Series LLC v. Nationwide Mut. Ins. Co*., 2023 WL 6795420, at *4 (S.D. Ohio Oct. 13, 2023) ("[P]laintiff cannot sit on newly discovered evidence and wait months to seek leave to amend.") (collecting cases). Moreover, the Moving Plaintiffs once again ignore the individual, case-by-case analysis required for a motion for leave to amend—883 Moving Plaintiffs' CMO-1 deadline for leave to amend was *after* March 16, 2019.

The Moving Plaintiffs also overlook the other MDL plaintiffs that previously requested leave from the Court's moratorium on substantive filings to amend their complaints—motions that

this Court granted. *See* ECF No. 4817 (Jefferson County, New York motion for leave from moratorium to permit amendment of its complaint to "expand upon its Express Scripts and Optum PBM Defendant allegations in light of new facts uncovered in documents produced in the MDL," granted by text order on January 25, 2023); ECF No. 4819 (same as to Webb County, Texas); ECF No. 4821 (same as to Town of Bennington, Vermont and others). The Court's moratorium on substantive filings was not a categorical bar to all motions for leave to amend. Accordingly, the Moving Plaintiffs were not diligent in choosing not to seek leave to amend months earlier.

### B.  The proposed amendments are highly prejudicial to the PBMs.

The Court should deny the omnibus motions for leave to amend on the sole basis of the Moving Plaintiffs' failure to diligently bring them. But even if the Moving Plaintiffs could establish diligence, the Court should still deny the motions because the PBMs will suffer undue prejudice from the proposed amendments. *See Helena Agri-Enterprises, LLC v. AAA Turf, Inc.*, 2023 WL 4842838, at *2 (6th Cir. July 28, 2023) (citing *Leary*, 349 F.3d at 906). When considering whether amendment would cause undue prejudice, a court must consider whether allowing the new claims would, among other things, "require the defendants to expend significant additional resources" or "significantly delay the resolution of the dispute." *Dubuc*, 312 F.3d at 752. The longer the movant's delay in seeking leave to amend, "the less prejudice the opposing party will be required to show." *Id.*; *see also, e.g.*, *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020). Because of the length of the Moving Plaintiffs' delay in seeking leave to amend, the PBMs must show only minimal prejudice for the Court to deny leave to amend. The PBMs easily satisfy this element.

*First*, the length of the Moving Plaintiffs' delay is inherently prejudicial and inconsistent with any finding of good cause because of the potential for lost and spoliated evidence. *Second*, the PBMs relied on the JPML's and this Court's confirmations that the MDL is closed to new

parties and claims, and the proposed amendments would dramatically expand the scope of the MDL. *Third*, the PBMs are prejudiced by the amendment process.

### 1. The Moving Plaintiffs' extreme delay is inherently prejudicial.

The Sixth Circuit routinely affirms denials of leave to amend on prejudice grounds when plaintiffs seek to amend their complaints months after the amendment deadline—let alone years. *See, e.g.*, *AAA Turf*, 2023 WL 4842838, at *3 (13 months after the deadline); *Hance v. BNSF Ry. Co.*, 645 F. App'x. 356, 364 (6th Cir. 2016) (15 months after the deadline); *Hiller v. HSBC Fin. Corp.*, 589 F. App'x 320, 321 (6th Cir. 2015) (9 months after filing original complaint); *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 537 (6th Cir. 2008) (10 months after the deadline); *Church Joint Venture*, 947 F.3d at 934 (five year delay); *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014) (1.5 years after the deadline).

The Moving Plaintiffs have not identified a *single* case in any jurisdiction where a court has permitted plaintiffs to amend more than five years after the original amendment deadline. The prejudice from such a lengthy delay is inherent. *See Church Joint Venture*, 947 F.3d at 934 (finding prejudice from "a nearly five-year delay" to be "apparent and substantial"). Yet here, most of the Moving Plaintiffs waited more than five years from their original amendment deadline to seek leave to add claims against the PBMs. And 811 Moving Plaintiffs commenced their actions in 2018, nearly six years before seeking leave to amend.

Here, the PBMs would be unduly prejudiced by having to conduct belated discovery, attempt to prove their defenses, and pursue potential claims against third parties in stale cases with lost and spoliated evidence. *See, e.g.*, *Ross*, 567 F. App'x at 306 (finding defendant would suffer prejudice if amendment were allowed late in litigation); *Shane*, 275 F. App'x at 537 (finding that permitting amendment "would have prejudiced [defendant] because it would have required still further discovery in the case," after plaintiff already propounded "overly broad" discovery requests

earlier in the case); *Kinney v. Anderson Lumber Co.*, 2018 WL 343908, at *3 (E.D. Tenn. Jan. 9, 2018) (denying leave to amend in part because defendants "would be prejudiced by the additional delay and expenditure of resources that would be required if the Court were to allow plaintiffs to amend the complaint a second time"), *aff'd*, 2018 WL 7317203 (6th Cir. Sept. 13, 2018).

(a)    **Evidence will have been lost over time.**

The PBMs have the right to raise defenses to the Moving Plaintiffs' claims and to allocate liability among other defendants and third parties. But the PBMs' ability to discover the facts necessary to prove their defenses or other parties' fault has been compromised by the Moving Plaintiffs' delay in bringing their proposed claims.

For example, the PBMs may have claims for an allocation of liability against third parties that operate in some Moving Plaintiffs' home jurisdictions. To prevail on those claims, the PBMs would need to discover evidence demonstrating the third parties' fault—such as communications regarding opioid diversion, regulatory compliance, or opioid dispensing data. But because of the passage of time during the Moving Plaintiffs' delay in bringing their claims, that crucial evidence may have been lost or gone stale. The resulting impairment to the PBMs' ability to discover facts and establish defenses to which they are entitled creates substantial prejudice under Rule 16. *See, e.g.*, *Pethtel v. Tenn. Dep't of Child. Servs.*, 2020 WL 6827791, at *28 (E.D. Tenn. Nov. 20, 2020) (finding "significant prejudice" because "the events of this action occurred over a decade ago, [and] it is unlikely that many of the new parties still have documentation or records from the time period"); *Love v. Does 1–9*, 2021 WL 2134940, at *3–4 (D.N.J. May 26, 2021) (affirming magistrate judge's denial of motion to amend based, in part, on prejudice to defendants from lost witnesses because of plaintiff's delay).

This issue exists across the range of parties against whom the PBMs may have allocation-of-liability claims, including various former defendants in the MDL that have settled their claims,

53

as well as other parties like regional PBMs, consultants, or certain individuals like prescribing doctors.

> **(b)    Most Moving Plaintiffs failed to timely implement a litigation hold.**

The prejudice from lost evidence is exacerbated by the Moving Plaintiffs' widespread failures to timely implement litigation holds. "[I]t is beyond question that a party to civil litigation has a duty to preserve relevant information . . . when that party 'has notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation.'" *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (citation omitted). Litigation holds play a critical role in safeguarding the integrity of the legal process by ensuring that evidence relevant to the claims and defenses is available to all parties. *See DRDistributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 930 (N.D. Ill. 2021).

Over 800 of the Moving Plaintiffs *never* implemented a litigation hold, despite filing their cases many years ago. Hundreds more did not implement holds until long *after* they filed their cases. In all, at least 1,234 Moving Plaintiffs have failed to meet their basic document preservation requirements. *See* ECF No. 5687-1 (PEC submission identifying hundreds of Moving Plaintiffs who failed to timely implement litigation holds); Section III.A.4, below.

The Moving Plaintiffs' failure to implement litigation holds despite filing lawsuits months or years earlier has almost certainly resulted in the spoliation of relevant evidence. The scope of what was lost and the magnitude of prejudice to the PBMs is unknowable, which is "precisely the problem raised" by the "failure to implement litigation holds": "The Parties and the Court are left to speculate on the contents of the despoiled evidence and the degree of prejudice suffered by the party seeking the evidence." *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, 2014 WL 6851607, at *16 (S.D. Cal. June 16, 2014). The destruction of relevant documents will compromise

the PBMs' abilities to defend themselves. Litigating these issues in the existing (and since-discontinued) PBM bellwether cases shows that the scope of spoliated and lost evidence due to failure to implement litigation holds is a moving target. And the true scope may never be known.

### 2. The PBMs would be prejudiced by the dramatic expansion of the MDL.

In addition to lost and spoliated evidence, the PBMs face undue prejudice from a dramatic expansion of this MDL. "Multidistrict litigation . . . is not static." *In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2 (cleaned up). While the Moving Plaintiffs sat on their potential claims over the years, this MDL kept moving toward completion. Just over four years after the MDL began, the JPML vacated the conditional transfer order and ordered that it would no longer add new actions to this "mature litigation." *Id.* Since then, the JPML has declined to transfer cases into the MDL even if they have "common factual issues" with existing MDL cases. *See, e.g.*, *In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, 543 F. Supp. 3d 1377, 1378–79 (J.P.M.L. 2021) (denying transfer and creating new MDL for cases against McKinsey); *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, ECF No. 9617 (J.P.M.L. Mar. 21, 2024) (denying transfer of St. Clair County, Illinois case); *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, ECF No. 9615 (J.P.M.L. May 19, 2023) (denying transfer of Alabama action). In so doing, the JPML made it clear that this MDL should be *narrowing*, not expanding.

When declining to transfer opioid cases against McKinsey into this MDL, the JPML recognized that McKinsey—a new defendant—"[would] be prejudiced by having to join the three-and-a-half-year-old MDL No. 2804 *at this late stage*." *In re McKinsey & Co.*, 543 F. Supp. 3d at 1379 (emphasis added). The Moving Plaintiffs' attempt to add the PBMs as new defendants in more than 1,560 new cases would be even more prejudicial.

This Court has also previously stated that it would not dramatically expand the MDL with respect to the PBMs. At a hearing in August 2023 regarding PBM bellwether selection, the Court

stated that it would not let "plaintiffs amend every case" because "the Sixth Circuit's not going to allow that." ECF No. 5168 at 14:3–6. In October 2023, the Court entered an order confirming that it "has never considered setting thousands of bellwether trials against PBMs, nor amendment of thousands of cases." ECF No. 5217 at 8. The parties were again reminded that the universe of cases and claims against the PBMs is fixed: "the Court has explicitly told the parties it would allow amendments *only of the small number of cases eventually selected as bellwethers* and would do so because the Sixth Circuit has already ruled on that issue." *Id.* at 8 (emphasis added).

Those statements were not made in a vacuum. The PBMs relied on them to shape their litigation strategy for the existing pool of MDL cases. But instead of allowing the MDL to naturally come to an end, the Moving Plaintiffs now seek to change course at the eleventh hour. If the Moving Plaintiffs are granted leave to amend, the PBMs are entitled to litigate each case against them, creating a dramatic expansion of this MDL instead of moving towards a natural end as the JPML directed.

Such an expansion—effectively creating a new PBM MDL—would substantially prejudice the PBMs because it would force them "to expend significant additional resources" and would "significantly delay resolution of the dispute." *Dubuc*, 312 F.3d at 752; *see also In re Meijer*, 2022 WL 20701236, at *1 (acknowledging that litigation costs are "a form of prejudice"). Each Moving Plaintiff is differently situated factually and legally. If leave to amend is granted to each Moving Plaintiff, the PBMs would need to take discovery from each plaintiff in every case (including from plaintiffs that have already failed in their basic duties to preserve evidence). They would also be forced to litigate state-specific tort claims under the laws of 48 jurisdictions across the country that are represented among the Moving Plaintiffs' home jurisdictions. *See Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA*, 930 F.3d 775, 786 (6th Cir. 2019) (affirming denial of motion for

leave to amend when the defendant would have suffered prejudice because the plaintiff "sought to add . . . a brand-new claim from a different jurisdiction resting on a distinct legal theory"). Here, the PBMs stand to face countless new claims under the laws of 48 jurisdictions, most of which would be completely new jurisdictions to the PBMs in this MDL. The Moving Plaintiffs' amendments would therefore "add new and complex issues to a case [that is] already protracted and complicated" and entail "new discovery, additional hearings, and, likely, more appeals." *Ross v. Houston Indep. Sch. Dist.*, 699 F.2d 218, 229 (5th Cir. 1983). At this late stage, "to put [the PBMs] through the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would be manifestly unfair and unduly prejudicial." *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973).

### 3. The amendment process prejudices the PBMs.

The Moving Plaintiffs claim that the PBMs are not prejudiced by the omnibus motions because they should have known that additional "governmental entities—whether plaintiffs in this MDL or not—could file new cases against" them. ECF Nos 5547 at 15; 5548 at 14. Indeed, as the Moving Plaintiffs point out, plaintiffs have sued the PBMs outside of the MDL in 22 states.[29] *See*

---

[29] *See, e.g.*, *City of Martinsville v. Purdue Pharma, L.P., et al.*, No. CL18000240-00 (Va. Cir. Ct.); *County of Walker v. Purdue Pharma, L.P., et al.*, No. 1929076 (Tex. Dist. Ct.); *City of Atlanta et al. v. Mylan Pharms., et al.*, No. 1:23-cv-01193 (N.D. Ga.); *Palm Beach County et al. v. Mylan Pharms., et al.*, No. 9:23-cv-80431 (S.D. Fla.); *Franklin County v. Williams et al.*, No. 20AB-CC00006 (Mo. Cir. Ct.); *Jefferson County v. Williams et al.*, No. 4:23-cv-01539 (E.D. Mo.); *People ex rel. Harrison v. Express Scripts, Inc., et al.*, No. 23STCV20886 (Cal. Super. Ct.); *Alaska v. Express Scripts, Inc. et al.*, No. 3:23-cv-00233 (D. Alaska); *King County v. Express Scripts, Inc. et al.*, No. 2:24-cv-00049 (W.D. Wash.); *Anne Arundel County v. Express Scripts, Inc. et al.*, No. 1:24-cv-00090 (D. Md.); *St. Clair County v. Evernorth Health, Inc., et al.*, No. 3:24-cv-00189 (S.D. Ill.); *City of Boston et al. v. Express Scripts, Inc. et al.*, No. 1:24-cv-10525 (D. Mass.); *Nevada v. Optum, Inc. et al.*, No. 2:24-cv-00493 (D. Nev.); *Commonwealth ex rel. Holihan et al. v. Express Scripts Holding Co. et al.*, No. 585-MD-2023 (Pa. Commnw. Ct.); *Albany County v. Express Scripts, Inc. et al.*, No. 1:24-cv-00777 (N.D.N.Y.); *Arkansas ex rel. Griffin v. Optum, Inc. et al.*, No. 4:24-cv-00701 (E.D. Ark.); *Ohio County Comm'n et al. v. Express Scripts, Inc. et al.*, No. 5:24-cv-00142 (N.D. W. Va.); *City of Allentown v. Express Scripts, Inc. et al.*, No. 2024-C-2397 (Pa. Ct. Common Pleas); *Warminster Township v. Express Scripts, Inc. et al.*, No. 2024-C-

*In re Motor Fuel Temp. Sales Pracs. Litig.*, 261 F.R.D. 577, 584 (D. Kan. 2009) (finding that denying leave to amend complaints in an MDL was proper even though the movants were "free to file their own cases" in the underlying jurisdictions). But instead of demonstrating why they could not also file stand-alone cases, the Moving Plaintiffs purport to speak for the PBMs against some perceived prejudice in the PBMs "hav[ing] to simultaneously litigate multiple cases in multiple forums" rather than "having the claims against them coordinated in these proceedings." ECF Nos. 5547 at 15; 5548 at 14. The PBMs disagree with the Moving Plaintiffs' assumption. There is no question that requiring each Moving Plaintiff to file their case individually—rather than allowing them to add PBMs to *1,564 cases in one fell swoop*—is the proper and least prejudicial course.

## C.    Settlement leverage is an improper basis for leave to amend.

For years, out of the thousands of plaintiffs in the MDL, plaintiffs in only around 85 cases pressed claims against the PBMs.[30] *See* ECF No. 5196-13. But after litigating the bellwether selection process over the past year, the PEC recognized that it would be difficult to extract a substantial settlement from the PBMs—not, at least, without first attempting to bring more plaintiffs to the negotiating table. The PEC has been clear that the Moving Plaintiffs seek to assert claims against the PBMs because of their purported "reticence to reach broader settlements" given

---

04909 (Pa. Ct. Common Pleas); *Clinton County v. Express Scripts, Inc. et al.*, No. 624-2024 (Pa. Ct. Common Pleas); *City of Lock Haven v. Express Scripts, Inc. et al.*, No. 625-2024 (Pa. Ct. Common Pleas); *Warrington Township v. Express Scripts, Inc. et al.*, No. 2024-05162 (Pa. Ct. Common Pleas); *Mississippi v. Optum, Inc. et al.*, No. 3:24-cv-00718 (S.D. Miss.); *Bucks County v. Express Scripts, Inc. et al.*, No. 2024-06016 (Pa. Ct. Common Pleas); *Nessel ex rel. Michigan v. Express Scripts, Inc. et al.*, No. 4:24-cv-13185 (E.D. Mich.); *Kentucky ex rel. Coleman v. Express Scripts, Inc. et al.*, No. 5:24-cv-00303 (E.D. Ky.); *Delaware County v. Express Scripts, Inc. et al.*, No. CV-2024-010658 (Pa. Ct. Common Pleas); *Tioga County v. Express Scripts, Inc. et al.*, No. 695-CV-2024 (Pa. Ct. Common Pleas); *State v. Express Scripts, Inc. et al.*, No. 240500576 (Utah Dist. Ct.).

[30] One of the PEC member firms, Motley Rice, even tried to represent OptumRx's parent company UnitedHealthcare as a *plaintiff* in the MDL.

that "only limited numbers of cases are pending against them in the MDL." ECF No. 5411 at 2 n.1. Taking that statement in conjunction with the class-action-style omnibus motions they filed, the Moving Plaintiffs treat their proposed amendments as a tool to be leveraged now and set aside later. The Federal Rules are clear, however, that good cause, not settlement leverage, is the only basis upon which a Court may grant leave to amend under Rule 16. It is entirely improper for the Court to consider the possibility of settlement when adjudicating these motions. *Cf. In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 933 (6th Cir. 2019) ("These statements suggest that at least part of the reason for the district court's about-face . . . might have been a desire to use the threat of publicly disclosing the data as a bargaining chip in settlement discussions. If this was a motivation for its holding, then the district court abused its discretion by considering an improper factor."); *Best W. Int'l, Inc. v. Melbourne Hotel Invs., LLC*, 2008 WL 2945513, at *1 (D. Ariz. July 28, 2008) ("[A]ny pressure tactics to coerce settlement are simply not permissible.").

## III. INDIVIDUAL PLAINTIFFS FAIL TO SHOW GOOD CAUSE UNDER RULE 16 AND FAIL TO SATISFY RULE 15'S STANDARD FOR LEAVE TO AMEND.

In addition to the arguments above, each plaintiff's motion should be denied for their individual failure to meet the Rule 16 and Rule 15 standards governing leave to amend. The Sixth Circuit made clear that the Court must analyze each plaintiff's motion for leave to amend based on "the record in that case alone." *In re CVS*, 956 F.3d at 841. In Sections III.A and III.B below, the PBMs provide an overview of many issues plaguing most of the Moving Plaintiffs' motions. In Section III.C, the PBMs explain why each plaintiff, all 1,833 of them, has not carried its burden under Rules 15 and 16 for leave to amend.

A.  **Case-specific reasons bar a finding of good cause in many cases.**

1.  **Many Moving Plaintiffs are represented by counsel who were not diligent in seeking leave to amend.**

In addition to the many reasons explained above in Section II.A as to why every Moving Plaintiff was not diligent, many Moving Plaintiffs also cannot show diligence sufficient to meet Rule 16's good-cause standard because they are represented by counsel—including PEC firms (Greene, Ketchum, Farrell, Bailey & Tweel, LLP; Powell & Majestro, PLLC; Baron & Budd, P.C.; Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.; McHugh Fuller Law Group, PLLC; and Motley Rice LLC) as well as Napoli Shkolnik, PLLC—that have been bringing claims against the PBMs since 2019. *See, e.g.*, ECF No. 2582 (Track Two amended complaint signed by PEC firms); *City of Amsterdam v. Purdue Pharma L.P. et al*, No. 1:19-op- 46162, ECF No. 1-3 (June 25, 2019); *Allegany County v. Purdue Pharma L.P. et al.*, No. 1:19-op-46151, ECF No. 1-5 (June 14, 2019); *City of Saratoga Springs v. Purdue Pharma L.P. et al*, No. 1:19-op-45857, ECF No. 1-4 (June 10, 2019); *City of Auburn v. Purdue Pharma L.P. et al.*, No. 1:19-op-45843, ECF No. 1-4 (June 7, 2019); *City of Ogdensburg v. Purdue Pharma L.P. et al.*, No. 1:19-op-45852, ECF No. 1-4 (June 7, 2019).

Through their counsel, those Moving Plaintiffs were on notice of potential claims against the PBMs and could readily have amended their complaints to add the PBMs much earlier. They fail to explain why they could not assert claims against the PBMs in 2019 when their own attorneys were already asserting those claims on behalf of other clients. *See, e.g.*, *Thurmond v. Bayer Healthcare Pharms., Inc.*, 649 F. App'x 1003, 1006 (11th Cir. May 23, 2016) (affirming denial of leave to amend for undue delay in part because plaintiff's counsel had access to discovery in related cases and was previously aware of the proposed new defendants' conduct).

### 2. Many Moving Plaintiffs are in jurisdictions where Defendants have zero percent market share or negligible market share.

In most of the Moving Plaintiffs' jurisdictions, the relevant entities operating as mail-order or home-delivery pharmacies dispensed a negligible amount (less than 0.5%) of the total prescription opioids shipped to the geographic region during 2010 to 2019.[31] In fact, in at least 149 Moving Plaintiffs' geographic regions, one or more of the entities operating as mail-order or home-delivery pharmacies did not dispense a single prescription opioid during that same ten-year period. *See* Declaration of Mark. A. Gustafson, dated January 15, 2025 (**Gustafson Decl.**); Declaration of Al DeCarlo, dated January 10, 2025 (**DeCarlo Decl.**).

This Court has made clear that market share can bear on whether certain defendants are proper parties in this MDL: "If the defendants have no market share, they shouldn't be in the case, period." ECF No. 3685 at 6:9–14. Indeed, the Court previously ordered plaintiffs to dismiss with prejudice pharmacies with "zero-percent market share in the relevant jurisdictions." ECF No. 3688 at 2. The Court also established for manufacturers and distributors a "5% market share limitation" on the "[a]ddition of defendants." ECF No. 1377 at 2 n.2 (citing ECF No. 1106).

The Moving Plaintiffs from geographic regions where the PBMs processed zero claims for prescription opioids, or where the PBMs' affiliated mail-order pharmacies dispensed zero (or nearly zero) opioid prescriptions, should dismiss the PBMs from their cases (*see* Final Amendment Order at 2), and should not add new or additional claims against them. Those Moving Plaintiffs lack good cause to add claims against the PBMs. This Court should deny them leave to amend.

---

[31] Express Scripts' data for its affiliated mail-order pharmacies covers 2009 to 2019.

### 3. Many Moving Plaintiffs have contractual relationships with the PBMs that bar or affect their ability to seek leave to amend.

Many Moving Plaintiffs are current or former clients of the PBMs (including at least 114 Express Scripts has identified as its clients).[32] These plaintiffs entered into contracts with Express Scripts or OptumRx that included extensive descriptions of PBM services that Express Scripts or OptumRx would provide to the contracting plaintiff. These provisions contain a thorough explanation of the use of formularies, utilization management tools, and the application of rebates from manufacturers. *See* Declaration of Leslie Achter, dated January 16, 2025 (**Achter Decl.**). The contracting plaintiffs are presumed to have read and understood the terms of those agreements. *See Brass Reminders Co. v. RT Eng'g Corp.*, 844 F. App'x 813, 821 (6th Cir. 2021) ("Notice of a contract's terms is presumed when a person has the opportunity to read the contract and accepts the contract offer."); *Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 477 (6th Cir. 2014) ("It is a bedrock principle of contract law that an individual who signs a contract is presumed to have read the contract and is bound by its contents." (citation omitted)).

All those Moving Plaintiffs received PBM services from Express Scripts or OptumRx before July 24, 2020—more than four years before seeking leave to amend to add claims against Express Scripts. Inasmuch as those plaintiffs seek to add claims related to utilization or formulary placement against the PBMs (*see, e.g.*, Rochester Am. Compl. ¶¶ 733, 741, 786–816, 821–22, 845), they were not diligent in seeking leave to amend. More precisely, any attempt to add

---

[32] The Moving Plaintiffs' omnibus submissions, devoid of plaintiff-specific facts, have made it difficult for OptumRx to identify which Moving Plaintiffs are current or former clients. OptumRx has identified examples of current and former clients that are Moving Plaintiffs, including the City of Charleston, West Virginia, and South Central UFCW Unions and Employers Health & Welfare Trust. OptumRx believes that scores, if not hundreds, of Moving Plaintiffs are current or former clients. The same sorts of arguments that Express Scripts raises in this section and in the plaintiff-specific sections below would similarly apply to any OptumRx clients.

allegations that the PBMs failed to make formulary changes or recommend utilization-management tools because of their rebate agreements with opioid manufacturers cannot be premised on "newly discovered information" because those plaintiffs have known about those issues for *years* by virtue of their contractual relationship with Express Scripts or OptumRx. These Moving Plaintiffs were not diligent in pursuing their purported rights against the PBMs, and they therefore lack good cause for leave to amend. *See Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (denying motion for leave to amend for lack of diligence when contractual terms had been publicly available for several years and plaintiff was clearly aware of them for a time before seeking amendment).

In addition, some Moving Plaintiffs are contractually bound to pursue any claims they may have against Express Scripts or OptumRx in arbitration, mediation, or particular forums, and leave to amend in the MDL is therefore futile.

### 4. Many Moving Plaintiffs did not timely implement a litigation hold.

As discussed above in Section II.B, litigation holds play a critical role in safeguarding the integrity of the legal process by ensuring that evidence relevant to the claims and defenses is available to all parties. *See DRDistributors*, 513 F. Supp. 3d at 930. The duty to preserve evidence attaches "from the moment that litigation is reasonably anticipated." *Crown Battery Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 998 (N.D. Ohio 2016) (citation omitted). For a party bringing a lawsuit, that duty necessarily arises the moment that party begins investigating its claims—that is, *before* a complaint is ever filed. "Once the duty to preserve attaches, a party must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Id.* at 999 (citation omitted).

After the PBMs discovered the plaintiffs' failure to preserve evidence in three PBM bellwethers, the Court found that the failure to implement litigation holds prejudiced the PBMs

and discontinued those bellwether cases. ECF Nos. 5503 at 4–11; 5540 at 12:3–13:6 (severing *City of Independence* and *Lincoln County* as bellwethers); 5648 at 16–18 (severing *Webb County* as a bellwether). The Court also ordered each Moving Plaintiff to disclose whether and when it implemented a litigation hold to preserve evidence . ECF No. 5517 at 1. Although the PEC initially claimed that it was "confident that the litigation hold issues do not exist" for "most" of the plaintiffs seeking leave to amend (ECF No. 5540 at 21:23–22:2), those court-ordered disclosures revealed the opposite: that document preservation issues exist in *the majority of Moving Plaintiffs' cases*. *See* ECF No. 5687-1 (identifying Moving Plaintiffs who failed to timely implement litigation holds). Indeed, *857* Moving Plaintiffs have never implemented a litigation hold, and an additional 240 did not implement a litigation hold until at least a year after their complaints. In all, at least 1,234 Moving Plaintiffs have failed to meet their basic document preservation requirements.

Those 1,234 Moving Plaintiffs cannot meet Rule 16's good cause standard—both because they have failed to act with diligence and because their failure to implement litigation holds would severely prejudice the PBMs. This Court already acknowledged the potential prejudice resulting from the loss of relevant evidence in the PBM bellwether cases. *See* ECF Nos. 5540 at 12:3–13:6, 15:2–10; 5516 at 8:16–17 ("[I]f . . . important documents aren't available, it isn't fair to either side."); 5648 at 16–18. Failure to implement a timely litigation hold also runs afoul of the most fundamental discovery obligation "to take reasonable measures to preserve documents." ECF No. 232 ¶ 8. The widespread failure to preserve documents has inevitably resulted in the spoliation of relevant documents. The scope of what was lost and the magnitude of prejudice to the PBMs is unknown, which is "precisely the problem raised" by the "failure to implement litigation holds": "The Parties and the Court are left to speculate on the contents of the despoiled evidence and the degree of prejudice suffered by the party seeking the evidence." *Zest IP Holdings*, 2014 WL

6851607, at *16. The destruction of relevant documents will compromise the PBMs' abilities to defend themselves, while having virtually no effect on the plaintiff's ability to pursue its claims.

The Court should therefore deny leave to amend as to each Moving Plaintiff who failed to timely implement a litigation hold.

### 5. Many Moving Plaintiffs failed to comply with the Court's orders regarding Plaintiff Fact Sheets.

Most of the Moving Plaintiffs have failed to comply with this Court's orders regarding their obligation to submit complete and current Government Plaintiff Fact Sheets. On June 19, 2018—more than *six years ago*—the Court ordered all government plaintiffs to complete and serve a Government Plaintiff Fact Sheet, and it has reiterated this requirement repeatedly since. *See* ECF No. 638 (Fact Sheet Implementation Order); ECF No. 4664 (Order to All Governmental Plaintiffs Regarding Re-Service of Plaintiff Fact Sheets); ECF No. 4801 at 2 (Order Regarding Plaintiff Fact Sheets and Service of Process); ECF No. 4985 (Order Regarding Failures to Submit Plaintiff Fact Sheets). The template Government Plaintiff Fact Sheet issued by the Court also establishes that preparation of a complete and accurate Fact Sheet is an ongoing obligation:

> Plaintiff (also referred to as "You" throughout) shall provide information responsive to the questions set forth below. . . . You shall provide information reasonably available to You and are not excused from providing the requested information for failure to appropriately investigate Your case. Plaintiff shall **supplement its responses** if it learns that they are incomplete or incorrect in any material respect.

ECF No. 638-1 at 1 (emphasis added).

The Court has stressed the importance of the Plaintiff Fact Sheets and the consequences for deficiencies. On April 6, 2023, the Court granted government plaintiffs "one last opportunity" to "submit a *complete* PFS into the PFS Repository" within 45 days. ECF No. 4985 at 1. Plaintiffs who fail to comply with the Court's orders "will have their case *dismissed with prejudice* for failure to prosecute, pursuant to Fed. R. Civ. P. 41(b)." *Id.* (emphasis in original).

Despite those directives, 56 Moving Plaintiffs *never* submitted a Government Plaintiff Fact Sheet. In addition, 605 submitted substantially incomplete Fact Sheets, and 896 submitted Fact Sheets before January 1, 2020, and have not updated any of the information since. The PBMs notified these Moving Plaintiffs of the fact sheet deficiencies by letter on September 16, 2024. *See* Exhibit B. None of the Moving Plaintiffs addressed these issues within twenty-one days as required. *See* ECF No. 638 at 1. Nor have they addressed them in the months since.

The PBMs are prejudiced by the Moving Plaintiffs' refusal to comply with the Court's orders. The Plaintiff Fact Sheets are designed to provide basic information about each plaintiff, the harms it allegedly suffered, the damages allegedly incurred, and, among others, its actions as a plan sponsor, including its health plans, carriers, third party administrators, and pharmacy benefit managers. Any Moving Plaintiff that has failed to provide this basic information, or failed to supplement outdated information, is subject to dismissal with prejudice for failure to prosecute, *see* ECF No. 4985 at 1, and lacks good cause for leave to amend. *See* Final Amendment Order at 2 (directing counsel to dismiss, not seek leave to amend, in any case that "plaintiffs' counsel does not intend to zealously pursue in litigation"); *Range v. Eagan*, 2017 WL 9477693, at *4 n.6 (E.D. Mich. Dec. 6, 2017) (Magistrate Judge recommending denying motion for leave to amend as moot because of recommendation that claims be dismissed for failure to prosecute).

### 6.     The PBMs are prejudiced in their ability to argue allocation of fault and third-party liability.

As discussed above in Section II.B, under the laws of many states implicated by the Moving Plaintiffs' omnibus motions, the PBMs have rights to seek an allocation of liability with other parties and third parties, including rights to insist upon several liability based upon an apportionment of fault, rights of contribution, rights of common-law indemnity, and rights of setoff. In those jurisdictions, to pursue their allocation-of-liability remedies, the PBMs would

likely have to discover and prove facts showing the fault of nonparties or parties that have settled. But the PBMs are prejudiced in their ability to discover the facts necessary to prove the fault of those parties on account of the Moving Plaintiffs' delay in bringing their proposed claims.

Additionally, these allocation-of-liability claims would cause the MDL to dramatically expand because, in nearly all the jurisdictions in which the PBMs have allocation-of-liability rights, the PBMs are entitled to exercise them and to litigate the fault of nonparties and third parties *in the cases in the MDL*. *See, e.g.*, *In re Customs & Tax Admin. of Kingdom of Den. Tax Refund Litig.*, 2021 WL 4993536, at *9 (S.D.N.Y. Oct. 26, 2021) (third-party impleader "properly asserted" in MDL); *In re WellNx Mktg. & Sales Pracs. Litig.*, 2010 WL 3652457, at *2 (D. Mass. Sept. 15, 2010) (same). An expansion of that nature at this late date would undermine the MDL's manageability and contravene the JPML's and this Court's determinations that the MDL should be winding down. *See In re Nat'l Prescription Opiate Litig.*, 2022 U.S. Dist. LEXIS 65760, at *2; ECF No. 5217 at 8; ECF No. 5168 at 14:3–6.

In at least 44 jurisdictions, the PBMs have allocation-of-liability remedies, and would be able to insist on joinder of additional parties to litigate an allocation of liability in the MDL. These jurisdictions include Alabama,[33] Alaska,[34] Arizona,[35] Colorado,[36] Connecticut,[37] Florida,[38]

---

[33] *See Crigler v. Salac*, 438 So.2d 1375, 1385 (Ala. 1983); *see also Parker v. Exterior Restorations, Inc.*, 2022 WL 17094765, at *2–6 (S.D. Ala. Nov. 21, 2022).

[34] *See* Alaska Stat. § 09.17.080(a); Alaska Stat. § 09.17.080(d); *see also Pagenkopf v. Chatham Elec., Inc.*, 165 P.3d 634, 642 (Alaska 2007).

[35] *See* Ariz. Rev. Stat. § 12-2506(A); Ariz. Rev. Stat. § 12-2506(B); *see also* Ariz. Rev. Stat. § 12-2501(G).

[36] *See* Colo. Rev. Stat. § 13-21-111.5(1); Colo. Rev. Stat. § 13-21-111.5(3)(b); Colo. Rev. Stat. § 13-21-111.5(4); *see also FDIC v. Clark*, 978 F.2d 1541, 1551 (10th Cir. 1992).

[37] *See* Conn. Gen. Stat. § 52-572h(c); Conn. Gen. Stat. § 52-572h(d); Conn. Gen. Stat. § 52-572h(h)(1).

[38] *See* Fla. Stat. § 768.81(3); Fla. Stat. § 768.81(3)(b).

Georgia,[39] Hawaii,[40] Idaho,[41] Illinois,[42] Indiana,[43] Iowa,[44] Kansas,[45] Kentucky,[46] Louisiana,[47] Maine,[48] Maryland,[49] Massachusetts,[50] Michigan,[51] Minnesota,[52] Mississippi,[53] Missouri,[54]

---

[39] *See* Ga. Code § 51-12-33(b); Ga. Code § 51-12-33(c); *see also FDIC v. Loudermilk*, 826 S.E.2d 116, 119 (Ga. 2019).

[40] *See* Haw. Rev. Stat. § 663-12(a); Haw. Rev. Stat. § 663-12(d); Haw. Rev. Stat. § 663-17(a).

[41] *See* Idaho Code § 6-803(3); *see also Le'Gall v. Lewis County*, 923 P.2d 427, 430 (Idaho 1996).

[42] *See* 740 Ill. Comp. Stat. 100/2(a); 740 Ill. Comp. Stat. 100/2(b); 740 Ill. Comp. Stat. 100/3.

[43] *See* Ind. Code § 34-51-2-7(b)(1); Ind. Code § 34-51-2-8(b)(1); Ind. Code § 34-51-2-14.

[44] *See* Iowa Code § 668.3(2); Iowa Code § 668.3(4); Iowa Code § 668.4; Iowa Code § 668.5(1).

[45] *See* Kan. Stat. § 60-258a(c); Kan. Stat. § 60-258a(d); *see also Dodge City Implement, Inc. v. Bd. of County Commrs.*, 205 P.3d 1265, 1270–71 (Kan. 2009).

[46] *See* Ky. Rev. Stat. § 411.182(1); Ky. Rev. Stat. § 411.182(3); Ky. Rev. Stat. § 411.182 (4); *see also Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 571–72 (6th Cir. 2004).

[47] *See* La. Civ. Code Ann. art. 2323(A); La. Civ. Code Ann. art. 2324(B).

[48] *See Otis Elevator Co. v. F.W. Cunningham & Sons*, 454 A.2d 335, 337 (Me. 1983); *Emery v. Hussey Seating Co.*, 697 A.2d 1284, 1287 (Me. 1997).

[49] *See* Md. Code Ann., Cts. & Jud. Proc. § 3-1402(a).

[50] *See* Mass. Gen. Laws ch. 231B, § 1(a).

[51] *See* Mich. Comp. Laws § 600.6304(1); Mich. Comp. Laws § 600.6304(4); *see also* Mich. Comp. Laws § 600.2925a(1).

[52] *See* Minn. Stat. § 604.02(1); *see also Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 75 (Minn. 2012); *Massart v. Radisson Blue Moa,* 2022 Minn. Dist. LEXIS 10884, at *10 (Minn. Dist. Ct. Mar. 16, 2022).

[53] *See* Miss. Code § 85-5-7(2); Miss. Code § 85-5-7(4); Miss. Code § 85-5-7(5); *see also Estate of Hunter v. Gen. Motors Corp.*, 729 So.2d 1264, 1276 (Miss. 1999).

[54] *See* Mo. Rev. Stat. § 537.060; *see also Gramex Corp. v. Green Supply*, 89 S.W.3d 432, 442 (Mo. 2002).

Nebraska,[55] Nevada,[56] New Hampshire,[57] New Jersey,[58] New Mexico,[59] New York,[60] North

Carolina,[61] North Dakota,[62] Ohio,[63] Oklahoma,[64] Oregon,[65] Pennsylvania,[66] Rhode Island,[67] South

---

[55] *See Royal Indem. Co. v. Aetna Cas. & Sur. Co.*, 229 N.W.2d 183, 190 (Neb. 1975); *see also Est. of Powell v. Montange*, 765 N.W.2d 496 (Neb. 2009); *Reese v. AMF-Whitely*, 420 F. Supp. 985, 987–88 (D. Neb. 1987).

[56] *See* Nev. Rev. Stat. § 41.141(4); *see also* Nev. Rev. Stat. § 17.225(1); Nev. Rev. Stat. § 17.225(2).

[57] *See* N.H. Rev. Stat. § 507:7-e(I); N.H. Rev. Stat. § 507:7-f(I); *see also Ocasio v. Fed. Express Corp.,* 33 A.3d 1139, 1144 (N.H. 2011).

[58] *See* N.J. Stat. § 2A:15-5.2(a); N.J. Stat. § 2A:15-5.3(c); N.J. Stat. § 2A:15-5.3(e).

[59] *See* N.M. Stat. § 41-3A-1(A); N.M. Stat. § 41-3A-1(B); *see also* N.M. Stat. § 41-3-2(A); N.M. Stat. § 41-3-2(D).

[60] *See* N.Y. C.P.L.R. §§ 1401, 1402; N.Y. Gen. Oblig. Law § 15-108(a).

[61] *See* N.C. Gen. Stat. § 1B-1(a); *see also* N.C. Gen. Stat. § 1B-3.

[62] *See* N.D. Cent. Code § 32-03.2-02; *see also Hansen v. Scott,* 645 N.W.2d 223, 229 (N.D. 2002); *Endresen v. Scheels Hardware & Sports Shop*, 560 N.W.2d 225, 235 (N.D. 1997).

[63] *See* Ohio Rev. Code § 2307.22(A); Ohio Rev. Code § 2307.23; Ohio Rev. Code § 2307.25(A); Ohio Rev. Code § 2307.25(F); *see also Ballreich Bros. v. Criblez*, 2010 WL 2735733, *5 (Ohio Ct. App. 2010).

[64] *See* Okla. Stat. tit. 12, § 832 (A).

[65] *See* Or. Rev. Stat. § 31.610 (a); Or. Rev. Stat. § 31.600(2); Or. Rev. Stat. § 31.800(1); Or. Rev. Stat. § 31.805(1).

[66] *See* 42 Pa. Cons. Stat. § 7102(a.1)(1); 42 Pa. Cons. Stat. § 7102(a.2); 42 Pa. Cons. Stat. § 7102(d); *see also* Pa. Cons. Stat. § 8324(a).

[67] *See* R.I. Gen. Laws § 10-6-3; *see also Wampanoag Grp. v. Iacoi*, 68 A.3d 519, 523 (R.I. 2013).

Carolina,[68] South Dakota,[69] Tennessee,[70] Texas,[71] Utah,[72] Virginia,[73] Washington,[74] West Virginia,[75] and Wisconsin.[76]

### B. Case-specific reasons render amendment futile in many cases.

#### 1. Many Moving Plaintiffs fail to state a claim for relief.

Under Federal Rule of Civil Procedure 15, denial of a motion to amend is appropriate where the amendment is futile. *Stanley*, 105 F.4th at 867. To the extent that the Moving Plaintiffs seek to bring claims that are "substantially identical" to those in *City of Rochester* and provide no additional factual support or allegations tailored to each plaintiff (ECF Nos. 5547 at 1; 5548 at 1), the omnibus motions should be denied. Every Moving Plaintiff is differently situated from the City of Rochester and each Moving Plaintiff fails to plead on an individual basis how their alleged injuries result from the PBMs' alleged conduct. Without any particularized facts, none of the Moving Plaintiffs state a "claim to relief that is plausible on its face" and the proposed amendments are categorically futile. *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1037 (6th Cir. 2024) (quoting *Twombly*, 550 U.S. at 555).

---

[68] *See* S.C. Code § 15-38-15(A); S.C. Code § 15-38-15 (D); S.C. Code § 15-38-20.

[69] *See* S.D. Codified Laws § 15-8-15; S.D. Codified Laws § 15-8-15.1; S.D. Codified Laws § 15-8-15.2; *see also* S.D. Codified Laws § 15-8-12.

[70] *See* Tenn. Code § 29-11-107(a); Tenn. Code § 29-11-107(d); *see also* Tenn. Code § 29-11-104(b).

[71] *See* Tex. Civ. Prac. & Rem. Code § 33.003(a); Tex. Civ. Prac. & Rem. Code § 33.004; Tex. Civ. Prac. & Rem. Code § 33.013(a); *see also* Tex. Civ. Prac. & Rem. Code § 33.015(a).

[72] *See* Utah Code § 78B-5-820(1); Utah Code § 78B-5-821(1).

[73] *See* Va. Code § 8.01-34; *see also Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*, 360 S.E.2d 342, 344 (Va. 1987).

[74] *See* Wash. Rev. Code § 4.22.070(1); Wash. Rev. Code § 4.22.070(2); *see also* Wash. Rev. Code § 4.22.060(2).

[75] *See* W. Va. Code § 55-7-13c(a); W. Va. Code § 55-7-13d(a)(1).

[76] *See* Wis. Stat. § 895.045(1); *see also Estate of Kriefall v. Sizzler U.S. Franchise, Inc.*, 816 N.W.2d 853, 865 (Wis. 2012).

The absence of particularized facts is especially problematic for non-municipal Moving Plaintiffs because those plaintiffs provide no indication whatsoever of the kind of allegations that may appear in their future amended complaints against the PBMs. *Bey, LLC*, 2017 WL 10992207, at *2 ("Defendants have the right to know the allegations in [the] case."). The City of Rochester's amended complaint cannot provide fair notice of the potential future allegations of the non-municipal plaintiffs because Rochester's municipal status permeates its allegations of harm and claims for relief in its amended complaint. For example, Rochester alleges that the PBMs' conduct caused Rochester to suffer increased costs to provide government services, such as treatment resources, police, public health, legal prosecution, corrections, and rehabilitation services. *See, e.g.*, Rochester Am. Compl. ¶ 768. Those alleged harms are unique to a municipality and are not applicable to other categories of Moving Plaintiffs—namely, the 298 Moving Plaintiffs that are third party payors; hospitals and medical centers; school, water, fire, and ambulance districts; libraries; tribes; and individuals.

The allegations made by the non-municipal Moving Plaintiffs cannot be squared with Rochester's allegations. For example, the third-party payor plaintiffs, including plan sponsors and aggregated funds holding the assigned claims of Medicaid contractors, alleged in their original complaints that they were harmed by paying more for opioid prescriptions, treatments, and rehabilitations under their plans than they would have absent the alleged legal violations. *E.g.*, *AFSCME Dist. Council 37*, No. 1:18-op-45013, ECF No. 1 ¶¶ 228–29 (N.D. Ohio Dec. 12, 2017). Hospital and medical centers alleged damages for lost funding due to the diversion of public funds to opioid response, costs of providing substance abuse treatment, and the financial impacts of treating uninsured opioid patients. *E.g.*, *Nassau Univ. Med. Ctr. v. Purdue Pharma L.P., et al.*, No. 1:19-op-45812, ECF No. 1 ¶¶ 794, 819 (N.D. Ohio Aug. 30, 2019). School districts alleged they

incurred increased costs to educate students impacted by opioid-related health complications or disabilities and increased school security costs. *E.g.*, *Bd. of Educ. of Thornton Township High Schools, Dist. 205 et al. v. Cephalon, Inc. et al.*, No. 1:20-op-45281, ECF No. 1 ¶¶ 29–30 (N.D. Ohio Dec. 16, 2020). Individual plaintiffs alleged that they, a decedent, or a family member *personally* suffered negative health effects from prescription opioids. *E.g.*, *Chapman v. McKesson Corp., et al.*, No. 1:21-op-45132, ECF No. 1 ¶ 3 (N.D. Ohio Dec. 17, 2021). Those unique injuries allegedly suffered by non-municipal plaintiffs are fundamentally different from the municipal injuries alleged by Rochester related to public expenditures, lost tax revenues, and decreased property values.

The Moving Plaintiffs' omnibus motions fail to address the different purported causal chains and alleged harms applicable to each plaintiff. They ignore the individualized facts of each case and attempt to shoehorn every case into a single municipal-plaintiff mold. In doing so, the Moving Plaintiffs fail to plead that the PBMs' conduct caused them harm. Their claims are subject to dismissal under Rule 12(b)(6) and should be denied as futile. *See Glenn v. Frenchko*, 642 F. Supp. 3d 633, 638 (N.D. Ohio 2022) (denying leave to amend as futile because plaintiff failed to allege any connection between the defendants' conduct and the plaintiff's alleged injury); *Crutcher v. Ct. Psychiatric Clinic*, 2017 WL 5514812, at *2 (6th Cir. Apr. 28, 2017) (affirming denial of leave to amend in part because plaintiff failed to state a claim based on the conduct of the defendants).

### 2. Many Moving Plaintiffs' claims are procedurally improper.

**Duplicate Plaintiffs.** A significant number of the Moving Plaintiffs appear as plaintiffs in two or more cases. The PEC's chart identifying all Moving Plaintiffs contains 115 instances of duplicate plaintiffs spread across 42 cases. *See* ECF Nos. 5546-1; 5547-1; 5548-1; 5565-1. The same plaintiff cannot bring duplicate claims in multiple cases against the same defendant. *See*

*Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260–63 (6th Cir. 2019) (affirming dismissal of plaintiff's claims for improper claim splitting where the plaintiff's claims in a later-filed case were "duplicative of and improperly split" from an earlier-filed case). Such a maneuver—particularly in this MDL—would upend the Federal Rules of Civil Procedure and Sixth Circuit precedent, waste the parties' and Court's resources, complicate litigation, and otherwise derail the course of litigation that is supposed to be narrowing at this stage. *See In re CVS*, 956 F.3d at 841 ("What an MDL court may not do . . . is distort or disregard the rules of law.").

Moreover, many non-municipal Moving Plaintiffs seek to add the same claims, and recoup the same losses, as their related municipal plaintiffs. For example, hospital plaintiffs seeking leave to amend aim to recover alongside the county governments that chartered them (*see* Nos. 490, 1033, 1500, and 1501 in Section III.C, below). These duplicative claims are futile and must be dismissed. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[It] goes without saying that courts can and should preclude double recovery." (cleaned up)); *see also Firestone Laser & Mfg. LLC v. Bristow*, __ F. Supp. 3d __, 2024 WL 3819623, at *12 (N.D. Ohio Aug. 14, 2024) (dismissing claim because otherwise it would produce an impermissible double recovery).

**Unnamed Plaintiffs.** The omnibus motions also sweep in numerous plaintiffs *that are not even named* in the cases for which they purportedly seek leave to amend, violating Rule 15's requirement that the movant be a party to the case in which it seeks leave to amend. Fed. R. Civ. P. 15(a)(2) (explaining "a *party* may amend its pleading . . . [with] the court's leave" (emphasis added)). For example, the Moving Plaintiffs' chart identifies 35 different plaintiffs seeking leave to amend in one case, but none of the 35 parties purportedly seeking leave to amend are named as plaintiffs in that case. *Bd. of the City of Chi., School Dist. No. 299 v. Cephalon, Inc., et al.*, No. 1:19-op-46042, ECF No. 6-1 ¶¶ 31–92 (N.D. Ohio Oct. 26, 2020). The PEC repeats that mistake

in other cases, failing to ensure that the plaintiffs are part of the cases in which they seek leave to amend.

**Lack of Jurisdiction.** Despite this Court's clear instruction that the PEC "review every case carefully" (*see* Final Amendment Order at 2), several Moving Plaintiffs improperly seek leave to amend in cases that have been closed, dismissed, or remanded. *See Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 617 (6th Cir. 2010) ("A claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion."); *Cook v. Lankford*, 17 F. App'x 351, 352 (6th Cir. 2001) ("A remand to state court pursuant to § 1447(c) divests the federal district court of jurisdiction.").

**Existing Suit Outside MDL.** Other Moving Plaintiffs already filed and dismissed claims against the PBMs outside the MDL. By suing the PBMs outside the MDL, those Moving Plaintiffs unequivocally admit that they possessed facts sufficient to assert claims against the PBMs before moving to amend in the MDL, which precludes a showing of good cause. *See Profitt*, 2024 WL 3622448, at *4 ("[A] party cannot show diligence when it is aware of the basis of a claim for many months and fails to pursue that claim.") (cleaned up).

### 3. Many Moving Plaintiffs' claims for public nuisance are futile under controlling state law.

Inasmuch as the Moving Plaintiffs seek to add a public nuisance claim against the PBMs (*see* Rochester Am. Compl. ¶¶ 719–83), certain Moving Plaintiffs' claims are squarely foreclosed by state law and therefore futile.

**Oklahoma.** Moving Plaintiffs in Oklahoma do not have a viable public nuisance claim. The Oklahoma Supreme Court decided that it "will not extend Oklahoma public nuisance law to the manufacturing, marketing, and selling of prescription opioids." *Hunter*, 499 P.3d at 729. It identified a "clear national trend to limit public nuisance to land or property use," pointing to the

74

seemingly endless parade of unforeseeable public nuisance claims that could impact numerous industries without "common law criminal and property-based limitations" on the application of public nuisance law. *Id*. at 730, 731. Any attempt by the Moving Plaintiffs in Oklahoma to add a claim for public nuisance must be denied as futile.

**Ohio**. Moving Plaintiffs in Ohio likewise cannot pursue a public nuisance claim. The Ohio Supreme Court recently overruled this Court and held that the Ohio Product Liability Act, R.C. §§ 2307.71 *et seq*. (**OPLA**), expressly abrogates "product-liability claims, including product-related public nuisance claims seeking equitable relief." *In re Nat'l Prescription Opiate Litig.*, __ N.E.3d __, 2024 WL 5049302, at *6 (Ohio 2024). The Ohio Supreme Court further clarified that claims related to the sale, distribution, and dispensing of prescription opioids are abrogated by the plain language of the statute. *Id.* at *7. That decision forecloses any attempt by the Moving Plaintiffs to add a public nuisance claim against the PBMs under Ohio law.

**Maine**. Maine law similarly foreclose a public nuisance claim in this context. To state a claim for public nuisance under Maine law, a plaintiff must show unreasonable interference with a public right. *Foley v. H.F Farnham Co.*, 188 A. 708, 710 (Me. 1936); *Higgins v. Huhtamaki, Inc.*, 2024 WL 4008257, at *4 (D. Me. Aug. 30, 2024) (quoting Restatement (Second) of Torts § 821B).[77] Maine courts have traditionally limited public rights to public property, public resources, or other tangible public goods. *See, e.g.*, *Demmons v. ND OTM LLC*, 2023 WL 5936671, at *10 (D. Me. Sept. 12, 2023) (polluted air created a public nuisance); *Higgins v. Huhtamaki, Inc*, 2022 WL 2274876, at *8 (D. Me. June 23, 2022) (water contamination); *Larson v. New England*

---

[77] Maine also recognizes a statutory public nuisance claim under particular circumstances, *see* Me. Stat. tit. 17, § 2701, none of which are applicable here. *See Johnson v. Whitten*, 384 A.2d 698, 702 (Me. 1978) (holding that statutory nuisances in § 2701 are limited to the specific grounds enumerated in Me. Stat. tit. 17, § 2802).

*Tel. & Tel. Co.*, 44 A.2d 1, 7–9 (Me. 1945) (obstruction of highway); *Franklin Wharf Co. v. City of Portland*, 67 Me. 46, 57–59 (Me. 1877) (sewer outflow obstructing entrance).

Those well-settled principles are incompatible with a public nuisance claim related to the sale of prescription opioids, as held in *Eastern Maine Medical Center v. Teva Pharmaceuticals USA Inc*, 2023 WL 2161256 (Me. Bus. Ct. Feb. 13, 2023). In that case, a group of hospitals filed a public nuisance action against pharmacies, distributors, marketers, and sales representatives, alleging that the defendants' role in the opioid epidemic violated their right to public health and caused the hospitals to incur additional costs. *Id.* at *2–3. The court granted the defendants' motion to dismiss, holding that, as a matter of Maine law, "the public's health may encompass 'public rights,' but is too abstract and broad a concept to supply an actionable public right in tort. Plaintiffs cannot conclusively declare such a public right." *Id*. at *6. The case is currently on appeal before the Maine Supreme Court, which heard oral argument on March 8, 2024, but has not yet issued a decision. *See E. Me. Med. Ctr. v. Teva Pharms.*, No. BCD-23-73 (Me.).

The Moving Plaintiffs in Maine do not allege interference with clean air, a right of way, a waterway, or another collectively held public resource. Relying on the *City of Rochester* amended complaint, those plaintiffs instead allege injury "to public health, safety, peace, comfort, and convenience." Rochester Am. Compl. ¶ 726. Alleged interference with the public health does not constitute a public nuisance under Maine law. *E. Me. Med. Ctr.*, 2023 WL 2161256, at *6.

**West Virginia**. The Moving Plaintiffs' public nuisance claims are similarly meritless under West Virginia law. In *City of Huntington v. AmerisourceBergen Drug Corp.*, the U.S. District Court for the Southern District of West Virginia rejected similar public nuisance claims by municipalities against distributors of prescription opioids, based upon their alleged role in creating the opioid crisis. 609 F. Supp. 3d 408, 413, 484 (S.D. W. Va. 2022). The court held that: (1) West Virginia

public nuisance is limited to interference with land or property use and does not extend to the sale and distribution of a lawful product, such as prescription opioids, *id*. at 472–82; and (2) the "distribution of medicine to support the legitimate medical needs of patients as determined by doctors exercising their medical judgment in good faith cannot be deemed an unreasonable interference with a right common to the general public," *id.* at 475. The district court's decision has been appealed to the Fourth Circuit, which certified the question to the West Virginia Supreme Court of Appeals. *City of Huntington v. AmerisourceBergen Drug Corp.*, 96 F.4th 642, 651 (4th Cir. 2024).

Like the City of Huntington, the Moving Plaintiffs' proposed public nuisance claims do not implicate interference with land or property and do not establish an unreasonable interference with a public right. For any Moving Plaintiff invoking West Virginia law, the public nuisance claim is futile and leave to amend should be denied.

**Alabama**. Alabama generally permits public nuisance abatement proceedings only if they are brought "in the name of the state," Ala. Code § 6-5-121, or "in the name of [a] city," *id.* § 6-5-122. "If, however, the public (either the State or a city) chooses not to commence an action to stop a public nuisance, and such nuisance causes a special damage to an individual, that *individual* may commence an action." *Lee County, Alabama Comm'n v. CreekWood Res. LLC*, 2022 WL 450810, at *3 (M.D. Ala. Feb. 14, 2022) (emphasis added) (quoting Ala. Code § 6-5-123). An Alabama county "is clearly not an individual, nor a city, nor the [s]tate." *Lee County*, 2022 WL 450810, at *4.[78] The sixty Moving Plaintiffs that are Alabama counties therefore cannot bring a public

---

[78] The *Lee County* court found that the plaintiff county could bring a claim under Alabama Code § 45-41-170.04(b), which authorizes a county to file a civil action to abate a specific type of public nuisance not applicable here related to maintenance of property. Alabama's remaining public nuisance statutes likewise would not save any Moving Plaintiff's public nuisance claim. *See* Ala. Code § 45-41-170.01 (establishing cause of action against a person "in control of a building, lot,

nuisance claim under Alabama law, *id.*, and leave to amend should be denied as futile, *see Stanley*, 105 F.4th at 867.

### 4.     Many Moving Plaintiffs' RICO claims are time-barred.

#### (a)     The Moving Plaintiffs had actual notice of RICO claims in 2018.

Insofar as the Moving Plaintiffs seek to add a RICO claim against the PBMs (*see* Rochester Am. Compl. ¶¶ 784–817), the claim will be untimely for many Moving Plaintiffs.[79] Federal civil RICO claims are subject to a four-year statute of limitations, and "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella v. Wood*, 528 U.S. 549, 555 (2000); ECF No. 2568 at 13 (quoting *Rotella*, 528 U.S. at 555). "Knowledge of all facts is not required to set off the prescriptive clock. Thus, the clock begins to tick when a plaintiff senses 'storm warnings,' not when he hears thunder and sees lightning." *Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 399 (6th Cir. 1999) (citation omitted).

A Moving Plaintiff's RICO claim is untimely if they knew or should have known of their alleged injuries before 2020. Even assuming the latest possible time the Moving Plaintiffs were

---

junkyard, or other premises" that constitutes a public nuisance); *id.* §§ 6-5-155, 155.2–.3 (establishing cause of action to provide "incentives for property owners to take a more active role in preventing the use of their property for the manufacture, use, sale, storage, or distribution of drugs" when notice to the owner "of the property on which the drug-related nuisance is situated" has not resulted in abatement of the nuisance); Ala. Code § 11-3A-2(a)(5) (applies only to "abatement of noise, unsanitary sewage, or pollution" and does not confer statutory standing on counties).

[79] The PBMs acknowledge that this Court has previously held that equitable RICO claims are permissible and not subject to a statute of limitations. The PBMs preserve their argument that RICO does not allow plaintiffs other than the U.S. Attorney General to seek equitable relief. *See Hengle v. Treppa*, 19 F.4th 324, 356 (4th Cir. 2021); *Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986); *see also Ganey v. Raffone*, 1996 WL 382278, at *4 n.6 (6th Cir. July 5, 1996). Even if equitable relief under RICO were available here, any such relief would be subject to RICO's four-year statute of limitations, *see Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987), including under the concurrent remedy rule, which provides that equitable relief is time barred when "the applicable statute of limitations bars the concurrent legal remedy," *Madison v. Wood*, 410 F.2d 564, 567 (6th Cir. 1969) (cleaned up).

aware of their alleged injuries—the date of their original complaint filing—*nearly all Moving Plaintiffs* (1,693 specifically) filed their original complaints before July 29, 2020, four years before the omnibus motion for leave to amend. The Moving Plaintiffs' knowledge of their injuries before July 29, 2020, renders their RICO claims against PBMs untimely. *Baltrusaitis v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 86 F.4th 1168, 1177 (6th Cir. 2023) (because "plaintiffs knew they had been harmed . . . the statute of limitations began to run at that time"); *Grimmett v. Brown*, 75 F.3d 506, 512 (9th Cir. 1996) (affirming dismissal of RICO claim where plaintiff's prior complaint demonstrated knowledge of injuries outside the limitations period).

Even assuming the Moving Plaintiffs had to know the source of their injuries for their claim to accrue (they did not),[80] "their claims are still untimely." *Tew*, 2024 WL 4333681, at *8. The Moving Plaintiffs knew or should have known of their potential claims against the PBMs as early as January 25, 2018, when other MDL plaintiffs publicly filed complaints asserting RICO claims against Express Scripts and OptumRx. *See, e.g.*, *County of Webb v. Purdue Pharma, L.P.*, No. 1:18-op-45175 (N.D. Ohio Jan. 25, 2018), ECF. No. 1, Compl. ¶¶ 417–69 (alleging RICO claims against Express Scripts and OptumRx).[81] In March 2018, Webb County broadcast to the entire MDL its claims against the PBMs by filing a public letter on the MDL docket that attached its complaint

---

[80] *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1278 (10th Cir. 2014) (A "RICO victim need not have actual knowledge of exactly who committed the RICO predicate act resulting in the injury for a civil RICO claim to accrue."); *Tew v. MCML Ltd.*, --- F. Supp. 3d. ---, 2024 WL 4333681, at *8 (E.D. Ky. Sept. 27, 2024) (explaining the injury-discovery rule "finds stronger support in the case law" than a source-discovery).

[81] *See also City of Springfield v. Purdue Pharma, L.P.*, No. 1:18-op-45899 (N.D. Ohio May 30, 2018), ECF No. 1, Compl. ¶¶ 243–91; *County of Jefferson v. Purdue Pharma, L.P.*, No. 1:19-op-45437 (N.D. Ohio June 12, 2019), ECF No. 1, Compl. ¶¶ 721–74; *Clark County v. Purdue Pharma, L.P., et al.*, 1:19-op-46168 (N.D. Ohio Sept. 12, 2019), ECF No. 1-3, ¶¶ 325–415 (asserting a claim under the Nevada Racketeering Act); *Town of Bennington v. Mallinckrodt PLC*, No. 1:19-op-45791 (N.D. Ohio Sept. 17, 2019), ECF No. 1, Compl. ¶¶ 753–806.

and that emphasized it was "nam[ing] a critical defendant group – pharmacy benefit managers." ECF No. 108 at 1.

The Moving Plaintiffs thus had actual notice of their RICO claims against the PBMs in 2018, six years before moving for leave to amend. Their claims are therefore now untimely. *See Osborn v. Griffin*, 50 F. Supp. 3d 772, 807 (E.D. Ky. 2014) (finding RICO claim untimely because "even a cursory review of [the related] complaint would have revealed to plaintiffs exactly the same allegations regarding [defendants] that they now assert as a basis for their RICO injury."). Accordingly, leave to amend should be denied. *See Clark v. Viacom Int'l Inc.*, 617 F. App'x 495, 500 (6th Cir. 2015) (affirming denial of leave to add untimely claim).

> **(b)      Equitable tolling doctrines do not save the Moving Plaintiffs' untimely claims.**

The Moving Plaintiffs cannot rescue their expired claims by invoking the doctrines of fraudulent concealment or equitable tolling. To establish fraudulent concealment, a plaintiff must allege that "defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period." *Peralta v. Accept Acceptance, LLC*, 2009 WL 723910, at *7 (W.D. Mich. Mar. 10, 2009) (quoting *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 421 (6th Cir. 2009)). Similarly, equitable tolling is inappropriate where a plaintiff had "actual notice of the filing requirement" before the expiration of the limitations period. *Johnson v. U.S. Postal Servs.*, 2017 WL 3977848, at *7 (E.D. Mich. Sept. 11, 2017) (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). The Moving Plaintiffs are not entitled to tolling because they had actual notice of their claims years before the limitations period. *See, e.g.*, *Osborn*, 50 F. Supp. 3d at 807 (rejecting fraudulent concealment where plaintiffs had actual and inquiry notice of their injuries through publicly available complaints asserted in related litigation).

More importantly, plaintiffs "who rely on equitable tolling through fraudulent concealment have the burden of demonstrating" that they exercised "due diligence" in investigating their claims. *Hill v. U.S. Dep't of Lab.*, 65 F.3d 1331, 1336 (6th Cir. 1995). The Moving Plaintiffs cannot meet that requirement. First, because Moving Plaintiffs do not provide their proposed amended complaints, each Moving Plaintiff has failed to affirmatively show that they exercised due diligence. *See Murillo v. Conagra Brands*, 2024 WL 4544327, at *6 (N.D. Ohio Oct. 22, 2024) ("Fraudulent concealment as a basis for equitable tolling, like other claims of fraud, must be pled with particularity."). Second, the Moving Plaintiffs cannot seriously argue that they exercised due diligence in pursing their claims when they indisputably knew of their claimed opioid-related injuries more than four years ago and yet failed to assert a RICO claim against the PBMs. *Baltrusaitis*, 86 F.4th at 1178–79 (holding that equitable tolling did not apply because the plaintiffs were not diligent in pursuing their claim); *Univ. of Pittsburgh v. Townsend*, 2007 WL 2263079, at *18–19 (E.D. Tenn. Aug. 3, 2007) (same), *aff'd*, 542 F.3d 513 (6th Cir. 2008). This is especially true for the 1,335 Moving Plaintiffs that asserted RICO claims in complaints filed in 2019 or earlier but declined to name the PBMs. Any resort to equitable tolling doctrines "fails under RICO's stringent duty of due diligence." *Osborn*, 50 F. Supp. 3d at 807.

### (c)     The separate accrual doctrine does not apply.

The Moving Plaintiffs cannot avail themselves of the separate accrual doctrine because they have not identified any specific conduct constituting new predicate acts within the limitations period. *See* ECF No. 5598 at 9 ("Under the separate accrual rule, [Amending] Plaintiffs must allege 'the commission of a separable, new predicate act within a 4-year limitations period,' and show that the 'new act could have caused them harm over and above the harm that the earlier acts caused.'") (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)).

The Moving Plaintiffs' actual knowledge of their claims long before the limitations period demonstrates that their motion for leave to add RICO claims against Defendants is futile. *Oakley v. Citizens Bank of Logan*, 2016 WL 1117596, at *5 (S.D. Ohio Mar. 21, 2016) (denying futile motion for leave to add untimely RICO claim); *EJS Properties, LLC v. Toledo*, 522 F. Supp. 2d 936, 945 (N.D. Ohio 2007) (same).

### 5. Many Moving Plaintiffs' public nuisance claims are time-barred.

Many Moving Plaintiffs' public nuisance claims are time-barred for the same reasons. The public nuisance claims are governed by different state statutes of limitations and each state may have its own tolling doctrines. This Court must consider each Moving Plaintiff's case individually to determine the length of the delay in seeking leave to amend and the severity of each Moving Plaintiff's lack of diligence and undue delay under each state's specific legal tests. *In re CVS*, 956 F.3d at 841. The Moving Plaintiffs sought leave to amend their complaints to add the PBMs on July 29, 2024. Under the relevant state laws, at least 461 Moving Plaintiffs' proposed public nuisance claims against the PBMs are time-barred. The PBMs analyze certain states' laws below, but they continue to be procedurally prejudiced by Moving Plaintiffs' failure to make case-specific arguments and allegations in their omnibus motion. In any event, on the face of the omnibus motions, many Moving Plaintiffs failed to (1) diligently bring their public nuisance claims based on alleged injuries that they have known about for years and pleaded in their original complaints; and (2) allege any facts that would support the application of any tolling doctrine in their individual cases. Their public nuisance claims are therefore futile under Rule 15.

**Alabama.** In Alabama, a two-year limitations period applies to public nuisance claims. *Ex parte Abbott Labs.*, 342 So. 3d 186, 194 (Ala. 2021). The claim accrues on "the date the first legal injury occurs." *Id.* (citation omitted). That is, accrual occurs "as soon as the claimant is entitled to maintain the action, regardless of whether the full amount of the damage is apparent at the time of

the first legal injury." *Id.* at 194 (citation and quotation marks omitted). "[T]he plaintiff's ignorance of a tort or injury does not postpone the running of the statute of limitations until that tort is discovered." *Id.* at 199 (citation and quotation marks omitted). For any Alabama public nuisance claim to be timely, it must have accrued on or after July 29, 2022.[82] But 209 Moving Plaintiffs in Alabama filed their original complaints before July 2022. Their claims against the PBMs are therefore time-barred.

**Connecticut.** In Connecticut, a two-year limitations period applies to public nuisance claims predicated upon negligence. *See* Conn. Gen. Stat. § 52-584; *DiMiceli v. Town of Cheshire*, 131 A.3d 771, 781 n.7 (Conn. App. Ct. 2016). Otherwise a three-year limitation period applies because "[p]ublic nuisance is a tort," and "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." *DiMiceli*, 131 A.3d at 781 n.7 (quoting Conn. Gen. Stat. § 52-577). The claim accrues at least "when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action." *Peek v. Manchester Mem'l Hosp.*, 269 A.3d 24, 28 (Conn. 2022) (cleaned up). For any Connecticut public nuisance claim to be timely, then—even assuming the claim is of the non-negligence variety—it must have accrued on or after July 29, 2021. The sole Moving Plaintiff from Connecticut filed its original complaint in 2020, so its claim is time-barred.

**Florida.** In Florida, a four-year limitations period applies to nuisance claims. *See Maddan v. Okaloosa County*, 358 So. 3d 834, 838 (Fla. Dist. Ct. App. 2023) ("An action for trespass on

---

[82] As already noted, relation back cannot save these untimely claims. "Generally, when an amended complaint adds claims or parties who weren't previously part of the lawsuit, the lawsuit commence[s] for those claims and parties when they are added." *Kellom*, 86 F.4th at 294 (cleaned up). Such an amendment to add a new defendant "creates a new cause of action" that does not relate back to the original filing for purposes of the applicable limitations period. *Zakora v. Chrisman*, 44 F.4th 452, 480 (6th Cir. 2022).

real property or any action not specifically provided for in these statutes, including nuisance, must commence within four years.") (cleaned up); *see also* Fla. Stat. § 95.11(3)(f), (o). Claims under Florida law accrue "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). And, "[a]s a general proposition, statute of limitations periods begin to run with the discovery by the plaintiff of an act constituting an invasion of the plaintiff's legal rights." *Baker v. Hickman*, 969 So. 2d 441, 443 (Fla. Dist. Ct. App. 2007). For any Florida public nuisance claim to be timely, it must have accrued on or after July 29, 2020. Of the Moving Plaintiffs in Florida, 72 filed their original complaints before July 2020, so their claims are time-barred.

**Louisiana.** In Louisiana, a one-year prescriptive period applies to public nuisance claims.[83] *See* La. Civ. Code. art. 3492; *Barrett v. Dresser, LLC*, 2021 WL 53658, at *5 n.5 (W.D. La. Jan. 6, 2021); *Reese v. ICF Emergency Mgmt. Servs., LLC*, 684 F. Supp. 2d 793, 800 (M.D. La. 2009). Prescription begins to run "from the day injury is sustained." *Averette v. Bayer Healthcare Pharms. Inc.*, 2014 WL 1246851, at *2 (E.D. La. Mar. 25, 2014) (quoting La. Civ. Code art. 3492). For any Louisiana public nuisance claim to be timely, then, it must have accrued on or after July 29, 2023. All 11 Louisiana Moving Plaintiffs filed their original complaints before 2023, so their claims are time-barred. And while Louisiana recognizes the continuing tort doctrine, *Hogg v. Chevron USA, Inc.*, 45 So. 3d 991, 1002–03 (La. 2010), none of the Louisiana Moving Plaintiffs asserted any case-specific arguments or allegations that would support applying this doctrine against the PBMs in each of their individual cases.

---

[83] In 2024, Louisiana adopted a two-year prescriptive period to claims arising after July 1, 2024, but the older prescription period applies to the Moving Plaintiffs' claims here, all of which arose before July 1, 2024. *See* Act No. 423 §§ 3–4 (H.B. 315) (La. 2024 Reg. Sess.) ("The provisions of this Act shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act. . . . This Act shall become effective on July 1, 2024.").

**Maryland.** In Maryland, a three-year limitations period applies to nuisance claims. *See Litz v. Md. Dep't of the Env't*, 76 A.3d 1076, 1086–87 (Md. 2013) (citing Md. Code Ann., Cts. & Jud. Proc. § 5-101). The claim accrues when "the plaintiff knows or should have known of the injury giving rise to" the claims. *Id.* at 1086 (citations omitted). For any Maryland public nuisance claim to be timely, it must have accrued on or after July 29, 2021. But 12 of the Maryland Moving Plaintiffs filed their original complaints before 2021. Their claims against the PBMs are therefore time-barred. And while Maryland law recognizes the continuing tort doctrine, *Litz*, 76 A.3d at 1089, none of the Maryland Moving Plaintiffs asserted any case-specific arguments or allegations that would support applying this doctrine against the PBMs in each of their individual cases.

**Massachusetts.** In Massachusetts, a three-year limitations period applies to tort claims like public nuisance. Mass. Gen. Laws ch. 260, § 2A; *Carpenter v. Texaco, Inc.*, 646 N.E.2d 398, 399–400 (Mass. 1995). The claim accrues "when the plaintiff discovered or reasonably should have discovered the injury." *Robinson v. Triple S*, 629 F. Supp. 3d 4, 5 (D. Mass. 2022). For any Massachusetts public nuisance claim to be timely, it must have accrued on or after July 29, 2021. In total, 123 Moving Plaintiffs located in Massachusetts filed their original complaints before 2021. Their claims are therefore time-barred. Moreover, Massachusetts law tolls the statute of limitations only for recurring tortious *conduct*, not recurring negative effects. *See Carpenter*, 646 N.E.2d at 399. Regardless, the Massachusetts Moving Plaintiffs have failed to assert any case-specific arguments or allegations that would support applying the continuing tort doctrine against the PBMs in each of their individual cases.

**Nebraska.** In Nebraska, a four-year limitations period applies to public nuisance claims. *Morrison Enters., LLC v. Dravo Corp.*, 2009 WL 4325749, at *10 (D. Neb. Nov. 24, 2009) (citing Neb. Rev. Stat. § 25-207). Generally, the limitations period "begins to run as soon as the claim

accrues, and an action in tort accrues as soon as the act or omission occurs." *Id.* at *10 (citation omitted). Although Nebraska has a discovery rule that tolls a limitations period "when the plaintiff did not discover the injury and could not have done so," *Oltman v. Parde*, 5 N.W.3d 197, 206 (Neb. Ct. App. 2024), a plaintiff need not know "the exact nature or source of the problem, but only that a problem exists," *Reinke Mfg. Co. v. Hayes*, 590 N.W.2d 380, 390 (Neb. 1999). The limitations period "begins to run" when the plaintiff "has the right to institute and maintain a suit"—that is, even when the full nature and extent of damages may not be known. *Condon v. A.H. Robins Co.*, 349 N.W.2d 622, 625 (Neb. 1984). For any Nebraska public nuisance claim to be timely, it must have accrued on or after July 29, 2020. But both Nebraska Moving Plaintiffs filed their original complaints before 2020. Their claims are therefore time-barred. Nor have any Nebraska Moving Plaintiffs advanced any case-specific arguments or allegations that would justify the application of the discovery rule or any other tolling doctrine against the PBMs in each individual case.

**Washington.** In Washington, a two-year limitations period applies to public nuisance claims. *Wallace v. Lewis County*, 137 P.3d 101, 110 (Wash. Ct. App. 2006). "A nuisance cause of action accrues when the plaintiff initially suffers some actual and appreciable harm or when the plaintiff should have discovered the basis for a nuisance action." *Id.* (citation omitted). For any Washington public nuisance claim to be timely, it must have accrued on or after July 29, 2022. All 29 Washington Moving Plaintiffs filed their original complaints before 2022. Their claims are therefore time-barred. And while Washington may apply the continuing tort doctrine to toll statutes of limitation, *see Pac. Sound Res. v. B.N.S.F. Ry.*, 125 P.3d 981, 989 (Wash. Ct. App. 2005), none of these Moving Plaintiffs make any case-specific arguments or allegations that would justify the application of this, or any other, tolling doctrine against the PBMs in each individual case.

6.    **Many Moving Plaintiffs lack standing to assert New York statutory claims.**

In their omnibus motions, the Moving Plaintiffs state that they intend to assert claims "substantially identical" to those asserted by the City of Rochester. ECF Nos. 5547 at 1; 5548 at 1. The City of Rochester alleges three claims under New York statutes. *See* Rochester Am. Compl. ¶¶ 841–69 (Fourth Claim for Relief—Deceptive Acts and Practices under New York General Business Law § 349; Fifth Claim for Relief—False Advertising under New York General Business Law § 350; Sixth Claim for Relief—Violation of New York Social Services Law § 145-B). The 1,686 Moving Plaintiffs located outside the State of New York do not plead any allegations sufficient to invoke the laws of New York and therefore lack standing to assert those claims. *See Gallant v. Holdren*, 2020 WL 9349975, at *2 (6th Cir. June 2, 2020) (affirming denial of motion for leave to amend complaint where plaintiff lacked standing to assert the proposed claim).

Additionally, only the "local social services district or the state" of New York may bring a claim under the New York Social Services Law (**SSL**) § 145-B. "Social services district" is narrowly defined to include only (1) the City of New York, and (2) each *county* of the state outside New York City. SSL §§ 2(7), 61. For this reason, City of Rochester withdrew its claim under SSL § 145-B. *See* ECF No. 5448 at 1 n.3. Each of the 1,827 Moving Plaintiffs that is not the City of New York, a county in New York, or the state of New York, cannot state a claim under SSL § 145-B and leave to amend to add this claim would be futile.

\*       \*       \*

This does not represent an exhaustive list of the issues permeating the Moving Plaintiffs' omnibus motions for leave to amend on an individual basis. Nor does it represent all of the arguments that the PBMs might have raised had the Moving Plaintiffs provided notice of their proposed amendments and attempted to show good cause on a case-by-case basis (as is their

burden under the Federal Rules). Instead, it highlights—as best the PBMs can tell given the omnibus motions before the Court—the issues touching most individual plaintiffs seeking leave to amend. Each Moving Plaintiff's case implicates a unique combination of those and other issues not discussed here. Accordingly, the PBMs analyze each case in turn in Section III.C below.

### C. Each individual Moving Plaintiff should be denied leave to amend.

Due to its length, this Section appears in the Part II attachment to this brief.

Respectfully submitted this 16th day of January, 2025.

 /s/ Brian D. Boone
Brian D. Boone
Brandon C.E. Springer
Matthew P. Hooker
William W. Metcalf
**ALSTON & BIRD LLP**
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
T: (704) 444-1000
brian.boone@alston.com
brandon.springer@alston.com
matthew.hooker@alston.com
will.metcalf@alston.com

Andrew Hatchett
Grace Assaye
**ALSTON & BIRD LLP**
1201 W. Peachtree St. NW, Suite 4900
Atlanta, GA 30309
T: (404) 881-7000
andrew.hatchett@alston.com
grace.assaye@alston.com

*Attorneys for UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.*

 /s/ Jonathan G. Cooper
Michael J. Lyle
Jonathan G. Cooper
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
1300 I St. NW, Suite 900
Washington, DC 20005
T: (202) 538-8000
mikelyle@quinnemanuel.com
jonathancooper@quinnemanuel.com

Sage R. Vanden Heuvel
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
T: (213) 443-3000
sagevandenheuvel@quinnemanuel.com

Tara MacNeill
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
2601 South Bayshore Dr, Suite 1550
Miami, FL 33133
T: (305) 402-4880
taramacneill@quinnemanuel.com

*Attorneys for Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); and Express Scripts Specialty Distribution Services, Inc.*