UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) MDL 2804 ) |
| | ) Case No. 1:17-md-2804 |
| THIS DOCUMENT RELATES TO: | ) ) Judge Dan Aaron Polster |
| *County of Tarrant v. Purdue Pharma LP, et al.,* Case No. 1:18-op-45274 (Track Nine) | ) ) **ORDER DENYING** ) **ALBERTSONS' MOTION** ) **FOR SUMMARY JUDGMENT** ) |

Before the Court is Albertsons' Motion for Summary Judgment (docket no. 5585).[1] Plaintiff Tarrant County filed a Response (docket no. 5726), and Albertsons filed a Reply (docket no. 5752). Having considered the parties' arguments carefully, and for the reasons set forth below, Albertsons' Motion is **DENIED**.

### A. Legal Standard

The Court has previously set forth the legal standards applicable to motions for summary judgment under Fed. R. Civ. P. 56. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3917575, at *1 (N.D. Ohio Aug. 19, 2019) (docket no. 2483). The Court incorporates the legal standard herein by reference.

### B. Standing

Albertsons offers two reasons why Tarrant County lacks standing to bring its public nuisance claims. First, Albertsons asserts Tarrant County lacks Article III standing. Second,

---

[1] Albertsons' legal arguments are contained in a separately filed memorandum in support of its Motion. Docket no. 5587. In this opinion, citations to Albertsons' "Motion" are citations to its legal memorandum.

Albertsons asserts Tarrant County lacks statutory authorization from the Texas Legislature to "bring a lawsuit against Albertsons to abate an alleged public nuisance stemming from the sale of prescription opioids." Reply at 2. The Court finds neither argument persuasive.

Regarding its first argument, Albertsons asserts Tarrant County lacks Article III standing because "Texas counties cannot sue for injuries to their citizens."[2] *Id.* at 2. However, Tarrant County is not seeking relief for injuries to its citizens. Indeed, Albertsons acknowledges "the Complaint is replete with references to Tarrant County's 'proprietary interests,' and that Tarrant County 'has suffered, and will continue to suffer, unique harms as described in this Complaint, which are of a different kind and degree than those suffered by Texas and Tarrant County citizens at large[.]'" Motion at 7 (citations omitted).

While it is true that Plaintiff's complaint alleges harms suffered by the people of Tarrant County, those allegations merely serve as a description of the alleged public nuisance—that is, the alleged interference with a right common to the general public, such as the people's rights to public health, safety, and welfare. They are not allegations of the injuries for which Tarrant County seeks compensation.

This Court has repeatedly concluded municipality-specific injuries, such as those alleged here by Tarrant County, are sufficiently concrete and particularized to confer Article III standing. *See* Response at 17 n.44 (identifying this Court's prior orders reaching this conclusion). Accordingly, Albertsons' Article III standing argument is not well taken.

As to its second argument, Albertsons asserts Tarrant County lacks statutory authority under Texas law to bring this lawsuit. In Texas, "[g]enerally, a county has the power to sue and be

---

[2] Albertsons asserts that Tarrant County's "*actual* claim as-pleaded is an attempt to 'assert the economic injuries of its citizens on their behalf as *parens patriae*.'" Motion at 7 (quoting *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 338 (5th Cir. 2020)) (emphasis in original). The Court disagrees. The alleged injuries for which Tarrant County seeks relief are the County's own.

2

sued as a political body." *See Tuma v. Kerr Cnty.*, 336 S.W.3d 277, 282 (Tex. App. 2010) (quoting *County of Lexington v. City of Columbia*, 303 S.C. 300 (1991)).³ Albertsons asserts, however, that: (1) "While the Texas Legislature has explicitly authorized Texas counties to bring suits to abate certain public nuisances, . . . Texas has not delegated to counties generalized authority to bring suit to abate ***anything*** they might try to call a nuisance," Motion at 6 (citing Tex. Health & Safety Code § 343.011) (emphasis added); and (2) "nothing in Texas Health & Safety Code Chapter 343—Abatement on [*sic*] Public Nuisances—authorizes Tarrant County to bring this lawsuit." Reply at 7. Albertsons thus insists that Tarrant County does not have the authority to sue for abatement of the specific type of public nuisance alleged.

The Court concludes Albertsons reads the Texas Code too narrowly. Albertsons leans heavily on the word "only" in Section 343.011 to suggest the regulation gives "counties authority to abate *only* enumerated nuisances[.]" Motion at 7 (citing Tex. Health & Safety Code § 343.011) (emphasis in Albertsons' Motion). The actual language of Section 343.011, however, is: "This section [listing "Public Nuisances Prohibited"] applies *only* to the unincorporated area of a county." Tex. Health & Safety Code § 343.011(a) (emphasis added). The most natural reading of this provision is simply that a county may not enforce the explicitly defined nuisances within the boundaries of incorporated cities that are themselves within the county's borders. The subsection in no way implies a county has authority to abate only those nuisances enumerated in that section.

Indeed, several considerations counsel otherwise. First, the Texas Code contains other sections describing other types of nuisances. *See, e.g.,* Tex. Civ. Prac. and Remedies Code

---

³ The Court recognizes that *Tuma* stands broadly for the proposition that a county, "as a political subdivision of the State, . . . lacks the sovereignty to maintain a suit under the doctrine of *parens patriae*." *Tuma*, 336 S.W.3d at 282. As described above, however, this action was not brought under the doctrine of *parens patriae*, so the general principle that a county has the power to sue and be sued in its own capacity holds. *See id.* ("Generally, a county has the power to sue and be sued as a political body. As a political subdivision of the State, however, it lacks the sovereignty to maintain a suit under the doctrine of *parens patriae*.").

3

§§ 125.001(2), 125.062, & 125.063 (separately defining "Public nuisance" differently from those listed in Section 343.011). It is clearly not the case that Section 343.011 sets forth an all-inclusive list of all nuisances a county is empowered to abate.

Second, cases exist where a Texas county brought an action in public nuisance for conduct other than that described in Section 343.011 (or, for that matter, in Tex. Civ. Prac. and Remedies Code §§ 125.062 and 125.063). *See, e.g.*, *Texas Cent. Partners, LLC v. Grimes Cnty.*, 580 S.W.3d 824 (Tex. App. 2019) (reviewing nuisance claim based on railroad company's survey of property that caused damage to public roadways). The fact that Texas courts entertain actions brought by Texas Counties sounding in public nuisance for conduct other than "only" what is explicitly enumerated in Section 343.011 demonstrates that Section is not the "only" source of authority pursuant to which counties may bring public nuisance claims.

Further, in the Texas Opioid Litigation, numerous manufacturer- and pharmacy-defendants made substantially similar arguments as those asserted by Albertsons here, contending the County of Dallas lacked authority to bring public nuisance claims related to diversion of opioids. Those arguments were rejected by the Texas state court overseeing the matter. *See County of Dallas v. Purdue Pharma, L.P.*; *In re: Texas Opioid Litigation*, No. 2018-77098, 2019 WL 13405504 (Tex. Dist. March 8, 2019) (dismissing Rule 91A motions without opinion). This ruling is strong persuasive authority.

In Texas, "Constitutional and statutory provisions conferring authority upon the Commissioners Court *should be broadly and liberally construed* to ascertain the scope of the authority granted either expressly or by necessary implication." *Cosby v. Cnty. Comm'rs of Randall Cnty.*, 712 S.W.2d 246, 248 (Tex. App. 1986), *writ refused NRE* (Oct. 1, 1986) (emphasis added). Accordingly, the Court rejects Albertsons' narrow interpretation of Tex. Health & Safety

Code § 343.011. It is not the law of Texas that *only* the public nuisances explicitly listed in that Section can be prohibited by a county. Tarrant County can exercise its general authority to sue and be sued to bring its common-law public nuisance claim against Albertsons.

### C. Texas Regulatory Consistency Act

Albertsons asserts that the recently enacted Texas Regulatory Consistency Act ("TRCA") preempts Tarrant County's public nuisance claim. The TRCA, enacted in 2023, states:

> Unless expressly authorized by another statute, a municipality or county may not adopt, enforce, or maintain an ordinance, order, or rule regulating conduct in a field of regulation that is occupied by a provision of this code. An ordinance, order, or rule that violates this section is void, unenforceable, and inconsistent with this code.

Tex. Occ. Code § 1.004. Tarrant County has not attempted to enact an ordinance, order, or rule through normal legislative processes, but has instead brought a tort action for public nuisance. Albertsons' argument turns, therefore, on whether Tarrant County's common-law tort claim constitutes "an ordinance, order, or rule regulating conduct." *Id*. The Court concludes it does not.

The Court is persuaded by the reasoning offered by the Texas Supreme Court in *Horton v. Kansas City S. Ry. Co.*, 692 S.W.3d 112 (Tex. 2024). In *Horton*, a family brought a common-law tort action against a railway company for negligence. The Texas Supreme Court conducted a thorough analysis of several federal laws governing railroad operations to decide "whether the section[s] preempt[] state and local legislative enactments—particularly statutes, regulations, and ordinances—as opposed to state common-law claims like the negligence claim at issue [in *Horton*]." *Id.* at 123. The court concluded, based on the language of the applicable statutes, that "a common-law negligence claim does not ordinarily 'regulate' rail transportation because it is not specifically directed toward rail transportation and only incidentally affects rail transportation when the alleged tortfeasor happens to be a rail carrier." *Id.* at 131.

5

The same reasoning applies in this case under the specific language of the TRCA. The TRCA expressly preempts ***ordinances***, ***orders***, and ***rules*** regulating conduct. It does not expressly preempt Texas common law tort actions. "For over half a century, [the Texas Supreme] Court has adhered to the principle that 'if a statute . . . deprives a person of a common law right, the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview.'" *Horton*, 692 S.W.3d at 152 (Busby, J. concurring) (quoting *Satterfield v. Satterfield*, 448 S.W.2d 456, 459 (Tex. 1969)). It is also certain the Texas Legislature knows how to: (1) draft language that encompasses the common law, and (2) distinguish common law from ordinances, orders, and rules. *See, e.g.*, Tex. Loc. Gov't Code § 284.002(7) ("'Law' means *common law **or*** a federal, state, or local law, statute, code, *rule*, regulation, *order*, or *ordinance*.") (emphasis added).

Therefore, absent a clear directive from the Texas Legislature that it intended to preempt Texas common law, this Court will not broadly interpret a Texas statute to preempt more than is stated by the plain language of that statute—here, ordinances, orders, and rules regulating conduct. The Court agrees with Plaintiff: "[A] common-law nuisance claim does not 'regulate' the practice of pharmacy because it is not directed toward the pharmacy industry and only incidentally affects that industry in this case because Albertsons happens to be a pharmacy." Response at 23. Tarrant County's claims are not preempted by the TRCA.

**D. Public Nuisance under Texas Common Law**

Albertsons asserts that Texas does not recognize "the tort of public nuisance in the context of selling a lawful product, let alone the lawful distribution and dispensing of a prescription medication." Motion at 10. But Albertsons' assertion misrepresents or at least misapprehends Plaintiff's claims. Tarrant County's claims are not premised on the lawful sale of a legal product;

6

its claims rest on Albertsons' distribution and dispensing of Schedule II controlled substances in a manner that allegedly *fails* to comply with Texas and federal drug laws and other pharmacy and pharmaceutical-distributor regulations. Thus, under Plaintiff's theory, the legality or illegality of the product itself is of very little moment. Rather, it is the alleged negligence, unreasonableness, or unlawfulness of the conduct of Albertsons' dispensing or distribution of the otherwise legal product that matters.

Nevertheless, Albertsons' core assertion that Texas only recognizes "two narrow and traditional categories" of public nuisances is worthy of additional scrutiny. *Id.* Albertsons asserts Texas only recognizes public nuisances for: "(1) conduct which offends a property interest, most typically interference with public property; and (2) conduct which the State of Texas or one of its municipalities has legislatively deemed to constitute a nuisance." *Id.* For the reasons below the Court concludes this assertion is incorrect.

Texas, like Ohio, follows the Restatement (Second) of Torts. *See, e.g., Jamail v. Stoneledge Condo. Owners Ass'n*, 970 S.W.2d 673 (Tex. App. 1998) (relying on the Second Restatement). Accordingly, in Texas, "[a] public nuisance is a condition that amounts to 'an unreasonable interference with a right common to the general public.'" *Id.* at 676 (quoting Restatement (Second) of Torts § 821B(1) (1979)). Further, the Texas Supreme Court has provided that "the [Texas] Legislature may not validly declare something to be a nuisance which is not so in fact, but that depends upon the question of whether that which is declared to be a nuisance endangers the public health, public safety, public welfare, or offends the public morals." *State v. Spartan's Indus., Inc.*, 447 S.W.2d 407, 413 (Tex. 1969). Put differently, unless a thing is in fact a nuisance, the Texas legislature cannot validly declare it to be one.

As Albertson's points out, the Texas Legislature has "affirmatively—through the legislative process—deemed specific narrow conduct to be a public nuisance." Motion at 11. But some of that "specific narrow conduct," as Albertsons' must concede, includes the sale of otherwise legal products in a manner deemed to be unlawful. *See id.* (citing *Spartan's*, 447 S.W.2d at 413 (sale of otherwise legal products on consecutive weekend days deemed a public nuisance); and *Stoughton v. City of Fort Worth*, 277 S.W.2d 150, 154 (Tex. Civ. App. 1955) (sale of otherwise legal fireworks within 5,000 feet of the city deemed to be a nuisance)). Therefore, Texas law provides that the sale of otherwise legal products in an unlawful manner can be a nuisance. Otherwise, Texas could not have legislatively declared it so. Ultimately, in Texas, some malfeasances other than merely "conduct that offends a property interest" can constitute public nuisances. *Id.* at 10.

The question that remains is whether: (a) the Texas Legislature must have expressly deemed Albertsons' alleged conduct a nuisance; or instead, (b) there exists a common-law right to assert that conduct which "endangers the public health, public safety, public welfare, or offends the public morals" constitutes a public nuisance. *Spartan's*, 447 S.W.2d at 413.

For substantially the same reasons stated in Section B above regarding Albertsons' statutory standing argument, the Court concludes the State of Texas did not intend to be as restrictive as Albertsons contends.[4] As noted earlier, a Texas state court has already permitted virtually identical public nuisance claims to proceed against other pharmacy defendants, overruling those defendants' motions to dismiss. *See County of Dallas v. Purdue Pharma, L.P.*; *In re: Texas Opioid Litigation*, No. 2018-77098, 2019 WL 13405504 (Tex. Dist. March 8, 2019).

---

[4] *See, generally,* Tex. Health & Safety Code § 121.003 ("The governing body of a municipality or the commissioners court of a county may enforce any law that is reasonably necessary to protect the public health.").

8

Accordingly, this Court will also allow Tarrant County's public nuisance claims to proceed under Texas state law.

### E. Legal Duty

Finally, Albertsons argues it did not owe a common-law duty of care to Tarrant County: "While Albertsons owed its patients a duty, . . . Tarrant County cannot demonstrate that Albertsons owed Tarrant County—as a county—any duty separate from the duty it owed to its patients." Motion at 16. Plaintiff responds that "Albertsons owed a common law duty not to expose Plaintiff to a foreseeable risk of harm by failing to exercise reasonable care, in accordance with applicable standards of conduct, when distributing and dispensing opioids into Plaintiff's community." Response at 29. Accordingly, this Court must decide whether a duty exists, and if so, whether Albertsons owed that duty to the County. The Court decides both in the affirmative.

In Texas:

> The existence of a duty is a question of law for the court to decide from the particular facts of the case. In deciding whether to impose a duty, the court must balance several interrelated factors. We must weigh the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. We have also emphasized other factors, including whether one party had superior knowledge of the risk or a right to control the actor who caused the harm.

*Golden Spread Council, Inc. No. 562 of Boy Scouts of Am. v. Akins*, 926 S.W.2d 287, 289–90 (Tex. 1996) (internal citations omitted). In Texas, as in most jurisdictions, including Ohio, foreseeability is "the foremost and dominant consideration" *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987).

This Court has previously concluded that local governments are foreseeably harmed when members of the opioid supply chain—who, as CSA registrants, are legally bound "to provide

9

*effective* controls and procedures against theft and diversion" 21 C.F.R. §§ 1301.71(a) (emphasis added)—permit diversion by failing to implement effectively those mandated controls and procedures. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2018 WL 6628898, at *19 (N.D. Ohio Dec. 19, 2018) (docket no. 1203 at 35) ("When there is a flood of highly addictive drugs into a community it is foreseeable—to the point of being a foregone conclusion—that there will be a secondary, 'black' market created for those drugs. It is also foreseeable that local governments will be responsible for combatting the creation of that market and mitigating its effects.").

Further, the Court agrees with Plaintiff that "imposing a duty of care here would impose little, if any, burden beyond that which the law already imposes." Response at 32 (citing *El Chico*, 732 S.W.2d at 315 ("the burden is no more than that already placed upon [defendants] by law")). Accordingly, the Court finds that: (1) the risk, foreseeability, and likelihood of injury is quite high; and (2) the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant, are quite low. So, both factors weigh in favor of finding there exists a duty of care flowing from Albertsons to Plaintiff. *See Golden Spread*, 926 S.W.2d at 289–90.

Albertsons points out that, "one week after *El Chico* was decided, the Texas legislature enacted the Dram Shop Act to supplant judicially created liability with a statutory remedy." *Martinez v. Walgreen Co.*, 935 F.3d 396, 401 (5th Cir. 2019); *see* Reply at 17 n.11. Albertsons asserts: "This demonstrates that 'liability between providers of potentially dangerous substances and injured third parties involves delicate policy determinations' for the Legislature, not courts, to make." Reply at 17 n.11 (quoting *Martinez*, 935 F.3d at 401). And "any liability imposed on pharmacies—which has state-wide and national implications like the distribution of prescription opiates—is something the Legislature should decide." *Id.*

It is worth noting that, from the very beginning of this MDL, this Court has voiced a similar sentiment. *See, e.g.*, Tr. of 1/9/18 Status Conf. at 9:25–10:3 ("So, again, you know, ideally, this should be handled by the legislative and executive branches, our federal government, and our state governments. They haven't seemed to have done a whole lot. So, it's here."). That said, this MDL has legal vitality and Tarrant County's claims may proceed. This Court agrees with the Texas Supreme Court that "we as a court cannot cower from our obligation to recognize a legitimate cause of action grounded in negligence and based upon every person's duty to exercise reasonable care to avoid a foreseeable risk of injury to others. It is the duty of the courts of this state to resolve disputes between parties who invoke the authority of the judiciary." *El Chico*, 732 S.W.2d at 315.

Accordingly, this Court recognizes the existence of a common law duty of care owed by pharmacies not to expose Tarrant County—as a county—to a reasonably foreseeable risk of harm by failing to exercise reasonable care in providing effective controls and procedures to guard against diversion of opioids into Tarrant County. As before, this Court's conclusion is supported strongly by Judge Shaffer's rejection of similar lack-of-duty arguments made by pharmacy defendants in the Texas Opioid Litigation. *See County of Dallas v. Pharma*; *In re: Texas Opioid Litigation*, No. 2018-77098, 2019 WL 13405501 (Tex. Dist. Nov. 18, 2022).

For all of the foregoing reasons, Albertsons' Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

 /s/ Dan Aaron Polster  January 28, 2025
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**