# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**This document relates to:** *Track 9*<br>**Case No. 1:18-op-45274-DAP**<br><br>TARRANT COUNTY, TEXAS,<br><br>     Plaintiff,<br><br>  v.<br><br>PURDUE PHARMA, et al.,<br><br>     Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

## ALBERTSONS' MOTION FOR CERTIFICATION OF ORDER DENYING ALBERTSONS' MOTION FOR SUMMARY JUDGMENT FOR INTERLOCUTORY APPEAL

Albertsons, Inc., Albertsons, LLC, Safeway, Inc., Randall's Food & Drug, LP, and United Supermarkets, LLC (collectively, "Albertsons") file this Motion for Certification of Order Denying Albertsons' Motion for Summary Judgment for Interlocutory Appeal ("Motion") in connection with the Track 9 Bellwether Case, with incorporated memorandum of points and authorities in support thereof.

### INTRODUCTION AND RELEVANT BACKGROUND

Tarrant County has sued Albertsons, claiming that Albertsons' internal distribution and dispensing of prescription opioid medications has cause a public nuisance in the County. On April 9, 2021, this Court designated the Tarrant County case as a bellwether, designating it as "Track 9" in this MDL. On August 9, 2024, Albertsons filed a Motion for Summary Judgment (ECF No. 5585) and Memorandum of Law in Support of the Albertsons Defendants' Motion for Summary

1

Judgment ("MSJ"), addressing, *inter alia*, whether Tarrant County has authorization under Texas law to bring its claims, as well as whether Tarrant County's claims for public nuisance are viable under Texas law. (ECF No. 5587.) On January 28, 2025, this Court denied Albertsons' MSJ. (ECF No 5921.) With all due respect to this Court's interpretation of and application of the law, there is substantial ground for disagreement among reasonable jurists as to how the law should be applied under these circumstances to the issues of standing and Tarrant County's Texas public nuisance claims as reflected in the cases cited in Albertsons' MSJ and its subsequent Reply in Further Support of Motion for Summary Judgment ("Reply" (ECF No. 5752)).

Furthermore, the issues raised in Albertsons' MSJ are controlling. An appeal resolving these issues now could save the parties and the Texas court which will ultimately try this case substantial time and resources. Indeed, as this Court is aware, "Track 3" of this MDL was fully tried to a final judgment (CT3 Judgment Order (ECF No. 4614)), but subsequently vacated by the Sixth Circuit following the Ohio Supreme Court's opinion on a certified question regarding the controlling issues of law in *In re Nat'l Prescription Opiate Litig.*, Slip Op. No. 2024-Ohio-5744.[1] By requesting that this Court certify its Order denying Albertson's Motion for Summary Judgment for interlocutory appeal, Albertsons seeks to save judicial resources in the event these controlling issues of law are determined to be dispositive of Tarrant County's claims on appeal.

---

[1] While considering Track 3 Defendants' appeal from final judgment, the Sixth Circuit *sua sponte* certified a question on whether the Ohio Product Liability Act ("OPLA") abrogated common law public nuisance claims based on sale of a product, *see In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455 (6th Cir. 2023), an argument Defendants advanced early and often in that litigation. *See* CT3 Certification Denial (ECF No. 4251 at 1-2) (describing Track 3 Defendants' motion to certify the OPLA abrogation question, on which final judgment was eventually vacated, redundant.) The Ohio Supreme Court answered in the affirmative, and the Sixth Circuit subsequently vacated the judgment against Track 3 Defendants. *In re Nat'l Prescription Opiate Litig.*, 2025 Fed. App. 58N (6th Cir. Jan. 31, 2025).

2

Accordingly, Albertsons requests that this Court certify the issues of (1) whether Tarrant County is authorized by Texas state law to bring its claims arising from Albertsons' sale of FDA-approved pharmaceutical drugs; and (2) whether Tarrant County can bring claims for public nuisance for Albertsons' sale of FDA-approved pharmaceutical drugs. Specifically, the issues of state law standing to bring this suit and public nuisance in the context of the sale of prescription drug products, such as opioids, are difficult, novel questions, with little guiding authority in this or any relevant jurisdiction, and is one of first impression under Texas law. The purpose of this brief is not to rehash the substantive arguments raised in Albertsons' MSJ, but merely to identify issues which are not settled law, and for which an interlocutory appeal is appropriate.

## LEGAL ARGUMENT

I. **LEGAL STANDARD FOR CERTIFICATION FOR INTERLOCUTORY APPEAL.**

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if it is of the opinion that the following three conditions exist: "[1] the order involves a controlling question of law to which there is [2] substantial ground for difference of opinion and . . . [3] an immediate appeal may materially advance the termination of the litigation." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017). Once the question has been certified, the reviewing court "must decide whether to exercise [its] 'discretion,' as a *prudential* matter, to 'permit an appeal to be taken from such order.'" *Id.* (emphasis in original).

II. **THE ISSUES SOUGHT TO BE CERTIFIED FOR INTERLOCUTORY APPEAL ARE CONTROLLING QUESTIONS OF LAW.**

A legal issue is controlling if it could materially affect the case outcome. *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002). Resolution of the issue need not terminate the action for the issue to be considered controlling, but "generally does not include matters within the discretion of the trial court." *Id.* Whether a party has standing or is authorized to bring the lawsuit

3

is a controlling issue of law. *In re Auto. Parts Antitrust Litig.*, No. 19-0106, 2019 U.S. App. LEXIS 14014, at *2 (6th Cir. May 9, 2019) ("Whether the plaintiffs have properly alleged Article III standing is a controlling legal question."). Likewise, if a reviewing court agrees with Albertsons' position vis-a-vis Tarrant County's public nuisance claims, the case would be resolved in Albertsons' favor and the litigation would conclude.

**III.    THERE IS A SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION AS TO WHETHER ALBERTSONS IS ENTITLED TO SUMMARY JUDGMENT.**

Historically, district courts in the Sixth Circuit have interpreted "a substantial ground for difference of opinion . . . regarding the correctness of the decision" to exist when "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). Recently, the Sixth Circuit added further nuance to this understanding, explaining that, with respect to a novel question, a "substantial ground for difference of opinion," exists where "reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Trump*, 874 F.3d at 952. "Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.* (internal quotations omitted).[2]

---

[2] This Motion concerns a subset of arguments contained in the MSJ and does not address Albertsons' arguments that (1) Tarrant County lacks Article III standing and (2) that the Texas Regulatory Consistency Act bars or limits Tarrant County's claims. In conceding that these arguments may not reach the standard for interlocutory appeal in this case, particularly because the latter argument may not "materially advance the termination of the litigation," *Trump*, 874 F.3d at 951, Albertsons expressly reserves these arguments for all other purposes in the district court and on further appeal.

4

The Sixth Circuit has recognized that unsettled issues of state law not yet resolved by that state's courts present a substantial difference of opinion where reasonable jurists might disagree on the issue's resolution. *See In re State Farm Mut. Auto. Ins. Co.*, No. 20-0112/21-0101, 2021 U.S. App. LEXIS 13336, at *2–3 (6th Cir. May 4, 2021). Similarly, reasonable grounds for advancing a different resolution of an issue may exist where a controlling court has not ruled on an issue or has yet to examine an existing legal doctrine as applied to a specific, narrowed scenario. *See Meyers v. Cincinnati Bd. of Educ.*, No. 1:17-cv-521, 2019 U.S. Dist. LEXIS 17979, at *5–7 (S.D. Ohio Feb. 5, 2019). Different views on how to frame the breadth of a claim or doctrine can also satisfy the requisite difference of opinion under § 1292(b). *In re Rieves*, No. 22-0503, 2023 U.S. App. LEXIS 2980, at *3 (6th Cir. Feb. 7, 2023).

    **A.    WHETHER TARRANT COUNTY HAS STATE LAW STANDING TO BRING ITS CLAIMS UNDER TEXAS LAW IS A DIFFICULT, NOVEL QUESTION WITHOUT SUBSTANTIAL GUIDANCE UNDER EXISTING PRECEDENT, AND IS ONE OF FIRST IMPRESSION.**

Albertsons' MSJ asserted that "Texas has not delegated to counties generalized authority to bring suit to abate anything they might try to call a nuisance." (MSJ at 6 (citing Tex. Health and Safety Code § 343.011).) The Court disagreed, finding that "[c]onstitutional and statutory provisions conferring authority upon [counties] should be broadly and liberally construed to ascertain the scope of the authority granted either expressly or by necessary implication." (Order at 4 (citing *Cosby v. Cnty. Cmm'rs of Randall Cnty.*, 712 S.W.2d 246, 248 (Tex. App. 1986), writ refused NRE (October 1, 1986).) While Albertsons disagrees with the Court's conclusion for all the reasons stated in its moving papers, Albertsons recognizes there is a "substantial ground for difference of opinion" and that "reasonable jurists might disagree" on the resolution of the issue, for the following reasons. *Trump*, 874 F.3d at 952.

The Court's effective holding is that that Texas counties have broad police-like "general authority to sue and be sued[.]" (Order at 5.) First, the Court cites to *Tuma v. Kerr County*, 336 S.W.3d 277, 282 (Tex. App. 2010) (citation omitted) to conclude that a county has the "[g]eneral[] . . . power to sue and be sued as a political body." (Order at 3.) Second, the Court concludes that "several considerations" counsel for a broader reading of the Texas Code as to whether a county may sue to abate a public nuisance not enumerated in statute. (*Id.* at 3–4.) Finally, the Court cites two state court cases—*Grimes* and the order without opinion of the trial court in the Texas Opioid Litigation—which the Court uses to find further support for the idea that counties are empowered to bring such claims. (*Id.* at 4.)

But the Court's conclusion disregards or disagrees with several other sources of Texas authority which provide a basis for a difference of opinion among reasonable jurists. Recent Texas cases and the Office of the Texas Attorney General have opined that Texas law does not provide counties with broad police-like powers to act in accordance with generalized statutory grants of authority on matters like public health and safety, which calls into question the older cases relied upon by the Court. *See, e.g., City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) (rejecting a county's petition to annex a portion of a road from a municipality because it would be an unlawful "expansion" of general powers over roads); *State v. Hollins*, 620 S.W.3d 400, 409 (Tex. 2020) (concluding that implied powers are "not simply convenient" but must be "indispensable" in determining the Texas Election Code did not permit a county clerk to send applications to voters who did not affirmatively request one); Tex. Atty. Gen. Opinion No. AC-0003 (Aug. 16, 2023) (county actions which do not seek to enforce a "specific, preexisting public health law" would likely be found "invalid and unenforceable" by a court).

6

Furthermore, the Court's Order does not find that the authority to bring a lawsuit for public nuisance stemming from the distribution and dispensing of legal prescription opioid medications is somehow within the statutory grant of authority in Texas Health & Safety Code § 343.011. Albertsons argued that this code section gives counties authority to abate only enumerated nuisances and only those located in "the unincorporated area of a county." (MSJ at 6–7.) The Court found that the subsection relating to the "unincorporated area of a county" "in no way implies a county has authority to abate only those nuisances enumerated in that section." (Order at 3.) The Court does not discuss Albertsons' argument that the Texas Legislature's specific listing of limited conditions under which a county may sue to abate a public nuisance means that the Texas Legislature intended to exclude other such conditions which are not listed in the statute. In statutory interpretation, Texas courts apply the canon *expressio unius est exclusio alterius*: the expression of one thing is the exclusion of another. *See e.g., United Servs. Auto Ass'n v. Brite*, 215 S.W.3d 400, 403 (Tex. 2007). Because the Texas Legislature has expressly stated in the Texas Health and Safety Code that Texas counties have the authority to abate certain defined premises and property-related public nuisance scenarios—which do not include Tarrant County's opioid theory—it would be reasonable for a jurist to conclude that such authority does not exist in Texas law. *Id.*

That no reasoned opinions exist to answer the question of whether Texas counties have authority under Texas law to sue to abate a public nuisance caused by the dispensing and distribution of a legal prescription medication demonstrates that there is a "a substantial ground for difference of opinion . . . regarding the correctness of the [Court's] decision" exists because the question is—like much of the opioid litigation in this MDL—difficult, novel, and subject to little precedent. The Court should certify this issue for interlocutory appeal to the Sixth Circuit.

**B. WHETHER TARRANT COUNTY MAY BRING PUBLIC NUISANCE CLAIMS UNDER TEXAS LAW IS A DIFFICULT, NOVEL QUESTION WITHOUT SUBSTANTIAL GUIDANCE UNDER EXISTING PRECEDENT, AND IS ONE OF FIRST IMPRESSION.**

**1. Whether Tarrant County May Bring Public Nuisance Claims for Albertsons' Sale of Approved Pharmaceuticals is a Difficult, Novel Question Without Substantial Guidance Under Existing Precedent, and is One of First Impression.**

While Albertsons believes the authority cited in its MSJ is useful in determining that Texas state law does not recognize public nuisance claims for Albertsons' conduct (*see* MSJ at 10–16 (ECF No. 5587)), Albertsons acknowledges that none of the cases it cites arose specifically in the context of the sale of approved pharmaceutical drugs. Further, neither Plaintiff's Opposition to the Albertsons Defendants' Motion for Summary Judgment ("Opposition"), nor the Order denying Albertsons' MSJ cite guiding authority applied in that context. (Opposition at 24–35 (ECF No. 5726-1); Order at 6–11 (ECF No. 5921).)

For example, Albertsons relies on a number of cases which hold that common law public nuisance claims are limited to conduct which impacts a proprietary interest. (MSJ at 11 (ECF No. 5587)); *see e.g.*, *City of Beaumont v. Como*, 381 S.W.3d 538, 539 (Tex. 2012) (owner's refusal to remedy a "vacant, neglected, deteriorated, and dilapidated" property was deemed a public nuisance); *Riley v. Angelle*, 2022 WL 3092892, at *5 (Tex. App. 2022) (driveway interferes with plaintiff's access to public street); *Tex. Cent. Partners, LLC v. Grimes Cty.*, 580 S.W.3d 824, 825 (Tex. App. 2019) (asserting claim based on railroad company's survey of property which caused damage to public roadways); *1707 N.Y. Ave., LLC v. City of Arlington*, 2015 WL 6457569 (Tex. App. Oct. 22, 2015) ("dangerous, substandard structures"); *McQueen v. Burkhart*, 290 S.W.2d 577, 579 (Tex. App. 1956) (defendants' fence obstructed major portion of public street constituting a public nuisance) (citation omitted); *Quanah Acme & P. Ry. Co. v. Swearingen*, 4 S.W.2d 136,

8

139 (Tex. App. 1927) (railroad's construction of platform across alleyway previously dedicated for public access is a public nuisance); *Boyd v. Schreiner*, 116 S.W. 100, 103 (Tex. App. 1909) (dam causing water to give off offensive odors and cause sickness in neighborhood is a public nuisance). The reasoning in these cases—all of which addressed harms to real property—can be contrasted to the instant circumstances, which do not involve real property, and thereby it can be inferred that Texas common law public nuisance claims are narrowly limited to those involving property rights. However, that reasoning has not been applied by a Texas reviewing court to allow common law claims related to the sale of lawful products, including FDA-approved prescription medication.

In rejecting the reasoning in this line of cases, this Court relied on cases that upheld instances in which the Texas Legislature expressly enumerated conduct that it declared a public nuisance that relate to the sale of otherwise lawful products. (Order at 8 (ECF No. 5921) (*citing Spartan's*, 447 S.W.2d at 413; *Stoughton v. City of Fort Worth*, 277 S.W.2d 150, 154 (Tex. Civ. App. 1955)).) This Court, therefore, concluded that because the Texas Legislature could declare the sale of otherwise lawful products in those contexts as a nuisance, it must follow that Texas law would allow a court to declare the sale of otherwise lawful products beyond "conduct that offends a property interest" as a common law nuisance claim as well.

Yet the only case upon which this Court relies to demonstrate that Texas law allows for a common law nuisance claim to proceed based on the sale of otherwise lawful products is a Texas lower court's summary denial of a motion to dismiss in *County of Dallas v. Purdue Pharma, L.P., In re: Texas Opioid Litigation* No 2018-77098, 2019 WL 20508747[3] (Tex. Dist. Nov. 18, 2022)

---

[3] In the Order, the Court cites to 2019 WL 13405504, but this citation is to the motion to dismiss which was the subject of the order which Albertsons believes the Court was attempting to identify.

9

(denying motion to dismiss public nuisance claims relating to the distribution and sale of prescription opioids). Although that case involved the sale of prescription opioids, its ruling cannot be considered guiding authority or precedent. First, it is an order from a Texas state trial court, not a reviewing court, so is not binding or precedential for any other courts. Second, this order is merely a denial of a motion to dismiss and does not include any reasoned opinion which could offer meaningful guidance.

In contrast, as cited in Albertsons' Motion for Summary Judgment, numerous courts in other jurisdictions whose law on public nuisance is similar to the law in Texas have concluded that conduct pertaining to the sale or distribution of an otherwise lawful product cannot sustain a common law claim for public nuisance. (MSJ at 13–14); *see* Order Granting Motion to Dismiss, *State of Alaska v. Walgreen Co. et al.*, Case No. 3AN-22-06675 CI (Mar. 1, 2024)), at 12 ("no state statute defines any action similar to the distribution of a lawful substance as a nuisance"); *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 472 (S.D.W. Va. 2022) ("The extension of the law of nuisance to cover the marketing and sale of opioids is inconsistent with the history and traditional notions of nuisance. The original legal character of nuisance was a wrongful disturbance of the enjoyment of real property[.]"); *Johnson & Johnson*, 499 P.3d 719, 725 (Okla. 2021) (Oklahoma's statute—by contrast to Texas law—explicitly permits claims based on "endanger[ing] . . . health, or safety of others"); *State ex rel. Stenehjem v. Purdue Pharma L.P.*, 2019 WL 2245743, at *13 (N.D. Dist. May 10, 2019) (declining to "extend[] the public nuisance statutes to cases involving the sale of goods"); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 456 (R.I. 2008) ("The law of public nuisance never before has been applied to products, however harmful," because "allowing such a lawsuit would circumvent the basic requirements of products liability law."); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d

1099, 1118 (Ill. 2004) (rejecting "public nuisance claim, based on the alleged effects of defendants' lawful manufacture and sale of firearms outside the city and the county, [that] would extend public nuisance liability further than it has been applied in the past").

The lack of any precedential authority in Texas on the question of whether the sale of lawful products such as prescription medication can be construed as a common law public nuisance and the contrasting opinions of courts across the country interpreting similar laws as in Texas demonstrate that the question is difficult, novel and without substantial guiding authority, and is one of first impression.

> **2. Whether Tarrant County Can Bring a Public Nuisance Claim Premised on a Negligence Theory is a Difficult, Novel Question Without Substantial Guidance Under Existing Precedent, and is One of First Impression.**

It is Albertsons' understanding of Texas law that Texas does not extend the common-law duty a health-care provider may owe to a patient to third parties, including governmental entities. *See Martinez v. Walgreens*, 2018 WL 3241228 at *3 (S.D. Tex. July 3, 2018) (rejecting third-party liability and holding, "[u]nder these circumstances, in order to find a duty to Plaintiffs, the Court would have to find that a pharmacist has a general duty to the public for negligent provision of medication. The Texas Supreme Court has never held that such a duty exists, and thus, this Court, Erie-bound cannot so find now."). In *Martinez*, Walgreens dispensed the wrong medication to an individual, who, experiencing side effects of said medication, got into a car accident, killing the plaintiff whose estate brought the suit. *Id.* at *1. Admittedly, the *Martinez* holding, while it logically could be extended to encompass Tarrant County as "the public," did not expressly address whether a body politic could bring suit for a duty allegedly owed to its constituents.

This Court focused on the element of foreseeability, but also cited no binding authority recognizing a governmental entity's right to sue for common law negligence for duties a pharmacy

11

owed to citizen-patients. Indeed, the Court implicitly acknowledged the lack of guidance, by quoting language from Albertsons' own Reply brief, that "any liability imposed on pharmacies – which has state-wide and national implications like the distribution of prescription opiates – is something the Legislature should decide." (Order at 10 (ECF No. 5921).) Finally, this Court ruled that "***this Court*** recognizes the existence of a common law duty of care owed by pharmacies…," citing only the *County of Dallas* case as its "strong[] support[]." *Id.* As explained in Section III.B.1, *supra*, this case offers no guiding authority and is not binding precedent.

Therefore, the question of whether Albertsons owed Tarrant County a duty via the duty it owed to the citizens of Tarrant County for the sale of approved pharmaceuticals is difficult, novel, without guiding authority, and of first impression. Reasonable jurists could disagree as to the outcome of this question, and an interlocutory appeal is appropriate.

**IV.     AN INTERLOCUTORY APPEAL MAY MATERIALLY ADVANCE TERMINATION OF THE LITIGATION.**

Finally, an appeal materially advances the litigation when the court's decision affects how the litigation is conducted. *See City of Memphis*, 293 F.3d at 351 ("When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation.") "Appeals that materially advance the ultimate termination of a case typically are those where, absent review, potentially unnecessary protracted and expensive litigation will ensue." *In re Am. Reliable Ins. Co.*, Nos. 22-0507/0508, 2023 U.S. App. LEXIS 11691, at *9 (6th Cir. May 11, 2023) (internal quotations omitted). As the *Am. Reliable Ins.* court explained, "[i]f we agreed with the [Petitioner] United States that the district court lacks jurisdiction to hear both the failure-to-warn and fire-management claims, Subrogation Plaintiffs' suits would end on the spot." *Id.*

Similarly here, if a reviewing court determines that Tarrant County lacks state law authorization to bring its claims, Tarrant County's claims would be resolved in Albertsons' favor immediately. So too, a determination that Tarrant County cannot bring claims for public nuisance for Albertsons' conduct would be dispositive. If either of these issues—standing or the viability of public nuisance claims—are resolved in Albertsons' favor, the parties would avoid the extensive expense and time which was expended in cases such as Track 3.

V. **THE COURT SHOULD STAY FURTHER PROCEEDINGS PENDING RESOLUTION OF ALBERTSONS' INTERLOCUTORY APPEAL REQUEST AND ANY ENSUING INTERLOCUTORY APPELLATE PROCEEDINGS.**

Upon granting an order certifying the controlling questions of law in this case, the Court should stay this case pending a ruling on any resulting appeal. Staying the instant proceedings is within this Court's inherent power to "control its docket with economy of time and effort for itself, for counsel, and for the litigants." *Cybergenetics Corp. v. Inst. of Envtl. Sci. & Research*, No. 5:19-CV-1197, 2020 U.S. Dist. LEXIS 20305, at *5 (N.D. Ohio Jan. 27, 2020) (citations omitted). In deciding whether to grant a stay pending appeal, courts in the Sixth Circuit consider whether*:* (1) the movant is likely to succeed on the merits; (2) the movant will be irreparably harmed without the stay; (3) the issuance of a stay will cause substantial harm to other parties; (4) and the public interest would be served by the issuance of the stay. *Pickett v. City of Cleveland,* No. 1:19 CV 2911, 2024 U.S. Dist. LEXIS 217857, at *9 (N.D. Ohio June 5, 2024). Courts routinely grant stays upon a determination that certification is appropriate. *See Irth Sols., LLC v. Windstream Communs*., LLC, No. 2:16-cv-219, 2018 U.S. Dist. LEXIS 66093, at *6 (S.D. Ohio Apr. 19, 2018) (stay granted after defendant invoked cases evidencing district courts routinely grant stays after determining certification is appropriate); *In re Trump*, No. 19-0114, 2019 U.S. App. LEXIS 35521,

13

at *3–4 (6th Cir. Nov. 26, 2019) (staying district court proceedings pending appeal after district court denied movant's motion to stay).

Here, a stay of the trial court proceedings pending any ensuing appellate review is necessary to prevent the parties from proceeding to trial on issues that may sooner be resolved without added expense. *See e.g. In re Nat'l Prescription Opiate Litig.*, 2025 FED App. 58N (6th Cir. Jan. 31, 2025) (vacating CT3 final judgment on legal issue defendants repeatedly raised in pre- and post-trial motions); explained in more detail in footnote 1, *supra*. The Parties have completed discovery, and the case is moving toward trial preparation. As explained above, the issues in Albertsons' MSJ concern controlling legal questions, resolution of which could not only simplify the remaining issues, but potentially obviate the need for trial. *See id.* at *6 (staying proceedings pending resolution of motion on threshold issues with potential to dispose of litigation).

In considering whether a party has a likelihood of success on the merits in this context, it is not necessary that a party demonstrate it is more likely than not to prevail; the fact that there could be substantial grounds for a difference of opinion alone weighs in favor of granting a stay. *Meyers v. Cincinnati Bd. of Educ.*, No. 17-cv-521, 2019 U.S. Dist. LEXIS 17979, at *8 (N.D. Ohio Feb. 5, 2019) (granting a stay pending interlocutory appeal, reasoning, "while Defendants' likelihood of success on appeal is speculative, the Court realizes that there are substantial grounds for difference of opinions…"); *see Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991 ("these factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together . . . . To justify the granting of a stay, however, a movant need not always establish a high probability of success on the merits."); *see also Cooper-Std. Auto., Inc. v. SFC Sols. Czestochowa SP. Z.O.O.*, No. 22-12126,

14

2023 U.S. Dist. LEXIS 186391, *11–12 (E.D. Mich. Oct. 16, 2023) ("Because it may be more difficult to prove a high likelihood of success on the merits at this stage of the proceedings, 'the test contemplates that a movant may be granted relief even if it demonstrates something less than a likelihood of success on the merits of its appeal.'" (citation omitted). The case law cited herein demonstrates the unsettled nature of the questions Albertsons seeks to have certified and shows that Albertsons may ultimately succeed on the merits of the case, pending appellate resolution of those questions of law.

That the parties will have to incur the substantial expenses of continuing to litigate demonstrates the irreparable harm that both parties would experience if the questions for appeal are certified but the proceedings are not stayed. *See Meyers*, 2019 U.S. Dist. LEXIS 17979, at *8 (defendants "would be irreparably harmed by being forced to litigate and conduct discovery while [the issues are] on appeal…"). Lastly, issuing the stay will not substantially harm other parties, but rather serve public interest by potentially preventing waste of public resources and taxpayer funds "by preparing for a trial that could be substantially reduced in scope by a reversal from the Sixth Circuit." *Pickett*, 2024 U.S. Dist. LEXIS, at *10–11.

Accordingly, for the foregoing reasons, if this Court grants Albertsons' certification request, it should also stay the proceedings pending appeal.

## **CONCLUSION**

For the foregoing reasons, certification of whether Tarrant County has standing under Texas law to sue for Albertsons' sale of an approved pharmaceutical where Tarrant County has not alleged a proprietary interest is appropriate. These issues are controlling, there are substantial grounds for disagreement among reasonable jurists, and a determination of these issues now would terminate the case.

Dated:   February 18, 2025                           Respectfully submitted,
                                                     By: */s/ Francis A. Citera*
                                                     One of Defendants' Attorneys

                                                     Francis A. Citera, citeraf@gtlaw.com
                                                     Gretchen N. Miller, millerg@gtlaw.com
                                                     Greenberg Traurig, LLP
                                                     77 W. Wacker Drive, Suite 3100
                                                     Chicago, IL  60601
                                                     Tel: (312) 456-8400
                                                     Fax: (312) 456-8435

                                                     *Counsel for Defendants Albertsons, Inc., Albertsons, LLC, Safeway, Inc., Randall's Food & Drug, LP, and United Supermarkets, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 18, 2025, a true and correct copy of the Albertsons Defendants' Motion for Certification of Order Denying Albertsons' Motion for Summary Judgment for Interlocutory Appeal was served upon the parties of record using the CM/ECF system.

                                                                       */s/ Francis A. Citera*
                                                                          Francis A. Citera