UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION** *This document relates to:* **All Actions** | **MDL 2804** **Case No. 17-md-2804** **Hon. Dan Aaron Polster** |

# EMERGENCY MOTION FOR RELIEF REGARDING PBM COUNSEL'S PUBLIC RECORDS REQUESTS TO PLAINTIFFS AND OTHER DIRECT COMMUNICATIONS WITH PLAINTIFFS

## TABLE OF CONTENTS

                                                                                                                                   Page

PRELIMINARY STATEMENT AND RELEVANT BACKGROUND ...................................... 1

ADDITIONAL FACTS SUPPORTING THE REQUESTED RELIEF ....................................... 4

      A.      PBM Counsel's "Public Records Requests" ............................................................ 4

      B.      PBM Counsel's Requests for Additional Information from Plaintiffs .................. 6

ARGUMENT ..................................................................................................................................... 8

I.      The Court Should Temporarily Preclude The PBMs And PBM Counsel From Enforcing Compliance With The Records Requests And Direct The Parties To Confer About Providing Responsive Information. ............................................................ 8

      A.      The Court Has the Inherent Authority to Grant the Requested Relief................... 8

      B.      PBM Counsel's Violations of Ethical Rules and the Public Records Laws Themselves Warrant the Requested Relief. .......................................................... 10

      C.      In Issuing the Requests, PBM Counsel Undermined the Court's Stay of the Non-Bellwether Cases and Circumvented the Federal Rules. ............................. 12

      D.      The Requested Relief is Narrowly Tailored and of Limited Duration. ............... 13

II.     PBM Counsel Must Immediately Cease All Direct Communications With Plaintiffs. ............................................................................................................................ 14

CONCLUSION ................................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Cabotage v. Ohio Hosp. for Psychiatry, LLC*,
  2012 WL 3064116 (S.D. Ohio July 27, 2012) ............................................................... 9

*Hartman v. City of Sherwood, Ark.*,
  2022 WL 4126338 (E.D. Ark. Sept. 9, 2022) ............................................................... 9

*In re Korean Air Lines Co.*,
  642 F.3d 685 (9th Cir. 2011) ..................................................................................... 12

*In re Shell Oil Refinery*,
  143 F.R.D. 105 (E.D. La. 1992) ................................................................................... 9

*Mata Chorwadi, Inc. v. City of Boynton Beach*,
  2020 WL 2516979 (S.D. Fla. May 18, 2020) ............................................................... 9

*Memorial Hosp. for McHenry Cnty. v. Shadur*,
  664 F.2d 1058 (7th Cir. 1981) ................................................................................... 10

*U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*,
  2014 WL 66714 (E.D. Va. Jan. 6, 2014) ...................................................................... 9

*United States v. Comco Mgmt. Corp.*,
  2009 WL 4609595 (C.D. Cal. Dec. 1, 2009) ............................................................. 15

*Walker v. Crawford*,
  1999 WL 33917846 (N.D. Ohio Sept. 16, 1999) ........................................................ 8

**Statutes**

Fla. Stat. §§ 119.01 *et seq.* ............................................................................................ 5, 14

O.G.C.A. § 50-18-71(b)(1)(A) ........................................................................................ 12

O.C.G.A. § 50-18-71(e) ............................................................................................. 7, 12

**Court Rules**

Fed. R. Civ. P. 1 ................................................................................................................ 1

Fed. R. Civ. P. 26 ....................................................................................................... 9, 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

Fed. R. Civ. P. 26(c) ..................................................................................................4, 9, 10

Florida Rule of Professional Conduct 4-4.2 ................................................................................10

## PRELIMINARY STATEMENT AND RELEVANT BACKGROUND[1]

Purporting to "investigate" whether plaintiffs who have moved for leave to amend their complaints to add the PBMs authorized counsel to do so, counsel for the PBMs ("PBM Counsel") have "sent public-records requests to many municipal plaintiffs" and plan to send hundreds more. Doc. #5941, at 3; Ex. 1 (Tr. of Feb. 11, 2025 Special Master Hr'g), at 65. Despite knowing these plaintiffs are "represented by . . . attorneys" in this litigation (Doc. #5941, at 3), PBM Counsel have contacted the plaintiffs directly, without including their litigation counsel on the communications or even notifying litigation counsel of the requests. Those communications in at least some—and perhaps many—instances violate state rules of professional conduct for attorneys and the very statutes under which PBM Counsel issued their "records requests."

Even if the relevant statutes technically permit the PBMs to seek this information, PBM Counsel's tactic to obtain what is plainly discovery through extrajudicial means undermines the Court's authority to ensure the fair and efficient management of this MDL. Those efforts represent an end-run around the stay imposed in all non-bellwether cases by Case Management Order One ("CMO 1"), which the Court imposed to "conserve judicial resources, reduce duplicative service, avoid duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation." Doc. #232, at 1 (citing Fed. R. Civ. P. 1). To realize those objectives, the Court directed that "[n]o party may conduct any discovery of another party in this MDL proceeding not expressly authorized by this Order absent further Order of this Court or express agreement of the parties." *Id.* ¶ 9(a). CMO 1 permits discovery only in expressly identified cases not relevant here. The Order further provides that "[u]nless otherwise directed by this Court, the parties shall serve all *papers* that are not to be filed with the Court, including, *but*

---

[1] Unless otherwise indicated, emphasis in this brief is added and internal citations and quotation marks have been omitted.

*not limited to*, discovery requests or responses . . ., by electronic mail on Plaintiffs' Liaison Counsel and Defendant's Liaison Counsel." *Id.* ¶ 9(c). In bypassing plaintiffs' litigation counsel and seeking information at issue in these proceedings directly from plaintiffs, PBM Counsel's records requests defy at least the spirit, and arguably the letter, of the Order.

The proper course, as contemplated by CMO 1, would have been for the PBMs to move for discovery of plaintiffs regarding their authorization to sue the PBMs.[2] The parties could then have debated these issues or even agreed on parameters for such discovery, and the Court could have weighed in. The PBMs and PBM Counsel chose instead to blindside plaintiffs and their litigation counsel and upend the orderly administration of these proceedings. But perhaps that was the point.

If there were any question about PBM Counsel's intent in issuing the requests, their breadth provides the answer. Rather than focusing on documents sufficient to establish "plaintiff's authorization to seek leave to add claims against the PBMs" (Doc. #5941, at 3), the requests seek, among other things, "*[a]ll documents and other records relating to* [plaintiff]'s approval to bring claims against" the PBMs "in the national opioid litigation" and "*[a]ll documents and communications relating to any request by any law firm . . . or by any attorney . . .* for approval from [plaintiff] to sue" the PBMs in these proceedings. Ex. 2 (Jan. 28, 2025 letter from M. Hooker re "Public Records Request to City of Oviedo, FL"). The threat these blunderbuss requests pose

---

[2] This is not to say that such discovery would be proper. Among other issues, the PBMs' records requests appear to be based on the fundamental misconception that each plaintiff, regardless of the state or jurisdiction where it is located, was required by law to adopt a specific resolution or enter into a new retainer agreement with existing counsel of record in order to add additional defendants to an ongoing previously filed action. There is simply no support for this proposition as a blanket rule. And of course, less formal discussions between a plaintiff and its counsel of record concerning whether or not to add particular defendants (or to take any other action in a pending litigation) are by definition privileged.

to the attorney-client privilege and work product protection is obvious. Indeed, that risk has materialized, as at least one plaintiff representative has already disclosed privileged information to PBM Counsel. *See* Ex. 1, at 74 ("We did receive privileged content from one of Eric Romanos' [sic] clients, a city in Florida"). That PBM counsel contacted plaintiffs' litigation counsel *after the fact* and returned the information (*see id.*) is beside the point: the Court's MDL oversight and the Federal Rules' safeguards aim to prevent precisely this type of undisciplined and unregulated effort to obtain information from litigation adversaries. PBM Counsel evaded those guardrails, which has harmed plaintiffs and promises to wreak further mischief as unsuspecting plaintiff representatives provide information without appreciating its relevance (or not) to these cases or focusing on litigation counsel's privilege concerns.

Even more egregious, PBM Counsel have communicated directly with plaintiffs, again without including or notifying their litigation counsel, *to request information beyond the records requests*. One such recent e-mail asked Plaintiff Lee County (Georgia)'s representative whether "the County ha[s] documents memorializing [it]s consent [to amending its complaint to assert claims against the PBMs]," "[w]ho consented to amending the complaint," and whether "the County [is] drawing a distinction between 'consent' and 'approval.'" Ex. 3 (Feb. 19, 2025 e-mail from B. Mancil to J. Skipper). These interrogatory-style inquiries contravene CMO 1 and circumvent the Federal Rules of Civil Procedure, which govern discovery. The PBMs must cease such communications immediately.

In light of these serious concerns, the Plaintiffs' Executive Committee respectfully requests that the Court address this matter on an expedited basis. The PEC further requests that the Court, whether through its inherent authority or under Rule 26(c), issue an order:

1) temporarily precluding the PBMs and PBM Counsel from enforcing compliance with PBM Counsel's existing requests to plaintiffs under state public records laws;

2) temporarily precluding the PBMs and PBM Counsel from issuing any additional public records requests to plaintiffs, including any "follow-up" in connection with existing requests;

3) directing that the parties—with Special Master Cohen's involvement, if necessary—attempt to agree on a stipulation that will address the information PBM Counsel seek and provide for PBM Counsel to withdraw the records requests and forgo any further requests;

4) directing the parties to jointly inform the Court within 30 days whether they have reached an agreement, and if not, propose a schedule for further motion practice; and

5) prohibiting the PBMs and PBM Counsel, as well as any other defendant in the MDL, from communicating directly with plaintiffs (including any legal representative of plaintiffs other than litigation counsel in these proceedings) without the involvement or prior consent of plaintiffs' litigation counsel.

## ADDITIONAL FACTS SUPPORTING THE REQUESTED RELIEF

### A.     PBM Counsel's "Public Records Requests"

Because PBM Counsel did not notify plaintiffs' litigation counsel before issuing the records requests, the PEC does not presently know how many requests have been issued. But based on PBM Counsel's statements during the parties' recent hearing before the Special Master, the PEC believes there are likely hundreds, with "700 more" to come. Ex. 1, at 65. The limited information the PEC has thus far indicates the requests are expansive.

A January 28, 2015 request from Matthew Hooker of Alston & Bird LLP to plaintiff City of Oviedo, Florida ("Oviedo") illustrates the PEC's concerns. The request, addressed to Oviedo's City Clerk (who is not an attorney), does not disclose that Mr. Hooker and others at his firm

-4-

represent the Optum entities in these proceedings. Ex. 2, at 1. Nor does the request refer to Oviedo's litigation counsel in these proceedings or copy him. *Id.*

The request refers to the Florida Public Records Act, Fla. Stat. §§ 119.01 *et seq.*, and seeks the following categories of documents within Oviedo's "possession, custody, or control":

- "All documents and other records relating to the City of Oviedo's approval to bring claims against" numerous Optum, UnitedHealth, Express Scripts, and Medco Health entities "in the national opioid litigation, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-2804 (N.D. Ohio) and its member cases (the 'Opioid Litigation')";

- "All documents and other records relating to the City of Oviedo's approval to file any complaint in the Opioid Litigation";

- "All documents and other records relating to the City of Oviedo's approval to amend or supplement its complaint in the Opioid Litigation";

- "All documents and communications relating to any request by any law firm (including, but not limited to [City of Oviedo's litigation counsel in these proceedings]) or by any attorney . . . for approval from the City of Oviedo to sue" the identified entities "in the Opioid Litigation"; and

- "All engagement agreements, engagement letters, memoranda of understanding, memoranda of agreement, letters of intent, contracts, or other agreements . . . that the City of Oviedo entered into with any law firms, attorneys, or other professionals (including, but not limited to [City of Oviedo's litigation counsel in these proceedings]) to prosecute or assist with the prosecution of the Opioid Litigation or claims against any party or entity."

Alarmed by the scope of the requests and PBM Counsel's deliberate efforts to exclude plaintiffs' litigation counsel from the process, certain plaintiffs' litigation counsel raised these issues with the Special Master during a February 11, 2025 hearing. Counsel emphasized the potential inadvertent disclosure of privileged information, and Optum's counsel admitted they "did receive privileged content from one of Eric Romanos' [sic] clients, a city in Florida" (i.e., Oviedo) and only then did they contact Oviedo's litigation counsel. Ex. 1, at 74. As another of our colleagues noted during the hearing, "we've got a mess because we have clients responding to a

request from defense counsel that are producing attorney-client information and we don't even know about it until after it happens." *Id*. at 68.

On the limited record before him, the Special Master did not direct PBM Counsel to refrain from issuing records requests but admonished them to protect against the disclosure of privileged information, of which they are "now on notice that that's happening." *Id*. at 71. The Special Master explained:

> And what I'm going to try to ask you to do is to try and work out a way to ensure that that happens as little as possible. I don't know what else that would require. Maybe it's notice to the PEC or the attorneys who are representing that are not the PEC, but because we already see what's happening is production of attorney-client privilege by mistake, then I think that you need to talk about a way to prevent that from occurring going forward prophylactically.

*Id*. at 72.

Tellingly, while Optum's counsel stated "we'll try to address that" issue, he acknowledged: "I mean, I don't know what we can do. We make the request and we get back what we get back sometimes, but—as much as we can." *Id*. at 73. That is precisely our point: without Court-imposed safeguards in place, even PBM Counsel admittedly "don't know what [they] can do" to minimize the risk of obtaining non-discoverable information. Nor have they attempted to coordinate with the PEC to prevent this from occurring again.

The PEC believes PBM Counsel have issued hundreds of similar requests to other plaintiffs. We are coordinating with other plaintiffs' counsel to assess the scope of the requests and identify concerns regarding the disclosure of privileged information or other issues.

B.     **PBM Counsel's Requests for Additional Information from Plaintiffs**

In addition to submitting broad requests under public records statutes of the plaintiffs' respective states of residence, PBM Counsel have communicated directly with plaintiffs to request additional information beyond the records requests. For example, after plaintiff Lee County's

representative provided the County's response to PBM Counsel's request under Georgia's Open Records Act, Optum's counsel at Alston & Bird made several additional inquiries and requests for information.

In response to Lee County's statement that it identified other potentially responsive documents but they were subject to attorney-client privilege, Optum's counsel pressed the County's representative about those documents. Ex. 3, at 1. Additionally, in response to Lee County's representation that it "consented to amending [its] complaint to assert claims against the Pharmacy Benefit Managers"—the information the PBMs' "investigation" supposedly aims to obtain—Optum's counsel probed further:

> Does the County have documents memorializing that consent? Who consented to amending the complaint? And my request (reattached here) asked for records showing that the County approved amending or supplementing its complaint in the Opioid Litigation: is the County drawing a distinction between 'consent' and 'approval'?

*Id*.

The Georgia Open Records Act provides that "[r]equests by civil litigants for records that are sought as part of or for use in any ongoing civil or administrative litigation against an agency shall be made in writing and copied to counsel of record for that agency contemporaneously with their submission to that agency." O.C.G.A. § 50-18-71(e). Optum's counsel violated this rule twice—first in sending the records request to Lee County and again in requesting additional information from them, both times failing to include Lee County's litigation counsel on the communications.

Even where plaintiffs' litigation counsel was ultimately apprised of the initial public records requests and responded with information the PBMs purport to need, PBM Counsel have improperly requested discovery-style information from plaintiffs. Specifically, on February 18, 2025, litigation counsel for plaintiff St. Lucie County (Florida) represented to Optum's counsel

-7-

that "St. Lucie County, FL authorized us to add additional defendants, including Optum, on June 28, 2024." Ex. 4 (Feb. 18, 2025 e-mail from E. Romano to M. Hooker). Plaintiff's counsel further explained "[t]he records documenting this authorization constitute attorney-client privileged communications and are exempt from disclosure." *Id.* This should have ended the exchange.

Optum's counsel, however, responded with a further request for information beyond its records request. Noting "St. Lucie County held a formal council meeting in November 2024 to vote on the decision to join the omnibus motion for leave to add Publix," he inquired:

> Did it hold a similar meeting for OptumRx and Express Scripts? If not, can you please identify who from the County approved the formal decision to join the omnibus motions for leave to add OptumRx and Express Scripts?

In other words, faced with the inconvenient fact that St. Lucie authorized adding the PBMs as defendants, Optum's counsel raised additional challenges. That is the province of discovery.

## ARGUMENT

**I.  The Court Should Temporarily Preclude The PBMs And PBM Counsel From Enforcing Compliance With The Records Requests And Direct The Parties To Confer About Providing Responsive Information.**

### A.  The Court Has the Inherent Authority to Grant the Requested Relief.

This Court has "authority and discretion to protect the integrity of the proceedings before it." *Walker v. Crawford*, 1999 WL 33917846, at *12 (N.D. Ohio Sept. 16, 1999) (O'Malley, J.). Among other things, the Court "possess[es] the inherent authority to issue an order addressing [the PBMs'] expressed intention to utilize the documents at issue in this case, especially in light of the fact that [they] obtained these documents outside of this Court's discovery process." *Cabotage v. Ohio Hosp. for Psychiatry, LLC*, 2012 WL 3064116, at *3 (S.D. Ohio July 27, 2012). Further, courts "have issued protective orders with respect to documents obtained outside the normal

-8-

discovery process pursuant to their inherent authority." *U.S. ex rel. Rector v. Bon Secours Richmond Health Corp.*, 2014 WL 66714, at *4 (E.D. Va. Jan. 6, 2014).[3]

To the extent (if at all) tension exists between an order by this Court precluding the PBMs or PBM Counsel from enforcing plaintiffs' compliance with the records requests and the state public records statutes' authorization to request such information, the Court's order prevails. As the court explained in *Mata Chorwadi, Inc. v. City of Boynton Beach*, "review of the narrow body of caselaw that addresses the intersection of the Supremacy Clause [of the U.S. Constitution], State public records laws, and federal court discovery orders reveals that a federal court order issued pursuant to Rule 26 to prevent the disclosure of documents renders any state statute or regulation to the contrary void pursuant to the Supremacy Clause." 2020 WL 2516979, at *3 (S.D. Fla. May 18, 2020). That the Court's order here may flow from its inherent authority and not Rule 26(c) does not alter the conclusion. There is thus no concern that issuing an order excusing plaintiffs' compliance with the records requests will subject them to liability under those state laws. *See Memorial Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981) (per curiam) ("As to the Hospital's claim that th[e] conflict between state and federal law places him 'on the

---

[3] The Court arguably also possesses authority to grant the requested relief through a protective order issued under Rule 26(c). "[C]ourts have held in some instances that FOIA responses may constitute discovery subject to the Court's authority." *Hartman v. City of Sherwood, Ark.*, 2022 WL 4126338, at *2 (E.D. Ark. Sept. 9, 2022) (granting motion for protective order under Rule 26(c) to preclude plaintiff from obtaining information through Arkansas public records request). Other courts, however, have held they "lack authority under Rule 26(c) to issue protective orders regarding documents obtained wholly outside of the discovery process." *Rector*, 2014 WL 66714, at *3. This debate is academic here, as the requested relief falls within the Court's inherent authority. *See, e.g.*, *In re Shell Oil Refinery*, 143 F.R.D. 105, 109 (E.D. La. 1992) ("Because Rule 26 does not authorize a district court to issue protective orders with respect to documents obtained through means other than the court's discovery processes, the Court's . . . Order for production should reflect that it was entered pursuant to the Court's inherent authority to control and preserve the integrity of its judicial proceedings.").

horns of an insoluble dilemma,' we view this dilemma as wholly illusory when considered in light of the Supremacy Clause of the United States Constitution.").

The Court therefore has the authority to entertain this request and direct the parties to attempt to agree on a process for providing information regarding plaintiffs' authorization to assert claims against the PBMs, to the extent that such disclosure is appropriate. The present circumstances strongly support granting this relief.

> **B.      PBM Counsel's Violations of Ethical Rules and the Public Records Laws Themselves Warrant the Requested Relief.**

In addressing this motion, the Court need not determine whether PBM Counsel violated rules governing attorneys' conduct or state public records laws. But their conduct raises at least a substantial concern, which supports the requested relief.

Florida Rule of Professional Conduct 4-4.2, for example, provides that "[i]n representing a client, a lawyer must not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer." The Rule includes an exception where the lawyer makes the communication "to meet the requirements of any court rule, statute or contract," but even then "a copy must be provided to the person's lawyer." In the above instances regarding Oviedo and St. Lucie County, PBM Counsel unquestionably knew those plaintiffs are represented by litigation counsel in these proceedings, yet they failed to obtain litigation counsel's consent or even notify them before communicating with those plaintiffs. Nor did PBM counsel initiate those communications to meet any legal or contractual requirement. They were not *required* to make public records requests; they *elected* to do so. And even if this exception applied, PBM Counsel violated the Rule by failing to copy litigation counsel on its request.

-10-

During the February 11 hearing before the Special Master, PBM Counsel suggested they need not include litigation counsel unless those attorneys "[a]re . . . representing those cities and counties in responding to FOIA requests." Ex. 1, at 65. But given the express references to this litigation in the requests, PBM Counsel's argument at best elevates form over substance. In any event, PBM Counsel's conduct at least raises a substantial concern regarding their ethical obligations, which supports the relief requested here.

Further, Florida's public records law appears to preclude much or all of PBM Counsel's requests. The statute exempts from disclosure:

> [a] public record that was prepared by an agency attorney (including an attorney employed or retained by the agency or employed or retained by another public officer or agency to protect or represent the interests of the agency having custody of the record) or prepared at the attorney's express direction, that reflects a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency, and that was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or that was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings . . . until the conclusion of the litigation or adversarial administrative proceedings.

Accordingly, to the extent legal representatives of Oviedo or St. Lucie County (or other plaintiffs subject to Florida's public records law) conveyed those plaintiffs' authorization to sue the PBMs in these proceedings, the statute prohibits disclosure of documents memorializing that authorization.

PBM Counsel likewise violated Georgia law in issuing their "records request" to Lee County. Georgia's open records law directs that "[r]equests by civil litigants for records that are sought as part of or for use in any ongoing civil or administrative litigation against an agency shall be made in writing and copied to counsel of record for that agency contemporaneously with their submission to that agency." O.G.C.A. § 50-18-71(e). PBM Counsel's failure to include plaintiffs' litigation counsel on their request plainly contravened the statute.

These examples are not exhaustive, and the PEC is still assessing the extent of PBM Counsel's potential misconduct with respect to the many other plaintiffs to whom they issued requests. But even this limited record demonstrates a compelling need for the Court to act, and quickly, especially given the short production deadlines imposed by some of the statutes. *E.g.*, O.G.C.A. § 50-18-71(b)(1)(A) ("Agencies shall produce for inspection all records responsive to a request within a reasonable amount of time not to exceed *three business days of receipt of a request* . . . .").

> C. **In Issuing the Requests, PBM Counsel Undermined the Court's Stay of the Non-Bellwether Cases and Circumvented the Federal Rules.**

PBM Counsel's public-records gambit also represents an affront to this Court's orders, which are meant to ensure the just and orderly administration of these proceedings. "In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak." *In re Korean Air Lines Co.*, 642 F.3d 685, 700 (9th Cir. 2011). Exercising its expansive authority, the Court determined only bellwether cases would proceed to discovery. *See* Doc. #232. PBM Counsel's "records requests" are in direct tension with CMO 1 and the Court's overall management of these proceedings.

While they may not technically constitute "discovery" as contemplated by Rule 26, the requests clearly seek information that is typically available only through discovery. Indeed, the requests read right out of the discovery playbook, calling for "[a]ll documents and other records" that relate to issues solely in this litigation. In the ordinary course, plaintiffs' litigation counsel— who are, unlike the plaintiff representatives who received the requests, intimately familiar with these proceedings and the governing discovery standards—would be able to advise plaintiffs in responding to such discovery requests. This would include evaluating whether particular documents are protected from disclosure as attorney-client communications or attorney work

-12-

product. But because PBM Counsel purposefully excluded plaintiffs' litigation counsel from the requests, those safeguards were unavailable here. That is especially problematic because these requests seek information bearing directly on plaintiffs' rights in this litigation.

PBM Counsel's actions have, perhaps predictably, injected disorder and confusion into these proceedings—the exact *opposite* of what CMO 1 and the Court's other administrative measures aim to achieve. The Court is thus well within its authority to at least temporarily suspend plaintiffs' obligations to comply with the records requests. Doing so will preserve the Court's sound management of these proceedings and help alleviate the unfairness to plaintiffs that PBM Counsel's tactics have caused.

### D. The Requested Relief is Narrowly Tailored and of Limited Duration.

The PEC appreciates the sensitivities involved in issuing protective orders or similar measures that inhibit parties from communicating freely with public entities. The narrow and time-limited relief the PEC seeks duly accounts for those considerations.

*First*, this motion requests only a temporary pause on PBM Counsel's ability to enforce plaintiffs' compliance with existing records requests. This will allow plaintiffs' litigation counsel and the PEC to coordinate and assess the scope of questions or problems that have arisen due to the requests, including whether plaintiff representatives have inadvertently disclosed any additional privileged material to PBM Counsel.

*Second*, the PEC likewise requests that the Court only temporarily preclude the PBMs or their counsel from issuing additional records requests, including any "follow-up" to existing requests, while the parties attempt to reach a resolution or engage in further motion practice. Any prejudice such a measure would impose on the PBMs or PBM Counsel pales in comparison to the prejudice plaintiffs are already experiencing and will continue to suffer should PBM Counsel persist in their improper public records campaign.

*Third*, the PEC asks that the Court direct the parties to confer—with the Special Master's assistance, if necessary—on a potential stipulation that will address the information PBM Counsel seek and provide for PBM Counsel to withdraw the records requests and forgo any further requests. Indeed, PBM Counsel represented during the February 11 hearing that "if we can work something out where [plaintiffs' litigation counsel] can respond or your clients can respond in some sworn way, evidentiary way, then maybe we can dispense with those requests." Ex. 1, at 65. This aspect of the PEC's motion should thus be uncontroversial.

*Fourth*, the Court should order the parties to report within 30 days whether they have reached an agreement, and if not, propose a schedule for further motion practice. This again reflects the PEC's efforts to minimize the burden on the Court and, if possible, reach a resolution with the PBMs that would alleviate additional burdens on all parties.

These discrete requests are fair and reasonable and strike an appropriate balance of the parties' respective interests.

## II. PBM Counsel Must Immediately Cease All Direct Communications With Plaintiffs.

Beyond their "records requests," PBM Counsel have communicated directly with plaintiffs—once again excluding their litigation counsel—to request further information in the nature of interrogatories. This constitutes a blatant violation of ethics rules and undermines plaintiffs' rights under the Federal Rules with respect to discovery. Full stop.

Even assuming the state public records laws authorize PBM Counsel's requests, those statutes do *not* contemplate freewheeling and unregulated communications to obtain information for use in pending civil litigation against the responding entities. Public entities have a duty to "[p]rovid[e] access to public records," Fla. Stat. § 119.01—nothing more.

PBM Counsel's actions go way over the line. As detailed above, their inquiries include questioning or challenging plaintiffs' responses to the records requests. No credible interpretation

of the public records statutes contemplates a running dialogue between the requester and the recipient regarding its response to a records request.

Further, parties must pursue such inquiries through interrogatories or other means of discovery, not direct communications with plaintiffs that exclude their litigation counsel. Among other concerns, the potential for plaintiffs to disclose information to which the PBMs are not entitled, including information subject to privilege or work product protection, is especially acute in the context of informal direct communications between PBM Counsel and plaintiffs.

The Court "ha[s] inherent authority to grant [plaintiffs] appropriate relief to remedy the [PMBs'] circumvention of the normal discovery process." *United States v. Comco Mgmt. Corp.*, 2009 WL 4609595, at *4 (C.D. Cal. Dec. 1, 2009). It should exercise that authority and preclude the PBMs and PBM Counsel, as well as any other defendant in these proceedings, from communicating directly with plaintiffs without the involvement or prior consent of their litigation counsel.

## CONCLUSION

PBM Counsel's improper conduct warrants immediate relief. Based on the foregoing considerations, the Court should entertain this motion on an expedited basis and order the relief requested above.

Dated: February 21, 2025                    Respectfully submitted,

                                            *Plaintiffs' Co-Lead Counsel*

                                            Jayne Conroy
                                            SIMMONS HANLY CONROY
                                            112 Madison Avenue, 7th Floor
                                            New York, NY 10016
                                            (212) 784-6400
                                            jconroy@simmonsfirm.com

    Joseph F. Rice
    MOTLEY RICE LLC
    28 Bridgeside Blvd.
    Mt. Pleasant, SC 29464
    (843) 216-9000
    jrice@motleyrice.com

    Paul T. Farrell, Jr., Esq.
    FARRELL & FULLER LLC
    270 Munoz Rivera Ave., Suite 201
    San Juan, PR 00918
    (304) 654-8281

    *Plaintiffs' Liaison Counsel*

    */s/ Peter H. Weinberger*
    Peter H. Weinberger
    SPANGENBERG SHIBLEY & LIBER, LLP
    1001 Lakeside Avenue, E, Suite 1700
    Cleveland, OH 44114
    (216) 696-3232
    pweinberger@spanglaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  Copies will be served upon counsel of record by, and may be obtained through, the Court's CM/ECF system.

    */s/ Peter H. Weinberger*
    Peter H. Weinberger