**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*All Cases* | MDL No. 2804<br><br>Case No. 1:17-md-02804-DAP<br><br>Judge Dan Aaron Polster |

**PBMS' MOTION FOR RECONSIDERATION OF**
**ORDER DENYING DISCLOSURE OF *EX PARTE* COMMUNICATIONS**
**AND FOR RELATED RELIEF REGARDING EVIDENTIARY HEARING**

On February 24, 2025, the PBMs moved this Court to order the disclosure of all *ex parte* communications between plaintiffs' counsel and the Court, the Special Masters, and their staff. ECF No. 5968. The PBMs' request followed their discovery that Michael Kahn, a lawyer working with co-liaison counsel Peter Weinberger, made repeated public statements to prospective and existing clients about Mr. Weinberger's "total access to" Judge Dan Polster and participation in consistent *ex parte* communications with this Court—communications that Mr. Kahn even called "*ex parte*" and acknowledged are "generally disallowed in any litigation." *See id.*; *see also* City of Deltona, *City Commission on 2019-06-03 6:30 PM* at 2:21:50, 2:27:27 (June 3, 2019) (**June 3, 2019 Deltona Meeting**), https://tinyurl.com/Deltona-6-3-19 (telling the City of Deltona that "Peter Weinberger . . . is able to pick up the phone, literally, and does every day to talk with the judge about pushing this litigation along" and noting that those are "called *ex parte* communications" that are "generally disallowed in any litigation"); City of Palm Bay, *Jan 03, 2019 Council Meetings – Regular* at 35:00 (**January 3, 2019 Palm Bay Meeting**), https://tinyurl.com/PalmBay-1-3-19 ("[Mr. Weinberger has] total access to the judge. It's unlike any other litigation where you can't communicate with the judge singly. Mr. Weinberger can on behalf of his clients, one of whom is us."); Oviedo City Gov't, *City Council Regular Meeting – 02/04/2019* at 1:12:45 (**February 4,**

**2019 Oviedo Meeting**), https://tinyurl.com/Oviedo-2-4-19 ("[Mr. Weinberger] talks to the judge every day. It's an unusual circumstance. There's no attorney-client privilege in multidistrict litigation. So, every day, Peter is on the phone with the judge or his assistant."); Clay County, *Board of County Commissioners Meeting* at 2:40 (June 11, 2019), https://tinyurl.com/Clay-6-11-19 ("[Mr. Weinberger] is one of three lawyers nationwide who is able to talk to the judge on a daily basis, unlike every case usually. . . . We are very privileged to have him as a member of our group. And as Jim said, that means we get inside information, as much as Mr. Weinberger can give us.").

Mr. Kahn, standing beside another lawyer of the same attorney consortium (Jim Vickaryous), made those statements while also touting this Court's efforts to "compel settlements from defendants." *See* June 3, 2019 Deltona Meeting at 2:21:50 ("[T]he judge, judge Aaron Polster, is a tremendous plaintiff-oriented judge. Now Mr. Fowler knows what that means. Meaning that he has mandated, and is pushing, all of the defendants to settle."); February 4, 2019 Oviedo Meeting at 1:03:00 ("We have a very aggressive judge who is bent on settlement in this case."); City of Palm Bay, *Oct 03, 2019 Council Meetings – Regular* at 7:24, https://tinyurl.com/PalmBay-10-3-19 (stating that the Court was putting "enormous pressure" on defendants and using its "great power and specific intent to try to compel settlements from defendants").

At a February 25, 2025 hearing, the Court acknowledged that Mr. Kahn's statements—made over many months to many people and all recorded by video and available to the public—"are very, very troublesome" and "cast doubt on the integrity of the Court." ECF No. 5986 at 6:8–12. The Court recognized that the statements "created a real problem, [and] a serious impression" of impropriety. *Id.* at 6:23.

2

Yet without explanation, the Court denied the PBMs' motion for disclosure of all *ex parte* communications. *Id.* at 6:4 ("I'm going to deny the motion."). Instead, the Court ordered Mr. Kahn to appear for an evidentiary hearing at which he will be questioned—"first by the Court" and then by "the PEC or any defense attorney"—regarding his statements. *Id.* at 6:4–8. Shortly after the hearing, the Court entered a written order scheduling the evidentiary hearing for March 12, 2025, and again commenting that Mr. Kahn's statements "cast aspersions on the integrity of the Court, certain counsel for the Plaintiffs, and the MDL in general." ECF No. 5969.

The Court has already acknowledged that the PBMs are entitled to investigate Mr. Kahn's allegations about Mr. Weinberger's *ex parte* communications, ordering an evidentiary hearing to begin that investigation. But the PBMs cannot fully question Mr. Kahn about his statements until all *ex parte* communications are disclosed. Further, Mr. Kahn should not be the only one testifying at that hearing. Mr. Kahn spoke repeatedly about Mr. Weinberger's *ex parte* communications with the Court, so Mr. Weinberger should also testify under oath. And finally, we request that the Court arrange for a neutral and disinterested judge to preside over the hearing.

**REQUESTED RELIEF**

**A.     The Court must reconsider its order denying disclosure of *ex parte* communications.**

The Court offered no reason for denying the PBMs' motion seeking disclosure of the at-issue *ex parte* communications. The Sixth Circuit, on the other hand, has instructed that "ex parte communications should be avoided" but that "[i]f any such communications do occur . . . the district court should endeavor to disclose, as appropriate, the ex parte communication to the parties as soon as possible." *United States v. Lanier*, 748 F. App'x 674, 678 (6th Cir. 2018); *see also In re Benner III, LLC*, 2014 WL 4536645, at *1–2 (Bankr. W.D. Mich. Sept. 9, 2014) (disclosing an *ex parte* communication and explaining that the canons of judicial ethics require that "the judge

3

should promptly notify the parties of the subject matter of the communication" (quoting Code of Conduct for United States Judges, Canon 3(A)(4))); Code of Conduct for United States Judges, Canon 3(A)(4) ("If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should promptly notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested."); ABA Model Code of Judicial Conduct, Rule 2.9 (similar).

As the Court acknowledged at the February 25 hearing, *ex parte* communications threaten the integrity of judicial proceedings. ECF No. 5986 at 6:8–12, 23; *see also United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992). The PBMs are entitled to know everything there is to know about plaintiffs' counsels' *ex parte* communications with the Court and the Special Masters. If there were no *ex parte* communications between the Court, the Special Masters, or their staff, then there should be no issue complying with an order requiring their disclosure. But if Mr. Weinberger or any other plaintiffs' lawyer has communicated *ex parte* with this Court, the Special Masters, or their staff, then prompt disclosure of those communications is required as a matter of fundamental fairness and due process.

The PBMs (and other interested parties) are entitled to fully investigate the basis for Mr. Kahn's statements before questioning him at any hearing. To that end, the Court should order that the disclosure of any *ex parte* communications occurs at least five days *before* the evidentiary hearing so that parties may question Mr. Kahn with the benefit of the full record of *ex parte* communications that have occurred in the MDL.

### B. Co-liaison counsel Peter Weinberger should also be subject to questioning under oath.

Mr. Kahn's statements focus on Mr. Weinberger's consistent *ex parte* communications with the Court. Mr. Weinberger has already offered comments on Mr. Kahn's statements. ECF

4

No. 5986 at 12:8–13:3. But given that Mr. Weinberger is the subject of those "very, very troublesome" statements that "cast doubt on the integrity of the Court" (*id.* at 6:8-12), the Court should require Mr. Weinberger to testify under oath about his *ex parte* communications with the Court. Mr. Weinberger is the only non-judicial officer who can testify about those communications.

### C. Given the circumstances, it would be appropriate for a neutral, disinterested judge to preside over the hearing concerning *ex parte* communications.

The PBMs also request that the Court arrange for a neutral, disinterested judge to preside over the evidentiary hearing. Mr. Kahn's statements indicate that Mr. Weinberger engages "every day" in "*ex parte* communications" with the Court that are "generally disallowed in any litigation." June 3, 2019 Deltona Meeting at 2:21:50, 2:27:27. As the Court already acknowledged, Mr. Kahn's statements "cast doubt on the integrity of the Court." ECF No. 5986 at 6:8–12. The upcoming evidentiary hearing will address (among other things) the nature and frequency of those communications. A neutral, disinterested judge—one without personal knowledge of relevant facts—will be best situated to promote the credibility of the proceedings. *Cf.* 28 U.S.C. § 455(b)(1).[1]

### CONCLUSION

The PBMs are entitled to an open, transparent, and impartial forum in which all parties stand on equal footing. The governing ethical rules, rules of professional conduct, and basic principles of fundamental fairness and due process require that. For those reasons, the Court should (1) order the disclosure by March 7, 2025, of all *ex parte* communications between any plaintiffs'

---

[1] Under § 455(b), a "'proceeding' includes pretrial, trial, appellate review, or other stages of litigation." 28 U.S.C. § 455(d)(1).

5

counsel and the Court, the any of the Special Masters, or any of their staff,[2] (2) order that Peter Weinberger also testify under oath at the evidentiary hearing regarding his *ex parte* communications with the Court, and (3) arrange for the evidentiary hearing to be presided over by another judge.

---

[2] For each *ex parte* communication, the Court should order the PEC to (1) identify all individuals who participated in the communication; (2) identify the means through which the communication occurred (email, text message, phone call, in-person, etc.); (3) describe the substance of the communication; and (4) produce all documents, communications, text messages, notes, emails, or other records (including call logs or text message logs) related to, summarizing, or referring to the communication.

Respectfully submitted this 4th day of March, 2025.

| | |
|---|---|
| /s/ Brian D. Boone | /s/ Jonathan G. Cooper |
| Brian D. Boone | Michael J. Lyle |
| Matthew P. Hooker | Jonathan G. Cooper |
| William W. Metcalf | **QUINN EMANUEL URQUHART &** |
| **ALSTON & BIRD LLP** | **SULLIVAN, LLP** |
| 1120 South Tryon Street, Suite 300 | 1300 I St. NW, Suite 900 |
| Charlotte, NC 28203 | Washington, DC 20005 |
| T: (704) 444-1000 | T: (202) 538-8000 |
| brian.boone@alston.com | mikelyle@quinnemanuel.com |
| matthew.hooker@alston.com | jonathancooper@quinnemanuel.com |
| will.metcalf@alston.com | |
| | Sage R. Vanden Heuvel |
| Andrew Hatchett | **QUINN EMANUEL URQUHART &** |
| **ALSTON & BIRD LLP** | **SULLIVAN, LLP** |
| 1201 W. Peachtree St. NW, Suite 4900 | 865 S. Figueroa St., 10th Floor |
| Atlanta, GA 30309 | Los Angeles, CA 90017 |
| T: (404) 881-7000 | T: (213) 443-3000 |
| andrew.hatchett@alston.com | sagevandenheuvel@quinnemanuel.com |
| | Tara MacNeill |
| *Attorneys for UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.* | **QUINN EMANUEL URQUHART & SULLIVAN, LLP** |
| | 2601 South Bayshore Dr, Suite 1550 |
| | Miami, FL 33133 |
| | T: (305) 402-4880 |
| | taramacneill@quinnemanuel.com |
| | *Attorneys for Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); and Express Scripts Specialty Distribution Services, Inc.* |