**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION | ) | **CASE NO. 1:17-MD-2804** |
| OPIATE LITIGATION | ) | |
| | ) | **Judge Dan Aaron Polster** |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| *PBM Bellwether Cases* | ) | |
| | ) | **ORDER REGARDING** |
| | ) | **REMUNERATION DISCOVERY** |
| | ) | |

In December of 2023, the Court directed the parties to begin discovery in the PBM
Bellwether cases. *See* docket no. 5268 at 3 ("the parties may and should begin propounding basic
discovery after Plaintiffs' motions for leave to file amended complaints are filed on December 15,
2023"). Plaintiffs promptly served discovery on PBM Defendants OptumRx and ESI. Among other
topics, this discovery sought information, documents, and data regarding the PBMs' methods of
receiving "remuneration" related to opioids and other drugs, and the amounts of remuneration

received.[1]

Over the next year, the parties argued over the sufficiency of the PBMs' responses to discovery on remuneration.  Plaintiffs served at least three sets of discovery including targeted requests for information about remuneration, seeking each time to ensure their requests were not interpreted narrowly.  *See* docket no. 5938 at 1-2 n.1 (listing Plaintiffs' discovery requests). Plaintiffs consistently complained to the Special Master and the Court that the PBMs were not producing all requested remuneration information.

Now, Plaintiffs move for leave to file supplemental discovery related to remuneration to ensure "the PBM defendants produce the full scope" of materials on this topic.  *Id.* at 1.  The proposed supplemental discovery requests are attached to Plaintiffs' motion as an exhibit.  *See* docket no. 5938-1. Each of the PBMs filed a response brief opposing the motion, *see* docket nos. 5948 & 5950; Plaintiffs filed replies, *see* docket nos. 5979 & 5980; and the Court allowed PBMs to file surreplies, *see* docket nos. 5993 & 5995.

For the reasons set forth below, and to the extent noted below, Plaintiffs' motion for leave

---

[1]   In their instant motion for leave to file supplemental discovery, Plaintiffs define "remuneration" to mean "all 'things of value,' including, without limitation, money, credits, any type of revenue, discounts and debits." Docket no. 5938-1 at 2. Plaintiffs further define "Opioid Remuneration" as follows:

> all Remuneration related to opioids, including without limitation, Remuneration related to opioid drugs, opioid services, opioid programs, opioid activities, opioid claims, opioid data, and opioid prescriptions. Opioid Remuneration includes, but is not limited to, Administrative Fees, service fees, data fees, access fees, portal fees, program fees, Rebates, inflation/price protection rebates, mail order supplemental discounts, Spread Pricing or any fee related thereto, Pass Through Pricing or any fee related thereto, Utilization Management fees, fees the PBM deems "bona fide service fees", fees received pursuant to fee-for-services contracts for data services and clinical programs, and any amounts related thereto, discounts, and/or any other "thing of value" related to opioids.

*Id.*

2

to serve supplemental discovery is **GRANTED**.

The Court concludes the PBMs' opposition to Plaintiffs' motion for leave to propound additional discovery is not well-taken.  Each of the PBMs insists it has already produced "all opioid-related remuneration discovery that the PEC had asked for."  ESI response at 2 (docket no. 5948); *see* Optum response at 1 (docket no. 5950) ("OptumRx has provided everything that the PEC has asked for in discovery—and then some.").  But Plaintiffs identify specific instances and categories of remuneration information that each PBM has not disclosed fully, completely, and transparently. *See, e.g.,* reply to ESI (docket no. 5979) at 10; reply to Optum (docket no. 5980) at 3-4.  The PBMs must do so.

Beyond insisting they have produced all requested remuneration discovery, each of the PBMs also asserts that granting Plaintiffs' motion would violate Fed. R. Civ. P. 26(b)(1). This Rule mandates that discovery be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  The Court easily concludes Plaintiffs' request complies with the Rule. The remuneration information that Plaintiffs seek is at the very center of the case.  To assert it has only "marginal relevance to Plaintiffs" is entirely untenable. ESI response at 2 (docket no. 5948); *see* Optum response at 7 (docket no. 5950) ("the supplemental discovery—as drafted—would not yield relevant information").  Later in this Order, the Court sets out certain boundaries on the supplemental discovery that PBMs must produce.  As limited, the burden on each PBM is proportional to the needs of the Bellwether cases.

The PBMs also maintain that some of the requested discovery does not even apply.  For example, Optum writes: "looking at the PEC's proposed supplemental discovery requests, at least half of them (Nos. 8 through 14) appear, either on their face or by context, to relate solely to Express Scripts."  Response at 8 (docket no. 5950).  If true, it is easy enough for Optum simply to say so in its discovery responses; this is not a reason to deny the motion for discovery that is at the heart of Plaintiffs' claims.

Similarly, ESI states that proposed Request No. 11 is unnecessary because it has already produced all responsive documents.  *See* response at 7 (docket no. 5948) ("Express Scripts has already identified any [*qui tam* cases alleging violations of the Anti-Kickback Statute] that relate to prescription opioids, and it has produced the documents required under DR-22 that are in its possession."). If either PBM defendant has already responded fully, completely, and transparently to any of the supplemental requests, it may of course say so.  The additional burden of responding to a request a PBM has already fully answered is virtually zero.

Generally, the requested supplemental discovery is directly relevant to the claims Plaintiffs assert; the Court disagrees that Plaintiffs are simply "engaged in a fishing expedition into broad categories of remuneration untethered to opioids or the allegations in the bellwether complaints." ESI surreply at 3 (docket no. 5995).

The PBMs also argue that Plaintiffs are "seek[ing] to contradict rulings by Special Master Cohen or undo agreements by the parties regarding the scope of discovery."  ESI response at 2 (docket no. 5948); *see* Optum response at 8 (docket no. 5950) ("The PEC is now seeking to undo all the work and agreements between the parties and the Special Master's previous discovery orders, even though it did not object to those discovery orders at the time.").  For example, ESI observes

4

that:

> proposed Request No. 6 asks Express Scripts to "[p]roduce all communications with clients related to Remuneration which includes, in whole or in part, Opioid Remuneration."  * * *  Express Scripts has hundreds of client account teams that interface with thousands of clients nationwide, many of which change every year. As written, this request could require searching the custodial files of *thousands* of custodians who worked in client-facing roles during the past thirty years to search for "all communications," a task that would be neither feasible nor sensible, and certainly is not proportionate to the needs of the case. It is precisely for that reason that during discovery the parties spent months negotiating and ultimately agreeing to a sampling process under which Express Scripts collected materials for 25 clients in Track 12.
>
> Moreover, Special Master Cohen previously ordered that the parties could select no more than 57 custodians each and that they would have to make their final custodian selections by October 25, 2024, so that documents could be timely produced and depositions could proceed. The PEC selected its custodians, including several client-facing custodians, and Express Scripts has collected and produced their materials. Expanding discovery now to thousands of new clients would obliterate these prior agreements and orders from Special Master Cohen.

ESI response at 6 (docket no. 5948).

This concern is legitimate.  Plaintiffs assert they "do not seek to set aside the parties' case track specific 'client sampling' agreements, nor do Plaintiffs seek to contravene the Special Master's custodian selection rulings."  Reply at 2 (docket no. 5979); *see id.* at 6 ("Plaintiffs agree that certain requests which seek client specific information, such as Request 6, may be limited by the case track specific client sampling agreements.").  The Court makes clear here that any agreements the parties reached earlier, and any limitations the Special Master imposed earlier, remain in place. Thus, for example, the Court's instant Order does not work to abrogate or expand the sampling process

described above.[2]

Nor does the Court's Order preclude the PBMs from interposing any appropriate objections. For example, ESI writes that "Request No. 12 requests documents from the *Kaleo* litigation and counsel's communications during that litigation. * * * [T]he PEC's request for documents sealed by court order in *Kaleo* is improper." ESI response at 7 (docket no. 5948).  ESI is not precluded from objecting to Request No. 12 on that basis.[3]

Finally, ESI observes that "the current Track 12 fact discovery deadline of April 25, 2025, would likely need to be substantially extended if the Court grants the PEC's motion."  ESI response

---

[2]  It appears each PBM agreed to produce remuneration-related materials from 57 document custodians, a certain number of which are "client-facing," and to search for remuneration documents related to a certain number of clients. *See* ESI response at 6 (docket no. 5948) ("the parties spent months negotiating and ultimately agreeing to a sampling process under which Express Scripts collected materials for 25 clients in Track 12," and "Special Master Cohen previously ordered that the parties could select no more than 57 custodians each"); *see* Optum response at 7-8 (docket no. 5950) ("OptumRx and the PEC spent months negotiating over a sample of clients from within the bellwether jurisdiction. OptumRx has already agreed to produce contracts with those sample clients and other non-custodial documents related to the work OptumRx performed for them. Not only that, the PEC—through a process that Special Master Cohen directed—selected a set of 'client-facing' custodians so they could get at precisely that information"); *see also* Optum surreply (docket no. 5993) at 3 (referring to an agreed sample of 40 clients).

This Order does not require the number of document custodians or the size of the client samples to change. It does require, among other things, that the PBMs produce ***all*** remuneration-related discovery (as defined in footnote 1, above) from those custodians or related to those clients. The PBMs should answer proposed Requests Nos. 13 and 14 accordingly. *See* ESI surreply at 4 (docket no. 5995) ("[T]he PEC seeks to justify proposed Request Nos. 13 and 14, which seek ***all*** contracts and communications with [*all*] third party administrators, brokers and consultants. Reply Br. at 7. But Express Scripts has already produced contracts for any consultants, brokers, or third party administrators ***that were part of the client sample*** in Rochester, and the PEC does not explain why yet further discovery into these relationships would be fruitful.") (emphasis added).

[3]  As to Request No. 10, however, the Court overrules ESI's objection that it need not answer because it is "discovery on discovery." ESI response at 7 (docket no. 5948)*.*  ESI is incorrect that Plaintiffs have "not identified any deficiencies in Express Scripts' production of Medco documents," given Medco's non-production of responsive documents it was obligated to maintain in a "Focus Arrangements Database."

at 2 (docket no. 5948).  That may be so, and the Court will address that question if and when the parties raise it.  But one thing is certain—both sides will produce all discovery necessary to try the Bellwether cases *on the merits based on a full record*.  Here, that includes complete responses to the supplemental remuneration discovery Plaintiffs seek.  The Court rejects the assertion that Plaintiffs failed to "establish good cause to support its motion for leave," which may require a "substantial delay in the discovery schedule."  ESI surreply (docket no. 5995) at 2.  Specifically, Plaintiffs have shown that: (1) the remuneration discovery sought is at the heart of their  case; and (2) there are specific instances where PBMs have not fully, completely, and transparently responded to existing discovery requests related to remuneration.  These two factors comprise good cause for granting the motion.

To be clear, the Court acknowledges the PBMs have produced considerable discovery related to remuneration.  And of course, the PBMs cannot produce information they do not have. It is certainly possible that, as to some or even most of the supplemental discovery requests, the PBMs' response will be that they have already produced all they have, there is no additional responsive information, and/or the supplemental discovery request is *entirely* duplicative of earlier-fully-answered requests.  But the Court concludes that: (1) Plaintiffs have shown good cause for serving supplemental discovery, *see* docket no. 5834 at 5 ("The Plaintiff may seek leave of Court to serve additional written discovery on the PBM Defendants, including but not limited to, Interrogatories and Requests for Production, for good cause shown."); (2) the supplemental discovery will ensure PBMs respond fully, completely, and transparently regarding the pivotal topic of remuneration, thereby filling any gaps that still exist after having responded to Plaintiffs' earlier, comprehensive discovery requests; and (3) Plaintiffs have satisfied the requirements of all applicable Federal Rules

of Civil Procedure in support of their motion for leave.

        **IT IS SO ORDERED.**

                                            ***/s/ Dan Aaron Polster***
                                            **DAN AARON POLSTER**
                                            **UNITED STATES DISTRICT JUDGE**

**Dated:** March 5, 2025