IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>**This document relates to:** *Track 9*<br>**Case No. 1:18-op-45274-DAP**<br><br>TARRANT COUNTY, TEXAS,<br>      Plaintiff,<br>  v.<br>PURDUE PHARMA, et al.,<br>      Defendants. | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

### ALBERTSONS' REPLY IN FURTHER SUPPORT OF MOTION FOR CERTIFICATION OF ORDER DENYING ALBERTSONS' MOTION FOR SUMMARY JUDGMENT FOR INTERLOCUTORY APPEAL

 Albertsons, Inc., Albertsons, LLC, Safeway, Inc., Randall's Food & Drug, LP, and United Supermarkets, LLC (collectively, "Albertsons") file this Reply in Further Support of Motion for Certification of Order Denying Albertsons' Motion for Summary Judgment for Interlocutory Appeal in connection with the Track 9 Bellwether Case, with incorporated memorandum of points and authorities in support thereof.

### INTRODUCTION

 Section 1292(b) lists three criteria for an interlocutory appeal: "a controlling question of law," "substantial ground for difference of opinion," and the prospect that an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Albertsons' Motion for Certification of Order Denying Albertsons' Motion for Summary

1

Judgment for Interlocutory Appeal ("Motion" (ECF No. 5956)[1]) demonstrates that all three criteria exist here, and Plaintiff's Opposition to Albertsons' Motion for Certification of Order Denying Albertsons' Motion for Summary Judgment for Interlocutory Appeal ("Opposition") (ECF No. 5997) does not refute that conclusion.

At the outset, Plaintiff Tarrant County attempts to characterize Albertsons has having "reversed its position on remand," because before Albertsons' Motion for Summary Judgment was decided, Albertsons sought remand to the transferor Texas court (ECF No. 5588), and it now has objected to the JPML's Conditional Remand Order (*In re National Prescription Litigation*, Case MDL No. 2804 (J.P.M.L.) ECF No. 9627). Albertsons' request for remand having been denied, Albertsons' current position is not inconsistent with any position it has taken previously. In its remand motion, Albertsons explained, *inter alia*, that Plaintiff's public nuisance claims – the primary claims against Albertsons in this case[2] – are claims brought pursuant to Texas state law, and therefore, it would be appropriate for a Texas court to decide them. If a Texas court had ruled on Albertsons' Motion for Summary Judgment and Albertsons had determined there was a basis for appeal, Albertsons would have followed the appropriate procedure to seek an appeal in that context. Here, staying the JPML's Conditional Remand Order temporarily is simply the correct procedural mechanism to allow the Court to determine whether to certify denial of Albertsons' Motion for Summary Judgment for interlocutory appeal, and is not a "revers[al]" of Albertsons' prior position. As is explained in Albertsons' Motion to Vacate Conditional Remand Order and brief in support, Albertsons' principal basis for objecting to remand at this time is its pending

---

[1] Initially, Albertsons filed the Motion in the lead case, 18-op-45274 ("Track 9 Docket") (ECF No. 124), because the clerk had closed the MDL proceeding for the Track 9 case as a result of the JPML's conditional remand order. The Motion was subsequently filed in the MDL, and all references to docket numbers, unless otherwise noted, are to the docket for *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804 (N.D. Ohio).
[2] The nature of Plaintiff's claims against Albertsons are discussed more fully in Section I, *infra*.

2

Motion. (*In re National Prescription Litigation*, Case MDL No. 2804 (J.P.M.L.) ECF No. 9636.)[3] Thus, Plaintiff's attempt to cast aspersions on Albertsons' motives is unfounded.

## LEGAL ARGUMENT

### I. RESOLUTION OF THE QUESTIONS IDENTIFIED IN ALBERTSONS' MOTION WOULD ADVANCE TERMINATION OF THE LITIGATION.

Plaintiff summarily states that it "has asserted additional causes of action against Albertsons that were bifurcated and potentially remain to be tried." (Opp., pp. 4-5 (ECF No. 5997).) In support, Plaintiff cites to its Supplemental and Amended Complaint, ¶¶3, 677-680 (ECF No. 3739), and its short form and original complaints. (*Id.* at p. 5, n.4.) But a meaningful review of the operative pleadings demonstrates that the public nuisance claims which are the subject of Albertsons' Motion for Summary Judgment are in actuality the only substantive claims Plaintiff has against Albertsons. Plaintiff's Supplemental and Amended Complaint asserts two causes of action – Intentional Creation of a Public Nuisance, and Negligent Creation of a Public Nuisance. (Supp. and Am. Compl., pp. 207-230.) The Supplemental and Amended Complaint is the only pleading that contains any specific allegations against Albertsons. Albertsons was not named as a defendant in either Plaintiff's Original Complaint and Jury Demand (ECF No. 1) or Short Form for Supplementing Complaint and Amending Defendants and Jury Demand (ECF No. 12). The Supplemental and Amended Complaint contains only a cursory adoption of the prior pleadings and does not explain how the allegations from those pleadings relate to the later-added defendants.[4]

---

[3] As set forth in Albertsons' Motion to Vacate Conditional Remand Order and brief in support, the Court's suggested remand is inappropriate for two reasons. First, because the Judicial Panel on Multidistrict Litigation should wait for this Court to rule on Albertsons' request for interlocutory appellate review of the MSJ Order to realize the efficiencies achieved in the MDL proceedings. Second, because the Court's piecemeal remand instruction retains jurisdiction over the parties to adjudicate insufficiently pled bifurcated claims, promoting piecemeal litigation and risking inconsistent results.

[4] There were no Pharmacy Defendants included in the Original Complaint or the Supplemental and Amended Complaint, only Manufacturer/Labeler, Distributor, and Individual Defendants (*see* ECF Nos. 1, 12), so it is unclear what Plaintiff's theory would be against the Pharmacy Defendants vis-à-vis the causes of action asserted therein.

(Supp. and Am. Compl., ¶¶ 3, 677-680 (ECF No. 3739).) In short, none of Plaintiff's pleadings make any factual connection between the claims asserted in its Original Complaint and Jury Demand and Albertsons.

Thus, while in some nominal and technical way Plaintiff may have attempted to assert additional claims other than the public nuisance claims against Albertsons,[5] even a cursory review reveals those claims are highly flawed and may be subject to further dispositive motion practice if and when they are revisited. If the public nuisance claims against Albertsons are resolved, that will either entirely resolve Plaintiff's claims against Albertsons, or at the very least will be likely to promote settlement of any remaining claims, which, based on the operative pleadings, would suffer from glaring and obvious weaknesses.

## II. CONTRARY TO PLAINTIFF'S ASSERTION, THERE EXISTS A SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION.

As explained in Albertsons' Motion, there is a substantial ground for a difference of opinion when "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013). The Sixth Circuit further clarified that "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (internal quotations omitted).

---

[5] Although it is not the subject of the current briefing, Albertsons does not concede that Plaintiff has adequately asserted any claims against Albertsons other than the public nuisance claims which are currently at issue.

4

Plaintiff's argument on this point unintentionally illustrates the existence of a substantial ground for a difference of opinion. While Plaintiff accuses Albertsons of failing to demonstrate the existence of a substantial ground for a difference of opinion because Albertsons' argument "is a rehash of the arguments it made in its summary judgment briefing," Plaintiff's argument is also nothing more than revisiting the arguments *it* made in the summary judgment briefing, with conclusory assertions that the authority cited by Plaintiff is in fact correct, while the authority cited by Albertsons is not, and thus, there is no ground for a difference of opinion. Rather, a review of the arguments demonstrates that the public nuisance claims raise issues on which there is "little precedent or one whose correct resolution is not substantially guided by previous decisions," satisfying the first prong of the *Miedzianowski* framework.

**A.    Plaintiff Cites No Authority Demonstrating the Absence of a Substantial Ground for a Difference of Opinion as to Whether a Public Entity May Maintain Public Nuisance Claims for Albertsons' Conduct.**

Contrary to Plaintiff's assertion, there is no authority which demonstrates certainty on this issue. Instead, Plaintiff simply avoids making a clear articulation of Albertsons' argument, which cannot be denied – no Texas authority has expressly held whether a public entity may maintain public nuisance claims for the sale of legal products which have not already been declared a nuisance by either the Texas legislature or a local municipality, and where there has been no injury to a proprietary interest. Albertsons acknowledges that both its arguments and Plaintiff's arguments in the summary judgment briefing rely on analogy and inference. However, in an effort to avoid appellate review, Plaintiff refuses to recognize this reality and insists that the issue is well-settled.

One of Albertsons' positions that Plaintiff attacks is that the Texas Health and Safety Code has specified limited circumstances in which a public entity may assert a public nuisance claim.

(Opp., p. 7 (ECF No. 5997).) Plaintiff's argument begins by stating that "§ 343.001 does not itself reference a county's abatement authority; it simply lists specific circumstances that constitute prohibited public nuisances." (*Id.*) Plaintiff then goes on to state that "Section 343.021 relates to a county's authority to summarily abate public nuisances listed under § 343.011." (*Id.*) Both of these observations are correct; Albertsons has made no argument otherwise. Instead, Albertsons sees in the statutory scheme an indication that the Texas legislature was reflecting public policy under Texas law that the tort of public nuisance should be narrowly construed, such that public nuisances which are not expressly provided for in the statutes should not be available for redress by a public entity, a logical analysis which Albertsons supported with reference to Texas and other law. (Memorandum in Support of the Albertsons Defendants' Motion for Summary Judgment, pp. 10-15 (ECF No. 5587).) It is Plaintiff's next sentence that reveals the requisite "substantial grounds for a difference of opinion": "**_Neither section addresses_** a county's authority to bring common-law public nuisance actions." (*Id.* (emphasis added).) Plaintiff has therefore acknowledged the statutory provisions' silence on this matter – whether Plaintiff has the authority (either statutory or under common law) to bring a public nuisance claim (either intentionally or negligently caused) in this context (for the dispensing of approved pharmaceutical products). Confoundingly, Plaintiff then concludes that this very silence cannot "provide[] a substantial ground for a difference of opinion." (*Id.*) It is true that although Albertsons looked to this statutory authority for guidance, the statutory authority does not expressly limit a county's abatement authority to the public nuisances listed in the statutes. But nor does it expressly provide for a county's ability to bring public nuisance claims in this context, a necessary predicate for Plaintiff's claims. Therein lies the grounds for disagreement.

Plaintiff then goes on to argue that "Albertsons offers no authority demonstrating that reasonable jurists could disagree." (*Id.* at p. 8.) This is frankly, an absurd argument. If there were authority which conclusively acknowledged the existence of a disagreement, that same authority would likely resolve said disagreement. Plaintiff then repeats and references its own summary judgment argument, that "[a]n unreasonable interference with public health and safety caused by Albertsons' intentional or negligent dispensing and distribution conduct falls squarely within the well-established parameters of a common-law public nuisance claim under Texas law." (*Id.*) This statement is also offered with "no authority," it is simply a summary of Plaintiff's understanding of the parameters of Texas public nuisance claims.

Plaintiff also takes issue with the "only authority Albertsons identifies," *Martinez v. Walgreen Co.*, No. 7:17-CV-309, 2018 WL 3241228 (S.D. Tex. July 3, 2018). (Opp., p. 8 (ECF No. 5997).) Plaintiff explains that it believes this authority is inapposite, but offers no contrary authority other than this Court's own opinion, which, with all due respect, is the reasoning for which Albertsons seeks appellate review. (*Id.*) This circular argument reveals why a substantial ground for disagreement exists. This non-binding decision is the sole authority that this Court relied on for its determination that Texas "recognizes the existence of a common law duty of care owed by pharmacies." (Track 9 Docket, ECF No. 124.) Albertsons, however, disputes this Court's interpretation and Plaintiff cites no additional authority that would support this interpretation. The differing interpretations centered around a single, non-binding decision with no other authority to look to for guidance clearly demonstrates the lack of guidance from Texas on this issue.

   **B.**  **Albertsons has not "Merely Disagreed" with the Court's Order.**

Plaintiff also asserts that "[t]he mere fact that Albertsons disagrees with the Court's determination does not demonstrate that there is a substantial ground for difference of opinion

7

among reasonable jurists." (Opp., pp. 9-10 (ECF No. 5997).) But nor does the fact that Plaintiff **_agrees_** with the Court's determination mean that there **_is not_** a substantial ground for a difference of opinion. Plaintiff makes this statement, and then cites a number of cases which include no analysis or meaningful description, just quotes, often taken out of context. Albertsons will now undertake the endeavor Plaintiff did not and address these cases in turn.

First, Plaintiff cites *Estate of Q.W. v. Lucas Cnty. Children Services*, No. 3:22-CV-00671-JGC, 2023 WL 6809960, *2 (N.D. Ohio Oct. 16, 2023). (Opp., p. 9 (ECF No. 5997).) In concluding that the movant failed to establish the existence of a substantial ground for a difference of opinion, the court relied on the fact that there was a statute which expressly permitted the conduct which movant was challenging. *Estate of Q.W.*, 2023 WL 6809960 at *2. As both Plaintiff and Albertsons acknowledge, no such express authority exists here. In *Dunigan v. Thomas*, No. 22-CV-11038, 2024 WL 889032, *11 (E.D. Mich. Mar. 1, 2024) (cited at Opp., p. 9 (ECF No. 5597)), plaintiffs did not present any arguments that the case was difficult and of first impression, that a difference of opinion existed within the Sixth Circuit, or that the circuits are split were split on the issue, essentially entirely ignoring the second prong under Section 1292(b). Irrespective of whether Plaintiff agrees with Albertsons' arguments, it cannot be said that Albertsons did not make any arguments or present any authority in support of this element.

*Montgomery Cty. Bd. of Cty. Commissioners v. Cardinal Health, Inc.*, No. 18-OP-46326, 2021 WL 4198171 (N.D. Ohio Sept. 15, 2021) (cited at Opp., p. 9 (ECF No. 5997) is entirely inapplicable: the language cited by Plaintiff was employed by the court in its discussion of whether the question presented was a controlling issue of law, which is a separate element of the certification analysis. *Montgomery Cty.*, 2021 WL 4198171 at *2 ("Meijer may disagree with the Court's interpretation of its own prior orders, but again, the Court has broad discretion in

8

interpreting, applying, and determining the requirements of its own orders. Accordingly, because matters firmly with the Court's discretion are not considered controlling questions of law under § 1292(b), no controlling question of law is present here."). Plaintiff omitted the second sentence of the foregoing parenthetical, which provides meaningful context, likely because it does not support any conclusion about the existence of a substantial ground for a difference of opinion.

Finally, in *United States ex rel. Griffis v. EOD Tech., Inc.*, No. 3:10-CV-204, 2024 WL 4920597, *2 (E.D. Tenn. Sept. 19, 2024) (cited at Opp., pp. 9-10 (ECF No. 5997), the court denied certification because "[t]his matter is ripe for trial, and any disagreement with the Court's opinion … can be addressed on appeal" of the impending final judgment. Plaintiff does quote this case accurately but fails to compare it to the instant circumstances. In *Griffis*, the court acknowledged that there were valid arguments that all three criteria in 1292(b) were met, but because the motion was filed one week before the already-scheduled final pre-trial conference, the matter was "ripe for trial." *Griffis*, 2024 WL 4920597 at *2. Here, even though the motion for summary judgment has been briefed and decided, that hardly means this case is ripe for trial. It must be remanded to the Northern District of Texas, a new schedule must be set there to allow for pre-trial motions, those motions must be briefed and ruled upon, etc. Certainly the case is not at the point where it is ready for a final pre-trial conference nor is trial imminent, which were the factual circumstances in *Griffis*.

Therefore, a meaningful analysis of the cases cited by Plaintiff demonstrate that Plaintiff has not presented any authority which supports the conclusion that Albertsons' position is nothing more than "mere disagreement."

    **C.**    **Plaintiff Has Not Demonstrated that Section 1292(b) Does Not Apply to the Issues Presented.**

9

Plaintiff takes a similarly superficial approach to its assertion that Albertsons "simply disagrees with how the Court applied the correct legal standard to the facts … 1292(b) does not permit interlocutory appeal of such mixed questions of law and fact." (Opp., p. 8 (ECF No. 5997).) Plaintiff makes the foregoing assertion, then supports it by a string of citations and parentheticals but undertakes no analysis of those cases, or comparison between those cases and the instant one. Again, Albertsons' more thorough analysis of these cases follows.

Albertsons initially cited *In re Auto. Parts Antitrust Litig.*, No. 19-0106, 2019 U.S. App. LEXIS 14014 (6th Cir. May 9, 2019) in its Motion for the simple proposition that standing is a controlling issue of law. (Mot., p. 4.) Plaintiff looks to it to support its conclusion that Albertsons has raised questions which are not appropriate for appellate review under Section 1292(b). But that conclusion cannot be drawn from *Auto Parts*. In *Auto Parts*, the Sixth Circuit declined to undertake interlocutory review of an appeal of a denial of a motion to dismiss. 2019 U.S. App. LEXIS 14014 at *2-3. While the court did recite the proposition that it would not review mixed questions of law and fact, the fact that the issue presented involved a motion to dismiss was crucial to the court's analysis: "[a]ppellate review is hampered if, as in this case, the underlying facts are not yet fleshed out. Accordingly, we decline to exercise our discretion to grant interlocutory review of the denial of the motion to dismiss." *Id.* at *3 ("[O]ur review is limited to the district court's conclusions of law, which we review de novo; we do not review disputed questions of fact.") Nowhere in its Opposition does Plaintiff claim that there are any disputed or open questions of fact, as there were in *Auto Parts*. Nor does the Order Denying Albertsons' Motion for Summary Judgment ("SJ Order") acknowledge or rely on the existence of any disputed issues of material fact. It purely considers legal questions in these factual circumstances. *Auto Parts*, addressing a motion to dismiss rather than a motion for summary judgment, is therefore distinguishable.

Plaintiff also cites *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) for the proposition that "[a] legal question of the type envisioned in § 1292(b), however, generally does not include matters within the discretion of the trial court." (Opp., p. 9 (ECF No. 5597).) This language is cherry-picked, and inapplicable for two reasons. As it did with *Montgomery Cty.*, Plaintiff cites language from the court's controlling-issue-of-law analysis to support Plaintiff's argument that there is no substantial ground for a difference of opinion. *See City of Memphis*, 293 F.3d at 351. But even if the cited language were applicable to this prong of the certification analysis, *City of Memphis* involved a proposed appeal of an evidentiary ruling on the admissibility of evidence. *Id.* ("An allegation of abuse of discretion on an evidentiary ruling does not create a legal issue under § 1292(b).") As explained above, the SJ Order did not make any evidentiary or factual determinations, it merely addressed legal questions, "the type envisioned in § 1292(b)."

Plaintiff's reliance on *Meyers v. Cincinnati Bd. of Educ.*, No. 1:17-cv-521, 2019 U.S. Dist. LEXIS 17979 (S.D. Ohio Feb. 5, 2019) is similarly misplaced, in that it ignores crucial similarities between that case and the instant case. *Meyers* involved three questions of controlling law, including "what constitutes conscience-shocking behavior to establish a 'shocks the conscience' claim [.]" *Meyers*, 2019 U.S. Dist. LEXIS 17979, at *4-5. The parties disputed whether there was a substantial ground for difference of opinion on this question. *Id.* Despite its own conclusion that the defendants' actions were conscience-shocking under the existing Sixth Circuit precedent, the court recognized that there was a substantial ground for difference of opinion because the Sixth Circuit had not yet examined a shocks-the-conscience claim in a school bullying context, acknowledging there may be a reasonable basis for arguing the defendants conduct did not violate the standard set for that claim. *Id.* at *5-7. Here, although Texas courts have addressed public nuisance claims, they have not done so in this context – a common law public nuisance claim for

11

the sale of approved products which have not already been otherwise declared a nuisance, where there has been no damage to a proprietary interest of Plaintiff.

For the foregoing reasons, Plaintiff's bald assertion that the questions Albertsons seeks to have reviewed are not the "type" of questions which fall under the purview of § 1292(b) is unsupported.

### III. A RULING ON THE SJ ORDER'S PUBLIC NUISANCE ANALYSIS WOULD DISPOSE OF BOTH PUBLIC NUISANCE CLAIMS AND THEREFORE MATERIALLY ADVANCE THE TERMINATION OF THE LITIGATION.

Plaintiff asserts that "The Court's ruling on the legal duty issue does not involve a controlling question of law that would materially advance the ultimate termination of the litigation." (Opp., p. 10 (ECF No. 5997).) This argument can be easily dispensed with. Albertsons has not limited certification of the SJ Order to "[t]he Court's ruling on the legal duty issue." Indeed, Albertsons has consistently presented two arguments about Plaintiff's public nuisance claim: 1) the distribution and dispensing of a lawful prescription drug cannot constitute a public nuisance under Texas law (importantly, this argument addresses both intentional and negligent public nuisance claims); 2) Plaintiff has not established a public nuisance claim premised on a negligence theory under Texas law. (Memorandum of Law in Support of the Albertsons Defendants' Motion for Summary Judgment, pp. 10, 15 (ECF No. 5587).) Both arguments were addressed in the SJ Order (SJ Order, pp. 6-11 (separately addressing "Public Nuisance under Texas Common Law" and "Legal Duty") (ECF No. 5921)), and both were the subject of Albertsons' Motion (Mot., pp. 8-12 (Track 9 Docket ECF No. 124). Neither Albertsons in its briefing or the Court in the SJ Order distinguished between intentional and negligent public nuisance claims in addressing Albertsons' first argument. Only Plaintiff has incorrectly characterized the first argument as somehow only applying to the public nuisance claim premised on negligence, when in fact it applies to ***both*** public

12

nuisance theories Plaintiff has advanced. If this argument is resolved in Albertsons' favor, it will resolve both the intentional and negligent public nuisance claims.

## IV. AN IMMEDIATE APPEAL WOULD NOT "UNNECESSARILY PROLONG" THE LITIGATION.

Plaintiff again tries to cast aspersions on Albertsons' motives, by asserting that Albertsons' "current appeals to judicial economy ring hollow" because "Albertsons could have raised these issues *years ago* by filing a motion to dismiss on these grounds." (Opp., p. 10 (ECF No. 5597) (emphasis in original).) Plaintiff's argument does not change the fact that under the current circumstances, resolution of these matters in Albertsons' favor would effectively end this litigation by resolving the Plaintiff's viable claims against Albertsons, saving all parties and the trial court time and resources. One of the cases cited by Plaintiff reasoned that "this case is now ready for trial; permitting an interlocutory appeal would only serve to further delay this litigation." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Midland Steel Products Co.*, 771 F. Supp. 860, 862 (N.D. Ohio 1991) (denying certification of an appeal of a pretrial order). Plaintiff cannot in good faith claim that this case is "ready for trial;" there is a substantial – if not enormous – amount of trial preparation that remains before trial in this matter could occur. Nothing is disingenuous about Albertsons' request for certification now.

## CONCLUSION

For the foregoing reasons, Albertsons' request for certification of the Court's denial of its Motion for Summary Judgment meets all the requirements under § 1292(b) and has the potential to advance termination of the litigation. For these reasons, Albertson Motion should be granted.

Dated:  March 11, 2025

Respectfully submitted,
By: */s/ Francis A. Citera*
One of Defendants' Attorneys

Francis A. Citera, citeraf@gtlaw.com

13

Gretchen N. Miller, millerg@gtlaw.com
Greenberg Traurig, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
Tel: (312) 456-8400
Fax: (312) 456-8435

*Counsel for Defendants Albertsons, Inc., Albertsons, LLC, Safeway, Inc., Randall's Food & Drug, LP, and United Supermarkets, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 11, 2025, a true and correct copy of the Albertsons Defendants' Reply in Further Support of Motion for Certification of Order Denying Albertsons' Motion for Summary Judgment for Interlocutory Appeal was served upon the parties of record using the CM/ECF system.

                                           */s/ Francis A. Citera*
                                           Francis A. Citera