# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION**  **THIS DOCUMENT RELATES TO:**  *All Cases* | ) MDL 2804 ) ) Case No. 1:17-md-2804 ) ) Judge Dan Aaron Polster ) ) **ORDER REGARDING ATTORNEY** ) **MICHAEL KAHN** ) |

  Florida attorney Michael Kahn represents approximately 15 municipal subdivisions (cities and counties), each of which have filed a lawsuit in this MDL against manufacturers, distributors, and pharmacies. Last month, the PBMs learned that Mr. Kahn, in recorded remarks made to public officials on numerous occasions in 2019, claimed that: (1) the PEC, and in particular Plaintiffs' Liaison Counsel Peter Weinberger, regularly engaged in *ex parte* communications with the Court; (2) the Court was plaintiff-oriented; and (3) the Court was intent upon pressuring defendants to settle. Mr. Kahn made these statements to encourage these public officials to authorize contingency arrangements with him and his consortium of co-counsel law firms.

  The Court ordered Mr. Kahn to appear for a hearing on March 12, 2025. Over the course of several hours, Mr. Kahn answered first the Court's questions, and then questions posed by the two PBMs, the PEC, and counsel for Mr. Kahn. *See* docket no. 6025 (Hearing Transcript).

  The major thrust of the questions was to determine whether Mr. Kahn had any basis for making these statements and his intent in making them. Mr. Kahn admitted he had no basis for making these statements. He acknowledged that nobody ever told him Mr. Weinberger, or anyone else from the PEC, had engaged in, or was engaging in, *ex parte* communications with the Court regarding any substantive matter, and that he had no personal knowledge of any such thing. *See* Hrg. Tr. at 11:20–12:1. And he

acknowledged that nobody had ever told him the Court was biased against any defendant, or that the Court was pressuring or intended to pressure any defendant to settle. *See* Hrg. Tr. at 21:16–23.

Mr. Kahn's explanation was that he "misspoke." Hrg. Tr. at 11:4–5. He claimed that, when he used the term "*ex parte*" in his presentations to prospective subdivision clients, he meant to convey that Mr. Weinberger was in a small group of plaintiffs' counsel who had been authorized by all the other lawyers representing subdivisions in the MDL to meet with a small group of defense counsel and the Court. *See* Hrg. Tr. at 13:25–17:21. Mr. Kahn stated he did not intend to convey that Mr. Weinberger or anyone else from the PEC ever met or communicated with the Court outside the presence of defense counsel. *Id*. With respect to settlement, Mr. Kahn testified that he should have used the word "encouraged" rather than "pressured" when describing the Court's interactions with the MDL parties. *See* Hrg. Tr. at 18:2–21:23.

Mr. Kahn graduated from a top-ranked law school and, at the time he made these statements in 2019, had been practicing law for more than 40 years. He described his civil practice as extensive and wide-ranging, most of it being litigation. *See* Hrg. Tr. at 5:1–6:7; 8:24–9:10. As the Court noted during the hearing, even a third-year law student knows what "*ex parte*" means, and that lawyers are prohibited from engaging in *ex parte* communications with a judge regarding the merits of any pending matter. Hrg. Tr. at 17:22–25.

It is hard to believe that an attorney with Mr. Kahn's experience did not understand the implication of his claim that lawyers from the PEC regularly engaged in *ex parte* communications. The Court has never heard an attorney use the term "*ex parte*" in the way Mr. Kahn testified he intended it to mean—namely, a meeting or communication made by a handful of lawyers on one side of the litigation on behalf of a much larger group. *See* Hrg. Tr. at 17:12–21. Further, any rookie lawyer, let alone a seasoned one, knows it would be improper for any judge to pressure either side to settle a case, and that there is all the difference in the world between "pressure" and "encourage". The fact that Mr. Kahn made these unsubstantiated and improper statements on at least four occasions in 2019 adds to the severity of his conduct.

The Court has "inherent power to regulate the practice before it and protect the integrity of its proceedings." *Royal Indem. Co. v. J.C. Penney Co.*, 501 N.E.2d 617, 620 (Ohio 1986). "[T]hrough its

inherent powers, 'the district court has supervisory power to regulate the conduct of attorneys and parties before it.'" *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1201 (S.D. Ohio 2013), *aff'd* (June 10, 2014) (quoting *Jaynes v. Austin*, 20 Fed. Appx. 421 (6th Cir.2001)). "In addition, it is firmly established that '[t]he power to punish for contempts is inherent in all courts.' This power reaches both conduct before the court and that beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) (citations omitted). The contempt power extends "not . . . merely [to] the disruption of court proceedings," but also to "disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Id.* (quoting *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987)).[1]

In light of all the evidence adduced at the hearing, the Court concludes it must impose a significant sanction upon Mr. Kahn, as his repeated 2019 statements, made without any factual basis, improperly cast aspersions upon the integrity of the Court, Mr. Weinberger, and the entire process of the MDL.[2] Such actions are highly disrespectful and contemptuous. At the hearing, Mr. Kahn testified that he believed he had earned approximately $700,000 to date from contingency fee payments as a result of his clients' participation in numerous global settlements. *See* Hrg. Tr. at 25:18–19. The Court has access to all the contingency fee payments earned so far in this MDL, as these payments were analyzed by the Fee Panel appointed by the Court to recommend distribution of more than $2 billion in common benefit funds. The Court's analysis reveals that Mr. Kahn has received approximately $1.8 million in contingent fees to date and will receive approximately $250,000 more. Mr. Kahn testified that he has done no litigation work whatsoever in this MDL. *See* Hrg. Tr. at 26:18–28:18.

---

[1] The Court also considered other sources of authority to impose sanctions, including Fed. Rs. Civ. P. 11, 26, and 37, and 28 U.S.C. §§ 401 and 1927, but concluded it should principally rely instead upon its own inherent authority. *See Chambers*, 501 U.S. at 50 ("[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power.").

[2] "A lawyer may not engage in deceptive or inherently misleading advertising. . . . An advertisement is deceptive or inherently misleading if it . . . implies the existence of a material nonexistent fact." Rule 4-7.13(a)(3), R. Reg. The Fla. Bar; *accord* ABA Model R. Prof. Conduct 7.1 ("A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services."). The comments to the Florida Rules of Professional Conduct further provide that "Advertisements which state or imply that the advertising lawyers will engage in conduct that violates the Rules of Professional Conduct are prohibited." Rule 4-7.13(a)(3), R. Reg. The Fla. Bar, Cmt.

Accordingly, the Court fines Mr. Kahn the sum of one hundred thousand dollars ($100,000.00).

This fine is to be paid to the Clerk of Courts within 30 days of this order.

**IT IS SO ORDERED.**

    **/s/ Dan Aaron Polster  March 18, 2025**
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**