# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to:<br><br>*All actions* | MDL No. 2804<br><br>Case No. 17-MD-2804<br><br>Judge Dan Aaron Polster |

**ORDER TO ESTABLISH QUALIFIED SETTLEMENT FUNDS FOR KROGER SETTLEMENT ATTORNEY FEE FUND AND COST FUND, APPOINT PANEL OF COMMON BENEFIT AND CONTINGENCY FEE FUND ARBITERS, APPROVE FEE FUND ALLOCATION AND DISTRIBUTION PROCESS, AND APPROVE COMMON BENEFIT COST PAYMENT AND ASSESSMENT**

The Plaintiffs' Executive Committee ("PEC") appointed by this Court, on behalf of the subdivisions that have reached resolution (the "Settlement Agreement"[1]) with Defendant The Kroger Co. (the "Settling Defendant"), have moved via an agreed motion submitted by the PEC and consented to by the Settling Defendant (the "Agreed Motion") for entry of an Order: (i) approving the establishment under this Court's continuing jurisdiction of a qualified settlement fund, which is more specifically described in Exhibit R of the Settlement Agreement and which shall be called the Kroger Opiate Attorney Fee Fund Trust (hereinafter referred to as the "Attorney Fee Fund" or the "Fund"); (ii) appointing a Trustee and Administrator for the Fund (the "Trustee/Administrator"); (iii) determining that the Fund, including its two constituent sub-funds described below (the "Common Benefit Fund" and the "Contingency Fee Fund"), constitutes a single qualified settlement fund ("QSF") within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Sections 1.468B-l, et seq.; (iv)

---

[1] Any capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Settlement Agreement, including those terms defined in Exhibit R: "Agreement on Attorneys' Fees, Costs, and Expenses" of the Settlement Agreement ("Exhibit R").

approving payments into the agreed upon MDL Expense Fund; (v) establishing, as a separate qualified settlement fund within the meaning of section 468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation Sections 1.468B-1, et seq., a Cost Fund (as defined below in Section V and as more fully described in Exhibit R Section II), which shall be called the Kroger Opiate Attorney Costs Fund Trust, and appointing an administrator for the Cost Fund (the "Cost and Expense Fund Administrator").

This Order requested by the PEC is intended to facilitate and be wholly consistent with Exhibit R of the Settlement Agreement, and in the event of any inconsistency between this Order and Exhibit R, Exhibit R shall control. The PEC has conferred with the Settling Defendant, who consented to the filing of the Agreed Motion. In support of the Agreed Motion, the PEC has respectfully stated as follows:

**I. Creation of the Attorney Fee Fund Under MDL Court Jurisdiction including Common Benefit Fund and Contingency Fee Fund**

Pursuant to the terms of the Settlement Agreement, the Settling Defendant has agreed, if the conditions to making such payments set forth in the Settlement Agreement are met, to make payments into the Attorney Fee Fund, as more specifically described in Exhibit R of the Settlement Agreement, under the continuing jurisdiction of this Court, that will be used to pay attorneys' fees that have been incurred in furtherance of the opioid litigation related to this defendant, including, but not limited to, work done and fees incurred with respect to opioid litigation generally and against other defendants. The Attorney Fee Fund for the Settling Defendant will consist of the following separate sub-funds, which shall together constitute a single qualified settlement fund for the Settling Defendant, and will remain subject to the continuing and exclusive jurisdiction of this Court:

- The Common Benefit Fund, shall be 60% of the Attorney Fee Fund, and shall hold and disburse funds intended to cover common benefit work as defined in previous Orders of the Court; and
- The Contingency Fee Fund, shall be 40% of the Attorney Fee Fund, and shall hold and disburse funds intended to compensate Attorneys engaged in Qualifying Representations of Participating Litigating Subdivisions that meet the criteria set forth in Exhibit R of the Settlement Agreement, in lieu of enforcement of contingency fee contracts with such Subdivision.
- Eligibility of counsel for the Common Benefit Fund and the Contingency Fee Fund shall be determined under the terms of Exhibit R.

Subject to the conditions for making payments set forth in the Settling Defendant's Settlement Agreement, which allow for certain reductions, suspensions, or offsets, as set forth below, the Settling Defendant will pay a maximum total of $82,227,851.95 ("the Kroger Total Payment") into the Attorney Fee Fund over a period of six years starting on March 31, 2024. The Settling Defendant made its first payment for the Attorney Fee Fund into escrow on March 31, 2024, and this payment will be transferred from the escrow account into the Qualified Settlement Fund by March 31, 2025. The Year 2 payment for the Attorney Fee Fund will also be paid by the Settling Defendant on March 31, 2025 pursuant to Exhibit R of the Settlement Agreement The Kroger Total Payment shall be prorated in accordance with the Settlement Agreement and its Exhibit R. Should any provision of the Settlement Agreement or Exhibit R thereto pertaining to reductions, refunds, suspensions, or offsets be triggered, the appropriate amounts shall revert from the Attorney Fee Fund to the Settling Defendant or reduce the Kroger Total Payment consistent with the provisions in the Settlement Agreement and Exhibit R.

The obligations of the Settling Defendant in the Settlement Agreement arises out of the claims and case brought by the Settling States and the Participating Subdivisions related to the alleged past, present, and future financial, societal, and public nuisance harms and related expenditures arising out of the alleged misuse and abuse of opioid products that have allegedly been caused by the Settling Defendant. The Settling Defendant denies these allegations.

For the avoidance of doubt, the Kroger Total Payment is separate and distinct from the Total Remediation Amount (as defined by the Settlement Agreement), which is compensatory restitution (within the meaning of 26 U.S.C. Section 162(f)(2)(A)) paid as damages by the Settling Defendant for the Alleged Harms allegedly suffered by the Settling States and Participating Subdivisions.

The Court hereby appoints, as the movants request, the same three experienced jurists/special masters appointed under MDL Docket No. 3828 as Fee Panel Arbiters, to oversee and allocate the Common Benefit Fund and the Contingency Fee Fund. The PEC also requests that the Court appoint David R. Cohen as trustee and administrator of Attorney Fee Fund qualified settlement fund for purposes of Treasury Regulations Section 1.468B-2(k)(3) (in such capacities, the "Trustee/Administrator") to oversee administration and administrative costs of the Attorney Fee Fund.

With respect to the Contingency Fee Fund, the Court directs that the Fee Panel Arbiters establish and implement procedures for the distribution of the Contingency Fee Fund consistent with the terms of Exhibit R of the Settlement Agreement. As part of that process, counsel submitting fee petitions for each Participating Litigating Subdivision they represent will waive enforcement rights against the Participating Subdivision clients of all contracts entered into in conjunction with the Qualifying Representation prior to applying for attorneys' fees or costs, under the Contingency Fee Fund. If a client is a non-Settling or non-Participating Client, counsel submitting fee petitions does not waive enforcement rights.  To the extent a State allocation agreement or process provides for a fee fund, such agreements shall be enforceable consistent with State law and the Settlement Agreements.

Awards of fees from the Contingency Fee Fund shall be available to Attorneys with Qualifying Representations of Participating Litigating Subdivisions eligible to receive an allocation under the Settlement Agreement and shall be made applying the Mathematical Model attached as Exhibit A to the Exhibit R (the "Mathematical Model").

The collection of the data and calculations for the Mathematical Model has been a cooperative effort among private counsel for a large number of Litigating Subdivisions. The Fee Panel is encouraged to continue working with those counsel in application of the Mathematical Model. The Fee Panel shall oversee the application of the Mathematical Model and resolve any questions or disputes concerning the eligibility of an Attorney to participate as required in Sections II.G-H of Exhibit R to the Settlement Agreement. The Fee Panel is empowered to hear disputes concerning, and ensure the accuracy of, the mathematical calculation. As to awards from the Contingency Fee Fund, there shall be no right of appeal. Any appeal of an award of the Fee Panel from the Common Benefit Fund will be made to this Court and be reviewed under an abuse of discretion standard.  The decision of the Court is final from which there will be no right of appeal.

With respect to the Common Benefit Fund, the Court hereby approves of a common benefit fee process that will: (1) authorize the Arbiters to commence start-up work, which shall be compensated as set forth below; (2) direct the Arbiters to set up a process to receive requests for common benefit fees and set forth the required materials to be provided to them in connection with fee petitions; (3) direct the Arbiters, once the conditions necessary for the Settlement Agreement to come into effect are fulfilled, to make a preliminary recommendation on the distribution of common benefit fees; (4) direct the Arbiters to address any requests to be heard regarding that preliminary recommendation by attorneys that sought common benefit fees and to make a final recommendation to the Court; and (5) provide for the Court to make the final determination of an

approved distribution of any common benefit funds. No distributions shall be made from the Contingency Fee Fund or the Common Benefit Fund except through the process established by this Order and by the Arbiters pursuant to this Order.

All payments into the Fund, and any interest thereon, will be held by the Fund until disbursed by the Arbiters or the Court, or by the Trustee/Administrator acting under the Court's supervision, in accordance with the terms of the Settlement Agreement and any escrow or trust agreement governing the Fund. No parties or their counsel, including the Participating Subdivisions and their counsel, shall be considered to be in constructive receipt, as determined under federal income tax principles, of any amounts held by the Fund.

The Fund shall be structured and operated in a manner so that it qualifies as a "qualified settlement fund" as described in Treasury Regulations Section 1.468B-1, and shall remain subject to the continuing jurisdiction of this Court. The Contingency Fee Fund and the Common Benefit Fund for the Settling Defendant shall be established as sub-funds of the Fund that together constitute a single qualified settlement fund for the Settling Defendant.

As requested by the movants, the Court appoints David R. Cohen to serve as Trustee/Administrator of this qualified settlement fund for purposes of Treasury Regulations Section l.468B-2(k)(3) and shall be responsible for making any necessary tax filings and payments of taxes, estimated taxes, and associated interest and penalties, if any, by the Fund. The Trustee/Administrator shall be responsible for responding to any questions from, or audits regarding such taxes by, the Internal Revenue Service or any state or local tax authority, as well as questions from the Department of Labor. The Trustee/Administrator shall also be responsible for complying with all tax information reporting and withholding requirements with respect to payments made by the Fund, as well as paying any associated interest and penalties. All such tax,

interest, and penalty payments and all expenses and costs incurred in connection with taxation of the Fund (including, without limitation, expenses of tax attorneys and accountants) shall be paid from the Fund and shall be considered administrative costs of the settlement.

With respect to work undertaken prior to the fulfillment of the conditions precedent of the Settlement Agreement, such costs shall be paid for such expenditures from the first interest generated by the Fund, or from the Fund.

No bond shall be required and the Fund shall be held under this Court's ongoing jurisdiction, at Huntington Bank, or at another financial institution to be selected by the Trustee/Administrator in his discretion and approved by the Court. All amounts deposited in the Fund shall be invested conservatively in a manner designed to assure timely availability of funds, protection of principal and avoidance of concentration risk, consistent with the limitations set forth in the Settlement Agreement.[2] Post the Effective Date of the Settlement Agreement, the services of the Trustee/Administrator and the Court-appointed Arbiters on the Fee Panel, and any advisors, vendors and services they determine to be necessary and appropriate to conduct and complete their work (including without limitation, any such services or costs incurred prior to the Effective Date), shall be paid or reimbursed from the Fund.

The Trustee/Administrator will obtain a Federal Taxpayer Identification Number for the Attorney Fee Fund upon entry of an order by this Court establishing the Fund and the Trustee/Administrator shall also take such other actions he determines to be necessary and appropriate in connection with the establishment of the Fund, including the creation of a trust to

---

[2] Sections II.E.6 of Exhibit R to the Kroger Settlement Agreement provides that Pre-Effective Date costs associated with the Cost and Expense Fund Administrator shall be paid from the "Cost Fund". Costs and expenses of the Cost Fund administrator shall be borne by the Cost fund and/or the interest earned thereon. Costs of the Attorney Fee Fund Administrator or the Fee Panel shall be paid from the interest accrued on the Attorney Fee fund or if necessary from interest accrued from prior Attorney Fee Funds.

7

serve as the legal entity that operates and administers the Fund. The Trustee/Administrator shall be authorized, upon final distribution of all monies paid into the Fund to take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

## II. Appointment of Fee Panel

The Court hereby appoints David R. Cohen, Randi S. Ellis, and Hon. David R. Herndon (ret.) to serve as arbiters on the Fee Panel (each an "Arbiter" and, collectively, the "Arbiters"), charged with the fair, equitable and reasonable allocation of awards from the Common Benefit Fund and Contingency Fee Fund pursuant to the terms and provisions of the Settlement Agreement. As stated in the Settlement Agreement, each of these individuals was appointed to serve as Arbiter under MDL Docket No. 3828.

David R. Cohen is well known to this Court, and intimately familiar with the issues of the Opioids litigation, both generally and as they relate to the claims against the Settling Defendant. He has extensive experience as a special master for federal judges in other MDLs as well, and as a mediator and arbitrator.

Randi S. Ellis has served as a court-appointed mediator, special master, or neutral in over two dozen major MDLs, class actions, and mass torts. This service to numerous courts includes the allocation of settlement proceeds among claimants, determining the reasonableness of attorneys' fees, and common benefit fund determinations.

Hon. David R. Herndon (ret.) retired recently from 27 years as a judge, including service as an MDL Transferee Judge in major MDLs and other federal complex cases that were successfully resolved through mass tort or class action settlements.

Each of these proposed Arbiters has worked with thousands of lawyers from across the country in the MDL and complex litigation context, and is thoroughly familiar with the interests and issues involved in the fair and reasonable consideration and allocation of common benefit and contingency fees.

Should any Arbiter so appointed be unwilling or unable to continue to serve, the PEC will move the court to appoint a substitute arbiter.

### III. Description of the Attorney Fee Fund Conditions and Criteria

The Court hereby directs the Fee Panel to administer the Fund in accordance with the Settlement Agreement (including without limitation the Exhibits R), the principles of transparency and equity, and the following requirements and conditions for any attorney seeking an award from the Fund:

A. Amounts disbursed from the Fund are available only to Attorneys engaged in Qualifying Representations. No Attorney may apply for or recover from the Fund any costs incurred or fees arising from representing a Non-Settling State or a Non-Participating Subdivision. Absent agreement otherwise entered between the MDL 2804 Co-Leads and the Tribal Leadership Counsel, or Order of the Court, an Attorney representing a Tribe that is a Participating Tribe in the Tribal Settlement Agreement with a Settling Defendant is eligible to participate in the Common Benefit Fund provided the Tribal Settlement contributes 7.5% of the Tribal Remediation recovery but may not seek to participate in the Subdivision Cost and Expense Fund or the Contingency Fee Fund under Exhibit R. Attorneys requesting disbursement from the Fund must disclose to the Fee Panel prior to any award from the Fund: (1) any and all attorneys' fees, including referral fees, expenses paid, promises for payment, or any other Fee Entitlement to any applicant in any opioid litigation; (2) any payment, expectation of payment, or opportunity to participate in a State Back-Stop Agreement or any other agreement regarding payment of fees; and (3) any right to payment from any other fund created under either of the Settlement Agreement or from funds paid under either of them.

B. In order to receive an award from the Fund, prior to applying for such award, an Attorney must: (1) expressly waive enforcement against every Participating Litigating Subdivision client of all Fee Entitlements (other than under State Back-Stop Agreements) arising out of or related to any or all Qualifying Representations of any Participating Litigating Subdivision (such waiver shall not preclude the Attorney from submitting such Fee Entitlements to the Fee Panel as a factor for consideration in allocating payments from the Fund or in connection with a State Back-Stop Agreement; for the avoidance of doubt, no

9

    Attorney may recover fees under Exhibit R to the Settlement Agreement unless the Attorney expressly agrees not to enforce Fee Entitlements as to each and every Participating Litigating Subdivision represented by that Attorney, but such Attorneys may participate in and receive funds from a State Back-Stop Agreement); (2) provide notice to the applicable client(s) of the waiver described in subsection (1) and an affirmation of the aforementioned waiver; (3) represent that s/he has no present intent to represent or participate in the representation of any Later Litigating Subdivision or any Releasor with respect to Released Claims against Released Entities; (4) represent that after the Reference Date s/he has not and will not engage in any advertising or solicitation related to Released Claims against Released Entities where such advertising or solicitation relates to a representation of a Subdivision eligible to be a Participating Subdivision ; (5) represent that s/he will not charge or accept any referral fees for any Released Claims brought against Released Entities by Later Litigating Subdivisions or Later Litigating States; (6) not have and must represent that s/he does not have any Fee Entitlement related to a Later Litigating Subdivision or Later Litigating State; (7) fully disclose the participation, or the anticipation of participation, in any agreement with a Settling State or Participating Subdivision concerning fees arising out of or related to the Settling Defendant's Settlement Agreement, including any fees paid or anticipated to be paid or any State Back-Stop Agreement; (8) identify for the Fee Panel whether s/he utilized state litigation work product or MDL work product, including, but not limited to, ARCOS data, document repositories, experts developed in the MDL, trial transcripts, and deposition transcripts, as well as whether s/he signed the MDL participation agreement; and (9) represent and affirm that, having exercised his/her independent judgment, s/he believes the Settlement Agreement to be fair and will make or has made best efforts to recommend the Settlement Agreement to his/her Subdivision clients in Settling States (having exercised his/her independent judgment in the best interest of each client individually before determining whether to recommend joining the settlement).

C. In order to continue receiving awards from the Fund, an attorney must provide an annual certification that he or she continues to meet the eligibility requirements spelled out above in Section IV(C), and in Exhibit R of the Settlement Agreement.

D. Attorneys applying to the Funds knowingly and expressly agree to be bound by the decisions of the Fee Panel and waive the ability to assert the lack or enforceability of the allocation reached through the procedures outlined in Exhibit R of the Settlement Agreement.

Nothing in the Agreements shall preclude an applicant from applying for compensation from multiple fee funds and cost funds. There are currently at least the following funds: the Contingency Fee Fund established under MDL Docket No. 3828, the Common Benefit Fund established under MDL Docket No. 3828 (which as to the Settling Defendant the payment obligations shall be satisfied for Participating Subdivisions by this Order), the Costs Fund

established under MDL Docket No. 3828, the Ongoing Common Benefit Order set forth in MDL Docket No. 4428, multiple State Back-Stop Agreements, and State Outside Counsel Fee Funds. It is anticipated there could be additional fee and cost funds established in the future. Applying to one or multiple fee and cost funds does not preclude an applicant from applying to additional fee and cost funds if the specific eligibility criteria are met. In applying to the funds that are overseen by the Arbiters as described herein, in an effort to provide full transparency, applicants must disclose any intent and expectation to apply to other funds even if not overseen by the Arbiters, as set forth in Exhibit R of the Settlement Agreement.

In making their determinations, the Fee Panel Arbiters are hereby charged to give consideration to the *Johnson*[3] factors, as these have been applied and interpreted by the federal courts with reference to common benefit and other court-awarded fees, as well as the following factors, which may be applied and given relative weight in the Arbiters' collective discretion:

A. the applicant's contemporaneously recorded time and labor dedicated to Qualifying Representations along with the applicant's financial commitment to such Qualifying Representations. Claimed "time" will not be automatically accepted by the Fee Panel but will be critically reviewed and given substantially more weight and consideration if such time was subject to the audit process described in any Pretrial Order(s) governing the collection of common benefit time;

B. the novelty, time, and complexity of the Qualifying Representations;

C. the skill requisite to perform legal services properly and the undesirability of the case;

D. the preclusion of other employment by the applicant due to time dedicated to Qualifying Representations;

E. the "common benefit," if any alleged to have been conferred by the applicant and whether such common benefit work product by that applicant was used by others in parallel litigations against Released Entities whether within or outside of the MDL, provided that any applicant claiming that s/he substantially benefitted cases other than those in which s/he entered an appearance as counsel must substantiate such claims by proffering factual support, such as proper supporting affidavits or other documents as determined by the Fee Panel with input from applicants for Participating Litigating Subdivisions;

---

[3] *Johnson v. Georgia Highway Express, Inc.,* 488 F. 2d 714, 717-19 (5th Cir.1974).

F.  any "common detriment," as set forth in Section II.C.4 of Exhibit R to the Settlement Agreement;

G.  any contingent fee agreements or other Fee Entitlements with Participating Subdivisions, enforcement of which, except for State Back-Stop Agreements, are waived in conjunction with the application, the nature and extent of any work for those Participating Subdivisions, whether such Participating Subdivisions actively litigated and, if so, the nature and procedural history of such case(s);

H.  the experience, reputation, and ability of the applicant;

I.  whether the applicant's clients brought claims against the Released Entities;

J.  the status of discovery in the cases primarily handled by the applicant;

K.  the nature of any work by the applicant on "bellwether" cases or cases that were similarly active in litigation;

L.  any pressure points successfully exerted by the applicant in cases against the Settling Defendant or any risk for Settling Defendant created by the applicant in cases against them;

M.  any risk for defendant created by applicants in cases against the Settling Defendant;

N.  successful and unsuccessful motion practice in cases worked on by the applicant;

O.  the date of filing of any cases filed by the applicant;

P.  obtaining consolidation of the litigation in the applicant's jurisdiction;

Q.  the number and population of entities represented by the applicant and the fees that would have been awarded under the extinguished contingent fee agreements;

R.  whether the applicants' clients brought claims against the Settling Defendant;

S.  whether the applicant has had a leadership role in the litigation, whether in state or federal court;

T.  whether the applicant has had a leadership role in any negotiations aimed at resolving the litigation;

U.  whether the applicant's cases have survived motions to dismiss;

V.  the extent to which the applicant contributed to the work product used for the common benefit of opioids litigants, including, without limitation, work on ARCOS data,

      Prescription Data Monitoring Programs, IQVIA data, depositions, document production, analysis experts, motions, briefs and pleadings, trial preparation, and trials;

W. the extent to which litigation was done prior to and contributed to completion of settlement negotiations, as distinct from litigation that was done litigating after the announcement of the Settlement Agreement, such latter litigation both being of less value and potentially resulting in a common detriment to the settlement process; and

X. any other factors that the Fee Panel finds to be appropriate to consider after input from applicants to the Attorney Fee Fund.

The Court acknowledges that the goal of the Settlement Agreement is to provide for maximum participation by the Subdivisions, maximum abatement funding for all Subdivisions nationally, and maximum peace for Released Entities. Therefore, representing a Non-Participating State, a Non-Participating Subdivision, or a Later Litigating Subdivision does not further the goal of the Settlements, should not be considered Common Benefit, and shall be considered an adverse impact on the attempt to maximize funds available to Participating Subdivisions' abatement programs. The Fee Panel shall consider this concept of "common detriment" set forth in Exhibit R of the Settlement Agreement in all of its decision making.

To the extent an applicant has already been paid or expects to be paid a fee in connection with a settlement of opioid litigation, the details of such payment must be disclosed to the Arbiters prior to the issuance of an award. Any applicant claiming that he or she substantially benefited cases other than those in which he or she entered an appearance as counsel must substantiate those claims by proffering factual support, such as proper supporting affidavits and other documents. (*See* Rubenstein, William B., "Report and Recommendation Addressing Motion for Common Benefit Fund," 4 & 4 n.5, In re: Nat'l Prescription Opiate Litig., Case: 1:17-md-02804, Doc #: 3319 (June 3, 2020).)

Other than as set forth above, fees allocated and awarded to applicants from the Funds outlined herein shall not be subject to any additional common benefit order, or other effort to tax recoveries awarded by the Fee Panel.

## IV. Description of Fund Procedures

Because it is anticipated there will be multiple firms listed on contingent fee agreements with Litigating Subdivisions, the Court directs the Fee Panel to establish procedures, with input from Attorneys for Participating Litigating Subdivisions addressing who should petition for fees from such groups and to whom the fee shall be paid and thereafter distributed to all co-counsel in accordance with applicable agreements.

The Court charges the Fee Panel to: (1) review the applications of all Attorneys seeking compensation from the Common Benefit Funds, including determining eligibility for each Attorney as set forth above in Section II.G. of Exhibit R to the Settlement Agreement; (2) reduce the Settling Defendant's payment obligations, as set forth in Section II.C.5 of Exhibit R of the Settlement Agreement, and inform the Settling Defendant and the MDL Fee Committee of all such amounts and adjust the Settling Defendant's payment obligations accordingly; and (3) using criteria set forth in Section II.E. and II.G of Exhibit R of the Settlement Agreement, allocate amounts from the Common Benefit Fund to eligible Attorneys, including payment amounts for each Payment Year.

With respect to the Contingency Fee Fund, the PEC further requests that the Court charge the Fee Panel to: (1) review the applications of all applicants seeking compensation from the Contingency Fee Fund, including determining eligibility for each Attorney as set forth in Section II.G of Exhibit R to the Settlement Agreement; (2) apply the Mathematical Model described in and attached to Exhibit R to the Settlement Agreement; and (3) use such allocations to reduce, on

14

an annual basis, the payment obligations of the Settling Defendant to the Funds as set forth in Sections II.D.3 and II.D.4 of Exhibit R to the Settlement Agreement, and distributions therefrom; and to inform the Settling Defendant and the MDL PEC of all such adjustments.

V.  **Cost and Expense Fund**

As more fully set forth in Section II of Exhibit R to the Settlement Agreement, and as summarized herein, the parties to the Settlement Agreement have agreed that the Settling Defendant will make payments as follows:

Kroger shall make a $5,000,000.00 payment on March 31, 2024 directly into the agreed-upon MDL Direct Costs Fund. The Settling Defendant made its first payment for the MDL Direct Costs Fund into escrow on March 31, 2024. This payment will be transferred from the escrow account into the Qualified Settlement Fund by March 31, 2025. The Year 2 payment for the MDL Direct Costs Fund will also be paid by the Settling Defendant on March 31, 2025 pursuant to Exhibit R of the Settlement Agreement. Kroger has agreed to make payments totaling $52,000,000 over six years into a Subdivision Cost and Expense Fund, as set forth in Exhibit R to the Settlement Agreement. Litigating Subdivisions are those subdivisions that have commenced their lawsuits as of the Initial Subdivision Participation Date, as defined in the Kroger Settlement Agreement, and are Participating Subdivisions.

The MDL Expense Fund and the Subdivision Cost and Expense Fund shall be treated as sub-funds of a qualified settlement fund (the "Cost Fund"), to be administered by the Court-appointed Cost Fund Administrator, David R. Cohen[4], who would be authorized to retain and utilize accountants, advisors and/or other professionals and vendors, as necessary and appropriate, to assist in the establishment, administration and distribution of the Cost Fund and its sub-funds,

---

[4] David R. Cohen was appointed as the Cost Fund Administrator in the prior global settlements by Order on August 12, 2021 (MDL Docket No. 3828).

pursuant to the terms of the Settlement Agreement and Exhibit R (including without limitation determining any reductions under Section II.E.4 of Exhibit R to the Settlement Agreement). All expenses of Cost Fund administration (including necessary startup expenses incurred prior to the Effective Date) shall be borne by the Cost Fund.

WHEREFORE, as set forth in detail above and consistent with the foregoing, the Court grants the Agreed Motion, and hereby:

A. Establishes the Kroger Opiate Attorney Fee Fund Trust (referred to herein as the Attorney Fee Fund) as a qualified settlement fund within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, which such QSF is comprised of sub-funds the Contingency Fee Fund and the Common Benefit Fund, as described in and pursuant to the Settlement Agreements and Exhibits R, and appoints David R. Cohen as Trustee/Administrator to oversee the Fund in accordance with ;

B. Establishes the Kroger Opiate Attorney Costs Fund Trust (referred to herein as the Cost Fund), as a qualified settlement fund within the meaning of Section 1.468B-1 et seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended, which such QSF is comprised of sub-funds the MDL Expense Fund and the Litigating Subdivision Cost Fund, as described in and pursuant to the Settlement Agreements and Exhibits R, and appoints David R, Cohen as Cost Fund Administrator;

C. Consents to take continuing jurisdiction over (i) the Attorney Fee Fund (including its sub-funds, the Common Benefit Fund and the Contingency Fee Fund), and (ii) the Cost Fund (including its sub-funds, the MDL Expense Fund and the Subdivision Cost and Expense Fund), pursuant to Treasury Regulation Section 1.468B-1 (c)(1);

D. Appoints Messrs. David R. Cohen, David R. Herndon, and Ms. Randi S. Ellis as the Fee Panel Arbiters to oversee a process for allocation and distribution of the MDL Contingency Fee Fund and the Common Benefit Fund consistent with this agreed motion and the terms of the Settlement Agreement and Exhibits R and Exhibits G thereto; and

E. Approve, contingent on the fulfillment of the conditions of the Settlement Agreement, the aforementioned payments, into the MDL Expense Fund, Cost and Expense Fund, and the Attorney Fee Fund consistent with the terms of the Settlement Agreement and Exhibit R.

This Court will enter such further Orders as may be necessary and appropriate regarding the foregoing.

It is so ORDERED.

DATED: 3/21/2025

*s/Dan Aaron Polster*
DAN AARON POLSTER
U.S. DISTRICT JUDGE

17