# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Cases | MDL No. 2804<br><br>Case No. 1:17-md-02804-DAP<br><br>Judge Dan Aaron Polster |

**THE PBMS' MEMORANDUM OF LAW SUPPORTING THEIR MOTION FOR RECUSAL AND FOR RENEWED RECONSIDERATION OF THEIR MOTION FOR DISCLOSURE OF ALL *EX PARTE* COMMUNICATIONS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 6

ARGUMENT ............................................................................................................................ 7

    I.    UNREBUTTED EVIDENCE REQUIRES DISQUALIFICATION UNDER § 455(a) ............................................................................................................... 7

    II.    DISQUALIFICATION IS ALSO REQUIRED UNDER § 455(b) ....................... 12

    III.    THE COURT SHOULD ORDER THE DISCLOSURE OF ALL EX PARTE COMMUNICATIONS IN THE MDL ................................................................. 13

CONCLUSION ....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. Sheppard*,
　856 F.2d 741 (6th Cir. 1988) ..................................................................................................1

*ControlSoft, Inc. v. Dow Chem. Co.*,
　2024 WL 5400258 (N.D. Ohio July 18, 2024) ....................................................................2, 8

*Edgar v. K.L.*,
　93 F.3d 256 (7th Cir. 1996) ..............................................................................................11, 13

*Fla. Bar v. Kane*,
　202 So. 3d 11 (Fla. 2016)......................................................................................................10

*Fla. Bar v. Rousso*,
　117 So. 3d 756 (Fla. 2013)....................................................................................................10

*In re Aetna Cas. & Sur. Co.*,
　919 F.2d 1136 (6th Cir. 1990) ...........................................................................................6, 12

*In re Kensington Int'l, Ltd.*,
　368 F.3d 289 (3d Cir. 2004)........................................................................................8, 11, 12

*In re Sch. Asbestos Litig.*,
　977 F.2d 764 (3d Cir. 1992)...............................................................................................8, 12

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisc., Inc.*, 991 F.2d 1249 (7th Cir. 1993) ....................................................................................7, 12

*Liljeberg v. Health Servs. Acquisition Corp.*,
　486 U.S. 847 (1988)............................................................................................................1, 6

*Roberts v. Bailar*,
　625 F.2d 125 (6th Cir. 1980) .......................................................................................6, 7, 12

*United States v. Lanier*,
　748 F. App'x 674 (6th Cir. 2018) ......................................................................................7, 13

*United States v. Minsky*,
　963 F.2d 870 (6th Cir. 1992) .................................................................................................8

**RULES**

ABA Model Code of Judicial Conduct, Rule 2.9 ...........................................................................7

Code of Conduct for United States Judges, Canon 3(A)(4)............................................................7

**STATUTES**

28 U.S.C. § 455 .................................................................................................................2

28 U.S.C. § 455(a) .............................................................................................1, 6, 7, 11, 12

28 U.S.C. § 455(b)(1) ................................................................................................1, 7, 12, 13

**INTRODUCTION**

A federal judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. §§ 455(a), 455(b)(1). Those provisions protect the fundamental "requirement of neutrality in adjudicative proceedings" (*Anderson v. Sheppard*, 856 F.2d 741, 746 (6th Cir. 1988)) and can require disqualification "even though no actual partiality exists" because "justice must satisfy the appearance of justice." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860, 864 (1988).

Given recent events, the PBMs have no choice but to seek Judge Polster's recusal. On *at least* five separate occasions over ten months, Michael Kahn, an attorney with forty years' experience, told existing and prospective clients that Plaintiffs' co-liaison counsel Peter Weinberger regularly communicates *ex parte* with this Court, whom Mr. Kahn described as "a tremendous plaintiff-oriented judge" intent on compelling settlements from Defendants through "enormous pressure." According to Mr. Kahn, Mr. Weinberger communicates *ex parte* with the Court to get "inside information." This Court characterized Mr. Kahn's statements as "very troublesome" because they "cast doubt on the integrity of the Court." ECF No. 5986 at 6:2–15. The Court also found that Mr. Kahn's explanation *now*—that he "misspoke" when he repeatedly made those statements—is not credible. ECF No. 6028. Neither Mr. Weinberger nor anyone else submitted evidence contradicting Mr. Kahn's statements, so Mr. Kahn's statements stand unrebutted.

But Mr. Kahn's statements are not the only thing requiring recusal. The events that have unfolded since the PBMs brought the statements to light have only further undermined the appearance of impartiality. Since first learning about the statements, the Court has twice summarily denied the PBMs' motion for disclosure of *ex parte* communications in the MDL—

1

communications that, under the law, *should not even exist*. The Court also twice denied the PBMs' motions to have Mr. Weinberger face questioning under oath about any *ex parte* communications. And the Court denied the PBMs' request to have a disinterested judge preside over an evidentiary hearing about these issues—a hearing at which the Court led the questioning of Mr. Kahn and allowed Mr. Weinberger (a witness with firsthand knowledge) to question Mr. Kahn. None of these actions refute the existence of *ex parte* communications. Instead, taken together, these actions have prevented a full inquiry into the existence and scope of *ex parte* communications, which would increase a disinterested observer's doubts about the Court's impartiality.

Mr. Kahn's statements and the events over the last five weeks require disqualification under a straightforward application of 28 U.S.C. § 455. On these facts, any reasonable observer would question the Court's impartiality. Similar concerns recently compelled this Court to disqualify itself in a separate matter. In that case, the Court explained that disqualification was required because a "disinterested observer [might] be concerned that something the Court learned from [a communication it should not have been sent] might affect the Court's [future] rulings," causing the case to "proceed under a cloud." *ControlSoft, Inc. v. Dow Chem. Co.*, 2024 WL 5400258, at *3 (N.D. Ohio July 18, 2024) (comma omitted). An even more ominous cloud now overshadows this MDL, requiring disqualification.

## **BACKGROUND**

As part of an ongoing public-records investigation, the PBMs discovered that Mr. Kahn, a plaintiffs' attorney based in Melbourne, Florida, told at least five different Florida municipalities that this Court regularly engages in *ex parte* communications with Plaintiffs' co-liaison counsel Peter Weinberger. Mr. Kahn also characterized Judge Polster as a "tremendous plaintiff-oriented judge" intent on compelling defendants to settle through "enormous pressure."

2

On January 3, 2019, Mr. Kahn spoke to the City of Palm Bay, Florida, on behalf of his consortium of lawyers (including Mr. Weinberger) that the City had retained for opioid litigation. Mr. Kahn told the City that it was well positioned to litigate claims in the MDL because Mr. Weinberger has "total access to the judge" and can communicate "singly" with the Court "on behalf of his clients." Exhibit A (**Jan. 3, 2019, Palm Bay Tr.**) at 5:6–24. A month later, while pitching his consortium's legal services to the City of Oviedo, Florida, Mr. Kahn boasted that Mr. Weinberger "talks to the judge every day." Exhibit B (**Feb. 4, 2019, Oviedo Tr.**) at 15:4–14. And yet another month later, Mr. Kahn bragged to another prospective client—the City of Fort Pierce, Florida—that Mr. Weinberger was one of three Plaintiffs' lawyers who could "pick up the phone and talk to the judge" as often as "every day." Exhibit C (**Mar. 4, 2019, Fort Pierce Tr.**) at 17:5–16.

The statements continued. On June 3, 2019, Mr. Kahn told the City of Deltona, Florida (yet another prospective client), that Mr. Weinberger "is able to pick up the phone literally, and does, every day to talk with the judge about pushing this litigation along." Exhibit D (**June 3, 2019, Deltona Tr.**) at 8:6–9:2. A week later, when pitching his consortium's legal services to Clay County, Florida, Mr. Kahn said that Mr. Weinberger "is able to talk [to] the judge on a daily basis" and provides Plaintiffs with "inside information." Exhibit E (**June 11, 2019, Clay County Tr.**) at 4:11–25.

Mr. Kahn described Mr. Weinberger's communications with the Court as "ex parte," telling his audience that they were "unusual" and of the sort that are "generally disallowed" in litigation. *See* Jan. 3, 2019, Palm Bay Tr. at 5:6–24; Feb. 4, 2019, Oviedo Tr. at 15:4–14; Mar. 4, 2019, Fort Pierce Tr. at 17:5–16; June 3, 2019, Deltona Tr. at 8:6–9:2; June 11, 2019, Clay County Tr. at 4:11–25. He also told the municipalities that Judge Polster is "a tremendous plaintiff-oriented judge" (June 3, 2019, Deltona Tr. at 3:20–4:6) who is using his "great power and specific intent to try to

3

compel settlement[s] from the defendants" through "enormous pressure." Exhibit F (**Oct. 3, 2019, Palm Bay Tr.**) at 8:12–13, 8:21.[1]

On February 24, the PBMs brought those public statements to the Court's attention. They moved for disclosure of all *ex parte* communications between any plaintiffs' counsel and the Court, any Special Masters, or their staff. ECF No. 5968. During an unrelated hearing the following day, the Court denied the PBMs' motion. ECF No. 5986 at 6:4–15. But "[b]ecause [Mr. Kahn's] comments cast aspersions on the integrity of the Court, certain counsel for the Plaintiffs, and the MDL in general," the Court set an evidentiary hearing for March 12, 2025, and directed Mr. Kahn to appear for questioning. ECF No. 5969. The PBMs moved the Court to reconsider its order denying disclosure of all *ex parte* communications, for an order directing Mr. Weinberger to testify under oath, and for appointment of a neutral judicial officer to preside over the March 12 hearing. ECF No. 5999. The Court again denied that motion with minimal explanation, calling the PBMs' request for disclosure of *ex parte* communications "extraordinary." ECF No. 6001 at 1–2.[2]

During the March 12 evidentiary hearing, the Court led the questioning of Mr. Kahn. Under the Court's questioning, Mr. Kahn attempted to backtrack, claiming that he "misspoke" and that

---

[1] Each of Mr. Kahn's statements described above was videorecorded and is publicly available online. *See* https://tinyurl.com/PalmBay-1-3-19 (Jan. 3, 2019, Palm Bay meeting); https://tinyurl.com/Oviedo-2-4-19 (Feb. 4, 2019, Oviedo meeting); https://tinyurl.com/FortPierce-3-4-19 (Mar. 4, 2019, Fort Pierce meeting); https://tinyurl.com/Deltona-6-3-19 (June 3, 2019, Deltona meeting); https://tinyurl.com/Clay-6-11-19 (June 11, 2019, Clay County meeting); https://tinyurl.com/PalmBay-10-3-19 (Oct. 3, 2019, Palm Bay meeting). The statements to four of the Florida municipalities were described in the PBMs' February 24 motion for disclosure of *ex parte* communications. ECF No. 5968. After filing that motion, the PBMs unearthed a fifth presentation to the City of Fort Pierce, Florida. During the evidentiary hearing on these issues, the PBMs entered into the record as Exhibit 3 a video of Mr. Kahn's Fort Pierce presentation. *See* ECF No. 6053-3. Certified transcripts of the videos depicting Mr. Kahn's statements to all five municipalities are attached as exhibits to this motion.

[2] Of course, given Mr. Kahn's statements, the PBMs' requests were not "extraordinary" at all. They were seeking disclosure of *ex parte* communications that should not exist in the first place, and if they do, the PBMs would be entitled to them.

4

he "should have used another word" when advising prospective clients that Mr. Weinberger regularly communicates *ex parte* with the Court. *See* ECF No. 6037 (**Kahn Hr'g Tr.**) at 11:4–15; 12:15–18. The Court rightly recognized that Mr. Kahn was trying to convince prospective clients that "this Attorney Kahn and his group has a real in with the Court. This is sort of a slam dunk, and we better sign up with him." *Id.* at 12:19–13:19; *see also id.* at 15:18–16:2. Mr. Kahn testified that he "meant" to convey that liaison counsel could arrange to speak with the Court with the other side's liaison counsel also present (*id.* at 14:7–15:3), and that other plaintiffs' attorneys "were the people who the words 'ex parte' applied to." *Id.* at 16:11–22. But as the Court recognized, even a law student would know that a communication involving both sides is "not an ex parte communication." *Id.* at 15:9–16:2, 16:23–17:3, 17:22–25. In the end, Mr. Kahn acknowledged that he had a basis for his comments, testifying that he learned "from someone in [his] group or several people in [his] group" that Mr. Weinberger can and does speak to the judge daily. *Id.* at 55:16–23. Mr. Kahn's meeting with Mr. Weinberger and others prior to the hearing regarding these issues only adds to the suspicion and undermines the credibility of his retractions. *Id.* at 63:18–65:18.

When the Court questioned Mr. Kahn regarding his characterizations of the Court as a "tremendous plaintiff-oriented judge" intent on "compel[ling] settlement," Mr. Kahn again gave an implausible explanation, claiming that he meant to say that Judge Polster was "encouraging" settlement, rather than "compelling" settlement. *Id.* at 18:2–21:5. The Court rejected Mr. Kahn's attempt to cast his repeated statements as a slip of the tongue because "[l]awyers choose their words carefully. That's what we are supposed to do, right?" *Id.* at 21:6–7.

Despite testifying that he "misspoke," Mr. Kahn also testified that he "[a]bsolutely did not" mislead his clients. *Id.* at 76:11–15. Mr. Kahn has not informed any of his clients that his statements about this Court were untrue, nor has he made any effort to correct his statements in

5

the public record. *Id.* at 66:1–67:15. He testified that he regrets nothing about his statements except that they "troubled" the Court. *Id.* at 78:10–22.

At the close of the March 12 hearing, the Court denied the PBMs' renewed request to question Mr. Weinberger under oath. *Id.* at 83:14–25. In its later order sanctioning Mr. Kahn, the Court opined that it was "hard to believe" Mr. Kahn's explanation that he "misspoke," given his decades of experience practicing law, and the Court noted that it "has never heard an attorney use the term 'ex parte' in the way Mr. Kahn testified he intended it to mean." ECF No. 6028 at 2. The Court also found that "any rookie lawyer, let alone a seasoned one, knows it would be improper for any judge to pressure either side to settle a case, and that there is all the difference in the world between 'pressure' and 'encourage.'" *Id.* And yet despite discrediting Mr. Kahn's testimony—the only record evidence responding to Mr. Kahn's original statements—the Court deemed the statements "unsubstantiated." *Id.* at 1–2. The Court assessed a $100,000 sanction against Mr. Kahn and took no further action. *Id.* at 4.

At no point since February 24, the day that the PBMs brought Mr. Kahn's statements to the Court's and Mr. Weinberger's attention, has anyone in a position to deny *ex parte* communications done so on the record.

## **LEGAL STANDARD**

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible." *Liljeberg*, 486 U.S. at 865. "[R]ecusal is required when a reasonable person would harbor doubts about the judge's impartiality." *In re Aetna Cas. & Sur. Co.*, 919 F.2d 1136, 1143 (6th Cir. 1990). "[A] judge's introspective estimate of his own ability impartially to hear a case" is not the test. *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980).

6

Rather, it is an "objective" standard: "It asks what a reasonable person knowing all the relevant facts would think about the impartiality of the judge." *Id.* "Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself from the trial." *Id.*

A judge "shall" also disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). When a party challenges the judge's personal bias or prejudice, "the question is whether a reasonable person would be convinced the judge was biased." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisc., Inc.*, 991 F.2d 1249, 1255 (7th Cir. 1993).

## ARGUMENT

**I.     UNREBUTTED EVIDENCE REQUIRES DISQUALIFICATION UNDER § 455(a)**

With limited exceptions that do not apply here,[3] the governing ethical rules and canons of judicial conduct prohibit the Court from communicating *ex parte* with litigants and require prompt disclosure of any *ex parte* communications. Code of Conduct for United States Judges, Canon 3(A)(4); ABA Model Code of Judicial Conduct, Rule 2.9; *United States v. Lanier*, 748 F. App'x 674, 678 (6th Cir. 2018) ("[E]x parte communications should be avoided. If any such communications do occur . . . the district court should endeavor to disclose, as appropriate, the ex parte communication to the parties as soon as possible."). As this Court has rightly pointed out, the prohibition against *ex parte* communications is a fundamental principle of our judicial

---

[3] A court may, "with the consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters." Code of Conduct for United States Judges, Canon 3(A)(4)(d). The PBMs have never consented to *ex parte* communications of any type, so that exception does not apply. Regardless, "daily" phone calls with the Court about "pushing this litigation along" far exceed any potential mediation exception.

7

system—so evident that "even a third-year law student knows what '*ex parte*' means." Kahn Hr'g Tr. at 17:22–18:1.

*Ex parte* communications are "a gross breach of the appearance of justice." *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992); *see also In re Kensington Int'l, Ltd.*, 368 F.3d 289, 309, 312 (3d Cir. 2004) (disqualifying the district judge because *ex parte* communications are "anathema in our system of justice"). They cast doubt on all proceedings and decisions—even those that are otherwise proper—because of reasonable suspicions that the judge "had already concluded th[e] issue[s]" based on *ex parte* communications. *In re Sch. Asbestos Litig.*, 977 F.2d 764, 782, 785 (3d Cir. 1992) (disqualifying an MDL judge and explaining that *ex parte* communications can skew public perception of a court's decisions in multiple, unavoidable ways). This Court recognized as much in an order disqualifying itself last year after it "briefly scanned" an "unsolicited extrajudicial communication to the Court" sent by plaintiffs' counsel without the defendant's consent. *ControlSoft*, 2024 WL 5400258, at *3–4.[4] It was "reasonable" in that situation "for [a defendant], and for the hypothetical disinterested observer, to be concerned that something the Court learned from [the communication] might affect the Court's rulings." *Id.*

The record here is far worse. Mr. Kahn appeared in numerous public meetings spread over at least ten months—meetings that were recorded and posted on the internet and attended by citizens, other attorneys (both affiliated and unaffiliated with his litigation group), and (in at least one instance) a former judge—and told existing and prospective clients that Mr. Weinberger can

---

[4] Earlier in this MDL, Joanne Cicala, one of plaintiffs' counsel, sent this Court a submission *ex parte* and even labeled it "*ex parte*." ECF No. 5012. In that submission, Ms. Cicala made arguments about the Plaintiffs' claims against the PBMs and urged the Court to establish a PBM bellwether track. *Id.* The PBMs learned about that submission only when Ms. Cicala attached it to a status report two months later. *Id.* In denying the PBMs' motion to prohibit *ex parte* communications, the Court stated that it had not read Ms. Cicala's submission. ECF No. 5015 at 3.

8

*and does* talk to "the judge every day," *ex parte*, on behalf of his clients "about pushing this litigation along." June 3, 2019, Deltona Tr. at 8:16–9:2; Jan. 3, 2019, Palm Bay Tr. at 5:6–24; Feb. 4, 2019, Oviedo Tr. at 15:4–14; Mar. 4, 2019, Fort Pierce Tr. at 17:5–16; June 11, 2019, Clay County Tr. at 4:11–25. Mr. Kahn testified under oath that he learned that information from his litigation group, of which Mr. Weinberger is a prominent member, and that he believed his statements to be true at the time he made them. Kahn Hr'g Tr. at 44:11–24; 55:5–56:1; 56:6–58:3. Furthermore, he informed these municipalities that the Court is "plaintiff-oriented" and was "compel[ling]" settlements from the defendants in this MDL. June 3, 2019, Deltona Tr. at 3:23–4:6; Oct. 3, 2019, Palm Bay Tr. at 8:10–8:13. Crucially, Mr. Kahn has not retracted his statements, nor does he believe they were misleading. Kahn Hr'g Tr. at 67:10–15; 76:11–20.

Although Mr. Kahn testified at the March 12 hearing that he "misspoke," that testimony does not undermine his multiple previous statements that Mr. Weinberger regularly communicates *ex parte* with the Court. As this Court found, Mr. Kahn's explanation of what he meant by "*ex parte*" is not credible. ECF No. 6028 at 2. Nor is it credible that Mr. Kahn "misspoke" in precisely the same way, again and again, over months in numerous official proceedings. Kahn Hr'g Tr. at 71:16–19. Mr. Kahn's recent explanation is further belied by his failure to correct the record with his municipal clients. Kahn Hr'g Tr. at 66:1–3. Misleading clients is an ethical violation in Florida. *Fla. Bar v. Kane*, 202 So. 3d 11, 23–24 (Fla. 2016); *Fla. Bar v. Rousso*, 117 So. 3d 756, 767 (Fla. 2013). If Mr. Kahn believed that he "misspoke" or incorrectly used words that created false impressions about this MDL, he would have corrected the public record. He did not because he does not believe that he spoke inaccurately; on the contrary, he testified on March 12 that "the only thing" he regrets is that the Court was troubled by his statements. Kahn Hr'g Tr. at 78:20–22.

9

In the face of that undisputed evidence, how could a reasonable observer *not* question the Court's impartiality? This Court has already acknowledged that Mr. Kahn's statements "cast doubt on the integrity of the Court." ECF No. 5986 at 6:4–15; *see also* ECF No. 5969 (ordering Mr. Kahn to appear because his comments "cast aspersions on the integrity of the Court, certain counsel for the Plaintiffs, and the MDL in general"); ECF No. 6028 at 3 (sanctioning Mr. Kahn in the amount of $100,000 because his statements "improperly cast aspersion upon the integrity of the Court, Mr. Weinberger, and the entire process of the MDL"). While questioning Mr. Kahn during the March 12 hearing, the Court asked Mr. Kahn to explain "how a lawyer with [his] experience would have made this claim repeatedly in public to a bunch of, you know, a bunch of lay people who may think well, you know, we don't do it this way in Florida." Kahn Hr'g Tr. at 13:10–14. In the Court's view, Mr. Kahn's statements would have made those lay observers think there is "something unusual" about an MDL and that "this Attorney Kahn and his group has a real in with the Court. *This is sort of a slam dunk*, and we better sign up with him." *Id.* at 13:15–19 (emphasis added). As the Court rightly noted, "anyone who was there and heard those statements . . . would have said 'hey, our guy, Mr. Weinberger, he can contact the Court on his own anytime he wants, multiple times a day, and that's what he is doing, so you better sign up with our group.'" *Id.* at 15:22–16:2. The Court also acknowledged that it "would be a hundred percent improper for any Judge" to use its "great power and specific intent to try to compel settlements from Defendants." *Id.* at 20:13–19. Yet that is precisely what Mr. Kahn told his prospective clients. Feb. 4, 2019, Oviedo Tr. at 7:22–23; Oct. 3, 2019, Palm Bay Tr. at 8:10–8:13. No other credible explanation for Mr. Kahn's statements has been offered.

There is no question that Mr. Kahn's statements have undermined the integrity of this MDL. But the response to Mr. Kahn's statements has only further undermined the appearance of

10

impartiality. The PBMs have twice requested disclosure of all *ex parte* communications, and each time, the Court has denied those requests within a day of their filing. ECF No. 5986 at 6:2–9; ECF No. 6001. The Court also twice refused to have Mr. Weinberger testify under oath about whether he had *ex parte* communications with the Court. The Court also declined to have a different judge preside over the March 12 hearing. ECF No. 6001 at 2. Those actions have hamstrung the PBMs in their efforts to get to the bottom of things and have left unanswered serious questions about the impartiality of the process. Despite five weeks passing since the PBMs first brought Mr. Kahn's statements to light, no one in a position to deny *ex parte* communications has done so on the record. And even as no one has addressed the fundamental question of whether *ex parte* communications have happened, the process that the Court adopted has prevented the PBMs from investigating the matter further.

In view of those facts, a reasonable observer would question the Court's impartiality and would perceive the response to Mr. Kahn's statements as having obscured the truth of what occurred. That alone requires recusal. *See Edgar v. K.L.*, 93 F.3d 256, 258 (7th Cir. 1996) (disqualifying a judge and explaining that observers would not be able to weigh the damage of *ex parte* communications because the "judge has blocked discovery from other participants and has declined to state on the record his own memories of what happened"); *see also In re Kensington,* 368 F.3d at 310, 312 (disqualifying a judge under § 455(a) based on *ex parte* communications and explaining that when "judges engage in *ex parte* conversations with the parties or outside experts, the adversary process is not allowed to function properly" and holding that a "reasonable person would be troubled" by the *ex parte* communications).

Ultimately, it does not matter whether any *ex parte* communications occurred or whether this Court is a "tremendous plaintiff-oriented judge": "[A] reasonable person would harbor doubts

11

about the judge's impartiality." *In re Aetna*, 919 F.2d at 1143; *see also Roberts*, 625 F.2d at 129–30 (expressing "no opinion regarding the actual impartiality" of the judge but holding that he had a duty to recuse himself under § 455(a) because his statements about a party eliminated "the objective appearance of impartiality"); *In re Sch. Asbestos Litig.*, 977 F.2d at 782 (disqualification of an MDL judge required following an *ex parte* conference because "regardless of [the judge's] actual impartiality, a reasonable person might perceive bias to exist"). Here, any reasonable person would question this Court's impartiality after learning of Mr. Kahn's statements and considering what has unfolded over the last five weeks. As the Court has already noted, Mr. Kahn's statements created the appearance of a "slam dunk" for the plaintiffs in this MDL, so disqualification is required under § 455(a).

## II. DISQUALIFICATION IS ALSO REQUIRED UNDER § 455(b)

Although the Court doesn't need to address the issue if it recuses under § 455(a), Mr. Kahn's unrebutted testimony also necessitates disqualification under 28 U.S.C. § 455(b)(1) due to personal bias or prejudice concerning a party. *Lac Du Flambeau*, 991 F.2d at 1255. By definition, *ex parte* communications constitute favoritism of one side—the side permitted to communicate with the Court without the other side present. *See In re Kensington*, 368 F.3d at 310 (identifying the "evils of *ex parte* communications" to include bias and prejudice). The record here demonstrates that the purpose of these *ex parte* communications was to gain "inside information" that Mr. Weinberger's and Mr. Kahn's clients could use in this MDL. Kahn Hr'g Tr. at 52:5–53:19. Mr. Kahn believed that Mr. Weinberger's "privileged" connection with the Court gave his group an unfair advantage, an assertion he promoted repeatedly to prospective clients. Kahn Hr'g Tr. at 45:3–5, 52:15–53:19.

Information flowing in the opposite direction—from Mr. Weinberger to the Court— likewise constitutes disqualifying "personal knowledge of disputed evidentiary facts." 28 U.S.C.

12

§ 455(b)(1); *Edgar*, 93 F.3d at 259 (disqualifying a judge under § 455(b)(1) because of his *ex parte* communications with experts). The Court has denied the PBMs' prior motions to obtain those *ex parte* communications. And Mr. Weinberger—who could easily deny the existence of *ex parte* communications under oath if they did not exist—has not testified or submitted any evidence to clarify or refute the existence of *ex parte* communications despite having the opportunity to do so. Nor has the Court mandated such testimony or evidence. *Id.* at 258. "Mandatory disqualification under § 455(b)(1) follows." *Id.* at 259.

## III. THE COURT SHOULD ORDER THE DISCLOSURE OF ALL EX PARTE COMMUNICATIONS IN THE MDL

Separate from recusal, the PBMs renew their request for reconsideration of the Court's order denying their motion for disclosure of all *ex parte* communications in the MDL. As explained above, the unrefuted evidence shows that someone gave Mr. Kahn the reasonable belief that *ex parte* communications between the Court and plaintiffs' counsel are commonplace in this MDL. Kahn Hr'g Tr. at 55:16–56:1. The PBMs are entitled to discover those communications, including call logs of any *ex parte* calls. *Cf.* June 3, 2019, Deltona Tr. at 8:6–9:2 (Mr. Weinberger "is able to pick up the phone literally, and does, every day to talk with the judge about pushing this litigation along"); *see Lanier*, 748 F. App'x at 678 ("[E]x parte communications should be avoided. If any such communications do occur . . . the district court should endeavor to disclose, as appropriate, the ex parte communication to the parties as soon as possible."). Discovery could reveal the extent of the unfair advantage granted and may warrant further forms of relief, including sanctions. The PBMs must understand the full scope of any *ex parte* communications and the damage they have caused to ensure the integrity of the litigation process.

13

**CONCLUSION**

For these reasons, the Court should recuse itself and order disclosure of all *ex parte* communications between any party or counsel and the Court, Special Masters, or their staff.

Respectfully submitted this 2nd day of April, 2025.

| | |
|---|---|
| */s/ Brian D. Boone* | */s/ Jonathan G. Cooper* |
| Brian D. Boone | Michael J. Lyle |
| Matthew P. Hooker | Eric C. Lyttle |
| William W. Metcalf | Jonathan G. Cooper |
| **ALSTON & BIRD LLP** | **QUINN EMANUEL URQUHART &** |
| 1120 South Tryon Street, Suite 300 | **SULLIVAN, LLP** |
| Charlotte, NC 28203 | 1300 I St. NW, Suite 900 |
| T: (704) 444-1000 | Washington, DC 20005 |
| brian.boone@alston.com | T: (202) 538-8000 |
| matthew.hooker@alston.com | mikelyle@quinnemanuel.com |
| will.metcalf@alston.com | ericlyttle@quinnemanuel.com |
| | jonathancooper@quinnemanuel.com |
| Andrew Hatchett | |
| **ALSTON & BIRD LLP** | Tara MacNeill |
| 1201 W. Peachtree St. NW, Suite 4900 | **QUINN EMANUEL URQUHART &** |
| Atlanta, GA 30309 | **SULLIVAN, LLP** |
| T: (404) 881-7000 | 2601 South Bayshore Dr, Suite 1550 |
| andrew.hatchett@alston.com | Miami, FL 33133 |
| | T: (305) 402-4880 |
| *Attorneys for UnitedHealth Group Incorporated; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; and Optum Health Networks, Inc.* | taramacneill@quinnemanuel.com |
| | *Attorneys for Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc. (formerly Express Scripts Holding Company); and Express Scripts Specialty Distribution Services, Inc.* |