**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>*This document relates to:*<br>All Actions | MDL 2804<br>Case No. 17-md-2804<br>Hon. Dan Aaron Polster |

## THE PEC'S OPPOSITION TO THE PBMs' MOTION FOR RECUSAL AND FOR RENEWED RECONSIDERATION OF THEIR MOTION FOR DISCLOSURE OF ALL *EX PARTE* COMMUNICATIONS

### INTRODUCTION

With their motion to recuse, the PBMs seek to elevate discredited hearsay and innuendo into an objectively reasonable basis to question this Court's impartiality. But unsubstantiated suspicion and rumor are not and have never been sufficient to disqualify a judge, nor should they be. The record in this case is clear: Michael Kahn testified that he had no basis for the statements that he made six years ago about *ex parte* communications with the Court and that he had no knowledge that any such communications had ever occurred. The Court itself described Mr. Kahn's 2019 statements as "fundamentally untrue." Doc. 5974 at 6:10. And four years after Mr. Kahn made his baseless statements, the Court unequivocally stated: "There has not been, nor will there be any further substantive *ex parte* communications from either side." Doc. 5015 at 3. Thus, contrary to the PBMs' assertions, Mr. Kahn's statements have been *thrice* rebutted: once by Mr. Kahn in court and twice by the Court itself. No recusal is called for and no further inquiry is warranted.

1

The PBMs also suggest that the mere fact that Mr. Kahn made these statements publicly, and that he might have been believed by those who heard them, is, in and of itself, sufficient to create a reasonable basis to question the Court's impartiality.  If that were legal standard, it would put the operation of the judicial system into the hands of liars and scoundrels, who can spread rumors and then claim that the existence of the rumors calls into question the integrity of the Court.  But the law requires an actual factual objective basis to question the Court's impartiality, not unsubstantiated hearsay.  Mr. Kahn's testimony in open court, coupled with the Court's clear assertions that no *ex parte* communications occurred and that Mr. Kahn's statements were untrue demonstrate that no such factual basis exists.  The PBMs' attempt to turn the absence of even a shred of credible evidence that any of the alleged *ex parte* communications ever took place into a basis for recusal and/or a further fishing expedition should be rejected and their motion should be denied in its entirety.

## STATEMENT OF FACTS

Six years ago, in 2019, in an effort to convince certain municipalities in Florida to engage his consortium of lawyers to bring lawsuits in this MDL, Florida attorney Michael Kahn told the potential clients that liaison counsel, Peter Weinberger (who was part of the consortium), had multiple *ex parte* communications with this Court and that this Court was a "plaintiff-friendly" judge who would coerce the parties to settle. Summoned by the Court and questioned under oath about these statements on March 12, 2025, Mr. Kahn testified that he had no basis for making them and no reason to believe they were

true – no one ever told him that Mr. Weinberger spoke to the Court without the defendants present; he had not himself participated in any *ex parte* communications; and he had no actual knowledge of any such communications. *See* Doc. 6028 at p. 1; *see also* Tr. at 11:13-14 ("I don't know of any *ex parte* communications."); Tr. at 11:18-19 ("I know of no *ex parte* communications that were made…"); Tr. at 11:20-12:1 ("I don't have any evidence of any *ex parte* communications."); Tr. at 82:22-83:8. Mr. Kahn also testified that he should not have used the term "plaintiff-oriented" and did not mean that the Court would favor the plaintiffs, *see* Tr. 18:2-20:9, and that no one told him that the Court was using improper pressure to compel defendants to settle and he himself had no knowledge of that. Tr. at 21:16–23. Mr. Kahn confirmed that Mr. Weinberger was not present when Mr. Kahn made these any of these statements, *see* Tr. 60:13-19, and there is no evidence that Mr. Weinberger – or indeed anyone on the PEC – was aware of them until Defendants unearthed them and filed them with the Court. Tr. 81:25-82:12.

Approximately four years after Mr. Kahn made his statements, Joanne Cicala, counsel for certain plaintiffs in this MDL, but not part of the PEC, sent a communication to Special Master Cohen and copied the Court, but did not copy the other side.[1] The PBMs concede that the Court did not read that submission, which was, in any event, ultimately disclosed to the Defendants. *See* Doc. 6060-1 at 8 n.4; Doc. 5015 at 3. When Defendants used the incident to argue for reconsideration of one of the Court's orders, the Court

---

[1] As discussed below, *ex parte* communications with the Special Master are expressly permitted.

3221853.3

explained that the communication had had no effect on the order, that the mistaken communication was "a singular, aberrant incident," and that "[t]here has not been, nor will there be any further substantive *ex parte* communications from either side." Doc. 5015 at 3. Thus, as of April 2023, although Mr. Kahn's 2019 statements had not yet come to light, the Court had already assured the parties that there had been and would be no substantive *ex parte* communications with the Court.[2] (The PBMs do not, of course, suggest that Mr. Kahn could have been referring to *ex parte* communications that occurred after April of 2023.)

Despite this explicit statement from the Court, when, in 2025, the PBMSs learned of Mr. Kahn's 2019 statements, their reaction was to question the Court's integrity and seek extensive discovery into communications the Court had already stated did not exist. *See* Doc. 5968. The Court immediately ordered Mr. Kahn to appear at a hearing to be held on March 12, 2025. *See* Doc. 5969. The Court otherwise denied the PBMs' request for discovery. Doc. 5974 at 6:2-7:3. The PBMs sought reconsideration of that denial, which the Court also denied, explaining

> Mr. Kahn's public statements are unsupported hearsay. The PBMs have certainly demonstrated a need to question Mr. Kahn under oath regarding his statements, and the Court has scheduled a hearing to do so on March 12, 2024. But Mr. Kahn's bald, unsworn statements are an insufficient basis to enter the sweeping order the PBMs seek. If Mr. Kahn's testimony demonstrates a basis for questioning any additional witnesses, or to order the production of any documents or communications, the Court will take appropriate action at that time.

---

[2] The Court has engaged in *ex parte* discussions with respect to settlement, but only with the consent of all sides to the settlement discussion.

4

3221853.3

*See* Doc. 6001 at 1-2.[3] The Court thus left open the possibility that further discovery might be warranted if Mr. Kahn's testimony established a basis for his statements. But that did not occur.

At the hearing, Mr. Kahn was questioned by the Court, by counsel for each of the PBM Defendants, by Mr. Weinberger, and by Mr. Kahn's own counsel. His testimony was consistent throughout: he knew of no communications between Mr. Weinberger -- or anybody else on the plaintiffs' side -- outside the presence of the defendants, and no one had ever told him that such communications had ever occurred. (Mr. Kahn insisted that he meant something different in his use of the term "*ex* parte." *See* Tr. 11:3-10; *see also* Tr. at 9-17. At the conclusion of the hearing, the Court denied the PBMs' request to question Mr. Weinberger, finding: "There is no reason to put Mr. Weinberger on the stand because no one has put in any evidence that Mr. Weinberger made any of these statements, knew of them in advance, or for that matter knew of them afterward." Tr. at 83:20-24.

In its order following the hearing, the Court found not credible Mr. Kahn's attempts to minimize the significance of his baseless statements and fined him $100,000, explaining:

---

[3] The motion for reconsideration improperly included requests for two new forms of relief not sought in the initial motion. First, the PBMs asked, for the first time, to question Mr. Weinberger; second, the PBMs asked that a different judicial officer conduct the March 12 hearing. The Court denied the latter request when it denied the motion for reconsideration. *See* Doc. 6001 at 2. With respect to the questioning of Mr. Weinberger, the Court deferred ruling on that request until it had heard the testimony of Mr. Kahn, after which, as described in the text, that request was denied as well.

5

> In light of all the evidence adduced at the hearing, the Court concludes it must impose a significant sanction upon Mr. Kahn, *as his repeated 2019 statements, made without any factual basis, improperly cast aspersions upon the integrity of the Court*, Mr. Weinberger, and the entire process of the MDL.

Doc. 6028 at 3 (emphasis added). Mr. Kahn did not contest the sanction, and, on April 11, 2025, he paid the $100,000 fine. *See* April 11, 2025 Docket Entry, No. 1:17-md-2804-DAP, Receipt # 157757.

On April 2, 2025, the PBMs filed the instant motion, seeking recusal of the Court and renewed reconsideration of their twice-denied request for additional discovery.

## **LEGAL STANDARD**

Under § 455(a), a judge must disqualify himself (a) "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "This inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (Rehnquist, J., statement concerning recusal); *accord Garrett v. Ohio State Univ.*, 60 F.4th 359, 369 (6th Cir.) ("the question is whether, given the facts, an objective reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits"). "Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters" do not satisfy the requirements for recusal under § 455(a). *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993); *accord Clemens v. U.S. Dist. Ct. for Cent. Dist. of California*, 428 F.3d 1175, 1178 (9th Cir. 2005); *see also In re Davies*, 655 F. App'x 939, 941 (3d Cir. 2016) ("recusal is not required on the basis of unsupported, irrational, or highly tenuous speculation"); *United States v. DeTemple*, 162

6

F.3d 279, 287 (4th Cir. 1998) (same); *Kaufman v. Am. Fam. Mut. Ins. Co.*, 601 F.3d 1088, 1095 (10th Cir. 2010) ("mere speculation that an *ex parte* contact has occurred or that a judge was affected by it does not warrant relief or further investigation."); *United States v. Martorano*, 866 F.2d 62, 68 (3d Cir. 1989) ("Motions to recuse under 28 U.S.C. § 455(a) must rest on the kind of objective facts that a reasonable person would use to evaluate whether an appearance of impropriety had been created, not on "possibilities" and unsubstantiated allegations.").

Under § 455(b)(1), disqualification is required where a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). As used in § 455(b)(1), the term "bias or prejudice" "means a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it rests upon knowledge that the subject ought not possess, or because it is excessive in degree." *Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006) (cleaned up), *citing Liteky v. United States*, 510 U.S. 540, 550 (1994). The burden on such a motion is high:

> Regarding Section 455(b), a successful personal bias or prejudice challenge demands "such a high degree of favoritism or antagonism as to make fair judgment impossible." *See Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger" are not enough. *Id.* at 555-56. Nor are "'hostile' comments." *Parker*, 837 F. App'x at 347 (quoting *Liteky*, 510 U.S. at 555). "[C]laims of bias based on opinions formed during current or prior proceedings face an 'uphill battle.'" *Id.* at 346 (quoting *Burley*, 834 F.3d at 616).

*Robinson v. Butler*, No. 3:23-CV-1611, 2024 WL 662341, at *1 (N.D. Ohio Feb. 16, 2024).

Motions for recusal under either subsection (a) or subsection (b) involve the so-called "extrajudicial source doctrine" or "extrajudicial source factor."  *See Liteky*, 510 U.S. at 553-555.  This doctrine or factor refers to the idea that, in most instances, a partiality or bias formed during the course of judicial proceedings – based on the evidence presented, for example, or the conduct of the parties before the court – will not be a basis for recusal. As the Supreme Court explained in *Liteky*:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. . . . . If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions.

510 U.S. at 550-51.  Although an extrajudicial source for a judge's opinion about a case or a party is neither necessary nor sufficient to require recusal, it is "the only *common* basis" for disqualification for partiality or bias.  *Id*. at 551 (emphasis in original).  "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 555.

Finally, the Supreme Court has held that courts should "presume that public officials have properly discharged their duties." *Bracy v. Gramley*, 520 U.S. 899 (1997); *accord Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (recognizing ″a presumption of honesty and integrity in those serving as adjudicators."). "[T]he burden is on the moving party

8

to justify disqualification." *PNC Equip. Fin. v. Mariani*, 758 F. App'x 384, 391 (6th Cir. 2018) (citations omitted). The Sixth Circuit gives district courts wide discretion in determining whether to recuse. *See Youn v. Track, Inc.*, 324 F.3d 409, 422 (6th Cir. 2003).

## ARGUMENT

### I. DEFENDANTS HAVE SHOWN NO BASIS FOR THIS COURT TO RECUSE ITSELF

#### A. Mr. Kahn's Discredited 2019 Statements Are Insufficient to Require Disqualification under § 455(a)

The PBMs contend that the mere existence of the Kahn statements, regardless of whether there was any truth to them, creates an appearance of impartiality and requires recusal. This is not the law. Rather, as noted above, recusal cannot be grounded on "rumor, speculation, beliefs, conclusion, innuendo, suspicion, opinion, and similar non-factual matters." *Cooley*, 1 F.3d at 993 *Clemens*, 428 F.3d at 1178. Objective facts, not mere possibilities and unsubstantiated allegations, are required. *Martorano*, 866 F.3d at 68. Without some credible evidence that improper *ex parte* communications actually occurred, the Court's impartiality cannot "reasonably be questioned" and recusal is not warranted under § 455(a).

Here, there is simply no such evidence. Although Defendants characterize Mr. Kahn's 2019 statements as "unrebutted," in fact those statements were thoroughly discredited, both by Kahn's own testimony and by the statements of the Court. As the Court itself noted, the Kahn statements were hearsay and thus would not be admissible in court for the truth of what Mr. Kahn then asserted. *See* Doc. 6001 at 1-2; *see also* Fed. R. Evid. 801, 802. Summoned into court, Kahn admitted both that he had no first-hand

9

knowledge of any improper acts by Mr. Weinberger or the Court and that no one told him of any such acts. Admitting that he had no basis for what he said, Kahn retreated to claiming that he meant something different. What he did *not* do was provide even a scintilla of evidence that any *ex parte* communications had taken place or that the court had exhibited bias of any kind.[4] Moreover, as discussed above, this Court has twice stated that no substantive *ex parte* contacts took place.

Absent some evidence that the alleged improper *ex parte* communications actually occurred, the motion fails to "rest on the kind of objective facts that a reasonable person would use to evaluate whether an appearance of impropriety had been created" necessary to support recusal under section 455(a). *Martorano*, 866 F.2d at 68. Rather, the motion rests entirely on unsupported gossip that, no matter how often repeated, cannot create a *reasonable* basis to question the Court's impartiality.

The PBMs cite *no* cases where recusal under §455(a) occurred based on *ex parte* communications where the fact of those communications was neither established nor

---

[4] Defendants suggest that the Court's sanctioning of Mr. Kahn undercuts this conclusion. They imply that if Mr. Kahn's attempts to justify and explain away his statements were not credible, his unequivocal testimony that the statements lacked any basis to begin with must similarly be deemed not credible. But the conclusion does not follow. A factfinder may find one part of a witness's testimony credible while rejecting other parts. *See United States v. Davenport*, 220 F. App'x 374, 379-380 (6th Cir. 2007) (noting wide latitude of factfinder to decide which evidence to credit, even where court discounted one portion of witness's testimony and credited another). More important, given Mr. Kahn's refusal to take responsibility for his reckless and unsubstantiated statements, and his attempts to justify himself, it is clear that if he had had a basis for the statements he made, he would have offered it in court. That he offered no basis and refused to stand by the plain meaning of what he said demonstrates that he had no basis for the statements.

10

3221853.3

admitted.  *See In re Kensington Int'l, Ltd.*, 368 F.3d 289, 297 (3d Cir. 2004) (judge "met *ex parte* with interested parties 'on innumerable occasions.'"); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 770 (3d Cir. 1992) (trial judge attended "one-sided conference" at which most of the plaintiffs' expected expert witnesses presented views similar to those they intended to express at trial); *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) (court held *ex parte* sidebar conference with the prosecution).

Nor does this Court's recusal in *ControlSoft, Inc. v. Dow Chem. Co.*, No. 1:22-CV-02004, 2024 WL 5400258 (N.D. Ohio July 18, 2024), support recusal here.  In *ControlSoft,* the plaintiff proposed the submission of confidential settlement position papers to the Court.  The Court informed the parties that it would receive the position papers from both sides if both parties agreed.  The defendant, however, did not consent and no position papers were exchanged. *Id.* at *2.  Ten days later, however, the plaintiff's counsel emailed the court's law clerk—copying defendant's counsel—"a three-page letter from plaintiff's chairman to defendant's senior leaders that discussed disputed factual matters and settlement parameters."  *Id.*  Unlike the instant case, there was no doubt that "an improper and unsolicited extrajudicial communication to the Court" occurred."  *Id.* at *3.  Recusal was required due to the substance of the improper communication.  *Id.* ("Absent the consent of both parties, the Court had no reason to know, and should not have known, the contents of the letter because it reflected a one-sided presentation of disputed issues of fact and one party's proposed settlement terms.").

11

3221853.3

Here, by contrast, the Court has denied that *ex parte* communications have occurred and sanctioned Mr. Kahn for making admittedly unsubstantiated allegations of improper behavior on the part of the Court and Mr. Weinberger.  Far from supporting Defendants' motion for recusal, the decision in *Controlsoft* shows that this Court understands its duties under § 455(a) when improper *ex parte* communications actually do occur.

Mr. Kahn's statements that the Court was "plaintiff-oriented" and would force the parties to settle are similarly unsubstantiated and provide no objective basis to question the Court's impartiality.  As this Court has already noted, the Court's preference for settlement over litigation – not merely in this case, but overall – is well known. And the Sixth Circuit has already held that this publicly-expressed preference provides no basis to question the Court's impartiality and no ground for recusal.  *See In re: AmerisourceBergen Drug Corporation*, No. 19-3935, *slip op.* (6th Cir. October 10, 2019).  Mr. Kahn testified, moreover, that he had no knowledge of the Court using any improper leverage to bring about this result. Tr. at 20-21.  Finally, his statement that the Court was "plaintiff-oriented" lacks factual content altogether.  Mr. Kahn testified that he himself drew this conclusion from reading the Court's decision denying the initial motions to dismiss in the MDL.  Tr. at 18:12-20.  But to the extent those decisions reflected any inclinations by the Court about the possible merits of plaintiffs' pleadings, those views were not *improper*.  Far from being based on extraneous or extrajudicial matters, the views or inclinations reflected in the Court's opinions on the initial motions to dismiss were the

12

3221853.3

heart of a court's proper exercise of its judicial function – the forming of judgments based on the application of law to the facts and circumstances before it.  *See Liteky*, 510 U.S. at 550-51.  That after reading those opinions, Mr. Kahn thought the Court was favorably inclined towards plaintiffs provides no basis for recusal.

### B. The PBMs' Motion Does Not Provide a Sufficient Basis for Disqualification under § 455(b)(1)

The PBMs also seek disqualification under 28 U.S.C. § 455(b)(1), claiming that one-sided *ex parte* communications by definition constitute favoritism. But this argument presupposes that *ex parte* communications in fact took place.  As already noted, there is no evidence to support this assertion.  If there were in fact no one-sided communications, there was no favoritism.

The PBMs also argue that the Court's refusal to permit them to go on a fishing expedition questioning the integrity of Mr. Weinberger and the Court shows a disqualifying personal bias or prejudice under § 455(b)(1).  This second claim fares no better than the first.  As the Supreme Court has held, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Such rulings "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* That the Court rejected the PBMs' position is not evidence of improper bias.

13

## II. THE PBMS' THIRD ATTEMPT TO OBTAIN FURTHER DISCOVERY SHOULD BE DENIED

The PBMs also renew their request that the Court reconsider its denial of their request for discovery into the imaginary *ex parte* communications they continue to insist must have occurred.  This request should be denied.

As the Court noted in its March 5, 2025, order, Kahn's unsworn, out-of-court statements, standing alone, did not provide a sufficient basis for further inquiry into the possibility of *ex parte* communications.  But, the Court held, "If Mr. Kahn's testimony demonstrates a basis for questioning any additional witnesses, or to order the production of any documents or communications, the Court will take appropriate action at that time."  Doc. 6001 at 2.  Thus, the Court was open to the possibility of further discovery if there were any credible evidence that any improper communication had occurred. But by the conclusion of the hearing, there was none.  Given the absence of any credible basis for inquiry, the Court denied further discovery.  Tr. 83:20-25.

As the Tenth Circuit has held, "Mere speculation that an *ex parte* contact has occurred or that a judge was affected by it, however, does not warrant relief *or further investigation*."  *Kaufman*, 601 F.3d at 1095 (emphasis added).  The PBMs provided nothing more than mere speculation, insufficient to warrant the wide-ranging discovery they seek.  This is especially true in light of the presumption that judicial officers properly discharge their duties.  *See Withrow,* 421 U.S. at 47; *Bracy*, 520 U.S. at 909.  Only when there is factual evidence to overcome that presumption will a court permit the kind of discovery into judicial conduct that Defendants seek.  *Bracy*, 520 U.S. at 909 (permitting discovery only with specific information sufficient to overcome the presumption).

14

Indeed, in *Kaufman*, there was one undisputed *ex parte* contact with the district court that was promptly disclosed.  601 F.3d at 1096.  Although plaintiff's counsel alleged that "other similar or even more ominous contacts may have occurred," the Court found this to be "pure speculation" and rejected counsel's theory that "the possibility of one improper communication required the court to order full-blown discovery to determine whether any other *ex parte* communications had occurred."  *Id.*  Here, there is no evidence of even one improper conduct and thus no basis for the discovery Defendants seek.

Finally, although the PBMs offer neither evidence nor argument with respect to the Special Masters in this case, their conclusion asks for disclosure not only of communications between plaintiffs' counsel and the Court but also "disclosure of all *ex parte* communications between any party or counsel and . . . Special Masters, or their staff."  Doc. 6060-1 at 14.  Having failed to justify or even discuss this request anywhere in the body of their brief, the PBMs should not be permitted to broaden the scope of their request by stealth.  Even if this were the case, and separate and apart from the reasons set forth above regarding disclosure of communications with the Court, there is another, more important reason why this request in particular should be denied.  This Court's order appointing Special Masters in this case expressly permits the Special Masters to engage in *ex parte* communications with both sides and provided appropriate safeguards to insulate the Court from such communications:

> The Special Masters may communicate *ex parte* with any party or its attorney, as each Special Master deems appropriate, for the purposes of ensuring the efficient administration and management and oversight of this case, and for the purpose of mediating or negotiating a resolution of part or all of any dispute related to this case. The Special Masters shall not communicate to the Court any substantive matter the Special Master learned during an *ex parte* communication between the Special Master and any party.

*See* Doc. 69 at 3.  This provision was specifically envisioned by Rule 53 of the Federal Rules of Civil Procedure which *requires* a court, in an order appointing a Special Master, to state "the circumstances, if any, in which the master may communicate ex parte with the court or a party. . . ." Fed. R. Civ. P. 53(b)(2)(B).

Given that *ex parte* communications with the Special Masters are fully authorized, disclosure of communications with the Special Masters would be both burdensome and useless.

## Conclusion

The PBMs have failed to present any basis for this Court's recusal or for the Court to reconsider its rulings denying further discovery.  The motion should be denied in its entirety.

Dated:  April 16, 2025                                                          Respectfully submitted,

                                                                                Jayne Conroy
                                                                                SIMMONS HANLY CONROY
                                                                                112 Madison Avenue, 7th Floor
                                                                                New York, NY 10016
                                                                                (212) 784-6400
                                                                                (212) 213-5949 (fax)
                                                                                jconroy@simmonsfirm.com

3221853.3

Joseph F. Rice
MOTLEY RICE
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(843) 216-9000
(843) 216-9290 (Fax)
jrice@motleyrice.com

Paul T. Farrell, Jr., Esq.
FARRELL & FULLER LLC
270 Munoz Rivera Ave., Suite 201
San Juan, PR  00918
(304)654-8281
paul@farrellfuller.com
*Plaintiffs' Co-Lead Counsel*

*s/Peter H. Weinberger*
Peter H. Weinberger (0022076)
SPANGENBERG SHIBLEY & LIBER
1001 Lakeside Ave East, Suite 1700 Cleveland, OH 44114
(216) 696-3232
(216) 696-3924 (Fax)
pweinberger@spanglaw.com
*Plaintiffs' Liaison Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of April, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System. Copies will be served upon counsel of record by, and may be obtained through, the Court CM/ECF system.

*s/Peter H. Weinberger*
Peter H. Weinberger

3221853.3