# EXHIBIT 5

Hon. Robert E. Wiedo
Anderson County Attorney

Jennifer Smith
Administrative Assistant

Danielle Robinson
Administrative Assistant



Hon. John Wampler
Assistant County Attorney

Renee Robinson
Child Support Enforcement

Samantha Black
Child Support Enforcement

Anderson County Attorney
138 South Main Street
Lawrenceburg, KY 40342

May 1, 2025

BY EMAIL TO: ddanford@stites.com

Hon. Daniel E. Danford
Stites & Harbison, PLLC
250 West Main St., Suite #2300
Lexington, KY 40507

***RE: Response to Open Meetings Act Complaint OptumRX, Inc.***

Mr. Danford,

I am in receipt of your letter dated April 24, 2025. Please allow this letter to serve as Anderson County Fiscal Court's formal response to your complaint alleging a violation of the Kentucky Open Meetings Act.

We disagree with your conclusion that we "failed to abide by the proper process." The County's consent to file a motion for leave to amend the complaint in the opioid litigation is not an "action taken" under KRS 61.805(3). This statutory provision defines "action taken" as a collective decision, commitment to make a decision, or an actual vote by the governing body. Filing a motion for leave is a routine procedural step in ongoing litigation, not a final decision requiring public deliberation or a vote by the Fiscal Court. In essence, Kentucky Law does not require public meetings for routine litigation procedures and counties across the Commonwealth routinely delegate such authority to counsel to ensure efficient and effective representation. The County's process adheres to this well-established practice.

In the present matter, the motion remains pending, and no leave to amend has been granted by the court. Should leave be granted, any proposed amended complaint would be considered for presentation to the Fiscal Court for approval in an open public session before being filed if required by the Open Meetings Act.

Anderson County has previously responded to Open Records Requests received from an associate with your firm and provided copies of a Resolution entered on July 18, 2017 as well as

a Legal Agreement entered into on July 18, 2017. These documents were provided to your associate Harper Anderson on or about March 25, 2025, however an additional copy of that Response has been attached hereto.

Should your firm seek to pursue further action, Anderson County reserves all rights and defenses available under applicable law.

Sincerely,

**/S/Robert E. Wiedo**
**HON. ROBERT E. WIEDO**
**ANDERSON COUNTY ATTORNEY**
138 South Main Street
Lawrenceburg, KY 40342
(502) 839-5164 – OFFICE
(502) 839-9136 – FAX
rwiedo@prosecutors.ky.gov

CC: CJE-OG; FILE

# EXHIBIT 46

# ALSTON & BIRD

One Atlantic Center, 1201 W Peachtree St. NE
Atlanta, Georgia 30309
404-881-7000

Esmat Hanano                              Direct Dial: 404-881-7742                              Email: esmat.hanano@alston.com

## ILLINOIS FREEDOM OF INFORMATION ACT REQUEST TO
## ALEXANDER COUNTY, ILLINOIS

Request Submitted to:        Zachary C. Price
                             County Clerk & Recorder
                             2000 Washington Avenue
                             Cairo, Illinois 62914

Date Requested:              February 18, 2025

Request Submitted by:        Alston & Bird LLP

Requester Information:       Esmat Hanano
                             1201 W Peachtree St. NE
                             Atlanta, Georgia 30309
                             Office Phone: 404-881-7742
                             Email: esmat.hanano@alston.com

To Whom It May Concern:

In accordance with the provisions of the Illinois Freedom of Information Act, 5 Ill. Comp. Stat. 140/1, *et seq.*, I request the following documents that are in the possession, custody, or control of Alexander County, Illinois:

1.      All documents and other records relating to Alexander County's approval to bring claims against OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; UnitedHealth Group Incorporated; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc.; or Express Scripts Specialty Distribution Services, Inc. in the national opioid litigation, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-2804 (N.D. Ohio) and its members cases (the "Opioid Litigation").

2.      All documents and other records relating to Alexander County's approval to file any complaint in the Opioid Litigation.

3.      All documents and other records relating to Alexander County's approval to amend or supplement its complaint in the Opioid Litigation.

Illinois Freedom of Information Act Request to the Alexander County, Illinois
February 18, 2025
Page 2

4.     All documents and communications relating to any request by any law firm (including, but not limited to Levin Papantonio) or by any attorney (including, but not limited to Peter J. Mougey) for approval from Alexander County to sue OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; UnitedHealth Group Incorporated; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc.; or Express Scripts Specialty Distribution Services, Inc. in the Opioid Litigation.

5.     All engagement agreements, engagement letters, memoranda of understanding, memoranda of agreement, letters of intent, contracts, or other agreements (including any amendments, restatements, or modifications to such agreements) that Alexander County entered into with any law firms, attorneys, or other professionals (including, but not limited to Levin Papantonio or Peter J. Mougey) to prosecute or assist with the prosecution of the Opioid Litigation or claims against any party or entity.

If you withhold any document responsive to these requests—whether due to a purported privilege, the exemptions in 5 Ill. Comp. Stat. 140/7, or any other legal authority—please state, for each document withheld, the basis for the withholding. Should any document containing responsive material also contain material protected from disclosure by privilege, the exemptions in 5 Ill. Comp. Stat. 140/7, or any other legal authority, please redact the exempted material, clearly state the basis for the redaction, and produce the nonexempted material. In the event Alexander County believes that there are no documents in its possession, custody, or control that are responsive to these requests, please state that expressly.

Please provide written notice and disclosure of responsive records in accordance with the time periods specified in 5 Ill. Comp. Stat. 140/3(d).  Electronic copies of the responsive records should be sent to esmat.hanano@alston.com in PDF format.

Thank you for your prompt attention to this matter.

Sincerely,

*/s/ Esmat Hanano*
Esmat Hanano

2

# EXHIBIT 50



**ASSISTANT COUNTY ATTORNEYS**
Duncan Cavanah
Katherine Foster
Mark Collins
Jill Atkins
Jerad Smith

*LINCOLN W. FOSTER*
*CHRISTIAN COUNTY ATTORNEY*

209 EAST FOURTEENTH STREET
P.O. BOX 24
HOPKINSVILLE, KENTUCKY 42241-0024
TELEPHONE (270) 887-4114
TELECOPIER (270) 886-3910

**CHRISTIAN COUNTY CHILD SUPPORT DIVISION**
Katherine Foster, Staff Prosecutor
Jerad Smith, Staff Prosecutor

**DOMESTIC VIOLENCE UNIT**
Jennifer Hightower,
Victim Advocate

April 29, 2025

*Via email- ddanford@stites.com*

Daniel E. Danford, Esq.
250 West Main Street
Suite 2300
Lexington, Kentucky 40507-1758

**Re:** Response to Open Meetings Act Complaint (March 4, 2025 Request)

Dear Mr. Danford:

This letter serves as Christian County Fiscal Court's formal response to your April 24, 2025 complaint alleging a violation of the Kentucky Open Meetings Act (KRS 61.805 to 61.850). Pursuant to **KRS 61.846(1)**, we hereby deny the allegations in full and affirm our compliance with the Act.

The County's consent to file a motion for leave to amend the complaint in the opioid litigation is not an "action taken" under **KRS 61.805(3)**. This statutory provision defines "action taken" as a collective decision, commitment to make a decision, or an actual vote by the governing body. Filing a motion for leave is a routine procedural step in ongoing litigation, not a final decision requiring public deliberation or a vote by the Fiscal Court.

The motion remains pending, and no leave to amend has been granted by the court. Should leave be granted, any proposed amended complaint would be considered for presentation to the Fiscal Court for approval in an open public session before being filed if required by the Open Meetings Act.

To further clarify, and to be consistent with Kentucky General Opinion 10-ORD-153, Christian County supplements its March 17, 2025 response to demonstrate compliance with the Open Meetings Act, by attaching Resolution No. 2021-10, approved in an open session on June 22, 2021. This resolution authorizes the County's legal counsel to manage litigation and settlement matters with consultation with the County Judge Executive, which would include such procedural matters, without requiring repeated public votes for each tactical decision. The resolution's

delegation of authority aligns with the Open Meetings Act, as the Fiscal Court's original vote in open session constituted the requisite "action taken" under the law.

Your assertion that the County violated the Act is without merit. Kentucky law does not require public meetings for routine litigation procedures, and counties across the Commonwealth-and the nation-routinely delegate such authority to counsel to ensure efficient and effective representation. The County's process adheres to this well-established practice.

By authority of the Christian County Judge Executive, Jerry Gilliam, and pursuant to **KRS 61.846(1)**, this response constitutes final agency action.

Enclosed please find a copy of Resolution No. 2021-10.

Should you pursue further action, Christian County reserves all rights and defenses under applicable law.

Sincerely,

/s/ Lincoln W. Foster_____
Lincoln W. Foster
Christian County Attorney

# EXHIBIT 55



**COMMONWEALTH OF KENTUCKY**
**OFFICE OF THE BOYD COUNTY ATTORNEY**

Curtis E. Dotson
**BOYD COUNTY ATTORNEY**

P.O. BOX 425
CATLETTSBURG, KY 41129
(606) 739-4321
FAX: (606) 739-6620

April 30, 2025

Hon. Daniel E. Danford                    via email....ddanford@stites.com
Stites & Harbison PLLC
250 West Main Street
Suite 2300
Lexington, Kentucky 40507

      RE.   *Response to Open Meetings Act Complaint*
           *OptumRX, Inc.*

Dear Mr. Danford:

    I am in receipt of your letter dated April 22, 2025.  Please allow this letter to serve as Boyd County Fiscal Court's formal response to your complaint alleging a violation of the Kentucky Open Meetings Act.

    We disagree with your conclusion that we "failed to abide by the proper process." The County's consent to file a motion for leave to amend the complaint in the opioid litigation is not an "action taken" under KRS 61.805(3). This statutory provision defines "action taken" as a collective decision, commitment to make a decision, or an actual vote by the governing body. Filing a motion for leave is a <u>routine</u> procedural step in ongoing litigation, not a final decision requiring public deliberation or a vote by the Fiscal Court.  In essence, Kentucky law does not require public meetings for routine litigation procedures, and counties across the Commonwealth and the nation-routinely delegate such authority to counsel to ensure efficient and effective representation.  The County's process adheres to this well-established practice.

    In the present matter, the motion remains pending, and no leave to amend has been granted by the court.  Should leave be granted, any proposed amended complaint would be considered for presentation to the Fiscal Court for approval in an open public session before being filed if required by the Open Meetings Act.

To demonstrate compliance with the Open Meetings Act, I have attached Resolution No. 10-2017, approved in open session on September 5, 2017.

Should you pursue further action, Boyd County reserves all rights and defenses under applicable law.

Truly yours,

Curtis E. Dotson
Boyd County Attorney

cc. Eric Chaney
Boyd County Judge/Executive

# EXHIBIT 62

**RESOLUTION NO. 4/25-2017**

## RESOLUTION TO ENTER INTO AN ENGAGEMENT LETTER TO PURSUE CLAIMS AGAINST OPIOID MANUFACTURERS

**INTRODUCED BY**:          Supervisor John West

**INTENT & SYNOPSIS**:      To enter into and designate the County Manager/Administrative Coordinator to execute an Engagement Letter on behalf of the County to pursue claims against opioid manufacturers.

**FISCAL NOTE**:      None.

**TO THE HONORABLE BOARD OF SUPERVISORS OF ADAMS COUNTY, WISCONSIN MEMBERS**,

 **WHEREAS,** Adams County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

 **WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and

 **WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 Billion annually; and

 **WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

 **WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

 **WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

 **WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

 **WHEREAS,** County's provision of programs and services becomes more and more

1

**RESOLUTION TO ENTER INTO AN ENGAGEMENT LETTER TO PURSUE CLAIMS AGAINST OPIOID MANUFACTURERS**

44 difficult every year because the costs associated with providing the Opioid Epidemic
45 programs and services continue to rise, yet County's ability to generate revenue is
46 limited by strict levy limit caps and stagnant or declining state and federal aid to County;
47 and
48

49     **WHEREAS,** all sums that County expends in addressing, combatting and otherwise
50 dealing with the Opioid Epidemic are sums that cannot be used for other critical programs
51 and services that County provides to County citizens, residents and visitors; and
52

53     **WHEREAS,** County has been informed that numerous counties and states across
54 the country have filed or intend to file lawsuits against certain of the opioid manufacturers
55 in an effort to force the persons and entities responsible for the Opioid Epidemic to
56 assume financial responsibility for the costs associated with addressing, combatting and
57 otherwise dealing with the Opioid Epidemic; and
58

59     **WHEREAS,** County has engaged in discussions with representatives of the law
60 firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy
61 LLC (the "Law Firms") related to the potential for County to pursue certain legal
62 claims against certain opioid manufacturers; and
63

64     **WHEREAS,** County has been informed that the Law Firms have the reqms1te
65 skill, experience and wherewithal to prosecute legal claims against certain of the
66 opioid manufacturers on behalf of public entities seeking to hold them responsible for
67 the Opioid Epidemic; and
68

69     **WHEREAS,** the Law Firms have proposed that County engage the Law Firms
70 to prosecute the aforementioned claims on a contingent fee basis whereby the Law
71 Firms would not be compensated unless County receives a financial benefit as a
72 result of the proposed claims and the Law Firms would advance all claim-related
73 costs and expenses associated with the claims; and
74

75     **WHEREAS,** all of the costs and expenses associated with the claims against
76 certain of the opioid manufacturers would be borne by the Law Firms; and
77

78     **WHEREAS,** the Law Firms have prepared an engagement letter, which is
79 submitted as part of this Resolution ("Engagement Letter") specifying the terms and
80 conditions under which the Law Firms would provide legal services to County and
81 otherwise consistent with the terms of this Resolution; and
82

83     **WHEREAS,** County is informed that the Wisconsin Counties Association has
84 engaged in extensive discussions with the Law Firms and has expressed a desire to

2

**RESOLUTION NO. 42-2017**

## RESOLUTION TO ENTER INTO AN ENGAGEMENT LETTER TO PURSUE CLAIMS AGAINST OPIOID MANUFACTURERS

assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED** that County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:** County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

Recommended for adoption by Supervisor John West this _12_ day of September, 2017

_____          _____

_____          _____

Adopted _X_          Defeated _____          Tabled _____
by the Adams County Board of Supervisors this _19th_ day of _Sept._, 2017.

_____          _____
County Board Chair                              County Clerk
☒          Reviewed by Corporation Counsel
☒          Reviewed by County Manager/Administrative Coordinator

3



**Crueger Dickinson**

**von Briesen**

von Briesen & Roper, s.c. | Attorneys at Law

September 11, 2017

**VIA EMAIL**

Adams County
c/o John West, Board Chair
400 Main Street
Friendship, WI 53934

**RE:**  *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Adams County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Adams County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which

Adams County
Engagement Letter
Page -2

County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below.  Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the

Adams County
Engagement Letter
Page -3

interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel

Adams County
Engagement Letter
Page -4

and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

Adams County
Engagement Letter
Page -5

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

Adams County
Engagement Letter
Page -6

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this

Adams County
Engagement Letter
Page -7

Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

[NAME] COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: _____

Title: _____

cc:    Corporation Counsel

29260229_1.DOCX

# EXHIBIT 64

RESOLUTION #R-73-17

### APPROVAL OF EXECUTION OF ENGAGEMENT LETTER TO JOIN OTHER WISCONSIN COUNTIES IN A LAWSUIT AGAINST PHARMACEUTICAL COMPANIES TO RECOVER COSTS INCURRED BY MARATHON COUNTY DUE TO THE OPIOID EPIDEMIC

**WHEREAS,** Marathon County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for

the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is attached to this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic; and

**WHEREAS,** on October 10, 2017, the Marathon County Health and Human Services Committee met to discuss whether to join other Wisconsin counties in commencing this litigation and voted to recommend that the County Board authorize execution of the Engagement Letter with the proviso that any proceeds shall be placed in a segregated account to be subject to distribution criteria to be established by the Board after funds have been received.

2

**NOW, THEREFORE, BE IT RESOLVED** by the Board of Supervisors for the County of Marathon that the Board hereby authorizes and agrees to be bound by the attached Engagement Letter and directs the County Administrator to execute the Engagement Letter on behalf of the County.

**BE IT FURTHER RESOLVED** that Marathon County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

**BE IT FINALLY RESOLVED** that any proceeds realized by Marathon County as a result of this action shall be placed in a segregated account subject to distribution criteria to be established by the Board after funds have been received.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted this _17th_ day of October, 2017.

HEALTH AND HUMAN SERVICES COMMITTEE



FISCAL IMPACT:  No additional funding has been budgeted to support this litigation at this time. Performance of actions required by and cooperation with the Law Firms, discussed above, will involve a substantial investment of staff time to respond to the need for information and to quantify Marathon County's damages.

CORPORATION COUNSEL NOTE:  Execution of this Engagement Letter for professional attorney services is permissible without competitive procurement, pursuant to §3.105 (a) 2. Gen. Code Ord. The Engagement letter provides for representation in an individual court action on a contingent fee basis, without upfront litigation retainer, fees or costs, except as provided above.

STATE  OF  WISCONSIN  )
                        )SS.
COUNTY OF  MARATHON  )

    I, Nan Kottke, County Clerk in and for Marathon County, Wisconsin, hereby certify that the attached Resolution #R-73-17 was adopted by the Marathon County Board of Supervisors at their Adjourned Organizational meeting which was held October 17, 2017.

S E A L

Nan Kottke
Marathon County Clerk

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1 Rosenberg | YES | 14 Seefeldt - R | YES | 27 Seubert | YES |
| 2 Seefeldt - J | EXCUSED | 15 Fifrick | YES | 28 Tremelling | YES |
| 3 Nutting | YES | 16 Zriny | NO | 29 Wegner | YES |
| 4 Robinson | YES | 17 Stark | YES | 30 Gumz | NO |
| 5 Lewis | EXCUSED | 18 McEwen | YES | 31 Drabek | YES |
| 6 Hoogendyk | YES | 19 Xiong | YES | 32 Gibbs | YES |
| 7 Quamme | YES | 20 Guild | YES | 33 Buttke | YES |
| 8 Kellbach | YES | 21 Kluck | EXCUSED | 34 Beastrom | YES |
| 9 Peek | YES | 22 Christensen | EXCUSED | 35 Langenhahn | YES |
| 10 Abitz | YES | 23 Voll | YES | 36 Miller | EXCUSED |
| 11 Van Ryn | YES | 24 Maszk | YES | 37 Opall | YES |
| 12 Schlei | YES | 25 Cihlar | YES | 38 Schaefer | NO |
| 13 Bootz | YES | 26 Durham | YES | | |

R-73-17          Passed (30 Y - 3 N - 0 A - 5 Absent)          Majority Vote    >

 Crueger Dickinson

**von Briesen**
von Briesen & Roper, s.c. | Attorneys at Law

October 10, 2017

**VIA EMAIL**            .

Marathon County
c/o Kurt Gibbs, Board Chair

RE:    *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Marathon County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Marathon County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

    A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

    B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below.  Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| **Firm Name** | **Percentage of Fees if Successful** |
| --- | --- |
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

    The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

    C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

### ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Marathon County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A. If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B. For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Marathon County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Marathon County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                        Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

MARATHON COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: ___11/1/2017___

Title: _____

cc:      Corporation Counsel

29243067_1.DOCX

Marathon County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                                  **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                                         Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

MARATHON COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: ___11/1/2017___

Title: __County Administrator__

cc:      Corporation Counsel

29243067_1.DOCX

# EXHIBIT 66

STATE O...  )S.S.
COUNTY OF SAUK  )S.S.
I hereby certify that this resolution/ordinance
is a true & correct copy as passed by the
Sauk County Board of Supervisors.

*Rebecca C. Evert*
(Seal) Rebecca C. Evert, Sauk County Clerk

### RESOLUTION NO. 93 - 2017

## APPROVING ENGAGEMENT OF LAW FIRMS TO INVESTIGATE AND PROSECUTE LITIGATION AGAINST OPIOID MANUFACTURERS AND DIRECTING COUNTY BOARD CHAIRPERSON TO SIGN ENGAGEMENT LETTER

**Background:** Sauk County is concerned with the recent and rapid rise in the use, abuse and overuse of opioid medications by citizens, residents and visitors in Sauk County. The issues and concerns surrounding opioid use, abuse and overuse are not unique to Sauk County and are shared by all other counties in Wisconsin, and states and counties across the country, as has been documented and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:). The societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually. The National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, allegedly, unlawful and unethical marketing practices.

Sauk County has spent enormous sums in time and resources in its programs and services related to the Opioid Epidemic. Sauk County is informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic.

Sauk County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms"), related to the potential for County to pursue legal claims against certain opioid manufacturers. The Law Firms propose that Sauk County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Sauk County receives a financial benefit as a result of the proposed claims, and the Law Firms would advance all claim-related costs and expenses associated with the claims. The attached engagement letter ("Engagement Letter") specifies the terms and conditions under which the Law Firms would provide legal services to Sauk County. Sauk County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers. Sauk County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed.

**Fiscal Impact: [ X ] None   [ ] Budgeted Expenditure   [ ] Not Budgeted**

**WHEREAS,** it is in the best interest of Sauk County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and,

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, Sauk County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by the County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED,** by the Sauk County Board of Supervisors, met in regular session, that Sauk County authorizes, and agrees to be bound by, the Engagement Letter; and,

Resolution No. 93 - 2017
**Approving Engagement Of Law Firms To Investigate And Prosecute Litigation Against Opioid Manufacturers And Directing County Board Chairperson To Sign Engagement Letter**
**Page 2**


      **BE IT FURTHER RESOLVED,** that the Sauk County Board of Supervisors Chairperson Martin F. Krueger is hereby directed to execute the Engagement Letter on behalf of the County.


For consideration by the Sauk County Board of Supervisors on October 17, 2017.


Respectfully submitted,


**EXECUTIVE AND LEGISLATIVE COMMITTEE**


MARTIN F. KRUEGER, Chair                  WILLIAM HAMBRECHT

JOAN FORDHAM, Vice Chair                 DENNIS POLIVKA

WALLY CZUPRYNKO


**Fiscal Note:**  No fiscal impact.
**MIS Note:**   No information systems impact.



```
VOTE: 093-2017
DATE: 2017/10/17
TIME: 20:39:15
```

MOTION: Approving Engagement Of Law Firms To Investigate And Prosecute Litigation Agains
t Opioid Manufacturers And Directing County Board Chairperson To Sign Engagement Letter.

PROPOSED: Fordham
SECONDED: Czuprynko

VOTE TOTALS:  *Abstain: 1*
YES      :  25
ABSENT   :  ~~2~~ *1, Excused*
NO       :   4
TOTAL    :  ~~29~~ *31*

THE INDIVIDUAL RESULTS WERE AS FOLLOWS
MIC CARD DELEGATE INFORMATION          VOTE

| MIC | CARD | DELEGATE | VOTE |
|---|---|---|---|
| 1 | 1 | Mr Wally Czuprynko | YES |
| 2 | 2 | Mr Thomas Kriegl | YES |
| 3 | 3 | Mr Tim Meister | YES |
| 4 | 4 | Mr Nathan Johnson | YES |
| 5 | 5 | Mr Clark J.  Pettersen | YES |
| 6 | 6 | Mr John Dietz | YES |
| 7 | 7 | Mr Craig  Braunschweig | YES |
| 8 | 8 | Mr  John M.  Deitrich | YES |
| 9 | 9 | Mr Tommy Lee Bychinski | YES |
| 11 | 11 | Mr Richard M.  Flint | YES |
| 12 | 12 | Mr David J. Moore | NO  *Absent, Excused.* |
| 13 | 13 | Ms Kristin K. White Eagle | YES |
| 14 | 14 | Ms Rebecca  Hovde | YES |
| 15 | 15 | Mr Peter J. Vedro | YES |
| 16 | 16 | Mr John Miller | YES |
| 18 | 18 | Mr Scott Von Asten | YES |
| 19 | 19 | Ms Andrea Lombard | NO |
| 20 | 20 | Ms Judy Ashford | YES |
| 21 | 21 | Mr Chuck Spencer | YES |
| 22 | 22 | Ms Jean E. Berlin | YES |
| 23 | 23 | Mr Dennis Polivka | YES |
| 24 | 24 | Mr David A.  Riek | *Abstain* |
| 25 | 25 | Mr Brian L. Peper | YES |
| 26 | 26 | Mr Eric Peterson | NO |
| 27 | 27 | Mr Andy Andrews | NO |
| 28 | 28 | Mr William  Hambrecht | YES |
| 29 | 29 | Mr William F. Wenzel | YES |
| 30 | 30 | Ms Donna Stehling | YES |
| 31 | 31 | Mr Henry Netzinger | YES |
| 32 | 17 | Ms Joan Fordham | YES |
| CHO | 10 | Mr Marty Krueger | YES |



*passed*

```
VOTE: 094-2017
DATE: 2017/10/17
TIME: 20:43:48

MOTION: To combine a number of resolutions from the finance and Personnel committees.

PROPOSED: Moore
SECONDED: Hambrecht

VOTE TOTALS:

YES      :  ~~29~~  30
ABSENT   :  ~~0~~  1, Excused
NO       :  ~~1~~  0
TOTAL    :  ~~30~~  31


THE INDIVIDUAL RESULTS WERE AS FOLLOWS
MIC CARD DELEGATE INFORMATION              VOTE

  1    1   Mr Wally Czuprynko               YES
  2    2   Mr Thomas Kriegl                 YES
  3    3   Mr Tim Meister                   YES
  4    4   Mr Nathan Johnson                YES
  5    5   Mr Clark J.  Pettersen           YES
  6    6   Mr John Dietz                    YES
  7    7   Mr Craig  Braunschweig           YES
  8    8   Mr  John M.  Deitrich            YES
  9    9   Mr Tommy Lee Bychinski           YES
 11   11   Mr Richard M.  Flint             YES
 12   12   Mr David J. Moore                YES
 13   13   Ms Kristin K. White Eagle        Absent, Excused
 14   14   Ms Rebecca  Hovde                YES
 15   15   Mr Peter J. Vedro                YES
 16   16   Mr John Miller                   YES
 18   18   Mr Scott Von Asten               YES
 19   19   Ms Andrea Lombard                YES
 20   20   Ms Judy Ashford                  YES
 21   21   Mr Chuck Spencer                 YES
 22   22   Ms Jean E. Berlin                YES
 23   23   Mr Dennis Polivka                YES
 24   24   Mr David A.  Riek                YES
 25   25   Mr Brian L. Peper                YES
 26   26   Mr Eric Peterson                 YES
 27   27   Mr Andy Andrews                  NO → Yes
 28   28   Mr William  Hambrecht            YES
 29   29   Mr William F. Wenzel             YES
 30   30   Ms Donna Stehling                YES
 31   31   Mr Henry Netzinger               YES
 32   17   Ms Joan Fordham                  YES
CHO   10   Mr Marty Krueger                 YES
```





September 12, 2017

**Via Email**

Sauk County
c/o Marty Krueger, Board Chair

**RE:** *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Sauk County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Sauk County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Sauk County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Sauk County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Sauk County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

     A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

     B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

     C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Sauk County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Sauk County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Sauk County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Sauk County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                               Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

SAUK COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: NOVEMBER 6, 2017

Title: COUNTY BOARD CHAIRPERSON

cc:     Corporation Counsel

29243067_1.DOCX



# EXHIBIT 67

## RESOLUTION NO. 12-1017

## AUTHORIZING THE EXECTUION OF THE ENGAGEMENT LETTER FOR PURSUING CLAIMS AGAINST CERTAIN OPIOID MANUFACTURES

**WHEREAS,** Iowa County is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Iowa County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic; and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** Iowa County has spent tens of thousands of dollars in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** Iowa County is responsible for a multitude of programs and services, all of which require Iowa County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** Iowa County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that Iowa County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Iowa County provides to Iowa County citizens, residents and visitors; and

**WHEREAS,** Iowa County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** Iowa County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** Iowa County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that Iowa County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Iowa County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution specifying the terms and conditions under which the Law Firms would provide legal services to Iowa County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** Iowa County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Iowa County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** Iowa County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** Iowa County believes it to be in the best interest of Iowa County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, Iowa County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Iowa County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:** Iowa County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:** Iowa County shall endeavor to faithfully perform all actions required of Iowa County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all Iowa County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted this 17th day of October , 2016.

Executive Committee

**Crueger Dickinson**

**von Briesen**

von Briesen & Roper, s.c. | Attorneys at Law

September 12, 2017

**VIA EMAIL**

Iowa County
c/o John Meyers, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Iowa County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Iowa County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.     von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.     As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.     Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Iowa County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

### A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

### B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

### C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Iowa County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

IOWA COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _John M Meyers_  Date: _10-19-2017_

Title: _Chairman_

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 73



**Resolution No. 2017-63**   Page 1 of 2

## OPIOID LITIGATION

**DOOR COUNTY**

### TO THE DOOR COUNTY BOARD OF SUPERVISORS:

**WHEREAS,** Opioid misuse and addiction has reached epidemic proportions in the United States; *and*

**WHEREAS,** Door County ("County") has significant concerns with respect to the ongoing opioid epidemic, and believes the misuse of and addiction to opioids is a serious crisis that affects public health as well as social and economic welfare locally and across the country; *and*

**WHEREAS,** According to the Centers for Disease Control and Prevention ("CDC"), the societal costs associated with opioid misuse and addiction may, when health care, labor, and criminal justice costs are taken into account, be as high as $92 billion annually; *and*

**WHEREAS,** The National Institute for Health ("NIH") has indicated that the aggressive marketing and promotion of certain opioid medications by some in the pharmaceutical industry ... which minimized or misrepresented the risk of opioid addiction and misuse ... considerably amplified the prescription sales and availability of opioids, contributed significantly to the marked growth of opioid misuse and addiction, and bears responsibility for the rapid rise of the opioid epidemic; *and*

**WHEREAS,** Certain of the opioid manufacturers (e.g., Purdue) have faced civil and criminal liability for their actions that relate directly to their role in the rise of the opioid epidemic; *and*

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; *and*

**WHEREAS,** County suffers from a scarcity of resources (e.g., strict levy limits and stagnant or declining state and federal aid) and is, the opioid epidemic notwithstanding, challenged to provide these programs and services to citizens, residents and visitors; *and*

**WHEREAS,** County has, unexpectedly, been (and for the foreseeable future will continue to be) forced to expend significant time and resources in its programs and services related to the worsening opioid epidemic; *and*

**WHEREAS,** The time and resources that County expends related to the opioid epidemic means that it will have that much less time and resources to expend on other programs and services; *and*

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the opioid epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the opioid epidemic; *and*

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; *and*

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the opioid epidemic; *and*

**WHEREAS,** The Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; *and*

**WHEREAS,** All of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; *and*

**WHEREAS,** The Law Firms have prepared a proposed engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; *and*

**Resolution No. 2017-63**                                    Page 2 of 2

# OPIOID LITIGATION

**DOOR COUNTY**

| ROLL CALL<br>Board Members | Aye | Nay | Exc. |
|---|---|---|---|
| AUSTAD | | | |
| BACON | | | |
| D. ENGLEBERT | | | |
| R. ENGLEBERT | | | |
| ENIGL | | | |
| FISHER | | | |
| GUNNLAUGSSON | | | |
| HALSTEAD | | | |
| KOCH | | | |
| KOHOUT | | | |
| LIENAU | | | |
| LUNDAHL | | | |
| MOELLER | | | |
| NEINAS | | | |
| ROBILLARD | | | |
| SCHULTZ | | | |
| SITTE | | | |
| SOHNS | | | |
| VIRLEE | | | |
| VLIES WOTACHEK | | | |
| WAIT | | | |
| | | | |

**BOARD ACTION**

Vote Required:  Majority Vote of a Quorum

Motion to Approve          Adopted  [X]

1st Vlies Wotachek   Defeated  [ ]

2nd Sohns

Yes: _____    No: _____    Exc: _____

Reviewed by: _____, Corp. Counsel

Reviewed by: _____, Administrator

**FISCAL IMPACT:** Because the law firms to be engaged for this litigation are working on a contingent fee basis, there is no fiscal impact to the County of Door or its annual budget associated with the adoption of this resolution.  MEJ

**Certification:**

I, Jill M. Lau, Clerk of Door County, hereby certify that the above is a true and correct copy of a resolution that was adopted on the __24th__ day of __October__ 2017 by the Door County Board of Supervisors.

Jill M. Lau
County Clerk, Door County

1   **WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in
2   extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms,
3   County and other counties in the prosecution of claims against certain of the opioid manufacturers;
4   *and*

5   **WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this
6   Resolution and the Engagement Letter by providing information and materials to the Law Firms
7   and, if and as deemed appropriate, the Wisconsin Counties Association; *and*

9   **WHEREAS,** County believes it to be in the best interest of County, its citizens, residents,
10  visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims
11  against certain of the opioid manufacturers, consistent with the terms and conditions set forth in the
12  Engagement Letter; *and*

14  **WHEREAS,** By pursuing the claims against certain of the opioid manufacturers, County is
15  attempting to hold those persons and entities that had a significant role in the creation of the opioid
16  epidemic responsible for the financial costs shouldered by County and other public agencies across
17  the country in dealing with the opioid epidemic.

19  **NOW, THEREFORE, BE IT RESOLVED,** That the Door County Board of Supervisors hereby
20  authorizes the Door County Corporation Counsel to negotiate, and the Door County Administrator
21  to execute, an Engagement Letter and agrees to be bound by same.

23  **BE IT FURTHER RESOLVED,** That Door County shall endeavor to faithfully perform all
24  actions required of County in relation to the claims contemplated herein and in the Engagement
25  Letter and hereby directs all County personnel to reasonably cooperate with and assist the Law
26  Firms in relation thereto.

28  **BE IT FURTHER RESOLVED,** That the County Clerk shall forward a copy of this Resolution,
29  together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin
30  Street, Suite 900, Madison, Wisconsin, 53703.

**SUBMITTED BY:**
**Administrative Committee**

David Lienau, Chairman

Ken Fisher

John Neinas

Richard Virlee

Daniel Austad

Joel Gunnlaugsson

Kathy Schultz



Crueger Dickinson

**von Briesen**
von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

VIA EMAIL

Door County
c/o David Lienau, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Door County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel" will provide legal services to Door County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Door County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Door County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Door County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Door County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Door County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

von BRIESEN & ROPER, s.c.                    CRUEGER DICKINSON LLC

Andrew T. Phillips                           Erin K. Dickinson

SIMONS HANLY CONROY LLC (Acknowledged)


Paul J. Hanly, Jr.

DOOR COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.


By: _____         Date: _10·24·2017_

   Ken Pabich

Title: _Door County Administrator_


cc:    Corporation Counsel


29243067_1.DOCX

# EXHIBIT 75

RESOLUTION NO.____54-17____

**RESOLUTION AUTHORIZING THE PROPER COUNTY OFFICIALS
TO ENGAGE THE LAW FIRMS OF VON BRIESEN & ROPER, S.C.,
CRUEGER DICKINSON LLC AND SIMMONS HANLY CONROY LLC
TO FILE A LAWSUIT ON BEHALF OF FOND DU LAC COUNTY
AGAINST CERTAIN DRUG MANUFACTURERS
FOR THE COSTS THE COUNTY HAS INCURRED
FROM THE INCREASE IN SERVICES CAUSED BY THE OPIOID EPIDEMIC**

**WHEREAS,** Fond du Lac County (the "County") is concerned with the recent rapid rise in troubles among County citizens, residents and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which, according to certain studies, impacts millions of people across the country, and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to the County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, by states and counties across the country, as has been well documented through various reports and publications and commonly referred to as the Opioid Epidemic ("Opioid Epidemic"), and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to more than $75 billion annually, and

**WHEREAS,** the National Institutes of Health has identified the manufacturers of certain opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices, and

**WHEREAS,** certain opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic, and

**WHEREAS,** the County has unexpectedly been (and for the foreseeable future will continue to be) forced to expend significant time and resources in its programs and services related to the worsening Opioid Epidemic, and

**WHEREAS,** the County is responsible for a multitude of programs and services, all of which require the County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources, and

**WHEREAS,** the County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet the County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to the County, and

**WHEREAS,** all sums that the County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that the County provides to County citizens, residents and visitors, and

**WHEREAS,** the County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic, and

**WHEREAS,** the County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for the County to pursue certain legal claims against certain opioid manufacturers, and

**WHEREAS,** the County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic, and

**WHEREAS,** the Law Firms have proposed that the County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless the County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims, and

**WHEREAS,** all of the costs and expenses associated with the claims against certain opioid manufacturers would be borne by the Law Firms, and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter"), specifying the terms and conditions under which the Law Firms would provide legal services to the County that is otherwise consistent with the terms of this Resolution, and

**WHEREAS,** the County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, the County and other counties in the prosecution of claims against certain opioid manufacturers, and

**WHEREAS,** the County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed, and

**WHEREAS,** the County believes it to be in the best interest of the County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter, and

**WHEREAS,** by pursuing the claims against certain opioid manufacturers, the County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by the County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED** by the Fond du Lac County Board of Supervisors that the County authorizes and agrees to be bound by the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County.

**BE IT FURTHER RESOLVED** that the County shall endeavor to faithfully perform all actions required of the County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

**BE IT FURTHER RESOLVED** that the County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Dated _October 31, 2017_

SUBMITTED BY:
FINANCE, PERSONNEL AND
ECONOMIC DEVELOPMENT COMMITTEE

_____
Thomas E. Dornbrook

_____
Martin S. Ryan

_____
Kenneth W. Depperman

_____
Martin F. Farrell

_____
Judy Goldsmith

**FISCAL NOTE:** This resolution does not require an appropriation from the County general fund. Staff time for data requests will be absorbed within County budgets as necessary.

APPROVED BY:

_____
Allen J. Buechel
COUNTY EXECUTIVE

APPROVED BY:

_____
Meggie R. McNamara
CORPORATION COUNSEL

 

October 11, 2017

**VIA EMAIL**

Fond du Lac County
c/o Martin Farrell, Board Chair

RE:     ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with
        Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid
        Manufacturers***

Dear Fond du Lac County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel") will provide legal services to Fond du Lac County ("County") in relation to the
investigation and prosecution of certain claims against the following manufacturers and other parties
involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The
Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson &
Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health
Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn
Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations
of the facts and circumstances surrounding the potential claim(s), there may be additional parties
sought to be made responsible and/or certain of the aforementioned parties may be removed from the
potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress
and developments, and respond to County's inquiries.  County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel
and National Law Firm in the gathering of information necessary to investigate and prosecute the
Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Fond du Lac County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Fond du Lac County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Fond du Lac County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Fond du Lac County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Fond du Lac County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Fond du Lac County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                        Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

FOND DU LAC COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: _____

Title: _____

cc:    Corporation Counsel

29243067_1.DOCX

| Roll Call | Discussion | Voting... | Results | Agenda | Setup | Options |
|---|---|---|---|---|---|---|

| Name | Vote | Name | Vote |
|---|---|---|---|
| FARRELL | AYE | GIESE | AYE |
| G. WILL | AYE | FENRICK | (2) AYE |
| MADIGAN | EXCUSED | SCHROEDER | AYE |
| M. WILL | AYE | MYRECHUCK | AYE |
| EVERSON | AYE | KITCHEN | AYE |
| DORNBROOK | AYE | ZORN | AYE |
| KAUFMAN | AYE | ALDRICH | AYE |
| SIMON | AYE | D. WILL | AYE |
| KOCH | AYE | KOLSTAD | AYE |
| DEPPERMAN | AYE | RYAN | AYE |
| ABEL | AYE | HAYES | AYE |
| STENZ | (M) AYE | GOLDSMITH | AYE |
| RICKERT | AYE | | |

4B Res. 54-17     Passed (24 Y - 0 N - 0 A - 1 Absent)     Majority Vote

RollCall-Pro Premium Tuesday, October 31, 2017 at 07:23 PM

# EXHIBIT 76

 **Crueger Dickinson**

 **von Briesen**
von Briesen & Roper, s.c. | Attorneys at Law

September 25, 2017

VIA EMAIL

Douglas County
c/o Mark Liebaert, Board Chair

RE: *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Douglas County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Douglas County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

## SCOPE OF SERVICES

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

## RESPONSIBILITIES

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Douglas County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially *responsible* to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Douglas County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Douglas County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

### A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

### B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

### C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Douglas County
Engagement Letter
Page -5

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Douglas County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Douglas County
Engagement Letter
Page -7

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                Erin K. Dickinson

**SIMONS HANLY CONROY LLC (Acknowledged)**

Paul J. Hanly, Jr.

**DOUGLAS COUNTY** agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____    Date: _11/2/17_

Title:   Douglas County Acting Administrator

By: _____    Date: _1(/2/17_

Title:   Douglas County Corporation Counsel

29270824_1.DOCX

# EXHIBIT 77

RESOLUTION NO. __17-10A__-371

AGENDA NO. __12.G.(1)__

**RESOLUTION**

**ROCK COUNTY BOARD OF SUPERVISORS**

Supervisor J. Russell Podzilni
INITIATED BY

Wisconsin Counties Assoc.
DRAFTED BY



County Board Staff Committee
SUBMITTED BY

October 6, 2017
DATE DRAFTED

AUTHORIZING ENGAGEMENT LETTER IN RELATION TO CLAIMS AGAINST
OPIOID MANUFACTURERS

1   **WHEREAS,** Rock County ("County") is concerned with the recent rapid rise in troubles
2   among County citizens, residents, and visitors in relation to problems arising out of the use,
3   abuse and overuse of opioid medications, which according to certain studies, impacts millions
4   of people across the country; and
5
6   **WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens,
7   residents and visitors are not unique to County and are, in fact, issues and concerns shared by
8   all other counties in Wisconsin and, for that matter, states and counties across the country, as
9   has been well documented through various reports and publications, and is commonly referred
10  to as the Opioid Epidemic ("Opioid Epidemic:); and
11
12  **WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and,
13  according to the Centers for Disease Control and Prevention, amount to over $75 billion
14  annually; and
15
16  **WHEREAS,** the National Institute for Health has identified the manufacturers of certain of
17  the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic
18  by virtue of their aggressive and, according to some, unlawful and unethical marketing
19  practices; and
20
21  **WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for
22  their actions that relate directly to the rise of the Opioid Epidemic; and
23
24  **WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in
25  its programs and services related to the Opioid Epidemic; and
26
27  **WHEREAS,** County is responsible for a multitude of programs and services, all of which
28  require County to expend resources generated through state and federal aid, property tax levy,
29  fees and other permissible revenue sources; and
30
31  **WHEREAS,** County's provision of programs and services becomes more and more difficult
32  every year because the costs associated with providing the Opioid Epidemic programs and
33  services continue to rise, yet County's ability to generate revenue is limited by strict levy limit
34  caps and stagnant or declining state and federal aid to County; and
35
36  **WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing
37  with the Opioid Epidemic are sums that cannot be used for other critical programs and
38  services that County provides to County citizens, residents and visitors; and
39
40  **WHEREAS,** County has been informed that numerous counties and states across the country
41  have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to
42  force the persons and entities responsible for the Opioid Epidemic to assume financial
43  responsibility for the costs associated with addressing, combatting and otherwise dealing with
44  the Opioid Epidemic; and

17-10A-371

12.G.(2)

Authorizing Engagement Letter in Relation to Claims against Opioid Manufacturers
Page 2

45  **WHEREAS,** County has engaged in discussions with representatives of the law firms of von
46  Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law
47  Firms") related to the potential for County to pursue certain legal claims against certain opioid
48  manufacturers; and
49
50  **WHEREAS,** County has been informed that the Law Firms have the requisite skill,
51  experience and wherewithal to prosecute legal claims against certain of the opioid
52  manufacturers on behalf of public entities seeking to hold them responsible for the Opioid
53  Epidemic; and
54
55  **WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute
56  the aforementioned claims on a contingent fee basis whereby the Law Firms would not be
57  compensated unless County receives a financial benefit as a result of the proposed claims and
58  the Law Firms would advance all claim-related costs and expenses associated with the claims;
59  and
60
61  **WHEREAS,** all of the costs and expenses associated with the claims against certain of the
62  opioid manufacturers would be borne by the Law Firms; and
63
64  **WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part
65  of this Resolution ("Engagement Letter") specifying the terms and conditions under which the
66  Law Firms would provide legal services to County and otherwise consistent with the terms of
67  this Resolution; and
68
69  **WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in
70  extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms,
71  County and other counties in the prosecution of claims against certain of the opioid
72  manufacturers; and
73
74  **WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this
75  Resolution and the Engagement Letter by providing information and materials to the Law
76  Firms and, as appropriate, the Wisconsin Counties Association as needed; and
77
78  **WHEREAS,** County believes it to be in the best interest of County, its citizens, residents,
79  visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims
80  against certain of the opioid manufacturers, all upon the terms and conditions set forth in the
81  Engagement Letter; and
82
83  **WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is
84  attempting to hold those persons and entities that had a significant role in the creation of the
85  Opioid Epidemic responsible for the financial costs assumed by County and other public
86  agencies across the country in dealing with the Opioid Epidemic.
87
88  **NOW, THEREFORE, BE IT RESOLVED** that the Rock County Board of Supervisors,
89  duly assembled this 12th of October , 2017 does hereby authorize, and agrees to be
90  bound by, the Engagement Letter and hereby directs the appropriate officer of the County to
91  execute the Engagement Letter on behalf of the County; and
92
93  **BE IT FURTHER RESOLVED** that Rock County shall endeavor to faithfully perform all
94  actions required of County in relation to the claims contemplated herein and in the
95  Engagement Letter and hereby directs all County personnel to cooperate with and assist the
96  Law Firms in relation thereto.

12.G.(3)

Authorizing Engagement Letter in Relation to Claims against Opioid Manufacturers
Page 3


Respectfully Submitted,

COUNTY BOARD STAFF COMMITTEE

_____
J. Russell Podzilni, Chair

_____
Sandra Kraft, Vice Chair

_____
Eva Arnold

_____
Henry Brill

_____
Betty Jo Bussie

_____
Mary Mawhinney

_____
Louis Peer

_____
Alan Sweeney

_____
Terry Thomas


LEGAL NOTE:

The County board is authorized to take this action pursuant to sec's 100.18(11)(b), 59.01, and
59.51, Wis. Stats.

_____
Jodi Timmerman
Interim Corporation Counsel


FISCAL NOTE:

Minimal fiscal impact to the County unless the County receives proceeds from an awarded
recovery from the filed claim.

_____
Sherry Oja
Finance Director


ADMINISTRATIVE NOTE:

Proceeding with this action will protect Rock County's interests.  Recommended.

_____
Josh Smith
County Administrator



**Crueger Dickinson**

12.G.(4)

**von Briesen**

von Briesen & Roper, s.c. | Attorneys at Law

September 12, 2017

**Via Email**

[Name] County
c/o [County Board Chair, Executive, Administrator]
[Address]

RE: *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear [Name]:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to [NAME OF COUNTY] ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel

12.G.(5)

Engagement Letter
Page -2

and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County

Engagement Letter
Page -3

disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

12.G.(7)

Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

12.G.(8)

Engagement Letter
Page -5

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

12.G.(9)

Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

12.G.(10)

Engagement Letter
Page -7

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                               Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

[NAME] COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By:    _____        Date:  _____

Title:  _____

cc:    Corporation Counsel

29243067_1.DOCX

# EXHIBIT 80



Enrolled No. R161-036 **RESOLUTION** File No. 17-18/071

- AUTHORIZING ENGAGEMENT OF VON BRIESEN & ROPER, S.C. AND CRUEGER DICKINSON LLC,TOGETHER WITH SIMMONS HANLY CONROY LLC, AS COUNSEL FOR EAU CLAIRE COUNTY IN RELATION TO CLAIMS AGAINST OPIOID MANUFACTURERS AS SET FORTH IN THE ATTACHED ENGAGEMENT LETTER: DIRECTING THE COUNTY BOARD CHAIR TO EXECUTE THE ENGAGEMENT LETTER ON BEHALF OF EAU CLAIRE COUNTY-

**WHEREAS,** Eau Claire County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to the County and are in fact, issues and concerns shared by all other counties in Wisconsin and for that matter states and counties across the country, as has been well documented through various reports and publications and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** the County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** the County is responsible for a multitude of programs and services, all of which require the County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** the County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet the County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to the County; and

**WHEREAS,** all sums that the County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that the County provides to County citizens, residents and visitors; and

**WHEREAS,** the County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** the County has engaged in discussions with representatives of the law firms of Von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for the County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** the County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED,** that the Eau Claire County Board of Supervisors authorizes and agrees to be bound by the Engagement Letter and hereby directs the County Board Chair to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED,** that the Eau Claire County Board of Supervisors shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

**BE IT FURTHER RESOLVED,** that the Eau Claire County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

STATE OF WISCONSIN
                    ss
COUNTY OF EAU CLAIRE

I, Janet K. Loomis, County Clerk in and for said county, do HEREBY CERTIFY that the foregoing is a true and correct copy of a resolution adopted by the Eau Claire County Board of Supervisors at the meeting held on October 17, 2017.

Janet K. Loomis
County Clerk

**Crueger Dickinson**

**von Briesen**

von Briesen & Roper, s.c. | Attorneys at Law

October 6, 2017

**VIA EMAIL**

Eau Claire County
c/o Gregg Moore, Board Chair

**RE:** *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Eau Claire County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Eau Claire County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Eau Claire County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.      von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.      As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.      Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences  of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot  keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

     A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

     B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

     C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

    A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

    B.    For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e- mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Eau Claire County
Engagement Letter
Page -7

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                        Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

EAU CLAIRE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By:_____        Date: _____

Title:  _____

cc:      Corporation Counsel

29243067_1.DOCX

# EXHIBIT 81

# *WASHINGTON COUNTY, WISCONSIN*

Date of enactment: 11/2/17
Date of publication: 11/14/17

**VOTE**

## 2017 RESOLUTION 40

### Authorization to Pursue Claims Against Certain Opioid Manufacturers

**WHEREAS,** Washington County is concerned with the recent rapid rise in troubles among County citizens, residents and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Washington County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic; and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** Washington County is responsible for a multitude of programs and services, all of which require the County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** Washington County's provision of programs and services becomes more and more difficult every year because the costs associated with providing opioid epidemic programs and services continue to rise, yet the County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to the County; and

**WHEREAS,** Washington County also seeks as a remedy meaningful reform of the deceptive marketing practices employed by certain opioid manufacturers in order to allow physicians and patients the ability to make informed decisions about the use of opioids; and

**WHEREAS,** Washington County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the opioid epidemic to assume financial

responsibility for the costs associated with addressing, combatting and otherwise dealing with the opioid epidemic; and

**WHEREAS,** Washington County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC ("Law Firms") related to the potential for Washington County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** Washington County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the opioid epidemic; and

**WHEREAS,** the Law Firms have proposed that Washington County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Washington County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** Washington County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Washington County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** Washington County would participate in the prosecution of the claim(s) contemplated in this resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** Washington County believes it to be in the best interest of Washington County, its citizens, residents, visitors and tax payers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, Washington County is attempting to hold those persons and entities that had a significant role in the creation of the opioid epidemic responsible for the financial costs assumed by Washington County and other public agencies across the country in dealing with the opioid epidemic;

**NOW, THEREFORE, BE IT RESOLVED** by the Washington County Board of Supervisors that this Board agrees to be bound by the Engagement Letter and hereby directs the County Board Chair and the County Clerk to execute the Engagement Letter on behalf of Washington County, subject to the review and approval of the County Attorney.

**NOW, THEREFORE, BE IT FURTHER RESOLVED** that at least a portion of settlement proceeds received shall be designated for augmenting or creating opioid abuse treatment and prevention programs in Washington County.

1

2  VOTE REQUIREMENT FOR PASSAGE:   Majority

3

4  RESOLUTION SUMMARY: Resolution authorizing Washington County to pursue claims against
5  certain opioid manufacturers through an Engagement Letter with the law firms of von Briesen &
6  Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC.

7

8  APPROVED:                                   Introduced by members of the HUMAN SERVICES

9  (signed by Bradley S. Stern)                COMMITTEE as filed with the County Clerk.

10  Bradley S. Stern, County Attorney

11  Dated  11/7/17                             (signed by Kristine M. Deiss)

12                                             Kristine M. Deiss, Chairperson

13  Considered      11/2/17

14  Adopted         11/2/17

15  Ayes 18 Noes 4 Absent 4

16  Voice Vote_____

17

18  (At this time, a fiscal impact cannot be determined.)

# EXHIBIT 82

| | |
|---|---|
| **From:** | Rusk County Public Records Center <ruskcounty@govqa.us> |
| **Sent:** | Tuesday, April 1, 2025 4:22 PM |
| **To:** | Davis, Blake |
| **Subject:** | [Records Center] Public Records Request :: R000371-032425 |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

**EXTERNAL SENDER – Proceed with caution**

--- Please respond above this line ---



RE: Public Records Request of March 05, 2025, Reference # R000371-032425

Dear Blake Davis,

The Rusk County Wisconsin received a  request from you on March 05, 2025. Your request mentioned:

> **In accordance with the provisions of Wisconsin's Public Records Law, Wis. Stat §§ 19.31 et seq., I request the following documents that are in the possession, custody, or control of the Rusk County, Wisconsin:**
> **1. All documents and other records relating to Rusk County's approval to bring claims against OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; UnitedHealth Group Incorporated; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc.; or Express Scripts Specialty Distribution Services, Inc. in the national opioid litigation, In re Nat'l Prescription Opiate Litig., 1:17-md-2804 (N.D. Ohio) and its member cases (the "Opioid Litigation").**
> **2. All documents and other records relating to Rusk County's approval to file any complaint in the Opioid Litigation.**
> **3. All documents and other records relating to Rusk County's approval to amend or supplement its complaint in the Opioid Litigation.**
> **4. All engagement agreements, engagement letters, memoranda of understanding, memoranda of agreement, letters of intent, contracts, or other agreements (including any amendments, restatements, or modifications to such agreements) that Rusk County entered into with any law firms, attorneys, or other professionals (including, but not limited to, Jayne Conroy or Simmons Hanly Conroy LLP) to prosecute or Public Records Request to Rusk County, WI**
> **BY EMAIL**
> **Page 2**
> **assist with the prosecution of the Opioid Litigation or claims against any party or entity. 5. All**

**documents authorizing any individual to act outside of a public hearing to authorize, approve, or consent to Rusk County's filing or amending any lawsuit and all documents identifying any individuals with that authority.**

**I am not requesting any documents or records protected by the attorney-client privilege. But if you withhold any document responsive to these requests—whether due to a purported privilege, any exemption in Wisconsin's Public Records Law, or any other legal authority—please state, for each document withheld, the basis for the withholding. Should any document containing responsive material also contain material protected from disclosure by privilege, the exemptions in Wisconsin's Public Records Law, or any other legal authority, please redact the exempted material, clearly state the basis for the redaction, and produce the nonexempted material. If Rusk County believes that there are no documents in its possession, custody, or control that are responsive to these requests, please state that expressly.**

**Please provide written notice and disclosure of responsive within a reasonable time, as required by Wis. Stat § 19.35(4)(a). Electronic copies of the responsive records should be sent to blake.davis@alston.com in PDF format.**

*Rusk County received your request pursuant to Wisconsin Public Records Law, Wis. Stats. §§ 19.31-19.39 on the 3rd of March, 2025. We identified documents responsive to your request and continue searching our records.*

*Please be advised that we identified direct communications with counsel which are responsive to your request. However, these documents are privileged under common law and Wis., Stats. § 905.03 and are excepted from public disclosure under the Public Records Law.George v. Record Custodian, 169 Wis. 2d 573, 582, 485 N.W. 2$^{nd}$469, 464 (Ct. App. 1992).Wisconsin Newspress, Inc. v. Sch. Dist. Of Sheboygan Falls, 199 Wis. 2d 768, 782-83, 546 N.W. 2d 143, 148 (1996). Pursuant to Wis. Stats. § 19.35(1) substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect. Wis. Stats. § 19.36(1) provides, furthermore, that any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under § 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in § 19.36(6). Accordingly, if a record contains both information that is subject to disclosure under § 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.*

For questions or additional information, please reply to this email.

Sincerely,

Connie Meyer
County Clerk

To monitor the progress or update this request please log into the [Public Records Center](#)



# EXHIBIT 83

# ALSTON & BIRD

Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203-6818
704-444-1000 | Fax: 704-444-1111

**S. Blake Davis**                    Direct Dial: **+1 704-444-1241**                    Email: **blake.davis@alston.com**

March 7, 2025

BY EMAIL

Columbia County
112 E. Edgewater Street
Portage WI 53901

Re:     Public Records Request to Columbia County, WI

To whom it may concern:

In accordance with the provisions of Wisconsin's Public Records Law, Wis. Stat §§ 19.31 *et seq.*, I request the following documents that are in the possession, custody, or control of the Columbia County, Wisconsin:

1.  All documents and other records relating to Columbia County's approval to bring claims against OptumRx, Inc.; Optum, Inc.; OptumInsight, Inc.; OptumInsight Life Sciences, Inc.; OptumRx Discount Card Services, LLC; Optum Perks, LLC; OptumHealth Care Solutions, LLC; OptumHealth Holdings, LLC; Optum Health Networks, Inc.; UnitedHealth Group Incorporated; Express Scripts, Inc.; Express Scripts Administrators, LLC; Medco Health Solutions, Inc.; ESI Mail Order Processing, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; Evernorth Health, Inc.; or Express Scripts Specialty Distribution Services, Inc. in the national opioid litigation, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-2804 (N.D. Ohio) and its member cases (the "Opioid Litigation").

2.  All documents and other records relating to Columbia County's approval to file any complaint in the Opioid Litigation.

3.  All documents and other records relating to Columbia County's approval to amend or supplement its complaint in the Opioid Litigation.

4.  All engagement agreements, engagement letters, memoranda of understanding, memoranda of agreement, letters of intent, contracts, or other agreements (including any amendments, restatements, or modifications to such agreements) that Columbia County entered into with any law firms, attorneys, or other professionals (including, but not limited to, Jayne Conroy or Simmons Hanly Conroy LLP) to prosecute or

---

Public Records Request to Columbia County, WI
BY EMAIL
Page 2

assist with the prosecution of the Opioid Litigation or claims against any party or entity.

5. All documents authorizing any individual to act outside of a public hearing to authorize, approve, or consent to Columbia County's filing or amending any lawsuit and all documents identifying any individuals with that authority.

I am not requesting any documents or records protected by the attorney-client privilege. But if you withhold any document responsive to these requests—whether due to a purported privilege, any exemption in Wisconsin's Public Records Law, or any other legal authority—please state, for each document withheld, the basis for the withholding. Should any document containing responsive material also contain material protected from disclosure by privilege, the exemptions in Wisconsin's Public Records Law, or any other legal authority, please redact the exempted material, clearly state the basis for the redaction, and produce the nonexempted material. If Columbia County believes that there are no documents in its possession, custody, or control that are responsive to these requests, please state that expressly.

Please provide written notice and disclosure of responsive within a reasonable time, as required by Wis. Stat § 19.35(4)(a). Electronic copies of the responsive records should be sent to blake.davis@alston.com in PDF format.

Thank you for your prompt attention to this matter.

Sincerely,

*/s/ S. Blake Davis*

S. Blake Davis
Only licensed to practice in Florida (Not yet admitted to practice in North Carolina)

# EXHIBIT 84

## RESOLUTION NO. 61-17

## TO AUTHORIZE EXECUTING AN ENGAGEMENT LETTER ALLOWING LAW FIRMS TO PROVIDE LEGAL SERVICES ON BEHALF OF SHAWANO COUNTY IN PURSUING CLAIMS AGAINST CERTAIN OPIOD MANUFACTURERS

**Whereas,** Shawano County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**Whereas,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and

**Whereas,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**Whereas,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**Whereas,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**Whereas,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**Whereas,** County was approached by and subsequently has engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC, and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**Whereas,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**Whereas,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would pay all claim-related costs and expenses associated with the claims; and

**Whereas,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**Whereas,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County

and otherwise consistent with the terms of this Resolution; and

**Whereas,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**Whereas,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**Whereas,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**Whereas,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**Now, therefore, be it resolved by the Shawano County Board of Supervisors,** in session this 25th day of October, 2017, that it authorizes, and agrees to be bound by, the Engagement Letter and hereby authorizes the County Board Chair and Clerk to execute the Engagement Letter on behalf of the County.

**Be it further resolved,** that County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

**Be it further resolved,** that the County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Submitted by,   Ken Capelle
                Gerald Erdmann
                Gene Hoppe
                Kathy Luebke
                William Switalla
ADMINISTRATIVE COMMITTEE

Crueger
Dickinson

von Briesen

von Briesen & Roper, s.c. | Attorneys at Law

September 12, 2017

**VIA EMAIL**

Shawano County
c/o Jerry Erdmann, Board Chair

RE:   ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers***

Dear Shawano County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Shawano County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Shawano County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County.*In (see footnote on Page 7) consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Shawano County
Engagement Letter
Page -5

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Shawano County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Shawano County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                        Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

SHAWANO COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____     Date: ____10-27-17____
    Gerald Erdmann
Title: County Board Chair                    _____ 10-27-17
                                 Pamela Schmidt

cc:   Corporation Counsel                    County Clerk

29243067_1.DOCX

✳ The parties understand and agree that Shawano County shall not be responsible for any attorney fees, fees, costs or expenses of any nature (collectively, "Costs") other than its internal costs for gathering the information necessary to aid in the prosecution of the Lawsuit, unless such Lawsuit leads to a pecuniary Recovery for Shawano County which allows for the deduction of such Costs from the Recovery owed to Shawano County.  Counsel shall be completely responsible for all Costs assessed, awarded or taxed by any court, tribunal or office having jurisdiction relating to the Lawsuit.  Counsel shall in the same manner also be responsible for the defense and all Costs relating to the defense of any counterclaim alleged against Shawano County in the Lawsuit.

# EXHIBIT 85

s/Tom Clark                              s/Jeff Amo
s/John Chrest                            s/Roger Stevens
s/Norman Stoker                          s/Ron Carney
s/Jerrold Schmidt                        s/Karen Thayer

Supervisor Stevens made a motion to adopt this resolution. This was seconded by Supervisor Thayer. Forestry Administrator, Jim Zahasky and Assistant Administrator, Jon Schweitzer were both present for questions and gave a power point presentation showing some of the projects they have been working on and an aerial view of the 360-acre parcel. Voice vote was taken with 16 present voting Aye.

RESOLUTION NO. <u>36-10-2017</u>

TO:  THE HONORABLE BOARD OF SUPERVISORS OF JACKSON COUNTY, WISCONSIN

RE:  AUTHORIZE ENGAGEMENT LETTER FOR OPIOID EPIDEMIC

**WHEREAS,** Jackson County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Jackson County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** Counties have spent millions in unexpected and unbudgeted time and resources in programs and services related to the Opioid Epidemic; and

**WHEREAS,** Counties are responsible for a multitude of programs and services, all of which require Counties to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** Counties provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet Counties ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to Counties; and

**WHEREAS,** all sums that Counties expend in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Counties provide to County citizens, residents and visitors; and

**WHEREAS,** Counties have been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** Counties have engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for Counties to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** Counties have been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that Counties engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Counties receive a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to Jackson County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** Jackson County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to

assist the Law Firms, Jackson County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** Jackson County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** Jackson County believes it to be in the best interest of Jackson County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, Jackson County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Jackson County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:** Jackson County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:** Jackson County shall endeavor to faithfully perform all actions required of Jackson County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

Respectfully submitted this 16th day of October, 2017.

Executive & Finance

s/Ray Ransom
s/Jeff Amo
s/Roger Stevens
s/Karen Thayer
s/Ron Carney

**RE:   *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers***

Dear Jackson County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson

LLC (collectively "Counsel") will provide legal services to Jackson County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

## SCOPE OF SERVICES

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

## RESPONSIBILITIES

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but

is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege, However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law

firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c., respectfully requests that County consent, on a case by case basis, von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.     Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgement in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00 and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like,

and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provides services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**               **CRUEGER DICKINSON LLC**
s/Andrew T. Phillips                        s/Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)
Paul J. Hanly, Jr.

JACKSON COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: s/Ray Ransom                            Date: 10-17-17
Title: Jackson County Board Chairman

  Supervisor Chrest made a motion to adopt this resolution. This was seconded by Supervisor Carney. Discussion took place. Voice vote was taken with 16 present voting Aye.

RESOLUTION: <u>37-10-2017</u>

  RE: Approve Issuance of Tax Deed

  WHEREAS, Wisconsin State Statutes 75.14 (1) requires the county board to pass a resolution to order issuance of deeds for tax delinquent properties; and

  WHEREAS, all procedures were executed to provide proper notice to the land owner and creditors.

  NOW THEREFORE BE IT RESOLVED that the Jackson County Board of Supervisors orders issuance of deeds for:

| Municipality | Parcel # | Name | Legal Description |
|---|---|---|---|
| **Town of Adams** | 002-0242.0570 | **Timothy D & Lori A Sutkay** | 03-T22N-R03W 04-T22N-R03W |
| Tax Years | 2013 – 2016 | 1.510 Acres | Lot 15 of the Plat of Buckhorn Lake |

  Respectfully Submitted:



Crueger
Dickinson

September 25, 2017

**Via Email**

Jackson County
c/o Ray Ransom, Board Chair
Kyle Deno, Clerk/Administrative Coordinator

RE:     ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers***

Dear Jackson County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Jackson County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Jackson County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.     von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.     As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| **Firm Name** | **Percentage of Fees if Successful** |
| --- | --- |
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.     Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County

Jackson County
Engagement Letter
Page -3

or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Jackson County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

     A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

     B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

     C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Jackson County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Jackson County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

JACKSON COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: 10-17-17

Title: Jackson County Board Chairman

cc:     Corporation Counsel

29270824_1.DOCX

# EXHIBIT 86

 

September 5, 2017

**VIA EMAIL**

Jefferson County
c/o Benjamin Wehmeier, County Administrator
311 South Center Avenue, Rm. 111
Jefferson, WI 53549

RE: *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Sir or Madam:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Jefferson County, Wisconsin ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers

("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| FirmName | PercentageofFeesifSuccessful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

Jefferson County
Engagement Letter
Page - 3

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Jefferson County
Engagement Letter
Page - 4

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. Von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. Von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A. <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

Jefferson County
Engagement Letter
Page - 5

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

Jefferson County
Engagement Letter
Page - 6

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm.  County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

von Briesen & Roper, s.c., and Crueger Dickinson, LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

**COMMUNICATION BY E-MAIL**

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

**FILE RETENTION AND DESTRUCTION**

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

**MISCELLANEOUS**

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

Jefferson County
Engagement Letter
Page - 7

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                **CRUEGER DICKINSON LLC**


Andrew T. Phillips                           Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)


Paul J. Hanly, Jr.

JEFFERSON COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: 10/12/17
    Benjamin Wehmeier
Title: County Administrator


cc:    Corporation Counsel

29243067_1 DOCX

**RESOLUTION NO. 2017-39**

**Suing opioid pharmaceutical companies to recover county costs associated opioid abuse**

Executive Summary

Between 1999 and 2013, the amount of opioids dispensed in the United States quadrupled, with nearly 207 million opioid prescriptions being written in 2013 and almost 259 million in 2014. Opioid sales were nearly $10 billion in 2015. According to 2015 data from the National Survey on Drug Use and Health, in 2013 over one third of United States citizens had used prescription opioids, with a significant number of those resulting in addiction. The Wisconsin Counties Association has researched this issue and found that lawsuits filed in other states have alleged that certain pharmaceutical companies knew that profits could significantly increase if they were able to market and sell opioids for long-term use. In order to expand their market and achieve a dramatic increase in profits, some companies decided to create a marketing campaign designed to give the medical community and the public the false impression that opioids were safe for long-term use. This false marketing campaign is responsible for what is commonly referred to as the Opioid Epidemic.

The Wisconsin counties of Wood, Adams and Price have already agreed to become parties to the lawsuit and the Wisconsin Counties Association expects at least 60 more Wisconsin counties to join the lawsuit. Pursuing claims against certain opioid manufacturers will hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs incurred by Jefferson County and other public agencies across the state and country in dealing with the Opioid Epidemic.

The Administration & Rules Committee met on September 27, 2017, and recommended forwarding this resolution to the County Board for approval.

———————

WHEREAS, the Executive Summary is incorporated into this resolution, and

WHEREAS, the rapid rise in the abuse and overuse of opioids throughout the country has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic, and

WHEREAS, issues and concerns surrounding the Opioid Epidemic affect all Wisconsin counties, including Jefferson County, and

WHEREAS, according to the Centers for Disease Control and Prevention, societal costs associated with the Opioid Epidemic amount to over $75 billion annually throughout the country, and

WHEREAS, the National Institute for Health has identified the manufacturers of certain opioid medications as being directly responsible for the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices, and

WHEREAS, opioid manufacturers have been held civilly and criminally accountable for their actions that relate directly to the Opioid Epidemic, and

WHEREAS, Jefferson County has spent millions of dollars in unexpected and unbudgeted time and resources through its programs and services responding to the Opioid Epidemic, and

WHEREAS, time and resources that Jefferson County expends responding to the Opioid Epidemic are time and resources that could be used for other critical Jefferson County programs and services, and

WHEREAS, numerous states and counties throughout the country have filed or intend to file lawsuits against certain opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic, and

WHEREAS, Jefferson County officials have engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") to discuss legal claims against certain opioid manufacturers, and

WHEREAS, the Law Firms have proposed that Jefferson County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Jefferson County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims, and

WHEREAS, all of the costs and expenses associated with the claims against certain opioid manufacturers would be borne by the Law Firms, and

WHEREAS, the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to Jefferson County, consistent with the terms of this Resolution, and

WHEREAS, the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist in the prosecution of claims against certain opioid manufacturers, and

WHEREAS, it is  in the best interest of Jefferson County, its citizens, residents, visitors and taxpayers to join with other counties, inside and outside of Wisconsin, in pursuit of claims against certain opioid manufacturers.

NOW, THEREFORE, BE IT RESOLVED that Jefferson County authorizes its County Administrator to execute an Engagement Letter on behalf of Jefferson County with substantially similar terms and conditions as set forth in the attached Engagement Letter, and

BE IT FURTHER RESOLVED that Jefferson County shall endeavor to faithfully perform all actions required to advance the claims contemplated herein and set forth in the Engagement Letter

*Fiscal Note:  This resolution will have no cost to Jefferson County and may have a financial benefit depending on the outcome of the lawsuit.*

Ayes__VOICE VOTE___ Noes_____ Abstain_____ Absent_____ Vacant_____

Requested by
Administration & Rules Committee                                              10-10-17

J. Blair Ward:  10-04-17

REVIEWED: Administrator: bw; Corp. Counsel: jbw; Finance Director: md

# EXHIBIT 87

RESOLUTION NO. 72 - 17

## RESOLUTION TO APPROVE JOINING STATE AND NATIONWIDE LITIGATION EFFORTS IN RELATION TO CLAIMS AGAINST OPIOID MANUFACTURERS

**WHEREAS,** Washburn County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent tens of thousands in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:**

County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:**

County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

FISCAL IMPACT: Unknown

Recommended for adoption by the Executive Committee on October 11, 2017 and respectfully submitted this 17th day of October, 2017 by the Washburn County Board of Supervisors.


_____

Thomas Mackie, Chair

_____

Tom Ricci, 1st Vice Chair

_____

Beth Esser, 2nd Vice Chair

_____

Christopher Thompson

_____

Steve Waggoner


Motion: _Olsgard_ Second: _Hoeppner_

(Voice) (Roll) vote: Yes __✓__ No_____

I. Lolita Olson, as County Clerk, do hereby certify that the foregoing is a true and correct copy of the resolution adopted by the County of Washburn at the meeting held on: _10/17/17_

_Lolita Olson_

3





October 11, 2017

**Via Email**

Washburn County
c/o Thomas Mackie, Board Chair

RE: *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Washburn County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Washburn County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Washburn County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Washburn County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Washburn County
Engagement Letter
Page -4

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

     A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

     B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

     C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Washburn County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Washburn County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Washburn County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Washburn County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**


Andrew T. Phillips                                   Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)



Paul J. Hanly, Jr.

WASHBURN COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: ___10/17/17_____

Title: __County Board Chair_____

cc:     Corporation Counsel

29243067_1.DOCX