# EXHIBIT 88



**LANGLADE COUNTY**

**RESOLUTION #54-2017**

**INTRODUCED BY:  EXECUTIVE COMMITTEE and SOCIAL SERVICES COMMITTEE**

**INTENT:  TO AUTHORIZE ENTRY INTO AN AGREEMENT WITH LAW FIRMS TO PURSUE LEGAL ACTION AGAINST OPIOID MANUFACTURERS AT NO DIRECT COST TO LANGLADE COUNTY**

**WHEREAS**, Langlade County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS**, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Langlade County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS**, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS**, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS**, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS**, Langlade County has likely spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS**, Langlade County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS**, Langlade County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet Langlade County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS**, all sums that Langlade County expends in addressing, combating and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Langlade County provides to County citizens, residents and visitors; and

**WHEREAS**, Langlade County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combating and otherwise dealing with the Opioid Epidemic; and

**WHEREAS**, Langlade County has engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for Langlade County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS**, Langlade County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to Langlade County consistent with the terms of this Resolution; and

**WHEREAS,** Langlade County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Langlade County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** Langlade County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** Langlade County believes it to be in the best interest of the County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, Langlade County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Langlade County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED** that Langlade County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED** that Langlade County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

**EXECUTIVE COMMITTEE:**

David J. Solin, Chairman

Ronald Nye

Pete Pennington

Douglas Nonnenmacher

Holly Matucheski

**SOCIAL SERVICES COMMITTEE:**

Holly Matucheski, Chairman

Robert Berishek

Joseph Novak, III

Vernon Cahak

Richard H. Hurlbert

Fiscal Note:   County personnel and copy costs to participate in litigation process.
Potential unknown monetary recovery and injunctive relief leading to future savings in programs and services costs.

Adopted by the County Board of Langlade County
this 24th day of October, 2017.

Judy Nagel, Langlade County Clerk

 

October 9, 2017

**Via Email**

Langlade County
c/o David Solin, Board Chair

RE:    ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers***

Dear Langlade County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Langlade County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Langlade County
Engagement Letter
Page -2

Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below.  Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| **Firm Name** | **Percentage of Fees if Successful** |
| --- | --- |
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Langlade County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Langlade County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

### A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

### B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

### C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Langlade County
Engagement Letter
Page -5

Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Langlade County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Langlade County
Engagement Letter
Page -7

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                         Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

LANGLADE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: 10-24-17

Title: Corporation Counsel
Administrative Coordinator

cc:      Corporation Counsel

29243067_1.DOCX

By: _____          Date: 10-24-17

Title: County Board
Chairman

# EXHIBIT 89

## RESOLUTION # 2017 - 19

⊃ THE HONORABLE BOARD OF SUPERVISORS OF **FLORENCE COUNTY**, WISCONSIN

MEMBERS,

**WHEREAS,** Florence County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:**

County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED:**

County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Adopted ___October 17th___, 2017
I hereby certify that the foregoing resolution was duly adopted by the Florence County Board of Supervisors at a legal meeting on the__17th__day of__October___, 2017.

Jeanette Bomberg, Chair
Florence County Board of Supervisors

10-17-17
Date

Donna Trudell, Florence County Clerk

10-17-2017
Date

2

 

September 25, 2017

**VIA EMAIL**

Florence County
c/o Jeanette Bomberg, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Florence County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Florence County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Florence County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Florence County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Florence County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000.00. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Florence County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Florence County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services

Florence County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                        Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

FLORENCE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By:  _____           Date:  _10-17-17_

Title:  _____

cc:       Corporation Counsel

29270824_1.DOCX

# EXHIBIT 90

**Resolution 26-17**

**Approve Execution of Litigation Engagement Agreement
Against Opioid Manufacturers**

WHEREAS, Price County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

WHEREAS, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

WHEREAS, County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

WHEREAS, County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

WHEREAS, County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services which continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

WHEREAS, all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

WHEREAS, County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

WHEREAS, County has engaged in discussions with certain law firms regarding the possibility of pursuing claims against certain of the opioid manufacturers on a contingent basis; and

WHEREAS, the law firms are currently in the process of drafting an engagement agreement that would contain the specific terms of representation for the County in relation to the potential claims; and

WHEREAS, County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the same law firms and has expressed a desire to assist the law firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

WHEREAS, County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, subject to completing the negotiation of an engagement agreement with the law firms; and

WHEREAS, by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

NOW, THEREFORE, BE IT RESOLVED:  County authorizes the Board Chair to execute the engagement agreement with the law firms provided that there is no out-of-pocket cost to County and further provided that the Board Chair, Administrator and Corporation Counsel have reviewed and approved the form of the engagement agreement; and

BE IT FURTHER RESOLVED: County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the engagement agreement and hereby directs all County personnel to cooperate with and assist the law firms in relation thereto.

Submitted by the Price County Executive Committee:

_____
Bruce Jilka, Chair

_____
James Hintz

_____excused_____
Larry Palecek

Reviewed by County Administrator:

_____
Ronald Heikkinen

_____
Robert Kopisch

_____
Nicholas Trimner

Adopted by the Price County Board of Supervisors this 19th day of September, 2017.

_____
Bruce Jilka, County Board Chair

_____
Jean Gottwald, County Clerk

For:  12     Against:  0

ORIGINAL

2

Crueger
Dickinson



von Briesen & Roper, s.c. | Attorneys at Law

September 20, 2017

**VIA EMAIL**

Price County
c/o Bruce Jilka, County Board Chair
126 Cherry St, Rm 106
Phillips, WI 54555

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with
Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid
Manufacturers*

Dear Mr. Jilka:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel) will provide legal services to PRICE COUNTY ("County") in relation to the investigation
and prosecution of certain claims against the following manufacturers and other parties involved with
the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue
Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson,
Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health
Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn
Webster (collectively "Opioid Manufacturers").

attorney client privilege - strategy / legal advice

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence attorney client privilege -scope of representation
County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, attorney client privilege - Legal Advice
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein. attorney client privilege - scope

attorney client privilege - scope of representation

County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. attorney client privilege - scope of representation
*See. Sandra TE v. South Berwyn School Dist 100*
600 F.3d 612 (2010)

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

attorney client privilege - legal advice re: conflicts
See United States ex rel. Patzer v. Sikorsky Aircraft Corporation,
575 F.Supp.3d 1032 (2021).

Engagement Letter
Page -3



attorney client privilege re: Legal Advice - Conflicts

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

### A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000.00, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

### B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

### C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. attorney client privilege - scope of representation

Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A. If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B. For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. attorney client privilege - Legal Advice For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

attorney client privilege - Legal Advice

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin

attorney client privilege - scope of representation

attorney client privilege - scope of representation

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules.
attorney client privilege - scope of representation

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services

Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

PRICE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____     Date: 9/21/17

Title: BOARD CHAIRPERSON

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 92

**SHEBOYGAN COUNTY     RESOLUTION NO.   13   (2017/18)**

Re:    **Authorizing County to Enter into Engagement Letter to Pursue Legal Claims Against Certain Opioid Manufacturers**

*Printed as amended*

**WHEREAS**, Sheboygan County (County) is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse, and overuse of opioid medications which, according to certain studies, impacts millions of people across the country, and

**WHEREAS**, issues and concerns surrounding opioid use, abuse, and overuse by citizens, residents, and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country and has been well documented through various reports and publications and is commonly referred to as the Opioid Epidemic, and

**WHEREAS**, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 Billion annually, and

**WHEREAS**, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices, and

**WHEREAS**, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic, and

*WHEREAS, County has spent millions for programs and services related to the Opioid Epidemic, and*

**WHEREAS**, County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, the property tax levy, fees, and other permissible revenue sources, and

**WHEREAS**, County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County, and

**WHEREAS**, all sums that County expends in addressing, combatting, and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents, and visitors, and

**WHEREAS**, County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting, and otherwise dealing with the Opioid Epidemic, and

**WHEREAS**, County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC, and Simmons Hanly Conroy LLC (Law Firms) related to the potential for County to pursue certain legal claims against certain opioid manufacturers, and

**WHEREAS**, County has been informed that the Law Firms have the requisite skill, experience, and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic, and

**WHEREAS**, the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claims-related costs and expenses associated with the claims, and

**WHEREAS**, all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms, and

**WHEREAS**, the Law Firms have prepared an engagement letter (Engagement Letter), which is submitted as part of this Resolution, specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution, and

**WHEREAS**, County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County, and other counties in the prosecution of claims against certain of the opioid manufacturers, and

**WHEREAS**, County would participate in the prosecution of the claims contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed, and

**WHEREAS**, County believes it to be in the best interests of County, its citizens, residents, visitors, and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter, and

**WHEREAS**, by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic;

**NOW, THEREFORE, BE IT RESOLVED** that County authorizes and agrees to be bound by the Engagement Letter and hereby directs the appropriate officer of County to execute the Engagement Letter on behalf of County.

**BE IT FURTHER RESOLVED** that County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter

and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

       **BE IT FURTHER RESOLVED**, that the County Clerk shall forward a copy of this Resolution together with the signed Engagement Letter to the Wisconsin Counties Association, 22 East Mifflin Street – Suite 900, Madison, WI 53703.

       Respectfully submitted this 24th day of October, 2017.

**EXECUTIVE COMMITTEE**

*Thomas Wegner*
Thomas Wegner, Chairperson

*George Marthenze*
George Marthenze, Vice-Chairperson

*William C. Goehring*
William C. Goehring, Secretary

*Vernon Koch*
Vernon Koch

*Edward J. Procek*
Edward J. Procek

Opposed to Introduction:

Adopted 10.24.17



Crueger
Dickinson

von Briesen
von Briesen & Roper, s.c. | Attorneys at Law

September 25, 2017

VIA EMAIL

Sheboygan County
c/o Thomas Wegner, Board Chair
Adam Payne, Administrator

RE:   *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Sheboygan County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Sheboygan County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel

Sheboygan County
Engagement Letter
Page -2

and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County

Sheboygan County
Engagement Letter
Page -3

disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Sheboygan County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.   <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.   <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.   <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Sheboygan County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Sheboygan County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Sheboygan County
Engagement Letter
Page -7

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**


Andrew T. Phillips                                        Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)


Paul J. Hanly, Jr.

SHEBOYGAN COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.


By: _____        Date: _____

Title: _____


cc:     Corporation Counsel


29270824_1.DOCX

# EXHIBIT 94

# ☀ RESOLUTION ☀

Resolution No. ___R11-2017-1268___

## A RESOLUTION IN RELATION TO CLAIMS AGAINST OPIOID MANUFACTURERS

*TO THE HONORABLE BOARD OF SUPERVISORS OF ASHLAND COUNTY, WISCONSIN*

MEMBERS,

**WHEREAS,** Ashland County is concerned with the recent rapid rise in troubles among Ashland County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Ashland County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** Ashland County has spent millions of dollars in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** Ashland County is responsible for a multitude of programs and services, all of which require Ashland County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** Ashland County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet Ashland County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to Ashland County; and

**WHEREAS,** all sums that Ashland County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Ashland County provides to Ashland County citizens, residents and visitors; and

**WHEREAS,** Ashland County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** Ashland County has engaged in discussions with representatives of the law firms of Von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** Ashland County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that Ashland County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Ashland County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to Ashland County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** Ashland County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Ashland County and other counties in the prosecution of claims against certain opioid manufacturers; and

**WHEREAS,** Ashland County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** Ashland County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain opioid manufacturers, Ashland County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Ashland County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:** Ashland County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED** Ashland County shall endeavor to faithfully perform all actions required of Ashland County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all Ashland County personnel to cooperate with and assist the Law Firms in relation thereto.

The Ashland County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted by the Ashland County Executive Committee on October 25, 2017.

Resolution No.  **R11-2017-1268**

Dated at the City of Ashland, Wisconsin this 14th day of November, 2017.

Signed:

---

**CERTIFICATION**

I hereby certify that the foregoing resolution is a true, correct, and complete copy of a resolution duly and regularly passed by the Ashland County Board of Supervisors, of the County of Ashland on the 14th day of *November*, 20 17 and that said resolution has not been repealed or amended, and is now in full force and effect. Dated this 14th day of *November* 17

Heather W Schutte, Ashland County Clerk



**Crueger
Dickinson**

**von Briesen**
von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

Via Email

Ashland County
c/o Pete Russo, Board Chair

RE:    *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with
        Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid
        Manufacturers*

Dear Ashland County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel") will provide legal services to Ashland County ("County") in relation to the investigation
and prosecution of certain claims against the following manufacturers and other parties involved with
the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue
Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson,
Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health
Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn
Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations
of the facts and circumstances surrounding the potential claim(s), there may be additional parties
sought to be made responsible and/or certain of the aforementioned parties may be removed from the
potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress
and developments, and respond to County's inquiries.  County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel
and National Law Firm in the gathering of information necessary to investigate and prosecute the
Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Ashland County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Ashland County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Ashland County
Engagement Letter
Page -4

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel and National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Ashland County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Ashland County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Ashland County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals
listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

**CRUEGER DICKINSON LLC**

Andrew T. Phillips

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

ASHLAND COUNTY agrees to retain the services of Counsel and National Law Firm all upon the
terms and conditions specified above.

By: _____   Date: _11-14-2017_

Title: _____

cc:    Corporation Counsel

29243067_1.DOCX

# EXHIBIT 95

Resolution No. 54 - 17

**RESOLUTION TO APPROVE ENGAGEMENT LETTER TO ENTER INTO LITIGATION AGAINST PHARMACEUTICAL COMPANIES TO RECOVER FUNDS EXPENDED DUE TO THE OPIOID EPIDEMIC**

WHEREAS, Chippewa County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

WHEREAS, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

WHEREAS, County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

WHEREAS, County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

WHEREAS, County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

WHEREAS, all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

54  WHEREAS, County has been informed that numerous counties and states across the
55 country have filed or intend to file lawsuits against certain of the opioid manufacturers in an
56 effort to force the persons and entities responsible for the Opioid Epidemic to assume financial
57 responsibility for the costs associated with addressing, combatting and otherwise dealing with
58 the Opioid Epidemic; and

59  WHEREAS, County has engaged in discussions with representatives of the law firms of von
60 Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms")
61 related to the potential for County to pursue certain legal claims against certain opioid
62 manufacturers; and

63  WHEREAS, County has been informed that the Law Firms have the requisite skill,
64 experience and wherewithal to prosecute legal claims against certain of the opioid
65 manufacturers on behalf of public entities seeking to hold them responsible for the Opioid
66 Epidemic; and

67  WHEREAS, the Law Firms have proposed that County engage the Law Firms to prosecute
68 the aforementioned claims on a contingent fee basis whereby the Law Firms would not be
69 compensated unless County receives a financial benefit as a result of the proposed claims and
70 the Law Firms would advance all claim-related costs and expenses associated with the claims;
71 and

72  WHEREAS, all of the costs and expenses associated with the claims against certain of the
73 opioid manufacturers would be borne by the Law Firms; and

74  WHEREAS, the Law Firms have prepared an engagement letter, which is submitted as part
75 of this Resolution ("Engagement Letter") specifying the terms and conditions under which the
76 Law Firms would provide legal services to County and otherwise consistent with the terms of
77 this Resolution; and

78  WHEREAS, County is informed that the Wisconsin Counties Association has engaged in
79 extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms,
80 County and other counties in the prosecution of claims against certain of the opioid
81 manufacturers; and

82  WHEREAS, County would participate in the prosecution of the claim(s) contemplated in
83 this Resolution and the Engagement Letter by providing information and materials to the Law
84 Firms and, as appropriate, the Wisconsin Counties Association as needed; and

85  WHEREAS, County believes it to be in the best interest of County, its citizens, residents,
86 visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims
87 against certain of the opioid manufacturers, all upon the terms and conditions set forth in the
88 Engagement Letter; and

89  WHEREAS, by pursuing the claims against certain of the opioid manufacturers, County is

9.6

90  attempting to hold those persons and entities that had a significant role in the creation of the
91  Opioid Epidemic responsible for the financial costs assumed by County and other public
92  agencies across the country in dealing with the Opioid Epidemic;

93        NOW, THEREFORE BE IT RESOLVED, that the Chippewa County Board of Supervisors
94  does hereby authorize and agrees to be bound by, the Engagement Letter and hereby directs
95  the County Administrator to execute the Engagement Letter on behalf of the County; and
96
97        BE IT FURTHER RESOLVED, that Chippewa County shall endeavor to faithfully perform all
98  actions required of the County in relation to the claims contemplated herein and in the
99  Engagement Letter and hereby directs all County personnel to cooperate with and assist the
100  Law Firms in relation thereto; and
101
102        BE IT FURTHER RESOLVED, that the County Clerk shall forward a copy of this Resolution,
103  together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E.
104  Mifflin Street, Suite 900, Madison, Wisconsin, 53703.
105
106        Forwarded to the County Board by the Executive Committee.
107
108  **FINANCIAL IMPACT:**
109  It is unclear what the fiscal impact will be to Chippewa County.  The main cost will be staff time
110  to gather records, comply with discovery requests, and to determine what costs were
111  attributable to the opioid epidemic that were borne by Chippewa County.
112

| | |
|---|---|
| 113 | **11/7/2017    County Board** |
| 114 | **RESULT:        APPROVED [9 TO 4]** |
| 115 | **MOVER:**       Florian Skwierczynski, (Vice-Chairman) |
| 116 | **SECONDER:**    Kari Ives, District 12 |
| 117 | **AYES:**  Albarado, Skwierczynski, Steele, Sikorski, Zwiefelhofer, Bergeron, Gerrish, Ives, Hunt |
| 118 | **NAYS:**  Tom Thornton, Dean Gullickson, Lawrence J. Willkom, Leigh Darrow |
| 119 | **ABSENT:**      Matthew Hartman, Chuck Hull |

120
121  History:
122  10/17/17      Executive Committee  FORWARD TO COUNTY BOARD
123
Approved as to Form:


*James B. Sherman*                              *Melissa J. Roach*
James B. Sherman, Deputy Corporation Counsel   10/12/2017    Melissa J. Roach, Finance Director          10/12/2017

9.6

Frank R. Pascarella

Frank R. Pascarella, County Administrator          10/12/2017

124

9.6.a

**Crueger Dickinson**

**von Briesen**

von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

**VIA EMAIL**

Chippewa County
c/o Anson Albarado, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Chippewa County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Chippewa County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

9.6.a

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.      von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.      As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.      Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Attachment: Proposed Engagement Letter for Opioid Litigation  (54 - 17 : Resolution to Approve Engagement Letter Re Opioid Litigation)

Packet Pg. 96

9.6.a

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

9.6.a

Chippewa County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

9.6.a

Chippewa County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Chippewa County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

**COMMUNICATION BY E-MAIL**

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

**FILE RETENTION AND DESTRUCTION**

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

**MISCELLANEOUS**

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Chippewa County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**


Andrew T. Phillips                                Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)


Paul J. Hanly, Jr.

CHIPPEWA COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.


By: _____     Date: _____

Title: _____

cc:     Corporation Counsel

29243067_1.DOCX

Attachment: Proposed Engagement Letter for Opioid Litigation  (54 - 17 : Resolution to Approve Engagement Letter Re Opioid Litigation)

# EXHIBIT 96

STATE OF WISCONSIN   )
                            ) SS.
COUNTY OF DUNN      )

     I, Julie A. Wathke, County Clerk in and for the County of Dunn, State of Wisconsin, do hereby certify that the attached copy of Resolution No. 2017-88 is a true and correct copy of the original ordinance duly adopted by the Dunn County Board of Supervisors at a meeting held on November 14, 2017.

     Given under my hand and seal in the City of Menomonie this 15th day of November, 2017.

Julie A. Wathke
Dunn County Clerk

12,B,7

DUNN COUNTY, WISCONSIN

RESOLUTION NO. _88_

**Approving Investigation and Pursuit of Legal Claims Against Opioid Manufacturers**

WHEREAS, the Dunn County Board of Supervisors is concerned with the recent rapid rise in troubles among Dunn County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Dunn County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

WHEREAS, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

WHEREAS, Dunn County has expended significant time and resources in its programs and services related to the Opioid Epidemic; and

WHEREAS, Dunn County is responsible for a multitude of programs and services, all of which require Dunn County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

WHEREAS, Dunn County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet Dunn County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to Dunn County; and

WHEREAS, all sums that Dunn County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Dunn County provides to citizens, residents and visitors; and

WHEREAS, The Dunn County Board of Supervisors has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

WHEREAS, Dunn County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for Dunn County to pursue certain legal claims against certain opioid manufacturers; and

WHEREAS, Dunn County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

WHEREAS, the Law Firms have proposed that Dunn County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Dunn County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

WHEREAS, all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

WHEREAS, the Law Firms have prepared an engagement agreement, which is submitted as part of this Resolution ("engagement agreement") specifying the terms and conditions under which the Law Firms would provide legal services to Dunn County and otherwise consistent with the terms of this Resolution; and

WHEREAS, Dunn County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Dunn County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

WHEREAS, Dunn County would participate in the prosecution of the claim(s) contemplated in this Resolution and the engagement agreement by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

WHEREAS, the Dunn County Board of Supervisors believes it to be in the best interest of Dunn County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the engagement agreement; and

WHEREAS, by pursuing the claims against certain of the opioid manufacturers, Dunn County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Dunn County and other public agencies across the country in dealing with the Opioid Epidemic.

NOW, THEREFORE, BE IT RESOLVED that the Dunn County Board of Supervisors authorizes the Corporation Counsel to negotiate, and the County Board Chair to execute, an Engagement Letter with the Law Firms on behalf of Dunn County; and

BE IT FURTHER RESOLVED that the Dunn County Board of Supervisors shall endeavor to faithfully perform all actions required of the County in relation to the claims contemplated herein and in the engagement agreement and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto; and

BE IT FURTHER RESOLVED that the County Clerk shall forward a copy of this Resolution, together with the signed engagement agreement, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Offered this 14th day of November, 2017, at Menomonie, Wisconsin.

OFFERED BY THE COMMITTEE ON
ADMINISTRATION:

Adopted on: *November 14, 2017*                                    _James Tripp_

James Tripp, Chair

ATTEST:                                          Approved as to Form and Execution:

_Julie A. Wathke_                                _Nicholas P. Lange_

Julie A. Wathke, County Clerk                    Nicholas P. Lange, Corporation Counsel

**Budget Impact:** Because the law firms to be engaged for this litigation are working on a contingent fee basis, there is no direct fiscal impact to Dunn County or its annual budget, although county staff will be involved in compiling records and information used in support of claims. Unknown potential monetary recovery and injunctive relief could result in future savings in program and services costs.





October 6, 2017

**VIA EMAIL**

Dunn County
c/o Steven Rasmussen, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Dunn County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Dunn County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Dunn County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Dunn County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c, is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Dunn County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

      A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

      B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

      C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Dunn County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.     If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.     For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Dunn County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Dunn County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                 **CRUEGER DICKINSON LLC**

Andrew T. Phillips                              Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

DUNN COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____ Date: ___11/21/2017___

Title: ___County Board Chair___

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 97

# RESOLUTION 43-2017

_____

Resolution offered by Executive Committee:

    **WHEREAS,** Forest County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

    **WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

    **WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over S75 billion annually; and

    **WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

    **WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

    **WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

    **WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

    **WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

    **WHEREAS,** all sums that County expends in addressing, combating and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical
{00061232.DOC}

programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combating and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Finns, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and

{00061232.DOC}

materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS**, County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED: THE FOREST COUNTY BOARD OF SUPERVISORS** authorizes and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED**, County shall endeavor to perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto; and

**BE IT FURTHER RESOLVED**, that the County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

I, County Clerk, in and for the said County of Forest, State of Wisconsin, do hereby certify that the foregoing is a true and correct copy of a Resolution adopted by the County Board of Supervisors of Forest County, Wisconsin, in legal session on the 14 day of November, 2017.

Dated this 14 day of November, 2017.

Forest County Clerk

Supervisor

{00061232.DOC}

**ROLL CALL SHEET**
COUNTY BOARD
Date  11/14/17

No. 43-2017

Resolution  ✓                    Ordinance _____

Motion:                          Adopted _____

1st  Delcourt                    Lost _____

2nd  Matuszewski                 Tabled _____

| | Aye | No | Absent |
|---|---|---|---|
| Berg | ✓ | | |
| Bunda | ✓ | | |
| Campbell | ✓ | | |
| Chaney | ✓ | | |
| Collins | ✓ | | |
| Connors, Jr. | ✓ | | |
| Dailey | ✓ | | |
| Dehart | ✓ | | |
| Gallion | | | ✓ |
| Houle | ✓ | | |
| Huettl | | ✓ | |
| Karl | ✓ | | |
| Laabs | | ✓ | |
| Lukas | ✓ | | |
| Marvin | ✓ | | |
| Matuszewski | ✓ | | |
| Millan | ✓ | | |
| Otto | ✓ | | |
| Shaffer | ✓ | | |
| Stamper | ✓ | | |
| Tauer | ✓ | | |
| TOTAL | 18 | 2 | 1 |





October 11, 2017

VIA EMAIL

Forest County
c/o Paul Millan, Board Chair

RE:    **Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers**

Dear Forest County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Forest County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Forest County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.      von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.      As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.      Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Forest County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Forest County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

### A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart. 

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

### B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

### C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Forest County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

    A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

    B.    For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Forest County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible.  Counsel's professional
liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for
limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-
mail, and this will be the way in which communications occur with County.  While unencrypted e-
mail is convenient and fast, there is risk of interception, not only within internal networks and the
systems used by internet service providers, but elsewhere on the internet and in the systems of our
clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and
electronic records maintained are subject to a 10-year retention period from the last matter activity
date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of
matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy
records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State
of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the
terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the
State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District
Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that
all previous understandings are merged in this Engagement Letter, and that no modification of this
Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application
thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the
remainder of this Engagement Letter, or the application of such term or provision to persons or
circumstances other than those to which it is held invalid or unenforceable, shall not be affected
thereby; and every other term and provision of this Engagement Letter shall be valid and shall be
enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of
this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each
party and the person signing on behalf of each party, represents that the person signing this
Engagement Letter has the authority to execute this document and thereby bind the party hereto on
whose behalf the person is signing. Specifically, County acknowledges that it is bound by this
Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and
will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at
any time during the course of representation you have any questions or comments about our services

Forest County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

von BRIESEN & ROPER, s.c.                    CRUEGER DICKINSON LLC


Andrew T. Phillips                                    Erin K. Dickinson

SIMONS HANLY CONROY LLC (Acknowledged)



Paul J. Hanly, Jr.

FOREST COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _Paul J Millon_                    Date: _11/14/17_

Title: _COUNTY BD CHAIRMAN_


cc:      Corporation Counsel

28243087_1.DOCX

# EXHIBIT 98

No. 2017/2018-65

**RESOLUTION AUTHORIZING MANITOWOC COUNTY TO PURSUE**
**LEGAL ACTION AGAINST OPIOID MANUFACTURERS AND OTHERS**
**RESPONSIBLE FOR THE OPIOID EPIDEMIC**

TO THE MANITOWOC COUNTY BOARD OF SUPERVISORS:

1       WHEREAS, Manitowoc County is concerned with the recent rapid rise in troubles among
2   Manitowoc County citizens, residents, and visitors in relation to problems arising out of the use,
3   abuse, and overuse of opioid medications; and
4
5       WHEREAS, issues and concerns surrounding opioid use, abuse, and overuse by citizens,
6   residents and visitors are not unique to Manitowoc County and are, in fact, issues and concerns
7   shared by other counties in Wisconsin and, for that matter, states and counties across the country,
8   as has been documented through various reports and publications, and is commonly referred to as
9   the Opioid Epidemic ("Opioid Epidemic"); and
10
11      WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and,
12   according to the Centers for Disease Control and Prevention, amount to over $75 billion annually;
13   and
14
15      WHEREAS, the National Institute for Health has identified the manufacturers of certain of
16   the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by
17   virtue of their marketing practices; and
18
19      WHEREAS, Manitowoc County has spent significant sums of money in unexpected and
20   unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and
21
22      WHEREAS, Manitowoc County is responsible for a multitude of programs and services,
23   all of which require County to expend resources generated through state and federal aid, property
24   tax levy, fees and other permissible revenue sources; and
25
26      WHEREAS, Manitowoc County's provision of programs and services becomes more and
27   more difficult every year because the costs associated with providing the Opioid Epidemic
28   programs and services continue to rise, yet Manitowoc County's ability to generate revenue is
29   limited by strict levy limit caps and stagnant or declining state and federal aid to Manitowoc
30   County; and
31
32      WHEREAS, all sums that Manitowoc County expends in addressing, combatting, and
33   otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical
34   programs and services that County provides to County citizens, residents, and visitors; and
35
36      WHEREAS, Manitowoc County has been informed that numerous counties and states
37   across the country have filed or intend to file lawsuits against certain of the opioid manufacturers
38   in an effort to force the persons and entities responsible for the Opioid Epidemic to assume

No. 2017/2018-65

39  financial responsibility for the costs associated with addressing, combatting, and otherwise dealing
40  with the Opioid Epidemic; and
41
42          WHEREAS, Manitowoc County has engaged in discussions with representatives of the
43  law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC
44  (the "Law Firms") related to the potential for Manitowoc County to pursue certain legal claims
45  against certain opioid manufacturers; and
46
47          WHEREAS, Manitowoc County has been informed that the Law Firms have the requisite
48  skill, experience and wherewithal to prosecute legal claims against certain of the opioid
49  manufacturers on behalf of public entities seeking to hold them responsible for the Opioid
50  Epidemic; and
51
52          WHEREAS, the Law Firms have proposed that Manitowoc County engage the Law Firms
53  to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would
54  not be compensated unless Manitowoc County receives a financial benefit as a result of the
55  proposed claims and the Law Firms would advance all claim-related costs and expenses associated
56  with the claims; and
57
58          WHEREAS, the Law Firms have prepared the attached draft engagement letter
59  ("Engagement Letter") that outlines terms and conditions under which the Law Firms would
60  provide legal services to Manitowoc County; and
61
62          WHEREAS, Manitowoc County would participate in the prosecution of the claim(s)
63  contemplated in this Resolution and the Engagement Letter by providing information and
64  materials to the Law Firms; and
65
66          WHEREAS, by pursuing the claims against certain of the opioid manufacturers,
67  Manitowoc County is attempting to hold those persons and entities that had a significant role in the
68  creation of the Opioid Epidemic responsible for the financial costs assumed by Manitowoc County
69  and other public agencies across the country in dealing with the Opioid Epidemic;
70
71          WHEREAS, Manitowoc County believes it to be in the best interest of Manitowoc County,
72  its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in
73  pursuit of claims against certain of the opioid manufacturers; and
74
75          NOW, THEREFORE, BE IT RESOLVED that the Manitowoc County Board of
76  Supervisors authorizes Manitowoc County to pursue legal action against those manufacturers of
77  certain opioid medications and any others that it deems responsible for the rapid rise of the Opioid
78  Epidemic; and
79
80          BE IT FURTHER RESOLVED that the Manitowoc County Board of Supervisors
81  authorizes the Corporation Counsel to negotiate and execute an engagement agreement with the
82  Law Firms on behalf of Manitowoc County with terms and conditions substantially similar to
83  those in the attached Engagement Letter, but with any modifications deemed necessary by the
84  Corporation Counsel, as part of any legal action contemplated by this Resolution; and

No. 2017/2018-65

85      BE IT FURTHER RESOLVED that the Manitowoc County Board of Supervisors intends
86  that any moneys recovered as a result of Manitowoc County pursuing claims against certain of the
87  opioid manufacturers will be used for programs and services related to drug addiction.

Dated this 27th day of November 2017.

Respectfully submitted by the
Executive Committee

_____
Jim Brey, Chair

FISCAL IMPACT:      Indeterminable.

FISCAL NOTE:        Reviewed and approved by Comptroller.

LEGAL NOTE:         Reviewed and approved as to form by Corporation Counsel.

APPROVED:       _____    11/27/17
                Bob Ziegelbauer, County Executive       Date

| Res #1 | Passed (17 Y - 7 N - 0 A - 1 Absent) | | Majority Vote |
|---|---|---|---|
| Holschbach | YES | Baumann | YES |
| Nickels | YES | Wagner | Absent |
| Metzger | YES | Cavanaugh | YES |
| Brey | YES | Maresh | YES |
| Nasep | NO | Muench | YES |
| Hansen | YES | Falkowski | (2) YES |
| Vogt | (M) YES | Hoffman | YES |
| Williams | YES | Gerroll | NO |
| Gauger | NO | Dyzak | NO |
| Zimmer | NO | Henrickson | YES |
| Vogel | NO | Weiss | YES |
| Behnke | YES | Swade | YES |
| Waack | NO | | |

No. 2017/2018-65


Crueger Dickinson


von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

**VIA EMAIL**

Manitowoc County
c/o James Brey, Board Chair

**RE:** *Engagement of von Briesen & Ro~~~~ and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC ~~~~nsel in Relation to Claims Against Opioid Manufacturers*

Dear Manitowoc County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Manitowoc County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Manitowoc County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Manitowoc County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Manitowoc County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Manitowoc County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause. For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical. If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Manitowoc County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Manitowoc County
Engagement Letter
Page –7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals
listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**



Andrew T. Phillips                              Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)



Paul J. Hanly, Jr.

MANITOWOC COUNTY agrees to retain the services of Counsel and National Law Firm all upon
the terms and conditions specified above.


By: _____        Date: _____

Title: _____


cc:    Corporation Counsel


29243067_1.DOCX

# EXHIBIT 100

1    RESOLUTION NO. 2017-45

2    RESOLUTION TO RETAIN THE SERVICES OF LEGAL COUNSEL TO PURSUE CLAIMS
3    AGAINST OPIOID MANUFACTURERS
4
5    WHEREAS, Sawyer County is concerned with the recent rapid rise in troubles among Sawyer
6    County citizens, residents, and visitors in relation to problems arising out of the use, abuse and
7    overuse of opioid medications, which according to certain studies, impacts millions of people across
8    the country; and

9    WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens,
10   residents and visitors are not unique to Sawyer County and are, in fact, issues and concerns shared by
11   all other counties in Wisconsin and, for that matter, states and counties across the country, as has been
12   well documented through various reports and publications, and is commonly referred to as the Opioid
13   Epidemic; and

14   WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and,
15   according to the Centers for Disease Control and Prevention, amount to over $75 billion annually;
16   and

17   WHEREAS, the National Institute for Health has identified the manufacturers of certain of the
18   opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue
19   of their aggressive and, according to some, unlawful and unethical marketing practices; and

20   WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for their
21   actions that relate directly to the rise of the Opioid Epidemic; and

22   WHEREAS, Sawyer County is responsible for a multitude of programs and services, all of
23   which require County to expend resources generated through state and federal aid, property tax levy,
24   fees and other permissible revenue sources; and

25   WHEREAS, Sawyer County's provision of programs and services becomes more and more
26   difficult every year because the costs associated with providing the Opioid Epidemic programs and
27   services continue to rise, yet Sawyer County's ability to generate revenue is limited by strict levy
28   limit caps and stagnant or declining state and federal aid to Sawyer County; and

29   WHEREAS, all sums that Sawyer County expends in addressing, combatting and otherwise
30   dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and
31   services that Sawyer County provides to Sawyer County citizens, residents and visitors; and

32   WHEREAS, Sawyer County has been informed that numerous counties and states across the
33   country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to
34   force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility
35   for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic;
36   and

37   WHEREAS, Sawyer County has engaged in discussions with representatives of the law firms
38   of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law
39   Firms") related to the potential for Sawyer County to pursue certain legal claims against certain opioid
40   manufacturers; and

41       WHEREAS, Sawyer County has been informed that the Law Firms have the requisite skill,
42 experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on
43 behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

44       WHEREAS, the Law Firms have proposed that Sawyer County engage the Law Firms to
45 prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be
46 compensated unless Sawyer County receives a financial benefit as a result of the proposed claims and
47 the Law Firms would advance all claim-related costs and expenses associated with the claims; and

48       WHEREAS, all of the costs and expenses associated with the claims against certain of the
49 opioid manufacturers would be borne by the Law Firms; and

50       WHEREAS, the Law Firms have prepared an engagement letter, which is submitted as part of
51 this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law
52 Firms would provide legal services to Sawyer County and otherwise consistent with the terms of this
53 Resolution; and

54       WHEREAS, Sawyer County is informed that the Wisconsin Counties Association has engaged
55 in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms,
56 Sawyer County and other counties in the prosecution of claims against certain of the opioid
57 manufacturers; and

58       WHEREAS, Sawyer County would participate in the prosecution of the claim(s) contemplated
59 in this Resolution and the Engagement Letter by providing information and materials to the Law
60 Firms and, as appropriate, the Wisconsin Counties Association as needed; and

61       WHEREAS, Sawyer County believes it to be in the best interest of Sawyer County, its citizens,
62 residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of
63 claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the
64 Engagement Letter; and

65       WHEREAS, by pursuing the claims against certain of the opioid manufacturers, Sawyer
66 County is attempting to hold those persons and entities that had a significant role in the creation of
67 the Opioid Epidemic responsible for the financial costs assumed by Sawyer County and other public
68 agencies across the country in dealing with the Opioid Epidemic.

69       NOW, THEREFORE, BE IT RESOLVED:
70
71       Sawyer County authorizes, and agrees to be bound by, the Engagement Letter and hereby
72 directs the appropriate officer of the County to execute the Engagement Letter on behalf of the
73 County; and
74
75       BE IT FURTHER RESOLVED:
76
77       Sawyer County shall endeavor to faithfully perform all actions required of Sawyer County in
78 relation to the claims contemplated herein and in the Engagement Letter and hereby directs all Sawyer
79 County personnel to cooperate with and assist the Law Firms in relation thereto.
80

2

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted to the Sawyer County Board of Supervisors this 19th day of October, 2017.


_____
Tweed Shuman, Chairman

_____
Kathy McCoy, Member

_____
James Schlender, Member

_____
Carol Pearson, Member

_____
Iras Humphreys, Member

_____
Dale Schleeter, Member

_____
Shirley Suhsen, Member

_____
Michelle Lambert, Member

3



**Sawyer County Administrator's Office**
10610 Main Street, Suite 23 - Hayward, WI 54843
Phone: 715-638-3245
Email   andy.albarado@sawyercountygov.org

S. Blake Davis
Alston & Bird
1120 South Tyron Street
Suite 300
Charlotte, NC 28203

Open Records Request from March 7th, 2025

To Whom it May Concern:

Sawyer County received your request pursuant to Wisconsin Public Records Law, Wis. Stats. §§ 19.31-19.39 on the March 7th, 2025.  We identified documents (attached) responsive to your request and continue searching our records.

Please be advised that we identified direct communications with counsel which are responsive to your request.  However, these documents are privileged under common law and Wis., Stats. § 905.03 and are excepted from public disclosure under the Public Records Law. George v. Record Custodian, 169 Wis. 2d 573, 582, 485 N.W. 2nd 469, 464 (Ct. App. 1992). Wisconsin Newspress, Inc. v. Sch. Dist. Of Sheboygan Falls, 199 Wis. 2d 768, 782-83, 546 N.W. 2d 143, 148 (1996).  Pursuant to Wis. Stats. § 19.35(1) substantive common law principles construing the right to inspect, copy or receive copies of records shall remain in effect.  Wis. Stats. § 19.36(1) provides, furthermore, that any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under § 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in § 19.36(6).  Accordingly, if a record contains both information that is subject to disclosure under § 19.35(1)(a) or (am) and information that is not subject to such disclosure, the authority having custody of the record shall provide the information that is subject to disclosure and delete the information that is not subject to disclosure from the record before release.

Sincerely,

Andy Albarado
County Administrator

# EXHIBIT 101

| Dist. | Supervisor | Y | N | A |
|-------|-----------|---|---|---|
| 1 | Frey | ☒ | ☐ | ☐ |
| 2 | Winters | ☒ | ☐ | ☐ |
| 3 | S. Miller | ☒ | ☐ | ☐ |
| 4 | Sacia | ☐ | ☐ | ☒ |
| 5 | Schultz | ☒ | ☐ | ☐ |
| 6 | Brandt | ☒ | ☐ | ☐ |
| 7 | Killian | ☒ | ☐ | ☐ |
| 8 | D. Miller | ☒ | ☐ | ☐ |
| 9 | Haines | ☒ | ☐ | ☐ |
| 10 | Aasen | ☒ | ☐ | ☐ |
| 11 | Walek | ☒ | ☐ | ☐ |
| 12 | Zeglin | ☐ | ☒ | ☐ |
| 13 | Fimreite | ☒ | ☐ | ☐ |
| 14 | Nelson | ☒ | ☐ | ☐ |
| 15 | Nutter | ☒ | ☐ | ☐ |
| 16 | Skoyen | ☒ | ☐ | ☐ |
| 17 | Vold | ☐ | ☐ | ☒ |
|  | **TOTALS** | 14 | 1 | 2 |

Motion to Adopt By: Jeanne Nutter

Seconded By: Chuck Walek

First Reading: 11/14/2017

Second Reading: Waived

Vote Required: _____

Adopted ☒

Defeated ☐

STATE OF WISCONSIN )
)s.s.
CO. OF TREMPEALEAU )

I hereby certify that this resolution /ordinance is a true and correct copy of a resolution/ordinance adopted by the Trempealeau County Board of Supervisors on: 11/14/2017

_____
Paul L. Syverson, County Clerk

**Resolution Number: 2017-11-06**

## Participation in the Opioid Litigation

**WHEREAS,** Trempealeau County ("County") is concerned with the rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent extraordinary amounts of money in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:**

The County Board of Supervisors authorizes Trempealeau County to participate in the Opioid Litigation as described above and further authorizes the appropriate County officials to execute an agreement with the Law Firms for representation in the Opioid Litigation; and

**BE IT FURTHER RESOLVED:**

County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Introduced by Executive/Finance Committee:

_____/S/_____          _____/S/_____

Timothy Zeglin                                                      Dick Miller

_____/S/_____          _____/S/_____

John Aasen                                                         Sally Miller

_____/S/_____

Douglas Winters

Committee Approval Date:  November 6, 2017

Committee Vote:  5 - 0

Resolution Drafted by: Rick Niemeier

Reviewed by Corporation Counsel: YES

Fiscal Impact: (Fiscal Statement – as set forth in Project Initiation form) None



Crueger
Dickinson

**von Briesen**
von Briesen & Roper, s.c. | Attorneys at Law

September 25, 2017

**VIA EMAIL**

Trempealeau County
c/o Dick Miller, Board Chair

RE:     *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with*
        *Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid*
        *Manufacturers*

Dear Trempealeau County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel) will provide legal services to Trempealeau County ("County") in relation to the
investigation and prosecution of certain claims against the following manufacturers and other parties
involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The
Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson &
Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health
Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn
Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations
of the facts and circumstances surrounding the potential claim(s), there may be additional parties
sought to be made responsible and/or certain of the aforementioned parties may be removed from the
potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress
and developments, and respond to County's inquiries.  County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel
and National Law Firm in the gathering of information necessary to investigate and prosecute the

Trempealeau County
Engagement Letter
Page -2

Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below.  Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Trempealeau County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Trempealeau County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.     Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B.     Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C.     Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Trempealeau County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

Trempealeau County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Trempealeau County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

TREMPEALEAU COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _Dick Miller_          Date: _12·1 - 2017_

Title: _Co · Bd· Chair_

cc:     Corporation Counsel

29270824_1.DOCX

# EXHIBIT 102

## RESOLUTION NO. 23-10-17
## AUTHORIZING ENGAGEMENT OF VON BRIESEN & ROPER, S.C., AND CRUEGER DICKINSON LLC, TOGETHER WITH SIMMONS HANLY CONROY LLC, AS COUNSEL IN RELATION TO CLAIMS AGAINST OPIOID MANUFACTURERS

WHEREAS, Waushara County is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

WHEREAS, issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to Waushara County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

WHEREAS, the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

WHEREAS, the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

WHEREAS, certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

WHEREAS, Waushara County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

WHEREAS, Waushara County is responsible for a multitude of programs and services, all of which require Waushara County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

WHEREAS, Waushara County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet Waushara County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to Waushara County; and

WHEREAS, all sums that Waushara County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that Waushara County provides to Waushara County citizens, residents and visitors; and

WHEREAS, Waushara County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial

responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

WHEREAS, Waushara County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for Waushara County to pursue certain legal claims against certain opioid manufacturers; and

WHEREAS, Waushara County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

WHEREAS, the Law Firms have proposed that Waushara County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless Waushara County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

WHEREAS, all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

WHEREAS, the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to Waushara County and otherwise consistent with the terms of this Resolution; and

WHEREAS, Waushara County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, Waushara County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

WHEREAS, Waushara County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

WHEREAS, Waushara County believes it to be in the best interest of the County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

WHEREAS, by pursuing the claims against certain of the opioid manufacturers, Waushara County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by Waushara County and other public agencies across the country in dealing with the Opioid Epidemic.

NOW, THEREFORE, BE IT RESOLVED, Waushara County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

BE IT FURTHER RESOLVED, Waushara County shall endeavor to faithfully perform all actions required of the County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

**Resolution No. 23-10-17**

Ayes _____ Nays _____ Abstain _____ Absent _____ ☒ Voice Vote

☑        Approved and adopted this 7th day of November, 2017.

☐        Denied this 7th day of November, 2017.

Approved as to Form:

Ruth Zouski
Corporation Counsel

Attest:                                        Signed by:

Megan Kapp                            Donna R. Kalata, Chair
Waushara County Clerk                 Waushara County Board of Supervisors



**Crueger Dickinson**

**von Briesen**
von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

**VIA EMAIL**

Waushara County
c/o Donna Kalata, Board Chair

RE:    *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Waushara County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Waushara County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications: Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers"). Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below. This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers. County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries. County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit. County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter. County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein. County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Waushara County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.  von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.  As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below.  Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.  Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Waushara County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter.  By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter.  However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals.  It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent.  von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Waushara County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

      A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

      B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

      C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Waushara County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A. If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B. For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Waushara County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Waushara County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Waushara County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

WAUSHARA COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _Donna R Kalata_          Date: _11/8/17_

Title: _Donna R. Kalata, County Board Chair_

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 104

 

October 6, 2017

**VIA EMAIL**

Calumet County
c/o Alice Connors, Board Chair

RE:   ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers***

Dear Calumet County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Calumet County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the

Calumet County
Engagement Letter
Page -2

Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that

Calumet County
Engagement Letter
Page -3

benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Calumet County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

      A.    Calculation of Contingent Fee

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

      B.    Nature of Contingent Fee

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

      C.    Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Calumet County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

Calumet County
Engagement Letter
Page -6

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Calumet County
Engagement Letter
Page -7

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

CALUMET COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _Todd M. Romenesko_     Date: _11 - 6 - 17_

Title: _Administrator_

cc:     Corporation Counsel

29243067_1.DOCX

# EXHIBIT 105



KAREN J. GIBSON
Dodge County Clerk
kgibson@co.dodge.wi.us

Administration Building
127 East Oak Street, Juneau WI 53039
920-386-3605 / Fax: 920-386-4292

SHELBY J. MILLER
Chief Deputy
smiller@co.dodge.wi.us

CHRISTINE M. KJORNES
Deputy
ckjornes@co.dodge.wi.us

TO WHOM IT MAY CONCERN

I, Karen J. Gibson, County Clerk in and for the County of Dodge, State of Wisconsin, do

hereby certify that the attached is a true and correct copy of Resolution No. 17-61 adopted

by the Dodge County Board of Supervisors on November 14, 2017.

Dated this 14th day of November, 2017.

Karen J. Gibson
Dodge County Clerk



(County Clerk Seal)

RESOLUTION NO. ___17-61___

**Authorize Joining Lawsuit to Prosecute Claims against Certain Opioid Manufacturers**

TO THE HONORABLE BOARD OF SUPERVISORS OF DODGE COUNTY, WISCONSIN
MEMBERS:

**WHEREAS,** Dodge County ("County") is concerned with the recent and rapid rise in difficulties facing County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and,

**WHEREAS,** issues and concerns surrounding opioid use, abuse, and overuse by citizens, residents and visitors are not unique to the County and are, in fact, issues and concerns shared by all other counties in Wisconsin and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and,

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amounting to billions of dollars annually; and,

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and,

**WHEREAS,** certain opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and,

**WHEREAS,** the County has spent significant unexpected and unbudgeted time and financial resources in its programs and services related to the Opioid Epidemic; and,

**WHEREAS,** the County is responsible for a multitude of programs and services, all of which require the County to expend resources generated through state and federal aid, local property tax levy, fees and other permissible revenue sources; and,

**WHEREAS,** the County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet the County's ability to generate revenue is limited by strict statutory levy limit caps and stagnant or declining state and federal aid to the County; and,

**WHEREAS,** financial and other resources the County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are resources that cannot be used for other critical programs and services that the County provides to County citizens, residents and visitors; and,

**WHEREAS,** the County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and,

1   **WHEREAS,** the County has engaged in discussions with representatives of the law firms of von
2   Briesen & Roper, s.c., Crueger Dickinson LLC, and Simmons Hanly Conroy LLC (the "Law Firms")
3   related to the potential for the County to pursue certain legal claims against certain opioid manufacturers;
4   and,
5
6   **WHEREAS,** the Law Firms have proposed that the County engage the Law Firms to prosecute the
7   aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless
8   the County receives a financial benefit as a result of the proposed claims, and the Law Firms would
9   advance any and all claim-related costs and expenses associated with the claims; and,
10
11  **WHEREAS,** the Law Firms have assured the County that any and all of the costs and expenses
12  associated with the claims against certain opioid manufacturers would be borne by the Law Firms; and,
13
14  **WHEREAS,** the Law Firms have provided a proposed engagement letter, ("Engagement Letter")
15  specifying the terms and conditions under which the Law Firms would provide legal services to the County
16  and otherwise consistent with the terms of this Resolution; and,
17
18  **WHEREAS,** the County has been informed that the Wisconsin Counties Association has engaged
19  in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, the County
20  and other counties in the prosecution of claims against certain opioid manufacturers; and,
21
22  **WHEREAS,** the County would participate in the prosecution of the claim(s) contemplated in this
23  Resolution by providing information and materials to the Law Firms and, as appropriate and allowed by
24  law, the Wisconsin Counties Association as needed; and,
25
26  **WHEREAS,** the County believes it to be in the best interest of the County, its citizens, residents,
27  visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against
28  certain opioid manufacturers; and,
29
30  **WHEREAS,** by pursuing the claims against certain opioid manufacturers, the County is attempting
31  to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic
32  responsible for the financial costs assumed by the County;
33
34  **SO, NOW, THEREFORE, BE IT RESOLVED**, that the Dodge County Board of Supervisors
35  authorizes the appropriate county officials to execute an Engagement Letter, provided that such
36  Engagement Letter contains terms and conditions satisfactory to the County, including, but not limited
37  to, a provision that specifies that all costs, expenses, and attorneys' fees shall be borne by the Law Firms
38  and reimbursed only if the County receives a financial benefit from the prosecution of the proposed
39  claim(s); and,
40
41  **BE IT FURTHER RESOLVED,** that the County shall endeavor to faithfully perform all
42  actions required of the County in relation to the claims contemplated herein, and hereby directs all the
43  County personnel to reasonably cooperate with and assist the Law Firms in relation thereto; and,
44
45  **BE IT FINALLY RESOLVED,** that the Dodge County Clerk shall forward a copy of this
46  Resolution to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin,
47  53703.

All of which is respectfully submitted this 14th day of November, 2017.

**Dodge County Executive Committee:**

_____
Russell Kottke

_____
Donna Maly

_____
Mary Ann Miller

_____
David Frohling

_____
Dennis Schmidt

_____
Joseph M. Marsik

_____
Jeff Berres

**Dodge County Judicial and Public Protection Committee:**

_____
MaryAnn Miller

_____
Thomas Nickel

_____
Larry Bischoff

_____
Larry Schraufnagel

_____
Dan Hilbert

**Dodge County Human Services and Health Board:**

_____
Mary J. Bobholz

_____
Stephanie Justmann

_____
Becky Glewen

_____
Mark E. Roesch

_____
Jeremy Bartsch

_____
Kira Sheahan-Malloy

_____
Lois Augustson

_____
Jennifer Keyes

_____
David Godshall

ADOPTED
BY DODGE COUNTY BOARD

NOV 1 4 2017

AYES 28   NOES 1
ABSENT 3
ABSTAIN 1

**Vote Required:**  Majority of Members present.

**Resolution Summary:**  A resolution to engage with law firms to prosecute claims against certain opioid manufacturers.

Karen J. Gibson
County Clerk

3



KAREN J. GIBSON
Dodge County Clerk
kgibson@co.dodge.wi.us

Administration Building
127 East Oak Street, Juneau WI 53039
920-386-3605 / Fax: 920-386-4292

SHELBY J. MILLER
Chief Deputy
smiller@co.dodge.wi.us

CHRISTINE M. KJORNES
Deputy
ckjornes@co.dodge.wi.us

TO WHOM IT MAY CONCERN

I, Karen J. Gibson, County Clerk in and for the County of Dodge, State of Wisconsin, do

hereby certify that the attached is a true and correct copy of Resolution No. 17-61 adopted

by the Dodge County Board of Supervisors on November 14, 2017.

Dated this 14th day of November, 2017.

*Karen J. Gibson*
Karen J. Gibson
Dodge County Clerk



(County Clerk Seal)

1                   RESOLUTION NO. ___17-61___

**Authorize Joining Lawsuit to Prosecute Claims against Certain Opioid Manufacturers**

TO THE HONORABLE BOARD OF SUPERVISORS OF DODGE COUNTY, WISCONSIN
MEMBERS:

**WHEREAS,** Dodge County ("County") is concerned with the recent and rapid rise in difficulties facing County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and,

**WHEREAS,** issues and concerns surrounding opioid use, abuse, and overuse by citizens, residents and visitors are not unique to the County and are, in fact, issues and concerns shared by all other counties in Wisconsin and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and,

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amounting to billions of dollars annually; and,

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and,

**WHEREAS,** certain opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and,

**WHEREAS,** the County has spent significant unexpected and unbudgeted time and financial resources in its programs and services related to the Opioid Epidemic; and,

**WHEREAS,** the County is responsible for a multitude of programs and services, all of which require the County to expend resources generated through state and federal aid, local property tax levy, fees and other permissible revenue sources; and,

**WHEREAS,** the County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet the County's ability to generate revenue is limited by strict statutory levy limit caps and stagnant or declining state and federal aid to the County; and,

**WHEREAS,** financial and other resources the County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are resources that cannot be used for other critical programs and services that the County provides to County citizens, residents and visitors; and,

**WHEREAS,** the County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and,

     **WHEREAS,** the County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC, and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for the County to pursue certain legal claims against certain opioid manufacturers; and,

     **WHEREAS,** the Law Firms have proposed that the County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless the County receives a financial benefit as a result of the proposed claims, and the Law Firms would advance any and all claim-related costs and expenses associated with the claims; and,

     **WHEREAS,** the Law Firms have assured the County that any and all of the costs and expenses associated with the claims against certain opioid manufacturers would be borne by the Law Firms; and,

     **WHEREAS,** the Law Firms have provided a proposed engagement letter, ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to the County and otherwise consistent with the terms of this Resolution; and,

     **WHEREAS,** the County has been informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, the County and other counties in the prosecution of claims against certain opioid manufacturers; and,

     **WHEREAS,** the County would participate in the prosecution of the claim(s) contemplated in this Resolution by providing information and materials to the Law Firms and, as appropriate and allowed by law, the Wisconsin Counties Association as needed; and,

     **WHEREAS,** the County believes it to be in the best interest of the County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain opioid manufacturers; and,

     **WHEREAS,** by pursuing the claims against certain opioid manufacturers, the County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by the County;

     **SO, NOW, THEREFORE, BE IT RESOLVED**, that the Dodge County Board of Supervisors authorizes the appropriate county officials to execute an Engagement Letter, provided that such Engagement Letter contains terms and conditions satisfactory to the County, including, but not limited to, a provision that specifies that all costs, expenses, and attorneys' fees shall be borne by the Law Firms and reimbursed only if the County receives a financial benefit from the prosecution of the proposed claim(s); and,

     **BE IT FURTHER RESOLVED,** that the County shall endeavor to faithfully perform all actions required of the County in relation to the claims contemplated herein, and hereby directs all the County personnel to reasonably cooperate with and assist the Law Firms in relation thereto; and,

     **BE IT FINALLY RESOLVED,** that the Dodge County Clerk shall forward a copy of this Resolution to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

All of which is respectfully submitted this 14th day of November, 2017.

**Dodge County Executive Committee:**

_____
Russell Kottke

_____
Donna Maly

_____
Mary Ann Miller

_____
David Frohling

_____
Dennis Schmidt

_____
Joseph M. Marsik

_____
Jeff Berres

**Dodge County Judicial and Public Protection Committee:**

_____
MaryAnn Miller

_____
Thomas Nickel

_____
Larry Bischoff

_____
Larry Schraufnagel

_____
Dan Hilbert

**Dodge County Human Services and Health Board:**

_____
Mary J. Bobholz

_____
Stephanie Justmann

_____
Becky Glewen

_____
Mark E. Roesch

_____
Jeremy Bartsch

_____
Kira Sheahan-Malloy

_____
Lois Augustson

_____
Jennifer Keyes

_____
David Godshall

ADOPTED
BY DODGE COUNTY BOARD

NOV 1 4 2017

AYES 28    NOES 1
ABSENT 3
ABSTAIN 1

**Vote Required:**  Majority of Members present.

**Resolution Summary:**  A resolution to engage with law firms to prosecute claims against certain opioid manufacturers.

Karen J. Gibson
County Clerk

3

  

November 28, 2017

**VIA EMAIL**

Dodge County
c/o Russell Kottke, Board Chair

RE:    *Engagement of Simmons Hanly Conroy LLC, Crueger Dickinson LLC, and von Briesen & Roper, s.c. as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Dodge County:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of Simmons Hanly Conroy LLC, Crueger Dickinson LLC and von Briesen & Roper, s.c., (collectively "Counsel") will provide legal services to Dodge County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc. (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein. Counsel further agrees that they will represent the County to defend against any counterclaim or cross-claim asserted by any defendant in the lawsuit.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that all fees paid to Counsel shall be as set forth in this Engagement Letter.  County agrees to cooperate with Counsel in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel in relation to the Lawsuit.

The following additional terms apply to the relationship between County and Counsel:

Engagement Letter
Page -2

A.      Counsel shall remain sufficiently aware of the performance of one another and the performance to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Counsel shall be available to County regarding any concerns on the part of County relating to the performance of Counsel. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel set forth herein.

B.      As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel have agreed in writing as to the appropriate split of attorney fees and expenses. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| Local Counsel | 5% |
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 42.5% |
| Simmons Hanly Conroy LLC | 42.5% |

The split of attorneys' fees between Counsel may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.      Counsel and County understand and agree that Counsel will all be considered attorneys for County. As such, each and all of Counsel will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel represent in a Lawsuit. Counsel do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel,

Engagement Letter
Page -3

Counsel owe equal duties of loyalty and communication to each client. As such, Counsel must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel are unaware of any facts or circumstances that would prohibit Counsel from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A.   <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel agree to advance all costs and expenses of Counsel, and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the

Engagement Letter
Page -4

legal services to be rendered by Counsel, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel, and that amount shall be remitted to Counsel. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel, County shall not be required to pay Counsel and any more than the sum of the full Recovery.

B.      Nature of Contingent Fee

No monies shall be paid to Counsel for any work performed, costs incurred (including any defense costs) or disbursements made by Counsel in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel for any work performed, costs incurred (including defense costs) or disbursements made by Counsel. In such an event, neither party shall have any further rights against the other.

C.      Disbursement of Recovery Proceeds to County

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel from such proceeds. Counsel are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel may withdraw as County's attorneys at any time for the following reasons:

Engagement Letter
Page -5

      A.      If Counsel determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

      B.      For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel's advice on a material matter, or any fact or circumstance that would, in the view of Counsel, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel. County understands settlements are a "compromise" of its claim(s), and that Counsel's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel primarily communicates with its clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

Engagement Letter
Page -6

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Engagement Letter
Page -7

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                Erin K. Dickinson

**SIMMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly

DODGE COUNTY agrees to retain the services of Counsel all upon the terms and conditions specified above.

By: _Russell Kothe_                    Date: _11-28-2017_

Title: _Chairman of the Dodge County_
        _Board of Supervisors_

cc: Corporation Counsel

# EXHIBIT 106

RESOLUTION No. 52

Presented to County Board

Date ___NOV 7 2017___

Action by County Board

☐ Adopted as presented _____
☐ Adopted as amended _____
☐ Referred to ___ - ___ - ___
☐ Defeated ___ - ___ - ___
☐ Withdrawn ___ - ___ - ___

County Board Chairman

_Anthony Branz_  NOV 7 2017

Presented to County Executive ___NOV - 7 2017___

By _Mary T. Kubicki_

County Clerk

Action by County Executive

☑ Approved _11-8-17_
☐ Vetoed ___ - ___ - ___
☐ Vetoed in part ___ - ___ - ___
☐ Effective without signature ___ - ___ - ___

By _____

County Executive

Veto action by County Board

☐ Overridden ___ - ___ - ___
Vote ___ to ___
☐ Sustained ___ - ___ - ___
Vote ___ to ___

# County of Kenosha
## Board of Supervisors
### Resolution No. 52

| | |
|---|---|
| Subject: | A RESOLUTION AUTHORIZING THE ENGAGEMENT OF COUNSEL FOR PURPOSES OF PURSUING CLAIMS AGAINST OPIOID MANUFACTURERS |

| Original _X_ | Corrected _ | 2nd Correction _ | Resubmitted _ |
|---|---|---|---|

| Date Submitted: | Date resubmitted: |
|---|---|

Submitted by: Legislative Committee

| Fiscal Note Attached:_ | Legal Note Attached: _ |
|---|---|

Prepared By:  Chair Kimberly Breunig and Supervisor Boyd Frederick

**WHEREAS,** Kenosha County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to

rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED,** County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

**BE IT FURTHER RESOLVED,** County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted,

Chair Kimberly Breunig

Supervisor Boyd Frederick

Approved by:

Legislative Committee:

|  | Aye | Nay | Abstain | Excused |
|---|---|---|---|---|
| Boyd Frederick, Chair | ☑ | ☐ | ☐ | ☐ |
| Dayvin Hallmon, Vice-Chair | ☑ | ☐ | ☐ | ☐ |
| Andy Berg | ☑ | ☐ | ☐ | ☐ |
| Erin Decker | ☑ | ☐ | ☐ | ☐ |
| John Franco | ☑ | ☐ | ☐ | ☐ |
| John Poole | ☐ | ☑ | ☐ | ☐ |
| Michael Skalitzky | ☐ | ☑ | ☐ | ☐ |





September 25, 2017

VIA EMAIL

Kenosha County
c/o Kimberly Breunig, Board Chair
Jim Kreuser, County Executive

RE:    *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Kenosha County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Kenosha County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel

Kenosha County
Engagement Letter
Page -2

and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit. County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

 A. von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

 B. As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

 The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

 C. Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

## ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County

Kenosha County
Engagement Letter
Page -3

disagrees with another county or municipality, and one of you may wish to pursue a course that
benefits one but is detrimental to the interest of the other, we cannot advise County or assist County
or any other county or municipality in pursuing such a course. That is to say, Counsel and National
Law Firm cannot advocate for County's individual interests at the expense of the other counties or
municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National
Law Firm do not believe that this poses a problem because County's interests are currently aligned
with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National
Law Firm are confident that their representation of County will not be limited in this matter by
representation of any other county or municipality, but County should consider these consequences
of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in
agreeing to joint representation. Because each county or municipality would be a client of Counsel
and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and
communication to each client. As such, Counsel and National Law Firm must share all relevant
information with all counties and municipalities who are clients in relation to the Lawsuit and
Counsel and National Law Firm cannot, at the request of one county or municipality, withhold
relevant information from the other client. That is to say, Counsel and National Law Firm cannot
keep secrets about this matter among the counties and municipalities who are clients of Counsel and
National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge
information about communications with their clients because it is protected by the attorney-client
privilege. However, because County would be a joint client in the same matter with other counties
and municipalities, it is likely that were there to be a future legal dispute between County and other
counties or municipalities that engage Counsel and National Law Firm about this matter, the
attorney-client privilege would not apply, and each would not be able to invoke the privilege against
the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and
the conflict discussed above is waivable, facts and circumstances may change. For example, County
may change its mind and wish to pursue a course that is adverse to the interests of another county or
municipality and the conflict may become unwaivable. In that case, depending upon the
circumstances, Counsel and National Law Firm may have to withdraw from representing either
County or another county or municipality and County would have to bear the expense, if County
chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks
involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement
Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and
municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would
prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement
Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively
large law firm based in Wisconsin and represents many companies and individuals. It is possible that
some present and future clients of von Briesen & Roper, s.c., will have business relationships and
potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent
clients in matters that are actually adverse to the interests of County without County's permission and
informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by
case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or
maybe adverse to, the interests of County in circumstances where County has selected other counsel
and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being

Kenosha County
Engagement Letter
Page -4

advised of the circumstances of the potential or actual conflict and County has provided informed consent.

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law

Kenosha County
Engagement Letter
Page -5

Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.   If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.   For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law. This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

**COMMUNICATION BY E-MAIL**

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

**FILE RETENTION AND DESTRUCTION**

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

**MISCELLANEOUS**

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

Kenosha County
Engagement Letter
Page -7

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                      Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

KENOSHA COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____          Date: _____

Title: _____

cc:     Corporation Counsel

29270824_1.DOCX

# EXHIBIT 107



RESOLUTION No. 480 - 17

**SUPPORTING LITIGATION AGAINST CERTAIN PHARMACEUTICAL COMPANIES FOR THEIR ROLE IN CREATING THE OPIOID EPIDEMIC**

**WHEREAS,** Marinette County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by other counties in Wisconsin and states and counties across the country, as has been documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic"); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, reportedly according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** County has unexpectedly been forced to expend significant time and resources in its programs and services related to the Opioid Epidemic, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County is responsible for a multitude of programs and services and County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has received information from representatives of the law firms of von Briesen & Roper, S.C., Crueger Dickinson, LLC and Simmons Hanly Conroy, LLC ("Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claims contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED,** Marinette County Board of Supervisors authorizes the Marinette County Corporation Counsel to negotiate, and the Marinette County Administrator to execute, an Engagement Letter and agrees to be bound by the same; and

**BE IT FURTHER RESOLVED,** County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Approved by a majority vote of the quorum of the Marinette County Board of Supervisors on November 14, 2017.

_____          _____
Mark Anderson, Chair                      Kathy Brandt, County Clerk

Recommended: Executive – 10/31/17

Page **2** of **3**

Marinette County Finance Department

Fiscal Impact Statement

---

Number    480 - 17

Ordinance [    ]    Resolution [ X ]

### *SUPPORTING LITIGATION AGAINST CERTAIN PHARMACEUTICAL COMPANIES FOR THEIR ROLE IN CREATING THE OPIOID EPIDEMIC*

Fiscal Impact Statement:

The Resolution bounds the County to the terms of the Engagement Letter. The Engagement Letter states the County shall not be responsible for any fees and expenses unless there is monetary recovery. Fees and cost shall not exceed any such recovery. The County is obligated to provide and/or prepare necessary information. It is expected County staff will provide and/or prepare the information as part of their normal duties with no additional cost of the County. Therefore there is no fiscal impact to the County unless there is a monetary recovery. This monetary recovery, if any, is unknown.

*Patrick Kass*
_____
Patrick Kass
Finance Director

October 24, 2017
_____
Date

Page **3** of **3**





October 11, 2017

**Via Email**



Marinette County
c/o Mark Anderson, Board Chair

RE:   *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Marinette County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel) will provide legal services to Marinette County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Marinette County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.    von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.    As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.    Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Marinette County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Marinette County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

A. <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

B. <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

C. <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Marinette County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

**TERMINATION OF REPRESENTATION**

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

**SETTLEMENT**

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

**NO GUARANTEE OF RECOVERY**

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

**LIMITED LIABILITY**

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Marinette County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible.  Counsel's professional
liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for
limited liability entities of similar size.

**COMMUNICATION BY E-MAIL**

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-
mail, and this will be the way in which communications occur with County.  While unencrypted e-
mail is convenient and fast, there is risk of interception, not only within internal networks and the
systems used by internet service providers, but elsewhere on the internet and in the systems of our
clients and their internet service providers.

**FILE RETENTION AND DESTRUCTION**

In accordance with Counsel and National Law Firm's records retention policy, most paper and
electronic records maintained are subject to a 10-year retention period from the last matter activity
date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of
matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy
records without further notice to County, unless County otherwise notifies in writing.

**MISCELLANEOUS**

This Engagement Letter shall be governed by and construed in accordance with the laws of the State
of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the
terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the
State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District
Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that
all previous understandings are merged in this Engagement Letter, and that no modification of this
Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application
thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the
remainder of this Engagement Letter, or the application of such term or provision to persons or
circumstances other than those to which it is held invalid or unenforceable, shall not be affected
thereby; and every other term and provision of this Engagement Letter shall be valid and shall be
enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of
this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each
party and the person signing on behalf of each party, represents that the person signing this
Engagement Letter has the authority to execute this document and thereby bind the party hereto on
whose behalf the person is signing. Specifically, County acknowledges that it is bound by this
Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and
will execute all the necessary documents that may be required by its governing statutes and/or code.

**CONCLUSION**

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at
any time during the course of representation you have any questions or comments about our services

Marinette County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**

Andrew T. Phillips

**CRUEGER DICKINSON LLC**

Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

MARINETTE COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____   Date: _11/16/17_

Title: _Administrator_

cc:   Corporation Counsel

29243067_1.DOCX

Kathy Brandt
County Clerk
11-16-17

# EXHIBIT 108



**Resolution No. 53 (2017)**
**RESOLUTION AUTHORIZING ENGAGEMENT LETTER**
**WITH VON BRIESEN & ROPER, S.C., CRUEGER DICKINSON**
**LLC, TOGETHER WITH SIMMONS HANLY CONROY LLC,**
**AS COUNSEL IN RELATION TO CLAIMS AGAINST OPIOID**
**MANUFACTURERS**

1       **WHEREAS,** St. Croix County is concerned with the recent rapid rise in troubles among
2  St. Croix County citizens, residents, and visitors in relation to problems arising out of the use,
3  abuse and overuse of opioid medications, which according to certain studies, impacts millions of
4  people across the country; and
5

6       **WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens,
7  residents and visitors are not unique to St. Croix County and are, in fact, issues and concerns
8  shared by all other counties in Wisconsin and, for that matter, states and counties across the
9  country, as has been well documented through various reports and publications, and is
10  commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and
11

12       **WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and,
13  according to the Centers for Disease Control and Prevention, amount to over $75 billion
14  annually; and
15

16       **WHEREAS,** the National Institute for Health has identified the manufacturers of certain
17  of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic
18  by virtue of their aggressive and, according to some, unlawful and unethical marketing practices;
19  and
20

21       **WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability
22  for their actions that relate directly to the rise of the Opioid Epidemic; and
23

24       **WHEREAS,** Wisconsin counties have spent millions in unexpected and unbudgeted time
25  and resources in its programs and services related to the Opioid Epidemic; and
26

27       **WHEREAS,** St. Croix County is responsible for a multitude of programs and services,
28  all of which require St. Croix County to expend resources generated through state and federal
29  aid, property tax levy, fees and other permissible revenue sources; and
30

31       **WHEREAS,** St. Croix County's provision of programs and services becomes more and
32  more difficult every year because the costs associated with providing the Opioid Epidemic
33  programs and services continue to rise, yet St. Croix County's ability to generate revenue is
34  limited by strict levy limit caps and stagnant or declining state and federal aid to St. Croix
35  County; and
36

37       **WHEREAS,** all sums that St. Croix County expends in addressing, combatting and
38  otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical
39  programs and services that St. Croix County provides to St. Croix County citizens, residents and
40  visitors; and

41
42      **WHEREAS,** St. Croix County has been informed that numerous counties and states
43  across the country have filed or intend to file lawsuits against certain of the opioid manufacturers
44  in an effort to force the persons and entities responsible for the Opioid Epidemic to assume
45  financial responsibility for the costs associated with addressing, combatting and otherwise
46  dealing with the Opioid Epidemic; and
47
48      **WHEREAS,** St. Croix County has engaged in discussions with representatives of the law
49  firms of vonBriesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC
50  (the "Law Firms") related to the potential for St. Croix County to pursue certain legal claims
51  against certain opioid manufacturers; and
52
53      **WHEREAS,** St. Croix County has been informed that the Law Firms have the requisite
54  skill, experience and wherewithal to prosecute legal claims against certain of the opioid
55  manufacturers on behalf of public entities seeking to hold them responsible for the Opioid
56  Epidemic; and
57
58      **WHEREAS,** the Law Firms have proposed that St. Croix County engage the Law Firms
59  to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would
60  not be compensated unless St. Croix County receives a financial benefit as a result of the
61  proposed claims and the Law Firms would advance all claim-related costs and expenses
62  associated with the claims; and
63
64      **WHEREAS,** all of the costs and expenses associated with the claims against certain of
65  the opioid manufacturers would be borne by the Law Firms; and
66
67      **WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as
68  part of this Resolution ("Engagement Letter") specifying the terms and conditions under which
69  the Law Firms would provide legal services to St. Croix County and otherwise consistent with
70  the terms of this Resolution; and
71
72      **WHEREAS,** St. Croix County is informed that the Wisconsin Counties Association has
73  engaged in extensive discussions with the Law Firms and has expressed a desire to assist the
74  Law Firms, St. Croix County and other counties in the prosecution of claims against certain of
75  the opioid manufacturers; and
76
77      **WHEREAS,** St. Croix County would participate in the prosecution of the claim(s)
78  contemplated in this Resolution and the Engagement Letter by providing information and
79  materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed;
80  and
81
82      **WHEREAS,** the St. Croix County Board of Supervisors believes it to be in the best
83  interest of St. Croix County, its citizens, residents, visitors and taxpayers to join with other
84  counties in and outside Wisconsin in pursuit of claims against certain of the opioid
85  manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and
86

87      **WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, St.
88 Croix County is attempting to hold those persons and entities that had a significant role in the
89 creation of the Opioid Epidemic responsible for the financial costs assumed by St. Croix County
90 and other public agencies across the country in dealing with the Opioid Epidemic.
91
92      **NOW, THEREFORE, BE IT RESOLVED** that the St. Croix County Board of
93 Supervisors authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the
94 appropriate officer of St. Croix County to execute the Engagement Letter on behalf of St. Croix
95 County; and
96
97      **BE IT FURTHER RESOLVED** that St. Croix County shall endeavor to faithfully
98 perform all actions required of St. Croix County in relation to the claims contemplated herein
99 and in the Engagement Letter and hereby directs all St. Croix County personnel to cooperate
100 with and assist the Law Firms in relation thereto.

---

**_Legal – Fiscal – Administrative Approvals:_**

Legal Note:

Fiscal Impact:        Fiscal impact is hard to estimate at this point in time. The amount of fiscal impact
                      would be determined on the scope of work required by staff to compile information
                      and the likelihood of settlement.


Scott L. Cox, Corporation Counsel   10/13/2017


Robert Mitlet, Finance Director     10/13/2017


Patrick Thompson, County Administrator   10/13/2017

---

10/18/17      Administration Committee      APPROVED

| RESULT: | APPROVED [UNANIMOUS] |
|---|---|
| MOVER: | Jill Ann Berke, Vice Chair |
| SECONDER: | Tammy Moothedan, Supervisor |
| AYES: | Roy Sjoberg, Tammy Moothedan, Jill Ann Berke, Shaela Leibfried |
| EXCUSED: | Scottie Ard |

Vote Confirmation.

Roy Sjoberg, Supervisor          10/21/2017

---

**_St. Croix County Board of Supervisors Action_:**

Roll Call - Vote Requirement – Majority of Supervisors Present

| RESULT: | ADOPTED [16 TO 1] |
|---|---|
| MOVER: | Jill Ann Berke, Supervisor |
| SECONDER: | Daniel Hansen, Supervisor |
| AYES: | Babbitt, Sjoberg, Moothedan, Nelson, Berke, Ostness, Larson, Hansen, Ard, Brinkman, Peterson, Anderson, Achterhof, Leibfried, Peavey, Matter |
| NAYS: | Tom Coulter |
| ABSTAIN: | Ryan S. Sicard, Bob Long |

This Resolution was Adopted by the St. Croix County Board of Supervisors on November 7, 2017

Cindy Campbell, County Clerk


Crueger Dickinson


von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

VIA EMAIL

St. Croix County
c/o Roger Larson, Board Chair

RE:   *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear St. Croix County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to St. Croix County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

St. Croix County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.      von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct. Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm. Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.      As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm. Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change. In the event of such an amendment, the County will be notified in writing of that amendment.

C.      Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County. As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere. Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit. Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However, to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

St. Croix County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

St. Croix County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

     A.     <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

     B.     <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

     C.     <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

St. Croix County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A. If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B. For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

St. Croix County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible.  Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County.  While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate.  Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for St. Croix County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County.  If at any time during the course of representation you have any questions or comments about our services

St. Croix County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                               Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

ST. CROIX COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: _____11·14·17_____

Title: _County Administrator_

cc:      Corporation Counsel

29243067_1.DOCX

# EXHIBIT 109

RESOLUTION NO. 2017-48

TO THE HONORABLE BOARD OF SUPERVISORS OF <u>Vernon</u> COUNTY, WISCONSIN

MEMBERS,

**WHEREAS,** <u>Vernon</u> County ("County") is concerned with the recent rapid rise in troubles among County citizens, residents, and visitors in relation to problems arising out of the use, abuse and overuse of opioid medications, which according to certain studies, impacts millions of people across the country; and

**WHEREAS,** issues and concerns surrounding opioid use, abuse and overuse by citizens, residents and visitors are not unique to County and are, in fact, issues and concerns shared by all other counties in Wisconsin and, for that matter, states and counties across the country, as has been well documented through various reports and publications, and is commonly referred to as the Opioid Epidemic ("Opioid Epidemic:); and

**WHEREAS,** the societal costs associated with the Opioid Epidemic are staggering and, according to the Centers for Disease Control and Prevention, amount to over $75 billion annually; and

**WHEREAS,** the National Institute for Health has identified the manufacturers of certain of the opioid medications as being directly responsible for the rapid rise of the Opioid Epidemic by virtue of their aggressive and, according to some, unlawful and unethical marketing practices; and

**WHEREAS,** certain of the opioid manufacturers have faced civil and criminal liability for their actions that relate directly to the rise of the Opioid Epidemic; and

**WHEREAS,** County has spent millions in unexpected and unbudgeted time and resources in its programs and services related to the Opioid Epidemic; and

**WHEREAS,** County is responsible for a multitude of programs and services, all of which require County to expend resources generated through state and federal aid, property tax levy, fees and other permissible revenue sources; and

**WHEREAS,** County's provision of programs and services becomes more and more difficult every year because the costs associated with providing the Opioid Epidemic programs and services continue to rise, yet County's ability to generate revenue is limited by strict levy limit caps and stagnant or declining state and federal aid to County; and

**WHEREAS,** all sums that County expends in addressing, combatting and otherwise dealing with the Opioid Epidemic are sums that cannot be used for other critical programs and services that County provides to County citizens, residents and visitors; and

**WHEREAS,** County has been informed that numerous counties and states across the country have filed or intend to file lawsuits against certain of the opioid manufacturers in an effort to force the persons and entities responsible for the Opioid Epidemic to assume financial responsibility for the costs associated with addressing, combatting and otherwise dealing with the Opioid Epidemic; and

**WHEREAS,** County has engaged in discussions with representatives of the law firms of von Briesen & Roper, s.c., Crueger Dickinson LLC and Simmons Hanly Conroy LLC (the "Law Firms") related to the potential for County to pursue certain legal claims against certain opioid manufacturers; and

**WHEREAS,** County has been informed that the Law Firms have the requisite skill, experience and wherewithal to prosecute legal claims against certain of the opioid manufacturers on behalf of public entities seeking to hold them responsible for the Opioid Epidemic; and

**WHEREAS,** the Law Firms have proposed that County engage the Law Firms to prosecute the aforementioned claims on a contingent fee basis whereby the Law Firms would not be compensated unless County receives a financial benefit as a result of the proposed claims and the Law Firms would advance all claim-related costs and expenses associated with the claims; and

**WHEREAS,** all of the costs and expenses associated with the claims against certain of the opioid manufacturers would be borne by the Law Firms; and

**WHEREAS,** the Law Firms have prepared an engagement letter, which is submitted as part of this Resolution ("Engagement Letter") specifying the terms and conditions under which the Law Firms would provide legal services to County and otherwise consistent with the terms of this Resolution; and

**WHEREAS,** County is informed that the Wisconsin Counties Association has engaged in extensive discussions with the Law Firms and has expressed a desire to assist the Law Firms, County and other counties in the prosecution of claims against certain of the opioid manufacturers; and

**WHEREAS,** County would participate in the prosecution of the claim(s) contemplated in this Resolution and the Engagement Letter by providing information and materials to the Law Firms and, as appropriate, the Wisconsin Counties Association as needed; and

**WHEREAS,** County believes it to be in the best interest of County, its citizens, residents, visitors and taxpayers to join with other counties in and outside Wisconsin in pursuit of claims against certain of the opioid manufacturers, all upon the terms and conditions set forth in the Engagement Letter; and

**WHEREAS,** by pursuing the claims against certain of the opioid manufacturers, County is attempting to hold those persons and entities that had a significant role in the creation of the Opioid Epidemic responsible for the financial costs assumed by County and other public agencies across the country in dealing with the Opioid Epidemic.

**NOW, THEREFORE, BE IT RESOLVED:**

County authorizes, and agrees to be bound by, the Engagement Letter and hereby directs the appropriate officer of the County to execute the Engagement Letter on behalf of the County; and

2

**BE IT FURTHER RESOLVED:**

County shall endeavor to faithfully perform all actions required of County in relation to the claims contemplated herein and in the Engagement Letter and hereby directs all County personnel to cooperate with and assist the Law Firms in relation thereto.

The County Clerk shall forward a copy of this Resolution, together with the signed Engagement Letter, to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite 900, Madison, Wisconsin, 53703.

Respectfully submitted this 7th day of November, 2017

Mike Leis, Legal Affairs Chair        Yes Votes        No Votes        Absent/Abstain

Adopted by Vernon County Board of Supervisors

11 - 7 , 2017

Attest:

Ron Hoff, Vernon County Clerk        11-7-17        Date

3



**Crueger Dickinson**

**von Briesen**

von Briesen & Roper, s.c. | Attorneys at Law

October 11, 2017

VIA EMAIL

Vernon County
c/o Dennis Brault, Board Chair

RE:     ***Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with
Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid
Manufacturers***

Dear Vernon County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions
upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively
"Counsel) will provide legal services to Vernon County ("County") in relation to the investigation
and prosecution of certain claims against the following manufacturers and other parties involved with
the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue
Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson,
Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health
Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn
Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations
of the facts and circumstances surrounding the potential claim(s), there may be additional parties
sought to be made responsible and/or certain of the aforementioned parties may be removed from the
potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation
to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor
does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis
for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a
lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set
forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress
and developments, and respond to County's inquiries.  County understands and agrees that Counsel,
on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly
Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers
("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of
record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to
Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be
responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which
County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel
and National Law Firm in the gathering of information necessary to investigate and prosecute the
Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Vernon County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall
be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law
Firm:

A.     von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently
aware of the performance of one another and the performance of National Law Firm
to ascertain if each firm's handling of the Lawsuit conforms to the Rules of
Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC
shall be available to County regarding any concerns on the part of County relating to
the performance of Counsel and/or National Law Firm.  Counsel shall at all times
remain ethically and financially responsible to the County for the services of Counsel
and National Law Firm set forth herein.

B.     As set forth below, County's responsibility for attorney fees and expenses is
contingent upon the successful outcome of the Lawsuit, as further defined below.
Counsel and National Law Firm have agreed in writing as to the appropriate split of
attorney fees and expenses upon the engagement of National Law Firm.  Specifically,
in the event of a Recovery (as defined below), the attorney fees will be split between
the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject
to change.  In the event of such an amendment, the County will be notified in writing
of that amendment.

C.     Counsel and County understand and agree that Counsel and National Law Firm will
all be considered attorneys for County.  As such, each and all of Counsel and
National Law Firm will adhere to the Rules of Professional Responsibility governing
the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same
arrangement as that set forth in this Engagement Letter with other counties and municipalities in
Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of
County are aligned with the goals and objectives of all other counties and municipalities with respect
to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the
Lawsuit, either County or another county or municipality must take a position that is adverse to the
interests of the other. However,  to the extent any issue may arise in this matter about which County
disagrees with another county or municipality, and one of you may wish to pursue a course that
benefits one but is detrimental to the interest of the other, we cannot advise County or assist County
or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Vernon County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Vernon County
Engagement Letter
Page -4

**FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES**

      A.     <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery"). County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit. Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm. By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

      B.     <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained. In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

      C.     <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm. At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Vernon County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.    If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.    For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Vernon County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Vernon County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Vernon County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                          Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)


Paul J. Hanly, Jr.

VERNON COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____            Date: 11/14/17

Title: Cnty Board chairman

cc:     Corporation Counsel


29243067_1.DOCX

# EXHIBIT 110

**Motion:**

1st   Rueth

2nd   Bakker

No: 1   Yes: 25

Absent: 2

Adopted: **X**
Lost:
Tabled:

Number of Votes required:
Majority

| Clark Co Board Roll Call Vote | YES | NO | A |
|---|---|---|---|
| 1 Hochhalter | X | | |
| 2 Leichtman | X | | |
| 3 Schindler | | | X |
| 4 Wilcox | X | | |
| 5 Amacher | X | | |
| 6 Waichulis | X | | |
| 7 Zank | X | | |
| 8 Kodl | X | | |
| 9 Feiten | X | | |
| 10 Luchterhand | X | | |
| 11 Jalling | X | | |
| 12 Petke | | | X |
| 13 Bower | X | | |
| 14 Krempasky | X | | |
| 15 Rogers | X | | |
| 16 Hendrickson | X | | |
| 17 Rueth | X | | |
| 18 Olson | | X | |
| 19 Haselow | X | | |
| 20 Dahl | X | | |
| 21 Rollins | X | | |
| 22 Kunze | X | | |
| 23 Boon | X | | |
| 24 Mitte | X | | |
| 25 Vacant | | | |
| 26 Bakker | X | | |
| 27 Garbisch | X | | |
| 28 Neville | X | | |
| 29 Sebesta | X | | |

I, Christina M Jensen, Clerk for the County of Clark, hereby certify that this Resolution was adopted by the Board of Supervisors at the meeting held November 9, 2017

*Christina M. Jensen*
Clark County Clerk,
Neillsville, WI 54456

SEAL

**Resolution #40-11-17**

## APPROVING ENGAGEMENT OF COUNSEL FOR PROSECUTION OF COUNTY CLAIMS AGAINST OPIOID MANUFACTURERS

1.  **WHEREAS,** Clark County is concerned with the recent rapid rise in
2.  troubles among Clark County citizens, residents, and visitors in
3.  relation to problems arising out of the use, abuse and overuse of opioid
4.  medications, which according to certain studies, impacts millions of
5.  people across the country;
6.
7.  **WHEREAS,** issues and concerns surrounding opioid use, abuse and
8.  overuse by citizens, residents and visitors are not unique to Clark
9.  County and are, in fact, issues and concerns shared by all other
10.  counties in Wisconsin and, for that matter, states and counties across
11.  the country, as has been well documented through various reports and
12.  publications, and is commonly referred to as the Opioid Epidemic;
13.
14.  **WHEREAS,** the societal costs associated with the Opioid Epidemic
15.  are staggering and, according to the Centers for Disease Control and
16.  Prevention, amount to over $75 billion annually;
17.
18.  **WHEREAS,** the National Institute for Health has identified the
19.  manufacturers of certain of the opioid medications as being directly
20.  responsible for the rapid rise of the Opioid Epidemic by virtue of their
21.  aggressive and, according to some, unlawful and unethical marketing
22.  practices;
23.
24.  **WHEREAS,** certain opioid manufacturers have faced civil and
25.  criminal liability for their actions that relate directly to the rise of the
26.  Opioid Epidemic;
27.
28.  **WHEREAS,** Clark County has spent millions in unexpected and
29.  unbudgeted time and resources in its programs and services related to
30.  the Opioid Epidemic;
31.
32.  **WHEREAS,** Clark County is responsible for a multitude of programs
33.  and services, all of which require Clark County to expend resources
34.  generated through state and federal aid, property tax levy, fees and
35.  other permissible revenue sources;
36.
37.  **WHEREAS,** Clark County's provision of programs and services
38.  becomes more and more difficult every year because the costs
39.  associated with providing the Opioid Epidemic programs and services
40.  continue to rise, yet Clark County's ability to generate revenue is
41.  limited by strict levy limit caps and stagnant or declining state and
42.  federal aid to Clark County;

**Resolution #40-11-17**

88.  **WHEREAS,** Clark County would participate in the prosecution of the
89.  claim(s) contemplated in this resolution and the engagement letter by
90.  providing information and materials to the Law Firms and, as
91.  appropriate, the Wisconsin Counties Association as needed;
92.
93.  **WHEREAS,** Clark County believes it to be in the best interest of Clark
94.  County, its citizens, residents, visitors and taxpayers to join with other
95.  counties in and outside Wisconsin in pursuit of claims against certain
96.  opioid manufacturers, all upon the terms and conditions set forth in the
97.  engagement letter; and
98.
99.  **WHEREAS,** by pursuing the claims against certain opioid
100.  manufacturers, Clark County is attempting to hold those
101.  persons and entities that had a significant role in the creation of the
102.  Opioid Epidemic responsible for the financial costs assumed by Clark
103.  County and other public agencies across the country in dealing with
104.  the Opioid Epidemic.
105.
106.  **NOW, THEREFORE, BE IT RESOLVED,** the Clark County Board
107.  of Supervisors hereby authorizes and agrees to be bound by the
108.  engagement letter, subject to negotiations and changes identified by
109.  Clark County Corporation Counsel, and hereby directs the Board
110.  Chairperson to execute the engagement letter on behalf of the Clark
111.  County.
112.
113.  **BE IT FURTHER RESOLVED,** Clark County shall endeavor to
114.  faithfully perform all actions required of Clark County in relation to
115.  the claims contemplated herein and in the engagement letter and
116.  hereby directs all Clark County personnel to cooperate with and assist
117.  the Law Firms in relation thereto.
118.
119.  **BE IT FURTHER RESOLVED,** the County Clerk shall forward a
120.  copy of this resolution, together with the executed engagement letter
121.  to the Wisconsin Counties Association, 22 E. Mifflin Street, Suite
122.  900, Madison, Wisconsin, 53703.
123.
124.  No fiscal impact

**Resolution #40-11-17**

43. **WHEREAS,** all sums that Clark County expends in addressing,
44. combatting and otherwise dealing with the Opioid Epidemic are sums
45. that cannot be used for other critical programs and services that Clark
46. County provides to Clark County citizens, residents and visitors;
47.
48. **WHEREAS,** Clark County has been informed that numerous counties
49. and states across the country have filed or intend to file lawsuits
50. against certain opioid manufacturers in an effort to force the persons
51. and entities responsible for the Opioid Epidemic to assume financial
52. responsibility for the costs associated with addressing, combatting and
53. otherwise dealing with the Opioid Epidemic;
54.
55. **WHEREAS,** Clark County has engaged in discussions with
56. representatives of the law firms of von Briesen & Roper, s.c., Crueger
57. Dickinson LLC and Simmons Hanly
58. Conroy LLC ("Law Firms") related to the potential for Clark County
59. to pursue certain legal claims against certain opioid manufacturers;
60.
61. **WHEREAS,** Clark County has been informed that the Law Firms have
62. the requisite skill, experience and wherewithal to prosecute legal
63. claims against certain of the opioid manufacturers on behalf of public
64. entities seeking to hold them responsible for the Opioid Epidemic;
65.
66. **WHEREAS,** the Law Firms have proposed that Clark County engage
67. the Law Firms to prosecute the aforementioned claims on a contingent
68. fee basis whereby the Law Firms would not be compensated unless
69. Clark County receives a financial benefit as a result of the proposed
70. claims and the Law Firms would advance all claim-related costs and
71. expenses associated with the claims;
72.
73. **WHEREAS,** all of the costs and expenses associated with the claims
74. against certain of the opioid manufacturers would be borne by the Law
75. Firms;
76.
77. **WHEREAS,** the Law Firms have prepared an engagement letter,
78. which is set forth in Exhibit A and incorporated into this resolution,
79. specifying the terms and conditions under which the Law Firms would
80. provide legal services to Clark County and otherwise consistent with
81. the terms of this resolution;
82.
83. **WHEREAS,** Clark County is informed that the Wisconsin Counties
84. Association has engaged in extensive discussions with the Law Firms
85. and has expressed a desire to assist the Law Firms, Clark County and
86. other counties in the prosecution of claims against certain opioid
87. manufacturers;

**Resolution #40-11-17**

**EXECUTIVE, JUDICIAL, AND LEGISLATIVE COMMITTEE**

_____
Wayne Hendrickson

_____
Joe Waichulis

_____
Duane Boon

_____
Marcia Hochhalter

_____
Chuck Rueth

Review by
Corporation Counsel: _____

Review by
   Comptroller: _____





October 11, 2017

**VIA EMAIL**

Clark County
c/o Wayne Hendrickson, Board Chair

RE:    *Engagement of von Briesen & Roper, s.c., and Crueger Dickinson LLC, Together with Simmons Hanly Conroy LLC, as Counsel in Relation to Claims Against Opioid Manufacturers*

Dear Clark County Officials:

The purpose of this letter ("Engagement Letter") is to set out in writing the terms and conditions upon which the law firms of von Briesen & Roper, s.c., and Crueger Dickinson LLC (collectively "Counsel") will provide legal services to Clark County ("County") in relation to the investigation and prosecution of certain claims against the following manufacturers and other parties involved with the manufacture of opioid medications:  Purdue Pharma L.P., Purdue Pharma Inc., The Purdue Frederick Company, Inc., Teva Pharmaceuticals USA, Inc., Cephalon, Inc., Johnson & Johnson, Janssen Pharmaceuticals, Inc., OrthoMcNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc., Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc., Endo Pharmaceuticals, Inc., Russell Portenoy, Perry Fine, Scott Fishman and Lynn Webster (collectively "Opioid Manufacturers").  Depending upon the results of initial investigations of the facts and circumstances surrounding the potential claim(s), there may be additional parties sought to be made responsible and/or certain of the aforementioned parties may be removed from the potential claim.

This Engagement Letter shall apply solely and exclusively to the services set forth herein in relation to the investigation and Lawsuit, as defined below.  This Engagement Letter does not govern, nor does it apply to, any services of either Counsel unrelated thereto.

**SCOPE OF SERVICES**

Counsel will work with County in the collection of information necessary to form a good faith basis for filing a claim against the Opioid Manufacturers.  County hereby authorizes Counsel to file a lawsuit against one or all of the Opioid Manufacturers ("Lawsuit") upon the terms and conditions set forth herein.

**RESPONSIBILITIES**

Counsel will prosecute the Lawsuit with diligence and keep County reasonably informed of progress and developments, and respond to County's inquiries.  County understands and agrees that Counsel, on behalf of County, will engage the services of the nationally-recognized law firm Simmons Hanly Conroy LLC, which has demonstrated experience prosecuting claims against Opioid Manufacturers ("National Law Firm") and which, in addition to Crueger Dickinson LLC, will serve as counsel of record for County in relation to the Lawsuit.  County understands and agrees that all fees paid to Counsel and National Law Firm shall be as set forth in this Engagement Letter.  County shall not be responsible for any fees and expenses of National Law Firm beyond the fees and expenses for which County has agreed to be responsible as set forth herein.  County agrees to cooperate with Counsel and National Law Firm in the gathering of information necessary to investigate and prosecute the Lawsuit.  County further understands and agrees that the law firm of von Briesen & Roper, s.c., shall

Clark County
Engagement Letter
Page -2

not be identified on any pleading as counsel of record for County in relation to the Lawsuit, but shall be available to assist County and Counsel and National Law Firm in relation to the Lawsuit.

The following additional terms apply to the relationship between County, Counsel and National Law Firm:

A.   von Briesen & Roper, s.c., and Crueger Dickinson LLC shall remain sufficiently aware of the performance of one another and the performance of National Law Firm to ascertain if each firm's handling of the Lawsuit conforms to the Rules of Professional Conduct.  Both von Briesen & Roper, s.c., and Crueger Dickinson LLC shall be available to County regarding any concerns on the part of County relating to the performance of Counsel and/or National Law Firm.  Counsel shall at all times remain ethically and financially responsible to the County for the services of Counsel and National Law Firm set forth herein.

B.   As set forth below, County's responsibility for attorney fees and expenses is contingent upon the successful outcome of the Lawsuit, as further defined below. Counsel and National Law Firm have agreed in writing as to the appropriate split of attorney fees and expenses upon the engagement of National Law Firm.  Specifically, in the event of a Recovery (as defined below), the attorney fees will be split between the law firms as follows:

| Firm Name | Percentage of Fees if Successful |
|---|---|
| von Briesen & Roper, s.c. | 10% |
| Crueger Dickinson LLC | 45% |
| Simmons Hanly Conroy LLC | 45% |

The split of attorneys' fees between Counsel and National Law Firm may be subject to change.  In the event of such an amendment, the County will be notified in writing of that amendment.

C.   Counsel and County understand and agree that Counsel and National Law Firm will all be considered attorneys for County.  As such, each and all of Counsel and National Law Firm will adhere to the Rules of Professional Responsibility governing the relationship between attorney and client.

**ACTUAL AND POTENTIAL CONFLICTS OF INTEREST AND WAIVER OF CONFLICT**

As County is aware, Counsel and National Law Firm contemplate entering into the same arrangement as that set forth in this Engagement Letter with other counties and municipalities in Wisconsin and elsewhere.  Counsel and National Law Firm believe that the goals and objectives of County are aligned with the goals and objectives of all other counties and municipalities with respect to the Lawsuit.  Counsel and National Law Firm do not believe that to achieve the goals of the Lawsuit, either County or another county or municipality must take a position that is adverse to the interests of the other. However,  to the extent any issue may arise in this matter about which County disagrees with another county or municipality, and one of you may wish to pursue a course that benefits one but is detrimental to the interest of the other, we cannot advise County or assist County or any other county or municipality in pursuing such a course. That is to say, Counsel and National

Clark County
Engagement Letter
Page -3

Law Firm cannot advocate for County's individual interests at the expense of the other counties or municipalities that Counsel and National Law Firm represent in a Lawsuit. Counsel and National Law Firm do not believe that this poses a problem because County's interests are currently aligned with the other counties and municipalities that are or may be in the Lawsuit. Counsel and National Law Firm are confident that their representation of County will not be limited in this matter by representation of any other county or municipality, but County should consider these consequences of joint representation in deciding whether to waive this conflict.

In addition to the material limitation discussed above, there are other consequences for County in agreeing to joint representation. Because each county or municipality would be a client of Counsel and National Law Firm, Counsel and National Law Firm owe equal duties of loyalty and communication to each client. As such, Counsel and National Law Firm must share all relevant information with all counties and municipalities who are clients in relation to the Lawsuit and Counsel and National Law Firm cannot, at the request of one county or municipality, withhold relevant information from the other client. That is to say, Counsel and National Law Firm cannot keep secrets about this matter among the counties and municipalities who are clients of Counsel and National Law Firm with respect to the Lawsuit. Also, lawyers normally cannot be forced to divulge information about communications with their clients because it is protected by the attorney-client privilege. However, because County would be a joint client in the same matter with other counties and municipalities, it is likely that were there to be a future legal dispute between County and other counties or municipalities that engage Counsel and National Law Firm about this matter, the attorney-client privilege would not apply, and each would not be able to invoke the privilege against the claims of the other.

Further, while County's position is in harmony with other counties and municipalities presently, and the conflict discussed above is waivable, facts and circumstances may change. For example, County may change its mind and wish to pursue a course that is adverse to the interests of another county or municipality and the conflict may become unwaivable. In that case, depending upon the circumstances, Counsel and National Law Firm may have to withdraw from representing either County or another county or municipality and County would have to bear the expense, if County chooses, of hiring new lawyers who would have to get up to speed on the matter.

County is not required to agree to waive this conflict, and County may, after considering the risks involved in joint representation, decline to sign this Engagement Letter. By signing this Engagement Letter, County is signifying its consent to waiving the conflict of interest discussed herein.

Other than the facts and circumstances related to the joint representation of numerous counties and municipalities, Counsel and National Law Firm are unaware of any facts or circumstances that would prohibit Counsel and/or National Law Firm from providing the services set forth in this Engagement Letter. However, it is important to note that the law firm of von Briesen & Roper, s.c., is a relatively large law firm based in Wisconsin and represents many companies and individuals. It is possible that some present and future clients of von Briesen & Roper, s.c., will have business relationships and potential or actual disputes with County. von Briesen & Roper, s.c., will not knowingly represent clients in matters that are actually adverse to the interests of County without County's permission and informed consent. von Briesen & Roper, s.c, respectfully requests that County consent, on a case by case basis, to von Briesen & Roper, s.c.'s representation of other clients whose interests are, or maybe adverse to, the interests of County in circumstances where County has selected other counsel and where von Briesen & Roper, s.c., has requested a written conflict waiver from County after being advised of the circumstances of the potential or actual conflict and County has provided informed consent.

Clark County
Engagement Letter
Page -4

## FEES FOR LEGAL SERVICES AND RESPONSIBILITY FOR EXPENSES

    A.    <u>Calculation of Contingent Fee</u>

There is no fee for the services provided herein unless a monetary recovery acceptable to County is obtained by Counsel and National Law Firm in favor of County, whether by suit, settlement, or otherwise ("Recovery").  County understands and agrees that a Recovery may occur in any number of different fashions such as final judgment in the Lawsuit, settlement of the Lawsuit, or appropriation to County following a nationwide settlement or extinguishing of claims in lawsuits and matters similar to the Lawsuit.  Counsel and National Law Firm agree to advance all costs and expenses of Counsel, National Law Firm and the Lawsuit associated with investigating and prosecuting the Lawsuit provided, however, that the costs and expenses associated with County cooperating with Counsel and National Law Firm in conjunction with the Lawsuit and otherwise performing its responsibilities under this Engagement Letter are the responsibility of County. In consideration of the legal services to be rendered by Counsel and National Law Firm, the contingent attorneys' fees for the services set forth in this Engagement Letter shall be a gross fee of 25% of the Recovery, which sum shall be divided among Counsel and National Law Firm as set forth in the above chart.

Upon the application of the applicable fee percentage to the gross Recovery, and that dollar amount set aside as attorneys' fees to Counsel and National Law Firm, the amount remaining shall first be reduced by the costs and disbursements that have been advanced by Counsel and National Law Firm, and that amount shall be remitted to Counsel and National Law Firm.  By way of example only, if the gross amount of the Recovery is $1,000,000.00, and costs and disbursements are $100,000.00, then the fee to Counsel and National Law Firm shall be $250,000, the costs amount of $100,000 shall be deducted from the balance of $750,000.00, and the net balance owed to County shall be $650,000. The costs and disbursements which may be deducted from a Recovery include, but are not limited to, the following, without limitation: court fees, process server fees, transcript fees, expert witness fees and expenses, courier service fees, appellate printing fees, necessary travel expenses of attorneys to attend depositions, interview witnesses, attend meetings related to the scope of this Engagement Letter and the like, and other appropriate matter related out-of-pocket expenses. In the event that any Recovery results in a monetary payment to County that is less than the amount of the costs incurred and/or disbursements made by Counsel and National Law Firm, County shall not be required to pay Counsel and National Law Firm any more than the sum of the full Recovery.

    B.    <u>Nature of Contingent Fee</u>

No monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm in the event no Recovery to County has been obtained.  In the event of a loss at trial due to an adverse jury verdict or a dismissal of the Lawsuit by the court, no monies shall be paid to Counsel or National Law Firm for any work performed, costs incurred or disbursements made by Counsel or National Law Firm. In such an event, neither party shall have any further rights against the other.

    C.    <u>Disbursement of Recovery Proceeds to County</u>

The proceeds of any Recovery on County's behalf under the terms of this Engagement Letter shall be disbursed to County as soon as reasonably practicable after receipt by Counsel and National Law Firm.  At the time of disbursement of any proceeds from a Recovery, County will be provided with a detailed disbursement sheet reflecting the method by which attorney's fees have been calculated and the expenses of litigation that are due to Counsel and National Law Firm from such proceeds. Counsel and National Law Firm are authorized to retain out of any moneys that may come into their

Clark County
Engagement Letter
Page -5

hands by reason of their representation of County the fees, costs, expenses and disbursements to which they are entitled as determined in this Engagement Letter.

## TERMINATION OF REPRESENTATION

This Engagement Letter shall cover the period from the date first indicated below until the termination of the legal services rendered hereunder, unless earlier terminated as provided herein. This Engagement Letter may be terminated by County at any time, and in the event of such termination, neither party shall have any further rights against the other, except that in the event of a Recovery by County against the Opioid Manufacturers subsequent to termination, Counsel and National Law Firm shall have a statutory lien on any such recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination. Counsel and National Law Firm may withdraw as County's attorneys at any time for the following reasons:

A.  If Counsel and National Law Firm determine, in their sole discretion, that County's claim lacks merit or that it is not worthwhile to pursue the Lawsuit further; or

B.  For Good Cause.  For purposes of this Paragraph, Good Cause may include County's failure to honor the terms of the Engagement Letter, County's failure to follow Counsel or National Law Firm's advice on a material matter, or any fact or circumstance that would, in the view of Counsel or National Law Firm, impair an effective attorney-client relationship or would render continuing representation unlawful or unethical.  If terminated for Good Cause, County will take all steps necessary to free Counsel and National Law Firm of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete withdrawal provided, however, that Counsel and National Law Firm shall have a statutory lien on any Recovery as provided by applicable law and further maintain rights in the nature of *quantum meruit* to recover fees, costs and expenses reasonably allocable to their work prior to termination.

## SETTLEMENT

County has the authority to accept or reject any final settlement amount after receiving the advice of Counsel and National Law Firm. County understands settlements are a "compromise" of its claim(s), and that Counsel and National Law Firm's fee, as set forth above, applies to settlements also. For example, if a settlement is reached, and includes future or structured payments, Counsel and National Law Firm's fee shall include its contingent portion of those future or structured payments.

## NO GUARANTEE OF RECOVERY

County understands and acknowledges that dispute resolution through litigation often takes years to achieve. County understands and acknowledges that there is no guarantee or assurances of any kind regarding the likelihood of success of the Lawsuit, but that Counsel and National Law Firm will use their skill, diligence, and experience to diligently pursue the Lawsuit.

## LIMITED LIABILITY

von Briesen & Roper, s.c., and Crueger Dickinson LLC are limited liability entities under Wisconsin law.  This means that if Counsel fails to perform duties in the representation of County and that failure causes County damages, the firms comprising Counsel and the shareholder(s) or principals directly involved in the representation may be responsible to County for those damages, but the

Clark County
Engagement Letter
Page -6

firm's other shareholders or principals will not be personally responsible. Counsel's professional liability insurance exceeds the minimum amounts required by the Wisconsin Supreme Court for limited liability entities of similar size.

## COMMUNICATION BY E-MAIL

Counsel and National Law Firm primarily communicate with their clients via unencrypted internet e-mail, and this will be the way in which communications occur with County. While unencrypted e-mail is convenient and fast, there is risk of interception, not only within internal networks and the systems used by internet service providers, but elsewhere on the internet and in the systems of our clients and their internet service providers.

## FILE RETENTION AND DESTRUCTION

In accordance with Counsel and National Law Firm's records retention policy, most paper and electronic records maintained are subject to a 10-year retention period from the last matter activity date or whatever date deemed appropriate. Extended retention periods may apply to certain types of matters or pursuant to County's specific directives.

After the expiration of the applicable retention period, Counsel and National Law Firm will destroy records without further notice to County, unless County otherwise notifies in writing.

## MISCELLANEOUS

This Engagement Letter shall be governed by and construed in accordance with the laws of the State of Wisconsin, without regard to conflicts of law rules. In the event of any dispute arising out of the terms of this Engagement Letter, venue for any such dispute shall be exclusively designated in the State of Wisconsin Circuit Court for Milwaukee County, Wisconsin, or in the United States District Court for the Eastern District of Wisconsin.

It is expressly agreed that this Engagement Letter represents the entire agreement of the parties, that all previous understandings are merged in this Engagement Letter, and that no modification of this Engagement Letter shall be valid unless written and executed by all parties.

It is expressly agreed that if any term or provision of this Engagement Letter, or the application thereof to any person or circumstance, shall be held invalid or unenforceable to any extent, the remainder of this Engagement Letter, or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby; and every other term and provision of this Engagement Letter shall be valid and shall be enforced to the fullest extent permitted by law.

The parties acknowledge that they have carefully read and fully understand all of the provisions of this Engagement Letter, and that they have the capacity to enter into this Engagement Letter. Each party and the person signing on behalf of each party, represents that the person signing this Engagement Letter has the authority to execute this document and thereby bind the party hereto on whose behalf the person is signing. Specifically, County acknowledges that it is bound by this Engagement Letter, has satisfied all conditions precedent to execution of this Engagement Letter and will execute all the necessary documents that may be required by its governing statutes and/or code.

## CONCLUSION

Counsel and National Law Firm are pleased to have this opportunity to be of service to County. If at any time during the course of representation you have any questions or comments about our services

Clark County
Engagement Letter
Page -7

or any aspect of how we provide services, please don't hesitate to call one or all of the individuals listed below.

Very truly yours,

**von BRIESEN & ROPER, s.c.**                    **CRUEGER DICKINSON LLC**

Andrew T. Phillips                                Erin K. Dickinson

**SIMONS HANLY CONROY LLC** (Acknowledged)

Paul J. Hanly, Jr.

CLARK COUNTY agrees to retain the services of Counsel and National Law Firm all upon the terms and conditions specified above.

By: _____        Date: _____

Title: _____

cc:    Corporation Counsel

29243067_1.DOCX

# EXHIBIT 117

# Exhibit A
# AUTHORITY TO REPRESENT

RE:    Illinois civil suit against those legally responsible for the
wrongful distribution of prescription opiates and damages caused thereby.

    The County of Hamilton by and through their duly authorized agent, Justin Hood, (hereinafter "CLIENT") hereby retains the law firm GOLDENBERG, HELLER & ANTOGNOLI, PC., (hereinafter generally referred to as "COUNSEL" as special counsel,  pursuant to the Illinois Rules of Professional Responsibility, on a contingent fee basis, to pursue ***all*** civil remedies against those in the chain of distribution of prescription opiates responsible for the opioid epidemic which is plaguing the County of Hamilton, Illinois including, but not limited to, filing a claim for public nuisance to abate the damages caused thereby. CLIENT authorizes COUNSEL to employ and/or associate additional counsel, with consent of CLIENT, to assist COUNSEL in the just prosecution of the case.  CLIENT consents to the participation of the following firms:

GOLDENBERG HELLER & ANTOGNOLI, P.C.
2227 S. State Route 157
Edwardsville, Illinois

CATES MAHONEY, LLC
216 W. Pointe Dr.
Swansea, IL

HOLLAND LAW FIRM
300 N. Tucker Blvd
St. Louis, MO

GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP
419 11th Street
Huntington, West Virginia

LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, PA
316 South Baylen Street
Pensacola, Florida

BARON & BUDD, PC
3102 Oak Lawn Avenue #1100
Dallas, Texas

HILL PETERSON CARPER BEE & DEITZLER PLLC
500 Tracy Way
Charleston, West Virginia

4

MCHUGH FULLER LAW GROUP
97 Elias Whiddon Rd
Hattiesburg, Mississippi

In consideration, CLIENT agrees to pay "Attorneys' fees" of one-third (33 1/3%) of gross settlement proceeds or forty percent (40%) of the gross judgment proceeds. Should an appeal be necessary and the CLIENT prevails on the appeal, then "Attorneys' fees" shall be 50% of any of the gross judgment proceeds, or compensation as otherwise allowed by a court of law. The gross proceeds shall be calculated on the amount obtained before the deduction of costs and expenses. CLIENT grants Attorneys an interest in a fee based on the gross recovery. If a court awards attorneys' fees, Attorneys shall receive the "greater of" the gross recovery-based contingent fee or the attorneys' fees awarded. **There is no fee if there is no recovery.**

GOLDENBERG HELLER & ANTOGNOLI, P.C. and the other law firms, hereinafter referred to as the "Attorneys," agree to advance all necessary litigation expenses necessary to prosecute these claims. All such litigation expenses, including the reasonable internal costs of electronically stored information (ESI) and electronic discovery generally or the direct costs incurred from any outside contractor for those services, will be deducted from any recovery after the contingent fee is calculated. **There is no reimbursement of litigation expenses if there is no recovery.**

The CLIENT acknowledges this fee is reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly, the likelihood this employment will preclude other employment by the Attorneys, the fee customarily charged in the locality for similar legal services, the anticipated  (contingent) litigation expenses and the anticipated results obtained, the experience, reputation, and ability of the lawyer or lawyers performing the services and the fact that the fee is contingent upon a successful recovery.

This litigation is intended to address a significant problem in the community. The litigation addresses the wholesale distributors and their role in the diversion of millions of prescription opiates into the illicit market which has resulted in opioid addiction, abuse, morbidity and mortality. There is no easy solution and no precedent for such an action against this sector of the industry. Many of the facts of the case are locked behind closed doors. The billion dollar industry denies liability. The litigation will be very expensive and the litigation expenses will be advanced by the Attorneys with reimbursement contingent upon a successful recovery. The outcome is uncertain, as is all civil litigation, with compensation contingent upon a successful recovery. Consequently, there must be a clear understanding between the CLIENT and the Attorneys regarding the definition of a "successful recovery."

The Attorneys intend to present a damage model designed to abate the public health and safety crisis. This damage model may take the form of money damages or equitable remedies (e.g., abatement fund). The purpose of the lawsuit is to seek reimbursement of the costs incurred in the past fighting the opioid epidemic and/or recover the funds necessary to abate the health and safety crisis caused by the unlawful conduct of the companies in the chain of sale and distribution of prescription opioid drugs. The CLIENT agrees to compensate the Attorneys, contingent upon prevailing whether it takes the form of monetary damages or equitable relief. For instance, if the remedy is in the form of monetary damages, CLIENT agrees to pay the Attorneys' fees as set forth

5

above of the gross amount to Attorneys as compensation and then reimburse the reasonable litigation expenses. If the remedy is in the form of equitable relief (e.g., abatement fund), CLIENT agrees to pay the Attorneys' fees, as set forth above, out of the gross value of the equitable relief to the Attorneys as compensation and then reimburse the reasonable litigation expenses. To be clear, Attorneys shall not be paid nor receive reimbursement from public funds. However, any judgment arising from successful prosecution of the case, or any consideration arising from a settlement of the matter, whether monetary or equitable, shall not be considered public funds for purposes of calculating the contingent fee. Under no circumstances shall the CLIENT be obligated to pay any Attorneys fee or any litigation expenses except from moneys expended by defendant(s) pursuant to the resolution of the CLIENT's claims. If the defendant(s) expend their own resources to abate the public health and safety crisis in exchange for a release of liability, then the Attorneys will be paid the designated contingent fee from the resources expended by the defendant(s). CLIENT acknowledges this is a necessary condition required by the Attorneys to dedicate their time and invest their resources on a contingent basis to this enormous project. If the defendant(s) negotiate a release of liability, then the Attorneys should be compensated based upon the consideration offered to induce the dismissal of the lawsuit.

The division of fees, expenses and labor between the Attorneys will be decided by private agreement between the law firms and subject to approval by the CLIENT. Any division of fees will be governed by the Illinois Rules of Professional Conduct including: (1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the CLIENT; (2) the CLIENT has given *written* consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation; (3) except where court approval of the fee division is obtained, the *written* closing statement in a case involving a contingent fee shall be signed by the CLIENT and each lawyer and shall comply with the terms of Rule 1.5 (c) of the Illinois Rules of Professional Conduct; and (4) the total fee is *reasonable*.

COUNSEL shall keep the CLIENT reasonably informed about the status of the matter in a manner deemed appropriate by the CLIENT. The CLIENT at all times shall retain the authority to decide the disposition of the case and maintain absolute control of the litigation.

Upon conclusion of this matter, COUNSEL shall provide the CLIENT with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination. The closing statement shall specify the manner in which the compensation was determined under the agreement, any costs and expenses deducted by the lawyer from the judgment or settlement involved, and, if applicable, the actual division of the lawyers' fees with a lawyer not in the same firm. The closing statement shall be signed by the CLIENT and each attorney among whom the fee is being divided.

CLIENT understands that it may, through its offices and branches of working government, have to produce documents, either to demonstrate the CLIENT 's ability to be an adequate plaintiff, or to support the CLIENT's claims. In addition to the production of documents, this may include assisting with answering written discovery, having employees' depositions taken, giving oral testimony and/or appearing at trial. The Attorneys understand and appreciate that the CLIENT

6

may object to an opposing party's unchecked access to its government information and the Attorneys will vigorously oppose the production of any irrelevant, unrelated information and seek protective orders that limit any defendant's access to any information that contains confidential information (including attorney-client communications); BUT, there is no guarantee, as the production of information is left to the sound discretion of the court.

This Authority to Represent is between a unit of government and attorneys in private practice. As such, the CLIENT acknowledges that information from the CLIENT to its Attorneys, and vice versa, should not be produced in response to FOIA requests or discussed at public meetings because it is covered by the attorney-client privilege and is an exception under the Illinois Freedom of Information Act (5 ILCS 140/1 et seq.).

Nothing in this Agreement and nothing in the Attorneys' statement to the CLIENT may be construed as a promise or guarantee about the outcome of this matter.  The Attorneys make no such promises or guarantees.   Attorneys' comments about the outcome of this matter are expressions of opinion only and   the Attorneys make no guarantee as to the outcome of any litigation, settlement or trial proceedings.

The undersigned represents that he is authorized by his office to enter into the above agreement and agrees to the express terms and conditions as set forth in this Authority to Represent.

SIGNED, this ⎽⎽17⎽⎽ day of ⎽⎽October⎽⎽⎽⎽⎽, 2017.

**Hamilton County**

Justin Flood States Attorney

Accepted:

GOLDENBERG HELLER & ANTOGNOLI, P.C.
2227 S. STATE ROUTE 157
EDWARDSVILLE, ILLINOIS  62025

By ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽
      Thomas J. Lech

10/20/7
Date

*Counsel*

7

| | |
|---|---|
| **From:** | Justin Hood <jhoodhamiltonco@gmail.com> |
| **Sent:** | Monday, April 7, 2025 10:38 AM |
| **To:** | Mancil, Brennan |
| **Subject:** | Re: FOIA Response from Hamilton County Illinois |

**EXTERNAL SENDER – Proceed with caution**

Brennan,

There is not a separate retainer agreement encompassing the PBMs or a separate that authorizes suit that I am aware of.  Only clients consent through privileged communication.

J
ustin Hood

On Mon, Mar 31, 2025 at 10:04 AM Mancil, Brennan <Brennan.Mancil@alston.com> wrote:

No worries on the delay, Justin.

To follow up, is it the County's position, then, that the only documentation supporting its consent to sue the PBMs is in privileged communication? We would expect the County's consent to be reflected in non-privileged records. For example, in nearly all the municipalities that I've requested documents from, the entity's consent to sue PBMs in the Opioid MDL is found in a retainer agreement encompassing PBMs or in a resolution specifically authorizing suit against PBMs.

Brennan Mancil

Associate

**ALSTON & BIRD**

1201 West Peachtree Street

Atlanta, GA 30309

+1 404 881 7361 (O)

+1 770 315 6306 (M)
Brennan.Mancil@alston.com

1

**From:** Justin Hood <jhoodhamiltonco@gmail.com>
**Sent:** Saturday, March 29, 2025 9:58 AM
**To:** Mancil, Brennan <Brennan.Mancil@alston.com>
**Subject:** Re: FOIA Response from Hamilton County Illinois


**EXTERNAL SENDER – Proceed with caution**

---

Brennan,


Sorry for the delay in me responding to you.  I reached out to the one of the county's attorney who is working on our case.  This is the response.


No additional contracts were obtained.  The litigation evolved from distributors then to manufacturers, chain pharmacies and now PBMs after first targeting the distributors. That progression would have been with our clients consent but those communications would be attorney-client privileged.


Justin Hood

Hamilton County Sate's Attorney


On Thu, Mar 27, 2025 at 2:38 PM Mancil, Brennan <Brennan.Mancil@alston.com> wrote:

Good afternoon, Justin:


Do you have any record showing that Hamilton County consented to sue the PBMs in the Opioid Litigation?? The retainer that you attached targets distributors, not PBMs.

2

If the County's consent is contained within a privileged document, please redact the privileged portions and produced the non-privileged portions of the document. *See* 65 Pa. Stat. § 67.706 ("If an agency determines that a public record, . . contains information which is subject to access as well as information which is not subject to access, the agency's response shall grant access to the information which is subject to access and deny access to the information which is not subject to access. If the information which is not subject to access is an integral part of the public record, legislative record or financial record and cannot be separated, the agency shall redact from the record the information which is not subject to access, and the response shall grant access to the information which is subject to access. The agency may not deny access to the record if the information which is not subject to access is able to be redacted.").

Brennan Mancil

Associate

**ALSTON & BIRD**

1201 West Peachtree Street

Atlanta, GA 30309

+1 404 881 7361 (O)

+1 770 315 6306 (M)
Brennan.Mancil@alston.com

---

**From:** Justin Hood <jhoodhamiltonco@gmail.com>
**Sent:** Thursday, March 27, 2025 2:56 PM
**To:** Mancil, Brennan <Brennan.Mancil@alston.com>
**Subject:** FOIA Response from Hamilton County Illinois

**EXTERNAL SENDER – Proceed with caution**

---

Brennan Mancil,

   We received your request for public records. I am the Hamilton County State's Attorney for the Hamilton County Illinois and authorized to speak on its behalf. Attached are public records related to the retention of outside counsel to file a civil action against those responsible for the opioid epidemic plaguing our community. We consented to amending the pleadings in MDL2804 to add

the pharmacy benefit managers (PBMs) as defendants on May 10, 2024. No public hearing was held in this regard.

Justin Hood

Hamilton County State's Attorney

---

NOTICE: This e-mail message and all attachments may contain legally privileged and confidential information intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that you may not read, copy, distribute or otherwise use this message or its attachments. If you have received this message in error, please notify the sender by email and delete all copies of the message immediately.